# **EXHIBIT 1**

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  FTX DIGITAL MARKETS LTD. AND                Main Case No.

8  BRIAN C. SIMMS,                             22-11516-mew

9          Debtors.

10 - - - - - - - - - - - - - - - - - - - - -x

11

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              November 17, 2022

17              11:45 AM

18

19

20

21  B E F O R E:

22  HON. MICHAEL WILES

23  U.S. BANKRUPTCY JUDGE

24  ECRO:  NONE

25

1

2   Chapter 15 Status Conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Cathy L. Kleinbart

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (302)263-0885

25   operations@escribers.net

```
1
2   A P P E A R A N C E S (All present by video or telephone):
3   HOLLAND & KNIGHT LLP
4        Attorney Joint Professional Liquidators
5        150 North Riverside Plaza
6        Suite 2700
7        Chicago, IL 60606
8
9   BY:   DAVID WIRT, ESQ.
10
11  HOLLAND & KNIGHT LLP
12        Attorney for Joint Provisional Liquidators
13        31 West 52nd Street
14        New York, NY 10019
15
16  BY:   WARREN E. GLUCK, ESQ.
17
18  SULLIVAN & CROMWELL LLP
19        Attorneys for FTX Trading Ltd., Delaware Debtors
20        125 Broad Street,
21        New York, NY 10004
22
23  BY:   JAMES L. BROMLEY, ESQ.
24        BRIAN D. GLUECKSTEIN, ESQ.
25
```

1

2  LANDIS RATH & COBB LLP

3        Attorney for FTX Trading Ltd., ET AL.

4        919 North Market Street

5        Wilmington, DE 19801

6

7  BY:   ADAM LANDIS, ESQ.

8

9  KIRKLAND & ELLIS

10        Attorney for Voyager Digital Holdings, Inc.

11        214 Richardson Street

12        Brooklyn, NY 11222

13

14  BY:   CHIRSTINE OKIKE, ESQ.

15

16  HOLLAND & KNIGHT LLP

17        Attorney for Joint Provisional Liquidators

18        811 Main Street, Suite 2500

19        Houston, TX 77002

20

21  BY:   TYE C. HANCOCK, ESQ.

22

23

24

25

1

2   THE UNITED STATES DEPARTMENT OF JUSTICE

3           Attorneys for United States Trustee

4           Office of the United States Trustee

5           201 Varick Street

6           New York, NY 10014

7

8   BY:    ANDREA B. SCHWARTZ, ESQ.

9           SHARA CORNELL, ESQ.

10

11   ALSO PRESENT:

12           MARC SCHWARTZ, Interested Party

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Good morning, everybody.  I apologize for

3    keeping you waiting.  I was teaching this morning, and it took

4    me longer to get downtown than I thought it would.

5            Who do I have the phone on behalf of the provisional

6    liquidators?

7            MR. GLUCK:  Good morning, Your Honor.  You have Warren

8    Gluck and David Wirt on behalf of the joint provisional

9    liquidators on the line.

10            THE COURT:  And who else is here who wishes to enter

11    an appearance?

12            MR. BROMLEY:  Good morning, Your Honor.  This is James

13    Bromley and Brian Glueckstein of Sullivan & Cromwell on behalf

14    of FTX Trading Ltd. and affiliated debtors.

15            MS. SCHWARTZ:  Good morning, Your Honor.  Andrea

16    Schwartz and Shara Cornell for the U.S. Trustee.

17            THE COURT:  Thank you very much.

18            Would somebody give me a description of where this

19    particular entity fits in the FTX Enterprise and whether it is

20    or is not involved in the Delaware proceedings?

21            MR. BROMLEY:  Your Honor, this is --

22            MR. GLUCK:  Yes, Your Honor.  This is Warren Gluck --

23            MR. BROMLEY:  Your Honor --

24            MR. GLUCK:  -- on behalf of the joint provisional

25    liquidators of FTX Digital.  And FTX Digital is a Bahamas

1   entity, which is the main center of the FTX platform.  All

2   operations are conducted from any large campus in which

3   hundreds of employees work.  So it can be thought of as the

4   main or primary operating company.

5          The entity, FTX Dig (audio interference) is not

6   included in the Delaware Chapter 11s that were filed.

7          MR. BROMLEY:  Your Honor, this is James Bromley from

8   Sullivan & Cromwell.  There are 102 debtors that have filed

9   before Judge Dorsey in the District of Delaware, not included

10  among those is FTX Digital Markets Ltd., a Bahamian

11  corporation.  That company was not filed because of the

12  commencement of the provisional liquidation as to that entity,

13  and that entity alone, in the Bahamas on November 10th.

14  Contrary to Mr. Gluck's representations, it is not the main

15  company by any stretch of the imagination in the FTX group of

16  companies, not that it matters.

17         This is an issue with respect to the location of the

18  Chapter 15 proceeding.  We have filed this morning for Judge

19  Dorsey a motion to transfer, which we have delivered to

20  chambers in a courtesy copy.

21         We are totally comfortable moving forward with dealing

22  with whether or not a Chapter 15 proceeding should go forward.

23  We are just of the view that because of the pendency and prior

24  filing of all of the 102 proceedings before Judge Dorsey, that

25  this proceeding, respectfully, should go forward before Judge

1    Dorsey and not Your Honor.

2            THE COURT:  And you've asked Judge Dorsey, not me, to

3    rule on the transfer motion; is that it?

4            MR. BROMLEY:  That's correct, Your Honor.  We have.

5    We have filed that motion this morning.  We delivered to your

6    chambers a courtesy copy of that request.

7            THE COURT:  Okay.  Just help me.  I understand that

8    the case had already been filed on behalf of this debtor.  It

9    would go to the first judge to deal with any transfer issues,

10   but why are you taking that transfer question to Judge Dorsey

11   and not to me?

12           MR. BROMLEY:  So Your Honor, under 1402, we believe

13   that the first filed rule applies in this circumstance as well.

14   We believe the rule is very clear.  There's precedent for this

15   in the Vitro case which took place in the Fifth Circuit a few

16   years ago.  The judicial economy, and frankly the substance of

17   all of the requests that are being made by the joint

18   provisional liquidators, go directly to the core of the Chapter

19   11 filing.  And it simply makes no sense to be dealing with a

20   Chapter 15 in one jurisdiction and the plenary proceedings for

21   102 related entities in another.  And we believe that the case

22   law is clear that the first filed jurisdiction in this

23   circumstance is Judge Dorsey, and therefore, that's why we

24   filed the application for transfer before Judge Dorsey.

25           THE COURT:  Mr. Gluck, why is this case before me and

1    not in front of Judge Dorsey?

2            MR. GLUCK:  Thank you, Your Honor.  This case is

3    before you because, after consulting with the joint provisional

4    liquidators and the United States Trustee for the District of

5    Delaware, and perhaps most importantly, the United States

6    Trustee for the Southern District of New York, there was a

7    considered analysis of the relevant venue provision, 28 U.S.C.

8    1410.  And applying that test, the clear place to file was the

9    Southern District of New York.  While I will -- Ms. Schwartz

10   can (audio interference) views to the Court yourself, it is my

11   understanding that that is a view shared by the estate, as to

12   the propriety of the filing and that this was clearly the right

13   place to file.  What I believe is being suggested is some sort

14   of equitable transfer.

15           I will note for this Court that the provisional

16   liquidators have not been provided a copy of this filing,

17   despite having asked for courtesy copies.  It is quite

18   surprising.  As far as precedent in support of an equitable

19   transfer, we can accept the representation that a case exists

20   (audio interference).

21           In terms of efficiencies and appropriateness of this

22   filing here, setting aside whether the venue test is met, which

23   we think it clearly is, we had a detailed conversation with the

24   United States Trustee.  And factors ranging from the pendency

25   of the other three primary actions in this space, Voyager,

1  Celsius, and Three Arrows, which is also a Chapter 15, renders

2  this court the best and clearly most efficient court for the

3  adjudication of these matters.

4          We further believe that the decision to file in

5  Delaware may have been one that is related to the fact that a

6  U.S. FTX subsidiary, also represented by the (audio

7  interference) on this call, are engaging in the Celsius

8  bankruptcy and Voyager bankruptcies, in particular, and those

9  overlaps may be something that is sought to be avoided.

10          On the whole, from every (audio interference) the best

11  judges.  On the whole, the privacy of the Southern District of

12  New York with respect to Chapter 15s in general, with respect

13  to these crypto winter cases in general, represents compelling

14  (audio interference) beyond plaintiff's choice of venue --

15  excuse me, petitioner's choice of venue, which is clearly

16  satisfied, there are real strong policy reasons why this should

17  move forward in New York.

18          I will also note something which is quite important:

19  Any decision as to venue in the view of the joint provisional

20  liquidators and their counsel must be analyzed in light of two

21  matters that are not yet (audio interference).  Matter one is

22  that -- and perhaps most likely of the two on the time frame --

23  matter one is that there may well be an 1104(e) motion in

24  Delaware very soon, one which could fundamentally change both

25  the motion filed in that court and the content of the debtors'

1  positions.

2          Secondly, for a number of reasons, there is a serious

3  question regarding the validity of those Chapter 11 filings,

4  principally because they occurred after the Bahamas Securities

5  Commission had placed FTX Digital into bankruptcy proceedings,

6  what they call insolvency proceedings.

7          And in addition to significant questions going to the

8  validity of the transfer of power document, under either New

9  York -- let's assume it's Bahama's law, but most likely New

10  York law -- in addition to serious concerns with that document

11  itself and the circumstances under which it was executed, there

12  is significant and substantial concern that while (audio

13  interference) requested a statement as to how it could be that

14  the Bahamas court order and stay, which relieved -- which

15  provided the joint provisional liquidators with their

16  authority.

17          And A (audio interference) Mr. Bankman-Fried, in his

18  position at FTX Digital.  And B, required anyone at FTX Digital

19  to obtain express written instructions prior to taking an act

20  from the provisional liquidator of FTX Digital.  And whereas no

21  such instruction was issued or authorized in any way, shape, or

22  form, at the time when the purported signature of Mr. Bankman-

23  Fried was made from the Bahamas, he was at that time an officer

24  or director or manager of the foreign debtor.

25          It is metaphysically impossible from our view -- and

1   again, we have respectfully requested a statement as to how it

2   good be otherwise, but metaphysically impossible (audio

3   interference) signature to have not also been made by Mr.

4   Bankman-Fried in his capacity as employee, manager, or director

5   of FTX Digital.  And on that basis, there is concern that that

6   act was directly in violation of the Bahamas court order at a

7   minimum.

8           And until the 1104 issue and the Chapter 11 validity

9   issues are dealt with, to put it mildly, we would believe that

10  a decision, certainly from this Court -- or without breathing,

11  but the decision on venue is premature.

12          Now, we have also engaged in a fairly lengthy

13  discussion with the Southern District of New York trustee this

14  morning and --

15          MS. SCHWARTZ:  Your Honor?  I think that I'll just say

16  that -- this is Andrea Schwartz.  I would just say that I would

17  ask that if Your Honor wants to hear from the U.S. Trustee that

18  we speak, that I have the opportunity to speak to the Court,

19  not through counsel for the Chapter 15 debtor.  I --

20          MR. GLUCK:  Yes.  I was actually going to say what we

21  said to her, but my apologies for invoking.  What we have

22  suggested is that this is an unfortunate circumstance.  I think

23  the Court will find that these sets of court fiduciaries are

24  attempting to be the adults in the room here, not the reactive,

25  to be clear.  And everyone wants the best and most efficient

1  outcome.  And so perhaps, the Delaware proceedings could be

2  joined in New York, and perhaps, the New York Chapter 15

3  proceeding could be joined in Delaware.

4          We were not consulted in way, shape, or form prior to

5  the making of this motion.  We have reviewed it.  We don't

6  believe it should be granted, but that doesn't mean that the

7  concept of one forum does not have merit.  It is just, at this

8  stage, probably too early to decide which forum should be the

9  forum if it is necessary to consolidate.

10          Another important point is that, putting aside New

11  York and Delaware for a moment, the concerns of the Bahamas

12  stakeholders, the JPLs, and frankly, their counsel, is actually

13  (audio interference) between the Bahamas court and the -- what

14  could remain at least a set of bankruptcy proceedings regarding

15  the United States entities.  And it's that interaction, which

16  at least our view should be on everybody's focus.  The networks

17  and the computers are all in the Bahamas.  Every employee is

18  there.  That's where the data is.  That's where the property is

19  or a significant amount of property.

20          It is quite important (audio interference) to submit

21  for the Bahamas-United States relationship to be well-oiled and

22  interactive in a case like this.  And that, frankly, probably

23  takes precedence over whether it's in Delaware or New York

24  (audio interference).

25          And for all of those reasons at a very basic level,

1  there is a provisional application filed.  It does seek

2  intentionally very modest relief, discovery relief that doesn't

3  in any way interfere with the Chapter 11 proceedings (audio

4  interference) in witness or documents here.  It seeks the basic

5  ability to (audio interference) JPLs appear in the United

6  States Court, including Delaware as a party-in-interest.  And

7  it seeks an order, any creditor from gaining a priority,

8  attachment, execution, while the issue of recognition is

9  decided.

10           And just to tee up that particular issue on

11  recognition, this is a bankruptcy proceeding in FTX Digital's

12  both in (audio interference) and center of main interest.  It's

13  a lot different than many of the cases that get filed.  It's

14  much more akin with Baha Mar.  But here, FTX Digital was

15  absolutely operated from the Bahamas with all of these hundreds

16  of employees.  It's large complex.  It was regulated.  And

17  therefore, unless the test for recognition is somehow not met

18  in a way that we can't conceive, that the case for setting

19  aside any other issues, (audio interference) of the Bahamas

20  provisional liquidation under Chapter 15 ought to be fairly

21  clear and straightforward.  Thank you.

22           THE COURT:  Okay.  I have two questions for you.

23  Number one, as I understand it, while you've said the venue is

24  a hundred percent here, your argument for venue here is based

25  entirely on the fact that you would like me to make your

1  retainer deposit in New York as opposed to Delaware.  There's

2  no other basis for venue here, I understand.

3          MR. GLUCK:  Under the statue, that is correct, that

4  this is the only place -- let me explain it.  It's not that

5  there was -- I think there was a reference to an ability to

6  file in Delaware based on share value and some subsidiary that

7  we haven't confirmed exists.  But New York is the only place in

8  the United States where the foreign debtor is (audio

9  interference) is unquestionably due to that retainer payment.

10          On a merits and equitable level, that decision was

11  driven by all of the policy reasons we have stated, and in

12  fact, communicated (audio interference) to the Delaware Untied

13  States Trustee, the Southern District of New York Trustee, and

14  the various other regulators and governmental entities in

15  advance.

16          THE COURT:  You've also essentially told me that your

17  primary U.S. issue is your desire to get information from the

18  Delaware companies and your dispute as to whether the Delaware

19  proceedings are legitimate, at all.  How can you tell me that

20  and at the same time that this isn't an issue that should be

21  decided by Judge Dorsey (audio interference) before --

22          MR. GLUCK:  Hmm.

23          THE COURT:  -- (indiscernible) pending.

24          MR. GLUCK:  What I would say that in the first

25  instance, for the reasons stated, the query of whether that

1    proceeding goes ahead as (audio interference) is a significant

2    one, and therefore, joining up with a proceeding that go ahead,

3    or may go ahead in a vastly different form, didn't at least

4    make sense to the petitioners.  It was obviously discussed with

5    others.  (Audio interference) as the relief being sought.  It

6    also really -- it is obviously the stay, itself, both as to the

7    provisional liquidators and the entity.

8            As far as the discovery is concerned, it is not as if

9    there is any remaining, I think, employees of FTX that are

10   under the debtor's control or at least we don't -- we think

11   they brought in a -- we understand they brought in a whole new

12   team.  I don't think we'd be seeking discovery from them, or

13   certainly that's not our intent, if there was a

14   misunderstanding.

15           What we are rather seeking (audio interference) for

16   example, banks, who may hold accounts, accountants, investors,

17   witnesses, things that are external to the Delaware action in

18   which hours after the bankruptcy filings were made, there were

19   undoubtedly a series of Chapter 11 filings made.  And we are

20   hopeful that everyone can arrive at a sensible solution here

21   that affords the ability of everyone to do their basic job.

22           That is why, while there is undoubtedly a connection

23   to Delaware by virtue of the relief sought in this Court, one

24   which we highlighted in the (audio interference), the notion

25   that Delaware is either the appropriate jurisdiction to decide

1   a motion to transfer venue or that Delaware will be the

2   ultimate jurisdiction in which various proceedings involving

3   the international group of FTX entities are performed is not a

4   forgone conclusion either.

5          THE COURT:  Okay.

6          MS. SCHWARTZ:  Judge, this is Andrea Schwartz of the

7   U.S. Trustee.  May I be heard?

8          THE COURT:  Yes.

9          MS. SCHWARTZ:  Thank you, Your Honor.  Your Honor,

10  first, I just want to advise the Court that as with all filings

11  that our made in our district, we are notified in advance.  We

12  speak with counsel for debtor that's going to be filing, and we

13  ask a host of questions, including as Your Honor did, basis for

14  venue.

15         One of the things that Mr. Gluck did not state today,

16  which we had been advised, was that venue was definitely, as

17  Your Honor understands, based on principal assets in the

18  District, but also that it wasn't just a retainer, it was also

19  the de situs of many of these coins.  That was explained to us

20  also.

21         Again, Your Honor, I mean, all of this happening on a

22  very fast basis.  And as acknowledged by Mr. Bromley, they

23  filed their motion to transfer venue this morning.  And I have

24  to be frank with you, I haven't had an opportunity to fully

25  review that or even read most of it, although questions

1  concerning well, why is the 15 being filed in New York as
2  opposed to Delaware and so forth, have certainly been inquiries
3  that we have on an informal basis with not only the Chapter 15
4  debtor but also the Chapter 11 debtors.  And we spoke with Mr.
5  Bromley and his colleague, Mr. Glueckstein this morning, just
6  to gather information as to why the parties are doing what
7  they're doing.

8        To be clear, Your Honor, the United States Trustee
9  hasn't taken any position, at all, with respect to whether
10 venue is proper in New York, whether it's proper in Delaware,
11 whether the motion to file -- the motion to transfer venue
12 filed in Delaware is the appropriate place for that motion when
13 the Chapter 15 debtor is in New York.  These have just been
14 informal discussions and information gathering by the United
15 States Trustee to understand what the relationship is between
16 the Chapter 15 debtor and the Chapter 11 debtors, and it's
17 certainly clear, and I think Your Honor is getting that as
18 well, that there is still a lot of information to be gathered.

19       It's a free-fall bankruptcy.  And I don't think
20 either -- at least from our discussions, either the Chapter 15
21 debtor or the Chapter 11 debtors have a whole set of facts.  I
22 think they're both working feverishly to gather all the facts.
23 It doesn't appear to me that there's a yet a consensus between
24 the Chapter 15 debtor and the Chapter 11 debtors on this issue.
25 But I wanted to just let the Court know, and I think Your Honor

1  does know, that we have not taken any position on this, at all,

2  of whether in the Delaware court or in New York.  It's just our

3  process of gathering information so that we can, like the

4  Court, understand the basis for the filings and the relief

5  being sought.

6            THE CLERK:  Judge, this is Lorraine  Just to clarify,

7  there is no motion to transfer venue filed on the docket.

8            MS. SCHWARTZ:  It's filed in Delaware, Lorraine.

9            THE COURT:  Yeah.  I understand.  It was filed before

10  Judge Dorsey in Delaware.

11            MS. SCHWARTZ:  Yes.

12            THE COURT:  All right.  Mr. Bromley, do you have

13  anything else you wish to add?

14            MR. BROMLEY:  Yes, Your Honor.  Mr. Gluck said quite a

15  few things.  I'm not going to try to respond to all of them

16  because I don't think it's appropriate for this setting.  We

17  are in before Your Honor on a status conference as to

18  scheduling a hearing on the applications of the joint

19  provisional liquidators before Your Honor.

20            We have filed a motion to transfer before Judge

21  Dorsey.  We believe that the application before Judge Dorsey

22  should be resolved before any actions proceed here before Your

23  Honor.

24            The issues that Mr. Gluck raised, while many, would

25  all be resolved and will all be resolved before Judge Dorsey.

1    Not a single argument that he has, equitable, legal, or

2    metaphysical is going to be foreclosed by dealing with this

3    before Judge Dorsey.

4          And it is critical that we recognize that there are

5    clear, black-letter rules in the United States that the venue

6    is the debtor's choice.  There is appropriate venue for the 102

7    debtors in Delaware.  We have not only 102 debtors, but dozens

8    and dozens of Delaware corporations and LLCs.  The issues that

9    we need to deal with are critically important.  And the relief,

10   the provisional relief that is being sought, go directly to

11   issues that are central to Judge Dorsey's supervision of the

12   102 debtors that are before him.

13         The primary issues that have been raised as Your Honor

14   noted are one, is the filing legitimate?  That is clearly

15   within the purview of Judge Dorsey.  We believe strongly that

16   the filings were absolutely permitted.  And we're saying that

17   clearly on the record because there is an enormous amount of

18   press that is being generated as a result of these proceedings.

19   We have zero concern about the authority to have filed the 102

20   debtors before the bankruptcy court in Delaware.

21         And certainly, the fact that we did not file the

22   Bermuda -- I mean, Bahamas entity is clear that we thought

23   carefully about whether or not there was power to file that

24   one.

25         We disagree entirely with Mr. Gluck's representations

1  with respect to the facts, and that's all they are.  They are

2  simply counsel representations.  There are no facts before Your

3  Honor and nothing to rule on.

4      More importantly though, this question of the relief

5  that is being sought, it is not minor relief.  It is not

6  unrelated relief.  It is central to the maintenance of the

7  assets of these debtors in this particular situation.

8      These debtors present an unprecedented set of facts.

9  The nature of the assets, the digital nature of the assets, the

10  fact that they are located everywhere around the world -- and

11  indeed, we have employees everywhere around the world -- means

12  that the control of a U.S. court over discovery and collection

13  of those assets is critical.  That's why we're in front of

14  Judge Dorsey, with no disrespect to the Southern District of

15  New York, but it's the debtor's choice to file in Delaware, and

16  that choice should be respected.

17      The law is clear that the first filed case is the

18  court in which any transfer is to be considered and --

19      THE COURT:  Which provision are you relying on then as

20  having --

21      MR. BROMLEY:  It's Rule 1014(b) of the Federal Rules

22  of Bankruptcy Procedure, Your Honor.  And the Vitro case has

23  facts entirely consistent with the facts that we have here.

24  Vitro is a Fifth Circuit case where there was a pending Chapter

25  11 before the bankruptcy court in Galveston.  A Chapter 15 case

1  was commenced in the Southern District of New York, an

2  application was made before the court in Galveston to move the

3  Chapter 15 to Galveston, and the bankruptcy court in Galveston

4  ruled in favor of the transfer, and the Chapter 15 was moved

5  from New York to Dallas.

6          THE COURT:  All right.  I'd remember that certainly if

7  it was the same debtor that the Rule called for the first filed

8  court to make the decision.  But this does say --

9          MR. BROMLEY:  It does say affiliate, Your Honor.

10          THE COURT:  Yeah.  A debtor or an affiliate, if the

11  court in the district in which the first filed petition is

12  pending to determine where the case should be proceed.

13          Mr. Gluck, do you disagree with that interpretation of

14  1014(b)?

15          MR. GLUCK:  I don't concur with the conclusion.  I'm

16  reviewing that statute as we speak.  And the question is

17  whether it's in the interest of justice or for the convenience

18  of the parties.  And for a number of reasons that have (audio

19  interference) in the interest of justice and the convenience of

20  the parties for this to go forward in the Southern District of

21  New York that -- and I will not repeat the prior arguments.

22          But it is unclear how exactly recognizing a Bahamas

23  bankruptcy that is not (audio interference) 11 or permitting

24  discovery interferes in any way with the operation of those

25  Chapter 11s.  We are not seeking to attach their assets in the

1    United States.  We have obviously admittable assets in the

2    United States.  We are not seeking to, in any way, violate the

3    stay via discovery.  We are seeking recognition provisionally,

4    and then ultimately, of a foreign bankruptcy that was properly

5    commenced.  And I do not (audio interference) that there is an

6    interference, such as the type, described as a result of this

7    relief sought.

8          If there was to be -- and I hope there never is.  If

9    there was to ever be some sort of motion or something seeking

10   dismissal of the Chapter 11s, sure, that's a Delaware issue,

11   but we're not filing a motion.  We have only sought

12   recognition, the ability to appear in court.  For example, I

13   suppose we will appear (audio interference) to contest the

14   venue motion.  We have sought protections to the joint

15   provisional liquidators.  Why does any of that interfere with

16   the admiral goals, coordination, gathering assets, (audio

17   interference) that's the debtors-in-possession, the Chapter 11

18   debtors?  It won't interfere at all.

19         THE COURT:  All right.  Let me say this, I have no

20   intention, at all, of putting myself in a situation where I am

21   arguably being called on to make rulings on questions where

22   there is an issue as to whether I or the Delaware court should

23   be making the rulings or where there is potential conflict

24   between our rulings, which is exactly what you're trying to set

25   up by making this filing in New York.

1          Everything that you have said convinces me, if I were

2     being asked on the issue, this case belongs in Delaware, not

3     New York, and your arguments that it belongs in New York are

4     extremely weak.  I am not going to rule on anything that you

5     have asked me to do.

6          Let me ask you this, Mr. Bromley, have you asked for a

7     fast ruling by Judge Dorsey on the transfer issue?

8          MR. BROMLEY:  Yes, Your Honor.  We have filed along

9     with our motion to transfer a motion for to schedule an

10    emergency hearing.

11         THE COURT:  All right.  Please keep us advised as to

12    what Judge Dorsey does with that schedule.  If he does not

13    grant an expedited hearing, then I will schedule a hearing for

14    recognition of the Chapter 15.  In fact, Mr. Bromley, if you

15    don't object to my doing that, I might go ahead and do that

16    anyway because that hearing can still proceed either here or in

17    Delaware, what happens to the transfer issue.  But I'm not

18    doing anything else until I hear what's going on with the

19    transfer.

20         MR. BROMLEY:  Your Honor, we completely understand.

21    Obviously, we need some time to be able to have the hearing

22    before Judge Dorsey.  I'm sure he will -- we are confident he

23    will give us hearing on short notice.  So and we do have the

24    holiday coming up.  So if we're talking maybe the first week of

25    December for recognition, at the earliest, I think that would

1  be fine.

2          THE COURT:  All right.  We will schedule a recognition

3  hearing probably for the second week in December.

4          MR. BROMLEY:  Okay.

5          THE COURT:  And obviously, it will be subject to what

6  happens with the transfer issue.

7          MR. BROMLEY:  Thank you very much, Your Honor.

8          MR. GLUCK:  Thank you very much, Your Honor.  Warren

9  Gluck, and we understand the Court's decision for the Court's

10  notice.  There was absolutely no intent for this Court to make

11  a ruling on venue because at the time of the application, the

12  venue was not being disputed.  That happened this morning.  So

13  I can assure the Court that the reasons this particular

14  proceeding was filed in New York are for those stated.

15          THE COURT:  But you were about --

16          MR. GLUCK:  Thank you, Your Honor.

17          THE COURT:  You were about to ask me to make rulings

18  about what discovery you should obtain from the debtors; is

19  that right?

20          MR. GLUCK:  No, no, not at all.  We had understood

21  that the Court would, in due course, set a hearing on the

22  provisional relief sought in the application.  It was not our

23  understanding -- certainly not our understanding that today in

24  any way related to the relief sought and that today was only

25  this (audio interference).  This was not --

1          THE COURT:  But you --

2          MR. GLUCK:  -- the hearing on the provisional relief.

3          THE COURT:  You wanted shortened notice on a motion to

4    have me consider, next week, whether you could get discovery

5    from the debtors?

6          MR. GLUCK:  Not from the debtors.  A shortened notice

7    for a hearing next week (audio interference) protecting the

8    debtors, the foreign debtors and their entities, not taking any

9    of the debtors -- the proposed order actually has italicized

10   and highlighted solely to the extent that it does not interfere

11   with the Chapter 11 and no discovery of the debtors is sought

12   or (audio interference).  The only matter which we were asking

13   for was the scheduling of a hearing on the provisional relief.

14   And at that hearing, on shorter notice, there is zero discovery

15   directed at the debtors.  That is expressed (audio

16   interference) by the terms of both the motion and the proposed

17   order presented, in fact, highlighted.

18          THE COURT:  All right.

19          MR. BROMLEY:  Your Honor, I am quite honestly

20   befuddled by Mr. Gluck.  To the extent that he or the joint

21   liquidators have looked at any of the books and records of the

22   company, that representation he just made is completely

23   inaccurate, impossible to follow through without having access

24   to books, records, and employees of the U.S. debtors, simply

25   impossible.

1          MR. GLUCK:  That is not a comment that I understand.

2    (Audio interference) server, I believe in the Bahamas.  We are

3    not seeking at this time -- and until there is a decision to

4    either share information or not, we are not seeking discovery

5    from the U.S. debtors.  I can't state that clearly enough.  I

6    frankly didn't understand the comment just made.  (Audio

7    interference) or a deposition notice on any employee, U.S.

8    debtors.  We will not seek documents in the United States

9    (audio interference).

10          THE COURT:  All right.  This is what -- here is what

11   I'm going to do, I'm going to give you a recognition hearing in

12   the second week of December.  I'm going to shorten notice on

13   your request for interim provisional relief so that I'll hear

14   that application on the 28th at 11 o'clock.  I'll consider any

15   and all objections to it.  You're not asking for any interim

16   provisional relief between now and then, are you?

17          MR. GLUCK:  I am not.  Only to the extent with this

18   Court's permission -- I understand there is some conflicting

19   case law.  Would this Court permit the provisional liquidators

20   to appear in Delaware?  That is the only thing I think we could

21   even possibly ask.

22          THE COURT:  Do you need my approval to do that?  And

23   Mr. Bromley, would you --

24          MR. GLUCK:  Hmm.   I think there's mixed case law.  I

25   think the provisional liquidators would prefer the approval,

1   and if that approval can't be done now, they would probably do

2   it on perhaps the (audio interference).

3            MR. BROMLEY:  Your Honor, we --

4            MR. GLUCK:  I'm not sure.

5            MR. BROMLEY:  We have no problem for the joint

6   provisional liquidators or their counsel appearing in the

7   Delaware proceedings.  We do not believe it's appropriate for

8   this Court to enter any order authorizing them to do so.  We

9   don't think it's necessary.  We're certainly not going to take

10  any attempts to say that they are incapable of appearing.  This

11  is simply a creeping exercise by Mr. Gluck to try to get this

12  Court to do more than it's willing to do.

13           We need to wait for Judge Dorsey to take a look at the

14  motion to transfer.  Mr. Gluck will have all opportunity to

15  oppose in Delaware.  And certainly, the U.S. debtors here are

16  in no way, shape, or form going to oppose him or the joint

17  liquidators appearing in that proceeding to advance their

18  rights with respect to the motion to transfer.

19           THE COURT:  Well, I will give you the following, Mr.

20  Gluck, I will say that to the extent necessary, you have the

21  authority to appear in the Delaware proceedings, but I won't go

22  further than that.

23           MR. GLUCK:  Thank you very much.

24           THE COURT:  And Mr. Bromley, I don't see how that can

25  hurt you or inadvertently do anything other than what you've

1  agreed is appropriate.

2          MR. BROMLEY:  And we certainly, as I think you

3  understand, Your Honor, believe that Mr. Gluck and his client

4  should be in Delaware.  So we have no opposition to them being

5  there.

6          THE COURT:  Yeah.  I understand.  All right.  Revise

7  your proposed orders accordingly, Mr. Gluck, and run them

8  through Mr. Bromley.  And hopefully you can agree on the terms

9  and submit your agreed forms of order.  If you can't agree, let

10  us know and we'll resolve the differences.  Okay?

11          MR. GLUCK:  Yes, Your Honor.  Thank (audio

12  interference).  Nothing further, Your Honor, on behalf of

13  petitioners.

14          THE COURT:  Okay.

15          THE CLERK:  Judge, one other point, just so the

16  parties know, we are a paperless chamber.  Therefore, anything

17  that's timely filed on the docket is retrieved from the docket.

18  If it's something that's not on the docket or you need to bring

19  it to the judge's attention, please email it to the chamber's

20  email.  Thank you.

21          MR. GLUCK:  Thank you very much.  We appreciate that.

22  We will do so.

23          THE COURT:  Thank you, all, and apologies again for

24  the late start.

25          MR. GLUCK:  Thank you for your accommodations, Your

1    Honor.  Have a great day.

2            THE COURT:  Thank you.

3            MS. SCHWARTZ:  Thank you, Judge.

4            THE COURT:  All right.  Unless, there's anything else,

5    we are adjourned.

6        (Whereupon these proceedings were concluded at 12:27 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Cathy L. Kleinbart, certify that the foregoing transcript is

5    a true and accurate record of the proceedings.

6

7

8

9

10   _____

11   Cathy L. Kleinbart

12

13   eScribers

14   7227 North 16th Street, Suite #207

15   Phoenix, AZ 85020

16

17   Date:  November 18, 2022

18

19

20

21

22

23

24

25

Case 22-11068-JTD   Doc 44-1   Filed 11/18/22   Page 33 of 39
FTX Digital Markets LTD and Brian C. Simms
Main Case No. 22-11516-mew

November 17, 2022

**A**

**ability (4)**
14:5;15:5;16:21;
23:12
**able (1)**
24:21
**absolutely (3)**
14:15;20:16;25:10
**accept (1)**
9:19
**access (1)**
26:23
**accommodations (1)**
29:25
**accordingly (1)**
29:7
**accountants (1)**
16:16
**accounts (1)**
16:16
**acknowledged (1)**
17:22
**act (2)**
11:19;12:6
**action (1)**
16:17
**actions (2)**
9:25;19:22
**actually (3)**
12:20;13:12;26:9
**ADAM (1)**
4:7
**add (1)**
19:13
**addition (2)**
11:7,10
**adjourned (1)**
30:5
**adjudication (1)**
10:3
**admiral (1)**
23:16
**admittable (1)**
23:1
**adults (1)**
12:24
**advance (3)**
15:15;17:11;28:17
**advise (1)**
17:10
**advised (2)**
17:16;24:11
**affiliate (2)**
22:9,10
**affiliated (1)**
6:14
**affords (1)**
16:21
**again (3)**
12:1;17:21;29:23
**ago (1)**

**8:16**

**agree (2)**
29:8,9
**agreed (2)**
29:1,9
**ahead (4)**
16:1,2,3;24:15
**akin (1)**
14:14
**AL (1)**
4:3
**alone (1)**
7:13
**along (1)**
24:8
**although (1)**
17:25
**among (1)**
7:10
**amount (2)**
13:19;20:17
**analysis (1)**
9:7
**analyzed (1)**
10:20
**ANDREA (4)**
5:8;6:15;12:16;
17:6
**apologies (2)**
12:21;29:23
**apologize (1)**
6:2
**appear (6)**
14:5;18:23;23:12,
13;27:20;28:21
**appearance (1)**
6:11
**appearing (3)**
28:6,10,17
**application (7)**
8:24;14:1;19:21;
22:2;25:11,22;27:14
**applications (1)**
19:18
**applies (1)**
8:13
**applying (1)**
9:8
**appreciate (1)**
29:21
**appropriate (6)**
16:25;18:12;
19:16;20:6;28:7;
29:1
**appropriateness (1)**
9:21
**approval (3)**
27:22,25;28:1
**arguably (1)**
23:21
**argument (2)**
14:24;20:1
**arguments (2)**

**22:21;24:3**

**around (2)**
21:10,11
**arrive (1)**
16:20
**Arrows (1)**
10:1
**aside (3)**
9:22;13:10;14:19
**assets (8)**
17:17;21:7,9,9,13;
22:25;23:1,16
**assume (1)**
11:9
**assure (1)**
25:13
**attach (1)**
22:25
**attachment (1)**
14:8
**attempting (1)**
12:24
**attempts (1)**
28:10
**attention (1)**
29:19
**Attorney (3)**
4:3,10,17
**Attorneys (1)**
5:3
**audio (38)**
7:5;9:10,20;10:6,
10,14,21;11:12,17;
12:2;13:13,20,24;
14:3,5,12,19;15:8,
12,21;16:1,5,15,24;
22:18,23;23:5,13,16;
25:25;26:7,12,15;
27:2,6,9;28:2;29:11
**authority (3)**
11:16;20:19;28:21
**authorized (1)**
11:21
**authorizing (1)**
28:8
**avoided (1)**
10:9

**B**

**Baha (1)**
14:14
**Bahamas (14)**
6:25;7:13;11:4,14,
23;12:6;13:11,13,17;
14:15,19;20:22;
22:22;27:2
**Bahama's (1)**
11:9
**Bahamas-United (1)**
13:21
**Bahamian (1)**
7:10

**Bankman- (1)**
11:22
**Bankman-Fried (2)**
11:17;12:4
**bankruptcies (1)**
10:8
**bankruptcy (12)**
10:8;11:5;13:14;
14:11;16:18;18:19;
20:20;21:22,25;22:3,
23;23:4
**banks (1)**
16:16
**based (3)**
14:24;15:6;17:17
**basic (3)**
13:25;14:4;16:21
**basis (6)**
12:5;15:2;17:13,
22;18:3;19:4
**befuddled (1)**
26:20
**behalf (5)**
6:5,8,13,24;8:8;
29:12
**belongs (2)**
24:2,3
**Bermuda (1)**
20:22
**best (3)**
10:2,10;12:25
**beyond (1)**
10:14
**black-letter (1)**
20:5
**books (2)**
26:21,24
**both (5)**
10:24;14:12;16:6;
18:22;26:16
**breathing (1)**
12:10
**Brian (1)**
6:13
**bring (1)**
29:18
**BROMLEY (27)**
6:12,13,21,23;7:7,
7;8:4,12;17:22;18:5;
19:12,14;21:21;
22:9;24:6,8,14,20;
25:4,7;26:19;27:23;
28:3,5,24;29:2,8
**Brooklyn (1)**
4:12
**brought (2)**
16:11,11

**C**

**call (2)**
10:7;11:6
**called (2)**

**22:7;23:21**

**campus (1)**
7:2
**can (10)**
7:3;9:10,19;15:19;
16:20;19:3;24:16;
25:13;28:24;29:8
**capacity (1)**
12:4
**carefully (1)**
20:23
**case (16)**
8:8,15,21,25;9:2,
19;13:22;14:18;
21:17,22,24,25;
22:12;24:2;27:19,24
**cases (2)**
10:13;14:13
**Celsius (2)**
10:1,7
**center (2)**
7:1;14:12
**central (2)**
20:11;21:6
**certainly (10)**
12:10;16:13;18:2,
17;20:21;22:6;
25:23;28:9,15;29:2
**chamber (1)**
29:16
**chambers (2)**
7:20;8:6
**chamber's (1)**
29:19
**change (1)**
10:24
**Chapter (32)**
7:6,18,22;8:18,20;
10:1,12;11:3;12:8,
19;13:2;14:3,20;
16:19;18:3,4,13,16,
16,20,21,24,24;
21:24,25;22:3,4,25;
23:10,17;24:14;
26:11
**CHIRSTINE (1)**
4:14
**choice (5)**
10:14,15;20:6;
21:15,16
**Circuit (2)**
8:15;21:24
**circumstance (3)**
8:13,23;12:22
**circumstances (1)**
11:11
**clarify (1)**
19:6
**clear (10)**
8:14,22;9:8;12:25;
14:21;18:8,17;20:5,
22;21:17
**clearly (7)**

9:12,23;10:2,15;
20:14,17;27:5
**CLERK (2)**
19:6;29:15
**client (1)**
29:3
**COBB (1)**
4:2
**coins (1)**
17:19
**colleague (1)**
18:5
**collection (1)**
21:12
**comfortable (1)**
7:21
**coming (1)**
24:24
**commenced (2)**
22:1;23:5
**commencement (1)**
7:12
**comment (2)**
27:1,6
**Commission (1)**
11:5
**communicated (1)**
15:12
**companies (2)**
7:16;15:18
**company (4)**
7:4,11,15;26:22
**compelling (1)**
10:13
**completely (2)**
24:20;26:22
**complex (1)**
14:16
**computers (1)**
13:17
**conceive (1)**
14:18
**concept (1)**
13:7
**concern (3)**
11:12;12:5;20:19
**concerned (1)**
16:8
**concerning (1)**
18:1
**concerns (2)**
11:10;13:11
**concluded (1)**
30:6
**conclusion (2)**
17:4;22:15
**concur (1)**
22:15
**conducted (1)**
7:2
**conference (1)**
19:17
**confident (1)**

24:22
**confirmed (1)**
15:7
**conflict (1)**
23:23
**conflicting (1)**
27:18
**connection (1)**
16:22
**consensus (1)**
18:23
**consider (2)**
26:4;27:14
**considered (2)**
9:7;21:18
**consistent (1)**
21:23
**consolidate (1)**
13:9
**consulted (1)**
13:4
**consulting (1)**
9:3
**content (1)**
10:25
**contest (1)**
23:13
**Contrary (1)**
7:14
**control (2)**
16:10;21:12
**convenience (2)**
22:17,19
**conversation (1)**
9:23
**convinces (1)**
24:1
**coordination (1)**
23:16
**copies (1)**
9:17
**copy (3)**
7:20;8:6;9:16
**core (1)**
8:18
**CORNELL (2)**
5:9;6:16
**corporation (1)**
7:11
**corporations (1)**
20:8
**counsel (6)**
10:20;12:19;
13:12;17:12;21:2;
28:6
**course (1)**
25:21
**COURT (68)**
6:2,10,17;8:2,7,25;
9:10,15;10:2,2,25;
11:14;12:6,10,18,23,
23;13:13;14:6,22;
15:16,23;16:23;17:5,

8,10;18:25;19:2,4,9,
12;20:20;21:12,18,
19,25;22:2,3,6,8,10,
11;23:12,19,22;
24:11;25:2,5,10,13,
15,17,21;26:1,3,18;
27:10,19,22;28:8,12,
19,24;29:6,14,23;
30:2,4
**courtesy (3)**
7:20;8:6;9:17
**Court's (3)**
25:9,9;27:18
**creditor (1)**
14:7
**creeping (1)**
28:11
**critical (2)**
20:4;21:13
**critically (1)**
20:9
**Cromwell (2)**
6:13;7:8
**crypto (1)**
10:13

## D

**Dallas (1)**
22:5
**data (1)**
13:18
**David (1)**
6:8
**day (1)**
30:1
**DE (2)**
4:5;17:19
**deal (2)**
8:9;20:9
**dealing (3)**
7:21;8:19;20:2
**dealt (1)**
12:9
**debtor (12)**
8:8;11:24;12:19;
15:8;17:12;18:4,13,
16,21,24;22:7,10
**debtors (25)**
6:14;7:8;18:4,16,
21,24;20:7,7,12,20;
21:7,8;23:18;25:18;
26:5,6,8,8,9,11,15,
24;27:5,8;28:15
**debtors' (1)**
10:25
**debtor's (3)**
16:10;20:6;21:15
**debtors-in-possession (1)**
23:17
**December (3)**
24:25;25:3;27:12
**decide (2)**

13:8;16:25
**decided (2)**
14:9;15:21
**decision (8)**
10:4;19;12:10,11;
15:10;22:8;25:9;
27:3
**definitely (1)**
17:16
**Delaware (39)**
6:20;7:6,9,9;9:5;
10:5,24;13:1,3,11,
23;14:6;15:1,6,12,
18,18;16:17,23,25;
17:1;18:2,10,12;
19:2,8,10;20:7,8,20;
21:15;23:10,22;24:2,
17;27:20;28:7,15,21;
29:4
**delivered (2)**
7:19;8:5
**DEPARTMENT (1)**
5:2
**deposit (1)**
15:1
**deposition (1)**
27:7
**described (1)**
23:6
**description (1)**
6:18
**desire (1)**
15:17
**despite (1)**
9:17
**detailed (1)**
9:23
**determine (1)**
22:12
**differences (1)**
29:10
**different (2)**
14:13;16:3
**Dig (1)**
7:5
**Digital (11)**
4:10;6:25,25;7:10;
11:5,18,18,20;12:5;
14:14;21:9
**Digital's (1)**
14:11
**directed (1)**
26:15
**directly (3)**
8:18;12:6;20:10
**director (2)**
11:24;12:4
**disagree (2)**
20:25;22:13
**discovery (11)**
14:2;16:8,12;
21:12;22:24;23:3;
25:18;26:4,11,14;

27:4
**discussed (1)**
16:4
**discussion (1)**
12:13
**discussions (2)**
18:14,20
**dismissal (1)**
23:10
**dispute (1)**
15:18
**disputed (1)**
25:12
**disrespect (1)**
21:14
**District (13)**
7:9;9:4,6,9;10:11;
12:13;15:13;17:11,
18;21:14;22:1,11,20
**docket (4)**
19:7;29:17,17,18
**document (2)**
11:8,10
**documents (2)**
14:4;27:8
**done (1)**
28:1
**Dorsey (21)**
7:9,19,24;8:1,2,10,
23,24;9:1;15:21;
19:10,21,21,25;20:3,
15;21:14;24:7,12,22;
28:13
**Dorsey's (1)**
20:11
**downtown (1)**
6:4
**dozens (2)**
20:7,8
**driven (1)**
15:11
**due (2)**
15:9;25:21

## E

**earliest (1)**
24:25
**early (1)**
13:8
**economy (1)**
8:16
**efficiencies (1)**
9:21
**efficient (2)**
10:2;12:25
**either (7)**
11:8;16:25;17:4;
18:20,20;24:16;27:4
**ELLIS (1)**
4:9
**else (4)**
6:10;19:13;24:18;

Case 22-11068-JTD    Doc 44-1    Filed 11/18/22    Page 35 of 39
FTX Digital Markets LTD and Brian C. Simms
Main Case No. 22-11516-mew

November 17, 2022

30:4

**email (2)**
29:19,20

**emergency (1)**
24:10

**employee (1)**
12:4;13:17;27:7

**employees (5)**
7:3;14:16;16:9;
21:11;26:24

**engaged (1)**
12:12

**engaging (1)**
10:7

**enormous (1)**
20:17

**enough (1)**
27:5

**enter (2)**
6:10;28:8

**Enterprise (1)**
6:19

**entirely (3)**
14:25;20:25;21:23

**entities (5)**
8:21;13:15;15:14;
17:3;26:8

**entity (7)**
6:19;7:1,5,12,13;
16:7;20:22

**equitable (4)**
9:14,18;15:10;
20:1

**ESQ (5)**
4:7,14,21;5:8,9

**essentially (1)**
15:16

**estate (1)**
9:11

**ET (1)**
4:3

**even (2)**
17:25;27:21

**everybody (1)**
6:2

**everybody's (1)**
13:16

**everyone (3)**
12:25;16:20,21

**everywhere (2)**
21:10,11

**exactly (2)**
22:22;23:24

**example (2)**
16:16;23:12

**excuse (1)**
10:15

**executed (1)**
11:11

**execution (1)**
14:8

**exercise (1)**
28:11

**exists (2)**
9:19;15:7

**expedited (1)**
24:13

**explain (1)**
15:4

**explained (1)**
17:19

**express (1)**
11:19

**expressed (1)**
26:15

**extent (4)**
26:10,20;27:17;
28:20

**external (1)**
16:17

**extremely (1)**
24:4

## F

**fact (7)**
10:5;14:25;15:12;
20:21;21:10;24:14;
26:17

**factors (1)**
9:24

**facts (7)**
18:21,22;21:1,2,8,
23,23

**fairly (2)**
12:12;14:20

**far (2)**
9:18;16:8

**fast (2)**
17:22;24:7

**favor (1)**
22:4

**Federal (1)**
21:21

**feverishly (1)**
18:22

**few (2)**
8:15;19:15

**fiduciaries (1)**
12:23

**Fifth (2)**
8:15;21:24

**file (8)**
9:8,13;10:4;15:6;
18:11;20:21,23;
21:15

**filed (26)**
7:6,8,11,18;8:5,8,
13,22,24;10:25;14:1,
13;17:23;18:1,12;
19:7,8,9,20;20:19;
21:17;22:7,11;24:8;
25:14;29:17

**filing (9)**
7:24;8:19;9:12,16,
22;17:12;20:14;

23:11,25

**filings (6)**
11:3;16:18,19;
17:10;19:4;20:16

**find (1)**
12:23

**fine (1)**
25:1

**first (9)**
8:9,13,22;15:24;
17:10;21:17;22:7,
11;24:24

**fits (1)**
6:19

**focus (1)**
13:16

**follow (1)**
26:23

**following (1)**
28:19

**foreclosed (1)**
20:2

**foreign (4)**
11:24;15:8;23:4;
26:8

**forgone (1)**
17:4

**form (4)**
11:22;13:4;16:3;
28:16

**forms (1)**
29:9

**forth (1)**
18:2

**forum (3)**
13:7,8,9

**forward (5)**
7:21,22,25;10:17;
22:20

**frame (1)**
10:22

**frank (1)**
17:24

**frankly (4)**
8:16;13:12,22;
27:6

**free-fall (1)**
18:19

**Fried (1)**
11:23

**front (2)**
9:1;21:13

**FTX (19)**
4:3;6:14,19,25,25;
7:1,5,10,15;10:6;
11:5,18,18,20;12:5;
14:11,14;16:9;17:3

**fully (1)**
17:24

**fundamentally (1)**
10:24

**further (3)**
10:4;28:22;29:12

## G

**gaining (1)**
14:7

**Galveston (4)**
21:25;22:2,3,3

**gather (2)**
18:6,22

**gathered (1)**
18:18

**gathering (3)**
18:14;19:3;23:16

**general (2)**
10:12,13

**generated (1)**
20:18

**GLUCK (36)**
6:7,8,22,22,24;
8:25;9:2;12:20;15:3,
22,24;17:15;19:14,
24;22:13,15;25:8,9,
16,20;26:2,6,20;
27:1,17,24;28:4,11,
14,20,23;29:3,7,11,
21,25

**Gluck's (2)**
7:14;20:25

**Glueckstein (2)**
6:13;18:5

**goals (1)**
23:16

**goes (1)**
16:1

**Good (5)**
6:2,7,12,15;12:2

**governmental (1)**
15:14

**grant (1)**
24:13

**granted (1)**
13:6

**great (1)**
30:1

**group (2)**
7:15;17:3

## H

**HANCOCK (1)**
4:21

**happened (1)**
25:12

**happening (1)**
17:21

**happens (2)**
24:17;25:6

**hear (3)**
12:17;24:18;27:13

**heard (1)**
17:7

**hearing (14)**
19:18;24:10,13,13,

16,21,23;25:3,21;
26:2,7,13,14;27:11

**help (1)**
8:7

**highlighted (3)**
16:24;26:10,17

**Hmm (2)**
15:22;27:24

**hold (1)**
16:16

**Holdings (1)**
4:10

**holiday (1)**
24:24

**HOLLAND (1)**
4:16

**honestly (1)**
26:19

**Honor (40)**
6:7,12,15,21,22,
23;7:7;8:1,4,12;9:2;
12:15,17;17:9,9,13,
17,21;18:8;17,25;
19:14,17,19,23;
20:13;21:3,22;22:9;
24:8,20;25:7,8,16;
26:19;28:3;29:3,11,
12;30:1

**hope (1)**
23:8

**hopeful (1)**
16:20

**hopefully (1)**
29:8

**host (1)**
17:13

**hours (1)**
16:18

**Houston (1)**
4:19

**hundred (1)**
14:24

**hundreds (2)**
7:3;14:15

**hurt (1)**
28:25

## I

**imagination (1)**
7:15

**important (4)**
10:18;13:10,20;
20:9

**importantly (2)**
9:5;21:4

**impossible (4)**
11:25;12:2;26:23,
25

**inaccurate (1)**
26:23

**inadvertently (1)**
28:25

**Inc (1)**
4:10
**incapable (1)**
28:10
**included (2)**
7:6,9
**including (2)**
14:6;17:13
**indeed (1)**
21:11
**indiscernible (1)**
15:23
**informal (2)**
18:3,14
**information (6)**
15:17;18:6,14,18;
19:3;27:4
**inquiries (1)**
18:2
**insolvency (1)**
11:6
**instance (1)**
15:25
**instruction (1)**
11:21
**instructions (1)**
11:19
**intent (2)**
16:13;25:10
**intention (1)**
23:20
**intentionally (1)**
14:2
**interaction (1)**
13:15
**interactive (1)**
13:22
**interest (3)**
14:12;22:17,19
**Interested (1)**
5:12
**interfere (4)**
14:3;23:15,18;
26:10
**interference (39)**
7:5;9:10,20;10:7,
10,14,21;11:13,17;
12:3;13:13,20,24;
14:4,5,12,19;15:9,
12,21;16:1,5,15,24;
22:19,23;23:5,6,13,
17;25:25;26:7,12,16;
27:2,7,9;28:2;29:12
**interferes (1)**
22:24
**interim (2)**
27:13,15
**international (1)**
17:3
**interpretation (1)**
22:13
**into (1)**
11:5

**investors (1)**
16:16
**invoking (1)**
12:21
**involved (1)**
6:20
**involving (1)**
17:2
**issue (13)**
7:17;12:8;14:8,10;
15:17,20;18:24;
23:10,22;24:2,7,17;
25:6
**issued (1)**
11:21
**issues (7)**
8:9;12:9;14:19;
19:24;20:8,11,13
**italicized (1)**
26:9

**J**

**James (2)**
6:12;7:7
**job (1)**
16:21
**joined (2)**
13:2,3
**joining (1)**
16:2
**Joint (12)**
4:17;6:8,24;8:17;
9:3;10:19;11:15;
19:18;23:14;26:20;
28:5,16
**JPLs (2)**
13:12;14:5
**Judge (27)**
7:9,18,24,25;8:2,9,
10,23,24;9:1;15:21;
17:6;19:6,10,20,21,
25;20:3,11,15;21:14;
24:7,12,22;28:13;
29:15;30:3
**judges (1)**
10:11
**judge's (1)**
29:19
**judicial (1)**
8:16
**jurisdiction (4)**
8:20,22;16:25;
17:2
**JUSTICE (3)**
5:2;22:17,19

**K**

**keep (1)**
24:11
**keeping (1)**
6:3

**KIRKLAND (1)**
4:9
**KNIGHT (1)**
4:16

**L**

**LANDIS (2)**
4:2,7
**large (2)**
7:2;14:16
**late (1)**
29:24
**law (6)**
8:22;11:9,10;
21:17;27:19,24
**least (5)**
13:14,16;16:3,10;
18:20
**legal (1)**
20:1
**legitimate (2)**
15:19;20:14
**lengthy (1)**
12:12
**level (2)**
13:25;15:10
**light (1)**
10:20
**likely (2)**
10:22;11:9
**line (1)**
6:9
**liquidation (2)**
7:12;14:20
**liquidator (1)**
11:20
**Liquidators (17)**
4:17;6:6,9,25;
8:18;9:4,16;10:20;
11:15;16:7;19:19;
23:15;26:21;27:19,
25;28:6,17
**LLCs (1)**
20:8
**LLP (2)**
4:2,16
**located (1)**
21:10
**location (1)**
7:17
**longer (1)**
6:4
**look (1)**
28:13
**looked (1)**
26:21
**Lorraine (2)**
19:6,8
**lot (2)**
14:13;18:18
**Ltd (3)**
4:3;6:14;7:10

**M**

**Main (5)**
4:18;7:1,4,14;
14:12
**maintenance (1)**
21:6
**makes (1)**
8:19
**making (3)**
13:5;23:23,25
**manager (2)**
11:24;12:4
**many (3)**
14:13;17:19;19:24
**Mar (1)**
14:14
**MARC (1)**
5:12
**Market (1)**
4:4
**Markets (1)**
7:10
**Matter (3)**
10:21,23;26:12
**matters (3)**
7:16;10:3,21
**may (6)**
10:5,9,23;16:3,16;
17:7
**maybe (1)**
24:24
**mean (3)**
13:6;17:21;20:22
**means (1)**
21:11
**merit (1)**
13:7
**merits (1)**
15:10
**met (2)**
9:22;14:17
**metaphysical (1)**
20:2
**metaphysically (2)**
11:25;12:2
**might (1)**
24:15
**mildly (1)**
12:9
**minimum (1)**
12:7
**minor (1)**
21:5
**misunderstanding (1)**
16:14
**mixed (1)**
27:24
**modest (1)**
14:2
**moment (1)**
13:11

**more (3)**
14:14;21:4;28:12
**morning (11)**
6:2,3,7,12,15;7:18;
8:5;12:14;17:23;
18:5;25:12
**most (6)**
9:5;10:2,22;11:9;
12:25;17:25
**motion (22)**
7:19;8:3,5;10:23,
25;13:5;17:1,23;
18:11,11,12;19:7,20;
23:9,11,14;24:9,9;
26:3,16;28:14,18
**move (2)**
10:17;22:2
**moved (1)**
22:4
**moving (1)**
7:21
**much (6)**
6:17;14:14;25:7,8;
28:23;29:21
**must (1)**
10:20
**myself (1)**
23:20

**N**

**nature (2)**
21:9,9
**necessary (3)**
13:9;28:9,20
**need (5)**
20:9;24:21;27:22;
28:13;29:18
**networks (1)**
13:16
**New (28)**
5:6;9:6,9;10:12,
17;11:8,9;12:13;
13:2,2,10,23;15:1,7,
13;16:11;18:1,10,13;
19:2;21:15;22:1,5,
21;23:25;24:3,3;
25:14
**next (2)**
26:4,7
**North (1)**
4:4
**note (2)**
9:15;10:18
**noted (1)**
20:14
**notice (7)**
24:23;25:10;26:3,
6,14;27:7,12
**notified (1)**
17:11
**notion (1)**
16:24

**November (1)**
  7:13
**number (3)**
  11:2;14:23;22:18
**NY (2)**
  4:12;5:6

## O

**object (1)**
  24:15
**objections (1)**
  27:15
**obtain (2)**
  11:19;25:18
**obviously (5)**
  16:4,6;23:1;24:21;
  25:5
**occurred (1)**
  11:4
**o'clock (1)**
  27:14
**Office (1)**
  5:4
**officer (1)**
  11:23
**OKIKE (1)**
  4:14
**one (13)**
  8:20;10:5,21,23,
  24;13:7;14:23;16:2,
  23;17:15;20:14,24;
  29:15
**only (9)**
  15:4,7;18:3;20:7;
  23:11;25:24;26:12;
  27:17,20
**operated (1)**
  14:15
**operating (1)**
  7:4
**operation (1)**
  22:24
**operations (1)**
  7:2
**opportunity (3)**
  12:18;17:24;28:14
**oppose (2)**
  28:15,16
**opposed (2)**
  15:1;18:2
**opposition (1)**
  29:4
**order (7)**
  11:14;12:6;14:7;
  26:9,17;28:8;29:9
**orders (1)**
  29:7
**others (1)**
  16:5
**otherwise (1)**
  12:2
**ought (1)**

  14:20
**outcome (1)**
  13:1
**over (2)**
  13:23;21:12
**overlaps (1)**
  10:9

## P

**paperless (1)**
  29:16
**particular (5)**
  6:19;10:8;14:10;
  21:7;25:13
**parties (4)**
  18:6;22:18,20;
  29:16
**Party (1)**
  5:12
**party-in-interest (1)**
  14:6
**payment (1)**
  15:9
**pendency (2)**
  7:23;9:24
**pending (3)**
  15:23;21:24;22:12
**percent (1)**
  14:24
**performed (1)**
  17:3
**perhaps (5)**
  9:5;10:22;13:1,2;
  28:2
**permission (1)**
  27:18
**permit (1)**
  27:19
**permitted (1)**
  20:16
**permitting (1)**
  22:23
**petition (1)**
  22:11
**petitioners (2)**
  16:4;29:13
**petitioner's (1)**
  10:15
**phone (1)**
  6:5
**place (6)**
  8:15;9:8,13;15:4,
  7;18:12
**placed (1)**
  11:5
**plaintiff's (1)**
  10:14
**platform (1)**
  7:1
**Please (2)**
  24:11;29:19
**plenary (1)**

  8:20
**PM (1)**
  30:6
**point (2)**
  13:10;29:15
**policy (2)**
  10:16;15:11
**position (3)**
  11:18;18:9;19:1
**positions (1)**
  11:1
**possibly (1)**
  27:21
**potential (1)**
  23:23
**power (2)**
  11:8;20:23
**precedence (1)**
  13:23
**precedent (2)**
  8:14;9:18
**prefer (1)**
  27:25
**premature (1)**
  12:11
**PRESENT (2)**
  5:11;21:8
**presented (1)**
  26:17
**press (1)**
  20:18
**primary (4)**
  7:4;9:25;15:17;
  20:13
**principal (1)**
  17:17
**principally (1)**
  11:4
**prior (4)**
  7:23;11:19;13:4;
  22:21
**priority (1)**
  14:7
**privacy (1)**
  10:11
**probably (4)**
  13:8,22;25:3;28:1
**problem (1)**
  28:5
**Procedure (1)**
  21:22
**proceed (3)**
  19:22;22:12;24:16
**proceeding (9)**
  7:18,22,25;13:3;
  14:11;16:1,2;25:14;
  28:17
**proceedings (14)**
  6:20;7:24;8:20;
  11:5,6;13:1,14;14:3;
  15:19;17:2;20:18;
  28:7,21;30:6
**process (1)**

  19:3
**proper (2)**
  18:10,10
**properly (1)**
  23:4
**property (2)**
  13:18,19
**proposed (3)**
  26:9,16;29:7
**propriety (1)**
  9:12
**protecting (1)**
  26:7
**protections (1)**
  23:14
**provided (2)**
  9:16;11:15
**provision (2)**
  9:7;21:19
**Provisional (25)**
  4:17;6:5,8,24;
  7:12;8:18;9:3,15;
  10:19;11:15,20;14:1,
  20;16:7;19:19;
  20:10;23:15;25:22;
  26:2,13;27:13,16,19,
  25;28:6
**provisionally (1)**
  23:3
**purported (1)**
  11:22
**purview (1)**
  20:15
**put (1)**
  12:9
**putting (2)**
  13:10;23:20

## Q

**query (1)**
  15:25
**quite (5)**
  9:17;10:18;13:20;
  19:14;26:19

## R

**raised (2)**
  19:24;20:13
**ranging (1)**
  9:24
**RATH (1)**
  4:2
**rather (1)**
  16:15
**reactive (1)**
  12:24
**read (1)**
  17:25
**real (1)**
  10:16
**really (1)**

  16:6
**reasons (7)**
  10:16;11:2;13:25;
  15:11,25;22:18;
  25:13
**recognition (9)**
  14:8,11,17;23:3,
  12;24:14,25;25:2;
  27:11
**recognize (1)**
  20:4
**recognizing (1)**
  22:22
**record (1)**
  20:17
**records (2)**
  26:21,24
**reference (1)**
  15:5
**regarding (2)**
  11:3;13:14
**regulated (1)**
  14:16
**regulators (1)**
  15:14
**related (3)**
  8:21;10:5;25:24
**relationship (2)**
  13:21;18:15
**relevant (1)**
  9:7
**relief (17)**
  14:2,2;16:5,23;
  19:4;20:9,10;21:4,5,
  6;23:7;25:22,24;
  26:2,13;27:13,16
**relieved (1)**
  11:14
**relying (1)**
  21:19
**remain (1)**
  13:14
**remaining (1)**
  16:9
**remember (1)**
  22:6
**renders (1)**
  10:1
**repeat (1)**
  22:21
**representation (2)**
  9:19;26:22
**representations (3)**
  7:14;20:25;21:2
**represented (1)**
  10:6
**represents (1)**
  10:13
**request (2)**
  8:6;27:13
**requested (2)**
  11:13;12:1
**requests (1)**

8:17
**required (1)**
11:18
**resolve (1)**
29:10
**resolved (3)**
19:22,25,25
**respect (6)**
7:17;10:12,12;
18:9;21:1;28:18
**respected (1)**
21:16
**respectfully (2)**
7:25;12:1
**respond (1)**
19:15
**result (2)**
20:18;23:6
**retainer (3)**
15:1,9;17:18
**retrieved (1)**
29:17
**review (1)**
17:25
**reviewed (1)**
13:5
**reviewing (1)**
22:16
**Revise (1)**
29:6
**Richardson (1)**
4:11
**right (11)**
9:12;19:12;22:6;
23:19;24:11;25:2,
19;26:18;27:10;
29:6;30:4
**rights (1)**
28:18
**room (1)**
12:24
**rule (7)**
8:3,13,14;21:3,21;
22:7;24:4
**ruled (1)**
22:4
**rules (2)**
20:5;21:21
**ruling (2)**
24:7;25:11
**rulings (4)**
23:21,23,24;25:17
**run (1)**
29:7

## S

**same (2)**
15:20;22:7
**satisfied (1)**
10:16
**saying (1)**
20:16

**schedule (4)**
24:9,12,13;25:2
**scheduling (2)**
19:18;26:13
**SCHWARTZ (13)**
5:8,12;6:15,16;
9:9;12:15,16;17:6,6,
9;19:8,11;30:3
**second (2)**
25:3;27:12
**Secondly (1)**
11:2
**Securities (1)**
11:4
**seek (2)**
14:1;27:8
**seeking (8)**
16:12,15;22:25;
23:2,3,9;27:3,4
**seeks (2)**
14:4,7
**sense (2)**
8:19;16:4
**sensible (1)**
16:20
**series (1)**
16:19
**serious (2)**
11:2,10
**server (1)**
27:2
**set (5)**
13:14;18:21;21:8;
23:24;25:21
**sets (1)**
12:23
**setting (3)**
9:22;14:18;19:16
**shape (3)**
11:21;13:4;28:16
**SHARA (2)**
5:9;6:16
**share (2)**
15:6;27:4
**shared (1)**
9:11
**short (1)**
24:23
**shorten (1)**
27:12
**shortened (2)**
26:3,6
**shorter (1)**
26:14
**signature (2)**
11:22;12:3
**significant (4)**
11:7,12;13:19;
16:1
**simply (4)**
8:19;21:2;26:24;
28:11
**single (1)**

20:1
**situation (2)**
21:7;23:20
**situs (1)**
17:19
**solely (1)**
26:10
**solution (1)**
16:20
**somebody (1)**
6:18
**somehow (1)**
14:17
**soon (1)**
10:24
**sort (2)**
9:13;23:9
**sought (12)**
10:9;16:5,23;19:5;
20:10;21:5;23:7,11,
14;25:22,24;26:11
**Southern (8)**
9:6,9;10:11;12:13;
15:13;21:14;22:1,20
**space (1)**
9:25
**speak (4)**
12:18,18;17:12;
22:16
**spoke (1)**
18:4
**stage (1)**
13:8
**stakeholders (1)**
13:12
**start (1)**
29:24
**state (2)**
17:15;27:5
**stated (3)**
15:11,25;25:14
**statement (2)**
11:13;12:1
**STATES (17)**
5:2,3,4;9:4,5,24;
13:15,21;14:6;15:8,
13;18:8,15;20:5;
23:1,2;27:8
**statue (1)**
15:3
**status (1)**
19:17
**statute (1)**
22:16
**stay (3)**
11:14;16:6;23:3
**still (2)**
18:18;24:16
**straightforward (1)**
14:21
**Street (4)**
4:4,11,18;5:5
**stretch (1)**

7:15
**strong (1)**
10:16
**strongly (1)**
20:15
**subject (1)**
25:5
**submit (2)**
13:20;29:9
**subsidiary (2)**
10:6;15:6
**substance (1)**
8:16
**substantial (1)**
11:12
**suggested (2)**
9:13;12:22
**Suite (1)**
4:18
**Sullivan (2)**
6:13;7:8
**supervision (1)**
20:11
**support (1)**
9:18
**suppose (1)**
23:13
**sure (3)**
23:10;24:22;28:4
**surprising (1)**
9:18

## T

**talking (1)**
24:24
**teaching (1)**
6:3
**team (1)**
16:12
**tee (1)**
14:10
**terms (3)**
9:21;26:16;29:8
**test (3)**
9:8,22;14:17
**therefore (4)**
8:23;14:17;16:2;
29:16
**though (1)**
21:4
**thought (3)**
6:4;7:3;20:22
**three (2)**
9:25;10:1
**timely (1)**
29:17
**today (3)**
17:15;25:23,24
**told (1)**
15:16
**took (2)**
6:3;8:15

**totally (1)**
7:21
**Trading (2)**
4:3;6:14
**transfer (22)**
7:19;8:3,9,10,24;
9:14,19;11:8;17:1,
23;18:11;19:7,20;
21:18;22:4;24:7,9,
17,19;25:6;28:14,18
**Trustee (13)**
5:3,4;6:16;9:4,6,
24;12:13,17;15:13,
13;17:7;18:8,15
**try (2)**
19:15;28:11
**trying (1)**
23:24
**two (3)**
10:20,22;14:22
**TX (1)**
4:19
**TYE (1)**
4:21
**type (1)**
23:6

## U

**ultimate (1)**
17:2
**ultimately (1)**
23:4
**unclear (1)**
22:22
**under (6)**
8:12;11:8,11;
14:20;15:3;16:10
**understands (1)**
17:17
**understood (1)**
25:20
**undoubtedly (2)**
16:19,22
**unfortunate (1)**
12:22
**UNITED (15)**
5:2,3,4;9:4,5,24;
13:15;14:5;15:8;
18:8,14;20:5;23:1,2;
27:8
**unless (2)**
14:17;30:4
**unprecedented (1)**
21:8
**unquestionably (1)**
15:9
**unrelated (1)**
21:6
**Untied (1)**
15:12
**up (4)**
14:10;16:2;23:25;

Case 22-11068-JTD    Doc 44-1    Filed 11/18/22    Page 39 of 39
FTX Digital Markets LTD and Brian C. Simms
Main Case No. 22-11516-mew

November 17, 2022

24:24
**USC (1)**
9:7

**V**

**validity (3)**
11:3,8;12:8
**value (1)**
15:6
**Varick (1)**
5:5
**various (2)**
15:14;17:2
**vastly (1)**
16:3
**venue (21)**
9:7,22;10:14,15,
19;12:11;14:23,24;
15:2;17:1,14,16,23;
18:10,11;19:7;20:5,
6;23:14;25:11,12
**via (1)**
23:3
**view (5)**
7:23;9:11;10:19;
11:25;13:16
**views (1)**
9:10
**violate (1)**
23:2
**violation (1)**
12:6
**virtue (1)**
16:23
**Vitro (3)**
8:15;21:22,24
**Voyager (3)**
4:10;9:25;10:8

**W**

**wait (1)**
28:13
**waiting (1)**
6:3
**wants (2)**
12:17,25
**Warren (3)**
6:7,22;25:8
**way (8)**
11:21;13:4;14:3,
18;22:24;23:2;
25:24;28:16
**weak (1)**
24:4
**week (5)**
24:24;25:3;26:4,7;
27:12
**well-oiled (1)**
13:21
**what's (1)**
24:18

**whereas (1)**
11:20
**Whereupon (1)**
30:6
**whole (4)**
10:10,11;16:11;
18:21
**willing (1)**
28:12
**Wilmington (1)**
4:5
**winter (1)**
10:13
**Wirt (1)**
6:8
**wish (1)**
19:13
**wishes (1)**
6:10
**within (1)**
20:15
**without (2)**
12:10;26:23
**witness (1)**
14:4
**witnesses (1)**
16:17
**work (1)**
7:3
**working (1)**
18:22
**world (2)**
21:10,11
**written (1)**
11:19

**Y**

**years (1)**
8:16
**York (27)**
5:6;9:6,9;10:12,
17;11:9,10;12:13;
13:2,2,11,23;15:1,7,
13;18:1,10,13;19:2;
21:15;22:1,5,21;
23:25;24:3,3;25:14

**Z**

**zero (2)**
20:19;26:14

**1**

**10014 (1)**
5:6
**1014b (2)**
21:21;22:14
**102 (7)**
7:8,24;8:21;20:6,
7,12,19
**10th (1)**

7:13
**11 (14)**
8:19;11:3;12:8;
14:3;16:19;18:4,16,
21,24;21:25;22:23;
23:17;26:11;27:14
**1104 (1)**
12:8
**1104e (1)**
10:23
**11222 (1)**
4:12
**11s (3)**
7:6;22:25;23:10
**12:27 (1)**
30:6
**1402 (1)**
8:12
**1410 (1)**
9:8
**15 (17)**
7:18,22;8:20;10:1;
12:19;13:2;14:20;
18:1,3,13,16,20,24;
21:25;22:3,4;24:14
**15s (1)**
10:12
**19801 (1)**
4:5

**2**

**201 (1)**
5:5
**214 (1)**
4:11
**2500 (1)**
4:18
**28 (1)**
9:7
**28th (1)**
27:14

**7**

**77002 (1)**
4:19

**8**

**811 (1)**
4:18

**9**

**919 (1)**
4:4