**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Pending) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS OF CRITICAL VENDORS, FOREIGN VENDORS, 503(B)(9) CLAIMANTS
AND LIEN CLAIMANTS, (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY
TO ALL UNDISPUTED OBLIGATIONS ON ACCOUNT OF OUTSTANDING
ORDERS, (III) AUTHORIZING ALL FINANCIAL INSTITUTIONS
TO HONOR ALL RELATED PAYMENT REQUESTS AND
(IV) GRANTING CERTAIN RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an interim

order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), and a final

order, substantially in the form attached hereto as Exhibit B (the "Final Order" and together with

the Interim Order, the "Orders"), pursuant to sections 105(a), 363, 503(b)(9), 1107 and 1108 of

title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"),

(a) authorizing the Debtors to pay the prepetition claims of (i) Critical Vendors (as defined

below), (ii) Foreign Vendors (as defined below), (iii) 503(b)(9) Claimants (as defined below) and

(iv) Lien Claimants (as defined below), (b) granting administrative expense priority to all

undisputed obligations on account of Outstanding Orders (as defined below), (c) authorizing

applicable banks and other financial institutions to honor and process related checks and

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of
debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax
identification numbers is not provided herein.  A complete list of such information may be obtained on the
website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

transfers and (d) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing").  Certain facts supporting this Motion are set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray Declaration") and *Declaration of Edgar W. Mosley in Support of Chapter 11 Petitions and First Day Pleadings* (the "Mosley Declaration" and, together with the Ray Declaration, the "First Day Declarations").  In further support of the Motion, the Debtors respectfully state as follows:

**Background**

1.     On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 14, 2022, the Debtors filed a motion with the Court pursuant to rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking joint administration of the Debtors' cases (the "Chapter 11 Cases").  As of the date hereof, no creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.

2.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

**Facts Specific to the Relief Requested**

**I.      Critical Vendors**

3.     To ensure that only those vendors that provide goods and services that are actually essential to the Debtors' businesses (collectively, the "Critical Vendors") are the subject of the relief requested herein, the Debtors, with the assistance of Alvarez & Marsal North America, LLC ("A&M"), the Debtors' proposed restructuring advisor, and Sullivan & Cromwell

LLP, the Debtors' proposed counsel, have conducted an analysis and review of the Debtors' trade and service needs and supplier base.  Unfortunately, the Debtors books and records are incomplete and, as of the date of this Motion, the Debtors have not yet been able to fully identify all vendors that are critical to the Debtors' estates.

4.       That said, the Debtors and their advisors believe that there are Critical Vendors who, if they ceased providing goods or services, could cause irreparable harm to the Debtors' estates.  The Debtors believe that Critical Vendors may refuse to supply the Debtors postpetition unless some or all of their prepetition claims are paid and that replacement of the Critical Vendors might be impracticable or, in some cases, impossible.  Without authority to pay Critical Vendors, the Debtors believe they could face irreparable security risks, potential data loss or other disruptions and ultimately loss of value to their estates.

5.       The Debtors respectfully request the authority to pay the prepetition claims (the "Critical Vendor Claims") of Critical Vendors identified based on the Critical Vendor Criteria (as defined below), up to $9.3 million upon entry of the Interim Order and up to $17.5 million upon entry of the Final Order.[2]  Any payment of a Critical Vendor Claim will require the authorization of the Chief Executive Officer and the Debtors will provide two business days' notice to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and, if applicable, any official committee appointed in these Chapter 11 Cases prior to making any payment in excess of $250,000 to any single Critical Vendor.  If a timely objection is received, the Debtors shall not make the payment to the Critical Vendor and shall confer in good faith with the objector(s) to reach resolution.  In the event the parties are unable to

---

[2]    The amounts included herein were determined by the Debtors and their advisors based on the estimated total average vendor spend per month, for certain vendors or vendor categories, based on the currently available general ledger account data of the Debtors.  The amounts proposed generally represent one and a half months of average spend.

reach a consensual resolution, the Debtors may request a hearing on any such objection at the Court's earliest convenience.

6.      When considering whether a vendor is a Critical Vendor, the Debtors will consider the following (the "Critical Vendor Criteria"):

- Whether a vendor provides goods or services that are essential to maintaining employee health and safety;

- Whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources;

- Whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' businesses;

- Whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating;

- The degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- Whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

- The likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these Chapter 11 Cases;

- Whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or to provide critical services on a postpetition basis;

- The location and nationality of the vendor; and

- Whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

7.      The Debtors anticipate that these Critical Vendors may include vendors supporting regulated foreign or domestic exchanges, vendors who are irreplaceable due to geography, vendors who supply or maintain specialized or bespoke software, equipment or services, and technical service providers with expertise specific to the Debtors' businesses,

equipment or IT infrastructure.  The Debtors also believe Critical Vendors may include vendors who provide security or storage for crypto assets and protection or preservation of other key information systems and assets.

## II.    Foreign Vendors

8.      As a result of their global nature, a critical component of the Debtors' businesses involve transactions with foreign vendors (collectively, "Foreign Vendors").  In the ordinary course of business, the Debtors incur obligations to numerous suppliers of goods and services whose assets are located exclusively outside of the United States.

9.      Maintaining existing relationships with the Foreign Vendors is critical to continuing the Debtors' businesses.  Replacing these Foreign Vendors would be time-consuming, impracticable (and in many local jurisdictions, impossible) and cost prohibitive. Foreign Vendors often have skeptical reactions to the United States bankruptcy process because many of them are unfamiliar with the chapter 11 process.  Short of severing their contractual relations with the Debtors, nonpayment of prepetition claims may cause the Foreign Vendors to take other precipitous actions, including delaying shipments or the provision of services, or initiating a lawsuit in a foreign court to obtain a judgment against the Debtors to collect prepetition amounts owed to them.  Although the automatic stay applies to protect the Debtors' assets where they are located in the world, the Foreign Vendors may erroneously believe that they are not subject to the automatic stay of section 362 of the Bankruptcy Code.  Moreover, attempting to enforce the Bankruptcy Code in foreign countries may be uneconomical.

10.     As of the date of this Motion, the Debtors and their advisors have been unable to fully assemble a complete list of Foreign Vendors or the amounts of the prepetition claims of Foreign Vendors (the "Foreign Vendor Claims") due to the deficiencies in the Debtors' corporate records.  The Debtors respectfully request the authority to pay the Foreign Vendor

Claims.  Any payment in excess of $50,000 to a Foreign Vendor shall require the approval of the

Chief Executive Officer and the Debtors will provide two business days' notice to the U.S.

Trustee and, if applicable, any official committee appointed in these Chapter 11 Cases prior to

making any payment in excess of $250,000 to any single Foreign Vendor.  If a timely objection

is received, the Debtors shall not make the payment to the Foreign Vendor and shall confer in

good faith with the objector(s) to reach resolution.  In the event the parties are unable to reach a

consensual resolution, the Debtors may request a hearing on any such objection at the Court's

earliest convenience.

### III.    503(b)(9) Claims

11.    Certain vendors (the "503(b)(9) Claimants"), including potential Critical

Vendors, may have delivered goods to the Debtors within 20 days prior to the Petition Date.[3]

Section 503(b)(9) of the Bankruptcy Code provides that such claims (the "503(b)(9) Claims")

hold administrative expense priority against the applicable Debtor's estate.  Such 503(b)(9)

Claims, therefore, must be paid in full to confirm a plan of reorganization.  *See* 11 U.S.C.

§§ 1129(a)(9)(A) (requiring payment in full of claims entitled to priority).  Consequently,

payment of such claims now only provides such parties with what they would be entitled to

receive under a confirmed plan.  Moreover, the Bankruptcy Code does not prohibit a debtor from

paying administrative claims prior to confirmation.  The Debtors believe that this relief is in the

best interest of the Debtors' estates and will prevent detrimental changes to trade terms or a

refusal to do business together, thereby preserving the Debtors' liquidity and businesses.

12.    The Debtors' ongoing ability to obtain materials and products as provided

herein is necessary to preserve the value of their estates.  Absent the payment of the 503(b)(9)

---

[3]    The Petition Date for all Debtors is November 11, 2022 other than for Debtor West Realm Shires Inc. which is November 14, 2022.

Claims at the outset of the Chapter 11 Cases—which may merely accelerate the timing of

payment and not the ultimate treatment of such claims—the Debtors could be denied access to

materials and products necessary to maintain the Debtors' businesses and maximize the value of

the Debtors' estates.

13.     Instead of satisfying the 503(b)(9) Claims after confirmation of a plan of

reorganization (at which time such payments may be too late to benefit the Debtors' estates), the

Debtors seek authority to pay these claims in the ordinary course of business, while such

payments can still induce 503(b)(9) Claimants to adhere to favorable trade terms and do business

with the Debtors on a go-forward basis.  Failure to honor these claims in the ordinary course of

business may also cause the Debtors' vendor base to withhold support for these Debtors during

the chapter 11 process.  Such vendors could accelerate or eliminate favorable trade terms.  The

payment of 503(b)(9) Claims is in the best interests of the Debtors' estates because favorable

trade terms will prevent material disruptions to the Debtors' businesses, and could impair the

Debtors' ability to stabilize their businesses at this critical juncture to the detriment of all

stakeholders.

## IV.     Outstanding Orders

14.     Additionally, in the ordinary course of business, the Debtors may have

ordered goods prior to the Petition Date which were not, or will not be, delivered until after the

Petition Date (the "Outstanding Orders").  In the mistaken belief that they would be general

unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may

refuse to ship or transport such goods (or may recall such shipments) with respect to such

Outstanding Orders unless the Debtors issue substitute purchase orders postpetition—potentially

disrupting the Debtors' businesses and requiring the Debtors to expend substantial time and

effort in issuing substitute orders.  As set forth in greater detail below, because the Outstanding

Orders are administrative expenses of the Debtors' estates, the Debtors are requesting that the Court confirm the administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the postpetition acceptance of goods subject to Outstanding Orders and authorize the Debtors to pay amounts due on account of Outstanding Orders in the ordinary course of business and subject to the limitations set forth in the Interim Order and Final Order.

## V.     Lien Claims

15.     The Debtors transact business with third parties who may assert various statutory liens (the "Lien Claimants") against the Debtors and their property if the Debtors fail to pay for the services rendered (the "Lien Claims" and, together with the Critical Vendor Claims, the Foreign Vendor Claims and the 503(b)(9) Claims, the "Trade Claims" and the holders of Trade Claims, collectively, the "Vendors").  The Lien Claimants could consist of vendors who provide shipping, storage, construction and other related services.

16.     To the extent any Lien Claimant has perfected a lien on any of the Debtors' property or, in the Debtors' estimation, could assert and perfect a lien on any such property, it is imperative that the Debtors be authorized to pay such Lien Claimants, regardless of whether their claims arose prior to or after the Petition Date.  Such payment will secure the release of any such lien and the Debtors' continued uninterrupted access to the goods and services provided by the Lien Claimants.  Further, if amounts owed to the Lien Claimants are not paid, certain of the Lien Claimants may be able to assert and perfect liens against certain of the Debtors' goods or property, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code.  Accordingly, the Debtors respectfully request the authority to pay up to $125,000 on account of Lien Claims upon entry of the Interim Order.

## **Jurisdiction**

17.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 363(b),

503(b)(9), 1107 and 1108 of the Bankruptcy Code.  Pursuant to Local Rule 9013-1(f) of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware, the Debtors consent to the entry of a final order or judgment by the Court

in connection with this Motion to the extent it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United

States Constitution.

## **Relief Requested**

18.     By this Motion, the Debtors request entry of the Interim and Final Orders,

substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively,

(a) authorizing the Debtors to pay the prepetition claims of (i) Critical Vendors, (ii) Foreign

Vendors, (iii) 503(b)(9) Claimants and (iv) Lien Claimants, (b) granting administrative expense

priority to all undisputed obligations on account of Outstanding Orders, (c) authorizing

applicable banks and other financial institutions to honor and process related checks and

transfers and (d) granting certain related relief, including scheduling the Final Hearing.

## **Basis for Relief**

**I.     Payment of the Trade Claims Is Appropriate Under Sections 105(a), 363(b), 1107(a)
and 1108 of the Bankruptcy Code.**

19.     The relief requested is appropriate under sections 105(a), 363(b), 1107(a)

and 1108 of the Bankruptcy Code.  The Debtors are operating their businesses as debtors-in-

possession under sections 1107(a) and 1108 of the Bankruptcy Code, and they are therefore fiduciaries "holding the bankruptcy estate and operating the business for the benefit of . . . its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*. Consistent with a debtor's fiduciary duties to preserve the estate, courts have authorized payment of prepetition obligations pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. *See*, *e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("the bankruptcy court has considerable discretion" in granting motion pursuant to section 363(b)); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that section 363(b) provides "broad flexibility" for a debtor to satisfy prepetition claims where supported by a proper business justification); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims.").  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 497.

20.    Section 363(b) of the Bankruptcy Code empowers the Court to allow a debtor, in the exercise of its sound business judgment and after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 2009) ("The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11.").  For a court to approve the use, sale, or lease of estate property under section 363(b) of the Bankruptcy Code, including the payment of prepetition claims, the debtor must

"articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (holding that the debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment must be authorized'") (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981)). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.

21.       Additionally, section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. Under section 105(a), the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. at 825 ("To invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's reorganization"); *see also In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996) (recognizing "the doctrine of necessity . . . permits the bankruptcy court to authorize the payment of prepetition claims prior to confirmation").

22.    Courts in this district have recognized the "necessity of payment"

doctrine. *See, e.g.*, *In re Energy Future Holdings Corp.*, 561 B.R. 630, 642-43 (Bankr. D. Del.

2016) ("The Third Circuit has explained that a 'necessity of payment' rule is intended to benefit

all parties and is applicable when such payment is critical to the Debtors' reorganization."); *In re*

*Columbia Gas Sys.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (allowing "payment of [a] class of

pre-petition creditors in advance of a confirmed plan" where "the debtor . . . show[s] that

payment is essential to the continued operation of the business"); *In re Lehigh & N. E. R. Co.*,

657 F.2d 570, 581 (3d Cir. 1981) ("[T]he 'necessity of payment' doctrine . . . teaches no more

than, if payment of a claim which arose prior to reorganization is essential to the continued

operation of the [debtor] during reorganization, payment may be authorized even if it is made out

of corpus.").

23.    The necessity of payment doctrine is designed to foster a debtor's

rehabilitation, which courts have recognized is "the paramount policy of Chapter 11." *In re*

*Ionosphere Clubs, Inc.*, 98 B.R. at 176; *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y.

1987) (authorizing payment of prepetition workers' compensation claims on grounds that the

fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a

flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment

of creditors in full or at least proportionately"); *In re Just for Feet*, 242 B.R. at 826 (finding that

payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor

during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr.

N.D. Ohio 1991) ("[A] general practice has developed . . . where bankruptcy courts permit the

payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be

unable to reorganize without such payment."); *In re CoServe, L.L.C.*, 273 B.R. at 497 ("[I]t is

only logical that the bankruptcy court be able to use Section 105(a) of the [Bankruptcy] Code to

authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").

24.     The relief requested in this Motion represents a sound exercise of the Debtors' business judgment and is necessary for the preservation of the resources and value of their estates.  Payment of the Trade Claims may be critical to the Debtors' ability to continue its businesses.  The Debtors are concerned that, notwithstanding their diligent attempts to identify potential Critical Vendors whose cessation of services would irreparably harm the Debtors, they do not have a fulsome understanding of the potential risk.  Critical Vendors could threaten to stop hosting or securing the Debtors' data, or the Debtors' customers' data, based on lack of payment or prepetition claims, resulting in the loss of critical information or security lapses.  It is the Debtors' business judgment that they cannot be unprepared for such an event if it were to occur in the early stages of these Chapter 11 Cases.  The Debtors believe that authorization of payment of potential Vendors, subject to their satisfaction of certain criteria and review by the U.S. Trustee or any official committee appointed in these Chapter 11 Cases, advances the Debtors' interest in preserving and maximizing the value of their estates.

25.     Additionally, if the Debtors do not pay certain of the Foreign Vendor Claims, they may simply refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims.  The Foreign Vendors may take other precipitous actions in foreign jurisdictions against the Debtors based on the incorrect belief they are not bound by the automatic stay.  As a result, the Debtors would be unable to procure products and services, potentially causing harm and disruptions to the Debtors' estates.

26.    Courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re Akorn, Inc.*, No. 20-11177 (KBO) (June 11, 2020), D.I. 161 (authorizing payment to critical vendors, foreign vendors, 503(b)(9) claimants and lien claimants); *In re Dura Auto. Sys.*, LLC, No. 19-12378 (KBO) (Nov. 19, 2019), D.I. 337 (authorizing payment to critical vendors, foreign vendors, 503(b)(9) claimants and lien claimants); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Mar. 30, 2020), D.I. 151 (authorizing payment to foreign vendors, 503(b)(9) claimants and lien claimants); *In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Nov. 14, 2020), D.I. 465 (authorizing payment to critical vendors and foreign vendors).

## II.    The Court Should Authorize the Payment of 503(b)(9) Claims.

27.    Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." These claims must be paid in full for the Debtors to confirm a chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court"); 4 Collier on Bankruptcy ¶ 503.16[3] (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[P]rior to confirmation bankruptcy courts have discretion to determine when section 503(b)(9) claims should be paid."). The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates. Absent payment of the 503(b)(9) Claims at the

outset of these Chapter 11 Cases—which merely accelerates the timing of payment and not the ultimate treatment or recovery of such claims—the Debtors could be denied access to the goods necessary to maintain the Debtors' businesses and maximize the value of the Debtors' estates.

28.    Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See, e.g.*, Transcript of Hearing held on October 31, 2006 at 49, *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Nov. 6, 2006) ("THE COURT: I think arguably the debtor could pay its 503(b)(9) claimants without court approval.").  Again, the timing of such payments lies squarely within the Court's discretion.  *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006).

29.    Courts in this district have routinely authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business.  *See*, *e.g.*, *In re Akorn, Inc*., No. 20-11177 (KBO) (June 11, 2020), D.I. 161 (authorizing payment to 503(b)(9) claimants, among others); *In re TPC Group Inc.*, No. 22-10493 (CTG) (June 7, 2022), D.I. 341 (same); *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (July 18, 2022), D.I. 136 (same).

**III.    Failure to Pay Certain of the Trade Claims Could Subject the Debtors' Assets to the Perfection of Statutory Liens.**

30.    As noted above, certain potential Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claims.

31.     Without payment, the potential Lien Claimants may be unwilling to release the goods in their possession against which they may be entitled to assert liens because doing so may convert their claims against the Debtors from secured to unsecured.  Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting certain possessory liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.  As a result, the Debtors anticipate that certain of the potential Lien Claimants may assert or perfect liens, refuse to turn over goods in their possession or stop performing their ongoing obligations.  Even absent a valid lien, to the extent certain potential Lien Claimants have possession over the Debtors' goods, mere possession or retention would be problematic for the Debtors' ongoing businesses.

32.     The relief requested in this Motion is appropriate under section 363(b) and 105(a) of the Bankruptcy Code represents a sound exercise of the Debtors' business judgment and is necessary for the preservation of the Debtors' estates.  Payment of the potential Lien Claimants as they become due in the ordinary course of business will facilitate the flow of goods to the Debtors and ultimately maximize the value of the Debtors' estates.

33.     Courts in this district have routinely granted relief similar to the relief requested herein.  *See, e.g.*, *In re TPC Group Inc.*, No. 22-10493 (CTG) (June 7, 2022), D.I. 341 (authorizing payment of lien claimants, among others); *In re Akorn, Inc.*, No. 20-11177 (KBO) (June 11, 2020), D.I. 161 (same); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Mar. 30, 2020), D.I. 151; *In re Dura Auto. Sys.*, LLC, No. 19-12378 (KBO) (Nov. 19, 2019), D.I. 337 (same).

## IV.     The Court Should Confirm that Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.

34.     Pursuant to section 503(b) of the Bankruptcy Code, most obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered

prepetition, are administrative expense priority claims because they benefit the estate prepetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809-10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority). Thus, the granting of the relief sought herein with respect to the Outstanding Orders will not provide the suppliers with any greater priority than they would otherwise have if the relief requested herein were not granted, and will not prejudice any other party-in-interest.

35.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority. The attendant disruption and delay to the continuous and timely flow of goods and services to the Debtors could further disrupt the Debtors' businesses, and lead to a loss of revenue, all to the detriment of the Debtors and their creditors.

36.     Indeed, courts in this jurisdiction routinely grant the type of relief requested herein. *See*, *e.g.*, *In re Akorn, Inc.*, No. 20-11177 (KBO) (June 11, 2020), D.I. 161 (granting administrative expense priority to all undisputed obligations on account of outstanding orders); *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (July 13, 2020), D.I. 539 (same).

**V.    Cause Exists to Authorize Applicable Banks and/or Financial Institutions to Honor Checks and Electronic Fund Transfers Related to the Trade Claims.**

37.     In order to stabilize the Debtors' businesses and to smoothly transition into chapter 11, it is imperative that the Debtors maintain their ability to perform their most basic functions. The Debtors request that all applicable banks and other financial institutions should be authorized, when requested by the Debtors in their discretion, to receive, process, honor and pay any and all checks and fund transfer requests made by the Debtors related to the Trade

Claims, whether such checks or fund transfer requests were submitted prior to or after the Petition Date. Any such financial institution may rely on the representations of such Debtors as to which checks and fund transfer requests are made and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions. The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases with respect to amounts owed in connection with the Trade Claims.

### **Bankruptcy Rule 6003 Is Satisfied**

38.     In order for a debtor to obtain relief to make payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm." If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely absent the granting of the requested relief, immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (finding that relief requested by the debtors was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operation of the debtors' businesses).

39.     Immediate and irreparable harm would result if the relief requested herein is not granted. As described above, access to the goods supplied by the Vendors is essential to the preservation of the value of the Debtors' businesses and assets. Should any Vendor refuse or discontinue service, even for a brief period, the Debtors' businesses could be severely disrupted, and such disruption would jeopardize the Debtors' businesses. These effects would have an adverse impact to the Debtors' businesses, thereby causing immediate and irreparable harm.

40.     Failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' businesses at this important juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary course and preserve the value of the Debtors' assets and maximize the value of the estates for the benefit of all stakeholders.  Accordingly, the Debtors respectfully submit that they have satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

41.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' businesses, value and ability to reorganize.

## Reservation of Rights

42.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested

herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

43.    No creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the parties identified on the Debtors' consolidated list of 50 largest unsecured creditors; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, (b) enter the Final Order, substantially in the form attached hereto as Exhibit B and (c) grant such other and further relief as is just and proper.

Dated: November 19, 2022
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*