# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Pending) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OPERATE A POSTPETITION CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BUSINESS FORMS AND (C) PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING A PARTIAL WAIVER OF THE DEPOSIT GUIDELINES SET FORTH IN SECTION 345(b) AND (III) GRANTING CERTAIN RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and together with their affiliated non-Debtors, the "FTX Group") hereby submit this motion (this "Motion") for entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), and a final order, substantially in the form attached hereto as Exhibit B (the "Final Order" and together with the Interim Order, the "Orders"), pursuant to sections 105(a), 345(b), 363 and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing the Debtors to (i) operate a postpetition cash management system, (ii) maintain existing business forms and (iii) perform intercompany transactions, (b) granting a partial waiver of the deposit guidelines set forth in section 345(b) of

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

{1368.002-W0069060.}

the Bankruptcy Code and (c) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing"). Certain facts supporting this Motion are set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray Declaration") and *Declaration of Edgar W. Mosley in Support of Chapter 11 Petitions and First Day Pleadings* (the "Mosley Declaration" and, together with the Ray Declaration, the "First Day Declarations"). In further support of the Motion, the Debtors respectfully state as follows:

## Background

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 14, 2022, the Debtors filed a motion with the Court pursuant to rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking joint administration of the Debtors' cases (the "Chapter 11 Cases"). As of the date hereof, no creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

## Facts Specific to the Relief Requested

3. Solely for purposes of presentation and organizational purposes, the Debtors and their businesses are categorized into four silos (each a "Silo" and together, the "Silos"): (a) Debtor West Realm Shires Inc. ("WRS") and its Debtor and non-Debtor subsidiaries (collectively, the "WRS Silo"), (b) Debtor Alameda Research LLC ("Alameda") and its Debtor subsidiaries (collectively, the "Alameda Silo"), (c) Debtor Clifton Bay Investments

LLC ("Ventures") and certain of its Debtor affiliates (collectively, the "Ventures Silo"), and (d) Debtor FTX Trading Ltd. ("FTX Trading" and together with WRS, Alameda and Ventures, the "Silo Parents") and its Debtor and non-Debtor subsidiaries (collectively, the "Dotcom Silo").

## I.    The Debtors' Verifiable Cash Position as of the Petition Date

4.    Historically, the FTX Group maintained decentralized cash systems (the "Prepetition Cash Management System").  Under the Prepetition Cash Management System, each Debtor generally maintained individual bank accounts to collect, transfer and distribute funds.  As of November 16, 2022, the Debtors, working with Alvarez & Marsal North America, LLC ("Alvarez & Marsal"), have identified to date 216 Debtor bank accounts with positive balances (the "Identified Bank Accounts") at 36 banks (the "Identified Banks") worldwide.  A list of the Identified Bank Accounts and Identified Banks is included in Exhibit C attached hereto.

5.    Generally, cash held on hand is divided into restricted and unrestricted cash.  Restricted cash ("Restricted Cash") includes funds held for the benefit of others in designated separate "FBO" accounts and capital or other reserves held by regulated entities or otherwise required to be segregated from general funds by applicable law.  Unrestricted cash includes all other non-Restricted Cash and is used for general operating purposes including payroll, accounts payables, exchange fees and taxes.

6.    Because of historical cash management failures and the deficiency of documentation controls, the Debtors do not yet know the total amount of cash they hold.  As of November 16, 2022, the Debtors have been able to verify the balances in only 144 of the 216 Identified Bank Accounts.  The Debtors also may have cash at banks other than Identified Banks (such additional banks and the Identified Banks, the "Existing Banks"), or accounts at Identified Banks other than the Identified Bank Accounts (any additional accounts and the Identified Bank

Accounts, the "Existing Bank Accounts"). The Debtors are working with Alvarez & Marsal to identify and verify additional accounts and cash positions. To date, it has been possible to verify only the following balances as of the Petition Date[2] based on available books and records:

| Entity | Unrestricted Cash | Custodial Cash | Other Restricted Cash | Total Cash |
|---|---|---|---|---|
| *Debtor Entities* | | | | |
| FTX EU Ltd | $1,250,848 | $47,925,646 | $175,832 | $49,352,327 |
| West Realm Shires Services Inc. | $32,233,606 | $14,596,119 | $1,270,700 | $48,100,425 |
| West Realm Shires Inc. | $35,411,619 | - | - | $35,411,619 |
| Paper Bird Inc | $7,906,893 | - | - | $7,906,893 |
| FTX Exchange FZE | $1,812,563 | - | $4,000,000 | $5,812,563 |
| Ledger Holdings Inc. | $4,098,480 | - | - | $4,098,480 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | $36,682 | $3,069,526 | - | $3,106,208 |
| FTX Europe AG | $2,979,584 | - | - | $2,979,584 |
| FTX Trading Ltd | $375,726 | $2,600,324 | - | $2,976,050 |
| Maclaurin Investments Ltd. | $2,529,814 | - | - | $2,529,814 |
| Blockfolio, Inc. | $2,396,067 | - | - | $2,396,067 |
| Ledger Prime LLC | $2,230,765 | - | - | $2,230,765 |
| Crypto Bahamas LLC | $900,000 | - | - | $900,000 |
| FTX Ventures Ltd | $779,542 | - | - | $779,542 |
| West Realm Shires Financial Services Inc. | $576,831 | - | - | $576,831 |
| FTX Lend Inc. | $484,738 | - | - | $484,738 |
| FTX Trading GmbH | $146,059 | - | - | $146,059 |
| FTX Switzerland GmbH | $16,799 | - | - | $16,799 |
| **Total Debtor Entities** | **$96,166,614** | **$68,191,615** | **$5,446,532** | **$169,804,762** |
| *Non-Debtor Entities* | | | | |
| LedgerX LLC | $13,644,269 | $24,103,085 | $265,603,056 | $303,350,409 |
| FTX Digital Markets Ltd | - | - | $49,999,600 | $49,999,600 |
| Embed Clearing LLC. | - | - | $29,978,776 | $29,978,776 |
| FTX Philanthropy Inc | $10,877,387 | - | - | $10,877,387 |
| Embed Financial Technologies Inc | $395,371 | - | - | $395,371 |
| **Total Non-Debtor Entities** | **$24,917,027** | **$24,103,085** | **$345,581,432** | **$394,601,543** |
| **Total** | **$121,083,641** | **$92,294,700** | **$351,027,964** | **$564,406,305** |

7.  The Debtors and Alvarez & Marsal are conducting a process of locating additional banks and bank accounts by reviewing the available books and records, speaking with bank personnel and interviews with employees. The Debtors and Alvarez & Marsal also are conducting a process of establishing full access by the current officers of the Debtors to the Identified Bank Accounts and any other bank accounts of the Debtors that may be located.

---

[2] The Petition Date for all Debtors is November 11, 2022 other than for Debtor West Realm Shires Inc. which is November 14, 2022.

## II. The Debtors' Proposed Postpetition Cash Management System

8. To ensure that the Debtors can navigate the chapter 11 process in an orderly and efficient manner, the Debtors request approval of a new postpetition payment system (the "Postpetition Cash Management System").

### A. Accounts

9. Under the Postpetition Cash Management System, the Debtors will utilize a cash pooling system, or "intercompany banks," to manage all of the Debtors' cash. To implement this new system, the Debtors' Chief Executive Officer has authorized, and the Debtors are currently in the process of, opening new bank accounts (the "New Bank Accounts") at an approved depository institution (an "Authorized Depository Institution")[3] in accordance with operating guidelines established by the United States Trustee for the District of Delaware (the "U.S. Trustee") for debtors-in-possession (the "U.S. Trustee Guidelines") and compliant with all applicable law, including section 345 of the Bankruptcy Code. The New Bank Accounts include:

- one or more accounts and/or subaccounts (collectively, the "Master Pooling Account") in the name of WRS to function as the Debtors' master account;

- one or more accounts and/or subaccounts (collectively, the "WRS Silo Pooling Account") in the name of WRS for the WRS Silo;

- one or more accounts and/or subaccounts (collectively, the "Dotcom Silo Pooling Account") in the name of FTX Trading for the Dotcom Silo;

- one or more accounts and/or subaccounts (collectively, the "Alameda Silo Pooling Account") in the name of Alameda for the Alameda Silo; and

- one or more accounts and/or subaccounts (collectively, the "Ventures Silo Pooling Account") in the name of Ventures for the Ventures Silo (together

---

[3] "Cash Management Banks" include the Existing Banks and the Authorized Depository Institutions that the New Bank Accounts are opened at.

>with the WRS Silo Pooling Account, the Dotcom Silo Pooling Account and the Alameda Silo Pooling Account, the "Silo Pooling Accounts").

10. In addition to the New Bank Accounts, the Postpetition Cash Management System will also continue using Existing Bank Accounts where appropriate. For example, the Debtors will maintain Existing Bank Accounts as necessary for the Debtors to receive or disburse cash in foreign currencies or Existing Bank Accounts for vendor or payroll disbursements that cannot be set up quickly.[4] Where the Chief Executive Officer determines that Existing Bank Accounts are no longer necessary, the Debtors will promptly close such accounts and move any remaining funds to the New Bank Accounts.

11. With respect to the Existing Bank Accounts, the Debtors have instructed the Identified Banks to freeze withdrawals and not to accept instructions from any prepetition signatories. The Debtors are working to change all authorized representatives of the Existing Bank Accounts to the Debtors' new management.

B. Silo Pooling Accounts

12. All current cash and future cash receipts of any Debtor within a Silo shall be deposited in, or transferred to, the applicable Silo Pooling Account; *provided* that the Debtors may keep Restricted Cash of each Debtor at such Debtor, and, at the discretion of the Chief Executive Officer, the Debtors may keep current cash and future cash receipts at any Debtor in an amount not to exceed 45-day estimated payables and current cash and future cash receipts of foreign Debtor subsidiaries at such foreign Debtor subsidiary or its foreign Debtor affiliates.

13. The Debtors may use funds in any Silo Pooling Account to pay expenses of the Debtors within the applicable Silo. The Debtors also may advance funds from any Silo

---

[4] For the avoidance of doubt, the Debtors' Postpetition Cash Management System does not seek to alter or close any of the non-Debtor bank accounts. Additionally, at this time, the Debtors will not unfreeze any "FBO" accounts held for the benefit of others without further order of the Court.

Pooling Account to any Debtor within a Silo for payments on account of such Debtor or to provide to any Debtor cash liquidity in an amount not to exceed 45-day estimated payables.

14. The Debtors will maintain a record of each Silo Pooling Account showing the debits or credits of each Debtor within the applicable Silo against the Silo Pooling Account. Net balances will be determined promptly in arrears with at least monthly frequency.

C. <u>Transfers to and from Non-Debtors</u>

15. The Debtors may deposit current cash and future cash receipts of any non-Debtor into the applicable Silo Pooling Account at any time.

16. The Debtors may advance funds from a Silo Pooling Account to a non-Debtor at any time; *provided* that, after giving effect to such advance, the net aggregate credit balance of all non-Debtors in a Silo against the applicable Silo Pooling Account is positive.

17. The Debtors will maintain a record of each Silo Pooling Account showing the debits or credits of each non-Debtor within the applicable Silo against the Silo Pooling Account. Net balances will be determined promptly in arrears with at least monthly frequency.

D. <u>Master Pooling Account</u>

18. The Debtors may transfer cash in any Silo Pooling Account to the Master Pooling Account at any time.

19. The Debtors may advance funds from the Master Pooling Account to any Silo Pooling Account at any time for payments on account of the Debtors within such Silo or to provide to any Debtor within such Silo cash liquidity in an amount not to exceed 45-day estimated payables as determined by the Chief Executive Officer. Notwithstanding the foregoing, the Debtors shall not advance funds from the Master Pooling Account to any Silo Pooling Account in an amount greater than $25 million in the aggregate prior to entry of the Final Order.

20. The Debtors will maintain a record of the Master Pooling Account showing the debits or credits of each Silo against the Master Pooling Account. Net balances will be determined promptly in arrears with at least monthly frequency.

E.  <u>Intercompany Superpriority Administrative Expense Claims</u>

21. The net obligations of any Debtor, Silo Parent or Master Pooling Account to any Debtor, non-Debtor, Silo Parent or Master Pooling Account shall constitute a superpriority administrative expense claim against the applicable Debtor.

22. At any time, the net credit position of any postpetition transaction activity between a Debtor and another Debtor, a Debtor and its Silo Parent, a non-Debtor and its Silo Parent, and the Silo Pooling Account against the Master Pooling Account shall constitute a superpriority administrative expense claim.

## **Jurisdiction**

23. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363, 364(a), 345(b) and 503(b) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004 and Local Rule 2015-2. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Relief Requested**

24. By this Motion, the Debtors request entry of the Interim and Final Orders, substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, (a) authorizing the Debtors to (i) operate a postpetition cash management system, (ii) maintain existing business forms, and (iii) perform intercompany transactions, (b) granting a partial waiver of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code and (c) granting certain related relief, including scheduling the Final Hearing.

25. In connection with the requested relief, the Debtors seek a waiver of certain of the operating guidelines established by the U.S. Trustee Guidelines that generally require the Debtors to close all prepetition bank accounts, open new accounts designated as debtor-in-possession accounts, and obtain new business forms and stationery reflecting the Debtors' status as debtors-in-possession.

**Basis for Relief**

**I.   Authorization for a Postpetition Cash Management System Is Appropriate Under Section 363(c) of the Bankruptcy Code.**

26. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession the flexibility to engage in ordinary course transactions required to operate its business, without undue oversight by its creditors or the court. *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). The Debtors' Postpetition Cash Management System allows the Debtors to continue using Debtor cash and is structured to ensure that all cash transfers during these Chapter 11 Cases is accounted for in a transparent and efficient manner. Accordingly, the Debtors submit that the Postpetition Cash Management System complies with

section 363(c)(1) of the Bankruptcy Code and should be approved. *See, e.g.*, *Charter Co.* v. *Prudential Ins. Co. of Am.* (*In re Charter Co.*), 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

27. The Debtors request authorization to modify the Prepetition Cash Management System and implement the Postpetition Cash Management System on a postpetition basis and to honor any prepetition obligations related thereto.[5] The modifications are justified under the circumstances to allow the Debtors to have control and transparency. Requiring the Debtors to immediately fully dismantle the Prepetition Cash Management System and to adopt a brand new system would incur material expenses and create unnecessary administrative burdens, at a time when the Debtors have more pressing matters to attend to at the outset of these Chapter 11 Cases. Furthermore, adopting a brand new cash management system is also impracticable given that there are 102 Debtors worldwide.

28. In contrast, the Postpetition Cash Management System will enable the Debtors to efficiently track and control funds, ensure cash availability and reduce administrative costs. The Debtors will maintain accurate and current records with respect to all transactions, whether transfers of cash, setoffs or otherwise, so that all transactions can be readily ascertained, traced and properly recorded. This Postpetition Cash Management System is structured to ensure that all cash paid out during these Chapter 11 Cases is accounted for in a transparent, efficient fashion.

---

[5] The Debtors also request that the Court authorize the Debtors to implement any changes to the Postpetition Cash Management System they may deem necessary and appropriate in their discretion, including closing any Debtor Existing Bank Account. The Debtors shall give notice of any material change to the Postpetition Cash Management System to the U.S. Trustee and any official committee appointed in these Chapter 11 Cases.

29. The Debtors submit that parties-in-interest will not be harmed by, and in fact will benefit from, the implementation of the Postpetition Cash Management System. The new system will properly document and account for all cash transfers among the FTX Group. Additionally, the Debtors have been working, and will continue to work, closely with the Existing Banks to ensure that prior authorized signatories do not have access and appropriate procedures are in place to prevent prepetition amounts from being honored without the Court's approval.

30. Courts in this district routinely authorize debtors to maintain their integrated cash management systems. *See, e.g.*, *In re CMC II, LLC*, No. 21-10461 (JTD) (Mar. 3, 2021 and Apr. 1, 2021) (granting interim and final relief) D.I. 28, 137; *In re Knotel, Inc.*, No. 21-10146 (MFW) (Feb. 3, 2021 and Feb. 25, 2021) (same), D.I. 63, 281; *In re Pennsylvania Real Estate Investment Trust*, No. 20-12737 (KBO) (Nov. 3, 2020 and Nov. 23, 2020) (same), D.I. 79, 188; *In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Oct. 14, 2020 and Nov. 19, 2020) (same), D.I. 212, 552; *In re YouFit Health Clubs, LLC*, No. 20-12841 (MFW) (Nov. 10, 2020 and Dec. 3, 2020) (same), D.I. 47, 193; *In re AAC Holdings, Inc.*, No. 20-11648 (CTG) (June 23, 2020 and July 15, 2020) (same), D.I. 58, 148.

II. **Authorization for Intercompany Transfers Is Appropriate Under Section 105(a) of the Bankruptcy Code.**

31. With respect to the intercompany obligations, the Debtors seek authority, pursuant to section 105(a) of the Bankruptcy Code, to honor postpetition intercompany obligations among Debtors, between Debtors and non-Debtors and between Silo Parents and the Master Pooling Account and to afford all claims on account of such obligations superpriority administrative expense status with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

32. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Debtors will maintain accurate and current records of all transfer of funds among Debtors, between Debtors and non-Debtors and between the Silo Parent and the Master Pooling Account. Allowing the transfer of funds is necessary for the Debtors to navigate these Chapter 11 Cases in an orderly and efficient manner and to account for and allocate all associated costs and expenses. Without a corporate cash management system, there could be cash leakage from Debtors and non-Debtors. A consolidated "intercompany bank" system will provide the Debtors' with the necessary transparency and safeguards.

33. Courts in this district routinely allow debtors to engage in intercompany transactions and accord them administrative expense during their chapter 11 cases. *See*, *e.g.*, *In re Avadim Health, Inc.*, No. 21-10883 (CTG) (Bankr. D. Del. June 28, 2021) (allowing the continuation of intercompany transactions in the ordinary course of business), D.I. 137; *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Nov. 5, 2020), D.I. 324; *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same), D.I. 158.

### III.    Cash Management Banks

34. The Debtors also request that no bank participating in the Postpetition Cash Management System that honors a prepetition wire or other item drawn on any account that is subject to this Motion (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition wire or item to be honored or (c) as the result of a good faith error made despite implementation of customary item-handling procedures, be deemed liable to the Debtors or their estates on account of such prepetition wire or other item being honored postpetition. The Debtors believe that such

flexibility accorded to the Cash Management Banks is necessary to induce the Cash Management Banks to continue providing cash management services.

35. In connection with their use of the Prepetition Cash Management System, the Debtors may have incurred periodic service charges and other fees to the Existing Banks (the "Bank Fees"). To the extent applicable, the Debtors hereby request authority to pay such unpaid prepetition Bank Fees. Payment of the prepetition Bank Fees, if any, is in the best interests of the Debtors, their estates and all parties-in-interest as it will prevent any disruption and allow for continued usage at the Existing Banks. Moreover, the Existing Banks may have setoff rights with respect to the Bank Fees, payment of any prepetition Bank Fees would not affect unsecured creditors and the issue of paying any prepetition Bank Fees would just be a matter of timing in these Chapter 11 Cases.

36. Notwithstanding the foregoing, to the extent any Existing Bank seeks to assert a setoff right (if any) with respect to any prepetition claim (other than in connection with the Bank Fees) or impose an administrative freeze on any Bank Account, the Debtors respectfully request that such Existing Bank be required to seek relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, subject to the Debtors' rights in respect of such request, and absent an order of this Court granting any such relief, the automatic stay remain in full force and effect.

**IV.    Bank Accounts**

37. U.S. Trustee Guidelines require a chapter 11 debtor, among other things, to (a) close all existing bank accounts and open new debtor-in-possession bank accounts, (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, (c) maintain a separate debtor-in-possession account for cash collateral and (d) for all debtor-in-possession checking accounts, obtain checks bearing the designation "debtor-in-

possession," the bankruptcy case number, and the type of account. These requirements are designed to provide a clear line of demarcation between a debtor's prepetition and postpetition transactions and operations and prevent the inadvertent payment of prepetition claims.

38. The Debtors seek a partial waiver of these requirements. Specifically, the New Bank Accounts that are part of the Postpetition Cash Management System will be designated as debtor-in-possession operating accounts and will be deposited at an Authorized Depository Institution. However, to require all of the Existing Bank Accounts to conform to the U.S. Trustee Guidelines would be impractical. Having to open new accounts as of the Petition Date would unnecessarily distract the Debtors' new management team, whose efforts are more appropriately focused on other more pressing matters. The Debtors' Existing Bank Accounts are critical to many of the Debtors' subsidiaries, in particular the foreign Debtors. Importantly, the Silo Pooling Accounts and the Master Pooling Account, which serve as the "intercompany banks," would be designated as debtor-in-possession operating accounts. Therefore, to avoid delays in paying amounts incurred postpetition such as payroll, and to ensure as smooth a transition into chapter 11 as possible, the Debtors should be permitted to continue to maintain their existing bank accounts and, if necessary, to close existing accounts in the normal course of the Debtors' operations.

39. Accordingly, the Debtors request that their Existing Bank Accounts be deemed to be debtor-in-possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period, be authorized. The Debtors represent that if the relief requested herein is granted, they will implement appropriate mechanisms to ensure that no payments will

be made on any debts incurred by them prior to the Petition Date, other than those authorized by the Court.

40. Courts often grant a debtor's request to waive the strict compliance with the U.S. Trustee Guidelines. S*ee, e.g., In re Coldwater Creek Inc*., No. 14-10867 (BLS) (May 5, 2014) (permitting debtors to maintain existing bank accounts and cash management system), D.I. 336; *In re Furniture Brands Int'l, Inc*., No. 13-12329 (CSS) (Sept. 30, 2013) (same), D.I. 237; *In re WP Steel Venture LLC*, No. 12-11661 (KJC) (June 1, 2012), D.I. 66.

## V. Business Forms

41. To minimize expenses to their estates, the Debtors request authority to continue to use all correspondence and business forms as such forms were in existence immediately before the Petition Date (if any), without reference to the Debtors' status as debtors-in-possession. Upon depletion of the Debtors' business forms stock, the Debtors will obtain new business forms stock reflecting their status as debtors-in-possession.

42. In large chapter 11 cases, the Court has allowed debtors to use their prepetition business forms without the "debtor-in-possession" label, at least until the debtors' existing forms were depleted. *See, e.g., In re Ector County Energy Center LLC*, No. 22-10320 (JTD) (May 31, 2022), D.I. 184; *In re Lighthouse Resources Inc*., No. 20-13056 (JTD) (Jan. 1, 2021), D.I. 143; *In re Mallinckrodt PLC*, No. 20-12522 (JTD) (Nov. 19, 2020), D.I. 552.

## VI. Partial Section 345 Waiver

43. The Debtors also request that the Court waive the requirements of section 345(b) of the Bankruptcy Code and permit them to maintain their existing deposits in accordance with their existing deposit practices. Section 345(a) of the Bankruptcy Code authorizes deposits of money, such as the Debtors' cash, in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." *See* 11

U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that a debtor-in-possession must require a bond from the entity with which the money is deposited or invested in favor of the United States secured by the undertaking of an adequate corporate surety. Alternatively, the debtor-in-possession may require the entity to deposit securities of the kind specified in section 9303 of title 31 of the United States Code.

44. A court may relieve a debtor-in-possession of the restrictions imposed by section 345(b) for "cause." *See* 11 U.S.C. § 345(b). In determining whether "cause" exists for waiver of the investment, deposit and reporting requirements of section 345(b), the Court should consider the "totality of the circumstances," utilizing the following factors:

(a) the sophistication of the debtor's business;

(b) the size of the debtor's business operations;

(c) the amount of the investments involved;

(d) the bank ratings (Moody's and Standard and Poor's) of the financial institutions where debtor-in-possession funds are held;

(e) the complexity of the case;

(f) the safeguards in place within the debtor's own business of insuring the safety of the funds;

(g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h) the benefit to the debtor;

(i) the harm, if any, to the estate; and

(j) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

45. While the Master Pooling Account and Silo Pooling Accounts will be opened with banks that are Authorized Depository Institutions and in compliance with section 345 of the Bankruptcy Code, the Debtors respectfully submit that cause exists to waive the requirements of Section 345 with respect to the Existing Bank Accounts.

46. Any requirement that the Debtors close down all non-compliant bank accounts and open new ones would be detrimental to the Debtors, their estates, their customers and their other creditors. Only Restricted Cash, cash not to exceed 45-day estimated payables and cash receipts of foreign Debtor subsidiaries will be deposited and maintained at the Existing Bank Accounts. All other cash will be deposited and maintained either at the Silo Pooling Accounts or the Master Pooling Account. Due to the complexity of the Prepetition Cash Management System, closing these accounts and moving funds into compliant accounts only to have those new accounts remit funds to the Silo Pooling Accounts (that are in any case section 345(b) compliant) would be unduly burdensome, and, in the case with offshore entities and accounts, likely impossible. The Debtors respectfully submit that the Postpetition Cash Management System reflects a reasonable and cost-effective way to centralize all cash in the Existing Bank Accounts and the New Bank Accounts in compliant institutions.

47. Courts in this district and elsewhere have allowed debtors to maintain their existing depository accounts in complex chapter 11 cases, despite a failure to strictly comply with section 345 of the Bankruptcy Code. *See, e.g., In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Jan. 21, 2020) (order suspending debtors' obligation to comply with section 345 and authorizing maintenance of existing bank accounts), D.I. 125; *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Dec. 3, 2019) (same). D.I. 102; *In re Destination Maternity Corporation*, No.

19-12256 (BLS) (Nov. 12, 2019) (same) D.I. 228; *In re Forever 21, Inc.*, No. 19-12122 (KG) (Oct. 28, 2019) (same), D.I. 334; *In re Blackhawk Mining*, LLC, No. 19-11595 (LSS) (Aug. 9, 2019) (same), D.I. 158; *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Mar. 31, 2017), D.I. 341.

### **Bankruptcy Rule 6003 Is Satisfied**

48. In order for a debtor to obtain relief to make payments within 21 days of the Petition Date, it must establish that making such payments satisfies the requirements mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and irreparable harm." If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely absent the granting of the requested relief, immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (finding that relief requested by the debtors was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operation of the debtors' businesses).

49. Immediate and irreparable harm would result if the relief requested herein is not granted. As described above, if the Debtors are not authorized to implement the Postpetition Cash Management System and pay any related obligations, the Debtors will incur material expenses and expend considerable time and resources trying to navigate the decentralized Prepetition Cash Management System. These effects would have an adverse impact to the Debtors' businesses, thereby causing immediate and irreparable harm. Failure to receive the requested relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this important juncture. For the reasons discussed herein, the relief requested is necessary for the Debtors to operate their businesses in the ordinary course and preserve the value of the Debtors' assets and maximize the value of the estates for the

benefit of all stakeholders.  Accordingly, the Debtors respectfully submit that they have satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

50.    Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

### Notice

51.    No creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the Identified Banks; (g) the parties identified on the Debtors' consolidated list of 50 largest unsecured creditors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, (b) enter the Final Order, substantially in the form attached hereto as Exhibit B and (c) grant such other and further relief as is just and proper.

Dated: November 19, 2022
     Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Proposed Counsel for the Debtors
and Debtors-in-Possession*