## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Pending) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR TRANSFERS OF EQUITY SECURITIES AND CLAIMS OF WORTHLESS STOCK DEDUCTIONS AND (II) GRANTING CERTAIN RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an interim

order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), and a final

order, substantially in the form attached hereto as Exhibit B (the "Final Order" and together with

the Interim Order, the "Orders"), pursuant to sections 105(a), 362 and 541 of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), (a) establishing notice

and objection procedures related to certain transfers of and declarations of worthlessness for

federal or state tax purposes with respect to the existing common stock or equity interests or

preferred stock or equity interests of West Realm Shires Inc., Alameda Research LLC, Hilltop

Technology Services LLC, Clifton Bay Investments LLC, Deck Technologies Holdings LLC,

Paper Bird Inc. and Blockfolio, Inc. (the "NOL Debtors"), or any Beneficial Ownership[2] thereof

---

[1]   The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   "Beneficial Ownership" shall be determined in accordance with the applicable rules of Section 382 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834 (as amended, the "IRC"), and the Treasury Regulations thereunder, and includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries and a partner in a partnership would be considered to own its proportionate share of any equity securities owned by such partnership), ownership by such holder's family members and entities acting in concert with such holder to make a coordinated acquisition

(any such record or Beneficial Ownership of existing common stock or equity interests, the "Common Stock") and the existing classes (or series) of preferred stock or equity interests of the NOL Debtors, or any Beneficial Ownership thereof (any such record or Beneficial Ownership of existing preferred stock or equity interests, the "Preferred Stock"),[3] as detailed in Exhibit 1 to the Interim Order (the "Equity Procedures"); (b) directing that any purchase, sale, or other transfer, or declaration of worthlessness with respect to, of Common Stock or Preferred Stock in violation of the procedures set forth herein be null and void *ab initio*; and (c) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing").  Certain facts supporting this Motion are set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray Declaration") and *Declaration of Edgar W. Mosley in Support of Chapter 11 Petitions and First Day Pleadings* (the "Mosley Declaration") and, together with the Ray Declaration, the "First Day Declarations").  In further support of the Motion, the Debtors respectfully state as follows:

## Background

1.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On November 14, 2022, the Debtors filed a motion with the Court pursuant to rule 1015 of the

---

of equity securities, and ownership of equity securities that such holder has an Option (as defined below) to acquire.  An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

[3]     For the avoidance of doubt, (i) the definition of Common Stock and Preferred Stock shall not include any securities issued in connection with a chapter 11 plan of reorganization of the Debtors and (ii) the use of the terms Common Stock and Preferred Stock herein (and any corresponding calculations, limitations and obligations) shall apply to each of the NOL Debtors separately, without aggregation of the equity interests of such Debtors.

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") seeking joint administration of the Debtors' cases (the "<u>Chapter 11 Cases</u>").  As of the date hereof, no creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the First Day Declarations.

## <u>Facts Specific to the Relief Requested</u>

### I.      The Tax Attributes

3.      Generally, a company generates net operating losses ("<u>NOLs</u>") if the operating expenses it has incurred exceed the revenues it has earned during a single year.  A company may apply, or "carry forward," NOLs to reduce future tax payments in a tax year or years after the year in which the NOLs were generated (subject to certain conditions as discussed below).  See IRC §§ 39 and 172.  In addition, business interest expense in excess of certain thresholds is disallowed as a deduction but may generally be carried forward and deducted in future tax years (subject to certain conditions).  See IRC § 163(j).  Finally, "net unrealized built-in loss," includes, among other things, certain tax losses resulting from the disposition of assets (such net unrealized built-in loss in respect of the value of assets, together with business interest expense, NOLs and certain other tax attributes, the "<u>Tax Attributes</u>").

4.      The Debtors believe, based on filed 2021 tax returns that, as of December 31, 2021, the Debtors collectively had federal NOL carryovers in the amount of at least approximately $3.7 billion and state NOL carryovers in the amount of at least approximately $715 million. [4]  The Debtors are investigating whether they may have additional disallowed business interest carryforwards, foreign tax credits, net unrealized built-in loss or other Tax

---

[4]      An amount expressed as "in the amount of" represents the gross amount of the Tax Attribute.  An amount expressed as "with a value of" indicates the estimated cash value of the Tax Attribute.  All amounts set forth in this Motion are subject to change as the Debtors continue to investigate their tax planning options.

Attributes as of December 31, 2021.[5]  Furthermore, the Debtors believe that, based on currently available information, they will generate significant additional Tax Attributes during the 2022 tax year, including during the pendency of these Chapter 11 Cases.  The Tax Attributes provide the potential for material future tax savings or other tax structuring possibilities in these Chapter 11 Cases because the Debtors can generally carry forward their Tax Attributes to offset future taxable income, thereby reducing their future aggregate tax obligations.  Additionally, such Tax Attributes may generally be utilized by the Debtors to offset any taxable income generated by transactions consummated during these Chapter 11 Cases.  Thus, the value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

## II.    An "Ownership Change" May Negatively Impact the Debtors' Ability to Use the Tax Attributes.

5.    Section 382 of the IRC limits the amount of taxable income that can be offset by a corporation's Tax Attributes in taxable years (or a portion thereof) following an "ownership change."[6]  Generally, an ownership change occurs if the percentage (by value) of the stock of a corporation owned by one or more 5% shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the 3-year testing period ending on the date of the ownership change.[7]  For example, an ownership change would occur in the following situation:

---

[5]  Under Section 382(h) of the Internal Revenue Code, a taxpayer's loss from the sale of its assets following an ownership change is subject to limitation in the same manner as a NOL carryforward arising prior to the ownership change, to the extent of the taxpayer's net unrealized built-in loss at the time of the ownership change.

[6]  Similarly, section 383 of the IRC limits the amount of tax liability that can be offset by tax credits following an "ownership change."

[7]  In general, under section 382(g)(4)(A) of the IRC, all shareholders who individually hold less than 5% of the stock of a company are deemed to be a single 5% shareholder throughout the 3-year testing period, and transfers between such shareholders are disregarded for purposes of determining whether an ownership change has occurred.  Accordingly, the Debtors do not seek to impose restrictions on transfers by shareholders of less than 4.75% of the Common Stock, provided that such shareholders do not have an intent to accumulate a 5% or greater block of stock or add or sell shares to or from such block.

An individual ("A") owns 50.1% of the stock of corporation XYZ. A sells her 50.1% interest to another individual ("B"), who owns 5% of XYZ's stock. Under section 382, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5% to 55.1%) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5% shareholder and increases his ownership by more than 50 percentage points during the testing period.

6.      An ownership change can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder." A 50-percent shareholder is any person that owned 50% or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed. IRC § 382(g)(4)(D). If the 50-percent shareholder still owns the corporation's stock at the end of the taxable year, section 382 of the IRC essentially treats the person as newly-purchasing the stock on the first day of the next taxable year. For example, if a person with 50.1% of a corporation's stock claims a worthless stock deduction in 2022 but does not sell such stock that year, that person is treated (a) as not having owned the stock at the end of 2022 and (b) as having purchased the stock on January 1, 2023. That deemed purchase would cause an ownership change, because the 50-percent shareholder would be deemed to have a more than 50 percentage point increase in its stock ownership.

7.      If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future income that may be offset by its "pre-change losses" to an annual amount based on the fair market value of all stock of the corporation prior to the ownership change multiplied by the long-term tax-exempt rate that applies to the month of the ownership change (which is currently approximately 2.97%). *See* IRC § 382(b). "Pre-change losses" would include the Tax Attributes, and this limitation is permanent. Thus, certain transfers of Common Stock or Preferred Stock effected before the effective date of the Debtors' emergence

from chapter 11 protection or the consummation of a taxable sale of assets of the Debtors may

trigger an "ownership change" for tax purposes, severely endangering the Debtors' ability to

utilize the Tax Attributes and causing substantial damage to the Debtors' estates.

8.      For distressed companies especially, this limitation could severely restrict

the use of the Tax Attributes because the value of their stock may be quite low.  For example, if a

hypothetical company were to become distressed, such that its equity value was $2 million, and

undergo an ownership change when its equity value was at this depressed level, the annual

limitation on the company's use of its Tax Attributes resulting from that ownership change

would be $59,400 (based on a 2.97% long-term, tax-exempt rate that would apply under section

382 of the IRC for an ownership change occurring in November 2022).  In other words, the

company would be able to utilize only $59,400 of its Tax Attributes in each post-change tax year

because the ownership change occurred when the company's stock value was low.  Taxable

income in excess of this amount would be taxable to the company at the federal rate of 21%.

9.      Likewise, if a 50% or greater shareholder of the Debtors were, for federal

or state tax purposes, to treat its Common Stock or Preferred Stock as having become worthless

prior to the Debtors emerging from chapter 11 protection, such a claim could trigger an

ownership change under Section 382(g)(4)(D) of the IRC, causing a similarly adverse effect on

the Debtors' ability to use the Tax Attributes.

10.     To maximize the use of the Tax Attributes and potentially enhance

recoveries for the Debtors' stakeholders, the Debtors seek limited relief that will enable them to

establish procedures to closely monitor certain transfers of Common Stock or Preferred Stock

and claims of worthless stock deductions so as to be in a position to act expeditiously to prevent

such transfers or claims of worthless stock deductions, if necessary, with the purpose of

preserving the Tax Attributes.  These procedures will only impact a limited number of people

who hold Common Stock or Preferred Stock of the NOL Debtors, each of which is to the

Debtors' knowledge wholly-owned by three individuals (other than West Realm Shires Inc. and

Blockfolio, Inc., which have minority third-party equity holders) and majority-owned by Sam

Bankman-Fried.  By establishing and implementing the Equity Procedures, the Debtors will be

able to review and object to "ownership changes" that threaten their ability to preserve the value

of their Tax Attributes for the benefit of the estates.

**III.    Proposed Procedures for Transfers of, or Declarations of Worthlessness with Respect to, Common Stock and Preferred Stock.**[8]

11.    The Equity Procedures are the mechanism by which the Debtors propose

to monitor, and, if necessary, object to, certain transfers of Common Stock and Preferred Stock

and declarations of worthlessness with respect to Common Stock and Preferred Stock to ensure

preservation of the Tax Attributes.  The Equity Procedures, which are fully set forth in Exhibit 1

to the Interim Order, are summarized below.

<u>Procedures for Transfers of Common Stock and Preferred Stock</u>

 a. Any entity (as defined in section 101(15) of the Bankruptcy Code) who currently is or becomes a Substantial Shareholder (as defined herein) must file with the Court, and serve, via mail and, if an email address is listed, email upon (i) proposed co-counsel to the Debtors, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, Attn: Alexa J. Kranzley; (ii) proposed co-counsel to the Debtors, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Kimberly A. Brown; and (iii) counsel to any official statutory committee appointed in the Chapter 11 Cases (collectively, the "<u>Notice Parties</u>"), a declaration of such status, substantially in the form of <u>Exhibit 1A</u> attached to the Equity Procedures (each, a "<u>Declaration of Status as a Substantial Shareholder</u>"), on or before the later of (a) 14 calendar days after the date of the Notice of Interim Order (as defined herein), or (b) 14 calendar days after becoming a Substantial Shareholder.

---

[8] Capitalized terms not otherwise defined in this section are to be given the meanings ascribed to them in the Equity Procedures.

b. Prior to effectuating any transfer of Beneficial Ownership of Common Stock or Preferred Stock that would result in an increase in the amount of Common Stock or Preferred Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual becoming a Substantial Shareholder, such Substantial Shareholder or potential Substantial Shareholder must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock or Preferred Stock, substantially in the form of <u>Exhibit 1B</u> attached to the Equity Procedures (each, a "<u>Declaration of Intent to Accumulate Common Stock or Preferred Stock</u>").

c. Prior to effectuating any transfer of Beneficial Ownership of Common Stock or Preferred Stock that would result in a decrease in the amount of Common Stock or Preferred Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual ceasing to be a Substantial Shareholder, such Substantial Shareholder must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock or Preferred Stock, substantially in the form of <u>Exhibit 1C</u> attached to the Equity Procedures (each, a "<u>Declaration of Intent to Transfer Common Stock or Preferred Stock</u>," and together with a Declaration of Intent to Accumulate Common Stock or Preferred Stock, each, a "<u>Declaration of Proposed Transfer</u>").

d. The Debtors shall have 15 business days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such Substantial Shareholder or potential Substantial Shareholder an objection to any proposed transfer of Beneficial Ownership of Common Stock or Preferred Stock described in the Declaration of Proposed Transfer on the grounds that such transfer might adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection, such transaction will remain ineffective unless such objection is withdrawn by the Debtors or such transaction is approved by a final and non-appealable order of the Court. If the Debtors do not object within such 15-business-day period, such transaction can proceed solely as set forth in the Declaration of Proposed Transfer. Further transactions within the scope of this paragraph must be the subject of additional notices in accordance with the procedures set forth herein, with an additional 15-business-day waiting period for each Declaration of Proposed Transfer.

e. For purposes of the Equity Procedures: (i) a "<u>Substantial Shareholder</u>" is any entity or individual that has Beneficial Ownership of at least: (A) 4.75% of all issued and outstanding shares of Common Stock of the applicable NOL Debtor or

(B) 4.75% of all issued and outstanding shares of Preferred Stock of the applicable NOL Debtor;[9] (ii) "Beneficial Ownership" shall be determined in accordance with the applicable rules of Section 382 of the IRC and the Treasury Regulations thereunder and includes direct and indirect ownership (*e.g.*, a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries and a partner in a partnership would be considered to own its proportionate share of any equity securities owned by such partnership), ownership by such holder's family members and entities acting in concert with such holder to make a coordinated acquisition of equity securities, and ownership of equity securities that such holder has an Option to acquire; and (iii) an "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether such interest is contingent or otherwise not currently exercisable.

## Procedures for Deductions of Worthlessness of the Common Stock or Preferred Stock

a.  Any person or entity that currently is or becomes a 50% Shareholder (as defined below) must file with the Court, and serve upon the Notice Parties, a notice of such status, in the form of Exhibit 1D attached to the Equity Procedures, on or before the later of (i) 14 calendar days after the date of the Notice of Interim Order and (ii) 14 calendar days after becoming a 50% Shareholder.

b.  At least 28 days prior to filing any federal or state tax return, or any amendment to such a return, claiming any deduction for worthlessness of the Common Stock or Preferred Stock, for a tax year ending before the Debtors' emergence from chapter 11 protection, such 50% Shareholder must file with the Court, and serve upon the Notice Parties, an advance written notice in the form of Exhibit 1E attached to the Equity Procedures (a "Declaration of Intent to Claim a Worthless Stock Deduction") of the intended claim of worthlessness.

c.  The Debtors will have 15 business days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50% Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to

---

[9]    As used in the Equity Procedures, "shares" shall include all forms of equity interests with respect to the applicable NOL Debtor, including shares of capital stock, partnership interests, membership interests, participations and other equivalents.

utilize their Tax Attributes. During such 15-business-day period, and while any objection by the Debtors to the proposed claim is pending, such 50% Shareholder shall not claim, or cause to be claimed, the proposed worthless stock deduction to which the Declaration of Intent to Claim a Worthless Stock Deduction relates and thereafter in accordance with the Court's ruling, and, as applicable, any appellate rules and procedures. If the Debtors do not object within such 15-business-day period, the filing of the tax return with such claim would be permitted as set forth in the Declaration of Intent to Claim a Worthless Stock Deduction. Additional tax returns within the scope of this paragraph must be the subject of additional notices as set forth herein, with an additional 15-business-day waiting period.

d.   For purposes of the procedures a "50% Shareholder" is any person or entity that is or becomes a "50-percent shareholder" with respect to the Common Stock or Preferred Stock within the meaning of and determined in accordance with section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations.

Noticing and Other Procedures

a.   No later than two business days following entry of the Interim Order, the Debtors shall serve by first class mail a notice, substantially in the form of Exhibit 2 attached to the Interim Order (the "Notice of Interim Order"), on: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the parties identified on the Debtors' consolidated list of 50 largest unsecured creditors; (iii) all holders of record (with instructions to serve down to the beneficial owners, if applicable) of Common Stock or Preferred Stock; (iv) counsel to any statutory committee appointed in these Chapter 11 Cases; and (v) all parties who, as of the filing of the Interim Order, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Additionally, no later than two business days following entry of the Final Order, the Debtors shall serve a Notice of Interim Order modified to reflect that the Final Order has been entered (as modified, the "Notice of Final Order") on the same entities that received the Notice of Interim Order.

b.   Within five business days after receiving a Notice of Interim Order or Notice of Final Order, as applicable, all holders of record (with instructions to serve down to the beneficial owners, if applicable) of Common Stock or Preferred Stock shall be required to serve the Notice of Interim Order or Notice of Final Order, as applicable, on any holder for whose benefit such registered holder holds such Common Stock or Preferred Stock down the chain of ownership.

c.  Any entity or broker or agent acting on such entity's or individual's behalf who sells in excess of 4.75% of all issued and outstanding shares of Common Stock or Preferred Stock to another entity shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock or Preferred Stock or any broker or agent acting on such purchaser's behalf.

d.  To the extent confidential information is required in any declaration described in these Equity Procedures, such confidential information may be filed and served in redacted form; *provided, however*, that any such declarations served on the Debtors **shall not** be in redacted form.  The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided, however*, that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order.  To the extent confidential information is necessary to respond to a petitioner objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

12.  The Debtors request that the Court permit the Debtors to waive, in writing, in their discretion, any and all restrictions, stays and notification procedures set forth in the Equity Procedures.

### Jurisdiction

13.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 362 and 541 of the Bankruptcy Code.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

14.     By this Motion, the Debtors request entry of the Interim and Final Orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, (a) establishing notice and objection procedures related to certain transfers of and declarations of worthlessness for federal or state tax purposes with respect to the Common Stock or Preferred Stock, as detailed in the Equity Procedures attached as Exhibit 1 to the Interim Order, (b) directing that any purchase, sale, or other transfer of, or declaration of worthlessness with respect to, Common Stock or Preferred Stock in violation of the procedures set forth herein be null and void *ab initio* and (c) granting certain related relief, including scheduling the Final Hearing.

## Basis for Relief

15.     Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Courts have uniformly held that a debtor's NOLs constitute property of the estate under section 541 of the Bankruptcy Code and, therefore, courts have the authority to impose measures intended to protect and preserve such NOLs.  The seminal case articulating this rule is *In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991).  In *Prudential Lines*, the court enjoined a parent corporation from taking a worthless stock deduction with respect to its wholly-owned subsidiary, which was in bankruptcy, on the grounds that allowing the parent to take such a deduction would destroy its debtor subsidiary's NOLs.  107 B.R. at 843. In issuing the injunction, the court held that the debtor subsidiary's potential ability to utilize NOLs was property of its estate.  *Id.* at 838.  *See In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211

(3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572); *In re Russell*, 927 F.2d 413, 417 (8th Cir. 1991) (holding that the "right to carry forward the [debtors'] NOLs" was a "property interest" of the estate).

16.     Section 362(a) of the Bankruptcy Code operates as a stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Accordingly, "where a nondebtor's action with respect to an interest that is intertwined with that of a bankruptcy debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."  *In re Prudential Lines, Inc.*, 928 F.2d at 574.  The Second Circuit in *Prudential Lines* held, therefore, that "despite the fact that the [parent corporation's] action is not directed specifically at [the debtor subsidiary], it is barred by the automatic stay as an attempt to exercise control over property of the estate."  *Id.*; *see also In re Prudential Lines, Inc.*, 107 B.R. at 842-43 (holding that because of the effect that it would have on the debtor subsidiary's ability to use its NOLs, the taking of a worthless stock deduction by the parent was subject to the automatic stay as an exercise of control over the debtor subsidiary's NOLs and thus over property of the debtor subsidiary's estate); *In re Grossman's, Inc.*, No. 97-695 (PJW), 1997 WL 33446314, at *1 (Bankr. Del. Oct. 9, 1997) (holding that the debtors' NOLs were property of the debtors' estates and protected by the automatic stay); *In re Southeast Banking Corp.*, No. 91-14561, 1994 Bankr. LEXIS 2389, at *5 (Bankr. S.D. Fla. July 21, 1994) (holding debtor's interest in its NOLs "constitutes property of the estate within the scope of 11 U.S.C. § 541(a)(1) and is entitled to the protection of the automatic stay imposed pursuant to 11 U.S.C. § 362(a)(3)"); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he

sale of stock is prohibited by § 362(a)(3) as an exercise of control over the NOL, which is property of the estate.").

17.     The Second Circuit in *Prudential Lines* went on to uphold the permanent injunction set forth by the bankruptcy court as an exercise of the court's equitable powers under section 105 of the Bankruptcy Code, and supported the bankruptcy court's finding that eliminating the debtor's ability to apply its NOL carryforwards to offset income on future tax returns would impede its reorganization. *In re Prudential Lines Inc.*, 928 F.2d at 574.

18.     Similarly, in *Phar-Mor*, the chapter 11 debtors moved to prohibit any transfer of the debtors' stock that could have an adverse effect on the debtors' ability to utilize NOL carryforwards.  The court held that the NOL qualified as property of the estate and issued an injunction enforcing the automatic stay.  *In re Phar-Mor. Inc.*, 152 B.R. at 927.  Significantly, the court granted the relief requested, even though the stockholders did not state any intent to sell their stock and even though the debtors did not show that a sale was pending that would trigger the prescribed change in ownership under Section 382 of the IRC.  *Id.*  Despite the uncertainty of the applicability of section 382 of the IRC at that time, the court observed that "[w]hat is certain is that the NOL has potential value, as yet undetermined, which will be of benefit to creditors and will assist [d]ebtors in their reorganization process.  This asset is entitled to protection while [d]ebtors move forward toward reorganization." *Id.*  The court also concluded that because the debtors sought to enforce the stay, they did not have to meet the more stringent requirements for the granting of a preliminary injunction:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits.  The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

19.     Here, implementation of the Equity Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates.  As stated above, the Debtors believe that they collectively had federal NOL carryovers in the amount of at least approximately $3.7 billion and state NOL carryovers in the amount of at least approximately $715 million.  The Debtors are investigating whether they may have additional disallowed business interest carryforwards, foreign tax credits, net unrealized built-in loss or other Tax Attributes as of December 31, 2021.  Furthermore, the Debtors believe that, based on currently available information, they will generate significant additional Tax Attributes during the 2022 tax year, including during the pendency of these Chapter 11 Cases.  The limitation or loss of the Tax Attributes could thus be materially detrimental to all parties in interest.  Accordingly, granting the relief requested will assist the Debtors to preserve their flexibility during the pendency of the Chapter 11 Cases to make full and efficient use of the Tax Attributes and maximize the value of these estates.

20.     Additionally, the Equity Procedures do not create general prohibitions on transfers of, or declarations of worthlessness with respect to, Common Stock or Preferred Stock. The Debtors seek to establish procedures only to monitor those types of transactions that would pose a serious risk under the ownership change test pursuant to section 382 of the IRC, in order to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the Debtors' utilization of the Tax Attributes. Because of the importance of the Tax Attributes to the Debtors' restructuring, and thus all parties-in-interest, implementation of the Equity Procedures outweighs subjecting a limited number of transfers to the Equity Procedures.

21.     Courts in this jurisdiction and others have routinely restricted transfers of equity interests in, and declarations of worthlessness with respect to, stock of a debtor. Courts ordering such relief generally have done so by imposing notice and objection requirements regarding any proposed transfer of shares on a person whose holdings of such shares exceeds (or would exceed as a result of the proposed transfer), a certain threshold amount. *See, e.g.*, *In re AAC Holdings, Inc.*, No. 20-11648 (JTD) (July 15, 2020), D.I. 150 (approving notification procedures and restricting certain transfers of equity interests, and claiming worthless stock deduction with respect to, the debtors); *In re TPC Grp. Inc.*, No. 22-10394 (CTG) (June 30, 2022), D.I. 348 (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Sept. 22, 2022), D.I. 155 (same); *In re RentPath Holdings, Inc.*, 20-10312 (BLS) (Mar. 10, 2020), D.I. 168 (same); *In re Checkout Holdings Corp.*, 18-12794 (KG) (Jan. 10, 2019), D.I. 205 (same); *In re Claire's Stores, Inc.*, 18-10584 (MFW) (Apr. 17, 2018), D.I. 284 (same).

**<u>Bankruptcy Rule 6003 Does Not Apply to the Relief Requested Herein</u>**

22.     Under Bankruptcy Rule 6003, the Court may grant relief regarding a motion to use, sell, or lease property of the estate within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. The Debtors respectfully submit that Bankruptcy Rule 6003 does not apply to this motion because the Debtors are not seeking to use, sell, or lease property of the estate. *See* Advisory Comm. Note to 2011 Amendment to Fed. R. Bankr. P. 6003 ("[T]he rule does not prohibit the court from entering orders in the first 21 days of the case that *may relate* to the motions and applications set out in (a), (b), and (c); it is only prohibited from granting the relief requested by those motions or applications." (emphasis added)).

23.     Even if Bankruptcy Rule 6003 were applicable to this Motion, however, the "immediate and irreparable" harm standard is satisfied. Immediate and irreparable harm

would result if the relief requested herein is not granted.  The Tax Attributes are a valuable asset of the Debtors' estates.  A loss of the Tax Attributes cannot be reversed, and such loss would cause immediate and irreparable harm to the Debtors' estates.  If the Court does not grant the relief sought in this Motion on an interim basis, holders of Common Stock or Preferred Stock could transfer such securities before the Court approves the protective restrictions requested herein.  Accordingly, to the extent Bankruptcy Rule 6003 applies to the relief requested herein, the Debtors respectfully submit that they have satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

24.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' estates.

### Reservation of Rights

25.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or

continue any applicable program postpetition, which decision shall be in the discretion of the

Debtors.  Any payment made pursuant to an order of the Court granting the relief requested

herein is not intended to be nor should it be construed as an admission as to the validity of any

claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Notice

26.     No creditors' committee, trustee or examiner has been appointed in these

Chapter 11 Cases.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the

Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States

Department of Justice; (e) the United States Attorney for the District of Delaware; (f) registered

and nominee holders of Common Stock and Preferred Stock;[10] (g) the parties identified on the

Debtors' consolidated list of 50 largest unsecured creditors; and (h) to the extent not listed

herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A,

(b) enter the Final Order, substantially in the form attached hereto as Exhibit B and (c) grant such

other and further relief as is just and proper.

---

[10]    The Debtors will serve those registered and nominee holders of Common Stock and Preferred Stock for which
they have contact information at this time and will supplement this service, to the extent necessary, once more
information is available.

Dated: November 19, 2022
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
         brown@lrclaw.com
         pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
         bromleyj@sullcrom.com
         gluecksteinb@sullcrom.com
         kranzleya@sullcrom.com

*Proposed Counsel for the Debtors
and Debtors-in-Possession*