# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Requested) |
|  | **Re: Docket No. 47** |

### OBJECTION OF EVOLVE BANK & TRUST TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OPERATE A POSTPETITION CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BUSINESS FORMS AND (C) PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING A PARTIAL WAIVER OF THE DEPOSIT GUIDELINES SET FORTH IN SECTION 345(b) AND (III) GRANTING CERTAIN RELATED RELIEF

Evolve Bank & Trust, an Arkansas banking corporation with principal offices located in Memphis, Tennessee ("Bank"), objects to the motion filed by FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and together with their affiliated non-Debtors, the "FTX Group") for entry of an interim order (a) authorizing the Debtors to (i) operate a postpetition cash management system, (ii) maintain existing business forms and (iii) perform intercompany transactions, (b) granting a partial waiver of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code and (c) granting certain related relief (the "Motion") (Doc. No. 47).

### Preliminary Statement

1.  Preliminarily, Bank observes that the Motion – styled as a typical maintenance of existing cash management and business form motion – is anything but typical. As the Motion

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

acknowledges, "[h]istorically, the FTX Group maintained decentralized cash systems (the "Prepetition Cash Management System") (Motion at ¶ 4). From the description that ensues, however, it is clear that the Debtors had no "system" at all.[2] Rather, the Motion is more properly characterized as a motion to use cash collateral – or simply to sweep funds (from whomever they may actually belong) to a newly created "Postpetition Cash Management System." While Bank appreciates the need for effective cash management, such need should not be at the expense of end users who hold fiat currency in accounts which the Debtors acknowledge are held for the benefit of others. Bank is one of the institutions in which such end users' funds are currently held.

2.     Additionally, Bank asserts that it holds a perfected, possessory, first priority security interest in and to certain reserve accounts (the "Reserve Account") maintained at Bank by West Realm Shires Services, Inc. (one of the Debtors in these jointly administered cases) (herein, "West Realm") to secure West Realm's obligations under a Master Bank Services Agreement which was executed by West Realm on December 23, 2021 (the "BSA"). West Realm operated a program through which Bank offered bank services to certain end users who were customers of West Realm (the "End Users"). Pursuant to the terms of the BSA, the Reserve Account serves to secure West Realm's obligations to Bank under the BSA. To the extent that the Motion seeks unilateral authority for the Debtors to take the Reserve Account, the Debtors have failed to identify any adequate protection for the Debtors' use of such funds.

3.     Accordingly, the Motion should be denied. Alternatively, any interim or final order on the Motion should expressly carve out the accounts held by Bank from the relief requested in the Motion.

---

[2]    Indeed, the Debtors admit that "[b]ecause of historical cash management failures and the deficiency of documentation controls, the Debtors do not yet know the total amount of cash they hold." (Motion at ¶ 5).

2

**Background**

4.  On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 14, 2022, the Debtors filed a motion with the Court pursuant to rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking joint administration of the Debtors' cases (the "Chapter 11 Cases"). As of the date hereof, no creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.

5.  On November 19, 2022, the Debtors filed the Motion.

6.  The Motion is listed among the matters going forward on the Notice of Agenda for Hearing Scheduled November 22, 2022, at 11:00 A.M. (ET). (Doc. No. 59).

**Facts Specific to the Objection**

7.  Bank is a depository institution and state member bank of the Federal Reserve with its deposits insured by the Federal Deposit Insurance Corporation ("FDIC"), is a member of certain networks (MasterCard and Visa) and is in the business of providing financial products and other bank services to commercial and consumer customers.

8.  From December 2021 through the Petition Date, West Realm operated a program under which Bank offered bank services to End Users in keeping with the terms outlined in the BSA. A copy of the BSA executed by West Realm and under which Bank and West Realm operated is attached hereto as **Exhibit 1**.

9.  In general terms, End Users entered into agreements with Bank for Debit Card Services ("DCS") and Prepaid Card Services ("PCS" and, with DCS, collectively, "Card

3

Services"). Bank issued cards to End Users who established accounts with Bank. In respect of the DCS, Bank established a settlement account maintained and controlled by Bank (the "Settlement Account") to be used for the settlement of DCS card transactions. In respect of the PCS, Bank also issued cards to End Users who established accounts and deposited funds into a custodial account for the benefit of the End Users (the "FBO Account"). The FBO Account is defined as an "omnibus account owned by Bank, in which Bank pools the funds held by all of [West Realm's] End Users, for their benefit" and in which such account West Realm acknowledges that it "has no ownership interest in, access to, or control over." BSA at pg. 9, ¶ 7(o)(iv). The FBO Account has a current balance of approximately $6.6 million in fiat currency.

10. West Realm also established a reserve account with Bank (the "Reserve Account"), being a non-interest-bearing demand deposit account to fund its obligations to Bank. BSA at pg. 46. West Realm further granted a first priority security interest in the Reserve Account and other accounts it maintained at Bank and agreed that Bank has control of the accounts for purposes of Uniform Commercial Code, Article 9-314. BSA at pg. 15. Currently, the Reserve Accounts holds approximately $5.0 million which secures West Realm's obligations under its agreement with Bank including, without limitation, shortfalls occurring in the Settlement Account as well as costs and expenses (including, but not limited to, attorneys' fees) related to West Realm's obligations under the agreement with Bank.

**Argument**

**A. Fiat Currency Attributable to the FBO Account Is Not Property of the Debtors' Estates.**

11. Section 541 of the Bankruptcy Code generally provides that all property in which a debtor has a legal or equitable interest, including any interest in property that a debtor acquires

postpetition, becomes property of the estate upon the commencement of a chapter 11 case. 11 U.S.C. § 541(a)(1), (a)(7). Importantly, section 541 of the Bankruptcy Code does not by itself create new legal or equitable interests in property; instead, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54–55 (1979) (noting that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). Indeed, Congress was clear that section 541(a)(1) of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they existed at the commencement of the case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367–68 (1977); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (holding that the "rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less"); *Matter of Triangle Lab'ys, Inc.*, 663 F.2d 463, 468 (3d Cir. 1981) (quoting *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966) ("(t)he trustee succeeds only to such rights as the bankrupt possessed")). Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under section 541 and the debtor is prohibited from distributing such property to its creditors. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962) ("The Bankruptcy Act simply does not authorize a [debtor] to distribute other people's property among a bankrupt's creditors . . . [S]uch property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.").

12.    Courts also have interpreted section 541(d) to "expressly" provide that "property in which a debtor holds only bare legal title is not property of the estate." *Golden v. Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *see also In re S.W. Bach & Co.*, 435 B.R. 866, 878 (Bankr. S.D.N.Y. 2010) (holding that property held in trust, escrow, or as part

5

of bailment is not property of the estate."). When a debtor holds legal title to but does not have equitable interest in certain property, the debtor must turn such property over to the holders with such equitable interest in the property. *See MCZ, Inc. v. Andrus Res., Inc.* (*In re MCZ, Inc.*), 82 B.R. 40, 42 (Bankr. S.D. Tex. 1987) ("[w]here Debtor merely holds bare legal title to property as agent or bailee for another, Debtor's bare legal title is of no value to the estate, and Debtor should convey the property to its rightful owner." (citations omitted)). A debtor who holds proceeds attributable to property owned by another holds only bare legal title to such property, and thus must turnover such proceeds to the interest holder of such property. *See, e.g., In re Columbia Pac. Mortg., Inc.*, 20 B.R. 259, 262–64 (Bankr. W.D. Wash. 1981) (awarding holder of participation ownership interest proceeds of a property sale because holder was beneficial owner, and debtor only held legal title to the proceeds).

13.  The Debtors do not have equitable title to the fiat currency held for the benefit of the Debtors' and Bank's customers in the FBO Account. The BSA explicitly provides that West Realm "has no ownership interest in, access to, or control over the FBA Account, any Deposit Account or any funds deposited or remitted to Bank in connection with an End User's use of Bank Services." BSA at pg 9., ¶7(o)(iv). The Debtors appear to acknowledge as much in that they have characterized the deposits as "Customer Custodial Funds" comprised of "fiat customer deposit balances." *See* Declaration of John J. Ray III (Doc. 24 at 6-7). The Supreme Court has held that property held by debtors for a third party (such as funds held on account of a resulting trust) is not property of the estate. *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (noting that "Congress plainly excluded property of others held by the debtor in trust at the time

of the filing of the petition" from the bankruptcy estate). Further, bankruptcy courts have held that property over which the debtor is merely exercising some "power . . . solely for the benefit of an entity other than the debtor" is not property of the estate. *In re S.W. Bach & Co.*, 435 B.R. at 878. Thus, any property held in the FBO Account is not property of the Debtors' estates. Accordingly, the Motion should be denied with respect to the FBO Account, and nothing in any interim or final order should be construed to imply that the Debtors have the right or ability to sweep funds from the FBO Account to any Post-Petition Cash Management System.

### B. Debtors Should Not Be Permitted to Sweep Funds in Reserve Account Absent a Showing of Adequate Protection of Bank's Interests.

14. Bank has possession and control of the Reserve Account and Debtors granted a first priority security interest in and to the Reserve Account and the funds therein and proceeds thereof. Bank's security interest in such account is perfected by control under section 9-314 of the Uniform Commercial Code. 6 Del. C. § 9-314(a).

15. To the extent that the Debtors' request to establish a Postpetition Cash Management System can be read as a request to permit them to sweep funds (or to direct Bank to transfer funds) from the Reserve Account, Bank is not adequately protected and the Debtors should not be permitted to evade the requirements of section 361 of the Bankruptcy Code by casting the relief they are seeking as merely establishing a cash management system. 11 U.S.C. § 361. Accordingly, the Motion should be denied. Alternatively, any interim or final order on the Motion should expressly exclude the accounts held by Bank from the relief requested in the Motion.

### Conclusion

Bank appreciates the enormity of the task the Debtors face; however, expediency should not yield to substance in this instance. The Debtors have no interest in the FBO Account and the End Users' fiat currency contained therein should not be subject to being swept into the Debtors'

Postpetition Cash Management System. Similarly, Bank's interest in the Reserve Account is not adequately protected if the Debtors are permitted to sweep it. For these reasons, the Motion should be denied. Alternatively, the Court should expressly exclude the accounts held by Bank from any interim or final order on the Motion.

Dated: November 22, 2022
Wilmington, Delaware

Martin A. Sosland
**BUTLER SNOW LLP**
2911 Turtle Creek Boulevard, Suite 1400
Dallas, TX  75219
Telephone:  (469) 680-5500
E-mail:  Martin.Sosland@butlersnow.com

—and—

James E. Bailey III
**BUTLER SNOW LLP**
6075 Poplar Avenue, Suite 500
Memphis, TN  38119
Telephone:  (901) 680-7200
E-mail: Jeb.Bailey@butlersnow.com

*/s/ Scott D. Cousins*
Scott D. Cousins (No. 3079)
Scott D. Jones (No. 6672)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, DE  19801
Telephone:    (302) 824-7081
E-mail:  scott.cousins@cousins-law.com
           scott.jones@cousins-law.com