# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date**: December 16, 2022 at 10:00 a.m. ET<br><br>**Objection Deadline**: December 7, 2022 at 4:00 p.m. ET |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS' ASSUMPTION OF, AND ENTRY INTO, THE CUSTODIAL SERVICES AGREEMENTS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 365(a) and 363(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing certain of the Debtors, in their sole discretion, to enter into (i) that certain Custodial Services Agreement, dated November 13, 2022 and effective retroactive to November 11, 2022, between Alameda Research LLC and BitGo Trust Company, Inc. (the "Custodian"), a copy of which is attached hereto as Exhibit B (as may be further amended, modified or supplemented from time to time, the "Alameda Custodial Services Agreement"),

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

{1368.002-W0069101.2}

(ii) that certain Custodial Services Agreement, dated November 13, 2022 and effective retroactive to November 11, 2022, between FTX Trading Ltd. and the Custodian, a copy of which is attached hereto as Exhibit C (as may be further amended, modified or supplemented from time to time, the "FTX Trading Custodial Services Agreement"), and (iii) that certain Custodial Services Agreement, dated November 13, 2022 and effective retroactive to November 11, 2022, between Clifton Bay Investments LLC and the Custodian, a copy of which is attached hereto as Exhibit D (as may be further amended, modified or supplemented from time to time, the "Clifton Bay Investments Custodial Services Agreement", together with the Alameda Custodial Services Agreement and the FTX Trading Custodial Services Agreement, collectively, the "Postpetition Custodial Services Agreements"), (b) authorizing Debtor West Realm Shires Inc., in its sole discretion, to assume, *nunc pro tunc* to the Petition Date, that certain Custodial Services Agreement, dated November 13, 2022 and effective retroactive to November 11, 2022, between West Realm Shires Inc. and the Custodian, a copy of which is attached hereto as Exhibit E (as may be further amended, modified or supplemented from time to time, the "Prepetition Custodial Services Agreement" and together with the Prepetition Custodial Services Agreements, collectively, the "Custodial Services Agreements") and (c) granting certain related relief. Certain facts supporting this Motion are set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray Declaration"). In further support of the Motion, the Debtors respectfully state as follows:

**Background**

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires

Inc. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. As of the Date hereof, no creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the Ray Declaration.

**Facts Specific to the Relief Requested**

**I.      Overview of the Custodial Services Agreements**

3. As described in detail in the Ray Declaration, the Debtors are in the process of locating and securing digital assets that are property of the estates. As part of their efforts to secure digital assets, the Debtors entered into the Custodial Services Agreements with the Custodian in order to obtain wallet and custody services related to the storage of certain digital assets in "cold wallets." Cold wallets are digital wallets stored on platforms not connected to the internet, and therefore protect the digital assets therein from hacking, unauthorized access and other vulnerabilities to which internet-connected systems are susceptible.

4. The Custodial Services Agreements were signed on November 13, 2022, effective retroactive to November 11, 2022. The Custodial Services Agreements provide that the Custodian will establish and maintain custody accounts on its books for the receipt, safekeeping and maintenance of digital assets, currencies, virtual currencies, tokens, coins or securities held for the Debtors (the "Digital Assets"). The Custodial Services Agreements each have a one-year term, with automatic one-year renewals unless one party notifies the other of its intention not to

renew at least 60 days prior to the expiration of the current term.  The Custodial Services Agreements provide that the Custodian will safekeep and not use the Digital Assets, and will segregate the Digital Assets from both (i) the property of the Custodian and (ii) the assets of other customers.  Additionally, the Custodian has implemented and will maintain a reasonable information security program designed to safeguard the Custodian's electronic systems and the Debtors' confidential information from unauthorized disclosure or misuse.

5.  In exchange for the provision of custodial services by the Custodian under the Custodial Services Agreements, the Debtors paid a one-time upfront fee of $5,000,000 to cover onboarding and implementation costs (the "Upfront Fee").  In addition, a monthly fee will be charged at the end of each month as a percentage of the U.S. dollar value of the Debtors' Digital Assets held in custodial wallets (the "Monthly Fee").  The Monthly Fee will equal an amount representing the average US dollar value for the Digital Assets held over the course of a month, multiplied by 1.5 basis points.  Initially, the average estimated monthly cost is expected to equal approximately $100,000, based on approximately $740,000,000 in value of Digital Assets that had been transferred to the Custodian's custody as of November 16, 2022.  As the Debtors anticipate moving additional Digital Assets to the Custodian's custody as the asset investigation and recovery process continues, the Monthly Fee due could increase as the value of the Digital Assets held in custodial wallets increases.

**Jurisdiction**

6.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409. The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

7.    By this Motion, the Debtors request entry of an Order, substantially in the form attached hereto as Exhibit A (a) authorizing Debtor West Realm Shires Inc., in its sole discretion, to assume the Prepetition Custodial Services Agreement *nunc pro tunc* to the Petition Date, (b) authorizing certain of the Debtors, in their sole discretion, to enter into the Postpetition Custodial Services Agreements, effective *nunc pro tunc* to November 11, 2022 and (c) granting certain related relief.

### Basis for Relief

**II.    Entry Into the Postpetition Custodial Services Agreements Is Within the Ordinary Course of Business.**

8.    The Debtors' decision to enter into the Postpetition Custodial Services Agreements is within the ordinary course of the operation of the Debtors' businesses and therefore authorized under Sections 1107 and 363(c) of the Bankruptcy Code.  However, the Debtors are seeking authorization to enter into the Postpetition Custodial Services Agreements because in negotiating the Custodial Services Agreements, the Custodian required express court approval as a condition of entering into and performing under the Custodial Services Agreements.  Accordingly, the Debtors primarily seek authorization to enter into the Postpetition

Custodial Services Agreements as a result of that condition, not because it is required under the Bankruptcy Code.

9. The Third Circuit has adopted a two-step inquiry for determining whether a transaction is in "the ordinary course of business." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). The court applies both a "horizontal dimension" test and a "vertical dimension" test. *Id*.

10. The horizontal inquiry considers whether, "from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. For example, 'raising a crop would not be in the ordinary course of business for a widget manufacturer because that is not a widget manufacturer's ordinary business.'" *Id*. at 953 (quoting *In re Waterfront Cos.*, 56 B.R. 31, 35 (Bankr.D.Minn.1985)).

11. The vertical inquiry analyzes the transaction(s) "from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id*. (citing *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr.S.D.N.Y.1986)). Here, "the touchstone of ordinariness is the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. The primary focus thus is on the debtor's pre-petition business practices and conduct, although a court must also consider the changing circumstances inherent in the hypothetical creditor's expectations." *Id*. at 953 (citations and modifications omitted).

12. The Debtors' businesses involve holding large amounts of digital assets, and it is a prudent operational decision to hold those assets in cold storage to provide additional security, in particular when they do not anticipate making transfers of such assets on a daily

basis. Within the Debtors' industry, engaging cold storage custodial services is a typical ordinary course practice, and mitigates risk with respect to the Digital Assets the Debtors hold. Accordingly, the Debtors believe that the entry into the Postpetition Custodial Services Agreements is within the ordinary course of business for the Debtors and authorized under Sections 1107 and 363(c) of the Bankruptcy Code.

### III. Entry into the Postpetition Custodial Services Agreements Is a Proper Exercise of the Debtors' Business Judgment.

13. To the extent entry into the Postpetition Custodial Services Agreement is not considered to be in the ordinary course of the Debtors' business, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Courts should authorize a debtor's request for relief under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. Courts within the Third Circuit have relied upon *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983), for the proposition that a debtor must provide a showing of "some articulated business justification . . . for using, selling, or leasing property outside of the ordinary course of business . . ." *See, e.g.*, *In re Olsen*, No. 14-11273, 2017 WL 3311218, at *7 (Bankr. D. N.J. July 20, 2017) (quoting *In re Lionel Corp.*, 722 F.2d at 1071); *In re Grand Prix Assocs. Inc.*, No. 09-16545 (DHS), 2009 WL 1850966, at *4 (Bankr. D. N.J. June 26, 2009) (citing *In re Lionel Corp.*, 722 F.2d at 1071); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (same). Generally, a Court should be deferential to the determinations of management, and where a debtor "articulates a reasonable basis for its business decisions . . . , courts will generally not entertain objections to the debtor's conduct." *See In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

14. The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Johns-Manville Corp.*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

15. The Debtors' use of estate property pursuant to the Postpetition Custodial Services Agreements is a valid exercise of business judgment and should be approved pursuant to Section 363(b) of the Bankruptcy Code. The Debtors' businesses involve holding large amounts of digital assets, and it is a prudent operational decision to hold those assets in cold storage to provide additional security. Entry into the Postpetition Custodial Services Agreements is critical to the Debtors' ongoing operations and the preservation and maximization of the Debtors' assets and estates. Cryptocurrency that is not in a "cold wallet" custodial account is at risk of hacking, unauthorized access or other potential losses. As noted in the Ray Declaration, the Debtors have already experienced unauthorized transfers of at least $372 million of cryptocurrency on the Petition Date prior to the movement of digital assets into cold storage. The Custodian therefore provides essential security for these assets while the Debtors transition into chapter 11 and marshal these assets for the benefit of their stakeholders. Accordingly, the Debtors, in their business judgment, believe that entering into the Postpetition Custodial Services Agreements is in the best interests of their estates and creditors.

### IV. Assumption of the Prepetition Custodial Services Agreement Is a Proper Exercise of the Debtors' Business Judgment.

16. Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. 365(a).  The Bankruptcy Code does not define the term "executory contract," but the Third Circuit has characterized an executory contract as one "under which the obligation of both the bankrupt and the other party . . . are so far unperformed that the failure of either to complete performance would constitute material breach excusing the performance of the other." *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (quoting Countryman, *Executory Contracts in Bankruptcy, Part 1,* 57 Minn. L. Rev. 439, 460 (1973)).  In short, executory contracts are those contracts "on which performance is due to some extent on both sides." *N.L.R.B.* v. *Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6 (1984) (quoting H.R. Rep. No. 95-595, p. 347 (1977)).  The Prepetition Custodial Services Agreement is an executory contract because both the Debtor West Realm Shires Inc. and the Custodian continue to have performance obligations under the Prepetition Custodial Services Agreement.

17. The assumption or rejection of an executory contract or unexpired lease is subject to review under the business judgment standard.  If a debtor has exercised "reasonable" business judgment, the court should approve the proposed assumption or rejection. *See*, *e.g.*, *NLRB* v. *Bildisco and Bildisco*, 465 U.S. at 523 (1984); *Group of Inst. Investors* v. *Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court").  Debtors are afforded significant discretion when requesting to assume or reject an executory contract. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997)

("[A] court will ordinarily defer to the business judgment of the debtor's management"); *In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (finding that a court should not interfere with a debtor's decision to assume or reject "absent a showing of bad faith or abuse of business discretion").

18. The Debtors respectfully request that that they be authorized to assume the Prepetition Custodial Services Agreement *nunc pro tunc* to the Petition Date. The Custodial Services Agreements are critical to the Debtors' ongoing operations and the preservation and maximization of the Debtors' assets and estates. The Debtors are permitted to assume prepetition executory contracts under Section 365(a) of the Bankruptcy Code, which section is subject to review under the business judgment standard articulated above. The same facts regarding entry into the Postpetition Custodial Services Agreements noted above apply to the assumption of the Prepetition Custodial Services Agreement. Accordingly, the Debtors, in their business judgment, believe that assumption of the Prepetition Custodial Services Agreement *nunc pro tunc* to the Petition Date is in the best interests of their estates and creditors.

### Waiver of Bankruptcy Rule 6004(h)

19. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

**Notice**

20. No creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the Custodian; (g) the parties identified on the Debtors' consolidated list of 50 largest unsecured creditors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**No Prior Request**

21. No prior motion for the relief requested herein has been made to this or any other Court.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter an Order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: November 23, 2022<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>       brown@lrclaw.com<br>       pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>       bromleyj@sullcrom.com<br>       gluecksteinb@sullcrom.com<br>       kranzleya@sullcrom.com<br><br>*Proposed Counsel for the Debtors*<br>*and Debtors-in-Possession* |