IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 22-11068 (JTD) |
| FTX TRADING LTD., *et al.*, | ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | Hearing: Dec. 16, 2022, 10:00 a.m. |

**EXPEDITED MOTION OF BLOOMBERG L.P., DOW JONES & COMPANY, INC., THE NEW YORK TIMES COMPANY AND THE FINANCIAL TIMES LTD. TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE MOTION OF DEBTORS FOR ENTRY OF A FINAL ORDER AUTHORIZING THE DEBTORS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS**

Bloomberg L.P., Dow Jones & Company, Inc., The New York Times Company, and The Financial Times Ltd. (collectively, the "Media Intervenors") hereby move to intervene for the limited purpose of objecting to Debtors' Motion for Entry of a Final Order Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals.

**BACKGROUND**

1.  When Debtors filed their petition for relief under Chapter 11, it sent shockwaves throughout the financial community in general, and the crypto investing community in particular. FTX's new CEO John Ray told this Court that "never in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of

inexperienced, unsophisticated and potentially compromised individuals, this situation is unprecedented." Declaration Of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings," D.I. 24 (November 17, 2022).

2. The bankruptcy filing is of significant and legitimate public concern given FTX's leading role in cryptocurrency, the scale of potential mismanagement and wrongdoing, the reputational and financial impact of its collapse on the cryptocurrency field,[1] the scale of creditors' losses, and the related, collateral financial impact on third parties and markets.[2] Records in these proceedings indicate that potentially more than a million creditors will be affected. D.I. 45 ¶7 ("the Debtors have hundreds of thousands if not over one

---

[1] *E.g.,* Allison Morrow, "*BlockFi files for bankruptcy as FTX contagion grips crypto markets*," https://www.cnn.com/2022/11/28/business/blockfi-bankruptcy-ftx-fallout/index.html (Nov. 28, 2022); Laura Kelly, "*Here's the Latest on the FTX Collapse*," https://www.nytimes.com/article/ftx-bankruptcy-crypto-collapse.html (Nov. 28, 2022); Vildana Hajric, "*Crypto Markets Buckle as FTX Bankruptcy Spurs Search for Casualties*," https://www.bloomberg.com/news/articles/2022-11-11/crypto-markets-buckle-as-ftx-filing-spurs-search-for-casualties?leadSource=uverify%20wall (Nov. 11, 2022); Jonathan Randles & Soma Biswas, "*DOJ Watchdog Calls for Independent FTX Probe in Bankruptcy*," https://www.wsj.com/articles/doj-watchdog-calls-for-independent-ftx-probe-in-bankruptcy-11669940711 (Dec. 1, 2022).

[2] "Robinhood…has seen its stock price take a hit; FTX took a 7.6% stake in the platform earlier this year. Elsewhere, high-profile investors like Sequoia have written down their investments in FTX — worth hundreds of millions of dollars — to zero. The wild gyrations of bitcoin and other digital coins may be a result of forced selling, as FTX and others have had to raise funds to cover withdrawals and margin calls and raise capital." PYMNTS, "*BitPay CEO Says Knock-On Effects of FTX's Collapse Not Yet Clear*," https://www.pymnts.com/cryptocurrency/2022/bitpay-ceo-knock-on-effects-of-ftxs-collapse-not-yet-clear/ (Nov. 14, 2022).

million creditors and other parties-in-interest"). The Media Intervenors and other news organizations have been closely reporting on these proceedings and issues.[3]

3. Debtors have been accused of lack of transparency in their business. That mindset appears to have carried over to this bankruptcy, as they have taken the extraordinary step of seeking to keep under seal their list of creditors, a

---

[3] *E.g.*, Joshua Oliver, Scott Chipolina and Nikou Asgari, "*Sam Bankman-Fried's $32bn FTX crypto empire files for bankruptcy*," https://www.ft.com/content/afe56c4e-2d68-457e-bbb2-476752d5f02e (Nov. 11, 2022); Alun Long and Hannah Lang, "*Crypto exchange FTX files for bankruptcy as wunderkind CEO exits*," https://www.reuters.com/business/ftx-start-us-bankruptcy-proceedings-ceo-exit-2022-11-11/ (Nov. 11, 2022); Jeremy Hill, "*Bankman-Fried Resigns From FTX, Puts Empire in Bankruptcy*," https://www.bloomberg.com/news/articles/2022-11-11/ftx-com-goes-bankrupt-in-stunning-reversal-for-crypto-exchange?utm_campaign=socialflow-organic&utm_source=twitter&utm_medium=social&utm_content=crypto&leadSource=uverify%20wall (Nov. 11, 2022); David Yaffe-Bellany, "*Embattled Crypto Exchange FTX Files for Bankruptcy*," https://www.nytimes.com/2022/11/11/business/ftx-bankruptcy.html (Nov. 11, 2012); Rachel Martin and David Gura, "Bankman-Fried Resigns From FTX, Puts Empire in Bankruptcy "Cryptocurrency exchange FTX files for bankruptcy," https://www.npr.org/2022/11/11/1135984033/once-valued-at-more-than-30-billion-crypto-currency-ftx-is-near-bankruptcy (Nov. 11, 2022); Jonathan Ponciano, "*FTX Files For Bankruptcy—Former Billionaire Sam Bankman-Fried Resigns As CEO*," https://www.forbes.com/sites/jonathanponciano/2022/11/11/ftx-files-for-bankruptcy-former-billionaire-sam-bankman-fried-resigns-as-ceo/?sh=7c60db40231d (Nov. 11, 2022); Rob Wile, "*Crypto giant FTX to file for bankruptcy, CEO Sam Bankman-Fried steps down*," https://www.nbcnews.com/tech/crypto/crypto-giant-ftx-file-bankruptcy-ceo-sam-bankman-fried-steps-rcna56749 (Nov. 11, 2022) Caitlin Ostroff, Vicky Ge Huang and Alexander Gladstone, "*FTX Files for Bankruptcy, CEO Sam Bankman-Fried Resigns*," https://www.wsj.com/articles/ftx-files-for-chapter-11-bankruptcy-11668176869?st=h0wt7ph3igjxfqe&reflink=desktopwebshare_permalink (Nov. 11, 2022).

document which, with very few exceptions, has historically been open to the public. Intervenors object to the continued sealing and redaction of information that historically has been quintessentially public in nature.

## MOTION TO INTERVENE AND TO UNSEAL JUDICIAL RECORDS

4. The Media Intervenors seek to intervene in these proceedings pursuant to Federal Rule of Bankruptcy Procedure 2018(a) ("Rule 2018(a)") for the limited purpose of vindicating the public's right of access to the sealed and redacted judicial documents filed with the Court in this matter. The records should be unsealed and unredacted for the reasons set forth below.

5. Bloomberg LP is the owner and operator of Bloomberg News. Bloomberg's newsroom of more than 2,700 journalists and analysts delivers thousands of stories a day, producing content that is featured across multiple platforms, including digital, TV, radio, video, print and live events.

6. Dow Jones & Company is a leading provider of news and business information through *The Wall Street Journal* and other publications, including *WSJ Pro Bankruptcy* and Dow Jones Newswires. *The Wall Street Journal* engages readers across print, digital, mobile, social, podcast and video. Building on its heritage as the preeminent source of global business and financial news, the *Journal* includes coverage of U.S. & world news, politics, arts, culture, lifestyle, sports, and health. Dow Jones is an indirect subsidiary of News Corporation, a publicly held company. Dow Jones's headquarters are located at 1211 Avenue of the Americas, New York, NY 10036.

7. The New York Times, Inc. is the publisher of The New York Times and operates the news website nytimes.com.

8. The Financial Times Limited, incorporated in England, is one of the world's leading business news organizations, recognized internationally for the authority, integrity and accuracy of its publications which include the Financial Times newspaper and FT.com (the "FT"). It is part of the FT Group which, as part of Nikkei Inc., provides a broad range of business information, news and services for the global business community including FT Specialist and a number of services and joint ventures. The FT has a paying readership of 1.2 million, more than one million of which are digital subscribers.

9. Rule 2018(a) permits "any interested entity" to intervene in a bankruptcy matter, either generally or "with respect to any specified matter." Fed. R. Bankr. Proc. 2018(a). Courts, including this Court, have routinely recognized the right of the media (and members of the public generally) to intervene to challenge sealing orders. *E.g., Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3d Cir. 1994); *In re Alterra Healthcare Corp.,* 353 B.R. 66, 70 (D. Del. 2006)*; In re Peregrine Systems, Inc.*, 311 B.R. 679, 687 (D. Del. July 12, 2004*); In re Symington*, 209 B.R. 678, 690 (Bankr. D.Md. 1997); *In re Thow*, 392 B.R. 860, 864 (Bankr. W.D. Wash. 2007).

10. The news media acts as the eyes and ears of the public, informing the public of issues of the day. *Houchins v. KQED, Inc.*, 438 U.S. 1, 8 (1978). This valuable social function is hampered by sealing of judicial records. As

members of the public, the Media Intervenors suffer an identical injury, and so intervention is proper.

11. For these reasons, the Court should grant Media Intervenors' request to intervene in these proceedings under Rule 2018(a) to assert the public's right of access to the sealed judicial documents.

12. There is a strong presumption and public policy in favor of public access to court records. *See, e.g., In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001); *Mosaic Techs., Inc. v. LSI Corp.*, 878 F.Supp.2d 503, 507 (D. Del. 2012); *In re Continental Airlines,* 150 B.R. 334, (D. Del. 1993). The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994) (stating that public access "helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public agencies," citations omitted).

13. The "policy of open inspection" in Section 107 "evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *Id. Accord In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984) ("This policy of open inspection, established in the Bankruptcy Code itself, is fundamental to the operating of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised").

## **DEBTORS HAVE FAILED TO SATISFY THEIR BURDEN<br>FOR SEALING RECORDS**

14. In seeking to seal documents, Debtors faces a heavy burden of proof. "Evidence -- not just argument -- is required to support the extraordinary remedy of sealing." *In re Motors Liquidation Company*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016). *Accord Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *In re Wells Fargo Bank, N.A.*, 2019 WL 642850 at *2 (Bankr. W.D. Pa. Feb. 14, 2019) ("The moving party has the burden of *establishing through evidence* that the information should be protected," italics in original).

15. Debtors claim that their "customer list, and related customer data, is an important and valuable asset of the Debtors and the Debtors maintain their customer list in strict confidence." (Motion ¶13). They also claim that "Public dissemination of the Debtors' customer list could give the Debtors' competitors an unfair advantage to contact and poach those customers and would interfere with the Debtors' ability to sell their assets and maximize value for their estates at the appropriate time." (*Id.* ¶13).

16. A vague statement that disclosure "could" result in giving competitors an unfair advantage does not satisfy the debtors' heavy burden. *Reed v. NBTY, Inc.*, 2014 WL 12284044 at *2 n.3 (C.D. Cal. Nov. 18, 2014) ("The vague contention that competitors could rely on these publicly available documents to support and launch a competing product is insufficient"); *In re Mata*, 2019 WL 10377718 at *3 (Bankr. C.D. Cal. Sept. 20, 2019) ("Defendants

repeated assertions that "[p]ublic disclosure of this private commercial information could negatively impact Defendants' competitive standing in the student loan industry" do not appear to satisfy the evidentiary burden imposed on Defendants…").

17. In any event, there is no evidence to support these conclusory statements. *See In re Document Technologies Litigation* 282 F.Supp.3d 743, 747 (S.D.N.Y. 2017) (proponent of sealing has burden of establishing "through competent evidence," that document reveals trade secrets or other confidential business information). An unsworn statement in a motion is not evidence. *In re Valsartan N-Nitrosodimethylamine (NDMA), Losartan, and Irbesartan Products Liability Litigation*, 2020 WL 955059 at *2 (D. N.J. Feb. 27, 2020); *In re Ladevereaux*, 2006 WL 549239 at *3 n.2 (Bankr. D. Mass. Mar. 6, 2006) ("Counsel's statements in this motion are not evidence").

## REDACTING THE NAMES OF CREDITORS IS INAPPROPRIATE

18. Initially, the Media Intervenors do not object to sealing the addresses and contact information of the creditors. Nonetheless, absent evidence of a genuine threat to the safety of the creditors, such redaction should not become the norm.

19. While redaction of contact information arguably may be justified in some circumstances to prevent identity theft and harassment, releasing the names of the creditors neither exposes the creditors to risk of identity theft nor to personal danger. It also does not create undue risk of unlawful injury. *In re*

8

*Celsius Network LLC*, 644 B.R. 276, 291-95 (Bankr. S.D.N.Y. 2022) (authorizing redaction of contact information of customers of a cryptocurrency business but refusing to redact names of those customers).

20.  Debtors' arguments about the European General Data Protection Regulation are unavailing. Debtors provide no legal authority explicitly dictating why the GDPR should apply to the bankruptcy cases of debtors filed in the United States, or specifically, why the foreign laws would take precedence in a situation where United States law requires the disclosure of the information. Section 107(c) provides the Court with discretion to protect an individual with respect to any identifying information to the extent the Court finds that disclosure of such information would create an undue risk of unlawful injury to the individual. 11 U.S.C. § 107(c). However, Debtors have failed to show that public disclosure of foreign citizens personal data in violation of the GDPR would constitute an unlawful injury to those individuals because the financial penalties (injury) would be imposed against Debtors under those laws. The Court should not treat foreign citizens differently than the United States citizens implicated in this case. *In re Celsius Network LLC,* 644 B.R. 276 (Bankr. S.D.N.Y. 2022). *See also In In re Blackwell,* 263 B.R. 505, 510 (W.D. Tex. 2000) ("the parties' expectations under the laws of various other jurisdictions is not at issue here. InverWorld maintains its offices in the United States. It was at least foreseeable that the laws of this country could be applied to at least some disputes these parties could have contemplated at the time they made their investments").

21. Redacting the names of the creditors will have far-reaching impact as the case progresses. Will any creditor who wants to file a motion or an adversary proceeding be entitled to do so anonymously? Would preference actions redact the names of defendants who are creditors? This will turn the entire proceeding into a farce, with only the Debtor's name publicly spoken. This would be contrary to Congress's "strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *Video Software Dealers Ass'n*, 21 F.3d at 26 (quoted in *In re Alterra Healthcare Corp.*, 353 B.R. at 75).

22. The Court has indicated that proofs of claim will not be submitted anonymously. If disclosure it inevitable, there is no point to keeping the names anonymous now.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Media Intervenors respectfully request that the Court deny Debtors' Motion for Entry of a Final Order Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals.

Alternatively, if the Court finds that one of the limited exceptions to public access applies, the Court should apply it narrowly, and that at least the names be public.

Respectfully submitted,

/s/ David L. Finger
David L. Finger (ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE  19801
(302) 573-2525
Attorney for Bloomberg, L.P., Dow Jones & Company, The New York Times Inc. and the Financial Times, Ltd.

Dated:   December 9, 2022