## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date:  December 16, 2022, at 10:00 a.m.**<br><br>**Objection Deadline:  December 9, 2022, extended for the U.S. Trustee to December 14, 2022 at 12:00 p.m.**<br><br>Re:  D.I. 45 |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO MAINTAIN A CONSOLIDATED LIST OF CREDITORS IN LIEU OF SUBMITTING A SEPARATE MATRIX FOR EACH DEBTOR, (II) AUTHORIZING THE DEBTORS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS AND (III) GRANTING CERTAIN RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* (the "Motion") [D.I. 45], and respectfully states:

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

# I.    PRELIMINARY STATEMENT

1.      The bankruptcy process operates, like the rest of the court system, on the bedrock principle of American jurisprudence that the public has a right of access to judicial records. Only under limited circumstances may a federal court restrict or deny that access.  Here, the Debtors seek authority for a wholesale redaction from "any paper filed or to be filed with the Court or made publicly available in these chapter 11 Cases," of the following information: (a) the names, addresses and email addresses of all customers (who are also creditors of the Debtors), whether such customers are individuals, or legal entities, (b) the names, addresses and email addresses of all non-customer individual creditors or equity holders who are citizens of the United Kingdom ("UK") or member nations of the European Union ("EU"), and are covered by the EU or UK General Data Protection Regulation (collectively the "GDPR"), and (c) the addresses and email addresses of all other creditors or equity holders who are individuals, regardless of citizenship.[2]   Mot. ¶ 12; Proposed Final Order ¶¶ 4, 5 [D.I. 45-2].  The documents that would be subject to such redactions include (but are not limited to) the Debtors' Creditor Matrix,[3] Consolidated Top 50 Creditor List, Schedules and Statements, the claims register, proof of claims and affidavits of service.

2.      The U.S. Trustee does not object to the filing under seal of the addresses or e-mail addresses of customers or other creditors who are individuals.  The U.S. Trustee does, however, object to the sealing of the *names* of such customers and creditors, and the sealing of the names, addresses and other contact information for customers or creditors who are not individuals.

---

[2]    The U.S. Trustee does not object to that portion of the Motion that seeks authority to maintain a consolidated list of creditors, or for approval of certain procedures to serve the notice of the commencement of the cases on creditors.

[3]    Any capitalized terms not defined herein shall have the definition set forth in the Motion.

3.       Disclosure is a basic premise of bankruptcy law.  Indeed, it is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.  The Bankruptcy Code contains very limited and specific exceptions to the general rule that bankruptcy proceedings should be open and transparent.  The movant must demonstrate extraordinary circumstances and a compelling need to obtain protection to justify any such request.  This is especially true as to information required to be filed by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, such as the Creditor Matrix, Schedules and Statements.  Here, with nothing more than vague statements supporting the request, the Debtors seek extremely broad authority to conduct a significant portion of the bankruptcy cases under seal. If the Motion is granted, the ability of interested parties to evaluate the Debtors and their bankruptcy process and to communicate and find each other will be significantly curtailed.

4.       In addition to creating unfavorable precedent in this and other crypto industry chapter 11 cases, and in any other bankruptcy case in which a debtor has creditors who are customers, allowing the Debtors to file incomplete creditor lists and Schedules and Statements is a slippery slope.  Do the Debtors intend to conduct all of their claim objections under seal?  Will certain creditors' treatment in a plan be redacted?  Will objections to the disclosure statement and confirmation also be sealed?  Will the hearings before the Court in these cases have to be repeatedly closed?  It is well settled that, as a matter of promoting the integrity of the judicial system, bankruptcy proceedings must be open and transparent.[4]  Accordingly, the Debtors' request should be denied.

---

[4]  Although more than a month has passed since the bankruptcy filings, the Debtors have yet to file their Creditor Matrix, even though such creditor matrix is required under the Local Rules to be filed with the petition.  *See* Del. Bankr. L.R. 1007-2 (a).

5.      As to the names of those customers and other creditors who are individual citizens of the United Kingdom or of member countries of the European Union, the Debtors assert only cursorily that the GDPR constrains them from disclosing information regarding such creditors, at the risk of incurring penalties.  The Motion fails to establish that a foreign statute supplants the disclosure requirements of the Bankruptcy Code and fails to establish any entitlement to relief.  Also not addressed in the Motion is that the GDPR contains a "safe harbor" permitting the Debtors to disclose such information in the Debtors' exercise of their rights and duties in these bankruptcy cases.

6.      In another cryptocurrency matter, the United States Bankruptcy Court for the Southern District of New York recently ruled that the debtors could not redact the names of customers and creditors who were individuals, regardless of the country of their citizenship, but could redact their addresses and email addresses under 107(c) of the Code.  *See In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y 2022).  As to customers and creditors who were not individuals, the court did not authorize the redaction of any information.  The U.S. Trustee recognizes that this Court ruled differently in *In re Cred Inc., et al*. (20-12836 (JTD)).  However, the U.S. Trustee requests that the Court reexamine these issues and limit any relief granted to that authorized in *Celsius*.

7.      Finally, it appears the Debtors are seeking to avoid having to file unredacted versions under seal of any documents the Court permits to be redacted in the publicly viewable version. Instead, the Debtors propose providing unredacted copies to the Court only "upon request."  Proposed Final Order ¶ 7.  Such proposal is contrary to the procedures for sealing set forth in the Local Rules of this Court.  Del. Bankr. L.R. 9018-1(d).

8.      For these reasons, set forth in more detail below, the Debtors' Motion should be denied as it concerns redaction of information, except as to allow the redaction from public filings of the addresses and e-mail addresses – but not names – of individuals who are customers or other creditors of the Debtors, with unredacted versions of such documents directed to be filed under seal with the Court.

## II.      JURISDICTION, VENUE AND STANDING

4.      Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

5.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## III.      FACTUAL BACKGROUND

**General Case Background**

7.      On November 11, 2022, the Debtors filed voluntary chapter 11 petitions in this Court.

8.      The Debtors continue to operate their business(es) as debtors in possession

pursuant to 11 U.S.C. §§ 1107 and 1108.

9.      The U.S. Trustee has solicited interest in serving on an official committee of

unsecured creditors.  As of the date this Objection was filed, the U.S. Trustee had not formed any

official committees.

10.     On December 1, 2022, the U.S. Trustee filed a *Motion for Entry of an Order*

*Directing the Appointment of an Examiner*.  D.I. 176.

**The Motion and Supporting Declaration**

11.     On November 11, 2022, the Debtors filed the Motion, seeking both interim and

final relief.

12.     On November 20, 2022, the Debtors filed the *Declaration of Edgar W. Mosley, II,*

*in Support of Chapter 11 Petitions and First Day Pleadings* (the "Mosley Declaration") [D.I.

57].  In the Mosley Declaration, Mr. Mosely stated that he is a Managing Director of Alvarez &

Marsal, North America LLC, a restructuring advisory services firm, which was retained by the

Debtors two days prior to the bankruptcy filing to assist in the process of preparing for chapter

11 filing.  Mosely Decl. ¶¶ 1, 5.  A portion of his declaration addressed the relief sought in the

Motion.  In particular, Mr. Mosley stated the following in support of that portion of the Motion

that seeks to redact information in Court filings relating to customers and creditors:

> It is my view that the Debtors' estates and their customers would benefit from
> the redaction of certain confidential customer information. The Debtors
> operate a global platform catering to customers in various forms of
> cryptocurrency. All of the Debtors' customers are creditors. Thus, the
> Debtors' customer list, and related customer data, is a valuable asset to the
> Debtors' estate. Public dissemination of the Debtors' customer list could give
> the Debtors' competitors an unfair advantage to contact and poach these
> customers, and I believe it would interfere with the Debtors' ability to sell
> their assets and maximize value for their estates at the appropriate time.

> Likewise, I believe that it is in the Debtors' and their estates' best interest to
> redact certain personal information of individuals. It is my understanding that

6

the Debtors may be subject to the GDPR, which restricts disclosure of certain personal information. It is also my understanding that, notwithstanding the Court's authorization for the Debtors to redact personal information of customers and individuals, the Debtors will instruct Kroll to serve these individuals on their personal addresses or e-mail addresses, as applicable. For these reasons, the relief requested in the Creditor Matrix Motion is in the best interest of the Debtors, the creditors, and all interested parties.

*See id.* ¶¶ 18-19.[5]

13.    Mr. Mosely's declaration is the only evidence the Debtors have introduced to date in support of the Motion.  The statements quoted above are the only statements set forth in the Mosely Declaration concerning redaction of information in Court filings relating to customers and other creditors.

14.    Neither the Motion nor the Mosely Declaration indicate the number of individuals who are customers or creditors of the Debtors and who are citizens of EU member countries or the UK.  Nor do the Debtors explain how they will determine which of their customers are citizens of EU or the UK, given that the only address the Debtors may have for certain of their customers are email addresses, and even for those customers who provided mailing addresses, a mailing address does not establish citizenship.

15.    A hearing on the interim relief sought in the Motion took place at the "first day" hearing on November 22, 2022.  On November 23, 2022, the Court entered an order granting interim relief on the Motion (the "Interim Order") and set the hearing to consider approval of final relief for December 16, 2022.  D.I. 157.

16.    The Interim Order required the Debtors to file an unredacted creditor matrix under

---

[5]    It is unclear whether the statements quoted above are based on Mr. Mosley's personal knowledge, or instead are based on information Mr. Mosely "obtained from the Debtors and their advisors, including the A&M team working under [his] supervision, [his] review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives" and his "opinions based upon [his] experience and knowledge." *See id.* ¶ 6.

seal with the Court.  Interim Order ¶ 7.[6]  As of the filing of this Objection, the lead case docket

does not reflect the filing of any Creditor Matrix, whether under seal or in a redacted format,

even though a creditor matrix is required by Local Rule 1007-2(a) to be filed by the debtors with

the petition.

**The Debtors' Policies for Sharing Customer Information**

17.    The Debtors' Privacy Policy for the FTX Cryptocurrency Derivatives Exchange

(the "Privacy Policy"), a copy of which is attached as **Exhibit A** hereto, includes the following

regarding the disclosure of customer information to third parties:

> DISCLOSING YOUR INFORMATION TO THIRD PARTIES
>
> We may share your personal information with the following categories of third parties:
>
> **Service Providers.** We may share any personal information we collect about you with our third-party service providers. The categories of service providers (processors) to whom we entrust personal information include: IT and related services; banks and trust companies; information and services; payment processors; customer service providers; and vendors to support the provision of the Services.
>
> . . . .
>
> **Business Partners.** *We may provide personal information to business partners* with whom we jointly offer products or services. In such cases, our business partner's name will appear along with ours.
>
> . . . .
>
> **Affiliates.** We may share personal information with our *affiliated companies*.
>
> **Advertising Partners.** Through our Services, *we may allow third party advertising partners to set Technologies and other tracking tools to collect information regarding your activities and your device (e.g., your IP address, mobile identifiers, page(s) visited, location, time of day). We may also combine and share such information and other information (such as demographic information and past purchase history) with third party advertising partners.* These advertising partners may use this information (and similar information collected from other websites) for

---

[6]    This provision was included in the proposed interim order at the request of counsel to the U.S. Trustee.

purposes of delivering targeted advertisements to you when you visit third party websites within their networks. This practice is commonly referred to as "interest-based advertising" or "online behavioral advertising. ***We may allow access to other data collected by the Services to share information that may be useful, relevant, valuable or otherwise of interest to you***. ***If you prefer not to share your personal information with third party advertising partners, you may follow the instructions below.***

**Disclosures to Protect Us or Others**. ***We may access, preserve, and disclose any information we store associated with you to external parties if we, in good faith, believe doing so is required or appropriate to: comply with*** law enforcement or national security requests and ***legal process,*** such as a court order or subpoena; protect your, our or others' rights, property, or safety; enforce our policies or contracts; collect amounts owed to us; or assist with an investigation or prosecution of suspected or actual illegal activity.

**Disclosure in the Event of Merger, Sale, or Other Asset Transfers.** If we are involved in a merger, acquisition, financing due diligence, ***reorganization, bankruptcy***, receivership, purchase or sale of assets, or transition of service to another provider, then your information may be sold or transferred as part of such a transaction, as permitted by law and/or contract.

Privacy Policy at 8-9 (emphasis added).

18.     The Privacy Policy further provides: "[w]e store the personal information we receive as described in this Privacy Policy for as long as you use our Services or as necessary to fulfill the purpose(s) for which it was collected, provide our Services, resolve disputes, establish legal defenses, conduct audits, pursue legitimate business purposes, enforce our agreements, and ***comply with applicable laws***. *Id.* at 13 (emphasis added).

## IV.     <u>LEGAL FRAMEWORK</u>

### A.  **Debtors in Bankruptcy Are Required to File** **<u>Certain Information Regarding Their Creditors</u>**

19.     The Bankruptcy Code states that the debtor "*shall* . . . file, unless the court orders otherwise - a schedule of assets and liabilities," and "statement of the debtor's financial affairs, " among other information.  11 U.S.C. § 521(a)(1)(B)(i)(emphasis added).  Rule 1007-1(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") provides that a debtor, other

than one under chapter 9, shall file schedules of assets and liabilities, of current income an

expenditures, of executory contracts and unexpired leases, and a statement of financial affairs,

among other documents.

20.     Bankruptcy Rule 1007(a)(1) requires that a debtor in a voluntary case "file with

the petition a list containing the name and address of each entity included or to be included on

Schedules D, E/F, G and H as prescribed by the Official Forms."

21.     Rule 1007-2(a) of the Local Rules of this Court provide that "[i]n all voluntary

cases, the debtor shall file with the petition a list containing the name and complete address of

each creditor in such format as directed by the Clerk's Office Procedures."  Del. Bankr. L.R.

1007-2(a) (emphasis added).

22.     Debtors in chapter 11 and chapter 9 cases are also required to file Official Form

201, setting forth a list of creditors with the largest unsecured claims that are not insiders. That

form requires the provision of the following information for such creditors:  name, complete

mailing address, the name, telephone number and email address of a creditor contact, and the

nature and amount of claim.

**B.  <u>The Right of Public Access to Judicial Records</u>**

23.     In American jurisprudence, there is a long-standing, common law right of public

access to court records.  *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 591 (1978) ([i]t is

clear that the courts of this country recognize a general right to inspect and copy public records

and documents, including judicial records and documents.")  The public's right of access

envisions "a pervasive common law right to inspect and copy public records and documents,

including judicial records and documents."  *In re Cendant Corp.*, 260 F.3d 183, 194 (3rd Cir.

2001) (citations omitted).

24.     The "access to civil proceedings and records promotes public respect for the judicial process." *Id.* (citations omitted). Such access is "rooted in the public's First Amendment right to know about the administration of justice." *Motors Liquidation Co. Avoidance Action Trust v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 41 (Bankr S.D.N.Y. 2016). This right is "firmly entrenched and well supported by policy and practical considerations." *Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21 F.3d 24, 26 (2d Cir. 1994).

25.     The right of public access has given rise to "a strong presumption and public policy in favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011). This presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . . [P]ublic monitoring is an essential feature of democratic control." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). The Second Circuit has issued this pointed guidance:

> There must be a strong presumption against sealing any document that is filed with the court. Our courts do not operate in secrecy. Except on rare occasions and for compelling reasons, everything that courts do is subject to public scrutiny. To hide from the public entire proceedings, or even particular documents or testimony forming a basis for judicial action that may directly and significantly affect public interests, would be contrary to the premises underling a free, democratic society.

*City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991).

### C.  The Right to Public Access Is Codified in the Bankruptcy Code

26.     In our bankruptcy system, it is widely acknowledged that the governmental interest is safeguarding public access to judicial records is "of special importance . . . , as unrestricted access to judicial records fosters confidence among creditors regarding fairness in the bankruptcy system." *Motors Liquidation*, 561 B.R. at 41, *quoting Gitto v. Worcester*

*Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1, 7 (1st Cir. 2005) (*quoting In re Crawford*, 194 F.3d. 954, 960 (9th Cir. 1999). Described as "fundamental to the operation of the bankruptcy system and . . . the best means of avoiding any suggestion of impropriety that might or could be raised," the policy of open inspection, as applied in this Court, cannot be underestimated. *Motors Liquidation*, 561 B.R. at 41-42, *quoting In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984).

27.    The common law right of public access to judicial records has been codified in section 107(a) of the Bankruptcy Code. *Togut v. Deutsche Bank AG (In re Anthracite Capital Inc.)*, 492 B.R. 162, 170, 173 (Bankr S.D.N.Y. 2013); *see also Gitto Global*, 422 F.3d at 7-8 (section 107 supplants the common law of public access). Pursuant to § 107(a), papers filed in bankruptcy cases and the Court's dockets are "public records, open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Anthracite*, 492 B.R. at 170.

**D.    The Limited Exception of Bankruptcy Code § 107(c)**

28.    Despite its deep underpinnings, the right to public access to court records is "not absolute." *Nixon*, 435 U.S. at 598; *Motors Liquidation*, 561 B.R. at 42. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *Orion Pictures*, 21 F.3d at 27 (noting that court may limit access where user's purpose is improper).

29.    Section 107(b)(1) of the Code provides that, "[o]n request of a party in interest, the bankruptcy court shall, . . . protect an entity with respect to a trade secret or confidential research, development or commercial information." 11 U.S.C. § 107(b)(1). Section 107(b) of the Code provides a "narrow statutory exception" to public access in bankruptcy cases." *In re Muma Services, Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002).

30.     Section 107(c)(1), added to the Code through the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005, "broadened the situations in which the court could protect

individuals from disclosure of sensitive information in light of the emerging problem of identity

theft." 2 *Collier on Bankruptcy* ¶ 107.LH[2] (16th ed.).   The statute provides:

> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.
>
> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(emphasis added).

31.     Section 1028(d)(7) of title 18 ("Fraud and related activity in connection with

identification documents, authentication features, and information") defines "means of

identification" as "any name or number that may be used, alone or in conjunction with any other

information, to identify a specific individual," including any –

> (A)  name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
>
> (B)  unique biometric data (such as finger print, voice print retina or iris image, or other unique physical representation);
>
> (C)  unique electronic identification number, address, or routing code; or
>
> (D)  telecommunication identifying information or access device (as defined in section 1029(e)).

18 U.S.C. § 1028(d)(7).

32.     The specific "purpose of § 107(c) is to set forth a limited exception to the general

rule that all records are public." *In re French*, 401 B.R. 295, 305 (Bankr. E.D. Tenn. 2009).

Accordingly, under the precise structure and deliberate terms of § 107(c), the Court, in the

exercise of its discretion, *may* limit public access of certain identification information only if it determines that (1) *cause exists, and* (2) *to the extent* dissemination of the information would constitute an *undue risk* of identity theft. *Id*. (emphasis added).  The Supreme Court has "emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 1931 (2016).  "Undue," which appears as a modifier in section 107(c), is not defined in the Bankruptcy Code, and generally means "excessive or unwarranted." *Black's Law Dictionary* (3rd pocket ed. 2006). With regard to the statutory interpretation of modifiers, such as "undue," the Court has the "duty to 'give effect, if possible, to every clause and word of [the] statute.'" *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997) (interpreting "liquidated" and "noncontingent" as modifiers of "debts" in § 109(e)), *quoting United States v. Menasche*, 348 U.S. 528, 538-39 (1955).

33.     Given the express limitations in the statute permitting a bankruptcy court to "protect an individual" solely "to the extent" that "undue" risk is present, § 107(c)(1), like § 107 in general, "does not mandate sealing – only protection." *Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 753 (D. Del. 2018), *quoting Anthracite*, 492 B.R. at 180.  It follows from this principle that the Court's consideration of a request for relief under § 107(c)(1) necessarily entails a consideration of competing interests. *Id.*, 585 B.R. at 755-57.

## E.  The Debtors Have the Burden of Proof Under § 107(b)(1) and (c)(1)

34.     In seeking to apply any exception to the general right of public access to judicial records, codified by section 107(a) of the Bankruptcy Code, "[t]he burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Cendant Corp.*, 260 F.3d at 194.   In *Cendant*, the Third Circuit Court of Appeals further explained:

> [T]he party seeking the closure of a hearing or the sealing of part of the
> judicial record "bears the burden of showing that the material is the kind
> of information that courts will protect" and that "disclosure will work a
> *clearly defined and serious injury to the party seeking closure*." In
> delineating the injury to be prevented, *specificity is essential*. Broad
> allegations of harm, bereft of specific examples or articulated reasoning,
> are insufficient.

*Id.* (internal citations omitted, emphasis added).

35.     The moving party bears the burden of showing that a request to place documents

under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018

by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access."

*United States v. Continental Airlines, Inc.. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340

(D.Del. 1993); *accord Food Mgmt. Group,* 359 B.R. at 561 (Bankr. S.D.N.Y. 2007); *In re

Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).

36.     The burden of proof to seal or redact filed bankruptcy papers "is not an easy

burden nor should it be. . . . The party seeking impoundment must submit 'evidence the filing

under seal outweighs the presumption of public access to court records.'" *In re Creighton*, 490

B.R. 240, 244 (Bankr. N.D. Ohio 2013), *quoting Gitto/Global*, 321 B.R. at 373, *quoting In re

Muma Servs. Inc.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002). "[S]ealing official documents," as

the Debtors would like, "should not be done without a compelling reason." *City of Hartford*, 942

F.2d at 135.

**F.     The General Data Protection Regulation**

37.     The EU's privacy law, known as the GDPR, became effective as of May 25,

2018, and establishes standards for entities that collect or process data on citizens and residents

of EU member countries.[7] At the unified EU level, the GDPR is administered by the European

---

[7]     A copy of the GDPR can be accessed at https://eur-lex.europa.eu/legal-
content/EN/TXT/?uri=celex:32016R0679R(02) or https://gdpr.eu/tag/gdpr/.

Commission ("EU Commission"), which is responsible for proposing EU-wide legislation, implementing decisions of EU member states, upholding EU treaties, and managing the EU's daily affairs.  Also, the European Data Protection Board, which includes representatives from data protection authorities of each EU member state, has promulgated guidelines for compliance with the GDPR.  *See* www.edpb.europa.eu.

38.     With respect to individuals who are citizens of the UK, all data processing and collection of data prior to December 31, 2020 falls under EU's GDPR, because the UK was a member of the EU through that date.  Data collected after that date falls under the UK's GDPR, which can be accessed at https://uk-gdpr.org/.[8]  The UK's GDPR is substantially similar to that of the EU GDPR. Unless otherwise indicated, the Article numbers of the GDPR cited herein are the same Article numbers for both the EU and UK GDPR.

39.     An entity's obligations under the GDPR are determined by reference to whether the entity is a "controller" of information -- or merely a "processor" -- under the GDPR. Generally, a data processor is an entity that merely processes (*e.g.*, collects, stores or uses) personal data on behalf or at the direction of a data controller.  GDPR Art. 4(8).  A data controller is an entity that determines the purposes for which the personal data is processed, and how the data is processed.  GDPR Art. 4(7) (an entity that "determines the purposes and means of processing personal data").  The Debtors in these U.S. bankruptcy cases qualify as "data controllers" under the GDPR.

40.     The GDPR protects the disclosure of "personal data," which includes "any information relating to an identified or identifiable natural person ('data subject')."  GDPR Art. 4(1).  An "identifiable natural person" under the GDPR "is one who can be identified, directly or

---

[8]     *See* https://www.gdpreu.org/differences-between-the-uk-and-eu-gdpr-regulations/.

indirectly, in particular by reference to an identifier such as a name, an identification number,
location data" and other attributes.  *Id*.

41.     Transactions involving the personal data of EU or UK citizens and residents who
are located within the EU or UK, or who are doing business with entities also based in the EU or
UK, are covered by the GDPR.  GDPR Art. 3.  The GDPR also has extra-territorial reach.  In
addition to EU and UK based entities, the GDPR also applies to the processing by non-EU and
non-UK entities "of personal data of [individual] "data subjects who are in the [European]
Union," or the UK, regardless of citizenship, where the entity's processing generally concerns its
business or its monitoring of the data subjects' EU or UK based behavior.  GDPR Art. 3(1, 2).
U.S. entities, for example, may be subject to the GDPR if they control or process data concerning
EU or UK citizens and residents.  *Id*.

42.     In the event that data controllers (e.g., the Debtors) collect personal data from an
individual "data subject" (e.g., a creditor of the Debtors), they must provide certain processing
information to the individual data subject, including contact information for the controller, the
purpose of the data collection, any intended recipients of the data, and whether the personal data
will be transferred outside the EU or UK.  GDPR Art. 13(1).  Processing personal data under the
GDPR is lawful if the data subject consents, if processing is necessary for contractual
performance, or if processing is "necessary for compliance with a legal obligation to which the
controller is subject," among others.  GDPR Art. 6(1).

43.     Within the particular territory of a given EU member, an independent public
authority, known under the EU GDPR as a "Supervisory Authority," and a "Commissioner"
under the UK GDPR, is responsible for monitoring compliance with the GDPR, enforcing the
GDPR's edicts, and conducting investigations.  The GDPR imposes a tiered structure of

corrective actions and administrative fines for violations of the GDPR, which are imposed by the applicable Supervisory Authority or UK Commissioner.  A Supervisory Authority or UK Commissioner may, for example, issue warnings for likely processing infringements of the GDPR, issue reprimands for actual infringements, or suspend data flows to recipients in third countries.  GDPR Art. 58(2).

44.     Also, "depending on the circumstances of each individual case" a Supervisory Authority or UK Commissioner may impose administrative (*i.e.*, monetary) fines for infringements of the GDPR.  GDPR Art. 83(1).  As an exercise of discretion, "[w]hen deciding whether to impose an administrative fine and deciding on the amount of the administrative fine in each individual case, due regard" must be given by the Supervisory Authority or UK Commissioner to "the nature, gravity and duration of the infringement[,] taking into account the nature[,] scope or purpose of the processing concerned," among other aggravating or mitigating factors.  GDPR Art. 83(2).  A Supervisory Authority may impose an administrative fine of up to €10.0 million, and the UK Commissioner up to 8.7 million pounds, or two percent of an offending entity's global annual revenue for lesser processing infringements, and a fine of up to €20.0 million, and the UK Commissioner up to 17.5 million pounds, or four percent of global annual revenue for other GDPR infringements, including the unauthorized transfer of personal data to third countries (*i.e.*, countries outside the EU or the UK).  GDPR Art. 83(4, 5).

45.     Pursuant to the GDPR, transfers of "personal data which are undergoing processing or are intended for processing after transfer to a third country" may "take place only if, subject to the other provisions of [the] Regulation," (*i.e.*, whether a GDPR-recognized legal basis applies to the processing of the data as a threshold matter), the data controller complies with certain "conditions" set forth in Chapter V of the GDPR.  GDPR Art. 44.  The Debtors'

filings in these U.S. bankruptcy cases of documents containing Personal Information qualify under the GDPR as transfers of personal data to a third country.

46.    Generally, under GDPR Chapter 5, data processors such as the Debtors may transfer personal data to third countries such as the U.S. if they have met one of three conditions: (1) the EU Commission or a UK Commissioner has made a prior "adequacy decision" vis-à-vis the recipient third country; (2) the data processor has put in place one of several "appropriate safeguards;" or (3) if a specific "derogation" (*i.e.*, an exception) set forth in the GDPR applies. GDPR Arts. 45, 46, 49.  In these bankruptcy cases, it appears that solely the third condition – *i.e.*, the derogations in the GDPR – apply to the data transfers proposed by the Debtors in the Motion to Redact.[9]

47.    If a European or UK entity's transfer of personal data to a third country such as the U.S. is not covered by either a prior adequacy decision or an appropriate safeguard recognized under the GDPR, the data transfer may still be made under the GDPR if it is covered

---

[9]    The GDPR contains two antecedent conditions not applicable here.  First, under the GDPR, transfers of personal data to third countries also may first take place if covered by a prior "adequacy decision" of the EU Commission.  GDPR, Art. 45(1, 3).  Such a decision constitutes a finding by the EU Commission that the legal framework in place for the recipient third country provides an "adequate level of protection" for the personal data rights of EU individuals.  *Id*.  Because the EU Commission has made only a partial finding of adequacy with respect to the U.S., EU entities may transfer personal data to U.S. entities under GDPR Art. 45(1) only if covered by the Commission-approved EU-US Privacy Shield framework.  *See* www.privacyshield.gov.  To the extent that the Federal government and the Court are recipients of personal data of EU residents, they are neither eligible for nor signatories to the Privacy Shield.

Second, in the absence of an adequacy decision pursuant to GDPR Art. 45(3), a data controller also may transfer personal data to a third country only if the controller has provided one of certain enumerated "appropriate safeguards."  GDPR Art. 46 (1, 2).  Such safeguards generally consist, among others, of:  instruments between public authorities involved in the transfers; binding inter-corporate rules approved by a Supervisory Authority; contracts with a third country recipient containing Supervisory Authority- or Commission-approved data protection clauses; a recipient's participation in a Supervisory Authority-approved code of conduct; or a recipient's certification by a Supervisory Authority.  GDPR Art. 46.

by one of the exceptions provided in GDPR Article 49 ("Derogations for specific situations").

Known in the GDPR as "derogations," the exceptions include:  the explicit consent of the

individual data subject (*e.g.*, an employee) (GDPR Art. 49(1)(a)); the transfer is necessary for the

performance of a contract between the individual and the data controller (GDPR Art. 49(1)(b));

or "***the transfer is necessary for the establishment, exercise or defence of legal claims***" ("Legal

Claim Exception," GDPR Art. 49(1)(e) (emphasis added)).

## IV.   <u>OBJECTION</u>

48.     The Debtors have not overcome the long-standing presumption of the public's

right to access court records.  It is well settled that honesty and full disclosure are paramount in

bankruptcy.  The duty of disclosure is important in the chapter 11 context, where the debtor in

possession serves as a trustee for the bankruptcy estate.  *In re Scott*, 172 F.3d 959, 967 n.6 (7th

Cir. 1999).  In these cases, the Debtors have not overcome that presumption.

### A.  **The Debtors Have Not Established Grounds to Redact Customer Names Under Section 107(b) of the Bankruptcy Code**

49.     The Debtors seek to redact the names, addresses and other contact information for

all of their customer-creditors, whether they be individuals, corporations of other legal entities,

from "any paper filed or to be field with the Court or made publicly available in these Chapter 11

Cases," which includes, but is not limited to, the Debtors "Creditor Matrix, Consolidated Top 50

Creditor List and Schedules and Statements" as well as all affidavits of service, the Claims

Register and proofs of claim.  Mot. ¶ 12; Proposed Final Order ¶ ¶ 4, 5.  The Debtors argue that

such names effectively constitute a customer list, which is entitled to protection as confidential

commercial information under section 107(b) of the Code and which, if disclosed, could allow

competitors to poach those customers and interfere with the debtors' ability to sell their assets.

Mot. ¶¶  12, 13.

20

50.     Under section 107(b), "commercial information" has been defined as information which would cause an "unfair advantage to competitors by providing them information as to the commercial operations" of the requesting party. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (internal quotations omitted); *accord In re Borders Group, Inc.,* 462 B.R. 42, 47 (Bankr. S.D.N.Y., 2011).

51.     "The 'commercial information' exception is not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake." *Motors Liquidation Co.,* 561 B.R. at 43 (*quoting In re Dreier LLP*, 485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013)). "Evidence–not just argument–is required to support the extraordinary remedy of sealing." *Id.* at 43; *accord Dreier*, 485 B.R. at 823 (finding that "conclusory statements in [a declaration] are not probative").

52.     To meet its burden to show that a request to place documents under seal falls within the parameters of Section 107(b), a movant "must demonstrate *extraordinary circumstances and compelling need* to obtain protection." *Food Mgmt.*, 359 B.R. at 561 (emphasis added)(*citing In re Orion Pictures Corp*., 21 F.3d 24, 27 (2d Cir. 1994)).  In addition, "[t]he moving party bears the burden of demonstrating that the information it is seeking to protect from public viewing is both commercial and confidential." *In re Williams*, No. 15-71767, 2017 WL 6278764, at *3 (Bankr. W.D. Va. Dec. 8, 2017) (citing *In re Oldco M Corp.*, 466 B.R. 234, 237 (Bankr. S.D. N.Y. 2012) and *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr. S.D. N.Y. 2007)).

53.     The Debtors have not demonstrated extraordinary circumstances or compelling need to seal the names of those customer and other creditors who are individuals, or the names and addresses of those customer-creditors who are not individuals. Nor do the Debtors cite any authority holding that the type of information they seek to seal is both confidential and

commercial information under the Bankruptcy Code. *See, e.g., In re Motors Liquidation Company,* 561 B.R. 36, 44 (Bankr. S.D.N.Y., 2016) (holding that the identities of the owners of 10% or more of the equity interests of a party in an adversary proceeding are not confidential commercial information and denying motion to seal). The Debtors provide only conclusory statements regarding the information's commercial importance, and "statements made by lawyers in briefs are not evidence." *Id*. "To put it clearly, just because information may be 'confidential' does not mean it is 'commercial information' entitled to the extraordinary procedure of sealing." *Id*.

54.     The information the Debtors seek to conceal here falls directly into the category of information that is required to be disclosed when a party avails itself of the protections of the Bankruptcy Code. *See* 11 U.S.C. § 521; Fed. R. Bankr. P. 1007; Del. Bankr. L.R. 1007-1(a) and 1007-2(a). The Debtors, who have voluntarily sought relief in this Court, have no basis for sealing the Creditor Matrix, Schedules, Statements, or the list of the largest unsecured creditors. Congress was clear that bankruptcy proceedings must be transparent, and transparency requires pleadings to be filed on the public docket unless narrow and enumerated exceptions apply. Such exceptions do not apply here.

55.     The purpose of requiring a debtor to disclose all assets, liabilities and business dealings is to ensure that creditors have reliable and accurate information which they can rely on to determine the status of the debtor's financial affairs and to trace a debtor's financial history. *In re Haynes*, 549 B.R. 677, 687 (Bankr. D. S.C. 2016). The bankruptcy schedules and statements of affairs are designed to elicit certain information necessary to the proper administration and adjudication of the case. *Id*.

56.     As stated by the court in *Celsius*, the schedule of liabilities "constitute prima facie evidence of the validity and amount of the claims of creditors unless they are scheduled as disputed, contingent, or unliquidated," under Fed. R. Bankr. P. 3003. *Celsius,* 644 B.R. at 297. This transparency is "'important because creditors can look at the schedule and see whether their claim has been listed, and whether it is an undisputed claim, in which case, they don't have to file a proof of claim.'" *Id.* (quoting the court's statements at the hearing). The court further noted that "[e]nabling parties in interest and the public to see the identity of creditors and the amount of their claims, and then tracking the disposition and treatment of claims during the bankruptcy case, is important to the fairness and public perception of the bankruptcy process. Only in the rarest of cases should these ordinary expectations be upset." *Id.* [10]

57.     The disclosure of the identity of the Debtors' customers is also important because the amounts owed to the Debtors or the amounts the Debtors owed are likely probative to the Debtors' ability to successfully restructure. The Debtors have made no showing that disclosure of the identities of some of its creditors are "reasonably [] expected to cause the entity commercial injury." *In re Alterra Healthcare Corp.,* 353 B.R. 66, 75 (Bankr. D.Del., 2006). The Debtors simply cannot seek bankruptcy protection and then do business behind a shield of secrecy.

58.     The Privacy Policy also provides that FTX Trading Ltd. will "disclose any information we store associated with you to external parties" if required to do so to comply with

---

[10]   The Court in Celsius rejected the debtors' "anonymization" process, whereby the debtors would send individual e-mails to every account user that informed them of the amount at which their claim had been scheduled, and a number that would allow them to go to the claims agent's website to confirm the same. *Id.* at 287. The Court was not persuaded by this proposed solution, in part "because the public schedules do not merely serve the interests of individual creditors, but, rather, also serve the interests of creditors and the public in general—all parties and the public share an interest in complete transparency, with only the rarest of exceptions." *Id.* at 297.

any "legal process," and to "comply with applicable laws."  Privacy Policy at 9, 13.  The policy

further states that customers information may be sold or transferred in connection with a

reorganization or bankruptcy.  *Id.* at 9.

59.     As the Privacy Policy allows customers names and contact information to be

shared with numerous third parties, it is not secret or confidential. Moreover, the Privacy Policy

allows the Debtors to share privacy information if legally required to do so, as they are here,

under the statutory requirements of the Bankruptcy Code.

60.     The Debtors have neither tried to meet their burden of showing more than

speculative harm, nor have they established that such relief is actually necessary to protect a

party from harm. As to customers who are individuals, it is difficult to imagine how they could

be poached if all that is disclosed is their name, with no contact information.

61.     Like the Debtors in the present case, the debtors in *Celsius* sought authority to

redact the names and addresses of all of their customers, whether individuals or entities, arguing,

as the Debtors do here, that such information was confidential commercial information and could

lead to competitors "targeting the debtors customers and undermine[ing] the Debtors' ability to

reorganize." *Celsius*, 644 B.R. at 291.   The court rejected this argument, describing the debtors'

"larger problem" to be the same as in the present case, which is that before and after they filed

for bankruptcy, the debtors froze all customer accounts, refusing to permit any withdrawals.  The

court noted that such action "has not won many fans among the Debtors' customers."  *Id.* [11]

62.     The *Celsius* court recognized that it may be true, as one of the debtor's witness

explained, that "it is expensive and time consuming for crypto companies to identify, attach, and

---

[11]   The *Celsius* court further noted that, as here, the Debtors did not address with evidence whether
creditors who deposited crypto assets with the Debtors also maintain accounts with the debtors'
competitors. *See id.* at 292.

enroll potential customers." *Id*. at 292.  The court indicated, however, that it did "not believe that is sufficient evidence to support sealing of the names of all creditors." *Id.*  As to individual creditors, the court rejected the idea that names alone, without e-mail and physical addresses linked to such names, meet the stand for confidential commercial information under section 107(b)(1), because "[n]ames alone are simply not enough to facilitate a competitor's theft." *Id.* at 293.  The court pointed out that by sealing individual customers' home and email addresses to protect those customers under section 107(c), the debtors would also "gain protection of whatever commercial value may flow from that information." *Id.* at 292.  The court emphasized, however, that it was granting that protection with respect to addresses of individual customers, not for corporate, LLP or LLC customers.  *Id.* [12]

63.     "The strong public policy of transparency and public disclosure in bankruptcy cases requires ***very narrow exceptions and only on strong evidentiary showings***." *Id.* at 292 (emphasis added).  In these cases, as in *Celsius*, the Debtors' evidentiary showing is insufficient to justify the wholesale sealing of creditors identities. *Id.*

## B.   The Debtors Have Not Established Grounds to Redact the Names of Customers and Creditors Who Are Individuals Under Section 107(c) of the Bankruptcy Code

64.     The Debtors have made no attempt to fulfill their burden of proof under Bankruptcy Code § 107(c).  As that statute is applied in these cases, for the Court to exercise its discretion to protect the names of the Debtors' customers and other creditors who are individuals, the Debtors must furnish evidence and make a concrete showing that filing *only the names*, with no other information, of such individuals, "*would* create" an "*undue* risk" of identity

---

[12]    In so doing, the *Celsius* Court recognized rulings in other cases that reached different results, including the ruling of this Court in *Cred*.  *See id.* at 292.

theft or other unlawful injury to those employees or their property.  11 U.S.C. § 107(c) (emphasis added).

65.     This issue also was addressed in *Celsius.* There, the court determined that "[i]dentifying the individual account holders by name, without physical and email addresses, is insufficient information to expose customers to risks of identity theft or personal danger."  644 B.R. at 293.  The court recognized that sealing such information from public disclosure "risks transforming the open and transparent bankruptcy process into something very different, which the Court is loath to do without a strong showing of real and not speculative risks."  *Id.*

66.     The Debtors in these cases have not set forth any facts demonstrating that disclosure of only the names of the Debtors' customers and creditors who are individuals, without any other contact information, would create any risk, let along any undue risk, of identity theft or other unlawful injury.   The Debtors provide, as an example, one incident that took place in another bankruptcy case in this District in 2017, but in that instance an address with provided along with the name. Mot. ¶ 18 (discussing *In re  Charming Charlie Holdings, Inc.*, No. 19-11534 (CSS)).  Similarly, the ruling in *In re Forever 21, Inc.*, cited by the Debtors, referenced persons who "seek to have their *addresses* withheld" to guard against identity theft.  Mot. ¶ 17 (emphasis added).

67.     Moreover, the Privacy Policy, quoted in paragraphs 17 and 18 above,  supports the argument that the information sought to be redacted does not meet any exception to section 107(a) of the Code.  The Privacy Policy specifically states that FTX Trading Ltd. may share customer's "personal information to business partners with whom we jointly offer products or services" and allow FTX Trading Ltd.'s "advertising partners to set Technologies and other tracking tools to collect information" regarding customers activities, their IP address, mobile

identifiers, and other information.  Objection Ex. A at 8-9.  The Privacy Policy also indicates that

FTX Trading Ltd. discloses "personal information" it collects about its customers to FTX

Trading Ltd.'s affiliates, as well as to service providers such as IT, banks, and customer service

providers.  *See id*.  Although the privacy policy provides a way for customers to prevent the

sharing of personal information with advertising partners, it does not do the same for sharing

information with FTX Trading Ltd.'s "business partners," affiliates, or service providers.  *See id.*

at 10-11.

68.     Consistent with the depth of the public right to access of judicial documents,

Bankruptcy Code § 107(c) by its express terms requires both proof of undue risk – *i.e.*, not

merely a slightly possible, theoretical risk – as well as a certainty of such undue risk.  11 U.S.C.

§ 107(c).  The modifier "undue" must be proven by a movant under § 107(c)(1), and not read out

of the statute.  *In re Mazzeo,* 131 F.3d 295, 302 (2d Cir., 1997).  In the Motion, the Debtors

merely hypothesize, without the evidence required, that there is a possibility of just ordinary risk.

That simply does not suffice to fulfill the Debtors' heavy burden of proof under § 107(c).

*Cendant*, 260 F.3d at 194 ("Broad allegations of harm, bereft of specific examples or articulated

reasoning, are insufficient"); *see also Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,

814 F.3d 132, 144-45 (2d Cir. 2016) ("'Broad and general findings' and 'conclusory assertion[s]'

are insufficient to justify deprivation of public access to the record, . . . 'specific, on-the-record

findings' are required.") (*quoting United States v. Erie Cty.*, 763 F.3d 235, 243 (2d Cir.

2014)(internal quotations omitted).

69.     Without any additional proof establishing an "undue" risk of identity theft or

other unlawful injury to the Debtors' customers and creditors who are individuals by the mere

disclosure of their names, the Motion must be denied under § 107(c)(1).

C.  **Names of Individuals Covered by the GDPR Should Not Be Redacted**

70.    The Debtors request the redaction of names and residential addresses of creditors who are citizens of a member nation of the EU, or are UK citizens, covered by either the EU GDPR or the UK GDPR.  That aspect of the Motion should be denied because:  (i) the scope of the Debtors' request is excessive; (ii) the GDPR does not supersede U.S. bankruptcy law for purposes of the Motion; and (iii) the GDPR makes an exception for the filing of such information in these bankruptcy cases.

1.    **The Bankruptcy Code, Not the GDPR, Controls Here**

71.    The Debtors, which consented to the jurisdiction of this Court by filing voluntary petitions for bankruptcy relief, have failed to set forth any authority for their implied proposition that the GDPR supersedes U.S. interests, as implemented through the disclosure provisions of the Bankruptcy Code, the Bankruptcy Rules, and related law.  To the contrary, in these chapter 11 cases, the Court simply may not be bound by the GDPR.

72.    In this regard, in the analogous discovery context, the Supreme Court has weighed in very clearly.  With respect to a French "blocking statute" that authorized criminal penalties for the production of economic, commercial and financial documents in foreign judicial proceedings, including U.S. proceedings, the Court unequivocally ruled: "It is well settled that such [foreign blocking] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dt. Ct. for the Southern Dt. of Iowa*, 482 U.S. 522, 544 n.29 (1987); *see also Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d. 409, 422-25 (S.D.N.Y. 2016) (denying European banks' objections to discovery based on 1995 EU Directive 95/46/EC (part of the UK Data Protection Act), because as a matter of comity, the

28

United States' national interests outweigh those of the UK); *Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, Case No. 14-CV-8175 (LGS), 2018 WL 745994 (S.D.N.Y. Feb. 6, 2018) (holding that plaintiff improperly withheld custodial information and substantially redacted individual names and email addresses in deference to Belgian Data Privacy Act, which restricts transfer of personal data to countries outside the EU).

73.     The *Celsius* court addressed this issue as well.  There, as here, the debtors sought authorization to redact the names, email addresses, and home addresses of any citizens of the UK or European Economic Area member countries, arguing that the disclosure of those names and addresses would risk violating the UK GDPR and the EU GDPR, which would expose the Debtors to potential civil liability and significant financial penalties. *Celsius*, 644 B.R. at 295. The court noted that there, as here, the debtors provided "no legal authority explicitly dictating why the UK GDPR and the EU GDPR should apply to the bankruptcy cases of the Debtors filed in the United States, or specifically, why the foreign laws would take precedence in a situation where United States law requires the disclosure of the information."  *Id*.  The court examined whether disclosure of the names and addresses of such individuals could be protected under 107(c), but indicated that it remained "unconvinced, beyond speculation, that the disclosure of names alone (without email or physical addresses) presents an imminent risk of harm." *Id.*  The court also indicated that it would "not treat the UK and EU citizens differently than the United States citizens implicated in this case filed in New York." *Id.*  The court ruled that the Debtors could redact home addresses and email addresses of any individual, including those located in the UK or the EU member countries, but denied the proposed redaction of the names of the individuals. *Id.*  The U.S. Trustee believes the same result is warranted here.

74.     The Debtors should not be allowed to eviscerate long-standing disclosure requirements grafted into the Bankruptcy Rules and the Local Rules of this Court and the long-standing policies underlying those authorities.  While the UK and the EU have a legitimate interest in enforcing their own law, this Court's interest in enforcing the Bankruptcy Code in these bankruptcy cases is superior.  The Debtors have put forth no proof whatsoever, let alone the plausible evidence required, that their applicable Supervisory Authority or UK Commissioner, would unduly pursue enforcement action and issue penalties against them for obeying both U.S. law and a specific disclosure order of this Court.

75.     In addition, it appears that the Debtors do not even know which of their customers and creditors are citizens of the UK or an EU member country, because in many instances the Debtors do not have street addresses for such customers and creditors.  Even for those customers and creditors for whom the Debtors do have addresses, an address alone does not establish citizenship.

### 2.     Personal Information May Be Filed Under the GDPR Legal Claim Exception

76.     In addition, the Debtors have failed to discuss the GDPR's Legal Claim Exception, which facially appears to permit the disclosure of the names (as well as residential addresses) of EU and UK creditors in these bankruptcy cases.  Pursuant to the Legal Claim Exception, the Debtors' transfer of the names of EU or UK creditors to a third country such as the U.S., by filing the same in these bankruptcy cases, is allowed to the extent that "the transfer is necessary for the establishment, exercise or defence of legal claims."   GDPR, Art. 49(1)(e).  Recital 111 to the GDPR, which interprets the Legal Claim Exception, expressly provides that under the exception, a transfer of data, such as the names of EU or UK creditors at issue here, may take place where it is "occasional and necessary in relation to a contract or a legal claim,

regardless of whether in a judicial procedure or whether in an administrative or any out-of-court

procedure, including procedures before regulatory bodies." GDPR Art. 49(1)(e), Recital 111.[13]

77.    According to official guidelines promulgated by the European Data Protection

Board, the Legal Claim Exception broadly "covers a range of activities." *Guidelines 2/2018 on*

*Derogations of Article 49 Under Regulation 2016/679* (May 25, 2018) ("EDPB Guidelines").[14]

The EDPB Guidelines expressly provide that the Legal Claim Exception includes "actions by the

data exporter to institute procedures in a third country[,] for example commencing litigation or

seeking approval of a merger." EDPB Guidelines § 2.5. According to the European Data

Protection Board, such third-country procedures, *e.g.* – legal proceedings in a third country –

"must have a basis in law, including a formal, legal defined process," and "a close link is

necessary between a data transfer and a specific procedure regarding the situation in question."

*Id*.

78.    Here, it cannot be disputed that the requirements imposed by the U.S. Bankruptcy

Rules and Local Rules of this Court constitute and furnish a well-recognized, "formal, legal

defined process" within the meaning of EDPB Guidelines § 2.5. It follows that because full

disclosure of the names of all creditors is required under Bankruptcy Rule 1007(a)(1) and Local

Rule 1007-2(a), the Debtors' transfers of personal data to a third country under the GDPR, *i.e.* –

their filing of the names of EU or UK creditors in these U.S. bankruptcy cases – is

---

[13]    A copy of Recital 111 may be found at https://gdpr.eu/Recital-111-Exceptions-for-certain-cases-of-international-transfers. The Recitals of the EU GDPR also apply to the UK GDPR. *See* https://ukgdpr.fieldfisher.com/recitals/.

[14]    A copy of the EDPB Guidelines may be found at https://edpb.europa.eu/our-work-tools/our-documents/publication-type/guidelines_en. The EDPB has not applied to UK since January 1, 2021. https://edpb.europa.eu/sites/default/files/files/file1/edpb_statement_20201215_brexit_updated202101 13_en.pdf. Nevertheless, the EDPB Guidelines may still be instructive in interpreting the UK GDPR with respect to the provisions discussed in this Objection, as such provisions in the UK GDPR are nearly identical to those of the EU GDPR.

unquestionably "necessary for the establishment [and] exercise" of the Debtors' "legal claims" in these U.S. bankruptcy cases. GDPR Art. 49(1)(e). By virtue of having voluntarily requested relief under chapter 11 of the Bankruptcy Code, the Debtors subjected themselves to the non-discretionary disclosure requirements of Bankruptcy Rule 1007(a)(1) and Local Rule 1007-2(a). Thus, the Debtors' filing of unredacted names of EU and UK creditors, *i.e.* – their transfers of personal data to a third country under the GDPR – fulfills the requisite "necessary" standard of the Legal Claim Exception of GDPR, Art. 49(1)(e). For these same reasons, the filing of the names of EU and UK creditors by the Debtors is "necessary" within the meaning of Recital 111 to GDPR, Art. 49(1)(e), and such filing fulfills the "close link" requirement of EDPB Guidelines § 2.5.

79.     In addition, the Debtors' disclosure of the names of EU and UK creditors in these cases also squarely satisfies the requirement of the applicable GDPR Recital. GDPR Art. 49(1)(e), Recital 111 (data transfers must be "occasional"). The Debtors are required to include the names of EU and UK creditors in the Creditor Matrix, the Consolidated Top 50 Creditors List and also in the Debtors' Schedules and Statements of Financial Affairs. 11 U.S.C. § 521(a)(1)(B), Bankruptcy Rules 1007(a)(1) and 1007-1(b), and Official Form 201. Therefore, in terms of GDPR Recital 111, at the underlying "data transfers" of names of EU and UK creditors by the Debtors will occur with only "occasional" frequency within the meaning of the Recital. GDPR Art. 49(1)(e), Recital 111.

80.     Though the Debtors bear the burden of proof here, the Motion fails to bear any indication that they have pursued any threshold assessments of their risk of penalization under the GDPR. There is, for example, no proof that the Debtors simply sought the consent of the EU and UK creditors to include their names in the Creditor Matrix, the Consolidated Top 50

Creditors List, and the Debtors' Schedules and Statements, rather than asking for extraordinary judicial relief.  GDPR Art. 49(1)(A).  The Motion also fails to demonstrate that the Debtors have made an inquiry with their applicable EU GDPR Supervisory Authority or UK Commissioner about the lawfulness of transferring the names of the EU and UK creditors to the U.S. by filing that information in these bankruptcy cases pursuant to the requirements of the Bankruptcy Rules and the Local Rules of this Court, or seeking a permit from their Supervisory Authority or UK Commissioner to do so.   Particularly in light of the tenets of the Legal Claim Exception, of the discretion expressly given by the GDPR to the Debtors' Supervisory Authority or UK Commissioner, and of the strength of the American laws militating in favor of full disclosure in these bankruptcy cases, these types of diligence by the Debtors are crucial at this relatively early stage of the implementation of the GDPR, and critical to the Debtors' faithful fulfillment of their fiduciary duties here.

81.    For the reasons set forth above, the relief requested by the Motion as it regards EU and UK citizens who are individual customers-creditors of the Debtors should be denied, except so as to allow the redaction of their residential and email addresses.

### D.  The Debtors Must File Under Seal Unredacted Versions of All Documents They File in a Redacted Format

82.    In the event the Court grants any portion of the Debtors' Motion seeking to redact customer and creditor information, it appears that the Debtors are seeking to bypass the requirement that they file under seal an unredacted version of each redacted document filed. Instead, the Debtors propose to provide such unredacted documents to the Court only "upon request."  Under the Local Rules of this Court, it is not sufficient to simply file a redacted version of a document and nothing else, especially with respect to documents that are required by the Bankruptcy Code and the Bankruptcy Rules to be filed, such as the Creditor Matrix, and the

Schedules and Statements.  *See* Del. Bankr. L.R. 9018-1(d).

83.     At the request of the U.S. Trustee, the Debtors did modify the proposed the Interim Order on the Motion to require that an unredacted version of the Creditor Matrix be filed under seal with the Court.  However, the Debtors did not agree to the U.S. Trustee's request for the interim order to provide that *all* redacted documents also be filed under seal in an unredacted format.  To the extent this Court grants any portion of the Motion as it concerns redaction, the final order should be modified to require that any party who files a document with information that has been authorized by the Court to be redacted must also file an unredacted version of the same with the Court under seal.

84.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.


WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the final relief requested by the Motion, as it concerns redaction of information, except to allow the redaction from public filings of the addresses and email addresses – but not names – of individuals who are customers or other creditors of the Debtors, and grant any such other and further relief that the Court deems just and proper.

Respectfully Submitted,

**ANDREW R. VARA,**
**ACTING UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

Dated: December 12, 2022

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Juliet.M.Sarkessian@usdoj.gov