# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Ref No. 199<br><br>**Objection Deadline: TBD**<br>**Hearing Date:  TBD** |

**DEBTORS' OBJECTION TO MOTION FOR ENTRY OF AN ORDER SHORTENING THE NOTICE AND OBJECTION PERIODS WITH RESPECT TO EMERGENCY MOTION (I) FOR RELIEF FROM AUTOMATIC STAY AND (II) TO COMPEL TURNOVER OF ELECTRONIC RECORDS UNDER SECTIONS 542, 1519(A)(3), 1521(A)(7) AND 1522 OF THE BANKRUPTCY CODE**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this objection (this "Objection") to the *Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd. for Entry of an Order Shortening the Notice and Objection Periods* (the "Motion to Shorten") *with Respect to the Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd. (I) For Relief from the Automatic Stay and (II) To Compel Turnover of Electronic Records Under Sections* 542, 1519(A)(3), 1521(A)(7) and 1522 of the Bankruptcy Code [D.I. 199] (the "Motion to Compel"). In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The relief sought by the Joint Provisional Liquidators ("JPLs"), though couched in ordinary terms, is actually quite extraordinary.  It is not a request for information;

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

{1368.002-W0069286.}

rather, it is a request for access—full and total access to all of Debtors' cloud-based systems. It is a request for live, dynamic access that would be provided immediately to the government of The Bahamas and to Messrs. Samuel Bankman-Fried and Gary Wang, who are located in The Bahamas and working closely with Bahamian officials. The Debtors simply cannot allow this to occur.

2. The JPLs have identified no exigency that would justify the Motion to Shorten and, in any event, the substantive relief is not warranted and presents massive and unjustifiable security risks to the Debtors, their assets, their customers and creditors. It is also inconsistent with the Debtors' cooperation with the many investigations by U.S. law enforcement and regulatory authorities now underway into the failure of the Debtors.

3. *First*, there is no emergency. To the extent there is any risk to the assets, documents, or information, the Debtors are taking all steps to ameliorate such risk. The JPLs can do nothing more to ameliorate any risk than is already being done by the Debtors. A month has passed since these Chapter 11 Cases (defined below) were filed on November 11, 2022. The JPLs' access to the Debtors' cloud-based environments was limited on November 12, 2022 following substantial and unauthorized access, at a minimum, by Messrs. Bankman-Fried and Wang at the direction of the JPLs and the Securities Commission of the Bahamas (the "Commission"). In the meantime, the Debtors have reached out repeatedly to the JPLs and the government of The Bahamas—the Prime Minister, the Attorney General and the Securities Commission of The Bahamas (the "Commission")—the true party in interest—about level setting the factual record and having frank conversations about a path forward. In response, the Debtors have received nothing other than a stone wall; a complete refusal to provide any information whatsoever, including an accounting of diverted assets. The JPLs know that this

stonewalling will continue. They admit as much in their papers. (Motion to Compel ¶ 19 ("[A]ny such protocol would be subject to authorization by the Bahamian Court and *it is not certain such relief will be granted*." (emphasis added)).)

4. *Second*, the JPLs fail to identify any basis that would justify their request for expedition, other than to protect FTX Digital Markets Ltd. ("FTX DM") assets supposedly at risk of dissipation. The JPLs simply state that such a risk exists, but provide no evidence to support it. They satisfy no burden to justify the relief. This is because no such risk exists. The Debtors are working day and night to secure all assets wherever located. If in the course of this exercise assets of FTX DM have been or are secured, those assets will remain secured. Likewise, all records have been backed up, saved and/or cloned, as appropriate. Nothing is at risk of disappearing so long as the relief requested by the JPLs is not granted.

5. The Debtors remain ready, willing, and able to sit down with the JPLs and the Commission to work out a mutually acceptable protocol that provides the Debtors, the JPLs, and the Commission with transparency as to asset identification, location, and value of all collected and secured assets, so long as this exercise is 100% reciprocal and provides iron-clad protections that the Debtors' records, assets, and systems will never again be subject to review or manipulation by Messrs. Bankman-Fried and Wang or anyone aligned with or associated with either of them.

6. There is no cause to shorten the notice and objection periods for their Motion to Compel. The Motion to Shorten must be denied.

## BACKGROUND

A. **The Debtors and Their Chapter 11 Cases**

7. On November 11, 2022 and on November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under title 11 of

the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. As of the date hereof, no creditors' committee, trustee, or examiner has been appointed in these Chapter 11 Cases.

8. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

### B.    Provisional Liquidation of FTX DM

9. During the week beginning Sunday, November 6, 2022, it became clear that the FTX Group was facing a liquidity crisis and that the ability of its constituent entities to operate as going concerns was in doubt. As a result, withdrawals were halted on November 8, 2022 for FTX.com (encompassing both FTX Trading Ltd. and FTX DM). Messrs. Bankman-Fried and Wang were in close and frequent contact with the Commission and the Attorney General throughout the week. As to FTX.com, on November 9, 2022, Mr. Bankman-Fried sent an email to the Attorney General in which he stated "we have segregated funds for all Bahamian customers" and "**would be more than happy to open up withdrawals for *all* Bahamian customers on FTX, so that they can, *tomorrow*, *fully* withdraw *all* of their assets, making**

**them fully whole.**" (Emphasis in original). (Ex. A.)[2] Debtors' investigation to date shows that Mr. Bankman-Fried did open withdrawals on the FTX.com exchange for certain customers for a period of approximately 25.5 hours, from 10:30 a.m. on November 10, 2022 to noon on November 11, 2022, during which time nearly $100 million in cryptocurrency was withdrawn by approximately 1,500 individuals and entities purporting to be Bahamian customers for know your customer ("KYC") purposes.

10. No other customers of FTX entities were given such an opportunity for preferential treatment. Notably, the opening of this window took place *after* the commencement of the provisional liquidation proceedings in The Bahamas and *after* U.S. counsel was engaged to begin contingency planning for Chapter 11. The Debtors continue to investigate the identities of those who received these withdrawals, including whether they actually satisfied applicable KYC and other legal requirements. The Debtors reserve all rights with respect to such withdrawals, including without limitation, the right to claw back any payments.

11. By order dated November 10, 2022, FTX DM was placed into provisional liquidation in the Commonwealth of the Bahamas (the "Bahamian Liquidation") by the Commission pursuant to its authority under the Digital Assets and Registered Exchanges Act (the "DARE Act"). On the same day, the Bahamian court overseeing the Bahamian Liquidation appointed Brian Cecil Simms as the then-sole provisional liquidator. The sworn declarations in support of the relief were filed under seal. The proceedings took place on an *ex parte* basis. The Debtors are not aware of what, if anything, was represented to the Bahamian court with respect to the opening of the exchanges for "Bahamian" customers.

---

[2] All exhibits are from the Declaration of James L. Bromley, dated December 12, 2022, submitted with this Objection.

12.     On November 11, 2022, John J. Ray, II was appointed as Chief Restructuring Officer and Chief Executive Officer of the Debtors pursuant to an omnibus corporate authority signed by Mr. Bankman-Fried. (*See* Ray First Day Declaration ¶ 1.) Prior to assuming those roles, Mr. Ray had no relationship of any sort with any FTX company, with Mr. Bankman-Fried, Mr. Wang, Mr. Singh, or any other officer or director of any FTX company. Shortly after his appointment, Mr. Ray provided corporate authority to commence the Chapter 11 Cases. (*Id.* ¶ 2.) Given that the Commission had commenced a provisional liquidation against FTX DM on November 10, 2022, no chapter 11 petition was filed with respect to FTX DM. (*Id.* ¶ 42.)

C.    **Debtors' Cloud-Based Assets**

13.     As the Chapter 11 Cases were being filed, Debtors and their representatives worked tirelessly through the night to secure assets, including two important systems belonging to the Debtors: Amazon Web Services ("AWS"), which hosted the Debtors' FTX.com trading platform and holds Debtors' digital assets; and Google Cloud Platform ("GCP"), which holds a copy of the main data tables from AWS for analytics purposes. Debtor Alameda Research, Ltd. ("Alameda") contracted for, pays for, and has the right to control access to, these web services. The servers on which these web services are housed are located in the United States.

14.     On the evening of November 11, 2022, while Debtors were in the process of securing these assets and others, it became clear that the systems that control Debtors' digital wallets were being accessed by one or more unidentified and unauthorized actors. The Debtors and their advisors worked through the night into the early morning hours of November 12, 2022 to block such access and move digital assets to secure cold wallets. Also on November 12, 2022, the Debtors observed the minting of new FTT tokens.

15. During this period—and subsequently—information emerged that Debtors' systems and assets were accessed from at least two sources. (*See* Ray First Day Declaration ¶ 75.) One source continues to be under investigation. The second source, based on evidence collected by Debtors, shows without doubt that the Commission—after the filing and public announcement of the Chapter 11 Cases—instructed Messrs. Bankman-Fried and Wang to mint a substantial amount of new tokens and transfer hundreds of millions of dollars' worth of those new tokens and other digital assets to cold storage under the control of the Commission. The Debtors' investigation of this unauthorized access is ongoing and is yielding new information by the day.

16. Postpetition, on November 12, 2022—after these actions already had been undertaken—"the Commission sought an additional Order (the 'November 12 Order') from the Supreme Court of The Bahamas for authority under the DARE Act to transfer *all digital assets of FTX* into digital wallets under the exclusive control of the Commission for the benefit of clients and creditors of [FTX DM]." (Emphasis added.) The existence of this Order was not revealed to Debtors until November 23, 2022, when the Commission issued a press release in response to Debtors' motion to transfer (discussed below). (*See* Ex. B.)

17. As with the November 10 proceedings, the proceedings leading to the November 12 Order were conducted on an *ex parte* basis and under seal. The Debtors did not receive (i) notice that the Commission was seeking entry of the November 12 Order; (ii) an opportunity to be heard in respect of the November 12 Order; (iii) a copy of the pleadings filed by the Commission in support of the application for the November 12 Order; or (iv) a copy of the November 12 Order itself. Moreover, despite repeated requests, Debtors have not received from

the JPLs any detail as to what assets the Commission seized, how they were transferred, or why they reference FTX assets as opposed to FTX DM assets.

18. With knowledge of the Commission's unauthorized access to Debtors' systems, but no knowledge of the November 12 Order, Debtors' counsel wrote a letter to Christina Rolle, Executive Director of the Commission, and Mr. Simms, the then-sole provisional liquidator, informing each of the Chapter 11 Proceedings and the existence of the automatic stay of Section 362(a) of the Bankruptcy Code. (Ex. C.) Debtors have not received a response to that letter, which was sent on November 13, 2022.

19. On November 14, 2022, Kevin G. Cambridge and Peter Greaves were also appointed as JPLs, to serve alongside Mr. Simms. Again, no notice of these appointments was provided to Debtors.

### D. The JPLs and Bahamian Government Ignore Debtors' Offers to Coordinate

20. On November 15, 2022, lawyers from Holland & Knight LLP (then-counsel for the JPLs) requested an introductory call with Debtors' counsel. During that call, Debtors' counsel proposed the development of a consensual protocol to facilitate coordination between the Chapter 11 Cases and the Bahamian Liquidation. Then-counsel for the JPLs told Debtors' counsel that they would consider the proposal but never responded.

21. On November 16, 2022—five days after the Petition Date and with no notice to Debtors—the JPLs filed a Chapter 15 Petition for Recognition of a Foreign Proceeding relating to FTX DM in the United States Bankruptcy Court for the Southern District of New York ("SDNY"), captioned *In re FTX Digital Markets Ltd. (in Provisional Liquidation)*, Case No. 22-BK-11516 (MEW) (the "Chapter 15 Case"). The JPLs sought entry of an order pursuant to chapter 15 of the Bankruptcy Code to, among other things, recognize the Bahamian Liquidation as a foreign main proceeding pursuant to 11 U.S.C. §§ 1502, 1517(a) and (b)(1), and

appointing the JPLs as FTX DM foreign representatives pursuant to 11 U.S.C. §§ 101(24), 1509 and 1517(a). Among other things, the JPLs alleged that some or all of the Chapter 11 Cases are illegitimate, that the center of main interests for the "FTX Group" and the "FTX Brand" is in the Bahamas, and strongly suggested that upon recognition the JPLs will seek to dismiss some or all of these Chapter 11 Cases.

22. On November 17, 2022, Debtors filed an emergency motion to transfer the Chapter 15 Case to this Court for coordinated proceedings with the Chapter 11 Cases [D.I. 22].

23. The first day hearing in the Chapter 11 Cases was conducted on November 22, 2022 (the "First Day Hearing"). At the First Day Hearing, the JPLs consented to the transfer of the Chapter 15 Case to this Court, subject to certain limitations and conditions, and the Court entered an order transferring the Chapter 15 Case to this Court on the same day [D.I. 131].

24. On November 27, 2022, Debtors wrote to the Prime Minister (the Honorable Philip Davis) and Attorney General (the Honorable Leo Ryan Pinder) of The Bahamas "to open a new line of communication so that [the Debtors and the Bahamian government] can collectively move forward on a coordinated basis" and offered "to speak with [them] at [their] earliest convenience about how the Government of the Bahamas can participate directly and meaningfully in the Chapter 11 Proceedings on behalf of itself and Bahamian citizens in general." (Ex. D.)

25. Later on the same day, November 27, 2022, the Attorney General of the Bahamas addressed the Bahamian nation on the so-called "current situation regarding FTX Digital Markets Limited" (the "AG's Address"). (Ex. E.) The AG's Address admits that the Commission's regulatory mandate only extends to FTX DM. Nevertheless, the AG's Address also makes clear that the Bahamian government wants to control all FTX bankruptcy

...

proceedings—not just those of FTX DM—by purporting to take steps to protect "the interests of *FTX's* customers and creditors." (Ex. E at 2 (emphasis added).) The AG's Address again called into question the legitimacy of these Chapter 11 Cases, asserting Debtors' counsel made "inaccurate allegations" in its filings before this Court and suggesting that Debtors' "legal strategy" is being driven by the "prospect of multi-million dollar legal and consultant fees." (Ex. E at 5.) The AG's Address acknowledged the Commission's involvement in the unauthorized access of Debtors' assets, stating that the Commission had "secured the assets of [FTX DM] to be held on behalf of and *for the benefit and restitution of clients and creditors of FTX*," (Ex. E at 2 (emphasis added)), but provided no details as to what occurred and omitted any reference to the ongoing collaboration with Messrs. Bankman-Fried and Wang.

26. On December 1, 2022, following the AG's Address, Debtors wrote to the Prime Minister and the Attorney General, again offering "to discuss areas where cooperation would be mutually beneficial." The letter also set out a detailed summary of the facts known to the Debtors and requested again that the Bahamian authorities provide information to the Debtors as to what assets had been secured by the Commission. (Ex. F.)

27. On December 7, 2022, Bahamian counsel for the Debtors, Peter D. Maynard and Co. ("Maynard"), received a letter from Bahamian counsel for the Commission, Delaney Partners ("Delaney"), that—for the first time—acknowledged Debtors' November 13 and December 1 Letters. (Ex. G.) Notably, the Commission's Letter "decline[d] to provide certain information [Debtors] seek as to" the assets seized. (Ex. G at 3.) Further, the letter stated that the Commission had "no comment on [Debtors'] suggestion that [they] and The Bahamian Joint Provisional Liquidators enter into one or more joint protocols to facilitate the efficient conduct and mutual respect for the pending insolvency proceedings." (*Id.*)

28. At around 1:00 PM on December 7, 2022, Debtors' counsel received a letter from the JPLs' current counsel, White & Case LLP, that stated they "urgently require immediate access to [FTX DM's] electronic records that are contained on certain of the systems controlled by the Chapter 11 Debtors" and requested unfettered access to all of Debtors' systems, including Slack, Google Mail/Google Chat, Google Drive, AWS, and Google Cloud Platform BigQuery. (Ex. H.) The letter demanded that the JPLs be provided access "by no later than 5PM EST on Thursday, December 8, 2022"—just over 24 hours after Debtors' counsel received the request. (Ex. H at 1.)

29. On December 8, 2022, Debtors' counsel responded to the letter by email, offering "an in person meeting next Wednesday to see if we can take the temperature down." (Ex. I.) The next morning, counsel for the JPLs responded, "[w]e'll discuss on our end and consider schedules/availability and will get back to you." (Ex. I.) The email said nothing about their intent to file the instant Motions.

30. The interactions between the Debtors, the JPLs, and the Commission—which the JPLs largely omit from their Motions—are clear: Debtors have made repeated overtures to JPLs and Commission to meet and those overtures were met with avoidance and obfuscation. The JPLs and the Commission have refused to provide responses to Debtors' questions about the assets "secured" by the Commission. Instead, the JPLs file baseless motions seeking extraordinary relief on an unnecessarily truncated timeframe.

31. The Bahamas has an interest in the Chapter 11 Cases, and customers in The Bahamas will file claims against the Debtors. The same can be said for many countries. The Debtors have established cooperative relationships with regulators and local insolvency

professionals appointed to oversee the resolution of subsidiary companies around the world. The Debtors seek the same in The Bahamas.

## ARGUMENT

32. Bankruptcy Rule 9006(c)(1) authorizes this Court to reduce the notice period required for a hearing, but only "for cause shown." Although the Court has the discretion to shorten the notice and objection periods with respect to a motion, the moving party must specify "*the exigencies justifying shortened notice*." Del. Bankr. L.R. 9006-1(e) (emphasis added).

33. The JPLs have failed to identify any exigency that would justify a shortened notice and objection period. These Chapter 11 Cases were filed on November 11 and, as they acknowledge in their Motions, the JPLs' access to the Debtors' cloud-based environments was limited on November 12. For nearly a month, the JPLs have taken no action with regard to their access, despite having an opportunity to do so, and have largely ignored the attempts by Debtors' counsel to develop an information-sharing protocol.

34. The JPLs assert that they "have made *many* attempts to obtain access" (Motion to Compel ¶ 15), but that is simply untrue. In doing so, the JPLs claim to have instructed "employees to attempt to gain access" (*id.*) to the Debtors' systems. In fact, the Debtors have received numerous requests from Mr. Bankman-Fried and others for passwords and access to the Debtors' systems. Each one of these requests has been rejected. These requests for access to the Debtors' systems cannot seriously be construed as an attempt by the JPLs to resolve this issue. In fact, they highlight the recklessness with which the JPLs and the Bahamian authorities are approaching the security of the Debtors' assets and systems. The last time these individuals had access to the Debtors' systems, they used such access to transfer assets belonging to the Debtors. That the JPLs and the Commission state with zero specificity

that assets have been secured by the Commission gives no comfort that other assets were not transferred to non-secure locations or that going forward such access will not be used to attempt exactly the same thing.

35.  Setting those "attempts" to the side, the JPLs' current counsel cite to only two interactions with Debtors' counsel related to their so-called request for information (a December 1 Zoom call and a December 7 letter), both of which occurred less than a week before the JPLs filed this request for urgent relief.  To the extent any exigency does exist—it does not—it resulted entirely from the JPLs' failure to engage with Debtors' counsel on the issue.  The JPLs' dilatory behavior should not be rewarded by now having their Motions heard on an expedited basis.

36.  Still more, the JPLs' Motions belie any claim of exigency.  The JPLs submit that an expedited hearing is warranted because there is a "risk that the Joint Provisional Liquidators will be unable to identify, locate, and protect assets at risk of dissipation" and "there is an additional risk that critical information will be automatically purged and forever lost." (Motion to Compel ¶ 14.)  The JPLs acknowledge, however, that the Debtors have "created a recent 'clone' of the live database" in order to preserve the information sought.  (Motion to Compel, Ex. A.)  The JPLs fail to explain, nor could they, how information could be "purged and lost forever," when Debtors have already taken steps to preserve the information.  Similarly, the JPLs do not explain how access would help them to "protect assets at risk of dissipation."  These explanations are pretexts for the JPLs' true goal, to get access to the dynamic databases.  Indeed, if the JPLs had any serious concern about information being purged through automatic deletion, they would have identified the repositories as to which they are concerned and the date they believe such information would be purged.  They have not.

**CONCLUSION**

37. The JPLs have not identified any exigencies justifying shortened notice and the Motion to Shorten must be denied in all respects.

| | |
|---|---|
| Dated: December 12, 2022<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Adam G. Landis*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         bromleyj@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         kranzleya@sullcrom.com<br><br>*Proposed Counsel for the Debtors*<br>*and Debtors-in-Possession* |