```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                      .  Chapter 11
                                 .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,   .
                                 .
 5                               .  Courtroom No. 5
                                 .  824 Market Street
 6            Debtors.           .  Wilmington, Delaware 19801
                                 .
 7                               .  Wednesday, December 14, 2022
     . . . . . . . . . . . . . . .  11:00 a.m.
 8

 9                         TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE JOHN T. DORSEY
                CHIEF UNITED STATES BANKRUPTCY JUDGE
10

     APPEARANCES:
11
     For the Debtor:          Adam Landis, Esquire
12                            Kimberly Brown, Esquire
                              Matthew Pierce, Esquire
13                            LANDIS RATH & COBB LLP
                              919 Market Street, Suite 1800
14                            Wilmington, Delaware 19801

15                            Andrew G. Dietderich, Esquire
                              James L. Bromley, Esquire
16                            Brian D. Glueckstein, Esquire
                              Alexa J. Kranzley, Esquire
17                            SULLIVAN & CROMWELL LLP
                              125 Broad Street
18                            New York, NY 10004

19   (APPEARANCES CONTINUED)

20   Audio Operator:          Danielle Gadson

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For the U.S. Trustee:      Juliet Sarkessian, Esquire
                    OFFICE OF THE UNITED STATES TRUSTEE
                    844 King Street, Suite 2207
                    Lockbox 35
                    Wilmington, Delaware 19801

For the Joint
Provisional
Liquidators:             Christopher Shore, Esquire
                    WHITE & CASE LLP
                    1221 Avenue of the Americas
                    New York, New York 10020

For the Bohemian
Securities Exchange
Commission:             Kenneth Aulet, Esquire
                    BROWN RUDNICK LLP
                    7 Times Square
                    New York, New York 10036

                    Blair Rinne, Esquire
                    BROWN RUDNICK LLP
                    One Financial Center
                    Boston, Massachusetts 02111

1

INDEX

2

MOTIONS:                                                        PAGE

3

Agenda

4  Item 1: Motion of the Joint Provisional Liquidators of    4
              FTX Digital Markets Ltd. for Entry of an Order
5              Shortening the Notice and Objection Periods with
              Respect to the Emergency Motion of the Joint
6              Provisional Liquidators of FTX Digital Markets
              Ltd. (I) for Relief from Automatic Stay and (II)
7              to Compel Turnover of Electronic Records Under
              Sections 542, 1519(A)(3), 1521(A)(7) and 1522 of
8              the Bankruptcy Code
              [D.I. 199, filed on December 9, 2022]

9

10              Court's Ruling:                                 21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 11:01 a.m.)

2          THE COURT:  Good morning.  This is Judge Dorsey.

3  We're on the record in FTX Trading Limited, Case Number 22-

4  11068.

5          Before we begin let me just remind everyone that

6  even though this hearing is remote it is a formal Court

7  hearing.  So if you are not speaking or not presenting,

8  please, keep your camera off and your lines muted.

9  Interruptions will not be tolerated and you will be removed

10  if you interrupt the proceeding and not be allowed back in.

11          So with that -- I requested this hearing on the

12  motion to shorten that was filed by the joint liquidators in

13  the Bohemian proceeding.  Ordinarily I wouldn't hold a

14  hearing on a motion to shorten, but I wanted to take the

15  opportunity to talk to the parties about where we are in this

16  case and what's going on.

17          It seems to me -- I understand that there is a lot

18  of heated debate between the parties here over what is

19  happening, but I do believe that there must be some path

20  forward here to resolve the concerns of everybody involved.

21  I think everyone would agree -- Mr. Bromley, I will give you

22  the chance to tell me I'm wrong, if I'm wrong, but I think

23  everyone agrees that the joint liquidators are entitled to

24  the data and information that relates to their debtor entity

25  that is in liquidation in the Bahamas.

1          Is there any dispute about that issue, Mr. Bromley?

2          MR. BROMLEY:  Yes, there is, Your Honor.

3          THE COURT:  I'm sorry, there is a dispute or, no,

4    there isn't?

5          MR. BROMLEY:  Yes, there is a dispute.

6          THE COURT:  Okay.  Over whether they're entitled to

7    their own information?

8          MR. BROMLEY:  Well, the requests are not just for

9    information, Your Honor.  The requests are for dynamic access

10   to live systems.  We believe that that is inappropriate.  So

11   in terms of static information we are certainly happy to sit

12   down and talk about that.  Dynamic access we believe should

13   not be permitted.

14         THE COURT:  Well how are they going to run their

15   case in the Bahamas if they don't have access, dynamic

16   access, to, at least, their own information?

17         I can separate this out.  Is there a distinction --

18   are you telling me there is an issue with regard to -- that

19   the only way to provide this information is to provide them

20   access to the entire system and there is some concern about

21   that or is there a way to provide just dynamic access to

22   their own information?

23         MR. BROMLEY:  I think there's a way, Your Honor, at

24   this point, right, to provide static information and we are

25   happy to sit down, and have a meet and confer about how that

1   static information might be able to be provided.

2          The concern we have with respect to dynamic access

3   to live systems is that we believe that any dynamic access

4   will be provided immediately to the Government of the Bahamas

5   and, in particular, the Securities Commission.  And to date

6   any access that the Securities Commission has had to our

7   systems has led to the relief from the debtors of digital

8   assets.  And we do not believe that that should be permitted.

9          We do not believe that that should be permitted.

10  We do not believe that there is a separation between the

11  JPL's and the Securities Commission at this point in time,

12  certainly no separation that provides the debtors with

13  comfort that whatever is provided to the JPL's will not be

14  provided immediately to the Securities Commission.

15          THE COURT:  Well, Mr. Shore, what is the

16  relationship between the JPL's and the Securities Commission

17  in the Bahamas?

18      (No verbal response)

19          THE COURT:  You're muted, Mr. Shore.

20          MR. SHORE:  I'd like to, at some point, speak to

21  the larger issues Your Honor is referencing and certainly

22  respond to what Mr. Bromley is saying.

23          In response to your question the JPL's are the

24  analog would be a Chapter 11 Trustee.  The commission's

25  analog is the SEC.  So no more than Mr. Bromley can be blamed

1  for or be accused of being an arm of the SEC, the JPL's are a

2  Court created trustee liquidating FTX Digital.

3          THE COURT:  Well is there --

4          MR. BROMLEY:  Your Honor --

5          THE COURT:  -- any -- let me just get to my point;

6  is there any use in my ordering the parties to mediate this

7  issue or, at least, sit down and talk to each other about

8  this issue, or is -- are we to the point where I'm going to

9  have to have a full evidentiary hearing on these issues and

10 make a decision?

11         MR. SHORE:  I'd like to think that the parties can

12 work it out.  The one situation we can't be held into or put

13 into is having that meet and confer, having the debtors raise

14 these, sort of, issues and, essentially, set the bar as being

15 the JPL's must prove that there was no collusion between the

16 commission and SBF before they can get dynamic access to the

17 information and then have everybody disappear for the

18 holidays so, essentially, we get timed out.

19         So if what is going to happen here, which is what I

20 was going to propose, is that the Court set this hearing for

21 Friday, Monday, I know Your Honor has travel plans, but at

22 least some control date so that if we don't get to resolution

23 we can, at least, come back to Your Honor with discreet

24 issues to be resolved.

25         So, for example, we have made very clear to the

1  Sullivan & Cromwell team how about just getting us a clone of
2  the system.  We don't need dynamic information right now.  We
3  can get back their access right now.  Can't you just get us a
4  clone?  And Mr. Bromley is saying what I want to do is sit
5  down with Mr. Shore, have our respective teams sit down, and
6  they can discuss the shape of a clone.

7          That is not going to work.  He can't appear in
8  Court today and say we have no problem giving a clone, but
9  they just need to sit down and talk to us about what that
10 clone is going to look like.  It's got to be resolved in the
11 next couple of days, not weeks, certainly not months.

12         MR. BROMLEY:  Your Honor, that is a conclusion, not
13 an argument.  Mr. Shore has given no indication as to why
14 there is anything that needs to be done in the next couple of
15 days, first of all.

16         Second, Mr. Shore and his colleagues have not
17 simply said we are willing to take a clone of static
18 information.  Their motion asks for live dynamic access.  The
19 information that we have provided to the Court, and we
20 provided yesterday to Congress from Mr. Ray's testimony,
21 indicates that the Securities Commission of the Bahamas has
22 already collaborated with the JPL's to obtain access to
23 digital assets and to mint tokens.  The JPL's have been
24 involved in that.  The JPL's went to Court after the fact to
25 get approval to approve violations of the automatic stay that

1    occurred.

2         Mr. Shore can shake his head all he wants, that is

3    what the evidence shows.

4         So we are happy to sit down.  We're happy to have a

5    mediation.  We're happy to talk about providing static

6    information, but I will tell Your Honor with respect to

7    dynamic information we can have a hearing on Friday, we will

8    go immediately -- if the ruling is against us we will go

9    immediately on appeal and seek a stay pending appeal.

10        This is dangerous information.  We do not trust the

11   Bohemian Government and because of the evidence we have in

12   terms of the actions to date of the JPL's we simply don't

13   trust that the JPL's will be able to hold this information

14   and not provide it to the Bohemian Government.

15        MR. SHORE:  Your Honor, while I appreciate your

16   desire to shortcut this can we just maybe get into the

17   hearing because what was just said is exactly what a Chapter

18   15 is not supposed to be.

19        MR. BROMLEY:  And we don't have a Chapter 15

20   approval yet either.

21        MR. SHORE:  Okay.  All right.

22        THE COURT:  Hold on.  I am not going forward with

23   the hearing today.  It's not going to be Friday either.  It's

24   probably not going to be before next year because this is

25   going to be a full evidentiary hearing and for an evidentiary

1   hearing it's live, and I expect witnesses in the Courtroom,

2   and presented live before me so I can judge credibility.

3   That is not something that can happen Friday, or Monday, or

4   even before the Christmas holiday.

5           So if we are going to have to go forward with a

6   hearing it's going to be in January.  I can give the parties

7   January 6th beginning at 9:30 a.m.  As I said, it will be a

8   live hearing.

9           These are serious allegations and, obviously, this

10  is a gating issue that I am going to have to resolve before

11  we can move forward with how to proceed with the dynamic

12  between the Bohemian proceeding and this proceeding. I am

13  hoping there is still some way to resolve this before we get

14  to January 6th.  I would highly encourage the parties to talk

15  to each other and if you think it would be productive to find

16  a mediator to help mediate that issue as well.

17          I don't know if there is a way to fashion an order,

18  Mr. Bromley, that would limit the ability of the JPL's

19  similar to what you might have in a 502 motion order that

20  limits the ability of the JPL's to share that information.

21  They can share it with their advisors, obviously, and

22  themselves, and that's it.  Maybe that is a possibility of a

23  way to move forward, but I will leave that to the parties to

24  see if you can work something out.  If not I will hear

25  everybody on the 6th.

1        MR. SHORE:  Your Honor, if I may be heard for a

2   little bit on this because I think there is another

3   perspective to this and I think Mr. Bromley is wrong when he

4   says this is not a Chapter 15.  We filed.  We have come and

5   asked for provisional relief and ultimately what I am going

6   to ask Your Honor, which you were mentioning, is I would like

7   you to keep a controlled date on Friday to see if Your Honor

8   can't resolve not issues about whether the Bohemian

9   Government was in cahoots with SBF which, I agree, would be

10  an evidentiary hearing, but rather whether or not we can

11  fashion an order that provides protection for the legitimate

12  concerns that Mr. Bromley has raised.

13        THE COURT:  Well --

14        MR. SHORE:  I've got to say, in the last 30 years I

15  have seen a lot of cases go off the rails where accusations

16  like this fly and every hearing turns into a charge

17  referendum on the case, and it becomes overly expensive,

18  burdensome on the Court, and value destructive.

19        So when the CRO of the debtor appears and testifies

20  in front of Congress with respect to what the debtor is

21  doing, the investigations that are going on, and that a

22  foreign Government has colluded with somebody who is jailed

23  right now we're, at least, tilting on the rails.

24        I just -- on behalf of my client it may come to

25  that, but its way too early in our case for this case to

1  devolve.  I agree with Your Honor, there has got to be a way

2  the professionals can work this out without getting into the

3  kind of accusations that are flying.

4         THE COURT:  All right.

5         MR. SHORE:  To be clear, we filed the pleading this

6  morning, Your Honor.  It attaches a declaration that Mr. Ray

7  could not have seen, nor counsel could have seen, which

8  belies this notion that what the commission was doing was

9  working with SBF.  In fact, the email they attach where SBF

10  says --

11         THE COURT:  Well, I'm not going to get into the

12  merits of it at this point, Mr. Shore.  We will talk about

13  that on the 6th if we get to it.

14         MR. SHORE:  Okay.  But recognize --

15         THE COURT:  Hold on, Mr. Shore.  I want to move on.

16         MR. SHORE:  Sure.

17         THE COURT:  Let's talk about the 16th.  We have the

18  motion objecting to the seal by the U.S. Trustee.  Is the

19  U.S. Trustee on the line, someone from the U.S. Trustee?

20         MS. SARKESSIAN:  Yes, Your Honor.  Juliet

21  Sarkessian for the U.S. Trustee.

22         THE COURT:  Ms. Sarkessian, I have some concerns

23  about that hearing going forward on Friday from a number of

24  perspectives.

25         Number one, the motion implicates individual

1  creditors and there is no creditor's committee yet.  I think

2  the creditor's committee would want to weigh-in on that

3  motion.  Do we know yet when the committee will be formed?

4          MS. SARKESSIAN:  Your Honor, first, I -- maybe

5  apology is not the right word, but we had hopes to have a

6  committee formed by this time.  We had a tremendous response

7  and people are located all over the world.  Unfortunately it

8  becomes a little bit difficult when people are in very

9  different time zones, and there is a lot of complicated

10 information, as I'm sure Your Honor can imagine.

11         So we are moving as expeditiously as possible.  You

12 know, and we hope to be filing a notice of appointment very

13 soon. I can't say anything more than that other than very

14 soon.

15         I do have concerns.  You know, they, obviously,

16 have to choose counsel.  So, you know, I think there

17 certainly is a reasonable possibility that they might not

18 have counsel by Friday or maybe they have it by Thursday, but

19 there is not, you know, as much time as one would like for

20 them to have.

21         So I mean Your Honor certainly brings up a valid

22 concern.  We had hoped it would be different.  We had hoped

23 that we would have a committee formed by this time, but the

24 reality is due to circumstances outside of our control it has

25 not yet happened.

1          THE COURT:  Okay.  I also noticed the Trustee also

2  objected to a consolidated creditor matrix on similar grounds

3  on the redaction of the creditor information, I believe.

4          MS. SARKESSIAN:  Your Honor, that was the motion I

5  was talking about.

6          THE COURT:  Oh, okay.

7          MS. SARKESSIAN:  So there was two motions, seal

8  motions; one of them relates to the

9  indemnification/exculpation motion and I will allow the

10  debtor to address that, but understanding, based on

11  discussions as well as the agenda, is that they are agreeing

12  for that to be unsealed.

13          THE COURT:  Okay.

14          MS. SARKESSIAN:  With respect to the other motion

15  relates to the creditor matrix, schedules and statements, top

16  50 list, and pretty much any document in the case that would

17  have names or addresses of creditors or customer/creditors.

18          THE COURT:  Okay.

19          MS. SARKESSIAN:  So that is the motion I was

20  discussing that we did file an objection to.

21          THE COURT:  Okay.

22          MS. SARKESSIAN:  We have not technically filed an

23  objection to the other motion because they said, effectively,

24  they're -- I don't know if withdrawal is the right word, but

25  they're not going to pursue that relief on a final basis.

1        THE COURT:  Okay.  I also have the motion to

2   intervene filed by members of the media.  I don't know if

3   anyone plans on objecting to the motion to intervene, but I

4   certainly want to give the media the opportunity to

5   participate in that hearing as well.

6        So, Ms. Sarkessian, should we -- should I set

7   another date now in January or do you want to wait to see

8   when the committee is formed, and retains counsel, and has an

9   opportunity to talk to you about how to go forward?

10       MS. SARKESSIAN:  So, Your Honor, I just want to be

11  clear; Your Honor is asking that the hearing on Friday on the

12  motion to seal the creditor matrix be put off until after the

13  committee is formed?

14       THE COURT:  Yes.

15       MS. SARKESSIAN:  I think, Your Honor -- okay.  So

16  you want a date in January.  I guess my feeling is it would

17  probably be best if we could schedule that now and -- I mean,

18  I think a committee is going to be formed in very short

19  order.  We are not going to be in a situation, I pray, that

20  we're in January and we don't have a committee.  So I think

21  that scheduling it now would actually be very helpful.

22       THE COURT:  Okay.  My first week of January is

23  booked because I have a two day evidentiary in another

24  Chapter 15 on recognition for the 4th and the 5th.  I just

25  scheduled the 6th for a hearing on the relief from stay from

1 the liquidators. So it would have to be pushed into the week

2 of January 9th.

3          MR. BROMLEY:  We do have a hearing, Your Honor,

4 already scheduled for the 11th, our second day hearing.  We

5 could put it on that day.

6          THE COURT:  I do see that, yes.  All right.

7          Does that work, Ms. Sarkessian, to add it to the

8 agenda for the second day hearing?

9          MS. SARKESSIAN:  I believe so, Your Honor.  I don't

10 see any problem with respect to that.  I don't know what the

11 debtors intend, if they intend to put, you know, any

12 witnesses on, but I don't expect.  My hope would be that it

13 would not be -- if there is testimony that it would not be

14 extensive.  So hopefully that would fit into -- if I could

15 just ask Your Honor how much time you have on the 11th.

16          THE COURT:  Well I have --

17          MS. SARKESSIAN:  If it's only an hour that might be

18 a problem.

19          THE COURT:  -- it scheduled beginning at 10 for the

20 second day hearing.  I have three other hearings in the

21 afternoon.  I probably can't -- they're not going to come

22 off, at least two of them are not going to come off because

23 they're contested hearings. So we would probably have -- I

24 can move it -- we could start at 9 a.m. and you would have

25 until 12:30.  I don't know what other objections might be

1 raised at that time to any of the motions that were presented

2 at the first day hearing.

3          I assume, Mr. Bromley, you are going to be calling

4 witnesses for the seal motion.

5          MR. BROMLEY:  We will have a declarant, Your Honor.

6 And that is assuming that we are not able to resolve the

7 issues with the creditors committee once they're appointed.

8          THE COURT:  Well if there is going to be cross the

9 witness have to be here even if it's a declarant.

10          MR. BROMLEY:  Correct.

11          THE COURT:  All right.  So let's move -- we're

12 going to move that hearing then, Ms. Sarkessian, and Mr.

13 Bromley, to the second day hearing on January 11th.

14          Mr. Bromley, circling back on what Ms. Sarkessian

15 said about the indemnification motion are we in agreement on

16 that one that is going to be unsealed?

17          MR. BROMLEY:  Yes, we are, Your Honor.

18          THE COURT:  Okay.

19          MS. SARKESSIAN:  Your Honor, if I could just ask a

20 favor for the start time for the hearing.  I am thinking, and

21 Mr. Bromley can indicate otherwise, I'm thinking that three

22 hours should be enough.  Just based on my schedule it would

23 be much easier if we started at 9:30 if that did not

24 inconvenience the Court.

25          THE COURT:  Go ahead, Mr. Bromley.

1          MR. BROMLEY:  We do have other things -- I'm sorry,

2   Your Honor, it is our second day hearing so we do have a fair

3   amount on the calendar for that day.  We are, obviously,

4   going to work to resolve all of those issues.  I do respect

5   that Ms. Sarkessian's time concerns, but --

6          MS. SARKESSIAN:  That's okay.  That's okay.  If

7   there is any issue we will start at 9.  I will make the

8   arrangements.

9          MR. BROMLEY:  Okay.  We will continue to work to

10  resolve the issues just like we resolved the issues for the

11  sealing on Friday.

12          THE COURT:  All right. The other possibility is we

13  can always -- I can try to rearrange and move my other

14  hearings in the afternoon to the 12th, the next day.  I will

15  ask my Chambers to do that so that that would free up the

16  entire day for this case because I do have time.  The other

17  option is if we can't move any of those off from the 11th I

18  have time on the 12th in the afternoon that we can always

19  continue the second day hearing on the 12th in the afternoon.

20          MS. SARKESSIAN:  I mean, Your Honor, from my

21  perspective I -- again, even with the other motions that are

22  on for that date I don't really expect this would take more

23  than three hours or three and a half hours.  I would not want

24  to inconvenience the Court with trying to move the afternoon

25  hearings, but I also don't know what other motions or

1  applications the debtors might be filing that, you know,

2  retention applications and what not that could be scheduled.

3       If the debtors feel that it is helpful for the

4  Court to try to move those afternoon hearings I don't object.

5  I don't want to inconvenience other people if it's not

6  necessary.

7       THE COURT:  All right.  Well that brings me to the

8  next issue which is the liquidator's motion to dismiss that

9  was filed on Monday and set for a hearing on the 11th which,

10  Mr. Shore, in the future if you -- that was not an omnibus

11  date, that is a second day hearing.  So it was not an open

12  invitation to schedule something.  You need to contact

13  Chambers to request a date for -- particularly a motion like

14  a motion to dismiss. I mean that is going to be an

15  evidentiary.

16       MR. SHORE:  Understood, Your Honor.  We will do

17  that in the future.  I will discuss it with Cleary or

18  Sullivan about when that can go forward.

19       THE COURT:  Yeah, let's find another date to handle

20  that one.

21       All right.  That brings me to, I wanted to ask

22  about the motion for recognition.  Where are we are on that,

23  Mr. Shore?  Are we going forward?  What is happening?

24       MR. SHORE:  We are still trying to see if we

25  couldn't resolve that. I think that is going to be part of a

1  package of discussions that have to occur kind of now to see

2  how we are proceeding.

3  　　　　THE COURT:  All right.  Well let's try to get that

4  resolved as well here.

5  　　　　So let me circle back then to the request by Mr.

6  Shore to have the 16th as -- I guess it would be kind of a

7  status conference on where the parties are on the issue of

8  the relief from stay.

9  　　　　Mr. Bromley, do you have a position on that?

10  Everyone was going to be available anyway.  So I assume

11  everybody is available.

12  　　　　MR. BROMLEY:  We are available, Your Honor.  We

13  would like to have the opportunity to meet with the folks

14  from White & Case.  We would also like to include in that

15  conversation the Securities Commission of the Bahamas who we

16  think is an essential party to these conversations.

17  　　　　Our view is that we would be amenable to mediation.

18  We believe that before you go to mediation you should, at

19  least, sit down and try to talk about it.  We know that the

20  commission has US counsel because they have contacted us on

21  other matters.  We believe that hopefully now with Mr.

22  Bankman-Fried in custody in the Bahamas there might be a way

23  forward that we can move along with a cooperative

24  relationship.  If this is going to be an attempt to seize

25  control of these debtors' cases and move them to the Bahamas

1    we will fight them with all our strength.

2            THE COURT:  Let me ask: Is there anyone on the call

3    from the Bohemian Securities Commission just by chance?

4            MS. RINNE:  Yes, Your Honor.  This is Blair Rinne

5    from Brown Rudnick.

6            MR. AULET:  This is Kenneth Aulet also from Brown

7    Rudnick, Your Honor.

8            THE COURT:  You can turn your cameras on so I can

9    see you, please.

10           MR. AULET:  Just to be clear, Your Honor, while we

11   are attending the hearing to observe we are not entering an

12   appearance. The Bohemian Securities Commission is not

13   consenting to personal jurisdiction in this Court.

14           THE COURT:  Well I was only going to ask if you

15   were willing to sit down with the joint liquidators and the

16   debtors here to talk about a path forward.

17           MR. AULET:  Your Honor, we will take it back to our

18   client.  We are always happy to (indiscernible).

19           THE COURT:  I think it would be helpful.  It might

20   help resolve some of the concerns that the debtors here have

21   if they can talk to the commission.  So I would highly

22   recommend doing that and encourage the commission to

23   participate in that discussion.

24           So I will leave the 16th on then as a status

25   conference to see where we are on this issue on the motion

1  for relief from the automatic stay and the turnover of the

2  records.  We will go from there.

3       Did I set a date for that one?  I didn't set a

4  date.  We will talk about that on Friday, I guess.  That is

5  what I set for the 6th, right, January 6th.  So that is set

6  for the 6th.  We will discuss it on Friday, see where we are,

7  and see if it's necessary to go forward on the 6th.  So if

8  there is something else I can do to help accommodate the

9  party's attempts at mediation.

10       MR. SHORE:  What time on Friday, Your Honor?

11       THE COURT:  It is currently scheduled at 10 a.m.,

12  and we will just leave it at 10.

13       MR. SHORE:  Okay.  We will be busy between now and

14  then.

15       THE COURT:  Mr. Landis, you turned your camera on.

16  Do you have anything else?

17       MR. LANDIS:  Yes, I did, Your Honor.  I just wanted

18  to note for the record -- Adam Landis of Landis Rath & Cobb,

19  co-counsel to the debtors.

20       We will file an amended agenda reflecting Your

21  Honor's rulings in moving the various hearings.  We will get

22  that on file as soon as possible.

23       THE COURT:  Okay.  Great.  Thank you.  I appreciate

24  that.

25       Anything else then before we adjourn?

1    (No verbal response)

2         THE COURT:  Thank you.  I appreciate everyone

3  getting on the call on shortened notice and hopefully we can

4  continue to talk and move these things forward.  Until then I

5  will see everyone on Friday morning.

6         MR. BROMLEY:  Thank you very much, Your Honor.

7         THE COURT:  We're adjourned.

8     (Proceedings concluded at 11:29 a.m.)

9

10

11

12

13                           CERTIFICATION

14      I certify that the foregoing is a correct

15  transcript from the electronic sound recording of the

16  proceedings in the above-entitled matter to the best of my

17  knowledge and ability.

18

19  /s/ Mary Zajaczkowski                 December 14, 2022

20  Mary Zajaczkowski, CET-531

21  Certified Court Transcriptionist

22  For Reliable

23

24

25