UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

In re:

FTX TRANDING LTD., ET AL.,

       Debtor(s).

Chapter: 11

Case No: 22-11068 (JTD)
(Jointly Administered)

---

**STATE OF WISCONSIN'S JOINDER TO THE MOTION OF THE
UNITED STATES TRUSTEE FOR ENTRY OF AN ORDER
DIRECTING THE APPOINTMENT OF AN EXAMINER**

---

The State of Wisconsin, for its Department of Financial Institutions, joins the United States Trustee in his request to direct the appointment of an examiner pursuant to 11 U.S.C. § 1104 in the Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner. (Dkt. 176.)

1.      On November 11, 2022, Debtors FTX Trading Ltd., et al.,[1] filed a petition for Chapter 11 bankruptcy relief. The case is jointly-administered.

2.      The Wisconsin Department of Financial Institutions regulates the sale of securities in Wisconsin. *See generally* Wis. Stat. ch. 551.

3.      Under its enforcement and investigatory authority, Wisconsin is currently investigating the Debtors for potential state securities violations in

Michael D. Morris
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
608/266-3936
608/294-2907 (Fax)
morrismd@doj.state.wi.us

connection with their transacting of business with Wisconsin account holders. Upon information and belief, other state regulators are also investigating the Debtors.

4.    This case is unprecedented in its sheer magnitude of loss and potential criminal liability of its former CEO and other corporate officers. In fact, as the Court is now aware, the former CEO is now facing multiple federal charges for fraud, conspiracy to commit fraud, and conspiracy to commit money laundering. As one example of the many charges, according to the recently unsealed indictment in *United States v. Samuel Bankman-Fried*, Case No. 22-Crim-673, the former CEO "and others" knowingly devised "a scheme and artifice . . . to defraud customers of FTX.com by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda Research, [Mr.] Bankman-Fried's proprietary crypto hedge fund, and make investments."[2]

5.    In addition facing federal criminal charges, the Debtors' former CEO is also facing a federal civil complaint filed by the Securities and Exchange Commission.[3] The SEC's complaint alleges that the former CEO orchestrated "a massive, years-long fraud, diverting billions of dollars of [Debtors'] trading platform's customer funds for his own personal benefit."[4] It further charges that the

---

[1] The Debtors consist of 102 entities, a complete list of which is not listed herein but can be found on the website of the Debtors' claims agent. https://restructuring.ra.kroll.com/FTX/Home-Index

[2] Indictment available for download here: https://www.justice.gov/usao-sdny/press-release/file/1557571/download (visited December 20, 2022).

[3] https://www.sec.gov/news/press-release/2022-219 (visited December 20, 2022.)

[4] *Id.*

former CEO mislead the Debtors' customers and investors about the stability and fiscal responsibility of the Debtors and the security of their investments, "[b]ut from the start, Bankman-Fried improperly diverted customer assets . . . and then used those customer funds to make undisclosed venture investments, lavish real estate purchases, and large political donations."[5] The former CEO's money laundering and theft ultimately bled the Debtors (and their customers' accounts) dry, leaving a billions-dollar hole in the corporate balance sheet. "His brazen, multi-year scheme finally came to an end when FTX, Alameda, and their tangled web of affiliated entities filed for bankruptcy on November 11, 2022."[6]

6.    While the former CEO blamed the $8 billion hole in the company's balance sheet on "poor internal labeling" of accounts,[7] John J. Ray, III, the current CEO of the FTX Group calls it something else: "old fashioned embezzlement."[8]

7.    As further noted by Mr. Ray in his testimony before the House Financial Services Committee on December 13, 2022, his initial review of the FTX books and records reveals an "utter failure of corporate controls at every level of an organization, from the lack of financial statements to a complete failure of any internal controls or governance whatsoever."[9]

---

[5] *Id.*

[6] *Id.*

[7]    https://www.bloomberg.com/news/articles/2022-11-29/ftx-s-sam-bankman-fried-faces-questions-at-new-york-times-dealbook-summit

[8] Testimony of John J. Ray, III, CEO, FTX Debtors, December 13, 2022, House Financial Services Committee (opening statement).

[9] *Id.*

8.    Some of the unacceptable management practices at the FTX Group identified by Mr. Ray so far include:

- The use of computer infrastructure that gave individuals in senior management access to systems that stored customer assets, without security controls to prevent them from redirecting those assets;

- The storing of certain private keys to access hundreds of millions of dollars in crypto assets without effective security controls or encryption;

- The ability of Alameda, the crypto hedge fund within the FTX Group, to borrow funds held at FTX.com to be utilized for its own trading or investments without any effective limits;

- The commingling of assets;

- The lack of complete documentation for transactions involving nearly 500 investments made with FTX Group funds and assets;

- The absence of audited or reliable financial statements;

- The lack of personnel in financial and risk management functions, which are typically present in any company close to the size of FTX Group; and

- The absence of independent governance throughout the FTX Group.[10]

9.    Furthermore, Mr. Ray has concluded that FTX US, which was the exchange offering products and services to US citizens, was not operated independently from FTX.com as it should have been.[11]    Moreover, Mr. Ray has

---

[10] *Id.*
[11] *Id.*

identified an unspecified number of US accounts on the FTX.com exchange which should not have been permitted by FTX.[12]   In his testimony, Mr. Ray expressed concern regarding the potential lack of segregation of digital assets on the exchanges, as well as senior management's common control and access to the exchanges.[13]

10.    Although this is early days in the bankruptcy process, Mr. Ray has been able to confirm the following facts that merit deeper investigation and analysis by a neutral third party:

"*First*, customer assets from FTX.com were commingled with assets from the Alameda trading platform.

*Second*, Alameda used client funds to engage in margin trading which exposed customer funds to massive losses.

*Third,* the FTX Group went on a spending binge in late 2021 through 2022, during which approximately $5 billion was spent buying a myriad of businesses and investments, many of which may be worth only a fraction of what was paid for them.

*Fourth*, loans and other payments were made to insiders in excess of $1 billion.

*Fifth*, Alameda's business model as a market maker required deploying funds to various third party exchanges which were inherently unsafe, and further

---

[12] Mr. Ray's live testimony before the House Financial Services Committee 12/13/2022.

exacerbated by the limited protections offered in certain foreign jurisdictions."[14]

11.    Bankruptcy Code section 1104(c) governs the appointment of an examiner. It provides, in pertinent part:

> on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>>
>> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

12.    Here, as the U.S. Trustee's Office persuasively argues, the appointment of an examiner in this case is mandatory under subsection (2). That subsection "does not leave any room for the court to exercise discretion about whether an examiner should be appointed, as long as the $5 million threshold is met and a motion for appointment of an examiner is made by a party in interest."[15]

13.    Moreover, appointment is also warranted under subsection (1) because it is in the interests of creditors and other interests of the estate. The criteria to satisfy this subsection is the same as for the appointment of a trustee under section

---

[13] *Id.*

[14] *Id.*

[15] 7 Collier on Bankruptcy ¶ 1104.03[2][b] (2022).

1104(a), but it is a lower burden to meet. "[T]he party seeking an examiner should not have as high a burden as it would have in seeking a trustee."[16] Here, the estate, creditors, and society writ large would benefit from the investigation of a neutral, third-party, as the U.S. Trustee's motion argues. As part of the broader societal interest, state and federal government regulators would benefit from a neutral fact-finder's investigation, which would enable them to learn from a disinterested source what happened and how it happened under the current regulatory framework (or lack thereof to address this particular industry). These answers are necessary so that government regulators can put into place an effective regulatory framework to ensure that something like this—a colossal fraud costing billions of dollars in economic waste—never happens again.

14.    Further, it bears noting that *every one* of the specified types of misconduct in section 1104(c) is in play in this case: "fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the [Debtors'] affairs." *Id.* As discussed above, fraud, dishonesty, and misconduct are central themes of the charges the Debtors' former CEO is currently facing in both the federal criminal case and the SEC complaint. As for incompetence, mismanagement, and irregularity of management, the Court need look no further than the frank testimony of the Debtors' current CEO, Mr. Ray, discussed above. That is not to suggest or in any way impugn Mr. Ray or the current corporate

---

[16] *Id.* at [3].

leadership, but it is telling that the Debtors' prior officers check every one of these boxes, which only further supports the need for a neutral fact finder to investigate.

15.    Appointment of an examiner here is also consistent with other high-profile cryptocurrency bankruptcy cases. *In re Celsius*, Case No. 22-10964-MG (Bankr. Del. 2022) (appointing examiner due to multiple factors, including potential mismanagement of the businesses, fraud, and the need for answers from a trusted third party given the high-profile, rapid collapse of the business and the sheer magnitude of the losses). Indeed, this case is strikingly similar to *Celsius*, except that the losses and criminal conduct here are *much* worse. If *Celsius* warranted an examiner under subsection (2), this case absolutely does.

16.    For the foregoing reasons, the State of Wisconsin joins the U.S. Trustee in his motion for an order directing the appointment of an examiner.


Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/Michael D. Morris
MICHAEL D. MORRIS
Assistant Attorney General
State Bar #1112934

Attorneys for Wisconsin Department of
Financial Institutions

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857

(608) 266-3936
(608) 294-2907 (Fax)
morrismd@doj.state.wi.us

---

## CERTIFICATE OF SERVICE

---

I certify that on the below date I caused to be served the foregoing via the ECF

system on the parties who are registered to receive ECF notification in this case.

Dated: December 21, 2022.

s/Michael D. Morris
MICHAEL D. MORRIS
Assistant Attorney General