# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date**: January 11, 2023 at 9:00 a.m. (ET) |
| | **Objection Deadline**: January 4, 2023 at 4:00 p.m. (ET) |

**DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN
UNEXPIRED LEASES EFFECTIVE AS OF THE REJECTION
DATE AND (II) ABANDON PERSONAL
PROPERTY, IF ANY, ASSOCIATED THEREWITH**

**PARTIES RECEIVING NOTICE OF THIS OMNIBUS MOTION SHOULD LOCATE
THEIR NAMES AND CORRESPONDING LEASES IN EXHIBIT 1 TO THE
PROPOSED ORDER ATTACHED TO THE MOTION.**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order,

substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a),

365(a) and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the

"Bankruptcy Code") and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing the Debtors to (i) reject certain unexpired leases (each, a

"Lease," and collectively, the "Leases") of nonresidential real property for certain premises set

forth on Exhibit 1 to the Order, effective as of the date provided for such Leases in Exhibit 1 to

the Order (such date for a given Lease, the "Rejection Date") and (ii) abandon the Debtors'

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete
list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

personal property, if any, associated therewith (the "Personal Property").  In support of this

Motion, the Debtors respectfully state as follows:

## Background

1.        On November 11 and November 14, 2022,[2] the Debtors filed with the

Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate

their businesses and manage their properties as debtors-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the

"Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022

[D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.        Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93]

(collectively, the "First Day Declarations").

## Facts Specific to the Relief Requested

A.        **Rejection of the Leases**

3.        The Debtors and their advisors are in the process of reviewing and

analyzing the leases to which the Debtors are parties.  During this process, the Debtors have

considered, among other things, the ongoing value and projected costs of maintaining the Leases.

---

2        November 11, 2022 is the petition date for all Debtors, except for Debtor West Realm Shires Inc.

Each of the Leases previously served as office space for the Debtors. The Debtors have determined that there is no longer a need for the Leases going forward as these premises are no longer being utilized by the Debtors. By rejecting the Leases as of the Rejection Date, the Debtors will save millions of dollars in total rent and associated costs. Absent rejection, the Debtors would be obligated to pay rent and associated costs even though the Debtors are not occupying or utilizing any of the leased premises. Moreover, in addition to the Debtors' obligation to pay rent and other associated costs under the Leases, the Debtors would be obligated to pay certain real property taxes, utilities, insurance and other related charges associated with the Leases. The Debtors have determined in their business judgment that the costs of the Leases eclipse any marginal benefits that could potentially be achieved from assignments or subleases of the Leases.

4.     Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' business judgment, the Debtors believe that the rejection of the Leases as of the applicable Rejection Date is in the best interests of the Debtors and their estates. A description of each Lease the Debtors intend to reject is set forth on Exhibit 1 to the Order.

**B.     Abandonment of Personal Property**

5.     During the ordinary course of business, the Debtors accumulated certain Personal Property in the leased premises, which includes, among other things, equipment, furniture and fixtures of relatively inconsequential value. Because the Debtors intend to reject the Leases, the Personal Property located on the leased premises will no longer be necessary for the Debtors. The expected time and costs associated with gathering and liquidating the Personal Property far exceeds any potential return for these items. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' business judgment, the

Debtors submit that abandonment of the Personal Property is in the best interests of the Debtors and their estates.

## Jurisdiction

6.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

7.      By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to (i) reject the Leases, effective as of the Rejection Date, and (ii) abandon Personal Property, if any, associated therewith.  The Debtors and their estates reserve any and all rights to assert that the Leases are not unexpired leases, and nothing included in, or omitted from, this Motion shall impair, prejudice, waive or otherwise affect such rights.

## Basis for Relief

**A.      Rejection of the Leases Reflects the Debtors' Business Judgment.**

8.      The Debtors have determined that the Leases are not integral to the

Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates and present

burdensome liabilities.  Accordingly, the Debtors' decision to reject the Leases is an exercise of

business judgment, and the rejection should be approved.

9.       Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject any … unexpired lease of the debtor." 11 U.S.C.

§ 365(a).  "Courts may use § 365 to free a [debtor] from burdensome duties that hinder its

reorganization." *In re Exide Techs*., 607 F.3d 957, 967 (3d Cir. 2010); *NLRB* v. *Bildisco &*

*Bildisco* (*In re Bildisco*), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory

contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release

the debtor's estate from burdensome obligations that can impede a successful reorganization.").

10.      The Debtors' rejection of an executory contract or unexpired lease is

governed by the "business judgment" standard.  *See Grp. of Institutional Inv'rs, Inc.* v. *Chi.,*

*Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943) (noting that "the question whether a

lease should be rejected . . . is one of business judgment"); *In re Tayfur,* 2015 WL 1219029, at

*5 (3d. Cir. 2015) (same); *In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513

("The usual test for rejection of an executory contract is simply whether rejection would benefit

the estate, the 'business judgment' test."); *accord In re HQ Glob. Holdings, Inc.*, 290 B.R. 507,

511 (Bankr. D. Del. 2003).

11.      In applying the business judgment standard, bankruptcy courts give

deference to a debtor's decision to assume or reject leases.  *See, e.g., Sharon Steel Corp.* v. *Nat'l*

*Fuel Gas Distrib. Corp*., 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service

agreement as a sound exercise of the debtor's business judgment when the bankruptcy court

found that such rejection would benefit the debtors' estate); *In re Caribbean Petroleum Corp*.,

444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.*, 261 B.R.

103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

12.     The Debtors submit that rejection of the Leases effective as of the Rejection Date is within the Debtors' business judgment and is in the best interests of their estates.  Any continued expense in maintaining the Leases is unnecessary for the estates.  The Debtors also believe any benefit in attempting to identify a potential party to acquire the Leases would likely be substantially outweighed by the cost of maintaining the Leases and a hindrance to their efforts in these Chapter 11 Cases.  Rejection of the Leases will save the Debtors millions of dollars in total rent and associated costs.

13.     Courts in this district have routinely granted relief similar to the relief requested herein.  *See, e.g. In re First Guaranty Mortgage Corp.*, 22-10584 (CTG) (Sept. 14, 2022) [D.I. 458] (authorizing debtors to reject certain unexpired leases effective as of the rejection date); *In re Highpoint Resources Corp.*, 21-10565 (CSS) (March, 31, 2021) [D.I. 152] (same); *In re Global Eagle Entertainment Inc.*, 20-11835 (JTD) (Aug. 27, 2020) [D.I. 264] (same); *In re RTI Holding Company, LLC*, 20-12456 (JTD) (Oct. 22, 2020) [D.I. 179] (same); *In re Extraction Oil & Gas, Inc.*, 20-11548 (CSS) (July 13, 2020) [D.I. 251] (same); *In re GNC Holdings, Inc.* 20-11662 (KBO) (June 20, 2020) [D.I. 477] (same).

B.     **Deeming the Leases Rejected *Nunc Pro Tunc* to, and Effective as of, the Rejection Date is Appropriate.**

14.     Bankruptcy courts are empowered to grant retroactive rejection of a contract or lease under Bankruptcy Code sections 105(a) and 365(a).  *See SCS Co.* v. *Peter J. Schmitt Co.*, 1995 WL 1772010, at *2 (D. Del. May 15, 1995) (noting that a bankruptcy court has authority to select a retroactive date for the effective date of a lease's rejection); *In re Rupari Holding Corp.*, 2017 WL 5903498, at *6 (Bankr. D. Del. Nov. 28, 2017) (authorizing rejection of employment agreements *nunc pro tunc* to, and effective as of, a date before the debtor filed

the motion to reject the same where debtor unequivocally communicated to the employees that it

no longer required their services at the closing of the sale).

15.     Courts in this district and elsewhere have held that a bankruptcy court

may, in its discretion, authorize rejection retroactively to a date before entry of an order

authorizing such rejection where the balance of equities favors such relief.  *See In re Thinking*

*Machs. Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (stating that "rejection under section 365(a)

does not take effect until judicial approval is secured, but the approving court has the equitable

power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305

B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is

derived from the bankruptcy court's equitable powers so long as it promotes the purposes of §

365(a)"); *In re CCI Wireless, LLC*, 297 B.R. 133,140 (D. Colo. 2003) (holding that a "court has

authority under section 365(d)(3) to set the effective date of rejection at least as early as the

filing date of the motion to reject").

16.     In this instance, the balance of the equities favors the rejection of the

Leases *nunc pro tunc* to, and effective as of, the Rejection Date.  Without a retroactive date of

rejection, the Debtors will be potentially forced to incur unnecessary administrative costs for

Leases that do not provide any benefits to the Debtors and their estates.  No Lease counterparty

is harmed by rejection of the Leases *nunc pro tunc* to the applicable Rejection Date because they

are each on notice as of the filing of the Motion, and can as of that date start preparing for

rejection and mitigating damages.  The Debtors anticipate filing a motion to establish a bar date

in these Chapter 11 Cases and the Lease counterparties shall have until the date fixed by this

Court to file any and all claims for damages arising from the Debtors' rejection of the Leases.

Based upon the foregoing, the Debtors submit that *nunc pro tunc* rejection of the Leases is

supported by the equities of these Chapter 11 Cases.

17.     Courts in this district routinely grant *nunc pro tunc* relief similar to that requested herein.  *See, e.g., In re First Guaranty Mortgage Corporation*, 22-10584 (CTG) (Sept. 14, 2022) [D.I. 458] (authorizing debtors to reject certain unexpired leases *nunc pro tunc* to, and effective as of, the date the motion to reject was filed); *Alex and Ani, LLC*, 21-10918 (CTG) (Jul. 15, 2021) [D.I. 200] (same); *In re RTI Holding Company, LLC*, 20-12456 (JTD) (Oct. 22, 2020) [D.I. 179] (same); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (March 12, 2020) [D.I. 406] (same).

**C.     Abandonment of Remaining Personal Property is Appropriate Under Section 554(a) of the Bankruptcy Code.**

18.     Section 554(a) of the Bankruptcy Code provides that a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare.  *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations are relevant under the instant facts.

19.     The Debtors' professionals have already examined each of the leased premises in order to remove property that may be necessary for the administration of the Chapter 11 Cases or may otherwise have value to the estates.  The Debtors believe that any Personal Property left at the leased premises is of inconsequential value to the Debtors' estates, and the costs to the Debtors of retrieving, marketing, reselling or storing the Personal Property exceeds any realistic economic benefit that might be realized by selling or retaining such property. Accordingly, the Debtors have determined, in the exercise of their business judgment, that abandonment of the Personal Property will maximize value for the benefit of all parties in interest.

{1368.002-W0069440.}                                                -8-

20.     Courts in this district routinely grant relief similar to that requested herein. *See, e.g., In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (March 12, 2020) [D.I. 406] (authorizing the Debtors to abandon personal property, if any, that may be located on leased premises that are subject to a rejected lease); *In re Things Remembered, Inc.*, 19-10234 (KBO) (Feb. 28, 2019) [D.I. 218] (same); *In re Charming Charlie Holdings Inc.*, 17-12906 (CSS) (Jan. 10, 2018) [D.I. 285] (same); *In re Dex Media, Inc.*, No. 16-11200 (KG) (June 8, 2016) [D.I. 165] (same); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Apr. 4, 2016) [D.I. 996] (same).

## Waiver of Bankruptcy Rule 6004(h)

21.     The Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

## Compliance with Bankruptcy Rule 6006(f)

22.     Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple executory contracts or unexpired leases that are not between the same parties.  Rule 6006(f) states, in part, that such motion shall:

(1)     state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2)     list parties alphabetically and identify the corresponding contract or lease;

(3)     specify the terms, including the curing of defaults, for each requested assignment;

(4)     specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5)     be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases;

(6)     be limited to no more than 100 executory contracts or unexpired leases.

23.     The Debtors respectfully submit that the relief requested in this Motion complies with the requirements of Bankruptcy Rule 6006(f).

## Reservation of Rights

24.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement or lease pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

25.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counterparties to the Leases; (h) the parties identified on the

{1368.002-W0069440.}                           -10-

Debtors' consolidated lists of 50 largest unsecured creditors and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: December 21, 2022
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Proposed Counsel for the Debtors
and Debtors-in-Possession*