# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date**: January 11, 2023 at 9:00 AM ET |
| | **Objection Deadline**: January 4, 2023 at 4:00 PM ET |

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND APPROVING (I) THE EMPLOYMENT AND RETENTION OF OWL HILL ADVISORY, LLC AND (II) THE DESIGNATION OF JOHN J. RAY III AS CHIEF EXECUTIVE OFFICER *NUNC PRO TUNC* TO THE PETITION DATE

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit C (the "Order"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving (a) the employment and retention of Owl Hill Advisory, LLC ("Owl Hill"), pursuant to the terms and conditions of that certain letter agreement between Owl Hill and FTX Trading Ltd. dated as of November 10, 2022, attached hereto as Exhibit A (the "Engagement Letter"), *nunc pro tunc* to the Petition Date and (b) the designation of John J. Ray III as the Chief Executive Officer ("CEO") of the Debtors *nunc pro tunc* to the Petition Date. Certain facts supporting this Motion are set forth in the Declaration of John J. Ray III in Support

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

{1368.002-W0069434.}

of Owl Hill Retention Motion (the "Ray Declaration"), attached hereto as Exhibit B.  In further support of the Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

2.  On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

3. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

## Relief Requested

4. By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request entry of the Order authorizing and approving (i) the employment and retention of Owl Hill pursuant to the terms and conditions of the Engagement Letter *nunc pro tunc* to the Petition Date[2] and (ii) the designation of John J. Ray III as the CEO of the Debtors *nunc pro tunc* to the Petition Date.

5. The Debtors have determined that obtaining the services of Mr. Ray as CEO is necessary to meet their administrative obligations in these Chapter 11 Cases and maximize the value of their estates. The Debtors have therefore resolved, in their business judgment, to designate Mr. Ray as CEO and retain Owl Hill for the appointment of Mr. Ray.

6. Owl Hill is a consulting firm established by Mr. Ray that specializes in corporate reorganization, operations improvement, interim management and bankruptcy case management services. Mr. Ray is the Senior Managing Director and sole employee of Owl Hill. Mr. Ray has extensive experience working with and for distressed companies in complex financial and operational restructurings, both out-of-court and in chapter 11 proceedings. Mr.

---

[2] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

Ray has advised debtors and creditor constituents in numerous reorganizations, which advisory services have included financial analysis and budgeting, forecasting, cash management, sales of assets, operational assessments, claims reconciliation, and improvements, contract assumption and rejection, and the provision of interim management services.  Mr. Ray has provided a full range of crisis management services to under-performing and distressed companies, including interim management and debtor advisory work, bankruptcy preparation and management, litigation support, post-merger integration and debt restructuring and refinancing.  Mr. Ray has previously served as interim chief executive officer, chief reorganization officer and in similar roles for various public and private companies, including Enron Corp., Nortel Networks Inc. and Overseas Shipholding Group.  Additional details regarding Mr. Ray's experience are included in the Ray Declaration.

### Scope of Services

7.      The Debtors have hired Owl Hill pursuant to terms and conditions set forth in the Engagement Letter.  Mr. Ray is the principal professional staffed by Owl Hill on the engagement, and is the CEO for the Debtors, having been designated as such effective as of November 11, 2022 pursuant to an omnibus corporate authority executed by Mr. Samuel Bankman-Fried prior to the commencement of these Chapter 11 Cases.

8.      Pursuant to the Engagement Letter, as CEO, Mr. Ray has assumed in all respects the management of the business and properties of the Debtors, including aiding in the restructuring of the Debtors, development of turn around and stabilization plans and leadership in negotiating and executing any corporate transactions.  In addition, as described in the First Day Declarations, Mr. Ray is providing oversight and support to the Debtors' other professionals in connection with execution of the five core objectives of these Chapter 11 Cases:

    (a)    <u>Implementation of Controls</u>:  the implementation of accounting, audit, cash management, cybersecurity, human resources, risk management, data protection and other systems that did not exist, or did not exist to an appropriate degree, prior to Mr. Ray's appointment;

    (b)    <u>Asset Protection & Recovery</u>:  the location and security of property of the estate, a substantial portion of which may be missing or stolen;

    (c)    <u>Transparency and Investigation</u>:  the pending, comprehensive, transparent and deliberate investigation into claims against Mr. Samuel Bankman-Fried, the other co-founders of the Debtors and third parties, in coordination with regulatory stakeholders in the United States and around the world;

    (d)    <u>Efficiency and Coordination</u>:  cooperation and coordination with insolvency proceedings of subsidiary companies in other jurisdictions; and

    (e)    <u>Maximization of Value</u>:  the maximization of value for all stakeholders through the eventual reorganization or sale of the Debtors' complex array of businesses, investments and digital and physical property.

    9.    More generally, pursuant to the Engagement Letter, the Debtors seek approval of the employment and retention of Owl Hill and the designation of Mr. Ray as CEO to provide the following services, among others:

- Direct and oversee the businesses of the Debtors;

- Assist in managing the professionals who are assisting the Debtors in the reorganization process or who are working for the Debtors' various stakeholders to improve coordination of their effort and individual work product to be consistent with the Debtors' overall restructuring goals;

- Provide oversight and assistance with the preparation of required financial-related, including schedules of assets and liabilities, statement of financial affairs and monthly operating reports, and disclosures by the Debtors in any required regulatory or other filings;

- Provide oversight and assistance with the preparation of financial information, including, but not limited to, cash flow budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- Participate in meetings and provide assistance to potential buyers of the Debtors' assets, any official committee(s) appointed in the case, the U.S.

Trustee, other parties-in-interest, including contractual counterparties, and professionals hired by the same, as requested;

- Assist the Debtors with respect to the analysis of contract rejections and assumption;

- Assist the Debtors with respect to communications with employees and vendors;

- Assist the Debtors regarding process improvement and advice related to business efficiencies;

- Provide support to the Debtors regarding IT infrastructure;

- Provide oversight and assistance with the evaluation of potential sources of cash and asset recovery for the Debtors;

- Evaluate and make recommendations in connection with strategic alternatives as needed to maximize the value of the Debtors' assets;

- Provide oversight and assistance with the preparation of analysis of creditor claims by type, entity, and/or individual claim, including assistance with the development of databases, as necessary, to track such claims;

- Provide oversight and assistance with the evaluation and analysis of avoidance actions, including, fraudulent conveyances and preferential transfers, if necessary;

- Provide testimony as required;

- Provide oversight and assistance in connection with communications and negotiations with constituents including trade vendors, investors and other critical constituents to the successful execution of the Debtors' near-term business plan;

- Assist in development of a chapter 11 plan and in the preparation of information and analysis necessary for the confirmation of a plan in chapter 11 proceedings, if necessary; and

- Perform other tasks as agreed to among Owl Hill and the Debtors.

10. Owl Hill has agreed with the Debtors to coordinate with the Debtors' other retained professionals and to avoid the unnecessary duplication of services. Further, Mr. Ray has agreed to subject himself to the jurisdiction and supervision of the Court.

**Compensation**

11. The principal terms of Owl Hill's engagement are as follows:

Compensation: Owl Hill will charge the Debtors an hourly fee of $1,300 per hour for Mr. Ray's services. The hourly rate may be increased on an annual basis. In addition, Owl Hill shall receive a $3 million completion fee upon confirmation of a chapter 11 plan and an incentive payment to be determined by the Debtors' independent directors in consultation with the Committee.

Reimbursement of Expenses: Owl Hill will be reimbursed for all reasonable out-of-pocket expenses incurred on Debtors' behalf during this engagement, such as travel, lodging, meals, conference call charges and PACER charges.

12. Prior to the Petition Date, Owl Hill received a retainer of approximately $200,000 (the "Retainer") from the Debtors. The Retainer will be credited against any amounts due at termination of the engagement with the net amount returned to the Debtors upon satisfaction of all obligations under the Engagement Letter. Owl Hill will invoice the Debtors for its fees and expenses monthly or more frequently as agreed upon with the Debtors.

13. In addition to the hourly fee and expense reimbursement provided for in the Engagement Letter, the Debtors have determined, with approval of the Debtors' independent directors, that upon confirmation of a chapter 11 plan, Owl Hill shall earn a completion fee (the "Completion Fee") of $3 million and an additional incentive payment (the "Incentive Payment") for performance based on metrics to be determined by the independent directors in consultation with the Committee in the first quarter of 2023, when more facts are known about these Chapter 11 Cases and likely outcomes. If these Chapter 11 Cases are dismissed or are converted to cases under chapter 7 of the Bankruptcy Code, the Completion Fee and the Incentive Payment will not be payable.

14. The Completion Fee and the Incentive Payment remain subject to Court approval on a reasonableness standard at confirmation of the Debtors' chapter 11 plan. While Owl Hill and the Debtors are not seeking pre-approval of the Completion Fee and the Incentive

Payment at this time, the propriety of the Completion Fee and the Incentive Payment have been agreed between the Debtors and Owl Hill as part of Owl Hill's overall compensation. In particular, Mr. Ray's hourly rate reflects a lower amount than Owl Hill would otherwise charge for his services in the absence of the Completion Fee and Incentive Payment. In the event the Completion Fee and Incentive Payment are not approved by the Court, Owl Hill and Mr. Ray reserve all rights to seek additional compensation.

### Reporting Requirements

15. Owl Hill will provide certain reporting of fees and expenses incurred in connection with services provided to the Debtors, in order to maintain transparency and comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (commonly referred to as the "Jay Alix Protocol," the "Protocol").

16. Owl Hill will file with the Court, and provide notice to the U.S. Trustee and any official committee(s) appointed in these Chapter 11 Cases (the "Committees" and, together with the Debtors and the U.S. Trustee, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis (each a "Compensation Report"). Each Compensation Report shall summarize the services provided, identify the compensation earned and itemize the expenses incurred by Owl Hill. A Compensation Report, and the compensation requested therein, shall be subject to Court review in the event that any Notice Party files an objection to such Compensation Report.

17. Because Owl Hill is not being employed as a professional under section 327 of the Bankruptcy Code, it will not submit quarterly fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, nor will it otherwise apply to the Court for approval of

amounts paid to Owl Hill by the Debtors. Owl Hill will be paid by the Debtors for its services and expenses monthly, or more frequently as agreed, on the terms set forth in its Engagement Letter. The Debtors will not seek authority to engage Owl Hill or any of its affiliates as a professional under section 327 of the Bankruptcy Code in these Chapter 11 Cases.

18. As detailed in the Ray Declaration, the Debtors do not owe Owl Hill or any of its affiliates any amount for services performed or expenses incurred prior to the commencement of these Chapter 11 Cases, and, thus, Owl Hill and its affiliates are not prepetition creditors of the Debtors. Other than the Retainer, Owl Hill and its affiliates did not receive any amounts from the Debtors prior to the Petition Date.

19. To the best of the Debtors' knowledge, information and belief, neither Owl Hill nor any professional employee or independent contractor of Owl Hill has any connection with or any interest adverse to the Debtors, their significant creditors, or any other significant party-in-interest known to Owl Hill, or their respective attorneys and accountants, except as may be set forth in the Ray Declaration. Apart from Mr. Ray's prepetition appointment as CEO effective as of November 11, 2022, based upon the Ray Declaration, the Debtors submit that Owl Hill is otherwise a "disinterested person" as that term is defined by Section 101(14) of the Bankruptcy Code.

## Indemnification

20. The Engagement Letter contains standard language regarding indemnification and limitation of liability with respect to Owl Hill's services. Notwithstanding any provisions of the Engagement Letter to the contrary, in accordance with the Protocol, Owl Hill has agreed to the following limitations on such provisions, as set forth below.

21. With respect to Mr. Ray, the Debtors shall indemnify him on the same terms as provided to the Debtors' other officers and directors under the Debtors' bylaws and/or organizing documents and applicable state or national law and on substantially the same terms as the Debtors' directors' and officers' insurance policies.

22. The Debtors shall have no obligation to indemnify Owl Hill. Notwithstanding any provisions of the Engagement Letter to the contrary, Owl Hill has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to Owl Hill's engagement in these Chapter 11 Cases.

**Basis for Relief**

23. Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and hearing. 11 U.S.C. § 363(b)(1). To obtain court approval to use property under section 363(b), the Debtors need only show a legitimate business justification for the proposed action. *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)). Generally, a Court should be deferential to the determinations of management, and where a debtor "articulates a reasonable basis for its business decisions . . . , courts will generally not entertain objections to the debtor's conduct." *See In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D.

Del. Apr. 29, 2014) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

24. The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Johns-Manville Corp.*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions."). Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

25. The retention of corporate officers is proper under section 363 of the Bankruptcy Code. Courts have relied upon section 363(b) as the basis upon which to employ and compensate financial management services firms similar to Owl Hill that provide professionals to serve as officers or other management-level personnel employed by the debtor. *See*, *e.g.*, *In re Kabbage Inc. d/b/a Kservicing*, No. 22-10951 (CTG) (Dec. 2, 2022), D.I. 316 (authorizing employment of Phoenix Executive Services, LLC and appointment of a CFO pursuant to section 363); *In re Stimwave Technologies Inc.*, No. 22-10541 (KBO) (Nov. 29, 2022), D.I. 562 (authorizing retention and employment of Riveron Management Services, LLC and appointment of a CRO pursuant to section 363); *In re Brooks Brothers Group, Inc.*, No. 20-11785 (CSS) (Aug. 7, 2020), D.I. 338 (authorizing retention of Ankura Consulting Group, LLC and employment of a CEO pursuant to section 363); *In re AAC Holdings, Inc.*, No. 20-11648 (JTD) (July 15, 2020), D.I. 151 (authorizing retention of Carl Marks Advisory Group LLC and appointment of a CRO pursuant to section 363); and *In re 24 Hour Fitness*

*Worldwide, Inc.*, No. 20-11558 (KBO) (July 13, 2020), D.I. 546 (authorizing retention of FTI Consulting, Inc. to provide a CRO pursuant to section 363).

26. The Debtors have determined, in the exercise of their business judgment, that the proposed fee structure appropriately reflects the nature of the services to be provided by Owl Hill, contains reasonable terms and conditions of employment, and should be approved under section 363 of the Bankruptcy Code. Additionally, the Debtors submit that the continuation of Mr. Ray's tenure as CEO and continued retention of Owl Hill, as initiated prior to the Petition Date, would greatly benefit the Debtors' estates and creditors by aiding the efficient administration of these Chapter 11 Cases, provide guidance on operational issues unique to Chapter 11 and reorganization, and preserve and maximize the value of the Debtors' estates. Accordingly, the Debtors believe that the relief requested herein reflects the reasonable exercise of the Debtors' sound business judgment.

27. The Court may also grant the relief requested in this Motion pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also U.S.* v. *Energy Resources Co.*, 495 U.S. 545,549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

28. Owl Hill is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code, because the Debtors are seeking to retain Owl Hill pursuant to section 363 and not under section 327. The Debtors therefore request that Owl Hill's fees and expenses accrued under the Engagement Letter be paid by the Debtors in the ordinary

course of business as an administrative expense of the Debtors, without the need for Owl Hill to file fee applications or otherwise seek Court approval for such fees and expenses other than the reporting obligations described above.

29. There is no requirement that Owl Hill or Mr. Ray be disinterested, because the Debtors are not seeking to retain them as professionals under section 327 of the Bankruptcy Code. Nevertheless, to the best of the Debtors' knowledge, information and belief based on the Ray Declaration, neither Owl Hill nor Mr. Ray have or represent any interest adverse to the Debtors' estates or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties-in-interest in these Chapter 11 Cases, or for any other reason.

### *Nunc Pro Tunc* Retention of Owl Hill

30. Given the circumstances of these Chapter 11 Cases, the Debtors respectfully request that the employment and retention of Owl Hill and the designation of Mr. Ray as CEO be authorized *nunc pro tunc* to the Petition Date.

31. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas*, 798 F.2d 645, 650 (3d Cir. 1986).

32. As described in the First Day Declarations, these Chapter 11 Cases are unique. As this Court is aware, these Chapter 11 Cases were filed on an expedited basis. Following the Petition Date, the Debtors, Mr. Ray and other retained professionals necessarily committed substantial resources towards stabilizing the Debtors' businesses and transitioning into chapter 11, including, among other things, seeking approval of various first-day and other motions. The Debtors, Mr. Ray and other retained professionals also have expended significant time towards the ongoing work to protect and recover assets around the world, while also

advancing their investigation into the facts and circumstances that led to the Debtors' commencement of these Chapter 11 Cases.

33. Accordingly, for the reasons set forth above, the Debtors believe that approval of the employment and retention of Owl Hill and the designation of Mr. Ray as CEO *nunc pro tunc* to the Petition Date is in the best interest of the Debtors and their estates.

**Request for Waiver of Bankruptcy Rule 6004(h)**

34. Under Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed R. Bankr. P. 6004(h). As set forth above, the continued retention of Owl Hill and designation of John J. Ray III as CEO, particularly in these early stages of the Chapter 11 Cases, are essential to ensuring the effective management of these Chapter 11 Cases and the preservation of the value of the Debtors' estates. Thus, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

**Notice**

35. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) the parties identified on the Debtors' consolidated lists of 50 largest unsecured creditors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit C, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: December 21, 2022<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>       brown@lrclaw.com<br>       pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>       bromleyj@sullcrom.com<br>       gluecksteinb@sullcrom.com<br>       kranzleya@sullcrom.com<br><br>*Proposed Counsel for the Debtors*<br>*and Debtors-in-Possession* |