# EXHIBIT A

**Engagement Letter**

# Owl Hill Advisory, LLC

November 10, 2022

FTX Trading Ltd.

Re: Engagement Letter Between FTX and Owl Hill Advisory, LLC

Dear Sir/Madam:

This letter (this "Engagement Letter") confirms and sets forth the terms and conditions of the amended and restated engagement between Owl Hill Advisory, LLC ("Advisor"), and FTX Trading Ltd. (the "Company").

1. Services.

    1. Commencing on November 10, 2022 (the "Effective Date") and upon the payment of the retainer specified in Section 2 below, Advisor shall furnish the services of John J. Ray III to serve as Chief Executive Officer ("CEO") of the Company, and in such capacity shall perform all duties that are usual and customary for a CEO to perform, including aiding in the restructuring of the Company, development of turn around and stabilization plans and leadership in negotiating and executing any corporate transactions. Mr. Ray shall at all times remain an employee of Advisor and shall remain available to assist Advisor in any other matters that do not conflict with the Engagement. Advisor shall be responsible for the payment of all amounts, wages and benefits to Mr. Ray and Mr. Ray shall not participate in any employee benefit plans of the Company.

    2. Fees.

    Advisor shall charge the Company an hourly fee of $1,300 (thirteen hundred dollars) per hour, plus reasonable out of pocket expenses including but not limited to hotel, travel, meals, airfare, conference call charges and PACER charges. The hourly rate may be increased on an annual basis and shall be billed periodically, but not less than monthly. The Company shall pay a retainer to Advisor of $200,000 (two hundred thousand dollars) which shall be credited against any amounts due at termination of the Engagement and the net amount returned to the Company upon satisfaction of all obligations under this Engagement Letter.

# Owl Hill Advisory, LLC

3. Term and Termination of Term.

   The engagement will commence as of the Effective Date, and shall continue on a month to month basis until terminated by either party without cause pursuant to the delivery of 30 days advanced written notice of such termination to the other party. In the event of any termination of the engagement, the Company shall pay Advisor the hourly fees billed through the date of termination plus any unpaid costs and expenses.

4. Projections; Reliance; Limitation of Duties.

   The Company understands that the services rendered may include assisting in the preparation of projections and other forward-looking statement and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from the projections and other forward-looking statements. In addition, the CEO will rely on other Company advisors and personnel related to information in the preparation of such projections and forward-looking statements. Neither the CEO or the Advisor makes any representation that an appropriate restructuring proposal or strategic alternative can be formulated by the Company, or that any such proposal or alternative will be more successful than others or is the best course of action for the Company, or that any such proposal or alternate will be accepted by the Company's creditors or other constituents. The Company understands that Advisor is not engaged to perform an audit, review, or compilation, or any other type of financial statement that is subject to the rules of the SEC or any other state or Federal professional or regulatory body. Advisor is entitled to rely on information provided by the Company and Advisor shall have no duty to update any data submitted to the Advisor.

# Owl Hill Advisory, LLC

5. <u>Confidentiality.</u>

For purposes of this Engagement Letter, "<u>Information</u>" means all non-public, confidential or proprietary materials and information relating to the respective businesses and operations of the Company, whether owned by it or third parties, that is disclosed by the Company or its representatives or is acquired in the course of discussions or investigations, in whatever form provided, and includes, without limitation: (a) financial, accounting and tax information; (b) business plans, products and services, marketing and sales information, customer lists, volumes and pricing information; (c) purchasing information; (d) employee lists, policies and files; (d) trade secrets, operating and training procedures, production processes, research and development data, samples, test results, formulas, designs, specifications, know-how, inventions and ideas, improvements, discoveries, software (including passwords and source and object code), database technologies, and any other intellectual property, and other technical information; (e) all agreements and transaction information; (f) all notes, summaries, studies, analyses and other material that are prepared by Advisor and contain or are generated from Information.

"Information" does not include information that: (i) is or becomes generally known by or available to the public other than as a result of a disclosure by Advisor in breach of this Engagement Letter; (ii) Advisor can show, by competent evidence, was known to it on a non-confidential basis prior to disclosure thereof to Advisor; (iii) becomes available to Advisor on a non-confidential basis from a source other than the Company, provided that such source is not known to Advisor to be subject to any prohibition against transmitting such information to it; or (iv) is independently developed by Advisor without reliance on the Information.

Advisor acknowledges that all Information is valuable and confidential to the Company, remains its respective property and will be kept by Advisor in strict confidence.  Advisor will only use or copy the Information for the purpose of performing the Services under this Engagement Letter.  Advisor will not, directly or indirectly, disclose Information to any person, except (a) as specifically consented to in writing by the Company or (b) as required by law.  If Advisor becomes legally compelled (whether by law, rule, regulation, subpoena or similar court or other lawful process) to disclose Information, Advisor will promptly notify the Company so that the Company may (but it need not) seek a protective order or other appropriate remedy, with Advisor's cooperation, or waive compliance with the provisions of this Engagement Letter.  In any event, Advisor will furnish only that portion of the Information which, based on written advice of legal counsel, it or he reasonably believes is legally required and will exercise reasonable efforts to obtain reliable assurances that confidential treatment will be accorded to such Information.

# Owl Hill Advisory, LLC

Advisor will exercise reasonable care to preserve the confidentiality of the Information and will employ at least the same safeguards as it uses to protect its or his own confidential information of a similar nature. Advisor will not modify, disassemble, decompile or otherwise reverse engineer the Information.

Each of Advisor acknowledges and agrees that a breach of the confidentiality provision shall result in irreparable harm to the Company and that remedies at law may be inadequate to redress any such breach, and therefore each of Advisor acknowledges and agrees that the Company will be entitled to injunctive or similar equitable remedy against Advisor and Advisor shall not take any action to oppose or hinder the Company in obtaining such relief.

Promptly after the Company's request at any time and upon termination or expiration of this Engagement Letter, Advisor will return all Information consisting of original documents received from the Company and it will destroy all other Information that is in tangible form and is in Advisor's possession, without retaining copies. Promptly after the Company's request, Advisor will certify such return or destruction in writing.

# Owl Hill Advisory, LLC

6. <u>Indemnification.</u>

The Company hereby agrees to indemnify and hold Advisor and Mr. Ray (each an "Indemnitee") harmless from and against any damages, costs, expenses and liabilities, taxes and penalties of any kind and nature whatsoever ("Losses") which shall include, but not be limited to, all reasonable attorney's fees) to the extent arising out of, related to, are imposed upon or asserted at any time against Advisor and Mr. Ray with respect to the performance of the Services under this Engagement Letter ("<u>Actions</u>"), including, without limitation, any Losses with respect to any threatened, pending or completed claim (a "<u>Claim</u>"), any investigation, action, cause of action, suit, arbitration, appeal, controversy or other proceeding, whether civil, criminal, administrative or investigative (a "<u>Proceeding</u>"); provided, however, that an Indemnitee shall not be entitled to indemnification arising from any acts by the Indemnitee of bad faith, willful misconduct, or gross negligence. Furthermore, and without limiting the foregoing, the Company shall indemnify the Indemnitees to the same extent as the most favorable indemnification it extends to its officers, by contract, or otherwise. The Company shall include Advisor and Mr. Ray as additional named insureds under the Company's D&O policies, including any new and additional policies which may be procured during the Engagement. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the charter, bylaws, or other organizational documents or policies shall affect the Indemnitee's rights hereunder.

An Indemnitee shall promptly notify the Company of the commencement of any Proceeding, or any occurrence of any event which might give rise to a Claim; however, unless such failure to provide notice was intentional and the Company has been materially prejudiced thereby, the failure to notify the Company shall not relieve the Company from any liability hereunder. Neither an Indemnitee nor the Company will, without the other party's prior written consent, agree to a settlement of any Claim or Proceeding.

Notwithstanding any other provision of this Engagement Letter, the Company shall, from time to time and to the extent not prohibited by applicable law, advance any reasonable expenses, costs, disbursements, including, without limitation, reasonable attorney's fees incurred by or on behalf of the Indemnitee in connection with defending the Indemnitee under any action threatened or brought against an Indemnitee as a result of the acts or omissions, actual or alleged, or the Indemnitee in its capacity as such (collectively, "<u>Expenses</u>") within five (5) days after the receipt by the Company of a statement or statements from the Indemnitee requesting such advance or advances. Such statement or statements shall reasonably evidence each of the Expenses incurred by the Indemnitee for which the Indemnitee seeks advancement and shall include or be preceded or accompanied by an undertaking by or on behalf of the Indemnitee to repay any Expenses

# Owl Hill Advisory, LLC

advanced if it shall ultimately be determined that the Indemnitee is not entitled to be indemnified against such Expenses as described below. Any advances and undertakings to repay pursuant to this Section 5 shall be unsecured and interest free. Notwithstanding anything set forth to the contrary in this Engagement Letter, the Company and the Indemnitee may agree from time to time that the Company shall pay certain Expenses directly to the applicable third parties, without any obligation for the Indemnitee to submit a prior statement to the Company. The Indemnitee shall have the obligation to repay such Expenses to the Company if it is ultimately determined that the Indemnitee is not entitled to be indemnified for such Expenses pursuant to the issuance of a final order finding that the Indemnitee is not entitled to indemnification under this Engagement Letter. For purposes of this Engagement Letter, the term "<u>final order</u>" shall mean a non-appealable judgment or order issued by a court of competent jurisdiction. The rights granted by this Section 5 shall not be deemed exclusive of any other rights to which an Indemnitee may be entitled under any statute, agreement, or otherwise, both as to action in an indemnified capacity and as to action in any other capacity. The indemnification provisions of this section shall survive the termination or expiration of this Engagement Letter.

7. <u>Miscellaneous.</u>

    This Engagement Letter: (a) shall be governed and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified, except in writing executed by each of the signatories hereto. The parties agree that any dispute with respect to any matter relating to or arising out of the performance or non-performance of the Company or Advisor hereunder shall be heard and resolved in a state or federal court or competent jurisdiction located in the State of Delaware, except to the extent the Company is subject to the jurisdiction of a United States Bankruptcy Court in which case the parties agree to the jurisdiction of the Bankruptcy Court to hear and resolve any dispute under this Engagement Letter. The parties also agree to waive a trial by jury in any such dispute. The terms of this Engagement Letter that by their context are intended to be performed after the termination or expiration of this Engagement Letter and are intended to survive such termination or expiration shall continue to bind all parties.

**Accepted and Agreed:**

# Owl Hill Advisory, LLC

**FTX Trading Ltd.**

By: _Timothy Wilson_
Timothy Wilson

Authorized Signatory

**Owl Hill Advisory, LLC**

By: _[signature]_
John J. Ray III
Sr. Managing Director

# Owl Hill Advisory, LLC