**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date**: January 11, 2023 at 9:00 a.m. (ET)<br>**Objection Deadline**: January 4, 2023 at 4:00 p.m. (ET) |

**APPLICATION OF THE DEBTORS TO APPROVE THE
EMPLOYMENT AND RETENTION OF LANDIS RATH & COBB LLP
AS BANKRUPTCY CO-COUNSEL, *NUNC PRO TUNC* TO THE PETITION
DATE, PURSUANT TO BANKRUPTCY CODE SECTION 327(A),
BANKRUPTCY RULES 2014 AND 2016 AND LOCAL RULE 2014-1**

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit this *Application of the Debtors to Approve the Employment and Retention of Landis Rath & Cobb LLP as Co-Counsel, Nunc Pro Tunc to the Petition Date, Pursuant to Bankruptcy Code Section 327(a), Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1* (the "Application"). In support of the Application, the Debtors rely on the (i) First Day Declarations (as defined below), (ii) the Affidavit of Adam G. Landis (the "Landis Affidavit", a partner at Landis Rath & Cobb LLP ("LRC")) attached hereto as **Exhibit A** and (iii) the Declaration of John J. Ray III (the "Ray Declaration"), which is attached hereto as **Exhibit B**. In further support of the Application, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

*Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Venue of these proceedings and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2. The statutory predicates for the relief sought herein are section 327(a) of title 11 of the United States Code, 11 U.S.C §§ 101, *et seq*. (as amended or modified, the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2014-1.

**BACKGROUND**

3. On November 11, 2022 and, with respect to Debtor West Realm Shires Inc., on November 14, 2022 (collectively, the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

4. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. On November 22, 2022, the Court entered an order pursuant to Bankruptcy Rule 1015 approving joint administration of the Chapter 11 Cases. *See* D.I. 128.

5. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. *See* D.I. 231.

---

[2] Pursuant to rule 9013-1(f) of the Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Application if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in detail in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").[3]

## RELIEF REQUESTED

7. The Debtors desire to employ and retain LRC as their bankruptcy co-counsel in these Chapter 11 Cases. By this Application, the Debtors respectfully request that the Court approve the employment and retention of LRC, *nunc pro tunc* to the Petition Date, pursuant to Bankruptcy Code section 327(a), Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1 under a general retainer as their counsel to perform the legal services that will be necessary during the Debtors' Chapter 11 Cases.

8. LRC has informed the Debtors that Adam G. Landis, Kimberly A. Brown, partners of LRC, and Matthew R. Pierce and Howard W. Robertson IV, associates of LRC, as well as other partners and associates of LRC who will be involved in these cases, are members in good standing of various state and federal bars, including, specifically, the bar of the State of Delaware.

## LRC'S QUALIFICATIONS

9. The Debtors have selected LRC as their bankruptcy co-counsel because of the

---

[3] Capitalized terms used but not otherwise defined in this application shall have the meanings ascribed to them in the First Day Declarations.

{1368.002-W0069408.}                              3

firm's extensive experience and knowledge, with particular emphasis on its national expertise in the field of debtor and creditor law and business reorganizations under chapter 11 of the Bankruptcy Code. LRC has a recognized reorganization practice and experience in aspects of the law that are expected to arise in the context of these Chapter 11 Cases.

10. LRC's practice presently includes ten (10) attorneys, many of whom regularly appear in bankruptcy cases in Delaware and other jurisdictions nationwide. LRC attorneys have represented debtors, creditors' committees, secured creditors, officers and directors, and other significant parties in a multitude of bankruptcy cases.

11. In assisting with the preparation of the Debtors' Chapter 11 Cases, LRC has worked closely with the Debtors and their other professionals and has been assisting the Debtors in their efforts in these Chapter 11 Cases since prior to the Petition Date. LRC has the necessary background to deal effectively with many of the potential legal issues and problems that may arise in the context of these Chapter 11 Cases. Thus, in order to maximize the value of the Debtors' estates, and because of LRC's recognized expertise in bankruptcy law, familiarity with the Court and Delaware practice, the Debtors desire that LRC represent them in these Chapter 11 Cases.

12. The Debtors' employment of LRC under an evergreen retainer is appropriate and necessary to enable the Debtors to execute faithfully their duties in these Chapter 11 Cases.

13. Contemporaneously herewith, the Debtors also anticipate filing applications to retain and employ Sullivan & Cromwell LLP ("Sullivan & Cromwell") as bankruptcy counsel and Alvarez & Marsal North America ("Alvarez & Marsal") as their financial advisor (along with other professionals that the Debtors may retain in these Chapter 11 Cases, collectively, the "Professionals"). The Debtors believe that the employment of the Professionals will best enable

them to navigate through these Chapter 11 Cases.

## SERVICES TO BE PROVIDED BY LRC

14. The Debtors anticipate that, in connection with these Chapter 11 Cases, LRC will render general legal services as needed, including, but not limited to, the following:

   a. Providing legal advice regarding Delaware local rules, practices, precedents, and procedures and providing substantive and strategic advice on how to accomplish the Debtors' goals in connection with the prosecution of these cases, in all aspects of each bankruptcy proceeding;

   b. Advising and assisting the Debtors with respect to their rights, powers and duties as debtors-in-possession and taking all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any actions commenced against the Debtors, negotiating all disputes involving the Debtors, and preparing objections to claims filed against the Debtors' estates;

   c. Preparing and filing necessary pleadings, motions, applications, proposed orders, notices, schedules, and other documents, and reviewing all financial and other reports to be filed in these Chapter 11 Cases, and advising the Debtors concerning, and preparing responses to, applications, motions, other pleadings, notices and other papers that may be filed and served in these cases;

   d. Handling inquiries and calls from customers, creditors and counsel to interested parties regarding pending matters and the general status of these Chapter 11 Cases;

   e. Appearing in Court and any appellate courts to represent and protect the interests of the Debtors and their estates;

   f. Attending meetings including, without limitation, any meeting of creditors and negotiating with representatives of creditors and other parties-in-interest;

   g. Advising and assisting the Debtors in maximizing value in these Chapter 11 Cases, including, without limitation, in connection with sales of assets, other transactions and/or the formulation of a disclosure statement and chapter 11 plan and all documents related thereto, and taking all further actions as may be required in connection with any sale, disclosure

      statement or plan during these Chapter 11 Cases; and

    h. Performing all other necessary legal services for the Debtors in connection with the prosecution of these Chapter 11 Cases, including, without limitation: (i) analyzing the Debtors' leases and contracts and the assumptions, rejections, or assignments thereof, (ii) analyzing the validity of liens against the Debtors, (iii) advising the Debtors on litigation matters, and (iv) assisting with the development a reorganization or liquidation strategy.

LRC will coordinate with the other Professionals in these Chapter 11 Cases to minimize duplication of efforts to the greatest extent practicable.

## PAYMENT OF LRC'S FEES AND EXPENSES

    15.    Subject to the Court's approval and in accordance with Bankruptcy Code section 330, LRC will charge for its legal services on an hourly basis in accordance with its standard hourly rates in effect on the date services are rendered. The current rates of LRC partners range from $750.00 - $1,075.00 per hour; associates range from $410.00 - $550.00 per hour; paralegals are $295.00 per hour; and legal assistants range from $145.00 - $180.00 per hour. The hourly rates set forth herein are LRC's standard hourly rates for work of this nature. These rates are set at a level designed to compensate the firm fairly for the work of its attorneys and professional staff, and to cover fixed and other routine overhead expenses. These rates may change from time to time in accordance with LRC's established billing practices and procedures, including yearly rate increases at the beginning of each fiscal year. LRC will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of legal services described above by category and nature of the service rendered.

    16.    In addition to the hourly rates set forth above, it is LRC's policy to charge its clients for certain other expenses incurred in connection with its representation of the client. These charges include, among other things, telecopier (outgoing only) toll and other charges,

mail and express mail charges, special or hand delivery charges, photocopying charges (at the rate of $0.10 per page in cases in which LRC is paid by a debtor's estate), travel expenses, expenses for "working meals," computerized legal research, transcription costs, document retrieval charges, as well as non-ordinary overhead expenses such as secretarial overtime.  LRC will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the firm's other clients, or as required by the Local Rules.

17.    Within ninety (90) days of the Petition Date, LRC received a retainer payment on November 14, 2022 from Debtor West Realm Shires Inc. in the aggregate amount of $300,000 (the "Retainer").  As set forth in the Landis Affidavit, and the *Statement Pursuant to Bankruptcy Code sections 329 and 504, Federal Rule of Bankruptcy Procedure 2016 and Local Rule 2016-1* (the "Rule 2016 Statement") attached hereto as **Exhibit C**, and, subject to further order of the Court, LRC will hold the Retainer balance as an evergreen retainer to be held by LRC as security throughout these Chapter 11 Cases until LRC's fees and expenses are awarded by final order and payable to LRC.[4]

18.    LRC intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy

---

[4] In this district, evergreen retainer agreements reflect normal business terms in the marketplace.  *See In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("[T]he practice [of receiving security retainers] in this district has been engaged in since at least the early 1990s.").  Moreover, LRC believes that its request for approval of an evergreen retainer in these cases satisfies the five-part test articulated by Judge Carey in *Insilco*.  First LRC submits that the proposed terms of its engagement reflect normal business terms in the marketplace.  Second, LRC submits that both it and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length.  Third, LRC believes that approval of the Retainer as an evergreen retainer is in the best interests of the Debtors' estates.  Indeed, at this crucial stage of the Debtors' Chapter 11 Cases, LRC believes that it is essential that the Debtors have immediate and uninterrupted access to sophisticated counsel to assist in the prosecution of its bankruptcy case.  Fourth, LRC is currently unaware of any creditor opposition to the approval of the Retainer as an evergreen retainer.  Fifth, given the size, circumstances, and posture of the Debtors' Chapter 11 Cases, LRC believes approval of the Retainer as an evergreen retainer provides it with an appropriate level of risk minimization in connection with the payment of its prospective fees and costs in these cases.  Indeed, in similar circumstances, the Court has overruled opposition from the United States Trustee and approved professional retainers as evergreen retainers.  *See, e.g., In re Capmark Fin. Group, Inc.*, Case No. 09-13684 (CSS) (Bankr. D. Del. Dec. 10, 2009) (Transcript of Hearing on Retention Applications [D.I. 490] at 42:7-22).

Code, Bankruptcy Rules, the Local Rules, and any other orders entered in these Chapter 11 Cases for all services performed and expenses incurred after the Petition Date. In that regard, the Debtors and LRC shortly intend to develop a prospective budget and staffing plan in a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures.

19. The Debtors propose to pay LRC its standard hourly rates in effect from time to time for services rendered and to reimburse LRC according to its customary reimbursement policies, which rates and policies the Debtors believe to be reasonable, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and such further orders of the Court.

## BASIS FOR RELIEF REQUESTED

20. Bankruptcy Code section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

21. The standard for a debtor-in-possession to employ attorneys as counsel is set forth in Bankruptcy Code sections 327(a) and 1107. Those sections provide that a debtor-in-possession, with the Court's approval, may employ attorneys "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. §§ 327(a), 1107; *see also In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991) (citing *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for counsel to be retained, "counsel must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'")). A "disinterested person" is defined as one who does not have an interest materially adverse to the

interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. *See* 11 U.S.C § 101(14)(C). In general, however, subject to the requirements of Bankruptcy Code sections 327(a) and 1107, a debtor-in-possession is entitled to the counsel of its choosing. *See, e.g.*, *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest of cases should the trustee be deprived of the privilege of selecting his own counsel").

22. To the best of the Debtors' knowledge, except as disclosed in the Landis Affidavit, LRC neither holds nor represents any interest adverse to the Debtors' estates and is a "disinterested person" within the meaning of Bankruptcy Code sections 327(a) and 101(14).

23. The Debtors believe that the employment of LRC is necessary and in the best interest of the Debtors and their estates.

### *NUNC PRO TUNC* RETENTION OF LRC

24. Given the unusual circumstances of these Chapter 11 Cases, the Debtors respectfully request that the employment of LRC be authorized *nunc pro tunc* to the Petition Date.

25. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas*, 798 F.2d 645, 650 (3d Cir. 1986).

26. As described in the First Day Declarations, these Chapter 11 Cases are extraordinarily unique. Due to the speed of the Debtors' entry into chapter 11, these Chapter 11 Cases were filed on an expedited basis. Following the Petition Date, the Debtors and their Professionals necessarily committed substantial resources towards stabilizing the Debtors' businesses and transitioning into chapter 11, including, among other things, seeking approval of

various first-day and other motions. The Debtors and their Professionals also have expended significant time towards the ongoing work to protect and recover assets around the world, while also advancing their investigation into the facts and circumstances that led to the Debtors' filing.

27. Accordingly, for the reasons set forth above, the Debtors believe that approval of the retention and employment of LRC *nunc pro tunc* to the Petition Date is in the best interest of the Debtors, their estates, their creditors and other parties-in-interest.

## **NOTICE AND NO PRIOR REQUEST**

28. Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the Committee; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided

29. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto (i) authorizing the employment and retention of LRC as their co-counsel *nunc pro tunc* to the Petition Date and (ii) granting such other and further relief as the Court deems just and proper.

Dated: December 21, 2022
Wilmington, Delaware

/s/ *John J. Ray III*
John J. Ray III
Chief Executive Officer
FTX Trading Ltd.