**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: January 11, 2023 at 9:00 a.m. (ET)<br>Objection Deadline: January 4, 2023 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISORS TO THE DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE *NUNC PRO TUNC* TO THE PETITION DATE**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this application (this "Application") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), rule 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), authorizing the retention and employment of Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") as financial advisors to the Debtors *nunc pro tunc* to the Petition Date (as defined below).  Facts supporting this

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

{1368.002-W0069444.}

Application are set forth in the Edgar W. Mosley II (the "Mosley Declaration"), attached hereto as Exhibit B, and the Debtors respectfully state as follows:

### Background

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[2] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray First Day Declaration"), the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

---

[2] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

**Facts Specific to the Relief Requested**

3. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

4. See, e.g., In re GT Real Estate Holdings, LLC, No. 22-10505 (KBO) (Bankr. D. Del. June 1, 2022 [D.I. 220)); In re Forever 21, Inc., No. 19- 12122 (KG) (Bankr. D. Del. Nov. 4, 2019) [D.I. 388]; In re Kona Grill Inc., No. 19-10953 (CSS) Case 22-10505-KBO Doc 151 Filed 06/28/22 Page 4 of 18 5 (Bankr. D. Del. May 28, 2019) [D.I. 160]; In re RM Holdco LLC, No. 18-11795 (MFW) (Bankr. D. Del. Sept. 6, 2018) [D.I. 188]; In re Gibson Brands, Inc., No. 18-11025 (CSS) (Bankr. D. Del. Aug. 08, 2018) [D.I. 563]; In re EBH Topco LLC, No. 18-11212 (BLS) (Bankr. D. Del. Jun. 26, 2018) [D.I. 211]; In re M&G USA Corp., No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017) [D.I. 309]; In re Swift Energy, No. 15-12670 (MFW) (Bankr. D. Del. Feb. 1, 2016) [D.I. 217]; In re School Specialty, Inc., No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013) [D.I. 283].

5. A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services typically include a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships;

assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

6. In addition, A&M has become familiar with the Debtors' businesses, financial affairs, and capital structure since the firm's initial engagement on November 9, 2022. Since then, the A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' newly appointed management and other newly appointed professionals in assisting with the myriad requirements of these Chapter 11 Cases. Consequently, the Debtors believe that A&M has significant relevant experience and expertise that is well suited to assist the Debtors in the unique circumstances of these Chapter 11 Cases.

7. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

**Scope of Services**

8. The Debtors' prepetition engagement letter and amendment (collectively the "Engagement Letter") with A&M are attached hereto as Exhibit C, the terms of which shall govern the Debtors' retention of A&M except as explicitly set forth herein or in any order granting this Application.

9. It is our understanding that the Debtors have chosen additional advisors to assist in these Chapter 11 Cases, including Perella Weinberg Partners ("PWP") to act as their investment banker, FTI Consulting ("FTI") to provide eDiscovery services and AlixPartners ("Alix") to conduct forensic investigations. A&M will work closely with PWP,

FTI, Alix and all other Debtor advisors to prevent any duplication of efforts in the course of advising the Debtors.

10. Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans and supporting restructuring negotiations among the debtors, their advisors and their creditors with respect to an overall exit strategy for their Chapter 11 Cases.

11. A&M will provide such restructuring support, consulting, and crisis management services as A&M and the Debtors shall deem appropriate and feasible in order to support and advise the Debtors in the course of these Chapter 11 Cases, including, but not limited to:

a) assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' schedules of assets and liabilities, statements of financial affairs, monthly operating reports and rule 2015.3 reporting;

b) assistance with the identification and implementation of postpetition cash management procedures, including development of a 13-week cash forecast by silo;

c) advisory assistance in connection with the development and implementation of human resources processes, employee compensation and other critical employee benefit programs designed to maximize the value of the estate;

d) assistance in assessing the Debtors' vendor base to identify critical and foreign disbursements, size necessary Court relief and establish a vendor management process;

e) assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection of each;

f) assistance to Debtors' newly appointed management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

g) assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

h) attendance at meetings and assistance in discussions with potential investors, banks, and other secured lenders, any official committee(s) appointed in these Chapter 11 Cases, the United States Trustee, other parties in interest and professionals hired by same, as requested;

i) analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to validate such claims;

j) assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases, including information contained in the disclosure statement;

k) assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

l) assistance in the analysis / preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in these Chapter 11 Cases, including the development of the related tax consequences contained in the disclosure statement;

m) advice, support and coordination regarding the Debtors' efforts to recover and secure their assets;

n) assistance in gathering and analyzing data and information and supporting the Debtors (including at the direction of Debtors' outside counsel(s)) in responses to requests for data and information;

o) litigation advisory services with respect to accounting and tax matters, along with expert witness testimony on case related issues as required by the Debtors; and

p) rendering such other general business consulting or such other assistance as the Debtors' newly appointed management team or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be believed to be duplicative of services provided by other professionals in this proceeding.

**A&M's Disinterestedness**

12. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Mosley Declaration, A&M: (i) has no connection with the Debtors, their creditors, other parties-in-interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (i) does not hold any interest adverse to the Debtors' estates; and (i) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

13. Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

14. In addition, as set forth in the Mosley Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

**Terms of Retention**

15. Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter.

16. <u>Compensation.</u> In accordance with the terms of the Engagement Letter, A&M will be paid by the Company for the services of the A&M Professionals at their customary hourly billing rates, which shall be subject to the following ranges:

    A. Restructuring Professionals

| | | |
|---|---|---|
| i. | Managing Directors | $1,025-1,375 |
| ii. | Directors | $775-975 |
| iii. | Analysts/Associates | $425-775 |

    B. Non-Restructuring Professionals

| | | |
|---|---|---|
| i. | Managing Directors | $875-1,320 |
| ii. | Directors | $650-1,045 |
| iii. | Analysts/Associates | $350-700 |
| iv. | Paraprofessionals | $285-325 |

17. The above billing rate ranges reflect A&M's latest annual rate adjustment referenced in the Engagement Letter and the inclusion of additional A&M Professionals required by the scope of this engagement.

18. Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally. The rates above will remain in effect until December 31, 2023.

19. In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as

travel, lodging, third party duplications, data storage, messenger, telephone charges and specialty software subscriptions specifically required by the scope of this engagement. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the approval of this Application.  All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and local rules of this Court.

20. <u>Indemnification.</u>  As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in paragraph 10 of the Engagement Letter. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the pendency of these Chapter 11 cases:

a) A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

b) The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to <u>In re United Artists Theatre Company, et al.</u>, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this

Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Agreement as modified by this Order; and

    c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Application), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M.  All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

**<u>Fees</u>**

    21. The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court and guidelines established by the United States Trustee.

22. In the 90 days prior to the Petition Date, A&M received retainers and payments totaling $4,000,000[3] in the aggregate for estimated services performed prepetition for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for post-petition services and expenses to be rendered or incurred for or on behalf of the Debtors. The unapplied residual retainer, which is estimated to total approximately $3.9 million will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses and will be held until the end of these Chapter 11 cases and applied to A&M's finally approved fees in these proceedings.

23. Given the numerous issues that the A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## Jurisdiction

24. The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core

---

[3] A&M received a retainer payment of $1,000,000 (as described in the Engagement Letter), in addition to a $3,000,000 payment for an estimate of prepetition services, from West Realm Shire Inc. on November 14, 2022, a non-debtor at the time of payment.

proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a) and 328, 330, 331 and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

25. By this Application, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors, to retain and employ A&M as their financial advisors pursuant to sections 327(a) and 328 of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, to perform the services set forth more fully herein, *nunc pro tunc* to the Petition Date.

## Basis for Relief

26. The Debtors submit that the retention and employment of A&M under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

a) is not a creditor, an equity security holder, or an insider;

b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

        c)      does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

        27.      Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). A&M's prepetition relationship with the Debtors is therefore not an impediment to A&M's retention as the Debtors' postpetition financial advisor.

        28.      Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . ." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since the Debtors will require substantial assistance with the reorganization process, it is reasonable for the Debtors to seek to employ and retain A&M to serve as their financial advisor on the terms and conditions set forth herein.

### *Nunc Pro Tunc* Retention of A&M

        29.      Given the circumstances of these Chapter 11 Cases, the Debtors respectfully request that the employment of A&M be authorized *nunc pro tunc* to the Petition Date.

30. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas*, 798 F.2d 645, 650 (3d Cir. 1986).

31. As described in the First Day Declarations, these Chapter 11 Cases are unique. Due to the unprecedented facts and circumstances, these Chapter 11 Cases were filed on an expedited basis. Following the Petition Date, the Debtors and their professionals necessarily committed substantial resources towards stabilizing the Debtors' businesses and transitioning into chapter 11, including, among other things, seeking approval of various first-day and other motions. The Debtors and their professionals also have expended significant time towards the ongoing work to protect and recover assets around the world, while also advancing their investigation into the facts and circumstances that led to the Debtors' Chapter 11 Cases.

32. Accordingly, for the reasons set forth above, the Debtors believe that approval of the retention and employment of A&M *nunc pro tunc* to the Petition Date is in the best interest of the Debtors, their estates, their creditors and other parties-in-interest.

## Notice

33. Notice of this Application has been provided to: (a) the United States Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) the parties identified on the Debtors' consolidated lists of 50 largest unsecured creditors and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: December 21, 2022<br>Wilmington, Delaware | FTX Trading Ltd. and its affiliated debtors and debtors-in-possession<br><br>By: *John J. Ray III*<br>John J. Ray III<br>Chief Executive Officer |