**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date**: January 11, 2023 at 9:00 a.m. (ET)<br>**Objection Deadline**: January 4, 2023 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO NOVEMBER 16, 2022 AND (II) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(H)**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this application (this "Application") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 327(a), 328(a), and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016-1, and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), (a) authorizing the retention and employment of Perella Weinberg Partners LP (and together with its corporate advisory affiliates, "PWP" or the "Firm") as their investment banker *nunc pro tunc* to November 16, 2022, pursuant to the engagement letter dated November 19, 2022 (the "Engagement Agreement") attached to the Order as **Exhibit 1**[2] and (b) modifying the time keeping

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] All capitalized terms not defined herein shall have the meaning ascribed them in the Engagement Agreement.

{1368.002-W0069428.}

requirements of Local Rule 2016-2 and the guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") in connection with PWP's proposed engagement by the Debtors. Certain facts supporting this Application are set forth in the *Declaration of Bruce Mendelsohn in Support of Debtors' Application for an Order (I) Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Debtors Nunc Pro Tunc to November 16, 2022 and (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2(h)* (the "Mendelsohn Declaration"), attached hereto as **Exhibit B**. In further support of the Application, the Debtors respectfully state as follows:

## BACKGROUND

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental*

*Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

**PWP'S QUALIFICATIONS**

3. PWP is a leading global independent advisory firm that provides strategic and financial advice to clients across a range of the most active industry sectors and international markets, with offices in New York, London, Houston, Calgary, Chicago, Denver, Los Angeles, Munich, Paris, and San Francisco. PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings. PWP's mergers and acquisitions practice advises both public and private companies. Its financial restructuring practice works with companies, investors, and other parties-in-interest in turn-around and distressed situations.

4. PWP and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major in-court restructurings in which PWP has recently been involved include: *In re Talen Energy Supply, LLC,* Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re TPC Grp. Inc.,* Case No. 22-10493 (CTG) (Bankr. D. Del.); *In re Ion Geophysical Corp., et al.,* Case No. 22-30987 (MI) (Bankr. S.D. Tex.); *In re Ector Cty. Energy Ctr. LLC,* Case No. 22-10320 (JTD) (Bankr. D. Del.); *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del.); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr D. Del.); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re Cal. Res. Corp.,* Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re CARBO Ceramics Inc.*, Case No. 20-31973 (MI) (Bankr. S.D. Tex.); *In re Hartshorne Holdings, LLC*, Case No. 20-40133 (THF) (Bankr. W.D. Ky.). PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including Algeco Group, Blackhawk Mining, Danaos Corporation, International

Automotive Components Group, Del Monte, Jack Cooper, Key Energy Services, Medical Depot Holdings, Pernix Therapeutics, Proserv, Salt Creek Midstream, Savers, SM Energy Company, Sprint Industrial Holdings, Titan Energy and WeWork Companies.

5. PWP was engaged by the Debtors effective November 16, 2022 pursuant to the Engagement Agreement. The Debtors selected PWP as their investment banker because of PWP's extensive experience, expertise, and knowledge in advising troubled companies in connection with chapter 11, and out-of-court restructurings and distressed merger and acquisition transactions and its involvement and success in many complex cases. The Debtors believe that PWP will provide a substantial value to the estates.

## SCOPE OF SERVICES

6. The Debtors and PWP negotiated the terms and conditions of the Engagement Agreement at arm's length and the Engagement Agreement reflects the parties' mutual agreement as to the substantial efforts that will be required in this engagement. The terms of the Engagement Agreement will govern the relationship between PWP and the Debtors.

7. As stated in the Engagement Agreement, subject to the Court's approval, the Debtors anticipate that PWP will provide the following investment banking services to the Debtors, to the extent requested by the Debtors:[3]

*Financial Advisory Services*

    (a)    Familiarize PWP with the business, operations, properties, financial condition and prospects of the Debtors and their assets;

    (b)    Review the Debtors' financial condition and outlook and assist in analyzing the range of options available to the Debtors;

---

[3] The description of the Engagement Agreement in this Application is a summary. To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement control. Capitalized terms not otherwise defined in this section have the meaning ascribed to them in the Engagement Agreement.

(c) Assist in the development of financial data, analysis and presentations to the Debtors' Board of Directors, various creditors, and other parties;

(d) Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

(e) Evaluate the Debtors' debt capacity, if any, and alternative capital structures;

(f) Participate in negotiations among the Debtors and their vendors, creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated by the Engagement Agreement;

(g) Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of any credit facilities; and

(h) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by the Engagement Agreement, as requested and mutually agreed.

*Restructuring Services*

(a) Analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring;

(b) Provide strategic advice with regard to restructuring or refinancing the Debtors' obligations;

(c) Provide financial advice and assistance to the Debtors in developing a Restructuring and/or asset monetization process;

(d) In connection therewith, provide financial advice and assistance to the Debtors in structuring any new securities to be issued under a Restructuring; and

(e) Assist the Debtors and/or participate in negotiations with entities or groups affected by the Restructuring.

*Financing Services*

(a) Provide financial advice to the Debtors in structuring and effecting a Financing, identify potential Investors and, at the Debtors' request, contact and solicit such Investors; and

(b) Assist in the arranging of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing, as requested.

*Sale Services*

    (a)    Provide financial advice to the Debtors in structuring, evaluating and effecting a Sale, including a monetization of individual or multiple assets, identify potential acquirers and, at the Debtors' request, contact and solicit potential acquirers; and

    (b)    Assist in the arranging and executing a Sale, including identifying potential buyers or parties-in-interest, assisting in the due diligence process and marketing process, and negotiating the terms of any proposed Sale.

8.    The foregoing services are necessary to enable the Debtors to pursue and effectuate the value-maximizing restructuring transactions contemplated in the Chapter 11 Cases for the benefit of all of the Debtors' stakeholders.

## NO DUPLICATION OF SERVICES

9.    The Debtors require PWP's advice and services in order to maximize the value of their estates. The Debtors believe that the services provided by PWP will not duplicate the services that other professionals will be providing to the Debtors in the Chapter 11 Cases. Specifically, PWP will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in the Chapter 11 Cases to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

10.    In consideration of the services to be provided by PWP, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtors have agreed to pay PWP the following proposed compensation (the "Fee Structure"). In summary, under the terms of the Engagement Agreement and subject to the Court's approval, PWP will be compensated for its services as follows:[4]

---

[4]    The description of the Fee Structure in this Application is a summary. To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement control. Capitalized terms not otherwise defined in this section have the meaning ascribed to them in the Engagement Agreement.

{1368.002-W0069428.}    6

(a)     a monthly financial advisory fee of $450,000 (the "Monthly Fee"), due and payable on the first day of each month (the "Payment Date") during the Engagement, provided that such Monthly Fee shall be on a prorated basis from the Engagement Date through the end of the month in which the Engagement Agreement is dated; plus

(b)     a Sale Fee based on the Transaction Value, determined in accordance with the table set forth below; provided that in the event of multiple Sales, each Sale Fee for each respective Date will be calculated independently of any other Sale Fee, and payable promptly upon consummation of each respective Sale:

| Transaction Value | Fee Percentage |
|---|---|
| Less than $50 million | 0.00% |
| Equal to $50 million but less than $250 million | 2.50% |
| Equal to $250 million but less than $500 million | 2.00% |
| Equal to $500 million but less than $1,000 million | 1.75% |
| Equal to $1,000 million but less than $2,000 million | 1.25% |
| Equal to or greater than $2,000 million | 1.00% |

plus

(c)     a Financing Fee payable promptly upon consummation of any Financing in an amount equal to the sum of (i) 1.00% of all gross proceeds from the issuance of secured debt financing, plus (ii) 2.5% of all gross proceeds from the issuance of unsecured debt financing, plus (iii) 5.00% of all gross proceeds from the issuance of equity or equity-linked financing.

11.     The Engagement Agreement also provides for a Restructuring Fee payable promptly upon consummation of any Restructuring, in an amount to be mutually agreed in good faith between the Debtors and PWP and subject to court approval. By this Application, the Debtors are not seeking approval of the Restructuring Fee.

12.     To the extent that the Debtors elect to terminate PWP's engagement, the Debtors have agreed that they shall be required to pay the full amount of PWP's Restructuring, Financing,

or Sales Fees if, during the term or within one year of such termination (a) any Restructuring, Financing and/or Sale is effected, or (b) the Debtors agree to a Restructuring, Financing and/or Sale which is subsequently effected, at any time.

13.     The Engagement Agreement also provides that, in addition to PWP's fees for professional services, the Debtors shall also reimburse PWP upon invoice for all of its reasonable out-of-pocket expenses (including, but not limited to, professional and legal fees, charges and disbursements of PWP's legal counsel), any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in the Engagement Agreement, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services incurred in connection with PWP's engagement; *provided* that expenses in connection with the preparation of the Engagement and the approval of the Engagement by the Court shall not exceed $25,000.  Pursuant to Local Rule 2014-1(c), PWP discloses (i) that it has retained Porter Hedges LLP in connection with preparation of the Engagement and seeking approval of the Engagement from the Court; and (ii) that it has retained Mayer Brown LLP in connection with certain divestitures and asset sales of the Debtors.  PWP will seek reimbursement of Porter Hedges LLP's and Mayer Brown LLP's fees and expenses pursuant to Local Rule 2016-2(f) and the Engagement Agreement.

## TIMEKEEPING OBLIGATIONS OF PWP

14.     The Debtors respectfully submit that PWP should be excused from compliance with certain information requirements set forth in Local Rule 2016-2(d) and the UST Guidelines for cause pursuant to Local Rule 2016-2(h) because it is not the general practice of investment banking firms—including PWP—to keep detailed time records similar to those customarily kept by attorneys.

15. Because PWP does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors request that PWP be excused from compliance with the information requirements set forth in Local Rule 2016-2(d). Instead, the Debtors respectfully request that PWP be required only to keep reasonably detailed summary time records, in half-hour increments, which time records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed. Courts in other large chapter 11 cases have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g., In re TPC Grp. Inc.*, Case No. 22-10493 (CTG) (Bankr. D. Del. July 20, 2022); *In re Ruby Pipeline, L.L.C.*, Case No. 22-10278 (CTG) (Bankr. D. Del. July 19, 2022); *In re MD Helicopters, Inc.*, Case No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re RTI Holding Co.*, Case No. 20-12456 (JTD) (Bankr. D. Del. Nov. 9, 2020); *In re Joerns WoundCo Holdings, Inc.*, Case No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re EdgeMarc Energy Holdings, LLC*, Case No. 19-11104 (JTD) (Bankr. D. Del. July 19, 2019); *In re Rex Energy Corp.*, Case No. 18-22043 (JAD) (Bankr. W.D. Pa. June 26, 2018).

16. Notwithstanding the foregoing, PWP shall apply to the Court for the allowance of compensation for services rendered and reimbursement of expenses incurred. However, the Debtors request a waiver of the requirement that PWP file time records at the time it submits its fee applications. Instead, PWP will maintain records, consistent with past practice, in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Cases, to accompany PWP's subsequently filed fee applications.

17. In any event, PWP's applications for compensation and expenses will be only paid by the Debtors pursuant to the terms of the Engagement Agreement in accordance with any order approving and authorizing payment to PWP.

**INDEMNIFICATION PROVISIONS[5]**

18. As a material part of the consideration for which PWP has agreed to provide the services described herein, Annex A to the Engagement Agreement provides for certain indemnification obligations to PWP and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling PWP or any of its affiliates (PWP and each such other person being an "<u>Indemnified Person</u>") from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with PWP's engagement or any matter referred to in the Engagement Agreement, and will reimburse each Indemnified Person for all expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement Agreement, whether or not pending or threatened and whether or not any Indemnified Person is a party; *provided*, *however*, that the Debtors will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the gross negligence, bad faith, intentional fraud or willful misconduct of any Indemnified Person.

19. In the Engagement Agreement, the Debtors also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors

---

[5] To the extent there is any inconsistency between the summary of the indemnification, contribution, or exculpation provisions set forth in this Application and the indemnification, contribution, or exculpation provisions set forth in Annex A to the Engagement Agreement, the terms of Annex A to the Engagement Agreement shall control.

for or in connection with the Engagement Agreement, except for any such liability for losses, claims, damages or liabilities incurred by the Debtors that are finally judicially determined to have resulted primarily from the gross negligence, bad faith, intentional fraud or willful misconduct of such Indemnified Person.

20. If the indemnification provided for in Annex A to the Engagement Agreement is, for any reason not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to therein, then, in lieu of indemnifying such Indemnified Person thereunder, the Debtors shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to PWP, on the one hand, and the Debtors, on the other hand, of the Engagement Agreement[6] or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of PWP and the Debtors, as well as any other relevant equitable considerations; *provided*, *however*, to the extent permitted by applicable law, in no event shall PWP's aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by PWP under the Engagement Agreement.

21. The indemnity, contribution, and other obligations and agreements of the Debtors set forth in Annex A and the Engagement Agreement to which it is attached (a) shall apply to any

---

[6] The Engagement Agreement provides that the relative benefits to PWP and the Debtors under the Engagement Agreement shall be deemed to be in the same proportion as (i) the fees paid or to be paid to PWP under the Engagement Agreement, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Debtors or its stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement Agreement, whether or not any such transaction is consummated.

services provided by PWP in connection with the Engagement Agreement prior to the date of the Engagement Agreement and (b) shall survive the completion or termination of the engagement.

22. The Debtors and PWP believe that the indemnification, contribution, reimbursement and other related provisions contained in the Engagement Agreement are customary and reasonable for investment banking engagements, both in and out of court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions. Similar indemnification arrangements have been approved and implemented in other large chapter 11 cases. *See, e.g., In re TPC Grp. Inc.*, Case No. 22-10493 (CTG) (Bankr. D. Del. July 20, 2022); *In re Ruby Pipeline, L.L.C.,* Case No. 22-10278 (CTG) (Bankr. D. Del. July 19, 2022); *In re MD Helicopters, Inc.*, Case No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re RTI Holding Co.*, Case No. 20-12456 (JTD) (Bankr. D. Del. Nov. 9, 2020); *In re Joerns WoundCo Holdings, Inc.*, Case No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re EdgeMarc Energy Holdings, LLC*, Case No. 19-11104 (JTD) (Bankr. D. Del. July 19, 2019).

23. The Debtors represent that the terms and conditions of the Engagement Agreement, including these provisions, were negotiated by the Debtors and PWP at arm's length and in good faith.

**PWP'S PREPETITION COMPENSATION**

24. PWP did not receive any compensation from the Debtors, prepetition or otherwise, pursuant to the Engagement Agreement.

25. As set forth in the Mendelsohn Declaration, PWP has not shared or agreed to share any of its compensation from the Debtors with any other entity or person, other than employees of PWP and as permitted by section 504 of the Bankruptcy Code.

## PWP'S DISINTERESTEDNESS

26. As described in more detail in the Mendelsohn Declaration, PWP reviewed its client databases and records to determine whether it represents or has represented parties-in-interest that the Debtors identified to PWP in the Chapter 11 Cases. Except as otherwise disclosed in the Mendelsohn Declaration, any such representations are unrelated to the Debtors or the Chapter 11 Cases.

27. Based on such review, PWP has informed the Debtors that, except as set forth in the Mendelsohn Declaration, PWP (a) has no connection with the Debtors, their creditors, or other parties-in-interest, or their respective attorneys or other professionals, the U.S. Trustee or any person employed in the Office of the U.S. Trustee, in any matter related to the Debtors and their estates, (b) does not hold any interest adverse to the Debtors' estates and (c) believes it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

28. Accordingly, the Debtors believe that PWP is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code. As set forth in the Mendelsohn Declaration, if any new relevant facts or relationships are discovered or arise during the pendency of the Chapter 11 Cases, PWP will file a supplemental declaration disclosing such new facts or relationships in accordance with Bankruptcy Rule 2014(a).

## JURISDICTION

29. The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 327(a), 328(a) and 1107(a)

of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1, 2016-1, and 2016-2. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

30. By this Application, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to retain and employ PWP as their investment banker in connection with these Chapter 11 Cases *nunc pro tunc* to November 16, 2022.

## BASIS FOR RELIEF

31. The Debtors seek authority to retain and employ PWP pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval, may employ one or more professional persons "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a). A "disinterested person" is a person that (a) is not a creditor, an equity security holder, or an insider of the debtor; (b) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

32. Further, Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party

>in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.  This Application includes all of the required specific facts and therefore, complies with this rule.

33.    Relatedly, the Debtors seek approval of the terms of the Engagement Agreement under section 328(a) of the Bankruptcy Code, which provides that a debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingency fee basis."  11 U.S.C. § 328(a).

34.    Section 328(a) of the Bankruptcy Code expressly permits compensation of professionals, such as investment bankers, on flexible terms that reflect the nature of their services and market conditions.  *See Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee)."); *see also In re Wash. Mut., Inc.*, Case No. 08-12229 (MFW), 2018 WL 704361, at *4 (Bankr. D. Del. Feb. 2, 2018) (stating that "courts 'must protect agreements and expectations' once they have been found reasonable") (quoting *In re Nat'l Gypsum Co.*).

35.    The Debtors submit that the terms and conditions of the Engagement Agreement, including the Fee Structure, are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code considering: (i) the numerous issues that PWP may be required to address in performing its services for the Debtors pursuant to the Engagement Agreement, (ii) PWP's commitment to the variable time requirements and effort necessary to address all such issues as they arise, (iii) PWP's substantial investment banking experience, (iv) the market prices for PWP's services for engagements of this nature and (v) the fee structures

typically utilized by PWP and other investment bankers, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

36. Accordingly, the Debtors believe that it is appropriate for PWP's compensation to be subject to the section 328(a) standard of review, rather than that under section 330 of the Bankruptcy Code, except with respect to the U.S. Trustee. Indeed, monthly fee and transaction fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this jurisdiction. *See, e.g.*, *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del. Apr. 15, 2021); *In re Highpoint Res. Corp.*, Case No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re RTI Holding Co.*, Case No. 20-12456 (JTD) (Bankr. D. Del. Nov. 9, 2020); *In re Joerns WoundCo Holdings, Inc.*, Case No. 19-11401 (JTD) (Bankr. D. Del. July 25, 2019); *In re EdgeMarc Energy Holdings, LLC*, Case No. 19-11104 (JTD) (Bankr. D. Del. July 19, 2019); *In re David's Bridal, Inc.*, Case No. 18-12635 (Bankr. D. Del. Jan. 4, 2019); *In re New MACH Gen., LLC*, Case No. 18-11368 (Bankr. D. Del. July 2, 2018); *In re Enduro Res. Partners LLC*, Case No. 18-11174 (Bankr. D. Del. June 8, 2018).

37. The Debtors believe that retention of PWP is appropriate and in the best interest of the Debtors and their estates and respectfully requests that PWP's retention be approved, on the terms described herein.

### *NUNC PRO TUNC* RETENTION OF PWP

38. Given the circumstances of these Chapter 11 Cases, the Debtors respectfully request that the employment of PWP be authorized *nunc pro tunc* to November 16, 2022.

39. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas*, 798 F.2d 645, 650 (3d Cir. 1986).

40. As described in the First Day Declarations, these Chapter 11 Cases are unique. These Chapter 11 Cases were filed on an expedited basis. Following the Petition Date,[7] the Debtors and their professionals necessarily committed substantial resources towards stabilizing the Debtors' businesses and transitioning into chapter 11, including, among other things, seeking approval of various first-day and other motions. The Debtors and their professionals also have expended significant time toward the ongoing work to protect and recover assets around the world, while also advancing their investigation into the facts and circumstances that led to the Debtors' commencement of these Chapter 11 Cases.

41. Accordingly, for the reasons set forth above, the Debtors believe that approval of the retention and employment of PWP, *nunc pro tunc* to November 16, 2022 is in the best interest of the Debtors and their estates.

## NOTICE

42. Notice of this Application has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) the parties identified on the Debtors' consolidated lists of 50 largest unsecured creditors and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[7] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: December 21, 2022　　　　　　　FTX Trading Ltd. and its affiliated
　　　　Wilmington, Delaware　　　　　debtors and debtors-in-possession

　　　　　　　　　　　　　　　　　　By: */s/ John J. Ray III*
　　　　　　　　　　　　　　　　　　John J. Ray III
　　　　　　　　　　　　　　　　　　Chief Executive Officer