# **EXHIBIT A**

**Engagement Letter**

{1368.002-W0069421.}
4862-0242-7971 v.5



RLKS EXECUTIVE SOLUTIONS LLC

Kathryn Schultea
RLKS Executive Solutions LLC
P.O. Box 591669
Houston, TX 77259
Direct Dial 713-824-2905
kschultea@rlks.net

November 15, 2022

John J. Ray, III
CEO, FTX Trading Ltd., Unit #3B
Bryson's Commercial Complex
Friars Hill Road
St. John's, Antigua

Dear Mr. Ray:

This letter confirms the understanding and agreement of RLKS Executive Solutions LLC ("RLKS") to provide professional services to FTX Trading Ltd. (the "Company"), in connection with the chapter 11 cases ("Bankruptcy") of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"). The Company will be solely responsible for the payment of our fees and expenses and any amounts due as stated below.

1. Services:

   In their role as consultants, RLKS will provide certain Services (as defined herein) to the Debtors as set forth below (the "Engagement"). The Engagement and the [enclosed] Terms and Conditions together constitute the engagement contract (the "Engagement Letter") pursuant to which the Services will be provided. This Engagement Letter will be effective as of November 15, 2022 (the "Effective Date"). In connection with the Engagement, RLKS shall furnish the services of Kathryn Schultea to serve as Chief Administrative Officer ("CAO"), Mary Cilia to serve as Chief Financial Officer ("CFO"), and Raj Perubhatla as Chief Information Officer ("CIO"), collectively (the "Chief Officers").

   RLKS will also perform other services to the Debtors in connection with the Bankruptcy, including without limitation, accounting and treasury, financial analysis, audits and cash flow forecast, information technology, human resource management, claims management, and such other related functions (all of the foregoing collectively, the "Services") as assigned by the Chief Executive Officer of the Company ("CEO"). For purposes of the Engagement, RLKS will take direction from and report its views and conclusions only to the CEO and others designated by the CEO. The parties agree that, subject to the terms and provisions of this Engagement Contract, RLKS and its employees and agents may perform any duties hereunder and set their own work schedule without day-to-day supervision by Debtors, but subject always to direction of the CEO for the Company. In addition to these specific services, we understand that we may be asked to participate in meetings and discussions with the Debtor, the Debtor's advisors, the Board or other creditor constituencies, and their

respective professionals.

2. <u>Fees</u>:

In such capacity the Chief Officers shall perform all duties that are usual and customary for these executive positions and charge the Company an hourly fee of $975 per hour, plus reasonable out of pocket expenses including but not limited to hotel, travel, meals, airfare, conference call charges, and PACER charges ("Expenses"). The hourly rate may be increased on an annual basis and shall be billed bi-monthly. RLKS shall be responsible for the payment of all amounts, wages and benefits, and all tax withholding obligations on such payments, to Ms. Schultea, Ms. Cilia, and Mr. Perubhatla and they shall not be eligible to participate in any employee benefit plans of the Company.

In consideration for all Services performed by RLKS, RLKS will charge the Company at their customary hourly billing rates with the exception of the three Chief Officer positions. The current hourly billing rates (the "Fees") for additional personnel, based on the positions held at RLKS, are subject to the following ranges:

> Managing Directors - $800 - $950
> Directors - $600 - $775
> Senior Managers - $450 - $575
> Analysts/Associates - $350 - $425

In addition to the Fees, RLKS shall bill the Company for reasonable Expenses incurred by RLKS on behalf of the Debtors during this Engagement Letter. RLKS shall provide the Company with reasonable and appropriate detail of all such requested expense reimbursements.

It is understood that we are being retained as advisors and consultants, and as such, we acknowledge and agree that communications relating to the services hereunder and any written reports, memoranda, status summaries, or other work product prepared by us in connection with this Engagement (collectively "Work Product") are confidential and subject to applicable privileges and immunities, and we agree that we will not disclose any communications between us or the Debtors or any Work Product, except upon the written advice and instruction of the Company, or as required herein. The Debtors shall own all Work Product, and we hereby agree that we shall not assert any ownership or other rights whatsoever therein.

3. <u>Term and Termination of Term</u>:

The Engagement Letter will commence as of the Effective Date, and shall continue on a month to month basis until terminated by either party without cause pursuant to the delivery of 30 days advanced written notice of such termination to the other party. In the event of any termination of the Engagement Letter, the Company shall pay RLKS the hourly fees billed through the date of termination plus any unpaid costs and expenses.

4. <u>Projections; Reliance; Limitations of Duties</u>:

The Company understands that the services rendered may include assisting in the preparation of projections and other forward-looking statement and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from the projections and other forward-looking statements. In addition, the Chief Officers will rely on other Company advisors and personnel related to information in the preparation of such projections and forward-looking statements. The Company understands that neither the Chief Officers nor RLKS is engaged to perform an audit, review, or compilation, or any other type of financial statement that is subject to the rules of the SEC or any other state or Federal professional or regulatory body. RLKS is entitled to rely on information provided by the Company.

5. <u>Confidentiality</u>:

For purposes of this Engagement Letter, "<u>Information</u>" means all non-public, confidential or proprietary materials and information relating to the respective businesses and operations of the Debtors, whether owned by them or third parties, that is disclosed by the Debtors or their representatives or is acquired in the course of discussions or investigations, in whatever form provided, and includes, without limitation: (a) financial, accounting and tax information; (b) business plans, products and services, marketing and sales information, customer lists, volumes and pricing information; (c) purchasing information; (d) employee lists, policies and files; (e) trade secrets, operating and training procedures, production processes, research and development data, samples, test results, formulas, designs, specifications, know-how, inventions and ideas, improvements, discoveries, software (including passwords and source and object code), database technologies, and any other intellectual property, and other technical information; (f) all agreements and transaction information; (g) all notes, summaries, studies, analyses and other material that are prepared by RLKS and contain or are generated from Information.

"Information" does not include information that: (i) is or becomes generally known by or available to the public other than as a result of a disclosure by RLKS in breach of this Engagement Letter; (ii) RLKS can show, by competent evidence, was known to it on a nonconfidential basis prior to disclosure thereof to RLKS; (iii) becomes available to RLKS on a non-confidential basis from a source other than the Debtors or their representatives, provided that such source is not known to RLKS to be subject to any prohibition against transmitting such information to it; or (iv) is independently developed by RLKS without reliance on the Information.

RLKS acknowledges that all Information is valuable and confidential to the Debtors, remains their respective property and will be kept by RLKS in strict confidence. RLKS will only use or copy the Information for the purpose of performing the Services under this Engagement Letter. RLKS will not, directly or indirectly, disclose Information to any person, except (a) as specifically consented to in writing by the Company or (b) as required by law. If RLKS becomes legally compelled (whether by law, rule, regulation, subpoena or similar court or other lawful process) to disclose Information, RLKS will promptly notify the Company so

3

that the Company may (but it need not) seek a protective order or other appropriate remedy, with RLKS's cooperation, or waive compliance with the provisions of this Engagement Letter. In any event, RLKS will furnish only that portion of the Information which, based on written advice of legal counsel, it or he reasonably believes is legally required and will exercise reasonable efforts to obtain reliable assurances that confidential treatment will be accorded to such Information.

RLKS will exercise reasonable care to preserve the confidentiality of the Information and will employ at least the same safeguards as it uses to protect its or his own confidential information of a similar nature. RLKS will not modify, disassemble, decompile or otherwise reverse engineer the Information.

Each of RLKS acknowledges and agrees that a breach of the confidentiality provision shall result in irreparable harm to the Debtors and that remedies at law may be inadequate to redress any such breach, and therefore RLKS acknowledges and agrees that the Debtors will be entitled to injunctive or similar equitable remedy against RLKS and RLKS shall not take any action to oppose or hinder the Debtors in obtaining such relief.

Promptly after the Company's request at any time and upon termination or expiration of this Engagement Letter, RLKS will return all Information consisting of original documents received from the Debtors and it will destroy all other Information that is in tangible form and is in RLKS's possession, without retaining copies. Promptly after the Company's request, RLKS will certify such return or destruction in writing.

6. Indemnification:

    The Company hereby agrees to indemnify and hold RLKS, Ms. Schultea, Ms. Cilia, and Mr. Perubhatla (each an "Indemnitee") harmless from and against any damages, costs, expenses and liabilities, taxes and penalties of any kind and nature whatsoever ("Losses") which shall include, but not be limited to, all reasonable attorney's fees) to the extent arising out of, related to, are imposed upon or asserted at any time against RLKS, Ms. Schultea, Ms. Cilia, and Mr. Perubhatla, with respect to the performance of the Services under this Engagement Letter ("Actions"), including, without limitation, any Losses with respect to any threatened, pending or completed claim (a "Claim"), any investigation, action, cause of action, suit, arbitration, appeal, controversy or other proceeding, whether civil, criminal, administrative or investigative (a "Proceeding"); provided, however, that an Indemnitee shall not be entitled to indemnification arising from any acts by the Indemnitee of bad faith, willful misconduct, or gross negligence.

    Furthermore, and without limiting the foregoing, the Company shall indemnify the Indemnitees to the same extent as the most favorable indemnification it extends to its officers, by contract, or otherwise. The Company shall include RLKS, Ms. Schultea, Ms. Cilia, and Mr. Perubhatla, as additional named insureds under the Company's D&O policies, including any new and additional policies which may be procured during the Engagement. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the charter, bylaws, or other organizational documents or policies shall

4

affect the Indemnitee's rights hereunder.

An Indemnitee shall promptly notify the Company of the commencement of any Proceeding, or any occurrence of any event which might give rise to a Claim; however, unless such failure to provide notice was intentional and the Company has been materially prejudiced thereby, the failure to notify the Company shall not relieve the Company from any liability hereunder. Neither an Indemnitee nor the Company will, without the other party's prior written consent, agree to a settlement of any Claim or Proceeding.

Notwithstanding any other provision of this Engagement Letter, the Company shall, from time to time and to the extent not prohibited by applicable law, advance any reasonable expenses, costs, disbursements, including, without limitation, reasonable attorney's fees incurred by or on behalf of the Indemnitee in connection with defending the Indemnitee under any action threatened or brought against an Indemnitee as a result of the acts or omissions, actual or alleged, or the Indemnitee in its capacity as such (collectively, "Expenses") within five (5) days after the receipt by the Company of a statement or statements from the Indemnitee requesting such advance or advances. Such statement or statements shall reasonably evidence each of the Expenses incurred by the Indemnitee for which the Indemnitee seeks advancement and shall include or be preceded or accompanied by an undertaking by or on behalf of the Indemnitee to repay any Expenses advanced if it shall ultimately be determined that the Indemnitee is not entitled to be indemnified against such Expenses as described below. Any advances and undertakings to repay pursuant to this Section 5 shall be unsecured and interest free. Notwithstanding anything set forth to the contrary in this Engagement Letter, the Company and the Indemnitee may agree from time to time that the Company shall pay certain Expenses directly to the applicable third parties, without any obligation for the Indemnitee to submit a prior statement to the Company. The Indemnitee shall have the obligation to repay such Expenses to the Company if it is ultimately determined that the Indemnitee is not entitled to be indemnified for such Expenses pursuant to the issuance of a final order finding that the Indemnitee is not entitled to indemnification under this Engagement Letter. For purposes of this Engagement Letter, the term "final order" shall mean a non-appealable judgment or order issued by a court of competent jurisdiction. The rights granted by this Section 5 shall not be deemed exclusive of any other rights to which an Indemnitee may be entitled under any statute, agreement, or otherwise, both as to action in an indemnified capacity and as to action in any other capacity. The indemnification provisions of this section shall survive the termination or expiration of this Engagement Letter.

7. <u>Miscellaneous</u>:

This Engagement Letter: (a) shall be governed and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified, except in writing executed by each of the signatories hereto. The parties agree that any dispute with respect to any matter relating to or arising out of the performance or non-performance of the Company or RLKS hereunder shall be heard and resolved in a state or federal court or

5

competent jurisdiction located in the State of Delaware, except to the extent the Company is subject to the jurisdiction of a United States Bankruptcy Court in which case the parties agree to the jurisdiction of the Bankruptcy Court to hear and resolve any dispute under this Engagement Letter. The parties also agree to waive a trial by jury in any such dispute. The terms of this Engagement Letter that by their context are intended to be performed after the termination or expiration of this Engagement Letter and are intended to survive such termination or expiration shall continue to bind all parties.

Please acknowledge your agreement with this letter by signing and returning a copy to us.

Sincerely,

RLKS EXECUTIVE SOLUTIONS LLC

*[signature]*

Kathryn Schultea
President & COO

Acknowledged and Agreed:

*[signature]*

John J. Ray, III
CEO, FTX Trading Ltd.