# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: January 11, 2023 at 9:00 a.m. (ET)<br>Objection Deadline: January 4, 2023 at 4:00 p.m. (ET) |

## DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF ALIXPARTNERS, LLP AS FORENSIC INVESTIGATION CONSULTANT TO THE DEBTORS <u>*NUNC PRO TUNC* TO NOVEMBER 28, 2022</u>

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), hereby submit this application (this "<u>Application</u>") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "<u>Order</u>"), pursuant to section 105(a), 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "<u>Local Rules</u>"), authorizing the retention and employment of AlixPartners, LLP ("<u>AlixPartners</u>") as forensic investigation consultant to the Debtors *nunc pro tunc* to November 28, 2022 in accordance with the terms of the engagement letter by and among the Debtors and AlixPartners, dated as of November 28, 2022 (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as <u>Exhibit B</u>. Certain facts supporting this Application are set forth in

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

the declaration of Matthew Evans, a Managing Director and Leader of the Americas Risk Advisory Practice of AlixPartners, LLP (the "<u>Evans Declaration</u>"), attached hereto as <u>Exhibit C</u>.

**Background**

1.  On November 11 and November 14, 2022 (as applicable, the "<u>Petition Date</u>"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "<u>Chapter 11 Cases</u>") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.  Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "<u>First Day Declarations</u>").

**Jurisdiction and Venue**

3.  The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief requested herein are sections 105(a), 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rules 2014-1 and 2016-1. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## Relief Requested

4.     By this Application, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to retain and employ AlixPartners as forensic investigation consultant in connection with these Chapter 11 Cases effective *nunc pro tunc* to November 28, 2022.

## AlixPartners' Qualifications

5.     AlixPartners is an internationally recognized consulting firm with substantial experience in providing restructuring and turnaround services as well as forensic accounting and investigative services. AlixPartners has an excellent reputation for its work in large and complex chapter 11 cases in the United States, in financial exchange and trading inquiries, and in the most complex legal and regulatory investigations around the globe. AlixPartners works closely with market participants, exchanges and clients in cryptocurrency-related matters and its consultants are thought-leaders on the implications of blockchain technology for disputes and investigations. AlixPartners has a full suite of cryptocurrency-relevant experience including investigations, expert testimony, litigation support, compliance, and regulatory related matters.

6.     Individuals working on these Chapter 11 Cases on behalf of AlixPartners are highly sought for their expertise and skillsets associated with forensic accounting, financial services disputes, financial derivatives markets and cryptocurrency matters, amongst other applicable

experience. Matthew Evans is a Managing Director at AlixPartners and an expert in global financial derivatives markets. He leads a highly specialized economic and forensic research team which, for almost twenty years, has been dedicated to the investigation of exchange and OTC trading activity, investment fraud, market manipulation, collusion and other trading conduct issues. He was a testifying expert regarding customer accounts in proceedings regarding the bankruptcy of MF Global Inc. and has testified as an expert in exchange markets and trading data analytics many times over the past fifteen years. Matthew Jacques is a Managing Director at AlixPartners and a former Chief Accountant for the Enforcement Division for the U.S. Securities Exchange Commission. Mr. Jacques has extensive investigative experience in the private sector and as a regulator and has performed or supervised hundreds of matters involving asset misappropriation and offering fraud across a wide array of industries. David White is a Managing Director at AlixPartners and a Certified Cryptocurrency Forensic Investigator who has provided digital forensic investigations expertise in disputes involving various forms of digital assets and blockchain technologies. Mr. White's experience includes tracing asset movement, deanonymizing entities on blockchains, and serving as testifying expert on technical issues in multiple crypto-related engagements including a multi-billion-dollar crypto dispute. Charles Cipione is a Managing Director at AlixPartners who specializes in software application processes, auditability, and data management. Mr. Cipione is an expert in information systems interrogation and has served as such in cases involving source code review, oversight of data assets, and the investigation and remediation of alleged deficiencies in daily financial transactions. The real-world, high-impact expertise that AlixPartners has to offer is exceptional and will function as a crucial benefit in these Chapter 11 Cases.

7.  In light of the size and complexity of these Chapter 11 Cases, the Debtors require a qualified and experienced forensic investigation consultant with the resources, capabilities, and experience of AlixPartners to assist them in taking steps that are crucial to the success of the Chapter 11 Cases.

8.  AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these Chapter 11 Cases.  AlixPartners' professionals have provided services in numerous large cases, including recent filings in this district.  *See, e.g.*, *In re Phoenix Services Topco, LLC*, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022); *In re Kabbage Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 20220; *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re MD Helicopters, Inc.,* No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re RGN-Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr. D. Del. July 23, 2020); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019; *In re David's Bridal,* No. 18-12635 (LSS) (Bankr, D. Del. Dec. 18, 2018); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018); *In re Am. Tire Distribs.*, No. 18-12221 (KJC) (Bankr. D.

Del. Nov. 1, 2018); *In re The Bon-Ton Stores, Inc.,* No. 18-10248 (MFW) (Bankr. D. Del. Mar. 6, 2018; and *In re Charming Charlie Holdings, Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 20, 2018).

9.  The Debtors have selected AlixPartners as their forensic investigation consultant because of AlixPartners' experience and reputation. AlixPartners has experience and expertise that will assist it in providing effective and efficient services in these Chapter 11 Cases. AlixPartners performs critical services that complement, and are not duplicative of, the services provided by other professionals in these Chapter 11 Cases. The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein are necessary and appropriate, are in the best interest of the Debtors and their estates.

10. If the Application is approved, AlixPartners personnel, all with substantial expertise in the areas discussed above, will provide necessary services to the Debtors. Such personnel will work closely with the Debtors' management and other professionals throughout the reorganization process. By virtue of the expertise of its personnel, AlixPartners is well qualified to provide services to and represent the Debtors' interests in these Chapter 11 Cases.

### Services to be Provided

11. On November 28, 2022, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them. The terms and conditions of the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Subject to further order of the Court, AlixPartners may provide services at the direction of Sullivan & Cromwell LLP that relate to internal investigative inquiries and those raised by regulatory agencies including, but not limited to, the following:

- Conduct investigatory review of the Debtors' current and historical books, records and other financial information and other documents and information sources to supplement missing or incomplete books and records;

- Investigate transactional level data and financial records;

- Perform market event studies and analyze trading patterns for key trading accounts, entities and persons of interest;

- Evaluate the cryptocurrency markets, the Debtors' risk monitoring measures, asset transfer activities, collateralization and other exchange related matters;

- Review and report on Debtors' blockchain activity, assets and liabilities, daily cash and cryptocurrency asset movements and third party spend analysis for specific investigative inquiries;

- Trace and investigate historical intercompany transactions across the Debtors and related parties and review accounts and related information for specific investigative inquiries;

- Search and review company communications and documents using advanced analytical tools to identify key investigative evidence;

- Assist the Debtors and its legal counsel to respond to third-party inquiries, including from regulatory agencies; and

- Assist the Debtors with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable and are consistent with and reasonably related to the services outlined above.

12. Such forensic investigation consulting services are necessary to the Debtors' restructuring efforts and in the ongoing management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.

13. When necessary, the individuals working on this matter (the "AlixPartners Personnel") will be assisted by or replaced by various professionals at various levels.

### No Duplication of Services

14. The forensic investigation services provided by AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in these Chapter 11 Cases.

**Fee and Expense Structure**

15. AlixPartners' decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "Fee and Expense Structure").

16. AlixPartners' standard hourly rates for 2023, subject to periodic adjustments, are as follows:[2]

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,140 – $1,400 |
| Partner | $1,115 |
| Director | $880 – $1,070 |
| Senior Vice President | $735 – $860 |
| Vice President | $585 – $725 |
| Consultant | $215 – $565 |
| Paraprofessional | $360 – $380 |

17. AlixPartners generally reviews and revises its billing rates semi-annually. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

---

[2] As a result of a clerical error, the incorrect rate table was included in the Engagement Letter. The correct 2023 rate table is reflected herein.

18. In addition to compensation for services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these Chapter 11 Cases, including but not limited to transportation costs, lodging, meals, and expenses associated with data management.

19. AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases consistent with the Fee and Expense Structure, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

20. AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these Chapter 11 Cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors. AlixPartners' applications for compensation of fees and reimbursement of expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to an interim compensation order or otherwise.

21. AlixPartners often works for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results. AlixPartners does not seek a success fee in this matter.

22. To the extent the Debtors request services related to electronic discovery and data collection, certain monthly hosting fees and consulting fees will apply.

23. To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

24. To the extent AlixPartners uses the services of independent contractors (the "Contractors") in these Chapter 11 Cases, AlixPartners shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

25. The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine overhead expenses.

### The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 327 of the Bankruptcy Code

26. The Debtors believe that the retention and employment of AlixPartners as the Debtors' forensic investigation consultant is appropriate because AlixPartners is a qualified investigation consultant. If the Debtors had to engage a new forensic investigation consultant now, the Debtors' restructuring efforts would be slowed as any such new consultant would have to be provided with the necessary background to provide adequate services. Moreover, comparable advisors would likely require similar compensation.

27. The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by professionals of similar stature to AlixPartners for comparable engagements, both in and out of bankruptcy proceedings. The Engagement Letter was negotiated at arm's-length

and in good faith. AlixPartners and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

### AlixPartners' Disinterestedness

28.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Evans Declaration: (a) AlixPartners is a "disinterested person" (within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code) and does not hold or represent an interest materially adverse to the Debtors' estates; (b) AlixPartners has no connection to the Debtors, their creditors, or other parties-in-interest in these Chapter 11 Cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Debtors' estates.

29.     As set forth in further detail in the Evans Declaration, AlixPartners has certain connections with creditors, equity security holders and other parties-in-interest in these Chapter 11 Cases but will not be representing them in connection with these Chapter 11 Cases. AlixPartners does not believe that any of these connections represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these Chapter 11 Cases.

30.     In the event that AlixPartners learns of additional connections that are not reflected in the Evans Declaration, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

### Indemnification Provisions

31.     The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify

AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "AlixPartners Party" and collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, willful misconduct, or fraud of any AlixPartners Party.

32. The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Order, are customary and reasonable for AlixPartners and comparable firms providing similar advisory services, and as would be modified pursuant to the foregoing limitations, reflect the qualifications and limitations on indemnification provisions that are customary in this district and others. *See, e.g., In re TNT Crane & Rigging, Inc.*, No. 20-11982 (BLS) (Bankr. D. Del. Sept. 18, 2020) (approving similar modified indemnification provisions for the retention and employment of FTI Consulting, Inc.); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. Aug. 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Ernst & Young LLP); *In re Lucky Brand Dungarees, LLC*, No. 20-11768 (CSS) (Bankr. D. Del. July 29, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Paddock Enters., LLC*, No. 20-10028 (LSS) (Bankr. D. Del. June 24, 2020) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Capital, Inc.); *In re Fred's Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Oct. 30, 2019) (approving similar modified indemnification provisions for the retention and employment of Alvarez & Marsal North America, LLC).

33. Moreover, the terms and conditions of the indemnification provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith. The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtors and their estates of the fact that the Debtors require AlixPartners' services to administer these Chapter 11 Cases. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order.

**Basis for Relief**

34. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.
>
> 11 U.S.C. § 327(a).

35. Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.
>
> Fed. R. Bankr. P. 2014.

36. The Debtors respectfully submit that section 327 of the Bankruptcy Code permits them to hire a professional firm like AlixPartners to undertake consulting role in these Chapter 11 Cases. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this

Application. The retention of AlixPartners as forensic investigation consultant in these Chapter 11 Cases *nunc pro tunc* to November 28, 2022, is in the best interest of the Debtors, their estates, and all parties-in-interest.

### *Nunc Pro Tunc* Retention of AlixPartners

37. Given the circumstances of these Chapter 11 Cases, the Debtors respectfully request that the employment of AlixPartners be authorized *nunc pro tunc* to November 28, 2022.

38. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas*, 798 F.2d 645, 650 (3d Cir. 1986).

39. As described in the First Day Declarations, these Chapter 11 Cases are unique. These Chapter 11 Cases were filed on an expedited basis. Following the Petition Date, the Debtors and their professionals necessarily committed substantial resources towards stabilizing the Debtors' businesses and transitioning into chapter 11, including, among other things, seeking approval of various first-day and other motions. The Debtors and their professionals also have expended significant time towards the ongoing work to protect and recover assets around the world, while also advancing their investigation into the facts and circumstances that led to the Debtors' commencement of these Chapter 11 Cases.

40. Accordingly, for the reasons set forth above, the Debtors believe that approval of the retention and employment of AlixPartners *nunc pro tunc* to November 28, 2022 is in the best interest of the Debtors and their estates.

### Notice

41. Notice of this Application has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of

Delaware; (g) the parties identified on the Debtors' consolidated lists of 50 largest unsecured creditors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

42.     No prior request for the relief sought herein has been made to the Court or any other court.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: December 21, 2022  
      Wilmington, Delaware

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

By: /s/ John J. Ray III  
John J. Ray III  
Chief Executive Officer