**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 45** |

**JOINDER OF THE AD HOC COMMITTEE OF NON-US CUSTOMERS OF FTX.COM
IN CONNECTION WITH THE MOTION OF DEBTORS FOR ENTRY OF INTERIM
AND FINAL ORDERS AUTHORIZING THE DEBTORS TO REDACT OR WITHHOLD
CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS [D.I. 45]**

The Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee"),

comprising international customers who held accounts on the FTX.com platform, by and through

its undersigned counsel, respectfully submits this joinder (the "Joinder") in support of the *Motion*

*of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a*

*Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II)*

*Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers*

*and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 45] (the

"Redaction Motion"), and respectfully states as follows:[2]

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] In respect of the Debtors' request for confidentiality of customer records as stated in the Redaction Motion, as well as the requirements of the European General Data Protection Regulation (the "EU GDPR") and the United Kingdom Data Protection Act of 2018 (the "UK GDPR" and, together with the EU GDPR, the "GDPR"), as described in the Redaction Motion ¶ 20, the identities of the members of the Ad Hoc Committee have not been, and will not be, disclosed in connection with this Joinder except as may be directed by the Court.

**Background**

1.     On November 11 and 14, 2022, FTX Trading Ltd. and its debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code").

2.     On November 19, 2022, the Debtors filed the Redaction Motion, which seeks, *inter alia*, authorization to withhold or redact the names and all associated identifying information of the Debtors' customers, and the names and personally identifiable information ("PII") of all individual creditors or customers from any paper filed or to be filed with the Court or made publicly available in these chapter 11 cases.

3.     On December 12, 2022, Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "US Trustee") filed an *Objection to the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 200] (the "Objection").

4.     The Ad Hoc Committee is comprised of fifteen members holding, in their individual or representative capacities, approximately $1.9 billion in claims against the Debtors for the value of their assets locked on the FTX.com platform or otherwise misappropriated.

5.     The Ad Hoc Committee submits this Joinder in support of the Redaction Motion's request to redact names and all other identifying information of the FTX.com customers from any paper filed or made publicly available in these proceedings, including the Creditor Matrix, Consolidated Top 50 Creditors List, and Schedules and Statements.[3]

---

[3] The Ad Hoc Committee does not take a position with respect to the Redaction Motion's requests for authority to

**Joinder**

6.      Requiring the Debtors to disclose the FTX.com customers' names and other identifying information to the general public would cause irreparable harm, further victimizing the FTX.com customers whose assets were misappropriated. Despite the US Trustee's arguments, there are ample, compelling reasons justifying—and indeed mandating—protection of the FTX.com customers' information pursuant to sections 107(b)(1) and (c).

7.      In arguing against the Debtors' request for redaction, the US Trustee refers to the public's general right of access to judicial records. Obj. ¶¶ 23-25. While the Ad Hoc Committee recognizes the general public's interest in open and transparent bankruptcy proceedings, such interest simply does not compare to the victims' interest in obtaining maximum recovery in these proceedings and shielding them from additional injury. While the US Trustee has not provided any concrete explanation for what purpose public disclosure would serve here, the repercussions of disclosing the FTX.com customers' identifying information could be dire.[4]

8.      The US Trustee's argument that non-disclosure is appropriate only in "limited circumstances" that are not present in this case does not account for the very real risks associated with disclosing the FTX.com customers' names and other identifying information. Obj. ¶ 1. It is difficult to imagine a more compelling case that would warrant withholding and redacting the information of the thousands of FTX.com customers who had their funds stolen and never

---

maintain a consolidated list of creditors and approval of procedures for providing notice to creditors.

[4] On December 9, 2022, Bloomberg L.P., Dow Jones & Company, Inc. The New York Times Company, and the Financial Times Ltd. filed an expedited motion to intervene for the limited purpose of objecting to the Redaction Motion [D.I. 196] (the "Media Motion"). The Media Motion states that the media "acts as the eyes and ears of the public, informing the public of issues of the day" and claims "[t]his valuable social function is hampered by sealing of judicial records." Media Motion ¶ 10. But this still does not explain why confidential information about "potentially more than a million creditors" is in the public's interest, or what the media would do with that information. *Id.* ¶ 2. Whether this information has "historically" been open to the public is not persuasive—for all of the reasons set forth in the Media Motion, this is undeniably an extraordinary case. *Id.* ¶ 3.

anticipated that their use of cryptocurrency and FTX.com would become publicly known.

9.    The Ad Hoc Committee therefore respectfully requests that the Court grant the Debtors' request to withhold or redact the FTX.com customers' names and other identifying information.

## I.    FTX.com Customers' Confidential Information Should be Withheld Pursuant to Section 107(b)(1) of the Bankruptcy Code.

10.    The Ad Hoc Committee shares Debtors' concern that disclosing customers' names and other identifying information will give competitors an unfair advantage that could ultimately hamper Debtors' ability to sell their assets and maximize recovery for creditors. Section 107(b) of the Bankruptcy Code requires that the Court, "[o]n request of a party in interest…protect an entity with respect to a trade secret or confidential information." 11 U.S.C. § 107(b). Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") similarly permits courts to "protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018. Here, the Court should protect the estate and allow Debtors to withhold confidential information about their customers, as the customer list is an important and valuable asset of the Debtors. Redaction Mot. ¶ 12.

11.    As acknowledged by the US Trustee, this Court recently authorized debtors in a cryptocurrency bankruptcy case to redact their customers' names and other identifying information. Obj. at ¶ 6 (citing *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del.)). As in this case, the debtors in *Cred* argued that their customer list was confidential information, and disclosing such information could hinder its ability to sell the business as a going concern: "to release or reveal the names on that list would materially diminish the value of that list." Tr. of Dec. 18, 2020 H'rg in *Cred* [D.I. 277] (the "Cred. Tr.")[5] 104:22-25; *cf.* Redaction Mot. ¶ 13 ("Public

---

[5] A true and correct copy of the Cred Tr.. is attached hereto as **Exhibit A**.

dissemination of the Debtors' customer list could give the Debtors' competitors an unfair advantage to contact and poach those customers, and would interfere with the Debtors' ability to sell their assets and maximize value for their estates at the appropriate time."). The debtors in *Cred* emphasized the critical importance of a customer list in the crypto space "because of the anonymity intrinsic in holding Bitcoin" and because it is "costly and expensive to develop a customer database because you don't know who out there holds the cryptocurrency." Cred. Tr. 112:12-18. This Court agreed that the debtors could withhold the information because there was a credible argument that the customer list had "intrinsic value, and that disclosure of that list could affect the ability of the debtors to market and sell that list as a part of their going toward a plan of reorganization." Cred. Tr. 113:20-114:1.

12.      Here, if the Debtors are able to preserve going concern value through a relaunch of the FTX exchanges or utilization of the embedded technology within the exchanges, the customer information, particularly that of the FTX.com customers, is an integral and valuable component of such going concern value.

13.      Yet, despite the similarities between *Cred* and the present matter, the US Trustee argues that the Court should "reexamine the issues" in *Cred* and limit relief in this case to that granted in *In re Celsius*—a bankruptcy case filed in a different circuit. Obj. ¶ 6 (citing *In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022)). But the US Trustee does not provide a single argument as to why the Court should follow the *Celsius* ruling instead of this Court's decision in *Cred*, and does not otherwise attempt to distinguish *Cred* from these chapter 11 cases.

14.      The Ad Hoc Committee urges the Court to adopt the same rationale employed in *Cred* and permit the Debtors to withhold all customers' names and other identifying information.

## II.    FTX.com Customers' PII Should Be Redacted to Prevent Further Injury to the Victims.

15.    The Ad Hoc Committee supports Debtors' request to redact individual FTX.com customers' names, addresses, e-mail addresses, and other PII from any filing with the Court or document made publicly available in these proceedings. Section 107(c) of the Bankruptcy Code provides that a "bankruptcy court, for cause, may protect an individual" with respect to information, including an individual's name, "to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c). The US Trustee objects to sealing individual FTX.com customers' names pursuant to section 107(c),[6] arguing that: (1) Debtors have not shown that disclosing individuals' names, without any other identifying information, could lead to an undue risk of identity theft or other unlawful injury; (2) the GDPR does not warrant redacting the names of EU and UK citizens; and (3) FTX's Privacy Policy permits such disclosure.

16.    *First*, the Ad Hoc Committee echoes the Debtors' position that the risks of identity theft and other injury to the FTX.com customers justify redacting their names and PII. Redaction Mot. ¶ 19 (citing *In re Continental Airlines*, 150 B.R. 334, 340-41 (D. Del. 1993)). The Ad Hoc Committee is not arguing that transparency in these and other bankruptcy proceedings is not critical—but disclosing customers' PII in these chapter 11 cases is of little (if any) interest or benefit to the public.

17.    While the US Trustee argues that the Debtors have not "established that such relief is actually necessary to protect a party from harm" (Obj. ¶ 60), the potential risk of identity theft and other injury that could arise from disclosing FTX customers' names and other identifying

---

[6] The US Trustee does not object to filing the addresses and e-mail addresses of individual customers under seal. Obj. ¶ 2.

information far outweighs any potential benefits of public disclosure. Redaction Mot. ¶¶ 18-19.
Cryptocurrency holders are particularly susceptible to fraud and theft because cryptocurrency is
difficult to trace and there are fewer security safeguards in place to protect the assets.

18.     These risks are not speculative. There are an ever-increasing number of cyber scams
involving cryptocurrency exchanges. According to a June 2022 Federal Trade Commission report,
"more than 46,000 people reported losing over $1 billion in crypto to scams," which amounts to
$2,600 per person on average, and "losses in 2021 were nearly *sixty times* what they were in
2018."[7]

19.     FTX is no stranger to cyber hacking. On November 12, 2022, FTX's CEO John
Ray III confirmed that FTX was "in the process of removing trading and withdrawal functionality
and moving as many digital assets as can be identified to a new cold wallet custodian" because,
"[a]s widely reported, unauthorized access to certain assets" had occurred.[8]

20.     And, contrary to the US Trustee's position (Obj. ¶¶ 65-66), disclosing just the name
of the individuals does create real risk to the FTX.com customers. It is not difficult to imagine how
a hacker or a dark web crypto miner could leverage a name for sinister purposes. This Court has
acknowledged the ease with which a person can identify extensive personal details about an
individual simply by entering their name on Google. Tr. of Jan. 22, 2020 H'rg in *In re Clover
Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del.))[D.I. 146] (the "Clover Tr.")[9] 25:4-5 ("If
somebody wants information about someone they just type the person's name on the internet.").

---

[7]  Emma Fletcher, *Reports show scammers cashing in on crypto craze*, FTC.gov (June 3, 2022), https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/06/reports-show-scammers-cashing-crypto-craze (last viewed Dec. 28, 2022).

[8]  Ryne Miller, General Counsel of FTX, Twitter, https://twitter.com/_Ryne_Miller/status/1591495429338071042 (Nov. 12, 2022) (last viewed Dec. 28, 2022).

[9]A true and correct copy of this Court's transcript ruling from *In re Clover Technologies Group, Inc.* is attached hereto as **Exhibit B**.

*See also In re Endo Int'l Plc*, No. 22-22549 (JLG), Slip. Op. at 24-28 (Bankr. S.D.N.Y. Nov. 2, 2022) (taking "judicial notice of the fact that identity theft is a world-wide problem" and sealing the names of individual litigation claims because disclosure of their names necessarily increased the risk of identity theft). For example, someone who searches a person's name on LinkedIn can often discern the person's home town, current and previous employer, location of their job, information about their education, and contacts. Fraudsters can capitalize on the disclosure of *any* PII, including just names, to identify additional personal information about the FTX.com customers, increasing the risk of theft of the customers' private crypto keys or online wallets, attacks on their accounts through, for example, phishing schemes, and other injury.

21.      *Second*, the FTX.com customers' names should not be disclosed because, as non-US customers, their information is likely protected by the GDPR or another country's data privacy laws. In arguing that the Court should not permit Debtors to withhold the names of those subject to the GDPR, the US Trustee argues that (i) the Court should apply bankruptcy law and not the GDPR in determining whether redaction is appropriate; and (ii) the Legal Claim Exception permits the Debtors to disclose the names and addresses of individuals subject to the GDPR.

22.      However, this Court has authorized redaction of the names and other PII of individuals protected by the GDPR after considering the exact same arguments made by the US Trustee in this matter. *In re Clover Techns. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Feb. 4, 2020), D.I. 155 and Clover Tr: 24:10-26:23; *see also In re Mallinckrodt Plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 10, 2020), D.I. 464 (authorizing redaction of names and addresses of individuals protected by the GDPR).

23.      The US Trustee concludes that the Court should apply bankruptcy law instead of the GDPR because "this Court's interest in enforcing the Bankruptcy Code in these bankruptcy

cases is superior" to the UK's and EU's "legitimate interest in enforcing their own laws." Obj. ¶ 74. But in *Clover* this Court authorized redaction of the names and addresses of individuals protected by the GDPR over the trustee's objection that "this court's interest in enforcing the bankruptcy code is superior to the GDPR." Clover Tr. 22:3-4.

24.     In any event, the Ad Hoc Committee is not asking this Court to find that the GDPR "supplants the disclosure requirements of the Bankruptcy Code." Obj. ¶ 5. Irrespective of whose interest is superior, it is undeniable that countries have a strong interest in ensuring their citizens' PII is protected and that their citizens' rights are equitably and sufficiently represented in these chapter 11 cases. In addition, the FTX.com customers had little reason to expect that they would become subject to the Bankruptcy Code. They are non-US customers who agreed to Terms of Service governed by English law to engage on the FTX.com exchange, which is controlled by a company organized in Antigua, and which was thought to be well-capitalized and solvent, and therefore not vulnerable to the sudden collapse that necessitated these bankruptcy cases.

25.     In the alternative, the US Trustee argues that GDPR Article 49(1)(e) (the "Legal Claim Exception") allows Debtors to disclose the names of EU and UK citizens in these circumstances. Obj. ¶¶ 76-81. The Legal Claim Exception permits the transfer of data where it is "occasional and *necessary* in relation to a contract or a legal claim." *Id.* ¶ 76 (emphasis added). The US Trustee argues that because Bankruptcy Rule 1007(a)(1) and Local Rule 1007-2(a) require disclosure of creditors' names, then such data transfer is covered because it is "necessary for the establishment [and] exercise" of the Debtors' "legal claims." Obj. ¶ 78 (quoting GDPR Art. 49(1)(e)). But in *Clover* the Court permitted redaction of the names and addresses of those protected by the GDPR despite the trustee's argument that the Legal Claim Exception allowed debtors to disclose the names because the bankruptcy rules require debtors to file a creditor matrix

containing this information. Clover Tr. 21:20-25.

26.     Moreover, that is the exact issue at the heart of these filings. Transferring the FTX.com customers' PII is not "necessary" for these proceedings, because section 107 of the Bankruptcy Code allows the Court to authorize withholding or redacting that information.  Indeed, the US Trustee acknowledges that the public's right to access court records is not absolute, and the court can exercise discretion to limit public access to information required to be disclosed under Bankruptcy Rule 1007(a)(1) and Local Rule 1007-2(a) under certain circumstances. Obj. ¶¶ 28, 32. Its decision not to object to the redaction of addresses and contact information for the individual customers and creditors in these chapter 11 cases further illustrates this point. Obj. ¶ 2.

27.     *Third*, the US Trustee's argument that certain provisions in the Debtors' Privacy Policy permit disclosure is inapposite. Obj. ¶¶ 58-59; 67 (citing FTX Privacy Policy 8-9). The FTX.com customers indisputably never consented to unrestricted, public disclosure of their PII. The Privacy Policy contains provisions that explain when the Debtors may share PII with third parties (i.e., service providers, business partners, affiliated partners, and third-party advertisers) and notes PII may be "sold or transferred as part of" a transaction relating to a potential reorganization or bankruptcy.  However, none of these provisions authorize the Debtors to disclose customers' names or other identifying information to the general public.

28.     The Privacy Policy does not otherwise authorize Debtors to share the information in these circumstances. The US Trustee argues that the Debtors can share their customers' information because the Privacy Policy "allows the Debtors to share privacy information if legally required to do so." Obj. ¶ 59. But, as explained above, Debtors are not "legally required" to disclose the individuals' PII.  This Court has the discretion to allow (and previously has authorized) debtors to redact individuals' PII, including their names, if certain criteria are satisfied (e.g., the

requirements in sections 107(b)(1) and 107(c) of the Bankruptcy Code).

**III.    The US Trustee's Other Concerns Do Not Warrant Public Disclosure of the FTX.com Customers' Names and Other Identifying Information.**

29.    The US Trustee warns that permitting the Debtors to withhold and redact the requested information would create "unfavorable precedent in this and other crypto industry chapter 11 cases" and "is a slippery slope." Obj. ¶ 4. But, as explained herein, this Court has already permitted debtors to withhold customer lists under section 107(b)(1) of the Bankruptcy Code, and authorized redaction of the names and other PII of individuals subject to other countries' data privacy laws—so granting the requested relief would be *consistent* with existing precedent.

30.    It remains unclear what purpose publicly disclosing the FTX.com customers' identifying information would serve at this junction. Indeed, the Debtors have requested until April 15, 2023 to file their schedules of assets and liabilities and statements of financial affairs, which are a predicate for the Debtors' establishing a claims bar date and related procedures. *See* D.I. 26 and 266. There is simply no reason to jeopardize the Debtors' efforts to maximize the estate's value by disclosing confidential customer information far in advance of any claims process that could necessitate such disclosure.

31.    Once the genie is out of the bottle, you can't put the cork back in—the damage will be done. The Ad Hoc Committee therefore urges the Court to exercise caution and grant Debtors' request to redact and withhold the FTX.com customers' names and other identifying information.

WHEREFORE, for the foregoing reasons, the Ad Hoc Committee respectfully requests that the Court grant the relief requested in the Redaction Motion, and allow Debtors to withhold or redact the FTX.com customers' names and other identifying information from any paper filed or to be filed with the Court or made publicly available in these chapter 11 cases.

Date: December 28, 2022
Wilmington, Delaware

*/s/ Eric D. Schwartz*
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
Brian Loughnane (No. 6853)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com
bloughnane@morrisnichols.com

-AND-

**EVERSHEDS SUTHERLAND (US) LLP**
Peter A. Ivanick
Sarah E. Paul
Philip H. Ehrlich
Lynn W. Holbert
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
peterivanick@eversheds-sutherland.com
sarahpaul@eversheds-sutherland.com
philipehrlich@eversheds-sutherland.com
lynnholbert@eversheds-sutherland.com

-and-

Erin E. Broderick
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com

-and-

Mark D. Sherrill
1001 Fannin Street, Suite 3700

Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
marksherrill@eversheds-sutherland.com

-and-

Andrea L. Gordon
700 Sixth Street NW, Suite 700
Washington, District of Columbia 20001
Telephone: (202) 383-0100
Facsimile: (202) 637-3593
andreagordon@eversheds-sutherland.com

*Counsel to the Ad Hoc Committee of Non-US
Customers of FTX.com*