**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 233** |

**PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS
OF THE FOREIGN REPRESENTATIVES OF THE CHAPTER 15 DEBTOR
REGARDING THE MOTION OF DEBTORS FOR ENTRY OF ORDERS
(I)(A) APPROVING BID PROCEDURES, STALKING HORSE PROTECTIONS
AND THE FORM AND MANNER OF NOTICES FOR THE SALE OF THE
CERTAIN BUSINESSES; (B) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES AND (C) SCHEDULING AUCTION(S) AND SALE HEARING(S)
AND (II)(A) APPROVING THE SALE(S) FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves (the "**Foreign
Representatives**"), in their capacity as the duly appointed joint provisional liquidators and foreign
representatives of FTX Digital Markets Ltd. (the "**Chapter 15 Debtor**") submit this preliminary
statement and reservation of rights (the "**Preliminary Statement and Reservation of Rights**") to
the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse
Protections and the Form and Manner of Notices for the Sale of the Certain Businesses; (B)
Approving Assumption and Assignment Procedures; and (C) Scheduling Auction(s) and Sale
Hearing(s) and (II)(A) Approving the Sale(s) Free and Clear of Liens, Claims, Interests and*

---

[1]     The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of
debtor entities in these Chapter 11 Cases, a complete list of the debtors (the "**Chapter 11 Debtors**") and the last four
digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be
obtained on the website of the Chapter 11 Debtors' proposed claims and noticing agent at
https://cases.ra.kroll.com/FTX.

*Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 233] (the "**Bidding Procedures Motion**"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.       Given the haphazard nature of the Chapter 11 Debtors' chapter 11 filing, and Mr. Ray's testimony that "[n]ever in [his] career [has he] seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information," First Day Declaration ¶ 5,[2] and that he "[does not] trust a single piece of paper in [the FTX group] organization," Wall Street Journal, "*This Company Was Uniquely Positioned to Fail." FTX Group CEO John Ray Testimony*, YouTube at 1:25:55-1:26:12 (Dec. 13, 2022), https://www.youtube.com/watch?v=YQdvfBZ0VbQ&t=3848s        (the        "**Congressional Testimony**"), it is surprising that the Bidding Procedures Motion was filed just over one month into these chapter 11 cases, on the same day as the unsecured creditors' committee formation and prior to the committee hiring its advisors.  As recently as December 21, 2022 – after the Bidding Procedures Motion was filed – the Chapter 11 Debtors cited their lack of reliable information to justify an extension of the deadline to file their Schedules and SOFAs.  *See Supplement to Motion of Debtors for Entry of an Order (I) Extending the Time to File (A) Schedules of Assets and Liabilities and Statements of Financial Affairs and (B) Rule 2015.3 Financial Reports and (II) Granting Certain Related Relief* [Docket No. 26] ¶ 7 ("The data ['necessary to compile and file the Schedules and Statements and 2015.3 Reports'] is voluminous and located in various locations. Some of these locations are inaccessible to the Debtors and require inputs from various

---

[2]       Mr. Ray also stated fourteen (14) times in his First Day Declaration that he has substantial concerns about the quality and accuracy of the information he was working with.

sources that the Debtors are still working to access, understand and extract").  Despite their lack

of reliable information, the Chapter 11 Debtors purportedly have enough information to support,

and Mr. Ray has apparently determined in his business judgement that it is now prudent to pursue

(though now a full two weeks after the filing of the Bidding Procedures Motion, neither Mr. Ray

nor any of the Chapter 11 Debtors' army of professionals has yet to submit a declaration in

support), the relief sought in the Bidding Procedures Motion, rather than take the time to explore

the Businesses respective connections with the overall enterprise and potential use and value in a

restructuring process, rather than piece-meal sale of assets, the ownership of which is far from

established.

2.      While the Chapter 11 Debtors are apparently comfortable that now is the time to

monetize certain assets that are part of the international FTX.com platform, the Foreign

Representatives – operating in the dark without access to their own information – are unable to

assess that decision.  Despite multiple requests and good faith efforts to compromise by the Foreign

Representatives, the Chapter 11 Debtors continue to deny the Foreign Representatives access to

the Chapter 15 Debtor's own information.  The Foreign Representatives have court-appointed

duties to protect, investigate, and evaluate the Chapter 15 Debtor's estate under Bahamian law for

the benefit of its creditors.  By the Chapter 11 Debtors' design, the Foreign Representatives have

been unable to fulfill these duties generally, and here specifically in order to properly evaluate the

Bidding Procedures Motion.  In short, there is a disconnect between the Chapter 11 Debtors' public

statements and the immediacy of the relief sought in the Bidding Procedures Motion, and the

Foreign Representatives believe that information currently withheld may shed light on infirmities

in the proposed process.  A full and fair opportunity for the Foreign Representatives to evaluate

what is purportedly being sold, and who actually owns what is purportedly being sold, must occur prior to any sale of the Chapter 11 Debtors' assets.

3.      In order to confirm that the Chapter 11 Debtors are not seeking to sell assets, or otherwise impact the estate of the Chapter 15 Debtor, and initiate a process that may become obsolete and wasteful, the Foreign Representatives must have the information necessary to properly assess the proposed transactions.  Although it is a tautology that a chapter 11 debtor cannot sell assets that do not belong to it, the Foreign Representatives will oppose any transaction which would purport to sell assets free and clear of the Chapter 15 Debtor's ownership interests in – by way of example – any implicated Intellectual Property or Licensing Agreements (each as defined below) owned or controlled by the Chapter 15 Debtor.  For these reasons, if this Court determines that it is within the Chapter 11 Debtors' business judgment to initiate a sales process for the Businesses with the limited and untrustworthy information available to date, the Foreign Representatives also reserve all rights with respect to the Chapter 15 Debtor's interests in the Businesses and propriety of any sale(s) of the Businesses.

## RELEVANT BACKGROUND

### A.      The Chapter 11 Cases

4.      The Chapter 11 Debtors filed these chapter 11 cases on November 11, 2022, and in the case of Debtor West Realm Shires Inc., on November 14, 2022 (collectively, the "**Petition Date**").  *See* First Day Declaration ¶ 40.

5.      On December 9, 2022, the Foreign Representatives filed an emergency motion (the "**Information Turnover Motion**") seeking turnover of certain electronic records related to the Chapter 15 Debtor's property and financial affairs.  Docket No. 197.  Filing the Information Turnover Motion was necessitated by the Chapter 11 Debtors' stonewalling of the Foreign

Representatives' attempts to obtain access to the Chapter 15 Debtor's own information.  As of the filing of this Preliminary Statement and Reservation of Rights, the Chapter 11 Debtors still withhold such access.

6.      The Chapter 11 Debtors filed the Bidding Procedures Motion on December 15, 2022.  Through the Bidding Procedures Motion, the Chapter 11 Debtors request, among other things, (i) authority to sell certain assets free and clear of any liens, claims, interests, and encumbrances and (ii) approval of procedures regarding the potential assumption and assignment of executory contract(s) in connection with any such sale(s).  In particular, the Chapter 11 Debtors propose to sell four business segments, the Embed Business, the LedgerX Business, the FTX Japan Business, and the FTX Europe Business (collectively, the "**Businesses**").

7.      Also on December 15, 2022, the Office of United States Trustee (the "**U.S. Trustee**") filed the Notice of Appointment of Creditors' Committee [Docket No. 231].  On December 20, 2022, the U.S. Trustee filed the Amended Notice of Appointment of Creditors' Committee [Docket No. 261].

### B.      The FTX.COM Intellectual Property

8.      Prior to the Petition Date and in anticipation of and/or after initiation of the migration of the FTX.com international platform from FTX Trading Ltd. to the Chapter 15 Debtor in May 2022, employees of the Chapter 15 Debtor developed and utilized certain computer code needed to operate the FTX.com international platform.  The Foreign Representatives have reason to believe that the Chapter 15 Debtor either owns that computer code or has a license to use all of the computer code which it does not own (all such ownership and license rights, the "**Intellectual Property**").  The Foreign Representatives do not have the documentation necessary to ascertain which entities in the FTX group owned or licensed such Intellectual Property, but on information

and belief believe that certain prepetition licensing agreements (the "**Licensing Agreements**")

exist between the Chapter 15 Debtor and certain other FTX group entities.[3]  In order to operate the

FTX.com international platform post-migration (including "running" the code for day to day

activities, backing up and maintaining that code, developing further code, and the payment of

certain vendors and license fees), the Chapter 15 Debtor would necessarily have had ownership or

other rights to the Intellectual Property and/or Licensing Agreements governing the use of the

Intellectual Property.

9.      On information and belief, given that both the FTX Japan Business and FTX

Europe Business also operated portions of the FTX.com platform, they too must utilize the

Intellectual Property, and it is possible that such usage is governed pursuant to Licensing

Agreements with the Chapter 15 Debtor.  Given the lack of information obtained by the Foreign

Representatives to date, it is unclear what the Chapter 15 Debtor's respective rights and obligations

are with respect to the Intellectual Property and Licensing Agreements, and thus how the Chapter

15 Debtor's rights may be impacted by the proposed sale of the FTX Japan Business or the FTX

Europe Businesses.

## RESERVATION OF RIGHTS

10.      Pursuant to the Bidding Procedures Motion, the Chapter 11 Debtors seek

authorization to sell equity and/or assets of the Businesses, in each case including "any associated

---

[3]      As the Court is aware, the Foreign Representatives continue to seek information from the Chapter 11 Debtors regarding numerous aspects of the Chapter 15 Debtor and Chapter 11 Debtors' relationship.  The Foreign Representatives believe that written Licensing Agreements may exist that have yet to be located.  To the extent that no such writing exists, licenses may be implied pursuant to federal copyright law in certain circumstances. *See Jacob Maxwell, Inc. v.Veeck*, 110 F.3d 749, 751-52 (11th Cir. 1997) ("[A] nonexclusive license to use a copyright may be granted orally, or may even be implied from conduct."). The Foreign Representatives reserve all rights with respect to whether any such implied license exists and as to whether any foreign law is the relevant the applicable law under which rights to the Intellectual Property arise.  Moreover, the extent of the Chapter 15 Debtors' ownership rights to the Intellectual Property are entirely reserved.

contracts, rights or other property of the Chapter 11 Debtors," free and clear of any liens, claims, interests, and encumbrances.  Bidding Procedures Motion ¶ 3.  The Foreign Representatives file this Preliminary Statement and Reservation of Rights to preserve their rights with respect to any property interest in the Businesses, including, without limitation, in the Intellectual Property and Licensing Agreements, and otherwise protect their interests with respect to the sale process and potential sale proceeds.

11.     The Chapter 11 Debtors propose to proceed hastily towards a sale of the Businesses despite providing indications throughout these cases that they have not made a thorough investigation of the FTX group as a whole and the potential value of the platform as a whole rather than in pieces (especially given potential commonality of all or parts of the computer code underlying various aspects of the platform).  Mr. Ray first expressed doubts about the financial information available at the outset of the chapter 11 cases, stating several times in his First Day Declaration his lack of confidence in the financial statements provided to him.  *See* First Day Declaration ¶¶ 18, 23, 28, 36.  Mr. Ray's confidence in the information apparently only diminished over the first month of the chapter 11 cases, as revealed by his testimony to Congress that he did not trust "*a single piece of paper*" within the Chapter 11 Debtors' organization.  *See* Congressional Testimony, *infra* ¶ 2.  In the Bidding Procedures Motion – filed without any declaration in support – the Chapter 11 Debtors appear to rely primarily on alleged incoming interest in the Businesses and the imprecise notion of "[t]he relative independence" of the Businesses, the purported unsolicited third-party interest in the Businesses, and the "other rationales for selling the Businesses" to justify the pursuit of a potential sale.  *See* Bidding Procedures Motion ¶ 7-8.

12.     Compounding these questions regarding the need for, and timing of, initiating a sale and marketing process for the Businesses, is the fact that the Foreign Representatives remain

severely hampered by the Chapter 11 Debtors' refusal to provide the Chapter 15 Debtor's information. As the party in interest that has spent the most time and expense getting up to speed in these cases, the Foreign Representatives will not have the necessary information (information that is rightfully theirs) to assess and potentially object to the relief sought in the Bidding Procedures Motion until after they have received this information.

13.    Short of this Court delaying the approval of the Bidding Procedures Motion to provide the Foreign Representatives with time to review their information and determine any issues that could render the proposed sale process a waste or inefficient use of resources, the Foreign Representatives lodge a fulsome reservation of rights with respect to the sales process, the bidding procedures, and any ultimate proposed sale(s) of the Businesses. Chief among these concerns, based on their available information, is the extent to which the Chapter 11 Debtors seek to sell the Businesses free and clear of the Chapter 15 Debtor's ownership interest in the Intellectual Property and License Agreements. The Foreign Representatives will vigorously oppose any such relief.

14.    Although the Chapter 11 Debtors seek authorization of the proposed sale(s) pursuant to section 363(b) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate," they have not articulated what property is owned by the Businesses to be sold, or what assets may be sold as part of the process. 11 U.S.C. § 363(b)(1). *See* Bidding Procedures Motion ¶ 36.[4] Here, without their information, the Foreign Representatives do not know what the Chapter 11 Debtors may be selling, and they do not know what the Chapter 15 Debtor potentially owns

---

[4]    The Chapter 11 Debtors further request authority to execute such sale(s) free and clear of any liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. *See* Bidding Procedures Motion ¶ 48.

that the Chapter 11 Debtors are seeking to sell.  For example, any Intellectual Property that is not

property of the Chapter 11 Debtors cannot be sold.  Accordingly, section 363(b) provides no basis

to authorize the sale of the Intellectual Property, and the Foreign Representatives reserve their

rights to object on this basis.  In addition, the Foreign Representatives will have to carefully

evaluate – and potentially approve – any potential assumption and assignment of a Licensing

Agreement or change in control if the equity of one of the Businesses is sold.  Section 365(c) of

the Bankruptcy Code prohibits assumption and/or assignment of certain executory contracts if

applicable law prevents such assumption and assignment and third party consent is not obtained.[5]

15.     Any Intellectual Property, including any implicated Licensing Agreement, could be

an important component of the value of the Businesses, and the Foreign Representatives reserve

their rights to object on the basis that such licenses cannot be transferred through an equity sale or

assumed and assigned as part of an asset sale.

16.     Finally, given the state of play in these cases, and lack of clarity regarding how the

proceeds of any potential sale(s) of the Business would be used or distributed, to the extent the

Bidding Procedures Motion is approved, the Court should require the Chapter 11 Debtors to hold

the proceeds of any sale(s) pursuant thereto in a segregated escrow account.  The Foreign

Representatives believe that the Chapter 15 Debtor may be the largest creditor of the FTX Trading

estate, and therefore believe this safekeeping is appropriate until the complex legal issues that will

---

[5]     *See* 11 U.S.C. § 365(c)(1); *In re Valley Media, Inc.*, 279 B.R. 105, 136-36 (Bankr. D. Del. 2002) ("an executory contract may not be assumed by a debtor in possession if it may not be assigned under applicable non-bankruptcy law[.]").  For example, pursuant to federal copyright law, non-exclusive copyright licenses are not assignable without the express consent of the licensor. *See, e.g.*, *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Nonexclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *see also In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300, 316 (Bankr. D. Del. 2001).

determine these intercompany issues are settled.  The Foreign Representatives reserve all rights

with respect to the proceeds of any potential sale of the Businesses.

## **CONCLUSION**

17.     The Foreign Representatives reserve all of their rights to supplement or amend this

Preliminary Statement and Reservation of Rights and to raise additional issues and to present

evidence in connection with the Bidding Procedures Motion, including any supporting declarations

or documents the Chapter 11 Debtors hereafter file in support thereof, and at any future hearing(s).

Further, the Foreign Representatives reserve all rights to object to the sale of the Business and seek

relief to establish an escrow to hold the funds of any potential sale consummated pursuant to the

terms of the Bidding Procedures Motion.

*[Remainder of Page Intentionally Left Blank]*

Dated: December 29, 2022

*/s/ Kevin Gross*

**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (Bar No. 209)
Paul N. Heath (Bar No. 3704)
Brendan J. Schlauch (Bar No. 6115)
David T. Queroli (Bar No. 6318)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
queroli@rlf.com

– and –

**WHITE & CASE LLP**

Jessica C. Lauria (admitted *pro hac vice*)
J. Christopher Shore (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Mark Franke (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
Brandon Batzel (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 819-8200
jessica.lauria@whitecase.com
cshore@whitecase.com
brian.pfeiffer@whitecase.com
mark.franke@whitecase.com
brett.bakemeyer@whitecase.com


Thomas E Lauria (admitted *pro hac vice*)
Richard S. Kebrdle (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:     (305) 371-2700
tlauria@whitecase.com
rkebrdle@whitecase.com

*Attorneys for the Joint Provisional
Liquidators and Foreign Representatives of
FTX Digital Markets Ltd. (In Provisional
Liquidation)*