## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**Hearing Date**: February 8, 2023 at 1:00 p.m. (ET)
**Objection Deadline**: January 13, 2023 at 4:00 p.m. (ET)

## DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS EFFECTIVE AS OF THE REJECTION DATE

> **PARTIES RECEIVING NOTICE OF THIS OMNIBUS MOTION SHOULD LOCATE THEIR NAMES AND CORRESPONDING CONTRACTS IN EXHIBIT 1 TO THE PROPOSED ORDER ATTACHED TO THE MOTION.**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to (a) reject certain executory contracts set forth on Exhibit 1 to the Order (each, a "Contract," and collectively, the "Contracts"), effective as of December 30, 2022 (the "Rejection Date") and (b) take such action as may be necessary to implement and effectuate the rejection of the Contracts. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Background**

1.      On November 11 and November 14, 2022, the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

3.      The Debtors and their advisors are in the process of reviewing and analyzing the contracts to which the Debtors are parties.  Based upon this analysis, the Debtors have determined, in their business judgment, that there is no longer a need for, or benefit to the Debtors or their estates to maintain, the Contracts going forward.  Rejection of each of the Contracts as of the Rejection Date would benefit the Debtors' estates because it will enable the Debtors to avoid the accrual of any obligations related to goods and/or services provided under the Contracts described below that are not needed by the Debtors or their estates.  This Motion pertains to twenty-three Contracts.

4.    The first Contract is a Facilitation Agreement, by and between Basketball

Properties, Ltd. ("BPL") and West Realm Shires Services, Inc. ("WRSS"), dated as of March 22,

2021.  This Contract provides that BPL, the entity that manages and operates the Miami Heat

arena, will service, operate, maintain and otherwise facilitate the rights granted to WRSS in the

Miami Heat Naming Rights Agreement (as defined below).

5.    The second Contract is a Letter of Agreement, by and between Echo

Marketing and WRSS, dated as of January 18, 2022.  This Contract provides that Echo

Marketing will offer marketing consultation and planning services to WRSS in relation to UC

Berkeley Athletics events through the year 2022.

6.    The third Contract is an Advertising Agreement, by and between Fox

Sports Sun, LLC ("RSN") and WRSS, dated as of April 13, 2021.  This Contract provides that

WRSS will advertise through RSN and that WRSS will receive advertising category exclusivity

in the cryptocurrency category.

7.    The fourth Contract is a Partnership and Endorsement Agreement (the

"Bündchen Partnership Agreement"), by and between Gisele Caroline Bündchen and Blockfolio,

Inc. ("Blockfolio"), dated as of May 27, 2021.  The Bündchen Partnership Agreement provides

that Ms. Bündchen will provide certain personal and promotional services on behalf of

Blockfolio, and grants Blockfolio the right to use Ms. Bündchen's likeness to promote

Blockfolio's products and services in exchange for compensation in the form of cash and equity

in FTX Trading.

8.    The fifth Contract is a Charitable Giving Letter Agreement, by and

between Ms. Bündchen and Blockfolio, entered into in connection with the Bündchen

Partnership Agreement and dated as of May 27, 2021.  This Contract provides that Blockfolio

will make annual contributions to charities designated by Ms. Bündchen throughout the term of the Contract.

9.      The sixth Contract is a Sponsorship Agreement, by and between (i) Golden State Warriors, LLC, (ii) GSW LoL LLC, (iii) SC Warriors LLC and (iv) GSW Gaming Squad LLC (collectively, "GSW") and WRSS, dated as of December 9, 2021.  This Contract provides that GSW will advertise WRSS in connection with basketball games and name WRSS as its "Official Crypto Platform and NFT Marketplace."  In addition, this Contract provides that GSW and WRSS will release at least 500 non-fungible tokens ("NFTs") per contract year and that WRSS will be entitled to certain percentages of the net revenue of such releases.

10.      The seventh Contract is an Official Partner Agreement, by and between ICC Business Corporation FZ LLC and FTX Trading, dated as of October 13, 2021.  This Contract provides that, in exchange for a rights fee, FTX Trading will obtain certain exclusive sponsorship rights relating to certain International Cricket Council sporting events that will take place during the term of the Contract.

11.      The eighth Contract is a Sponsorship Agreement, by and between Lincoln Holdings LLC DBA Monumental Sports & Entertainment ("MSE") and WRSS, dated as of December 2, 2021.  This Contract provides that WRSS, in exchange for payment of various sponsorship fees, will be recognized as the "Official Cryptocurrency Exchange and NFT Partner" of certain professional sports teams for various advertising and commercial activities, such as stadium events and sweepstakes.

12.      The ninth Contract is a Team Partner Agreement, by and between Mercedes-Benz Grand Prix Limited ("Mercedes") and Blockfolio, dated as of February 17, 2022. The Contract provides that, in exchange for certain fees, Mercedes will grant Blockfolio certain

worldwide marketing and merchandising rights.  In addition, this Contract provides that

Mercedes and Blockfolio will try to launch a certain number of NFTs and that Blockfolio will be

entitled to a certain percentage of the net revenue of such releases.

13.     The tenth Contract is an Advertising and Promotion Agreement (the

"Miami Heat Promotion Agreement"), by and between Miami Heat Limited Partnership (the

"Miami Heat") and WRSS, dated as of March 22, 2021.  The Miami Heat Promotion Agreement

provides that WRSS, in exchange for a sponsorship fee, will be "The Official Cryptocurrency

Exchange Partner of the Miami Heat" and that the Miami Heat and WRSS will engage in various

advertising activities at the Miami Heat's games.

14.     The eleventh Contract is a Counterpart and Guarantee, by and between the

Miami Heat, WRSS and FTX Trading, dated as of March 22, 2021.  This Contract provides that

FTX Trading will act as a guarantor for WRSS' obligations under the Miami Heat Promotion

Agreement.

15.     The twelfth Contract is a Naming Rights Agreement (the "Miami Heat

Naming Rights Agreement"), by and between Miami-Dade County[2] and WRSS, dated as of

March 31, 2021.  This Contract provides that, in exchange for yearly fees, Miami-Dade County

will grant WRSS naming rights to the Miami Heat arena and other related rights for a term of 19

years through June 30, 2040.

16.     The thirteenth Contract is a Promotional Rights Agreement, by and

between MLB Advanced Media, L.P. ("MLB"), on its own behalf and on behalf of Major

League Baseball Properties, Inc., the Office of the Commissioner of Baseball, The MLB

Network, LLC and the Major League Baseball Clubs, and Blockfolio, dated as of July 10, 2021,

---

[2]     On November 22, 2022, Miami-Dade County filed the *Motion of Miami-Dade County, Florida, for Relief from the Automatic Stay to Terminate the Naming Rights Agreement* [D.I. 135] seeking relief from the automatic stay to terminate the Miami Heat Naming Rights Agreement.

as supplemented by an Addendum to the Promotional Rights Agreement, by and between the same, dated as of May 26, 2022. This Contract provides that MLB will permit Blockfolio to use certain licensed properties for promotional purposes in exchange for annual rights and media fees.

17.    The fourteenth Contract is a Sponsorship Agreement, by and between North America League of Legends Championship Series, LLC ("League of Legends")[3] and WRSS, dated as of August 1, 2021. This Contract provides that WRSS will sponsor certain live-event video game competitions hosted by League of Legends.

18.    The fifteenth Contract is a Sponsorship Agreement, by and between Play Magnus AS and FTX Trading, dated as of May 1, 2021. This Contract provides that FTX Trading, in exchange for a partnership fee, will sponsor the Meltwater Champions Chess Tour events until the end of 2023 as well as the broadcast of the World Chess Championships in 2021 and 2023.

19.    The sixteenth Contract is a Sponsorship Agreement, by and between SALT Venture Group, LLC ("SALT") and FTX Trading, dated as of December 24, 2021. This Contract provides that FTX Trading will pay SALT to organize, and front all related costs for, a series of crypto conferences. In exchange, FTX Trading will receive certain rights at such conferences, as well as a 75% profit share if the events' revenues exceed their costs (with such profits to be donated to charity).

20.    The seventeenth Contract is a Partnership and Endorsement Services Agreement, by and between SC30 Inc. and Blockfolio, dated as of August 11, 2021. This

---

[3]    On December 16, 2022, League of Legends filed the *Motion to Compel Rejection of Executory Contracts or in the Alternative for Relief from Automatic Stay to Terminate Agreement Under Sections 365 and 362(D), of the Bankruptcy Code* [D.I. 243], which the Debtors contend is moot now in light of the relief requested in this Motion to reject the Sponsorship Agreement.

Contract provides that SC30 Inc. will provide certain talent's personal and promotional services on behalf of Blockfolio, and grants Blockfolio the right to use the talent's likeness to promote Blockfolio's products and services in exchange for compensation in the form of cash, cryptocurrency and equity in FTX Trading.

21.    The eighteenth Contract is an Endorsement Services Agreement, by and between Shohei Ohtani and WRSS, dated as of November 16, 2021.  This Contract provides that Mr. Ohtani will provide certain personal and promotional services on behalf of WRSS, and grants WRSS the right to use Mr. Ohtani's likeness to promote WRSS' services or products in exchange for compensation in the form of cash and equity in FTX Trading.

22.    The nineteenth Contract is a Services Agreement, by and between Sol Stores Inc. and WRSS, dated as of September 27, 2022.  This Contract provides that Sol Stores Inc. will display certain advertising and promotional materials related to WRSS in certain of Sol Stores Inc.'s brick-and-mortar store locations.

23.    The twentieth Contract is a Sponsorship Agreement, by and between Swift Media Entertainment, Inc. ("Swift") and WRSS, dated as of May 18, 2021.  This Contract provides that, in exchange for certain sponsorship fees, Swift will display WRSS' logos and name in relation to certain "esports" activities and will not enter into any other sponsorship agreement with another cryptocurrency exchange operating in the United States during the ten year term of this Contract.

24.    The twenty-first Contract is a Sponsorship Agreement, by and between Swift and FTX Trading, dated as of May 18, 2021.  This Contract provides that, in exchange for certain sponsorship fees, Swift will display FTX Trading's logos and name in relation to certain "esports" activities and will not enter into any other sponsorship agreement with another cryptocurrency exchange operating in the United States during the ten year term of this Contract.

-7-

25.     The twenty-second Contract is a Partnership and Endorsement Services Agreement, by and between UJH Enterprises, Inc. and Blockfolio, dated as of July 30, 2021. This Contract provides that the counterparty will provide certain talent's personal and promotional services on behalf of Blockfolio, and grants Blockfolio the right to use the talent's likeness to promote Blockfolio's services or products in exchange for compensation in the form of cash and equity in FTX Trading.

26.     The twenty-third Contract is a Master Services Agreement, by and between Wasserman Media Group, LLC ("Wasserman") and WRSS, dated as of February 4, 2022. This Contract provides that Wasserman will agree to perform professional services for WRSS, the terms of which are to be defined in subsequent statements of work (each, an "SOW"). An SOW, dated as of February 4, 2022, provides terms relating to Wasserman's media, consulting and talent management services. Wasserman and WRSS also entered into a limited-purpose SOW, dated as of March 28, 2022, which provides terms relating to the project planning and administration of certain events, namely the "FTX Off the Grid Miami Beach Race Weekend" and the "Mercedes AMG Petronas F1 Team Demo Car Run" on May 6-8, 2022.

## Jurisdiction

27.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order or judgment by the Court in

connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

28.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to (i) reject the Contracts, effective as of the Rejection Date and (ii) take such actions as may be necessary to implement and effectuate the rejections of the Contracts.  The Debtors and their estates reserve any and all rights to assert that the Contracts are not executory contracts, and nothing included in, or omitted from, this Motion shall impair, prejudice, waive or otherwise affect such rights.

## Basis for Relief

**A.      Rejection of the Contracts Reflects the Debtors' Business Judgment.**

29.     The Debtors have determined that the Contracts are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates and present burdensome liabilities.  Accordingly, the Debtors' decision to reject the Contracts is an exercise of business judgment, and the rejection should be approved.

30.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization."  *In re Exide Techs*., 607 F.3d 957, 967 (3d Cir. 2010); *NLRB* v. *Bildisco & Bildisco* (*In re Bildisco*), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

31.    The Debtors' rejection of an executory contract is governed by the "business judgment" standard, which requires a debtor to have determined that the requested rejection would benefit its estate.  *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Sharon Steel Corp*. v. *Nat'l Fuel Gas Distrib. Corp*., 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("In general, motions to reject executory contracts are evaluated under the business judgment test."); *In re HQ Glob. Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("Under the business judgment standard, the sole issue is whether the rejection benefits the estate.").

32.    In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject contracts.  *See, e.g.*, *In re Fed. Mogul Glob., Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").  Courts defer to a debtor's business judgment in rejecting an executory contract, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code.  *See NLRB*, 465 U.S. at 523 (recognizing "business judgment" standard used to approve rejection of executory contracts).

-10-

33.     Moreover, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) allows the bankruptcy court to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).  Section 105(a) therefore provides additional authority for the Court to grant the relief requested herein.

34.     The Debtors submit that rejection of the Contracts effective as of the applicable Rejection Date is within the Debtors' business judgment and an appropriate step in furtherance of their efforts to preserve and maximize the value of their estates for all stakeholders.  The Debtors have evaluated the Contracts in consultation with their professional advisors and determined that any benefits provided by these Contracts do not equal or exceed the costs associated with the Contracts.  In many cases, the Contracts simply are no longer needed to operate the Debtors' businesses.  In contrast, the Debtors' rejection of the Contracts now will provide significant cost savings to the estate by terminating any further costs and obligations.

35.     The Contracts are not necessary for the Debtors' Chapter 11 proceedings. All of the Contracts are for endorsements and promotion of the Debtors' brand and name.  Given that the Debtors are not currently operating, these Contracts are not necessary or beneficial to the Debtors' chapter 11 efforts. Moreover, maintaining the Contracts could create unnecessary and burdensome expenses for the Debtors' estates.  Thus, the Debtors have determined that maintaining the Contracts is not in the best interests of the Debtors or their estates.

36.     Accordingly, the decision to reject the Contracts is a proper exercise of the Debtors' business judgment, and rejection of the Contracts therefore should be approved pursuant to section 365(a) of the Bankruptcy Code.

37.     Courts in this district have routinely granted relief similar to the relief requested herein.  *See, e.g.*, *In re Carbonlite Holdings LLC*, 21-10527 (JTD) (July 14, 2021) [D.I. 714] (authorizing debtors to reject certain executory contracts effective as of the rejection date); *In re Lighthouse Resources Inc.*, 20-13056 (JTD) (Jan. 26, 2021) [D.I. 270] (authorizing debtors to reject certain executory contracts and unexpired leases effective as of the rejection date); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (April 9, 2020) [D.I. 587] (same);  *In re THG Holdings LLC*, 29-11689 (JTD) (Oct. 10, 2019) [D.I. 343] (same).

**B.     Deeming Each Contract Rejected Effective as of the Rejection Date is Appropriate.**

38.     The Debtors also respectfully submit that it is appropriate for the Court to deem the Contracts rejected effective as of the Rejection Date.

39.     Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively.  *See SCS Co.* v. *Peter J. Schmitt Co.*, 1995 WL 1772010, at *2 (D. Del. May 15, 1995) (noting that a bankruptcy court has authority to select a retroactive date for the effective date of a lease's rejection); *see also In re Rupari Holding Corp.*, 2017 WL 5903498, at *6 (Bankr. D. Del. Nov. 28, 2017) (authorizing rejection of employment agreements effective as of a date before the debtor filed the motion to reject the same where debtor unequivocally communicated to the employees that it no longer required their services at the closing of the sale).

40.     Courts in this district and elsewhere have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date before entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking*

*Machs. Corp.*, 67 F.3d 1021, 1029 (1st Cir. 1995) ("[R]ejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (D. Colo. 2003) (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

41.     Furthermore, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

42.     In this instance, the balance of the equities favors the rejection of the Contracts effective as of the applicable Rejection Date.  Without a retroactive date of rejection, the Debtors may be forced to incur unnecessary administrative costs for Contracts that do not provide any benefits to the Debtors and their estates.  The Contract counterparties are not harmed by rejection prior to the date of entry of an order by this Court because they are each on notice as of filing of the Motion, and can as of that date start preparing for rejection and mitigating damages.  The Debtors anticipate filing a motion to establish a bar date in these Chapter 11 Cases and the Contract counterparties shall have until the date fixed by this Court to file any and all claims for damages arising from the Debtors' rejection of the Contracts.

43.     Courts in this district have routinely granted relief similar to the relief requested herein.  *See, e.g.*, *In re Carbonlite Holdings LLC*, 21-10527 (JTD) (July 14, 2021) [D.I. 714] (authorizing debtors to reject certain executory contracts effective as of the rejection date); *In re Lighthouse Resources Inc.*, 20-13056 (JTD) (Jan. 26, 2021) [D.I. 270] (authorizing

debtors to reject certain executory contracts and unexpired leases effective as of the rejection date); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (April 9, 2020) [D.I. 587] (same);  *In re THG Holdings LLC*, 29-11689 (JTD) (Oct. 10, 2019) [D.I. 343] (same).

## Compliance with Bankruptcy Rule 6006(f)

44.     Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple executory contracts or unexpired leases that are not between the same parties.  Rule 6006(f) states, in part, that such motion shall:

(1)     state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2)     list parties alphabetically and identify the corresponding contract or lease;

(3)     specify the terms, including the curing of defaults, for each requested assignment;

(4)     specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5)     be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases;

(6)     be limited to no more than 100 executory contracts or unexpired leases.

45.     The Debtors respectfully submit that the relief requested in this Motion complies with the requirements of Bankruptcy Rule 6006(f).

## Reservation of Rights

46.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or

causes of action against any third party or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Notice

47.    Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counterparties to the Contracts and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: December 30, 2022
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

*Proposed Co-Counsel for the Debtors and Debtors-in Possession with respect to all Contract counterparties*

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Proposed Counsel for the Debtors and Debtors-in Possession with respect to all Contract counterparties other than MLB and its affiliates*