**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., | Case No. 22-11068 (JTD) |
| Debtor. | (Jointly Administered) |
| | **Re: Dkt. Nos. 26, 266** |

**OBJECTION OF THE AD HOC COMMITTEE OF CREDITORS OF FTX TRADING, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE TIME TO FILE SCHEUDLES AND STATEMENTS**

The Ad Hoc Committee of Customers and Creditors of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (the "Ad Hoc Committee"),[1] by and through their attorneys, Venable LLP, respectfully submit this Objection (the "Objection") to the (i) *Motion of Debtors for Entry of an Order (I) Extending the Time to File (A) Schedules of Assets and Liabilities and Statements of Financial Affairs and (B) Rule 2015.3 Financial Reports and (II) Granting Certain Related Relief* [Dkt. No. 26] (the "Motion"), and (ii) the *Supplement to the Motion* [Dkt. No. 266] (the "Supplement"). In support of the Objection, the Ad Hoc Committee respectfully states as follows:

---

[1] The aggregate claim amounts represented by each of the members of the Ad Hoc Committee will be set forth in a to-be-filed statement ("Rule 2019 Statement") by the Ad Hoc Committee's counsel. For the reasons set forth in the Debtors' motion to redact or withhold certain confidential information of customers and personal information of individuals [Dkt. No. 45] (the "Motion to Withhold Confidential Information"), and in the Ad Hoc Committee of Non-US Customers of FTX.com's joinder in support of that motion [Dkt. No. 327], the names, addresses, and email addresses of the members of the Ad Hoc Committee will be redacted in the Rule 2019 Statement.

1

**BACKGROUND**

(i) *The Chapter 11 Cases*

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, with FTX Trading, the "Debtors") filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [Dkt. No. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Dkt. No. 231].

(ii) *The Motion to Extend Deadline to File Schedules and Statements*

2. On November 17, 2022, the Debtors filed the Motion. Pursuant to the Motion, the Debtors requested entry of an order that, *inter alia*, extends the deadline by which the Debtors must file schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") to January 23, 2023.

3. On December 21, 2022, the Debtors filed the Supplement. By way of the Supplement, the Debtors request that the deadline to file Schedules and Statements be extended to April 15, 2023.

4. In support of the Motion and Supplement, the Debtors rely on the following Declarations:

- *Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [Dkt. No. 57];

- *Declaration of Edgard W. Mosley II in Support of the Supplement* [Dkt. No. 266-2];
- *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 24];
- *Declaration of John J. Ray III in Support of First Day Pleadings* [Dkt. No. 92]; and
- *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [Dkt. No. 93] (collectively, the "Declarations").

(iii)   *Debtors' Pre-petition Conduct; Status of Books and Records*

5.   As set forth in more detail in the *Complaint for Declaratory Judgment* filed by the Ad Hoc Committee of Non-US Customers of FTX.com, C.A. No. 22-50514 (JTD) (Bankr. D. Del. December 28, 2022) [Dkt. No. 1] (the "Ad Hoc Compl."), and other highly publicized pleadings/litigations, including the *Amended Complaint for Injunctive and Other Equitable Relief and for Civil Monetary Penalties under the Commodity Exchange Act and Commission Regulations*, Commodity Futures Trading Comm'n v. Bankman-Fried, C.A. No. 22-10503 (PKC) (S.D.N.Y. Dec. 21, 2022) [Dkt. No. 13] (the "CFTC Compl."), and the Security and Exchange Commission's *Complaint*, Sec. and Exch. Comm'n v. Bankman-Fried, CA. No. 22-10794 (PKC) (S.D.N.Y. Dec. 21, 2022) [Dkt. No. 1] (the "SEC Compl."), the Debtors' pre-petition conduct amounted to what has been called by their current CEO, John J. Ray, III ("Mr. Ray"), an "old fashioned embezzlement." *FTX's New CEO: "This is Really Old-Fashioned Embezzlement*," Yahoo! (Dec. 13, 2022) (summarizing portions of John J. Ray, III's testimony before the U.S. House Financial Services Committee).  In his testimony to Congress, Mr. Ray further explained that the Debtors' pre-petition conduct was akin to "just taking money from customers and using it for your own purposes." *Id*.  "This is just plain old embezzlement." *Id*.

6.   Since the Debtors filed for chapter 11 protection, it has been revealed that FTX Trading, including through its sister company Alameda Research LLC ("Alameda"), engaged in mass fraud and misappropriation of FTX Trading customer assets.  CFTC Compl. ¶ 3; SEC

3

Compl. ¶ 2. Unbeknownst to FTX Trading customers, FTX Trading was defrauding its customers from launch in May 2019 to at least November 11, 2022, including through its affiliate Alameda, by secretly using customer assets without authorization. *Id.* at ¶ 5.

7. At the time of FTX Trading's launch, customers seeking to deposit fiat currency into their FTX.com accounts were directed unwittingly to wire their funds to bank accounts owned and controlled by Alameda. *Id.* ¶ 46. For a small subset of customer deposits, Alameda exchanged customer deposits for fiat-backed stablecoins and then transferred an equivalent amount of such stablecoins to FTX Trading's digital asset wallets. *Id.* ¶ 48. While this happened occasionally, customer assets typically remained solely in bank accounts in the name of Alameda, where they continued to be commingled with Alameda's own assets. *Id.* Consistently from FTX Trading's launch, Alameda illegally and impermissibly accessed and used FTX Trading customer assets for Alameda's own operations and activities, including to fund its trading, investment and borrowing/lending activities. *Id.* ¶¶ 51, 57. As set forth in the Ad Hoc Compl., it is likely that the comingling of funds was not limited to Alameda and FTX Trading, but instead involved some or all other Debtor entities. Ad Hoc. Compl. at ¶ 48.

8. As set forth in paragraph 21 of the CFTC Compl.,

> [FTX Tranding and Alameda] together with other entities under the majority ownership and control of Bankman-Friend operated as a single, integrated common enterprise under the sole ultimate authority of Bankman-Fried as their mutual owner, and identified [ ] as the FTX Enterprise. Bankman-Fried regularly exercised control over each of the component entities of the FTX Enterprise throughout the Relevant Period, including regularly serving as signatory on core corporate agreements, as well as corporate bank accounts and trading accounts, many of which were held in the United States. The FTX Enterprise failed to observe corporate formalities, including failure to segregate assets, operations, resources and personnel, or to properly document intercompany transfers of assets and other resources. The entities regularly shared office space, systems, accounts and communications channels. On information and belief, assets

4

> flowed freely between the FTX Enterprise entities, often without documentation or effective tracking.

CFTC Compl. at ¶ 21.

9. The Debtors' failures were succinctly summed up by Mr. Ray when he stated that in his over 40 years of legal and restructuring experience, he has "never seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information [that has] occurred here." *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 24] (the "Ray Declaration"), ¶ 5. According to Mr. Ray, "[t]he FTX Group did not keep appropriate books and records, or security controls, with respect to its digital assets." *Id.* at ¶ 65. Indeed, one of the five core objectives of the Debtors in these Chapter 11 Cases is "the implementation of accounting, audit, cash management, cybersecurity, human resources, risk management, data protection and other systems that did not exist, or did not exist to an appropriate degree, prior [to the Petition Date.]" *Id.* at ¶ 6. As of December 21, 2022, the date of the Supplement, the Debtors still did not have full records for their customers or completed financials through the Petition Date. Supp. at ¶ 7.

## OBJECTION

10. Subject to a short extension, if needed, for the Debtors to identify customers, to the extent possible, the Ad Hoc Committee objects to the extension of the deadline to file Schedules and Statements past January 23, 2023 (the date originally requested by the Debtors) for one, simple reason. It does not appear that the Debtors will ever be able to reconcile their pre-petition books and records (or, more likely, create them in the first instance) and file accurate Schedules and Statements in these Chapter 11 Cases, and they do not say as much in the Motion, Supplement, or any of the Declarations. There is no reason to extend the deadline under these circumstances.

11. The Debtors submit cause exists to extend the deadline to file Schedules and Statements to April 15, 2023 (from their original request of January 23, 2023) because their access to pertinent data has been delayed further than they had anticipated and that the data is voluminous and located in various locations, some of which are inaccessible to the Debtors and require inputs from various sources that the Debtors are still working to access, understand and extract. *Id*. at ¶ 7. Further, that "given the state of the records, it is necessary in many cases to cross-reference multiple sources or find other means of verification in order to ensure the accuracy of information" and that "[t]here are limited internal resources to assist in this process, and many of the internal systems of record are non-traditional and used in non-traditional ways which has slowed data-utilization and raised questions of systems of record are no longer available to, or have limited availability for, the Debtors." *Id*.

12. When viewed in a vacuum, the circumstances described by the Debtors would likely constitute sufficient "cause" to extend the deadline to file Schedules and Statements. However, when viewed through the prisim of reality, any extension past January 23, 2023 (the date the Debtors initially requested for an extended deadline) would almost certainly be futile. It is not clear from the Motion, Supplement, or any of the Declarations, that the Debtors have a realistic possibility of ever filing accurate Schedules and Statements, especially when coupled with the largely undisputed allegations regarding the Debtors' prepetition conduct and practices described in the mounting litigation brought against the Debtors (and their former officers), described briefly above. *See, e.g.,* Ad Hoc Compl., CFTC Compl., and SEC Compl.[2] Certainly,

---

[2] Zixiao "Gary" Wang ("Wang") and Caroline Ellison ("Ellison"), two of the Debtors' top prepetition officers, both pleaded guilty to criminal charges for their roles in the scheme and are cooperating with law enforcement. Dec. 19, 2022 Minute Entry, *United States v. Zixiao "Gary" Wang*, 22-cr-673-LAK-2 (S.D.N.Y. Dec. 19, 2022) [D.I. 6]; and Dec. 19, 2022 Minute Entry, *United States v. Caroline Ellison*, 22-cr-673-LAK-3 (S.D.N.Y. Dec. 19, 2022) [D.I. 8]. Wang and Ellison also do not contest their liability on the CFTC's claims, and they have consented to settlements of the SEC's charges. *See* CFTC Press Release No. 8644-22 (Dec. 21, 2022); SEC Press Release No. 2022-234 (Dec. 21, 2022).

the Debtors do not ever say that they will be able to file accurate Schedules and Statements, regardless of how much time they have to do so. Instead, what the Debtors do say, together with the largely undisputed allegations against the Debtors, makes it appear that the Debtors' unprecedented prepetition failures have made it highly unlikely, if not impossible, that the Debtors can "unscramble the egg" and file accurate Schedules and Statements that can be relied on in these Chapter 11 Cases.

13. It is not disputed that to the extent they existed at all, the Debtors' pre-petition books and records were a disaster, to say the least. Mr. Ray stated that in his over 40 years of legal and restructuring experience, he has "never seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information [that has] occurred here." Ray Declaration, ¶ 5. According to Mr. Ray, "[t]he FTX Group did not keep appropriate books and records, or security controls, with respect to its digital assets." *Id.* at ¶ 65. Indeed, one of the five core objectives of the Debtors in these Chapter 11 Cases is "the implementation of accounting, audit, cash management, cybersecurity, human resources, risk management, data protection and other systems that did not exist, or did not exist to an appropriate degree, prior [to the Petition Date.]" *Id.* at ¶ 6. As of December 21, 2022, the date of the Supplement, the Debtors still did not have full records for their customers or completed financials through the Petition Date. Supp. at ¶ 7.

14. The deadline to file schedules and statements may only be extended upon a showing of "cause." Fed. R. Bankr. P. 1007(c). Here, the Debtors have failed to show sufficient "cause" to warrant an extension of the deadline to April 14, 2023 (or any other time after January 23, 2023). The Ad Hoc Committee respectfully submits that there is no evidence the Debtors will be able to rectify "the complete absence of trustworthy financial information"

7

that existed as of the Petition Date with respect to their "hundreds of thousands, if not over one million, creditors and other parties-in-interest", Mot. at ¶ 7, and likely millions of transactions, and file accurate Schedules and Statements by April 15, 2023, or anytime thereafter. The Debtors have failed to state anywhere in their papers that such task is achievable—even if afforded more time. The Ad Hoc Committee respectfully submits that the probable outcome of any such effort is failure, at astronomical costs to the Debtors' estates. The purported "cause" articulated by the Debtors in the Supplement appears to evidence this inevitability, rather than provide the Court with a basis for extending the deadline under the circumstances.

15. Accordingly, the Court should deny the Debtors' request to extend the deadline to file Schedules and Statements to April 15, 2023.

16. When faced with a somewhat similar problem but with presumably better records, Celsius Network LLC and is affiliated debtors and debtors-in-possession (the "Celsius Debtors") implemented a unique solution. They scheduled all account holder claims at each debtor entity and did not schedule any of such claims as contingent, unliquidated, or disputed. *See, e.g., In re Celsius Network LLC*, C.A. No. 22-10970 (MG) (Bankr. S.D.N.Y. June 13, 2022), Dkt. No. 974 (Global Notes and Statement of Limitations, Methodology and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs), p. 3. In so doing, the Celsius Debtors recognized that whether or not the account holders have claims against every debtor (and non-debtor affiliate), or solely against Celsius Network LLC, would need to be resolved by the Court either through a to-be-commenced adversary proceeding, a claims objection or other litigation (the "Account Holder Ruling"). *Id*. The Celsius Debtors believed that the scheduling of account holder claims as contingent, unliquidated, or disputed would inequitably require each account holder to file a proof of claim against each debtor entity

in order to preserve the rights to the issues to be decided through the Account Holder Claim Ruling. *Id*. The Celsius Debtors noted that no creditor or other party should rely on the fact that the account holder claims are scheduled at each debtor entity as dispositive as to this legal issue, which will be decided in the Account Holder Claim Ruling, and that all rights were reserved. *Id.* at pp. 3-4. Further, to the extent the court enters a final and non-appealable order with respect to the Account Holder Claim Ruling, that the Celsius Debtors intended to amend the schedules to the extent required by such ruling. *Id*. at p. 4.

17. A similar solution may benefit the Debtors and their constituencies in these Chapter 11 Cases, which will undoubtedly have comparable issues with respect to how customers' claims should be allocated, especially in light of the fact that the Debtors will likely never be able to file accurate Schedules and Statements under the circumstances. Such a solution could provide significant cost savings and reduce the need for forensic analysis of each debtorr, its assets and individual claims. Of course, the rights of all parties would be reserved, including with respect to who holds title to the customer accounts; whether assets held by the Debtors are subject to constructive trusts; whether substantive consolidation is appropriate; and whether the Debtors' prepetition conduct amounted to a Ponzi scheme.

WHEREFORE, based on the foregoing, the Ad Hoc Committee respectfully request this Court (i) deny the Supplement, (ii) not extend the deadline to file Schedules and Statements past January 23, 2023, subject to, if needed, a short extension of time to allow for the Debtors to identify customers, and (iii) grant such other and further relief as is just and proper.[3]

---

[3] The Debtors' Schedules should be redacted to protect their customers' confidential information to the extent ordered by the Court in connection with the pending Motion to Withhold Confidential Information.

9

Dated: January 4, 2023
    Wilmington, Delaware

           **VENABLE LLP**

           */s/ Daniel A. O'Brien*
           Daniel A. O'Brien (No. 4897)
           1201 North Market Street, Suite 1400
           Wilmington, DE 19801
           Tel: 302.298.3535
           Fax: 302.298.3550
           daobrien@venable.com

                  and

           Jeffrey S. Sabin
           Carol A. Levy
           1270 Avenue of the Americas, 24th
           Floor New York, New York 10020
           Tel: (212) 307-5500
           Fax: (212) 307-5598
           jssabin@venable.com
           cweinerlevy@venable.com

                  and

           Andrew J. Currie
           600 Massachusetts Avenue, NW
           New York, New York 10020
           Tel: (212) 307-5500
           Fax: (212) 307-5598
           ajcurrie@venable.com

           *Attorneys for the Ad Hoc Committee*