# EXHIBIT D-1

DocuSign Envelope ID: 222A0B70BA461527-41D68452DF745B

## MASTER DIGITAL CURRENCY LOAN AGREEMENT

This Master Digital Currency Loan Agreement ("<u>Agreement</u>") is made on this July 15th, 2019 (the "<u>Effective Date</u>") by and between Alameda Research LTD, ("<u>Borrower</u>"), a company organized and existing under [Delaware law] and BlockFi Lending LLC ("<u>Lender</u>") a limited liability company organized and existing under Delaware law.

## <u>RECITALS</u>

**WHEREAS**, subject to the terms and conditions of this Agreement, Borrower may, from time to time, seek to initiate a transaction pursuant to which Lender will lend certain Digital Currency (defined herein) to Borrower and Borrower will return such Digital Currency to Lender upon the termination of the Loan pursuant to the terms and conditions in this Agreement.

Now, therefore, in consideration of the foregoing, the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower and Lender hereby agree as follows:

**I.**      <u>**Definitions.**</u>   <u>For purposes of this Agreement, the following terms shall have the respective meanings set forth in this Article I.</u>

"***Applicable Law***" means (regardless of jurisdiction) any applicable (i) federal, national, state and local laws, ordinances, regulations, orders, statutory instrument, rules, treaties, codes of practice, decrees, injunctions, or judgments and any applicable (ii) ruling, declaration, regulation, requirement, or interpretation issued by any regulatory, judicial, administrative or governmental body or person;

"***Authorized Agent***" has the meaning set forth in Exhibit A.

"***Borrow Fee***" means the fee that is proposed by Borrower when making a Lending Request and accepted by Lender in connection with making the Loan; such Fee shall be paid by Borrower to the Lender for the Loan.

"***Borrower***" has the meaning set forth in the first paragraph of this Agreement.

"***Business Day***" means any day other than a Saturday, Sunday or other day on which Lender is closed for business. For purposes of this Agreement and the transactions contemplated hereunder, Lender follows the New York Stock Exchange calendar of holidays.

"***Callable Option***" means the Borrower and Lender each have the option to redeliver or recall an Open Deal Loan at any time during the term of the Loan.

"***Confirmation Protocol***" means the requirement that the Transfer of a Digital Currency, may not be deemed settled and completed until (i) the transaction has been recorded in a block and five (5) consecutive subsequent blocks referring back to such block (meaning six (6) blocks in total) have

DocuSign Envelope ID: 2A2DB3C3E546FCF5B4A19DC9B5F37F5B

*Strictly Private & Confidential*

been added to the applicable blockchain; or (ii) the transaction has met a different protocol for a specific Digital Currency agreed to by the parties in writing and added hereto as **Exhibit C.**

"*Default Fee*" has the meaning set forth in Section III(b).

"*Digital Currency*" means Bitcoin (BTC), Bitcoin Cash (BCH), Ether (ETH), Ether Classic (ETC), or Litecoin (LTC), any New Currency and any digital currency that the Borrower and Lender agree upon.

"*Digital Currency Address*" means an identifier of 26-34 alphanumeric characters that represents a possible destination for a Transfer of Digital Currency.

"*Dollars*" and "*$*" mean lawful money of the United States of America.

"*Excluded Taxes*" means, with respect to the Lender or any other recipient of any payment to be made by or on account of any obligation of Borrower under this Agreement, Taxes imposed on or measured by its overall net income, overall gross income or overall gross receipts (however denominated), and franchise taxes imposed on it (in lieu of net income taxes) or capital taxes, by the applicable jurisdiction (or any political subdivision thereof) under the laws of which such recipient is organized, in which it is resident for tax purposes or in which its principal office is located.

"*Fees*" mean the Borrow Fee and the Default Fee.

"*Fork*" means a permanent divergence in the relevant Digital Currency blockchain, that for example commonly occurs when non-upgraded nodes cannot validate blocks created by upgraded nodes that follow newer consensus rules.

"*Governmental Authority*" means the government of any nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"*Hard Fork*" has the meaning set forth in Section V.

"*Indemnified Taxes*" means Taxes other than Excluded Taxes.

"*Lender*" means BlockFi Lending LLC.

"*Liquidity Exchange*" means Coinbase in the first instance but if for any reason Coinbase is not available online (whether due to technical maintenance or otherwise), it shall then mean Gemini.

"*Loan*" means a loan of Digital Currency made pursuant to and subject to this Agreement.

"*Loan Documents*" shall collectively mean this Agreement, all Lending Requests that are accepted by the Lender, and all exhibits and schedules hereto.

"*Maturity Date*" means, with respect to a Loan, the specified maturity date with respect to such

DocuSign Envelope ID: 2A20B79B-A461-42F1-9F68-1E257375B0CB

*Strictly Private & Confidential*

Loan upon which such Loan will terminate, unless such Loan is (i) terminated prior to such maturity date pursuant to Section (II)(d) or (ii) as may be extended as agreed to by the parties.  In the case of an Open Deal Loan that is automatically renewed for a successive one-year term, the next anniversary of the Maturity Date shall be deemed to be the Maturity Date.

"*New Currency*" has the meaning set forth in Section V.

"*Open Deal*" means a Loan where Borrower may redeliver the Digital Currency and Lender may recall the Digital Currency at any time, subject to terms of this Agreement.  Unless otherwise agreed to in writing by the parties, each Open Deal Loan will automatically be renewed for successive one-year terms upon each anniversary of the Maturity Date, unless either party provides written notice to terminate such Open Deal Loan no less than ten (10) days prior to the end of the current one-year term.

"*Other Taxes*" means all present or future stamp, registration, documentation or other excise or property taxes, or similar taxes, charges or levies imposed by any Governmental Authority, including any interest, additions thereto or penalties applicable thereto

"**Stablecoin**" means any cryptocurrency pegged to the US Dollar, including, but not limited to the Gemini Dollar (GUSD), USD Coin (USDC) and Paxos Standard (PAX).

"*Taxes*" means all present or future taxes, levies, imposts, duties, deductions, withholdings, assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to Tax or penalties applicable thereto.

"*Term*" shall have the meaning set forth in Section XX.

"*Term Deal*" means a Loan where only Borrower has the right to redeliver the Digital Currency prior to the Maturity Date subject to this Agreement (except in the case of a termination of such Loan pursuant to Section XX).

"*Transfer*" shall mean, as applicable, the delivery of Digital Currency by Lender or the redelivery of Digital Currency by Borrower hereunder and the crediting of such Digital Currency to the recipient's account in accordance with this Agreement.

"*Value*" means, with respect to any Collateral consisting of Dollars, the actual Dollar amount thereof, and with respect to any borrowed Digital Currency or any Collateral consisting of Stablecoins, the value of such Digital Currency or Stablecoin, as applicable, as determined by Lender in good faith and reasonable discretion by reference to recognized pricing sources for the relevant borrowed Digital Currency or Stablecoin, as applicable (provided that, for purposes of Section IV, the Value of Digital Currencies or Collateral consisting of Stablecoin will be determined based on the Spot Rate).

## II.     <u>General Operation.</u>

(a)   <u>Loans of Digital Currency</u>

3

*Strictly Private & Confidential*

Subject to the terms and conditions hereof, Borrower may, in its sole and absolute discretion, request for the Lender to Loan to Borrower a specified amount of Digital Currency, and Lender may, in its sole and absolute discretion, extend, or decline to extend, such Loan.

(b)  <u>Loan Procedure</u>

During the Term of this Agreement, on a Business Day (the "<u>Request Day</u>") an Authorized Agent may by email directed to ████████████████ request from Lender a Loan of a specific amount of Digital Currency (a "<u>Lending Request</u>"); provided that, if such Lending Request is received by Lender at or after 1:00 pm New York time on a Business Day, then the next Business Day will be deemed to be the Request Day. Lender shall by email directed to [*insert Borrower's email*] inform Borrower whether Lender agrees to make such a Loan. An email is deemed to be received immediately after the time sent (as recorded on the device or system from which the sender sent the email), unless the sender receives an automated message that the email has not been delivered. Once made, Lending Requests may not be withdrawn by Borrower and a Lending Request shall be deemed rejected unless accepted by Lender as set forth above on or before 5:00 pm New York time on the Request Day.

Unless the parties otherwise agree, each Lending Request submitted by Borrower shall provide the following information:

(i)      The type of Digital Currency requested;
(ii)     the amount of Digital Currency requested;
(iii)    whether the Loan is a Term Deal or an Open Deal;
(iv)     the proposed Borrow Fee for such Loan;
(v)      the Maturity Date; and
(vi)     the Collateral Requirements, if applicable

If Lender agrees to make a Loan on the terms set forth in the Lending Request or as otherwise agreed in writing between Borrower and Lender, Lender shall commence transmission to the Borrower's Digital Currency Address the amount of Digital Currency set forth in the Lending Request or otherwise agreed with Borrower (the "<u>Borrowed Amount</u>") on or before 5:00 pm New York Time on the Request Day.

Specifics of each Loan shall be memorialized using the form of Loan Term Sheet attached  hereto as **Exhibit B**, or such other form of written confirmation agreed to by and between Borrower and Lender (which may include email confirmation), which will supplement, form a part of and be subject to the terms of this Agreement, and constitute a binding agreement between Borrower and Lender, with respect to the related Loan.

(c)  <u>Callable Option (for Open Deal Loans)</u>

*Strictly Private & Confidential*

Applicable solely to Open Deal Loans, Lender may at any time (the "<u>Recall Request Time</u>") from 9:00 am until 5:00 pm New York time on a Business Day exercise the Callable Option and recall all or any portion of a Digital Currency loaned to Borrower (the "<u>Recall Amount</u>"). Borrower will then have two (2) Business Days from the Recall Request Time (the "<u>Recall Delivery Time</u>") to deliver the Recall Amount.

Borrower, in its sole and absolute discretion, may also at any time from 9:00 am until 5:00 pm New York time on a Business Day (the "<u>Redelivery Day</u>") exercise the Callable Option and deliver all or any portion of any Digital Currency loaned to Borrower.  Upon receipt of such return of Digital Currency, Lender will promptly notify Borrower of any applicable Borrow Fee pursuant to the terms of the Lending Request on such returned amount accrued (but not yet paid) through such Redelivery Day, and Borrower shall have up to five (5) Business Days to pay such accrued Borrow Fee after the Redelivery Day (which due date will be deemed to be an "Invoice Due Date" for purposes of Section (III)(c)).

    (d)   <u>Termination of a Loan</u>

Loans will terminate:

        (i)      If a Term Deal, upon redelivery by Borrower of the Digital Currency at the Maturity Date or sooner;

        (ii)     If an Open Deal, upon redelivery by Borrower of the Digital Currency once the Borrower or Lender exercises the Callable Option; or

        (iii)    At the end of the Term as set forth in Section XX.

    (e)   <u>Redelivery of Borrowed Digital Currency</u>

In connection with any termination of a Loan pursuant to the terms of this Agreement, Borrower shall effect redelivery of the relevant amount of borrowed Digital Currency on or before 5:00 pm New York time of the applicable Business Day (<u>i.e.</u>, the Maturity Date, the Business Day on which the Recall Delivery Time falls, the Redelivery Day, or such other date of termination pursuant to Section XX).

    (f)   <u>Acts by Governmental Authorities and Changes in Applicable Laws</u>.

If because of enforcement actions by Governmental Authorities of competent jurisdiction or changes in Applicable Laws (collectively, "Government Restrictions"), a party's ability to transfer or own a Digital Currency that has been the subject of a Loan or Loans is eliminated, materially impaired or declared illegal:

DocuSign Envelope ID: 2A240B7D8546452F-419D681521D75B9

*Strictly Private & Confidential*

   (1) if legally permissible and/or possible under the Government Restrictions, including, without limitation, during any notice or grace period, Borrower shall repay to the Lender any outstanding balance of such Digital Currency and any accrued but unpaid Fees, such repayment to be made in the applicable Digital Currency;

   (2) if return is not legally permissible and/or possible under the Government Restrictions, Borrower shall repay to Lender an amount in Dollars equal to the greater of (i) the volume-weighted average price on the Liquidity Exchanges (measured at 4 p.m. New York time) of the borrowed Digital Currency during the 30 Business Day period prior to the effective date of the Government Restrictions, and (ii) the volume-weighted average price on the Liquidity Exchanges (measured at 4 p.m. New York time) of the borrowed Digital Currency during the 30 Business Day period commencing with the relevant day when the parties first entered into the applicable Loan.

## III.   **Borrow Fees and Transaction Fees.**

(a)  Borrow Fee Calculation

When a Loan is executed, the Borrower will be responsible to pay the Borrow Fee as agreed to in the relevant Loan Term Sheet, and the Borrow Fee shall be annualized but calculated daily and is subject to change only if agreed to in writing (email sufficient) by Borrower and Lender. The Borrow Fee shall be payable, unless otherwise agreed in writing (email sufficient) by the Borrower and Lender, in the applicable Digital Currency.

Lender shall calculate any Borrow Fees owed on a daily basis and promptly provide Borrower with the calculation upon request.

(b)  Default Fee

For each Business Day in excess of the third (3rd) Business Day following (i) the Maturity Date, (ii) the Recall Delivery Time or (iii) any date on which Lender terminates this Agreement pursuant to Section XX (whichever is applicable) as of which Borrower has not returned any Digital Currency by the relevant due date, or for each day during any period in which any Event of Default has occurred and is continuing with respect to Borrower, Borrower shall incur an additional fee (the "Default Fee") that is equal to the sum of (a) the greatest of (i) $2000 per day, (ii) an amount equal to 1% of the notional amount of the Loan per day, in each case, accruing daily until Borrower cures such failure to return Digital Currency or such other applicable Event of Default, however not higher than the highest rate of interest permitted to be charged under Applicable Law, and (b) any losses, costs, expenses or other damages reasonably incurred by Lender  (but for the avoidance of doubt, excluding consequential damages) as a result of such late payment or Event of Default, (including, in case of a failure by Borrower to return Digital Currency by the relevant due date, any

DocuSign Envelope ID: 2E2C03825461527 447B6815B972F5

*Strictly Private & Confidential*

relevant and reasonable borrowing costs or hedging costs (including any reasonable break costs, amounts required to be posted as collateral or borrowing costs incurred in order to borrow required collateral amounts in connection with such hedging arrangements) that are incurred by Lender in order to (x) borrow such Digital Currency, or (y) synthetically borrow, by purchasing and simultaneously entering into hedging arrangements to minimize its exposure to the purchased position in such Digital Currency, in each case in (x) and (y), in an amount up to the amount of the relevant insufficiency in such Digital Currency), which shall be reasonably calculated by Lender and payable by Borrower in addition to the Borrow Fee.

(c)    <u>Payment of Borrow Fees and Default Fees</u>

An invoice for Borrow Fees and any Default Fees (the "<u>Invoice Amount</u>") shall be sent out on the first (1st) Business Day of the month and shall include any Borrow Fees incurred from the previous month. Borrower shall have up to three (3) Business Days after such invoice is sent to submit payment for the invoice (the "<u>Invoice Due Date</u>"). Fees unpaid by the Invoice Due Date shall also become subject to the Default Fee commencing the day after the Invoice Due Date.

(d)    <u>Application of Payments</u>

Borrower shall, at the time of making each payment under this Agreement, specify to the Lender the Loan to which such payment is to be applied. In the event that the Borrower fails to so specify, or if an Event of Default has occurred and is continuing, the Lender may apply the payment in such manner as it may determine to be appropriate in its sole, reasonable discretion.

(e)    <u>Application of Insufficient Payments</u>

If at any time insufficient amounts are received by the Lender to pay fully all amounts of principal, applicable Fees, and other amounts then due and payable hereunder, the Lender may apply such Digital Currency payment received as it may determine to be appropriate in its sole reasonable discretion. Lender may, in its reasonable discretion and if there is more than one outstanding Loan between the parties, apply payments by Borrower in one Digital Currency towards the satisfaction of obligations outstanding with respect to a Loan in another Digital Currency, provided that Lender will make any conversions between such Digital Currencies based upon the applicable market rate at the Liquidity Exchanges.

(f)    <u>Non-Business Days</u>

If the due date of any payment or delivery or the Maturity Date of any Loan under this Agreement would otherwise fall on a day that is not a Business Day, such date shall be extended to the next succeeding Business Day and, in the case of any payment accruing Fees such Fees shall be payable for the period of such extension.

*Strictly Private & Confidential*

(g)  Computations

Fees shall be computed on the basis of a year of 360 days for the actual number of days (including the first day but excluding the last day) occurring in the period for which payable.  For purposes of calculating Fees, Digital Currencies shall be deemed to have been Transferred by one party to the other when the applicable Confirmation Protocol for the relevant Digital Currency has been completed.  If the requirements of the Confirmation Protocol are not met by 5pm New York Time, the Transfer shall be deemed to have been made on the following Business Day.  Calculation of Fees shall be based on the date when the relevant Transfer is deemed to have occurred.

(h)  Taxes

(1)  Payments Free of Taxes.  Any and all payments by or on account of any obligation of Borrower hereunder shall be made free and clear of and without reduction or withholding for any Indemnified Taxes or Other Taxes; provided that if Borrower shall be required by Applicable Law to deduct any Indemnified Taxes (including any Other Taxes) from such payments, then (i) the sum payable shall be increased as necessary so that after making all required deductions for Indemnified Taxes or Other Taxes (including deductions for Indemnified Taxes or Other Taxes applicable to additional sums payable under this Section) the Lender shall receive an amount equal to the sum it would have received had no such deductions for Indemnified Taxes or Other Taxes been made, (ii) Borrower shall make such deductions, and (iii) Borrower shall timely pay the full amount deducted to the relevant Governmental Authority in accordance with Applicable Law.

(2)  Payment of Other Taxes by Borrower. Without limiting the provisions of Section (1) above, Borrower shall timely pay any Other Taxes that arise from any payment made by it under, or otherwise with respect to, this Agreement to the relevant Governmental Authority if required and in accordance with Applicable Law.

(3)  Indemnification by Borrower. Borrower shall indemnify the Lender for the full amount of any Indemnified Taxes or Other Taxes (including Indemnified Taxes or Other Taxes imposed or asserted on or attributable to amounts payable under this Section **Error! Reference source not found.**III(h)(3)) attributable to Borrower under this Agreement and paid by the Lender, whether or not such Indemnified Taxes or Other Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority against Lender. A certificate delivered to Borrower by Lender as to the amount of such payment or liability actually paid by Lender to the relevant Governmental Authority shall be conclusive and binding absent manifest error.

(4)  Tax Reporting.  Borrower shall report, if and/or as required under Applicable Law, to the Internal Revenue Service ("IRS") all Fees paid to Lender under this Agreement and shall provide Lender Form 1099-INT annually documenting the amount reported to the IRS.

DocuSign Envelope ID: 2A2...

*Strictly Private & Confidential*

## IV.    Collateral Requirements

### (a) Collateral

Borrower shall provide and maintain cash collateral (the "Collateral", including any Additional Collateral and excluding any Returned Collateral as defined below) in accordance with the terms of this Section IV and any other such terms as agreed upon by the Borrower and Lender and memorialized using the Loan Term Sheet attached as Exhibit B.  Initially, the amount of Collateral required will be greater than or equal to the product of (i) Initial Margin Percentage as agreed upon in the Loan Term Sheet and (ii) the Value of the borrowed Digital Currency. Collateral shall be valued in Dollars. For the avoidance of doubt, upon the return of the borrowed Digital Currency at the termination of a Loan, Lender shall return to Borrower the same amount and type of Collateral that was deposited. Borrower may, if mutually agreed by both parties, provide the Collateral (in whole or in part) to Lender in Stablecoins in lieu of Dollars.

The Collateral transferred by Borrower to Lender shall be security for Borrower's obligations in respect of the Loans and for any other obligations of Borrower to Lender under this Agreement. Borrower hereby pledges with, assigns to, and grants Lender a continuing first priority security interest in, and a lien upon, the Collateral, which shall attach upon the transfer of the borrowed Digital Currencies by Lender to Borrower and which shall cease upon the transfer of the borrowed Digital Currencies by Borrower to Lender.  In addition to the rights and remedies given to Lender hereunder, Lender shall have all the rights and remedies of a secured party under the UCC. Lender shall be free to pledge, rehypothecate, assign, use, commingle or otherwise dispose of or use the Collateral.

### (b) Margin Calls

If, at any time, the sum of the products of (i) Margin Requirement Percentage as agreed upon in the Loan Term Sheet, and (ii)  Value of the borrowed Digital Currency for each Loan exceeds the Value of the Collateral, Lender shall have the right to require Borrower to contribute additional collateral ("Additional Collateral") so that the Value of the Collateral (including the Additional Collateral) is equal to or greater than the sum of the products of (i) Initial Margin Percentage, and (ii)  Value of the borrowed Digital Currency for each Loan.

If Lender requires Borrower to contribute Additional Collateral, it shall send an email notification (the "First Notification") to the Borrower at the email address indicated in Section XIII that sets forth the amount of Additional Collateral required. Borrower shall have twenty-four (24) hours from the time Lender sends such First Notification to deliver Additional Collateral to Lender in accordance with subsection (c) below; provided that, if at any time, the Value of the Collateral is at least equal to the sum of the products of (i) Initial Margin Percentage, and (ii) Value of the borrowed Digital Currency for each Loan, Lender will promptly notify Borrower, and no Additional Collateral shall be required from Borrower.

If Borrower fails to deliver the relevant amount of Additional Collateral to Lender within twenty (20) hours after Lender sends a First Notification, Lender shall send a second email notification (the

"Second Notification") requesting Additional Collateral (provided that the required amount of Additional Collateral in the Second Notification will be determined based upon the Value of the Digital Currencies as of the time such Second Notification is sent). Borrower shall have four (4) hours from the time Lender sends the Second Notification to deliver Additional Collateral to Lender in accordance with subsection (c) below. Failure by Borrower to timely deliver the relevant amount of Additional Collateral by the time specified in the Second Notification shall be an Event of Default.

(c) Delivery of Additional Collateral

Borrower's obligation to deliver Additional Collateral to Lender shall be satisfied (i) in the case of Dollars, by bank wire to the account specified in the Loan Term Sheet, (ii) by an amount of Stablecoins transferred to the wallet address specified in the Loan Term Sheet, or (iii) by delivery of return amounts of borrowed Digital Currencies to Lender sufficient to cause the Value of the Collateral to be equal to or greater than the sum of the products of (i) Initial Margin Percentage, and (ii) Value of the borrowed Digital Currency for each Loan.

(d) Return of Collateral

If, as of any Business Day, the sum of the products of (i) Release Margin Percentage as agreed upon in the Loan Term Sheet, and (ii) Value of the borrowed Digital Currency for each Loan exceeds the Value of the Collateral, Borrower shall have the right, in its sole and absolute discretion, to require that Lender return an amount of Collateral, so that the Value of the Collateral is at least equal to the sum of the products of (i) Release Margin Percentage as agreed upon in the Loan Term Sheet, and (ii) Value of the borrowed Digital Currency for each Loan (such excess amount, the "Returned Collateral").

If Borrower requires Lender to repay Returned Collateral, it shall send an email notification (the "Return Notification") to the Lender at the email address indicated in Section XIII that sets forth the amount of Returned Collateral. Lender shall return the Returned Collateral to Borrower in accordance with subsection (e) below by 6:00 p.m. New York time on the Business Day on which the Return Notification is received, if received by Lender prior to 10:00 a.m. New York time on a Business Day, or otherwise by 6:00 p.m. New York time on the next Business Day.

(e) Delivery of Returned Collateral

Delivery of the Returned Collateral shall be made by bank wire to the account or a digital wallet address, in both instances specified in the Return Notification by the Borrower, as applicable.

(f) Default or Failure to Return Loan

In the event that Borrower fails to return borrowed Digital Currencies under a Loan upon Termination or upon the occurrence of an Event of Default, Lender may transfer that portion of the Collateral to Lender's operating account necessary for the payment of any reasonable liability or obligation or indebtedness created by this Agreement, including, but not limited to using the Collateral to purchase the relevant Digital Currency to replenish Lender's supply of the relevant Digital Currency.

(g) Return of Collateral

DocuSign Envelope ID: 2A240D8A8CA604B871A05A881FB277A4B

Upon Borrower's redelivery of borrowed Digital Currencies under a Loan and acceptance by Lender of the Borrowed Digital Currencies into Lender's wallet address, with such delivery being confirmed on the relevant Digital Currency blockchain pursuant to the Confirmation Protocol, Lender shall return the relevant amount of Collateral to a bank account in the name of Borrower, or a digital wallet address specified by the Borrower, as applicable.

## V.  **Hard Fork**

(a)  Notification

In the event of a Hard Fork, Lender shall provide prompt email notification to Borrower of such event(s) to occur.

(b)  No Immediate Termination of Loans Due to Hard Fork

In the event of a Hard Fork, any outstanding Loans will not be immediately terminated.

(c)  Redelivery of Borrowed Digital Currency

On the Maturity Date or other date of termination of a Loan pursuant to this Agreement, notwithstanding anything to the contrary in the Agreement, Lender will receive any incremental cryptocurrencies generated as a result of any Hard Forks in the Digital Currency protocol during the term of such Loan that result in a new cryptocurrency (each, a "New Currency") being created, provided that the amount of such New Currency will be the appropriate amount of each such New Currency to which a holder of the Amount of Digital Currency (as agreed in the Loan Term Sheet) would be entitled in connection with such Hard Forks.  The determination of whether a Hard Fork has occurred will be made by the Lender in accordance with the CME CF Cryptocurrency Indices Hard Fork Policy (Version 1) as published by the CME Group in December 2017.

## VI.  **Representations and Warranties.**

(a)  Each party represents that on the date hereof and on the date of each Loan Request to be made by the Borrower hereunder that this Agreement has been duly and validly authorized, executed and delivered on behalf of each party and constitutes the legal, valid and binding obligations of each party enforceable against the party in accordance with its terms  and will not contravene (a) the constitutive documents of each party, (b) any Applicable Law, and (c) any judgment, award, injunction or similar legal restriction.

(b)  Each party represents that no license, consent, authorization or approval or other action by,

DocuSign Envelope ID: 2A240DB3-88A6-4821-A97A-8B1FB2771B83

or notice to or filing or registration with, any Governmental Authority (including any
foreign exchange approval), and no other third-party consent or approval, is necessary for
the due execution, delivery and performance by such party of this Agreement or for the
legality, validity or enforceability thereof against such party.

(c) Each party hereto represents and warrants that it has not relied on the other for any tax or
accounting advice concerning this Agreement and that it has made its own determination as
to the tax and accounting treatment of any Loan or any Digital Currency or funds received
or to be received hereunder.

(d) Lender represents and warrants that it has, or will have at the time of transfer of any Digital
Currency to Borrower, the full and unrestricted legal right to lend such Digital Currency
subject to the terms and conditions hereof, that it is the sole and exclusive lawful owner of
the Digital Currency, free and clear of all, encumbrances, claims (pending or threatened),
pledges, legal actions (pending or threatened), charges or other limitations or restrictions
whatsoever and that the Digital Currency has been acquired in accordance with all
Applicable Laws.

(e) Borrower represents and warrants that it has, or will have at the time of return of any Digital
Currency, the right to transfer such Digital Currency subject to the terms and conditions
hereof, and, free and clear of all liens and encumbrances other than those arising under this
Agreement and that the Digital Currency that it will return has been acquired in accordance
with all Applicable Laws.

(f) Borrower represents and warrants that it has, or will have at the time of transfer of any
Collateral, the right to grant a first priority security interest therein and the right to transfer
such Collateral subject to the terms and conditions hereof, and, free and clear of all liens
and encumbrances other than those arising under this Agreement, and that the Collateral
that it will transfer has been acquired in accordance with all Applicable Laws.

## VII.   **Default**

It is further understood that the following defaults shall constitute events of default hereunder and
are hereinafter referred to as an "Event of Default" or "Events of Default":

(a) the failure of the Borrower to (i) return any Borrowed Amount (including any Recall
Amount), (ii) pay any Fees, (iii) transfer any required amount of Collateral or Additional
Collateral by the time required under Section (IV), or (iv) make any payment or
reimbursement specified in Section (V)(c) in the event of a Hard Fork or Applicable
Airdrop, in each such case when due and/or required to do so by the time required under
this Agreement and such failure by Borrower continues for a period of three (3) Business
Days following written notice of such failure from Lender;

DocuSign Envelope ID: 2A2A0B80-83A6-4392-7AF7-881FB577FB4E
*Strictly Private & Confidential*

(b) the failure of Borrower to perform or observe any term, condition, covenant, provision, or agreement contained in any of the Loan Documents;

(c) any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings shall be instituted by or against the Borrower, and (solely in the case of proceedings instituted against the Borrower) shall not be dismissed within thirty (30) days or the applicable statutory time limit of their initiation;

(d) any representation or warranty made by Borrower in any of the Loan Documents proves to be untrue in any material respect as of the date of making or deemed making thereof; or

(e) Borrower notifies Lender of its inability to or its intention not to perform any of its obligations hereunder or otherwise disaffirms, rejects or repudiates any of its obligations hereunder.


## VIII.   <u>Remedies</u>

Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option (subject to the terms and conditions of this Agreement), (a) declare all Borrowed Amounts outstanding hereunder immediately due and payable, (b) terminate this Agreement and any other agreement or transaction between Borrower and Lender upon written notice to Borrower, and (c) exercise all other rights and remedies available to the Lender hereunder, under applicable law, or in equity; provided, that upon any Event of Default pursuant to Section VII all Borrowed Amounts and the amount of any Fees then outstanding hereunder shall automatically become and be immediately due and payable. Lender shall also have the right, at any time on or after Borrower fails to make sufficient payments to pay fully all Borrowed Amounts, Fees and other amounts then due and payable hereunder, or on or after the occurrence of an Event of Default, to purchase the relevant Digital Currency in the amount of any such insufficiency in a commercially reasonable manner, or foreclose on, liquidate, sell or collect on the Collateral that Lender or any affiliate may then hold, and apply the proceeds to satisfy any and all obligations of Borrower to Lender or any affiliate, whether arising under a different Loan, or net, set off and/or recoup any and all obligations of Lender or any affiliate of Lender to Borrower, against either the purchase price of such replacement Digital Currency or any such obligations of Borrower to Lender or any affiliate of Lender.  In connection with the exercise of such remedies, Lender and its affiliates are hereby authorized to apply or transfer any Collateral of Borrower interchangeably between Lender and its affiliates solely to satisfy any obligations of Borrower to Lender or its affiliates at any time with prior notice (email sufficient) to Borrower.

DocuSign Envelope ID: 2A2A0B0683A6A5821A9F75881EB3277FB

*Strictly Private & Confidential*

### IX.  <u>Rights and Remedies Cumulative.</u>

No delay or omission by either party in exercising any right or remedy hereunder shall operate as a waiver of the future exercise of that right or remedy or of any other rights or remedies hereunder. All rights of each party stated herein are cumulative and in addition to all other rights provided by law, in equity.

### X.  <u>Collection Costs.</u>

In the event Borrower fails to pay any amounts due or to return any Digital Currency hereunder, the Borrower shall pay to the Lender upon demand all reasonable costs and expenses, including without limitation, reasonable attorneys' fees and court costs incurred by the Lender in connection with the enforcement of its rights hereunder.

### XI.  <u>Passwords and Security.</u>

Each party is responsible for maintaining adequate security and control of any and all passwords, private keys, and any other codes that it uses to Transfer or receive Digital Currencies hereunder. Each party will be solely responsible for the private keys that it uses to make the Transfers and maintaining secure back-ups. Each party will promptly notify the others of any security breach of its accounts, systems or networks as soon as possible. Each party will reasonably cooperate with the other party in the investigation of any suspected unauthorized Transfers or attempted Transfers using a party's account credentials or private keys, and any security breach of a party's accounts, systems, or networks, and provide the other party with the results of any third-party forensic investigation that it may undertake. Each party will be responsible for any unauthorized Transfers made utilizing its passwords, private keys, and any other codes it uses to make or receive Transfers.

### XII.  <u>Governing Law; Dispute Resolution; Waiver of Consequential Damages.</u>

This Agreement is governed by, and shall be construed and enforced under, the laws of the State of Delaware applicable to contracts made and to be performed wholly within such State, without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which

DocuSign Envelope ID: 2A340BF68A3A6A5921A9F68D81FBC272AB

*Strictly Private & Confidential*

it may be entitled.

Borrower shall indemnify and hold harmless Lender, its affiliates, and each such party's officers, directors, employees, representatives, and agents from and against any and all claims, demands, losses, expenses, obligations, damages, penalties, actions and liabilities of any and every nature (including attorneys' fees of an attorney of Lender's choosing to defend against any such claims, demands, losses, expenses and liabilities) that Lender may sustain or incur or that may be asserted against Lender arising out of Lender's lending of Digital Currency to Borrower under this Agreement, except for any and all claims, demands, losses, expenses and liabilities arising out of or relating to Lender's bad faith, gross negligence or willful misconduct in the performance of its duties under this Agreement.  This indemnity shall be a continuing obligation of Borrower, its successors and assigns, notwithstanding the termination of this Agreement.

## XIII.   **Notices.**

Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by Express or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or to the respective address set forth below:

Lender:
>    BlockFi Lending LLC
>    ███████████████████████
>    Attn: ██████████████
>    Email: ██████████████

Borrower:
>    Alameda Research LTD
>    Attn: ██████████████
>    Email: ██████████████

Either party may change its address by giving the other party written notice of its new address as herein provided.

## XIV.   **Modifications.**

All modifications or amendments to this Agreement shall be effective only when reduced to writing and signed by both parties hereto.

15

DocuSign Envelope ID: 2A20D7C3-83A6-4527-A9F5-881F1EA277BB

*Strictly Private & Confidential*

## XV.    <u>Entire Agreement.</u>

This Agreement and each exhibit referenced herein constitutes the entire Agreement among the parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

## XVI.    <u>Successors and Assigns.</u>

This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties; provided, that neither party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party.

## XVII.    <u>Severability of Provisions.</u>

Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

## XVIII.    <u>Counterpart Execution.</u>

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission shall be equally as effective as delivery of an original executed counterpart of this Agreement. Any party delivering an executed counterpart of this Agreement by email or other electronic method of transmission also shall deliver an original executed counterpart of this Agreement but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

## XIX.    <u>Relationship of Parties.</u>

Nothing contained in this Agreement shall be deemed or construed by the parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Borrower and Lender.

DocuSign Envelope ID: 2A240B96-83A6-4E21-A058-881FBF277F9B

*Strictly Private & Confidential*

XX.    **Term and Termination.**

The Term of this Agreement shall commence on the date hereof for a period of one year, and shall automatically renew for successive one-year terms annually, unless either party provides written notice (email sufficient) of a desire to terminate the contract no less than ten (10) days prior to the end of such one- year period. The foregoing notwithstanding, this Agreement may be terminated (i) as set forth in Section VII or (ii) upon 30 days' written notice (email sufficient) by either party to the other.  Notwithstanding the foregoing, if there are any Loans outstanding at the time either party sends a notice of termination pursuant to this Section XX, such termination of this Agreement will not be effective until all Loans are terminated on the relevant Maturity Date or pursuant to Section (II)(d).

XXI.   **Reserved.**

XXII.  **Miscellaneous.**

Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders. This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement. The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement. The Parties acknowledge that the Agreement is the result of negotiation between the Parties which are represented by sophisticated counsel and therefore none of the Agreement's provisions will be construed against the drafter.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first above written.

*Strictly Private & Confidential*

LENDER:

BLOCKFI LENDING LLC

By: Zac Prince
_____
FFA30A9A87CD4EC...
Name: Zac Prince
Title: CEO

BORROWER:

Alameda Research LTD

By Sam Bankman-Fried
24A1FE75CBF4440...
Name: Sam Bankman-Fried
Title: CEO

*Strictly Private & Confidential*

## EXHIBIT A

Authorized Agents. The following are authorized to deliver Lending Requests on behalf of Borrower in accordance with Section III hereof:

Name: Sam Bankman-Fried
Email ███████████████████

Borrower may change its Authorized Agents by notice given to Lender as provided in Section XIII.

DocuSign Envelope ID: 2A20DB88-83A6-4527-A9E9-881EB5277B1B

*Strictly Private & Confidential*

## EXHIBIT B LOAN TERM SHEET

The following loan agreement dated [*insert date*] incorporates all of the terms of the Master Digital Currency Loan Agreement entered into by Alameda Research LTD ("Borrower") and BlockFi Lending LLC ("Lender") on July 15th, 2019 and the following specific terms:

Borrower:    ALAMEDA RESEARCH LTD

Lender:    BLOCKFI LENDING LLC


Digital Currency    _____

Amount of Digital Currency:    _____

Borrow Fee:    _____

Loan Type:    Open Ended

Loan Term:    _____


Initial Margin Percentage    ___%

Margin Requirement Percentage    ___%

Release Margin Percentage    ___%

Allowable Stablecoin Collateral    [GUSD][USDC][PAX]


Digital Currency Payment to Lender:    [insert Lender's Digital Currency Address]

Dollar Payment to Lender:    [insert Lender's Bank Details and stable coin blockchain address]


ALAMEDA RESEARCH LTD                    BLOCKFI LENDING LLC


By:_____        By: _____
Name: Sam Bankman-Fried        Name: Kenneth DePre
Title: CEO                Title: Director of Operations