# EXHIBIT D-4

# AMENDMENT & FORBEARANCE AGREEMENT

**AMENDMENT & FORBEARANCE AGREEMENT** (this "*Agreement*") dated as of November 9, 2022, by and among **ALAMEDA RESEARCH LIMITED**, a limited company organized and existing under the law of the British Virgin Islands, as Borrower ("*Borrower*"), **BLOCKFI LENDING LLC**, as Lender ("*US Lender*") under the US Loan Agreement (as defined below), and **BLOCKFI INTERNATIONAL LTD.**, as Lender ("*International Lender*") under the International Loan Agreement (as defined below).

## R E C I T A L S:

**WHEREAS**, Borrower and Lender entered into that certain Master Digital Currency Loan Agreement dated as of July 15, 2019 (as amended hereby, and as the same may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced) (the "**US Loan Agreement**");

**WHEREAS,** Borrower and International Lender entered into that certain Amended and Restated Master Loan Agreement dated as of January 26, 2022 (as amended hereby, and as the same may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced) (the "**International Loan Agreement**");

**WHEREAS**, in connection with the International Loan Agreement, Borrower, International Lender and Coinbase Custody International Limited entered into that certain Security Agreement over a Custody Account dated as of January 26, 2022 (as amended hereby, and as the same may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced) (the "**Irish Security Agreement**");

**WHEREAS**, as of the date hereof, the Borrower is in default under the Loan Agreement and the International Loan Agreement as more particularly described below;

**WHEREAS**, the circumstances described herein constitute multiple Events of Default under the Loan Agreement, the International Loan Agreement and the other Loan Documents (used herein as defined in each of the US Loan Agreement and the International Loan Agreement);

**WHEREAS**, Borrower has requested that US Lender and International Lender forbear from exercising their rights under the Loan Agreement, the International Loan Agreement and the other Loan Documents or applicable law, as applicable in respect of such Events of Default, which are continuing, notwithstanding such Events of Default; and

**WHEREAS**, subject to the terms and conditions herein, US Lender and International Lender are willing to forbear from exercising their rights under the Loan Agreement, the International Loan Agreement and the other Loan Documents or applicable law, as applicable, in respect of the Existing Default (as defined below) solely for the period and on the terms and conditions specified herein.

**NOW, THEREFORE**, in consideration of the foregoing, and the respective agreements, warranties and covenants contained herein, the parties hereto agree as follows:

## SECTION 1. DEFINITIONS.

4896-0111-8270 v.3 -1-

1.1.    **Interpretation**. All capitalized terms used herein (including the recitals hereto) shall have the respective meanings ascribed thereto in the US Loan Agreement and the International Loan Agreement unless otherwise defined herein.

1.2.    **Additional Definitions**. As used herein, the following terms shall have the respective meanings given to them below, and to the extent applicable, the US Loan Agreement and the International Loan Agreement are hereby amended to include, in addition and not in limitation, each of the following definitions:

(a)    "**Emergent**" Emergent Fidelity Technologies Ltd.

(b)    "**Existing Defaults**" shall mean the Events of Default more particularly identified on Exhibit A hereto.

(c)    "**Forbearance Period**" means the period commencing on the date on which Section 3.2 of this Agreement becomes effective pursuant to Section 6.1 hereof and ending on the date which is the earliest of (i) the 5:00 P.M. (NYC Time) on November 16, 2022; (ii) the occurrence or existence of any Event of Default, other than the Existing Defaults; or (iii) the occurrence of any Termination Event.

(d)    "**Payment Schedule**" means the schedule of payments and asset transfers set forth on Exhibit B; provided, US Lender and International Lender may agree to allow for payments in different form than identified on Exhibit B from time to time in their sole discretion.

(e)    "**Pledge Agreement**" means that certain Pledge Agreement dated as of the date hereof by and among Borrower, US Lender and International Lender.

(f)    "**Pledge Agreement (Emergent)**" means that certain Pledge Agreement dated as of the date hereof by and among Emergent, US Lender and International Lender.

(g)    "**Termination Event**" means the occurrence of any of the following: (i) the initiation of any action by Borrower or any other Releasing Party (as defined herein) to invalidate or limit the enforceability of any of terms hereof, (ii) the occurrence of any fraud and/or willful misconduct in the production and/or presentation of any reports, financial statements, certificates or other written information furnished by or on behalf of Borrower to US Lender or International Lender, (iii) any action or inaction by Borrower or any other Releasing Party that may hinder or delay repayment of payments or transfers under the Payment Schedule, as determined by US Lender or International Lender or (iv) Borrower fails to make any payment or transfer any assets when and as the same shall become due and payable pursuant to the Payment Schedule or any required by the Pledge Agreement or Emergent fails to transfer any assets when and as the same shall be required by the Pledge Agreement (Emergent).

### SECTION 2. ACKNOWLEDGMENTS

2.1.    **Acknowledgment of Obligations**. Borrower hereby acknowledges, confirms and agrees that as of the date hereof Borrower owes to US Lender Borrowed Amounts set forth on Schedule 1 plus accrued and unpaid interest calculated pursuant to the US Loan Agreement. Borrower hereby acknowledges, confirms and agrees that as of the date hereof Borrower owes to International Lender Borrowed Amounts set forth on Schedule 1 plus accrued and unpaid interest calculated pursuant to the International Loan Agreement. Borrower hereby acknowledges, confirms and agrees that such Borrowed Amounts, together with interest accrued and accruing thereon, and all fees, costs, expenses and other charges now or hereafter payable by Borrower to US Lender and International Lender, are unconditionally owing by

DocuSign Envelope ID: D4BC4165-811F-4807-A45F-A85FBA069B5C

Case 22-01138-MBK Doc 14 Filed 04/05/23 Entered 04/05/23 15:30:26 Desc Main
Case 22-11068-JTD Doc 38191/22 Filed 04/05/23 Page 40 of 16
Document    Page 93 of 137

Borrower, without offset, defense or counterclaim of any kind, nature or description whatsoever.

2.2. **Acknowledgment of Security Interests**. Borrower hereby acknowledges, confirms and agrees that each of US Lender and International Lender has and shall continue to have valid, enforceable and perfected first-priority liens upon and security interests in and charge over the Collateral granted to US Lender and International Lender, as applicable, pursuant to the US Loan Agreement, the International Loan Agreement, the Irish Security Agreement and the other Loan Documents or otherwise granted to or held by US Lender or International Lender.

2.3. **Binding Effect of Documents**. Borrower hereby acknowledges, confirms and agrees that: (a) each of the Loan Agreement, the International Loan Agreement and the other Loan Documents to which it is a party has been duly executed and delivered to US Lender and/or International Lender, and each is and shall remain in full force and effect as of the date hereof except as modified pursuant hereto, (b) the agreements and obligations of Borrower contained in such documents and in this Agreement constitute the legal, valid and binding obligations of Borrower, enforceable against it in accordance with their respective terms, and Borrower has no valid defense to the enforcement of such obligations, and (c) US Lender and International Lender are and shall be entitled to the rights, remedies and benefits provided for under the Loan Agreement, the International Loan Agreement and the other Loan Documents and applicable law.

### SECTION 3. FORBEARANCE IN RESPECT OF EXISTING DEFAULTS

3.1. **Acknowledgment of Default**. Borrower hereby acknowledges and agrees that, as of the date hereof, the Existing Defaults have occurred and are continuing, each of which constitutes an Event of Default and entitles US Lender and International Lender to exercise their rights and remedies under the US Loan Agreement, the International Loan Agreement and the other Loan Documents, applicable law or otherwise, Borrower represents and warrants that as of the date hereof, no Event of Default exists other than the Existing Defaults.

3.2. **Forbearance**.

(a) In consideration for the payments and transfers to be made in accordance with the Payments Schedule and in reliance upon the representations, warranties and covenants of Borrower contained in this Agreement, the Pledge Agreement and the Pledge Agreement (Emergent), and subject to the terms and conditions of this Agreement and any documents or instruments executed in connection herewith, US Lender and International Lender agree to provide new value to Borrower by forbearing during the Forbearance Period from the exercise of their rights and remedies under the US Loan Agreement, the International Loan Agreement and the other Loan Documents or applicable law in respect of the Existing Defaults.

(b) Upon the expiration or termination of the Forbearance Period, the agreement of US Lender and International Lender to forbear in Section 3.2(a) hereof shall automatically and without further action terminate and be of no force or effect, it being expressly agreed that the effect of such expiration or termination will be to permit US Lender and International Lender to exercise immediately all rights and remedies under the US Loan Agreement, the International Loan Agreement and the other Loan Documents and applicable law, including, but not limited to, accelerating all of the Borrowed Amount and all other obligations under each of the US Loan Agreement, the International Loan Agreement and the other Loan Documents in each case without any further notice to Borrower or any other Person, passage of time or forbearance of any kind.

3.3. **No Waivers; Reservation of Rights**.

(a)     US Lender and International Lender have not waived, are not by this Agreement waiving, and have no intention of waiving, any Events of Default which may be continuing on the date hereof or any Events of Default which may occur after the date hereof (whether the same or similar to the Existing Defaults or otherwise), and US Lender and International Lender have not agreed to forbear with respect to any of their rights or remedies concerning any Events of Default (other than, during the Forbearance Period, the Existing Defaults to the extent expressly set forth herein) occurring at any time. US Lender and International Lender shall not forbear or otherwise be precluded from exercising any right, power or privilege available under the US Loan Agreement, the International Loan Agreement and the other Loan Documents except as specifically set forth in Section 3.2(a) hereof.

(b)     Subject to Section 3.2 above (solely with respect to the Existing Defaults), US Lender and International Lender reserve the right, in their discretion, to exercise any or all of their rights and remedies under the Loan Agreement, International Loan Agreement and the other Loan Documents as a result of any other Events of Default occurring at any time. US Lender and International Lender have not waived any of such rights or remedies, and nothing in this Agreement, and no delay on their part in exercising any such rights or remedies, shall be construed as a waiver of any such rights or remedies.

3.4.    **Additional Events of Default**. The parties hereto acknowledge, confirm and agree that any misrepresentation by Borrower, or any failure of (i) Borrower to comply with the covenants, conditions and agreements contained in this Agreement or the Pledge Agreement and any other agreement, document or instrument at any time executed and/or delivered by Borrower in connection therewith or (i) Emergent to comply with the covenants, conditions and agreements contained in the Pledge Agreement (Emergent) and any other agreement, document or instrument at any time executed and/or delivered by Emergent in connection therewith shall constitute an Event of Default under the US Loan Agreement, the International Loan Agreement and the other Loan Documents. In the event any Person, other than US Lender and International Lender, shall at any time exercise for any reason any of its rights or remedies against Borrower or Emergent or any obligor providing credit support for any Borrower's obligations to such other Person, or against any Releasing Party's or such obligor's properties or assets, such event shall constitute an Event of Default under the US Loan Agreement and the International Loan Agreement.

3.5.    **Waivers**. Borrower hereby waives (a) its right to notification of disposition of the Collateral under Section 9-611 of the UCC, (b) its right to require disposition of Collateral under Section 9-620(e) of the UCC, (c) its right to redeem any Collateral under Section 9-623 of the UCC, and (d) any other right that it may have that may be waived under the Article 9 of the UCC. Furthermore, Borrower hereby consents to US Lender and International Lender electing, in its sole and absolute discretion, the acceptance of the Collateral in full or partial satisfaction of the Borrowed Amount and all other obligations and any interest accrued thereon (a "*Strict Foreclosure*") upon the expiration or termination of the Forbearance Period. Borrower hereby acknowledges that Agent and Lender have provided requisite notice to such Person pursuant to Section 9-620 of the UCC. Furthermore, upon notice from US Lender and International Lender of its elections to conduct a Strict Foreclosure, Borrower shall execute all documents reasonably requested by US Lender and International Lender to evidence the Strict Foreclosure and any ancillary matters.

**SECTION 4. COVENANTS**

Notwithstanding anything to the contrary in the US Loan Agreement, the International Loan Agreement or any other Loan Document, Borrower hereby covenants and agrees as follows:

4.1.    **Post-Default Interest**. US Lender and International Lender hereby notifies Borrower that the Borrowed Amount and all other obligations of Borrower under the Loan Agreement and the International Loan Agreement, the other Loan Documents and this Agreement, shall accrue, commencing on the date hereof at (a) in the case of the US Loan Agreement, the Default Fee rate and (b) in the case of the

International Loan Agreement, the Default Rate, and such amounts shall continue to accrue interest at such increased rates, due and payable upon demand, until such time that all Events of Default (including the Existing Defaults) have been cured or waived in writing.

        4.2.    **Payments**. Borrower shall make all payments and transfers set forth on the Payment Schedule in the amount and by the times indicated therein.

Failure by Borrower to comply with any of the provisions in this Section 4 shall constitute an immediate Event of Default under the US Loan Agreement and the International Loan Agreement without any grace period or notice from US Lender and International Lender.

### SECTION 5. REPRESENTATIONS AND WARRANTIES

Borrower hereby represents and warrants to US Lender and International Lender as follows:

        5.1.    **Representations in the Loan Agreements and the other Loan Documents**. Other than with respect to the Existing Defaults, each of the representations and warranties made by or on behalf of Borrower in the US Loan Agreement, the International Loan Agreement or any of the other Loan Documents is true and correct in all material respects on and as of the date hereof with the same effect as if made on the date hereof, except for representations and warranties expressly stated to relate to a specific earlier date, in which case such representations and warranties were true and correct in all material respects as of such earlier date.

        5.2.    **Binding Effect of Documents**. This Agreement has been duly authorized, executed and delivered to US Lender and International Lender by Borrower, is enforceable in accordance with its terms and is in full force and effect.

        5.3.    **No Conflict**. The execution, delivery and performance of this Agreement by Borrower will not violate any requirement of law or contractual obligation of Borrower and will not result in, or require, the creation or imposition of any lien, charge or other encumbrance on any of their respective properties or revenues.

It shall constitute an immediate Event of Default under the US Loan Agreement and International Loan Agreement without any grace period or notice from US Lender and International Lender if any representation, warranty, or statement made by or on behalf of Borrower in this Agreement or in any document delivered in connection herewith shall be incorrect or misleading in any respect when made or deemed made.

### SECTION 6. CONDITIONS TO EFFECTIVENESS

        6.1.    **Effectiveness of this Agreement**. This Agreement shall become effective upon (a) receipt by US Lender and International Lender, on or prior to November __, 2022, of (i) a copy of this Agreement, duly authorized, executed and delivered by Borrower, (ii) a copy of the Pledge Agreement duly authorized, executed and delivered by Borrower, and (iii) a copy of the Pledge Agreement (Emergent) duly authorized, executed and delivered by Emergent and (b) no Event of Default (excluding the Existing Defaults, but including any Event of Default arising out of Section 4 or 5 of this Agreement) shall have occurred.

### SECTION 7. MISCELLANEOUS

7.1. **Continuing Effect of Loan Agreement**. Except as modified pursuant hereto, no other changes or modifications to the US Loan Agreement, the International Loan Agreement and the other Loan Documents are intended or implied by this Agreement and in all other respects the Loan Agreement, the International Loan Agreement and the other Loan Documents are hereby ratified, restated and confirmed by all parties hereto as of the date hereof. To the extent of any conflict between the terms of this Agreement, the US Loan Agreement, the International Loan Agreement and the other Loan Documents, the terms of this Agreement shall govern and control. The US Loan Agreement, the International Loan Agreement and this Agreement shall be read and construed as one agreement. For the avoidance of doubt, US Lender and International Lender shall not forbear or otherwise be precluded from exercising any right, power or privilege accruing under the Loan Documents except as specifically set forth in Section 3.2(a) of this Agreement.

7.2. **Costs and Expenses**. Borrower absolutely and unconditionally agrees to pay to US Lender and International Lender, on demand by US Lender and International Lender at any time, whether or not all or any of the transactions contemplated by this Agreement are consummated, all fees and disbursements of any counsel to US Lender and International Lender connected with the preparation, negotiation, execution or delivery of this Agreement and any agreements contemplated hereby and any expenses which shall at any time be incurred or sustained by US Lender, International Lender, any participant of any Lender or any of their respective directors, officers, employees or agents as a consequence of or in any way in connection with the preparation, negotiation, execution, or delivery of this Agreement and any agreements contemplated hereby. The provisions of this Section 7.2 shall survive the termination of this Agreement and the Loan Documents, or the payment in full of all other obligations.

7.3. **Further Assurances**. At the expense of the Borrower, the parties hereto shall execute and deliver such additional documents and take such further action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement.

7.4. **Successors and Assigns**. This Agreement shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

7.5. **Survival of Representations, Warranties and Covenants**. All representations, warranties, covenants and releases of Borrower made in this Agreement or any other document furnished in connection with this Agreement shall survive the execution and delivery of this Agreement and the Forbearance Period, and no investigation by a Lender shall affect the representations and warranties or the right of a Lender to rely upon them.

7.6. **RELEASE**.

(a) IN CONSIDERATION OF THE AGREEMENTS OF US LENDER AND INTERNATIONAL LENDER CONTAINED HEREIN AND FOR OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, BORROWER, ON BEHALF OF ITSELF AND ITS SUCCESSORS AND ASSIGNS, AND ITS PRESENT AND FORMER MEMBERS, SHAREHOLDERS, AFFILIATES, SUBSIDIARIES, DIVISIONS, PREDECESSORS, DIRECTORS, OFFICERS, ATTORNEYS, EMPLOYEES, AGENTS, LEGAL REPRESENTATIVES AND OTHER REPRESENTATIVES (BORROWER AND ALL SUCH OTHER PERSONS BEING HEREINAFTER REFERRED TO COLLECTIVELY AS THE "**RELEASING PARTIES**" AND INDIVIDUALLY AS A "**RELEASING PARTY**"), DOES HEREBY ACKNOWLEDGE THAT IT HAS NO DEFENSE, COUNTERCLAIM, OFFSET, CROSS COMPLAINT, CLAIM OR DEMAND OF ANY KIND OR NATURE WHATSOEVER THAT CAN BE ASSERTED TO REDUCE OR ELIMINATE ALL OR ANY PART OF ITS LIABILITY TO REPAY THE ADVANCE OR EXTENSIONS OF CREDIT FROM US LENDER OR INTERNATIONAL LENDER TO BORROWER UNDER THE US LOAN AGREEMENT, THE INTERNATIONAL LOAN AGREEMENT OR THE OTHER LOAN

DocuSign Envelope ID: D4B64165-811F-4807-A45F-A85FBA069B5C

Case 22-01368-MBK Doc 1068-14 Filed 12/19/22 Entered 12/19/22 16:30:16 Desc Main
Case 21-30589-MBK Doc 174 Filed 04/05/22 Entered 04/05/22 15:30:26 Desc Main
Document    Page 97 of 137

DOCUMENTS OR TO SEEK AFFIRMATIVE RELIEF OR DAMAGES OF ANY KIND OR NATURE FROM ANY RELEASEE. EACH RELEASING PARTY HEREBY VOLUNTARILY, KNOWINGLY, ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY RELEASES, REMISES AND FOREVER DISCHARGES US LENDER, INTERNATIONAL LENDER, AND EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND THEIR RESPECTIVE PRESENT AND FORMER SHAREHOLDERS, AFFILIATES, SUBSIDIARIES, DIVISIONS, PREDECESSORS, DIRECTORS, OFFICERS, ATTORNEYS, EMPLOYEES, AGENTS, LEGAL REPRESENTATIVES AND OTHER REPRESENTATIVES (US LENDER, INTERNATIONAL LENDER AND ALL SUCH OTHER PERSONS BEING HEREINAFTER REFERRED TO COLLECTIVELY AS THE "**RELEASEES**" AND INDIVIDUALLY AS A "**RELEASEE**"), FROM ALL POSSIBLE CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES, AND LIABILITIES WHATSOEVER, KNOWN OR UNKNOWN, ANTICIPATED OR UNANTICIPATED, SUSPECTED OR UNSUSPECTED, FIXED, CONTINGENT, OR CONDITIONAL, AT LAW OR IN EQUITY, ORIGINATING IN WHOLE OR IN PART ON OR BEFORE THE DATE THIS AGREEMENT IS EXECUTED, WHICH SUCH RELEASING PARTY MAY NOW OR HEREAFTER HAVE AGAINST ANY RELEASEE, IF ANY, AND IRRESPECTIVE OF WHETHER ANY SUCH CLAIMS ARISE OUT OF CONTRACT, TORT, VIOLATION OF LAW OR REGULATIONS OR OTHERWISE, OR ARISE FROM ANY ACTIONS TAKEN WITH RESPECT TO BORROWER, ANY COLLATERAL OR ANY CREDIT ACCOMMODATIONS UNDER THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY CONTRACTING FOR, CHARGING, TAKING, RESERVING, COLLECTING OR RECEIVING INTEREST IN EXCESS OF THE HIGHEST LAWFUL RATE APPLICABLE, THE EXERCISE OF ANY RIGHTS AND REMEDIES UNDER THE LOAN DOCUMENTS, ANY ACTIONS RESULTING FROM NEGOTIATION FOR AND EXECUTION OF THIS AGREEMENT OR ANY OTHER DOCUMENTS IN CONNECTION WITH THIS AGREEMENT OR ANY PREVIOUS AMENDMENTS, INCLUDING, WITHOUT LIMITATION, ALL CLAIMS AND DEFENSES BASED ON WAIVER (OTHER THAN AS EXPRESSLY PROVIDED PURSUANT TO A WRITTEN INSTRUMENT SIGNED BY A LENDER), FRAUD, MISTAKE, DURESS, USURY, FAILURE OR LACK OF CONSIDERATION, CAPACITY OR AUTHORIZATION, UNENFORCEABILITY OF AGREEMENTS, SURETYSHIP RIGHTS AND DEFENSES, EQUITABLE SUBORDINATION, CONFLICTS OF INTEREST, SELF DEALING, BREACH OF DUTY (FIDUCIARY OR OTHERWISE), FAILURE TO ACT IN A COMMERCIALLY REASONABLE MANNER OR IN A MANNER CONSISTENT WITH GOOD FAITH AND FAIR DEALING, AND/OR ANY OTHER CLAIM OF SO-CALLED "LENDER LIABILITY".

(b)     BORROWER UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT THE RELEASE SET FORTH ABOVE MAY BE PLEADED AS A FULL AND COMPLETE DEFENSE TO ANY CLAIM AND MAY BE USED AS A BASIS FOR AN INJUNCTION AGAINST ANY ACTION, SUIT OR OTHER PROCEEDING WHICH MAY BE INSTITUTED, PROSECUTED OR ATTEMPTED IN BREACH OF THE PROVISIONS OF SUCH RELEASE.

(c)     BORROWER AGREES THAT NO FACT, EVENT, CIRCUMSTANCE, EVIDENCE OR TRANSACTION WHICH COULD NOW BE ASSERTED OR WHICH MAY HEREAFTER BE DISCOVERED SHALL AFFECT IN ANY MANNER THE FINAL, ABSOLUTE AND UNCONDITIONAL NATURE OF THE RELEASE SET FORTH ABOVE. THE PROVISIONS OF THIS SECTION 7.6 SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT AND THE US LOAN AGREEMENT, OR THE PAYMENT IN FULL OF ALL OTHER OBLIGATIONS.

7.7.     **Covenant Not to Sue**. EACH OF THE RELEASING PARTIES HEREBY ABSOLUTELY, UNCONDITIONALLY AND IRREVOCABLY, COVENANTS AND AGREES WITH AND IN FAVOR OF EACH RELEASEE THAT IT WILL NOT SUE (AT LAW, IN EQUITY, IN ANY REGULATORY PROCEEDING OR OTHERWISE) ANY RELEASEE ON THE BASIS OF ANY CLAIM RELEASED, REMISED AND DISCHARGED BY ANY RELEASING PARTY PURSUANT TO

SECTION 7.6 ABOVE. IF ANY RELEASING PARTY VIOLATES THE FOREGOING COVENANT, BORROWER, FOR ITSELF AND ITS SUCCESSORS AND ASSIGNS, AND ITS PRESENT AND FORMER MEMBERS, SHAREHOLDERS, AFFILIATES, SUBSIDIARIES, DIVISIONS, PREDECESSORS, DIRECTORS, OFFICERS, ATTORNEYS, EMPLOYEES, AGENTS, LEGAL REPRESENTATIVES AND OTHER REPRESENTATIVES, AGREES TO PAY, IN ADDITION TO SUCH OTHER DAMAGES AS ANY RELEASEE MAY SUSTAIN AS A RESULT OF SUCH VIOLATION, ALL ATTORNEYS' FEES AND COSTS INCURRED BY ANY RELEASEE AS A RESULT OF SUCH VIOLATION. THE PROVISIONS OF THIS SECTION 7.7 SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT AND THE LOAN AGREEMENT, OR THE PAYMENT IN FULL OF ALL OTHER OBLIGATIONS.

7.8. **Severability**. Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement.

7.9. **Reviewed by Attorneys**. Borrower represents and warrants to US Lender and International Lender that it (a) understands fully the terms of this Agreement and the consequences of the execution and delivery of this Agreement, (b) has been afforded an opportunity to discuss this Agreement with, and have this Agreement reviewed by, such attorneys and other persons as Borrower and its affiliates may wish, and (c) has entered into this Agreement and executed and delivered all documents in connection herewith of its own free will and accord and without threat, duress or other coercion of any kind by any Person. The parties hereto acknowledge and agree that neither this Agreement nor the other documents executed pursuant hereto shall be construed more favorably in favor of one than the other based upon which party drafted the same, it being acknowledged that all parties hereto contributed substantially to the negotiation and preparation of this Agreement and the other documents executed pursuant hereto or in connection herewith.

7.10. **Disgorgement**. If US Lender or International Lender is, for any reason, compelled by a court or other tribunal of competent jurisdiction to surrender or disgorge any payment, interest or other consideration described hereunder to any person because the same is determined to be void or voidable as a preference, fraudulent conveyance, impermissible set-off or for any other reason, such indebtedness or part thereof intended to be satisfied by virtue of such payment, interest or other consideration shall be revived and continue as if such payment, interest or other consideration had not been received by US Lender or International Lender, and Borrower shall be liable to, and shall indemnify, defend and hold US Lender or International Lender harmless for, the amount of such payment or interest surrendered or disgorged. The provisions of this Section 7.10 shall survive execution and delivery of this Agreement and the documents, agreements and instruments to be executed or delivered herewith, and the termination of this Agreement and the US Loan Agreement and the International Loan Agreement, or the payment in full of the Borrowed Amount and all other obligations.

7.11. **Governing Law: Consent to Jurisdiction and Venue**. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE US LOAN AGREEMENT, INTERNATIONAL LOAN AGREEMENT AND ANY OF THE ADDITIONAL LOAN DOCUMENTS, THIS AGREEMENT AND ANY CLAIM, CONTROVERSY, DISPUTE OR CAUSE OF ACTION (WHETHER IN CONTRACT OR TORT OR OTHERWISE) BASED UPON, ARISING OUT OF OR RELATING TO THIS AGREEMENT OR SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK. BORROWER IRREVOCABLY AND UNCONDITIONALLY AGREES THAT IT WILL NOT COMMENCE ANY ACTION, LITIGATION OR PROCEEDING OF ANY KIND OR DESCRIPTION, WHETHER IN LAW OR EQUITY, WHETHER IN CONTRACT OR IN TORT OR OTHERWISE, AGAINST LENDER, AGENT OR ANY RELATED PARTY OF THE FOREGOING IN ANY WAY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN IN ANY FORUM OTHER THAN THE COURTS OF THE STATE OF NEW YORK SITTING IN

DocuSign Envelope ID: D4BC4165-0115-4807-A45E-A35EBA069D5C

Case 22-01138-MBK Doc 14 Filed 12/19/22 Entered 12/19/22 15:30:26 Desc Main
Case 22-01138-MBK Doc 14 Filed 12/19/22 Entered 01/05/23 Page 30 of 616
Document    Page 99 of 137

NEW YORK COUNTY, AND OF THE UNITED STATES DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK, AND ANY APPELLATE COURT FROM ANY THEREOF, AND EACH OF THE PARTIES HERETO IRREVOCABLY AND UNCONDITIONALLY SUBMITS TO THE JURISDICTION OF SUCH COURTS AND AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION, LITIGATION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN SUCH FEDERAL COURT. EACH OF THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, LITIGATION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT THAT LENDER OR AGENT MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AGAINST ANY BORROWER OR ITS PROPERTIES IN THE COURTS OF ANY JURISDICTION.

7.12. **Mutual Waiver of Jury Trial**. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND CONSENT AND (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.13. **Counterparts**. This Agreement may be executed in any number of counterparts, but all of such counterparts shall together constitute but one and the same agreement.

[*signatures on following page*]

IN WITNESS WHEREOF, this Agreement is executed and delivered as of the day and year first above written.

**BORROWER:**

**ALAMEDA RESEARCH LTD.**

By: *Caroline Ellison* _____
Name: Caroline Ellison
Title: Co-CEO

-10-

4896-0111-8270 v.3

BLOCKFI LENDING LLC, as US Lender

By: /s/ Zachary Prince
Name: Zachary Prince
Title: President

-11-

**BLOCKFI INTERNATIONAL LTD.**, as International Lender

By: _Zachary Prince_

Name: Zachary Prince

Title: CEO

-12-

**EXHIBIT A to FORBEARANCE AGREEMENT**

**Existing Defaults**

1. Under the US Loan Agreement, an Event of Default under Section IV(b) arising from Borrower's failure to deliver Additional Collateral.

2. Under the International Loan Agreement, an Event of Default under Section IX(a) arising from Borrower's failure to return the Loaned Asset upon exercise by Lender of the Callable Option.

### EXHIBIT B to FORBEARANCE AGREEMENT

### Payment Schedule

| Due Date (Eastern Standard Time) | USD | BTC | ETH |
|---|---|---|---|
| 11/10/22 5:00 PM | 90,000,000 | 5000 | |
| 11/11/22 5:00 PM | | 6000 | |
| 11/12/22 5:00 PM | | 3000 | 13960 |
| 11/13/22 5:00 PM | | 3000 | 30000 |
| 11/14/22 5:00 PM | | 3000 | 30000 |
| 11/15/22 5:00 PM | | 3000 | 30000 |
| 11/16/22 5:00 PM | | 2466 | 30000 |

-14-

-15-

## SCHEDULE 1 to FORBEARANCE AGREEMENT

Borrowed Amounts due under BlockFi Lending LLC Loan Agreement

- 1,800 BTC
- 90,000,000 USDC

Borrowed Amounts due under BlockFi International Ltd. Loan Agreement

- 23,666 BTC
- 133,960 ETH

DocuSign Envelope ID: D4BC4165-0115-4807-A45E-A85EBA069D5C
Case 22-01382-MBK Doc 14 Filed 12/19/22 Entered 12/19/22 15:30:26 Desc Main
Document      Page 105 of 137

-15-