# EXHIBIT D-5

# PLEDGE AGREEMENT

This **PLEDGE AGREEMENT** ("*Agreement*") is entered into as of November 9, 2022, by and among BlockFi Inc, a Delaware corporation, as collateral agent ("*Collateral Agent*") for **BLOCKFI LENDING LLC** ("*BlockFi Lending*") and **BLOCKFI INTERNATINAL LTD.** ("*BlockFi International*" and, together with BlockFi Lending, the "*Lenders*" and, together with Collateral Agent, the, "*Secured Party*") and **ALAMEDA RESEARCH LIMITED** ("*Pledgor*").

**WHEREAS**, Pledgor and BlockFi Lending entered into that certain Master Digital Currency Loan Agreement dated as of July 15, 2019 (together with any loan agreement and any loan term sheet thereunder, and as amended by the Forbearance Agreement referred to below and as amended hereby, and as may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced) (the "*BlockFi Lending Master Agreement*");

**WHEREAS,** Pledgor and BlockFi International entered into that certain Amended and Restated Master Digital Currency Loan Agreement dated as of January 26, 2022 (together with any loan agreement and any loan term sheet thereunder, and as amended by the Forbearance Agreement referred to below and as amended hereby, and as may have heretofore been or may hereafter be further amended, modified, supplemented, extended, renewed, restated or replaced) (the "*BlockFi International Master Agreement*" and, together with the BlockFi Lending Master Agreement, each, a "*Master Agreement*'" and, collectively, the "*Master Agreements*"; unless specified otherwise, capitalized terms used but not defined herein shall have the meanings assigned in each Master Agreement); and

**WHEREAS**, certain defaults and events of default have occurred under each Master Agreement, and in connection therewith, Pledgor and Lenders have entered into that certain Amendment & Forbearance Agreement dated as of even date herewith (as amended from time to time, the "*Forbearance Agreement*") pursuant to which, among other things, subject to the terms therein, Lenders agreed to forbear from exercising its rights under each Master Agreement and Pledgor has agreed to enter in to this Agreement to grant Secured Party a security interest over additional collateral as security for the Secured Obligations (as hereinafter defined);

**NOW, THEREFORE**, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto agree as follows:

1. **Security Interest**. To secure the payment and the performance of the Secured Obligations (hereinafter defined), Pledgor hereby pledges, assigns and grants to Secured Party a first priority security interest and lien in all of Pledgor's rights, titles, interests in the following, whether now existing or hereafter acquired (collectively, the "*Collateral*"): (a) the Equity Interests (hereinafter defined) in the trusts (the "*Collateral Shares*") listed on Schedule A (as the same may be updated from time to time) (each, a *"Trust"*, and collectively, the "*Trusts*"), (b) any security entitlements in respect of the Collateral Shares credited to the Current Collateral Account or the Perfection Collateral Account, (c) all dividends, distributions or return of capital, including any extraordinary dividend, split-off, spin-off or other exchange on or form the Collateral Shares, (d) the accounts set forth on Schedule A (as the same may be updated from time to time) (the "*Current Collateral Account*" and the "*Perfection Collateral Account*") and any cash, cash equivalents, securities (including the Collateral Shares), general intangibles, investment property, financial assets, and other property that may from time to time be deposited, credited, held or carried in the Current Collateral Account or Perfection Collateral Account and all security entitlements, as defined in §8-102(a)(17) of the UCC with respect to any of the foregoing and (d) the proceeds of all of the foregoing.

2. **Secured Obligations**. "*Secured Obligations*" means, in each case, whether now in existence or hereafter arising: (a) all obligations and any applicable interest thereon (including interest accruing after the filing of any bankruptcy or similar petition) under any Master Agreement or any other Loan Document, (b) all obligations of Pledgor or any affiliate thereof to Secured Party or any affiliate thereof under any

4875-6622-6238 v.3

other agreement or arrangement (including, without limitation, any return obligations of Pledgor or any of its affiliates in respect of any assets of Secured Party or any of its affiliates and any obligation of Pledgor or any of its affiliates to fund any committed loan to Secured Party or its affiliates) and (c) all other fees and commissions (including attorneys' fees in connection with Secured Party's or any of its affiliate's enforcement or protection of its rights under any Master Agreement or any Loan Document or any such other agreement or arrangement), charges, indebtedness, loans, liabilities, financial accommodations, obligations, covenants and duties, in each case owing by Pledgor or any of its affiliates to Secured Party or any of its affiliates under any Master Agreement, any Loan Document or any such other agreement or arrangement, and whether or not evidenced by any note and including interest and fees that accrue after the commencement by or against Pledgor or any of its affiliates of any proceeding under any bankruptcy or insolvency law or other similar law affecting creditors' rights, naming Pledgor or any such affiliate as the debtor in such proceeding, including fees, indemnification obligations, expenses or otherwise, and all costs and expenses of administering or maintaining the Collateral and of enforcing the rights of Secured Party or any affiliates under this Agreement, each Master Agreement and the other Loan Documents and any such other agreement or arrangement.

3. **Pledgor's Warranties**.  Pledgor represents and warrants to Secured Party as follows:

    (a)     Pledgor owns the Collateral Shares, all of which have been duly and validly issued and are fully paid and non-assessable. Pledgor owns all Collateral free and clear from any set-off, claim, restriction, lien, security interest or encumbrance, except the security interest hereunder, and has full power and authority to grant to Secured Party the security interest in such Collateral pursuant hereto. The execution, delivery and performance by Pledgor of this Agreement have been duly and validly authorized by all necessary company action, and this Agreement constitutes a legal, valid, and binding obligation of Pledgor and creates a security interest which is enforceable against Pledgor in all now owned and hereafter acquired Collateral, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity.

    (b)     Neither the execution and delivery by Pledgor of this Agreement, the creation and perfection of the security interest in the Collateral granted hereunder, nor compliance with the terms and provisions hereof will violate any law, rule, regulation, order, writ, judgment, injunction, decree or award binding on Pledgor or any contracts or agreements to which Pledgor is a party or is subject, or by which Pledgor, or its property, is bound, or conflict with or constitute a default thereunder, or result in the creation or imposition of any lien pursuant to the terms of any such contract or agreement (other than any lien of Secured Party). There is no litigation, investigation or governmental proceeding threatened against Pledgor or any of its properties which if adversely determined would result in a material adverse effect on the Collateral or Pledgor.

4. **Pledgor's Covenants**.  Until full payment and performance of all of the Secured Obligations:

    (a)     <u>Secured Obligations and this Agreement</u>. Pledgor shall perform all of its agreements herein, in the Forbearance Agreement, each Master Agreement and the other Loan Documents.

    (b)     <u>Pledgor Remains Liable</u>. Notwithstanding anything to the contrary contained herein, (i) Pledgor shall remain liable under the Forbearance Agreement, each Master Agreement and the other Loan Documents to the extent set forth therein to perform all duties and obligations thereunder to the same extent as if this Agreement had not been executed; (ii) the exercise by Secured Party of any of its rights hereunder shall not release Pledgor from any of its duties or obligations under the Forbearance Agreement, each Master Agreement and the other Loan Documents; and (iii) Secured Party shall not have any obligation or liability under the by reason of this Agreement, nor shall Secured Party be obligated to perform any of the obligations or duties of

4875-6622-6238 v.3

Pledgor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

(c) <u>Collateral</u>. The security interest in the Collateral granted pursuant to this Agreement is a valid and binding first priority security interest in the Collateral subject to no other liens or security interests, and Pledgor shall keep the Collateral free from all liens and security interests, except those for taxes not yet due and payable and the security interest hereby created. Pledgor shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Secured Party.

(d) <u>Secured Party's Costs</u>. Pledgor shall pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement (including the preparation of this Agreement), collect the Secured Obligations, and preserve, defend, enforce and collect the Collateral, including but not limited to payment of taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales. Whether the Collateral is or is not in Secured Party's possession, and without any obligation to do so and without waiving Pledgor's default for failure to make any such payment, Secured Party, at its option, may pay any such costs and expenses and discharge encumbrances on the Collateral, and such payments shall be a part of the Secured Obligations and bear interest at the rate set for the Secured Obligations. Pledgor agrees to reimburse Secured Party on demand for any costs so incurred.

(e) <u>Financing Statements</u>. No financing statement, register of mortgages, charges and other encumbrances or similar document covering the Collateral or any part thereof is or shall be maintained at the registered office of Pledgor or on file in any public office (except in favor of Secured Party), and Pledgor will, at the request of Secured Party, join the Secured Party in (i) filing one or more financing statements pursuant to the UCC (as defined below) naming Secured Party as secured party, and/or (ii) executing and/or filing such other documents required under the laws of all jurisdictions necessary or appropriate in the judgment of Secured Party to obtain, maintain and perfect its first priority security interest in, and lien on, the Collateral.

(f) <u>Information</u>. Pledgor shall promptly furnish Secured Party any information with respect to the Collateral requested by Secured Party.

(g) <u>Notice of Changes</u>. Pledgor is a limited company organized and existing under the law of the British Virgin Islands. Pledgor shall promptly (and in any event at least fifteen (15) Business Days prior) notify Secured Party in writing of (i) any change in his legal name, address, or jurisdiction of formation or (ii) a change in any matter warranted or represented by Pledgor in this Agreement.

(h) <u>Possession of Collateral</u>. Pledgor shall deliver all Collateral Shares to Secured Party promptly, as instructed by the Secured Party, to the Perfection Collateral Account, or if hereafter acquired, promptly following acquisition, to the Perfection Collateral Account.

(i) <u>Voting Rights</u>. After the occurrence of an Event of Default (as defined below), Secured Party is entitled to exercise all voting rights pertaining to any Collateral. Prior to the occurrence of an Event of Default, Pledgor may vote the Collateral, *provided, however*, that no vote shall be cast or consent, waiver, or ratification given or action taken without the prior written consent of Secured Party which would (i) be inconsistent with or violate any provision of this Agreement or any other Loan Document or (ii) amend, modify, or waive any term, provision or condition of any charter document, or other agreement relating to, evidencing, providing for the issuance of, or securing any Collateral. If an Event of Default occurs and if Secured Party elects to exercise such right, the right to vote any pledged securities shall be vested exclusively in Secured Party. To this end, Pledgor hereby irrevocably constitutes and appoints Secured Party the proxy

4875-6622-6238 v.3

and attorney-in-fact of Pledgor, with full power of substitution, to vote, and to act with respect to, any and all Collateral standing in the name of Pledgor or with respect to which Pledgor is entitled to vote and act, subject to the understanding that such proxy may not be exercised unless an Event of Default has occurred. The proxy herein granted is coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full or the Event of Default has been cured or waived, whichever comes first.

(j)     <u>Other Parties and Other Collateral</u>.  No renewal or extensions of or any other indulgence with respect to the Secured Obligations or any part thereof, no modification of the document(s) evidencing the Secured Obligations, no release of any security, no release of any person (including any maker, indorser, guarantor or surety) liable on the Secured Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Secured Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Secured Party under any law, hereunder, or under any other agreement pertaining to the Collateral. Secured Party need not file suit or assert a claim for personal judgment against any person for any part of the Secured Obligations or seek to realize upon any other security for the Secured Obligations, before foreclosing or otherwise realizing upon the Collateral.

(k)     <u>Waivers by Pledgor</u>.  Pledgor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Secured Obligations; waives notice of any change in financial condition of any person liable for the Secured Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Secured Obligations; and agrees that maturity of the Secured Obligations and any part thereof may, in accordance with the applicable Master Agreement and the other Loan Documents, be accelerated, extended or renewed one or more times by Secured Party in its discretion, without notice to Pledgor. Pledgor waives any right to require that any action be brought against any other person or to require that resort be had to any other security or to any balance of any deposit account. Pledgor further waives any right of subrogation or to enforce any right of action against any other pledgor until the Secured Obligations are paid in full.

(l)     <u>Schedules</u>.  Pledgor shall immediately update any Schedules hereto if any information therein shall become inaccurate or incomplete.  The failure of descriptions of any property to be accurate or complete on any Schedule hereto shall not impair Secured Party's security interest in such property.

(m)     <u>Further Assurances</u>.  Pledgor agrees that, from time to time upon the written request of Secured Party, Pledgor will execute and deliver such further documents and diligently perform such other acts and things in any jurisdiction (including, without limitation, British Virgin Islands) as Secured Party may reasonably request to fully effect the purposes of this Agreement, to further assure the first priority status of the Lien granted pursuant hereto or to enable Secured Party to exercise or enforce its rights under this Agreement or under each Master Agreement with respect to the Collateral or the other collateral posted under each Master Agreement or any other Loan Document.

5.    **Power of Attorney**.  Pledgor hereby irrevocably constitutes and appoints Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the name of Pledgor or in its own name any and all action and to execute any and all documents and instruments which Secured Party at any time and from time to time deems necessary or desirable to accomplish the purposes of this Agreement, including, without limitation, selling, in the manner set forth herein, any of the Collateral on behalf of Pledgor as agent or attorney in fact for Pledgor and applying the proceeds received therefrom in Secured Party's discretion; *provided, however*, nothing in this paragraph shall be construed to obligate Secured Party to take any action hereunder nor shall

Secured Party be liable to Pledgor for failure to take any action hereunder and, upon request, Secured Party shall promptly furnish Pledgor with a written summary of all sales hereunder. This appointment shall be deemed a power coupled with an interest, is irrevocable, and shall continue until the Secured Obligations have been paid and performed in full.

6.  **Rights and Powers of Secured Party**. Secured Party shall be free to pledge, rehypothecate, assign, use, commingle or otherwise dispose of or use any Collateral. Upon the occurrence of an Event of Default, Secured Party, without liability to Pledgor, may: vote the Collateral; take control of proceeds, including stock received as dividends or by reason of stock splits; take control of funds generated by the Collateral, such as cash dividends, interest and proceeds, and use same to reduce any part of the Secured Obligations and exercise all other rights which an owner of such Collateral may exercise; and, at any time, transfer any of the Collateral or evidence thereof into its own name or that of its nominee. Secured Party shall not be liable for failure to collect any account or instruments, or for any act or omission on the part of Secured Party, its officers, agents or employees, except for any act or omission arising out of their own willful misconduct or fraud. The foregoing rights and powers of Secured Party will be in addition to, and not a limitation upon, any rights and powers of Secured Party given by law, elsewhere in this Agreement, or otherwise.

7.  **Default.**

    (a)  <u>Event of Default</u>. As used in this Agreement, "***Event of Default***" means (i) any "Event of Default" under each Master Agreement with respect to which Pledgor is the defaulting party other than the Existing Defaults (as defined in the Forbearance Agreement), (ii) any "Event of Default" under the Pledge and Guaranty Agreement dated on or about the date hereof between Emergent Fidelity Technologies Ltd. and Secured Party, as amended, and (iii) any expiration or termination of the Forbearance Period (as defined in the Forbearance Agreement).

    (b)  <u>Rights and Remedies</u>. If any Event of Default occurs, in each and every such case, Secured Party may, without (i) presentment, demand, or protest, (ii) notice of default, dishonor, demand, non-payment, or protest, (iii) notice of intent to accelerate all or any part of the Secured Obligations, (iv) notice of acceleration of all or any part of the Secured Obligations, or (v) notice of any other kind, all of which Pledgor hereby expressly waives (except for any notice required under this Agreement, any other Loan Document, or which may not be waived under applicable law), at any time thereafter exercise and/or enforce any of the following rights and remedies, at Secured Party's option:

    (i)  *Acceleration*. The Secured Obligations under any Master Agreement and the other Loan Documents shall, at Secured Party's option, become immediately due and payable, and the obligation, if any, of Secured Party to permit further borrowings under any Master Agreement shall, at Secured Party's option, immediately cease and terminate.

    (ii)  *Liquidation of Collateral*. Sell, or instruct any agent or broker to sell, all or any part of the Collateral in a public or private sale, direct any agent or broker to liquidate all or any part of any account and deliver all proceeds thereof to Secured Party, and apply all proceeds to the payment of any or all of the Secured Obligations in such order and manner as Secured Party shall, in its discretion, choose.

    (iii)  *Uniform Commercial Code*. All of the rights, powers and remedies of a secured creditor under the Uniform Commercial Code ("***UCC***") as the same may, from time to time, be in effect in the State of New York, *provided*, *however*, in any event that, by reason of mandatory provisions of Law, any or all of the attachment, perfection or priority (or terms of similar import in any applicable jurisdiction) of Secured Party's security interest in any Collateral is governed by the Uniform Commercial Code (or other

4875-6622-6238 v.3

similar Law) as in effect in a jurisdiction (whether within or outside the United States) other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code (or other similar Law) as in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority (or terms of similar import in such jurisdiction) and for purposes of definitions related to such provisions, and any and all rights and remedies available to it as a result of this Agreement or any other Loan Document, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral (including, without limitation, the right to sell, transfer, pledge or redeem any and all of the Collateral, which right shall be exercised in a commercially reasonable manner) as if Secured Party was the sole and absolute owner thereof (and Pledgor agrees to take all such action as may be appropriate to give effect to such right).

(iv) *Collateral Accounts*. Without limiting the foregoing, Secured Party shall have, and Pledgor hereby grants to Secured Party, the right and authority to transfer all assets held in or credited to the Current Collateral Account or Perfection Collateral Account to Secured Party or as Secured Party may otherwise direct.

(v) *Deficiencies*. If any Secured Obligations remain after the application of the proceeds of the Collateral, Secured Party may continue to enforce its remedies under this Agreement or the other Loan Documents to collect the deficiency.

Pledgor specifically understands and agrees that any sale by Secured Party of all or any part of the Collateral pursuant to the terms of this Agreement may be effected by Secured Party at times and in manners which could result in the proceeds of such sale being significantly and materially less than what might have been received if such sale had occurred at different times or in different manners, and Pledgor hereby releases Secured Party and its officers and representatives from any and all obligations and liabilities arising out of or related to the timing or manner of any such sale; provided, however, that any such sale shall be conducted in a commercially reasonable manner. If, in the opinion of Secured Party, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Secured Party may offer and sell such Collateral in a transaction exempt from registration under federal securities law, and any such sale made in good faith by Secured Party shall be deemed "commercially reasonable." Furthermore, Pledgor acknowledges that any such restricted or private sales may be at prices and on terms less favorable to Pledgor than those obtainable through a public sale without such restrictions, but agrees that such sales are commercially reasonable. Pledgor further acknowledges that any specific disclaimer of any warranty of title or the like by Secured Party will not be considered to adversely affect the commercial reasonableness of any sale of Collateral. Any notice made shall be deemed reasonable if sent to Pledgor at the address set forth in *Article XV* of the BlockFi International Master Agreement at least ten (10) days prior to (i) the date of any public sale or (ii) the time after which any private sale or other disposition may be made.

Secured Party's duty of care with respect to Collateral in its possession (as imposed by law) shall be deemed fulfilled if it exercises reasonable care in physically safekeeping such Collateral or, in the case of Collateral in the custody or possession of a bailee or other third party, exercises reasonable care in the selection of the bailee or other third party, and the Secured Party need not otherwise preserve, protect, insure or care for any Collateral. Secured Party shall not be obligated to preserve any rights Pledgor may have against prior parties, to realize on the Collateral at all or in any particular manner or order, or to apply any cash proceeds of Collateral in any particular order of application.

Notwithstanding anything to the contrary herein or in any other Loan Document, BlockFi Lending and BlockFi International hereby agree that all payments and other amounts received on account of the Secured Obligations under this Agreement shall be distributed ratably between BlockFi Lending and BlockFi International based upon the respective aggregate amounts owing to BlockFi Lending under the

4875-6622-6238 v.3

BlockFi Lending Master Agreement and the Loan Documents relating thereto and to BlockFi International under the BlockFi International Master Agreement and the Loan Documents relating thereto or in such other proportions as BlockFi Lending and BlockFi International may agree.

8. **General**.

(a) Parties Bound. Secured Party's rights hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Secured Obligations or the Collateral, Secured Party thereafter shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Secured Party shall retain all rights and powers hereby given with respect to any of the Secured Obligations or the Collateral not so assigned or transferred. Secured Party may assign all or a portion of its rights and obligations under this Agreement in connection with the assignment of its rights and obligations under each applicable Master Agreement. Pledgor may not assign any of its rights and obligations under this Agreement to any person or entity without the prior written consent of Secured Party. All representations, warranties and agreements of Pledgor shall be binding upon the personal representatives, heirs, successors and assigns of Pledgor.

(b) Discretion by Secured Party. Any determinations made by Secured Party shall be made, in each case, in its sole discretion exercised in good faith unless otherwise stated herein.

(c) Secured Party Actions. Any action taken by Secured Party hereunder may be taken by either BlockFi Lending or BlockFi International acting individually or by BlockFi Lending and BlockFi International acting jointly.

(d) Termination. This Agreement shall remain in full force and effect until all of the Secured Obligations and any other amounts payable hereunder are indefeasibly paid and performed in full and the Loan Documents are terminated.

(e) Waiver. No delay of Secured Party in exercising any power or right shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Secured Party of any right hereunder or of any default by Pledgor shall be binding upon Secured Party unless in writing, and no failure by Secured Party to exercise any power or right hereunder or waiver of any default by Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default. Each right, power and remedy of Secured Party as provided for herein related to the Secured Obligations, or which shall now or hereafter exist at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy. The exercise or beginning of the exercise by Secured Party of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Secured Party of any or all other such rights, powers or remedies.

(f) Definitions. Unless the context indicates otherwise, definitions in the UCC apply to words and phrases in this Agreement; if UCC definitions conflict, Article 8 and/or 9 definitions apply. The following terms, when used in this Agreement, shall have the meanings assigned to them below:

(i) "*Equity Interests*" means, with respect to any corporation, limited liability company, trust, joint venture, association, company, partnership or other entity, all of the shares of capital stock thereof (or other ownership or profit interests therein), all of the warrants, options or other rights for the purchase or acquisition from such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity of shares of capital stock thereof (or other ownership or profit interests therein), all

4875-6622-6238 v.3

of the securities convertible into or exchangeable for shares of capital stock thereof (or other ownership or profit interests therein) or warrants, rights or options for the purchase or acquisition from such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity of such shares (or such other interests), and all of the other ownership or profit interests in such corporation, limited liability company, trust, joint venture, association, company, partnership or other entity (including partnership, member or trust interests therein), whether voting or nonvoting, whether economic or non-economic, and whether or not such shares, warrants, options, rights or other interests are outstanding on any date of determination.

(ii) "*Organizational Documents*" means, (a) with respect to any corporation, the certificate or articles of incorporation and the bylaws (or equivalent or comparable constitutive documents with respect to any non-U.S. jurisdiction); (b) with respect to any limited liability company, the certificate or articles of formation or organization, and the limited liability company agreement or operating agreement; and (c) with respect to any partnership, joint venture, trust or other form of business entity, the partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable governmental authority in the jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation or organization of such entity.

(g) Notice. All notices and other communications to Pledgor under this Pledge Agreement shall be in writing and shall be delivered in accordance with *Article XV* of the BlockFi International Master Agreement to Pledgor at its address set forth in *Article XV* of the BlockFi International Master Agreement or at such other address in the United States as may be specified by Pledgor in a written notice delivered to Lender at such office as Lender may designate for such purpose from time to time in a written notice to Pledgor.

(h) Modifications. No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Pledgor and Secured Party. The provisions of this Agreement shall not be modified or limited by course of conduct or usage of trade.

(i) Severability. In case any provision in this Agreement shall be held to be invalid, illegal or unenforceable, such provision shall be severable from the rest of this Agreement, as the case may be, and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(j) Applicable Law. This Agreement is a "Loan Document" with respect to Pledgor for purposes of, and is entered into in connection with, each Master Agreement. This Agreement is governed by, and shall be construed and enforced under, the laws of the State of Delaware applicable to contracts made and to be performed wholly within such State, without regard to any choice or conflict of laws rules. If a dispute arises out of or relates to this Agreement, or the breach thereof, and if said dispute cannot be settled through negotiation it shall be finally resolved by arbitration administered in the County of New York, State of New York by the American Arbitration Association under its Commercial Arbitration Rules, or such other applicable arbitration body as required by law or regulation, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. If any proceeding is brought for the enforcement of this Agreement, then the successful or prevailing party shall be entitled to recover attorneys' fees and other costs incurred in such proceeding in addition to any other relief to which it may be entitled.

4875-6622-6238 v.3

(k) <u>Financing Statement</u>. Pledgor hereby irrevocably authorizes Secured Party (or its designee) at any time and from time to time to file in any jurisdiction any financing or continuation statement and amendment thereto or any registration of charge, mortgage or otherwise, containing any information required under the UCC or the Law of any other applicable jurisdiction, necessary or appropriate in the judgment of Secured Party to perfect or evidence its first priority security interest in and lien on the Collateral.  Pledgor hereby irrevocably ratifies and approves any such filing, registration or recordation in any jurisdiction by Secured Party (or its designee) that has occurred prior to the date hereof, of any financing statement, registration of charge, mortgage or otherwise.  Pledgor agrees to provide to the Secured Party (or its designees) any and all information required under the UCC or the law of any other applicable jurisdiction for the effective filing of a financing statement and/or any amendment thereto or any registration of charge, mortgage or otherwise.

(l) <u>Additional Security Interests</u>.  The security interests granted under this Agreement are in addition to any other security interest granted by Pledgor or any of its affiliates to Secured Party or any of its affiliates.  This Agreement and the grant of security interests hereunder shall not impair or release any security interests granted by Pledgor or its affiliates to Secured Party or its affiliates.

(m) <u>Release of Security Interest Upon Satisfaction of Master Agreement Obligations</u>.  Upon the termination of all transactions and full and final satisfaction of all obligations under and in accordance with each Master Agreement, the parties irrevocably agree that (i) the security interest, lien, pledge, and assignment of the Collateral hereunder, together with all rights and powers of the Secured Party hereunder, shall immediately be deemed to be void and (ii) the Secured Party shall immediately return to the Pledgor all Collateral in its possession or control.

**NOTICE OF FINAL AGREEMENT.  THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF AND SUPERSEDES ANY AND ALL PREVIOUS AGREEMENTS AND UNDERSTANDINGS, ORAL OR WRITTEN, BETWEEN THE PARTIES HERETO RELATING TO THE SUBJECT MATTER HEREOF.**

[Signature Pages Follow]

4875-6622-6238 v.3

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives as of the date first above written.

**PLEDGOR:**

**ALAMEDA RESEARCH LIMITED**

By: _Caroline Ellison_ _____
Name: Caroline Ellison
Title: Co-CEO

**SECURED PARTY:**

**BLOCKFI INC., in its capacity as Collateral Agent**

By: _Zachary Prince_ _____
Name: Zachary Prince
Title: CEO

**BLOCKFI LENDING LLC**

By: _Zachary Prince_ _____
Name: Zachary Prince
Title: President

**BLOCKFI INTERNATIONAL LTD.**

By: _Zachary Prince_ _____
Name: Zachary Prince
Title: CEO

**Schedule A**

Pledged Equity Interests in Trusts

All of Pledgor's Equity Interests in the following Trusts:

| **Trust or Common Shares** |
| --- |
| Grayscale Bitcoin Trust (GBTC) |
| Grayscale Ethereum Trust (ETHE) |
| Bitwise 10 Crypto Index Fund (BITW) |

Collateral Accounts

| **Current Collateral Account** | |
| --- | --- |
| **Name of Banking or Custodial Entity** | **Account Number** |
| ED&F Man Capital Markets Inc. | ▮▮▮▮▮ |

Perfection Collateral Account

| **Name of Banking or Custodial Entity** | **Account Number** | **Account Name** |
| --- | --- | --- |
| To Come | To Come | **BlockFi Inc.** |