# EXHIBIT E-7

FILED

HIGH COURT
ANTIGUA AND BARBUDA

# THE EASTERN CARIBBEAN SUPREME COURT
## IN THE HIGH COURT OF JUSTICE
### Antigua and Barbuda

Submitted Date:12/12/2022 11:21

Filed Date:12/12/2022 11:22

Fees Paid:22.00

**Claim No. ANUHCV2022/0480**

IN THE MATTER OF EMERGENT FIDELITY TECHNOLOGIES LTD

**And**

IN THE MATTER OF THE INTERNATIONAL BUSINESS CORPORATIONS ACT, CAP. 222

**BETWEEN**

ANGELA BARKHOUSE AND TONI SHUKLA (AS RECEIVERS OF EMERGENT FIDELITY TECHNOLOGIES LTD)

**Respondents- Petitioners**

**– and –**

EMERGENT FIDELITY TECHNOLOGIES LTD

**Respondent**

**– and –**

SAMUEL BENJAMIN BANKMAN-FRIED

**Applicant-Intended Interested Party**

---

## AFFIDAVIT OF SAMUEL BENJAMIN BANKMAN-FRIED

---

I Samuel Benjamin Bankman-Fried of 27 Veridian Corporate Center, Western Road, New Providence, Nassau, Bahamas, state as follows:

[1]  I make this affirmation on my own behalf and as the 90% shareholder in Emergent Fidelity Technologies Ltd and in support of an application that I be accorded the status of an Interested Party in this matter and that there be a stay of any proceedings in this matter pending the determination of my application in the matter of **ANUHCV2022/0456** - *Yonatan Ben Shimon v (1) Emergent Fidelity Technologies Ltd and (2) Samuel Benjamin Bankman-Fried,* in which I am the 2nd Defendant ("the *Shimon* matter").

[2]  In the *Shimon* matter the Claimant was represented by the law firm of Lake & Kentish and on 18th November 2022 obtained an order by which the petitioners in this matter (Barkhouse and Skula) assumed control of my shares in Emergent Fidelity Technologies Ltd. On the strength of that order, Barkhouse and Skula purported to pass a written resolution appointing themselves as directors of Emergent Fidelity Technologies Ltd ousting me as the sole director of Emergent Fidelity Technologies Ltd.

[3]  Barkhouse and Skula have now engaged the law firm of Lake & Kentish in the instant proceedings and have obtained an order appointing themselves (Barkhouse and Skula) as provisional liquidators of Emergent Fidelity Technologies Ltd.

[4]  I am in the process of filing an application in the *Shimon* matter for an order discharging and setting aside the order of 18th November 2022 appointing Barkhouse and Skula as receivers. A copy of my application and submissions in support of the said application (in draft) is attached as **Exhibit SBBF1 and 2**. The submissions advance my contention that Barkhouse and Skula have not been properly or lawfully appointed directors (by way of written resolution) of Emergent Fidelity Technologies Ltd and as such have cannot lawfully act as directors of Emergent Fidelity Technologies Ltd.

[5]  Clearly, if the order appointing Barkhouse and Skula as receivers is revoked then the standing of Barkhouse and Skula in this matter falls away.

[6]  In the circumstances I ask that my application be granted as prayed.

**Affirmed at**

this the 11 day of December 2022

..............................................
Notary Public/Commissioner for Oaths

..........................................................
Samuel Benjamin Bankman-Fried

2

## THE EASTERN CARIBBEAN SUPREME COURT
## IN THE HIGH COURT OF JUSTICE
### Antigua and Barbuda

**Claim No. ANUHCV2022/0480**

IN THE MATTER OF EMERGENT FIDELITY TECHNOLOGIES LTD

And

IN THE MATTER OF THE INTERNATIONAL BUSINESS CORPORATIONS ACT, CAP. 222

BETWEEN

| | |
|---|---|
| ANGELA BARKHOUSE AND TONI SHUKLA (AS RECEIVERS OF EMERGENT FIDELITY TECHNOLOGIES LTD) | **Respondents- Petitioners** |
| – and – | |
| EMERGENT FIDELITY TECHNOLOGIES LTD | **Respondent** |
| – and – | |
| SAMUEL BENJAMIN BANKMAN-FRIED | **Applicant-Intended Interested Party** |

_____

**EXHIBITS**
_____

Attached is the exhibits referred to in the Affidavit annexed hereto and marked **SBBF1-SBBF2**.

Dated the 11 day of December 2022

BEFORE ME:

..................................................................
Notary Public / Commissioner of Oaths

# THE EASTERN CARIBBEAN SUPREME COURT
# IN THE HIGH COURT OF JUSTICE
# ANTIGUA AND BARBUDA

**Claim No. ANUHCV2022/0456**

### IN THE MATTER OF CPR 7.7 AND 9.7

**BETWEEN**

<table>
<tr><td>YONATAN BEN SHIMON</td><td><b><u>Respondent-Claimant</u></b></td></tr>
</table>

**– and –**

<table>
<tr><td>(1) EMERGENT FIDELITY TECHNOLOGIES LTD</td><td><b><u>1st Defendant</u></b></td></tr>
<tr><td>(2) SAMUEL BENJAMIN BANKMAN-FRIED</td><td><b><u>Applicant-2nd Defendant</u></b></td></tr>
</table>

## NOTICE OF APPLICATION

The Applicant, Samuel Benjamin Bankman-Fried of 27 Veridian Corporate Center, Western Road, New Providence, Nassau, Bahamas, applies to this Honourable Court, without prejudice to his right to apply to stay the proceedings on forum non-conveniens ground, for the following orders pursuant to Parts 7.7 and 9.7 of the Civil Procedure Rules ('the Rules'):

1. The order of 18th November 2022 is discharged.

2. Permission to service the Claim Form on the 2nd Defendant out of the jurisdiction is set aside.

3. The Claimant pay the 2nd Defendant's costs as assessed for these proceedings.

**A draft of the Order sought is attached**.

**The grounds of the Application are**:

1. The Claimant does not have a good cause of action against either the 1st or 2nd Defendants.
2. The proceedings brought by the Claimant constitute an abuse of the process of the court in that:
   a. It is now apparent that there is no intention on the part of the Claimant of bringing the proceedings to a proper conclusion
   b. The Claimant has brought a claim which he cannot prove.

3. There is no evidence that justifies an injunction and/or the appointment of a Receiver.

4. The 2nd Defendant is not a necessary or proper party to any proceedings against the first Defendant.

5. Antigua and Barbuda is not the most suitable jurisdiction in which to try any claim that the Claimant might have.

6. The does not fall within CPR 7.3(1)(a).

7. The case is not a proper one for the Court's jurisdiction.

**The supporting affidavit of the 2nd Defendant accompanies this application**.

Dated the 12th day of December 2022

*[signature]*

**David Dorsett, Ph.D.**
Watt, Dorsett, Hewlett Law
Attorneys-at-law for the Applicant-2nd Defendant
Kingsgate Chambers
55 Newgate Street
St. John's, Antigua
(T): 462-1351

NOTICE:

This application will be heard by                    on the            day    of
            2022 at [            ] at the High Court of Justice, Parliament Drive, St. John's, Antigua.

**If you do not attend this hearing an order may be made in your absence.**

**NB This notice of application must be served as quickly as possible on the respondent to the application.**

The court office is at Parliament Drive, St. John's, Antigua, telephone number 462-0609, FAX 462-3929. The office is open between 9:00 am and 3:00 pm Monday to Friday expect public holidays.

The Applicant's address for service is:        Watt, Dorsett, Hewlett Law
                                                Kingsgate Chambers
                                                55 Newgate Street
                                                St. John's, ANTIGUA

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA

Claim No. ANUHCV2022/0456
BETWEEN

YONATAN BEN SHIMON                    **Respondent-Claimant**

– and –

(1) EMERGENT FIDELITY TECHNOLOGIES LTD          **1st Defendant**
(2) SAMUEL BENJAMIN BANKMAN-FRIED     **Applicant-2nd Defendant**

=======================================
NOTICE OF APPLICATION
=======================================

**David Dorsett, Ph.D.**
Watt, Dorsett, Hewlett Law
Attorneys-at-law for the Applicant
Kingsgate Chambers
55 Newgate Street
St. John's, Antigua
(T): 462-1351

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA

**Claim No. ANUHCV2022/0456**

IN THE MATTER OF CPR 7.7 AND 9.7

**BETWEEN**

YONATAN BEN SHIMON                    <u>Respondent-Claimant</u>

– and –

(1) EMERGENT FIDELITY TECHNOLOGIES LTD          <u>1st Defendant</u>
(2) SAMUEL BENJAMIN BANKMAN-FRIED      <u>Applicant-2nd Defendant</u>

---

<u>APPLICANT-2ND DEFENDANT'S SUBMISSIONS</u>

<u>**Introduction**</u>

[1]     The Defendants make these submissions, and files the application referred to below, without prejudice to their right to apply to stay the proceedings on forum non conveniens grounds. Any such application must be filed before the Defendants' time for filing a defence expires – such time (14 days for the first Defendant and 35 days for the second Defendant) has not yet commenced because the Claimant has not, to date, filed a Statement of Claim.

[2]     These submissions are filed on behalf of the Applicant in support of his application that, among other things, the freezing injunction and receivership order of this court made on 18th November 2022 is discharged and that the service on the 2nd Defendant outside of the jurisdiction is set aside.

[3]     In summary, the Applicant submits that:

(1)    The Claimant does not have a good arguable case and has made no showing that the freezing injunction is necessary, and hence the freezing injunction and receivership order must be discharged and

(2) The Claimant fails to satisfy the test to be met for service outside the jurisdiction as stated in *Altimo Holdings and Investment Ltd v Kyrgyz Mobil Tel Ltd* [2011] UKPC 7, [2012] 1 WLR 1804 at [71] and hence service on the Applicant should be set aside.

(3) Even if the Claimant had a good arguable basis for the freezing injunction and service were proper (neither are true), the action taken by the receivers to appoint themselves as directors is wrong in law it been contrary to section 119 of the International Business Corporations Act and contrary to the Company's articles.

(4) CPR 17.4 provides that an ex parte order can only be granted for a period of 28 days. The order was granted on 18 November 2022, and therefore expires on 16 December 2022. Paragraph 3 of the order required that '*there be a further hearing date in respect of the order* within 28 days (the "Return Date") such date to be fixed by the Registrar on the application of the [Claimant]. The Claimant has failed to apply for any return date, and no date has been fixed.

(5) The conduct of the Claimant to date in not properly progressing his case coupled with the Claimant's admission that he does not know certain facts, which facts are essential to proving his claim (or intended claim), means that the present proceedings are an abuse of the process of the court and the proceedings should be struck out.

**The Claim**

[4]    As stated by the Claimant in his Claim Form:

"for the reasons to be set out in a Statement of Claim to be served following this Claim Form, the following relief:

1. A declaration that the First and/or Second Defendants hold funds which the Claimant invested with FTX Trading Ltd or their traceable proceeds on trust for the Claimant;

2. Such amount as the Court may assess on the basis that funds which the Claimant invested with FTX Trading Ltd were knowingly received by

Case 22-01382-MBK11Doc0JT5 Filed 32119722 Filed 04/05/28 19/Page 57 of 727 Desc Main
Document    Page 57 of 7 Exhibit SBBF2 - page 3

3

the First and/or Second Defendants in breach of trust and/or that the First and/or Second Defendants dishonestly assisted breaches of trust;

3. The taking of an account and consequential orders thereupon;

4. Damages in tort;

5. Interest;

6. Costs; and

7. Such further or other orders as the Court thinks fit."

[5]    To date, the Statement of Claim has not been served on the Applicant. In the context of non-service of the Statement of Claim the Applicant wishes to make the following points

   (1)    The general rule is that a Statement of Claim must be served with a Claim Form.

   (2)    CPR 8.2(1) provides that a clamant may serve a Claim Form without a Statement of Claim if the Court gives permission. CPR 8.2(6) provides that when giving such permission the Court must fix a date by which the Statement of Claim must be served. CPR 8.2(9) provides that a Clamant must serve a Statement of Claim within such period specified by the Court.

   (3)    On 18th November 2022 the Court made an order (paragraph 31) requiring the Claimant to serve a Statement of Claim within 14 days. The 14 day period expired on 5th December 2022.

   (4)    In breach of the order dated 18th November 2022 and in breach of CPR 8.2(9) the Claimant did not serve a Statement of Claim by 5th December 2022 and has still not served a Statement of Claim.

[6]    No doubt the failure of the Claimant to serve a Statement of Claim is indicative of the fact that the Claimant does not have any material facts to plead a claim.

[7]    The failure of the Claimant to serve a Statement of Claim and/or to apply for a Return Date for the Injunction/Receivership order suggests that the Claimant's tactics are to obtain draconian ex parte relief and then sit back without giving the Court an opportunity to consider on an inter partes basis whether such relief should

Case 22-01382-MBK Doc JTD   Filed 3211922 Filed 04/05/29/P2g45:32 a#27 Desc Main
Document     Page 58 of 75 Exhibit SBBF2 - page 4

4

have been granted. CPR 8.2(9) and CPR 17.4 were intended to prevent that very tactic from being employed.  The Claimant has acted in breach of both paragraphs 3 and 31 of the order in an attempt to prevent the Court from properly considering the matter on an inter partes basis.

[8]   The Claimant's claim, with utmost respect, is really a claim in the dark. At paragraph [30](iii) of his affidavit, the Claimant in language clear and plain (and not for want of candour) makes the confession:

> "… the First Defendant acquired a 7.6% shareholding in Robinhood for about US$650 million, **_possibly_**[1] _using improperly diverted from those invested by me and others with FRX._ **_I know nothing regarding the source of the funds used to acquire the 7.6% interest in Robinhood_**[2] _beyond the fact that it was allegedly "working capital"._

[9]   Whilst the Claimant does not know the 1st Defendant's source of funds, the source of funds is adequately explained by the 2nd Defendant in his affidavit. The 1st Defendant's source of funds was by way of an introduction of capital to it from its two shareholders.

**The freezing injunction and receivership should be discharged**

[10]   The principles pursuant to which the Court will make interlocutory orders such as injunctions and appoint receivers as set out in _American Cyanamid Co v Ethicon Ltd_ [1975] AC 396 are well known to the Court.  In brief:

(1)   Whether there is a serious question to be tried.

(2)   What would be the balance of convenience of each party should the order be granted (in other words, where does that balance lie?)

(3)   Whether there are any special factors.

[11]   The American Cyanamid principles were applied by the Privy Council in _National Commercial Bank Jamaica Ltd v Olint Corpn Ltd_ (Practice Note) [2009] UKPC 16, [2009] 1 WLR 1405 in which it was held (as stated in the headnote):

---

[1] Emphasis added
[2] Emphasis added

In deciding at the interlocutory stage whether granting or withholding an injunction is more likely to produce a just result, the basic principle is that the court should take whichever course seems likely to cause the least irremediable prejudice to one party or the other. That applies whether the injunction is prohibitory or mandatory. Among the matters which the court may take into account are the prejudice which the claimant may suffer if an injunction is not granted or which the defendant may suffer if it is, the likelihood of such prejudice actually occurring, the extent to which it may be compensated by an award of damages or enforcement of the cross-undertaking, the likelihood of either party being able to satisfy such an award, and the likelihood that the injunction will turn out to have been wrongly granted or withheld: that is to say, **the court's opinion of the relative strength of the parties' cases**[3]. Arguments over whether the injunction should be classified as prohibitive or mandatory are barren: what matters is what the practical consequences of the actual injunction are likely to be.

[12]     The Privy Council in *Convoy Collateral Ltd v Broad Idea International Ltd* [2021] UKPC 24, [2022] 2 WLR 703 held (as stated in the headnote) that there are three conjunctive conditions for the grant of a freezing injunction:

A court with equitable and/or statutory jurisdiction to grant injunctions where it is just and convenient to do so has power—and it accords with principle and good practice—to grant a freezing injunction against a respondent over whom the court has personal jurisdiction provided that: (i) the applicant has already been granted, or **has a good arguable case**[4] for being granted, a judgment or order, whether or not through the domestic courts or directly against the respondent, for the payment of a sum of money that is or will be enforceable through the process of the domestic courts; (ii) the respondent holds assets, or is liable to take steps other than in the ordinary course of business which will reduce the value of assets, against which such a judgment could be enforced; and (iii) there is a real risk that unless the freezing injunction is granted the respondent will deal with the assets, or take steps which make them less valuable, other than in the ordinary course of business with the result that the availability or value of the assets is impaired and the judgment is left unsatisfied

[13]     The failure to meet any one of the conjunctive conditions is fatal to an application for a freezing injunction.

---

[3] Emphasis added
[4] Emphasis added

Case 22-01382-MBK Doc JTD Filed 12/19/22 Entered 05/28/19 23:33:27 Desc Main
Document      Page 60 of 74    Exhibit SBBF2 - page 6

6

[14]    It is respectfully submitted that the Claimant has not satisfied conditions (i) and (iii), both of which are absolutely essential and elementary conditions to be met. The Claimant cannot be said to have a "good arguable case" against the 2nd Defendant (or indeed any of the Defendants) if he "*know[s] nothing regarding the source of the funds used to acquire the 7.6% interest in Robinhood*".  Moreover, the Claimant has not made a sufficient showing that the assets will be impaired or dissipated without the freezing injunction.

[15]    The Claimant's case, at its highest, is no more than a suspicion that the 2nd Defendant held the Claimant's funds in trust and that the 2nd Defendant conspired with the 1st Defendant to misappropriate those funds in breach of trust by investing them in Robinhood. However, the Claimant cannot make a good arguable case with respect to these allegations if he "*know[s] nothing regarding the source of the funds used to acquire the 7.6% interest in Robinhood*". The Claimant's case is one that inevitably is bound to fail at trial based on that evidence – but more relevantly for the purpose of any injunction/receivership the Claimant's own evidence – even before looking at the 2nd Defendant's evidence, clearly establishes that he does not have a good arguable case and/or that there is no serious issue to be tried on the Claimant's own evidence. As noted above, the Claimant cannot even plead a Statement of Claim setting out his case – and without seeking to be unkind – because he has no case to plead.

[16]    A freezing order has been described as a "nuclear remedy". Because it is a "nuclear remedy" there is need for appropriate judicial restraint prior to such a remedy being deployed. The proper purpose of a freezing order must always be borne in mind. As stated by Andrews LJ in *Les Ambassadeurs Club Ltd v Yu* [2021] EWCA Civ 1310, [2022] 4 WLR 1 at [14]:

> 14. The purpose of a freezing injunction is to ensure that a judgment in the applicant's favour will not go unsatisfied by reason of assets that would otherwise be available to satisfy it being dealt with in a manner that will make them unavailable by the time the judgment comes to be enforced. **It is designed to protect against the frustration of the process of the court by depriving the claimant of the fruits of any judgment obtained in his**

Case 22-01382-MBK Doc JTD Filed 12/19/22 Entered 05/28/19/23 15:42:27 Desc Main
Document Page 61 of 74 Exhibit SBBF2 - page 7

7

**favour. It is not intended as a safeguard against insolvency, nor as a means of providing security for a claim, however strong that claim may be and however large a sum of money may be involved** [emphasis supplied]. Nor is it just another standard means of securing enforcement of a judgment in favour of the applicant, like a charging order or third party debt order. It is a potent weapon in the armoury available for dealing with those individuals and companies who may seek to make themselves judgment-proof.

[17]    In *Les Ambassadeurs Club Ltd* it held (as stated in the headnote)

… that, when determining whether an applicant for a freezing order had shown that there was a real risk of dissipation, **the focus should be on whether, on the facts and circumstances of the particular case, the evidence adduced before the court objectively demonstrated a risk of unjustified dissipation** [emphasis supplied] which was sufficient to make it just and convenient to grant a freezing order

[18]    In *Al Assam v Tsouvelekakis* [2022] EWHC 2137 (Ch) at [174]-[176] Davis-White

QC (sitting as a judge of the High Court) said:

**174**.       I accept and remind myself of Mr Head's submission that a freezing order is one of the law's "nuclear weapons" which should not be granted lightly, that the burden is on the applicants to satisfy the evidential threshold in relation to risk of improper or unjustified dissipation, that solid evidence, not mere inference or generalised assertion, is required, and that the question is whether there is a current risk of dissipation (*JSC Mezhdunarodniy Preomyslenniy Bank v Pugachev* [2014] EWHC 4336 (Ch) at [221]; *Bank Mellat v Nikpour* [1985] FSR 87 at p. 92; *Holyoake v Candy* [2017] EWCA Civ 92; [2018] Ch 297 at [50]; *Fundo Soberano de Angola v Jose Filomeno dos Santos* [2018] EWHC 2199 (Comm) at [86]; *National Bank Trust v Yurov* [2016] EWHC 1913 (Comm) at [70]).

**175**.       Further, I remind myself that the test is real risk of dissipation rather than that dissipation is "likely" (*Les Ambassadeurs Club Ltd v Yu* [2021] EWCA Civ 1310; [2022] 4 WLR 1 at [27], [34]-[36]).

**176**.       Finally, in this context, "dissipation" means putting assets that would otherwise be available to meet a judgment out of reach, whether by concealment or transfer. **The dealing must be improper or unjustified in the sense that they are not justified as being made for normal and/or proper business purposes** [emphasis supplied] (*Ninemia Maritime Corporation v Trave Schiffahrtsgesellschaft mbH und Co KG (The Niedersachsen)* [1983] 2 LLR 600 at p. 617; *Congentra AG v Sixteen Thirteen Maritime SA (The Nicholas M)* [2008] EWHC 1615; [2009] 1 All ER (Comm)

479 at [49]; *Fundo Soberano* at [86](1)).  The purpose of a freezing order is to protect against improper dealings entered into to thwart or hinder satisfaction of a judgment, not to provide the applicant with security.

[19]   What is required for the grant of a freezing injunction is "solid evidence, not mere inference or generalised assertion" of a real risk of unjustified dissipation of assets.  There is absolutely none in the instant case, and indeed there is an admission that the Claimant does not have any such evidence.

### Service should be set aside

[20]   The Applicant has applied for an order, pursuant to CPR 7.7 and 9.7, to set aside the permission to serve the Claim Form on him out of the jurisdiction.  The only ground of the application relied on by the Claimant in support of its application to serve out of the jurisdiction is CPR 7.3(2) – i.e.:

(1)   there is between the Claimant and the 1st Defendant a real issue which it is reasonable for the Court to try, <u>and</u>

(2)   the 2nd Defendant is a necessary and proper person to the claim. – see paragraph 1 of Notice of Application dated 18th November 2022 and paragraphs [6]-[10] of the Claimant's skeleton argument dated 18th November 2022.

[21]   The requirements for service out of the jurisdiction are: (i) the claimant must have a good cause of action (CPR 7.7(2)(b)); (ii) service must be permitted under the rules (CPR 7.7(2)(a)); and (iii) the case must be a proper one for the court's jurisdiction (CPR 7.7(2)(c)).

[22]   Lord Collins of Mapesbury in the Privy Council case of *Altimo Holdings and Investment Ltd v Kyrgyz Mobil Tel Ltd* [2011] UKPC 7; [2012] 1 WLR 1804 at [71] summarised these requirements in the following terms:

71. On an application for permission to serve a foreign defendant (including an additional defendant to counterclaim) out of the jurisdiction, the claimant (or counterclaimant) has to satisfy three requirements: *Seaconsar Far East Ltd. v Bank Markazi Jomhouri Islami Iran* [1994] 1 AC 438, 453-457. First, the claimant must satisfy the court that in relation to the foreign defendant there is a serious issue to be

tried on the merits, i.e. a substantial question of fact or law, or both. The current practice in England is that this is the same test as for summary judgment, namely whether there is a real (as opposed to a fanciful) prospect of success: e.g. *Carvill America Inc v Camperdown UK Ltd* [2005] EWCA Civ 645, [2005] 2 Lloyd's Rep 457, at [24]. Second, the claimant must satisfy the court that there is a good arguable case that the claim falls within one or more classes of case in which permission to serve out may be given. In this context "good arguable case" connotes that **one side has a much better argument than the other** [emphasis supplied]: see *Canada Trust Co v Stolzenberg (No 2)* [1998] 1 WLR 547, 555-7 per Waller LJ, affd [2002] 1 AC 1; *Bols Distilleries BV v Superior Yacht Services* [2006] UKPC 45, [2007] 1 WLR 12, [26]-[28]. Third, the claimant must satisfy the court that in all the circumstances the Isle of Man is clearly or distinctly the appropriate forum for the trial of the dispute, and that in all the circumstances the court ought to exercise its discretion to permit service of the proceedings out of the jurisdiction.

[23]    The Court may set aside service if the Claimant does not meet all three requirements for service out of the jurisdiction and it is the Claimant who bears the burden of proving all three requirements. This is not a burden lightly discharged, the courts having made clear that it is a "very serious question . . . whether [the] court ought to put a foreigner, who owes no allegiance here, to the inconvenience and annoyance of being brought to contest his rights in this country" and the court "ought to be exceedingly careful before it allows a writ to be served out of the jurisdiction": *Société Générale de Paris v Dreyfus Bros.* (1885) 29 Ch. D. 239, 242-243, approved by Lord Goff of Chieveley in *Spiliada Maritime Corp.* v. *Cansulex Ltd.* [1987] 1 AC 460 at 481.

*Service out of the jurisdiction is not permitted by the rules (CPR 7.7(2)(a))*

[24]    The burden is on the Claimant to satisfy the court that there is a "good arguable case" that the claim falls within one or more of the rules (or gateways) under which permission to serve out may be given: *Altimo Holdings and Investment* case, above. In this context a "good arguable case" means that

the Claimant has a much better argument than the 2nd Defendant: see *Altimo Holdings and Investment* case, above. Further, the Claimant must show that each of the claims made against the 2nd Defendant falls within one of the rules; in other words, it is not sufficient to show that one claim falls within one of the rules and seek to add other claims for which permission would not be granted: *Donohue v Armco Inc* [2001] UKHL 64, [2002] 1 All ER 749 at [21].

[25]    Evidence is critical to establishing that the domestic court should exercise jurisdiction over a foreign defendant. There must be a plausible evidential basis for getting through the jurisdictional gateway. As stated in *Goldman Sachs International v Novo Banco SA* [2018] UKSC 34, [2018] 1 WLR 3683 by Lord Sumption (with whom Lord Mance, Lord Hodge, Lady Black, and Lord Lloyd-Jones agreed):

> For the purpose of determining an issue about jurisdiction, the traditional test has been whether the claimant had "the better of the argument" on the facts going to jurisdiction. In *Brownlie v Four Seasons Holdings Inc* [2018] 1 WLR 192, para 7, this court reformulated the effect of that test as follows:
>
>> "… (i) that the claimant must supply a plausible evidential basis for the application of a relevant jurisdictional gateway; (ii) that if there is an issue of fact about it, or some other reason for doubting whether it applies, the court must take a view on the material available if it can reliably do so; but (iii) the nature of the issue and the limitations of the material available at the interlocutory stage may be such that no reliable assessment can be made, in which case there is a good arguable case for the application of the gateway if there is a plausible (albeit contested) evidential basis for it."
>
> It is common ground that **the test must be satisfied on the evidence relating to the position as at the date when the proceedings were commenced** [emphasis supplied].

[26]    In fact, by his own admission, the Claimant does not have a good cause of action against the 1st Defendant (or indeed against the 2nd Defendant). The Claimant admits that he does not know what happened and that he has no evidence whatsoever to support his theory that the shares in Robinhood were acquired with the proceeds of his investment in FTX. He fails to establish that

Case 22-01382-MBK Doc JTD Filed 12/19/22 Entered 05/29/19 Page 132 of 327 Desc Main
Document    Page 65 of 74 Exhibit SBBF2 - page 11

11

there is a real issue to be tried, and consequently fails to establish the requirements of CPR 7.3(2)(a). In those circumstances, the application for leave to serve out must be set aside.

[27]   Even if the Claimant did, contrary to these submissions, satisfy the requirement of CPR 7.3(2)(a), the second Defendant is not a necessary or proper party to the proceedings. In fact the Claimant does not in reality seek any substantive relief against the second Defendant – whilst paragraph 1 of the Claim Form asserts a declaration against the 2nd Defendant, the speculative case advanced in the evidence is that the Robinhood shares are held by the 1st Defendant – no suggestion is made that those shares are held by the 2nd Defendant. The 2nd Defendant maybe a witness in the proceedings, but there is no basis to say on the evidentiary case advanced by the Claimant that he is a necessary or proper party to the proceedings.

[28]   Moreover, Antigua does not appear to be the logical jurisdiction in which the Claimant should advance any claim that he asserts against the Defendants. There is no evidence that any of the matters complained about by the Claimant occurred in Antigua, or that any witnesses or documents are located in Antigua. It is not asserted that any funds passed through Antigua. Quite tellingly, **the shares that are the subject of the proceedings are shares in a US corporation**. The only connection with Antigua is the incorporation of the 1st Defendant, and that in itself is not a sufficient basis for the Court to accept jurisdiction. The Defendants have reserved the right to bring a forum non conveniens application in the period prescribed by the CPR – which period has not yet commenced to run.

[29]   In the circumstances, the order giving permission to serve the proceedings on the second Defendant out of the jurisdiction should be set aside.

2277847.1

Case 22-01382-MBK Doc JTS Filed 12/19/22 Entered 05/28/19 Page 132 of 327 Desc Main
Document Page 66 of 71 Exhibit SBBF2 - page 12

12

**Material non-disclosure**

[30]  A Claimant and his Counsel are under a duty to make full and frank disclosure to the Court on any ex parte application, it being a collective duty. That duty extends to speculating about matters that a Defendant might raise by way of defence to the ex parte order and bringing those matters to the attention of the Court (see **Commercial Injunctions** at [9-0006]). Counsel must make the fullest disclosure to the Court of all matters relevant to such an application, whether or not counsel considers any such matter unimportant. He has a duty to disclose to the Court the defence to the action if he knows it, and the facts on which it is based, so that the Court can judge for itself whether they are material or not.

[31]  The dicta of Baptiste JA in *Liberty Club Limited v Grenada Technical and Allied Workers Union* GDAHCVAP2013/0010 at under the caption "Material Non-disclosure" [17]-[18] is highly instructive and (it is hoped) uncontroversial:

> **Material Non-disclosure**
>
> [17] It is recognised that freezing orders can be draconian in effect. Such orders are capable of having such devastating effects that the courts place a high duty on a party seeking such an order without notice. In **The Complete Retreats Liquidating Trust v Geoffrey Logue et al**,Mr. Justice Roth stated at paragraph 23:
>
>> "The draconian remedy of a freezing order, obtained at a "without notice" hearing where the defendant subject to the order is not present to put his case, was described by Donaldson LJ as one of the law's two nuclear weapons (the other being a search order) : Bank Mellat v Nikpour [1985] FSR 87, 92. Subsequently, Jacob J referred to it as a "thermo-nuclear weapon" because its consequences can be much more devastating than a search order: Alliance Resources Plc v O'Brien (unreported, 8 December 1995). It is in that context that the duty on the applicant to make full and fair disclosure assumes such importance."
>
> In **Fourie v Le Roux and Others**, Lord Scott stated at paragraph 33 that:
>
>> "Assets of the defendant to which the claimant has no proprietary claim whatever are to be frozen so as to constitute a source from

Case 22-01382-MBK Doc 11-6 JTD Filed 32/19/22 Filed 05/29/19 Page 20 of 327 Desc Main
Document Page 67 of 74 Exhibit SBBF2 - page 13

13

which the claimant can hope to satisfy the money judgment that, in the substantive proceedings, he hopes to obtain. The frozen assets are removed for the time being from any beneficial use by their owner, the defendant. This is a draconian remedy and the strict rules relating to full disclosure by the claimant are recognition of the nature of the remedy and its potential for causing injustice to the defendant."

In **Memory Corporation Plc. and Another v Sidhu and Another (No.2)** Mummery LJ referred to the "high duty to make full, fair and accurate disclosure of material information to the court and to draw the court's attention to significant factual, legal and procedural aspects of the case." This passage was cited with approval by the House of Lords in **Fourie v Le Roux and Others** at paragraph 34.

[32] Whilst the Claimant candidly admitted at paragraph 30(iii) of his affidavit that not only did he have no relevant evidence to support his claim but that he knew nothing regarding the source of funds, it does not appear from the skeleton argument relied on by the Claimant at the ex parte injunction, nor the note of the hearing prepared by Junior Counsel, that this admission was specifically drawn to the attention of the Court.

[33] Indeed in the Claimant's ex parte Skeleton Argument at paragraph [7] it is submitted:

7. The first requirement (a serious issue to be tried on the merits) is satisfied. The evidence establishes a good arguable case that:

(a) Funds invested by the Applicant with FTX (of which the Second Respondent was a founder and director) have been improperly diverted to the First Respondent (of which the Second Respondent is the sole director and majority owner) in circumstances which give rise to the Applicant having a proprietary tracing claim against those funds and/or claims against the First and/or Second Respondents in knowing receipt and/or dishonest assistance; and

(b) The First and Second Respondents conspired to perform and did perform lawful and/or unlawful acts, involving the improper diversion of funds invested by the Applicant and other investors with FTX to the First Respondent, for the predominant purpose of injuring the Applicant and other investors by expropriating those funds to the personal benefit of the Second Respondent, and thereby causing loss to the Applicant.

Case 22-01382-MBK Doc JTS Filed 12/19/22 Entered 05/29/19 Page 32 of 27 Desc Main
Document      Page 68 of 74 Exhibit SBBF2 - page 14

14

[34]  At paragraph [21] of the Claimant's ex parte Skeleton Argument it is
      submitted:

      21. As to the first requirement (a good arguable case), this criterion is
          satisfied for the reasons given above in relation to the evidence
          establishing a serious issue to be tried.

[35]  In fact those submissions were a grotesque misrepresentation of the
      evidence - the evidence was at its highest that … *the First Defendant acquired a
      7.6% shareholding in Robinhood for about US$650 million, **possibly**[5] using
      improperly diverted from those invested by me and others with FRX. **I know
      nothing regarding the source of the funds used to acquire the 7.6% interest in
      Robinhood**[6] beyond the fact that it was allegedly "working capital"*.

[36]  The duty on Counsel was not only to specifically highlight the evidence to
      the learned Judge, but to specially submit that such evidence came nowhere
      near that required to satisfy the evidential burden required for an ex parte
      application for an injunction/receiver. The brief comment made in
      paragraph 46 of the affidavit falls woefully short of what was required.

46. The Defendants may argue that there is an innocent explanation for the collapse of FTX and
    that the working capital (US$648,293,886.33) used to acquire the 56 million shares in
    Robinhood is unrelated to the client funds unlawfully lent to Alameda Research Ltd. This may
    be the case. It is too soon to tell. However, the collapse of the trading platform and the
    discovery that over half of its assets were unlawfully lent to a related third party subject to the
    control of the Second Defendant undermines any argument that there could be an innocent
    explanation.

[37]  The note prepared by junior Counsel reveals that **the Court's attention was
      not even drawn to paragraph 30(iii) of Shimon's affidavit**. What the Court
      was told was that there was evidence to establish a good arguable case,

---

[5] Emphasis added
[6] Emphasis added

Case 22-01382-MBK Doc 115 Filed 01/05/23 Entered 01/05/23 15:32:27 Desc Main
Document    Page 69 of 74 Exhibit SBBF2 - page 15

15

when in fact it was accepted by the Claimant in his evidence that there was
no such evidence.

## Action by the Receivers

[38]    Since the granting of the order of 18th November 2022, court appointed receivers
have appointed themselves as directors of the 1st Defendant by way of a
resolution in writing. Such an action is contrary to section 119 of the International
Business Corporations Act which provides:

> 119. (1) Except where a written statement is submitted by a director
> under section 71 or an auditor under section 157 –
>
> (a) a resolution in writing signed by **all the shareholders**
> [emphasis supplied] entitled to vote on that resolution at a meeting
> of shareholders is as valid as if it had been passed at a meeting of
> the shareholders; and
>
> (b) a resolution in writing dealing with all matters required by
> this Act to be dealt with at a meeting of shareholders, and signed
> by **all the shareholders** [emphasis supplied] entitled to vote at that
> meeting, satisfied all the requirements of this Act relating to
> meetings of shareholders.
>
> (2) A copy of every resolution referred to in subsection (1) must be
> kept with the minutes of the meetings of shareholders.

[39]    The action of the court-appointed receivers also is contrary to Article 12.10 of the
1st Defendant's Articles of Incorporation which provides that "Notwithstanding
any of the foregoing provisions of this by-law a resolution in writing signed by
**all** [emphasis supplied] of the shareholders entitled to vote on that resolution at a
meeting of the shareholders is subject to section 119 of the Act as valid as if it had
been passed at a meeting of the shareholders."

[40]    The court-appointed receivers have effective control of the shares owned by the
2nd Defendant. The court's order gives the Receivers control over 90% of the
shares in the 1st Defendant but does not give them control over **all the shares in
the 1st Defendant** and in the circumstances it is respectfully submitted that the

Case 22-01382-MBK Doc 315 Filed 12/19/22 Entered 05/29/19/Page 33 of 27 Desc Main
Document Page 70 of 74 Exhibit SBBF2 - page 16

16

removal of the 2nd Defendant as the director of the 1st Defendant is unlawful and void.

## Abuse of process

[41] It is respectfully submitted that the instant proceedings brought by the Claimant constitute an abuse of the process of the court. The Privy Council in *Fuller v The Attorney General of Belize* [2011] UKPC 23, 79 WIR 173 at [5] made the point that

> 'abuse of process' is not a term that sharply defines the matter to which it relates. It can describe (i) making use of the process of the court in a manner which is improper, such as adducing false evidence or indulging 'in inordinate delay, or (ii) **using the process of the court in circumstances where it is improper to do so** [emphasis supplied], as for instance where a defendant has been brought before the court in circumstances which are an affront to the rule of law, or (iii) using the process of the court for an improper motive or purpose, such as to extradite a defendant for a political motive.

[42] More recently the Privy Council in *Brandt v Commissioner of Police* [2021] UKPC 12, [2021] 1 WLR 3125 at [34] stated that "Abuse of process must involve something which amounts to a misuse of the process of litigation."

[43] In *St. Kitts Nevis Anguilla National Bank Ltd v Caribbean 6/49 Ltd* SKNHCVAP2002/0006 at [35] Barrow JA stated:

> The text book examples given of abuse of process include issuing a claim after the expiry of the limitation period, bringing a private law action instead of proceedings for judicial review, **starting a case with no intention of pursuing it further, bringing a case which is known to be incapable of proof**[7], re-litigating a matter that has been decided and bringing a second action based on the same cause of action as forms the basis for proceedings in existence at the time of filing the second action.

[44] In the instant case the Claimant having obtained – **on an urgent basis** - an order for a freezing injunction, and ordered by the court to file his Statement of Claim within 14 days has not done so and for all intents and purposes has parked the intended proceedings against the Defendants. Without the filing of the Statement of Claim the intended proceedings cannot properly get off the ground.

---

[7] Emphasis added

[45]    CPR 8.1(1) provides as follows:

> 8.1 (1) A claimant **starts proceedings** [emphasis supplied] by filing in the court office the original and one copy (for sealing) of –
>
> (a) the claim form; and (subject to rule 8.2)
>
> (b) the statement of claim; or
>
> (c) if any rule or practice direction so requires – an affidavit or other document.

[46]    In the instant case the Claimant has yet to properly start proceedings and yet has the benefit of a freezing injunction and other oppressive orders against the Defendants and there is no sign that the Claimant has any intention of getting on with his case. Indeed it seems more likely that he has no case to get moving on.

[47]    The Claimant has admitted "***I know nothing regarding the source of the funds used to acquire the 7.6% interest in Robinhood***[8] *beyond the fact that it was allegedly "working capital"*. Clearly, the Claimant is incapable of proving the case that he has brought or is intending to bring. This is a text book example of an abuse of the process of the court.

[48]    Stephens JSC in *Brandt* at [39] said:

> Generally, in the exercise of discretion, those proceedings, or those parts of proceedings, which are held to be an abuse of the court's process, should be dismissed. There may be exceptions. For instance, the party bringing the proceedings may be given the opportunity to withdraw them or the court may permit the proceedings to be amended.

[49]    In the instant case it is respectfully submitted that the only principled course open to the court in the exercise of its discretion is to strike out the instant proceedings with costs as strictly speaking there are no proper proceedings to dismiss.

## Conclusion

[50]    For all of the above reasons it is respectfully submitted that the injunctive/receivership order of 18th November 2022 should be discharged and

---

[8] Emphasis added

Case 22-01382-MBK Doc JTS Filed 12/19/22 Entered 05/29/19 Page 72 of 74 Desc Main
Document    Page 72 of 74 Exhibit SBBF2 - page 18

18

an order made setting aside service on the 2nd Defendant, and if the court finds

that there has been an abuse of the process the proceedings should be struck out.

Dated the 12th day of December 2022

David Dorsett, Ph.D.
Watt, Dorsett, Hewlett Law
Attorneys-at-law for the Applicant-2nd Defendant
Kingsgate Chambers
55A Newgate Street
St. John's, Antigua
(T): 462-1351

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA

Claim No. ANUHCV2022/0456

IN THE MATTER OF CPR 7.7 AND 9.7

BETWEEN

YONATAN BEN SHIMON                    Respondent-Claimant

– and –

(1) EMERGENT FIDELITY TECHNOLOGIES LTD          1st Defendant
(2) SAMUEL BENJAMIN BANKMAN-FRIED    Applicant-2nd Defendant

---
---

APPLICANT-2ND DEFENDANT'S
SUBMISSIONS

---
---

David Dorsett, Ph.D.
Watt, Dorsett, Hewlett Law
Attorneys-at-law for the Applicant-2nd Defendant
Kingsgate Chambers
55A Newgate Street
St. John's, Antigua
(T): 462-1351

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
Antigua and Barbuda

Claim No. ANUHCV2022/0480

IN THE MATTER OF EMERGENT FIDELITY TECHNOLOGIES LTD

And

IN THE MATTER OF THE INTERNATIONAL BUSINESS CORPORATIONS ACT, CAP. 222

BETWEEN

| | |
|---|---|
| ANGELA BARKHOUSE AND TONI SHUKLA (AS RECEIVERS OF EMERGENT FIDELITY TECHNOLOGIES LTD) | **Respondents-Petitioners** |
| – and – | |
| EMERGENT FIDELITY TECHNOLOGIES LTD | **Respondent** |
| – and – | |
| SAMUEL BENJAMIN BANKMAN-FRIED | **Applicant-Intended Interested Party** |

**AFFIDAVIT OF SAMUEL BENJAMIN BANKMAN-FRIED**

DAVID DORSETT, PH.D.
Watt, Dorsett, Hewlett Law
Attorneys-at-law for the Applicant
KINGSGATE CHAMBERS
55 Newgate Street
St. John's, Antigua
(T): 1-268-462-1351;
(E): david.dorsett@richards.ag