# Exhibit J

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-19361-MBK |
| | . | |
| BLOCKFI INC., et al., | . | 402 East State Street |
| | . | Trenton, NJ 08608 |
| Debtors. | . | |
| | . | |
| . . . . . . . . . . . .. | | |
| BLOCKFI INC., et al., | . | Adversary No. 22-01382-MBK |
| | . | |
| Plaintiffs, | . | |
| | . | |
| vs. | . | |
| | . | |
| EMERGENT FIDELITY | . | |
| TECHNOLOGIES LTD., et al.. | | |
| | . | |
| Defendants. | . | December 28, 2022 |
| . . . . . . . . . . . . .. | | 1:00 p.m. |

TRANSCRIPT OF HEARING ON THE EMERGENT MOTION SEEKING
AN EXTENSION OF TIME WITH RESPECT TO ANSWERING; CONTINUING THE
JANUARY 9 TURNOVER COMPLAINT

BEFORE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For the Debtor:        Cole Schotz P.C.
                       By:  MICHAEL D. SIROTA, ESQ.
                       25 Main Street
                       Hackensack, NJ 07601

                       Haynes and Boone
                       By:  RICHARD D. ANIGIAN, ESQ.
                       2323 Victory Avenue, Suite 700
                       Dallas, TX 75219

Audio Operator         Luz Di Dolci

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

```
TELEPHONIC APPEARANCES (Cont'd):

For Samuel Bankman-          Montgomery McCracken, LLP
Fried:                      By:  DAVID M. BANKER, ESQ.
                                 EDWARD L. SCHNITZER, ESQ.
                            437 Madison Avenue, 24th Floor
                            New York, NY 10022

For the  Liquidators        Morgan, Lewis & Bockius, LLP
of Emergent Fidelity        By:  MATTHEW C. ZIEGLER, ESQ.
Technologies, Ltd.:         1701 Market Street
                            Philadelphia, PA 19103

                            Morgan, Lewis & Bockius, LLP
                            By:  JOSHUA DORCHAK, ESQ.
                            101 Park Avenue
                            New York, NY 10178

                            Morgan, Lewis & Bockius, LLP
                            By:  DAVID K. SHIM, ESQ.
                            One State Street
                            Hartford, CT 37753

For Merricks Capital        Mintz Levin
Market:                     By:  KAITLIN R. WALSH, ESQ.
                                 THERESE M. DOHERTY, ESQ.
                            919 Third Avenue
                            New York, NY 10022

                            - - -
```

1          THE COURT:  Good afternoon, everyone.  This is Judge

2  Kaplan.  Thank you for appearing remotely through Zoom.  Let me

3  get myself in order.  All right.

4          I recognize many of the names that are appearing this

5  afternoon.  I'll ask for appearances when you're in a position

6  to speak or address the Court rather than at the outset.  I

7  will follow the usual format.  If you wish to be heard, please

8  use the hand raise function, if possible, otherwise, just wave.

9  We'll make sure we get you.

10          And let me turn to counsel for the JP&Ls.  It's their

11  emergent motion seeking an extension of time with respect to

12  answering and also continuing the January 9th turnover

13  complaint.  This obviously is in the BlockFi, Inc. bankruptcy

14  proceeding.  Let me hear from counsel and let me have

15  appearances on behalf of the JPLs.

16          MR. ZIEGLER:  Good afternoon, Your Honor.  Matthew

17  Ziegler of Morgan, Lewis and Bockius for the liquidators of

18  Emergent Fidelity Technologies, Limited.  The liquidators are

19  Angela Barkhouse and Toni Shukla.  I'm joined today by my

20  colleagues, Josh Dorchak and David Shim.

21          THE COURT:  All right.  Welcome.

22          MR. ZIEGLER:  Thank you, Your Honor.

23          Your Honor, would you like me to get started or are

24  you looking to get other appearances?

25          THE COURT:  No, I'll take appearances as we go along.

1        MR. ZIEGLER:  Great.

2        THE COURT:  And feel free to -- I have obviously read

3 the pleadings that have been filed, including, I believe,

4 BlockFi's response that was filed, I believe, earlier today.

5 So, let's just get into the heart of it if we can.

6        MR. ZIEGLER:  Thank you, Your Honor.

7        I'd like to start by introducing my clients.  There

8 are a couple of things that I need to address in what BlockFi

9 filed earlier today as well as a couple of updates from the

10 Antiguan Court as of just an hour ago when a hearing concluded

11 there, and then I'd like to talk a little bit about the

12 Turnover Motion.

13        I appreciate that BlockFi has stated in its papers

14 that they're not contesting our request for an extension in

15 respect of the complaint but only in respect of the turnover

16 motion, so I'd like to discuss why we still think that's

17 important and why an extension is warranted, and I'll try to be

18 efficient.

19        Your Honor, our clients are independent, court-

20 appointed fiduciaries and they are officers of the Antiguan

21 Court.  Just a little bit of background.  They were originally

22 appointed as receivers on the petition of a purported

23 petitioning creditor, however, once the receivers were in place

24 and got a look at the company, they determined that it needed

25 to be placed into provisional liquidation, and so in their

1 capacity as receivers, they petitioned the Antiguan Court

2 independently for the company to be wound up.  The Antiguan

3 Court agreed with their impressions and appointed them as

4 liquidators.

5        So, our clients have been appointed both as receivers

6 and as liquidators of the company.  The receivership is

7 essentially superceded by or stayed in light of the subsequent

8 liquidator appointment.  Your Honor, Mr. Bankman-Fried has

9 challenged the liquidators' appointment as well as the

10 receivership in Antigua and has sought to have Emergent and its

11 assets returned to his own control.

12        Most recently he sought to stay the provisional

13 liquidation order under which the liquidators have their

14 powers.  Earlier today, the Antiguan Court, having heard

15 evidence on the matter, agreed that Emergent should remain in

16 provisional liquidation under the liquidators' control pending

17 further notice.  So, the court rejected Mr. Bankman-Fried's

18 application to stay that proceeding just about an hour ago.

19        Your Honor, in response BlockFi just filed with this

20 Court -- it says that the provisional liquidation is an attempt

21 to bootstrap a -- their words, not mine -- a flawed

22 receivership proceeding into something more legitimate and that

23 the liquidators are purporting act on behalf of unidentified

24 creditors.

25        I want to clear this up, Your Honor.  Both of those

1   things are untrue.  The Antiguan Court independently evaluated

2   the liquidation petition and entered an order appointing the

3   liquidators.  It reaffirmed that order this morning on notice

4   to all parties, including BlockFi, and whatever BlockFi may

5   think of its merits, the order is valid and in effect.  And

6   BlockFi did confirm at the Antiguan hearing that happened this

7   morning that it does intend to raise further challenges to the

8   liquidation and has asked for a trial setting in Antigua for

9   those challenges to be heard, and we expect that that will take

10  place over the next few weeks.

11          I want to explain, Your Honor, what our clients'

12  goals are, because I think there's a lot of noise around that.

13  Our clients' only goals are to protect Emergent's assets and to

14  figure who should ultimately get the benefit of those assets.

15  Their fiduciary duties are to the Emergent estate and all of

16  its creditors, whoever those creditors may be.  Might be

17  BlockFi.  It might be FTX or Alameda.  It might be someone

18  else.

19          The liquidators are agnostic.  They don't want to

20  keep the assets for themselves.  They want to ensure that the

21  process for determining the rights to the assets is fair.  You

22  don't want one purported creditor to get any advantage over

23  others, and, Your Honor, they don't want to waste a lot of

24  money getting to that point defending claims on multiple fronts

25  that may be able to get resolved or at least narrowed with the

1  benefit of timing and (indiscernible).

2          Let's talk about what some of those issues are and

3  why they're relevant to the turnover motion.  And I want to be

4  clear, Your Honor, I'm not here to argue the merits of the

5  turnover motion.  When we are required to do so, we will do

6  that, but I do want to give the Court some insight into some of

7  the funding issues that we're evaluating that are relevant to

8  the turnover motion and I think relevant to our request for

9  more time.

10          The first and most obvious question is who owns the

11  shares.  BlockFi characterizes the turnover motion as a sort of

12  simple procedural matter, but they're trying to make an implied

13  adjudication that the shares are property of  BlockFi's estate.

14  That's the premise of a Section 542 or a 543 action.  This is

15  property of the estate, and it needs to be turned over.  And,

16  simply put, Your Honor, we need more time to take a position on

17  this.  This is the key question that everybody is fighting over

18  in at least three different jurisdictions now.

19          Your Honor, another issue is the question of

20  jurisdiction.  The apparent argument for this Court's

21  jurisdiction over Emergent and the shares is the pledge

22  agreement which appears to have been signed by Caroline

23  Ellison.  We have serious concerns about whether Ms. Ellison

24  was authorized in any way to act for Emergent.  The records we

25  have give no indication that she was an authorized signatory of

1  the company, and she also signed the agreement as, quote, co-

2  CEO.  If you look at the company's bylaws, we don't see any

3  recognition in the bylaws that there is an office of co-CEO at

4  that company.

5          I want to be clear I'm not trying to argue the merits

6  here, but this is a threshold jurisdictional question for us.

7  If Emergent never validly signed the pledge agreement, then

8  there's no colorable argument that Emergent submitted itself or

9  its assets to dispute resolution in the U.S.  Ultimately, we

10 may conclude that U.S. jurisdiction is proper or appropriate to

11 submit to voluntarily, but at present, this question is to be

12 evaluated carefully and in line with our clients' fiduciary

13 duties.  What BlockFi is seeking with the turnover motion is to

14 preordain, in some respects, this Court's jurisdiction to hear

15 that dispute as well.

16         A third issue, Your Honor, and the last one I'll

17 touch on here, is the Antiguan automatic stay which is in

18 effect right now and which was reaffirmed this morning.  Now,

19 BlockFi says in Paragraph 17 of their response that they filed

20 with Your Honor today that this automatic stay, by its terms,

21 does not apply outside of Antigua.  That's a mistake.  BlockFi

22 is referring in their papers to the original receivership order

23 not the provisional liquidation order.

24         The receivership order -- and again, Your Honor, this

25 is Paragraph 17 of their filing today.  The receivership order

1 has been superceded by the provisional liquidation order.  That

2 provisional liquidation order is exhibited at Dorchak Exhibit 2

3 with our papers.  And it says at Paragraph 8 that no suit,

4 action or other proceeding may be commenced or continued

5 against the respondent, being Emergent, or in respect to its

6 assets except with the leave of the Antiguan Court and subject

7 to such terms as the Antiguan Court may impose.

8          Now, Your Honor, I want to be clear, we are not

9 invoking that stay today, because we don't want to burden the

10 Court with resolving a potentially tough question of

11 international comity unnecessarily.  I'm raising it, because

12 this is another potential dispute that could be resolved or at

13 least narrowed with the benefit of some additional time and

14 some additional investigation.

15          Unfortunately, it seems that all of these questions

16 are things that we might have to raise before we can actually

17 respond to the turnover motion.  If we respond on the merits

18 for the turnover motion with what little information we have

19 today, BlockFi will likely argue that we've waived any argument

20 that the Court doesn't have jurisdiction.  And so, in order to

21 preserve an argument on jurisdiction, we would be forced to

22 moved to dismiss the case on the basis of lack of personal

23 jurisdiction potentially before we would be able to respond on

24 the merits.

25          We don't want to load up the Court with all of those

1 different disputes and ask Your Honor to adjudicate all of them

2 now.  We don't think it's necessary.  We think a better way is

3 for there to be a bit more time for all of us to try and come

4 up with some type of resolution, at least a protocol for how

5 the shares can be held and how these disputes can be

6 adjudicated in an orderly and efficient fashion that doesn't

7 favor any particular purported creditor.

8        So, the bottom line, Your Honor, BlockFi has not

9 shown that there's any risk to the shares so long as they

10 reside with Merricks.  BlockFi agrees with Merricks and said it

11 will hold its shares pending an order of a court of competent

12 jurisdiction.  By trying to force the turnover motion now

13 BlockFi seems to be seeking a predetermination of the shares or

14 estate property and that this is the right court to resolve

15 disputes over that.

16        If BlockFi is uncomfortable with Merricks as a

17 custodian of the shares, we'll willingly discuss with them a

18 consensual resolution that preserves everyone's right, but we

19 will not permit ourselves or other potential claimants to those

20 shares to be prejudiced on the question of who owns the shares

21 and which court has jurisdiction to resolve that question.

22        And that's all I have for you, Your Honor.  Happy to

23 answer any questions.

24        THE COURT:  All right.  Thank you.  If I have

25 questions, I'll come back at you all afterwards.

 1          Let me at this point -- I see, Mr. Banker, you have a

 2   raised hand.  Did you want to be heard?

 3          MR. BANKER:  Good afternoon, Your Honor.  I'm David

 4   Banker, Montgomery, McCracken, on behalf of Samuel Bankman-

 5   Fried.  I'm here with my colleague, Edward Schnitzer, who will

 6   be taking lead.  He was going to be submitting a pro hoc vice

 7   application this afternoon but was unable to do it in light of

 8   the emergent nature of this motion, but I would appreciate it

 9   if Your Honor would consider Mr. Schnitzer's taking lead.

10          THE COURT:  I will.  Actually, I'd rather, if I may

11   -- again, maybe I should have taken appearances first just to

12   make it easier.  I'm going to come back to you all for Mr.

13   Fried.  I'd like to hear from BlockFi's counsel though, since

14   we're talking about adjourning their motion, and then I'll come

15   and also have anybody who wishes to be heard weigh in, if I

16   may?  So let me hear from -- and I'll certainly come back to

17   you all.  Let me hear from BlockFi's counsel.

18          MR. SIROTA:  Good afternoon, Your Honor.  Michael

19   Sirota, Cole Schotz, P.C., co-counsel to BlockFi, and with Your

20   Honor's permission, Mr. Anigian from Haynes and Boone will be

21   responding to the arguments just advanced.

22          THE COURT:  All right.  Thank you, Mr. Sirota.

23          Mr. Anigian?

24          MR. ANIGIAN:  Yes, Your Honor, thank you.  Rick

25   Anigian of Haynes and Boone on behalf of the three BlockFi

1  parties who filed the response in opposition to the motion for

2  extension.

3          First, as noted, the BlockFi parties do not have an

4  objection to an extension of the deadline to respond to the

5  adversary complaint or to the status conference on February

6  2nd.  What we do have an objection to is a 45-day extension of

7  the hearing on -- the January 9th hearing on the turnover

8  motion.  And the turnover motion seeks very limited relief.  It

9  merely seeks to have the approximate 56 million shares of

10 Robinhood stock that are owned in the name of Emergent

11 Technologies placed in the hands of a neutral third party

12 subject to further orders from this Court.

13         We believe this Court is in the best place to protect

14 the shares and to oversee the ultimate disposition of title and

15 rights to be shared between various claimants, which include

16 the BlockFi parties who, to date, are the only parties other

17 than Emergent who have any documented proof of ownership or

18 rights to the shares.  And that is as a result of a pledge

19 agreement that was dated November 9th then presented to the

20 Court as well as a filed UCC-1 financing statement that was

21 filed in Washington, D.C. in accordance with Article 9 of the

22 Uniform Commercial Code.

23         The other parties, including Mr. Shimon,  who was the

24 claimant upon which the original receivership in Antigua was

25 based, he is a -- he has a claim against FTX Trading.  It was

1  based on that potential claim against FTX Trading that the

2  original receivership in Antigua was granted.  While this fact

3  wasn't pointed out in Mr. Shimon's application, in Mr. Shimon's

4  affidavit, which is also before the Court, he said that he

5  knows nothing regarding the source of the funds used by

6  Emergent to acquire the 7.6 interest in the Robinhood shares.

7  And the receivership was based on a potential -- on a claim

8  that the Robinhood shares were possibly improperly -- were

9  acquired through improper diversion from funds invested by Mr.

10 Shimon and others in FTX Trading.

11         So, Mr. Shimon's claim against Emergent has to travel

12 not only from FTX Trading, then saying, okay, my funds want to

13 Alameda, then the funds were loaned by Alameda to Mr. Bankman-

14 Fried and Mr. Wang, who then contributed those funds to

15 capitalize Emergent, and those shares were then -- or those

16 funds were then used to buy the Robinhood shares.

17         So, at best, what Mr. Shimon has, or what the

18 receivership was based on, is a derivative claim that should be

19 brought in the FTX Trading bankruptcy and not before this

20 Court.  Based upon that receivership, the JPLs then seek

21 liquidation of Emergent as a whole in Antigua.  Now, Antigua

22 has, other than being the -- that is where Emergent was

23 incorporated, has no connection with this action.

24         There are no known creditors in Antigua who have

25 asserted some rights against Emergent, who have asserted any

1 rights to the Robinhood shares, who have otherwise appeared in

2 either the receivership or the JPL action in Antigua.

3 According to Mr. Bankman-Fried's affidavit, the shares were not

4 purchased from Antigua.  The shares, as we understand, are

5 located with Merricks in New York.

6       And so the original receivership action, that order

7 was dated November 18th, that does not provide for any relief

8 outside of Antigua with respect to the Robinhood shares at

9 issue in this action.  It was only after the adversary

10 proceeding and the turnover motion that were filed in this case

11 on November 28th that the December 5 liquidation order in

12 Antigua that was entered, and that's the order that Mr. Ziegler

13 mentioned has some stay component to it.

14       So, we believe that if there was a stay in place, the

15 first stay that was in place with respect to the Robinhood

16 shares that are held at Merricks was the stay placed by this

17 Court in its worldwide stay order that was dated November 30th

18 of this year.  The reason why we've requested that the shares

19 be moved from -- to a neutral third party from Merricks is that

20 Merricks has a pre-existing relationship both with Alameda and

21 Emergent.

22       It had pledged that it's not going to do anything

23 with the shares subject to further order of a court with

24 competent jurisdiction, but given that prior relationship and

25 the potential for claims against Merricks with respect to the

1  Robinhood shares, we believe that they are better placed with a

2  neutral third party and that that neutral third party should be

3  subject to this Court's jurisdiction.

4         As far as who owns the shares, that is a Merricks

5  issue.  We believe, as noted, that besides Emergent, the only

6  party who currently has a claim to these shares with -- that

7  has any documentation of their ownership and does not have a

8  derivative claim is BlockFi.  That's why this Court is in the

9  best place to determine rights entitled to the shares.

10        Ultimately, all parties who claim an interest in

11 these shares will be able to make whatever Merricks arguments

12 they want to in due course as to why they're entitled to or not

13 entitled to the shares, which would include the right of the

14 JPLs to contest that they're not subject to the jurisdiction of

15 this Court.

16        We see that there's no reason for granting the

17 extension.  These shares should be protected right now.  That's

18 all that we've asked for in the turnover motion.  We do not

19 believe that the efforts of the JPLs are consistent with that.

20 In fact, they continue to press their asserted rights with

21 respect to the Robinhood shares, which, under the December 5

22 liquidation order, according to them, they're authorized,

23 subject to the Antigua Court's approval, to sell, realize or

24 otherwise monetize Emergent's shares in Robinhood, which we

25 believe is improper and should not be a decision made by the

1 Court in Antigua. Now, that's an issue that can be addressed.

2 It doesn't need to be addressed today, but we believe the

3 shares ought to be protected today.

4           Also, there was really no emergency for this. The

5 JPLs have known of the turnover motion in the January 9th

6 hearing since at least -- or since January 7th, yet waited

7 until yesterday to file their emergency extension motion. And

8 given the limited relief it sought, we see that there's no

9 reason to postpone the response date for the turnover motion

10 nor the hearing on January 9th. We don't see that any harm can

11 come to any of the parties who claim an interest by simply

12 allowing a neutral third party to hold these shares subject to

13 further orders from this Court.

14           And I'll answer any questions you may have.

15           THE COURT: All right. Thank you, counsel.

16           Now, let me turn to Mr. Banker and Mr. Schnitzer on

17 behalf of Mr. Bankman-Fried.

18           MR. SCHNITZER: Thank you, Your Honor. Edward

19 Schnitzer from Montgomery, McCracken, Walker and Rhoads on

20 behalf of Samuel Bankman-Fried. Your Honor, Mr. Bankman-Fried

21 supports the application by the JPLs for an extension of time

22 for Emergent to respond to the motion adversary complaint,

23 although I understand the extension for the adversary complaint

24 is going to be granted anyway. In light of the pending

25 litigation in Antigua concerning the JPL's standing to speak

1  for Emergent, an extension time is warranted.

2           Your Honor, as the JPLs explained, Emergent is the
3  undisputed record holder of a certain asset in which several
4  persons have asserted an interest.  The JPLs further correctly
5  explained that the determination of who has the right to speak
6  for Emergent is currently before the High Court of Antigua, as
7  Mr. Bankman-Fried filed a petition seeking to stay the JPL
8  order, which was addressed today in the court, but also to set
9  aside the receivership order.  As a petition to set aside the
10 receivership order is presently before the High Court of
11 Antigua, Mr. Bankman-Fried submits there is cause for the
12 extension that is requested.

13          Your Honor, the only point in which we would perhaps
14 slightly disagree with the JPL is the language of their
15 proposed order.  In Paragraphs 2, 3 and 4 of their proposed
16 order they use the term the JPLs in terms of who should get the
17 extension.  We submit that that should be changed to Emergent
18 Fidelity Technologies Limited, the actual entity, and the
19 extension of time should apply to the entity, that being
20 Emergent, not solely to the JPLs.

21          In the event the Antiguan Court determines that the
22 JPLs do not have standing to speak for Emergent or were not
23 permitted to put Emergent into liquidation, the extension of
24 time should apply to Emergent as a whole so that Emergent can
25 still defend itself in the adversary complaint and the motion.

1        Thank you, Your Honor.

2        THE COURT:  Thank you, Mr. Schnitzer.

3        Is there counsel for FTX?

4                  (No audible response)

5        THE COURT:  I didn't know if they were appearing.

6        Ms. Walsh, you have your hand up?

7        MS. WALSH:  Good morning, Your Honor.  Kaitlin Walsh

8  of Mintz Levin on behalf of Merricks Capital Market formerly

9  known as ED&F Man Capital Market.  With me today is Therese

10 Doherty also of Mintz Levin.  We filed a pro hoc application on

11 behalf of Ms. Doherty yesterday, and I would respectfully

12 request that the Court allow Ms. Doherty to appear at today's

13 hearing while this application is pending.

14        THE COURT:  All right.  Absolutely.

15        Ms. Doherty, welcome.

16        MS. DOHERTY:  Thank you, Your Honor.

17        As Ms. Walsh said, we represent Merricks, and

18 Merricks has the account in the name of Emergent Fidelity.  It

19 is holding assets in that account, and since November 10th, we

20 have made very clear to all of the parties, including BlockFi,

21 the FTX debtors and the joint liquidators, that the assets are

22 being preserved and frozen, and they will not be transferred or

23 moved or placed under the control of anyone unless and until

24 ordered to do so by a court of competent jurisdiction.

25        Our goal here is not to take any position with

1  respect to the merits or a claim to the assets but to make sure

2  that all of the parties have an interest in maximizing the

3  value of these assets and placing them in the control of a

4  person under the auspices of the Court so that investment

5  decisions can be made as soon as possible.

6        We have -- in addition to shares, we have cash in the

7  account.  The shares obviously are subject to market

8  fluctuation, and, in our view, the quicker that a person is

9  placed in control under the auspices of the Court to make

10 investment decisions and to protect those assets and to

11 maximize the value of those assets for whomever at the end of

12 the day is entitled to them, that is what should be everybody's

13 interest today and going forward.

14        So, that is our position, and we're ready, willing

15 and able to do what the Court finds is in the best interest to

16 maximize those assets and protect those assets.

17        THE COURT:  All right.  Thank you, Ms. Doherty.

18        Any other counsel wish to be heard?

19                (No audible response)

20        THE COURT:  All right.  Well, what's presented to the

21 Court is a rather limited issue as to adjourning or carrying

22 the hearing scheduled for January 9th with respect to the

23 debtors' turnover application.  In essence, the turnover motion

24 and the underlying adversary proceeding, while certainly

25 addressing the merits as to ownership and entitlement to the

1  shares at issue, it seems that the parties are in agreement

2  that the January 9th hearing can, indeed, be limited to the

3  issues to whether or not there should be a turnover directed to

4  have the shares placed with a neutral custodian subject to the

5  jurisdiction and orders of this Court, at least at the outset.

6  And I am pleased to hear that the parties have agreed that the

7  merits can and should be addressed after a fuller opportunity

8  to investigate the underlying claims and analyze the various

9  jurisdictional issues.

10        What concerns the Court is the speed in which matters

11  have and continue to proceed in Antigua with limited ability to

12  place any controls.  And, certainly, it's always distasteful

13  for courts to be in a position where there is a, I wouldn't

14  call it a competition, but a concern as to which court is

15  rightly vested with the authority, jurisdiction and control

16  over assets and disputes that are brought before it.  No court

17  wishes to compete, so to speak, with other, either domestic or

18  foreign, courts.

19        But I know this Court entered an order on November

20  30th which just clarified, I thought, what the law is under the

21  Bankruptcy Code in Section 362 as to the worldwide automatic

22  stay.  The orders entered by the Antiguan Court with respect to

23  the powers of the JPLs and their authority was subsequent to

24  that order, so there's an obvious disconnect, and there's a

25  speed in which proceedings are moving in those courts which

1  concerns me.

2          I see little prejudice in continuing with the
3  scheduled January 9th hearing as to whether or not there should
4  be an order directing the placement of the shares in dispute
5  with an independent custodian.  I am comforted by the fact that
6  the -- it seems like all counsel actually agree that what's at
7  issue is securing these shares and maximizing the return for
8  the creditors, all the creditors who are impacted, and that
9  this Court is not by any means making a determination at this
10 juncture as to which court is best equipped or vested with the
11 proper authority and jurisdiction to make the determination.
12 But I certainly think there's no prejudice in entertaining that
13 discussion come January 9th at the outset.

14          And I also have confidence that with the caliber of
15 the professionals involved in this case, that for the limited
16 issue that's going to be argued on January 9th, and given what
17 has transpired in other courts and the speed in which counsel
18 have all acted in other courts, that all professionals and all
19 parties will be prepared to address the issues on January 9th
20 as to the turnover request.

21          I think in advance of that, I would be shocked if
22 counsel actually all tried, that they couldn't come up with a
23 mechanism that's satisfactory to all with respect to placement
24 of the shares in dispute without a court resolution.  But, if
25 not, that's what the Court's here for.

1          My decision is to go forward with the January 9th

2   hearing and to start the process.  Given the holiday times, I

3   understand there's a time crunch, and let me ask counsel, Mr.

4   Anigian, what is the return date for any objections now?  Was

5   it January 3rd?

6          MR. ANIGIAN:  January 3rd, Your Honor.

7          THE COURT:  Okay.  I don't have a problem, since the

8   burden always falls on me to read the materials at the end of

9   the day to allowing additional time.  And instead of January

10  3rd, which is a Tuesday -- let's see, at least move it to

11  January 5th.

12         MR. ANIGIAN:  That's actually acceptable to us.

13         THE COURT:  All right.  Just to try to squeeze out as

14  much time for it.  And this will apply to any party seeking to

15  oppose the relief sought in the debtors' motion.  And, again,

16  my intention is to limit it to the issue as to whether or not I

17  should direct the current custodian, Merricks, to place the

18  shares in a third party, subject to the Court's jurisdiction

19  and authority pending further -- it's always pending further

20  order of this Court.

21         As far as the time to answer the underlying complaint

22  and moving the pretrial that's scheduled, I believe that's

23  scheduled for February.  I know I have a February 21st date

24  scheduled for BlockFi as an omnibus date and a March -- I'm

25  going to put in -- actually, we have a January 30th date, a

1  February 21st date and a January 13th date -- I'm sorry, a

2  March 13th date that I'm going to post.  I can leave it to

3  counsel to try to come up with their own schedule for answering

4  or otherwise moving rather than setting dates now.  What would

5  be your preference?  Let me turn to --

6          MR. ANIGIAN:  Your Honor, this is Rich Anigian.  My

7  thought is that we can try to work something out amongst the

8  parties, and if we can't reach some agreement, we can certainly

9  come back to you, but, hopefully, we're able to reach an

10  agreement amongst the parties.

11          Mr. Ziegler, your thoughts?

12          MR. ZIEGLER:  We're okay with that, Your Honor.

13  Thank you.  We're happy to chat.

14          THE COURT:  All right.  And anyone else?

15          Ms. Doherty, I don't know if you want to weigh in at

16  all, or you're just observing to see what's going to happen?

17          MS. DOHERTY:  I believe -- I wholeheartedly agree

18  with what Your Honor has said, and I am hopeful that all of

19  these parties will be able to agree on a process to eliminate

20  the need to come back on January 9th.

21          THE COURT:  Fair enough.  Ultimately, I'm trying to

22  reduce everybody's burden out there on you all, and I'm

23  confident it could be done.

24          Mr. Schnitzer?

25          MR. SCHNITZER:  Yes, Your Honor, I would just ask

1  that we be included in those conversations about the deadline

2  to answer the amended complaint and the rescheduled pretrial

3  conference?

4        THE COURT:  Absolutely.  I am, as you could tell --

5  certainly, Mr. Bankman-Fried is a party to this and should be

6  involved, at least at the outset.  I guess by my question

7  before whether there was counsel for FTX, I guess I'm surprised

8  that they're not -- given the motion they filed to extend the

9  automatic stay with respect to these shares, I'm surprised

10 they're not part of this hearing or conversation, and you'll

11 tell me otherwise, but -- and maybe that will occur.

12        So, at this point, why don't I mark the Emergent

13 motion -- it's going to be denied in part, and, if you want,

14 you can come put together a scheduling order which will resolve

15 the issues as far as -- I'll mark an order to be submitted and

16 with a scheduling order for the balance of the adversary

17 proceeding, in other words, the time for -- to answer and also

18 for when to hold a pretrial.

19        I need not -- I'll let you all know, I need not have

20 a pretrial on a omnibus BlockFi day,  because there's always,

21 I'm sure, several matters I can schedule for another day.  You

22 could always contact chambers, and we'll be glad to fill in a

23 date for that.  If there's any issues, contact my chambers, my

24 law clerks, Becca Earl or Maria DeOliveira, and we'll work with

25 you.  And if we need to have a conference call, we can do that

1  as well in case you can't come to an agreement.  But,

2  otherwise, we'll proceed on January 9th with the only change

3  now is the deadline to file objections would be close of

4  business January 5th.

5          MR. ZIEGLER:  Your Honor, may I ask a clarifying

6  question?

7          THE COURT:  Yes.

8          MR. ZIEGLER:  One of the things that I mentioned a

9  moment ago and one of our concerns is we're concerned that if

10 we respond to the turnover motion on the merits, that that they

11 may create an argument that we have waived an objection on the

12 basis of jurisdiction.  We don't want to file a motion to

13 dismiss this case based on a lack of jurisdiction.  Could we

14 have Your Honor's assurance that if we engage on the merits

15 with respect to the turnover motion, that we will not be

16 prejudiced against arguing for jurisdiction.

17         THE COURT:  I respect the concern.  I am certainly

18 comfortable with parties reserving their rights in that regard,

19 to argue --

20         MR. ZIEGLER:  Thank you.

21         THE COURT:  -- given the limited nature of the issue

22 on January 9th.

23         MR. ZIEGLER:  Thank you very much.

24         THE COURT:  And, counsel -- BlockFi counsel have any

25 concerns?  Mr. Anigian?

1        MR. ANIGIAN:  We do not, Your Honor.  We believe they

2   can reserve their right to challenge jurisdiction while at the

3   same time addressing the January 9th turnover motion.

4        THE COURT:  Good.  All right.  So, and again, that

5   will hold true for all parties involved.

6        Are there any other issues or concerns anyone wishes

7   to raise for the Court?

8        MR. ANIGIAN:  Not today.

9        THE COURT:  Oh, I'm sure you'll come up with a

10  matter.

11       Going forward, folks, I'm going to try to schedule

12  these hearings by Zoom, given all of your travel schedules and

13  other pressing concerns.  If it's evidentiary hearings, in

14  other words, if we're going to take testimony, I'd rather have

15  that in court.  If it's argument, I'm more than happy to handle

16  it remotely.  Parties are always welcome to come to court.  I'm

17  lonely here in Trenton, but you need not make the venture,

18  unless the parties agree or have a desire to be here.

19       All right.  Otherwise, see you all after the New

20  Year.  Have a good holiday.  Take care.

21                      *  *  *  *  *

22

23

24

25

# **C E R T I F I C A T I O N**

I, ALYCE H. STINE, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Alyce H. Stine

ALYCE H. STINE

J&J COURT TRANSCRIBERS, INC.   DATE:  December 29, 2022