## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., et al.,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 233** |

**RESERVATION OF RIGHTS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BID PROCEDURES, STALKING HORSE PROTECTIONS AND THE FORM AND MANNER OF NOTICES FOR THE SALE OF CERTAIN BUSINESSES, (B) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (C) SCHEDULING AUCTION(S) AND SALE HEARING(S) AND (II) (A) APPROVING SALE(S) FREE AND CLEAR OF LIENS, CLAIMS, INTEREST AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases (the "<u>Chapter 11 Cases</u>") of the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>"), by and through its undersigned proposed counsel, hereby submits this statement (this "<u>Statement</u>") reserving all rights of the Committee with respect to the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s) and (II) (A) Approving Sale(s) Free and Clear of Liens, Claims, Interest and Encumbrances and (B)*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

*Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 233] (the "Motion"),[2] and, in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The paramount goals of the Committee in the Chapter 11 Cases are to create transparency, credibility and trust in the chapter 11 process and to maximize the recoveries to the multitude of the Debtors' creditors – the true victims of one of the largest and most brazen corporate frauds in history. Achieving these objectives requires checking the Debtors' actions, pursuing all avenues of asset recovery, and considering all possible strategic alternatives for value creation – including the potential restart of the Debtors' exchanges, or, under the proper circumstances, the sale of the Debtors' businesses and other investments.

2.      Viewed through this lens, a rational evaluation of the current proposed sale of one or more of the Businesses must take into account (a) the complexity of the sale, (b) the need for diligence and the availability of reliable financial information, and (c) the potential for regulatory approval from U.S. and international regulatory bodies. The Committee recognizes that the potential value of a sale in this climate must be balanced against the demands of near-term liquidity, regulatory pressure, employment issues and other considerations that may worsen as time goes on. However, these factors must also be measured against the operational synergies and relationships of the Businesses to the Debtors' broader assets and the value associated with a larger sale or reorganization.

3.      The Committee and the Debtors are aligned in their effort to maximize creditor recoveries, though the parties may not always have a common view on the best path to

---

[2]  Each capitalized term that is not defined herein shall have the meaning ascribed to such term in the Motion.

reach that goal. For now, the Committee is prepared to cautiously agree to allow the Debtors to move forward with the marketing process for the Businesses in light of the Debtors' stated regulatory and related pressures, while at the same time, running at full speed to evaluate alternatives that take into account (a) the value creation from the nexus of the Businesses to the Debtors' broader exchange platform and the viability of resuscitating it, (b) the extent of both the interest in the Businesses by potential purchasers and the value netted for the estates from them, (c) the complexity associated with regulatory, financing and other closing conditions to any sale, and (d) the impact on the sales of the Businesses on the value of the Debtors' other assets from a licensing, geographic and scope of service perspective.

## BACKGROUND

4.        Pursuant to the Motion, the Debtors seek approval of bidding procedures for the marketing and sale of four subsidiary businesses of the Debtors: (a) non-Debtor Embed, a correspondent clearing and custody platform composed of Embed Technologies and its wholly owned subsidiary Embed Clearing; (b) non-Debtor LedgerX, a digital currency futures and options exchange and clearinghouse; (c) Debtor FTX Japan Holdings, which owns (i) Debtor FTX Japan, a registered cryptocurrency exchange available to residents of Japan and (ii) Debtor FTX Singapore, which operates a cryptocurrency exchange in Singapore under exemption while its license application is being processed; and (d) Debtor FTX Europe, a holding company for a technology platform and exchange for crypto and equity derivatives trading for European Union investors (collectively, the "Businesses").

5.        The Debtors assert that the Businesses (a) are "regulated, licensed, and/or are largely not integrated into the Debtors' operations, within and outside of the United States", (b) may be solvent and have valuable franchises, and (c) are independently managed. Motion at ¶ 2. The

Debtors further assert that each of these Businesses has experienced regulatory pressures (*see id.* at ¶ 5) and significant customer and employee attrition pressures (*see id.* at ¶ 6) that would be ameliorated in a sale. The Debtors also point out that each of the Businesses were acquired recently, purportedly operate on a generally independent basis from the Debtors' other operations, maintain segregated customer accounts, and have separate management teams. *Id.* at ¶ 7. Finally, the Debtors indicate that there has been significant interest expressed by third parties in acquiring the Businesses, and, in the Debtors' view, pursuing one or more sales on an expeditious basis is necessary to maximize value. *Id.* at ¶ 8.

6. The Debtors have not submitted a declaration or any other evidence in connection with the Motion to substantiate the Debtors' assertions with respect to the urgent need to sell the Businesses or the purported lack of the Businesses' nexus to the Debtors' other operations. Nevertheless, the Debtors propose the following compressed timeline (notwithstanding the complexities associated with any such sale process, as described in more detail below):

| Business | Initial Bid | Final Bid | Auction | Sale Hearing |
|---|---|---|---|---|
| Embed | January 18 | February 15 | February 21 | February 27 |
| LedgerX | January 25 | March 1 | March 7 | March 13 |
| FTX Japan | February 1 | March 15 | March 21 | March 27 |
| FTX Europe | February 1 | March 15 | March 21 | March 27 |

*Id.* at ¶ 19.

7. The Bid Procedures contemplated in the Motion further provide that, after consultation with the "Consulting Professionals", the Debtors may, until six days prior to the applicable auction, designate one or more stalking horse bids, and provide the stalking horse bidder with bid protections in the form of (a) a cash break-up fee of up to 3.0% of the "value of the

consideration" to be paid by the stalking horse bidder for the applicable Business (the "<u>Stalking Horse Purchase Price</u>"), and (b) an expense reimbursement in an amount up to 0.5% of the Stalking Horse Purchase Price (subject to an aggregate cap of $1.25 million). *Id.*

8.      The Committee's advisors are included as "Consulting Professionals", but their precise information and consultation rights are vague, and the Committee continues to negotiate the scope and other details of such rights with the Debtors. *See id.* at ¶¶ 18 -19.

## DISCUSSION

9.      As noted at the outset of this pleading, the Committee has a number of concerns with the Motion. *First*, the Debtors' abbreviated and expedited approach reflected in the proposed Bid Procedures appear to be more akin to bidding procedures typically deployed in connection with the proposed sale of *de minimis* assets in an omnibus fashion. However, in the last two years, the Debtors acquired each of the Businesses for very large sums of money.

10.      *Second,* the Debtors must be in a positon to provide prospective bidders and other parties in interest in the Chapter 11 Cases with credible and reliable financial, operational, regulatory and licensing information with which to evaluate the Businesses. This information is necessary to facilitate bidding at competitive values, enable the Debtors and the Committee to meaningfully assess bids, provide a benchmark against which to measure the value being offered as part of any sale process, and to allow the Court to properly evaluate any transaction brought to it for approval.  At this time, the Committee has received and is reviewing certain diligence information regarding the various Businesses, but is awaiting significantly more diligence information, and is not yet in a position to determine whether a sale of one or more of the Businesses is the best value-maximizing approach. Moreover, at this time, the Committee lacks the information necessary to verify, as the Debtors allege, that the Businesses are largely independent and severable from the

Debtors' operations, or the extent to which the sale of the Businesses would impact potential alternatives for the Debtors' exchanges.

11.     *Third*, the Bid Procedures contemplate Court approval of the sale of all of the Business in less than 90 days from the Bid Procedures Hearing, which, given the concerns noted herein, presents a narrow window within which the Debtors and the Committee must, in parallel, canvass the market and evaluate viable restructuring alternatives.

12.     *Fourth*, the proposed Bid Procedures do not address substantive issues associated with the sale of the Businesses, including (a) the treatment of customer deposits, (b) the methodology for valuing competing bids and bid currency, (c) current market conditions for the sale of such assets, and (d) the manner in which any sale proceeds would be allocated.

13.     *Fifth*, notwithstanding the Committee's rights as a "Consulting Professional," the Bid Procedures afford the Debtors broad discretion to make decisions regarding the sale process for the Businesses, including the qualification of bidders, the selection of any stalking horse bidder or implementation of stalking horse protections, the selection of successful bid(s) and any back-up bids, changes to auction procedures and other important decisions. While the Debtors are now under the control of independent parties, given FTX's rapid collapse, the Debtors' ongoing implementation of corporate controls and the elastic nature of the proposed Bid Procedures, the Committee should have a more meaningful role in connection with the marketing and sale of the Debtors' assets.

14.     As noted at the outset of this Statement, the Committee and the Debtors share the common goal of maximizing creditor recoveries. While the Committee expects to continue to work with the Debtors to (a) address the Committee's concerns regarding the Bidding Procedures in advance of the Bidding Procedures Hearing and (b) jointly evaluate any sale

proposals in connection with the Businesses and all viable alternatives thereto, the Committee

nevertheless reserves all of its rights with respect to the Motion and any future potential sales of any

of the Businesses.

Dated: January 8, 2023
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
      rpoppiti@ycst.com

-and-

PAUL HASTINGS LLP
Kristopher M. Hansen*
Luc A. Despins*
Kenneth Pasquale*
Frank Merola*
Erez E. Gilad*
Gabriel E. Sasson*
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
      lucdespins@paulhastings.com
      kenpasquale@paulhastings.com
      frankmerola@paulhastings.com
      erezgilad@paulhastings.com
      gabesasson@paulhastings.com

*Admitted pro hac vice*

*Proposed Counsel to the Official Committee of
Unsecured Creditors*