# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref Nos. 45, 157, 196, 200 & 362 |

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF
AN ORDER AUTHORIZING DEBTORS TO REDACT OR
WITHHOLD CERTAIN CONFIDENTIAL INFORMATION**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby file this reply (the "Reply") in further support of the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors In Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 45] (the "Motion").[2] In support of this Reply, the Debtors submit the concurrently filed declaration of Kevin M. Cofsky (the "Cofsky Declaration"). On December 9, 2022, Bloomberg L.P., Dow Jones & Company, Inc., The New York Times Company and The Financial Times Ltd. (collectively, the "Media Objectors") filed an expedited motion to intervene in order to

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

object to the Motion [D.I. 196] (the "Media Objection").³ On December 12, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee" and, together with the Media Objectors, the "Objectors") also filed an objection to the Motion [D.I. 200] (the "UST Objection"). On January 4, 2023, the U.S. Trustee filed a supplemental objection [D.I. 362] (the "Supplemental UST Objection" and, together with the Media Objection and UST Objection, the "Objections").⁴

**Preliminary Statement**

1. These Chapter 11 Cases are unprecedented, and the Debtors recognize that they have generated significant public interest. The Debtors are committed to conducting a transparent chapter 11 process for the Debtors' creditors and other parties-in-interest. The Debtors have an obligation, however, to balance transparency with both maximizing the value of their assets, including the approximately 9.5 million customer names and contact information contained in the Debtors' customer lists, and not unnecessarily increasing the potential risks to the Debtors or their creditors by disclosing their personal information.

2. The Objectors recognize this to a large degree. The U.S. Trustee does not object to redacting the addresses of individual customers and other individual creditors, and the Media Objectors do not object to the redaction of the addresses and contact information of all

---

³ On December 19, 2022, the Court entered the *Order Granting Certain Media Parties' Expedited Motion to Intervene for the Limited Purpose of Presenting an Objection to Debtors' Motion for Entry of a Final Order Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals* [D.I. 255] authorizing the Media Objectors to intervene in these Chapter 11 Cases for the limited purpose of objecting to the Motion.

⁴ The Supplemental Objection only objects to the Motion to the extent that the Order authorizes the Debtors to redact the same information in professional retention applications or related disclosures. (*See* Supp. UST Obj. ¶ 7.) The Supplemental Objection does not advance any new or additional arguments. The Debtors submit that there is no basis to treat redactions in in professional retention applications or disclosures differently than redactions in all other similar lists the Debtors file with this Court.

creditors. The Objectors only contest the portion of the Motion seeking to also redact any customer or creditor names and, with respect to the U.S. Trustee, the addresses of non-individuals.

3. The Objectors cite to the general principles of the right of public access to records, but do not articulate any bona fide reason why public disclosure of 9.5 million names *immediately*—in the still early stages of these Chapter 11 Cases—is necessary or appropriate. And the Objectors simply dismiss this Court's sound reasoning in *In re Cred, Inc.*, where redaction of *both* names and associated identifying information of a cryptocurrency platform's customers was permitted. There is no basis to reach a different result on the facts of these cases; in fact, the need to redact the names and identifying information of the Debtors' customers is that much more acute here where the sheer number of customers—and potential value of the Debtors' customer lists—is so significant.

4. The facts of these cases support two independent bases for the Court to permit redactions for cause of *both* customer names and address information: (i) section 107(b) of the Bankruptcy Code, to permit the Debtors a reasonable period of time to reorganize or monetize their digital asset exchanges, which include their customer lists, without the threat of poaching before publicly releasing names; and (ii) section 107(c) of the Bankruptcy Code, to protect customers from bad actors, theft and fraud.

5. In order to strike an appropriate balance, the Debtors, with the support of the Official Committee of Unsecured Creditors (the "Committee"), are limiting the relief requested on a final basis to permitting the redaction of names of the Debtors' customers for a period of 6 additional months pursuant to section 107(b) of the Bankruptcy Code, subject to the right of the Debtors and the Committee to seek from the Court an extension of the period or

authorization to redact customer names on other grounds at a later date.[5] This will address the immediate issue and permit the Debtors to preserve the value of the customer lists as they work to maximize value for all stakeholders.

6. If redaction of customer names is granted on this basis, then the Debtors are not requesting that the Court adjudicate the propriety of redacting customer names pursuant to section 107(c) of the Bankruptcy Code at this time.[6]

7. In addition, the Debtors do maintain their request to redact all names—customer and otherwise—to comply with the GDPR. The UST Objection deviates from longstanding precedent in this district of redacting information (including names and addresses) protected by the GDPR and objects to names being redacted on that basis despite the risk to the Debtors of significant penalties. The Court should not countenance this newfound position.

8. Accordingly, the Debtors request that the Court overrule the Objections and grant the relief requested, as modified herein.[7]

**Reply**

**I.  Cause Exists to Authorize the Debtors to Redact Customer Names and Contact Information Pursuant to Section 107(b)(1) of the Bankruptcy Code**

9. The Debtors maintain that cause exists pursuant to section 107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018 to authorize the Debtors to redact the names and

---

[5] A revised proposed Order (the "Revised Order") is attached hereto as Exhibit 1. A redline of the Revised Order against the original Order filed with the Motion is attached hereto as Exhibit 2.

[6] To the extent the Court is not inclined to grant the Motion under section 107(b) and order the redaction of customer names for the next 6 months, the Debtors respectfully request that the hearing be adjourned to a later date to provide the Debtors an opportunity to permit additional briefing and evidence with respect to section 107(c).

[7] The relief requested in the Motion is not intended to exempt any customer or equity holder from the disclosure requirements set forth in Bankruptcy Rule 2019. The Debtors believe that prompt compliance with Bankruptcy Rule 2019 is important, where applicable.

associated identifying information of the Debtors' customers because the Debtors' customer lists are a potentially valuable asset of the estates precisely because they are proprietary and not publicly available. (*See* Mot. ¶¶ 11-15.) Mr. Cofsky makes clear that the Debtors' customer lists, including both names and contact information, are a key asset and a potential source of value for the Debtors' estates. (Cofsky Decl. ¶¶ 7-9.) The UST Objection does not dispute that immediately revealing the Debtors' customer lists could harm the Debtors' ability to market and sell those lists as part of their reorganization efforts, but rather argues that section 107(b) is inapplicable, the Debtors have failed to meet their burden, and there are countervailing considerations that favor disclosure. (*See* UST Obj. ¶¶ 53-55; Media Obj. ¶¶ 16-17.)

10.     The Debtors recognize that, with respect to section 107(b)(1), the interest of the Debtors in protecting the value of their assets must be balanced with the transparency required by the chapter 11 process. To that end, and in response to the U.S. Trustee's concerns, the Debtors are limiting their request to redact customer names and institutional addresses, in addition to the agreed redaction of individual customer address information, to a period of an additional 6 months, subject to the rights of the Debtors and the Committee to seek an extension of that period. The Debtors' submit that this modified request appropriately balances the competing interests at this early stage of these Chapter 11 Cases.

11.     Moreover, the Debtors are not seeking to avoid compliance with the Bankruptcy Code and the Bankruptcy Rules. They will serve all of the necessary parties and make all of the necessary disclosures under seal to the Court, the U.S. Trustee, and others as appropriate.[8]

---

[8] The U.S. Trustee also objects to the Motion on the basis that the Order does not require the Debtors to file unredacted documents under seal with the Court. (UST Obj. ¶¶ 82-84.) For the avoidance of doubt, the Debtors will file redacted documents publicly and will file unredacted versions under seal with the Court.

12. Contrary to the Objectors' assertions, the Debtors have satisfied their burden in establishing that the customer lists are confidential "commercial information" that warrants protection under section 107(b)(1), particularly given that the current request to redact customer names and institutional addresses is for a limited duration.

13. Mr. Cofsky confirms that the Debtors' customer lists are a key asset of their estates. (Cofsky Decl. ¶¶ 6-7.) The Debtors have expended significant resources to build their customer lists over time, and Mr. Cofsky confirms that he believes third parties will attribute value to those lists, including both names and customer information. (*Id.* ¶ 8.) Given that a hallmark feature of cryptocurrency is a holder's ability to remain anonymous to the public, there is limited to no publicly available information as to the identity of individuals or institutions holding cryptocurrency on exchanges. (*Id.* ¶ 7.) As a result, it is expensive and time consuming for companies that operate crypto asset management platforms to identify potential customers, attract and enroll them, and ultimately establish them as customers. It is likewise generally difficult for a crypto asset management platform to identify customers on a competitor's platform and seek to poach those customers. (*Id.*)

14. But that asset comprising of more than 9 million customers, and the ability to monetize it for the benefit of all stakeholders, would be jeopardized by its immediate disclosure. (*Id.* ¶ 13.) And the Debtors would be harmed by the disclosure of the customer names, even with the redaction of addresses. (*Id.* ¶ 9.)

15. It is well established that customer information such as names and contact information are separately valued intangible assets of an entity. (*Id.* ¶ 12.) Mr. Cofsky's views with respect to the Debtors' customers here are validated by the fact that crypto asset management platforms, including competitors of the Debtors, and businesses in general,

regularly expend significant value for new customers in the ordinary course of business. (*Id.* ¶ 10.) The fact that the Debtors' customer lists contain more than 9 million names and addresses in one place only increases that value. Critically, from the perspective of the Debtors' stakeholders, potential buyers of the Debtors' assets will likely ascribe material value to the Debtors' customer lists. But if customer information is made public, the value of the Debtors' businesses, and the ability to realize that value, could be materially harmed, diminished or dissipated. (*Id.* ¶ 11.)

16. The conclusion of Mr. Cofsky—the person who, along with his team at the Debtors' proposed investment banker, is considering how to maximize value of certain of the Debtors' assets—is that an important component of the strategy is maintaining the confidentiality of customers' identities and personal identifying information. (*Id.* ¶ 13.) These Chapter 11 Cases are still in their early stages, and there is no reason advanced by the Objectors to force the Debtors' to destroy that value at this juncture. The Debtors should be permitted the requested period of an additional 6 months to continue to consider all reorganization and marketing options.

17. There is additional cause to redact individual customers names pursuant to section 107(b)(1) to comply with the Act on the Protection of Personal Information ("APPI") and the Financial Instruments and Exchange Act of Japan ("FIEA"). Under the APPI, a business operator handling personal information, like certain of the Debtors, is prohibited from disclosing such information without the consent of the individual or unless certain statutory exceptions apply. APPI Arts. 27(1), 28(1). "Personal information" includes an individual's name. APPI Art. 2(1). While there is a statutory exception for disclosure if it is required by law, this exception does not apply where the applicable law is foreign law. APPI Art. 27(1). Violations

of the APPI could also result in business suspension or the revocation of a business license. FIEA Arts. 51, 52(1). This business license in Japan is another crucial asset of the Debtors' estates in their ongoing reorganization efforts, and the Debtors are currently seeking approval of bid procedures to market the FTX Japan business. It is therefore paramount that the Debtors be permitted to comply with the APPI in order to protect this asset and those customers in Japan.

18. This Court has already determined under substantially similar facts that a crypto platform's customer list is entitled to protection under section 107(b) of the Bankruptcy Code. In *Cred*, the Court overruled an objection from the U.S. Trustee and concluded that those debtors' customer list "has some intrinsic value, and that disclosure of that list could affect the ability of the debtors to market and sell that list as part of their going toward a plan of reorganization." *In re Cred Inc.*, No 20-12836 (JTD) (Dec. 18, 2020) [D.I. 277] (Dec. 18, 2020 Hr'g Tr. ("Cred Hr'g Tr.") at 113:23-25, 114:1-3.) That conclusion is even clearer here, where the Debtors have more than 9 million customers on their customer lists (*see* Cofsky Decl. ¶ 8) compared to 6,500 customers in *Cred* (*see* Cred Hr'g Tr. at 108:20-21.). The value of the Debtors' customer lists will likely have material value if maintained as confidential. (Cofsky Decl. ¶ 10.) In addition, the Debtors are requesting relief for only a limited period of 6 months, subject to the right to come back to the Court and seek an extension of the time period.

19. The U.S. Trustee's assertion that "it is difficult to imagine" how disclosure of names could allow competitors to poach the Debtors' customers (UST Obj. ¶ 60) rings hollow. Anyone with access to a computer and an internet search browser could undoubtedly find a significant number of addresses and thus customer leads if provided the opportunity to mine more than 9 million names worldwide. It is not only easy to imagine how the Debtors would be harmed; Mr. Cofsky confirms that many valuable customers could be located through

internet searches or otherwise by names alone, and the publication of this information would substantially harm the value of the Debtors' assets and undermine their ability to obtain the highest and best value for those assets. (Cofsky Decl. ¶ 9.) The Court in *Cred* recognized that "the goal . . . is to keep [the customer list] out of the hands of competitors." Cred Hr'g Tr. at 114:3, 9-10. The U.S. Trustee offers only a conclusory statement inviting a different conclusion here, which should be rejected.

20. In addition, the U.S. Trustee's reliance on the FTX Trading Ltd. Privacy Policy is misguided. The U.S. Trustee asserts that the customer list "is not secret or confidential" because the Privacy Policy provides that FTX Trading Ltd. may disclose the information to others. (UST Obj. ¶¶ 58-59). This is wrong. To the contrary, FTX Trading Ltd.'s Privacy Policy contemplates only that, in the event of a sale, merger or reorganization, "*information may be sold or transferred as part of such a transaction*." That language contemplates transfer to a buyer, not public disclosure. Similarly, the provision permitting disclosure *if required* to comply with law enforcement or legal process plainly contemplates maintaining confidentiality where possible. There is nothing in the Privacy Policy, which is only applicable to certain of the Debtors, that is inconsistent with the Debtors seeking to maintain the confidentiality of the customer lists as assets of the estates.

21. Finally, the U.S. Trustee posits, without any evidence, that the redaction of customer names and institutional customer addresses would somehow prevent the proper administration of these Chapter 11 Cases. (UST Obj. ¶ 55.) Not so. All necessary information will be provided to individual creditors, and all parties-in-interest retain the right to seek copies of any redacted document from the Debtors or, if necessary, the Court. Any concern is further mitigated by the proposed time period for redactions being limited at this time to 6 months. This

avoids the need, for example, to address redaction of the customer names from documents filed in connection with customer claims or related claims administration matters.

22. The Debtors' limited request for relief pursuant to section 107(b)(1) of the Bankruptcy Code should be granted.

## II. Section 107(c)(1) Provides an Independent Basis to Redact All Customer Names and Addresses

23. As set forth in the Motion, the Debtors believe that cause exists to redact all customer names and addresses pursuant to section 107(c)(1) of the Bankruptcy Code. However, this question and the embedded one of permanently sealing all customer names and institutional customer addresses need not be addressed or resolved by the Court at this time if the Debtors' request to redact for the next 6 months pursuant to section 107(b)(1) is granted. The Debtors reserve all rights with respect to section 107(c) and otherwise.

## III. Cause Exists to Authorize the Debtors to Redact Individual Creditor and Equity Holder Names and Addresses Pursuant to the GDPR

24. The Debtors submit that there is also cause to authorize the redaction of individual non-customer creditor and equity holder names to comply with the GDPR. The Objectors' assertion that the Debtors should not be authorized to comply with the requirements of the GDPR should be rejected. Failure to comply with the GDPR would subject the Debtors to substantial potential fines and penalties to the detriment of the estates and the Debtors' creditors.

25. *First*, the GDPR plainly applies to the Debtors. The U.S. Trustee acknowledges (UST Obj. ¶ 39) that the Debtors are "data controllers" under the GDPR. GDPR Art. 4(7). Pursuant to Article 6 of the GDPR, the Debtors must therefore have a legal basis to process the personal data of EU or UK data subjects. GDPR Art. 6(1). "Personal data" includes "any information relating to an identified or identifiable natural person." GDPR Art. 4(1). While the U.S. Trustee notes that processing of personal data is lawful if it is "necessary for

compliance with a legal obligation to which the controller is subject" (UST Obj. ¶ 42 (citing GDPR Art. 6(1))), the U.S. Trustee ignores that any such legal obligation "should have a basis in Union or Member State law"—not U.S. law. GDPR Art. 6(1), Recital 45. None of the other legal bases for processing data contained in Article 6 apply here.

26. The U.S. Trustee argues that the GDPR "facially appears to permit the disclosure" of the personal data of covered individuals because the "transfer" is "necessary for the establishment, exercise or defence of legal claims." (UST Obj. ¶ 76 (citing GDPR Art. 49(1)(e)).) This argument conflates "processing" and "transferring," which are subject to separate and independent requirements in the GDPR. The "Legal Claim Exception" contained in Article 49 of the GDPR applies only to the *transfer* of personal data from an EU member state or the UK to another country. *See* GDPR Art. 49. It does not provide an independent basis for a company subject to the GDPR to *process* personal data under Article 6 of the GDPR, which includes public disclosure. Rather, Article 6 of the GDPR explicitly states that processing "shall be lawful only if and to the extent that at least one of the" legal bases set out in Article 6 applies. *See* GDPR Art. 6. The Legal Claim Exception is not one of those listed legal bases.

27. Violations of the GDPR come with substantial potential fines. (*See* Mot. ¶ 20 n.4.) It is of course easy for the Media Objectors—entities with no economic stake in these Chapter 11 Cases—to dismiss the tens of millions of dollars of value that would potentially be lost if the Debtors are not authorized to redact the names of individual creditors covered by the GDPR. (Media Obj. ¶ 20.) The Debtors, on behalf of their estates and stakeholders who have an interest in recovering on their claims, do not want to see assets dissipated in such manner. The

Debtors believe that the redaction of names protected by the GDPR is in the best interests of the Debtors, their estates and their creditors.[9]

28.  *Second*, the risks to the Debtors of non-compliance, combined with the expectation of privacy among protected individual customers, have historically resulted in this type of relief being routinely granted as a matter of course by this Court and other courts in this district.  *See, e.g.*, *In re Mallinckrodt Plc*, No. 20-12522 (JTD) (Nov. 14, 2020), D.I. 464 (authorizing the redaction of names and addresses of individuals protected by the GDPR); *In re Glob. Eagle Ent. Inc.*, No. 20-11835 (JTD) (July 23, 2020), D.I. 76 (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (June 11, 2021), D.I. 62 (authorizing debtors to redact names and addresses of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Mar. 16, 2021), D.I. 78 (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (July 13, 2020), D.I. 243 (authorizing the redaction of names and addresses of individuals protected by the GDPR); *In re Akorn, Inc.*, No. 20-11177 (KBO) (May 22, 2020), D.I. 74 (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Feb. 4, 2020), D.I. 155 (same).

29.  The U.S. Trustee invites this Court to reverse course based on language contained in the court's opinion in *Celsius* denying related relief.  *See In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022).  The Debtors respectfully disagree with the conclusion reached in that case denying the request to redact customer names, including under the GDPR.  The Objectors provide no basis for this Court to abandon its prior rulings.  Rather,

---

[9]  The Debtors reserve all rights with respect to seeking to permanently redact names of creditors who are citizens of other countries with similar laws if subsequently advised by counsel to be necessary.

the Court should reaffirm the importance of compliance with the GDPR, consistent with the practice in this district.

30. The Debtors are requesting that, supplementing the relief sought with respect to customers, they be permitted to permanently maintain redactions as to individual creditor and equity holder names for those who are citizens of countries protected by the GDPR.

## Conclusion

31. For the reasons stated above, the Court should overrule the Objections, grant the modified relief requested herein, and enter the Revised Order.

| | |
|---|---|
| Dated: January 8, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>          brown@lrclaw.com<br>          pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>          bromleyj@sullcrom.com<br>          gluecksteinb@sullcrom.com<br>          kranzleya@sullcrom.com<br><br>*Proposed Counsel for the Debtors*<br>*and Debtors-in-Possession* |