# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Nos. 233, 329, 358, 371, 400, 405** |

**DEBTORS' REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BID PROCEDURES, STALKING HORSE PROTECTIONS AND THE FORM AND MANNER OF NOTICES FOR THE SALE OF CERTAIN BUSINESSES, (B) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (C) SCHEDULING AUCTION(S) AND SALE HEARING(S) AND (II)(A) APPROVING THE SALE(S) FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this reply (the "Reply") in support of the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s) and (II)(A) Approving the Sale(s) Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [D.I. 233] (the "Motion")[2] and in response to (i) the objections to the Motion filed by John Mallon ("Mallon") on December 29, 2022 [D.I. 329, 358] (together, the "Mallon Objection"),

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Revised Bid Procedures Order, as applicable.

(ii) the reservation of rights and limited objection to the Motion filed by the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") on January 4, 2023 [D.I. 371] (the "Ad Hoc Committee Objection"), (iii) the objection to the Motion filed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") on January 7, 2023 [D.I. 400] (the "UST Objection" and, together with the Mallon Objection and the Ad Hoc Committee Objection, the "Objections") and (iv) the reservation of rights regarding the Motion filed by the Official Committee of Unsecured Creditors (the "Official Committee") on January 8, 2023 [D.I. 405] (the "UCC Reservation of Rights"). In support of this Reply, and in further support of this Motion, the Debtors rely on the declarations of Kevin Cofsky (the "Cofsky Declaration") and Brian D. Glueckstein (the "Glueckstein Declaration"), each filed contemporaneously herewith. The Objections should be overruled and the Motion should be granted. In further support of their Reply, the Debtors respectfully state as follows:

**Preliminary Statement**

1. On November 19, 2022, the Debtors announced that they would be launching a strategic review of their global assets to begin maximizing recoverable value for stakeholders. As part of such review, the Debtors decided to prioritize a process to solicit bids for the Embed, LedgerX, FTX Japan and FTX Europe Businesses. As noted in the Cofsky Declaration, the Debtors considered a number of factors in making this decision, including the potential value of the Businesses; uncertainty as to whether the potential value of the Businesses could be preserved for the duration of these Chapter 11 Cases; the costs of supporting the Businesses; the relative independence of the Businesses from the rest of the Debtors' operations, holdings and investments; certain regulatory and commercial pressures to separate certain of the Businesses from these Chapter 11 Cases; the informational advantages of having a competitive

process to determine the market value of the Businesses; and significant interest from potential acquirers. (Cofsky Declaration ¶ 9.)

2. As the Debtors have stated in the Motion, the Debtors have *not* made any decision to sell the Businesses. Any proposed Sale will be subject to corporate approvals, notice and opportunity for interested parties to object, as well as the approval of the Court. However, the Debtors believe that it is important for the bidding process for the Businesses to proceed on the timelines set forth in the Revised Bid Procedures Order, as this will allow the Debtors to better understand the market value of the Businesses and assess strategic alternatives.

3. To that end, the Debtors have worked diligently to address the formal and informal feedback received from stakeholders on the Bid Procedures Order and the Bid Procedures attached thereto, including feedback from the U.S. Trustee, the Official Committee and many other objectors and parties in interest. The Debtors have amended the requested relief as necessary to alleviate concerns, as reflected in the revised proposed Bid Procedures Order (the "Revised Bid Procedures Order"), attached hereto as Exhibit A.[3]

4. Nevertheless, a few Objections to the Bid Procedures remain at this time. As further explained below, the Debtors submit that the Court should overrule the remaining Objections and enter the Revised Bid Procedures Order.

## **Reply**

**I. UST Objection**

5. In general, the U.S. Trustee's objections to the Motion are objections to a sale, and not to the relief sought from the Court related to the proposed bidding process as set

---

[3] A redline of the Revised Bid Procedures Order against the original Bid Procedures Order filed with the Motion is attached hereto as Exhibit B.

-3-

forth in the Revised Bid Procedures Order. The Debtors address each of the U.S. Trustee's objections in detail below.

6.     *First*, the U.S. Trustee objects on the basis that the Debtors have not provided sufficient information regarding the businesses that the Debtors seek to sell, and requests that the Debtors (i) file their proposed form of asset purchase or stock sale agreement prior to the hearing on Bid Procedures and (ii) file the schedules of assets and liabilities ("Schedules"), statements of financial affairs ("Statements") and Rule 2015.3 reports of at least those Debtors whose assets and/or equity the Debtors seek to sell, no less than 14 days in advance of each applicable sale hearing.

7.     It is not unusual in cases before courts in this district for forms of purchase agreement to be filed subsequent to the entry of the bid procedures order, so long as potential parties-in-interest have sufficient time to review the proposed purchase agreement in advance of the sale hearing. *See, e.g.*, *In re Fast Radius, Inc.*, No. 22-11051 (JKS) (Nov. 14, 2022), D.I. 77; *In re Ruby Pipeline, L.L.C.*, No. 22-10278 (CTG) (Sep. 8, 2022), D.I. 354; *In re First Guaranty Mortgage Corp.*, No. 22-10584 (CTG) (Sep. 7, 2022), D.I. 406; *In re Cred Inc.*, No. 20-12836 (JTD) (Dec. 21, 2020), D.I. 270; *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Nov. 20, 2020), D.I. 585. The Debtors submit that, for purposes of entering the Revised Bid Procedures Order that is now before the Court, they have adequately described the Businesses that they are proposing to market pursuant to the Bid Procedures, namely, (i) 100% of the common stock of non-Debtor Embed Financial Technologies Inc. held by Debtor West Realm Shires Inc.; (ii) 100% of the interests in LedgerX LLC held by Debtor Ledger Holdings Inc.; (iii) 100% of the interests in FTX Japan Holdings held by Debtor FTX Trading Ltd. or separate sales of 100% of the interests in FTX Japan or FTX Singapore held by FTX Japan Holdings; and (iv) 100% of

the interests in FTX Europe held by FTX Trading or sales of stock and/or assets of FTX Europe and/or its subsidiaries.[4]

8. Further, as noted in the Motion, the Debtors intend to file forms of purchase agreements and proposed Sale Orders with the Court following the applicable Preliminary Bid Deadline. The Revised Bid Procedures Order clarifies that the Debtors will make such filings at least two weeks prior to the applicable Sale Objection Deadline, providing parties in interest with adequate time to review the detailed provisions contained in the forms of purchase agreements and proposed Sale Orders. As indicated in the concurrently filed *Debtors' Reply in Support of Motion of Debtors for Entry of an Order Extending the Time to File (A) Schedules of Assets and Liabilities and Statements of Financial Affairs and (B) Rule 2015.3 Financial Reports*, no later than ten days prior to the hearing to approve a sale of all or substantially all of a Debtor's assets (other than such Debtor's interests in a non-Debtor subsidiary), the Debtors will file Schedules and Statements of the applicable selling Debtor and if the sale is of such selling Debtor's interests in a Debtor subsidiary, such subsidiary. Additionally, if the Debtors seek to sell any Debtor's equity interest in a non-Debtor subsidiary, no later than ten days prior to the hearing to approve such sale, the Debtors will file the Rule 2015.3 report with respect to such non-Debtor subsidiary. As a result, any parties-in-interest to a sale of any of the Businesses shall have adequate information and disclosure regarding the Business and the terms and conditions of such sale sufficiently ahead of the applicable Sale Objection Deadline.

---

[4] The Bid Procedures and form of Sale Notice attached to the revised Bid Procedures Order now lists the subsidiaries of FTX Europe, which were indicated on the organizational chart attached as Schedule 1 to the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92].

9.      *Second*, the U.S. Trustee requests that the Debtors be prohibited from selling any estate causes of action against any person or entity.  The Debtors have clarified in the Revised Bid Procedures Order that they will not sell any causes of action against any of Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons in connection with the Sale(s) (Revised Bid Procedures Order, ¶ 16).  However, it is certainly possible that, in connection with any Sales, a potential purchaser of any of the Businesses would seek to acquire causes of action against other directors, officers or employees to ensure separation from the estate and reduce potential distractions to the Business and management from ongoing estate claims; in fact, a seller release is a customary term of many acquisition agreements.  While the Debtors have not made a decision to sell any estate causes of action, the Debtors are seeking flexibility to potentially sell certain causes of action to a potential purchaser of a Business to the extent doing so would facilitate the broader Sale or maximize the value of the Sale.  The Debtors will be prepared to provide an evidentiary basis for all relief or authorization requested in connection with any sale of the Businesses, and parties-in-interest will have the ability to object to the Sale of any such claims at such time.

10.      *Third*, the U.S. Trustee seeks to require that the Debtors keep copies of all records they sell or transfer.  The Debtors can confirm that they intend to retain copies of any books and records relevant to any current or future litigation, investigation into avoidance actions or other matters, as well as for other customary purposes such as tax filing and the preparation of financial reports.  The proposed purchase agreements will include provisions relating to the Debtors' retention of records with respect to the Businesses, and the U.S. Trustee and other

interested parties will have the opportunity to review the documentations and raise any objections prior to entry of the applicable Sale Order.

          11.     *Fourth*, the UST Objection calls on the Debtors either to establish that a consumer privacy ombudsman is not required in connection with the proposed Sales, or to amend the proposed Bid Procedures Order to direct the U.S. Trustee to appoint a consumer privacy ombudsman (*see* UST Objection, ¶ 32).  Section 363(b)(1) of the Bankruptcy Code requires the appointment of a consumer privacy ombudsman for the sale of personally identifiable information if, in connection with offering a product or service, the debtor "discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case," unless the sale is consistent with such policy.  As discussed in further detail below, the Debtors submit that a consumer privacy ombudsman will not be required for any Sale of the Businesses:

- Embed:  To the extent any personally identifiable information about individuals will be transferred in connection with a sale of the Embed Business, a consumer privacy ombudsman will not need to be appointed because (i) Embed Technologies and its operating subsidiary, Embed Clearing, are both non-Debtors and (ii) Embed does not have individual customers and only offers products or services to a small number of enterprise and corporate customers.

- LedgerX:  As is the case with Embed, LedgerX is also not a Debtor.  However, LedgerX does offer products or services to individuals and its holding company, Ledger Holdings Inc., is a Debtor.  The Debtors submit that any sale or transfer of personally identifiable information about individuals will be consistent with LedgerX's privacy policy in effect

on the applicable date of commencement of these Chapter 11 Cases (*i.e.*, November 11, 2022).[5] Section 4C of such privacy policy states: "If we are involved in a merger, acquisition, financing due diligence, reorganization, bankruptcy, receivership, purchase or sale of assets, or transition of service to another provider, your information may be sold or transferred as part of such a transaction, as permitted by law and/or contract."

- FTX Europe:  In connection with the offering of products and services by FTX Europe and its subsidiaries, the Debtors disclosed to individuals a privacy policy in effect as of the applicable commencement date (*i.e.*, November 11, 2022) that generally prohibits FTX EU Ltd (f/k/a K-DNA Financial Services Ltd) from transferring personal information to non-affiliated persons but includes an exception for disclosure "[t]o permitted successors or assignees or transferees or buyers, with fifteen (15) Business Days prior written notice to the Client."[6]  The Debtors intend to provide notice consistent with this policy to Clients of FTX EU Ltd in connection with any sale of their personally identifiable information.

- FTX Japan:  In connection with the offering of products and services by FTX Japan and FTX Singapore, the Debtors disclosed two privacy policies to individuals, each in effect as of the applicable commencement date (*i.e.*, November 11, 2022).

    o FTX Japan disclosed a privacy policy only applicable to users who reside in Japan that generally prohibited its disclosure of personal information to third parties

---

[5] A copy of such privacy policy is attached as Exhibit 1 to the Glueckstein Declaration and available at https://assets-global.website-files.com/625f3cf193eb0bdbf6469cba/62681e1f5b1782599b315bdf_Appendix F - FTX US Derivatives - Online Privacy Policy (Final as of 2022-03).pdf.

[6] A copy of such privacy policy is attached as Exhibit 2 to the Glueckstein Declaration and available at https://help-eu.ftx.com/hc/en-us/article_attachments/9752759908891/PRIVACY_POLICY_FTX_EU_Oct_2022.pdf.

without prior consent from the user, but exempted "[c]ases in which personal information is provided as a result of the succession of business due to merger or other reasons."[7]  Thus, any sale of personally identifiable information of individual FTX Japan users who were provided this policy in connection with FTX Japan's product and service offerings will be consistent with this policy.

- o FTX Singapore also disclosed to individuals a privacy policy applicable only to users residing outside of Japan.[8]  This policy expressly provided that FTX Singapore "may share your information with companies or other entities that purchase [FTX Singapore]'s assets pursuant to a court-approved sale under applicable bankruptcy laws."

12.     Based on the foregoing, the Debtors submit that no appointment of a consumer privacy ombudsman is required in connection with the Sale(s).

## II.     Ad Hoc Committee Objection

13.     As an initial matter, the Court should not consider the Ad Hoc Committee Objection at all.  Pursuant to Bankruptcy Rule 2019, the Ad Hoc Committee is required to file a verified statement setting forth certain information identifying the formation and membership of its group.  *See* Rule 2019(b)(1).  The Ad Hoc Committee has not filed such a statement, has not sought relief from the Court with respect to this requirement and has not informed the Debtors of whom it represents.  Pursuant to Bankruptcy Rule 2019(e), the Court may—and should—refuse

---

[7]  A copy of such privacy policy is attached as Exhibit 3 to the Glueckstein Declaration and available at https://support-jp.liquid.com/hc/ja/article_attachments/11469769466765/_____202204.pdf.  A certified translation into English of the policy is attached as Exhibit 4 to the Glueckstein Declaration.

[8]  A copy of such privacy policy is attached as Exhibit 5 to the Glueckstein Declaration and available at https://quoine-prod.s3.amazonaws.com/uploads/policy_document/term_document/116/Liquid_Privacy_Policy_and_Cookie_Policy__Global__v2.00__Final_2019.03.06_.pdf.

to permit the Ad Hoc Committee to be heard on this issue due to its failure to comply with this requirement.  Moreover, without providing this information, the Ad Hoc Committee cannot establish standing as a party-in-interest.  Its objection should be rejected on this basis alone.

14.    The Ad Hoc Committee Objection includes a reservation of rights describing misguided potential objections to approval of any sale.  To be clear, the Debtors disagree completely with the substance of these potential objections.  However, no sale is before the Court at this time.  With respect to the relief the Debtors are seeking by the Revised Bid Procedures Order, the Ad Hoc Committee objects only on the limited basis that their professionals are not included as "Consulting Professionals."  This term is defined in the Bid Procedures as the legal counsel and lead financial advisor to the Official Committee.  The Bid Procedures provide that the Debtors will consult with the Consulting Professionals on major business judgments throughout the sale process, including the qualification of bidders, the extension to any bidder of stalking horse protections, the selection of successful bid(s) and any back-up bids and certain changes in procedures as the sale process progresses in order to maximize the value of bids received.  The role of Consulting Professionals provided for in the Bid Procedures is in contemplation of an important role in the sale process for the Official Committee, which is the only official committee that has been appointed in these Chapter 11 Cases.

15.    The Debtors do not agree that professionals to the undisclosed Ad Hoc Committee should be included as Consulting Professionals in the Bid Procedures on par with the professional advisors to the Official Committee.  There is no evidence as to members of the Ad Hoc Committee, or whether they have any claim.  Moreover, unlike the Official Committee, the members of the Ad Hoc Committee have no fiduciary duty to other creditors and are not subject

to the disclosure, confidentiality and securities trading restrictions applicable to the Official Committee. Similarly, the professionals to the Ad Hoc Committee are not subject to the professional retention requirements of the Bankruptcy Code. It is not appropriate to equate the Ad Hoc Committee with the Official Committee.

16.     Moreover, there is nothing about the Businesses or the potential Sales that raises any special issue for the Ad Hoc Committee as a group of customers of FTX.com. The stakeholders of the Debtors include the putative members of the Ad Hoc Committee (if any are creditors), all other customers and creditors of FTX.com, all customers and creditors of FTX US, all creditors of other Debtors around the world, hundreds of third-party equity investors and regulators and law enforcement in dozens of countries. Many of these parties have compelling indirect economic or other interests in the property that may be sold—which consists not of cryptocurrency or customer assets associated with FTX.com but of operating businesses. There is no evidence in the record at this time to support a claim that customer entitlements at FTX.com somehow give rise to a property interest in the Businesses, or indeed any property interest at all.

**III.    The Mallon Objection**

17.     Mr. Mallon objects to a potential Sale of the FTX Europe Business and particularly objects to a potential Sale free of claims, as Mr. Mallon believes that he may have a secured claim over assets held by FTX Switzerland GmbH or FTX Europe, or may be a secured creditor of FTX Switzerland GmbH or FTX Europe. As previously noted, the Debtors are not seeking approval for any sale at this point and have not yet determined whether they will ultimately seek to sell the FTX Europe Business or any of the other Businesses. In requesting that the Court enter the Revised Bid Procedures Order, the Debtors only seek the Court's approval of procedures by which Debtors may market the Businesses up to selecting a Successful

Bidder; any proposed Sale would be subject to further approval of the Court. If Mr. Mallon has any objections to a potential sale of FTX Europe, such concerns should be heard at the applicable Sale Hearing, should Debtors decide to seek approval of a sale of the FTX Europe Business.

### IV. The UCC Reservation of Rights

18. The Debtors note the UCC Reservation of Rights filed by the Official Committee filed shortly before this Reply. The Debtors have worked with the Official Committee over the past days to address their concerns with the Bid Procedures and Bid Procedures Order, substantially all such concerns have been addressed with mutually satisfactory language, and the Debtors understand the Official Committee has no objection to the entry of the requested relief at the Bid Procedures Hearing.

**Conclusion**

20. For the reasons stated above, the Court should overrule the Objections, grant the Motion and enter the Revised Bid Procedures Order.

| | |
|---|---|
| Dated: January 8, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>        brown@lrclaw.com<br>        pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>        bromleyj@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        kranzleya@sullcrom.com<br><br>*Proposed Counsel for the Debtors<br>and Debtors-in-Possession* |