# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref. No. 233 |

**DECLARATION OF KEVIN M. COFSKY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BID PROCEDURES, STALKING HORSE PROTECTIONS AND THE FORM AND MANNER OF NOTICES FOR THE SALE OF CERTAIN BUSINESSES, (B) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (C) SCHEDULING AUCTION(S) AND SALE HEARING(S) AND (II)(A) APPROVING THE SALE(S) FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES</u>**

I, Kevin M. Cofsky, hereby declare as follows:

1. I am a Partner in the Advisory Group at Perella Weinberg Partners L.P. ("<u>PWP</u>"), a financial advisory firm that maintains an office at 767 5th Avenue, New York, New York 10153, and the Debtors' proposed investment banker. PWP is a full-service investment banking firm providing strategic and financial advisory services, including with respect to mergers and acquisitions, capital raising and restructuring transactions across a broad range of industries. PWP and its senior professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out of court and in Chapter 11 proceedings.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2.      I have been employed by PWP since January 2007 and have been a Partner of PWP since December 2015.  I received a Bachelor of Science degree in Economics with a concentration in Finance from the Wharton School of Business at the University of Pennsylvania, a Juris Doctor from the University of Pennsylvania Law School and a Masters of Government Administration from the Fels Center of Government at the University of Pennsylvania.

3.      I started my career in investment banking as an Analyst with Houlihan Lokey Howard & Zukin.  Thereafter, I was an Associate with The Beacon Group and, prior to joining PWP, I was a Managing Director with Evercore Partners in its Capital Structure Advisory and Restructuring group.  I have also clerked for Chief Justice Portiz in the New Jersey Supreme Court and was an associate with Cravath, Swaine and Moore.

4.      In addition to working with the Debtors in the above-captioned cases (the "Chapter 11 Cases"), my restructuring and financial advisory engagements have included representations of debtors and creditors in the following chapter 11 cases:  *In re PG&E Corp.*, No. 19-30088 (Bankr. N.D. Cal.); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.); *In re R.E. Gas Development, LLC*, No. 18-22032 (Bankr. W.D. Pa.); *In re Bonanza Creek Energy, Inc.*, No. 17-10015 (Bankr. D. Del.); *In re Memorial Production Partners LP*, No. 17-30262 (Bankr. S.D. Tex.); *In re EV Energy Partners, L.P.*, No. 18-10814 (Bankr. D. Del.); *In re Atlas Resource Partners, L.P.*, No. 16-12149 (Bankr. S.D.N.Y.); and *In re Edison Mission Energy*, No. 12-49219 (Bankr. N.D. Ill.).

5.      I submit this declaration (this "Declaration") in support of the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and*

*Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s) and (II)(A) Approving the Sale(s) Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [D.I. 233] (the "<u>Motion</u>")[2] and the *Debtors' Reply in Support of Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s) and (II)(A) Approving the Sale(s) Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "<u>Reply</u>").

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"); (ii) information learned from my review of relevant documents; and/or (iii) information supplied by members of the Debtors' management, employees of PWP working directly with me or under my supervision, direction or control and/or from the Debtors' other professionals and advisors.

7. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. I am not being compensated for this testimony other than through payments to be received by PWP as a professional the Debtors are seeking to retain; none of those payments are specifically payable on account of this testimony. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

**Marketing and Sale Process**

8. PWP was engaged by the Debtors effective November 16, 2022 to provide financial advisory, restructuring, financing and sale services to the Debtors during these Chapter 11 Cases. PWP has assisted the Debtors in their exploration and evaluation of strategic alternatives for maximizing the value of and monetizing their diverse, global assets. This has included review of documents regarding the Debtors' businesses and investments, discussions with management of the Debtors and their affiliates, discussions with businesses in which the Debtors have made investments, and coordinating and initiating discussions with potential purchasers.

9. Following a strategic review, the Debtors decided to prioritize a bidding process for the Embed, LedgerX, FTX Japan and FTX Europe Businesses in consideration of, among other things, the following: the potential value of the Businesses; uncertainty as to whether the potential value of the Businesses could be preserved for the duration of these Chapter 11 Cases; the costs of supporting the Businesses; the relative independence of the Businesses from the rest of the Debtors' operations, holdings and investments; certain regulatory and commercial pressures to separate certain of the Businesses from these Chapter 11 Cases; the informational advantages of having a competitive process to determine the market value of the Businesses; and significant interest from potential acquirers.

10. The Debtors have instructed PWP that the Debtors have made no decision to sell any Business and that any sale shall be subject to corporate approvals not yet obtained, as well as the approval of this Court.

11. PWP is assisting the Debtors in their marketing process to further solicit interest in the Businesses from potential purchasers. Such efforts have included creating and reaching out to a proprietary list of potential acquirers for each of the Businesses. PWP also prepared and

began circulating a process letter to interested parties summarizing the proposed Bid Procedures and sale timelines for each of the Businesses on December 19, 2022, following the Debtors' filing of the Motion and issuance of a press release on December 16, 2022 announcing that such filing had been made.

12. As of the date hereof, approximately 117 parties, including various financial and strategic counterparties globally, have expressed interest to the Debtors in a potential purchase of one or more of the Businesses. As of the date of this Declaration, the Debtors have entered into 59 confidentiality agreements with potential counterparties who have expressed interest in any one or more of the Businesses, and are in the process of entering into a number of additional confidentiality agreements with potential counterparties. The current statuses of the marketing processes for each Business are as follows:

- <u>Embed</u>: Approximately 50 parties have expressed interest in the Embed Business, with 31 having entered into confidentiality agreements with the Debtors. PWP has spoken with 42 interested parties. PWP also has worked with Embed's management to prepare a management presentation, which has been uploaded with certain preliminary diligence materials to a data room shared with Potential Bidders on December 19, 2022.

- <u>LedgerX</u>: Approximately 56 parties have expressed interest in the LedgerX Business, with 32 having entered into confidentiality agreements with the Debtors. PWP has spoken with 42 interested parties. PWP also has worked with LedgerX's management to prepare a management presentation, which has been uploaded with certain preliminary diligence materials to a data room shared with Potential Bidders on December 19, 2022.

- <u>FTX Japan</u>:  Approximately 41 parties have expressed interest in the FTX Japan Business, with 25 having entered into confidentiality agreements with the Debtors. PWP has spoken with 31 interested parties.  PWP has had extensive conversations with management of FTX Japan to develop a management presentation and is in the process of preparing a data room containing diligence materials.  FTX Japan also published an update for its users dated December 22, 2022, which highlighted key aspects of the Bid Procedures with respect to the FTX Japan Business.

- <u>FTX Europe</u>:  Approximately 40 parties have expressed interest in the Business, with 23 having entered into confidentiality agreements with the Debtors.  PWP has spoken with 33 interested parties.  PWP has had extensive conversations with management of FTX Europe to develop a management presentation and is in the process of preparing a data room containing diligence materials.

13. Parties who express interest in any of the Businesses, are determined by the Debtors to have delivered reasonably satisfactory Preliminary Documents and with whom the Debtors execute a confidentiality agreement will receive access to virtual data room(s) established by PWP containing a management presentation for the applicable Business(es) and other diligence information regarding the relevant business, operations, finances and technology.

### **The Proposed Bid Procedures**

14. Based on my experience, the approval of the proposed Bid Procedures by this Court is reasonably likely to improve the efficiency and quality of the process the Debtors will be conducting to receive and evaluate bids, negotiate terms and conditions, conduct the Auction(s), determine the highest or otherwise best bid(s), decide whether or not to sell any

Business and prepare for Court approval of any sale transaction relating to a Business if a decision to sell the Business is made by the Debtors..

15. Based on my experience, I believe that the Bid Procedures, including the timelines, the proposed diligence process, the requirements to qualify as a Qualified Bid and the auction procedures are reasonable under the circumstances and will provide parties with sufficient time and information to submit bids for one or more of the Businesses. In my view, I do not believe that additional time will result in more expressions of interest than the current proposed timelines. I believe this based on the fact that the Businesses are being marketed extensively and, in the unlikely event PWP's efforts have not directly targeted an interested party, the notoriety and extensive press coverage regarding these Chapter 11 Cases has reached the universe of potential interested parties. The timelines also reflect due process considerations and adequate notice periods for parties-in-interest consistent with other bankruptcy cases before this court and others. The Bid Procedures are, in my opinion, consistent with procedures in similar transactions and with the expectations of potential bidders. Moreover, the Bid Procedures will enable the Debtors to solicit and evaluate competing bids for the Businesses and select the highest or otherwise best offer(s) for the Businesses.

### The Proposed Stalking Horse Procedures

16. The revised form of proposed order and Bid Procedures attached to the Reply sets forth the proposed procedures to award Bid Protections to one or more Stalking Horse Bidders, including a cash break-up fee of up to 3.0% of the value of the consideration to be paid by the Stalking Horse Bidder for the applicable Business(es) and reimbursement of reasonable and documented out-of-pocket expenses incurred by the Stalking Horse Bidder in an amount up to 0.5% of the Stalking Horse Purchase Price; provided that the Expense Reimbursement Amount will not exceed $1,250,000 for any individual Business; provided, further, that any Bid

Protections are subject to further approval of the Bankruptcy Court as set forth in the Bid Procedures Order.

17. Based on my experience with sale transactions and my review of multiple bid protection packages agreed to by debtors and approved by bankruptcy courts, I believe that the Bid Protections and timelines in the Stalking Horse Procedures are appropriate and customary for sale transactions of this type and that the amounts are reasonable and generally consistent with such amounts in comparable circumstances. While the Debtors are not committed to offering or seeking approval of the Bid Protections at this time, the Debtors' ability to attract a prospective Stalking Horse Bidder by offering the Bid Protections may help set a floor for the value of the applicable Business(es) and attract other potential buyers, thereby maximizing the realizable value of the Business(es) for the benefit of the Debtors' estates, their creditors, and all other parties in interest. Moreover, based on my experience, I believe it is likely that many prospective Stalking Horse Bidders will not agree to act as a stalking horse without the Bid Protections. Accordingly, without the Court authorizing the Stalking Horse Procedures, the Debtors might lose the opportunity to obtain the highest or otherwise best offer for the Businesses and the downside protection that could be afforded by the existence of a Stalking Horse Bidder to the detriment of all stakeholders.

18. Based on my experience, the timelines in the Stalking Horse Procedures strike a reasonable balance between the Debtors' need for flexibility to designate one or more Stalking Horse Bidders expeditiously in order to maximize value and the need to provide interested parties with sufficient time to review and raise any objections to a proposed award of Bid Protections. Thus, I believe that the Stalking Horse Procedures are fair, reasonable and in the best interests of the Debtors and their estates.

19. I believe that the competitive bidding and auction process established by the Bid Procedures will enable the Debtors to realize the highest or otherwise best offer for the Businesses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January 8, 2023.

*/s/ Kevin M. Cofsky*
Kevin M. Cofsky
Partner
Perella Weinberg Partners LP