# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX Trading Ltd., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing date: January 20, 2023 at 10:00a.m.**<br>**Objection Deadline: January 4, 2023 at 4:00p.m.** |

## AMENDED OBJECTION TO DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SULLIVAN & CROMWELL LLP AS COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

This proceeding arises from one of the most disastrous corporate frauds in history. Sam Bankman-Fried and his enablers used the FTX Group[2] entities to run a massive, years-long scheme to misappropriate billions of dollars worth of cryptocurrency and cash. Two of the FTX Group's leaders have now pleaded guilty to a litany of federal crimes, and much about the FTX Group's operation has been revealed in pleadings before this Court, in congressional testimony, and in the media.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] This Objection refers to the more than 130 FTX-related entities that are debtors and debtors-in-possession in this proceeding as the "FTX Group," consistent with John J. Ray III's terminology in his first-day declaration.

Sullivan & Cromwell was one of the FTX Group's "primary external law firms" before the FTX Group collapsed.[3] To date, the FTX Group has paid the firm more than $20.5 million in fees and retainers. Now, in the most flagrant attempt by a fox to guard a henhouse in recent memory, Sullivan & Cromwell has applied to be appointed the FTX Group's bankruptcy counsel with duties that would include "investigating all potential estate causes of action."[4] But it has revealed almost nothing about its prepetition work for Sam Bankman-Fried's fraudulent enterprise— and failed to disclose or elided glaring conflicts of interest.

Sullivan & Cromwell is not only an inappropriate candidate for appointment as the FTX Group's bankruptcy counsel—it is a target for investigation with its own potential liability. Its appointment as counsel would endanger the estate and create a rigged game, undermining creditors' and the public's faith in the bankruptcy process. The Court should therefore reject Sullivan & Cromwell's application and disqualify it from appointment as Debtors' counsel.

## I.    Background

1.    The FTX Group entities were at the center of a massive fraud, the outlines of which are now well documented. Sam Bankman-Fried and his enablers created two cryptocurrency exchanges—FTX and FTX US—and went to great lengths to convince the world they were trustworthy. But all along, Bankman-Fried and his cronies were "misappropriat[ing] customer funds for their own use and

---

[3] Ex. 1, Steven Ehrlich, *Exclusive Transcript: The Full Testimony Bankman-Fried Planned To Give To Congress*, Forbes (December 15, 2022) (henceforth "SBF Planned Testimony"), p. 8.

[4] *Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession Nunc Pro Tunc to the Petition Date* (henceforth, the "Application"), Dkt. 270 (filed Dec. 21, 2022), ¶ 10.

benefit," including for "trad[ing] on other digital asset exchanges and to fund a variety of high-risk digital asset industry investments."[5] It was, as John J. Ray III put it in congressional testimony, just "old fashioned embezzlement … taking money from customers and using it for your own purpose."[6]

2.      Contrary to the impression it now seeks to create, Sullivan & Cromwell's prepetition connections to the FTX Group are legion. Sam Bankman-Fried himself revealed that Sullivan & Cromwell was "one of the primary external law firms that represented FTX US as well as FTX International" before the FTX Group's collapse.[7] In addition, two former Sullivan & Cromwell lawyers sat at the top of the FTX Group's internal legal structure. FTX US's General Counsel, Mr. Ryne Miller, is a former Sullivan & Cromwell partner.[8] And FTX Ventures' General Counsel, Mr. Tim Wilson, is a former Sullivan & Cromwell associate.[9]

3.      Sullivan & Cromwell was compensated handsomely for its prepetition FTX-related legal work. The FTX Group paid the firm approximately $8.5 million in prepetition legal fees, including approximately $3.4 million in the 90 days before

---

[5] Ex. 2, Complaint, *Commodities Futures Trading Commission v. Bankman-Fried*, Case No. 22-cv-10503 (S.D.N.Y. 2022), at ¶¶ 7, 9; *see also United States v. Bankman-Fried*, Case No. 22-cr-00673 (S.D.N.Y. 2022), Dkt. 15, Order ("Defendants Ellison and Wang waived indictment … and pleaded guilty to each of the counts that were charged.").

[6] John J. Ray III, Live Testimony, *Investigating the Collapse of FTX, Part I, Before the U.S. House Committee on Financial Services*, 117th Cong., Dec. 13, 2022, https://www.youtube.com/live/rWAnrigAO3I?feature=share), at 1:36:24.

[7] Ex. 1, SBF Planned Testimony, p. 8.

[8] Ex. 3, Ryne Miller LinkedIn, at https://www.linkedin.com/in/ryne-miller-78a6b84/ (accessed Jan. 4, 2023), pp. 1-2.

[9] Ex. 4, Tim Wilson LinkedIn, at https://www.linkedin.com/in/timwilson-newyork-shanghai/ (accessed Jan. 9, 2023), p. 1.

the Petition Date, and a $12 million prepetition retainer.[10] To date, then, Sullivan & Cromwell has received cash transfers of at least $20.5 million from the FTX Group from July 2021 to the present—with $15.4 million paid during the 90-day prepetition preference period.[11]

4.    The FTX Group "went on a spending binge in late 2021 through 2022, during which approximately $5 billion was spent buying a myriad of businesses and investments, many of which may be worth only a fraction of what was paid for them."[12] The Securities and Exchange Commission has alleged that at least $200 million of this $5 billion investment spree was funnelled through "FTX's affiliated investment vehicle, FTX Ventures, Ltd." and funded by "FTX customer funds that had been diverted to Alameda."[13] Publicly available information shows that these

---

[10] Application, Ex. C, *Declaration of Andrew Dietderich* (henceforth, "Dietderich Declaration"), ¶¶ 5, 16. November 11, 2022 is the Petition Date for all Debtors except Debtor West Realm Shires, Inc., for which the Petition Date is November 14, 2022.

[11] Sullivan & Cromwell's Application notes that the $12 million prepetition retainer it received was used both to pay prepetition fees incurred and as a security for future bankruptcy-related services, but is unclear as to how much of the retainer was dedicated to each category. Accordingly, this Objection treats the preference payments and retainer outlined in Paragraph 5 of the Dietderich Declaration as separate, cumulative payments. The potential difference in payment figures has no bearing on the substance of this Objection for the reasons set out below.

[12] Ex. 5, John J. Ray III, Prepared Remarks, *Investigating the Collapse of FTX, Part I, Before the U.S. House Committee on Financial Services*, 117th Cong., Dec. 13, 2022, p. 6.

[13] Ex. 6, Complaint, *Securities & Exchange Commission v. Bankman-Fried*, Case No. 22-cv-10501 (S.D.N.Y. 2022), ¶ 74 ("[T]wo $100 million investments made by FTX's affiliated investment vehicle, FTX Ventures Ltd., were funded with FTX customer funds that had been diverted to Alameda.").

depositor-funded investments occurred during the period that Sullivan & Cromwell represented the FTX Group.[14]

5.      In its Application, Sullivan & Cromwell set out precisely three sentences describing the $8.5 million of prepetition legal work it did for the FTX Group, as follows:[15]

> A.      Prior Work for the Debtors
>
> 16.     S&C was engaged by the Debtors for a limited number of matters prior to the Petition Date, chiefly with respect to acquisition transactions and specific regulatory inquiries relating to certain U.S. business lines.  The total amount of fees and expenses paid to S&C for all of these matters was $8,564,487.50, over the period from July 2021 to the Petition Date.  S&C was not primary external counsel to any Debtor prior to the Petition Date.

6.      Sullivan & Cromwell's Application did not disclose the firm's connection to FTX US General Counsel Ryne Miller or FTX Ventures General

---

[14] *See id.* (describing "two $100 million investments made by FTX's affiliated investment vehicle, FTX Ventures, Ltd."); Ex. 7, Kadhim Shubber & Bryce Elder, *Revealed: the Alameda Venture Capital Portfolio*, Financial Times (December 16, 2022), *passim* (revealing leaked document containing FTX Group venture investment portfolio, showing only two entries in which FTX Ventures, Ltd. made approximately $100 million investments, in companies called "Dave, Inc." and "Mysten Labs"); Ex. 8, Brandy Betz, *FTX Invests $100m in Banking App Dave, Forms Partnership for Crypto Payments*, CoinDesk (March 21, 2022), p. 1 (noting that, in March 2022, "Dave, a publicly traded banking app, has made a strategic partnership with FTX US … [t]he company also received a $100 million investment from FTX Ventures, the exchange's $2 billion venture capital fund"); Ex. 9, Vicky Ge Huang, *Crypto Startup Mysten Labs Raises $300 Million in FTX-Led Round*, Wall Street Journal (Sep. 8, 2022), at pp. 1-2 (noting that Mysten Labs "raised $300 million in a funding round" in September 2022 and "FTX Ventures led the round").

[15] Dietderich Declaration, ¶ 16.

Counsel Tim Wilson. Nor did Sullivan & Cromwell's Application describe the work it did for the "Alameda Silo" entities, which were prepetition Sullivan & Cromwell clients[16] and are known to have been at the heart of the FTX Group fraud.[17]

7.    Much of the available information about Sullivan & Cromwell's involvement with the FTX Group comes from Sam Bankman-Fried himself. On December 13, 2022, John J. Ray III testified about the FTX debacle before the House Committee on Financial Services. Sam Bankman-Fried was scheduled to testify that day too—but was taken into custody before he had the chance. The transcript of his planned testimony was leaked to and published by Forbes.

8.    In this leaked testimony, Bankman-Fried described Sullivan & Cromwell's role in the days before the FTX Group's bankruptcy filing. "Starting on November 8th," he wrote, "I was put under extreme pressure to file for Chapter 11."[18] "Most of that pressure," according to Bankman-Fried, "came from Ryne Miller, the General Counsel of FTX US and a former partner of Sullivan & Cromwell, and Sullivan [&] Cromwell itself."[19] Bankman-Fried claimed to "have 19 pages of screenshots of Sullivan & Cromwell, Mr. Miller, and others I believe were influenced by them, all sent over a two-day period, pressuring me to file for Chapter

---

[16] *See* Dietderich Declaration, ¶ 8, Schedule 3 (noting "transactional work arranged for and paid by Debtor Alameda Research Ltd.," without more).

[17] *See, e.g.*, Ex. 2, Complaint, *Commodities Futures Trading Commission v. Bankman-Fried*, Case No. 22-cv-10503, at ¶ 7 (S.D.N.Y. 2022) ("Throughout the Relevant Period … Alameda used FTX funds, including customer funds, to trade on other digital asset exchanges and to fund a variety of high-risk digital asset industry investments.").

[18] Ex. 1, SBF Planned Testimony, p. 8.

[19] *Id*.

11."[20] He described these messages as "rang[ing] from adamant to mentally unbalanced."[21] He claimed that Sullivan & Cromwell directed similar messages to "many of my friends, coworkers, and family members, pressuring them to pressure me to file, some of whom were emotionally damaged by the pressure" and "came to [him] crying."[22]

9.      Next, Bankman-Fried wrote, "Sullivan & Cromwell chose John Ray to run the Chapter 11 team," while at the same time assuring Bankman-Fried that he would "get to choose the board chair."[23] Bankman-Fried finally relented on November 10th, signing documents nominating Ray as the FTX Group's new CEO.[24] Almost immediately, Bankman-Fried claims, he expressed his desire to rescind the document.[25] He was purportedly told it was "too late" and that the bankruptcy filing would go ahead.[26] Roughly six hours later, it did.

10.     Bankman-Fried further claims that Mr. Ray and Sullivan & Cromwell unnecessarily included FTX US entities in the bankruptcy when those entities were purportedly "solvent."[27] Bankman-Fried claimed: "I believe that US customers were not directly harmed by the events in early November, and that *all* US customers of

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at p. 9.

FTX—and in fact *all* customers of FTX US, wherever they reside—could and should be made whole immediately."[28]

11.     Bankman-Fried closed his description of Sullivan & Cromwell's role with a screenshot of a message Ryne Miller purportedly sent to "much of FTX's leadership" on November 8, 2022—two days before Bankman-Fried nominated Mr. Ray as replacement CEO.[29] That alleged screenshot is reproduced here:



12.     In sum, then, the known facts and public allegations paint the following picture. The FTX Group engaged Sullivan & Cromwell for advice on sundry "acquisition transactions" and "regulatory inquiries" in 2021 and 2022.[30] This generated $8.5 million in prepetition legal fees for the firm.[31] During this period, the FTX Group was engaged in a depositor-funded "spending binge," in which it bought "a myriad of businesses and investments, many of which may be worth only a

---

[28] *Id.* at p. 11.

[29] *Id.* at p. 9.

[30] Dietderich Declaration, ¶ 16.

[31] *Id.*

fraction of what was paid for them."[32] At the same time, two former Sullivan & Cromwell lawyers were installed as General Counsel of FTX US and FTX Ventures.[33] Later, as the FTX Group collapsed, Ryne Miller and Sullivan & Cromwell are purported to have applied "extreme pressure" to put all of the FTX Group entities into bankruptcy with Sullivan & Cromwell at the helm.[34] Miller allegedly purported to have usurped control of the FTX Group from Bankman-Fried by November 8th, telling the FTX Group's leadership: "I'm in charge now."[35] Miller then demanded and secured millions of "FTX.com cash," which he appears to have used to pay his former firm's prepetition retainer.[36] Sullivan & Cromwell has been the FTX Group's counsel in this proceeding ever since.

## II.    Objector's Standing & Counsel Information

13.    The objector here is Warren Winter, a United States citizen residing abroad. Mr. Winter is a customer and creditor of the FTX Group. He had several hundred thousand dollars of assets in his FTX account when the exchange collapsed, which he has since been unable to access.

---

[32] Ex. 5, John J. Ray III, Prepared Remarks, *Investigating the Collapse of FTX, Part I, Before the U.S. House Committee on Financial Services*, 117th Cong., Dec. 13, 2022, p. 6.

[33] Ex. 3, Ryne Miller LinkedIn, pp. 1-2; Ex. 4, Tim Wilson LinkedIn, p. 1.

[34] Ex. 1, SBF Planned Testimony, p. 8.

[35] *Id.* at p. 10.

[36] *Id.*; *see* Dietderich Declaration, ¶ 5 ("A retainer in the amount of $12,000,000 was funded by Debtor West Realm Shires Inc. on behalf of the Debtors, prior to its Petition Date for S&C to pay for prepetition fees and expenses due in the ordinary course and not previously billed and to hold the remainder as security for payment of its fees and expenses.").

14.     As a courtesy, the Court is hereby notified that Mr. Winter's counsel, Marshal Hoda of The Hoda Law Firm, PLLC, also represents a putative class of FTX Group depositors in *Pierce v. Bankman-Fried*, Case No. 22-cv-07444 (N.D. Cal.).

## III.    Applicable Law

15.     Subject to court approval, a debtor may employ one or more attorneys to represent it in fulfilling its duties in the bankruptcy process.[37] The attorneys selected cannot "hold or represent an interest adverse to the estate," and must be "disinterested persons."[38] As relevant here, a "disinterested person" is one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[39]

16.     In determining whether proposed counsel is disinterested, courts focus on "the concerns of divided loyalties and affected judgments."[40] Both "actual conflicts" and "potential conflicts" can be disqualifying.[41] "Attorneys with actual conflicts face *per se* disqualification," while disqualification for potential conflicts is "at the court's discretion."[42] In either case, the ultimate issue is whether proposed

---

[37] 11 U.S.C. § 327(a).

[38] *Id*.

[39] 11 U.S.C. § 101(14)(C).

[40] *In re Granite Partners, L.P*., 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998).

[41] *In re Boy Scouts of America*, 35 F.4th 149, 157 (3d Cir. 2022). The original version of this Objection suggested that proposed counsel could be disqualified based on the appearance of conflict alone. While that is true in some circuits, it is not the case in the Third Circuit. This Objection has been revised accordingly. The substantive grounds for Sullivan & Cromwell's disqualification are unaffected; each turns on actual conflicts, potential conflicts, or failures to disclose.

[42] *Id*. at 158.

counsel has "a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant."[43] Put differently, courts ask whether "it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation."[44]

17.     Counsel for a Chapter 11 debtor owes a fiduciary duty of loyalty and care to its client—*i.e.*, the debtor or debtor-in-possession—and not to the debtor's principals.[45] The disinterestedness requirement "serve[s] the important policy of ensuring that all professionals appointed pursuant to Section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of the[se] fiduciary responsibilities."[46] And because the text of Section 327(a) unambiguously forbids the retention of conflicted counsel, no amount of "practical benefit[]" can justify a hire who does not meet the "disinterestedness" requirement.[47]

---

[43] *Id*. at 158-59 (quoting *In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999)).

[44] *In re John Cunzolo Assoc's, Inc.*, 423 B.R. 735 (Bankr. W.D. Penn. 2010) (quoting *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)).

[45] *See, e.g.*, *In re Rancort*, 207 B.R. 338, 360 (Bankr. D.N.H. 1997) ("When representing the debtor-in-possession, [an] attorney has a duty to look to the interests of the estate and not to the interests of its principals, shareholders, officers or directors. This purpose can only be realized when all who labor within the confines of the Bankruptcy Code would never countenance fraudulent behavior and greedy gain, all attempts to delay and deny, all motives dictated by hidden agenda.").

[46] *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

[47] *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994) (Alito, J.) (rejecting argument that conflicted professional should be retained under Section

18.     In addition to the general conflicts-of-interest inquiry, courts must determine whether proposed counsel may have received preferential transfers for prepetition legal work. "Preferential transfer[s] to debtors' counsel constitute an actual conflict of interest between counsel and the debtor, and [] require the firm's disqualification."[48] It is easy to understand why. As one court put it, a law firm with an avoidable preference will be "unlikely to sue [it]self."[49] A judicial determination whether proposed counsel has received a preference must be made at the time of appointment.[50] "[W]hen there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination."[51]

19.     The Bankruptcy Code provides a procedural mechanism to enforce these requirements. Under Federal Rule of Bankruptcy Procedure 2014, any professional applying for appointment under Section 327(a) must set forth "all of [its] connections with the debtor … [and the debtor's] attorneys" in its application and accompanying verified statement. "Boilerplate" disclosures are impermissible, and courts will not "rummage through files or conduct independent factfinding investigations" to determine if the professional is qualified.[52] "The professional must

---

327(a) due to purported "practical benefits" arising from previous engagement by debtors and resulting "expertise regarding their financial affairs and needs").

[48] *In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999).

[49] *In re Triple Start Welding, Inc.*, 324 B.R. 778, 794 (9th Cir. 2005) (citing *In re Pillowtex*, 304 F.3d 246, 255 (3d Cir. 2002)).

[50] *In re Pillowtex, Inc.*, 304 F.3d at 255.

[51] *Id.*

[52] *Granite Partners*, 219 B.R. at 35.

disclose all contacts, not pick and choose which to disclose and which to ignore or leave the court to search the record for such relationships."[53] Professionals fail to meet these requirements at their own risk, as courts "punish a willful failure to disclose connection under Federal Rule of Bankruptcy Procedure 2014 as severely as an attempt to put forth a fraud on the court."[54]

## IV.    Argument

20.     Sullivan & Cromwell's conflicts are obvious and extensive. Its failures to meet its disclosure requirements are egregious. The Court should reject the firm's Application to serve as the FTX Group's bankruptcy counsel for at least the following reasons.

### A.    Sullivan & Cromwell has an actual, undisclosed conflict arising from its relationships with FTX Group insiders Ryne Miller and Tim Wilson.

21.     Two former Sullivan & Cromwell lawyers are General Counsel to FTX Group entities. Sullivan & Cromwell did not disclose these connections in its Application and therefore violated Federal Rule of Bankruptcy Procedure 2014, which requires a statement "all of [the firm's] connections with the debtor … [and the debtor's] attorneys." What's more, disclosed or not, these connections create a conflict of interest and are disqualifying.

22.     FTX US General Counsel Ryne Miller is a former partner at Sullivan & Cromwell.[55] As described above, Miller is alleged to have played a key role—

---

[53] *In re Universal Bldg. Prod.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (citing *In re BH&P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991)).

[54] *In re ACandS, Inc.*, 297 B.R. 395, 405 (Bankr. D. Del. 2003) (quoting *Crivello*, 134 F.3d at 836-37) (emphasis added).

[55] Ex. 3, Ryne Miller LinkedIn, pp. 1-2.

perhaps *the* key role—in wresting control of the FTX Group from Sam Bankman-Fried and directing this extremely valuable bankruptcy matter to his former firm.[56] According to Bankman-Fried, and supported by what appears to be genuine evidence, Miller proclaimed to have usurped control of the FTX Group by November 8th.[57] He immediately secured a $12 million retainer for his former firm and allegedly mounted an "extreme pressure" campaign to put the FTX Group into bankruptcy with Sullivan & Cromwell and its hand-picked CEO at the helm.[58]

23.    FTX Ventures General Counsel Tim Wilson is another former Sullivan & Cromwell lawyer.[59] The Securities and Exchange Commission has alleged that FTX Ventures made at least $200 million in venture-capital investments using customer funds that had been misappropriated through Alameda Research.[60] Financial records published by the Financial Times indicate that these funds were directed to a FinTech company called Dave and a Web3 company called Mysten

---

[56] Ex. 1, SBF Planned Testimony, pp. 8-10.

[57] *Id.*

[58] *Id.*

[59] Ex. 4, Tim Wilson LinkedIn, p. 1.

[60] Ex. 6, Complaint, Securities & Exchange Commission v. Bankman-Fried, Case No. 22-cv-10501 (S.D.N.Y. 2022), ¶ 74 ("[T]wo $100 million investments made by FTX's affiliated investment vehicle, FTX Ventures Ltd., were funded with FTX customer funds that had been diverted to Alameda.").

Labs.[61] The latter transaction was completed during Wilson's tenure as FTX Ventures General Counsel.[62]

24.     In light of the fraudulent nature of the FTX Group's prepetition enterprise and Miller's and Wilson's participation therein, each of their conduct warrants a full investigation and may give rise to estate claims.[63] The situation is similar to that considered by the Second Circuit in *Matter of Bohack Corp.*[64] There, the question was whether a lawyer who was "close personal friends and business associates" with the Board Chairman of the bankrupt entity could serve as counsel when there were obvious questions about the Chairman's liability for prepetition participation in fraudulent transactions.[65] The court held that he could not, because "[a]n attorney who has been closely related by professional, business and personal ties to those whose conduct may now be suspect is evidently in no position to make any objective appraisal of the nature and extent of their involvement."[66]

25.     Here, Sullivan & Cromwell has even deeper professional, business, and personal ties to its former employees Miller and Wilson than those on display in *Bohack*. Thus here, just as in that case, Sullivan & Cromwell cannot impartially

---

[61] *See* n.14, *supra* (collecting exhibits showing indicating that misappropriated customer funds were invested in Dave, Inc. and Mysten Labs).

[62] *See* n.14, *supra* (collecting exhibits showing that Mysten Labs transaction occurred in September 2022); Ex. 4, Tim Wilson LinkedIn, p.1 (showing Tim Wilson's employment as General Counsel of FTX Ventures in September 2022).

[63] *See In re Wilson Armetale*, 968 F.4th 149, 278-79 (3d Cir. 2020) (approving estate claims against law firm that advised debtor in prepetition "asset-plundering scheme").

[64] 607 F.2d 258 (2d Cir. 1979).

[65] *Id*. at 262.

[66] *Id*. at 264.

advise the Debtors about potential claims arising from Miller's and Wilson's conduct or the legality of their prepetition activities.

26.       Perhaps cognizant of this obvious problem, Sullivan & Cromwell did not disclose its relationships with Miller or Wilson in its Application.[67] This alone is disqualifying and an arguably sanctionable violation of Federal Rule of Bankruptcy Procedure 2014, which requires that the applicant list "all of [its] connections with the debtor" and its "attorneys." "A bankruptcy court should punish a willful failure to disclose a connection under Federal Rule of Bankruptcy Procedure 2014 **as severely as an attempt to put forth a fraud on the court**."[68] Courts routinely order disqualification as a sanction for failure to make adequate disclosures.[69]

> ### B.       Sullivan & Cromwell has an actual conflict because it cannot investigate itself.

27.       Sullivan & Cromwell's own prepetition activities must be investigated—and it cannot be trusted to investigate itself. This is the very archetype of an actual conflict of interest and requires the firm's disqualification.

28.       Sullivan & Cromwell did $8.5 million of prepetition legal work for the FTX Group and was purportedly "one of the primary external law firms that represented FTX US as well as FTX International" before the FTX Group's

---

[67] The Application listed Miller as a "party in interest," along with hundreds of other persons and entities. *See* Dietderich Declaration ¶ 8, Schedule 1 (listing "Ryne Miller," without more). Wilson was not mentioned at all. Neither the Application nor accompanying exhibits disclose anything about Sullivan & Cromwell's connections to Miller and Wilson.

[68] *In re ACandS*, 297 B.R. at 405 (emphasis added).

[69] *In re Leslie Fey*, 175 B.R. at 533 ("So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees or even disqualification" (citing *In re Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir. 1981))).

collapse.[70] The precise nature of this work remains somewhat a mystery: Sullivan & Cromwell's disclosures reveal only that it was involved in "acquisition transactions and specific regulatory inquiries relating to certain U.S. business lines."[71] It is clear, however, that this work coincided with the FTX Group's "spending binge" in late 2021 through 2022, in which it spent $5 billion on businesses and investments that "may be worth only a fraction of what was paid for them."[72] This spending binge included $200 million in venture-capital investments that the Securities and Exchange Commission now alleges were made with stolen customer funds—at least $100 million of which were made at a time when Tim Wilson, a former Sullivan & Cromwell lawyer, was General Counsel of the implicated entity.[73]

29.     Sullivan & Cromwell's own involvement in the FTX Group's spending binge must be investigated and may result in liability. The situation is similar to that considered in *In re Git-N-Go, Inc.*[74] There, the question was whether a law firm that had advised the debtor in various suspicious prepetition corporate transactions could be appointed as bankruptcy counsel under Section 327(a).[75] The court denied the firm's application, writing that it would be necessary for counsel to "scrutinize … recent transactions," and that "having counseled some of the parties in the very

---

[70] Ex. 1, SBF Planned Testimony, p. 9.

[71] Dietderich Declaration, ¶ 16.

[72] Ex. 5, John J. Ray III, Prepared Remarks, Investigating the Collapse of FTX, Part I, Before the U.S. House Committee on Financial Services, 117th Cong., Dec. 13, 2022, p. 6.; Dietderich Declaration, ¶ 16 (disclosing that the FTX Group paid Sullivan & Cromwell $8.5 million "from July 2021 to the Petition Date").

[73] *See* n.14, *supra*; Ex. 4, Tim Wilson LinkedIn, p. 1.

[74] 321 B.R. 54 (Bankr. N.D. Okla. 2004).

[75] *Id*. at 57-58.

transactions that deserve examination," the firm could not "provide the objective and independent advice regarding the validity or propriety of these transactions as is required for the Debtor's performance of its fiduciary obligations."[76] Just so here.

30.     Sullivan & Cromwell should be disqualified for the independent reason that it failed to meet its disclosure obligations with regard to its prepetition work for the FTX Group, just as it did with regard to its connection to FTX Group insiders.[77] In fact, it appears that Sullivan & Cromwell is actively covering up its prepetition transactional work for the FTX Group. On October 6, 2022, the firm posted a news update touting its representation of FTX US in its acquisition of Voyager Digital, another bankrupt cryptocurrency-related business.[78] Today, searches of Sullivan & Cromwell's website for the terms "FTX," "FTX US," and "Voyager" do not return a result for this update, which appears to have been deleted.[79]

---

[76] *Id*. at 59.

[77] *Granite Partners*, 219 B.R. at 35 (noting that "a professional's duty to disclose is self-policing … [and court] should not have to rummage through files or conduct independent factfinding investigations").

[78] Ex. 10, Matt Stoller (@matthewstoller), Twitter (Nov. 11, 2022), p. 1 (providing screenshot of Sullivan & Cromwell article entitled "S&C Advises FTX US on Chapter 11 Acquisition of Voyager Digital").

[79] Ex. 11, Sullivan & Cromwell Website Search Results, "FTX" (accessed Jan. 6, 2023); Ex. 12, Sullivan & Cromwell Website Search Results, "FTX US" (accessed Jan. 6, 2023); Ex. 13, Sullivan & Cromwell Website Search Results, "Voyager" (accessed Jan. 6, 2023); *see also* Ex. 14, Justin Henry, *Sullivan & Cromwell, Fenwick & West Trim FTX Relationship From Sites*, The American Lawyer (Nov. 14, 2022), *passim* (describing Sullivan & Cromwell's attempt to distance itself from prepetition FTX relationship).

### C.   Sullivan & Cromwell has an actual conflict because it is subject to preference claims.

31.    Sullivan & Cromwell is subject to preference claims arising from the $15.4 million it received from the FTX Group entities for prepetition legal work and retainer payments during the preference period.[80] This is an actual conflict of interest and requires the firm's disqualification independent of the other grounds set out in this Objection.[81]

32.    The Bankruptcy Code's avoidable preference provision allows the bankruptcy estate to recover certain transfers made by the debtor prior to filing a bankruptcy petition. The transfer must have been (1) "on account of an antecedent debt," (2) "made while the debtor was insolvent," (3) "within 90 days" before the petition date, and (4) have "enable[d] [the] creditor to receive more than [it] would receive" if the case were a Chapter 7 liquidation.[82] Transfers may not be avoided, however, if they were made "in the ordinary course of business."[83] The preference statute's purpose is to foreclose the possibility that a creditor who "foresees that his debtor is approaching bankruptcy" will "secure preferential treatment for himself by the timing of the bill."[84]

---

[80] 11 U.S.C. § 547(b).

[81] *In re Pillowtex, Inc.*, 304 F.3d at 254-55 ("Although a bankruptcy court enjoys considerable discretion in evaluating whether professionals suffer from conflict, that discretion is not limitless … a bankruptcy court that approves the retention of a prepetition creditor of the estate necessarily abuses its discretion.").

[82] 11 U.S.C. § 547(b).

[83] 11 U.S.C. § 547(c)(2).

[84] *In re Jersey First Securities, Inc.*, 180 F.3d 463, 511-512 (3d Cir. 1999) (quoting *Matter of Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir. 1983)).

33.    All the hallmarks of an avoidable preference are on display here. Sullivan & Cromwell received $15.4 million in cash transfers from the FTX Group for prepetition legal fees and retainers in the 90-day preference period.[85] John Ray's congressional testimony confirmed that the FTX Group entities were insolvent before the Petition Date and that the estate's remaining assets will not be enough to make creditors whole.[86] This means that Sullivan & Cromwell will likely receive substantially more than it would have if this case were a Chapter 7 liquidation.

34.    Further, there are clear indications that the FTX Group's prepetition payments to Sullivan & Cromwell were not made in the ordinary course of business. Courts employ a common-sense approach in determining whether a transaction is "ordinary," considering "[f]actors such as timing [and] the amount and manner in which a transaction was paid."[87] Where the debtor and the recipient had an ongoing relationship, courts also ask whether payments "deviate[d] from the pattern" evinced by the their transaction history.[88]

35.    Ryne Miller's purported demand for immediate transfer of "$4m[illion]" in "FTX.com cash," made in the face of evidence that untold customer assets had already been *stolen* from that same asset pool, is far from ordinary.[89] Just

---

[85] Dietderich Declaration, ¶ 5 (exact figure $15,418,837.90).

[86] John J. Ray III, Live Testimony, *Investigating the Collapse of FTX, Part I, Before the U.S. House Committee on Financial Services*, 117th Cong., Dec. 13, 2022, https://www.youtube.com/live/rWAnrigAO3I?feature=share), at 2:48:02 (Congressman Gonzalez: "Is it your belief that FTX was solvent?" Mr. Ray: "No."), 2:25:33 (Mr. Ray: "At the end of the day, we're not going to be able to recover all the losses here. Money was spent that we'll never get back.").

[87] *In re Jersey First Securities*, 180 F.3d at 512.

[88] *Id.* at 513.

[89] Ex 1, SBF Planned Testimony, pp. 11.

as damning is the pattern of payments from the FTX Group to Sullivan & Cromwell. To see why, note first that the FTX crisis began on November 2, 2022, with the publication of a CoinDesk article concerning Alameda Research's leaked balance sheet.[90] Now consider the preference-period transfers from the FTX Group to Sullivan & Cromwell[91]:

| Received Date | Amount Received |
|---|---|
| August 26, 2022 | $23,882.50 |
| September 6, 2022 | $81,665.00 |
| October 5, 2022 | $142,611.53 |
| October 19, 2022 | $195,484.33 |
| October 20, 2022 | $166,493.75 |
| October 20, 2022 | $555,030.05 |
| November 3, 2022 | $2,253,670.77 |

This accounting shows that on November 3rd, the day after the FTX crisis began, Sullivan & Cromwell received a $2.2 million dollar cash payment from the FTX Group. The amount of this payment was more than *eleven times* the average of all previous preference-period payments. By this time, Sullivan & Cromwell had good reason to know the ship was sinking. The CoinDesk article was roiling the market, and former Sullivan & Cromwell lawyers Miller and Wilson were inside the FTX Group with access to information about the state of the enterprise.

---

[90] Ex. 15, David Z. Morris, *8 Days in November: What Led to FTX's Sudden Collapse*, CoinDesk (Nov. 9, 2022), p. 2 (noting that after CoinDesk's November 2nd article, "worries about Alameda's balance sheet translated into a rapidly accelerating mass exodus from FTX").

[91] Dietderich Declaration, ¶ 5.

36.     These facts are strikingly similar to those the Third Circuit confronted in *In re Jersey First Securities*.[92] There, a debtor wanted to retain its former law firm as bankruptcy counsel but already owed the firm a substantial sum for prepetition legal work.[93] So, on the same day of its Chapter 11 filing, the debtor transferred valuable securities to the firm as payment for the outstanding invoices and as a retainer for representation in the bankruptcy proceeding.[94]

37.     The court held that all of Section 547's requirements were met, just as they are here, and concluded that this was "an actual conflict of interest" that "require[d] the firm's disqualification."[95] As to whether the payment in question was made in the ordinary course of business, the court observed that this transfer "deviate[d] from the pattern of prior payments," and noted that the panel was "troubled by the absence in the record of any explanation for why the payment was made on the eve of the debtor's filing for bankruptcy."[96] Moreover, just as here, the court noted that the law firm "was in a unique position to secure preferential treatment for itself—as it knew the debtor was going to file for bankruptcy in the imminent future."[97] *First Jersey Securities* is on four corners with this case and dictates the result here.

---

[92] 180 F.3d 504 (Alito, J.) (3d Cir. 1999).

[93] *Id*. at 506.

[94] *Id*.

[95] *Id*. at 510, 513.

[96] *Id*. at 513.

[97] *Id*. at 511.

**D.      Sullivan & Cromwell has actual conflicts with current and former clients.**

38.      Sullivan & Cromwell's current and former clients include a litany of potential targets of investigation and claims. These clients include (i) PricewaterhouseCoopers, LLP, hired by the FTX Group as a consultant, (ii) Deltec Bank and Silvergate Bank, the FTX Group's bankers, (iii) Sam Bankman-Fried, the founder and CEO of the FTX Group empire, and (iv) Nishad Singh, FTX Group co-founder and Head of Engineering.[98] These persons and entities must be investigated for potential wrongdoing and may be subject to claims. But "a lawyer cannot represent [an estate] for the purpose of investigating the alleged wrongdoing of another, valuable client."[99] "The lawyer owes a duty of loyalty to each client, and concurrent representation, even in unrelated matters, poses the danger of divided loyalties and affected judgments."[100] Sullivan & Cromwell has actual or potential conflicts with regard to each of these persons and entities and therefore cannot effectively and ethically perform its duties as bankruptcy counsel.

**V.      Relief Sought**

39.      Mr. Winter requests that the Court reject Sullivan & Cromwell's Application and disqualify it from serving as Debtors' counsel.

40.      In the alternative, Mr. Winter requests that the Court require Sullivan & Cromwell to amend its application with robust disclosures and explanations concerning (i) its prepetition work for the Debtors, (ii) the roles of Ryne Miller and Tim Wilson, and (iii) how it will effectively and ethically pursue the estate's claims

---

[98] Dietderich Declaration, ¶ 8 (referring to and incorporating Schedules 2 & 3, which set out parties-in-interest and Sullivan & Cromwell clients).

[99] *Granite Partners*, 219 B.R. at 37 (citing *Bohack Corp.*, 607 F.2d at 263).

[100] *Id.*

in light of the conflicts recounted above. Upon submission of any such amended application, Mr. Winter requests additional time for objections.

41.     In addition, if Sullivan & Cromwell is not disqualified outright, Mr. Winter requests that the Court hold an evidentiary hearing or hearings concerning Sullivan & Cromwell's prepetition activities and whether it received a preference.


Dated:  January 10, 2023                    Respectfully submitted,


**/s/ John D. McLaughlin, Jr.**              **/s/ Marshal J. Hoda**

| | |
|---|---|
| John D. McLaughlin, Jr. | Marshal J. Hoda |
| Delaware Bar No. 4123 | Texas Bar No. 24110009 |
| 1521 Concord Pike, Suite 202 | (Admitted *pro hac vice*) |
| Wilmington, DE 19803 | 12333 Sowden Road, Suite B, PMB 51811 |
| Tel: (302) 575-1555, ext. 107 | Houston, TX 77080 |
| Fax: (302) 575-1714 | Tel: (832) 848-0036 |
| jmclaughlin@ferryjoseph.com | marshal@thehodalawfirm.com |
| **FERRY JOSEPH, P.A.** | **THE HODA LAW FIRM, PLLC** |

Patrick Yarborough, Esq.
Texas Bar No. 24084129
(Admitted *pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Tel: (713) 331-5084
patrick@fosteryarborough.com
**FOSTER YARBOROUGH, PLLC**

*Counsel for Objector Warren Winter*