## **EXHIBIT 1**

**Bid Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

## BID PROCEDURES

      The above-captioned debtors and debtors-in-possession (the "Debtors") in jointly administered chapter 11 cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") are authorized to solicit bids for and conduct a sale of the following businesses of the Debtors, in each case, including any associated contracts, rights or other property of the Debtors (each such business, a "Business," and collectively, the "Businesses"):

- Embed Business:  Non-Debtor Embed Financial Technologies Inc., a Delaware corporation ("Embed Technologies"), together with its wholly-owned non-Debtor subsidiary, Embed Clearing LLC, a Delaware limited liability company, operate a correspondent clearing and custody platform that provides registered investment advisors, broker-dealers and other financial institutions with APIs and brokerage services.  The Debtors are soliciting bids for the disposition of 100% of the common stock of Embed Technologies held by Debtor West Realm Shires Inc.;

- LedgerX Business:  Non-Debtor LedgerX LLC, a Delaware limited liability company ("LedgerX"), is a digital currency futures and options exchange and clearinghouse regulated by the Commodity Futures Trading Commission.  The Debtors are soliciting bids for the disposition of 100% of the interests in LedgerX held by Debtor Ledger Holdings Inc.;

- FTX Japan Business:  Debtor FTX Japan Holdings K.K., a Japanese company ("FTX Japan Holdings"), is the holding company for its wholly-owned subsidiaries Debtor FTX Japan K.K. ("FTX Japan"), which operates a registered cryptocurrency exchange providing residents of Japan the ability to trade crypto and crypto derivatives, and Debtor Quoine Pte Ltd. ("FTX Singapore"), which operates a cryptocurrency exchange in Singapore under exemption while its license application is being processed.  The Debtors are soliciting bids for the

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

disposition of the FTX Japan Business, which may involve a sale of 100% of the interests in FTX Japan Holdings held by Debtor FTX Trading Ltd. ("FTX Trading") or separate sales of 100% of the interests in FTX Japan or FTX Singapore held by FTX Japan Holdings; and

- FTX Europe Business: Debtor FTX Europe AG, a Swiss corporation limited by shares ("FTX Europe"), is the holding company for a number of operating and non-operating subsidiaries constituting the Debtors' European digital assets and derivatives business (not including the Debtors' crypto exchange). The Debtors are soliciting bids for the disposition of the FTX Europe Business, which may involve a sale of 100% of the interests in FTX Europe held by FTX Trading or sales of stock and/or assets of FTX Europe and/or its subsidiaries.[2]

The sale process will be conducted pursuant to the following procedures (the "Bid Procedures") and any sale(s) of the Businesses (the "Sale(s)") will be implemented pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

Any interested bidder should contact, as soon as practical:

**Perella Weinberg Partners**
767 Fifth Avenue
New York, NY 10153
Attn: Michael Grace at +1 (212) 287-3340 or Nathaniel Nussbaum at +1 (646) 680-8206
Email: PWP-M&AInternalProjectFocus@pwpartners.com

These Bid Procedures describe, among other things, (i) certain requirements for bidders who wish to receive confidential information about the Businesses for purposes of submitting bids, (ii) the manner in which bidders and bids may become qualified to participate in the Auction(s) (as defined below), (iii) procedures for the approval of certain protections that may be granted to one or more "stalking horse" bidders, (iv) procedures for the conduct of the sale process and competitive auction(s), if applicable, (v) procedures for the selection of one or more successful bidders and alternate bidders and (vi) procedures for Bankruptcy Court approval of the Sale(s).

1. **Participation Requirements**

   (a) **Interested Parties**

   To be eligible to participate in the bidding process for the Businesses, any interested party (an "Interested Party") must first deliver the following documents (the "Preliminary Documents") to each of (i) proposed counsel to the Debtors, (A) Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, Attn: Andy G. Dietderich (dietdericha@sullcrom.com), Mitchell S. Eitel (eitelm@sullcrom.com), Audra D. Cohen

---

[2]    Subsidiaries of FTX Europe that may be included in any sale of the FTX Europe Business are Debtors FTX Structured Products AG (f/k/a DAAG Capital GmbH); DAAG Trading, DMCC; FTX Certificates GmbH; FTX EU Ltd (f/k/a K-DNA Financial Services Ltd); FTX Crypto Services Ltd.; FTX Switzerland GmbH; FTX Exchange FZE and FTX Trading GmbH and non-Debtor FTX Derivatives GmbH.

(cohena@sullcrom.com) and Stephen M. Salley (salleys@sullcrom.com) and (B) Landis Rath & Cobb LLP, 919 N. Market St., Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kimberly A. Brown (brown@lrclaw.com) and (ii) the Debtors' proposed financial advisor in these Chapter 11 Cases, Perella Weinberg Partners (PWP-M&AInternalProjectFocus@pwpartners.com) (collectively, the "Bid Notice Parties"):

(i)     a statement indicating which Business(es) the Interested Party has an interest in purchasing;

(ii)    a complete list, to such Interested Party's knowledge after reasonable inquiry, of (A) any contracts between the Interested Party and its affiliates (the "Interested Party Group") and any Debtor, (B) all property in the custody or control of the Interested Party Group in which any Debtor may have an interest, (C) all claims that any member of the Interested Party Group may have against any Debtor, and (D) any other connections between any member of the Interested Party Group, on the one hand, and the Debtors and their current or former directors and officers, on the other hand (collectively, any "Interested Party Transactions");

(iii)   the most current audited and unaudited financial statements of the Interested Party or any equity holder or sponsor of the Interested Party that will be responsible to the Debtors for the Interested Party's obligations in connection with the bidding process or, if no such financial statements are available or provided, preliminary proof of or information as to the Interested Party's financial capacity to close a proposed Sale;

(iv)    a description of such Interested Party's familiarity with any regulatory approval process for the applicable Business(es) and ability to obtain any required regulatory approvals on a timely basis; and

(v)     such other information as the Debtors may determine to be appropriate to assess whether the Interested Party is an appropriate recipient of the confidential information of the Debtors.

(b)    **Due Diligence**

An Interested Party that has delivered Preliminary Documents reasonably satisfactory to the Debtors shall become a potential bidder (a "Potential Bidder") and will receive confidential information regarding the applicable Business(es) and access to the applicable electronic data room(s) established by the Debtors (the "Data Room(s)") when so notified by the Debtors and after executing a customary confidentiality agreement in a form satisfactory to the Debtors. Potential Bidders also may address additional due diligence requests to Perella Weinberg Partners ("PWP"), who will coordinate all such requests for additional information with the Debtors (or their advisors) and post new information to the Data Room(s) from time to time. The Debtors will use commercially reasonable efforts to accommodate reasonable requests for additional information from Potential Bidders.

No Interested Party, Potential Bidder or Qualified Bidder (as defined below) shall communicate with any of the Debtors' vendors, suppliers, employees, customers, creditors (other

than the Committee (as defined below), <u>provided</u> that a representative of the Debtors shall be present for or party to any communications between any Interested Party, Potential Bidder or Qualified Bidder and the Committee and any such communications will be subject to any confidentiality protocols established by the Debtors), regulators or any other Interested Party, Potential Bidder or Qualified Bidder with respect to any potential bid or transaction absent the prior written consent of the Debtors; <u>provided</u> that if such consent is given, a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).

The Debtors may withhold or limit access by any Potential Bidder to the Data Room(s) or other due diligence materials at any time and for any reason, including, without limitation, if (i) the Potential Bidder does not become, or the Debtors determine that the Potential Bidder is not likely to become, a Qualified Bidder, (ii) the Potential Bidder violates the terms of its confidentiality agreement, (iii) the Debtors become aware (A) that the information set forth in the Preliminary Documents is inaccurate or misleading or (B) of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, or (iv) the bidding process is terminated for any reason.  For any Potential Bidder who is a competitor of the Debtors, a customer of the Debtors or otherwise affiliated in some manner with the Debtors, the Debtors reserve the right, in their sole discretion, to withhold, or to delay providing, any diligence materials that the Debtors determine are commercially sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time.  After the applicable Bid Deadline, the Debtors shall have no obligation to furnish any additional due diligence or information to any Potential Bidder and may cease all access to the Data Room(s) or other diligence materials.

The Debtors shall at least on a weekly basis notify the Consulting Professionals (as defined below) of any Interested Parties or Potential Bidders from whom the Debtors determine to withhold or limit access to the Data Room(s) or diligence materials.

The Debtors and their advisors, representatives and agents are not responsible for, and will bear no liability with respect to, any information provided to or obtained by any Potential Bidder in connection with any Sale transaction.

(c)     **Form(s) of Purchase Agreement**

The Data Room(s) will contain form(s) of purchase agreement(s) for the Businesses (the "<u>Proposed Purchase Agreement(s)</u>") for review by Potential Bidders.  The Debtors shall provide the Consulting Professionals and the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") the final form of each Proposed Purchase Agreement at least three (3) business days prior to the Debtors uploading such document to any Data Room, and shall consider any comments provided by the Consulting Professionals in good faith.

(d)     **Consulting Professionals**

The Debtors shall at least on a weekly basis notify the firms serving as legal counsel and lead financial advisor to the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "<u>Committee</u>" and such firms, the "<u>Consulting Professionals</u>") of all

-4-

Interested Parties and all Potential Bidders who have been granted access to the Data Room(s), including an activity tracker showing the level of interest and Data Room activity for such Potential Bidders.

The Consulting Professionals shall have full access to the Data Room(s) at all times following their establishment.  The Debtors shall provide copies of any substantive diligence materials provided to any Potential Bidder by the Debtors or PWP outside the Data Room(s) as promptly as practicable (and in no event more than 24 hours) after providing such materials to such Potential Bidders.  The Debtors will provide updates and information about the participation of Potential Bidders in the sale process as reasonably requested by the Consulting Professionals from time to time.

2. **Qualified Bids**

Participation in the Auction(s) shall be limited to those Potential Bidders who satisfy the conditions set forth in the sections of these Bid Procedures titled "Preliminary Bid Deadlines," "Indications of Interest," "Bid Deadlines" and "Bid Requirements" below and, after consultation with the Consulting Professionals, are deemed by the Debtors to be a "Qualified Bidder" with a timely "Qualified Bid."

(a) **Preliminary Bid Deadlines**

In order to be a Qualified Bidder, a Potential Bidder first will be required to submit a non-binding indication of interest (an "Indication of Interest") in electronic format to the Bid Notice Parties so as to be received not later than the applicable preliminary bid deadline (each, a "Preliminary Bid Deadline").  The Preliminary Bid Deadlines are as set forth below; provided that, after consultation with the Consulting Professionals, the Debtors may extend any Preliminary Bid Deadline without further order of the Bankruptcy Court:

| Business | Preliminary Bid Deadline<br>(5:00 p.m. prevailing Eastern Time on the below listed dates) |
|---|---|
| Embed Business | January 18, 2023 |
| LedgerX Business | January 25, 2023 |
| FTX Japan Business | February 1, 2023 |
| FTX Europe Business | February 1, 2023 |

If the Debtors extend any Preliminary Bid Deadline, the Debtors will notify all Potential Bidders and the Consulting Professionals as promptly as practicable (and in no event more than 24 hours) after such extension.  The Debtors will provide copies of all Indications of Interest received (including all information provided pursuant to items 1 through 7 of Section 2(b) below) to the Consulting Professionals as promptly as practicable (and in no event more than 24 hours) after the Debtors' receipt thereof; provided, that such materials may be provided to the Consulting Professionals on a "Professionals' Eyes Only" basis.

(b)    **Indications of Interest**

Potential Bidders may submit Indications of Interest for any one or more of the Businesses on or prior to the Preliminary Bid Deadline for the applicable Business(es). Each Indication of Interest must contain the following information, except as the Debtors, in consultation with the Consulting Professionals, otherwise determine:

1. <u>Identity of Purchaser and its Affiliates</u>: A description of each person or legal entity that would acquire the applicable Business(es), each such person's or legal entity's ultimate parent company, the identity of all key shareholders and ultimate beneficial owners of such person or legal entity and any relevant history and/or experience of the Potential Bidder in the industry, and an updated list of any Interested Party Transactions;

2. <u>Terms; Consideration</u>: A description of (a) the Business(es) proposed to be acquired; (b) the total purchase price and form of consideration for such Business(es), which must be either cash (fiat currency) or public equity or other liquid securities; (c) if the Potential Bidder is seeking to acquire more than one Business, an allocation of consideration for each Business to be acquired; and (d) the structure and key terms and conditions of the proposed Sale;

3. <u>Due Diligence</u>: A description of all remaining due diligence requests and any material conditions to be satisfied prior to the submission of a Qualified Bid, and a statement that the Potential Bidder is prepared to work in good faith to finalize a binding proposal for the applicable Business(es) by the applicable Bid Deadline;

4. <u>Sources of Financing</u>: Written evidence acceptable to the Debtors (after consultation with the Consulting Professionals) demonstrating the financial wherewithal to acquire the applicable Business(es) and an indication of expected sources of funds (including the amounts of debt and equity financing necessary to fund the Sale together with indications from any third-party sources of their commitment to provide such funds) and the steps required (and anticipated timing) to obtain any definitive financing commitments. If the Potential Bidder is a newly formed entity, the Indication of Interest must identify the entity or entities that will provide backstops for the potential Sale in the form of a guarantee, equity commitment letter or other credit support, and describe the nature of such support;

5. <u>Required Approvals and Timing</u>: A description of the level of review, authorization and approval within the Potential Bidder's organization that the potential Sale has received to date and an indication of any anticipated need (and associated timing) for further corporate, shareholder or other authorization, approvals and waivers and any other material conditions or time constraints related to closing a potential Sale;

6. <u>Governmental and Regulatory Approvals</u>: A statement or evidence of the Potential Bidder's plan and ability to obtain all governmental, regulatory or other third-party approvals required to close the proposed Sale and to operate the

applicable Business(es) from and after the closing of the Sale transaction and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals.  Each Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel and the Committee's legal counsel (provided that the Debtors' legal counsel shall be present for or party to any communications between the Potential Bidder and the Committee's legal counsel) to discuss and explain such Potential Bidder's regulatory analysis, strategy and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated (a) to submit a Stalking Horse Bid (as defined below) or (b) if not submitting a Stalking Horse Bid, to submit a Qualified Bid; and

7.  <u>Material Conditions</u>:  A list of any other material conditions to which the consummation of the proposed Sale would be subject.

(c)  **Bid Deadlines**

In order to participate in an Auction for a Business, a Potential Bidder must deliver the Required Bid Documents (as defined below) in electronic format to the Bid Notice Parties so as to be received not later than the applicable bid deadline (each, a "<u>Bid Deadline</u>"). The Bid Deadlines are as set forth below; provided that, after consultation with the Consulting Professionals, the Debtors may extend any Bid Deadline without further order of the Bankruptcy Court:

| Business | Bid Deadline<br>(5:00 p.m. prevailing Eastern Time on the below listed dates) |
|---|---|
| Embed Business | February 15, 2023 |
| LedgerX Business | March 1, 2023 |
| FTX Japan Business | March 15, 2023 |
| FTX Europe Business | March 15, 2023 |

Potential Bidders may submit the Required Bid Documents, and become Qualified Bidders, at any time after the applicable Preliminary Bid Deadline and prior to the applicable Bid Deadline, as the same may be modified in accordance with this Section 2 (provided such Potential Bidder has submitted an Indication of Interest that meets the requirements hereunder on or prior to the applicable Preliminary Bid Deadline).  A Potential Bidder submitting a combined bid for Businesses with multiple Bid Deadlines must submit such bid by the earliest applicable Bid Deadline.  If the Debtors extend any Bid Deadline, the Debtors will notify all Potential Bidders and the Consulting Professionals as promptly as practicable (and in no event more than 24 hours) after such extension.  The Debtors will provide copies of all bids received, including all Required Bid Documents and any changes or improvements to any bid, to the Consulting Professionals as promptly as practicable (and in no event more than 24 hours) after the Debtors' receipt thereof; provided, that such materials may be provided to the Consulting Professionals on a "Professionals' Eyes Only" basis.

(d)    **Bid Requirements**

All bids, including Stalking Horse Bids as discussed in Section 3 below, should include the following, except as the Debtors otherwise determine after consultation with the Consulting Professionals (the "Required Bid Documents"):

1.  Proposal Letter:  A letter outlining the Business(es) proposed to be acquired, the bidder's offer and any conditions precedent and stating that the bidder's offer is irrevocable until the 10th day following the conclusion of the applicable Auction(s) or, if later, the day after the date of the applicable Sale Hearing(s) (provided that, if such bidder is selected as a Successful Bidder (as defined below) or an Alternate Bidder (as defined below), its offer shall remain irrevocable until the closing of the Sale to the Successful Bidder or Alternate Bidder, as applicable; provided further that, the applicable reference dates for a bid for more than one Business shall be the dates of the latest applicable Auction or Sale Hearing), and including written evidence acceptable to the Debtors demonstrating the financial wherewithal and corporate authorization to consummate the proposed transaction; and

2.  Purchase Agreement:  A draft purchase agreement, including the purchase price for the Business(es) to be purchased, together with all exhibits and schedules, marked to show any amendments and modifications to the applicable Proposed Purchase Agreement(s) (or, if Stalking Horse Bid(s) have been designated with respect to the applicable Business(es), the applicable Stalking Horse Agreement(s) (as defined below)), in a form that has been duly authorized and executed by the bidder.

In addition, a bid will be considered a Qualified Bid only if the bid includes the following (items 1 through 5 of which, together with any written materials or documents provided pursuant to item 7, shall constitute Required Bid Documents):

1.  Identity of Purchaser and its Affiliates:  A description of (a) each person or legal entity that would acquire the applicable Business(es) or sponsor, finance (including through the issuance of debt in connection with such bid) or participate in such bid (including through a license or similar arrangement), and the complete terms of such participation, (b) each such person's or legal entity's ultimate parent company, (c) the identity of all key shareholders and ultimate beneficial owners of such person or legal entity and (d) any past or present connections or agreements with any other known Potential Bidder or Qualified Bidder and any director or officer of the foregoing, and an updated list of any Interested Party Transactions;

2.  Terms; Consideration:  A description of (a) the Business(es) proposed to be acquired; (b) the total purchase price and form of consideration for such Business(es), which must be either cash (fiat currency) or public equity or other liquid securities (provided that, if a Stalking Horse Bidder has been designated with respect to any of the Businesses subject to the bid, the applicable portion of the bid value must exceed the Stalking Horse Bid Value (as defined below) or the

bid must otherwise provide higher value or better terms than the applicable Stalking Horse Bid as determined by the Debtors in their business judgment, after consultation with the Consulting Professionals); (c) if the Potential Bidder is seeking to acquire more than one Business, an allocation of consideration for each Business to be acquired; and (d) the structure and key terms and conditions of the proposed Sale;

3. <u>Financial Information; Financing</u>:  A statement (a) representing that the Potential Bidder is financially capable of consummating the contemplated Sale, together with the Potential Bidder's (i) *pro forma* capital structure and (ii) if available, audited financial statements for the prior two years, or if such financial statements are not available, written evidence acceptable to the Debtors sufficient to support a conclusion that the Potential Bidder is financially capable of consummating the contemplated Sale; and (b) identifying any person or entity providing debt or equity financing for the purchase, setting forth in reasonable detail the proposed structure and material terms of any financing and confirming that the bid is not subject to any financing contingencies.  The Debtors and the Consulting Professionals each reserve the right, in their respective sole discretion, to reasonably request additional financial information from any Potential Bidder (<u>provided</u> that the Debtors shall be a party to any communications between the Consulting Professionals and the Potential Bidder);

4. <u>Regulatory Approvals</u>:  A statement (a) identifying all regulatory approvals (including the regulatory body and nature of the approval) required in order to complete the transaction; (b) describing the timing and process to complete the foregoing; and (c) providing evidence of the Potential Bidder's ability to obtain any required approval on the timeline indicated in (b);

5. <u>Authorization</u>:  Evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the bid submission, participation in the Auction(s) and the closing of the proposed Sale; and

6. <u>Good Faith Deposit</u>:  Each Qualified Bid must be accompanied by a cash deposit by wire transfer in the amount equal to 10% of the aggregate value of the cash and non-cash consideration of the bid, to be held in an escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>");

7. <u>Other Requirements</u>:  Each Qualified Bid must also:

   a. describe all conditions to the bid, including the need for any third-party approvals or consents, except required Bankruptcy Court approval (for the avoidance of doubt, the bid cannot be conditioned on obtaining financing);

   b. confirm that the bidder has completed due diligence;

   c. indicate that the bidder will not seek any transaction or break-up fee, expense reimbursement, work fee or similar type of payment and that it waives any substantial contribution administrative expense claims under

section 503(b) of the Bankruptcy Code related to bidding for the Businesses (except in the case of a Stalking Horse Bid);

d. constitute a good faith, *bona fide* offer to effectuate the proposed transaction;

e. identify the extent to which the Potential Bidder intends to assume obligations related to employees of the Debtors and whether the Potential Bidder proposes to purchase avoidance actions and other claims against directors, officers and employees and related insurance assets as part of the transaction (it being understood that the rights of the Committee, the U.S. Trustee and all other parties in interest to object to any such bid are expressly preserved);

f. if applicable, identify any executory contracts and unexpired leases of which the Potential Bidder seeks assignment from the Debtors and, if the bid contemplates the assumption and assignment of any contracts or leases, include evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code;

g. state that the bidder agrees to serve as an Alternate Bidder, if selected as such by the Debtors;

h. confirm that the bidder consents to the jurisdiction of the Bankruptcy Court and agrees to be bound by these Bid Procedures and waive any right to a jury trial in connection with any disputes relating to the Auction(s) and the construction and enforcement of these Bid Procedures; and

i. be received on or before the applicable Bid Deadline.

For the avoidance of doubt, bidders are advised that they may submit bids for one or more Businesses, including combined bid(s) for multiple Businesses.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if the Debtors, after consultation with the Consulting Professionals, confirm that it includes all of the Required Bid Documents and meets all of the above requirements; <u>provided</u> that, after consultation with the Consulting Professionals, the Debtors may designate any bid or combination of bids that does not meet the above requirements as a Qualified Bid.

Within two days after the applicable Bid Deadline, after consultation with the Consulting Professionals, the Debtors will notify each bidder whether such bidder is a Qualified Bidder. All Qualified Bids will be considered, but the Debtors reserve the right to reject any and all bids that would otherwise constitute Qualified Bids after consultation with the Consulting Professionals. If any bid is determined by the Debtors, after consultation with the Consulting Professionals, not to be a Qualified Bid, the Debtors shall promptly notify such bidder of the rejection of such bid and instruct the escrow agent designated by the Debtors to return such bidder's Good Faith Deposit.

Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the applicable Auction(s), the Debtors may discuss, negotiate or seek clarification of any Qualified Bid from a Qualified Bidder. The Debtors reserve the right to cooperate with any Potential Bidder in advance of the applicable Auction(s) to cure any deficiencies in a bid that is not initially deemed to be a Qualified Bid. Without the prior written consent of the Debtors, in consultation with the Consulting Professionals, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Bid during the period that such Qualified Bid remains binding as specified in these Bid Procedures; provided that any Qualified Bid may be improved at the Auction(s) as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Each bidder also shall be deemed to acknowledge and represent, by submission of its bid, that it has had an opportunity to conduct any and all due diligence regarding the Businesses that are the subject of its bid prior to making any such bid; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Businesses in making its bid; that (other than representations and warranties contained in the purchase agreement which forms the basis of the bidder's bid) it did not rely upon any of the Debtors' or PWP's, or any of their respective representatives', written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Businesses, or the completeness of any information provided in connection therewith by any of the Debtors or PWP (or any of their respective representatives); that it has not engaged in any collusion with respect to the bidding or the sale of the Businesses described herein; and that these Bid Procedures do not create any right of bidders to enforce or rely upon them in any manner (other than such rights as may be granted to a Stalking Horse Bidder after Bankruptcy Court approval as discussed below).

3.      **Stalking Horse Bid Protections**

At any time up until ten days prior to each Auction, the Debtors, in consultation with the Consulting Professionals, may designate one or more stalking horse bids (each, a "Stalking Horse Bid") and execute a purchase agreement (each, a "Stalking Horse Agreement") with the applicable stalking horse bidder (each, a "Stalking Horse Bidder"), a copy of which shall have been provided to the Consulting Professionals reasonably (and not in any event less than 24 hours) in advance of such designation. The Debtors may designate no more than one Stalking Horse Bid for each Business. The Debtors may designate the same bidder as the Stalking Horse Bidder for more than one Business, whether such bidder has submitted individual bids for each Business or a combined bid for multiple Businesses.

Upon execution of a Stalking Horse Agreement, the Debtors, in consultation with the Consulting Professionals, may agree (subject to court approval) to pay the applicable Stalking Horse Bidder a cash break-up fee (the "Topping Fee") equal to up to 3.0% of the value of the consideration to be paid by the Stalking Horse Bidder for the applicable Business(es) (the "Stalking Horse Purchase Price") and may further agree (subject to court approval) to reimburse the reasonable and documented out-of-pocket expenses incurred by the Stalking Horse Bidder in an amount up to 0.5% of the Stalking Horse Purchase Price (the "Expense Reimbursement Amount" and, together with the Topping Fee, the "Bid Protections"); provided that the Expense

-11-

Reimbursement Amount will not exceed $1,250,000 for any individual Business; provided, further, that any Bid Protections are subject to further approval of the Bankruptcy Court as set forth in the order entered by the Bankruptcy Court approving these Bid Procedures (the "Bid Procedures Order").

If the Debtors, after consultation with the Consulting Professionals, select any Stalking Horse Bidder, the Debtors shall file with the Bankruptcy Court a supplement (a "Stalking Horse Supplement") to the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s) and (II)(A) Approving the Sale(s) Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [D.I. 233] (the "Motion") seeking approval of the same, with no less than seven days' notice of the objection deadline to the U.S. Trustee, the Committee and those parties who have filed notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in these Chapter 11 Cases with no further notice being required, provided that the Stalking Horse Supplement (a) sets forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, also sets forth the identity of the Stalking Horse Bidder's parent company or sponsor), (b) sets forth the Stalking Horse Purchase Price; (c) states whether the Stalking Horse Bidder has any connection to any of the Debtors, or any of the Debtors' current or former officers or directors, or any person known by the Stalking Horse Bidder to have a familial relationship with any of the Debtors' current or former officers or directors, (d) specifies any proposed Bid Protections, (e) attaches a copy of the Stalking Horse Agreement, and redline comparison(s) against any applicable form(s) of purchase agreement(s) filed by the Debtors for the applicable Business(es),[3] (f) attaches the proposed form of sale order agreed to by the Stalking Horse Bidder, and a redline comparison against any applicable form(s) of proposed sale order(s) filed by the Debtors for the applicable Business(es); (g) attaches a proposed order approving the Stalking Horse and any Bid Protections (the "Stalking Horse Approval Order"); (h) highlights any causes of action proposed to be sold by the Debtors pursuant to the Stalking Horse Agreement; and (i) sets forth the deadline to object to the Stalking Horse designation and any Bid Protections. Any proposed Stalking Horse Approval Order shall provide that any expenses to be reimbursed must be documented, with such documentation provided to the Debtors, the Committee and the U.S. Trustee, who will have a seven day review period to object. Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Agreement (each, a "Stalking Horse Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Bankruptcy Court and served on (i) the U.S. Trustee, (ii) proposed counsel to the Debtors, (iii) proposed counsel to the Committee and (iv) all parties requesting notice in these Chapter 11 Cases pursuant to

---

[3]    The Debtors reserve the right to file exhibits, schedules or attachments to purchase agreements containing confidential information under seal, and if they do so, they shall follow the procedures set forth in Local Rule 9018-1(d), and serve copies of any such exhibits, schedules or attachments on the U.S. Trustee and the Consulting Professionals.

Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties") within seven days after the service of the Stalking Horse Supplement.

If a Stalking Horse Objection is timely filed and served, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse and any Bid Protections, but in no event fewer than seven days after the service of the Stalking Horse Supplement. If no Stalking Horse Objection is timely filed and served, or each Stalking Horse Objection timely filed and served is resolved, the Debtors will submit the Stalking Horse Approval Order to the Bankruptcy Court, which may enter such order without a hearing, including with respect to any Bid Protections set forth in the Stalking Horse Supplement. If any Bid Protections are approved by the Bankruptcy Court, they shall constitute allowed administrative expense claims arising in these Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

If a Stalking Horse Bid is selected as the Starting Bid at an Auction, a topping bid must include a minimum purchase price or other value determined by the Debtors, in consultation with the Consulting Professionals, in an amount equal to the sum of (a)(i) the Stalking Horse Purchase Price, (ii) any Topping Fee approved by the Bankruptcy Court and (iii) the maximum amount of any Expense Reimbursement Amount approved by the Bankruptcy Court (the sum of items (a)(i) through (iii), the "Stalking Horse Bid Value") and (b) the applicable Minimum Overbid (as defined below) (such topping bid, a "Stalking Horse Overbid").

Other than the Bid Protections or as separately approved by the Bankruptcy Court, no party submitting a bid shall be entitled to a transaction or break-up fee, expense reimbursement or work fee. All substantial contribution claims by any bidder are deemed waived upon submission of a Qualified Bid.

**4.    Auction(s)**

If the Debtors receive no more than one Qualified Bid on or prior to the applicable Bid Deadline with respect to any Business(es), after consultation with the Consulting Professionals, the Debtors may cancel the applicable Auction and seek approval of the sole Qualified Bid.

(a)    **Participants and Attendees**

In the event that the Debtors timely receive two or more Qualified Bids with respect to the same or overlapping Businesses, the Debtors shall conduct one or more auctions (the "Auction(s)") with respect to such Businesses on one or more auction dates. Prior to commencement of an Auction, the Debtors shall consult with the Consulting Professionals with respect to the conduct of such Auction. The Debtors expect to hold Auctions for the Embed Business, the LedgerX Business, the FTX Japan Business and the FTX Europe Business, if applicable, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, on the following dates, at times to be determined:

| Business | Auction Date |
|---|---|
| Embed Business | February 21, 2023 |
| LedgerX Business | March 7, 2023 |
| FTX Japan Business | March 21, 2023 |
| FTX Europe Business | March 21, 2023 |

The Debtors may (i) hold the Auction(s) at such other locations as they designate and (ii) after consultation with the Consulting Professionals, hold the Auction(s) on such other dates as they designate, cancel any scheduled Auction and conduct Auctions for one or more of the Businesses other than as indicated above.  In particular, the Debtors may elect not to conduct an Auction with respect to any Business to the extent that the Debtors determine, after consultation with the Consulting Professionals, that there are at least two higher and better Qualified Bids for such Business included in a larger transaction.  The date, time and location of any Auction shall be timely communicated to all Qualified Bidders and to the Consulting Professionals entitled to attend such Auction, and notice of the same shall be filed with the Bankruptcy Court no later than two business days before the scheduled Auction, provided that the Debtors may cancel any Auction on notice to all Qualified Bidders and the Consulting Professionals by 5:00 p.m. (prevailing Eastern Time) on the day prior to the Auction.  Each Auction shall be in accordance with the Bid Procedures and any procedural rules for the conduct of the Auction provided in advance to all Qualified Bidders entitled to attend such Auction.

Only the Debtors, the Consulting Professionals, representatives of the U.S. Trustee and any Qualified Bidder that has submitted a Qualified Bid for the applicable Business(es) (and the legal and financial advisors to each of the foregoing) shall be entitled to attend the Auction(s), along with such other persons as the Debtors may agree.  No bidder other than a Qualified Bidder will be entitled to make a bid at the Auction(s).  Each Qualified Bidder participating in an Auction must confirm that it (i) has not engaged in any collusion with respect to the bidding or the sale of any of the Businesses; (ii) has reviewed, understands and accepts these Bid Procedures and any procedural rules for the conduct of the Auction described by the Debtors to the Qualified Bidders in advance of the Auction; (iii) has consented to the jurisdiction of the Bankruptcy Court and (iv) intends to consummate its Qualified Bid if it is selected as a Successful Bid (as defined below), or if it is selected as an Alternate Bid (as defined below) that is subsequently deemed to be a Successful Bid as provided below.  Each Qualified Bidder participating in an Auction shall appear in person (including virtually, if allowed by the Debtors) at the Auction or through a duly authorized representative.  The Debtors may require proof of due authorization of any representative.

(b)    **Auction Procedures**

No later than 5:00 p.m. (prevailing Eastern Time) on the day prior to the Auction(s), the Debtors will notify all Qualified Bidders and the Consulting Professionals whether the Auction(s) will occur and if so, provide copies of the Qualified Bid(s) which the Debtors believe, after consultation with the Consulting Professionals, is the highest or otherwise best offer (the "Starting Bid(s)") to all Qualified Bidders for the applicable Business(es).  For

each Auction, the Debtors may provide to the Qualified Bidders an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders, and shall provide such information to the Consulting Professionals upon request.

The Debtors may employ and announce at the Auction(s), after consultation with the Consulting Professionals, additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction(s), which rules shall constitute an essential part of these Bid Procedures; provided that such rules are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code or any other order of the Bankruptcy Court entered in connection herewith and (ii) disclosed to each Qualified Bidder participating in the applicable Auction.  After consultation with the Consulting Professionals, the Debtors may establish at any time reasonable bonding or deposit requirements in connection with the Auction(s), and any bidder that fails to comply with such requirements shall cease to constitute a Qualified Bidder.

Bidding at the Auction(s) will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that the Debtors determine, after consultation with the Consulting Professionals, (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid"); and (ii) such Subsequent Bid or combination of Subsequent Bids is (A) for the first round, a higher or otherwise better offer than the Starting Bid (provided that if the Starting Bid is a Stalking Horse Bid, the bidding will start at an amount equal to the Stalking Horse Overbid), and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  The Debtors, in consultation with the Consulting Professionals, shall determine appropriate minimum bid increments or requirements for each round of bidding (the "Minimum Overbid").

After the first round of bidding and between each subsequent round of bidding, the Debtors, after consultation with the Consulting Professionals, shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Starting Bid or Leading Bid, as applicable.  To remain eligible to participate in an Auction, each Qualified Bidder must submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding; to the extent a Qualified Bidder fails to bid at any round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding, such Qualified Bidder will be disqualified from continuing to participate in the Auction (provided that the Debtors may, after consultation with the Consulting Professionals, allow each Qualified Bidder a "pass" on bidding in one, but not more than one, round of bidding in an Auction).

For the purpose of evaluating Subsequent Bids, the Debtors may or, at the request of the Consulting Professionals, shall require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or

credit-quality support information or enhancement acceptable to the Debtors and the Consulting Professionals) demonstrating such Qualified Bidder's ability to close the proposed transaction (provided that the Debtors shall be a party to any communications between the Consulting Professionals and the Qualified Bidder).  Failure of a Potential Bidder or Qualified Bidder to comply with any such information or diligence requests can, at the Debtors' discretion (after consultation with the Consulting Professionals), constitute cause to eliminate such bidder from the sale process.

The Debtors shall maintain a transcript of all bids made and announced at the Auction(s), including the Starting Bid(s), all Subsequent Bid(s), the Leading Bid(s), the Successful Bid(s) and any Alternate Bid(s).

**5.    Selection of Successful Bid(s)**

The Debtors reserve the right, after consultation with the Consulting Professionals, to (i) determine which Qualified Bid(s) are the highest or otherwise best offer(s) for the Business(es) as well as the appropriate criteria for this business judgment; and (ii) reject at any time prior to the entry of a Bankruptcy Court order approving an offer, without liability, any bid or offer that the Debtors deem to be (A) inadequate or insufficient, (B) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, (C) inappropriately difficult to value or compare to other bids or (D) contrary to the best interests of the Debtors and their estates.  Any dispute regarding any of the matters set forth in this paragraph or the Auction(s) shall be resolved by the Bankruptcy Court on an expedited basis (subject to the Bankruptcy Court's availability).

Prior to the conclusion of an Auction, the Debtors will:  (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the transaction; (ii) after consultation with the Consulting Professionals, identify the highest or otherwise best offer(s) (the "Successful Bid(s)") for the Business(es) subject to the Auction; and (iii) notify all Qualified Bidders participating in the Auction of the maker(s) of the Successful Bid(s) (the "Successful Bidder(s)"), and the amount and other material terms of the Successful Bid(s).  The Debtors may, after consultation with the Consulting Professionals, identify the next highest or otherwise best offer(s) (the "Alternate Bid(s)") for the Business(es) subject to the Auction and if so, notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party or parties that submitted the Alternate Bid(s) (the "Alternate Bidder(s)").

The Debtors shall file notice of the identity of the Successful Bidder(s) and any Alternate Bidder(s) at the Auction(s), the amount of the Successful Bid(s) and any Alternate Bid(s), any connections each Successful Bidder or Alternate Bidder have with the Debtors and any of the Debtors' current or former directors or officers, and any causes of action proposed to be sold by the Debtors to the Successful Bidder or any Alternate Bidder (each such notice, a "Notice of Successful Bidder"), with the Bankruptcy Court within one business day following the conclusion of the applicable Auction, but in no event less than one full business day prior to the applicable Sale Hearing, and shall use their reasonable efforts to obtain Bankruptcy Court

approval of the Successful Bid(s); <u>provided</u> that all rights and remedies of the Committee with respect thereto are preserved.  If the Successful Bidder or Alternate Bidder is a special purpose entity, the Notice of Successful Bidder shall also identify the entity or entities that are the primary equity holders, or otherwise control, the special purpose entity, and disclose whether those primary equity holders have any connections with the Debtors or any of the Debtors' current or former directors or officers.

Before the hearing to approve the Sale contemplated by the Successful Bid(s) or Alternate Bid(s), the applicable Debtors shall, after consultation with the Consulting Professionals, complete and execute all agreements, instruments or other documents necessary to consummate such Sale (subject to Bankruptcy Court approval).  For the avoidance of doubt, the Debtors shall have no obligation to consummate the transactions contemplated by a Successful Bid or an Alternate Bid until the entry of the applicable sale order by the Bankruptcy Court (each, a "<u>Sale Order</u>") in form and substance satisfactory to the Debtors in consultation with (i) the applicable Successful Bidder or Alternate Bidder and (ii) the Consulting Professionals.

## 6. **The Sale Hearing**

The hearing(s) to consider approval of the Sale(s) (the "<u>Sale Hearing(s)</u>") will be held before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market St, Wilmington, Delaware 19801 on the following dates, at times to be determined, or as soon thereafter as the Debtors may be heard:

| Business | Sale Hearing Date |
|---|---|
| Embed Business | February 27, 2023 |
| LedgerX Business | March 13, 2023 |
| FTX Japan Business | March 27, 2023 |
| FTX Europe Business | March 27, 2023 |

The Sale Hearing(s) may be adjourned or modified by the Debtors, after consultation with the Consulting Professionals, by an announcement of the adjourned date or modification at a hearing before the Bankruptcy Court and/or by filing a notice on the Bankruptcy Court's docket.  If the Debtors do not receive any Qualified Bids, the Debtors will notify the Consulting Professionals of such fact promptly (and in no event more than 24 hours thereafter) after the Bid Deadline and will report the same to the Bankruptcy Court at the applicable Sale Hearing.  At the Sale Hearing(s), the Debtors will seek approval of the offer(s) constituting the Successful Bid(s) and, at the Debtors' option after consultation with the Consulting Professionals, the offer(s) constituting any Alternate Bid(s), <u>provided</u> that all rights and remedies of the Committee in connection therewith are preserved.

Objections to a Sale, including any objection to the sale of the applicable Business(es) free and clear of any liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "<u>Sale Objection</u>"), or to entry of the applicable Sale

Order, must (i) be in writing and specify the nature of such objection; (ii) state, with specificity, the legal and factual bases thereof; (iii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules and the Bid Procedures Order and (iv) be filed with the Bankruptcy Court and served on the Objection Notice Parties, which service may be made through the CM/ECF filing system, with courtesy copies by email on the U.S. Trustee, proposed counsel to the Debtors and proposed counsel to the Committee, no later than (1) **seven days prior to the applicable Sale Hearing at 4:00 p.m. (prevailing Eastern Time)** or (2) in the event an Auction is conducted, and solely with respect to objections related to the conduct of the Auction, the identity of the Successful Bidder, any proposed sale of causes of action by the Debtors to the Successful Bidder, or lack of adequate assurance of future performance from the Successful Bidder with respect to Counterparties whose contracts are to be assumed and assigned, the earlier of (a) two business days after the Notice of Successful Bidder is filed at 4:00 p.m. (prevailing Eastern Time) and (b) at the Sale Hearing.

All Sale Objections not resolved by the parties prior thereto will be heard at the applicable Sale Hearing. Absent order of the Bankruptcy Court to the contrary, the failure of any party to timely file and serve a Sale Objection forever will bar such party from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation of the Sale, including the transfer of the applicable Business(es) to the Successful Bidder, free and clear of any liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

The Debtors' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon the approval of such bid(s) by the Bankruptcy Court. Following the approval of a Sale to a Successful Bidder and, at the Debtors' option as provided above, Alternate Bidder(s), if the Successful Bidder fails to consummate such sale because of (i) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (ii) a breach or failure to perform on the part of such Successful Bidder (such bidder, the "Breaching Bidder") upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then from and after such time, the applicable Alternate Bid will be deemed to be the Successful Bid (and the applicable Alternate Bidder will be deemed the Successful Bidder) and the Debtors will be authorized to effectuate the Sale to such Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court. If any such failure to consummate a Sale is the result of a breach by a Breaching Bidder of the applicable purchase agreement, the Debtors reserve the right to seek and pursue all available remedies against the Breaching Bidder, including, without limitation, the retention of the Good Faith Deposit of the Breaching Bidder as liquidated damages, subject to the terms of the applicable purchase agreement and applicable law.

## 7.    <u>Highest or Otherwise Best Bid</u>

Whenever these Bid Procedures refer to the highest or otherwise best offer or Qualified Bid, such determination shall take into account any factors the Debtors, after consultation with the Consulting Professionals, reasonably deem relevant to the value of the offer or Qualified Bid to the estates and may include, without limitation, the following: (i) the amount

and nature of the consideration; (ii) any liabilities or employee, vendor or supplier relationships assumed, excluded or rejected and the impact on the Debtors' estates of same; (iii) the Business(es) the Qualified Bidder seeks to purchase; (iv) the number, type and nature of any changes to the applicable Proposed Purchase Agreement(s) (or Stalking Horse Agreement(s), as applicable) requested by the Qualified Bidder; (v) the extent to which such modifications are likely to delay the closing of the Sale of the Business(es) and the cost to the Debtors of such modification or delay; (vi) the likelihood of the Qualified Bidder being able to close the proposed transaction and the timing thereof, including taking into account any conditions precedent, regulatory approvals and the cost of funds for the Debtors and their stakeholders; (vii) the reputation of the Qualified Bidder; (viii) any potential "know your customer" implications; (ix) the relative complexity of any transaction and the costs of executing such transaction and any related transactions it may require in the future; (x) to the extent applicable, the milestones, covenants and events of default arising under the Debtors' debtor-in-possession financing facility and the availability and cost of any necessary modifications; and (xi) the net benefit to the Debtors' estates.

### 8.   <u>Return of Good Faith Deposit</u>

The Good Faith Deposits of each Qualified Bidder will be held in an escrow account established by the Debtors and while held in escrow will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement, as set forth herein or pursuant to further order of the Bankruptcy Court. The Good Faith Deposits for each Qualified Bidder (other than the Successful Bidder(s) and any Alternate Bidder(s)) shall be returned on the date that is five business days after the applicable Auction (which shall be the latest applicable Auction if a bidder has submitted a combined bid for more than one Business), or as soon as is reasonably practicable thereafter.

The Debtors will retain the Good Faith Deposits of the Successful Bidder(s) and any Alternate Bidder(s) until the closing of the applicable Sale unless otherwise ordered by the Bankruptcy Court. At the closing contemplated by a Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit, except as otherwise provided in any agreement with respect to the Sale approved by the Bankruptcy Court. The Good Faith Deposit of any Alternate Bidder(s) will be released by the Debtors no later than five business days after the closing of the applicable Successful Bid.

Upon the return of the Good Faith Deposits, the respective Qualified Bidders will receive interest that has accrued thereon, if any; <u>provided</u> that the Debtors shall not have any obligation to return the Good Faith Deposit deposited by a Breaching Bidder if the failure to consummate a Sale is the result of a breach by such Breaching Bidder, which amount shall be paid to the Debtors by the escrow agent as liquidated damages, in addition to any and all rights, remedies or causes of action that may be available to the Debtors.

### 9.   <u>As Is, Where Is</u>

The sale of Businesses pursuant to these Bid Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by

the Debtors, their agents or their estates, except as provided in any agreement with respect to a Sale approved by the Bankruptcy Court. Each Qualified Bidder must expressly acknowledge and agree that neither the Debtors nor any of their advisors, representatives or agents will be liable for or bound by any express or implied warranties, guaranties, statements, representations or information pertaining to the Businesses or relating thereto that the Debtors or any advisor or agent representing or purporting to represent the Debtors might have made or furnished to whomever, directly or indirectly, orally or in writing, unless, with respect to the Debtors only, specifically set forth in the Bankruptcy Court's order approving a Sale.

## 10.     Free and Clear of Any and All Interests

Except as provided otherwise in any definitive agreement with respect to a Sale approved by the Bankruptcy Court, the Debtors shall seek to have the Bankruptcy Court, through the applicable Sale Order, approve the sale to the applicable Successful Bidder of all of the Debtors' right, title and interest in and to the assets subject thereto free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests attaching to the net proceeds of the Sale with the same validity and priority as such Interests applied against the assets purchased pursuant to these Bid Procedures.

## 11.     Reservation of Rights; Fiduciary Duties

The Debtors reserve their rights, in each case after consultation with the Consulting Professionals, to (i) extend the deadlines set forth in these Bid Procedures; (ii) modify bidding increments; (iii) adjourn, reschedule or cancel the Auction(s); (iv) withdraw from the Auction(s) any or all of the Businesses at any time prior to or during the Auction(s); (v) cancel the sale process or (vi) if the Debtors determine that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with the Bid Procedures Order, the Bankruptcy Rules or the Local Rules, to (A) impose, at or prior to the Auction(s), additional terms and conditions on the sale of the Businesses or (B) waive the terms and conditions set forth in these Bid Procedures with respect to any or all potential bidders. The Debtors also reserve their rights to adjourn the Sale Hearing(s) by an announcement of the adjourned date at a hearing before the Bankruptcy Court and/or by filing a notice on the Bankruptcy Court's docket.

Notwithstanding anything to the contrary contained herein, nothing in these Bid Procedures will prevent the Debtors from exercising or require the Debtors to take any action, or refrain from taking any action to the extent inconsistent with, their respective fiduciary duties under applicable law.