**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| | : | |
| *In re* | : | Chapter 11 |
| | : | |
| FTX TRADING LTD., *et al.*,[1] | : | Case No. 22-11068 (JTD) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Hearing Date:  Jan. 20, 2023, at 10:00 a.m.** |
| | : | **Objection Deadline:  Jan. 4, 2023** |
| | : | **(extended for U.S. Trustee to Jan. 14,** |
| | : | **2023, at 12:00 p.m.)** |
| | : | |
| | : | **Re:  D.I. 270 & 271** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION**
**FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**SULLIVAN & CROMWELL LLP AS COUNSEL TO THE DEBTORS**
**AND DEBTORS IN POSSESSION NUNC PRO TUNC TO THE PETITION DATE**

Andrew R. Vara, United States Trustee for Regions Three and Nine (the "U.S. Trustee"),

through his counsel, files this objection (the "Objection") to the Debtors' application to retain

Sullivan & Cromwell LLP as lead counsel [D.I. 270 & 271] (the "S&C Application").  In

support thereof, the U.S. Trustee respectfully represents:

## I.  PRELIMINARY STATEMENT

1.  Debtors' counsel has described these cases as one of the most abrupt and

difficult collapses in the history of corporate America and later stated that "the founders left the

Debtors more closely resembling a crime scene than an operating business[.]"  D.I. 225 ¶ 6.  The

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers
are 3288 and 4063, respectively.  Due to the large number of debtor entities in these chapter 11 cases,
a complete list of the Debtors and the last four digits of their federal tax identification numbers is not
provided herein.  A complete list of such information may be obtained on the website of the Debtors'
claims and noticing agent at https://cases.ra.kroll.com/FTX.

creditors' committee has described its constituents as "true victims of one of the largest and most brazen corporate frauds in history."  D.I. 405 ¶ 1.  Two of the Debtors' recent former executives have pleaded guilty to federal charges.  The Debtors' largest shareholder, who executed the omnibus corporate authority for the filing of these cases, has been indicted on federal charges.  The Debtors' current chief executive officer has testified before Congress.

2.      It is in this context that the Debtors seek to retain professionals, including Sullivan & Cromwell LLP ("S&C") as their main bankruptcy counsel, to manage these extremely complex, high-profile cases—cases in which there are already numerous ongoing investigations into the Debtors' collapse and in which there will certainly be more.  One of S&C's duties, according to the S&C Application, would be to lead such investigations.

3.      The U.S. Trustee objects to the S&C Application for two overarching reasons.  First, S&C's disclosures as filed are wholly insufficient to evaluate whether S&C satisfies the Bankruptcy Code's conflict-free and disinterestedness standards.  The incomplete disclosures are a sufficient and independent reason to deny the application.  Nevertheless, publicly available information thus far raises the specter that S&C may have a conflict or not be disinterested given that an S&C partner of eight years became general counsel for certain of the Debtors approximately 14 months before the petition date.  Second, the scope of S&C's retention cannot be allowed as proposed.  Bankruptcy Code sections 1106(a)(3) and 1107(a) specifically preclude debtors in possession from investigating themselves, which is exactly what the Debtors propose in the S&C Application.  S&C's close connection with an insider of the Debtors also renders S&C too conflicted to investigate Debtors' downfall.  And any investigation led by S&C would be duplicative and wasteful of estate resources if the Court were to grant the U.S. Trustee's pending motion to appoint an examiner with a comprehensive investigative mandate.

2

4.      Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 require that the Debtors' professionals fully disclose all connections that bear on the Debtors and these cases.  Because these cases are so large and affect a multiplicity of private and public interests, the transparency and disclosure required by the Bankruptcy Code and Rules take on outsize importance.  But the S&C Application as filed lacks meaningful disclosure of several important points, especially S&C's prepetition relationship and service to the Debtors.  The U.S. Trustee, therefore, submitted information requests to S&C.  Although the U.S. Trustee received information from S&C in response, he has not received a supplemental declaration that fully and satisfactorily responds to all of his inquiries and comments.  In addition, S&C has not publicly filed its supplemental disclosures provided to the U.S. Trustee, although it has informed the U.S. Trustee that it intends to do.

5.      S&C's disclosures as originally filed are woefully insufficient about S&C's relationship to the Debtors before the Petition Date.  Indeed, the S&C Application is virtually silent as to both its connections to the Debtors and the work it did for the Debtors.  For example, the S&C Application omits the fact that the General Counsel of certain of the Debtors, Mr. Ryne Miller, was a partner at S&C until about 14 months before the filing.[2]  Based on public reports, Mr. Miller appears to be one of the most senior attorneys within the FTX organization given his role in orchestrating the Debtors' filings and Sam Bankman-Fried's resignation.  Nor does the S&C Application provide any detail about the type of services S&C provided to the Debtors, including as the Debtors were collapsing.  Unless and until S&C files a supplemental

---

[2] Some public reports have identified Mr. Miller as general counsel at "FTX US," while others have identified him as general counsel at Debtor West Realm Shires Inc.

declaration that fully addresses all aspects of disclosure as required by Bankruptcy Rule 2014, the S&C Application should be denied.[3]

6.      In addition to the disclosure and potential conflict issues, the S&C application cannot be approved as proposed because of its overly broad scope of duties.  In chapter 11, only trustees and examiners (under 11 U.S.C. § 1106 (b)), not debtors in possession, have authority to investigate "the acts, conduct, assets, liabilities, and financial condition of the debtor," 11 U.S.C. §§ 1106(a)(3) and 1107(a), and section 1107(a)'s prohibition on debtors in possession exercising those trustee powers is one of the few areas where trustee and debtor in possession powers diverge.  It was intentional.  Notwithstanding this statutory prohibition, Debtors seek to delegate an investigative and reporting role to their own, privately chosen professionals, including S&C, which should not be allowed.

7.      Moreover, based on the publicly available information, any investigation of the Debtors would necessarily focus on those with connections to S&C—and possibly on S&C itself.  Thus, S&C cannot be involved in, much less lead, these investigations as proposed because of its close connections to Mr. Miller and the potential for other connections undisclosed as of now.

8.      Furthermore, because the U.S. Trustee has a pending motion to appoint an examiner, which will not be heard until weeks after the hearing on this retention application, the scope of S&C's employment should be limited so that, if an examiner is appointed, S&C does not duplicate the services of an examiner, an independent fiduciary with no allegiance to any particular stakeholder and without the taint of a long and close connection to an insider of the

---

[3] And once the S&C supplemental declaration is filed, the parties and the court can evaluate whether S&C satisfies the Code's standards for professional retention.

Debtors.  At a minimum, without those express limits on scope of the engagement, the S&C Application should be denied.

9.    Finally, although promising to provide additional public disclosure, S&C has not done so as of the filing of this objection.  S&C avoids transparency about its connections, as demanded by the Bankruptcy Code and Rules, while rebuffing requests from the U.S. Trustee for additional time to obtain necessary information.[4]  Thus, the U.S. Trustee files this objection now, but asks that the Court preserve the right for all parties to object or comment as appropriate until after there has been a meaningful opportunity to review any supplemental declaration from S&C once filed.

## II.    JURISDICTION, VENUE AND STANDING

10.    This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. § 1334.  This Court is authorized to hear and determine the Applications and this Objection pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012.  Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

11.    Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest);

---

[4] At the January 4 scheduling conference, this Court granted the U.S. Trustee's request to adjourn five of 21 retention applications to a January 20 hearing over S&C's objection, after noting the asymmetry of resources between Debtors and the U.S. Trustee. More recently, S&C initially refused to extend the deadline for the U.S. Trustee to object to the S&C Application beyond noon on Friday, January 13, 2023, unless the U.S. Trustee agreed to refrain from objecting to S&C's inadequate disclosures.

*Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Specifically, the U.S. Trustee is charged with "monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications[.]" 28 U.S.C. § 586(a)(3)(I).

12.     The U.S. Trustee has standing to be heard with respect to the Objection pursuant to 11 U.S.C. § 307.

### III.     FACTUAL BACKGROUND

13.     On November 11, 2022, all Debtors other than West Realm Shires Inc. filed voluntary chapter 11 petitions in this Court. On November 14, 2022, West Realm Shires Inc. filed a voluntary chapter 11 petition in this Court.

14.     The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

15.     On December 1, 2022, the U.S. Trustee filed a motion for the appointment of an examiner [D.I. 176] (the "Examiner Motion"). The states of Wisconsin and Vermont have filed joinders to the Examiner Motion [D.I. 263 & 339].

16.     On December 13, 2022, the Debtors' current chief executive officer, John J. Ray III, testified before Congress that "[o]ur investigative and cyber security teams, led by the law firm Sullivan & Cromwell, are already well into the process of gathering the evidence that will provide us with an understanding of what led to this collapse. . . . The scope of the investigation underway is enormous." D.I. 371 Exh. A at 4-5.

17.     On December 15, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [D.I. 231].

18.     On December 21, 2022, the Debtors filed the S&C Application.  The S&C Application seeks to employ S&C as lead counsel to, among other things: (a) "assist[] the Debtors with investigating all potential estate causes of action;" and (b) "assist[] with the preservation of the Debtors' estates, including the prosecution of actions commenced under the Bankruptcy Code or otherwise on their behalf[.]"  S&C Application ¶ 10(c) & (f).

19.     The disclosures in the S&C Application were limited to three sentences. The following is the sum total of the disclosures regarding prepetition work:

> S&C was engaged by the Debtors for a limited number of matters prior to the Petition Date, chiefly with respect to acquisition transactions and specific regulatory inquiries relating to certain U.S. business lines.  The total amount of fees and expenses paid to S&C for all of these matters was $8,564,487.50, over the period from July 2021 to the Petition Date.  S&C was not primary external counsel to any Debtor prior to the Petition Date.

S&C Application, Dietderich Declaration, ¶ 16.  There were no disclosures regarding connections to any of the Debtors' internal lawyers or any explanation as to how S&C came to start providing services for the Debtors.  Nor were there any disclosures regarding whether and to what extent S&C was involved in the Debtors' selection of John Ray as CEO.

20.     On January 4, 2023, a customer of the Debtors filed, through counsel, an objection to the S&C Application.  D.I. 369.  An amended objection was filed January 10, 2023. D.I. 459.  The objection asserts that "FTX US's general counsel," Ryne Miller, worked at S&C for eight years and is a former partner there.  *Id.* ¶¶ 2 & 22.  As explained above, the S&C Application discloses no connection to Mr. Miller.

## IV. <u>ARGUMENT</u>

21.     As discussed more fully below, the U.S. Trustee objects to the S&C Application because it lacks full disclosure on numerous key points, especially S&C's prepetition relationship and service to the Debtors.  The U.S. Trustee also objects to the S&C Application to the extent S&C intends to represent the Debtors in investigating themselves, in violation of the limits of 1107(a) of the Code, which would usurp and duplicate the services of an examiner, if appointed, and which would place S&C in the conflicted position of investigating itself and its former partner.

**A. The S&C Application Should Be Denied Because S&C Has Not Fully Disclosed Its Connections.**

22.     The S&C Application should be denied because S&C has not fully disclosed its connections as required by section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).  Section 327 provides that the trustee or debtor in possession may employ, with court approval, professionals who are disinterested and who do not hold or represent interests adverse to the estate.  11 U.S.C. § 327.  Bankruptcy Rule 2014 imposes a complementary duty of disclosure so that courts and parties can determine whether a professional to be employed satisfies section 327's ethical requirements.  Said differently, Bankruptcy Rule 2014 has one primary purpose—to facilitate compliance with section 327.  Bankruptcy Rule 2014(a) requires that employment applications include, among other disclosures, "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Fed. R. Bankr. P. 2014.  "Under Bankruptcy Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed."  *In re Leslie Fay Cos., Inc.,* 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994).  "Bankruptcy

Rule 2014 disclosure is not optional; it's mandatory." *In re Dickson Properties, LLC*, No. 11-11656-BFK, 2012 WL 2026760, *8 (Bankr. E.D. Va. June 5, 2012); *see also In re Granite Partners LP*, 219 B.R. 22, 45 (Bankr. S.D.N.Y. 1998) ("The trustee broke the cardinal principle of Rule 2014(a).  He arrogated to himself a disclosure decision that the court must make.").

23.     The disclosure requirement of Bankruptcy Rule 2014(a) is "considered sacrosanct because the complete and candid disclosure by a [professional] seeking employment is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment . . . and to make an informed decision on whether the engagement is in the best interest of the estate." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (Walrath, C.J.) (citations omitted).  Under Bankruptcy Rule 2014(a), professionals are required to disclose "*all connections* with parties in interest in the case, rather than furnishing only those which appear to implicate 'disinterestedness' or 'adverse interest' concerns." *Id.* at 190 (emphasis in original, citations omitted).  Additionally, under 11 U.S.C. § 328(c), this Court has the power to deny allowance of compensation and reimbursement of expenses to a professional if, "at any time during the professional person's employment," the professional holds an interest adverse to the estate with respect to the matter on which such professional person is employed.  Accordingly, the duty to disclose under Bankruptcy Rule 2014(a) is a continuing obligation to facilitate this Court's critical role in ensuring that impermissible conflicts of interest are rooted out.  *See Rome v. Braunstein*, 19 F.3d 54, 57-58 (1st Cir. 1994); *In re Granite Partners*, 219 B.R. at 35; *In re CF Holding Corp.*, 164 B.R. 799, 804-05 (Bankr. D. Conn. 1994).

24.     The disclosure requirements of Bankruptcy Rule 2014(a) have been construed strictly by the courts in furtherance of the Rule's protective function.  *See In re Jore Corp.*, 298 B.R. 703, 725 (Bankr. D. Mont. 2003).  Accordingly, any and all information which

has any bearing on a professional's eligibility for employment must be disclosed. *See id.* (the disclosure requirements of Rule 2014(a) "do not give the attorney the right to withhold information because it is not apparent to him or her that a conflict exists"); *In re Southmark Corp.*, 181 B.R. 291, 296 (Bankr. N.D. Tex. 1995) ("The professional person must disclose and continue to disclose all connections that may effect [sic] employment eligibility" (citation omitted)); *Leslie Fay Cos.*, 175 B.R. at 533 (Bankr. S.D.N.Y. 1994) ("All facts that may have any bearing on the disinterestedness of a professional must be disclosed"); *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) (in complying with disclosure obligations, professionals are not free to "pick and choose which connections are irrelevant and trivial"). This Court is under no obligation to sift through the record for the purposes of policing professional conflicts of interest—under Bankruptcy Rule 2014(a), it is the professional's exclusive duty to bring the requisite information to the Court's attention. *See In re BH & P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991); *see also In re Hathaway Ranch Partnership*, 116 B.R. 208, 219-20 (Bankr. C.D. Cal. 1990) ("A negligent failure to disclose all facts required by Bankruptcy Rule 2014(a) does not relieve the professional of the consequences of failing to make a complete disclosure.") (citations omitted); *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 237 (Bankr. E.D. Cal. 1988)); ("Negligent omissions do not vitiate the failure to disclose.") (citations omitted).

25.    S&C's disclosures are deficient in several areas. Most importantly, the S&C Application fails to fully disclose S&C's connections to the Debtors, including its prepetition work for the Debtors, its role in the Debtors' filing and in selecting the Debtors' other representatives such as the chief executive officer, and its relationships with the Debtors' officers. For example, the S&C Application omits its connection to general counsel for certain of the Debtors, Mr. Miller, who played a key role in making the decision to file for bankruptcy

according to public reports.  Public information has revealed that Mr. Miller is a former partner

of S&C and was an S&C partner up until 14 months prepetition.  Nor does it disclose whether

other members of the Debtors' legal team were formerly employed at S&C.  The S&C

Application devotes only three sentences to S&C's prepetition work for the Debtors and provides

no specifics on that work, despite the immense importance of the prepetition period to the

various ongoing and future investigations on the Debtors' collapse.  Given the context of these

cases, and the multiple investigations that are already ongoing and that will need to be performed

in the future, full disclosure about S&C's prepetition role with the Debtors could not be more

relevant or necessary.  *See In re Granite Partners,* 219 B.R. at 38; *see also In re NNN 400*

*Capitol Center 16 LLC*, No. 21-3013, 2022 WL 17831445 at *4 (3d Cir. Dec. 21, 2022) ("Courts

must be able to rely on full and true disclosures to do their job properly.  And while all parties

are entitled to have their claims fairly heard, courts have scarce resources to meet the many

pressing demands put on them.  We expect attorneys to appreciate these realities.").

26.     The S&C Application contains numerous other disclosure deficiencies,

including an inappropriate qualifier on the scope of its connections and potential conflicts.  That

is, in paragraphs 9 and 22 of the declaration, it states that S&C "does not hold or represent an

interest adverse to the Debtors' estates with respect to matters on which S&C is employed," but

the qualifier of "with respect to matters on which S&C is employed," is the standard for more

limited section 327(e) retentions, not section 327(a) retentions, and should be deleted or

explained.

27.     The U.S. Trustee and other parties in interest will need to review the to-

be-filed supplemental disclosure before determining whether S&C's disclosure failures have

been adequately remedied.

**B. The S&C Application Would Improperly Usurp and Duplicate the Services of An Examiner.**

28.     Section 1106(b) of the Bankruptcy Code provides: "An examiner appointed under section 1104(d) of this title shall perform the duties specified in paragraphs (3) and (4) of subsection (a) of this section, and, except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor in possession not to perform."

29.     Section 1106(a) of the Bankruptcy Code provides in relevant part: "A trustee shall— . . . (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; (4) as soon as practicable—(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate[.]"  11 U.S.C. § 1106(a).

30.     The S&C Application seeks to assign tasks to S&C that should properly be provided by an examiner, including to "assist[] the Debtors with investigating all potential estate causes of action;" and "assist[] with the preservation of the Debtors' estates, including the prosecution of actions commenced under the Bankruptcy Code or otherwise on their behalf[.]" S&C Appl. ¶ 10(c) & (f).

31.     But the Debtors' professionals cannot perform these services because the Bankruptcy Code excepts them from the debtor in possession's duties.  Section 1107(a) of the Bankruptcy Code provides: "Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession . . .

12

shall perform all the functions and duties, <u>except the duties specified in sections 1106(a)(2), (3),</u> <u>and (4) of this title,</u> of a trustee serving in a case under this chapter."  11 U.S.C. § 1107(a) (emphasis added); *see In re Green Pastures Christian Ministries, Inc.*, 437 B.R. 465, 469 (Bankr. N.D. Ga. 2010) (observing in dicta that the debtor in possession "has the powers of a trustee other than to investigate itself."); *Securities and Exch. Comm'n v. American Trailer Rentals Co.*, 379 U.S. 594, 617 (1965) ("[I]t is as true now as when Chapter X was enacted, that 'a debtor in possession cannot be expected to investigate itself.'" (quoting Hearings before House Committee on the Judiciary on H.R. 6439, 75th Cong., 1st Sess., 176 (testimony of Douglas, J., then-serving as Chairman of the SEC); S. Rep. 95-989, 1978 U.S.C.C.A.N. 5787, 5902 (Section 1107 "places a debtor in possession in the shoes of a trustee in every way.  The debtor is given the rights and powers of a chapter 11 trustee.  He is required to perform the functions and duties of a chapter 11 trustee <u>(except the investigative duties)</u>.") (emphasis added); *cf.* Section 327(f) ("The trustee may not employ a person that has served as an examiner in the case.").

32.      Where a statute's meaning is plain, "the sole function of the courts is to enforce it according to its terms."  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  "[I]n the absence of ambiguity in the statute, [courts] must apply it as written."  *In re Winstar Commc'ns, Inc.*, 378 B.R. 756, 761 (Bankr. D. Del. 2007).  "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."  *Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 398 (1984) (*citing TVA v. Hill*, 437 U.S. 153, 194-95 (1978)); *see also In re Columbia Gas Sys. Inc.*, 33 F.3d 294, 302 (3d Cir. 1994) ("the bankruptcy court cannot waive or modify Bankruptcy Code requirements that are plain and unambiguous because it agrees with the policy underlying the debtor's arguments."); *Norwest Bank Worthington v. Ahlers*, 485 U.S.

197, 206 (1988) (bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code.").

33.    Thus, the Bankruptcy Code does not allow the Debtors' professionals to perform the investigation of the Debtors and thus the duties the Debtors seek to assign to S&C in sections 10(c) & (f) of the S&C Application should not be approved.  Moreover, as described in the previous section, though S&C's disclosures are insufficient in this area and must be supplemented, S&C's prior work for the Debtors and the publicly available information about its relationship to the Debtors raise questions specifically as to S&C's ability to be involved in any capacity in an investigation of the Debtors.  The investigations into the prepetition period may also target prepetition professionals of the Debtors, possibly including S&C and its role in the Debtors' collapse.  And if S&C's employment in these cases results from its relationship with Mr. Miller, a former partner of the firm, as it appears, the need to limit the scope of S&C's services becomes all the more clear.  If Mr. Miller brought this lucrative engagement to S&C, then could S&C fully investigate any potential causes of action against Mr. Miller?  Would S&C "bite the hand that feeds it quite as hard as the circumstances warrant[]"?  *In re Granite Partners,* 219 B.R. at 38; *see also In re McKinney Ranch Assocs.*, 62 B.R. 249, 255 (Bankr. S.D. Cal. 1986) ("The jaundiced eye and scowling mien of counsel for the debtor should fall upon all who have done business with the debtor recently enough to be potential targets for the recovery of assets of the estate.").  And even if it would, would creditors and other parties in interest have confidence in the independence and integrity of such an investigation?  *See In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 549 (Bankr. S.D.N.Y. 1997) (The administration of bankruptcy cases "not only should be right but must seem right.") (citation omitted).

34.     Accordingly, if the Court were to approve the application, the scope of services that S&C is authorized to provide should be narrowed to adhere to the plain language of sections 1104, 1106, and 1107 of the Bankruptcy Code and to avoid duplicating the fees and services of an examiner, if appointed.  "A . . . fundamental principle governing the allowance of counsel fees is that an attorney is not entitled to compensation for the assumption of the duties of the Receiver or Trustee.  The rationale underlying this rule is twofold: first, the estate must not be depleted through a possible duplication of charges for the same service; and second, the assumption of the Receiver's or Trustee's duties by counsel would be in derogation of the statutory scheme." *In re Meade Land & Development Co., Inc.*, 527 F.2d 280, 285 (3d Cir. 1975) (internal citation omitted).  The U.S. Trustee respectfully submits that this same principle applies to chapter 11 examiners if one is appointed here: professionals for a debtor in possession should not be permitted to assume the duties of a chapter 11 examiner because duplication of fees and costs between the debtor in possession's professionals and the examiner would deplete the estate, and because usurping the duties of a chapter 11 examiner would be in derogation of the statutory scheme of sections 327(f), 1104, 1106, and 1107.  Rather, if an examiner is appointed, there should be a clear demarcation between the Debtors' professionals and the duties of the examiner.  *Cf. In re JNL Funding Corp.*, No. 10-73724, 2010 WL 3448221 at *4 (Bankr. E.D.N.Y. Aug. 26, 2010) ("ORDERED, that during the period of time that the Examiner is conducting his or her investigation, no estate professional nor non-estate professional shall conduct any investigation into or analysis of the matters made the subject of the Examiner's responsibilities as set forth herein for which compensation is sought from this estate; any such investigation shall not be compensated by this Court, as such would be duplicative of the

15

Examiner's role and duties under Section 1104 for which the Examiner would seek

compensation under Section 330 of the Bankruptcy Code[.]").

## V.   CONCLUSION

WHEREFORE the U.S. Trustee requests that this Court deny the S&C

Application (1) unless and until S&C files its supplemental disclosures and the U.S. Trustee has

an adequate opportunity to review them and to determine whether the retention is objectionable

and (2) unless the scope of services is narrowed to ensure no duplication of the services and fees

of a chapter 11 examiner.  The U.S. Trustee also asks that the Court grant such other relief as the

Court finds just and appropriate.


Dated: January 13, 2023
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 and 9**

By: */s/ Juliet Sarkessian*
Juliet M. Sarkessian
Benjamin A. Hackman
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
juliet.m.sarkessian@usdoj.gov
benjamin.a.hackman@usdoj.gov

-and-

David Gerardi
Trial Attorney
One Newark Center

1085 Raymond Boulevard
Suite 2100
Newark, NJ  07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
david.gerardi@usdoj.gov