# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al*.,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF WILLIAM A. BURCK IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO NOVEMBER 13, 2022**

I, William A. Burck, being duly sworn, hereby state as follows:

1.     I am the global co-managing partner in the law firm of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), proposed special counsel to FTX Trading Ltd. and its affiliated debtors and debtors in possession (collectively, the "Debtors"). At the request of the Office of the United States Trustee, I submit this supplemental declaration ("Supplemental Declaration"), pursuant to Bankruptcy Rule 2014(a), to supplement the disclosures contained in the *Declaration of William A. Burck in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel for Debtors and Debtors in Possession*, Nunc Pro Tunc *to November 13, 2022* (the "Burck Declaration") attached as Exhibit B to the *Debtors' Application for Entry of an Order Authorizing*

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

*the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel for Debtors and Debtors in Possession*, Nunc Pro Tunc *to November 13, 2022* [Docket No. 280] (the "Application").[2]  Unless otherwise stated in this Supplemental Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.

## COMPENSATION RECEIVED

2.  As stated in the Burck Declaration, during the ninety days immediately preceding the Petition Date, Quinn Emanuel billed and collected from the Debtors $577,863.57, including $311,608.01 in drawdowns on the retainer referenced in paragraph 29 of the Burck Declaration and $266,255.56 in payments from the Debtors.  The retainer and all subsequent payments were made by FTX Trading Ltd.  These invoiced amounts and payments were as follows:

| Payment Date | Payment Amount | Invoice Date | Invoice Amount | Date Range of Services | Payment by Retainer? | Retainer Balance | Days to Payment |
|---|---|---|---|---|---|---|---|
| 06/23/22 | $51,077.94 | 04/21/22 | $51,077.94 | 03/08/22 – 03/31/22 | Y | $448,922.06 | 63 |
| 06/23/22 | $53,608.26 | 05/16/22 | $53,608.26 | 04/01/22 – 04/30/22 | Y | $395,313.80 | 38 |
| 06/23/22 | $77,969.79 | 06/17/22 | $77,969.79 | 05/01/22 – 05/31/22 | Y | $317,344.01 | 6 |
| 08/06/22 | $5,735.50 | 07/18/22 | $5,735.5 | 06/01/22 – 06/30/22 | Y | $311,608.51 | 19 |
| 08/24/22 | $19,742.50 | 08/23/22 | $19,742.50 | 07/01/22 – 07/31/22 | Y | $291,866.01 | 1 |
| 08/24/22 | $9,097.50 | 06/16/22 | $9,097.50 | 05/01/22 – 05/31/22 | Y | $282,768.51 | 69 |
| 08/24/22 | $36,786.00 | 07/18/22 | $36,786.00 | 06/01/22 – 06/30/22 | Y | $245,982.51 | 37 |
| 09/27/22 | $110,847.00 | 07/18/22 | $110,847.00 | 06/01/22 – 06/30/22 | Y | $135,135.51 | 71 |
| 09/27/22 | $15,028.60 | 08/23/22 | $15,028.60 | 07/01/22 – 07/31/22 | Y | $120,106.91 | 35 |

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Burck Declaration.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 09/27/22 | $192,328.58 | 09/26/22 | $192,328.58 | 08/01/22 – 08/31/22 | Y[3] | $35,371.98 | 1 |
| 09/27/22 | $35,371.98 | 09/26/22 | $35,371.98 | 08/01/22 – 08/31/22 | Y | $0.00 | 1 |
| 10/21/22 | $10,615.00 | 10/19/22 | $10,615.00 | 09/01/22 – 09/30/22 | N | $0.00 | 2 |
| 10/24/22 | $41,717.59 | 10/19/22 | $41,717.59 | 09/01/22 – 09/30/22 | N | $0.00 | 5 |
| 10/28/22 | $106,329.32 | 10/19/22 | $106,329.32 | 09/01/22 – 09/30/22 | N | $0.00 | 9 |
| Waived | $0.00 | 11/21/22 | $66,951.97 | 10/01/22 – 10/31/22 | N | $0.00 | N/A |
| Waived | $0.00 | 11/21/22 | $28,060.00 | 10/01/22 – 10/31/22 | N | $0.00 | N/A |
| Waived | $0.00 | 11/21/22 | $2,632.39 | 10/01/22 – 10/31/22 | N | $0.00 | N/A |

3. The principal attorneys presently expected to work on this engagement are as follows (rates reflect a 10% reduction):

| Individual | Position | Hourly Rate |
|---|---|---|
| William Burck | Partner | $1,917.00 |
| John Shaffer | Partner | $1,917.00 |
| Sascha N. Rand | Partner | $1,593.00 |
| Katie Lemire | Partner | $1,593.00 |
| Isaac Nesser | Partner | $1,494.00 |
| Eric Winston | Partner | $1,494.00 |
| Matthew Scheck | Partner | $1,318.50 |
| Jaclyn Palmerson | Associate | $1,143.00 |
| Samuel Seneczko | Associate | $985.00 |
| Olivia Yeffet | Associate | $904.50 |
| Tanmayi Sharma | Associate | $841.50 |

4. Additional attorneys, and other staff and paralegals, may work on the engagement as well, and the applicable range of their rates is set forth in the Burck Declaration.

5. The engagement letter setting forth the terms and conditions of the proposed employment and retention between the Debtors and Quinn Emanuel (the "Engagement Letter") is

---

[3] $84,734.93 drawn from retainer; remaining $107,593.65 paid directly.

attached hereto as **Exhibit A**.  As reflected in the Engagement Letter, the terms and conditions in the Engagement Letter are subject to, and superseded by, all applicable provisions of the Bankruptcy Code and Rules and the Court's order approving Quinn Emanuel's engagement.

## CONTINUED INQUIRY

6. Continued inquiry will be made following the filing of this Supplemental Declaration by undertaking the same procedures described in the Burck Declaration on a periodic basis, except where otherwise specified, with additional disclosures to be filed in this Court if necessary or otherwise appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: Washington D.C., District of Columbia
       January 13, 2023


                                        */s/ William A. Burck*
                                        William A. Burck
                                        Partner, Quinn Emanuel Urquhart &
                                        Sullivan, LLP

## __Exhibit A__

**Engagement Letter**

November 20, 2022

**<u>STRICTLY CONFIDENTIAL -- ATTORNEY-CLIENT
PRIVILEGED MATERIAL</u>**

FTX Trading Ltd.
Attn: John Ray III, Chief Executive Officer

**Re:     Engagement as Special Counsel for FTX Trading Ltd. and its Affiliated Debtors ("FTX Group")**

Dear John:

We are pleased to confirm the decision of the boards of directors of FTX Group to engage Quinn Emanuel Urquhart & Sullivan, LLP ("QEU&S") as special counsel to represent FTX Group. The engagement shall include assisting the boards of directors in: (1) conducting independent investigations into the acts, conduct, assets, liabilities, and financial condition of FTX Group, including any facts bearing on fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of FTX Group; (2) evaluating the historical operation of FTX Group's business and the desirability of the continuance of such business; (3) determining the existence of, and if the boards deem it appropriate, prosecuting and/or settling, any claim or cause of action available to any of FTX Group's estates; and (4) any other matter the boards of directors deem relevant to FTX Group's cases or to the formulation of a plan. In all matters, QEU&S will minimize duplication with FTX Group's other counsel (collectively, the "Engagement").

The purpose of this letter is to confirm the terms and conditions upon which QEU&S will provide legal services as special counsel to FTX Group, as debtor and debtor in possession, pursuant to section 327(e) of the Bankruptcy Code. In this engagement letter, we sometimes refer to FTX Group as "you" or "your" and to QEU&S as "we," "our" or "us."

*Scope of Engagement*

QEU&S's services will be limited to the representation of FTX Group in the Engagement. Our services will not extend to other business, personal or legal affairs of, or to any other aspect of FTX Group's activities. Our representation will conclude with the restructuring or reorganization of FTX Group assets and liabilities including any potential claims that FTX Group may possess against any of its insiders, including claims that could be prosecuted, settled, or released under title 11 of the United States Code, or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter. QEU&S's receipt or use of confidential or other information from FTX Group or others in the course of this representation does not mean that QEU&S will render any other advice or services either to FTX Group or any other person or entity. Similarly, FTX Group will not look to or rely upon QEU&S for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom FTX Group may be dealing.

*Insurance Coverage and Claims*

You understand and agree that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement. If you have not done so already, you should consider tendering this matter to your insurer(s), in order to determine whether there is insurance coverage for any of the claims asserted.  Subject to ascertaining whether there are any conflicts, we are happy to expand the Engagement to include such advice, if requested and agreed in writing.

*Responsible Persons – Communications Between QEU&S and FTX Group*

We will keep you regularly and currently informed of the status of the Engagement and will consult with you whenever appropriate.  Within QEU&S, I will be primarily responsible for the Engagement along with others who will be identified as the need arises.  My telephone number is (202) 538-8120 and e-mail address is williamburck@quinnemanuel.com.  In the event that you need to reach me, please leave a voicemail message.  It is our policy that all calls will be returned promptly and, in any event, no later than within one business day of receipt of the call; if you have not received a return call within that time, please call again.

*Protection of Client Confidences – High Tech Communication Devices*

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences.  We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person.  Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement.  Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections.  Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

*FTX Group's Designee to Receive Communications*

We understand that you, John Ray III, and Hon. Joseph J. Farnan, Jr. (Ret.), in his capacity as lead independent director, will be primarily responsible for managing the Engagement within FTX Group and that you and Judge Farnan are authorized to direct our activities and deal with us on any issues relating to the Engagement, including billing.  Unless otherwise directed by FTX Group, we shall fulfill our obligation to FTX Group to keep FTX Group informed as to the progress of the Engagement by communicating with you and Judge Farnan.

*Self-Representation*

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "General Counsel"). The General Counsel acts as a lawyer to the firm, representing QEU&S in a variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients. Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters. QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm. It is possible that attorneys or staff working on matters for FTX Group may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of FTX Group. In the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning FTX Group's representation, and may receive legal advice related to QEU&S's work on FTX Gorup's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place. By retaining QEU&S FTX Group acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of FTX Group and after such representation ends, and FTX Group confirms that such communications are privileged and protected against disclosure to you.

*Responsibilities of Client*

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments. In addition, it is important that FTX Group and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

*Preservation of Electronically Stored Information ("ESI")*

Recent changes in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel. An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("ESI"), is an essential prerequisite to the development of a successful litigation strategy for every client. The duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to entry of a default against you/your action being dismissed). In the event FTX Group has not already issued a litigation hold in this matter, we request that you immediately do so. We would be pleased to assist you with preparing the litigation hold and otherwise providing guidance on the duties related to preservation of ESI.

*No Guarantee of Result*

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated.  You understand that any such statements are opinions and beliefs only and are not promises or guaranties.  We cannot and do not guarantee any particular course or outcome of the Engagement.

*Conflicts of Interest*

Our firm has many lawyers and several offices. We may currently or in the future represent one or more other clients in matters involving FTX Group, and we may represent parties that are adverse to FTX Group in matters unrelated to the Engagement. We are undertaking this Engagement on condition that we may represent other clients in matters in which we do not represent FTX Group even if the interests of the other clients are adverse to FTX Group (including the appearance on behalf of another client adverse to FTX Group in litigation or arbitration), provided that the other matter is not substantially related to our representation of FTX Group in connection with the Engagement and that in the course of representing FTX Group we do not obtain confidential information from FTX Group material to the representation of the other client. FTX Group's express consent to this arrangement is required because of its possible adverse effects on the performance of our duties as attorneys to remain loyal to each client, to maintain client confidences, and to render legal services with vigor and competence. Also, if an attorney does not continue an engagement or is required to withdraw from a matter, the client may incur delay, prejudice or additional cost associated with acquainting new counsel with the matter.  Pursuant to Section 327(e) of the Bankruptcy Code and applicable Bankruptcy and Local Rules, QEU&S will, as soon as reasonably practicable, disclose any parties represented by the firm which, to QEU&S' knowledge, have connections to FTX Group, and will not represent any party with respect to the matters on which QEU&S have been employed by FTX Group.

*Bankruptcy Provision*

Notwithstanding anything herein to the contrary, we agree to comply with the retention and fee application process and U.S. Trustee guidelines for payment of fees and reimbursement of expenses imposed by law and any order of the Bankruptcy Court.

*Billing*

Our fees are based on the amount of time we spend on this Engagement.  Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect. In addition, our associate rates are based on years out of law school, so annually on September 1, each associate's rate moves up to the next higher class rate on our rate schedule; for example, on September 1, 2022, a class of 2021 graduate's rate moved up from a first-year associate rate to a second-year associate rate, and so on.  These "class graduation" adjustments are not rate increases, and FTX Group acknowledges and agrees to these associate class adjustments by

signing this letter.  The standard billing rates of the attorneys whom we anticipate assigning to this Engagement currently range from $830.00 to $2,130.00.  **We are able to provide you with a 10% discount on our standard billing rates for all timekeepers, which will be applied to the total fees in each invoice.**

*Estimates*

FTX Group understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter.  From time to time during the course of our Engagement we may provide FTX Group with estimates of costs and fees or projected budgets for our work going forward.  Ordinarily, we do not provide these projections unless FTX Group specifically requests us to do so.  When we do provide them, we will make a good faith effort to estimate what the future cost will be.  However, in no case can such projections be guarantees regarding what the actual cost will be.  The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the litigation.  In all instances when we provide such projections, they should be viewed as guidance only.  The fees and costs which FTX Group will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

*Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing.  We pass along out-of-pocket costs and charges that we incur on our clients' behalf.  These typically include messenger charges, deposition videography and transcript charges and administrative charges.  Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.18/page), color scanning ($1.50/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.02-$0.03/page), ECA filtering $15-$75/GB), data processing ($50-$150), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.88-$1.50/document), hosting ($10-$20/GB) and litigation support consulting at hourly rates of $175 to $365 per hour, depending on the work performed.  Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs, meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on FTX Group's behalf, and similar charges.  Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case.  These charges will be at cost.  The costs listed are the current rates but may be subject to future adjustment.  FTX Group agrees that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to FTX Group for payment, which will also be due and payable upon

receipt. Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event FTX Group has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, FTX Group agrees that the terms of this Engagement Letter shall apply unless a copy of FTX Group's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event FTX Group's billing guidelines shall control.

We will submit bills on a monthly basis. All bills shall be paid within thirty days of receipt by you. The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party. We reserve the right at our sole discretion to charge interest of 6% per month on invoices that are 90 days or more past due. If FTX Group has any question regarding, or wish to challenge any bill, FTX Group shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge. **Notwithstanding the foregoing and for the avoidance of doubt, the billing and payment provisions described herein are subject to the "Bankruptcy Provision" in this Engagement Letter.**

*Retainer*

To provide us with security, you have provided us with $300,000 as a retainer toward our statements. This sum will be held towards final payment of our fees, costs and other expenses incurred on your behalf.

*Termination*

Above all, our relationship with you must be based on trust, confidence and clear understanding. If you have any questions at any time about this letter or the work that the firm, or any attorney, is performing, please call me or, if you prefer, John Quinn in our Los Angeles office at (213) 443-3000, to discuss it. You may terminate this representation at any time, with or without cause. Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical. Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf. In the event of termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

*Date of Commencement and Termination of the Engagement*

The effective date of our agreement to provide services is November 13, 2022.

QEU&S's representation of FTX Group will be considered terminated at the earliest of (i) FTX Group's termination of the representation, (ii) QEU&S's withdrawal from the representation,

11807-00001/13744219.2

(iii) the completion of QEU&S's substantive work for FTX Group, or (iv) following 60 days of inactivity by QEU&S on the matter.

*File Retention and Disposition*

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement.  FTX Group's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgment of the obligation to pay outstanding fees.  QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format.  It is our practice to retain the permanent records of the matter, in accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended.  If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

*Other Litigation or Proceedings*

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving FTX Group or related persons or entities, FTX Group shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates).  Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of FTX Group in this matter (including unmeritorious disqualification proceedings), FTX Group agrees to indemnify us for any attorney's fees and expenses (including our own professional and staff time at our then-standard hourly rates) we incur as a result.  This paragraph is not intended to apply to any claim brought by or on behalf of FTX Group alleging wrongdoing by QEU&S.

*Disputes*

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. If the dispute cannot be resolved amicably through informal discussions, the parties hereto irrevocably submit to the exclusive jurisdiction of any federal or state court located within New York, New York and any appellate court thereof over any dispute arising out of or relating to the Engagement and each party hereby irrevocably agrees that all claims in respect of such dispute or any suit, action proceeding related thereto may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

<u>WAIVER OF RIGHT TO TRIAL BY JURY</u>. EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

The Engagement shall be governed by the laws of the State of New York, without regard to the conflict of law provisions thereof that would result in the application of the law of another jurisdiction.

**Notwithstanding the foregoing and for the avoidance of doubt, all disputes arising from or relating to the Engagement shall be subject to any applicable provisions of the Bankruptcy Code, Bankruptcy Rules, or Local Rules.**

*Binding Agreement*

By signing below, FTX Group agrees that FTX Group has had enough time to review this letter, that we have advised you that FTX Group has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to which FTX Group may wish to avail itself of such advice, and that FTX Group is satisfied that it understands this letter.  FTX Group also agrees that FTX Group has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that FTX Group has freely determined, without any duress, to sign and agree to these terms.

*Severability*

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

*Amendments and Additional Engagements*

The provisions of this letter may only be amended in writing, signed by both parties.

If the foregoing accurately reflects our agreement, please confirm that by signing and returning this engagement letter to me with the initial retainer amount.  Please do not hesitate to call me to discuss any questions you may have regarding this agreement.

In conformance with QEU&S's policies, we cannot commence work on this Engagement until we have received a copy of this letter countersigned by you.

Thank you again for this opportunity to be of service. We look forward to working with you on this Engagement.

Very truly yours,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

William Burck

**[STATEMENT TO BE SIGNED BY CLIENT:]**

I have read the above Engagement Letter and understand and agree to its contents. The parties to this Engagement hereby agree that a faxed, pdf or electronic signature shall count as the original.

FTX Trading Ltd. and its Affiliated Debtors ("FTX Group")

By: _____
Name: John J Ray III
Title: Chief Execcutive Officer
Date: 11/21/2022