# Exhibit 1

## **EXHIBIT B**

**Shea Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF THOMAS M. SHEA IN SUPPORT OF DEBTORS'**
**APPLICATION FOR ORDER AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF ERNST & YOUNG LLP AS ITS TAX**
**SERVICES PROVIDER, *NUNC PRO TUNC* TO NOVEMBER 28, 2022**

I, Thomas M. Shea, hereby declare pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as follows:

1.       I am a Principal of Ernst & Young LLP ("EY LLP"). I provide this Declaration on behalf of EY LLP in support of the application (the "Application") of the above-captioned debtors (the "Debtors") to retain EY LLP as their tax services provider, *nunc pro tunc* to November 28, 2022 , pursuant to the terms and conditions set forth in the agreements between the Debtors and EY LLP attached hereto as Exhibit A (the "Engagement Letters").[2]

2.       The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or professionals of EY LLP and EY US LLP (as defined below) or employees of other member firms of EYGL (as defined below) under my supervision and direction.

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Engagement Letters.

{1368.002-W0069452.}

3.      As set forth in further detail in the Engagement Letters, EY LLP has agreed to provide certain tax services (the "Services") to the Debtors in connection with these chapter 11 proceedings.  A summary description of each of the Services is summarized below and fully described in the Engagement Letters:[3]

Preliminary Tax Diligence Services

EY LLP will perform preliminary tax diligence procedures in connection with Debtors' chapter 11 bankruptcy proceedings in order to determine the level of tax support, both prospectively and retrospectively, EY LLP can provide to the Debtors.  Procedures related to this engagement include, but are not limited to, the following:

- Review of the Debtors' organizational structure
- Review of tax filing calendar/listing for both income and non-income taxes (e.g., employment gross receipts, sales/use, property, unclaimed property), as well as any previously filed returns and supporting workpapers, as well as tax return workpapers/support for current/pending filings.
  - If calendar/listing does not exist, EY LLP will compile such as part of its diligence procedures.
- Review of all existing tax attributes per filed returns and compile summary inventory
- Review of the Debtors' financial statements and/or any other available documentation (e.g., trial balances) related to financial reporting/performance
- Review of the Debtors' intercompany arrangements and transfer pricing documentation
- Review of any Debtors correspondence with/from taxing authorities
- Review of documentation related to any historic acquisitions, dispositions or reorganizations including transaction form, tax treatment, historical tax due diligence, tax indemnities, etc.
- Participate in calls with the Debtors' management and external advisors
- Addressing specific tax technical issues identified by the Debtors and/or advisors not required to be contracted under a separate SOW

GCR Implementation Services

---

[3]   The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of the Engagement Letters themselves.  To the extent there is any discrepancy between the summaries contained in this Declaration and the terms of the Engagement Letters themselves, the terms of the Engagement Letters shall control.

EY LLP, the other EY Firms[4] and the Debtors will agree on a plan to effect implementation of the global compliance and reporting ("GCR") central compliance services and transition in respect of the Services.  The implementation plan will include as a minimum the following steps:

- Confirm scope of the Services included, subsequently agreeing to any amendment to the SOW and/or Attachments and/or additional SOW as required.
- Confirm milestone dates by which actions either by EY LLP, the EY Firms or the Debtors must be completed for timely filing of the returns within scope.
- Confirm data reports and other information as necessary, and the means of transferring such reports to EY LLP and/or the other EY Firms, that EY LLP and/or the other EY Firms will require to prepare accurately the returns within scope, recommending any process and/or procedural change requirements as necessary to improve the efficiency in the carrying out of the Services.
- Confirm the escalation process to EY LLP, the other EY Firms and Client's project managers, respectively, of issues or risk to the successful conclusion to transition and/or the carrying out of the Services.
- Confirm sign offs by EY LLP and the Debtors that transition has been completed successfully.

Global Routine On-Call Assistance Services

EY LLP will provide to the Debtors routine tax advisory services and assistance concerning issues as requested by the Debtors when such projects are not covered by a separate statement of work and do not involve any significant tax planning or projects. Upon the Debtors' written request, EY LLP also will provide one-off tax compliance services.  On-call tax assistance services are intended to be used to respond to general tax questions and assignments that are expected, at the beginning of the project, to involve total professional time not to exceed (with respect to the specific project) $25,000 in professional fees.

---

[4]    Unless otherwise defined, capitalized terms used in these summaries shall have the meanings ascribed to them in the Engagement Letters.

**EY LLP's Disinterestedness**

4.      Based on the connections check process that is described herein, to the best of my knowledge, information and belief, EY LLP (a) does not hold or represent an interest adverse to the Debtors' estates, and (b) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as required under section 327(a) of the Bankruptcy Code.  Moreover, to the best of my knowledge, information and belief, EY LLP's retention is not prohibited or restricted by Bankruptcy Rule 5002.  Accordingly, I believe that EY LLP is eligible for retention by the Debtors under Section 327(a) of the Bankruptcy Code.

**Professional Compensation and Reimbursement of Expenses**

5.      EY LLP intends to charge the Debtors fees for the Services, as set forth in the Engagement Letters and summarized below.

The Debtors shall pay fees for the Services based on the actual time that EY LLP professionals spend performing them, billed at the following agreed upon rates for each level while the Services are being performed.

| Level | Rate |
|---|---|
| National Partner/Principal | $990 |
| Partner/Principal | $825 |
| Managing Director | $775 |
| Senior Manager | $650 |
| Manager | $525 |
| Senior | $395 |
| Staff | $225 |

6.      EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which the Debtors shall pay (other than taxes imposed on EY LLP's income generally).

7.      In addition to the fees set forth above, the Debtors shall reimburse EY LLP for any direct expenses incurred in connection with EY LLP's retention in these cases and the performance of the Services set forth in the Engagement Letters, including all taxes, including value-added taxes, sales taxes, and other indirect taxes.  EY LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses, including any taxes and related administrative costs that result from billing arrangements that are requested by the Debtors.

8.      If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in responding to such requests.

9.      EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY LLP would otherwise pass onto its clients.

## **Certain Other Terms of the Engagement Letters**

10.     EY LLP's provision of Services to the Debtors is contingent upon this Court's approval of each term and condition set forth in the Engagement Letters.

11.     The Engagement Letters may be terminated by EY LLP or the Debtors in accordance with their terms.  The Debtors or EY LLP may terminate the Engagement Letters at any time in writing, but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or the liquidation of the Debtors' assets under chapter 11 or 7 of title 11 of the United States Code (the "Bankruptcy Code"), or otherwise.

Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination. Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

12.     Copies of the Engagement Letters are submitted with this Declaration for approval.[5] EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters. Included among the terms and conditions set forth in the Engagement Letters is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Debtors or their subsidiaries or of EY LLP) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Debtors, EY LLP and any all successors and assigns thereof.

---

[5]     To the extent that this Declaration and the terms of the Engagement Letters are inconsistent, the terms of the Engagement Letters shall control.

**Ernst & Young Global Limited**

13.     The Ernst & Young global network comprises independent professional services practices conducted by separate legal entities throughout the world.  Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital.  The EYGL member firms have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.

14.     The particular firm that the Debtors seek to retain in these chapter 11 cases, EY LLP, is a member firm of EYGL in the United States.  EY LLP does not have a parent entity, but rather is 100% owned by its partners.  EY LLP engages in the practice of public accountancy and provides accounting and other professional services.  All partners of EY LLP are Certified Public Accountants ("CPAs").

15.     In addition, Ernst & Young U.S. LLP ("EY US LLP"), the owners of which are EY LLP CPA partners and non-CPA principals, is another member firm of EYGL in the United States.  EY US LLP provides infrastructure and support services to EY LLP, including the services of CPA and non-CPA personnel.  In particular, EY LLP uses EY US LLP personnel in providing services to EY LLP's clients.  Such EY US LLP personnel continue to be employed by EY US LLP, but work under EY LLP's supervision in EY LLP engagements.

**Disclosure of Connections**

16.     In connection with EY LLP's proposed retention by the Debtors, Debtors' counsel provided a list of names of parties in interest in these cases (the "PIIL") to EY LLP on or about November 28, 2022, which Debtors' counsel supplemented on or about December 9, 2022 and

December 15, 2022. The specific names that were set forth on the PIIL that EY LLP received from the Debtors' counsel are referred to herein as the "Parties in Interest."

17.    EY LLP has access to a computer database (the "Database") that contains information about actual client engagements and potential engagement activity of all of the member firms of EYGL. The Database also includes the names of other parties that the professionals on the relevant engagement team have identified as also being involved in each engagement (*e.g.*, adverse parties and co-clients). Thus, the Database indicates whether any Debtor entity is involved in an engagement by an EYGL member firm, in which a Party in Interest is a client.[6]

18.    EY LLP caused the names of the Parties in Interest to be run through the Database. The disclosure schedule annexed hereto as Exhibit B lists the names of the Parties in Interest and whether a client engagement has been initiated in the Database during the last three years by EY LLP or any other EYGL member firm.

19.    To the best of my knowledge, information and belief based on the information set forth in the Database, none of the services rendered to Parties in Interest by EY LLP or any other EYGL member firm have been in connection with the Debtors or these chapter 11 cases, except as otherwise stated herein.

20.    In 2021, EY LLP provided tax due diligence and structuring services to Thoma Bravo, L.P. in connection with its $130 million investment in FTX Trading Ltd. EY LLP concluded its work on this engagement in August 2021.

---

[6]    The information in the Database is populated by the professionals who are providing services under each engagement. Therefore, the information in the Database may not be 100% correct with respect to all engagements, as human errors may occur. Furthermore, financial information pertaining to engagement activity is the proprietary and confidential information of each individual EYGL member firm. EY LLP may not have the right to access, or if accessed, disclose, such information relating to other EYGL member firms.

21.    In June 2022, a cryptocurrency company engaged EY LLP to provide recommended fair values of several of their venture investments as of June 30, 2022, including Debtors FTX Trading Ltd. and West Realm Shires Services Inc.  EY LLP concluded its work on this engagement in September 2022.

22.    In May 2019, a mobile services company engaged EY Strategy and Consulting Co., Ltd. (then known as EY Transaction Advisory Services Co., Ltd.), a Japanese EYGL member firm, to perform financial and tax due diligence services in connection with a potential acquisition of QUOINE Group, then held by Liquid Holdings.  EY Strategy and Consulting Co., Ltd. subcontracted with two other Japanese EYGL member firms, Ernst & Young ShinNihon LLC and Ernst & Young Tax Co., to provide these services.  The mobile services company ultimately did not acquire QUOINE Group from Liquid Holdings, and the Japanese EYGL member firms closed this engagement in September 2019.

23.    On November 28, 2022, BlockFi International Ltd ("BlockFi International," a Party in Interest in these cases) commenced liquidation proceedings, for restructuring purposes, in the Supreme Court of Bermuda, Commercial Court (the "Bermuda Court") pursuant to section 161(e) of the Bermuda Companies Act 1981 (the "Bermuda Proceedings").  On November 29, 2022, Joel Edwards of EY Bermuda Ltd. and Eleanor Fisher of EY Cayman Ltd. (both EYGL member firms) were appointed to serve as Joint Provisional Liquidators (the "JPLs") of BlockFi International in the Bermuda Proceedings pursuant to an Order of the Bermuda Court (the "JPL Appointment Order").  The JPLs act as officers of the Bermuda Court in the performance of their duties.  EY LLP will not be paid fees or expenses related to the JPL Appointment Order.

24.     Section 175 of the Bermuda Companies Act 1981 enumerates the powers with which a Bermuda court may vest a provisional liquidator.[7] The Bermuda Court filed the JPL Appointment Order under seal.  An appointment of this nature generally provides the joint provisional liquidators with certain specified powers, while also providing for the company's current management to remain in office to continue to operate the business to promote a restructuring of the company (with the provisional liquidators overseeing the restructuring and reporting to the Bermuda Court, as necessary).

25.     EY LLP's understanding is that it is not yet known whether or how the JPLs' oversight of BlockFi International will relate to the Debtors in these cases.  Separate teams will support EY LLP's work with the Debtors and the JPLs.  The EY LLP Debtor team will keep information related to their engagement confidential from the JPL team, and the JPL team will keep information related to their engagement confidential from the EY LLP Debtor team.

26.     Additionally, EY LLP conducted a search to determine whether EY US LLP (but not any other member firm of EYGL) has paid any person or entity that is specified on the PIIL as being a professional service provider that has been retained by a Party in Interest ("Party-Retained Professionals") to provide professional services during the last three years.  Based on its search of that database, EY LLP has determined that EY US LLP has paid the following Party-Retained Professionals during the last three years for professional services: AlixPartners, LLP, Alvarez & Marsal North America, LLC, Armanino LLP, Arthur Cox, Fenwick & West, FTI Consulting, Inc., Gibson Dunn, Kim & Chang, Hunton Andrews Kurth LLP, King & Spalding LLP, Latham & Watkins, Norton Rose and WilmerHale.

---

[7] *See* http://www.bermudalaws.bm/laws/consolidated%20laws/companies%20act%201981.pdf.

27.    EY LLP cannot prohibit any other EYGL member firm from accepting any client engagements, including in matters that may be adverse to the Debtors or their bankruptcy estates. Nevertheless, if EY LLP becomes aware of any such engagement by another EYGL member firm, EY LLP will file a supplemental declaration with the Court that contains the pertinent information that EY LLP is authorized to disclose.[8]  Moreover, if EY LLP becomes aware that another EYGL member firm represents a Party in Interest in a matter that is adverse to the Debtors or their bankruptcy estates, EY LLP will not permit anyone from such non-US EYGL member firm's engagement team who provides services to the Party in Interest in the adverse matter to be involved in the Services that EY LLP provides for the Debtors during these chapter 11 cases.

28.    In the ordinary course of business, certain EYGL member firms ("EY Support Firms") provide various professional, administrative and back office support services for client-facing EYGL member firms throughout the world, as requested, coordinated and directed by such client-facing EYGL member firms (including EY LLP).  An EY Support Firm assisted EY LLP in performing EY LLP's connections check for these chapter 11 cases.  The costs paid by EY LLP to EY Support Firms for such connections check related services will not be billed to the Debtors. EY Support Firms do not provide client-facing services.  Because the Database against which the names of the Parties in Interest was run for EY LLP's connections check contains client engagement information for all client-facing EYGL member firms, no EY Support Firm will run its own connections check or file a declaration in these chapter 11 cases.

---

[8]    There may be situations in which EY LLP will be unable to disclose engagements of non-US EYGL member firms.  For example, laws or regulations applicable to a non-US EYGL member firm may preclude that firm from providing information regarding its client engagements to EY LLP, or applicable laws and regulations may prohibit disclosure.  If that issue arises, EY LLP will discuss it with the Office of the United States Trustee to try to reach a resolution.

29.     Notwithstanding any use of EY Support Firms, EY LLP shall remain fully and solely responsible for any liabilities and obligations in respect of EY LLP's engagement and Services during these chapter 11 cases.

30.     During these chapter 11 cases, EY LLP may subcontract with other EYGL member firms in various countries, including but not limited to Antigua and Barbuda, Australia, British Virgin Islands, Bahamas, Canada, Cayman Islands, Cyprus, Gibraltar, Hong Kong, India, Ireland, South Korea, Japan, Liechtenstein, German, Nigeria, Panama, Singapore, Seychelles, Switzerland, Turkey, United Arab Emirates, Vietnam (the "Subcontracting EYGL Member Firms"), to provide services to one or more Debtor entities during these chapter 11 cases.  The fees and expenses of the Subcontracting EYGL Member Firms relating to work performed for the Debtors will be included in EY LLP's fee applications in these chapter 11 cases.  EY LLP will distribute the applicable fees and expenses to the Subcontracting EYGL Member Firms once EY LLP's fee applications are approved by the Court and such fees and expenses are paid by the Debtors. Because the Database against which the names of the Parties in Interest was run for EY LLP's connections check contains client engagement information for all EYGL member firms, the Subcontracting EYGL Member Firms will not run their own connections checks or file declarations under Bankruptcy Rule 2014 in these chapter 11 cases.

31.     EY LLP and other EYGL member firms may perform services for their clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status.  The disclosures set forth herein do not include specific identification of such services.

32.     As part of its practice, EY LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be parties involved in these chapter 11 cases.

33.     EY LLP may currently be a party or participant in certain litigation matters involving Parties in Interest, which matters are unrelated to the Debtors or these chapter 11 cases.

34.     EY LLP does not directly hold any debt or equity securities of the Debtors.  In addition, none of the EY LLP or EY US LLP professionals who are currently on the engagement team that is providing Services to the Debtors directly hold any securities in the Debtors, but those engagement team members may hold interests in mutual funds or other investment vehicles that may own securities of the Debtors.

35.     It is possible that professionals of EY LLP and EY US LLP who are not currently on the engagement team that is providing Services to the Debtors may directly or indirectly hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.  Additionally, EY LLP and EY US LLP professionals, whether or not on the engagement team that is providing services to the Debtors, may have economic interests in or business associations with Parties in Interest.

36.     To the best of my knowledge, information and belief, neither the undersigned nor the professionals expected to assist the Debtors in these matters are connected to the Bankruptcy Judges in this District, the United States Trustee for the region in which these chapter 11 cases are pending, or any person employed in the Office of the United States Trustee in the city in which these chapter 11 cases are pending as identified in the PIIL.  Moreover, to the best of my knowledge, information and belief, EY LLP's retention is not prohibited by Bankruptcy Rule 5002.

37.     Despite the efforts described above to identify and disclose connections with Parties in Interest, because the Debtors are a large enterprise with numerous creditors and other relationships, EY LLP is unable to state with certainty that every client representation or other connection with Parties in Interest has been disclosed herein.  If EY LLP discovers additional information that requires disclosure, EY LLP will file supplemental disclosures with the Court.

38.     Certain Parties in Interest are lenders to EY LLP and/or EY US LLP: Bank of America, N.A., HSBC Bank USA, N.A., JPMorgan C, MUFG Bank, Ltd and Wells Fargo Bank, National Association participate in EY LLP's and EY US LLP's Revolving Credit Program

39.     At the Debtors' request following the commencement of these proceedings and prior to Court approval of EY LLP's engagement in these cases, EY LLP may provide in its sole discretion certain of the Services described in the Engagement Letters.  Thus, EY LLP requests that its retention be authorized as of November 28, 2022.

40.     To the extent required by Section 504 of the Bankruptcy Code, except as otherwise set forth herein (*e.g.*, if another EYGL member firm provides services to the Debtors under a subcontracting arrangement with EY LLP), EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person, other than the partners, principals and employees of EY LLP and EY US LLP.

41.     EY LLP intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  December 21, 2022

_/s/ Thomas M. Shea_____
Thomas M. Shea
Ernst & Young LLP

**Exhibit A-1**

**Master Services Agreement**



# MASTER SERVICES AGREEMENT

This Master Services Agreement (this "Agreement") is entered into between Ernst & Young LLP, a Delaware limited liability partnership ("EY") and West Realm Shires Inc., on behalf of itself and all the other debtor entities in the consolidated Chapter 11 (as defined below) cases pending before the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") under case number 22-11068 (JTD), as listed in Appendix 2 hereto ("Client"), as of November 28, 2022.

## Structure

1. This Agreement sets out the contractual structure for the provision of services ("Services") by EY to Client subsequent to Client filing petitions under Chapter 11 ("Chapter 11") of the United States Bankruptcy Code ("Bankruptcy Code") on or about November 11, 2022 and November 14, 2022, as applicable, with the Bankruptcy Court.  EY's performance of Services is contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms and conditions that are set forth in this Agreement. This Agreement shall be effective as of the date set forth above (the "Effective Date"). EY will perform the Services described in separate Statements of Work entered into between the parties that incorporate the terms of this Agreement as well as the terms of any applicable Module(s) to form a separate and independent contract ("Contract"), which shall be subject to approval of the Bankruptcy Court.

2. For the purposes of any Contract, (a) "Client" in such Contract (including in this Agreement and the applicable Module(s) as incorporated into such Contract) means the Client Entity that executes the applicable Statement of Work, and (b) "party" means either EY or such Client Entity.

3. If there is any inconsistency between provisions in different parts of a Contract, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the applicable Statement of Work and any annexes thereto, (b) any applicable Module, (c) this Agreement, and (d) other annexes to a Contract.

## Definitions

4. The following terms are defined as specified below:

   (a) "AICPA" means the American Institute of Certified Public Accountants.

   (b) "Client Affiliate" means an entity that controls, is controlled by, or is under common control with, Client.

   (c) "Client Entity" means Client or a Client Affiliate or any debtor entity listed in Appendix 2 hereto.

   (d) "Client Information" means information obtained by EY from Client or from a third party on Client's behalf.

   (e) "Deliverables" means any advice, communications, information, technology or other content that EY provides under this Agreement.

   (f) "EY Firm" means a member of the EY network and any entity operating under a common branding arrangement with a member of the EY network.



(g) "EY Persons" means EY's or any other EY Firm's subcontractors, members, shareholders, directors, officers, partners, principals or employees.

(h) "Internal Support Services" means internal support services utilized by EY, including but not limited to: (a) administrative support, (b) accounting and finance support, (c) network coordination, (d) IT functions including business applications, system management, and data security, storage and recovery, and (e) conflict checking, risk management and quality reviews.

(i) "Module" means a module, supplemental to this Agreement, entered into by the parties and containing further terms applicable to a particular type of Services.

(j) "Personal Data" means Client Information relating to identified or identifiable natural persons or that is otherwise considered to be "personal data," "personal information" or similar term under applicable data protection laws.

(k) "Report" means a Deliverable (or any portion of a Deliverable) issued on EY letterhead or under the EY brand or otherwise identifiable as being prepared by or in association with EY, any other EY Firm or EY Person.

(l) "Statement of Work" means a document, incorporating this Agreement and any applicable Module, entered into by the parties describing particular Services that EY will perform .

(m) "Support Providers" means external service providers of EY and other EY Firms and their respective subcontractors.

(n) "Tax Advice" means tax matters, including tax advice, tax opinions, tax returns or the tax treatment or tax structure of any transaction to which the Services relate.


**Provision of the Services**

5.  EY will provide the Services using reasonable skill and care in accordance with applicable professional standards, including those established by the AICPA**.**

6.  Subject to Bankruptcy Court approval, EY may subcontract a portion of the Services to one or more EY Firms, as well as to other third parties, who may deal with Client directly. EY will remain solely responsible to Client for the performance of the Services. From time to time, non-CPA personnel may perform the Services.

7.  EY will act as an independent contractor and not as Client's employee, agent or partner. Client will remain solely responsible for management decisions relating to the Services and for determining whether the Services are appropriate for its purposes. Client shall assign qualified personnel to oversee the Services, as well as the use and implementation of the Services and Deliverables.

8.  Client agrees to promptly provide to EY (or cause others to so provide) Client Information, resources and assistance (including access to records, systems, premises and people) that EY reasonably requires to perform the Services.

9.  Client Information will be accurate and complete in all material respects. EY will rely on Client Information and, unless EY expressly agrees otherwise in writing, EY will have no responsibility to verify it. The provision of Client Information (including Personal Data), resources and assistance to



EY will be in accordance with applicable law and will not infringe any copyright or other third-party rights.

## **Deliverables**

10. All Deliverables are intended for Client's use in accordance with the Contract under which they are provided.

11. Client may not rely on any draft Deliverable. EY shall not be required to update any final Deliverable as a result of circumstances of which EY becomes aware, or events occurring, after its delivery.

12. Unless otherwise provided for in a Contract, Client may not disclose a Report (or any portion or summary of a Report), or refer to EY or to any other EY Firm or EY Person in connection with the Services, except:

    (a) to a Client Affiliate (subject to these disclosure restrictions);

    (b) to Client's lawyers (subject to these disclosure restrictions), who may review it only in connection with advice relating to the Services;

    (c) to Client's independent auditors (subject to these disclosure restrictions) who may review it only in connection with their audit;

    (d) to the extent, and for the purposes, required by applicable law (and Client will promptly notify EY of such legal requirement to the extent Client is permitted to do so);

    (e) to other persons (with EY's prior written consent), who may use it only as specified in such consent; or

    (f) to the extent it contains Tax Advice.

    If Client discloses a Report (or a portion thereof), Client shall not alter, edit or modify it from the form provided by EY. Client shall inform those to whom it discloses a Report (other than disclosure of Tax Advice to tax authorities) that they may not rely on it for any purpose without EY's prior written consent. Subject to the foregoing, Client is not prohibited by this Section 12 from using Deliverables that do not qualify as Reports in communication with third parties provided that: (i) there is no reference to, or communication of, EY's or any other EY Firm's involvement in the development of such Deliverables, and (ii) Client assumes sole responsibility for such use and communication.

## **Limitations**

13. As part of the parties' arrangements, the parties have mutually agreed the following limitations of liability (which also apply to others for whom Services are provided under any Contract):

    (a) Neither party will be responsible, in contract or tort, under statute or otherwise, for any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of a Contract or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated**.**

    (b) Client (and any others for whom Services are provided) may not recover from EY, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the



**EY**

Building a better
working world

Services that directly caused the loss under the respective Contract during the twelve (12) months preceding the date of the event giving rise to the loss. This cap is an aggregate cap across all claims under such Contract prior to such date.

(c) Client shall make any claim relating to the Services or otherwise under a Contract no later than one (1) year after Client became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two (2) years after the completion of the particular Services.

14. The limitations set out in Sections 13(b) and (c) above will not apply to losses or damages caused by EY's fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

15. Client (and any others for whom Services are provided under a Contract) may not make a claim or bring proceedings relating to the Services or otherwise under a Contract against any other EY Firm or EY Person. Client shall make any claim or bring proceedings only against EY.

**No Responsibility to Third Parties**

16. Unless specifically otherwise agreed with Client in writing, EY's responsibility for performance of the Services is to Client and Client alone. Should any Deliverable be disclosed, or otherwise made available, by or through Client (or at Client's request) to a third party (including but not limited to permitted disclosures to third parties under Section 12), Client agrees to indemnify EY, as well as the other EY Firms and the EY Persons, against all claims by third parties, and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of such disclosure.

**Intellectual Property Rights**

17. Each party retains its rights in its pre-existing intellectual property.  Except as set out in the applicable Contract, any intellectual property developed by EY, and any working papers compiled in connection with the Services (but not Client Information contained in them), shall be the property of EY.

18. Client's right to use Deliverables under a Contract arises following payment for the Services.

**Confidentiality, Data Protection & Security**

19. Except as otherwise permitted by a Contract, neither party may disclose to third parties any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential (including, in the case of EY, Client Information). Either party may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of a Contract;

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

(c) was known to the recipient at the time of disclosure or is thereafter created independently;

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

(e) must be disclosed under applicable law, legal process or professional regulations.

20. EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services.



EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.

21. Client agrees that Client Information, including Personal Data, may be processed by EY, other EY Firms, EY Persons and their Support Providers in various jurisdictions in which they operate (EY office locations are listed at www.ey.com). Client Information, including any Personal Data, will be processed in accordance with laws and professional regulations applicable to EY, and appropriate technical and organizational security measures designed to protect such information will be implemented. EY will also require any Support Provider that processes Personal Data on its behalf to provide at least the same level of protection for such Personal Data as is required by such legal and regulatory requirements. If Personal Data relating to a data subject in the UK, European Union or Switzerland (collectively, "European Personal Data") is required for EY to perform the Services, the parties agree to negotiate in good faith a data transfer addendum intended to validate the transfer of such European Personal Data by Client to EY prior to such transfer. Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program available at [www.ey.com/bcr](www.ey.com/bcr). Further information about EY's processing of Personal Data is available at [www.ey.com/privacy](www.ey.com/privacy).

22. To the extent permitted by applicable law, regulation or governmental directive, EY will notify Client without undue delay in the event of loss, disclosure or unauthorized or unlawful processing of Personal Data and provide Client with relevant information about the nature and extent of the event.

23. In certain circumstances, individuals may have the right under applicable data protection law to access, correct, erase, port, restrict or object to the processing of their personal data. Such requests may be sent to [privacy.office@ey.com](mailto:privacy.office@ey.com).  To the extent permitted by law, regulation or governmental directive, EY will notify Client without undue delay upon receipt of any verifiable request from a data subject or supervisory authority relating to a Personal Data right.  If EY is required to provide Personal Data in response to such verifiable request, or to a request from Client, providing that data will be part of the Services and, to the extent permitted by applicable law, Client will be responsible for EY's reasonable charges incurred in doing so.

24. As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services. Accordingly, unless otherwise specified in a Contract, when processing Personal Data subject to the General Data Protection Regulation or other applicable data protection law (including, without limitation, state data protection (e.g., the California Consumer Privacy Act)), EY acts as an independent controller (or similar status that determines the purposes and means of processing), and not as a processor under Client's control (or similar status acting on behalf of Client) or as a joint controller with Client. For Services where EY acts as a processor processing Personal Data on Client's behalf, the parties will agree appropriate data processing terms in the applicable Statement of Work.

25. EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided that any use does not externally identify, or make reference to, Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

26. If Client requires EY to access or use Client or third-party systems or devices, EY shall have no responsibility for the confidentiality, security or data protection controls of such systems or devices, or for their performance or compliance with Client requirements or applicable law.



**Building a better working world**

27. EY may provide Client access to use certain data, software, designs, utilities, tools, models, systems and other methodologies and know-how that EY owns or licenses for the purpose of Client's receipt of the Services or as otherwise expressly agreed in writing by EY ("EY Tools"). Client shall be responsible for compliance by all Client personnel and third parties acting on Client's behalf with the terms applicable to the use of such EY Tools. As between EY and Client, EY (or another EY Firm) owns all right, title, interest, and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative work thereof.

*License to EY Tools During the Statement of Work Term:* To the extent that EY provides Client access to any EY Tools during the term of an applicable Statement of Work, EY hereby grants to Client a nonexclusive, paid-up, internal license, during the term of the applicable Statement of Work, to use, execute, and display the EY Tools, for the sole purpose of Client's receipt of the Services from EY under the applicable Statement of Work.

*License to EY Tools After the Statement of Work Term:* EY may allow Client to use certain EY Tools, after the term of an applicable Statement of Work, for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under such Statement of Work. Any EY Tools that EY allows Client to use after the term of such Statement of Work will be identified in the Statement of Work as a "Leave Behind EY Tool." With respect to such an identified Leave Behind EY Tool, to the extent permitted by applicable law and professional regulations, EY hereby grants to Client a nonexclusive, paid-up, internal license, to use, execute, and display the Leave Behind EY Tool, after the term of the Statement of Work, for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under the Statement of Work.

*EY Tools Disclaimers and Acknowledgments:* Client's use of any EY Tools may be subject to additional terms, which EY will provide to Client in writing. Client acknowledges that EY may at any time, modify, replace, direct Client to discontinue use of any EY Tools, or otherwise revoke, limit or condition Client's access and right to use any EY Tools. ALL EY TOOLS ARE PROVIDED "AS IS" AND WITHOUT ANY WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF TITLE, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR ANY WARRANTY THAT THE OPERATION OF EY TOOLS WILL BE UNINTERRUPTED, ERROR FREE OR THAT EY TOOLS WILL BE OR REMAIN COMPATIBLE WITH ANY OF CLIENT'S HARDWARE OR SOFTWARE. IN NO EVENT SHALL EY BE LIABLE FOR LOSS OF OR DAMAGE TO CLIENT'S DATA RESULTING FROM THE CLIENT'S USE OF THE EY TOOLS. Client shall not decompile, dissemble or otherwise reverse engineer the EY Tools, unless authorized by law or the relevant regulatory agency. Client shall not sell, lease, assign or otherwise transfer any portion of the EY Tools.

## Compliance

28. In connection with the performance of its respective rights and obligations under a Contract, EY and Client each will comply with all laws and regulations of any jurisdiction applicable to it from time to time concerning or relating to bribery or corruption, including, without limitation, the U.S. Foreign Corrupt Practices Act ("FCPA").

## Fees and Expenses Generally

29. Client shall pay EY's professional fees and specific expenses in connection with the Services as detailed in the applicable Contract. Client shall also reimburse EY for other reasonable expenses



incurred in performing the Services. EY's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which Client shall pay (other than taxes imposed on EY's income generally). Unless otherwise set forth in the applicable Contract, subject to Bankruptcy Court approval, payment is due within thirty (30) days following the date of each of EY's invoices.

30. Subject to Bankruptcy Court approval, if necessary, EY may charge additional professional fees if events beyond its control (including Client's acts or omissions) affect EY's ability to perform the Services as agreed in the applicable Contract, or if Client asks EY to perform additional tasks.

31. Subject to Bankruptcy Court approval, if EY is required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or a Contract, Client shall reimburse EY for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless EY is a party to the proceeding or the subject of the investigation.

**Force Majeure**

32. Neither party shall be liable for breach of a Contract (other than payment obligations) caused by circumstances beyond such party's reasonable control.

**Term and Termination**

33. A Contract applies to all Services associated with such Contract whenever performed after the date of Client's filling of a Chapter 11 petition (including before the date of the applicable Contract).

34. A Contract shall terminate on the completion of the Services associated with such Contract. This Agreement and/or any or all Contracts may be terminated at any time by Client or EY, but in any event this Agreement including all Statements of Work will expire upon the effective date of Client's confirmed plan of reorganization, or liquidation of Client's assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise.

35. Client shall pay EY for all work-in-progress, Services already performed, and expenses incurred by EY up to and including the effective date of the termination or expiration of a Contract, as well as any applicable termination fees set forth in the applicable Contract. Payment is due within thirty (30) days following the date of the invoice for these amounts or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

36. The term of this Agreement will expire five (5) years following the Effective Date (the "Term"), unless the parties mutually agree to renew or extend it, provided Client continue to operate under Chapter 11 bankruptcy protection. For clarity, this Agreement shall survive with respect to any Contract entered into during the Term, even if such Contract remains in effect beyond the Term.

37. The provisions of this Agreement, including Section 12 and Section 38 otherwise with respect to Deliverables and Reports, that give either party rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement or applicable Contract and shall survive completion of the Client's bankruptcy whether through a confirmed plan of reorganization under Chapter 11, liquidation of the Client's assets under Chapter 7 of the Bankruptcy Code, or otherwise.



**EY**

Building a better
working world

## Governing Law and Dispute Resolution

38. This Agreement, any Contract under this Agreement, and any non-contractual matters or obligations arising out of a Contract or the Services, shall be governed by, and construed in accordance with, the laws of the state of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Client, EY and any all successors and assigns thereof.

## United States Specific Terms

39. The U.S. Department of Labor (DOL) regulations, at 20 CFR § 655.734(a)(1)(ii)(A), require the posting of notice of a Labor Condition Application (LCA) in instances where individuals holding certain visas (e.g., H-1B) will be working onsite. Where applicable, EY and the Client will work together to develop an appropriate notice to enable compliance with this requirement.

## Miscellaneous

40. A Contract constitutes the entire agreement between the parties as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any previously agreed confidentiality agreements. Except as expressly provided otherwise herein, this Agreement does not modify the terms or provisions for other professional services executed prior to Client's filing of a Chapter 11 petition in the Bankruptcy Court.

41. Each party may execute this Agreement or a Contract, as well as any modifications to them, by electronic means, and each party may sign a different copy of the same document. Both parties must agree in writing to modify this Agreement or a Contract, subject to Bankruptcy approval, if necessary.

42. Client agrees that EY and the other EY Firms may, subject to professional obligations, act for other clients, including Client's competitors.

43. Neither party may assign any of its rights, obligations or claims under this Agreement or a Contract.

44. If any provision of this Agreement or a Contract (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.



45. Client acknowledges that the U.S. Securities and Exchange Commission regulations indicate that, where auditor independence is required, certain confidentiality restrictions related to tax structure may render the auditor to be deemed to be non-independent or may require specific tax disclosures. Accordingly, if and only to the extent that U.S. Securities and Exchange Commission auditor independence regulations apply to the relationship between Client or any of Client's associated entities and any EY Firm, with respect to the tax treatment or tax structure of any transaction to which the Services relate, Client represents, to the best of its knowledge, as of the date of a Contract, that neither Client nor any Client Affiliate has agreed, either orally or in writing, with any other advisor to restrict Client's ability to disclose to anyone such tax treatment or tax structure. Client agrees that the impact of any such agreement is its responsibility.

46. EY and Client acknowledge that Client or a Client Affiliate (the "Local Client") may seek to enter into an agreement with another EY Firm (the "Local EY Firm") for the provision of services in another country (the "Local Services"). The parties agree that the Local Client and the Local EY Firm may enter into a local country agreement (the "Local Agreement") for Local Services that incorporates the terms and conditions of this Agreement, subject to any modifications they deem appropriate under local law, regulation, professional standard, or local custom and practice. For clarity, in such event, (i) the Local Agreement shall govern all Local Services; and (ii) neither the Local Client nor the Local EY Firm will be deemed to be parties to this Agreement in connection with the Local Services.

47. Client represents that Client Affiliates for whom Services are performed by EY in connection with a Contract shall be bound by the terms of such Contract.

48. Neither party may use or reference the other's name, logos or trademarks without its prior written consent, provided that EY may use Client's name publicly to identify Client as a client in connection with specific Services or otherwise.

49. The limitations in Sections 13 and 15 and the provisions of Sections 16, 20, 22 and 37 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

50. By agreement to the provision of the Services, EY is not providing a guarantee to Client that EY's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee Client's successful reorganization under Chapter 11.

**Additional Provisions**

51. EY will provide the Services as described in the applicable Statement of Work to Client, contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms of this Agreement.

52. The Services may be modified from time to time by the parties mutual written agreement and approval of the Bankruptcy Court, if required.

53. Client acknowledges and agrees that, whether or not the Statement of Work has been approved by the Bankruptcy Court at the time any Deliverable is rendered, any such Deliverable rendered by EY prior to the delivery of its final Deliverable is preliminary in nature and cannot be relied upon for any purpose, including penalty protection.

54. Any activities not described in the applicable Statement of Work are not covered by the fees stated therein. These services will be considered outside the scope of such Statement of Work and are the



responsibility of Client to perform on a timely basis unless otherwise agreed by the parties in writing (in an amendment or a separate Statement of Work) and approved by the Bankruptcy Court.

55. Each Statement of Work will identify the individuals who will lead the EY engagement team in providing the Services.  If any of these individuals ceases to provide the Services to the Client pursuant to such Statement of Work, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement.  Other staff, not identified therein, may be utilized as required to conduct EY's work in an efficient manner.

56. EY will submit an itemized and detailed billing statement for each applicable Statement of Work, and EY will request payment of EY's fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy Court and any relevant administrative orders.  EY will submit EY's invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

57. EY acknowledges that payment of EY's fees and expenses is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of EY and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.



**IN WITNESS WHEREOF,** EY and Client have each caused this Agreement to be signed and delivered by its duly authorized representative/s.

**ERNST & YOUNG LLP**

**West Realm Shires Inc., on behalf of itself and  all the other debtor entities in the consolidated chapter 11 cases pending before the Bankruptcy Court under case number 22-11068 (JTD), as listed in Appendix 2, hereto**

Signed:

_____

Name:   Steven Beattie

_____

Title:   Principal

_____

Signed:

_____

Name:   John J Ray III

_____

Title:      CEO

_____



# Appendix 1

# Dispute resolution procedures

## Mediation

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that the mediator is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, of or beneficial owner with decision-making capacity over any EY Firm audit client.

The mediator shall conduct the mediation as the mediator determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

## Arbitration

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless the arbitrator has agreed in writing to these procedures and has confirmed in writing that the arbitrator is not, and will not become during the term of the arbitration,



an employee, partner, executive officer, director, of or beneficial owner with decision-making capacity over any EY Firm audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.  In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**Appendix 2 - List of all other debtor entities**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Pending) |

### THIRD AMENDED[2] NOTICE OF FILING OF CHAPTER 11 PETITIONS AND RELATED MOTIONS AND DECLARATIONS

**PLEASE TAKE NOTICE** that on November 11, 2022 and, with respect to Debtor West Realm Shires Inc., on November 14, 2022, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

## A. VOLUNTARY CHAPTER 11 PETITIONS

1. Voluntary Petition – Alameda Research LLC, Case No. 22-11066 (JTD) [D.I. 1]

2. Voluntary Petition – Alameda Research Ltd, Case No. 22-11067 (JTD) [D.I. 1]

3. Voluntary Petition – FTX Trading Ltd, Case No. 22-11068 (JTD) [D.I. 1]

4. Voluntary Petition – Alameda Research Holdings Inc., Case No. 22-11069 (JTD) [D.I. 1]

5. Voluntary Petition – Clifton Bay Investments LLC, Case No. 22-11070 (JTD) [D.I. 1]

6. Voluntary Petition – West Realm Shires Services Inc., Case No. 22-11071 (JTD) [D.I. 1]

7. Voluntary Petition – West Realm Shires Financial Services Inc., Case No. 22-11072 (JTD) [D.I. 1]

8. Voluntary Petition – Ledger Holdings Inc., Case No. 22-11073 (JTD) [D.I. 1]

9. Voluntary Petition – FTX Japan Holdings K.K., Case No. 22-11074 (JTD) [D.I. 1]

10. Voluntary Petition – FTX Europe AG, Case No. 22-11075 (JTD) [D.I. 1]

---

[1]   The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   **Amended items appear in bold.**

11. Voluntary Petition – FTX Property Holdings Ltd, Case No. 22-11076 (JTD) [D.I. 1]

12. Voluntary Petition – LT Baskets Ltd., Case No. 22-11077 (JTD) [D.I. 1]

13. Voluntary Petition – Alameda TR Ltd, Case No. 22-11078 (JTD) [D.I. 1]

14. Voluntary Petition – Allston Way Ltd, Case No. 22-11079 (JTD) [D.I. 1]

15. Voluntary Petition – Analisya Pte Ltd, Case No. 22-11080 (JTD) [D.I. 1]

16. Voluntary Petition – Atlantis Technology Ltd., Case No. 22-11081 (JTD) [D.I. 1]

17. Voluntary Petition – Bancroft Way Ltd, Case No. 22-11082 (JTD) [D.I. 1]

18. Voluntary Petition – Blue Ridge Ltd, Case No. 22-11083 (JTD) [D.I. 1]

19. Voluntary Petition – Cardinal Ventures Ltd, Case No. 22-11084 (JTD) [D.I. 1]

20. Voluntary Petition – Cedar Bay Ltd, Case No. 22-11085 (JTD) [D.I. 1]

21. Voluntary Petition – Liquid Securities Singapore Pte Ltd, Case No. 22-11086 (JTD) [D.I. 1]

22. Voluntary Petition – Maclaurin Investments Ltd., Case No. 22-11087 (JTD) [D.I. 1]

23. Voluntary Petition – Mangrove Cay Ltd, Case No. 22-11088 (JTD) [D.I. 1]

24. Voluntary Petition – Paper Bird Inc, Case No. 22-11089 (JTD) [D.I. 1]

25. Voluntary Petition – Pioneer Street Inc., Case No. 22-11090 (JTD) [D.I. 1]

26. Voluntary Petition – Quoine India Pte Ltd, Case No. 22-11091 (JTD) [D.I. 1]

27. Voluntary Petition – Quoine Vietnam Co. Ltd, Case No. 22-11092 (JTD) [D.I. 1]

28. Voluntary Petition – SNG INVESTMENTS YATIRIM VE DANIŞMANLIK ANONİM ŞİRKETİ, Case No. 22-11093 (JTD) [D.I. 1]

29. Voluntary Petition – Strategy Ark Collective Ltd., Case No. 22-11094 (JTD) [D.I. 1]

30. Voluntary Petition – Technology Services Bahamas Limited, Case No. 22-11095 (JTD) [D.I. 1]

31. Voluntary Petition – Verdant Canyon Capital LLC, Case No. 22-11096 (JTD) [D.I. 1]

32. Voluntary Petition – West Innovative Barista Ltd., Case No. 22-11097 (JTD) [D.I. 1]

33. Voluntary Petition – Western Concord Enterprises Ltd., Case No. 22-11098 (JTD) [D.I. 1]

34. Voluntary Petition – FTX Equity Record Holdings Ltd, Case No. 22-11099 (JTD) [D.I. 1]

35. Voluntary Petition – FTX Exchange FZE, Case No. 22-11110 (JTD) [D.I. 1]

36. Voluntary Petition – FTX Hong Kong Ltd, Case No. 22-11112 (JTD) [D.I. 1]

37. Voluntary Petition – FTX Japan K.K., Case No. 22-11113 (JTD) [D.I. 1]

38. Voluntary Petition – FTX Japan Services KK, Case No. 22-11114 (JTD) [D.I. 1]

39. Voluntary Petition – Alameda Aus Pty Ltd, Case No. 22-11115 (JTD) [D.I. 1]

40. Voluntary Petition – Alameda Research (Bahamas) Ltd, Case No. 22-11116 (JTD) [D.I. 1]

41. Voluntary Petition – Alameda Research KK, Case No. 22-11100 (JTD) [D.I. 1]

42. Voluntary Petition – Alameda Research Pte Ltd, Case No. 22-11107 (JTD) [D.I. 1]

43. Voluntary Petition – Alameda Research Yankari Ltd, Case No. 22-11108 (JTD) [D.I. 1]

44. Voluntary Petition – Alameda TR Systems S. de R. L., Case No.22-11109 (JTD) [D.I. 1]

45. Voluntary Petition – Blockfolio, Inc., Case No. 22-11110 (JTD) [D.I. 1]

46. Voluntary Petition – Clifton Bay Investments Ltd, Case No. 22-11111 (JTD) [D.I. 1]

47. Voluntary Petition – Cottonwood Grove Ltd, Case No. 22-11112 (JTD) [D.I. 1]

48. Voluntary Petition – Crypto Bahamas LLC, Case No. 22-11113 (JTD) [D.I. 1]

49. Voluntary Petition – Deep Creek Ltd, Case No. 22-11114 (JTD) [D.I. 1]

50. Voluntary Petition – Digital Custody Inc., Case No. 22-11115 (JTD) [D.I. 1]

51. Voluntary Petition – FTX (Gibraltar) Ltd, Case No. 22-11116 (JTD) [D.I. 1]

52. Voluntary Petition – FTX Canada Inc, Case No. 22-11117 (JTD) [D.I. 1]

53. Voluntary Petition – FTX Digital Holdings (Singapore) Pte Ltd, Case No. 22-11118 (JTD) [D.I. 1]

54. Voluntary Petition – FTX Products (Singapore) Pte Ltd, Case No. 22-11119 (JTD) [D.I. 1]

55. Voluntary Petition – FTX Services Solutions Ltd., Case No. 22-11120 (JTD) [D.I. 1]

56. Voluntary Petition – FTX Structured Products AG, Case No. 22-11122 (JTD) [D.I. 1]

57. Voluntary Petition – FTX Trading GmbH, Case No. 22-11123 (JTD) [D.I. 1]

58. Voluntary Petition – FTX Zuma Ltd, Case No. 22-11124 (JTD) [D.I. 1]

59. Voluntary Petition – Global Compass Dynamics Ltd., Case No. 22-11125 (JTD) [D.I. 1]

60. Voluntary Petition – Goodman Investments Ltd., Case No. 22-11126 (JTD) [D.I. 1]

61. Voluntary Petition – Hawaii Digital Assets Inc., Case No. 22-11127 (JTD) [D.I. 1]

62. Voluntary Petition – Innovatia Ltd, Case No. 22-11128 (JTD) [D.I. 1]

63. Voluntary Petition – Island Bay Ventures Inc, Case No. 22- 11129 (JTD) [D.I. 1]

64. Voluntary Petition – Killarney Lake Investments Ltd, Case No. 22-11131 (JTD) [D.I. 1]

65. Voluntary Petition – Zubr Exchange Ltd, Case No. 22-11132 (JTD) [D.I. 1]

66. Voluntary Petition – Alameda Global Services Ltd., Case No. 22-11134 (JTD) [D.I. 1]

67. Voluntary Petition – Cottonwood Technologies Ltd., Case No. 22-11136 (JTD) [D.I. 1]

68. Voluntary Petition – Deck Technologies Holdings LLC, Case No. 22-11138 (JTD) [D.I. 1]

69. Voluntary Petition – Deck Technologies Inc., Case No. 22-11139 (JTD) [D.I. 1]

70. Voluntary Petition – Euclid Way Ltd, Case No. 22-11141 (JTD) [D.I. 1]

71. Voluntary Petition – FTX Digital Assets LLC, Case No. 22-11143 (JTD) [D.I. 1]

72. Voluntary Petition – FTX EMEA Ltd., Case No. 22-11145 (JTD) [D.I. 1]

73. Voluntary Petition – FTX US Trading, Inc., Case No. 22-11149 (JTD) [D.I. 1]

74. Voluntary Petition – Hive Empire Trading Pty Ltd, Case No. 22-11150 (JTD) [D.I. 1]

75. Voluntary Petition – Liquid Financial USA Inc., Case No. 22-11151 (JTD) [D.I. 1]

76. Voluntary Petition – LiquidEX LLC, Case No. 22-11152 (JTD) [D.I. 1]

77. Voluntary Petition – North Dimension Inc, Case No. 22-11153 (JTD) [D.I. 1]

78. Voluntary Petition – North Wireless Dimension Inc, Case No. 22-11153 (JTD) [D.I. 1]

79. Voluntary Petition – LedgerPrime Bitcoin Yield Enhancement Master Fund LP, Case No. 22-11155 (JTD) [D.I. 1]

80. Voluntary Petition – LedgerPrime Digital Asset Opportunities Fund, LLC, Case No. 22-11156 (JTD) [D.I. 1]

81. Voluntary Petition – LedgerPrime Digital Asset Opportunities Master Fund LP, Case No. 22-11157 (JTD) [D.I. 1]

82. Voluntary Petition – Ledger Prime LLC, Case No. 22-11158 (JTD) [D.I. 1]

83. Voluntary Petition – LedgerPrime Ventures, LP, Case No. 22-11159 (JTD) [D.I. 1]

84. Voluntary Petition – North Dimension Ltd, Case No. 22-11160 (JTD) [D.I. 1]

85. Voluntary Petition – Quoine Pte Ltd, Case No. 22-11161 (JTD) [D.I. 1]

86. Voluntary Petition – Cedar Grove Technology Services, Ltd, Case No. 22-11162 (JTD) [D.I. 1]

87. Voluntary Petition – DAAG Trading, DMCC, Case No. 22-11163 (JTD) [D.I. 1]

88. Voluntary Petition – FTX Certificates GmbH, Case No. 22-11164 (JTD) [D.I. 1]

89. Voluntary Petition – FTX Crypto Services Ltd., Case No. 22-11165 (JTD) [D.I. 1]

90. Voluntary Petition – FTX EU Ltd., Case No. 22-11166 (JTD) [D.I. 1]

91. Voluntary Petition – FTX Lend Inc., Case No. 22-11167 (JTD) [D.I. 1]

92. Voluntary Petition – FTX Marketplace, Inc., Case No. 22-11168 (JTD) [D.I. 1]

93. Voluntary Petition – FTX Switzerland GmbH, Case No. 22-11169 (JTD) [D.I. 1]

94. Voluntary Petition – FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET, Case No. 22-11170 (JTD) [D.I. 1]

95. Voluntary Petition – FTX US Services, Inc., Case No. 22-11171 (JTD) [D.I. 1]

96. Voluntary Petition – FTX Ventures Ltd, Case No. 22-11172 (JTD) [D.I. 1]

97. Voluntary Petition – GG Trading Terminal Ltd, Case No. 22-11173 (JTD) [D.I. 1]

98. Voluntary Petition – Good Luck Games, LLC, Case No. 22-11174 (JTD) [D.I. 1]

99. Voluntary Petition – Hannam Group Inc, Case No. 22-11175 (JTD) [D.I. 1]

100. Voluntary Petition – Hilltop Technology Services LLC, Case No. 22-11176 (JTD) [D.I. 1]

101. Voluntary Petition – LedgerPrime Bitcoin Yield Enhancement Fund, LLC, Case No. 22-11177 (JTD) [D.I. 1]

102. Voluntary Petition – West Realm Shires Inc., Case No. 22-11183 (JTD) [D.I. 1]

**Exhibit A-2**

**Statement of Work**

{1368.002-W0069451.}



**Statement of Work**

This Statement of Work, dated November 28, 2022 (this "SOW"), is made by Ernst & Young LLP ("EY") and West Realm Shires Inc., on behalf of itself and all the other debtor entities in the consolidated Chapter 11 (as defined below) cases pending before the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") under case number 22-11068 (JTD), as listed in Appendix 1, hereto (the "Client"), pursuant to the Agreement, dated November 28, 2022 (the "Agreement"), between EY and the Client which was executed in connection with the Client filing petitions under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on or about November 11, 2022 and November 14, 2022, as applicable, with the Bankruptcy Court, and describes certain services that EY will perform for the Client during the Client's Chapter 11 proceedings.  This SOW shall be effective as of the date of this letter.

West Realm Shires Inc. represents that it has authority to sign this SOW on behalf of each and every debtor entity in the consolidated Chapter 11 cases pending before the Bankruptcy Court under case number 22-11068 (JTD) , and that each and every such entity shall be bound by the terms of this SOW.

This SOW incorporates the Agreement by reference to form a contract. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement.

**Objective and Purpose**

We understand Client has filed for Chapter 11 bankruptcy, and will need various levels of support with respect to its tax compliance, accounting, advisory, and controversy functions.  Client will engage EY to perform preliminary diligence procedures and will agree on a plan to effect implementation of global compliance and reporting ("GCR") Services for Client.  SOW will also enable EY to assist with "On-Call" Tax Advisory and Compliance matters, should they arise during this preliminary evaluation period.

To the extent there are services which Client desires beyond the focus of this SOW (e.g., non-tax, consulting related services), EY will identify the necessary resources and engage with Client under a separate agreement.



**Scope of Services**

EY will provide the following Services (the "Services") to Client.

**Preliminary Tax Diligence Services**

EY will perform preliminary tax diligence procedures in connection with Client's Chapter 11 bankruptcy proceedings in order to determine the level of tax support, both prospectively and retrospectively, EY can provide to Client.  Procedures related to this engagement include, but are not limited to, the following:

- Review of Client's organizational structure
- Review of tax filing calendar/listing for both income and non-income taxes (e.g., employment gross receipts, sales/use, property, unclaimed property), as well as any previously filed returns and supporting workpapers, as well as tax return workpapers/support for current/pending filings.
    - If calendar/listing does not exist, EY will compile such as part of its diligence procedures.
- Review of all existing tax attributes per filed returns and compile summary inventory
- Review of Client's financial statements and/or any other available documentation (e.g., trial balances) related to financial reporting/performance
- Review of Client's intercompany arrangements and transfer pricing documentation
- Review of any Client correspondence with/from taxing authorities
- Review of documentation related to any historic acquisitions, dispositions or reorganizations including transaction form, tax treatment, historical tax due diligence, tax indemnities, etc.
- Participate in calls with Client's Management and external advisors
- Addressing specific tax technical issues identified by Client and/or advisors not required to be contracted under a separate SOW

Final deliverables from this workstream will include a summary presentation to Client including (but not limited to):

- Holistic gap assessment regarding Client's current tax profile, filings, attributes, including potential areas for further investigation for all open tax periods
- Tax calendar/listing of all current and required filings (if one does not currently exist)
- Recommended support model to which EY can engage with Client through amendment to this SOW and/or Attachments and/or additional SOWs as required.



**GCR Implementation Services**

EY, the other EY Firms and Client will agree on a plan to effect implementation of the GCR central compliance services and transition in respect of the Services. The implementation plan will include as a minimum the following steps:

- Confirm scope of the Services included, subsequently agreeing to any amendment to the SOW and/or Attachments and/or additional SOW as required.
- Confirm milestone dates by which actions either by EY, the EY Firms or Client must be completed for timely filing of the returns within scope.
- Confirm data reports and other information as necessary, and the means of transferring such reports to EY and/or other EY Firms, that EY and/or other EY Firms will require to prepare accurately the returns within scope, recommending any process and/or procedural change requirements as necessary to improve the efficiency in the carrying out of the Services.
- Confirm the escalation process to EY, the other EY Firm's and Client's project managers, respectively, of issues or risk to the successful conclusion to transition and/or the carrying out of the Services.
- Confirm sign offs by EY and Client that transition has been completed successfully.


**Global Routine On-Call Assistance Services**

Pursuant to this SOW and as detailed in the paragraphs that follow, EY will provide to Client routine tax advisory services and assistance concerning issues as requested by Client when such projects are not covered by a separate statement of work and do not involve any significant tax planning or projects ("on-call tax advisory services"). Upon Client's written request, pursuant to this SOW and as detailed in the paragraphs that follow, EY also will provide one-off tax compliance services as described below ("on-call tax compliance services"). This SOW applies to routine on-call projects commenced during the term of this SOW.

On-call tax assistance services are intended to be used to respond to general tax questions and assignments that are expected, at the beginning of the project, to involve total professional time not to exceed (with respect to the specific project) $25,000 in professional fees.

*On-Call Tax Advisory Services*

The scope of on-call tax advisory services to be performed pursuant to this SOW may be agreed to orally or through written communications with Client such as e-mails. The projects covered by on-call



tax advisory services under this SOW include assistance with tax issues by answering one-off questions, drafting memos describing how specific tax rules work, assisting with general transactional issues, and assisting Client in connection with its dealings with tax authorities (other than representing Client in an examination or an appeal before the IRS or other taxing authority).

Specific tasks that may be involved in connection with these Services include the following: participating in meetings and telephone calls with Client; participating in meetings and telephone calls with taxing authorities and other third parties where EY is not representing Client in an examination or an appeal before the taxing authority; reviewing transaction-related documentation; researching technical issues; and preparing technical memoranda, letters, e-mails, and other written documentation.

On-call tax advisory services are advisory in nature but are not intended to cover services related to significant tax planning or other projects where a mutual understanding of the scope of the engagement should be formally documented. Accordingly, in lieu of this SOW, separate statements of work generally will be entered into in connection with such services, including, but not limited to, the following: services related to a transaction that is a reportable transaction, transaction of interest or transaction similarly designated by a tax authority; engagements where EY will render formal opinions or opinions that will be relied upon by third parties; studies with respect to Client's tax attributes (e.g., basis studies or repairs and maintenance studies); loaned or assigned staff engagements; due diligence engagements; and financial planning or investment advisory services.

### *On-Call Tax Compliance Services*

Unless otherwise listed in Attachment A, as may be amended, the on-call tax compliance services covered by this SOW include, upon Client's written request, the preparation of estimated tax computations and related vouchers and requests for extensions of tax return due dates, and the one-off preparation of sales, use, excise, and property tax returns. In lieu of performing such services pursuant to these on-call tax compliance services terms, separate statements of work (or an amendment to Attachment A of this SOW) generally will be entered into for engagements where EY prepares or reviews income tax returns, entries on income tax returns, Reports of Foreign Bank and Financial Accounts (FBARs / FinCEN Form 114), or where EY will prepare sales, use, excise and property tax returns on a continuing basis.

The scope of on-call tax compliance services will be agreed to through written communications with Client such as an exchange of e-mails.



**Other Provisions**

Client shall assign a qualified person to oversee the Services. Client is responsible for all management decisions relating to the Services and for determining whether the Services are appropriate for its purposes.

Notwithstanding anything to the contrary in the Agreement or this SOW, EY does not assume any responsibility for any third-party products, programs or services selected by Client, their performance or compliance with Client's specifications or otherwise.

EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided that any use does not externally identify, or make reference to, Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

EY may subcontract a portion of the Services to one or more EY Firms and to subcontractors working under EY's direction who may communicate directly with Client. EY, however, will remain solely responsible to Client for the performance of the Services. If EY has prepared or reviewed (or will prepare or review) Client's U.S. income tax returns, Client authorizes the EY Firms, including those located outside the United States, and EY's subcontractors to disclose information received or generated in connection with the preparation of any such U.S. income tax returns of the Client to and among each other for the purpose of rendering the Services and discussing and providing other services to Client. Client has the ability to request a more limited disclosure of tax return information than that described above. If, at any time, Client would like EY to narrow the scope of the information to be disclosed, please contact EY in writing and EY will limit any disclosures that have not yet occurred. Client acknowledges that this consent will be valid for three years from the date this SOW is signed by Client below.

**EY Tools:** EY may provide Client access to use certain EY Materials for the purpose of Client's receipt of the Services or as otherwise expressly agreed in writing by EY ("**EY Tools**"). As between EY and Client, EY (or another EY Firm) owns all right, title, interest, and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative work thereof.

**License to EY Tools During the SOW Term:** To the extent that EY provides Client access to any EY Tools during the Term of this SOW, EY hereby grants to Client a nonexclusive, paid-up, internal license, during the Term of this SOW, to use the EY Tools, for the sole purpose of Client's receipt of the Services from EY under this SOW.



**License to EY Tools After the SOW Term:** EY may allow Client to use certain EY Tools, after the Term of this SOW ("Leave Behind EY Tool"), for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under this SOW. With respect to any such Leave Behind EY Tool, to the extent permitted by applicable law and professional regulations, EY hereby grants to Client a nonexclusive, paid-up, internal license, to use the Leave Behind EY Tool, after the Term of this SOW, for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under this SOW.

**EY Tools Disclaimers and Acknowledgements:** Client's use of any EY Tools may be subject to additional terms, which EY will provide to Client in writing. Client acknowledges that EY may at any time, modify, replace, direct Client to discontinue use of any EY Tools, or otherwise revoke, limit or condition Client's access and right to use any EY Tools. All EY TOOLS ARE PROVIDED "AS IS" AND WITHOUT ANY WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF TITLE, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR ANY WARRANTY THAT THE OPERATION OF THE EY TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE OR REMAIN COMPATIBLE WITH ANY OF CLIENT'S HARDWARE OR SOFTWARE.

**Engagement Team**

Thomas M. Shea (Principal) and Kristie Lowery (Partner) will lead the EY team in providing the Services.

**Contacts**

Client has identified John Ray III as Client's contact with whom EY should communicate about these Services. Client's contact at EY for these Services will be Thomas Shea.

**Fees**

Subject to Bankruptcy Court approval, Client shall pay fees for the Services based on the actual time that EY's professionals spend performing them, billed at the following agreed upon rates for each level while the Services under this SOW are being performed.



| Level | Rate |
|---|---|
| National Partner/Principal | $990 |
| Partner/Principal | $825 |
| Managing Director | $775 |
| Senior Manager | $650 |
| Manager | $525 |
| Senior | $395 |
| Staff | $225 |

Client shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by Client. In addition, a charge will be added to EY's fees reflecting an estimated technology cost incurred equal to 3% of the professional fees for this engagement.

EY will bill Client for EY's fees, expenses, and applicable taxes or other charges, if any, on a monthly basis. Payment is due upon receipt of EY's invoice.

**IN WITNESS WHEREOF,** EY and Client each caused this SOW to be signed and delivered by its duly authorized representative(s).

*Ernst & Young LLP*

**AGREED:**

West Realm Shires Inc., on behalf of itself and all the other debtor entities in the consolidated chapter 11 cases pending before the Bankruptcy Court  under case number 22-11068 (JTD), as listed in Appendix 1, hereto

By: _____

John Ray III, Chief Executive Officer

12/2/2022

Date: _____

A member firm of Ernst & Young Global Limited

**Appendix 1 - List of all other debtor entities**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Joint Administration Pending) |

### THIRD AMENDED[2] NOTICE OF FILING OF CHAPTER 11 PETITIONS
### AND RELATED MOTIONS AND DECLARATIONS

 **PLEASE TAKE NOTICE** that on November 11, 2022 and, with respect to Debtor West Realm Shires Inc., on November 14, 2022, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

## A. VOLUNTARY CHAPTER 11 PETITIONS

1. Voluntary Petition – Alameda Research LLC, Case No. 22-11066 (JTD) [D.I. 1]

2. Voluntary Petition – Alameda Research Ltd, Case No. 22-11067 (JTD) [D.I. 1]

3. Voluntary Petition – FTX Trading Ltd, Case No. 22-11068 (JTD) [D.I. 1]

4. Voluntary Petition – Alameda Research Holdings Inc., Case No. 22-11069 (JTD) [D.I. 1]

5. Voluntary Petition – Clifton Bay Investments LLC, Case No. 22-11070 (JTD) [D.I. 1]

6. Voluntary Petition – West Realm Shires Services Inc., Case No. 22-11071 (JTD) [D.I. 1]

7. Voluntary Petition – West Realm Shires Financial Services Inc., Case No. 22-11072 (JTD) [D.I. 1]

8. Voluntary Petition – Ledger Holdings Inc., Case No. 22-11073 (JTD) [D.I. 1]

9. Voluntary Petition – FTX Japan Holdings K.K., Case No. 22-11074 (JTD) [D.I. 1]

10. Voluntary Petition – FTX Europe AG, Case No. 22-11075 (JTD) [D.I. 1]

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] **Amended items appear in bold.**

11. Voluntary Petition – FTX Property Holdings Ltd, Case No. 22-11076 (JTD) [D.I. 1]

12. Voluntary Petition – LT Baskets Ltd., Case No. 22-11077 (JTD) [D.I. 1]

13. Voluntary Petition – Alameda TR Ltd, Case No. 22-11078 (JTD) [D.I. 1]

14. Voluntary Petition – Allston Way Ltd, Case No. 22-11079 (JTD) [D.I. 1]

15. Voluntary Petition – Analisya Pte Ltd, Case No. 22-11080 (JTD) [D.I. 1]

16. Voluntary Petition – Atlantis Technology Ltd., Case No. 22-11081 (JTD) [D.I. 1]

17. Voluntary Petition – Bancroft Way Ltd, Case No. 22-11082 (JTD) [D.I. 1]

18. Voluntary Petition – Blue Ridge Ltd, Case No. 22-11083 (JTD) [D.I. 1]

19. Voluntary Petition – Cardinal Ventures Ltd, Case No. 22-11084 (JTD) [D.I. 1]

20. Voluntary Petition – Cedar Bay Ltd, Case No. 22-11085 (JTD) [D.I. 1]

21. Voluntary Petition – Liquid Securities Singapore Pte Ltd, Case No. 22-11086 (JTD) [D.I. 1]

22. Voluntary Petition – Maclaurin Investments Ltd., Case No. 22-11087 (JTD) [D.I. 1]

23. Voluntary Petition – Mangrove Cay Ltd, Case No. 22-11088 (JTD) [D.I. 1]

24. Voluntary Petition – Paper Bird Inc, Case No. 22-11089 (JTD) [D.I. 1]

25. Voluntary Petition – Pioneer Street Inc., Case No. 22-11090 (JTD) [D.I. 1]

26. Voluntary Petition – Quoine India Pte Ltd, Case No. 22-11091 (JTD) [D.I. 1]

27. Voluntary Petition – Quoine Vietnam Co. Ltd, Case No. 22-11092 (JTD) [D.I. 1]

28. Voluntary Petition – SNG INVESTMENTS YATIRIM VE DANIŞMANLIK ANONİM ŞİRKETİ, Case No. 22-11093 (JTD) [D.I. 1]

29. Voluntary Petition – Strategy Ark Collective Ltd., Case No. 22-11094 (JTD) [D.I. 1]

30. Voluntary Petition – Technology Services Bahamas Limited, Case No. 22-11095 (JTD) [D.I. 1]

31. Voluntary Petition – Verdant Canyon Capital LLC, Case No. 22-11096 (JTD) [D.I. 1]

32. Voluntary Petition – West Innovative Barista Ltd., Case No. 22-11097 (JTD) [D.I. 1]

33. Voluntary Petition – Western Concord Enterprises Ltd., Case No. 22-11098 (JTD) [D.I. 1]

34. Voluntary Petition – FTX Equity Record Holdings Ltd, Case No. 22-11099 (JTD) [D.I. 1]

35. Voluntary Petition – FTX Exchange FZE, Case No. 22-11110 (JTD) [D.I. 1]

36. Voluntary Petition – FTX Hong Kong Ltd, Case No. 22-11112 (JTD) [D.I. 1]

37. Voluntary Petition – FTX Japan K.K., Case No. 22-11113 (JTD) [D.I. 1]

38. Voluntary Petition – FTX Japan Services KK, Case No. 22-11114 (JTD) [D.I. 1]

39. Voluntary Petition – Alameda Aus Pty Ltd, Case No. 22-11115 (JTD) [D.I. 1]

40. Voluntary Petition – Alameda Research (Bahamas) Ltd, Case No. 22-11116 (JTD) [D.I. 1]

41. Voluntary Petition – Alameda Research KK, Case No. 22-11100 (JTD) [D.I. 1]

42. Voluntary Petition – Alameda Research Pte Ltd, Case No. 22-11107 (JTD) [D.I. 1]

43. Voluntary Petition – Alameda Research Yankari Ltd, Case No. 22-11108 (JTD) [D.I. 1]

44. Voluntary Petition – Alameda TR Systems S. de R. L., Case No.22-11109 (JTD) [D.I. 1]

45. Voluntary Petition – Blockfolio, Inc., Case No. 22-11110 (JTD) [D.I. 1]

46. Voluntary Petition – Clifton Bay Investments Ltd, Case No. 22-11111 (JTD) [D.I. 1]

47. Voluntary Petition – Cottonwood Grove Ltd, Case No. 22-11112 (JTD) [D.I. 1]

48. Voluntary Petition – Crypto Bahamas LLC, Case No. 22-11113 (JTD) [D.I. 1]

49. Voluntary Petition – Deep Creek Ltd, Case No. 22-11114 (JTD) [D.I. 1]

50. Voluntary Petition – Digital Custody Inc., Case No. 22-11115 (JTD) [D.I. 1]

51. Voluntary Petition – FTX (Gibraltar) Ltd, Case No. 22-11116 (JTD) [D.I. 1]

52. Voluntary Petition – FTX Canada Inc, Case No. 22-11117 (JTD) [D.I. 1]

53. Voluntary Petition – FTX Digital Holdings (Singapore) Pte Ltd, Case No. 22-11118 (JTD) [D.I. 1]

54. Voluntary Petition – FTX Products (Singapore) Pte Ltd, Case No. 22-11119 (JTD) [D.I. 1]

55. Voluntary Petition – FTX Services Solutions Ltd., Case No. 22-11120 (JTD) [D.I. 1]

56. Voluntary Petition – FTX Structured Products AG, Case No. 22-11122 (JTD) [D.I. 1]

57. Voluntary Petition – FTX Trading GmbH, Case No. 22-11123 (JTD) [D.I. 1]

58. Voluntary Petition – FTX Zuma Ltd, Case No. 22-11124 (JTD) [D.I. 1]

59. Voluntary Petition – Global Compass Dynamics Ltd., Case No. 22-11125 (JTD) [D.I. 1]

60. Voluntary Petition – Goodman Investments Ltd., Case No. 22-11126 (JTD) [D.I. 1]

61. Voluntary Petition – Hawaii Digital Assets Inc., Case No. 22-11127 (JTD) [D.I. 1]

62. Voluntary Petition – Innovatia Ltd, Case No. 22-11128 (JTD) [D.I. 1]

63. Voluntary Petition – Island Bay Ventures Inc, Case No. 22- 11129 (JTD) [D.I. 1]

64. Voluntary Petition – Killarney Lake Investments Ltd, Case No. 22-11131 (JTD) [D.I. 1]

65. Voluntary Petition – Zubr Exchange Ltd, Case No. 22-11132 (JTD) [D.I. 1]

66. Voluntary Petition – Alameda Global Services Ltd., Case No. 22-11134 (JTD) [D.I. 1]

67. Voluntary Petition – Cottonwood Technologies Ltd., Case No. 22-11136 (JTD) [D.I. 1]

68. Voluntary Petition – Deck Technologies Holdings LLC, Case No. 22-11138 (JTD) [D.I. 1]

69. Voluntary Petition – Deck Technologies Inc., Case No. 22-11139 (JTD) [D.I. 1]

70. Voluntary Petition – Euclid Way Ltd, Case No. 22-11141 (JTD) [D.I. 1]

71. Voluntary Petition – FTX Digital Assets LLC, Case No. 22-11143 (JTD) [D.I. 1]

72. Voluntary Petition – FTX EMEA Ltd., Case No. 22-11145 (JTD) [D.I. 1]

73. Voluntary Petition – FTX US Trading, Inc., Case No. 22-11149 (JTD) [D.I. 1]

74. Voluntary Petition – Hive Empire Trading Pty Ltd, Case No. 22-11150 (JTD) [D.I. 1]

75. Voluntary Petition – Liquid Financial USA Inc., Case No. 22-11151 (JTD) [D.I. 1]

76. Voluntary Petition – LiquidEX LLC, Case No. 22-11152 (JTD) [D.I. 1]

77. Voluntary Petition – North Dimension Inc, Case No. 22-11153 (JTD) [D.I. 1]

78. Voluntary Petition – North Wireless Dimension Inc, Case No. 22-11153 (JTD) [D.I. 1]

79. Voluntary Petition – LedgerPrime Bitcoin Yield Enhancement Master Fund LP, Case No. 22-11155 (JTD) [D.I. 1]

80. Voluntary Petition – LedgerPrime Digital Asset Opportunities Fund, LLC, Case No. 22-11156 (JTD) [D.I. 1]

81. Voluntary Petition – LedgerPrime Digital Asset Opportunities Master Fund LP, Case No. 22-11157 (JTD) [D.I. 1]

82. Voluntary Petition – Ledger Prime LLC, Case No. 22-11158 (JTD) [D.I. 1]

83. Voluntary Petition – LedgerPrime Ventures, LP, Case No. 22-11159 (JTD) [D.I. 1]

84. Voluntary Petition – North Dimension Ltd, Case No. 22-11160 (JTD) [D.I. 1]

85. Voluntary Petition – Quoine Pte Ltd, Case No. 22-11161 (JTD) [D.I. 1]

86. Voluntary Petition – Cedar Grove Technology Services, Ltd, Case No. 22-11162 (JTD) [D.I. 1]

87. Voluntary Petition – DAAG Trading, DMCC, Case No. 22-11163 (JTD) [D.I. 1]

88. Voluntary Petition – FTX Certificates GmbH, Case No. 22-11164 (JTD) [D.I. 1]

89. Voluntary Petition – FTX Crypto Services Ltd., Case No. 22-11165 (JTD) [D.I. 1]

90. Voluntary Petition – FTX EU Ltd., Case No. 22-11166 (JTD) [D.I. 1]

91. Voluntary Petition – FTX Lend Inc., Case No. 22-11167 (JTD) [D.I. 1]

92. Voluntary Petition – FTX Marketplace, Inc., Case No. 22-11168 (JTD) [D.I. 1]

93. Voluntary Petition – FTX Switzerland GmbH, Case No. 22-11169 (JTD) [D.I. 1]

94. Voluntary Petition – FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET, Case No. 22-11170 (JTD) [D.I. 1]

95. Voluntary Petition – FTX US Services, Inc., Case No. 22-11171 (JTD) [D.I. 1]

96. Voluntary Petition – FTX Ventures Ltd, Case No. 22-11172 (JTD) [D.I. 1]

97. Voluntary Petition – GG Trading Terminal Ltd, Case No. 22-11173 (JTD) [D.I. 1]

98. Voluntary Petition – Good Luck Games, LLC, Case No. 22-11174 (JTD) [D.I. 1]

99. Voluntary Petition – Hannam Group Inc, Case No. 22-11175 (JTD) [D.I. 1]

100. Voluntary Petition – Hilltop Technology Services LLC, Case No. 22-11176 (JTD) [D.I. 1]

101. Voluntary Petition – LedgerPrime Bitcoin Yield Enhancement Fund, LLC, Case No. 22-11177 (JTD) [D.I. 1]

102. Voluntary Petition – West Realm Shires Inc., Case No. 22-11183 (JTD) [D.I. 1]

**Exhibit B**

**Names of Parties in Interest and whether a Client Engagement has been Initiated by EYGL Member Firms During the Last Three Years**

**(TO BE FILED)**