# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Nos. 270, 277, 280, 369, 459, 496, 498** |

## DEBTORS' OMNIBUS REPLY IN SUPPORT OF
## DEBTORS' RETENTION APPLICATIONS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby file this reply (the "Reply") in further support of the *Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP* ("S&C") *as Counsel to the Debtors and Debtors-in-Possession* Nunc Pro Tunc *to the Petition Date* [D.I. 270] (the "S&C Application"), the *Debtors' Application for an Order Authorizing the Retention and Employment of AlixPartners, LLP* ("Alix") *as Forensic Investigation Consultant to the Debtors* Nunc Pro Tunc *to November 28, 2022* [D.I. 277] (the "Alix Application") and the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP* ("Quinn") *as Special Counsel for the Debtors and the Debtors in Possession,* Nunc Pro Tunc *to November 13, 2022* [D.I. 280] (the "Quinn Application" and together with the S&C Application and the Alix Application, the "Applications").[2] There are three objectors. Warren Winter filed an objection

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Applications.

to the S&C Application [D.I. 369] on January 4, 2023, (the "Winter Objection").  On January 10, 2023, beyond the objection deadline, Mr. Winter filed an amended objection to the S&C Application [D.I. 459] (the "Amended Winter Objection" and together with the Winter Objection, the "Winter Objections").  On January 16, 2023, a joinder was filed by Richard L. Brummond [D.I. 502] (the "Joinder" and together with the Winter Objections, the "Winter/Brummond Objections").  On January 13, 2023, the United States Trustee for Regions Three and Nine (the "U.S. Trustee" and together with Mr. Winter, the "Objectors") filed an objection to the S&C Application [D.I. 496] (the "UST Objection") and on January 14, 2023, filed an omnibus objection to the Alix Application and the Quinn Application [D.I. 498] (the "Omnibus Objection" and, together with the Winter/Brummond Objections and the UST Objection, the "Objections").  The Objections should be overruled, and the Applications should be granted.

**Preliminary Statement**

1. The declaration of John J. Ray III, the Debtors' Chief Executive submitted on November 17, 2022 in Support of Chapter 11 Proceedings and First Day Pleadings (the "Ray First Day Declaration") was striking in its blunt assessment of the state in which Mr. Samuel Bankman-Fried and the other founders left the FTX Group.  Mr. Ray's statement that "[n]ever in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here" has been cited in countless news reports and even earned Mr. Ray a spot in the New York Times 2022 year end News Quiz (question 23 of 25).  Suffice it to say that the challenges presented by the irresponsible actions of the FTX founders are difficult to measure.

2

2. As set forth in more detail in the *Supplemental Declaration of John J. Ray III in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-In-Possession* Nunc Pro Tunc *to the Petition Date* (the "Supplemental Ray Declaration") submitted herewith, the Debtors' advisors have worked tirelessly and nonstop over the last seventy days to take control of what Mr. Ray describes as a "dumpster fire" in order to stop assets from being depleted and to take action to realize value related to the Debtors' assets. This exercise has been led from day one by S&C under the direction of Mr. Ray. The work of S&C and the other advisors is directly responsible for the enormous progress that has been made in locating and securing assets, locating and securing the information necessary to create reliable books and records, interacting with myriad regulatory and criminal authorities and forging a peace accord with the Bahamas joint provisional liquidators, just to name a few. Moreover, the role of S&C in contacting federal prosecutors, the Securities and Exchange Commission and the Commodity Futures Trade Commission (at the instruction of Mr. Ryne Miller) *before* the Petition Date has been of critical importance to the speed with which federal prosecutors have been able to charge and arrest Mr. Bankman-Fried and charge (and obtain guilty pleas from) Ms. Ellison and Mr. Wang.

3. The Objections seek to turn the world upside down. They seek to assess blame to the advisors, all the time ignoring the benefit the advisors have brought and continue to bring to the Debtors and their stakeholders. As Mr. Ray states in his Supplemental Ray Declaration, "[i]f the retention of any of S&C, Quinn or Alix were to be denied, limited or impaired for any reason, the interest of the Debtors' customers and creditors, as well as the state and federal regulators and prosecutors with whom these advisors engage on a daily basis, would

be severely, if not irreparably harmed." The Objections should be overruled and the Applications granted.

4. The U.S. Trustee raises two objections. First, with respect to the S&C Application, the U.S. Trustee objects because it alleges S&C has not fully disclosed its connections. This objection should be overruled. Since December 27, 2022, the Debtors have been working with—and waiting on—the U.S. Trustee to confirm its satisfaction with supplemental disclosures proposed by the Debtors. The form of this disclosure has been agreed in all material parts since December 29, 2022, and at no time during its lengthy discussions with the U.S. Trustee did S&C refuse to disclose any relevant information. Indeed, the level of disclosures S&C provided to the U.S. Trustee (before the UST Objection was filed) is greater in scope and detail than is found in typical chapter 11 proceedings, even those of comparable size. The frequency of the contact between S&C and the U.S. Trustee on supplemental disclosure is set forth in the *Declaration of Alexa J. Kranzley in Support of Debtors' Reply in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-In-Possession* Nunc Pro Tunc *to the Petition Date* (the "Kranzley Declaration") submitted herewith.

5. The disclosure negotiated with the U.S. Trustee is now reflected in the *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-In-Possession* Nunc Pro Tunc *to the Petition Date* (the "Supplemental Dietderich Declaration"). Just as the substance of the Supplemental Dietderich Declaration was provided to the U.S. Trustee prior to the objection deadline, the same information was provided to the Official Committee of Creditors (the "Committee") prior to their objection deadline. The

Committee reviewed and has no objection to S&C's retention. The Supplemental Disclosures also are consistent in all material parts with the drafts received and commented on by the U.S. Trustee. S&C respectfully submits that the supplemental disclosure more than addresses any disclosure concerns in the UST Objection or the Winter/Brummond Objections.

6. The second objection raised by the U.S. Trustee is an omnibus objection to the S&C Application, the Alix Application and the Quinn Application that they "usurp[]" and "duplicate[]" the services of an examiner. This objection is based on a facially incorrect and repeatedly rejected reading of the Bankruptcy Code and attempts to front run the U.S. Trustee's motion for the appointment of an examiner, which is set for hearing on February 6, 2023. By the same token, this objection also prematurely presses the U.S. Trustee's argument that the appointment of an examiner is mandatory under section 1104(c) of the Bankruptcy Code. As such, it can be dismissed as a matter of law.

7. The Winter/Brummond Objections, which are couched as disclosure objections, actually are a fishing expedition. Winter and Brummond are represented by the attorney for a putative class of FTX depositors. (Amended Winter Obj. ¶ 14.) Winter and Brummond seek more disclosure of information from S&C and alleges S&C has an actual conflict of interest based on (a) two S&C alumni, a former partner, Ryne Miller, the General Counsel of FTX US, and a former associate, Timothy Wilson, who is a lawyer at FTX Trading Ltd., (b) unsupported speculation by Winter and Brummond that S&C has violated its professional duties to the Debtors, (c) allegations that S&C is subject to preference claims and (d) the presence of current and former S&C clients in the immense interested parties list for these Chapter 11 cases. The Winter/Brummond Objections are baseless.

**Argument**

I. **The U.S. Trustee's Disclosure Objection to the S&C Application Was Resolved Before It Was Filed**

8. The UST Objection recites information that the U.S. Trustee believes should have been filed with the S&C Application. This information is in the Supplemental Dietderich Disclosure *in the form reviewed by the U.S. Trustee*. For weeks prior to the filing of the UST Objection, S&C and the U.S. Trustee were in frequent communication as to supplemental disclosure. Among other things, the U.S. Trustee submitted written questions to S&C, which were answered. Additional written questions were submitted by the U.S. Trustee to S&C. These questions too were answered. S&C drafted disclosure, provided drafts of such disclosure to the U.S. Trustee and never once failed to provide answers—answers that S&C understood to be satisfactory (ultimately) to the U.S. Trustee. Indeed, the last email received from the U.S. Trustee before the filing of the UST Objection (at 2:01 p.m. on Friday, January 13, 2023) was in response to proposed additional disclosure from Mr. Dietderich. The content of that email was "[t]hat sounds fine. thanks." (Kranzley Decl., exh. 36.)

9. It was therefore with a sense of bewilderment that the Debtors and S&C received the UST Objection at 10:46 p.m. on Friday, January 13, 2023, just over 8 hours after the "that sounds fine" email. Notably, this was received over 13 hours before the noon, Saturday, January 14, 2023 objection deadline that was provided by S&C at the request of the U.S. Trustee. Regardless, the Supplemental Dietderich Declaration has now been filed. It provides fulsome and detailed disclosure. The Debtors submit that such disclosure more than satisfies the concerns raised by the U.S. Trustee and Messrs. Winter and Brummond. As such the disclosure element of the UST Objection, and the entirety of the Winter/Brummond Objections, against the S&C Application should be overruled.

6

II. **The U.S. Trustee's Section 1107 Objection is Contradicted by a Plain Reading of the Bankruptcy Code and All Applicable Precedent**

10. The U.S. Trustee also argues that the Applications would improperly usurp and duplicate the services of an examiner. First, this argument is premature and misplaced. No examiner has been appointed. The U.S. Trustee is seeking the appointment of an examiner, the hearing of which is scheduled for February 6, 2023. The Debtors will oppose the appointment of an examiner and has so informed the U.S. Trustee repeatedly. If the Court determines that an examiner is warranted, which it is not, then and only then will the Court consider the scope of the duties of such examiner. Unless and until this occurs, section 1106 is simply irrelevant. The U.S. Trustee's attempt to limit the scope of any professional's retention asks this Court to issue an advisory opinion, which request should be denied out of hand. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("[F]ederal courts do not issue advisory opinions.").

11. Furthermore, even if an examiner were appointed, the U.S. Trustee's interpretation of section 1107(a) is incorrect on the face of the statute. Section 1107(a) vests in the debtor-in-possession "all the rights . . . and powers" of a trustee, subject to such limitations and conditions as the court prescribes. It nowhere limits rights or powers. Instead, the reference to section 1106(a)(2), (3) and (4) in Section 1107(a) is an exception to the duties of the debtor only. The language is clear:

> [A] debtor in possession shall have all the **rights**, other than the **right** to compensation under section 330 of this title, and **powers**, and shall perform all the functions and **duties**, except the **duties** specified in sections 1106(a)(2), (3) and (4) of this title, of a trustee serving in a case under this chapter.

> 11 U.S.C. § 1107(a) (emphasis added).

12. Similarly, section 1106 itself creates duties, not rights. It is titled "Duties of trustee and examiner," and section 1106(a) begins "A trustee shall—".

13. There is no other sensible reading of section 1107 of the Bankruptcy Code. Section 1106(a)(3) establishes a duty of the trustee to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or the formulation of a plan . . . ." 11 U.S.C. § 1106(a)(3). If a debtor were prohibited from looking into any of these matters, chapter 11 simply could not function. Yet that is the U.S. Trustee's argument—on its face, section 1107(a) prohibits any debtor from investigating their assets, liabilities, financial condition, business operations or any matter relevant to the case or the formulation of a plan.

14. This is simply not the case, and courts agree. *See In re Johnson*, 546 B.R. 83, 162-63 (Bankr. S.D. Ohio 2016) (recognizing that section 1107's exemption does not mean "anything more than that a debtor in possession is ***not required*** to 'investigate itself'") (emphasis added); *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("While pursuant to Section 1107(a) of the Code, a debtor in possession is ***not required*** to investigate and report under Sections 1106(a)(3) and (4), the debtor's directors bear essentially the same *fiduciary* obligation to creditors and shareholders as would a trustee for a debtor out of possession.") (first emphasis added); *Indian Harbor Ins. Co.* v. *Zucker*, 860 F.3d 373, 377 (6th Cir. 2017) ("The debtor in possession need not investigate the debtor's financial condition or any improper conduct."); *In re Sandy Ridge Oil Co.*, 807 F.2d 1332, 134 (7th Cir. 1986) ("Section 1107(a) . . . gives a chapter 11 debtor-in-possession all the rights of a trustee, other than the right to compensation, and all the duties of a trustee, other than the investigatory duties."); *In re Monsour*

8

*Med. Ctr.*, 5 B.R. 715, 718 (Bankr. W.D. Pa. 1980) ("Section 1107 . . . provides that the debtor is given the rights and powers of a trustee and is required to perform the trustee's functions and duties (except the investigative duty)."); *In re Blue Stone Real Est., Const. & Dev. Corp.*, 392 B.R. 897, 902 (Bankr. M.D. Fla. 2008) ("A proper reading of [1107(a)] is that a debtor in possession is not mandated to undertake certain investigative and reporting duties, but the bankruptcy court in its discretion can nonetheless prescribe such action—as well as other actions not encompassed within section 1106."); *In re Temp-Way Corp.*, 95 B.R. 343, 344-45 (E.D. Pa. 1989) ("Although 11 U.S.C. § 1107(a) exempts a Debtor–in–Possession from the duties of a trustee under § 1106(a)(2), (3) and (4), the parties agree that the duties of a Debtor–in–Possession nevertheless include taking possession of all property of the debtor and investigating its financial affairs to make a determination of corporate mismanagement which might warrant the filing of claims against former corporate officers or managers."); *In re Princeton Square Assocs., L.P.*, 201 B.R. 90, 95 n.7 (Bankr. S.D.N.Y. 1996) ("[T]he debtor in possession [is not] expected to conduct an investigation of itself.").

15. In addition, the legislative history of section 1107(a) cited by the U.S. Trustee also supports that section 1107(a) does not limit a debtor-in-possession: "This section [1107(a)] places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He **is required to perform** the functions and duties of a chapter 11 trustee (**except the investigative duties**)." S. Rep. 95-989, 1978 U.S.C.C.A.N. 5787, 5902 (emphasis added). This makes sense when read in conjunction with Section 1106, which is relevant for examiners only if an examiner is appointed. It is self-evident that examiners are not appointed in every case. If an examiner is appointed, the duties of that examiner are established by the court. Once given those duties, the examiner must comply with

9

those duties. Section 1107, on the other hand, applies regardless of a whether an examiner is appointed. Where there is a debtor in possession, the debtor has the rights, powers and duties set forth in Section 1107. Where there is a debtor, but not an examiner, the debtor has the right and power to investigate matters relating to the debtor, but not the duty to do so. Where there is a debtor and an examiner, the debtor has the right and power to investigate matters relating to the debtor, but not the duty to do so; whereas the examiner has the duty to investigate what the court instructs it to investigate.

16. The U.S. Trustee's argument on Sections 1106 and 1107 front runs the U.S. Trustee's examiner motion and, in particular, its argument that the appointment of an examiner is mandatory. Because the appointment of an examiner is mandatory, the U.S. Trustee argues, section 1106 is implicated now, in connection with the retention of professionals. This argument fails of its own weight.

17. This Court has already held that the appointment of an "independent" examiner hand-picked by the U.S. Trustee is not mandatory in cases with any investigative component. *See, e.g.*, *In re Spansion, Inc.*, 426 B.R. 114, 127 (Bankr. D. Del. 2010) ("I find no sound purpose in appointing an examiner, only to significantly limit the examiner's role when there exists insufficient basis for an investigation. To appoint an examiner with no meaningful duties strikes me as a wasteful exercise, a result that could not have been intended by Congress."); *In re Visteon Corp.*, No. 09-11786 (CSS), 2010 Bankr. LEXIS 5464 (Bankr. D. Del. May 12, 2010), Hr'g Tr. at 170:16-20 (ECF Doc. # 3145) (denying appointment of examiner as "it would be an absurd result to find that in every case where the financial criteria is met and a party-in-interest asks, the Court must appoint an examiner;" rather, "[t]here has to be an appropriate investigation that needs to be done"); *In re Am. Home Mortg. Holdings, Inc.*, No. 07-

11047 (CSS) (Bankr. D. Del. Oct. 31, 2007), Hr'g Tr. at 76:09-12 (ECF Doc. # 1997) (rejecting examiner appointment because the financial threshold was only one part of inquiry and "the other piece of the puzzle is that there has to be an investigation to perform that's appropriate"). The Court helpfully preempted the U.S. Trustee from raising that point directly at the January 11, 2023 hearing. *See* Jan. 11, 2023 Hr'g Tr. 167:22-23. The U.S. Trustee' novel section 1107(a) objection to the scope of retention of S&C, Alix and Quinn is an attempt to circumvent a question asked and answered and should be rejected.

**III.    The Allegations in the Winter Objections Are Mere Speculation and Do Not Bear on S&C's Retention**

18.    Section 327 of the Bankruptcy Code provides that a debtor-in-possession may employ its own attorneys so long as they do not hold or represent an interest adverse to the estate and are disinterested persons. A disinterested person is a person that (a) is not a creditor, an equity security holder, or an insider; (b) was not a director, officer, or employee of the debtor in the two years before the petition date; and (c) does not hold a materially adverse interest to the debtor's estate or of any class of creditors or equity security holders. 11 U.S.C. § 101(14). While an attorney's actual or potential conflict of interest may render them interested and thus disqualify them for employment, the mere appearance of conflict alone will not disqualify an attorney. *See In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998) ("[T]he district court may not disqualify an attorney on the appearance of conflict alone.").

**A.    Former S&C Personnel**

19.    Winter asserts that S&C "cannot impartially advise the Debtors about potential claims arising from [Ryne] Miller's and [Tim] Wilson's conduct or the legality of their prepetition activities." (Amended Winter Obj. ¶ 25.) The point is irrelevant. Winter provides no evidence of a claim against Ryne Miller or Tim Wilson. Neither is a current employee of S&C

and S&C would be free to investigate claims against them. S&C also disclosed in the Supplemental Dietderich Declaration that Ms. T'Shae Cooper, a former member of the Alameda legal team, was a former associate of S&C from September 2015 to June 2018, before joining Covington & Burling LLP and that Ms. Kelly Yamashita, a former Alameda employee in Hong Kong, was an associate of S&C from September 2015 to September 2018. (Supp. Dietderich Decl. ¶¶ 64-65.)

20. To avoid any perceived conflict, S&C has already agreed that it is not seeking to be retained to investigate potential claims against any of these former S&C personnel. S&C has advised John Ray that it will *not* investigate claims against them and confirmed that Quinn will be available to Mr. Ray and the Debtors should any such investigation be warranted. *Cf. In re Project Orange Assocs., LLC*, 431 B.R. 363, 369 (Bankr. S.D.N.Y. 2010) (holding that conflicts counsel only fails to resolve a conflict when "the proposed general bankruptcy counsel has a conflict of interest with a creditor that is *central to the debtor's reorganization*") (emphasis added); *see In re Wash. Mut., Inc.*, 442 B.R. at 327 (distinguishing *Project Orange* because the conflict was not central to the case and noting that "the *Project Orange* Court acknowledged that in most cases the use of conflicts counsel solves the problem"); *In re Boy Scouts of Am.*, 630 B.R. 122, 132 (D. Del. 2021) ("Given [conflict counsel's] involvement with the restructuring 'since its inception,' the Bankruptcy Court determined that it was well-positioned . . . to address all matters in which [counsel] might be adverse to [potential conflicted party].").

B. **S&C "Itself"**

21. The mere fact that a law firm provided prepetition services to a debtor does not render the firm an interested person. *In re Nw. Corp.*, 346 B.R. 84, 88 (Bankr. D. Del. 2006). Rather, to disqualify a law firm, an objector must point to an actual conflict. *Id.* Here, Winter must invent one by speculating that there *might* be claims against S&C and that, if there

12

are, S&C "cannot be trusted to investigate itself." (Amended Winter Obj. ¶ 27.) However, the Amended Winter Objection does not articulate any specific facts or evidence why S&C's prepetition services would put S&C in conflict with the Debtors' estates. Winter's general allegation cannot render S&C interested.

22. In the Supplemental Dietderich Declaration, Mr. Dietderich describes that S&C advised the Debtors on specific matters, each separately approved by S&C's client intake committee. (Supp. Dietderich Decl. ¶¶ [42-56].) No Debtor was a regular client of S&C. (*Id.*) Mr. Dietderich describes S&C's prior work for the Debtors identifying *each matter with specificity, including the fees and expenses attributable to each matter*. (*Id.*) Mr. Dietderich then states: "I am not aware of any allegation by any employee of the FTX Debtors that S&C violated any duty to the FTX Debtors at any time or that any FTX Debtor has any claim or cause of action against S&C." (*Id.* ¶ [75]) There is no contrary evidence in the record.

C. **Preferences**

23. Contrary to Mr. Winter's empty allegations, none of the payments S&C received within the 90 days prior to the commencement of these Chapter 11 cases is a preference or renders S&C interested or a creditor of the Debtors. In fact, the U.S. Trustee—the typical party who raises these objections—did not raise *any* preference issues. Mr. Winter boldly asserts that the fact that S&C received $14.5 million in payments within the 90 days prior to the commencement of these Chapter 11 constitutes preferences. (Amended Winter Obj. ¶ 31.) This statement plainly ignores the very text of section 547 of the Bankruptcy Code: a preferential transfer must have been "on account of an antecedent debt." 11 U.S.C. § 547(b)(2).

24. Paragraph [61] of the Supplemental Dietderich Declaration details payments made by the Debtors to S&C one year prior to the Petition Date. (Supp. Dietderich Decl. ¶ [61].) As demonstrated by the payment details, it was common practice for the Debtors

13

to pay an issued invoice as quickly as less than one week after issuance or sometimes within three to four weeks of issuance. The payments made by the Debtors to S&C 90 days prior to the Petition Date were no different. These were all for ordinary course work done by S&C on behalf of the Debtors and they were all paid within three weeks of the issuance of the invoice and on account of contemporaneous work. Such prepetition payments are consequently exempt from the avoidance powers of a bankruptcy trustee as ordinary course payments in accordance with Bankruptcy Code section 547(c)(2). *Cf. In re First Jersey Sec., Inc.*, 180 F.3d 504, 511 (3d Cir. 1999) (finding the debtor's stock transfer to its proposed counsel was not made in the ordinary course of business because of its "clearly suspect" timing, the day before the debtor filed its petition, and because the counsel had never been paid in stock); *In re Vascular Access Ctrs, L.P.*, 613 B.R. 613, 627 (Bankr. E.D. Pa. 2020) (denying ordinary course treatment of a transfer that was paid early instead of at the normal, monthly cadence); *In re Fleming Cos.*, 305 B.R. 389, 393 (Bankr. D. Del. 2004) (finding professional fees were outside the ordinary course of business because their timing diverged from "prior practice").

25. Additionally, as detailed in the Dietderich Declaration and the Supplemental Dietderich Declaration, S&C received retainers from the Debtors prior to the commencement of these Chapter 11 Cases for the contingency planning and representation as Debtors' counsel. S&C drew down on these retainers, with permission from Mr. John Ray, to apply against prepetition Chapter 11 contingency planning. *See In re Pillowtex, Inc.*, 304 F.3d 246, 255 (3d Cir. 2002) ("[P]rofessionals entering bankruptcy cases protect themselves from the preference issue by obtaining a retainer, and they . . . draw down on the retainer during the 90 day period so as to avoid raising the issue of whether or not they received preferential payments.").

### D. Other Clients

26. The Amended Winter Objection alleges that S&C's "current and former clients include a litany of potential targets of investigation and claims." (Amended Winter Obj. ¶ 38.) The interested parties list for these Chapter 11 cases is long and will continue to grow as these Chapter 11 cases continue. Any firm capable of representing the Debtors will have numerous current and former clients on the interested parties list. However, S&C is not alone. The Debtors are also represented by Quinn, which is available to represent the Debtors on matters where S&C has a conflict. In circumstances where both S&C and Quinn have a conflict, Landis Rath & Cobb LLP is available. In circumstances where all three have a conflict or it otherwise is appropriate, the Debtors may have access to other counsel as well. And, of course, the Committee has counsel and Delaware co-counsel to participate as well. *See In re Wash. Mut., Inc.*, 442 B.R. at 327 ("[I]n most cases the use of conflicts counsel solves the problem."); *see also In re Boy Scouts of Am.*, 630 B.R. at 132 (finding conflicts counsel "was well-positioned . . . to address all matters in which [general bankruptcy counsel] might be adverse to [a potential conflicted party]"); *In re Rockaway Bedding, Inc.*, No. 04-14898, 2007 WL 1461319, at *4 (Bankr. D.N.J. May 14, 2007) ("Matters relating to misrepresentations and fraud are carved out of the waiver and will be assigned to *either conflicts counsel or the Official Committee of Unsecured Creditors* to prosecute on the Debtors' behalf.") (emphasis added).

27. S&C has performed a conflicts check procedure with respect to any such potential conflicts based on the interested parties list provided to S&C and will continue to do so periodically during these Chapter 11 cases. Based on these procedures, (i) S&C is not aware of any conflict between its representation of the Debtors and its representations of its Current Clients or Former Clients that would cause S&C not to be a "disinterested person," (ii) S&C does not represent any person or entity having an interest adverse to the Debtors in connection

with these Chapter 11 cases and (iii) S&C does not hold or represent an interest adverse to the Debtors' estates with respect to matters on which S&C is employed. (Dietderich Decl. ¶ 9.) Therefore, these relationships do not disqualify S&C from representing the Debtors.

### Conclusion

For the reasons stated above, the Court should overrule the Objections and approve the Applications.

Dated: January 17, 2023
   Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
   brown@lrclaw.com
   pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
   bromleyj@sullcrom.com
   gluecksteinb@sullcrom.com
   kranzleya@sullcrom.com

*Proposed Counsel for the Debtors
and Debtors-in-Possession*