**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: February 8, 2023 at 1:00 p.m. (ET)**<br>**Objection Deadline: February 1, 2023 at 4:00 p.m. (ET)** |

**APPLICATION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT
OF JEFFERIES LLC AS INVESTMENT BANKER PURSUANT TO
11 U.S.C. §§ 328(a) AND 1103(a), EFFECTIVE AS OF DECEMBER 23, 2022
AND (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby files this application (the "Application") for an order, substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of Jefferies LLC ("Jefferies") as its investment banker, effective as of December 23, 2022, pursuant to section 1103 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In support of this Application, the Committee respectfully submits the declaration of Leon Szlezinger, Managing Director and Joint Global Head of Debt

---

[1]    The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Advisory & Restructuring at Jefferies (the "Szlezinger Declaration"), attached hereto as **Exhibit B**, and respectfully represents as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue of these proceedings and this Application is proper in this district pursuant to 28 U.S.C. § 1408.

3.     The statutory predicates for the relief sought herein are sections 328(a) and 1103 of the Bankruptcy Code. The Committee confirms its consent to the Court entering a final order in connection with the Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4.     On November 11, 2022 and November 14 (as applicable, the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court on November 22, 2022 [Docket No. 128].

5.     On December 15, 2022, the Office of the United States Trustee for Region 3 (the "U.S. Trustee") filed the Notice of Appointment of Committee of Unsecured Creditors

[Docket No. 231], and on December 20, 2022, the U.S. Trustee filed the Amended Notice of Appointment of Committee of Unsecured Creditors [Docket No. 261].[2]  After its formation, the Committee selected Paul Hastings LLP ("Paul Hastings") as its counsel on December 20, 2022 and selected Young Conaway Stargatt & Taylor LLP as its Delaware counsel on December 22, 2022.  On December 22, 2022, the Committee selected FTI Consulting, Inc. ("FTI") as its financial advisor, and on December 23, 2022, the Committee selected Jefferies as its investment banker. The Committee consists of the following nine (9) members:

    (a)  Zachary Bruch;

    (b)  Coincident Capital International, Ltd.;

    (c)  GGC International Ltd.;

    (d)  Octopus Information Ltd.;

    (e)  Pulsar Global Ltd.;

    (f)  Larry Qian;

    (g)  Acaena Amoros Romero;

    (h)  Wincent Investment Fund PCC Ltd.; and

    (i)  Wintermute Asia PTE. Ltd.

### RELIEF REQUESTED

6.      The Committee seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Committee to retain and employ Jefferies as its investment banker, effective as of December 23, 2022, pursuant to the terms and subject to the conditions of that certain engagement letter between Jefferies and the Committee dated December 23, 2022, a copy

---

[2]    The amendment reflected the addition and correction of certain contact information for the committee members.

of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto (the "Engagement Letter");[3] and (b) waiving and modifying certain of the time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "Trustee Guidelines") of the United States Trustee and any other guidelines regarding submission and approval of fee applications.  The Engagement Letter describes:  (a) the various services that the Committee seeks Jefferies to perform on its behalf during these Chapter 11 Cases; and (b) the terms and conditions of Jefferies' proposed engagement by the Committee.

### JEFFERIES' QUALIFICATIONS AND THE NEED FOR JEFFERIES' SERVICES

7.    The Committee submits this Application because of its need to retain a qualified investment banker to assist it in the critical tasks associated with guiding the Committee through these Chapter 11 Cases.  The Committee believes that its retention of an investment banker is necessary and appropriate to enable it to evaluate the financial and economic issues raised by the Debtors' chapter 11 proceedings, successfully consummate any sale or restructuring transaction, and to effectively carry out its duties as the Committee.

8.    The Committee selected Jefferies as its investment banker in these Chapter 11 Cases based upon Jefferies' extensive experience in matters involving complex financial restructurings and its excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  The Committee thus believes that Jefferies is both well qualified and uniquely able to advise the Committee in these Chapter 11 Cases.

9.    As set forth in the Szlezinger Declaration, Jefferies is a full-service investment banking firm, with approximately 4,000 employees in more than 45 offices around the world. Jefferies and its senior professionals have extensive expertise providing investment banking

---

[3]    Capitalized terms not defined here shall have the meanings set forth in the Engagement Letter.

services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Jefferies and its professionals are providing or have provided investment banking, financial advisory, and other services in connection with the following recent cases, among others: *In re Hospitality Investors Trust*, Case No. 21-10831 (CTG) (Bankr. D. Del. May 20, 2021); *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021); *In re Southland Royalty Co. LLC*, Case No. 20-10158 (KBO) (Bankr. D. Del. May 7, 2020); *In re Melinta Therapeutics, Inc.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re Clover Tech. Grp., LLC*, Case No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020); *In re Dura Auto. Sys., LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019); *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. Jul 1, 2019).

## SCOPE OF SERVICES

10.     Subject to the Court's approval, the Committee anticipates that Jefferies will perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by Jefferies and the Committee and as appropriate:[4]

> (a)     Act as exclusive investment banker to the Committee in connection with any restructuring of the Debtors' capital structure including, without limitation, through any offer by the Debtors with respect to any outstanding indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (however such result is achieved, including, without limitation, through any plan confirmed pursuant to the Bankruptcy Code), the execution of any agreement giving effect thereto, an offer by any party to convert, exchange or acquire any material outstanding indebtedness, or any similar balance sheet restructuring involving the Debtors (any such transaction, a "Restructuring"). In connection with such services, Jefferies will, among other things, provide strategic advice with regard to restructuring or refinancing the Debtors' obligations, developing

---

[4]     To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

a Restructuring and/or asset monetization process, structuring any new securities to be issued under a Restructuring, and participating in negotiations with entities or groups affected by the Restructuring;

(b)    Act as exclusive investment banker to the Committee in connection a sale or other business transaction or series of transactions, involving all or a material portion of the Debtors' equity or assets, through any form of transaction, including, without limitation, a merger, stock purchase, asset purchase, recapitalization, reorganization, consolidation or amalgamation (and including, but not limited to, a sale under Section 363 of the Bankruptcy Code including any credit bid transaction) (any such transaction, an "M&A Transaction"). In connection with such services, Jefferies will, among other things, provide financial advice to the Committee in structuring, evaluating and effecting an M&A Transaction, including a monetization of individual or multiple assets, identify potential acquirers and, at the Committee's request, contact and solicit such acquirers, assist in the arrangement and execution of an M&A Transaction, including identifying potential buyers or parties-in-interest, assist in the due diligence process and marketing process, and negotiate the terms of any proposed M&A Transaction;

(c)    Act as exclusive investment banker to the Committee in connection with a material investment by any third party in the Debtors to restructure, redeem or finance any of the Debtors' indebtedness or an issuance of new securities by the Debtors (any such transaction, a "Financing" and a Financing, an M&A Transaction and a Restructuring, each and together, a "Transaction"). In connection with such services, Jefferies will, among other things, provide financial advice to the Committee in structuring and effecting a Financing, identify potential investors and, at the Committee's request, contact and solicit such Investors, and assist in the arranging of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing

(d)    Become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, properties, financial condition and prospects of the Debtors;

(e)    Advise the Committee on the current state of the "restructuring market";

(f)    Analyze various Transaction scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Transaction;

(g)    Assist and advise the Committee in developing a general strategy for accomplishing a Transaction;

(h)     Assist and advise the Committee in evaluating and analyzing any Transaction, including any securities or debt instruments that may be issued in any such Transaction;

(i)      Assess the financial issues and options concerning (i) a sale of the Debtors' material assets, either in whole or in part, and (ii) the Debtors' chapter 11 plan of reorganization or any other chapter 11 plan;

(j)      advise the Committee in negotiations with the Debtors and third parties in respect of any of the foregoing;

(k)     Participate in hearings before the Bankruptcy Court and provide testimony and expert reports in respect of the foregoing and on matters mutually agreed upon in good faith by Jefferies and the Committee; and

(l)      Render such other investment banking services as may from time to time be agreed upon by the Committee and Jefferies.

11.     The Committee is also filing an application for authority to retain FTI to provide certain financial advisory services to the Committee.  The services that Jefferies will provide to the Committee are separate and distinct from the financial advisory services that FTI will provide to the Committee.  It is currently contemplated that Jefferies will be primarily responsible for advising the Committee on the financial and strategic elements of the Debtors' plan of reorganization (including relevant valuations and the viability of a stand-alone plan of reorganization), potential merger and acquisition transactions, as well as financing alternatives for the Debtors, including exit financing.  FTI will be principally responsible for providing to the Committee financial analyses of the Debtors' liquidity and operational elements of the Debtors' plan of reorganization and exit strategy, forensics and litigation analyses (including investigatory review of historical books and records and analysis of potential causes of action), as well as claims analyses. While both FTI and Jefferies recognize that it is difficult to predict how these complex cases will proceed, they will coordinate their services to the Committee to minimize, wherever possible, any unnecessary duplication of services and any potential burden on the Debtors and their professional advisors.  Moreover, FTI and Jefferies have worked in a co-advisory role before

and thus, the firms have experience ensuring that best practices are maintained in the provision of

services to the Committee.

## PROFESSIONAL COMPENSATION

12.      As set forth more fully in the Engagement Letter, Jefferies and the Committee have

agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense

Structure"):[5]

   (a)     **Monthly Fee**.  A monthly fee (the "Monthly Fee") equal to $225,000 per month
           until the termination of the engagement.  The first Monthly Fee shall be payable
           as of the date of the Engagement Letter, and each subsequent Monthly Fee shall
           be payable in advance on each monthly anniversary of such date.  Additionally,
           commencing with the thirteenth full Monthly Fee actually paid to Jefferies
           under the Engagement Letter, an amount equal to fifty percent (50%) of all full
           Monthly Fees actually and subsequently paid to Jefferies shall be credited once,
           without duplication, against any Transaction Fee (as defined below)
           subsequently payable to Jefferies; *provided*, *however*, that in no event shall any
           Transaction Fee be reduced by more than $1,500,000 on account of such
           crediting.

   (b)     **Transaction Fee**.  Upon the consummation of any chapter 11 plan or a sale of
           all or substantially all of the Debtors' equity or assets, a transaction fee
           (the "Transaction Fee") in an amount equal to $10,000,000.  For the avoidance
           of doubt, only one Transaction Fee may be payable to Jefferies under the
           Engagement Letter.

   (c)     **Expenses**.  In addition to any fees that may be paid to Jefferies under the
           Engagement Letter, whether or not any Transaction occurs, the Debtors will
           reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-
           pocket expenses (including fees and expenses of its counsel, ancillary expenses
           and the fees and expenses of any other independent experts retained by
           Jefferies) incurred by Jefferies and its designated affiliates in connection with
           the engagement contemplated thereunder.

13.      During the pendency of these Chapter 11 Cases, Jefferies shall apply to the Court

for the allowance of compensation for professional services rendered and reimbursement of

---

[5]     To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this
        Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement
        Letter shall control.

expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

14.     The Committee believes that the Fee and Expense Structure set forth in the Engagement Letter is reasonable.  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Jefferies and the fee structures typically utilized by leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court.  The Fee and Expense structure is consistent with Jefferies' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of:  (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these Chapter 11 Cases.  In particular, the Committee believes that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.  Similar fixed and contingency fee arrangements have been approved and implemented in other recent large chapter 11 cases.  *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (authorizing Jefferies' retention as investment banker); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018.[6]

---

[6]  Because of the voluminous nature of the orders cited herein, they are not attached to this Application.  Copies of these orders, however, are available on request.

15.     Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Given the foregoing and that Jefferies' compensation is based on fixed fees, the Committee requests that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guidelines regarding the submission and approval of fee applications, Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the Trustee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter.  Jefferies will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.  Courts in other large chapter 11 cases have excused flat-fee professionals from time-keeping requirements under similar circumstances. *See, e.g., See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (requiring Jefferies only to keep reasonably detailed summary time records in one-half hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same).[7]

---

[7]    Because of the voluminous nature of the orders cited herein, they are not attached to this Application.  Copies of these orders, however, are available on request.

## INDEMNIFICATION OF JEFFERIES

16.     As part of the overall compensation payable to Jefferies under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees, and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs, and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[8] Such terms of indemnification, as modified by the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases. *See, e.g., In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. Jan. 13, 2021) (approving similar indemnification provisions); *In re Dura Automotive Systems, LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Claire's Stores, Inc.* Case No. 18-10584 (MFW) (Bankr. D. Del. Aug. 3, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) (Bankr. D. Del. June 6, 2018) (same).[9]

## JEFFERIES' DISINTERESTEDNESS

17.     Jefferies has informed the Committee that as of the date hereof, except as set forth in the Szlezinger Declaration:  (a) Jefferies has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity security

---

[8]     To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Schedule A to the Engagement Letter, the terms of the Engagement Letter shall control.

[9]     Because of the voluminous nature of the orders cited herein, they are not attached to this Application.  Copies of these orders, however, are available on request.

holder, or an insider of the Debtors and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Jefferies professionals expected to assist the Committee in these Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed by the U.S. Trustee.

18.     The Committee has been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases in accordance with section 504(a) of the Bankruptcy Code.

19.     Based on the foregoing, the Committee believes that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

**BASIS FOR RELIEF**

20.     The Committee requests entry of an order authorizing it to retain and employ Jefferies pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment . . . of one or more attorneys, accountants, or other agents, to represent or perform services" for the Committee. 11 U.S.C. § 1103(a). Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

21.     Given the numerous issues that Jefferies may be required to address in performing its services for the Committee, Jefferies' commitment to the variable time requirements and effort

necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Committee submits that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Committee also believes that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services; (b) Jefferies' substantial experience with respect to investment banking services; and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

22.     As set forth above, and notwithstanding Court approval of Jefferies' engagement under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein.  Notwithstanding the foregoing, Jefferies has agreed that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code.

23.     In light of the foregoing, the Committee submits that the retention of Jefferies is in the best interest of the Committee and the Debtors' unsecured creditors.  Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtor and creditor constituencies throughout the United States.  The Committee therefore submits that it has satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order

authorizing the Committee to retain and employ Jefferies in these Chapter 11 Cases on the terms

described herein and in the Engagement Letter.

## NOTICE

24.     Notice of this Application has been given to (i) the Debtors, (ii) the United States

Trustee (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the

United States Department of Justice; (vi) the United States Attorney for the District of Delaware;

(vii) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule

2002.  In light of the nature of the relief requested, the Committee submits that no further notice

is required.

## NO PRIOR REQUEST

25.     No prior request for the relief sought in this Motion has been made to this or any

other court.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: January 18, 2023

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF FTX
TRADING LTD, *ET AL.*

*/s/ Alex van Voorhees*
By: Alex van Voorhees of GGC International
Ltd., solely in its capacity as the Co-Chair of
the Official Committee of Unsecured Creditors