# EXHIBIT B

**Supplemental Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF THE DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO NOVEMBER 16, 2022 AND (II) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(H)**

I, Bruce Mendelsohn, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Partner at Perella Weinberg Partners LP (and together with its corporate advisory affiliates, "PWP" or the "Firm"), which has its principal office at 767 Fifth Avenue, New York, New York 10153. PWP is part of a global financial services firm that provides corporate advisory and asset management services. I am duly authorized to make this supplemental declaration (the "Supplemental Declaration") on behalf of PWP.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

13749115

2. I submit this Supplemental Declaration in support of the application (the "Application")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned Chapter 11 Cases, for an order authorizing the employment and retention of PWP as the Debtors' investment banker *nunc pro tunc* to November 16, 2022.

3. The Application seeks an order authorizing the Debtors' retention and employment of PWP as investment banker on the terms and conditions set forth in that certain amended engagement letter dated January 8, 2023 (the "Amended Engagement Agreement"). I submit this Supplemental Declaration in compliance with sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), and to provide the disclosure required under rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016-1, and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). Unless otherwise stated, all matters set forth in this Supplemental Declaration are based on my personal knowledge, my review of relevant documents, information supplied to me by other professionals at PWP, or my views, including as based upon my experience and knowledge of the Debtors' business and financial

---

[2] The Application shall refer to the (a) *Debtors' Application for an Order (I) Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Debtors* nunc pro tunc *to November 16, 2022 and (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2(h)* and (b) *Debtors' Supplement to Application for an Order (I) Authorizing the Retention and Employment of Perella Weinberg Partners LP as Investment Banker to the Debtors* nunc pro tunc *to November 16, 2022 and (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-2(h)*, collectively.

condition. Except as otherwise indicated, I have personal knowledge of the matters set forth herein.[3]

4. In connection with the Application, I am filing this Supplemental Declaration to supplement and amend the disclosures that were included in my original declaration dated December 21, 2022 [Docket No. 275-2] (the "Original Declaration").[4] Specifically, this Supplemental Declaration is being filed to (i) address modifications to the Fee Structure contained in the Amended Engagement Agreement; (ii) address comments from the Office of the U.S. Trustee; and (iii) provide supplemental ongoing disclosures pursuant to PWP's Review Protocol described in the Original Declaration.

5. The terms of the Amended Engagement Agreement were negotiated at arm's length between the Debtors and PWP and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Specifically, I negotiated the modifications embodied in the Amended Engagement Agreement with the Debtors' Chief Executive Officer John Jr. Ray III and Matt Rosenberg (Director for the Ventures silo) with such modifications approved by the Board of the Debtors.

---

[3] Certain of the disclosures herein relate to matters within the knowledge of other professionals at PWP and are based on information provided by them.

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Original Declaration.

**Fee Structure Modifications in Amended Engagement Agreement**

6. Except as modified herein, each reference in the Original Declaration to the Engagement Agreement shall refer to the Amended Engagement Agreement.

7. Paragraph 11 of the Original Declaration is amended as follows:

11. Investment bankers such as PWP do not customarily charge for their services on an hourly basis. Instead, they charge a monthly advisory fee, plus additional fee contingent on the occurrence of specified transactions or events. The Amended Engagement Agreement follows this fee structure, and the terms of PWP's proposed compensation are fully set forth in the Amended Engagement Agreement (the "Fee Structure"). In summary, under the terms of the Amended Engagement Agreement and subject to the Court's approval, PWP will be compensated for its services as follows:

    a. a monthly financial advisory fee of $450,000 (the "Monthly Fee"), due and payable on the first day of each month (the "Payment Date") during the Engagement, provided that such Monthly Fee shall be on a prorated basis from the Engagement Date through the end of the month in which the Engagement Agreement is dated, provided further that, fifty percent (50%) of the Monthly Fee for each of the tenth (10th) through thirty-third (33rd) Monthly Fees, to the extent such Monthly Fees have actually been paid or are paid to PWP, whether before or after payment of the Consummation Fee, shall be creditable, without duplication, against the Consummation Fee (for the avoidance of doubt, no such credit shall be applied for the first nine (9) Monthly Fees or any Monthly Fees payable after the thirty-third (33rd) Monthly Fee); plus

    b. a Sale Fee based on the Transaction Value, determined in accordance with the table set forth below; provided that in the event of multiple Sales, each Sale Fee for each respective Date will be calculated independently of any other Sale Fee, and payable promptly upon consummation of each respective Sale:

| Transaction Value | Fee Percentage |
|---|---|
| Less than $1~~5~~0 million | 0.00% |

| | |
|---|---|
| Equal to $150 million but less than $250 million | 2.50% |
| Equal to $250 million but less than $500 million | 2.00% |
| Equal to $500 million but less than $1,000 million | 1.75% |
| Equal to $1,000 million but less than $2,000 million | 1.25% |
| Equal to or greater than $2,000 million | 1.00% |

For the avoidance of doubt, the Amended Engagement Agreement contemplates, and the Debtors and PWP anticipate, multiple Sale Fees. Notwithstanding anything to the contrary in this clause (b), with respect to any Sale Fees actually received by PWP, exceeding $10 million in the aggregate, whether before or after payment of the Consummation Fee, twenty-five (25%) of any such additional Sale Fees shall be credited, without duplication, against the Consummation Fee, provided further that, for the avoidance of doubt, no portion of the first $10 million of the aggregate Sale Fees shall be credited against the Consummation Fee;

plus

c. a Financing Fee payable promptly upon consummation of any Financing in an amount equal to the sum of (i) 1.00% of all gross proceeds from the issuance of secured debt financing, plus (ii) 2.5% of all gross proceeds from the issuance of unsecured debt financing, plus (iii) 5.00% of all gross proceeds from the issuance of equity or equity-linked financing; plus

d. a Consummation Fee payable promptly upon consummation of any Restructuring, equal to $25,000,000. For the avoidance of doubt, the

5

> Amended Engagement Agreement specifically contemplates, and the parties anticipate, only one Consummation Fee.

8. Paragraph 12 of the Original Declaration is deleted.

9. The last clause of Paragraph 13 of the Original Declaration is modified as follows: "provided that expenses in connection with the preparation of the Engagement and the approval of the Engagement by the Bankruptcy Court shall not exceed $100~~25~~,000 without the consent of the Debtors (not to be unreasonably withheld)."

**Supplemental Disclosures and Information Requested by the U.S. Trustee**

10. Any connections between Perella Weinberg Partners LP, including its corporate advisory affiliates, with the parties in interest are disclosed in the Original Declaration and this Supplemental Declaration.

11. As a supplement to paragraph 24(e) of the Original Declaration, the PWP Funds do not have access to any information of the PWP Professionals (unless such information is later reported in public filings or similar public disclosures).

12. The statements made in paragraphs 26(a), 26(c), 27, 31, 32, 33(f), and 35 of the Original Declaration would be true and correct if they were stated without the qualifiers "materially" before the word "adverse," and without the qualifier "in matters upon which PWP is to be engaged in the Chapter 11 Cases." Accordingly, PWP amends the relevant portions of those paragraphs as noted below:

> (a) Last sentence in paragraph 26(a): "To the best of my knowledge based on the information received in PWP's connections check performed for the purposes of the Application, except as otherwise set forth herein, no relationships identified in such

6

    searches constitute interests ~~materially~~ adverse to the Debtors ~~in matters upon which PWP is to be engaged in the Chapter 11 Cases~~."

(b) Last sentence of 26(c): "To the best of my knowledge based on the information received in PWP's connections check performed for the purposes of the Application, no confidentiality agreement business relationship constitutes an interest ~~materially~~ adverse to the Debtors' ~~in matters upon which PWP is to be engaged in the Chapter 11 Cases~~."

(c) Clause (ii) in 27: "…based on the information received in PWP's connections check performed for the purposes of the Application, none of myself, PWP, nor any of PWP's Professionals, … (ii) holds or represents an interest that is ~~materially~~ adverse to the interest of the Debtors' estates or any class of creditors or equity security holders in the Chapter 11 Cases, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason of which I know or about which I have been informed, with respect to the services to be performed pursuant to the Engagement Agreement, except as disclosed or otherwise described herein."

(d) Last sentence of 31: "To the best of my knowledge, based on the information received in PWP's connections check performed for the purposes of the Application, none of these relationships relate to the Debtors or the Chapter 11 Cases nor constitute interests ~~materially~~ adverse to the Debtors ~~in matters upon which PWP is to be engaged in the Chapter 11 Cases~~."

(e) Last sentence of 32: "To the best of my knowledge, based on the information received in PWP's connections check performed for the purposes of the Application, none of these relationships relate to the Debtors or the Chapter 11 Cases nor constitute interests ~~materially~~ adverse to the Debtors ~~in matters upon which PWP is to be engaged in the Chapter 11 Cases~~."

(f) Last sentence of 33(f): "To the best of my knowledge, based on the information received in PWP's connections check performed for the purposes of the Application, none of these business relations constitute interests ~~materially~~ adverse to the Debtors' estates ~~in matters upon which PWP is to be engaged in the Chapter 11 Cases~~."

(g) Clause (ii) in 35: "…neither PWP nor its Professionals that are to perform the services set forth in the Engagement Agreement … (ii) represent an interest that is ~~materially~~ adverse to the interest of the Debtors' estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason of which I know or about which I have been

informed based on the information received in PWP's connections check performed for the purposes of the Application, with respect to the services to be performed pursuant to the Engagement Agreement."

13. PWP amends and supplements paragraph 26(d) of the Original Declaration as follows:

(d) <u>Professionals Inquiry</u>. PWP inquired among Professionals in PWP's Advisory Practice whether they were aware of any actual conflict that would arise as a result of this engagement as investment banker for the Debtors, and sought information regarding other potential connections with the Debtors and the Chapter 11 Case. This inquiry was in the form of a firm-wide email which sought information regarding any connections or relationships with the Debtors, the Bankruptcy Judges for the District of Delaware, or the United States Trustee or any person employed by the Office of the United States Trustee for the District of Delaware. As of January 3, 2023 December 20, 2022, four no person people contacted responded with any information regarding any such connections or conflicts. the following disclosures: (i) an associate in Investment Banking, who is not part of the Deal Team, disclosed a claim of approximately $5,500 against FTX; (ii) an independent director disclosed a family affiliation with Meta (formerly Facebook); (iii) another independent director disclosed a family affiliation with Plaid; and (iv) a newly-hired banking director disclosed an existing private investment in Ethereal Ventures Fund 1. In addition, PWP made an additional inquiry in the form of an email to its Professionals providing services to the Debtors in Chapter 11 Cases (the "<u>Deal Team</u>") which sought information regarding any known connections or relationships with any of the Parties-in-Interest. As of January 3, 2023 December 20, 2022, no four persons contacted responded with information regarding any such connections or conflicts. PWP will file an amended declaration if any additional members of the Deal Team respond with any additional information regarding any such connections or conflicts.[5]

**Supplemental Disclosures**

14. In addition to the Supplemental Disclosures made in paragraph 11 of this Supplemental Declaration, PWP also discloses the additional results of its conflicts check noted

---

[5] Upon further investigation, PWP has ruled out any connections or conflicts based on the information provided by the four original respondents.

on **Schedule 1** attached hereto. The conflicts check was performed as described in the Original Declaration and the additional disclosures contained in **Schedule 1** are in addition to and supplement PWP's disclosures made in Schedule 2 to the Original Declaration.

*[Remainder of Page Intentionally Blank]*

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 18, 2023.

_____
Bruce Mendelsohn
Partner
Perella Weinberg Partners LP

13749115

## SCHEDULE 1

**Results of Conflicts Check**

| Party-in-Interest | Relationship to Debtors | Relationship to PWP Advisory Services |
|---|---|---|
| NASDAQ, Inc | Vendors | Client |
| Ripple Labs Singapore PTE. LTD. | Vendors | Client |

1

13749115