**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** February 8, 2023 at 1:00 p.m. (ET) |
| | **Objection Deadline:** February 1, 2023 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OR TRANSFER OF CERTAIN DE MINIMIS ASSETS AND FUND ASSETS, (II) APPROVING ASSUMPTION, ASSIGNMENT AND REJECTION PROCEDURES AND (III) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving procedures for the sale or transfer of certain non-strategic assets, including any rights or interests therein, that are (i) of relatively *de minimis* value compared to the Debtors' total asset base (collectively, the "De Minimis Assets") and/or (ii) limited partnership or similar interests in venture capital and other investment funds

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

(collectively, the "Fund Assets"), free and clear of any liens, claims, interests and encumbrances, (b) implementing certain procedures for the assumption and assignment of certain executory contracts in connection therewith and (c) granting related relief. In further support of this Motion, the Debtors respectfully state as follows:

## Background

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Official Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

## Jurisdiction

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of

the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and Local Rules 2002-1, 6004-1

and 9006-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order

or judgment by the Court in connection with this Motion to the extent it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments consistent with

Article III of the United States Constitution.

## Relief Requested

4.      By this Motion, the Debtors seek entry of the Order, substantially in the

form attached hereto as Exhibit A, (a) authorizing and approving the Sale Procedures (as defined

below) to (i) sell or transfer the De Minimis Assets and Fund Assets, including any rights or

interests therein and (ii) pay necessary fees and expenses incurred in connection with the Sales

(as defined below), (b) implementing certain procedures for the assumption and assignment of

certain executory contracts in connection therewith and (c) granting related relief.

## De Minimis Asset Sales

5.      Prior to the Petition Date, the Debtors regularly entered into and exited

investments across a variety of asset categories, including coins, tokens and token platforms,

interests in privately held companies (including in the form of preferred stock, common stock,

warrants and notes), debt and equity securities in publicly traded companies and investments in

crypto, venture capital or other investment funds.  The Debtors also acquired controlling or

100% interests in early-stage private companies with relatively small enterprise value.  The

Debtors' investments and acquisitions spanned several industries, including, among others,

crypto and crypto mining, financial services, fintech, artificial intelligence, gaming, betting and

social media.  A number of these assets were held purely for purposes of investment and, as a

result, were meant to be monetized over time rather than integrated into the Debtors' core crypto exchange businesses conducted in the Dotcom and WRS Silos as described in the First Day Declarations.  Whereas the acquisitions were generally held in the Dotcom and WRS Silos, the investments were conducted and held primarily through the Alameda and Ventures Silos.  Prior to the Petition Date, the Alameda Silo operated quantitative trading funds specializing in crypto assets, offered over-the-counter trading services and made and managed other debt and equity investments.  The Debtors in the Ventures Silo made and managed private investments through Debtors Clifton Bay Investments, LLC, Clifton Bay Investments Ltd., FTX Ventures Ltd., Island Bay Ventures Inc. and certain affiliated non-Debtor entities.

6.      Many of the investments and certain of the acquisitions that the Debtors made were relatively small.  Out of over 320 investments made by the Debtors, approximately 185 investments (including acquisitions of minority interests and whole-company acquisitions) were made for $1,000,000 or below each, approximately 75 investments were made for between $1,000,000 and $5,000,000 each, and approximately 40 investments were made for between $5,000,000 and $25,000,000 each.  These De Minimis Assets are easily separated from the Debtors' core operations and are expected to generate significantly less value for the Debtors' estates compared with the Debtors' other assets.  The transfer or sale of such De Minimis Assets will not impact the Debtors' abilities to operate their businesses or reduce the value of their estates.  Disposition of certain De Minimis Assets may also include the related assumption, assumption and assignment, or rejection of executory contracts related to such De Minimis Assets under section 365 of the Bankruptcy Code.

7.      In addition, while some buyers may be interested in multiple of these assets or certain groupings of these assets by asset class or industry, given the nature of such De

Minimis Assets, it is unlikely that there would be significant synergies in selling such assets to a single buyer. The Debtors, with the assistance of their investment banker, Perella Weinberg Partners ("PWP"), and other advisors, are undertaking a strategic review of the De Minimis Assets, including evaluating inbound interest in acquiring the De Minimis Assets that the Debtors have received. Prospective acquirors for the De Minimis Assets include, in addition to strategic and financial buyers, the original investees and other investors in such investments, many of whom are struggling with the uncertainty and negative reputational impacts of these Chapter 11 Cases. Some investees have expressed their strong motivation in repurchasing the Debtors' interests to facilitate raising additional capital from other new investors.

8.      To alleviate the administrative burden of approving numerous individual sales on the Court and the cost to the Debtors' estates of filing separate motions, the Debtors have developed expedited procedures (as set forth below, the "De Minimis Sale Procedures") to efficiently govern the sale of the De Minimis Assets with the oversight of the Official Committee, and seek the authority to sell or transfer such De Minimis Assets, without further Court approval to maximize the value of these assets for the benefit of their estates and all stakeholders.

## Fund Asset Sales

9.      The Debtors invested as a limited partner in approximately 30 venture capital and other investment funds, primarily through the Ventures Silos. Many of these investments are relatively small in size and therefore similar to the De Minimis Assets. Additionally, with respect to certain Fund Assets, the Debtors have remaining Capital Commitments (as defined below). Pursuant to the limited partnership agreements governing the operation of such funds (the "LP Agreements"), each limited partner, including the Debtors, is

required to contribute a certain, pre-determined amount of capital (the "Capital Commitment"),

which capital is used by the fund's general partner to invest in portfolio companies. Generally,

when an investment need or opportunity arises, the fund's general partner will request, pursuant

to the terms of the applicable LP Agreement, that the limited partners contribute capital to the

partnership in order to finance the investment (a "Capital Call"). When a Capital Call is made,

each limited partner is required to remit the requested funds to the general partner of the

partnership in an amount not to exceed the applicable Capital Commitment. The Debtors have

invested in approximately 12 funds with a funded Capital Commitment as of the Petition Date of

$1,000,000 or less, and approximately 12 funds with a funded Capital Commitment as of the

Petition Date of between $1,000,000 and $10,000,000.

        10.     A limited partner's failure to satisfy a Capital Call generally decreases the

value of the limited partner's investment in the fund under the LP Agreement. Typically, if the

limited partner fails to fund the Capital Call in the time allotted for the Capital Call, the limited

partner could be designated as a "Defaulting Limited Partner" and subjected to remedies such as

the general partner's ability to call the limited partner's interest in the fund at a discount, a

forfeiture of a certain percentage of the Defaulting Limited Partner's capital accounts or profits

or forfeiture of invested capital and/or imposition of default interest on the Defaulting Limited

Partner ("Default Interest"). As such, under the terms of the LP Agreements, failure to satisfy

Capital Calls when due may result in a significant loss of contributed capital and investment

value.

        11.     Since the Petition Date, three Capital Calls have been made by various

funds that the Debtors have invested in, of which two have declared the Debtors to be

"Defaulting Limited Partners." Notwithstanding the terms of the underlying LP Agreements, the

Debtors believe that any act to decrease the value of the Debtors' invested capital by any Fund Asset or the imposition of Default Interest to be a violation of the automatic stay pursuant to section 362 of the Bankruptcy Code.  Nonetheless, due to the Capital Call mechanisms set forth in the LP Agreements and the related default provisions, the potential exercise of any of these remedies presents a substantial risk to the value of the Debtors' Fund Assets.

12.    Disposition of certain Fund Assets may also include the related assumption, assumption and assignment, or rejection of executory contracts related to such Fund Asset under section 365 of the Bankruptcy Code, including assignment of the applicable LP Agreement and related agreements to the extent such agreement constitutes an executory contract.

13.    In light of the value of the Fund Assets and the potential diminution of value that may occur as such funds continue to issue Capital Calls, it may be prudent for the Debtors to dispose of Fund Assets to third parties better able to honor the Capital Calls. Accordingly, the Debtors have developed expedited procedures (as set forth below, the "Fund Asset Sale Procedures" and, together with the De Minimis Sale Procedures, the "Sale Procedures") to efficiently govern the sale of the Fund Assets with the oversight of the Official Committee, and seek the authority to sell or transfer the Fund Assets, without further Court approval.

### Sale Procedures

14.    To alleviate the cost and delay of filing a separate motion for each proposed sale of De Minimis Assets and/or Fund Assets (each, a "Sale") and to eliminate any uncertainty regarding the Debtors' authority to consummate certain sales, the Debtors seek approval of the Sale Procedures.  The Debtors propose to utilize the Sale Procedures to facilitate

a more expeditious and cost-effective review of each Sale by the Debtors and other parties-in-interest.

15.    The Debtors' proposed Sale Procedures are as follows:

(a)    The Debtors shall at least on a weekly basis notify the firms serving as legal counsel and lead financial advisor to the Official Committee (the "Consulting Professionals") of the status of any potential sales or transfers of De Minimis Assets or Fund Assets, including the receipt by the Debtors of any offers and entry into or consummation of any Sales with respect thereto.

(b)    With respect to the sales or transfers of (i) De Minimis Assets (that are not Fund Assets) in any individual transaction or series of related transactions to a single buyer or group of related buyers with (x) an aggregate selling price with respect to each investment of less than or equal to US$1,000,000, as calculated within the Debtors' reasonable discretion (upon consultation with the Consulting Professionals) and (y) a confirmed investment value (whether in one or a series of transactions) in the Debtors' books and records of less than or equal to US$5,000,000, or (ii) Fund Assets with (x) a funded Capital Commitment by any of the Debtors as limited partner of less than or equal to US$1,000,000 and (y) an aggregate selling price, as calculated within the Debtors' reasonable discretion (upon consultation with the Consulting Professionals), of less than or equal to US$1,000,000:

(i)    the Debtors shall consult with the Consulting Professionals in good faith at least three business days in advance of entering into any binding documentation to effect such transaction;

(ii)    the Debtors are authorized to consummate such transactions without further order of the Court or notice to any party if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interests of their estates;

(iii)    any such transactions shall be subject to the terms of the documentation executed in connection with such transaction, which documentation may (but is not required to) include provisions that the buyers are taking the De Minimis Assets or Fund Assets, as applicable, "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such De Minimis Assets or Fund Assets, as applicable, and shall be free and clear of all liens, claims, interests and encumbrances, with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the sale;

(iv)    each purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser;

(v)    if the Debtor intends to seek to assume, assume and assign or reject any executory contract in connection with such sale, the Debtors shall give written notice thereof (the "<u>Contract Assignment Notice</u>") at least ten days prior to such assumption, assumption and assignment or rejection, to the non-Debtor counterparties to such executory contracts or, in lieu thereof, their counsel, if known, and be filed with the Court The Contract Assignment Notice will specify: (A) the executory contracts, if any, that the Debtors propose to assume, assume and assign, or reject as part of the proposed sale; (B) for any assumption or assumption and assignment of an executory contract, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (collectively, the "<u>Cure Amounts</u>"); and (C) if applicable, a statement regarding the adequate assurance of future performance by the proposed purchaser, consistent with section 365 of the Bankruptcy Code;

(vi)    objections to such assumptions, assumptions and assignments or rejections of executory contracts set forth in the Contract Assignment Notice must (A) be in writing and state with specificity the basis for objecting and (B) be filed with the Court and served on (x) proposed counsel to the Debtors, (1) Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Mitchell S. Eitel (eitelm@sullcrom.com), Audra D. Cohen (cohena@sullcrom.com) and Brian E. Hamilton (hamiltonb@sullcrom.com) and (2) Landis Rath & Cobb LLP, 919 N. Market St., Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kimberly A. Brown (brown@lrclaw.com), and (y) proposed counsel to the Official Committee, (1) Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Kristopher M. Hansen (krishansen@paulhastings.com), Luc A. Despins (lucdespins@paulhastings.com), Erez E. Gilad (erezgilad@paulhastings.com), Gabriel E. Sasson (gabesasson@paulhastings.com) and Samantha Martin (samanthamartin@paulhastings.com) and (2) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware, 19801, Attn: Matthew B. Lunn (mlunn@ycst.com) and Robert F. Poppiti, Jr. (rpoppiti@ycst.com) (collectively, the "<u>Objection Notice Parties</u>") within ten days of the service of such Contract Assignment Notice at 4:00 p.m. (prevailing Eastern Time) (the "<u>Contract Objection Deadline</u>"); and

(vii)    if no written objection from the non-Debtor counterparty to the executory contract is filed with the Court and served on counsel to the Debtors by the Contract Objection Deadline, then the Debtors are authorized to immediately consummate the assumptions, assumptions and assignments or rejections of such executory contracts. If the non-Debtor counterparty files with the Court and serves on counsel to the Debtors a written objection to any such sale or transfer or any related assumptions, assumptions and assignments or rejections of executory contracts by the Contract Objection Deadline, then the relevant executory contract shall only be assumed, assumed or assigned or rejected upon withdrawal of such objection, submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court.

(c)    With respect to the sales or transfers of (i) De Minimis Assets (that are not Fund Assets) in any individual transaction or series of related transactions to a single buyer or group of related buyers with (x) an aggregate selling price greater than US$1,000,000 but less than or equal to US$5,000,000, as calculated within the Debtors' reasonable discretion (upon consultation with the Consulting Professionals) and (y) a confirmed investment value (whether in one or a series of transactions) in the Debtors' books and records of less than or equal to US$25,000,000, (ii) Fund Assets with (x) a funded Capital Commitment by any of the Debtors as limited partner of greater than US$1,000,000 but less than or equal to US$10,000,000 and (y) an aggregate selling price, as calculated within the Debtors' reasonable discretion (upon consultation with the Consulting Professionals), of less than or equal to US$10,000,000, or (iii) Fund Assets with outstanding or defaulted Capital Call obligations at the time of the proposed sale of no more than $10,000,000:

(i)    the Debtors are authorized to consummate such transactions without further order of the Court if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interests of their estates, subject to the procedures set forth herein;

(ii)    the Debtors shall consult with the Consulting Professionals in good faith at least five business days in advance of entering into any binding documentation to effect such transaction;

(iii)    the Debtors shall, at least ten days prior to closing or effectuating such sale or transfer, give written notice (with notice by email being sufficient) of such sale or transfer (each notice, a "Sale Notice"), to the following parties or, in lieu thereof, their counsel, if known, and shall file the Sale Notice with the Court: (A) the U.S. Trustee; (B) counsel to the Official Committee; (C) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant De Minimis Asset(s) or Fund

Asset(s), as applicable; (D) the non-Debtor counterparties to all executory contracts that the Debtors propose to assume, assume and assign, or reject in connection with such sale, as applicable; (E) any party that has expressed an interest in purchasing the relevant De Minimis Asset(s) or Fund Asset(s), as applicable, during the last six months; (F) any interested or affected governmental or regulatory entity; and (G) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties");

(iv)    the content of the Sale Notice shall consist of: (A) identification of each De Minimis Asset or Fund Asset, as applicable, being sold or transferred; (B) identification of the Debtor(s) that directly own such asset and the relevant silo that holds such asset; (C) identification of the purchaser of the De Minimis Asset(s) or Fund Asset(s), as applicable; (D) the purchase price; (E) with respect to De Minimis Assets, the confirmed investment value of the relevant De Minimis Asset, if known, or other value of such De Minimis Asset in the Debtors' books and records; (F) with respect to Fund Assets, the Debtor's total funded and unfunded Capital Commitment for such Fund Asset; and (G) any other significant terms and conditions of the sale or transfer;[2]

(v)    in addition, the Sale Notice will specify: (A) the executory contracts, if any, that the Debtors propose to assume, assume and assign, or reject as part of the proposed sale; (B) for any assumption or assumption and assignment of an executory contract, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (collectively, the "Cure Amounts"); and (C) if applicable, a statement regarding the adequate assurance of future performance by the proposed purchaser, consistent with section 365 of the Bankruptcy Code;

(vi)    objections to the sale or transfer of De Minimis Asset(s) or Fund Asset(s) or any related assumptions, assumptions and assignments or rejections of executory contracts set forth in the Sale Notice must (A) be in writing and state with specificity the basis for objecting and (B) be filed with the Court and served on the Objection Notice Parties within ten days of the service of such Sale Notice at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline");

(vii)    if no written objection from any of the Sale Notice Parties is filed with the Court and served on counsel to the Debtors by the Sale Objection Deadline, then the Debtors are authorized to immediately consummate such Sale or transfer and any related

---

[2]    A proposed form of Sale Notice is attached to the Order as Exhibit 1.

assumptions, assumptions and assignments or rejections of executory contracts;

(viii)  if any Sale Notice Party files with the Court and serves on counsel to the Debtors a written objection to any such Sale or transfer or any related assumptions, assumptions and assignments or rejections of executory contracts by the Sale Objection Deadline, then the relevant De Minimis Asset(s) or Fund Asset(s) shall only be sold or transferred upon withdrawal of such objection, submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or further order of the Court;

(ix)  if the terms of a proposed Sale or transfer are materially amended after transmittal of the Sale Notice but prior to the Sale Objection Deadline, the Debtors shall send a revised Sale Notice to the Sale Notice Parties.  The Sale Objection Deadline will be extended such that the Sale Notice Parties will have an additional five days to object in accordance with the Sale Procedures;

(x)  any such transactions shall be subject to the terms of the documentation executed in connection with such transaction, which documentation may (but is not required to) include provisions that the buyers are taking the De Minimis Assets or Fund Assets, as applicable, "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such De Minimis Assets or Fund Assets, as applicable, and shall be free and clear of all liens, claims, interests and encumbrances, with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the sale;

(xi)  the Debtors may consummate a De Minimis Asset Sale or a Fund Asset Sale and any related assumptions, assumptions and assignments or rejections of executory contracts prior to the Sale Objection Deadline if they obtain written consent to such sale from the Sale Notice Parties; and

(xii)  each purchaser shall be afforded the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser.

16.    For the avoidance of doubt, the Sale Procedures shall not apply to any Sale of De Minimis Assets or Fund Assets to an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.  The Debtors will not sell any causes of action against

any employee, director or officer of the Debtors in connection with any Sale of De Minimis Assets or Fund Assets.

17.    The Debtors also seek authority to take any action that is reasonable and necessary to close the Sales and to obtain the proceeds thereof, including, without limitation, paying reasonable and necessary fees and expenses to agents, brokers and dealers, auctioneers and liquidators.

18.    To the extent that any proposed Sale constitutes all or substantially all of a Debtor's assets or seeks to sell equity of a non-Debtor subsidiary, the Debtors shall comply with the terms of the *Order Extending the Time to File (A) Schedules of Assets and Liabilities and Statements of Financial Affairs and (B) Rule 2015.3 Financial Reports* [D.I. 469].

19.    During these Chapter 11 Cases, the Debtors will provide to the U.S. Trustee and the Consulting Professionals, to the extent practicable, a written report within 30 days after each calendar month (to the extent Sales were consummated in the relevant month) concerning any Sales or transfers made pursuant to the Sale Procedures (including the names of the purchasing parties and the types and amounts of the Sales).  The Debtors' reporting obligations with respect to Sales shall terminate following the Debtors' filing a report 30 days after confirmation of a chapter 11 plan.

20.    The Debtors submit that the Sale Procedures are reasonable and designed with the objective of obtaining the best value for the De Minimis Assets and Fund Assets in an efficient manner and at reduced cost and expense to the estates.  The Debtors further submit that the Sale Procedures satisfy the requirements of section 363 of the Bankruptcy Code, will facilitate the sale of the De Minimis Assets and Fund Assets for the highest or otherwise best value for the benefit of all of the Debtors' stakeholders.

**Basis for Relief**

I.   **The Proposed Sales and Sale Procedures Should Be Approved and Authorized as a Sound Exercise of the Debtors' Business Judgment.**

21.   Section 363(c) of the Bankruptcy Code permits debtors to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing."   11 U.S.C. § 363(c)(1).

22.   The Debtors' investment portfolio and other acquired companies span all four silos described in the First Day Declaration:  the investments comprise the entirety of the Ventures Silo and a significant portion of the Alameda Silo, as well as more limited parts of the Dotcom and WRS Silos.  Given the scope of such investments, the Debtors' ordinary course of business includes managing and making day-to-day decisions regarding its investment holdings, including managing the investment relationship, exercising board or observer rights under the investment documents, participating in potential fundraising and liquidity efforts by such investee companies and consenting to significant transactions conducted by such companies, including various strategic or operational decisions (including sales or acquisitions of equity interests or whole-company sales).  The Debtors intend to continuing making day-to-day decisions regarding its investment holdings in the ordinary course of business.

23.   The De Minimis Assets and Fund Assets collectively comprise an immaterial portion of the Debtors' entire investment portfolio.  The sales of many De Minimis Assets and Fund Assets have historically been consummated in the ordinary course of the Debtors' business of managing their various investments.  Accordingly, the Debtors submit that the proposed Sales are permitted under section 363(c) of the Bankruptcy Code without the need for Court approval.

24.     Nevertheless, the Debtors seek authorization to consummate the proposed Sales under section 363(b) of the Bankruptcy Code.   Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).

25.     In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

26.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties;

(c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.     The Proposed Sales Are Justified by Good and Sound Business Justification.

27.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

28.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.   Sales pursuant to the Sale Procedures will enable the Debtors to defray or avoid any operational, carrying or other expenses associated with certain of the De Minimis Assets and Fund Assets, including payroll or potential future Capital Calls or capital investments; protect the Debtors against the possible declining value of certain De Minimis Assets and Fund Assets; and minimize the costs associated with selling these assets through the use of more streamlined processes appropriate for these types of De Minimis Assets and Fund Assets.   Selling or transferring the De Minimis Assets and Fund Assets pursuant to the proposed Sale Procedures is the most efficient and cost-effective means of maximizing the value for the benefit of the estates. Obtaining Court approval for each Sale would result in unnecessary administrative costs

attendant to drafting, serving and filing pleadings, as well as time incurred by attorneys for Court appearances and potentially conducting expansive marketing processes and auctions, which could drastically reduce the ultimate net value of these assets.  The proceeds that will be generated by many, if not all, of the sales of De Minimis Assets and Fund Assets do not warrant the incurrence of such expenses.

29.     Moreover, the Sale Procedures will enable the Debtors to seize sale opportunities that may be available only for a limited time,  resulting in recovery of certain value for the De Minimis Assets and Fund Assets through their prompt monetization.  The Debtors may face stringent time constraints in terms of meeting the closing deadlines established by interested purchasers and, in the case of Fund Assets, to ensure no diminution in the value of the asset as a result of Capital Calls imposed on limited partners.  The Sale Procedures will permit the Debtors to be responsive to the needs of interested purchasers (and thereby guard against lost sales due to delay), while still providing interested parties with the ability to review more significant transactions.  While the Debtors request authorization to sell De Minimis Assets for an aggregate selling price of up to $5,000,000 and committed investment amount of $25,000,000 and Fund Assets with either (x) a funded Capital Commitment of up to $10,000,000 and aggregate selling price of up to $10,000,000 or (y) outstanding or defaulted Capital Calls of up to $10,000,000, the Debtors believe that many individual transactions will, in fact, be for substantially less.  Further, the proposed sale-price limitations are appropriate in light of the size of the Debtors' estates.  The Debtors will consult with the Consulting Professionals in good faith in advance of entering into any binding Sale documentation.  The estates are further protected by the opportunity for the U.S. Trustee, counsel to the Official Committee and the other Sale Notice Parties to review and object to any Sales for an aggregate selling price of greater than $1,000,000

but less than or equal to $5.000,000 and committed investment amount of less than $25,000,000

or Fund Assets with either (x) a funded Capital Commitment of greater than $1,000,000 and less

than $10,000,000 and aggregate selling price of up to $10,000,000 or (y) outstanding or

defaulted Capital Calls of up to $10,000,000.

30.     Courts in this district and other districts have approved similar procedures

to permit the sale of certain de minimis assets in other large chapter 11 cases.   *See, e.g.*, *In re*

*The Weinstein Co.*, No. 18-10601 (MFW) (Dec. 18, 2020), D.I. 3141 (authorizing de minimis

asset sales up to $2.5 million);  *In re The Hertz Corp.*, No. 20-11218 (MFW) (Oct. 8, 2020), D.I.

1459 (authorizing de minimis asset sales up to $5 million);  *In re Brooks Brothers Group, Inc.*,

No. 20-11785 (CSS) (July 30, 2020), D.I. 262 (authorizing de minimis asset sales up to $2.5

million);  *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (July 14, 2020), D.I. 550

(authorizing de minimis asset sales up to $2.5 million); *In re Revlon Inc.*, No. 22-10760 (DSJ)

(Bankr. S.D.N.Y. Aug. 23, 2022), D.I. 338 (authorizing de minimis asset sales up to $15

million); *In re LSC Communications, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020),

D.I. 325 (authorizing de minimis asset sales up to $10 million); *In re Sears Holdings Corp.*, No.

18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 19, 2018), D.I. 811 (approving de minimis asset sales

for assets up to $15 million).  In *In re Washington Mutual, Inc.*, the bankruptcy court approved

the sale of limited partnership interests in ten venture capital funds subject to notice procedures

similar to those proposed herein for the sale of Fund Assets.  No. 08-12229 (MFW) (Jan. 6,

2009), D.I. 536.

B.     The Noticing Procedures Are Reasonable and Appropriate.

31.     The notice and hearing requirements contained in section 363(b)(1) of the

Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed

transaction, appropriate notice and an opportunity for a hearing are given.  *See* 11 U.S.C. §

102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances").   Bankruptcy Rules 2002(a)(2), 2002(i) and 2002(k) require that a minimum of 21 days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees," the Official Committee and the U.S. Trustee unless a debtor shows "cause."  *See* FED. R. BANKR. P. 2002(a)(2), 2002(i), 2002(k).  Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes the Court to shorten the generally applicable 21-day notice period and to direct a method of notice other than mail.  *See* FED. R. BANKR. P. 2002(a)(2).   Moreover, the Court is authorized to limit, even without a prior showing of cause, notice of asset sales outside the ordinary course of a debtor's business to the Official Committee and any creditor or equity holder requesting notice.  *See* FED. R. BANKR. P. 2002(i). In addition, the sale or transfer of property outside the ordinary course of business may be authorized without an actual hearing if no party in interest timely requests such a hearing.  *See* 11 U.S.C. § 102(1)(B)(i) (authorizing "an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest," notwithstanding the statutory requirement for "notice and a hearing").

32.   The usual process of obtaining court approval for each Sale: (a) would result in costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions and (b) in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.  The Debtors therefore propose to streamline the process and shorten the applicable notice periods as described herein to maximize the net value realized from Sales for the benefit of all parties-in-interest.

33.     The Sale Procedures comply with the notice and hearing requirements of the Bankruptcy Code, as well as due process, by providing the Sale Notice Parties with an opportunity to present objections as to each sale of De Minimis Assets proposed to be sold for more than $1,000,000 and Fund Assets with a funded Capital Commitment of over $1,000,000 or outstanding or defaulted Capital Calls (in each case, subject to the caps set forth in the Sale Procedures) and to request a hearing.  Furthermore, all known holders of liens will receive adequate notice and an opportunity to object to sales of De Minimis Assets valued above $1,000,000 and Fund Assets with a funded Capital Commitment of more than $1,000,000 or outstanding or defaulted Capital Calls (in each case, subject to the caps set forth in the Sale Procedures).  Lienholders, if any, of sales of De Minimis Assets or Fund Assets below this value will have their liens attach to the proceeds of the applicable Sale.

34.     Based on the foregoing, the Debtors submit that sufficient cause exists to implement the Sale Procedures and that such procedures will improve the efficiency of the sale process for the De Minimis Assets and Fund Assets, thereby maximizing the value of such assets to the Debtors' estates.

C.     The Successful Bidder Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code.

35.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

36.     Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

37.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

38.     The Debtors submit that any Sale consummated in accordance with the Sale Procedures will be an arm's length transaction without indication of any fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders or similar conduct that would cause section 363(m) of the Bankruptcy Code to not apply to such Sales.  Based on the foregoing, the Debtors request that the Court

determine that each purchaser of a De Minimis Asset and/or Fund Asset in a privately negotiated

transaction is a good faith purchaser entitled to the protections of section 363(m) of the

Bankruptcy Code.

## II.   The Sales Should Be Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

39.     In the interest of attracting the best offers, the Debtors request

authorization to sell the De Minimis Assets and Fund Assets free and clear of any liens, claims,

encumbrances and other interests in accordance with section 363(f) of the Bankruptcy Code,

with any such liens, claims, encumbrances and other interests attaching to the proceeds of the

sale of the De Minimis Assets and Fund Assets.

40.     The sale of estate property free and clear of any interest is governed by

section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

41.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive:

approval of a proposed sale of assets free and clear of interests requires only that one of the five

requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*,

282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the

conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

42.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

43.     The Debtors submit that the Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code.   Pursuant to the Sale Procedures, to the extent there are any known holders of liens on the De Minimis Assets valued above $1,000,000 or on any Fund Assets with a funded Capital Commitment above $1,000,000 or outstanding or defaulted Capital Calls (in each case, subject to the caps set forth in the Sale Procedures), the Debtors will provide such parties with a Sale Notice prior to the disposition of the applicable De Minimis Asset(s) or Fund Asset(s).   Absent any objection to a Sale, a holder of a lien shall be deemed to have consented to such sale, and the relevant asset may be sold free and clear of such lien.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).   To the extent that consent of a lienholder is neither obtained nor deemed to have been obtained, the Debtors submit that with respect to each Sale, lienholders

could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.

44.     A sale of the De Minimis Assets and Fund Assets free and clear of claims and interests is necessary to maximize the value of such assets.  If the De Minimis Assets and Fund Assets are not sold free and clear of claims and interests, or if the buyers would, or in the future could, be liable for any such claim or interest, the Debtors would be unable to successfully market the De Minimis Assets and Fund Assets without a significant reduction in price.  Such a sale would provide substantially less value and certainty for the Debtors' estates.

45.     Furthermore, any lien or claim on, in, to or against the De Minimis Assets or Fund Assets existing immediately prior to the Sale of any such assets will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any claim or interest will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that a Sale, if consummated, that is free and clear of claims and interests is in the best interests of the Debtors' estates and stakeholders.

## III.     The Assumption and Assignment of Executory Contracts Should Be Approved.

46.     Section 365 of the Bankruptcy Code provides that a debtor-in-possession may generally assume and assign any executory contract of the debtor, subject to approval of the court, if it:  (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, the applicable defaults and (b) provides adequate assurance of future performance under such contract, including by its assignee.  11 U.S.C. § 365.  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract.  *See, e.g.*, *Mission Prod. Holdings* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019)

(noting that a bankruptcy court will generally approve a debtors' choice to assume or reject an executory contract under the deferential business judgment rule) (citation omitted); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (holding that a debtor's decision to reject an executory contract "is governed by the business judgment standard" and "can only be overturned if the decision was the product of bad faith, whim or caprice") (citations omitted). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract benefits the estate. *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

47.    Assuming and assigning certain contracts to purchasers of De Minimis Assets or Fund Assets is an appropriate exercise of the Debtors' business judgment.  In the event of a sale, the applicable contracts will no longer have any value to the Debtors.  By assuming and assigning certain contracts to purchasers of the De Minimis Assets or Fund Assets, the Debtors will be able to maximize the value of the applicable sale to their estates, while avoiding any damages claims that would arise from the rejection of such contracts.  The Debtors therefore submit that the assumption and assignment of contracts to purchasers of the De Minimis Assets or Fund Assets is an appropriate exercise of the Debtors' business judgment and should be approved.

48.    The consummation of any sale of De Minimis Assets or Fund Assets involving the assignment of an assumed contract will be contingent upon the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) requires that any outstanding defaults under the contract to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.  11 U.S.C. § 365(b)(1).  The Debtors' assumption and assignment of certain contracts will be contingent upon

payment or reserve of Cure Amounts and effective only upon the closing of an applicable sale of the applicable De Minimis Assets or Fund Assets.  As set forth above, the Debtors propose to include in each Sale Notice the Debtors' good faith calculations of the applicable Cure Amounts. Counterparties will have the opportunity to file any objections to the proposed assumption of their respective contract.

49.     Additionally, pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See In re Fleming Cos.*, 499 F.3d 300, 307 (3d Cir. 2007) (citing *Cinicola* v. *Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001)); *see also In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.") (citation omitted).  Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance where prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

50.     As set forth above, where applicable, the Sale Notice or Contract Assignment Notice will include a statement regarding the adequate assurance of future performance by the proposed purchaser of a De Minimis Asset or Fund Asset, consistent with section 365 of the Bankruptcy Code.

51.     In addition, to facilitate the assumption and assignment of certain contracts, the Debtors further request that the Court find that all applicable anti-assignment provisions, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.  Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . . ."  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 365(f)(3).

52.     Based on the foregoing, the Debtors' assumption and assignment of certain contracts in connection with the sale of De Minimis Assets or Fund Assets satisfies the requirements under section 365 of the Bankruptcy Code and should be approved.

### Bankruptcy Rules 6004(a) and 6004(h)

53.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rules 6004(h).  In light of the Debtors' current financial conditions and the importance of an efficient timeline for maximizing the value of the De Minimis Assets and Fund Assets, the proposed Sales contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and

stakeholders.  Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) be waived.

## Notice

54.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

55.     No prior motion for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: January 18, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Proposed Counsel for the Debtors*
*and Debtors-in-Possession*