**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., et al.,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
MOTION OF THE UNITED STATES TRUSTEE FOR ENTRY OF AN ORDER
<u>DIRECTING THE APPOINTMENT OF AN EXAMINER</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases (the "<u>Chapter 11 Cases</u>") of the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>"), by and through its undersigned proposed counsel, hereby submits this objection (this "<u>Objection</u>") to the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Docket No. 176] (the "<u>Motion</u>"), and in support thereof, respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**[2]

1.      These Chapter 11 Cases, all agree, require a thorough investigation into a variety of issues, including "the substantial and serious allegations of fraud, dishonesty, incompetence, misconduct, and mismanagement by the Debtors, the circumstances surrounding the Debtors' collapse, the apparent conversion of exchange customers' property, and whether colorable claims and

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]      Capitalized terms used in this Preliminary Statement that are not defined shall have the meanings ascribed to them later in the Objection or in the Motion, as applicable.

causes of action exist to remedy losses." Motion at 2. Indeed, the prepetition conduct of the Debtors and their former leaders are already under a microscope. No less than three government agencies have publicly announced and commenced investigations, and a congressional committee has begun its own independent investigation. Every day, major news publications are replete with information and analysis related to the Debtors' prepetition conduct and transactions. On the eve of filing these Chapter 11 Cases, all of the Debtors' senior management was terminated and replaced with an experienced, independent team led by John Ray – who has extensive expertise in forensic investigations – which team immediately began the necessary investigation and cooperation with the investigating governmental authorities. And, the U.S. Trustee appointed the nine-member Committee, which, immediately upon retaining professionals, began performing its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . ." 11 U.S.C. § 1103(c)(2).

2.      Accordingly, in these circumstances, the question the Court ultimately must address is not *whether* an investigation should take place, but rather, *who* should conduct the investigation. As set forth below, that party should not be an examiner – and should be the Debtors and Committee, which are already deeply enmeshed in that task. The U.S. Trustee's arguments in favor of appointing an examiner to start the investigation anew do not hold up under scrutiny. Relying upon only its own speculation, the U.S. Trustee contends that the examiner's findings "*likely* would enjoy broader acceptance and credibility" than any of the other investigations currently being conducted. Motion at 3 (emphasis added). But, that subjective opinion aside, the U.S. Trustee fails to explain how any stakeholder in these Chapter 11 Cases would benefit from the appointment of an examiner. The examiner will not benefit the unsecured creditors of the Debtors' estates, who will be forced to pay the examiner's bill and, as discussed below, are more than adequately represented by the Committee, which is statutorily bound, as a fiduciary of the Debtors' estates, to investigate the Debtors' prepetition

conduct. Nor would the examiner benefit the general public – whose interests are not directly relevant for purposes of appointment of an examiner, in any event – because the public is being ably served through investigations by the Department of Justice, the Securities Exchange Commission, the Commodity Futures Trading Commission, and the United States Congress.

3.      In the unique circumstances of these Chapter 11 Cases, an examiner's investigation will delay progress and force the estates to incur significant incremental legal fees for a report with *no* evidentiary value. Notably, even after an examiner completes its investigation, the Committee will ultimately need to independently determine the merits of any claims and causes of action that may be asserted because the examiner cannot bring such claims. And, while previous mega bankruptcy cases, such as *Enron*, *Lehman, Residential Capital* and *Caesars Entertainment*, can guide the Court's understanding of the costs of an examiner – potentially as much as $50 to $100 million – these Chapter 11 Cases are readily distinguishable from those and other mega cases inasmuch as an examiner's report here is quite unlikely to expedite the conclusion of these cases. As discussed in greater detail below, this is not a case with multiple competing stakeholders in which negotiation or resolution might be aided by an examiner's report. Rather, these cases present a singular focus of discovering what transpired, so that the combined efforts of the Debtors and the Committee can maximize recoveries to all unsecured creditors.

4.      Accordingly, because (contrary to the U.S. Trustee's position) appointment of an examiner is not mandatory, this Court should find that it is not in the best interests of the Debtors' estates or their creditors to appoint an examiner here. The Debtors' current management and the Committee have already begun the very same investigation that would be conducted by an examiner. The Motion should be denied.

## BACKGROUND

### A. The Chapter 11 Cases and the Debtors' Investigation

5.        On November 11, 2022, Samuel Bankman-Fried resigned from his position as chief executive of the Debtors, at which time John Ray was appointed to fill the position. *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 24] (the "Ray Declaration") at ¶ 44. On that same date, and on November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

6.        In addition to Mr. Ray's appointment as CEO, new directors were appointed at new "silos" for each of the primary companies in the FTX group.[3] *See* Ray Declaration at ¶ 47. Each of the new directors are independent and have no connection to the Debtors' prepetition conduct. Under the direction of Mr. Ray and the Debtors' new management, the Debtors have been conducting an investigation into the downfall of the FTX enterprise and the prepetition fraudulent activity that unfortunately took place. Assisting the Debtors are able counsel and financial professionals, each of whom has extensive experience conducting forensic, financial and cryptocurrency related investigations in connection with the bankruptcy process.

7.        Nevertheless, well prior to its appointment of the Committee, the U.S. Trustee filed the Motion on December 1, 2022, seeking an order appointing an examiner to conduct an independent investigation into the "allegations of fraud, dishonesty, misconduct, and mismanagement by the Debtors, the circumstances surrounding the Debtors' collapse, the apparent conversion of exchange

---

[3]      The new directors include the Honorable Joseph J. Farnan as a Director of the Dotcom Silo and Chairman of the Board, Mitchell I. Sonkin as the Director of the WRS Silo, Matthew R. Rosenberg as the Director of the Alameda Silo, Rishi Jain as the Director of the Ventures Silo, and Matthew A. Doheny also as a Director of the Dotcom Silo. *See* Ray Declaration at ¶ 47.

customers' property, and whether colorable claims and causes of action exist to remedy losses." Motion at 2.[4]

**B. The Committee's Investigation**

8.      On December 20, 2022, the U.S. Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. *See Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 261]. The U.S. Trustee's appointment was not done haphazardly. As acknowledged by counsel to the U.S. Trustee, the trustee received a "tremendous response" from people "located all over the world" who wanted to serve on the Committee. *See In re FTX Trading, Ltd.*, Dec. 14 Hr'g. Tr. at 13:4-10, annexed hereto as Ex. A.[5] From that group of creditors, the U.S. Trustee selected nine and empowered them to act as fiduciaries for all of the estates' unsecured creditors. The tremendous response received by the U.S. Trustee is not surprising. Unlike typical mega bankruptcy cases, which have complex and fully encumbered capital structures and warring factions of stakeholders, the vast majority of the creditors in these cases are similarly situated customers of the Debtors. Accordingly, not only does the Committee act as a fiduciary for all of the Debtors' unsecured creditors, it also practically, here, acts for the vast majority of the Debtors' stakeholders.

9.      Upon its formation, the Committee retained sophisticated advisors, including Paul Hastings LLP and Young Conaway Stargatt & Taylor, LLP as legal counsel, Jefferies Group, LLC as investment banker, and FTI Consulting, Inc. as financial advisor (collectively, the "<u>Committee</u>

---

[4]      Both the state of Wisconsin and the Vermont Department of Financial Regulation have since filed joinders to the Motion. *See The State of Wisconsin's Joinder to the Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Docket No. 263], *The Vermont Department of Financial Regulation's Joinder to Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [Docket No. 339].

[5]      Relevant excerpts of transcripts cited herein are attached as **Exhibits A - K** to the Objection. Full transcripts are available upon request.

Professionals"). At the direction of the Committee, in addition to working to help stabilize the operational side of these Chapter 11 Cases, the Committee Professionals immediately began coordinating with the Debtors to investigate the facts and potential sources of recovery for unsecured creditors. To date, the Committee Professionals are efficiently reviewing over 55,000 documents received from the Debtors, are filing a joint application with the Debtors for authority to serve subpoenas to obtain information under Bankruptcy Rule 2004 and have been gathering information concerning myriad pertinent issues, including securing and investigating the Digital Assets previously and currently held on the FTX.us and FTX.com exchanges.

10.    The Debtors and Committee plan to continue to work together and allocate resources efficiently in order to avoid duplication of efforts, to, among many other things, perform a forensic analysis of the relevant Debtor silos and the Debtors' assets and liabilities, conduct due diligence on the policies and procedures that allowed the fraud to occur, analyze the value received by the Debtors for the scores of prepetition transactions they entered into, assess the potential liability of the Debtors' equity holders, management, employees and their families, auditors, consultants, advisors and other third parties, and track every last dollar of missing funds.

### C.  The Parallel Proceedings and Public Investigations

11.    In addition to the investigations currently being conducted by the Debtors and the Committee, numerous other proceedings and investigations are also substantially underway. To date, several governmental entities are pursuing civil and criminal proceedings against the Debtors' founders and prepetition management and certain Debtor entities, including *United States v. Bankman-Fried*, Case No. 22-cr-673 (S.D.N.Y.) (eight count indictment on claims of Wire Fraud, Conspiracy to Commit Wire Fraud, Conspiracy to Commit Money Laundering, Conspiracy to Commit Campaign Finance Violations, Conspiracy to Commit Securities, and Conspiracy to Commit

Commodities Fraud); *SEC v. Samuel Bankman-Fried*, Case No. 22-cv-10501(S.D.N.Y.) (alleging violations of section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934); *SEC v. Ellison, Wang*, Case No. 1:22-cv-10794 (S.D.N.Y.) (alleging violations of section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934); *CFTC v. Bankman-Fried, FTX Trading LTD, and Alameda Research LLC.*, Case No. 22-cv-10503 (S.D.N.Y.) (alleging claims of Fraud and Fraudulent Misstatements of Material Fact and Material Omissions). In connection with the criminal complaint brought by the United States, both Caroline Ellison (formerly CEO of Debtor Alameda) and Gary Wang (co-founder and 10% equity owner of FTX.com) have already plead guilty to Conspiracy to Commit Wire Fraud on Customers and Lenders, Wire Fraud on Customers and Lenders, Conspiracy to Commit Commodities Fraud, Conspiracy to Commit Securities Fraud and Conspiracy to Commit Money Laundering. *See* Case No. 22-cr-673 [ECF Nos. 6-9, 20, 22].[6]

## **OBJECTION**

12.     In support of its Motion, the U.S. Trustee argues that investigating "the alleged conversion by the FTX Trading arm of the Debtors of $10 billion of customers' property to lend to its affiliate Alameda . . . is unquestionably in the interests of the Debtors' creditors and other interests of the estates." Motion at ¶ 36. The Committee completely agrees. The Debtors' prepetition fraud must be investigated. But that does not mean the appointment of an examiner is necessary or appropriate. For the reasons set forth below, the U.S. Trustee has not satisfied its evidentiary burden to demonstrate that an examiner should be appointed here. *See In re Dewey & LeBoeuf LLP*, 478 B.R.

---

[6]     Indeed, the detailed charges against and allocutions by Wang and, especially, Ellison, demonstrate the advanced stage of the Government's investigation into their respective criminal activities.

627, 636 (Bankr. S.D.N.Y. 2012) ("The moving party has the burden to prove that an examiner should be appointed."). Accordingly, the Motion should be denied.

## I. The U.S. Trustee has Not Shown that Appointment of an Examiner is in the Best Interests of the Debtors' Estates or their Creditors

13.    The U.S. Trustee argues that appointment of an examiner is in the "best interests of the Debtors' estates, their creditors, and equity security holders." Motion at ¶ 35. Not so. Not only would an examiner *not* benefit any of the Debtors' true stakeholders (their unsecured creditors), but the appointment of an examiner would be an inefficient and costly waste of estate resources and will only serve to duplicate the investigation that the Debtors and the Committee (the statutory and neutral fiduciary appointed by the U.S. Trustee itself) have already been conducting.

### a. The Debtors and the Committee Should Conduct the Investigation

14.    Congress, through section 1103 of the Bankruptcy Code, provided the Committee with broad powers to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2); 7 Collier on Bankruptcy ¶ 1103.05 (16th ed. 2022) ("The investigative authority granted to a committee is extremely broad and a committee may undertake whatever investigation is appropriate to enable it to fulfill its duty to monitor the operations of the debtor and participate in formulation of a plan.").[7]

---

[7]    As set forth more fully in the *Statement of Official Committee of Unsecured Creditors Regarding U.S. Trustee's Objections to Retention of Certain Professionals of Debtors* [Docket No. 508] (the "Committee Statement"), the interplay between sections 1106 and 1107 of the Bankruptcy Code does not preclude the Debtors from investigating their own misconduct, nor does it militate in favor of the appointment of an examiner here. *See* Committee Statement at ¶¶ 2-4 (citing *In re Johnson*, 546 B.R. 83, 163 (Bankr. S.D. Ohio 2016) (recognizing that section 1107's exemption does not mean "anything more than that a debtor in possession is *not required* to 'investigate itself'") (emphasis added); *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("While pursuant to Section 1107(a) of the Code, a debtor in possession is *not required* to investigate and report under Sections 1106(a)(3) and (4), the debtor's directors bear essentially the same *fiduciary* obligation to creditors and shareholders as would a trustee for a debtor out of possession.") (first emphasis added)). Indeed, when sections 1103(c)(2), 1106(a)(3) and 1107(a) are read together, the natural reading is that the Debtors and/or the Committee can fulfill the investigative function that is exempted from the *duties* (not powers) of the debtor in possession. To give credence to the contrary interpretation

15.    Consistent with its statutory duty, the Committee is already in the process of conducting the necessary investigation in order to not only explain what transpired at the Debtors, but to determine, as estate fiduciaries, how to maximize recoveries for the Debtors' customers and other unsecured creditors. Any appointment of an examiner would be duplicative of the investigation already taking place and would restart the investigation anew, wasting the momentum that the Debtors' new management achieved in the first months of these Chapter 11 Cases, and which the Committee has supplemented since its inception. *See In re Am. Home Mortg. Holdings, Inc*., Case No. 07-11047, Hr'g Tr. at 77:2-8, annexed hereto as Ex. B (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.) (noting that because there were already ongoing investigations, the Court did not "think . . . there would be anything to be gained by appointing an examiner . . .").

16.    The U.S. Trustee is simply wrong in contending, as applied here, that a creditors' committee (including this Committee) is not a neutral party because it is an advocate for general unsecured creditors and that an examiner is needed to be independent. *See* Motion at ¶ 41 (citing law review article to support contention that "the economic predispositions of debtors in possession and committees are an important and intentional part of the Code's structure, but those predispositions prevent their neutrality"). Although the U.S. Trustee's arguments *might* have some level of merit in a typical mega chapter 11 case – where the Committee represents but one constituency in a complex capital structure – such concerns are completely inapplicable in these Chapter 11 Cases. Here, as will be shown (to the extent disputed) at the hearing on the Motion, the vast majority (if not all) of the claims against the Debtors' estates are those of unsecured creditors. Therefore, the Committee is in the best position – and has a fiduciary responsibility – to represent the *entire* body of the Debtors'

---

propounded by the U.S. Trustee would lead to the absurd result of a trustee or examiner being appointed in *every* case under chapter 11 of the Bankruptcy Code.

creditors. The concern raised by the U.S. Trustee that certain groups of creditors may have potentially divergent interests from those of the Committee's constituents (*see* Motion at ¶ 41) does not exist here. *See In re Adelphia Communications*, Case No. 02-41729, Hr'g Tr. 7.63:8-7.64:4, annexed hereto as Ex. C (Bankr. S.D.N.Y. Feb. 6, 2006) (declining to appoint an examiner, noting that the creditors' committee was not conflicted in a manner that would necessitate the appointment of an examiner). In fact, the Committee's vested interest in maximizing recoveries for unsecured creditors actually buttresses the need for the Committee, with the Debtors, to conduct the investigation – not an examiner. In satisfying the Committee's fiduciary duty to the creditors of these estates, it will focus its efforts on investigating for the ultimate purpose of assessing claims and causes of action that have the greatest likelihood of inuring to the benefit of such creditors, rather than having an examiner drain resources of the estates investigating matters that, in the end, may not enhance the Debtors' estates (and that an examiner cannot prosecute, in any event).[8]

### b. An Examiner Will Not Benefit the Debtors' Stakeholders

17.    The U.S. Trustee contends in its Motion that an examiner is necessary to examine the "unanswered questions" behind the Debtors' alleged prepetition misconduct, which "are not merely about where the money flowed or who can sue whom," but relating to "the wider implications that FTX's collapse may have for the crypto industry." Motion at ¶ 42-43. First, "where the money flowed" and "who can sue whom" are *precisely* the questions upon which an investigation should focus in order to maximize the value of these estates. Second, the wider implications that FTX's collapse may have for the crypto industry are certainly of interest, but are not within the scope of the

---

[8]    Certain parties have raised concerns regarding the neutrality of the Debtors' new management and professionals, which concerns were rejected by the Court in the related context of the Debtors' professionals' retentions. Regardless, the Committee's role in the investigation of the Debtors' prepetition affairs ensures an investigation without any appearance of conflict or bias. The Committee is perfectly situated to conduct such neutral investigation itself and further act as a check on the investigative functions being conducted by the Debtors and their professionals in this regard.

investigative duties described in the Bankruptcy Code and are not costs that should be unnecessarily borne by the Debtors' estates.

18.    The Motion advocates for a limitless investigation that may not benefit creditors' recoveries, consistent with the U.S. Trustee's desire to serve the public interest through an examiner's investigation into certain systemic issues in the crypto industry. Motion at ¶¶ 42-43. Such an investigation is already being conducted by a number of government agencies, including the Securities Exchange Commission, the Department of Justice and the Commodity Futures Trading Commission and a congressional committee – not to mention journalists worldwide. Thus, the public is being served by those investigations without the need for the creditors of these Debtors to fund, through their potential recoveries, an investigation that does not have as its primary goal increasing those very recoveries. *See In re Washington Mut., Inc*., *et al.*, Case No. 08-12229, Hr'g. Tr. at 98:12-100:6, annexed hereto as Ex. D (Bankr. D. Del. May 5, 2010) (Walrath, J.) (denying the appointment of an examiner where the creditor committee is "fully able to conduct the investigation" and the "debtor has been investigated to death" for both criminal and civil proceedings, and noting that it would be "[un]fair to the creditors in this case to be saddled with the cost of an investigation into systematic problems, that would only benefit future parties but not benefit the parties in this case.").

19.    Indeed, the U.S. Trustee sidesteps that it is the unsecured creditors that will pay for the examiner's investigation and report. Budgets or not, an appointed examiner will surely need to retain outside counsel, forensic accountants and financial advisors, among a slew of other professionals, all of whom (as will be proven at the hearing on the Motion), would be charging the estates millions of dollars in fees and expenses while just trying to catch up to where the investigation to date is already. The Debtors and the Committee have both already retained such professionals and

any work done by additional professionals retained by an examiner would be duplicative of work already done by the Debtors' and Committee's experts.[9]

20.    Finally, there are serious practical concerns that weigh strongly against an examiner conducting an investigation. First, an examiner does not adjudicate, but merely reports. Although an examiner's report may "paint[] a picture, his or her image of what happened in the case . . . and provide[] context for a debate," such report is ultimately hearsay, limiting its evidentiary value. *In re FiberMark, Inc*., 339 B.R. 321, 325 (Bankr. D. Vt. 2006) ("It is the duty of the parties to formulate a fuller version of the debate using the rules of evidence."). And while an examiner may be able to recommend claims or causes of action based on the findings in its report, an examiner itself is not able to bring such claims because it lacks standing to do so. *See Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 578 (3d Cir. 2003) ("One concern is that, like a trustee, an examiner would incur direct costs through its fees, so to that extent this remedy is inferior to the alternative of derivative suit by a creditors' committee. The more serious problem, however, is that it is less than obvious that § 1106(b) actually does permit examiners to initiate actions on the debtor's behalf. . . . Critically, [sections 1106(a)(3)-(4)] permit only investigating and reporting on that investigation – they stop far short of authorizing examiners to litigate based on their findings.").

21.    Indeed, although "painting a picture," as suggested by the *FiberMark* court (*see* 339 B.R. at 325), may be of some benefit in cases in which there are numerous stakeholders, each litigating and negotiating from its own unique position, that situation is not extant here. A non-binding

---

[9]    Pursuant to the proposed order that was filed with the Motion, an examiner would have fifteen days following the appointment to file a proposed work plan and cost estimate, after which parties will have ten days to object, and then, only after obtaining approval from the Court, the examiner is to meet and confer with the Debtors and the Committee regarding its investigation. The practical effect of all of this is that an examiner would not even *start* an investigation, at best, until mid-March – roughly 120 days after the Debtors and 75 days after the Committee began investigating the Debtors' affairs.

examiner's report that identifies certain facts and offers opinions on pertinent legal issues may influence the playing field in situations where there are competing stakeholders with various positions. By way of example, the examiner's report in the *Caesars Entertainment* bankruptcy cases helped identify facts and claims against a recalcitrant equity sponsor, ultimately resulting in a global settlement. *See In re Caesars Entertainment Operating Company, Inc., et al.*, No. 15-01145 (Bankr. N.D. Ill.) *Final Report of Examiner, Richard J. Davis* [Docket No. 3720] at 1-3, 6-11. Notably, the *Caesars* debtors had complicated capital structures including various tranches of secured debt and competing claims to assets as a result of a series of prepetition financial transactions implemented by the equity sponsor. *See id.* at 98-105. Here, to the contrary, there are only the unsecured creditors of the various Debtors that are seeking to maximize their recoveries from the estates, and, as a result, the possible value to be added by having an examiner paint a picture is greatly diminished and will not aid in expediting these cases.

22.     Because the Debtors and Committee are already in the process of conducting an investigation and, significantly, because any investigation conducted by an examiner will still have to be overseen and subject to diligence by the Debtors and the Committee – the parties who will ultimately have standing and need to make the decision whether any claims or causes of action should be prosecuted – an examiner investigation would be redundant and a waste of estate resources. The appointment of an examiner is simply not necessary here.

## II.     Appointment of an Examiner is Neither Mandatory Nor Appropriate

23.     The U.S. Trustee also asserts that appointment of an examiner is mandatory because the criteria set forth in section 1104(c)(2) of the Bankruptcy Code has been met. Motion at § IV.A. Although the U.S. Trustee in the Motion collects and relies upon authority to support its position from various courts outside of this Court and the Third Circuit, it fails to acknowledge the contrary authority of this Court. This Court has repeatedly held that an examiner's appointment is not mandatory simply

because the chapter 11 case meets the $5 million debt threshold set forth in the statute – and has said so in the context of these Chapter 11 Cases. *See In re FTX Trading, Ltd.*, Jan. 11, 2023 Hr'g. Tr. at 167:18-23, annexed hereto as Ex. E ("I think you're familiar with my position on the mandatory nature of the appointment of an examiner . . . For the record, I do not believe it's mandatory."); *see also In re CRED Inc., et al.* No. 20-12836, Hr'g. Tr. at 97:12-18, annexed hereto as Ex. F (Bankr. D. Del. December 18, 2020) (Dorsey, J.) ("I disagree with the UST's position that the appointment of an examiner is mandatory. The language of 1104(c) provides the Court with some discretion. It says that the Court shall appoint an examiner to conduct such an investigation of the debtor as is appropriate. So the question becomes: Is it appropriate in this case?").[10]

24.     Rather, the appropriate inquiry is whether an examiner has an *appropriate* investigation to pursue. *See In re EV Energy Partners*, No. 18-10814, Hr'g. Tr. at 196:22-25, annexed hereto as Ex. G (Bankr. D. Del. May 16, 2018) (Sontchi, J.) ("I don't believe, and I've said this in numerous cases and my colleagues have said it, that it's just mandatory to appoint an examiner, as long as someone asks for one."); *In re IdleAire Techs. Corp.*, No. 08-10960, Hr'g. Tr. at 45:11-15, annexed hereto as Ex. H (Bankr. D. Del. June 13, 2008) (Gross, J.) ("I don't think that [§ 1104(c)(2)] is mandatory based upon my reading of the legislative history . . . the language of the statute itself, and particularly, the as appropriate clause."); *In re Visteon Corporation, et al.*, No. 09-11786, Hr'g. Tr. at 170:16-20, annexed hereto as Ex. I (Bankr. D. Del. May 12, 2010) (Sontchi, J.) ("[I]t would be

---

[10]     This Court in *CRED* followed the reasoning of Judge Glenn in *In re Residential Capital, LLC*, which held that a bankruptcy court has discretion to not appoint an examiner in factual circumstances where it is not appropriate. 474 B.R. 112, 118 n. 6 (Bankr. S.D.N.Y. 2012) ("For example, an examiner investigation might not be appropriate in cases where the SEC has completed a lengthy investigation and commenced an enforcement action laying out the specific misconduct of the debtor's prior management, or *where the company or its senior managers were indicted*, or where the creditors committee had already completed and reported on a lengthy investigation of its own.") (emphasis added). Here, where there have already been multiple indictments of the Debtors' prepetition management and multiple criminal investigations are in progress (in addition to the investigations by the Debtors' new management and the Committee), an investigation by an examiner is simply not appropriate.

an absurd result to find that in every case where the financial criteria is met and a party-in-interests asks, the Court must appoint an examiner. There has to be an appropriate investigation that needs to be done.").

25.    Where, as here, an investigation is already being conducted by the Debtors' newly-appointed and disinterested management and the Committee, an examiner's investigation is not only inappropriate, but would be "futile." *See In re Magna Entm't Corp.*, No. 09-10720, Hr'g. Tr. at 13:4-14:14, annexed hereto as Ex. J (Bankr. D. Del. Apr. 28, 2010) (Walrath, J.) ("Since all of the roles that an Examiner would play in this case have already been fulfilled [by the creditor's committee], I find it's a futile act and will not appoint an examiner."); *In re IdleAire Techs. Corp.*,Hr'g. Tr. at 45:2-8 (Bankr. D. Del. June 13, 2008) (Gross, J.) (declining to appoint an examiner under § 1104(c)(2) when the "[creditor's] Committee's doing a very, very capable job."); *In re ACandS, Inc.*, No. 02-12687, Hr'g. Tr. at 130:18-131:5, annexed hereto as Ex. K (Bankr. D. Del. Nov. 18, 2002) (Newsome, J.) (denying an investigation by an examiner because it was an "utter and complete waste of money and well as time" when other parties were already investigating "the very same set of transactions."). The Debtors and Committee should continue their investigation, without burdening the estates with the additional fees and costs of an examiner, especially because there can be no allegation by the U.S. Trustee that the Committee (let alone the Debtors) is not an impartial and capable fiduciary to carry out this task.[11]

---

[11]    In the event that this Court determines to appoint an examiner, the Committee reserves the right and opportunity to be heard with respect to the examiner's investigation, including its scope, timeframe, budget and the Committee's involvement in such investigation.

## <u>CONCLUSION</u>

WHEREFORE the Committee requests that this Court deny the Motion and grant such other and further relief as the Court finds just and appropriate.

Dated: January 25, 2023
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*

Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
      rpoppiti@ycst.com

-and-

PAUL HASTINGS LLP
Kristopher M. Hansen*
Luc A. Despins*
Kenneth Pasquale*
Isaac S. Sasson*
John F. Iaffaldano*
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
      lucdespins@paulhastings.com
      kenpasquale@paulhastings.com
      isaacsasson@paulhastings.com
      jackiaffaldano@paulhastings.com

*Admitted pro hac vice*

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**Exhibit A**

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3   IN RE:                     .  Chapter 11
                                .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,  .
                                .
 5                              .  Courtroom No. 5
                                .  824 Market Street
 6           Debtors.           .  Wilmington, Delaware 19801
                                .
 7                              .  Wednesday, December 14, 2022
     . . . . . . . . . . . . . .   11:00 a.m.
 8

 9                        TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JOHN T. DORSEY
10                CHIEF UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtor:          Adam Landis, Esquire
                              Kimberly Brown, Esquire
13                            Matthew Pierce, Esquire
                              LANDIS RATH & COBB LLP
14                            919 Market Street, Suite 1800
                              Wilmington, Delaware 19801
15
                              Andrew G. Dietderich, Esquire
16                            James L. Bromley, Esquire
                              Brian D. Glueckstein, Esquire
17                            Alexa J. Kranzley, Esquire
                              SULLIVAN & CROMWELL LLP
18                            125 Broad Street
                              New York, NY 10004
19
     (APPEARANCES CONTINUED)
20
     Audio Operator:          Danielle Gadson
21
     Transcription Company:   Reliable
22                            The Nemours Building
                              1007 N. Orange Street, Suite 110
23                            Wilmington, Delaware 19801
                              Telephone: (302)654-8080
24                            Email: gmatthews@reliable-co.com

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
```

1  | APPEARANCES (CONTINUED):

2  | For the U.S. Trustee:      Juliet Sarkessian, Esquire
   |                            OFFICE OF THE UNITED STATES TRUSTEE
3  |                            844 King Street, Suite 2207
   |                            Lockbox 35
4  |                            Wilmington, Delaware 19801

5  | For the Bohemian
   | Securities Exchange
6  | Commission:               Kenneth Aulet, Esquire
   |                            BROWN RUDNICK LLP
7  |                            7 Times Square
   |                            New York, New York 10036

8  |
   |                            Blair Rinne, Esquire
9  |                            BROWN RUDNICK LLP
   |                            One Financial Center
10 |                            Boston, Massachusetts 02111

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   devolve.  I agree with Your Honor, there has got to be a way

2   the professionals can work this out without getting into the

3   kind of accusations that are flying.

4              THE COURT:  All right.

5              MR. SHORE:  To be clear, we filed the pleading this

6   morning, Your Honor.  It attaches a declaration that Mr. Ray

7   could not have seen, nor counsel could have seen, which

8   belies this notion that what the commission was doing was

9   working with SBF.  In fact, the email they attach where SBF

10  says --

11             THE COURT:  Well, I'm not going to get into the

12  merits of it at this point, Mr. Shore.  We will talk about

13  that on the 6th if we get to it.

14             MR. SHORE:  Okay.  But recognize --

15             THE COURT:  Hold on, Mr. Shore.  I want to move on.

16             MR. SHORE:  Sure.

17             THE COURT:  Let's talk about the 16th.  We have the

18  motion objecting to the seal by the U.S. Trustee.  Is the

19  U.S. Trustee on the line, someone from the U.S. Trustee?

20             MS. SARKESSIAN:  Yes, Your Honor.  Juliet

21  Sarkessian for the U.S. Trustee.

22             THE COURT:  Ms. Sarkessian, I have some concerns

23  about that hearing going forward on Friday from a number of

24  perspectives.

25             Number one, the motion implicates individual

1  creditors and there is no creditor's committee yet.  I think

2  the creditor's committee would want to weigh-in on that

3  motion.  Do we know yet when the committee will be formed?

4        MS. SARKESSIAN:  Your Honor, first, I -- maybe

5  apology is not the right word, but we had hopes to have a

6  committee formed by this time.  We had a tremendous response

7  and people are located all over the world.  Unfortunately it

8  becomes a little bit difficult when people are in very

9  different time zones, and there is a lot of complicated

10  information, as I'm sure Your Honor can imagine.

11        So we are moving as expeditiously as possible.  You

12  know, and we hope to be filing a notice of appointment very

13  soon. I can't say anything more than that other than very

14  soon.

15        I do have concerns.  You know, they, obviously,

16  have to choose counsel.  So, you know, I think there

17  certainly is a reasonable possibility that they might not

18  have counsel by Friday or maybe they have it by Thursday, but

19  there is not, you know, as much time as one would like for

20  them to have.

21        So I mean Your Honor certainly brings up a valid

22  concern.  We had hoped it would be different.  We had hoped

23  that we would have a committee formed by this time, but the

24  reality is due to circumstances outside of our control it has

25  not yet happened.

1          THE COURT:  Okay.  I also noticed the Trustee also

2  objected to a consolidated creditor matrix on similar grounds

3  on the redaction of the creditor information, I believe.

4          MS. SARKESSIAN:  Your Honor, that was the motion I

5  was talking about.

6          THE COURT:  Oh, okay.

7          MS. SARKESSIAN:  So there was two motions, seal

8  motions; one of them relates to the

9  indemnification/exculpation motion and I will allow the

10  debtor to address that, but understanding, based on

11  discussions as well as the agenda, is that they are agreeing

12  for that to be unsealed.

13          THE COURT:  Okay.

14          MS. SARKESSIAN:  With respect to the other motion

15  relates to the creditor matrix, schedules and statements, top

16  50 list, and pretty much any document in the case that would

17  have names or addresses of creditors or customer/creditors.

18          THE COURT:  Okay.

19          MS. SARKESSIAN:  So that is the motion I was

20  discussing that we did file an objection to.

21          THE COURT:  Okay.

22          MS. SARKESSIAN:  We have not technically filed an

23  objection to the other motion because they said, effectively,

24  they're -- I don't know if withdrawal is the right word, but

25  they're not going to pursue that relief on a final basis.

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Chapter 11
                                .
AMERICAN HOME MORTGAGE          .    Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware      .    (Jointly Administered)
corporation, *et al.*,          .
                                .    Oct. 31, 2007 (10:09 a.m.)
            Debtors.            .    (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

INDEX

|  | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| DEBTORS' EVIDENCE | | | | |
| WITNESS: | | | | |
| Steven Dickman | 28 | 39 40 | | |

 1    doesn't take a ton of time.  So - and I'm sensitive to this

 2    issue and I know the Office of the United States Trustee is

 3    sensitive, and I understand their position in connection with

 4    shall meaning shall, and I think that's true, but I think in

 5    order for - I would draw a bit of a distinction between what

 6    Judge Walsh and Judge Balick have appeared to rule which is

 7    simply that it's a best interest test.  I don't think that's

 8    correct.  The best interest is in ©)(1).  It's not in ©)(2).

 9    I think the financial criteria are important, and obviously,

10    they're met in this case, but that's only one piece of the

11    puzzle, and the other piece of the puzzle is that there has

12    to be an investigation to perform that's appropriate.  I

13    think the cases cited in the <u>Colliers</u> treatise discuss that.

14    I think that's a more nuance approach than sort of saying it

15    is what it is, and if you cry "examiner" in a crowded case,

16    you get one.  In this case, reading the motion carefully, I

17    really didn't see a request for any investigation.  There was

18    a complaint about practices.  A 2004 request for information

19    about individual loan files that we've already discussed, but

20    no real articulation of what it was that the movants wanted

21    to be investigated by an examiner, and even if one were to

22    sort of assume, okay, they want someone to examine the

23    debtors' practices in connection with loan origination and

24    servicing that may be violations of state or federal law, I

25    don't think that at this time giving someone sort of carte

1   blanche to look into that issue will be appropriate.  Again,

2   the Committee is extremely involved in this case.  There are

3   ongoing investigations, possibly by other governmental

4   entities.  There's obviously a lot of issues going on in

5   Congress right now in connection with these types of

6   practices that allegedly the debtor participated in, so I'm

7   not - I don't think in this case there would be anything to

8   be gained by appointing an examiner and giving that examiner

9   a budget and saying, I'd like you to investigate the debtors'

10  loan origination and servicing policies in connection with

11  whether it may have violated state or federal law.  I think

12  that's asking for a $20 million report, and I'm not sure what

13  it would accomplish.  So, with regard to the temporal

14  requirement, again, I'm not - I understand there are those

15  cases.  I think it would be more appropriate to deny the

16  motion without prejudice than to sort of say, Okay, I'm

17  granting the motion, but I'm not at this point going to

18  appoint an examiner.  Again, I think that's just tantamount

19  to denying the motion.  So, I'm going to do that.  I'm going

20  to deny the motion without prejudice to be brought again if

21  new facts arise or if the status of the case changes.  And

22  just an aside, I mean, I don't know what this case ultimately

23  ends up with, whether we end up in with a liquidating plan,

24  whether we convert to 7.  I mean, I know - I'm sure there are

25  discussions that I'm very happy to not be participating in

1  that may be focused on that, but my instincts tell me that to

2  the extent there's some real issues out here, that they are

3  going to be investigated by somebody in the future, and if

4  turns out that that's not the case, I'm certainly open to

5  hearing someone ask me to appoint someone to do that on

6  behalf of the debtors' estate at the appropriate time.  All

7  right?  Are there any other issues?  I'm going to - So, I

8  think we've addressed the issues raised by - Oh, there was

9  the issue of the injunction.  I think that's very easily

10 dealt with.  You can't get an injunction by filing a motion.

11 I've said it many times before.  You have to file an

12 adversary proceeding under Rule 7001, and you need to meet

13 the criteria to get an injunction and you have to support it

14 by evidence, and without that, I'll deny that.  So I'm going

15 to deny - For the foregoing reasons, I'm going to deny all

16 three motions, and I'd ask the debtors to submit a form of

17 order, please, under certification of counsel.

18      MR. BRADY: Your Honor, we will prepare forms of

19 order for each motion.

20      THE COURT: I think that turns me to cash

21 collateral.  I don't have those papers.  I know they came

22 over yesterday in connection with the motion to shorten,

23 which I granted, but I didn't actually save them, so -

24      MR. WAITE: Your Honor, I can hand up - I have a

25 copy of the motion and a copy of the order; is that helpful

**Exhibit C**

1      UNITED STATES BANKRUPTCY COURT
       SOUTHERN DISTRICT OF NEW YORK

2

3

             .

4 IN RE:        . Case No. 02-41729
             .

5 ADELPHIA COMMUNICATIONS,  . New York, New York
             . Monday, February 6, 2006

6        Debtors.  . 5:02 p.m.
 . . . . . . . . . . . . . .

7

8    TRANSCRIPT OF HEARING ON STIPULATION/MOTION
    BEFORE THE HONORABLE ROBERT E. GERBER

9     UNITED STATES BANKRUPTCY JUDGE

10 APPEARANCES:  (On the Record)

11 For the Debtors:     Peter N. Wang, Esq.
             FOLEY & LARDNER, LLP

12             90 Park Avenue
             New York, New York 10016

13             (212) 682-7474

14 For the U.S. Trustee:   Elizabeth Austin, Esq.
             Assistant U.S. Attorney

15             OFFICE OF THE U.S. TRUSTEE
             33 Whitehall Street

16             New York, New York 10004
             (212) 510-0500

17
 (Appearances continued)

18
 Audio Operator:     Electronically Recorded

19             by Court Personnel

20 Transcription Company:  Rand Transcript Service, Inc.
             311 Cheyenne Road

21             Lafayette, New Jersey  07848
             (973) 383-6977

22
 Proceedings recorded by electronic sound recording,

23 transcript produced by transcription service.

24

25

```
 1   APPEARANCES:   (Continued)

 2

 3   For the Official Committee
     of Unsecured Creditors:        Daniel N. Zinman, Esq.
                                    KASOWITZ, BENSON, TORRES &
 4                                   FRIEDMAN, LLP
                                    1633 Broadway
 5                                  New York, New York 10010
                                    (212) 506-1700
 6

 7   For the Official Committee
     of Equity Security-Holders: Gregory A. Blue, Esq.
                                    MORGENSTERN, JACOBS & BLUE, LLC
 8                                  885 Third Avenue
                                    New York, New York 10022
 9                                  (212) 308-5858

10   For the Fee Committee:         James A. Beldner, Esq.
                                    KRONISH, LIEB, WEINER
11                                   & HELLMAN, LLP
                                    1114 Avenue of the Americas
12                                  New York, New York 10036
                                    (212) 479-6000
13

     For Boies, Schiller
14    & Flexner, LLP:               Michael L. Cook, Esq.
                                    David M. Hillman, Esq.
15                                  SCHULTE, ROTH & ZABEL, LLP
                                    919 Third Avenue
16                                  New York, New York 10022
                                    (212) 756-2000

17

18

19

20

21

22

23

24

25
```

1                        I N D E X

2

ARGUMENT                                        Page
3       By Ms. Austin                            8
        By Mr. Zinman                           24
4       By Mr. Wang                             27
        By Mr. Beldner                          31
5       By Mr. Cook                             34
        Response by Ms. Austin                  42
6
COURT DECISION                                  46

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    appointment of an examiner on a volitional basis, I would not

2    do so here.  The appointment of an examiner is sometimes very

3    useful for a bankruptcy case.  In other cases, it is not and

4    can cost the estate millions of dollars that would be better

5    spent on creditor recoveries.

6         In Refco every party with a financial stake in the

7    case opposed the appointment of an examiner, but the U.S.

8    Trustee in that region wanted one and on appeal the Sixth

9    Circuit ruled that the appointment of an examiner was

10   mandatory, notwithstanding the creditors' wishes.  The

11   examiner cost the estate about $2 million.

12        Here the amount budgeted for the examiner

13   appointment is $350,000, an amount which, while stated as a

14   cap, is an amount that I fear plainly will be reached, if not

15   also sought to be exceeded.  That $350,000, even if not

16   enlarged further, may exceed by tens of thousands or hundreds

17   of thousands of dollars the incremental amount, if any, that

18   use of Amici and Echelon cost the debtors' estates.

19        BSF has a pending fee application that will be

20   opposed by a number of parties in this case who could conduct

21   the necessary discovery at least as well as an examiner.

22   They probably could do it better and cheaper, as they know

23   this case very well.  They have an economic interest in

24   spending their time wisely.  They have a head start on

25   knowing what BSF was asked to do and did and what disclosures

1   it made and didn't make and have an understanding from three-

2   and-a-half years of experience what the dynamics of this case

3   are.  And at least some have indicated that they will wish to

4   actively participate in the investigation, whether or not an

5   examiner is appointed and it is fair to assume that they will

6   feel the same when it comes to opposing the BSF fee

7   application.

8          Also, do not believe that any of the debtors, the

9   creditors' committee, or the fee committee are conflicted in

10  a way that would necessitate the appointment of an examiner

11  to get out all of the true facts.  They have all of the

12  incentive they need to litigate vigorously against BSF and

13  BSF has all the incentive it needs to litigate vigorously to

14  clear its name.  That is what the adversary process is all

15  about.

16         We do not have a situation here, as in <u>Leslie Fay</u>,

17  where a party would be investigating itself.  If the debtors,

18  creditors' committee, and fee committee don't do the

19  necessary inquiry, I feel comfortable that BSF will.

20         At least here we've already had a contested fee

21  application before the Court.  It is not clear to me what

22  purpose the appointment of an examiner would accomplish,

23  other than taking depositions that the parties in this case

24  could take themselves and will want to sit in on anyway.

25  Examiners' views are not infrequently welcomed by courts, but

1   they are not a substitute for the decisions of courts,

2   especially on matters of law or on matters where parties

3   might have different views that would be the grist for a

4   judicial decision.

5          Federal Rule of Bankruptcy Procedure 9031, captioned

6   "Masters not Authorized," expressly provides that FRCP 53

7   does not apply in cases under the code and, hence, prohibits

8   the appointment by bankruptcy judges of special masters.

9   Legal decisions and factual findings on any disputed facts

10  would be the province of the Court and not an examiner.

11         If, as I would examine -- if, as I would expect, one

12  or more of the creditors' committee, the fee committee, the

13  debtors, the U.S. Trustee's office, or BSF wish to weigh in

14  on the allowability of BSF's fees, after we know all of the

15  facts, it's hard for me to envision a scenario under which I

16  would deny any of them the opportunity to do so.  And such

17  efforts on their part to engage in the rights that they

18  blatantly have in that regard would overlap with the

19  examiner's inquiry if it were to have been authorized in

20  material respects.

21         Frankly, folks, the history of examiners in this

22  district and elsewhere has made me wary of appointing them

23  when other means could skin the cat.  This case already has

24  enough fiduciaries.  It does not need to spend another

25  $350,000 to accomplish ends that already can be easily

1  addressed in what I believe to be a much more efficient and

2  economical manner.

3      As I have said in other contexts, litigation needs

4  and concerns cannot be swept under the rug, but they need to

5  be addressed in the most efficient and thoughtful way

6  possible.  For the foregoing reasons, approval of the

7  stipulation is denied and dealing with stipulation to the

8  motion for the appointment of an examiner to investigate the

9  subject matter stated therein, the motion is denied.

10     In the alternative, the creditors' committee and the

11  debtors request authority to investigate by means of Rule

12  2004 or through the discovery that's granted in connection

13  with any contested manner as BSF's spending fee application

14  plainly is.  That authority is granted to the extent it is

15  necessary.  All interested parties already have the right to

16  engage in any needed deposition or document discovery under

17  Bankruptcy Rules 9014 at Paragraph 8 in Footnote 2 of my Case

18  Management Order No. 3, entered back on July 26th, 2004.

19     BSF cross-motion for appointment of a mediator is

20  denied without prejudice.  It is premature to talk about the

21  resolution of the fee issues, the disclosure issues, or any

22  related issues until the parties in this case know all of the

23  facts and I know all of the facts.

24     I'm so ordering the record.  Any party who wants a

25  written order from which it can take an appeal and move for

**Exhibit D**

1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 08-12229 (MFW)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


WASHINGTON MUTUAL, INC., et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        824 North Market Street

        Wilmington, Delaware


        May 5, 2010

        10:30 AM


B E F O R E:

HON. MARY F. WALRATH

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  BRANDON MCCARTHY

2

1

2    HEARING re Debtors' Objection to Proof of Claim Filed by Mellon

3    Investor Services LLC

4

5    HEARING re Objection to Proof of Claim No. 201 Filed by Scott

6    **A. Burr**

7

8    HEARING re Debtors' Twenty-Fourth Omnibus (Substantive

9    Objection to Claims

10

11    HEARING re Debtors' Twenty-Fifth Omnibus (Non-Substantive)

12    Objection to Claims

13

14    HEARING re Debtors' (Non-Substantive) Objection to Claim Number

15    574 Filed by Frank Whitemaine

16

17    HEARING re Debtors' Thirty-First Omnibus (Non-Substantive)

18    Objection to Claims

19

20    HEARING re Supplemental Motion of Debtors Pursuant to Section

21    362 of the Bankruptcy Code for Order Modifying Automatic Stay

22    to Allow Advancement Under Insurance Policies

23

24    HEARING re Debtors' Objection to Proof of Claim Filed by

25    Egencia LLC

1

2    HEARING re Debtors' Twenty-Eighth Omnibus (Substantive)

3    Objection to Claims Filed by Claimants Gregory Bushansky, Dana

4    Marra, Marina Ware, Ontario Teachers' Pension Plan Board and

5    Brockton Contributory Retirement System (Claim Nos. 999, 1001

6    1002, 1003, 2759, 2761 and 2763) Pursuant to Section 510(b) of

7    the Bankruptcy Code

8

9    HEARING re Debtors' Thirtieth Omnibus (Substantive) Objection

10   to Claims Filed by Claimants Walden Management Co. Pension

11   Plan, Metzler Investment and South Ferry LP #2 (Claim Nos.

12   2808, 2809, 3087 and 3448) Pursuant to Section 510(b) of the

13   Bankruptcy Code

14

15   HEARING re Debtors' Twenty-First Omnibus (Substantive)

16   Objection to Claims

17

18   HEARING re Debtors' Twenty-Sixth Omnibus (Substantive)

19   Objection to Proofs of Claim of Jay Agnes (Claim No. 2588) and

20   R.S. Bassman (Claim No. 3666)

21

22   HEARING re Debtors' Twenty-Seventh Omnibus (Substantive)

23   Objection to Claims (Claim Nos. 2889, 2890, 2891, 2893, 2894,

24   2896, 2897, 2898 and 2900)

25

4

1

2    HEARING re Debtors' Objection to Proof of Claim Filed by

3    Michael Scott Blomquist (Claim No. 3220)

4

5    HEARING re Application of the Debtors Pursuant to Sections

6    327(a) and 328(a) of the Bankruptcy Rule 2014(a) and Local Rule

7    2014-1 for Order Authorizing the Retention of Blackstone

8    Advisory Partners L.P. as Financial Advisor Nunc Pro Tunc to

9    April 9, 2010

10

11   HEARING re Motion and Supporting Memorandum of the Official

12   Committee of Equity Security Holders for the Appointment of an

13   Examiner Pursuant to Section 1104(c) of the Bankruptcy Code

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

5

 1

 2   A P P E A R A N C E S:

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for the Debtors

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  BRIAN S. ROSEN, ESQ.

 9        ALEXANDER NG, ESQ.

10        KELLY DIBLASI, ESQ

11

12   WEIL, GOTSHAL & MANGES LLP

13        Attorneys for the Debtors

14        1300 Eye Street, NW

15        Suite 900

16        Washington, DC 20005

17

18   BY:  ALEX O. LEVINE, ESQ.

19

20

21

22

23

24

25

6

1

2   RICHARDS, LAYTON & FINGER, P.A.

3        Attorneys for the Debtors

4        One Rodney Square

5        920 North King Street

6        Wilmington, DE 19801

7

8   BY:  CHUN I. JANG, ESQ.

9        MARK D. COLLINS, ESQ.

10

11   ELLIOTT GREENLEAF

12        Special Counsel to the Debtors

13        1105 Market Street

14        Suite 1700

15        Wilmington, DE 19801

16

17   BY:  ANDREW G. MIRISIS, ESQ.

18

19

20

21

22

23

24

25

```
 1

 2    AKIN GUMP STRAUSS HAUER & FELD LLP

 3         Attorneys for the Official Committee of Unsecured

 4          Creditors

 5         One Bryant Park

 6         New York, NY 10036

 7

 8    BY:   ROBERT A. JOHNSON, ESQ.

 9          FRED S. HODARA, ESQ.

10          ROBERT J. BOLLER, ESQ. (TELEPHONICALLY)

11

12    AKIN GUMP STRAUSS HAUER & FELD LLP

13         Attorneys for the Official Committee of Unsecured

14          Creditors

15         2029 Century Park East

16         Suite 2400

17         Los Angeles, CA 90067

18

19    BY:   PETER J. GURFEIN, ESQ.

20          BRIAN M. ROTHSCHILD, ESQ. (TELEPHONICALLY)

21          DAVID P. SIMONDS, ESQ. (TELEPHONICALLY)

22

23

24

25
```

1

2    AKIN GUMP STRAUSS HAUER & FELD LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         Robert S. Strauss Building

6         1333 New Hampshire Avenue, N.W.

7         Washington, DC 20036-1564

8

9    BY:  SCOTT L. ALBERINO, ESQ. (TELEPHONICALLY)

10

11   PEPPER HAMILTON LLP

12        Attorneys for the Official Committee of Unsecured

13         Creditors

14        Hercules Plaza

15        1313 Market Street

16        Suite 5100

17        Wilmington, DE 19899

18

19   BY:  DAVID B. STRATTON, ESQ.

20

21

22

23

24

25

9

 1

 2    ASHBY & GEDDES, P.A.

 3          Attorneys for the Equity Committee

 4          500 Delaware Avenue

 5          Wilmington, DE 19899

 6

 7    BY:  GREGORY ALAN TAYLOR, ESQ.

 8

 9    BROWN RUDNICK LLP

10          Attorneys for the Ad Hoc Group of Trust Preferred Holders

11          One Financial Center

12          Boston, MA 02111

13

14    BY:  JEREMY B. COFFEY, ESQ.

15

16    DLA PIPER

17          Attorneys for FDIC, Receiver

18          1251 Avenue of the Americas

19          New York, NY 10020

20

21    BY:  JOHN J. CLARKE, JR., ESQ.

22          THOMAS CALIFANO, ESQ.

23

24

25

1

2    LANDIS RATH & COBB LLP

3         Attorneys for JPMorgan Chase

4         919 Market Street, Suite 1800

5         Wilmington, DE 19899

6

7    BY:  ADAM LANDIS, ESQ.

8

9    LOWENSTEIN SANDLER PC

10        Attorneys for Plaintiff, Ontario Teachers' Pension Plan

11        65 Livingston Avenue

12        Roseland, NJ 07068

13

14   BY:  MICHAEL s. ETKIN, ESQ.

15

16   SULLIVAN & CROMWELL LLP

17        Attorneys for JPMorgan Chase

18        125 Broad Street

19        New York, NY 10004

20

21   BY:  STACEY R. FRIEDMAN, ESQ.

22        JOSHUA J. FRITSCH, ESQ. (TELEPHONICALLY)

23

24

25

11

1

2    SULLIVAN & CROMWELL LLP

3         Attorneys for JPMorgan Chase

4         1888 Century Park East

5         Los Angeles, CA 90067

6

7    BY:  ROBERT A. SACKS, ESQ.

8

9    SUSMAN GODFREY LLP

10        Attorneys for the Equity Committee

11        Suite 3800

12        1201 Third Avenue

13        Seattle, WA 98101

14

15   BY:  JUSTIN A. NELSON, ESQ.

16

17   SUSMAN GODFREY LLP

18        Attorneys for the Equity Committee

19        654 Madison Avenue

20        5th Floor

21        New York, NY 10065

22

23   BY:  SETH ARD, ESQ.

24

25

12

WHITE & CASE LLP

    Attorneys for the Committee of Bondholders

    Wachovia Financial Center

    200 South Biscayne Boulevard

    Suite 4900

    Miami, FL 33131

BY:  THOMAS E. LAURIA, ESQ.

WILMER CUTLER PICKERING HALE & DORR

    Attorneys for the Bank Bondholders

    1875 Pennsylvania Avenue, NW

    Washington, DC 20006

BY:  NANCY L. MANZER, ESQ.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

    Attorneys for FDIC, Receiver

    The Brandywine Building

    1000 West Street, 17th Floor

    Wilmington, DE 19801

BY:  M. BLAKE CLEARY, ESQ.

13

```
 1
 2    U.S. DEPARTMENT OF JUSTICE
 3         Office of the United States Trustee
 4         844 King Street
 5         Suite 2207
 6         Wilmington, DE 19801
 7
 8    BY:  JOSEPH MCMAHON, ESQ.
 9
10    ARENT FOX LLP
11         Attorneys for Creditor, Wilmington Trust
12         1050 Connecticut Avenue, NW
13         Washington, DC 20036
14
15    BY:  JEFFREY N. ROTHLEDER, ESQ. (TELEPHONICALLY)
16
17    BINGHAM MCCUTCHEN LLP
18         Attorneys for McKee Nelson
19         2020 K Street NW
20         Washington, DC 20006
21
22    BY:  KEVIN OTERO, ESQ. (TELEPHONICALLY)
23
24
25
```

1

2    BRACEWELL & GIULIANI LLP

3         Attorneys for the WMB Noteholder Group

4         225 Asylum Street

5         Suite 2600

6         Hartford, CT 06103

7

8    BY:  EVAN D. FLASCHEN, ESQ. (TELEPHONICALLY)

9         KATHERINE L. LINDSAY, ESQ. (TELEPHONICALLY)

10

11   DAVIS WRIGHT TREMAINE LLP

12        Interested Party

13        1201 Third Avenue

14        Suite 2200

15        Seattle, WA 98101

16

17   BY:  STEVEN CAPLOW, ESQ. (TELEPHONICALLY)

18

19   FOX, HEFTER, SWIBEL, LEVIN & CARROLL, LLP

20        Attorneys for Creditor, Old Republic/Zurich

21        200 West Madison Street

22        Suite 3000

23        Chicago, IL 60606

24

25   BY:  MARGARET M. ANDERSON, ESQ. (TELEPHONICALLY)

1

2    GIBSON DUNN & CRUTCHER

3        Interested Party

4        3161 Michelson Drive

5        Irvine, CA 92612

6

7    BY:  KENNETH A. GLOWACKI JR., ESQ. (TELEPHONICALLY)

8

9    LOEB & LOEB LLP

10        Attorneys for Creditor, Wells Fargo, N.A.

11        345 Park Avenue

12        New York, NY 10154

13

14    BY:  WALTER H. CURCHACK, ESQ. (TELEPHONICALLY)

15        VADIM J. RUBENSTEIN, ESQ. (TELEPHONICALLY)

16

17    MILLER & CHEVALIER

18        Attorneys for Shearman & Sterling

19        655 Fifteenth Street, NW

20        Suite 900

21        Washington, DC 20005

22

23    BY:  STEVEN R. DIXON, ESQ. (TELEPHONICALLY)

24

25

16

MUNGER, TOLLES & OLSON LLP

     Interested Party

     355 South Grand Avenue

     35th Floor

     Los Angeles CA 90071


BY:  THOMAS B. WALPER, ESQ. (TELEPHONICALLY)


PATTERSON BELKNAP WEBB & TYLER LLP

     Attorneys for Creditor, Law Debenture Trust Company of

      New York

     1133 Avenue of the Americas

     New York, NY 10036


BY:  BRIAN P. GUINEY, ESQ. (TELEPHONICALLY)


PERKINS COIE LLP

     Interested Party

     1201 Third Avenue

     Suite 4800

     Seattle, WA 98101


BY:  BRUCE G. MACINTYRE, ESQ. (TELEPHONICALLY)

17

PILLSBURY WINTHROP SHAW PITTMAN LLP

    Attorneys for Creditor, Bank of New York Mellon

    1540 Broadway

    New York, NY 10036


BY:  LEO T. CROWLEY, ESQ. (TELEPHONICALLY)

    MARGOT P. ERLICH, ESQ. (TELEPHONICALLY)


SHEARMAN & STERLING LLP

    801 Pennsylvania Avenue, NW

    Suite 900

    Washington, DC 20004


BY:  ELIZABETH PIKE, ESQ. (TELEPHONICALLY)


SIMPSON THACHER & BARTLETT LLP

    Interested Party

    425 Lexington Avenue

    New York, NY 10017


BY:  MEGHAN E. CANNELLA, ESQ. (TELEPHONICALLY)

```
 1
 2   STUTMAN TREISTER & GLATT
 3        Attorneys for Elliott Management
 4        1901 Avenue of the Stars, 12th Floor
 5        Los Angeles, CA 90067
 6
 7   BY:  K. JOHN SHAFFER, ESQ. (TELEPHONICALLY)
 8        WILLIAM L. HOLT, ESQ. (TELEPHONICALLY)
 9
10   SULLIVAN & CROMWELL LLP
11        Attorneys for JPMorgan Chase
12        1888 Century Park East
13        Los Angeles, CA 90067
14
15   BY:  ROBERT A. SACKS, ESQ. (TELEPHONICALLY)
16        HYDEE R. FELDSTEIN, ESQ. (TELEPHONICALLY)
17
18   WILMER CUTLER PICKERING HALE & DORR
19        Attorneys for the Bank Bondholders
20        1875 Pennsylvania Avenue, NW
21        Washington, DC 20006
22
23   BY:  LISA E. EWART, ESQ. (TELEPHONICALLY)
24        NANCY MANZER, ESQ. (TELEPHONICALLY)
25
```

19

ALSO APPEARING:

MICHAEL BLOMQUIST (TELEPHONICALLY)

    In Propria Persona


DAN BULLOCK (TELEPHONICALLY)

    In Propria Persona



ANNA KALENCHITS (TELEPHONICALLY)

    Interested Party

1    the other day.  And it could certainly lead to strategic

2    filings of motions for appointment of trustees just to defeat a

3    motion for appointment of an examiner.  So that is of no moment

4    to my ruling on this motion.

5         As I have recently ruled orally, so you can't really

6    rely on it, but I will follow myself.  I do believe that

7    1104(c)(2) gives the Court some discretion, even if the debt

8    level is reached, and the discretion is that the Court has the

9    discretion to determine what appropriate investigation of the

10    debtor should occur and that, if the Court determines that

11    there's no appropriate investigation that needs to be

12    conducted, the Court has the discretion to deny the appointment

13    of an examiner.

14         The Courts have looked at various factors in

15    determining whether an appropriate investigation is warranted.

16    They include whether that investigation, that same

17    investigation, has already been conducted by other parties.

18    They have looked at whether the appointment of an examiner will

19    increase costs and cause a delay with no corresponding benefit.

20    Of course I've looked at the timing of the motion.  I've looked

21    at whether the motion is a litigation tactic, which includes

22    the consideration of the timing, not just how soon it is in a

23    case but whether it is timed such as to evidence a litigation

24    tactic.

25         I think in this case it's a very close call.  I don't

1    find that this is a litigation tactic, although it's been

2    suggested that the shareholders are simply seeking to delay

3    things while they replace management so that they can have --

4    or, excuse me, the directors -- board of directors, so that

5    they can tank the settlement.  I'll accept their motion as

6    being -- as they state it:  an effort to have an investigation

7    conducted by an independent third party to determine whether or

8    not the plan proposed by the debtor, or this global settlement

9    referred to by the parties, is appropriate and whether,

10   instead, prosecution of those claims would result in a greater

11   recovery for the estate.

12          Notwithstanding that, reviewing the factors, I think

13   it is clear that the motion has to be denied at this point.

14   First, it is clear to me that this debtor has been investigated

15   to death.  And I'm sure that even the most experienced and

16   talented examiner that the United States Trustee could appoint

17   would not find any stone unturned.  The investigations have

18   been conducted not only by the debtor and the creditors'

19   committee, but by -- the equity committee itself has done some

20   investigation; the Office of Thrift Supervision; the FDIC; the

21   government task force, including the U.S. Attorney for the

22   Western District of Washington; the Department of Labor; the

23   Department of Justice; the FBI; the IRS; the SEC; the Attorney

24   General for the State of New York; the class action plaintiffs;

25   Congress; the U.S. Treasury; and the President's Financial

1   Fraud Task Force have all taken a look at Washington Mutual.

2   It is true that their investigations exceeded the scope of what

3   this Court need concern itself with.  They have talked about

4   systemic problems.  They have investigated possible criminal

5   actions by the parties.  In this case the Court is limited to,

6   as the equity committee suggests, the value of the estates and

7   how they will be distributed in this bankruptcy case.

8          I don't think it is fair to the creditors in this case

9   to be saddled with the cost of an investigation into systemic

10  problems, that would only benefit future parties but not

11  benefit the parties in this case.  In this case specifically,

12  the debtor and the creditors' committee have investigated the

13  specific assets owned by the debtor, or that the debtor claims

14  it owns.  The debtor has vigorously appeared in and prosecuted

15  its position in several adversaries in this case, in addition

16  to filing a claim in the FDIC receivership and prosecuting

17  claims it has in that forum.  All of that information should be

18  available to the equity committee.  And I don't want to hear

19  about obstacles being placed in their path to getting full and

20  open access to that information, whether it's documentary or

21  interviews with the debtors' management or others who have

22  conducted these investigations; and the same goes with the

23  creditors' committee, who's been actively involved in all of

24  this.

25         Again, the appointment of an examiner here really

1    would -- an examiner really would only have the task of

2    reviewing what others have already done.  I don't think there's

3    any original investigation left to be done.  So I think that's

4    just a waste of assets.

5         Secondly, I think the equity committee is fully able

6    to conduct the investigation that it seeks to have the examiner

7    conduct.  It has the benefit of Rule 2004, it has the benefit

8    of the discovery rules, because there are contested matters

9    presently and anticipated in which the equity committee could

10   fully avail itself of that discovery.  But, again, I'm strongly

11   urging the committee and the debtor to provide all the

12   information to the equity committee without testing the Court's

13   patience with discovery motions.

14        The -- again, the appointment of a third party to

15   conduct that investigation and to report to the Court its

16   conclusion is no substitute for the adversarial process extant

17   in bankruptcy court and the duty of the Court, after hearing

18   the views of the opposing parties, to make a decision as to

19   what assets the debtor owns, what the value of those assets is,

20   whether a settlement is reasonable, in resolving a conflicting

21   claim to those -- to ownership to those assets.

22        Finally, the timing of the motion.  I don't think that

23   this is a factor that I'll rely on in this case.  I think that

24   in other cases it's been evident that parties have been

25   litigating for many, many months, and only at the last minute

1  when a party thought it was going to lose did it file the

2  motion for a tactical reason.  In this case, the equity

3  committee is relatively new to this case, only since January,

4  and I don't think that the timing was meant -- is too late to

5  consider it, nor was it meant as a litigation strategy.

6       Let's see.  I don't know whether -- I'm not going to

7  accept the debtors' arguments or the committee's arguments

8  regarding delay here being a negative.  I'm not sure how

9  quickly the debtor honestly can proceed with its proposed plan

10  but, at any rate, I think there is sufficient time -- should be

11  sufficient time for the equity committee to conduct whatever

12  investigation it feels is relevant.  So I will deny the motion.

13       MR. ROSEN:  Your Honor, we have prepared a very short

14  order that says "Ordered that the motion is denied.  And it is

15  further ordered that this Court shall retain jurisdiction over

16  any and all matters arising from or related to the

17  implementation or interpretation of this order."  With that,

18  may I approach the bench?

19       THE COURT:  You may.  All right, I'll enter that

20  order.

21       MR. ROSEN:  Thank you.  That concludes this morning's

22  agenda.

23       THE COURT:  Well, before we conclude, where do we

24  stand on the 2019?  Did you send out a notice of a hearing on

25  that?

**Exhibit E**

<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                      .  Chapter 11
                                 .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,   .
                                 .
 5                               .  Courtroom No. 5
                                 .  824 Market Street
 6             Debtors.          .  Wilmington, Delaware 19801
                                 .
 7                               .  Wednesday, January 11, 2023
     . . . . . . . . . . . . . . .  9:00 a.m.
 8

 9                         TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE JOHN T. DORSEY
10              CHIEF UNITED STATES BANKRUPTCY JUDGE

     APPEARANCES:
11

12   For the Debtor:          Adam Landis, Esquire
                              LANDIS RATH & COBB LLP
13                            919 Market Street, Suite 1800
                              Wilmington, Delaware 19801

14                            Andrew G. Dietderich, Esquire
                              James L. Bromley, Esquire
15                            Brian D. Glueckstein, Esquire
                              Alexa J. Kranzley, Esquire
16                            SULLIVAN & CROMWELL LLP
                              125 Broad Street
17                            New York, NY 10004

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:          Jermaine Cooper

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24

     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

APPEARANCES (CONTINUED):

For the U.S. Trustee:      Juliet Sarkessian, Esquire
                           OFFICE OF THE UNITED STATES TRUSTEE
                           844 King Street, Suite 2207
                           Lockbox 35
                           Wilmington, Delaware 19801

For the Movants:           David Finger, Esquire
                           FINGER & SLANINA, LLC
                           1201 North Orange Street
                           Wilmington, Delaware 19801

For the Committee:         Kris Hansen, Esquire
                           Erez Gilad, Esquire
                           PAUL HASTINGS LLP
                           MetLife Building
                           200 Park Avenue
                           New York, New York 10166

For the Ad Hoc
Committee of Non-US
Customers:                 Matthew Harvey, Esquire
                           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                           1201 North Market Street
                           Suite 1600
                           Wilmington, Delaware 19801

For Paradigm
Operations:                Sidney Levinson, Esquire
                           DEBEVOISE & PLIMPTON LLP
                           919 3rd Avenue
                           New York, New York 10022

1  scope of the retentions encompasses work that might be done

2  by an examiner.  So we think that argument, sort of,

3  dovetails with the examiner motion and it makes sense to have

4  them both heard at the same time.

5           Our examiner motion has been on file since

6  December the 2nd.  So, obviously, has had more than enough

7  time to address that.  We recognize that committee counsel

8  has not been -- was retained on, I believe, December the

9  20th, but nevertheless, you know, there has been a good

10 amount of time to respond.  So we would ask for that.

11          Absent in the alternative we would ask if Your

12 Honor has a date.  We too were concerned about February the

13 8th not being adequate time with it being scheduled at 1 p.m.

14 So we were wondering if Your Honor has a date between the

15 20th, January 20th and the February the 8th that would have

16 more time available then the 8th.

17          The other thing I would say is that, you know, the

18 U.S. Trustee would need to get the reply on file three days -

19 - three business days prior to the hearing.  So we would --

20 given how long parties have had our motion we would like to

21 have, at least, a week between when the objections are filed

22 and when our reply is due.

23          If, for example, Your Honor was to say put the

24 hearing on the 8th since our reply would be due February the

25 3rd we would want objections filed to January the 27th to

1  give us one week.

2          THE COURT:  Okay.  All right.  I do think I need

3  to -- the 20th doesn't work, I don't think, for this.  It's

4  too soon.  There is outstanding discovery.  If it hasn't

5  already been issued it will be issued, I assume.

6          Are you taking any discovery?

7          MS. SARKESSIAN:  I have received no discovery. I

8  am trying to imagine what possible discovery there could be

9  against the U.S. Trustee, but I have not received any.

10          We have not seen an objection, so we don't know

11  who their witnesses are.  We have no idea if they're, in fact

12  -- Your Honor, the U.S. Trustees position is that this is

13  mandatory under the code and, therefore, there is not a need

14  to have any evidence.  It's legally mandatory.  Nevertheless,

15  we understand that the parties may want to put on evidence,

16  but we don't know who they plan to put on, what they plan to

17  put on; we have no idea.

18          THE COURT:  I think you're familiar with my

19  position on the mandatory nature of the appointment of an

20  examiner.

21          MS. SARKESSIAN:  Yes, Your Honor.

22          THE COURT:  For the record, I do not believe it's

23  mandatory.

24          MS. SARKESSIAN:  Yes.

25          THE COURT:  Let's do this: I think the 8th -- I

1   want to make sure we have a full day. I am going to

2   reschedule this for February 6th which is Monday of that

3   week.  We will start at 9:30 a.m. The debtors and the

4   committee's responses will be due by the 25th.  Then the

5   Trustee will have until the 1st.

6           So you have a week, Ms. Sarkessian, for your

7   reply.

8           MS. SARKESSIAN:  Yes, Your Honor.  Thank you.

9           THE COURT:  Then we will have the hearing on the

10  6th.  If there is a -- pretrial orders are always helpful for

11  me.  So if there is -- if we're going to have an evidentiary

12  hearing on the 6th let's have a pretrial order by close of

13  business on the 3rd.  So 5 p.m. on the 3rd.

14          Mr. Bromley and Mr. Hansen, one, if you are going

15  to take discovery of the U.S. Trustee, please, do that

16  immediately so that Ms. Sarkessian knows that she needs to do

17  some discovery work.

18          Ms. Sarkessian, in light of my view on the

19  mandatory nature of the appointment of an examiner I don't

20  know if that now opens up for you your desire to take

21  discovery of the debtors, but if you do you should do that,

22  obviously, as soon as possible.

23          MS. SARKESSIAN:  Understood, Your Honor.

24          THE COURT:  Did I miss anything?  Did I cover all

25  of the issues?  Do I have all of the dates that we need for

**Exhibit F**

1                  UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF DELAWARE

2

3                          .  Chapter 11
IN RE:                   .

4                          .  Case No. 20-12836 (JTD)
CRED INC., *et al.*,        .

5                          .  Courtroom No. 5
                          .  824 North Market Street

6                          .  Wilmington, Delaware 19801
                          .

7                Debtors.   .  December 18, 2020
. . . . . . . . . . . . . . . . .  9:30 A.M.

8           TRANSCRIPT OF TELEPHONIC SECOND DAY HEARING

9            BEFORE THE HONORABLE JOHN T. DORSEY
               UNITED STATES BANKRUPTCY JUDGE

10

11  TELEPHONIC APPEARANCES:

12  For the Debtors:       Scott Cousins, Esquire
                      COUSINS LAW LLC

13                      Brandywine Plaza West
                      1521 Concord Pike, Suite 301

14                      Wilmington, Delaware 19803

15                      - and -

16                      James Grogan, Esquire
                      Mack Wilson, Esquire

17                      PAUL HASTINGS LLP
                      600 Travis Street, Fifty-Eight Floor

18                      Houston, Texas 77002

19
  Audio Operator:        Jason Spencer

20
  Transcription Company:  Reliable

21                      1007 N. Orange Street
                      Wilmington, Delaware 19801

22                      (302)654-8080
                      Email: gmatthews@reliable-co.com

23

24  Proceedings recorded by electronic sound recording, transcript
  produced by transcription service.

25

```
1    TELEPHONIC APPEARANCES (Continued):

2    For the Debtors:         G. Alexander Bongartz, Esquire
                              Derek Cash, Esquire
3                             PAUL HASTINGS LLP
                              200 Park Avenue
4                             New York, New York 10166

5                             - and -

6                             Austin Prouty, Esquire
7                             PAUL HASTINGS LLP
                              1117 S. California Avenue
8                             Palo Alto, California 94304

9    For Jaime Shiller:       David Silver, Esquire
                              SILVER MILLER
10                            11780 W Sample Road
                              Coral Springs, Florida 33065
11

12   For the U.S. Trustee:    Hannah McCollum, Esquire
                              Joseph McMahon, Jr., Esquire
13                            John Schanne, Esquire
                              UNITED STATES DEPARTMENT OF JUSTICE
14                            OFFICE OF THE UNITED STATES TRUSTEE
                              844 King Street, Suite 2207
15                            Lock Box 35
                              Wilmington, Delaware 19801
16

17   For UpgradeYa:           Matthew Pierce, Esquire
                              LANDIS, RATH & COBB LLP
18                            919 Market Street, Suite 1800
                              Wilmington, Delaware 19801
19

20   For Krzysztof Majdak,    Joseph Sarachek, Esquire
     and Philippe Godineau:   THE SARACHEK LAW FIRM
                              101 Park Avenue, 27th Floor
21                            New York, New York 10178

22   For the Committee:       Joseph Evans, Esquire
                              Timothy Walsh, Esquire
23                            Darren Azman, Esquire
                              MCDERMOTT WILL & EMERY LLP
24                            340 Madison Avenue
                              New York, New York 10173
25
```

1  TELEPHONIC APPEARANCES (Continued):

2  For Thomas Arehart:        Hollace Cohen, Esquire
                              Carl Neff, Esquire
3                             FISHERBROYLES LLP
                              445 Park Avenue, Ninth Floor
4                             New York, New York 10022

5
   For Maple Partners LLC:    Lucian Murley, Esquire
6                             SAUL EWING ARNSTEIN & LEHR LLP
                              1201 North Market Street, Suite 2300
7                             Wilmington, Delaware 19801

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MATTERS GOING FORWARD:

**Cash Management.**  Motion to Debtors to (A) Continue to Operate their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions; (II) Granting Administrative Expense Status to Post Petition Intercompany Balances; (III) Waiving Requirements of Section 345(b) of the Bankruptcy Code; and (IV) Granting Related Relief [Docket No. 7, 11/08/20]

**Ruling:  Order Entered**

**Employee Wages.**  Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Employee Obligations and (B) Continue Employee Benefit Programs, and (II) Granting Related Relief [Docket No. 11, 11/08/20]

**Ruling:  Order Entered**

**Motion to Extend.**  Debtors' Motion for Entry of Order Extending Time to File Schedules and Statements of Financial Affairs [Docket No. 67, 11/18/20]

**Ruling:  Order Entered**

**Bar Date Motion.**  Motion of Debtors, Pursuant to Bankruptcy Code Sections 105(a), 502, and 503 and Bankruptcy Rule 2002, for Entry of an Order (I) Fixing Deadline for Filing Proofs of Claim and (II) Approving Form and Manner of Notice Thereof [Docket No. 52, 11/17/20]

**Ruling:  128**

**Bid Procedures Motion.**  Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures, (B) Scheduling an Auction and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Assumption and Assignment Procedures and Form and Manner of Notice Thereof; and (II) Authorizing (A) the Sale(s), Free and Clear of all Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket No. 65, 11/18/20]

**Ruling:  Order Entered**

**MACCO Retention Application.**  Debtors' Application for Entry of an Order Authorizing Employment and Retention of MACCO Restructuring Group LLC as Financial Advisor for Debtors, Effective Nunc Pro Tunc to Petition Date [Docket No. 57, 11/17/20]

**Ruling:  Order Entered**

**Teneo Retention Application.**  Debtors' Application for Entry of an Order Authorizing Employment and Retention of Teneo Capital LLC as Investment Banker for Debtors, Effective Nunc Pro Tunc to November 16, 2020 [Docket No. 63, 11/18/20]

**Ruling:  Order Entered**

**Paul Hastings Retention Application.**  Debtors' Application for Entry of an Order Authorizing Employment and Retention of Paul Hastings LLP as Counsel to Debtors, Effective as of Petition Date [Docket No. 64, 11/18/20]

**Ruling:  Taken Under Advisement**

**Sonoran Capital Retention Application.**  Debtors' Motion for Entry of an Order (I) Authorizing Employment and Retention of Sonoran Capital Advisors, LLC to Provide Debtors a Chief Restructuring Officers and Certain Additional Personnel and (II) Designating Matthew Foster as Debtors' Chief Restructuring Officer [Docket No. 95, 12/1/20]

**Ruling:  Taken Under Advisement**

**Creditor List.**  Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to File a Consolidated List of Debtors' 30 Largest Unsecured Creditors, (II) Authorizing Debtors to Serve Certain Parties by E-Mail, (III) Authorizing Debtors to Redact or Withhold Publication of Certain Personal Identification Information, and (IV) Granting Related Relief [Docket No. 6, 11/08/20]

**Motion to Seal.**  Motion to File Under Seal Certain Confidential Information Pursuant to Order (I) Authorizing Debtors to File A Consolidated List of Debtors 30 Largest Unsecured Creditors, (II) Authorizing Debtors to Serve Certain Parties by E-Mail, (III) Authorizing Debtors to Redact or Withhold Publication of Certain Personal Identification Information On An Interim Basis, And (IV) Granting Related Relief [Docket No. 61, 11/18/20]

**Ruling:  Orders Entered**

**Motion to Convert.**  Motion of Krzysztof Majdak and Philippe Godineau for Entry of an Order Pursuant to 11 U.S.C. § 1112(b) (I) Dismissing the Cases; (II) Converting the Cases to a Chapter 7 Liquidation; or (III) Appointing a Chapter 11 Trustee [Docket No. 62, 11/18/20]

**Ruling:  94**

DEBTORS' WITNESS(s)

**CHRISTOPHER WU**

      Direct examination by Mr. Grogan      10

      Cross-examination by Mr. McMahon      15

      Cross-examination by Mr. Sarachek      15

      Cross-examination by Mr. Peirce      22

      Redirect examination by Mr. Grogan      24


**PABLO BONJOUR**

      Direct examination by Mr. Grogan      26

      Cross-examination by Mr. McMahon      36

      Cross-examination by Mr. Sarachek      41

      Cross-examination by Mr. Pierce      43

      Cross-examination by Mr. Silver      51

      Redirect examination by Mr. Grogan      54

**MATTHEW FOSTER**

      Direct examination by Mr. Grogan      57

      Cross-examination by Mr. McMahon      61

      Cross-examination by Mr. Pierce      63

      Redirect examination by Mr. Grogan      65

      Redirect examination by Mr. Cousins      66


| EXHIBITS: | ID | Rec'd |
|---|---|---|
| Declaration of Daniel Schatt | | 10 |
| Declaration of Christopher Wu | | 15 |

1   Declaration of Pablo Bonjour                        35

2   Debtor's Exhibit 38 - Thirteen Week Cash Forecast   41

3   Declaration of Matthew Foster                       56

4   Declaration of Joshua Segall                       106

5   Declaration of Mark Friedler                       106

6   Trustee's Exhibit - Alexander Motion to Dismiss    144
                     Alexander Complaint

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          And four, the benefits derived by the appointment

2 of a trustee, balanced against the costs of that appointment.

3          See In Re Reserves Resorts Spa and Country Club,

4 LLC, Case Number 12-13316, nineteen -- a 2013 decision by

5 Judge Gross.

6          The evidence presented was that -- the evidence

7 presented before me in this case raises serious questions

8 about the conduct of the debtors' affairs pre-petition.

9 However, the debtor has removed the pre-petition management

10 of the company and replaced them with independent

11 professionals, including an independent member of the board

12 and the only board member, Mr. Lyons, having heard -- and

13 appointed Mr. Lyons as the only board member.

14          Having heard the testimony of Mr. Lyons and the

15 other professionals retained to run the debtors and market

16 the company for sale, I am convinced of their independence.

17 Although retained initially by prior management and equity

18 holders, no evidence was established to question that they

19 are, indeed, independent.  Moreover, the Official Committee

20 of Unsecured Creditors appointed in these cases have entered

21 into a plan support agreement setting out a valid proposal

22 for moving these cases forward.

23          Certain creditors and the U.S. Trustee, however,

24 still express reservations about allowing these independent

25 professionals to conduct the debtors' affairs, as they move

1  forward with a proposed plan.  I disagree with those

2  concerns.

3          However, I want to be perfectly clear that, if the

4  two equity security holders take any actions to either

5  replace Mr. Lyons as the independent director or try to

6  dilute his control of the board by appointing additional

7  members of the board without first seeking permission from

8  the Court, I will immediate appoint a Chapter 11 Trustee.

9  Therefore, for these reasons, I find that it would be

10 inappropriate at this time to appoint a Chapter 11 Trustee.

11         As for the appointment of an examiner, this is a

12 more difficult question.  I disagree with the UST's position

13 that the appointment of a -- of an examiner is mandatory.

14 The language of -- the language of 1104(c) provides the Court

15 with some discretion.  The Court -- it says that the Court

16 shall appoint an examiner to conduct such an investigation if

17 the -- of the debtor as is appropriate.  So the question

18 becomes:  Is it appropriate in this case?

19         The creditors' committee has taken the position

20 that they are conducting an investigation, although I will

21 note that they have just been appointed, and any

22 investigation must be in its very early stages of this case.

23 I'm also mindful of the fact that the -- some of the

24 creditors of the company are distrustful of the situation and

25 have concerns about the conduct of the previous management of

1  this company.

2          Therefore, I'm going to agree with Judge Glenn in

3  In Re Residential Capital, LLC, 474 B.R. 112, 119-120

4  (S.D.N.Y. 2012), in which he recognized that, quote:

5          "The only dispute as to whether the creditors'

6  committee should be permitted to conduct an investigation

7  without an examiner being appointment" --

8          The creditors' committee is ably represented in

9  these cases and no party questions the creditors' committee's

10  professionals' ability to competently and expeditiously

11  complete an investigation.  Nonetheless, Judge Glenn

12  determined in that case that appointment of an examiner was

13  appropriate, and I will do the same here.  I think

14  appointment of an examiner to conduct an investigation of the

15  pre-petition conduct of the debtors is appropriate.

16          And therefore, I will enter an order requiring

17  that that be done.  The parties should confer and submit an

18  appropriate form of order.

19          And in the form of order, I want to make clear, I

20  do not want any duplication of effort.  Since I'm appointing

21  an examiner to conduct an investigation, there's no need for

22  the creditors' committee to conduct a parallel investigation.

23  So I would not approve any fees associated with the

24  creditors' committee conducting that investigation.

25          Are there any questions?

**Exhibit G**

1

<pre>
 1                    unitUNITED STATES BANKRUPTCY COURT
                             DISTRICT OF DELAWARE
 2

 3                                      .  Chapter 11
        IN RE:                          .
 4                                      .  Case No. 18-10814 (CSS)
        EV ENERGY PARTNERS, et al.,     .
 5                                      .  Courtroom No. 6
                                        .  824 North Market Street
 6                                      .  Wilmington, Delaware 19801
                                        .
 7              Debtors.                .  May 16, 2018
        . . . . . . . . . . . . . . . . .  10:00 A.M.
 8

 9                          TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
10                     UNITED STATES BANKRUPTCY JUDGE

11      APPEARANCES:

12      For the Debtors:         Brad Weiland, Esquire
                                 Jeffrey Zeiger, Esquire
13                               William Arnault, Esquire
                                 Casey McGushin, Esquire
14                               Travis Bayer, Esquire
                                 KIRKLAND & ELLIS
15                               300 North LaSalle
                                 Chicago, Illinois 60654
16
                                 - and -
17
                                 Laura Davis Jones, Esquire
18                               PACHULSKI STANG ZIEHL & JONES
                                 919 North Market Street
19                               Wilmington, Delaware 19801

20      Audio Operator:          Al Lugano

21      Transcription Company:   Reliable
                                 1007 N. Orange Street
22                               Wilmington, Delaware 19801
                                 (302)654-8080
23                               Email:  gmatthews@reliable-co.com

24
        Proceedings recorded by electronic sound recording,
25      transcript produced by transcription service.
</pre>

1   APPEARANCES (Cont'd):

2

3   For Roger Kent:             Stuart Brown, Esquire
                                Derrick Farrell, Esquire
4                               DLA PIPER
                                1201 North Market Street
5                               Wilmington, Delaware 19801

6   For Ad Hoc Committee:       Philip Dublin, Esquire
                                AKIN GUMP
7                               One Bryant Park
                                Bank of America Tower
8                               New York, New York 10036

9   For EnerVest:               Alan Moskowitz, Esquire
                                GIBSON DUNN
10                              200 Park Avenue
                                New York, New York 10166
11

12  For U.S. Trustee:           Hannan McCollum, Esquire
                                OFFICE OF U.S. TRUSTEE
13                              844 King Street
                                Wilmington, Delaware 19801
14

15  For JPMorgan Chase          Elisha Graff, Esquire
                                SIMPSON THACHER
16                              425 Lexington Avenue
                                New York, New York 10017

17

18

19

20

21

22

23

24

25

1  priority rule, because the unsecured creditors are not

2  receiving more than they're entitled to.  And I think it was

3  definitely filed in good faith and none of the arguments,

4  numerous arguments made in support, to say it wasn't filed in

5  good faith, don't hold any water.

6          On 1126, I think the debtors are correct that they

7  did not have to solicit equity in this case because equity is

8  not receiving a distribution under the plan on account of its

9  interests, because they're not entitled to anything.  And the

10  cases that deal with class-skipping, et cetera, aren't

11  applicable, and there have been numerous cases in this

12  district and, otherwise, that have allowed just this

13  behavior.

14          What would have been accomplished by having the

15  equity be a vote here?  They probably would have voted "no."

16  Almost certainly would have voted "no," and we would have

17  been in a cram down, and we would have had a valuation

18  hearing, and they would have found to be out of the money,

19  and the absolute priority rule, with regard to equity, would

20  have been satisfied, so it would have been fair and

21  equitable, so it's just a waste of time.

22          With regard to the disclosure statement, I think,

23  frankly, there's an argument to be made that equity that's

24  not in the money doesn't have standing to object to a

25  disclosure statement, because the whole point of the

1  disclosure statement isn't to generally inform the world of

2  the facts of the case; it's to provide the investors with the

3  information they need to know how to vote.  If you don't

4  vote, a disclosure statement is really irrelevant.

5          But even throwing that aside, I still think the

6  disclosure statement contains more than enough information.

7  It's already a telephone book, for those of us who remember

8  what telephone books are, and, you know, there has to be a

9  limit on what you have to put in a disclosure statement.  I'd

10  like to see shorter confirmation orders, shorter DIP orders,

11  and shorter disclosure statements, all of which would be to

12  the benefit of society as a whole.  So, I'm not -- I think

13  the disclosure statement here is more than adequate.

14          And, you know, there's really no reason to go back

15  into transactions that occurred in 2014 and 2015 that just

16  aren't relevant to the plan that's before the voters.  This

17  is a little -- kind of all over the place, but there's a lot

18  of cover.  There's a lot I didn't mention, but in all those

19  instances and in all those arguments, I reject the equity

20  holders' position and affirm the debtors'.

21          Real quick, on appointment of the examiner -- and

22  this goes to the "there's no there there" -- you don't -- I

23  don't believe, and I've said this in numerous cases and my

24  colleagues have said it, that it's just mandatory to appoint

25  an examiner, as long as someone asks for one.  I think there

1  has to be an actual examination that needs to be done, an

2  appropriate inquiry that needs to be pursued and I think the

3  Movant in a motion to appoint an examiner has the burden of

4  proof of establishing something, some reason that it would be

5  helpful to appoint an examiner and I just -- I don't see

6  anything here whatsoever to appoint an examiner.

7        Now, all this, of course, you know, it would

8  certainly be better if there was more value here for the

9  unsecured creditors, as well as equity.  We can't -- the

10 Court is powerless to create value out of thin air, and all I

11 can do in connection with determining value is weigh the

12 evidence as it's presented to me and do the best I can.  And

13 I may be wrong, and it may be a situation here where equity

14 is entitled to more, but based on the evidence I have, I am

15 sorry to say that I don't believe they are, and that they are

16 fortunate to be getting the 5 percent that they're getting.

17       And it's interesting even though -- talking about

18 fiduciary duties -- I mean, even though all the evidence

19 indicated to the Board that this -- that equity was out of

20 the money, this Board fought very, very hard to get some

21 return to its equity holders, perhaps even breaching their

22 fiduciary duties to their creditors in the process.  But I

23 think that that speaks volumes to the integrity of the Board

24 in this situation and is another reason that it's clear to me

25 that they have acted with robust corporate governance and

**Exhibit H**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Case No. 08-10960(KG)
                                .
IDLEAIRE TECHNOLOGIES           .
CORPORATION,                    .    824 North Market Street
                                .    Wilmington, DE  19801
                                .
                                .
          Debtor.               .    June 13, 2008
. . . . . . . . . . . . . .      .    4:03 p.m.


TRANSCRIPT OF EXAMINER MOTION
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Sullivan Hazeltine Allinson, LLC
                         By:  WILLIAM D. SULLIVAN, ESQ.
                         4 East 8th Street, Suite 400
                         Wilmington, DE  19801

                         Holland & Knight, LLP
                         By:  JOHN J. MONAGHAN, ESQ.
                         10 St. James Avenue
                         Boston, MA  02116


Audio Operator:          Leslie Murin


Proceedings recorded by electronic sound recording, transcript
              produced by transcription service
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

(609) 586-2311    Fax No. (609) 587-3599

APPEARANCES (Cont'd.):

For Majority Lenders/     Akin, Gump, Strauss, Hauer & Feld,
DIP Lender:                L.L.P.
                          By:  SCOTT ALBERINO, ESQ.
                               ABID QURESCHI, ESQ.
                          1333 New Hampshire Ave, NW
                          Washington, DC  20036

                          Young Conaway Stargatt & Taylor,
                           LLP
                          By:  ROBERT S. BRADY, ESQ.
                          The Brandywine Building
                          1000 West Street
                          17th Floor
                          Wilmington, DE  19801

For the U.S. Trustee:     Office of the U.S. Trustee
                          By:  DAVID L. BUCHBINDER, ESQ.
                          J. Caleb Boggs Federal Building
                          844 King Street
                          Suite 2313
                          Lockbox 35
                          Wilmington, DE  19801

For the Committee:        Saul Ewing LLP
                          By:  MARK MINUTI, ESQ.
                               JEREMY WILLIAM RYAN, ESQ.
                          222 Delaware Avenue
                          Suite 1200
                          Wilmington, DE  19801

TELEPHONIC APPEARANCES:

For Wells Fargo Bank:     Kelley Drye & Warren LLP
                          By:  JENNIFER CHRISTIAN, ESQ.
                          101 Park Avenue
                          New York, NY  10178

                          Ropes & Gray, LLP
                          By:  ANNELIESE H. PAK, ESQ.
                          1211 Avenue of the Americas
                          New York, NY  10036-8704

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Good afternoon.

2          MS. CHRISTIAN:  Good afternoon.  We are counsel for

3   Wells Fargo Bank National Association as Indenture Trustee and

4   Collateral Agent for the debtors' 13 percent senior secured

5   notes.

6          THE COURT:  Yes.

7          MS. CHRISTIAN:  Your Honor, we join in the Majority

8   Secured Noteholder Group's objection, and respectfully request

9   that the U.S. Trustee's motion for appointment of an examiner

10  be denied or, alternatively, that the motion be adjourned until

11  a sale process is complete.

12         THE COURT:  Thank you.

13         MS. CHRISTIAN:  Thank you.

14         THE COURT:  Thank you for that.  Well, I have read

15  all of the submissions, a lot of the underlying cases.  We have

16  a very and unusually, I think, complete record in this case at

17  this point.  I even went back and read legislative history, and

18  I am going to deny the motion for the appointment of the

19  examiner.

20         I do take note of the fact that on the first day of

21  this case Mr. Buchbinder stood here all alone virtually and

22  heroically, I think, argued the points that have made the way

23  now for a Creditors' Committee to step in and continue, I don't

24  want to say necessarily the fight, but certainly, the

25  investigation, and I think the one thing that's clear is it's

                    **J&J COURT TRANSCRIBERS, INC.**

1  somewhat unclear whether or not from the cases Section

2  1104(c)(2) of the Code mandatorily requires the appointment of

3  an examiner whereas here the debts exceed $5 million.  There

4  are some persuasive decisions on both sides.

5        In fact, in one case that I read I thought that was

6  particularly well written, Judge Wedoff of the Northern

7  District of Illinois in the In re:  UAL case found that it was

8  mandatory.  But in this district the cases have almost

9  consistently held otherwise.  Judge Walsh in S.A.

10 Telecommunications found that the provision is not mandatory.

11 I don't think that it is mandatory based upon my reading of the

12 legislative history, and just as the parties have pointed out,

13 the language of the statute itself  and, particularly, the as

14 appropriate clause.

15        And I also noted that in another case we had a

16 visiting judge, Judge Newsome, it was the AC&S case in which

17 Judge Newsome, although he found that the appointment of an

18 examiner in these circumstances is mandatory, he told the

19 examiner that he wasn't going to do any work, and, in fact, I

20 think he used the expression not a penny for the examiner.

21        So I'm not about to really undertake a futile act or

22 appointment someone who is not going to be taking action,

23 because we have, I think, highly competent counsel, and now

24 I've learned a financial advisor -- highly competent financial

25 advisor representing the Creditors' Committee and doing the

1  very investigation that an examiner would be doing under these

2  circumstances, and I'm similarly persuaded by the fact that not

3  only is an examiner appropriate here, but it probably would be

4  inappropriate given the speed with which the case is

5  progressing and the work that's already been done by the

6  Committee, and the fact that negotiations are about to begin.

7  I just think the record is just full, replete with evidence

8  that the Committee's doing a very, very capable job.

9       In addition, I will also note that the Court

10 recently, at the request of the debtor, appointed counsel for

11 outside directors, and I think that may have some significance,

12 and perhaps the Court will hear from the outside directors as

13 to their views on the transactions.

14      And the bottom line is this.  We're going to have a

15 sale hearing.  It's going to be a strenuous sale hearing, I

16 suspect.  And to the extent the Committee and any other

17 interested parties have not been provided cooperation in their

18 investigation, to the extent there hasn't been a very

19 significant shopping of this, marketing of this company, all of

20 that is going to make it much more difficult for the Court to

21 approve a sale, and the Court's agenda, speaking of agendas, in

22 this case is that there be a complete record upon which the

23 Court is able to make a determination that the sale is fair.

24 That will be happening, and, obviously, the more cooperation

25 that there is with the Committee and the United States Trustee

**Exhibit I**

1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 09-11786-CSS

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


VISTEON CORPORATION, et al.


          Debtors.


- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          824 North Market Street

          5th Floor

          Wilmington, Delaware


          May 12, 2010

          10:05 AM


B E F O R E:

HON. CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE

ECR OPERATOR:  LESLIE MURIN

2

HEARING re Motion for Relief from Automatic Stay Filed by

Luther Gilford


HEARING re Seventh Omnibus Objection of Visteon Corporation and

Its Affiliated Debtors to Proofs of Claim (Duplicate Note

Claims, Duplicate Claims, and Cross-Debtor Duplicate Claims

(Substantive))


HEARING re Eighth Omnibus Objection of Visteon Corporation and

Its Affiliated Debtors to Proofs of Claim (Incorrect Debtor

Claims (Non-Substantive))


HEARING re Ninth Omnibus Objection of Visteon Corporation and

Its Affiliated Debtors to Proofs of Claim (Amended Claims and

Equity Claims (Non-Substantive))


HEARING re Tenth Omnibus Objection of Visteon Corporation and

Its Affiliated Debtors to Proofs of Claim (Claims to be

Adjusted (Substantive))


HEARING re Debtors' Objection to Proofs of Claim Filed by

Visteon UK Pension Trust Limited (as Trustee of the Visteon UK

Pension Plan) and the Board of the Pension Protection Fund

3

1

2    HEARING re Motion of the Debtors for Entry of an Interim Order

3    (i)Authorizing Use of Cash Collateral; (ii)Granting Adequate

4    Protection to Pre-Petition Secured Lenders; and (iii)Scheduling

5    Final Hearing

6

7    HEARING re Motion of Panasonic Electric Works Corporation of

8    America for an Order Compelling Debtors to Assume or Reject Its

9    Pre-Petition Contract

10

11   HEARING re Emergency Motion of the Official Committee of

12   Unsecured Creditors for Leave to Conduct Discovery Pursuant to

13   Fed. R. Bankr. P. 2004

14

15   HEARING re Motion for Order Authorizing the Official Committee

16   of Unsecured Creditors to File Emergency Motion of the Official

17   Committee of Unsecured Creditors for Leave to Conduct Discovery

18   Pursuant to Fed. R. Bankr. P. 2004 Under Seal

19

20   HEARING re Debtors' Third Motion to Extend Their Exclusive

21   Periods to File and Solicit Votes for Their Chapter 11 Plan

22

23   HEARING re Motion of the Official Committee of Unsecured

24   Creditors to Terminate Debtors' Exclusive Periods to File and

25   Solicit Votes for Their Chapter 11 Plan

4

1

2    HEARING re Motion of the Ad Hoc Equity Committee in Visteon

3    Corporation for Order Directing the Appointment of Examiner

4    Pursuant to Section 1104(c)(2) of the Bankruptcy Code

5

6    HEARING re Motion of Various Shareholders for an Order

7    Appointing an Official Committee of Equity Security Holders

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

5

A P P E A R A N C E S :

KIRKLAND & ELLIS LLP

      Attorneys for Debtors and Affiliated Debtors

      601 Lexington Avenue

      New York, NY 10022


BY:   MARC KIESELSTEIN, ESQ.


KIRKLAND & ELLIS LLP

      Attorneys for Debtors and Affiliated Debtors

      300 North LaSalle

      Chicago, IL 60654


BY:   ANDREW B. BLOOMER, ESQ.

      ANDREW R. MCGAAN, ESQ.

      JAMES J. MAZZA, JR., ESQ.


KIRKLAND & ELLIS LLP

      Attorneys for Debtors and Affiliated Debtors

      655 Fifteenth Street, N.W.

      Washington, DC 20005


BY:   JUDSON BROWN, ESQ.

1

2   PACHULSKI STANG ZIEHL & JONES LLP

3       Attorneys for Debtors and Affiliated Debtors

4       919 North Market Street

5       17th Floor

6       Wilmington, DE 19899

7

8   BY:   JAMES E. O'NEILL, ESQ.

9

10   BROWN RUDNICK LLP

11       Co-Counsel to Official Committee of Unsecured Creditors

12       Seven Times Square

13       New York, NY 10036

14

15   BY:   HOWARD STEEL, ESQ.

16       ROBERT J. STARK, ESQ.

17

18   BROWN RUDNICK LLP

19       Co-Counsel to Official Committee of Unsecured Creditors

20       City Place 1

21       185 Asylum Street

22       Hartford, CT 06103

23

24   BY:   HOWARD L. SIEGEL, ESQ.

25

7

```
 1
 2    ASHBY & GEDDES, P.A.
 3          Co-counsel to Official Committee of Unsecured Creditors
 4          500 Delaware Avenue
 5          Wilmington, DE 19899
 6
 7    BY:   WILLIAM P. BOWDEN, ESQ.
 8          GREGORY A. TAYLOR, ESQ.
 9
10    DEWEY & LEBOEUF LLP
11          Attorneys for Ad Hoc Committee of Equity Holders
12          1301 Avenue of the Americas
13          New York, NY 10019
14
15    BY:   MARTIN J. BIENENSTOCK, ESQ.
16          PHILIP M. ABELSON, ESQ.
17
18    BUCHANAN INGERSOLL & ROONEY LLP
19          Attorneys for Ad Hoc Committee of Equity Holders
20          The Brandywine Building
21          1000 West Street
22          Suite 1410
23          Wilmington, DE 19801
24
25    BY:   MARY F. CALOWAY, ESQ.
```

8

U.S. DEPARTMENT OF JUSTICE

     Office of the United States Trustee

     844 King Street

     Suite 2207

     Wilmington, DE 19801


BY:   JANE M. LEAMY, TRIAL ATTORNEY


BINGHAM MCCUTCHEN LLP

     Attorneys for Wilmington Trust FSB, as Administrative

      Agent for Pre-Petition Term Lenders

     One Federal Street

     Boston, MA 02110


BY:   P. SABIN WILLET, ESQ.

     AINSLEY G. MOLONEY, ESQ. (TELEPHONICALLY)

9

BINGHAM MCCUTCHEN LLP

      Attorneys for Wilmington Trust FSB, as Administrative

       Agent for Pre-Petition Term Lenders

      399 Park Avenue

      New York, NY 10022


BY:   AMY L. KYLE, ESQ.

      MICHAEL J. REILLY, ESQ. (TELEPHONICALLY)


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

      Attorneys for Wilmington Trust FSB, as Administrative

       Agent for Pre-Petition Term Lenders and Mason Capital

       Management LLC

      1201 North Market Street

      18th Floor

      Wilmington, DE 19899


BY:   DEREK C. ABBOTT, ESQ.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

     Attorneys for Mason Capital Management LLC

     1285 Avenue of the Americas

     New York, NY 10019


BY:  ALAN W. KORNBERG, ESQ.


CONNOLLY BOVE LODGE & HUTZ LLP

     Attorneys for Ford Motor Company

     The Nemours Building

     1007 North Orange Street

     Wilmington, DE 19899


BY:  MARC J. PHILLIPS, ESQ.

     KAREN C. BIFFERATO, ESQ.


MILLER CANFIELD PADDOCK & STONE, PLC

     Attorneys for Ford Motor Company

     150 West Jefferson

     Suite 2500

     Detroit, MI 48226


BY:  STEPHEN S. LAPLANTE, ESQ.

     (TELEPHONICALLY)

1

2    EDWARDS ANGELL PALMER & DODGE LLP

3          Attorneys for Law Debenture Trust Company of New York

4          919 North Market Street

5          Suite 1500

6          Wilmington, DE 19801

7

8    BY:   R. CRAIG MARTIN, ESQ.

9

10   DECHERT LLP

11         Attorneys for Law Debenture Trust Company of New York

12         1095 Avenue of the Americas

13         New York, NY 10036

14

15   BY:   STEVEN B. SMITH, ESQ.

16

17   FOX ROTHSCHILD LLP

18         Attorneys for Working Group of the Informal Noteholder

19          Committee

20         Citizens Bank Center

21         919 North Market Street

22         Suite 1300

23         Wilmington, DE 19899

24

25   BY:   JEFFREY M. SCHLERF, ESQ.

12

WHITE & CASE LLP

    Attorneys for Working Group of the Informal Noteholder

     Committee

    Wachovia Financial Center

    200 South Biscayne Boulevard

    Suite 4900

    Miami, FL 33131

BY:  THOMAS E. LAURIA, ESQ.

WHITE & CASE LLP

    Attorneys for Working Group of the Informal Noteholder

     Committee

    1155 Avenue of the Americas

    New York, NY 10036

BY:  J. CHRISTOPHER SHORE, ESQ.

    ANDREW C. AMBRUOSO, ESQ. (TELEPHONICALLY)

1

2     BAYARD, P.A.

3           Attorneys for Cypress Management Master, L.P., Lenado

4            Capital Advisors LLC and Goshawk Capital Corp.

5           222 Delaware Avenue

6           9th Floor

7           Wilmington, DE 19801

8

9     BY:   CHARLENE D. DAVIS, ESQ.

10          JUSTIN R. ALBERTO, ESQ.

11

12    SONNENSCHEIN NATH & ROSENTHAL LLP

13          Attorneys for Cypress Management Master, L.P. and Goshawk

14           Capital Corp.

15          1221 Avenue of the Americas

16          New York, NY 10022

17

18    BY:   ARTHUR H. RUEGGER, ESQ.

19

20

21

22

23

24

25

SONNENSCHEIN NATH & ROSENTHAL LLP

     Attorneys for Cypress Management Master, L.P. and Goshawk

      Capital Corp.

     233 South Wacker Drive

     Suite 7800

     Chicago, IL 60606


BY:   ROBERT E. RICHARDS, ESQ.


KRAMER LEVIN NAFTALIS & FRANKEL LLP

     Attorneys for Aurelius Capital Master, Ltd., ACP Master,

      Ltd. and Aurelius Convergence Master, Ltd.

     1177 Avenue of the Americas

     New York, NY 10036


BY:   THOMAS MOERS MAYER, ESQ.

     PHILIP BENTLEY, ESQ.

     STEPHEN ZIDE, ESQ.

15

1

2    YOUNG CONAWAY STARGATT & TAYLOR, LLP

3         Attorneys for Aurelius Capital Master, Ltd., ACP Master,

4          Ltd. and Aurelius Convergence Master, Ltd.

5         The Brandywine Building

6         1000 West Street

7         17th Floor

8         Wilmington, DE 19801

9

10   BY:   M. BLAKE CLEARY, ESQ.

11         MARIS J. FINNEGAN, ESQ.

12

13   MCGUIREWOODS, LLP

14         Attorneys for Ford Motor Company

15         625 Liberty Avenue

16         23rd Floor, EQT Plaza

17         Pittsburgh, PA 15222

18

19   BY:   MARK E. FREEDLANDER, ESQ.

20

21

22

23

24

25

1

2    MORRIS JAMES LLP

3          Attorneys for Nissan Trading Corp., USA

4          500 Delaware Avenue

5          Suite 1500

6          Wilmington, DE 19899

7

8    BY:   CARL N. KUNZ, III, ESQ.

9

10   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

11         Attorneys for Visteon UK Pension Trustees Limited

12         One Rodney Square

13         Wilmington, DE 19899

14

15   BY:   ANTHONY W. CLARK, ESQ.

16

17   AKIN, GUMP, STRAUSS, HAUER & FELD, LLP

18         Attorneys for Informal Group of Noteholders

19         One Bryant Park

20         New York, NY 10036

21

22   BY:   ROBERT J. TENENBAUM, ESQ.

23         (TELEPHONICALLY)

24

25

1

2   ANDREWS KURTH LLP

3        Attorneys for Ad Hoc Committee of 12.25% Noteholders

4        450 Lexington Avenue

5        New York, NY 10017

6

7   BY:   PAUL N. SILVERSTEIN, ESQ.

8         JONATHAN I. LEVINE, ESQ.

9         (TELEPHONICALLY)

10

11   DUANE MORRIS LLP

12        Attorneys for Patrick N.Z. Rona

13        1540 Broadway

14        New York, NY 10036

15

16   BY:   PATRICK N.Z. RONA, ESQ.

17         (TELEPHONICALLY)

18

19

20

21

22

23

24

25

18

```
 1

 2    HONIGMAN MILLER SCHWARTZ & COHN LLP

 3         Attorneys for General Motors

 4         2290 First National Building

 5         660 Woodward Avenue

 6         Detroit, MI 48226

 7

 8    BY:   JOSEPH R. SGROI, ESQ.

 9         (TELEPHONICALLY)

10

11    MCDONALD HOPKINS LLC

12         Attorneys for Ad Hoc Committee of Investors

13         505 S. Flagler Drive

14         Suite 300

15         West Palm Beach, FL 33401

16

17    BY:   TINA M. TALARCHYK, ESQ.

18         (TELEPHONICALLY)

19

20

21

22

23

24

25
```

1

2     GOLDBERG, KOHN, BELL, BLACK, ROSENBLOOM & MORITZ, LTD.

3          Attorneys for Johnson Controls

4          55 East Monroe Street

5          Suite 3300

6          Chicago, IL 60603

7

8     BY:   DANIELLE W. JUHLE, ESQ.

9          (TELEPHONICALLY)

10

11    VORYS, SATER, SEYMOUR & PEASE LLP

12         Attorneys for Showa Aluminum

13         52 East Gay Street

14         Columbus, OH 43215

15

16    BY:   ROBERT A. BELL, JR., ESQ.

17         (TELEPHONICALLY)

18

19    WILLKIE FARR & GALLAGHER LLP

20         Attorneys for Law Debenture Trust Company of New York

21         787 Seventh Avenue

22         New York, NY 10019

23

24    BY:   JENNIFER HARDY, ESQ.

25         (TELEPHONICALLY)

1    this phrase -- some judge did -- but this really is "crying

2    examiner in a crowded room", and it should be denied.  Thanks,

3    Your Honor.

4            THE COURT:  All right, anyone else?  Mr. Bienenstock,

5    reply?

6            MR. BIENENSTOCK:  Yes, Your Honor.  I'm delighted

7    with what I heard, because the creditors' committee apparently

8    feels that they can rewrite the Bankruptcy Code and argue to

9    Your Honor that because the equity holders have competent

10   counsel and financial advisors, they said, that's a defense to

11   an examiner motion.  No, that's a defense, perhaps, to a motion

12   to establish a statutory committee.  The Code doesn't have any

13   balancing test, any defense that if parties are adequately

14   represented, that that's a defense to the appointment of an

15   examiner.

16           Similarly, Mr. Willett has asked the Court, what will

17   the world think.  What will others think?  It doesn't matter.

18   The Code doesn't say appoint an examiner when there's five

19   million dollars of debt unless other people will think bad

20   thoughts.  We have a right.  I'm tickled pink that my

21   adversaries have felt the need to construct out of the clear

22   blue sky defenses that don't exist.  And I think what that

23   tells the Court is that we're entitled to an examiner to

24   investigate the things we asked for, and we hope the Court will

25   grant them.

1          THE COURT:  Thank you.  Excuse me.  All right, the

2    issue, of course, before the Court, is whether to appoint an

3    examiner, pursuant to the motion in front of the Court.  And

4    the statute which is applicable, of course, is 1104(c).  "If

5    the Court does not order the appointment of a trustee," which I

6    have not, "then at any time before the confirmation ... on

7    request of a party in interest ... and after notice and a

8    hearing, the court shall order the appointment of an examiner

9    to conduct such an investigation of the debtor as is

10   appropriate, including" and then it goes on, "if such

11   appointment is in the interests of creditors" equity holders,

12   et cetera, "or the debtor's fixed, liquidated, unsecured debts

13   ... exceed $5,000,000."  It's a troubling -- well, troubling,

14   it's a somewhat ambiguous statute notwithstanding the fact that

15   it says "shall", because it immediately limits the scope of

16   that "shall".  I don't think it's true, and I think it would be

17   an absurd result to find that in every case where the financial

18   criteria is met and a party-in-interest asks, the Court must

19   appoint an examiner.  There has to be an appropriate

20   investigation that needs to be done.

21          Now, it's -- until someone does an investigation, of

22   course, you don't know whether an investigation really needed

23   to be done or not.  But at some point there has to be a level

24   of smoke, if you will -- not a lot but more than none, more

25   than just a whiff of smoke -- but some sort of indication, some

1    sort of allegation or facts that make the Court think in a

2    whole that, hmm, somebody needs to look into this independently

3    and tell the Court what's going on.  It's easy in Lehman or

4    Revco to figure out that somebody's got to figure this out.

5    But not every case that has over five million dollars of

6    nontrade needs an examiner.

7         This case does not need an examiner.  We are in a

8    good old fashioned brawl, all right?  We all know it.  And the

9    prize is an automobile company -- excuse me, a parts -- well,

10   an automobile manufacturer of parts -- with a nice healthy

11   client.  Kind of a rarity, but it's nice to have.  And we're

12   going to fight.  There's going to be a fight.  Well, let's get

13   to it.  And I don't think there's any reason to keep tiptoeing

14   around it.  Equity thinks they're in the money.  They're going

15   to come to confirmation and they're going to try to prove it.

16   Mr. Willett's clients have an issue with what's on the table.

17   They're going to come in and litigate it.  The bondholders like

18   what's on the table or support it; they're going to come in and

19   litigate it.  There are no hidden motivations, here.  There are

20   hidden agendas, here.  I think this is just a good old

21   fashioned fight over a debtor that has some value, if it's

22   restructured.  It's a good company with a bad balance sheet.

23   That's what it looks like.  Maybe that's wrong.  Maybe it's a

24   good company with a good balance sheet.  But that's what

25   confirmation is going to tell us.

**Exhibit J**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .
MAGNA ENTERTAINMENT CORP.,          .    Case No. 09-10720(MFW)
*et al.,*                           .
                                    .    April 20, 2010(10:37 a.m.)
          Debtors.                  .    (Wilmington)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

REDROCK ADMINISTRATIVE             .
SERVICES LLC, RACING AND           .
GAMING SERVICES, LTD., AMWEST      .
ENTERTAINMENT, LLC, BETTOR         .
RACING, INC.,D/B/A ROYAL RIVER     .
RACING, AND THE ELITE TURF         .
CLUB, N.V.,                        .
                                   .
          Plaintiffs,              .
                                   .
     v.                            .    Adv.Proc.No. 09-51155(MFW)
                                   .
MAGNA ENTERTAINMENT CORP.,         .
PACIFIC RACING ASSOCIATION,        .
INC., MEC LAND HOLDINGS            .
(CALIFORNIA), INC.,GULFSTREAM      .
PARK RACING ASSOC., INC., LOS      .
ANGELES TURF CLUB, INC., AND       .
THE SANTA ANITA COMPANIES,         .
INC.,                              .
          Defendants.              .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

MAGNA ENTERTAINMENT CORP.,         .
                                   .
          Plaintiff,               .
                                   .
     v.                            .    Adv.Proc.No. 09-52212(MFW)
                                   .
PA MEADOWS, LLC, PA MEZZCO,        .
LLC, and CANNERY CASINO            .
RESORTS, LLC,                      .
                                   .
          Defendants.              .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

```
ALAMEDA COUNTY AGRICULTURAL      .
FAIR ASSOCIATION, et al.,        .
                                 .
          Plaintiffs,            .
                                 .
     v.                          .      Adv.Proc.No. 10-50193(MFW)
                                 .
MAGNA ENTERTAINMENT CORP,        .
et al.,                          .
                                 .
          Defendants.            .
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

<u>Appearances</u>:

| | |
|---|---|
| For the Debtors: | Brian S. Rosen, Esq. |
| | Weil, Gotshal & Manges LLP |
| For Certain Equity Holders: | Donna Harris, Esq. |
| | Pinckney, Harris & Weidinger |
| For the Creditors Committee: | Kenneth Eckstein, Esq. |
| | Josh Brody, Esq. |
| | Kramer, Levin |
| For the U.S. Trustee: | Mark Kenney, Esq. |
| | U.S. Trustee's Office |
| For PNC Bank: | Michael Gallerizzo, Esq. |
| | Gebhart & Smith |
| For Florida DPBR: | Jason Powell, Esq. |
| | Ferry, Joseph |
| For Santa Anita: | Derek Abbott, Esq. |
| | Morris, Nichols, Arsht & Tunnell |
| For Certain Creditors: | Gregg Galardi, Esq. |
| | Skadden, Arps |
| For MI Developments: | Lee Attanasio, Esq. |
| | John Hutchinson, Esq. |
| | Sidley, Austin |

3

```
For Texas Racing              Casey Roy, Esq.
Commission:                   Attorney General's Office

For the Mayor &               David Sommer, Esq.
City Council:                 Gallagher, Evelius & Jones

For MID:                      Michael Burke, Esq.

For State of Maryland:        Greg Cross, Esq.

For FC Gulfstream Park:       Carl N. Kunz, III, Esq.
                              Morris, James

For MRTEP:                    Brian Esters, Esq.
                              Abato, Rubenstein & Abato

For the Grand Prairie         John Middleton, Esq.
Sports Corp.                  Haynes & Boone, LLP

For Faracon Capital:          David A. Fidler, Esq.
                              Klee, Tuchen, Bogdanoff & Stern

For the Regents of            Eric Behrens, Esq.
Univ. of California:              University of California

For the Los Angeles           Barry S. Glaser, Esq.
County Tax Collector:         Steckbauer, Weinhart, Jaffe
```

```
Audio Operator:       Brandon McCarthy
Transcriber:          Elaine M. Ryan
                      (302) 683-0221
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

4

                              INDEX

                    Direct     Cross      Redirect    Recross

WITNESS:

Gregory Rayburn                19          57          61
                               37                      62
                               40          64          64
                               45

Timothy Harkness               84
                               92
                               93

Rocco Liscio                  104         125         132
                              110         129         137
                              114

Evan Gershbein                140         142

 1         MS. HARRIS: If I may, Your Honor, the comments from

 2    counsel have been false.  The truth of the matter is, is that

 3    the shareholders have been involved in this process for

 4    months and months and months by contacting Kramer, Levin

 5    directly in trying to be a part of that process.  When the

 6    settlement was announced, was the first time that we realized

 7    that we needed serious valuation, and through the proper

 8    channels, we went to the Office of the U.S. Trustee first,

 9    attempted to contact that office, contact persons at Kramer,

10    Levin to get things done, and when that was not permitted,

11    the shareholders came and found an attorney because Your

12    Honor said that a motion had to be filed, and we did that.

13    We did all of that promptly.  With respect to the plan

14    confirmation, Your Honor, there is still an objection.  We

15    are still entitled to discovery, and I frankly find it very

16    hard to believe that financing is going to end on April 30th

17    if there's no confirmation hearing today.  Well, two issues,

18    one is if they can get me the documents by the end of this

19    week and Your Honor's amenable, we can get a confirmation

20    hearing on a little bit later.  The second thing is, however,

21    I find it very hard to believe that any financier is going to

22    let this case drop just before the Preakness, which is when

23    the money for the debtors, you know, we've got big money here

24    for the debtors for the financiers just on that one day, and

25    so, you know, if MID's going to say that they're not going to

1    finance it through the Preakness, then I think we have a

2    different issue, which is a breach of fiduciary duty issue

3    that really calls for an Equity Committee at that point.

4              THE COURT: Well, let me make this ruling on the

5    motion for the appointment of an Equity Committee or in the

6    alternative for appointment of an Examiner.  I agree with the

7    Committee and the debtors that this is just too late in the

8    game for such a motion to be filed.  It should have been

9    filed more promptly.  Clearly, at the time the settlement was

10   announced, if the equity had a problem with that, they should

11   have acted more promptly.  With respect to the request for

12   discovery, I'm going to reserve on that.  I think we'll hear

13   testimony today, and I think the shareholders who have filed

14   an objection will have ample time to contest the debtors' and

15   Committee's submissions on valuation and other issues, but I

16   will not foreclose if we do not finish today the opportunity

17   for some discovery.  With respect to the Examiner, I will

18   make the same ruling I did previously.  I think that the

19   Committee has acted in whatever role the Examiner would have

20   been instructed to act, namely they have investigated the

21   serious allegations regarding the interested parties and the

22   secured lenders' position.  I am fully aware of the extensive

23   work done by the Committee in this regard, and that that was

24   ultimately settled.  I make no comment on the settlement

25   because that's what I'll hear at the confirmation hearing.

1   But I think at this late date to appoint an Examiner to do

2   the same thing would just be a waste of assets of the estate.

3   With respect to the request to appoint an examiner just to do

4   a valuation, again, I will hear the valuation testimony and

5   the Equity Committee's objection to that, I assume, they will

6   be cross-examining on that point, but at this point, I just

7   don't think the appointment of an Examiner is warranted,

8   although I do agree that the Bankruptcy Code Section, because

9   of the amount of non-trade unsecured debt, would suggest it's

10   mandatory, I think the Court does have discretion with

11   respect to what the role of an Examiner would be, and since

12   all of the roles that an Examiner would play in this case

13   have already been fulfilled, I find it's a futile act and

14   will not appoint an Examiner.

15         MS. HARRIS: Your Honor, simply with respect to the

16   issue of the actions of the equity holders from the point

17   that the settlement was announced, I do have a witness here

18   who can tell the Court exactly what was done and how things

19   proceeded before - in order to maybe enlighten the Court with

20   respect to that issue, if the Court is so inclined, before

21   making that ruling.

22         THE COURT: No, I think just based on the timing of

23   it, I think too long of a delay has occurred.  Okay?

24         MS. HARRIS: Thank you, Your Honor.

25         THE COURT: I do not foreclose any 503(b)(3) declaim

1    as suggested by the debtor to the extent the equity

2    shareholders make a substantial contribution.

3         MR. ROSEN: Yes, Your Honor.  With that, Your Honor,

4    if I could turn to - I think it was, item 28 on the agenda,

5    which is the plan itself.  Your Honor, as you are very, very

6    well aware, this has been a very long and winding road to get

7    to this point in time in the case.  This restructuring

8    started on a pre-petition basis several years ago, including

9    through the debtors' efforts to do something that has been

10   referred to as the debt elimination plan, which was the sale

11   of certain assets and the reduction of indebtedness, but that

12   was unsuccessful.  We went through several bridge loans on a

13   pre-petition basis to try and get us to a certain point in

14   time on a restructuring, and that ultimately proved to be

15   unsuccessful, and when liquidity dried up, Your Honor, these

16   Chapter 11 cases were commenced, and even then there had been

17   many turns.  If the Court will recall, there was an initial

18   effort to finance MEC as a bridge loan to certain sales and

19   certain sales processes, and when the Creditors Committee was

20   formed, they sought to extend that sales process, and I think

21   Mr. Eckstein argued on several occasions how additional time

22   really needed to be had so that Miller Buckfire and all the

23   professionals in the case could do their job to actively

24   market the assets.  Also, the Creditors Committee agreed with

25   MEC and had their own views with respect to certain

**Exhibit K**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              Chapter 11

ACandS, Inc,

        Debtor.              Bankruptcy #02-12687 (RJN)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                    Wilmington, DE
                  November 18, 2002
                     10:05 a.m.

                  TRANSCRIPT OF TRIAL
      BEFORE THE HONORABLE RANDALL J. NEWSOME
          UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                    Laura Davis Jones, Esq.
                               Pachulski., Stang, Ziehl,
                               Young & Jones
                               919 North Market Street
                               Wilmington, DE 19801

                               Alan J. Kornfeld, Esq.
                               Pachulski, Stang, Ziehl,
                               Young & Jones
                               919 North Market Street
                               Wilmington, DE 19801

                               Beth Levine, Esq.
                               Pachulski, Stang, Ziehl,
                               Young & Jones
                               919 North Market Street
                               Wilmington, DE 19801



| | |
|---|---|
| | David Killalea, Esq.<br>Gilbert, Heinz & Randolph<br>Ste 700<br>1100 New York Ave., N.W.<br>Washington, DC 20005 |
| | Jerome Randolph, Esq.<br>Gilbert Heinz & Randolph<br>200 E. Randolph Drive<br>Chicago, IL 60601 |
| For Traveler's Casualty:<br>& Surety Company | Barry R. Ostrager, Esq.<br>Simpson, Thacher & Bartlett<br>425 Lexington Ave.<br>New York, NY 10017 |
| | Mary Beth Forshaw, Esq.<br>Simpson, Thacher & Bartlett<br>425 Lexington Ave.<br>New York. NY 10017 |
| | Bryce Friedman, Esq.<br>Simpson, Thacher & Bartlett<br>425 Lexington Ave.<br>New York, NY 10017 |
| | Eric Schwartz, Esq.<br>Morris, Nichols, Arsht<br>Tunnel1<br>1201 N. Market St.<br>Wilmington, DE 13899 |
| For Asbestos Plaintiffs: | Nancy W. Davis, Esq.<br>Ness, Motley, PA<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464 |
| For Asbestos Claimants:<br>Committee | Marla Eskin, Esq.<br>Campbell & Levine, LLC<br>1201 North Market St.-Ste. 1501<br>Wilmington, DE 19801 |
| | Philip E. Milch, Esq.<br>Campbell & Levine, LLC<br>1700 Grant Building<br>310 Grant Street<br>Pittsburgh, PA 15219 |

| | | |
|---|---|---|
| 1 | For IREX Corporation: | Kevin Gross, Esq. |
| 2 | | Rosenthal Monhait, Gross & Goddess. PA |
| 3 | | 919 Market Street-Ste. 1401 Wilmington, DE 19899 |
| 4 | | David Critchlow, Esq. |
| 5 | | Pillsbury, Winthrop, LLP One Battery Park Plaza New York, NY 10004 |
| 6 | | |
| 7 | | Richard L. Epling, Esq. Pillsbury, Winthrop, LLP One Battery Park Plaza |
| 8 | | New York, NY 10004 |
| 9 | For U.S. Trustee: | Frank J. Perch, III, Esq. Office of U.S. Trustee |
| 10 | | 844 King Street-Ste. 2313 Lock BOX 35 |
| 11 | | Wilmington, DE 19801 |
| 12 | Audio Operator: | Sherry A. Johnson |
| 13 | Transcribing Firm: | Writer's Cramp, Inc. 6 Norton Rd. |
| 14 | | Monmouth Jct., NJ 08852 732-329-0191 |

15  Proceedings recorded by electronic sound recording, transcript
16  produced by transcription service.

17

18

19

20

21

22

23

24

25

Writer's Cramp, Inc.

Certified Court Transcribers

732-329-0191

## Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| **Witnesses For Traveler's:** | | | | | |
| Mr. Gresham | 14 | | | | |
| Mr. Hipolett | 23 | 50 | 67 | | |
| Mr. Killalea | 75 | | | | |
| Ms. Pickle | 86 | 88 | | | |
| **Witnesses For The Asbestos Committee:** | | | | | |
| Mr. Bergman | 38 | 106 | | | |
| **Witnesses For The Debtor:** | | | | | |
| Mr. Hipolett | 50 | 67 | | | |
| Mr. Rooney | 89 | 95 | | | |

| EXHIBITS: | | Marked | Received |
|---|---|---|---|
| D-B | Support Services Agreement | 88 | |
| D-C | IREX 2001 Annual Report | 83 | |
| T-1 | E-mail-Blevins to Terry Griffin | 83 | |
| T-2 | Blevins Memo | 79 | |
| T-3 | E-mail-Joe Rice to Scott Gilbert | 81 | |
| T-4 | Ltr-Xazan to Killalea | 84 | |
| T-6 | E-mail-Kazan to Scott Gilbert | 78 | |
| T-11 | ACandS Motion | 24 | |
| T-16 | Demand Loan Agreement | 27 | |
| T-17 | Long Term Agreement | 25 | |
| T-27 | SPI Registration Statement | 34 | |
| T-28 | SPI Registration Statement | 35 | |
| T-32 | IREX 1998-10K | 35 | |
| T-33 | IREX 1998-8K | 62 | |
| T-34 | IREX 1999-10K | 32 | |

SUMMATION BY:

THE COURT: Finding          129

1  Indeed, the Committee represents all Unsecured Creditors in

2  this case.   The unsecured general trade debt is nominal, and

3  as the Court has noted no separate Committee has been

4  appointed.   To appoint an Examiner with the broad powers that

5  Traveler's seeks would be to reward Traveler's in a way that

6  neither the plain language of the Code or its intent require,

7  and allow Traveler's to use this statute to manipulate the

8  process to further its goal to delay if not defeat its own day

9  of reckoning.   Thank you.

10         MR. OSTRAGER:   Sixty seconds, Your Honor?

11         THE COURT: No.   We'll stand in recess for a few

12  minutes.

13         (Recess)

14         THE CLERK:   All rise.

15         THE COURT:   All right.   I'm prepared to rule on the

16  matter before me.   This Chapter 11 case is before the Court

17  pursuant to a Motion to Appoint an Examiner filed by

18  Traveler's casualty & Insurance company pursuant to Section

19  1104(C) of the Bankruptcy Code.   That statute states in

20  pertinent part as follows.   "If the Court does not order the

21  appointment of a Trustee under this Section, then at any time

22  before the confirmation of a plan,  and on request of a Party-

23  In-Interest or the United States Trustee, and after notice and

24  a hearing, the Court shall order the appointment of an

25  Examiner to conduct such an investigation of the Debtor as is

appropriate, including an investigation of any allegations of
fraud, dishonesty, et cetera and so forth."

The facts before the Court are as follows. A number of
transactions have been discussed by way of testimony here
today that raise red flags under the avoiding powers of the
Trustee, Sections 544 through 550. Those transactions,
however, have been investigated first by forensic accountant
hired by the pre-petition Committee in this case to
investigate IREX and presumably the SPI spin, as well as the
2001 sale to Lancaster Acquisition of ACandS, or the ACandS
assets . The transactions have been investigated quite
obviously by Traveler's in quite extensive detail. They've
taken depositions. They've taken depositions in the course of
this proceeding as well, The Traveler's now asks that another
investigation take place, even though they have said that the
evidence is irrefutable that certain transactions that
occurred were either fraudulent transfers and/or preferences.
An Examiner investigating these transactions would almost
certainly need the assistance of an attorney, and probably the
assistance of an accountant if not a financial advisor and an
accountant. In the meantime, the Creditors' Committee in this
case has taken the quite clear position that they intend to
investigate these transactions as well, thus making
potentially four different investigations on the very same
sets of transactions. This would appear to the Court to be

utter and complete waste of money as well as time, and completely contrary to the best interest, as far as I can tell, of the Creditor community as a whole who do not, other than  Traveler's,  support this motion,  as well as a waste of the  Debtor's meager assets.

The statute, as the In Re: pevco DSE case at 898 F. 2nd. 498, 6th Circuit (1990) does require where there is more than $5,000,000 of debt the appointment of an Examiner. To that extent the motion is granted.  However,  it is further ordered that the Examiner appointed by the U.S. Trustee is not to perform any task or take up any duty or in any way perform any work without further order of the Court.  That order is to ensure that the Committee is allowed to proceed with its investigation, that the coverage action where the real stakes in this case lie is permitted to proceed, and that those matters be completed before putting yet another cop on the beat in this case.  So if the U.S. Trustee can find someone to accept the appointment under those circumstances, I will sign an Order.  But only under those circumstances.  That does in fact appoint an Examiner.  That's my disposition of this. Anybody have any questions?

MR. PERCH:  Yes, Your Honor.

THE COURT:  Okay, Mr. Perch.

MR. PERCH:  Good afternoon, Your Honor.  Frank Perch for the United States Trustee.  Your Honor, the U.S. Trustee

1  is required in the statute to appoint an Examiner if the Court

2  directs one to be appointed.  And we will, of course, consult

3  with all of the interested parties who wish to provide input

4  regarding the appointment of the Examiner, as the statute

5  requires.  I would like to inquire of the Court, because it

6  may be of assistance to the U.S. Trustee in this process,

7  whether with respect to the Court's ruling that the Examiner

8  is not permitted to perform any further duties until further

9  order of the Court, would the Court entertain a petition from

10  the Examiner who is appointed seeking leave to be authorized

11  to perform such tasks?  Or would the Court only hear from

12  other parties with respect to authorizing the Examiner to do

13  something?

14  THE COURT:  I would be most -- especially now, at

15  this point, I -- when I say they're not authorized to do

16  anything, I mean anything other than get appointed.  That's

17  all that this person is going to do.  It is as though they

18  were just like the old days of having a stand-by Chapter 11

19  Trustee under old XI.  This will be a stand-by Examiner who

20  Hill not begin to function until the Court orders him to.

21  There is not going to be one penny of fees that is spent by

22  this Examiner of any kind.  So does that answer your question?

23  MR. PERCH:  I understand the Court's position, Your

24  Honor.  Yes, thank you.

25  THE COURT:  And I don't anticipate that the Examiner