**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FTX TRADING LTD., *et al.*, | ) | Case No. 22-11068 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 176** |

**LIMITED OBJECTION AND RESPONSE OF THE JOINT PROVISIONAL
LIQUIDATORS OF FTX DIGITAL MARKETS LTD. TO THE MOTION OF THE
UNITED STATES TRUSTEE FOR ENTRY OF AN ORDER
DIRECTING THE APPOINTMENT OF AN EXAMINER**

Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves (the "**Joint Provisional Liquidators**" or the "**Foreign Representatives**"), in their capacities as joint provisional liquidators of FTX Digital Markets Ltd. ("**FTX Digital**" or the "**Chapter 15 Debtor**") and foreign representatives of the provisional liquidation (the "**Bahamian Provisional Liquidation**") of FTX Digital pending in the Supreme Court of The Bahamas pursuant to the Companies (Winding Up Amendment) Act 2011, by and through their undersigned counsel, submit this limited objection and response (the "**Response**") to the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* [D.I. 176] (the "**Motion**")[2] filed by Andrew R. Vara, United States Trustee for Regions Three and Nine (the "**U.S. Trustee**"). In support of this Response, the Joint Provisional Liquidators respectfully submit as follows:

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these chapter 11 cases (the "**Chapter 11 Cases**"), a complete list of the above captioned debtors and debtors in possession (the "**Chapter 11 Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Chapter 11 Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used but not defined herein have the meaning set forth in the Motion.

**PRELIMINARY STATEMENT**

1.     By the Motion, the U.S. Trustee seeks the appointment of an examiner with an unlimited mandate to "investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the Debtors of or by current or former management of the Debtors." While, the Joint Provisional Liquidators share the U.S. Trustee's specific concerns articulated in the Motion regarding the Chapter 11 Debtors' prepetition conversions of customer funds, the U.S. Trustee has instead proposed an examiner with nearly unlimited investigatory powers that could cost the Chapter 11 Debtors' estates tens of millions of dollars for little or no benefit to the estates and their parties-in-interest.[3] Even were the Motion more narrowly tailored to specific issues concerning admitted conversions of customer funds by the Chapter 11 Debtors' management, it is unclear whether the appointment of an examiner is even needed at this time. Numerous governmental entities and criminal prosecutors, Mr. Ray and his team, and the official committee of unsecured creditors (the "**Committee**") are all already investigating the very same conduct and will all, in one way or another, make their conclusions known. As such, the Court can deny or at least defer the Motion. But, to the extent that the Court agrees that an examiner is warranted at this time, the scope of his or her investigation (1) should be strictly limited to determining which individuals within the Chapter 11 Debtors' prepetition enterprise had knowledge of any conduct relating to the misuse of customer funds prior to the Petition Date, (2) should be subject to an appropriately limited budget and periodic reporting to

---

[3] The Joint Provisional Liquidators submit that the determination of the "wider implications" of the Chapter 11 Debtors' prepetition conduct are not the appropriate inquiry in a chapter 11 proceeding and are perhaps best left for the regulators and legislators. The focus here should be solely on how the issues to be investigated affect the estates and their stakeholders.

2

the Court, and (3) must result in a final report to be filed within the first half of 2023 to allow these Chapter 11 Cases to proceed expeditiously.

## LIMITED OBJECTION AND RESPONSE

**I.  The Appointment of an Examiner is Inappropriate and is Not in the Best Interest of Creditors and the Chapter 11 Debtors' Estates**

2. Section 1104(c) of the Bankruptcy Code provides that:

> [O]n request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate*, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C.S. § 1104(c) (emphasis added). The qualifier "*as is appropriate*" in section 1104(c) of the Bankruptcy Code provides the Court with discretion to refrain from appointing an examiner when doing so would be inappropriate, and the appointment of an examiner is inappropriate when doing so would result in unnecessary costs and delay. This is supported by the legislative history of the statute, in which Congress explained that the "standards for the appointment of an examiner are the same as those for the appointment of a trustee; *the protection must be needed, and the cost and expense must not be disproportionately high*." H.R. Rep. No. 95-595, at 402 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6359 (emphasis added). Here, the Motion as drafted fails in three

3

ways to demonstrate that the appointment of an examiner is appropriate or is in the best interest of creditors and the Chapter 11 Debtors' estates under section 1104(c)(1).[4]

3.   ***First***, the Court must be convinced that an examiner is necessary to justify burdening the estate with excessive costs and expenses, and that is clearly not the case here. The Chapter 11 Debtors are already responsible for the "implementation of controls," "asset protection and recovery," "the investigation into claims against the founders and third parties," "cooperation with insolvency proceedings of subsidiary companies in other jurisdictions," and "the maximization of value for all stakeholders through the eventual reorganization or sale of the Debtors' complex array of business, investments and property around the world."[5] The Chapter 11 Debtors further have assured the Court that prepetition wrongdoers have all been properly removed and displaced by restructuring professionals who have assumed fiduciary responsibility for the FTX companies.[6] The U.S. Trustee himself has expressed that he "has no reason to question the qualifications, competence, or good faith of Mr. Ray" and stated that "Mr. Ray and FTX's new management have done valuable preliminary work in untangling some of these issues."[7] Moreover, the Committee – an estate fiduciary – can undertake an appropriate investigation[8] and, unlike an examiner, exercise rights to actively pursue claims and remedies to vindicate the interests of its constituency if further wrongdoing is uncovered. Finally, the United States Department of

---

[4]  While the United States Trustee also argued in the Motion that the appointment of an examiner is mandatory, *see* Mot. ¶¶32-34, this Court "do[es] not believe it's mandatory." Jan. 11, 2023 Hr'g Tr. at 167:22-23, *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 13, 2023) [D.I. 489].

[5]  Decl. of John J. Ray III in Supp. of Chapter 11 Petitions and First Day Pleadings ¶49 [D.I. 24] (the "**First Day Declaration**").

[6]  *See* First Day Decl. ¶¶46-76 (describing actions taken since Mr. Bankman-Fried's departure, including the appointment of independent directors).

[7]  Mot. ¶40.

[8]  *See* 11 U.S.C. § 1103(c)(2).

AMERICAS 119134415

Justice (the "**DOJ**"), the United States Securities and Exchange Commission (the "**SEC**"), and the United States Commodity Futures Trading Commission (the "**CFTC**") are also conducting their own investigations in connection with the charges brought against Mr. Bankman-Fried and related parties[9] and the DOJ is actively participating in these Chapter 11 Cases.[10]

4. Given all the foregoing, the Joint Provisional Liquidators believe that Mr. Ray and his team, the Committee, the DOJ, the SEC, and the CFTC should be given the opportunity to conduct their investigations and report to the Court, as they have been doing without the presence of an examiner. *See* Oct. 31, 2007 Hr'g Tr. at 77:2-8, *In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Nov. 14, 2007) [D.I. 1997] (noting that because there were already ongoing investigations, the Court did not "think … there would be anything to be gained by appointing an examiner …"); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 639 (Bankr. S.D.N.Y. 2012) (denying motion to appoint examiner where debt threshold was met and "the Debtor and its professionals conducted an appropriate inquiry and analysis of the facts and circumstances of this case").

5. ***Second***, any benefit that the appointment of an examiner might yield will be far outweighed by the incurrence of disproportionately high costs and expenses that could be imposed on the Chapter 11 Debtors' estates. Indeed, the very cases the U.S. Trustee seeks to draw a parallel to (*e.g.*, *Lehman Brothers*) illustrate why adding another team of professionals to be paid by the

---

[9] *See United States of America v. Samuel Bankman-Fried, a/k/a SBF*, 22-CR-00673, (S.D.N.Y. Dec. 9, 2022) [D.I. 1]; *Securities and Exchange Commission v. Samuel Bankman-Fried*, 22-CV-10501 (S.D.N.Y. Dec. 13, 2022) [D.I. 1]; *Commodity Futures Trading Commission v. Samuel Bankman-Fried, FTX Trading Ltd d/b/a FTX.com, Alameda Research LLC, Caroline Ellison, and Zixiao "Gary" Wang*, 22-CV-10503 (S.D.N.Y. Dec. 21, 2022) [D.I. 13]; *see also In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 6, 2023) [D.I. 203] (DOJ providing notice of seized assets).

[10] *See* Jan. 4, 2023 Hr'g Tr., *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 5, 2023) [D.I. 375].

5

estate – particularly at such an early point in the Chapter 11 Cases – could be imprudent. For example, the total examiner costs in the *Lehman Brothers* and *Caesar's Entertainment* bankruptcies exceeded $59 million and $34 million, respectively.[11] Given that the Chapter 11 Debtors' liquidity profile here remains uncertain by their own admission,[12] it seems inappropriate to impose increased costs on the estates by appointing an examiner with unlimited scope and duration.

6. ***Third***, the appointment of an examiner could unnecessarily stall these Chapter 11 Cases until the issuance of the examiner's final report.[13] Examiner investigations typically last at least several months, and tend to delay key restructuring efforts while parties await an examiner's report. For example, in another set of cryptocurrency chapter 11 cases pending in the Southern District of New York, *Celsius Network*, an examiner has been appointed, the examiner's final report remains outstanding, and the cases have not progressed expeditiously.[14]

7. Accordingly, the Joint Provisional Liquidators submit that the most prudent approach would be to allow the Chapter 11 Debtors' new management, the Committee, the DOJ, the SEC, the CFTC, and all other parties in interest to coordinate and conduct their own

---

[11] *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. 2012) [D.I. 27571]; *In re Caesars Entertainment Operating Co., Inc.*, No. 15-01145 (Bankr. N.D. Ill. 2016) [D.I.s 5624, 5625, 5628].

[12] First Day Decl. ¶40.

[13] *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 128 (Bankr. D. Del. 2010) (denying motion to appoint an examiner because, among other things, an examiner "would delay the administration of this chapter 11 case").

[14] *In re Celsius Network, LLC*, No. 22-10864 (MG) (Bankr. S.D.N.Y. Sept. 14, 2022) [D.I. 820] (directing the appointment of an examiner), *In re Celsius Network, LLC*, No. 22-10864 (MG) (Bankr. S.D.N.Y. Nov. 22, 2022) [D.I. 1438] (informing court that completion of the examiner's final report by the initial deadline would be infeasible and requesting an extension of more than one-month); *In re Celsius Network, LLC*, No. 22-10864 (MG) (Bankr. S.D.N.Y. Dec. 2, 2022) [D.I. 1562] (approving request for extension of deadline to file examiner's final report until January 17, 2023); *In re Celsius Network, LLC*, No. 22-10864 (MG) (Bankr. S.D.N.Y. Jan. 11, 2023) [D.I. 1851] (approving request for an additional extension of deadline to file examiner's final report until January 30, 2023).

investigations of the Chapter 11 Debtors' prepetition conduct before any examination is commenced under section 1104(c) of the Bankruptcy Code.

## II. If an Examiner Is Appointed, the Scope of Such Examiner's Investigation Should Be Extremely Limited

8. Even if the Court were to conclude that appointment of an examiner is warranted at this time, the Court "retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration." *In re Revco D.S., Inc.*, 898 F.2d 498, 501 (6th Cir. 1990). It is a court's "duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings. To that end, the Bankruptcy Court may exercise its discretion to limit the scope of the examiner's investigation . . . ." *In re Loral Space & Commc'ns, Ltd.*, No. 04 CIV. 8645RPP, 2004 WL 2979785, at *5 (S.D.N.Y. Dec. 23, 2004). Here, the scope of the examination requested by the U.S. Trustee is patently overly broad and will inevitably result in a fishing expedition, at unjustifiable costs to the estates, without any certainty of any benefit to the estates.

9. If the Court is persuaded to appoint an examiner, however, the Joint Provisional Liquidators urge the Court to exercise its discretion and appropriately limit the scope of the examiner's inquiry so as not to disrupt or delay the timeline of these Chapter 11 Cases or unnecessarily deplete the estates' uncertain resources. *See* Order Directing Appointment of Examiner Under 11 U.S.C. §§ 1104(c) and 1106, *In re Asarco LLC*, No. 05-21207 (Bankr. S.D. Tex. Mar. 4, 2008) (court, although determining it was compelled to appoint an examiner, appointed examiner with no present duties). The Joint Provisional Liquidators believe that the scope of any examination should be strictly limited to determining which individuals had knowledge of the Chapter 11 Debtors' conversions of customer funds that have now led to the guilty pleas of two former officers and the indictment of a third. To be clear, there seems to be little utility at this point of determining *whether* a fraud occurred given, among other things, the

Chapter 11 Debtors' admissions before Congress and this Court. The question, however, of *who* knew of or participated in the conduct remains unclear given the implausibility of the notion that only four people in the world – Messrs. Bankman-Fried, Wang, and Singh and Ms. Ellison – had any knowledge of what was going on. Thus, if an examiner is appointed, that examiner should be charged with vetting the Chapter 11 Debtors' current fiduciaries to ensure that all are not, in the Chapter 11 Debtors' words, "compromised individuals." In particular, given that the Chapter 11 Debtors may seek to restructure, a clean bill of health could be critical to the eventual reorganization or sale of the FTX businesses, and that process may require unpacking *who* knew about the fraud and *when*. Indeed, an examiner may be in the best position to reach those conclusions, as the order appointing an examiner can expressly provide that the examiner has the power to access and, if necessary, waive privileges as to all documents and information relevant to the investigation. *See In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. Apr. 8, 2002) [D.I. 2838] at 3 (providing that the examiner would have "the power to waive, on an issue-by-issue basis, the attorney-client privilege of the debtors' estates with respect to pre-petition communications relating to matters to be investigated by the Examiner hereunder . . ."); *In re Washington Mutual, Inc.*, 08-12229 (MFW) (Bankr. D. Del. Aug. 10, 2010) [D.I. 5258] (all privileged communications and work product ordered to be disclosed to the examiner without destroying the privilege as to third parties).

## CONCLUSION

WHEREFORE the Joint Provisional Liquidators requests that the Court deny the Motion and grant such further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank.]*

AMERICAS 119134415

Dated: January 25, 2023

| | |
|---|---|
| /s/ David T. Queroli | |
| **RICHARDS, LAYTON & FINGER, P.A.** | **WHITE & CASE LLP** |
| | |
| Kevin Gross (No. 209) | Jessica C. Lauria (admitted *pro hac vice*) |
| Paul N. Heath (No. 3704) | J. Christopher Shore (admitted *pro hac vice*) |
| Brendan J. Schlauch (No. 6115) | Brian D. Pfeiffer (admitted *pro hac vice*) |
| David T. Queroli (No. 6318) | Mark Franke (admitted *pro hac vice*) |
| One Rodney Square | Brandon Batzel (admitted *pro hac vice*) |
| 920 N. King Street | Brett L. Bakemeyer (admitted *pro hac vice*) |
| Wilmington, DE 19801 | 1221 Avenue of the Americas |
| Telephone: (302) 651-7700 | New York, NY 10020 |
| Facsimile: (302) 651-7701 | Telephone: (212) 819-8200 |
| gross@rlf.com | jessica.lauria@whitecase.com |
| heath@rlf.com | cshore@whitecase.com |
| schlauch@rlf.com | brian.pfeiffer@whitecase.com |
| queroli@rlf.com | mark.franke@whitecase.com |
| | brandon.batzel@whitecase.com |
| | brett.bakemeyer@whitecase.com |
| -and- | |
| | Thomas E Lauria (admitted *pro hac vice*) |
| | Richard S. Kebrdle (admitted *pro hac vice*) |
| | 200 South Biscayne Boulevard, Suite 4900 |
| | Miami, FL 33131 |
| | Telephone: (305) 371-2700 |
| | tlauria@whitecase.com |
| | rkebrdle@whitecase.com |

*Attorneys for the Joint Provisional Liquidators of FTX Digital Markets Ltd. (in Provisional Liquidation)*