IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date**: March 8, 2023 at 1:00 p.m. (ET)<br><br>**Objection Deadline**: February 10, 2023 at 4:00 p.m. (ET) |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER DISMISSING THE CHAPTER 11 CASES OF DEBTORS FTX TURKEY TEKNOLOJI VE TICARET ANONIM ŞIRKETI AND SNG INVESTMENTS YATIRIM VE DANIŞMANLIK ANONIM ŞIRKETI

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), dismissing the chapter 11 cases of Debtors FTX Turkey Teknoloji ve Ticaret Anonim Şirketi ("FTX Turkey") and SNG Investments Yatırım ve Danışmanlık Anonim Şirketi ("SNG Investments" and, together with FTX Turkey, the "Turkish Debtors"), pursuant to sections 105(a), 305(a), 349, and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Certain facts supporting this Motion are set forth in the concurrently filed *Declaration of Edgar W. Mosley II* (the "Mosley Declaration"). In support of the Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

{1368.002-W0069836.}

**Preliminary Statement**

1. The Debtors conducted an integrated global business and commenced these Chapter 11 Cases (as defined below) with respect to 102 entities in order to preserve global value in the face of the collapse of the FTX group. The Debtors have established cooperative working relationships with regulators and insolvency professionals in jurisdictions around the world. In most of those jurisdictions, the orders of this Court, as tailored for the special requirements of non-U.S. Debtors, have practical effect and have been respected.

2. The Debtors include two Turkish subsidiaries that are not strategic to global operations: FTX Turkey and SNG Investments. (Mosley Decl. ¶ 5.) FTX Turkey operated a local exchange. Debtor FTX Trading Ltd. owns 80% of the equity of FTX Turkey and a Local Director (as defined below) owns the remaining 20%. (*Id.* ¶ 6.) SNG Investments is an indirect wholly-owned subsidiary of Alameda Research LLC and operated as a market-maker. (*Id.*)

3. Shortly after the filing of these Chapter 11 Cases, as part of criminal proceedings initiated in Türkiye in connection with the investigations being conducted by the Turkish Financial Crimes Investigation Board ("MASAK") relating to FTX, Turkish authorities froze and seized substantially all the assets of the Turkish Debtors. (*Id.* ¶ 9 and Exs. A and B.) Further, the orders entered by this Court do not have legal or practical effect in Türkiye and the Debtors have no reason to believe that the Turkish government will comply with this Court's orders. As a result, the Debtors are unable to exercise sufficient control over the affairs of the Turkish Debtors in order to comply with their duties under the Bankruptcy Code.

4. The Debtors believe it is in the best interests of the Debtors and their stakeholders to dismiss the Chapter 11 Cases of the Turkish Debtors at this time. The Debtors intend to pursue any rights they may have against the Turkish authorities with respect to the

freeze and seizure of the property of the Turkish Debtors under Turkish law. The Debtors do not expect the Turkish authorities or any liquidator in Türkiye to seek recognition of their actions in the United States, and the Debtors would intend to object to such recognition if reciprocity is not established.

## Background

5. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

7. The Turkish Debtors are operated by Turkish resident directors (the "Local Directors"). (Mosley Decl. ¶ 7.) Substantially all of the Turkish Debtors' assets are

located in Türkiye and substantially all of the Turkish Debtors' business and financial activities occurred in Türkiye. (*Id.* ¶ 8.)

8. Upon the commencement of these Chapter 11 Cases, a worldwide automatic stay went into effect, enjoining, among other things, any act to obtain possession of, or exercise control over, the property of the Debtors' estate. *See* 11 U.S. Code § 362(a)(3). However, the worldwide automatic stay does not have legal and practical effect in Türkiye and on November 14, 2022, Turkish authorities froze substantially all the corporate assets of the Turkish Debtors, along with the Local Directors' personal assets in connection with a financial crimes investigation that was commenced in Türkiye regarding FTX operations. (*Id.* ¶ 10 and Ex. A)

9. On November 22 and 23, 2022, this Court entered certain orders permitting the Debtors to, among other things, pay (a) prepetition wages, salaries and other compensation and benefits, and reimbursable expenses, to employees and (b) prepetition trade claims of foreign (non-U.S.) vendors. However, these orders are not directly enforceable in Türkiye and Turkish authorities have not lifted their freeze on the assets of FTX Turkey or SNG Investments.

10. On November 23, 2022, MASAK announced that, upon its application, the Chief Public Prosecutor's Office in Istanbul had commenced a criminal investigation into Samuel Bankman-Fried as well as related persons in Türkiye. (*Id.* ¶ 11 and Ex. B) As part of the criminal investigation, Turkish authorities seized substantially all Turkish assets (including bank accounts) of the Turkish Debtors and the Local Directors. (*Id.*)

11. In addition, private citizens in Türkiye have begun filing private claims and initiating execution proceedings against the Turkish Debtors. (*Id.* ¶ 12) Because the worldwide automatic stay is not expected to be enforced in Türkiye, any assets of FTX Turkey

located in Türkiye may be subject to those private claims and proceedings and may be converted by local authorities to satisfy any judgments that are entered against FTX Turkey by Turkish courts. Any remaining assets can be forfeited to the Turkish government pursuant to Turkish law if found to be associated with a crime.

12. The Debtors have no reason to believe that the Turkish government will comply with future orders of this Court.

### Jurisdiction

13. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 305(a), 349, and 1112(b) of the Bankruptcy Code. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

14. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 305(a), 349, and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017, dismissing the Turkish Debtors' Chapter 11 Cases.

### Basis for Relief

**I.   The Order Dismissing the Turkish Debtors' Chapter 11 Cases Is Appropriate Under Section 1112(b) of the Bankruptcy Code.**

15. A dismissal of a chapter 11 case is governed by section 1112(b) of the Bankruptcy Code, which permits a party-in-interest, after notice and hearing, to seek to dismiss a

chapter 11 case in the best interests of the creditors and the estate for cause. *See* 11 U.S.C. § 1112(b). "Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999)).

  A. <u>Cause Exists to Dismiss the Turkish Debtors' Chapter 11 Cases</u>.

  16. Whether cause exists to dismiss a chapter 11 case is determined on a case-by-case basis and is a decision within the sound discretion of the bankruptcy court. *In re American Capital Equipment*, 688 F.3d at 161; *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007); *Sullivan Central Plaza I, Ltd.* v. *BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) ("Bankruptcy judges have wide discretion to determine whether cause exists to dismiss . . . a case under section 1112(b)."); *In re Gucci*, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994) ("The Bankruptcy Court has wide discretion to determine if cause exists, and how to ultimately dispose of the case.").

  17. Courts have broad equitable discretion under section 1112(b) to dismiss a chapter 11 case based on the particular facts and circumstances of the case. *See C-TC 9th Ave. P'ship* v. *Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 n.5 (2d Cir. 1997); *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012); *Trident Assocs. Ltd. P'ship* v. *Metro Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995); *In re Smith*, 77 B.R. 496, 499-500 (Bankr. E.D. Pa. 1987).

18. The Bankruptcy Code does not define what constitutes "cause". Section 1112(b)(4) provides a *non-exhaustive* list of circumstances that may constitute sufficient cause. *See* H.R. Rep. No. 595, 95th Cong., 1st. Sess. 405–06 (1978) (noting that the list in section 1112(b)(4) "is not exhaustive."); *see also In re SGL Carbon Corp.*, 200 F.3d at 160 (noting that "the legislative history and case law makes clear that in dismissing a chapter 11 case, the court will be able to consider other factors . . . and to use its equitable powers to reach an appropriate result in individual cases."); *NMSBPCSLDHB, L.P.* v. *Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118-19 (3d Cir. 2004); *In re SGL Carbon Corp.*, 200 F.3d at 160; *Bepco, L.P. v. 15375 Memorial Corp. (In re 15375 Memorial Corp.)*, 400 B.R. 420, 427 (D. Del. 2009); *In re Devine*, 131 B.R. 952, 955 (Bankr. S.D. Tex. 1991); *In re Prop. Mgmt. & Inv., Inc.*, 19 B.R. 202, 206 (Bankr. M.D. Fla. 1982); *In re Gonic Realty Trust*, 909 F.2d 624, 628 (1st Cir. 1990). In fact, "[m]any of the grounds expressly identified in section 1112(b)(4) may not apply when a chapter 11 debtor seeks voluntary dismissal of its bankruptcy case." *In re Brewery Park Assocs., L.P.*, 2011 WL 1980289, at *16 (Bankr. E.D. Pa., Apr. 29, 2011). *See also In re Forum Health*, 2011 WL 1134323, at *5 (Bankr. N.D. Ohio 2011) ("Each of the examples of cause in § 1112(b)(4) is based on some kind of failure by a debtor. In other words, these are examples of cause that a party other than a debtor would usually cite as grounds for dismissal.") (emphasis omitted).

19. One factor not explicitly listed in section 1112(b)(4) that courts have found constitutes cause for voluntary dismissal is the inability of a debtor to carry out the duties of a debtor-in-possession. *See, e.g., All Denominational New Church v. Pelofsky (In re All Denominational New Church)*, 268 B.R. 536, 538 (B.A.P. 8th Cir. 2001) (finding that "[a] failure to file monthly operating statements, whether based on inability to do so or otherwise, undermines the chapter 11 process and constitutes cause for dismissal or conversion of chapter

11 proceedings."); *see also In re 30 Hill Top Street Corp.*, 42 B.R. 517, 521 (Bankr. D. Mass. 1984) (dismissing a bankruptcy case when trustee was unable to operate debtor's nursing home in compliance with state law due to lack of funds); *In re Charles George Land Reclamation Trust*, 30 B.R. 918, 923 (Bankr. D. Mass. 1983) (dismissing a bankruptcy case filed by owner and operator of waste disposal facility when it was impossible for any trustee to manage the debtor's site in compliance with state law).

20. Moreover, in chapter 11 cases involving foreign debtors, as is the case here, at least one court has found cause to dismiss a case under section 1112(b) where: (a) the majority of the debtor's assets were located in a foreign jurisdiction; (b) the vast majority of the debtor's business and financial activities occurred and continued to occur in a foreign jurisdiction; (c) activities necessary to achieve the purposes of the debtor's chapter 11 case required the continued participation of a foreign government in its role as the regulator; and (d) it was unclear that the U.S. court could obtain personal jurisdiction of the pertinent parties sufficient to grant the relief sought in the chapter 11 proceedings. *In re Yukos Oil Co.*, 321 B.R. 396, 410-11 (Bankr. S.D. Tex. 2005). The facts here are analogous.

21. Further, courts may dismiss a chapter 11 case for cause if a debtor is unable "to effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time." *In re American Capital Equipment*, 688 F.3d at 162 n.10 (3d Cir. 2012) ("the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause [in section 1112(b)] are not exhaustive."); *see also Bronson* v. *Thompson (In re Bronson)*, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should exercise its discretion under § 1112(b) to dismiss or convert."); *In re Ramreddy, Inc.*, 440 B.R. 103, 113 n.26 (Bankr.

E.D. Pa. 2009) (citation omitted) (noting that "[c]ourts have held that the inability to propose a feasible reorganization or liquidation plan, by itself, provides 'cause' for dismissal or conversion of a chapter 11 case on request of an interested party.").

22. In addition, in the context of a motion to dismiss a case under section 1112(b), the Third Circuit has repeatedly noted that the Supreme Court "has identified two of the basic purposes of Chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119; *see also In re American Capital Equipment, LLC*, 2008 WL 4597221, at *2 (3d Cir. Oct. 16, 2008). If neither of these purposes can be demonstrated, dismissal is proper. *Id.*

23. Here, the circumstances affecting the Turkish Debtors squarely constitute "cause" to dismiss their Chapter 11 Cases. *First*, "cause" exists because, given the freeze and seizure of substantially all Turkish assets of the Turkish Debtors and because the Debtors have no reason to believe that the Turkish authorities will comply with this Court's orders, the Turkish Debtors have been, and expect to continue to be, unable to perform the duties and obligations of a chapter 11 debtor-in-possession. *See* 11 U.S.C. § 1107(a). For example, the Turkish Debtors have been unable to account for all property in Türkiye or marshal assets. In addition, because the Turkish authorities have frozen local bank accounts, the Turkish Debtors have been unable to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

24. *Second*, it is not economically sensible for the Turkish Debtors to move forward in chapter 11 as a result of the Turkish authorities' actions, including the asset freeze and seizure, and because the Debtors have no reason to believe that Turkish authorities will comply with orders of this Court. Without cooperation from the Turkish authorities (which is not reasonably expected at this point), the Turkish Debtors cannot achieve the five core

objectives of these Chapter 11 Cases—*i.e.*, implementation of controls, asset protection and recovery, transparency and investigation, efficiency and coordination, and maximization of value—given that substantially all of their assets are in Türkiye and all of their business and financial activities are in the country and subject to regulatory oversight by Turkish authorities.

25.  *Third*, because substantially all assets of the Turkish Debtors have been frozen and seized and the Turkish Debtors' operations suspended for an unforeseeable period, it would not be economically sensible for the Turkish Debtors to continue in a chapter 11 process that will in all likelihood not be resolved within a reasonable period. For the same reason, the Turkish Debtors are not in control of any property whose value can be maximized for the benefit of their creditors at this time, and there is uncertainty whether this will become possible.

26.  For the reasons above, the Debtors submit that sufficient cause exists for the dismissal of the Turkish Debtors' Chapter 11 Cases.

B.  <u>Dismissal of the Turkish Debtors' Chapter 11 Cases Is in the Best Interests of the Creditors and Estates</u>.

Once cause is established, a court must examine whether dismissal or conversion of a case to chapter 7 is in the best interests of the creditors and the estate. *In re American Capital Equipment*, 688 F.3d at 161. While the Bankruptcy Code does not define the "best interests of the creditors and the estate," "[t]he cases are uniform in holding that the decision to dismiss or convert is within the bankruptcy court's discretion and is based on the facts. It is a case-by-case decision." *In re Calrissian LP*, 2018 WL 3854004, at *2 (Bankr. D. Del. 2018); *see also In re Hampton Hotel*, 270 B.R. at 359 (noting that "courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interest of the creditors.").

27.  Where a debtor is unable to effectuate a chapter 11 plan, dismissal is appropriate because "neither creditors nor the estate could conceivably benefit" from the

continued adjudication of the chapter 11 proceedings. *See In re American Capital Equipment*, 688 F.3d at 162, 163 (finding that the "best interest of creditors and the estate" warranted relief under section 1112(b) where "it is clear that . . . no future plan would be able to be effectuated under Chapter 11."); *Monsour Medical Center, Inc.* v. *Stein (In re Monsour Medical Center, Inc.)*, 154 B.R. 201, 207 (Bankr. W.D. Pa. 1993) (holding that dismissal of the debtor's chapter 11 case was in the best interests of the creditors and the debtor's estate because it was "highly unlikely that debtor will put together a confirmable plan of reorganization if it remains in bankruptcy.").

28. Further, a dismissal of a debtor's chapter 11 case meets the "best interests of creditors" test where a debtor has nothing left to reorganize or the debtor's assets are fixed and liquidated. *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

29. Here, prolonging the Turkish Debtors' Chapter 11 Cases under the existing circumstances would "only burden the estate with mounting attorney and administrative fees." *In re Monsour Medical Center, Inc.*, 154 B.R. at 207. On the other hand, in light of the circumstances, the distributable value to creditors of other Debtors through Chapter 11 Cases is not expected to be material.

30. In addition, dismissal of the Turkish Debtors' Chapter 11 Cases is warranted here because the alternative—*i.e.*, conversion to chapter 7—would not serve the best interests of the Debtors' estates and creditors. Given the asset freeze and seizure and the resulting lack of assets to be administered by the Turkish Debtors, conversion to a chapter 7 proceeding would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates. Moreover, if these Chapter 11 Cases were converted to a

chapter 7 case, the chapter 7 trustee would have no different or better ability to reach assets located in Türkiye for the benefit of the creditors than the Turkish Debtors.

31. Accordingly, the Debtors respectfully submit that voluntary dismissal of the Turkish Debtors' Chapter 11 Cases is in the best interests of the Turkish Debtors' creditors and estates. As a result, this Court should dismiss the Turkish Debtors' Chapter 11 Cases.

## II. Alternatively, the Court Should Dismiss the Turkish Debtors' Chapter 11 Cases Pursuant to Section 305(a) of the Bankruptcy Code.

32. Section 305(a)(1) of the Bankruptcy Code provides that the "court . . . may dismiss a case under [chapter 11], at any time if – (1) the interests of the creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). "The decision to abstain, either by suspension or dismissal, is committed to the Court's discretion." *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007).

33. Courts look to the following *non-exhaustive* list of factors to gauge the overall best interests of the creditors and debtor, including, among other things: (a) economy and efficiency of administration; (b) whether federal proceedings are necessary to reach a just and equitable solution; (c) whether there is an alternative means of achieving an equitable distribution of assets; and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case. *In re Crown Village Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del 2009).

34. In addition, courts have dismissed chapter 11 cases under section 305(a) where (a) the case would not result in an economical and expeditious administration of the debtor's estate or (b) it is unlikely that the debtor could confirm a chapter 11 plan. *See, e.g.*, *In re Xacur*, 219 B.R. 956, 969 (Bankr. S.D. Tex. 1998) (dismissing an involuntary chapter 11 case commenced against a Mexican debtor under section 305(a) where the chapter 11 proceeding would not "result in an economical and expeditious administration" of the debtor's estate

because of "the doubtful enforceability of bankruptcy court orders."); *In re Monsour Medical Center, Inc.*, 154 B.R. at 207 (dismissing a debtor's chapter 11 case under section 305(a) where "it [was] highly unlikely that debtor will put together a confirmable plan of reorganization.").

35. Here, for the reasons described above, dismissal under section 305(a) is in the best interests of the creditors and the Debtors' estates. Turkish authorities are not bound by the provisions of the Bankruptcy Code and the Debtors have no reason to believe that the Turkish government will comply with this Court's orders. This Court can neither enforce its own orders in Türkiye nor bind the parties necessary for successful proceedings with respect to the Turkish Debtors. Accordingly, continuing these chapter 11 proceedings will result in a waste of scarce resources and the unnecessary accumulation of fees.

36. Accordingly, dismissal of the Turkish Debtors' Chapter 11 Cases is in the best interests of both the creditors and the Debtors' estates, and this Court should dismiss these cases pursuant to section 305(a) of the Bankruptcy Code.

### III. Alternatively, the Court Should Dismiss the Turkish Debtors' Chapter 11 Cases Pursuant to Section 105(a) of the Bankruptcy Code.

37. Section 105(a) of the Bankruptcy Code provides the Court with supplemental authority to effectuate the overall policy objectives of the Bankruptcy Code in connection with a motion to dismiss a chapter 11 case. *See* 11 U.S.C. § 105(a) ("[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

38. Here, given the circumstances discussed above, the Turkish Debtors currently have no ongoing operations or material assets in their control and it is not expected they will regain such control in a foreseeable future, and therefore at this time have no property available to maximize for the benefit of their creditors. Rather, at this juncture, the focus with respect to the Turkish Debtors must be to minimize the further incurrence of administrative

expenses. The voluntary dismissal of the Turkish Debtors' Chapter 11 Cases accomplishes this goal. Absent a dismissal, the Debtors would continue to incur substantial chapter 11 administrative expenses.

39. Accordingly, the dismissal of the Turkish Debtors' Chapter 11 Cases is consistent with the policy objectives of the Bankruptcy Code and this Court should dismiss such cases.

## IV. All Orders Should Remain in Effect for the Time Period the Turkish Debtors Were Part of the Chapter 11 Cases.

40. The Debtors request that all stipulations, settlements, rulings, orders, and judgments of this Court entered in these jointly-administered Chapter 11 Cases remain in full force and effect and survive the dismissal of the Chapter 11 Cases solely with respect to the time period the Turkish Debtors were part of the Chapter 11 Cases. Although section 349 of the Bankruptcy Code typically contemplates that dismissal will reinstate the prepetition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, this Court may "for cause, orde[r] otherwise." 11 U.S.C. § 349(b). "[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'" *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 984 (2017).

41. The Debtors submit that cause exists to allow all stipulations, settlements, rulings, orders, and judgments entered by the Court during the Chapter 11 Cases to be given continued effect for the time period the Turkish Debtors were part of the Chapter 11 Cases, notwithstanding the requested dismissal. The relief requested is necessary to protect the Debtors and preserve the authority the Debtors had to act pursuant to the various orders entered by this Court including, but not limited to, those authorizing the Debtors, including the Turkish Debtors, to pay (a) prepetition wages, salaries and other compensation and benefits, and reimbursable

expenses, to employees and (b) prepetition trade claims of foreign (non-U.S.) vendors. Unless the Court orders otherwise, section 349 of the Bankruptcy Code could unravel the effect and authorizations of the orders entered in the Chapter 11 Cases. By allowing the orders of this Court to remain in full force and effect and survive dismissal for the period of time the Turkish Debtors were part of the Chapter 11 Cases, the Court will preserve the Debtors' authority to act pursuant to such orders notwithstanding dismissal of the Turkish Debtors' Chapter 11 Cases.

42. This Court has granted relief similar to the relief requested herein with respect to orders of the Court remaining in full force and effect and surviving dismissal of a debtor's chapter 11 case. *See, e.g., In re VG Liquidation, Inc., et al.*, Case No. 18-11120 (JTD) (Bankr. D. Del. Aug. 19, 2019) [D.I. 1183, 1184] (authorizing all prior orders of the court to "remain in full force and effect, . . . be unaffected by the dismissal of the Chapter 11 Case, and [be] specifically preserved for purposes of finality of judgment and *res judicata*."); *In re BioAmber Inc.*, Case No. 18-11078 (LSS) (Bankr. D. Del. June 20, 2018) [D.I. 34] (same); *In re St Alexius Properties, LLC*, Case. No. 18-12527 (CSS) (Bankr. D. Del. Feb. 4, 2019) [D.I. 5] (ordering that, notwithstanding section 349, all orders of this Court entered "on or before the Dismissal Date shall remain in full force and effect and shall survive the dismissal of the bankruptcy cases.").

### Notice

43. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) the Local Directors; (h) all known creditors of the Turkish Debtors; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule

2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: January 27, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>        brown@lrclaw.com<br>        pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>        bromleyj@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        kranzleya@sullcrom.com<br><br>*Counsel for the Debtors*<br>*and Debtors-in-Possession* |