IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX Trading, LLC, et al.,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF 3COMMAS TECHNOLOGIES OÜ & NIFTY ISLAND, LLC: MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING PROCEDURES FOR THE SALE OR TRANSFER OF CERTAIN DE MINIMIS ASSETS AND FUND ASSETS, (II) APPROVING ASSUMPTION, ASSIGNMENT AND REJECTION PROCEDURES AND 011) GRANTING RELATED RELIEF**

In support of their limited objection, 3Commas Technologies OÜ, established under the laws of Estonia ("3Commas"), and Nifty Island LLC, a Wyoming limited liability company ("Nifty Island")(collectively, the "Objectors") hereby state:

**General Background**

1.  The Debtors were involved in various investments in assets such as coins, tokens, private companies, publicly traded securities, and crypto-related funds. These investments spanned multiple industries including crypto, fintech, gaming, and social media. Some assets were held for investment purposes and others were integrated into their core crypto exchange businesses.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2. The investments and acquisitions were conducted through different silos, with the Alameda Silo specializing in crypto trading and over-the-counter services and the Ventures Silo managing private investments through various affiliated entities.

3. According to Debtors, many of the investments and certain acquisitions that the Debtors made were "relatively small." Debtors have labelled these as "De Minimis Assets." These De Minimis Assets consist of approximately 185 investments (including acquisitions of minority interests and whole-company acquisitions) made for $1,000,000 or below each, approximately 75 investments made for between $1,000,000 and $5,000,000 each, and approximately 40 investments made for between $5,000,000 and $25,000,000 each. These assets, according to the Debtors, are easily separated from the Debtors' core operations.

4. The Debtors have sought judicial permission to dispose of the De Minimis Assets to ameliorate this risk via the Sale Procedures, procedures which are at issue in this Motion.

## The Sale Procedures

5. Generally speaking, the Debtors propose to notify their Consulting Professionals of any sales and are allowed to consummate any transactions if they collectively believe that the transaction(s) are in the Debtors' best interests.

6. What is unclear is how the transactions will impact the underlying deal. While the motion says, "any such transactions shall be subject to the terms of the documentation executed in connection with such transaction," it does not indicate whether the referenced transaction is the sale contemplated by this order or the underlying deal that generated the asset.

## The Objectors

7. It should be noted that neither of the Objectors have been identified by the Debtors in connection with the above described De Minimis Assets. However, based on the

general descriptions provided by the Debtors, one or both of these Objectors may fall within the parameters of the Motion. Both Objectors are investees of a debtor or debtor related entity and both fall within the stated amounts the Motion defines as a "De Minimis Asset."

8. Objector 3Commas is an investee by way equity investment agreements through which Alameda Research LTD purchased equity stakes in company. Objector Nifty Island is an investee of an Alameda Research related entity by way of a Sale Agreement for Future Tokens ("SAFT").

9. Each of these investments have certain particularities that are relevant in the context of any sale or transfer proposed in the Motion. For example, the stake held in Objector 3Commas is subject to a Right of First Refusal in favor of the company and its shareholders under the relevant equity investment agreement between investor and investee. Similarly, in connection with Objector Nifty Island, the SAFT provides the company with the right of approval of any transfer or sale of any interest held by the Debtors. Moreover, any sale involving any stake in Nifty Island may be further complicated in that any sale or transfer may cause issues under Federal Securities law which may but is not necessarily applicable to the tokens underlying the SAFT.

10. Should either of these investments in the Objectors be included as De Minimis Assets as proposed by the Motion, then each affected Objector or investee should be afforded the rights and protections provided each investee under the terms of that given investment, including (as suggested in the Motion), but not limited to, the opportunity to purchase back the Debtors' stake in the company.

**Limited Objection**

11. To be clear, the Objectors do not object to any transfer in keeping with the terms of the agreements governing their relationship with the Debtor – they just object to the extent that the transfer contravenes any of those provisions.

12. They are *not* seeking to enforce any *ipso facto* forfeiture and are willing to let the transactions occur in keeping with the applicable agreements. *See In re Yow*, 590 B.R. 696, 702-03 (Bankr. E.D.N.C. 2018) ("Here, the Purchase Option provisions contained in Sections 10.6 and 10.7 of the agreements are not *ipso facto* in nature. The Purchase Option provisions do not, by themselves, forfeit, modify, or terminate the Debtor's interest in property; instead, they provide the other members an opportunity to purchase the Membership Interests") *and compare* 3 *Collier Bankruptcy Practice Guide P.* 68.03.

13. That this Court should make it clear that the underlying agreements must be abided by is an entirely proper request. Given that the "Agreements . . . do not contain unenforceable *ipso facto* clauses," the law governing the agreements at issue control the inquiry as to whether "the Trustee is entitled to sell the interests at issue." *In re Yow*, 590 B.R. 696, 703 (Bankr. E.D.N.C. 2018). Consequently, any sale has to comply with the terms of the applicable agreements between the Debtor and the Objectors.

**[Remainder of Page Intentionally Left Blank]**

**Conclusion**

14. For the foregoing reasons, the Objectors hereby request that the motion be denied, or alternatively, that the order be modified to expressly provide that any transfer pursuant to this order be in keeping with all applicable agreements.

1 FEBRUARY 2023

*/s/ Mark M. Billion*

Mark M. Billion, Esq.
Billion Law
1073 S. Governors Ave.
Dover, DE 19904
markbillion@billionlaw.com

- with -

TOMAS A. ORTIZ
Zuber Lawler LLP
350 S. Grand Avenue, 32nd Floor
Los Angeles, CA 90071
+1 (213) 596-5620
tortiz@zuberlawler.com