## EXHIBIT 1

**Proposed Embed Business Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 233, 487** |

**ORDER (I) APPROVING THE EMBED BUSINESS PURCHASE AGREEMENT,
(II) APPROVING THE SALE OF THE EMBED BUSINESS FREE AND CLEAR OF
ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES[, (III) AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS]
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors

and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"),

pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1, among other things,

(a) approving the Purchase Agreement (as defined below) for the Embed Business, (b) approving

the Sale of the Embed Business free and clear of all liens, claims, interests and encumbrances[,

(c) authorizing the assumption and assignment of certain executory contracts] and (d) granting

related relief; and this Court having entered an order on January 12, 2023 [D.I. 487], approving

the Bid Procedures and granting certain related relief (the "Bid Procedures Order"); and multiple

Qualified Bids having been received; and an Auction having been held in accordance with the

Bid Procedures on February [21], 2023; and the Debtors, in consultation with the Consulting

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Professionals, having determined at the conclusion of the Auction that [●] ("Buyer") submitted the highest and best bid for the Embed Business and is the Successful Bidder; and the Debtors having named [●] as the Alternate Bidder; and a hearing on the Sale of the Embed Business (the "Sale Hearing") having been held to review and consider (i) the Motion with respect to the Sale of the Embed Business and all relief related thereto, (ii) the Stock Purchase Agreement, dated as of [●], 2023, by and between Debtor West Realm Shires Inc. ("Seller") and Buyer, a copy of which is attached hereto as Exhibit A (together with any schedules and exhibits thereto, the "Purchase Agreement"), whereby Seller agreed, among other things, to sell 100% of the equity interests of Embed Financial Technologies Inc. ("Embed Technologies") (such equity interests, the "Embed Business") to Buyer on the terms and conditions set forth in the Purchase Agreement (collectively, the "Sale Transaction"), (iii) [*Declarations in Support of the Sale Transaction*] and (iv) any objections thereto that were not resolved prior to the start of the Sale Hearing, and upon the record of the Sale Hearing and all of the proceedings had before this Court; and objections (if any) to the Motion, with respect to the Sale of the Embed Business, having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT THAT:[3]

A.    Jurisdiction and Venue. This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Embed Business to be sold, transferred or conveyed pursuant to the Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This Court may issue a final order on the Motion consistent

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* FED. R. BANKR. P. 7052.

with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

      B.    <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for the relief requested in the Motion and for the approvals and authorization herein are sections 105(a), 363 [and 365] of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.

      C.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  To the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

      D.    <u>Sale Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Sale Hearing, (a) the Debtors have provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient opportunity to object to, the Motion with respect to the Sale of the Embed Business and the relief requested therein (including the Debtors' requested findings with respect to successor liability), the bidding process (including, without limitation, the deadline for submitting Qualified Bids), the Sale Hearing, the Sale Transaction[, the proposed assumption and assignment of the contracts on Schedule [1.5(a)] to the Purchase Agreement (the "<u>Assigned Contracts</u>"),] and the proposed entry of this Sale Order in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, (b) such notice was adequate and sufficient under the circumstances of these Chapter 11 Cases and complied

with the Bid Procedures Order and other orders of this Court and (c) no other or further notice is necessary or shall be required.

E.     Opportunity to Object.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Sale Order[, including, but not limited to, the assumption and assignment of the Assigned Contracts and the Cure Amounts (as defined below),] has been afforded to all interested parties, including, but not limited to, the Sale Notice Parties.

F.     Compliance with Bid Procedures.  As demonstrated by evidence proffered or adduced and the representations of counsel at the Sale Hearing, the Bid Procedures (as approved by the Bid Procedures Order) were substantively and procedurally fair to all parties, were the result of arm's-length negotiations and provided a full, fair and reasonable opportunity for any party to make an offer to purchase the Embed Business.  The disclosures made by the Debtors concerning the Motion with respect to the Sale of the Embed Business, the Purchase Agreement, the Auction, the Sale Transaction[, the assumption and assignment of the Assigned Contracts to Buyer,] and the Sale Hearing were good, complete and adequate.  The Debtors (including Seller), Buyer and their respective counsel and other advisors have complied, in good faith, with the Bid Procedures Order and the Bid Procedures in all respects.  As demonstrated by (a) any testimony and other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at or prior to the Sale Hearing and (b) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures and the Bid Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Embed Business,

(ii) provided potential purchasers sufficient information to enable them to make an informed

judgment on whether to bid on the Embed Business and (iii) considered any bids properly

submitted in accordance with the Bid Procedures on or before the Bid Deadline.  Buyer

submitted a Qualified Bid pursuant to the Bid Procedures approved by this Court and was

determined, after consultation with the Consulting Professionals, to be the Successful Bidder for

the Embed Business.

        G.      <u>No Collusion</u>.  Buyer is not an "insider" of the Debtors, as that term is

defined in section 101(31) of the Bankruptcy Code.  The Purchase Agreement and the

transactions contemplated thereby were negotiated, proposed and entered into by Seller and

Buyer without collusion or fraud, in good faith and from arm's-length bargaining positions, and

are substantively and procedurally fair to all parties, and the Purchase Price (as defined in the

Purchase Agreement) was not controlled by any agreement among the bidders.  Neither the

Debtors nor Buyer has engaged in any conduct that would cause or permit the Purchase

Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be

imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor

Buyer has violated section 363(n) of the Bankruptcy Code by any action or inaction.  The

transactions under the Purchase Agreement may not be avoided, and no damages may be

assessed against Buyer or any other party under section 363(n) of the Bankruptcy Code or any

other applicable bankruptcy or non-bankruptcy law.

        H.      <u>Good Faith of Buyer</u>.  Buyer is purchasing the Embed Business in good

faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.

Buyer is therefore entitled to all of the protections afforded by that provision, and otherwise has

proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*:

(a) Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Embed Business; (b) Buyer complied with the provisions in the Bid Procedures Order; (c) Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bid Procedures Order; (d) Buyer in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (e) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by Buyer in connection with the Sale Transaction have been disclosed and (f) no common identity of directors or controlling stockholders exists between Buyer and the Debtors.

    I.  <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, thoroughly and fairly marketed the Embed Business and conducted the related sale process contemplated by the Bid Procedures Order in good faith and in a fair and open manner, soliciting offers to acquire the Embed Business from a wide variety of parties.  The sale process and the Bid Procedures were non-collusive, duly noticed and provided a full, fair, reasonable and adequate opportunity for any person or entity (as such term is defined in the Bankruptcy Code) that expressed an interest in acquiring the Embed Business, or who the Debtors believed may have an interest in acquiring, and be permitted and able to acquire, the Embed Business, to conduct due diligence, make an offer to purchase the Embed Business, and submit higher or otherwise better offers for the Embed Business than Buyer's Successful Bid.  The sale process conducted by the Debtors pursuant to the Bid Procedures Order and the Bid Procedures, including the Auction, resulted in the highest or otherwise best offer for the Embed Business for the Debtors and their estates, was in the best interests of the Debtors and their estates and any other transaction would not have yielded as favorable a result.

J.      The offer to purchase the Embed Business made by Buyer, under the terms and conditions set forth in the Purchase Agreement: (a) was made in good faith and complied in all respects with the Bid Procedures Order; (b) is the highest or otherwise best offer obtained for the Embed Business and will provide a greater recovery for the Debtors' estates than would be provided by any other alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Embed Business being conveyed to Buyer; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates and (f) would not have been made by Buyer absent the protections afforded to Buyer by this Sale Order.

K.      The Debtors' determination, after consultation with the Consulting Professionals, that the Sale Transaction, pursuant to the Purchase Agreement, provides the highest or otherwise best offer for the Embed Business, and its related decision to sell the Embed Business to Buyer, each constitutes a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors and their estates.  The facts and circumstances described in the Motion and the additional evidence adduced in connection with the Sale Hearing demonstrate the exigent nature of the Debtors' business situation, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Embed Business outside of a chapter 11 plan.  Moreover, the Sale of the Embed Business outside of a chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

L.      At the conclusion of the Auction, the Debtors, after consultation with the Consulting Professionals, selected a bid submitted by [●] as the Alternate Bidder on the terms set forth on the record at the Auction.

M.      <u>Fair Consideration</u>.  The consideration provided by Buyer pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Embed Business and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Embed Business for higher or otherwise better value to the Debtors' estates than Buyer.  Approval of the Purchase Agreement and the consummation of the Sale of the Embed Business contemplated thereby is in the best interests of the Debtors and their estates.

N.      <u>No Successor or Other Derivative Liability</u>.  Buyer is not a successor to or mere continuation of or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between Buyer and the Debtors as a result of any action taken in connection with the Sale Transaction.  Buyer shall not be deemed to be holding itself out to the public as a continuation of the Debtors based on the Sale Transaction, the Purchase Agreement, or this Sale Order.  Buyer is not, and shall not be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of Buyer and the Debtors and/or the Debtors' estates.  Buyer would not have entered into the Purchase Agreement if the Sale of the Embed Business were not made free and clear of any successor liability of Buyer.

O.     <u>Corporate Power and Authority</u>.  Seller (a) has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (b) has all corporate authority necessary to consummate the transactions contemplated by the Purchase Agreement and (c) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby.  Seller's Sale of the Embed Business has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for Seller to consummate the Sale Transaction and the other transactions contemplated by the Purchase Agreement.

P.     The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor Buyer are entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

Q.     <u>Title to Assets</u>.  The Embed Business constitutes property of the Debtors' estates and title or rights thereto is currently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The transfer of the Debtors' rights, titles and interests to the Embed Business to Buyer will be, as of the Closing Date (as defined in the Purchase Agreement), a legal, valid and effective transfer of such rights, titles and interests in the Embed Business, which transfer vests or will vest Buyer with all rights, titles and interests of the Debtors to the Embed Business free and clear of all liens, claims, interests and encumbrances, but subject to all Permitted Encumbrances (as defined in the Purchase Agreement).  The Purchase

Agreement is a valid and binding contract between Seller and Buyer and shall be enforceable according to its terms.

R.    <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the Debtors are authorized to transfer all of their right, title and interest in and to the Embed Business free and clear of any interest in the property, other than Permitted Encumbrances.  The Debtors may sell the Embed Business free and clear of all liens, claims, interests and encumbrances against the Debtors, their estates or the Embed Business (except the Permitted Encumbrances) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Holders of liens, claims, interests and encumbrances against the Debtors, their estates or the Embed Business who did not object, or who withdrew their objections, to the Sale Transaction or the Motion, with respect to the Sale of the Embed Business, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of liens, claims, interests and encumbrances (except to the extent that such liens, claims, interests and encumbrances are Permitted Encumbrances) are adequately protected by having their liens, claims, interests and encumbrances, if any, in each instance against the Debtors, their estates or the Embed Business, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Embed Business in which such creditor alleges a lien, claim, interest or encumbrance, in the same order of priority, with the same validity, force and effect that such liens, claims, interests and encumbrances had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

S.      Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Embed Business to Buyer were not free and clear of all liens, claims, interests and encumbrances, other than Permitted Encumbrances.  The total consideration to be provided under the Purchase Agreement reflects Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Embed Business free and clear of all liens, claims, interest and encumbrances (other than Permitted Encumbrances) of any kind or nature whatsoever.

T.      [Assumption and Assignment of the Assigned Contracts.  The Debtors and Buyer have satisfied, to the extent necessary, the requirements of section 365 of the Bankruptcy Code, including subsections 365(b)(1)(A), 365(b)(1)(B) and 365(f), in connection with the assumption and assignment of the Assigned Contracts.  Buyer has demonstrated adequate assurance of future performance with respect to the Assigned contracts pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors shall, to the extent necessary, provide compensation or adequate assurance of compensation, which amount will be paid to non-Debtor counterparties to Assigned Contracts for any actual pecuniary loss to any such party resulting from a default prior to the date of assumption and assignment with respect to an Assigned Contract, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  Except where an Assigned Contract is subject to an unresolved objection to the assumption and assignment of such Assigned Contract, payment of

the Cure Amounts as set forth herein and Buyer's promise to perform the obligations under the

Assigned Contracts after the Closing Date shall constitute adequate assurance of future

performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy

Code.  The Assigned Contracts are assignable notwithstanding any provisions contained therein

to the contrary.

U.    Except as otherwise set forth herein, any objections to the assumption and

assignment of any of the Assigned Contracts to Buyer are hereby overruled.  Any objections to

the Cure Amounts are resolved as set forth herein.  To the extent that any counterparty failed to

timely object to its Cure Amount or adequate assurance of future performance, such counterparty

is deemed to have consented to such Cure Amount and the assignment of its respective Assigned

Contracts to Buyer.]

V.    Waiver of Bankruptcy Rules 6004(h) [and 6006(d)].  Good and sufficient

reasons for approval of the Purchase Agreement and the Sale Transaction have been articulated.

The relief requested in the Motion, with respect to the Sale of the Embed Business, is in the best

interests of the Debtors and their estates.  The Debtors have demonstrated both (a) good,

sufficient and sound business purposes and justifications and (b) compelling circumstances for

the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of

the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the

immediate consummation of the Sale Transaction is necessary and appropriate to maximize the

value of the Debtors' estates.  Accordingly, there is cause to lift the stay contemplated by

Bankruptcy Rules 6004(h) [and 6006(d)] with respect to the transactions contemplated by this

Sale Order.  To maximize the value of the Embed Business and preserve the viability of such

business, it is essential that the Sale Transaction occur within the time constraints set forth in the

Purchase Agreement.  Time is of the essence in consummating the Sale Transaction and the Debtors and Buyer intend to close the Sale Transaction as soon as practicable.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale of the Embed Business to Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

W.    The consummation of the Sale Transaction [and the assumption and assignment of the Assigned Contracts] is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) [and 365], and all of the applicable requirements of such sections have been complied with in respect of the transaction.

X.    <u>Record Retention</u>.  Pursuant to the terms of and subject to the conditions in section [4.11] of the Purchase Agreement, following the Closing (as defined in the Purchase Agreement), Seller, its successors and assigns and any trustee in bankruptcy shall have access to the books and records of Embed Technologies for the specified purposes set forth in, and in accordance with, the Purchase Agreement.

Y.    <u>Personally Identifiable Information</u>.  The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale of the Embed Business.

Z.    <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their estates.

IT IS HEREBY ORDERED THAT:

**A.**      **General Provisions**

1.      The Sale of the Embed Business is hereby APPROVED as set forth herein.

2.      All objections, responses, reservations of rights, or requests for any continuances concerning the Motion with respect to the Sale of the Embed Business or the relief requested therein, the Purchase Agreement, the Sale Transaction, the entry of this Sale Order or the relief granted herein, solely as it relates to the relief granted by this Sale Order that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits with prejudice, except as otherwise set forth herein.  All interested parties that failed to timely object to the Motion, with respect to the Sale of the Embed Business, are deemed to have consented to the relief granted herein for all purposes.

3.      Notice of the Sale Hearing was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 [and 6006], the Local Rules, and as required by the Bid Procedures Order.

**B.**      **Approval of the Purchase Agreement**

4.      The Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby authorized and approved.  The failure to specifically include or make reference to any particular provision of the Purchase Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement, the Sale Transaction and the transactions contemplated therein or in connection therewith are authorized and approved in their entirety.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Buyer pursuant to and in accordance with the terms and conditions of the Purchase Agreement, (b) close the Sale Transaction as contemplated in the Purchase Agreement and this Sale Order and (c) execute and deliver, perform under, consummate and implement the Purchase Agreement[, including the assumption and assignment to Buyer of the Assigned Contracts,] together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale Transaction.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of liens, claims, interests and encumbrances in, against or on all or any portion of the Embed Business (whether known or unknown), Buyer and all successors and assigns of Buyer, the Embed Business and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, Buyer and the respective successors and assigns of each of the foregoing.

**Consummation of the Sale Transaction**

7.        Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer all of their rights, titles and interests to the Embed Business to Buyer on the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, titles and interests in the Embed Business and shall vest Buyer with all of the Debtors' rights, title and interest in the Embed Business and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of all liens, claims, interests and encumbrances of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability, any tax liens or mechanic's liens asserted against the Embed Business, other than Permitted Encumbrances, with all such liens, claims, interests and encumbrances to attach to the net cash proceeds ultimately attributable to the property against or in which such liens, claims, interests and encumbrances are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such liens, claims, interests and encumbrances now have against the Embed Business, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

8.        A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Permitted Encumbrances.

9.        If any person or entity which has filed statements or other documents or agreements evidencing liens, claims, interests and encumbrances in, against or on all or any portion of the Embed Business (other than statements or documents with respect to Permitted Encumbrances) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of

documenting the release of all liens or interests which the person or entity have or may assert

with respect to all or any portion of the Embed Business, the Debtors, Buyer and each of their

respective officers, employees and agents are hereby authorized and empowered to execute and

file such statements, instruments, releases and other documents on behalf of such person or entity

with respect to the Embed Business.

10.     This Sale Order is and shall be effective as a determination that, on the

Closing Date, all liens, claims, interests and encumbrances of any kind or nature whatsoever

existing as to the Embed Business prior to the Closing Date, other than Permitted Encumbrances,

shall have been unconditionally released, discharged and terminated from such shares, and that

the conveyances described herein have been effected.  This Sale Order is and shall be binding

upon and govern the acts of all persons and entities, including, without limitation, all filing

agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,

registrars of deeds, administrative agencies, governmental departments, secretaries of state,

federal, state and local officials and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record

or release any documents or instruments, or who may be required to report or insure any title or

state of title in or to any lease; and each of the foregoing persons and entities is hereby directed

to accept for filing any and all of the documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Purchase Agreement.

**[Assumption and Assignment of Contracts**

11.     Pursuant to section 365 of the Bankruptcy Code, and subject to and

conditioned upon the Closing, Seller's assumption and assignment to Buyer of the Assigned

Contracts is hereby approved.

12.     Seller is hereby authorized and directed in accordance with section 365 of

the Bankruptcy Code to (a) assume and assign to Buyer, effective upon the Closing of the Sale

Transaction, the Assigned Contracts free and clear of all liens, claims, interests and

encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances), and

(b) execute and deliver to Buyer such documents or other instruments as Buyer deems may be

necessary to assign and transfer the Assigned Contracts to Buyer.

13.     With respect to the Assigned Contracts: (a) each Assigned Contract is an

executory contract or unexpired lease of nonresidential real property under section 365 of the

Bankruptcy Code; (b) Seller may assume each of the Assigned Contracts in accordance with

section 365 of the Bankruptcy Code; (c) Seller may assign each Assigned Contract in accordance

with sections 363 and 365 of the Bankruptcy Code and any provisions in any Assigned Contract

that prohibit or condition the assignment of such Assigned Contract or allow the party to such

Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension,

or modify any term or condition upon the assignment of such Assigned Contract, constitute

unenforceable anti-assignment provisions which are deemed void and of no force and effect

solely with respect to this Sale; (d) all other requirements and conditions under sections 363 and

365 of the Bankruptcy Code for the assignment to and assumption by Buyer of each Assigned

Contract have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to, and

following the closing of the Sale Transaction remain in full force and effect for the benefit of,

Buyer, notwithstanding any provision in any such Assigned Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code,

upon payment of the applicable Cure Amount, the Debtors shall be relieved from any further

liability with respect to the Assigned Contracts after such assignment to and assumption by

Buyer and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code,

Buyer shall be fully and irrevocably vested in all rights, titles and interests of the Debtors in each

Assigned Contract.

14.    The Debtors are authorized to enter into any amendment of an Assigned

Contract on terms acceptable to Buyer and agreed to by the counterparty to such Assigned

Contract in connection with the assumption and assignment of such Assigned Contract, and the

assumption and assignment of the Assigned Contracts authorized by this Sale Order shall be of

the Assigned Contracts, as so amended or modified.

15.    All defaults or other obligations of the Debtors under the Assigned

Contracts arising or that have become due and not paid prior to the Closing that are required to

be cured by section 365(b)(1) of the Bankruptcy Code (without giving effect to any acceleration

clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy

Code) shall be cured by Buyer at or before the Closing.  To the extent that any counterparty to an

Assigned Contract did not object to its Cure Amount or adequate assurance of future

performance by the applicable Contract Objection Deadline, such counterparty is deemed to have

consented to such Cure Amount and the assumption and assignment of its respective Assigned

Contracts from Seller to Buyer.

16.    Unless a different amount has been agreed to by a counterparty to an

Assigned Contract or otherwise ordered by this Court, the amount set forth in the [*Notice of

Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure

Amount*] and schedule attached as Exhibit A thereto (the "Cure Notice"), reflects the sole

amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults

under the Assigned Contracts to the extent such defaults remain outstanding as of the Closing Date (collectively, the "Cure Amounts"), and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Buyer of the Assigned Contracts; provided, however, that a counterparty to an Assigned Contract shall not be barred from seeking additional amounts on account of any defaults occurring between the deadline to object to the Cure Amounts set forth in the Cure Notice and the assumption of the Assigned Contract.

17.     Upon the Debtors' assumption and assignment of the Assigned Contracts to Buyer under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted to (a) declare a default by Buyer under such Assigned Contract or (b) otherwise take action against Buyer as a result of Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assigned Contract.  Each non-Debtor party to a Assigned Contract hereby is also forever barred, estopped and permanently enjoined from (i) asserting against Buyer, or its property, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or, against Buyer, any counterclaim, unexercised setoff or any other claim asserted or assertable against the Debtors and (ii) imposing or charging against Buyer or its Affiliates (as defined in the Purchase Agreement) any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Buyer of the Assigned Contracts.  The validity of such assumption and assignments of the Assigned Contracts shall not be affected by any dispute between the Debtors and any disputes regarding the Cure Amount of any Assigned Contract.

18.      Upon payment of the applicable Cure Amounts and assignment of the applicable Assigned Contracts to Buyer, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assigned Contracts and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

19.      The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assigned Contracts.

20.      In the event that the Sale does not close, none of the Assigned Contracts shall be assumed by virtue of this Order and shall remain subject to further assumption and/or assignment in these Chapter 11 Cases.]

**Prohibition of Actions Against Buyer**

21.      Except as expressly provided for in this Sale Order or the Purchase Agreement, Buyer shall not have any liability or other obligation of the Debtors arising under or related to the Embed Business prior to the Closing.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreement, Buyer shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to Paragraph 26 below), successor or transferee liability, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account

of warranties, environmental liabilities (subject to Paragraph 26 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Embed Business prior to the Closing.  The transaction contemplated by the Purchase Agreement does not amount to a consolidation, merger or de facto merger of Buyer, on the one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial continuity between Buyer, on the one hand, and the Debtors or their affiliates, on the other hand, and there is no common identity between the Debtors or their affiliates, on the one hand, and Buyer, on the other hand, and Buyer is not a mere continuation of the Debtors or their estates, and Buyer does not constitute a successor to the Debtors or their estates.

22.     Except with respect to Permitted Encumbrances or as expressly otherwise set forth in this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding liens, claims, interests and encumbrances of any kind or nature whatsoever against or in all or any portion of the Embed Business (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Embed Business or the operation thereof prior to the Closing Date or the transfer of the Embed Business to Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against Buyer, its Affiliates, its successors or assigns, their property or the Embed Business, such persons' or entities' liens, claims, interests and encumbrances in and to the Embed Business, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other

proceeding against Buyer, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Buyer, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any liens, claims, interests and encumbrances against Buyer, its Affiliates, its successors, assets or properties; (d) asserting any unexercised setoff or right of subrogation against any obligation due Buyer, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate Embed Technologies.  On the Closing Date, each creditor is authorized to execute such documents and take all other actions as may be necessary to release liens, claims, interests and encumbrances in or on the Embed Business (except Permitted Encumbrances), if any, as provided for herein, as such liens, claims, interests and encumbrances may have been recorded or may otherwise exist.

23.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Embed Business to Buyer in accordance with the terms of the Purchase Agreement and this Sale Order.

24.    Buyer has given substantial consideration under the Purchase Agreement for the benefit of the Debtors and their estates.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential liens, claims, interests and encumbrances as to the Embed Business pursuant to this Sale Order, which releases as to the Embed Business shall be deemed to have been given by all holders of liens, claims, interests and encumbrances in the Embed Business, other than holders of liens, claims, interests and

encumbrances relating to the Permitted Encumbrances.  The consideration provided by Buyer for the Embed Business under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

25.     Alternate Bid.  The Alternate Bid is binding on the Alternate Bidder in accordance with the terms thereof in the event that the Debtors fails to close the Sale Transaction with the Successful Bidder.  The Debtors will submit a separate form of sale order with the Alternate Bidder if the Debtors propose to proceed to Closing with the Alternate Bidder.  The Good Faith Deposit of the Alternate Bidder will be returned no later than five (5) business days following the Closing of the Sale Transaction with the Successful Bidder or, if the Debtors determine to proceed to Closing with the Alternate Bid, applied in accordance with the terms thereof.

**Other Provisions**

26.     Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

27.     Further, nothing in this Sale Order or Purchase Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

28.     Notwithstanding anything to the contrary in the Motion, this Sale Order, or any findings announced at the hearing, nothing in the Motion, this Sale Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

29.     The consideration provided by Buyer to the Debtors pursuant to the Purchase Agreement for the Embed Business constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

30.     The transactions contemplated by the Purchase Agreement are undertaken by Buyer without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale are duly stayed pending such appeal.  Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

31.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale

Order and the Purchase Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

32.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) [and 6006(d)], this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Buyer are authorized to close the Sale Transaction immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rules 6004(h) [and 6006(d)] is hereby expressly waived and shall not apply.

33.     The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

34.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.

35.     Pursuant to the terms of and subject to the conditions contained in the Purchase Agreement, following the Closing, Seller, its successors and assigns and any trustee in

bankruptcy will have access to the books and records of Embed Technologies subject to the terms of, and for the specified purposes set forth in, and in accordance with, section [4.11] of the Purchase Agreement.

36.    This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

37.    The Purchase Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

38.    No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Purchase Agreement)) shall apply to the Debtors' conveyance of the Embed Business or this Sale Order.

39.    The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale of the Embed Business.

40.    Buyer is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction, the assumption and assignment of the Assigned Contracts, and any issues related to or otherwise connected to the Purchase Agreement and the Sale Transaction.

41.     Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Embed Business.

42.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _____
       Wilmington, Delaware

_____
The Honorable John T. Dorsey
United States Bankruptcy Judge

EXHIBIT A

Stock Purchase Agreement