IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Re:  D.I. 481**<br><br>**Hearing Date:  Feb. 15, 2023, at 10:00 a.m.**<br>**Objection Deadline:  Jan. 25, 2023 (extended for**<br>**U.S. Trustee to Feb. 9 at 2 p.m.)** |

**OBJECTION OF THE UNITED STATES TRUSTEE**
**TO THE APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR TO THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**EFFECTIVE AS OF DECEMBER 22, 2022**

Andrew R. Vara, United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his counsel, files this objection (the "Objection") to the *Application for an Order Authorizing the Retention and Employment of FTI Consulting, Inc.* ("FTI") *as Financial Advisor to the Official Committee of Unsecured Creditors Effective as of December 22, 2022* [D.I. 481] (the "Application"). In support thereof, the U.S. Trustee respectfully represents:

### I.    PRELIMINARY STATEMENT

1.    FTI is employed as the financial advisor to the official committee of unsecured creditors in the chapter 11 cases of *Voyager Digital Holdings, Inc.*, et al., 22-10943

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

(MEW) (Bankr. S.D.N.Y.). Debtor Alameda Research Ltd. ("Alameda" or "Plaintiff") recently sued Voyager Digital, LLC ("Voyager") and HTC Trading Inc. (Voyager and HTC Trading Inc., together, "Defendants") to recover $445.8 million in preferential transfers (the "Preference Adversary"). The $445.8 million sum is significant to the general unsecured creditors of both the FTX and Voyager estates, as both cases involve no material secured debt; the outcome of the Preference Adversary will have a direct and substantial effect on the recoveries for general unsecured creditors of both estates. Because FTI represents the fiduciary body protecting general unsecured creditors of Voyager, a defendant in the Preference Adversary, FTI represents an interest adverse to Alameda's estate. The estates of the Voyager debtors have an interest in eliminating and/or minimizing the same claim that the estates of the FTX debtors have an interest in maximizing. Under these facts and circumstances, section 1103(b) of the Bankruptcy Code does not permit FTI to serve the fiduciary bodies for both bankruptcy estates simultaneously in connection with their respective bankruptcy cases, and FTI cannot cure the manifest, actual conflict of interest between the FTX and Voyager estates by proposing to recuse and/or remove itself from inter-estate matters. The Application should be denied.[2]

## II.    JURISDICTION, VENUE AND STANDING

2.    This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. § 1334. This Court is authorized to hear and determine the Application and this Objection pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the

---

[2] In addition to the issue(s) addressed in this Objection, the U.S. Trustee's counsel requested certain supplemental disclosures from FTI and modifications to the proposed retention order that FTI agreed to. The U.S. Trustee reserves the right to supplement this Objection, or to assert additional objections at the hearing, if such modifications to the proposed orders are not made and/or supplemental disclosures are not filed.

2

United States District Court for the District of Delaware dated February 29, 2012. Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

3. Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Specifically, the U.S. Trustee is charged with "monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications[.]" 28 U.S.C. § 586(a)(3)(I).

4. The U.S. Trustee has standing to be heard with respect to the Application and this Objection pursuant to 11 U.S.C. § 307.

### III.   FACTUAL BACKGROUND

5. On November 11, 2022, all Debtors other than West Realm Shires Inc. filed voluntary chapter 11 petitions in this Court. On November 14, 2022, West Realm Shires Inc. filed a voluntary chapter 11 petition in this Court.

6. The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. On December 15, 2022, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") [D.I. 231].

8. On January 11, 2023, the Committee filed the Application. Through the Application, the Committee seeks to retain FTI as the Committee's financial advisor, effective

December 22, 2022.  FTI's proposed services to the Committee include "Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers[.]" Appl. ¶ 8.

9. FTI submitted the declaration of Steven Simms (the "Simms Declaration") in support of the Application.  In paragraph 4 of the Simms Declaration, FTI disclosed that

> The Official Committee of Unsecured Creditors (the "Voyager Committee") appointed in the chapter 11 cases of Voyager Digital Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Voyager Debtors") selected FTI as its financial advisor (the "Voyager Committee Engagement"). The Voyager Committee Engagement is unrelated to the Debtors and these chapter 11 cases. Notwithstanding the foregoing, the Debtors and the Voyager Debtors are creditors of one another. As such, FTI personnel will not participate in any particular matter involving a dispute between the Debtors and the Voyager Debtors.

Appl. Ex. B (Simms Decl.) ¶ 4 (internal footnote omitted).

10. On July 5, 2022, Voyager Digital Holdings, Inc. and two affiliates – Voyager and Voyager Digital Ltd. (collectively, the "Voyager Debtors") – filed petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York.  The cases are being jointly administered under the caption *In re Voyager Digital Holdings, Inc., et al.*, 22-10943 (MEW).

11. On July 19, 2022, the United States Trustee for Region 2 appointed an official committee of unsecured creditors in the Voyager Debtors' cases (the "Voyager Committee"). [Voyager D.I. 102 & 106].

12. On August 22, 2022, the Voyager Committee filed an application to retain FTI as the Committee's financial advisor, effective July 25, 2022.  [Voyager D.I. 318].  FTI's proposed services to the Voyager Committee included "Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers[.]" *Id.* at 5.

4

13. On September 13, 2022, the U.S. Bankruptcy Court for the Southern District of New York authorized the Voyager Committee's retention of FTI as financial advisor. [Voyager D.I. 404].

14. On January 30, 2023, Alameda -- one of the above-captioned debtors -- filed a complaint against Voyager (one of the Voyager Debtors) and HTC Trading Inc. which initiated the Preference Adversary [Adv. No. 23-50084 (JTD) (Bankr. D. Del.)]. Through the Preference Adversary, Plaintiff seeks to recover $445.8 million in alleged preferential transfers from Defendants.

15. Alameda alleges that, prior to the filing of the Voyager Debtors' bankruptcy petitions, (x) Defendants provided certain cryptocurrency loans to Plaintiff pursuant to (i) a Master Loan Agreement, dated September 2, 2021, by and between Plaintiff, as borrower, and Defendants, as lenders, and (ii) loan term sheets between Plaintiff and Defendants and that (y) as of the date of filing of the Voyager Debtors' bankruptcy petitions, Plaintiff was party to ten (10) individual loan term sheets with Defendants providing the material terms of the corresponding loan. Compl. ¶¶ 16, 17.

16. Alameda also alleges that the transfers it made to Defendants -- repayment of the cryptocurrency loans during September and October, 2022 in the aggregate amount of approximately $445.8 million (including approximately $3.26 million in loan fees) -- were made after Voyager had filed for bankruptcy protection "and are therefore recoverable by Plaintiff on an administrative priority basis under sections 503 and 507 of the Bankruptcy Code." Compl. ¶ 4.

17. The Voyager Committee, for which FTI is serving as a financial advisor, has objected to proofs of claim filed by Alameda against the Voyager Debtors' estates [Voyager D.I. 936, 937], seeking to subordinate or recharacterize such claims as equity.

## IV. ARGUMENT

18.     The Application should be denied under Section 1103(b) of the Bankruptcy Code because FTI represents an interest adverse to the Debtors' estates.

19.     Pursuant to section 1103(b) of the Bankruptcy Code, an attorney or accountant employed by the Committee "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b).

20.     The term "adverse interest is not defined in the Bankruptcy Code. *See In re Caldor, Inc.- N.Y.,* 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996). A court, however, will determine whether a professional retained under Section 1103 has an adverse interest by examining if the professional's representation of another interest creates a meaningful incentive to act contrary to the best interest of the committee. *See id*. Stated differently, an adverse interest exists if a professional's representation of another interest would cause the professional to act any differently than the professional would without that representation. *See In re Leslie Fay Cos.,* 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

21.     Moreover, Section 328(c) of the Bankruptcy Code provides that "disinterestedness" is a prerequisite to allowance of compensation for a professional person who is employed under Section 1103(b) of the Bankruptcy Code. Section 328(c) states, in relevant part:

> …the court may deny compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the estate with respect to the matter on which such professional person is employed.

*See* 11 U.S.C. § 328(c); *Caldor,* 193 B.R. at 170-71 (under Code section 328(c), "a professional person retained under § 1103 will be denied allowance of compensation and reimbursement of expenses if, at any time during that person's employment, he is not a disinterested person or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed").

22. The stringent requirements and standards for the employment of professionals under the Bankruptcy Code and Bankruptcy Rules are designed to ensure the integrity of the bankruptcy process and the public's confidence in the bankruptcy courts. *See In re Lee Way Holding Co.*, 100 B.R. 950, 961 (Bankr. S.D. Ohio 1989).

23. In *In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir. 1991), the court affirmed the disqualification of a trustee and proposed counsel where actual conflicts of interest existed between two jointly-administered estates. In its opinion, the court also noted that its ruling applied with equal force to all professionals subject to retention under Section 327 of the Bankruptcy Code: "the conflict of interest principles which we have adopted regarding disqualification of trustees apply with equal force in those situations involving the employment of professionals." *Id.* at 1316.

24. Where there is multiple representation, the Third Circuit held that the conflict rose above "potential" because "the 'actuality' of the conflict . . . was the possibility that the parties would favor one estate over the other in their attempt to serve all of them." *Id.* at 1315 (quoting *In re BH & P, Inc.*, 119 B.R. 35, 43 (D.N.J. 1990) (internal quotation marks omitted)); *see also In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *Caldor,* 193 B.R. at 171) (in the context of Section 327(a), "[a] Court may consider an interest adverse to the estate when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'").

7

25. Here, the FTX Debtors have a competing economic interest tending to diminish the value of the Voyager Debtors' estates. Alameda is suing Voyager and HTC Trading Inc. to recover more than $445 million in alleged preferential transfers. Alameda and Voyager are engaged in a zero-sum dispute: each dollar that Alameda recovers from Voyager on behalf of the FTX estates is at the expense of the Voyager Debtors' fulcrum creditors. In both the above-captioned cases and the Voyager Debtors' cases, there is no material secured debt, leaving general unsecured creditors of both the FTX and the Voyager debtors in that fulcrum position.

26. The conflict is manifest. "When the debtor becomes insolvent, a payment to one creditor from the estate's limited assets is necessarily paid at the expense of another creditor. The receipt of a preference by a creditor thus creates a conflict with unpaid creditors, whose share of the remaining assets is diminished by the payment." *In re Pillowtex, Inc.*, 304 F.3d 246, 252 (3d Cir. 2002). Here, FTI would represent the committees for both the creditor that received the alleged preference (Voyager) and the other creditors whose share of the remaining assets is allegedly diminished by the payment(s) (FTX). FTI would assist both the FTX and Voyager Committees "in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers[.]" Appl. ¶ 8.

27. Additionally, Alameda is asserting administrative expense status for its preference claims against Voyager, as the alleged transfers were made after Voyager had filed for bankruptcy. Compl. ¶ 4. Any such administrative expense (post-petition) claim would enjoy higher priority than general unsecured (pre-petition) claims of the type represented by the Voyager Committee. The Voyager Committee, an FTI client, has an interest in minimizing the amount of administrative expense claims (including any such claims asserted by Alameda) so as to maximize funds available for its constituency. Because FTI already represents an

8

adverse interest in connection with the Preference Adversary (viz., the creditors' committee of a defendant in a $445 million preference suit), FTI cannot also represent the Committee.

28.     It appears FTI has already rendered services to the Voyager Committee regarding the payments at issue in the Preference Adversary.  A simple search for the word "Alameda" in FTI's time entries appended to the firm's Voyager Committee fee statements indicates that FTI has been actively involved in providing the Voyager Committee with advice and analysis pertaining to the value of the Alameda claims against the Voyager Debtors:

| Date | Name | Hours | Description |
|---|---|---|---|
| 7/28/2022 | Eisler, Marshall | 0.7 | Analyze limited objection to bid procedures as filed by Alameda. |
| 8/9/2022 | Saltzman, Adam | 0.4 | Review media coverage on Alameda and other docket updates for 8/9. |
| 8/9/2022 | Eisler, Marshall | 0.7 | Correspond with MWE re: diligence question on Alameda loan. |
| 8/12/2022 | Mulkeen, Tara | 1.1 | Review Alameda loan activity and related documents. |
| 8/16/2022 | Feldman, Paul | 0.5 | Review 3AC and Alameda component of loan analysis. |
| 8/19/2022 | Heller, Alana | 1.9 | Review media re: Alameda Research for 2021. |
| 8/19/2022 | Leonaitis, Isabelle | 0.8 | Update analysis for 3AC and Alameda loans. |
| 8/20/2022 | Heller, Alana | 1.7 | Conduct media review of Alameda Research for 2021. |
| 8/21/2022 | Heller, Alana | 2.8 | Review media research into Alameda Research for 2022. |
| 8/22/2022 | Heller, Alana | 2.7 | Summarize adverse media review re: Alameda Research for 2021 and 2022. |
| 8/23/2022 | Salcedo, Miguel | 2.4 | Research social media content to supplement media findings on Celsius and Alameda. |
| 8/25/2022 | LaMagna, Matthew | 2.2 | Conduct media review for 3AC and Alameda on loan communications. |
| 8/31/2022 | Cordasco, Michael | 0.4 | Analyze status of recall of Alameda loan. |

| | | | |
|---|---|---|---|
| 9/7/2022 | Eisler, Marshall | 2.4 | Create schematic to highlight value of Alameda loan subordination of potential purchaser in bid report |
| 9/12/2022 | Bromberg, Brian | 0.5 | Review treatment of Alameda facility in revised bid. |
| 9/12/2022 | Saltzman, Adam | 0.8 | Review Alameda claim recharacterization analysis for bid evaluation. |
| 9/20/2022 | Shaw, Sydney | 0.3 | Prepare daily docket and media summary for 9/20 re: sealed cash management motion and recall of Alameda loan. |

Voyager D.I. 617 Ex. C at 5, 13, 18, 22, 57, 60, 63, 64, 65 & 68 of 87; D.I. 709 Ex. C at 4, 11, 20 & 21 of 63.

29. Even if FTI erected an ethical wall between the FTI personnel working on both engagements, it would not cure the conflict of interest between the two estates that precludes FTI's employment.[3] An ethical wall does not eliminate a "conflict arising from concurrent adverse client relationships." *See, e.g., Matter of Tr. Am. Serv. Corp.*, 175 B.R. 413, 421 (Bankr. M.D. Fla. 1994) ("A 'chinese wall' typically protects a client from the past activities and information of representation of an adverse client. The 'chinese wall' is generally not an acceptable means of conflict avoidance where the same professional organization actively represents two adverse interests."); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 822 (N.D. Cal. 2004) ("Screening measures … do nothing to mitigate conflict arising from concurrent adverse client relationships, since the purpose of the prohibition against such relationships is to preserve the attorney's duty of loyalty, not confidentiality, to his client.").

---

[3] Based on communications with FTI's counsel, the U.S. Trustee understands that there *is* overlap between the FTI personnel working on the Voyager Committee engagement and the FTX Committee engagement.

10

30.     Nor would the conflict be cured if the Committee in these cases uses a different financial advisor in connection with matters involving Voyager, and the Voyager Committee does the same as to matters involving Alameda or the other Debtors. Where a conflict involves a matter essential to resolving a case, the use of other (conflicts) counsel or advisors does not resolve the conflict. *Project Orange* Assocs, 432 B.R. 363, 376 (Bankr. S.D.N.Y. 2010);[4] *see also, In re WM Distribution, Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M. 2017) ("use of conflicts counsel is not appropriate where the adverse interests of the debtors represented by the same general bankruptcy counsel are central to the reorganization efforts of either debtor or to the other resolutions of the chapter 11 case or where the adverse interest are so extensive that each debtor should have its own independent bankruptcy counsel."); *Git-n-Go, Inc.,* 321 B.R. 54, 61- 62 (Bankr. N.D. Okla. 2004) (proposed bankruptcy counsel disqualified although debtor proposed to retain conflicts counsel to provide advice in connection with creditors represented by proposed bankruptcy counsel).

## V.     CONCLUSION

WHEREFORE the U.S. Trustee requests that this Court deny the Application and grant such other relief as the Court finds just and appropriate.

---

[4]  *Project Orange* was decided under 11 U.S.C. §327(a). That section, like 11 U.S.C. §1103(b), requires that professionals not "represent any interest adverse to the estate." *Project Orange Assocs,* 432 B.R at 369.

11

Dated: February 9, 2023
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 and 9**

By: */s/ Juliet Sarkessian*
Juliet M. Sarkessian
Benjamin A. Hackman
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
juliet.m.sarkessian@usdoj.gov
benjamin.a.hackman@usdoj.gov

-and-

David Gerardi
Trial Attorney
One Newark Center
1085 Raymond Boulevard
Suite 2100
Newark, NJ  07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
david.gerardi@usdoj.gov