**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **FTX TRADING LTD., *et al.*,**[1] | ) | **Case No. 22-11068 (JTD)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | |
| | ) | **Re: Docket Nos. 481, 680** |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO OBJECTION OF THE UNITED STATES TRUSTEE TO THE**
**APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND**
**EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR**
**TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors (the "Committee" or the "FTX Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or the "FTX Debtors"), by and through their undersigned counsel, hereby files this reply (the "Reply") to the objection [Docket No. 680] (the "Objection") filed by the Office of the United States Trustee for Region 3 (the "U.S. Trustee") to the Committee's application to employ and retain FTI Consulting, Inc. ("FTI"), as financial advisor to the Committee, effective as of December 22, 2022 [Docket No. 481] (the "Application").[2] In support of this Reply, the Committee submits (a) the supplemental declaration of Steven Simms, Senior Managing Director of FTI (the "Supplemental Simms Declaration"), which supplements the original declaration submitted in connection with the Application (the "Original Simms Declaration"), (b) the Declaration of Alex van Voorhees, a representative of

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Application.

GGC International Ltd., Co-Chair of the Committee (the "Van Voorhees Declaration"), each of which has been filed contemporaneously herewith, and (c) the revised form of proposed order approving the Application (the "Revised Proposed Order"), attached hereto as Exhibit A.[3]  In further support of the Application and this Reply, the Committee respectfully states as follows:

## Preliminary Statement

1.     As the Court is well aware, these Chapter 11 Cases are enormously complex and require the assistance of well-qualified advisors to assist the Committee in exercising its fiduciary duties to maximize value for general unsecured creditors.  Accordingly, the Committee selected FTI to serve as its financial advisor because of its extensive resources, skill and experience representing official creditors' committees and handling complex chapter 11 cases such as these. FTI is a leading, pre-eminent, full service financial advisory firm and is uniquely qualified to assist the Committee in these Chapter 11 Cases given its cross-practice expertise in corporate restructurings, forensic investigations and cryptocurrency.  In making its selection, the Committee placed significant value on FTI's experience within the cryptocurrency industry, which has already proven to be an invaluable asset to the Committee in these cases.

2.     Indeed, since its retention, FTI has provided services that are critically necessary to assist the Committee with its duties.  By way of example, FTI has been (a) assessing the Debtors' liquidity and cash management system, and analyzing the Debtors' cash flow forecasts and budgets, (b) analyzing the Debtors' financial statements (as and to the extent available) and engaging in forensic accounting with respect to the Debtors' historical books and records, (c) monitoring the Debtors' liquid and illiquid assets (including digital assets), and

---

[3]     The Committee understands that all requests for further disclosure and all other comments of the U.S. Trustee to the proposed form of retention order have been resolved through the submission of the Supplemental Simms Declaration and the Revised Proposed Order attached hereto as Exhibit A, which exhibit includes both the Revised Proposed Order as well as a redline to the original proposed order attached to the Application.

evaluating the custody and security of the Debtors' cryptocurrency assets, (d) assisting the Committee and its advisors with respect to the consideration of a potential reboot, restructuring and/or sale options that would maximize value for general unsecured creditors, and (e) assisting the Committee's other advisors in their wide-ranging investigation on behalf of the Committee into (among other things) the prepetition conduct of insiders and third parties, prepetition fraud and the misuse of customer funds, intercompany transfers and numerous third party transactions (including, hundreds of venture portfolio investments), with the goal of identifying estate claims and causes of action to supplement unsecured creditor recoveries in these cases. FTI has been (and continues to be) indispensable to the Committee's exercise of its fiduciary duties, and the displacement of FTI at this point in the Chapter 11 Cases would be highly disruptive to the progress made by the Committee to date.

        3.      Mindful of its disclosure and ethical obligations, FTI disclosed (prior to being selected by the Committee) its concurrent representation of the official creditors' committee (the "Voyager Committee") appointed in the chapter 11 cases of Voyager Digital Holdings, *et al.* (Bankr. S.D.N.Y. Case No. 22-10943) (collectively, "Voyager"). FTI acknowledged that the FTX and Voyager estates might have claims against one another, and agreed, in the event of any dispute arising between the FTX and Voyager estates, that FTI would recuse itself from rendering services to *both* the FTX Committee *and* the Voyager Committee in connection with any such matters. The FTX and Voyager committees each consented to such concurrent representation, and determined to utilize the services of Jefferies LLC (in the case of the FTX Committee) and M3 Partners (in the case of the Voyager Committee) in the event that FTI recused itself from a conflicted matter.

        4.      Over a month after FTI was selected by the FTX Committee, Debtor Alameda Research Ltd. ("Alameda") commenced an adversary proceeding against Voyager

seeking to recover certain preferential transfers (the "Alameda Preference Action"). Over the next few days, Voyager and the Voyager Committee separately filed objections to proofs of claim filed by Alameda Ventures Ltd. in the Voyager chapter 11 cases (the "Alameda Claim Objections"). As disclosed in the Supplemental Simms Declaration, FTI recused itself from, and has not rendered any services to *either* the FTX Committee *or* the Voyager Committee with respect to the Alameda Preference Action or the Alameda Claim Objections.

5.      Nonetheless, the U.S. Trustee—the only party to object to the Application—asserts that section 1103(b) of the Bankruptcy Code imposes a blanket prohibition against FTI's concurrent representation of the FTX and Voyager committees, and thus FTI's retention by the FTX Committee cannot be approved. However, the U.S. Trustee's position overlooks the basic fact that (a) *each of* the Voyager and FTX committees have provided informed consent to FTI's concurrent representation, (b) FTI's recusal from all conflicted matters on *both sides* means, in effect, that FTI is not representing an adverse interest in the FTX Chapter 11 Cases, (c) the Alameda Preference Action and Alameda Claim Objections are not central to the resolution of FTX's multi-billion dollar Chapter 11 Cases, and thus, the concurrent representation will not affect FTI's impartiality in advising the Committee, and (d) each committee employs other "conflict" financial advisors to assist it in connection with any conflicted matters. As a result (and as demonstrated in more detail below), FTI's representation of the Voyager Committee is not *"in connection with"* FTX's Chapter 11 Cases for purposes of section 1103(b) of the Bankruptcy Code.

6.      Indeed, section 1103(b), by its own terms, contemplates the possibility of concurrent creditor representations by committee-retained professionals. In light of its recusal from advising *either* committee concerning any inter-estate disputes and the availability of conflict

financial advisors, FTI's concurrent representation will not in any way affect its ability to properly advise the FTX Committee in connection with the multitude of core work streams currently being handled by FTI.  FTI has implemented appropriate safeguards to address any conflicts of interest between the two estates, similar to (if not more extensive than) those typically employed by financial advisors with sophisticated, nationally renowned restructuring platforms that have appeared in many complex chapter 11 cases before this Court.  In fact, if the U.S. Trustee's position were to prevail, it may well prove difficult for the Committee to replace FTI with a qualified financial advisor capable of handling a case of this size and complexity that does not already represent one of the many distressed or bankrupt cryptocurrency firms with some potential nexus to FTX.

7.    For these reasons, and for the reasons set forth below, the Committee respectfully submits that the U.S. Trustee's Objection is misplaced and should be overruled, and the Application should be granted.

### **Background**

**A.    The Voyager Chapter 11 Cases**

8.    On July 5, 2022, Voyager commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Voyager Court").  On July 19, 2022, the United States Trustee for the Southern District of New York appointed the Voyager Committee, and on July 25, 2022, the Voyager Committee selected FTI as its financial advisor.

9.    On August 22, 2022, *months before the FTX Chapter 11 Cases were even commenced*, the Voyager Committee filed an application with the Voyager Court seeking authority to retain FTI as its financial advisor [Voyager Docket No. 318] (the "Voyager Application").  On

September 13, 2022, the Voyager Court approved the Voyager Application [Voyager Docket No. 404].

10.     Voyager's chapter 11 cases are nearing completion.  A disclosure statement in respect of a proposed chapter 11 plan of reorganization has been conditionally approved by the Voyager Court, plan solicitation is in process, and a combined hearing to consider final approval of the disclosure statement and confirmation of Voyager's chapter 11 plan is currently scheduled to take place before the Voyager Court on March 2, 2023 [Voyager Docket No. 861].

**B.     The FTX Chapter 11 Cases**

11.     On November 11 and November 14, 2022 (as applicable), the Debtors commenced these Chapter 11 Cases in this Court.

12.     On December 15, 2022, the U.S. Trustee filed the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 231], and on December 20, 2022, the U.S. Trustee filed the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 261].[4] The Committee selected Paul Hastings LLP as its lead counsel and Young Conaway Stargatt & Taylor, LLP as its Delaware counsel.

13.     On December 22, 2022, after interviewing five other financial advisory firms, the Committee selected FTI as its financial advisor [*see* Van Voorhees Declaration at ¶ 4], and, on December 23, 2022, the Committee selected Jefferies LLC ("Jefferies") as its investment banker.

14.     As noted in the Van Voorhees Declaration and the Supplemental Simms Declaration, FTI disclosed to the FTX Committee its concurrent work for the Voyager Committee

---

[4]     The amendment reflected the addition and correction of contact information for the Committee members.

before being selected by the FTX Committee.  *See Van Voorhees Declaration at ¶ 6; Supplemental Simms Declaration at ¶8. FTI further informed the FTX Committee and the Voyager Committee that FTI would not advise either committee with respect any matters involving a dispute between the FTX and Voyager estates, and agreed to *prospectively* recuse itself on *both sides* from any such matters.  *See Van Voorhees Declaration at ¶ 6; Supplemental Simms Declaration at ¶8. Immediately upon its selection by the FTX Committee, FTI recused itself from any conflicting inter-estate matters.  *See Supplemental Simms Declaration at ¶ 9. Since that time, FTI has not received any confidential information concerning any such inter-estate matters, whether from Voyager or FTX (or the respective committees).  *See Supplemental Simms Declaration at ¶ 9.

15.    On January 11, 2023, the FTX Committee filed the Application with this Court [FTX Docket No. 481].  Consistent with Rule 2014 of the Federal Rules of Bankruptcy Procedure, the Original Simms Declaration disclosed FTI's concurrent representation of the FTX Committee and the Voyager Committee, and stated that FTI personnel would not participate in any disputes between the FTX Debtors and the Voyager Debtors:

> The Official Committee of Unsecured Creditors (the "Voyager Committee") appointed in the chapter 11 cases of Voyager Digital Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "Voyager Debtors") selected FTI as its financial advisor (the "Voyager Committee Engagement").  The Voyager Committee Engagement is unrelated to the Debtors and these chapter 11 cases.  Notwithstanding the foregoing, the Debtors and the Voyager Debtors are creditors of one another.  As such, FTI personnel will not participate in any particular matter involving a dispute between the Debtors and the Voyager Debtors.

Original Simms Declaration at ¶ 4.

16.     On the Voyager side, after FTI was selected to represent the FTX Committee, on January 20, 2023, Michael Cordasco, a Senior Managing Director with FTI, filed a supplemental declaration with the Voyager Court disclosing its selection by the FTX Committee:

> On December 22, 2022, the Official Committee of Unsecured Creditors (the "FTX Committee") appointed in the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors and debtors in possession (collective, the "FTX Debtors") selected FTI as its financial advisor (the "FTX Committee Engagement").  The FTX Committee Engagement is unrelated to the Debtors and these chapter 11 cases.  *Notwithstanding the foregoing, the Debtors and the FTX Debtors may be creditors of one another.  As such, FTI personnel will not participate in any particular matter involving a dispute between the Debtors and the FTX Debtors.*

Voyager Docket No. 888 at ¶ 5 (emphasis added).

## C.     FTI's Recusal From the Voyager Preference Action and Alameda Claim Objections

17.     After FTI filed its Application with this Court, on January 30, 2023, FTX commenced before this Court the Alameda Preference Action against Voyager [*See In re FTX Trading Ltd.*, Adversary Proceeding No. 23-50084 (JTD), Docket No.1]. The FTX Committee has not, to date, intervened in such proceeding. Also on January 30, 2023, the Voyager Debtors filed an objection to proofs of claim filed by Alameda Ventures, Ltd. with the Voyager Court [Voyager Docket No. 929], and on January 31, 2023, the Voyager Committee filed an objection to proofs of claim filed by Alameda Ventures, Ltd. with the Voyager Court, in which claims are also asserted by the Voyager estates against FTX [Voyager Docket No. 936].

18.     As disclosed in the Supplemental Simms Declaration, FTI has recused itself from participating in the Alameda Preference Action and the Alameda Claim Objections, and has not rendered any services to either the FTX Committee or the Voyager Committee in connection

therewith.  *See* Supplemental Simms Declaration at 9.[5]  Thus, FTI has timely and appropriately disclosed its concurrent representation to each Committee and each bankruptcy court, and has taken appropriate measures to resolve any potential or actual inter-estate conflicts of interest.

## Argument

19.    Section 1103(a) of the Bankruptcy Code authorizes a statutory committee to employ and retain "attorneys, accountants, or other agents . . . ."  11 U.S.C. § 1103(a).  Section 1103(b) provides that an "attorney or accountant employed to represent a committee appointed under section 1102 . . . may not, while employed by such committee, represent any other entity having an *adverse interest in connection with the case.*  Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest."  11 U.S.C. § 1103(b) (emphasis added).[6]

20.    As demonstrated below, the U.S. Trustee's restrictive application of section 1103(b) as set forth in its Objection is misplaced for three primary reasons:  *First*, FTI's concurrent representation of the Voyager Committee is unrelated to the FTX Chapter 11 Cases because FTI has not, and will not, render any services to *either* the FTX Committee *or* the Voyager Committee with respect to *any* conflicting inter-estate matters.  *Second*, any inter-estate conflict of interest is addressed through the services of "conflict" financial advisors (*e.g.*, Jefferies, on the FTX side, and M3 Partners, on the Voyager side).  *Third*, FTI's ability to properly advise the FTX Committee will not be impaired insofar as (i) the Voyager chapter 11 cases are near completion, (ii) any

---

[5]    A draft of the Supplemental Simms Declaration was provided to the U.S. Trustee prior to the U.S. Trustee's filing of its Objection.  Among other things, the Supplemental Simms Declaration further clarifies the scope of FTI's recusal agreement.

[6]    At least one court has held that there is a fundamental difference between the services of an attorney in connection with legal actions as compared to the services of an accountant (or other financial advisor) in accounting, tax or other financial matters.  *See In re Aircraft Instrument & Development, Inc.*, 151 B.R. 939, 943 (Bankr. D. Kan. 1993) (finding that an accountant "cannot be said to 'represent' the interests of the estate").

pending inter-estate disputes are neither pervasive (relative to the critical, but unrelated, work being performed by FTI for the FTX Committee) nor central to the resolution of the FTX Chapter 11 Cases, and (iii) Jefferies is available to assist the FTX Committee in such matters, as necessary.

A.     **FTI's Concurrent Representation of the Voyager Committee Does Not Constitute Representation of An Adverse Interest in Matters Related to the FTX Chapter 11 Cases**

21.     Contrary to the position of the U.S. Trustee in its Objection, section 1103(b) does not impose a blanket prohibition against the simultaneous representation of both an official committee and a party holding an adverse interest. Rather, concurrent representations may be authorized "so long as the professional represents the holder of the adverse interest in matters *unrelated to the case.*"  *In re Pilgrim Med. Ctr., Inc.*, 574 B.R. 523, 530 (Bankr. D.N.J. 2017) (citations omitted) (emphasis added); *see also Daido Steel Co., Ltd. Official Comm. of Unsec. Creditors,* 178 B.R. 129, 131 (N.D. Ohio 1995) (stating that section 1103 (b) "'*does not require the attorney to cease representation of the creditors in matters unrelated to the case.*'") (citing H.R. Rep. No. 95-595, at 104 (1977).

22.     Indeed, the legislative history of section 1103 of the Bankruptcy Code illustrates this point quite clearly.  An amendment to section 1103(b) replaced "[a] person" with "an attorney or accountant", and replaced "entity" with "entity having an adverse interest", as depicted below:

> ~~A person~~ An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other ~~entity~~ <u>entity having an adverse interest</u> in connection with the case.

11 U.S.C. § 1103(b), Historical and Statutory Notes, 1984 Amendments; and Pub.L. 98–353 § 500(a)(1).

23.     The effect of this amendment was to refine, rather than broaden, the meaning of section 1103(b).  *See Daido*, 178 B.R. at 132; *see also Pilgrim* at 574 B.R. 530. Thus, the *Daido* court found that the plain language of section 1103(b) and its legislative history do not require a committee professional to cease the concurrent representation of creditors in matters *unrelated* to the chapter 11 case.  *Id*., at 531.

24.     In the *Daido* case, the attorneys for the official committee concurrently represented an entity that was seeking to acquire the debtor, albeit in matters unrelated to the bankruptcy case or the potential acquisition. *See Daido,* 178 B.R. 129 at 132.  The district court affirmed the bankruptcy court's decision that section 1103(b) did not bar concurrent representations of a party in matters unrelated to the bankruptcy case.  *Id*.

25.     Similarly, in *Pilgrim*, the bankruptcy court held that section 1103(b) would not preclude counsel from concurrently representing the official committee and certain bank clients that held mortgages on properties owned by the debtor's principal (whose chapter 11 case was being jointly administered with the debtor's chapter 11 case).  *Pilgrim,* 574 B.R. at 531.  In adopting the *Daido* court's reasoning, the *Pilgrim* court found that counsel's bank representations were *unrelated* to the debtor's chapter 11 case.  *Id.*

26.     Here, FTI disclosed to the FTX Committee at the outset that it represents the Voyager Committee and that it would not advise *either* committee with respect to any inter-estate disputes.  *See* Van Voorhees Declaration at ¶6; Supplemental Simms Declaration at ¶ 8. Since its selection as financial advisor to the FTX Committee, FTI has not done any work in connection with the Alameda Preference Action or the Alameda Claim Objections, and has not received any confidential information regarding the same from either FTX or Voyager (or either committee).  *See* Supplemental Simms Declaration at ¶ 8.  By so limiting the scope of its

concurrent engagements, FTI's representation of the Voyager Committee is therefore *unrelated* to the FTX Chapter 11 Cases.[7]

## B.    Any Matters Requiring FTI's Recusal Will Be Handled by "Conflict" Financial Advisors

27.    In addition to FTI's wholesale recusal from representing either committee in connection with any inter-estate disputes, the services of "conflict" financial advisors (*e.g.*, Jefferies, on the FTX side, and M3 Partners, on the Voyager side) are an appropriate means of addressing any potential or actual conflict.  Complex chapter 11 cases often require the use of larger firms with broad client representations.  As such, it has become well accepted that firms retained in large chapter 11 cases may employ ethical walls and/or conflicts counsel or advisors to address potential or actual conflicts of interest.[8]

28.    Indeed, this Court recently acknowledged the common market practice of utilizing "conflicts" professionals in large chapter 11 cases, when presented with the Debtors' application to retain Sullivan & Cromwell:

> Here, any potential conflicts are ameliorated by the fact that there's conflicts counsel in place.  And that's something that happens in every large bankruptcy case.  It would be almost impossible to find a case of this size or even – well, this is what we call a super-mega case – even in a mega case you would find – or a large case, it would be difficult to find debtor's counsel that didn't have other clients

---

[7]    In its Objection, the U.S. Trustee cites time records of FTI personnel for services previously performed for the Voyager Committee related to FTX and Alameda.  Those time entries all *pre-date* the filing of the FTX Chapter 11 Cases and FTI's appointment as financial advisor to the FTX Committee.  Any such work ceased immediately once FTI was selected as financial advisor to the FTX Committee. *See* Supplemental Simms Declaration at ¶ 8.  In any event, any such prior work would not constitute representation of an adverse interest in the FTX Chapter 11 Cases. *See e.g., In re Universal Bldg. Prods.*, 486 B.R. 650, 662 (Bankr. D. Del. 2010) ("Prior representations, even if adverse to the interests of the committee or unsecured creditors, do not disqualify committee counsel."); *In re Enron Corp.*, No. 02 CIV 5638 (BSJ), 2003 WL 223455, at *17 (S.D.N.Y. Feb. 3, 2003) ("Section 1103(b) is not violated if [committee counsel] represents an entity with an adverse interest in a matter unrelated to the bankruptcy case or in a matter that pre-dates [the committee counsel's] representation of the Committee.") (emphasis in original).

[8]    Here, FTI has even gone a step further.  Rather than implement an ethical wall, whereby at least one FTI working group remains involved in inter-estate disputes, FTI has agreed to recuse itself altogether from advising either committee in any inter-estate disputes.

who might be clients of the debtor's counsel, but that's why we have conflicts counsel. It happens all the time and not something that is disqualifying.

[Jan. 20, 2023 Hr'g Tr. 49:9-18].[9]

29.     This view has widespread support. For example, in *In re Pilgrim Med. Ctr.*, the bankruptcy court found that committee counsel's concurrent representation of secured creditors was unrelated to the debtor's case, but, "*even more importantly,* [counsel] does not and will not represent any of them in connection with this case." 574 B.R. at 531 (emphasis added). The court further noted that, should any issue involving the two entities arise that require the committee's involvement, the committee could retain conflicts counsel. *Id. See also In re Kobra Properties*, 406 B.R. 396, 406 (Bankr. E.D. Cal. 2009) (noting that conflicts counsel acts as "an additional protection against the possibility of a conflict.").

30.     Similarly, in *In re Enron Corp.*, the district court affirmed the bankruptcy court's decision approving the official committee's retention of counsel, notwithstanding counsel's prior representation of counter-parties to structured financing transactions with Enron prior to the restructuring. *See* 2003 WL 223455, at *9 (S.D.N.Y. Feb 3, 2003). The bankruptcy court determined, and the district court agreed, that the ethical wall put in place by counsel, coupled with the use of conflicts counsel to screen excludable matters, were sufficient to overcome any disqualifying adverse interest. *Id.*

31.     Here too, in the event of FTI's recusal, the FTX Committee and the Voyager Committee will rely upon Jefferies and M3 Partners, respectively, should they require assistance

---

[9]     Even the U.S. Trustee's fee guidelines contemplate the use of conflicts counsel to cure a conflict that is "not pervasive". Appendix B-Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, 78 FR 36248-02 at 36256 (Jun. 17, 2013).

with any inter-estate matters. *See* Van Voorhees Declaration at ¶ 9; Supplemental Simms Declaration at ¶ 8.

## C.   The Inter-Estate Disputes with Voyager are Not Central to Resolution of these Chapter 11 Cases

32.     Notwithstanding FTI's recusal from any inter-estate disputes and the deployment of alternative financial advisors (the equivalent of conflicts counsel), the U.S. Trustee nonetheless suggests that the use of "conflicts" advisors here is insufficient to remedy FTI's conflict because the Alameda Preference Action and Alameda Claim Objections involve matters "essential to resolving" the FTX Chapter 11 Cases.  Objection at ¶ 30. Thus, the U.S. Trustee argues, without basis, that FTI's concurrent representation may affect FTI's judgment in advising the FTX Committee. *See* Objection at ¶ 20; (citing *In re Caldor, Inc., N.Y.* 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996) and *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)). The U.S. Trustee's stringent position is incorrect.

33.     The U.S. Trustee relies on *In re Project Orange Assoc., LLC*, 431 B.R. 363 (Bankr. S.D.N.Y. 2010), which is wholly inapposite to the pertinent facts of these cases.  In *Project Orange*, the court denied the debtor's application to retain counsel. Debtor's counsel executed a conflicts waiver with General Electric, the debtor's largest creditor, that severely limited counsel's ability to bring suit against General Electric or ever to threaten suit. *Project Orange*, 431 B.R. at 375.  Critically, General Electric was determined to be "central" to the case, as matters regarding General Electric were "central to the Debtor's ability to reorganize…" *Project Orange,* 431 at 375–76.  General Electric manufactured and maintained two electric turbines that powered the debtor's steam and electricity generation facility. *Id.* at 366.  As such, the court found that that counsel could not fairly advise the debtor in the negotiation and drafting of a plan, and that the use

of conflicts counsel was insufficient to cure the conflict where the creditor was central to the case. *Id.* at 379.

34.     The U.S. Trustee also relies upon *In re Wm Distrib., Inc.*, 571 B.R. 866, 873 (Bankr. D.N.M 2017), a case that is also distinguishable. There, counsel sought to represent the estates of two debtors who both held substantial and substantive claims against each other such that the competing estate, which held the majority of the unsecured debt, would control the unsecured creditor class.

35.     The relevant facts of FTX's Chapter 11 Cases are entirely different.  *First*, the cases relied upon by the U.S. Trustee involve the disqualification of debtor's counsel, whose role is central to the administration of a chapter 11 case (as distinct from the role of committee counsel or financial advisor).

36.     *Second*, though the Alameda Preference Action and Alameda Claim Objections involve a substantial dollar amount, they are by no means central to resolving FTX's Chapter 11 Cases, which are expected to involve assets and liabilities in the billions of dollars. Thus, the use of conflicts professionals (coupled with FTI's recusal from inter-estate disputes) is sufficient to overcome any potential or actual conflict of interest.  *See e.g.*, *Wash. Mutual*, 442 B.R. at 327.

37.     *Third*, the discrete issues presented by FTX's inter-estate disputes with Voyager are by no means pervasive, and are, in any event, unrelated to the many other activities being performed by FTI in the FTX Chapter 11 Cases.  The work streams in which FTX is presently engaged for the FTX Committee include (among others) the following:

    (a)     monitoring the Debtors' complex inter-silo cash management system;

    (b)     assessing the Debtors' liquidity, and analyzing the Debtors' cash flow forecasts (on a debtor, silo, pooling account and consolidated basis) and variance reports;

(c)     analyzing the Debtors' financial statements (as and to the extent available), schedules and statements of financial affairs (when filed), monthly operating reports, and other financial reporting;

(d)     engaging in forensic accounting with respect to the Debtors' historical books and records, identifying deficiencies in accounting controls and record keeping, and tracing assets and liabilities;

(e)     assessing the Debtors' risk management functions, regulatory compliance, loan and margin credit underwriting, and trading functions;

(f)     monitoring the Debtors' liquid and illiquid assets (including digital assets), evaluating the custody and security of the Debtors' cryptocurrency assets (including an investigation into certain unauthorized transfers announced by the Debtors), and analyzing alternative value-maximizing monetization strategies;

(g)     assisting the Committee and its advisors with respect to potential restructuring and/or sale options that would maximize value for general unsecured creditors (including the Committee's evaluation of a potential reboot of the FTX exchange);

(h)     assisting the Committee with respect to its review of the claims and liabilities asserted against the Debtors;

(i)     participating with the Committee's other advisors in their wide-ranging investigation on behalf of the Committee into (among other things) the prepetition conduct of insiders and third parties, prepetition fraud and the misuse of customer funds, intercompany transfers and numerous third party transactions (including, hundreds of venture portfolio investments); and

(j)     assisting Committee counsel in identifying estate claims and causes of action in order to supplement unsecured creditor recoveries in these cases.

38.     The quantity and scope of these core activities being undertaken by FTI illustrate the non-pervasive nature of the Voyager/FTX inter-estate conflicts of interest.

## **Conclusion**

39.     As demonstrated herein, FTI's recusal from inter-estate conflicts of interest, the presence of "conflicts" advisors, and the limited and non-pervasive nature of the inter-estate disputes, are more than sufficient to address any potential or actual conflicts of interest between

the estates.  Accordingly, the Committee respectfully requests that the Court grant the Application and overrule the U.S. Trustee's Objection.

WHEREFORE, the Committee respectfully requests that the Court (a) overrule the Objection, (b) approve the Application and enter an order, substantially in the form of the Revised Proposed Order attached hereto as <u>Exhibit A</u>, authorizing the Committee to employ and retain FTI as financial advisors for the Committee, effective as of December 22, 2022, and (c) grant the Committee such other relief that the Court deems just and proper.

***Remainder of page intentionally left blank***

Dated: February 13, 2023
      Wilmington, Delaware

           */s/ Robert F. Poppiti, Jr.*
           YOUNG CONAWAY STARGATT & TAYLOR, LLP
           Matthew B. Lunn, Esq.
           Robert F. Poppiti, Jr., Esq.
           1000 North King Street
           Wilmington, DE 19801
           Telephone: (302) 571-6600
           Email: mlunn@ycst.com
                  rpoppiti@ycst.com

           -and-

           PAUL HASTINGS LLP
           Kristopher M. Hansen, Esq.
           Luc A. Despins, Esq.
           Kenneth Pasquale, Esq.
           Erez E. Gilad, Esq.
           Gabriel E. Sasson, Esq.
           Samantha Martin, Esq.
           200 Park Avenue
           New York, NY 10166
           Telephone: (212) 318-6000
           Email: krishansen@paulhastings.com
                  lucdespins@paulhastings.com
                  kenpasquale@paulhastings.com
                  erezgilad@paulhastings.com
                  gabesasson@paulhastings.com
                  samanthamartin@paulhastings.com

           *Counsel for the Official Committee of Unsecured Creditors*

**EXHIBIT A**

*Revised Proposed Order – Clean*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **FTX TRADING LTD.,** *et al.*[1] | ) | |
| | ) | **Case No. 22-11068 (JTD)** |
| | ) | |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | **Ref. Docket No. _____** |

**ORDER AUTHORIZING RETENTION OF**
**FTI CONSULTING, INC. AS FINANCIAL ADVISOR**
**FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**EFFECTIVE AS OF DECEMBER 22, 2022**

Upon the application (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for an order under Bankruptcy Code section 1103 authorizing the Committee to retain FTI Consulting, Inc. ( "FTI")[2], as its financial advisors; and upon the Simms Declaration[3] and the Supplemental Simms Declaration in support of the Application; and due and adequate notice of the Application having been given; and it appearing that no other notice need be given; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and it appearing that FTI neither holds nor represents any interest materially adverse to the Debtors' estates; and it appearing that FTI is "disinterested," as that term is defined in Bankruptcy Code section 101(14); and it appearing that the relief set forth in this Order  is in the best interest

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Professionals employed by certain subsidiaries of FTI will also be used in the engagement.

[3] Capitalized terms used in this order not otherwise defined have the meaning given to them in the Application.

of the Committee and it constituents, after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Application is granted as set forth herein.

2.      In accordance with Bankruptcy Code section 1103, the Committee is authorized to employ and retain FTI as its financial advisor effective as of December 22, 2022 on the terms set forth in the Application, as modified by this Order.

3.      FTI shall apply for compensation for professional services rendered and reimbursement of expenses incurred in accordance with Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules, the Local Rules of this Court, including Local Rule 2016-2, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 435], and any other applicable orders entered by the Court.

4.      Notwithstanding anything in the Application or any supporting declaration to the contrary, FTI shall seek reimbursement from the Debtors' estates for its engagement-related expenses at the firm's actual cost paid, subject to the limits set forth in Local Rule 2016-2(e).  In the event that, during the pendency of these chapter 11 cases, FTI seeks reimbursement of any legal fees, and/or expenses related to the Application and the preparation of future fee applications as approved by the Court, the invoices and supporting time records from such attorneys shall be included in FTI's fee applications and such invoices and time records shall be in compliance with Rule 2016-2(f) of the Local Rules of this Court, and shall be subject to the U.S. Trustee Guidelines and approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330 (a)(3)(C) of the Bankruptcy Code; provided, however, that FTI shall not seek reimbursement of

any fees or costs arising from the defense of its fee applications in these chapter 11 cases.

5.      The following indemnification provisions are approved:

a.   subject to the provisions of subparagraphs (b), (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, FTI for any claims arising from, related to, or in connection with the services to be provided by FTI as specified in the Application, but not for any claim arising from, related to, or in connection with FTI's performance of any other services other than those in connection with the engagement, unless such services and indemnification therefor are approved by this Court; and

b.   FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Application for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by this Court.

c.   The Debtors' estates shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud; (ii) for a contractual dispute in which the Committee or the Debtors allege breach of FTI's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to applicable law or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution or reimbursement under the terms of the Application, as modified by this Order.

d.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the chapter 11 cases, FTI believes that it is entitled to the payment of any amounts by the Debtors' estates on account of the indemnification, contribution and/or reimbursement obligations under the Application (as modified by this Order), including without limitation, the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtors' estates may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the obligation of the Debtors' estates to indemnify, or make contributions or reimbursements to, FTI. All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution and/or reimbursement.

6.      FTI shall provide ten (10) days' notice to the Debtors, the U.S. Trustee, and the Committee in connection with any increase in the hourly rates listed in the Application. The U.S. Trustee, the Committee, and the Debtors retain all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.      Within fourteen (14) days (or as soon as reasonably practical thereafter) after any qualified bid deadline in these chapter 11 cases, FTI will disclose through a supplemental declaration the identities of all bidders not disclosed prior to entry of this Order and the connections of FTI to such potential counterparties.

8.      Notwithstanding anything in the Application or the supporting declaration to the contrary, to the extent that FTI uses the services of independent or third-party contractors or subcontractors (collectively, the "Contractors") in these chapter 11 cases, and FTI seeks compensation for the services, costs or expenses of the Contractors, FTI shall (i) pass through the cost of such Contractors at the same rate that FTI pays the Contractors; (ii) seek reimbursement for actual costs of the Contractors only; (iii) ensure that the Contractors are subject to the same conflicts checks as required for FTI; and (iv) file with this Court disclosures pertaining to such use required by Bankruptcy Rule 2014.

9.      Notwithstanding anything to the contrary in the Application or the Simms Declaration, the services to be provided by FTI shall not be performed by any entity other than FTI and its wholly owned subsidiaries.

10.     The entry of this Order shall not (i) impede the Court from directing relief with respect to the scope of professional services in the event an examiner is subsequently appointed or

(ii) prejudice or otherwise affect the rights of the U.S. Trustee to object to FTI's post-petition request for compensation and reimbursement on any and all grounds.

11.     FTI shall use its reasonable efforts to avoid any duplication of services provided by any of the Committee's other retained professionals.

12.     If there is any inconsistency between the terms of the Application, the Simms Declaration, and this Order, this Order shall govern.

13.     This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order, and the engagement of FTI in these chapter 11 cases.


Dated: _____, 2023
          Wilmington, Delaware

_____
THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

*Revised Proposed Order – Redline*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:                                      )
                                            )    **Chapter 11**
**FTX TRADING LTD.,** *et al.*[1]           )
                                            )    **Case No. 22-11068 (JTD)**
                                            )    **(Jointly Administered)**
                        Debtors.            )

**ORDER AUTHORIZING RETENTION OF**
**FTI CONSULTING, INC. AS FINANCIAL ADVISOR**
**FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**EFFECTIVE AS OF DECEMBER 22, 2022**

Upon the application (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for an order under Bankruptcy Code section 1103 authorizing the Committee to retain FTI Consulting, Inc. ("FTI")[2], as its financial advisors; and upon the Simms Declaration[3] and the Supplemental Simms Declaration in support of the Application; and due and adequate notice of the Application having been given; and it appearing that no other notice need be given; and objections (if any) to the Application having been withdrawn, resolved or overruled on the merits; and it appearing that FTI neither holds nor represents any interest materially adverse to the Debtors' estates; and it appearing that FTI is "disinterested," as that term is defined in Bankruptcy Code section 101(14); and it appearing that the relief ~~requested in the Application~~ set forth in this Order is in the best interest of the Committee and ~~the Debtors'~~

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at ~~https://cases.ra.kroll.com/FTX.~~ https://cases.ra.kroll.com/FTX.

[2]  Professionals employed by certain subsidiaries of FTI will also be used in the engagement.

[3]  Capitalized terms used in this order not otherwise defined have the meaning given to them in the Application.

estates~~it constituents~~, after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Application is granted as set forth herein.

2.      In accordance with Bankruptcy Code section 1103, the Committee is authorized to employ and retain FTI as its financial advisor effective as of December 22, 2022 on the terms set forth in the Application, as modified by this Order.

3.      FTI shall ~~be compensated~~apply for compensation for professional services rendered and reimbursement of expenses incurred in accordance with ~~the procedures set forth in~~ Bankruptcy Code sections 330 and 331, the applicable Bankruptcy ~~Rule 2016, and any~~Rules, the Local Rules of this Court, including Local Rule 2016-2, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 435], and any other applicable orders entered by the Court.

4.      ~~FTI is entitled to~~Notwithstanding anything in the Application or any supporting declaration to the contrary, FTI shall seek reimbursement from the Debtors' estates for its engagement-related expenses at the firm's actual cost paid, subject to the limits set forth in Local Rule 2016-2(e).  In the event that, during the pendency of these chapter 11 cases, FTI seeks reimbursement of ~~actual and necessary expenses, including~~any legal fees, and/or expenses related to the Application and the preparation of future fee applications as approved by the Court~~.~~, the invoices and supporting time records from such attorneys shall be included in FTI's fee applications and such invoices and time records shall be in compliance with Rule 2016-2(f) of the Local Rules of this Court, and shall be subject to the U.S. Trustee Guidelines and approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy

Code and without regard to whether such attorney's services satisfy section 330 (a)(3)(C) of the Bankruptcy Code; provided, however, that FTI shall not seek reimbursement of any fees or costs arising from the defense of its fee applications in these chapter 11 cases.

5.      The following indemnification provisions are approved:

a.   subject to the provisions of subparagraphs (b) and, (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, FTI for any claims arising from, related to, or in connection with the services to be provided by FTI as specified in the Application, but not for any claim arising from, related to, or in connection with FTI's performance of any other services other than those in connection with the engagement, unless such services and indemnification therefor are approved by this Court; and

b.   FTI shall not be entitled to indemnification, contribution or reimbursement pursuant to the Application for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by this Court.

c.   b. the The Debtors' estates shall have no obligation to indemnify FTI, or provide contribution or reimbursement to FTI, for any claim or expense that to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen primarily from FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraud; (ii) for a contractual dispute in which the Committee or the Debtors allege breach of FTI's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to applicable law, or (iiiii) settled prior to a judicial determination as to FTI's gross negligence, willful misconduct, breach of fiduciary duty (if any), bad faith, or fraudthe exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI isshould not entitled to receive indemnity, contribution or reimbursement under the terms of the Application, as modified by this Order; and.

d.   c. ifIf, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing thisthe chapter 11 casecases, FTI believes that it is entitled to the payment of any amounts by the Debtors' estates on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Application (as

modified by this Order), including, without limitation, the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtors' estates may not pay any such amounts to FTI before the entry of an order by this Court approving the payment. This subparagraph (ed) is intended only to specify the period of time under which thethis Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution and/or reimbursement, and not as a provision limiting the duration of the obligation of the Debtors' obligationestates to indemnify FTI, or make contributions or reimbursements to, FTI. All parties in interest shall retain the right to object to any demand by FTI for indemnification, contribution and/or reimbursement.

6.    FTI shall provide ten (10) days' notice to the Debtors, the U.S. Trustee, and the Committee in connection with any increase in the hourly rates listed in the Application. The U.S. Trustee, the Committee, and the Debtors retain all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

7.    Within fourteen (14) days (or as soon as reasonably practical thereafter) after any qualified bid deadline in these chapter 11 cases, FTI will disclose through a supplemental declaration the identities of all bidders not disclosed prior to entry of this Order and the connections of FTI to such potential counterparties.

8.    7. ToNotwithstanding anything in the Application or the supporting declaration to the contrary, to the extent that FTI uses the services of independent or third-party contractors or subcontractors (collectively, the "Contractors") in these chapter 11 cases, and FTI seeks to pass through the fees andcompensation for the services, costs or expenses of the Contractors, FTI shall (i) pass through the feescost of such Contractors at the same rate that FTI pays the Contractors and; (ii) seek reimbursement for actual costs of the Contractors only. In addition, FTI shall; (iii) ensure that the Contractors perform theare subject to the same conflicts checks

and file such disclosures as required ~~by the~~ for FTI; and (iv) file with this Court disclosures pertaining to such use required by Bankruptcy ~~Code and Bankruptcy Rules~~ Rule 2014.

9.    Notwithstanding anything to the contrary in the Application or the Simms Declaration, the services to be provided by FTI shall not be performed by any entity other than FTI and its wholly owned subsidiaries.

10.   The entry of this Order shall not (i) impede the Court from directing relief with respect to the scope of professional services in the event an examiner is subsequently appointed or (ii) prejudice or otherwise affect the rights of the U.S. Trustee to object to FTI's post-petition request for compensation and reimbursement on any and all grounds.

11.   ~~8.~~ FTI shall use its reasonable efforts to avoid any duplication of services provided by any of the Committee's other retained professionals.

12.   ~~9.~~ If there is any inconsistency between the terms of the Application, the Simms Declaration, and this Order, this Order shall govern.

13.   ~~10.~~ This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order, and the engagement of FTI in these chapter 11 cases.

Dated: _____, 2023
       Wilmington, Delaware
                                    _____
                                    THE HONORABLE JOHN T. DORSEY
                                    UNITED STATES BANKRUPTCY JUDGE