## Exhibit 1

**Engagement Letter**

Strictly Confidential

**Engagement Letter**

As of December 23, 2022

**The Official Committee of Unsecured Creditors
of FTX Trading Ltd.,** *et al.*

Attention:    The Official Committee of Unsecured Creditors of FTX Trading Ltd., *et al.*

Re: <u>Advisory Services</u>

   This agreement (this "<u>Agreement</u>") confirms that Jefferies LLC ("<u>Jefferies</u>") has been engaged by the Official Committee of Unsecured Creditors of FTX Trading Ltd. and its affiliated debtors in possession (such committee and its members, the "<u>Committee</u>") to act as set forth below in connection with the chapter 11 cases of FTX Trading Ltd. and its debtor affiliates and their respective estates (collectively, the "<u>Debtors</u>") pending in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

1.  <u>Services</u>.

   (a)  <u>Restructuring Services</u>.  During the term of this engagement, and as mutually agreed upon by Jefferies and the Committee, Jefferies will act as exclusive investment banker to the Committee in connection with any restructuring of the Debtors' capital structure including, without limitation, through any offer by the Debtors with respect to any outstanding indebtedness, a solicitation of votes, approvals, or consents giving effect thereto (however such result is achieved, including, without limitation, through any plan confirmed pursuant to chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>")), the execution of any agreement giving effect thereto, an offer by any party to convert, exchange or acquire any material outstanding indebtedness, or any similar balance sheet restructuring involving the Debtors (any such transaction, a "<u>Restructuring</u>"). In connection with such services, Jefferies will, among other things, provide strategic advice with regard to restructuring or refinancing the Debtors' obligations, developing a Restructuring and/or asset monetization process, structuring any new securities to be issued under a Restructuring, and participating in negotiations with entities or groups affected by the Restructuring.

   (b)  <u>M&A Transaction Services</u>.  Furthermore, during the term of this engagement, and as mutually agreed upon by Jefferies and the Committee, Jefferies will act as exclusive investment banker to the Committee in connection a sale or other business transaction or series of transactions, involving all or a material portion of the Debtors' equity or assets, through any form of transaction, including, without limitation, a merger, stock purchase, asset purchase, recapitalization, reorganization, consolidation or amalgamation (and including, but not limited to, a sale under Section 363 of the Bankruptcy Code including any credit bid transaction) (any such transaction, an "<u>M&A Transaction</u>").  In connection with such services, Jefferies will, among other things, provide financial advice to the Committee in structuring, evaluating and effecting an M&A Transaction, including a monetization of individual or multiple assets, identify potential

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 2

acquirers and, at the Committee's request, contact and solicit such acquirers, assist in the arrangement and execution of an M&A Transaction, including identifying potential buyers or parties-in-interest, assist in the due diligence process and marketing process, and negotiate the terms of any proposed M&A Transaction.

(c)    <u>Financing Services</u>.  Further, during the term of this engagement, and as mutually agreed upon by Jefferies and the Committee, Jefferies will act as exclusive investment banker to the Committee in connection with a material investment by any third party in the Debtors to restructure, redeem or finance any of the Debtors' indebtedness or an issuance of new securities by the Debtors (any such transaction, a "<u>Financing</u>" and a Financing, an M&A Transaction and a Restructuring, each and together, a "<u>Transaction</u>"). In connection with such services, Jefferies will, among other things, provide financial advice to the Committee in structuring and effecting a Financing, identify potential investors and, at the Committee's request, contact and solicit such Investors, and assist in the arranging of a Financing, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing.

(d)    <u>Additional Services</u>.  In connection with a Transaction, Jefferies will perform the following services, among others, for the Committee:

(i)    become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, properties, financial condition and prospects of the Debtors;

(ii)    advise the Committee on the current state of the "restructuring market";

(iii)    analyze various Transaction scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Transaction(s);

(iv)    assist and advise the Committee in developing a general strategy for accomplishing a Transaction;

(v)    assist and advise the Committee in implementing a Transaction involving the Debtors;

(vi)    assist and advise the Committee in evaluating and analyzing any Transaction, including any securities or debt instruments that may be issued in any such Transaction;

(vii)    assess the financial issues and options concerning (i) a sale of the Debtors' material assets, either in whole or in part, and (ii) the Debtors' chapter 11 plan of reorganization or any other chapter 11 plan;

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 3

      (viii)    advise the Committee in negotiations with the Debtors and third parties in respect of any of the foregoing;

      (ix)    participate in hearings before the Bankruptcy Court and provide testimony and expert reports in respect of the foregoing and on matters mutually agreed upon in good faith by Jefferies and the Committee; and

      (x)    render such other investment banking services as may from time to time be agreed upon by the Committee and Jefferies.

2.    <u>Cooperation</u>.

      (a)    The Committee shall furnish or use its best efforts to cause the Debtors to furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Debtors relevant to the Transactions and all other information and data, and access to the Debtors' officers, directors, employees and professional advisors, which Jefferies reasonably requests in connection with Jefferies' activities hereunder, and if necessary, all solicitation materials prepared by the Debtors (and provided to Jefferies for comments) with respect to the Debtors.  All such materials, information and data shall be complete and accurate in all material respects and not misleading.  The Committee agrees to promptly advise Jefferies of all developments materially affecting the Committee, Debtors, any proposed Transaction or the completeness or accuracy of the information previously furnished to Jefferies, and agrees that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been consulted in advance thereof. If the Committee or, to the Committee's knowledge, any of the Debtors' securityholders, affiliates or other advisors or representatives are contacted by any party concerning a potential Transaction, the Committee will promptly inform Jefferies of such inquiry, and all relevant details thereof.

      (b)    The Committee further acknowledges that Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Debtors, the Committee or other parties to a Transaction) and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Debtors or any other party to a Transaction and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Debtors or other party to a Transaction, as the case may be (and if such forecasts no longer reflect such estimates and judgments, then the Debtors will promptly inform, and provide updated forecasts to, Jefferies).

      (c)    The Committee acknowledges that this assignment may lead to an outcome not anticipated in this Agreement.  In the event that circumstances have changed such that

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 4

this engagement requires more of Jefferies' time and efforts than originally anticipated, the Committee agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.    Use of Name, Advice, etc.

(a)    No information or advice provided (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) or materials prepared by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent. The Committee and the Debtors shall not disseminate any materials bearing the Jefferies name or logo without Jefferies' knowledge and consent. In addition, the Committee agrees that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.

(b)    Jefferies' advice is solely for the confidential use and information of the Committee (solely in the members' capacity as members of the Committee), and is only to be used in considering the matters to which this Agreement relates.  Such advice may not be relied upon by any other party.

4.    Compensation.  The Debtors agree to pay Jefferies each of the following:

(a)    A monthly fee (the "Monthly Fee") equal to $225,000 per month until the termination of this Agreement.  The first Monthly Fee shall be payable as of the date of this Agreement, and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary of such date.  Additionally, commencing with the thirteenth full Monthly Fee actually paid to Jefferies under this Agreement, an amount equal to fifty percent (50%) of all full Monthly Fees actually and subsequently paid to Jefferies shall be credited once, without duplication, against any Transaction Fee (as defined below) subsequently payable to Jefferies; *provided*, *however*, that in no event shall any Transaction Fee be reduced by more than $1,500,000 on account of such crediting.

(b)    Upon the consummation of any chapter 11 plan or a sale of all or substantially all of the Debtors' equity or assets, a transaction fee (the "Transaction Fee") in an amount equal to $10,000,000.  For the avoidance of doubt, only one Transaction Fee may be payable to Jefferies under this Agreement.

The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.  The Committee further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 5

Committee in connection with any Transaction and that the value to the Committee of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.      Expenses.  In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Debtors will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including fees and expenses of its counsel, ancillary expenses and the fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder.

6.      Indemnification.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

7.      Termination.  Jefferies' engagement hereunder will commence as of the date set forth above and the Agreement will remain in full force and effect (and will not be deemed completed) until terminated by either the Committee or Jefferies on five days' written notice to the other.  Upon any termination of this Agreement, the Debtors shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder.  In the event of any termination of this Agreement, Jefferies shall be entitled to the Transaction Fee if, on or prior to 12 months from the effective date of termination of this Agreement, the Debtors consummate any chapter 11 plan or a sale of all or substantially all of the Debtors' equity or assets.  Any such fee or fees shall be payable upon the effective date of a plan or the closing of any such transaction.  Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 10-18, and Schedule A, which shall survive any termination of this Agreement.

8.      Exclusivity.  During the term of this Agreement, the Committee agrees that it will not engage any other party to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies.  The Committee will promptly inform Jefferies of any inquiry it may receive regarding a Transaction.  Notwithstanding the Debtors' obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.      Bankruptcy Retention.  The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103 of the Bankruptcy Code, from the Bankruptcy Court.  Such approval shall provide for the retention of Jefferies effective as of the date of this Agreement, shall incorporate all of the terms and conditions

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 6

herein (explicitly including, but not limited to, the obligations and acknowledgements set forth in <u>Schedule A</u>), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Sections 4 and 5 and <u>Schedule A</u> hereto) shall be null and void and Jefferies shall have no obligations hereunder unless such an order has been entered by the Bankruptcy Court and no appeal is pending as to such order.

10.   <u>Disclaimer.</u>

(a)   The Committee acknowledges that Jefferies' direct parent, Jefferies Group LLC is a full service financial institution engaged in a wide range of investment banking and other activities (including, but not limited to, investment management, corporate finance, securities underwriting, trading and research and brokerage activities). The Committee also acknowledges that Jefferies Group LLC's ultimate parent, Jefferies Financial Group Inc. (collectively with its subsidiaries and affiliates (including Jefferies Group LLC), "<u>Jefferies Financial Group</u>"), is a diversified holding company engaged through its consolidated subsidiaries in a variety of businesses, including, buying and selling companies and business lines and making strategic investments in other companies and businesses, in each case from which conflicting interests, or duties, may arise, and that Jefferies Financial Group maintains certain officers, directors and employees who also perform the same or similar roles for Jefferies. Information that is held elsewhere within Jefferies Financial Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of Jefferies Financial Group has or will have any duty to disclose to the Debtors or the Committee or use for the Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Jefferies Financial Group may trade the securities of the Debtors and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities. Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. Jefferies Financial Group, its directors, officers and

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 7

employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b)     The Committee acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Committee and contractual in nature, and Jefferies does not owe the Committee, or any other person or entity (including, without limitation, any securityholder, affiliates, creditors or employees of the Debtors), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Debtors or the Committee, (iii) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Committee has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (v) the Committee agrees that it is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of the transactions and fees.

11.     <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York.

12.     <u>Exclusive Jurisdiction</u>.  Except as set forth below, the parties agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity of this Agreement, any alleged breach of this Agreement, the engagement contemplated by this Agreement or the determination of the scope of applicability of this Agreement to this Section 12 (any of the foregoing, a "<u>Claim</u>") shall be commenced in the Commercial Division of the Supreme Court of the State of New York located in the City and County of New York, which court shall have exclusive jurisdiction over the adjudication of such matters and shall decide the merits of each Claim on the basis of the internal laws of the State of New York without regard to principles of conflicts of law; <u>provided</u>, <u>however</u>, that for so long as the Debtors' chapter 11 cases are pending, any Claim shall be commenced and adjudicated in the Bankruptcy Court.  The Committee and Jefferies agree and consent to personal jurisdiction, service of process and venue of such court, waive all right to trial by jury for any Claim and agree not to assert the defense of forum non-conveniens.  The Committee and Jefferies also agree that service of process may be effected through next-day delivery using a nationally-recognized overnight courier, or personally delivered, to the addresses set forth or referred to in Section 16 hereof.  The Debtors shall pay all of Jefferies' costs and expenses (including, without limitation, fees and expenses of counsel) in an enforcement proceeding if the court in such proceeding determines that Jefferies is entitled to recover amounts due hereunder.  The Committee and Jefferies further agree that a final, non-appealable judgment in respect of any Claim brought in any such court shall be binding and may be enforced in any other court having

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 8

jurisdiction over the party against whom the judgment is sought to be enforced. Neither Jefferies or any of the Indemnified Persons (as defined in Schedule A), nor the Debtors or their affiliates, shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof; provided that the foregoing shall not place any limitation on the Debtors' indemnification obligations under this Section 12 and Schedule A in connection with third-party claims. In addition, the Committee agrees that irreparable harm to Jefferies will result in the event the Debtors fail, within 10 days of the receipt of a written demand from Jefferies, to pay any of the fees payable pursuant to Section 4 hereof, and in such event the Jefferies may obtain, at its discretion, and in addition to any other remedies available to it, at law or in equity, either specific performance or summary judgment in lieu of complaint from any such court.

13.   <u>Payments</u>.

(a)   All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim. The Debtors agree that (a) any definitive or other binding agreement entered into by any of the Debtors in respect of a Transaction shall provide for the transfer to Jefferies at the closing of the Transaction of a cash amount sufficient to pay in full, in accordance with Sections 4 and 5 above, Jefferies' fees and expenses to the extent not previously paid or reimbursed and (b) the Debtors shall not close the Transaction unless such transfer is made to Jefferies in accordance with the provisions hereof.

(b)   All amounts payable to Jefferies or any other Indemnified Person under the terms of the Agreement shall be paid to Jefferies or any other Indemnified Person in U.S. dollars, free and clear of all deductions or withholdings. If the deduction or withholding is required by law, the Debtors will pay such additional amount as will be required to ensure that the net amount received by Jefferies or any other Indemnified Person is equal to the amount it would have received had no such deduction or withholding or charge been made.

(c)   All fees and expenses payable under the provisions of the Agreement are subject to any applicable value added, sales, turnover, consumption or similar tax, which will be payable by or charged to the Debtors.

14.   <u>Services on Behalf of the Committee</u>. Neither the Committee, nor its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("<u>Committee Counsel</u>")), shall be liable for the fees, expenses or other amounts payable to Jefferies hereunder. Jefferies is providing its services as the investment banker to the Committee, and is not providing any services on behalf of the individual members of the Committee. To the extent any issue arises as to the scope, nature or substance of Jefferies's engagement, Jefferies and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue.

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 9

15.   <u>Announcements, etc</u>.  The Committee and the Debtors agree that Jefferies may describe the Transaction and Jefferies' role in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Debtors' name and logo in connection therewith.

16.   <u>Notices</u>.  Notice required to be given in writing pursuant to any of the provisions of this Agreement shall be mailed by next-day delivery using a nationally-recognized overnight courier, or hand-delivered (a) if to the Committee, to Committee Counsel at Paul Hastings LLP, Attn: Kris Hansen and Gabe Sasson, 200 Park Avenue, New York NY 10166 (krishansen@paulhastings.com and gabesasson@paulhastings.com), and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

17.   <u>Miscellaneous.</u>  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party.  This Agreement is binding upon and inures to the benefit of each party's permitted successors and permitted assigns. This Agreement is solely for the benefit of the Committee, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; <u>provided</u> that Jefferies may, in the performance of its services hereunder, procure the services of other members of Jefferies Financial Group (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement.  If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof.  Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  All references to "$" or "dollars" herein shall be references to U.S. dollars. "Third party" as used herein shall mean any party other than the parties hereto. No failure or delay by Jefferies in exercising any right, power or remedy hereunder or pursuant hereto, or any failure to give notice of or to require compliance with any term of this Agreement, shall operate as a waiver thereof.  This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.  This Agreement has been reviewed by each of the signatories hereto and its counsel.  There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

18.   <u>Patriot Act</u>.  Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "<u>Patriot</u>

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 10

Act"), it is required to obtain, verify and record information that identifies the Debtors, the Committee, and the Committee's members in a manner that satisfies the requirements of the Patriot Act.  This notice is given in accordance with the requirements of the Patriot Act.

**Official Committee of Unsecured Creditors of FTX Trading Ltd.,** *et al.*
As of December 23, 2022
Page 11

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein.

Sincerely,

**JEFFERIES LLC**

By: _____

Name: Leon Szlezinger
Title:   Managing Director and
Joint Global Head of Debt Advisory
& Restructuring

Accepted and Agreed:

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF FTX TRADING LTD.,** *ET AL.*

By: */s/ Alex van Voorhees* _____

Alex van Voorhees of GGC International, solely in his capacity as chairperson of the Official Committee of Unsecured Creditors of FTX Trading Ltd., *et al.*

## SCHEDULE A

Reference is made to the Agreement attached hereto between Jefferies and the Committee.  Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates and their successors and permitted assigns (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, actions, suits, proceedings, third party subpoenas, damages, costs and expenses (an "Action") (including, without limitation, full reimbursement of all fees and expenses of counsel incurred in investigating, preparing or defending against any such Action and in enforcing the terms of this Schedule A), as incurred, (a) related to or arising out of or in connection with any untrue or alleged untrue statement of material fact contained in the materials or other information provided by or on behalf of the Debtors or the Committee to Jefferies, investors or parties to a Transaction, or omission or alleged omission to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading or (b) otherwise, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that, in the case of the foregoing clause (b), the Debtors shall not be responsible for any Excluded Losses.  "Excluded Losses" shall mean Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted primarily from Jefferies' gross negligence, bad faith or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors or the Committee).

Each of the Debtors and the Committee agrees that no Indemnified Person shall have any liability to the Debtors or the Committee or their respective owners, parents, affiliates, securityholders or creditors, as applicable, for any Losses, except for Excluded Losses.

The Debtors agree that they will not settle, facilitate any settlement of, or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than by reason of a final, non-appealable judgment by a court as to the gross negligence, bad faith or willful misconduct of Jefferies as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agree to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors and their respective securityholders, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors and their respective securityholders, on the one hand, and Jefferies, on the other, but also the relative fault of the Debtors and their respective securityholders on the one hand, and Jefferies, on the other, as well as any relevant equitable considerations.  Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement.  Relative benefits to the Debtors and their respective securityholders, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services thereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors' businesses and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.  For a period beginning on the date hereof and ending on that date which is three years from termination of this Agreement, prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors set forth in this Schedule A, the Debtors will notify Jefferies in writing thereof (if not previously notified) and, if requested by Jefferies, shall arrange in connection therewith alternative means of

SCHEDULE A

providing for obligations of the Debtors set forth in this <u>Schedule A</u>, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Jefferies; <u>provided</u>, <u>however</u>, that, if any action, proceeding or investigation is pending at the end of such three-year period for which a claim for indemnification, contribution or reimbursement under this <u>Schedule A</u> has been made, the Debtors' obligations hereunder shall continue until such action, proceeding or investigation has been ultimately resolved.