## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: March 8, 2023 at 1:00 p.m. (ET)<br>Objection Deadline: March 1, 2023 at 4:00 p.m. (ET) |

## DEBTORS' SECOND OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS EFFECTIVE AS OF THE REJECTION DATE

> **PARTIES RECEIVING NOTICE OF THIS OMNIBUS MOTION SHOULD LOCATE THEIR NAMES AND CORRESPONDING CONTRACTS IN EXHIBIT 1 TO THE PROPOSED ORDER ATTACHED TO THE MOTION.**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to (a) reject certain executory contracts set forth on Exhibit 1 to the Order (each, a "Contract," and collectively, the "Contracts"), effective as of February 16, 2023 (the "Rejection Date") and (b) take such action as may be necessary to implement and effectuate the rejection of the Contracts.  In support of this Motion, the Debtors respectfully state as follows:

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Background**

1.      On November 11 and November 14, 2022, the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

3.      The Debtors and their advisors are in the process of reviewing and analyzing the contracts to which the Debtors are parties.  Based upon this analysis, the Debtors have determined, in their business judgment, that there is no longer a need for, or benefit to the Debtors or their estates to maintain, the Contracts going forward.  Rejection of each of the Contracts as of the Rejection Date would benefit the Debtors' estates because it will enable the Debtors to avoid the accrual of any obligations related to goods and/or services provided under the Contracts described below that are not needed by the Debtors or their estates.  This Motion pertains to twenty-five Contracts.

-2-

4.      The first Contract is an Endorsement Agreement, by and between ABG-SHAQ, LLC and West Realm Shires Services Inc. ("WRSS"), dated as of March 25, 2022.  This Contract provides that ABG-SHAQ, LLC will provide certain talent's personal and promotional services on behalf of WRSS, and grants to WRSS the right to use the talent's likeness to promote WRSS's products and services and certain sponsorship rights in exchange for compensation in the form of cash and royalties from the sales of related non-fungible tokens ("NFTs").

5.      The second Contract is a Naming Rights and Corporate Sponsorship Agreement, by and between Cal Bears Sports Properties, LLC and Blockfolio, Inc. ("Blockfolio"), dated as of August 5, 2021.  This Contract grants Blockfolio naming rights with respect to the football field at California Memorial Stadium and certain other sponsorship rights.

6.      The third Contract is a Sponsorship Agreement, by and between [NAME ON FILE] and West Realm Shires Inc. ("WRS"), dated as of August 18, 2021. [2]  This Contract grants WRS certain sponsorship rights in connection with a certain music festival for three years in exchange for compensation in the form of cash, referral fees and shares in NFT music projects.

7.      The fourth Contract is a Sponsorship Agreement, by and between [NAME ON FILE], on behalf of the Ice Coffee Hour (together, "Ice Coffee Hour"), and WRSS, dated as of February 1, 2022.  This Contract provides that Ice Coffee Hour will advertise WRSS and list it as a sponsor on Ice Coffee Hour's shows and social media channels.

8.      The fifth Contract is a Sponsorship Agreement, by and between [NAME ON FILE], on behalf of Stephan Real Estate Inc. (together, "Stephan"), and WRSS, dated as of

---

[2]      Names of customers are redacted in accordance with the *Final Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals on a Final Basis and (III) Granting Certain Related Relief* [D.I. 545].

March 29, 2022.  This Contract provides that Stephan will advertise WRSS and list it as a sponsor on Stephan's shows and social media channels.

9.      The sixth Contract is a Partnership and Endorsement Services Agreement, by and between [NAME ON FILE] and WRSS, dated as of October 18, 2021.  This Contract provides that [NAME ON FILE] will provide certain personal and promotional services on behalf of WRSS, and grants WRSS the right to use [NAME ON FILE] likeness to promote WRSS' services and products in exchange for compensation in the form of cryptocurrency and charitable donations to third-party charities.

10.     The seventh Contract is a Letter of Agreement, by and between Desert Palace LLC d/b/a Caesars Palace ("Caesars") and WRSS, dated as of October 6, 2022.  This Contract provides that Caesars will rent to WRSS certain rooms for an event hosted by WRSS.

11.     The eighth Contract is a Pledge Agreement, by and between [NAME ON FILE] and Blockfolio, dated as of August 11, 2021.  This Contract was entered into in connection with a separate partnership agreement by and between SC30 Inc. and Blockfolio and dated as of the same date, which the Debtors have previously rejected.  [D.I. 585].  This Contract provides that Blockfolio will make annual donations to [NAME ON FILE].

12.     The ninth Contract is a Sponsorship Agreement, by and between Fortune Media Inc., d/b/a OpenFortune ("OpenFortune") and WRSS, dated as of August 4, 2021.  This Contract provides that Open Fortune will distribute among select restaurants custom fortune cookies containing WRSS advertisements in exchange for annual fees.

13.     The tenth Contract is a Performance Contract, by and between GCKM LLP and Crypto Bahamas LLC, dated as of June 28, 2022.  This Contract provides that, in exchange for a guaranteed fee, GCKM LLP will provide certain talent's services to perform a

show on April 20, 2023, at the Grand Hyatt Baha Mar, and grants to Crypto Bahamas LLC a limited right to use the talent's name, image and logo to market the event.

14.     The eleventh Contract is a Partnership and Endorsement Services Agreement, by and between Latte Larry Inc. ("LL") and WRSS, dated as of January 5, 2022. This Contract provides that LL will provide certain talent's personal and promotional services on behalf WRSS, and grants WRSS the right to use the talent's likeness to promote WRSS' products and services in exchange for compensation in the form of cash and equity.

15.     The twelfth Contract is a Media Services Agreement, by and between Ledger and Cobie Enterprises ("LACE") and Blockfolio, dated on or about May 11, 2021.  This Contract provides that LACE will advertise Blockfolio on LACE's shows and social media channels.

16.     The thirteenth Contract is a Mutual Services Agreement, by and between [NAME ON FILE] and WRSS, dated as of August 21, 2022.  This Contract provides that holders of a certain professional athlete's NFT will receive certain benefits from WRSS in exchange for WRSS' ability to have an on-site advertising presence at a certain number of the professional athlete's appearances.

17.     The fourteenth Contract is a Gift Agreement, by and between Laureus/NO Play Academy ("Laureus"), a promotional partner, and WRSS, dated as of March 16, 2022.  This Contract provides that, at the designation of the promotional partner, WRSS will make certain annual donations to Laureus during the four-year term of this Contract.

18.     The fifteenth Contract is a Podcast Sponsorship Agreement, by and between Lunch Money Group Inc. ("LMG") and WRSS, dated as of January 3, 2022.  This Contract provides that, in exchange for a fee, WRSS will act as a sponsor to LMG's podcast,

which will feature content about, and guests from, WRSS, during the one-year term of the Contract.

19.     The sixteenth Contract is an Endorsement Services Agreement, by and between MMBOC, LLC and Blockfolio, dated as of March 5, 2021.  This Contract provides that MMBOC, LLC will provide certain talent's personal and promotional services on behalf of Blockfolio, and grants Blockfolio the right to use certain talent's likeness to promote Blockfolio's products and services in exchange for compensation in the form of cash and cryptocurrency.

20.     The seventeenth Contract is a Sponsorship Agreement, by and between [NAME ON FILE] and FTX Trading, dated as of August 10, 2021.  The Contract provides that, in exchange for an annual fee, [NAME ON FILE] will grant FTX Trading certain exclusive sponsorship and related rights in relation to certain music festivals organized by [NAME ON FILE] during the three-year term of this Contract.

21.     The eighteenth Contract is a Partnership and Endorsement Services Agreement, by and between [NAME ON FILE] and WRSS, dated as of March 16, 2022.  This Contract provides that [NAME ON FILE] will provide certain talent's personal and promotional services on behalf of WRSS, and grants WRSS the right to use the talent's likeness to promote WRSS's products and services in exchange for compensation in the form of cryptocurrency and equity.

22.     The nineteenth Contract is a Sponsorship Agreement, by and between a social influencer and WRSS, dated as of March 28, 2022.  This Contract provides that the social influencer will advertise WRSS and list it as a sponsor on shows and social media channels.

23.     The twentieth Contract is a Partner Referral Agreement, by and between NerdWallet, Inc. ("NerdWallet") and WRSS, dated as of April 13, 2022.  This Contract provides

that NerdWallet will refer prospective customers to WRSS' exchange platform in exchange for monthly referral fees.

24.     The twenty-first Contract is a Sponsorship Agreement, by and between Ohana Experience, LLC ("Ohana") and WRSS, dated as of September 13, 2022.  This Contract provides that Ohana will promote and advertise WRSS' business and provide a certain collegiate football team's personal and promotional services on behalf of WRSS during the five-month term of this Contract.

25.     The twenty-second Contract is a Partnership and Endorsement Services Agreement, by and between [NAME ON FILE] and Blockfolio, dated as of August 6, 2021.  This Contract provides that [NAME ON FILE]  will provide certain personal and promotional services on behalf of Blockfolio, and grants Blockfolio the right to use certain talent's likeness to promote Blockfolio's services or products in exchange for compensation in the form of cash and equity.

26.     The twenty-third Contract is a Sponsorship Agreement, by and between [NAME ON FILE] and WRSS, dated as of March 11, 2022.  This Contract provides that [NAME ON FILE] will advertise WRSS on its social media channels.

27.     The twenty-fourth Contract is a Sponsorship Agreement, by and between [NAME ON FILE] and WRSS, dated as of March 8, 2022.  This Contract provides that [NAME ON FILE] will advertise WRSS and list it as a sponsor on [NAME ON FILE] shows and social media channels.

28.     The twenty-fifth Contract is a binding Term Sheet, by and between [NAME ON FILE] and FTX Trading, dated on or about December 8, 2021.  This Contract provides that, in exchange for an annual fee, [NAME ON FILE] will grant FTX Trading certain

exclusive sponsorship and related rights in connection to events organized by [NAME ON FILE] over the five-year term of this Contract.

## Jurisdiction

29.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

30.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to (i) reject the Contracts, effective as of the Rejection Date and (ii) take such actions as may be necessary to implement and effectuate the rejections of the Contracts.  The Debtors and their estates reserve any and all rights to assert that the Contracts are not executory contracts, and nothing included in, or omitted from, this Motion shall impair, prejudice, waive or otherwise affect such rights.

## Basis for Relief

**A.      Rejection of the Contracts Reflects the Debtors' Business Judgment.**

31.      The Debtors have determined that the Contracts are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates and present burdensome liabilities.  Accordingly, the Debtors' decision to reject the Contracts is an exercise of business judgment, and the rejection should be approved.

32.      Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization."  *In re Exide Techs*., 607 F.3d 957, 967 (3d Cir. 2010); *NLRB* v. *Bildisco & Bildisco* (*In re Bildisco*), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

33.      The Debtors' rejection of an executory contract is governed by the "business judgment" standard, which requires a debtor to have determined that the requested rejection would benefit its estate.  *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Sharon Steel Corp*. v. *Nat'l Fuel Gas Distrib. Corp*., 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("In general, motions to reject executory contracts are evaluated under the business judgment test."); *In re HQ Glob. Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003)

("Under the business judgment standard, the sole issue is whether the rejection benefits the estate.").

34.    In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject contracts. *See, e.g.*, *In re Fed. Mogul Glob., Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").  Courts defer to a debtor's business judgment in rejecting an executory contract, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code. *See NLRB*, 465 U.S. at 523 (recognizing "business judgment" standard used to approve rejection of executory contracts).

35.    Moreover, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) allows the bankruptcy court to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).  Section 105(a) therefore provides additional authority for the Court to grant the relief requested herein.

36.    The Debtors submit that rejection of the Contracts effective as of the applicable Rejection Date is within the Debtors' business judgment and an appropriate step in

furtherance of their efforts to preserve and maximize the value of their estates for all stakeholders. The Debtors have evaluated the Contracts in consultation with their professional advisors and determined that any benefits provided by these Contracts do not equal or exceed the costs associated with the Contracts. In many cases, the Contracts simply are no longer needed to operate the Debtors' businesses. In contrast, the Debtors' rejection of the Contracts now will provide significant cost savings to the estate by terminating any further costs and obligations.

37.     The Contracts are not necessary for the Debtors' Chapter 11 proceedings. All of the Contracts are for endorsements and promotion of the Debtors' brand and name or other similar marketing related contracts. Given that the Debtors are not currently operating, these Contracts are not necessary or beneficial to the Debtors' chapter 11 efforts. Moreover, maintaining the Contracts could create unnecessary and burdensome expenses for the Debtors' estates. Thus, the Debtors have determined that maintaining the Contracts is not in the best interests of the Debtors or their estates.

38.     Accordingly, the decision to reject the Contracts is a proper exercise of the Debtors' business judgment, and rejection of the Contracts therefore should be approved pursuant to section 365(a) of the Bankruptcy Code.

39.     Courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re Carbonlite Holdings LLC*, 21-10527 (JTD) (July 14, 2021) [D.I. 714] (authorizing debtors to reject certain executory contracts effective as of the rejection date); *In re Lighthouse Resources Inc.*, 20-13056 (JTD) (Jan. 26, 2021) [D.I. 270] (authorizing debtors to reject certain executory contracts and unexpired leases effective as of the rejection date); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (April 9, 2020) [D.I. 587] (same); *In re THG Holdings LLC*, 29-11689 (JTD) (Oct. 10, 2019) [D.I. 343] (same).

**B.      Deeming Each Contract Rejected Effective as of the Rejection Date is Appropriate.**

40.     The Debtors also respectfully submit that it is appropriate for the Court to deem the Contracts rejected effective as of the Rejection Date.

41.     Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively.  *See SCS Co.* v. *Peter J. Schmitt Co.*, 1995 WL 1772010, at *2 (D. Del. May 15, 1995) (noting that a bankruptcy court has authority to select a retroactive date for the effective date of a lease's rejection); *see also In re Rupari Holding Corp.*, 2017 WL 5903498, at *6 (Bankr. D. Del. Nov. 28, 2017) (authorizing rejection of employment agreements effective as of a date before the debtor filed the motion to reject the same where debtor unequivocally communicated to the employees that it no longer required their services at the closing of the sale).

42.     Courts in this district and elsewhere have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date before entry of an order authorizing such rejection where the balance of equities favors such relief.  *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1029 (1st Cir. 1995) ("[R]ejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (D. Colo. 2003) (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

43.     Furthermore, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

44.     In this instance, the balance of the equities favors the rejection of the

Contracts effective as of the applicable Rejection Date.  Without a retroactive date of rejection,

the Debtors may be forced to incur unnecessary administrative costs for Contracts that do not

provide any benefits to the Debtors and their estates.  The Contract counterparties are not harmed

by rejection prior to the date of entry of an order by this Court because they are each on notice as

of filing of the Motion, and can as of that date start preparing for rejection and mitigating

damages.  The Debtors anticipate filing a motion to establish a bar date in these Chapter 11

Cases and the Contract counterparties shall have until the date fixed by this Court to file any and

all claims for damages arising from the Debtors' rejection of the Contracts.

45.     Courts in this district have routinely granted relief similar to the relief

requested herein.  *See, e.g.*, *In re Carbonlite Holdings LLC*, 21-10527 (JTD) (July 14, 2021)

[D.I. 714] (authorizing debtors to reject certain executory contracts effective as of the rejection

date); *In re Lighthouse Resources Inc.*, 20-13056 (JTD) (Jan. 26, 2021) [D.I. 270] (authorizing

debtors to reject certain executory contracts and unexpired leases effective as of the rejection

date); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (April 9, 2020) [D.I. 587]

(same);  *In re THG Holdings LLC*, 29-11689 (JTD) (Oct. 10, 2019) [D.I. 343] (same).

**Compliance with Bankruptcy Rule 6006(f)**

46.     Bankruptcy Rule 6006(f) establishes requirements for a motion to reject

multiple executory contracts or unexpired leases that are not between the same parties.  Rule

6006(f) states, in part, that such motion shall:

(1)     state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2)     list parties alphabetically and identify the corresponding contract or lease;

(3)     specify the terms, including the curing of defaults, for each requested assignment;

-13-

(4)     specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5)     be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases;

(6)     be limited to no more than 100 executory contracts or unexpired leases.

47.     The Debtors respectfully submit that the relief requested in this Motion complies with the requirements of Bankruptcy Rule 6006(f).

**Reservation of Rights**

48.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

49.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counterparties to the Contracts and (h) to the extent not listed

herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and

(b) grant such other and further relief as is just and proper.

Dated:  February 16, 2023
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*