## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | [Proposed] Hearing Date: March 8, 2023 at 1:00 p.m. (ET) |
| | [Proposed] Objection Deadline: March 7, 2023 at 12:00 p.m. (ET) |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS AND THE COMMITTEE TO ENTER INTO STIPULATION WITH THE VOYAGER DEBTORS AND VOYAGER COMMITTEE, (B) APPROVING THE STIPULATION, AND (C) GRANTING RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order,

substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of

title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the

Debtors and the Official Committee of Unsecured Creditors appointed in the Debtors' cases (the

"Committee") to enter into that certain stipulation, attached as Exhibit 1 to the Order (the

"Stipulation"),[2] between and among (i) the Debtors, (ii) Voyager Digital Holdings, Inc.

("Voyager HoldCo") and its affiliated debtors and debtor-in-possession (collectively, the

"Voyager Debtors"), (iii) the Committee, and (iv) the Official Committee of Unsecured Creditors

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Stipulation.

appointed in the Voyager Debtors' cases (the "Voyager Committee" and together with the Debtors, the Voyager Debtors, and the Committee, the "Parties").

Entry into the Stipulation by the Debtors and the Committee is in the best interests of the Debtors' estates because the agreements embodied in the Stipulation will allow the FTX Debtors to focus their resources on what they believe is the primary source of value for their estates with respect to the Voyager Debtors—the Preference Claims (as defined below)—by, among other things, (i) resolving certain disputes between the Parties with respect to the Voyager Debtors' proposed plan of reorganization and the Debtors' prepetition proofs of claim filed against the Voyager Debtors, (ii) requiring Voyager OpCo (as defined below) to establish a cash reserve in the amount of $445 million on account of the Preference Claims so that if the Debtors and their estates prevail, there is value available to satisfy the Debtors' claims; and (iii) establishing a framework for the litigation of the Preference Claims.

In support of the Motion, the Debtors respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

---

[3]     November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Jurisdiction

3.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

4.      By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors and the Committee to enter into the Stipulation, (b) approving the Stipulation, and (c) granting certain related relief.

## Facts Specific to the Relief Requested

5.     On July 5, 2022 (the "Voyager Petition Date"), each Voyager Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court").

6.     As of the Voyager Petition Date, Alameda Ventures, Ltd. ("Alameda Ventures"), as lender, Voyager HoldCo, as borrower, and Voyager Digital, Ltd. ("Voyager TopCo"), as guarantor, were parties to a loan agreement, dated June 21, 2022 (the "Alameda Loan Agreement," and the loan facility pursuant to the Alameda Loan Agreement, the "Alameda Loan Facility").  On October 3, 2022, Alameda Ventures filed Proofs of Claim Nos. 11206, 11209, and 11213 on the Voyager Debtors' claims register asserting certain claims against each of the Voyager Debtors for amounts it contended was due and owing under the Alameda Loan Facility (collectively, the "Alameda Loan Facility Claims").

7.     In addition, as of the Voyager Petition Date, Alameda Ventures was the beneficial owner of 7,723,995 shares of the common stock of Voyager TopCo and Alameda Research Ventures LLC was the beneficial owner of 10,457,265 shares of the common stock of Voyager TopCo.

8.     On September 27, 2022, Voyager Digital, LLC ("Voyager OpCo") and West Realm Shires Inc. ("West Realm Shires") entered into that certain Asset Purchase Agreement (as amended, the "FTX APA") [N.Y. D.I. 472-B].  On October 20, 2022, the New York Bankruptcy Court entered the *Order (I) Authorizing Entry Into the Asset Purchase Agreement and (II) Granting Related Relief* [N.Y. D.I. 581].

9.     On November 11 and 14, 2023, respectively, the Debtors commenced these Chapter 11 Cases.

10.    On January 9, 2023, West Realm Shires and the Voyager Debtors entered into that certain stipulation terminating the FTX APA (the "FTX APA Stipulation"), which was approved by the Court on January 9, 2023 [D.I. 423] and by the New York Bankruptcy Court on January 10, 2023 [N.Y. D.I. 849].

11.    On January 10, 2023, the Voyager Debtors filed the *Third Amended Joint Chapter 11 Plan of Voyager Digital Holdings, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [N.Y. D.I. 852] (as modified, amended, or supplemented from time to time, the "Voyager Plan").  The Voyager Plan provides for, among other things, the equitable subordination of the Alameda Loan Facility Claims to all other general unsecured claims of the Voyager Debtors.   The hearing to consider confirmation of the Voyager Plan is scheduled for March 2, 2023 at 10:00 a.m. prevailing Eastern Time (as may be continued from time to time, the "Voyager Confirmation Hearing").

12.    On January 30, 2023, Alameda Research Ltd. ("Alameda Research") filed that certain *Complaint to Avoid and Recover Preferential Transfers* (as it may be amended) commencing the adversary proceeding captioned *In re FTX Trading Ltd.*, Adv. Pro. No. 23-50084 (JTD) (Bankr. D. Del. Jan. 30, 2023) (the "FTX Adversary Proceeding"), asserting certain preference claims against Voyager OpCo and non-debtor HTC Trading Inc., as they may be amended (the "Preference Claims").

13.    On January 25, 2023, the Debtors served *Alameda's First Request for Production of Documents to the Debtors* (the "Debtors' RFPs").  On February 3, 2023, the Voyager Debtors served their *First Set of Request for Production of Documents to Alameda Ventures Ltd. and its Affiliates* on the Debtors, containing 75 wide-ranging requests for production (the "Voyager Debtors' RFPs").  On February 14, 2023, the Voyager Committee served its *First Set of Document Requests to Alameda Ventures Ltd. and its Affiliates*, along with

a notice of deposition seeking a corporate deposition of Alameda Ventures (together, the "UCC Discovery"). In addition, the Voyager Debtors served numerous third party subpoenas on former officers and directors of the Debtors seeking discovery in connection with the pending disputes (collectively with the Debtors' RFPs, the Voyager Debtors' RFPs, and the UCC Discovery, the "Pending Discovery").

14.    Given the various disputes between the Debtors and the Voyager Debtors relating to or arising from the FTX APA, the Alameda Loan Facility (including the asserted equitable subordination of the Alameda Loan Facility Claims), the Voyager Plan, and the FTX Adversary Proceeding, the Parties have engaged in arm's length discussions to resolve or narrow issues, and through those discussions, have agreed to enter into the Stipulation.

15.    The terms of the Stipulation generally provide, among other things, that:[4]

- the Voyager Debtors agree to reserve and hold $445 million in cash of U.S. Dollars on account of the Preference Claims until their final resolution;

- the Debtors agree to (a) withdraw (or, at the Voyager Debtors' election, contribute to Voyager OpCo) the Alameda Loan Facility Claims and not object to the Voyager Plan; and (b) waive (or, at the Voyager Debtors' election, contribute to Voyager OpCo) any recoveries on any of the Debtors' equity interests in Voyager TopCo;

- all claims relating to or arising out of the FTX APA are preserved, including with respect to the $5 million deposit provided by WRS under the FTX APA;

- the Parties agree to participate in non-binding mediation with respect to all claims among them, and defer discovery; and

- the Parties agree to a framework for the litigation of all remaining disputes, including (a) to negotiate an expedited litigation schedule with respect to the Preference Claims, to the extent unresolved in mediation; (b) to litigate the Preference Claims in the FTX Adversary Proceeding before this Court, and, to the extent determined in a final and unappealable order from the Court, to allow the Preference Claims by a joint stipulation between the Voyager Debtors and Debtors in the New York Bankruptcy Court, *provided* that (i) the administrative or general unsecured status of such claims will be decided in the New York Bankruptcy Court, and (ii) each Party reserves all rights with respect to any claim of equitable subordination with

---

[4]    Any summary of the Stipulation contained herein is qualified in its entirety by the actual terms and conditions of the Stipulation. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Stipulation, the actual terms and conditions of the Stipulation shall control.

respect to the Preference Claims; and (c) the intervention by each of the Committee and the Voyager Committee in all disputes between the Debtors and the Voyager Debtors.

**Basis for Relief**

**I.    The Stipulation Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests.**

16.    Given the number and scope of potential disputes between the Debtors and the Voyager Debtors, and the associated cost of resolving each and every one of those disputes, including with respect to the extensive Pending Discovery served to date by the Parties, the Debtors (and the Committee) have determined that entry into the Stipulation to narrow the issues and focus on those likely to yield substantial value (*i.e.* the Preference Claims) is in the best interests of the Debtors estates.

17.    Section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

18.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and

reasonable doubts." *See also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979)

(quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968).

      19.    "[T]he decision whether to approve a compromise under [Bankruptcy]

Rule 9019 is committed to the sound discretion of the Court, which must determine if the

compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R.

798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the

debtor, but instead should canvas the issues to see whether the compromise falls below the

lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R.

798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also

In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the

settlement is the best possible compromise. Rather, the court must conclude that the settlement

is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)). Taken

together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to

approve a proposed compromise and settlement when it is in the best interests of the debtor's

estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In

re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

      20.    The Third Circuit Court of Appeals has enumerated four factors that

should be considered in determining whether a compromise should be approved: "(1) the

probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of

the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4)

the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord

In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the Martin factors are

useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to

the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc.*, 222

B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

21.    The Stipulation substantially narrows the scope of necessary litigation to those likely to provide the greatest benefit to the Debtors' estates and their stakeholders, and allows the Debtors and their estates to focus their resources primarily on the Preference Claims, which the Debtors have asserted as an administrative expense claim against Voyager OpCo in the amount of approximately $445 million. The Stipulation ensures that a cash reserve in that amount will be maintained by Voyager OpCo so that if the Debtors and their estates prevail on those claims, there is value available to satisfy them. The agreements contained in the Stipulation provide for non-binding mediation of all disputes among the Parties in an attempt to limit the litigation expense necessary to resolve the outstanding claims. Importantly, the Stipulation further provides a framework for litigating the Preference Claims promptly, as necessary, before this Court.

22.    In return, the Debtors (and the Committee) agree not to object to the Voyager Plan and avoid costly and time-consuming litigation with respect to allowance and treatment of the Alameda Loan Facility Claims—which are not expected to yield any meaningful recovery to the Debtors even if they are ultimately allowed and not equitably subordinated. Specifically, in exchange for the agreements by the Voyager Debtors and the Voyager Committee, the Debtors agree to forego (i) recovery on the Alameda Loan Facility Claims, which are unsecured pre-petition claims; and (ii) the Debtors' equity interests in Voyager TopCo. Notably, although Alameda Ventures timely filed Proof of Claim No. 11213 against Voyager

OpCo in connection with the Alameda Loan Agreement, Alameda Ventures has since concluded

that any recovery on the Alameda Loan Facility Claims would only be from Voyager HoldCo

and/or Voyager TopCo—which are projected to have minimal value available for distribution to

creditors under the Voyager Plan—and not from Voyager OpCo, which is not a party to the

Alameda Loan Agreement.[5]  Therefore, the Debtors (and the Committee) believe that, even if

they are successful in litigating the validity and priority of the Alameda Loan Facility Claims,

and prevailing against the Voyager Debtors' and the Voyager Committee's attempts to equitably

subordinate those claims at substantial cost, the Alameda Loan Facility Claims are unlikely to

return any material value to the Debtors' estates.

23.    Accordingly, the compromises set forth in the Stipulation are, in the

aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the

applicable *Martin* factors.

24.    **The Probability of Success in Litigation**.  There exist or may exist *bona*

*fide* disputes as to, among other things, the Alameda Loan Facility Claims and the Debtors'

associated objections to the Voyager Plan.  Litigation with respect to such matters will be costly

and time consuming, including as a result of the extensive Pending Discovery already served,

and present significant uncertainties for the Debtors and their estates.  Even if the Debtors and

their estates were to prevail, the potential recoveries pursuant to the Voyager Plan on account of

the Alameda Loan Facility Claims and the equity interests do not justify the costs that would be

attendant to such litigation.  At the same time, the Stipulation narrows the scope of potential

litigation to the claims and issues that are most likely to maximize the return of value to the

---

[5]    *See* Art. IV.D, Amended Disclosure Statement, *In re Voyager Digital Holdings, Inc., et al.*, No. 22-10943
(Bankr. S.D.N.Y. Jan. 13, 2023) [N.Y. D.I. 863] (projecting less than $500,000 of value available for
distributions to creditors of Voyager HoldCo and less than $2 million of value available for distribution to
creditors of Voyager TopCo).

Debtors' estates, and ensures that the Preference Claims—worth as much as $445 million—remain collectable and will be liquidated before this Court.

25.     **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay.**  Litigation pertaining to the Alameda Loan Facility Claims, including, in particular, with respect to the asserted equitable subordination of such claims, would be complex and expensive and involve a significant amount of time, including in responding to, and potentially litigating, broad discovery requests served on the Debtors by both the Voyager Debtors and the Voyager Committee.  Without the agreement embodied in the Stipulation, the Debtors would be forced to expend time and resources litigating these issues, while any recovery on account of such claims would remain uncertain and unlikely to have meaningful value in any event.  Instead, as discussed above, the Stipulation eliminates theses costs in exchange for important and beneficial agreements from the Voyager Debtors with respect to the $445 million Preference Claims asserted as administrative priority claims.

26.     **The Paramount Interests of Creditors.**  The Stipulation is in best interests of the Debtors' creditors because, as discussed above, approval of the Stipulation resolves potential disputes between the Parties with respect to the Alameda Loan Facility Claims and the Voyager Plan that would have involved costly and time-consuming litigation for uncertain recovery, while ensuring that the Voyager Debtors will hold a $445 million cash reserve for the Preference Claims, while also providing certainty that those claims will be litigated in an orderly manner before this Court.  The creditors' interests—of both the Debtors and the Voyager Debtors—are served by the Parties' agreement to mediate all claims between them prior to proceeding with litigation.  As such, in the Debtors' business judgment, the value of entering into the Stipulation exceeds the net benefits that the Debtors and their estates would

likely obtain continuing on the alternative litigation path.  *In addition, the Committee is a party to the Stipulation, and supports entry of the Order*.

27.     Based on the foregoing, the Debtors contend that the Stipulation satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders.  As a result, the Debtors respectfully submit that the Stipulation satisfies the *Martin* factors and request that the Court authorize the Debtors and the Committee to enter into the Stipulation.

### Waiver of Bankruptcy Rule 6004(h)

28.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets.

### Reservation of Rights

29.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## Notice

30.      Notice of this Motion has been provided to: (a) the U.S. Trustee;
(b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal
Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for
the District of Delaware; (g) the Voyager Debtors; (h) the Voyager Committee; (i) to the extent
not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors
submit that, in light of the nature of the relief requested, no other or further notice need be
provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request
that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and
(b) grant such other and further relief as is just and proper.


*[Remainder of page intentionally left blank]*

Dated: February 27, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_(signature)_

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted _pro hac vice_)
James L. Bromley (admitted _pro hac vice_)
Brian D. Glueckstein (admitted _pro hac vice_)
Benjamin S. Beller (admitted _pro hac vice_)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com
        bellerb@sullcrom.com

_Counsel for the Debtors_
_and Debtors-in-Possession_