IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **FTX TRADING LTD., et al.,** | ) | **Case No. 22-11068 (JTD)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |
| | ) | **LedgerX Sale Hearing: March 13, 2023 (no time provided)** |
| | ) | **Embed Sale Hearing: March 20, 2023 (no time provided)** |
| | ) | **Objection Deadline LedgerX Business: March 6, 2023** |
| | ) | **Objection Deadline Embed Business: March 13, 2023** |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING (1) MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE SALE(S) FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (2) NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

Oracle America, Inc., successor in interest to NetSuite, Inc. ("Oracle"), a creditor and contract counterparty in the above-captioned jointly administered Chapter 11 cases, submits this limited objection and reservation of rights ("Rights Reservation") regarding the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s); and (II)(A) Approving the Sale(s) Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Dkt. No. 233] ("Sale Motion") and the *Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts* [Dkt. No. 624] ("Assumption Notice") filed by FTX Trading Ltd., *et al.* ("Debtors").

**I.    INTRODUCTION**

1. By the Sale Motion and the Assumption Notice, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign one or more executory contracts between the Debtors and Oracle.

2. Oracle objects to the proposed assumption and assignment on multiple grounds.

   a) First, Oracle's agreements with Debtors are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

   b) Second, the Assumption Notice does not provide a complete description of the Oracle agreements the Debtors seek to assume and assign and certain active agreements do not appear to be identified. As a result, Oracle is unable to either confirm the identity of the contracts targeted for assumption and assignment or to ascertain the correct cure amount.

   c) Third, at present, there is no stalking horse bidder and the Sale Motion does not provide Oracle with sufficient information to determine whether the ultimate purchaser/assignee is capable of performing under the terms of the contracts which the Debtors seek to assume and assign.

   d) Finally, to the extent any final asset purchase agreement indicates that both the Debtors and the eventual purchaser(s) may enter into a transition services agreement in connection with the proposed sale or any other agreement which may allow any unauthorized, shared use of Oracle's licenses, Oracle objects to such use.

3. Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of any Oracle Agreements without Oracle's consent.

**II.    FACTUAL BACKGROUND**

4. The Debtors filed the above-captioned case on November 11, 2022, and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

5.       On December 15, 2022, the Debtors filed their Sale Motion. Pursuant to the Sale Motion, the Debtors are proposing to sell certain assets, which include their Embed Business[1], LedgerX Business, FTX Japan Business and FTX Europe Business[2]. No stalking horse bidder has been identified.

6.       On January 13, 2023, the Debtors filed the *Notice of (I) Solicitation of Initial Bids, (II) Proposed Sale of Certain Businesses Free and Clear of Any Liens, Claims, Interests, and Encumbrances, (III) Auction(s) and Sale Hearing(s) and (IV) Related Dates* [Dkt. No. 492] ("Notice").

7.       The Notice sets forth different sale timelines depending on the line of business. Below is the timeline for the Embed and LedgerX Businesses:

| Business | Deadlines |
| --- | --- |
| Embed Business | Auction - February 21, 2023; Sale Objection – February 20, 2023; Sale Hearing - February 27, 2023 |
| LedgerX Business | Auction - March 7, 2023; Sale Objection – March 6, 2023; Sale Hearing - March 13, 2023 |

8.       On February 6, 2023, the Debtors served the Assumption Notice on contract counterparties with contracts that may be assumed and assigned.

9.       The Assumption Notice Oracle received identified three Oracle agreements ("Oracle Agreements"), as follows:

| Counterparty | Contract Description | Cure Amount |
| --- | --- | --- |
| Oracle America, Inc. | NetSuite Order Estimate between Ledger Holdings Inc. and Oracle America, Inc., dated March 13, 2018 | $0.00 |
| Oracle America, Inc. | Fixed Price Statement of Work between Ledger Holdings Inc. and Oracle America, Inc., dated March 13, 2018 | $0.00 |

---

[1] Capitalized terms used herein shall have the same meaning as those set forth in the Sale Motion.
[2] Pursuant to the *Notice of Bid Deadline Extension and Revised Dates for FTX Japan and FTX Europe Sales* [Dkt. No. 602] the last day to object to the sale of the FTX Japan Business and the FTX Europe Business Sale is April 24, 2023. Therefore these sales are not addressed in this Rights Reservation.

| Oracle America, Inc. | Subscription Services Agreement between Ledger Holdings Inc. and Oracle America, Inc., dated March 13, 2018 | $0.00 |
|---|---|---|

10.     On February 6, 2023, the Debtors filed the *Notice of Filing of (I) Proposed Embed Business Sale Order and (II) Form of Embed Business Purchase Agreement* [Dkt. No. 625] ("Embed Notice").

11.     Attached as Exhibit 2 to the Embed Notice is a form of Asset Purchase Agreement.

12.     On February 8, 2023 the Debtors filed the *Notice of Bid Deadline Extension and Revised Dates for Sale of Embed Business* [Dkt. No 662] ("Extension Notice").

13.     The Extension Notice sets forth the following deadlines regarding the Embed Business Sale: (a) March 13, 2023, is the deadline to object to the Sale Motion and Assignment Notice (i.e., the later of 14 days following service of Assignment Notice (February 20, 2023) or the sale objection deadline); (b) March 15, 2023 is the Auction; and (c) March 20, 2023 (time is TBD) for the sale hearing.

14.     On February 21, 2023, the Debtors filed the *Notice of Filing of (I) Proposed LedgerX Business Sale Order and (II) Form of LedgerX Business Purchase Agreement* [Dkt. No. 751] ("Ledger Notice").

15.     Attached as Exhibit 2 to the Ledger Notice is a form asset purchase agreement ("Form LedgerX APA").

16.     Both Schedule 1.5 (d), entitled "Potential Assumed Contracts," and Schedule 2.10 (a)(vi), entitled "Material Contracts," attached to the Form LedgerX APA, identify the Oracle Agreements.

17.     The Assumption Notice does not indicate whether the Oracle Agreements are being assumed and assigned in connection with the Embed Business Sale or the LedgerX Business Sale.

18. Since Oracle's contracts appear to be with Ledger Holdings, Inc., and are identified in the disclosure schedules attached to the Form LedgerX APA, Oracle presumes they relate to the LedgerX Business Sale.

19. Given the timelines set forth in the Notice and Extension Notice, Oracle will not know who the purchaser(s) will be until after objections to the Sale Motion and Assignment Notice are due.

20. Therefore, Oracle is unable either to assess the acceptability of the ultimate purchaser(s) and/or to review any final sale-related documents, including the final asset purchase agreement(s) ("APA") and any ultimate transitional services agreement ("TSA") which may be contemplated.

21. Therefore, Oracle reserves all rights to object to the final asset purchase agreement(s), including a TSA or any proposed transitional or shared use of Oracle's Agreements by the Debtors and the ultimate purchaser(s).

## III. ARGUMENT

### A. The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

22. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

23. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004)

(holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

24. The Oracle Agreements are, or pertain to, a non-exclusive license of copyrighted software.

25. Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign the Oracle Agreements without Oracle's consent.

26. For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment at this time.

      **B.**    **The Debtors Have Not Identified Adequately The Oracle Agreements To Be Assumed and Assigned.**

27. The Debtors' Assumption Notice generally describes the Oracle Agreements the Debtors seek to assume and assign.

28. The description provided in the Assumption Notice does not contain sufficient information for Oracle to determine which contract could potentially be assumed and assigned.

29. The Assignment Notice only identifies one Estimate dated March 13, 2018. However, according to Oracle's records, there are three Estimates between the Debtors and Oracle which do not correspond to the date provided. Thus, uncertainty as to the targeted contract or contracts persists.

30. It is impermissible for the Debtors to segregate the underlying Oracle license agreement from the corresponding support agreement and master agreement for purposes of assumption and assignment, if that is the Debtors' intention. *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008). An executory contract must be assumed in its entirety and, "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract." *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Techs.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)).

31. Under California law,[3] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

32. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned.

33. In order to determine which contracts the Debtors wish to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (a) name and date; (b) identification number; (c) any associated support or support renewals; and (d) the governing license agreement, if not already provided.

34. This information will enable Oracle to evaluate whether the Oracle Agreements are supported, expired, or in default, and, if in payment default, the appropriate cure amount.

35. Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

---

[3] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.").

36. Oracle reserves its right to be heard on this issue until after the Debtors identify, with specificity, the Oracle Agreements they seek to assume and assign.

### C. The Debtors May Not Have Provided The Correct Cure Amount.

37. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

38. The Debtors have identified a $0.00 cure amount for the Oracle Agreements. Without a complete description of the Oracle Agreements, Oracle is unable to ascertain whether the Debtors' cure amount is accurate.

39. Therefore, Oracle reserves its right to be heard further regarding the cure amount, until after the contract or contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount.

### D. The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

40. Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

41. There is currently no stalking horse bidder(s) and the auction(s) will be held after the deadline for Oracle to object to the Sale Motion and Assumption Notice.

42. To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the purchaser(s) to which they propose to assume and assign the Oracle Agreements: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the purchaser(s) will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle Agreements to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

43. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

44. Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

### E. Oracle's Agreements Do Not Authorize Simultaneous Use By the Debtors and the Purchaser.

45. Oracle reserves all rights to object to the final APA between the Debtors and the ultimate purchaser(s), including to the extent the APA or any accompanying TSA includes any broad provisions regarding transitional use or shared use of any Oracle agreement or Oracle-licensed software.

46. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreements, and would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the purchaser(s).

47. Oracle objects to the extent that any transitional use or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

48. Oracle reserves all rights regarding any transitional use, including under any TSA, until after Oracle's review of the final TSA proposed, and following an opportunity to assess how that TSA may impact Oracle, including whether the use contemplated thereunder constitutes non-compliance under the terms of the Oracle Agreements.

## IV. <u>CONCLUSION</u>

49. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for approval of the Sale Motion and Assumption Notice, solely to the extent the

Debtors seek to assume and assign, transfer or share use of any Oracle agreement. Oracle reserves its right to be heard on all issues set forth herein.

Dated: March 6, 2023
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:  /s/ James E. Huggett
James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Alice Miller, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200

**Attorneys for Oracle America, Inc.**