**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  March 29, 2023 at 10:00 a.m. ET**<br>**Obj. Deadline:  March 22, 2023 at 4:00 p.m. ET** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND
APPROVING THE DEBTORS' KEY EMPLOYEE RETENTION PLAN**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order,

substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a),

363(b) and 503(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing and approving the Debtors' key employee retention plan (the

"KERP").  In support of this Motion, the Debtors rely upon the *Declaration of Edgar W. Mosley*

*II in Support of Motion of Debtors for Entry of an Order Authorizing and Approving the*

*Debtors' Key Employee Retention Plan* (the "Mosley Declaration"), attached hereto as Exhibit B,

and the *Declaration of Brian Cumberland in Support of Motion of Debtors for Entry of an Order*

*Authorizing and Approving the Debtors' Key Employee Retention Plan* (the "Cumberland

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list
of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

Declaration"), attached hereto as <u>Exhibit C</u>, and respectfully state as follows:

**Preliminary Statement**

1.      Following Mr. Samuel Bankman-Fried's resignation, Mr. John J. Ray III was appointed as the Debtors' Chief Executive Officer prior to the commencement of these Chapter 11 Cases.  Since then, Mr. Ray has replaced prior executives and appointed new executives in key roles.  In addition, since the Petition Date, the Debtors have conducted extensive diligence to understand the roles and duties of the members of their workforce and to rationalize the Debtors' businesses.  In connection with these diligence efforts and in consideration of the administration of these Chapter 11 Cases, the Debtors have already taken the extraordinarily difficult step of terminating the services of certain members of the Debtors' workforce.

2.      To achieve the Debtors' core objectives and maintain and administer the Debtors' estates during these Chapter 11 Cases, Mr. Ray and the newly appointed executives require the knowledge and intensive support and efforts from the Debtors' ongoing workforce. These remaining employees and contractors have institutional knowledge and, in some cases, unique and specialized skillsets that would be difficult to replace and that are critical to the Debtors' objectives in these cases.

3.      Following the turmoil that the Debtors faced beginning in November 2022, the Debtors have experienced significant attrition in roles that are critical to these Chapter 11 Cases.  Although the Debtors have worked to quickly stabilize their businesses, the Debtors' workforce continues to face uncertainty as the Debtors progress these Chapter 11 Cases, while taking on the responsibilities of departed colleagues and the added workload arising from these cases.  The Debtors do not currently have authority to pay any incentive or severance compensation, and the Debtors' cryptocurrency and equity-based compensation programs have

little or no value and have ceased since the Petition Date. In addition, the Debtors have not yet determined the ultimate reorganization path for the Debtors and the remaining workforce would be critical to any efforts to reorganize and potentially restart the exchanges. For these reasons, the Debtors believe that a retention program is critical and in the best interests of the Debtors and their estates to further stabilize the Debtors' businesses and retain the resources necessary to the success of these Chapter 11 Cases.

4. Accordingly, the Debtors request Court authorization to award retention opportunities with an aggregate value of up to $4,027,204 on the terms described below. Of the aggregate retention pool, $1,417,833 has been allocated to 10 identified employees (the "Allocated Pool"), and $2,109,371 has been tentatively allocated to roles that are expected to be required to serve critical administrative, settlement, business development, compliance, support, core product and data functions (the "Role-Based Pool"). The remaining $500,000 has not been allocated at this time (the "Unallocated Pool"), and is intended to enable the Debtors to efficiently and effectively address emerging retention needs as these Chapter 11 Cases progress. *See* Cumberland Decl. ¶ 10. The identification of recipients of awards from the Role-Based Pool and Unallocated Pool will be determined by Mr. Ray, and awards will be subject to certain consultation and consent rights of the Official Committee of Unsecured Creditors (the "Committee"). All retention awards will be subject to forfeiture and recoupment if there is a subsequent final determination that the recipient of the award engaged in wrongdoing.

5. **No** amounts will be paid under the proposed KERP to any "insider" of the Debtors (as such term is defined in the Bankruptcy Code) or to any of Samuel Bankman-Fried, Gary Wang, Nishad Singh or Caroline Ellison, or any person known by the Debtors to have a familial relationship with any such individual. Additionally, the Debtors will **_not_** pay any

amounts under the proposed KERP to any employees who the Debtors, in their business judgment, have reason to believe engaged in wrongdoing.

## Background

6.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[2] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (these "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

7.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

### I.    KERP Participants

8.      The identified recipients of retention awards (together with any future award recipients, the "KERP Participants"), who were identified based on discussions with the Debtors' tenured employees and service providers and consultation with the Debtors' advisors,

---

[2]    The Petition Date for all Debtors is November 11, 2022 other than for Debtor West Realm Shires Inc., which is November 14, 2022.

consist of a critical subset of the Debtors' employees.  Each of the identified KERP Participants

in the Allocated Pool, and individuals who will be included in the Role-Based Pool, perform

essential administration, security, compliance, settlement, business development, core product,

data engineering, exchange and crypto operations, accounting and back-office functions or other

functions for the Debtors.  *See* Mosley Decl. ¶ 6.  These KERP Participants have institutional

knowledge from their tenure working for the Debtors both pre- and postpetition, and it would be

difficult, costly and disruptive for the Debtors to have to replace the identified KERP

Participants with newly hired professionals.  *See id.* at ¶ 7.

9.      The KERP Participants in both the Allocated Pool and Role-Based Pool

include employees with broad institutional knowledge of the Debtors, including with respect to

marketing cryptocurrency exchanges, accounting and administrative functions, and who perform

key roles, including managing backend engineering on onboarding/KYC, accounts, balances,

wallets, infrastructure and bank and financial service relationships and overseeing IT matters.

*See id.* at ¶ 8.  For example, the KERP Participants in the Allocated Pool include:  one of the few

remaining employees familiar with the Debtors' accounting and finance processes in the United

States; the employee responsible for all of the administrative duties for Blockfolio, Inc.; one of

the remaining developers employed by the Debtors who is familiar with the front-end user

interface and user experience development and design; and one of the only remaining developers

whose knowledge and services are essential to the Debtors in understanding the Debtors'

codebase.  *See id.* at ¶ 7.  Similarly, roles identified for the Role-Based Pool require experience

in the complex programming languages required to write and understand code critical to the

Debtors' businesses, including, but not limited to, Python, Rust, Flutter and NodeJS.  *See id.* at

¶ 8.  Due to the rapid growth of the cryptocurrency industry, the labor market for employees who

possess these specific crypto qualifications and skills, including properly locating and securing cryptocurrency, is limited, and the institutional knowledge of some of the KERP Participants cannot be replicated.

10. In addition to filling their critical roles for the Debtors, many KERP Participants have also taken on duties that were previously performed by former employees or contractors of the Debtors as a result of the significant attrition that the Debtors have experienced. Specifically, approximately 130 of the approximately 470 employees and contractors of the Debtors as of the Petition Date have resigned as of the end of January 2023. *See* Mosley Decl. ¶ 5. During the Debtors' process of developing the KERP, three individuals who were originally identified for the Allocated Pool tendered their resignations, underscoring the attrition issues and retention concerns that the Debtors face. *See id.* at ¶ 5. The remaining KERP Participants' increased responsibilities are on top of the additional tasks, and added pressures, relating to these Chapter 11 Cases.

11. Notwithstanding their increased responsibilities, the identified KERP Participants generally have experienced a significant drop in total compensation opportunity following the commencement of these Chapter 11 Cases. Prior to the Petition Date, the Debtors' compensation structure for employees included bonus opportunities and compensation tied to the Debtors' proprietary cryptocurrency token and/or equity grants. In connection with these Chapter 11 Cases, the Debtors have ceased these incentive opportunities and have suspended the practice of compensating employees in proprietary cryptocurrency tokens and/or equity. As a result, many of the Debtors' employees are receiving less compensation than they historically received. *See* Cumberland Decl. ¶ 7.

12. Although certain identified KERP Participants may have titles

incorporating the word "vice president," "officer," "head," "lead," "controller" or "chief," no KERP Participant is, or may be, an "insider" of the Debtors.  Specifically, no identified KERP Participant is an employee who: (a) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (b) directs the Debtors' overall corporate policy or governance.  *See* Mosley Decl. ¶ 11.

13.    In addition to the identified KERP Participants, Mr. Ray and the Debtors' management identified roles that they currently expect will be key to the success of these Chapter 11 Cases.  The Debtors intend to continue to assess the tentative allocation of awards under the Role-Based Pool as these cases progress and may shift the retention awards available in the Role-Based Pool.  Before granting an award out of the Role-Based Pool, the Debtors will provide the Committee with seven days' prior notice of the amount and recipient of the proposed award.  If the Committee does not object to the proposed award within seven days, the Debtors may grant the proposed KERP award.  If the Committee objects to the proposed KERP award, no award may be granted to the proposed KERP Participant out of the Role-Based Pool absent a resolution reached by the Committee and the Debtors or a further order of the Court authorizing the proposed KERP award.

14.    Mr. Ray will have the authority to evaluate the retention needs of additional non-insider employees and, where Mr. Ray determines that an employee presents a critical retention need due to the employee's skills and/or knowledge and retention risk, may grant the employee an award from the unallocated portion of the retention pool.  The Debtors currently do not expect that any Debtor employees who are employed by any entity that is the subject of any ongoing sales processes will be included as KERP Participants in order to manage the cost of the KERP and due to the limited period of time that the retention of such individuals

may be required.  The Debtors reserve the right, however, to designate any such employees as

KERP Participants, in the Debtors' discretion and sound business judgment.  Prior to granting

any award from the Unallocated Pool that has an aggregate value greater than $100,000, the

Debtors will consult with the Committee.  Promptly following any award from the Unallocated

Pool, the Debtors will disclose to the Committee the amount and recipient of the award granted

out of the Unallocated Pool.

    15.  Given the critical role that the KERP Participants play in these Chapter 11

Cases and the current retention risks, the increased demand on the KERP Participants and

reduced compensation opportunities, the Debtors believe that it is important to motivate these

individuals to remain committed.  *See* Mosley Decl. ¶ 10.  The KERP will provide the Debtors

with the means to retain the KERP Participants, thereby preserving value for the Debtors, their

estates, their creditors and other parties-in-interest.

## II.  Overview of the KERP Awards

    16.  The Debtors worked with their advisors, including Alvarez & Marsal

North America, LLC ("A&M"), to evaluate potential key employee non-insider retention

programs.  As part of this process, the Debtors and their advisors reviewed retention programs

implemented by companies of a similar size as measured by total assets.  *See* Cumberland Decl.

¶ 11.  The KERP is the result of these efforts.

    17.  Under the proposed program, the KERP Participants will have the

opportunity to earn three cash payments, with (i) one-fourth paid upon the earlier of September

30, 2023 and the Debtors' emergence from these Chapter 11 Cases ("Emergence"), (ii) one-

fourth paid upon the earlier of March 31, 2024 and Emergence and (iii) one-half paid upon

Emergence, in each case subject to the KERP Participants remaining employed by, and in good

standing with, the Debtors.  *See* Cumberland Decl. ¶ 8.  The Debtors believe that providing a

portion of the award opportunity on dates that are certain is critical to the retentive value of the program given the current uncertainty of when the Debtors may emerge from these Chapter 11 Cases.

18.     The aggregate KERP payment amounts payable to each identified KERP Participant will range from 17% to 94% of the KERP Participant's salary on an annualized basis, with an average KERP payment of 38% of annualized salary, assuming an 18-month retention period. *See* Cumberland Decl. ¶ 8.

19.     If the employment of a KERP Participant is terminated without cause or due to the KERP Participant's death or disability, the KERP Participant will receive a *pro rata* payment of the unpaid portion of the KERP Participant's award. *See* Cumberland Decl. ¶ 9.  If the qualifying termination of employment occurs between the second and third KERP award payment dates, then the terminated KERP Participant's *pro rata* payment will be calculated based on the amount of time worked between the second payment date and September 30, 2024 (which is six months after the second payment date). *See id.*  If a KERP Participant is terminated for cause or voluntarily terminates employment, then that employee will not be entitled to any unpaid KERP payment. *See id.*  The Debtors will retain the authority to cancel or withhold any unpaid KERP award, and recoup any KERP payments paid, to any KERP Participant with respect to whom there is a subsequent final determination that the individual engaged in wrongdoing. *See id.*  Amounts granted to KERP Participants that are forfeited or withheld for any reason will revert to the pool from which the KERP award was originally granted for reallocation by the Debtors, which may be to a newly identified KERP Participant who replaces the terminated employee as a KERP Participant. *See id.*

## III.    Reasonableness of the KERP

20.     The Debtors, in consultation with their advisors, evaluated whether the

KERP's design, structure and cost are reasonable and consistent with similarly situated programs. *See* Cumberland Decl. ¶ 11. With the assistance of their advisors, the Debtors designed the KERP to retain the key employees to ensure operations are conducted in an effective and stable manner through the administration of these Chapter 11 Cases. In particular, the Debtors and their advisors analyzed 14 comparable proposed non-insider retention plans approved in chapter 11 cases in 2018 or thereafter (the "KERP Peer Group Plans"). *See id.* at ¶ 11. The debtors comprised in the KERP Peer Group Plans had assets between approximately one-third and three times the Debtors' assets, as determined based on currently available books and records, and the KERP Peer Group Plans all had 100 or fewer participants. *See id.* at ¶ 11. The Debtors determined that the KERP is reasonable compared to retention plans implemented by similarly situated debtors because the aggregate payments to be paid under the KERP are between the 25% and 50% percentiles of the KERP Peer Group Plans. *See id.* at ¶ 12. Based on the Debtors' review of comparable non-insider retention plans, the Debtors believe that the total cost of the KERP is reasonable relative to similarly situated programs and justified under the circumstances of these Chapter 11 Cases.

21. The Debtors believe that that implementation of the KERP is reasonable, necessary and consistent with peer programs. Importantly, the Debtors believe that the KERP will motivate the KERP Participants to remain and work diligently for the Debtors through the administration of these Chapter 11 Cases.

## Jurisdiction

22. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 363(b) and

503(c) of the Bankruptcy Code and rule 6004 of the Bankruptcy Rules.  Pursuant to rule 9013-

1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final

order or judgment by the Court in connection with this Motion to the extent it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent

with Article III of the United States Constitution.

## Relief Requested

23.    By this Motion, the Debtors request entry of the Order, substantially in the

form attached hereto as Exhibit A, authorizing and approving the KERP and granting related

relief.

## Basis for Relief

24.    The Debtors respectfully request that the Court authorize and approve the

KERP for two primary reasons.  First, the KERP constitutes a sound exercise of the Debtors'

business judgment, satisfies each of the *Dana Corp.* factors that courts in this District look to in

evaluating such proposals and is in the best interests of the Debtors' estates.  *See, e.g.*, *In re

Dana Corp.*, 358 B.R. 567, 581 (Bankr. S.D.N.Y. 2006).  Second, the KERP complies with the

requirements of section 503(c) of the Bankruptcy Code.  For these reasons, payments under the

KERP are fully justified by the facts and circumstances of these Chapter 11 Cases and should be

approved.

**I.    Implementing the KERP Constitutes a Proper Exercise of the Debtors' Sound
Business Judgment Under Section 363(b) of the Bankruptcy Code**

25.    Section 363(b) of the Bankruptcy Code empowers the Court to allow a

debtor, in the exercise of its business judgment and after notice and a hearing, to "use, sell, or

lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C.

§ 363(b)(1); *see also Myers* v. *Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("[U]nder

normal circumstances the [bankruptcy] court would defer to the trustee's judgment so long as

there is a legitimate business justification."); *In re Montgomery Ward Holding Corp.*, 242 B.R.

147, 153-55 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention

program; stating that "[i]n determining whether to authorize the use, sale, or lease of property of

the estate under [section 363(b)], courts require the debtors to show that a sound business

purpose justifies such actions"); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991)

(explaining that the Third Circuit has adopted the "sound business purpose" test to evaluate

motions brought pursuant to section 363(b)).  Moreover, "[w]here the debtor articulates a

reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re

Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

26.    Where a debtor shows a valid business purpose, the court applies the

"business judgment rule," a presumption "that in making a business decision, the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interest of the company."  *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del.

1985) (internal citations omitted).  The business judgment rule applies in chapter 11 cases and

shields a debtor's management from judicial second-guessing.  *Official Comm. of Subordinated

Bondholders* v. *Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y.

1992).  In that regard, courts have found that a debtor's use of reasonable performance bonuses

and other incentives for employees is a valid exercise of a debtor's business judgment.  *See, e.g.*,

*In re Glob. Home Prods., LLC*, 369 B.R. 778, 787 (Bankr. D. Del. 2007) (approving incentive

plan as proper exercise of the debtors' business judgment); *In re Nobex*, No. 05-20050 (MFW), 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (stating that section 503(c)(3) is essentially a reiteration of standard under section 363); *In re Nellson Nutraceutical, Inc.*, 379 B.R. 778, 787 (Bankr. D. Del. 2007).

27.     The Debtors' implementation of the KERP constitutes a sound exercise of the Debtors' business judgement.

28.     As set forth above, the Debtors have valid and supportable business reasons for implementing the KERP.  The Debtors determined, in their business judgment, that implementation of the KERP is necessary to retain the Debtors' remaining workforce and to facilitate the efficient administration of these Chapter 11 Cases.  The assistance of the Debtors' key employees is essential to continued stability of these Chapter 11 Cases and to maximize value of the Debtors' assets.  The KERP Participants are the Debtors' employees who, due to their particular crypto-related knowledge and skill in conducting the Debtors' business, are critical to retain throughout the administration of these Chapter 11 Cases.

29.     The implementation of the KERP is a proper exercise of the Debtors' business judgment and is in the best interests of their estates, their creditors and other parties-in-interest.  The Debtors cannot easily replace the KERP Participants without incurring substantial cost, adversely affecting the Debtors' operating efficiency and distracting the Debtors' management from their business and reorganization efforts.  Accordingly, the Debtors' decision to implement the KERP is a valid exercise of business judgment and should be approved.

## II.     The KERP is Justified by the Facts and Circumstances of These Chapter 11 Cases

30.     Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case."  11 U.S.C. § 503(c)(3).  Courts have found that the requirement

that a transfer or obligation be "justified by the facts and circumstances of the case" is a

"reiteration" of the business judgment rule (or sound business judgment test) incorporated into

section 363(b).  Jan. 12, 2006 Hr'g Tr. at 86:23-86:24, *In re Nobex Corp.*, No. 05-20050 (MFW)

(Bankr. D. Del.), [D.I. 194] ("I find [503(c)(3)] quite frankly nothing more than a reiteration of

the standard under 363 . . . ."); *cf. Dana Corp.*, 358 B.R. at 576–77 (describing six factors that

courts may consider when determining whether the structure of a compensation proposal meets

the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy

Code).

31.    In the context of approving compensation programs and assessing whether

a compensation program satisfies Bankruptcy Code section 503(c)(3) and is based on a sound

exercise of the debtor's business judgment, courts consider the following factors:

i.    Is there a reasonable relationship between the plan proposed and the results to be obtained?  In other words, will the key employee stay for as long as it takes for the debtor to reorganize or market its assets?

ii.   Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

iii.  Is the scope of the plan fair and reasonable, does it apply to all employees or does it discriminate unfairly?

iv.   Is the plan or proposal consistent with industry standards?

v.    What were the due diligence efforts of the debtor in investigating the need for a plan, analyzing which key employees need to be incentivized, what is available and what is generally applicable in a particular industry?

vi.   Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. 567, 574 (Bankr. S.D.N.Y. 2006); *see also In re Global Home*

*Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007) (applying the *Dana Corp.* factors).

32. No single factor is dispositive, and a court has discretion to weigh each factor based on the specific facts and circumstances. *See, e.g.*, *In re FirstEnergy Sols. Corp.*, 591 B.R. 688, 697 (Bankr. N.D. Ohio 2018) (stating the *Dana Corp.* factors are "neither exhaustive nor of inherently equal weight"). Even the total absence of a factor may be permissible, so long as the Debtors' interests are sufficiently protected. *See In re Borders Grp., Inc.*, 453 B.R. 459, 477 (Bankr. S.D.N.Y. 2011) (finding the lack of independent counsel was "not fatal" where the presence of other factors ensured "that the [d]ebtors' interests were sufficiently protected[]"); *In re Glob. Aviation Holdings Inc.*, 478 B.R. 142, 154 (Bankr. E.D.N.Y. 2012) (noting "the relatively modest size of the proposed bonus payouts made the retention of independent legal counsel economically inefficient").

33. The Debtors respectfully submit that the KERP satisfies the *Dana Corp.* factors:

    i. **The KERP is Calculated to Achieve the Desired Performance**. The KERP was carefully designed by Mr. Ray, his leadership team and their advisors to ensure that key non-insider employees are fairly compensated and incentivized to remain with the Debtors. By providing for three payments, the KERP will encourage and incentivize the KERP Participants to remain with the Debtors through the coming months and to Emergence. Accordingly, the KERP and the desired retention outcome are strongly correlated.

    ii. **The Cost of the KERP is Reasonable**. The KERP's total cost will not exceed $4,027,204. Payments to presently identified KERP Participants who will receive awards out of the Allocated Pool will range from $45,885 to $341,666 per KERP Participant and will not exceed, in the aggregate, $1,417,833. Payments to the estimated 44 KERP Participants who are expected to receive awards out of the Role-Based Pool would range from $17,500 to $96,497 per KERP Participant and will not exceed, in the aggregate, $2,109,371. Both the Allocated Pool and the Role-Based Pool are conservative compared to the KERP Peer Group Plans. *See* Cumberland Decl. ¶ 12. Additionally, any awards to subsequently identified existing and/or new KERP Participants who receive awards out of the Unallocated Pool may not exceed $500,000 in the aggregate. Any awards granted from the Role-Based Pool and Unallocated Pool will be subject to the Committee's consultation and consent rights as described

above to provide independent oversight of the reasonableness of each award.

iii. **The Scope of the Plan is Fair and Reasonable**.  Although the KERP does not apply to all employees, it does not discriminate unfairly.  The KERP Participants were selected, and any future participants are intended to be selected, out of the Debtors' workforce because the Debtors believe that the individuals are mission-critical to the Debtors' objectives during these Chapter 11 Cases.  The KERP Participants include employees with highly specialized skill sets and knowledge necessary to the Debtors' success during the administration of these Chapter 11 Cases.  *See* Mosley Decl. ¶ 9.

iv. **The KERP is Consistent with Industry Standards**.  The Debtors and their advisors undertook a benchmarking analysis by examining the KERP Peer Group Plans.  *See* Cumberland Decl. ¶ 11.  The comparison of the KERP's structure and terms with those of these plans confirmed that the KERP is consistent with the KERP Peer Group Plans.  *See id.* at ¶ 13.  The Debtors' management team, CEO and other advisors carefully reviewed multiple iterations of the KERP, participated in several meetings regarding the parameters of the KERP and asked questions of the Debtors' advisors in determining whether to seek approval of the program.  The Debtors' independent Board of Directors (the "Board") also reviewed and approved the KERP.

v. **The Debtors Performed Due Diligence in Developing the KERP**.  Mr. Ray and his leadership team actively sought the advice of A&M and their other advisors in designing an appropriate retention plan for their non-insider employees.  Throughout these Chapter 11 Cases, the Debtors have conducted diligence on the remaining workforce, which diligence allowed the Debtors to identify which employees were most critical to retain and most at risk absent an incentive plan.  The Debtors then compared their proposed retention awards for Participants against the KERP Peer Group Plans.  *See id.* at ¶ 11.

34.    Implementing the KERP will confer a tangible benefit on the Debtors' estates, because it will motivate the KERP Participants to remain employed by the Debtors through Emergence and will incentivize the KERP Participants to work towards Emergence. The KERP is justified by the facts and circumstances of these Chapter 11 Cases and satisfies section 503(c)(3) of the Bankruptcy Code.

### III.    The KERP Does Not Provide for Any Payments Prohibited by Section 503(c)(1) or Section 503(c)(2) of the Bankruptcy Code

35.    The KERP does not implicate the restrictions set forth in section 503(c)(1) or section 503(c)(2) of the Bankruptcy Code because the KERP only provides retention payments to non-insider employees.  Section 503(c)(1) limits payments to "insiders" to the extent such payments are made "for the purpose of inducing such person to remain with the debtor's business."  11 U.S.C. § 503(c).  Section 503(c)(2) of the Bankruptcy Code also restricts "severance payments" to "insiders."  *Id.*  Neither section 503(c)(1) nor 503(c)(2) is applicable because the proposed KERP does not include payments to the Debtors' insiders.

36.    Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor . . . or (vi) relative of a . . . director, officer or person in control of the debtor."  11 U.S.C. § 101(31)(B).  An employee may be an "insider" if such employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets."  *In re Velo Holdings Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (citations omitted).  An employee's job title, alone, does not make that employee an "insider."  *See Borders Grp.*, 453 B.R. at 469 (noting "[c]ompanies often give employees the title 'director' or 'director-level,' but do not give them decision-making authority akin to an executive []" and concluding certain "director-level" employees in that case were not insiders).

37.    Here, none of the KERP Participants are, or, for future KERP Participants, may be, "insiders" under section 101(31) of the Bankruptcy Code.  Specifically, the KERP Participants do not include any employee who (a) reports directly to the Debtors' Board; (b) regularly attends Board meetings; (c) exercises managerial control over or has responsibility for

the Debtors' operations as a whole or (d) dictates the Debtors' overall corporate policy,
governance, or disposition of corporate assets.  The KERP Participants' duties are limited to their
specific respective roles.  Courts have declined to find insider status where the scope of authority
is limited.  *See Borders Grp.*, 453 B.R. at 468–69 (stating that "[a]n individual's title, by itself, is
insufficient to establish that an individual is a director or officer" and holding employees in a
KERP plan were not insiders because none of them had authority to implement company policy,
did not report to the board of directors and were subordinate to actual officers).  Although certain
KERP Participants have titles that include "vice president," "officer," "head," "lead,"
"controller" or "chief," none is an "insider" of the Debtors, which renders section 503(c)(1)
inapplicable to the KERP.  The KERP Participants with such titles are not officers or "person[s]
in control of the debtor"; rather, they are afforded the title as to their respective role in a
particular division or department.  None of the KERP Participants take part in the overall
management of the Debtors, and none of them direct or implement company policy.  *See* Mosley
Decl. ¶ 11.  The KERP Participants are essential employees who have the knowledge and
experience to carry out Mr. Ray and his appointed leadership team's decisions in an efficient and
effective manner, but the KERP Participants do not manage or control the Debtors' businesses.
Therefore, they are not "insiders" and, accordingly, the prohibitions and restrictions in sections
503(c)(1) and (2) do not apply.  Accordingly, the Debtors submit that the KERP should be
approved.

### **Waiver of Rule 6004(h) of the Bankruptcy Rules**

38.     Given the nature of the relief requested herein, the Debtors respectfully
request a waiver of the 14-day stay under rule 6004(h) of the Bankruptcy Rules.  Pursuant to rule
6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or lease of property other

than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize.

## Notice

39.    Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated:  March 8, 2023
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*