# EXHIBIT B

**Mosley Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF EDGAR W. MOSLEY II IN SUPPORT OF
MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
AND APPROVING THE DEBTORS' KEY EMPLOYEE RETENTION PLAN**

I, Edgar W. Mosley II, hereby declare under penalty of perjury:

1. I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring.

2. I have more than 20 years of restructuring and distressed investment experience across various industries, including oil & gas, manufacturing, transportation, automotive, retail, industrial construction, telecommunications, healthcare and consumer products. I have a Bachelor's Degree from Harvard University, and have been recognized as a Certified Insolvency and Restructuring Advisor by the Association of Insolvency and Restructuring Advisors, where I served on the board from 2019 until 2020.

3. Since joining A&M, I have been involved in numerous Chapter 11 restructurings including Seadrill Limited (2020 and 2017), Valaris plc, Diamond Offshore

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Drilling, Inc., Imerys Talc America, White Star Petroleum, Southcross Energy, Magnum Hunter Resources, Exide Technologies (where I served as the Chief Restructuring Officer) and Visteon Corporation.

4. I submit this declaration (the "Declaration") in support of the *Motion of Debtors for Entry of an Order Authorizing and Approving the Debtors' Key Employee Retention Plan* (the "Motion").[2] I am not being compensated separately for this testimony other than through payments received by A&M as an advisor retained by FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"). Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by A&M professionals involved in advising the Debtors in these Chapter 11 Cases or information provided to me by the Debtors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

5. After the upheaval that the Debtors faced beginning in November 2022 and the commencement of these Chapter 11 Cases, the Debtors terminated certain employees and service providers. The Debtors have also experienced significant attrition in roles that are critical to preserving and maximizing the value of the Debtors' assets, and ensuring these Chapter 11 Cases are successful. Approximately 130 of the approximately 470 employees and contractors of the Debtors as of the Petition Date have resigned as of the end of January 2023. During the process of researching, considering and designing the KERP, three individuals who were originally identified for the Allocated Pool tendered their resignations to the Debtors, underscoring the attrition issues and retention concerns that the Debtors face. As a result, the

---

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Debtors' remaining employees and service providers have had to assume additional responsibilities and increased workloads.

6. The 10 identified KERP Participants in the Allocated Pool consist of a critical subset of the Debtors' remaining employees. Each of the 10 identified KERP Participants in the Allocated Pool, and the 44 individuals who will be included in the Role-Based Pool, perform essential administration, security, compliance, settlement, business development, core product, data engineering, exchange and crypto operations, accounting and back-office functions or other critical functions for the Debtors. Each of these KERP Participants is essential to the Debtors' businesses and the administration of these Chapter 11 Cases. As set forth in greater detail below, none of the KERP Participants is an "insider" (as that term is defined in the Bankruptcy Code) of the Debtors. Moreover, no KERP Participant has been accused of (much less indicted for) the wrongdoing alleged to have been perpetrated by former senior management of the Debtors. Finally, each has performed critical services to the Debtors and is expected to continue to perform such critical services as the cases progress.

7. These individuals also have institutional knowledge from their tenure working for the Debtors pre- and postpetition, and it would be difficult, costly and disruptive for the Debtors to have to replace the identified KERP Participants with newly hired professionals. The 10 identified KERP Participants include employees with broad institutional knowledge of the organization, including with respect to marketing cryptocurrency exchanges, accounting and administrative functions. For example, one of these 10 identified KERP Participants is one of the only remaining Debtor employees familiar with the Debtors' accounting and finance processes in the U.S., and another performs all of the administrative duties for Blockfolio, Inc. Other KERP Participants in the Allocated Pool include one of the few remaining developers

-3-

employed by the Debtors who is familiar with the front-end user interface and user experience development and design as well as one of the only remaining developers whose knowledge and services are essential to the Debtors in understanding the Debtors' codebase.

8. The KERP Participants in both the Allocated Pool and Role-Based Pool include employees with broad institutional knowledge of the Debtors, including with respect to marketing cryptocurrency exchanges, accounting and administrative functions, and who perform key roles, including managing backend engineering on onboarding/KYC, accounts, balances, wallets, infrastructure and bank and financial service relationships and overseeing IT matters. Furthermore, the 44 roles identified for the Role-Based Pool require experience in the complex programming languages required to write and understand code critical to the Debtors' businesses, including, but not limited to, Python, Rust, Flutter and NodeJS. Due to the rapid growth of the cryptocurrency industry, the labor market for employees who possess these specific crypto qualifications and skills, including, but not limited to, properly locating and securing cryptocurrency, is limited, and the institutional knowledge of some of the KERP Participants cannot be replicated.

9. The KERP Participants were selected, and any future participants are intended to be selected, out of the Debtors' workforce because the Debtors believe that the individuals are mission-critical to the Debtors' objectives during these Chapter 11 Cases. The KERP Participants include employees with highly specialized skill sets and knowledge necessary to the Debtors' success during the administration of these Chapter 11 Cases.

10. The Debtors believe that it is important to retain and to motivate these individuals to remain committed. The KERP was carefully designed by Mr. Ray, his leadership team, and their advisors, including me and my team at A&M, to fairly achieve this objective at a

reasonable cost.  The KERP was considered and approved by the Debtors' Board of Directors.  I believe the KERP meets the Debtors' objectives and its approval is in the best interest of the Debtors' estates, their creditors and all other parties-in-interest.

11.     Although certain identified KERP Participants may have titles incorporating the word "vice president," "officer," "head," "lead," "controller" or "chief," no KERP Participant is, or may be, an "insider" of the Debtors as I understand that term to be used for purposes of considering the KERP.  Specifically, the Debtors have confirmed that no identified KERP Participant is an employee who: (a) exercises managerial control over, or has responsibility for, the Debtors' operations as a whole; or (b) directs the Debtors' overall corporate policy or governance.  I also understand that such individuals are also not "insiders" because they are subordinate to actual officers, do not report directly to the CEO and do not dictate the disposition of the Debtors' assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: March 8, 2023

*/s/ Edgar W. Mosley II*
Edgar W. Mosley II
Alvarez & Marsal North America, LLC
Managing Director