## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 29, 2023 at 10:00 a.m. (ET)** |
| | **Objection Deadline: March 22, 2023 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN SEQUOIA CAPITAL FUND, L.P. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of the limited partnership interests (the "Interests") held by the Debtors in Sequoia

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Capital Fund, L.P. (the "Subject Company") free and clear of all liens, claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement; (b) authorizing and approving the Debtors' entry into, and performance under, the Purchase and Sale Agreement, dated as of March 8, 2023, a copy of which is attached hereto as Exhibit B (the "Agreement"), between Debtor, Clifton Bay Investments LLC (formerly known as Alameda Research Ventures LLC), a Delaware limited liability company ("Seller"), and Al Nawwar Investments RSC Limited, a company with limited liability incorporated under the laws of the Abu Dhabi Global Market ("Purchaser"); (c) authorizing and approving the assumption and assignment of the Amended and Restated Exempted Limited Partnership Agreement of Sequoia Capital Fund, L.P., dated as of February 8, 2022, and any shareholders agreements, management agreements, bylaws, side letters and other documents and agreements governing the rights and obligations of Seller, as an investor in the Subject Company as set forth in the Agreement (collectively, the "Operative Documents"); and (d) granting related relief.  In further support of this Motion, the Debtors submit the concurrently filed declaration of Bruce Mendelsohn attached hereto as Exhibit C (the "Mendelsohn Declaration"), which is incorporated herein by reference, and the Debtors respectfully state as follows:

## Background

1.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.    Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

## Jurisdiction

3.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Facts Specific to Relief Requested

### I.    Debtors' Investment in the Subject Company

4.    Prior to the Petition Date, the Debtors regularly entered into and exited investments across a variety of asset categories, including interests in privately held companies

(including in the form of preferred stock, common stock, warrants and notes), debt and equity securities in publicly traded companies, investments in crypto, venture capital or other investment funds, and investments in coins, tokens and token platforms.  The Debtors also acquired controlling or 100% interests in early-stage private companies.  The Debtors' investments and acquisitions spanned several industries, including, among others, crypto and crypto mining, financial services, fintech, artificial intelligence, gaming, betting and social media.  A number of these assets were held purely for purposes of investment and, as a result, were meant to be monetized over time rather than integrated into the Debtors' core crypto exchange businesses conducted in the Dotcom and WRS Silos as described in the First Day Declarations.  Prior to the Petition Date, (i) the Debtors in the Alameda Silo operated quantitative trading funds specializing in crypto assets, offered over-the-counter trading services and made and managed other debt and equity investments, and (ii) the Debtors in the Ventures Silo made and managed private investments through Debtors Clifton Bay Investments, LLC, Clifton Bay Investments Ltd., FTX Ventures Ltd., Island Bay Ventures Inc. and certain affiliated non-Debtor entities.

5.      Seller, which is a Debtor entity in the Ventures Silo, acquired the Interests in the Subject Company on March 11, 2022, with an aggregate capital commitment of $100,000,000 in U.S. dollars (fiat currency).

6.      The Subject Company is governed by the Operative Documents.  Pursuant to the Operative Documents, each limited partner, including Seller, is required to contribute a certain, pre-determined amount of capital (the "Capital Commitment"), which capital is used by the Subject Company's general partner to invest in portfolio companies.  Generally, when an investment need or opportunity arises, the Subject Company's general partner will request,

pursuant to the terms of the applicable Operative Documents, that the limited partners contribute capital to the partnership in order to finance the investment (a "Capital Call").  When a Capital Call is made, each limited partner is required to remit the requested funds to the general partner of the partnership in an amount not to exceed the applicable Capital Commitment.  Pursuant to the Operative Documents, Seller has a Capital Commitment to the Subject Company of approximately $100,000,000, of which, to date, Seller has contributed approximately $50,000,000.

7.       Pursuant to the Operative Documents, a limited partner's failure to satisfy a Capital Call may impact the value of the limited partner's investment.  Under Operative Documents, this includes, among other things, the imposition of default interest, reduction in profit participation, forfeiture of all capital accounts and required redemption at a significant discount.  In light of the value of the Subject Company and the potential diminution of value that may occur if the Subject Company were to continue to issue Capital Calls, the Debtors determined that it would be in the best interest of the Debtors' estates to sell the Interests to Purchaser at this time.

8.       The Interests are easily separated from the Debtors' core operations, and the sale of the Interests will not affect the Debtors' abilities to operate any of their businesses. Further, since any income that might be generated by the Interests is uncertain and would only be received at the discretion of the Subject Company's general partner, the Interests will not generate significant value to the Debtors' estates in the short term and may not result in any additional value in the long term.  Moreover, as a limited partner of the Subject Company, Seller is obligated to pay certain fees and expenses periodically to the general partner of the Subject Company, which imposes additional burden on the Debtors' estates.  Accordingly, the sale of the

Interests would maximize the value of the Debtors' estates, and it is in the best interest of the Debtors' estates to dispose of the Interests at this time through a private sale transaction.

## II.    Marketing Process

9.    The Debtors, with the assistance of their investment banker, Perella Weinberg Partners ("PWP"), designed a process to market the Interests in an efficient and competitive sales process, taking into account consent rights of the general partner of the Subject Company over potential transferees and the Debtors' business judgment that a consensual sale process would maximize potential value. Such efforts included creating and reaching out to a proprietary list of potential acquirers for the Interests. *See* Mendelsohn Declaration ¶ 11.

10.    As a result of the marketing efforts, the Debtors entered into non-disclosure agreements with eight potential purchasers and provided all such potential purchasers access to information on the Interests. The Debtors ultimately received indications of interest from four parties, including an indication of interest from Purchaser, on February 20, 2023, and engaged in good-faith negotiations with two parties, including Purchaser, regarding the terms of the Agreement. After thoroughly evaluating the bids from all of the parties with the assistance of PWP, the Debtors decided to enter into the Agreement with Purchaser based on its superior offer and ability to execute the Sale Transaction within a short time frame. *See* Mendelsohn Declaration ¶¶ 12-14.

## III.    Sale Transaction

11.    On March 8, 2023, Seller and Purchaser executed the Agreement, which contains the following material terms:[2]

---

[2]    Capitalized terms used in this Section III but not otherwise defined herein are to be given the meanings ascribed to them in the Agreement. To the extent that there are inconsistencies between any summary description of the Agreement contained herein and the terms of the Agreement, the terms of the Agreement shall govern.

| | |
|---|---|
| **Purchase Price** | As set forth in section 1.3 of the Agreement, the aggregate purchase price for the Interests and the interests of Seller in the Operative Documents consists of (i) $45,000,000 in cash, <u>plus</u> (ii) the aggregate amount of any Capital Contributions after the Balance Sheet Date and on or prior to the Closing Date, <u>minus</u> (iii) the aggregate amount of any Distributions received by Seller or Seller's estate after the Balance Sheet Date and on or prior to the Closing Date that are not held for and delivered to Purchaser pursuant to Section 1.4, <u>plus</u> (iv) the Cure Costs, if any, paid by Seller after the date hereof and prior to the Closing Date, and shall be payable without any withholding or deduction. |
| **Closing Date** | The closing of the transactions contemplated by the Agreement (the "<u>Closing</u>") will take place at 6:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on (i) March 31, 2023 if all of the conditions to closing specified in Article 5 are satisfied or waived by such time; and, if not, then on (ii) June 30, 2023, provided that all of the conditions to closing specified in Article 5 are satisfied or waived by such time, or (iii) at such other time as Purchaser and Seller shall agree in writing (the "<u>Closing Date</u>"). |
| **Assignment of Operative Document** | Upon the Closing Date, Seller shall assign all rights and obligations under the Operative Documents to Purchaser. |
| **Cure Costs** | Purchaser shall be responsible for all Cure Costs, if any, in respect of the Operative Documents, which shall not be the obligation, liability or responsibility of Seller. |
| **Conditions to Closing** | There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 5 of the Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing.  Seller has obtained the Subject Company's consent to the Sale Transaction as of the date of the Agreement.  The Agreement requires the entry of a Sale Order authorizing and approving the Sale Transaction prior to Closing. |
| **Transfer Taxes** | To the extent not exempt under section 1146 of the Bankruptcy Code, Purchaser shall pay all transfer taxes. |
| **Private Sale/Ability to Solicit Additional Bids** | The Debtors do not intend to conduct an auction for the sale of the Interests, which have been subject to marketing efforts as described herein.<br><br>However, as set forth in section 4.2 of the Agreement, from and after the date thereof until three days before the Sale Hearing, Seller may solicit bids for the sale of the Interests and respond to inquiries or offers to purchase the Subject Company and/or its assets.  After such period, Seller may not solicit bids for the sale |

|  | of the Interests, but may still respond to bona fide proposals for an Alternative Transaction if Seller determines in good faith, in consultation with the Committee, that such proposal constitutes a higher or otherwise better offer for the interests and Seller gives prompt written notice to Purchaser of Seller's intention to engage in discussions with the third party submitting such proposal. |
|---|---|
| **Fiduciary Out** | The Agreement may be terminated by Seller if Seller or the board of directors of Seller determines that proceeding with the Transactions or failing to terminate the Agreement would be inconsistent with its fiduciary duties. |
| **Sale of Avoidance Actions** | The Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| **Sale of Causes of Actions** | The sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

12.    In addition to the material terms of the Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| **No Sale to an Insider** | Purchaser is not an insider of Seller or any of the other Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code.  *See* Local Rule 6004-1(b)(iv)(A). |
|---|---|
| **Agreements with Management** | Purchaser has not discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment.  *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | None.  *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted, as described above.  *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadline** | As described above.  *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None.  *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchaser** | None.  *See* Local Rule 6004-1(b)(iv)(G). |

| Use of Proceeds | None.  *See* Local Rule 6004-1(b)(iv)(H). |
|---|---|
| Tax Exemption | None.  *See* Local Rule 6004-1(b)(iv)(I). |
| Record Retention | Not applicable.  The Debtors are not selling substantially all of their assets under the Agreement.  *See* Local Rule 6004-1(b)(iv)(J). |
| Sale of Avoidance Actions | None, as described above.  *See* Local Rule 6004-1(b)(iv)(K). |
| Requested Findings as to Successor Liability | A condition to Closing is entry of the Order, which shall provide that Purchaser under no circumstances shall be deemed to be a successor of the Debtors.  *See* Local Rule 6004-1(b)(iv)(L). |
| Sale Free and Clear of Unexpired Leases | Not applicable.  *See* Local Rule 6004-1(b)(iv)(M). |
| Credit Bid | Not applicable.  *See* Local Rule 6004-1(b)(iv)(N). |
| Relief from Bankruptcy Rules 6004(h) and 6006(d) | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).  *See* Local Rule 6004-1(b)(iv)(O). |

13.     The Sale Transaction will also involve the assignment of Seller's rights, titles and interests in the Operative Documents to the Purchaser so that the Purchaser may be admitted as a limited partner in the Subject Company.  The Debtors are not taking a position at this time as to whether the Operative Documents are executory contracts, but are seeking to assume and assign the Operative Documents to the Purchaser under section 365 of the Bankruptcy Code to the extent they are executory contracts and under section 363 as assets of the Debtors to the extent such agreements are non-executory.  The general partner of the Subject Company has consented to such transfer to the Purchaser.

**Relief Requested**

14.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing and approving the Sale Transaction, free and clear of all Liens (other than Permitted Encumbrances); (b) authorizing and approving the

Debtors' entry into, and performance under, the Agreement; (c) authorizing and approving the

assumption and assignment of the Operative Documents; and (d) granting related relief.

<u>**Basis for Relief**</u>

I.   **The Court Should Approve the Sale Under 11 U.S.C. § 363(b).**

15.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that

"[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 does not

provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale

of a debtor's assets, courts in this district have held that such a sale may be authorized under

section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo

Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242

B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983))

(citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal

dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).  In evaluating whether a sale under section 363 is

justified by a sound business purpose, courts consider a variety of factors which essentially

amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery

Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a

"presumption that directors act in good faith, on an informed basis, honestly believing that their

action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416

F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also

In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business

judgment rule principles have "vitality by analogy" in chapter 11).

16.     Courts have considered the following factors in determining whether a

proposed sale satisfies this standard:  (a) whether a sound business justification exists for the

sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

     A.    <u>A Sound Business Justification Exists for the Sale</u>

       17.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

       18.    Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction and courts in this district have held that a debtor may conduct a private sale when a good business reason exists. *See, e.g.*, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I. 435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited partnership interests and limited liability corporation interests for approximately $22.8 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the private sale of limited partnership interests for approximately $8 million).

19.     The proposed Sale Transaction represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. The Debtors believe that a prompt sale of the Interests will enable the Debtors to defray or avoid any operational, carrying or other expenses associated with the Interests, including management fees and potential future Capital Calls of which $50,000,000 of capital commitments remain unfunded, and protect the Debtors against the potential declining value of the Interests.   Selling or transferring the Interests pursuant to the proposed Sale Transaction in a private sale is the most efficient and cost-effective means of minimizing costs to the estates while maximizing the value for the benefit of the estates. *See* Mendelsohn Declaration ¶ 19.  As such, the Debtors submit that good business reason exists for conducting a private sale under the circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

B.     Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties

20.     Notice of this Motion has been provided to the following parties:  (A) the U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (D) the non-Debtor counterparties to all executory contracts that the Debtors propose to assume or assume and assign in connection with such sale, as applicable; (E) the Subject Company; (F) any party that has expressed an interest in purchasing the Interests during the last six months; (G) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (H) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

C.      The Sale Will Produce a Fair and Reasonable Price for the Property

21.     The Debtors believe that the sale of the Interests to Purchaser through a private sale is the best way to maximize value for their estates.

22.     The Debtors believe that the Purchase Price for the Interests is fair and reasonable.  The Debtors ensured that sale of the Interests would reflect their fair market value by, with the assistance of PWP, robustly marketing the Interests and conducting arm's-length negotiations.  The Debtors carefully considered and analyzed the offer as set forth in the Agreement in comparison to its other options and concluded that a sale of the Interests will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors.  The Purchase Price is higher than Seller's latest available capital account balance as of September 30, 2022.  Among the offers received by the Debtors, Purchaser's offer is the highest or otherwise best offer and would provide a greater recovery for the Debtors' estates. *See* Mendelsohn Declaration ¶ 17.

23.     As set forth in section 4.2(a) of the Agreement, the Purchase Price is subject to any higher or better offers from any third party in the form of an Alternative Transaction under the Agreement, which can be solicited for up to three days prior to the Hearing Date.  Further, as provided by section 6.1(h) of the Agreement, the Purchase Price is also subject to a "fiduciary out" where the Agreement can be terminated by the board of directors (or similar governing body) of Seller if it is determined to be inconsistent with its fiduciary duties.  In addition, pursuant to section 4.2(b) of the Agreement, if an Alternative Transaction is received by the Debtors, Seller has the right, but not the obligation, to terminate the Agreement upon entering into a definitive agreement with respect to such Alternative Transaction. Accordingly, the Debtors submit that the proposed Sale Transaction will produce a fair and reasonable price.

D.    <u>The Parties Have Acted in Good Faith and Purchaser Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code</u>

24.    Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

25.    Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'"  *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

26.    While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted).  Due to the absence of a bright-line test for good faith, the determination is

based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

27.     The Debtors submit that the terms and conditions of the Agreement have been negotiated at arm's length without any indication of fraud or collusion between Seller and Purchaser.  Purchaser is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and the Debtors believe that Purchaser has not engaged in any conduct that would indicate or constitute a lack of good faith.  *See* Mendelsohn Declaration ¶ 20. Accordingly, the Debtors request the finding that Purchaser is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.    The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

28.     The Debtors also request authorization to sell the Interests free and clear of all Liens (as defined in the Agreement), other than Permitted Encumbrances (as defined in the Agreement), in accordance with section 363(f) of the Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Interests.

29.     The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

31.    Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f). *See, e.g., In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

32.    The Debtors submit that the Sale Transaction satisfies one or more of the requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have consented to the Sale Transaction, and the Interests may be sold free and clear of all liens, claims, interests and encumbrances.  *See, e.g., Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the

Debtor submits that any holder of liens, claims and encumbrances against or interests in the Interests could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests. *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del. 2021).

33.    A sale free and clear of all liens, claims, interests and encumbrances is necessary to maximize the value of the Interests.  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances).  Purchaser would not have entered into the Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchaser free and clear of all Liens (other than Permitted Encumbrances).  *See* Mendelsohn Declaration ¶ 22.

34.    Furthermore, any Liens (other than Permitted Encumbrances), existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Interests free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

### III.    The Assumption and Assignment of the Operative Documents Should Be Approved.

35.    Section 365 of the Bankruptcy Code provides that a debtor-in-possession may generally assume and assign any executory contract of the debtor, subject to approval of the court, if it:  (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, the applicable defaults and (b) provides adequate assurance of future performance under such

contract, including by its assignee. 11 U.S.C. § 365. Courts employ the business judgment

standard in determining whether to approve a debtor's decision to assume or reject an executory

contract. *See, e.g.*, *Mission Prod. Holdings* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019)

(noting that a bankruptcy court will generally approve a debtors' choice to assume or reject an

executory contract under the deferential business judgment rule) (citation omitted); *In re HQ*

*Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (holding that a debtor's decision

to reject an executory contract "is governed by the business judgment standard" and "can only be

overturned if the decision was the product of bad faith, whim or caprice") (citations omitted).

The "business judgment" test in this context only requires that a debtor demonstrate that

assumption or rejection of an executory contract benefits the estate. *See Sharon Steel Corp.* v.

*Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

   36. To the extent such agreements are executory contracts, assuming and

assigning the applicable Operative Documents to Purchaser is an appropriate exercise of the

Debtors' business judgment. Upon consummation of the Sale Transaction, the applicable

Operative Documents will no longer have any value to the Debtors. By assuming and assigning

the applicable Operative Documents to Purchaser, the Debtors will be able to avoid any damages

claims that would arise from the rejection of the Operative Documents. The Debtors therefore

submit that the assumption and assignment of the applicable Operative Documents to Purchaser

is an appropriate exercise of the Debtors' business judgment and should be approved.

   37. The consummation of the Sale Transaction will be contingent upon the

Debtors' compliance with the requirements of section 365 of the Bankruptcy Code.

Section 365(b)(1) requires that any outstanding defaults under the contract to be assumed be

cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.

11 U.S.C. § 365(b)(1).  To the Debtors' knowledge, there are no existing defaults under the Operative Documents.

38.    Additionally, pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See In re Fleming Cos.*, 499 F.3d 300, 307 (3d Cir. 2007) (citing *Cinicola* v. *Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001)); *see also In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.") (citation omitted).  Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance where prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

39.    As set forth above, Purchaser is well-suited to consummate the Sale Transaction and satisfies the standard of providing adequate assurance of future performance. As set forth above, Purchaser is well-suited to consummate the Sale Transaction and satisfies the standard of providing adequate assurance of future performance.  Purchaser is a well-capitalized subsidiary of Abu Dhabi Investment Council Company P.J.S.C., which is a joint stock company established by the Government of the Emirate of Abu Dhabi in the United Arab Emirates. Abu Dhabi Investment Council Company P.J.S.C. is wholly owned by Mubadala Investment

Company P.J.S.C., which is itself wholly owned by the Government of the Emirate of Abu Dhabi.  Purchaser is an existing investor in the Subject Company and together with its affiliates has a long history of investing in funds managed by the General Partner of the Subject Company.

40.    In addition, to facilitate the assumption and assignment of the applicable Operative Documents, the Debtors further request that the Court find that all applicable anti-assignment provisions, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such contract or lease, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.  Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . . ."  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 365(f)(3).

41.    Based on the foregoing, the Debtors' assumption and assignment of the Operative Documents within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code in connection with the sale of the Interests satisfies the requirements under Section 365 of the Bankruptcy Code and should be approved.

### Bankruptcy Rules 6004(a), 6004(h) and 6006(d)

42.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rules 6004(h) and 6006(d).  In light of the Debtors' current financial conditions and the importance of an efficient timeline for maximizing the value of the Interests, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders. Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

### Notice

43.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (d) the non-Debtor counterparties to all executory contracts that the Debtors propose to assume or assume and assign in connection with such sale, as applicable; (e) the Subject Company; (f) any party that has expressed an interest in purchasing the Interests during the last six months; (g) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (h) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

### No Prior Request

44.     No prior motion for the relief requested herein has been made to this or any other court.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: March 8, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*