## EXHIBIT C

**Mendelsohn Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF
MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
APPROVING SALE OF DEBTORS' INTERESTS IN SEQUOIA CAPITAL FUND, L.P.
FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES;
(II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND
PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT;
(III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF
<u>CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF</u>**

I, Bruce Mendelsohn, hereby declare as follows:

1.      I am a Partner in the Advisory Group at Perella Weinberg Partners L.P. ("<u>PWP</u>"), a financial advisory firm that maintains an office at 767 5th Avenue, New York, New York 10153, and the Debtors' investment banker.  PWP is a full-service investment banking firm providing strategic and financial advisory services, including with respect to mergers and acquisitions, capital raising and restructuring transactions across a broad range of industries.  PWP and its professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out of court and in Chapter 11 proceedings.

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2.      I have been employed as a Partner of PWP since January 2016.  I received a Bachelor of Arts degree in 1984 from Emory University and a Master of Business Administration from the Wharton School at the University of Pennsylvania.

3.      Prior to joining Perella Weinberg Partners, I was a Partner at Goldman Sachs where I worked from May 1998 to June 2015 and most recently served as Head of the Americas Restructuring Group and part of the U.S. Leveraged Finance team.  I was named a Partner at Goldman Sachs in 2010.  From 2006 to 2008, I served as Chief Underwriting Officer for North America, where I was a member of Goldman Sachs' Firmwide Capital Committee and its Special Situations Specialty Lending Investment Committee.  I served as Global Head of the Special Assets and Bank Debt Portfolio groups from 2000 to 2008, and started at Goldman Sachs in the Securities Division where I spent two years working on the distressed bond and bank loan proprietary trading desks.  Prior to Goldman Sachs, I worked for UBS and MJ Whitman in restructuring and distressed securities.  I began my career at Lehman Brothers.

4.      In addition to working with the Debtors in the above-captioned cases (the "Chapter 11 Cases"), my experience includes representing companies, boards, creditors, and other stakeholders in a variety of situations across a broad range of industries, including the chapter 11 cases of:  American Tire Distributors, Bonanza Creek, Breitburn Energy, Bristow Group, Crossmark Holdings, Eco-Bat Technologies, Fieldwood Energy, iHeart Communications, Memorial Production Partners, Pacific Drilling, Sanchez Energy Corporation, Seadrill, Sears, Video Equipment Rental Corporation, Windstream, 21st Century Oncology, California Resources, Cineworld and Garrett Motion.  In addition, while at Goldman Sachs, I was involved in the following bankruptcy cases:  Bridge Information Systems, Brothers Gourmet Coffees, Calpine, CRC Communications, Focal Communications, General Growth Properties, Lehman

Brothers, Network Plus, Nextel International, Orchard Supply, Qwest Communications and 360 Networks.

5.       I submit this declaration (this "<u>Declaration</u>") in support of the *Motion of Debtors For Entry of an Order (i) Authorizing and Approving Sale of Debtors' Interests in Sequoia Capital Fund, L.P. Free and Clear of all Liens, Claims, Interests and Encumbrances, (ii) Authorizing and Approving Debtors' Entry Into, and Performance Under, The Purchase and Sale Agreement, (iii) Authorizing and Approving Assumption and Assignment Certain Contracts and (iv) Granting Related Relief* (the "<u>Motion</u>").[2]

6.       Except as otherwise indicated, all facts set forth in this Declaration are based upon:  (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"); (ii) information learned from my review of relevant documents; and/or (iii) information supplied by members of the Debtors' management, employees of PWP working directly with me or under my supervision, direction or control, and/or from the Debtors' other professionals and advisors.

7.       I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.  I am not being compensated for this testimony other than through payments to be received by PWP as a professional the Debtors have retained; none of those payments are specifically payable on account of this testimony.  If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

**A.**   **A Sound Business Justification Exists for the Sale.**

8.      I believe that Seller's entry into the Agreement represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, creditors, and other parties in interest.  Further, it is my belief that the Debtors determined to sell the Interests after thorough consideration of the terms of the Agreement.

**B.**   **The Sale Will Produce the Highest and Best Offer.**

9.      Based on my experience, I believe the Debtors have thoroughly and fairly marketed the Interests and conducted the related sale process in good faith.

10.     PWP was engaged by the Debtors effective November 16, 2022 to provide financial advisory, restructuring, financing and sale services to the Debtors during these Chapter 11 Cases.  PWP has assisted the Debtors in their exploration and evaluation of strategic alternatives to maximize the value of, and monetize, their diverse, global assets.  This has included a review of documents regarding the Debtors' businesses and investments, discussions with management of the Debtors, discussions with businesses in which the Debtors have made investments, and coordinating and initiating discussions with potential purchasers.

11.     Following a strategic review, the Debtors decided to monetize the Interests through a private sale process in consideration of, among other things: the number of Interests owned by the Debtors, the potential value of the Interests; the uncertainty as to whether the potential value of the Interests could be preserved for the duration of these Chapter 11 Cases; the potential diminution in the value of the Interests as a result of Capital Calls imposed on limited partners; and the transfer restrictions associated with the Interests.  PWP assisted the Debtors in their marketing process to solicit potential investors in the Interests.  Such efforts included reaching out to potential acquirers of the Interests.  Such potential acquirers included a mixture of existing limited partners and third-party investors such as sovereign wealth funds and pension

-4-

funds, who typically invest as limited partners in these types of assets.  In total, PWP reached out to 13 potential acquirers throughout the process and engaged with a subset of them who expressed interest.

12.    Following PWP's marketing campaign for the Interests, the Debtors received requests for additional information from eight parties, all of whom executed non-disclosure agreements and were provided access to information on the Interests.  By February 22, 2023, the Debtors had received indications of interest from four prospective purchasers of the Interests.

13.    Of these four prospective purchasers, the Debtors and PWP narrowed down the process to two parties, each of which was actively engaged in bidding for the Interests. After the Debtors were satisfied that they had negotiated the best deal possible, the Debtors determined that it was in the best interest of their estates and their constituents to proceed with Purchaser and work toward executing a mutually-agreeable transaction.

14.    After extensive arms'-length negotiations, Seller and Purchaser entered into that certain Purchase and Sale Agreement, dated as of March 8, 2023 (the "Agreement"), whereby Purchaser agreed to purchase the Interests for aggregate consideration of $45,000,000.00 (the "Purchase Price").

15.    Based on my experience, involvement in the bidding process and review of available alternatives, it is my opinion that there is currently no better or higher offer available for the Interests.  I believe that all interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) make a higher or better offer to purchase the Interests, and (ii) object or be heard with respect to the Sale Motion.

**C.** **The Sale Will Produce a Fair and Reasonable Price for the Interests.**

16.     I believe that the Purchase Price for the Interests contemplated by the Agreement is fair and reasonable.  The Debtors, with the assistance of PWP, ensured that sale of the Interests would reflect their fair market value by thoroughly marketing the Interests and conducting arm's-length negotiations.

17.     In my experience with sales of limited partner interests, it is typical for these interests to be sold at a discount to their latest available capital account values, in particular when overall market conditions are depressed.  Here the Purchase Price represents both a premium to Seller's latest available quarter-end capital account balance as of September 30, 2022, and a premium to PWP's most recently estimated amount.

18.     Pursuant to the Agreement, the Purchase Price is subject to higher or better offers from any third party in the form of an "Alternative Transaction", and a "fiduciary out" which provides that the Agreement can be terminated by the board of directors (or similar governing body) of Seller if it is determined to be inconsistent with the fiduciary duties of the board of directors (or similar governing body).  If an Alternative Transaction is received by the Debtors, Seller has the right, but not the obligation, to terminate the Agreement upon entering into a definitive agreement with respect to such Alternative Transaction.

19.     I believe that a longer process or the implementation of formal bidding procedures for the sale of the Interests would not have resulted in a higher or better value to the estate.  A private sale enabled the Debtors to avoid the additional costs, expenses and time associated with a formal bidding and sale process.  In addition, selling the Interests now will enable the Debtors to further avoid any operational, carrying or other expenses associated with the Interests, including management fees and potential future Capital Calls, and protected the Debtors against the risk of potential decline in value of the Interests.  I believe that selling the

Interests in a private sale is the most efficient and cost-effective means of minimizing costs to the estate while maximizing the value for the benefit of the estate.

20.     In my role as the Debtors' financial advisor, I reviewed the Agreement and based on my experience, believe the Agreement is the result of extensive, arm's-length and good-faith negotiations between the parties, and that such negotiations were free of any collusion.

### D.     The Sale of the Interests Should be Made Free and Clear of Any Liens, Including Successor Liability.

21.     Purchaser is a well-capitalized subsidiary of Abu Dhabi Investment Council Company P.J.S.C. which is a joint stock company established by the Government of the Emirate of Abu Dhabi in the United Arab Emirates.  It is my understanding that the Sale Transaction does not involve a consolidation, succession or merger of Purchaser and the Debtors and/or the Debtors' estates.

22.     Moreover, I believe that not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the Interests.  I believe that Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Interests was not free and clear of all Liens (other than Permitted Encumbrances), or if Purchaser would, or in the future could, be liable for any such interests.

### E.     The Assumption and Assignment of the Operative Documents Should be Approved.

23.     My view is that no reasonable purchaser would take the Interests without the Operative Documents that the Debtors seek to assume and assign, and their assumption and assignment is essential to inducing the best offer for the Interests.

24.     Because I do not believe that the Debtors could obtain the benefits of the Sale Transaction without agreeing to assume and assign the applicable Operative Documents and having any Cure Costs related thereto paid by Purchaser, it is my belief that the assumption and assignment of the applicable Operative Documents is a sound exercise of the Debtors' business judgment.

25.     Accordingly, for the foregoing reasons, I believe that the Agreement represents the highest and best offer for the Interests and that the sale of the Interests to Purchaser pursuant to the Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 8, 2023.

*/s/ Bruce Mendelsohn*
Bruce Mendelsohn
Partner
Perella Weinberg Partners L.P.