**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FTX TRADING LTD., *et al.*,[1] | ) | Case No. 22-11068 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: April 12, 2023, at 1:00 p.m. (ET)** |
| | ) | **Objection Deadline: March 29, 2023, at 4:00 p.m. (ET)** |

**MOTION OF SAMUEL BANKMAN-FRIED FOR RELIEF
FROM THE AUTOMATIC STAY, TO THE EXTENT
APPLICABLE, TO PERMIT INSURERS TO ADVANCE
AND/OR REIMBURSE DEFENSE COSTS AND FEES
UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

Samuel Bankman-Fried, by and through his undersigned counsel, hereby moves this Court, pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, in substantially the form attached to the Motion as **Exhibit A** (the "Proposed Order"), finding that the automatic stay of section 362(a) of the Bankruptcy Code does not apply, or, to the extent it does apply, lifting and modifying the automatic to the extent necessary to permit the advancement and/or reimbursement to Mr. Bankman-Fried of defense, settlement, and other amounts ("Defense Costs") covered by the following insurance policies (the "D&O Policies" or

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases (the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2323799.8

"Policies"): (i) Relm Insurance Ltd. Private Company Management Liability Policy, Policy No. RILPDO3922022 (the "Relm D&O Policy," attached as **Exhibit B**), issued by Relm Insurance Ltd. ("Relm"); and (ii) Excess Claims Made Directors and Officers Liability Insurance, Policy No. B0146ERUSA2201490 (the "Beazley Excess Policy," attached as **Exhibit C**), issued by Certain Underwriters of Lloyd's, London ("Beazley").

In support of this Motion, Mr. Bankman-Fried respectfully represents as follows:

### PRELIMINARY STATEMENT

1. Mr. Bankman-Fried has been named as a defendant or is otherwise involved in criminal, regulatory, civil, and other actions and proceedings that have resulted in—and can be expected to continue to result in—significant unreimbursed legal fees and other expenses. The Debtors have denied any indemnification or advancement to Mr. Bankman-Fried and have refused even to provide him with basic information about his indemnification and advancement rights.

2. Mr. Bankman-Fried is covered by insurance policies designed to protect against exactly this circumstance. Mr. Bankman-Fried provided notice of the pending matters (the "Pending Claims") to various insurers. In response, Relm, the primary carrier on the D&O Policies at issue in this Motion, reserved rights with respect to its ability to evaluate coverage and indicated that Mr. Bankman-Fried must seek a modification of the stay, either through a stipulation with the Debtors or by way of a motion, before any covered payments can be made.

3. Mr. Bankman-Fried asked Debtors' counsel to stipulate to relief from the stay, consistent with language in the Policies, which (a) provides priority of payment to individual insureds with un-indemnified loss like Mr. Bankman-Fried, and (b) waives objections to the requested relief. *See* ¶23 *infra*. The Debtors declined, necessitating this Motion.

## JURISDICTION AND VENUE

4. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

5. The statutory and legal predicates for the relief sought by this Motion are sections 105(a), 362(d)(1) and 541 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1.

6. Pursuant to Local Rule 9013-1(f), Mr. Bankman-Fried consents to entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The D&O Policies

7. As a former director and officer of Debtor West Realm Shires, Inc. ("WRS" or the "Company"), d/b/a FTX US, and certain of its subsidiaries, Mr. Bankman-Fried is an insured under the D&O Policies. *See* Ex. B, Relm D&O Policy, Directors and Officers Liability Part ("D&O Liability Part") § III.N at 4.

8. The Relm D&O Policy provides primary Directors & Officers coverage in the amount of $5 million. *See id.*, Declarations, Item 8 Coverage Schedule at 2. The Beazley Excess Policy provides excess coverage in an additional amount of $5 million. *See* Ex. C,

Declarations, Item 3. The Beazley Excess Policy follows form to the Relm D&O Policy. *Id.*, Excess Insurance Policy § I.[2]

9. The D&O Policies provide "Side A" coverage for, among other things, defense costs incurred in defending against covered claims:

> The Insurer shall pay on behalf of the Insured Persons all Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons become legally obligated to pay on account of any Claim first made against them during the Policy Period or the Extended Reporting Period, if exercised, for a Wrongful Act.

Ex. B, D&O Liability Part § I.A at 1.

10. "Loss" includes amounts the insureds "become legally obligated to pay on account of a Claim made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **and Claim Expenses**." *Id.*, D&O Liability Part, § III.Q at 5 (emphasis added).

11. "Claim Expenses" include "reasonable fees (including attorneys' fees and experts' fees) and expenses incurred by the Insureds…in the investigation, defense or appeal of a Claim." Ex. B, General Terms and Conditions ("T&C") § II.D at 1.

12. The D&O Policies contractually require the Company and its subsidiaries to indemnify and advance expenses to the individual insureds. *See id.*, § XII at 10 ("The Named Insured and any other Company agree to indemnify the Insured Persons, including the advancement of Claim Expenses incurred by the Insured Persons to the fullest extent permitted

---

[2] "This Policy shall provide coverage in accordance with all of the terms, conditions and limitations (including, but not limited to, the exclusions and notice requirements) of the [Relm D&O Policy] except for the Limit of Liability, the premium or as otherwise set forth herein." *Id.* For this reason, citations throughout this Motion to the Relm D&O Policy apply equally to the Beazley Excess Policy, unless otherwise indicated.

by law or the functional or foreign equivalent."). The D&O Policies provide, however, that "[i]f a Company refuses or fails within sixty (60) days after an Insured Person's request to indemnify or advance covered Loss or if a Company is unable to indemnify or advance covered Loss due to its Financial Impairment, the Insurer shall pay such covered Loss without applying the applicable Retention." *Id.*, § V.A at 6. In this circumstance, the D&O Policies require the Insurer to "advance covered Claim Expenses within forty-five (45) days after the receipt by the Insurer of properly detailed Claim Expenses invoices." *Id.*, § VII.E at 7.

13. The D&O Policies also provide certain coverages to the Company for indemnification payments to insureds, Company liability on certain claims, and certain costs arising from derivative demands—generally known as Side B, C, and D coverage. *See id.*, D&O Liability Part § I at 1. The coverage under those other insuring agreements, however, is expressly subordinate to the Side A coverage afforded directly to the Insured Persons like Mr. Bankman-Fried and is unavailable to WRS as long as the Defense Costs have not been paid. *See id.*, T&C § XIX at 11-12. Specifically, the D&O Policies include a customary payment priority provision requiring payment of covered Loss under Side A before any payment under any other insuring agreement:

> If the Loss due and owing by the Insurer under a Liability Coverage Part exceeds the then-remaining Limit of Liability applicable to such Loss, the Insurer shall pay such Loss, subject to the applicable Limits of Liability, in the following priority:
>
> (a) First, the Insurer shall pay such Loss which is Non-Indemnifiable Loss[3] incurred by Insured Persons;

---

[3] "Non-Indemnifiable Loss" is defined as "Loss incurred by an Insured Person for which the Company is not permitted by common or statutory law to indemnify or is not financially able to indemnify by reason of Financial Impairment." *Id.*, D&O Liability Part § III.X at 3. "Financial Impairment" means "the status of the Company resulting from: 1. the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Company, or 2. The Company becoming a debtor in possession, as defined under U.S. Bankruptcy law or equivalent foreign law." *Id.*, D&O Liability Part § III.O at 2.

>   (b) Second, the Insurer shall pay all other Loss covered under the Liability Coverage Part.

*Id.*, T&C § XIX at 11-12.

14. The D&O Policies explicitly provide that "[b]ankruptcy or insolvency of any Insured or of the estate of any Insured shall not relieve the Insurer of its obligations nor deprive the Insured of its rights or defenses under this Policy." *Id.*, § XXII at 12.

15. Finally, the D&O Policies require the Debtors to cooperate in obtaining relief from the automatic stay, to the extent the stay is applicable:

> In the event a liquidation or reorganization proceeding is commenced by or against a Company pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the Insureds hereby (i) waive and release any automatic stay or injunction which may apply in such proceeding to this Policy or its proceeds under such bankruptcy law, and (ii) agree not to oppose or object to any efforts by the Insurer, the Company or any Insured to obtain relief from any such stay or injunction.

*Id.*

### B. The Pending Claims against Mr. Bankman-Fried

16. Currently, there are multiple criminal, regulatory, insolvency-related and civil actions that are pending against or otherwise involve Mr. Bankman-Fried. The Pending Claims include, but are not limited to:

(a) <u>Criminal Proceedings</u>

  (i) *United States v. Bankman-Fried*, 1:22-cv-00673 (S.D.N.Y.)

(b) <u>Federal and State Regulatory Proceedings</u>

  (i) *Securities and Exchange Commission v. Bankman-Fried*, 1:22-cv-10501 (S.D.N.Y.)

  (ii) *Commodity Futures Trading Commission v. Bankman-Fried,* 22-cv-10503 (S.D.N.Y.)

  (iii) *Texas State Securities Board v. Bankman-Fried,* SOAH No. 312-23-06226

(c) <u>Insolvency-Related Proceedings</u>

    (i) *Ben Shimon v. Emergent Fidelity Techs. LTD,* No. ANUHCV 2022 (E. Caribbean Sup. Ct.)

    (ii) *In re Emergent Fidelity Technologies Ltd.,* Case No. 23-10149-JTD (Bankr. D. Del.)

    (iii) *In re FTX Trading Ltd.,* Case No. 22-11068-JTD (Bankr. D. Del.)

    (iv) *BlockFi v. Emergent Fidelity Technologies Ltd. (In re BlockFi Inc.),* Adv. Pro. 22-01382-MBK (Bankr. D.N.J.)

    (v) *In re Voyager Digital Holdings, Inc.,* Case No. 22-10943-MEW (Bankr. S.D.N.Y.)

(d) <u>Civil Actions</u>

    (i) *Garrison v. Bankman-Fried,* 1:22-cv-23753 (S.D. Fla.)

    (ii) *Lam v. Bankman-Fried,* 4:22-cv-07336 (N.D. Cal.)

    (iii) *Pierce v. Bankman-Fried,* 3:22-cv-07444 (N.D. Cal.)

    (iv) *Hawkins v. Bankman-Fried,* 22-cv-07620 (N.D. Cal.)

    (v) *Jessup v. Bankman-Fried,* 22-cv-07666 (N.D. Cal.)

    (vi) *Papadakis v. Bankman-Fried,* 3:23-cv-00024-JCS (N.D. Cal.)

    (vii) *Onusz v. West Realm Shires Inc. (In re FTX Trading Ltd.),* Adv. Pro. 22-50513-JTD (Bankr. D. Del.)

17. Mr. Bankman-Fried has accrued substantial, unreimbursed Defense Costs to date in connection with the Pending Claims.

    **C.    The Bankruptcy Cases**

18. On November 11 and 14, 2022 (as applicable, the "<u>Petition Date</u>"),[4] the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue possession of their properties and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[4] November 11, 2022, is the Petition Date for all of the Debtors, except for Debtor WRS.

19. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee").

### D. The Debtors' Refusal to Advance Expenses to Mr. Bankman-Fried

20. As a former officer and director of WRS and various of its Debtor affiliates, Mr. Bankman-Fried has advancement and indemnification rights including, as discussed above, under the express terms of the D&O Policies. *See* Ex. B., T&C § XII at 10. On December 30, 2022, counsel for Mr. Bankman-Fried sought written confirmation from Debtors' counsel regarding the Debtors' position on advancement and indemnification obligations to pre-petition directors and officers, and asked Debtors' counsel to provide Mr. Bankman-Fried with copies of corporate governance documents for certain Debtor entities along with any contracts pertaining to Mr. Bankman-Fried's indemnification rights.

21. Over one month later, on February 2, 2023, Debtors' counsel stated that the Debtors do not intend to honor advancement and indemnification obligations to Mr. Bankman-Fried in connection with the Pending Claims and refused to provide any corporate governance or other indemnification-related materials pertaining to the Debtors to Mr. Bankman-Fried.

### E. Events Giving Rise to This Motion

22. Mr. Bankman-Fried, by and through counsel, submitted notice letters to various insurance carriers, including notices to Relm under the Relm D&O Policy on December 14, 2022, January 11, 2023, and March 3, 2023. In subsequent correspondence, Relm reserved its rights regarding the impact of the bankruptcy filing on its ability to evaluate coverage. To date, Relm has not provided its coverage position on which, if any,[5] of the Pending Claims may

---

[5] Relm has not issued any formal coverage position, but in discussions through counsel has expressed its view that at least several of the Pending Claims are unlikely to implicate coverage under the D&O Policies

-8-

implicate coverage for Defense Costs under the Policies. Relm further declined to make any payments under the Relm D&O Policy absent an order from the Court granting relief from the automatic stay.

23. As Relm has predicated any payment of Mr. Bankman-Fried's Defense Costs on the entry of the above-described order, before filing this Motion, Mr. Bankman-Fried, through counsel, sought the Debtors' cooperation in requesting the proposed relief. Specifically, on February 22, 2023, Mr. Bankman-Fried, by and through counsel, requested that the Debtors consent to the relief sought by this Motion and enter a stipulation to that effect. Notwithstanding the Debtors' obligation under the D&O Policies to cooperate with Mr. Bankman-Fried in this effort, on March 2, 2023, Debtors' counsel informed counsel for Mr. Bankman-Fried that the Debtors were not willing to stipulate to such relief, thereby necessitating the filing of this Motion.

## RELIEF REQUESTED

24. Mr. Bankman-Fried seeks entry of an order, substantially in the form of the Proposed Order, finding that the automatic stay provided for in section 362(a) of the Bankruptcy Code does not apply, or, to the extent that it does apply, lifting and modifying the automatic stay to permit payments and/or advancements of funds by Relm and Beazley that are, or will become, owing to Mr. Bankman-Fried in accordance with the terms of the D&O Policies for the reimbursement and payment of his Defense Costs in connection with the Pending Claims.

---

on the theory that they do not relate to WRS or its subsidiaries. This Motion does not request any disposition of insurance coverage issues.

## APPLICABLE AUTHORITY

### A. The Automatic Stay Does Not Apply to the Payment of the Defense Costs.

25.  The automatic stay set forth in Section 362(a) of the Bankruptcy Code prohibits, among other things, "any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a). Courts in this district have held that, in determining whether the automatic stay applies to proceeds of a directors and officers liability policy, the "threshold issue is whether the Policy proceeds are property of the estate." *In re Downey Fin. Corp.*, 428 B.R. 595, 602 (Bankr. D. Del. 2010). This question turns on "the language and scope of the policy at issue." *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). Specifically, where a "liability insurance policy provides direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Downey*, 428 B.R. at 603 (internal quotations omitted).

26.  Applying this principle, the use of proceeds under the D&O Policies to pay Defense Costs will not have an adverse effect on the Debtors' bankruptcy estates because, until any covered Defense Costs are satisfied, the proceeds of the D&O Policies cannot be used for any other purpose. In fact, the priority-of-payments provision clarifies that all Side A coverage claims—including Mr. Bankman-Fried's claims for Defense Costs—must be paid in full *before* the policy proceeds can be used to satisfy claims under any other coverage. *See* Ex B, T&C § XIX at 11-12. Under such circumstances, the proceeds of the D&O Policies should *not* be considered property of the estate. *See, e.g., In re World Health Alternative, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) (priority-of-payment provision rendered subordinated coverage for debtor so remote that it was not reasonably probable that the trustee would succeed in asserting

that proceeds were property of the estate); *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds that are first in line," and, therefore, proceeds of the policy were not property of the estate).

27.     The potential for coverage of the Debtors under the other insuring agreements does not alter this conclusion. Indemnification coverage does not constitute property of the estate where indemnification is "hypothetical or speculative" and, thus, "is no longer protecting the estate's other assets from diminution." *Downey*, 428 B.R. at 607; *World Health*, 369 B.R. 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative'") (quoting *Allied Digital*, 306 B.R. at 512); *Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngstown Osteopathic Hosp. Ass'n)*, 271 B.R. 544, 550 (Bankr. D. Ohio 2002) (finding that insurance proceeds were not property of estate because "[D&O] policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose.") (quoting *Ochs v. Lipson (In re First Central Fin. Corp.)*, 238 B.R. 9, 13 (Bankr. E.D.N.Y. 1999)).

28.     Further, it is an established principle that bankruptcy should not expand a debtor's rights against others beyond rights that existed at the commencement of the case. *See, e.g., Downey*, 428 B.R. at 607 ("Section 541(a) is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case.") (internal quotations and citations omitted); *In re Cont'l Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands

of the estate.") (internal quotations and citations omitted). Outside of bankruptcy, the D&O Policies provide Mr. Bankman-Fried with direct coverage, and the Debtors' interests in the proceeds of the D&O Policies are contractually subordinate to those of Mr. Bankman-Fried under the priority-of-payment provision. Thus, if the proceeds of the D&O Policies were deemed property of the Debtors' estates, the Debtors would be granted greater rights in those proceeds than they would have had outside of bankruptcy, contrary to established principles of bankruptcy law. *See In re Laminate Kingdom LLC*, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the [priority of payments provision] does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers' defense costs] are paid."); *see also Downey*, 428 B.R. at 608 (in holding that the policy proceeds were not property of the estate, the court explained "were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have greater rights in the [Policy proceeds] than the debtor had before filing for bankruptcy.") (internal quotations and citations omitted).

29.     Mr. Bankman-Fried submits that, under these circumstances, the Debtors lack sufficient interest in the proceeds of the D&O Policies for such proceeds to constitute property of the Debtors' estates. Accordingly, Relm and Beazley should be permitted to distribute proceeds with respect to the covered Defense Costs of Mr. Bankman-Fried.

    **B.**    **Even if the Automatic Stay Applies, Ample Cause Exists to Modify the Stay.**

30.     Even if the proceeds of the D&O Policies were deemed property of the Debtors' estates, the Court should nonetheless modify the automatic stay to permit Relm and Beazley to advance any covered Defense Costs to Mr. Bankman-Fried. In fact, Courts in this district and others routinely grant such relief under similar circumstances. *See, e.g., In re NewAge, Inc.*, Case

No. 22-10819 (LSS), ECF Dkt. No. 476 (Bankr. D. Del. Feb. 7, 2023); *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (JKS), ECF Dkt. No. 578 (Bankr. D. Del. Nov. 22, 2022); *In re Bayou Steel BD Holdings, L.L.C.*, Case No. 19-12153 (KBO), ECF Dkt. No. 811 (Bankr. D. Del. Nov. 3, 2021); *In re The Hertz Corp.*, Case No. 20-11218 (MFW), ECF Dkt. No.1090 (Bankr. D. Del. Aug. 19, 2020); *In re Penson Worldwide, Inc.*, Case No. 13-10061 (PJW), ECF Dkt. No. 496 (Bankr. D. Del. May 7, 2013); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the debtor"); *Laminate Kingdom*, 2008 WL 1766637, at *4 ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to [the] debtor.").

31.   Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in Section 362(d)(1). Rather, cause is "a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). In considering whether to grant relief from the stay under this provision, courts consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*,

428 B.R. at 609.[6]  In weighing the harms under Section 362(d), courts acknowledge that the central purpose of D&O policies is to protect individual directors and officers. *See, e.g., In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1990).  As described below, these factors strongly weigh in favor of lifting the automatic stay.

33. To begin with, the Debtors' estates will suffer no harm or prejudice if the Court grants relief from the automatic stay with respect to the D&O Policies.  Because any litigation against the Debtors is stayed by operation of law, the Debtors have no present contractual interest in the proceeds of the D&O Policies.  Furthermore, any claims against the Debtors covered under other insuring agreements under the D&O Policies would be clearly subordinate to the Defense Costs of Mr. Bankman-Fried by operation of the priority-of-payment provisions, *see* Ex. B, T&C § XIX at 11-12, thus making any alleged prejudice entirely hypothetical.  And, because there is no retention under the Side A coverage, the Debtors will not be required to fund any amounts out of pocket in order for Mr. Bankman-Fried to access coverage.

33. By contrast, Mr. Bankman-Fried would suffer substantial and potentially irreparable harm if he is denied the ability to receive a coverage position and obtain payment of covered Defense Costs.  Consistent with the purpose of director and officer liability policies, the Debtors purchased the D&O Policies first and foremost to provide insurance coverage to and for the benefit of its officers and directors, including Mr. Bankman-Fried. *See MF Glob. Holdings*,

---

[6] In *Downey*, the court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate. *Downey*, 428 B.R. at 609. Mr. Bankman-Fried submits that this factor does not apply here. If Mr. Bankman-Fried were seeking stay relief to pursue litigation against the Debtors, the merits of that litigation would be relevant to whether the automatic stay should be lifted. *See, e.g., In re Cont'l Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). However, Mr. Bankman-Fried does not seek to pursue litigation against the Debtors, and the relief that Mr. Bankman-Fried does seek—access to the proceeds of the D&O Policies to pay his Defense Costs, consistent with its terms—is not contingent on the merits of any litigation claim, but instead follows from the plain and unambiguous terms of the D&O Policies.

469 B.R. at 192 ("D&O [P]olicies are obtained for the protection of individual directors and officers . . . [i]n essence and at its core, a D&O [P]olicy remains a safeguard of officer and director interests and not a vehicle for corporate protection.") (internal quotations omitted).

34. Indeed, the Debtors ensured that the claims of directors and officers would be paid first out of proceeds of the D&O Policies, by express language to that effect. Without those proceeds, Mr. Bankman-Fried would be deprived of customary and specifically bargained-for resources to pay attorney fees and other Defense Costs in connection with any Pending Claims covered by these Policies, thereby undermining his ability to present effective defenses. As such, Mr. Bankman-Fried "may suffer substantial and irreparable harm if prevented from exercising [his] rights to defense payments." *Downey*, 428 B.R. at 610 (quotations omitted); *see also Allied Digital*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm."). Accordingly, the hardship to Mr. Bankman-Fried far outweighs any hardship to the Debtors' estates, as "clear, immediate, and ongoing losses to the directors and officers in incurring defense costs trumps only hypothetical or speculative claims by the trustee." *In re Hoku Corp.*, No. 13-40838-JDP, 2014 WL 1246884, at *4 (Bankr. D. Idaho Mar. 25, 2014) (*quoting Groshong v. Sapp (In re MILA, Inc.),* 423 B.R. 537, 545 (B.A.P. 9th Cir. 2010)) (internal quotations omitted).

35. Based on the foregoing, Mr. Bankman-Fried submits that ample cause exists to lift and modify the automatic stay, if and to the extent it is even applicable, to allow Relm and Beazley to (a) reimburse Mr. Bankman-Fried for covered Defense Costs that have already been incurred under the D&O Policies, and (b) advance future covered Defense Costs unless and until

the Defense Costs no longer qualify as Non-Indemnifiable Losses under the terms of the D&O Policies.

    **C.    Permitting the Payment, Reimbursement, and/or Advancement of Defense Costs is an Appropriate Exercise of the Court's Powers.**

36.    Finally, section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

37.    For the reasons stated above, permitting Relm and Beazley to pay, reimburse, and/or advance Mr. Bankman-Fried's Defense Costs in accordance with and subject to the terms and conditions of the D&O Policies is an appropriate exercise of the Court's powers under these factual circumstances.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 4001(a)(3)

38.    Due to the significant delay that Mr. Bankman-Fried has already experienced with respect to the advancement and reimbursement of his Defense Costs to which he is entitled and the routine nature of the relief requested herein, Mr. Bankman-Fried hereby requests that this Court waive the 14-day stay period imposed by Bankruptcy Rule 4001(a)(3) to the extent applicable to the relief requested herein.

## NOTICE

39.    Notice of this Motion will be provided to: (a) counsel for the Debtors; (b) the U.S. Trustee; (c) counsel to the Committee; (d) Relm and Beazley and, if applicable, their counsel; and (e) those parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Mr. Bankman-Fried submits that no other or further notice is necessary.

**WHEREFORE**, Mr. Bankman-Fried respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: March 15, 2023
       Wilmington, Delaware

Respectfully submitted,

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

*/s/ Gregory T. Donilon*
Gregory T. Donilon (No. 4244)
1105 North Market Street, 15th Floor
Wilmington, Delaware 19801
Telephone: (302) 504-7800
gdonilon@mmwr.com

-and-

Edward L. Schnitzer, Esq. (admitted *pro hac vice*)
David M. Banker (admitted *pro hac vice*)
437 Madison Avenue, 24th Floor
New York, New York 10022
Telephone: (212) 867-9500
eschnitzer@mmwr.com
dbanker@mmwr.com

*Attorneys for Samuel Bankman-Fried*