## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: April 5, 2023 at 4:00 p.m. (ET)<br>Hearing Date: April 12, 2023 at 1:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT WITH MODULO
CAPITAL, INC., MODULO CAPITAL ALPHA FUND LP, XIAOYUN ZHANG, AND
DUNCAN RHEINGANS-YOO, (B) APPROVING THE SETTLEMENT AGREEMENT,
AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors"), including Alameda Ventures Ltd. (n/k/a Maclaurin Investments

Ltd.), Alameda Research LLC, Alameda Research Ltd. and Alameda Research Investments Ltd.

(n/k/a Goodman Investments Ltd.) (together, the "Alameda Debtors"), hereby submit this motion

(the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the

"Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et*

*seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") authorizing the Debtors to enter into that certain Settlement Agreement,

attached as Exhibit 1 to the Order (the "Agreement"),[2] between and among (i) the Debtors,

(ii) Modulo Capital, Inc. ("Modulo"), (iii) Modulo Capital Alpha Fund LP ("Modulo Fund" and,

together with Modulo, the "Modulo Entities"), (iv) Xiaoyun "Lily" Zhang, and (v) Duncan

---

[1]    The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of
debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal
tax identification numbers is not provided herein.  A complete list of such information may be obtained on the
website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
Agreement.

Rheingans-Yoo (collectively, the "Parties").  In support of the Motion, the Debtors respectfully

state as follows:

## Preliminary Statement

1.      The Debtors have the opportunity to promptly recover approximately

$460 million in value for stakeholders—including more than $404 million in cash—without

needing to commence litigation following constructive negotiations with the Modulo Entities and

their principals.

2.      This settlement relates to the transfer of $475 million by the Alameda

Debtors, as directed by Samuel Bankman-Fried, to the Modulo Entities between May 2022 and

the Petition Date for investments and to support the Modulo Entities' operations.  Modulo is an

investment advisor to and general partner of the Modulo Fund.  Ms. Zhang and Mr. Rheingans-

Yoo are the principals of the Modulo Entities.

3.      The Debtors' entry into the Agreement is in the best interests of their

estates, creditors and stakeholders, and should be swiftly consummated.  The Agreement's terms

will provide the Debtors' estates significant value representing 99% of the Modulo Entities'

remaining assets and 97% of the original transfers from the Alameda Debtors to the Modulo

Entities (after considering expenses and trading losses).

4.      Approval of the Agreement will resolve the Debtors' Claims against the

Modulo Entities and deliver this significant recovery while avoiding the expense and burden of

litigation.  The Agreement satisfies Bankruptcy Rule 9019 and should be approved.

## Background

5.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"),[3] the Debtors filed with the United States Bankruptcy Court for the District of Delaware

---

[3]      November 11, 2022, is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

(the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases

(the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in

the Debtors' Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy

Code [D.I. 231].

> 6.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in

Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.

Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### **Jurisdiction**

> 7.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in

connection with this Motion to the extent it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

8.      By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to enter into the Agreement, (b) approving the Agreement, and (c) granting certain related relief.

## Facts Specific to the Relief Requested

9.      On February 2, 2022, Debtor Alameda Ventures Ltd. (n/k/a Maclaurin Investments Ltd.), Ms. Zhang, and Mr. Rheingans-Yoo executed a non-binding term sheet whereby Alameda Ventures Ltd. or its affiliates would invest $25 million in one or more general partnership entities to be formed and managed by Ms. Zhang and Mr. Rheingans-Yoo.

10.     Modulo is an international business company organized under the laws of The Bahamas.  Alameda Research Ltd. transferred $25 million to Modulo on May 19, 2022, as contemplated by the term sheet (the "GP Transfer").

11.     Debtor Alameda Research Investments Ltd. (n/k/a Goodman Investments Ltd.) and Modulo entered into a shareholders agreement dated June 16, 2022 (the "Shareholders Agreement"), whereby Alameda Research Investments Ltd. would hold 20% of Modulo's non-voting Class A shares.

12.     On June 16, 2022, Modulo and Alameda Research Ltd. also executed a limited partnership agreement governing the Modulo Fund (the "Limited Partnership Agreement").  The Modulo Fund is a limited partnership organized under the laws of the Cayman Islands.  Pursuant to the Limited Partnership Agreement, Modulo became the general partner of the Modulo Fund, and Alameda Research Ltd. became a limited partner of the Modulo Fund.

13.     Following the execution of the Limited Partnership Agreement, Alameda Research Ltd. and certain other Alameda Debtors made several transfers to the Modulo Fund, totaling $450 million (the "LP Transfers" and together with the GP Transfer, the "Alameda Transfers").

14.     As a result, Debtor Alameda Research Investments Ltd. owns 20% of the Class A shares of Modulo, and Debtor Alameda Research Ltd. is a limited partner of the Modulo Fund.

15.     The Debtors, including without limitation each of the Alameda Debtors, believe they have meritorious claims to avoid and recover the Alameda Transfers, and related claims arising out of the Alameda Transfers (the "Claims").

16.     The Modulo Entities, Ms. Zhang, and Mr. Rheingans-Yoo dispute and have raised certain defenses to the Claims.

17.     The Parties have engaged in good faith, arm's-length negotiations to resolve the Claims.  Through those negotiations, the Modulo Entities, Ms. Zhang, and Mr. Rheingans-Yoo have cooperated with the Debtors and worked in good faith to expeditiously reach a consensual resolution.  As a result of those negotiations, the Parties have agreed to enter into the Agreement.

18.     The key terms of the Agreement provide, among other things, that on the Settlement Effective Date:[4]

- Modulo Fund shall transfer to the Debtors all assets in its possession, custody, or control relating to the LP Transfers, which the Modulo Entities, Ms. Zhang, and Mr. Rheingans-Yoo represent and warrant consist of approximately $394,000,000 in a bank account;

---

[4]     Any summary of the Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Agreement, the actual terms and conditions of the Agreement shall control.

- Modulo shall transfer $10,200,000 to the Debtors, representing funds from the GP Transfer;

- The Modulo Entities, Ms. Zhang, and Mr. Rheingans-Yoo release and disclaim any and all interests in and claims related to all assets held in accounts on the FTX.com or FTX US exchanges (the "Modulo Exchange Accounts"), which the Parties agree consist of approximately $56,000,000 as of the Debtors' Petition Date;

- The Modulo Entities, Ms. Zhang and Mr. Rheingans-Yoo release and disclaim any and all interests in and claims related to all assets in a brokerage account, which as of December 31, 2022 held approximately $79,000, and agree to cooperate with the Debtors to facilitate the transfer of those assets to the Debtors.

- The Debtors waive, release, and disclaim any interest in and claims related to shares of Modulo, or any associated shareholder or ownership rights, they may have under the Shareholders Agreement.

- The Modulo Entities, Ms. Zhang, and Mr. Rheingans-Yoo release any claims against the Debtors arising out of or relating to the Alameda Transfers, including, without limitation, with respect to the Modulo Exchange Accounts; and

- The Debtors release any claims against the Modulo Entities, Ms. Zhang, and Mr. Rheingans-Yoo solely with respect to the Claims.

## **Basis for Relief**

### I.    **The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests.**

19.    Resolution of the Claims against the Modulo Entities through the settlement embodied in the Agreement is in the best interests of the Debtors and their estates because it will promptly return *nearly all* of the assets transferred to the Modulo Entities while avoiding the time, delay, and significant expense of litigation.  The Agreement will provide the Debtors' estates with more than $404 million in cash plus the release of $56 million in claims against the Debtors' exchanges, which constitutes 99% of the Modulo Entities' remaining assets. This level of recovery may not be achieved even if the Debtors prevail in litigation because of

the associated legal costs that would be incurred in obtaining a favorable final judgment. Settlement on these terms is plainly a reasonable exercise of the Debtors' business judgment satisfying Bankruptcy Rule 9019.

20.    Section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).  Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy."  *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).

21.    "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)).  Taken

together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

22.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).  The standard boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities."  *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

23.     The terms of the Agreement provide for the return of nearly all of the value transferred by the Alameda Debtors to the Modulo Entities while avoiding the time and expense of pursuing the Claims through litigation.  Accordingly, the compromises set forth in the Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each applicable *Martin* factor.

### A.      The Probability of Success in Litigation and Subsequent Collection.

24.      The Debtors maintain that they have meritorious claims to avoid and recover the Alameda Transfers, including as fraudulent transfers and/or preferential transfers. However, the Debtors would need to spend significant time and resources proving and obtaining a favorable judgment on the Claims.  The Modulo Entities likewise would expend significant resources on litigation that would deplete the assets available for recovery by the Debtors.  The Modulo Entities have no source of capital to satisfy any judgment other than the assets provided to them through the Alameda Transfers.  Thus, while the Debtors know the Settlement Assets can be transferred to them now, it is not clear whether a judgment would be collectible in full at a later date.  As a result, the Debtors' recovery from litigation of the Claims may not exceed the value to be realized for the Debtors' estates through the Agreement even if they pursued litigation and prevailed on every issue.

25.      Of course, the Modulo Entities also would have defenses to the Claims. Among other arguments, the Modulo Entities may contest the Debtors' assertions with respect to the nature and purpose of the transfers to Modulo, as well as whether the Alameda Debtors received reasonably equivalent value in return.

26.      Given the attendant risks of litigation, the potential diminishment of assets available in the future, and the overwhelmingly favorable terms of the settlement, the Debtors submit that the proposed Agreement is in the best interests of the Debtors' estates.

### B.      The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted.

27.      Litigation pertaining to the Debtors' Claims would be complex, expensive, and time-consuming.  Pursuit of the Claims would require litigating the sufficiency of evidence for various theories of recovery for multiple transfers during 2022, including the circumstances of each transfer and the intent of Mr. Bankman-Fried in connection with these transfers.  Mr.

Bankman-Fried and other former executives of the Alameda Debtors are unlikely to be available to testify on issues relating to the Claims in the near term due to ongoing criminal proceedings, which further complicates the litigation and timing of resolution.

28.    The Alameda Debtors' Claims also involve a series of complex contractual agreements between the Debtors and the Modulo Entities that are likely to spawn extensive discovery requests among the Parties.  All of that discovery and attendant litigation expense and delay are avoided through the Agreement.  Approval of the Agreement both maximizes the Debtors' recovery on the Claims and permits the Debtors to focus their resources on pursuing other sources of recovery for stakeholders.

**C.    The Paramount Interests of Creditors are Served.**

29.    The Agreement is in the best interests of the Debtors' creditors because it promptly brings approximately $460 million into the Debtors' estates without time-consuming and costly litigation.  This settlement—including approximately $404 million in cash—returns more than 97% of the Alameda Transfers and 99% of the assets currently held by Modulo.

30.    The Debtors have discussed the Agreement and its terms with the Committee, which has evaluated the Agreement and supports its approval.

31.    Therefore, in the Debtors' business judgment, the value of entering into the Agreement exceeds the net benefits that the Debtors and their estates potentially could obtain by pursuing litigation of the Claims.  Based on the foregoing, the Debtors submit that the Agreement satisfies the *Martin* factors and Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders.  As a result, the Debtors respectfully request that the Court authorize the Debtors to enter into the Agreement and approve its terms.

### **Waiver of Bankruptcy Rule 6004(h)**

32.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h) to the extent such stay applies.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, ample cause exists to justify a waiver of the stay period to the extent applicable.

### **Reservation of Rights**

33.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

### **Notice**

34.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel to the Modulo Entities, Ms. Zhang and Mr. Rheingans-Yoo; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: March 22, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com
      crokej@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*