## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068-JTD |
| Debtors.[1] | Jointly Administered |
| | **Re: 1136** |
| | **Objection Deadline:**<br>**April 5, 2023 at 4:00 p.m. (ET)** |
| | **Hearing Date:**<br>**April 12, 2023 at 1:00 p.m. (ET)** |

**THE AD HOC COMMITTEE OF NON-US CUSTOMERS OF FTX.COM'S
MOTION TO FILE UNDER SEAL (I) THE VERIFIED STATEMENT OF
EVERSHEDS SUTHERLAND (US) LLP AND MORRIS, NICHOLS, ARSHT &
TUNNELL LLP PURSUANT TO BANKRUPTCY RULE 2019 AND (II) THE
DECLARATION IN SUPPORT OF THE AD HOC COMMITTEE OF NON-US
CUSTOMERS OF FTX.COM'S MOTION TO FILE UNDER SEAL THE VERIFIED
STATEMENT OF EVERSHEDS SUTHERLAND (US) LLP AND MORRIS,
NICHOLS, ARSHT & TUNNELL LLP PURSUANT TO BANKRUPTCY RULE 2019**

The Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee"), by

and through undersigned counsel, hereby files this motion (this "Motion") and respectfully states as

follows:

### RELIEF REQUESTED

1.      The Ad Hoc Committee requests entry of an order, substantially in the form

attached as **Exhibit A** (the "Proposed Order"), authorizing the Ad Hoc Committee to file under

seal portions of the Ad Hoc Committee's verified statement pursuant to rule 2019 (as may be

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

amended from time to time, the "Rule 2019 Statement") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Declaration in Support of the Ad Hoc Committee of Non-US Customers of FTX.com's Motion to File Under Seal the Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* (the "Member Declaration")[2] and any other filings (together with the Rule 2019 Statement and the Member Declaration, the "Sealed Filings") that contain:

> (i) the names of the Ad Hoc Committee's members that are individual, natural born persons (the "Personally Identifying Information"); and

> (ii) the names of the Ad Hoc Committee's members that are business entities (the "Entities") (the Entities' names together with the Personally Identifying Information, the "Sealed Information").[3]

2.    In support of this Motion, the Ad Hoc Committee relies on and incorporates by reference the *Declaration of Philip James in Support of the Ad Hoc Committee of Non-US Customers of FTX.com's Motion to File Under Seal the Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* (the "Philips Declaration") and the Member Declaration.

## JURISDICTION AND BASIS FOR RELIEF

3.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for

---

[2]    The Ad Hoc Committee is requesting that the Member Declaration be sealed in order to protect the identity of the declarant for the same reasons set forth herein.

[3]    If the Court denies any portion of the relief requested in this Motion, then the Ad Hoc Committee shall file a supplemental Rule 2019 Statement within 10 days of entry of an order denying the relief requested in this Motion.  During the 10-day period, the Ad Hoc Committee will inform its Members of the Court's ruling and provide its Members with the opportunity to withdraw from the Ad Hoc Committee due to the denial of this Motion.

the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C.

§ 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The Ad Hoc Committee consents pursuant to rule 9013-1(f) of the Local Rules for

the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") to the entry

of a final order by the Court in connection with this Motion to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

5.      The statutory bases for the relief requested herein are sections 107(b) and 107(c) of

title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as supplemented by Bankruptcy Rules

9018 and 9037 and Local Rules 9018-1(d) and 9037-1.

## <u>BACKGROUND</u>

6.      The Ad Hoc Committee is a collective group of FTX customers who hold accounts

on the FTX.com platform.  The Ad Hoc Committee currently has 27 members (each a "<u>Member</u>")

serving in individual or representative capacities that together held over $2.0 billion in assets in

their FTX.com customer accounts as of the Petition Date (defined below).  The Members reside

or operate in over a dozen countries across the world and range from small individual holders and

investment funds to large institutional market makers and asset managers.  While the Ad Hoc

Committee is diverse in its composition, it is unified in its common objective of advancing the

legal rights of FTX.com customers in these cases.

7.      On November 11, 2022, and November 14, 2022 (as applicable, the "<u>Petition</u>

<u>Date</u>"), the Debtors commenced these chapter 11 cases by filing voluntary petitions with this Court

under chapter 11 of the Bankruptcy Code.

8.      On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact and Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 45] (the "Redaction Motion"), requesting authority to, among other things, redact the names and addresses of the Debtors' customers from the Debtors' creditor matrix and other filings in these chapter 11 cases.  This Court entered an order approving the Redaction Motion on an interim basis.  [D.I. 157].

9.      The Ad Hoc Committee filed a joinder in support of granting the Redaction Motion on a final basis.  [D.I. 327].

10.     On January 11, 2023, this Court held a hearing to consider approval of the Redaction Motion on a final basis (the "Second Day Hearing").  At the Second Day Hearing, the Court authorized the Debtors to continue to redact the names and addresses of customers for an additional three months.  Jan. 11, 2023 Hr'g Tr. at 102:18–108:18.  In reaching this decision, the Court ruled that the names of the Debtors' customers may remain sealed from public view pursuant to section 107(b) of the Bankruptcy Code because the customers' identities qualify as a "trade secret" of the Debtors.  *Id.* at 102:25–103:5.  The Court also commented that the names of the Debtors' individual customers are likely entitled to protection under section 107(c) of the Bankruptcy Code:

> On the 107(c) issue, as I already indicated, I do want more on that because I do want to make sure I'm protect[ing] the interests of these individuals.  And it's interesting, because if you look at 107(c), it refers to protecting information and in defining what identification means, it refers to the Criminal Code 18 -- Title 18, Section 128(d). And if you look at 128(d), it says that the information includes names, numbers, or any combination of those two that would allow the identification of an individual.  So, certainly, the Criminal Code

> recognizes that disclosure of a name could result in the identification of an individual and if that individual needs protecting, we need to make sure that that is happening. I don't have enough on the record today to say that 107(c) applies, but I want to make sure that I'm doing the right thing.

*Id.* at 103:17–104:8.

11.    On January 20, 2023, the Court entered an order approving the Redaction Motion for an additional 90 days consistent with the Court's ruling at the Second Day Hearing [D.I. 545] (the "<u>Redaction Order</u>"). The Redaction Order provides that the names, addresses, and e-mail addresses for the Debtors' customers shall be redacted from any filings with the Court or made publicly available in the Debtors' chapter 11 cases, provided that the authorization to redact the names of the Debtors' customers "who are not natural persons" is only until April 20, 2023. *Id.* at ¶ 4. The Redaction Order only authorizes these redactions in filings by the Debtors—not any party in interest. *Id.*

12.    Contemporaneously with this Motion, the Ad Hoc Committee filed the Rule 2019 Statement under seal. Pursuant to Bankruptcy Rule 2019, the sealed version of the Rule 2019 Statement includes, among other information, the Members' names and addresses in these chapter 11 cases. The Ad Hoc Committee has also filed the *Proposed Redacted Version of the Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* (the "<u>Redacted Rule 2019 Statement</u>"), which includes redactions related only to the Sealed Information, but publicly discloses each Member's disclosable economic interest.[4]

---

[4]    Some Members have provided their disclosable economic interest in an estimated, aggregate dollarized amount because the Members have been unable to access their accounts and confirm their exact holdings due to the Debtors disabling access to the FTX.com platform. To the extent that access or additional records become available and the Members can confirm their holdings, the Ad Hoc Committee will supplement the Rule 2019 Statement accordingly.

**BASIS FOR RELIEF**

13.     In bankruptcy courts, the presumptive right to access documents filed in a federal court is codified in section 107(a) of the Bankruptcy Code, which provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."  11 U.S.C. § 107(a).  *See also In re Altegrity, Inc.*, No. 15-10226-LSS, 2015 WL 10963572, at *3 (Bankr. D. Del. 2015) (noting that in bankruptcy courts, the right of access is codified in section 107(a)).

14.     The right of public access, however, "is not absolute."  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (internal citation omitted).  Section 107(b) of the Bankruptcy Code provides for exceptions to the rule and states that "the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development or commercial information."  11 U.S.C. § 107(b).  Section 107(c) further provides that a bankruptcy court may, "for cause" protect an individual from disclosure of "any means of identification" if disclosure would create an "undue risk of identity theft or other unlawful injury."  *Id.* § 107(c).  Moreover, Bankruptcy Rule 9037(d) authorizes a bankruptcy court to redact "any additional information" for cause.  Fed. R. Bankr. P. 9037(d).

15.     The Court should authorize the Ad Hoc Committee to redact the Sealed Information from the Rule 2019 Statement for several reasons.  As an initial matter, the Court has already determined that the Members' identities, as customers of the Debtors, is confidential commercial information that should remain sealed pursuant to section 107(b).  In addition, the Personally Identifying Information should remain under seal because the individual Members' names are a "means of identification" under section 107(c) of the Bankruptcy Code, which, if disclosed, would subject the individual Members to undue risk of identity theft and other unlawful injury.  The

Personally Identifying Information should also remain under seal because it is protected by foreign data privacy laws. The Entities' names should likewise remain sealed because such names constitute "confidential commercial information" under section 107(b) of the Bankruptcy Code. Alternatively, cause exists to order the redaction of the Entities' names under Bankruptcy Rule 9037(d).

A.    **The Redaction Order Authorizes Sealing the Identities of the Debtors' Customers, like the Ad Hoc Committee's Members, from Public View Because the Identities are Confidential Commercial Information.**

16.    As an initial matter, the Court already determined at the Second Day Hearing that the names of the Debtors' customers qualify as a "trade secret" of the Debtors under section 107(b) and should remain sealed from public view. Jan. 11, 2023 Hr'g Tr. at 102:25–103:5.

17.    As FTX.com customers, the Members' identities should remain sealed consistent with the Redaction Order. The Redaction Order authorizes the redaction of "the names, addresses and e-mail addresses of [the Debtors'] customers" from the Debtors' filings in these chapter 11 cases. Redaction Order at ¶ 4.

18.    There is no basis to deny the Ad Hoc Committee the same relief that the Court has already granted to the Debtors—nor is there any reason to disturb the Court's prior holding as applied to the Members. The Court correctly found that the identities of the Debtors' customers qualify as a "trade secret." *Liveware Publishing, Inc., v. Best Software, Inc.*, 252 F.Supp.2d 74, 85 (D. Del. 2003) (customer list "is precisely the type of business information which is regularly accorded trade secret status"). To the extent that the Members' identities are publicly disclosed, the Debtors lose the value of such trade secret irrespective of the nature of disclosure. Accordingly, the Court should authorize the Ad Hoc Committee to redact the names of its Members from the Rule 2019 Statement.

**B.    Alternatively, the Personally Identifying Information Should Remain Sealed Pursuant to Section 107(c) Because Disclosure of the Individual Members' Names Will Expose the Members to Undue Risk of Identity Theft and Other Unlawful Injury.**

19.    Section 107(c)(1) of the Bankruptcy Code provides that:

> The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create **undue risk of identity theft or other unlawful injury** to the individual or the individual's property:
>
> (A) **Any** means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.
>
> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1)(A)–(B) (emphasis added).

20.    Section 1028(d)(7) of title 18 of the United States Code defines "means of identification" as:

> **any name** or number **that may be used, alone** or in conjunction with any other information, **to identify a specific individual**, **including** any—
>
> (A) **name**, social security number, date of birth, official State or government issued driver's licenses or identification number, alien registration number, government passport number, employer or taxpayer identification number . . .

18 U.S.C. § 1028(d)(7)(A) (emphasis added).  The names of the individual Members are a means of identification for these Members, the disclosure of which would create an undue risk of identity theft **and** other unlawful injury.

### i. Disclosing the Personally Identifying Information Inherently Creates an Undue Risk of Identity Theft.

21.    Courts in this district and elsewhere routinely recognize that, absent any additional evidence, there is an inherent risk of identity theft that is increased by a compelled disclosure of

an individual's identifying information in bankruptcy filings.  For example, in *Endo International*,

Judge Garrity took "judicial notice of the fact that identity theft is a worldwide problem" to justify

redacting, among other information, the names, home addresses, and email addresses of individual

litigation claimants from the debtor's public filings.  *In re Endo Int'l plc*, No. 22-22549-JLG, 2022

WL 16935997, at *10–12 (Bankr. S.D.N.Y. Nov. 14, 2022).

22.     Similarly, in *Art Van Furniture*, Judge Sontchi noted that the redaction of

personally identifying information is not a "burden of proof" issue so "much as a common sense

issue."  Hr'g Tr. at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del.

Mar. 10, 2020) [D.I. 82].  Judge Sontchi found that "at this point and given the risks associated

with having any kind of private information out on the internet, [redaction] has really become

routine [and] I think obvious relief."  *Id.* at 25:13–16; *see also In re Clover Techs. Grp., LLC*, Case

No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020) [D.I. 146] ("I don't need evidence that there

is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name

and address on the internet by way of the court's electronic case filing system and, of course, the

claims agent's website . . . . The court can completely avoid contributing to the risk by redacting

the [personally identifying information.]"); *In re Forever 21, Inc.*, Case No. 19-12122 (KG)

(Bankr. D. Del. Dec. 19, 2019) [D.I. 605] (noting that "[w]e live in a new age in which the theft

of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to

have their addresses withheld").  *But see In re Celsius Network LLC*, 644 B.R. 276 (Bankr.

S.D.N.Y. 2022) (declining to authorize the debtors to redact the names of individual creditors

under section 107(c)).

23.     Accordingly, like in *Endo International* and *Art Van Furniture*, the Court should

authorize the Ad Hoc Committee to redact the Personally Identifying Information from the Rule

2019 Statement.  To hold otherwise would subject the Members to an undue and unnecessary risk of identity theft in a modern era where victims of identity theft lose an estimated $17.5 billion per year.[5]

> ### ii. *Due to the Unique Features of Cryptocurrency, Disclosing the Personally Identifying Information Creates an Undue Risk of Other Unlawful Injury to the Members.*

24.     Moreover, the risks associated with disclosure of the Personally Identifying Information are not limited to identity theft.  As the Member Declaration explains, customers of cryptocurrency exchanges are uniquely targeted by sophisticated criminals seeking to steal digital assets.  Member Declaration at ¶ 6.  Each aspect of a customer's identifying information poses serious risks due to the nature of digital assets.  Once a transfer of a digital asset is initiated, it usually is unrecoverable.  *Id.* at ¶ 5.  As a result, digital assets are a frequent target of hacking—a successful hack that initiates a transfer of the target's digital assets is an effective form of online theft.  *See* Member Declaration at ¶ 5 & 7.

25.     Every primary means of cryptocurrency theft would be made far easier to perpetrate if the Personally Identifying Information is made public.  Philips Declaration ¶ 10.  There are several common ways that thieves target cryptocurrency holders:

- **Stealing an Online Wallet.**  The most common way to steal digital assets is by stealing a digital wallet.  If a criminal knows that a person holds a wallet on a crypto exchange, as they would if the Personally Identifying Information is disclosed, then they will inevitably attempt a variety of means to access that wallet and steal the assets.  Compelling the Ad Hoc Committee's Members to disclose the Personally Identifying Information to participate in these chapter 11 cases puts a bullseye on their digital assets for criminals to target.  *Id.*

---

[5]     *See* Erika Harrell, *Victims of Identity Theft, 2016*, 2019 Bureau of Justice Statistics 1, https://www.bjs.gov/content/pub/pdf/vit16.pdf (estimating that 10% of persons 16 years of age and over reported being a victim of identity theft during a 12-month period, with total losses equaling $17.5 billion).

- **Theft of Private Keys.** A slightly more sophisticated customer can manage the private keys necessary to transact their cryptocurrency on the related blockchain in "hardware wallets." If the private keys are stolen, the wallet's contents can be emptied. A bad actor can use a Member's Personally Identifying Information and correlated additional information in a variety of ways to trick customers into surrendering their private keys, including phishing emails, phone calls, and phony donation requests. *Id.*

- **Physical Robbery.** Cryptocurrency holders have also been the victims of physical robbery. Holders can be forced to surrender hardware wallets, passwords, and other access credentials to online wallets. Sophisticated criminals easily determine the addresses of customers with only a name. Targeting of known holders of cryptocurrency to steal their wallets or keys is becoming increasingly common. In one notable case, an entrepreneur was targeted by masked robbers targeting his cryptocurrency, who physically tortured him to force him to reveal passwords to bank accounts and electronic wallets.[6] *Id.*

- **SIM Swapping.** "SIM swapping" occurs when a criminal gains access to a victim's cell phone account through an accomplice at a wireless provider. Because most providers of online wallets rely upon text messaging for security in password resets, a criminal who has obtained a SIM-swapped device can effortlessly take over any such online wallet. *Id.*

26. The mere fact that the Debtors have now disabled the FTX.com platform does little to mitigate these risks. By the Debtors' own admission, FTX.com wallets were hacked on the Petition Date, *after the Debtors froze withdrawals from the platform*, which resulted in an estimated $372 million loss. *See Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] ¶ 66. The Members remain subject to a risk of cryptocurrency theft notwithstanding the fact that the FTX.com platform is frozen. *See id.*

27. The unique risks that cryptocurrency customers face have manifested as a result of the *Celsius* decision. Cryptocurrency customers have suffered severe consequences resulting from the *Celsius* court's refusal to protect customer information contained in bankruptcy filings.

---

[6] *See, e.g.*, Zahra Tayeb, *An Entrepreneur Told Police He was Tortured for Several Hours by Masked Criminals Attempting to Steal His Bitcoin Millions*, Business Insider (Nov. 7, 2021), https://www.businessinsider.com/masked-robbers-attempted-to-steal-bitcoin-millions-from-entrepreneur-spain-2021-11.

Searchable lists of customers' names and their transaction histories were published on the internet shortly after the *Celsius* debtors made their creditor list public.[7]  Phishing scammers posed as debtors' counsel using fake email accounts from Kirkland & Ellis and requested that the customers reply with their account information.  *See* Notice of Phishing Attempts, *In re Celsius Network, LLC*, No. 22-10964-MG (Bankr. S.D.N.Y. Nov. 30, 2022) [D.I. 1527], attached hereto as **Exhibit B**.  The Philips Declaration, Member Declaration, and the fallout of the *Celsius* decision illustrate that Members would face significantly heightened risk of hacking, theft, harassment, and other unlawful injury due to the disclosure of the Personally Identifying Information.

### iii. *Foreign Data Privacy Laws Require the Ad Hoc Committee to Protect the Personally Identifying Information.*

28.    The Personally Identifying Information is also protected by foreign data privacy laws.  Some of the Ad Hoc Committee's individual Members are citizens of countries that have implemented the European Union's General Data Protection Regulation (the "GDPR"), including France, Portugal, and Poland.

29.    The GDPR protects all European Union member countries' citizens and imposes significant constraints on the "processing" of "personal data" relating to these individuals.  The GDPR applies to the processing of "personal data" of covered citizens by a "data controller" regardless of where the processing takes place.  GDPR, Art. 3. The GDPR broadly defines "personal data" as "any information relating to an identified or identifiable living ('data subject'); an identifiable natural person is one who can be identified, directly or indirectly . . . ."  GDPR, Art. 4(1).  "[P]rocessing" is broadly defined as "any operation or set of operations which is performed on personal data or on sets of personal data, whether or not by automated means, such as collection,

---

[7]    *See*, *e.g.*, Mack DeGeurin, *New Tool Shows the Biggest Losers in the Celsius Crypto Meltdown*, Gizmodo (Oct. 10, 2022), https://gizmodo.com/crypto-celsius-1849637951.

recording, organization, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, restriction, erasure or destruction of personal data by 'data controllers.'"  GDPR, Art. 4(2).

30.    A "data controller" means a "natural or legal person, public authority, agency or **other body** which . . . determines the purposes and means of the processing of personal data." GDPR, Art. 4(7).  Here, the Ad Hoc Committee is a "data controller," having received "personal data" relating to citizens covered by the GDPR, and the Ad Hoc Committee's counsel currently holds or otherwise processes such "personal data" solely on the Members' instructions.

31.    Any violation of the GDPR could result in severe fines.  Breach of the GDPR could subject the Ad Hoc Committee to a fine up to the higher of €10,000,000 or 2 percent of worldwide annual turnover of the preceding financial year.  *See* GDPR, Art. 83(5).

32.    Courts in this District have recognized the potential consequences for breaching non-U.S. privacy laws and have authorized redactions designed to ensure compliance therewith. For example, in *Forever 21*, Judge Gross found that it was not necessary to disclose the personally identifiable information of the debtors' stakeholders who are citizens of the European Union. Specifically, Judge Gross noted:

> But I'll say the GDPR contains a necessity test in its guidelines. Is disclosure necessary for the legal proceedings at hand?
>
> Clearly, disclosing home addresses is not necessary for the conduct of the bankruptcy case and the absence of the address does not prejudice anyone; indeed, there's been no objection from any creditor in this case.
>
> Finally, if a party needs home addresses for an employee and the foreign citizens and has a valid purpose, they can reach out to the debtors to seek authority from the Court, upon establishing their

> *bona fides*, and, accordingly, the debtors' motion will be granted to
> redact the home addresses.

Hr'g Tr. at 62:16–25, 63:1–3, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19,

2019) (granting a motion to redact names and addresses of individuals covered by the GDPR).

33.     In fact, several courts in this District have granted motions to redact personally

identifying information of individuals covered by foreign data protection laws. *See, e.g.*, *In re*

*Akorn, Inc.*, No. 20-11177 (KBO), at ¶ 4 (Bankr. D. Del. May 22, 2020) [D.I. 74] (authorizing

redaction of names and addresses of "individuals protected by the GDPR"); *In re VIVUS, Inc.*, No.

20-11779 (LSS) (Bankr. D. Del. July 10, 2020) [D.I. 66] (same); *In re Brooks Bros. Grp., Inc.*,

No. 20-11785 (CSS) (Bankr. D. Del. July 10, 2020) [D.I. 107] (same).  Moreover, such relief has

been granted over the objection of the United States Trustee.  *See, e.g.*, *In re Alpha Latam Mgmt.,*

*LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 2, 2021) [D.I. 159] (overruling the U.S. Trustee's

objection and authorizing redactions based on a Colombian data protection law).

34.     Accordingly, it is appropriate to authorize the Ad Hoc Committee to redact the

Personally Identifying Information from the Rule 2019 Statement under section 107(c).

**C.     The Identities of the Entities Should be Sealed Under Section 107(b) of the**
**Bankruptcy Code Because an Entity's Mere Presence on the FTX.com Platform**
**Constitutes Confidential Commercial Information.**

35.     Section 107(b) provides that "[o]n request of a party in interest, the bankruptcy court

shall . . . protect an entity with respect to a trade secret or confidential research, development, or

commercial information."  11 U.S.C. § 107(b)(1).

36.     Once the Bankruptcy Court determines that an entity is seeking protection of

information that falls within one of the categories enumerated in section 107(b) of the Bankruptcy

Code, such as confidential commercial information, "the court is required to protect a requesting

interested party and has no discretion to deny the application."  *Orion Pictures*, 21 F.3d at 27;

*accord In re Global Crossing, Ltd.*, 295 B.R. 720, 723 n.7 (Bankr. S.D.N.Y. 2003).  Moreover, the movant is not required to demonstrate "good cause" to file the relevant document(s) under seal pursuant to section 107(b).  *Orion Pictures*, 21 F.3d at 27.

37.    Courts have defined "confidential commercial information" to mean (i) "important proprietary information" that the entity "has historically sought to maintain the confidentiality of [such] information," *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 380 (D. Md. 2014) (defining "confidential commercial information" under Fed. R. Civ. P. 45(d)(3)(B)(I)), or (ii) information that would "result in an 'unfair advantage to competitors by providing them with information as to the commercial operations of the [entity],'" *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (quoting *Orion Pictures*, 21 F.3d at 27–28).  "The whole point of [section 107(b)] is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury."  *Global Crossing*, 295 B.R. at 725.

38.    Commercial information does not need to rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code.  *Orion Pictures*, 21 F.3d at 28.  It need only be confidential and commercial in nature.  *See id.* (noting that an interested party must show only that the information to be sealed is "confidential and commercial" in nature).

39.    Here, the Entities' names qualify as "confidential commercial information" because the Members' relationship with FTX.com is confidential.  As detailed in the Member Declaration, the FTX.com platform had commercial appeal to its customers because customers were able to hold and trade assets on the platform with general anonymity—a unique feature that the Members relied on when depositing their assets on the platform.  Member Declaration at ¶ 4.  The Terms of Service for FTX.com included a Privacy Policy that generally restricted the Debtors' ability to disclose customer information to third parties other than the Debtors' service providers, business

partners, and affiliates.  **Exhibit C** § 3.  Nothing in the Privacy Policy suggested that the customers'
information would ever be available to the public.  The Privacy Policy was a critical condition that
many FTX.com customers, including the Members, relied upon when they deposited their digital
assets on the Debtors' platform.  Member Declaration at ¶ 4.  The Members' reliance on the
Privacy Policy demonstrates that their presence on the FTX.com platform is "important proprietary
information" and that they have "historically sought to maintain the confidentiality of [such]
information." *Innovative Therapies*, 302 F.R.D. at 380.  The Members should not be required to
waive their contractual right to confidentiality as a condition of their participation in these
bankruptcy cases to recover their stolen assets.

40.    Relatedly, if this Motion is not granted, any goodwill remaining with the Debtors
and the value of the FTX.com platform would be further eroded.  Because the Members relied on
the Debtors' commitment to maintain the confidentiality of the Members' activity on the FTX.com
platform, compelling the Members, and similarly situated FTX.com customers, to now publicly
disclose themselves to participate in the bankruptcy case would dilute any remaining
reorganizational value of the FTX.com platform by further diminishing (if not destroying) the
customer relationships that built the platform.  *See* Jan. 11, 2023 Hr'g Tr. 8:11–14 (counsel to the
Debtors explaining that the Debtors are still exploring a potential reorganization of the Debtors'
"international platform").  As a result, compelling FTX.com customers to publicly disclose their
identities would result in potentially significant loss of the Debtors' enterprise value to the
detriment of all stakeholders.

**D.    Alternatively, "Cause" Exists to Redact the Entities' Names from the Rule 2019
Statement Pursuant to Rule 9037(d) of the Federal Rules of Bankruptcy Procedure.**

41.    In the event that this Court finds that section 107(b) does not justify sealing the
Entities' names, then this Court should nonetheless authorize the Ad Hoc Committee to seal the

16

Entities' names under Bankruptcy Rule 9037(d).  Bankruptcy Rule 9037(d) provides that the Court may, "for cause . . . require redaction of additional information." Fed. R. Bankr. P. 9037(d); *see also In re Blake*, 452 B.R. 1, 10 (Bankr. D. Mass. 2011) ("Before prohibiting public disclosure of information not delineated in the Bankruptcy Code or Rules, [ ] the bankruptcy court must first determine that cause has been established [under Bankruptcy Rule 9037(d)].").

42.     For the reasons stated in the Philips Declaration, cause exists to redact the Entities' names in the Rule 2019 Statement because the risks associated with disclosure of the Personally Identifying Information are equally applicable to disclosure of the Entities' names.  Requiring the Entities to disclose their names is tantamount to handing thieves a list of businesses to rob.  *See* Philips Declaration at ¶ 14.  Sophisticated criminals can rely on any business account holder's name to identify individual persons associated with the business, whether they be employees, directors and officers, or equity holders.  *See id.*  Upon identification, the bad actors are able to target those individuals in many of the previously discussed ways that thieves target individual cryptocurrency holders.  *See supra* ¶ 25.  Compelling disclosure of the Entities' names on FTX.com would subject the Entities to an undue risk of "unlawful injury."  Philips Declaration at ¶ 14.  The Ad Hoc Committee submits that this risk of unlawful injury constitutes "cause" that warrants redaction of the Entities' names under Bankruptcy Rule 9037(d).

43.     Accordingly, this Court should authorize the Ad Hoc Committee to redact the Entities' names in the Rule 2019 Statement pursuant to section 107(b) of the Bankruptcy Code or Bankruptcy Rule 9037(d).

## CONCLUSION

44.     For the foregoing reasons, under the unique circumstances of these chapter 11 cases, it is appropriate for the Court to authorize the Ad Hoc Committee to redact the Sealed Information

from the Rule 2019 Statement.  If the Court denies any portion of the relief requested in this Motion, then the Ad Hoc Committee shall (i) file a supplemental Rule 2019 Statement within 10 days of entry of an order denying the relief requested in this Motion and (ii) provide its Members with the opportunity to withdraw from the Ad Hoc Committee.

## **NOTICE**

45.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Debtors; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) any other party entitled to notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Ad Hoc Committee submits that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Ad Hoc Committee respectfully requests that this Court (i) grant this Motion and the relief requested herein; (ii) enter the Proposed Order attached hereto as **Exhibit A**; and (iii) grant such other and further relief as it deems just and proper.

*[Remainder of Page Intentionally Left Blank.]*

Date: March 22, 2023
Wilmington, Delaware

*/s/ Eric D. Schwartz*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com

-AND-

**EVERSHEDS SUTHERLAND (US) LLP**
Peter A. Ivanick
Sarah E. Paul
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
peterivanick@eversheds-sutherland.com
sarahpaul@eversheds-sutherland.com

-and-

Erin E. Broderick
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com

-and-

David A. Wender
Nathaniel DeLoatch
999 Peachtree St NE
Atlanta, Georgia 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
davidwender@eversheds-sutherland.com
nathandeloatch@eversheds-sutherland.com

*Counsel to the Ad Hoc Committee of Non-US*
*Customers of FTX.com*