## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date:  April 12, 2023 at 1:00 p.m. (ET)<br>Objection Deadline:  April 5, 2023 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN MYSTEN LABS, INC. AND SUI TOKEN WARRANTS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF THE SUI TOKEN WARRANTS AND (IV) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of (i) the Preferred Stock in Mysten Labs, Inc., a Delaware corporation ("Purchaser-Subject Company") and (ii) the SUI Token Warrants held by the Debtors free and

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

clear of all liens, claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement; (b) authorizing and approving the Debtors' entry into, and performance under, the Purchase and Sale Agreement, dated as of March 22, 2023, a copy of which is attached hereto as Exhibit B (the "Agreement"), between Cottonwood Grove Limited, a company incorporated under the laws of Hong Kong, FTX Trading Ltd., a company established under the laws of Antigua and Barbuda, and FTX Ventures Ltd., a BVI Business Company (each a "Seller" and together "Sellers"), on the one hand, and Purchaser-Subject Company, on the other hand; (c) authorizing and approving the assumption and assignment of the SUI Token Warrants; and (d) granting related relief.  In further support of this Motion, the Debtors submit the concurrently filed declaration of Bruce Mendelsohn attached hereto as Exhibit C (the "Mendelsohn Declaration"), which is incorporated herein by reference, and the Debtors respectfully state as follows:

## Background

1.       On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.       Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93]

(collectively, the "<u>First Day Declarations</u>").

<u>**Jurisdiction**</u>

3.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of

the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local

Rules 2002-1, 6004-1 and 9006-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the

entry of a final order or judgment by the Court in connection with this Motion to the extent it is

later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments consistent with Article III of the United States Constitution.

<u>**Facts Specific to Relief Requested**</u>

**I.      <u>Debtors' Investment in the Purchaser-Subject Company and SUI Token Warrants</u>**

4.      Prior to the Petition Date, the Debtors regularly entered into and exited

investments across a variety of asset categories, including interests in privately held companies

(including in the form of preferred stock, common stock, warrants and notes), debt and equity

securities in publicly traded companies, investments in crypto, venture capital or other

investment funds, and investments in coins, tokens and token platforms.  The Debtors also

acquired controlling or 100% interests in early-stage private companies.  The Debtors'

investments and acquisitions spanned several industries, including, among others, crypto and crypto mining, financial services, fintech, artificial intelligence, gaming, betting and social media.  A number of these assets were held purely for purposes of investment and, as a result, were meant to be monetized over time rather than integrated into the Debtors' core crypto exchange businesses conducted in the Dotcom and WRS Silos as described in the First Day Declarations.  Prior to the Petition Date, (i) the Debtors in the Alameda Silo operated quantitative trading funds specializing in crypto assets, offered over-the-counter trading services and made and managed other debt and equity investments, and (ii) the Debtors in the Ventures Silo made and managed private investments through Debtors Clifton Bay Investments, LLC, Clifton Bay Investments Ltd., FTX Ventures Ltd., Island Bay Ventures Inc. and certain affiliated non-Debtor entities.

5.      On August 2, 2022, Seller FTX Ventures Ltd., which is a Debtor entity in the Ventures Silo, acquired 560,045 shares of Series B Preferred Stock in the Purchaser-Subject Company (the "August 2 Preferred Stock") for $99,999,843.06, as well as a warrant issued by Sui Foundation to purchase 363,636,305 SUI Tokens (the "Venture Warrant") for $999,999.84. On the same date, Seller Cottonwood Grove Limited, which is a Debtor entity in the Alameda Silo, acquired a warrant issued by Sui Foundation to purchase 173,333,333 SUI Tokens (the "Cottonwood Warrant") for $500 and Seller FTX Trading Ltd., which is a Debtor entity in the Dotcom Silo acquired a warrant issued by Sui Foundation to purchase 346,666,667 SUI Tokens (the "First FTX Trading Warrant") for $500.  The Cottonwood Warrant and the First FTX Trading Warrant are only exercisable by the holders thereof upon achievement of certain milestones events with respect to the implementation of SUI protocols and trading of SUI tokens on the FTX.com platform, which have not yet occurred.  On August 31, 2022, FTX Ventures

Ltd. acquired an additional 7,000 shares of Preferred Stock in the Purchaser-Subject Company (the "August 31 Preferred Stock" and, together with the August 2 Preferred Stock, the "Preferred Stock") for $1,249,897.60, as well as a warrant issued by Sui Foundation to purchase 4,114,898 SUI Tokens (the "Second FTX Trading Warrant" and, together with the Venture Warrant, the First FTX Trading Warrant and the Cottonwood Warrant, the "SUI Token Warrants") for $11,315.97.  All of the SUI Token Warrants are only exercisable following the date that the SUI Tokens are minted, generated or created, if ever.  The Preferred Stock and the SUI Token Warrants held by the Sellers are referred to collectively as the "Interests."  Purchaser-Subject Company's Series B funding round in which FTX Ventures Ltd. participated raised approximately $300 million and valued Purchaser-Subject Company at over $2 billion.  The funding round included numerous other investors who were active in the crypto-investments space who participated on the same general terms as the Debtors.

6.    The Interests are easily separated from the Debtors' core operations, and the sale of the Interests will not affect the Debtors' abilities to operate any of their businesses. Further, since any income that might be generated by the Preferred Stock in the form of dividends or distributions is uncertain and would only be received at the discretion of the Purchaser-Subject Company's board of directors, the Preferred Stock will not generate significant value to the Debtors' estates in the short term and may not result in any additional value in the long term.  Moreover, it is uncertain whether the Debtors will ever have the right to exercise the SUI Token Warrants, and exercising the SUI Token Warrants would involve additional expenditures by the Debtors and result in the Debtors holding additional tokens of uncertain value that would need to be further monetized for the benefit of the Debtors' estates. Accordingly, the sale of the Interests for cash (fiat) consideration would maximize the value of

the Debtors' estates, and it is in the best interest of the Debtors' estates to dispose of the Interests at this time through a private sale transaction.

## II.   **Marketing Process**

7.       On March 16, 2023, Purchaser-Subject Company delivered a Letter of Intent to the Debtors with an offer to purchase the Interests for $96 million (the "Offer").  The Letter of Intent indicated that the Offer would expire on April 27, 2023, and the Purchaser-Subject Company separately discussed with the Debtors their desire to consummate a transaction expeditiously.  The Debtors considered this an attractive offer which would allow the Debtors to recover a significant amount of the value that the Debtors invested in the Interests, and with the assistance of their investment banker, Perella Weinberg Partners ("PWP"), designed a process to engage in a pre-signing market check regarding the value of the Offer and to subsequently continue to market the Interests in an efficient and competitive sales process.  PWP assisted the Debtors in an accelerated pre-signing marketing process to solicit potential acquirers of the Interests, including reaching out to potential acquirers.  In total, as of the date of this Motion, PWP reached out to 15 potential acquirers throughout the process and engaged with a subset of them who expressed interest.  *See* Mendelsohn Declaration ¶ 11-12.

8.       Following PWP's marketing campaign for the Interests, the Debtors received requests for additional information from 7 parties, 6 of whom executed non-disclosure agreements and were provided access to information on the Interests.  As of the date of this Motion, the Debtors have received an indication of interest from one other prospective purchaser of the Interests.  *See* Mendelsohn Declaration ¶ 13.

9.       The Debtors in parallel negotiated certain "go-shop" provisions in the Agreement, which will allow the Debtors to continue marketing the Interests widely, including to any prospective purchasers who receive notice of the Sale Transaction and the Agreement. Such

provision allows the Debtors to solicit higher or better offers from any third party up until the

date that a Sale Order is entered by the Court.  *See* Mendelsohn Declaration ¶ 14.

10.     After thoroughly evaluating alternatives with the assistance of PWP, the

Debtors determined that it was in the best interest of their estates and their constituents to

proceed with Purchaser-Subject Company and work toward executing a mutually-agreeable

transaction, with the expectation that the Debtors will continue marketing the Interests and

confirming that no higher and better offer exists over the course of the coming weeks.  *See*

Mendelsohn Declaration ¶ 15.

## III.    Sale Transaction

11.     On March 22, 2023, Sellers and Purchaser-Subject Company executed the

Agreement, which contains the following material terms:

| | |
|---|---|
| **Purchase Price** | The aggregate purchase price (the "<u>Aggregate Purchase Price</u>") for the Interests shall be $96,250,000 in cash, which shall be payable without any withholding or deduction. Of this amount, $95,237,684.19 will be allocated to the Preferred Stock and $1,012,315.81 will be allocated to the SUI Token Warrants. |
| **Closing Date** | The closing of the Transactions (the "<u>Closing</u>") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the second Business Day following the date on which all of the conditions to closing specified in Article 5 of the Agreement are satisfied or waived, or at such other time as Purchaser-Subject Company and Sellers shall agree in writing (the "<u>Closing Date</u>"). |
| **Assignment of Operative Document** | Upon the Closing Date, Sellers shall assign all rights and obligations under the SUI Token Warrants to Purchaser-Subject Company. |
| **Cure Costs** | Purchaser-Subject Company shall be responsible for all Cure Costs, if any, in respect of the SUI Token Warrants, which shall not be the obligation, liability or responsibility of Sellers. |
| **Mutual Release** | As set forth in section 7.4 of the Agreement, Sellers and Purchaser-Subject Company agreed to a mutual release of all claims, causes of actions, liens, rights and remedies in respect of the acquisition or ownership of the Interests, including with |

|  | respect to the terms of the Operative Documents and any potential breach thereof. The mutual release is an integral part of Purchaser-Subject Company's consummation of the Sale Transaction. |
|---|---|
| **Conditions to Closing** | There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 5 of the Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing. Sellers have obtained the consent of (i) the Purchaser-Subject Company with respect to the transfer of the Preferred Stock and (ii) the Sui Foundation with respect to the transfer of the SUI Token Warrants. The Agreement requires the entry of a Sale Order authorizing and approving the Sale Transaction prior to Closing. |
| **Transfer Taxes** | To the extent not exempt under section 1146 of the Bankruptcy Code, Purchaser-Subject Company shall pay all transfer taxes. |
| **Private Sale/Ability to Solicit Additional Bids** | The Debtors do not intend to conduct an auction for the sale of the Interests, which have been subject to marketing efforts as described herein.<br><br>However, as set forth in section 4.2(a) of the Agreement, up until the Order is entered by the Court, Sellers may solicit higher or better offers from any third parties in the form of an Alternative Transaction under the Agreement. |
| **Fiduciary Out** | The Agreement may be terminated by Sellers if Sellers or the boards of directors of Sellers determine that proceeding with the Transactions or failing to terminate the Agreement would be inconsistent with its fiduciary duties. |
| **Sale of Avoidance Actions** | Except for the Mutual Release described above, the Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| **Sale of Causes of Actions** | Except for the Mutual Release described above, the sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

12.     In addition to the material terms of the Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| | |
|---|---|
| **No Sale to an Insider** | Purchaser-Subject Company is not an insider of Sellers or any of the other Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code. *See* Local Rule 6004-1(b)(iv)(A). |
| **Agreements with Management** | Purchaser-Subject Company has not discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment. *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | As described above. *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted, as described above. *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadline** | As described above. *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None. *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchaser** | None. *See* Local Rule 6004-1(b)(iv)(G). |
| **Use of Proceeds** | None. *See* Local Rule 6004-1(b)(iv)(H). |
| **Tax Exemption** | None. *See* Local Rule 6004-1(b)(iv)(I). |
| **Record Retention** | Not applicable. The Debtors are not selling substantially all of their assets under the Agreement. *See* Local Rule 6004-1(b)(iv)(J). |
| **Sale of Avoidance Actions** | None, as described above. *See* Local Rule 6004-1(b)(iv)(K). |
| **Requested Findings as to Successor Liability** | A condition to Closing is entry of the Order, which shall provide that Purchaser-Subject Company under no circumstances shall be deemed to be a successor of the Debtors. *See* Local Rule 6004-1(b)(iv)(L). |
| **Sale Free and Clear of Unexpired Leases** | Not applicable. *See* Local Rule 6004-1(b)(iv)(M). |
| **Credit Bid** | Not applicable. *See* Local Rule 6004-1(b)(iv)(N). |
| **Relief from Bankruptcy Rules 6004(h) and 6006(d)** | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d). *See* Local Rule 6004-1(b)(iv)(O). |

13.     The Sale Transaction will also involve the assignment of Sellers' rights, titles and interests in the SUI Token Warrants to the Purchaser-Subject Company.  The Debtors are not taking a position at this time as to whether the SUI Token Warrants are executory contracts, but are seeking to assume and assign the SUI Token Warrants to the Purchaser-Subject

Company under section 365 of the Bankruptcy Code to the extent they are executory contracts and under section 363 as assets of the Debtors to the extent such agreements are non-executory. The Purchaser-Subject Company and the Sui Foundation have consented to such transfer.

**Relief Requested**

14.      By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing and approving the Sale Transaction, free and clear of all Liens (as defined in the Agreement), other than Permitted Encumbrances (as defined in the Agreement); (b) authorizing and approving the Debtors' entry into, and performance under, the Agreement; (c) authorizing and approving the assumption and assignment of the SUI Token Warrants and (d) granting related relief.

**Basis for Relief**

I.     **The Court Should Approve the Sale Under 11 U.S.C. § 363(b).**

15.      Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).  In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors, which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery*

*Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

16.    Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.    A Sound Business Justification Exists for the Sale

17.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g., In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

18.    Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction and courts in this district have held that a debtor may conduct a

private sale when a good business reason exists.  *See, e.g.*, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I. 435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited partnership interests and limited liability corporation interests for approximately $22.8 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the private sale of limited partnership interests for approximately $8 million).

19.     The proposed Sale Transaction represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. The Debtors believe that a prompt sale of the Interests will enable the Debtors to defray or avoid any operational, carrying or other expenses associated with the Interests and protect the Debtors against the potential declining value of the Interests.   Selling or transferring the Interests pursuant to the proposed Sale Transaction in a private sale is the most efficient and cost-effective means of minimizing costs to the estates while maximizing the value for the benefit of the estates.  *See* Mendelsohn Declaration ¶ 19.  Additionally, the negotiated mutual release is: (a) in exchange for the good and valuable consideration provided by Sellers and Purchaser; (b) a good faith settlement and compromise of the claims, causes of action, Liens, rights and remedies released by such releases; (c) in the best interests of the Debtors and all holders of claims and interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or their estates asserting any claim or cause of action (including all avoidance actions) released pursuant to such release.  *See* Mendelsohn Declaration ¶ 27.  As such, the Debtors submit that good business reason exists for conducting a

private sale under the circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

  B. <u>Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties</u>

   20. Notice of this Motion has been provided to the following parties:  (A) the U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (D) the non-Debtor counterparties to all executory contracts that the Debtors propose to assume or assume and assign in connection with such sale, as applicable, (E) the Purchaser-Subject Company, (F) the Sui Foundation, (G) any party that has expressed an interest in purchasing the Interests during the last six months; (H) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (I) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

  C. <u>The Sale Will Produce a Fair and Reasonable Price for the Property.</u>

   21. The Debtors believe that the sale of the Interests to Purchaser-Subject Company through a private sale is the best way to maximize value for their estates.

   22. The Debtors believe that the Purchase Price for the Interests is fair and reasonable.  The Debtors ensured that sale of the Interests would reflect their fair market value by, with the assistance of PWP, marketing the Interests and conducting arm's-length negotiations.  The Debtors carefully considered and analyzed the offer as set forth in the Agreement in comparison to its other options and concluded that a sale of the Interests will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors. The Purchase Price is equal to approximately 95% of the amount FTX Ventures

Ltd. had originally invested in the Preferred Stock of Purchaser-Subject Company, plus 100% of

the amount Sellers paid for the SUI Token Warrants.  Among the offers received by the Debtors,

Purchaser-Subject Company's offer is the highest or otherwise best offer and would provide a

greater recovery for the Debtors' estates.  *See* Mendelsohn Declaration ¶ 17.

24.    As set forth in section 4.2(a) of the Agreement, the Purchase Price is also

subject to any higher or better offers from any third party in the form of an Alternative

Transaction under the Agreement, which can be solicited up until the Order is entered by the

Court.  Further, as provided by section 6.1(g) of the Agreement, the Purchase Price is also

subject to a "fiduciary out" where the Agreement can be terminated by the boards of directors (or

similar governing bodies) of Sellers if it is determined to be inconsistent with their fiduciary

duties.  If an Alternative Transaction is received by the Debtors, Sellers have the right, but not

the obligation, to terminate the Agreement upon entering into a definitive agreement with respect

to such Alternative Transaction.  Accordingly, the Debtors submit that the proposed Sale

Transaction will produce a fair and reasonable price.

D.    <u>The Parties Have Acted in Good Faith and Purchaser-Subject Company Should
      Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy
      Code.</u>

24.    Section 363(m) of the Bankruptcy Code protects a good faith purchaser's

interest in property purchased from the debtor notwithstanding that authorization of the sale

conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section

363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

25.     Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

26.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147. To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

27.     The Debtors submit that the terms and conditions of the Agreement have been negotiated at arm's length without any indication of fraud or collusion between Sellers and Purchaser-Subject Company. Purchaser-Subject Company is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and the Debtors believe that Purchaser-Subject Company has not engaged in any conduct that would indicate or constitute a lack of good faith. *See* Mendelsohn Declaration ¶ 9. Accordingly, the Debtors request the

finding that Purchaser-Subject Company is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**II.    The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.**

28.    The Debtors also request authorization to sell the Interests free and clear of all Liens, other than Permitted Encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Interests.

29.    The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

31.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

32.     The Debtors submit that the Sale Transaction satisfies one or more of the requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have consented to the Sale Transaction, and the Interests may be sold free and clear of all liens, claims, interests and encumbrances.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the Debtor submits that any holder of liens, claims and encumbrances against or interests in the Interests could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.  *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del. 2021).

33.     A sale free and clear of all liens, claims, interests and encumbrances is necessary to maximize the value of the Interests.  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a

transfer that is free and clear of all Liens (other than Permitted Encumbrances).  Purchaser-Subject Company would not have entered into the Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchaser-Subject Company free and clear of all Liens (other than Permitted Encumbrances).  *See* Mendelsohn Declaration ¶ 22.

34.    Furthermore, any Liens (other than Permitted Encumbrances) existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Interests free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

**III.    The Assumption and Assignment of the SUI Token Warrants Should Be Approved.**

35.    Section 365 of the Bankruptcy Code provides that a debtor-in-possession may generally assume and assign any executory contract of the debtor, subject to approval of the court, if it:  (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, the applicable defaults and (b) provides adequate assurance of future performance under such contract, including by its assignee.  11 U.S.C. § 365.  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract.  *See, e.g.*, *Mission Prod. Holdings* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (noting that a bankruptcy court will generally approve a debtors' choice to assume or reject an executory contract under the deferential business judgment rule) (citation omitted); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (holding that a debtor's decision to reject an executory contract "is governed by the business judgment standard" and "can only be overturned if the decision was the product of bad faith, whim or caprice") (citations omitted).

The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract benefits the estate.  *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

36.     To the extent such agreements are executory contracts, assuming and assigning the SUI Token Warrants to Purchaser-Subject Company is an appropriate exercise of the Debtors' business judgment.  Upon consummation of the Sale Transaction, the applicable SUI Token Warrants will no longer have any value to the Debtors.  By assuming and assigning the applicable SUI Token Warrants to Purchaser-Subject Company, the Debtors will be able to avoid any damages claims that would arise from the rejection of the SUI Token Warrants.  The Debtors therefore submit that the assumption and assignment of the applicable SUI Token Warrants to Purchaser-Subject Company is an appropriate exercise of the Debtors' business judgment and should be approved.

37.     The consummation of the Sale Transaction will be contingent upon the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) requires that any outstanding defaults under the contract to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured. 11 U.S.C. § 365(b)(1).  To the Debtors' knowledge, there are no existing defaults under the SUI Token Warrants.

38.     Additionally, pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See In re Fleming Cos.*,

499 F.3d 300, 307 (3d Cir. 2007) (citing *Cinicola* v. *Scharffenberger*, 248 F.3d 110, 120 n.10 (3d

Cir. 2001)); *see also In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill.

1985) ("Although no single solution will satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of performance.") (citation omitted).  Among other

things, adequate assurance may be provided by evidencing the assignee's financial health and

experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56

B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance

where prospective assignee of lease has financial resources and expressed willingness to devote

sufficient funding to business to give it strong likelihood of succeeding).

        39.    Purchaser-Subject Company is well-suited to consummate the Sale

Transaction and satisfies the standard of providing adequate assurance of future performance.

Purchaser-Subject Company is a well-capitalized privately-held corporation.

        40.    The Debtors have received consent from the SUI Foundation, as the

counterparty to the SUI Token Warrants, with respect to the transfer and assignment of the SUI

Token Warrants to the Purchaser-Subject Company.  As a result, the Debtors do not take a

position as to whether, if the SUI Token Warrants were executory contracts, applicable law

would excuse the non-debtor counterparty to the SUI Token Warrants from accepting

performance from the Purchaser-Subject Company pursuant to section 365(c)(1) of the

Bankruptcy Code.  To facilitate the assumption and assignment of the applicable SUI Token

Warrants, the Debtors request that the Court find that, to the extent applicable law excuses the

non-debtor counterparty from accepting performance to an entity other than the debtor under

Section 365(f) of the Bankruptcy Code, then the Debtors have received applicable consent to

such assignment under section 365(c)(2).  The Debtors do not need to make a determination on,

and reserve all rights with respect to, whether provisions in the SUI Token Warrants that prohibit or restrict assignment of the SUI Token Warrants are enforceable or prohibited pursuant to section 365(f) of the Bankruptcy Code.

41.    Based on the foregoing, the Debtors' assumption and assignment of the SUI Token Warrants within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code in connection with the sale of the Interests satisfies the requirements under Section 365 of the Bankruptcy Code and should be approved.

### Bankruptcy Rules 6004(a), 6004(h) and 6006(d)

42.    The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rules 6004(h) and 6006(d).  In light of the Debtors' current financial conditions and the importance of an efficient timeline for maximizing the value of the Interests, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders. Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

### Notice

43.    Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (d) the non-Debtor counterparties to all executory contracts that the Debtors propose to assume or assume and assign in connection with such sale, as applicable; (e) the Purchaser-Subject Company; (f) the Sui Foundation; (g) any party that has expressed an interest in purchasing the Interests during the last six months; (h) any interested or affected governmental or regulatory entity, including the Internal Revenue Service,

the Securities and Exchange Commission and the United States Department of Justice; and (i)

any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit

that all parties with an interest in the Sale Transaction have been given adequate notice and that

no other or further notice need be provided.

### **No Prior Request**

44.    No prior motion for the relief requested herein has been made to this or

any other court.

### **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: March 22, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*