**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| FTX TRADING LTD., *et al.*,[1] | : | Case No. 22-11068 (JTD) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**MOTION OF THE UNITED STATES TRUSTEE TO CERTIFY DIRECT APPEAL TO**
**THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)**

Andrew R. Vara, United States Trustee for Regions Three and Nine (the "United States Trustee"), through his counsel, files this Motion (the "Motion") to enter an order certifying a direct appeal to the court of appeals under 28 U.S.C. § 158(d) of this Court's order denying the request for appointment of an examiner, Doc. 746 (the "Examiner Order"), attached as Exhibit A, on or before April 5, 2023.  In support thereof, the United States Trustee respectfully represents:

**PRELIMINARY STATEMENT**

1.      Under 28 U.S.C. § 158(d), certification of a direct appeal here will resolve a question of public importance concerning when an examiner must be appointed in a chapter 11 case.

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2.      In the words of this Court, "[t]hese cases have been described as unique, unusual, highly complex, and unprecedented. . . ." Doc. 737 (Feb. 15, 2023 Hr'g Tr.) ("2/15 Tr.") at 7:1-2.  They involve a "multi-billion dollar company built over the course of just a few years.  A spectacular crash with billions worth of assets missing, allegations of gross mismanagement and massive fraud leading to criminal indictments and investigations by numerous federal agencies." *Id.* at 7:4-8.  Debtors, with their approximately one million creditors worldwide, presented—at the very least when the petitions were filed—the "latest and the largest failure" in the cryptocurrency crisis. Doc. 142 at 12:24-13:2.  They sought bankruptcy relief amid revelations that their former management failed to exercise basic corporate controls, failed to maintain reliable financial information, and used software to conceal their misuse of customer funds, among other alleged misdeeds.  Doc. 24 ¶¶ 4, 65.

3.      The Bankruptcy Code provides that if the other statutory requirements are met, the court "shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate," if "the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. § 1104(c)(2). Because these cases exemplify circumstances that call for the appointment of an independent fiduciary to investigate and publicly report on the findings, the United States Trustee moved for the appointment of an examiner. Doc. 176.  The United States Trustee maintained that appointment was mandatory under 11 U.S.C. § 1104(c)(2) because the Debtors' fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, met the statutory threshold.

4.      The only reported appellate decisions on this issue agree that appointment of an examiner is mandatory when the statutory requirements under section 1104(c)(2) are met. *See,*

*e.g.*, *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500-01 (6th Cir. 1990); *Walton v. Cornerstone Ministries Invs., Inc.*, 398 B.R. 77, 82-84 (N.D. Ga. 2008).  The Third Circuit has not had occasion to address the question, however.  Its resolution is important not only to this case but also to the public, because of the relevance of an examiner's report to the greater cryptocurrency industry and because this issue arises in other contexts.  And this appeal would permit the Third Circuit to resolve the conflict between this Court and the out-of-circuit decisions on the question presented.  Each of these reasons independently warrants certification of this appeal for direct appeal to the Third Circuit.

### JURISDICTION, VENUE, AND STANDING

5.    This Court has jurisdiction over these cases under 28 U.S.C. § 1334.  This Court is authorized to hear and determine the Motion under 28 U.S.C. § 157(a)-(b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012.  Venue of the cases is proper in this District under 28 U.S.C. § 1408(1).

6.    Under 28 U.S.C. § 586, the United States Trustee is charged with monitoring the federal bankruptcy system.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Revco*, 898 F.2d at 500 (describing the United States Trustee as a "watchdog").  The United States Trustee is charged with "monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress."  28 U.S.C. § 586(a)(3)(G).

7.    The United States Trustee has standing to be heard with respect to the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND FACTS

8.      On November 11 and 14, 2022, FTX Trading Ltd. and its debtor-affiliates filed

the voluntary petitions that initiated these cases.

9.      Roughly one week after the petition date, the Debtors' newly appointed CEO,

John J. Ray III, submitted a declaration in support of the petitions.  Doc. 24.  He represented that

he had never "seen such a complete failure of corporate controls and such a complete absence of

trustworthy financial information as occurred here."  *Id.* ¶ 5.

10.      Debtors' corporate failings, as described by Mr. Ray, included, among other

things:

      a.   the lack of "appropriate corporate governance," including the lack of any
           board meetings for certain entities, *id.* ¶ 46;

      b.   the "absence of lasting records of decision-making," *id*. ¶ 71;

      c.   the lack of any accounting department, *id*. ¶ 58;

      d.   the lack of any audited financial statements for some of the FTX entities, *id.*
           ¶ 57;

      e.   questionable audited financial statements, in which Mr. Ray had no
           confidence, for the remaining FTX entities, *id.* ¶¶ 55-56;

      f.   the lack of centralized cash control, including maintenance of an accurate list
           of bank accounts and account signatories, such that FTX did not know how
           much cash it had when it filed for bankruptcy relief, *id.* ¶¶ 50 & 52;

      g.   the lack of "appropriate books and records, or security controls, with respect
           to [FTX's] digital assets," which were primarily controlled by the Debtors'
           former CEO, Samuel Bankman-Fried and his co-founder, such that FTX could

locate and secure "only a fraction of" those assets, *id.* ¶ 65-66;

h. the lack of complete books and records for the "billions in investments" in FTX's non-cryptocurrency assets, *id.* ¶ 69;

i. the lack of appropriate disbursement controls, *id.* ¶ 62;

j. insufficient attention to the creditworthiness of its banking partners and failure to forecast liquidity, *id.* ¶¶ 50 & 54; and

k. the lack of proper human resources records, leading to FTX's inability to compile a complete list of its employees or the terms of their employment, *id.* ¶ 59.

11.    In addition to the lack of controls or proper corporate management, Mr. Ray also identified alleged instances of active corporate malfeasance or criminal conduct.  For example, he cited:

a.  FTX's use of "software to conceal the misuse of customer funds," *id.* ¶ 65;

b. unauthorized cryptocurrency transfers of at least $372 million on the petition date, *id.* ¶ 66;

c. post-petition dilutive "minting" of approximately $300 million in FTX's token by an  "unauthorized source," *id.* ¶ 66; and

d. the use of FTX corporate assets to purchase homes and other personal items for employees and advisors, with no records reflecting the extension of a loan and, in some cases, recording the real estate in the individuals' personal names, *id.* ¶ 63.

12.    After the petition date, Mr. Bankman-Fried was indicted for counts related to fraud, money laundering, and campaign finance offenses.  *See*

https://www.justice.gov/opa/pr/ftx-founder-indicted-fraud-money-laundering-and-campaign-finance-offenses.  As alleged in the indictment, Mr. Bankman-Fried defrauded FTX customers by, among other things, misappropriating billions of dollars from their FTX funds, and defrauded lenders by concealing his misuse of customer deposits.  *Id.*  FTX co-founders other than Mr. Bankman-Fried have pleaded guilty to related charges.  *United States v. Bankman-Fried*, 1:22-cr-673 (S.D.N.Y.) (minute entries of Dec. 19, 2022 & Feb. 28, 2023).

13.     Two weeks after Mr. Ray filed his declaration in support of the petitions, the United States Trustee moved for the appointment of an examiner under 11 U.S.C. § 1104(c). Doc. 176.  He requested mandatory appointment of an examiner under 11 U.S.C. § 1104(c)(2) because it appeared from FTX's petition and Mr. Ray's declaration that the fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, of at least some of the Debtors exceeded $5 million.  Doc. 176 ¶¶ 32-34.  He alternatively argued that, even if it were not mandated, the appointment of an independent examiner was in the best interests of creditors under 11 U.S.C. § 1104(c)(1).  Doc. 176 ¶¶ 35-38.

14.     Others supported the United States Trustee's examiner motion.  The state of Wisconsin and the Vermont Department of Financial Regulation filed joinders to the examiner motion.  Docs. 263 & 339.  The Texas State Securities Board and Texas Department of Banking also joined the examiner motion and included letters of support from the regulatory authorities of 15 states and Washington, D.C.  Doc. 600.

15.     Debtors and the unsecured creditors' committee (the "Committee") objected to the examiner motion.  Docs. 571 & 573.  The Bahamian joint provisional liquidators of FTX Digital Markets Ltd. (the "JPLs," and collectively, with the other objecting parties, "the Objectors") also filed a limited objection.  Doc. 572.  The Objectors did not dispute that an

investigation was warranted but expressed their view that investigations were being conducted by FTX (headed by Mr. Ray) and the Committee, in addition to whatever investigations might be conducted by state and federal governmental authorities.  Doc. 571 at 8-13; Doc. 572 at 2; Doc. 573 at 16-17.

16.    The Objectors argued that the standard under section 1104(c)(1) was not met. They claimed that the appointment of an examiner was not in the best interests of creditors and other parties in interest due to what they contended would be additional related costs, duplication of efforts, and delay.  Doc. 571 at 8-13; Doc. 572 at 3-7; Doc. 573 at 16-23.

17.    The Objectors also argued that section 1104(c)(2) did not mandate the appointment of an examiner, regardless of whether the criteria were met.  Doc. 571 at 13-15; Doc. 572 at 4 n.4; Doc. 573 at 13-15.  Their argument was premised on the paragraph of section 1104 which states that "the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate*" if the criteria of subsections (1) or (2) are met.  11 U.S.C. § 1104(c) (emphasis added).  The Objectors argued that the "as is appropriate" language gave this Court the discretion to determine, even in cases in which the section 1104(c)(2) debt threshold is met, whether the appointment of an examiner is warranted under the facts of a particular case.  Doc. 571 at 14; Doc. 572 at 3; Doc. 573 at 13-14.

18.    The United States Trustee filed a reply reiterating why the appointment of an examiner was mandatory under the plain meaning of the statutory language and, to the extent there was any ambiguity, according to the legislative history of the provision that was ultimately enacted.  Doc. 601 at 5-17.  He also reiterated in the alternative that even if an examiner appointment were not mandatory, an investigation by a neutral and independent examiner was in the best interests of the parties.  *Id*. at 17-18.

19.     At the February 6, 2023 hearing on the United States Trustee's motion, the

Objectors stipulated that they were not contesting the motion on the basis that the statutory

$5 million debt threshold had not been met under section 1104(c)(2).  Doc. 632 (Feb. 6, 2023

Hr'g Tr.) ("2/6 Tr.") at 6:11-22; *see also* Doc 620 (Final Pretrial Order) at § II.D.1.  This Court

then heard testimony from Mr. Ray and arguments from counsel.

20.     On February 15, 2023, this Court issued a bench ruling denying the United States

Trustee's motion under both sections 1104(c)(1) and (c)(2).  This Court held that the additional

costs of an examiner's investigation was not in the best interests of creditors under section

1104(c)(1).  2/15 Tr. at 10:6-8.

21.     This Court also held that appointment of an examiner under section 1104(c)(2)

was not mandatory, because the "as appropriate" language in section 1104(c) "permits a

Bankruptcy Court to deny the appointment of an examiner in limited circumstances even if the

debtor meets the debt requirements of [section 1104](c)(2)."  *Id.* at 11:25-12:5.

22.     The Examiner Order was entered on the docket on February 21, 2023.  Doc. 746.

23.     The United States Trustee timely filed a notice of appeal on March 6, 2023.  Doc.

805.

## QUESTION PRESENTED AND RELIEF SOUGHT

24.     The United States Trustee's appeal of the Examiner Order raises the question of

whether this Court erred in denying the motion to appoint an examiner under 11 U.S.C.

§ 1104(c)(2) when it is uncontested that the Debtors' fixed, liquidated, unsecured debts, other

than debts for goods, services, or taxes, or owing to an insider, meets the $5 million threshold.

25.     The United States Trustee asks this Court to certify the Examiner Order for direct

review by the Third Circuit.

26.    Further, the United States Trustee asks this Court to rule on this Motion on or before April 5, 2023.  Under Rule 8006, April 5 is the last day this Court may certify the question presented for appeal to the Third Circuit; starting on April 6, only the district court can grant that relief.

### REASONS WHY THE DIRECT APPEAL SHOULD BE ALLOWED

27.    Under 28 U.S.C. § 158(d)(2), an appeal of an order issued by a bankruptcy court may be heard directly by the court of appeals if the order is certified for direct appeal and the court of appeals accepts the appeal.  "The twin purposes of th[is] provision [are] to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw has been plagued by indeterminacy."  *In re Pacific Lumber Co*., 584 F.3d 229, 241-42 (5th Cir. 2009).

28.    The statute is written in the disjunctive and thus states four independent criteria under which direct review is appropriate.  Direct review is warranted if the order (1) "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," 28 U.S.C. § 158(d)(2)(A)(i), or (2) "involves a matter of public importance," 28 U.S.C. § 158(d)(2)(A)(i), or (3) "involves a question of law requiring resolution of conflicting decisions," 28 U.S.C. § 158(d)(2)(A)(ii), or if (4) "an immediate appeal . . . may materially advance the progress of the case," 28 U.S.C. § 158(d)(2)(A)(iii).

29.    Any one of the four criteria is sufficient to certify an order for direct appeal. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike [28 U.S.C.] § 1292(b), which permits certification only when three enumerated factors suggesting importance are all present, § 158(d)(2) permits certification when *any one of* several such factors exists. . . .") (emphasis

9

added).  Notably, none of these factors require this Court to agree that the appeal is meritorious.  Only the first and third factors directly relate to the merits, and they look only to whether the appeal presents a question of law for which there is no controlling appellate precedent or on which there are conflicting decisions.

30.     The statute provides that if this Court determines that one of the four listed circumstances exists, then it "*shall* make the certification." 28 U.S.C. § 158(d)(2)(B) (emphasis added).  Thus, "[c]ertification is mandatory where a single condition is satisfied under 28 U.S.C. § 158(d)(2)(B)."  *In re Trib. Media Co.*, C.A. No. 15-1116-GMS, 2016 WL 1451161, at *4 (D. Del. Apr. 12, 2016); *see also In re IMMC Corp.*, Civ. No. 15-1043 (GMS), 2016 WL 356026, at *6 (D. Del. Jan. 28, 2016) (holding certification was "required" where one of the criteria was met); 1 *Collier on Bankruptcy* ¶ 5.06[3] (16th ed. 2022) ("court must [certify] on request of one or more of the parties if it determines that [at] least one of the conditions specified in section 158(d)(2)(a)(i), (ii) or (iii) exists").

31.     The United States Trustee's appeal satisfies three of the statutory tests for direct certification: (i) there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States governing the statutory interpretation of section 1104(c)(2); (ii) the appeal involves a matter of public importance; and (iii) the appeal will resolve a conflict between this Court's decision and the reported appellate decisions construing the same language. 28 U.S.C. § 158(d)(2)(A)(i)-(ii).  As such, his appeal should be certified for direct review under the statute.

A.    **The United States Trustee's Appeal Involves Legal Questions as to Which There Is No Controlling Precedent.**

32.    This appeal raises the purely legal issue of whether a bankruptcy court retains discretion under 11 U.S.C. § 1104(c)(2) to decline to appoint an examiner upon request when the statutory debt threshold is met.

33.    Section 1104(c) reads in its entirety as follows:

If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court *shall* order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, *if--*

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; *or*

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

34.    The United States Trustee posits that the statutory language under section 1104(c)(2) mandates the appointment of an examiner when the following statutory criteria are satisfied: (i) a trustee has not been appointed; (ii) a plan has not been confirmed; (iii) the United States Trustee or other party in interest has requested the appointment of an examiner; and (iv) the statutory debt threshold is met.  Doc. 176 ¶¶ 32-34.  Among other authorities, the Sixth Circuit agreed with this interpretation in *In re Revco D.S., Inc.*, 898 F.2d 498, 500-01 (6th Cir. 1990) ("[Section 1104(c)(2)] plainly means that the bankruptcy court 'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million if the U.S. trustee requests one.").  The Objectors and this Court disagreed with this legal position.  Doc. 571 at 14; Doc. 572 at 3; Doc. 573 at 13-14; 2/15 Tr. at 11:25-12:5.

35.    As this Court noted, the "Sixth Circuit is the only Circuit Court of Appeals to consider the issue."  2/15 Tr. at 11:25-12:1.  Neither the Third Circuit nor the Supreme Court has addressed the purely legal question of whether section 1104(c)(2) grants discretion to bankruptcy courts to decline to appoint an examiner when the statutory criteria are otherwise met. Consequently, this appeal "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," and thus qualifies for mandatory certification for direct review under 28 U.S.C. § 158(d)(2)(A)(i).  *See In re Essar Steel Minnesota LLC*, No. 19-397 (LPS), 2020 WL 3574743, at *6 (D. Del. July 1, 2020) (certifying appeal where there was no "binding decision of the Third Circuit or Supreme Court [that] unambiguously answer[s]" the "open legal issues" identified in the appeal); *In re IMMC Corp.*, 2016 WL 356026 at *4-6 (certifying appeal for direct review where there was no "controlling decision" on interpretation of specific statutes); *In re Trib. Media Co.*, 2016 WL 1451161 at *3-4.

**B.    The Appeal Involves a Matter of Public Importance.**

36.    Certification is also independently required because this appeal "involves a matter of public importance."  28 U.S.C. § 158(d)(2)(A)(i).

37.    An issue on appeal constitutes a matter of "public importance" if it "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case."  *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (quoting 1 *Collier on Bankruptcy* ¶ 5.05[A] (15th ed. rev. 2003)). Public importance may be seen from an appeal that impacts "the public at large" rather than only the parties.  *In re Aerogroup Int'l, Inc.*, C.A. No. 19-648 (MN), 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020).  It can stem from an issue that will impact the vital interest in an industry or community.  *See Jaffe v. Samsung Elecs. Co., Ltd. (In re Qimonda AG)*, 470 B.R. 374, 388 (E.D.

Va. 2012) (finding "public importance" criterion satisfied from the "substantial ramifications that any decision will cause in the semiconductor industry and for businesses in any industry that heavily rely on patent licensing agreements").  And public importance can rise where the outcome of the dispute receives "substantial public scrutiny."  *In re Nortel Networks Inc.*, Nos. 15-624 (LPS) *et al.*, 2016 WL 2899225, at \*5 (D. Del. May 17, 2016).

38.     This appeal qualifies as a matter of public importance given the immense public interest in these cases and the wider implications that the Debtors' collapse may have for the crypto industry.  Allowing an examiner to prepare a report in these cases also could affect policy responses concerning the cryptocurrency industry.  As such, the appeal qualifies as a matter of public importance under 28 U.S.C. § 158(d)(2)(A)(i).

39.     Additionally, public importance exists "where resolution of the issue has important practical ramifications," *Aerogroup*, 2020 WL 757892 at \*5 (quotation marks omitted), or in an appeal that "aid[s] in upholding fundamental bankruptcy protections," *Essar Steel*, 2020 WL 3574743 at \*6.  Congress adopted the mandatory appointment of an examiner as a form of "special protection" in large chapter 11 cases "having great public interest."  Senate Debate on Compromise Bill, 124 Cong. Rec. S17404 (daily ed. Oct. 6, 1978), *reprinted in Collier on Bankruptcy*, App. Pt. 4(f)(iii) (16th ed. 2022).  But, as reflected in this Court's bench ruling, examiner motions in other bankruptcy cases in this district have been raised and rejected even though the mandatory statutory prerequisites were met.  2/15 Tr. at 12:16-13:5 (citing cases); *see also* Doc. 571, Ex. A-K (transcripts of bench rulings); Doc. 576, Ex. 1-9 (same).  The legal question posed by this appeal—one that implicates an important bankruptcy protection—is not unique to the facts of this case; rather, it has arisen before and will arise again in cases in

which the statutory criteria are met.  Clarity from the Third Circuit will benefit parties to bankruptcy cases beyond this one.

**C.    Direct Review Will Help Resolve of Conflicting Decisions.**

40.    Although there is no conflict within this circuit, review would help resolve "conflicting decisions" between this Court and other jurisdictions regarding the question presented.  28 U.S.C. § 158(d)(2)(A)(ii).  Although this Court and the United States District Court for the District of Delaware have held an inter-circuit conflict does not trigger § 158(d)(2)(A)(ii)—*see In re Goody's Family Clothing, Inc.*, No. 09-409 (RMB), 2009 WL 2355705, at *2 (D. Del. July 30, 2009); *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 714 (Bankr. D. Del. 2016)—the Third Circuit itself has not defined the type of split that does.

41.    All reported out-of-circuit appellate decisions have concluded that section 1104(c)(2) mandates the appointment of an examiner when the $5 million threshold is met.  *See*, *e.g.*, *Revco*, 898 F.2d at 500-01; *Walton*, 398 B.R. at 82-84.  Indeed, this Court acknowledged that "there is a split of authority over whether [section] 1104(c)(2) leaves any discretion on the appointment of an examiner."  2/15 Tr. at 11:10-12.  The Third Circuit's resolution of the question presented would provide definitive guidance to which side of the split this Court should adhere going forward.

**D.    This Court Should Rule on This Motion On or Before April 5, 2023.**

42.    Under Rule 8006(b), a certification must be filed "with the clerk of the court where the matter is pending.  For purposes of this rule, a matter remains pending in the bankruptcy court for 30 days" after the notice of appeal is filed.  Because the United States Trustee filed his notice of appeal on March 6, this Court is the proper venue for this motion.  Fed. R. Bankr. P. 8006(f)(1).  Courts have held, however, that a bankruptcy court loses authorization to consider a certification motion after the 30-day period.  *See Secs. Inv. Protection*

*Corp. v. Bernard L. Madoff Inv. Secs. LLC*, Adv. P. Nos. 08-01789 (SMB) & 11-02760 (SMB), 2017 WL 3084395, at *2 (Bankr. S.D.N.Y. July 19, 2017); *see also* Fed. R. Bankr. P. 8006(d). Accordingly, the United States Trustee requests this Court rule on this Motion on or before April 5. The United States Trustee will file a motion to expedite consideration of this Motion shortly.

## CONCLUSION

43.    For each of these reasons, this Court should grant this Motion and certify the Examiner Order for direct appeal by the Third Circuit Court of Appeals on or before April 5, 2023.

Dated: March 23, 2023
Wilmington, Delaware

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE, Regions 3 and 9

By: */s/Juliet Sarkessian*
     Juliet M. Sarkessian
     Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
SUMI K. SAKATA
Trial Attorneys
Department of Justice
Executive Office for United States
  Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
(202) 307-1399
Fax:  (202) 307-2397
frederick.g.hall@usdoj.gov
sumi.sakata@usdoj.gov

ANDREW R. VARA
United States Trustee, Regions 3 and 9
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
JULIET M. SARKESSIAN
BENJAMIN A. HACKMAN
Trial Attorneys
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
juliet.m.sarkessian@usdoj.gov
benjamin.a.hackman@usdoj.gov

DAVID GERARDI
ROBERT J. SCHNEIDER, JR.
Trial Attorneys
Department of Justice
Office of the United States Trustee
One Newark Center
1085 Raymond Boulevard, Suite 2100
Newark, NJ  07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
david.gerardi@usdoj.gov
robert.j.schneider@usdoj.gov