IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: April 12, 2023 at 1:00 p.m. ET<br>Obj. Deadline: March 29, 2023 at 4:00 p.m. ET |

## DEBTORS' RESPONSE TO SAMUEL BANKMAN-FRIED'S MOTION FOR RELIEF FROM AUTOMATIC STAY

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this response (the "Response") to the *Motion of Samuel Bankman-Fried for Relief from the Automatic Stay, to the Extent Applicable, to Permit Insurers to Advance and/or Reimburse Defense Costs and Fees Under Directors and Officers Insurance Policies* (the "Motion") [D.I. 964]. In support of the Response, the Debtors respectfully state as follows:

        1.     By the terms of the policies, the Debtors are contractually bound not to oppose efforts to seek relief from the automatic stay with respect to the proceeds of their directors and officers liability insurance policies[2] (the "D&O Policies"). In relevant part, the D&O Policies provide: "In the event a . . . reorganization proceeding is commenced by or against a Company pursuant to the United States Bankruptcy Code," all Insureds are contractually obligated "not to

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    The relevant policies are: (1) the Private Company Management Liability Policy, issued by Relm Insurance Ltd. to West Realm Shires, Inc., Policy No. RILPDO3922022; and (2) the Excess Claims Made Directors and Officers Liability Insurance Policy, issued by certain Beazley Syndicates to West Realm Shires, Inc., Policy No. B0146ERUSA2201490.

{1368.002-W0070399.}

oppose or object to any efforts by . . . any Insured to obtain relief from any" "automatic stay or injunction." (Relm D&O Policy[3] [D.I. 964-4] T&C § XXII.)  This provision does not, however, prevent the Debtors from filing this Response to (1) correct Mr. Bankman-Fried's misstatements and (2) urge that, if this Court is inclined to grant the Motion, the relief should be fashioned to permit the insurers to pay *all* Insureds, rather than solely Mr. Bankman-Fried, according to a fair and equitable distribution of those insurance proceeds.[4]

2.      The D&O Policies provide $10 million in aggregate insurance limits for Debtor West Realm Shires, Inc. and its direct and indirect subsidiaries.[5]  That $10 million in limits is shared across three broad categories of coverage:  (1) coverage for insured persons—including all directors, officers, and employees—for covered losses that are not advanced or indemnified by a company; (2) coverage for insured entities, including Debtor West Realm Shires, Inc. and all of its subsidiaries, for amounts paid as advancement or indemnification to or on behalf of their directors, officers, and employees; and (3) coverage for insured entities for Claims, shareholder derivative demands, and books and records requests against those entities.  (Relm D&O Policy [D.I. 964-4] Directors and Officers Liability Coverage Part § I.)

3.      As Mr. Bankman-Fried acknowledges, where, as here, liability insurance policies "provide[] direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate

---

[3]  Capitalized terms not defined herein are defined as in the Motion.

[4]  Nor does this provision, as the Motion (at 9) claims, "obligat[e]" the Debtors affirmatively "to cooperate with Mr. Bankman-Fried" by stipulating to anything, let alone the inappropriate relief sought by the Motion.

[5]  A separate D&O liability insurance tower, which is not at issue in the Motion, provides separate insurance limits to directors and officers of certain other Debtors.

to the extent the policy actually protects the estate's other assets from diminution." (Mot. at 10 (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010).)

        4.      Mr. Bankman-Fried's claim that depletion of the D&O Policies would not have an adverse effect on the Debtors' estates is flat wrong. Here, Covington & Burling LLP is retained as an ordinary course professional of the Debtors to represent certain current or former employees of the Debtors in connection with ongoing investigations by the U.S. government, as well as related inquiries from counsel for the Debtors and other third-parties. As noted, this type of advancement is covered under the D&O Policies, so proceeds paid to Mr. Bankman-Fried could instead go toward reimbursing the Debtors. Further, an adversary proceeding has been filed against Debtor West Realm Shires, Inc. *See Onusz v. West Realm Shires Inc. et al.*, No. 22-ap-50513 (JTD) (Bankr. D. Del. Dec. 27, 2022). To the extent the Debtors incur legal fees associated with defending that proceeding, the Debtors would be entitled to seek coverage under the D&O Policies.

        5.      Mr. Bankman-Fried misrepresents the D&O Policies' terms when he states that the insurance proceeds cannot be used for any purpose other than covering Mr. Bankman-Fried's fees because "the priority-of-payments provision clarifies that all Side A coverage claims—including Mr. Bankman-Fried's claims for Defense Costs—must be paid in full *before* the policy proceeds can be used to satisfy claims under any other coverage." (Mot. at 10.) But the priority-of-payments provision applies only once the total loss for which coverage is sought exceeds the amount of insurance available under the policy:

> **If the Loss due and owing by the Insurer under a Liability Coverage Part exceeds the then-remaining Limit of Liability applicable to such Loss**, the Insurer shall pay such Loss, subject to the applicable Limits of Liability, in the following priority:
>
> 1. First, the Insurer shall pay such Loss which is Non-Indemnifiable Loss incurred by Insured Persons;

      2. Second, the Insurer shall pay all other Loss covered under the Liability Coverage Part.

(Relm D&O Policy [D.I. 964-4] T&C § XIX (emphasis added).) Before that happens, the Insurer is well within its rights to pay other categories of coverage. The Motion provides no information as to the amount of legal fees for which coverage has been sought under the D&O Policies. Thus, Mr. Bankman-Fried has not established that the priority-of-payments provision is even relevant. Mr. Bankman-Fried is likewise wrong that the Debtors' interests in the D&O Policy proceeds are "clearly subordinate to the Defense Costs of Mr. Bankman-Fried" as a result of the priority-of-payments provision. (Mot. at 14.)

      6.     Mr. Bankman-Fried is also wrong in claiming that coverage for the Debtors' estate is "hypothetical or speculative" and that the Debtors "have no present contractual interest in the proceeds of the D&O Policies." (*Id.*) As noted above, the Debtors have retained pool counsel to represent certain current or former employees of the Debtors, whose fees are an insurable expense.

      7.     Finally, the Debtors believe that the relief requested in the Motion, and the Proposed Order filed therewith, inappropriately seeks relief only with respect to payment of insurance proceeds *to Mr. Bankman-Fried*. To be clear, the Debtors cannot and thus do not oppose lifting the automatic stay. But multiple other current and former directors, officers, and employees are facing government inquiries and other claims covered by the D&O Policies. All are looking to the same, limited insurance. It would be unfair, inequitable, and contrary to the interests of justice to allow Mr. Bankman-Fried to drain the D&O Policies for his sole benefit. Thus, if the Court is inclined to lift the automatic stay or rule that the D&O Policies' proceeds are not property of the Debtors' estates, the Debtors submit that the Court should enter relief broad enough to allow

the insurers to pay any or all Insureds, pursuant to the terms and conditions of the Policies, and not just Mr. Bankman-Fried.

| | |
|---|---|
| Dated: March 29, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>            brown@lrclaw.com<br>            pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>            bromleyj@sullcrom.com<br>            gluecksteinb@sullcrom.com<br>            kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |