**EXHIBIT 4**

**In re Calpine Corp., Case No. 05-60200 (CGM) (Jun. 28, 2007) [Docket No. 5113]**

Hearing Date:  July 24, 2007 at 2:00 p.m. (EST)
Objection Deadline:  July 16, 2007 at 4:00 p.m. (EST)
Reply Deadline:  July 20, 2007 at Noon (EST)

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Edward O. Sassower (ES 5823)

Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Calpine Corporation, et al., | ) | |
| | ) | Case No. 05-60200 (BRL) |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C.**
**§§ 105(a) AND 363(b) AND BANKRUPTCY RULE 9019(a) TO APPROVE A**
**SETTLEMENT WITH THE CALPINE CANADIAN DEBTORS AND FOR OTHER**
**RELIEF**

PLEASE TAKE NOTICE that at **2:00 p.m. (EST)** on **July 24, 2007**, the Debtors, by

their counsel, shall appear before the Honorable Judge Burton R. Lifland, at the United States

Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House,

One Bowling Green, New York, New York 10004-1408, Room 623, or soon thereafter as

counsel may be heard (the "Hearing"), and present the Debtors' Motion for an Order Pursuant to

11 U.S.C. §§ 105(a) and 363(b) and Bankruptcy Rule 9019(a) to Approve a Settlement With the

Calpine Canadian Debtors and for Other Relief (the "Motion").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Court-to-Court Protocol

approved by this Court on April 12, 2007 [Docket No. 4309] the Hearing will be a joint

videoconference hearing between Judge Lifland and the Honourable Madam Justice B.E.C. Romaine of the Court of Queen's Bench of Alberta, Judicial District of Calgary, Court House, 611 - 4 St. S.W., Calgary, Alberta, presiding over the Canadian insolvency proceedings instituted by certain Calpine subsidiaries and affiliates under the *Companies' Creditors Arrangement Act*.

PLEASE TAKE FURTHER NOTICE that you need not appear at the Hearing if you do not object to the relief requested in the Motion.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a subsequent hearing.

PLEASE TAKE FURTHER NOTICE that the Motion may be examined and inspected by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Prevailing Eastern Time), during the days when the Court is in session, at the offices of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408, or viewed online at http://www.nysb.uscourts.gov/.

PLEASE TAKE FURTHER NOTICE that the Motion and related documents may be viewed at www.kccllc.net/calpine/canadasettlement.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov/, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (in either case, with a hard copy delivered directly to Chambers) and shall be

served upon: (a) counsel to the Debtors, Kirkland and Ellis LLP, Citigroup Center, 153 East 53rd

Street, New York, New York 10022, Attn.: Edward Sassower; (b) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004, Attn.: Paul Schwartzberg, (c) counsel to the Unofficial Committee of Second Lien

Debtholders, Paul Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, New

York, NY 10019-6064, Attn.: Alan W. Kornberg, Andrew N. Rosenberg, Elizabeth R. McColm;

(d) counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld

LLP, 590 Madison Avenue, New York, New York 10022-2524, Attn.: Michael S. Stamer, Philip

C. Dublin, Alexis Freeman; (e) counsel to the Official Committee of Equity Security Holders,

Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York

10004, Attn.: Matthew Gluck; (f) Canadian counsel to the Canadian Debtors, Goodmans LLP,

250 Yonge Street, Toronto, Canada M5B 2M6, Attn: Jay A. Carfagnini; and (g) U.S. counsel to

the Canadian Debtors, Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New

York, New York 10022, Attn: Philip D. Anker, so as to be received no later than **4:00 p.m.**

**(EST) on July 16, 2007** (the "Objection Date").

Dated: June 28, 2007               Respectfully submitted,
      New York, New York

                                 /s/ David R. Seligman
                               Richard M. Cieri (RC 6062)
                               Marc Kieselstein (admitted pro hac vice)
                               David R. Seligman (admitted pro hac vice)
                               Edward O. Sassower (ES 5823)
                               KIRKLAND & ELLIS LLP
                               153 East 53rd Street
                               New York, New York 10022-4611
                               Telephone: (212) 446-4800
                               Facsimile: (212) 446-4900

                               Counsel for the Debtors

Hearing Date:  July 24, 2007 at 2:00 p.m. (EST)
Objection Deadline:  July 16, 2007 at 4:00 p.m. (EST)
Reply Deadline:  July 20, 2007 at Noon (EST)

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Edward O. Sassower (ES 5823)

Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Calpine Corporation, et al., | ) | |
| | ) | Case No. 05-60200 (BRL) |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AND BANKRUPTCY RULE 9019(a) TO APPROVE A SETTLEMENT WITH THE CALPINE CANADIAN DEBTORS AND FOR OTHER RELIEF**

Calpine Corporation and certain of its direct and indirect subsidiaries, as debtors and debtors in possession (collectively, "Calpine" or the "Debtors"), hereby file this motion (the "Motion") pursuant to sections 105(a) and 363(b) of the United States Bankruptcy Code (as amended from time to time, the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), for the entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A, approving a settlement by and between the Debtors and Calpine Canada Energy Ltd. and its Canadian subsidiaries or affiliates that are Applicants or CCAA Parties (collectively, the "Canadian Debtors") in Action No. 0501-17864 under the *Companies' Creditors Arrangement Act,* R.S.C.

1985, c. C-36, as amended, the ("CCAA Proceedings") in the Court of Queen's Bench of Alberta (the "Canadian Court"), and for other related relief.[1]

## Jurisdiction

1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Sections 105(a) and 363(b) of the Bankruptcy Code, and Rule 9019(a) of the Bankruptcy Rules.

## Background

3.     Calpine Corporation ("Calpine" and, together with its direct and indirect subsidiaries, the "Company") is involved in the development, construction, ownership and operation of power generation facilities and the sale of electricity and its by-product, thermal energy, primarily in the form of steam, predominantly in North America.  The Company operates the largest fleet of natural gas-fired power plants in North America.   The Company has ownership interests in, and operates, gas-fired power generation and cogeneration facilities, pipelines, geothermal steam fields and geothermal power generation facilities.

4.     The Company owns, leases and operates power plants throughout the United States.   The Company also has interests in several plants under active construction.   The Company markets electricity produced by its generating facilities to utilities and other third party purchasers while thermal energy produced by the gas-fired power cogeneration facilities is sold primarily to industrial users.   The Company offers to third parties energy procurement,

---

[1]     All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Settlement Outline and ULC1 Settlement (as defined below).

K&E 11817018.17

liquidation and risk management services, combustion turbine component parts, engineering and repair and maintenance services.

5.      On December 20, 2005 (the "Commencement Date"), the Debtors filed their voluntary petitions for relief (the "U.S. Cases") under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On January 9, 2006, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors Committee") in these U.S. Cases.  On May 9, 2006, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee").  No trustee or examiner has been appointed in these U.S. Cases.

6.      Also on December 20, 2006 nine of Calpine's Canadian subsidiaries and affiliates commenced proceedings in Canada under the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended (the "CCAA").  An additional three Calpine Canadian affiliated partnerships were designated as "CCAA Parties" and granted the protection of the stay of proceedings by the Canadian Court.  The Canadian Cases are under the supervision of the Court of Queen's Bench of Alberta, Judicial District of Calgary, the Honourable Madam Justice B.E.C. Romaine presiding.  The Canadian Court appointed Ernst & Young, Inc. as the monitor (the "Monitor") in the CCAA Proceedings.  After the 2005 fiscal year, the Canadian Debtors were deconsolidated from the U.S. Debtors for accounting and financial reporting purposes.

7.      In contrast to the U.S. Debtors, a number of the Canadian Debtors are not operating entities, but investment vehicles created to raise funds for, and make investments on behalf of, Calpine and certain of its U.S. subsidiaries in Canada, the United Kingdom, and other foreign jurisdictions.

8.     As of the commencement of the CCAA Proceedings, the Canadian Debtors'
principal assets were intercompany claims against the U.S. Debtors, cash, and certain
subordinated interests in the Calpine Power Income Fund, an entity holding interests in several
power generation facilities in Canada.  The expected outcome of the CCAA Proceedings is an
orderly liquidation, rather than the restructuring of an ongoing business.  At present, the
Canadian Debtors have only a handful of employees remaining.  Even before the commencement
of the Canadian Cases, Calpine's Canadian operations were in the process of being wound down.

9.     Soon after the commencement of the U.S. Cases and the CCAA Proceedings, the
U.S. and Canadian Debtors realized that a host of cross-border issues needed to be addressed, the
most significant of which are discussed below:

**A.  Sale of the ULC1 Bonds**

10.     One way that Calpine raised funds for its corporate needs was through the
issuance of certain debt instruments through indirect, wholly-owned, non-operating Canadian
subsidiaries of Calpine.  In 2001, Calpine Canada Energy Finance ULC (defined in the
Settlement Outline as "ULC1") issued approximately US$2.03 billion and C$200 million of
senior notes, in two separate issuances (defined in the Settlement as the "ULC1 Bonds").
Calpine is alleged to have guaranteed these ULC1 Bonds.  ULC1 was a non-operating Canadian
"unlimited liability company" incorporated for the purpose of raising funds for Calpine and its
subsidiaries, and did not have its own funding sources.  The reason for raising funds through the
creation of Canadian unlimited liability companies (rather than through U.S. subsidiaries) was to
obtain certain favorable tax treatment in multiple jurisdictions.  In July 2005, in connection with
the repayment of certain intercompany loans associated with a preferred stock offering triggered
by the sale of Calpine's Saltend Energy Centre in the UK, Calpine and certain U.S. subsidiaries

transferred approximately $360 million of repurchased ULC1 Bonds to Calpine Canada Resources Company ("CCRC"), now one of the Canadian Debtors. That put CCRC in the position of having both claims against ULC1, the issuer of the bonds and another of the Canadian Debtors, as well as guarantee claims against Calpine, one of the U.S. Debtors, and the alleged guarantor of these bonds.

11. Because these repurchased ULC1 Bonds represented perhaps the Canadian Debtors' single largest asset, the Canadian Debtors desired to sell and monetize them. However, the U.S. Debtors believed that the transfer of the ULC1 Bonds to CCRC may have been avoidable under the Bankruptcy Code. In July 2006, the Canadian Debtors instituted a process to have the Canadian Court determine CCRC's rights in the repurchased ULC1 Bonds (the "Bond Differentiation Process"). In late 2006 the Canadian and U.S. Debtors attempted to negotiate an arrangement whereby the ULC1 Bonds held by CCRC could be sold while preserving any rights of the U.S. Debtors to the proceeds; however, the bond sale did not proceed at that time.

12. Later, the U.S. Debtors filed their Partial Objection to Proof of Claim No. 5742 [Docket No. 3667], which, *inter alia*, asserts Section 502(d) defenses against certain claims held by CCRC based on the repurchased ULC1 Bonds. CCRC responded to the partial claims objection [Docket No. 3863], and the U.S. Debtors filed a reply [Docket No. 4275]. This partial claims objection (the "ULC1 Bond Objection") is still pending before this Court. CCRC's desire to determine its rights to, and sell, the repurchased ULC1 Bonds in the CCAA Proceedings, as well as Calpine's ULC1 Bond Objection in the U.S. Cases, raise complicated and difficult cross-border jurisdictional issues that, unless resolved, could result in time-consuming, expensive, and

K&E 11817018.17

uncertain litigation that could seriously delay the resolution of both the CCAA Proceedings and the U.S. Cases.

**B.  The Saltend Proceeds**

13.  As referenced above, in 2005 Calpine sold the Saltend Energy Centre.  On the Petition Date, the net proceeds from the Saltend sale were held in the bank account of a wholly-owned indirect UK subsidiary of CCRC, a Canadian Debtor.  The U.S. Debtors believe that they also may have claims to the Saltend proceeds, based on avoidance actions stemming from the transfer of the repurchased ULC1 Bonds discussed above.  However, the Canadian Debtors disagreed and desired to "repatriate" the Saltend proceeds to CCRC to advance the liquidation of the CCAA estates.

14.  Thus, in 2006 the U.S. Debtors and the Canadian Debtors cooperated to "repatriate" the Saltend proceeds to CCRC, on condition that the proceeds would be held by CCRC subject to any claims of the U.S. Debtors that might be established in the claims process (and subject to any defenses of the Canadian Debtors thereto).  The disposition of the Saltend proceeds also created complex and difficult cross-border jurisdictional issues that potentially could involve the laws of the U.S., Canada, the U.K., Luxembourg, and Jersey (Channel Islands), and that, absent consensual resolution, could result in time-consuming, expensive and uncertain litigation in multiple jurisdictions that could delay the administration of both the U.S. Cases and the CCAA Proceedings.

**C.  Claims of the ULC1 Bondholders and Others**

15.  The corporate and financing structure underlying the original ULC1 Bond issuance is extremely complex and has resulted in multiple multi-billion dollar claims being asserted in the U.S. Cases that have complicated both the U.S. Cases and the CCAA

Proceedings. Not only were the ULC1 Bonds issued by ULC1, but in addition a "hybrid note structure" was created that added two additional contractual layers to facilitate the payment of interest and principal on the ULC1 Bonds. These contractual layers included "subscription agreements" and "share purchase agreements," under which (among other things) Quintana Canada Holdings, LLC ("QCH," a Calpine U.S. subsidiary and a U.S. Debtor) essentially agreed to purchase shares of Calpine Canada Energy Ltd. ("CCEL," a Canadian Debtor). Both the subscription agreements and the share purchase agreements were allegedly guaranteed by Calpine Corporation.

16.     This "hybrid note structure" was further supplemented by certain related debentures between CCEL and ULC1, a subordinated debenture between CCRC and CCEL, and certain related promissory notes between CCRC and CCEL. This "hybrid note structure" ultimately caused the filing of multiple multi-billion dollar claims by multiple parties on account of what the U.S. Debtors believed should be characterized as one underlying obligation – *i.e.*, the defaulted principal and interest on the ULC1 Bonds. For example, CCEL filed Claim No. 3730 against QCH for US$2.56 billion based on the subscription agreements, and also filed Claim No. 4512 against Calpine Corporation for US$2.56 billion based on Calpine's guarantee of the subscription agreements. In addition, ULC1 filed Claim No. 4513 against QCH for US$2.56 billion based on the subscription agreements, and also filed Claim No. 4515 against Calpine Corporation for US$2.56 billion based on the subscription agreements guarantee. Similarly, ULC1 filed Claim No. 4514 against QCH in an unliquidated amount based on the share purchase agreement, and also filed Claim No. 4511 against Calpine Corporation for unliquidated amounts based on the share purchase agreement guarantee. Claims were also filed in both the Canadian Proceedings and the U.S. Cases by the Indenture Trustee and other parties related to the ULC1

Bonds and "hybrid note structure." Although the U.S. Debtors believe that they have good arguments that all of these claims on account of the ULC1 Bonds are duplicative and/or redundant, other parties (including the Canadian Debtors) disagree. The issue is not free from doubt and to litigate these multi-billion dollar issues would be time-consuming, costly, and uncertain. Given their size, failure to resolve these claims on account of the ULC1 Bonds could threaten to seriously delay and hamper the prompt and efficient administration of both the U.S. Cases and the CCAA Proceedings.

**D. Claims of the ULC2 Bondholders**

17.     Calpine also had raised approximately $553.7 million[2] through another Canadian subsidiary ("ULC2") by issuing bonds (the "ULC2 Bonds") that were also allegedly guaranteed by Calpine Corporation. Even though the ULC2 Bonds lacked the complex "hybrid note" structure of the ULC1 Bonds, claims were filed by ULC2 bondholders both in the CCAA Proceedings against ULC2 and in the U.S. Cases based on Calpine's alleged guarantee obligations. Again, the U.S. Cases and the CCAA Proceedings were hampered by the complex primary and secondary obligation issues involved in the adjudication of multiple claims in multiple jurisdictions on account of the same bonds in both the CCAA Proceedings and the U.S. Cases.

---

[2]     This figure was calculated using the principal of the ULC2 Bonds (which were denominated in pounds sterling and Euros), and applying the exchange rates as of the Petition Date.

### E. The Greenfield Litigation

18.     Before the Petition Date, Calpine had entered into a joint venture with a unit of Mitsui Corporation to develop the Greenfield Energy Centre, a large (1,005 MW) power plant project under development in Ontario.  In late 2006, a Canadian Debtor, Calpine Canada Natural Gas Partnership, filed a fraudulent conveyance action in the Canadian Court against Calpine Greenfield Commercial Trust (a Canadian trust controlled by U.S. Calpine entities, "CGCT") alleging that a 2005 transfer of Calpine's limited partnership interest in the project to CGCT was avoidable under Canadian law.  The pendency of this action initially delayed certain third-party financing of the Greenfield project, but the U.S. and Canadian Debtors ultimately reached a partial settlement whereby the Canadian Debtors essentially agreed to waive all claims against Greenfield-related entities in exchange for the U.S. Debtors' agreement to allow an administrative claim against Calpine's estate for any liquidated judgment obtained in the avoidance action.  However, even with this interim settlement, unresolved complex, time-consuming and potentially expensive litigation still remained.

### F. Claims of the Calpine Power Income Fund

19.     In 2002 Calpine concluded a series of complex transactions that created the Calpine Power Income Fund (the "Fund"), a Canadian entity that enjoys favorable tax treatment, which held interests in four power plants formerly owned by Calpine.  As part of the transaction Calpine allegedly guaranteed certain obligations by its Canadian subsidiaries to the Fund.  The Fund has filed claims in both the CCAA Proceedings and the U.S. Cases related to the breach of two of these agreements, based on (respectively) the underlying contractual obligation and Calpine's guarantees of those obligations.  The U.S. Debtors believe that the claims asserted by the Fund are in the hundreds of millions of dollars.  The guarantee claims filed in these Chapter

9

11 Cases were in unliquidated amounts. The existence of such guarantee claims also has created complex cross-border jurisdictional issues that, if not resolved, could result in time-consuming, expensive, and uncertain litigation in multiple jurisdictions.

## G. Intercompany "Books and Records" Claims

20.     Currently, the Canadian Debtors have filed approximately $1.1 billion of claims against the U.S. Debtors, and the U.S. Debtors have filed approximately $250 million of claims against the Canadian Debtors, both based on intercompany amounts shown on both sets of companies' books and records. The Canadian and U.S. Debtors and their advisors have worked intensely with the Monitor over a period of months to reconcile these claims and reduce them to agreed amounts. Even though the amounts were reconciled, complex jurisdictional and cross-border issues of setoff, priorities and allowance still remained to be resolved.

## <u>The Settlement</u>

21.     After struggling with these issues for almost a year, the U.S. and Canadian Debtors realized that the only way to break the various intertwining logjams and unlock the values of the estates on both sides of the border was by investing time and effort in intense negotiations, focusing on the goal of a consensual resolution. The Canadian and U.S. Debtors realized that absent a consensual resolution, the two estates could be litigating for years, and with no end in sight given the fact at least two jurisdictions were involved. Therefore, the Canadian and U.S. Debtors engaged in intensive settlement discussions over a period of more than five months, involving their legal, financial and other advisors, all laboring to reach a mutually beneficial result.

22.     The U.S. and Canadian Debtors are pleased that they have reached a comprehensive consensual and global resolution of virtually all major cross-border issues (the

"Settlement").[3]  The U.S. and Canadian Debtors and their financial and legal professionals have

spent many hours negotiating this complex and comprehensive Settlement.  Ernst & Young, Inc.,

appointed by the December 20, 2005 Initial Order of the Canadian Court as the Monitor in the

CCAA Proceedings, has participated in the negotiation of the Settlement and will recommend

approval of the Settlement to the Canadian Court.  The Settlement resolves, among other things,

all the major issues discussed above, and creates a clear path forward by addressing how the

remaining unresolved issues will be addressed.  The Settlement allows the Canadian Debtors to

move forward with the CCAA Proceedings, and allows the U.S. Debtors to resolve the claims

and other pending litigation and turn their attention to their plan confirmation and exit process.

The Settlement therefore creates significant value for both estates, and should be viewed as a

major accomplishment.

23.     The Settlement (and the incorporated ULC1 Settlement) are carefully crafted and

were heavily negotiated to balance numerous issues among a group of debtors, creditors and

stakeholders.  The Settlement is a comprehensive whole, in that every element is related to, and

affects, every other element in a cohesive, comprehensive manner, thereby striking a delicate

consensual balance among multiple competing interests.    The Settlement is an integrated

resolution with no "one off" issues.  Simply put, the Settlement is like a jigsaw puzzle – remove

any one piece, and the whole is incomplete.

24.     The Settlement is embodied in a settlement agreement, substantially in the form

attached hereto as <u>Exhibit B</u> (the "Settlement Agreement").  The U.S. and Canadian Debtors are

currently finalizing the Settlement Agreement, and the definitive Settlement Agreement will be

---

[3]      To the extent there are any inconsistencies between the Motion and the Settlement Agreement (defined
below), the terms of the Settlement Agreement shall govern.

filed with this Court and posted at the web site of the Debtors' notice and claims agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/calpine/canadasettlement no later than fourteen (14) days prior to the Hearing. The U.S. and Canadian Debtors believe that the Settlement, as embodied in the Settlement Agreement, is highly beneficial to the Debtors, their estates, creditors and other stakeholders, will resolve virtually all major cross-border issues, allow the removal of a large number of claims from the Debtors' claims register, and allow the dismissal of all currently-pending cross-border litigation.

25.     The highlights of the Settlement include:

(i)     All intercompany claims between the U.S. and Canadian Debtors will be resolved and the amounts fixed – this will eliminate more than $841 million of unsecured claims from the U.S. Debtors' claims register.

(ii)    The Greenfield Litigation against the U.S. Debtors will be dismissed with prejudice. This will allow Calpine and Mitsui to proceed with the third party financing, development and completion of the Greenfield Energy Centre.

(iii)   The ULC1 Bond Objection will be withdrawn with prejudice. The ULC1 Bonds held by CCRC will then be sold and the proceeds will flow to the Canadian Debtors to be distributed to their creditors, in accordance with the Settlement Agreement, thereby allowing the CCAA Proceedings to move forward.[4]

(iv)    The Canadian and U.S. Debtors have agreed on a procedure by which certain third-party claims filed in the CCAA Proceedings and the related guarantee claims filed in the U.S. Cases will be resolved. The interests of the U.S. Debtors and their estates will be protected by allowing the U.S. Debtors and their official committees the right to fully participate in any settlement or adjudication of these claims.

---

[4]     Notwithstanding the consent of the U.S. Debtors to the sale of the CCRC Senior Notes, the U.S. Debtors shall not be deemed to have any responsibility whatsoever for any securities law liability arising from the sale by the Canadian Debtors of the CCRC ULC1 Senior Notes.

    (v)    Well over $10.5 billion in claims filed by third parties in both the CCAA Proceedings and the U.S. Cases are also resolved by the Settlement and will be withdrawn or deemed to have no value.

    (vi)    Approximately $15 million in proceeds from the 2006 sale of Calpine subsidiary Thomassen Turbine Systems, B.V., which have been in an escrow account since the sale, will be split evenly among the U.S. and Canadian Debtors, thereby avoiding lengthy separate negotiations or possible litigation.

26.    The Settlement also incorporates a settlement previously announced on April 19, 2007 between the U.S. Debtors and an ad hoc group of ULC1 bondholders (the "ULC1 Settlement").[5] Highlights of the ULC1 Settlement are:

    (i)    Approximately $12 billion of claims filed in the U.S. Cases are reduced to a maximum third party obligation of approximately $3.5 billion (the actual amount of the Debtors' obligation under the hybrid note structure will essentially be capped at the principal amount of the ULC1 Bonds, plus interest, certain costs, and fees);

    (ii)    The distribution under the Debtors' plan of reorganization on account of the ULC1 Settlement will be accorded the same treatment as the plan treatment of certain Calpine senior notes (as defined in the ULC1 Settlement), capped as indicated in subparagraph (i) above;

    (iii)    The Debtors are given the flexibility on how the ULC1 Indenture Trustee's claims are classified in its plan of reorganization; and

    (iv)    The "marker" claims filed in both the U.S. Cases and Canadian Proceedings by the ULC1 Indenture Trustee will be disallowed.[6]

27.    The success of the ULC1 Settlement in fact relies on the resolution of the global Settlement with the Canadian Debtors, because the ULC1 Settlement is based on the U.S. Debtors obtaining the cooperation of the Canadian Debtors in winding up the "hybrid note structure" and the claims relating thereto. An ad hoc committee of ULC1 bondholders – which

---

[5]    *See* Calpine Corporation Form 8-K, filed on April 19, 2007.

[6]    In the event of any discrepancy between the description of the ULC1 Settlement herein and the Settlement Agreement, the terms of the Settlement Agreement control.

K&E 11817018.17

may be one of the largest bondholder groups in the U.S. Cases – endorsed the larger global

Settlement with the Canadian Debtors, and the ad hoc committee has presented the Indenture

Trustee for the ULC1 Bonds (the "ULC1 Indenture Trustee") with the form of a letter from

holders of a majority in aggregate principal amount of the ULC1 Bonds, directing the ULC1

Indenture Trustee to enter into the Settlement, and to take all such actions necessary or

appropriate to consummate the Settlement, and offering the ULC1 Indenture Trustee an

indemnity pursuant to the ULC1 Trust Indenture.[7]

28.     The Settlement and execution, delivery and implementation of the Settlement

Agreement will resolve globally virtually all major cross-border issues and will clearly confer a

substantial benefit on, and are in the best interests of, the Debtors' estates, their creditors and

stakeholders.

### **Relief Requested**

29.     By this Motion, the Debtors seek the entry of an order, substantially in the form

attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and

Bankruptcy Rule 9019, (a) approving and authorizing the Settlement, including the ULC1

Settlement, (b) as part of the Settlement, authorizing the Debtors to cooperate in the Canadian

Debtors' sale of the ULC1 Bonds held by CCRC, and (c) authorizing the Debtors to execute,

deliver and implement the Settlement Agreement.[8]

---

[7]     However, as of the date of the Motion, the ULC1 Indenture Trustee has not yet accepted the terms of this direction and indemnity letter. The proposed Order (attached hereto as Exhibit A) contains language providing for findings concerning the form and manner of notice given to the holders of the ULC1 Bonds of this Motion, the Settlement, Settlement Agreement and the ULC1 Settlement. The proposed Order also contains provisions to protect HSBC in its capacity as Indenture Trustee in the actions it is taking in connection with the ULC1 Settlement.

[8]     The Canadian Debtors are simultaneously filing a motion, with supporting affidavits, in the Canadian Court seeking approval of the Settlement (the "Canadian Approval Motion)." The Canadian Approval Motion will be filed with this Court pursuant to Section 13(d)ii of the Cross-Border Insolvency Protocol

(footnote continued)

14

**Basis for Relief**

30.     Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).   Bankruptcy Rule 9019 requires bankruptcy court approval of compromises entered into by a debtor.   Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."   Fed. R. Bankr. P. 9019(a).   The decision whether to accept or reject a compromise lies within the sound discretion of the Bankruptcy Court.   *See Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994).   In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and reasonable. *Id*. at 122.   The court may consider the opinions of the debtor in possession and its counsel that the settlement is fair and reasonable. *Id.; see In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).   This discretion should be exercised by the bankruptcy court "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *Shugrue*, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

31.     Section 363 of the Bankruptcy Code is the statutory vehicle for considering approval of the Settlement under Bankruptcy Rule 9019. *In re Myer*, 91 F.3d 389, 395 n.2 (3d Cir. 1996); *In re Sparks*, 190 B.R. 842, 845 (Bankr. N.D. Ill. 1996) *aff'd* 1997 WL 156488 (N.D. Ill. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 246 (Bankr. E.D. Mich. 1996).   Section

for Calpine Corporation and its Affiliates (*see* Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol [Docket No. 4309], the "Protocol").  The 23rd Report of the Monitor in support of the Settlement will also be filed with this Court pursuant to the Protocol.

363(b) of the Bankruptcy Code provides in relevant part that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court can authorize a debtor to use property of the estate pursuant to Section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. *In re Delaware & Hudson R.R. Co.*, 124 BR. 169, 176 (D. Del. 1991). The debtor has the burden to establish that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor articulates a valid business justification, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See In re Integrated Resources, Inc.*, 147 BR. 650, 656 (Bankr. S.D.N.Y. 1992). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *Id.; see In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions").

32.     To approve a compromise and settlement under Section 363 and Bankruptcy Rule 9019, a bankruptcy court should find that the compromise and settlement is fair and equitable, reasonable and in the best interests of the debtor's estate. *See, e.g., In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (citations omitted); *In re Enron Corp.*, 2003 WL 230838, *2 (S.D.N.Y. 2003). More specifically, "[i]n making this comparison the bankruptcy judge should consider the litigation's probable costs and probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay." *In re Miller*, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992) (internal citation omitted).

K&E 11817018.17

33.     In determining whether to approve a proposed settlement, a bankruptcy court need

not decide the numerous issues of law and fact raised by the settlement, but rather should

"canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of

reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).  In deciding whether

a particular settlement falls within the "range of reasonableness," courts consider the following

factors:

> (i)     the probability of success in the litigation;
>
> (ii)    the difficulties associated with collection;
>
> (iii)   the complexity of the litigation, and the attendant expense, inconvenience and delay; and
>
> (iv)    the paramount interests of creditors.

*Purofied Down Prods.* at 522 (citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1989)); *Six*

*West Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp.*, 286 B.R. 236, 248 n.13 (S.D.N.Y.

2002), *see also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992).

34.     The court need not conduct a 'mini-trial' to determine the merits of the underlying

dispute; rather, the court need only consider those facts that are necessary to enable it to evaluate

the settlement and to make an informed and independent judgment about the settlement.

*Purofied Down Prods.*, 150 B.R. at 522; *Energy Cooperative*, 886 F.2d at 924-25 (7th Cir.

1989).

## The Settlement Should Be Approved

35.     The Debtors submit that the Settlement is beneficial to their estates and creditors

and that therefore good cause exists for approval.  The Settlement is fair and equitable, and falls

well within the range of reasonableness.  More specifically, the Settlement will resolve virtually

all major cross-border issues between the U.S. and Canadian Debtors.  Not only will the

Settlement cause the dismissal of all currently-pending cross-border litigation, which is complex, costly, time-consuming and uncertain, but the Debtors will receive a US$75 million first ranking administrative charge against the net proceeds realized by the Canadian Debtors from the sale of the CCRC ULC1 Senior Notes. The Settlement will cause the elimination of billions of dollars of claims against the Debtors' estates, and help crystallize the claims register as the Debtors are seeking confirmation of their plan of reorganization. As a result of the Settlement, the Debtors will be able to proceed with the Greenfield Energy Centre project without the spectre of the overhanging litigation filed by the Canadian Debtors. All intercompany "books and records" claims will be resolved and their amounts fixed, and most claims against the Canadian Debtors and the U.S. Debtors will be resolved. Although the Settlement does not resolve the guarantee claims by the Fund against the U.S. Debtors, the Settlement nonetheless creates a process for resolving those claims in a manner that fully protects the interests of the Debtors, their estates and their stakeholders. The Settlement provides for an equitable division between the U.S. and Canadian Debtors of the proceeds from last year's sale of Calpine's subsidiary Thomassen Turbine Systems, currently held in escrow, eliminating the necessity of lengthy separate negotiations or possible litigation. Finally, as a result of the Settlement, among other things, there is a possibility that the U.S. Debtors may receive a distribution in the CCAA Proceedings on account of their equity interests in certain of the Canadian Debtors. The Debtors therefore respectfully request that this Court approve the Settlement and the ULC1 Settlement in their entirety.

## Injunction Protecting the ULC1 Indenture Trustee

36.     As referenced above,[9] the proposed Order attached hereto as Exhibit A requests certain protections for HSBC Bank USA, acting in its capacity ULC1 Indenture Trustee, in the actions it is taking in connection with the ULC1 Settlement.  Included in those protections is an injunction in favor of the ULC1 Indenture Trustee, prohibiting current, former and future holders and beneficial holders of the ULC1 Bonds from commencing or continuing any action or proceeding against the ULC1 Indenture Trustee arising out of, relating to or in connection with the ULC1 Indenture Trustee's support of the Settlement and the ULC1 Settlement and the execution, delivery and implementation by the ULC1 Indenture Trustee of the Settlement Agreement and the Ancillary Documents, if any.

37.     Section 105(a) of the Bankruptcy Code grants broad authority to this Court to issue "any order, process or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).   "In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992). As in *Drexel*, the Settlement is a major accomplishment and an essential element of the Debtors' reorganization, and the requested injunction is a key component of the Settlement Agreement, because it assures the ULC1 Indenture Trustee's participation.  The Second Circuit in *Drexel* approved a similar injunction because "the directors and officers [protected by the injunction] would be less likely to settle."  960 F.2d at 293.  In the present case, this threshold is not only met, but exceeded, because without the injunction the ULC1 Indenture Trustee would not only

---

[9]     *See* footnote 5.

K&E 11817018.17

"be less likely to settle," but its very willingness to participate in the Settlement would be called

into question. Without the ULC1 Indenture Trustee's participation, the Settlement could not be

consummated. Therefore, the Debtors suggest that Section 105(a) gives this Court the requisite

authority to issue the limited injunction requested in the Order, and respectfully request that the

Court grant the injunction.

### Memorandum of Law

38.     This Motion includes citations to the applicable authorities and a discussion of

their application to this Motion. Accordingly, the Debtors respectfully submit that such citations

and discussion satisfy the requirement that the Debtors submit a separate memorandum of law in

support of this Motion pursuant to rule 9013-1(b) of the Local Bankruptcy Rules for the

Southern District of New York.

### Notice

39.     Notice of this Motion has been provided to: (a) the United States Trustee for the

Southern District of New York; (b) counsel to the Creditors Committee; (c) counsel to the

administrative agents for the Debtors' prepetition secured lenders; (d) counsel to the ad hoc

committees; (e) the indenture trustees pursuant to the Debtors' secured indentures; (f) counsel to

the Debtors' postpetition lenders; (g) the Securities and Exchange Commission; (h) the Internal

Revenue Service; (i) the United States Department of Justice; (j) counsel to the Equity

Committee; and (k) all parties that have requested notice pursuant to Bankruptcy Rule 2002. A

copy of the Motion is also available on the website of the Debtors' notice and claims agent,

Kurtzman Carson Consultants LLC, at http://www.kccllc.net/calpine.

40.     Moreover, in connection with the ULC1 Settlement, the Debtors intend to provide

notice of the proposed Settlement to all interested parties, including the record holders and

beneficial holders of the ULC1 Bonds, by:

(i)     Delivering the Motion and the Canadian Approval Motion to all ULC1 bondholders of record as of June 20, 2007, to enable the record holders to distribute the Approval Motions to the beneficial holders of the ULC1 Bonds.  Pursuant to the provisions of 17 C.F.R. § 240.14b-1(b)(2) and § 240.14b-2(b)(3), the record holders are required to forward the Motions to said beneficial holders no later than five days after the date each record holder received the Motions;

(ii)    Publication of a notice (the "Notice," substantially in the form attached hereto as Exhibit C) in The Wall Street Journal, The Financial Times, Investor's Business Daily, The Globe & Mail (Canada) and the National Post (Canada);

(iii)   Posting of the Notice on the Legal Notice System (LENS) of the Depositary Trust Company;

(iv)    Posting of the Notice, the Motion and the Canadian Approval Motion at http://www.kccllc.net/calpine/canadasettlement; and

(v)     Issuing a press release notifying ULC1 bondholders and others of the hearing on the Settlement and providing the necessary information to electronically access the Motion and the Settlement Agreement.

In light of the nature of the relief requested herein, the Debtors submit that the foregoing notice is sufficient and appropriate under the circumstances and that no other or further notice is required.

## No Prior Request

41.     No prior Motion for the relief requested herein has been made to this or any other court.


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

K&E 11817018.17

WHEREFORE, the Debtors request the Court to enter an order, substantially in the form

attached hereto as <u>Exhibit A</u> (a) approving and authorizing the Settlement, including the ULC1

Settlement, (b) authorizing the Debtors to execute, deliver and implement the Settlement

Agreement, (c) authorizing the Debtors to cooperate in the Canadian Debtors' sale of the ULC1

Bonds held by CCRC as provided in the Settlement Agreement, and (c) granting such other and

further relief as is just and proper.

Dated:   June 28, 2007            Respectfully submitted,
         New York, New York

  /s/ David R. Seligman                    
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted pro hac vice)
David R. Seligman (admitted pro hac vice)
Edward O. Sassower (ES 5823)
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for the Debtors

K&E 11817018.17

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| Calpine Corporation, <u>et</u> <u>al.</u>, | ) |
| | ) Case No. 05-60200 (BRL) |
| Debtors. | ) Jointly Administered |
| | ) |

## ORDER GRANTING DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) AND BANKRUPTCY RULE 9019(a) TO APPROVE A SETTLEMENT WITH THE CALPINE CANADIAN DEBTORS

Upon the Motion (the "Motion")[1] of the above-captioned debtors (collectively, the "U.S. Debtors") for entry of an Order pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a); it appearing that the relief requested is in the best interest of the U.S. Debtors' estates, their creditors and other parties in interest; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that notice of the Motion and the opportunity for a hearing on the Motion were appropriate under the particular circumstances and that no other or further notice need be given; the Motion having been heard by way of joint video conference by this Court and the Honourable Madam Justice B.E.C. Romaine of the Canadian Court pursuant to the Cross-Border Insolvency Protocol for Calpine Corporation and its Affiliates; and after due deliberation and sufficient cause appearing therefor;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, or, if not defined therein, in the Settlement Agreement.

The Court, having considered the relief requested in the Motion and being duly advised of the premises, hereby finds that:[2]

A.       On April 25, 2001, ULC1 issued US$1,500 million of 8.5% senior notes due May 1, 2008 (the "8.5% ULC1 Senior Notes") under an indenture dated as of April 25, 2001 between ULC1 and Wilmington Trust Company, as predecessor trustee (as amended by an Amended and Restated Indenture dated October 16, 2001, the "ULC1 Indenture").

B.       On October 16, 2001, ULC1 issued an additional US$530 million of 8.5% ULC1 Senior Notes under the ULC1 Indenture (the April 25, 2001 issuance and the October 16, 2001 issuance are collectively referred to as the "8.5% ULC1 Senior Notes").

C.       On October 18, 2001, ULC1 issued approximately C$200 million of 8.75% senior notes due October 15, 2007 (the "8.75% ULC1 Senior Notes," and collectively with the 8.5% ULC1 Senior Notes, the "ULC1 Bonds").

D.       HSBC Bank USA, National Association is the successor indenture trustee under the ULC1 Indenture (the "Indenture Trustee").

E.       On December 20, 2005 (the "Commencement Date"), the U.S. Debtors filed their voluntary petitions for relief (the "U.S. Cases") under chapter 11 of the Bankruptcy Code. The U.S. Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F.       The U.S. Debtors and the Ad Hoc ULC1 Noteholders Committee (as defined in the ULC1 Settlement) engaged in good faith, arm's-length negotiations culminating in their

---

[2]    To the extent necessary, findings of fact shall be deemed conclusions of law, and conclusions of law shall be deemed findings of fact.

K&E 11825959.11

execution and delivery, as of April 13, 2007, of a Preliminary Settlement Outline (defined in the Motion as the "ULC1 Settlement").

G.     The U.S. Debtors and the Canadian Debtors engaged in good faith, arm's-length negotiations and on May 13, 2007 reached a comprehensive consensual and global resolution of virtually all major cross-border issues (defined in the Motion as the "Settlement").     The Settlement incorporates the ULC1 Settlement.

H.     The Settlement and the ULC1 Settlement, as definitively embodied in the Settlement Agreement, are fair, reasonable, and represent a sound exercise of the U.S. Debtors' business judgment, and are in the best interests of the U.S. Debtors' estates, creditors, and other stakeholders.

I.     On June 28 2007 the Canadian Debtors filed a motion (the "Canadian Approval Motion" and together with the Motion, the "Approval Motions") seeking, among other things, approval of the Settlement Agreement, which definitively embodies the Settlement and the ULC1 Settlement described in the Motion.

J.     This Court has core jurisdiction over the Cases, this Motion and the parties and property affected hereby pursuant to 28 U.S.C. Sections 157 (b) and 1334.

K.     Notice of this Motion has been provided to: (a) the United States Trustee for the Southern District of New York; (b) counsel to the Creditors Committee; (c) counsel to the ad hoc committees; (e) the indenture trustees pursuant to the U.S. Debtors' secured indentures; (e) counsel to the U.S. Debtors' postpetition lenders; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service; (h) the United States Department of Justice; (i) counsel to the Equity Committee; and (j) all parties that have requested notice pursuant to Bankruptcy Rule

3

2002.  A copy of the Motion has been also made available on the website of the U.S. Debtors'

notice and claims agent, Kurtzman Carson Consultants LLC, at http://www.kccllc.net/calpine.

      L.     The U.S. Debtors provided notice of the proposed Settlement to all interested

parties, including all record holders of the ULC1 Bonds (the "Holders"), by:

    (a)    Delivering the Motion and the Canadian Approval Motion to all Holders of the ULC1 Bonds as of June 20, 2007, to enable such Holders to distribute the Approval Motions to the beneficial holders of the ULC1 Bonds.  Pursuant to the provisions of 17 C.F.R. § 240.14b-1(b)(2) and § 240.14b-2(b)(3), the record holders are required to forward the Motions to said beneficial holders no later than five days after the date each record holder received the Motions;

    (b)    Publication of a notice (the "Notice," substantially in the form attached to the Motion as <u>Exhibit C</u>) in The Wall Street Journal, The Financial Times, Investor's Business Daily, The Globe & Mail (Canada) and the National Post (Canada);

    (c)    Posting of the Notice on the Legal Notice System (LENS) of the Depositary Trust Company; and

    (d)    Posting of the Notice, the Motion and the Canadian Approval Motion at http://www.kccllc.net/calpine/canadasettlement;

    (e)    Issuing a press release dated July 9, 2007 notifying the Holders and others of the hearing on the settlement and providing the necessary information to electronically access the Motion and the Settlement Agreement.

      M.     As described in the Motion, a draft of the Settlement Agreement was attached as

Exhibit B to the Motion.  Also as specified in the Motion, the U.S. Debtors posted the Settlement

Agreement at http://www.kccllc.net/calpine/canadasettlement on [July 9], 2007, at least fourteen

(14) days before July 24, 2007, the date of the joint hearing held in this matter.  Due and

adequate notice of the Settlement Agreement has been provided to all parties in interest.

      N.     The statutory bases for the relief requested herein are Sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 9019(a).

It is hereby ORDERED

    1.     The Motion is approved in its entirety.

4

2.       The Settlement Agreement is approved in its entirety.

3.       The settlements and compromises set forth in the Settlement and the ULC1 Settlement, as embodied in the Settlement Agreement, are approved, and the U.S. Debtors and HSBC are authorized and directed to enter into, execute, deliver and implement the Settlement Agreement, conditional upon the Canadian Court granting an order (the "Canadian Approval Order" and together with this Order, the "Approval Orders") approving the Settlement and authorizing the Canadian Debtors to enter into the Settlement Agreement and to carry out the transactions contemplated by the Settlement Agreement.

4.       The U.S. Debtors and each party to the Settlement Agreement are authorized, from time to time, to enter into such other and further documents, agreements and instruments (collectively, the "Ancillary Documents"), and take such other actions, as may be reasonably required or appropriate to evidence, effectuate, or carry out the intent and purposes of the Settlement Agreement or to perform its or their respective obligations under the Settlement Agreement and the transactions contemplated thereby.

5.       Other than paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 16, 17, 18, 19, 22, 27, 28, 29, 30, 32, 33 and 34 of this Order, which paragraphs are effective upon the entry of this Order, and other than paragraph 26 which is effective on the date of the sale of CCRC Senior Notes, the balance of the paragraphs of this Order shall only be effective upon the date the Canadian Debtors, the U.S. Debtors and the ULC1 Indenture Trustee have executed and filed a certificate with this Court advising that all of the conditions in the Settlement Agreement have been either waived or satisfied (including, without limitation, the condition that the sale of the CCRC Senior Notes (described below) be completed), and advising of the Effective Date (as defined in the Settlement Agreement).

5

6.      The notice of the Motion and the Settlement Agreement given by the U.S. Debtors is approved, both in form and content, and was timely, fair, and adequate, sufficient and appropriate under the circumstances to (a) apprise interested parties of the Motion, the Canadian Approval Motion and the respective hearings scheduled thereon, and the Settlement Agreement and (b) to afford them an opportunity to present any objections, and no other or further notice is or was required.

7.      This Order is binding and effective upon the Holders, as well as all current, former, and future beneficial holders of the ULC1 Bonds (the "Beneficial Holders"), and all indenture trustees for the ULC1 Bonds, or predecessors or successors thereto (solely in their capacity as indenture trustees with respect to the ULC1 Bonds and not in any other capacity, including, but not limited to, their capacity as the holder of any claim against the U.S. Debtors or as indenture trustees with respect to any other securities related to the U.S. Debtors or their affiliates).

8.      The compromises and settlements embodied in the Settlement Agreement are fair and reasonable to the U.S. Debtors, the Holders, the Beneficial Holders, and the Indenture Trustee.

9.      The execution, delivery and implementation by the Indenture Trustee of the Settlement Agreement, and the Ancillary Documents, if any, are authorized and approved and are determined to be consistent with and in furtherance of the Indenture Trustee's duties and responsibilities under the ULC1 Indenture, and not prejudicial to the rights of the Holders or the Beneficial Holders of the ULC1 Bonds.

10.      In consenting to and supporting the Settlement and the ULC1 Settlement, and in executing and delivering the Settlement Agreement and the Ancillary Documents, if any, the

Indenture Trustee is exercising reasonably, prudently and in good faith its rights and powers vested in it under the ULC1 Indenture and is using the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

11.     Without further order of this Court, and without further action by the parties to the Settlement Agreement, the Indenture Trustee shall be, and hereby is, exculpated and fully, finally and irrevocably released and discharged by all persons and entities, including, without limitation, the Holders and all current, former and future Beneficial Holders, from, and shall not have or incur any liability for, any and all claims, causes of action and other assertions of liability arising out of, relating to, or in connection with the Indenture Trustee's support of the Settlement and the ULC1 Settlement and its execution, delivery and implementation of the Settlement Agreement and the Ancillary Documents, if any.  To implement the exculpation provided herein, all Persons and entities, including, without limitation, the Holders and all current, former and future Beneficial Holders, shall be, and hereby are, permanently and irrevocably enjoined from commencing or continuing in any manner any action or proceeding against the Indenture Trustee arising out of, relating to or in connection with the Indenture Trustee's support of the Settlement and the ULC1 Settlement and its execution, delivery and implementation of the Settlement Agreement and the Ancillary Documents, if any.

12.     The Canadian Debtors, for themselves and their successors, assigns, affiliates (other than the U.S. Debtors or their affiliates), and anyone claiming through them (including, without limitation, creditors of the Canadian Debtors claiming through the Canadian Debtors) (each in their capacity as such) shall and are deemed to have irrevocably, fully, finally, and forever waived, released, and discharged any and all Claims against the U.S. Debtors and their

affiliates (other than the Canadian Debtors and Calpine's Canadian affiliates), successors and assigns, and estates, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, save and except only as specifically provided for otherwise in the Settlement Agreement.

13.     Except only as specifically provided for otherwise in the Settlement Agreement, distributions on all of the Claims listed on Exhibit A and Exhibit B of the Settlement Agreement shall only be made after distributions have been made on account of all other Claims against the applicable Canadian Debtor or U.S. Debtor.

14.     All claims (other than those specifically provided for in the Settlement Agreement) by the U.S. Debtors and Canadian Debtors, and their respective successors, assigns, applicable affiliates, and anyone claiming through them (including without limitation creditors of the respective Canadian and U.S. Debtors) (all in their capacity as such), against the other, whether or not asserted in the CCAA Proceedings, the U.S. Proceedings or other court proceedings, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, including claims for oppression or similar statutory or common law relief, are hereby barred forever.

15.     In the event that the entitlement of the ULC2 Indenture Trustee and/or the ULC2 Noteholders to ULC2 Accrued Interest, fees incurred in the Harbert Litigation, and/or to a "make whole amount," has not been resolved by the date distributions are to be made from CCRC, CCRC may establish and fund, as appropriate, an escrow account or other reserve for the payment of such amounts, if any, as may be subsequently determined by this Court to be payable in accordance with the terms of the ULC2 Indenture and related agreements.

8

16. The claims included in Exhibit G to the Settlement Agreement are hereby dismissed with prejudice or deemed to have been withdrawn with prejudice.

17. All of the HSBC U.S. Marker Claims and all of the HSBC Canadian Marker Claims are hereby dismissed with prejudice or deemed to have been withdrawn with prejudice.

18. The U.S. Debtors are authorized and directed to take any and all steps to perform any and all acts necessary or reasonably requested by CCRC to implement or assist CCRC in the sale of the ULC1 Bonds held by CCRC (the "CCRC Senior Notes"), provided, however, that no such acts shall cause or be deemed to cause the sale of the CCRC Senior Notes to be, or have been done, "by" any of the U.S. Debtors for purposes of any applicable securities laws, nor shall any U.S. Debtor be deemed to be a participant, issuer or control person with respect to the sale of the CCRC Senior Notes for purposes of any applicable securities laws.

19. Without limiting the generality of the preceding paragraph, Calpine Corporation is specifically authorized and directed in connection with CCRC's sale of the CCRC Senior Notes to:

(i) execute the Guarantee attached to the 144A Global Security; and

(ii) execute the Guarantee attached to the Regulation S Global Security;

provided, however, that any obligations of Calpine Corporation under the Guarantees shall remain prepetition liabilities, and such execution, even though occurring after the Petition Date, shall not convert Calpine Corporation's prepetition liabilities under the Guarantees into postpetition liabilities, administrative expense claims under section 503 of the Bankruptcy Code, or administrative claims or restructuring claims under the CCAA.

20. Calpine Corporation's prepetition obligations under the Guarantee Agreement are hereby affirmed, including in respect of the 144A Global Security, the Regulation S Global Security and the CCRC Senior Notes.

K&E 11825959.11

21.     All persons and entities are forever barred, estopped and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding, with respect to any claim or cause of action against any of the U.S. Debtors in relation to or arising from the sale of the CCRC Senior Notes by CCRC, and any of the transactions associated therewith, including without limitation, the authentication and delivery of the Guarantees attached to the 144A Global Security and the Regulation S Global Security.

22.     The Intercompany Claims outlined in Exhibit D to the Settlement Agreement are deemed allowed, general, non-subordinated, unsecured claims against the applicable Canadian Debtor(s) in the CCAA proceedings and U.S. Debtor(s) in the U.S. Cases, as the case may be, and shall be treated the same as all other allowed non-subordinated, general, unsecured claims against the applicable Canadian Debtor(s) or U.S. Debtor(s), as the case may be, under any plan of arrangement sanctioned in the CCAA Proceedings ("POA") or plan of reorganization in the U.S. Cases ("POR"), provided, however, that Claim No. 4448 of CCRC against QCH, set forth on Exhibit D of the Settlement Agreement, which includes CCRC's claim against the U.S. Debtors in respect of the liability of CCRC for applicable non-resident withholding taxes related to the intercompany advance that is the basis of Claim No. 4448, shall be satisfied through the granting to CCRC of an allowed non-subordinated general unsecured Claim (not subject to setoff, counterclaim or defense) against QCH in the amount of U.S.$232 million (the "CCRC Claim"), which shall be guaranteed in full by Calpine Corporation ("CORPX"). The CCRC Claim is hereby granted and allowed; provided further that in no event shall distributions to CCRC under the POR on account of the CCRC Claim (or any guarantee thereof) exceed C$181,431,000 (plus an amount equal to the aggregate of all liabilities and obligations of CCRC

10

for tax penalties and interest, if any, arising from the non-resident withholding taxes described in Section 2.3(c)(iii) of the Settlement Agreement).

23.     The CCRC Claim shall be calculated for distribution purposes in U.S. dollars in an amount yielded by the conversion from Canadian dollars at the noon spot rate effective as of the date of confirmation of the POR for Canadian currency posted at Scotiabank and such conversion shall be calculated and performed in consultation with the Monitor.

24.     The rights of the U.S. Debtors with respect to the treatment of any allowed Intercompany Claims of the U.S. Debtors under any POA (including with respect to any possible substantive consolidation of some or all of the Canadian Debtors) and the rights of the Canadian Debtors with respect to the treatment of any allowed Intercompany Claims of the Canadian Debtors under any POR (including, with respect to any possible substantive consolidation of some or all of the U.S. Debtors) are fully preserved.

25.     The ULC2 Indenture Trustee shall be granted one allowed, general unsecured claim in the U.S. Proceedings against CORPX in the amount of U.S.$361,660,821.40, which equals the principal and unpaid accrued interest due in respect of the ULC2 Senior Notes as of December 20, 2005 (the "ULC2 Indenture Trustee's Allowed Guarantee Claim").  Any recovery by the ULC2 Indenture Trustee shall come first from distributions from ULC2 in the CCAA Proceedings and, to the extent of any deficiency, second from distributions in the U.S. Proceedings.  Any recovery by the ULC2 Indenture Trustee from ULC2 will be applied as follows: first, to Reasonable Costs; second, to accrued and unpaid interest on the ULC2 Senior Notes at the contract rate (including interest accrued and unpaid after the commencement of the CCAA Proceedings and through the date on which the Allowed ULC2 Indenture Trustee Claim is satisfied in full (including interest compounded semi–annually)); and third, to principal owing

11

in respect of the ULC2 Senior Notes. Any recovery received by the ULC2 Indenture Trustee from ULC2 will not reduce the amount of the ULC2 Indenture Trustee's Allowed Guarantee Claim and there shall be no reallocation of payments received in the CCAA Proceedings of Reasonable Costs or interest to payment of principal in respect of the Allowed ULC2 Indenture Trustee Claim; provided, however, the ULC2 Indenture Trustee shall not be entitled to actually receive any distributions under or through the POR in excess of any portion of the ULC2 Indenture Trustee's Allowed Guarantee Claim that remains unpaid after any distributions are made on the Allowed ULC2 Indenture Trustee Claim in the CCAA Proceedings (and after such distributions are allocated as provided in the first paragraph of the Settlement Agreement), unless the POR provides for the payment of postpetition interest on similarly situated claims, in which case the ULC2 Indenture Trustee's Allowed Guarantee Claim shall include a claim in respect of postpetition interest.

26.     In accordance with the Settlement Agreement, the U.S. Debtors' Partial Objection to Proof of Claim No. 5742, relating to the CCRC Senior Notes [Docket No. 3667], is withdrawn with prejudice, and the U.S. Debtors are hereby deemed to have irrevocably waived their right to assert any other claims and/or defenses in respect of the CCRC Senior Notes against CCRC or any prior or subsequent owner of the CCRC Senior Notes (including, without limitation, any Bond Differentiation Claims).

27.     In accordance with the Settlement Agreement, (a) the U.S. Debtors waive the right to challenge any alleged guarantee of the Guaranteed Claims (as that term is defined in the Settlement Agreement); (b) this Court shall grant comity to the determination by the Canadian Court (and any Canadian appellate court) of the validity and quantum of any Guaranteed Claim; and (c) claims filed in the U.S. Cases on account of any Guaranteed Claims will be allowed, as

12

general unsecured non-subordinated claims against the U.S. Debtor that is the guarantor, in the U.S. Cases in the amount of the Guaranteed Claim as determined by the Canadian Court, without any further claim adjudication process or order of this Court and without any right of any party in interest to challenge the validity or quantum of such allowed Guaranteed Claims; provided, however, that holders of the Guaranteed Claims shall not be entitled to actually receive any distributions under or through the POR (as that term is defined in the Settlement Agreement) in excess of any actual unpaid portion of such Guaranteed Claims, unless the POR provides for the payment of postpetition interest on other general unsecured non-subordinated claims, in which case the Guaranteed Claims shall include postpetition interest.

28.     CORPX is empowered and authorized by each of the entities of Calpine U.S. to act on their behalf in connection with the execution of the Settlement Agreement and the performance of the terms, conditions and obligations of the Settlement Agreement, and shall remain so empowered and authorized for the duration of the Settlement Agreement.

29.     The U.S. Debtors and the Canadian Debtors are hereby relieved of any further duties or obligations to negotiate and/or present to this Court a "Canada-U.S. Claims-Specific Protocol" (as that term is defined in the Motion of Canadian Debtors for Entry of an Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol [Docket No. 4242]); provided, however, that the U.S. Debtors and Canadian Debtors shall confer in good faith to determine whether any remaining claims unresolved by the Settlement Agreement warrant the approval of a claims-specific protocol by this Court and the Canadian Court.

30.     Except as may be specifically provided herein, the Canadian Debtors shall retain any administrative expense priority claims that have been, or may in the future be, asserted against the U.S. Debtors in the U.S. Cases pursuant to Section 503(b) or any other applicable

K&E 11825959.11

provision of the Bankruptcy Code for postpetition goods or services rendered to the U.S. Debtors ("U.S. Administrative Claims"); provided, however, that the U.S. Debtors reserve their rights with respect to the allowance of any such U.S. Administrative Claims.

31.     The Stipulation and Agreed Order Approving Interim Resolution of Certain Disputes Relating to the Greenfield Energy Centre [Docket No. 4345] (the "U.S. Interim Resolution Order") is hereby amended to provide that the terms of the Settlement Agreement shall constitute full satisfaction of the Administrative Claim (as that term is defined in the U.S. Interim Resolution Order) and that no further amounts shall be due and owing now or in the future under the U.S. Interim Resolution Order.

32.     The failure to mention any provision of the Settlement, the ULC1 Settlement, or the Settlement Agreement in this Order shall not impair its efficacy, it being the intent and effect of this Order that the Settlement, the ULC1 Settlement, and the Settlement Agreement are approved in all respects and all relief contemplated by the Settlement, the ULC1 Settlement and the Settlement Agreement is hereby granted.

33.     This Order is granted in conjunction with, is complementary to and is a companion Order to the Order of the Court of Queen's Bench granted in the CCAA Proceedings and is to be read and interpreted in a manner that is not inconsistent with, and in furtherance of, the provisions of such Court of Queen's Bench Order.  Any determination by either this Court or the Canadian Court contemplated by the Settlement Agreement shall be given comity by the other Court.

34.     Except as may be specifically provided herein, notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

K&E 11825959.11

35.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.     The requirement set forth in Rule 9013-1(b) of the Local Rules that any motion or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

37.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

38.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


New York, New York
Dated: _____, 2007

_____
United States Bankruptcy Judge

15

## **EXHIBIT B**

# SETTLEMENT AGREEMENT

DRAFT

●, 2007

# TABLE OF CONTENTS

**Page**

ARTICLE I – INTERPRETATION ...............................................................................3
    1.1    Definitions.........................................................................................3
    1.2    Headings ..........................................................................................10
    1.3    Gender and Number.........................................................................10
    1.4    Day Not a Business Day ..................................................................10
    1.5    Waiver, Amendment .......................................................................10
    1.6    Construction ....................................................................................10

ARTICLE II SETTLEMENT BETWEEN THE U.S. DEBTORS AND CANADIAN DEBTORS11
    2.1    Mutual Release of Claims. ..............................................................11
    2.2    Release of Claims Listed on Exhibit A and Exhibit B.....................11
    2.3    Settlements and other Resolutions of Claims. .................................12
    2.4    Sale of CCRC ULC1 Notes and Charge Upon the Proceeds in Favor of the U.S.
Debtors. ...................................................................................................18
    2.5    Allocation of Costs. ........................................................................19
    2.6    Mutual Tax Benefits. ......................................................................19
    2.7    Plan Matters ....................................................................................20
    2.8    Court Approval Process. ..................................................................20
    2.9    Conditions to Settlement between the U.S. Debtors and the Canadian Debtors ...23

ARTICLE III SETTLEMENT BETWEEN THE U.S. DEBTORS AND THE ULC1
INDENTURE TRUSTEE .............................................................................24
    3.1    Representations and Warranties Relating to the ULC1 Indenture Trustee...........24
    3.2    Withdrawal of Marker Claims. .......................................................25
    3.3    Allowance, Treatment and Classification of the ULC1 Indenture Trustee Notes
Guarantee Allowed Claim.......................................................................25
    3.4    CORPX Support for Substantial Contribution Claim Application. .......................28
    3.5    Application of Distributions Under POR..........................................28
    3.6    Effect of Settlement Agreement on Proposal of POR and Voting by ULC1
Noteholders. ..........................................................................................28
    3.7    Release of ULC1 Noteholders Under POR. ....................................29
    3.8    Conditions to Effectiveness of the Settlement Agreement Between the U.S.
Debtors and the ULC1 Indenture Trustee. ..............................................29

ARTICLE IV – FAILURE TO BECOME EFFECTIVE ...........................................30

ARTICLE V MISCELLANEOUS PROVISIONS APPLICABLE  TO THIS SETTLEMENT
AGREEMENT ..............................................................................................30
    5.1    Retention of U.S. Debtors' Equity Interests. ...................................30
    5.2    Further Assurances. .........................................................................30
    5.3    Benefit of Agreement......................................................................30
    5.4    Integration. ......................................................................................31
    5.5    Counterparts; Facsimile Signatures. ................................................31
    5.6    Notices. ...........................................................................................31

DRAFT

5.7     Amendment. ..................................................................................31
5.8     Governing Law. ..............................................................................32
5.9     Assignment. ...................................................................................32
5.10    Waiver. ..........................................................................................32
5.11    Headings. .......................................................................................32

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "**Agreement**") dated as of _____, 2007

**AMONG:**

> **CALPINE CORPORATION** ("**CORPX**"), on behalf of itself and on behalf of its U.S. subsidiaries (collectively with CORPX, "**Calpine U.S.**")

> OF THE FIRST PART

> - and -

> **CALPINE CANADA ENERGY LTD. ("CCEL"), CALPINE CANADA POWER LTD., CALPINE CANADA ENERGY FINANCE ULC ("ULC1"), CALPINE ENERGY SERVICES COMPANY LTD., CALPINE CANADA RESOURCES COMPANY, CALPINE CANADA POWER SERVICES LTD., CALPINE CANADA ENERGY FINANCE II ULC ("ULC2"), CALPINE NATURAL GAS SERVICES LIMITED, 3094479 NOVA SCOTIA COMPANY, CALPINE ENERGY SERVICES CANADA PARTNERSHIP, CALPINE CANADA NATURAL GAS PARTNERSHIP AND CALPINE CANADIAN SALTEND LIMITED PARTNERSHIP** (collectively, the "**Canadian Debtors**")

> OF THE SECOND PART

> - and -

> **HSBC BANK USA, NATIONAL ASSOCIATION,** as successor indenture trustee under the ULC1 Indenture, as such trustee may be amended, replaced or succeeded from time to time (solely in its capacity as indenture trustee, the **"ULC1 Indenture Trustee"** and, together with Calpine U.S. and the Canadian Debtors, the **"Parties"**)

> OF THE THIRD PART

## R E C I T A L S:

A.     On December 20, 2005 (the "**Petition Date**"), the U.S. Debtors filed the U.S. Proceedings in the U.S. Bankruptcy Court, and are operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

DRAFT

- 2 -



B.  On the Petition Date, the Canadian Debtors commenced the CCAA Proceedings in the Canadian Court;

C.  Pursuant to the terms of a certain Indenture (the "**Original ULC1 Indenture**") dated as of April 25, 2001, between ULC1 and Wilmington Trust Company, as indenture trustee, as amended by that certain Amended and Restated Indenture (the "**Amended ULC1 Indenture**") dated as of October 16, 2001, between ULC1 and Wilmington Trust company (the Original ULC1 Indenture, as amended and restated by the Amended ULC1 Indenture, the "**ULC1 Indenture**"), ULC1 issued (i) those certain 8-3/4% Senior Notes due October 15, 2007, issued on October 18, 2001 in the original, aggregate principal amount of C$200,000,000 (the "**Canadian ULC1 Notes**"), (ii) those certain 8-1/2% Senior Notes due May 1, 2008, issued on April 25, 2001 in the original, aggregate principal amount of US$1,500,000,000, and/or (iii) those certain 8 1/2% Senior Notes due May 1, 2008, issued on October 16, 2001 in the original aggregate principal amount of US$530,000,000 (the notes described in clauses (i), (ii) and (ii), collectively, the "**ULC1 Notes**");

D.  The ULC1 Indenture Trustee has received a written and binding letter from holders of a majority in aggregate principal amount of each of the two series of the ULC1 Notes directing the ULC1 Indenture Trustee to enter into this Agreement, and to take all such further actions necessary or appropriate to consummate the transactions contemplated by this Agreement;

E.  Certain holders (the "**Ad Hoc ULC1 Noteholders**") are members of an informal committee of unaffiliated holders of the ULC1 Notes (the "**Ad Hoc ULC1 Noteholders Committee**") formed for the purposes of protecting their interests in the U.S. Proceedings and the CCAA Proceedings and exploring and negotiating with CORPX a potential settlement regarding the treatment of the Claims evidenced by the ULC1 Notes, and certain Claims and guarantees related thereto, filed in the U.S. Proceedings and the CCAA Proceedings, as the case may be;

F.  CORPX and the Canadian Debtors entered into a Global Settlement Outline for Certain Claims Between and Relating to Calpine U.S. and Calpine Canada (the "**Global Settlement Outline**"), dated as of May 13, 2007, which, among other things, set forth various agreements among CORPX and the Canadian Debtors relating to the resolution of certain Claims and other matters;

G.  CORPX and the Ad Hoc ULC1 Noteholders entered into a Preliminary Settlement Outline dated as of April 13, 2007 Regarding Claims Held by Members of the Ad Hoc ULC1 Noteholders Committee (the "**Preliminary ULC1 Settlement Outline**"), which is incorporated in and attached as Exhibit C to the Global Settlement Outline and which, among other things, sets forth various agreements among CORPX and the Ad Hoc ULC1 Noteholders Committee concerning the following Claims:

(i)  the ULC1 Indenture Trustee Notes Guarantee Claim;

(ii)  the CCEL Subscription Agreement Claim;

- 3 -



    (iii)     the CCEL Subscription Agreement Guarantee Claim;

    (iv)     the ULC1 Common "B" Share Purchase Agreement Claim;

    (v)     the ULC1 Common "B" Share Purchase Agreement Guarantee Claim;

    (vi)     the ULC1 Indenture Trustee Notes Claim;

    (vii)     the HSBC Canadian Marker Claims;

    (viii)     the HSBC U.S. Marker Claims; and

    (ix)     the Claims of CCEL against CCRC;

H.     On April 18, 2007, CORPX filed with the SEC a report on Form 8-K disclosing that CORPX and the Ad Hoc ULC1 Noteholders Committee had entered into the Preliminary ULC1 Settlement Outline, a copy of which was annexed to such Form 8-K as an exhibit; and

I.     On May 14, 2007 CORPX filed with the SEC a report on Form 8-K disclosing that CORPX and the Canadian Debtors had entered into the Global Settlement Outline, a copy of which was annexed to such Form 8-K as an exhibit.

    **NOW THEREFORE** in consideration of the mutual covenants and agreements contained in this Agreement and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the Parties), the Parties hereto agree as follows:

## ARTICLE I – INTERPRETATION

### 1.1   <u>Definitions</u>

**"Ad Hoc Committee Fees"** has the meaning set forth in Section 3.3(a)(ii)(C);

**"Ad Hoc ULC1 Noteholders"** has the meaning set forth in Recital E;

**"Ad Hoc ULC1 Noteholders Committee"** has the meaning set forth in Recital E;

**"Agreement", "Settlement Agreement", "hereto", "herein", "hereby", "hereunder", "hereof"** and similar expressions refer to this Agreement and not to any particular Article, Section, subsection, clause, subdivision or other portion hereof and include any and every instrument supplemental or ancillary hereto;

**"Allowed ULC2 Claim"** has the meaning set forth in Section 2.3(e)(ii);

**"Allowed ULC2 Indenture Trustee Claim"** has the meaning set forth in Section 2.3(e)(i);

**"Allowed U.S. Administrative Charge"** has the meaning set forth in Section 2.4(e);

**"Amended ULC1 Indenture"** has the meaning set forth in Recital C;

- 4 -



"**Applicable Law**", in respect of any Person, property, transaction or event, means all laws, statutes, regulations, treaties, judgments and decrees of any Governmental Authority applicable to that Person, property, transaction or event which have the force of law, all applicable requirements, requests, official directives, rules, consents, approvals, authorizations, guidelines, orders and policies of any Governmental Authority having authority over that Person, property, transaction or event and which have the force of the law**;**

"**Approval Date**" means the date on which the last of the Approval Orders has been entered on the relevant court's docket;

"**Approval Orders**" means orders of the Canadian Court and the U.S. Bankruptcy Court, respectively, in substantially the forms attached hereto as Schedules II and III, respectively;

"**Bankruptcy Code**" means the *United States Bankruptcy Code*, 11 U.S.C. §§ 101, et seq.;

"**Bond Differentiation Claim**" has the meaning set forth in the Order of the Canadian Court dated September 11, 2006;

"**British Pounds Sterling**" and "**£**" each means lawful currency of the United Kingdom;

"**Business Day**" has the meaning set forth in Section 5.6;

"**CCAA Proceedings**" means the proceedings pending in the Canadian Court bearing Action No. 0501-17864;

"**CCEL**" has the meaning set forth in the preamble of this Agreement;

"**CCEL Member Liability Claim**" means any claim against, liability of, or indebtedness of CCEL on account of it being the member of CCRC;

"**CCEL Subscription Agreement Claim**" means Claim No. 3730 of CCEL against QCH listed in Exhibit A;

"**CCEL Subscription Agreement Guarantee Claim**" means Claim No. 4512 of CCEL against CORPX listed in Exhibit A;

"**CCEL-ULC1 Term Debentures**" means those three Term Debentures issued by CCEL to ULC1, each as amended by a separate Amending Agreement dated as of March 8, 2002;

"**CCNGP**" means Calpine Canada Natural Gas Partnership;

"**CCNGP Action**" means the action No. 0601 14198 entitled *Calpine Canada Natural Gas Partnership v. Calpine Energy Services Canada Partnership and Lisa Winslow* commenced in the Canadian Court on December 14, 2006;

"**CCRC**" means Calpine Canada Resources Company;

"**CCRC Claim**" has the meaning set forth in Section 2.3(c)(iii);

- 5 -

**"CCRC Partnership Claims"** means any Claims against CCRC on account of it being a partner in CESCA or CCNGP, to the extent there is a shortfall at CESCA or CCNGP, including any Claims of Calpine Power, L.P. against CCRC;

**"CCRC ULC1 Notes"** means the 8½% ULC1 Notes due 2008 in the principal amount of US$359,770,000 held by CCRC on the date hereof;

**"CCRC ULC1 Notes Sale"** has the meaning set forth in Section 2.4(a);

**"CESCA"** means Calpine Energy Services Canada Partnership;

**"CORPX"** has the meaning set forth in the preamble of this Agreement;

**"CORPX Notes Guarantee"** means that certain Guarantee Agreement dated as of April 25, 2001 executed by CORPX, as amended by a certain First Amendment to Guarantee Agreement dated as of October 16, 2001, executed by CORPX;

**"CORPX Releasors"** has the meaning set forth in Section 3.7;

**"CORPX Subscription Agreement Guarantee"** means the Guarantee dated as of March 8, 2002, executed by CORPX in favor of CCEL;

**"Calpine Senior Notes"** means, collectively, the 10.5% Senior Notes due 2006, the 7.625% Senior Notes due 2006, the 8.75% Senior Notes due 2007, the 7.875% Senior Notes due 2008 and the 7.75% Senior Notes due 2009, issued in each case by CORPX;

**"Calpine U.S."** has the meaning set forth in the preamble of this Agreement;

**"Canadian Administrative Claims"** has the meaning set forth in Section 2.3(d)(ii)(B);

**"Canadian Affiliates"** means any affiliates under the Control of the Canadian Debtors;

**"Canadian Court"** means the Court of Queen's Bench of Alberta;

**"Canadian Debtors"** has the meaning set forth in the preamble of this Agreement;

**"Canadian Dollars"** and **"C$"** each means lawful money of Canada;

**"Canadian Guaranteed Claims Determination Order"** has the meaning set forth in Section 2.8(a)(iv);

**"Canadian Order"** has the meaning set forth in Section 2.8(a);

**"Canadian ULC1 Notes"** has the meaning set forth in Recital C;

**"Canadian ULC1 Notes Sale Order"** has the meaning set forth in Section 2.4(b)(ii);

**"Claim"** means any right of a first Person against a second Person in connection with any indebtedness, liability or obligation of any kind of the second person in existence at the Petition Date and any interest accrued thereon and costs payable in respect thereof to and including the



- 6 -



Petition Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, by guarantee, surety, insurance deductible or otherwise, and whether or not such right is executory or anticipatory in nature, including the right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation is based in whole or in part on facts existing prior to the Petition Date;

"**Claims Procedure Order**" means the Order of the Canadian Court dated April 10, 2006, as amended by Order of the Canadian Court dated September 11, 2006;

"**Committees**" has the meaning set forth in Section 2.8(a)(iv);

"**Common "B" Share Purchase Agreements**" means those three share purchase agreements, each dated as of March 8, 2002, between ULC1 and QCH;

"**Control**" of a Person by another Person means that the second Person directly or indirectly possesses the power to direct or cause the direction of the management and policies of the first Person, whether through the ownership of securities or by contract;

"**Direct Claims Against CCRC**" means, collectively, (i) the Allowed ULC2 Claim, and (ii) all Claims against CCRC other than: (A) the CCRC Partnership Claims, and (B) all Claims of CCEL against CCRC;

"**Effective Date**" means the first Business Day following the date on which the last of the conditions set forth in Section 2.9 shall have been satisfied or complied with, or shall have been waived in accordance with this Agreement;

"**Euros**" and "**€**" each means lawful money of certain countries of the European Union;

"**Filed Amount**" means US$2,124,356,213.11, the stated amount of the ULC1 Indenture Trustee Notes Guarantee Claim, as of the Petition Date, as set forth in the ULC1 Indenture Trustee Notes Guarantee Proof of Claim**;**

"**Final Order**" means an order of a court of competent jurisdiction in respect of which the applicable appeal periods have expired without an appeal having been filed, or if an appeal has been filed, which order has been affirmed by a final order not subject to further appeal or review;

"**Global Settlement Outline**" has the meaning set forth in Recital F;

"**Governmental Authority**" means any domestic or foreign government, including any federal, provincial, state, territorial or municipal government, and any government agency, tribunal, commission or other authority lawfully exercising executive, legislative, judicial, regulatory or administrative functions of, or pertaining to, government**;**

"**Greenfield**" means Greenfield Energy Centre;

"**Greenfield Dismissal Order**" has the meaning set forth in Section 2.3(g);

- 7 -



"**Guaranteed Claims**" means those Claims set forth in Exhibit F;

"**Harbert Litigation**" means the proceedings in the Nova Scotia Supreme Court entitled *Harbert Distressed Investment Master Fund, Ltd. and Wilmington Trust Company v. Calpine Canada Energy Finance II ULC, et al.*, Docket S.H. 245975;

"**HSBC**" means HSBC Bank USA, National Association;

"**HSBC Canadian Marker Claims**" means, collectively, Claims No. 2-006, 3-018, 4-004, 5-032, 6-004, 7-012, 8-004, 9-002, 10-002, 11-004 and 12-031 set forth in Exhibit G;

"**HSBC U.S. Marker Claims**" means all claims referenced in Claim No. 5740 set forth in Exhibit G;

"**Intercompany Claims**" means the Claims between the Canadian Debtors and the U.S. Debtors, other than the Claims set forth in Exhibit E;

"**KERP**" means the Key Employee Retention Plan approved by order of the Canadian Court dated July 12, 2006;

"**Monitor**" means Ernst & Young Inc., the monitor of the Canadian Debtors during the CCAA Proceedings appointed by the Canadian Court;

"**Non-Approval Date**" shall mean the date that the Parties, acting together, mutually agree that one or more of the conditions set forth in Section 2.9 has not been and shall not be satisfied or waived on or prior to the Outside Date;

"**Original ULC1 Indenture**" has the meaning set forth in Recital C;

"**Outside Date**" means November 1, 2007, or such other date as may be mutually agreed to in writing by the Parties;

"**Parties**" has the meaning set forth in the preamble;

"**Person**" means any natural person, sole proprietorship, partnership, corporation, trust, joint venture, any Governmental Authority or any incorporated or unincorporated entity or association**;**

"**Petition Date**" has the meaning set forth in Recital A;

"**POA**" means a plan of arrangement sanctioned in the CCAA Proceedings;

"**POR**" means a plan of reorganization confirmed in the U.S. Proceedings;

"**POR Effective Date**" has the meaning set forth in Section 3.7;

"**Postpetition Interest**" has the meaning set forth in Section 3.3(a)(ii)(B);

"**Preliminary ULC1 Settlement Outline**" has the meaning set forth in Recital G;

- 8 -



"**Proven Claim**" means the amount of a Claim as conclusively determined, or deemed to have been determined, in accordance with the Claims Procedure Order, this Agreement or the CCAA;

"**QCH**" means Quintana Canada Holdings, LLC;

"**Reasonable Costs**" has the meaning set forth in Section 2.3(e)(i)(D);

"**Restructuring Claim**" means any right of any Person against one or more of the CCAA Debtors in connection with any indebtedness, liability or obligation of any kind owed to such Person arising out of the restructuring, repudiation or termination by the CCAA Debtors after the Petition Date of any contract, lease or other agreement, whether written or oral;

"**Saltend Corporate Entities**" means, collectively, Calpine European Finance, LLC, Calpine Finance (Jersey) Limited, Calpine European Funding (Jersey) Holdings Ltd., Calpine (Jersey) Holdings Limited, Calpine (Jersey) Limited, Calpine European Funding (Jersey) Limited, Calpine Energy Finance Luxembourg S.A.R.L., and Calpine UK Holdings Limited;

"**SEC**" means the Securities and Exchange Commission;

"**Subscription Agreements**" means those three Subscription Agreements executed by CCEL and QCH, each as amended by a separate Amending Agreement dated as of March 8, 2002;

"**ULC1**" has the meaning set forth in the preamble of this Agreement;

"**ULC1 Common "B" Share Purchase Agreement Claim**" means Claim No. 4514 of ULC1 against QCH listed on Exhibit A;

"**ULC1 Common "B" Share Purchase Agreement Guarantee Claim**" means Claim No. 4511 of ULC1 against CORPX listed on Exhibit A;

"**ULC1 Hybrid Note Structure**" means the contractual relationship among CORPX, QCH, ULC1 and CCEL, evidenced by, among other things, the Subscription Agreements, the Common "B" Share Purchase Agreements and the CCEL-ULC1 Term Debentures;

"**ULC1 Indenture**" has the meaning set forth in Recital C;

"**ULC1 Indenture Trustee**" has the meaning set forth in the preamble of this Agreement;

"**ULC1 Indenture Trustee Fees**" has the meaning set forth in Section 3.3(a)(ii)(D);

"**ULC1 Indenture Trustee Notes Claim**" means the Claim of the ULC1 Indenture Trustee, on behalf of itself and the ULC1 Noteholders, against ULC1 arising under the ULC1 Indenture;

"**ULC1 Indenture Trustee Notes Guarantee Allowed Claim**" has the meaning set forth in Section 3.3(a)(i);

"**ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Distribution Amount**" has the meaning set forth in Section 3.3(b)(ii);

- 9 -



"**ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Treatment**" has the meaning set forth in Section 3.3(b)(ii);

"**ULC1 Indenture Trustee Notes Guarantee Claim**" means the Claim of the ULC1 Indenture Trustee, on behalf of all ULC1 Noteholders, against CORPX, as set forth in the ULC1 Indenture Trustee Notes Guarantee Proof of Claim, arising under the CORPX Notes Guarantee;

"**ULC1 Indenture Trustee Notes Guarantee Proof of Claim**" means the proof of claim No. 5742 filed in the U.S. Proceedings, in the Filed Amount, as of the Petition Date;

"**ULC1 Noteholders**" means all holders of the ULC1 Notes;

"**ULC1 Releasees**" has the meaning set forth in Section 3.7;

"**ULC1 Security Interest**" means the valid, duly-perfected, first-priority security interest granted by CCEL to ULC1 pursuant to the CCEL-ULC1 Term Debentures, which security interest encumbers, among other things, the rights, interests and benefits of CCEL under the CORPX Subscription Agreement Guarantee, including the CCEL Subscription Agreement Guarantee Claim, and the proceeds thereof;

"**ULC1 Notes**" has the meaning set forth in Recital C;

"**ULC2**" has the meaning set forth in the preamble of this Agreement;

"**ULC2 Accrued Interest**" has the meaning set forth in Section 2.3(e)(vi);

"**ULC2 Indenture**" means that certain Indenture dated as of October 18, 2001 between ULC2 and Wilmington Trust Company;

"**ULC2 Indenture Trustee**" means Manufacturers and Traders Trust Company, solely in its capacity as indenture trustee under the ULC2 Indenture;

"**ULC2 Indenture Trustee's Allowed Guarantee Claim**" has the meaning set forth in Section 2.3(e)(iii);

"**ULC2 Senior Notes**" means (i) £200 million 8.875% Senior Notes due October 15, 2011 issued by ULC2 on October 18, 2001, and (ii) €175 million 8.375% Senior Notes due October 15, 2008 issued by ULC2 on October 18, 2001;

"**United States Dollars**", "**US Dollars**" and "**US$**" each means lawful money of the United States of America;

"**U.S. Administrative Claims**" has the meaning set forth in Section 2.3(d)(i);

"**U.S. Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York;

"**U.S. Debtors**" means, collectively, CORPX and those of its U.S. subsidiaries that are debtors in the U.S. Proceedings;

- 10 -

"**U.S. Order**" has the meaning set forth in Section 2.8(b);

 "**U.S. Guaranteed Claims Determination Order**" has the meaning set forth in Section 2.8(b)(v);

"**U.S. Proceedings**" means the proceedings pending in the U.S. Bankruptcy Court under Case No. 05-60200, in Re: Calpine Corporation, et al.

## 1.2    Headings

The division of this Agreement into articles and sections and the insertion of headings are for the convenience of reference only and will not affect the construction or interpretation of this Agreement.   Unless something in the subject matter or context is inconsistent therewith, references herein to "**Articles**", "**Sections**" or "**Schedules**" are to articles or sections of, or schedules to, this Agreement.

## 1.3    Gender and Number

In this Agreement, unless the context indicates otherwise, words importing the singular number only will include the plural and vice versa, words importing the masculine gender will include the feminine and neuter genders and vice versa.

## 1.4    Day Not a Business Day

In the event that any day on or before which any action is required to be taken hereunder is not a Business Day, then such action will be required to be taken on or before the requisite time on the next succeeding day that is a Business Day.

## 1.5    Waiver, Amendment

Except as expressly provided in this Agreement, no amendment or waiver of this Agreement will be binding unless executed in writing by the Party to be bound thereby.   No waiver of any provision of this Agreement will constitute a waiver of any other provision nor will any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

## 1.6    Construction

The words "including" and "includes" where used in this Agreement will be deemed to mean "including, without limitation" and "includes, without limitation", respectively.



- 11 -

## ARTICLE II
## SETTLEMENT BETWEEN THE U.S. DEBTORS AND CANADIAN DEBTORS

**2.1** **Mutual Release of Claims.**

Except as otherwise is specifically provided herein, as of the Effective Date:

(a) the Canadian Debtors, for themselves, their successors, assigns, and the Canadian Affiliates, and anyone claiming through them (including, without limitation, creditors of the Canadian Debtors claiming through the Canadian Debtors) (each in their capacity as such) hereby irrevocably, fully, finally, and forever waive, release, and discharge any and all Claims against all of the entities constituting Calpine U.S. and their successors, assigns, affiliates (other than the Canadian Debtors and Canadian Affiliates) and estates, in law, equity or otherwise, including all Claims filed by the Canadian Debtors in the U.S. Proceedings, all of which shall be withdrawn with prejudice; and

(b) all of the entities constituting Calpine U.S. for themselves and their successors, assigns, affiliates (other than the Canadian Debtors and the Canadian Affiliates, but including the estates of the U.S. Debtors established under the Bankruptcy Code), and anyone claiming through them (including, without limitation, creditors of the U.S. Debtors claiming through the U.S. Debtors) (each in their capacity as such) hereby irrevocably, fully, finally, and forever waive, release, and discharge any and all Claims against the Canadian Debtors and their successors, assigns and the Canadian Affiliates, in law, equity or otherwise, including all Claims filed by the U.S. Debtors in the CCAA Proceedings (including any Claims relating to the sales proceeds of the sale of the Saltend Energy Centre), all of which shall be withdrawn with prejudice,

provided that the Parties do not intend for this Section 2.1 to constitute, and in no event shall this Section 2.1 be deemed to be a release by the Canadian Debtors or by Calpine U.S., as the case may be, of any of the Claims listed on Exhibit D and Exhibit E.

**2.2** **Release of Claims Listed on Exhibit A and Exhibit B**

(a) Notwithstanding the introductory language of Section 2.1, the parties hereby agree that, for the purposes of the Claims listed on Exhibit A and Exhibit B, the releases and withdrawals of such Claims, as prescribed by Section 2.1, shall become effective on a date as mutually agreed in writing by the Canadian Debtors and the U.S. Debtors but in no event later than the POR Effective Date, provided, however, that the Canadian Debtors and the U.S. Debtors may, by mutual written agreement entered into on or prior to the POR Effective Date:

(i) elect to delay the effectiveness of the release and withdrawal of one or more of the Claims listed on Exhibit A and Exhibit B to a date that is subsequent to the POR Effective Date, or

- 12 -

(ii)    elect to exclude one or more of the Claims listed on Exhibit A or Exhibit B from the release and withdrawal prescribed by Section 2.1, in which event such excluded Claims shall remain subject to the treatment set forth in Section 2.2(b).

(b)    With effect as of the Effective Date, and pending any release and/or withdrawal contemplated by Section 2.2(a), the Canadian Debtors and the U.S. Debtors hereby agree that any distributions on any of the Claims listed in Exhibit A and Exhibit B shall only be made after distributions have been made on account of all other Claims against the applicable Canadian Debtor or U.S. Debtor, provided, however, that the Canadian Debtors and the U.S. Debtors may, by mutual written agreement, elect to exclude one or more of the Claims listed on Exhibit A or Exhibit B from the treatment contemplated by this Section 2.2(b).

(c)    For the avoidance of doubt, the Canadian Debtors and the U.S. Debtors hereby acknowledge and agree that this Section 2.2 shall not cause the settlement or extinguishment of any Claims listed in Exhibit A and Exhibit B prior to the POR Effective Date, unless such Claims are satisfied in full.

**2.3    Settlements and other Resolutions of Claims.**



(a)    Delay for Distribution of CCEL Claims.  With effect as of the Effective Date, CCEL hereby agrees that distributions, if any, on all of the Claims of CCEL against CCRC including any Claims arising from the ULC1 Hybrid Note Structure, shall only be made after distributions have been made on account of the Claims against CCRC in the priority set forth in Section 2.9(e).

(b)    Settlement of CCRC ULC1 Notes Claim.

(i)    Subject to Article IV, with effect as of the CCRC ULC1 Notes Sale, the U.S. Debtors shall withdraw, with prejudice, their partial objection filed in the U.S. Proceedings to Proof of Claim No. 5742 relating to the CCRC ULC1 Notes [Docket No. 3667].

(ii)    Subject to Article IV, with effect as of the CCRC ULC1 Notes Sale, the U.S Debtors hereby irrevocably waive their right to assert any other Claims and/or defences in respect of the CCRC ULC1 Notes against CCRC or any prior or subsequent owner of the CCRC ULC1 Notes (including any Bond Differentiation Claims and/or any Claims and/or defences with respect to the sales proceeds from the sale of the Saltend Energy Centre) and any discovery rights in relation to any such Claims and/or defences.

(c)    Settlement of Canada and U.S. Intercompany Claims.  As of the Effective Date:

(i)    the dollar amount of all Intercompany Claims is as set forth in Exhibit D attached hereto;

- 13 -

(ii)     the Intercompany Claims in the dollar amounts set forth in Exhibit D will be allowed, general non-subordinated unsecured Claims against the applicable debtor(s) in the U.S. Proceedings or the CCAA Proceedings, as the case may be, that will be treated the same as all other allowed non-subordinated general unsecured Claims against the applicable Debtor(s) under any POR or under any POA, as the case may be;

(iii)    Claim No. 4448 of CCRC against QCH set forth on Exhibit D, which includes CCRC's Claim against the U.S. Debtors in respect of the liability of CCRC for applicable non-resident withholding taxes related to the intercompany advance that is the basis of Claim No. 4448, shall be satisfied through the granting to CCRC in the U.S. Proceedings of an allowed non-subordinated general unsecured Claim (not subject to set-off, counterclaim or defence) against QCH, in the amount of US$232 million (the "**CCRC Claim**"), which CCRC Claim shall be guaranteed in full by CORPX;

(iv)     in no event shall distributions to CCRC under the POR on account of the CCRC Claim (or any guarantee thereof) exceed an amount equal to C$181,431,000 (plus an amount equal to the aggregate of all liabilities and obligations of CCRC for tax penalties and interest, if any, arising from the non-resident withholding taxes described in Section 2.3(c)(iii)). The CCRC Claim shall be calculated for distribution purposes in U.S. dollars in an amount yielded by the conversion from Canadian dollars at the noon spot rate effective as of the date of confirmation of the POR for Canadian currency of Scotiabank, and such conversion shall be calculated and performed in consultation with the Monitor. Unless otherwise prohibited by order in the U.S. Proceedings or the CCAA Proceedings, QCH shall pay or make distributions on account of interest at the rate set out in the promissory note supporting Claim No. 4448; and

(v)      except as otherwise specifically provided in this Section 2.3(c), the Parties acknowledge and agree that the rights of the Canadian Debtors with respect to the treatment under any POR of any allowed Intercompany Claims of the Canadian Debtors (including with respect to any possible substantive consolidation of some or all of the U.S. Debtors and their estates), and the rights of the U.S. Debtors with respect to the treatment under any POA of any allowed Intercompany Claims of the U.S. Debtors (including with respect to any possible substantive consolidation of some or all of the Canadian Debtors), shall be fully preserved.

(d)      <u>Post-Petition Claims</u>.

(i)      The Canadian Debtors shall retain any administrative expense priority claims that have been, or may in the future be, asserted against the U.S. Debtors in the U.S. Proceedings pursuant to Section 503(b) or any other applicable provisions of the Bankruptcy Code relating to goods or services rendered by any  Canadian Debtor to one or more of the U.S. Debtors

- 14 -

following the Petition Date (the "**U.S. Administrative Claims**"), <u>provided, however</u>, that the U.S. Debtors reserve their rights with respect to the allowance of any such U.S. Administrative Claims.

(ii)     The U.S. Debtors shall retain:

(A)     any Restructuring Claims that have been, and may in the future be, asserted against the Canadian Debtors in the CCAA Proceedings, and

(B)     any claims for unpaid costs and expenses pursuant to paragraphs 9(a) and 18(a) of the Initial Order of the Canadian Court, relating to goods or services rendered by any U.S. Debtor to one or more of the Canadian Debtors following the Petition Date ("**Canadian Administrative Claims**"), including:

(1)     goods or services provided by any U.S. Debtor to any Canadian Debtor in connection with that certain Transition Agreement between Calpine Canada Power Ltd. and HCP Acquisition Inc. dated February 13, 2007;

(2)     any amounts in CESCA bank accounts owing to U.S. Debtors relating to U.S. postpetition gas procurement and transportation activity under CESCA contracts;

(3)     any amounts in CESCA bank accounts owing to the U.S. Debtors relating to Canadian Goods and Services Tax refunds relating to U.S. postpetition gas procurement and transportation activity under CESCA contracts;

(4)     the U.S. Debtors' share of any U.S. posted refundable deposits in CESCA bank accounts relating to U.S. postpetition gas procurement and transportation activity under CESCA contracts;

(5)     any reasonable attorneys' fees and reasonable costs incurred in connection with the dissolution of the Saltend Corporate Entities and/or the liquidation of the assets of the Saltend Corporate Entities; and

(6)     any other appropriate and supportable Canadian Administrative Claims;

<u>provided, however</u>, that the Canadian Debtors reserve their rights with respect to allowance of any such Restructuring Claims and Canadian Administrative Claims.

- 15 -

(e)     <u>Settlement of ULC2 Claims</u>.

As of the Effective Date:

(i)     the ULC2 Indenture Trustee, in its capacity as such and on behalf of the ULC2 Noteholders, is hereby afforded one allowed general unsecured Claim in the CCAA Proceedings against ULC2 in an amount in Canadian Dollars equivalent to the following amounts and in respect of the following components:

(A)     for outstanding principal amount of the ULC2 Senior Notes, £121,409,000 and €117,360,000;

(B)     for accrued and unpaid interest until the Petition Date, £1,975,426 and €1,801,965;

(C)     for accrued and unpaid interest from December 21, 2005 through the date of distribution, £14,037,494 and €12,804,873 as of April 15, 2007, plus a per diem amount equal to £29,931 and €27,303 to and including the date of distribution;

(D)     an amount equal to the reasonable professional fees, costs and expenses of the Ad Hoc ULC2 Noteholders Committee and the ULC2 Indenture Trustee, including the reasonable professional fees, costs and expenses of their respective U.S. and Canadian counsel incurred in connection with the U.S. Proceedings and CCAA Proceedings (collectively, the "**Reasonable Costs**") through to the date of distribution in the CCAA Proceedings;

all on account of the ULC2 Senior Notes (collectively, the "**Allowed ULC2 Indenture Trustee Claim**"). The Parties hereby acknowledge and agree that the components of the Allowed ULC2 Indenture Trustee Claim are and will be denominated in United States Dollars, Euros and/or British Pounds Sterling (as applicable), and that any such amounts as may be payable by a Canadian Debtor hereunder, or as may be allowed as a Claim in the CCAA Proceedings, shall be paid or allowed, as the case may be, in Canadian Dollars in an amount yielded by the conversion from United States Dollars, Euro and/or British Pounds Sterling (as applicable) at the noon spot rate effective on the date of distribution for Canadian currency of Scotiabank, and such conversion shall be calculated and performed in consultation with the Monitor;

(ii)    ULC2 is hereby afforded one general, unsecured Proven Claim in the CCAA Proceedings against CCRC (the "**Allowed ULC2 Claim**") in an amount not less than an amount equal to the aggregate of the Allowed ULC2 Indenture Trustee Claim plus all other Proven Claims against ULC2.

- 16 -

(iii)    the ULC2 Indenture Trustee is hereby granted one allowed, general unsecured Claim in the U.S. Proceedings against CORPX in an amount equal to US$361,660,821.40 (the "**ULC2 Indenture Trustee's Allowed Guarantee Claim**");

(iv)    the U.S. and Canadian Debtors hereby acknowledge and agree that:

    (A)    any recovery by the ULC2 Indenture Trustee pursuant to this Section 2.3(e) shall come first from distributions from ULC2 in the CCAA Proceedings and, to the extent of any deficiency, second from distributions in the U.S. Proceedings, and

    (B)    any recovery by the ULC2 Indenture Trustee from ULC2 pursuant to this Section 2.3(e) will be applied as follows: first, to Reasonable Costs; second, to interest calculated in accordance with Section 2.3(e)(i)(B) and(C); and third, to principal owing in respect of the ULC2 Senior Notes.

(v)    the U.S. Debtors hereby acknowledge and agree that any recovery received by the ULC2 Indenture Trustee from ULC2 pursuant to this Section 2.3(e) will not reduce the amount of the ULC2 Indenture Trustee's Allowed Guarantee Claim and that there shall be no reallocation of payments received in the CCAA Proceedings of Reasonable Costs or interest to payment of principal in respect of the Allowed ULC2 Indenture Trustee Claim; provided, however, that the ULC2 Indenture Trustee shall not be entitled to receive any distributions under or through the POR in excess of any portion of the ULC2 Indenture Trustee's Allowed Guarantee Claim that remains unpaid after any distributions are made on the Allowed ULC2 Indenture Trustee Claim in the CCAA Proceedings (and after such distributions are allocated as provided in the first paragraph of this Section 2.3(e)(v)), unless the POR provides for the payment of interest accruing from and after the Petition Date on similarly situated claims, in which case the ULC2 Indenture Trustee's Allowed Guarantee Claim shall include a Claim in respect of such accrued interest; and

(vi)    the U.S. Debtors and the Canadian Debtors hereby acknowledge and agree that the ULC2 Indenture Trustee may assert, in the CCAA Proceedings and/or the U.S. Proceedings, on their own behalf or on behalf of the ULC2 Noteholders, that it is entitled to payment of amounts beyond those encompassed in the Allowed ULC2 Indenture Trustee Claim and/or the ULC2 Indenture Trustee's Allowed Guarantee Claim, including interest accrued on amounts of unpaid interest due and owing from April 15, 2006 to the date of distribution ("**ULC2 Accrued Interest**"), fees incurred in the Harbert Litigation, and/or a "make-whole amount". The U.S. Debtors and the Canadian Debtors reserve all of their respective rights to contest any such assertion.

- 17 -

(f)    <u>Settlement of Claims against Canadian Debtors with related CORPX Guarantees</u>.

(i)    Forthwith following the date of this Agreement, the U.S. and Canadian Debtors shall request that the U.S. Bankruptcy Court and Canadian Court, respectively, set aside any orders outstanding as of the date of this Agreement requiring the negotiation and approval of a claims specific protocol. Following the date of this Agreement, the U.S. and Canadian Debtors hereby agree to confer in good faith to determine whether any remaining Claims unresolved by this Agreement warrant the approval of a claims specific protocol by the U.S. Bankruptcy Court and the Canadian Court.

(ii)    Forthwith following the date of this Agreement, the Canadian Debtors shall seek and consent to a Canadian Guaranteed Claims Determination Order. The Canadian Debtors hereby agree that the U.S. Debtors and Committees will be entitled to the same document production, written and oral discovery, evidence presentation and appeal rights as any other full party in interest in the CCAA Proceedings with respect to the adjudication of Guaranteed Claims.

(iii)    From the date of this Agreement, the Canadian Debtors shall not commence the process for the delivery of further notices of revision or notices of disallowance by the Monitor pursuant to paragraph 23 of the Claims Procedure Order, nor seek any determination with respect to any Guaranteed Claim, without the written consent of the U.S. Debtors; <u>provided, however</u>, that nothing herein shall be construed as limiting the Canadian Court from continuing to exercise its jurisdiction over such process.

(iv)    From the date of this Agreement, no Guaranteed Claim shall be settled or otherwise consensually resolved by the Canadian Debtors or the Monitor without the written consent of the U.S. Debtors.

(v)    From the date of this Agreement, the U.S. Debtors and the Canadian Debtors shall cooperate with each other in sharing with and otherwise making available to each other such documents, information and witnesses relating to the Guaranteed Claims and the position of each with respect thereto, all in accordance with the terms of a common interest privilege agreement to be negotiated and agreed upon by both Parties, acting reasonably.

(vi)    Forthwith following the date of this Agreement, the U.S. Debtors shall seek and consent to a U.S. Guaranteed Claims Determination Order.

(vii)    Nothing herein shall be interpreted or construed so as to prevent the U.S. Debtors from collecting from the Canadian Debtors any guarantee fee to which the U.S. Debtors are contractually entitled.

DRAFT

- 18 -



(g)     Settlement of Greenfield Litigation.

   (i)     Forthwith following the date of this Agreement, CCNGP shall apply to the Canadian Court to request that the CCNGP Action be dismissed with prejudice and without costs and shall consent to such dismissal, with such dismissal to be effective as of the Effective Date (the "**Greenfield Dismissal Order**").

   (ii)    The U.S. Bankruptcy Court's order approving this Agreement shall contain language amending that certain Stipulation and Agreed Order Approving Interim Resolution of Certain Disputes Relating to the Greenfield Energy Centre [Docket No. 4345], dated April 12, 2007, to make it consistent with the terms of this Agreement.

(h)     TTS Allocation.

Upon the Effective Date, the sale proceeds from the sale of Thomassen Turbine Systems, B.V. held under the Escrow Agreement dated as of September 15, 2006 among CCRC, Power Systems MFG., LLC, Calpine European Finance, LLC, Calpine Unrestricted Holdings, LLC and CORPX shall be distributed 50% to CCRC and 50% to CORPX, net of escrow fees and other reasonable administrative expenses to be shared equally by CCRC and CORPX, pursuant to the terms of such Escrow Agreement.  CCRC, in its sole discretion, may elect to not share in the TTS sale proceeds and, in so doing, CCRC will reduce the amount payable pursuant to the Allowed U.S. Administrative Charge by the amount CCRC would have received from the TTS sale proceeds had CCRC not so elected to not share in the TTS sale proceeds.

**2.4     Sale of CCRC ULC1 Notes and Charge Upon the Proceeds in Favor of the U.S. Debtors.**

(a)     Forthwith following the date of this Agreement, CCRC shall commence a process for the sale of the CCRC ULC1 Notes (the "**CCRC ULC1 Notes Sale**") so as to be in a position, as soon as practicable following the Approval Date, to pursue and complete the CCRC ULC1 Notes Sale, subject to the provisions of Section 2.4(b) below.

(b)     As soon as reasonably practicable following the Approval Date, CCRC shall, subject to the provisions of this Section 2.4(b), conclude the CCRC ULC1 Notes Sale, which CCRC ULC1 Notes Sale:

   (i)     shall be at a price and on other terms satisfactory to CCRC in its sole discretion acting reasonably, and with the consent of the Monitor, and consistent with CCRC's duties to maximize value for its stakeholders; and

   (ii)    shall be pursuant to an order of the Canadian Court (the "**Canadian ULC1 Notes Sale Order**") that:

       (A)     shall be in substantially the form attached hereto as Schedule IV; and

- 19 -

(B)     shall be acceptable to the U.S. Debtors acting reasonably.

(c)     From the Approval Date until the closing of the CCRC ULC1 Note Sale, the Canadian Debtors and the Monitor will consult with the Canadian Debtors' stakeholders, including the U.S. Debtors, about the CCRC ULC1 Notes Sale terms and process as it develops. The Canadian Debtors and the Monitor shall report to the Canadian Court on the progress of the CCRC ULC1 Notes Sale if such sale has not closed by a date that is 30 days after the Approval Date.

(d)     From the Approval Date until the closing of the CCRC ULC1 Note Sale, the U.S. Debtors shall provide any and all administrative cooperation required by the Canadian Debtors to effect the CCRC ULC1 Notes Sale pursuant to authority provided by an order of the U.S. Bankruptcy Court, which order shall be acceptable to the Canadian Debtors acting reasonably and shall be part of the U.S. Order.

(e)     CORPX shall be granted, and the Canadian Debtors shall seek and consent to, an allowed first ranking charge (the "**Allowed U.S. Administrative Charge**") against CCRC on the net proceeds from the CCRC ULC1 Notes Sale in the amount of US$75 million, without interest, with priority of distribution over any distributions made by CCRC on account of: (i) the Direct Claims Against CCRC, and (ii) the CCRC Partnership Claims.

(f)     As soon as practicable after closing of the CCRC ULC1 Notes Sale and the occurrence of the Effective Date, the Canadian Debtors shall apply for and use their commercially reasonable efforts to obtain an order of the Canadian Court authorizing an immediate distribution of cash from CCRC to CORPX on account of the Allowed U.S. Administrative Charge and to pay all of the Direct Claims Against CCRC in full.

## 2.5   **Allocation of Costs.**

The payment of any amounts under this Agreement shall be subject to the Monitor and the Canadian Debtors being reasonably satisfied that, following such payment, the Canadian Debtors shall retain sufficient funds to pay the following amounts in full, when such amounts become due and payable:

(a)     the amounts payable pursuant to the KERP. Without limiting the foregoing, the Parties hereby agree that the amount of the Pool 4 payments payable pursuant to the KERP is equal to C$1,331,000.

(b)     the professional costs of the Canadian Debtors and Monitor, as may be allocated by the Monitor, acting reasonably.

## 2.6   **Mutual Tax Benefits.**

The U.S. and Canadian Debtors shall use commercially reasonable efforts to cooperatively implement, perform and execute the terms of the Agreement in a manner that is tax advantageous for both the U.S. Debtors and the Canadian Debtors while retaining the same



- 20 -

economic benefits of the Agreement.  Such efforts (which may occur before the Effective Date) may include, without limitation:



(a) taking steps so as to change the tax classification of any of the U.S. Debtors or Canadian Debtors, including the making of any elections necessary to change such classification;

(b) the issuance of stock by CORPX to any direct or indirect subsidiaries of CORPX as a capital contribution or in exchange for shares of the subsidiary;

(c) the reduction of capital in any direct or indirect subsidiary of CORPX;

(d) the payment or the repayment of any indebtedness in order to avoid withholding tax;

(e) the delivery or transfer of CORPX stock in payment of any intercompany indebtedness;

(f) the transfer of contractual rights against a Canadian Debtor from one U.S. Debtor to a different U.S. Debtor; or

(g) the implementation of Section 2.2.

**2.7** **Plan Matters**

(a) The Parties acknowledge and agree that the Claims between the Canadian Debtors and the U.S. Debtors listed in Exhibit E shall be subject to treatment under any POR, provided that the U.S. Debtors hereby reserve all rights with respect to the allowance of such Claims, and the Canadian Debtors hereby reserve all rights to argue that such Claims should be allowed in such amounts that they believe are appropriate, and reserve all rights with respect to the treatment of such Claims.

(b) The U.S. Debtors hereby covenant that they shall not propose or support any POR that is inconsistent with the terms of this Agreement.

(c) The Canadian Debtors hereby covenant that they shall not propose or support any POA that is inconsistent with the terms of this Agreement.

**2.8** **Court Approval Process.**

(a) Forthwith following the date of this Agreement, the Canadian Debtors shall seek and consent to an order, in substantially the form attached hereto as Schedule II (the "**Canadian Order**"),  from the Canadian Court approving this Agreement, which order shall include:

(i) an order barring forever all Claims (except as otherwise specifically provided in this Agreement) by the Canadian Debtors and U.S. Debtors, and their respective successors, assigns, applicable affiliates, and anyone (including creditors of the respective Canadian and U.S. Debtors) claiming

- 21 -

through them (all in their capacity as such), against the other, whether or not asserted in the CCAA Proceedings, the U.S. Proceedings or other court proceedings, including Claims for oppression or similar statutory or common law relief;

(ii)   a provision whereby, in the event that the entitlement of the ULC2 Indenture Trustee and/or the ULC2 Noteholders to the ULC2 Accrued Interest, fees they incurred in the Harbert Litigation, and/or to a "make-whole amount", has not been resolved by the date upon which distributions are to be made from CCRC, CCRC may establish and fund, as appropriate, an escrow account or other reserve for the payment of such amounts, as may be subsequently determined by the U.S. Bankruptcy Court to be payable in accordance with the terms of the Indenture and related agreements, which are governed by New York law;

(iii)   a provision whereby CORPX shall be granted, and the Canadian Debtors agree to seek and consent to, the Allowed U.S. Administrative Charge against CCRC on the net proceeds from the CCRC ULC1 Notes Sale in the amount of US$75 million, without interest, with priority of distribution over any distributions made by CCRC on account of (i) the Direct Claims Against CCRC, and (ii) any CCRC Partnership Claims;

(iv)   an order made under paragraph 29 of the Claims Procedure Order (the "**Canadian Guaranteed Claims Determination Order**"), which grants to the U.S. Debtors, and the official statutory committees appointed in the U.S. Proceedings (the "**Committees**"), full standing in any claims determination hearing process held by the Canadian Court (and any Canadian appellate court) in respect of the Guaranteed Claims. Without limiting the generality of the foregoing, the U.S. Debtors and the Committees will be entitled to all document production, written and oral discovery, evidence presentation and appeal rights as any other full party in interest. The Canadian Guaranteed Claims Determination Order will also provide for the manner of participation in the judicial claims determinations of Guaranteed Claims by guarantors who have admitted their guarantee obligations to ensure that such guarantors have all of their rights of participation preserved, including the right to raise and have fully determined any defences that the Canadian Debtor or Monitor could have raised to the creditor's claims notwithstanding any statements of the Canadian Debtors' positions in any notices of revision that they have issued to date;

(v)   an order that any orders of the Canadian Court outstanding as of the date of this Agreement requiring the negotiation and approval of a claims specific protocol be set aside; and

(vi)   an order releasing CCEL from all CCEL Member Liability Claims, and barring forever all CCEL Member Liability Claims.

- 22 -

(b)     Forthwith following the date of this Agreement, the U.S. Debtors shall seek and consent to an order, in substantially the form attached hereto as Schedule III (the "**U.S. Order**"), from the U.S. Bankruptcy Court approving this Agreement which order shall include:

(i)     an order barring forever all Claims (except as otherwise specifically provided in this Agreement) by the Canadian Debtors and U.S. Debtors, and their respective successors, assigns, applicable affiliates, and anyone (including creditors of the respective Canadian and U.S. Debtors) claiming through them (all in their capacity as such), against the other, whether or not asserted in the CCAA Proceedings, the U.S. Proceedings or other court proceedings, including Claims for oppression or similar statutory or common law relief;

(ii)    a provision whereby, in the event that the entitlement of the ULC2 Indenture Trustee and/or the ULC2 Noteholders to ULC2 Accrued Interest, fees they incurred in the Harbert Litigation, and/or to a "make-whole amount", has not been resolved by the date upon which distributions are to be made from CCRC, CCRC may establish and fund, as appropriate, an escrow account or other reserve for the payment of such amounts, as may be subsequently determined by the U.S. Bankruptcy Court to be payable in accordance with the terms of the Indenture and related agreements, which are governed by New York law;

(iii)   a provision detailing all administrative cooperation required by the Canadian Debtors to effect the CCRC ULC1 Notes Sale;

(iv)    an order that any orders of the U.S. Bankruptcy Court outstanding as of the date of this Agreement requiring the negotiation and approval of a claims specific protocol be set aside.

(v)     an order (the "**U.S. Guaranteed Claims Determination Order**"), which shall:

(A)    waive the U.S. Debtors' right to challenge any alleged guarantee of the Guaranteed Claims;

(B)    grant comity to the determination by the Canadian Court (and any Canadian appellate court) of the validity and quantum of any Guaranteed Claim; and

(C)    provide that Claims filed in the U.S. Proceedings on account of any Guaranteed Claims will be allowed, as general unsecured non-subordinated claims against the U.S. Debtor that is the guarantor, in the U.S. Proceedings in the amount of the Guaranteed Claim as determined by the Canadian Court, without any further claim adjudication process or order of the U.S. Bankruptcy Court and



- 23 -



without any right of any party in interest to challenge the validity or quantum of such allowed Guaranteed Claims;

provided, however, that the holders of the Guaranteed Claims shall not be entitled to actually receive any distributions under or through the POR in excess of any actual unpaid portion of such Guaranteed Claims, unless the POR provides for the payment of postpetition interest on other general unsecured non-subordinated Claims, in which case the Guaranteed Claims shall include postpetition interest.

### 2.9    Conditions to Settlement between the U.S. Debtors and the Canadian Debtors

Except as otherwise specifically provided for in this Agreement, the obligations of each of the Parties to complete the transactions contemplated in Article II of this Agreement are subject to the satisfaction of, or compliance with, on or prior to the Outside Date, each of the following conditions, provided that the U.S Debtors and the Canadian Debtors may mutually agree in writing to waive, one or more of the following conditions or any term or condition thereof (and in the case of waiver of any of the conditions specified in Section 2.9(b)(i), 2.9(b)(ii) or 2.9(f), such mutual written agreement shall include the ULC1 Indenture Trustee):

(a)    Compliance with and Performance of Covenants.   Each party will have fulfilled or complied in all material respects with all covenants and obligations set forth in the following provisions of this Settlement Agreement, to be fulfilled or complied with by it at or prior to the Effective Date:

    (i)      Section 2.3(b);

    (ii)      Section 2.3(f);

    (iii)      Section 2.3(g);

    (iv)      Section 2.4;

    (v)      Section 2.5;

    (vi)      Section 2.6; and

    (vii)      Section 2.8.

(b)    Court Approvals.   The following orders will have been granted and be in full force and effect:

    (i)      the U.S. Order will have been entered by the U.S. Bankruptcy Court.

    (ii)      the Canadian Order will have been entered by the Canadian Court.

    (iii)      the Canadian Guaranteed Claims Determination Order will have been entered by the U.S. Court.

- 24 -



    (iv)    the U.S. Guaranteed Claims Determination Order will have been entered by the Canadian Court.

    (v)    the Canadian ULC1 Notes Sale Order will have been entered by the Canadian Court.

(c)    <u>Sale of CCRC ULC1 Notes</u>.  CCRC shall have sold the CCRC ULC1 Notes (the "**CCRC ULC1 Notes Sale**") in accordance with Section 2.4.

(d)    <u>Withdrawal of Certain Non Debtor Claims</u>.  The Claims set forth on Exhibit G shall have been withdrawn with prejudice or dismissed with prejudice.

(e)    <u>Settlement of Priorities at CCRC</u>.  The Canadian Court shall have ordered, as part of the Canadian Order, that the priorities of Claims against CCRC shall be as follows:

    (i)    all Direct Claims Against CCRC are to be paid before any CCRC Partnership Claims; and

    (ii)    all CCRC Partnership Claims are to be paid before any of CCEL's Claims against CCRC.

(f)    <u>Settlement Between the U.S. Debtors and the ULC1 Indenture Trustee</u>.  The conditions set forth in Section 3.8 shall have been satisfied or waived in writing by the Parties on or prior to the Effective Date.

### ARTICLE III
### SETTLEMENT BETWEEN THE U.S. DEBTORS
### AND THE ULC1 INDENTURE TRUSTEE

**3.1**    <u>**Representations and Warranties Relating to the ULC1 Indenture Trustee.**</u>

The ULC1 Indenture Trustee, for itself, represents and warrants to CORPX and the Canadian Debtors as follows:

(a)    <u>Organization, Existence, Good Standing and Authority</u>.  The ULC1 Indenture Trustee is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has all requisite power and authority to execute this Agreement and to consummate the transactions contemplated hereby.

(b)    <u>Corporate Power</u>.  The ULC1 Indenture Trustee has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (A) have been duly and validly authorized by it and (B) are not in contravention of its organization documents or any material agreement specifically applicable to it.  Without limiting the foregoing, the ULCI Indenture Trustee hereby represents and warrants that it has received a written and binding direction from holders of a majority in aggregate principal amount of each of the two series of the ULC1

- 25 -

Notes to enter into this Agreement, and to take all such further actions necessary or appropriate to consummate the transactions contemplated by this Agreement.

(c)   Enforceability.  Subject to the entry of the U.S. Order, this Agreement constitutes the legal, valid and binding obligation of the ULC1 Indenture Trustee, enforceable against it in accordance with its terms.

(d)   No Violation.  The execution, delivery and performance of this Agreement does not and will not (i) violate any law, rule, regulation or court order to which the ULC1 Indenture Trustee is subject; or (ii) conflict with or result in a breach of the organizational or governing documents of the ULC1 Indenture Trustee or any agreement or instrument to which it is a party or by which it or its properties are bound.

(e)   No Proceedings Adversely Affect Agreement.  No proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against the ULC1 Indenture Trustee which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

**3.2   Withdrawal of Marker Claims.**

With effect as of the Effective Date:

(a)   the HSBC U.S. Marker Claims shall be withdrawn with prejudice or dismissed with prejudice; and

(b)   the HSBC Canadian Marker Claims shall be withdrawn with prejudice or dismissed with prejudice.

**3.3   Allowance, Treatment and Classification of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim.**

(a)   Allowance.  The U.S. Debtors and the ULC1 Indenture Trustee hereby acknowledge and agree that:

(i)   as of the Effective Date, the ULC1 Indenture Trustee, on behalf of the ULC1 Noteholders, shall be afforded one allowed, general, unsecured Claim against CORPX's estate in the amount of US$3,505,187,751.63 (the "**ULC1 Indenture Trustee Notes Guarantee Allowed Claim**") based upon the ULC1 Notes, which amount of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim is equal to the product of 1.65 times the Filed Amount[1];

---

[1] Approximately $134 million of ULC1 Notes are held by CORPX and $10 million of ULC1 Notes are held by QCH.  For the avoidance of doubt, in addition to the ULC1 Notes held by parties other than the U.S. Debtors, the



- 26 -

(ii)     the ULC1 Indenture Trustee Notes Guarantee Allowed Claim shall include the following components, each of which shall be deemed allowed:

(A)     a claim for the outstanding principal balance of the ULC1 Notes, together with accrued and unpaid interest thereon, as of the Petition Date, as set forth in the ULC1 Indenture Trustee Notes Guarantee Proof of Claim;

(B)     a claim for the accrued and unpaid interest on the Filed Amount at the contract rate from the Petition Date up to and including the date on which the ULC1 Indenture Trustee Notes Guarantee Allowed Claim (including interest compounded semi-annually) ("**Postpetition Interest**") is satisfied in full, to the extent provided in Section 3.3(b)(ii);

(C)     a claim for the reasonable fees, costs and expenses of the Ad Hoc ULC1 Noteholders Committee, including the reasonable fees, costs and expenses of its U.S. and Canadian counsel and its financial adviser, incurred, and to be incurred, by the Ad Hoc ULC1 Noteholders Committee in connection with the U.S. Proceedings and the CCAA Proceedings (all such reasonable fees, costs and expenses, collectively, the "**Ad Hoc Committee Fees**"), in an amount not to exceed US$8 million; and

(D)     a claim for the reasonable fees, costs and expenses of the ULC1 Indenture Trustee, including the reasonable fees, costs and expenses of its U.S. and Canadian counsel, incurred, and to be incurred, by the ULC1 Indenture Trustee in connection with the U.S. Proceedings and the CCAA Proceedings (all such reasonable fees, costs and expenses, collectively, the "**ULC1 Indenture Trustee Fees**").

(b)     <u>Treatment of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim under a POR</u>.

(i)     CORPX and the ULC1 Indenture Trustee hereby acknowledge and agree that the ULC1 Indenture Trustee Notes Guarantee Claim (and the ULC1 Indenture Trustee Notes Guarantee Allowed Claim, as a multiple of the Filed Amount of the ULC1 Indenture Trustee Notes Guarantee Claim) are substantially similar to the claims held by holders of the Calpine Senior Notes.

(ii)     CORPX and the ULC1 Indenture Trustee hereby acknowledge and agree that any POR to be filed, confirmed and consummated by CORPX and/or

---

ULC1 Notes held by CORPX and QCH are also subject to the settlement embodied in this Agreement and shall have the same rights and benefits as other holders of ULC1 Notes under the Agreement.

- 27 -

the U.S. Debtors in the U.S. Proceedings shall afford to the ULC1 Indenture Trustee Notes Guarantee Allowed Claim the same treatment (the "**ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Treatment**") as shall be afforded to the claims filed against CORPX that arise from the Calpine Senior Notes; provided, however, that the distribution to be made by CORPX in respect of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim pursuant to such POR shall not exceed an amount (the "**ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Distribution Amount**") equal to the aggregate of (i) the Filed Amount, (ii) the Postpetition Interest, (iii) the Ad Hoc Committee Fees, and (iv) the ULC1 Indenture Trustee Fees, in each of the foregoing instances, subject to the foreign exchange adjustment described in Section 3.3(b)(iii).

(iii) It is acknowledged that certain components of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim and the ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Distribution Amount are denominated in Canadian Dollars. Without limitation, the indebtedness evidenced by the Canadian ULC1 Notes, including principal, accrued and unpaid interest thereon, and portions of the Ad Hoc Committee Fees and the ULC1 Indenture Trustee Fees relating to the services of Canadian professionals) are and will be denominated in Canadian dollars. Such amounts of such components shall be allowed in the U.S. Proceedings and distributions under the POR shall be calculated in U.S. Dollars in an amount yielded by the conversion from Canadian Dollars at the noon spot rate effective on the fifth Business Day prior to the date of distribution under the POR for U.S. currency of Scotiabank, and such conversion shall be performed by CORPX and subject to the approval of the ULC1 Indenture Trustee.

(iv) CORPX and the ULC1 Indenture Trustee hereby acknowledge and agree that the POR shall provide that the Ad Hoc Committee Fees and the ULC1 Indenture Trustee Fees shall be paid in full from the ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Distribution Amount, on the effective date of the POR, in the same currency as is distributed in respect of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim, unless CORPX, in consultation with its official unsecured creditors committee, has determined to pay the Ad Hoc Committee Fees and the ULC1 Indenture Trustee Fees in full, in cash, on the effective date of the POR as a "substantial contribution" administrative expense under Section 503(b) of the Bankruptcy Code. Notwithstanding anything herein to the contrary, for all purposes under a POR other than distributions (for example, voting), the amount of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim shall be deemed to be the Filed Amount.

- 28 -



(c)    <u>Classification of ULC1 Indenture Trustee Notes Guarantee Allowed Claim under POR.</u>

CORPX, in its discretion, may classify the ULC1 Indenture Trustee Notes Guarantee Allowed Claim under a POR (i) separately in its own class; (ii) in a class that includes other Claims arising from senior, unsecured, funded indebtedness of CORPX; or (iii) otherwise, consistent with the provisions of the Bankruptcy Code, the Bankruptcy Rules and other applicable law; <u>provided, however,</u> that, in any of the foregoing cases, subject to the provisions of Section 3.3(b)(ii) hereof, the POR shall provide that the ULC1 Indenture Trustee Notes Guarantee Allowed Claim shall receive the ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Treatment.

**3.4**    **<u>CORPX Support for Substantial Contribution Claim Application.</u>**

In the event that, as a prerequisite to the allowance of the Ad Hoc Committee Fees and/or the ULC1 Indenture Trustee Fees, as provided for in Section 3.2, the U.S. Bankruptcy Court requires or requests that the Ad Hoc ULC1 Noteholders Committee and/or the ULC1 Indenture Trustee, as the case may be, file an application with the U.S. Bankruptcy Court seeking an order allowing the Ad Hoc Committee Fees and/or the ULC1 Indenture Trustee Fees as an administrative expense for "substantial contribution" under Section 503(b) of the Bankruptcy Code, CORPX shall support such application(s) filed by the Ad Hoc ULC1 Noteholders Committee and/or the ULC1 Indenture Trustee and urge the U.S. Bankruptcy Court to grant it (or them) and enter such order.

**3.5**    **<u>Application of Distributions Under POR.</u>**

CORPX, on behalf of itself and the U.S. Debtors, agrees that any distribution received by the ULC1 Indenture Trustee or an agent of CORPX making distributions under the POR, as the case may be, on behalf of the ULC1 Indenture Trustee and/or the ULC1 Noteholders, pursuant to a POR shall be applied as follows:  first, to the ULC1 Indenture Trustee Fees and the Ad Hoc Committee Fees, second, to Postpetition Interest, and third, to the Filed Amount.  The portion of any such distribution that is allocable to the Ad Hoc Committee Fees shall be remitted by the ULC1 Indenture Trustee, or an agent of CORPX making distributions under the POR, as the case may be, to those ULC1 Noteholders who paid such fees in the first instance in accordance with written instructions to be delivered to the ULC1 Indenture Trustee, or such agent, as the case may be, by counsel to the Ad Hoc ULC1 Noteholders Committee.

**3.6**    **<u>Effect of Settlement Agreement on Proposal of POR and Voting by ULC1 Noteholders.</u>**

For the avoidance of doubt, nothing herein constitutes a "lock-up" of the votes of the Ad Hoc ULC1 Noteholders or any other ULC1 Noteholder for a POR.  Nothing herein shall limit the ability of CORPX to propose a POR or the right of the ULC1 Indenture Trustee or the ULC1 Noteholders to vote to accept or reject such POR, contest confirmation of such POR, or take any other action that they deem appropriate in the U.S. Proceedings or the CCAA Proceedings that is not inconsistent with the Settlement.  Nevertheless, the Parties agree that the amount of the ULC1 Indenture Trustee Notes Guarantee Allowed Claim, the ULC1 Indenture Trustee Notes

- 29 -

Guarantee Allowed Claim Plan Treatment, and the right of the ULC1 Indenture Trustee, on behalf of the ULC1 Noteholders, to receive, subject to the provisions of Section 3.3(b)(ii) hereof, a distribution under a POR up to the ULC1 Indenture Trustee Notes Guarantee Allowed Claim Plan Distribution Amount shall be irrevocably resolved for all purposes in accordance with the provisions of this Agreement.

**3.7     Release of ULC1 Noteholders Under POR.**

CORPX hereby agrees and covenants that any POR to be filed, confirmed and consummated by CORPX and/or the U.S. Debtors in the U.S. Proceedings shall provide that, provided that the POR is accepted by (a) at least two-thirds in amount of the outstanding aggregate principal amount of the ULC1 Notes held by ULC1 Noteholders that vote to accept or reject a POR and (b) more than one-half in number of the ULC1 Noteholders that vote to accept or reject a POR, as of the effective date (the "**POR Effective Date**") of such POR, to the fullest extent permissible under applicable law, CORPX, as debtor and debtor in possession, for itself and its officers, directors, employees, members, partners, representatives, attorneys, financial advisors, subsidiaries, affiliates, successors and assigns (other than the Canadian Debtors and the Canadian Affiliates, but including the estates of the U.S. Debtors established under the Bankruptcy Code), each in their capacity as such (collectively, the "**CORPX Releasors**"), shall be deemed absolutely, unconditionally and irrevocably, to release and forever discharge the ULC1 Indenture Trustee and the ULC1 Noteholders, together with their respective officers, directors, employees, members, partners, representatives, attorneys, financial advisors, subsidiaries, affiliates, successors and assigns, each in their capacity as such (collectively, the "**ULC1 Releasees**"), of and from any and all claims, demands, allegations, actions, causes of action, suits, debts, sums of money, accounts, reckonings, controversies, losses, damages, judgments, agreements, and warranties of any nature whatsoever, from the beginning of time through and including the POR Effective Date, whether fixed or contingent, asserted or unasserted, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, anticipated or unanticipated, which the CORPX Releasors, or any of them, have, had, claim to have had or hereafter claim to have against the ULC1 Releasees, or any of them, by reason of any act or omission on the part of the ULC1 Releasees, or any of them, occurring on or prior to the POR Effective Date and relating to or arising from the ULC1 Notes, the U.S. Proceedings, the CCAA Proceedings, the POR, the disclosure statement related to the POR, or the preparation, solicitation, confirmation, consummation and implementation of the POR.

**3.8     Conditions to Effectiveness of the Settlement Agreement Between the U.S. Debtors and the ULC1 Indenture Trustee.**

Except as otherwise specifically provided for in this Agreement, the obligations of each of the Parties to complete the transactions contemplated in Article III of this Agreement is subject to the satisfaction of, or compliance with, on or prior to the Outside Date, each of the following conditions, provided that the Parties may mutually agree in writing to waive, one or more of the following conditions (or any term or condition thereof):

(a)     Withdrawal or Dismissal of HSBC U.S. Marker Claims.  The HSBC U.S. Marker Claims shall have been withdrawn with prejudice or dismissed with prejudice.



- 30 -



(b) <u>Withdrawal or Dismissal of HSBC Canadian Marker Claims</u>. The HSBC Canadian Marker Claims shall have been withdrawn with prejudice or dismissed with prejudice.

(c) <u>Withdrawal of Marker Claims</u>. The marker claims filed by the Canadian Debtors against the U.S. Debtors that in any way are on account of, relate to, or arise from the transactions giving rise to, the ULC1 Notes shall have been withdrawn with prejudice or dismissed with prejudice.

(d) <u>Settlement Between the U.S. Debtors and the Canadian Debtors</u>. The conditions set forth in Section 2.9 shall have been satisfied or waived in writing, by the Parties on or prior to the Effective Date.

## ARTICLE IV – FAILURE TO BECOME EFFECTIVE

In the event that: (i) any of the conditions set forth in Sections 2.9 and 3.8 are not satisfied (or, if permitted pursuant to this Agreement, are not waived by the relevant Parties pursuant to the terms of this Agreement) on or prior to the Outside Date, or (ii) the Parties, acting reasonably, mutually agree that one or more of the conditions set forth in Sections 2.9 and 3.8 will not be satisfied  (or, if permitted pursuant to this Agreement, will not be waived by the relevant Parties pursuant to the terms of this Agreement) on or prior to the Outside Date, then the Parties hereto shall be returned to their respective positions as they existed before they executed this Settlement Agreement.

## ARTICLE V
## MISCELLANEOUS PROVISIONS APPLICABLE
## TO THIS SETTLEMENT AGREEMENT

### 5.1 <u>Retention of U.S. Debtors' Equity Interests.</u>

Notwithstanding any term or provision of this Agreement, the U.S. Debtors shall retain their equity interests in the Canadian Debtors, including for purposes of distributions in the CCAA Proceedings.

### 5.2 <u>Further Assurances.</u>

The Parties, and each of them, covenants to, from time to time, execute and deliver such further documents and instruments and take such other actions as may be reasonably required or appropriate to evidence, effectuate, or carry out the intent and purposes of this Agreement or to perform its obligations under this Agreement and the transactions contemplated thereby.

### 5.3 <u>Benefit of Agreement.</u>

This Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties hereto and their respective successors and assigns.  Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon any Person other than the Parties hereto and their respective successors and assigns any legal or equitable benefit, right, remedy, cause of action or claim of any kind under or by reason of this Agreement or any covenant, condition or stipulation hereof.

- 31 -



## 5.4    Integration.

This Agreement, together with the exhibits and schedule hereto, constitutes the entire agreement and understanding among the Parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements, representations and understandings between or among any of the Parties hereto relating to such subject matter.  In entering into this Agreement, the Parties and each of them acknowledge that they are not relying on any statement, representation, warranty, covenant or agreement of any kind made by any other party hereto or any employee or agent of any other party hereto, except for the representations, warranties, covenants and agreements of the Parties expressly set forth herein.  For greater certainty, the Parties acknowledge and agree that the Global Settlement Outline and the Preliminary ULC1 Settlement Outline have been superseded in all respects by the provisions of this Agreement.

## 5.5    Counterparts; Facsimile Signatures.

This Agreement may be executed in any number of counterparts and by different Parties to this Agreement on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement.  Any signature delivered by any of the Parties by facsimile or electronic transmission shall be as effective as delivery of a manually executed counterpart of this Agreement, shall be deemed to be an original signature hereto, and shall be admissible as such in any legal proceeding to enforce this Agreement.

## 5.6    Notices.

Any notice, demand, request, consent, approval, declaration or other communication under this Agreement shall be in writing and shall be given or delivered by personal delivery, by facsimile, by registered or certified mail (first class postage prepaid) or by a nationally recognized private overnight courier service addressed as indicated in Schedule I annexed hereto or to such other address (or facsimile number) as such party may indicate by a notice delivered to the other Parties hereto in accordance with the provisions hereof.  Any notice, demand, request, consent, approval, declaration or other communication under this Agreement delivered as aforesaid shall be deemed to have been effectively delivered and received, if sent by a nationally recognized private overnight courier service, on the date following the date upon which it is delivered for overnight delivery to such courier service, if sent by mail, on the earlier of the date of actual receipt or the fifth (5th) Business Day (as defined herein) after deposit in the United States mail, if delivered personally, on the date of such delivery, or, if sent via facsimile, on the date of the transmission of the facsimile, provided that the sender thereof receives confirmation that the facsimile was successfully delivered to the intended recipient.  As used herein, the term "**Business Day**" means a day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

## 5.7    Amendment.

Except as otherwise specifically provided in this Agreement, no amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the Canadian Debtors and U.S. Debtors.  To the

- 32 -

extent any such amendment affects any other Party to this Agreement, the Canadian Debtors and U.S. Debtors shall obtain that Party's written consent to such amendment.

## 5.8    Governing Law.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without regard to conflict of law principles.

## 5.9    Assignment.

No assignment of this Agreement or of any rights or obligations hereunder may be made by any party hereto without the prior written consent of the other Parties hereto, and any attempted assignment without such prior consent shall be null and void.  No assignment of any obligations hereunder shall relieve any of the Parties hereto liable therefore of any such obligations.

## 5.10    Waiver.

Except as otherwise specifically provided in this Agreement, any provision of this Agreement may be waived only by a written instrument signed by the Party against whom enforcement of such waiver is sought.

## 5.11    Headings.

The descriptive headings of the sections of this Agreement are included for convenience of reference only and do not constitute a part of this Agreement.

**[Remainder of page intentionally left blank; signature pages follow]**



**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date first above written.



**CALPINE CORPORATION,** on behalf of itself and on behalf of each of its U.S. subsidiaries

Per: _____

     Name:
     Title:

**CALPINE CANADA ENERGY LTD.**

Per: _____

     Name:
     Title:

**CALPINE CANADA POWER LTD.**

Per: _____

     Name:
     Title:

**CALPINE CANADA ENERGY FINANCE ULC**

Per: _____

     Name:
     Title:

- 34 -

**CALPINE ENERGY SERVICES CANADA LTD.**

Per: _____

Name:
Title:

**CALPINE CANADA RESOURCES COMPANY**

Per: _____

Name:
Title:

**CALPINE CANADA POWER SERVICES LTD.**

Per: _____

Name:
Title:

**CALPINE CANADA ENERGY FINANCE II ULC**

Per: _____

Name:
Title:

**CALPINE NATURAL GAS SERVICES LIMITED**

Per: _____

Name:
Title:

- 35 -



**3094479 NOVA SCOTIA COMPANY**

Per: _____

    Name:
    Title:


**CALPINE ENERGY SERVICES CANADA
PARTNERSHIP**

Per: _____

    Name:
    Title:


**CALPINE CANADA NATURAL GAS
PARTNERSHIP**

Per: _____

    Name:
    Title:

**CALPINE CANADIAN SALTEND
LIMITED PARTNERSHIP**

Per: _____

    Name:
    Title:


**HSBC BANK USA, N.A., solely in its capacity
as ULC1 Indenture Trustee.**

Per: _____

    Name:
    Title:


*[Signature Page for Settlement Agreement]*

**SCHEDULE I**

List of Addresses and Facsimile Numbers for Purposes of Notice

If to Calpine Corporation:

>   50 West San Fernando Street
>   San Jose, California 95113
>   Fax: (408) 995-0505
>   Attn: Gregory J. Doody

With a copy to:

>   Kirkland & Ellis LLP
>   200 East Randolph Drive
>   Chicago, Illinois 60601-6636
>   Attn: David R. Seligman
>   Fax: 312-861-2200

If to CCEL and the Canadian Debtors:

>   Calpine Canada Energy Ltd.
>   c/o Ernst & Young Inc.
>   1000, 440 2nd Avenue S.W.
>   Calgary, Alberta  T2P 5E9
>   Attention:  Toby Austin
>   Fax: (403) 206-5075

With a copy to:

>   Goodmans LLP
>   250 Yonge Street, Suite 2400
>   Toronto ON  M5B 2M6
>   Canada
>   Attn: Jay A. Carfagnini
>   Fax: (416) 979-1234

If to the Monitor:

>   Ernst & Young Inc.
>   1000, 440 2nd Avenue S.W.
>   Calgary, Alberta  T2P 5E9
>   Attention:  Neil Narfason
>   Fax: (403) 206-5075

With a copy to:

2 -

Borden Ladner Gervais LLP
1000 Canterra Tower
400 Third Avenue S.W.
Calgary, Alberta, Canada
T2P 4H2
Attention: Pat McCarthy
Fax: (403) 266-1395

If to HSBC Bank USA, N.A.:

With a copy to:

Kelley Drye & Warren LLP
200 Kimball Drive
Parsippany, New Jersey  07054
Attn:  Geoffrey W. Castello
Fax:  (973) 503-5950

and

Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York  10019
Attn: Richard F. Casher
Fax: 212-500-3413



3 -

**SCHEDULE II**

Canadian Order



4 -

**SCHEDULE III**

U.S. Order



5 -

**SCHEDULE IV**

Canadian ULC1 Notes Sale Order



# EXHIBITS

(i)

## TABLE OF CONTENTS

EXHIBIT A - Claims by Canadian Debtors Against U.S. Debtors Subject to Section 2.2 ........ A-1

EXHIBIT B – Claims by U.S. Debtors Against Canadian Debtors Subject to Section 2.2 ........ B-1

EXHIBIT C – There is no Exhibit C to this Agreement .............................................................. C-1

EXHIBIT D – Intercompany Claims (in US Dollars) ................................................................ D-1

EXHIBIT E – Claims which are not Released or Withdrawn ..................................................... E-1

EXHIBIT F – Claims Filed in CCAA Proceedings that have been Guaranteed by U.S. Debtors F-1

EXHIBIT G – Third Party Claims to be Withdrawn or Dismissed on a With Prejudice Basis .. G-1

# EXHIBIT A

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLAIMS BY CANADIAN DEBTORS AGAINST U.S. DEBTORS SUBJECT TO SECTION 2.2** | | | | | | | | |
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount ($US) | Debtor | Basis for Claim | Type |
| **I.** | **Intercompany Claims** | | | | | | | |
| 1. | 7/27/2006 | 4489 | Calpine Canada Natural Gas Partnership | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $591,005.28 | CPN Energy Services G.P., Inc. 05-60209 | Money loaned | Unsecured |
| 2. | 7/27/2006 | 4445 | Calpine Energy Services Canada Partnership | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $495,405.98 | Calpine Corporation 05-60200 | Money loaned | Unsecured |
| 3. | 8/1/2006 | 5413 | Calpine Canada Power Ltd. | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $11,622,456.59 | Calpine Corporation 05-60200 | Money loaned; contributions to employee benefit plan [amends by claim #4486] | Unknown |
| 4. | 7/27/2006 | 4446 | Calpine Energy Services Canada Partnership | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $70,873,420.62 | CPN Energy Services G.P., Inc. 05-60209 | Goods sold | Unsecured |
| 5. | 7/27/2006 | 4421 | Calpine Canada Energy Ltd. | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $2,571,674.66 | Quintana Canada Holdings, LLC 05-60400 | Subsidiary's deficiency | Unsecured |
| 6. | 7/27/2006 | 4420 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $2,174,058.41 | Calpine ULC1 Holdings, LLC | Subsidiary's deficiency | Unsecured |

A-2

| | | | CLAIMS BY CANADIAN DEBTORS AGAINST U.S. DEBTORS SUBJECT TO SECTION 2.2 | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount ($US) | Debtor | Basis for Claim | Type |
| **I.** | **Intercompany Claims** | | | | | | | |
| 7. | 7/27/2006 | 4419 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street, Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $2,174,058.41 | Quintana Canada Holdings, LLC | Subsidiary's deficiency | Unsecured |
| | Total Amount of Intercompany Claims: | | | | $90,502,079.95 | | | |

A-3

| | | | CLAIMS BY CANADIAN DEBTORS AGAINST U.S. DEBTORS SUBJECT TO SECTION 2.2 | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **II.** | **Oppression Marker Claims** | | | | | | | |
| 6. | 7/27/2006 | MASTER CLAIM #4418 (also #14344 - 17879 and #18424 - 18435) | Calpine Canada Energy Ltd | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Investigation of intercompany and third party transactions between CCEL and CORPX | Unknown |
| 7. | 4/30/2007 | 6283 | Calpine Canada Energy Ltd. and each of its affiliates | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation and each of the other Debtor entities | Investigation of intercompany and third party transactions between CCEL and CORPX | Unknown |
| **III.** | **Hybrid Note Structure Claims** | | | | | | | |
| 8. | 7/27/2006 | 3730 | Calpine Canada Energy Ltd. ("CCEL") | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $2,562,948,302.00 | Quintana Canada Holdings, LLC 05-60400 | Subscription agreements | Unsecured |
| 9. | 7/27/2006 | 4513 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | $2,562,948,302.00 | Quintana Canada Holdings, LLC 05-60400 | Subscription agreements | Unsecured |

A-4

| | | | | CLAIMS BY CANADIAN DEBTORS AGAINST U.S. DEBTORS SUBJECT TO SECTION 2.2 | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| 10. | 7/27/2006 | 4512 | Calpine Canada Energy Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | $2,562,948,302.00 | Calpine Corporation 05-60200 | Guarantee (subscription agreements) | Unsecured |
| 11. | 7/27/2006 | 4515 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | $2,562,948,302.00 | Calpine Corporation 05-60200 | Guarantee (subscription agreements) | Unsecured |
| 12. | 7/27/2006 | 4511 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Guarantee (share purchase agreements) | Unsecured |
| 13. | 7/27/2006 | 4514 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Share purchase agreements | Unsecured |
| 14. | N/A | N/A | Calpine Canada Energy Finance ULC | | Unknown | Quintana Canada Holdings, LLC | All Claims arising pursuant to the ISDA Master Agreement dated April 25, 2001 | Unsecured |

## EXHIBIT B

## Claims by U.S. Debtors against Canadian Debtors Subject to Section 2.2

| | Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|---|
| **1.** | | U.S. Calpine Group entities<br><br>(Master Proof of Claim) | CCAA Debtors | USD$TBD | The U.S. Calpine Group entities claim against the CCAA Debtors for any and all obligations that the CCAA Debtors owe, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |
| **2.** | 2-005 | U.S. Calpine Group entities<br><br>(Master Proof of Claim) | CCEL | USD$TBD | The U.S. Calpine Group entities claim against Calpine Canada Energy Limited for any and all obligations that Calpine Canada Energy Limited owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code.<br><br>This Claim is made for all cash and non cash transfers pursuant to all applicable bankruptcy and insolvency legislation in the U.S. and Canada, for transfers from any of the U.S. Calpine Group to Calpine Canada Energy Limited in the relevant period prior to the filing. |
| **3.** | 12-030 | U.S. Calpine Group entities<br><br>(Master Proof of Claim) | CCNG | TBD | The U.S. Calpine Group entities claim against Calpine Canada Natural Gas Partnership for any and all obligations that Calpine Canada Natural Gas Partnership owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |

B-2

| | Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|---|
| 4. | 3-015 | U.S. Calpine Group entities (Master Proof of Claim) | CCPL | TBD | The U.S. Calpine Group entities claim against Calpine Canada Power Ltd. for any and all obligations that Calpine Canada Power Ltd. owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |
| 5. | 5-030 | U.S. Calpine Group entities (Master Proof of Claim) | CCRC | (1) TBD (2) TBD (3) TBD (4) USD$2,199,917.20 | (1) The U.S. Calpine Group entities claim against Calpine Canada Resources Company for any and all obligations that Calpine Canada Resources Company owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. (2) The U.S. Calpine Group entities also claim in respect of claims for avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code in respect of the proceeds of the sale of Saltend. Pursuant to agreement with the Canadian Applicants, these claims may also relate to transfers, including claims for avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code, involving entities in the Saltend chain but are asserted against CCRC. (3) This Claim is made for all cash and non cash transfers pursuant to all applicable bankruptcy and insolvency legislation in the U.S. and Canada, for transfers from any of the U.S. Debtors to CCRC in the relevant period prior to the filing. (4) Calpine Corporation claims amounts pursuant to letter of credit 0117/04. Contingent exposure relating to CCRC |

B-3

| | Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|---|
| | | | | | on the remaining credit is $2,199,917.20. |
| 6. | 4-003 | U.S. Debtors | CCPS | TBD | The U.S. Calpine Group entities claim against Calpine Canada Power Services Ltd. for any and all obligations that Calpine Canada Power Services Ltd. owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |
| 7. | 7-006 | Calpine Corporation | CESCL | (1) USD$371 <br> (2) $2,199,917.20 | (1) This Claim relates to the practice of allocating costs of corporate overhead on an intercompany basis. <br><br> (2) Calpine Corporation claims amounts pursuant to letter of credit 0117/04. Contingent exposure relating to CESCL on the remaining credit is $2,199,917.20. |
| 8. | 7-007 | U.S. Calpine Group entities <br><br> (Master Proof of Claim) | CESCL | TBD | The U.S. Calpine Group entities claim against Calpine Energy Services Canada Ltd. for any and all obligations that Calpine Energy Services Canada Ltd. owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |
| 9. | 8-007 | Calpine Corporation | CESCP | USD$22,911,000 | Calpine Corporation claims amounts pursuant to letters of credit issued to third parties. Currently outstanding drawdowns total $18,361,082.80 and contingent exposure on remaining credit totals $4,549,917.20. |
| 10. | 8-008 | Calpine Energy Management L.P. | CESCP | USD$16,745,830 | This Claim represents intercompany accounts receivable owing relating to gas purchases and sales between Calpine Energy Management L.P. and CESCP as of the date of filing. |

B-4

| | Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|---|
| 11. | 8-009 (not including Restructuring Claims) | Calpine Energy Services L.P. | CESCP | USD $2,934,650 | This is a claim for services provided by Calpine Energy Services L.P. to CESCP which have not been billed. |
| 12. | 8-010 | U.S. Calpine Group entities (Master Proof of Claim) | CESCP | TBD | The U.S. Calpine Group entities claim against Calpine Energy Services Canada Partnership for any and all obligations that Calpine Energy Services Canada Partnership owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |
| 13. | 11-003 | U.S. Calpine Group entities (Master Proof of Claim) | CNGSL | TBD | The U.S. Calpine Group entities claim against Calpine Natural Gas Services Ltd. for any and all obligations that Calpine Natural Gas Services Ltd. owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |
| 14. | 1-007 | U.S. Calpine Group entities (Master Proof of Claim) | ULC1 | TBD | The U.S. Calpine Group entities claim against Calpine Canada Energy Finance ULC for any and all obligations that Calpine Canada Energy Finance ULC owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy Code. |

B-5

|  | Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|---|
| 15. | 6-002 | Calpine Corporation | ULC2 | £315,375,000 €226,296,875 | ULC2 issued £200,000,000 of 8.875% Senior Notes due October 15, 20011 and €175,000,000 of 8.375% Senior Notes due October 15, 2008 (the "ULC2 Senior Notes") pursuant to an Indenture dated October 18, 2001 between ULC and Wilmington Trust supplemented by the First Supplemental Indenture dated October 18, 2001. The ULC2 Senior Notes have been guaranteed by Calpine Corporation pursuant to a Guarantee Agreement dated October 18, 2001 as amended by the First Amendment dated October 18, 2001.

The Applicants and the Monitor are in possession of copies of the Indenture and the Guarantee. If additional copies are required, please advise.

Calpine Corporation claims as against ULC2 for any claims made against Calpine Corporation on the guarantee.

Calpine Corporation specifically reserves its right to dispute, deny or other otherwise challenge the guarantees on any basis, including without limitation, avoidance of preferential and fraudulent transfers.

The amount of the claim is the face of amount of the notes £200,000,000 at 8.875% to October 15, 20011 being £115,375,000 (approximate present value of interest £83,418,174) and €175,000,000 at 8.375% to October 15, 2008 being €51,296,875 (approximate present value of interest €42,418,639) plus interest on any outstanding amounts to the date of distribution plus any costs payable or other amounts due or other liabilities under the Indenture. |
| 16. | 6-003 | U.S. Calpine Group entities (Master Proof of Claim) | ULC2 | TBD | The U.S. Calpine Group entities claim against Calpine Canada Energy Finance II ULC for any and all obligations that Calpine Canada Energy Finance II ULC owes, may have owed or may owe to the U.S. Calpine Group entities as a result of any action, omission, cause, matter, debt, accounts, bonds, guarantees, covenants, contracts, claims, demands or other matter whatsoever including, without limitation, avoidance of preferential and fraudulent transfers, and for any other avoidance action under the U.S. Bankruptcy |

B-6

| | Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|---|
| | | | | | Code. |
| 17. | (Letter of April 30, 2007) | U.S. Calpine Group Entities | CCAA Debtors | MISC. | Particularization of Marker Claims |

Particularization of Marker Claims

1.  King City Cogen LLC claims against CCPL, based on rights of subrogation, reimbursement or other equitable rights related to a guarantee provided by King City Cogen LLC under a Guaranty and Security Agreement dated May 19, 2004.

2.  Calpine Corporation claims against CESCA based on rights of subrogation, reimbursement or other equitable rights related to a guarantee dated August 29, 2002 provided by Calpine Corporation under a Tolling Agreement dated August 29, 2002. Calpine Corporation claims against CESCA for any and all liability of Calpine Corporation in respect of claim number 5390 filed in the U.S. Proceedings by Calpine Power L.P. with respect to the August 29, 2002 guarantee.

3.  Calpine Corporation claims against ULC1, based on rights of subrogation, reimbursement or other equitable rights related to a guarantee of share purchase agreements dated April 25, August 14 and August 23, 2001 and amendments dated March 8, 2002.

4.  Calpine Corporation claims against CCEL, based on rights of subrogation, reimbursement or other equitable rights related to a guarantee of subscription agreements dated April 25, August 14 and August 23, 2001 and amendments dated March 8, 2002.

5.  Calpine Corporation claims against CCPL based on rights of subrogation, reimbursement or other equitable rights related to a guarantee dated August 29, 2002 in respect of an Electricity Purchase Agreement dated September 29, 1998 and an Island Contribution Agreement dated August 29, 2002 (the "Heat Rate Guarantee"). Calpine Corporation claims against CCPL for any and all liability of Calpine Corporation in respect of claim number 5390 filed in the U.S. Proceedings by

B-7

| Claim No. | Creditor | Debtor | Amount | Matter |
|-----------|----------|--------|--------|--------|
| | | | | Calpine Power L.P. with respect to the August 29, 2002 guarantee. |
| | | | 6. | Calpine Corporation claims against CCPL based on rights of subrogation, reimbursement or other equitable rights related to a guarantee dated August 29, 2002 in respect of an Electricity Purchase Agreement dated September 29, 1998, an Amended and Restated EPA Fee Agreement dated April 10, 2002 and an Island Contribution Agreement dated August 29, 2002 (the "EPA Fee Guarantee"). Calpine Corporation claims against CCPL for any and all liability of Calpine Corporation in respect of claim number 5389 filed in the U.S. Proceedings by Calpine Power L.P. with respect to the August 29, 2002 guarantee. |
| | | | 7. | Calpine Corporation claims against CESCA based on rights of subrogation, reimbursement or other equitable rights related to a guarantee dated June 1, 2002 in respect of a Transportation Agreement dated March 4, 1999. Calpine Corporation claims against CESCA for any and all liability of Calpine Corporation in respect of claim number 6215 filed in the U.S. Proceedings by Alliance Pipeline L.P. with respect to the June 1, 2002 guarantee. |
| | | | 8. | Calpine Corporation claims against CESCA based on rights of subrogation, reimbursement or other equitable rights related to a guarantee dated June 1, 2002 in respect of a Transportation Agreement dated March 4, 1999. Calpine Corporation claims against CESCA for any and all liability of Calpine Corporation in respect of claim number 2507 filed in the U.S. Proceedings by Alliance Pipeline Limited Partnership with respect to the June 1, 2002 guarantee. |
| | | | 9. | Calpine Corporation claims against CCRC, CESCP and CESCL based on rights of subrogation, reimbursement or other equitable rights related to a guarantee dated October 23, 2001 in respect of TransCanada PipeLine Ltd and NOVA Gas Transmission Ltd. |

B-8

| Claim No. | Creditor | Debtor | Amount | Matter |
|---|---|---|---|---|
| | | | | Agreements. Calpine Corporation claims against CCRC, CESCP and CESCL in respect of claim numbers 5192, 5325, 5553, 5605, and 5641 filed in the U.S. Proceedings. |
| | | | | **US Claims with respect to CANAL Entity** |
| | | | | 10. Calpine Corporation claims against CCNG, CCPL and/or CCRC arising from unpaid amounts relating to allocation of overhead expenses by the U.S. Debtors to the CANAL and CANAL2 business units. |
| | | | | **Saltend** |
| | | | | 11. The U.S. Calpine Group entities claim against CCRC in respect of preference claims over the proceeds of the sale of Saltend. Pursuant to agreement with the Canadian Applicants, these claims may also relate to transfers involving entities in the Saltend chain but are asserted against CCRC |
| | | | | **Avoidance Actions** |
| | | | | 12. The U.S. Debtors may bring avoidance actions on behalf of certain payor U.S. Debtor entities against certain corresponding payee Canadian Debtor entities, as shown on Exhibit A, attached hereto and incorporated herein, seeking the return of preferential payments made within 90 days of the filing of the U.S. Debtor's bankruptcy petition. |
| 18. | (Letter of April 30, 2007) | U.S. Calpine Group Entities | CCAA Debtors | TBD | Particularization of BDCs – Four claims particularized by attachment to letter dated April 30, 2007. |
| 19. | N/A | Quintana Canada Holdings, LLC | Calpine Canada Energy Finance ULC | TBD | All Claims arising pursuant to the ISDA Master Agreement dated April 25, 2001. |

# EXHIBIT C

**[There is no Exhibit C to this Settlement Agreement]**

## EXHIBIT D

## Intercompany Claims (in US Dollars)

| CCAA Claim No. | US Bankruptcy Claim No. | US Entity | Canadian Entity | Due From (T) CCAA Debtors |
|---|---|---|---|---|
| 3-008 | | C*Power Inc. | Calpine Canada Power Ltd. | 6,430 |
| 3-009 | | Calpine Central L.P. | Calpine Canada Power Ltd. | 48,178 |
| | 4444 | Calpine Construction Mgmt Co, Inc. | Calpine Energy Services Canada Ltd. | (767,443) |
| 1-006 | 4443 | Calpine Corporation | Calpine Canada Energy Finance ULC | 181,150,425 * |
| 2-004 | | Calpine Corporation | Calpine Canada Energy Ltd. | 121,343 |
| 12-028 | 4488 | Calpine Corporation | Calpine Canada Natural Gas Partnership | 1,501,965 |
| 3-014 | 4486 | Calpine Corporation | Calpine Canada Power Ltd. | (9,555,629) |
| 12-029 | 4490 | Calpine Energy Services L.P. | Calpine Canada Natural Gas Partnership | 1,656,545 |
| | 4491 | Calpine International Holdings, Inc. | Calpine Canada Natural Gas Partnership | (1,250) |
| | 4487 | Calpine International Holdings, Inc. | Calpine Canada Power Ltd. | (1,066,149) |
| 7-008 | | Calpine International LLC | Calpine Energy Services Canada Ltd. | 43 |
| | 4492 | Calpine International, LLC | Calpine Canada Energy Ltd. | (115,498) |
| | 4485 | Calpine International, LLC | Calpine Canada Power Ltd. | (392,954) |

D-2

| CCAA Claim No. | US Bankruptcy Claim No. | US Entity | Canadian Entity | Due From (T) CCAA Debtors |
|---|---|---|---|---|
| | 4440 | Calpine Power Services, Inc. | Calpine Canada Energy Ltd. | (1,606) |
| | 4447 | Calpine Energy Services, LP | Calpine Energy Services Canada Partnership | (70,873,421) |
| 1-011* | 4442 | Quintana Canada Holdings LLC | Calpine Canada Energy Finance ULC | (337,947,146) |
| | 4441 | Quintana Canada Holdings, LLC | Calpine Canada Energy Finance II ULC | (11,626) |
| | 4493 | Quintana Canada Holdings, LLC | Calpine Canada Energy Ltd. | (494,746,367)* |
| | 4448 | Quintana Canada Holdings, LLC | Calpine Canada Resources Company | (155,569,695) |
| | 4447 | Calpine Energy Services, LP | Calpine Energy Services Canada Partnership | (23,584,600)** |

\* Claims subject to the ULC1 Settlement.

\*\* Represents an estimated contribution claim based on certain non-resident withholding tax liability, contingent on (i) it becoming an allowed claim in the CCAA Proceedings, (ii) it not being satisfied by distributions in the U.S. Proceedings, and (iii) there being insufficient funds to satisfy it from CESCA. Amount is converted at current rate of exchange (US$1 = C$1.1024).

## EXHIBIT E

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN** | | | | | | | | |
| | **Date Filed** | **Claim No.** | **Creditor Name** | **Address** | **Claim Amount** | **Debtor** | **Basis for Claim** | **Type** |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| 1. | 7/27/2006 | 4412 | Calpine Canada Energy Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 2. | 7/27/2006 | 4411 | Toby Austin, in his capacity as director and officer of Calpine Canada Energy Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 3. | 7/27/2006 | 4415 | Calpine Canada Power Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 4. | 7/27/2006 | 4414 | Toby Austin, in his capacity as director and officer of Calpine Canada Power Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |

E-2

| | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| I. | | | **Directors' and Officers' Indemnity Claims** | | | | | |
| 5. | 7/27/2006 | 4417 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 6. | 7/27/2006 | 4416 | Toby Austin, in his capacity as director and officer of Calpine Canada Energy Finance ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 7. | 7/27/2006 | 4469 | Calpine Energy Service Canada Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 8. | 7/27/2006 | 4413 | Toby Austin, in his capacity as director and officer of Calpine Energy Service Canada Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 9. | 7/27/2006 | 4467 | Calpine Canada Resources Company | c/o Goodmans LLP 250 Yonge Street | Unknown | Calpine Corporation 05- | Directors' and Officers' | Unsecured |

E-3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN** | | | | | | | |
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| | | | | Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | | 60200 | Indemnity | |
| 10. | 7/27/2006 | 4468 | Toby Austin, in his capacity as director and officer of Calpine Canada Resources Company. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 11. | 7/27/2006 | 4465 | Calpine Canada Power Services Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 12. | 7/27/2006 | 4466 | Toby Austin, in his capacity as director and officer of Calpine Canada Power Services Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 13. | 7/27/2006 | 4463 | Calpine Canada Energy Finance II ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |

E-4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN** | | | | | | | |
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |

| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
|---|---|---|---|---|---|---|---|---|
| | | | | Attn: Jay Carfagnini | | | | |
| 14. | 7/27/2006 | 4464 | Toby Austin, in his capacity as director and officer of Calpine Canada Energy Finance II ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 15. | 7/27/2006 | 4510 | Calpine Natural Gas Service Limited | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 16. | 7/27/2006 | 4462 | Toby Austin, in his capacity as director and officer of Calpine Natural Gas Service Limited | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 17. | 7/27/2006 | 4508 | 3094479 Nova Scotia Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |

E-5

| | | Claim | | | Claim | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | No. | Creditor Name | Address | Amount | Debtor | Basis for Claim | Type |
| **CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN** | | | | | | | | |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| 18. | 7/27/2006 | 4509 | Toby Austin, in his capacity as director and officer of 3094479 Nova Scotia Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 19. | 7/27/2006 | 4506 | Calpine Island Cogeneration Project Inc. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 20. | 7/27/2006 | 4507 | Toby Austin, in his capacity as director and officer of Calpine Island Cogeneration Project Inc. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 21. | 7/27/2006 | 4504 | Calpine Canada Whitby Holdings Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 22. | 7/27/2006 | 4505 | Toby Austin, in his capacity as director and officer of | c/o Goodmans LLP 250 Yonge Street | Unknown | Calpine Corporation 05- | Directors' and Officers' | Unsecured |

E-6

| | | | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| | | | Calpine Canada Whitby Holdings Company | Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | | 60200 | Indemnity | |
| 23. | 7/27/2006 | 4502 | Calpine Greenfield Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 24. | 7/27/2006 | 4503 | Toby Austin, in his capacity as director and officer of Calpine Greenfield Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Calpine Corporation 05-60200 | Directors' and Officers' Indemnity | Unsecured |
| 25. | 7/27/2006 | 4500 | Calpine Canada Energy Ltd | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | | Quintana Canada Holdings, LLC 05-60400 | | |
| 26. | 7/27/2006 | 4501 | Toby Austin, in his capacity as director and officer of Calpine Canada Energy Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B | Unknown | Quintana Canada Holdings, LLC | | |

E-7

| | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| | | | | 2M6<br>Attn: Jay Carfagnini | | 05-60400 | | |
| 27. | 7/27/2006 | 4498 | Calpine Canada Power Ltd. | c/o Goodmans LLP<br>250 Yonge Street<br>Suite 2400<br>Toronto, Ontario  M5B 2M6<br>Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | | Unsecured |
| 28. | 7/27/2006 | 4499 | Toby Austin, in his capacity as director and officer of Calpine Canada Power Ltd. | c/o Goodmans LLP<br>250 Yonge Street<br>Suite 2400<br>Toronto, Ontario  M5B 2M6<br>Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | | |
| 29. | 7/27/2006 | 4496 | Calpine Canada Energy Finance ULC | c/o Goodmans LLP<br>250 Yonge Street<br>Suite 2400<br>Toronto, Ontario  M5B 2M6<br>Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | | |
| 30. | 7/27/2006 | 4497 | Toby Austin, in his capacity as director and officer of Calpine Canada Energy Finance ULC | c/o Goodmans LLP<br>250 Yonge Street<br>Suite 2400<br>Toronto, Ontario  M5B 2M6<br>Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | | |

E-8

| | | | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **Date Filed** | **Claim No.** | **Creditor Name** | **Address** | **Claim Amount** | **Debtor** | **Basis for Claim** | **Type** |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| 31. | 7/27/2006 | 4438 | Calpine Energy Services Canada Ltd | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | | |
| 32. | 7/27/2006 | 4439 | Toby Austin, in his capacity as director and officer of Calpine Energy Services Canada Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 33. | 7/27/2006 | 4436 | Calpine Canada Resources Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 34. | 7/27/2006 | 4437 | Toby Austin, in his capacity as director and officer of Calpine Canada Resources Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 35. | 7/27/2006 | 4434 | Calpine Canada Power Services Ltd. | c/o Goodmans LLP 250 Yonge Street | Unknown | Quintana Canada | Directors' and Officers' | Unsecured |

E-9

| | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | | | |
|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | | | **Directors' and Officers' Indemnity Claims** | | | | | |
| | | | | Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | | Holdings, LLC 05-60400 | Indemnity | |
| 36. | 7/27/2006 | 4435 | Toby Austin, in his capacity as director and officer of Calpine Canada Power Services Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 37. | 7/27/2006 | 4432 | Calpine Canada Energy Finance II ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 38. | 7/27/2006 | 4433 | Toby Austin, in his capacity as director and officer of Calpine Canada Energy Finance II ULC | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 39. | 7/27/2006 | 4429 | Calpine Natural Gas Services Limited | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |

E-10

| | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | | | **Directors' and Officers' Indemnity Claims** | | | | | |
| | | | | Attn: Jay Carfagnini | | | | |
| 40. | 7/27/2006 | 4431 | Toby Austin, in his capacity as director and officer of Calpine Natural Gas Services Limited | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 41. | 7/27/2006 | 4428 | 3094479 Nova Scotia Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 42. | 7/27/2006 | 4430 | Toby Austin, in his capacity as director and officer of 3094479 Nova Scotia Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 43. | 7/27/2006 | 4426 | Calpine Island Cogeneration Project Inc. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |

E-11

| | | | CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Date Filed | Claim No. | Creditor Name | Address | Claim Amount | Debtor | Basis for Claim | Type |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| 44. | 7/27/2006 | 4427 | Toby Austin, in his capacity as director and officer of Calpine Island Cogeneration Project Inc. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 45. | 7/27/2006 | 4424 | Calpine Canada Whitby Holdings Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 46. | 7/27/2006 | 4425 | Toby Austin, in his capacity as director and officer of Calpine Canada Whitby Holdings Company | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 47. | 7/27/2006 | 4422 | Calpine Greenfield Ltd. | c/o Goodmans LLP 250 Yonge Street Suite 2400 Toronto, Ontario M5B 2M6 Attn: Jay Carfagnini | Unknown | Quintana Canada Holdings, LLC 05-60400 | Directors' and Officers' Indemnity | Unsecured |
| 48. | 7/27/2006 | 4423 | Toby Austin, in his capacity as director and officer of | c/o Goodmans LLP 250 Yonge Street | Unknown | Quintana Canada | Directors' and Officers' | Unsecured |

E-12

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLAIMS WHICH ARE NOT RELEASED OR WITHDRAWN** | | | | | | | | |
| | **Date Filed** | **Claim No.** | **Creditor Name** | **Address** | **Claim Amount** | **Debtor** | **Basis for Claim** | **Type** |
| **I.** | **Directors' and Officers' Indemnity Claims** | | | | | | | |
| | | | Calpine Greenfield Ltd. | Suite 2400 Toronto, Ontario  M5B 2M6 Attn: Jay Carfagnini | | Holdings, LLC 05-60400 | Indemnity | |

Total Amount of D&O Indemnity Claims:          Unknown

**EXHIBIT F**

**Claims Filed In CCAA Proceedings That Have Been Guaranteed By U.S. Debtors**

| Claim No. | Creditor | Debtor | Amount As Filed (in Cdn Dollars) | |
|---|---|---|---|---|
| 5-028 | Alliance Pipeline Limited Partnership, by its general partner Alliance Pipeline Ltd. | Calpine Canada Resources Company | 52,755,275.86 | |
| 5-041 | Alliance Pipeline L.P., by its managing general partner Alliance Pipeline Inc. | Calpine Canada Resources Company | 40,980,017.36 | |
| 7-004 | Alliance Pipeline L.P., by its managing general partner Alliance Pipeline Inc. | Calpine Energy Services Canada Ltd. | 40,980,017.36 | |
| 7-005 | Alliance Pipeline Limited Partnership, by its general partner Alliance Pipeline Ltd. | Calpine Energy Services Canada Ltd. | 52,755,275.86 | |
| 8-005 | Alliance Pipeline L.P., by its managing general partner Alliance Pipeline Inc. | Calpine Energy Services Canada Partnership | 40,980,017.36 | |
| 8-006 | Alliance Pipeline Limited Partnership, by its general partner Alliance Pipeline Ltd. | Calpine Energy Services Canada Partnership | 52,755,275.86 | |
| 2-007 | NOVA Gas Transmission Ltd. | Calpine Canada Energy Limited | 36,205,274.42 | |
| 5-035 | NOVA Gas Transmission Ltd. | Calpine Canada Resources Company | 36,205,274.42 | |
| 7-015 | NOVA Gas Transmission Ltd. | Calpine Energy Services Canada Ltd. | 36,205,274.42 | |
| 8-012 | NOVA Gas Transmission Ltd. | Calpine Energy Services Canada Partnership | 36,205,274.42 | |

F-2

| Claim No. | Creditor | Debtor | Amount As Filed (in Cdn Dollars) | |
|---|---|---|---|---|
| 2-008 | TransCanada Pipelines Limited | Calpine Canada Energy Limited | 81,129,548.10 | |
| 5-039 | TransCanada Pipelines Limited | Calpine Canada Resources Company | 81,129,548.10 | |
| 7-016 | TransCanada Pipelines Limited | Calpine Energy Services Canada Ltd. | 81,129,548.10 | |
| 8-014 | TransCanada Pipelines Limited | Calpine Energy Services Canada Partnership | 81,129,548.10 | |
| 5-031 | Calpine Power, L.P. | Calpine Canada Resources Company | 769,064,345.51 | Toll |
| 7-009 | Calpine Power, L.P. | Calpine Energy Services Canada Ltd. | 769,064,345.51 | Toll |
| 8-011 | Calpine Power, L.P. | Calpine Energy Services Canada Partnership | 769,064,345.51 | Toll |
| 3-012 | Calpine Power, L.P. and Calpine Power Income Fund | Calpine Canada Power Ltd. | TBD | Trans Fee |
| 3-013 | Calpine Power, L.P. | Calpine Canada Power Ltd. | TBD | Heat Rate |

**EXHIBIT G**

**Third Party Claims To Be Withdrawn Or Dismissed On A With Prejudice Basis**

| Claim No | Creditor | Debtor | Amount As Filed | |
|---|---|---|---|---|
| 2-006 | HSBC Bank USA, National Association | Calpine Canada Energy Ltd. | TBD | ULC1 |
| 3-018 | HSBC Bank USA, National Association | Calpine Canada Power Ltd. | TBD | ULC1 |
| 4-004 | HSBC Bank USA, National Association | Calpine Canada Power Services Ltd. | TBD | ULC1 |
| 5-032 | HSBC Bank USA, National Association | Calpine Canada Resources Company | TBD | ULC1 |
| 6-004 | HSBC Bank USA, National Association | Calpine Canada Energy Finance II ULC | TBD | ULC1 |
| 7-012 | HSBC Bank USA, National Association | Calpine Energy Services Canada Ltd. | TBD | ULC1 |
| 8-004 | HSBC Bank USA, National Association | Calpine Energy Services Canada Partnership | TBD | ULC1 |
| 9-002 | HSBC Bank USA, National Association | 3094479 Nova Scotia Company | TBD | ULC1 |
| 10-002 | HSBC Bank USA, National Association | Calpine Canadian Saltend Limited Partnership | TBD | ULC1 |
| 11-004 | HSBC Bank USA, National Association | Calpine Natural Gas Services Ltd. | TBD | ULC1 |
| 12-031 | HSBC Bank USA, National Association | Calpine Canada Natural Gas Partnership | TBD | ULC1 |
| 1-012 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Energy Finance ULC | TBD | 2nd Lien |
| 2-009 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Energy Ltd. | US $ 3,025,758,604.24 plus TBD | 2nd Lien |

G-2

| Claim No | Creditor | Debtor | Amount As Filed | |
|----------|----------|--------|-----------------|---|
| 2-010 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Energy Ltd. | TBD | 2nd Lien |
| 3-019 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Power Ltd. | TBD | 2nd Lien |
| 4-005 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Power Services Ltd. | TBD | 2nd Lien |
| 5-040 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Resources Company | TBD | 2nd Lien |
| 6-006 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Energy Finance II ULC | TBD | 2nd Lien |
| 7-017 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Energy Services Canada Ltd. | TBD | 2nd Lien |
| 8-015 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Energy Services Canada Partnership | TBD | 2nd Lien |
| 9-003 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | 3094479 Nova Scotia Company | TBD | 2nd Lien |
| 10-003 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canadian Saltend Limited Partnership | TBD | 2nd Lien |
| 11-005 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Natural Gas Services Ltd. | TBD | 2nd Lien |

G-3

| Claim No | Creditor | Debtor | Amount As Filed | |
|---|---|---|---|---|
| 12-034 | Wilmington Trust Company, as Indenture Trustee for the Second Priority Senior Secured Notes issued by Calpine Corporation | Calpine Canada Natural Gas Partnership | TBD | 2nd Lien |
| 7-011 | Greenfield Energy LP | Calpine Energy Services Canada Ltd. | TBD | Greenfield |
| 7-013 | MIT Power Canada LP Inc. | Calpine Energy Services Canada Ltd. | TBD | Greenfield |
| 7-014 | MIT Power Canada Investments Inc. | Calpine Energy Services Canada Ltd. | TBD | Greenfield |
| 7-018 | CM Greenfield Power Corp | Calpine Energy Services Canada Ltd. | TBD | Greenfield |
| 5-033 | Manufacturers and Traders Trust Company, as Indenture Trustee for the 8 7/8% Senior Notes due 2011 and the 8 3/8% Senior Notes due 2008, and on behalf of Calpine Canada Energy Finance II ULC. | Calpine Canada Resources Company | C$ 639,044,000 | ULCII |
| 4056 | Wilmington Trust Company, as Indenture Trustee for Calpine Corporation 8.75% Second Priority Senior Secured Notes Due 2013 | Quintana Canada Holdings LLC | US $933,958,967.18 | 2nd Lien |
| 4057 | Wilmington Trust Company, as Indenture Trustee for Calpine Corporation 9.875% Second Priority Senior Secured Notes Due 2011 | Quintana Canada Holdings LLC | US $402,137,369.40 | 2nd Lien |
| 4059 | Wilmington Trust Company, as Indenture Trustee for Calpine Corporation 8.5% Second Priority Senior Secured Notes Due 2010 | Quintana Canada Holdings LLC | US $1,192,139,522.73 | 2nd Lien |
| 4061 | Wilmington Trust Company, as Indenture Trustee for Calpine Corporation Second Priority Senior Secured Floating Rate Notes Due 2007 | Quintana Canada Holdings LLC | US $497,539,218.43 | 2nd Lien |
| 4388 | Wilmington Trust Company, as Indenture Trustee for the Holders of Calpine Corporation's Second Priority Senior Secured Notes for | Quintana Canada Holdings LLC | TBD | 2nd Lien |

G-4

| Claim No | Creditor | Debtor | Amount As Filed | |
|---|---|---|---|---|
| | certain Unliquidated Claims | | | |
| 3793 | Wilmington Trust Company, as Indenture Trustee for the Holders of Calpine Corporation's Second Priority Senior Secured Notes for certain Unliquidated Claims | Calpine ULC I Holding, LLC | TBD | 2nd Lien |
| 5740 | HSBC Bank USA, National Association, solely in its capacity as the Successor Indenture Trustee under the Indenture and the Senior Notes (as such terms are defined in the attachment to the Proof of Claim (the "Attachment")) issued by Calpine Canada Energy Finance ULC ("ULC 1"), on behalf of (a) the Indenture Trustee and holders of Senior Notes, and (b) ULC 1 | Calpine Corporation and each of its affiliate Debtors (as defined in the Attachment to the proof of claim) | TBD | ULC1 |
| 5742 | HSBC Bank USA, National Association, solely in its capacity as the Successor Indenture Trustee under the Indenture and the Senior Notes (as such terms are defined in the attachment to the Proof of Claim (the "Attachment")) issued by Calpine Canada Energy Finance ULC | Calpine Corporation | US $2,124,356,213.11 | ULC1 |
| 4074 | Manufacturers and Traders Trust Company, as Indenture Trustee, for the 8 7/8% Senior Notes Due 2011 and the 8 3/8% Senior Notes Due 2008 issued by Calpine Canada Energy Finance II ULC and guaranteed by Calpine Corporation and on behalf of Calpine Canada Energy Finance II ULC | Calpine Corporation | US $549,362, 988.80 | ULC2 |
| 4221 | Manufacturers and Traders Trust Company, as Indenture Trustee, for the 8 7/8% Senior Notes Due 2011 and the 8 3/8% Senior Notes Due 2008 issued by Calpine Canada Energy Finance II ULC and guaranteed by Calpine Corporation and on behalf of Calpine Canada Energy Finance II ULC | Quintana Canada Holdings LLC | US $549,362,988.80 | ULC2 |

G-5

| Claim No | Creditor | Debtor | Amount As Filed | |
|---|---|---|---|---|
| 4222 | Manufacturers and Traders Trust Company, as Indenture Trustee, for the Holders of the 8 3/8% Senior Notes Due 2008 issued by Calpine Canada Energy Finance II ULC and guaranteed by Calpine Corporation | Calpine Corporation | US $213,421,508.67 | ULC2 |
| 4223 | Manufacturers and Traders Trust Company, as Indenture Trustee, for the Holders of 8 7/8% Senior Notes Due 2011 issued by Calpine Canada Energy Finance II ULC and guaranteed by Calpine Corporation | Calpine Corporation | US $357,995,076.25 | ULC2 |
| 4224 | Manufacturers and Traders Trust Company, as Indenture Trustee, for the 8 7/8% Senior Notes Due 2011 and the 8 3/8% Senior Notes Due 2008 issued by Calpine Canada Energy Finance II ULC and guaranteed by Calpine Corporation, for its own fees, costs, and expenses | Calpine Corporation | US $838,637.41 | ULC2 |

**EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

In re:

CALPINE CORPORATION, et al.,

Debtors.

-------------------------------------------------------------- x

: Chapter 11
: Case No. 05-60200 (BRL)
:
: (Jointly Administered)
:
:

Action No. 0501-17864

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF CALPINE CANADA ENERGY LIMITED, CALPINE CANADA POWER LTD., CALPINE CANADA ENERGY FINANCE ULC, CALPINE ENERGY SERVICES CANADA LTD., CALPINE CANADA RESOURCES COMPANY, CALPINE CANADA POWER SERVICES LTD., CALPINE CANADA ENERGY FINANCE II ULC, CALPINE NATURAL GAS SERVICES LIMITED, AND 3094479 NOVA SCOTIA COMPANY

APPLICANTS

**TO ALL HOLDERS OF CALPINE CANADA ENERGY FINANCE ULC SENIOR NOTES** (collectively, the "Bonds"):

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 8.500% | 5/1/2008 | 13134VAA1 |
| 8.750% | 10/15/2007 | 13134VAB9 |

**SETTLEMENT**

PLEASE TAKE NOTICE that Calpine Corporation ("Calpine") and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on December 20, 2005 (the "Chapter 11 Cases"). On the same date, certain of Calpine's Canadian subsidiaries and affiliates (the "Canadian Debtors") filed applications under the *Companies' Creditors Arrangement Act* in the Court of Queen's Bench in Calgary, Alberta (the "CCAA Cases"). On June 28, 2007 Calpine filed a motion in the Chapter 11 Cases (the "U.S. Settlement Motion"), and the Canadian Debtors filed a motion in the CCAA Cases (the "Canadian Settlement Motion"), to approve a settlement relating to, among other things, the Bonds (the "Settlement"). If approved, the Settlement will resolve all claims the indenture trustee for the Bonds (the "Trustee") and/or holders of the Bonds ("Bondholders") may have against Calpine and/or Calpine Canada Energy Finance ULC ("ULC1," one of the Canadian Debtors) in connection with the Bonds.

**HOW TO OBTAIN INFORMATION CONCERNING THE SETTLEMENT**

**Copies of the U.S. Settlement Motion, the related proposed order, and the formal documents evidencing the terms and conditions of the Settlement (the "Settlement Agreement") are posted at http://www.kccllc.net/calpine/canadasettlement. The Canadian Settlement Motion, the related proposed order and the Settlement Agreement are available at the web site of the Canadian Monitor, http://www.ey.com/global/content.nsf/Canada/Insolvencies_-_2005_-_Calpine_Canada. Bondholders may also obtain copies of the settlement documents and copies of information about procedures concerning the Settlement Motion and the hearing thereon at no charge by contacting Kirkland & Ellis LLP, Attention: Jeffrey W. Gettleman, 200 East Randolph Drive, Chicago, Illinois 60601, (312) 861-3289.**

**On or about July 9, 2007 Calpine served a copy of the Settlement Motion and related proposed order on the record holders of the Bonds. Calpine expects that, in accordance with industry practice and SEC rules, the record holders will cause these documents to be mailed to the respective beneficial holders of the Bonds on whose behalf such record holders are acting as custodians of the Bonds.**

**OBJECTION DEADLINE, HEARING**

A hearing on the Settlement Motion has been scheduled for **July 24, 2007**. The hearing will take place at **2:00 p.m.** prevailing Eastern Time before the Honorable Burton R. Lifland in the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court"), and will be a joint hearing taking place at **Noon** prevailing Mountain Time before the Honourable Madam Justice B.E.C. Romaine, presiding in the Court of Queen's Bench, Court House, 611 - 4th St. S.W., Calgary, Alberta, Canada.

Objections, if any, to the Settlement Motion and the relief sought therein must be made in writing and filed and served so as to be actually received no later than **4:00 p.m. on July 16, 2007** prevailing Eastern Time. **Bondholders should refer to the Settlement Motions for specific requirements relating to the form, filing and service of such a response. UNLESS A TIMELY OBJECTION IS FILED WITH THE APPLICABLE COURT AND SERVED IN ACCORDANCE WITH THESE REQUIREMENTS, IT MAY NOT BE CONSIDERED BY THE APPLICABLE COURT.**