**EXHIBIT 6**

**In re Calpine Corp., Case No. 05-60200 (CGM) (Apr. 5, 2007) [Docket No. 4242-3]**

05-60200-cgm Case 22-14068-JFD Doc 492-7 Filed 04/03/09 Entered 03/28/03 13:08:12 Page 2 of 147 Document
Hearing Date: April 23, 2007 at 10:00 a.m. (ET)
Pg 1 of 10
Objection Deadline: April 11, 2007 at 5:00 p.m. (ET)

Philip D. Anker (PA 7833)
James H. Millar (JM 6091)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

Craig Goldblatt
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Jay A. Carfagnini
Joseph Pasquariello
Brendan D. O'Neill (BO 1483)
GOODMANS LLP
250 Yonge Street
Toronto, Ontario, Canada, M5B 2M6
Telephone: (416) 979-2211
Facsimile: (416) 979-1234

*Attorneys for Canadian Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| CALPINE CORPORATION., *et al.*, | : Case No. 05-60200 (BRL) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

------------------------------------------------------------ x

## MOTION OF CANADIAN DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105(a) APPROVING CROSS-BORDER COURT-TO-COURT PROTOCOL

TO:   THE HONORABLE BURTON R. LIFLAND
      UNITED STATES BANKRUPTCY JUDGE

The Canadian Debtors (defined below), by and through their undersigned attorneys, hereby submit this motion (the "Motion") for entry of an order pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), approving that certain cross-border court-to-court protocol attached hereto as Exhibit A (the "Court-to-Court Protocol"), which has been approved by the Canadian Court (defined below) subject in its entirety to this Court's further approval.[1]   In support thereof, the Canadian Debtors state as follows:

## PRELIMINARY STATEMENT

1.      Both this Court and the Canadian Court (defined below) have recognized that these proceedings and the Canadian Proceedings (defined below) may benefit from a "protocol" that establishes procedures, and provides clarity and structure, for coordinating the administration of cross-border matters arising between the U.S. Debtors and the Canadian Debtors and their respective insolvency proceedings.   The parties have taken those views to heart and have negotiated and developed a Court-to-Court Protocol.   Upon the Canadian Debtors' motion, and with the support of the Monitor (as defined below), the Canadian Court has approved the Court-to-Court Protocol (subject to this Court's approval) and has ordered the Canadian Debtors to seek this Court's approval.   The Canadian Debtors thus request that this Court join the Canadian Court in approving the Court-to-Court Protocol.

---

[1] All capitalized terms not otherwise defined herein shall have the meaning set forth in the Court-to-Court Protocol.

## JURISDICTION

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core matter pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein

is section 105(a) of the Bankruptcy Code.

## BACKGROUND

3.     On December 20, 2005, Calpine Corp. ("Calpine") and certain of its direct and

indirect subsidiaries (collectively, the "U.S. Debtors") filed voluntary petitions for relief in this

Court pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceedings").  The U.S.

Debtors continue to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On the same date, twelve Canadian Calpine entities (collectively, the "Canadian

Debtors") applied for and obtained protection from their creditors under Canada's *Companies'*

*Creditors Arrangement Act*, R.S.C. 1985, c. C-36 as amended, pursuant to an order of the

Honourable Madam Justice B.E.C. Romaine of the Alberta Court of Queen's Bench (the

"Canadian Court") dated December 20, 2005 (the "Canadian Proceedings" and together with the

Chapter 11 Proceedings, the "Proceedings").  Pursuant to that order, Ernst & Young Inc. was

appointed as monitor of the Canadian Debtors during the Canadian Proceedings (the "Monitor").

5.     The Chapter 11 Proceedings and the Canadian Proceedings function as separate

and distinct proceedings.  Neither the Canadian Debtors nor the U.S. Debtors have sought to

have their proceedings recognized in the other's jurisdiction.  Each, however, has appeared in

court in the other's jurisdiction and each has filed claims in the other's proceedings.

## THE NEED FOR CROSS-BORDER RELIEF

6.      The Canadian Debtors, on the one hand, and the U.S. Debtors, on the other, have

several significant, complex, and, in many instances, disputed matters between them that must be

considered and adequately addressed before either group of debtors can successfully resolve its

respective insolvency proceedings.  In many instances, questions of jurisdiction, venue and

choice of law suggest that both Courts may need to play a role in the adjudication and attendant

resolution of the underlying issues.

7.      Given the foregoing set of circumstances, at various times, both this Court and the

Canadian Court have suggested that the collective Proceedings may benefit from the approval of

and adherence to a "protocol" that establishes procedures for coordinating the administration of

cross-border matters arising in the Proceedings.  In light of the cross-border issues and claims

that are coming to the forefront in the Proceedings, the Canadian Debtors (with the approval of

the Monitor) submit that it is now appropriate for a protocol to be put in place.  Thus, the

Canadian Debtors, in consultation with the major stakeholders and the U.S. Debtors, have

negotiated and developed the form of Court-to-Court Protocol attached hereto as Exhibit A.

8.      The Court-to-Court Protocol seeks to (i) establish general administrative

procedures and protocols to govern and facilitate the overall administration of cross-border

matters between or among the Canadian Debtors and the U.S. Debtors and likewise between the

Canadian Proceedings and the Chapter 11 Proceedings; (ii) ensure the maintenance of the two

Courts' respective independent jurisdiction, where appropriate; and (iii) give due effect to any

applicable principles, including without limitation, comity, where appropriate.

9.      On March 29, 2007, the Canadian Debtors filed a motion with the Canadian Court

seeking its approval of the Court-to-Court Protocol.  A copy of the "Notice of Motion" filed by

the Canadian Debtors with the Canadian Court is attached hereto as Exhibit B.  On April 4, 2007,

3

the Canadian Court held a hearing on the Canadian Debtors' motion where it approved the

Court-to-Court Protocol (without modification), finding that it was "fair" and "even handed." It

also ordered the Canadian Debtors to seek the Court's approval of the Court-to-Court Protocol.

(*See* Order of the Canadian Court, dated April 5, 2007, attached hereto as Exhibit C.)

10.     The Court-to-Court Protocol contemplates the development and approval of a

subsequent "Canada-U.S. Claims-Specific Protocol" intended to address timing, venue, and

choice of law with respect to several significant and specific, disputed claims among the two

groups of debtors and others.  The Canadian Debtors and the U.S. Debtors continue to negotiate

the specifics of that protocol.  To date, the Canadian Debtors and the U.S. Debtors have not been

able to reach agreement on the Canada-U.S. Claims-Specific Protocol and, indeed, significant

disagreement exists.  However, if and when those negotiations result in an agreed Canada-U.S.

Claims-Specific Protocol, the Canadian Debtors contemplate that the Canada-U.S. Claims-

Specific Protocol would be presented to this Court and the Canadian Court for simultaneous

approval at a joint hearing to be scheduled and conducted pursuant to the provisions of the

Court-to-Court Protocol establishing such hearings (once the Court-to-Court Protocol is

approved).  And if those ongoing negotiations do not bear fruit, the Court-to-Court Protocol can

also provide the framework necessary for this Court and the Canadian Court to hold a joint

hearing to resolve any open issues on the terms of a Canada-U.S. Claims-Specific Protocol, as

necessary.  The Canadian Court has suggested that it will contact this Court to schedule a joint

hearing so that this matter does not languish.

### THE COURT-TO-COURT PROTOCOL

11.     The following is an overview of the provisions of the proposed Court-to-Court

Protocol:[2]

12.   <u>Purpose and Goals</u>.  The Court-to-Court Protocol seeks to promote the following

mutually desirable goals and objectives in both Proceedings:

     i.     harmonize, coordinate and minimize and avoid duplication of activities in
the Proceedings before this Court and the Canadian Court;

     ii.     promote the orderly and efficient administration of the Proceedings to,
among other things, maximize the efficiency of the Proceedings, reduce
the costs associated therewith and avoid duplication of effort;

     iii.     honor the independence and integrity of the Courts and other courts and
tribunals of the United States and Canada;

     iv.     promote international cooperation and respect for comity among the
Courts, the U.S. Debtors, the Canadian Debtors, their creditors, the various
committees, the U.S. Trustee, and the Monitor;

     v.     facilitate the fair, open and efficient administration of the Proceedings;
and

     vi.     implement a framework of general principles to address basic
administrative issues arising out of the cross-border nature of the
Proceedings.

13.   <u>Comity and Independence of the Courts</u>.  This Court shall have sole and exclusive

jurisdiction and power over the conduct of the Chapter 11 Proceedings and the hearing and

determination of matters arising therein.  The Canadian Court shall have sole and exclusive

jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and

determination of matters arising therein.  By approving and implementing the Court-to-Court

Protocol, neither this Court, the Canadian Court, the U.S. Debtors, the Canadian Debtors nor any

creditors or interested parties shall be deemed to have approved or engaged in any infringement

on the sovereignty of the United States or Canada.

_____

[2] This overview is merely intended to provide a short summary of some of the provisions of the Court-to-
Court Protocol.  If any conflict arises between this overview and the Court-to-Court Protocol, the terms of
the Court-to-Court Protocol shall control.

14.    <u>Cooperation</u>.  To harmonize and coordinate the administration of the Proceedings, this Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other court.

    i.    This Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any matter relating to the Proceedings.

    ii.    Where the issue of the proper jurisdiction or Court to determine an issue is raised by any party in interest in either of the Proceedings with respect to a motion or an application filed in either Court, the Court before which such motion or application was initially filed will contact the other Court and determine an appropriate process by which the issue of jurisdiction will be determined, and which process shall be subject to submissions by the U.S. Debtors, the Canadian Debtors, the U.S. Trustee, the Monitor, and any party in interest prior to any determination on the issue of jurisdiction being made by either Court.

    iii.    This Court and the Canadian Court may coordinate activities in the Proceedings so that the subject matter of any particular action, suit, request, application, contested matter or other proceedings is determined in one tribunal.

    iv.    This Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of either of the Proceedings if both Courts determine and agree that such joint hearings are necessary or advisable to facilitate the proper and efficient conduct of the Proceedings or the resolution of any particular issue arising in the Proceedings.

15.    <u>Other Provisions</u>.  The Court-to-Court Protocol also contains other provisions that, among other things, concern (i) access to information, (ii) intercompany claims, (iii) recognition of claims protocol, and (iv) retention and compensation of estate representatives and professionals.

**RELIEF REQUESTED**

16.    To facilitate the administration of these Chapter 11 Proceedings and the Canadian Proceedings, and as ordered by the Canadian Court, the Canadian Debtors request that the Court enter an order approving the Court-to-Court Protocol.

## BASIS FOR RELIEF

17.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A number of courts, in this district and elsewhere, have authorized similar protocols for managing cross-border insolvency proceedings.  *See In re Systech Retail Sys. (U.S.A.), Inc.*, Case No. 03-00142-5-ATS (Bankr. E.D.N.C. 2003); *In re Federal Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del. 2002); *In re Fin. Asset Mgmt. Found.*, Case No. 01-03640-304 (Bankr. S.D. Cal. 2001); *In re PSINet Inc.*, Case No. 01-13213 (Bankr. S.D.N.Y. 2001); *In re Laidlaw USA, Inc.*, Case No. 01-14099 (Bankr. W.D.N.Y. 2001); *In re Matlack Sys., Inc.*, Case No. 01-01114 (Bankr. D. Del. 2001); *In re Manhattan Inv. Fund Ltd.*, Case Nos. 00-10922 (BRL), 00-10921 (BRL) (Bankr. S.D.N.Y. 2000); *In re Inverworld, Inc.*, Case No. SA99-C0822FB (Bankr. W.D. Tex. 1999); *In re Loewen Group Int'l, Inc.*, Case No. 99-1244 (Bankr. D. Del. 1999); *In re Philip Servs. Corp.*, Case No. 99-B-02385 (Bankr. D. Del. 1999); *In re Livent (U.S.) Inc.*, Case No. 98 B 48312 (Bankr. S.D.N.Y. 1998); *In re Solvex Canada Ltd.*, 11-97-14362-MA (Bankr. N.M. 1997); *In re AIOC Corp.*, 96 B 41895 (Bankr. S.D.N.Y. 1996); *In re Everfresh Beverages, Inc.*, 95 B 45305 (Bankr. S.D.N.Y. 1995); *In re Nakash*, 94 B 44840 (Bankr. S.D.N.Y. 1994); *In re Olympia & York*, 92 B 42698 (Bankr. S.D.N.Y. 1992); *In re Maxwell Commc'n Corp.*, 91 B 15741 (Bankr. S.D.N.Y. 1991).

18.     The Court-to-Court Protocol provides a necessary and appropriate means for communication between the two Courts.  That communication will provide coordination of cross-border matters arising in the Proceedings.  The Canadian Debtors thus submit that approval of the Court-to-Court Protocol by this Court will prove beneficial to the administration of both the Chapter 11 Proceedings and the Canadian Proceedings.

## NOTICE

19.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the administrative agents for the U.S. Debtors' prepetition secured lenders; (d) counsel to the *ad hoc* committees; (e) the indenture trustees pursuant to the U.S. Debtors' and Canadian Debtors' secured indentures; (f) counsel to the postpetition lenders; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; (i) the United States Department of Justice; (j) counsel to the Official Committee of Equity Security Holders; (k) counsel to the U.S. Debtors; and (l) all parties that have requested special notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested herein, the Canadian Debtors submit that no other or further notice is required.

## WAIVER OF MEMORANDUM OF LAW

20.     Because this Motion presents no novel issues of law, the Canadian Debtors request that the Court waive the requirement of Local Bankruptcy Rule 9013-1(b) that a memorandum of law be submitted herewith.

WHEREFORE, the Canadian Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto, (a) approving the Court-to-Court Protocol and (b)

granting to the Canadian Debtors such other and further relief that this Court deems just and

proper.

Dated:  April 5, 2007                               Respectfully submitted,


                                                    WILMER CUTLER PICKERING
                                                     HALE AND DORR LLP


                                                    /s/ James H. Millar
                                                    _____
                                                    Philip D. Anker (PA 7833)
                                                    James H. Millar (JM 6091)
                                                    399 Park Avenue
                                                    New York, New York 10022
                                                    Telephone:  (212) 230-8800
                                                    Facsimile:  (212) 230-8888

                                                    Craig Goldblatt
                                                    WILMER CUTLER PICKERING
                                                     HALE AND DORR LLP
                                                    1875 Pennsylvania Ave., N.W.
                                                    Washington, D.C. 20006
                                                    Telephone:  (202) 663-6000
                                                    Facsimile:  (202) 663-6363

                                                    Jay A. Carfagnini
                                                    Joseph Pasquariello
                                                    Brendan D. O'Neill (BO 1483)
                                                    GOODMANS LLP
                                                    250 Yonge Street
                                                    Toronto, Ontario, Canada, M5B 2M6
                                                    Telephone:  (416) 979-2211
                                                    Facsimile:  (416) 979-1234

                                                    ATTORNEYS FOR
                                                    THE CANADIAN DEBTORS


                                        9

# EXHIBIT A

## CROSS-BORDER INSOLVENCY PROTOCOL
## FOR CALPINE CORPORATION AND ITS AFFILIATES

This cross-border insolvency protocol (the "**Protocol**") shall govern the conduct of all parties in interest in the Restructuring Proceedings (as such term is defined below).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border cases (the "**Guidelines**"), attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

A.   **Background**

1.   Calpine Corporation, a Delaware corporation ("**Calpine**"), is the ultimate parent company of a multinational enterprise that operates, through its various subsidiaries and affiliates, in the United States, Canada and other countries (the "**Calpine Businesses**").

2.   Calpine and certain of its direct and indirect subsidiaries and affiliates (collectively, the "**U.S. Debtors**") have commenced reorganization cases (collectively, the "**U.S. Cases**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**U.S. Court**"), and such cases have been consolidated (for procedural purposes only) under Case No. 05-60200. The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. The office of the United States Trustee (the "**U.S. Trustee**") has appointed official committees of unsecured creditors (the "**Creditors Committee**") and equity holders (the "**Equity Committee**", and collectively with the Creditors Committee, the "**Committees**") in the U.S. Cases.

- 2 -

3.    Calpine Canada Energy Ltd. (an indirect Canadian subsidiary of Calpine) and certain of its direct and indirect subsidiaries and affiliates (collectively, the "**Canadian Debtors**") have commenced reorganization proceedings (collectively, the "**Canadian Cases**") by filing an application under the Canadian *Companies' Creditors Arrangement Act* (the "**CCAA**") with the Alberta Court of Queen's Bench in Calgary, Alberta (the "**Canadian Court**"), and Orders have been granted (collectively, the "**CCAA Order**") under which (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA, (b) Ernst & Young Inc. ("**EYI**") was appointed as monitor (the "**Monitor**") of the Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the CCAA and the CCAA Order.

4.    The U.S. Cases and the Canadian Cases are separate and distinct and neither the U.S. Debtors nor the Canadian Debtors have sought to have their proceedings recognized in the other jurisdiction.  The Canadian Debtors are not debtors in the U.S. Debtors' Chapter 11 restructuring, although they have appeared before and filed claims as creditors of the U.S. Debtors in the U.S. proceedings.  Similarly, the U.S. Debtors are not Applicants in the Canadian Debtors' CCAA restructuring, although they have appeared before and filed claims as creditors of the Canadian Debtors in the Canadian proceedings.

5.    The claims bar date in both the U.S. Cases and Canadian Cases was August 1, 2006.  The U.S. Debtors and Canadian Debtors entered into a Memorandum of Understanding ("**MOU**") in order to facilitate the efficient and timely filing, treatment and resolution of intercompany claims in Canada and the United States.  A copy of the MOU is attached hereto as Schedule "B" and incorporated herein.

- 3 -

6.     The U.S. Debtors and the Canadian Debtors filed claims, including placeholder claims, against entities in the other jurisdiction (the "**Intercompany Claims**").

7.     For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "**Debtors**", (b) the U.S. Cases and the Canadian Cases shall be referred to herein collectively as the "**Restructuring Proceedings**" and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "**Courts**".

**B.     Purpose and Goals**

8.     While separate proceedings are pending in the United States and Canada in respect of the Debtors, the implementation of basic administrative procedures will assist in coordinating certain activities in the Restructuring Proceedings, to ensure maintenance of the Courts' independent jurisdiction and to give due effect to any applicable doctrines, including without limitation comity, *res judicata*, issue estoppel and/or collateral estoppel. Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in both the U.S. Cases and the Canadian Cases:

    i.    harmonize, coordinate and minimize and avoid duplication of activities in the Restructuring Proceedings before the U.S. Court and the Canadian Court;

    ii.    promote the orderly and efficient administration of the Restructuring Proceedings to, among other things, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith and avoid duplication of effort;

    iii.    honour the independence and integrity of the Courts and other courts and tribunals of the United States and Canada;

    iv.    promote international cooperation and respect for comity among the Courts, the Debtors, the Committees, the Estate Representatives, the U.S. Trustee, the Monitor and the Debtors' creditors;

- 4 -

v.    facilitate the fair, open and efficient administration of the Restructuring Proceedings; and

vi.    implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Restructuring Proceedings.

**C.**    **Comity and Independence of the Courts**

9.    The approval and implementation of this Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's independent jurisdiction. By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

10.    The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Cases and the hearing and determination of matters arising in the U.S. Cases. The Canadian Courts shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Cases and the hearing and determination of matters arising in the Canadian Cases.

11.    In accordance with the principles of comity and independence recognized herein, nothing contained herein shall be construed to:

i.    increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" basis;

ii.    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

iii.    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

- 5 -

iv.   require the Debtors, the Committees, the U.S. Trustee or the Monitor to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

v.   authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

vi.   preclude the Debtors, the Committees, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

## D.   Cooperation

12.   To assist in the efficient administration of the Restructuring Proceedings and recognizing that both the U.S. Debtors and Canadian Debtors may be creditors of the others' estates, the U.S. Debtors and the Canadian Debtors shall, where appropriate: (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court; and (b) take any other appropriate steps to coordinate the administration of the U.S. Cases and the Canadian Cases for the benefit of the Debtors' respective estates.

13.   To harmonize and coordinate the administration of the Restructuring Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.

(a)   The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any matter relating to the Restructuring Proceedings.

(b)   Where the issue of the proper jurisdiction or Court to determine an issue is raised by any party-in-interest in either of the Restructuring Proceedings with respect to a Motion

- 6 -

or an Application filed in either Court, the Court before which such Motion or Application was initially filed will contact the other Court and determine an appropriate process by which the issue of jurisdiction will be determined, and which process shall be subject to submissions by the Debtors, U.S. Trustee, Monitor and any party-in-interest prior to any determination on the issue of jurisdiction being made by either Court

(c)       The Courts may coordinate activities in the Restructuring Proceedings so that the subject matter of any particular action, suit, request, application, contested matter or other proceedings is determined in one Court.

(d)       The U.S. Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of the U.S. Cases or the Canadian Cases if both Courts determine and agree that such joint hearings are necessary or advisable to facilitate the proper and efficient conduct of the Restructuring Proceedings or the resolution of any particular issue arising in the Restructuring Proceedings. With respect to any such joint hearings, unless otherwise ordered by both Courts, the following procedures shall be followed:

     i.    A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court.

     ii.    Submissions or applications by any party that are or become the subject of a joint hearing of the Courts (collectively, "**Pleadings**") shall be made or filed initially only with the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any joint hearing, the party submitting such pleadings to one Court shall file copies with the other Court.  In any event, Pleadings seeking relief from both Courts must be filed with both Courts.

     iii.    Any party intending to rely on written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any joint hearing (collectively, "**Evidentiary Materials**") shall file such

- 7 -

        Evidentiary Materials in advance of the joint hearing. To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

    iv.    If a party has not previously appeared in or otherwise attorned to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the joint hearing without being deemed to have attorned to the jurisdiction of the Court by virtue of filing such Pleadings or Evidentiary Materials, provided that the party does not request any affirmative relief from such Court.

    v.    The Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other in advance of any joint hearing, with or without counsel being present, to (i) establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and the rendering of decisions by the U.S. Court and the Canadian Court and (ii) address any related procedural or administrative matters.

    vi.    The Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other after any joint hearing, with or without counsel present, for the purposes of (i) determining whether consistent rulings can be made by both Courts, (ii) coordinating the terms of the Courts' respective rulings and (iii) addressing any other procedural or administrative matter.

14.    Notwithstanding the terms of paragraph 13 above, the Protocol recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to (a) matters presented to and properly before such Court and (b) the conduct of the parties appearing in such matters.

15.    Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 34 herein.

- 8 -

**E.   Access to Information**

16.   Information publicly available in any forum shall be publicly available in both

fora.

**F.   Development of Plan of Restructuring or Plan of Reorganization**

17.   Nothing herein shall otherwise restrict or limit the U.S. Debtors or Canadian

Debtors from participating as creditors in the others' estates, or having access to information and

the ability to comment on or vote on any Plan of Arrangement or Plan of Reorganization

proposed in respect of the others' estates, or any of them.

**G.   Intercompany Claims**

18.   Intercompany Claims filed in each of the Canadian Cases and U.S. Cases shall be

resolved in accordance with existing or normal procedures for the resolution of claims and in

accordance with the MOU, to the extent applicable.

**H.   Claims Protocol**

19.   In addition to this Protocol the Canadian Debtors and the U.S. Debtors shall

attempt to negotiate a specific claims protocol to address, among other things, the timing,

process, jurisdiction and applicable governing law to be applied to claims filed by each other

(and their respective creditors) in the other's Cases.  Such specific claims protocol shall, to the

extent applicable, respect and adhere to the terms of the MOU.

- 9 -

**I.   Retention and Compensation of Estate Representatives and Professionals**

20.   The Monitor Parties (as such term is defined below) and any other estate representatives appointed in the Canadian Cases (collectively, the "**Canadian Representatives**") shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:  (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Cases under the CCAA or other applicable Canadian law.  The Canadian Representatives and their Canadian counsel and any other Canadian professionals shall not be required to seek approval of their retention in the U.S. Court.   Additionally, the Canadian Representatives and their Canadian counsel and other Canadian professionals (a) shall be compensated for their services solely in accordance with the CCAA, the CCAA Order and other applicable laws of Canada or orders of the Canadian Court and (b) shall not be required to seek approval of their compensation in the U.S. Court.[1]

21.   The Monitor and its respective officers, directors, employees, counsel and agents, wherever located (collectively, the "**Monitor Parties**"), shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Order.   In particular, except as otherwise provided in any subsequent order entered in the Canadian Cases, the Monitor Parties shall incur no liability or obligations as a result of the CCAA Order, the appointment of the Monitor, the carrying out of its duties or the provisions of

---

[1] The Canadian Representatives and the U.S. Representatives (defined below) shall collectively be referred to herein as the "Estate Representatives".

- 10 -

the CCAA and the CCAA Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or wilful misconduct.

22.     Any estate representatives appointed in the U.S. Cases, including any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, "**U.S. Representatives**)" shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including:  (a) the U.S. Representatives' tenure in office; (b) the retention and compensation of the U.S. Representatives; (c) the U.S. Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters relating to the U.S. Representatives arising in the U.S. Cases under the Bankruptcy Code or other applicable laws of the United States.  The U.S. Representatives and their U.S. counsel and other U.S. professionals shall not be required to seek approval of their retention in the Canadian Court. Additionally, the U.S. Representatives and their U.S. counsel and other U.S. professionals (a) shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their compensation in the Canadian Court.

23.     Any professionals retained by the Canadian Debtors, the Monitor Parties or by creditors of the Canadian Debtors to the extent such professionals for creditors of the Canadian Debtors are performing activities in Canada or in connection with the Canadian Cases (collectively, the "**Canadian Professionals**") shall be subject to the sole and exclusive jurisdiction of the Canadian Court.  Accordingly, the Canadian Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the CCAA Order and any other applicable Canadian law or orders of the

- 11 -

Canadian Court and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.

24.     Any professionals retained by the U.S. Debtors or by creditors of the U.S. Debtors (including the Committees, and any other Official Committees that may be appointed by the Office of the United States Trustee) for activities performed in the United States or in connection with the U.S. Cases (collectively, the **"U.S. Professionals"**) shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the U.S. Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court.

**J.     Notice**

25.     Notice of any motion, application or other pleading or paper filed in one or both of the Restructuring Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile or other electronic forms of communication) to the following: (a) all creditors and other interested parties, including the Committees, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under subpart (a) of this sentence, counsel to the Debtors, the U.S. Trustee, the Monitor, the parties named in the Cross-Border Service List attached as Schedule C hereto, (the **"Cross-Border Service List"**) and such other parties as may be designated by either of the Courts from time to time. When any document is filed by either the U.S. Debtors or the Canadian Debtors in their

- 12 -

respective Cases that has any cross-border effect, the filing Debtors shall serve such documents promptly on counsel for the non-filing Debtors, the U.S. Trustee, the Monitor, and the parties named in the Cross-Border Service List. Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur. In addition to the foregoing, upon request, the Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of all or any orders, decisions, opinions or similar papers issued by the other Court in the Restructuring Proceedings.

26.     When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notice shall be provided in the manner and to the parties referred to in paragraph 26 above.

**K.     Recognition of Stays of Proceedings**

27.     The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against the U.S. Debtors and their property under section 362 of the Bankruptcy Code (the "**U.S. Stay**"). In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding (a) the interpretation and application of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay and (b) the enforcement of the U.S. Stay in Canada.

28.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the CCAA and the CCAA Order (the "**Canadian Stay**"). In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding (a) the interpretation and applicability of the

- 13 -

Canadian Stay and any orders of the Canadian Court modifying or granting relief from the
Canadian Stay and (b) the enforcement of the Canadian Stay in the United States.

29.    Nothing contained herein shall affect or limit the Debtors' or other parties' rights
to assert the applicability or non applicability of the U.S. Stay or the Canadian Stay to any
particular proceeding, property, asset, activity or other matter, wherever pending or located.

30.    Nothing contained herein shall affect or limit the ability of either Court to direct
that any stay of proceedings affecting the parties before it shall not apply to applications or
motions brought by such parties before the other Court or that relief be granted to permit such
parties to bring such applications or motions before the other Court on such terms and conditions
as it considers appropriate.

**L.    Effectiveness; Modification**

31.    This Protocol shall become effective only upon its approval by both the U.S.
Court and the Canadian Court.

32.    This Protocol may not be supplemented, modified, terminated or replaced in any
manner except upon the approval of both the U.S. Court and the Canadian Court after notice and
a hearing.  Notice of any legal proceedings to supplement, modify, terminate or replace this
Protocol shall be given in accordance with paragraph 26 above.

**M.    Procedure for Resolving Disputes Under the Protocol**

33.    Disputes relating to the terms, intent or application of this Protocol may be
addressed by interested parties to either the U.S. Court, the Canadian Court or both Courts upon
notice in accordance with paragraph 26 above.  In rendering a determination in any such dispute,

- 14 -

the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either (i) render a binding decision after such consultation, (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to the other Court or (iii) seek a joint hearing of both Courts in accordance with paragraph 13 above. Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

34.    In implementing the terms of the Protocol, the U.S. Court and the Canadian Court may, in their sole discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

(a)    The U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

(b)    The Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

(c)    Copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 25 hereof; and

(d)    The Courts may jointly decide to invite the Debtors, the Committees, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

- 15 -

(e)      For clarity, the provisions of this paragraph 34 shall not be construed to restrict the ability of the U.S. Court and Canadian Court to confer as provided in paragraph 13 above whenever they deem it appropriate to do so.

### N.   Preservation of Rights

35.     Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Committees, the Estate Representatives, the U.S. Trustee, the Monitor or any of the Debtors' creditors under applicable law, including the Bankruptcy Code and the CCAA and the Orders of the Courts or (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

GOODMANS\\5355271.11

Schedule A

(Guidelines)

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001





The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001

COPYRIGHT © 2003

By

THE AMERICAN LAW INSTITUTE

All rights reserved
Printed in the United States of America

The *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* were developed by The American Law Institute during and as part of its Transnational Insolvency Project and the use of the *Guidelines* in cross-border cases is specifically permitted and encouraged.

The text of the *Guidelines* is available in English and several other languages including Chinese, French, German, Italian, Japanese, Korean, Portuguese, Russian, Swedish, and Spanish on the website of the International Insolvency Institute at http://www.iiiglobal.org/international/guidelines.html.

The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

# Foreword by the Director of
# The American Law Institute

In May of 2000 The American Law Institute gave its
final approval to the work of the ALI's Transnational In-
solvency Project. This consisted of the four volumes eventu-
ally published, after a period of delay required by the need
to take into account a newly enacted Mexican Bankruptcy
Code, in 2003 under the title of *Transnational Insolvency:
Cooperation Among the NAFTA Countries*. These volumes
included both the first phase of the project, separate State-
ments of the bankruptcy laws of Canada, Mexico, and the
United States, and the project's culminating phase, a volume
comprising *Principles of Cooperation Among the NAFTA
Countries*. All reflected the joint input of teams of Re-
porters and Advisers from each of the three NAFTA coun-
tries and a fully transnational perspective. Published by
Juris Publishing, Inc., they can be ordered on the ALI web-
site (www.ali.org).

A byproduct of our work on the Principles volume,
these *Guidelines Applicable to Court-to-Court Communica-
tions in Cross-Border Cases* appeared originally as Appen-
dix B of that volume and were approved by the ALI in 2000
along with the rest of the volume. But the *Guidelines* have
played a vital and influential role apart from the *Principles*,
having been widely translated and distributed, cited and ap-
plied by courts, and independently approved by both the
International Insolvency Institute and the Insolvency In-
stitute of Canada. Although they were initially developed in
the context of a project arrived at improving cooperation
among bankruptcy courts within the NAFTA countries,
their acceptance by the III, whose members include leaders

iii

of the insolvency bar from more than 40 countries, suggests
a pertinence and applicability that extends far beyond the
ambit of NAFTA. Indeed, there appears to be no reason to
restrict the *Guidelines* to insolvency cases; they should
prove useful whenever sensible and coherent standards for
cooperation among courts involved in overlapping litiga-
tion are called for. See, e.g., American Law Institute, Inter-
national Jurisdiction and Judgments Project § 12(e) (Ten-
tative Draft No. 2, 2004).

The American Law Institute expresses its gratitude to
the International Insolvency Institute for its continuing
efforts to publicize the *Guidelines* and to make them more
widely known to judges and lawyers around the world; to
III Chair E. Bruce Leonard of Toronto, who as Canadian
Co-Reporter for the Transnational Insolvency Project was
the principal drafter of the Guidelines in English and has
been primarily responsible for arranging and overseeing
their translation into the various other languages in which
they now appear; and to the translators themselves, whose
work will make the *Guidelines* much more universally ac-
cessible. We hope that this greater availability, in these new
English and bilingual editions, will help to foster better
communication, and thus better understanding, among the
diverse courts and legal systems throughout our increas-
ingly globalized world.

LANCE LIEBMAN
*Director*
*The American Law Institute*

January 2004

iv

# Foreword by the Chair of the International Insolvency Institute

The International Insolvency Institute, a world-wide association of leading insolvency professionals, judges, academics, and regulators, is pleased to recommend the adoption and the application in cross-border and multinational cases of The American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases*. The *Guidelines* were reviewed and studied by a Committee of the III and were unanimously approved by its membership at the III's Annual General Meeting and Conference in New York in June 2001.

Since their approval by the III, the *Guidelines* have been applied in several cross-border cases with considerable success in achieving the coordination that is so necessary to preserve values for all of the creditors that are involved in international cases. The III recommends without qualification that insolvency professionals and judges adopt the *Guidelines* at the earliest possible stage of a cross-border case so that they will be in place whenever there is a need for the courts involved to communicate with each other, e.g., whenever the actions of one court could impact on issues that are before the other court.

Although the *Guidelines* were developed in an insolvency context, it has been noted by litigation professionals and judges that the *Guidelines* would be equally valuable and constructive in any international case where two or more courts are involved. In fact, in multijurisdictional litigation, the positive effect of the *Guidelines* would be even greater in cases where several courts are involved. It

v

is important to appreciate that the *Guidelines* require that all domestic practices and procedures be complied with and that the *Guidelines* do not alter or affect the substantive rights of the parties or give any advantage to any party over any other party.

The International Insolvency Institute expresses appreciation to its members who have arranged for the translation of the *Guidelines* into French, German, Italian, Korean, Japanese, Chinese, Portuguese, Russian, and Swedish and extends its appreciation to The American Law Institute for the translation into Spanish. The III also expresses its appreciation to The American Law Institute, the American College of Bankruptcy, and the Ontario Superior Court of Justice Commercial List Committee for their kind and generous financial support in enabling the publication and dissemination of the *Guidelines* in bilingual versions in major countries around the world.

Readers who become aware of cases in which the *Guidelines* have been applied are highly encouraged to provide the details of those cases to the III (fax: 416-360-8877; e-mail: *info@iiiglobal.org*) so that everyone can benefit from the experience and positive results that flow from the adoption and application of the *Guidelines*. The continuing progress of the *Guidelines* and the cases in which the *Guidelines* have been applied will be maintained on the III's website at *www.iiiglobal.org*.

The III and all of its members are very pleased to have been a part of the development and success of the *Guidelines* and commend The American Law Institute for its vision in developing the *Guidelines* and in supporting

vi

their worldwide circulation to insolvency professionals, judges, academics, and regulators. The use of the *Guidelines* in international cases will change international insolvencies and reorganizations for the better forever, and the insolvency community owes a considerable debt to The American Law Institute for the inspiration and vision that has made this possible.

> E. BRUCE LEONARD
> *Chairman*
> *The International Insolvency Institute*

Toronto, Ontario
March 2004

vii

Case 22-11068-JTD   Doc 4102   Filed 03/29/23   Page 37 of 147

### Judicial Preface

We believe that the advantages of co-operation and co-ordination between Courts is clearly advantageous to all of the stakeholders who are involved in insolvency and reorganization cases that extend beyond the boundaries of one country. The benefit of communications between Courts in international proceedings has been recognized by the United Nations through the *Model Law on Cross-Border Insolvency* developed by the United Nations Commission on International Trade Law and approved by the General Assembly of the United Nations in 1997. The advantages of communications have also been recognized in the European Union Regulation on Insolvency Proceedings which became effective for the Member States of the European Union in 2002.

The *Guidelines for Court-to-Court Communications in Cross-Border Cases* were developed in the American Law Institute's Transnational Insolvency Project involving the NAFTA countries of Mexico, the United States and Canada. The *Guidelines* have been approved by the membership of the ALI and by the International Insolvency Institute whose membership covers over 40 countries from around the world. We appreciate that every country is unique and distinctive and that every country has its own proud legal traditions and concepts. The *Guidelines* are not intended to alter or change the domestic rules or procedures that are applicable in any country and are not intended to affect or curtail the substantive rights of any party in proceedings before the Courts. The *Guidelines* are intended to encourage and facilitate co-operation in international cases while observing all applicable rules and procedures of the Courts that are respectively involved.

The *Guidelines* may be modified to meet either the procedural law of the jurisdiction in question or the particular circumstances in individual cases so as to achieve the greatest level of co-operation possible between the Courts in dealing with a multinational insolvency or liquidation. The *Guidelines*, however, are not restricted to insolvency cases and may be of assistance in dealing with non-insolvency cases that involve more than one country. Several of us have already used the *Guidelines* in cross-border cases and would encourage stakeholders and counsel in international cases to consider the advantages that could be achieved in their cases from the application and implementation of the *Guidelines*.

Mr. Justice David Baragwanath
High Court of New Zealand
Auckland, New Zealand

Chief Justice Donald I. Brenner
Supreme Court of British Columbia
Vancouver

Hon. Sidney B. Brooks
United States Bankruptcy Court
District of Colorado
Denver

Hon. Charles G. Case, II
United States Bankruptcy Court
District of Arizona
Phoenix

Mr. Justice Miodrag Dordević
Supreme Court of Slovenia
Ljubljana

Mr. Justice J.M. Farley
Ontario Superior Court of Justice
Toronto

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York (Ret'd)
Shearman & Sterling
New York

Hon. Allan L. Gropper
Southern District of New York
United States Bankruptcy Court
New York

Mr. Justice Paul R. Heath
High Court of New Zealand
Auckland, New Zealand

Hon. Hyungdu Kim
Supreme Court of Korea
Seoul

Chief Judge Burton R. Lifland
United States Bankruptcy Appellate
Panel for the Second Circuit
New York

Mr. Justice Gavin Lightman
Royal Courts of Justice
London

Hon. George Paine II
United States Bankruptcy Court
District of Tennessee
Nashville

Hon. Chiyong Rim
District Court
Western District of Seoul
Seoul, Korea

Mr. Justice Adolfo A.N. Rouillon
Court of Appeal
Rosario, Argentina

Hon. Shinjiro Takagi
Supreme Court of Japan (Ret'd)
Industrial Revitalization Corporation of Japan
Tokyo

Mr. Justice Wisit Wisitsora – At
Business Reorganization Office
Government of Thailand
Bangkok

Mr. Justice R.H. Zulman
Supreme Court of Appeal of South Africa
Parklands

# Guidelines
## Applicable to Court-to-Court Communications
## in Cross-Border Cases

*Introduction:*

One of the most essential elements of cooperation in
cross-border cases is communication among the administrating
authorities of the countries involved. Because of the impor-
tance of the courts in insolvency and reorganization proceed-
ings, it is even more essential that the supervising courts be able
to coordinate their activities to assure the maximum available
benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and
harmonization of insolvency proceedings that involve more than
one country through communications among the jurisdictions
involved. Communications by judges directly with judges or
administrators in a foreign country, however, raise issues of cred-
ibility and proper procedures. The context alone is likely to cre-
ate concern in litigants unless the process is transparent and
clearly fair. Thus, communication among courts in cross-border
cases is both more important and more sensitive than in domes-
tic cases. These Guidelines encourage such communications
while channeling them through transparent procedures. The
Guidelines are meant to permit rapid cooperation in a develop-
ing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or
part, with or without modifications — should adopt them formal-
ly before applying them. A Court may wish to make its adoption
of the Guidelines contingent upon, or temporary until, their
adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the
Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign
Court or from an authorized Representative of the foreign
Court or from a foreign Insolvency Administrator and should
respond directly if the communication is from a foreign Court
(subject to Guideline 7 in the case of two-way communica-
tions) and may respond directly or through an authorized
Representative of the Court or through a duly authorized
Insolvency Administrator if the communication is from a for-
eign Insolvency Administrator, subject to local rules concern-
ing ex parte communications.

### Guideline 6

Communications from a Court to another Court may take
place by or through the Court:

    (a)   Sending or transmitting copies of formal orders,
judgments, opinions, reasons for decision, endorse-
ments, transcripts of proceedings, or other docu-
ments directly to the other Court and providing ad-
vance notice to counsel for affected parties in such
manner as the Court considers appropriate;

    (b)   Directing counsel or a foreign or domestic Insolvency
Administrator to transmit or deliver copies of docu-
ments, pleadings, affidavits, factums, briefs, or other
documents that are filed or to be filed with the Court
to the other Court in such fashion as may be appropri-
ate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers ap-
propriate;

(c) Participating in two-way communications with the
other Court by telephone or video conference call or
other electronic means, in which case Guideline 7
should apply.

### Guideline 7

In the event of communications between the Courts in
accordance with Guidelines 2 and 5 by means of telephone or
video conference call or other electronic means, unless other-
wise directed by either of the two Courts:

(a) Counsel for all affected parties should be entitled to
participate in person during the communication and
advance notice of the communication should be
given to all parties in accordance with the Rules of
Procedure applicable in each Court;

(b) The communication between the Courts should be
recorded and may be transcribed. A written tran-
script may be prepared from a recording of the com-
munication which, with the approval of both Courts,
should be treated as an official transcript of the com-
munication;

(c) Copies of any recording of the communication, of
any transcript of the communication prepared pur-
suant to any Direction of either Court, and of any
official transcript prepared from a recording should
be filed as part of the record in the proceedings and
made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d) The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

7

(c) Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d) Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e) Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

## Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

## Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11

# EXHIBIT B

Action No. 0501-17864

### IN THE COURT OF QUEEN'S BENCH OF ALBERTA
### JUDICIAL DISTRICT OF CALGARY

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF CALPINE CANADA ENERGY LIMITED, CALPINE CANADA POWER LTD., CALPINE CANADA ENERGY FINANCE ULC, CALPINE ENERGY SERVICES CANADA LTD., CALPINE CANADA RESOURCES COMPANY, CALPINE CANADA POWER SERVICES LTD., CALPINE CANADA ENERGY FINANCE II ULC, CALPINE NATURAL GAS SERVICES LIMITED, AND 3094479 NOVA SCOTIA COMPANY

APPLICANTS

### NOTICE OF MOTION

(Approval of Court-to-Court Protocol returnable April 4, 2007)

**TAKE NOTICE** that an application will be made on behalf of the Applicants before the Honourable Madam Justice B.E.C. Romaine, at the Courthouse, 611 – 4th St. S.W., in the City of Calgary, in the Province of Alberta, on Wednesday, April 4, 2007, at 12:00 p.m. or as soon thereafter as counsel may be heard for the following relief:

1.      An Order abridging the time for, and validating service of, this Notice of Motion and the materials filed in support of this application.

2.      An Order approving a "Court-to-Court Protocol" substantially in the form attached at Schedule A.

3.      Any other relief this Honourable Court may deem just.

**AND TAKE NOTICE THAT** the grounds of this application are that:

- 2 -

(a)     On December 20, 2005, the Applicants and the CCAA Parties (as defined in the Initial CCAA Order and collectively, the "CCAA Debtors") applied for and were granted protection under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 as amended (the "CCAA") pursuant to the Order of the Honourable Madam Justice B.E.C. Romaine dated December 20, 2005 (as thereafter amended and restated, the "Initial CCAA Order") (the "CCAA Proceedings");

(b)     On December 20, 2005, Calpine Corporation and approximately 270 of its direct and indirect U.S. subsidiaries (collectively, and together with other subsidiaries that filed later, the "U.S. Debtors") filed petitions with the United States Bankruptcy Court for the Southern District of New York (the "U.S. Bankruptcy Court") for relief under chapter 11 of Title 11 of the United States Code (the "U.S. Proceedings");

(c)     The CCAA Proceedings and the U.S. Proceedings are separate and distinct proceedings and neither the Canadian Debtors nor the U.S. Debtors have sought to have their proceedings recognized in the other jurisdiction;

(d)     Despite the separate and distinct nature of the Proceedings, Calpine's business operations in Canada and the United States were inter-related and as a result the CCAA Debtors and the U.S. Debtors have filed significant claims against each other and become interested parties in each other's Proceedings;

(e)     Given the foregoing set of circumstances, it has been suggested at various times during the CCAA Proceedings and the U.S. Proceedings, including by the U.S. Bankruptcy Court and this Honourable Court at the last hearing, that it may be beneficial for the CCAA Debtors and the U.S. Debtors to, at the appropriate time, develop and seek Court approval of a "protocol" to establish procedures for coordinating the administration of cross-border matters arising in the Proceedings;

(f)     In view of the cross-border issues and claims that have recently arisen in the Proceedings, the CCAA Debtors are of the view that it is now appropriate for such a protocol to be entered into and have, in consultation with the major

stakeholders, developed the form of "Court-to-Court Protocol" attached at Schedule A;

(g)  The Court-to-Court Protocol is intended to: establish general administrative procedures and protocols to govern and facilitate the overall administration of cross-border matters between or among the CCAA Debtors and the U.S. Debtors and the CCAA Proceedings and the U.S. Proceedings; to ensure the maintenance of the Courts' independent jurisdiction, where appropriate; and to give due effect to any applicable principles, including without limitation, comity, where appropriate;

(h)  If the Court-to-Court Protocol is approved by this Honourable Court, the CCAA Debtors intend to file a motion, either on their own or with the U.S. Debtors, with the U.S. Bankruptcy Court seeking approval of the Court-to-Court Protocol, in the form approved by this Honourable Court;

(i)  The Court-to-Court Protocol shall only become effective upon approval by both this Honourable Court and the U.S. Bankruptcy Court, in form and substance acceptable to each Court; and

(j)  such further and other grounds as counsel may advise and this Honourable Court may permit.

**AND FURTHER TAKE NOTICE** that in support of such application will be read (a) the Affidavit of Toby Austin sworn March 29, 2007, filed (b) a Report of the Monitor (to be filed separately), and (c) such further and other material as counsel may advise and this Honourable Court may permit.

**DATED** at the City of Calgary, in the Province of Alberta, this 29th day of March, 2007, **AND DELIVERED** by **McCARTHY TÉTRAULT LLP**, Barristers and Solicitors, co-Counsel for the Applicants whose address for service is in care of the said Solicitors at 3300, 421-7[th] Ave. S.W., Calgary, Alberta, T2P 4K9.

- 4 -

**McCARTHY TÉTRAULT LLP**

Per: _____

Larry B. Robinson, Q.C.
Co-Counsel for the Applicants

**GOODMANS LLP**

Per: _____

Jay A. Carfagnini
Co-Counsel for the Applicants

TO:        Clerk of the Court

AND TO:    Service List

**Schedule A**

**(Order approving Court-to-Court Protocol)**

Action No. 0501-17864

**IN THE COURT OF QUEEN'S BENCH OF ALBERTA**
**JUDICIAL DISTRICT OF CALGARY**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF**

**CALPINE CANADA ENERGY LIMITED, CALPINE CANADA POWER LTD.,**
**CALPINE CANADA ENERGY FINANCE ULC, CALPINE ENERGY SERVICES**
**CANADA LTD., CALPINE CANADA RESOURCES COMPANY,**
**CALPINE CANADA POWER SERVICES LTD., CALPINE CANADA ENERGY**
**FINANCE II ULC, CALPINE NATURAL GAS SERVICES LIMITED,**
**AND 3094479 NOVA SCOTIA COMPANY**

**APPLICANTS**

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | AT THE COURTHOUSE, IN THE CITY |
| MADAM JUSTICE B.E.C. ROMAINE | ) | OF CALGARY, IN THE PROVINCE OF |
| | ) | ALBERTA, ON WEDNESDAY, THE 4TH |
| | ) | DAY OF APRIL, 2007 |

**ORDER**
**(Approval of Court-to-Court Protocol)**

**UPON THE APPLICATION** of the Applicants; **AND UPON** having read (i) the Affidavit of Toby Austin sworn March 29, 2007 and (ii) ● Report of the Monitor, Ernst & Young Inc., dated ●, 2007, all filed; **AND UPON** hearing the submissions of counsel for the Applicants, the Monitor, and such other counsel as were present; **AND UPON** being satisfied that circumstances exist that make this Order appropriate; **IT IS HEREBY ORDERED THAT:**

1.     The time for service of the Notice of Motion is hereby abridged so that the application is properly returnable today, and, further, that any requirement for service of the Notice of Motion upon any party not served is hereby dispensed with.

2.     The Court-to-Court Protocol attached as Schedule A is approved by this Court.

- 2 -

3.    The Court-to-Court Protocol shall not become effective unless and until approved by the U.S. Bankruptcy Court, in form and substance acceptable to this Court.

_____

J.C.Q.B.A.

ENTERED this _____ day of April, 2007.

_____
Clerk of the Court

Schedule A

**(Court-to-Court Protocol)**

<u>**CROSS-BORDER INSOLVENCY PROTOCOL**</u>
<u>**FOR CALPINE CORPORATION AND ITS AFFILIATES**</u>

This cross-border insolvency protocol (the "**Protocol**") shall govern the conduct of all parties in interest in the Restructuring Proceedings (as such term is defined below).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border cases (the "**Guidelines**"), attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

A.   <u>**Background**</u>

1.     Calpine Corporation, a Delaware corporation ("**Calpine**"), is the ultimate parent company of a multinational enterprise that operates, through its various subsidiaries and affiliates, in the United States, Canada and other countries (the "**Calpine Businesses**").

2.     Calpine and certain of its direct and indirect subsidiaries and affiliates (collectively, the "**U.S. Debtors**") have commenced reorganization cases (collectively, the "**U.S. Cases**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**U.S. Court**"), and such cases have been consolidated (for procedural purposes only) under Case No. 05-60200. The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. The office of the United States Trustee (the "**U.S. Trustee**") has appointed official committees of unsecured creditors (the "**Creditors Committee**") and equity holders (the "**Equity Committee**", and collectively with the Creditors Committee, the "**Committees**") in the U.S. Cases.

- 2 -

3.      Calpine Canada Energy Ltd. (an indirect Canadian subsidiary of Calpine) and certain of its direct and indirect subsidiaries and affiliates (collectively, the **"Canadian Debtors"**) have commenced reorganization proceedings (collectively, the **"Canadian Cases"**) by filing an application under the Canadian *Companies' Creditors Arrangement Act* (the **"CCAA"**) with the Alberta Court of Queen's Bench in Calgary, Alberta (the **"Canadian Court"**), and Orders have been granted (collectively, the **"CCAA Order"**) under which (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA, (b) Ernst & Young Inc. (**"EYI"**) was appointed as monitor (the **"Monitor"**) of the Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the CCAA and the CCAA Order.

4.      The U.S. Cases and the Canadian Cases are separate and distinct and neither the U.S. Debtors nor the Canadian Debtors have sought to have their proceedings recognized in the other jurisdiction.  The Canadian Debtors are not debtors in the U.S. Debtors' Chapter 11 restructuring, although they have appeared before and filed claims as creditors of the U.S. Debtors in the U.S. proceedings.  Similarly, the U.S. Debtors are not Applicants in the Canadian Debtors' CCAA restructuring, although they have appeared before and filed claims as creditors of the Canadian Debtors in the Canadian proceedings.

5.      The claims bar date in both the U.S. Cases and Canadian Cases was August 1, 2006.  The U.S. Debtors and Canadian Debtors entered into a Memorandum of Understanding (**"MOU"**) in order to facilitate the efficient and timely filing, treatment and resolution of intercompany claims in Canada and the United States.  A copy of the MOU is attached hereto as Schedule "B" and incorporated herein.

- 3 -

6.   The U.S. Debtors and the Canadian Debtors filed claims, including placeholder claims, against entities in the other jurisdiction (the **"Intercompany Claims"**).

7.   For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the **"Debtors"**, (b) the U.S. Cases and the Canadian Cases shall be referred to herein collectively as the **"Restructuring Proceedings"** and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the **"Courts"**.

**B.   Purpose and Goals**

8.   While separate proceedings are pending in the United States and Canada in respect of the Debtors, the implementation of basic administrative procedures will assist in coordinating certain activities in the Restructuring Proceedings, to ensure maintenance of the Courts' independent jurisdiction and to give due effect to any applicable doctrines, including without limitation comity, *res judicata*, issue estoppel and/or collateral estoppel. Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in both the U.S. Cases and the Canadian Cases:

    i.     harmonize, coordinate and minimize and avoid duplication of activities in the Restructuring Proceedings before the U.S. Court and the Canadian Court;

    ii.    promote the orderly and efficient administration of the Restructuring Proceedings to, among other things, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith and avoid duplication of effort;

    iii.   honour the independence and integrity of the Courts and other courts and tribunals of the United States and Canada;

    iv.   promote international cooperation and respect for comity among the Courts, the Debtors, the Committees, the Estate Representatives, the U.S. Trustee, the Monitor and the Debtors' creditors;

- 4 -

v.     facilitate the fair, open and efficient administration of the Restructuring
       Proceedings; and

vi.    implement a framework of general principles to address basic
       administrative issues arising out of the cross-border nature of the
       Restructuring Proceedings.

**C.     Comity and Independence of the Courts**

9.     The approval and implementation of this Protocol shall not divest or diminish the
U.S. Court's and the Canadian Court's independent jurisdiction.    By approving and
implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any
creditors or interested parties shall be deemed to have approved or engaged in any infringement
on the sovereignty of the United States or Canada.

10.    The U.S. Court shall have sole and exclusive jurisdiction and power over the
conduct of the U.S. Cases and the hearing and determination of matters arising in the U.S. Cases.
The Canadian Courts shall have sole and exclusive jurisdiction and power over the conduct of
the Canadian Cases and the hearing and determination of matters arising in the Canadian Cases.

11.    In accordance with the principles of comity and independence recognized herein,
nothing contained herein shall be construed to:

i.     increase, decrease or otherwise modify the independence, sovereignty or
       jurisdiction of the U.S. Court, the Canadian Court or any other court or
       tribunal in the United States or Canada, including the ability of any such
       court or tribunal to provide appropriate relief under applicable law on an
       *ex parte* or "limited notice" basis;

ii.    require the U.S. Court to take any action that is inconsistent with its
       obligations under the laws of the United States;

iii.   require the Canadian Court to take any action that is inconsistent with its
       obligations under the laws of Canada;

- 5 -

iv.     require the Debtors, the Committees, the U.S. Trustee or the Monitor to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

v.      authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

vi.     preclude the Debtors, the Committees, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

**D.     Cooperation**

12.     To assist in the efficient administration of the Restructuring Proceedings and recognizing that both the U.S. Debtors and Canadian Debtors may be creditors of the others' estates, the U.S. Debtors and the Canadian Debtors shall, where appropriate: (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court; and (b) take any other appropriate steps to coordinate the administration of the U.S. Cases and the Canadian Cases for the benefit of the Debtors' respective estates.

13.     To harmonize and coordinate the administration of the Restructuring Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.

(a)     The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any matter relating to the Restructuring Proceedings.

(b)     Where the issue of the proper jurisdiction or Court to determine an issue is raised by any party-in-interest in either of the Restructuring Proceedings with respect to a Motion

- 6 -

or an Application filed in either Court, the Court before which such Motion or Application was initially filed will contact the other Court and determine an appropriate process by which the issue of jurisdiction will be determined, and which process shall be subject to submissions by the Debtors, U.S. Trustee, Monitor and any party-in-interest prior to any determination on the issue of jurisdiction being made by either Court

(c)     The Courts may coordinate activities in the Restructuring Proceedings so that the subject matter of any particular action, suit, request, application, contested matter or other proceedings is determined in one Court.

(d)     The U.S. Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of the U.S. Cases or the Canadian Cases if both Courts determine and agree that such joint hearings are necessary or advisable to facilitate the proper and efficient conduct of the Restructuring Proceedings or the resolution of any particular issue arising in the Restructuring Proceedings. With respect to any such joint hearings, unless otherwise ordered by both Courts, the following procedures shall be followed:

i.      A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court.

ii.     Submissions or applications by any party that are or become the subject of a joint hearing of the Courts (collectively, "**Pleadings**") shall be made or filed initially only with the Court in which such party is appearing and seeking relief. Promptly after the scheduling of any joint hearing, the party submitting such pleadings to one Court shall file copies with the other Court. In any event, Pleadings seeking relief from both Courts must be filed with both Courts.

iii.    Any party intending to rely on written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any joint hearing (collectively, "**Evidentiary Materials**") shall file such

- 7 -

Evidentiary Materials in advance of the joint hearing. To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

iv.    If a party has not previously appeared in or otherwise attorned to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the joint hearing without being deemed to have attorned to the jurisdiction of the Court by virtue of filing such Pleadings or Evidentiary Materials, provided that the party does not request any affirmative relief from such Court.

v.     The Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other in advance of any joint hearing, with or without counsel being present, to (i) establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and the rendering of decisions by the U.S. Court and the Canadian Court and (ii) address any related procedural or administrative matters.

vi.    The Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other after any joint hearing, with or without counsel present, for the purposes of (i) determining whether consistent rulings can be made by both Courts, (ii) coordinating the terms of the Courts' respective rulings and (iii) addressing any other procedural or administrative matter.

14.    Notwithstanding the terms of paragraph 13 above, the Protocol recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to (a) matters presented to and properly before such Court and (b) the conduct of the parties appearing in such matters.

15.    Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 34 herein.

- 8 -

**E.      Access to Information**

16.     Information publicly available in any forum shall be publicly available in both
fora.

**F.      Development of Plan of Restructuring or Plan of Reorganization**

17.     Nothing herein shall otherwise restrict or limit the U.S. Debtors or Canadian
Debtors from participating as creditors in the others' estates, or having access to information and
the ability to comment on or vote on any Plan of Arrangement or Plan of Reorganization
proposed in respect of the others' estates, or any of them.

**G.      Intercompany Claims**

18.     Intercompany Claims filed in each of the Canadian Cases and U.S. Cases shall be
resolved in accordance with existing or normal procedures for the resolution of claims and in
accordance with the MOU, to the extent applicable.

**H.      Claims Protocol**

19.     In addition to this Protocol the Canadian Debtors and the U.S. Debtors shall
attempt to negotiate a specific claims protocol to address, among other things, the timing,
process, jurisdiction and applicable governing law to be applied to claims filed by each other
(and their respective creditors) in the other's Cases. Such specific claims protocol shall, to the
extent applicable, respect and adhere to the terms of the MOU.

- 9 -

I.    Retention and Compensation of Estate Representatives and Professionals

20.    The Monitor Parties (as such term is defined below) and any other estate representatives appointed in the Canadian Cases (collectively, the "**Canadian Representatives**") shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:  (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Cases under the CCAA or other applicable Canadian law.  The Canadian Representatives and their Canadian counsel and any other Canadian professionals shall not be required to seek approval of their retention in the U.S. Court.    Additionally, the Canadian Representatives and their Canadian counsel and other Canadian professionals (a) shall be compensated for their services solely in accordance with the CCAA, the CCAA Order and other applicable laws of Canada or orders of the Canadian Court and (b) shall not be required to seek approval of their compensation in the U.S. Court.[1]

21.    The Monitor and its respective officers, directors, employees, counsel and agents, wherever located (collectively, the "**Monitor Parties**"), shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Cases, the Monitor Parties shall incur no liability or obligations as a result of the CCAA Order, the appointment of the Monitor, the carrying out of its duties or the provisions of

---

[1] The Canadian Representatives and the U.S. Representatives (defined below) shall collectively be referred to herein as the "Estate Representatives".

- 10 -

the CCAA and the CCAA Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or wilful misconduct.

22.     Any estate representatives appointed in the U.S. Cases, including any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, "**U.S. Representatives)**" shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including: (a) the U.S. Representatives' tenure in office; (b) the retention and compensation of the U.S. Representatives; (c) the U.S. Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters relating to the U.S. Representatives arising in the U.S. Cases under the Bankruptcy Code or other applicable laws of the United States. The U.S. Representatives and their U.S. counsel and other U.S. professionals shall not be required to seek approval of their retention in the Canadian Court. Additionally, the U.S. Representatives and their U.S. counsel and other U.S. professionals (a) shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their compensation in the Canadian Court.

23.     Any professionals retained by the Canadian Debtors, the Monitor Parties or by creditors of the Canadian Debtors to the extent such professionals for creditors of the Canadian Debtors are performing activities in Canada or in connection with the Canadian Cases (collectively, the "**Canadian Professionals**") shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Accordingly, the Canadian Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the CCAA Order and any other applicable Canadian law or orders of the

- 11 -

Canadian Court and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.

24.     Any professionals retained by the U.S. Debtors or by creditors of the U.S. Debtors (including the Committees, and any other Official Committees that may be appointed by the Office of the United States Trustee) for activities performed in the United States or in connection with the U.S. Cases (collectively, the **"U.S. Professionals"**) shall be subject to the sole and exclusive jurisdiction of the U.S. Court.  Accordingly, the U.S. Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court.

**J.**     **Notice**

25.     Notice of any motion, application or other pleading or paper filed in one or both of the Restructuring Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile or other electronic forms of communication) to the following: (a) all creditors and other interested parties, including the Committees, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under subpart (a) of this sentence, counsel to the Debtors, the U.S. Trustee, the Monitor, the parties named in the Cross-Border Service List attached as Schedule C hereto, (the **"Cross-Border Service List"**) and such other parties as may be designated by either of the Courts from time to time.  When any document is filed by either the U.S. Debtors or the Canadian Debtors in their

- 12 -

respective Cases that has any cross-border effect, the filing Debtors shall serve such documents promptly on counsel for the non-filing Debtors, the U.S. Trustee, the Monitor, and the parties named in the Cross-Border Service List. Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur. In addition to the foregoing, upon request, the Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of all or any orders, decisions, opinions or similar papers issued by the other Court in the Restructuring Proceedings.

26.    When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notice shall be provided in the manner and to the parties referred to in paragraph 26 above.

**K.**    **Recognition of Stays of Proceedings**

27.    The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against the U.S. Debtors and their property under section 362 of the Bankruptcy Code (the "**U.S. Stay**"). In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding (a) the interpretation and application of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay and (b) the enforcement of the U.S. Stay in Canada.

28.    The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the CCAA and the CCAA Order (the "**Canadian Stay**"). In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding (a) the interpretation and applicability of the

- 13 -

Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay and (b) the enforcement of the Canadian Stay in the United States.

29.     Nothing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or non applicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located.

30.     Nothing contained herein shall affect or limit the ability of either Court to direct that any stay of proceedings affecting the parties before it shall not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate.

**L.     Effectiveness; Modification**

31.     This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

32.     This Protocol may not be supplemented, modified, terminated or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.  Notice of any legal proceedings to supplement, modify, terminate or replace this Protocol shall be given in accordance with paragraph 26 above.

**M.     Procedure for Resolving Disputes Under the Protocol**

33.     Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to either the U.S. Court, the Canadian Court or both Courts upon notice in accordance with paragraph 26 above.  In rendering a determination in any such dispute,

- 14 -

the Court to which the issue is addressed:  (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either (i) render a binding decision after such consultation, (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to the other Court or (iii) seek a joint hearing of both Courts in accordance with paragraph 13 above. Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

34.     In implementing the terms of the Protocol, the U.S. Court and the Canadian Court may, in their sole discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

(a)     The U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

(b)     The Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

(c)     Copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 25 hereof; and

(d)     The Courts may jointly decide to invite the Debtors, the Committees, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

- 15 -

(e)     For clarity, the provisions of this paragraph 34 shall not be construed to restrict the ability of the U.S. Court and Canadian Court to confer as provided in paragraph 13 above whenever they deem it appropriate to do so.

### N.    Preservation of Rights

35.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Committees, the Estate Representatives, the U.S. Trustee, the Monitor or any of the Debtors' creditors under applicable law, including the Bankruptcy Code and the CCAA and the Orders of the Courts or (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

GOODMANS\\5355271.11

**Schedule A**

**(Guidelines)**

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001



The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE


# Guidelines Applicable to Court-to-Court
# Communications in Cross-Border Cases


*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001

COPYRIGHT © 2003

By

THE AMERICAN LAW INSTITUTE


All rights reserved

Printed in the United States of America

The *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* were developed by The American Law Institute during and as part of its Transnational Insolvency Project and the use of the *Guidelines* in cross-border cases is specifically permitted and encouraged.

The text of the *Guidelines* is available in English and several other languages including Chinese, French, German, Italian, Japanese, Korean, Portuguese, Russian, Swedish, and Spanish on the website of the International Insolvency Institute at http://www.iiiglobal.org/international/guidelines.html.

The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

ii

# Foreword by the Director of
# The American Law Institute

In May of 2000 The American Law Institute gave its final approval to the work of the ALI's Transnational Insolvency Project. This consisted of the four volumes eventually published, after a period of delay required by the need to take into account a newly enacted Mexican Bankruptcy Code, in 2003 under the title of *Transnational Insolvency: Cooperation Among the NAFTA Countries*. These volumes included both the first phase of the project, separate Statements of the bankruptcy laws of Canada, Mexico, and the United States, and the project's culminating phase, a volume comprising *Principles of Cooperation Among the NAFTA Countries*. All reflected the joint input of teams of Reporters and Advisers from each of the three NAFTA countries and a fully transnational perspective. Published by Juris Publishing, Inc., they can be ordered on the ALI website (www.ali.org).

A byproduct of our work on the Principles volume, these *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* appeared originally as Appendix B of that volume and were approved by the ALI in 2000 along with the rest of the volume. But the *Guidelines* have played a vital and influential role apart from the *Principles*, having been widely translated and distributed, cited and applied by courts, and independently approved by both the International Insolvency Institute and the Insolvency Institute of Canada. Although they were initially developed in the context of a project arrived at improving cooperation among bankruptcy courts within the NAFTA countries, their acceptance by the III, whose members include leaders

iii

of the insolvency bar from more than 40 countries, suggests
a pertinence and applicability that extends far beyond the
ambit of NAFTA. Indeed, there appears to be no reason to
restrict the *Guidelines* to insolvency cases; they should
prove useful whenever sensible and coherent standards for
cooperation among courts involved in overlapping litiga-
tion are called for. See, e.g., American Law Institute, Inter-
national Jurisdiction and Judgments Project § 12(e) (Ten-
tative Draft No. 2, 2004).

The American Law Institute expresses its gratitude to
the International Insolvency Institute for its continuing
efforts to publicize the *Guidelines* and to make them more
widely known to judges and lawyers around the world; to
III Chair E. Bruce Leonard of Toronto, who as Canadian
Co-Reporter for the Transnational Insolvency Project was
the principal drafter of the Guidelines in English and has
been primarily responsible for arranging and overseeing
their translation into the various other languages in which
they now appear; and to the translators themselves, whose
work will make the *Guidelines* much more universally ac-
cessible. We hope that this greater availability, in these new
English and bilingual editions, will help to foster better
communication, and thus better understanding, among the
diverse courts and legal systems throughout our increas-
ingly globalized world.

> LANCE LIEBMAN
> *Director*
> *The American Law Institute*

January 2004

iv

# Foreword by the Chair of the International Insolvency Institute

The International Insolvency Institute, a world-wide association of leading insolvency professionals, judges, academics, and regulators, is pleased to recommend the adoption and the application in cross-border and multinational cases of The American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases.* The *Guidelines* were reviewed and studied by a Committee of the III and were unanimously approved by its membership at the III's Annual General Meeting and Conference in New York in June 2001.

Since their approval by the III, the *Guidelines* have been applied in several cross-border cases with considerable success in achieving the coordination that is so necessary to preserve values for all of the creditors that are involved in international cases. The III recommends without qualification that insolvency professionals and judges adopt the *Guidelines* at the earliest possible stage of a cross-border case so that they will be in place whenever there is a need for the courts involved to communicate with each other, e.g., whenever the actions of one court could impact on issues that are before the other court.

Although the *Guidelines* were developed in an insolvency context, it has been noted by litigation professionals and judges that the *Guidelines* would be equally valuable and constructive in any international case where two or more courts are involved. In fact, in multijurisdictional litigation, the positive effect of the *Guidelines* would be even greater in cases where several courts are involved. It

v

is important to appreciate that the *Guidelines* require that all domestic practices and procedures be complied with and that the *Guidelines* do not alter or affect the substantive rights of the parties or give any advantage to any party over any other party.

The International Insolvency Institute expresses appreciation to its members who have arranged for the translation of the *Guidelines* into French, German, Italian, Korean, Japanese, Chinese, Portuguese, Russian, and Swedish and extends its appreciation to The American Law Institute for the translation into Spanish. The III also expresses its appreciation to The American Law Institute, the American College of Bankruptcy, and the Ontario Superior Court of Justice Commercial List Committee for their kind and generous financial support in enabling the publication and dissemination of the *Guidelines* in bilingual versions in major countries around the world.

Readers who become aware of cases in which the *Guidelines* have been applied are highly encouraged to provide the details of those cases to the III (fax: 416-360-8877; e-mail: *info@iiiglobal.org*) so that everyone can benefit from the experience and positive results that flow from the adoption and application of the *Guidelines*. The continuing progress of the *Guidelines* and the cases in which the *Guidelines* have been applied will be maintained on the III's website at *www.iiiglobal.org*.

The III and all of its members are very pleased to have been a part of the development and success of the *Guidelines* and commend The American Law Institute for its vision in developing the *Guidelines* and in supporting

their worldwide circulation to insolvency professionals, judges, academics, and regulators. The use of the *Guidelines* in international cases will change international insolvencies and reorganizations for the better forever, and the insolvency community owes a considerable debt to The American Law Institute for the inspiration and vision that has made this possible.

E. BRUCE LEONARD
*Chairman*
*The International Insolvency Institute*

Toronto, Ontario
March 2004

vii

## Judicial Preface

We believe that the advantages of co-operation and co-ordination between Courts is clearly advantageous to all of the stakeholders who are involved in insolvency and reorganization cases that extend beyond the boundaries of one country. The benefit of communications between Courts in international proceedings has been recognized by the United Nations through the *Model Law on Cross-Border Insolvency* developed by the United Nations Commission on International Trade Law and approved by the General Assembly of the United Nations in 1997. The advantages of communications have also been recognized in the European Union Regulation on Insolvency Proceedings which became effective for the Member States of the European Union in 2002.

The *Guidelines for Court-to-Court Communications in Cross-Border Cases* were developed in the American Law Institute's Transnational Insolvency Project involving the NAFTA countries of Mexico, the United States and Canada. The *Guidelines* have been approved by the membership of the ALI and by the International Insolvency Institute whose membership covers over 40 countries from around the world. We appreciate that every country is unique and distinctive and that every country has its own proud legal traditions and concepts. The *Guidelines* are not intended to alter or change the domestic rules or procedures that are applicable in any country and are not intended to affect or curtail the substantive rights of any party in proceedings before the Courts. The *Guidelines* are intended to encourage and facilitate co-operation in international cases while observing all applicable rules and procedures of the Courts that are respectively involved.

The *Guidelines* may be modified to meet either the procedural law of the jurisdiction in question or the particular circumstances in individual cases so as to achieve the greatest level of co-operation possible between the Courts in dealing with a multinational insolvency or liquidation. The *Guidelines*, however, are not restricted to insolvency cases and may be of assistance in dealing with non-insolvency cases that involve more than one country. Several of us have already used the *Guidelines* in cross-border cases and would encourage stakeholders and counsel in international cases to consider the advantages that could be achieved in their cases from the application and implementation of the *Guidelines*.

<table>
<tr><td>Mr. Justice David Baragwanath<br>High Court of New Zealand<br>Auckland, New Zealand</td><td>Chief Justice Donald I. Brenner<br>Supreme Court of British Columbia<br>Vancouver</td></tr>
<tr><td>Hon. Sidney B. Brooks<br>United States Bankruptcy Court<br>District of Colorado<br>Denver</td><td>Hon. Charles G. Case, II<br>United States Bankruptcy Court<br>District of Arizona<br>Phoenix</td></tr>
</table>

Mr. Justice Miodrag Dordević
Supreme Court of Slovenia
Ljubljana

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York (Ret'd)
Shearman & Sterling
New York

Mr. Justice Paul R. Heath
High Court of New Zealand
Auckland, New Zealand

Chief Judge Burton R. Lifland
United States Bankruptcy Appellate
Panel for the Second Circuit
New York

Hon. George Paine II
United States Bankruptcy Court
District of Tennessee
Nashville

Mr. Justice Adolfo A.N. Rouillon
Court of Appeal
Rosario, Argentina

Mr. Justice Wisit Wisitsora – At
Business Reorganization Office
Government of Thailand
Bangkok

Mr. Justice J.M. Farley
Ontario Superior Court of Justice
Toronto

Hon. Allan L. Gropper
Southern District of New York
United States Bankruptcy Court
New York

Hon. Hyungdu Kim
Supreme Court of Korea
Seoul

Mr. Justice Gavin Lightman
Royal Courts of Justice
London

Hon. Chiyong Rim
District Court
Western District of Seoul
Seoul, Korea

Hon. Shinjiro Takagi
Supreme Court of Japan (Ret'd)
Industrial Revitalization Corporation of Japan
Tokyo

Mr. Justice R.H. Zulman
Supreme Court of Appeal of South Africa
Parklands

# Guidelines
# Applicable to Court-to-Court Communications
# in Cross-Border Cases

## *Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

## Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

## Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

## Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

## Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the
Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign
Court or from an authorized Representative of the foreign
Court or from a foreign Insolvency Administrator and should
respond directly if the communication is from a foreign Court
(subject to Guideline 7 in the case of two-way communica-
tions) and may respond directly or through an authorized
Representative of the Court or through a duly authorized
Insolvency Administrator if the communication is from a for-
eign Insolvency Administrator, subject to local rules concern-
ing ex parte communications.

### Guideline 6

Communications from a Court to another Court may take
place by or through the Court:

(a) Sending or transmitting copies of formal orders,
judgments, opinions, reasons for decision, endorse-
ments, transcripts of proceedings, or other docu-
ments directly to the other Court and providing ad-
vance notice to counsel for affected parties in such
manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency
Administrator to transmit or deliver copies of docu-
ments, pleadings, affidavits, factums, briefs, or other
documents that are filed or to be filed with the Court
to the other Court in such fashion as may be appropri-
ate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers ap-
propriate;

(c) Participating in two-way communications with the
other Court by telephone or video conference call or
other electronic means, in which case Guideline 7
should apply.

### Guideline 7

In the event of communications between the Courts in
accordance with Guidelines 2 and 5 by means of telephone or
video conference call or other electronic means, unless other-
wise directed by either of the two Courts:

(a) Counsel for all affected parties should be entitled to
participate in person during the communication and
advance notice of the communication should be
given to all parties in accordance with the Rules of
Procedure applicable in each Court;

(b) The communication between the Courts should be
recorded and may be transcribed. A written tran-
script may be prepared from a recording of the com-
munication which, with the approval of both Courts,
should be treated as an official transcript of the com-
munication;

(c) Copies of any recording of the communication, of
any transcript of the communication prepared pur-
suant to any Direction of either Court, and of any
official transcript prepared from a recording should
be filed as part of the record in the proceedings and
made available to counsel for all parties in both

5

Courts subject to such Directions as to confidential-
ity as the Courts may consider appropriate; and

(d)  The time and place for communications between the
Courts should be to the satisfaction of both Courts.
Personnel other than Judges in each Court may com-
municate fully with each other to establish appropriate
arrangements for the communication without the
necessity for participation by counsel unless otherwise
ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and
an authorized Representative of the foreign Court or a foreign
Insolvency Administrator in accordance with Guidelines 3 and
5 by means of telephone or video conference call or other elec-
tronic means, unless otherwise directed by the Court:

(a)  Counsel for all affected parties should be entitled to
participate in person during the communication and
advance notice of the communication should be
given to all parties in accordance with the Rules of
Procedure applicable in each Court;

(b)  The communication should be recorded and may be
transcribed. A written transcript may be prepared
from a recording of the communication which, with
the approval of the Court, can be treated as an offi-
cial transcript of the communication;

(c)  Copies of any recording of the communication, of any
transcript of the communication prepared pursuant to
any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part
of the record in the proceedings and made available to
the other Court and to counsel for all parties in both
Courts subject to such Directions as to confidentiality
as the Court may consider appropriate; and

(d) The time and place for the communication should be
to the satisfaction of the Court. Personnel of the Court
other than Judges may communicate fully with the
authorized Representative of the foreign Court or the
foreign Insolvency Administrator to establish appro-
priate arrangements for the communication without
the necessity for participation by counsel unless other-
wise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In
connection with any such joint hearing, the following should apply,
unless otherwise ordered or unless otherwise provided in any pre-
viously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear
the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in
one Court should, in accordance with the Directions
of that Court, be transmitted to the other Court or
made available electronically in a publicly accessible
system in advance of the hearing. Transmittal of such
material to the other Court or its public availability
in an electronic system should not subject the party
filing the material in one Court to the jurisdiction of
the other Court.

7

(c)  Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)  Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)  Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

### Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

### Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

### Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear
and be heard by the Court without thereby becoming subject to
the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting
the parties before it shall, subject to further order of the Court,
not apply to applications or motions brought by such parties
before the other Court or that relief be granted to permit such
parties to bring such applications or motions before the other
Court on such terms and conditions as it considers appropriate.
Court-to-Court communications in accordance with Guidelines 6
and 7 hereof may take place if an application or motion brought
before the Court affects or might affect issues or proceedings in
the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another juris-
diction or with an authorized Representative of such Court in the
manner prescribed by these Guidelines for purposes of coordi-
nating and harmonizing proceedings before it with proceedings
in the other jurisdiction regardless of the form of the proceedings
before it or before the other Court wherever there is commonal-
ity among the issues and/or the parties in the proceedings. The
Court should, absent compelling reasons to the contrary, so com-
municate with the Court in the other jurisdiction where the inter-
ests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are
subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11

**Schedule B**

**(Memorandum of Understanding)**

## Memorandum of Understanding re: Proofs of Claim

The purpose of this memorandum is to facilitate the efficient and timely filing, treatment and resolution of intercompany claims in Canada and the United States according to the following parameters:

1. It shall be sufficient if any Proof of Claim is signed by an authorized representative of the creditor and unless expressly prohibited by the claims procedure (bar) order or applicable bankruptcy or insolvency provisions in either jurisdiction, fax copies or photocopies shall be accepted if timing issues prevent delivery of originals by the bar date, with originals to be filed as soon as reasonably possible thereafter.

2. Intercompany creditors may file one or more placeholder claims against one or more entities in the other jurisdiction and such claims shall be marked as a "Master Proof of Claim" and be accepted as having been filed as against all debtors in the other jurisdiction.

3. Pending the parties' good faith efforts to negotiate a protocol referenced in paragraph 5 below and the completion of the procedures outlined therein and the completion of the procedures referenced in paragraphs 4 and 5 below, no claim shall be rejected or objected to on the basis:

A) that the claim ought to have been more appropriately asserted against another intercompany entity, and particulars may be provided subsequent to filing any claim as to which entity the claim properly lies against;

B) that the creditor is unable to express an exact dollar amount of its claim whether or not it is contingent or unliquidated;

C) that the amount claimed has been, on the books and records of either or both of the creditor or the debtor, mischaracterized or misclassified (including, for example related /non related party debt); or

D) of a lack of particularity,

4. Intercompany creditors in both jurisdictions shall use best efforts to locate and file with their Proofs of Claim or thereafter further particulars and/or back up documentation to facilitate the fair and equitable evaluation of the claims.

5. Intercompany creditors shall continue their ongoing dialogue and cooperation in an effort to resolve discrepancies and issues relating to their claims, and following the claims bar date and the filing of claims, the intercompany creditors and their representatives shall meet in an effort to agree upon a protocol for the resolution/adjudication of all intercompany claims where possible.

6. The Monitor in the Canadian proceedings consents to this MOD.

**Schedule C**

**(Cross-Border Service List)**

*[intentionally blank]*

---

No.  0501-17864                          A.D. 2005

---

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

---

**IN THE MATTER OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c.
C-36, AS AMENDED**

**AND IN THE MATTER OF CALPINE CANADA
ENERGY LIMITED, CALPINE CANADA POWER
LTD., CALPINE CANADA ENERGY FINANCE
ULC, CALPINE ENERGY SERVICES CANADA
LTD., CALPINE CANADA RESOURCES
COMPANY, CALPINE CANADA POWER
SERVICES LTD., CALPINE CANADA ENERGY
FINANCE II ULC, CALPINE NATURAL GAS
SERVICES LIMITED, AND 3094479 NOVA SCOTIA
COMPANY**

Applicants

---

**ORDER**

---

**GOODMANS LLP**
Barristers & Solicitors
Suite 2400
250 Yonge Street
Toronto, Canada M5B 2M6

Jay A. Carfagnini
Fred Myers
Joseph Pasquariello
Tel: 416-979-2211
Fax: 416-979-1234

**McCARTHY TÉTRAULT LLP**
3300 – 421 7 Ave. S.W.
Calgary, AB  T2P 4K9

Larry B. Robinson Q.C.
Sean F. Collins
Tel: 403-260-3500
Fax: 403-260-3501

| No. 0501-17864 | A.D. 2005 |
|---|---|

IN THE COURT OF QUEEN'S BENCH OF
ALBERTA
JUDICIAL DISTRICT OF CALGARY

IN THE MATTER OF THE *COMPANIES'
CREDITORS ARRANGEMENT ACT*, R.S.C.
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF CALPINE
CANADA ENERGY LIMITED, CALPINE
CANADA POWER LTD., CALPINE CANADA
ENERGY FINANCE ULC, CALPINE ENERGY
SERVICES CANADA LTD., CALPINE
CANADA RESOURCES COMPANY,
CALPINE CANADA POWER SERVICES
LTD., CALPINE CANADA ENERGY
FINANCE II ULC, CALPINE NATURAL GAS
SERVICES LIMITED, AND 3094479 NOVA
SCOTIA COMPANY

**Applicants**

---

### NOTICE OF MOTION

---

**GOODMANS LLP**
Barristers & Solicitors
Suite 2400
250 Yonge Street
Toronto, Canada M5B 2M6

Jay A. Carfagnini
Fred Myers
Joseph Pasquariello
Tel: 416-979-2211
Fax: 416-979-1234

**McCARTHY TÉTRAULT LLP**
3300 – 421 7 Ave. S.W.
Calgary, AB  T2P 4K9

Larry B. Robinson Q.C.
Sean F. Collins
Tel: 403-260-3500
Fax: 403-260-3501

# EXHIBIT C

Action No. 0501-17864

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF

CALPINE CANADA ENERGY LIMITED, CALPINE CANADA POWER LTD.,
CALPINE CANADA ENERGY FINANCE ULC, CALPINE ENERGY SERVICES
CANADA LTD., CALPINE CANADA RESOURCES COMPANY,
CALPINE CANADA POWER SERVICES LTD., CALPINE CANADA ENERGY
FINANCE II ULC, CALPINE NATURAL GAS SERVICES LIMITED,
AND 3094479 NOVA SCOTIA COMPANY

**APPLICANTS**

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | AT THE COURTHOUSE, IN THE CITY |
| MADAM JUSTICE B.E.C. ROMAINE | ) | OF CALGARY, IN THE PROVINCE OF |
| | ) | ALBERTA, ON WEDNESDAY, THE 4TH |
| | ) | DAY OF APRIL, 2007 |

I hereby certify this to be a true copy of
the original _Order_
Dated this _2_ day of _April, 2007_
_Dieland_
for Clerk of the Court

**ORDER**
**(Approval of Court-to-Court Protocol)**

**UPON THE APPLICATION** of the Applicants; **AND UPON** having read (i) the Affidavit of Toby Austin sworn March 29, 2007 and (ii) the Twenty-Second Report of the Monitor, Ernst & Young Inc., dated April 3, 2007, all filed; **AND UPON** hearing the submissions of counsel for the Applicants, the Monitor, and such other counsel as were present; **AND UPON** being satisfied that circumstances exist that make this Order appropriate; **IT IS HEREBY ORDERED THAT:**

1.      The time for service of the Notice of Motion is hereby abridged so that the application is properly returnable today, and, further, that any requirement for service of the Notice of Motion upon any party not served is hereby dispensed with.

*199472-371537*
*CAL_DOCS #1572857 v. 1*

- 2 -

2.     The Court-to-Court Protocol attached as Schedule A is approved by this Court.

3.     The Court-to-Court Protocol shall not become effective unless and until approved by the U.S. Bankruptcy Court, in form and substance acceptable to this Court.

_____

J.C.Q.B.A.

ENTERED this _____ day of April, 2007.

_____

Clerk of the Court

Schedule A

**(Court-to-Court Protocol)**

## CROSS-BORDER INSOLVENCY PROTOCOL
## FOR CALPINE CORPORATION AND ITS AFFILIATES

This cross-border insolvency protocol (the "**Protocol**") shall govern the conduct of all parties in interest in the Restructuring Proceedings (as such term is defined below).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border cases (the "**Guidelines**"), attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

**A.** **Background**

1.     Calpine Corporation, a Delaware corporation ("**Calpine**"), is the ultimate parent company of a multinational enterprise that operates, through its various subsidiaries and affiliates, in the United States, Canada and other countries (the "**Calpine Businesses**").

2.     Calpine and certain of its direct and indirect subsidiaries and affiliates (collectively, the "**U.S. Debtors**") have commenced reorganization cases (collectively, the "**U.S. Cases**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**U.S. Court**"), and such cases have been consolidated (for procedural purposes only) under Case No. 05-60200. The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. The office of the United States Trustee (the "**U.S. Trustee**") has appointed official committees of unsecured creditors (the "**Creditors Committee**") and equity holders (the "**Equity Committee**", and collectively with the Creditors Committee, the "**Committees**") in the U.S. Cases.

- 2 -

3.      Calpine Canada Energy Ltd. (an indirect Canadian subsidiary of Calpine) and certain of its direct and indirect subsidiaries and affiliates (collectively, the "**Canadian Debtors**") have commenced reorganization proceedings (collectively, the "**Canadian Cases**") by filing an application under the Canadian *Companies' Creditors Arrangement Act* (the "**CCAA**") with the Alberta Court of Queen's Bench in Calgary, Alberta (the "**Canadian Court**"), and Orders have been granted (collectively, the "**CCAA Order**") under which (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA, (b) Ernst & Young Inc. ("**EYI**") was appointed as monitor (the "**Monitor**") of the Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the CCAA and the CCAA Order.

4.      The U.S. Cases and the Canadian Cases are separate and distinct and neither the U.S. Debtors nor the Canadian Debtors have sought to have their proceedings recognized in the other jurisdiction.  The Canadian Debtors are not debtors in the U.S. Debtors' Chapter 11 restructuring, although they have appeared before and filed claims as creditors of the U.S. Debtors in the U.S. proceedings.  Similarly, the U.S. Debtors are not Applicants in the Canadian Debtors' CCAA restructuring, although they have appeared before and filed claims as creditors of the Canadian Debtors in the Canadian proceedings.

5.      The claims bar date in both the U.S. Cases and Canadian Cases was August 1, 2006.  The U.S. Debtors and Canadian Debtors entered into a Memorandum of Understanding ("**MOU**") in order to facilitate the efficient and timely filing, treatment and resolution of intercompany claims in Canada and the United States.  A copy of the MOU is attached hereto as Schedule "B" and incorporated herein.

- 3 -

6.     The U.S. Debtors and the Canadian Debtors filed claims, including placeholder claims, against entities in the other jurisdiction (the "**Intercompany Claims**").

7.     For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "**Debtors**", (b) the U.S. Cases and the Canadian Cases shall be referred to herein collectively as the "**Restructuring Proceedings**" and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "**Courts**".

**B.     Purpose and Goals**

8.     While separate proceedings are pending in the United States and Canada in respect of the Debtors, the implementation of basic administrative procedures will assist in coordinating certain activities in the Restructuring Proceedings, to ensure maintenance of the Courts' independent jurisdiction and to give due effect to any applicable doctrines, including without limitation comity, *res judicata*, issue estoppel and/or collateral estoppel.  Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in both the U.S. Cases and the Canadian Cases:

|      |                                                                                                                                                                                       |
|------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| i.   | harmonize, coordinate and minimize and avoid duplication of activities in the Restructuring Proceedings before the U.S. Court and the Canadian Court;                                 |
| ii.  | promote the orderly and efficient administration of the Restructuring Proceedings to, among other things, maximize the efficiency of the Restructuring Proceedings, reduce the costs associated therewith and avoid duplication of effort; |
| iii. | honour the independence and integrity of the Courts and other courts and tribunals of the United States and Canada;                                                                  |
| iv.  | promote international cooperation and respect for comity among the Courts, the Debtors, the Committees, the Estate Representatives, the U.S. Trustee, the Monitor and the Debtors' creditors; |

- 4 -

    v.    facilitate the fair, open and efficient administration of the Restructuring Proceedings; and

    vi.    implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Restructuring Proceedings.

## C.    <u>Comity and Independence of the Courts</u>

9.    The approval and implementation of this Protocol shall not divest or diminish the U.S. Court's and the Canadian Court's independent jurisdiction. By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

10.    The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Cases and the hearing and determination of matters arising in the U.S. Cases. The Canadian Courts shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Cases and the hearing and determination of matters arising in the Canadian Cases.

11.    In accordance with the principles of comity and independence recognized herein, nothing contained herein shall be construed to:

    i.    increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief under applicable law on an *ex parte* or "limited notice" basis;

    ii.    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

    iii.    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

- 5 -

    iv.    require the Debtors, the Committees, the U.S. Trustee or the Monitor to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

    v.    authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

    vi.    preclude the Debtors, the Committees, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

**D.**     **Cooperation**

12.     To assist in the efficient administration of the Restructuring Proceedings and recognizing that both the U.S. Debtors and Canadian Debtors may be creditors of the others' estates, the U.S. Debtors and the Canadian Debtors shall, where appropriate: (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court; and (b) take any other appropriate steps to coordinate the administration of the U.S. Cases and the Canadian Cases for the benefit of the Debtors' respective estates.

13.     To harmonize and coordinate the administration of the Restructuring Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.

    (a)     The U.S. Court and the Canadian Court may communicate with one another, with or without counsel present, with respect to any matter relating to the Restructuring Proceedings.

    (b)     Where the issue of the proper jurisdiction or Court to determine an issue is raised by any party-in-interest in either of the Restructuring Proceedings with respect to a Motion

- 6 -

or an Application filed in either Court, the Court before which such Motion or Application was initially filed will contact the other Court and determine an appropriate process by which the issue of jurisdiction will be determined, and which process shall be subject to submissions by the Debtors, U.S. Trustee, Monitor and any party-in-interest prior to any determination on the issue of jurisdiction being made by either Court

(c)     The Courts may coordinate activities in the Restructuring Proceedings so that the subject matter of any particular action, suit, request, application, contested matter or other proceedings is determined in one Court.

(d)     The U.S. Court and the Canadian Court may conduct joint hearings with respect to any matter relating to the conduct, administration, determination or disposition of any aspect of the U.S. Cases or the Canadian Cases if both Courts determine and agree that such joint hearings are necessary or advisable to facilitate the proper and efficient conduct of the Restructuring Proceedings or the resolution of any particular issue arising in the Restructuring Proceedings.  With respect to any such joint hearings, unless otherwise ordered by both Courts, the following procedures shall be followed:

i.     A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court.

ii.     Submissions or applications by any party that are or become the subject of a joint hearing of the Courts (collectively, "**Pleadings**") shall be made or filed initially only with the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any joint hearing, the party submitting such pleadings to one Court shall file copies with the other Court.  In any event, Pleadings seeking relief from both Courts must be filed with both Courts.

iii.     Any party intending to rely on written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any joint hearing (collectively, "**Evidentiary Materials**") shall file such

- 7 -

Evidentiary Materials in advance of the joint hearing. To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

iv. If a party has not previously appeared in or otherwise attorned to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the joint hearing without being deemed to have attorned to the jurisdiction of the Court by virtue of filing such Pleadings or Evidentiary Materials, provided that the party does not request any affirmative relief from such Court.

v. The Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other in advance of any joint hearing, with or without counsel being present, to (i) establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and the rendering of decisions by the U.S. Court and the Canadian Court and (ii) address any related procedural or administrative matters.

vi. The Judge of the U.S. Court and the Justice of the Canadian Court shall be entitled to communicate with each other after any joint hearing, with or without counsel present, for the purposes of (i) determining whether consistent rulings can be made by both Courts, (ii) coordinating the terms of the Courts' respective rulings and (iii) addressing any other procedural or administrative matter.

14. Notwithstanding the terms of paragraph 13 above, the Protocol recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to (a) matters presented to and properly before such Court and (b) the conduct of the parties appearing in such matters.

15. Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 34 herein.

- 8 -

**E.**      **Access to Information**

16.     Information publicly available in any forum shall be publicly available in both fora.

**F.**      **Development of Plan of Restructuring or Plan of Reorganization**

17.     Nothing herein shall otherwise restrict or limit the U.S. Debtors or Canadian Debtors from participating as creditors in the others' estates, or having access to information and the ability to comment on or vote on any Plan of Arrangement or Plan of Reorganization proposed in respect of the others' estates, or any of them.

**G.**      **Intercompany Claims**

18.     Intercompany Claims filed in each of the Canadian Cases and U.S. Cases shall be resolved in accordance with existing or normal procedures for the resolution of claims and in accordance with the MOU, to the extent applicable.

**H.**      **Claims Protocol**

19.     In addition to this Protocol the Canadian Debtors and the U.S. Debtors shall attempt to negotiate a specific claims protocol to address, among other things, the timing, process, jurisdiction and applicable governing law to be applied to claims filed by each other (and their respective creditors) in the other's Cases. Such specific claims protocol shall, to the extent applicable, respect and adhere to the terms of the MOU.

- 9 -

## I.    Retention and Compensation of Estate Representatives and Professionals

20.    The Monitor Parties (as such term is defined below) and any other estate representatives appointed in the Canadian Cases (collectively, the **"Canadian Representatives"**) shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:  (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Cases under the CCAA or other applicable Canadian law.  The Canadian Representatives and their Canadian counsel and any other Canadian professionals shall not be required to seek approval of their retention in the U.S. Court.    Additionally, the Canadian Representatives and their Canadian counsel and other Canadian professionals (a) shall be compensated for their services solely in accordance with the CCAA, the CCAA Order and other applicable laws of Canada or orders of the Canadian Court and (b) shall not be required to seek approval of their compensation in the U.S. Court.[1]

21.    The Monitor and its respective officers, directors, employees, counsel and agents, wherever located (collectively, the **"Monitor Parties"**), shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Order.    In particular, except as otherwise provided in any subsequent order entered in the Canadian Cases, the Monitor Parties shall incur no liability or obligations as a result of the CCAA Order, the appointment of the Monitor, the carrying out of its duties or the provisions of

---

[1] The Canadian Representatives and the U.S. Representatives (defined below) shall collectively be referred to herein as the "Estate Representatives".

- 10 -

the CCAA and the CCAA Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or wilful misconduct.

22.     Any estate representatives appointed in the U.S. Cases, including any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, **"U.S. Representatives)"** shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including: (a) the U.S. Representatives' tenure in office; (b) the retention and compensation of the U.S. Representatives; (c) the U.S. Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Restructuring Proceedings; and (d) the hearing and determination of any other matters relating to the U.S. Representatives arising in the U.S. Cases under the Bankruptcy Code or other applicable laws of the United States. The U.S. Representatives and their U.S. counsel and other U.S. professionals shall not be required to seek approval of their retention in the Canadian Court. Additionally, the U.S. Representatives and their U.S. counsel and other U.S. professionals (a) shall be compensated for their services solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their compensation in the Canadian Court.

23.     Any professionals retained by the Canadian Debtors, the Monitor Parties or by creditors of the Canadian Debtors to the extent such professionals for creditors of the Canadian Debtors are performing activities in Canada or in connection with the Canadian Cases (collectively, the **"Canadian Professionals"**) shall be subject to the sole and exclusive jurisdiction of the Canadian Court. Accordingly, the Canadian Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the Canadian Court under the CCAA, the CCAA Order and any other applicable Canadian law or orders of the

05-60200-cgm 22-11068-jTD Doc 4242-9 Doc 1935-07 Filed 04/05/07 Filed 02/29/22 Entered 04/05/07 18:04:18 Pg 15 of 147 Exhibit C

Pg 15 of 45

- 11 -

Canadian Court and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court.

24.     Any professionals retained by the U.S. Debtors or by creditors of the U.S. Debtors (including the Committees, and any other Official Committees that may be appointed by the Office of the United States Trustee) for activities performed in the United States or in connection with the U.S. Cases (collectively, the "**U.S. Professionals**") shall be subject to the sole and exclusive jurisdiction of the U.S. Court.  Accordingly, the U.S. Professionals (a) shall be subject to the procedures and standards for retention and compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court.

**J.     Notice**

25.     Notice of any motion, application or other pleading or paper filed in one or both of the Restructuring Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means (including, where circumstances warrant, by courier, facsimile or other electronic forms of communication) to the following: (a) all creditors and other interested parties, including the Committees, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under subpart (a) of this sentence, counsel to the Debtors, the U.S. Trustee, the Monitor, the parties named in the Cross-Border Service List attached as Schedule "C" hereto, (the "**Cross-Border Service List**") and such other parties as may be designated by either of the Courts from time to time.  When any document is filed by either the U.S. Debtors or the Canadian Debtors in their

- 12 -

respective Cases that has any cross-border effect, the filing Debtors shall serve such documents promptly on counsel for the non-filing Debtors, the U.S. Trustee, the Monitor, and the parties named in the Cross-Border Service List. Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur. In addition to the foregoing, upon request, the Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of all or any orders, decisions, opinions or similar papers issued by the other Court in the Restructuring Proceedings.

26.     When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notice shall be provided in the manner and to the parties referred to in paragraph 25 above.

**K.     Recognition of Stays of Proceedings**

27.     The Canadian Court hereby recognizes the validity of the stay of proceedings and actions against the U.S. Debtors and their property under section 362 of the Bankruptcy Code (the "**U.S. Stay**"). In implementing the terms of this paragraph, the Canadian Court may consult with the U.S. Court regarding (a) the interpretation and application of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from the U.S. Stay and (b) the enforcement of the U.S. Stay in Canada.

28.     The U.S. Court hereby recognizes the validity of the stay of proceedings and actions against the Canadian Debtors and their property under the CCAA and the CCAA Order (the "**Canadian Stay**"). In implementing the terms of this paragraph, the U.S. Court may consult with the Canadian Court regarding (a) the interpretation and applicability of the

- 13 -

Canadian Stay and any orders of the Canadian Court modifying or granting relief from the Canadian Stay and (b) the enforcement of the Canadian Stay in the United States.

29.     Nothing contained herein shall affect or limit the Debtors' or other parties' rights to assert the applicability or non applicability of the U.S. Stay or the Canadian Stay to any particular proceeding, property, asset, activity or other matter, wherever pending or located.

30.     Nothing contained herein shall affect or limit the ability of either Court to direct that any stay of proceedings affecting the parties before it shall not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate.

## L.     **Effectiveness; Modification**

31.     This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

32.     This Protocol may not be supplemented, modified, terminated or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.  Notice of any legal proceedings to supplement, modify, terminate or replace this Protocol shall be given in accordance with paragraph 25 above.

## M.     **Procedure for Resolving Disputes Under the Protocol**

33.     Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to either the U.S. Court, the Canadian Court or both Courts upon notice in accordance with paragraph 25 above.  In rendering a determination in any such dispute,

- 14 -

the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either (i) render a binding decision after such consultation, (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to the other Court or (iii) seek a joint hearing of both Courts in accordance with paragraph 13 above. Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

34.    In implementing the terms of the Protocol, the U.S. Court and the Canadian Court may, in their sole discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

(a)    The U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

(b)    The Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

(c)    Copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 25 hereof; and

(d)    The Courts may jointly decide to invite the Debtors, the Committees, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

- 15 -

(e)    For clarity, the provisions of this paragraph 34 shall not be construed to restrict the ability of the U.S. Court and Canadian Court to confer as provided in paragraph 13 above whenever they deem it appropriate to do so.

## N.    **Preservation of Rights**

35.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall (i) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Committees, the Estate Representatives, the U.S. Trustee, the Monitor or any of the Debtors' creditors under applicable law, including the Bankruptcy Code and the CCAA and the Orders of the Courts or (ii) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

GOODMANS\\5355271.12

**Schedule A**

**(Guidelines)**

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001





The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario  M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency: Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001

COPYRIGHT © 2003

By

THE AMERICAN LAW INSTITUTE

All rights reserved
Printed in the United States of America

The *Guidelines Applicable to Court-to-Court Communi-
cations in Cross-Border Cases* were developed by The
American Law Institute during and as part of its
Transnational Insolvency Project and the use of the
*Guidelines* in cross-border cases is specifically permitted
and encouraged.

The text of the *Guidelines* is available in English and sever-
al other languages including Chinese, French, German,
Italian, Japanese, Korean, Portuguese, Russian, Swedish,
and Spanish on the website of the International Insolvency
Institute at http://www.iiiglobal.org/international/guide
lines.html.

The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

# Foreword by the Director of
# The American Law Institute

In May of 2000 The American Law Institute gave its final approval to the work of the ALI's Transnational Insolvency Project. This consisted of the four volumes eventually published, after a period of delay required by the need to take into account a newly enacted Mexican Bankruptcy Code, in 2003 under the title of *Transnational Insolvency: Cooperation Among the NAFTA Countries*. These volumes included both the first phase of the project, separate Statements of the bankruptcy laws of Canada, Mexico, and the United States, and the project's culminating phase, a volume comprising *Principles of Cooperation Among the NAFTA Countries*. All reflected the joint input of teams of Reporters and Advisers from each of the three NAFTA countries and a fully transnational perspective. Published by Juris Publishing, Inc., they can be ordered on the ALI website (www.ali.org).

A byproduct of our work on the Principles volume, these *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* appeared originally as Appendix B of that volume and were approved by the ALI in 2000 along with the rest of the volume. But the *Guidelines* have played a vital and influential role apart from the *Principles*, having been widely translated and distributed, cited and applied by courts, and independently approved by both the International Insolvency Institute and the Insolvency Institute of Canada. Although they were initially developed in the context of a project arrived at improving cooperation among bankruptcy courts within the NAFTA countries, their acceptance by the III, whose members include leaders

iii

of the insolvency bar from more than 40 countries, suggests a pertinence and applicability that extends far beyond the ambit of NAFTA. Indeed, there appears to be no reason to restrict the *Guidelines* to insolvency cases; they should prove useful whenever sensible and coherent standards for cooperation among courts involved in overlapping litigation are called for. See, e.g., American Law Institute, International Jurisdiction and Judgments Project § 12(e) (Tentative Draft No. 2, 2004).

The American Law Institute expresses its gratitude to the International Insolvency Institute for its continuing efforts to publicize the *Guidelines* and to make them more widely known to judges and lawyers around the world; to III Chair E. Bruce Leonard of Toronto, who as Canadian Co-Reporter for the Transnational Insolvency Project was the principal drafter of the Guidelines in English and has been primarily responsible for arranging and overseeing their translation into the various other languages in which they now appear; and to the translators themselves, whose work will make the *Guidelines* much more universally accessible. We hope that this greater availability, in these new English and bilingual editions, will help to foster better communication, and thus better understanding, among the diverse courts and legal systems throughout our increasingly globalized world.

LANCE LIEBMAN
*Director*
*The American Law Institute*

January 2004

iv

# Foreword by the Chair of the International Insolvency Institute

The International Insolvency Institute, a world-wide association of leading insolvency professionals, judges, academics, and regulators, is pleased to recommend the adoption and the application in cross-border and multinational cases of The American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases.* The *Guidelines* were reviewed and studied by a Committee of the III and were unanimously approved by its membership at the III's Annual General Meeting and Conference in New York in June 2001.

Since their approval by the III, the *Guidelines* have been applied in several cross-border cases with considerable success in achieving the coordination that is so necessary to preserve values for all of the creditors that are involved in international cases. The III recommends without qualification that insolvency professionals and judges adopt the *Guidelines* at the earliest possible stage of a cross-border case so that they will be in place whenever there is a need for the courts involved to communicate with each other, e.g., whenever the actions of one court could impact on issues that are before the other court.

Although the *Guidelines* were developed in an insolvency context, it has been noted by litigation professionals and judges that the *Guidelines* would be equally valuable and constructive in any international case where two or more courts are involved. In fact, in multijurisdictional litigation, the positive effect of the *Guidelines* would be even greater in cases where several courts are involved. It

v

is important to appreciate that the *Guidelines* require that all domestic practices and procedures be complied with and that the *Guidelines* do not alter or affect the substantive rights of the parties or give any advantage to any party over any other party.

The International Insolvency Institute expresses appreciation to its members who have arranged for the translation of the *Guidelines* into French, German, Italian, Korean, Japanese, Chinese, Portuguese, Russian, and Swedish and extends its appreciation to The American Law Institute for the translation into Spanish. The III also expresses its appreciation to The American Law Institute, the American College of Bankruptcy, and the Ontario Superior Court of Justice Commercial List Committee for their kind and generous financial support in enabling the publication and dissemination of the *Guidelines* in bilingual versions in major countries around the world.

Readers who become aware of cases in which the *Guidelines* have been applied are highly encouraged to provide the details of those cases to the III (fax: 416-360-8877; e-mail: *info@iiiglobal.org*) so that everyone can benefit from the experience and positive results that flow from the adoption and application of the *Guidelines*. The continuing progress of the *Guidelines* and the cases in which the *Guidelines* have been applied will be maintained on the III's website at *www.iiiglobal.org*.

The III and all of its members are very pleased to have been a part of the development and success of the *Guidelines* and commend The American Law Institute for its vision in developing the *Guidelines* and in supporting

vi

their worldwide circulation to insolvency professionals, judges, academics, and regulators. The use of the *Guidelines* in international cases will change international insolvencies and reorganizations for the better forever, and the insolvency community owes a considerable debt to The American Law Institute for the inspiration and vision that has made this possible.

> E. BRUCE LEONARD
> *Chairman*
> *The International Insolvency Institute*

Toronto, Ontario
March 2004

vii

## Judicial Preface

We believe that the advantages of co-operation and co-ordination between Courts is clearly advantageous to all of the stakeholders who are involved in insolvency and reorganization cases that extend beyond the boundaries of one country. The benefit of communications between Courts in international proceedings has been recognized by the United Nations through the *Model Law on Cross-Border Insolvency* developed by the United Nations Commission on International Trade Law and approved by the General Assembly of the United Nations in 1997. The advantages of communications have also been recognized in the European Union Regulation on Insolvency Proceedings which became effective for the Member States of the European Union in 2002.

The *Guidelines for Court-to-Court Communications in Cross-Border Cases* were developed in the American Law Institute's Transnational Insolvency Project involving the NAFTA countries of Mexico, the United States and Canada. The *Guidelines* have been approved by the membership of the ALI and by the International Insolvency Institute whose membership covers over 40 countries from around the world. We appreciate that every country is unique and distinctive and that every country has its own proud legal traditions and concepts. The *Guidelines* are not intended to alter or change the domestic rules or procedures that are applicable in any country and are not intended to affect or curtail the substantive rights of any party in proceedings before the Courts. The *Guidelines* are intended to encourage and facilitate co-operation in international cases while observing all applicable rules and procedures of the Courts that are respectively involved.

The *Guidelines* may be modified to meet either the procedural law of the jurisdiction in question or the particular circumstances in individual cases so as to achieve the greatest level of co-operation possible between the Courts in dealing with a multinational insolvency or liquidation. The *Guidelines,* however, are not restricted to insolvency cases and may be of assistance in dealing with non-insolvency cases that involve more than one country. Several of us have already used the *Guidelines* in cross-border cases and would encourage stakeholders and counsel in international cases to consider the advantages that could be achieved in their cases from the application and implementation of the *Guidelines*.

<table>
<tr><td>Mr. Justice David Baragwanath<br>High Court of New Zealand<br>Auckland, New Zealand</td><td>Chief Justice Donald I. Brenner<br>Supreme Court of British Columbia<br>Vancouver</td></tr>
<tr><td>Hon. Sidney B. Brooks<br>United States Bankruptcy Court<br>District of Colorado<br>Denver</td><td>Hon. Charles G. Case, II<br>United States Bankruptcy Court<br>District of Arizona<br>Phoenix</td></tr>
</table>

Mr. Justice Miodrag Dordević
Supreme Court of Slovenia
Ljubljana

Mr. Justice J.M. Farley
Ontario Superior Court of Justice
Toronto

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York (Ret'd)
Shearman & Sterling
New York

Hon. Allan L. Gropper
Southern District of New York
United States Bankruptcy Court
New York

Mr. Justice Paul R. Heath
High Court of New Zealand
Auckland, New Zealand

Hon. Hyungdu Kim
Supreme Court of Korea
Seoul

Chief Judge Burton R. Lifland
United States Bankruptcy Appellate
Panel for the Second Circuit
New York

Mr. Justice Gavin Lightman
Royal Courts of Justice
London

Hon. George Paine II
United States Bankruptcy Court
District of Tennessee
Nashville

Hon. Chiyong Rim
District Court
Western District of Seoul
Seoul, Korea

Mr. Justice Adolfo A.N. Rouillon
Court of Appeal
Rosario, Argentina

Hon. Shinjiro Takagi
Supreme Court of Japan (Ret'd)
Industrial Revitalization Corporation of Japan
Tokyo

Mr. Justice Wisit Wisitsora – At
Business Reorganization Office
Government of Thailand
Bangkok

Mr. Justice R.H. Zulman
Supreme Court of Appeal of South Africa
Parklands

# Guidelines
## Applicable to Court-to-Court Communications in Cross-Border Cases

### *Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

05-60200-cgm 22-11068-jlg Doc 4242-5 Doc 193-7 Filed 04/05/07 Filed 02/29/22 Entered 04/05/07 18:03:18 Entered 02/29/22 19:31:19 Exhibit C

Pg 34 of 45

rized Representative of the foreign Court on such terms as the Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

### Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a)  Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b)  Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers appropriate;

(c)  Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a)  Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)  The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c)  Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

05-60200-cgm 22-11068-jlg Doc 424 Doc 193-9 Filed 04/05/07 Filed 02/29/22 Entered 04/05/07 18:31:10 Entered 02/29/22 18:31:10 Exhibit C

Pg 37 of 45

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d) The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

7

(c)   Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)   Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)   Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

## Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

## Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

**Schedule B**

**(Memorandum of Understanding)**

## Memorandum of Understanding re: Proofs of Claim

The purpose of this memorandum is to facilitate the efficient and timely filing, treatment and resolution of intercompany claims in Canada and the United States according to the following parameters:

1. It shall be sufficient if any Proof of Claim is signed by an authorized representative of the creditor and unless expressly prohibited by the claims procedure (bar) order or applicable bankruptcy or insolvency provisions in either jurisdiction, fax copies or photocopies shall be accepted if timing issues prevent delivery of originals by the bar date, with originals to be filed as soon as reasonably possible thereafter.

2. Intercompany creditors may file one or more placeholder claims against one or more entities in the other jurisdiction and such claims shall be marked as a "Master Proof of Claim" and be accepted as having been filed as against all debtors in the other jurisdiction.

3. Pending the parties' good faith efforts to negotiate a protocol referenced in paragraph 5 below and the completion of the procedures outlined therein and the completion of the procedures referenced in paragraphs 4 and 5 below, no claim shall be rejected or objected to on the basis:

> A) that the claim ought to have been more appropriately asserted against another intercompany entity, and particulars may be provided subsequent to filing any claim as to which entity the claim properly lies against;

> B) that the creditor is unable to express an exact dollar amount of its claim whether or not it is contingent or unliquidated;

> C) that the amount claimed has been, on the books and records of either or both of the creditor or the debtor, mischaracterized or misclassified (including, for example related /non related party debt); or

> D) of a lack of particularity,

4. Intercompany creditors in both jurisdictions shall use best efforts to locate and file with their Proofs of Claim or thereafter further particulars and/or back up documentation to facilitate the fair and equitable evaluation of the claims.

5. Intercompany creditors shall continue their ongoing dialogue and cooperation in an effort to resolve discrepancies and issues relating to their claims, and following the claims bar date and the filing of claims, the intercompany creditors and their representatives shall meet in an effort to agree upon a protocol for the resolution/adjudication of all intercompany claims where possible.

6. The Monitor in the Canadian proceedings consents to this MOD.

**Schedule C**

**(Cross-Border Service List)**

*[intentionally blank]*

| No. 0501-17864 | A.D. 2005 |
|---|---|

### IN THE COURT OF QUEEN'S BENCH OF ALBERTA
### JUDICIAL DISTRICT OF CALGARY

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF CALPINE CANADA ENERGY LIMITED, CALPINE CANADA POWER LTD., CALPINE CANADA ENERGY FINANCE ULC, CALPINE ENERGY SERVICES CANADA LTD., CALPINE CANADA RESOURCES COMPANY, CALPINE CANADA POWER SERVICES LTD., CALPINE CANADA ENERGY FINANCE II ULC, CALPINE NATURAL GAS SERVICES LIMITED, AND 3094479 NOVA SCOTIA COMPANY**

Applicants



### ORDER

**GOODMANS LLP**
Barristers & Solicitors
Suite 2400
250 Yonge Street
Toronto, Canada M5B 2M6

Jay A. Carfagnini
Fred Myers
Joseph Pasquariello
Tel: 416-979-2211
Fax: 416-979-1234



**McCARTHY TÉTRAULT LLP**
3300 – 421 7 Ave. S.W.
Calgary, AB  T2P 4K9

Larry B. Robinson Q.C.
Sean F. Collins
Tel: 403-260-3500

CLERK OF THE COURT
APR - 5 2007
CALGARY, ALBERTA

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

In re:                                                  :   Chapter 11
                                                        :
CALPINE CORPORATION., *et al.*,                         :   Case No. 05-60200 (BRL)
                                                        :
                        Debtors.   :   (Jointly Administered)
                                                        :
---------------------------------------------------------------- x

## ORDER PURSUANT TO 11 U.S.C. § 105(a)
## APPROVING CROSS-BORDER COURT-TO-COURT PROTOCOL

Upon consideration of the motion (the "Motion"), dated April 5, 2007, of the Canadian

Debtors[1] for entry of an Order pursuant to section 105(a) of the United States Bankruptcy Code,

11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") approving that certain cross-border court-to-

court protocol attached hereto as Exhibit A (the "Court-to-Court Protocol"); and due notice of

the Motion having been provided; and it appearing that no other or further notice of the Motion

need be provided; and upon the record of a hearing held before this Court on April 12, 2007; and

it appearing that the relief sought is in the best interests of the U.S. Debtors and the Canadian

Debtors, their respective estates and creditors; and the Court-to-Court Protocol having been

approved by the Canadian Court; and after due deliberation and sufficient cause appearing

therefore, it is hereby

    ORDERED, that the Motion is granted; and it is further

    ORDERED, that the Court-to-Court Protocol is approved in all respects; and it is further

---

[1] All capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

ORDERED that the requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the Southern District of New York for the filing of a separate memorandum of law is hereby

waived.

    Dated:  New York, New York
            April ___, 2007

                                        _____
                                        Burton R. Lifland
                                        United States Bankruptcy Judge