**EXHIBIT 8**

**In re Mark Scott Constr., LLC, Case No. 03-36440 (HCD) (Bankr. N.D. Ind. Apr. 23, 2004)**

CASE NO. 03-36440 HCD
United States Bankruptcy Court, N.D. Indiana

# In re Mark Scott Construction, LLC (Bankr.N.D.Ind. 2004)

Decided Apr 23, 2004

CASE NO. 03-36440 HCD

April 23, 2004

Scott M. Keller, South Bend, Indiana, for debtor

J. Richard Ransel, Thorne Grodnik, LLP, Elkhart, Indiana, for debtor

Patricia E. Primmer, Oberfell Lorber, Suite, South Bend, Indiana, for creditors

R. Wyatt Mick, Jr., committee, Bingham Loughlin, P.C., Lincolnway East, Mishawaka, Indiana, for creditors

## MEMORANDUM OF DECISION

HARRY DEES, Bankruptcy Judge

Before the court is the Debtor's Motion to Alter or Amend Judgment Granting Motions for Relief from Stay, filed February 6, 2004, by the chapter 11 debtor Mark Scott Construction LLC. The debtor also requested an oral argument on his motion. On March 25, 2004, the court held a hearing on the debtor's motion. It then took the motion under advisement. For the reasons that follow, the court denies the debtor's motion.

## Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200.1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(G) over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil *2 Procedure 52, made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7052. Any conclusion of law more properly classified as a factual finding shall be deemed a fact, and any finding of fact more properly classified as a legal conclusion shall be deemed a conclusion of law.

2

## Background

A. *Procedural Background*

This proceeding involves three creditors — Doug and Donna Campbell ("the Campbells"), Donna Kash ("Ms. Kash"), and Keith Madden and Nancy Keller Madden ("the Maddens") — who entered into construction contracts with Mark Scott Construction LLC ("MSC"), an Indiana limited liability company, to build homes for them in Michigan and who were dissatisfied with the construction and increased costs. The Campbells were the first to act by filing a lawsuit in a Michigan court. They filed a complaint (on August 15, 2003) and an amended complaint (on September 8, 2003) against both the debtor MSC and the individual Mark Lee Scott, owner of MSC, in Berrien County Trial Court, Civil Division. They alleged that the construction of their home was improper, illegal, negligent, and/or incompetent. They also alleged breach of contract, violations of Michigan statutes governing residential construction, fraud and misrepresentation. The defendants filed an answer and counterclaim on October 16, 2003. The Campbells responded by filing a Motion for



3    Summary Disposition on October 30, 2003. The motion alleged that the defendants-counterplaintiffs had failed to demonstrate that the contracting entity, MSC, possessed a certificate of authority to conduct business in Michigan, as required under Act 299 of P.A. 1980, M.C.L. § 339.2412.[1] They claimed that MSC was an unlicensed contractor in Michigan and therefore was prohibited by the Michigan Limited Liability Company Act, M.C.L. § 450.5007, from maintaining an action against them.[2]

[1] Section 339.2412 of the Michigan Compiled Laws, which is a provision of the Residential Builders Article of the Occupational Code, states, in pertinent part:

> (1) A person or qualifying officer for a corporation or member of a residential builder or residential maintenance and alteration contractor shall not bring or maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article during the performance of the act or contract.

M.C.L. § 339.2412.

[2] Section 450.5007 of the Michigan Limited Liability Company Act mandates:

> A foreign limited liability company transacting business in this state without a certificate of authority shall not maintain an action, suit or proceeding in a court of this state until it has obtained a certificate of authority.

M.C.L. § 450.5007. The definition of a "foreign limited liability company" is "a limited liability company formed under laws other than the laws of this state." M.C.L. § 450.4102(i).

On November 10, 2003, MSC filed a voluntary chapter 11 bankruptcy petition in this court. Because the bankruptcy stayed the Campbells' state court action, the Michigan action was dismissed without prejudice on November 21, 2003.

On December 12, 2003, the Campbells filed a "Chapter 11 Motion for Relief from Stay" in this court. The motion stated that, although their state court complaint against the debtor had been dismissed, the creditors filed suit against the individual Mark Scott on December 2, 2003. They sought relief from the stay so that they might join their claims and sue Mark Scott in his individual and corporate capacity as MSC.

On December 30, 2003, Motions for Relief from Stay were filed by Ms. Kash and by the Maddens. Prior to filing those motions in the bankruptcy court, Ms. Kash had filed a complaint on December 22, 2003, against Mark Scott individually in the Cass County Circuit Court, and the Maddens had filed a complaint on December 12, 2003, against Mark Scott individually in the Berrien County Trial Court. In each of their bankruptcy court motions, the creditors sought relief from the automatic stay so that they could join their claims against the debtor MSC with the Michigan lawsuit against Mark Scott individually.

B. *Ruling on Motions for Relief From Stay*

4    On January 27, 2004, the court held an evidentiary hearing on the three motions seeking relief from the automatic stay. The court had before it the motions for relief from stay, MSC's objection to the motions, MSC's memorandum of law in support of its objection, and memoranda of law in support of the creditors' *4 motions for relief from stay. At the hearing, evidence and testimony were

presented by creditors Ian Douglas Campbell, Donna Turner Campbell, Donna Kash, and Nancy Keller Madden, and by Mark Lee Scott, owner of the debtor company MSC.

At the end of the proceedings, the undersigned bankruptcy judge set forth oral findings of fact and conclusions of law. For the benefit of the creditors and others in the courtroom, the judge pointed out that the applicable bankruptcy statute, 11 U.S.C. § 362(d), gave the bankruptcy court authority to lift the automatic stay for "cause," but it did not define "cause." The judge explained that, if the court determined that there was "cause" to grant the creditors' motions and to lift the automatic stay, the creditors' complaints against MSC could be taken back to the state courts in Michigan. If the court denied the motions, however, then the issues would remain in the bankruptcy court. The judge stated that the hearing was conducted not to determine the merits of the plaintiffs' claims against the debtor but rather to decide which court will make that determination.

The court found that the three parcels of real estate were in Michigan, that subcontractors' liens were filed in Michigan, that MSC's Michigan headquarters were in Macomb, Michigan, and that its present construction projects were in Michigan. It also found that any claims concerning incompetent construction, negligence, or breach of contract concerned the residential construction that took place in Michigan. The court stated that the three contracts were signed in Michigan. It concluded that the majority of the contacts surrounding the creditors' claims were in Michigan and that litigation based on Michigan law was pending in Michigan courts. It then determined, based on those significant contacts, that the proper venue for resolution of the disputes was in Michigan.

The court recognized that the construction contracts contained a choice of law provision stating that Indiana was the proper venue for deciding disputes. However, the court found that the uncontested evidence before the court was that MSC was not properly licensed in Michigan at the time it built the homes at issue. It agreed with the debtor that MSC's unlicensed status was a "technicality," but it was a required legal technicality in Michigan, and the bankruptcy court could not ignore the law. For that reason, the court pointed out, the *5 construction contracts arguably were void and, if so, the choice of law provision was not applicable. It further determined that Michigan was the better locale for all the parties. It noted that the Michigan state trial courts have more expertise concerning the interpretation of Michigan's residential building laws and regulations than the bankruptcy court does. The court took judicial notice that Cass County and Berrien County both adjoin St. Joseph County, Indiana, where this bankruptcy court sits. Therefore, the distance between the state courts and this one is not much, and the extra expense is de minimis. The court thus determined that it would be as convenient for the parties to litigate in Michigan as in South Bend, Indiana. It also found that allowing the state court litigation to continue in Michigan would not prejudice the bankruptcy estate. It noted that any judgment giving recovery to MSC would be an asset in the bankruptcy and that any recovery by the creditors would become claims against the debtor's bankruptcy estate. The impact of the state court litigation on the bankruptcy of MSC ultimately will be determined in the bankruptcy court, the judge stated. After considering those factors, the court found that there was cause to grant the creditors' motions for relief from stay.

On February 6, 2004, the Debtor's Motion to Alter or Amend Judgment Granting Motions For Relief from Stay was filed. It raised the following reasons for requesting that the court alter its judgment and deny the motions for relief: (1) The creditors, by failing to file supporting briefs with their motions for relief from stay, violated Local Bankruptcy Rule B-7007-1(a) and failed to meet their burden of presenting a prima facie case for

relief from stay. Furthermore, the court erred in allowing the creditors' late-filed legal briefs and in denying the debtor's request to file a post-hearing brief to address the legal arguments raised in the creditors' late-filed legal briefs. (2) The choice of law in the contracts signed by the creditors is Indiana; therefore, the court erred by relying on Michigan law. (3) The creditors failed to satisfy the factors required to prove that "cause" exists, and the court, by relying on the creditors' late-filed legal briefs, erred by not addressing those factors. (4) The court perhaps did not understand the harsh impact and manifest injustice of permitting the creditors to file litigation in Michigan. According to the debtor, MSC's "simple failure to change the name on the Michigan Builders License from `Mark Lee Scott' to `Mark Scott Construction, LLC'" precludes it from attempting to recover from *6 the creditors Campbell and Kash.[3] R. 74 at 3-4. The court's granting of the motions for relief from the stay will simply increase the liabilities of MSC's bankruptcy estate if the creditors' litigation in Michigan is successful, claimed the debtor. *See id.* at 4.

> [3] The court notes that Nancy Keller Madden, one of the creditors, testified that she paid the bills Mark Scott presented to her because he came to her place of work demanding that she pay him and, she testified, "he was very threatening." For that reason, the debtor has not claimed a debt owed to it by the Maddens.

## Discussion

A motion to alter or amend a court's determination, filed within ten days of entry of the court's judgment, is governed by Rule 59(e), made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 9023. *See* F.R.Bankr.P. 9023 (incorporating Fed.R.Civ.P. 59(e)); *see also Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n. 3 (7th Cir. 2001). "The purpose of such a motion is to bring the court's attention to newly discovered evidence or to a manifest error of law or fact." Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 368 (7th Cir. 2003). *see also Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). The movant bears the burden of demonstrating to the court the reasons for amending its judgment.

A. *Federal Rule of Bankruptcy Procedure 7007 and Local Rule B-7007-1(a) of the United States Bankruptcy Court for the Northern District of Indiana*

The debtor contended that the creditors failed to file timely briefs or supporting legal authorities with their Motions for Relief from Stay, as required by Local Bankruptcy Rule B-7007-1(a). Because the creditors violated the local rule, the debtor asserted, the court should have summarily denied the creditors' motions for relief from stay. The court also should have denied the creditors' legal briefs — filed belatedly and improperly after the debtor responded to the creditors' motions and just before the hearing, according to the debtor. In fact, the debtor claimed that it "did not know that the Homeowners would later file extensive legal briefs, and the *7 Debtor had no way of anticipating what legal authorities and arguments the Homeowners might assert just before the hearing."[4] R. 74 at 3.

> [4] The court finds this argument disingenuous. The Campbells' Memorandum of Law was filed on January 13, 2004, two weeks before the trial held January 27, 2004. Although the Maddens' Memorandum of Law was filed January 23, 2004, and the Kash Memorandum of Law was filed January 26, 2004, those memoranda differ from the Campbells' memorandum only in the factual statement of each party's circumstances on the first and second pages of the documents. In all other respects, they are identical. In addition, many of the points presented in those memoranda were made in the Brief in Support of Motion for Summary Disposition filed by the Campbells on October 29, 2003. Therefore, the debtor should have had no trouble anticipating the legal arguments of the creditors.

Local Rule 7007-1 of the United States Bankruptcy Court for the Northern District of Indiana is entitled "Motion Practice; Length and Form of Briefs." It states, in pertinent part:

> (a) Any motion filed within a contested matter or an adversary proceeding (e.g., motions filed pursuant to F.R.Bankr.P. 501 1(b), 7012, 7037, and 7056) shall be accompanied by a separate supporting brief.

N.D. Ind. L.B.R. B-7007-1(a). The local rule is derived from Federal Rule of Bankruptcy Procedure 7007, which states simply that "Rule 7 F.R.Civ.P. applies in adversary proceedings." Federal Rule of Civil Procedure 7, in turn, sets forth the pleadings required to initiate an adversary proceeding and general requirements concerning motions. It also forbids the use of demurrers, pleas and exceptions for insufficiency of a pleading.

A motion for relief from stay is a contested matter, not an adversary proceeding. *See* F.R.Bankr.P. 4001, 9014; *In re Northwest Aggregate Constr. Co., Inc.*, 72 B.R. 317, 318-19 (N.D. Ill. 1987). Because Bankruptcy Rule 7007 applies Rule 7 pleadings procedures to motions filed in adversary proceedings, it does not apply in this case. *See In re Castle*, 289 B.R. 882, 884 n. 1 (Bankr. E.D. Tenn. 2003) (finding that the debtor's reliance on its local 7007 rule was misplaced because the rule applies only to motions filed in adversary proceedings); *In re Farmers'Co-op of Arkansas and Oklahoma, Inc.*, 43 B.R. 619, 620 (Bankr. W.D. Ark. 1984) (finding that "the proceedings regarding contested matters are governed by Rule 9014 of the Bankruptcy Rules" and that "Rule 9014 does not make applicable Rule 7007 or Rule 7008 to contested matters; hence, the rules of pleadings generally applicable to adversary proceedings are absent here"). *8

This court's local rule B-7007-1 covers motions filed within either contested matters or adversary proceedings, such as motions for abstention, for judgment on the pleadings, for compelling discovery, and summary judgments. As the creditors noted, however, the rule applies only to motions filed <u>within</u> a contested matter or an adversary proceeding and does not apply to the contested matter itself. A motion for relief from the automatic stay initiates a contested matter. For that reason, Rule B-7007-1 is inapplicable.

The debtor's desire to file a brief in response to the creditors' memoranda of law was denied by this court, both because the debtor's Objection had covered some of the arguments and because stay litigation is intended to be an expedited determination to preserve the claims of creditors. The Seventh Circuit Court of Appeals has made clear that "[h]earings to determine whether the stay should be lifted are meant to be summary in character." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990); *see also In re McGaughey*, 24 F.3d 904, 906 (7th Cir. 1994). Post-hearing briefs in this case were completely unnecessary, and the court in its discretion denied them. The court has not found any reason to change its position upon reconsideration of the issue.

B. *Choice of Law*

The debtor asserted that the court further erred by choosing to follow the law of the state of Michigan when the contracts between the parties state that Indiana law is controlling. According to the debtor, the creditors "waived their right to rely on Michigan law when they executed contracts which specify that Indiana law applies." R. 74 at 6; *see also* R. 25 at 12-13.

The court finds that the construction contracts at issue contain a provision that Indiana law governs the contract:

> This agreement is being executed and delivered in the State of Indiana and shall be governed by and construed and enforced in accordance with the laws of the State of Indiana.

9  *9

R. 56, Ex. A, p. 10. Because the contracting parties chose the laws of Indiana to govern the contract, the court gives weight to that choice.[5] It is the beginning but not necessarily the end of the choice of law determination. The Supreme Court of Indiana has counseled that "[o]rdinarily a choice of law issue will be resolved only if it appears there is a difference in the laws of the potentially applicable jurisdictions." *Allen v. Great American Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) (resolving the choice of law issue even though there was an express provision in the contract). In this case, there are differences in the laws of Indiana and Michigan concerning the regulation of home builders. The court believes it therefore must balance the expectations of the contracting parties with a regard for the interests of Indiana and Michigan. *See Chrysler Corp. v. Skyline Industrial Servs., Inc.*, 528 N.W.2d 698, 704 (Mich. 1995).

10

> [5] The court notes, as well, that a federal bankruptcy court generally applies the choice of law rules of the state in which the court sits. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

The Restatement (Second) of Conflicts of Laws provides two exceptions to the general rule that the choice of law under the contract applies. Section 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice by the parties.

*10

1 Restatement Conflict of Laws, 2d, § 187(2)(b).[6] It is clear that both Indiana and Michigan have significant interests in the contractual conflicts between the parties.

> [6] Indiana and Michigan courts customarily have employed the Restatement (Second) of Conflict of Laws, including §§ 187 and 188, in analyses of breaches of contract. *See, e.g., Allen*, 766 N.E.2d at 1163; *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind.Ct.App. 1999); *Chrysler Corp.*, 528 N.W.2d at 704. In Indiana choice-of-law analysis for tort cases, however, the Supreme Court of Indiana recently has clarified that "Indiana is still primarily a *lex loci* state" and that it did not adopt the policy approach of the Restatement (Second) of Conflict of Laws but rather cited to it with examples of factors that courts might consider. *Simon v. United States*, 805 N.E.2d 798, 802 (Ind. 2004). This court recognizes the criticisms of the second Restatement, *see id.* at 804, but finds its application in this case insightful and helpful.

In contract actions in Indiana, the governing law is the "law of the forum with the most intimate contacts to the facts," as determined by a consideration of such factors as the place of contracting; the place of contract negotiation; the

place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties. *Bedle v. Kowars*, 796 N.E.2d 300, 302 (Ind.Ct.App. 2003); *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind.Ct.App. 1999); *cf. In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (commenting that Indiana's choice-of-law rule for breach of warranty or consumer fraud suits focuses on the injury where the consumer is located rather than where the seller maintains its headquarters). Michigan's choice-of-law position is similar; it no longer chooses the law of the place of contracting, but rather focuses on the law of the place most intimately concerned with the outcome of the litigation. *See Chrysler Corp.*, 528 N.W.2d at 703 (approving the approach of §§ 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states" because they "provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities"). The court therefore turns now, as it did at the hearing, to a consideration of which state has the most significant, relevant contacts and policies concerning these facts.

The court finds that, in this case, the plaintiffs live in Michigan and the debtor lists its place of business in Mishawaka, Indiana and in Macomb, Michigan. Two factors, the place of contracting and the place *11 of negotiation, are not determinative, in the view of the court. The witnesses at the hearing did not emphasize where the negotiations occurred, and the court finds it likely from the testimony that some negotiating occurred in both states. The contracts were signed in Michigan by one party and in Indiana by two parties.[7] However, the parties contracted for home construction to be done in Michigan, on property located in Michigan, and the breaches occurred on that property. Therefore, the court finds that greater weight must be given to the location of the subject matter of the contract and to the place of performance of the contract. This court, following the method of analysis used in *Employers Ins. of Wausau*, 716 N.E.2d at 1024-25, determined that the number and quality of contacts favor Michigan over Indiana. For that reason, the court concluded at the hearing that the substantive law of Michigan applies to the construction contracts at issue. *See also Briggs Elec. Contracting Servs., Inc. v. Elder-Beerman Stores Corp. (In re Elder-Beerman Stores Corp.)*, 221 B.R. 404, (Bankr. S.D. Ohio 1998) (applying Michigan law, finding that Michigan had the most significant contact under the construction contract, where work was being done on Michigan property); *Travelers Ins. Companies v. Rogers*, 579 N.E.2d 1328, 1330-31 (Ind.App. 1991) (concluding Michigan law was applicable). The debtor has not succeeded in its burden of demonstrating a manifest error of law or fact that would cause the court to amend its determination.

[7] The court's erroneous oral finding that all three parties signed their contracts in Michigan had little or no impact on the court's decision that the most significant contacts were in Michigan.

The court noted at the hearing that the undisputed facts in this case seem to demonstrate that the debtor MSC was not properly licensed as a residential builder under Michigan laws when it constructed the homes of the creditors. *See* M.C.L. § 339.601; *Annex Constr., Inc. v. Fenech*, 477 N.W.2d 103, 104 (Mich.Ct.App. 1991) (per curiam). The creditors pointed out that "contracts by a residential builder not duly licensed are not only voidable but void." *Bilt-More Homes, Inc. v. French*, 130 N.W.2d 907, 910 (Mich. 1964). The case law in Michigan strongly indicates that parties cannot be bound by the terms of a void contract. *See Offerdahl v. Silverstein*, 569 N.W.2d 834, 836 (Mich.App. 1997). The court is aware of the position of the Michigan Supreme Court that courts should not "create an equitable remedy for a hardship created by an unambiguous, *12 validly

enacted legislative decree." *Stokes v. Millen Roofing Co.*, 649 N.W.2d 371, 377 (Mich. 2002). The debtor seems to concede the validity of these arguments in this court, but it has the right to raise defenses and challenges to the Michigan laws. The only determination made in this court is that the final interpretation of the laws of Michigan must be made in Michigan's courts, not here.[8]

---

[8] Even if the court had followed Indiana law, the debtor might not have fared better, for the laws of each state regulate limited liability companies. Indiana's limited liability companies, like MSC, are required to follow strict regulations under the state's licensing authorities. For example, Indiana, like Michigan, requires that a "foreign limited liability company may not transact business in Indiana until it obtains a certificate of authority from the secretary of state." Ind. Code § 23-18-11-2. Moreover, a "foreign limited liability company transacting business in Indiana without a certificate of authority may not maintain a court proceeding in Indiana until it obtains a certificate of authority." Ind. Code § 23-18-11-3. Had the tables been turned, had MSC been licensed as an LLC in Michigan and had built homes in Indiana without obtaining a certificate of authority, it would have been subject to the same statutory restrictions that it finds imposed on it in Michigan. *Compare* M.C.L. § 450.5007 with Ind. Code § 23-18-11-3. The court finds that the pertinent limited liability company laws of these two states are not in conflict. However, Indiana does not have specific laws, similar to those in Michigan, regulating residential builders. The court will not allow MSC to contract around statutory requirements by claiming to be governed by the laws of Indiana in order to avoid the explicitly relevant and applicable laws of the state of Michigan, where MSC was conducting its residential building business as a foreign limited liability company.

## C. *"Cause" to Lift the Automatic Stay*

The debtor claimed that the court erred in failing to address the factors required for finding that "cause" exists for granting relief from the automatic stay. Following the factors set forth in *International Business Machines v. Fernstrom Storage Van Co. (In re Fernstrom Storage Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991), the debtor argued that the reasons for denying the creditors' motions for relief from the stay weigh in its favor: (1) great prejudice will result to MSC if the creditors are allowed to bring suit in Michigan; (2) MSC will suffer enormous hardship if the creditors are allowed to litigate in Michigan because Michigan law precludes MSC from recovering its claims against the creditors; and (3) MSC has a probability of prevailing on the merits if the claims are litigated in the bankruptcy court and MSC can focus on the amounts the creditors owe to the bankruptcy estate. *See* R. 75 at 7. *13

The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), halts or stays prepetition proceedings brought against the debtor such as the suit brought by the Campbells in Michigan. However, the stay may be terminated, modified, or conditioned "for cause," and that term, undefined in the Bankruptcy Code, "is determined on a case-by-case basis." *In re Fernstrom Storage*, 938 F.2d at 735. Whether cause exists to terminate the stay is a matter committed to the discretion of the bankruptcy court. *In re C S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir. 1995). In order to prevail, the parties requesting relief from the stay must make a prima facie case that cause exists to modify or terminate the stay. *See id.* The Seventh Circuit presented a three-prong test, asking whether:

> a) any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
>
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and

    c) the creditor has a probability of prevailing on the merits.

*In re Fernstrom Storage*, 938 F.2d at 735 (citing cases); *see also In re Petroleum Piping Contractors, Inc.*, 211 B.R. 290, 308 (Bankr. N.D. Ind. 1997) (reviewing the factors in *Fernstrom Storage* and in other cases). Courts have created other lists of factors that a bankruptcy court may consider in determining whether the stay should be modified or lifted. For example, the Fourth Circuit included these factors:

    (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary;

    (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and

    (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). More recently, the Second Circuit listed twelve factors to consider under § 362(d). *See Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002).

14  *14

In this case, the court made clear that the cause for lifting the automatic stay was that the construction contracts at the center of the debtor's dispute with the creditors arguably were void. The court determined that the stay should be lifted to permit the state court, with the expertise to decide such issues, to answer that question. The debtor may have defenses to the creditors' claims that the contracts are void, and the state court, rather than this court, is in the best position to judge the merits of those defenses. Once the state court decision is rendered, this federal bankruptcy court will accept it and apply it to the bankruptcy proceedings before it. *See In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (pointing out that a bankruptcy court's determination in narrow areas of state law in which it has no particular expertise "would not be a particularly efficient use of judicial resources").

The court finds that it properly found at the hearing that cause exists to lift the automatic stay in this case and, upon its reconsideration, it finds no reason to alter or to amend its judgment.

D. *Manifest Injustice*

The debtor was concerned that this court did not understand "the harsh impact" of permitting the creditors to file litigation against the debtor in Michigan. R. 74 at 2. The debtor asserted that the "simple failure to change the name on the Michigan Builders License . . . absolutely precludes the debtor from attempting to recover anything" from the creditors and thus jeopardizes its ability to fund a successful chapter 11 reorganization. *Id.* at 3-4. It asked this court to deny the creditors' motions for relief from the stay and to retain jurisdiction over the disputes "to ensure that the Debtor can actually litigate the merits of its collection claims and to prevent injustice to the bankruptcy estate" and its other creditors, such as the subcontractors and suppliers and others. *Id.* at 6; *see also* R.75 at 8-9. Relying on *In re Federal Press Co.*, 117 B.R. 942 (Bankr. N.D. Ind. 1990), and 11 U.S.C. § 105, the debtor asked the court, using its equitable authority, to reconsider the hardship MSC would suffer and to deny the motions for relief from stay so that MSC can continue its pending adversary proceeding collection actions against the creditors and can recover estate assets for the benefit of all creditors.

15  *See* R.75 at 9-11.  *15

The court assures the debtor that it understands the nature of its ruling concerning the creditors' motions to lift the automatic stay. It did not have before it the debtor's collection claims against

these same creditors, but it was cognizant that the claims each party has asserted against the other are based upon the contractual relationship between the creditors and MSC. The court has lifted the automatic stay so that Michigan courts may apply the laws of their state to determine whether those contracts with MSC, which appears to be an unlicensed residential builder, are void. That fundamental issue cannot be avoided. This court cannot consider which party will collect from the other until the germane question of the validity of the construction contracts is answered. As the Seventh Circuit made clear in *In re Williams*, a bankruptcy court does not abuse its discretion in modifying the automatic stay in cases where "all roads lead to state court":

> Had the bankruptcy court not modified the stay so that the [state court] case could go forward, likely it would then have to determine the merits to [the debtor's] right of possession [of the leased property]. With no particular expertise under this narrow area of state law, this would not be a particularly efficient use of judicial resources. Tenants might be encouraged to file a bankruptcy petition not only to forestall an eviction, but also to seek a more favorable forum for what might otherwise be a foregone conclusion.

*In re Williams*, 144 F.3d at 550 (stating that "[t]he sooner those issues are resolved, the sooner the parties can move on: either the landlord will be able to get its writ of possession and evict the tenant or the tenant can try to assume the now-valuable lease as part of her plan"). Moreover, the court is not persuaded to follow the well-reasoned decision *In re Federal Press Company*, 117B.R. 942(Bankr. N.D. Ind. 1990), because the facts of that case are so distinct from those herein. *Federal Press Company* involved a post-petition tort action against the debtor, one of 57 different tort claims already filed against the debtor, with more possible claims. It simply cannot be compared to the prepetition claims raised herein.

The court concludes that the debtor, by filing its motion to alter or amend judgment, actually took the opportunity to reargue the merits of its case. MSC has failed to present to the court any newly discovered evidence or a manifest error of law or fact that would justify an altering of the court's determination to lift the stay in this proceeding.

*16

## Conclusion

For the reasons that were presented above, the court denies the Debtor's Motion to Alter or Amend Judgment Granting Motions for Relief from Stay filed by the chapter 11 debtor Mark Scott Construction, LLC. The court finds that the debtor has failed in its burden of demonstrating to the court a clear error of law or fact that must be corrected or manifest injustice that must be prevented. Accordingly, the debtor's motion is denied.

SO ORDERED.

