# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket No. 1192 |

**DECLARATION OF PETER GREAVES IN SUPPORT OF THE MOTION OF THE JOINT PROVISIONAL LIQUIDATORS FOR A DETERMINATION THAT THE U.S. DEBTORS' AUTOMATIC STAY DOES NOT APPLY TO, OR IN THE ALTERNATIVE FOR RELIEF FROM STAY FOR FILING OF THE APPLICATION IN THE SUPREME COURT OF THE COMMONWEALTH OF THE BAHAMAS SEEKING RESOLUTION OF NON-U.S. LAW AND OTHER ISSUES**

I, Peter Greaves, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I am a partner in the Restructuring and Insolvency practice of PwC, based in Hong Kong. I am PwC's restructuring and insolvency leader for the Asia Pacific region. I have more than thirty years of corporate restructuring and insolvency experience across a range of industries and jurisdictions.

2.  Kevin G. Cambridge, Brian C. Simms KC, and I are the joint provisional liquidators (the "**JPLs**") of FTX Digital Markets Ltd. ("**FTX Digital**") duly appointed by the Supreme Court of The Bahamas (the "**Bahamas Court**"). FTX Digital, formed on July 22, 2021, is an International Business Company incorporated in the Commonwealth of The Bahamas and

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors (the "**U.S. Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the U.S. Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

RLF1 28794376v.1

operating as a digital assets business under the Digital Assets and Registered Exchanges Act of 2020 (the "**DARE Act**").

3. I submit this declaration (the "**Declaration**") in support of the *Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in The Supreme Court of The Commonwealth of The Bahamas Seeking Resolution of Non-U.S. Law and Other Issues* (the "**Motion**")[2].

4. The statements made in this Declaration are based on the knowledge I have obtained in the course of carrying out my duties as JPL and the work of professionals retained by the JPLs and working under my supervision.

5. I am over the age of 18 and authorized to submit this Declaration on behalf of the JPLs in the above-captioned Chapter 11 Cases. If called as a witness, I would testify truthfully to the matters stated in this Declaration.

**A.  Commencement of FTX Digital's Provisional Liquidation and Appointment of the JPLs**

6. On November 10, 2022, the Securities Commission of The Bahamas (the "**SCB**") suspended the registration of FTX Digital under section 19 of the DARE Act. On that date, the SCB petitioned the Bahamas Court for the winding up and provisional liquidation of FTX Digital, which was granted (the "**Provisional Liquidation**") and the Bahamas Court appointed Brian Simms KC as provisional liquidator. The next day, FTX Trading Ltd. ("**FTX Trading**"), along with the other U.S. Debtors, commenced these cases. On November 14, 2022, the Bahamas Court

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

also appointed Kevin G. Cambridge and myself as joint provisional liquidators. Pursuant to the Provisional Liquidation order, the JPLs displaced FTX Digital's officers and directors.

7. On November 15, 2022, soon after our appointment, the JPLs filed a petition on behalf of FTX Digital for recognition of a foreign proceeding under chapter 15 in the United States Bankruptcy Court for the Southern District of New York (the "**Chapter 15 Case**"). On November 28, 2022, this Court entered an agreed order to transfer venue of the Chapter 15 Case to this Court [Case No. 22-11217]. On February 15, 2023, this Court recognized FTX Digital's Provisional Liquidation as a foreign main proceeding and the JPLs as the foreign representatives of the FTX Digital estate in the U.S.

8. Immediately following our appointment, the JPLs began investigating all aspects of the relationship between FTX Digital and FTX Trading. Thus, the JPLs have needed to (i) identify which persons or entities were or are FTX Digital's accountholders, customers, and creditors, (ii) determine the legal relationship between FTX Digital and those who are identified as such, and (iii) recover assets for all FTX Digital's stakeholders, to be distributed in accordance with Bahamian law and procedure.

**B.    FTX Trading**

9. FTX Trading was incorporated on April 2, 2019, and is a company organized under the International Business Company Act, CAP. 222 of Antigua. Immediately following its formation, FTX Trading was headquartered, along with the rest of the FTX group of companies (the "**FTX Group**"), in the Hong Kong Special Administrative Region, People's Republic of China.

10. FTX Trading was originally responsible for running FTX's international digital asset exchange platform (the "**FTX International Platform**") — the platform through which the

3

FTX Group did business with somewhere between 2.5 million to upwards of 7.4 million customers, all located outside the United States ("**International Customers**"). Its business was to operate for non-U.S. customers and permitted these non-U.S. customers to engage in various digital asset trading and exchange activities where users could enter into both spot transactions of cryptocurrency assets and also to transact derivative products including "perpetual futures," "options," "move contracts," and "leveraged tokens." At the time of FTX Trading's incorporation, no jurisdiction had a sufficiently regulated exchange system for the institutional funds that the FTX Group's founders sought to attract.

11.     U.S. persons were <u>not</u> permitted to trade on the FTX International Platform (that is, the platform accessible at FTX.com). FTX Trading never carried on any business in the United States, and explicitly forbade U.S. persons from using the FTX International Platform, as it was not licensed to offer services to U.S. customers. Therefore, the JPLs believe that all of the customers affected by the directions application that the JPLs propose to file in The Bahamas (the "**Application**") are not U.S. citizens. A true and correct copy of the Application is attached hereto as <u>Exhibit A-1</u>. A true and correct copy of the Draft Affidavit of Brian C. Simms KC, which the JPLS propose to file in support of the Application (the "**Application Affidavit**") is attached hereto as <u>Exhibit A-2.</u>

C.     **FTX Digital and the Migration**

12.     On December 14, 2020, the Commonwealth of The Bahamas enacted a comprehensive licensing and regulatory regime for the digital asset industry pursuant to the DARE Act. As discussed below, the FTX Group decided to move its international exchange business, to the full extent possible under the DARE Act, from FTX Trading to FTX Digital, in order to legally operate out of The Bahamas and comply with Bahamian regulations and law. Thus, following the

enactment of the DARE Act, by July 22, 2021, FTX Digital was incorporated in The Bahamas. Although it appears that FTX Trading was operating out of The Bahamas at the time, based on our investigation FTX Trading never registered as a foreign company under Bahamian law and holds no DARE Act licenses.

13. In August 2021, FTX Digital prepared a document called "FTX Digital Markets Limited Customer Migration Plan" (the "**Migration Plan**") approved by then-CEO of FTX Digital, Ryan Salame. A true and correct copy of the Migration Plan is attached hereto as Exhibit B.

14. The FTX Group began to execute on that plan by, among other things, moving the FTX Group's management team to The Bahamas and establishing the headquarters of the FTX Group there. Starting in July 2021, at least 38 individuals, including, importantly, all three of the co-founders, senior management, and key employees began moving from Hong Kong to The Bahamas and transferred their employment from other FTX Group entities, to become employees of FTX Digital. Before the appointment of the JPLs, FTX Digital employed 83 individuals, most of whom resided in The Bahamas.

15. On September 10, 2021, FTX Digital was registered as a Digital Asset Business under the DARE Act, becoming the only FTX Group entity regulated to run the FTX International Platform for most of the products on the platform. Entities licensed under the DARE Act are publicly registered. The DARE Act proscribes the carrying on of a digital asset business in or from within The Bahamas unless registered under the DARE Act.

16. Before May 2022, International Customers entered into contracts with FTX Trading by accepting FTX Trading's terms of use ("**2019 Terms of Service**"). A true and correct copy of the 2019 Terms of Service is attached as Exhibit C. On May 13, 2022, new terms of

5

service ("**2022 Terms of Service**") were uploaded to the FTX.com site. A true and correct copy of the 2022 Terms of Service is attached hereto as Exhibit D. The 2022 Terms of Service explicitly specified that FTX Digital was the "Service Provider" for nearly all digital asset product lines offered on the FTX International Platform, and permitted FTX Trading to novate its position under the Terms of Service to another party, including FTX Digital. 2022 Terms of Service ¶ 37.2, Schedules 2-7. FTX Trading remained the service provider for the NFT Market (Schedule 11) and the NFT Portal (Schedule 12) (together, the "**Unregulated Services**") because the DARE Act did not permit the Unregulated Services to be migrated to FTX Digital. FTX Trading also remained the service provider for the leveraged tokens spot market (Schedule 8), the BVOL/iBVOL volatility market (Schedule 9) (the "**Other Services**," and together with the Unregulated Services, the "**Remaining FTX Trading Services**"). Based on the information available to the JPLs to date, the Remaining FTX Trading Services that stayed with FTX Trading represented no more than 10% of the business on the FTX International Platform.

17. Between November 2021 and June 2022, FTX Digital opened certain bank accounts in FTX Digital's name (the "**FTX Digital Accounts**") which were used to receive and send fiat currency from and to International Customers. Starting in January 2022, it was clear that International Customers were using the FTX Digital Accounts to on-ramp (deposit) and off-ramp (withdraw) fiat to and from their accounts on the International Platform. Based on our investigations to date, during the period January 20, 2022 through November 12, 2022, the FTX Digital Accounts maintained in FTX Digital's name had receipts of $13.4 billion and outflows of the same amount. From January 20, 2022 through October 31, 2022, the institutional International

Customer account in FTX Digital's name had receipts of $9.2 billion and withdrawals of $8.9 billion.

18.  Since the FTX Group conspicuously relocated its headquarters to The Bahamas in 2021, The Bahamas remained the nerve center of FTX's business operations.  It is understood that FTX Trading operated out of The Bahamas before portions of the International Customers were migrated to FTX Digital.

**D.  The JPLs' Bahamas Application seeking Leave to File the Motion**

19.  Until the Non-U.S Law Customer Issues set out in the Application are decided, we cannot progress FTX Digital's Provisional Liquidation.  If the stay does apply to the Application, maintaining it would effectively stop the Provisional Liquidation because it cannot progress until the JPLs ascertain the identity of their creditors or their estate's assets.

20.  The JPLs have sought for months to jointly tee up these issues with the U.S. Debtors.  Having had no engagement on the topic, counsel to the JPLs sent the U.S. Debtors' counsel a draft of the Application on March 9, 2023.  A true and correct copy of the JPLs' March 9 letter to the U.S. Debtors' counsel is attached hereto as Exhibit E.  The U.S. Debtors' counsel responded on March 11, 2023, that all of the matters in the Application must be handled in Delaware.  A true and correct copy of the U.S. Debtors' March 11 letter is attached hereto as Exhibit F.  On March 13, 2023, counsel to the JPLs wrote to the U.S. Debtors again, to address the U.S. Debtors' misunderstanding of the Application and proposed a date for a telephonic conference to further discuss these issues.  A true and correct copy of the JPLs' March 13 letter to the U.S. Debtors' Counsel is attached hereto as Exhibit G.  On March 15, 2023, the JPLs, their counsel,

counsel for the U.S. Debtors, and John Ray, held a telephonic conference regarding the Application and a proposed path for cooperation.

21. On March 15, 2023 the JPLs filed an application with the Bahamas Court seeking leave to file this Motion (the "**Bahamas Lift Stay Application**"). A hearing on the Bahamas Lift Stay Application was scheduled and held on March 20, 2023. Counsel for the U.S. Debtors were provided notice of the Bahamas Lift Stay Application and appeared at the hearing. They did not have any objections to entry of an order granting the Bahamas Lift Stay Application (the "**Bahamas Lift Stay Order**") and therefore the Bahamas Court entered the Bahamas Lift Stay Order on March 21, 2023. A true and correct copy of the Bahamas Lift Stay Order is attached hereto as Exhibit H.

22. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 29, 2023

>*/s/ Peter Greaves*
>Peter Greaves
>Joint Provisional Liquidator of FTX Digital Markets
>Ltd. (acting as agent without personal liability)