**EXHIBIT E**

**Joint Provisional Liquidators' March 9th Letter to the U.S. Debtors' Counsel**

**WHITE & CASE**

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

March 9, 2023

VIA E-MAIL

Sullivan & Cromwell LLP
James Bromley
Andrew Deitderich
Brian Gluckstein

125 Broad Street
New York, NY 10004

**Re: Joint Provisional Liquidators (the "JPLs") of FTX Digital Markets, Ltd. ("FTX Digital") Draft Application**

Counsel:

We write to inform you that the JPLs of FTX Digital intend to file an application for directions (the "**Application**") in the Supreme Court of The Bahamas in connection with the provisional liquidation of the FTX Digital estate. The Application addresses several legal issues that are essential to identifying the creditors, assets and beneficiaries of FTX Digital. These are exactly the types of matters that the JPLs and the Chapter 11 Debtors agreed could be litigated in The Bahamas. The Cooperation Agreement expressly states that it does not "address or compromise any rights or obligations of any Party arising out of or related to the user agreements or other arrangements relating to the International Platform". Cooperation Agreement ¶ 10.

Enclosed with this letter is a draft of the Application that the JPLs intend to issue in the Supreme Court. The requirement for the JPLs to seek directions in the Application has become urgent. Until the JPLs have some certainty as to who their customers are, the governing law of various agreements and the effect of such agreements, its provisional liquidation cannot progress. This is crucially important because there are various parties who withdrew sums from FTX Digital in the days immediately before the commencement of the provisional liquidation. The JPLs need confirmation that FTX Digital has standing to claw back those payments and needs to take action quickly. Moreover, a determination of the aggregate amount and nature of creditor claims that may be properly asserted against FTX Digital is critical to the progression of the liquidation process in The Bahamas, and to the JPLs' ability to make reasoned and well-informed business decisions related thereto.

**WHITE & CASE**

Sullivan & Cromwell
March 9, 2023

The JPLs are eager to get these issues resolved as soon as possible and therefore intend to file the Application by March 14, 2023.

Sincerely,

*[signature]*

**Brian Pfeiffer**

**E** bpfeiffer@whitecase.com

**COMMONWEALTH OF THE BAHAMAS**                                                                2022

**IN THE SUPREME COURT**                                                                       COM/com/

**COMMERCIAL DIVISION**

**IN THE MATTER OF the Digital Assets and Registered Exchanges Act, 2020 (as amended)**

**AND IN THE MATTER OF the Companies (Winding Up Amendment) Act, 2011**

**AND IN THE MATTER OF FTX DIGITAL MARKETS LTD.**
(A Registered Digital Asset Business)

---

**Draft/ SUMMONS**

---

**LET ALL PARTIES** concerned attend before _____ a Judge of the Supreme Court of the Commonwealth of The Bahamas, in Chambers at the Supreme Court of The Bahamas, Annex 1, Nassau, The Bahamas on _____ the _____ day of _____ A.D., **2023** at _____ o'clock in the _____-noon or as soon thereafter as Counsel can be heard on an application on behalf of the Joint Provisional Liquidators (the "**JPLs**") of FTX Digital Markets Ltd ("**FTX DM**") pursuant to *the Companies (Winding Up Amendment) Act 2011, section 199(4)* and *the Companies Liquidation Rules 2012, O.4, r.5(2), and Supreme Court Act, section 15* and/or under the inherent jurisdiction of the Court for binding directions and declarations as to the following matters:

1. How the amendment of the applicable FTX Terms of Service (the "**ToS**") dated 28 February 2022 (the "**Feb ToS**") was effected (if it was) into the form of the ToS dated 13 May 2022 (the "**May ToS**"), and if so from what date did such amendment take effect?

2. What is the applicable governing law by which the questions set out at paragraph 1 fall to be determined?

3. Whether, in the events that have happened, on a proper construction of the applicable FTX ToS, and applying the applicable governing law:
    a. Users of the FTX International Platform were migrated to FTX DM as from the effective date of the May ToS for each such User (or any other date, and if so which);
    b. those Services listed in Schedules 2, 3, 4, 5 6 and 7 to the May ToS (the "**Schedules**") were from that effective date (or any other date, and if so which) provided by FTX DM under the May ToS;
    c. the rights and/or obligations in respect of the Account(s) for each User (each as defined in the relevant ToS) were from that effective date (or any other date, and if so which) rights and/or obligations of FTX DM under the May ToS (in whole or in part, and if in part, in what part);
    d. digital assets and/or fiat transferred by Users to the FTX International Platform were from that effective date (or any other date, and if so which) assets and/or fiat of FTX DM in law (whether transferred before or after that date); and
    e. digital assets and/or fiat presently held, or as may be held in the future, in the name of FTX DM are assets and/or fiat of FTX DM in law?

4. In what capacity does FTX DM hold any digital assets and/or fiat ("asset"). In particular:
    a. what is applicable governing law ;
    b. does FTX DM hold such assets for its own account or on trust;
    c. if FTX DM holds any such assets on trust:
        i. what assets are subject to the trust;
        ii. how much flexibility does FTX DM as trustee have, for example:
            1. is there a requirement to segregate that asset;
            2. is there a right to use that asset for any purpose;
        iii. is the trust over a fluctuating pool of assets for the benefit of all Users of FTX DM as co-owners as well as FTX DM itself to the extent that any of its assets are within such pool;
        iv. does each User have the right to trace their property into specific assets held on trust; and

        v. what rights do Users have against FTX DM in respect of shortfalls in the assets held on trust; and

    d. can cryptocurrency and/or fiat be held by FTX DM as bailee?

5. Whether the counterparty in respect of perpetual future contracts who transacted on the FTX International Platform on or after 13 May 2022 was FTX DM, a User or someone else (and if so who)?

6. For the purposes of determining the questions set out at paragraphs 1 to 5, a direction pursuant to **CPR Part 21.4**, that one or more persons who have an interest in the determination of the questions in this Summons be appointed for the purposes of making representations to the Court.

7. An order that the costs of and occasioned by this Summons be provided for.

**DATED** this **[X]** day of **March** A.D., **2023**

**REGISTRAR**

*This Summons was taken out by Lennox Paton, Chambers, 3 Bayside Executive Park, West Bay Street and Blake Road, Nassau, The Bahamas, Attorneys for the Petitioner*

**COMMONWEALTH OF THE BAHAMAS**

**IN THE SUPREME COURT**

**Commercial Division**

**IN THE MATTER OF the Digital Assets and Registered Exchanges Act, 2020 (as amended)**

**AND IN THE MATTER OF FTX DIGITAL MARKETS LTD.**
(A Registered Digital Asset Business)

**AND IN THE MATTER OF the Companies (Winding Up Amendment) Act, 2011**

**EX-PARTE SUMMONS**

2022
COM/com

**LENNOX PATON**
Chambers
No. 3 Bayside Executive Park
Blake Road and West Bay Street
Nassau, New Providence

The Bahamas
*Attorneys for the Petitioner*