**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **RE:  D.I. 964, 1183, 1184, 1188** |

**REPLY IN SUPPORT OF MOTION OF SAMUEL BANKMAN-FRIED**
**FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT**
**APPLICABLE, TO PERMIT INSURERS TO ADVANCE**
**AND/OR REIMBURSE DEFENSE COSTS AND FEES**
**UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES**

Samuel Bankman-Fried, by and through his undersigned counsel, hereby files this reply

in further support of his *Motion of Samuel Bankman-Fried for Relief from the Automatic Stay, to*

*the Extent Applicable, to Permit Insurers to Advance and/or Reimburse Defense Costs and Fees*

*under Directors and Officers Insurance Policies* [D.I. 964] (the "Motion")[2] and in response to:

- the *Objection of the Official Committee of Unsecured Creditors to Motion of
Samuel Bankman-Fried for Relief from the Automatic Stay, to the Extent
Applicable, to Permit Insurers to Advance and/or Reimburse Defense Costs and
Fees under Directors and Officers Insurance Policies* [D.I. 1183] (the
"Committee Objection");

- the *Debtors' Response to Samuel Bankman-Fried's Motion for Relief from
Automatic Stay* [D.I. 1184] (the "Debtors' Objection"); and

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are
3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases (the "Debtors"), a
complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.
A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms used, but not otherwise defined in this Reply, shall have the meanings ascribed to such
terms in the Motion.

- the *Joinder of Customer Adversary Proceeding Plaintiffs in Opposition to Motion of Samuel Bankman-Fried for Relief from the Automatic Stay for Insurers to Pay Defense Costs* [D.I. 1188] (the "Onusz Objection" and, together with the Committee Objection and the Onusz Objection, the "Objections").

The Objections should be overruled and the Motion should be granted. In further support of the Motion, Mr. Bankman-Fried respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Mr. Bankman-Fried has been named as a defendant in multiple civil, criminal, and administrative matters. Mr. Bankman-Fried is covered by insurance designed to allow him to seek insurance coverage to defend himself in precisely this circumstance. Among other things, the D&O Policies:

- contractually mandate reimbursement by the Debtors of expenses incurred by an individual Insured (T&C § XII);

- require the Insurers to advance defense costs if the Debtors refuses so the Insured can mount a defense (D&O Liability Part § I.A at 1, III.Q at 5, T&C §II.D at 1);

- prioritize payment to the individual Insured, not the Debtors if "the Loss due and owing by the Insurer under a Liability Coverage Part exceeds the then-remaining Limit of Liability applicable to such Loss" and is non-indemnifiable because of a Company bankruptcy and (T&C §§ II.F, O, X at 1, 2, 3, XIX at 11-12);

- provide that a bankruptcy of the Company "shall not relieve the insurer of its…obligations…under this Policy" (T&C §XXII at 12 (emphasis added)); and

- require the Company to "waive and release [the] automatic stay" with respect to "the Policy or its proceeds" and "agree not to oppose or object to any efforts by any …Insured to obtain relief" from the stay (T&C §§ II.F at 1, XXII, at 12).

2.    Mr. Bankman-Fried is faced with defending against myriad accusations and allegations.  He requested indemnification and advancement from the Debtors, but the Debtors refused.  The Debtors are in bankruptcy and the claims against the D&O Policies are substantial and likely to exhaust their respective limits, triggering priority in favor of the individual Insureds.[3]  This is where D&O insurance comes into play and is needed the most.  *See, e.g., In re Downey Fin. Corp*, 428 B.R. 595, 610 (Bankr. D. Del. 2010) ("[The directors and officers] are in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense….") (citation omitted).  The Policies are structured to provide coverage for Defense Costs in these circumstances so individual Insureds like Mr. Bankman-Fried can mount an effective defense.

3.    The Motion before the Court is simple and straightforward.  Samuel Bankman-Fried respectfully requests the entry of an order finding that the automatic stay does not apply to the D&O Policies, or, to the extent that it does apply, granting relief from the automatic stay to permit the carriers to analyze coverage and advance and/or reimburse any covered Defense

---

[3]    *See* Debtors' Objection, ¶ 5 (conceding that individual Insureds have priority "once the total loss for which coverage is sought exceeds the amount of insurance available under the policy"); *see also, e.g.*, Committee Objection, ¶¶ 1 (arguing that the Motion seeks Court approval to "allow the exhaustion" of the Policies); 11 (payments will "exhaust the remaining coverage"); 21 (relief will "potentially exhaust coverage under the Policies in full"); *see also id.* ¶ 16, p. 9 n.5 ("certain Debtors have already been sued, the Debtors' directors and officers are responding to numerous government investigations, and myriad other claims are certain to be asserted as the cases progress"); Debtors' Objection, ¶ 4 (noting significant Debtor claims against the Policies); *compare Pasquanelli*, 463 B.R. 468, 472-73 (Bankr. N.D. Ill. 2012) (cited in Committee Opposition, ¶ 18) (recognizing that priority-of-payments provision would "give[] such priority treatment to Coverage A insureds when there is not enough money to pay all claims" but that the insureds did not argue that was the case).

Costs.

4.      What is Mr. Bankman-Fried **_not_** seeking?  An order determining coverage.  He is simply seeking an order permitting "Relm and Beazley to **evaluate coverage** and to make payments under and in accordance with the terms of the D&O Policies to or for the benefit of Mr. Bankman-Fried ….."  Motion, Ex. A - Proposed Order, ¶2 (emphasis added).  What is **_not_** before the Court?  A motion from any other party seeking access to the proceeds of the D&O Policies.   Based on what is actually being sought by the Motion, the request is not controversial, granting the relief requested is straightforward, and similar requests are routinely granted in bankruptcy courts across the country.

5.      The objectors want this Court to believe that Mr. Bankman-Fried is asking for an award of $10 million.  As set forth clearly in the Motion, Mr. Bankman-Fried is only seeking an order "lifting and modifying the automatic stay to permit payments and/or advancements of funds by Relm and Beazley that are, or will become, owing to Mr. Bankman-Fried in accordance with the terms of the D&O Policies for the reimbursement and payment of his Defense Costs in connection with the Pending Claims."  Motion, ¶24.  Nowhere does Mr. Bankman-Fried seek *all* the funds available under the D&O Policies, nor does he seek an order from this Court requiring the insurers to pay any of his claims.  While the Debtors concede that they are "contractually bound not to oppose efforts to seek relief from the automatic stay" (Debtors' Objection, ¶ 1), the other objectors ignore the structure and purpose of the D&O Policies, pre-judge coverage determinations that have not been made, and seek to prevent the Insurers from even *analyzing* coverage, let alone paying any Defense Costs to which Mr. Bankman-Fried is entitled.  Mr. Bankman-Fried seeks no more than a determination by the Insurers as to what Defense Costs are covered—and payment of Defense Costs only if an as appropriate under the Policies—so that he

can defend himself.

6.      The objectors' papers suggest that Mr. Bankman-Fried has already been convicted of a crime or found civilly liable.  He has not.  The objectors falsely imply that an indictment is synonymous with a conviction.  As this Court is aware, an indictment is not a conviction.  An indictment is an accusation, no different than a complaint.  As the filing of a complaint does not mean the plaintiff has prevailed and the defendant has lost, the same is true for an indictment.

7.      Setting aside all of the objectors' bluster, the simple fact is that Mr. Bankman-Fried is, and must be, presumed innocent unless and until found guilty of any criminal wrong.  Mr. Bankman-Fried is like any other former director or officer of a company who seeks access to a D&O insurance policy to pay for legal fees.  Coverage under the D&O Policies for those legal fees does not change simply because the Debtors, the Committee, and some class action plaintiffs believe or hope that Mr. Bankman-Fried is guilty.

**<u>REPLY</u>**

## I.      <u>The Committee Objection</u>

8.      In the first instance, Mr. Bankman-Fried submits that the Committee Objection should be rejected as it was filed in violation of the D&O Policies.   In particular, the D&O Policies explicitly prohibit the Debtors from opposing any motion for stay relief.  *See* Motion, ¶15.  While the Debtors chose to label their pleading as a "response," rather than an "opposition" or "objection," in light of that policy prohibition, the Committee has chosen to take up the Debtors' cause and make that claim on behalf of the Debtors.[4]   Mr. Bankman-Fried submits that this Court should not permit the Committee to make an end-run around the clear mandate of that

---

[4]      For instance, the Committee claims that "[t]he balance of the equities clearly favors **the Debtors here**, weighing against any finding that cause exists to lift the automatic stay."  Committee Objection, ¶3.

provision by filing an objection to the Motion on the Debtors' behalf.  Even if this Court were to

consider the Committee Objection, this Court should overrule the Committee Objection.

> **A.**     ***Mr. Bankman-Fried Is Entitled to Seek Coverage under the D&O Policies
> Regardless of the Accusations against Him.***

9.     It is undisputed that Mr. Bankman-Fried has not been found liable for any of the

allegations set forth in paragraph 12 of the Committee Objection, nor has he been proven guilty

of any of the government's allegations set forth in paragraph 13 of the Committee Objection.

While other former officers of the Debtors have admitted certain wrongdoing, Mr. Bankman-

Fried maintains his innocence, and he is presumed innocent.  Nevertheless, in the Committee

Objection, the Committee inserts  an eye-grabbing "Background" section heading that reads:

"Mr. Bankman-Fried's Massive and Calculated Fraud" (Committee Objection, Background, §

C), failing to include the word "alleged" in this bold-type heading as they qualify correctly in

paragraphs 12 and 13 of the Committee Objection that follow such heading.[5]

10.     In so doing, however, the Committee implies that, because Mr. Bankman-Fried

was indicted, he must be guilty.  Surely, the Committee understands that an indictment is not a

conviction.  In fact, an indictment means very little and judges regularly instruct jurors that an

indictment is not evidence of anything.  *See, e.g., United States v. Thung Van Huynh*, Criminal

No. 4-CR-14-275, 15-16 (M.D. Pa. Dec. 22, 2016) ("the court will utilize the model federal jury

instruction as follows: An indictment is just the formal way of specifying the exact crime the

defendant is accused of committing. An indictment is simply a description of the charge against a

defendant. It is an accusation only. An indictment is not evidence of anything, and you should

---

[5]     The Committee also fails to note that the D&O Policies' exclusion of coverage for conduct based or arising
out of fraud only applies if such fraudulent conduct is "evidenced by a final, non-appealable adjudication adverse to
such Insured" (IV.C), something that is clearly not present here.  Motion, Ex. B, D&O Liability Part, § IV.C at 7.

not give any weight to the fact that the defendant has been indicted in making your decision in this case."); *see also, e.g., Model Criminal Jury Table of Contents and Instructions for the United States Court of Appeals for the Third Circuit.*[6]

**B.**    ***Potential Availability of Coverage to Other Current or Former Directors and Officers Does Not Affect the Relief Sought in the Motion.***

11.    Both the Debtors and the Committee have decided to use this Motion and their Objections as an opportunity to inform the Court, and the public at large, that the Debtors (presumably with the blessing of the Committee) have determined to provide counsel to certain preferred directors and officers in connection with certain government investigations. *See* Committee Objection, ¶ 16 ("the WRS Debtors have retained counsel to represent certain of their directors and officers in certain government investigations"); Debtor Objection, ¶ 4 ("Covington & Burling LLP is retained as an ordinary course professional of the Debtors to represent certain current or former employees of the Debtors in connection with ongoing investigations by the U.S. government, as well as related inquiries from counsel for the Debtors and other third-parties."). Not only are the Debtors providing legal counsel to these select current or former directors and officers, but they are doing so on the backs of the estates' creditors. Specifically, these current or former directors and officers (whose names have been withheld) will not be paying for this representation, as such representation will be paid by the Debtors' estates. The unequal treatment offered by the Debtors (and the Committee) to directors and officers is obvious. With respect to the favored directors and officers, the Debtors have hired counsel for

---

[6]    https://www.ca3.uscourts.gov/sites/ca3/files/2021%20Chapter%203%20for%20posting%20final.pdf ("3.07 Nature of the Indictment. As you know, the defendant *(name)* is charged in the indictment with violating federal law, specifically *(state the offense(s) charged)*. As I explained at the beginning of trial, an indictment is just the formal way of specifying the exact crime*(s)* the defendant is accused of committing. An indictment is simply a description of the charge*(s)* against a defendant. It is an accusation only. An indictment is not evidence of anything, and you should not give any weight to the fact that *(name)* has been indicted in making your decision in this case.").

which the Debtors' estates will pay.  In stark contrast, the Debtors have not only refused to comply with their indemnification obligations to Mr. Bankman-Fried, but the Debtors and the Committee are now seeking to prevent Mr. Bankman-Fried from obtaining any coverage under the D&O policies.  This Court should not approve of this unequal and unfair treatment.  *See In re Beach First Nat. Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) ("[officers] cannot now be prevented from using the Policy for its intended purpose [the protection of individual directors and officers] simply because Debtor wishes to save the policy limit for any potential claims of its own" ).

### C.   *Ample Cause Exists to Modify the Stay.*

12.   The Committee's arguments against granting stay relief are misplaced.  First, the Committee claims that "the Debtors will suffer prejudice if the stay is lifted."  Committee Objection, ¶21.  Besides such assertion arguably violating section XXII of the Relm D&O Policy (Debtors' agreement not to oppose efforts to obtain stay relief), this assertion is belied by the priority of payment provision and ample case law, including the Committee's own cases.  In its objection, the Committee places great weight on *In re Pasquinelli Homebuilding, LLC,* 463 B.R. 468 (Bankr. N.D. Ill. 2012), yet fails to note that the Illinois Bankruptcy Court granted the motion for stay relief.  In doing so, the Bankruptcy Court overruled an objection very similar to the objection asserted by the Committee here.  The Court found no merit in the objection that "payment of the Pasquinelli Insureds' attorneys' fees would deplete the Estate's property by diminishing the limits of the policy proceeds."[7]  The Committee did not cite to a single case

---

[7]      The Bankruptcy Court described the objection as follows: "The Trustee counters that payment of the Pasquinelli Insureds' attorneys' fees would deplete the Estate's property by diminishing the limits of the policy proceeds. The Trustee notes that the Policy's Limit of Liability is $10 million in the aggregate for all claims made under it.  Clause 8 of the Policy obligates the Insurer to defend Claims until the Limits of Liability have been exhausted or an insured rejects a settlement.  Once that amount has been exhausted, the insurer has no further obligation to the Insureds.  The Trustee is concerned that the payment of the Pasquinelli Insureds' attorneys' fees could deplete the Estate's property by diminishing the limits of the policy proceeds that might otherwise have been

where a stay relief motion filed by a director or officer was denied.

13.     Second, the Committee callously suggests "Mr. Bankman-Fried will suffer no real hardship if the stay is not lifted."  Committee Objection, ¶22.  Besides being untrue, such a statement ignores Mr. Bankman-Fried's legal situation, which includes being a defendant in multiple lawsuits and proceedings.  Motion, ¶16 (listing criminal proceedings, federal and state regulatory proceedings, insolvency-related proceedings and other civil actions).  Contrary to the Committee's assertion, depriving Mr. Bankman-Fried of his right to access to the D&O Policies, which, in turn, would affect his ability to retain and pay counsel to adequately mount a legal defense, poses a real and identifiable hardship.  *See In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010) ("By contrast, the Insureds would suffer a very real—and easily identifiable—hardship if the stay is not lifted.  Specifically, the Insureds would have to pay the $880,000 in defense costs, as well as any defense costs incurred subsequent to the filing of this motion, out of their own pockets.").

14.     The Committee also misconstrues the relief sought by Mr. Bankman-Fried in the Motion.  As noted above, Mr. Bankman-Fried is not seeking an order from this Court requiring the Insurer to reimburse his Defense Costs or a finding that his Defense Costs are definitively covered and reimbursable under the D&O Policies.  All he is seeking is an order from the Court granting relief from the stay:

> to **permit** and authorize Relm and Beazley to **evaluate** coverage and to make payments under and in accordance with the terms of the D&O Policies to or for the benefit of Mr. Bankman-Fried for the reimbursement and payment of any **covered** Defense Costs incurred in connection with the Pending Claims.

---

available to the Estate to satisfy settlements or judgments that are rendered against it or are obtained against the Pasquinelli Insureds for which it is responsible."  *Pasquinelli Homebuilding,* 463 B.R. at 474.

Motion, Ex. A - Proposed Order, ¶2 (emphasis added).  Thus, if the Committee is correct, and the "the D&O Policies specifically exclude coverage for the types of activities that Mr. Bankman-Fried is accused of," Committee Objection, ¶22, then the Committee should have no concern as the proposed order does not require coverage for such costs.

15.     The Committee also claims that, "given the prepetition activities of Mr. Bankman-Fried, the Court should apply little, if any, weight, to the hardship imposed on him by the imposition of the automatic stay." Committee Objection, ¶22.  Once again, the Committee confuses allegations with actual proof.  Indeed, there are allegations of bad acts against Mr. Bankman-Fried.  However, no liability has been established nor any guilt proven for these alleged bad acts.  The Committee makes this same legally-flawed argument when it claims in conclusory fashion that Mr. Bankman-Fried will not prevail because "three of his [alleged] co-conspirators have already pleaded guilty to numerous crimes …."   Committee Objection, ¶23. While the Committee is free to form whatever view of Mr. Bankman-Fried it would like to form, this Court must make determinations based on actual evidence, not bald allegations.

16.     The Committee's beliefs are also immaterial because Mr. Bankman-Fried's entitlement to access the proceeds of the D&O Policies to pay his Defense Costs is not contingent on the merits of the assorted claims against him, but instead is set forth and grounded in the contractual terms and conditions of the D&O Policies.  *See* Motion, ¶31 n.6.  Moreover, even if the merits of the underlying claims against Mr. Bankman-Fried are relevant to this Motion (even though decisions on the merits of many of such claims may take years), the Committee objection should still be denied and the Motion granted.  In support of its position, the Committee relies on Judge Sontchi's decision in the *Downey Financial* case.  See Committee Objection, ¶23.  What the Committee fails to note, however, is that Judge Sontchi, quoting Judge

Gross from *In re SCO Group, Inc.*, 395 B.R. 852, 859 (Bankr. D. Del. 2007), stated:

> Even a slight probability of success on the merits may be sufficient
> to support lifting an automatic stay in an appropriate case.

*Downey Financial*, 428 B.R. at 610.  Here, Mr. Bankman-Fried has more than a slight

probability of success on the merits and thus stay relief is appropriate.

17.     Finally, the Committee's opposition to Mr. Bankman-Fried's request for stay

relief contradicts its own characterization of the D&O Policies in the Committee Objection: "The

D&O Policies at issue are "wasting" policies, and the WRS Debtors and Mr. Bankman-Fried

**share entitlement** to the $10 million in available coverage."  Committee Objection, ¶3

(emphasis added).  If only the Debtors are able to access the policies, and Mr. Bankman-Fried is

denied stay relief to do so, there is no "share[d] entitlement to the $10 million in available

coverage."

## II.     The Onusz Objection

18.     The Onusz Objection should be overruled because the objecting adversary

plaintiffs (a) have no standing to seek funds under the D&O Policies, (b) wrongly place their

interests in potential recoveries in their adversary proceeding above the legitimate rights of Mr.

Bankman-Fried under the D&O policies, and (c) falsely imply that Mr. Bankman-Fried has been

found liable for "both civil and criminal unlawful conduct."

19.     First, the Onusz Objection should be rejected because the objecting adversary

plaintiffs have no standing to seek proceeds under the D&O Policies.  They have made no claim

to the proceeds, have not sought stay relief to seek such proceeds, and do not qualify under the

D&O Policies to receive such proceeds.  To the extent they believe they will sometime in the

future prevail on some claim or judgment against a party that does have coverage under the D&O

Policies, and that such covered party will not have sufficient funds to satisfy that claim or

judgment, such a belief is far too tenuous to justify denying Mr. Bankman-Fried, an actual

Insured Person currently incurring Defense Costs, from having access to funds under the D&O

Policies.

20.      Second, the objecting adversary plaintiffs' request to put Mr. Bankman-Fried's

stay relief request on hold until their adversary proceeding is fully litigated is prejudicial to Mr.

Bankman-Fried.  *See* Onusz Objection, ¶¶3, 7.  With this request, they seek to deprive Mr.

Bankman-Fried of the means to defend himself against the claims in that adversary proceeding,

as well as other ongoing proceedings.  *See In re MF Global Holdings Ltd.*, 469 B.R. 177, (Bankr

S.D.N.Y. 2012) (class action plaintiffs cannot prosecute case against individual insureds and then

"seek to use the protections of the Bankruptcy Code to enjoy the Individual Insureds … from

seeking coverage from valid, applicable insurance policies");  *In re Allied Digital Technologies,*

*Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004) (granting stay relief to permit access to

insurance proceeds as otherwise the individual defendants "will be prevented from conducting a

meaningful defense").  Their attempt in this regard is consistent with their belief, noted below,

that Mr. Bankman-Fried's response to the adversary complaint is irrelevant as they have already

determined that he is guilty.  *See* Onusz Objection, ¶3.

21.      Lastly, the objecting adversary plaintiffs have apparently decided that trials and

the rule of law are unimportant. "Regardless of the contents of any response, however, there is

little doubt that Mr. Bankman-Fried engaged in both civil and criminal unlawful conduct …. ."

Onusz Objection, ¶3.[8]  Again, Mr. Bankman-Fried has not been found civilly liable, or guilty of

any criminal conduct.  The objecting adversary plaintiffs can make allegations, but they are just

---

[8]      Notably, the objecting adversary plaintiffs contradict themselves when acknowledging that estate property
"**may** be missing … ."*Id*.  "May be missing" is a far cry from "there is little doubt … ."

that – allegations.  And allegations are not sufficient to deprive Mr. Bankman-Fried of the right to seek coverage under the D&O Policies.

## III.    The Debtor Objection

22.    Although captioned as a "response" in an attempt to skirt their contractual obligations under the D&O Policies, as noted above, it is readily apparent that the Debtors have lodged a thinly-veiled opposition to Mr. Bankman-Fried's efforts to obtain relief from the stay. That much is clear from the very first paragraph to the last.  Accordingly, and in the first instance, the Debtors' Objection should be stricken and not considered as it is filed in violation of their contractual obligations under the D&O Policies.

### A.    *Preferential and Unequal Treatment of Certain Current or Former Officers and Directors.*

23.    As explained above, the Debtors mention for the first time in the recently-filed Debtor's Objection that they intend to compensate Covington & Burling, an ordinary course professional retained as "pool counsel," to represent some, but not all, officers and directors in connection with certain government and other investigations.  Despite ample opportunity, the Debtors have failed to mention this arrangement in any previous filings related to Covington & Burling.[9]  Instead, the Debtors now make a blanket claim that they "have retained pool counsel to represent certain current or former employees of the Debtors, whose fees are an insurable expense."  Debtors' Objection, ¶6.  With respect to the latter part of that statement, the Debtors provide no explanation as to why such fees are an "insurable expense" or whether any claims for

---

[9]    On February 8, 2023, the Debtors filed a declaration in support of Covington's retention as an OCP [D.I. 675].  On March 10, 2023, the Debtors filed a motion to seal a supplemental declaration relating to Covington's retention, along with a sealed version of the declaration and a redacted version [D.I. 848, 849, and 850].  On March 27, 2023, the Debtors filed a certification of counsel seeking entry of the order approving their motion to seal [D.I. 1168].

such fees have been made under the D&O Policy.[10]

**B.    *Inappropriate Gamesmanship.***

24.    As set forth in the Motion, Mr. Bankman-Fried asked the Debtors to honor their obligation to indemnify him, but the Debtors refused to abide by their indemnification obligations and refused to even provide him with any corporate governance or other indemnification-related materials pertaining to the Debtors to Mr. Bankman-Fried. *See* Ex. B, General Terms and Conditions ("T&C"), § XII at 10 ("The Named Insured and any other Company agree to indemnify the Insured Persons, including the advancement of Claim Expenses incurred by the Insured Persons to the fullest extent permitted by law or the functional or foreign equivalent."). In light of the Debtors' preferential treatment of certain current or former employees by retaining pool counsel for them to be paid for by the estate, not those employees, while at the same time refusing to abide by their indemnification obligations towards Mr. Bankman-Fried, refusing to stipulate to stay relief, and even opposing his motion seeking stay relief, the Debtors cannot credibly assert that the relief sought in the motion is "unfair, inequitable, and contrary to the interests of justice" (Debtors' Opposition, ¶7). What is unfair and inequitable is the Debtors' refusal to abide by their indemnification obligations, their refusal to stipulate to the stay relief requested, and their refusal to honor their obligation to not object or oppose the stay relief.

25.    On February 22nd, Mr. Bankman-Fried asked the Debtors to consent to stay relief. The Debtors refused. At no time during those communications did the Debtors suggest that they

---

[10]    Additionally notable is the Debtors' claim that they are "entitled to seek coverage under the D&O Policies" to defend the Onusz adversary proceeding (Debtors' Opposition, ¶4), one of the same claims for which Mr. Bankman-Fried seeks coverage. If the Debtors are entitled to coverage to defend such claims, surely Mr. Bankman-Fried is entitled to the same coverage.

would stipulate to stay relief "to allow the insurers to pay any or all Insureds, pursuant to the terms and conditions of the Policies" as they now suggest (Debtors' Opposition, ¶7).  Instead, the Debtors simply refused the request and forced Mr. Bankman-Fried to prepare and file this Motion.

26.     Despite that, the Debtors surprisingly claim that the relief sought in the motion is "inappropriate[]" because Mr. Bankman-Fried only sought relief for himself, and not for certain unknown and unnamed preferred current or former employees that the Debtors may be indemnifying and which the Debtors only mentioned recently in the Debtor Objection, filed on March 29, 2023.  It is unclear from that characterization whether the Debtors actually expected Mr. Bankman-Fried to file a motion on behalf of unknown others besides himself, without their permission and without consent from their counsel.  Simply put, such an attack demonstrates the gamesmanship being undertaken by the Debtors and why their objection should be overruled.

## <u>CONCLUSION</u>

WHEREFORE, Mr. Bankman-Fried respectfully requests that this Court overrule the

Objections and grant the relief requested in the Motion.

Dated: April 7, 2023
      Wilmington, Delaware

Respectfully submitted,

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**

*/s/ Gregory T. Donilon*
Gregory T. Donilon (No. 4244)
1105 North Market Street, 15th Floor
Wilmington, Delaware  19801
Telephone: (302) 504-7800
gdonilon@mmwr.com

-and-

Edward L. Schnitzer, Esq. (admitted *pro hac vice*)
David M. Banker (admitted *pro hac vice*)
437 Madison Avenue, 24th Floor
New York, New York  10022
Telephone: (212) 867-9500
eschnitzer@mmwr.com
dbanker@mmwr.com

*Attorneys for Samuel Bankman-Fried*