# **Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. ___** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN MYSTEN LABS, INC. AND SUI TOKEN WARRANTS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF THE SUI TOKEN WARRANTS AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"), pursuant to sections 105(a), 363, 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006. 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1 among other things, (a) authorizing and approving the sale (the "Sale Transaction") of (i) the Preferred Stock in Mysten Labs, Inc., a Delaware corporation ("Purchaser-Subject Company") and (ii) the SUI Token Warrants held by the Debtors free and clear of all liens, claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement; (b) authorizing and approving the Debtors' entry into, and performance under, the Purchase and Sale Agreement, dated as of March 22, 2023, a copy of which is attached as Exhibit B to the Motion (the "Agreement"), between Debtors Cottonwood Grove Limited, a company incorporated under the

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

laws of Hong Kong; FTX Trading Ltd., a company established under the laws of Antigua and

Barbuda and FTX Ventures Ltd., a BVI Business Company (each a "Seller" and together

"Sellers"), on the one hand, and Purchaser-Subject Company, on the other hand;

(c) authorizing and approving the assumption and assignment of the SUI Token Warrants; and

(d) granting related relief; the Court having held a hearing to approve the Sale Transaction

pursuant to the terms of the Agreement (the "Sale Hearing") to review and consider (i) the

Motion with respect to the Sale Transaction and all relief related thereto, (ii) the Agreement, (iii)

Declaration of Bruce Mendelsohn in Support of the Sale Transaction, and (iv) any objections

thereto that were not resolved prior to the start of the Sale Hearing; and upon the record of the

Sale Hearing and all of the proceedings had before this Court; and objections (if any) to the

Motion, with respect to the sale of the Interests, having been withdrawn or overruled on the

merits; and after due deliberation and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    Jurisdiction and Venue.  This Court has jurisdiction over this matter and

over the property of the Debtors' estates, including the Interests to be sold, transferred or

conveyed pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended

Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012.  This Court may issue a final order on the Motion consistent with

Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and

1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    Statutory and Rule Predicates.  The statutory and other legal predicates for

the relief requested in the Motion and for the approvals and authorization herein are sections

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
      fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.

        C.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

        D.    <u>Sale Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Sale Hearing, (a) the Debtors have provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient opportunity to object to, the Motion with respect to the Sale Transaction and the relief requested therein (including the Debtors' requested findings with respect to successor liability), the Sale Transaction, assumption and assignment of the SUI Token Warrants and the Cure Costs, if any, and the proposed entry of this Sale Order in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, (b) such notice was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (c) no other or further notice is necessary or shall be required.

        E.    <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Sale Order, including, but not limited to, the assumption and assignment of the SUI Token Warrants and the Cure Costs (as defined in the Agreement), has been afforded to all interested parties.

F.       No Collusion.  Purchaser-Subject Company is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Agreement and the Sale Transaction were negotiated, proposed and entered into by Sellers and Purchaser-Subject Company without collusion or fraud, in good faith and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.  Neither the Debtors nor Purchaser-Subject Company has engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor Purchaser-Subject Company has violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, Purchaser-Subject Company has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.  The Sale Transaction may not be avoided, and no damages may be assessed against Purchaser-Subject Company or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

G.       Good Faith of Purchaser-Subject Company.  Purchaser-Subject Company is purchasing the Interests in good faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  Purchaser-Subject Company is therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser-Subject Company recognized that the Debtors were free to deal with any other party interested in acquiring the Interests; (b) Purchaser-Subject Company in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (c) all payments to be made, and all other material agreements or

arrangements entered into or to be entered into, by Purchaser-Subject Company in connection with the Sale Transaction have been disclosed; (d) Purchaser-Subject Company has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) ~~no common identity of officers, directors or controlling stockholders exists between Purchaser-Subject Company and Debtors; (f)~~ the negotiation and execution of the Agreement were at arm's length and in good faith, and at all times each of the Purchaser-Subject Company and Sellers were represented by competent counsel of their choosing; and (~~e~~f) the Purchaser-Subject Company has not acted in a collusive manner with any person.  Purchaser-Subject Company will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Agreement.

       H.    <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Interests, and a reasonable opportunity has been given to any interested party to make a higher or better offer for the Interests.  No other person or entity or group of entities has offered to purchase the Interests for higher or otherwise better value to the Debtors' estates than Purchaser-Subject Company.  The offer to purchase the Interests made by Purchaser-Subject Company, under the terms and conditions set forth in the Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for the Interests and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Interests being conveyed to Purchaser-Subject Company; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by Purchaser-Subject Company absent the protections afforded to Purchaser-Subject Company by this Sale Order.

I.     The Debtors' determination that the Sale Transaction, pursuant to the Agreement, provides the highest or otherwise best offer for the Interests, and their related decision to sell the Interests, constitute a reasonable exercise of the Debtors' business judgment. The facts and circumstances described in the Motion and the evidence adduced in connection with the Sale Hearing demonstrate the Debtors' business judgment to sell the Interests to Purchaser-Subject Company at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Interests outside of a chapter 11 plan. Moreover, the sale of the Interests outside of a chapter 11 plan pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan. It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

J.     <u>Fair Consideration</u>. The consideration provided by Purchaser-Subject Company pursuant to the Agreement constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

K.     <u>No Successor or Other Derivative Liability</u>. As a result of any action taken in connection with the Sale Transaction, the Agreement, or this Sale Order: (a) Purchaser-Subject Company is not a successor to or mere continuation of or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between Purchaser-Subject Company and the Debtors; and (b) Purchaser-Subject Company shall not be deemed to be holding itself out to the public as a continuation of the Debtors based on the Sale

Transaction. Purchaser-Subject Company is not, and shall not be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of Purchaser-Subject Company and the Debtors and/or the Debtors' estates. Purchaser-Subject Company would not have entered into the Agreement if the sale of the Interests were not made free and clear of any successor liability of Purchaser-Subject Company.

L. <u>Corporate Power and Authority</u>. As set forth in section 2.1(a) of the Agreement, Sellers (a) have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) have all corporate authority necessary to consummate the Sale Transaction, and (c) have taken all corporate action and formalities necessary to authorize and approve the Agreement and the consummation of the Sale Transaction. Sellers' sale of the Interests has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for Sellers to consummate the Sale Transaction.

M. The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor Purchaser-Subject Company are entering into the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

N. <u>Title to Assets</u>. The transfer of the Debtors' rights, titles and interests to the Interests to Purchaser-Subject Company will be, as of the Closing Date (as defined in the Agreement), a legal, valid and effective transfer of such rights, titles and interests in the Interests a, which transfer vests or will vest Purchaser-Subject Company with all rights, titles and interests

of the Debtors to the Interests free and clear of all Liens (as defined below and in the

Agreement), other than Permitted Encumbrances (as defined in the Agreement).  The Agreement

is a valid and binding contract between Sellers and Purchaser-Subject Company and shall be

enforceable according to its terms.

O.    <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f)

of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the Debtors

are authorized to transfer all of their rights, titles and interests in and to the Interests free and

clear of any interest in the property, other than Permitted Encumbrances.  The Debtors may sell

the Interests free and clear of all liens (statutory or otherwise), charges, pledges, mortgages,

leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of

use, first offer or first refusal, servitudes, restrictive covenants or conditions, encroachments,

claims, interests, restrictions, or any other encumbrances of any kind (collectively, "<u>Liens</u>")

against the Debtors, their estates or the Interests because, in each case, one or more of the

standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each

holder with a Lien on the Interests to be transferred pursuant to the Agreement:  (a) has, subject

to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to

have consented; (b) could be compelled in a legal or equitable proceeding to accept money

satisfaction of such Lien; or (c) otherwise falls within one or more of the other subsections of

section 363(f) of the Bankruptcy Code.  Holders of Liens against the Debtors, their estates or the

Interests who did not object, or who withdrew their objections, to the Sale Transaction or the

Motion, with respect to the sale of the Interests (except with respect to Permitted Encumbrances),

are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other

holders of Liens are adequately protected by having their Liens, if any, in each instance against

the Debtors, their estates or the Interests, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Interests in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

P.      Purchaser-Subject Company would not have entered into the Agreement and would not consummate the Sale Transaction if the sale of the Interests to Purchaser-Subject Company were not free and clear of all Liens (other than Permitted Encumbrances), or if Purchaser-Subject Company or any of the Purchaser Parties (as defined in the Agreement) would, or in the future could, be liable for any such Lien.  The total consideration to be provided under the Agreement reflects Purchaser-Subject Company's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Interests free and clear of all Liens (other than Permitted Encumbrances).  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts maximize the value of the estates, and the transfer of the Interests other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

Q.      <u>Mutual Release</u>.  The mutual release of any and all claims, causes of actions (including all avoidance actions), Liens, rights and remedies in respect of the acquisition and ownership of the Interests, is a necessary and integral part of the Agreement, and the scope of the mutual release is appropriately tailored under the facts and circumstances.  The mutual release is: (a) in exchange for the good and valuable consideration provided by Sellers and Purchaser; (b) a good faith settlement and compromise of the claims, causes of action, Liens, rights and remedies released by such releases; (c) in the best interests of the Debtors and all

holders of claims and interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or their estates asserting any claim or cause of action (including all avoidance actions) released pursuant to such release.

   R. <u>Assumption and Assignment of the SUI Token Warrants</u>.  The Debtors and Purchaser-Subject Company have satisfied, to the extent necessary, the requirements of section 365 of the Bankruptcy Code, including subsections 365(b)(1)(A), 365(b)(1)(B) and 365(f), in connection with the assumption and assignment of the SUI Token Warrants. Purchaser-Subject Company has demonstrated adequate assurance of future performance with respect to the SUI Token Warrants pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The assumption and assignment of the SUI Token Warrants pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtors and their estates, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors or Purchaser-Subject Company, as applicable, shall, to the extent necessary, provide compensation or adequate assurance of compensation, which amount will be paid to non-Debtor counterparties to the SUI Token Warrants for any actual pecuniary loss to any such party resulting from a default prior to the date of assumption and assignment with respect to the SUI Token Warrants, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  Except where an applicable SUI Token Warrant is subject to an unresolved objection to the assumption and assignment of such SUI Token Warrant, payment of the Cure Costs, if any, as set forth herein and Purchaser-Subject Company's promise to perform the obligations under the SUI Token Warrants after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code.    The Debtors do not need to make a determination on, and reserve all rights

with respect to, whether provisions in the SUI Token Warrants that prohibit or restrict assignment of the SUI Token Warrants are enforceable or prohibited pursuant to section 365(f) of the Bankruptcy Code.

   S. To the extent applicable law excuses the non-debtor counterparty from accepting performance to an entity other than the debtor under Section 365(f) of the Bankruptcy Code, then the Debtors have received applicable consent to such assignment under section 365(ef)(2). To the extent applicable, any objections to the Cure Costs are resolved as set forth herein.  To the extent that any counterparty failed to timely object to its applicable Cure Cost or adequate assurance of future performance, such counterparty is deemed to have consented to such Cure Cost and the assignment of its respective SUI Token Warrants to Purchaser-Subject Company.

   T. <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>.  Good and sufficient reasons for approval of the Agreement and the Sale Transaction have been articulated.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates. Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with respect to the Sale Transaction.  To maximize the value of the Interests, it is essential that the Sale Transaction occur within the time constraints set forth in the Agreement. Time is of the essence in consummating the Sale Transaction and the Debtors and Purchaser-Subject Company intend to close the Sale Transaction as soon as practicable.  Given

all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the

Aggregate Purchase Price under the Agreement, the proposed Sale Transaction should be

approved.

U.    The consummation of the Sale Transaction and the assumption and

assignment of the SUI Token Warrants is legal, valid and properly authorized under all

applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a),

363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been

complied with in respect of the transaction.

V.    Personally Identifiable Information.  The Sale Transaction does not

involve the sale of any personally identifiable information.  Thus, the appointment of a consumer

privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not

required with respect to the Sale Transaction.

W.    Legal and Factual Bases.  The legal and factual bases set forth in the

Motion and the evidence adduced in connection with the Sale Hearing establish just cause for the

relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their

estates.

IT IS HEREBY ORDERED THAT:

A.    **General Provisions**

1.    The sale of the Interests and the other relief requested in the Motion is

granted as set forth herein, and the Agreement and the provisions thereof and the Sale

Transaction are approved in their entirety as set forth herein.

2.    All objections, responses, reservations of rights and requests for any

continuances concerning the Motion are resolved in accordance with the terms of this Sale Order

as set forth in the record of the Sale Hearing.  To the extent any such objections, responses,

reservations of rights or requests for any continuances were not otherwise withdrawn, waived, settled, or resolved, such are hereby overruled and denied on the merits. All interested parties that failed to timely object to the Motion, with respect to the Sale Transaction, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      Notice of the Motion, the Agreement, the sale of the Interests free and clear of all Liens, except Permitted Encumbrances, the Sale Transaction, the assumption and assignment of the SUI Token Warrants and the Cure Costs was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014, and the Local Rules 2002-1, 6004-1 and 9006-1.

**B.      Approval of the Agreement**

4.      The Agreement and all of the terms and conditions thereof, including the mutual release, are hereby authorized and approved in all respects. The failure to specifically include or make reference to any particular provision of the Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Sale Transaction are authorized and approved in their entirety.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Purchaser-Subject Company in accordance with the terms and conditions of the Agreement, (b) close the Sale Transaction as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate and implement the Agreement, including the assumption and assignment to Purchaser-Subject Company of the SUI Token Warrants, together with all additional instruments and documents

that may be reasonably necessary or desirable to implement the Agreement and the Sale

Transaction.  Purchaser-Subject Company shall not be required to seek or obtain relief from the

automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the

Agreement or any other sale-related document.  The automatic stay imposed by section 362 of

the Bankruptcy Code is modified solely to the extent necessary to implement the preceding

sentence and the other provisions of this Sale Order; provided, however, that this Court shall

retain exclusive jurisdiction over any and all disputes with respect thereto.

6.     This Sale Order shall be binding in all respects upon the Debtors, their

estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in,

against or on all or any portion of the Interests (whether known or unknown), Purchaser-Subject

Company and all successors and assigns of Purchaser-Subject Company, the Interests and any

trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to

Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the

Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchaser-Subject

Company and the respective successors and assigns of each of the foregoing.

**C.     Consummation of the Sale Transaction**

7.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the

Debtors are authorized to transfer all of their rights, titles and interests to the Interests to

Purchaser-Subject Company on the Closing Date and such transfer shall constitute a legal, valid,

binding and effective transfer of such rights, titles and interests in the Interests and shall vest

Purchaser-Subject Company with all of the Debtors' rights, titles and interests in the Interests

and, upon the Debtors' receipt of the Aggregate Purchase Price, shall be free and clear of all

Liens, claims, interests and encumbrances, including but not limited to, successor or

successor-in-interest liability or, any tax liens or mechanic's liens asserted against the Interests,

except Permitted Encumbrances, with all Liens to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens now have against the Interests, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  The provisions of this Sale Order authorizing and approving the transfer of the Interests free and clear of all Liens (other than Permitted Encumbrances) shall be self-executing, and neither the Debtors nor the Purchaser-Subject Company shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

8.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except Permitted Encumbrances.

9.      If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Interests shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Interests, the Debtors, Purchaser-Subject Company and each of their respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Interests.

10.     This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens existing as to the Interests prior to the Closing Date, except Permitted Encumbrances, shall have been unconditionally released, discharged and terminated from the Interests, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**D.     <u>Assumption and Assignment of Contracts</u>**

11.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, and payment of all Cure Costs, if any, Seller's assumption and assignment to Purchaser-Subject Company of the SUI Token Warrants is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

12.     Sellers are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser-Subject Company, effective upon the Closing of the Sale Transaction, the SUI Token Warrants free and clear of all Liens of any kind or nature whatsoever, except Permitted Encumbrances, and (b) execute and deliver to Purchaser-Subject Company such documents or other instruments as

Purchaser-Subject Company deems may be necessary to assign and transfer the SUI Token Warrants to Purchaser-Subject Company.

13.    With respect to the SUI Token Warrants: (a) where a SUI Token Warrant is an executory contract or unexpired lease of nonresidential real property under section 365 of the Bankruptcy Code, Sellers may assume each applicable SUI Token Warrant in accordance with section 365 of the Bankruptcy Code; (b) to the extent applicable law excuses the non-debtor counterparty from accepting performance to an entity other than the debtor under Section 365(f) of the Bankruptcy Code, then the Debtors have received applicable consent to such assignment under section 365(ef)(2); (c) Sellers may assign each applicable SUI Token Warrant in accordance with sections 363 and 365 of the Bankruptcy Code; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assignment to and assumption by Purchaser-Subject Company of each applicable SUI Token Warrant have been satisfied; (e) the SUI Token Warrants shall be transferred and assigned to, and following the closing of the Sale Transaction remain in full force and effect for the benefit of, Purchaser, and, pursuant to section 365(k) of the Bankruptcy Code, upon the Closing and the payment of the applicable Cure Cost, if any, the Debtors shall be relieved from any further liability with respect to the SUI Token Warrants after such assignment to and assumption by Purchaser-Subject Company; and (f) upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser-Subject Company shall be fully and irrevocably vested in all rights, titles and interests of the Debtors in each applicable SUI Token Warrant, free and clear of any Liens, except Permitted Encumbrances.

14.    All defaults or other obligations of the Debtors under the SUI Token Warrants arising or that have become due and not paid prior to the Closing that are required to be

cured by section 365(b)(1) of the Bankruptcy Code (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by Purchaser-Subject Company at or before the Closing through the payment of the Cure Costs, if any.  To the extent that any counterparty to an applicable SUI Token Warrant did not object to its Cure Cost or adequate assurance of future performance, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignment of its respective SUI Token Warrant from Sellers to Purchaser-Subject Company. Purchaser-Subject Company shall enjoy all of the Seller's rights, benefits, and privileges under the applicable SUI Token Warrant as of the Closing without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof, except to the extent expressly contemplated in the Agreement.  To the extent any counterparty to the SUI Token Warrant failed to timely object to a Cure Cost, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost at any time.

15.     Upon the Debtors' assumption and assignment of the SUI Token Warrants to Purchaser-Subject Company under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Costs, no default shall exist under any applicable SUI Token Warrant, and no counterparty to any applicable SUI Token Warrant shall be permitted to (a) declare a default by Purchaser-Subject Company under such SUI Token Warrant, or (b) otherwise take action against Purchaser-Subject Company , in each case, as a result of the Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the applicable SUI Token Warrant.  Each non-Debtor party to an applicable SUI Token Warrant hereby is also forever barred, estopped and permanently enjoined from (i) asserting against

Purchaser-Subject Company, Sellers, the Debtors, their estates, or their property, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or, against Purchaser, Seller, the Debtors, or their estates, any counterclaim, unexercised set-off or any other claim asserted or assertable against the Debtors and (ii) imposing or charging against Purchaser-Subject Company or its Affiliates (as defined in the Agreement) any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser-Subject Company of the SUI Token Warrants.  The validity of such assumption and assignments of the SUI Token Warrants shall not be affected by any dispute between the Debtors and the counterparties to the SUI Token Warrants and any disputes regarding the Cure Cost of any applicable SUI Token Warrant.

16.     Upon payment of the applicable Cure Costs, if any, and assignment of the SUI Token Warrants to Purchaser-Subject Company, the Debtors and their estates shall have no further liabilities or obligations with respect to the SUI Token Warrants and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

17.     The failure of the Debtors or Purchaser-Subject Company to enforce at any time one or more terms or conditions of the SUI Token Warrants shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the SUI Token Warrants.

18.     In the event that the Sale Transaction does not close, none of the SUI Token Warrants shall be assumed or assigned by virtue of this Sale Order and shall remain subject to further rejection, assumption and/or assignment in these Chapter 11 Cases.

E.      **Prohibition of Actions Against Purchaser-Subject Company**

19.     Except as expressly provided for in this Sale Order or the Agreement, Purchaser-Subject Company shall not have any liability or other obligation or responsibility of the Debtors arising under or related to the Interests or SUI Token Warrants prior to the Closing. Purchaser-Subject Company is not a "successor" to the Debtors or their estates by reason of any theory of law or equity.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, Purchaser-Subject Company shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and Purchaser-Subject Company shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to paragraph ~~F.24~~23 below), successor or transferee liability, securities law, tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to paragraph ~~F.24~~23 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Interests prior to the Closing.  The Sale Transaction does not amount to a consolidation, merger or de facto merger of Purchaser-Subject Company, on the one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial continuity between Purchaser-Subject Company, on the one hand, and the Debtors or their affiliates, ~~on the other hand, and there is no common identity between the Debtors or their affiliates, on the one hand, and Purchaser-Subject Company,~~ on the other hand, and Purchaser-Subject Company is not a mere continuation of the Debtors or their estates, and Purchaser-Subject Company does not constitute a successor to the Debtors or their estates.  For

purposes of paragraphs 2019 to 2322 of this Sale Order, all references to Purchaser-Subject Company shall include the Purchaser Parties.

20.      All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors or the Interests prior to the Closing Date or the transactions contemplated by the Agreement, including the transfer of the Interests to Purchaser-Subject Company and the assumption and assignment of the SUI Token Warrants, hereby are forever barred, estopped and permanently enjoined from asserting against Purchaser-Subject Company, its Affiliates, its successors or assigns, their property or the Interests, such persons' or entities' Liens with respect to the Interests, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Purchaser-Subject Company, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Purchaser-Subject Company, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against Purchaser-Subject Company, its Affiliates, its successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due Purchaser-Subject Company, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof or (f) revoking, terminating or

failing or refusing to transfer or renew any license, permit or authorization to operate the Purchaser-Subject Company, subject to paragraph 24 below.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Interests (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

21.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtors and/or Sellers to sell and transfer the Interests to Purchaser-Subject Company in accordance with the terms of the Agreement and this Sale Order, and (b) with the ability of Purchaser-Subject Company to acquire and take possession of the Interests in accordance with the terms of the Agreement and this Sale Order.

22.     Purchaser-Subject Company has given substantial consideration under the Agreement for the benefit of the Debtors and their estates.  The consideration given by Purchaser-Subject Company shall constitute valid and valuable consideration for (a) the releasessale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Interests pursuant to this Sale Order, which releases as to the Interests shall be deemed to have been given by all holders of Liens in the Interests, except with respect to the Permitted Encumbrances, (b) the releasesand free and clear of any potential claims of successor liability against the Purchaser-Subject Company, which releases shall be deemed to have been given by all holders of Liens in or against the Debtors, or the Interests and (eb) the releases under the Agreement.  The consideration provided by Purchaser-Subject Company for the Interests under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**F.**     <u>**Other Provisions**</u>

23.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

24.     Further, nothing in this Sale Order or Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

25.     Notwithstanding anything to the contrary in the Motion, this Sale Order, or any findings announced at the Sale Hearing, nothing in the Motion, this Sale Order, or announced at the Sale Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

26.     The consideration provided by Purchaser-Subject Company to the Debtors pursuant to the Agreement for the Interests and SUI Token Warrants constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

27.     The sale of the Interests and the mutual release do not include the sale or release of any causes of action held by any of the Debtors against Samuel Bankman-Fried, Gary

Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

28.    27. The Sale Transaction is undertaken by Purchaser-Subject Company without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not alter, affect, limit or otherwise impair the validity of the Sale Transaction, including the assumption and assignment of the SUI Token Warrants, unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing.  Purchaser-Subject Company is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and Purchaser-Subject Company will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

29.    28. As a good faith purchaser of the Interests, Purchaser-Subject Company has not entered into an agreement with any other potential bidders, and has not colluded with any other bidders, potential bidders, or any other parties interested in the Interests, and therefore, neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring an action against Purchaser-Subject Company, and the Sale Transactions may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Agreement or Sale Transaction.

30.    29. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry

of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale Order and the Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

31.    30. Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchaser Subject Company are authorized to close the Sale Transaction immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

32.    31. The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

33.    32. The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a

material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Agreement is modified, the Debtors shall file the modified version with the Court.

34. 33. This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser-Subject Company, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

35. 34. The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

36. 35. No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Agreement)) shall apply to the Debtors' conveyance of the Interests or this Sale Order.

37. 36. The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

38. 37. Purchaser-Subject Company is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction, the assumption and assignment of the SUI Token Warrants and any issues related to or otherwise connected to the Agreement and the Sale Transaction.

39. 38. Nothing in this Sale Order shall affect the obligations of the Debtors, the Purchaser-Subject Company, and/or any transferee or custodian to maintain all books and

records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

40. 39. Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Interests.

41. 40. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _____
          Wilmington, Delaware

_____
The Honorable John T. Dorsey
United States Bankruptcy Judge