## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 17, 2023 at 1:00 p.m. ET**<br>**Obj. Deadline: May 4, 2023 at 4:00 p.m. ET** |

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE MOVANTS
TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION
OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively,

the "Debtors") and the Official Committee of Unsecured Creditors appointed in the above-

captioned cases (the "Committee" and, together with the Debtors, the "Movants"), hereby jointly

submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto

as Exhibit A (the "Order"), pursuant to sections 105(a) and 107 of title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 9018 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing each of the Movants to redact (a) the

names, addresses and e-mail addresses of all of the Debtors' customers from any filings with the

Court or made publicly available in these Chapter 11 Cases (as defined below) and (b) the names,

addresses and e-mail addresses of any creditors or equity holders who are natural persons and who

are protected by the GDPR or Japan data privacy laws from any filings with the Court or made

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list
of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

publicly available in these Chapter 11 Cases.  In support of the Motion, the Movants respectfully state as follows:

### Preliminary Statement

1.      In January, the Court determined that the Debtors had provided evidence that their customer list was protected by Section 107(b)(1) of the Bankruptcy Code, and thus authorized redaction of the Debtors' customers' names, in addition to addresses and e-mail addresses, for a period through April 20, 2023.  The Debtors have continued to make significant progress in their Chapter 11 Cases, but the considerations that were the subject of testimony from the Debtors' investment banker in January remain ongoing today.

2.      Specifically, the Debtors have not yet determined how they will utilize their customer lists consisting of more than 9 million names and addresses: whether they will be utilized as part of a reorganization or monetized through a sale process.  The Debtors' work is advancing, but more remains to be done.  The basic premise that was the basis for the Court's order entered in January, however—that the customer lists, including names and contact information for individual and institutional customers, are an important asset of the Debtors and a potential source of value—remains true today.  The Debtors should be afforded additional time to attempt to realize that value for the benefit of their creditors.  Bankruptcy Code section 107(b)(1) continues to apply and provides grounds to extend the Redaction Deadline (as defined below) by another three months.

3.      In addition, the circumstances of these Chapter 11 Cases dictate that disclosing the names of the Debtors' non-institutional customers (the "Individual Customer Names") exposes those individuals to a very present risk of financial and physical harm. Therefore, Bankruptcy Code section 107(c)(1) provides an independent basis to permit the Debtors and the Committee to redact *all* Individual Customer Names, addresses and e-mail addresses from

public filings.

4.      Cryptocurrency is unique in both its anonymity and the permanence of its transactions, presenting risks in these Chapter 11 Cases not prevalent in others.  Examples are replete of cryptocurrency investors being targeted by malefactors through internet-related scams and threats designed to steal the customer's assets, and publishing the Individual Customer Names will provide a list of targets to those with criminal intent.  As a result, in order to protect customers from such harm, motions to seal individual customers' names have been filed in every cryptocurrency bankruptcy case to date.[2]

5.      Section 107(c) of the Bankruptcy Code expressly authorizes a Bankruptcy Court, for cause, to protect an individual's identifying information to the extent disclosure of that information would lead to identity theft or unlawful harm—which is exactly the situation here. The statute unambiguously provides that, notwithstanding the presumption of public access in bankruptcy cases, protecting personally identifiable information is paramount upon a showing of cause.  The cause for such protection here is patent and not hypothetical or speculative: as set forth in the accompanying declaration of Jeremy A. Sheridan (the "Sheridan Decl."), who served for 24 years as a Secret Service agent investigating financial and cryptocurrency-related crimes, the risk of a successful identity and asset theft scheme is significantly increased when malefactors have even basic information about their targets, such as their name and the fact that they were customers

---

[2]      *See In re Cred, Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) [D.I. 264] (order granting motion to seal individual customer names); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Sep. 28, 2022) [D.I. 910] (order denying motion to seal individual customer names; discussed *infra*); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 08, 2022) [D.I. 54] (order granting motion to seal names of any natural persons subject to UK GDPR and EU GDPR regulations); *In re BlockFi, Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Nov. 28, 2022) [D.I. 4] (motion to seal individual customer names; motion remains *sub judice*); *In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. Mar. 17, 2023) [D.I. 137] (motion to seal individual customer names; motion remains *sub judice*).

of the FTX exchanges.  (Sheridan Decl. ¶¶ 9, 10.)[3]  These schemes and threats can take many different forms, as described by Mr. Sheridan, and myriad specific examples exist, including directed attacks on customers of Celsius that followed the disclosure of *only* the customers' names in that bankruptcy case.  (*See* Sheridan Decl. ¶ 18.)

6.    Plainly stated, the demonstrable risks to individual customers from disclosure of Individual Customer Names in these Bankruptcy Cases far outweigh the public's general interest in disclosing their names.  Accordingly, the Court should order pursuant to section 107(c) that Individual Customer Names remain sealed and redacted on all pleadings and other public filings in these Chapter 11 Cases.

7.    Finally, the Court should also authorize the redaction of names, along with the redaction of addresses and e-mail addresses already authorized, for all natural persons who are protected by the GDPR or the data privacy laws of Japan because of the risk of substantial penalties facing the Debtors in those jurisdictions for improper disclosure of personally identifiable information.  The unique facts and circumstances of these Chapter 11 Cases establish that this Motion should be granted.

### **Background**

8.    On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter

---

[3]    The Sheridan Declaration is incorporated into this Motion as if set forth fully herein.  The Movants expect that Mr. Sheridan, among other witnesses, will testify at the hearing seeking approval of this Motion.

<u>11 Cases</u>") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

9.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

10.     On November 19, 2022, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 45] (the "<u>Original Motion</u>").[4]

11.     On November 23, 2022, the Court granted the Original Motion on an interim basis and entered the *Interim Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals on an Interim Basis and (III) Granting Certain Related Relief* [D.I. 157].

---

[4]    Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Original Motion.

12.     Objections to the Original Motion being granted on a final basis were interposed by the U.S. Trustee [D.I. 200, 362] and a group of media outlets [D.I. 195] (the "Media Intervenors").

13.     The Committee filed a joinder in support of the Debtors' Original Motion being granted on a final basis [D.I. 408].

14.     The Court held a hearing on the Original Motion on January 11, 2023 (the "Hearing").  At the Hearing, the Court granted the Original Motion on a final basis and, on January 20, 2023, entered the *Final Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals on a Final Basis and (III) Granting Certain Related Relief* [D.I. 545] (the "Original Order").

15.     The Original Order authorized the Debtors, among other things, to redact from all public filings (a) addresses and e-mail addresses of their creditors and equity holders who are natural persons on a permanent basis; (b) names, addresses and e-mail addresses of their customers, including those customers who are not natural persons, until the "Redaction Deadline," which as defined therein, is set to expire on April 20, 2023;[5] and (c) names, addresses and e-mail addresses of any creditors or equity holders who are natural persons and who are protected by the GDPR, provided however that the authorization to redact names on this basis is only until the Redaction Deadline.  (Original Order ¶¶ 4-6.)

16.     The Original Order was entered with an express reservation of rights of the

---

[5]     Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the Redaction Deadline shall automatically extend the Redaction Deadline until the Court acts on this Motion without the necessity for entry of a bridge order.

Debtors, the Committee and all other parties in interest to seek an extension of the Redaction Deadline, or to request authorization to redact any personal information of customers, creditors or equity holders on any other grounds.  (*Id.* ¶ 7.)

17.     At the Hearing, the Court also indicated that it would welcome further briefing and/or evidence at a future hearing regarding (a) whether the Debtors should be authorized to redact names and other information of customers pursuant to section 107(c) of the Bankruptcy Code and (b) whether the Debtors should continue to be authorized to redact names of natural persons who are protected by the GDPR.  (*See* Jan. 11, 2023 Hr'g Tr. 103:17-5-107:2.)

### **Jurisdiction**

18.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105 and 107 of the Bankruptcy Code and Bankruptcy Rule 9018.  Pursuant to Local Rule 9013-1(f), the Movants each consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### **Relief Requested**

19.     By this Motion, the Movants request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing each of the Movants to redact (a) the names, addresses and e-mail addresses of all of the Debtors' customers from any filings with the Court or made publicly available in these Chapter 11 Cases and (b) the names, addresses and e-mail addresses of any creditors or equity holders who are natural persons and who are protected by the

GDPR or Japan data privacy laws from any filings with the Court or made publicly available in these Chapter 11 Cases; *provided* that the Debtors and the Committee, as applicable, will provide the U.S. Trustee and counsel to the Committee or the Debtors, as applicable, as well as certain other governmental parties, copies of unredacted filings upon request and any other party copies of unredacted filings upon order of the Court.

## **Basis for Relief**

### A.   **Cause Exists to Extend the Redaction Deadline for an Additional Three Months Pursuant to Section 107(b)(1) of the Bankruptcy Code.**

20.    Section 107(b)(1) of the Bankruptcy Code requires bankruptcy courts, at the request of a party-in-interest, to "protect an entity with respect to a trade secret or confidential research, development, or commercial information."   11 U.S.C. § 107(b)(1).   Pursuant to Bankruptcy Rule 9018, upon motion, "the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information."  Fed. R. Bankr. P. 9018.

21.    The Debtors argued in connection with the Original Motion that their customer list is a potentially significant source of value for their estates.  (Original Mot. ¶ 12.)  At the Hearing, Kevin Cofsky of Perella Weinberg Partners testified that as part of the Debtors' ongoing strategic review, his view is that there is value in the Debtors' customer lists, and that whether the exchanges are sold or reorganized, value is maximized by ensuring that competitors are not able to solicit customers and prematurely move them to other platforms.  (Jan. 11, 2023 Hr'g Tr. 25:4-26:15.)  Mr. Cofsky went on to testify that his view is that third parties will place significant value on the Debtors' customer lists in a sale process, and that maintaining the identity of the customers without disclosure will give buyers confidence that what they are buying is actually of value.  (*Id*. at 30:21-31:5.)  The same reasoning applies to a reorganized debtor entity,

which will retain more value if the Debtors' customers have not been poached and are not transacting on another exchange.  (*Id.* at 31:6-11.)

22.     The Court agreed.  In granting the Original Motion on a final basis, the Court stated that "I think it goes without saying that a customer list in any bankruptcy case is something that is protected by 107(b) as a trade secret.  Companies hold those things very closely and don't want them disclosed."  (*Id.* at 103:1-5.)  As Mr. Cofsky will testify in support of the requested relief, the Debtors require more time to maximize the value of these assets without premature, value destructive disclosure.  Indeed, as the Court heard at the April 13, 2023 omnibus hearing, the Debtors are only now at the point where they can begin, in earnest, to work with the Committee on the next steps to consider monetizing the exchanges, including commencing a marketing process with respect to the exchange assets, which will invariably include the customer lists.  (*See* Apr. 13, 2023 Hr'g Tr. 17:12-18:11.)  The Debtors also now have clarity as to who is on their customer lists as compared to non-customer creditors, which ensures that only information for customers is redacted as authorized.  These distinctions, made in accordance with the terms of the Court's Original Order, are reflected on the Debtors' schedules of assets and liabilities and statements of financial affairs filed on March 14 and 15, 2023.

23.     Accordingly, the Movants request at this time a further extension of the Redaction Deadline with respect to all customer names, addresses and e-mail addresses for an additional three months from the date of entry of an order to preserve the value of the Debtors' customer lists.

**B.      Disclosure of Individual Customer Names Creates an Undue Risk of Identity Theft or Unlawful Injury that is Entitled to Protection Pursuant to Section 107(c) of the Bankruptcy Code.**

24.      Beyond the protections provided by section 107(b) of the Bankruptcy

Code, section 107(c) provides this Court with an independent basis to authorize the filing of

Individual Customer Names under seal.  Pursuant to section 107(c):

(1)      The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

(A)      Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

(B)      Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c).  In turn, section 1028(d) of title 18 defines "means of identification" as:

any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B)  unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C)  unique electronic identification number, address, or routing code; or

(D)  telecommunication identifying information or access device (as defined in section 1029(e))[.]

18 U.S.C. § 1028(d)(4).  As recognized by this Court at the Hearing: "if you look at 128(d) [sic],

it says that the information includes *names*, numbers, or any combination of those two that would

allow the identification of an individual. So, certainly, the Criminal Code recognizes that

disclosure of a name could result in the identification of an individual and if that individual needs

protecting, we need to make sure that that is happening." (*See* Jan. 11, 2023 Hr'g Tr. at 103:24-104:5 (emphasis added).)

25.     Put simply, "[p]ursuant to § 107(c), a bankruptcy court 'may protect an individual with respect to [certain] types of information to the extent the court finds that disclosure . . . would create undue risk of identity theft or other unlawful injury to the individual or the individual's property.'" *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 750 (D. Del. 2018) (affirming on appeal bankruptcy court order sealing personally identifiable information of creditors). The "types of information" that section 107(c) protects from disclosure, in turn, includes "any name or number that may be used, alone or in conjunction with other information to identify a specific individual." *Id*. (citing 18 U.S.C. § 1028(d)). "Section 107(c) references 'risk,' and assessment of risk is forward looking. While a specific *potential* harm must be identified, the standard does not require evidence of injury having occurred in the past or under similar circumstances." *Id.* at 751 (emphasis added; internal citations omitted).

26.     Although the U.S. Trustee and the Media Intervenors in previous filings both minimized the potential risks from disclosure of only a customer's name, the evidence is to the contrary. As set forth more fully in the Sheridan Declaration and as will be demonstrated at the hearing on this Motion, there is specific potential risk of identity theft or unlawful injury to the Debtors' customers if Individual Customers Names are disclosed. Malefactors are skilled at using publicly available sources to compile a dossier on a potential victim; disclosure of a customer's name provides a specific foundation for criminal activity by providing the starting point by which a malefactor can gather information on its targets. For instance, a criminal actor can easily take a customer's name and correlate additional information about that customer from public databases, including telephone numbers, home addresses, e-mail addresses, places of employment, social

media presence and associates, in order to create a customer "dossier."  (Sheridan Decl. ¶ 9.)

Simply being able to tie a name to a certain trait—such as an individual who holds and invests in

cryptocurrency—can significantly increase the likelihood that a malefactor may locate an

individual's online presence and information, and thus provide the malefactor the opportunity to

implement a criminal act, whether through online means or, even more disturbing, physical threats

and attacks, upon an unsuspecting customer.  (*See* Sheridan Decl. ¶ 9; Jamie Redman, *London

College Student Robbed at Knifepoint by 8 Thugs for $93K in Bitcoin*, BITCOIN.COM (Sept. 25,

2021) (Sheridan Decl. Ex. M); Francisco Memoria, *Victim of Brazilian Bitcoin Ransom

Kidnapping Plot Rescued*, CCN (Mar. 4, 2021) (Sheridan Decl. Ex. L).)

        27.     The risks to the Debtors' customers from disclosure of their identities are

not conjecture, hypothetical or exaggerated.  For example, in the pending cryptocurrency

bankruptcy cases of *In re Celsius Network LLC* ("Celsius"), the bankruptcy court held that

individual customers' physical and e-mail addresses should be sealed under section 107(c),[6] but

required that names of such individual customers be disclosed because the court was

"unconvinced, beyond speculation, that the disclosure of names alone (without e-mail or physical

addresses) presents an imminent risk of harm."  *In re Celsius Network LLC*, 644 B.R. at 295.

Thereafter, searchable customer lists were created and posted online from the approximately

14,000 pages of customer information that was made public—a small fraction of the size of the

Debtors' customer lists here—which allowed anyone with internet access to search Celsius

customers based upon their cryptocurrency holdings.  *See* Mack DeGeurin, *New Tool Shows the

Biggest   Losers   in   the   Celsius   Crypto   Meltdown*,   Gizmodo   (Oct.   10,   2022),

---

[6]    "Such information, in combination with their names, could make individual account holders more vulnerable to
identity theft and render account holders' crypto assets more susceptible to criminal theft."  *In re Celsius Network
LLC*, 644 B.R. 276, 294 (Bankr. S.D.N.Y. 2022).

https://gizmodo.com/crypto-celsius-1849637951.   Various criminal attempts were then made to influence and steal from Celsius customers, including multiple phishing attempts.   *Notices of Phishing Attempts, In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y.) [D.I.s 1527, 1681, 1904, 1992, 2082].   Although some phishing attempts were amateurish and easily detectable, others were more sophisticated and appeared to customers to be legitimate contact from the debtors and their professionals.   Indeed, the *Celsius* bankruptcy court involved the U.S. Marshal when a malefactor criminally modified and emailed to Celsius customers a court order that purported to require Celsius customers to submit personal information, including their cryptocurrency wallet address and contact information, and to pay a "filing fee" and "tax fee."   *Notice of Phishing Attempts*, *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y.) [D.I. 1904].[7]

28.     The Debtors and the Committee are of course cognizant that there is a presumptive right of access to documents filed in a federal court.   *In re Altegrity, Inc.*, 2015 WL 10963572, at *3 (Bankr. D. Del. July 6, 2015) (citing *In re Orion Pictures Corp.,* 21 F.3d 24, 26 (2d Cir. 1994)).   Nevertheless, "the public's right of access to judicial records is not absolute," and Congress has specifically authorized courts to protect "any means of identification."   *In re A C & S Inc.*, 775 F. App'x 78, 79 (3d Cir. 2019).   In other words, "[t]he court may protect private information in a judicial record upon an appropriate showing that the privacy interests outweigh the presumption of public access to the information."   *In re Endo Int'l plc*, 2022 WL 16640880, at *11 (Bankr. S.D.N.Y. Nov. 2, 2022).

---

[7]    The court's decision in *Celsius*, the Movants respectfully submit, was incorrect as a matter of law, is distinguishable as a matter of fact as being based upon what the court there found to be an insufficient evidentiary record, and, in any event, is not binding upon this Court.   Most importantly, the disclosure of customer names in Celsius has since resulted in the exact injury that the court there believed was speculative when initially raised.

29.     As Judge Owens held in *In re Clover Techs. Grp., LLC*,: "[t]o me it is common sense.  I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by way of the court's electronic case filing system and, of course, the claims agent's website." *In re Clover Techs. Grp., LLC,* No. 19-12680 (KBO) (Bankr. D. Del. Jan. 24, 2020), Jan. 22, 2020 Hr'g Tr. [D.I. 146] at 24:21–25; *see also In re Anna Holdings*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019), Dec. 4, 2019 Hr'g Tr. [D.I. 112] at 48:20–22, 49:3–5 ("[I]t's just plain common sense in 2019—soon-to-be 2020—to put as little  information out as possible about people's personal lives to present [sic] scams. . . . [Identity theft is] a real-life issue[.]").

30.     Here, privacy interests—the safety and protection of customers—far outweigh the presumption of public access in these Chapter 11 Cases.  Indeed, as the evidence will show, the Debtors' customers present a particularly compelling target to potential wrongdoers, as "malefactors typically target (x) consumers they believe to be holders of cryptocurrency and (y) consumers who are in a vulnerable state, including because they have sums of money tied up in bankruptcy proceedings." (Sheridan Decl. ¶ 8.)  The Debtors' individual customers fulfill both of these criteria and thus disclosure of their names should be protected by section 107(c).

31.     Moreover, none of the reasons previously offered in opposition to the relief requested by the Movants here provide any basis to deny the sealing of Individual Customer Names.  First, cryptocurrency investors, generally, often anonymously communicate among themselves through social media and similar channels, thereby reducing the need for a public customer list to facilitate conferral among creditors.

32.     Second, the opinions of Mr. Sheridan, based upon his more than two decades in law enforcement investigating financial crimes, including cryptocurrency schemes,

refute any contention that public access to the Individual Customer Names would not create an undue risk of identity theft.  Indeed, the experience following the release of customer names in the *Celsius* bankruptcy cases, in which the severity of the criminal actions required the bankruptcy court to notify the U.S. Marshal, belies any notion that a phishing attack is just par for the course.

33.    Finally, should this Motion be granted and Individual Customer Names be sealed, to the extent any party-in-interest has grounds to seek disclosure of specific customer names for a specific purpose—such as to "scrutinize" claims trades disclosed on the dockets of these Chapter 11 Cases—they will of course be able to do so, without jeopardizing every other individual customer of these estates.  And, transparency will be served because parties-in-interest, including the Committee and the U.S. Trustee, among others, can view the sealed information subject to appropriate confidentiality restrictions and protections, thereby providing the check on the Debtors that public disclosure is meant to provide.

34.    In sum, in the circumstances of these Chapter 11 Cases, the customer's privacy rights must take precedence over the public's general right of access to creditor information.  No compelling reason exists to require disclosure of the Individual Customer Names given the very real risks that individual customers face if their names are disclosed.  The relief sought pursuant to section 107(c) should be granted.

**C.    The Court Should Authorize the Movants to Redact Names and Information of Natural Persons Protected by the GDPR and Japan data privacy law.**

35.    The Court should also permit the Debtors, pursuant to section 105 of the Bankruptcy Code, to comply with the GDPR and Japan data privacy laws to prevent harm to estates that could arise from violations of those laws in the local jurisdictions.

i.  <u>The GDPR Applies to the Debtors</u>

36.    The Movants submit that the Court should authorize the Debtors to redact personal information of all natural persons who are protected by the GDPR.  The GDPR imposes significant constraints on processing "any information related to an identified or identifiable natural person" ("<u>Personal Data</u>").  EU GDPR Art. 4(1); UK GDPR Art. 3(2) ("any information relating to an identified or identifiable living individual").  The GDPR applies to (a) the processing of Personal Data in the context of an establishment of a controller or processor in the United Kingdom ("<u>UK</u>") or European Economic Area ("<u>EEA</u>"), regardless of whether the processing takes place in the UK or EEA and (b) the processing of Personal Data by a controller or processor not established in the UK or EEA but where processing activities are related to (i) the offering of goods or services, irrespective of whether a payment of the data subject is required, or (ii) the monitoring of data subjects' behavior as far as such behavior takes place within the UK or EEA. EU GDPR Arts. 3(1), (2); UK GDPR Arts. 207(2), (3).  The Debtors are thus subject to the GDPR pursuant to the plain language of the regulation because they are either controllers in the UK or EEA or collected Personal Data of data subjects in the UK and EEA when offering goods and services.

37.    "Processing" is defined in the GDPR as "any operation or set of operations which is performed on personal data or on sets of personal data, whether or not by automated means, such as," among other things, "disclosure by transmission [and] dissemination or otherwise making available."  EU GDPR Art. 4(2); UK GDPR Art. 4(d).  Including the names of natural persons protected by the GDPR in public court filings constitutes the "processing" of Personal Data under the GDPR.

38.     Pursuant to Article 6 of the EU GDPR and Schedule of the UK GDPR, the

Debtors must therefore have a legal basis to process the Personal Data of UK or EEA data subjects.

EU GDPR Art. 6(1); *see also* UK GDPR Schedule 9.  There are six possible bases for processing:

    i.   the data subject has given consent to the processing of his or her personal data for one or more specific purposes;

    ii.   processing is necessary for the performance of a contract to which the data subject is party or in order to take steps at the request of the data subject prior to entering into a contract;

    iii.   processing is necessary for compliance with a legal obligation to which the controller is subject;

    iv.   processing is necessary in order to protect the vital interests of the data subject or of another natural person;

    v.   processing is necessary for the performance of a task carried out in the public interest or in the exercise of official authority vested in the controller; and

    vi.   processing is necessary for the purposes of the legitimate interests pursued by the controller or by a third party, except where such interests are overridden by the interests or fundamental rights and freedoms of the data subject which require protection of personal data, in particular where the data subject is a child.

None of these bases facially apply to the Debtors.  The UK and EEA data subjects on whom the

Debtors have Personal Data have not consented to the processing of their data for the specific

purpose of the Chapter 11 Cases.  Neither is the disclosure of their information necessary for the

performance of a contract to which they are a party or to protect the vital interests of the data

subjects or other natural persons.  Likewise, the processing is not necessary for compliance with a

legal obligation to which the controller is subject because the GDPR provides that any such legal

obligation "*should have a basis in Union or Member state law*"—not U.S. law.  EU GDPR Art.

6(1), Recital 45 (emphasis added); UK GDPR Schedule 6 ¶ 3(3); *see also* EU GDPR Art. 6(3)

(providing that the legal obligation "shall be laid down by" either European Union law or Member State law to which the controller is subject).  Nor are the Chapter 11 Cases "a task carried out in the public interest or in the exercise of official authority vested in the controller," which public interest also must be "laid down by" either European Union law or Member state law (in the EU GDPR) or domestic law (in the UK GDPR).  *See* EU GDPR Art. 6(3); UK GDPR Schedule 6(3).

39.     Evaluation of the "legitimate interests" of the Debtors to process Personal Data under the GDPR would be a fact intensive inquiry that data protection authorities would perform *after* action was taken.  Thus, if the Debtors were to process Personal Data, they likely would be subject to an enforcement action in which they would need to demonstrate a legal basis for such processing: first, that the Debtors had a legitimate interest, second that such processing was necessary for the purposes of such legitimate interest, and finally, it would then be evaluated whether such legitimate interest was overridden by "the interests or the fundamental rights and freedoms of the data subject" on the specific facts presented.  *See* EU GDPR Art. 6; *see also* UK GDPR Schedule 9.  The Movants believe that the risks posed by taking action and then being potentially subject to an adverse outcome in an enforcement action is too great under the circumstances.

    ii.  <u>Failure to Comply with the GDPR Exposes the Debtors' Estates to Risk of Substantial Financial Harm</u>

40.     Violators of the GDPR risk severe statutory penalties.  For a breach of the EU GDPR, the organization may be fined up to the higher of €20 million or 4% of worldwide annual turnover of the preceding financial year.  *See* EU GDPR Art. 83(5).  For a breach of the UK GDPR, the organization may be fined up to the higher of £17.5 million or 4% of annual worldwide turnover in the preceding financial year.  See UK GDPR Art. 157(5)(a).

41.     These penalties are not merely speculative; large fines have been levied against entities for violations of the GDPR in recent years.  In 2021, for example, the largest fine for violating the GDPR was €746 million against an Amazon entity in Luxembourg for "non-compliance with general data processing principles."  *See Number & Figures*, CMS, https://cms.law/en/deu/publication/gdpr-enforcement-tracker-report/numbers-and-figures#.    The largest fine specifically for "insufficient legal basis for data processing" was against a Google entity in France for €90 million.  *Id.*  In January 2023, an Irish Meta entity was fined €390 million for non-compliance with general data processing principles.  *See* Ryan Browne, *Meta fined more than $400 million in Ireland over EU privacy breaches*, CNBC (Jan. 4, 2023 10:54 AM), cnbc.com/2023/01/04/meta-fined-more-than-400-million-in-ireland-over-eu-privacy-breaches.html.

42.     The Movants believe the risk is high for significant monetary penalties if the Debtors are found to have violated the GDPR by the applicable enforcement jurisdiction.  The GDPR provides that, when determining whether to impose an administrative fine and deciding on the amount of such fine in each case, due regard shall be given to "the nature, gravity and duration of the infringement taking into account the nature[,] scope or purpose of the processing concerned as well as the number of data subjects affected and the level of damage suffered by them."  EU GDPR Art. 83(2); *see also* UK GDPR Arts. 155(2), 155(3) (determination of penalty depends in part on "the nature, gravity and duration of the failure").  As evidenced by the Media Intervenors' objection to the Original Motion, there is substantial publicity of these Chapter 11 Cases and desire to report on the identities of the Debtors' customers.  The public dissemination of these identities would likely be considered when determining any fine or penalty.

iii. <u>Japan Data Privacy Laws Impose Requirements on the Debtors and Expose the Debtors to Potential Penalties</u>

43.     The Movants are also requesting authority to redact certain information of individuals under data privacy law of Japan:  the Act on the Protection of Personal Information ("<u>APPI</u>").  Under the APPI, a business operator handling personal information—like certain of the Debtors—is prohibited from disclosing such information without the consent of the individual or unless certain statutory exceptions apply.   APPI Arts. 27(1), 28(1).   "Personal information" includes an individual's name.   APPI Art. 2(1)(i).   While there is a statutory exception for disclosure if it is required by law, this exception does not apply where the applicable law is foreign law (such as U.S. law).  APPI Art. 27(1)(i).  Critically, violations of the APPI could also result in business suspension or the revocation of a business license under the Financial Instruments and Exchange Act of Japan ("<u>FIEA</u>").  FIEA Arts. 51, 52(1).  The business license in Japan is a crucial asset of the Debtors' estates in their ongoing reorganization and sale efforts.   It is therefore paramount that the Debtors be permitted to comply with the APPI in order to protect this asset and those customers in Japan.

iv. <u>The Court Should Authorize the Debtors to Comply with the GDPR and Japan Data Privacy Law</u>

44.     The Movants are not seeking a determination that the GDPR or APPI supersedes U.S. bankruptcy law because that is not necessary for the requested relief to be granted. Indeed, even if the Movants were to argue—and the Court were to find—that U.S. bankruptcy law controls, the Movants do not know if any such order or the automatic stay would prevent the levying of financial or other penalties in the relevant foreign jurisdiction.

45.     Rather, the Debtors maintain that they are subject to these laws by their plain terms, and that they believe enforcement of the public disclosure requirements of U.S.

bankruptcy law would expose them to undue risk of serious financial harm, to the detriment of all creditors and other stakeholders.  Authorizing the Debtors to comply with applicable non-bankruptcy law has a basis in both the Bankruptcy Code and principles of comity.

46.    For example, section 959(b) of the Bankruptcy Code provides that trustees and debtors-in-possession must "manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated."  28 U.S.C. § 959(b).  In addition, principles of comity militate in favor of authorizing the Debtors to redact information in order to comply with applicable foreign law, particularly where there is a risk of significant adverse judgments being imposed.

47.    Here, individuals protected by the GDPR and Japan data privacy law, which all came into effect before these Chapter 11 Cases were commenced, have a reasonable expectation that their personal information will not be disclosed in violation thereof.  The Debtors recognize U.S. bankruptcy law requires certain disclosures, and the Debtors have been seeking to balance the competing considerations.  The Debtors further submit that, to the extent the Committee obtains information covered by the GDPR, the Committee should likewise be authorized to redact such information from publicly filed papers in these Chapter 11 Cases in order to protect the Debtors from these potential harms.  The proposed Order provides an appropriate balance because the Movants would file information under seal but provide it to the Court, the U.S. Trustee and the Committee or the Debtors, as applicable.  This ensures appropriate access to the information without subjecting the Debtors to substantial risk of financial or other penalties.  The Order also provides that parties can at any time seek relief from the Court to obtain access to the redacted information.  As a result, the Movants do not believe that the requested relief is prejudicial to any interested parties.

## Notice

48.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Movants respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: April 20, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

Dated: April 20, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert F. Poppiti*

Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
　　　rpoppiti@ycst.com

-and-

**PAUL HASTINGS LLP**

Kristopher M. Hansen*
Kenneth Pasquale*
Gabriel E. Sasson*
Isaac S. Sasson*
Caroline Diaz*
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
　　　kenpasquale@paulhastings.com
　　　gabesasson@paulhastings.com
　　　isaacsasson@paulhastings.com
　　　carolinediaz@paulhastings.com

*Admitted pro hac vice*

*Counsel to the Official Committee of Unsecured Creditors*