**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) ) ) ) ) ) ) ) | Chapter 11 |
|  |  | Case No. 22-11068 (JTD) |
| FTX TRADING LTD., et al.,[1] |  | (Jointly Administered) |
|  |  | **Ref. Docket No. 1192** |
| Debtors. |  | Hearing Date: May 17, 2023 at 1:00 p.m. (ET) |

**DECLARATION OF KENNETH PASQUALE IN SUPPORT OF OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE JOINT PROVISIONAL LIQUIDATORS FOR A DETERMINATION THAT THE U.S. DEBTORS' AUTOMATIC STAY DOES NOT APPLY TO, OR IN THE ALTERNATIVE FOR RELIEF FROM STAY FOR FILING OF THE APPLICATION IN THE SUPREME COURT OF THE COMMONWEALTH OF THE BAHAMAS SEEKING RESOLUTION OF NON-US LAW AND OTHER ISSUES**

I, Kenneth Pasquale, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner with Paul Hastings LLP, which maintains an office for the practice of law at 200 Park Ave., New York, New York 10166. I am an attorney at law, duly admitted and in good standing to practice in the State of New York. I am admitted *pro hac vice* in the above-captioned chapter 11 case to represent the Official Committee of Unsecured Creditors of *FTX Trading Ltd. et al*.

2. I submit this Declaration in support of the *Objection of the Official Committee of Unsecured Creditors to Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative for Relief from Stay for*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

*Filing of the Application in the Supreme Court of The Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues*, which is being filed concurrently herewith in the above-captioned bankruptcy cases.

3. Attached hereto as **Exhibit A** is a true and accurate copy of the Services Agreement between FTX Trading Ltd. and FTX Digital Markets, Ltd., effective as of September 23, 2021 (Bates Nos. FTX_000346060-68).

I hereby declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Date: May 3, 2023

/s/ *Kenneth Pasquale*
Kenneth Pasquale

# **Exhibit A**

Services Agreement

## SERVICES AGREEMENT

This SERVICES AGREEMENT (this "*Agreement*"), effective as of September 23, 2021 (the "*Effective Date*") is by and between FTX Trading Ltd. ("*Principal*"), a company organized and existing under the laws of the Antigua and Barbuda, and FTX Digital Markets, Ltd. ("*Contractor*"), a company organized and existing under the laws of the Bahamas (hereinafter collectively referred to as the "*Parties*" and individually as a "*Party*").

### RECITALS

**WHEREAS**, The Parties are each engaged in a business activities related to cryptocurrency (the "*Business*");

**WHEREAS**, Principal desires to procure from Contractor certain services as part of the Business; and

**WHEREAS**, Contractor desires to perform such services for the fee set forth herein.

**NOW, THEREFORE**, in consideration of the terms and conditions and mutual agreements contained herein, it is agreed as follows:

1. **DEFINITIONS**

    1.1 "*Confidential Information*" shall mean all know-how, technical information and concepts, designs, specifications, data sheets, sales and pricing information, and all other proprietary information of Principal, whether or not reduced to writing, as well as any other information relating to the business of Principal.

    1.2 "*Intellectual Property Rights*" shall mean all intellectual property or other similar rights arising out of: (i) any patent or any application therefor and any and all reissues, divisions, continuations, renewals, re-examinations, extensions and continuations-in-part thereof; (ii) inventions (whether patentable or not), invention disclosures, discoveries, designs, improvements, trade secrets, proprietary information, know-how, practices, technology and technical data; (iii) copyrights, copyright registrations, and applications therefor, and all other rights corresponding thereto throughout the world; (iv) registered or common law trademarks, service marks, trade dress, trade names, logos, intent-to-use registrations or notices, and applications to register or use any of the foregoing anywhere in the world; (v) Internet or World Wide Web domain names or URLs with any governmental or quasi-governmental authority, including Internet domain name registrars; and (vi) other proprietary rights in technology, including software, all source and object code, algorithms, architecture, structure, display screens, layouts,

inventions, development tools and all documentation and media constituting, describing or relating to the above, including, without limitation, manuals, memoranda, records, business information, anywhere in the world.

1.3    "*Services*" shall mean such general, administrative or technical services as the Parties may agree to from time to time, on the terms and conditions set forth herein.

2.    **PERFORMANCE OF SERVICES**

2.1    Engagement. Principal hereby agrees with Contractor that Contractor shall perform the Services. Principal and Contractor shall periodically consult to define the specific scope of the Services.

2.2    Performance. During the term of this Agreement, Contractor shall use commercially reasonable efforts to perform the Services on behalf of Principal, including through subcontractors that Contractor may choose to hire in its reasonable discretion. Contractor will diligently use its efforts to bring such projects to a successful conclusion although Contractor does not warrant or guarantee that any Services will be successful or that any products or Intellectual Property Rights resulting therefrom will be commercially viable. So long as Contractor has performed hereunder, Principal shall pay the Service Fee regardless of whether any products or Intellectual Property Rights are in fact produced.

3.    **SERVICE FEE**

3.1    Compensation. In consideration of performing the Services and subject to any withholding requirements to comply with tax or other applicable laws, Principal shall pay to Contractor fees for the Services performed equal to the amount specified in Exhibit A, as may be updated by the Parties from time to time (the "*Service Fee*").

3.2    Payment for Services. Contractor shall submit to Principal quarterly statements of the Service Fees due and payable under the terms of this Agreement. Payment of the Service Fee shall be made in U.S. dollars or such other currency or property (including, without limit, tokens or cryptocurrency) as may be agreed to from time to time directly to Contractor or to such bank as is designated by Contractor within thirty (30) days of the receipt of a quarterly statement. Contractor shall obtain all approvals and permits from any governmental authority necessary for Principal to pay the Service Fee to Contractor.

4.    **REPORTING REQUIREMENTS**

4.1    Books and Records. Contractor shall keep and maintain adequate books, records and files to enable it to furnish complete and accurate information to Principal regarding all aspects of the Services and expenditures of funds. Principal shall have the right, upon reasonable notice and at its

CONFIDENTIAL TREATMENT REQUESTED BY FTX                                                                                                FTX_000346061

expense, to inspect, audit, or have an audit performed of Contractor's books and records relating to the Services and expenditure of funds under this Agreement.

4.2     Reports.  As often as reasonably requested by Principal, Contractor shall provide written reports to Principal regarding its performance of the Services, and detailed reports of costs incurred. Contractor shall promptly notify Principal of any significant problems that may occur during the course of providing the Services.

5.      **CONFIDENTIALITY AND INTELLECTUAL PROPERTY**

5.1     Confidential Information.  Contractor acknowledges that the Confidential Information comprises valuable trade secrets and is proprietary to Principal.  Contractor shall hold the Confidential Information in strict confidence and shall not disclose it to any other person or entity except as reasonably required to perform its obligations under this Agreement.  Contractor shall not use the Confidential Information for any purpose other than to perform its obligations under this Agreement.  Contractor shall use its best efforts to assure that its employees, agents, and subcontractors do not make any unauthorized disclosures of the Confidential Information and in furtherance thereof Contractor further agrees that its employees, agents, and subcontractors who are hired or retained by it to perform any of the Services shall have executed agreements, acceptable to Principal, whereby they agree to hold in confidence all Confidential Information to which they have access during the course of their duties as employees, agents, or subcontractors of Contractor and to assign to Principal any and all rights they may now have or may acquire respecting the Works (as defined below).  Upon termination of this Agreement, Contractor shall immediately cease all use of Confidential Information and immediately return all Confidential Information to Principal as directed by Principal. Principal will remain the sole and exclusive owner of the Confidential Information provided to Contractor under this Agreement.

5.2     Principal's Ownership of all Intellectual Property Rights.  Any works, inventions or other Intellectual Property Rights created or developed by Contractor in connection with the performance of the Services or this Agreement, including any modifications to, embodiments of and derivative works based upon the products and/or Confidential Information, (collectively, the "*Works*") and any Intellectual Property Rights therein will be the sole and exclusive property of Principal.

5.3     Assignment.  As a result of this Agreement, Contractor hereby transfers and assigns to Principal all right, title and interest that Contractor has or will have, if any, in the Works, and all Intellectual Property Rights therein.  Contractor also hereby irrevocably assigns and transfers to Principal all of its right, title, and interest in all rights to enforce the foregoing rights including the right to sue and

CONFIDENTIAL TREATMENT REQUESTED BY FTX                                                              FTX_000346062

recover all income, royalties, damages and payments now or hereafter due or payable with respect to any of the foregoing rights, including, without limitation, damages for past, present or future infringement.

5.4     Perfection of Assignment. As a result of this Agreement, Contractor will promptly disclose and deliver to Principal any Works upon their creation, and shall provide reasonable assistance and cooperation to Principal without any additional compensation, to acquire, transfer, maintain, perfect, and enforce Intellectual Property Rights in the Works as may reasonably be requested by Principal. Prior to the completion of the Services, Contractor shall, upon Principal's request, deliver to Principal all Works created as of the date of Principal's request. Contractor shall, at its own expense, execute any and all documents and legal instruments as may be requested by Principal from time to time to carry out the provisions of Sections 5.2, 5.3 and this Section 5.4.

6.     **OBLIGATIONS, REPRESENTATIONS AND WARRANTIES OF CONTRACTOR**

6.1     Legal Compliance. Contractor shall fully comply with all laws, regulations and orders in any jurisdiction that may be applicable to it by reason of its execution and performance of this Agreement. Contractor shall require its directors, officers, employees and agents to comply with the provisions of this Section 6.1.

6.2     Insurance. Contractor shall maintain any required workers' compensation, employer's liability, and comprehensive general liability (bodily injury and property damage) insurance with respect to its performance of the Services under this Agreement, and such other insurance as Principal may reasonably require to protect its interests.

7.     **TERM AND TERMINATION**

7.1     Term. This Agreement shall continue in force for a fixed term of one (1) year from the date hereof unless terminated earlier under the provisions of this Section 7. At the end of the fixed term, this Agreement shall renew automatically for additional one (1) year terms (subject to earlier termination under the provisions of this Section 7), without notice, unless prior to that time either Party provides written notice of non-renewal to the other Party.

7.2     Termination for Convenience. This Agreement may be terminated by either Party for any reason or no reason by giving the other Party written notice of termination ninety (90) days in advance of the date on which such termination is to be effective.

7.3     Termination for Cause. If either Party materially defaults in its performance or breaches any of the terms or conditions of this Agreement, then the other Party may give written notice to the breaching or defaulting Party that if the breach or default is not cured within thirty (30) days the

4

Agreement will be terminated. If such notice is given and the breach or default is not cured during the thirty (30)-day period, then the Agreement may be terminated at the end of that period upon written notice by the non-defaulting Party.

7.4     Termination for Insolvency. This Agreement shall terminate immediately without notice: (i) upon the institution by or against Principal or Contractor of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Principal's or Contractor's debt; (ii) upon Principal's or Contractor's making an assignment for the benefit of creditors; (iii) upon Principal's or Contractor's dissolution or liquidation; or (iv) upon Contractor's ceasing to be a more than 50% direct or indirect subsidiary of Principal.

7.5     Transition. Upon termination of this Agreement, each Party shall diligently cooperate with the other to effect a smooth and orderly transition. From the time that a notice of termination is received by either Party until the effective termination date, each Party shall cooperate fully with the other and with any newly appointed Party performing the duties contemplated hereunder.

7.6     Limitation on Liability. In the event of termination by either Party in accordance with any of the provisions of this Agreement, neither Party shall be liable to the other because of such termination for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, investments, leases or commitments in connection with the business or goodwill of Contractor or Principal. Principal's sole liability under the terms of this Agreement shall be for any due and unpaid fees under Section 3.

7.7     Survival of Certain Terms. The provisions of Sections 1, 3 (to the extent of any outstanding payment), 4.1, 5, 7.6, and 8 shall survive the termination or expiration of this Agreement for any reason. All other rights and obligations of the Parties shall cease upon termination or expiration of this Agreement.

8.     **MISCELLANEOUS**

8.1     Governing Law. This Agreement shall be governed by the laws of the Bahamas without reference to choice of law or conflict of laws principles.

8.2     Notices. Any notice required or permitted by this Agreement shall be in writing and shall be deemed given if sent by prepaid registered or certified airmail, return receipt requested (if available), and confirmed by such airmail, postage prepaid or sent by facsimile or similar communication with confirmation of successful transmission, addressed as follows:

CONFIDENTIAL TREATMENT REQUESTED BY FTX                                                                          FTX_000346064

|  |  |
|---|---|
| To: Principal | No. 11 Mandolin Place, Friar's Hill Road, Saint John's Antigua |
| To: Contractor | 27 Veridian Corporate Center, Western Road, Nassau, The Bahamas |

All notices, reports and other communications given in accordance with this Article 8.2 shall be deemed received (i) if sent by registered air mail, 5 days after the date of mailing; and (ii) if conveyed by personal delivery or sent by facsimile, upon actual delivery or confirmed receipt of such transmission.

8.3     Independent Contractors. The Parties to this Agreement are independent contractors. No relationship of principal to agent, master to servant, employer to employee or franchisor to franchisee is established hereby between the Parties. Neither Party has the authority to bind the other Party or incur any obligation on the other Party's behalf.

8.4     Force Majeure. Nonperformance of either Party shall be excused to the extent that performance is rendered impossible by strike, fire, flood, governmental acts, orders or restrictions, or any other reason where failure to perform is beyond the control and not caused by the negligence of the non-performing Party, provided that the non-performing Party uses its best efforts to promptly resume performance once it is possible to do so.

8.5     Non-Assignability and Binding Effect. Neither Party shall, without the prior written consent of the other Party, assign this Agreement in whole or in part or delegate any right or duty hereunder to any third Party, sub-agent, representative or consultant (excluding, for the avoidance of doubt, an assignment to any other more than 50% direct or indirect subsidiary of Principal). Any attempted assignment not having such consent shall be void and without effect.

8.6     Headings; Counterparts. Headings to Sections of this Agreement are to facilitate reference only, do not form a part of this Agreement, and shall not in any way affect the interpretation hereof. This Agreement may be executed in two (2) or more English language counterparts or duplicate originals, all of which shall be regarded as one of the same instrument, and which shall be the official and governing version in the interpretation of this Agreement.

8.7     Severability. If any term of this Agreement is held invalid or unenforceable for any reason, the remainder of the provisions shall continue in full force and effect, and the Parties shall substitute a valid provision with the same intent and economic effect.

CONFIDENTIAL TREATMENT REQUESTED BY FTX                                                                                                  FTX_000346065

8.8     Right of Setoff.  A Party to this Agreement that owes money hereunder to the other Party to this Agreement shall have the right to setoff against and subtract from the amount that it owes to the other Party any and all amounts that that Party then owes to it.

8.9     Entire Agreement.  This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter herein and supersedes all prior discussions between them.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing and signed by the Party to be charged.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

CONFIDENTIAL TREATMENT REQUESTED BY FTX              FTX_000346066

IN WITNESS WHEREOF the Parties hereto have executed this Agreement as of the day and year first above written.

**FTX TRADING LIMITED**

By: *[signature]*

Name: Nishad Singh

Title: Director


**FTX DIGITAL MARKETS, LTD.**

By: *[signature]*

Name: Sam Bankman-Fried

Title: Director

8

CONFIDENTIAL TREATMENT REQUESTED BY FTX                                        FTX_000346067

# EXHIBIT A

## Service Fee

The Service Fee shall be equal to Contractor's direct and indirect costs of performing the Services, plus eight percent (8%) of such costs.

The Parties shall periodically review such compensation to ensure that it is consistent with the arm's length standard of Section 482 of the U.S. Internal Revenue Code of 1986, as amended, and any corresponding or similar provisions of foreign tax law.

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_000346068