**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. ECF No. 1192**<br>**Hearing Date: May 17, 2023** |

**CUSTOMER ADVERSARY PLAINTIFFS' OPPOSITION TO THE MOTION OF JOINT PROVISIONAL LIQUIDATORS REGARDING THE AUTOMATIC STAY AND APPLICATION TO THE SUPREME COURT OF THE BAHAMAS ON NON-US LAW, AND JOINDER IN DEBTORS' OBJECTION**

The Customer Adversary Plaintiffs (parties-in-interest Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar, who are former customer depositors of FTX Trading Ltd. ("FTX.com") and/or West Realm Services Inc. ("FTX.US") prosecuting *Onusz, et al. v. West Realm Shires Inc., et al.*, Case No. 22-50513-JTD (Bankr. D. Del.) (the "Customer Adversary Proceeding"), hereby submit this opposition to the *Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of the Bahamas Seeking Resolution of Non-US Law and Other Issues* (ECF No. 1192) (the "JPL Motion") and also join in Debtors' anticipated objection (the "Debtors' Objection"). In support of their opposition and joinder, the Customer Adversary Plaintiffs respectfully state as follows:[1]

[1] Debtors are FTX Trading Ltd. ("FTX Trading"), Alameda Research LLC, Alameda Research Ltd., and their affiliated debtors and debtors-in-possession (collectively, the "FTX Group" or "Debtors").

## Introduction

1. The JPL Motion makes abundantly clear that the only way to avoid a problematic, piecemeal, and inefficient resolution of core issues concerning Customers' digital assets and fiat currency deposited (the "Customer Property" or "Customer Deposits") with Debtors and recovery and distribution of that Customer Property must be centralized in this Court. By their own admission, the connection of these issues and the Customer Property to the Bahamas is *de minimis* and attenuated and nothing in the JPL Motion justifies lifting the stay or resolving issues core to the administration of Debtors' estates and the recovery and distribution of Customer Property outside this Court.

## Argument

2. The Customer Adversary Plaintiffs are former customers who deposited property at FTX.com, FTX US and/or their affiliated Debtors in the form of digital assets or fiat currency. On December 27, 2022, they filed the Customer Adversary Proceeding against certain FTX Group entities and officers on their own behalf and on behalf of all customers (the "Customers") who deposited billions of dollars in Customer Property across all FTX Group platforms and, as is now widely known, have been unable to use, access or withdraw such property because it was comingled, converted and misused by the defendants in the Customer Adversary Proceeding.[2]

3. The Customer Adversary Plaintiffs' sole goal is the recovery and equitable distribution of the Customer Property that was entrusted to the FTX Group. Customers are the most important and largest constituency in the Debtors' estates and identifying, securing, and

[2] The Customer Adversary Proceeding names as defendants: (i) Debtors West Realm Shires Inc., West Realm Services Inc. (d/b/a FTX.US), FTX Trading (d/b/a FTX.com); (ii) Samuel Bankman-Fried, Zixiao "Gary" Wang, and Nishad Singh (the "Senior Management Defendants"); and (iii) Alameda Research LLC ("Alameda") and Caroline Ellison (collectively with FTX.US, FTX.com, and the Senior Management Defendants, the "Adversary Defendants").

equitably distributing assets to Customers should likewise be the primary concern of the Debtors, their professionals, and the JPLs of FTX Digital Markets Ltd. ("FTX Digital"). To that end, the Customer Adversary Plaintiffs have executed a non-disclosure agreement with the Debtors and are among the constituencies in discussions with the Debtors' professionals on developing a Plan to recover and distribute Customer and estate assets.

4. The Adversary Plaintiffs oppose the JPL Motion by the Joint Provisional Liquidators (the "JPLs") for the reasons briefly set forth herein and otherwise in the Debtors' opposition to the JPL Motion. In short, the JPL Motion does not establish that the "application for directions in the Supreme Court of The Bahamas" to resolve "Non-U.S. Law Customer Issues" (the "Application") is necessary or appropriate – rather than instead causing additional confusion, complication, and expense – and the JPLs have not demonstrated the elements required for relief from the automatic stay.

5. At the outset of these Chapter 11 cases, Mr. Ray revealed the "complete failure of corporate controls and . . . a complete absence of trustworthy financial information" at the FTX Group (ECF No. 24 ¶ 5). More recently, it has become clear that "the FTX Group did not maintain reliable lists of bank or trading accounts, cryptocurrency wallets, or authorized signatories" (ECF No. 1242-1 p. 15). Put simply, the two investment platforms – FTX.com and FTX.US – together were a sham used by the Adversary Defendants as a conduit to convert Customer Deposits to the Adversary Defendants' own wrongful purposes. It is now uncontroverted that Customer Deposits were not segregated and there were no separate Customer wallets or cold wallets securing Customer Deposits. In most, if not all cases, the Adversary Defendants transferred the converted Customer Property across the various entities in the FTX Group in service of their own objective – which were unknown to Customers and served no legitimate business purpose.

6. In a very real sense, the Adversary Defendants operated a Ponzi-like scheme where comingled customer deposits were reflected in sham accounts and converted to the Adversary Defendants own ends. The recovery of comingled Customer Property should be led by a U.S. Bankruptcy Court such as this Court, which is best positioned to oversee the recovery and equitable distribution of Customer Deposits on an expedited basis. No legitimate purpose can possibly be served by having the JPLs duplicate the efforts already underway in this Court in a court in the Bahamas.

7. The JPL Motion simply does not demonstrate that the involvement of the Supreme Court of the Bahamas would make recovery and the equitable distribution of Customer Deposits more efficient than centralizing the entire process in this Court. Indeed, the JPLs – whose duty is also to Customers and creditors – are advocating a process that will make the recovery and disposition of property more confusing, complex and inefficient while, at the same time, creating totally unnecessary costs to Customers and the Debtors' estates by engendering duplicative-parallel proceedings here and in the Bahamas. There are also serious questions about whether the release of information to facilitate proceedings in the Bahamas is wise from a security standpoint where, as here, the day after these Chapter 11 cases were commenced, it appears that "at the direction of Bahamian authorities, Bankman-Fried and/or Wang used private keys they had in their possession to transfer hundreds of millions of dollars' worth of [assets] out of Debtor wallets and into cold wallets in Bahamian custody" (ECF 1242-1 at 42).

8. More significantly, the JPLs have not demonstrated that controlling or complicated questions of foreign law need to be resolved to administer Debtors' estates and recover and distribute Customer Property (or other estate assets) to victimized Customers. The JPLs' assertion that 6% of Customer accounts at FTX.com migrated to FTX Digital (Motion ¶ 4, 12) is

unsubstantiated. Indeed, it is unclear that *any* Customer Property was transferred to the custody of FTX Digital or the JPLs or is otherwise located in the Bahamas.[3]

9. In fact, the facts suggest the contrary. The filings in these Chapter 11 cases, including Mr. Ray's April 9, 2023 report, establish that the Senior Management Defendants used Customer Property as a piggy bank, and moved such property freely across myriad companies within the FTX Group without regard to the ownership or location of Customers or the terms of service of FTX.US or FTX.com. (ECF No. 1242 at 3, 15-18, 24-26). As alleged in the Customer Adversary Proceeding complaint and as widely reported, it is now equally clear that the Senior Management Defendants lied about or concealed their conversion of Customer Property and the reckless and fraudulent conduct in every aspect of their business. There were no individual digital wallets, no cold wallets, and no segregated customer assets. In essence, the exchanges and everything about them were fiction created by the Senior Management Defendants. These facts are now beyond dispute and establish that the core argument raised by the JPLs – that determinations of English, Antiguan, or Bahamian law are necessary to undo the harm done by the Senior Management Defendants' criminal behavior – is illusory and unsupported.

10. However, even assuming, *arguendo*, that English, Antiguan, or Bahamian law apply to the disposition of some estate property or Customer Property that was converted by the defendants in the Bahamas or otherwise misdirected to or misused in the Bahamas, Federal Rule of Civil Procedure 44.1 contemplates that U.S. Courts can and will make determinations of foreign law – and indeed Delaware bankruptcy courts routinely do so with the assistance of foreign law

[3] Despite the JPL Motion's significant focus on the FTX Group's location in the Bahamas, it is irrelevant that 83 employees of the FTX Group, including senior management, worked for FTX Digital in the Bahamas, that as many as 700 FTX employees would have eventually worked and lived in the Bahamas, or that the FTX Group purportedly had "expansive, long term plans to center its enterprise in The Bahamas" on an newly built campus. (JPL Motion ¶¶ 25-29). The locus of the FTX Group in the Bahamas is irrelevant, where, as here, the Customers' missing property is not located there.

experts. *See*, *e.g.*, *In re SpA*, 645 B.R. 48, 58 (D. Del. Bankr. 2022) ("One common source that judges rely upon in determining foreign law are the affidavits of lawyers who practice law in the country at issue, or who are from the country at issue and are familiar with its laws."). The JPLs' argument that this Court's determination of foreign legal issues would cause the estates to "incur millions more in fees for expert testimony and for U.S. lawyers just to learn the outer bounds of non-U.S. law" (JPL Motion ¶ 77) is overstated. But more importantly, it woefully fails to acknowledge the exponentially greater cost of litigating Customer-related issues and the marshalling of assets in duplicative parallel proceedings contemporaneously in this Court and in the Bahamian Supreme Court (to the extent there is even any Customer Property in the Bahamas).

11. For all the reasons set forth above, the JPLs' Motion simply does not meet the three-pronged standard to lift the automatic stay.[4] *First*, the Customers and Debtors will suffer significant hardship from the unnecessarily added complexity, duplication of effort, and expense of resolving issues in the Bahamas that the Federal Rules contemplate can and should be resolved by this Court. *Second*, the JPLs have not demonstrated any hardship by maintenance of the stay, let alone one that outweighs the hardship to Customers and the Debtors' estates.[5] *Third*, the JPLs claim the "Merits Weigh In Favor of Lifting the Stay" (JPL Motion ¶¶ 78-79), but do not even attempt to identify any disputed "merits" or how they can or will "prevail." The JPLs only state that the FTX Group "had a plan to move the international operations to the Bahamas," "began to execute on that plan by . . . moving the FTX Group's management team to The Bahamas," and the

[4] *See*, *e.g.*, *In re Windhaven Top Insurance Holdings, LLC*, 636 B.R. 596, 604 (Bankr. D. Del. 2021) ("Courts apply a three-pronged standard: (1) whether any great hardship will be suffered by the bankruptcy estate from lifting the stay; (2) whether the hardship to the non-debtor party by maintenance of the stay outweighs the hardship to the estate; and (3) the probability of the non-debtor prevailing on the merits.").

[5] *See Windhaven*, 636 B.R. at 605 ("[Movant's] only argument regarding its hardship is its preference to have the Disputed Funds decided by the Texas Receivership Court. A preference is not a hardship, and . . . [movant] has made no showing of hardship in having this matter litigated in this Court.").

"U.S. Debtors have also admitted that at least some International Customers of FTX Trading migrated to FTX Digital." Not only is it unclear if any trading actually migrated to FTX Digital, but this is also not evidence that the locus of any property is in the Bahamas or in the customer of the PJLs, the need for the resolution of issues by Bahamian courts, or any other issue on which the JPLs need relief. Indeed, now is certainly not the time for an unnecessary tug-of-war between Debtors and the JPLs, particularly if, as Debtors have suggested, the JPLs are "fiduciaries with no constituency but themselves." (JPL Motion ¶ 9).

12. Finally, the JPLs also assert that "considerations of comity and judicial economy support lifting the stay by allowing the key issues of English, Antiguan, or Bahamian law to be resolved by the court . . . particularly where its rulings will have far-reaching implications for bankruptcies of cryptocurrency companies across the entire Commonwealth." (JPL Motion ¶ 11). With due respect to the JPLs and the Bahamian court, Customers of the FTX Group have lost billions of dollars in Customer Property and resolution of issues in this case that will hopefully expedite the return of property to Customers should not be treated as a trial balloon for the Bahamian court to set precent for future cases.

13. In sum, given the (i) nature and extent of the Debtors' estates; (ii) well-organized and advancing Chapter 11 cases before this Court; (iii) ongoing efforts of the Debtors' professionals and advisors in seeking to locate and recover Debtors' assets and Customer Property; (iv) prosecution of the Customer Adversary Proceeding in this Court; and (v) well-developed U.S. jurisprudence in instances where customer funds that should have been segregated are misappropriated by exchanges and investment companies,[6] the Customer Adversary Plaintiffs

[6] *See, e.g., In re MF Global Inc.*, No. 11-2790, 2012 WL 1424670 (Bankr. S.D.N.Y. Aug. 24, 2012); *In re Madoff*, 542 B.R. 100 (Bankr. S.D.N.Y. 2015).

strongly believe that, at this point, no showing has been made by the JPLs that resolution of issues of foreign law by the Bahamian Courts is necessary to identify, recover, and distribute assets to Customers, and such processes should thus remain centralized in this Court. This Court is best positioned to properly address the recovery and equitable distribution of Customer Property – of which, at most, a very small portion appears to be in the Bahamas. Certainly, there are real property and other estate assets in the Bahamas that should be marshalled for the benefit of Customers during this process, but marshalling and distribution of those assets is best served by the proceedings in this Court and does not require the relief the JPLs seek here.

**Joinder**

14. The Customers Adversary Plaintiffs hereby also join in the arguments in Debtors' Objection to the JPL Motion to the extent not reflected above, and further reserve all rights, arguments and objections concerning the Motion that may arise from subsequent filings by the JPLs or other parties.

Dated: May 3, 2023
Wilmington, Delaware

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**

*/s/ Robert K. Kriner, Jr.*
Robert K. Kriner, Jr.
2711 Centerville Rd, Suite 201
Wilmington, Delaware 19808
Tel. (302) 656-2500
robertkriner@chimicles.com

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel: (512) 710-5960
aentwistle@entwistle-law.com

Robert N. Cappucci (*pro hac vice*)
Joshua K. Porter (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, NY 10169
Tel: (212) 894-7200
Fax: (212) 894-7272
rcappucci@entwistle-law.com
jporter@entwistle-law.com

*Counsel for Adversary Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar*