## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 233, 487, 1341, 1342 & 1344** |

**SUPPLEMENTAL DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF
ENTRY OF THE ORDER (I) APPROVING THE LEDGERX BUSINESS PURCHASE
AGREEMENT, (II) APPROVING THE SALE OF THE LEDGERX BUSINESS FREE
AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES,
(III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND (IV) GRANTING RELATED RELIEF**

I, Bruce Mendelsohn, hereby declare as follows:

1.      I am a Partner in the Advisory Group at Perella Weinberg Partners L.P.

("PWP"), a financial advisory firm that maintains an office at 767 5th Avenue, New York, New

York 10153, and the Debtors' investment banker.  PWP is a full-service investment banking firm

providing strategic and financial advisory services, including with respect to mergers and

acquisitions, capital raising and restructuring transactions across a broad range of industries.

PWP and its professionals have extensive experience with respect to the reorganization and

restructuring of distressed companies, both out of court and in Chapter 11 proceedings.

2.      On April 26, 2023, I submitted a declaration [D.I. 1344] (the "Initial

Declaration") in support of the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid*

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete
list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd
is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

*Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of*

*Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling*

*Auction(s) and Sale Hearing(s) and (II)(A) Approving the Sale(s) Free and Clear of Liens,*

*Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of*

*Executory Contracts and Unexpired Leases* [D.I. 233] (the "<u>Motion</u>")[2] and entry of an order (the

"<u>Order</u>"), a proposed form of which is attached as Exhibit B to the *Notice of (I) Successful*

*Bidder for the LedgerX Business and (II) Filing of the LedgerX Business Purchase Agreement*

filed at D.I. 1342. The Order would approve Debtor Ledger Holdings Inc.'s ("<u>Seller</u>") entry into,

and performance under, the Interest Purchase Agreement, dated as of April 25, 2023 (the

"<u>Purchase Agreement</u>"), by and among Seller, M 7 Holdings, LLC, a Delaware limited liability

company ("<u>Buyer</u>") and, solely for purposes set forth therein, Miami International Holdings,

Inc., a Delaware corporation ("<u>Guarantor</u>"), whereby Seller agreed, among other things, to sell

100% of the membership interests of non-Debtor LedgerX LLC ("<u>LedgerX</u>") (such equity

interests, the "<u>LedgerX Interests</u>") to Buyer, to assume and assign to Buyer the contracts on

Section 1.6(a) of the Seller Disclosure Schedule (as defined in the Purchase Agreement) (the

"<u>Assumed Contracts</u>"), to assign to LedgerX the contracts listed on Section 1.6(j) of the Seller

Disclosure Schedule (the "<u>Non-Executory Assigned Contracts</u>" and, together with the Assumed

Contracts, the "<u>Assigned Contracts</u>") and to sell the claims set forth in Section 5.3(a) of the

Purchase Agreement (the "<u>Acquired Claims</u>") and the claims set forth in Section 5.3(b) of the

Purchase Agreement (the "<u>Coverage Claims</u>" and, together with the LedgerX Interests, the

Assigned Contracts and the Acquired Claims, the "<u>LedgerX Business</u>") on the terms and subject

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Initial
Declaration.

to the conditions set forth in the Purchase Agreement (the "Sale Transaction"). The Order would also approve the Sale Transaction and grant related relief. I now submit this supplemental declaration (this "Supplemental Declaration") in further support of the Motion and the Order.

3.      Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon: (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"); (ii) information learned from my review of relevant documents; and/or (iii) information supplied by members of the Debtors' management, employees of PWP working directly with me or under my supervision, direction or control, and/or from the Debtors' other professionals and advisors.

4.      I am over the age of 18 and authorized to submit this Supplemental Declaration on behalf of the Debtors. I am not being compensated for this testimony other than through payments to be received by PWP as a professional the Debtors have retained; none of those payments are specifically payable on account of this testimony. If I were called upon to testify, I could and would testify competently to the facts set forth in this Supplemental Declaration.

5.      The Initial Declaration included details regarding, among other things, my qualifications, the Debtors' marketing and sale process for the LedgerX Business, and the selection of Buyer's bid as the highest or otherwise best bid for the LedgerX Business and Buyer as the Successful Bidder. Except as modified or supplemented by this Supplemental Declaration, my testimony offered in connection with the Initial Declaration remains true and correct to the best of my knowledge, information and belief and is incorporated herein by reference.

4854-4698-2497 v.2

6.      As described in the Initial Declaration, the Debtors' marketing process yielded two bids, which the Debtors, in consultation with the Consulting Professionals, deemed to be Qualified Bids in accordance with the Bid Procedures.  One of such Qualified Bids was submitted by Buyer, and the other was submitted by OKC USA Holding Inc. ("OKC"), referred to in the Initial Declaration as Bidder B.  According to an initial letter from OKC that was submitted with its Qualified Bid, the majority ultimate beneficial owner (73.15%) of OKC is Mingxing Xu.

7.      As described in the Initial Declaration, the Debtors were unable to reach satisfactory terms with OKC on April 4, 2023.  Shortly thereafter, OKC requested the return of its deposit, and on April 10, 2023, the Debtors instructed the Debtors' escrow agent to refund OKC's deposit.

8.      Subsequently, on April 17, 2023, OKC contacted me and certain other members of the PWP team expressing an interest in re-engaging on the sale process.  The Debtors and their advisors continued to discuss a potential transaction with OKC and its advisors, while also negotiating a transaction with Buyer.  However, OKC did not submit a binding proposal or requalify as a Qualified Bidder following the refund of its deposit. Following extensive negotiations with Buyer, the Debtors, after consultation with the Consulting Professionals, determined Buyer's bid to be the highest or otherwise best bid for the LedgerX Business and declared Buyer to be the Successful Bidder.  On April 25, 2023, Seller, Buyer and Guarantor entered into the Purchase Agreement.  On the same date, the Debtors filed a *Notice of (I) Successful Bidder for the LedgerX Business and (II) Filing of the LedgerX Business Purchase Agreement* [D.I. 1342] announcing Buyer as Successful Bidder and attaching a copy of the Purchase Agreement.

-4-

9.      On April 28, 2023, the Debtors received an unsolicited offer letter from OKC (the "April 28 OKC Letter").  Per the terms of the April 28 OKC Letter, OKC offered to acquire the LedgerX Business on substantially the same terms as those agreed with Buyer and Guarantor, exclusive of certain avoidance claims to be acquired by Buyer.  In the April 28 OKC Letter, OKC indicated that its bid could be closed expeditiously after court approval, as OKC would no longer require the approval of the Committee on Foreign Investment in the United States ("CFIUS") for the transaction.  This represented a shift in OKC's position relative to its initial bid and, to my understanding, statements throughout the sale process of OKC and its advisors, which conditioned closing of any transaction on CFIUS approval.

10.     The Debtors, in conjunction with their advisors and the Consulting Professionals, reviewed and discussed OKC's proposal as set forth in the April 28 OKC Letter. Conversations focused on, among other things, the absence of any greater cash consideration in the OKC proposal than the proposed transaction with Buyer, closing certainty, what I understand to be the increased regulatory risk profile of OKC relative to Buyer, and the potential for an elongated time period to closing a transaction with OKC relative to the proposed transaction with Buyer.  My understanding is that, unlike Buyer, which has CFTC-registered affiliates, neither OKC nor its affiliates are regulated by or have previously had substantial interactions with the CFTC.  Additionally, while the April 28 OKC Letter indicated that OKC would not require CFIUS approval of the transaction, the Debtors do not have at this time sufficient information to confirm whether CFIUS review of a potential transaction with OKC is mandatory or probable.

11.     Accordingly, management of the Debtors, after consultation with the Debtors' advisors and the Consulting Professionals, determined that in order to be in a position to recommend to the boards of directors of the Debtors the termination of the Purchase

-5-

Agreement and entry into an agreement with OKC for the sale of the LedgerX Business, any overbid from OKC would need to include additional terms to provide added closing certainty. To help address the heightened regulatory concerns presented by the OKC offer (that do not exist in a transaction with Buyer) and to address the cost and risk to the Debtors of potential delay in closing the transactions, the Debtors responded to OKC with the following terms:

- Per the terms of the April 28 OKC Letter, the exclusion of any Acquired Claims with respect to Additional Protected Persons (each as defined in the Purchase Agreement).

- A Purchase Price of $35 million *plus* $2 million for every 30 days after May 30th by which the transaction has not closed, which is inclusive of Regulatory Cash (as defined in the Purchase Agreement).  Consistent with the Purchase Agreement, such consideration would include Regulatory Cash (as defined in the Purchase Agreement) and any excess operating cash of LedgerX would still be dividended out to the Debtors.

- An increased Good Faith deposit of $15 million, which, at Seller's option, would be retained by Seller if CFIUS requests a CFIUS filing in connection with the transaction and Seller terminates such agreement in connection therewith. Such Good Faith deposit would also be retained by Seller if the agreement was terminated by Seller in the event the proposed transaction outside date (July 25, 2023) was reached and at such time any of the required regulatory approvals have not been obtained, a governmental entity had enacted an order or law prohibiting the transactions, or as a result of OKC breaching the regulatory covenants set forth in the purchase agreement;

- Additional regulatory covenants and commitments from OKC focused on the CFTC notice process and, if applicable, CFIUS approval, including a commitment to provide certain specified information and representations to the CFTC in connection with its notice process.

- A buyer representation that the transactions contemplated by its purchase agreement would not require a filing with CFIUS.

- A "springing" closing condition requiring CFIUS approval if CFIUS requested a filing be made in connection with the transaction.

- Deletion of certain language present in the CFTC closing condition in the agreement with Buyer.

4854-4698-2497 v.2

The Debtors also requested a description of the basis on which OKC had changed its position and determined that a CFIUS filing was not required.  The Debtors, through their advisors, communicated the counterproposal by email to OKC's advisors on April 30, 2023.

12.    On May 1, 2023, the Debtors received another letter from OKC (the "May 1 OKC Letter") acknowledging the Debtors' emailed counterproposal but stating they had rejected the Debtor's requested terms and attaching sale documentation reflecting changes to the Purchase Agreement signed with Buyer consistent with the April 28 OKC Letter.  At the same time, the Debtors received a $3.5 million deposit from OKC into the Debtors' escrow account for the sale of the LedgerX Business.  OKC provided no explanation as to why it believes it no longer needs CFIUS approval as condition to closing.  In all other respects, OKC's proposed purchase documentation was unresponsive to the Debtors' April 30 proposal.  For example, OKC refused to commit to provide the information and make the representations that, to my understanding, the CFTC told the Debtors would be required. OKC also removed the $750,000 cap contained in the Purchase Agreement with the Buyer which is applicable to any post-closing adjustment of the purchase price.

13.    On May 2, 2023, the boards of directors of Ledger Holdings Inc. and West Realm Shires Inc. met with the Debtors' management and advisors and reviewed the May 1 OKC Letter and attached documentation, alongside the agreed transaction with Buyer as reflected in the Purchase Agreement.  During such meeting, the respective boards of directors determined in their business judgment to proceed with the transaction with Buyer as the best or otherwise highest bid for the LedgerX Business, considering, among other factors, consideration offered, closing certainty, and risk of delay.

4854-4698-2497 v.2

14.     For the reasons described above, I believe that the Purchase Agreement continues to represent the highest and best offer for the LedgerX Business and that the sale of the LedgerX Business to Buyer pursuant to the Purchase Agreement will provide a greater risk-adjusted recovery for the Debtors' estates than would be provided by any other reasonably available alternative.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 3, 2023.

/s/ Bruce Mendelsohn
Bruce Mendelsohn
Partner
Perella Weinberg Partners L.P.

4854-4698-2497 v.2