# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Obj. Deadline**: May 10, 2023 at 4:00 p.m. (ET)<br>**Hearing Date**: May 17, 2023 at 1:00 p.m. (ET) |

## MOTION OF THE DEBTORS FOR ENTRY AN ORDER (I) ENFORCING THE AUTOMATIC STAY AND (II) AWARDING THE DEBTORS ATTORNEYS' FEES AND EXPENSES

Debtors FTX Trading Ltd. ("FTX Trading"), FTX Canada Inc. ("FTX Canada"), and their affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion ("Motion") for entry of an order substantially in the form attached hereto as Exhibit 1 (the "Order"), pursuant to sections 362 and 105 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code"), for entry of an order (i) enforcing the automatic stay against Pateno Payments Inc. ("Pateno") and their pursuit of the Pateno Litigation (as defined below) and (ii) awarding the Debtors attorneys' fees and expenses against Pateno for its willful violation of the automatic stay and this Court's Automatic Stay Order. In support of the Motion, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT[2]

1. In February 2023, more than three months after the commencement of these Chapter 11 Cases, Pateno initiated the Pateno Litigation against Debtor FTX Canada and the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the body of this

{1368.002-W0070764.}

Escrow Agent in the Court of King's Bench of Alberta, Canada. Through that litigation, Pateno seeks an order compelling the release of a $2,000,000 deposit made by FTX Canada prior to filing its bankruptcy petition with this Court in connection with a transaction that has not closed. The deposit has been held at all times by the Escrow Agent in the name of FTX Canada. The Debtors' ongoing investigation into the underlying transaction—to purchase the shares of the Canadian cryptocurrency exchange Bitvo Inc.—reveals that FTX Canada had on the Petition Date and continues to have a property interest in the deposit.

2. If Pateno claims an entitlement to that $2,000,000 deposit, its options are to file a claim in these Chapter 11 Cases, or file a motion with this Court seeking stay relief to pursue its claims in Canada. Pateno had done neither. Instead, despite being put on express notice of the Debtors' property interest in the deposit and the application of section 362 of the Bankruptcy Code by letter in December 2022, Pateno consciously made the decision to ignore both the automatic stay and this Court's Automatic Stay Order, and filed litigation against FTX Canada in Canada.

3. As a result, FTX Canada requires assistance from this Court to stop Pateno's willful stay violation and to hold it accountable. These chapter 11 cases are global in scope and massive in reach. The Debtors' ability to effectively manage their complex worldwide restructuring and resolve potentially millions of creditor claims is jeopardized by the type of self-help that Pateno has undertaken to commence litigation at a time and place of its choosing. That is precisely what the automatic stay prevents. The Debtors therefore request entry of the Order, which FTX Canada will take to the Canadian Court and seek its enforcement there.

---

Motion.

## BACKGROUND

### A. The Debtors and Their Chapter 11 Cases

4. On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

5. On November 22, 2022, this Court entered its *Order Enforcing Sections 362, 365(e)(1), 525 and 541 of the Bankruptcy Code* [D.I. 137] (the "Automatic Stay Order"), which, among other things, provides that pursuant to section 362(a) of the Bankruptcy Code, all persons—regardless of whether located in the United States or a foreign jurisdiction, "are stayed, restrained, and enjoined from . . . taking any action, whether inside or outside the United States, to obtain possession of property of the estates or to exercise control over property, wherever located, of the Debtors' estates." (Automatic Stay Order ¶ 2(d).) In addition, the Automatic Stay Order specifically requests that courts of competent jurisdiction "take all appropriate measures required to enforce and recognize these Chapter 11 Cases, including, but not limited to, application of the worldwide automatic stay and all other orders entered in these Chapter 11 Cases in the relevant jurisdiction." (*Id.* ¶ 4.)

---

[3] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

6. Additional pertinent factual background regarding the Debtors' businesses and the commencement of these Chapter 11 Cases are set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] and the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92].

**B.    The SPA, Escrow Agreement and Deposit**

7. Prior to the Petition Date, FTX Canada, FTX Trading, and Pateno , a corporation existing under the Laws of the Province of Alberta, entered into a share purchase agreement, dated as of June 14, 2022 (the "SPA").

8. The SPA contemplated the purchase by FTX Canada from Pateno of all of the issued and outstanding shares in the capital of Bitvo Inc., a cryptocurrency exchange organized as a corporation existing under the Laws of the Province of Alberta ("Bitvo"), for $12,500,000 (subject to certain adjustments). (Ex. A at § 2.1.)[4]

9. The SPA provided that FTX Canada would deliver a deposit of $2,000,000 (the "Deposit") to TSX Trust Company, a company existing under the laws of Canada (the "Escrow Agent"), to be held in an interest-bearing account with interest to accrue to the account of FTX Canada. (Ex. A at § 2.5.)

10. In connection with the entry into the SPA, FTX Canada, Pateno and the Escrow Agent, also entered into a cash escrow agency agreement, dated as of June 14, 2022 (the "Escrow Agreement") pursuant to which FTX Canada delivered the Deposit to the Escrow Agent. The Escrow Agreement provides that the Deposit will be held by the Escrow Agent in the name

---

[4]  With the exception of the proposed Order attached hereto as Exhibit 1, all citations to exhibits refer to documents attached the *Declaration of Brian D. Glueckstein In Support of the Motion of the Debtors for Entry of an Order (I) Enforcing the Automatic Stay and (II) Awarding the Debtors Attorneys' Fees and Expenses*.

of FTX Canada. (Ex. B at § 3.2.) Under the terms of the Escrow Agreement, the Deposit may only be released by a joint direction to the Escrow Agent from FTX Canada and Pateno. (*Id*. at § 3.3.)

11. As a condition to closing, the SPA required that Pateno seek and obtain pre-approval of the transaction from the Canadian Securities Administrators ("<u>CSA</u>"). (Ex. A at § 6.5.) As of the Petition Date, the CSA pre-approval had not been obtained, and the various closing conditions had not been met. As a result, on the Petition Date, neither FTX Canada nor Pateno was obligated to close the transaction under the terms of the SPA.

12. The SPA also contains certain termination provisions. (*Id.* at § 5.) Critically, none of the termination events are automatic; rather if a termination event occurred in favor of a party, termination would only become effective "in each case, with immediate effect upon delivery of written notice of termination or upon entering into a mutual agreement . . . ." (*Id.*) Termination rights vest upon (a) by written agreement of FTX Canada and Pateno; (b) FTX Canada in the event of certain breaches by Pateno; (c) Pateno in the event of certain breaches by FTX Canada; (d) either FTX Canada or Pateno if the closing date has not occurred by the specified "Outside Date"; and (e) either party for certain orders and injunctions with respect to the transaction. (*Id*.)

13. The SPA originally specified October 14, 2022, as the Outside Date. However, on October 3, 2022, FTX Canada and Pateno agreed to extend the Outside Date to November 14, 2022. (Ex. H.) As a result, the Outside Date did not occur until *after* the Petition Date.

14. The basis by which the SPA is terminated matters with respect to resolving the dispute over the Deposit. In some termination scenarios the Deposit is to be paid to Pateno. In others the Deposit is to be returned to FTX Canada. In still others the Deposit is to be split.

More specifically, in the event of termination of the SPA (i) by Pateno for certain breaches by FTX Canada or (ii) by either FTX Canada or Pateno if the closing date has not occurred by the Outside Date due to failure to obtain, among other things, the CSA approval, then the SPA contemplates either 50% or all of the Deposit, as applicable, and any accrued interest thereon, shall be released to Pateno. (*Id*. at § 5.2(c).)  In the event of termination of the SPA *in any other circumstances*, the SPA provides that the Deposit and any accrued interest thereon shall be returned in full, without deduction or set-off, to FTX Canada. (*Id*. at § 5.2(d).)  As of the Petition Date, the SPA was in full force and effect.

### C. Pateno's Willful Violation of the Automatic Stay

15. On November 15, 2022, Pateno executed a notice (the "Termination Notice") purporting to terminate the SPA with immediate effect in accordance with Section 5.1(d) of the SPA, which is the provision stating that either FTX Canada or Pateno may elect to terminate if the closing date shall not have occurred on or before the Outside Date.  (Ex. C.)  The Termination Notice was accompanied by a form of joint direction to the Escrow Agent instructing release of the Deposit to Pateno and executed on behalf of Pateno.  FTX Canada did not countersign the form of joint direction.

16. On December 5, 2022, Pateno sent a letter to FTX Canada threatening legal action in the event FTX Canada did not agree to release the Deposit to Pateno by executing the joint direction on or before December 16, 2022 (the "December 5 Letter").  (Ex. D.)

17. On December 16, 2022, the Debtors' bankruptcy counsel sent a letter to Canadian counsel to Pateno on behalf of the Debtors, including FTX Canada (the "Stay Violation Letter"), disputing both that the Termination Notice had any legal effect under the circumstances and that there was any basis to release the Deposit to Pateno.  (Ex. E.)  The Stay Violation Letter

further advised that Pateno's actions to date had included violations of the automatic stay imposed pursuant to the Bankruptcy Code, and that the Debtors reserved all rights and remedies.

18. Importantly, the Stay Violation Letter explained that taking action before the Court of King's Bench of Alberta threatened in the December 5 Letter "would constitute a flagrant violation of the bankruptcy stay" and could subject Pateno to penalties, including costs. (*Id.*)

19. On February 16, 2023, Pateno, with knowledge of the situation detailed on the Debtors' Stay Violation Letter, proceeded to commence an action before the Court of King's Bench of Alberta (the "Canadian Court" and such litigation, the "Pateno Litigation"). The Pateno Litigation seeks (i) a declaration that FTX Canada is not entitled to the Deposit, (ii) an order effecting the release of the Deposit to Pateno notwithstanding the SPA's requirement that the Deposit only be released by a joint direction to the Escrow Agent from FTX Canada and Pateno, (iii) costs and (iv) any further action as the court may deem just.[5] (Ex. F.)

20. On March 31, 2023, FTX Canada asked the Canadian Court for an adjournment to provide the Debtors sufficient time to discuss with their stakeholders and further consider the claims asserted by Pateno. (Ex. G.) The adjournment request noted that FTX Canada would likely seek relief from this Court. (*Id.* ¶ 6.) On April 13, 2023, the Canadian Court granted the Debtors' motion for an adjournment of the Pateno Litigation and set a return date of May 29, 2023.

## JURISDICTION

21. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

---

[5] The case is captioned *Pateno Payments Inc.* v. *FTX Canada Inc. and TSX Trust Company*, No. 2301-02187.

…

Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 362(a)(3) of the Bankruptcy Code. Pursuant to Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion.

## RELIEF REQUESTED

22. By this Motion, the Debtors request entry of the Order, substantially in the form of Exhibit 1 attached hereto, (i) enforcing the automatic stay as to Pateno and the Pateno Litigation, and (ii) awarding the Debtors attorneys' fees and expenses against Pateno for its willful violation of the automatic stay.

## BASIS FOR RELIEF

**I. THE PATENO LITIGATION IS BARRED BY THE AUTOMATIC STAY BECAUSE THE DEPOSIT IS PROPERTY OF THE DEBTORS' ESTATES**

23. Section 362 of the Bankruptcy Code automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). This automatic stay is not limited to property for which the debtor holds title, but rather includes any property "in which the debtor has a legal, equitable or possessory interest," including "beneficial rights and interest that the debtor may have in property of another." *In re Ramirez*, 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995) (citation omitted); *see* 11 U.S.C. § 541(a)(1) (the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case").

24. Moreover, the automatic stay applies even to property "to which the debtor has only an arguable claim of right." *In re Glob. Outreach, S.A.*, 2009 WL 1606769 at *7 (Bankr. D.N.J. June 8, 2009) (quoting *Brown* v. *Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005)); *see also Denby-Peterson* v. *Nu2u Auto World*, 595 B.R. 184, 194 (D.N.J. 2018), *aff'd sub nom. In re Denby-Peterson*, 941 F.3d 115 (3d Cir. 2019) ("property [that is] only arguably a part of the estate is subject to the automatic stay"). The purpose of this rule is to prevent "particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." *Maritime Elec. Co., Inc.* v. *United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). It does this by "centraliz[ing] all prebankruptcy civil claims against a debtor in the bankruptcy court," *McCartney* v. *Integra Nat. Bank N.*, 106 F.3d 506, 511 (3d Cir. 1997), thus allowing this Court to make a final determination of the ownership and disposition of assets, which would be impossible if creditors use proceedings in other courts to raid the estate.

25. This Court's Stay Enforcement Order reaffirmed these principles and specifically ordered that pursuant to section 362(a) of the Bankruptcy Code all persons are enjoined from "taking any action, whether inside or outside the United States, to obtain possession of property of the estates or to exercise control over property, wherever located, of the Debtors' estates or to interfere in any way with the conduct by the Debtors of their businesses, including, without limitation, attempts to seize or reclaim any . . . other assets in which the Debtors have legal or equitable interests . . . ." (Automatic Stay Order ¶ 2(d).)

26. Thus, the "relevant inquiry is whether the Debtors have arguable claims of right to the [Deposit], or a colorable basis for asserting an interest in the [Deposit]." *In re ABC Learning Ctrs. Ltd.*, 2011 WL 4899789, at *2 (Bankr. Del. Oct. 13, 2011).

27. A debtor's interest in property is determined under non-bankruptcy law, and federal bankruptcy law will dictate to what extent that interest is property of the estate. *In re Rosenshein*, 136 B.R. 368 (Bankr. S.D.N.Y. 1992) (citing *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985)). The relevant inquiry is whether the Debtors had a property interest in the Deposit <u>as of the Petition Date</u>. *See In re Shapiro*, 124 B.R. 974, 980 (Bankr. E.D. Pa. 1991) ("Property of the estate includes 'all legal and equitable interests of the debtor in property *as of the commencement of the case*.' 11 U.S.C. § 541(a)") (emphasis added).

28. While the ultimate question of which party is entitled to the Deposit may be more complex, the operative question as to whether FTX Canada has some colorable basis for asserting an interest in it is straightforward. Factors generally considered most significant by courts in determining a debtor's interest in escrowed funds include whether all of the conditions required to have the escrow released to the non-Debtor occurred as of the petition date and whether the debtor delivered the funds into the escrow (and thus retained a legal interest in the property). *See*, *e.g.*, *In re Rosenshein*, 136 B.R. 368, 374 (Bankr. S.D.N.Y. 1992) ("Unless or until the conditions of the escrow arrangement are satisfied, the debtors continue to have a beneficial interest in the [escrow] fund, which interest constitutes property of the estate within the meaning of 11 U.S.C. § 541."); *In re S.H. Leggitt Co.*, 2011 Bankr. LEXIS 1366, at *7-*8 (Bankr. W.D. Tex. Apr. 12, 2011) (finding the fact that the "Debtor appears to have, at least, a contingent interest in the Escrow Funds" under the relevant agreements adequate to hold that the "Debtor's interest is, at a minimum, 'arguable property' of the Debtor's bankruptcy estate"); *In re Missionary Baptist Foundation of America, Inc.*, 792 F.2d 502, 506 (5th Cir. 1986) ("[W]here the contingent of the escrow was not fulfilled prior to bankruptcy, the debtor holds an interest in the property"); *In re Shapiro*, 124 B.R. at 980-82 (holding that escrowed funds were property of the estate on the

grounds that the conditions for the release of the escrowed funds to the non-debtor party set forth in the relevant agreements had not transpired as of the petition date and that the debtor as depositor of the funds into the escrow retained "legal title to the fund").

29. Here, the premise of Pateno's claim is that it sent the Termination Notice after the passage of the Outside Date, on November 15, 2022. But there is no dispute that the purported Termination Notice was sent on November 15, 2022—four days *after* FTX Canada filed its petition in this Court—relying on Section 5.1(d) of the SPA following the occurrence of the November 14, 2022 Outside Date. Thus, there can likewise be no dispute that the SPA had not been terminated as of the Petition Date, and Pateno had not satisfied the conditions required for the Deposit to be released under the terms of the SPA and the Escrow Agreement. Furthermore, Pateno's delivery of the Termination Notice post-petition was itself a violation of the automatic stay because the SPA remained an executory contract on the Petition Date, and has in any event had no effect. *See In re Computer Commc'ns, Inc.*, 824 F.2d 725, 731 (9th Cir. 1987) (attempted termination of joint marketing agreement violated stay even if agreement nonassumable); *In re Tudor Motor Lodge Associates, L.P.*, 102 B.R. 936, 948-51 (Bankr. D. N.J. 1989) (post-petition efforts to terminate an executory contract constitute conduct in violation of the automatic stay).

30. The inquiry then turns to whether FTX Canada had a property interest in the Deposit on the Petition Date under the terms of the SPA. The answer is plainly yes. The SPA specifically provides that FTX Canada is entitled to the return of the Deposit under any circumstances other than upon the occurrence of certain conditions. (Ex. A at § 5.2(d).) As of the Petition Date, the SPA was in full force and effect, and none of the applicable conditions had occurred. Furthermore, the Escrow Agreement required a joint direction by Pateno and FTX Canada prior to the release of any funds (Ex. B at § 3.3), and no joint direction was issued at any

time prior to the Petition Date (or subsequently). The non-occurrence of these conditions leaves FTX Canada with a clear property interest. *See*, *e.g.*, *In re Rosenshein*, 136 B.R. at 374 (finding non-occurrence of conditions to escrow critical in holding funds property of the estate).

31. In addition, there is no dispute that FTX Canada delivered the Deposit to the Escrow Agent, and pursuant to agreed terms, the Escrow Agreement provides that the Deposit is held by the Escrow Agent at all times in the name of FTX Canada. (Ex. B at § 3.2.) Accordingly, as various courts have recognized, the Debtors retained a property interest in the Deposit as of the Petition Date, which constitutes property of the estate under section 541 of the Bankruptcy Code. *See*, *e.g.*, *In re Shapiro*, 124 B.R. at 980-81 ("a significant factor is whether the debtor was the depositor of the escrowed fund, because, if the debtor is the depositor, legal title to the fund remains in the debtor until delivery of the fund is effected by the escrow agent").

32. FTX Canada has far more than a "colorable" claim to ownership of the Deposit. But critically, "[i]t is not necessary at this stage that the Debtors establish an ownership interest in or title to the property[,] and the bankruptcy court need not make that determination at the outset for the automatic stay to apply." *In re ABC Learning Ctrs. Ltd.*, 2011 WL 4899789, at *2.

33. All the Court needs to determine in order to enforce the stay is that there is a meaningful and colorable *dispute* about whether the Deposit is part of the FTX Canada bankruptcy estate. *See In re Kaiser Aluminum Corp., Inc.*, 315 B.R. 655, 659 (D. Del. 2004) (enforcing the automatic stay and rejecting creditor's argument that debtor "has not demonstrated that the property at issue is property of the estate, and [] contend[ing] that it is the rightful owner of the premiums at issue"). "[B]ecause the [assets] likely constitute property of the bankruptcy

estate, the bankruptcy court [may] properly enforce[] the automatic stay under 11 U.S.C. § 362(a)(3)." *In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d at 575.

34. Importantly, enforcing the stay here will not deprive Pateno of anything to which it is entitled. Pateno is free to file its claims in this Court and then will have the opportunity to argue why it is entitled to release of the Deposit because it is not property of the Debtors' estates. Alternatively, Pateno can request relief from the automatic stay from this Court to pursue its claims in Canada. But irrespective of the ultimate outcome on ownership, Pateno "cannot seize property that is arguably part of the estate, and then defend its actions by stating it believes the debtor does not have any interest in it, regardless of what the final determination on ownership of the property is." *In re Manley Toys Ltd.*, 2018 WL 1033426, at *4 (Bankr. D.N.J. Feb. 14, 2018) (citing *Chesnut*, 422 F.3d at 303), *aff'd*, 2019 WL 3229301 (D.N.J. July 18, 2019).

## II. PATENO'S VIOLATION OF THE AUTOMATIC STAY PREJUDICES THE DEBTORS' CLAIM FOR RECOVERY OF THE DEPOSIT

35. The SPA was, as of the Petition Date, an executory contract which the Debtors were entitled to determine whether to assume or reject pursuant to section 365 of the Bankruptcy Code. *In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010); *In re Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."). Pateno has not asserted that the SPA automatically terminated (because it cannot) or was terminated prior to the Petition Date.

36. Importantly, the Deposit would be returned to the Debtors under the terms of the SPA if and when the Debtors reject that agreement. (*See* Ex. A. at § 5.2(d).) In that scenario, Pateno would be entitled to assert a claim due to the rejection of the SPA, which would then be addressed in the Debtors' claims process in this Court at the appropriate time. In contrast, Pateno

seeks through the Pateno Litigation the immediate release of the Deposit relying solely on non-bankruptcy law and its purported Termination Notice. The need to consider both bankruptcy and non-bankruptcy law, as well as the facts and circumstances facing the Debtors, is precisely why the automatic stay centralizes claims against the Debtors in the bankruptcy court. *McCartney*, 106 F.3d 506 at 511. Permitting the Pateno Litigation to proceed unabated in the Canadian Court could harm the ability of FTX Canada to recover the Deposit.

### III.   PATENO'S WILLFUL VIOLATION OF THE AUTOMATIC STAY WARRANTS THE AWARD OF COSTS AND ATTORNEYS' FEES

37.     Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of the [automatic] stay . . . shall recover actual damages, including costs and attorneys' fees. . . . ." 11 U.S.C. § 362(k)(1). The Third Circuit has held that a corporate debtor has standing under section 362(k) of the Bankruptcy Code to recover damages for willful violations of the automatic stay. *See Cuffee* v. *Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Dev. Corp.)*, 901 F.2d 325, 329 (3d Cir. 1990). A willful violation of the automatic stay occurs when the offending party knows of the automatic stay and takes intentional action to violate it. *Id.*; *In re Lansdale Family Restaurants*, 977 F.2d 826, 829 (3d Cir. 1992). Furthermore, a willful violation of the automatic stay "does not require a specific intent to violate the automatic stay . . . [but only] that the [offending party] knew of the automatic stay and that the [offending party's] actions which violated the automatic stay were intentional." *Cuffee*, 901 F.2d at 329. Pateno willfully violated the automatic stay by filing the Pateno Litigation with full knowledge of the Debtors' Chapter 11 Cases and the Debtors' position with respect to the applicability of section 362(a) of the Bankruptcy Court no later than December 16, 2022. (*See* Ex. E.) Nor did Pateno seek permission from this Court to file the Pateno Litigation in the Canadian Court two months later, on February 16, 2023.

38. An award of attorneys' fees and expenses to FTX Canada is appropriate under the circumstances and given the importance of the worldwide automatic stay to the Debtors' ongoing worldwide restructuring efforts.

## RESERVATION OF RIGHTS

39. The Debtors expressly reserve, and do not waive, any and all of their rights, claims, causes of action, remedies, and defenses, in any and all courts and jurisdictions, under law or in equity, in connection with the SPA, the Deposit, the Bankruptcy Code, applicable law or otherwise against Pateno, any of its affiliates and any and all third-parties.

## NOTICE AND NO PRIOR REQUEST

40. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for Pateno; (h) counsel for the Escrow Agent; (i) and to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

41. No prior application for the relief requested herein has been made by the Debtors to this or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form of Exhibit 1, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: May 3, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>        brown@lrclaw.com<br>        pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>        bromleyj@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |