# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD.,[1] | Case No. 22-11068 (JTD) |
| Debtor. | (Jointly Administered) |
| | Re: Dkt. No. 1192 |

**STATEMENT OF THE AD HOC GROUP OF CUSTOMERS
IN PARTIAL SUPPORT OF THE MOTION OF THE JOINT PROVISIONAL
LIQUIDATORS FOR A DETERMINATION THAT THE DEBTORS' AUTOMATIC
STAY DOES NOT APPLY TO, OR IN THE ALTERNATIVE, FOR RELIEF FROM THE
STAY FOR FILING OF, THE APPLICATION IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE BAHAMAS SEEKING RESOLUTION OF
<u>NON-U.S. LAW AND OTHER ISSUES</u>**

The Ad Hoc Group of Customers of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (the "<u>Ad Hoc Group</u>"), by and through its attorneys, Venable LLP, respectfully submits this Statement (the "<u>Statement</u>") in partial support of the *Motion of the Joint Provisional Liquidators For a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or In the Alternative, For Relief From Stay for Filing of, the Application in the Supreme Court of the Commonwealth of the Bahamas Seeking Resolution of Non-U.S. Law and Other Issues* [Dkt. No. 1192] (the "<u>Motion</u>")[2] and respectfully states as follows:

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors (the "U.S. Debtors") and the last four digits of their federal tax identification numbers is not provided here. A complete list of such information may be obtained on the website of the U.S. Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not otherwise defined herein shall have the same meaning herein as is ascribed to such terms in the Motion.

**BACKGROUND**

**The Chapter 11 and Chapter 15 Cases**

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, with FTX Trading, the "Debtors") filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [Dkt. No. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Dkt. No. 231].

2. Prior to the filing of the U.S. Debtor's chapter 11 petitions, the Securities Commission of The Bahamas (the "SCB") suspended the registration of FTX Trading Digital Ltd. (the "FTX Digital"), and on November 10, 2022, FTX Digital became a debtor in provisional liquidation (the "Provisional Liquidation Proceedings") in the Supreme Court of the Commonwealth of the Bahamas (the "Bahamas Court").

3. On November 15, 2022, Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves (collectively, the "JPLs"), in their capacity as the joint provisional liquidators of FTX Digital, filed a petition on behalf of FTX Digital for recognition of a foreign proceeding under chapter 15 of the Bankruptcy Code, commencing this Chapter 15 Case. By order, dated February 15, 2023, this Court recognized FTX Digital's Provisional Liquidation Proceedings as

the "foreign main proceeding" and the JPLs as the "foreign representatives" of the FTX Digital estate in the United States. [Case No. 22-11217, Dkt. No. 129].

**The JPLs' Motion**

4.      On March 29, 2023, the JPLs filed the Motion, apparently in response to an adversary proceeding commenced by the Debtors[3] and the Debtors' refusal to permit them to invoke the jurisdiction of the Bahamas Court to obtain directions as to the Non-U.S. Law Customer Issues.  The JPLs define the Non-U.S. Law Customer Issues to include those issues that relate "to the identification and protection of FTX Digital's accountholders, customers, and creditors" and specifically "(i) to identify which persons or entities were or are FTX Digital's accountholders, customers, and creditors, (ii) to determine the legal relationship between FTX Digital and those who are identified as such, and (iii) to recover assets for all FTX Digital's stakeholders to be distributed in accordance with Bahamian law and procedure." Motion ¶ 2.

5.      The JPLs argue that resolving the Non-U.S. Law Customer Issues turn on key questions of the laws of the Bahamas, Antigua & Barbuda ("Antigua") and England (the "UK") (collectively, the "Foreign Laws"), not U.S. law, and that the JPLs must file a directions Application in order to provide the Bahamas Court with the procedural predicate to review and determine the Non-U.S. Law Customer Issues.  The JPLs further claim that the Application is neither an action against the Debtors, nor does it seek to obtain possession of property or exercise control over the Debtors' property, as it simply requests the Bahamas Court to make determinations but take no action based on those determinations.  As such, they argue that the automatic stay under Section 362(a) does not apply to the filing by the JPLs of the Application.

---

[3] *See Alameda Research LLC et al. v. FTX Digital Markets Ltd., Brian C. Simms, Kevin G. Cambridge, and Peter Greaves, and J. Does 1-20*, Case No. 23-50145 (JTD) [Dkt. No. 1] (the "FTX Complaint").  On May 8, 2023, the JPLs filed a *Motion to Dismiss the Complaint or, in the Alternative, to Abstain From Ruling on Counts I-IV* [Dkt. No. 6] (the JPL "Motion to Dismiss")

3

6.      In the alternative, the JPLs request that this Court lift the automatic stay pursuant to Section 362(d)(1), because (i) resolving the Foreign Law customer questions in the Bahamas Court, which is the court best-positioned to resolve them, will not prejudice the Debtors (who have already consented to the jurisdiction of the Bahamas Court, been recognized by the Bahamas Court, and have and may continue to participate in the Provisional Liquidation Proceedings), (ii) the hardship to FTX Digital of not being able to file and prosecute the Application far outweighs any hardship to the Debtors, as FTX Digital's return date for its winding up petition is August 10, 2023[4] and it cannot proceed with its Provisional Liquidation Proceedings until the Non-U.S. Law Customer Issues, which are fundamental to the proceedings, are resolved, and (iii) the JPLs claim that certain customers migrated to the Bahamas is clearly not a "frivolous claim."  Accordingly, "cause" has been shown under Section 362(d)(1), and the merits weigh in favor of lifting the stay.

**Ad Hoc Group Strongly Supports Establishment of a Two-Court Protocol**

7.      The Ad Hoc Group agrees with the JPLs that adequate cause exists under Section 362(d)(1) to lift the stay and let the Bahamas Court decide the Non-U.S. Law Customer Issues. Given the Bahamas Court's relative expertise in Antiguan and/or U.K. law, it seems an enormous waste of the estates' resources and this Court's time to become as knowledgeable on these non-U.S. law issues as is the Bahamas Court, at least before the Bahamas Court has an opportunity to review the relevant facts and applicable law  .  While the Debtors would very much like to control both these Chapter 11 Cases and the Provisional Liquidation Proceedings, they must accept the fact that two sets of insolvency cases must be able to proceed simultaneously in as expeditious a manner as possible.  Perhaps one solution is for the Bahamas

---

[4] Which date is approximately one year before the Debtors' "initial forecast" for confirmation of a chapter 11 plan.

Court to use its expertise to make findings of fact and conclusions of law that would be deemed by this Court similar to a magistrate's recommendations.

8. In any event, it is clear that there must be a Protocol established in these cases between the Bahamas Court and the Bankruptcy Court so that future disputes among the parties as to jurisdiction, process and legal authority in both the Chapter 11 and Chapter 15 stays can be avoided. Simply punting these issues down the road as the parties did in the Cooperation Agreement by reserving all rights and essentially agreeing not to agree is no longer productive or cost-efficient. *See* Cooperation Agreement, § 12 ("recognition under Chapter 15 would not require the U.S. Bankruptcy Court to defer to the decisions of any foreign court . . .") and § 13 ("recognition in the Bahamas Court would not require the Bahamas Court to defer to the decisions of any foreign court . . ."). Moreover, as the JPLs point out in their Motion to Dismiss, the Cooperation Agreement mandates, among other things, that the Debtors and the JPLs must "'work together in good faith to determine ownership of assets that are subject to competing claims.'" Motion to Dismiss ¶ 13. A two-court Protocol would clearly further the spirit of that provision and the purpose of of the Cooperation Agreement.

9. These Chapter 11 Cases are atypical cases to be sure. They appear to involve millions of accounts of non-U.S. customers whose relationship with multiple debtors may be governed by Terms of Service that are not subject to U.S. law,[5] or they may be subject to rescission or other remedies under non-U.S. common law based on the massive fraud already admitted by three key former insiders. There are significant legal and factual issues that must be determined before a chapter 11 plan can be proposed, such as whether the books of the various Debtor and Debtor-related entities can be reconstructed to accurately reflect the rights and

---

[5] The 2019 Terms of Service are governed by Antiguan law and the 2022 Terms of Service are governed by U.K. law.

liabilities of each Debtor, whether customer deposits can be traced from among the commingled assets (that the Debtors now appear to possess and control), or whether, based on *applicable* law, tracing is even necessary, and whether a trust should be imposed on customer deposits or commingled assets now in the possession of the Debtors and/or FTX Digital that would render customers, not the Debtors or the JPLs, the true owners of those assets.[6] If customer deposits (whether commingled or not) are subject to a trust, for example, then the plan process (including exclusivity) should not be used by the Debtors to hold customers and their property hostage, as the plan may not even be applicable to customers.

10. While the Debtors claim (and have sought, in part, in the Complaint) that it is more efficient to have these issues adjudicated in this Court, they ignore the fact that the Bahamas Court clearly has greater expertise in interpreting and applying Antiguan and U.K. law than does this Court, so that at least some of these issues should more properly be decided by the Bahamas Court. Moreover, regardless of which court decides the Non-U.S. Law Customer Issues and future issues that will arise, at least *one* set of professionals (the Debtors' or the JPL's) is going to have to participate in a court that is not their "home court."[7] This time, it makes more sense to have the Non-U.S. Law Customer issues decided by the Bahamas Court, but other issues may clearly require this Court's determination.

---

[6] Though the Debtors suggest that custody of the deposits gives them the power to decide the fate of those assets, in fact, custody does not equate with title, and the Debtors may have no greater legal interest in customer deposits than do the JPLs. 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsections (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property. . .").

[7] Indeed, though the Debtors have filed an adversary proceeding against the FTX Digital and the JPLs in this Court concerning, among other things, the Terms of Service, given that the 2022 Terms of Service requires disputes to be arbitrated (and not by class action) and international customers of both FTX Digital are necessary parties to the proceeding, it is unclear whether the action filed by the Debtors against FTX Digital and the JPLs can even proceed. *See* Motion to Dismiss ¶¶ 33-35.

11. Despite the Cooperation Agreement, the Debtors and the JPLs do not seem to be "playing nicely in the sandbox," and the customers and creditors of the Debtors are paying the price both in wasted effort and estate legal fees. There can be no serious objection to creating a two-court Protocol between this Court and the Bahamas Court so that issues regarding jurisdiction and process do not further hold up both sets of cases. As the JPLs point out, such protocols are regularly approved in cross-border cases, and some prior protocols have included provisions permitting both courts to hear and concurrently adjudicate key issues in the cases. The fact that the Debtors do not like that FTX Digital became subject to provisional liquidation proceedings in the Bahamas before these Chapter 11 Cases were commenced is no reason for refusing to create solutions to address the cross-border nature of these proceedings. Other questions regarding the nature, ownership, and control of customer deposits, interpretation of the various Terms of Service, substantive consolidation of the Debtors (and perhaps non-Debtor) entities, and competing claims to assets, to name a few, are going to arise before these cases are completed, and the estates should not be forced to go to battle each time either the Debtors or the JPLs assert their fiduciary duties. [8]

12. The Ad Hoc Group strongly suggests that a cross border protocol be established so that these jurisdictional disputes no longer disrupt both proceedings. A two-court protocol will enable the parties to work together, benefitting all creditors of all the estates and assisting the two courts in their efforts to resolve the cases before them.

---

[8] The Debtors not so veiled allegation in their Complaint against FTX Digital and the JPLs that the Bahamas government was in cahoots with Sam Bankman-Fried and is, therefore, an untrustworthy forum to address FTX-related issues, is shockingly inappropriate and is the type of "battling" this Court should not countenance. *See,* Complaint ¶ 24. Equally concerning is the apparent willingness of the Debtors to violate this Court's recognition order in the FTX Digital chapter 15 case and a key standing doctrine in the United States that requires leave of the court to sue a fiduciary appointed by such court. *See Barton v. Barbour*, 104 U.S. 126 (1881); *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012); *In re Summit Metals, Inc.* 477 B.R. 484 (Bankr. D. Del. 2012).

WHEREFORE, the Ad Hoc Group respectfully requests that this Court (i) grant the JPLs relief from the automatic stay so that the JPLs can file the Application with the Bahamas Court, (ii) establish, pursuant to section 105(a) of the Bankruptcy Code, a cross-border Protocol to apply to this Court and the Bahamas Court for resolution of cross-border disputes in these Chapter 11 Cases, and (ii) grant such other and further relief as is just and proper.

Dated:   May 10, 2023
         Wilmington, Delaware

**VENABLE LLP**

*/s/ Daniel A. O'Brien*
Daniel A. O'Brien (No. 4897)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Tel: 302.298.3535
Fax: 302.298.3550
daobrien@venable.com

and

Jeffrey S. Sabin
Carol A. Weiner
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel: (212) 307-5500
Fax: (212) 307-5598
jssabin@venable.com
cweinerlevy@venable.com

and

Andrew J. Currie
600 Massachusetts Avenue, NW
New York, New York 10020
Tel: (212) 307-5500
Fax: (212) 307-5598
ajcurrie@venable.com

*Attorneys for the Ad Hoc Group*