## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>             Debtors. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date: May 17, 2023, at 9:00 a.m.**<br><br>**Objections Due: May 10, 2023 at 4 p.m.,**<br>**extended to May 11, 2023 for the U.S. Trustee**<br><br>Re:  D.I. 1359 |

## THE UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF
## DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
## IMPLEMENTATION OF A KEY EMPLOYEE INCENTIVE PLAN

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned attorney, hereby files this objection ("Objection") to the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Pla*n [D.I. 1359](the "Motion"), and in support of that Objection states as follows:

## PRELIMINARY STATEMENT

1.      By the Motion, the Debtors seek Court approval of what they term a KEIP[2] for seven senior officers and employees of the Debtor FTX Japan, and its subsidiaries. The U.S. Trustee objects to certain portions of the KEIP, for the following reasons.

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

2.      The U.S. Trustee objects to the KEIP's Reorganization Award, which provides for each KEIP Participant to receive a set dollar bonus, ranging from $78,000 to $450,000 depending on level of seniority, if the Debtors include FTX Japan's cryptocurrency exchange in a plan of reorganization under chapter 11.  In addition, such KEIP Participants remain employed by FTX Japan through the date the reorganization.  The bonus is not tied to any threshold of recovery to FTX Japan's customers or other creditors under the reorganization. There is not even a requirement as to when such reorganization must take place.  This aspect of the KEIP should not be approved because consummating a plan of reorganization is a standard action to be taken by a debtor's management in a chapter 11 case – in fact, it is the primary goal of chapter 11.  The requirements of § 503(c)(1) of the Code that apply to retention bonuses for insiders cannot be avoided simply by creating "incentives" based on undertaking standard actions in bankruptcy.  As to any KEIP Participants who are not insiders, paying them bonuses for achieving the goal of chapter 11 does not meet the requirements of section 503(c)(3) of the Code.

3.      Another portion of the KEIP provides for a Transaction Award, which is a sale bonus.  The U.S. Trustee objects to the portion of the Transaction Award that would be achieved if the sale price of FTX Japan rose above $87.5 million.  The aggregate Transaction Award payable to the KEIP Participants is calculated as: (i) **1%** of the first $25,000,000 net Transaction proceeds;[3]  plus (ii) **2%** of the net Transaction proceeds that are between $25,000,000 and $87,500,000; plus (iii) **6%** of the net Transaction proceeds in excess of

---

[2]   Any capitalized term not defined herein shall have the definition set forth in the Motion.

[3]   Due to the specific facts and circumstance of these cases and the sale process for FTX Japan, the U.S. Trustee is not objecting to a sale bonus being earned for a sale at any price, without there being a floor below which no such bonus would be earned.

$87,500,000. The tripling of the percentage between the second level and third levels, combined with the fact that there is no upper limit above which that 6% would decline, could result in very large bonuses being paid to those KEIP Participants who are officers, and especially to the Chief Operating Officer ("COO"). As such, the portion of the sale bonus that provides for 6% of the sale proceeds to be paid out in bonuses does not meet the standard of 503(c)(3) because it is not "justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3).

4.      The KEIP provides for either a Transaction Award or a Reorganization Award to be earned -- not both. However, in addition to a Transaction Award or a Reorganization Award, each KEIP Participant can also earn a third type of bonus, called the License and Restart Award. That bonus provides for a set payment in the same $78,000 to $450,000 range as the Reorganization Award, which would be paid to the same KEIP Participants if FTX Japan maintains its operative licenses and resumes its exchange operations by the end of this year, which would require the lifting of an order currently in place that was issued by the Financial Services Agency of Japan. *See* Motion, ¶¶ 15, 20. [4]  If both the License and Restart Award and the Reorganization Award were earned, the total bonus pool would be $2,594,000 for these seven KEIP Participants, with the COO alone earning $900,000. If, instead of a Reorganization Award, a Transaction Award Bonus was earned, the bonuses could be even higher, with no upper limit.

5.      For these reasons, set forth in more detail below, the U.S. Trustee respectfully requests that the Debtors' Motion be denied to the extent it seeks approval of the Reorganization Award and of that portion of the Transaction Award providing for payments based on 6% of sale proceeds in excess of $87.5 million.

---

[4]    The U.S. Trustee does not object to the portion of the KEIP that provides for the License and Restart Award.

**JURISDICTION**

6.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States

District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28

U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this

Objection.

7.      The U.S. Trustee is charged with overseeing the administration of Chapter

11 cases filed in this judicial district, pursuant to 28 U.S.C. § 586.  This duty is part of the U.S.

Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and

interpreted by the courts to guard against abuse and over-reaching to assure fairness in the

process and adherence to the provisions of the Bankruptcy Code.  *See In re United Artists*

*Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of

Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects

of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia*

*Gas Sys., Inc.),* 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the

U.S. Trustee duties to protect the public interest . . . that the Trustee has standing to attempt to

prevent circumvention of that responsibility." ); *Morgenstern v. Revco D.S., Inc. (In re Revco*

*D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are

responsible for protecting the public interest and ensuring that the bankruptcy cases are

conducted according to [the] law").

8.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the

Motion and the issues raised in this Objection.  *See United States Trustee v. Columbia Gas Sys.,*

*Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S.

Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

9.      On November 11, 2022 and November 14, 2022, the Debtors filed voluntary chapter 11 petitions in this Court.

10.     The Debtors remain in possession of their assets and continue to manage their business as debtors-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

11.     The U.S. Trustee appointed an official committee of unsecured creditors on December 15, 2022.

12.     On April 26, 2023, the Debtors filed this Motion, seeking authorization to implement what the Debtors term a Key Employee Incentive Plan, or KEIP, for seven senior officers and employees of FTX Japan or its subsidiaries, in the following amounts:

| KEIP Participant | License & Restart Award | Transaction or Reorganization Award* | |
| --- | --- | --- | --- |
| | | Percentage of Transaction Award Pool** | Reorganization Award |
| Chief Operating Officer | $450,000 | 34.7% | $450,000 |
| Chief Product Officer | $231,000 | 17.8% | $231,000 |
| Chief Commercial Officer | $200,000 | 15.4% | $200,000 |
| Chief Financial Officer | $124,000 | 9.6% | $124,000 |
| Data Scientist | $107,000 | 8.3% | $107,000 |
| Head of Operations | $107,000 | 8.3% | $107,000 |
| Front End Engineer | $78,000 | 6.0% | $78,000 |

*\* Either the Transaction Award or the Reorganization Award may be earned, not both.*
*\*\* Total does not reconcile due to rounding.*

*See* Motion, ¶ 19.

13.    The Motion indicates that bonuses are earned based on the following

metrics:

- **The License and Restart Award**: Each KEIP Participant will earn the License & Restart Award on December 31, 2023 if: (i) FTX Japan has maintained its operative licenses as a Crypto-Asset Exchange Service Provider and Type I Financial Instruments Business Operator under the Payment Services Act and the Financial Instruments and Exchange Act of Japan; (ii) FTX Japan has resumed its exchange operations (*i.e.*, resumption of the spot exchange); and (iii) the KEIP Participant has remained continuously employed by FTX Japan. *See id.,* ¶ 20.[5]

- **Transaction Award**: If a sale of all or substantially all of the assets of FTX Japan occur prior to a Reorganization, then the KEIP Participants will earn the Transaction Awards. If earned, the Transaction Awards will be payable to each applicable KEIP Participant within 60 days of the closing of the Transaction. The aggregate amount payable to the KEIP Participants in respect of the Transaction Awards will be determined based on a progressive scale tied to the net Transaction proceeds as follows:

    (i) 1% of the first $25,000,000 net Transaction proceeds; *plus*

    (ii) 2% of the net Transaction proceeds that are between $25,000,000 and $87,500,000; *plus*

    (iii) 6% of the net Transaction proceeds in excess of $87,500,000 (the "Transaction Award Pool").

---

[5]    The Debtors indicate in the Motion that FTX Japan cannot resume its exchange operations and preserve its Japanese Licenses without the Financial Services Agency of Japan ("JFSA") lifting the two orders it imposed on FTX Japan, one of which remains. *See* Motion, ¶ 15.

*See id.,* ¶¶ 2, 23.  If a Transaction occurs and the conditions for the Transaction Awards to become payable are satisfied, the Debtors will allocate the Transaction Award Pool among the KEIP Participants who have earned a Transaction Award in accordance with the percentages reflected in the table in paragraph 12 above. *See id.,* ¶ 23.

**The Reorganization Award**: If, in the process of the Debtors seeking to restart the Debtors' operations, the Debtors determine to include the cryptocurrency exchange of Japan in the restart/reboot of the FTX international exchanges (such determination and implementation of a restart/reboot of the FTX.com exchange in connection with a chapter 11 plan, a "Reorganization"), and such Reorganization occurs before a sale Transaction, then each KEIP Participant who remains employed will earn a Reorganization Award in accordance with the table set forth in paragraph 12 above. *See id*., ¶¶ 2, 24.

14.     To be paid each of the three kinds of bonuses, the KEIP Participants must remain employed with FTX Japan or its subsidiaries through the date the particular bonus is earned, except with respect to termination without cause, death or disability. *See id.*, ¶¶ 20 - 22, 25.

15.     On May 4, 2023, the Debtors filed a Notice of Revised Proposed order on the Motion.  D.I. 1435. That revised proposed order attached an exhibit that provided more information about the KEIP, consistent with what was set forth in the Motion, with one additional requirement for the License and Restart Awards. *See* D.I. 1435-3 (Ex. A), and ¶ 2 thereto.

## ARGUMENT

### Statutory Framework and Burden of Proof

      16.     Section 503(c) of the Bankruptcy Code provides, in relevant part, as follows:

> [T]here shall neither be allowed, nor paid –
>
> (1) ***a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business,*** absent a finding by the court based on evidence in the record that-
>
>     (A)   the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
>     (B)   the services provided by the person are essential to the survival of the business; and
>
>     (C)   either—
>
>         (i)  the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>
>         (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;
>
>     . . .
>
> (3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of,

officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c) (emphasis added).

17.     Congress added § 503(c) to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") to "eradicate the notion that executives were entitled to bonuses simply for staying with the Company through the bankruptcy process." *In re Global Home Products, LLC,* 369 B.R. 778, 784 (Bankr. D. Del. 2007)(citations omitted); *In re Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012)(to the same effect, quoting *Global Home Products,* 369 B.R. at 784); s*ee also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 800 (Bankr. D. Del. 2007) ("[I]t is widely acknowledged that the amendment was a response to perceived abuses of the bankruptcy system by 'the executives of giant companies . . . who lined their own pockets, but left thousands of employees and retirees out in the cold.'") (quoting *In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006)("*Dana II*") and Statement of Senator Edward Kennedy (March 1, 2005)).

18.     Under § 503(c), insider retention plans and severance plans are "severely restricted." *Global Home Products,* 369 B.R. at 785.  Courts should examine bonus plans "mindful of the practice that Congress sought to eradicate and . . . determine whether the proposed targets are designed to motivate insiders to rise to a challenge or merely report to work." *In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012).

19.     The Debtors, as the proponents of a bonus plan, have the burden of providing evidentiary support to establish that their bonus program is not a disguised retention plan governed by § 503(c)(1).  *Hawker Beechcraft*, 479 B.R. at 314 ("[t]he proponent of the KEIP bears the burden of proving that the plan is not a retention plan governed by § 503(c)(1)"); *In re Residential Capital, LLC*, 478 B.R. at 170  ("In order to show that the more permissive §

9

503(c)(3) applies, the Debtors must establish by a preponderance of the evidence that the [KEIP] is primarily incentivizing and not primarily retentive." ); *In re Mesa Air Group, Inc.,* No. 10-10018, 2010 WL 3810899, at *3 (Bankr. S.D.N.Y. Sept. 24, 2012); *In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006)("*Dana I*"); *Global Home Products*, 369 B.R. at 783-85.

20.    For a bonus plan to be incentivizing, it should be tied to significant goals that are difficult to achieve.  *See, e.g., Dana II*, 358 B.R. at 583 (court approved long-term incentive plan where benchmarks were "difficult targets to reach and [were] clearly not 'lay-ups'"); *Hawker Beechcraft,* 479 B.R. at 313-15 (court rejected proposed bonus plan where lowest levels of proposed metrics were "well within reach"); *Residential Capital, LLC*, 478 B.R. at 171-72 (court rejected proposed bonus plan where participants had to remain employed by debtors to receive payment, and there was a lack of challenging performance metrics).

21.    The label a debtor gives to a bonus plan to avoid the application of § 503(c)(1), "must be viewed with skepticism; the circumstances under which the proposal is made and the structure of the compensation package control."  *Residential Capital,* 478 B.R. at 170.

22.    If the Court were to determine that some portion of the KEIP bonuses were incentivizing in nature, the Debtors would still have to establish that the requirements of §503(c)(3) are met with respect to any such portion of the KEIP.  The same would be true as to KEIP bonuses to be paid to any non-insiders.  As noted above, section 503(c)(3) provides that, "[n]othwithstanding subsection (b)[of section 503] there shall neither be allowed nor paid . . . . other transfers or obligations ***that are outside the ordinary course of business and not justified by the facts and circumstances of the case*** including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition." 11 U.S.C. § 503(c)(3) (emphasis added).

23.     In enacting § 503(c), Congress clarified and specifically limited what might otherwise be allowed as an administrative expense under § 503(b).  Section 503(b) of the Bankruptcy Code provides that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate including—
> >
> > > (i) *wages, salaries, and commissions for services rendered after the commencement of the case*;

11 U.S.C. § 503(b)(emphasis added).

24.     Administrative expenses may not be allowed unless they are actual and necessary to preserve the estate.  *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001). In order to hold administrative expenses to a minimum and to maximize the value of an estate, § 503(b) is narrowly construed.  *See, e.g., In re N.P. Min. Co., Inc.*, 963 F.2d 1449, 1454 (11th Cir. 1992); *In re Philadelphia Mortgage Trust,* 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990).  To qualify for administrative priority status, an expense must arise from a transaction that accorded the estate an actual benefit.  *In re Insilco Technologies, Inc.,* 309 B.R. 111, 114 (Bankr. D. Del. 2004)*(citing Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-533 (3d Cir. 1999), and *Unidigital,* 262 B.R. at 288).

25.     Thus, if the Court determines that some portion of the Debtors' KEIP is incentive-based, rather than retentive, the Debtors would have to demonstrate that such incentive bonuses are necessary to preserve the value of the Debtors' estates under § 503(b), and are "justified by the facts and circumstances of the case" under § 503(c)(3).  The same is true as to any incentive bonuses to be paid to non-insider KEIP Participants, if there are any.  The Court

must make an independent determination that any incentive-based bonuses to insiders, or

bonuses to non-insiders, are justified by the facts and circumstances of these cases.

**The Debtors Have Not Satisfied Their Evidentiary Burden That**
**the Reorganization Award is Incentivizing, Rather than Retentive**

26.     The terms of the Reorganization Award demonstrate that is not intended to

induce a particular level of performance by the Debtors' insiders, but instead is intended to

induce them to remain employed until a plan of reorganization becomes effective.  The bonus is

not tied to any threshold of recovery to FTX Japan's customers or other creditors under the

reorganization.  There is not even a requirement as to when such reorganization must take place.

Rather, all that must occur is that the Debtors include FTX Japan's cryptocurrency exchange in a

plan of reorganization under chapter 11.  In addition, the Reorganization Award requires that a

KEIP Participant remain employed by the Debtors until the reorganization takes place.

27.     That the Reorganization award uses a metric that is nothing more than a

preexisting element of the chapter 11 process, namely effectuating a plan, demonstrates that the

Reorganization Award is retentive, not incentivizing.  As set forth by the Court in *Residential*

*Capital*, "triggering bonus awards solely on the basis of a sale transaction, ***confirming a***

***reorganization plan*** or exiting bankruptcy are not sufficient to shift consideration of a plan

providing for payment to insiders from § 503(c)(1) to § 503(c)(3)."  478 B.R. at 172 (emphasis

added).

28.      Similarly, in *Dana I,* 351 B.R. 96 (Bankr. S.D.N.Y. 2006), Judge Lifland

rejected a proposed bonus plan in which payments were based upon having a chapter 11 plan

become effective, stating, "[w]ithout tying this portion of the bonus to anything other than

staying with the company until the Effective Date, this Court cannot categorize a bonus of this size and form as an incentive bonus." *Id.*, at 102.

29.    In reported cases interpreting § 503(c)(3), the primary factor that the courts have looked to is whether the incentives are material, as noted by the Court in *Nellson Nutraceutical*, 369 B.R. 787.   In *In re Nobex Corporation*, 2006 WL 4063024 (Bankr. D. Del. January 19, 2006), Judge Walrath approved an incentive based plan pursuant to 11 U.S.C. § 503(c)(3).  The incentives were based upon the affected officers obtaining a sales price for substantially all assets of the estate higher than the stalking horse bid of $3.5 million.

30.    In *In re Global Home Products*, 369 B.R. 778 (Bankr. D. Del. 2007), the Court approved an incentive program based upon EBITDAR results.  The court found the program to be based on quantifiable benchmarks and upon historical results of the debtor.  In *Nellson Nutraceutical*, 369 B.R. 787, the Court approved an incentive based program also based upon performance results tied to EBITDAR.

31.    In each of the above cases, the officers eligible for bonuses were required to produce a tangible measurable financial results before such bonuses were earned, such as defined measurable operating results, or an increased sales price over a stated minimum.  In contrast, all the Reorganization Award requires of the KEIP Participants is that FTX Japan achieve what is the main purpose of chapter 11, the reorganization of the business.

32.    As the Reorganization Award lacks any meaningful performance thresholds, it virtually guarantees bonus payments to the KEIP participants.  Coupled with the requirement that, to earn the bonus, the KEIP Participants must remain in the Debtors' employ until a reorganization takes place (except in the case of termination without cause, death or disability), it is plain that the KEIP's primary purpose is to induce the Debtors' insiders to

remain with the Debtors until a plan is consummated.  As recognized by the *Residential Capital*

and *Dana* Courts, confirmation or consummation of a plan as a milestone indicates that the

bonus plan is primarily retentive, not incentive.[6]

**The Debtors Have Not Provided Sufficient Information to Determine**
**Whether the Reorganization Award Meets the Requirements of § 503(c)(1) of the Code**

33.      As demonstrated above, the Debtors have not met their burden to establish

that the Reorganization Award is primarily incentivizing in nature.  Therefore, the Debtors must

establish that the required elements set forth in § 503(c)(1) of the Code for a retention bonus are

present for each of the KEIP Participants who is an "insider," as that term is defined in § 101(31)

of the Bankruptcy Code.  That section of the Bankruptcy Code defines an "insider" of a

corporation to include an "officer," a "director," or a "person in control." 11 U.S.C. § 101(31).

34.      The KEIP Participants consist of seven individuals who are employed by

FTX Japan or their subsidiaries.  Of those seven, four have what are clearly officer titles: Chief

Operating  Officer, Chief Product Officer, Chief Communications Officer and Chief Financial

Officer, and a forth has the title "Head of Operations."  *See* Motion, ¶ 19.[7]  As to the KEIP

Participants who have officer titles, the Debtors must either submit evidence to rebut the

presumption that such officers are insiders, or show that such participant meets the requirements

of §503(c)(1).  *See In re Foothills Texas, Inc.*, 408 B.R. 573, 585 (Bankr. D. Del. 2009)("A

person holding the title of an officer, including vice president, is presumptively what he or she

---

[6]    In the Motion, the Debtors also argue that the KEIP is justified because the KEIP  Participants have been tasked with additional responsibilities due to the departure or termination of certain "service providers" between the petition date and March 31, 2023. *See* Motion, ¶ 27.  However, given that the Japan exchange is not currently operating, it is unclear whether the departure or termination of these service providers has resulted in addition work for any of the remaining employees, let alone the seven KEIP Participants.  But even if it had, section 503(c) "requires more than increased responsibilities to justify increased pay for insiders." *Residential Capital,*  478 B.R. at 168.

[7] The other two participants have the title "Data Scientist" and "Front End Engineer." *See* Motion, ¶ 19

appears to be—an officer and, thus, an insider. To overcome that presumption requires the

submission of evidence sufficient to establish that the officer does not, in fact, participate in the

management of the debtor." ).

35.     To comply with § 503(c)(1), the Debtors must demonstrate three elements

as to each "insider" who is to receive a bonus: (A) that they have a "bona fide job offer from

another business at the same or greater rate of compensation;" (B) that "the services provided by

the person are essential to the survival of the business;" and (C) that the amount to be paid to

each insider is "not greater than an amount equal to 10 times the amount of the mean transfer of

obligation of a similar kind given to nonmanagement employees," or, if no such similar transfers

were made to nonmanagement employees during the same calendar year, that the amount to be

paid to each insider is not greater than 25 percent of the amount of any similar transfer to such

insider for any purpose during the prior calendar year. 11 U.S.C. § 503(c)(1)(A), (B) & (C).

36.     Because an evidentiary predicate is necessary to approve the

Reorganization Award, the U.S. Trustee reserves argument on this issue until the record at the

hearing on the Motion is closed.

**The Amount of the Sale Bonus Proposed for a Sale Price in Excess of $87.5 Million
is Excessive and Not Justified by the Facts and Circumstances of the Cases**

37.     As noted above, the Transaction Award, which is a sale bonus, is

calculated based on a percentage of the sale proceeds, with three different levels: (i) 1% of the

first $25,000,000 net Transaction proceeds;  plus (ii) 2% of the net Transaction proceeds between

$25,000,000 and $87,500,000; plus (iii) 6% of the net Transaction proceeds in excess of

$87,500,000.  The U.S. Trustee objects to the top level of 6% of the sale proceeds being used to

pay bonuses to the KEIP Participants, a number of whom are officers of FTX Japan or its

subsidiaries, and presumably are already well compensated.[8]

38.     The Debtors provide no justification for the tripling of the percentage of

the sale proceeds that will go into the bonus pool, from 2% to 6%, once the sale price exceeds

$87.5 million.  An increase from 2% to 3% would seem far more reasonable, while still

providing increased bonuses for higher sales proceeds.  In addition, there should be a cap on the

upper limit of what can be paid under the sale bonus, or a sale price over which the percentage

that will be used to fund the bonus pool decreases.[9]

39.     If the Transaction Award is viewed as incentive-based, it is to be

evaluated under section 503(c)(3) of the Code, meaning that the award itself, as well as the

amount, must be "justified by the facts and circumstances of the case."  11 U.S.C. § 503(c)(3).

Here, the bonus amounts that would be earned are not justified by the facts and circumstances of

the cases once the 6% figure is triggered.   If, for example, there was a sale of FTX Japan for

$110 million, the total bonus pool would be $2,850,000, of which $988,950 would go to the

COO.  That would be *in addition to* the $450,000 bonus he would be receive if the License and

Restart Award were earned, and in addition to his regular salary and benefits.

---

[8]     The U.S. Trustee's counsel understands that the Debtors will be filing the salaries for each of the
KEIP Participants under seal, prior to the hearing on the Motion.

[9]     It is worth noting that the Transaction Awards will not be the only payments made from the sale
proceeds.  There will be fees of the Debtors' investment banker, Perella Weinberg Partners LP, in
connection with any sale, which fees could be significant.  There also will be fees of other
professionals in connection with the sale, such as the Debtors' counsel, their financial advisors
(Alvarez & Marsal), among others, along with the Committee's professionals.

40.     As the Debtors bear the burden of establishing that the Transaction Award

meets the requirement of section 503(c)(3) of the Code, the U.S. Trustee leaves the Debtors to

their burden of proof and reserves all rights in connection therewith.

**The Business Judgment Rule is not the Applicable Standard
to Approve the KEIP Under Any Circumstances**

41.     The Debtors incorrectly argue that approval of the KEIP may be done

pursuant to the business judgment rule.  *See* Motion, ¶¶ 43, 51.  In this regard, the Debtors

overlook and fail to accord proper meaning to the restrictions imposed by § 503(c).  Section 503

of the Code addresses administrative expenses, and by the Motion, the Debtors are seeking

authority to incur the KEIP obligations as administrative expenses.   Because they are

administrative expenses, the Court must make an independent determination that they are

"justified by the facts and circumstance of the case" under § 503(c)(3), rather than deferring to

the Debtors' business judgement.

42.     The Debtors' assertion that the KEIP is governed by the business

judgment rule also ignores the pivotal holding of *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527,

532-533 (3d Cir. 1999).  In that case, the Third Circuit held that the allowability of

administrative expenses "depends upon the requesting party's ability to show that the [expenses]

were actually necessary to preserve the value of the estate.  Therefore, we conclude that *the*

*business judgment rule should not be applied as such in the bankruptcy context*.  Nonetheless,

the considerations that underlie the debtor's judgment may be relevant to the Bankruptcy Court's

determination." *Id.*, at 535 (emphasis added).  The proposed KEIP payments, like the break-up

fees under consideration in *O'Brien Envtl. Energy,* are administrative expenses and their

allowance must be determined under administrative expense jurisprudence, rather than the more

lenient business judgment rule.[10]

## CONCLUSION

43.     As the Debtors have not met their burden to show that the Reorganization

Award is not a retention bonus plan, the Debtors must establish that the Reorganization Award

complies with the requirements of § 503(c)(1) of the Code as to any KEIP Participant who is an

insider.  The Debtors also have not met their burden to establish that paying bonuses to any KEIP

Participants who are not insiders for achieving the purpose of a chapter 11 filing – namely

reorganization – meets the requirements of § 503(c)(3) of the Code.  The same is true as to the

Transaction Awards to the extent it provides for payments to insiders or non-insiders based on

6% of sale proceeds in excess of $87.5 million.  The U.S. Trustee leaves the Debtors to their

burden of proof and reserves all rights in connection therewith.

44.     The U.S. Trustee reserves any and all rights, remedies and obligations to,

among other things, complement, supplement, augment, alter or modify this Objection, file an

appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be

required and to assert such other grounds as may become apparent upon further factual

discovery.

---

[10]   Similarly, in *In re Foothills Texas, Inc.*, 408 B.R. 573 (Bankr. Del 2009), this Court denied the debtors' motion to assume an employee agreement with officers under § 365 of the Code, and to pay such officers bonuses under § 363(b), holding that, "[a]s the Debtors' sole motivation for filing and prosecuting the motion is to obtain authority to make retention payments that are prohibited by section 503(c)(1) of the Bankruptcy Code, it is not a reasonable exercise of the Debtors' business judgment to assume the agreements and/or make the payments." *Id*. at 584-5.

**WHEREFORE,** the United States respectfully requests that this Court deny those portions of the Motion objected to herein, and (c) grant such other relief as this Court deems appropriate, fair and just.

Dated: May 11, 2023              Respectfully submitted,
      Wilmington, Delaware

                                        **ANDREW R. VARA**
                                        **UNITED STATES TRUSTEE**
                                        **Regions 3 and 9**

By: */s/ Juliet Sarkessian.*
     Juliet Sarkessian
     Trial Attorney
     United States Department of Justice
     Office of the United States Trustee
     J. Caleb Boggs Federal Building
     844 King Street, Suite 2207, Lockbox 35
     Wilmington, DE 19801
     (302) 573-6491 (Phone)
     (302) 573-6497 (Fax)
     Juliet.M.Sarkessian@usdoj.gov