**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-11068-JTD<br><br>Jointly Administered<br><br>**Re: D.I. 1137, 1226, 1324, and 1467** |

**AD HOC COMMITTEE OF NON-US CUSTOMERS OF FTX.COM'S (A) REPLY IN SUPPORT OF THE MOTION TO FILE UNDER SEAL (I) VERIFIED STATEMENT OF EVERSHEDS SUTHERLAND (US) LLP AND MORRIS, NICHOLS, ARSHT & TUNNELL LLP PURSUANT TO BANKRUPTCY RULE 2019 AND (II) THE SUPPORTING DECLARATION, AND (B) JOINDER TO JOINT MOTION OF THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE MOVANTS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS**

The Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") hereby files this (i) reply (the "Reply") to (a) the objection [D.I. 1226] (the "Media Objection") of Bloomberg L.P., Dow Jones & Company, Inc., The New York Times Company and The Financial Times Ltd. (the "Media Objectors") and (b) the objection [D.I. 1467] (the "USTr. Objection," together with the Media Objection, the "Objections") of the United States Trustee ("US Trustee") to the Ad Hoc Committee's motion [D.I. 1137] (the "Ad Hoc Redaction Motion")[2] for entry of an

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The Ad Hoc Redaction Motion is incorporated herein by reference, except as otherwise amended herein. Capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Ad Hoc Redaction Motion. For the avoidance of doubt, the Ad Hoc Redaction Motion and this Reply apply to any and all supplements to the 2019 Statement (defined below) filed by the Ad Hoc Committee prior to the Court's issuance of a final order on the Motion.

order authorizing the Ad Hoc Committee to file under seal portions of the Ad Hoc Committee's Rule 2019 Statement and any other filings containing certain Sealed Information and supplement thereof, and (ii) joinder (the "Joinder") to the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals* [D.I. 1324] ("Joint Redaction Motion," together with the Ad Hoc Redaction Motion, the "Redaction Motions"). In support of the Redaction Motions, this Reply, and this Joinder, the Ad Hoc Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**[3]

1. The Ad Hoc Redaction Motion seeks to protect confidential customer information of its members due to the very present risk of financial and even physical harm that the disclosure of such information will cause. Moreover, as the Debtors and the Official Committee have similarly sought to protect the same confidential customer information in their Joint Redaction Motion, the Ad Hoc Committee joins in their request.

2. The Media Objectors have themselves *repeatedly* reported the very real threat facing those with crypto holdings. As observed by the *New York Times*, "[v]irtual currencies can be easily transferred to an anonymous address set up by a criminal. While banks can stop or reverse large electronic transactions made under duress, there is no Bitcoin bank to halt or take back a transfer, making the chances of a successful armed holdup frighteningly enticing."[4] The *Financial Times* reports "that [crypto] fraudsters are highly sophisticated and often use 'clone'

[3] Capitalized terms used in the Preliminary Statement are defined in the sections that follow.

[4] *See* Nathaniel Popper, *Bitcoin Thieves Threaten Real Violence for Virtual Currencies*, *The New York Times*, Feb. 18, 2018, https://www.nytimes.com/2018/02/18/technology/virtual-currency-extortion.html.

companies which exploit details and websites of real companies to dupe investors and divert their business"[5] and that the risks are increasing substantially as the amounts stolen due to crypto-related scams doubled between 2020 and 2021 and increased a further twenty-five (25%) percent in 2022.[6]

3. Not inconsistent with the inescapable conclusions reached by the Media Objectors reporting, courts in this district have also held that redaction in situations like here is not an evidentiary issue, but rather one of "common sense." *In re Clover Techs. Grp, LLC*, No. 19-12680 (KBO) (Bankr. D. Del.) Jan. 22, 2020 Hr'g Tr. 24:21-25 ("I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on . . . the court's electronic case filing system."). Thus, the Media Objectors' claim that such risk of disclosure "is contrary to the weight of authority and unsupported by evidence" is, in fact, contrary to the evidence of their own reports and rulings of this and other courts. Media Obj. ¶ 52.

4. Further, with respect to entities redacted from the Rule 2019 Statement, the Media Objectors have failed to establish why such information does not constitute confidential commercial information under section 107(b) of the Bankruptcy Code, despite this Court's ruling to the contrary at the Second Day Hearing, or why the Ad Hoc Committee's members should be treated differently. There is no reason to disturb the Court's prior holding – nor is there any basis to deny the Ad Hoc Committee the same relief the Court has already granted to the Debtors or may grant to them in the future.

---

5 Lucy Warwick-Ching, *How can I recover stolen crypto assets? Financial Times*, Apr. 5, 2023, https://www.ft.com/content/a098f029-6c5a-48ce-b98a-50642f3c31ca.

6 Joshua Oliver, *The Lawless world of crypto scams*, *Financial Times*, Sept. 19, 2022, https://www.ft.com/content/5987649e-9345-4eae-a4b8-9bfb0142a2ab.

5. The Media Objection, although couched in language of the "public's right of access to bankruptcy filings" and disclosure being "an integral part of the Chapter 11 reorganization process," fails to provide a valid bankruptcy purpose for the disclosure of the redacted information within the Rule 2019 Statement. Media Obj. ¶¶ 12, 22. The Media Objectors claim that sealing, in this case, renders "members of the press and public unable to scrutinize [] transactions" provided in the Debtors' schedules and statements. *Id.* at ¶ 24. However, those redactions are not at issue in the Ad Hoc Redaction Motion, and analyzing those transfers is not an issue for the Media Objectors to resolve. This information has been and will continue to be provided to the parties responsible for considering and resolving these issues. And while the unfettered access sought by the Media Objectors should not be granted because it will cause unjustified harm to customers, relief can be crafted in such a way as to permit reasonable access, when appropriate, to "headline-grabbing" information.

6. In reality, the Media Objection suggests an alternative motive for seeking to force disclosure of the information of those who are now required to come to this Court to recover their stolen assets: embarrassment and/or their own profit. The Media Objectors' arguments are contrary to established precedent, misguided, and should be rejected. Accordingly, the Court should approve the Ad Hoc Redaction Motion and protect the Ad Hoc Committee members from undue risk of identity theft and other unlawful injury.

7. Moreover, while the US Trustee opposes the relief sought in the Redaction Motions (besides the redaction of email addresses and addresses of individual customers) and seeks, alternatively, to limit the redaction of information relative to insiders generally and customers in specific situations, *see* USTr. Obj. ¶¶ 18-19, the exceptions sought by the US Trustee are immaterial to the relief sought by the Ad Hoc Committee because the Ad Hoc Committee members

are not insiders of the Debtors and the only situation where the Ad Hoc Committee has submitted and will submit any pleadings or filings with the Court will be on behalf of non-US customers of the Debtors.

**PERTINENT BACKGROUND**

8. On March 22, 2023, the Ad Hoc Committee filed the Ad Hoc Redaction Motion, Rule 2019 Statement [D.I. 1136], and on March 24, 2023, the Redacted Rule Statement [D.I. 1156].

9. On April 5, 2023, the Media Objectors filed the Media Objection, objecting to the Ad Hoc Committee's request to redact from public filings Personally Identifying Information and Sealed Information (both as defined in the Ad Hoc Redaction Motion).

10. On April 20, 2023, the Debtors and Official Committee of Unsecured Creditors ("Official Committee") filed the Joint Redaction Motion, requesting, among other things, that the Court (i) extend the permission to redact, pursuant to section 107(b)(1), customers' names and contact information for an additional three (3) month period, and (ii) permit the redaction on a final basis, pursuant to section 107(c)(1), of all of Debtors' non-institutional customers' names, addresses, and email addresses from public filings made in the chapter 11 cases. Simultaneously therewith, the Debtors and Official Committee filed the declaration of Jeremy A. Sheridan [D.I. 1325] (the "Sheridan Declaration")[7] in support of the Joint Redaction Motion.

11. On May 3, 2023, the Media Objectors filed an objection to the Joint Redaction Motion [D.I. 1406], making substantially the same arguments raised in the Media Objection.

12. On May 9, 2023, the US Trustee filed the USTr. Objection, incorporating the arguments that the US Trustee raised to the Debtor's Redaction Motion. *See* USTr. Obj. ¶ 18.

---

7 The Sheridan Declaration is incorporated herein by reference.

13. In the event the Redaction Motions are granted, the US Trustee requests that the Court limit such relief to require, among other things, the disclosure of (i) the names of individual insiders and names and addresses of non-individual insiders in any document filed with the Court, and (ii) names of individual non-insider customers and names and addresses of non-individual non-insider customers from any filing with the Court if it is not possible to determine from the information provided in the pertinent filing that such party is, in fact, a customer of the Debtors. *See* USTr. Obj. ¶ 19. As noted above, *see* ¶ 8, *supra*, these exceptions are immaterial to the Ad Hoc Committee and the relief sought in the Ad Hoc Redaction Motion.[8]

## REPLY IN SUPPORT OF THE AD HOC REDACTION MOTION

14. Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "Rule" or "Rules") requires the disclosure of certain information, including, in some cases, the addresses of members of an ad hoc committee. *See* Fed. R. Bankr. P. 2019(c). Through this Reply, the Ad Hoc Committee supplements and amends the Ad Hoc Redaction Motion to confirm that it is seeking authority to redact the names of the Ad Hoc Committee members and related personally identifying information, including their addresses.[9]

### A. The Redaction Deadline Should Be Extended Under Section 107(b) To Permit the Continued Sealing of Customer Information, Including the Names and Addresses of the Ad Hoc Committee's Members

15. The Media Objectors argue that neither the Debtors nor the Ad Hoc Committee have satisfied the evidentiary burdens necessary for an extension of the April 20, 2023 redaction deadline ("Redaction Deadline"), provided for in the Redaction Order, and continued redaction of

---

[8] The Ad Hoc Committee does not contest the US Trustee's reservation of rights.

[9] Though not expressly stated in the Ad Hoc Redaction Motion, the request in this supplement, to redact personally identifying information, including addresses, is consistent with the relief sought in the Debtors' Redaction Motion, which was subsequently granted in the Redaction Order, and provides the intended scope of protections originally contemplated by the Ad Hoc Committee in the Ad Hoc Redaction Motion.

customer information under section 107(b)(1). But the Media Objectors ignore the Court's prior ruling wherein the Court found sufficient evidence for the redaction of customer information pursuant to section 107(b)(1). In truth, the Media Objectors do nothing but rehash old evidentiary challenges that were raised at the Second Day Hearing and simultaneously overruled by the Court. The Court has already determined that there was sufficient evidence to conclude that the customer list is a trade secret and can be protected under section 107(b). Second Day Hr'g Tr. 103:1-5.[10]

16. The Court should further extend the Redaction Deadline because the same reasons that the Court found for doing so at the Second Day Hearing continue to exist today. At this point in the cases, the Debtors have, to some extent, obtained sufficient information to commence next steps relative to monetizing assets for the benefit of creditors. Regardless of what path this may take, the protection and preservation of the Debtors' significant asset (the customer list) is necessary at this time.

17. Moreover, as set forth in the Ad Hoc Redaction Motion, there is no basis to deny the Ad Hoc Committee members the same relief provided to all other customers – the members of the Ad Hoc Committee are customers of the Debtors. Thus, the Debtors' estates are harmed regardless of whether a disclosure is of a member of the Ad Hoc Committee or another customer.[11]

18. Further, the Media Objectors' assertion that the members have waived any rights to privacy in the chapter 11 cases is simply incorrect. *See* Media Obj. ¶ 42. Unlike the cases cited by the Media Objectors, the members of the Ad Hoc Committee have not filed any personal claims in these chapter 11 cases, nor have they "voluntarily come forward" for the purpose of collecting

---

[10] The hearing transcripts cited herein are not attached to this Reply as exhibits but will be provided to the Court and to parties in interest upon request.

[11] Though Rule 2019 would ordinarily require the disclosure of certain information, this requirement should be excused where the Debtors and the Committee have established that such would harm the Debtors' estates.

on their claims. *Id.* Instead, as required by Rule 2019, their counsel have filed statements of their authority to represent multiple clients. *In re ACandS, Inc.*, 462 B.R. 88, 96 (Bankr. D. Del. 2011) ("Statements under 2019 are attorney statements of authority to represent multiple clients as listed thereon. ***They are not claims and are not affirmative statements by the clients themselves***.") (***emphasis added***). Furthermore, here, the members of the Ad Hoc Committee act in a representative capacity for the interests of all non-US customers, not their own individual benefit. *See Ad Hoc Committee of Non-US Customers of FTX.com v. FTX Trading, Ltd.*, Adv. Pro. 22-50514 [D.I. 1, ¶ 1] ("This action seeks a declaration that assets customers deposited, held, received, or acquired on the FTX.com platform are customer property and not property of the Debtors' estates under section 541 of title 11 of the United States Code").

**B. Cause Exists Under the Bankruptcy Code and Bankruptcy Rules to Authorize the Ad Hoc Committee to Redact the Names and Addresses of Individual Members Under Section 107(c)**[12]

19. The Media Objectors seemingly chastise the Ad Hoc Committee for its alleged failure to present evidence of harms actually suffered by individuals resulting from the disclosure of personally identifying information. Putting aside that evidence has been presented, this is simply not the standard. "Section 107(c) references 'risk,' and the assessment of risk is forward-looking. While a specific ***potential harm*** must be identified, the standard does not require evidence of injury having occurred in the past or under similar circumstances." *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 751 (D. Del. 2018) (***emphasis added***; internal citations omitted).

20. Despite attempts to do so, the Media Objectors cannot minimize or, as they do in some cases, ignore evidence of specific potential risks associated with the disclosure of names and

[12] As the Media Objectors do not object to the redaction of individual's personal addresses, Media Obj. 24 n.9, the Ad Hoc Committee's Reply focuses solely on arguments concerning redaction of individual members' names under section 107(c)(1).

addresses of the Ad Hoc Committee's individual members. The Sheridan Declaration provides numerous specific, real, and substantial risks associated with the disclosure of names, addresses, and other personal information. Sheridan Decl. ¶¶ 11-25. The Media Objectors can only attempt to downplay or minimize these risks and their associated harms (as they do throughout the Media Objection). But the Court only has to look so far as the Media Objectors' own reporting and those of their colleagues to recognize the reality of these risks and harms. *See* ¶¶ 2-3, *supra*.

21. *In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022) ("Celsius"), on which the Media Objectors most heavily rely, serves as a perfect example of the need for protection of customers' personal information. In Celsius, the bankruptcy court held that individual customers' physical and email addresses would be sealed under section 107(c). *Id*. at 294. However, the bankruptcy court required disclosure of customer names because it was not convinced that the disclosure of names alone presented an imminent risk of harm. *Id.* at 295.

22. Shortly after the names of customers were made publicly available, searchable customer lists were created and posted online, allowing essentially anyone to search Celsius customers based on their crypto holdings. *See* Mack DeGeurin, *New Tool Shows the Biggest Losers in the Celsius Crypto Meltdown*, Gizmodo, Oct. 10, 2022, https://gizmodo.com/crypto-celsius-1849637951. Not surprisingly, various criminal attempts were then made to influence, steal from, or gain advantage over Celsius customers, with some attempts even going so far as the creation and disbursement of an altered court order purporting to require Celsius customers to submit personal information, including their cryptocurrency wallet addresses and contact information. *Notice of Phishing Attempts* [D.I. 1527], *Supplemental Notice of Phishing Attempts* [D.I. 1681], *Second Supplemental Notice of Additional Phishing Attempts* [D.I. 1904], *Third Supplemental*

*Notice of Additional Phishing Attempts* [D.I. 1992], *Fourth Supplemental Notice of Additional Phishing Attempts* [D.I. 2082], *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y.).

23. While the Media Objectors attempt to diminish the impact of the attacks on Celsius customers, *see* Media Obj. ¶¶ 60-61, it cannot be ignored that the *Celsius* decision resulted in the exact risk the court believed was too speculative to warrant redacting the customers' names. The release of the customers' names alone was sufficient to elicit criminal action to a degree requiring the bankruptcy court's intervention to prevent harm to the customers. The disclosure of customer names clearly caused the type of "undue risk" sought to be prevented by section 107(c).

24. Finally, the Media Objectors ignore clear authority from this district where courts have found that the risk to individuals through the disclosure of their names and/or addresses is a specific and particularized harm which constitutes cause for redaction. *See, e.g.*, *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del.) Sept. 2, 2021 Hr'g Tr. at 34:15-23 (finding that the disclosure of names which subjects individuals to potential harm is a "specific and well-articulated harm"); *In re Cred, Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) [D.I. 264] (order granting motion to seal individual customer names). Some courts in this district have even gone so far as to describe it as a common-sense issue. *In re Clover Techs. Grp., LLC*, Jan. 22, 2020 Hr'g Tr. 24:21-25 ("To me it is common sense. I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by way of the court's electronic case filing system and, of course, the claims agent's website."); *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del. Mar. 10, 2020 [D.I. 82] Hr'g Tr. 25:6-7 (noting that it is not a burden of proof issue but more of a "common sense" issue, and stating further that "at this point and given the risks associated with having any kind of

private information out on the internet, [redaction] has really become routine [and] I think obvious relief.").

25. As a result, protecting the individual members of the Ad Hoc Committee (and individual customers as a whole) significantly outweighs any presumption in favor of access. *See In re Continental Airlines*, 150 B.R. 334, 340 (D. Del. 1993) (explaining that redaction is permitted where "the interest in secrecy outweigh[s the] presumption in favor of access"); *In re Owens Corning Armstrong World Indus., Inc.*, 560 B.R. 229, 237 (Bankr. D. Del. 2016) (explaining that the court retains the authority to seal documents "when justice so requires").

26. In light of the foregoing, the Court should overrule the Media Objection and grant the Ad Hoc Redaction Motion, permitting the Ad Hoc Committee to redact the names and addresses of its individual members.

### C. Cause Exists Under the Bankruptcy Code and Bankruptcy Rules to Authorize the Ad Hoc Committee to Redact the Names and Addresses of Entity Members Under Section 107(c) Because Disclosing Such Information will Harm Individuals

27. Though some have argued that section 107(c)'s protections do not apply to entities, this argument ignores that the language of this section is not so limited and that (i) entities can only act through individuals, and (ii) the disclosure of contact information of entities would create undue risk of (a) identity theft of those individuals who are affiliated with the entity, and (b) harm to individuals' interest in those entities. Notably, the names, addresses, and other personally identifiable information of individuals employed by, or associated with, institutional members is frequently available online. Bad actors could identify and target these individuals with as much ease as any other individual. Thus, individuals are equally at risk of suffering harm to their person or property through the disclosure of their affiliated entities.

28. For example, in 2022, hackers stole from approximately 6,000 Coinbase accounts, using acquired personal information like email addresses, passwords, and phone numbers to complete the theft.[13] Another example is the theft of $415 million crypto experienced at FTX due to hacking. [*See* D.I. 507]. Such harms are not confined to the entity itself, but harm underlying individuals. Thus, the risks contemplated under section 107(c) are not limited exclusively to situations in which individuals act solely in their individual capacity.

29. Consequently, the Ad Hoc Committee requests that the Court permit the redaction of the names and addresses of Ad Hoc Committee entity members pursuant to section 107(c).

**D. Cause Exists to Authorize the Debtors to Redact the Names of Individuals Protected by the GDPR to Avoid Liability Under the GDPR**

30. There is also cause to authorize the redaction of the names of individual residents and citizens of the UK and EU member countries to ensure that the Debtors (or the Ad Hoc Committee, as explained below) do not incur liability under the GDPR. To be clear, the Ad Hoc Committee does not claim that the GDPR trumps US law. Rather, the Ad Hoc Committee submits that the risk of violating the GDPR and incurring potential sanctions outweighs any potential benefit of disclosing in public filings the names of individuals protected by the GDPR.

31. The GDPR penalizes certain public use of personal information of individuals in the EU and UK. More specifically, the GDPR penalizes the disclosure of an individual's "Personal Data" by "Data Controllers," which are entities that "determine[] the purposes and means of processing personal data," GDPR Art. 4(1), (7). "Personal Data" includes names and surnames of

---

[13] *See* Scott Ikeda, *Coinbase Hack Attributed to a Multi-factor Authentication Flaw that Allowed Scammers to Steal Cryptocurrency from 6,000 Accounts*, *CPO Magazine*, Oct. 14, 2021 https://www.cpomagazine.com/cyber-security/coinbase-hack-attributed-to-a-multi-factor-authentication-flaw-that-allowed-scammers-to-steal-cryptocurrency-from-6000-accounts/#:~:text=Hackers%20stole%20cryptocurrency%20from%20about,state%20Attorney%20General's%20office%20disclosed.

identified or identifiable natural persons or any information relating to the same. GDPR Art. 4(1). Violations of GDPR can result in incredibly harsh penalties, possibly up to the higher of €20,000,000 or 4% of worldwide annual turnover of the preceding financial year. GDPR Art. 83(5).

32. The Ad Hoc Committee could be a "Data Controller" under the GDPR and thus subject to its requirements (and sanctions). Pursuant to Article 6 of the GDPR, the Ad Hoc Committee must have a legal basis to process the personal data of EU or UK subjects, including their names and surnames. As no such legal basis applies here, the disclosure of the names of individuals protected by the GDPR may cause the Ad Hoc Committee to incur significant penalties as set forth in the GDPR.

33. Courts in this district do not require parties to bear the risk that the court's interpretation of the GDPR is incorrect. For example, in *In re Forever 21, Inc.*, in overruling the US Trustee's objection to the redaction of names and addresses of individuals protected by the GDPR, the Court noted that the Debtors would face "enormous penalties" if personal information was disclosed in violation of the GDPR, and held that "the Court is unwilling to place the debtors in such jeopardy." *In re Forever 21*, No. 19-12122 (KG) (Bankr. D. Del.), Dec. 19, 2019 Hr'g Tr. 62:10-12; *see also In re VIP Cinema Holdings, Inc.*, No. 20-10345 (MFW) (Bankr. D. Del.), Mar. 10, 2020 Hr'g Tr. at 28:24-25, 29:1 ("I think the risk of damage and fines under the EU regulations outweighs the need for disclosure of [addresses] at this point."). The Court should decline to impose such a risk on the Ad Hoc Committee here as well.

34. For these reasons, courts in this district have repeatedly overruled objections and authorized the redaction of names and addresses based on section 107(c) and/or the GDPR (or other foreign data protection laws). *See, e.g.*, *In re Alpha Latam Mgmt., LLC*, (D.I. 159)

(overruling the objection of the US Trustee and authorizing redactions based on a Colombian data protection law); *In re Clover Techs. Grp., LLC*, (D.I. 146, 155) (overruling the objection of the US Trustee and authorizing redactions based on section 107(c) and the GDPR); *In re Forever 21, Inc.*, (D.I. 605), Dec. 19, 2019 Hr'g Tr. at 62:16-22 (overruling the objection of the UST and authorizing the redaction of "the names and home addresses of European Union member countries' citizens, limited to individuals, from the Creditor Matrix and any other paper filed or to be filed with the Court in these chapter 11 cases"); *In re Akorn, Inc.*, No. 20-11177 (KBO), at ¶ 4 (Bankr. D. Del. May 22, 2020) (D.I. 74) (authorizing redaction of names and addresses of "individuals protected by the GDPR"); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. July 10, 2020) (D.I. 66) (same); *In re Brooks Bros. Grp., Inc.*, No. 20-11785 (CSS) (Bankr. D. Del. July 10, 2020) (D.I. 107) (same); *see also In re Secure Home Holdings LLC*, No. 21-10745 (JKS) (Bankr. D. Del. Apr. 27, 2021) (D.I. 54) (authorizing redaction of names and addresses of individual customers pursuant to section 107(c)(1)).

35. The Court should do the same here, and overrule the Media Objection.

**JOINDER TO THE JOINT REDACTION MOTION**

36. The Ad Hoc Committee joins in and respectfully requests that the Court grant the Debtors' and Official Committee's Joint Redaction Motion, subject to the clarification that the relief sought in the Joint Redaction Motion be applied equally to all of the Debtors' customers, including the members of the Ad Hoc Committee. It would be inequitable to protect non-US customers while members of the Ad Hoc Committee, who joined the Ad Hoc Committee for the purpose of protecting non-US customers rights as a whole, are left exposed. The relief should be extended to its reasonable and logical conclusion, which is to provide protection for ***all*** customers of the Debtors.

37. Therefore, the Ad Hoc Committee joins in the Joint Redaction Motion and requests that the Court extend any relief granted thereunder equally to any filings made by the Ad Hoc Committee.

[*Remainder of Page Intentionally Left Blank.*]

Date: May 12, 2023
Wilmington, Delaware

*/s/ Michael A. Ingrassia*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Paige N. Topper (No. 6470)
Michael A. Ingrassia (No. 7068)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
ptopper@morrisnichols.com
mingrassia@morrisnichols.com

-AND-

**EVERSHEDS SUTHERLAND (US) LLP**
Peter A. Ivanick
Sarah E. Paul
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
peterivanick@eversheds-sutherland.com
sarahpaul@eversheds-sutherland.com

-and-

Erin E. Broderick
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com

-and-

David A. Wender
Nathaniel DeLoatch
999 Peachtree St NE
Atlanta, Georgia 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
davidwender@eversheds-sutherland.com
nathanieldeloatch@eversheds-sutherland.com

*Counsel to the Ad Hoc Committee of Non-US Customers of FTX.com*