# EXHIBIT L

**CONFIDENTIAL**

FTX Line of Credit Agreement

The agreement between FTX Digital Market Ltd. ("FTX") and you, the Customer, is subject to the terms and conditions of the Line of Credit Agreement attached hereto (the "Agreement"). In connection with the Agreement, please note the following key terms that are qualified in their entirety by the Agreement:

1. FTX is offering you a Line of Credit. The maximum amount that may be drawn under the Line of Credit being offered to you hereby is $1,000,000. FTX may decline to extend you credit under or reduce a Line of Credit or any portion thereof at any time. FTX may terminate any Line of Credit at any time and for any or no reason. FTX may change the maximum amount of any Line of Credit at any time and for any or no reason.
2. The amounts Utilized for Collateral (as defined in the Agreement) under the Line of Credit will bear interest at a rate that may change with at least 24 hours' notice to Customer. As of the date hereof, the interest rate on amounts Utilized for Collateral is 3% per annum (the "Collateral Interest Rate").
3. The amounts Utilized for Spot (as defined in the Agreement) under the Line of Credit will bear interest at a rate that fluctuates based on FTX's borrow and lend auction and is determined on an hourly basis throughout the period of Utilization (the "Spot Interest Rate").
4. All interest fees payable by Customer under this Agreement will be automatically deducted from Customer's Account at 00:30 UTC every day without notice
5. You are required to maintain in your FTX account(s) assets that satisfy FTX's collateral requirements. For the Line of Credit, the amount of collateral in your account must exceed 100% (the "Required Collateral Ratio") of the LoC Face Amount (as defined in the Agreement). FTX may adjust the Required Collateral Ratio from time to time by giving you at least 24 hours' written notice. FTX is not responsible for notifying you if you fall below the Required Collateral Ratio, and it is solely your responsibility to monitor your compliance with the Required Collateral Ratio. If the Required Collateral Ratio requirement is not met, you will have no longer than 24 hours (the "Top Up Period") to bring your account into compliance with the Required Collateral Ratio of this Line of Credit, and the Lender may apply special interest in respect of outstanding amounts under the Line of Credit at an indicative rate of 10% per day and take other actions as set forth in the Agreement including liquidation of your assets.

This LINE OF CREDIT AGREEMENT (this "Agreement") is effective as of October 20th, 2022 as a deed between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("Customer" or "you"), acknowledging acceptance hereto, and FTX Trading Ltd. ("FTX" or "Lender"), a company organized and existing under the laws of Antigua and Barbuda (Customer and FTX are referred to, collectively, as the "Parties" and, individually, as a "Party").

WHEREAS, Customer is a customer of the FTX.com cryptocurrency exchange and FTX desires to afford Customer with access to discretionary line of credit facilities (obligations under such line of credit facilities, together with all other obligations owing by Customer to FTX hereunder, the "Indebtedness") as set forth herein;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1. **Discretionary Line of Credit**.
   (a) FTX may provide a line of credit (a "Line of Credit" or "LoC") to Customer in an amount denominated in United States dollars (USD) established by FTX (such uncommitted amount, the "LoC Face Amount").
   (b) At any time Customer desires for FTX to provide an advance under the LoC, Customer may request such advance from FTX, and FTX, in its sole and absolute discretion and with or without reason, may approve or deny such request.
   (c) If Lender agrees to advance any sum requested by Customer (or such lower amount as Lender may elect in its sole and absolute discretion), Lender will send or credit USD in such amount (the "Credited Amounts", generally, equal to the LoC Face Amount) to Customer's FTX account, as opened with the email address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Customer Account", and, together with all other FTX accounts of Customer, the "Customer Accounts").
   (d) Credited Amounts may be used solely for two purposes: (1) as collateral for trading derivatives on the FTX platform, and (2) for spot margin trading on the FTX platform. For the avoidance of doubt, Credited Amounts may not be withdrawn from FTX. In addition, spot margin must be enabled at all times for any subaccounts that hold a balance from the LoC.
   (e) All Credited Amounts constitute Indebtedness under this Agreement, including (a) all amounts used as collateral for derivatives trading, and (b) all amounts used for spot margin trading.
   (f) Nothing contained herein limits, changes or affects Customer's obligation to pay interest and fees for spot margin borrowing. Customer remains fully and solely liable to pay all spot margin borrowing interest and fees on the FTX platform.

2. **Collateral**.
   (a) Collateral Requirement. Throughout the term of this Agreement, Customer shall cause Collateral consisting of eligible cash (excluding any Credited Amounts) and cryptocurrency acceptable to FTX in its sole discretion (such Collateral, the "Acceptable Collateral") with a value of at least the Required Collateral Ratio to be maintained in the Customer's Account (such requirement, the "Margin Requirement"). The value of collateral held in the Customer's Account must always remain above Margin Requirement, as determined by FTX in accordance with the terms hereof. FTX shall not have any obligations to provide notice to the Customer in the event that the Margin Requirement is not met.

(b) <u>Determination of Margin Requirement</u>. In calculating the value of Acceptable Collateral for purposes of determining whether the Margin Requirement is met, FTX may assign a value to assets by "haircutting" the market value by a certain percentage (generally ranging from 1% to 40%) in its sole discretion with or without notice. Such haircuts and the calculation of Margin Requirements may change or be set by taking into account various factors, which may include, among others, (i) the liquidity and volatility of an applicable asset, (ii) considerations as to the Customer's status, including but not limited to a decline in creditworthiness, and (iii) the general condition of the market.

(c) <u>Top Up Period</u>. If at any time the Margin Requirement is not met, (i) Customer may no longer make additional drawdowns under the Line of Credit, (ii) FTX shall have the right, in its sole discretion, to liquidate the Customer's account in accordance with Section 2(f) herein to meet the Margin Requirement (provided that FTX shall only do so with Good Cause prior to the expiration of the Top Up Period), and (iii) Customer shall immediately, and in any event, within the Top Up Period, deliver additional Acceptable Collateral to the Customer Account, such that the Margin Requirement is met. If the Margin Requirement is not met during the Top Up Period, FTX may apply special interest in respect of all Indebtedness outstanding at that time until the Margin Requirement is met at a rate of up to 10% per day; <u>provided</u>, that, in no event will interest charged hereunder, including the special interest, exceed the maximum amount permitted by applicable law. "<u>Good Cause</u>" means FTX reasonably determines that (x) due to market conditions or the financial, operational or other condition of Customer, there is a risk that FTX will not recoup the Indebtedness (without limiting the foregoing, such risk shall be deem to be satisfied if Acceptable Collateral falls under 50% of the LoC Face Amount), (y) it is necessary to protect a market or other uses on the FTX platform, or (z) an Event of Default is likely to occur.

(d) <u>Extensions</u>. FTX may in its discretion extend the Top Up Period for a Customer. If FTX chooses to do so, it is understood that such an extension shall not in any way waive or diminish FTX's right to liquidate or close out all or any of the Customer's positions at any time.

(e) <u>Subaccounts.</u> Unless otherwise notified by FTX in writing, the Margin Requirement shall be calculated on a net basis across all subaccounts in the Customer's Account.

(f) <u>Liquidation to Satisfy Margin Requirement</u>. Customer acknowledges that, if the Margin Requirement is not met at any time, the Collateral may be liquidated without notice to satisfy the Margin Requirement, whether before, during or after any Top Up Periods (provided that FTX shall only liquidate the Collateral to satisfy the Margin Requirement with Good Cause prior to the expiration of the Top Up Period). Customer acknowledges that it is not entitled to choose which assets in its account(s) are liquidated or sold by FTX to meet such requirements. Customer hereby authorizes FTX to sell any assets, cancel any open order, close any outstanding order, and otherwise take any action deemed necessary to obtain liquidity to bring the Customer's account into compliance with the Margin Requirement. FTX may liquidate any assets to satisfy the Margin Requirement by sales to third parties, acting as agent or principal, or purchase such assets for its own account and apply any of the proceeds to the Indebtedness due to FTX (it being agreed and understood the Customer shall be liable to FTX for any deficiency and remaining Indebtedness after such application).

(g) <u>Maintenance Margin</u>. Nothing contained herein shall limit, restrict or prevent the Customer's Account (including subaccounts) from being liquidated due to a failure to meet the Maintenance Margin Fraction Requirement. As used herein, "<u>Maintenance Margin Fraction Requirement</u>" means the margin fraction at which the FTX platform begins to liquidate a user's positions due to insufficient collateral, as it may be updated and/or changed from time to time (see https://help.ftx.com/hc/en-us/articles/360024780511-Complete-Futures-Specs). Without limiting the foregoing,

    Customer acknowledges that in the event that FTX reduces or terminates any Line of Credit, such that the Maintenance Margin Fraction Requirement is no longer met, the Customer's Account shall be subject to liquidation by the FTX platform's risk engine.

3. **On-Demand Payment**. Customer shall, upon written demand by FTX (which may be via email), pay to FTX the total amount drawn under the LoC and any accrued and unpaid interest and fees and other obligations or Indebtedness owing to FTX under this Agreement. For the avoidance of doubt, FTX may demand any such payment at any time.

4. **Interest**.
   (a) Customer shall pay interest on all amounts Utilized for Collateral arising under this Agreement at a rate per annum equal to the Collateral Interest Rate. Such interest shall accrue and be calculated based on the amount Utilized for Collateral and will be payable daily at approximately 00:30 UTC and automatically debited from the Customer Account. Customer is solely responsible for maintaining enough funds in the Customer Account to pay such interest.
   (b) Customer shall pay interest on all amounts Utilized for Spot arising under this Agreement at a rate per annum equal to the Spot Interest Rate. Such interest shall accrue and be calculated based on the amount Utilized for Spot and will be payable on an hourly basis and automatically debited from the Customer Account. Customer is solely responsible for maintaining enough funds in the Customer Account to pay such interest.
   (c) Interest will be calculated and assessed in accordance with the schedule and policies set forth by FTX. In particular, the Spot Interest Rate is based on FTX's P2P spot margin market's borrow/lend rate which is determined via an hourly auction, and can vary considerably depending on market conditions. The Collateral Interest Rate may change upon 24 hours' written notice to Customer. Upon any adjustment of the Collateral Interest Rate by FTX, Customer may elect to terminate this Agreement in accordance with Section 18 below. If Customer does not elect to terminate this Agreement within 24 hours after a Collateral Interest Rate adjustment, Customer shall be deemed to have consented to such changed Collateral Interest Rate.
   (d) Interest will not accrue on Credited Amounts unless such amounts are Utilized.
   (e) Certain Definitions:
     (i) "*Utilized*" means Credited Amounts that are Utilized for Collateral or Utilized for Spot.
     (ii) "*Utilized for Collateral*" is the amount required to prevent liquidation of derivative positions in the Customer Account.
     (iii) "*Utilized for Spot*" is the amount used to make a spot margin purchase.

5. **Collateral**. The Customer hereby pledges and grants a continuing lien on and security interest in, all of the Customer Accounts, all subaccounts, and all cash (including, for the avoidance of doubt, Credited Amounts), cryptocurrency, and other amounts held therein or credited thereto and any proceeds of the foregoing, including but not limited to, hard forks, airdrops, dividends, interest, premiums and principal payments (collectively, the "Collateral") as continuing security for the full and punctual payment, performance and discharge of the Indebtedness, until the final satisfaction of all liabilities and performance of all obligations of Customer to FTX under this Agreement. FTX shall have all the remedies of a chargee under the laws of the Bahamas and Customer shall not grant any other person a lien against the Collateral in or in any right, title or interest in or to the Collateral without the prior written consent of FTX. All Collateral may be applied to the Indebtedness due to FTX (it being agreed and understood the Customer shall be liable to FTX for any deficiency and remaining Indebtedness after such application).

6. **Representations and Warranties**. Customer hereby represents and warrants to FTX that:

    (a) If Customer is an entity, Customer is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation and, if relevant to such laws, in good standing.

    (b) If Customer is an individual, Customer (i) is an adult individual and is sui juris and (ii) is not under any restraint or is in any respect incompetent.

    (c) Customer has the power to execute this Agreement, to deliver this Agreement and to perform its obligations hereunder.

    (d) The execution, delivery and performance of this Agreement do not contravene (1) Customer's constituent documents, if applicable (2) any applicable law, (3) any judgment, award, injunction or similar legal restriction binding on it or its property, or (4) any material agreement to which Customer is a party.

    (e) This Agreement has been duly and validly authorized, executed and delivered on behalf of Customer and constitutes the legal, valid and binding obligations of Customer enforceable against Customer in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

    (f) No license, consent, authorization or approval or other action by, or notice to or filing or registration with, any governmental authority (including any foreign exchange approval), and no other third-party consent or approval, is necessary for the due execution, delivery and performance by Customer of this Agreement.

    (g) Customer is a sophisticated party and fully familiar with the inherent risks involved in the transactions contemplated in this Agreement, including, without limitation, risk of new financial regulatory requirements, potential loss of money and risks due to volatility of the prices of the amounts borrowed hereunder and the assets granted as collateral and delivered as margin hereunder, and voluntarily takes full responsibility for any risk to that effect.

7. **Covenants**. The Customer hereby covenants that during the term of this Agreement:

    (a) The Customer shall at the Lender's reasonable request from time to time, make available such information as Lender deems necessary in order to assess the Customer's continued eligibility to receive and maintain the Line of Credit or ability to participate in margin trading, which information may include but is not limited to information regarding the assets, liabilities and net worth of the Customer.

    (b) Customer will promptly execute and deliver all instruments and documents, and take all actions, that may be reasonably necessary, or that FTX may reasonably request, in order to perfect and/or protect the assignment and security interest granted hereby or to enable FTX to exercise and enforce its rights and remedies hereunder with respect to the Collateral, all associated financial interests, titles, and rights held therein or credited thereto and all proceeds thereof. Without limiting the generality of the foregoing, Customer hereby authorizes the filing of such financing or continuation statements, or amendments thereto, and shall execute or deliver such other instruments, endorsements or notices, as may be reasonably necessary or desirable or as FTX may reasonably request, in order to perfect and preserve the assignments and security interests granted hereby.

    (c) Customer will not use any proceeds of the Line of Credit (i) in violation of any anti-corruption laws, (ii) for the purpose of funding, financing or facilitating any activities, business or transaction of or with any person subject to sanctions, or in any sanctioned country or (iii) in violation of any applicable sanctions. Without limiting the foregoing, Customer shall not permit the proceeds of the Line of Credit to be withdrawn from FTX exchange or to be used for spot trading.

8. **Event of Default**. Any of the following events shall constitute an event of default hereunder, and shall be herein referred to as an "Event of Default":
   (a) the failure of Customer to pay, when due, any portion of the Indebtedness or any other payment obligation under this Agreement or any other agreements, instruments, and documents executed in connection with this Agreement that are intended to create, perfect, secure or evidence liens or any other obligations in connection with the Indebtedness;
   (b) any representation or warranty of the Customer in connection with this Agreement is or becomes false;
   (c) the failure of Customer to perform or observe any term, condition, covenant, provision, or agreement contained in this Agreement (other than those specified in clauses (a) and (b) above);
   (d) (i) the Customer stops or suspends payment of any of its debts or is unable to, or admits its inability to, pay its debts as they fall due; (ii) the Customer commences negotiations, or enters into any composition, compromise, assignment or arrangement, with one or more of its creditors (excluding Customer, in its capacity as a lender) with a view to rescheduling any of its indebtedness (because of actual or anticipated financial difficulties); or (iii) a moratorium is declared in respect of any indebtedness of the Customer;
   (e) the occurrence of any default, event of default or other similar condition or event (however described) in respect of Customer or any of its affiliates under one or more agreements or instruments with FTX or any of its affiliates;
   (f) the value of the Customer's assets are less than its liabilities (taking into account contingent and prospective liabilities).
   (g) Customer's insolvency, appointment of a receiver for all or a part of Customer's property, the making of any assignment by Customer for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Customer or upon the issuing of any writ of attachment by trustee process or otherwise or a restraining order or injunction affecting any of the Customer's property; provided, however, if any such proceeding is commenced against the Customer, the Customer shall have thirty (30) days in which to cause such proceeding to be dismissed;
   (h) the death, dissolution, termination of existence, declared insolvency or failure in business of the Customer; or
   (i) there occurs, in the reasonable judgment of the Lender, a material adverse change in (a) the business, assets, liabilities, prospects or financial or other condition of Customer, (b) the ability of Customer to perform any of its obligations under this Agreement, (c) the Lender's liens on the Collateral or the priority of such liens (including the resignation or notice of resignation of any applicable securities intermediary), (d) the rights of or benefits available to Lender under this Agreement or (e) market conditions.

9. **Lender's Remedies**. Upon the occurrence of any Event of Default, FTX may, at its option: (i) declare any amounts hereunder immediately due and payable with effect upon notice to Customer; (ii) terminate this Agreement upon notice to Customer; (iii) liquidate all or any of the Collateral to meet the Margin Requirement or (iv) exercise all other rights and remedies available to FTX hereunder, under applicable law, or in equity, against Customer and/or its affiliates and their respective FTX accounts. The costs, fees and expenses of collection of the Indebtedness, recovery, and any unpaid deficiency in the accounts of the undersigned

with FTX, including, but not limited to attorney's fees, incurred and payable or paid by FTX shall be payable to FTX by Customer on demand.

10. **Governing Law; Jurisdiction**.
    (a) This Agreement and all matters relating to this Agreement (whether in contract, statute, tort (including, without limitation, negligence) or otherwise), is governed by, and construed in accordance with the laws of the Bahamas and all laws applicable therein.
    (b) Any dispute, controversy or claim arising out of, relating to, or having any connection with this Agreement, including any dispute as to its existence, validity, interpretation, performance, breach or termination shall be finally settled by binding arbitration under the Rules of Arbitration of the International Chamber of Commerce ("ICC"). The Emergency Arbitrator Provisions of the ICC Rules of Arbitration shall not apply. Such arbitration shall be administered in the Bahamas.
11. **Amendments**. Any amendments or modifications to this Agreement must be in writing and executed by both parties.  Any waiver by Lender of any provision of this Agreement must be in writing executed by Lender.
12. **Entire Agreement**. This Agreement constitutes the entire Agreement among the Parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements relating to the subject matter of this Agreement.
13. **Successors and Assigns**. This Agreement shall bind and inure to the benefit of the respective permitted successors and assigns of each of the Parties; provided, that the Customer may not assign this Agreement or any rights or duties hereunder without the prior written consent of FTX.
14. **Severability of Provisions**. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision. In the event that any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision; provided that such severability shall be ineffective if it materially changes the economic benefit of this Agreement to any Party.
15. **Counterpart Execution**. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by email or other electronic method of transmission (ie DocuSign) shall be equally as effective as delivery of an original executed counterpart of this Agreement.
16. **Relationship of Parties**. Nothing contained in this Agreement shall be deemed or construed by the Parties, or by any third party, to create the relationship of partnership or joint venture between the parties hereto, it being understood and agreed that no provision contained herein shall be deemed to create any relationship between the Parties hereto other than the relationship of borrower and lender.
17. **Continuing Agreement**.  This Agreement, the covenants and agreements herein contained and the security interests granted hereunder shall continue in full force and effect until the full and final payment of all obligations and liabilities of Customer to Lender hereunder.
18. **Term and Termination.**  The term of this Agreement shall commence on the effective date of this Agreement set forth in the preamble hereto, provided that (a) either party may terminate this Agreement by providing written notice of a desire to terminate this Agreement no less than 30 days prior to the desired date of termination; (b) if the rate of interest charged by FTX is modified, the Customer may terminate this Agreement by providing written notice within 24 hours after such change; and (c) Lender may terminate this Agreement at any time with or without notice for Good Cause.  Notwithstanding the foregoing, if any Indebtedness is outstanding at the time either party sends a notice of termination pursuant to this Section 18 (other than a termination pursuant to Section 9), such termination will not be effective until all

19. **No Waiver**. The failure of or delay by Lender to enforce an obligation or exercise a right or remedy under any provision of this Agreement or to exercise any election in this Agreement shall not be construed as a waiver of such provision, and the waiver of a particular obligation in one circumstance will not prevent Lender from subsequently requiring compliance with the obligation or exercising the right or remedy in the future.
20. **Execution as a Deed**. The Parties hereto intend that this Agreement takes effect as a deed notwithstanding that any Party hereto may execute it by electronic signature or other online acceptance or acknowledgement.
21. **Miscellaneous**. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders where necessary and appropriate. This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement. The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement. The word "include", "includes" or "including" will be interpreted on an inclusive basis and be deemed to be followed by the words "without limitation". A reference to any agreement, instrument or document is to be construed as a reference to that agreement, instrument or document as it may have been amended, supplemented, replaced or novated from time to time.

**FTX DIGITAL MARKETS LTD:**

Signature: _____          Signature: _____

Name: _____                 Name: _____

Title: _____                    Title: _____

                                                                  Specifications: _____