## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 1324, 1325, 1406, 1467** |

**REPLY OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS IN SUPPORT OF MOTION FOR AN
ORDER AUTHORIZING THE MOVANTS TO REDACT OR WITHHOLD
CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS
AND PERSONAL INFORMATION OF INDIVIDUALS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee" and, together with the Debtors, the "Movants"), hereby jointly submit this reply (the "Reply") in further support of the *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals* [D.I. 1324] (the "Motion" or "Mot.").[2] On May 3, 2023, Bloomberg L.P., Dow Jones & Company Inc., The New York Times Company and The Financial Times Ltd. (collectively, the "Media Objectors") filed an objection to the Motion [D.I. 1406] (the "Media Objection" or "Media Obj."), which incorporated their previously filed objection to the motion of the Ad Hoc Committee of

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Non-US Customers [D.I. 1226] (the "Prior Media Objection" or "Prior Media Obj."). On May 9, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee" and, together with the Media Objectors, the "Objectors") also filed an objection to the Motion [D.I. 1467] (the "UST Objection" or "UST Obj." and, together with the Media Objection, the "Objections").

**Preliminary Statement**

1.     In December 2022, each of the Media Objectors and the U.S. Trustee objected to the relief sought in the Original Motion, which is nearly identical to the relief sought in the current Motion. This Court overruled both of those objections at the Hearing following testimony from Mr. Cofsky of Perella Weinberg Partners, the Debtors' investment banker, and oral argument. Now, in response to the Motion, the Objectors provide nothing new that would be grounds for the Court to deviate from its prior decision with respect to the need to protect the Debtors' customer lists from disclosure pursuant to section 107(b)(1) of the Bankruptcy Code, or compliance with the GDPR. In fact, the U.S. Trustee simply incorporates its prior overruled objection by reference and renews it, adding in only a request for certain exceptions in the event the Motion is granted.

2.     Furthermore, the Motion explains in detail, with support from Mr. Sheridan's declaration, why individual customer names should be redacted to avoid the risk of injury as provided by section 107(c) of the Bankruptcy Code. The U.S. Trustee fails to address Mr. Sheridan's testimony at all, and the Media Objectors cavalierly dismiss Mr. Sheridan's testimony without providing any evidence of their own.

3.     The Objectors' assertions, all of which are unsupported, should be rejected. The facts of these Chapter 11 Cases justify two independent bases for the Court to authorize the continued redaction of the Debtors' customers' names: (i) under section 107(b) of the Bankruptcy

Code, for an additional 90 days, to permit the Debtors further time to determine their reorganization path while preserving the value of their customer lists and information thereon; and (ii) under section 107(c) of the Bankruptcy Code, permanently, to protect customers from the threat of malefactors, theft and fraud. Mr. Cofsky and Mr. Sheridan have and will further testify in support of this relief. In addition, the Movants request that the Court authorize redaction of names of natural persons covered by the GDPR and Japan data privacy law, based on the plain statutory language, to ensure the Debtors are not subjected to potential consequences due to non-compliance with these foreign laws.

4.      It is telling that the Objectors have no economic stake in the outcome of these Chapter 11 Cases and that there is not a single customer who opposes the Motion, notwithstanding that it is the customers who face the risks—both financial and personal—from the forced, involuntary disclosure of their names and, with respect to non-individual customers, their contact information. The Debtors and the Committee take seriously their obligations to balance the various considerations at issue here:  transparency, maximizing value, and protecting customers from undue risk. The Movants submit that the relief requested in the Motion provides the appropriate balance, and the Objections should again be overruled.

## Reply

**I.      Cause Still Exists to Authorize the Movants to Redact Customers Names and Contact Information Pursuant to Section 107(b)(1) of the Bankruptcy Code**

### A.      The Objectors Provide No Basis to Deviate from the Court's Prior Ruling

5.      This Court determined in January 2023 that "it goes without saying that a customer list in any bankruptcy case is something that is protected by 107(b) as a trade secret." (Jan. 11, 2023 Hr'g Tr. 103:1–3.) The Court held that "the [Debtors] . . . put on sufficient evidence" with respect to this issue and permitted the Debtors to continue sealing customer names

and institutional addresses for a period of three months to preserve the value of the Debtors' customers lists.  (*See id.* 102:25–103:1; 103:10–11.)  "By then," the Court noted, "I think, based on the testimony and the arguments of counsel, we'll have a better sense of whether or not the customer lists is something that purchasers of these assets find value in and whether they are interested in making sure that they remain anonymous at this point."  (*Id.* 103:12–16.)

6.    Since that time, the Debtors have made significant progress in advancing these Chapter 11 Cases, and have been granted a consensual six month extension of their exclusivity period to file and solicit a plan of reorganization, to September 7 and November 6, 2023, respectively.  *See Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 1276].  But, as that extension indicates, there is more to do.  The Debtors' efforts to explore all plan structures and the best way to maximize the value of the exchanges' assets for stakeholders, of which the customer lists are material assets, remain ongoing.  To prevent destruction of the value of those customer lists and to permit the reorganization process to advance, the Movants are requesting a modest extension of the Redaction Deadline for an additional 90 days.

7.    The Objectors offer no new arguments as to why this limited request should be denied.  The U.S. Trustee merely recycled its prior objections, which the Court already overruled with respect to this precise question.  Many of those arguments were disproven at the Hearing.  For example, the U.S. Trustee argues that the Debtors have not met their burden under section 107(b) because they "provide only conclusory statements regarding the information's commercial importance."  (UST Obj. Ex. A ¶ 53.)  This is false.  In fact, Mr. Cofsky testified at the Hearing and was cross-examined by the U.S. Trustee regarding the commercial importance of the customer lists and keeping them confidential.  Mr. Cofsky will reaffirm his views in testimony

at the hearing on this Motion.  Likewise, the U.S. Trustee's opinion that "it is difficult to imagine how [customers] could be poached if all that is disclosed is their name, with no contact information" (UST Obj. Ex. A ¶ 60), has been rebutted with testimony from Mr. Cofsky.  The Sheridan Declaration likewise demonstrates how a full customer "dossier" could be determined based on name alone.  (Sheridan Decl. ¶ 9.)

8.      The U.S. Trustee's renewed reliance on the FTX Trading Ltd. Privacy Policy (*see* UST Obj. Ex. A ¶¶ 58–59) remains misguided.  Whether the Debtors are *authorized during a sale* to transfer customer names to a buyer has no bearing on whether those names are currently confidential or whether it would be value destructive to publicly disclose such names outside of the context of a sale or reorganization.

9.      The Media Objection at least acknowledges that evidence has been presented and findings made by the Court since the Original Motion was filed.  (Media Obj. ¶¶ 12–16.)  However, the Media Objectors' arguments fare no better.  The Media Objectors argue that Mr. Cofsky's testimony at the Hearing was "speculation all the way down" and insufficient to warrant continued sealing of the customer lists pursuant to section 107(b) of the Bankruptcy Code. (*Id.* ¶¶ 12, 15.)  But this Court has already expressly found that Mr. Cofsky's testimony *was* sufficient to establish that the customer lists are a trade secret under section 107(b).  (*See* Jan. 11, 2023 Hr'g Tr. 102:25–103:3.)  The Media Objection provides no basis for why that would no longer be the case, and instead repeats arguments that the Court has already rejected.  The Court should reject them again.

10.     The Objectors also cite to *In re Celsius Network LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022).  (*See* UST Obj. Ex. A, *passim*; Media Obj. ¶ 16.)  But the *Celsius* decision pre-dates the Original Order and, again, neither Objector has offered any reason why the Court should

now discard its own prior rulings, both in these Chapter 11 Cases and *In re Cred, Inc.*, No. 20-12836 (JTD) (Dec. 21, 2020) [D.I. 264], to follow that out-of-circuit decision.  Both Objections should be overruled and the Movants permitted to continue to redact names and addresses of customers pursuant to section 107(b) of the Bankruptcy Code.

**B.      The Objections Provide No Basis for Selective Exemption from the Scope of Redaction**

11.      The Objections each target selective information for exemption from the scope of the Order if the Motion is granted.  None have merit, and the Objectors provide no legal justification for the proposed carve-outs—and thus forced disclosure—of selective customer information.

12.      The Media Objectors request that the Court order the Debtors to publish either (i) the names of the Debtors' top 50 customers or (ii) the names of the Debtors' top 50 institutional customers.  (Media Obj. ¶ 13.)  The Media Objectors argue that, even if the Debtors' customer lists "as a whole" constitute commercial information—and the Court has held they do—"[the] Movants have made no showing that the names of the relatively small subset of customers that comprise FTX's top 50 creditors constitute confidential commercial information." (*Id.*)  This is completely backwards.  If the entire customer lists are protected by section 107(b), then by definition every name on those lists is so protected.  Furthermore, the Debtors' top 50 creditors are *likely some of the most valuable* names on their lists because those are the customers with the largest account balances as of the Petition Date.  Revealing the Debtors' largest customers would inflict a disproportionate amount of harm on the asset value of the Debtors' customer lists.  The Media Objectors cite nothing to support or justify imposing this unreasonable condition.

13.      The U.S. Trustee similarly requests certain exceptions to the authority to redact customer names.  The U.S. Trustee requests that the Court not permit the Movants to redact,

with respect to customers, (i) the names of insiders that are natural persons and the names and addresses of insiders that are not natural persons, and (ii) names of non-insiders that are natural persons and the names and addresses of non-insiders that are not natural persons when disclosure would be in a capacity other than as a customer.  (*See* UST Obj. ¶ 19.)  The U.S. Trustee does not specify the definition of "insider" it relies upon, but, in any event, provides no legal basis for the distinction being drawn in the context of protecting the Debtors' customer lists as confidential commercial information.  Moreover, as a practical matter, the U.S. Trustee ignores that it has the ability to view the unredacted version of any filing, and can thus seek Court approval of the unsealing of any individual names that were redacted that would otherwise fall into the bucket of insider "bad actors" whose names should be disclosed, to the extent such disclosure would benefit the public.  Indeed, the Debtors have already addressed this concern by generally disclosing the names of former directors and officers who are customers but have been publicly identified, such as Samuel Bankman-Fried and his inner circle.

14.     The Debtors, following consultation with the Committee, determined that redacting customer names for all purposes best protected those customers from being identified and poached, and is consistent with the terms of the Original Order.  The U.S. Trustee provides no compelling reason why the scope of the Original Order should be modified in this respect.

## II.     The Objections Confirm that Protection is Warranted for Individual Customer Names Pursuant to Section 107(c)(1) of the Bankruptcy Code

15.     Movants were mindful of this Court's statements at the Hearing on the Original Motion that in order to have Individual Customer Names sealed under section 107(c), evidence would be necessary to demonstrate that disclosure of such names would cause "undue risk" to the Debtors' individual creditors.  (*See* Jan. 11 Hr'g Tr. at 103:17–104:8 ("On the 107(c) issue, as I already indicated, I do want more on that because I do want to make sure I'm protect[ing]

the interests of these individuals. . . . I don't have enough on the record today to say that 107(c) applies, but I want to make sure that I'm doing the right thing.").)  The declaration of Mr. Sheridan, based upon his more than two decades in law enforcement investigating financial crimes, directly addresses this Court's concerns and establishes the evidentiary record necessary to redact Individual Customer Names pursuant to section 107(c).

16.    As set forth in the Motion and the Sheridan Declaration, and as will be demonstrated at the forthcoming hearing, the disclosure of the Individual Customer Names will expose such customers to a very real risk of financial and physical harm.  In opposition, the Objectors simply double down on their initial arguments and either ignore (the U.S. Trustee) or give short shrift to (the Media Objectors) the Movants' evidence.

17.    Initially, the U.S. Trustee does not even acknowledge, let alone address, the evidence presented through the Sheridan Declaration and, notwithstanding that evidence, nonsensically incorporates its argument from its prior objection—that Movants' have made "no attempt" to fulfill their burden of proof.  (*See* UST Obj. Ex. A ¶¶ 64, 69).  Beyond that, again solely relying on its prior objection, the U.S. Trustee essentially argues that this Court should discount section 107(c) and the harm that disclosure may engender because certain of the Debtors had a privacy policy that permitted disclosure of personally identifiable information in certain limited circumstances.  (*See id.* ¶ 67.)  To the contrary, the Privacy Policy recites specific circumstances under which the Debtors may determine to share Individual Customer Names, such as to "business partners with whom we [the Debtors] jointly offer products or services" and "advertising partners to set Technologies and other tracking tools" to collect aggregate information on customers.  (*See id.*)  But these specified circumstances do not demonstrate that customers

authorized disclosure of their names for all purposes, and they certainly did not authorize the Debtors to disclose their names in the context of these bankruptcy cases.[3]

18.     The renewed objection by the Media Objectors is also unavailing. At bottom, the Media Objectors concede that the public disclosure of Individual Customer Names may result in some harm to the Debtors' customers, but dismissively argue that such harm is not "undue" because "like everyone else," "sometimes, scammers target [crypto owners]." (Media Obj. ¶ 30.)  The facts, ignored by the Media Objectors, are to the contrary.  As Mr. Sheridan has and will testify, malefactors *do* prey specifically on consumers they believe to be holders of cryptocurrency.  (Sheridan Decl. ¶ 8.)  Unlike in a typical bankruptcy case, the Debtors' customer claims may be viewed as an indication of an individual customer's personal wealth because their claims are for the amount of assets held on the Debtors' exchanges, not the amount owed to a trade creditor, for example, for delivery of specified goods or services—which claim reveals nothing about that trade creditor's assets or wealth.  The Debtors' schedules, if not redacted for customer names, would enable malefactors to focus their attention on the Debtors' wealthiest customers and target their resources accordingly.  (*Id.* ¶ 11.)[4]

19.     In an effort to diminish the evidence presented, the Media Objectors instead posit—without any evidentiary support—that the Debtors' customers are somehow "more digitally savvy" and "well-equipped" to deal with malefactors because they are native crypto users.  (Media Obj. ¶ 24.)  Again, this proposition ignores the facts.  Prepetition, the Debtors sought to attract novice retail customers through their advertising and marketing efforts, noting that one need not

---

[3]     For the same reasons discussed in connection with section 107(b), *supra*, the U.S. Trustee's proposed exceptions are illogical and unsupported and should be rejected.

[4]     The Media Objectors' characterization of the *Celsius* scams suffers from the same fallacy.  (Media Obj. ¶¶ 28–29.)  While the Media Objectors may be comfortable with subjecting the Debtors' millions of customers to "would-be phishing scams includ[ing] a fake court order" (*id.* ¶ 28), the Movants are not.

know much about cryptocurrency to invest with FTX.  *See* Gilad Edelman, *The Crypto Industry Is Getting Too Honest*, WIRED (May 5, 2022), https://www.wired.com/story/ftx-steph-curry-crypto-ad-ponzi-scheme (quoting pro basketball player Steph Curry in an FTX commercial: "'I'm not an expert—and I don't need to be,' Curry finally says into the camera, holding up the FTX app on his phone.  'With FTX, I have everything I need to buy, sell, and trade crypto safely.'"; and commenting that "the [FTX] ad is clearly targeted at people who have hesitated to trade crypto because they don't understand it.  The message to them:  Don't worry, neither does Steph [Curry]!  And perhaps, by extension, neither does anyone!  If everyone else is operating in ignorance, maybe you're not at any big disadvantage.").  The assumption that cryptocurrency investors are all experts and not susceptible to scams is also controverted by the sheer numbers of incidents occurring in the cryptocurrency field.  (Sheridan Decl. ¶¶ 13–22.)

20.     Finally, not only do the Media Objectors try and fail to minimize and dismiss the risks of disclosing Individual Customer Names, they also fail to demonstrate why disclosure of customer names is so important in these Chapter 11 Cases that customers should be put at risk of injury in the many ways explained by Mr. Sheridan.  In these circumstances, the public interest in disclosure is adequately satisfied even with the redaction of customer names because: (i) to the extent the Media Objectors or any other party has grounds to seek disclosure of specific customer names for a specific purpose—such as to "scrutinize" claims trades disclosed on the dockets of these cases—they will of course be able to do so without jeopardizing every other individual customer of these estates, and (ii) parties-in-interest, including the Committee and the U.S. Trustee, among others, can view the sealed information subject to appropriate confidentiality restrictions and protections, thereby providing the check on the Debtors that public disclosure is meant to provide.  Simply put, although some in the public would have an interest in the media's

revelation that a certain celebrity may be a customer of these estates, that interest does not outweigh the very real risks to that (or any other) customer.  For these reasons, the Individual Customer Names should be permanently sealed pursuant to section 107(c).

**III.    Cause Exists to Authorize Redactions to Comply with Data Privacy Laws**

21.    The Objectors again argue that the Court should deny the Movants' request for authorization to redact the names of individuals protected by the GDPR and Japan data privacy laws.  (UST Obj. ¶ 20; *id.* Ex. A ¶¶ 37–47, 70–81; Media Obj. ¶¶ 31–35.)  The Court can and should reject these arguments based on a review of the plain statutory language.

22.    As stated in the Motion, the Movants are not asking this Court to determine that the GDPR or the APPI supersedes U.S. bankruptcy law.  (Mot. ¶ 44.)  Rather, the Movants believe that the plain language of these statutes subject the Debtors to compliance in those jurisdictions, and the estates are subject to risk of financial harm from failing to do so.  (*Id.* ¶ 45.) The Objectors do not engage on the risks to the Debtors or explain why subjecting the Debtors and their stakeholders to those risks is necessary.

23.    In addition, the U.S. Trustee's arguments regarding the GDPR continue to be flawed and ignore the clear statutory language.  As the Debtors previously explained, the U.S. Trustee's argument that the GDPR "facially appears to permit the disclosure" of personal data because "the transfer is necessary for the establishment, exercise or defence of legal claims" (UST Obj. Ex. A ¶ 76), conflates "processing" with "transferring."  This exception applies only to the transferring of personal data from a covered state to another country.  *See* GDPR Art. 49; UK GDPR Art. 49.  That language does not provide an independent basis to *process*—which includes disclosure—of personal data.  The U.S. Trustee provides no new arguments to counter this clear language.  The U.S. Trustee does not even engage on the terms of the APPI and its potential impact

on the Debtors.   Rather, the U.S. Trustee merely argues the Movants supplied insufficient information and did not provide a translation of the statute.  (UST Obj. ¶ 20.)[5]

24.     The Media Objectors go on to argue that the relief requested is not permissible under section 105(a) of the Bankruptcy Code if not expressly set forth in section 107(b) or 107(c) of the Bankruptcy Code.  (Media Obj. ¶¶ 32–33.)  Not so.  The Court can issue any order "appropriate to carry out the provisions of *this title*"—not simply section 107.  *See* 11 U.S.C. § 105(a) (emphasis added).  This includes, for example, section 1107(a) and the Debtors' associated duties as fiduciaries to "hold[] the bankruptcy estate and operat[e] the business for the benefit of [their] creditors."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

25.     Finally, the Objectors ignore that the risks from non-compliance with applicable foreign law, combined with the expectation of privacy of protected individuals, have historically resulted in this type of relief being routinely granted as a matter of course by this Court and other courts in this District.  *See, e.g.*, *In re Mallinckrodt Plc*, No. 20-12522 (JTD) (Nov. 10, 2020), D.I. 464 (authorizing the redaction of names and addresses of individuals protected by the GDPR); *In re Glob. Eagle Ent. Inc.*, No. 20-11835 (JTD) (July 23, 2020), D.I. 76 (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (June 11, 2021), D.I. 62 (authorizing debtors to redact names and addresses of any natural person whose personally identifiable information has been provided to an organization with an establishment in the United Kingdom or a European Economic Area member state); *In re Highpoint Res. Corp.*, No. 21-10565 (CSS) (Mar. 16, 2021), D.I. 78 (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (July 13, 2020), D.I. 243

[5]   The U.S. Trustee's primary argument is the Movant's assertions cannot be confirmed because no translation of the APPI was provided.  The English version of the statute is available online from the Japan Personal Information Protection Commission, at https://www.japaneselawtranslation.go.jp/en/laws/view/4241/en.  The U.S. Trustee is correct that this relief is not provided in the Original Order, but the Debtors have been authorized to redact most of the affected information because it is otherwise protected customer information.  However, the Movants believe that authorization on this basis going forward is in the Debtors' and their stakeholders' best interests.

(authorizing the redaction of names and addresses of individuals protected by the GDPR); *In re Akorn, Inc.*, No. 20-11177 (KBO) (May 22, 2020), D.I. 74 (same); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Feb. 4, 2020), D.I. 155 (same).  The Objectors fail to identify any reason why the Court should depart from this well-established practice.

## <u>Conclusion</u>

For the reasons stated above, the Court should overrule the Objections, grant the relief requested in the Motion, and enter the Order.

Dated: June 5, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

Dated: June 5, 2023
     Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
      rpoppiti@ycst.com

-and-

**PAUL HASTINGS LLP**
Kristopher M. Hansen*
Kenneth Pasquale*
Gabriel E. Sasson*
Isaac S. Sasson*
Caroline Diaz*
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
      kenpasquale@paulhastings.com
      gabesasson@paulhastings.com
      isaacsasson@paulhastings.com
      carolinediaz@paulhastings.com

    *Admitted pro hac vice*

*Counsel to the Official Committee of Unsecured Creditors*