<u>**EXHIBIT 1**</u>

**Proposed Joint Pretrial Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

### JOINT FINAL PRETRIAL ORDER

This Pretrial Order addresses the issues to be presented and the witnesses to be called by (i) Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves (the "**JPLs**"), in their capacity as the duly appointed joint provisional liquidators of FTX Digital Markets Ltd. ("**FTX Digital**"); (ii) FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (the "**Chapter 11 Debtors**"); (iii) the Official Committee of Unsecured Creditors (the "**Committee**"); (iv) the Customer Adversary Plaintiffs in Adversary Proceeding No. 22-50513 (JTD) (the "**Customer Adversary Plaintiffs**"), and (v) the Ad Hoc Group of Customers of FTX Trading Ltd. (the "**Ad Hoc Customer Group**"; together with the JPLs, the Chapter 11 Debtors, the Committee, and the Customer Adversary Plaintiffs, the "**Parties**") during the hearing to consider the *Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay does not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues*

---

[1]    The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in the chapter 11 cases, a complete list of the debtors (the "**Chapter 11 Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Chapter 11 Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[D.I. 1192] (the "**Motion**").[2]  The information has been compiled to the best of the Parties' ability, based on information provided to date by the Parties.

## I.   NATURE OF THE CASE

The JPLs wish to file an application seeking directions and declarations from the Supreme Court of the Commonwealth of The Bahamas ("**The Bahamas Court**") about several legal and factual issues (the "**Application**").  In order to pursue the Application, the JPLs respectfully request the Court to enter an Order (i) declaring that the automatic stay does not apply to the filing of the Application or, in the alternative, (ii) granting relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code to allow the JPLs to file the Application.

The Chapter 11 Debtors, the Committee, and the Customer Adversary Plaintiffs object to the Motion, arguing that (i) the automatic stay applies to the JPLs' Application, and (ii) good cause does not exist to lift the automatic stay.

To have an orderly and efficient presentation of the evidence at the hearing, this Pretrial Order seeks to clarify the issues that will be presented and the witnesses that will testify.

## II.   THE PARTIES

a.  **The JPLs' Counsel:**

**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (Bar No. 209)
Paul N. Heath (Bar No. 3704)
Brendan J. Schlauch (Bar No. 6115)
David T. Queroli (Bar No. 6318)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
queroli@rlf.com

---

[2]   Terms not defined herein shall have the meaning ascribed to them in the Motion, or supporting declarations, as applicable.

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
J. Christopher Shore (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
jessica.lauria@whitecase.com
cshore@whitecase.com
brett.bakemeyer@whitecase.com

Thomas E. Lauria (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Richard S. Kebrdle (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
tlauria@whitecase.com
brian.pfeiffer@whitecase.com
rkebrdle@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100,
Chicago, Illinois, 60606

      b.  **The Chapter 11 Debtors' Counsel:**

**LANDIS RATH & COBB LLP**
Adam G. Landis
Matthew B. McGuire
Kimberly A. Brown
Matthew R. Pierce
919 Market Street, Suite 1800
Wilmington, DE 19801
landis@lrclaw.com
mcguire@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich
James L. Bromley
Brian D. Glueckstein
Alexa J. Kranzley
125 Broad Street
New York, NY 10004
dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

      c.  **The Committee's Counsel:**

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
100 North King Street
Wilmington, DE 19801
mlunn@ycst.com
rpoppiti@ycst.com

**PAUL HASTINGS LLP**
Kristopher M. Hansen*
Kenneth Pasquale*
Erez Gilad*
Isaac S. Sasson*
200 Park Avenue
New York, NY 10166
krishansen@paulhastings.com
kenpasquale@paulhastings.com
erezgilad@paulhastings.com
isaacsasson@paulhastings.com
*admitted *pro hac vice*

      d.  **The Customer Adversary Plaintiffs' Counsel:**

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Robert K. Kriner, Jr.
2711 Centerville Rd, Suite 201
Wilmington, DE 19808
robertkriner@chimicles.com

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
aentwistle@entwistle-law.com

Robert N. Cappucci (*pro hac vice*)
Joshua K. Porter (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, NY 10169
rcappucci@entwistle-law.com
jporter@entwistle-law.com

  e. **The Ad Hoc Customer Group's Counsel:**

**VENABLE LLP**
Daniel A. O'Brien (No. 4897)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
daobrien@venable.com

Jeffrey A. Sabin
Carol A. Weiner
151 West 42nd Street,
New York, NY 10036
jssabin@venable.com
cweinerlevy@venable.com

Andrew J. Currie
600 Massachusetts Avenue, NW
Washington, DC 20001
ajcurrie@venable.com

## III. <u>JURISDICTION</u>

   This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) as to which this Court has the power to enter a final judgment.

IV.    **STIPULATED FACTS**[1]

1.      FTX Trading Ltd. ("**FTX Trading**") was founded in April 2019 and is incorporated under the laws of Antigua and Barbuda.

2.      Upon its creation in April 2019, FTX Trading began operating FTX's international digital asset exchange ("**FTX.com**") through which FTX did business with somewhere between 2.4 million and 7.6 million users as of the Petition Date (the "**FTX.com Users**")

3.      In 2019, the relationship between FTX Trading and FTX.com Users was governed by FTX Trading's original terms of service (the "**2019 Terms of Service**").

4.      The 2019 Terms of Service state that the laws of Antigua and Barbuda govern the Terms of Service.

5.      In November 2020, revised terms of service (the "**2020 Terms of Service**") were uploaded to FTX.com.

6.      The 2020 Terms of Service state that the laws of Antigua and Barbuda govern the Terms of Service.

7.      In November of 2020, The Bahamas passed the Digital Assets and Registered Exchanges Act of 2020 (the "**DARE Act**").  On December 14, 2020, the DARE Act was enacted by The Bahamas.

8.      By July 22, 2021, FTX Digital had been formed and incorporated in The Bahamas.

9.      In August 2021, a document was prepared called "FTX Digital Markets Limited Customer Migration Plan" (the "**Migration Plan**").

10.     On September 10, 2021, FTX Digital was registered with the Securities

---

[1] These stipulated facts are solely in connection with the Motion and are not applicable to any other matters in the chapter 11 cases.

Commission of The Bahamas (the "**SCB**") as a digital asset business under the DARE Act.

11.    Between November 2021 and June 2022, FTX Digital opened certain bank accounts in its name.

12.    Prior to the commencement of FTX Digital's provisional liquidation, FTX Digital employed certain individuals, a disputed number of which reside in The Bahamas.

13.    Samuel Bankman-Fried, Gary Wang, Nishad Singh, Ryan Salame, and Can Sun were employees and/or officers of FTX Digital at the time these chapter 11 cases were commenced.

14.    On May 13, 2022, revised terms of service (the "**2022 Terms of Service**") were uploaded to FTX.com.

15.    The 2022 Terms of Service state that the Terms of Service are governed by English law.

16.    On November 10, 2022, the SCB suspended the registration of FTX Digital pursuant to Section 19 of the DARE Act.

17.    On the same day, the SCB petitioned the Bahamas Court for the Provisional Liquidation of FTX Digital, which the Bahamas Court granted.

18.    The Bahamas Court appointed Brian Simms KC as the then-sole provisional liquidator.

19.    The next day, FTX Trading, along with the other Chapter 11 Debtors, commenced these chapter 11 cases.

20.    On November 14, 2022, the Bahamas Court also appointed Kevin G. Cambridge and Peter Greaves as joint provisional liquidators, together with Mr. Simms.

21.    On December 15, 2022, the JPLs announced a claims portal and resolution procedure for the FTX Digital Provisional Liquidation process.

22.     On December 19, 2022, the United States filed a criminal indictment against Sam Bankman-Fried.

23.     On January 6, 2023, the JPLs and the Chapter 11 Debtors entered into the Cooperation Agreement.

24.     On February 9, 2023, this Court entered an Order approving the Cooperation Agreement pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code.

25.     On February 10, 2023 the Bahamas Court likewise approved the Cooperation Agreement.

26.     The Chapter 11 Debtors are represented in The Bahamas by Peter D. Maynard Counsel & Attorneys.

27.     The Chapter 11 Debtors sought recognition of certain of the chapter 11 cases in The Bahamas.

28.     On February 14, 2023, the Bahamas Court granted the Chapter 11 Debtors' petition for recognition.

29.     On February 15, 2023, this Court entered an Order granting recognition of the Provisional Liquidation of FTX Digital as a Foreign Main Proceeding.

30.     On March 15, 2023, the JPLs moved in the Bahamas Court for permission to file the Motion.

31.     On March 19, 2023, certain of the Chapter 11 Debtors initiated an adversary proceeding against the JPLs and FTX Digital Markets (the "**Adversary Proceeding**").  Adv. Pro. No. 23-50145.

32.     On March 20, 2023 the Bahamas Court held a hearing regarding the JPLs' application for leave to file the Motion.

33.     The Bahamas Court granted leave on March 21, 2023 (the "**Bahamas Lift Stay Order**").

34.     The JPLs have moved to dismiss the Adversary Proceeding.  [No. 23-AP-50145, D.I. 6].

35.     On March 23, 2023, the Debtors submitted an application for the special admission of David William Allison KC to the Bahamas Bar Council.

36.     The return date for FTX Digital's winding up Petition is August 10, 2023.

## V.     DISPUTED FACTS

37.     All facts other than those Stipulated Facts set forth above are disputed by the JPLs and the Chapter 11 Debtors.

### A.     FACTS ASSERTED BY THE JOINT PROVISIONAL LIQUIDATORS AND DISPUTED BY THE CHAPTER 11 DEBTORS, THE COMMITTEE, AND THE CUSTOMER ADVERSARY PLAINTIFFS

#### i.     The FTX.com Platform

38.     Originally, FTX.com was headquartered in Hong Kong.  At FTX's inception, no jurisdiction had a sufficiently regulated exchange system for the sought-after institutional funds that FTX's founders wished to attract.  The Bahamas enactment of the DARE Act, a licensing and regulatory regime for the digital asset industry, encouraged the FTX Group's relocation of crypto businesses to The Bahamas.  FTX Digital is the only FTX entity that obtained a license under the DARE Act.

39.     Following the enactment of the DARE Act, the FTX Group openly moved the headquarters of its business operations from Hong Kong to The Bahamas.  *See* JTX 4, 5, 6.  That movement was from a market that was largely unregulated as to virtual assets (Hong Kong), to one with a detailed regulatory regime (The Bahamas).

40.     Starting in July 2021, at least 38 individuals, including, importantly, all three of the

co-founders, senior management, and key employees began moving from Hong Kong to The Bahamas and transferred their employment from other FTX Group entities, to become employees of FTX Digital. Before the appointment of the JPLs, FTX Digital employed 83 individuals, most of whom resided in The Bahamas.

41.     The Migration Plan, a policy that addresses the approach to migrate the customers and which considers the operational, technical and regulatory aspects, envisioned that FTX.com Users would accept new terms of service, and that the migration would be complete by 2023, with all "institutional" users being migrated by Q2 2022.  The Migration Plan also set out a plan to update all FTX.com Users' KYC information, which would be done in a series of stages depending on users' use volume.  High volume institutional users were to be migrated under the Migration Plan by Q1 2022, other institutional users by Q2, 2022, "low risk" (i.e., users with low know your customer ("KYC") risk profiles) individual users by Q3 2022, and "medium risk" and "high risk" individual users by Q4 2022 and Q1 2023, respectively.

42.     Explicit in the Migration Plan is that users' entire experience would be controlled and overseen by FTX Digital.

43.     Between November 2021 and June 2022, FTX Digital opened bank accounts in its name ("**FTX Digital Accounts**") that were used to receive and send fiat currency from and to FTX.com Users.  From January 20, 2022 through November 12, 2022, the FTX Digital Accounts maintained in FTX Digital's name had receipts of $13.4 billion and outflows of the same amount. From January 20, 2022 through October 31, 2022, the institutional FTX.com User account in FTX Digital's name had receipts of $9.2 billion and withdrawals of $8.9 billion, clearly evidencing that FTX Digital Accounts were being used to deposit and withdraw fiat to and from their accounts on FTX.com.

44.    The 2020 Terms of Service have a clause that gives FTX Trading the right to amend the Terms.  *See* JTX-21 at § 28.

45.    The 2020 Terms of Service also has an assignment and novation clause that allows FTX Trading to assign and transfer (i.e. novate) both the rights and obligations under the terms to any third party without prior notce to a FTX.com User.  *See* JTX-21 at § 29.

46.    The 2022 Terms of Service provide that FTX Digital is the contractual counterparty for FTX.com Users in respect of nearly all digital asset product lines offered on FTX.com, being Schedule 2 (Spot Market); Schedule 3 (Spot Margin Trading); Schedule 4 (OTC/Off-Exchange Portal); Schedule 5 (Futures Market); Schedule 6 (Volatility Market (Options Contracts)); Scheudle 7 (Volatility Market (MOVE Volatility Contracts)).

47.    These services make up approximately 90% of the trading on the FTX.com platform.  As a result of the clear evidence of intention of both FTX Trading and FTX Digital to migrate FTX.com Users to FTX Digital and consistent with the migration of 90% of trading to FTX Digital, FTX Digital was also the obligor (party owing obligations) under the Accounts provided to FTX.com Users on the International Platform.

48.    The DARE Act expressly excludes the NFT Market and "security tokens" (i.e. a token, when issued or traded, has one or more characteristics of a security as defined in the DARE Act).  FTX Trading remained the service provider for the leveraged tokens spot market (Schedule 8), the BVOL/iBVOL volatility market (Schedule 9), the NFT Market (Schedule 11), and the NFT Portal (Schedule 12).

49.    If an FTX.com User accessed his or her account on or after May 13, 2022, FTX Digital became the contractual counterparty for that customer on FTX.com in respect of 90% of the services provided on FTX.com and as obligor in respect of the Accounts of FTX.com Users.

50.    Any new International Customers who registered with FTX.com after May 13, 2022, became customers of FTX Digital with respect to most of the services offered on FTX.com.

51.    FTX Digital was being recognized by the FTX.com Users in more than its capacity as a mere "Service Provider" because it was the contract counterparty to certain external documents, which were traditionally signed by FTX Trading.  For example, FTX Digital began providing lines of credit to International Customers ranging between $250,000 and $20,000,000.  *See e.g.*  JXs 26-37.

## ii.    The Application

52.    The issue of which customers would be mapped to which debtor has been a topic of discussion since the first day hearings, with all parties having reserved all rights to claim a customer as either a FTX Trading or FTX Digital customer.

53.    The questions in the Application raise non-U.S. legal issues.  The U.S. Debtors are not prejudiced by having the Non-U.S. Law Customer Issues submitted to the Bahamas Court.

## iii.    The Bahamas Court and Proceedings in the Bahamas

54.    The Bahamas and Antigua are members of the Commonwealth of Nations – a political association of 56 states, the majority of which are former territories of the British Empire. The legal system of both The Bahamas and Antigua are based on English common law.  The final court of appeal for both countries is the Judicial Committee of the Privy Council of the United Kingdom (the "**Privy Council**"), a five-judge revolving panel sitting in London, England made up of Justices of the Supreme Court of the United Kingdom, the latter court being the final court of appeal for appeals from decisions of the courts of the United Kingdom.

55.    All parties in interest, including the U.S. Debtors, if they engage in the Application, will have the opportunity to appeal (or seek leave to appeal) the decision to the Court of Appeal of the Commonwealth of The Bahamas, and ultimately to the Privy Council.

56.     The decisions of the Privy Council are binding in the courts of the territory from which the appeal is made and, are of strong persuasive authority in other territories of the Commonwealth that still allow for appeals to the Privy Council (such as The Bahamas and Antigua) and in the United Kingdom.

57.     The Bahamas Court provides a more appropriate forum for deciding these issues because the Bahamas Court is familiar with the applicable English and Commonwealth laws.  It has a duty, in the first instance, to determine what constitutes property of FTX Digital's estate. This fundamental duty and right cannot be abrogated.

58.     Having this Court take jurisdiction over the Non-U.S. Customer Issues will require each party-in-interest on the customer issues, including the JPLs, the U.S. Debtors, the UCC, the Ad Hoc Customer Group, and an unknown number of actual customers to hire and present their own foreign law experts.

59.     In contrast, the expert in The Bahamas – the Bahamas Court – can provide a clear unconflicting depiction of Bahamas law, without the extent of the expert testimony that would be required in this Court.

60.     When the JPLs file the Application, the Bahamas Court is expected to schedule an initial hearing to enter a case management order.

61.     Parties who have an interest in the Application will have the right to appear and be heard individually or in a representative capacity.  If they so choose, the U.S. Debtors may appear and request that The Bahamas Court defer to the U.S. Court for resolution on any issues framed by the Application.

62.     An ultimate adjudication of the non-U.S. Law Customer Issues in the Bahamas will not prejudice FTX Trading because FTX Trading's foreign representative was recognized in the

Bahamas, can participate in the Application proceedings, has been involved in the proceedings on the Application to date (through appearing before the Bahamas Court with respect to the Bahamas Lift Stay Order) and will be able to appeal if they so choose.

63.     In fact, the U.S. Debtors have appeared and participated in FTX Digital's provisional liquidation. Counsel for the Chapter 11 Debtors appeared at the March 20, 2023 hearing in the Bahamas Court with respect to the JPL's application for leave to file the Motion. At that hearing, counsel to the Chapter 11 Debtors did not object to the JPLs' request.

64.     In this case, the hardship to FTX Digital if the JPLs cannot adjudicate the Non-U.S. Law Customer Issues in The Bahamas far outweighs the hardship to the U.S. Debtors if the Court lifts the stay.  Indeed, FTX Digital's Provisional Liquidation cannot proceed without resolving:

- the identity of the creditors to whom FTX Digital owes (or does not owe) money or assets;

- which money or assets are FTX Digital's;

- the parameters of the FTX Digital estate;

- whether FTX Digital's assets are held in trust on behalf of customers or not;

- who the real party in interest is in prosecuting clawback actions to recover FTX Digital's assets;

- who the real party in interest is when defending against claims brought by customers; and

- whether FTX Digital has any contractual rights against, or owes obligations to, customers who held perpetual futures.

65.     As the Bahamas Court has stated that "resolution of the issues raised by its [FTX Digital's] officers, the JPLs, in the proposed Directions Application . . . is fundamental to the progress of the provisional liquidation of FTX Digital Markets," the Bahamas Court would be expected to rule on the Application before the return date for FTX Digital's winding up Petition. Greaves Decl. Ex. H., Bahamas Lift Stay Order, p. 2.  Any decision by The Bahamas Court of the issues in the Application would have to be recognized by this Court in order to take effect in the

United States.  The costs of resolving these issues in The Bahamas will be much less for all parties than if they are resolved in the US where legal costs are significantly higher.

### iv.    The Adversary Proceeding

66.    The Adversary Proceeding seeks declaratory judgment that (i) no customers ever migrated from FTX Trading to FTX Digital; (ii) that FTX Digital has no ownership interest of any kind in any cryptocurrency, fiat currency, customer information, or intellectual property associated with FTX.com; (iii) that every transaction that FTX Digital was involved in during its existence was fraudulent and subject to avoidance. The Adversary Proceeding seeks an order that the Chapter 11 Debtors may recover from the FTX Digital estate all such transfers, and interests thereon to the date of payment, as well as the costs of the Adversary Proceeding.

67.    Furthermore, any ruling by this Court on the Adversary Proceeding would not be binding on the Bahamas Court unless the Bahamas Court recognizes such ruling.

### B.    Facts Asserted by the Chapter 11 Debtors and Disputed by the JPLs

68.    As a preliminary matter, the Chapter 11 Debtors and the Committee dispute the characterization of documents cited by the JPLs.  To the extent the JPLs refer to documents in their disputed facts, the contents of those documents speak for themselves and will be considered by the Court at the appropriate time.  Additionally, the JPLs' section of disputed facts contains legal conclusions that are the subject of this hearing, which the Chapter 11 Debtors and the Committee will respond to at the appropriate time at the hearing.  The Chapter 11 Debtors and the Committee reserve all rights.

### i.    FTX Trading

69.    To date, FTX Trading has listed over 9 million customer accounts on its creditor matrix, more than 7 million of which are of FTX.com Users.

70.    All cryptocurrency customer accounts for the FTX.com were maintained on the

AWS cloud environment pursuant to a license with Alameda Research.

### ii.    The Migration Plan

71.    The Migration Plan, dated August 24, 2021, sets forth FTX DM's "key roles and responsibilities in relation to the [planned] migration of customers," and states that FTX DM "will engage with FTX senior management in order to have a clear understanding of the transition objectives and milestones from the parent."  Nowhere in the Migration Plan does it state what the term "migration" means or that customer wallets would be controlled by FTX DM.

72.    With regards to the 2022 Terms of Service, the Migration plan requires that FTX.com customers be notified of the changes to the Terms of Service and given a 90-day period to raise queries, comments, or concerns.The JPLs have presented no evidence that customers were notified of the changes to the Terms of Service or given a 90-day period to raise queries, comments, or concerns.

73.    The Migration plan also requires FTX DM to conduct an analysis to determine any gaps in the due diligence conducted on FTX.com customers and request additional due diligence information from FTX.com customers as neccessary.  The JPLs have provided no evidence that FTX DM conducted the gap analysis or attempted to fill any gaps in the due diligence.

74.    The Migration Plan also requires that FTX DM provide quarterly updates to the SCB with the actual number of customers that have been successfully migrated.  The JPLs have not provided any evidence that customers were actually migrated, much less that FTX DM submitted quarterly reports to the SCB detailing the supposed migration progress.

### iii.    The Terms of Service

75.    The 2020 Terms of Service did not contain a novation clause.  The word novate does not appear in Section 29 or anywhere else in the 2020 Terms of Service.

76.    In May 2022, Mr. Bankman-Fried (and/or others acting at his direction) introduced

the 2022 Terms of Service between FTX Trading and FTX.com Users.

77.     The 2022 Terms of Service added language that purports to allow FTX Trading to assign, novate, or otherwise transfer customers under certain circumstances.

78.     The SCB—after the filing and public announcement of the chapter 11 cases—instructed Messrs. Bankman-Fried and Wang to transfer hundreds of millions of dollars' worth of previously non-circulating FTT tokens as well as other digital assets to cold storage under the control of the Commission.  Mr. Simms was copied on correspondence in his capacity as JPL.

### iv.      The JPLs' Intereference with the Chapter 11 Cases

79.     Without notice to the Chapter 11 Debtors, the SCB instructed Tether to "burn [destroy] the tether coins that were frozen and simultaneously mint new tether coins for the equivalent amount and transfer all USDT coins" to the Commissions' wallet.

80.     The JPLs have interfered with the Debtors' efforts to negotiate settlements with targets of avoidance actions by, for example, filing a position statement in response to a stipulation entered into between the Chapter 11 Debtors and Voyager Digital Holdings, Inc. and affiliated debtors.

81.     The pending complaint in the Adversary Proceeding will address the disputes between the JPLs and the Chapter 11 Debtors, each of which is core to these chapter 11 cases.

82.     Litigation of the Application in The Bahamas would increase the Chapter 11 Debtors' costs exponentially due to, inter alia, increased professional fees, lost opportunity costs due to delays, and court fees.

## VI.    ISSUES TO BE PRESENTED

A.      Whether the automatic stay under Section 362 of the Bankruptcy Code applies to the filing of the Application in the Supreme Court of the Bahamas.

B.      Whether "good cause" exists under Section 362(d)(1) of the Bankruptcy Code to lift the automatic stay and allow the JPLs to file the Application.

## VII.  OPENINGS AND CLOSINGS

The Parties suggest that openings be waived and that the hearing begin with presentation of evidence.  The Parties suggest that the Court hear closing arguments from all parties who wish to do so after closing of the evidence.

## VIII.  WITNESSES AND SEQUENCING[3]

### A.  THE JOINT PROVISIONAL LIQUIDATORS' CASE-IN-CHIEF

    1.    Metta MacMillan-Hughes

        a.    Direct Testimony:  Submitted by Declaration.

            (1)    The content of Ms. MacMillan-Hughes's testimony is set forth in *Declaration of Metta MacMillan-Hughes KC in Support of* the *Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay does not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues* [Docket No. 1193 in Case No. 22-11068].  Ms. MacMillan-Hughes will testify about certain aspects of the Non-U.S. Law Customer Issues, the Bahamian legal system, and procedures in the Bahamas Court.

        b.    Cross-examination and re-direct:  Live

    2.    Peter Greaves

        a.    Direct Testimony:  Submitted by Declaration and Live.

            (1)    The content of Mr. Greaves' testimony is set forth in *Declaration of Peter Greaves in Support of the Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay does not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues* [D.I. 1194]. Mr. Greaves will testify about his duties as a JPL of FTX Digital, the reasons that the JPLs seek to file the

---

[3]    The Parties agree that their witnesses will be presented substantially in the disclosed order, but reserve the right to make changes to the order of presentation of witnesses, and agree to provide at least 24 hours' notice prior to any changes in witness sequencing.

Application, and the prejudice to FTX Digital if the JPLs are barred from doing so.

      b.    <u>Cross-examination and re-direct</u>:  Live.

**B.**    **OBJECTING PARTY:  THE CHAPTER 11 DEBTORS**

    1.    Edgar W. Mosley II

      a.    <u>Direct Testimony</u>: Submitted by Declaration and Live.

        (1)    The content of Mr. Mosley's testimony is set forth in the *Declaration of Edgar W. Mosley II in Support of Debtors' Objection to Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of the Bahamas Seeking Resolution of Non-US Law and Other Issues* [D.I. 1411].  Mr. Mosley will testify about the Chapter 11 Debtors, the activities of the Joint Provisional Liquidators and the Commission, and the harm to debtors and creditors that would result if the automatic stay were to be lifted.

      b.    <u>Cross-examination and re-direct</u>:  Live.

**C.**    **ADDITIONAL WITNESSES NOT ON A PARTY'S LIST**

The parties may call (i) any witness on any other party's witness list in this pretrial order, regardless of whether the party removes that witness from its list, (ii) any witness necessary to authenticate documents (to the extent necessary), and (iii) any witness to provide rebuttal or impeachment testimony, as appropriate.  The JPLs reserve the right to call additional witnesses to respond to allegations raised in the Chapter 11 Debtors', the Committee's, and the Adversary Customer Plaintiffs' objections, and the Chapter 11 Debtors, the Committee, and the Adversary Customer Plaintiffs reserve the right to call additional witnesses in response.

**D.**    **DEPOSITION DESIGNATIONS**

The Parties will not be submitting deposition designations.

### E.     RESERVATION OF RIGHTS

The rights of all parties to object to the calling of any witness or to any testimony offered or elicited from any such witness are preserved.

## IX.    Exhibits and Introduction of Documentary Evidence

The Parties have exchanged proposed exhibit lists.  Attached hereto as **Exhibit A** is the list of exhibits the parties agree will be admitted by consent (the "**Joint Exhibit List**").  Attached hereto as **Exhibit B** is the Chapter 11 Debtors' proposed exhibits list, which the JPLs object to.

The JPLs will prepare the Joint Exhibit List binders for electronic submission to the Court. To the extent the Parties wish to present exhibits that are not on the Joint Exhibit List, each Party shall be responsible for submission to the Court and preparation of binders and materials for the courtroom.

The Parties agree that any demonstratives or charts, graphs, or other exhibits reflecting analytical work product of experts intended to be used or introduced into evidence during witness examination will be provided to other participating Parties no later than 5 p.m. eastern time one day before such demonstrative is intended to be introduced, unless such deadline is waived by the consent of the participating Parties for such exhibit.

Exhibits that any Party seeks to admit into evidence may be offered in accordance with the applicable rules.

A Party that seeks to offer any exhibit into evidence in their case-in-chief without the use of a sponsor in their case-in-chief shall do so before the conclusion of their case-in-chief.  Such Party shall work in good faith to provide notice of such exhibits to the other Parties and provide them with a reasonable opportunity to raise objections.  Any Party objecting to exhibits will work in good faith to timely resolve the objection.

Exhibits that any Party seeks to introduce into evidence during cross-examination or on rebuttal do not need to be included on a Party's exhibit list. Objections to exhibits offered during cross-examination or rebuttal shall be made at the time the exhibit is offered.  The JPLs reserve the right to designate additional exhibits to respond to allegations raised in the Chapter 11 Debtors', Committee's, and Adversary Customer Plaintiffs' Objections.

/s/ Brendan J. Schlauch
**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (Bar No. 209)
Paul N. Heath (Bar No. 3704)
Brendan J. Schlauch (Bar No. 6115)
David T. Queroli (Bar No. 6318)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
queroli@rlf.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
J. Christopher Shore (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:      (212) 819-8200
jessica.lauria@whitecase.com
cshore@whitecase.com
brian.pfeiffer@whitecase.com
brett.bakemeyer@whitecase.com


Thomas E. Lauria (admitted *pro hac vice*)
Richard S. Kebrdle (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:      (305) 371-2700
tlauria@whitecase.com
rkebrdle@whitecase.com


Jason Zakia (admitted *pro hac vice*)
111 S Wacker Dr. Suite 5100
Chicago, IL 60606
jzakia@whitecase.com


*Attorneys for the Joint Provisional Liquidators of*
*FTX Digital Markets Ltd. (In Provisional*
*Liquidation)*

/s/ Matthew B. McGuire
**LANDIS RATH & COBB LLP**
Adam G. Landis (Bar No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (Bar No. 5138)
Matthew R. Pierce (Bar No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
mcguire@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

– and –

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com


*Counsel for the Debtors*
*and Debtors-in-Possession*

*/s/ Robert F. Poppiti, Jr.*

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
100 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
mlunn@ycst.com
rpoppiti@ycst.com

– and –

**PAUL HASTINGS LLP**
Kristopher M. Hansen*
Kenneth Pasquale*
Erez Gilad*
Isaac S. Sasson*
200 Park Avenue
New York, NY 10166
krishansen@paulhastings.com
kenpasquale@paulhastings.com
erezgilad@paulhastings.com
isaacsasson@paulhastings.com
*admitted *pro hac vice*

*Counsel for the Official Committee of Unsecured Creditors*

*/s/ Robert K. Kriner, Jr.*

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
Robert K. Kriner, Jr.
2711 Centerville Rd, Suite 201
Wilmington, DE 19808
Telephone: (302) 656-2500
robertkriner@chimicles.com

– and –

**ENTWISTLE & CAPPUCCI**
Andrew J. Entwistle (*pro hac vice*)
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 710-5960
aentwistle@entwistle-law.com

Robert N. Cappucci (*pro hac vice*)
Joshua K. Porter (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7272
rcappucci@entwistle-law.com
jporter@entwistle-law.com

*Counsel for Adversary Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar*

*/s/ Daniel A. O'Brien*
**VENABLE LLP**
Daniel A. O'Brien (No. 4897)
1201 North Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 298-3535
Facsimile: (302) 298-3550
daobrien@venable.com

Jeffrey A. Sabin
Carol A. Weiner
151 West 42nd Street,
New York, NY 10036
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
jssabin@venable.com
cweinerlevy@venable.com

Andrew J. Currie
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202)-344-8300
ajcurrie@venable.com

*Counsel for the Ad Hoc Group of Customers of
FTX Trading Ltd.*

IT IS ORDERED that this Pretrial Order shall control the subsequent course of the action unless modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the Parties or by the Court.

# EXHIBIT A

## Joint Exhibit List

| Number | Docket Ref. | Description | Objection (If Any) |
|---|---|---|---|
| **JTX-1** | D.I. 1192-3 | The Bahamas Court February 10, 2023 Order Granting Settlement and Cooperation Agreement | |
| **JTX-2** | D.I. 683 | The Delaware Bankruptcy Court's February 9, 2023 Order Granting Settlement and Cooperation Agreement | |
| **JTX-3** | D.I. 402-1 | Cooperation Agreement | |
| **JTX-4** | N/A | Neil Hartnell, FTX to Hire More than 100 Bahamians for Crypto Work, THE TRIBUNE (October 19, 2022) | |
| **JTX-5** | N/A | Nelson Wang, FTX Moves Headquarters From Hong Kong to Bahamas, COINDESK (Sept. 27, 2021) | |
| **JTX-6** | N/A | Jeff Benson, FTX Relocates from Hong Kong to Bitcoin-Friendly Bahamas, DECRYPT (Sept. 24, 2021) | |
| **JTX-7** | D.I. 1193 | Declaration of Metta MacMillan-Hughes KC in Support of The Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay does not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues | |
| **JTX-8** | D.I. 1194-1 | Directions Application to be issued in the Supreme Court of The Bahamas | |
| **JTX-9** | D.I. 1194-3 | FTX Digital Markets Ltd. Customer Migration Plan | |
| **JTX-10** | D.I. 1194-4 | FTX Trading Ltd. 2019 Terms of Service | |
| **JTX-11** | D.I. 1194-5 | FTX Trading Ltd. 2022 Terms of Service | |
| **JTX-12** | D.I. 1194-6 | Joint Provisional Liquidators of FTX Digital Markets Ltd., March 9, 2023 letter to the Chapter 11 Debtors' Counsel | |
| **JTX-13** | D.I. 1194-7 | Chapter 11 Debtors' Counsel March 11, 2023 letter to the Joint Provisional Liquidators of FTX Digital Markets Ltd. | |
| **JTX-14** | D.I. 1194-8 | Joint Provisional Liquidators of FTX Digital Markets Ltd., March 13, 2023 letter to the Chapter 11 Debtors' Counsel | |

| JTX-15 | D.I. 1194-9 | The Bahamas Court's Order Granting the Joint Provisional Liquidators of FTX Digital Markets Ltd. Application to File the Lift-Stay Motion | |
| JTX-16 | N/A | Press Release, House Financial Services Committee, McHenry, Waters Announce December Hearing to Investigate FTX Collapse (Nov. 16, 2022), *available at* https://financialservices.house.gov/news/documentsingle.aspx?DocumentID=408471 | |
| JTX-17 | N/A | Seventh Affidavit of Kevin Cambridge (1st Joint Provisional Liquidators' Interim Report) (Feb. 8, 2023), *available at* https://www.pwc.com/bs/fdm | |
| JTX-18 | D.I. 1410 | Services Agreement, effective as of September 23, 2021 by and between FTX Trading Ltd. and FTX Digital Markets, Ltd. | |
| JTX-19 | N/A | Update by the Joint Provisional Liquidators of FTX Digital Markets Ltd. ("FTX Digital"), PwC.com (Dec. 15, 2022), *available at* https://www.pwc.com/bs/en/press-releases/update-by-the-joint-provisional-liquidators-of-ftx-digital-markets-limited.html | |
| JTX-20 | D.I. 129 (Chapter 15) | Order Granting Chapter 15 Petition of FTX Digital Markets Ltd. and Recognition of Foreign Main Proceeding | |
| JTX-21 | D.I. 1411-1, Ex. E | FTX Trading Ltd. 2020 Terms of Service | |
| JTX-22 | D.I. 1411-1, Ex. F | Certificate of Incorporation for FTX Digital Markets Ltd. | |
| JTX-23 | D.I. 1411-1, Ex. G | FTX Digital Markets Ltd. Application for Registration as a Digital Assets Business to the Securities Commission of The Bahamas. | |
| JTX-24 | N/A | Certificate of Registration of FTX Digital Markets Ltd. | |
| JTX-25 | D.I. 1481-1 | U.S. Debtors' Responses and Objections to Joint Provisional Liquidators' Requests for Production of Documents | |
| JTX-26 | D.I. 1481-2 | *Habibsons Bank Ltd. v. Standard Chartered Bank (Hong Kong) Ltd.* [2011] QB 943. | |
| JTX-27 | D.I. 1481-3 | Letter of Credit agreement between FTX Digital Markets and Customer 1, dated October 20, 2022 | |
| JTX-28 | D.I. 1481-4 | Letter of Credit agreement between FTX Digital Markets and Customer 2, dated October 20, 2022 | |

| JTX-29 | D.I. 1481-5 | Letter of Credit agreement between FTX Digital Markets and Customer 3, dated October 20, 2022 | |
|--------|-------------|--------------------------------------------------------------------------------------------------|---|
| JTX-30 | D.I. 1481-6 | Letter of Credit agreement between FTX Digital Markets and Customer 4, dated October 19, 2022 | |
| JTX-31 | D.I. 1481-7 | Letter of Credit agreement between FTX Digital Markets and Customer 5, dated October 19, 2022 | |
| JTX-32 | D.I. 1481-8 | Letter of Credit agreement between FTX Digital Markets and Customer 6, dated October 21, 2022 | |
| JTX-33 | D.I. 1481-9 | Letter of Credit agreement between FTX Digital Markets and Customer 7, dated October 20, 2022 | |
| JTX-34 | D.I. 1481-10 | Letter of Credit agreement between FTX Digital Markets and Customer 8, dated October 21, 2022 | |
| JTX-35 | D.I. 1481-11 | Letter of Credit agreement between FTX Digital Markets and Customer 9, dated October 19, 2022 | |
| JTX-36 | D.I. 1481-12 | Letter of Credit agreement between FTX Digital Markets and Customer 10, dated October 20, 2022 | |
| JTX-37 | D.I. 1481-13 | Letter of Credit agreement between FTX Digital Markets and Customer 11, dated October 19. 2022 | |
| JTX-38 | N/A | Letter of Credit agreement between FTX Digital Markets and ███████████████ dated January 26, 2022 | |
| JTX-39 | D.I. 1411 | Declaration of Edgar W. Mosley II in Support of Debtors' Objection to Motion of the Joint Provisional Liquidators for a Determination that The U.S. Debtors' Automatic Stay Does not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of the Bahamas Seeking Resolution of Non-Us Law and Other Issues | |
| JTX-40 | D.I. 1411-1, Ex. A | Certificate of Formation for Alameda Research LLC | |
| JTX-41 | D.I. 1411-1, Ex. B | Certificate of Incorporation for FTX Trading Ltd. | |
| JTX-42 | D.I. 1411-1, Ex. C | Certificate of Incorporation for West Realm Shires Services, Inc. | |
| JTX-43 | D.I. 1119 | Adversary Complaint, *Alameda Research LLC* v. *FTX Digital Markets Ltd.*, Adv. Pro. 23-50145 | Not admitted for the truth of the matter asserted |

| JTX-44 | N/A | Sealed Indictment, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Dec. 9, 2022), ECF No. 1. | Not admitted for the truth of the matter asserted |
|---|---|---|---|
| JTX-45 | N/A | Joint Provisional Liquidators' Responses and Objections to Chapter 11 Debtors' Requests for Production of Documents | |
| JTX-46 | D.I. 1411-1, Ex. L | November 13, 2022 Email from Sam Bankman-Fried to Christina Rolle and Brian C. Simms KC | |
| JTX-47 | N/A | November 14, 2022 Email from Christina Rolle to Gary Wang | |
| JTX-48 | D.I. 1411-1, Ex. K | November 12, 2022 Letter from Christina Rolle to Jean-Louis Van der Velde. | |
| JTX-49 | D.I. 1411-1, Ex. J | November 23, 2022 Media Release by the Securities Commission of The Bahamas | |
| JTX-50 | D.I. 1411-1, Ex. N | April 27, 2023 Letter from Tara Knowles to Jason T. Maynard | |
| JTX-51 | D.I. 1411-1, Ex. O | January 24, 2023 Transcript, In re Voyager Digital Holdings, Inc., Case No. 22-10943 (Bankr. S.D.N.Y) | |
| JTX-52 | D.I. 1194 | Declaration of Peter Greaves in Support of the Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay does not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues | Without exhibits |
| JTX-53 | N/A | FTX Digital Register of Digital Asset Business | |
| JTX-54 | D.I. 1411-1 Ex P | April 8, 2023 Letter from JPLs | |

# Exhibit 2

## Debtors' Proposed Exhibit List

| Number | Docket Ref. | Description | Objection |
|---|---|---|---|
| **DX-1** | D.I. 337-1, Ex. K | November 9, 2022 Email chain, including email from Sam Bankman-Fried to Ryan Pinder KC | JPL objection: hearsay and relevance |
| **DX-2** | D.I. 337-1, Ex. N | November 13, 2022 Email from Gary Wang to Christina Rolle | JPL objection: hearsay and relevance |
| **DX-3** | D.I. 337-1, Ex. P | November 10, 2022 Slack messages from Sam Bankman-Fried to internal FTX Slack channel | JPL objection: hearsay and relevance |
| **DX-4** | D.I. 1141-1, Ex. I | November 13, 2022 Slack messages from Gary Wang to internal FTX Slack channel | JPL objection: hearsay and relevance |
| **DX-5** | D.I. 1411-1, Ex. M | April 4, 2023 Tweet by @FTXReloaded | JPL objection: hearsay and relevance |