## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Requested Hearing Date:** June 28, 2023 at 1:00 p.m. (ET)<br>**Requested Objection Deadline:** June 22, 2023 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN SCHF CAYMAN, L.P. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of the limited partnership interests (the "Interests") held by the Debtors in SCHF Cayman, L.P., a Cayman Islands exempted limited partnership (the "Subject Company"), free and clear of all liens,

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement; (b) authorizing and approving the Debtors' entry into, and performance under, the Purchase and Sale Agreement, dated as of June 8, 2023, a copy of which is attached hereto as Exhibit B (the "Agreement"), between Debtor, Maclaurin Investments Ltd. (formerly known as Alameda Ventures Ltd.), an International Business Company incorporated under the laws of the Republic of Seychelles ("Seller"), and Liberty Mutual Investments Holdings LLC, a Delaware limited liability company ("Purchaser"); (c) authorizing and approving the assumption and assignment of the Twelfth Amended and Restated Limited Partnership Agreement of the Subject Company, dated December 22, 2022 (the "LPA"), and any shareholders agreements, management agreements, bylaws, side letters and other documents and agreements governing the rights and obligations of Seller, as an investor in the Subject Company as set forth in the Agreement (collectively, the "Operative Documents"); and (d) granting related relief.  In further support of this Motion, the Debtors submit the concurrently filed declaration of Bruce Mendelsohn attached hereto as Exhibit C (the "Mendelsohn Declaration"), which is incorporated herein by reference, and the Debtors respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      The main goal of the Debtors' estates is to return funds to creditors and interest holders. The Debtors are not in the business of allocating additional amounts to investments unrelated to the core businesses of the Debtors.

3.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

## Jurisdiction

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Facts Specific to Relief Requested**

**I.    Debtors' Investment in the Subject Company**

5.      Prior to the Petition Date, prior management of the FTX group made investments through the Debtors in a number of entities unrelated to the Debtors' exchange and digital asset business.   The investment in the Subject Company, a fund managed by SCHF (GPE), LLC, a Delaware limited liability company (the "General Partner"), is an example.  The Debtors acquired the Interests in the Subject Company on July 1, 2022, with an aggregate capital commitment of $100,000,000 in U.S. dollars (fiat currency), only $25,000,000 of which was funded as of the Petition Date. The Debtors' capital commitment to the Subject Company remains only partly funded, and the Debtors are currently in default on $25,000,000 of incremental funding commitments.  The investment is not readily liquid: The Subject Company is designed as an evergreen fund and therefore has no guaranteed exit timing or other imminent monetization opportunity for the Debtors.

6.      The Debtors in their business judgment have determined to sell the Interests in a competitive process to a buyer who can cure any outstanding default and fund the remaining capital commitments.

**II.    Debtors' Default under the Operative Documents**

7.      Under to the Subject Company's Operative Documents, each limited partner, including Seller, is required to contribute a certain amount of capital from time to time (each, a "Capital Call").

8.      Any failure to meet a Capital Call generally decreases the value of a limited partner's investment, because any extended failure to pay automatically results in the limited partner becoming a "Defaulting Limited Partner".  The LPA sets forth a number of remedies against any Defaulting Limited Partner upon such a default, many of which apply

automatically or are useable at the General Partner's discretion.  These include automatic accrual

of interest on unpaid amounts at an annual rate equal to (a) seventeen and a half percent (17.5%)

plus (b) the three-month London Interbank Offered Rate, with a minimum interest rate of at least

eighteen percent 18%.  These also include reduction in profit participation, forfeiture of all

capital accounts and a required redemption at a significant discount (the "Default Provisions").

Any potential exercise of the Default Provisions, both automatic and in the General Partner's

discretion, present a substantial risk to the value of the Debtors' investment therein.[2]

9.      On December 20, 2022, the Subject Company issued a Capital Call for

$25,000,000 to the Seller. Seller failed to fund the Capital Call.  Under the terms of the LPA, the

Seller was deemed a Defaulting Limited Partner and provided with prompt notice to that effect

by the General Partner (the "Default Notice").

## III.    Determining to Make a Sale

10.     In considering its position, including the potentially significant realizable

value of the Interests, the currently outstanding and future Capital Calls, which would total an

additional $75,000,000, and the disputes and potential diminution of value relating to the Default

Provisions, the Debtors determined that it would be in the best interest of the Debtors' estates to

market and sell the Interests as soon as it could ensure it could seek to maximize the value of the

sale.  Having determined that it would be in the best interest of the Debtors' estates, the Debtors

considered a number of potential sales processes, but in light of the provisions under the LPA

that restricted the ability of the Debtors to provide confidential information about the Subject

Company to third parties, the consent rights that the Subject Company has over the admission of

---

[2]     The Debtors and the Subject Company reserve all rights with respect to whether any exercise of the Default
        Provisions could constitute a violation of the automatic stay pursuant to section 362 of the Bankruptcy Code.

potential transferees to the partnership, and rights of the Subject Company to take actions against limited partners that it does not approve to have in its fund,  the Debtors determined that a sale of the Interests would be best accomplished with the General Partner's cooperation and consent. Given that such cooperation and consent required the sale of the Interests to be effected on the last day of a calendar quarter (i.e., June 30), that a further Capital Call was expected to be issued in June 2023 with a due date of July 3, 2023 and that additional default interest would continue to accrue, the Debtors determined that it was in the best interest of their estates and their constituents to work quickly toward executing a mutually-agreeable transaction and request that the Order be effective immediately upon entry.

11.     The Interests are easily separated from the Debtors' core operations, and the sale of the Interests will not affect the Debtors' abilities to operate any of their businesses. Further, since any income that might be generated by the Interests is uncertain and would only be received pursuant to the terms of the LPA, the Interests will not generate significant value to the Debtors' estates in the short term and may not result in any additional value in the long term. Accordingly, the sale of the Interests would maximize the value of the Debtors' estates, and it is in the best interest of the Debtors' estates to dispose of the Interests at this time through a private sale transaction.

**IV.    Marketing Process**

12.     Throughout February and March 2023, the Debtors, with the assistance of their investment banker, Perella Weinberg Partners ("PWP"), worked with the General Partner to design a marketing and sales process for the Interests that would market the Interests in an efficient and competitive manner.  The General Partner assisted PWP in its search for potential acquirers, to whom PWP reached out to determine their respective interest in a purchase transaction for the Interests. This process included reaching out to potential acquirers suggested

by the General Partner and generating a proprietary list of an additional 43 potential acquirers. The General Partner agreed to the Debtors providing certain of these various parties that were suitable to become a limited partner of the Subject Company with confidential information regarding the Subject Company, subject to confidentiality agreements. *See* Mendelsohn Declaration ¶ 15.

13.     As a result of the marketing efforts, the Debtors entered into non-disclosure agreements with 3 potential purchasers and provided all such potential purchasers access to information on the Interests.  The Debtors ultimately only received a firm indication of interest from Purchaser, on May 12, 2023 and engaged in good-faith negotiations with Purchaser and the General Partner regarding the terms of the Agreement.

14.     After thoroughly evaluating the bid from Purchaser with the assistance of PWP, the Debtors decided to enter into the Agreement with Purchaser based on its superior offer and ability to execute the Sale Transaction within a short time frame. *See* Mendelsohn Declaration ¶ 16.

**V.     <u>Communication with the Committee</u>**

15.     Throughout the marketing process, the Debtors engaged in timely and responsive communications with the Committee and their advisors, including providing weekly updates on the status of the marketing process for the potential transaction.  The Debtors also shared copies of the indication of interest and mark-ups of the Agreement submitted by Purchaser with the Committee's advisors significantly in advance of any anticipated sale date and continued to provide updates and information on the sale process.  As of the filing of this Motion, the Committee has not given its consent to the proposed sale. *See* Mendelsohn Declaration ¶ 16.

## VI.    Sale Transaction

16.    On June 8, 2023, Seller and Purchaser executed the Agreement, which

contains the following material terms:[3]

| Purchase Price | As set forth in Section 1.3 of the Agreement, the aggregate purchase price for the Interests and the interests of Seller in the Operative Documents consists of (i) $18,200,000 in cash, plus (ii) the aggregate amount of any Capital Contributions or any other amounts paid to the Subject Company in respect of the Interests after the Balance Sheet Date and on or prior to the Closing Date, minus (iii) the aggregate amount of any Distributions made to Seller after the Balance Sheet Date and on or prior to the Closing Date, plus (iv) the Cure Costs, if any, paid by Seller between the date of the Agreement and the Closing Date, and shall be payable without any withholding or deduction. |
|---|---|
| Closing Date | The closing of the transactions contemplated by the Agreement (the "Closing") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on June 30, 2023 if all of the conditions to closing specified in Article 5 of the Agreement are satisfied or waived by such time, or at such other time as Purchaser and Seller shall agree in writing (the "Closing Date"). |
| Assignment of Operative Document | Upon the Closing Date, Seller shall assign all rights and obligations under the Operative Documents to Purchaser. |
| Releases | No releases were entered into between Seller and Purchaser. |
| Cure Costs | Purchaser shall be responsible for all Cure Costs, if any, in respect of the Operative Documents, including the $25,000,000 unfunded Capital Call and related default interest, which shall not be the obligation, liability or responsibility of Seller. |
| Conditions to Closing | There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 5 of the Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing. Seller has obtained the General Partner's consent to the Sale Transaction as of the date of the Agreement, subject to the execution and delivery of all necessary transaction documents, the payment of all Cure Costs to the Subject Company and the entry of the Order. The Agreement |

---

[3]    Capitalized terms used in this Section III but not otherwise defined herein are to be given the meanings ascribed to them in the Agreement.  To the extent that there are inconsistencies between any summary description of the Agreement contained herein and the terms of the Agreement, the terms of the Agreement shall govern.

| | requires the entry of a Sale Order authorizing and approving the Sale Transaction prior to Closing. |
|---|---|
| **Transfer Taxes** | To the extent not exempt under section 1146 of the Bankruptcy Code, Purchaser shall pay all transfer taxes. |
| **Private Sale/Ability to Solicit Additional Bids** | The Debtors do not intend to conduct an auction for the sale of the Interests, which have been subject to marketing efforts as described herein.<br><br>However, as set forth in Section 4.2 of the Agreement, from and after the date thereof until the date that the Order is entered, Seller may solicit bids for the sale of the Interests and respond to inquiries or offers to purchase the Subject Company and/or its assets.  After such period, Seller may not solicit bids for the sale of the Interests, but may still respond to bona fide proposals for an Alternative Transaction if Seller determines in good faith, in consultation with the Committee, that such proposal constitutes a higher or otherwise better offer for the interests and Seller gives prompt written notice to Purchaser of Seller's intention to engage in discussions with the third party submitting such proposal. |
| **Fiduciary Out** | The Agreement may be terminated by Seller if Seller or the board of directors of Seller determines that proceeding with the Transactions or failing to terminate the Agreement would be inconsistent with its fiduciary duties. |
| **Sale of Avoidance Actions** | The Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| **Sale of Causes of Actions** | The sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

17.    In addition to the material terms of the Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| **No Sale to an Insider** | Purchaser is not an insider of Seller or any of the other Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code.  *See* Local Rule 6004-1(b)(iv)(A). |
|---|---|

| | |
|---|---|
| **Agreements with Management** | Purchaser has not discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment. *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | In connection with obtaining the consent of the General Partner to the transfer, a release of all claims, rights, demands, actions, liabilities, obligations and causes of action of any nature, known or unknown granted by Seller on behalf of itself, its estate, anyone who might claim by or through Seller and Seller's successors and assigns, in favor of the Subject Company, the General Partner and their respective affiliates, and each such person's respective members, partners, agents, directors, officers, stockholders, employees, subsidiaries, predecessors, successors and assigns will be entered into by Seller, Purchaser and the General Partner. The release is an integral part of the General Partner's consent to the Sale Transaction. *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted, as described above. *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadline** | As described above. *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None. *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchaser** | None. *See* Local Rule 6004-1(b)(iv)(G). |
| **Use of Proceeds** | None. *See* Local Rule 6004-1(b)(iv)(H). |
| **Tax Exemption** | None. *See* Local Rule 6004-1(b)(iv)(I). |
| **Record Retention** | Not applicable. The Debtors are not selling substantially all of their assets under the Agreement. *See* Local Rule 6004-1(b)(iv)(J). |
| **Sale of Avoidance Actions** | None, as described above. *See* Local Rule 6004-1(b)(iv)(K). |
| **Requested Findings as to Successor Liability** | A condition to Closing is entry of the Order, which shall provide that Purchaser under no circumstances shall be deemed to be a successor of the Debtors. *See* Local Rule 6004-1(b)(iv)(L). |
| **Sale Free and Clear of Unexpired Leases** | Not applicable. *See* Local Rule 6004-1(b)(iv)(M). |
| **Credit Bid** | Not applicable. *See* Local Rule 6004-1(b)(iv)(N). |
| **Relief from Bankruptcy Rules 6004(h) and 6006(d)** | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d). *See* Local Rule 6004-1(b)(iv)(O). |

18.     The Sale Transaction will also involve the assignment of Seller's rights, titles and interests in the Operative Documents to the Purchaser so that the Purchaser may be admitted as a limited partner in the Subject Company.  The Debtors are not taking a position at this time as to whether the Operative Documents are executory contracts, but are seeking to assume and assign the Operative Documents to the Purchaser under section 365 of the Bankruptcy Code to the extent they are executory contracts and under section 363 as assets of the Debtors to the extent such agreements are non-executory.  The General Partner has consented to such transfer to the Purchaser, subject to the execution and delivery of all necessary transaction documents, the payment of all Cure Costs to the Subject Company and the entry of the Order.

## Relief Requested

19.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing and approving the Sale Transaction, free and clear of all Liens (as defined in the Agreement), other than Permitted Encumbrances (as defined in the Agreement); (b) authorizing and approving the Debtors' entry into, and performance under, the Agreement; (c) authorizing and approving the assumption and assignment of the Operative Documents; and (d) granting related relief.

## Basis for Relief

### I.     <u>The Court Should Approve the Sale Under 11 U.S.C. § 363(b).</u>

20.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo*

*Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).   In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.   *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).   In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."   *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

21.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith.   *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.     A Sound Business Justification Exists for the Sale

22.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.   *See, e.g., In re Mushroom*

*Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

23.     Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction and courts in this district have held that a debtor may conduct a private sale when a good business reason exists.  *See, e.g.*, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I. 435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited partnership interests and limited liability corporation interests for approximately $22.8 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the private sale of limited partnership interests for approximately $8 million). This Court also approved a previous private sale by the Debtors of limited partnership interests [D.I. 1174].

24.     The proposed Sale Transaction represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. The Debtors believe that a prompt sale of the Interests will enable the Debtors to defray or avoid any operational, carrying, litigation or other expenses associated with the Interests, including management fees and outstanding or potential future Capital Calls of which $25,000,000 were called but not funded, and therefore are in default, and an additional $50,000,000 capital commitments remain unfunded and protect the Debtors against the potential declining value of the Interests.   Selling or transferring the Interests pursuant to the proposed Sale Transaction in a

private sale is the most efficient and cost-effective means of minimizing costs to the estates

while maximizing the value for the benefit of the estates.  *See* Mendelsohn Declaration ¶ 22.  As

such, the Debtors submit that good business reason exists for conducting a private sale under the

circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

        B.     <u>Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties</u>

        25.     Notice of this Motion has been provided to the following parties:  (A) the

U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien,

claim or encumbrance against, or interest in, the relevant Interests; (D) the non-Debtor

counterparties to all executory contracts that the Debtors propose to assume or assume and assign

in connection with such sale, as applicable; (E) the Subject Company, (F) any party that has

expressed an interest in purchasing the Interests during the last six months; (G) any interested or

affected governmental or regulatory entity, including the Internal Revenue Service, the Securities

and Exchange Commission and the United States Department of Justice; and (H) any other party

that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties

with an interest in the Sale Transaction have been given adequate notice and that no other or

further notice need be provided.

        C.     <u>The Sale Will Produce a Fair and Reasonable Price for the Property.</u>

        26.     The Debtors believe that the sale of the Interests to Purchaser through a

private sale is the best way to maximize value for their estates.

        27.     The Debtors believe that the Purchase Price for the Interests is fair and

reasonable.  The Debtors ensured that sale of the Interests would reflect their fair market value

by, with the assistance of PWP, robustly marketing the Interests and conducting arm's-length

negotiations.  The Debtors carefully considered and analyzed the offer as set forth in the

Agreement in comparison to its other options and concluded that a sale of the Interests will result

in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors. The Purchase Price is equal to approximately 75% of the amount of the Capital Contributions Seller has made to the Subject Company without taking into account any default related payments and 85% taking into account such payments.  Among the offers received by the Debtors, Purchaser's offer is the highest or otherwise best offer and would provide a greater recovery for the Debtors' estates. *See* Mendelsohn Declaration ¶ 20.

28.     As set forth in section 4.2(a) of the Agreement, the Purchase Price is also subject to any higher or better offers from any third party in the form of an Alternative Transaction under the Agreement, which can be solicited prior to the date that the Order is entered.  Further, as provided by section 6.1(g) of the Agreement, the Purchase Price is also subject to a "fiduciary out" where the Agreement can be terminated by the board of directors (or similar governing body) of Seller if it is determined to be inconsistent with its fiduciary duties. In addition, pursuant to section 4.2(b) of the Agreement, if an Alternative Transaction is received by the Debtors, Seller has the right, but not the obligation, to terminate the Agreement upon entering into a definitive agreement with respect to such Alternative Transaction.  Accordingly, the Debtors submit that the proposed Sale Transaction will produce a fair and reasonable price.

D.     <u>The Parties Have Acted in Good Faith and Purchaser Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code.</u>

29.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not

such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

30.    Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

31.    While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

32.    The Debtors submit that the terms and conditions of the Agreement have been negotiated at arm's length without any indication of fraud or collusion between Seller and Purchaser.  Purchaser is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and the Debtors believe that Purchaser has not engaged in any conduct that

would indicate or constitute a lack of good faith.  *See* Mendelsohn Declaration ¶ 23.

Accordingly, the Debtors request the finding that Purchaser is a good-faith purchaser entitled to

the protections of section 363(m) of the Bankruptcy Code.

## II.   The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

33.    The Debtors also request authorization to sell the Interests free and clear

of all Liens, other than Permitted Encumbrances, in accordance with section 363(f) of the

Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Interests.

34.    The sale of estate property free and clear of any interest is governed by

section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property
>        free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is
>        to be sold is greater than the aggregate value of all liens on
>        such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable
>        proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive:

approval of a proposed sale of assets free and clear of interests requires only that one of the five

requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*,

282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the

conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the

sale free and clear of all liens.") (citation omitted).

36.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court

broad discretionary powers, providing that "[t]he Court may issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section

363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325

(Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize

sale of estate assets free and clear).

37.     The Debtors submit that the Sale Transaction satisfies one or more of the

requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale

Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have

consented to the Sale Transaction, and the Interests may be sold free and clear of all liens,

claims, interests and encumbrances.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone,

Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens,

claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642

B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the

Debtor submits that any holder of liens, claims and encumbrances against or interests in the

Interests could be compelled in a legal or equitable proceeding to accept a monetary satisfaction

of their interests.  *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del.

2021).

38.     A sale free and clear of all liens, claims, interests and encumbrances is

necessary to maximize the value of the Interests.  Not transferring the Interests free and clear of

all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to

maximize the value of the estates, and the transfer of the Interests other than pursuant to a

transfer that is free and clear of all Liens (other than Permitted Encumbrances).  Purchaser would not have entered into the Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchaser free and clear of all Liens (other than Permitted Encumbrances).  *See* Mendelsohn Declaration ¶ 25.

39.     Furthermore, any Liens (other than Permitted Encumbrances) existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Interests free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

## III.     The Assumption and Assignment of the Operative Documents Should Be Approved.

40.     Section 365 of the Bankruptcy Code provides that a debtor-in-possession may generally assume and assign any executory contract of the debtor, subject to approval of the court, if it:  (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, the applicable defaults and (b) provides adequate assurance of future performance under such contract, including by its assignee.  11 U.S.C. § 365.  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract.  *See, e.g.*, *Mission Prod. Holdings* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (noting that a bankruptcy court will generally approve a debtors' choice to assume or reject an executory contract under the deferential business judgment rule) (citation omitted); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (holding that a debtor's decision to reject an executory contract "is governed by the business judgment standard" and "can only be overturned if the decision was the product of bad faith, whim or caprice") (citations omitted).

The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract benefits the estate.  *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

41.     To the extent such agreements are executory contracts, assuming and assigning the applicable Operative Documents to Purchaser is an appropriate exercise of the Debtors' business judgment.  Upon consummation of the Sale Transaction, the applicable Operative Documents will no longer have any value to the Debtors.  By assuming and assigning the applicable Operative Documents to Purchaser, the Debtors will be able to avoid any damages claims that would arise from the rejection of the Operative Documents.  The Debtors therefore submit that the assumption and assignment of the applicable Operative Documents to Purchaser is an appropriate exercise of the Debtors' business judgment and should be approved.

42.     The consummation of the Sale Transaction will be contingent upon the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) requires that any outstanding defaults under the contract to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.  11 U.S.C. § 365(b)(1).  Pursuant to Section 5.3 of the Agreement, Purchaser will, at or prior to the Closing, cure any and all defaults under the Operative Documents including funding the outstanding Capital Call that was issued by the General Partner on December 20, 2022 and any default interest related thereto pursuant to the LPA, so that such Operative Document may be assigned by Seller and assigned to Purchaser.

43.     Additionally, pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease if "adequate assurance of future performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).  The

meaning of "adequate assurance of future performance" depends on the facts and circumstances

of each case, but should be given "practical, pragmatic construction." *See In re Fleming Cos.*,

499 F.3d 300, 307 (3d Cir. 2007) (citing *Cinicola* v. *Scharffenberger*, 248 F.3d 110, 120 n.10 (3d

Cir. 2001)); *see also In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill.

1985) ("Although no single solution will satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of performance.") (citation omitted).  Among other

things, adequate assurance may be provided by evidencing the assignee's financial health and

experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56

B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance

where prospective assignee of lease has financial resources and expressed willingness to devote

sufficient funding to business to give it strong likelihood of succeeding).

       44.    As set forth above, Purchaser is well-suited to consummate the Sale

Transaction and satisfies the standard of providing adequate assurance of future performance.

As set forth above, Purchaser is well-suited to consummate the Sale Transaction and satisfies the

standard of providing adequate assurance of future performance.  As set forth above, Purchaser is

well-suited to consummate the Sale Transaction and satisfies the standard of providing adequate

assurance of future performance.  Purchaser has $5.6 billion in assets. It is a private equity

holding company for Liberty Mutual Insurance, which is the fifth largest global property and

casualty insurer based on 2022 gross written premium.

       45.    The Debtors have received consent from the General Partner with respect

to the transfer and assignment of the Interests to the Purchaser, subject to the execution and

delivery of all necessary transaction documents, the payment of all Cure Costs to the Subject

Company and the entry of the Order.  As a result, the Debtors do not take a position as to

whether, if the Operative Documents were executory contracts, applicable law would excuse the non-debtor counterparty to the Operative Documents from accepting performance from the Purchaser pursuant to section 365(c)(1) of the Bankruptcy Code. To facilitate the assumption and assignment of the applicable Operative Documents, the Debtors request that the Court find that, to the extent applicable law excuses the non-debtor counterparty from accepting performance to an entity other than the debtor under Section 365(f) of the Bankruptcy Code, then the Debtors have received applicable consent to such assignment under section 365(c)(2). The Debtors do not need to make a determination on, and reserve all rights with respect to, whether provisions in the Operative Documents that prohibit or restrict assignment of the Operative Documents are enforceable or prohibited pursuant to section 365(f) of the Bankruptcy Code.

46.     Based on the foregoing, the Debtors' assumption and assignment of the Operative Documents within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code in connection with the sale of the Interests satisfies the requirements under Section 365 of the Bankruptcy Code and should be approved.

### Bankruptcy Rules 6004(a), 6004(h) and 6006(d)

47.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rules 6004(h) and 6006(d). In light of the Debtors' current financial conditions and the importance of an efficient timeline for maximizing the value of the Interests, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders. Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

## Notice

48.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (d) the non-Debtor counterparties to all executory contracts that the Debtors propose to assume or assume and assign in connection with such sale, as applicable; (e) the Subject Company; (f) any party that has expressed an interest in purchasing the Interests during the last six months; (g) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (h) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

## No Prior Request

49.     No prior motion for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: June 8, 2023
     Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*