# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: June 28, 2023 at 1:00 p.m. (ET)<br>Objection Deadline: June 21, 2023 at 4:00 p.m. (ET) |

**DEBTORS' THIRD OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS EFFECTIVE AS OF THE REJECTION DATE**

**PARTIES RECEIVING NOTICE OF THIS OMNIBUS MOTION SHOULD LOCATE THEIR NAMES AND CORRESPONDING CONTRACTS IN EXHIBIT 1 TO THE PROPOSED ORDER ATTACHED TO THE MOTION.**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 365(a) and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to (i) reject certain executory contracts set forth on Exhibit 1 to the Order (each, a "Contract," and collectively, the "Contracts"), effective as of June 14, 2023 (the "Rejection Date"), (ii) abandon certain Property (as defined below) associated therewith and (iii) take such action as may be necessary to implement and effectuate the rejection of the Contracts. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

{1368.002-W0071286.}

**Background**

1. On November 11 and November 14, 2022, the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

3. The Debtors and their advisors are in the process of reviewing and analyzing the contracts to which the Debtors are parties. Based upon this analysis, the Debtors have determined, in their business judgment, that there is no longer a need for, or benefit to the Debtors or their estates to maintain, the Contracts going forward. Rejection of each of the Contracts as of the Rejection Date would benefit the Debtors' estates because it will enable the Debtors to avoid the accrual of any obligations related to goods and/or services provided under the Contracts described below that are not needed by the Debtors or their estates. This Motion pertains to nine Contracts.

4. The first Contract is a Subscription Agreement and related Order Form, by and between Amplitude, Inc. and Debtor West Realm Shires Services Inc. ("WRSS"), dated as of March 23, 2022. This Contract provides that Amplitude, Inc. will deliver software-as-a-service products and related implementation, consulting and support services to WRSS.

5. The second Contract is a Master Services Agreement and related Order Form, by and between DocuSign, Inc. and WRSS, dated as of February 26, 2022. This Contract provides that DocuSign, Inc. will provide WRSS certain electronic signature-related products and services.

6. The third Contract is a Master Services Agreement and related Order Form, by and between DocuSign, Inc. and FTX Trading, dated as of February 22, 2022. This Contract provides that DocuSign, Inc. will provide FTX Trading certain electronic signature-related products and services.

7. The fourth Contract is a Master Country Agreement, by and between Equinix (UK) Limited and Debtor Innovatia Ltd., dated as of July 22, 2019, and all related order forms thereto. The Contract provides that Equinix (UK) Limited will provide certain virtual data interconnection services to Innovatia Ltd.

8. The fifth Contract is a Master Country Agreement, by and between Equinix LLC and WRSS, dated as of February 22, 2022, and all related order forms thereto (collectively, the "Equinix Contract"). The Equinix Contract provides that Equinix LLC will (i) provide certain virtual data interconnection services and (ii) host certain housing units (the "Housing Units") containing data storage and security devices (the "Storage Devices" and, together with the Housing Units, the "Property") owned by the Debtors. To the best of the Debtors' knowledge, the Storage Devices were never deployed in the Debtors' business and the Debtors are not aware of any data having been uploaded to the Storage Devices other than test

data. As a result, the Debtors are not aware of any Confidential Information (as defined below) being stored on the Storage Devices. Similarly, the Debtors are not aware of any business, financial, or other records being stored on the Storage Devices. The Debtors are also not aware of any lien having been asserted against the Property by a third party, and do not believe that the Property contains any hazardous materials, as defined under applicable law. The expected time and costs associated with gathering and disposing the Property far exceeds any potential return for these items. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' business judgment, the Debtors propose to abandon the Property in connection with the rejection of the Equinix Contract.

9. The sixth Contract is a Sponsorship Agreement, by and between Fortune Media Inc. and WRSS, dated as of April 7, 2022. This Contract provides that Fortune Media Inc. will distribute among select restaurants custom fortune cookies containing WRSS advertisements in exchange for annual fees.

10. The seventh Contract is a Google Cloud Master Agreement, by and between Google Cloud EMEA Ltd. (together with Google LLC, "Google") and Debtor FTX Europe AG, dated as of July 22, 2022, and all related order forms, schedules and addenda thereto, including, but not limited to, that certain Google Cloud Platform Addendum, dated as of September 16, 2022. This Contract provides that Google will offer FTX Europe AG cloud platform products and related services.

11. The eighth Contract is a Google Cloud Master Agreement, by and between Google Cloud EMEA Ltd. (together with Google LLC, "Google") and WRSS, dated as of July 15, 2022, and all related order forms, schedules and addenda thereto, including, but not limited to, that certain Google Cloud Platform Addendum, dated as of September 20, 2022. This Contract provides that Google will offer WRSS cloud platform products and related services.

12. The ninth Contract is a Share Sale and Purchase Agreement, by and between Tigerwit Holding Limited and a certain individual seller (collectively, the "<u>Sellers</u>") and Debtor FTX Europe AG. This Contract provides that FTX Europe AG will purchase certain stock from the Sellers and perform certain actions related to such sale.

## Jurisdiction

13. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 365(a) and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

14. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Debtors to (i) reject the Contracts, effective as of the Rejection Date, (ii) abandon certain Property associated therewith and (iii) take such action as may be necessary to implement and effectuate the rejection of the Contracts. The Debtors and their estates reserve any and all rights to assert that the Contracts are not executory contracts, and nothing included in, or omitted from, this Motion shall impair, prejudice, waive or otherwise affect such rights.

**Basis for Relief**

A.      **Rejection of the Contracts Reflects the Debtors' Business Judgment.**

15.     The Debtors have determined that the Contracts are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates and present burdensome liabilities. Accordingly, the Debtors' decision to reject the Contracts is an exercise of business judgment, and the rejection should be approved.

16.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization." *In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010); *NLRB* v. *Bildisco & Bildisco* (*In re Bildisco*), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

17.     The Debtors' rejection of an executory contract is governed by the "business judgment" standard, which requires a debtor to have determined that the requested rejection would benefit its estate. *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Sharon Steel Corp.* v. *Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *see also In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("In general, motions to reject executory contracts are evaluated under the business judgment test."); *In re HQ Glob. Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003)

("Under the business judgment standard, the sole issue is whether the rejection benefits the estate.").

18.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject contracts. *See, e.g.*, *In re Fed. Mogul Glob., Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (quoting *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").  Courts defer to a debtor's business judgment in rejecting an executory contract, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code. *See NLRB*, 465 U.S. at 523 (recognizing "business judgment" standard used to approve rejection of executory contracts).

19.     Moreover, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) allows the bankruptcy court to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the [Bankruptcy] Code was designed to obtain." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2004) (citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).  Section 105(a) therefore provides additional authority for the Court to grant the relief requested herein.

20.     The Debtors submit that rejection of the Contracts effective as of the applicable Rejection Date is within the Debtors' business judgment and an appropriate step in

furtherance of their efforts to preserve and maximize the value of their estates for all stakeholders. The Debtors have evaluated the Contracts in consultation with their professional advisors and determined that any benefits provided by these Contracts do not equal or exceed the costs associated with the Contracts. In many cases, the Contracts simply are no longer needed to operate the Debtors' businesses. In contrast, the Debtors' rejection of the Contracts now will provide significant cost savings to the estate by terminating any further costs and obligations.

21. The Contracts are not necessary for the Debtors' Chapter 11 proceedings. Given that the Debtors are not currently operating, these Contracts are not necessary or beneficial to the Debtors' chapter 11 efforts. Moreover, maintaining the Contracts could create unnecessary and burdensome expenses for the Debtors' estates. Thus, the Debtors have determined that maintaining the Contracts is not in the best interests of the Debtors or their estates.

22. Accordingly, the decision to reject the Contracts is a proper exercise of the Debtors' business judgment, and rejection of the Contracts therefore should be approved pursuant to section 365(a) of the Bankruptcy Code.

23. Courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re Carbonlite Holdings LLC*, 21-10527 (JTD) (July 14, 2021) [D.I. 714] (authorizing debtors to reject certain executory contracts effective as of the rejection date); *In re Lighthouse Resources Inc.*, 20-13056 (JTD) (Jan. 26, 2021) [D.I. 270] (authorizing debtors to reject certain executory contracts and unexpired leases effective as of the rejection date); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (April 9, 2020) [D.I. 587] (same); *In re THG Holdings LLC*, 29-11689 (JTD) (Oct. 10, 2019) [D.I. 343] (same).

B.    **Deeming Each Contract Rejected Effective as of the Rejection Date is Appropriate.**

24.    The Debtors also respectfully submit that it is appropriate for the Court to deem the Contracts rejected effective as of the Rejection Date.

25.    Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See SCS Co.* v. *Peter J. Schmitt Co.*, 1995 WL 1772010, at *2 (D. Del. May 15, 1995) (noting that a bankruptcy court has authority to select a retroactive date for the effective date of a lease's rejection); *see also In re Rupari Holding Corp.*, 2017 WL 5903498, at *6 (Bankr. D. Del. Nov. 28, 2017) (authorizing rejection of employment agreements effective as of a date before the debtor filed the motion to reject the same where debtor unequivocally communicated to the employees that it no longer required their services at the closing of the sale).

26.    Courts in this district and elsewhere have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date before entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1029 (1st Cir. 1995) ("[R]ejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *In re CCI Wireless, LLC*, 297 B.R. 133, 140 (D. Colo. 2003) (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

27.    Furthermore, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a).

28. In this instance, the balance of the equities favors the rejection of the Contracts effective as of the applicable Rejection Date. Without a retroactive date of rejection, the Debtors may be forced to incur unnecessary administrative costs for Contracts that do not provide any benefits to the Debtors and their estates. The Contract counterparties are not harmed by rejection prior to the date of entry of an order by this Court because they are each on notice as of filing of the Motion, and can as of that date start preparing for rejection and mitigating damages. This Court has entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Bar Date Order") which establishes the non-customer bar dates in these Chapter 11 Cases and the Contract counterparties shall have until the applicable date fixed by this Court in the Bar Date Order to file any and all claims for damages arising from the Debtors' rejection of the Contracts.

29. Courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re Carbonlite Holdings LLC*, 21-10527 (JTD) (July 14, 2021) [D.I. 714] (authorizing debtors to reject certain executory contracts effective as of the rejection date); *In re Lighthouse Resources Inc.*, 20-13056 (JTD) (Jan. 26, 2021) [D.I. 270] (authorizing debtors to reject certain executory contracts and unexpired leases effective as of the rejection date); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (April 9, 2020) [D.I. 587] (same); *In re THG Holdings LLC*, 29-11689 (JTD) (Oct. 10, 2019) [D.I. 343] (same).

**C.   Abandonment of Remaining Property is Appropriate under Section 554(a) of the Bankruptcy Code.**

30. Section 554(a) of the Bankruptcy Code provides that a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right

to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations are relevant under the instant facts.

31.     The Debtors submit that the Property to be abandoned in connection with the rejection of the Equinix Contract is of inconsequential value to the Debtors' estates, and the costs to the Debtors of retrieving, marketing, reselling or storing the Property exceeds any economic benefit that might be realized by selling or retaining such property. Accordingly, the Debtors have determined, in the exercise of their business judgment, that abandonment of the Property will maximize value for the benefit of all parties-in-interest; *provided*, *however*, that the following limitations shall apply to the Debtors' abandonment of the Property:

a. The Debtors shall not abandon any of their business, financial, or other records.

b. The Debtors shall not abandon any Property that the Debtors know is not owned by the Debtors, and shall either (i) provide for the return of such property to the office of the Debtors' CEO or (ii) use their reasonable best efforts to return such property to the owner of the property; *provided*, *however*, that the Debtors may abandon Property owned by a counterparty to the Equinix Contract.

c. The Debtors shall not abandon Property against which the Debtors know a third party has asserted a lien, without providing notice to such party.

d. To the extent that the Debtors propose to abandon any Property that may contain "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "<u>Confidential Information</u>"), the Debtors shall remove the Confidential Information from such Personal Property before such abandonment.

e. The Debtors not abandon, and remove, any hazardous materials defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law.

32.     Courts in this district routinely grant relief similar to that requested herein. *See, e.g., In re Nova Wildcat Shur-Line Holdings, Inc.*, 23-10114 (CTG) (April 20, 2023) [D.I.

336] (authorizing the Debtors to abandon property related to a rejected contract); *In re FTX Trading Ltd.*, 22-11068 (JTD) (Jan. 11, 2023) [D.I. 468] (authorizing the Debtors to abandon personal property, if any, that may be located on leased premises that are subject to a rejected lease); *In re Lucky's Market Parent Company, LLC*, 20-10166 (JTD) (March 12, 2020) [D.I. 406] (same); *In re Things Remembered, Inc.*, 19-10234 (KBO) (Feb. 28, 2019) [D.I. 218] (same); *In re Charming Charlie Holdings Inc.*, 17-12906 (CSS) (Jan. 10, 2018) [D.I. 285] (same); *In re Dex Media, Inc.*, No. 16-11200 (KG) (June 8, 2016) [D.I. 165] (same); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Apr. 4, 2016) [D.I. 996] (same).

### Compliance with Bankruptcy Rule 6006(f)

33.     Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple executory contracts or unexpired leases that are not between the same parties. Rule 6006(f) states, in part, that such motion shall:

(1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2) list parties alphabetically and identify the corresponding contract or lease;

(3) specify the terms, including the curing of defaults, for each requested assignment;

(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases;

(6) be limited to no more than 100 executory contracts or unexpired leases.

34.     The Debtors respectfully submit that the relief requested in this Motion complies with the requirements of Bankruptcy Rule 6006(f).

**Reservation of Rights**

35. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

36. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counterparties to the Contracts and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: June 14, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Matthew R. Pierce
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*