IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: June 28, 2023 at 1:00 p.m. (ET)** |
| | ) **Objection Deadline: June 21, 2023 at 4:00 p.m. (ET)** |

## MOTION OF THE PYTH DATA ASSOCIATION FOR
## RELIEF FROM THE AUTOMATIC STAY

Pyth Data Association ("PDA"), by and through its undersigned counsel, files this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), granting relief from the automatic stay to take certain actions with respect to the Pyth Protocol and PYTH (each as defined below) and related relief. In support of the Motion, the PDA relies on the Declaration of Michael Cahill in Support of Motion of the Pyth Data Association for Relief from the Automatic Stay (the "Cahill Declaration", a copy of which is attached hereto as **Exhibit B**), and respectfully states as follows:

### Preliminary Statement

1. The PDA files this Motion seeking relief from the automatic stay so the PDA and the rest of the Pyth community can continue developing the Pyth protocol[2] (the "Pyth Protocol") and growing the Pyth network (the "Pyth Network"), which the PDA believes will greatly benefit

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] *See* https://pyth.network/.

41729405.1 06/14/2023

the bankruptcy estate and holders of PYTH tokens ("Original PYTH"), including Debtors Cottonwood Grove Ltd. ("Cottonwood") and Alameda Research Ltd. (n/k/a Maclaurin Investments Ltd.; "Alameda").

2. The Pyth Protocol is a public blockchain-based software system that aggregates pricing data for various financial assets, such as digital assets and stocks, in order to provide a real-time public blockchain based feed of prices for such assets. Market data providers and consumers use the Pyth Protocol to provide and receive this financial market data. "Pyth Network" refers to this collection of users and technology. In other words, the Pyth Protocol refers specifically to the software on which the Pyth project runs, while the Pyth Network refers collectively to the community of users of the software and the software itself.

3. The PDA is a Swiss association founded by Pyth Network participants to advance the development of the Pyth Protocol and grow the Pyth Network. The PDA is focused on finding a new way to disseminate unique market data on-chain and aggregate it securely and has three primary responsibilities: (1) develop technology to promote the mission of the Pyth Network; (2) promote general education and awareness of the Pyth Network; and (3) encourage Pyth Network development through a grants program.[3]

4. The total supply of Original PYTH is 10 billion tokens. Cottonwood, Alameda, and their affiliates own together approximately 11.21% of the supply of Original PYTH, while other holders own the remaining 89%. On the Petition Date, approximately 99% of Original PYTH was held in accounts at FTX under a single blockchain wallet address (the "FTX Pyth Wallet"), where this Original PYTH currently remains.[4]

---

[3] *See* https://pythdataassociation.com/ (last accessed June 13, 2023).

[4] The remaining 0.75% of Original PYTH is held in self-custodied wallets by holders and not at FTX.

5. It was originally contemplated that Original PYTH would be the native cryptographic token of the Pyth Protocol to be used in a variety of ways, such as (i) rewards for those who contribute pricing data to the Protocol, (ii) a way for consumers to acquire pricing data, and (iii) a way for Original PYTH holders to propose and vote on governance and Pyth Protocol developments, including developments that create additional use cases for Original PYTH.

6. The potential use cases of Original PYTH have been embraced by many. Over 100 entities and natural persons purchased or received grants of Original PYTH. Some of the biggest players in the crypto and financial markets are holders, which reveals how valuable New PYTH (as defined below) may be if the Pyth Network is able to progress without further interruption by these Chapter 11 Cases.

7. As of the Petition Date, Original PYTH had not yet been operationalized within the Pyth Protocol. There is thus no use case or utility for Original PYTH, whether using the Pyth Protocol or an application unrelated to Pyth. Moreover, the PDA is not aware of Original PYTH being listed on any organized trading venue and is not aware of any active secondary trading market where a holder of Original PYTH could readily obtain value for the asset.

8. PDA, after consulting with the Debtors and working collaboratively to address certain issues and to obtain their consent to file this motion given the unique circumstances presented, seeks relief from the automatic stay to adopt newly minted PYTH tokens ("New PYTH") as the planned native token of the Pyth Protocol pursuant to a reminting plan (the "Reminting Plan").

9. Under the Reminting Plan, the PDA would adopt the New PYTH as the native token of the Pyth Protocol. In addition, under the Reminting Plan, New PYTH would have the same technical characteristics and potential uses on the Pyth Protocol as Original PYTH, and will be

subject to the same contractual lock-ups. Holders of Original PYTH who stood to benefit from holding Original PYTH would thus be able to realize that benefit by accepting New PYTH. As such, Debtors Cottonwood and Alameda would be provided, for no payment, an amount of New PYTH equal to the amount of Original PYTH that they and their affiliates owned as of the Petition Date.

10. These Chapter 11 Cases unfortunately sealed the fate of Original PYTH: whether through abandonment of the Pyth Network or effectuating the Reminting Plan, Original PYTH is likely in all cases to be effectively worthless. Proceeding with the Reminting Plan can still deliver value to holders.

11. As more fully set forth herein, the Pyth Network is at a critical juncture in its development and absent the relief requested in this Motion, is at risk of losing momentum and being abandoned given the uncertainty these Chapter 11 Cases pose to the Pyth Network, the Pyth Protocol, and Original PYTH. If this Motion is denied, the Pyth Network is at substantial risk of being abandoned, which would in turn render Original PYTH valueless (since Original PYTH has no contemplated use independent of the Pyth Protocol) and result in the disbandment of the Pyth Network and Pyth community. All Original PYTH holders—including Alameda and Cottonwood—would thus lose the opportunity to benefit from owning a potentially valuable asset that can at this point be realized only if the Reminting Plan proceeds.

12. If the Motion is granted, the Pyth community will be better off because of the opportunity to continue developing the Pyth Protocol and growing the Pyth Network for the benefit of Original PYTH holders, which include Debtors Cottonwood and Alameda. Under the Reminting Plan, holders will receive New Pyth that may one day have substantial value.

13. Based on the foregoing, including the Debtors' consent to the PDA's request, there is "cause" to lift the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code based on the unique facts and circumstances presented. Failure to lift the stay is likely to result in the abandonment of the Pyth Network, leaving the Debtors and others without any value from the Pyth Network. In contrast, the Reminting Plan will enhance the value of the Debtors' estates.

## Jurisdiction and Venue

14. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over these Chapter 11 Cases and this matter under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

15. Venue of these Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

16. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware, the PDA consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

17. The statutory predicate for the relief requested herein is section 362(d)(1) of the Bankruptcy Code.

**Factual Background**

**I.     The Chapter 11 Cases**

18.     On November 11, 2022, and with respect to Debtor West Realm Shires, Inc., on November 14, 2022 (collectively, the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered for procedural purposes only.

19.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [Docket No. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [Docket No. 93].

**II.    Minting and Distribution of PYTH**

20.     Original PYTH holders generally acquired their Original PYTH in one of two ways. Holders either purchased Original PYTH by executing *Pyth Token Purchase Agreements* (the "Token Purchase Agreements"), or were granted Original PYTH by executing *Restricted Token Grant Agreements* (the "Token Grant Agreements", and together with the Token Purchase Agreements, the "Pyth Agreements"[5]). FTX.com was the initial custodian for Original PYTH, and

---

[5]  The Pyth Agreements contain commercially sensitive information and can be made available to the Court, the Debtors, the U.S. Trustee, and certain other stakeholders upon execution of standard agreements protecting confidentiality.

in almost all cases, the Pyth Agreements required holders of Original PYTH to store their Original PYTH in accounts at FTX.com in order to ensure consistent enforcement of applicable token lock-up agreements.[6]

21. On or around February 27, 2021, 10 billion Original PYTH were minted on the Solana blockchain and subsequently delivered.[7] As of the Petition Date, 99.25% of Original PYTH were held in the FTX Pyth Wallet, where they remain today.[8] The remaining 0.75% were self-custodied by the other Original PYTH holders in five other wallet addresses. The distribution of Original PYTH remains the same as of the filing of this Motion: only six wallet addresses, including the FTX Pyth Wallet, hold Original PYTH.[9]

22. A review of the Solana blockchain explorer shows there have been very few transactions involving Original PYTH since its minting and distribution. This is because, among other reasons, (i) there are only six crypto wallets containing Original PYTH, (ii) Original PYTH cannot yet be used in the Pyth Protocol, (iii) there is no known active secondary trading market for

---

[6] Holders of 0.75% of the supply of Original PYTH were permitted to store Original PYTH outside of FTX.com.

[7] These tokens were minted at the following smart contract address: 3ho8ZM4JVqJzD56FADKdW7NTG5Tv6GiBPFUvyRXMy35Q. *See* https://solscan.io/token/3ho8ZM4JVqJzD56FADKdW7NTG5Tv6GiBPFUvyRXMy35Q (last accessed June 13, 2023). Blockchain explorers are widely accepted within the crypto industry as a reference to record and track transactions. For example, the examiner in Celsius relied on an ethereum explorer to trace the movement of digital assets. *See Final Report of Shoba Pillay, Examiner* at 58 FN 58 [Docket No. 1956], No. 22-10964 (Bankr. S.D.N.Y. 2022) (using an ethereum explorer, Etherscan, to track the movement of wrapped ether); *Interim Report of Shoba Pillay, Examiner* at 19 FN 30 [Docket No. 1411], No. 22-10964 (Bankr. S.D.N.Y. 2022) (using an ethereum explorer, Etherscan, to track the initial issuance and subsequent movement of CEL tokens).

[8] The relevant wallet address is: BTK7n5vzF3VbqcjFYjpFcrhvZSuqrr6sYoJgsWVsQmtp. *See* https://solscan.io/account/BTK7n5vzF3VbqcjFYjpFcrhvZSuqrr6sYoJgsWVsQmtp (last accessed June 13, 2023).

[9] *See* https://solscan.io/token/3ho8ZM4JVqJzD56FADKdW7NTG5Tv6GiBPFUvyRXMy35Q#holders (last accessed June 13, 2023) (listing the five other wallet addresses holding PYTH):
(i) 5En4H2VYz4QPDxpCrA7vhUQo82Y4tv1pqf3KtyEPWsYs;
(ii) 5GPMxVTwRLnACBDcEMyp4mBDTLoyCgf1RvRA576Bhogx;
(iii) 9FroAEiLrhm41gN31gaFUZNLKryrDipjPnuuoXPTHTLW;
(iv) CT9CG4xgYXLMpa6MhztVREFAk89F5ni3Qs9z2S9RJdkz; and
(v) 6YAJQxZb6UYtwJ8R9iQhgi4ETt8MfJ5RiVVkoKJyojtN.

Original PYTH, and (iv) the Pyth Agreements contain substantial restrictions on the transfer of Original PYTH.

23. Using the Solana blockchain explorer, all Original PYTH (other than the small amount self-custodied) can be seen moving from the original minting and distribution to the FTX Pyth Wallet.  Original PYTH is a different asset to which other FTX.com customers did not have immediate access and which FTX did not freely transfer into and out of the FTX.com exchange. Holders of Original PYTH were also restricted from transferring Original PYTH out because the Pyth Agreements generally required holders of Original PYTH to maintain their Original PYTH at accounts at FTX.com.

**III.    Overview of the Pyth Protocol and Use Case of Original PYTH**

24. The Pyth Protocol is designed to provide timely, accurate, and valuable financial market data to decentralized finance applications and the general public.  Pyth Data Association, *Pyth Network: A First-Party Financial Oracle*, at 1 (Jan. 4, 2022), https://pyth.network/whitepaper.pdf (the "Pyth Whitepaper").  The Pyth Protocol is designed to accomplish this by incentivizing market participants, such as trading firms, market makers, and exchanges, to share pricing data feeds on certain financial assets.  *Id.*  The Pyth Protocol aggregates the pricing data received by various participants and publishes it for others to use.  *Id.*

25. A native token is critical to the Pyth Protocol's functionality, and it was contemplated that Original PYTH would play that role.  The Pyth Protocol cannot become fully functional without a native token.

26. The Pyth Network currently has two sets of participants, each of whom was formerly expected at some point to use Original PYTH when interacting with the Pyth Protocol.

It is contemplated that New PYTH will have the same functionality set forth below that Original PYTH was contemplated to have.

27. First, publishers (the "Publishers") publish price data that the Pyth Protocol aggregates. *Id.* at 2. Publishers are typically market participants with access to timely price information, like an exchange or trading firm. Publishers were intended to have the opportunity to receive rewards in Original PYTH as compensation for sharing price data. *Id.* at 13. There are currently over seventy announced Publishers (many of which are large players in the crypto and financial industries), demonstrating the extraordinary institutional interest in the Pyth Protocol, Pyth Network, and Original PYTH.[10]

28. Second, consumers (the "Consumers") receive and use pricing data provided by Publishers and aggregated by the Pyth Protocol. *Id.* at 2. Although the Pyth Protocol currently does not impose any material charge for the consumption of market data, at some point, it was contemplated that Consumers would be required to pay Publishers in Original PYTH for pricing data. *Id.* at 5, 13.

29. The Pyth Protocol cannot operate as contemplated while Original PYTH are inaccessible and custodied in the FTX Pyth Wallet. Original PYTH cannot be used to acquire market data, which is a foundational element of the design of the Pyth Protocol. Data contributors are the biggest holders of Original PYTH and they are contributing data to be used by the Pyth Protocol in the hopes that one day the value of the Pyth Network and Pyth Protocol will enhance the use cases of their Original PYTH. If almost all of those Original PYTH are inaccessible and/or unusable, those data contributors risk losing any value from the Pyth Network and Pyth Protocol and may abandon the Pyth project as a result.

---

[10] *See* https://pyth.network/publishers (last accessed June 13, 2023).

30. In addition, Original PYTH holders had the expectation they could use their Original PYTH to vote on Pyth Network governance decisions and Pyth Protocol upgrades. *Id.* at 12. Examples of governance decisions include, among many others, (i) approving software updates to the Pyth Protocol; (ii) authorizing new Publishers to provide price feeds; (iii) determining how fees and rewards are distributed; and (iv) determining which financial assets are covered by the Pyth Protocol. *Id.* at 12–13.

31. The Pyth Network is at substantial risk of losing momentum and being abandoned if the Reminting Plan is not allowed to proceed. *Cahill Decl.* ¶ 15. If the Pyth Network is abandoned, Original PYTH will have no use cases as there is no other use of Original PYTH outside of the Pyth Protocol. The result is that Original PYTH would likely forever have no value. In contrast, if the Motion is granted, the development of the Pyth Protocol and growth of the Pyth Network will continue, without interruption, providing the Debtors and other holders an opportunity to maximize the value of their New PYTH holdings rather than face the substantial risk of Original PYTH having no use case and thus no value. *Id.* ¶¶ 16, 21.

32. After completion of the Reminting Plan, New PYTH will have the same functionality and uses as Original PYTH currently does.

IV. **Current State of Original PYTH, the Pyth Network, and the Pyth Protocol**

33. Like many others in the crypto industry, these Chapter 11 Cases have caused uncertainty for the Pyth Network, Pyth Protocol, the PDA and its members, and the broader Pyth community. As a result, there is a substantial risk that without relief from the automatic stay, participants in the Pyth Network and Pyth Protocol, including software and code contributors, will start abandoning the Pyth project. *Id.* ¶ 10. Original PYTH being inaccessible at FTX.com and not available to be used in the Pyth Protocol exacerbates this abandonment risk. *Id.* ¶ 7. Original

PYTH holders are unlikely to wait a substantial and indefinite amount of time for these Chapter 11 Cases to unfold.

34. As also set forth in the Cahill Declaration, Original PYTH has no expected use case or value independent of the Pyth Protocol. *Id.* ¶ 5. If the Pyth Protocol is abandoned and the Pyth Network disbands, Original PYTH will be a casualty and likely will be worthless. *Id.* ¶ 11. The abandonment of the Pyth Protocol and disbanding of the Pyth Network would thus be a value-destructive event and foreclose any opportunity the Debtors have to monetize their Original PYTH holdings. *Id.* ¶ 12.

35. There is only one path forward to keep the Pyth Network alive and retain the use cases of Original PYTH: the Reminting Plan whereby the PDA will recognize the New PYTH as the native token for the Pyth Protocol, and New PYTH will be offered to Original PYTH holders at no additional cost. *Id.* ¶¶ 14, 20.

36. The Reminting Plan will also include reasonable and customary customer identification procedures that holders of Original PYTH will be required to satisfy in order to receive New PYTH. *Id.* ¶ 16.

37. Under the Reminting Plan, Cottonwood and Alameda (and other Original PYTH holders) would receive the same amount of New PYTH as they hold of Original PYTH. *Id.* ¶ 14. New PYTH will have the same characteristics as Original PYTH, and holders of Original PYTH that currently are subject to lock-up agreements or similar arrangements with respect to Original PYTH will be required to enter into substantially similar agreements in order to receive New PYTH. *Id.* The Reminting Plan is intended to effectuate a like-for-like replacement as a mechanism to deliver New PYTH that will become usable once those features are added to the Pyth Protocol. *Id.* ¶ 20. This Reminting Plan will give the Pyth Network a chance of progressing

its development and an opportunity for the Debtors to realize value from their New PYTH. These unique circumstances are poised to be a true "win-win" for the Pyth community and the Debtors.

## Relief Requested

38. By this Motion, the PDA seeks relief from the automatic stay to adopt the New PYTH pursuant to the Reminting Plan for the benefit of all PYTH holders, including Cottonwood and Alameda.

## Basis for Relief Requested

**I. Cause Exists to Lift the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(1).**

39. Section 362(d)(1) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). In the determination of "cause," the moving party bears the initial burden to establish a *prima facie* case which the party opposing relief must then rebut. *Matter of Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992). The PDA acknowledges the Reminting Plan implicates property of the Debtors' estates, at least with respect to the Original PYTH owned by Cottonwood and Alameda, and has engaged cooperatively with the Debtors to obtain their consent to this request.

40. "Cause" is not defined in the Bankruptcy Code. "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). The automatic stay "is not meant to be absolute, and in appropriate instances relief may be granted." *Id.* The Third Court has instructed courts to use "wide latitude" in determining whether to grant relief from stay. *In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007). "The purpose of the automatic stay is to maintain the status quo that exists at the time of the debtor's bankruptcy filing." *In re APF Co.*, 274 B.R. 408, 417 (Bankr. D. Del. 2001).

41.     Here, "cause" exists to lift the stay to effectuate the Reminting Plan, which will enhance the value of the estate.  If the stay is not lifted, the Debtors are likely to lose their ability to monetize their Original PYTH holdings that could otherwise generate significant value for the Debtors' estates and their creditors.

42.     Original PYTH does not have any utility at the moment and will not have utility unless and until the Pyth Protocol adds functionality for using Original PYTH. *Cahill Decl.* ¶ 4. The Pyth Protocol is thus unlikely to be completed, and could be abandoned entirely, if the Reminting Plan is not allowed to proceed. *Id.* ¶ 10.  The abandonment of the Pyth Protocol and disbanding of the Pyth Network would cause the value of Original PYTH to be zero or near zero. *Id.* ¶ 12.  Original PYTH has no value or contemplated use independent of the Pyth Protocol.  *Id.* ¶ 5.

43.     Currently, given the uncertainty surrounding their Original PYTH holdings, (i) absent relief, Publishers would have little incentive to continue publishing price data to the Pyth Protocol since Publishers will not receive Original PYTH rewards for doing so and enhance the use cases of their Original PYTH, and (ii) Pyth community members have less to gain by continuing to develop the Pyth Protocol, among other issues.

44.     Granting relief from the stay comports with the purpose underlying the automatic stay in maintaining the status quo as of the bankruptcy filing.  Immediately before the Petition Date, Cottonwood, Alameda, and their affiliates owned approximately 11.21% of the supply of Original PYTH that was intended to be usable on the Pyth Protocol that was currently under development.  After completion of the Reminting Plan, Cottonwood and Alameda would own the same percentage of New PYTH as Original PYTH, and the Pyth Protocol and Pyth Network would

be much more likely to continue to develop. *Id.* ¶¶ 14, 18.  The Reminting Plan thus both restores the status quo before the Petition Date and enhances the Debtors' current position.

45.     Time is of the essence.  The risk to the Pyth Network increases with each passing day. *Id.* ¶ 15.  The only chance for the Debtors to have the opportunity to monetize their Original PYTH holdings is for the Court to allow the PDA to adopt New PYTH pursuant to the Reminting Plan. *Id.* ¶ 17.

46.     PDA, after consulting with the Debtors and working collaboratively to address certain issues and to obtain their consent to file this motion given the unique circumstances presented, seeks relief from the automatic stay to adopt New PYTH as the planned native token of the Pyth Protocol pursuant to the Reminting Plan.

### Federal Rule of Bankruptcy Procedure 6004(h)

47.     In light of the need to expeditiously execute the Reminting Plan, the PDA requests the Court waive the 14-day stay requirement under Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 6004(h) so the Order is effective immediately upon entry.

### Notice and No Prior Request

48.     Notice of this Motion will be provided to: (i) the Debtors; (ii) the Official Committee of Unsecured Creditors; (iii) U.S. Trustee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Department of Justice; (vii) the United States Attorney for the District of Delaware; and (viii) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the PDA submits no further notice is required.

**Conclusion**

WHEREFORE, the PDA respectfully requests the Court (i) enter the Order in the form attached hereto as **Exhibit A**, and (ii) grant such other and further relief as is just and equitable.

Dated: June 14, 2023

                                        **SAUL EWING LLP**

By: */s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino (DE Bar No. 6027)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
Peter A. Siddiqui (*pro hac vice* pending)
Ethan D. Trotz (*pro hac vice* pending)
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
peter.siddiqui@katten.com
ethan.trotz@katten.com

*Attorneys for Pyth Data Association*