# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: June 28, 2023 at 1:00 p.m. ET**<br>**Obj. Deadline: June 21, 2023 at 4:00 p.m. ET** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I)(A) ESTABLISHING
DEADLINES FOR FILING CUSTOMER PROOFS OF CLAIM,
(B) APPROVING PROCEDURES FOR SUBMITTING PROOFS OF CLAIM
AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF
AND (II) GRANTING RELATED RELIEF**

> **NOTICE TO ALL FTX CUSTOMERS: BY THIS MOTION, THE DEBTORS ARE
> SEEKING TO ESTABLISH SEPTEMBER 29, 2023 AS THE DEADLINE BY WHICH
> TO FILE A PROOF OF CLAIM ON ACCOUNT OF CUSTOMER CLAIMS. IF THE
> MOTION IS GRANTED AND THE COURT ESTABLISHES THE DEADLINE, MORE
> INFORMATION ABOUT THE PROOF OF CLAIM PROCESS FOR CUSTOMERS
> WILL BE AVAILABLE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/FTX/.**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors")[2] hereby submit this motion (this "Motion") for entry of an order,

substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of

title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002,

3003(c)(3) and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288
and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of
the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A
complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd
is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   **For the avoidance of doubt, this Motion only seeks to establish deadlines and procedures for filing proofs
of claim against FTX Trading Ltd. and its affiliated debtors and debtors-in-possession and not against
Debtor Emergent Fidelity Technologies Ltd.**

and rules 2002-1, 3001-1 and 3003-1 of the Local Rules of Bankruptcy Practice and Procedure of

the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

(i)(a) establishing a bar date to file proofs of claim for Customer Claims (as defined below),

(b) approving procedures for submitting proofs of claim for Customer Claims and (c) approving

the form and manner of notice thereof and (ii) granting related relief.  In support of this Motion,

the Debtors respectfully state as follows:

## Background

1.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware

(the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases

(the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing*

*Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and*

*(B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I.

1519] (the "Non-Customer Bar Date Order").  The Non-Customer Bar Date Order established,

among other things, the deadline to file proofs of claim for Non-Customer Claims (*i.e.*, any claim

other than a Customer Claim (as defined below)) and proofs of interest and the deadline by

which government units must file proofs of claim.

3.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Jurisdiction

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 3003(c)(3) and 9007 and Local Rules 2002-1, 3001-1 and 3003-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

5.      By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) establishing the bar date (the "Customer Bar Date") to file proofs of claim for Customer Claims, (b) establishing the bar date (the "Amended Schedules Customer Bar Date" and, together with the Customer Bar Date, the "Customer Bar Dates"), in the event that any of the Debtors file amended schedules of assets and liabilities (collectively, the

"Schedules"), by which holders of Customer Claims impacted must file proofs of claim on account of such amended Schedules, (c) approving procedures for submitting proofs of claim for Customer Claims and (d) approving the form and manner of notice of the Customer Bar Dates.

A.      Customer Claims

6.      By this Motion, the Debtors seek to establish the Customer Bar Dates for filing of proofs of claim for "Customer Claims," which means any claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any person or entity[3] against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX Exchange as of the Petition Date (the "Customer Entitlement Claim") or (b) any other investment or trading activities on any FTX Exchange.  "FTX Exchange" means FTX.com, FTX.US, FTX Trading Ltd. (d/b/a "FTX"), West Realm Shires Services Inc. (d/b/a "FTX US"), FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd., d/b/a "FTX EU"), Quoine Pte Ltd. (d/b/a "Liquid Global"), FTX Japan or Liquid platforms operated by FTX Japan K.K. ("FTX Japan") and FTX Turkey Teknoloji Ve Ticaret A.S or any other exchange or trading platform operated by any Debtor.

7.      Customer Claims shall not include any claims of customers of FTX Japan's two platforms, FTX Japan or Liquid (collectively, the "FTX Japan Platforms"), for cash, cryptocurrency, digital assets or other assets held by such customers in an account on the FTX Japan Platforms as of the Petition Date for which such person or entity has withdrawn, or otherwise received, such cash, cryptocurrency, digital assets or other assets postpetition. Beginning on February 21, 2023, FTX Japan resumed withdrawals of cash and cryptocurrency

---

[3]     As used herein, the term "entity" has the meaning given to it in section 101(15) of the Bankruptcy Code and includes, among other things, "persons" as such term is defined in section 101(41) of the Bankruptcy Code.

held by customers of FTX Japan at both of the FTX Japan Platforms.  Since then, users of the

FTX Japan Platforms have been able to review and confirm their FTX Japan account balances

and then withdraw cash and cryptocurrency from the Liquid Platform.

8.      Customer Claims shall also not include any claims of customers of FTX

EU Ltd. (f/k/a K-DNA Financial Services Ltd., d/b/a "FTX EU") ("FTX EU") for FTX EU

Customer Cash (as defined below) held in FTX EU Client Accounts (as defined below) for

which such customer has withdrawn, or otherwise received, such cash, cryptocurrency, digital

assets or other assets postpetition, but shall include any claims by customers of FTX EU for cash,

cryptocurrency, digital assets or other assets that are not FTX EU Customer Cash and were not

withdrawn or received by such customer postpetition, including any claims of such customer for

any other investment or trading activities on any other FTX Exchange.  As required under

applicable Cyprus law, FTX EU maintained segregated client fiat accounts with certain third

party financial institutions (the "FTX EU Client Accounts"), which contained certain client cash

(the "FTX EU Customer Cash").  Under the supervision of the Cyprus Securities and Exchange

Commission ("CySEC") and pursuant to Cyprus law, FTX EU is currently in the process of

confirming fiat claims of customers of FTX EU against FTX EU Customer Cash resulting from

(i) cash deposits made by such customers in the FTX EU Client Accounts to trade crypto-

derivative and other derivative products on the FTX.com/eu platform and/or (ii) the settlement in

fiat of open derivative trades executed through the FTX.com/eu platform by FTX EU customers

as a result of the shutdown of the FTX.com/eu platform.  Following the completion of this fiat

claim confirmation process, FTX EU expects to seek CySEC approval to begin repayment of all

or a portion of such confirmed fiat claims using FTX EU Customer Cash.  As of the Petition

Date, the quantity of FTX EU Customer Cash held in the FTX EU Client Accounts was

approximately €46.5 million.  It is possible that additional quantities may be deposited into the FTX EU Client Accounts and constitute FTX EU Customer Cash following the Petition Date, including as a result of the settlement of any intercompany receivables or other claims brought by or on behalf of FTX EU customers against other FTX Group entities (if any).

9.      Any holder of a Customer Claim that either (x) files a proof of claim on account of a Customer Entitlement Claim against any Debtor or (y) has a Customer Entitlement Claim that is scheduled against any Debtor and does not separately file a proof of claim with respect to such Customer Entitlement Claim shall be deemed to have filed an identical Customer Entitlement Claim in the same amount against all other Debtors for any alleged theft, conversion, borrowing, or any similar tort, of customer cash, cryptocurrency, digital assets or other assets reflected in such holder's account balance as of the Petition Date.  Accordingly, claimants do not need to file separate proofs of claim against each Debtor for such Customer Entitlement Claim made for any alleged theft, conversion, borrowing, or similar tort, of customer cash, cryptocurrency, digital assets or other assets reflected in such holder's account balance as of the Petition Date.  Additionally, for any Customer Claims that are not Customer Entitlement Claims, such claim shall be filed on the same Customer Proof of Claim Form (defined below) on the Customer Claims Portal (defined below).

10.     For the avoidance of doubt, Customer Claims shall only include claims against the Debtors and not against any non-Debtors, including any of the founders of the Debtors, including Samuel Benjamin Bankman-Fried, Gary Wang, Nishad Singh and Caroline Ellison (collectively, the "Founders").

11.     Additionally, at this time, the Debtors are only requesting holders of Customer Claims assert their quantities of cryptocurrency, digital assets or other assets with

respect to their Customer Claims and not to convert such cryptocurrency, digital assets or other assets into a liquidated or dollarized quantity.  The Debtors will seek to determine the valuation of all cryptocurrency, digital assets or other assets at a later date, and all parties' rights with respect to such valuation are reserved.

B.    Customer Claims Portal and the Customer Claims Process

12.    The Debtors have over 10 million customer accounts, approximately 1.8 million of which have net positive balances as of the Petition Date.  In order to streamline the claims process for holders of Customer Claims, the Debtors have developed an online claims portal at http://claims.ftx.com (the "Customer Claims Portal").  The Customer Claims Portal will be available in multiple different languages, including, among others, Spanish, Chinese, Japanese, German and Russian.  The Customer Claims Portal provides for a three-step proof of claim submission process for holders of Customer Claims.  First, after verifying user credentials, the Customer Claims Portal requests holders of Customer Claims to submit Know Your Customer ("KYC") information of the holders of such Customer Claims as of the Petition Date (the "Original Customer").  Second, the Customer Claims Portal then directs holders of Customer Claims to a page to view historical transaction information and account balances. Third, the Customer Claims Portal then integrates and directs the holders to an electronic proof of claim platform maintained by the Debtors' claims agent, Kroll Restructuring Administration LLC (the "Claims Agent").  The platform maintained by the Claims Agent lists the amount or quantity and type or nature of the claims of each holder with net positive balances as of the Petition Date.  If such holder agrees with the amounts or quantity stated, the FTX Exchange against whom the claim is asserted and the type or nature of the claim as listed, other than submission of KYC information, no further action is required.  If such holder disagrees with any

-7-

component of its claim and/or seeks to assert a claim arising out of or related to any other investment or trading activity, the holder may amend or supplement the auto-generated customized proofs of claim by electronically editing the form and modifying the information contained therein by inserting additional tokens, fiat currency(ies), cryptocurrencies, digital assets or other assets held as of the Petition Date and/or modifying the characterization of such claim and/or asserting a claim arising out of or related to any other investment or trading activity and/or selecting the applicable FTX Exchange from the dropdown menu provided.  Holders with no net positive balances as of the Petition Date will have the opportunity to fill in, and submit, an electronic proof of claim form via the Claims Agent's electronic proof of claim platform.  The login landing page of the Customer Claims Portal showing these steps is as follows:



C.    KYC Information on the Original Customer

13.    As part of the Debtors' Customer Claims process, the Debtors are requesting all claimants submit KYC information of the Original Customer.  The Debtors have

retained a number of experienced KYC/AML vendors to handle the collection, storage and processing of KYC data to validate the KYC information and enable the screening of the Original Customer to mitigate the risk that the Customer Claims process could be used to facilitate money laundering, fund terrorism or result in violations of economic sanctions.  The Debtors are requesting KYC information from both individual and institutional customers.  The KYC information to be collected from individual customers may include, among other things, full name including any alias, date of birth, address and proof of address, identification and identification-related documents, nationality, phone number, email address, occupation, bank account information or wallet address, social security number (for U.S. citizens) and facial liveness.  The KYC information to be collected from institutional customers may include, among other things, company name, registration information, tax identification number, principal business address and phone number, business email address, information on the nature of the business and principal business activity, entity size, source of wealth/source of funds, annual revenue/profit, authorized signer, identity of ultimate beneficial owners ("UBO"), identity of directors and or members of management, bank account information or wallet address and for any UBOs, directors or members of management, similar identification information and records as are collected for individual customers who are natural persons.

14.     These KYC procedures are needed to implement anti-money laundering ("AML") controls that were lacking prepetition.  These AML controls are necessary for the Debtors to mitigate the risk that the Customer Claims process could be used to facilitate money laundering, fund terrorism or result in violations of economic sanctions, limit regulatory risks and to help ensure a legitimate claims trading market.

15.     The Debtors will be amending their Schedules to, among other things,

remove the contingent, disputed and unliquidated designations from certain of the Customer Entitlement Claims. Accordingly, any holder who agrees with the amounts or quantities of its fiat currency, cryptocurrency, digital assets or other assets as set forth on the Schedules does not need to submit a proof of claim with respect to its Customer Entitlement Claim and need only submit the requested KYC information of the Original Customer.

16.     Customer Claims of (i) a holder with net positive balance as of the Petition Date, who agrees with the amounts or quantities set forth on the Debtors' Schedules, does not submit a proof of claim and does not submit the requested KYC information and (ii) a holder who submits a proof of claim but does not submit the requested KYC information, in each case by the Customer Bar Date, shall not be deemed disallowed, but shall be deemed "unverified." With respect to all such unverified Customer Claims, the Debtors may, in their sole discretion after consultation with the Committee, either (i) allow such claims without the requested KYC information or (ii) object to the allowance of such Customer Claims' proofs of claim and scheduled claims on an omnibus basis, on notice to all such holders, including, among other bases, of insufficient documentation, and request such holders submit the requested KYC information. In the event of such objection, such holders of Customer Claims will have the opportunity to submit the requested KYC information to the Debtors to resolve the objection on such claim relating to the requested KYC information. All parties' rights are fully reserved with respect to such objection.

D.     Establishment of Customer Bar Dates

17.     The Debtors propose to establish the following deadlines for filing proofs of claim solely for Customer Claims in these Chapter 11 Cases:

> a.   Customer Bar Date. The Debtors propose that any entity holding a Customer Claim against any of the Debtors be required to file a proof of claim for such Customer Claim on or before **September 29, 2023,**

**at 4:00 p.m., Eastern Time**, subject to the exceptions described herein.

As detailed herein, the Debtors propose to provide at least two months' notice of the Customer Bar Date.

b. <u>Amended Schedules Customer Bar Date</u>.  The Debtors propose that any entity holding a Customer Claim impacted by an amendment of or supplement to the Schedules with respect to such Customer Claim be required to file a proof of claim on ***the later of***:  **(a) the Customer Bar Date and (b) 4:00 p.m., Eastern Time, on the date that is 30 days after the date that notice of the applicable amendment of or supplement to the Schedules is served on such entity.**

The Debtors will provide notice of any amendment of or supplement to the Schedules to the holders of any Customer Claims affected by such amendment or supplement, and will provide such holders with notice of the applicable Amended Schedules Customer Bar Date.  If the holder of a Customer Claim has already submitted a proof of claim with respect to such Customer Claim, such holder may amend its existing proof of claim or file a new proof of claim.

E.    <u>Entities Required to File Proofs of Claim by the Customer Bar Date</u>

18.    The Debtors propose that the following entities be required to file proofs of claim and submit the requested KYC information on or before the Customer Bar Dates, unless the Customer Bar Dates are inapplicable pursuant to an exception described in Part F below:

a. any entity whose Customer Claim is not listed in the applicable Debtor's Schedules;

b. any entity that believes its Customer Claim has been listed in an incorrect amount or quantity or improperly characterized in the Debtors' Schedules, and seeks to amend the amount, quantity and/or characterization of such claim in the Schedules; and

c. any entity that believes its Customer Claim as listed in the Schedules is not an obligation of the specific FTX Exchange identified in the Schedules, and seeks to assert the claim against a different Debtor or FTX Exchange.

F.    <u>Entities Not Required to File Proofs of Claim by the Customer Bar Dates</u>

19.    In accordance with Bankruptcy Rule 3003(c)(2), the Debtors propose that

any entity, **other** than those listed below, that holds a Customer Claim against any Debtor in

these Chapter 11 Cases be required to submit a proof of claim by the applicable Customer Bar

Date. The Debtors propose that the holders of Customer Claims that would otherwise be subject

to a Customer Bar Date need not file proofs of claim, but be required to submit the requested

KYC information, on or prior to any Customer Bar Date if they fall into any of the following

categories:

a. any entity that, at the time this Motion has been filed, has already properly filed a Customer Claim against the Debtors with the clerk of the Bankruptcy Court in the District of Delaware or the Debtors' Claims Agent in a form substantially similar to Official Bankruptcy Form No. 410 (unless such entity seeks to assert the Customer Claim against a Debtor or FTX Exchange not identified in the prior proof of claim or in a different quantity than the prior proof of claim, in which case an additional proof of claim amending the prior proof of claim must be filed);

b. any entity holding a Customer Claim (i) whose Customer Claim is listed on the Schedules filed by the Debtors; (ii) whose Customer Claim is **not** scheduled as "disputed," "contingent," or "unliquidated"; (iii) who does not disagree with the amount or quantity, type or nature, and priority of such Customer Claim as set forth in the Schedules; and (iv) who does not dispute that such Customer Claim is an obligation only of the specific Debtor or FTX Exchange against which the Customer Claim is listed in the Schedules;

c. any entity holding any Customer Claim that has previously been allowed by order of this Court;

d. any entity that has been paid in full by any of the Debtors;

e. any entity with respect to a claim for which a different deadline has previously been fixed by this Court, including Non-Customer Claims filed in response to the Non-Customer Bar Date Order;

f. any Debtor that holds a claim against another Debtor (whether directly or indirectly); *provided* that if a Debtor's chapter 11 case is dismissed after the Customer Bar Date, such Debtor shall have 30 days after the dismissal of such chapter 11 case to file proof(s) of claim for any Customer Claims such Debtor may have against any FTX Exchange or any other Debtor;

       g.  any entity that is exempt from filing a proof of claim pursuant to an order of the Court in these Chapter 11 Cases; and

       h.  any entity holding a claim solely against a non-Debtor entity, including the Founders.

20.      For the purposes of (a) and (b) directly above, the Debtors request all entities holding Customer Claims submit KYC information of the Original Customer.

21.      For the avoidance of doubt, nothing contained herein is intended as, or should be construed as, an admission or stipulation of the validity of any claim against any Debtor, any assertion made therein or herein, or a waiver of any Debtor's rights to dispute any claim or assert any cause of action, offsets or defenses against any party.

G.     <u>The Proof of Claim Form and Requirements for Submitting Proofs of Claim for Customer Claims</u>

22.      The Debtors propose to email all known holders of Customer Claims with a link to access the Customer Claims Portal.  Additionally, the Claims Agent's website will include a link to access the Customer Claims Portal and link to complete and submit a modified proof of claim form (the "<u>Customer Proof of Claim Form</u>"), substantially in the form attached as <u>Exhibit 1</u> to the Order.

23.      The proposed Customer Proof of Claim Form is based on Official Bankruptcy Form 410 and has been modified as follows:

       a.  for any Customer Claim for cryptocurrency(ies) or digital assets, the Customer Proof of Claim Form includes (i) the applicable cryptocurrency(ies) or digital assets and (ii) the number of units of such cryptocurrency(ies) or digital assets;

       b.  for any Customer Claim for fiat currency(ies), the Customer Proof of Claim Form includes (i) the applicable fiat currency(ies), and (ii) the amount of fiat currency(ies);

       c.  for any Customer Claim for Non-Fungible Tokens ("<u>NFTs</u>"), the Customer Proof of Claim Form includes (i) a description for the NFT

and (ii) the unique identification code;

d.  the Customer Proof of Claim includes a separate section for holders to assert claims for any other investment or trading activities on any FTX Exchange;

e.  the Customer Proof of Claim Form allows holders to identify the type of program (*i.e.*, Earn, Lend or Stake) they assert their cryptocurrency(ies) is held in; and

f.  each claimant will be able to check a box at the top of the Customer Proof of Claim Form to indicate which FTX Exchange such claimant has a claim against.  For the avoidance of doubt, any holder of a Customer Claim that either (x) files a proof of claim on account of a Customer Entitlement Claim against any Debtor or (y) has a Customer Entitlement Claim that is scheduled against any Debtor and does not separately file a proof of claim with respect to such Customer Entitlement Claim shall be deemed to have filed an identical Customer Entitlement Claim in the same amount against all other Debtors for any alleged theft, conversion, borrowing, or any similar tort, of customer cash, cryptocurrency, digital assets or other assets reflected in such holder's account balance as of the Petition Date.  Accordingly, claimants do <u>not</u> need to file separate proofs of claim against each Debtor for such Customer Entitlement Claim made for any alleged theft, conversion, borrowing, or any similar tort, of customer cash, cryptocurrency, digital assets or other assets reflected in such holder's account balance as of the Petition Date.  Additionally, for any Customer Claims that are not Customer Entitlement Claims, such claim shall be filed on the same Customer Proof of Claim Form on the Customer Claims Portal.

24.  The Debtors request that the Court require all proofs of claim with respect to Customer Claims submitted in these Chapter 11 Cases be consistent with the following:

**<u>Procedures For Filing Proofs of Claim</u>**

a.  Each physical and electronic proof of claim must:  (i) be written in English; (ii) conform substantially to the Customer Proof of Claim Form; and (iii) unless otherwise consented to by the Debtors in writing, include supporting documentation unless voluminous, in which case a summary must be attached.  If documentation is unavailable, the claimant shall provide an explanation as to why documentation is not available.

b.  Each holder of a Customer Claim must indicate the FTX Exchange

-14-

against whom the claimant has a claim, either by checking the box with respect to physical proofs of claim or selecting from the dropdown menu with respect to electronic proofs of claim.

c.  In addition, each physical and electronic proof of claim must set forth, for any claim based on cryptocurrency(ies) or digital assets, (i) the applicable cryptocurrency(ies) or digital assets, (ii) the number of units of such cryptocurrency(ies) or digital assets and (iii) the program (*i.e.*, Earn, Lend or Stake) applicable to each cryptocurrency or digital asset. The Customer Proof of Claim Form does not require holders of Customer Claims to set forth a dollar valuation for any of the cryptocurrency(ies) or digital assets.[4]  For any claim based on foreign fiat currency(ies), each proof of claim must set forth (i) the applicable foreign fiat currency(ies), (ii) the claim amount in that foreign fiat currency(ies), (iii) the exchange rate(s) utilized to convert from the foreign fiat currency(ies) to U.S. dollars as of the Petition Date (if different than the listed rate), and (iv) the amount of such fiat currency claim converted to U.S. dollars using the identified exchange rate(s). For any Customer Claim for fiat currency(ies), each proof of claim must set forth (i) the applicable fiat currency(ies), and (ii) the amount of fiat currency(ies) as of the Petition Date.  For any Customer Claim for NFTs, each proof of claim must set forth (i) the NFT description and (ii) unique identification code.  In the case of any other claim, the proof of claim must set forth the amount of such claim in U.S. dollars. For Customer Claims that are not Customer Entitlement Claims, the holder must assert such claim with specificity, including all relevant details regarding such investments or other trading activities (*e.g.*, dates, amounts, quantities, type or nature, alleged facts), and must assert such claim against the applicable Debtor.

d.  Parties submitting a proof of claim through non-electronic means who wish to receive a receipt of their proofs of claim from the Claims Agent must also include with their proof of claim or a copy of their proof of claim a self-addressed, stamped envelope.

## General Information

a.  Any holder of a Customer Claim that either (x) files a proof of claim on account of a Customer Entitlement Claim against any Debtor or (y) has a Customer Entitlement Claim that is scheduled against any Debtor and does not separately file a proof of claim with respect to such Customer Entitlement Claim shall be deemed to have filed an identical Customer Entitlement Claim in the same amount against all other

---

[4]  For the avoidance of doubt, the Debtors are only requesting all holders of Customer Claims to assert their quantities of cryptocurrency, digital assets and other assets and not to include any conversions or valuations. The Debtors will seek to establish valuations at a later date, and all parties' rights are reserved.

Debtors for any alleged theft, conversion, borrowing, or any similar tort, of customer cash, cryptocurrency, digital assets or other assets reflected in such holder's account balance as of the Petition Date. Accordingly, claimants do <u>not</u> need to file separate proofs of claim against each Debtor for such Customer Entitlement Claim made for any alleged theft, conversion, borrowing, or any similar tort, of customer cash, cryptocurrency, digital assets or other assets reflected in such holder's account balance as of the Petition Date. Additionally, for any Customer Claims that are not Customer Entitlement Claims, such claim shall be filed on the same Customer Proof of Claim Form on the Customer Claims Portal. For the avoidance of doubt, Customer Entitlement Claims shall only include claims against the Debtors and not against any non-Debtors, such as the Founders. Additionally, for any claims arising out of or related to any other investment or trading activities on any FTX Exchange, such claim shall be filed on the same Customer Proof of Claim Form on the Customer Claims Portal.

b.  A proof of claim submitted under Debtor FTX Trading Ltd. (Case No. 22-11068) or a proof of claim that does not identify a Debtor or FTX Exchange will be deemed as submitted only against Debtor FTX Trading Ltd.

c.  Any proof of claim for a Customer Claim must be delivered in a manner permitted by the Order so as to be actually received by the Claims Agent no later than the applicable Customer Bar Date. The Debtors propose that claimants be permitted to submit proofs of claim on account of Customer Claims on or before the applicable Customer Bar Date (a) electronically through the Customer Claims Portal or (b) physically by hand delivery or overnight courier to FTX Trading Ltd. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 or (c) physically by first-class mail to FTX Trading Ltd. Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, P.O. Box 4850, New York, NY 10163-4850. Each claimant who hand delivers or physically mails a proof of claim must also mail KYC information pursuant to the KYC Procedures directly to the Claims Agent. ***Proofs of claim will be deemed filed only when actually received by the Claims Agent on or before the applicable Customer Bar Date. Proofs of claim may not be delivered by facsimile, telecopy or email transmission.***

e.  ***For the avoidance of doubt, unless otherwise ordered by the Court, the Claims Agent is authorized and directed to make public every proof of claim filed pursuant to the Order, and the Claims Agent, the Debtors, their estates and their respective directors, officers, employees, agents, and professionals shall have no liability for***

*making public any proof of claim filed pursuant to the Order.*

H.    Effect of Failure to File Proof of Claim

   25. The Debtors propose that, absent further order of the Court, all holders of

Customer Claims that fail to comply with the Order by timely filing a proof of claim in the

appropriate form, if required, on or before the applicable Customer Bar Date, shall be forever

barred, estopped and enjoined from:  (a) asserting the applicable Customer Claim against the

Debtors or their estates or property in these Chapter 11 Cases or (b) voting on, or receiving any

distribution under, any Chapter 11 plan in these Chapter 11 Cases, except to the extent that such

claim is identified in the Schedules as an undisputed, noncontingent and liquidated claim

(including with respect to the amount, quantity, type or nature of such claim).

I.    Bar Date Notice and Noticing Procedures

   26. The Debtors submit that it would be unnecessarily costly to mail hard-

copy notice of the Customer Bar Date to each of their 10 million customers.  Moreover, since a

number of these customers only interacted with the Debtors prepetition via the Debtors'

electronic platform, the Debtors currently do not have physical addresses for a number of the

customers.  Instead, the Debtors propose to send by email to all customers as of the Petition

Date, including all claimants known to the Debtors holding potential Customer Claims, a notice

of the Customer Bar Dates (the "Customer Bar Date Notice"), substantially in the form attached

as Exhibit 2 to the Order, that:  (i) identifies the Customer Bar Dates, (ii) includes a link that

allows each customer to access the Customer Claims Portal to file proofs of claim and view their

personalized claim information, including:  (a) the identity of the Debtor and FTX Exchange

against which the Customer Claim(s) is asserted; (b) the amounts of fiat currency(ies), quantities

and types or nature of cryptocurrency, digital asset or other assets of any Customer Claim(s); and

(c) whether the Customer Claim(s) is scheduled as secured, unsecured priority or unsecured nonpriority, (iii) details procedures for submitting a timely and accurate proof of claim for physical proofs of claim, (iv) lists the parties who are not required to submit a proof of claim, (v) describes the consequences of failing to submit a proof of claim in accordance with the Order and (vi) provides a link to the Claims Agent's website to access additional information about the Customer Bar Dates and submission of proofs of claim, including how to access a physical Customer Proof of Claim Form.

27.     For known holders of Customer Claims for whom the Debtors only have a physical mailing address, the Debtors propose mailing such holders a 6x9 postcard (the "Customer Bar Date Postcard"), substantially in the form attached as Exhibit 2-A to the Order. The Customer Bar Date Postcard will provide notice of, among other things, (i) the Customer Bar Dates, (ii) the website address that allows each customer to access the Customer Claims Portal to file proofs of claim and view their personalized claim information, (iii) a summary of the procedures for submitting a timely and accurate proof of claim for physical proofs of claim, (iv) the consequences of failing to submit a proof of claim in accordance with the Order and (v) provides instructions to access the Claims Agent's website to obtain additional information about the Customer Bar Dates and submission of proofs of claim, including how to access a physical Customer Proof of Claim Form.  For the avoidance of doubt, the Customer Bar Date Notice and the Customer Bar Date Postcard shall not include a physical copy of the Customer Proof of Claim Form but shall include instructions to access the Customer Claims Portal to file Customer proofs of claim electronically and instructions to obtain a physical copy of the Customer Proof of Claim Form from the Claims Agent's website.

28.     The Debtors submit that the proposed Customer Bar Date Notice and

Customer Bar Date Postcard complies with Local Rule 3003-1 and notifies all recipients that, among other things, proofs of claim must be filed on or before the applicable Customer Bar Date. As soon as practicable following the entry of the Order, but in any event at least 60 days prior to the Customer Bar Date, the Debtors intend to serve, or cause to be served, the Customer Bar Date Notice by electronic service or the Customer Bar Date Postcard by first-class United States mail, postage prepaid to the following parties:

> a.  all known holders of Customer Claims;
>
> b.  the U.S. Trustee;
>
> c.  counsel to the Committee;
>
> d.  all persons or entities that have requested notice in these Chapter 11 Cases;
>
> e.  all persons or entities that have previously filed a proof of claim with respect to a Customer Claim in these Chapter 11 Cases; and
>
> f.  such additional persons and entities as deemed appropriate by the Debtors.

29.    The Debtors submit that the proposed Customer Bar Date Notice and Customer Bar Date Postcard will provide all holders of Customer Claims with ample time after the mailing of the Customer Bar Date Notice or Customer Bar Date Postcard, as applicable, to review the Schedules, compare the information contained therein with their own books and records and prepare and file proofs of claim, if necessary.

J.    <u>Publication of the Customer Bar Date Notice</u>

30.    In light of the size, complexity and geographic diversity of the Debtors' operations, there may exist Customer Claims against the Debtors that the Debtors have been unable to identify on the Schedules.  The Debtors therefore believe that it is necessary and appropriate to provide notice of the Customer Bar Dates to entities whose names and addresses

are unknown to the Debtors and to provide supplemental notice to known holders of potential Customer Claims.

31.     Accordingly, pursuant to Bankruptcy Rule 2002(l), the Debtors propose to provide notice of the Customer Bar Dates, modified for publication substantially in the form attached to the Order as Exhibit 3 (the "Publication Notice"), on one occasion in *The New York Times* and *CoinDesk* (CoinDesk.com) at least 60 days before the Customer Bar Date.

K.     Claims Processing

32.     Given the high profile nature of these Chapter 11 Cases and the number of known customers, the Debtors anticipate a high volume of customer proofs of claims, including potentially a large number of proofs of claims from individuals who are generally not familiar with the Chapter 11 claims processes.  To ensure an efficient and cost-effective claims process, the Debtors believe it is necessary to streamline the Claims Agent's intake and processing of Customer Claims.  Accordingly, the Debtors request the Claims Agent be authorized to (i) refrain from processing, and logging in the claims registry, any physical proofs of claims filed by holders on account of Customer Claims that are duplicates of electronically filed claims and (ii) process, and log in the claims registry, all other physical proofs of claims filed by holders of Customer Claims who do not file electronic claims only with the names and addresses of such holders (such claims shall be listed and characterized as Customer Claims solely for purposes of the claims registry).  The Debtors submit that these two measures will significantly reduce claims processing costs and will not prejudice any holders of Customer Claims as none of these measures affect the allowance of, or distributions on, any Customer Claim.

**Basis For Relief**

A.     **Cause Exists to Approve the Proposed Customer Bar Dates Pursuant to Bankruptcy Rule 3003(c)(3).**

33.     Generally, claimants must submit a proof of claim to assert a claim in a bankruptcy proceeding.  *See* 11 U.S.C. § 501(a).  Bankruptcy Rule 3003(c)(3) governs the timing for submission of proofs of claim in a chapter 11 case and provides, in relevant part, that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."  F.R.B.P. 3003(c)(3).  Bar dates are integral to the twin goals of chapter 11—preserving going-concerns and maximizing creditor recovery value.  *See Bank of Am. Nat'l Trust & Sav. Assoc.* v. *203 N LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (identifying the two primary purposes of chapter 11 relief as (a) the preservation of businesses as going concerns and (b) the maximization of assets available for the benefit of unsecured creditors).  Indeed, prolonged uncertainty regarding the aggregate liabilities of the bankruptcy estate could delay or derail the development of a restructuring plan process to the detriment of creditors and parties-in-interest.  *See In re Waterman S.S. Corp.*, 59 B.R. 724, 726 (Bankr. S.D.N.Y. 1986).

34.     To ensure that the Debtors are able to confirm and consummate a chapter 11 plan, the Debtors will require accurate information regarding the nature, validity, quantity and status of all claims, including Customer Claims that will be asserted against their estates in these Chapter 11 Cases.  Given the number of potential claimants in these Chapter 11 Cases and the well-documented lack of prepetition books and records, the Debtors submit that the establishment of the Customer Bar Dates will allow the Debtors to better understand the universe of Customer Claims and to assess and formulate a Chapter 11 plan and claims analysis and reconciliation process to address these claims.

35.     To that end, requiring holders of Customer Claims to assert such Customer

Claims using the Customer Proof of Claim Form, on or prior to the applicable Customer Bar

Dates, will ensure that the Debtors have accurate information regarding the nature, validity, and

quantity of such claims while affording parties asserting such claims appropriate and adequate

notice.  Moreover, the Debtors submit that the Customer Claims Portal facilitates the most cost-

effective and efficient claims process for such creditors and helps conserve estate resources to

the benefit of the Debtors' stakeholders.  Accordingly, the Debtors submit that cause exists to

approve the Customer Bar Dates.

>  **B.     The Proposed Procedures For Submitting Customer Proofs of Claim Are
>          Effectively Designed to Provide Both Notice and Clarity to Customers and
>          Should Be Approved.**

36.     The Debtors have worked to design procedures for Customer Claims that:

(a) provide all potential claimants with ample notice and opportunity to submit proofs of claim,

(b) provide a clear process for effecting the same, (c) minimize money laundering and sanctions

risks and (d) achieve administrative and judicial efficiency.  The proposed procedures are

calibrated to achieve the goals of providing comprehensive notice and clear instructions to all

potential claimants, on the one hand, and allowing these Chapter 11 Cases to move forward as

expeditiously as possible, on the other hand.

37.     Among other things, the proposed procedures provide clear instructions

for submitting proofs of claim that are calculated to alleviate confusion or uncertainty among

potential claimants that might result in unnecessary protective proofs of claim or multiples of the

same, which, in either event, would result in unnecessary expense and delay in the claims

reconciliation process.  The proposed procedures will also clearly communicate that the

proposed Customer Bar Date is only for Customer Claims.  Indeed, the Debtors believe that the

use of the Customer Claims Portal and Customer Proof of Claim Form will help mitigate

claimants 'confusion and result in a claims reconciliation process that is less burdensome, costly,

and time-consuming for the Debtors and their customers alike, all of which will inure to the benefit of these bankruptcy estates and their stakeholders.

38.     Lastly, the preferred approach for proofs of claim on account of Customer Claims is submission via the Customer Claims Portal.  Use of the Customer Claims Portal is more efficient for all parties and less costly for the Debtors than the use of physical Customer Proof of Claim Forms.  The electronic Customer Claims Portal allows all holders to view historical transactional information and for any holders with net positive balances as of the Petition Date, the Claims Agent's platform will pre-populate the electronic proof of claim form with the information contained in the Debtors' Schedules.  Although completed proofs of claim submitted by facsimile or email will not be accepted, the Debtors propose that proofs of claim be permitted to be submitted electronically using the Claims Agent's website at https://restructuring.ra.kroll.com/FTX/Home-Index.  Electronic interfaces have been used in other large bankruptcy cases, particularly in those involving debtors in the cryptocurrency industry.  *See, e.g.*, *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) [D.I. 271] (approving use of electronic interface for claims submission); *In re Blockfi Inc.*, No. 22-19361 (MBK) (Bankr. N.J. Jan. 30, 2023) [D.I. 440] (same); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 3, 2022) [D.I. 218] (same).

39.     While the Customer Claims Portal has more extensive features than interfaces utilized in other chapter 11 claims processes, the proposed portal uses the same core architecture.  Additionally, (i) permitting the Claims Agent to refrain from processing and logging in the claims registry any physical proofs of claims filed by holders on account of Customer Claims that are duplicates of electronically filed claims and (ii) authorizing the Claims Agent to process, and log in the claims registry, all other physical proofs of claims filed by

holders of Customer Claims who do not file electronic claims only with the names and addresses

of such holders will significantly reduce claims processing costs.  The Debtors submit that these

additional features are necessary to provide holders with historical transactional information and

account balances and to facilitate collecting proofs of claims from millions of potential holders

of Customer Claims in a timely, lawful and efficient manner.  Notwithstanding, the Debtors

propose that holders of Customer Claims may also be permitted to submit proofs of claim on

account of Customer Claims in person, by hand delivery or via mail.  Accordingly, the Debtors

submit that the proposed procedures for submitting proofs of claim on account of Customer

Claims should be approved.

> **C.    The KYC Procedures Benefit All Stakeholders and Should Be Approved.**

40.    The Debtors propose that all individuals and institutions that assert a

Customer Claim must submit the required KYC information for the ***Original Customer***.  It is

well-documented that prepetition management maintained inadequate records regarding the

identities of its customers and the funding of its customer accounts, and otherwise did not follow

best practices for requesting, handling and storing customer information.  In particular,

prepetition management did not adequately collect basic KYC information, failed to perform due

diligence on customers who opened and held accounts on the FTX Exchanges and failed to

collect information on the source of funds for the accounts on the FTX Exchanges.  As a result,

the Debtors now have over 10 million customer accounts where a substantial portion of account

holders' identities are either unknown or unverified.  In some instances, the Debtors have only an

email address to identify an account holder.

41.    The Debtors' proposed procedures for collecting and validating the KYC

information ("KYC Procedures") further the first of the five core objectives that the Debtors set

at the outset of these Chapter 11 Cases:  implementation of controls.  This collection of KYC

information from, and screening of, the Original Customers should mitigate the risk that the

Debtors in allowing claims of, and ultimately making distributions to, customers could violate

U.S. sanctions laws and regulations.  The United States Treasury's Office of Foreign Assets

Control ("OFAC") administers and enforces economic and trade sanctions against targeted

foreign countries and regimes, terrorists, international narcotics traffickers and those engaged in

threats to U.S. national security.  OFAC publishes lists of Specially Designated Nationals

("SDNs"), individuals and companies owned or controlled by, or acting for or on behalf of,

sanctioned countries as well as individuals, groups and entities, such as terrorists and narcotics

traffickers designated under various sanctions programs.   Such assets are blocked and U.S.

persons are generally prohibited from dealing with them.[5]  Enforcement of OFAC's sanctions is

based on a strict liability legal standard, and sanctions restrictions apply to both U.S. and non-

U.S. persons whenever there is a U.S. nexus.  Failing to adhere to OFAC sanctions requirements

could result in substantial civil and criminal penalties.  As OFAC has warned, "anyone engaging

in virtual currency activities in the United States, or that involve U.S. individuals or entities" is

subject to OFAC regulations.[6]  The primary means of preventing OFAC violations is the

identification and screening of customers, relationships and transactions that pose a sanctions

risk.[7]  In order to conduct effective OFAC screening, the Debtors must have accurate and

verified customer information.

---

[5]   ALPHABETICAL LISTING OF SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS, U.S. DEP'T OF THE
TREASURY, OFFICE OF FOREIGN ASSETS CONTROL, https://www.treasury.gov/ofac/downloads/sdnlist.txt;
*Specially Designated Nationals (SDNs) and the SDN List: Frequently Asked Questions*, U.S. DEP'T OF
TREASURY: OFFICE OF FOREIGN ASSETS CONTROL, https://hometreasury.gov/policy-issues/financial-
sanctions/faqs/topic/1631.

[6]   *See* SANCTIONS COMPLIANCE GUIDANCE FOR THE VIRTUAL CURRENCY INDUSTRY, OFAC (October 2021),
https://ofac.treasury.gov/media/913571/download?inline.

[7]   *Id.*

42.    Additionally, the Debtors' proposed KYC Procedures will enable the Debtors to implement necessary controls to mitigate the risk the claims administration and allowance process could be used as a means to launder crime proceeds.  The Money Laundering Control Act of 1986 prohibits certain financial transactions connected to unlawful activity. Among other provisions, the money laundering laws make it a crime to knowingly conduct a financial transaction that involves the proceeds of "specified unlawful activity" with one of four specific intents or to knowingly engage in a monetary transaction in property derived from specified unlawful activity with a value greater than $10,000.[8]  Under the U.S. AML laws, a financial institution such as a money service business ("MSB"), is required to have an AML program that is reasonably designed to prevent the business from being used to facilitate money laundering and the financing of terrorist activities.

43.    As discussed above, the Debtors cannot rely on KYC conducted on the holders of accounts prepetition.  Absent the proposed KYC procedures, there is a risk that allowance of Customer Claims and distribution on account of such claims could violate OFAC sanctions or the money laundering laws.  Requiring the collection of KYC information concerning the Original Customer will enable the Debtors, through their vendors, to validate the KYC information and to screen the Original Customer to ensure such entity is not a sanctioned party and that funds transferred to the Debtors do not appear to be the proceeds of crime.  This process is necessary to mitigate the risk that the claims process could be used as a means to launder criminal proceeds, fund terrorism and/or violate economic sanctions.  The Debtors' proposed KYC Procedures also have the added benefit of facilitating a legitimate claims trading

---

[8]    18 U.S.C. §§ 1956(a)(1), 1957(a); *see also* 31 C.F.R. § 1022.210(a). Under the U.S. AML laws, a "financial institution" includes money service businesses and "currency exchange[s] or . . . business[es] engaged in the exchange of . . . value that substitutes for currency or funds." Id. § 5312(a)(2).

market.  Importantly, the Debtors are **not** proposing that each holder of a Customer Claim who

fails to submit KYC information must file a proof of claim, thereby submitting such holder to the

jurisdiction of the Court.  Rather, holders of Customer Claims who agree with the quantities set

forth in the Debtors' Schedules are not required to file a proof of claim.  Accordingly, the

Debtors respectfully request that the Court approve the proposed KYC Procedures.

      D.     **The Proposed Customer Bar Date Notice and Customer Bar Date Postcard Satisfy Due Process Requirements and Should Be Approved.**

      44.     Bankruptcy Rule 2002(a)(7) requires debtors to provide claimants and

equity holders at least 21 days' notice by mail of the time fixed for submitting proofs of claim

pursuant to Bankruptcy Rule 3003(c).  In addition, Bankruptcy Rule 2002(l) provides that the

court may order notice by publication if it finds that notice by mail is impractical or that it is

desirable to supplement other notice.  Bankruptcy Rule 9008 also provides that the court shall

determine the form and manner of publication notice, the newspapers used, and the frequency of

publication.  For notice purposes, bankruptcy law divides creditors into two types, "known" and

"unknown."

      45.     Due process requires that known creditors receive actual written notice of

a debtor's bankruptcy filing and claims bar date.  *See Chemetron Corp.* v. *Jones*, 72 F.3d 341,

346 (3d Cir. 1995); *In re Nortel Networks, Inc.*, 531 B.R. 53, 63 (Bankr. D. Del. 2015) (citing

*Chemetron*); *In re W.R. Grace & Co.*, 316 Fed. App'x 134, 136 (3d Cir. 2009) (same).  Written

notice requirement may be accomplished by the mailing of postcards.  *See, e.g.*, *In re 24 Hour

Fitness Worldwide, Inc.*, No. 20-11558-KBO (Bankr. D. Del. Aug. 24, 2020) [D.I. 785-3]; *In re

TK Holdings Inc.*, No. 17-11375-BLS (Bankr. D. Del. Oct. 4, 2017) [D.I. 959].  For unknown

creditors, constructive notice by publication typically satisfies the requirements of due process.

*See id.*; *Nortel Networks*, 531 B.R. 63 (citing *Chemetron*).  As characterized by the Supreme

Court, a known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv., Inc.* v. *Pope*, 485 U.S. 478, 490 (1988).  In contrast, an unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]."  *See Chemetron*, 72 F.3d 346 (quoting *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

46.    Where a creditor is known to the debtor, due process requires that the debtor take reasonable steps, such as direct mailing, to provide actual notice of the deadline for submitting proofs of claim.  *See, e.g.*, *In re Exide Techs.*, 600 B.R. 753,763-64 (Bankr. D. Del. 2019) ("The debtor must provide a known creditor with actual written notice. . . . For unknown creditors, constructive notice . . . satisfies the requirements of due process.") (citations omitted); *Pope*, 485 U.S. at 491 (where creditor was known or "reasonably ascertainable," then due process only requires "notice by mail or other means as certain to ensure actual notice").  Where a creditor is unknown to the debtor, due process requires only that the debtor take reasonable steps, such as notice by publication, to provide constructive notice of the deadline for submitting proofs of claim.  *See, e.g.*, *In re Exide Techs.*, 600 B.R. at 764 ("It is well-settled that constructive notice of the claims bar date by publication, while less direct than actual notice, generally satisfies the requirements of due process for unknown creditors.") (citations omitted); *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 48 (Bankr. D. Del. 2012) (summarizing the long-standing precedent behind constructive notice for unknown creditors).

47.    The Debtors submit that the proposed notice procedures, Customer Bar Date Notice and Customer Bar Date Postcard satisfy due process under the *Chemetron* standard. The Debtors will provide claimants holding Customer Claims and known to the Debtors with

actual notice of the proposed Customer Bar Dates via email or where email is not available, by

physical mailing.  Where email is not available, the Debtors propose serving the claimants with

the Customer Bar Date Postcard rather than incurring the additional cost and expense of mailing

a full proof of claim form and form of notice.  The Customer Bar Date Postcard will contain

substantially the same information as the Customer Bar Date Notice in summary form and will

provide substantial cost savings to the Debtors.

48.    The Debtors propose to serve the Customer Bar Date Notice or the

Customer Bar Date Postcard, as applicable, at least 60 days prior to the Customer Bar Date on

such claimants identified by the Debtors based on currently available books and records.  As

such, the Debtors will be providing actual notice to customers reasonably known to them with no

less than two months' notice of the Customer Bar Date, in satisfaction of Bankruptcy Rule

2002(a)(7).

49.    After the initial mailings of the Customer Bar Date Notice or the Customer

Bar Date Postcard, as applicable, the Debtors propose to make supplemental mailings of notices,

including in the event that:  (a) notices are returned by the post office with forwarding addresses;

(b) notices served by email are confirmed to be undeliverable; and (c) additional potential

claimants become known to the Debtors.  In these and similar circumstances, the Debtors request

that the Court permit them to make supplemental mailings of the Customer Bar Date Notice or

the Customer Bar Date Postcard, as applicable, at any time up to 21 days in advance of the

applicable Customer Bar Date, with any such mailings deemed timely and the applicable Bar

Date being enforced against the relevant parties.

50.    To provide unknown claimants with constructive notice of the Customer

Bar Dates, the Debtors propose to publish the Publication Notice, modified as necessary, on one

occasion in each of *The New York Times* and CoinDesk (CoinDesk.com) and any other such publications that the Debtors deem appropriate no later than 60 days prior to the Customer Bar Date.  As such, the Debtors will be providing unknown customers with at least 60 days' constructive notice of the Customer Bar Date, in satisfaction of Bankruptcy Rule 2002(a)(7).  The Debtors submit that the proposed service and publication of the Customer Bar Date Notice is reasonably designed to reach all interested parties in a cost-effective manner and satisfies the requirements of the relevant provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules.  Accordingly, the Debtors respectfully request that the Court deem the proposed forms of Customer Bar Date Notice and Customer Bar Date Postcard and mailing and publication thereof good, adequate, and sufficient notice of the Customer Bar Dates.

## **Notice**

51.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Reservation of Rights**

52.     Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim, equity interest or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim, equity interest or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or the Order,

(e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and (b) grant such other and further relief as is just and proper.

Dated: June 14, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*