**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  June 28, 2023, at 1:00 p.m. ET** |

**FEE EXAMINER'S SUMMARY REPORT
ON FEE REVIEW PROCESS AND FIRST INTERIM FEE APPLICATIONS
SCHEDULED FOR UNCONTESTED HEARING ON JUNE 28, 2023**

TO:    THE HONORABLE JOHN T. DORSEY
         UNITED STATES BANKRUPTCY JUDGE:

The Fee Examiner appointed in the above-captioned chapter 11 cases (the "Fee Examiner") submits this summary report (the "Summary Report") pursuant to the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834] (the "Fee Examiner Order"), recommending the Court's approval of the interim fees and expenses outlined on the attached **Exhibit A**, as requested by the Retained Professionals[2] listed therein (the "Applicants") and adjusted with their consent.  The Fee Examiner further requests that the Court defer consideration of the interim application listed on the attached **Exhibit B,**[3] either for the Court's consideration at the September 13, 2023, uncontested fee hearing, or at a contested fee hearing separately scheduled for that purpose.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryon's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined shall have the meanings set forth in the Fee Examiner Order.

[3] The *First Interim Fee Application of Ernst & Young LLP* [Dkt. No. 1654] was filed late—on June 15, 2023.

**PRELIMINARY OBSERVATIONS**

The "First Interim Fee Period" (November 11, 2022[4] - January 31, 2023) spanned less than three months—marked by challenges unlike any most Retained Professionals have ever faced.  Many practitioners have remarked not only on the breathtaking global financial scope of these cases, but also on the expansive web of financial misdeeds that preceded and likely precipitated these bankruptcies.

To be sure, some aspects of these cases are unremarkable.  For instance, though the process of asset identification and recovery is very much a work-in-progress, the scheduled assets of the FTX enterprise—$4.775 billion[5]—do not register on a list of the largest Chapter 11 cases of all time.  In fact, between 1983 and 2022, at least 18 Chapter 11 debtors listed assets greater than *forty* billion on their initial petition or schedules:



---

[4] Or the effective date of the professional's retention.
[5] *See Notice of Presentation to the Official Committee of Unsecured Creditors*, Ex. A at 5 [Dkt. No. 1101-1]. The Fee Examiner acknowledges that the asset pool already has increased to at least $7.3 billion, *see Notice of Filing Hearing Presentation* dated April 12, 2023 [Dkt. No. 1277] (the "April 12 Hearing Presentation"), and that "M&A and Venture Book Activity" may ultimately generate new value for the benefit of creditors.

Similarly, FTX is hardly the first business organization felled by a knave.  *See, e.g., In re Drexel Burnham Lambert Grp., Inc.* (Bankr. S.D.N.Y. 1992); *In re Enron Corp.* (Bankr. S.D.N.Y. 2002); *In re MF Glob. Holdings, Ltd.* (Bankr. S.D.N.Y. 2012).

What makes these cases extraordinary, however, is the largely unregulated financial system in which the Debtors (and other similar financial technology companies) operate, combined with their global scope, the complete absence of corporate records, and the non-existence of even the most basic corporate governance.  *See First Interim Report of John J. Ray III to the Independent Directors on Control Failures at the FTX Exchanges* [D.I. 1242].

Notwithstanding the relative scope of the known asset pool, these proceedings appear on track to be very expensive by any measure.  Though the cases are only seven months old, Retained Professionals already have requested more than $200 million in fees through the interim compensation process—more than two percent of reported estate assets and ten percent of reported cash.  *See* April 12 Hearing Presentation.  Careful stewardship of administrative expenses will translate to a better outcome for creditors, and a Chapter 11 process that is both cost-conscious and cost-effective will yield a better outcome for all stakeholders.

Without question, the fees incurred to date are remarkable, but so is the professionals' performance.  The Fee Examiner has been struck by the creativity, professionalism, and personal sacrifice of the Retained Professionals who sprung into action in November to begin transforming a smoldering heap of wreckage into a functioning Chapter 11 debtor-in-possession.  Very few firms could have accomplished what these professionals accomplished in 90 days.  They did not have the luxury of carefully considering staffing decisions, developing the most

---

[6] The Fee Examiner compiled the table on the preceding page using publicly-available sources and has included it here for illustrative purposes.  It should not be used as a substitute for official court records available on PACER or through https://www.uscourts.gov/statistics-reports/analysis-reports/bankruptcy-filings-statistics.

efficient teams, or deploying resources with military precision. The First Interim Fee Period was truly an "all-hands-on-deck" crisis, and the Bankruptcy Code is explicit that reasonableness and necessity are to be measured at the time services are performed, not in hindsight. Some Applicants assembled teams that ended up being too big. Some firms deployed experts whose technical skill did not end up being needed. Others directed resources from other sectors of their organizations to fill gaps in their teams. The Fee Examiner cannot in good faith conclude that any of those approaches was wholly unreasonable in the moment.

A single 90-day snapshot is almost never, by itself, sufficient to draw definitive and binding conclusions about the reasonableness and necessity of professional fees. While the Fee Examiner process reviewed every fee application, expense, and time entry and presented comprehensive observations and exhibits to each Applicant, many of these observations took the form of questions rather than conclusions. Without exception, the Applicants answered the Fee Examiner's questions, cooperated with the review process, provided supplemental information and detail as appropriate, and worked in good faith toward consensual resolutions that have avoided the distraction of a contested fee hearing. As one would expect, the Fee Examiner protocol identified some billing issues—discussed below—that warranted adjustments.

The Fee Examiner and Retained Professionals will continue to refine their processes to identify and eliminate inefficiency and excess as the cases progress. Contested fee issues may not be avoided forever. For now, though, the adjusted fees recommended here and detailed in the attached exhibits are appropriate for payment on an *interim* basis pursuant to section 331 of the Bankruptcy Code, which clearly contemplates that widespread wholesale adjustments to fees may not be appropriate at the interim compensation phase. Interim fees awarded pursuant to section 331 are always subject to later adjustment in the final section 330 analysis. No fee order

is final until a plan has been confirmed and become effective. *See* 3 *Collier on Bankruptcy* ch. 331 (Richard Levin & Henry J. Sommer eds., 16th ed. 2023). Retained Professionals must file *final* fee applications at the conclusion of the case, when the Court will consider all of the circumstances to make a final determination of the reasonableness and necessity of the fees in light of "the complexity, importance, and nature of the problem, issue, or task addressed." *See* Bankruptcy Code section 330(a)(3)(D). In many instances—particularly with respect to staffing and team structure—the Fee Examiner has elected to reserve judgment until a later interim fee application or the final fee application stage. The Retained Professionals are on notice of these concerns and will consider them as the case unfolds and as they prepare subsequent fee applications.

## PROCEDURAL BACKGROUND

1.      The Court appointed the Fee Examiner on March 8, 2023, to:

> [E]nsure that the fees and expenses requested by the Retained Professionals subject to this Order are reasonable, actual, and necessary as required by section 330 of the Bankruptcy Code by monitoring, reviewing, and, where appropriate, objecting to Applications filed by such Retained Professionals. The Fee Examiner shall conduct her duties in compliance with (i) the Bankruptcy Code (specifically, sections 328, 329, 330, and 331, as applicable, pursuant to each such Retained Professional's retention order), (ii) the Bankruptcy Rules, including Bankruptcy Rule 2016, (iii) the Local Rules, including Local Rule 2016-2, (iv) all other applicable rules and guidelines, and (v) the Interim Compensation Order.

Fee Examiner Order at ¶ 5.

2.      The Fee Examiner retained the law firm of Godfrey & Kahn, S.C. ("Godfrey & Kahn") to assist her in carrying out her duties. *See Order Authorizing the Employment and Retention of Godfrey & Kahn, S.C., as Counsel to the Fee Examiner* [D.I. 1268].

3.      On March 9, 2023, the Fee Examiner distributed the memorandum attached to this report as **Exhibit C** (the "Fee Protocol") to all Retained Professionals, outlining the fee application review process and the standards the Fee Examiner intended to apply.

4.      On April 18 and 19, 2023, the Fee Examiner and counsel held introductory in-person meetings with some of the Retained Professionals to discuss the background of these cases, significant case events occurring prior to the Fee Examiner's appointment, and any issues pertinent to the consideration of the reasonableness and necessity of professional fees.  The Fee Examiner and counsel also asked questions of Retained Professionals about these cases and their respective roles in it.

## FEE REVIEW PROCESS

5.      Most Applicants filed applications for the First Interim Fee Period on or around March 17, 2023, and began submitting fee and expense data pursuant to the Fee Protocol.  The Fee Examiner's counsel immediately began importing the data and communicating with Applicants about any missing or improperly formatted data.

6.      Godfrey & Kahn assigned each fee application to a review team consisting of one supervising attorney and one fee review associate.

7.      The fee review associates, under the supervision of a Godfrey & Kahn shareholder or special counsel, reviewed each professional's retention application, retention order, the fee application itself, and, in some instances and as necessary, monthly fee statements. In addition, the review teams:

A.      Reviewed each fee and expense entry in electronic format using database software developed for bankruptcy fee review;

B.      Assigned codes to each fee or expense entry not in apparent compliance with the Fee Protocol;

C.      Reviewed record materials, including pleadings and transcripts, to obtain background and context;

D.      Generated a comprehensive set of exhibits itemizing each potentially non-compliant fee or expense entry and calculating the dollar amounts of any deficiencies;

E.      Developed preliminary recommendations to the Fee Examiner on potential treatment of each fee or expense item of concern, typically including:

i.      Asking questions and requesting supplemental detail, explanation, or documentation of fees and expenses; and/or

ii.      Calculating adjustments to offset the financial impact of the identified irregularity.

8.      Godfrey & Kahn attorneys then drafted Confidential Letter Reports (as defined at ¶ 9(d) of the Fee Examiner Order) outlining the findings and explaining the substance of each exhibit.

9.      The Fee Examiner received and reviewed drafts of each Confidential Letter Report and supporting exhibit, meeting with the review teams to discuss the drafts in detail, to consider alternatives for the resolution of identified issues, and to provide detailed instruction on completing the reports for issuance to the Applicants.

10.      After those meetings, in some instances, counsel re-analyzed issues or re-drafted Confidential Letter Reports or exhibits to reflect the Fee Examiner's comments and concerns.

11.      After obtaining the Fee Examiner's final approval, Godfrey & Kahn issued Confidential Letter Reports, with exhibits, to each Applicant on or around May 16, 2023, inviting the Applicants to respond.  With the consent of the Applicants, the U.S. Trustee received copies of all letter reports and exhibits.

12.    Counsel then communicated with each Applicant, reviewed supplemental explanation or materials, discussed areas of concern, and engaged in constructive dialogue to address problems.

13.    Counsel summarized each Applicant's response, conducted additional analysis where necessary, and presented all responses to the Fee Examiner with explanations, summaries, and recommendations for each Applicant.

14.    The Fee Examiner reviewed the Applicants' responses and counsel's recommendations, sought additional information when necessary, and ultimately approved each of the resolutions outlined on the attached **Exhibit A**.

### GENERAL OBSERVATIONS AND COMMON ISSUES

15.    ***Staffing Patterns.***  During the First Interim Fee Period, two hundred forty-two attorneys billed 34,954.1 hours to these cases.  They graduated from law school between 1981 and 2023.  The distribution of work by seniority level can be one indicator of efficient (or inefficient) staffing.  "Typical" law firm staffing has a few very experienced timekeepers supervising a cadre of junior partners and senior associates, who in turn supervise larger teams of relatively inexperienced associates.  Here, the staffing is flatter, with the senior associate/junior partner group somewhat underrepresented:

*[Remainder of page intentionally left blank]*



Demographics may explain this observation—at least in part.  The 2008 financial crisis and ensuing recession had an appreciable impact on law school admissions.  Accredited law schools had 147,525 students in 2010.  By 2014, the number had dropped to 110,127—lower than any other year since the late 1970s.  Am. Bar Ass'n, *Legal Education: Law School Applicants and Enrollees,* in ABA Profile of the Legal Profession (2022).[7]  The population of attorneys in the U.S. has contracted in only four years since the ABA began keeping track in 1878:  1915, 2020, 2021, and 2022.  Am. Bar Ass'n, *ABA National Lawyer Population Survey: Historical Trend in Total National Lawyer Population 1878-2022* (2022).[8]  Between 2008 and 2013, the job market for law school graduates deteriorated precipitously, with the classes of 2011, 2012, and 2013 having the weakest employment outcomes ever measured by the National Association for Law Placement.  James Leipold, *The Size of Your Entering Class Matters. A Lot*, Law School Admission Council (LSAC) (Apr. 18, 2023).[9]

---

[7] https://www.abalegalprofile.com/legal-education.php#anchor1
[8] https://www.americanbar.org/content/dam/aba/administrative/market_research/total-national-lawyer-population
[9] https://www.lsac.org/blog/size-your-entering-class-matters-lot

Many of the Fee Examiner's confidential letter reports observed some variation of the "flattened" staffing pattern. Sometimes, the Fee Examiner observed more experienced lawyers performing tasks that may have been more appropriately delegated to mid-level attorneys. Most firms acknowledged this pattern to some degree and accepted rate adjustments to offset the inflationary effect on fees.

16.    ***Hourly Rates.*** Hourly rates ranged from $388 to $2,165, with forty-six attorneys charging more than $2,000 per hour. Average (mean) hourly rates by year of bar admission are shown below:



These rates seem high by almost any measure, but industry data provide helpful context. Reorg Research maintains a legal billing rates database that has tracked the rates of firms practicing in both Delaware and the Southern District of New York from 2016 to the present. The average partner and associate rates of the three largest firms working on the FTX cases all track higher than the average rates for both partners and associates in the Reorg Research database. In the First Interim Fee Period, premier lawyers and premium rates may well have been the Debtors' only option. Further, the Court approved the Retained Professionals' rate schedules when it

approved their retentions, making retroactive rate adjustments inappropriate.  For the First Interim Fee Period, therefore, no fee adjustments are recommended based on hourly rates alone. As the cases progress, the Fee Examiner will be watching these metrics closely and will include comments and observations about rates in subsequent reports.

As rates inch higher, it does become more incumbent upon Retained Professionals to assign work judiciously to maximize efficiency.

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
> > (A) the time spent on such services;
> > (B) the rates charged for such services; . . . .

11 U.S.C. §330(a)(3).  Research is a useful example.  A partner's issue-spotting expertise and strategic foresight may bring efficiency to a project, but the rote task of combing through results to pinpoint relevant (or irrelevant) authorities should be delegated wherever possible.  The same is true for other routine tasks, such as identifying and following up on potential Rule 2014 disclosure items, compiling information for schedules and operating reports, monitoring dockets, creating workflow management systems and trackers, and communicating with creditors and other interested parties.

Even the most complex Chapter 11 cases include pockets of routine work appropriate for delegation either to more junior lawyers within a firm or to smaller firms that could perform the work much more cost-effectively.  *See Appendix B, Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Large Chapter 11 Cases* ¶ F(2)(a) (defining "efficiency counsel" as secondary counsel employed to handle more routine and "commoditized" work).  Claims objections, preference claims, and many other workstreams would ideally be outsourced to ensure that the most experienced

professionals with the highest rates are performing only tasks appropriate for their skillsets.  The

fee burden in this case and others might be measurably lessened by a concerted effort to engage

efficiency counsel wherever possible.

17.     ***Confidentiality.***  The Fee Examiner Order stipulates:

> If a Professional or its client provides information to the Fee Examiner that such
> Professional or client identifies to the Fee Examiner as privileged, work product, or
> confidential in nature, the Fee Examiner shall treat such information as confidential.  The
> disclosure of such information to the Fee Examiner shall not be deemed to be a waiver by
> the disclosing party of, as applicable, work product, attorney-client, or other privilege or
> the confidential nature of such information.

Fee Examiner Order at ¶ 19.  Notwithstanding this provision, several Applicants have resisted

sharing requested work product because of confidentiality and/or privilege concerns.  Reviewing

work product is one of the most useful tools to evaluate the reasonableness of fees related to a

particular project.  A four-page research memo, for example, should take fewer hours to draft

than a fourteen-page memo, all other things being equal.  The Fee Examiner will continue to

work with the Debtors to try to reach arrangements for the production of sensitive material and

will raise the issue with the Court at an appropriate time if the parties cannot reach agreement.

18.     ***Retention Activities.***  Each Retained Professional had to identify connections to

an extensive list of interested parties.  Many were also subject to formal or informal objection,

necessitating sometimes extensive negotiations and revisions to retention orders.  Such activities

do not directly add value for creditors, but they are nonetheless necessary to establish

disinterestedness, secure professional appointments, and advance the case.  In some instances,

the Fee Examiner recommended—and secured—downward adjustments to retention application

time.  In others, the Fee Examiner was satisfied that the scope of the list of interested parties and

the contested nature of some professional appointments justified the additional expense.

19.     ***Multiple Attendees - Hearings.***  The Fee Examiner carefully examined hearing attendance.  When multiple timekeepers from a single professional firm attended a hearing, counsel reviewed the associated transcripts to identify speaking and participating professionals. When a timekeeper's role at a hearing was not apparent, the Fee Examiner questioned that timekeeper's attendance in the Confidential Letter Report and exhibits.  In many instances, Applicants identified compelling reasons for attendance not immediately apparent from the record.  For example, some timekeepers attended in anticipation of a line of questioning or inquiry at a hearing that did not ultimately materialize.  Nonetheless, the Fee Examiner generally agreed that these professionals needed to prepare for, attend, and be ready to participate in hearings if discrete issues arose.  In other instances, the Fee Examiner considered a topic too attenuated to justify a "just-in-case" timekeeper's attendance, and asked firms to waive compensation for a non-participating professional.

20.     ***Multiple Attendees - Meetings and Calls.***  At the outset of the case, many Retained Professionals appropriately deployed an all-hands approach given the tumult surrounding the filing.  The Fee Examiner has advised Applicants that, as the exigencies of the early days give way to more routine proceedings, she expects them to become more selective in staffing meetings and calls.

21.     ***Guideline Non-Compliance***.  Most applications presented at least a few instances where tasks or communications were not described with sufficient detail for a reviewer to easily discern their necessity, were not recorded in tenth-hour increments, or were improperly aggregated or "lumped."  The Fee Examiner either negotiated adjustments to offset these deficiencies or obtained supplemental information resolving guideline concerns.  The Fee

Examiner advised Applicants that deductions for guideline violations may increase in future fee periods if deficiencies persist.

## UNCONTESTED APPLICATIONS RECOMMENDED FOR COURT APPROVAL WITH ADJUSTMENTS

22.    The Applicants have reached agreement with the Fee Examiner, subject to the Court's approval, to resolve their applications for fees and expenses incurred during the First Interim Fee Period.  These negotiated resolutions are consistent with the principles and standards that the Fee Examiner has developed and applied to each interim fee application.  The negotiated adjustments satisfy the Fee Examiner that the fees and expenses recommended for Court approval appear both reasonable and necessary to the administration of these cases pursuant to 11 U.S.C. §330 and appropriate for Court approval on an interim basis.

### DEBTOR PROFESSIONALS

### *Sullivan & Cromwell LLP*

23.    On January 20, 2023, the Court entered the *Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession Nunc Pro Tunc to the Petition Date* [D.I. 553].

24.    On March 17, 2023, Sullivan & Cromwell LLP ("S&C") filed the *First Interim Fee Application of Sullivan & Cromwell LLP* for the Period from November 11, 2022 through January 31, 2023 [Dkt. No. 1112] (the "S&C First Fee Application"), seeking $41,792,309.80 in fees and $283,826.67 in expenses.

25.    During the First Interim Fee Period, S&C advised the Debtors on a wide variety of complex matters, including stabilizing the Debtors' business operations while in Chapter 11. S&C also advised the debtors on contested matters and adversary proceedings, conducted internal investigations, and prepared and filed numerous pleadings.

26.    The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including retention and fee application time, possible overstaffing, apparently excessive meeting and hearing attendance, fees billed by attorneys not yet licensed,[10] and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the S&C First Fee Application, as adjusted and outlined on **Exhibit A**.

***Alvarez & Marsal North America, LLC***

27.    On January 19, 2023, the Court entered the *Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLC as Financial Advisors to Debtors and Debtors in Possession Pursuant to Section 327(a) and 328 of the Bankruptcy Code Nunc Pro Tunc to the Petition Date* [D.I. 534].

28.    On March 17, 2023, Alvarez & Marsal North America, LLC ("A&M") filed the *First Interim Fee Application of Alvarez & Marsal North America, LLC* [Dkt. No. 1115] for the period from November 11, 2022 through January 31, 2023 (the "A&M First Fee Application"), seeking $27,864,801.00 in fees and $631,004.78 in expenses.

29.    During the First Interim Fee Period, A&M assisted the Debtors with their business operations, including assisting with the preparation of first and second day pleadings, the identification and recovery of assets, the development of accounting records and reporting procedures, the preparation of statements and schedules, the evaluation of potential preference and avoidance actions, and the development of operational restructuring strategies.

---

[10] Most non-admitted attorneys had their bar certifications delayed due to COVID cancellations.

30.     The Fee Examiner's Confidential Letter Report identified apparently inefficient staffing, potentially excessive retention and fee application time, apparently excessive meeting attendance, fees related to non-working travel time, and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends the approval of the A&M First Fee Application as adjusted and outlined on **Exhibit A**.

***AlixPartners, LLP***

31.     On January 20, 2023, the Court entered the *Order Authorizing the Retention and Employment of AlixPartners, LLP as Forensic Investigation Consultant to the Debtors Nunc Pro Tunc to November 28, 2022* [D.I. 546].

32.     On March 17, 2023, AlixPartners, LLP ("AlixPartners") filed the *First Interim Fee Application of AlixPartners, LLP, Forensic Investigation Consultant to the Chapter 11 Debtors and Debtors-In-Possession, for Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred for the Period from November 28, 2022 through January 31, 2023* [D.I. 1116] (the "AlixPartners First Fee Application"), seeking $3,217,982.50 in fees and $30,362.32 in expenses.

33.     As the Debtors' forensic investigation consultant, AlixPartners conducted various inquiries into the Debtors' historical business operations during the First Interim Fee Period, including the forensic analysis of financial and accounting data, trading records, and other associated data, the review and analysis of Debtors' historical organizational documents, policies

and procedures, and the collection and structuring of financial and accounting data in order to construct historical quarterly financial data.

34.     The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including retention and fee application time, possible overstaffing, apparently excessive meeting attendance, and various technical and procedural deficiencies with respect to some time entries.  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the AlixPartners First Fee Application, as adjusted and outlined on **Exhibit A**.

*Quinn Emanuel Urquhart & Sullivan, LLP*

35.     On January 20, 2023, the Court entered the *Order Authorizing the Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP as Special Counsel for the Debtors and the Debtors in Possession, Nunc Pro Tunc to November 13, 2022* [D.I. 548].

36.     On March 17, 2023, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") filed the *First Interim Fee Application of Quinn Emanuel Urquhart & Sullivan, LLP* [D.I. 1117] for the period from November 13, 2022 through January 31, 2023 (the "Quinn Emanuel First Fee Application"), seeking $2,976,709.05 in fees and $6,243.60 in expenses.

37.     As special counsel to the Debtors, Quinn Emanuel advised the Debtors on issues involving investigations into the Debtors' business operations, asset analysis and recovery, avoidance action analysis, and bankruptcy litigation during the First Interim Fee Period.

38.     The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including retention and fee application time, possible overstaffing, apparently excessive

meeting or hearing attendance, fees devoted to drafting general memoranda, various technical and procedural deficiencies with respect to certain time entries (including vague and lumped entries), and fees for work that was potentially duplicative of other Retained Professionals' work. After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the Quinn Emanuel First Fee Application, as adjusted and outlined on **Exhibit A**.

***Landis Rath & Cobb LLP***

39.    On January 9, 2023, the Court entered the *Order Authorizing the Employment and Retention of Landis Rath & Cobb LLP as Bankruptcy Co-Counsel, Nunc Pro Tunc to the Petition Date, Pursuant to Bankruptcy Code Section 327(A), Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1* [D.I. 428].

40.    On March 17, 2023, Landis Rath & Cobb LLP ("LRC") filed the *First Interim Fee Application of Landis Rath & Cobb LLP* [D.I. 1113] for the period from November 11, 2022, through January 31, 2023 (the "LRC First Fee Application"), seeking $1,818,882.00 in fees and $36,705.10 in expenses.

41.    During the First Interim Fee Period, LRC advised the Debtors on a variety of complex matters, including advising the debtors on contested matters and adversary proceedings and preparing and filing numerous pleadings.

42.    The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including retention and fee application time, apparently excessive hearing attendance, and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).

43.     In addition, the Fee Examiner's Confidential Letter Report identified some LRC timekeepers who may have excessively parsed individual "tasks" into individual tenth-of-an-hour increments.  The Fee Examiner may conduct informal or formal discovery about these billing practices in connection with future fee applications.

44.     After an extensive exchange of information and discussion about the LRC First Fee Application, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the LRC First Fee Application, as adjusted and outlined on **Exhibit A**.

**UCC PROFESSIONALS**

### Paul Hastings LLP

45.     On February 7, 2023, the Court entered the *Order Authorizing and Approving the Retention and Employment of Paul Hastings LLP as Lead Counsel to the Official Committee of Unsecured Creditors, Effective as of December 20, 2022* [D.I. 635].

46.     On March 17, 2023, Paul Hastings LLP ("Paul Hastings") filed the *First Interim Fee Request of Paul Hastings LLP* [D.I. 1106] for the period from December 20, 2022 through January 31, 2023 and the *Supplement to the First Interim Fee Application of Paul Hastings LLP* [D.I. 1107] (the "Paul Hastings First Fee Application"), seeking $5,523,908.75 in fees and $37,421.01 in expenses.

47.     During the First Interim Fee Period, Paul Hastings advised the UCC on a wide variety of complex matters, including investigating the acts, conduct, assets, liabilities, and financial condition of the Debtors and assisting the UCC with the analysis of its claims against the Debtors.

48.     The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including possible overstaffing, apparently excessive meeting and hearing attendance, retention-related time, and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the Paul Hastings First Fee Application, as adjusted and outlined on **Exhibit A**.

***FTI Consulting, Inc.***

49.     On February 15, 2023, the Court entered the *Order Authorizing Retention of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors, Effective as of December 22, 2022* [D.I. 730].

50.     On March 17, 2023, FTI Consulting, Inc. ("FTI") filed the *First Interim Fee Request of FTI Consulting, Inc.* [D.I. 1106] and the *Supplement to the First Interim Fee Application of FTI Consulting, Inc., Financial Advisor to the Official Committee of Unsecured Creditors, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period December 22, 2022 Through January 31, 2023* [D.I. 1110] (the "FTI First Fee Application"), seeking $2,010,425.80 in fees and no reimbursement for expenses.

51.     During the First Interim Fee Period, FTI advised the UCC on the Debtors business operations, including an analysis of the Debtors' financial disclosures and cash flow/liquidity, and assisting the UCC in the analysis of its claims against the Debtors.  FTI also investigated the acts, conduct, assets, liabilities, and financial condition of the Debtors.

52.     The Fee Examiner's Confidential Letter Report identified a number of areas of

concern, including retention and fee application time, potential staffing and rate inefficiencies, apparently excessive hearing and meeting attendance, and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).

53.     In addition, the Fee Examiner's Confidential Letter Report identified a substantial amount of time spent on a "fee study" that the Fee Examiner has not been able to review.  The fee study project extended into the second interim fee period, so the parties have agreed to defer its consideration until the Fee Examiner has reviewed all fees incurred for the study.

54.     After an extensive exchange of information and discussion about the FTI First Fee Application, other than with respect to the fee study, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the FTI First Fee Application, as adjusted and outlined on **Exhibit A**.

### *Young Conaway Stargatt & Taylor, LLP*

55.     On February 8, 2023, the Court entered the *Order Authorizing the Retention and Employment of Young Conaway Stargatt & Taylor, LLP as Co-Counsel for the Official Committee of Unsecured Creditors, Effective as of December 22, 2022* [D.I. 657].

56.     On March 17, 2023, Young Conaway Stargatt & Taylor, LLP ("Young Conaway") filed the *First Interim Fee Request of Young Conaway Stargatt & Taylor, LLP* [Dkt. No. 1106] for the period from December 22, 2022 through January 31, 2023 and *Supplement to First Interim Fee Request of Young Conaway Stargatt & Taylor, LLP* [D.I.1108] (the "Young Conaway First Fee Application"), seeking $319,526.00 in fees and $1,528.50 in expenses.

57.     During the First Interim Fee Period, Young Conaway advised the UCC on a wide variety of complex matters, including investigating the acts, conduct, assets, liabilities, and

financial condition of the Debtors, and assisting the UCC with the analysis of its claims against the Debtors.

58.    The Fee Examiner's Confidential Letter Report identified a number of areas of concern, including apparently excessive hearing attendance and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the Young Conaway First Fee Application, as adjusted and outlined on **Exhibit A**.

**FEE APPLICATION RECOMMENDED FOR DEFERRAL**

*Ernst & Young LLP*

59.    On January 17, 2023, the Court entered the *Order Authorizing the Retention and Employment of EY LLP as Tax Services Provider Nunc Pro Tunc to November 28, 2022* [D.I. 505] (the "EY Retention Order").

60.    On June 15, 2023, Ernst & Young LLP ("EY") filed the *First Interim Fee Application of Ernst & Young LLP* [D.I. 1654] for the period from November 28, 2022 through January 31, 2023 (the "EY First Fee Application"), requesting $2,394,291.00 in fees and $45,224.21 in expenses.

61.    In light of EY's delay in filing the EY First Fee Application -- 90 days after the March 17, 2023 deadline for First Interim Fee Period applications set forth in the Fee Examiner Order -- the Fee Examiner has not yet completed her review.

62.    The Fee Examiner asks the Court to defer consideration of the E&Y First Fee Application to the September 2023, uncontested fee hearing.

## NOTICE

63.    Pursuant to ¶9(g) of the Fee Examiner Order, the Fee Examiner will serve this Summary Report by e-mail on counsel for the Debtors, on counsel for the Committee, and each Applicant.  The Fee Examiner will also serve this Summary Report upon the U.S. Trustee by e-mail and first-class mail.  A copy of this report is available on the website of the Debtors' notice and claims agent at https://restructuring.ra.kroll.com/FTX/.  The Fee Examiner submits that, in light of the nature of this report, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Fee Examiner respectfully requests the entry of an order, substantially in the form annexed hereto as **Attachment One**, granting the relief requested and such other and further relief as the Court may deem just and proper.

Dated:  June 20, 2023.

**GODFREY & KAHN, S.C.**

By  */s/ Mark W. Hancock*
      Mark W. Hancock (*Pro Hac Vice*)
      One East Main Street, Suite 500
      Madison, WI 53703
      Telephone: (608) 297-3911
      E-mail: mhancock@gklaw.com

      *Counsel for Fee Examiner*

      Katherine Stadler
      ftxfeeexaminer@gklaw.com
      *Fee Examiner*

29471386.10

# Exhibit A

In re: FTX Trading Ltd., et al.

NYSB Case No. 22-11068 (JTD)

Exhibit A

**First  Interim Fee Period Applications Recommended:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | First Interim Fee Period (November 11, 2022 - January 31, 2023) | | | | | | | | |
| 1 | **AlixPartners, LLP [D.I. 1116]**<br>*Forensic Investigation Consultant to the Debtors* | 11/28/2022 - 1/31/2023 | $3,217,982.50 | $39,971.08 | $30,362.32 | $0.00 | | $3,178,011.42 | $30,362.32 |
| 2 | **Alvarez & Marsal North America, LLC [D.I. 1115]**<br>*Financial Advisors to the Debtors* | 11/11/2022 - 1/31/2023 | $27,864,801.00 | $380,000.00 | $631,004.78 | $20,000.00 | | $27,484,801.00 | $611,004.78 |
| 3 | **FTI Consulting, Inc. [D.I. 1110]**<br>*Financial Advisor to the Official Committee of Unsecured Creditors* | 12/22/2022 - 1/31/2023 | $2,010,425.80 | $91,170.99 | $0.00 | $0.00 | FN1 | $1,919,254.81 | $0.00 |
| 4 | **Landis Rath & Cobb LLP [D.I. 1113]**<br>*Delaware Counsel to the Debtors* | 11/11/2022 - 1/31/2023 | $1,818,882.00 | $17,500.00 | $36,705.10 | $0.00 | | $1,801,382.00 | $36,705.10 |
| 5 | **Paul Hastings LLP [D.I. 1107]**<br>*Counsel to the Official Committee of Unsecured Creditors* | 12/20/2022 - 1/31/2023 | $5,523,908.75 | $96,981.44 | $37,421.01 | $1,157.72 | | $5,426,927.31 | $36,263.29 |
| 6 | **Quinn Emanuel Urquhart & Sullivan, LLP [D.I. 1117]**<br>*Special Counsel to the Debtors* | 11/13/2022 - 1/31/2023 | $2,976,709.05 | $69,569.87 | $6,243.60 | $610.98 | | $2,907,139.18 | $5,632.62 |
| 7 | **Sullivan & Cromwell [D.I. 1112]**<br>*Counsel to the Debtors* | 11/11/2022 - 1/31/2023 | $41,792,309.80 | $650,000.00 | $283,826.67 | $7,088.88 | | $41,142,309.80 | $276,737.79 |
| 8 | **Young Conaway Stargatt & Taylor, LLP [D.I. 1108]**<br>*Delaware Counsel to the Official Committee of Unsecured Creditors* | 12/22/2022 - 1/31/2023 | $319,526.00 | $11,183.41 | $1,528.50 | $148.49 | | $308,342.59 | $1,380.01 |

**FN1** - These recommended deductions do not include possible adjustments to $107,876.00 in fees incurred for the preparation of a "fee study," which was completed in a subsequent fee period.  The Fee Examiner reserves the right to revisit these fees in connection with review and reporting on FTI's second interim fee application.  See D.I. 1649, 1653.

# Exhibit B

In re: FTX Trading Ltd., et al.

NYSB Case No. 22-11068 (JTD)

Exhibit B

**First Interim Fee Period Applications Deferred:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| *First Interim Fee Period (November 11, 2022 - January 31, 2023)* | | | | | | | | |
| 1 | **Ernst & Young LLP [D.I. 1654]** *Tax Services Provider to the Debtors* | 11/28/2022 - 1/31/2023 | $2,394,291.00 | | $45,224.21 | | | |

Exhibit C



ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911   FAX • 608.257.0609

WWW • GKLAW.COM

## MEMORANDUM

---

**TO:**       FTX Trading LTD. Chapter 11 Retained Professionals

**FROM:**    Katherine Stadler, Fee Examiner

**DATE:**    March 9, 2023

**SUBJECT:** Fee Review—Timeline and Process

---

As you know, on January 9, 2023, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 435] (the "Interim Compensation Order").  On March 8, 2023, the Court entered the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Dkt. No. 834] (the "Fee Examiner Order").  The Fee Examiner has retained Godfrey & Kahn, S.C. as her counsel (subject to Court approval) and anticipates proposing an amended interim compensation order to ensure consistency with the Fee Examiner Order and this memorandum.

As you prepare your first interim fee submissions, this introductory memorandum will supplement the court orders and provide additional guidance on the fee review process.  This memorandum is based upon the Fee Examiner's experience in Chapter 11 cases generally, on the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases (the "U.S. Trustee Guidelines"),[1] and on a preliminary review of the monthly fee statements filed to date.

Retained Professionals[2]  may receive memoranda like this one, periodically, providing updates on the review process and addressing common matters, questions, and concerns that arise.  This process is collaborative, and, to that end, we are always available for individual discussion.  Please do not hesitate to contact us at any time to discuss fee applications or provide feedback on the fee review process.

This memorandum provides basic information about the initial timing of the fee examination process and instructions for submitting fee applications.  It also outlines the substantive standards that the Fee Examiner intends to apply.  The goal is a constructive and collaborative process that aids the Court in reviewing and approving professional fee applications efficiently and promptly.

---

[1] Though the U.S. Trustee Guidelines apply on their face only to attorneys, the Fee Examiner will require all Retained Professionals to comply with the guidelines, with limited exceptions outlined herein.

[2] Capitalized terms used in this memorandum shall have the meanings set forth in the Interim Compensation and Fee Examiner Orders.

OFFICES IN MILWAUKEE, MADISON, WAUKESHA, GREEN BAY AND APPLETON, WISCONSIN AND WASHINGTON, D.C.

GODFREY & KAHN, S.C. IS A MEMBER OF TERRALEX,® A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

### Schedule

Pursuant to the Fee Examiner Order and contemplated amendment to the Interim Compensation Order, the Fee Examiner's schedule is outlined below:

| INTERIM FEE PERIOD | FIRST | SECOND | THIRD | FOURTH |
|---|---|---|---|---|
| DATES | November 11, 2022[3] - January 31, 2023 | February 1, 2023- April 30, 2023 | May 1, 2023- July 31, 2023 | August 1, 2023- October 31, 2023 |
| APPLICATION DEADLINE | March 17, 2023 | June 15, 2023 | September 15, 2023 | December 15, 2023 |
| CONFIDENTIAL LETTER REPORT | May 16, 2023 | August 1, 2023 | October 30, 2023 | January 29, 2024 |
| SUMMARY REPORT FOR UNCONTESTED APPLICATIONS | Fourteen days prior to hearing | Fourteen days prior to hearing | Fourteen days prior to hearing | Fourteen days prior to hearing |
| HEARING DATE FOR UNCONTESTED APPLICATIONS | June 28, 2023 fee hearing | September 13, 2023, fee hearing | December 13, 2023, fee hearing | March 13, 2024, fee hearing |

We will update this schedule periodically to add new interim fee periods and, when appropriate, provide instructions for preparing and submitting final fee applications.

### Budgets & Staffing Plans

Retained Professionals should comply with the U.S. Trustee Guidelines' requirement for budgets and staffing plans, using the formats of Exhibits C-1 and C-2 to the U.S. Trustee Guidelines.[4] The U.S. Trustee Guideline, of course, requires retrospective submission of budgets, but we encourage all professionals to provide prospective budgets for their clients and to communicate regularly with their clients or constituents regarding anticipated staffing adjustments and other developments that may impact fees.

### Fee Review Criteria

The Fee Examiner Order provides, among other things, that the Fee Examiner shall determine whether requested fees and expenses comply with:

1. 11 U.S.C. §§ 329, 330 and 331, as applicable,
2. Rule 2016 of the Federal Rules of Bankruptcy Procedure,
3. The Interim Compensation Order (including any amended orders), and
4. Local Bankruptcy Rule 2016-1 and the applicable guidelines for compensation, including the U.S. Trustee Guidelines.

---

[3] Or the effective date of the professional's retention.

[4] Non-attorney Retained Professionals need not comply with this requirement.

### *Initial Points*

The fee review criteria listed in the Fee Examiner Order are compulsory.  The Fee Examiner lacks the authority to alter those guidelines or to exempt professionals from compliance.  Any professional wishing to deviate from them should seek the Court's permission to do so.  By contrast, some of the guidelines that follow are *not* rigid rules.  We will apply them to the best of our ability to fee applications in our confidential letter reports, but we may not always glean the full context of professionals' work from the fee applications and time entries themselves.  For that reason, our process invites dialogue and collaboration.  The Fee Examiner is well aware that a significant amount of professionals' work occurred prior to the date of this memorandum.  While these parameters are generally considered standard bankruptcy billing practice—consistent with the requirements of the Bankruptcy Code and the U.S. Trustee Guidelines—in some instances strict compliance may not be possible.  Nevertheless, please try to conform your fee and expense requests to the guidelines outlined here, keeping in mind that significant deviations from the requested formats may result in a delay in processing the application.

A number of firms have submitted Monthly Fee Statements pursuant to the Interim Compensation Order.  With some exceptions, it will not be our practice to comment on or object to monthly statements, in whole or in part, but the Fee Examiner may occasionally question extraordinary fees or expenses requested in a Monthly Fee Statement.

### *Rate Increases*

The Fee Examiner will monitor compliance with the requirement in most Retained Professionals' retention orders that, prior to any increases in a Retained Professional's rates for any individual timekeeper, the Retained Professional must file a supplemental declaration with the Court and provide five or ten (depending on the professional) business days' notice to the Debtors, the U.S. Trustee, the Official Committee of Unsecured Creditors, and any other official committee appointed in this case. The supplemental affidavit must explain the basis for the requested rate increases in accordance with 11 U.S.C. §330(a)(3)(F) and state whether the Retained Professional's client has consented to the rate increase. The U.S. Trustee and Fee Examiner retain all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in 11 U.S.C. § 330.

## GUIDELINES

### *Contents of Interim Fee Applications*

Based upon the criteria outlined in the Fee Examiner Order and on the Fee Examiner's experience, each interim fee application should disclose:

1. The authority under which the Retained Professional requests the fees and expenses;

2.      A summary of the terms and conditions of the Retained Professional's employment and compensation, including a statement consistent with Bankruptcy Rule 2016 and, for the first application, a copy of the engagement letter, if not already included with the Retained Professional's retention application;

3.      Identification of all professionals who billed time during the relevant period, including each professional's billing rate and year of bar admission (if applicable);

4.      A list of all rate increases of any kind—including rate increases due to promotions or increasing seniority—by timekeeper and amount, proposed by the Retained Professional since it began working on these cases;

5.      A statement that the Retained Professional's client has (or the reason it has not) explicitly consented to all rate increases;

6.      The precise time period covered by the application;

7.      Time and service entries in the appropriate electronic format, discussed below, identifying participants, activities, and subject matters, arranged by specific project categories, including brief narrative summaries of each project and its benefit to the estate (non-working travel time should be a specific project category);[5]

8.      Time entries, in tenths of an hour, without "lumping" services together unless the aggregate amount of time spent for those lumped services does not exceed 0.5 hours;

9.      Explanations of tasks involving multiple individuals and the contributions of each individual; and

10.     A detailed itemization of actual, necessary expenses.

***Means of Service Upon the Fee Examiner***

Interim Fee Applications and supporting data should be provided in the appropriate electronic format (described below) by e-mail to FTXFeeExaminer@gklaw.com.  In addition, please provide supporting data to the Office of the U.S. Trustee by e-mail to Juliet.M.Sarkessian@usdoj.gov, Benjamin.A.Hackman@usdoj.gov, and David.Gerardi@usdoj.gov. Notwithstanding any contrary requirements in the local rules or applicable orders, to minimize expense, please ***DO NOT SERVE HARD COPIES OF FEE***

---

[5] Electronic data should mirror precisely the amounts sought in the interim or final fee application.  If write-offs or other adjustments are made to the timekeeping, in the exercise of billing judgment, the electronic data will need to reflect those adjustments.  Data submitted on-time, complete, and consistent with the amounts requested in the application, are all essential to the schedule outlined above.

*APPLICATIONS AND SUPPORTING MATERIALS ON THE FEE EXAMINER*.[6]  Expenses for duplicating or mailing fee applications—other than to the U.S. Trustee—will be recommended for disallowance.

### Means of Service Upon Professionals

The Fee Examiner and her counsel will use e-mail to serve confidential letter reports and other communications.  Each professional should provide the Fee Examiner with the names and e-mail addresses of the individuals who wish to receive such communications by sending an e-mail with their contact information to FTXFeeExaminer@gklaw.com.  Please include the description "Designated confidential letter report recipients for _____ [name of Retained Professional]" in the subject line of this e-mail.  If we do not receive instructions from you, we will direct your confidential letter reports to the person whose name appears on the Retained Professional's disinterestedness declaration.

### Electronic Data Format for Billing and Expense Detail

All fee and expense detail should be submitted only in electronic format.  *__YOU NEED NOT PROVIDE THE FEE EXAMINER WITH PAPER COPIES OF BILLS OR INVOICES__*.

1.    For law firms:  simultaneously with the submission of any interim or final fee application, please provide electronic versions of any billing information in unedited LEDES™ (Legal Electronic Data Exchange Standard) file format.

2.    For non-law firms:  simultaneously with the submission of any interim or final fee application, Retained Professionals should provide electronic versions of any billing information in Excel format, containing, at a minimum, the following fields for fees: invoice number, matter name, date, timekeeper name, timekeeper position/title, hourly rate, hours, fees, task description; and the following fields for expenses: invoice number, matter name, date, name of timekeeper who incurred expense, expense category, unit cost, number of units, expense total, expense description.  Failure to serve the Fee Examiner with timely fee detail in the required format will delay the Fee Examiner's review and recommendation of a fee application.

3.    In the event that any documentation accompanying an Interim Fee Application contains internal codes that could assist in evaluating the Interim Fee Application (such as codes for fee, project or expense categories), the professional should submit an explanation of how the codes relate to any fee, project, or expense categories.

4.    When submitting a summary or cover sheet of all individuals who billed time in the Interim Fee Application, the summary should list the individuals

---

[6] The U.S. Trustee has requested hard copies of fee applications be mailed to: Juliet Sarkessian, 211 East Meade Street, Philadelphia, PA 19118.

alphabetically by last name within their particular category (e.g., all partners should be listed alphabetically).

### Final Fee Applications

Final fee applications should be filed separately from interim fee application.  Please do not combine a final fee application with an interim fee application.  The Fee Examiner has found that it is often most efficient for professionals to await the final resolution of all pending interim fee applications before filing a final application.  We do, however, understand the collection requirements of many professional practices, and we will work collaboratively with professionals to ensure timely processing of final fee applications—whenever that professional's work on these cases has concluded.

### Expenses

The parameters set forth here are not hard and fast rules, and the Fee Examiner will consider atypical reimbursement requests that are reasonable, actual, and necessary.  With that in mind, expense requests generally should comply with these principles:

#### Overhead and Administrative Charges

- In general, overhead and administrative expenses are not reimbursable, nor are infrastructure improvements, rent, utilities, office equipment, furnishings, insurance, custodial fees, internal storage fees, and property taxes.

- Internal photocopying is reimbursable at 10 cents per page for black and white and, where color copies are necessary, 50 cents per page.  Please provide vendor invoices for outside photocopying projects in excess of $300.

- Charges for internal printing, converting documents to electronic formats, scanning charges, and charges to convert and upload documents are not reimbursable.

- Word processing, proofreading, secretarial, and other support expenses are not reimbursable, nor are overtime charges.

- Telephone charges—including cellular phone fees and subscriptions, text fees, data fees, and roaming charges, other than actual charges for multi-party calls arranged by a third-party vendor in connection with the cases—are not reimbursable.

- Subscription, publication, or library charges are not reimbursable, nor are office supplies.

- Data storage and software license expenses *may* be compensable if they are both necessary and incurred solely for use in these cases.  General firm data storage and software license expenses are not compensable.

***Travel Expenses***

- Meetings should be conducted telephonically or by video conference wherever possible.

- Clothing, dry-cleaning, accessories, and travel sundries are not reimbursable.

- Local travel expenses (train, bus, subway, mileage, car service, taxi) to or from a professional's home are not reimbursable unless a professional *has worked at least four hours on these cases on the day for which the expense is sought* and works after 9:00 p.m. local time *on these cases.*

- Ground transportation to or from airports from a city center to an appropriate airport will be reimbursable at the actual cost of an Uber, Lyft, or taxi.  Those preferring to use private car service should not seek reimbursement for those charges.  For each charge for ground transportation, please provide the name of the person or persons taking the transportation, the type of transportation (e.g. taxi, rental car, train), the starting point and end point of the travel, the purpose of the travel, and the cost.

- While professionals are free to travel in any manner they wish, the Fee Examiner will not recommend reimbursement for first or business class travel within the United States.  Business class travel is allowable for case-related airline travel outside the United States. Please provide receipts for any travel expense exceeding $300.00.

- For airline travel expenses, please provide the name of the person or persons flying, the airline, the dates of travel, the starting point and end point of the travel, the class of travel (coach for domestic and coach or business for international), whether the flight is one way or round trip, the purpose of the travel (e.g. attend court hearing), and the actual cost.

- Tips or other service charges are reimbursable only if part of another itemized expense (for example, taxi or rideshare gratuity included on the receipt).  Documented wait staff tips are reimbursable up to the applicable expense caps outlined below.  Housekeeping, valet, concierge, and bell services tips are not reimbursable unless included in the hotel's mandatory fees or charges.

- Hotel expenses should be limited to reasonable market rates for the local market.  To that end, please do not request reimbursement above the following rates:

  o  $525/NY City;

  o  $450/Boston;

  o  $400/Washington, DC and London;

  o  $350/Wilmington and Los Angeles;

7

- o  $325/Philadelphia, Pittsburgh, Chicago, and San Francisco;

- o  $275/Baltimore, Miami, and Denver; and

- o  $225 for all other US locations.

Taxes, service fees, and other charges are *included* in this reimbursement cap.  Health or athletic facilities, in-room movies, or other entertainment charges are not reimbursable.  In addition, in-room dining or other hotel food and beverage charges are subject to the meal guidelines in this memorandum. For each stay at a hotel, please provide the name of the person staying at the hotel, the name and city location of the hotel, the check-in and check-out dates, the purpose of the travel (e.g., attend client meeting) and the cost.  If a hotel stay exceeds the per-night cap stated above, please write off the overage—do not include it in your reimbursement request.

### *Meals*

- For each meal, please provide the cost, the date, the name(s) of the diner(s), whether the meal is breakfast, lunch or dinner, and the reason the meal is being charged to the estates (e.g., out-of-town travel, overtime, etc.).

- For out-of-town meals, please identify the city and do not request reimbursement from the estates above the following per person guidelines (inclusive of tax):

  - o  NYC and London: $35/breakfast, $55/lunch, and $70/dinner;

  - o  Washington DC, Chicago, Los Angeles, and San Francisco: $30/breakfast, $45/lunch, and $65/dinner; and

  - o  All other US locations, including Wilmington: $25/breakfast, $35/lunch, and $50/dinner:

Travel meals are reimbursable only if the professional has travelled to prepare for or attend a hearing, client or third-party meeting, or other case-related event.  If a professional's attendance at a hearing, meeting, or other event is deemed unnecessary, the Fee Examiner will recommend both the professional's fees and associated travel and meal expenses for disallowance.

- In-office meals are capped at $20.00 per person per meal and are reimbursable if:

  - o  The professional attends a necessary lunch-hour business meeting; or

  - o  The professional works *on these cases* after 8:00 p.m. and has worked more than four hours *on these cases* during the billing day for which meal reimbursement is sought.

8

- Coffee and snack charges are not reimbursable unless charged *in lieu of* in office meals allowable under the above-stated guideline.

- All catering orders must be supported by receipts or invoices.  Catering expenses (internal and external) must indicate both the number of persons actually attending a business meeting and the amount charged per person.

- Regardless of the number of attendees, please provide receipts for any single meal costing more than $300.00 in the aggregate.

- Alcohol is never reimbursable.

- Note that the meal reimbursement cap is *not* a per diem.  Applicants may be reimbursed for either the actual cost of the meal, or the reimbursement cap, whichever is less.

### *Other Expenses*

- Contract attorneys are reimbursable at their actual cost (that is, the rate charged by the agency or other provider placing the attorneys) without markup.  Professionals should submit detailed billing statements for all contract attorneys, who are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness as any other professional.

- In general, Retained Professionals should not submit reimbursement requests for any other firm's professional (legal, financial advisory, investment banking, or accounting) services.  If retention terms allow for sub-retentions, contract professionals must nonetheless submit detailed billing statements.  All professional fees are subject to the same standards of review for detail, accuracy and, ultimately, reasonableness.

- Consulting or testifying expert fees may be submitted as expenses within a Retained Professional's fee application provided that:

  o the expert's fees do not exceed the amounts set forth in the *Order Authorizing Procedures to Retain, Compensate and Reimburse Professionals Utilized in the Ordinary Course of Business* [Dkt. No. 432] for Tier 2 Ordinary Course Professional ($100,000 per month on average over a rolling three-month period); and

  o the Retained Professional provides the Fee Examiner with supporting detailed billing statements outlining the services performed and the expert compensation requested.

- Charges for electronic research services (Westlaw, Lexis-Nexis) should be accompanied by a general description of the research performed.

- Expenses related to seeking committee or other representation (pitching) are not reimbursable, nor is client entertainment.

- Expenses incurred prior to the Retained Professional's retroactive retention date are not reimbursable unless otherwise permitted by the Court's order authorizing the Retained Professional's employment.

- Please provide receipts for all unusual or extraordinary expenses.

Please note that this list is not meant to be exhaustive, nor does it preclude individual explanations for unusual items, any of which may meet applicable standards under appropriate circumstances.

### *Fee Examiner Analysis of Billing Detail*

The Fee Examiner's review will examine, at a minimum:

The hourly rates charged:

- Ensure that billing rates for each professional are the rates approved in the applicable engagement agreement, retention order, or supplement;

- Evaluate reasonableness of rates and the time spent in relation to the nature and character of the work, the market, and each professional's role and experience;

- Calculate blended rates;

- Evaluate multiple rates billed to particular projects; and,

- Eliminate charges for work performed by law students, interns, law clerks, and or summer associates.

Hours billed:

- Evaluate hours billed against any limitations in the engagement agreement or retention order;

- Analyze average billable hours each day and identify extended periods of unsustainable billing days;

- Calculate fees or billable hours for preparation of firm retention documents and fee applications as a percentage of total fees and hours—time spent preparing and editing time records is never compensable;

- Evaluate legal research to determine whether it is being conducted appropriately and at the lowest appropriate rate;

- Review clerical and administrative tasks to determine either the propriety of the billing rate for the task or whether the task is non-compensable;

- Ensure that time is billed in one-tenth of an hour increments unless a retention order permits another time increment;

- Identify vague task descriptions that do not permit a reviewer to determine the task's necessity;

- Identify improperly "lumped" or "block billed time;"

- Ensure the use of properly segregated matter numbers for project categories, generally consistent with the following, where applicable:

  - Asset Analysis and Disposition

  - Asset Valuation

  - Assumption/Rejection of Leases or Executory Contracts

  - Automatic Stay Matters

  - Avoidance Actions (significant avoidance actions should have their own matter identifier)

  - Bahamas Matters

  - Budgeting

  - Business Operations

  - Case Administration

  - Claims and Claims Objections

  - Committee or Board Meetings

  - Communications with Creditors/Debtors

  - Communications with *Pro Se* Parties

  - Communications with the U.S. Trustee

  - Custody and Withhold Matters

  - Customer and Vendor Communications

  - Due Diligence (investigation and analysis of loan and other security documents)

  - Employee Issues

- o Fee Applications-Self[7]
- o Fee Applications-Others
- o Financing and Cash Collateral
- o Foreign Debtor Matters
- o Governance Matters
- o Hearings
- o Insurance Issues
- o Litigation (each significant litigation matter should have its own matter identifier)
- o Monitoring or Participating in Related Cryptocurrency Bankruptcy Proceedings
- o Non-Working Travel
- o Plan and Disclosure Statement
- o Proposed Chapter 11 Examiner motion and appeals
- o Retention Applications and Disclosures-Self
- o Retention Applications and Disclosures-Others
- o Regulatory Investigations (significant regulatory investigations or actions should have their own matter identifier)
- o SOFAs, Schedules, and Reports
- o State Attorney General Investigations (each state investigation should have its own matter identifier)
- o Tax issues (individual governmental entity audits should have their own matter identifiers)
- o U.S. Trustee Communications
- o Utility and Adequate Protection Matters

- Identify meetings, hearings, or other events attended by an excessive number of timekeepers given the nature of the hearing or meeting and the necessity of multiple attendees;

- Ensure that non-working travel is billed only at 50 percent of the timekeeper's standard hourly rate;

---

[7] Please ensure that the project categories for fee applications and retention/employment are kept separate. Many professionals will have four separate project categories: Fee Applications-Self; Fee Applications-Others; Retention Applications and Disclosures-Self; and Retention Applications and Disclosures-Others.

- Identify all calculation or billing errors;

- Identify instances of duplication or overlap in work performed by multiple Retained Professionals;

- Ensure that tasks are appropriately delegated to the professional with the lowest suitable billing rate for the task performed;

- Evaluate time spent monitoring or overseeing others' work without substantial contribution to work product; and

- Waiting time or "standby time" is not reimbursable.

*Fee Examiner Contacts*

We look forward to working with you and trust that this memorandum will begin an open and productive dialogue.  The Fee Examiner and proposed counsel can be reached using the contact information below.  Please do not hesitate to contact the Fee Examiner's counsel if you have comments, questions, or concerns about the fee review process.

**Fee Examiner**

Katherine Stadler
FTXFeeExaminer@gklaw.com

One East Main Street
Suite 500
Madison, WI 53703

**Proposed Counsel for the Fee Examiner**

Godfrey & Kahn, S.C.

Attorney:
Mark Hancock
mhancock@gklaw.com

Data Specialist/Attorney:
W. Andrew Dalton
adalton@gklaw.com

Paralegal:
Kathleen Boucher
kboucher@gklaw.com

28930159.4

Attachment 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re:** D.I. 1107, 1108, 1110, 1112, 1113, 1115, 1116, and 1117 |

### OMNIBUS ORDER GRANTING APPLICATIONS FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE FIRST INTERIM COMPENSATION PERIOD FROM NOVEMBER 11, 2022 THROUGH JANUARY 31, 2023

Upon consideration of the applications for allowance of interim compensation and reimbursement of expenses incurred during the period from November 11, 2022 through January 31, 2023 (the "First Interim Compensation Period" or "Compensation Period") indicated as "Recommended for Approval" on the attached **Exhibit A** (D.I. 1107, 1108, 1110, 1112, 1113, 1115, 1116, and 1117) (together, the "Uncontested Applications" and the requesting professionals, the "Applicants"), filed pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 435] (the "Interim Compensation Order"); the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834] (the "Fee Examiner Order"); and pursuant to 11 U.S.C. §§ 330 and 331, Rule 2016 of the Federal

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryon's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Rules of Bankruptcy Procedure, and Rule 2016-2 of the Local Bankruptcy Rules for the District

of Delaware; and a hearing having been held before this court to consider the Uncontested

Applications on June 28, 2023; and notice having been given pursuant to Federal Rules of

Bankruptcy Procedure 2002(a)(6) and (c)(2); and the Court having reviewed the Uncontested

Applications and/or the summary report filed by the Fee Examiner with respect to the

Uncontested Applications [*see* D.I. ___]; and the Court finding that:  (a) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; (b) notice of the Uncontested

Applications was adequate under the circumstances; and (c) all parties with notice of the

Applications have been afforded the opportunity to be heard on the Uncontested Applications,

and upon the full record of all proceedings in this case; and sufficient cause having been shown

therefor, it is hereby;

ORDERED THAT:

1.     Each Uncontested Application is granted on an interim basis, to the extent set

forth on the attached **Exhibit A**.

3.     Each of the Applicants is allowed (a) interim compensation for services rendered

during the Compensation Period and (b) interim reimbursement for actual and necessary

expenses incurred during the Compensation Period, each in the respective amounts set forth on

the attached **Exhibit A**, including, except as otherwise indicated, any and all holdbacks.

4.     To the extent not already paid pursuant to the Interim Compensation Order, the

Debtors are hereby authorized and directed to pay, except as otherwise indicated on **Exhibit A**,

each of the Applicants 100 percent of the fees and 100 percent of the expenses listed on

**Exhibit A** under the columns "Interim Fees Recommended for Approval" and "Interim Expenses

Recommended for Approval," respectively, for services rendered and expenses incurred during the Compensation Period.

5.      All fees and expenses allowed herein shall be subject to final allowance by the Court without regard to whether such amounts have been paid to the Applicant.

6.      This Order shall be deemed a separate order with respect to each of the Uncontested Applications.  Any stay of this Order pending appeal with respect to any one Uncontested Application shall only apply to the Applicant that is the subject of such appeal and shall not operate to stay the applicability and/or finality of this Order with respect to any other Uncontested Application.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this order.

8.      Pursuant to the Fee Examiner's summary report, the interim fee application listed on the attached **<u>Exhibit B</u>** (D.I. 1654) is hereby adjourned for consideration at a later hearing date.

Case 22-11068-JTD    Doc 1663    Filed 06/20/23    Page 46 of 47

In re: FTX Trading Ltd., et al.
NYSB Case No. 22-11068 (JTD)

Exhibit A

**First  Interim Fee Period Applications Recommended:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | *First Interim Fee Period (November 11, 2022 - January 31, 2023)* | | | | | | | | |
| 1 | **AlixPartners, LLP [D.I. 1116]** <br> *Forensic Investigation Consultant to the Debtors* | 11/28/2022 - 1/31/2023 | $3,217,982.50 | $39,971.08 | $30,362.32 | $0.00 | | $3,178,011.42 | $30,362.32 |
| 2 | **Alvarez & Marsal North America, LLC [D.I. 1115]** <br> *Financial Advisors to the Debtors* | 11/11/2022 - 1/31/2023 | $27,864,801.00 | $380,000.00 | $631,004.78 | $20,000.00 | | $27,484,801.00 | $611,004.78 |
| 3 | **FTI Consulting, Inc. [D.I. 1110]** <br> *Financial Advisor to the Official Committee of Unsecured Creditors* | 12/22/2022 - 1/31/2023 | $2,010,425.80 | $91,170.99 | $0.00 | $0.00 | FN1 | $1,919,254.81 | $0.00 |
| 4 | **Landis Rath & Cobb LLP [D.I. 1113]** <br> *Delaware Counsel to the Debtors* | 11/11/2022 - 1/31/2023 | $1,818,882.00 | $17,500.00 | $36,705.10 | $0.00 | | $1,801,382.00 | $36,705.10 |
| 5 | **Paul Hastings LLP [D.I. 1107]** <br> *Counsel to the Official Committee of Unsecured Creditors* | 12/20/2022 - 1/31/2023 | $5,523,908.75 | $96,981.44 | $37,421.01 | $1,157.72 | | $5,426,927.31 | $36,263.29 |
| 6 | **Quinn Emanuel Urquhart & Sullivan, LLP [D.I. 1117]** <br> *Special Counsel to the Debtors* | 11/13/2022 - 1/31/2023 | $2,976,709.05 | $69,569.87 | $6,243.60 | $610.98 | | $2,907,139.18 | $5,632.62 |
| 7 | **Sullivan & Cromwell [D.I. 1112]** <br> *Counsel to the Debtors* | 11/11/2022 - 1/31/2023 | $41,792,309.80 | $650,000.00 | $283,826.67 | $7,088.88 | | $41,142,309.80 | $276,737.79 |
| 8 | **Young Conaway Stargatt & Taylor, LLP [D.I. 1108]** <br> *Delaware Counsel to the Official Committee of Unsecured Creditors* | 12/22/2022 - 1/31/2023 | $319,526.00 | $11,183.41 | $1,528.50 | $148.49 | | $308,342.59 | $1,380.01 |

**FN1** - These recommended deductions do not include possible adjustments to $107,876.00 in fees incurred for the preparation of a "fee study," which was completed in a subsequent fee period.  The Fee Examiner reserves the right to revisit these fees in connection with review and reporting on FTI's second interim fee application.  See D.I. 1649, 1653.

In re: FTX Trading Ltd., et al.
NYSB Case No. 22-11068 (JTD)

Exhibit B

**First Interim Fee Period Applications Deferred:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| *First Interim Fee Period (November 11, 2022 - January 31, 2023)* | | | | | | | | |
| 1 | **Ernst & Young LLP [D.I. 1654]** *Tax Services Provider to the Debtors* | 11/28/2022 - 1/31/2023 | $2,394,291.00 | | $45,224.21 | | | |