IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| FTX TRADING LTD., et al.,[1] | ) ) ) | Case No. 22-11068 (JTD) |
|  | ) ) | (Jointly Administered) |
| Debtors. | ) ) | **Ref. Docket No. 1596** |

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN SCHF CAYMAN, L.P. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this limited objection (this "Objection") to the Debtors' motion [Docket No. 1596] (the "Motion")[2] to sell the limited partnership interests (the "Sequoia Fund Investment") held by the Debtors in an investment fund, SCHF Cayman, L.P. (the "Sequoia Fund"), which is managed by its general partner, SCHF (GPE), LLC (together with its affiliates, "Sequoia"), pursuant to the purchase and sale agreement dated as of June 8, 2023 (the "Purchase Agreement"), by and between the Debtors and Liberty Mutual Investments Holdings LLC ("Purchaser"), and in support hereof, respectfully states as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Each capitalized term that is not defined herein shall have the meaning set forth in the Motion.

## LIMITED OBJECTION

1.      The Committee recognizes the various consent rights and remedies otherwise available to Sequoia under the limited partnership agreement governing the Sequoia Fund Investment (the "LPA"), as well as the complexities facing the Debtors in determining whether to advance additional capital and further invest into a private equity investment initially made with funds embezzled from millions of FTX customers. However, the Committee cannot overlook a fundamental flaw in the proposed sale that renders the sale inappropriate as a matter of law and thus outside the purview of the Debtors' business judgment.[3]

2.      Pursuant to the Motion, the Debtors seek authority to assume and assign the LPA to Purchaser.[4] Styled as a "Cure Cost," the Purchase Agreement requires the payment of a $3.1 million *penalty* to Sequoia, comprised of default interest charged by Sequoia after it issued a *post-petition* capital call and subsequent default notice to the Debtors. *See* Mendelsohn Declaration at ¶ 10.[5]

---

[3]     Given the deference ordinarily granted to a chapter 11 debtor's business judgment, the Committee was otherwise prepared to accept the terms of the Debtors' proposed sale of the Sequoia Fund Investment, notwithstanding the Committee's concerns with respect to the significant pressure and restrictive marketing process imposed by Sequoia. The Debtors are proposing to offload the Sequoia Fund Investment at a sizeable discount, despite the Sequoia Fund's strong performance record. The $18.2 million purchase price payable to the Debtors represents an approximately 27.2% discount to the Debtors' cost basis in the Sequoia Fund Investment (on an as-funded basis). From a marketing process perspective, the Debtors were severely handicapped in terms of who they could even speak to. Out of the 43 potential acquirers the Debtors sought to contact, the Debtors were only permitted to solicit bids from 6 parties that Sequoia deemed suitable. *See* Mendelsohn Declaration at ¶¶ 15-17. Moreover, from a timing perspective, the Debtors were pressured to complete a deal as soon as possible given that Sequoia only permits transfers of limited partnership interests on the last day of a calendar quarter. *See id.* Therefore it comes as no surprise that only one bid materialized. *See id.*

[4]     The Debtors sidestep taking a position on whether the LPA is an executory contract (*see* Motion at ¶ 18); however, courts have generally treated partnership agreements as executory contracts. *See, e.g., In re O'Connor*, 258 F.3d 392, 400 n.3 (5th Cir. 2001) (collecting authority).

[5]     The post-petition delivery of a capital call directing the Debtors to advance funds, and the subsequent delivery of a default notice, each involve affirmative efforts by Sequoia to exercise rights against the Debtors' property and/or collect from the Debtors in violation of the automatic stay. *See* 11 U.S.C. § 362(a)(3) and (6)(enjoining creditors from taking "any act to obtain possession of property of the estate or of property from the estate" or "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title"); *In re Student Fin. Corp.*, 378 B.R. 73, 78 (Bankr. D. Del. 2007) (finding efforts to collect on postpetition obligations arising from a prepetition agreement to be a violation of the automatic stay); *Del. Trust Co. v. Energy Future Intermediate Holding Co. (In re Energy Future Holdings Corp.)*, 527 B.R. 178, 197 (Bankr. D. Del. 2015), *rev'd on other grounds*, 842 F.3d 247 (3d Cir. 2016) (delivery of notice of rescission violates automatic stay). Indeed, the Debtors and Sequoia

However, section 365(b)(2)(D) of the Bankruptcy Code expressly exempts the payment of a penalty – whether related to a monetary or non-monetary default – from the Debtors' cure requirements. *See* 11 U.S.C. § 365(b)(2)(D);[6] *see also, In re Phoenix Business Park Limited Partnership*, 257 B.R. 517, 519-522 (Bankr. D. Ariz. 2001) (holding that sections 365(b)(2) and 1142(2) exempt a debtor from satisfying a penalty rate, whether triggered by a monetary or non-monetary default). In the absence of any legal requirement to pay a penalty, such a payment cannot be justified simply by invoking "business judgment," which should be informed, first and foremost, by applicable law. Consequently, unless the $3.1 million penalty amount is remitted to the Debtors as part of the purchase price (rather than to Sequoia as a penalty), the Court should withhold its approval of the sale.

3. Specifically, the Purchase Agreement contemplates a purchase price payable to the Debtors in the amount of $18.2 million (*see* Purchase Agreement at ¶ 1.3), as well as the payment to Sequoia of "Cure Costs" that expressly include default interest arising from the unfunded capital call issued *post-petition* by Sequoia in December 2022 (notwithstanding the stay violation). *See* Purchase Agreement at ¶¶ 1.2(b), 1.7(b). As described in the Mendelsohn Declaration, pursuant to the LPA governing the Sequoia Fund Investment, a defaulting limited partner is required to pay daily default interest at an annual rate equal to *17.5% plus three-month LIBOR, subject to an 18% floor*. *See* Mendelsohn Declaration at ¶ 10.

---

expressly noted in the Motion that they reserved rights concerning any claim that the stay was violated. Motion at 5, n. 2. To the extent Sequoia was obligated under the LPA to issue a capital notice across the board to all of its limited partners, Sequoia could have filed a lift stay motion, but chose not to do so.

[6] Section 365(b)(2)(D) provides as follows:

> Paragraph (1) of this subsection does not apply to a default that is a breach of a provision related to—(D) **the satisfaction of any penalty rate** or penalty provision related to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.

11 U.S.C. § 365(b)(2)(D) (emphasis added).

4.       There can be no serious question that an 18% or more annual default interest rate constitutes a penalty. *See e.g., Matter of Timberline Prop. Dev., Inc.*, 136 B.R. 382, 386 (Bankr. D.N.J. 1992) (finding that a 3% rate increase upon default was a penalty because it "was designed to induce payment"); *DWS Investments, Inc.*, 121 B.R. 845, 850 (Bankr. C.D. Cal. 1990) (refusing to enforce default rate of 25% where non-default rates were 14% and 15%). The Debtors certainly offer no direct evidence from Sequoia that such an exorbitant interest rate is necessary to compensate Sequoia for any actual loss suffered as a result of any delayed capital call. *See In re DSBC Invs., L.L.C.*, 2009 WL 2998940, at *2 (Bankr. D. Ariz. Sept. 11, 2009) (construing default interest as a "penalty" within the meaning of section 365(b)(2)(D) and refusing to award default interest where no "specific compensatory feature" could be articulated).

5.       In the absence of a legal requirement to pay such a penalty, the payment is akin to a disguised "consent fee" payable to Sequoia, which calls into question the Purchaser's status as a good faith purchaser. As noted above, such a payment falls outside the permissive scope of a chapter 11 debtor's business judgment, and unfairly rewards Sequoia for its pressure tactics. Accordingly, the Committee respectfully requests that approval of the sale be conditioned upon the $3.1 million amount being paid to the Debtors. Such a result would prevent a windfall to Sequoia, would not jeopardize the sale or prejudice the Purchaser insofar as the aggregate amount payable under the Purchase Agreement remains unchanged, and would benefit the Debtors' estates.

**WHEREFORE** the Committee respectfully requests that the Court grant the Committee relief consistent with the foregoing and such other relief as the Court finds just and appropriate.

| | |
|---|---|
| Dated: June 22, 2023<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Robert F. Poppiti, Jr.*<br>Matthew B. Lunn (No. 4119)<br>Robert F. Poppiti, Jr. (No. 5052)<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mlunn@ycst.com<br>         rpoppiti@ycst.com<br><br>-and-<br><br>PAUL HASTINGS LLP<br>Kristopher M. Hansen*<br>Kenneth Pasquale*<br>Erez Gilad*<br>John F. Iaffaldano*<br>200 Park Avenue<br>New York, NY 10166<br>Telephone:  (212) 318-6000<br>Facsimile:  (212) 319-4090<br>Email: krishansen@paulhastings.com<br>         kenpasquale@paulhastings.com<br>         erezgilad@paulhastings.com<br>         jackiaffaldano@paulhastings.com<br><br>*\*Admitted pro hac vice*<br><br>*Counsel to the Official Committee of Unsecured Creditors* |