## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 1596 & 1682** |

**DEBTORS' REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN SCHF CAYMAN, L.P. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this reply (this "Reply") in support of the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving Sale of Debtors' Interests in SCHF Cayman, L.P. Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving Debtors' Entry into, and Performance Under, the Purchase and Sale Agreement; (III) Authorizing and Approving Assumption and Assignment of Certain Contracts; and (IV) Granting Related Relief* [D.I. 1596] (the "Motion")[2] and in response to the limited objection to the Motion by the Official Committee of Unsecured Creditors (the "Committee") filed on June 22, 2023 [D.I. 1682] (the "Objection").  In support of this Reply and the Motion, the

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Agreement filed concurrently with the Motion, as applicable.

Debtors rely on the declaration of Bruce Mendelsohn [D.I. 1596, Ex. C] (the "Mendelsohn Declaration") filed with the Motion.  The Objection should be overruled and the Motion should be granted.  In support of this Reply, the Debtors respectfully state as follows:

## Reply

1.     The Committee objects on the basis that payment by Purchaser of default interest to the Subject Company (the "Default Interest"), as required under the LPA, constitutes a penalty that does not need to be cured under Bankruptcy Code section 365 for the LPA to be assumed and assigned.  The Committee further contends that as a result of the imposition of this "penalty" pursuant to the express terms of the LPA, Purchaser may not be a good faith purchaser, and that the Sale Transaction is flawed and would be "outside the purview of the Debtors' business judgment."  As a result, the Default Interest should instead be paid to the Debtors' estates.  Objection ¶ 1, 5.

2.     Setting aside the Committee's unsubstantiated assertions regarding the good faith of Purchaser, the Committee overlooks the fact that the Default Interest payment was an integral and negotiated component of the Sale Transaction, and it is well within the Debtors' business judgment to determine that the Sale Transaction, taken as a whole, was in the best interests of the Debtors' estates.[3]  First, as discussed in detail in the Motion regarding the Debtors' decision to engage in the Sale Transaction, the Debtors determined that the most efficient sale process would require the cooperation of, and consent from, the General Partner.

---

[3]     *See Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (To rebut the presumptions of the business judgement rule "is a near-Herculean task…. The burden… is to show irrationality: a plaintiff must demonstrate that no reasonable business person could possibly authorize the action in good faith."); *see also In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, *259–60 (Bankr. D. Del. Aug. 15, 2007) (approving sale of debtor's assets, stating that courts will generally not entertain objections to sale where "debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously)…. [I]f a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved.").

The Debtors agreed with both the General Partner and Purchaser that the defaulted status of the LPA should be cured in accordance with its terms, *i.e.*, payment of the outstanding capital call amounts and the Default Interest, in order to ensure that Purchaser would be able to step into a clearly non-defaulted limited partner position.

3.      Second, Purchaser negotiated for the Default Interest to be expressly included in the definition of "Cure Costs" under the Purchase Agreement.  Mendelsohn Declaration ¶ 12.  There are a number of commercial reasons that Purchaser may have had to require this term, including that payment of the Default Interest to the Subject Company would result in its value accreting to the limited partnership that Purchaser would be participating in as a limited partner, which suggest that Purchaser would not have bid the same amount for the Interests if it had understood the Default Interest would be paid to the Debtors' estates rather than the Subject Company.

4.      Third, and most importantly, the Debtors assessed the Sale Transaction based on its value to the Debtors.  The Purchase Price amounts to approximately 75% of Seller's funded capital contributions.  This percentage falls within the range of reasonableness.  Mendelsohn Declaration ¶ 19, 20.  The Debtors took all these factors, and the General Partner's and Purchaser's positions regarding payment of the Default Interest as a Cure Cost under the Purchase Agreement, into account when they weighed whether the Sale Transaction was in the best interest of the Debtors' estates, and determined that it was.

5.      The Debtors need take no position on the Committee's legal argument regarding whether the Default Interest must be paid as a cure cost under section 365(b).  However, fundamental to the Committee's Objection is the assertion that any penalty payment, regardless of whether it stems from a monetary or nonmonetary default, is excluded from cure

costs under section 365(b)(2)(D) of the Bankruptcy Code.  Objection ¶ 2.  Section 365(b)(2)(D)

provides that a debtor need not cure a default arising from a breach of a provision that requires

the satisfaction of **any penalty rate or penalty provision** triggered by the failure of the debtor to

perform nonmonetary obligations under an executory contract or unexpired lease.  The Debtors

are not aware of any rulings by this Court or the Third Circuit on whether such provision should

be read in the conjunctive (such that a debtor is exempted from curing penalty rates only arising

from failure to perform nonmonetary obligations) or in the disjunctive.[4]  However, there is case

law in other jurisdictions supporting the proposition that both a "penalty rate" and "penalty

provision" must relate to a default arising from a failure to perform nonmonetary obligations.

*See, e.g.*, *In re 1 Ashbury Court Partners, L.L.C.*, No. 11-10131, 2011 WL 4712010, at *4

(Bankr. D. Kan. 2011) ("[R]ather, the majority view considers that both the 'penalty rate' and the

'penalty provision' language refer to and modify the words beginning with 'relating to,' meaning

that only penalty rates that punish non-monetary default need not be cured.") (citation omitted);

*In re General Growth Properties*, *Inc.*, 451 B.R. 323 (Bankr. S.D.N.Y. 2011) (observing that a

majority of the courts read section 365(b)(2)(D) as "meaning that only penalty rates that punish

non-monetary default need not be cured"); *In re Sagamore Partners, Ltd.*, 512 B.R. 296, 311

(S.D. Fla. 2014), *aff'd in part, rev'd in part on other grounds and remanded*, 610 Fed. Appx. 922

(11th Cir. 2015) (same).  Here, the default in question only relates to monetary obligations and

not nonmonetary obligations.

---

[4]    The Court has suggested in a hearing in *In re Promise Healthcare Group, LLC* that "[a penalty relating to a nonmonetary default] is **exactly** the kind of fee or penalty or payment or adjustment that 365(b)(2) is trying to avoid," implying that section 365(b)(2)(D) does not capture penalties relating to a monetary default.  *In re Promise Healthcare Group, LLC, et al.*, Case No. 18-12491-CTG, Hr'g Tr. 73:5-9 (Bankr. D. Del. Feb. 4, 2019) [D.I. 576].

## Conclusion

6.      For the reasons stated above, the Court should overrule the Objection and grant the Motion.

Dated: June 25, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*