# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 1596 & ___** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN
SCHF CAYMAN, L.P. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY
INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT;
(III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT
OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors

and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"),

pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1 among other things,

(a) authorizing and approving the sale (the "Sale Transaction") of the limited partnership

interests (the "Interests") held by the Debtors in SCHF Cayman, L.P., a Cayman Islands

exempted limited partnership (the "Subject Company"), free and clear of all liens, claims,

interests and encumbrances in accordance with the terms and conditions set forth in the

Agreement, (b) authorizing and approving the Debtors' entry into, and performance under, the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Purchase and Sale Agreement, dated as of June 8, 2023, a copy of which is attached hereto as Exhibit A (the "Agreement"), between Debtor Maclaurin Investments Ltd. (formerly known as Alameda Ventures Ltd.), an International Business Company incorporated under the laws of the Republic of Seychelles ("Seller"), and Liberty Mutual Investment Holdings LLC, a Delaware limited liability company ("Purchaser"), as amended by the Amendment to the Agreement, dated as of June 27, 2023, between Seller and Purchaser, a copy of which is attached hereto as Exhibit B; (c) authorizing and approving the assumption and assignment of the Twelfth Amended and Restated Limited Partnership Agreement of the Subject Company, dated December 22, 2022 and any shareholders agreements, management agreements, bylaws, side letters and other documents and agreements governing the rights and obligations of Seller as an investor in the Subject Company as set forth in the Agreement (collectively, the "Operative Documents"), and (d) granting related relief; the Court having held a hearing to approve the Sale Transaction pursuant to the terms of the Agreement (the "Sale Hearing") to review and consider (i) the Motion with respect to the Sale Transaction and all relief related thereto, (ii) the Agreement, (iii) *Declaration of Bruce Mendelsohn in Support of the Sale Transaction*, and (iv) any objections thereto that were not resolved prior to the start of the Sale Hearing; and upon the record of the Sale Hearing and all of the proceedings had before this Court; and objections (if any) to the Motion, with respect to the sale of the Interests, having been withdrawn or overruled on the merits; and after due deliberation and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Interests to be sold, transferred or conveyed pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court may issue a final order on the Motion consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for the relief requested in the Motion and for the approvals and authorization herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1.

C.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

D.    <u>Sale Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Sale Hearing, (a) the Debtors have provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient opportunity to object to, the Motion with respect to the Sale Transaction and the relief requested therein (including the Debtors' requested findings with respect to successor

liability), the Sale Transaction, assumption and assignment of the applicable Operative Documents and the Cure Costs, if any, and the proposed entry of this Sale Order in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, (b) such notice was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (c) no other or further notice is necessary or shall be required.

E.      <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Sale Order, including, but not limited to, the assumption and assignment of the applicable Operative Documents and the Cure Costs (as defined in the Agreement), has been afforded to all interested parties.

F.      <u>No Collusion</u>.  Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Agreement and the Sale Transaction were negotiated, proposed and entered into by Seller and Purchaser without collusion or fraud, in good faith and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.  Neither the Debtors, nor Purchaser has engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.  The Sale Transaction may not be avoided, and no damages may be assessed against Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

G.     <u>Good Faith of Purchaser</u>.  Purchaser is purchasing the Interests in good faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  Purchaser is therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Interests; (b) Purchaser in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (c) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by Purchaser in connection with the Sale Transaction have been disclosed; (d) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) the negotiation and execution of the Agreement were at arm's length and in good faith, and at all times each of the Purchaser and Seller were represented by competent counsel of their choosing; and (f) the Purchaser has not acted in a collusive manner with any person.  Purchaser will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Agreement.

H.     <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Interests, and a reasonable opportunity has been given to any interested party to make a higher or better offer for the Interests.  No other person or entity or group of entities has offered to purchase the Interests for higher or otherwise better value to the Debtors' estates than Purchaser.  The offer to purchase the Interests made by Purchaser, under the terms and conditions set forth in the Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for the Interests and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably

available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Interests being conveyed to Purchaser; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by Purchaser absent the protections afforded to Purchaser by this Sale Order.

I.       The Debtors' determination that the Sale Transaction, pursuant to the Agreement, provides the highest or otherwise best offer for the Interests, and their related decision to sell the Interests, constitute a reasonable exercise of the Debtors' business judgment. The facts and circumstances described in the Motion and the evidence adduced in connection with the Sale Hearing demonstrate the Debtors' business judgment to sell the Interests to Purchaser at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Interests outside of a chapter 11 plan. Moreover, the sale of the Interests outside of a chapter 11 plan pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

J.       <u>Fair Consideration</u>.  The consideration provided by Purchaser pursuant to the Agreement constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

K.       <u>No Successor or Other Derivative Liability</u>.  As a result of any action taken in connection with the Sale Transaction, the Agreement, or this Sale Order: (a) Purchaser

is not a successor to or mere continuation of or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between Purchaser and the Debtors; and (b) Purchaser shall not be deemed to be holding itself out to the public as a continuation of the Debtors based on the Sale Transaction.  Purchaser is not, and shall not be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates.  Purchaser would not have entered into the Agreement if the sale of the Interests were not made free and clear of any successor liability of Purchaser.

    L. <u>Corporate Power and Authority</u>.  As set forth in section 2.1(a) of the Agreement, Seller (a) has full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) has all corporate authority necessary to consummate the Sale Transaction, and (c) has taken all corporate action and formalities necessary to authorize and approve the Agreement and the consummation of the Sale Transaction.  Seller's sale of the Interests has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Agreement, are required for Seller to consummate the Sale Transaction.

    M. The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor Purchaser are entering into the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

N.      <u>Title to Assets</u>.  The transfer of the Debtors' rights, titles and interests to the Interests and applicable Operative Documents to Purchaser will be, as of the Closing Date (as defined in the Agreement), a legal, valid and effective transfer of such rights, titles and interests in the Interests and applicable Operative Documents, which transfer vests or will vest Purchaser with all rights, titles and interests of the Debtors to the Interests and applicable Operative Documents free and clear of all Liens (as defined below and in the Agreement), other than Permitted Encumbrances (as defined in the Agreement).  The Agreement is a valid and binding contract between Seller and Purchaser and shall be enforceable according to its terms.

O.      <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the Debtors are authorized to transfer all of their rights, titles and interests in and to the Interests free and clear of any interest in the property, other than Permitted Encumbrances.  The Debtors may sell the Interests free and clear of all liens (statutory or otherwise), charges, pledges, mortgages, leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first offer or first refusal, servitudes, restrictive covenants or conditions, encroachments, claims, interests, restrictions, or any other encumbrances of any kind (collectively, "<u>Liens</u>") other than Permitted Encumbrances, against the Debtors, their estates or the Interests because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each holder with a Lien on the Interests to be transferred pursuant to the Agreement: (a) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien; or (c) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Holders of Liens against the

Debtors, their estates or the Interests who did not object, or who withdrew their objections, to the Sale Transaction or the Motion, with respect to the sale of the Interests (except with respect to Permitted Encumbrances), are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens are adequately protected by having their Liens, if any, in each instance against the Debtors, their estates or the Interests, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Interests in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

P.      Purchaser would not have entered into the Agreement and would not consummate the Sale Transaction if the sale of the Interests to Purchaser were not free and clear of all Liens (other than Permitted Encumbrances), or if Purchaser or any of the Purchaser Parties (as defined in the Agreement) would, or in the future could, be liable for any such Lien.  The total consideration to be provided under the Agreement reflects Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Interests free and clear of all Liens (other than Permitted Encumbrances).  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

Q.      Assumption and Assignment of the Applicable Operative Documents. The Debtors and Purchaser have satisfied, to the extent necessary, the requirements of section

365 of the Bankruptcy Code, including subsections 365(b)(1)(A), 365(b)(1)(B) and 365(f), in connection with the assumption and assignment of the applicable Operative Documents. Purchaser has demonstrated adequate assurance of future performance with respect to the applicable Operative Documents pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The assumption and assignment of the applicable Operative Documents pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtors and their estates, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors or Purchaser, as applicable, shall, to the extent necessary, provide compensation or adequate assurance of compensation, which amount will be paid to non-Debtor counterparties to the applicable Operative Documents for any actual pecuniary loss to any such party resulting from a default prior to the date of assumption and assignment with respect to the applicable Operative Documents, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  Except where an applicable Operative Document is subject to an unresolved objection to the assumption and assignment of such Operative Document, payment of the Cure Costs, if any, as set forth herein and Purchaser's promise to perform the obligations under the applicable Operative Documents after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The applicable Operative Documents are assignable notwithstanding any provisions contained therein to the contrary.

R.      Except as otherwise set forth herein, any objections to the assumption and assignment of any of the applicable Operative Documents to Purchaser are hereby overruled. Any objections to the Cure Costs are resolved as set forth herein.  To the extent that any counterparty failed to timely object to its Cure Cost or adequate assurance of future performance,

such counterparty is deemed to have consented to such Cure Cost and the assignment of its

respective Operative Documents to Purchaser.

S.    <u>Mutual Release</u>.  The entry into a release by Seller on behalf of itself, its

estate, anyone who might claim by or through Seller and Seller's successors and assigns,

including without limitation any bankruptcy trustee or estate representative under 11 U.S.C.

§1123(b)(3) or otherwise (collectively, the "Releasors") in favor of the Subject Company, its

general partner and their respective affiliates, and each such person's respective members,

partners, agents, directors, officers, stockholders, employees, subsidiaries, predecessors,

successors and assigns (collectively, the "Releasees") is approved in full.  The Subject Company

would not have consented to the Sale Transaction in the absence of such releases, and therefore

the releases are supported by adequate consideration and are reasonable.  *See* Mendelsohn

Declaration ¶ 28.

T.    <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>.  Good and sufficient

reasons for approval of the Agreement and the Sale Transaction have been articulated.  The

Debtors have demonstrated both (a) good, sufficient and sound business purposes and

justifications and (b) compelling circumstances for the Sale Transaction other than in the

ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and

outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the

Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates.

Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rules 6004(h)

and 6006(d) with respect to the Sale Transaction.  To maximize the value of the Interests, it is

essential that the Sale Transaction occur within the time constraints set forth in the Agreement.

Time is of the essence in consummating the Sale Transaction and the Debtors and Purchaser

intend to close the Sale Transaction as soon as practicable.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Aggregate Purchase Price under the Agreement, the proposed Sale Transaction should be approved.

U.      The consummation of the Sale Transaction and the assumption and assignment of the applicable Operative Documents is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

V.      Personally Identifiable Information.  The Sale Transaction does not involve the sale of any personally identifiable information.  Thus, the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

W.      Legal and Factual Bases.  The legal and factual bases set forth in the Motion and the evidence adduced in connection with the Sale Hearing establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their estates.

IT IS HEREBY ORDERED THAT:

A.      **General Provisions**

1.      The sale of the Interests and the other relief requested in the Motion is granted as set forth herein, and the Agreement and the provisions thereof and the Sale Transaction are approved in their entirety as set forth herein.

2.      All objections, responses, reservations of rights and requests for any continuances concerning the Motion are resolved in accordance with the terms of this Sale Order or as set forth in the record of the Sale Hearing.  To the extent any such objections, responses,

reservations of rights or requests for any continuances were not otherwise withdrawn, waived, settled, or resolved, such are hereby overruled and denied on the merits. All interested parties that failed to timely object to the Motion, with respect to the Sale Transaction, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.       Notice of the Motion, the Agreement, the sale of the Interests free and clear of all Liens, except Permitted Encumbrances, the Sale Transaction, and the assumption and assignment of the applicable Operative Documents and the Cure Costs was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1.

**B.    Approval of the Agreement**

4.       The Agreement and all of the terms and conditions thereof, are hereby authorized and approved in all respects. The failure to specifically include or make reference to any particular provision of the Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Sale Transaction are authorized and approved in their entirety.

5.       Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Purchaser in accordance with the terms and conditions of the Agreement, (b) close the Sale Transaction as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate and implement the Agreement, including the assumption and assignment to Purchaser of the applicable Operative Documents, together with all additional instruments and documents that may be reasonably necessary or

desirable to implement the Agreement and the Sale Transaction.  Purchaser shall not be required

to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to

enforce any of its remedies under the Agreement or any other sale-related document.  The

automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent

necessary to implement the preceding sentence and the other provisions of this Sale Order;

provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes

with respect thereto.

6.      This Sale Order shall be binding in all respects upon the Debtors, their

estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in,

against or on all or any portion of the Interests or applicable Operative Documents (whether

known or unknown), Purchaser and all successors and assigns of Purchaser, the Interests and any

trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to

Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the

Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchaser and the

respective successors and assigns of each of the foregoing.

**C.      Consummation of the Sale Transaction**

7.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the

Debtors are authorized to transfer all of their rights, titles and interests to the Interests to

Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding and

effective transfer of such rights, titles and interests in the Interests and shall vest Purchaser with

all of the Debtors' rights, titles and interests in the Interests and, upon the Debtors' receipt of the

Aggregate Purchase Price, shall be free and clear of all Liens, including but not limited to,

successor or successor-in-interest liability or, any tax liens or mechanic's liens asserted against

the Interests, except Permitted Encumbrances, with all such Liens to attach to the net cash

proceeds ultimately attributable to the property against or in which such Liens are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens now have against the Interests, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  The provisions of this Sale Order authorizing and approving the transfer of the Interests free and clear of all Liens (other than Permitted Encumbrances) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  The releases granted by the Releasors in favor of the Releasees are approved in full.

8.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except Permitted Encumbrances.

9.      If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Interests shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Interests, the Debtors, Purchaser and each of their respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Interests.

10.     This Sale Order is and shall be effective as a determination that, on the

Closing Date, all Liens existing as to the Interests prior to the Closing Date, except Permitted

Encumbrances, shall have been unconditionally released, discharged and terminated from the

Interests, and that the conveyances described herein have been effected.  This Sale Order is and

shall be binding upon and govern the acts of all persons and entities, including, without

limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies, governmental departments,

secretaries of state, federal, state and local officials and all other persons and entities who may be

required by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any lease; and each of the foregoing persons and entities is

hereby directed to accept for filing any and all of the documents and instruments necessary and

appropriate to consummate the Sale Transaction.

D.     **Assumption and Assignment of Contracts**

11.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and

subject to and conditioned upon the Closing, and payment of all Cure Costs, if any, Seller's

assumption and assignment to Purchaser of the applicable Operative Documents is hereby

approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto

are hereby deemed satisfied.

12.     Seller is hereby authorized and directed in accordance with sections

105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective

upon the Closing of the Sale Transaction, the applicable Operative Documents free and clear of

all Liens of any kind or nature whatsoever, except Permitted Encumbrances, and (b) execute and

deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the applicable Operative Documents to Purchaser.

13.     With respect to the Operative Documents: (a) where an applicable Operative Document is an executory contract or unexpired lease of nonresidential real property under section 365 of the Bankruptcy Code, Seller may assume each applicable Operative Document in accordance with section 365 of the Bankruptcy Code; (b) Seller may assign each applicable Operative Document in accordance with sections 363 and 365 of the Bankruptcy Code and any provisions in any applicable Operative Document that prohibit or condition the assignment of such Operative Document or allow the party to such Operative Document to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Operative Document, constitute unenforceable anti-assignment provisions which are deemed void and of no force and effect solely with respect to this Sale Transaction; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assignment to and assumption by Purchaser of each applicable Operative Document have been satisfied; (d) the applicable Operative Documents shall be transferred and assigned to, and following the closing of the Sale Transaction remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Operative Document (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, upon the Closing and the payment of the applicable Cure Cost, if any, the Debtors shall be relieved from any further liability with respect to the applicable Operative Documents after such assignment to and assumption by Purchaser and (e) upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be

fully and irrevocably vested in all rights, titles and interests of the Debtors in each applicable

Operative Document, free and clear of any Liens, except Permitted Encumbrances.

14.     The Debtors are authorized to enter into any amendment of an Operative

Document on terms acceptable to Purchaser and agreed to by the counterparty to such Operative

Document in connection with the assumption and assignment of such Operative Document, and

the assumption and assignment of the Operative Documents authorized by this Sale Order shall

be of the Operative Documents, as so amended or modified.

15.     All defaults or other obligations of the Debtors under the applicable

Operative Documents arising or that have become due and not paid prior to the Closing that are

required to be cured by section 365(b)(1) of the Bankruptcy Code (without giving effect to any

acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the

Bankruptcy Code) shall be cured by Purchaser at or before the Closing through the payment of the

Cure Costs, if any.  The Debtors and Purchaser have agreed that the Default Interest (as defined in

the Agreement) payable to the Subject Company in connection with the Cure Costs will be reduced

to $1,366,294 and the Aggregate Purchase Price payable to the Debtors shall be increased to

$19,566,294.  The Debtors, Purchaser, and Subject Company have also agreed that the Cure

Amount (as defined in the applicable Transfer Document (as defined in the Agreement)) will be

$26,366,294, which amount includes the amount for the Default Interest, in the aggregate.  Further,

any legal expenses in connection with the Sale Transaction that are specifically allocated to the

capital account of the Interests will not exceed $350,000.  Any additional cure costs that may

otherwise be payable pursuant to section 365(b)(1) of the Bankruptcy Code with respect to the

assumption and assignment of the applicable Operative Documents shall, upon the Closing and

payment of the Cure Costs, be waived.  To the extent that any counterparty to an applicable

Operative Document did not object to its Cure Cost or adequate assurance of future performance, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignment of its respective Operative Documents from Seller to Purchaser.  Purchaser shall enjoy all of the Seller's rights, benefits, and privileges under the applicable Operative Document as of the Closing without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof, except to the extent expressly contemplated in the Agreement. To the extent any counterparty to the Operative Documents failed to timely object to a Cure Cost, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost at any time.  From and after the Closing, Seller shall have no liability, obligation or responsibility in respect of the Capital Commitment or any Capital Calls (each as defined in the Agreement).

16.    Upon the Debtors' assumption and assignment of the applicable Operative Documents to Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Costs, no default shall exist under any applicable Operative Document, and no counterparty to any applicable Operative Document shall be permitted to (a) declare a default by Purchaser under such Operative Document or (b) otherwise take action against Purchaser, in each case, as a result of the Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the applicable Operative Document.  Each non-Debtor party to an applicable Operative Document hereby is also forever barred, estopped and permanently enjoined from (i) asserting against Purchaser, Seller, the Debtors, their estates, or their property, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or, against Purchaser, Seller, the Debtors, or their estates, any counterclaim, unexercised set-off or any other claim asserted or

19

assertable against the Debtors and (ii) imposing or charging against Purchaser or its Affiliates (as defined in the Agreement) any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser of the applicable Operative Documents.  The validity of such assumption and assignments of the applicable Operative Documents shall not be affected by any dispute between the Debtors and the counterparties to the applicable Operative Documents and any disputes regarding the Cure Cost of any applicable Operative Document.

17.     Upon payment of the applicable Cure Costs, if any, and assignment of the applicable Operative Documents to Purchaser, the Debtors and their estates shall have no further liabilities or obligations with respect to any applicable Operative Documents, including with respect to any Capital Commitment or Capital Calls (each as defined in the Operative Documents), and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

18.     The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any applicable Operative Documents shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Operative Documents.

19.     In the event that the Sale Transaction does not close, none of the applicable Operative Documents shall be assumed or assigned by virtue of this Sale Order and shall remain subject to further rejection, assumption and/or assignment in these Chapter 11 Cases.

**E.     <u>Prohibition of Actions Against Purchaser</u>**

20.     Except as expressly provided for in this Sale Order or the Agreement, Purchaser shall not have any liability or other obligation or responsibility of the Debtors arising

under or related to the Interests or Operative Documents prior to the Closing. Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, Purchaser shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to paragraph 24 below), successor or transferee liability, securities law, tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to paragraph 24 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Interests prior to the Closing. The Sale Transaction does not amount to a consolidation, merger or de facto merger of Purchaser, on the one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial continuity between Purchaser, on the one hand, and the Debtors or their affiliates, on the other hand, and Purchaser is not a mere continuation of the Debtors or their estates, and Purchaser does not constitute a successor to the Debtors or their estates. For purposes of paragraphs 20 to 23 this Sale Order, all references to Purchaser shall include the Purchaser Parties.

21.    Except as expressly otherwise set forth in the Agreement and this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers,

employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Interests or applicable Operative Documents (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors or the Interests or applicable Operative Documents prior to the Closing Date or the transactions contemplated by the Agreement, including the transfer of the Interests to Purchaser and the assumption and assignment of the applicable Operative Documents, hereby are forever barred, estopped and permanently enjoined from asserting against Purchaser, its Affiliates, its successors or assigns, their property or the Interests and applicable Operative Documents, such persons' or entities' Liens with respect to the Interests or applicable Operative Documents, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Purchaser, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against Purchaser, its Affiliates, its successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due Purchaser, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate the Subject Company, subject to paragraph 24 below.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Interests

and applicable Operative Documents (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

22.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere (a) with the ability of the Debtors and/or Seller to sell and transfer the Interests and applicable Operative Documents to Purchaser in accordance with the terms of the Agreement and this Sale Order, and (b) with the ability of Purchaser to acquire and take possession of the Interests and applicable Operative Documents in accordance with the terms of the Agreement and this Sale Order.

23.     Purchaser has given substantial consideration under the Agreement for the benefit of the Debtors and their estates.  The consideration given by Purchaser shall constitute valid and valuable consideration for the sale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Interests pursuant to this Sale Order, except with respect to the Permitted Encumbrances, and free and clear of any potential claims of successor liability against the Purchaser.  The consideration provided by Purchaser for the Interests and applicable Operative Documents under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**F.     Other Provisions**

24.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

25.     Further, nothing in this Sale Order or Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

26.     Notwithstanding anything to the contrary in the Motion, this Sale Order, or any findings announced at the Sale Hearing, nothing in the Motion, this Sale Order, or announced at the Sale Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

27.     The consideration provided by Purchaser to the Debtors pursuant to the Agreement for the Interests and Operative Documents constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

28.     The sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

29.     The Sale Transaction is undertaken by Purchaser and the general partner of the Subject Company without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of

the Sale Transaction, including the assumption and assignment of the Operative Documents, unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing.  Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and Purchaser will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

30.    As a good faith purchaser of the Interests, Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any other bidders, potential bidders, or any other parties interested in the Interests, and therefore, neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring an action against Purchaser, and the Sale Transactions may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Agreement or Sale Transaction.

31.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale Order and the Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

32.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchaser are authorized to close the Sale Transaction immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

33.     The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

34.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Agreement is modified, the Debtors shall file the modified version with the Court.

35.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

36.    The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

37.    No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Agreement)) shall apply to the Debtors' conveyance of the Interests and Operative Documents or this Sale Order.

38.    The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

39.    Purchaser is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction, the assumption and assignment of the applicable Operative Documents, and any issues related to or otherwise connected to the Agreement and the Sale Transaction.

40.    Nothing in this Sale Order shall affect the obligations, if any, of the Debtors, Purchaser, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

41.    Subject to the releases by the Releasors in favor of the Releasees, nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Interests or the Operative Documents.

42.    All time periods set forth in this Sale Order shall be calculated in

accordance with Bankruptcy Rule 9006(a).

Dated: _____

Wilmington, Delaware

_____

The Honorable John T. Dorsey
United States Bankruptcy Judge

# EXHIBIT A

Agreement

CONFIDENTIAL

**PURCHASE AND SALE AGREEMENT**

**by and between**

**MACLAURIN INVESTMENTS LTD.**

and

**LIBERTY MUTUAL INVESTMENTS HOLDINGS LLC**

**Dated as of June 8, 2023**

This PURCHASE AND SALE AGREEMENT (including the Exhibits and Schedules hereto, each as amended or restated from time to time, this "Agreement"), dated as of June 8, 2023, is made by and between Maclaurin Investments Ltd. (formerly known as Alameda Ventures Ltd.), an International Business Company incorporated under the laws of the Republic of Seychelles ("Seller"), and Liberty Mutual Investments Holdings LLC, a Delaware limited liability company ("Purchaser"). The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

## Recitals

WHEREAS, on November 11, 2022 and November 14, 2022, Seller and certain of its Affiliates (collectively, the "Debtors") commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*, as amended, the "Bankruptcy Code") by filing petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes as *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)) (the "Bankruptcy Proceeding");

WHEREAS, Seller holds the interests set forth on Schedule A, which shall be converted into interests in SCHF US, LP at or immediately following the Closing (the "Interests") in or with the entity set forth on Schedule A (the "Subject Company") and desires to (a) sell, assign and transfer to Purchaser its Interests pursuant to section 363 of the Bankruptcy Code and (b) assume and assign pursuant to section 365 of the Bankruptcy Code or sell, assign and transfer pursuant to section 363 of the Bankruptcy Code, if and to the extent applicable, to Purchaser, all of Seller's interests in the Operative Documents (as defined below), in each case in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, all upon the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the board of directors or other applicable governing body of Seller has determined that it is advisable and in the best interests of Seller's estate and the beneficiaries of such estate to consummate the Transactions pursuant to the Sale Order and has approved this Agreement;

WHEREAS, Seller intends to seek the entry of the Sale Order by the Bankruptcy Court approving this Agreement and authorizing Seller to consummate the Transactions upon the terms and subject to the conditions set forth herein and in the Sale Order;

WHEREAS, Purchaser desires to purchase all of the Interests and, to the extent applicable, accept Seller's assignment of the Operative Documents on the terms and subject to the conditions set forth herein, and, if and to the extent applicable, pursuant to sections 363 and 365 of the Bankruptcy Code; and

WHEREAS, the Parties acknowledge and agree that the Transactions are being made at arm's length and in good faith and without intent to hinder, delay or defraud creditors of Seller or its Affiliates and Seller acknowledges that the consideration to be paid is fair value and reasonably equivalent value for the acquisitions by Purchaser.

NOW, THEREFORE, in consideration of the premises and of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

# ARTICLE 1

# PURCHASE AND SALE OF INTERESTS

1.1    <u>Purchase and Sale of Interests</u>. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code and upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller agrees to sell, assign, convey, transfer and deliver to Purchaser, and Purchaser agrees to purchase and accept from Seller, all of Seller's right, title and interest in, to and under the Interests for an amount in cash equal to the Aggregate Purchase Price, subject to adjustment pursuant to <u>Section 1.3</u>, which purchase shall be free and clear of any Liens other than Permitted Encumbrances.

1.2    <u>Assumption and Assignment of Operative Documents</u>.

(a)    Subject to the provisions of sections 363 and 365 of the Bankruptcy Code, if and to the extent applicable, and the Sale Order, Seller shall assign to Purchaser, and Purchaser shall assume, all of Seller's right, title and interest in and to the Operative Documents as of the Closing.

(b)    Purchaser shall be responsible for all Cure Costs (including, for the avoidance of doubt, the $25,000,000 unfunded capital call issued by the Subject Company pursuant to the Funding Notice (as defined in the Operative Documents) issued on December 20, 2022 and any interest, fees or expenses, including legal fees, charged or imposed by the Subject Company in connection to such unfunded capital call (including any Default Interest)), which shall not be the obligation, liability or responsibility of Seller.  Purchaser has delivered evidence of Purchaser's ability to comply with section 365 of the Bankruptcy Code, including adequate assurances of any future performance, in connection with the assumption and assignment of the Operative Documents.

1.3    <u>Purchase Price</u>. The aggregate purchase price (the "<u>Aggregate Purchase Price</u>") for the Interests and the interests of Seller in the Operative Documents shall be (a) $18,200,000 in cash, <u>plus</u> (b) the aggregate amount of any Capital Contributions or any other amounts paid to the Subject Company in respect of the Interests after the Balance Sheet Date and on or prior to the Closing Date, <u>minus</u> (c) the aggregate amount of any Distributions made to Seller after the Balance Sheet Date and on or prior to the Closing Date, <u>plus</u> (d) the Cure Costs, if any, paid by Seller prior to the Closing Date, and such Aggregate Purchase Price as calculated pursuant to this Section 1.3 shall be payable without any withholding or deduction.

1.4    <u>Distributions</u>.  From and after the Closing Date, if Seller receives any Distributions from the Subject Company in respect of the Interests, Seller shall (i) maintain such Distributions in its account(s) in trust for Purchaser, (ii) have no legal or beneficial interest in such Distributions and (iii) promptly pay over any such Distributions to Purchaser. If Purchaser acquires knowledge of any Distribution paid or to be paid to Seller at any time from and after the Closing, Purchaser

2

shall provide written notice thereof to Seller as soon as practicable but in any event within ten (10) Business Days after acquiring such knowledge.

1.5    <u>Liabilities</u>. From and after the Closing Date, and upon the terms and subject to the conditions set forth in this Agreement and the Transfer Documents, Purchaser shall assume and perform the duties and obligations of Seller with respect to the Interests acquired by Purchaser at the Closing Date under the Operative Documents and the Transfer Documents in accordance with the terms of such agreements, including any unfunded Capital Contributions as of the date hereof or any Capital Contributions that have become due and payable after the date hereof, including as of or following the Closing Date. Any liabilities for Taxes, fees or other governmental charges attributable to the Interests or the ownership of the Interests by Purchaser shall be the responsibility of Purchaser.

1.6    <u>Closing</u>. The closing of the Transactions (the "<u>Closing</u>") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on June 30, 2023 if all of the conditions to closing specified in <u>Article 5</u> are satisfied or waived by such time, or at such other time as Purchaser and Seller shall agree in writing (the "<u>Closing Date</u>").

1.7    <u>Deliveries at Closing</u>.  At the Closing, upon satisfaction or waiver of the conditions set forth in <u>Article 5</u> hereof:

(a)    Purchaser shall pay the Aggregate Purchase Price to Seller in accordance with <u>Section 1.3</u> by wire transfer of immediately available funds pursuant to the instructions delivered by Seller to Purchaser prior to the Closing Date;

(b)    Purchaser shall pay to the Subject Company or applicable counterparty an amount equal to the Cure Costs not included in the Aggregate Purchase Price, if any, by wire transfer of immediately available funds pursuant to the instructions delivered by Seller to Purchaser prior to the Closing Date;

(c)    Purchaser shall deliver to Seller a counterpart to the Transfer Documents, duly executed by Purchaser or its applicable Affiliates party thereto;

(d)    Seller shall deliver to Purchaser a counterpart to the Transfer Documents, duly executed by Seller or its applicable Affiliates party thereto; and

(e)    each of Seller and Purchaser shall deliver to the other Party each of the other documents and instruments required to be delivered pursuant to the terms of this Agreement or any Transfer Documents.

## ARTICLE 2

## REPRESENTATIONS AND WARRANTIES

2.1    <u>Representations and Warranties of Seller</u>. Seller hereby represents and warrants to Purchaser that:

3

(a)      <u>Authorization</u>. Seller is an International Business Company duly incorporated with registration no. 217617 and validly existing in good standing (to the extent such concept is applicable) under the laws of the Republic of Seychelles. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, Seller has (and as of the Closing, will have) the requisite power and authority to enter into, execute and deliver this Agreement and the Transfer Documents to which Seller is a party and to perform all of the obligations to be performed by it hereunder and thereunder. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, this Agreement and the Transfer Documents to which it is a party have been or, when executed, will be duly authorized, executed and delivered by it, and constitute or, when executed, will constitute a valid and binding obligation of Seller, enforceable against it in accordance with its terms.

(b)      <u>Title to Interests.</u> Seller owns all right, title and interest in and to the Interests, free and clear of all Liens other than Permitted Encumbrances and Liens created by or through Purchaser or any of its Affiliates.

(c)      <u>No Conflicts</u>. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, the execution and delivery of this Agreement and the Transfer Documents to which Seller is a party and the performance or consummation of the Transactions by Seller do not conflict with, result in a breach or violation of, or result in the creation of a Lien on any of the Interests owned by Seller under the terms or provisions of (i) its organizational documents, (ii) any contract that is material to the value of the Interests, or (iii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over it or its property, except, in each case, for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(d)      <u>Funded and Unfunded Capital Commitment; Operative Documents</u>.

(i)      <u>Schedule A</u> sets forth, as of the date hereof (unless otherwise specified in <u>Schedule A</u>), expressed in U.S. dollars, Seller's total Capital Commitment to the Subject Company, Seller's capital account balance in the Subject Company (based on information received from the Subject Company), the aggregate amount of Capital Contributions Seller has made in respect of the Interests since the Balance Sheet Date, the aggregate amount of Distributions made by the Subject Company to Seller since the Balance Sheet Date, and the amount of the unfunded Capital Commitment with respect to the Interests in the Subject Company.

(ii)      To Seller's knowledge, complete copies of all Operative Documents have been made available to Purchaser.

(iii)      To Seller's knowledge, Seller has not granted any other Person (except as set forth in the Operative Documents) any options, calls, warrants, commitments or rights of any character whatsoever to acquire any interest in the Subject Company that would reduce Seller's percentage ownership in the Subject Company.

4

(e)     <u>Certain Conduct</u>. Since the Balance Sheet Date, Seller has not (i) sold, assigned, transferred, delivered or otherwise disposed of all or any portion of the Interests held by Seller, (ii) converted, exchanged or redeemed all or any portion of the Interests, or (iii) agreed to do any of the foregoing.

(f)     <u>Broker's Fee; No Public Offering</u>. No Person acting on behalf of Seller or under the authority of Seller shall be entitled to any broker's, finder's, or similar fee or commission in connection with the Transactions, other than the financial advisors retained by Seller in the Bankruptcy Proceeding.

(g)     <u>No Other Representations or Warranties</u>. Except for the representations and warranties contained in this Section 2.1, neither Seller nor any other Person (other than Purchaser) has made any other express or implied representation or warranty with respect to, or otherwise in connection with, the Interests, Seller, the Subject Company, Purchaser or any of their respective businesses, operations, assets, liabilities, conditions (financial or otherwise) or prospects in connection with this Agreement or the Transactions, and Seller disclaims any other representations or warranties, whether made by Seller, any Affiliate of Seller or any of Seller's or its Affiliates' respective representatives.

(h)     <u>No General Solicitation</u>. Neither Seller nor anyone acting on Seller's behalf has offered the Interests to the public or engaged in any general solicitation or general advertising with respect to the offer and sale of the Interests.

2.2     <u>Representations and Warranties of Purchaser</u>. Purchaser hereby represents and warrants to Seller that:

(a)     <u>Authorization</u>. Purchaser is an entity duly formed and validly existing in good standing under the laws of its jurisdiction of organization. Purchaser has the requisite power and authority to enter into, execute and deliver this Agreement and the Transfer Documents and to perform all of the obligations to be performed by it hereunder and thereunder. This Agreement and the Transfer Documents to which Purchaser is a party have been or, when executed, will be duly authorized, executed and delivered by Purchaser, and constitute or when executed, will constitute a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and moratorium laws and other Laws of general application affecting enforcement of creditors' rights generally.

(b)     <u>No Conflicts</u>. The execution and delivery of this Agreement and the Transfer Documents to which Purchaser is a party and the performance or consummation of the Transactions by Purchaser do not (i) conflict with or result in a breach or violation of the terms or provisions of its organizational documents, (ii) result in the breach or violation of any of the terms or provisions of, or constitute a default under, or accelerate the performance required by the terms of any indenture, mortgage, deed of trust, loan agreement or any other agreement or instrument to which Purchaser is a party or by which Purchaser is bound or (iii) conflict with or result in a breach or violation of the terms or provisions of any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over Purchaser or its property, except, in each case, to the extent that such conflicts, violations, defaults or accelerations would not, individually or in the aggregate, materially hinder, delay or impair the performance of its obligations under this

5

Agreement and the Transfer Documents. The execution and delivery by Purchaser of this Agreement and the Transfer Documents to which it is a party and the performance by Purchaser of its obligations hereunder and thereunder will not require any registration, filing, consent or approval under any Law, rule, regulation, judgment, order, writ, decree, permit or license, or any consent or approval of any other party to Purchaser's constituent documents, or any other contract, agreement, instrument, commitment or restriction binding upon Purchaser, except for the Sale Order and any General Partner Consent.

(c)　　Independent Appraisal.

(i)　　Purchaser acknowledges that Seller may be in possession of material, nonpublic information relating to the Subject Company. Purchaser further acknowledges and agrees that Seller has no obligation to disclose to Purchaser any such material, nonpublic information except as may be required for a representation and warranty of Seller hereunder to be accurate and correct. Purchaser further acknowledges that (A) it is not relying on there having been disclosed any such material or potentially material information which is not disclosed, and (B) any such information may be materially adverse to Purchaser's interests. Purchaser further acknowledges that it is prepared to purchase the Interests from Seller on the foregoing basis and hereby waives any right to rescind or invalidate the purchase of the Interests from Seller or to seek any damages or other remuneration from Seller based on the possession of any such material, nonpublic information by Seller.

(ii)　　Purchaser acknowledges that it is experienced and sophisticated with respect to transactions of the type contemplated by this Agreement, and that in consultation with experienced counsel and advisors of its choice, it has made its own due diligence analysis, credit analysis and decision to buy the Interests, and that it is responsible for making its own evaluation of any information about the Interests, the Subject Company or Seller that it may receive either directly from the Subject Company or Seller, and that none of the Subject Company, Seller or any Affiliate, partner, employee, officer or director thereof (A) makes any representation or warranty or gives any undertaking of any kind, express or implied, as to, or accepts or assumes any responsibility or liability of any kind for, the accuracy, reliability, adequacy, completeness or reasonableness of any such information or any assumptions upon which such information is based except as specifically set forth in this Agreement or (B) shall be under any obligation to provide access to or advise Purchaser or any other Person of the existence of any additional information or to review, update or correct any inaccuracy in any information about the Interests, the Subject Company or Seller (or any assumptions upon which such information is based) supplied by it or by any Person or be otherwise liable to the Subject Company or Seller or any other Person with respect to any such information or assumptions, except as specifically contemplated in this Agreement.

(d)　　Accredited Investor; Qualified Purchaser. Purchaser is an "accredited investor" within the meaning of Rule 501 of Regulation D of the Securities Act of 1933, as amended and a "qualified purchaser" within the meaning of Section 2(a)(51)(A) of the Investment Company Act of 1940, as amended, and the rules promulgated thereunder.

6

(e)    No Resale. Purchaser's purchase of the Interests is for its own account for investment and not with a view to the distribution or resale thereof, except in compliance with the Securities Act of 1933, as amended, and applicable state securities laws.

(f)    Broker's Fee. No Person acting on behalf of Purchaser or under the authority of Purchaser shall be entitled to any broker's, finder's, or similar fee or commission in connection with the Transactions.

(g)    Adequate Assurance of Future Performance. To the extent required by the Bankruptcy Code or other Laws, Purchaser will provide, at Closing or on such earlier date as is designated by the Bankruptcy Court, adequate assurance of its future performance of the applicable requirements regarding assignment of the rights and obligations under the Operative Documents to Purchaser in satisfaction of section 365(f)(2)(B) of the Bankruptcy Code. Purchaser acknowledges and agrees that, if it becomes necessary to provide any additional assurances of its future performance under the Bankruptcy Code or other Laws, Purchaser shall perform all actions and bear all such costs and expenses as may be necessary or advisable in connection with its obligations under this Section 2.2(g) without recourse to Seller.

(h)    No Other Representations or Warranties.

(i)    Except for the representations and warranties contained in this Section 2.2, Purchaser has not made any other express or implied representation or warranty with respect to, or otherwise in connection with, the Interests, the Subject Company, Purchaser, Seller or any of their respective businesses, operations, assets, liabilities, conditions (financial or otherwise) or prospects in connection with this Agreement or the Transactions, and Purchaser disclaims any other representations or warranties, whether made by Purchaser, any Affiliate of Purchaser or any of Purchaser's or its Affiliates' respective representatives.

(ii)    Purchaser acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.1, (A) neither Seller nor any other Person (other than Purchaser) has made any express or implied representation or warranty with respect to, or otherwise in connection with, the Transactions or with respect to the accuracy or completeness of any other information provided, or made available, to Purchaser in connection with the Transactions and Purchaser has not relied on any representation or warranty other than those expressly set forth in Section 2.1, (B) Purchaser has not executed or authorized the execution of this Agreement or entered into the Transactions in reliance upon, and hereby specifically disclaims reliance upon, any promise, statement, projection, forecast, representation or warranty whatsoever made or omitted to be made to Purchaser or any of its Affiliates, or any of its or their respective representatives, including any such promise, statement, projection, forecast, representation or warranty as to the condition, value, quality or prospects of the Subject Company, or its assets or liabilities, including the Operative Documents, or any part thereof; and (C) the Interests are being transferred "as is", "where is" and "with all faults". Purchaser acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.1, Seller, on behalf of itself and its subsidiaries and Affiliates (x) expressly disclaims and negates any representation or warranty, expressed or implied,

7

at common law, by statute or otherwise, with respect to the business, operations, assets, liabilities, conditions (financial or otherwise) and prospects of the Subject Company or with respect to the Interests (including any express or implied warranty of merchantability or fitness for a particular purpose) and (y) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement or information made, communicated or furnished (orally or in writing) to Purchaser or its Affiliates or its or their respective representatives (including any opinion, information, projection or advice that may have been or may be provided to Purchaser by any representative of Seller or any of its Affiliates). Purchaser acknowledges and agrees that Seller has not made any representations or warranties to Purchaser regarding the probable success or profitability of the Subject Company.

(iii)    Purchaser acknowledges and agrees that the enforceability of this Agreement against Seller is subject to entry of the Sale Order and any other Order entered into by the Bankruptcy Court applicable to the Transactions.

# ARTICLE 3

# COVENANTS

3.1    <u>Tax Matters</u>.

(a)    Seller and Purchaser shall cooperate with each other in good faith in connection with Taxes with respect to the Subject Company, including (i) in preparing and timely filing Tax returns with respect to Tax periods (or portions thereof) prior to the Closing Date, (ii) in the conduct of any audit, litigation, adjustment, or other proceeding with respect to Tax periods (or portions thereof) prior to the Closing Date, (iii) with respect to the Tax treatment of the Transactions, and (iv) using commercially reasonable efforts to obtain any certificate or other document from any Governmental Entity as may be necessary to mitigate, reduce, eliminate or recover any Tax (including withholding or deduction in respect of Taxes) that is or may be imposed with respect to the Transactions or that reduce any distributions paid or made by the Subject Company with respect to the Interests.  With respect to the Subject Company, Seller and Purchaser shall, with respect to the Interests, (i) not make, or cause or permit the Subject Company to make, any Tax election with retroactive effect to Tax periods (or portions thereof) on or prior to the Closing Date (for the avoidance of doubt, excluding any Tax election which may be made by the Subject Company without Seller's or Purchaser's (as applicable) consent or approval), (ii) use commercially reasonable efforts to not take any action under the Subject Company Agreement in relation to Tax matters of the Subject Company with respect to Tax periods (or portions thereof) on or prior to the Closing Date, or (iii) enter into, or cause or permit the Subject Company to enter into, any voluntary disclosure or similar agreement or program with a Governmental Entity in relation to Tax matters of the Subject Company with respect to Tax periods (or portions thereof) on or prior to the Closing Date, which, in each of case (i), (ii) and (iii), could reasonably be expected to materially adversely and disproportionately impact the other party, without the prior written consent of the other party (not to be unreasonably withheld, conditioned, or delayed).

8

(b)    All Transfer Taxes, if any, incurred in connection with the consummation of the Transactions shall be borne by Purchaser.

3.2    <u>Pre-Closing Notice</u>. Prior to the Closing Date, Seller shall deliver to Purchaser a notice (a "<u>Pre-Closing Notice</u>") setting forth the calculation of the Aggregate Purchase Price, including the aggregate amount of all Capital Contributions and Distributions included in such determination, subject to adjustment in accordance with <u>Section 1.3</u>, and including wire instructions for the applicable accounts designated by Seller to which the Aggregate Purchase Price in respect of such Interest(s) shall be paid. If Seller receives from a Manager a notice requiring it to make or pay part of its Capital Commitment (a "<u>Capital Call</u>") or receives any Distribution, in each case, in respect of the Interests included in the Pre-Closing Notice between the date of such Pre-Closing Notice and the Closing Date, Seller shall, as soon as reasonably practicable, provide to Purchaser (i) a notice including a copy of, if applicable, the Capital Call or details of such Distribution (as applicable), and (ii) a revised calculation of the Aggregate Purchase Price in respect of the Interests reflecting the Capital Commitment required to be made pursuant to the Capital Call or the Distribution (as applicable).

3.3    <u>Confidentiality</u>. Each of Seller and Purchaser acknowledges that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which terms are incorporated herein by reference, and agrees to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full except that Seller shall be permitted to disclose the terms of this Agreement.  For the avoidance of doubt, Seller is expressly permitted to disclose this Agreement, any Transfer Documents and, in each case, any exhibits and schedules thereto with the Bankruptcy Court as necessary or advisable in connection with the Transactions.

3.4    <u>Allocation of Indemnity Obligations</u>. If, as a condition to obtaining the approvals to the transfer of the Interests, the General Partner or the Transfer Documents require Seller and/or Purchaser to jointly or jointly and severally, or severally indemnify such General Partner, the Partnership or any of their affiliates, members or employees (or otherwise require Seller and/or Purchaser to agree to bear on a joint or joint and several basis any losses, claims, damages, liabilities or expenses of the General Partner, the Partnership or any of their affiliates, members or employees resulting from or arising out of the transfer of the Interests), Seller and Purchaser, to the fullest extent permitted by law, agree as follows:

(a)    Seller shall be liable for amounts owed under such provision that result from such Seller's acts or omissions, including, without limitation, any inaccuracy in or breach of any representation or warranty of Seller contained in the Transfer Documents or any failure by Seller to perform any covenant, agreement or obligation of Seller contained in the Transfer Documents; and

(b)    Purchaser shall be liable for amounts owed under such provision that result from Purchaser's acts or omissions, including, without limitation, any inaccuracy in or breach of any representation or warranty of Purchaser contained in the Transfer Documents or any failure by Purchaser to perform any covenant, agreement or obligation of Purchaser contained in the Transfer Documents;

9

(c)      Subject to the other provisions of this Purchase Agreement, Purchaser shall be liable for any amounts owed under such provisions that do not result from the acts or omissions of a specific party.

# ARTICLE 4

# BANKRUPTCY MATTERS

4.1     <u>Bankruptcy Court Filings.</u>

(a)      As promptly as possible, Seller or its applicable Debtor Affiliates shall (i) file with the Bankruptcy Court one or more motions, along with the proposed Sale Order, (A) seeking approval of the sale of the Interests and assignment of the Operative Documents to which Seller is a party to Purchaser and (B) fixing the time, date and location of the hearing to approve the consummation of the Transactions (the "<u>Sale Hearing</u>"); (ii) notify, as required by the Bankruptcy Code and the Bankruptcy Rules, all parties entitled to notice of such motions and orders, as modified by orders in respect of notice which may be issued at any time and from time to time by the Bankruptcy Court, and such additional parties as such Purchaser may reasonably request; and (iii) use commercially reasonable efforts to obtain Bankruptcy Court approval of the Sale Order.

(b)      Each Party shall (i) appear in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the Transactions and (ii) keep the other Party reasonably apprised of the status of material matters related to this Agreement, including, upon reasonable request promptly furnishing the other Party with copies of notices or other communications received from the Bankruptcy Court or any other Person with respect to the Transactions.

(c)      The Parties shall consult with each other regarding pleadings that any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of the Sale Order.  Seller shall promptly provide Purchaser and its outside legal counsel with copies of all notices, filings and orders of the Bankruptcy Court that Seller has in its possession (or receives) pertaining to the Sale Order, or related to any of the Transactions, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to Purchaser and its outside legal counsel.  Seller shall not seek any modification to the Sale Order with respect to the Transactions by the Bankruptcy Court or any other Governmental Entity of competent jurisdiction to which a decision relating to the Bankruptcy Proceeding has been appealed, in each case, without the prior written consent of Purchaser (not to be unreasonably withheld, conditioned or delayed).

(d)      If any order of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for rehearing, re-argument or stay shall be filed with respect thereto), Seller agrees to, and agrees to cause its Debtor Affiliates to, use their commercially reasonable efforts, to defend against such appeal, petition or motion, and Purchaser agrees to cooperate reasonably in such efforts. Each Party hereby agrees to use its commercially reasonable efforts to obtain an expedited resolution of such appeal.

10

4.2     Non-Solicitation; Alternative Transaction.

(a)     Consummation of the Transactions are subject to approval by the Bankruptcy Court and the consideration by the Debtor Affiliates and the Bankruptcy Court of higher or better competing bids. From and after the date hereof until the date that the Sale Order is entered by the Bankruptcy Court or other court of competent jurisdiction (the "Sale Order Date"), Seller and the Debtor Affiliates shall be permitted to cause their respective representatives and Debtor Affiliates to (i) initiate contact with, or solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates, agents and representatives) with respect to an Alternative Transaction, and (ii) respond to any inquiries or offers to purchase all or any part of the Subject Company and/or its assets (whether in combination with other assets of Seller and the Debtor Affiliates or otherwise) and perform any and all other acts related thereto which are required or permitted under the Bankruptcy Code, any Order entered into by the Bankruptcy Court applicable to the Transactions or other applicable Law, including supplying information relating to the Subject Company and the assets of the Subject Company to prospective purchasers.

(b)     From and after the Sale Order Date, other than as set forth herein, Seller and its representatives shall not (i) solicit, initiate, knowingly facilitate or knowingly encourage the submission of, or any inquiries with respect to, any Alternative Transaction by a third party; (ii) participate in any discussions or negotiations with a third party regarding, or furnish to any third party any information or data with respect to, or otherwise cooperate in any way with respect to, a proposed Alternative Transaction; or (iii) enter into any letter of intent, memorandum of understanding, acquisition agreement or other agreement, arrangement or understanding that contemplates an Alternative Transaction; provided, that Seller, may in connection with any bona fide proposal related to an Alternative Transaction received by Seller without any violation of clause (i) above, furnish information and data to a third party and take any other action referred to in clause (ii) above, if: (A) Seller determines in good faith that such proposal constitutes a higher or otherwise better offer for the Interests; and (B) Seller gives Purchaser prompt written notice of Seller's intention to furnish information or data to or to engage in negotiations or discussions with the third party submitting such proposal.

4.3     Sale Order.

(a)     Subject to Section 4.2 and Section 7.7, each of Seller and Purchaser shall take all actions as may be reasonably necessary to cause the Sale Order to be issued, entered and become a Final Order, including furnishing affidavits, declarations or other documents or information for filing with the Bankruptcy Court. Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" buyer under section 363(m) of the Bankruptcy Code.

(b)     The Sale Order shall, among other things, (i) approve, pursuant to sections 105, 363, and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by the

11

Seller of this Agreement, (B) the sale of the Interests to Purchaser on the terms set forth herein and free and clear of all Liens (other than Permitted Encumbrances), and (C) the performance by Seller of its obligations under this Agreement, (ii) find that (A) Purchaser is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code and (B) Purchaser is not a successor to Seller and (iii) grant Purchaser the protections of section 363(m) of the Bankruptcy Code.

## ARTICLE 5

## CONDITIONS TO CLOSING

5.1    <u>Mutual Condition</u>. The respective obligations of each of Seller and Purchaser to effect the Closing are subject to the satisfaction or waiver by both Parties of the following condition on or prior to the Closing Date: The Bankruptcy Court shall have entered the Sale Order, and such Sale Order shall be in full force and effect and not subject to a stay.

5.2    <u>Conditions to the Obligation of Purchaser</u>. The obligation of Purchaser to effect the Closing is subject to the satisfaction or waiver by Purchaser of the following additional conditions on or prior to the Closing Date:

(a)    The representations and warranties of Seller contained in this Agreement shall be true and correct (without giving effect to any materiality qualifiers, including "Material Adverse Effect", contained therein) as of the Closing Date as though made on and as of such date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date) except where the failure of any such representations and warranties to be so true and correct would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(b)    Seller shall have performed in all material respects all obligations required to be performed by it under this Agreement on or prior to the Closing Date.

5.3    <u>Conditions to the Obligation of Seller</u>. The obligation of Seller to effect the Closing is subject to the satisfaction or waiver by Seller of the following additional conditions on or prior to the Closing Date:

(a)    The representations and warranties of Purchaser contained in this Agreement shall be true and correct (without giving effect to any materiality qualifiers, including "Material Adverse Effect", contained therein) as of the Closing Date as though made on and as of such date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date); and

(b)    Purchaser shall have performed in all material respects all obligations required to be performed by it under this Agreement on or prior to the Closing Date.

## ARTICLE 6

## TERMINATION

6.1     <u>Grounds for Termination</u>. This Agreement may be terminated at any time:

(a)     by mutual agreement of Seller and Purchaser;

(b)     by either Seller or Purchaser if the Closing has not occurred by July 1, 2023 (the "<u>Termination Date</u>"); <u>provided</u>, that the right to terminate this Agreement pursuant to this <u>Section 6.1(b)</u> shall not be available to a Party that has breached in any material respect its obligations under this Agreement in any manner that shall have proximately contributed to the failure of the Closing to have occurred on or prior to the Termination Date;

(c)     by either Seller or Purchaser, if there is in effect a Final Order of a Governmental Entity of competent jurisdiction, enjoining or otherwise prohibiting the consummation of the Transactions (it being agreed that the Parties will promptly appeal any adverse determination which is not non-appealable and pursue such appeal in accordance with their respective obligations under this Agreement unless and until this Agreement is terminated pursuant to this <u>Section 6.1</u>);

(d)     by Seller if Purchaser shall have breached or failed to perform in any material respect any of its covenants or other agreements contained in this Agreement, or any of its representations and warranties shall have become untrue after the date hereof, which breach or failure to perform or be true (i) would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.3</u> and (ii) is not curable or, if curable, is not cured within the earlier of (A) five (5) days after written notice thereof is given by Seller to Purchaser and (B) the Termination Date; <u>provided</u>, that Seller shall not have the right to terminate this Agreement pursuant to this <u>Section 6.1(d)</u> if Seller is then in material breach of any of its representations, warranties, covenants or other agreements hereunder and such material breach would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.2</u>;

(e)     by Purchaser if Seller shall have breached or failed to perform in any material respect any of its covenants or other agreements contained in this Agreement, or any of its representations and warranties shall have become untrue after the date hereof, which breach or failure to perform or be true (i) would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.2</u>, and (ii) is not curable or, if curable, is not cured within the earlier of (A) five (5) days after written notice thereof is given by Purchaser to Seller and (B) the Termination Date; <u>provided</u>, that Purchaser shall not have the right to terminate this Agreement pursuant to this <u>Section 6.1(e)</u> if Purchaser is then in material breach of any of its representations, warranties, covenants or other agreements hereunder and such material breach would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.3</u>;

(f)     automatically, if Seller enters into a definitive agreement with a third party with respect to an Alternative Transaction; or

13

(g)　　by Seller, if Seller or the board of directors (or similar governing body) of Seller determines that proceeding with the Transactions or failing to terminate this Agreement would be inconsistent with its or such Person's or body's fiduciary duties.

6.2　　<u>Effect of Termination</u>. If this Agreement is terminated as permitted by <u>Section 6.1</u>:

(a)　　no Party shall have any liability or further obligation to the other Party pursuant to this Agreement; <u>provided</u>, <u>however</u>, that (i) the agreements of Seller and Purchaser set forth in <u>Section 3.3</u> (*Confidentiality*) and <u>Section 7.4</u> (*Expenses*) shall survive such termination and (ii) no such termination shall relieve a Party of any liability or damages to the other Party resulting from any knowing and intentional material breach of this Agreement;

(b)　　Upon request from Seller, Purchaser shall return to Seller all documents, work papers and other material of Seller relating to the Transactions, whether obtained before or after the execution hereof or certify that such documents have been destroyed, provided however, that Purchaser will be entitled to maintain all documents, work papers and other material located in its backup systems for compliance with regulatory record retention requirements; and

(c)　　the provisions of the Confidentiality Agreement will continue in full force and effect.

## ARTICLE 7

## OTHER MATTERS

7.1　　<u>Waiver, Amendment</u>. Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited by the provision had it not been waived.

7.2　　<u>Remedies</u>. No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by a Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

7.3　　<u>No Survival of Representations and Warranties or Covenants</u>. No representations or warranties, covenants or agreements in this Agreement or in any instrument delivered pursuant to this Agreement shall survive beyond the Closing Date, except for covenants and agreements that by their terms are to be satisfied after the Closing Date, which covenants and agreements shall survive until satisfied in accordance with their terms.  Following the Closing, in no event shall Seller or Purchaser have any recourse against the other or the Purchaser Parties or Seller Parties, respectively with respect to any representation, warranty, covenant or agreement made by Seller or Purchaser, as applicable, in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, except with respect to claims for breaches of covenants and agreements that by their terms are to be satisfied after the Closing Date.

14

7.4    <u>Expenses</u>. Except as otherwise provided in this Agreement or the Transfer Documents, each of Purchaser and Seller shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the Transfer Documents and the Transactions; <u>provided</u>, <u>however</u>, that Purchaser shall pay any and all third-party costs and expenses of the Subject Company, including legal and accounting fees, incurred in connection with the Transactions, to the extent required to be paid, reimbursed or advanced pursuant to the Transfer Documents or the Operative Documents.

7.5    <u>Notices</u>. All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to Seller:

> Maclaurin Investments Ltd.
> 2600 South Shore Blvd, Suite 300
> League City, TX 77573
> Attention:  Kathryn Schultea
> Email:        kathyschultea@ftx.com
>
> *With a copy (which shall not constitute notice) to*:
>
> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, NY 10004
> Attention:  Audra D. Cohen
>                    Rita-Anne O'Neill
> Telephone:(212) 558-3275
>                    (310) 712-6698
> Email:        cohena@sullcrom.com
>                    oneillr@sullcrom.com

If to Purchaser:

> Liberty Mutual Investment Holdings LLC
> 175 Berkeley Street
> Boston, MA 02116
> Attention: Demetri Fifis
> Telephone: 617-654-3504
> Email: Demetri.Fifis@LMI.com / LibertyMutualPrivateEquity1@LMI.com

15

*With a copy (which shall not constitute notice) to*:

Liberty Mutual Group
175 Berkeley Street
Boston, MA 02111
Attention: Helen O'Rourke, General Counsel LMI
Telephone: 617-571-8144
Email: Helen.orourke@libertymutual.com; LMIlegalall@libertymutual.com

7.6     Specific Performance.

(a)     Each Party agrees that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, and that damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, each Party will be entitled to injunctive relief to prevent any such breach, and to specifically enforce the terms and provisions of this Agreement without the necessity of posting bond or other security against it or proving damages, including specific performance of such covenants, promises or agreements (including to cause Purchaser to consummate the Transactions and to make the payments contemplated by this Agreement) or an Order enjoining a Party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement.  The rights set forth in this Section 7.6 will be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

(b)     Each Party agrees not to raise any objections to the availability of the equitable remedy of specific performance to prevent or restrain breaches of this Agreement by Purchaser or Seller, as applicable, and to specifically enforce the terms and provisions of this Agreement to prevent breaches or threatened breaches of, or to enforce compliance with, the respective covenants and obligations of Purchaser or Seller, as applicable, under this Agreement all in accordance with the terms of this Section 7.6.

7.7     Fiduciary Obligations. Nothing in this Agreement, or any document related to the Transactions, will require Seller or any of its directors, officers or stockholders, in each case, in their capacities as such, to take any action, or to refrain from taking any action, to the extent inconsistent with their fiduciary obligations.  For the avoidance of doubt, Seller retains the right to pursue any transaction or restructuring strategy that, in Seller's business judgment, will maximize the value of its estates.

7.8     Entire Understanding; No Third-Party Beneficiaries. This Agreement, the Transfer Documents and the Confidentiality Agreement together set forth the entire understanding of the Parties relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior agreements, written or oral, among the Parties with respect to the subject matter of this Agreement. In the event of any conflict between this Agreement and the Transfer Documents or the Confidentiality Agreement, the provisions of this Agreement shall prevail. No representation, warranty, inducement, promise, understanding or condition not set forth in this

16

Agreement has been made or relied on by a Party in entering into this Agreement. Nothing in this Agreement, expressed or implied, is intended to confer on any Person, other than the Parties or their respective successors, any rights, remedies, obligations or liabilities.

7.9     <u>Assignment</u>. Neither this Agreement nor any of the rights, interests or obligations under it may be assigned by a Party (whether by operation of law or otherwise) without the prior written consent of the other Party and any purported assignment in violation of this <u>Section 7.9</u> will be void, except for the following assignments which shall not require any consent and will not be void: (a) assignment to an Affiliate of either Party (<u>provided</u> that such Party remains liable jointly and severally with its assignee Affiliate for the assigned obligations to the other Party) and (b) assignment by Seller to a succeeding entity following its emergence from the Bankruptcy Proceeding. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by each Party to this Agreement and its successors and permitted assigns.

7.10     <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

7.11     <u>Severability</u>. If any of the provisions of this Agreement is found to be in violation of Law or unenforceable for any reason, then (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.12     <u>No Presumption</u>. The Parties agree that this Agreement was negotiated fairly between them at arm's length and that the final terms of this Agreement are the product of their negotiations. Each Party represents and warrants that it has sought and received experienced legal counsel of its own choosing with regard to the contents of this Agreement and the rights and obligations affected hereby. The Parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not be construed against a Party on the grounds that such Party drafted or was more responsible for drafting the provisions.

7.13     <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.

          (a)     This Agreement will be governed by and construed in accordance with the internal Laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such Laws.

(b)    Without limiting a Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in <u>Section 7.5</u>; <u>provided</u>, <u>however</u>, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Action, in the Supreme Court of the Delaware Court of Chancery, for the resolution of any such claim or dispute. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable Law, any objection which it may now or hereafter have to the laying of venue of any such Action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(c)    Each Party consents to process being served by the other Party in any Action by delivery of a copy thereof in accordance with the provisions of <u>Section 7.5</u>; <u>provided</u>, <u>however</u>, that such service will not be effective until the actual receipt thereof by the Party being served.

(d)    Each Party waives any right to trial by jury in any Action regarding this Agreement or any provision hereof.

7.14    <u>Damages</u>. Neither Party shall have any liability under any provision of this Agreement for any punitive, incidental, consequential, special or indirect damages, including business interruption, loss of future revenue, profits or income, or loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement.

7.15    <u>Interpretation</u>. (a) As used in this Agreement, references to:

(i)    the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement;

(ii)    the Preamble, Recitals, Sections, Exhibits or Schedules refer to the Preamble, a Recital or Section of, or an Exhibit or a Schedule to this Agreement unless otherwise indicated;

(iii)    this Agreement refers to this Agreement and the Exhibits and Schedules to it; and

(iv)    all references to "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified.

18

(b)        Wherever this Agreement requires a Party to take an action, the requirement constitutes an undertaking by the Party to cause its subsidiaries, and to use its commercially reasonable efforts to cause its other Affiliates, to take appropriate action in connection therewith.

(c)        Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the Person referred to may require.

(d)        The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**MACLAURIN INVESTMENTS LTD.**

By: _____
      Name: John J. Ray III
      Title:  Authorized Signatory

**PURCHASER**:

**LIBERTY MUTUAL INVESTMENT
HOLDINGS LLC**

By: _____
      Name:  Demetri Fifis
      Title:  Vice President

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**MACLAURIN INVESTMENTS LTD.**

By: _____
      Name:
      Title:

**PURCHASER**:

**LIBERTY MUTUAL INVESTMENT HOLDINGS LLC**

By: _____
      Name:   Demetrios Fifis
      Title:    Vice President

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the meanings specified in this Exhibit A.

"Action" means any litigation, action, suit, charge, binding arbitration, or other legal, administrative or judicial proceeding.

"Affiliate" means, as to any Person, any other Person that directly or indirectly through one or more intermediaries controls, or is under common control with, or is controlled by, such Person.

"Aggregate Purchase Price" has the meaning set forth in Section 1.3.

"Agreement" has the meaning set forth in the Preamble.

"Alternative Transaction" means the sale, transfer or other disposition of the Interests in a transaction with a purchaser or transferee other than Purchaser and/or its Affiliates.

"Balance Sheet Date" means December 31, 2022.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bankruptcy Proceeding" has the meaning set forth in the Recitals.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court.

"Business Day" means any day other than a Saturday or Sunday or a day on which banks located in the city of New York are authorized or required by statute to close.

"Capital Call" has the meaning set forth in Section 3.2.

"Capital Commitment" means all obligations of the owner of the Interests pursuant to the Operative Documents to make capital contributions to the Subject Company and to pay management fees and other fees and expenses to the Subject Company or any Manager.

"Capital Contributions" means all cash payments or deemed payments made in respect of Seller's Capital Commitments to the Subject Company (other than payments or deemed payments on account of tax liabilities of Seller attributable to the ownership by Seller of the Interests for periods on or prior to the Closing Date).

"Closing" has the meaning set forth in Section 1.6.

"Closing Date" has the meaning set forth in Section 1.6.

A-1

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means the Confidentiality Agreement, dated May 7, 2023, between Liberty Mutual Group Asset Management Inc. and FTX Trading Ltd., West Realm Shires Inc., Alameda Ventures Ltd., Maclaurin Investments Ltd. and their respective debtor affiliates.

"Cure Costs" means monetary amounts that must be paid and obligations that otherwise must be satisfied under section 365(b)(1)(A) and (B) of the Bankruptcy Code in connection with the assumption and/or assignment of the Operative Documents, as agreed upon by the Parties and with the General Partner or otherwise determined by the Bankruptcy Court. For the avoidance of doubt, "Cure Costs" includes the $25,000,000 unfunded capital call issued by the Subject Company pursuant to the Funding Notice (as defined in the Operative Documents) issued on December 20, 2022 and any interest, fees or expenses, including legal fees, charged or imposed by the Subject Company in connection to such unfunded capital call (including any Default Interest).

"Debtor Affiliates" means the Debtors and their respective wholly-owned subsidiaries.

"Debtors" has the meaning set forth in the Recitals.

"Default Interest" means any interest and related fees and expenses, including legal fees, arising from any unfunded capital calls issued by the Subject Company prior to and including the Closing Date.

"Distributions" means all cash payments and other distributions paid or made (or deemed paid or made, excluding any distributions deemed paid or made in respect of withholding taxes through the date of this Agreement) by the Subject Company to Seller relating to the Interests. The value of all "in-kind" payments, dividends or other distributions received by Seller from the Subject Company shall be the value assigned thereto as of the date of distribution by the General Partner.

"Final Order" means an Order (a) as to which no appeal, leave to appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed (in cases in which there is a date by which such filing is required to occur), or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject Order in all material respects without the possibility for further appeal thereon, (b) in respect of which the time period for instituting or filing an appeal, leave to appeal, motion for rehearing or motion for new trial shall have expired (in cases in which such time period is capable of expiring), and (c) as to which no stay is in effect.

"General Partner" means the Person set forth on Schedule A or any Person that becomes a successor or an additional general partner of the Subject Company as may be provided in the Subject Company Agreement, in such Person's capacity as general partner.

"General Partner Consent" means the consent of, and any other action as required under the terms of the Subject Company Agreement by, the General Partner to the sale, assignment and transfer of the Interests to Purchaser and any admission of or assignment associated with Purchaser's admission as a limited partner of the Subject Company.

A-2

"Governmental Entity" means any federal, state, provincial, municipal, territorial, local or foreign government, governmental authority, regulatory or administrative agency, governmental commission, department, board, bureau, agency, instrumentality, court or tribunal and, for purposes of this Agreement shall include the U.S. Securities and Exchange Commission and any state securities authority or other regulatory authority or organization having jurisdiction over the Debtors, Purchaser or the Subject Company.

"Interests" has the meaning set forth in the Recitals.

"IRS" means the U.S. Internal Revenue Service.

"Law" or "Laws" means any law, statute, legislation, constitution, ordinance, principle of common law, resolution, treaty, convention, rule, regulation, ruling, directive, pronouncement, Order or other legal requirement enacted, issued, promulgated, enforced or entered by a Governmental Entity of competent jurisdiction.

"Lien" means any lien (statutory or otherwise), charge, pledge, mortgage, lease, easement, hypothecation, usufruct, deed of trust, security interest, option, right of use, first offer or first refusal, servitude, restrictive covenant or condition, encroachment, claim, interest, restriction or any other encumbrance of any kind.

"Manager" shall mean the general partner, manager or other person that controls the Subject Company.

"Material Adverse Effect" means any change, development, circumstance, fact or effect that, individually or taken together with any other changes, developments, circumstances, facts or effects is, or would reasonably be expected to be, materially adverse to the financial condition, assets, liabilities, business operations or results of operations of the Subject Company; provided, however, that none of the following, either alone or in combination, shall be deemed to constitute a Material Adverse Effect that is occurring, has occurred or would reasonably be expected to occur: (a) changes, developments, circumstances or facts in or with respect to the economy, credit, capital, securities, digital asset or financial markets or political, regulatory or business conditions in the geographic markets in which the Subject Company has operations or its products or services are sold, (b) changes, developments, circumstances, facts or effects generally affecting the industries, markets or geographical areas in which the Subject Company operates, (c) any change in the price or relative value of any digital currency or cryptocurrency, or any other blockchain-based tokens or assets, (d) any change in existence or legality of any digital currency or cryptocurrency, or any other blockchain-based token or asset, or any halt or suspension in trading of any such digital currency or cryptocurrency on any exchange, (e) changes, events and occurrences in the industries in which the Subject Company and the companies it invests in operate generally, (f) macroeconomic factors, interest rates, currency exchange rates, general financial market conditions, any change, development or effect resulting from acts of war (whether or not declared), sabotage, terrorism, military actions or the escalation of any of the foregoing, whether perpetrated or encouraged by a state or non-state actor or actors (other than cyberattacks), any weather or natural disaster, or any outbreak of illness or other public health event (or any measures taken in response thereto) or any other *force majeure* event (except to the extent causing any damage or destruction to or rendering unusable any material facility or property of the Subject Company),

4874-6614-5630 v.5

whether or not caused by any Person (other than the Subject Company or any of its Affiliates or representatives), (g) changes in law, generally accepted accounting principles or official interpretations of the foregoing, (h) compliance with this Agreement, including any effect on Seller resulting from failure to take any action to which Purchaser refused consent under this Agreement, (i) the Transactions or any announcement hereof or the identity of Purchaser, (j) the pendency of the Bankruptcy Proceeding and any action approved by, or motion made before, the Bankruptcy Court, or (k) matters known to or reasonably foreseeable by Purchaser, taking into account the financial condition, business and operations of Seller, the fact that Seller is involved in the Bankruptcy Proceeding and the circumstances giving rise to such Bankruptcy Proceeding; it being understood that the failure of the Subject Company to achieve internal or external financial forecasts or projections, by itself, will not constitute a Material Adverse Effect.

"Operative Documents" means, with respect to the Subject Company, the Subject Company Agreement and any shareholders agreements, management agreements, bylaws, side letters and other documents and agreements governing the rights and obligations of Seller as an investor in the Subject Company, including as set forth in Schedule A, in each case as amended and/or restated to date.

"Order" means any order, writ, judgment, injunction, decree, rule, ruling, decision, directive, determination, quasi-judicial decision, or award made, issued or entered by or with any arbitrator, mediator, or Governmental Entity, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Bankruptcy Proceeding.

"Party" or "Parties" has the meaning set forth in the Preamble.

"Permitted Encumbrance" means a restriction on transfer arising solely under applicable federal and state securities Laws, any applicable Cayman Islands Laws or any applicable Seychelles Laws and any transfer restrictions set forth in the Operative Documents.

"Person" means any natural person and any corporation, company, partnership (general or limited), unincorporated association (whether or not having separate legal personality), trust or other entity.

"Pre-Closing Notice" has the meaning set forth in Section 3.2.

"Purchaser" has the meaning set forth in the Preamble.

"Purchaser Parties" means, collectively, (i) Purchaser, (ii) each of the current or former Affiliates of Purchaser, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

"Sale Hearing" has the meaning set forth in Section 4.1.

"Sale Order" means an order entered by the Bankruptcy Court or other court of competent jurisdiction that includes the provisions set forth in Exhibit B hereto, subject to (a) immaterial

modifications or clarifications or (b) such other changes to which Purchaser consents (such consent not to be unreasonably withheld, conditioned or delayed).

"Sale Order Date" has the meaning set forth in Section 4.2.

"Sale Procedures" has the meaning set forth in the Recitals.

"Seller" has the meaning set forth in the Preamble.

"Seller Parties" means, collectively, (i) Seller, (ii) each of the current or former Affiliates of Seller, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

"Subject Company" has the meaning set forth in the Recitals.

"Subject Company Agreement" means the agreement set forth on Schedule A opposite the Subject Company, as amended and/or restated to date.

"Taxes" means any tax, withholding, deduction, impost, duty, levy, fee, payment, contribution, charge or other like assessment imposed by a Governmental Entity, including any interest, penalties and additions imposed with respect to any such amounts or with a failure to comply with any filing or other requirements relating thereto, and any liability for the payment of amounts determined by reference to any of the foregoing by Law, by contract, or otherwise.

"Termination Date" has the meaning set forth in Section 6.1(b).

"Transactions" means the transactions contemplated by this Agreement.

"Transfer Documents" means any assignment and assumption agreement and any other instruments of transfer to be executed by Seller and Purchaser at the Closing and the agreement among Seller, Purchaser and the General Partner which relates to the sale, assignment and transfer of the Interests to Purchaser and the admission or joinder (in respect of the Interests) of Purchaser as a limited partner or member of the Subject Company under the Operative Documents, in a form reasonably satisfactory to Seller and Purchaser.

"Transfer Taxes" means any transfer, documentary, sales, use, stamp, recording, value-added, registration and other similar Taxes and all conveyance fees, recording fees and other similar charges including any interest, penalties and additions imposed with respect to such amount.

[Remainder of page intentionally left blank]

**EXHIBIT B**

**FORM OF SALE ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. [●]** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN
SCHF CAYMAN, L.P. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING DEBTORS' ENTRY
INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT;
(III) AUTHORIZING AND APPROVING ASSUMPTION AND ASSIGNMENT
OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors

and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"),

pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1 among other things,

(a) authorizing and approving the sale (the "Sale Transaction") of the limited partnership

interests (the "Interests") held by the Debtors in SCHF Cayman, L.P., a Cayman Islands

exempted limited partnership (the "Subject Company"), free and clear of all liens, claims,

interests and encumbrances in accordance with the terms and conditions set forth in the

Agreement, (b) authorizing and approving the Debtors' entry into, and performance under, the

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete
list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd
is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Purchase and Sale Agreement, dated as of June 8, 2023, a copy of which is attached as Exhibit B

to the Motion (the "<u>Agreement</u>"), between Debtor Maclaurin Investments Ltd. (formerly known

as Alameda Ventures Ltd.), an International Business Company incorporated under the laws of

the Republic of Seychelles  ("<u>Seller</u>"), and Liberty Mutual Investments Holdings LLC, a

Delaware limited liability company ("<u>Purchaser</u>"), (c) authorizing and approving the assumption

and assignment of the Twelfth Amended and Restated Limited Partnership Agreement of the

Subject Company, dated December 22, 2022 and any shareholders agreements, management

agreements, bylaws, side letters and other documents and agreements governing the rights and

obligations of Seller as an investor in the Subject Company as set forth in the Agreement

(collectively, the "<u>Operative Documents</u>"), and (d) granting related relief; the Court having held

a hearing to approve the Sale Transaction pursuant to the terms of the Agreement (the "<u>Sale</u>

<u>Hearing</u>") to review and consider (i) the Motion with respect to the Sale Transaction and all

relief related thereto, (ii) the Agreement, (iii) *Declaration of Bruce Mendelsohn in Support of the*

*Sale Transaction*, and (iv) any objections thereto that were not resolved prior to the start of the

Sale Hearing; and upon the record of the Sale Hearing and all of the proceedings had before this

Court; and objections (if any) to the Motion, with respect to the sale of the Interests, having been

withdrawn or overruled on the merits; and after due deliberation and good cause appearing

therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

       A.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this matter and

over the property of the Debtors' estates, including the Interests to be sold, transferred or

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

2

conveyed pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court may issue a final order on the Motion consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for the relief requested in the Motion and for the approvals and authorization herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1.

C.      <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

D.      <u>Sale Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Sale Hearing, (a) the Debtors have provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient opportunity to object to, the Motion with respect to the Sale Transaction and the relief requested therein (including the Debtors' requested findings with respect to successor liability), the Sale Transaction, assumption and assignment of the applicable Operative Documents and the Cure Costs, if any, and the proposed entry of this Sale Order in compliance

3

with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local

Rules, (b) such notice was adequate and sufficient under the circumstances of these Chapter 11

Cases, and (c) no other or further notice is necessary or shall be required.

E.    Opportunity to Object.  A fair and reasonable opportunity to object or be

heard regarding the relief granted by this Sale Order, including, but not limited to, the

assumption and assignment of the applicable Operative Documents and the Cure Costs (as

defined in the Agreement), has been afforded to all interested parties.

F.    No Collusion.  Purchaser is not an "insider" of the Debtors, as that term is

defined in section 101(31) of the Bankruptcy Code.  The Agreement and the Sale Transaction

were negotiated, proposed and entered into by Seller and Purchaser without collusion or fraud, in

good faith and from arm's-length bargaining positions, and are substantively and procedurally

fair to all parties.  Neither the Debtors, nor Purchaser has engaged in any conduct that would

cause or permit the Agreement or the consummation of the Sale Transaction to be avoided, or

costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly

neither the Debtors nor Purchaser has violated section 363(n) of the Bankruptcy Code by any

action or inaction.  Specifically, Purchaser has not acted in a collusive manner with any person

and the purchase price was not controlled by any agreement among bidders.  The Sale

Transaction may not be avoided, and no damages may be assessed against Purchaser or any other

party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-

bankruptcy law.

G.    Good Faith of Purchaser.  Purchaser is purchasing the Interests in good

faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the

Bankruptcy Code.  Purchaser is therefore entitled to all of the protections afforded under section

4

363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Interests; (b) Purchaser in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (c) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by Purchaser in connection with the Sale Transaction have been disclosed; (d) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) the negotiation and execution of the Agreement were at arm's length and in good faith, and at all times each of the Purchaser and Seller were represented by competent counsel of their choosing; and (f) the Purchaser has not acted in a collusive manner with any person.  Purchaser will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Agreement.

        H.      <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Interests, and a reasonable opportunity has been given to any interested party to make a higher or better offer for the Interests.  No other person or entity or group of entities has offered to purchase the Interests for higher or otherwise better value to the Debtors' estates than Purchaser.  The offer to purchase the Interests made by Purchaser, under the terms and conditions set forth in the Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for the Interests and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Interests being conveyed to Purchaser; (d) is fair and

reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by Purchaser absent the protections afforded to Purchaser by this Sale Order.

      I.      The Debtors' determination that the Sale Transaction, pursuant to the Agreement, provides the highest or otherwise best offer for the Interests, and their related decision to sell the Interests, constitute a reasonable exercise of the Debtors' business judgment. The facts and circumstances described in the Motion and the evidence adduced in connection with the Sale Hearing demonstrate the Debtors' business judgment to sell the Interests to Purchaser at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Interests outside of a chapter 11 plan. Moreover, the sale of the Interests outside of a chapter 11 plan pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan. It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

      J.      <u>Fair Consideration</u>. The consideration provided by Purchaser pursuant to the Agreement constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

      K.      <u>No Successor or Other Derivative Liability</u>. As a result of any action taken in connection with the Sale Transaction, the Agreement, or this Sale Order: (a) Purchaser is not a successor to or mere continuation of or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between Purchaser and the Debtors; and (b)

6

Purchaser shall not be deemed to be holding itself out to the public as a continuation of the Debtors based on the Sale Transaction.  Purchaser is not, and shall not be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates.  Purchaser would not have entered into the Agreement if the sale of the Interests were not made free and clear of any successor liability of Purchaser.

L.    Corporate Power and Authority.  As set forth in section 2.1(a) of the Agreement, Seller (a) has full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) has all corporate authority necessary to consummate the Sale Transaction, and (c) has taken all corporate action and formalities necessary to authorize and approve the Agreement and the consummation of the Sale Transaction.  Seller's sale of the Interests has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Agreement, are required for Seller to consummate the Sale Transaction.

M.    The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor Purchaser are entering into the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

N.    Title to Assets.  The transfer of the Debtors' rights, titles and interests to the Interests and applicable Operative Documents to Purchaser will be, as of the Closing Date (as defined in the Agreement), a legal, valid and effective transfer of such rights, titles and interests

7

in the Interests and applicable Operative Documents, which transfer vests or will vest Purchaser with all rights, titles and interests of the Debtors to the Interests and applicable Operative Documents free and clear of all Liens (as defined below and in the Agreement), other than Permitted Encumbrances (as defined in the Agreement).  The Agreement is a valid and binding contract between Seller and Purchaser and shall be enforceable according to its terms.

        O.      <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the Debtors are authorized to transfer all of their rights, titles and interests in and to the Interests free and clear of any interest in the property, other than Permitted Encumbrances.  The Debtors may sell the Interests free and clear of all liens (statutory or otherwise), charges, pledges, mortgages, leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first offer or first refusal, servitudes, restrictive covenants or conditions, encroachments, claims, interests, restrictions, or any other encumbrances of any kind (collectively, "<u>Liens</u>") other than Permitted Encumbrances, against the Debtors, their estates or the Interests because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each holder with a Lien on the Interests to be transferred pursuant to the Agreement: (a) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien; or (c) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Holders of Liens against the Debtors, their estates or the Interests who did not object, or who withdrew their objections, to the Sale Transaction or the Motion, with respect to the sale of the Interests (except with respect to Permitted Encumbrances), are deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code.  All other holders of Liens are adequately protected by having their Liens, if any, in each instance against the Debtors, their estates or the Interests, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Interests in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

P.      Purchaser would not have entered into the Agreement and would not consummate the Sale Transaction if the sale of the Interests to Purchaser were not free and clear of all Liens (other than Permitted Encumbrances), or if Purchaser or any of the Purchaser Parties (as defined in the Agreement) would, or in the future could, be liable for any such Lien.  The total consideration to be provided under the Agreement reflects Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Interests free and clear of all Liens (other than Permitted Encumbrances).  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

Q.      <u>Assumption and Assignment of the Applicable Operative Documents</u>. The Debtors and Purchaser have satisfied, to the extent necessary, the requirements of section 365 of the Bankruptcy Code, including subsections 365(b)(1)(A), 365(b)(1)(B) and 365(f), in connection with the assumption and assignment of the applicable Operative Documents. Purchaser has demonstrated adequate assurance of future performance with respect to the

9

applicable Operative Documents pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the

Bankruptcy Code.  The assumption and assignment of the applicable Operative Documents

pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of

the Debtors and their estates, and represents the reasonable exercise of sound and prudent

business judgment by the Debtors.  The Debtors or Purchaser, as applicable, shall, to the extent

necessary, provide compensation or adequate assurance of compensation, which amount will be

paid to non-Debtor counterparties to the applicable Operative Documents for any actual

pecuniary loss to any such party resulting from a default prior to the date of assumption and

assignment with respect to the applicable Operative Documents, within the meaning of sections

365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  Except where an applicable Operative

Document is subject to an unresolved objection to the assumption and assignment of such

Operative Document, payment of the Cure Costs, if any, as set forth herein and Purchaser's

promise to perform the obligations under the applicable Operative Documents after the Closing

Date shall constitute adequate assurance of future performance within the meaning of sections

365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The applicable Operative Documents

are assignable notwithstanding any provisions contained therein to the contrary.

    R.  Except as otherwise set forth herein, any objections to the assumption and

assignment of any of the applicable Operative Documents to Purchaser are hereby overruled.

Any objections to the Cure Costs are resolved as set forth herein.  To the extent that any

counterparty failed to timely object to its Cure Cost or adequate assurance of future performance,

such counterparty is deemed to have consented to such Cure Cost and the assignment of its

respective Operative Documents to Purchaser.

S.      <u>Mutual Release</u>.  The entry into a release by Seller on behalf of itself, its estate, anyone who might claim by or through Seller and Seller's successors and assigns, including without limitation any bankruptcy trustee or estate representative under 11 U.S.C. §1123(b)(3) or otherwise (collectively, the "Releasors") in favor of the Subject Company, its general partner and their respective affiliates, and each such person's respective members, partners, agents, directors, officers, stockholders, employees, subsidiaries, predecessors, successors and assigns (collectively, the "Releasees") is approved in full.  The Subject Company would not have consented to the Sale Transaction in the absence of such releases, and therefore the releases are supported by adequate consideration and are reasonable.  *See* Mendelsohn Declaration ¶ 28.

T.      <u>Waiver of Bankruptcy Rules 6004(h) and 6006(d)</u>.  Good and sufficient reasons for approval of the Agreement and the Sale Transaction have been articulated.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates.  Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with respect to the Sale Transaction.  To maximize the value of the Interests, it is essential that the Sale Transaction occur within the time constraints set forth in the Agreement.  Time is of the essence in consummating the Sale Transaction and the Debtors and Purchaser intend to close the Sale Transaction as soon as practicable.  Given all of the circumstances of

11

these Chapter 11 Cases and the adequacy and fair value of the Aggregate Purchase Price under

the Agreement, the proposed Sale Transaction should be approved.

U.     The consummation of the Sale Transaction and the assumption and

assignment of the applicable Operative Documents is legal, valid and properly authorized under

all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a),

363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have

been complied with in respect of the transaction.

V.     <u>Personally Identifiable Information</u>.  The Sale Transaction does not

involve the sale of any personally identifiable information.  Thus, the appointment of a consumer

privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not

required with respect to the Sale Transaction.

W.     <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the

Motion and the evidence adduced in connection with the Sale Hearing establish just cause for the

relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their

estates.

IT IS HEREBY ORDERED THAT:

**A.     General Provisions**

1.     The sale of the Interests and the other relief requested in the Motion is

granted as set forth herein, and the Agreement and the provisions thereof and the Sale

Transaction are approved in their entirety as set forth herein.

2.     All objections, responses, reservations of rights and requests for any

continuances concerning the Motion are resolved in accordance with the terms of this Sale Order

or as set forth in the record of the Sale Hearing.  To the extent any such objections, responses,

reservations of rights or requests for any continuances were not otherwise withdrawn, waived,

settled, or resolved, such are hereby overruled and denied on the merits.  All interested parties

that failed to timely object to the Motion, with respect to the Sale Transaction, are deemed to

have consented to the relief granted herein for all purposes, including, without limitation,

pursuant to section 363(f)(2) of the Bankruptcy Code.

3.       Notice of the Motion, the Agreement, the sale of the Interests free and

clear of all Liens, except Permitted Encumbrances, the Sale Transaction, and the assumption and

assignment of the applicable Operative Documents and the Cure Costs was fair, equitable,

proper, and sufficient under the circumstances and complied in all respects with section 102(1)

of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and the

Local Rules 2002-1, 6004-1 and 9006-1.

**B.       Approval of the Agreement**

4.       The Agreement and all of the terms and conditions thereof, are hereby

authorized and approved in all respects.  The failure to specifically include or make reference to

any particular provision of the Agreement in this Sale Order shall not impair the effectiveness of

such provision, it being the intent of this Court that the Agreement and the Sale Transaction are

authorized and approved in their entirety.

5.       Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors

are authorized and empowered to take any and all actions necessary or appropriate to

(a) consummate the Sale Transaction to Purchaser in accordance with the terms and conditions of

the Agreement, (b) close the Sale Transaction as contemplated in the Agreement and this Sale

Order, and (c) execute and deliver, perform under, consummate and implement the Agreement,

including the assumption and assignment to Purchaser of the applicable Operative Documents,

together with all additional instruments and documents that may be reasonably necessary or

desirable to implement the Agreement and the Sale Transaction.  Purchaser shall not be required

to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.       This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in, against or on all or any portion of the Interests or applicable Operative Documents (whether known or unknown), Purchaser and all successors and assigns of Purchaser, the Interests and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchaser and the respective successors and assigns of each of the foregoing.

## C.    Consummation of the Sale Transaction

7.       Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer all of their rights, titles and interests to the Interests to Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, titles and interests in the Interests and shall vest Purchaser with all of the Debtors' rights, titles and interests in the Interests and, upon the Debtors' receipt of the Aggregate Purchase Price, shall be free and clear of all Liens, including but not limited to, successor or successor-in-interest liability or, any tax liens or mechanic's liens asserted against the Interests, except Permitted Encumbrances, with all such Liens to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens are asserted,

14

subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens now have against the Interests, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  The provisions of this Sale Order authorizing and approving the transfer of the Interests free and clear of all Liens (other than Permitted Encumbrances) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  The releases granted by the Releasors in favor of the Releasees are approved in full.

8.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except Permitted Encumbrances.

9.      If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Interests shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Interests, the Debtors, Purchaser and each of their respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Interests.

10.      This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens existing as to the Interests prior to the Closing Date, except Permitted

15

Encumbrances, shall have been unconditionally released, discharged and terminated from the Interests, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**D.**     **Assumption and Assignment of Contracts**

11.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, and payment of all Cure Costs, if any, Seller's assumption and assignment to Purchaser of the applicable Operative Documents is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

12.     Seller is hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon the Closing of the Sale Transaction, the applicable Operative Documents free and clear of all Liens of any kind or nature whatsoever, except Permitted Encumbrances, and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the applicable Operative Documents to Purchaser.

16

13.     With respect to the Operative Documents: (a) where an applicable Operative Document is an executory contract or unexpired lease of nonresidential real property under section 365 of the Bankruptcy Code, Seller may assume each applicable Operative Document in accordance with section 365 of the Bankruptcy Code; (b) Seller may assign each applicable Operative Document in accordance with sections 363 and 365 of the Bankruptcy Code and any provisions in any applicable Operative Document that prohibit or condition the assignment of such Operative Document or allow the party to such Operative Document to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Operative Document, constitute unenforceable anti-assignment provisions which are deemed void and of no force and effect solely with respect to this Sale Transaction; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assignment to and assumption by Purchaser of each applicable Operative Document have been satisfied; (d) the applicable Operative Documents shall be transferred and assigned to, and following the closing of the Sale Transaction remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Operative Document (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, upon the Closing and the payment of the applicable Cure Cost, if any, the Debtors shall be relieved from any further liability with respect to the applicable Operative Documents after such assignment to and assumption by Purchaser and (e) upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all rights, titles and interests of the Debtors in each applicable Operative Document, free and clear of any Liens, except Permitted Encumbrances.

4894-3045-1814 v.4

14.     The Debtors are authorized to enter into any amendment of an Operative

Document on terms acceptable to Purchaser and agreed to by the counterparty to such Operative

Document in connection with the assumption and assignment of such Operative Document, and

the assumption and assignment of the Operative Documents authorized by this Sale Order shall

be of the Operative Documents, as so amended or modified.

15.     All defaults or other obligations of the Debtors under the applicable

Operative Documents arising or that have become due and not paid prior to the Closing that are

required to be cured by section 365(b)(1) of the Bankruptcy Code (without giving effect to any

acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the

Bankruptcy Code) shall be cured by Purchaser at or before the Closing through the payment of

the Cure Costs, if any.  To the extent that any counterparty to an applicable Operative Document

did not object to its Cure Cost or adequate assurance of future performance, such counterparty is

deemed to have consented to such Cure Cost and the assumption and assignment of its respective

Operative Documents from Seller to Purchaser.  Purchaser shall enjoy all of the Seller's rights,

benefits, and privileges under the applicable Operative Document as of the Closing without the

necessity to obtain any non-Debtor parties' written consent to the assumption or assignment

thereof, except to the extent expressly contemplated in the Agreement.  To the extent any

counterparty to the Operative Documents failed to timely object to a Cure Cost, such Cure Costs

shall be deemed to be finally determined and any such counterparty shall be prohibited from

challenging, objecting to or denying the validity and finality of the Cure Cost at any time.  From

and after the Closing, Seller shall have no liability, obligation or responsibility in respect of the

Capital Commitment or any Capital Calls (each as defined in the Agreement).

16.     Upon the Debtors' assumption and assignment of the applicable Operative Documents to Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Costs, no default shall exist under any applicable Operative Document, and no counterparty to any applicable Operative Document shall be permitted to (a) declare a default by Purchaser under such Operative Document or (b) otherwise take action against Purchaser, in each case, as a result of the Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the applicable Operative Document.  Each non-Debtor party to an applicable Operative Document hereby is also forever barred, estopped and permanently enjoined from (i) asserting against Purchaser, Seller, the Debtors, their estates, or their property, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or, against Purchaser, Seller, the Debtors, or their estates, any counterclaim, unexercised set-off or any other claim asserted or assertable against the Debtors and (ii) imposing or charging against Purchaser or its Affiliates (as defined in the Agreement) any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser of the applicable Operative Documents.  The validity of such assumption and assignments of the applicable Operative Documents shall not be affected by any dispute between the Debtors and the counterparties to the applicable Operative Documents and any disputes regarding the Cure Cost of any applicable Operative Document.

17.     Upon payment of the applicable Cure Costs, if any, and assignment of the applicable Operative Documents to Purchaser, the Debtors and their estates shall have no further liabilities or obligations with respect to any applicable Operative Documents, including with respect to any Capital Commitment or Capital Calls (each as defined in the Operative

19

Documents), and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

18.    The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any applicable Operative Documents shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Operative Documents.

19.    In the event that the Sale Transaction does not close, none of the applicable Operative Documents shall be assumed or assigned by virtue of this Sale Order and shall remain subject to further rejection, assumption and/or assignment in these Chapter 11 Cases.

## E.    <u>Prohibition of Actions Against Purchaser</u>

20.    Except as expressly provided for in this Sale Order or the Agreement, Purchaser shall not have any liability or other obligation or responsibility of the Debtors arising under or related to the Interests or Operative Documents prior to the Closing.  Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, Purchaser shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to paragraph 24 below), successor or transferee liability, securities law, tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to

20

paragraph 24 below), and any taxes arising, accruing or payable under, out of, in connection

with, or in any way relating to the operation of any of the Interests prior to the Closing.  The Sale

Transaction does not amount to a consolidation, merger or de facto merger of Purchaser, on the

one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand,

and there is not substantial continuity between Purchaser, on the one hand, and the Debtors or

their affiliates, on the other hand, and Purchaser is not a mere continuation of the Debtors or their

estates, and Purchaser does not constitute a successor to the Debtors or their estates.  For

purposes of paragraphs 20 to 23 this Sale Order, all references to Purchaser shall include the

Purchaser Parties.

21.    Except as expressly otherwise set forth in the Agreement and this Sale

Order, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers,

employees, litigation claimants and other creditors, holding Liens against or in all or any portion

of the Interests or applicable Operative Documents (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior

or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors

or the Interests or applicable Operative Documents prior to the Closing Date or the transactions

contemplated by the Agreement, including the transfer of the Interests to Purchaser and the

assumption and assignment of the applicable Operative Documents, hereby are forever barred,

estopped and permanently enjoined from asserting against Purchaser, its Affiliates, its successors

or assigns, their property or the Interests and applicable Operative Documents, such persons' or

entities' Liens with respect to the Interests or applicable Operative Documents, including, without

limitation, the following actions: (a) commencing or continuing in any manner any action or other

21

proceeding against Purchaser, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Purchaser, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against Purchaser, its Affiliates, its successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due Purchaser, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate the Subject Company, subject to paragraph 24 below.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Interests and applicable Operative Documents (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

22.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere (a) with the ability of the Debtors and/or Seller to sell and transfer the Interests and applicable Operative Documents to Purchaser in accordance with the terms of the Agreement and this Sale Order, and (b) with the ability of Purchaser to acquire and take possession of the Interests and applicable Operative Documents in accordance with the terms of the Agreement and this Sale Order.

23.     Purchaser has given substantial consideration under the Agreement for the benefit of the Debtors and their estates.  The consideration given by Purchaser shall constitute valid and valuable consideration for the sale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Interests pursuant to this Sale Order,

22

except with respect to the Permitted Encumbrances, and free and clear of any potential claims of successor liability against the Purchaser. The consideration provided by Purchaser for the Interests and applicable Operative Documents under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**F.    Other Provisions**

24.    Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order. In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

25.    Further, nothing in this Sale Order or Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

26.    Notwithstanding anything to the contrary in the Motion, this Sale Order, or any findings announced at the Sale Hearing, nothing in the Motion, this Sale Order, or announced at the Sale Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

27.    The consideration provided by Purchaser to the Debtors pursuant to the Agreement for the Interests and Operative Documents constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform

23

Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

28.     The sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

29.     The Sale Transaction is undertaken by Purchaser and the general partner of the Subject Company without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, including the assumption and assignment of the Operative Documents, unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing.  Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and Purchaser will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

30.     As a good faith purchaser of the Interests, Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any other bidders, potential bidders, or any other parties interested in the Interests, and therefore, neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring an action against Purchaser, and the Sale Transactions may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Agreement or Sale Transaction.

24

31.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale Order and the Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

32.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchaser are authorized to close the Sale Transaction immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

33.     The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

34.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance

25

with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Agreement is modified, the Debtors shall file the modified version with the Court.

35.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

36.     The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

37.     No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Agreement)) shall apply to the Debtors' conveyance of the Interests and Operative Documents or this Sale Order.

38.     The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

39.     Purchaser is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction, the

26

assumption and assignment of the applicable Operative Documents, and any issues related to or otherwise connected to the Agreement and the Sale Transaction.

40.     Nothing in this Sale Order shall affect the obligations, if any, of the Debtors, Purchaser, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

41.     Subject to the releases by the Releasors in favor of the Releasees, nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Interests or the Operative Documents.

42.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _____
        Wilmington, Delaware

_____
The Honorable John T. Dorsey
United States Bankruptcy Judge

27

## SCHEDULE A

| | |
|---|---|
| **Name of Seller** | Maclaurin Investments Ltd. (formerly known as Alameda Ventures Ltd.) |
| **Subject Company\*** | SCHF Cayman, L.P. |
| **Subject Company Agreement/ Operative Documents\*** | Twelfth Amended and Restated Limited Partnership Agreement of SCHF Cayman, L.P., dated December 22, 2022 |
| **General Partner\*** | SCHF (GPE), LLC |
| **Capital Commitment** | $100,000,000 |
| **Capital Contribution as of the Balance Sheet Date** | $25,000,000 |
| **Unfunded Capital Commitment as of the Balance Sheet Date** | $75,000,000 |
| **Capital Account Balance as of the Balance Sheet Date** | $24,533,104 |
| **Capital Contributions Made, If Any, Since Balance Sheet Date** | None |
| **Distributions Made, If Any, Since Balance Sheet Date** | None |

\* For avoidance of doubt, the Seller's Interest shall be converted into an interest in SCHF US, LP at or immediately following the Closing and following such conversion the Subject Company shall refer to SCHF US, LLC pursuant to the Twelfth Amended and Restated Limited Partnership Agreement of SCHF US, L.P., dated December 22, 2022 ("The Subject Company Agreement/Operative Documents") with SCHF (GPE), LLC, as the "General Partner".

[Remainder of page intentionally left blank]

## EXHIBIT B

Amendment to the Agreement

## AMENDMENT TO PURCHASE AND SALE AGREEMENT

### June 27, 2023

This Amendment (this "Amendment") to the Purchase Agreement (as defined below) is made and entered into by and between Maclaurin Investments Ltd. (formerly known as Alameda Ventures Ltd.), an International Business Company incorporated under the laws of the Republic of Seychelles ("Seller"), and Liberty Mutual Investment Holdings LLC, a Delaware limited liability company ("Purchaser" and together with the Sellers, the "Parties") as of the date first written above.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

WHEREAS, the Parties have entered into that certain Purchase and Sale Agreement, dated as of June 8, 2023 (the "Purchase Agreement"), and the Parties desire to amend the Purchase Agreement to reflect certain additional or modified terms.

NOW, THEREFORE, in furtherance of the foregoing, the Parties hereby agree as follows:

1.      Section 1.3 of the Purchase Agreement is amended and restated in its entirety as follows:

1.3      Purchase Price. The aggregate purchase price (the "Aggregate Purchase Price") for the Interests and the interests of Seller in the Operative Documents shall be (a) $19,566,294 in cash, plus (b) the aggregate amount of any Capital Contributions or any other amounts paid to the Subject Company in respect of the Interests after the Balance Sheet Date and on or prior to the Closing Date, minus (c) the aggregate amount of any Distributions made to Seller after the Balance Sheet Date and on or prior to the Closing Date, plus (d) the Cure Costs, if any, paid by Seller prior to the Closing Date, and such Aggregate Purchase Price as calculated pursuant to this Section 1.3 shall be payable without any withholding or deduction.

2.      The definition of "Default Interest" in Exhibit A to the Agreement is amended and restated in its entirety as follows:

"Default Interest" means $1,366,294.

3.      The amount set forth on Schedule A of the Agreement opposite "Capital Account Balance as of the Balance Sheet Date" is amended to replace "$24,533,104" with "$24,445,987".

4.      The provisions of Article 7 of the Purchase Agreement shall apply *mutatis mutandis* to this Amendment.  Except as expressly provided in this Amendment, all of the terms and provisions of the Purchase Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties.

*[Signature Pages Follow]*

-1-

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**MACLAURIN INVESTMENTS LTD.**

By: _____
Name:    John J. Ray III
Title:    Authorized Signatory

[*Signature Page to Purchase Agreement Amendment*]

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**MACLAURIN INVESTMENTS LTD.**

By: _____
     Name:
     Title:

**PURCHASER**:

**LIBERTY MUTUAL INVESTMENT HOLDINGS LLC**

By: _____
     Name: Demetrios Fifis
     Title: Vice President

[*Signature Page to Purchase Agreement Amendment*]