## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al*.,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** August 2, 2023 at 10:00 a.m. (ET) |
| | **Obj. Deadline:** July 26, 2023 at 4:00 p.m. (ET) |

**JOINT OMNIBUS MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 FOR AN ORDER AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR DISCOVERY FROM SILICON VALLEY ACCOUNTANTS, SILVERGATE BANK, AND EVOLVE BANK & TRUST**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee" and, together with the Debtors, the "Movants"), file this motion (the "Motion"), pursuant to section 105(a) of the Bankruptcy Code, Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking the entry of an order, substantially in the form annexed hereto as **Exhibit A**, authorizing the Movants to serve discovery requests on Silicon Valley Accountants ("SVA"), Silvergate Bank, and Evolve Bank & Trust ("Evolve Bank," and collectively with SVA and Silvergate Bank, the

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

"Rule 2004 Recipients"), including by serving subpoenas with the document requests substantially in the form annexed hereto as **Exhibit B** (SVA), **Exhibit C** (Silvergate Bank), and **Exhibit D** (Evolve Bank) (collectively the "Requests"), and authorizing the Movants to conduct an oral examination of SVA.[2]  In support of this Motion, the Movants respectfully represent as follows.

## INTRODUCTION

1.      The Debtors, with the Committee's cooperation and support, have sent Bankruptcy Rule 2004 requests to over 40 of the Debtors' pre-petition professionals, auditors, accountants, consultants, and financial institutions, seeking information and documents necessary to investigate the Debtors' pre-petition operations, identify and recover estate assets, and pursue claims for the benefit of all stakeholders.  To date, the vast majority of these professionals and banking institutions have been cooperative and, with some exceptions, have been committed to making fulsome productions in a timely fashion.

2.      Regrettably, this is not the case with respect to Silicon Valley Accountants, Silvergate Bank, and Evolve Bank.  While each of them has made a limited production, as discussed in more detail below, each has declined to produce requested documents and/or explain the scope of its search, refused to provide a date for completion, or both.  Their lack of cooperation is obstructing the Movants' ability to complete their investigations of the Debtors' pre-petition operations, investigate potential wrongdoing, analyze the third-party claims that may be available to the Debtors' estates, recover estate assets, and maximize value for stakeholders.[3]

---

[2]     Certain Rule 2004 Recipients have filed proofs of claim in the Chapter 11 Cases.  The Movants reserve the right to seek additional discovery from the Rule 2004 Recipients in connection with such claims.

[3]     To the extent the Movants and the Rule 2004 Recipients have been able to reach any agreements on the initial scope of the Rule 2004 Recipients' document productions, the Movants are committed to adhering to those prior agreements.  However, a court order appears to be necessary to obtain full agreement on scope and a timely production of documents from the Rule 2004 Recipients.

3.      By this Motion, the Movants seek entry of an order, substantially in the form annexed hereto as **Exhibit A**, authorizing the Movants to serve subpoenas and compel the Rule 2004 Recipients to produce each of the items identified in the Requests attached hereto as **Exhibits B–D**, respectively, and to conduct an oral examination of SVA.

4.      Each of the Rule 2004 Recipients have had the Movants' Requests for months. Given the amount of time that the Rule 2004 Recipients have had to respond to the Requests, the Movants believe the requested production deadline of August 15, 2023, is appropriate.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[4]

6.      The relief requested herein is based on Bankruptcy Code section 105(a), Bankruptcy Rule 2004, and Local Rule 2004-1.

## BACKGROUND

**A.      The Chapter 11 Cases and the Debtors' Ongoing Investigations**

7.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

---

[4]      Pursuant to Local Rule 9013-1(f), the Movants confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  Joint administration of the Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022. *See* D.I. 128.  On December 15, 2022, the Office of the United States Trustee for the District of Delaware appointed the Committee pursuant to Bankruptcy Code section 1102.  *See* D.I. 231.

8.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings*, [D.I. 24]; the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings*, [D.I. 57]; the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings*, [D.I. 92]; and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings*, [D.I. 93] (collectively, the "First Day Declarations").

9.      Prior to the Petition Date, the Debtors operated cryptocurrency exchanges and trading businesses.  As explained in the First Day Declarations, the Debtors faced a severe liquidity crisis that necessitated the filing of these Chapter 11 Cases on November 11 and 14, 2022.  As detailed in the First Day Declarations, the Debtors' pre-filing operations were characterized by a complete failure of corporate controls and a total absence of trustworthy financial information. *See* Declaration of John J. Ray III at 2, D.I. 24.

10.     The Debtors and their advisors have been working to implement controls, recover and protect estate assets, investigate potential claims, coordinate with authorities and proceedings in numerous jurisdictions, and maximize value for all stakeholders.  The efforts to date have included extensive investigation into the Debtors' pre-petition operations; those individuals and third parties that facilitated those operations; transfers of assets out of the estates; transactions

between the Debtors, insiders, and third parties; and potential causes of action and claims related thereto.  Generally, the Debtors are working tirelessly with their advisors and the Committee to pursue estate assets wherever they are located, and seek to recover from all parties who misappropriated assets of the estates or engaged in wrongdoing to the detriment of the Debtors' estates.

11.    In connection with this investigation, the Debtors, often jointly with the Committee, have requested documents under Bankruptcy Rule 2004 from over 40 of the Debtors' pre-petition professionals, auditors, accountants, consultants, and financial institutions that held accounts and facilitated transactions for the Debtors.  While the vast majority of the Bankruptcy Rule 2004 request recipients have taken the necessary steps to ensure timely compliance, SVA, Silvergate Bank, and Evolve Bank have not, necessitating this Motion.[5]

### B.    Silicon Valley Accountants

12.    SVA was engaged by the Debtors pre-petition to provide consulting services, including the implementation and support of software used in connection with the Debtors' accounting systems and period-end closing.  SVA was separately engaged by one of the Debtors' accountants to assist in the provision of bookkeeping services, documentation preparation, and responses to auditor requests.  In providing these services, SVA's founder and CEO appears to have been intimately involved in decision-making on critical accounting and finance matters directly pertinent to these cases, including the treatment of customer deposits, and effectively acted as an extension of company management.

---

[5]    While there are additional professionals and financial institutions whose timely and fulsome compliance may ultimately be in question, court intervention in connection with these Bankruptcy Rule 2004 requests is not required at this time.

13.    Given the incomplete state of the Debtors' financial records and the interrelated web of accounts and transactions through which the pre-petition Debtors transferred customer deposits and other assets, the Movants sought fulsome document productions from each of the Debtors' pre-petition professionals involved in developing, operating, consulting on, or auditing the Debtors' accounting systems and financial reporting, including from SVA.  Accordingly, on February 10, 2023, the Movants jointly sent document requests to SVA, requesting an informal production of documents under Bankruptcy Rule 2004.  Those requests are attached hereto as **Exhibit B**.[6]

14.    SVA's response has been deficient and characterized by unreasonable delay.  On March 22, 2023, SVA made its first document production, consisting of 7,444 documents.  Based on representations from SVA's legal counsel, the Movants understand that this document production consists entirely of documents previously produced in response to a third-party subpoena.  Through a review of the document requests and search parameters used in connection with the prior production, the Movants confirmed that SVA has additional responsive documents in its possession, custody, and control that were not produced in that prior production.  The Movants, accordingly, proposed search terms to SVA that they believed would adequately capture the electronic discovery sought by the Requests.

15.    After additional delay, on June 20, 2023, SVA produced a hit report for the Movants' proposed search terms.  But the report strongly suggests that the searches were incomplete or that additional searches may be necessary.  Accordingly, on the same day, the Movants requested a meet and confer to discuss the searches, the hit report, and any follow-up that

---

[6]    **Exhibit B** includes the complete set of document requests that were sent to SVA on February 10, 2023.  On a March 30th meet and confer, and in a follow-up e-mail sent April 3rd, the Movants requested SVA produce information regarding its insurance coverage.  On April 19th, SVA declined to provide this information.  The Movants have included their request for insurance information in the Requests attached hereto as **Exhibit B**.

may be necessary.  To date, despite several follow-up attempts, SVA has refused to schedule such a meet and confer.[7]  The Debtors and Committee have concluded that, without court intervention, SVA will continue to drag its feet and not comply with the Requests in a complete and appropriate manner.

### C.    Silvergate Bank

16.    Silvergate Bank was one of the Debtors' primary financial institutions and was essential to their day-to-day operations.  It held accounts for North Dimension Inc., Alameda Research Ltd., Alameda Research LLC, Digital Assets DA AG (n/k/a FTX Europe AG), Digital Custody Inc., Liquid Group Inc. (n/k/a FTX Japan Holdings K.K.), Quoine Corporation (n/k/a FTX Japan K.K.), Ledger Holdings Inc., LedgerPrime Digital Asset Opportunities Fund LLC, LedgerPrime Digital Asset Opportunity Master Fund LP, LedgerPrime LLC, Quoine Pte Ltd., West Realm Shires Services Inc. (d/b/a FTX US), and Alameda Research Kabushiki Kaisha.

17.    Given the substantial funds held by Silvergate Bank, and the numerous transactions that moved through it, the Debtors and Committee determined that Bankruptcy Rule 2004 discovery from Silvergate Bank was critical.  On February 27, 2023, the Movants jointly sent document requests to Silvergate Bank, requesting the production of documents under Bankruptcy Rule 2004.  Those document requests are attached hereto as **Exhibit C**.  Given Silvergate Bank's role as one of the principal financial institutions through which the pre-petition Debtors conducted their day-to-day operations and moved assets in and out of their accounts, the information sought by the Requests is highly relevant to the Movants' ongoing investigations.

18.    While Silvergate Bank purported to cooperate, its compliance has been deficient and proceeded at a glacial pace.  To date, Silvergate Bank has produced just 3,934 documents—

---

[7]    SVA produced 841 documents in connection with that hit report on June 30, 2023.

the majority of which were reproductions of documents it had gathered in response to other document requests from third parties.[8]

19.      The Movants have repeatedly asked Silvergate Bank for a usable hit report and an estimate of when it would complete its production.  As of the date of this Motion, these inquiries have been met with piecemeal updates and unfulfilled promises.  While the Movants are sympathetic to the fact that Silvergate Bank is in voluntary liquidation, it has had over four months to collect and produce documents that are critical to the Movants' ongoing investigations.  To prevent the Debtors and Committee from being further hampered by Silvergate Bank's delays, court intervention is necessary to ensure prompt and complete production.

### D.      Evolve Bank

20.      Evolve Bank held a number of accounts for Debtor West Realm Shires Services Inc. (d/b/a FTX US).  Accordingly, on May 2, 2023, the Movants jointly sent document requests to Evolve Bank, requesting an informal production of documents under Bankruptcy Rule 2004.  Those document requests are attached hereto as **Exhibit D**.

21.      On June 9, 2023, Evolve Bank made its first and only production of documents to the Debtors, consisting of merely 1,290 documents.  The Movants understand this production consists entirely of documents previously produced to a third party.  Furthermore, the production does not come close to fully responding to the Movants' Requests.

22.      While the parties began discussing search terms, despite the Movants' repeated inquiries, Evolve Bank has failed to timely progress negotiations.  Indeed, despite having the

---

[8]      Prior to requesting documents under Bankruptcy Rule 2004, in December 2022, the Debtors requested Silvergate Bank and Evolve Bank provide the current balances and historical account information for each account.  Each bank produced a discrete number of documents in response to those December 2022 requests, predominantly consisting of bank statements and wire detail.

Requests for over two months, Evolve Bank has failed to even propose a date by which it might complete its document production.

## RELIEF REQUESTED

23.     Pursuant to section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Rule 2004-1, the Movants seek authorization to serve discovery requests on SVA, Silvergate Bank, and Evolve Bank, including by serving a subpoena with the document requests substantially in the form annexed hereto as **Exhibit B** (SVA), **Exhibit C** (Silvergate Bank), and **Exhibit D** (Evolve Bank).  Pursuant to Bankruptcy Rule 2004, SVA, Silvergate Bank, and Evolve Bank should be directed to produce all documents described in the Requests for examination and copying, with their document productions substantially complete by August 15, 2023.

24.     The Movants further seek authorization to conduct an oral examination of a representative of SVA regarding the services it provided to the Debtors and compensation for those services, documents pertaining to those services and compensation, and the scope, manner, and results of the searches for documents it has purportedly already performed.

## BASIS FOR RELIEF

25.     Under Bankruptcy Code section 105(a), the Court maintains broad equitable powers to fashion an order or decree in aid of the enhancement of the value of the Debtors' estates for the benefit of all stakeholders. 11 U.S.C. § 105(a).  Bankruptcy Rule 2004(a) provides that, "[o]n motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  An examination under Bankruptcy Rule 2004 may be made of any entity with knowledge of "the acts, conduct, or property" or "the liabilities and financial condition of the debtor," "any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge," and "any other matter relevant to the case or to the formulation of a plan."

*See id.* 2004(b); *In re Wash. Mut., Inc.*, 408 B.R. 45, 49–50 (Bankr. D. Del. 2009).   Such examination "allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate."   *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007).

26.     Bankruptcy Rule 2004 has been termed the "basic discovery device used in bankruptcy cases." *In re French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992).   "Rule 2004 necessarily permits a broad investigation into the financial affairs of debtors to assure the proper administration of bankruptcy estates." *In re Symington*, 209 B.R. 678, 683–84 (Bankr. D. Md. 1997).   "Legitimate goals of Rule 2004 examinations include 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Wash. Mut.*, 408 B.R. at 50 (citation omitted).

27.     The scope of a Bankruptcy Rule 2004 examination is indeed "broader than discovery under the Federal Rules of Civil Procedure." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002).   Indeed, courts have recognized that the scope of Bankruptcy Rule 2004 examinations is broad, unfettered, and can legitimately be in the nature of a "fishing expedition." *In re Wash. Mut.*, 408 B.R. at 50 (citation omitted); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016); *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *In re Lev*, 2008 WL 207523, at *3 (Bankr. D.N.J. Jan. 23, 2008).

28.     All of the Rule 2004 Recipients are entities that possess important information necessary to assist the Movants in locating and safeguarding estate assets, as well as investigating the Debtors' pre-petition operations and evaluating claims and causes of action that might be

asserted against third parties.  SVA had unique insight and involvement in the Debtors' accounting

processes, as well as insight into the Debtors' business operations and internal controls.  Silvergate

Bank and Evolve Bank have unique access to information regarding the Debtors' assets and the

movement of those assets between Debtor entities and accounts, to insiders, and to third parties.

The Debtors also believe that Silvergate Bank and Evolve Bank are likely to have unique access

to additional information regarding the comingling of the Debtors' pre-petition funds and the lack

of internal controls at the Debtor entities.  The scope of this requested examination thus falls

squarely within the purpose of Bankruptcy Rule 2004.

29.     The investigation of the Debtors' pre-petition professionals, auditors, accountants,

consultants, and financial institutions is also an important part of the Movants' ongoing

investigative efforts to recover and protect value for stakeholders.  *See In re Corso*, 328 B.R. 375,

383 (E.D.N.Y. 2005) (noting that "[t]he purpose of such a broad discovery tool is to assist the

trustee in revealing the nature and extent of the estate . . . and discovering whether any wrongdoing

has occurred").  The Rule 2004 Recipients' delay in responding to the Movants' Requests, and

refusal to agree to a reasonable scope of production and/or explain the scope and manner of their

search, are inhibiting the Movants' ability to timely protect and recover assets, investigate potential

wrongdoing, and maximize value for stakeholders.  The facts and circumstances outlined above

thus provide substantial grounds and good cause to allow the Movants to pursue the requested

discovery from the Rule 2004 Recipients.

30.     Accordingly, pursuant to Bankruptcy Code section 105(a), Bankruptcy Rule 2004,

and Local Rule 2004-1, the Movants request entry of an order, substantially in the form attached

as **Exhibit A** hereto, authorizing the Movants to serve discovery subpoenas on SVA, Silvergate

Bank, and Evolve Bank, as necessary, for the production of documents, electronically stored

information, or tangible things, including those responsive to the Requests set forth in **Exhibit B** (SVA), **Exhibit C** (Silvergate Bank), and **Exhibit D** (Evolve Bank), and directing that such materials be produced by no later than August 15, 2023, and authorizing the Movants to conduct an oral examination of SVA.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1

31.     The Movants have attempted to engage in a cooperative meet and confer process to obtain information from SVA, Silvergate Bank, and Evolve Bank on a voluntary basis, as described above.  *See supra* ¶¶ 14, 15, 18, 19, 21, and 22.  The Movants have been unable to reach an agreement on the scope of production and/or a deadline for substantial completion of the Rule 2004 Recipients' document productions and submit that any further meet and confer efforts would be futile.  SVA has further refused to meet and confer to discuss its searches.

## NOTICE, NO PRIOR REQUEST, AND RESERVATION OF RIGHTS

32.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) the Rule 2004 Recipients or their counsel, if known; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Movants submit that, in light of the nature of the relief requested, no other or further notice need be provided.

33.     No previous request for the relief sought herein has been made to this Court or any other court.

34.     The Movants reserve their rights to seek further discovery from SVA, Silvergate Bank, and Evolve Bank pursuant to Bankruptcy Rule 2004 or otherwise, including to conduct

witness examinations.   The Movants further reserve their respective rights to seek discovery pursuant to Bankruptcy Rule 2004 with respect to all other parties, as appropriate.

## **<u>CONCLUSION</u>**

WHEREFORE the Movants respectfully request that the Court enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, grant the relief requested herein, and grant such other and further relief as it deems just and proper.

Dated: July 17, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

*Counsel for the Debtors*
*and Debtors-in-Possession*

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

William A. Burck (*pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
williamburck@quinnemanuel.com

Sascha N. Rand (*pro hac vice*)
Katherine A. Lemire (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
saschaard@quinnemanuel.com
katherinelemire@quinnemanuel.com

K. John Shaffer (*pro hac vice*)
Anthony Alden (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
johnshaffer@quinnemanuel.com
anthonyalden@quinnemanuel.com

*Special Counsel to the Debtors*

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mlunn@ycst.com
rpoppiti@ycst.com

-and-

**PAUL HASTINGS LLP**
Kristopher M. Hansen (*pro hac vice*)
Kenneth Pasquale (*pro hac vice*)
Isaac S. Sasson (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
krishansen@paulhastings.com
kenpasquale@paulhastings.com
isaacsasson@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*