# EXHIBIT B

## REQUESTS FOR PRODUCTION OF DOCUMENTS TO SILICON VALLEY ACCOUNTANTS

# REQUESTS FOR PRODUCTION OF DOCUMENTS TO SILICON VALLEY ACCOUNTANTS

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, FTX Trading Ltd., and its affiliated debtors and debtors-in-possession, and the Official Committee of Unsecured Creditors (collectively, the "Movants"), hereby serve the following requests for production of documents or categories of documents (the "Requests") to Silicon Valley Accountants, to be produced to the Movants in accordance with the Definitions and Instructions below.

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the Definitions set forth below.

1. "**Communication**" shall mean the transmission of facts, ideas, thoughts, opinions, data, inquiries, or information, whether orally or in writing or by any other means or medium, Including correspondence, memoranda, reports, presentations, interviews, face-to-face conversations, telephone conversations, text messages, instant messages (Including messages sent using Slack, Teams, Discord, WhatsApp, Signal, or other similar applications), voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, e-mail, and postings of any type.

2. "**Concerning**" shall be understood in its broadest sense and shall mean concerning, constituting, identifying, evidencing, summarizing, commenting upon, referring to, relating to, arising out of, describing, digesting, reporting, listing, analyzing, studying, discussing, stating, setting forth, reflecting, interpreting, recording, including, negating, manifesting, containing, or comprising the subject matter identified.

3. "**Customer Deposits**" shall mean any amounts transferred from FTX customers to any FTX accounts.

4. "**Debtors**" shall refer, collectively, to FTX Trading Ltd. and affiliated debtors and debtors-in-possession, which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing these chapter 11 cases.

5. "**Document**" shall have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, made applicable by Rule 7034 of the Federal Rules of Bankruptcy Procedure, and shall include all originals (both sides thereof), copies (if the originals are not available), non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise), and drafts of the following items, whether printed or recorded (through a sound, video, or other electronic, magnetic, or digital recording system) or reproduced by hand, as well as all materials underlying, supporting, or used in the preparation of such a Document: letters, correspondence, telegrams, telexes, facsimile transmissions, memoranda, records, summaries of personal conversations or interviews, notes, financial or statistical statements or compilations, contracts, agreements, analyses, pictures, films, plans, tape recordings, videotapes, disks, diskettes, websites, e-mail and other electronically transmitted messages, text messages, chat or communicator transmissions, voicemail messages, online chat or instant messages (e.g., Slack, Teams, Discord, WhatsApp, or Signal messages), interoffice Communications, and any other writings, papers, or tangible things of any kind. The term "Document" further includes e-mail and electronic communication whether stored on a personal computer, network computer system, backup computer tape and/or disk, or some other storage mechanism. The term "Document" also includes all Electronically Stored Information.

6. "**Electronically Stored Information**" or "**ESI**" shall have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, made applicable by Rule 7034 of the Federal Rules of Bankruptcy Procedure, and shall include all computer or electronically stored or generated data and information, Including all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" or "ESI" includes information stored in any format and on any storage media, Including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" or "ESI" further includes: word-processing Documents; electronic spreadsheets; electronic presentation Documents; e-mail messages; image files; sound files; and material or information stored in a database, or accessible from a database. "Electronically Stored Information" or "ESI" also includes all associated metadata that is maintained or saved (e.g., author, recipient, file creation date, file modification date, et cetera).

7. "**Engagement Letters**" shall mean (a) the December 6, 2021 engagement letter between You and West Realm Shires Services Inc. d/b/a FTX US, and any addendums, amendments, modifications, or supplementations thereto, (b) the December 6, 2021 engagement letter between You and FTX Trading Ltd., and any addendums, amendments, modifications, or supplementations thereto, and (c) any other Document that governs or memorializes Your retention or engagement by FTX or any of the Insiders.

8. "**FTX**" shall refer, collectively, to the Debtors and to all affiliates of the Debtors, Including those that have not filed voluntary chapter 11 petitions in the United States under the Bankruptcy Code, and any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, officers, employees, agents, representatives, consultants, attorneys, or Persons acting or purporting to act on its behalf. For the avoidance of doubt, "FTX"

shall include West Realm Shires Services Inc. d/b/a FTX US, FTX Trading Ltd., and Alameda Research LLC.

9. "**Including**" shall mean "including, but not limited to" and "including, without limitation." It shall not be construed to limit the scope of any Definition or Request herein.

10. "**Insiders**" shall mean Samuel Bankman-Fried, Zixiao "Gary" Wang, Nishad Singh, Caroline Ellison, Zhe "Constance" Wang, Barbara Fried, Joseph Bankman, and Gabriel Bankman-Fried, and any of their spouses or partners, parents, grandparents, siblings, aunts and uncles, nieces and nephews, or first cousins.

11. "**Person**" shall mean natural persons, proprietorships, corporations, companies, partnerships, trusts, joint ventures, groups, associations, organizations, and all other form of organization or entity, Including governmental bodies and agencies. "Person" shall include that Person and (a) that Person's directors, officers, employees, agents, and representatives; (b) that Person's attorneys, accountants, and advisors (Including investment bankers and public relations or other media consultants); (c) any professional employed or retained by that Person; and (d) all other Persons acting or purporting to act on that Person's behalf.

12. "**You**" shall refer to Silicon Valley Accountants, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, officers, employees, agents, representatives, consultants, attorneys, or Persons acting or purporting to act on its behalf.

13. Whenever used herein: (a) the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular; (b) the masculine shall be deemed to include the feminine, and the feminine shall be deemed to include the masculine; (c) the disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed

to include the disjunctive ("or"); (d) each of the functional words "any," "each," "every," and "all" shall be deemed to include each of the others; and (e) the past tense shall include the present tense and vice versa.

## INSTRUCTIONS

1. These Definitions and Instructions shall apply in interpreting the scope of the Definitions and Instructions as well as the individual Requests below.

2. Unless otherwise specified, each Request herein seeks all responsive Documents without any limitation with respect to date.

3. Please respond separately and fully to each Request and produce all Documents responsive to the Requests that are within Your possession, custody, or control; in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf; or otherwise available to You.

4. If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify: (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information, or belief You have concerning the unanswered portion of any such Request(s).

5. If there are no Documents responsive to any particular Request, please state so in writing.

6. A Request for a Document shall be deemed to include a Request for the original and final versions of the Document, all drafts, alterations, modifications, changes and amendments thereto, as well as all non-identical copies or drafts of such Documents, Including any copy bearing

non-identical markings or notations of any kind, as well as all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document.

7. You shall produce all Documents in the manner in which they are maintained in the usual course of Your business or You shall organize and label the Documents to correspond with the categories in this Request. Documents contained in file folders, loose-leaf binders, and notebooks with tabs or labels are to be produced in a manner that duplicates such labels, markings, or organizational tools and that replicates the manner in which the Documents are or were maintained. Documents attached to each other should not be separated.

8. Each Request herein should be construed independently and not with reference to any other Request for the purpose of limitation.

9. The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

10. All Documents and Electronically Stored Information shall be produced with all available metadata.

11. If You contend that any information requested is privileged or otherwise immune from discovery, or if any Document is withheld from production based on a claim of privilege, immunity, or other ground, please furnish a log specifying: (a) the nature of the privilege being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state or foreign law, the specific state or foreign privilege rule being invoked; and (b) unless divulgence of such information would cause disclosure of the allegedly privileged information, (i) the type of Document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document for a subpoena duces tecum, Including, where appropriate, the author of the Document, the addressee of the

Document, and, where not apparent, the relationship of the author to the addressee, and the names of all entities that received a copy of the Document.

12. If a portion of an otherwise responsive Document contains information subject to a claim of privilege or protection, only that portion of the Document subject to such claim shall be redacted from the Document and the rest shall be produced.

13. In the event any Document responsive to any Request has been lost, discarded, or destroyed, that Document is to be identified by stating as completely as possible: (a) the authors or creators of the Document; (b) all Persons who received copies of the Document, Including the Document's indicated and blind copy recipients; (c) the custodian of the Document; (d) the date of the Document; (e) the type of Document (e.g., memorandum, letter, report, e-mail, Signal message); (f) the Document's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard; and (g) the Persons authorizing and carrying out such destruction or discarding of the Document.

14. If You claim any ambiguity in interpreting a Request, Definition, or Instruction, You should not use that claim as a basis for refusing to respond, but shall set forth as part of Your response the language deemed to be ambiguous, and shall comply with any portion of the Request that You do not contend is ambiguous.

15. Each Request shall be deemed to be continuing in nature. If at any time additional Documents come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

16. All discovery in connection with these Requests shall be subject to and conducted in accordance with the terms of any protective or confidentiality orders entered by the Court.

17. These Requests are provided without prejudice to, or waiver of, the Movants' right to conduct further discovery.

**DOCUMENT REQUESTS**

1. All Documents and Communications Concerning Your retention or engagement by FTX or any of the Insiders, Including all Engagement Letters and any other executed engagement letters or agreements, employment contracts, consultancy agreements, and statements of work; drafts of such letters, agreements, contracts, and statements of work; Communications Concerning such letters, agreements, contracts, and statements of work; and all other Documents and Communications defining the scope of Your work for FTX and the Insiders, Including all statements of work.

2. All Documents and Communications Concerning any instructions, assumptions, and representations provided to You by FTX, the Insiders, or their advisors or representatives, Including any management representation letters provided to You by FTX or the Insiders.

3. All Documents and Communications exchanged with any Person at, or affiliated with, FTX or the Insiders.

4. All Documents and Communications Concerning any "consulting, maintenance and support services, project management and related services" performed by You for FTX or the Insiders.

5. All bills and invoices submitted by You to FTX, the Insiders, and any other entities affiliated with FTX, Including itemized descriptions of work done.

6. Documents sufficient to show every payment or other exchange in value (in any form, Including digital assets, real estate, fiat currency, or other assets) by FTX or the Insiders, the

amount of the payment, the date of the payment, the payee, the payor, and the bill or invoice corresponding to such payment or exchange in value.

7. All Documents Concerning FTX's or the Insiders' business operations, investments, and financial performance.

8. All Documents and Communications Concerning any audit known to You or performed by You for FTX or the Insiders, Including all Documents provided by FTX and the Insiders to You for purposes of performing any audit.

9. All Documents and Communications Concerning internal controls, or the lack of internal controls, at FTX.

10. All Documents and Communications Concerning the corporate structure, corporate governance policies or practices, corporate formalities, and appointment and removal of officers and directors of FTX.

11. All Documents and Communications Concerning any transfer of assets or incurring of liabilities through or among FTX, or between FTX and the Insiders, Including internal processes, policies, and procedures Concerning such transfers.

12. All Documents and Communications Concerning any transfer of assets or incurring of liabilities through or among any related parties to FTX and the Insiders, or between related parties to FTX and the Insiders, Including internal processes, policies, and procedures Concerning such transfers.

13. All Documents and Communications Concerning the treatment of Customer Deposits by FTX or the Insiders.

14. All Documents and Communications Concerning any potential or actual related party transactions involving FTX or the Insiders.

15. All Documents and Communications Concerning FTX's risk management and automated liquidation systems, Including all processes, policies, and procedures Concerning FTX's risk management and automated liquidation systems and how they applied or did not apply to each FTX entity.

16. All Documents and Communications Concerning any bank accounts, depository accounts, payment process service accounts, brokerage accounts, or cryptocurrency exchange accounts owned, controlled by, or used by anyone working on behalf of, or held in the name of or for the benefit of, FTX or the Insiders.

17. All Documents provided by You to FTX or the Insiders, and all drafts of such Documents, Including all working papers prepared for FTX or the Insiders.

18. All Documents and Communications Concerning FTX's ability to continue as a going concern and Documents supporting any determinations Concerning FTX's ability to continue as a going concern.

19. All Documents and Communications exchanged with customers, creditors, and financial institutions of FTX, or with the Insiders, Concerning Your engagement by FTX or the Insiders.

20. All Documents and Communications Concerning any irregularity or malfeasance at FTX or with respect to any of the Insiders.

21. All Documents and Communications Concerning any principle, term of service, or agreement, relating to FTX Customer Deposits.

22. All Documents sufficient to identify any third-party service providers used in connection with Your engagement by FTX or the Insiders and the scope of work by such third-party service providers.

23. All Documents and Communications exchanged with any third-party service providers used in connection with Your engagement by FTX or the Insiders.

24. All Documents and Communications Concerning the relationship between the FTX entities with which You were engaged and Your assessment of any potential conflicts of interest in connection with an actual or potential engagement with such FTX entities.

25. All Documents and Communications Concerning the Foundational Close Optimization referenced in Addendum B to the Engagement Letters, Including Documents sufficient to identify all participants for each FTX entity; Documents sufficient to identify the Close Champion for each FTX entity; and Documents sufficient to identify the consultants who participated in the Foundational Close Optimization on Your behalf.

26. All Documents and Communications Concerning Your "document[ation] and capture [of] additional processes such as financial reporting, audit PBCs and Key Controls," as referenced in Addendum B to the Engagement Letters.

27. All "financial close binders, checklists, and other applicable documentation," and any other Documents and Communications, provided to You by FTX or the Insiders Concerning the Foundational Close Optimization referenced in the Engagement Letters.

28. All Documents and Communications Concerning any meetings or discussions between You, on the one hand, and FTX, any of the Insiders, or any representatives of FTX or the Insiders, on the other hand, Concerning Your engagement by FTX or any work performed by You for FTX.

29. All Documents and Communications You have produced to any governmental body or agency Concerning any investigation of FTX or the Insiders.

11

30. All Documents and Communications You have produced to any party in connection with the above-captioned chapter 11 cases.

31. All of Your insurance policies from January 1, 2021 to the present.