**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date: August 2, 2023 at 10:00 a.m. (ET)**<br>**Objection Deadline: July 26, 2023 at 4:00 p.m. (ET)** |

**MOTION OF TERRAFORM LABS PTE LTD. FOR LEAVE TO SERVE**
**RULE 45 DOCUMENT SUBPOENAS ON DEBTORS**

Terraform Labs PTE Ltd. ("TFL") respectfully moves this Court for an order permitting TFL to serve FTX Trading Ltd. and West Realm Shires Services Inc. d/b/a FTX US (collectively, the "Debtors") each with subpoenas under Rule 45 of the Federal Rules of Civil Procedure ("FRCP 45"). TFL seeks limited document discovery on unrelated claims that do not affect Debtors. In support of this Motion, TFL submits Chris Amani's Declaration as **Exhibit A** ("Amani Decl."). TFL asks this Court to enter the Order substantially in the form attached to the Motion as **Exhibit B**, either confirming that the automatic stay permits TFL's proposed limited discovery or modifying the stay so that TFL can effectuate such discovery through the New York court, without any delay.

**PRELIMINARY STATEMENT**

1.     On April 3, 2023, the U.S. Securities and Exchange Commission ("SEC") filed an amended complaint against TFL and one of its co-founders in the United States District Court for the Southern District of New York ("SEC Action"). The SEC Action is unrelated to the Debtors:

---

[1] The last four digits of FTX Trading Ltd. and West Realm Shires Services Inc. d/b/a FTX US's respective tax identification numbers are 3288 and 4002. A complete list of the numerous Debtors in these Chapter 11 cases, and their federal tax identification numbers, is available at https://cases.ra.kroll.com/FTX. Debtor Emergent Fidelity Technologies Ltd.'s principal place of business is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

23014973

no Debtor is a defendant and it does not affect any Debtor.

2. One of the SEC's claims alleges that TFL falsely represented the ability of the algorithmic "mint/burn" mechanism utilized by the UST stablecoin, one of the cryptocurrencies developed by TFL, to withstand market forces in the event of a depeg, which led to the depeg of UST from its price peg in May 2021 and May 2022. Specifically, the SEC alleges that after the market price of UST declined from its peg of one U.S. Dollar in May 2021 and then recovered shortly thereafter, Defendants misrepresented UST's recovery by claiming that the algorithm was able to restore and maintain the price peg. According to the SEC, UST instead recovered its price peg because Defendants entered an arrangement with a U.S. trading firm, Jump Trading LLC ("Jump"), to purchase substantial amounts of UST to support the price. TFL disputes these allegations.

3. The SEC also contends that the actions it alleges that Defendants took led to a $40 billion loss in market capital, including devastating losses for U.S. retail and institutional investors. Amani Decl. ¶ 1. TFL contends that a coordinated "short" attack by third parties caused the May 2022 depeg. Large UST holder(s) executed the short via multiple exchanges, wallets/accounts, and assets, including swapping Terra-native assets (UST, LUNA, MIR, mAssets, and ANC) for non-native assets (BTC, USDT, USDC, etc.). The attack catalyzed massive asset withdrawals from protocol(s) developed by TFL, and flooded FTX and other markets with sell/offer orders.

4. To establish these defenses, TFL needs Debtors' records about wallets, accounts, and assets used to transact on the FTX International and US exchanges and sales/offers of large volumes of cryptocurrencies developed by TFL, if any, by FTX Trading and West Realm Shires Services Inc. d/b/a FTX US. This evidence is in the Debtors' possession, custody, and/or control. TFL seeks information from the centralized FTX International and US Exchanges about wallets

used by Jump Trading LLC to trade UST or LUNA on these exchanges from May 1 to May 31, 2021 and May 1 to May 31, 2022; wallets and trading accounts used to deposit/transfer/trade assets used by short sellers from March 1 to May 31, 2022; other wallets and trading accounts that could have been used by these or other short sellers; their balances/holdings; and identities of owners/controllers for the period between January 1, 2018 to the present ("Subpoena Period") (the "Proposed Limited Discovery"), which can be produced subject to the Protective Order entered in the SEC Action (attached to this Motion as **Exhibit C**). Amani Decl. ¶ 14.

5.      While TFL believes service of its proposed Limited Discovery under narrowly tailored FRCP 45 subpoenas issued in connection with the SEC Action on the Debtors would not violate the automatic stay under 11 U.S.C. § 362(a), TFL seeks authorization and confirmation from this Court that TFL may serve such discovery. In the alternative, TFL has "cause" for this Court to provide limited relief from the automatic stay for TFL to serve such discovery. TFL can *only* obtain this information—which is proprietary to Debtors—via FRCP 45 subpoenas on Debtors, and it is vital to TFL's defense. Without such discovery, TFL will be substantially and irreparably harmed.

6.      Should this Court grant the motion, TFL also asks such Order take effect immediately. Expedience is crucial: trial is expected after November 30, 2023, and the New York court with the pending SEC Action will need time to issue the FRCP 45 subpoena(s) to Debtors.

**JURISDICTION & VENUE**

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the February 29, 2012, Amended Standing Order of Reference from the U.S. District Court for the District of Delaware. This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

8.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedures of the U.S. Bankruptcy Court for the District of Delaware, TFL consents to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the U.S. Constitution.

10. The statutory predicate for the relief requested is section 362(d)(1) of the Bankruptcy Code.

## BACKGROUND

11. Terraform Labs PTE ("TFL") is a Singaporean open-source software development firm, founded to address the interference of price volatility of cryptocurrencies with the ability to use cryptocurrencies as a medium of exchange. Amani Decl. ¶ 3. In 2018, TFL developed a novel approach to this problem by creating the Terra protocol, a decentralized and open-source public blockchain protocol for algorithmic stablecoins. *Id.* Unlike the Debtors, TFL did not operate a market or have customers or customer funds. *Id.*

12. The Terra protocol relied upon a dual native cryptocurrency token system: a stablecoin TerraUSD ("UST") and a companion non-stablecoin LUNA. UST and LUNA were designed to maintain a stable price peg—targeting a 1:1 exchange rate—to the US dollar or other fiat currency. *Id.* ¶ 4. LUNA operated as a stabilization mechanism to maintain the 1:1 UST price peg for UST by minting and burning tokens. *Id.* TFL also developed two protocols, the Mirror Protocol, which created synthetic assets (Mirrored Assets or "mAssets") to provide exposure to assets with publicly available price feeds without holding the underlying assets; and Anchor Protocol ("ANC"), a borrowing and saving protocol. *Id.*

13. Kwon Do-Hyung ("Do Kwon") co-founded TFL in December 2018 and was

initially the CEO of TFL. Mr. Kwon has departed TFL, and since his departure, Chris Amani became the CEO. *Id.* ¶ 1.

14. In May 2021, the SEC issued a formal order of investigation commencing an investigation into potential securities registration issues relating to the Mirror Protocol. In May 2021, the market price of UST declined from its peg to the US dollar (a "de-pegging"), but later recovered its peg. *Id.* ¶ 5.

15. Between May 1 through May 31, 2021, the market price of UST declined from its peg of one United States Dollar but later recovered. *Id.* ¶ 5. Although the SEC alleges that Defendants misrepresented UST's recovery in May 2021 by claiming that the algorithm was able to restore and maintain the price peg; when—according to the SEC—it instead recovered because Defendants entered an arrangement with Jump to purchase substantial amounts of UST to support the price, TFL contends that trades of UST by Jump was not the cause for the restoration of the peg in 2021. *Id.* ¶ 5.

16. Between March 1, 2022, through May 31, 2022, short sellers likely used the Debtors' FTX platform to purchase options and to conduct purchases, sales and related trades of TFL's cryptocurrencies and other cryptocurrencies to prepare for and use throughout the short attack. *Id.* ¶ 6. Publicly available order book information shows that sellers used FTX accounts to submit massive sell orders on May 7, 2022 just after 10:00 am UTC at the beginning of the short attack and for the next few days of the attack. *Id.* Publicly available blockchain data also shows that wallets identified as involved in the attack transferred the proceeds of their sales of UST to FTX exchange deposit wallets. *Id.*

17. In May 2022, there was a demonstrably large wave of UST sales, i.e., "a run" on the Anchor protocol, executed by large UST holder(s) via multiple exchanges, wallets/accounts,

and assets, including Terra-native tokens (UST, LUNA, MIR, mAssets, and ANC) and non-native tokens (BTC, USDT, USDC, etc).

    a. On May 7, 2022, unknown large UST holders started a flood of "sell orders" for UST, resulting in withdrawals of over $2 billion worth of UST from the Anchor Protocol. Hundreds of millions of dollars of UST were quickly liquidated, decreasing the UST price slightly below its peg. As other UST holders monitored the blockchain, they withdrew their Anchor holdings and/or quickly redeemed their UST for Luna, creating an explosion in the supply of Luna. The sudden increase in UST sell orders made it more difficult to match them with corresponding "buy" orders, which created more downward price pressure on UST, causing it to depeg.

    b. On May 9, 2022, the rate of Anchor withdrawals intensified as the market capitalization of LUNA became equal to the outstanding UST supply. The value of UST dropped to $0.75.

    c. By the end of May 13, Anchor had fewer than 2 billion UST remaining, and the value of UST had declined to below $0.2. Although LFG and TFL expended billions of US dollars attempting to defend the UST peg, the sell pressure overwhelmed the resources available to defend the peg and both coins lost the majority of their values.

Amani Decl. ¶¶ 7–10.

18. On November 11, 2022 (the "Petition Dates"), each of the Debtors filed with the Court a voluntary petition for relief under 11 U.S. Code Chapter 11 (the "Bankruptcy Code"). Amani Decl. ¶ 11. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Amani Decl. ¶ 11.

19. On February 16, 2023, the SEC commenced a lawsuit against TFL and Mr. Kwon in the U.S. District Court for the Southern District of New York, captioned *Securities and Exchange Commission v. Terraform Labs Pte. Ltd. And Do Hyeong Kwon*, Civ. No. 1:23-cv-01346-JSR (S.D.N.Y.) (the "SEC Action"). Amani Decl. ¶ 12.

20. The SEC Action complaint alleges that between April 2018 through May 2022, TFL and Mr. Kwon offered and sold what the SEC calls an inter-connected suite of "crypto asset securities" in violation of the U.S. Securities Act and the Exchange Act. The SEC asserts, *inter alia*, that losses that may have happened during the May 2022 depeg are the result of fraud by TFL and Mr. Kwon. However, TFL intends to assert the defense that the depeg was due to an intervening causal event—the short—such that neither TFL nor Mr. Kwon may be held liable. Amani Decl. ¶ 13.

21. No Debtor is a party to the SEC Action and no claim is being asserted against any Debtor in the SEC Action. Amani Decl. ¶ 12.

22. To effectively defend itself against the SEC Action, TFL requires certain narrow categories of suspected short-selling activity, including specific account, wallets, and the identity of their controllers over the Subpoena Time Period, which are records in the Debtors possession. These records are crucial to TFL's defense in the SEC Action—for example, for TFL's experts to perform crucial blockchain analysis of the short-sellers' trading and market activity to combat the SEC's allegations, among other things. TFL seeks to discover these narrow records solely as they pertain to TFL's claims and defenses of TFL. Amani Decl. ¶ 14.

**RELIEF REQUESTED**

23. Since no Debtor is a defendant in the SEC Action and no claims are asserted in the SEC Action against any Debtor, TFL submits that TFL's proposed service of limited discovery—

narrowly-tailored FRCP 45 subpoenas—on the Debtors does not run afoul of the automatic stay under section 362(a) of the Bankruptcy Code. Out of an abundance of caution, TFL seeks entry of an order authorizing TFL to effectuate its Proposed Limited Discovery and confirming that such action does not violate the automatic stay, or in the alternative, granting TFL limited relief from the automatic stay solely to the extent necessary for TFL to effectuate such discovery. TFL also asks that any such order take effect immediately.

## BASIS FOR RELIEF

### I. TFL's Requested Action Does Not Violate the Automatic Stay Under Section 362(a) of the Bankruptcy Code

24. Bankruptcy Procedure Rule 9016 provides that FRCP 45 applies to bankruptcy proceedings. "Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only *against* a 'debtor.'" *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) (citation omitted) (emphasis added). Additionally, "it is well accepted that the automatic stay does not prevent discovery aimed at a debtor as long as the discovery pertain[s] to claims and defenses of a non-debtor party." *In re Irwin*, 457 B.R. 413, 426, n.26 (Bankr. E.D. Pa. 2011) (citation omitted); *see also In re Hillsborough Holdings Corp.*, 130 B.R. 603, 605 (Bankr. M.D. Fla. 1991) (holding automatic stay did not prevent discovery aimed at debtor as long as the discovery pertained to claims and defenses of a non-debtor party); *see also, e.g., Groner v. Miller (In re Miller)*, 262 B.R. 499, 503 (9th Cir. BAP 2001) (holding automatic stay did not prevent subpoenas to debtor for discovery on claims against non-debtors that were not stayed, even if the information to be elicited from the debtor may later be used against the debtor); *Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, 2004 WL 2973822, at *3 (N.D. Ill. Nov. 30, 2004) (citing *id.*) ("[I]t is clear that plaintiff would be entitled to serve and proceed with discovery against [the debtor], even if [the debtor] were a defendant in this action, provided

8

the discovery is directed towards the claims against [non-debtor] defendants. . . .").

25. As explained herein, no Debtor entity is a named defendant in the SEC Action and no claims are asserted against any Debtor in the SEC Action—not a single paragraph of the Amended Complaint in SEC Action mentions Debtors or their jointly administered affiliates. TFL requires certain limited discovery from the Debtors solely as it "pertain[s] to claims and defenses of a non-debtor party[, TFL]." *In re Irwin*, 457 B.R. 413 at 426. The limited and narrow proposed discovery will place virtually no burden upon the Debtors and will not interfere in any respect with their ability to rehabilitate under chapter 11. As such, the relief requested herein does not run afoul of section 362(a) of the Bankruptcy Code, and TFL respectfully submits that it is appropriate for the Court to enter an order authorizing TFL to effectuate its Proposed Limited Discovery by serving the Debtors with narrow FRCP 45 subpoenas relating to the SEC Action and confirming such action does not violate the automatic stay.

II. **Even if the Automatic Stay Extends to TFL's Proposed Limited Discovery, Cause Exists for Limited Relief from the Automatic Stay to Effectuate the Proposed Limited Discovery**

26. Section 362(d)(1) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause." In a determination of "cause," the moving party bears the initial burden to establish a *prima facie* case for which the party opposing the relief must then rebut. *Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

27. "Cause" is not defined in the Bankruptcy Code. "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citations omitted). The automatic stay "is not meant to be absolute, and in appropriate instances relief may be granted." *Id.* The Third Circuit has

9

instructed courts to use "wide latitude" in determining whether to grant relief from stay. *In re Myers*, 491 F.3d 120, 129-30 (3d Cir. 2007). "The purpose of the automatic stay is to maintain the status quo that exists at the time of the debtor's bankruptcy filing." *Pardo v. Nylcare Health Plans, Inc. (In re APF Co.)*, 274 B.R. 408, 417 (Bankr. D. Del. 2001) (citation omitted).

28.     "Because results are dictated by the unique facts of a particular case, there are generally no precise standards to apply [when evaluating whether cause exists to grant relief from the automatic stay]." *The Buncher Co. v. Flabeg Solar US Corporation (In re Flabeg Solar US Corp.)*, 499 B.R. 475, 482-83 (Bankr. W.D. Pa. 2013) (citation omitted). "Among the relevant factors, courts consider the interests of the debtor, creditors, and parties in interest as well as the underlying policies of the Bankruptcy Code." *Id*. at 483.

29.     Notably, this Court recently granted a Motion of Pyth Data Association for relief from the automatic stay so that the Association and the rest of its community could continue developing the public blockchain-based software for the Pyth Protocol and Network. *See* ECF No. 1693 (June 23, 2023). As explained below, the relief sought here by TFL is far more urgent and limited in its nature.

30.     TFL submits that "cause" within the meaning of section 362(d) of the Bankruptcy Code exists to lift the automatic stay to allow TFL to serve and conduct its Proposed Limited Discovery of the Debtors. The Proposed Limited Discovery is crucial to TFL's defense of the SEC Action, and TFL would suffer substantial and potentially irreparable harm if denied the ability to seek such discovery. Debtors possess specific information concerning the suspected short sellers' wallet activity, trading activity, and accounts during the Subpoena Period, in addition to other information relevant to the short. This day-to-day wallet and trading activity is directly relevant to the SEC's allegations about TFL's operations over the same time period and TFL's defense

thereof. TFL seeks affirmative pre-petition relief: FTX did not file for bankruptcy until November 2022, months after TFL's May 2022 depeg. TFL can and should be able to obtain them from Debtors, who should have held and maintained these records during the ordinary course of its business. TFL cannot obtain this information in any other way. Amani Decl. ¶ 15.

31. TFL would suffer extreme prejudice absent such discovery, whereas the Proposed Limited Discovery would *not* prejudice the Debtors, creditors, or any other party in interest. The proposed discovery is narrow in scope: TFL only seeks specific and relevant records over a limited time period relevant to the SEC Action. All of these records are in the Debtors' possession. The continuation of litigation in the Southern District of New York likewise would not prejudice any party in interest: the Debtors are not parties to the SEC Action, and the underlying policies of the Bankruptcy Code would be promoted by the relief sought herein as the Proposed Limited Discovery would only serve to "maintain the status quo that exists at the time of the debtor's bankruptcy filing." *Pardo*, 274 B.R. at 417.

### III.   After the Entry of any Order Granting this Motion, TFL Should be Permitted to Serve its Proposed Discovery Immediately

32. Should this Court grant the Motion, TFL respectfully asks that this Court waive the optional fourteen-day stay period, as it benefits no party and only prejudices TFL. TFL requires expedient action on its Proposed Limited Discovery in order to effectively defend against the SEC Action, especially since trial is anticipated for shortly after Nov. 30, 2023. *See Order Granting Motion of Pyth Data Association for Relief from the Automatic Stay,* ECF No. 1693 (June 23, 2023) (granting relief effective upon entry and waiving 14-day stay under Rule 4001(h)).

33. Federal Rule of Bankruptcy Procedure 4001(a)(3) provides "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." However,

Rule 4001(a)(3) is only a default rule, which can be modified if the Court orders otherwise. *Id*. TFL respectfully submits that this optional fourteen-day stay period serves no relevant purpose here and should be waived in any order granting relief from the automatic stay, so that any order granting relief from the automatic stay be effective immediately upon entry.

### Notice

34.     Notice of this Motion will be provided to: (i) the Debtors; (ii) the Official Committee of Unsecured Creditors; (iii) U.S. Trustee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Department of Justice; (vii) the United States Attorney for the District of Delaware; and (viii) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, TFL submits no further notice is required.

### CONCLUSION

WHEREFORE, TFL respectfully requests entry of an Order, substantially in the form attached as **Exhibit C**, (i) authorizing TFL to effectuate its Proposed Limited Discovery and confirming that such action does not violate the automatic stay, or in the alternative (ii) granting TFL limited relief from the automatic stay solely to the extent necessary for TFL to effectuate such Proposed Limited Discovery; (iii) waiving the optional fourteen-day stay period after any such Order is entered; and (iv) granting such other relief as is just and equitable under the circumstances.

[*Signature block on following page.*]

Date: July 19, 2023          **BENESCH, FRIEDLANDER,**
                                               **COPLAN & ARONOFF LLP**

                                    */s/ Daniel N. Brogan*
                               Jennifer R. Hoover (DE No. 5111)
                               Kevin M. Capuzzi (DE No. 5462)
                               Daniel N. Brogan (DE No. 5723)
                               1313 North Market Street, Suite 1201
                               Wilmington, DE 19801
                               Telephone: (302) 442-7010
                               Facsimile:  (302) 442-7012
                               E-mail:   jhoover@beneschlaw.com
                                                 kcapuzzi@beneschlaw.com
                                                 dbrogan@beneschlaw.com

                               -and-

                               **DENTONS US LLP**
                               Mark G. Califano (*pro hac vice* forthcoming)
                               Matthew A. Lafferman (*pro hac vice* forthcoming)
                               1900 K Street, NW
                               Washington, DC 20006-1102
                               Tel: (202) 496-7500
                               E-mail:   mark.califano@dentons.com
                                                 matthew.lafferman@dentons.com

                               Of Counsel:

                               Douglas W. Henkin (*pro hac vice* forthcoming)
                               David L. Kornblau (*pro hac vice* forthcoming)
                               1221 Avenue of the Americas
                               New York, New York 10020
                               Tel: (212) 768-6700
                               E-mail:   douglas.henkin@dentons.com
                                                 david.kornblau@dentons.com

                               *Counsel to Terraform Labs, PTE Ltd.*