## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref. No. 1874 |
| | Hearing Date: August 2, 2023 at 10:00 a.m. (ET) |
| | Obj. Deadline: July 26, 2023 at 4:00 p.m. (ET) |

**OBJECTION OF EVOLVE BANK & TRUST TO JOINT OMNIBUS MOTION OF DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 FOR AN ORDER AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR DISCOVERY FROM SILICON VALLEY ACCOUNTANTS, SILVERGATE BANK, AND EVOLVE BANK & TRUST**

Evolve Bank & Trust, an Arkansas banking corporation with principal offices located in Memphis, Tennessee ("Evolve"), objects to the motion filed by FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee" and, collectively with the Debtors, the "Movants") for entry of an order authorizing, among other things, the issuance of a subpoena to Evolve (the "Motion") (Doc. No. 1874).

**Preliminary Statement**

1.  Evolve is, by the standards of this case, a small player with a limited relationship with the Debtors. As of the Petition Date, one of the Debtors, West Realm Shire Services, Inc.,

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

maintained four bank accounts at Evolve, three of which were for the benefit of that Debtor's customers, and one of which was a small operating account. To date, the facts regarding the accounts have not been the subject of any material dispute. The FBO accounts were frozen, first by agreement between Evolve and the Debtors and ultimately by agreed language inserted in the Final Cash Management Order (Doc. No. 488). The aggregate balance in all four accounts at the Petition Date was approximately $13.2 million. The total deposits to the four accounts received directly from the Debtors (as opposed to deposits from the Debtors' customers or end users, and excluding transfers between Evolve accounts) was approximately $13.0 million, $8.0 million of which was deposited on January 3, 2022 to originally fund two of the accounts. So far as Evolve is aware, no deposit into the primary end user account ever came from the Debtors; all deposits into that account came from end users. The four accounts at Evolve are exclusively fiat currency accounts denominated in U.S. dollars.

2.      Long before being contacted by counsel on the Motion, Evolve was cooperating with the Debtors, their lead counsel and other professionals to provide information and access to the accounts. Certain information and documents regarding the accounts were included in a pleading Evolve filed barely ten days into the case, on November 22, 2022 (Doc. No. 105). Evolve voluntarily produced documents to the Debtors, including all account statements and other account-related documents, on January 26, 2023, March 1, 2023, March 10, 2023, and April 3, 2023. Included in the last such production was information on the identity of the institution the Debtors should contact to track down an FTX Philanthropy account that the Debtors had mistakenly identified as being held by Evolve. Also, since February 2023, Mary Cilia, the chief financial officer appointed by John Ray III, has had real time access to account information for all the Debtors' accounts at Evolve. None of this cooperation is apparent from reading the Motion.

3.  Indeed, the Motion belittles Evolve's production to moving counsel on June 7, 2023, as consisting of "merely" 1,290 documents. The June 7 production included all account documentation, applications, and signature cards for any account where a signatory was Samuel Bankman-Fried, Caroline Ellison, Zixiao (Gary) Wang, Nishad Singh, Gabriel Bankman-Fried or Ramnik Arora or any of 147 other entities which are either debtors or affiliates of debtors in the FTX cases. It also included approximately 5,000 pages of email correspondence either sent to or received from persons with email addresses containing the FTX domain—all of the email correspondence between Evolve and the FTX domain.

4.  Evolve does not object to the general proposition that the Movants may obtain pursuant to Bankruptcy Rule 2004 information that Evolve may have related to the assets and liabilities of the Debtors. Efforts to provide such information were well underway when the Motion was filed. Production to date has been summarized above. Efforts to provide documents in response to certain other requests, although underway, will require time for review and completion of production. Other of the Movants' requests are clearly objectionable. Certain requests are simply overly-broad, but many others cannot be fairly read to request information within the scope of Rule 2004—they seek information, but not information related to the assets and liabilities of the Debtors. To date, Movants have not agreed to narrow the requests, and they appear to want the Court to do so for them. *See, e.g.*, Motion at ¶ 2, n.3 ("A court order appears necessary to obtain full agreement on scope and a timely production of documents from [Evolve].").

5.  Evolve has read the Movant's Certificate of Conference pursuant to Local Bankruptcy Rule 2004-1(b) and Movants' statement therein that "any further meet and confer efforts would be futile." Motion at ¶ 31. To be clear, the determination of futility is unilateral on

the part of the Movants.  For example, Movants complain that Evolve has failed to "timely progress negotiations" regarding search terms.  *See* Motion at ¶ 22.  Movants delivered to Evolve a list of 150 search terms that Movants unconditionally request Evolve use, and another 40 search terms to be used if certain functionality parameters are not included in the search.  Evolve lodged a limited objection to 13 of the 150 search terms in the unconditional list.  The parties have not reached agreement on those terms, but wherein lies the futility?  It is no less true that to date, Movants have declined to narrow their overly broad and objectionable requests included in Exhibit D to the Motion.  Nevertheless, Evolve would not have characterized further attempts to meet and confer as futile.  But perhaps Evolve underestimates the intransigence of the Movants.

6. Movants' biggest complaint actually appears to be dissatisfaction with the pace of production to date, a situation exacerbated by Evolve's relatively small size and the pressures it faces in the current environment.

7. Evolve submits that the proper disposition of the Motion is to deny it, and that the Court should order the parties to attempt to narrow the issues.  However, in the event the Court is inclined to rule on the propriety of the requests contained in the Motion, Evolve's specific objections are set forth below.

**General Objections**

8. The Motion is procedurally defective.  Styled as a motion pursuant to Bankruptcy Rule 2004, the Motion is substantively a motion to compel production of documents.  The Motion does not simply seek authorization to proceed under Rule 2004, it is instead a preemptive motion to compel production, prior to a formal Rule 2004 order, prior to the issuance of a subpoena pursuant to Rule 2004(c), and prior to any effort by Evolve to avail itself, if appropriate, of the

4

protections afforded to a recipient of a subpoena by Bankruptcy Rule 9106 and Rule 45, Fed. R. Civ. P. Due to the procedural infirmities alone, the Motion should be denied.

9.      The Motion also appears to be a request pursuant to Bankruptcy Rule 9006(c)(1) that the Court in its discretion shorten the time to comply with the subpoena, when and if issued. Should the Court be inclined to entertain the Motion and order the issuance of a subpoena, Evolve submits that the time for production should not be shortened.  Assuming that the Court grants Evolve's specific objection described below, Evolve further submits, pursuant to Fed. R. Civ. P. 45(d)(3)(A)(i), that a reasonable time to comply with appropriately narrowed document requests would be sixty days from the date of service of a subpoena.

10.     In the event that the Court grants the Motion and authorizes issuance of a subpoena, Evolve reserves all rights pursuant to Bankruptcy Rule 9016 and Fed. R. Civ. P. 45.

## Specific Objections

11.     As stated above, Evolve does not object to the general proposition that it should provide information to the Debtors and the Movants consistent with Rule 2004, and it has been doing so largely voluntarily since the Petition Date.  However, with respect to certain of the requests contained in Exhibit D to the Motion, the specific requests are so vague or overly broad that Evolve cannot reasonably be expected to have the information required to respond to the request.  Examples include, but are not limited to, the following:

  a.     In request number 5, Movants seek all Documents and Communications exchanged with any Person at or affiliated with the FTX Group or the Insiders.  Evolve does not have a list of such individuals.  Despite having provided certain search terms, Movants have not narrowed this request.

  b.     Moreover, Insiders is defined as nine named individuals "and their agents, and any of their spouses or partners, parents, grandparents, siblings, aunts and uncles, nieces and nephews, or first cousins."  Evolve cannot reasonably be expected to know the identity of this broad category of people.  To date, Movants have not narrowed this request.

      c.      Similarly, the definition of Person begins with a version of a standard definition to broadly include most organization forms, but then adds to the definition, "that Person's directors, officers, employees, agents, representatives, . . .attorneys, accountants, advisors," etc.  To date, Movants have not narrowed this request.

      d.      In request number 6, Evolve is unable to identify "anyone working on behalf of" the FTX Group or the Insiders.  Moreover, Evolve submits that the extensive search for accounts described in paragraph 2 above has already resulted in Evolve delivering to the Debtors information on any account at Evolve in which the Debtors might assert an interest.  Nevertheless, to date the Movants have not narrowed this request.

12.      Other requests contained in Exhibit D clearly fall outside the scope of Rule 2004 in that they are not seeking information that relate to the assets or liabilities of the Debtors. Evolve objects to all such requests, including but not limited to;

      a.      Requests 12, 13, and 14, which request information regarding general policies at Evolve but not as they relate to any activities with any of the Debtors.  And such policies as they may relate to the Debtors are subsumed within other requests.

      b.      Request number 7, which requests documents sufficient to show on a daily, weekly and monthly basis the overall percentage of deposits at Evolve Bank that related to the FTX Group or the Insiders.  Evolve submits that this information is not within the scope of Rule 2004.  Moreover, to the extent this request would require Evolve to create information that is not readily available, it is additionally objectionable.  Further, without waiving its argument that this request is outside the scope of Rule 2004, Evolve states that the Movants have been provided with statements showing, among other things, account balances on a daily basis for the relevant accounts at Evolve, and Evolve's total deposits on a quarterly basis are publicly available to anyone with a web-enabled device.

13.      With respect to request number 33, and to the extent implicated within request number 34, Evolve objects to such requests.  Pursuant to 12 U.S.C. § 3420 and 18 U.S.C. § 1510(b)(1) and (2), Evolve is precluded from disclosing the existence of any investigation or the existence or contents of any subpoena, or information that may have been furnished in response to any such subpoena.

14.      To the extent the Court is inclined to entertain the Movants' request to shortcut Bankruptcy Rules 2004(c) and 9016 and Fed. R. Civ. P. 45, Evolve reserves the right to raise additional objections to specific requests at the hearing on the Motion.

## CONCLUSION

For the reasons stated above, Evolve respectfully requests that the Court deny the Motion.

| | |
|---|---|
| Dated:  July 26, 2023<br>Wilmington, Delaware<br><br>Martin A. Sosland<br>**BUTLER SNOW LLP**<br>2911 Turtle Creek Boulevard, Suite 1400<br>Dallas, TX  75219<br>Telephone:  (469) 680-5500<br>E-mail:  Martin.Sosland@butlersnow.com<br><br>—and—<br><br>James E. Bailey III<br>**BUTLER SNOW LLP**<br>6075 Poplar Avenue, Suite 500<br>Memphis, TN  38119<br>Telephone:  (901) 680-7200<br>E-mail:  Jeb.Bailey@butlersnow.com | */s/ Scott D. Cousins*<br>Scott D. Cousins (No. 3079)<br>**COUSINS LAW LLC**<br>Brandywine Plaza West<br>1521 Concord Pike, Suite 301<br>Wilmington, DE  19801<br>Telephone:     (302) 824-7081<br>E-mail:  scott.cousins@cousins-law.com<br><br>—and— |