**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
| | ) **Related Docket No. 1874** |
| Debtors. | ) **<u>Hearing Date</u>:** |
| | ) **August 2, 2023 at 10:00 a.m. (ET)** |
| | ) **<u>Objection Deadline</u>:** |
| | ) **July 26, 2023 at 4:00 p.m. (ET)** |

**SILVERGATE BANK'S RESPONSE TO JOINT OMNIBUS MOTION OF THE
DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2014-1 FOR AN
ORDER AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR DISCOVERY FROM
SILICON VALLEY ACCOUNTANTS,
<u>SILVERGATE BANK, AND EVOLVE BANK & TRUST</u>**

Now Comes Silvergate Bank (**"Silvergate"**) and in response to the Joint Omnibus Motion

of the Debtors and the Official Committee of Unsecured Creditors Pursuant to Bankruptcy Rule

2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery

from Silicon Valley Accountants, Silvergate Bank, and Evolve Bank & Trust (**"Motion"**) filed by

the Debtors and the Official Committee of Unsecured Creditors (the **"Committee"**, and together

with the above captioned Debtors, the **"Movants"**) hereby respectfully submits the following:

1.      The Motion is impermissibly broad and seeks relief well beyond what is available

under the applicable rules, including Bankruptcy Rules 2004 and 9016, Local Rule 2004-1 and

Federal Rule of Civil Procedure 45 (collectively, the **"Rules"**).  The Motion seeks unreasonably

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  Silvergate is advised that a complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX and that the principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

expedited delivery of documents without any allegation that any emergency or exigency exists while discounting Silvergate's efforts to date and the practical limitations it faces.

2.      The Rules envision the Court providing authority to serve a subpoena that would invoke the Rules' protections for those who are served.  These Rules do not authorize the Court to override those protections BEFORE a subpoena has been served, to preemptively deprive those who receive subpoenas of their rights.   There is no authority to enter an order compelling production before the recipients are served or the recipients have the opportunity to assert and secure rulings on objections.[2]   Official Form B2450 – the form that would be used for any subpoena – quotes from Fed.R.Civ.Pro. 45 regarding protections afforded to persons subject to subpoenas.  It identifies many of the rights the Movants seek to abrogate.

3.      Rule 2004 provides, in pertinent part,

> (a)      Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.
> . . .
> (c)      Compelling Attendance and Production of Documents or Electronically Stored Information. The attendance of an entity for examination and for the production of documents or electronically stored information, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016[3] for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court where the case is pending if the attorney is admitted to practice in that court.

4.      The most relief that the Debtors could receive pursuant to the Rules is an authorization to serve subpoenas on the named entities.  This would preserve the rights of those

---

[2]   The Motion requests in ¶23, "Pursuant to Bankruptcy Rule 2004, SVA, Silvergate Bank, and Evolve Bank should be directed to produce all documents described in the Requests for examination and copying, with their document productions substantially complete by August 15, 2023."  If an order is entered on August 2, the date requested for Silvergate to be required complete production would be before the fourteen (14) day objection period provided in Fed.R.Civ.Pro. 45.

[3]   Bankruptcy Rule 9016 incorporates Fed.R.Civ.Pro. 45.

who are served.  A revised proposed form of Order (*sans* the Requests) that is consistent with that limitation is attached as **Exhibit A** with a redline showing changes from the version of the form of order filed with the Motion.  Silvergate does not oppose the entry of the revised proposed form of Order since it would preserve Silvergate's rights regarding the scope of the Requests and would not short-circuit those rights with an improper deadline for compliance.

5.      The Motion also overlooks material facts regarding Silvergate's responsiveness to the Movants' request and how those requests had been voluntarily narrowed from the initial request.  Instead of eliminating requests for documents that have previously been produced or restricting the request to narrower requests, the Debtors and Committee opt to "snap back" to their initial and substantially overly broad list of requests.

6.      The Motion fails to note that the documents Silvergate has voluntarily produced include all bank statements for all known accounts and copies of all available images regarding those transactions from the inception through the closing of the accounts.  Those statements were requested on December 28, 2022 and were provided before the February 27, 2023 letter was initially transmitted.  This delivery provided the Debtors with the transaction information to make the entries on its books and records that the Debtors believe that their prior management never made.  This delivery also seems to fully comply with Requests No. 9 and No. 10 to the best of Silvergate's ability.  It would also be responsive to Request No. 11 with respect to the Debtors' side of the transactions (but would not include statements or other information regarding the non-Debtor side of the transactions to the extent that such transactions occurred with respect to a non-Debtor customer of Silvergate).

7.      Even though Silvergate's bankruptcy counsel had been in regular contact with the Debtors' primary counsel since December 2022, and a voluntary production was already

underway, the letter was sent directly to a Silvergate employee instead of to the attorney with whom the Debtors' primary bankruptcy counsel was already discussing document requests and production.

8.      Many of the items listed in the Requests had already been produced when the February 27, 2023 letter was finally provided to Silvergate's bankruptcy counsel on March 8, 2023. Yet, the Requests included with the Motion seek to compel the production of documents that have been in the Debtors' possession for months (and presumably accessible by both Movants).

9.      With the exception of the documents included within various email records – including those waiting to be reviewed before delivery pursuant to the parties' initial agreement - Silvergate believes that it has produced all of the documents in its possession regarding the numerous bank accounts that the Debtors had with Silvergate that have been identified.  Silvergate understood that its prior rolling production satisfied the more tailored requests for documentation regarding account information and other documents of common interest.  Silvergate's counsel provided Movants' counsel with status updates on June 13 and June 20 regarding the production that was underway and that continues notwithstanding the Motion.  The update included information that one of the tools that Silvergate had purchased specifically to process the request failed and was replaced and that documents were being uploaded that day (June 20).  Even though counsel for Movants and Silvergate had been exchanging information regarding the processing of the narrowed scope requests, the Movants' counsel's last outreach to inquire about progress was on June 13.  No inquiry or outreach occurred during the month that preceded the Motion being filed.

10.      As the Motion notes (¶18), Silvergate provided the Debtors and Committee with a substantial number of documents that had been produced in response to requests by others

(including various governmental organizations).  The documents along with the listing of the requests were produced to show the substantial overlap of the requests.  These documents related primarily to various Silvergate policies and procedures that applied to its customers (including the Debtors with which Silvergate had accounts).  As a general matter, they relate to Requests No. 's 13 – 16 in Ex. C to the Motion.  Silvergate knows of no additional documents that would be responsive to those Requests and the Movants have not attempted to identify how Requests No. 's 13 – 16 request documents not covered by the documents that were previously produced.

11.    Silvergate's initial production was also hampered somewhat when its Internet Service Provider unilaterally opted to throttle its data upload speed without prior notice as a result of the volume of material it was uploading in response to a variety of document production requests.  The throttling created a significant delay that was resolved after a few days of unproductive activity had passed.

12.    With respect to the narrowed email search terms over a more defined list of custodians, hits and production as alleged in the Motion (¶19), the Motion ignores the reality of Silvergate's current status.  Silvergate's corporate parent announced that Silvergate would wind down its operations and voluntarily liquidate the bank in March 2023.[4]  That process is underway and it resulted in Silvergate reducing its headcount in the fall of 2022 from over 450 personnel to under 40 as of the filing of this Response.   The downsizing placed significant constraints on Silvergate's IT staff as each employee's bank issued technology (including each's computer) had to be processed and imaged and fewer employees remained to assist with producing documents that are being requested.

---

[4]   https://ir.silvergate.com/news/news-details/2023/Silvergate-Capital-Corporation-Announces-Intent-to-Wind-Down-Operations-and-Voluntarily-Liquidate-Silvergate-Bank/default.aspx

13.    As the Court would expect, Silvergate has received a significant number of subpoenas and other regulatory requests and is working diligently with its limited personnel and resources to respond to all of the pending requests.  These reviews and productions are ongoing.

14.    The pending requests include governmental organizations with regulatory and supervisory role over Silvergate and its liquidation process.  The need to use its limited personnel and resources to respond to these governmental requests is yet another reason why the delivery process to date has been reasonable – even if not as quickly as the Debtors and Committee would have preferred over the past roughly four months.

15.    While it is premature to object to Requests that are not part of a Subpoena sought to be authorized and then served, parties might consider the scope of the Requests in the context of both (a) whether each Request is consistent with Bankruptcy Rule 2004[5] and (b) whether each Request is reasonably capable of being fulfilled – especially given the breadth of both the requests and the defined terms.  Request No. 8 appears to be wholly outside the scope of Bankruptcy Rule 2004 when it requests "Documents sufficient to show on a daily, weekly, and monthly basis the overall percentage of deposits at Silvergate that related to the FTX Group or the Insiders."  How that Request (with respect to deposits over the duration of the Debtors' relationship with Silvergate) relates to the Debtors' assets, liabilities, plan and the administration of its bankruptcy estate is a mystery – especially if the Debtors believe that Silvergate should be compelled to make those calculations for each day, each week and each month of that relationship.

---

[5]    Bankruptcy Rule 2004(b) provides, in pertinent part, "(b)        Scope of Examination. The examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In . . . a reorganization case under chapter 11 of the Code, . . ., the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

16.     The issue of the Requests' being within the scope of Bankruptcy Rule 2004 in seeking documents and information regarding non-Debtor individuals and entities and their financial and other transactions with other non-Debtor individuals and entities is as pervasive as the Requests and Defined Terms are expansive.   Requests that seek documents and information regarding non-Debtor individuals and entities and their financial transactions with other non-Debtor individuals and entities are included within a number of Requests, including Request No.'s 3, 5, 6, 8, 9, 10, 11, 17, 18, 19, 20, 26, 27, 30.  Narrowing the Requests to address transactions with the Debtors and transactions involving a group of specifically named individuals and entities with or related to the Debtors (as opposed to non-Debtors activities with other non-Debtors) would be more consistent with the scope of Bankruptcy Rule 2004.

17.     The overly broad, expansive and indefinite defined terms are also likely to render many of the Requests addressed to Silvergate incapable of being fulfilled as drafted.  To the extent that the defined terms are imprecise (and are capable of specificity), the Movants should consider revising the Requests before they become part of a Rule 2004 Subpoena.  Those indefinitely broad defined terms include:

| Defined Term / Definition | Issues |
|---|---|
| 2. "**Alameda**" shall refer, collectively, to Alameda Research LLC and any of its subsidiary Debtors. | A search would need to know the names of the subsidiaries for which to search.  The Debtors should know the specific names of the entities. |

| Defined Term / Definition | Issues |
|---|---|
| 6. "**Customer Deposits**" shall mean any amounts transferred from any FTX Group customer to any Account related to the FTX Group. | While the term "customer" is not defined, Silvergate should not be compelled to speculate regarding whether any of its account holders were a customer of the "FTX Group" – also an overly broad description of an indefinite number of individuals and entities.<br><br>The term is also overly broad in that the defined terms refer to transactions among non-debtor individuals and entities since "customers" include non-debtors and Accounts "related to the FTX Group" includes non-debtors.  It is a sweeping description that could be narrowed to exclude transactions that are wholly unrelated to the Debtors, their estates or the administration of these cases. |

| Defined Term / Definition | Issues |
|---|---|
| 10. "**FTX Group**" shall refer, collectively or individually, to the Debtors and to all affiliates of the Debtors, Including those that have not filed voluntary chapter 11 petitions in the United States under the Bankruptcy Code, and any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, officers, employees, agents, representatives, consultants, attorneys, or Persons acting or purporting to act on their behalf. For the avoidance of doubt, "FTX Group" shall include Alameda Research LLC, FTX Digital Markets Ltd., FTX Trading Ltd., FTX Ventures Ltd., and West Realm Shires Services Inc. d/b/a FTX US. | Silvergate appreciates the specifically identified entities but note that it not an exhaustive listing. If the Debtors have the names of the Debtors' affiliates, those names should be provided – especially those who are not debtors in these jointly administered cases.<br><br>Likewise, the names of these individuals and entities should be provided for there to be a search – "parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, officers, employees, agents, representatives, consultants, attorneys, or Persons acting or purporting to act on their behalf". Otherwise, it is unreasonable to request that a party search for documents regarding an unnamed officer of an unnamed entity.<br><br>This overly broad definition is also complicated by the definition of Customer Deposits because it would require that Silvergate know the identity of each customer of each of the Debtors' affiliates as well as their unnamed officers. |
| 12. "**Insiders**" shall mean, collectively or individually, Samuel Bankman-Fried, Zixiao "Gary" Wang, Nishad Singh, Caroline Ellison, Zhe "Constance" Wang, Ryan Salame, Barbara Fried, Joseph Bankman, and Gabriel Bankman-Fried, their agents, and any of their spouses or partners, parents, grandparents, siblings, aunts and uncles, nieces and nephews, or first cousins. | It is unreasonable to require Silvergate to identify and then perform any searches regarding the unnamed agents, and any of their spouses or partners, parents, grandparents, siblings, aunts and uncles, nieces and nephews, or first cousins much less to confirm the relationship of each such person to those individuals. If the Debtors and Committee have specific names to be searched, they should be provided. |

18.    The lack of specificity is compounded in each Request that uses two or more of these defined terms.

a.    For example, Request No.  1  states,  "1.  All Documents  and Communications Concerning the services You provided to the FTX Group or the Insiders" and Request No. 2 states, "2. All Documents and Communications Concerning the scope of the services You provided to the FTX Group or the Insiders Including any agreements governing Accounts or other business relationships, statements of work, or descriptions of such services."  Other than the named companies and individuals, Silvergate could not hope to comply with a request to provide Documents and Communications Concerning the scope of services provided to unnamed entities and family members of named Insiders. Also, "1. All Documents and Communications Concerning the services You provided to the FTX Group or the Insiders" is overly broad in that one reading of the Request subsume most of the other Requests that follow.

b.    A further example is found in Request No. 3 which states, "3. All Documents and Communications exchanged with any customer, creditor, financial institution, professional, or agent affiliated with the FTX Group or the Insiders Concerning the services You provided to the FTX Group or the Insiders."  Other than named entities and individuals, the request seeks Documents and Communications with unnamed, unidentified, unspecified "customers, creditors, financial institutions, professionals and agents" of unnamed entities and unnamed family members of unnamed individuals.

19.    The breadth of requests for numerous unnamed individuals and entities has been rejected in an analogous situation. *See In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *8 (E.D. La. Oct. 6, 1999), *aff'd*, 209 F.3d 719, 2000 WL 283199 (5th Cir. 2000).  In a request to authorize subpoenas for use in a foreign proceeding, the court analyzed document requests that included a request for "all documents concerning any business dealings with General

Suharto, any member of the Suharto family, or any Suharto-related entity" and then the definition section defined the Suharto family to include seventeen named persons and "other unnamed relatives." The court decided that this particular request was "overbroad, vague and burdensome." Specifically, the court noted that "[t]his kind of document production is an outrageously burdensome and expensive undertaking to impose on a *nonparty*." It further noted, "The document production components of the subpoenas are so vast and burdensome that they are, in my view, beyond any possible reasonable modification by the Court. Accordingly, the document production components of the requested subpoenas will not be permitted." *Id.*

20.     The lack of definiteness is also likely to raise issues under various bank privacy statutes when a subpoena purports to require Silvergate to deliver to the Movants the confidential financial and banking information of third parties when the Movants never provided notice to each such person or entity that their financial information was being sought by the Movants. Without providing the names of the affected individuals and entities regarding which information and documentation is requested, it will be difficult for the Debtors and Committee to show that they provided effective notice of this Motion to all affected parties to advise them of the relief requested herein or that the Movants complied with applicable bank privacy laws.

21.     This is particularly acute regarding Request No. 6 which states, "6.  All Documents and Communications Concerning any bank Accounts, depository Accounts, payment process service Accounts, brokerage Accounts, or cryptocurrency exchange Accounts owned, controlled by, or used by anyone working on behalf of, or held in the name of or for the benefit of, the FTX Group or the Insiders" and Request No. 10 which states, "10.   Documents sufficient to show general ledgers of all Accounts maintained by the FTX Group or the Insiders." Both defined terms include an unknown number of unnamed individuals and entities included therein.

22.     Request No. 11 is even more invasive without notice when it requests "All Documents and Communications Concerning transactions relating to any Accounts maintained by the FTX Group or the Insiders, including for each transaction Documents sufficient to show the amount, date, time, payment instructions, fees, names, Account numbers, and physical addresses of parties to the transactions." To the extent that one of the host of individuals and entities included within the definition of FTX Group or Insiders had any a transaction of any kind with any other Silvergate customer that might fall within the defined term, this would arguably cover that other customer's bank statement showing the corresponding transaction PLUS every other transaction of that customer during that reporting period.

23.     With respect to Request No. 36[6], Silvergate would advise the Court that the bank examination privilege will be an issue and will impose a significant burden on Silvergate. Silvergate's productions to the Federal Reserve, California Department of Financial Protection and Innovation, and the Securities and Exchange Commission ("SEC") have included Confidential Supervisory Information ("CSI") that was not redacted, and that Silvergate is otherwise prohibited from disclosing.  12 C.F.R. § 261, *et seq.*  A waiver was obtained with regards to the production of CSI to the SEC, which does not extend to Movants. Further, these productions also contain information regarding Suspicious Activity Reports ("SARs"), the production of which to Movants, again, is prohibited by law. 12 C.F.R. § 261.23(a)(2).  Reviewing the productions to remove CSI and references to SARs would be time-consuming and burdensome; a discrete set of documents that contain CSI and/or SARs that can be easily removed and then additionally produced to Movants does not exist.  The production to the SEC is both voluminous and ongoing.

---

[6]    Request No. 36 is for "All Documents and Communications You have produced to any governmental body or agency Concerning any investigation of the FTX Group or the Insiders."

24.     Additionally, with respect to Request No. 37[7], Silvergate would advise the Court and Movants that the only documents produced to any party in connection with the Chapter 11 cases were produced to one or both of the Movants.   No other requests have been made to Silvergate in connection with the Chapter 11 cases.

25.      If served with a subpoena with document requests as broad as the Requests and that ignores Silvergate's prior efforts to provide deliverables by narrowing the number of custodians to those who had the most interaction with the Debtors and narrowing the search terms to a manageable set, the progress made to date will be forfeited.  Returning to the initial Requests that were attached to the Motion will result in additional delays before the searches, reviews and production can reasonably expect to be completed.  Presumably, the Movants understood that reality when they filed the Motion.

26.     One option that can be explored to expedite the process is for the Debtors to request permission deploy a relatively small part of their legal budget to reimburse Silvergate for adding review attorneys to the project of reviewing the documents that were requested.  Funding the additional costs the Movants requests would place on Silvergate would increase the speed of the reviews and dramatically reduce the resource limitations Silvergate faces.

27.     For the avoidance of doubt, Silvergate reserves its right to submit objections pursuant to Bankruptcy Rule of Procedure 9016 and Federal Rule of Civil Procedure 45 with respect to any subpoena it receives.

Premises Considered, Silvergate prays that upon consideration of the Motion that the Court will limit any relief to the relief contemplated by the applicable Bankruptcy Rules, Local

---

[7]     Request No. 37 is for "All Documents and Communications You have produced to any party in connection with the Chapter 11 Cases."

Bankruptcy Rules and Federal Rules of Civil Procedure, preserve Silvergate's rights as a party receiving a subpoena and grant Silvergate such other and further relief to which it might show itself to be entitled.

Dated: July 26, 2023
        Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Hercules Plaza
1313 North Market Street Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0195
Email: Chipman@chipmanbrown.com

-and-

**PERKINS COIE LLP**
John D. Penn (Admission *pro hac vice* pending)
Texas Bar No. 15752300
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Phone: (214) 965-7700
Email: jpenn@perkinscoie.com

*Counsel for Silvergate Bank*