**FTX**
**Draft Plan of Reorganization – Term Sheet**

This summary term sheet (the "Term Sheet") describes certain material terms of the Debtors' draft joint plan of reorganization (as it may be amended in the future, the "Plan") of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"). The Term Sheet is provided for convenience and is qualified in its entirety by the draft Plan attached hereto, which stakeholders are encouraged to review.[1]

| I.    Background | |
|---|---|
| **Purpose of the Draft Plan** | The FTX cases raise unresolved factual questions and novel legal issues that affect many stakeholders. The Debtors have decided to file the draft Plan publicly at a relatively early stage – before the expiration of customer bar dates, the completion of pending investigations, the resolution of important negotiations with Consulting Parties (as defined below) and the preparation of a disclosure statement – in order to facilitate creditor feedback and the consensual resolution of certain issues. The Debtors expect to amend the Plan in light of the feedback received from Consulting Parties (as defined below) and other stakeholders and file an amended Plan of reorganization and accompanying disclosure statement in the Fourth Quarter of 2023. |
| **Importance of Waiting to Review a Disclosure Statement** | The Bankruptcy Code requires the Debtors to prepare and circulate a disclosure statement prior to soliciting stakeholder approval of a plan of reorganization. Neither the draft Plan, this Term Sheet nor any other materials the Debtors may circulate should be regarded as a solicitation of acceptances of a chapter 11 plan for purposes of the Bankruptcy Code. Stakeholders are asked to reserve judgment on all the matters raised by the Plan until the amended Plan is available and a disclosure statement is prepared and approved by the Bankruptcy Court. |
| **The Plan as a Complex Settlement** | The draft Plan provides an initial construct for a global settlement and good-faith compromise of an exceptionally large and complicated collection of claims, causes of |

---

[1]    This Term Sheet and the draft Plan filed contemporaneously herewith have not been approved by the Bankruptcy Court. The Debtors have filed the Term Sheet and the draft Plan for purposes of aiding discussion and negotiation with their stakeholders. Nothing contained herein or in the draft Plan shall constitute an offer, acceptance, commitment, or legally binding obligation of the Debtors or any other party in interest.

|  | actions and disputes involving the Debtors, including both claims against the Debtors and intercompany claims by various Debtors against other Debtors.  Generally speaking, the global settlement involves:<br><br>1. the valuation of claims in U.S. dollars as of the Petition Date based on a valuation methodology that will be separately prepared by the Debtors and approved by the Bankruptcy Court;<br>2. disputes regarding the ownership of the assets held on the FTX.com and FTX US exchanges based on the applicable terms of service and trust doctrines;<br>3. the identification of three primary recovery pools, corresponding to segregated assets attributable to FTX.com customers, segregated assets attributable to FTX US customers, and other assets that the Debtors contend are not clearly attributable to the exchanges;<br>4. the recognition of special "shortfall" claims by the FTX.com and FTX US exchanges for the benefit of their customers against the pool of general assets, to compensate the exchanges for the unauthorized borrowing and/or misappropriation of assets held on the exchanges;<br>5. the cancellation of intercompany claims (other than as represented under the Plan as the Dotcom Intercompany Shortfall Claim and U.S. Intercompany Shortfall Claim) and the substantive consolidation of the estates of substantially all of the Debtors, other than certain excluded non-U.S. entities who are solvent and whose corporate separateness was historically respected;<br>6. the subordination of certain claims to the pecuniary losses of customers and creditors;<br>7. the extinguishment of FTT claims in recognition of the equity-like characteristics of FTT, as well as the extinguishment of all other equity interests; and<br>8. the liquidation of the estates of the Debtors and the payment of distributions to customers and creditors in cash, subject to certain voluntary elections that may be available to customers in connection with a restart of an offshore exchange or otherwise. |
| **Key Open Items** | The draft Plan does not purport to resolve certain open questions under discussion among the Debtors, Consulting Parties and other of the Debtors' stakeholders.  Important |

questions to be resolved before filing the amended Plan include the following.

1. What is the expected size of the various classes of claims, recovery pools and estimates of creditor recoveries?

2. What is the fair and appropriate amount of priority that should be given to the exchange shortfall claims against the general pool of assets?

3. The decision and manner in which the FTX.com exchange is sold or reorganized and what is the relationship between any future exchange and the other elements of the Plan?

4. How should claims be traded or transferred once a Plan becomes effective?  Whether claims should be evidenced by a recovery rights token or other digital asset and the ramifications of such structure?

5. The corporate governance and future stewardship of the Offshore Exchange Company, the Venture Trust and the other post-confirmation entities described in the Plan and the extent to which the various creditor groups should be involved in such governance determinations.

6. As the nature and extent of claims become more clear, are there amendments to the Plan required to confirm that it is in the best interests of all creditors?

| | |
|---|---|
| **Stakeholder Involvement** | Over the past several weeks, the Debtors have discussed the elements of their Plan with representatives of the Creditors' Committee, the Ad Hoc Committee of Non-US Customers of FTX.com, the customer adversary plaintiffs prosecuting *Onusz, et al. v. West Realm Shires Inc., et al.,* Case No. 22-50513 (JTD) (Bankr. D. Del.) and certain individual stakeholders (collectively, the "Consulting Parties").  The draft Plan reflects input from these representatives on many issues, although there are issues that the Consulting Parties have raised opposition to that will be negotiated with the Debtors and open issues yet to be discussed.  All parties' rights are accordingly reserved as discussions continue.  The Debtors may change the draft Plan at any time, including in response to stakeholder input. |

| II. | Debtor Entities |
|---|---|
| **Modified Substantive Consolidation** | Under the Plan, the estates of all Debtors other than the Separate Subsidiaries (as defined below) will be substantively consolidated as of the effective date of the Plan for the purposes of voting, confirmation and distributions under the classification system proposed by the Plan.  Substantive consolidation and the classification proposed by the Plan are parts of an integrated settlement and compromise of claims among and against the Debtors. The Plan will not result in the merger or affect the separate legal existence of any Debtor for any other purpose. |
| **Separate Subsidiaries** | The Debtors may identify certain subsidiaries that are solvent and historically separate ("Separate Subsidiaries"). The Separate Subsidiaries will be excluded from substantive consolidation for purposes of the Plan, and claims against the Separate Subsidiaries will be separately classified and paid in full in cash or otherwise left unimpaired. |
| **Dismissed Subsidiaries** | The Debtors may identify certain subsidiaries whose Chapter 11 cases may be dismissed prior to confirmation of the Plan.  These Debtor subsidiaries will be liquidated and wound down pursuant to local proceedings and will be excluded from the Plan. |
| III. | Classification and Treatment |
| **General** | Claims and interests will be classified in classes (each, a "Class") as set forth in the Exhibit I hereto. |
| | Administrative claims and certain other special priority claims will not be classified and will be paid in full in cash in accordance with the Bankruptcy Code. |
| **Priority Claims (Class 1)** | Allowed priority claims will be paid in full in cash or receive such treatment as may be permitted under the Bankruptcy Code. |
| **Secured Claims (Class 2)** | Allowed secured claims will be paid in full in cash or receive such treatment as may be permitted under the Bankruptcy Code. |
| **Separate Subsidiaries (Class 3)** | Allowed claims against Separate Subsidiaries will be paid in full in cash, unless another distribution is agreed with the holder of a claim.  After all claims against a Separate Subsidiary are paid or resolved, the Separate Subsidiary |

| | will be liquidated or sold and the remaining value made available to other Debtors. |
|---|---|
| **Dotcom Customer Entitlements (Class 4A)** | All customers of FTX.com (other than holders of NFTs) will constitute a single class, regardless of the type of token or product held and will have a claim in an amount equal to the USD value of their customer entitlements on FTX.com at the petition time (a "Dotcom Customer Entitlement"), to the extent allowed. Each holder of an allowed Dotcom Customer Entitlement will receive a *pro rata* share of the Dotcom Customer Pool (defined below). |
| **U.S. Customer Entitlements (Class 4B)** | All customers of FTX US (other than holders of NFTs) will constitute a single class, regardless of the type of token or product held, and will have a claim in an amount equal to the USD value of their customer entitlements on FTX US at the petition time (a "U.S. Customer Entitlement"), to the extent allowed. Each holder of an allowed U.S. Customer Entitlement will receive a *pro rata* share of the U.S. Customer Pool (defined below). |
| **NFT Entitlements (Class 4C)** | Holders of non-fungible tokens ("NFTs") as of the petition date will be classified separately. NFTs will be returned in kind to the applicable customer unless the NFT is missing or was destroyed, in which case the applicable customer will have a Class 4A claim (if the applicable customer is an FTX.com customer) or a Class 4B claim (if the applicable customer is a U.S. Customer) for the petition time value of the NFT. |
| **General Unsecured Claims (Class 5)** | Claims of customers or creditors not otherwise classified will be Class 5 claims ("General Unsecured Claims"). Class 5 is expected to include: <br>(a)  trade and vendor claims; <br>(b)  contract rejection claims against all Debtors; <br>(c)  claims by lenders and trading partners of Alameda Research LLC or its direct and indirect subsidiaries (collectively, "Alameda"); <br>(d)  where preference actions (other than with respect to customer entitlements) are successful, "replacement" claims by the creditors who had to repay the preference; |

| | |
|---|---|
| | (e)  claims by customers or creditors of non-debtors (or by their insolvency estates) alleging that one or more Debtors are liable for claims against such non-debtors;<br>(f)  any foreign tax or other tax claims that are not priority claims; and<br>(g)  other general unsecured claims.<br><br>Each holder of an allowed General Unsecured Claim will receive a *pro rata* share of General Pool distributions available to Class 5 claims in accordance with the waterfall priorities set forth under "*General Pool Waterfall*" below. |
| **Convenience Classes (Classes 6A-C)** | Holders of claims in a Convenience Class will receive a one-time distribution in cash at a fixed amount to be determined in the Plan.  Such amount will be different for each convenience class based on the net present value of projected recoveries for the analogous classes 4A, 4B and 5 at the time of the Plan. |
| **Intercompany Claims/Interests (Classes 7 and 8)** | Intercompany claims and interests (other than as set forth in the Plan) will be compromised and eliminated in the Plan.  Claims and interests in Classes 7 and 8 do not include—and the Plan will preserve—the Debtors' investments in non-Debtor subsidiaries and all related claims. |
| **Subordinated Claims (Class 9)** | Class 9 consists of claims for regulatory fines and penalties, U.S. federal and state income taxes, similar foreign taxes and any other claim that has been subordinated on the basis of structural subordination, equitable subordination, laws or policies subordinating recoveries to claims by victims of crime or fraud, or any other grounds available under applicable law. |
| **FTT and Equity Classes (Classes 10-13)** | Classes 10, 11, 12 and 13 consist of claims by holders of FTT (whether or not held on any FTX exchange), preferred stock and equity investors in the Debtors and related claims.  All these claims and interests will be canceled and extinguished as of the Effective Date and holders will not receive any distribution. |
| **Valuation** | Where a customer entitlement or other claim reflects an underlying digital asset (other than an NFT), the claim will be liquidated in USD based on the fair market value at the petition time.  The fair market value will be determined |

| | |
|---|---|
| | based on a matrix (the "Valuation Matrix") attached to an Omnibus Estimation Motion filed by the Debtors in advance of Plan solicitation and prepared with input from independent experts engaged by the Debtors for that purpose. |
| **Customer Preferences** | The Debtors anticipate that the Plan will include settlement procedures with respect to customer preferences below thresholds to be determined, facilitating the resolution of preference liabilities as part of an integrated claims resolution process for customers. |
| **IV.    Recovery Pools** | |
| **Dotcom Customer Pool** | Each holder of a Dotcom Customer Entitlement will receive a *pro rata* share (based on relative USD claim value) of the proceeds from a pool of assets associated with the FTX.com exchange (the "Dotcom Customer Pool"), net of distributions to the Dotcom Customer Convenience Class and allocable expenses. |
| | The Dotcom Customer Pool will include: |
| | (a) all fiat in segregated FBO accounts associated with FTX.com on the Petition Date; |
| | (b) all digital assets in the AWS wallets associated with FTX.com on the Petition Date; |
| | (c) any hack recoveries relating to digital assets in those wallets (pre- or post-petition); |
| | (d) all recoveries of preferences paid to customers off the FTX.com platform; |
| | (e) all net recoveries from the Bahamian subsidiaries, FTX Digital Markets Ltd. ("FTX DM") or FTX Property Holdings Ltd ("FTX Bahamas Propco"), of any sort, whether from the Debtors' equity interest in those subsidiaries or from claims against them; |
| | (f) all net proceeds from the sale or recapitalization of the Offshore Exchange Company (as defined below), including any cash or other consideration as well as any the capital stock of the Offshore Exchange Company (as defined below) retained by the Debtors for distribution to stakeholders in the Plan; and |
| | (g) a historical shortfall claim against the General Pool (defined below) (the "Dotcom Exchange Shortfall Claim") in an amount equal to the estimated difference between FTX.com aggregate customer |

| | |
|---|---|
| | entitlements and aggregate exchange assets at the petition time, as determined by the Debtors.<br><br>No other prepetition creditor will have claims against the Dotcom Customer Pool. |
| **U.S. Customer Pool** | Each holder of a U.S. Customer Entitlement will receive a *pro rata* share (based on relative USD claim value) of the proceeds from a pool of assets associated with the FTX US exchange (the "U.S. Customer Pool"), net of distributions to the U.S. Customer Convenience Class and allocable expenses; *provided that* the *pro rata* shares of U.S. Customer Entitlement holders against the U.S. Customer Pool will be calculated in a manner that respects the status of Alameda as a customer of FTX US.  The distributions to Alameda will be deposited into the General Pool (defined below) for reallocation among all other creditors (including the Dotcom Shortfall Claim).<br><br>The "U.S. Customer Pool" will include:<br>  (a)  all fiat in segregated FBO accounts associated with FTX US on the Petition Date;<br>  (b)  digital assets in the AWS wallets associated with FTX US on the Petition Date;<br>  (c)  any hack recoveries relating to digital assets in those wallets (pre- or post-petition);<br>  (d)  all recoveries of preferences paid to customers off the FTX US platform;<br>  (e)  all proceeds from the sale of FTX US or any associated property; and<br>  (f)  an historical shortfall claim against the General Pool (defined below) (the "U.S. Exchange Shortfall Claim") in an amount equal to the estimated difference between aggregate customer entitlements and aggregate FTX US exchange assets at the petition time, as determined by the Debtors.<br><br>No other creditor will have claims against the U.S. Customer Pool. |
| **General Pool** | The general pool (the "General Pool") will include all property of the estate that is not in the Dotcom Customer Pool, the U.S. Customer Pool or property of a Separate Subsidiary.<br><br>The General Pool will include at least the following and all related proceeds: |

| | |
|---|---|
| | (a) all fiat and digital assets not allocated to the Dotcom Customer Pool, the U.S. Customer Pool or a Separate Subsidiary;<br><br>(b) all recoveries from non-Debtor subsidiaries (other than FTX DM);<br><br>(c) all distributable value at the Separate Subsidiaries after payment of Class 3 claims;<br><br>(d) all preference actions not associated with either FTX.com or FTX US;<br><br>(e) all other avoidance actions and litigation claims , regardless of the particular Debtor(s) who may bring such actions under applicable law;<br><br>(f) all net proceeds from the unwinding of the venture book and other investments;<br><br>(g) the portion of the U.S. Customer Pool corresponding to Alameda's positions on the FTX US platform;<br><br>(h) the residual interests in the Dotcom Customer Pool and the U.S. Customer Pool (available only when Dotcom Customer Entitlements or U.S. Customer Entitlements, as applicable, are paid in full); and<br><br>(i) the proceeds from the sale or monetization of all other property of the estate.<br><br>Proceeds in the General Pool will be allocated as discussed under "*General Pool Waterfall*" below. |
| **General Pool Waterfall** | Proceeds in the General Pool will be allocated in the following manner:<br><br>• *first*, to pay administrative expenses and secured and priority claims allocable to the General Pool;<br><br>• *second*, to pay General Convenience Claims as set forth in the Plan;<br><br>• *third*, with respect to [•] percent of the amount next available for distribution from the General Pool, to pay the Dotcom Exchange Shortfall Claim and the U.S. Exchange Shortfall Claim on a Pro Rata basis;<br><br>• *fourth,* with respect to the remaining amount available for distribution from the General Pool, to pay General Unsecured Claims, the Dotcom Exchange Shortfall Claim and the U.S. Exchange Shortfall Claim on a Pro Rata basis; and<br><br>  • *fifth*, to pay Subordinated Claims |

| | |
|---|---|
| | The General Pool waterfall works to establish a modified priority for the U.S. Exchange Shortfall Claim and the Dotcom Exchange Shortfall Claim against assets in the General Pool at the expense of General Unsecured Creditors, providing a mechanism to implement a settlement of potential misappropriation, constructive trust, equitable tracing and other claims by the exchanges against other Debtors for the benefit of exchange customers.  The Debtors will determine the percentage of the General Pool available on a priority basis following negotiations with Consulting Parties and other stakeholders. |
| **Expense Allocation** | Case expenses and professional fees and expenses as a general matter will be allocated as between the General Pool and the customer pools based on the Debtors' estimate of relative distributable value in each pool as of the date of confirmation of the Plan; *provided that* the Debtors will first allocate to the Dotcom Customer Pool any expenses related to FTX DM or FTX Bahamas Propco or the sale, 'reboot' or reorganization of FTX.com. |
| **V.    Implementation** | |
| **Offshore Exchange Company** | The property of the Debtors associated with the ownership and operation of FTX.com will be gathered and marketed in a competitive process for the benefit of the Dotcom Customer Pool.  As part of this competitive process, the Debtors may decide to establish in collaboration with third party investors a new company in a jurisdiction outside of the United States to operate a "rebooted" offshore platform not available to U.S. investors (an "Offshore Exchange Company") or enter into a merger or similar transaction.

Rather than all cash, the Debtors may determine that the Offshore Exchange Company remit non-cash consideration to the Dotcom Customer Pool in the form of equity securities, tokens or other interests in the Offshore Exchange Company, or rights to invest in such equity securities, tokens or other interests ("Take-Back Interests").  Any Take-Back Interests will be made available to holders of Dotcom Customer Entitlements on a *pro rata* basis, subject to applicable securities and other laws.

The Debtors reserve the right not to proceed with an Offshore Exchange Company if the Debtors determine that |

| | |
|---|---|
| | doing so may delay effectiveness of the remaining components of the Plan, create regulatory concerns or fail to yield material incremental value to holders of Dotcom Customer Entitlements. |
| **Venture Trust** | The Debtors also may establish a new limited liability trust company (the "FTX Ventures Trust") to hold the Debtors' illiquid venture capital, private company and token investments that are not being sold at the time of effectiveness and are not anticipated to be sold by the plan administrator promptly after effectiveness as part of the Wind-Down Estate (defined below).  The purpose of the FTX Ventures Trust will be to make cash distributions on a time horizon to be determined based on the nature of its investments.  The Debtors have made no determination whether the FTX Ventures Trust will be owned by the Wind-Down Estate or separately traded. |
| **Wind-Down Estate** | The other property of the estates will be maintained as a wind-down estate (the "Wind-Down Estate") administered by the Debtors and the plan administrator.  The plan administrator will be the CRO and will report to the incumbent Board of Directors of the Debtors.<br><br>The Wind-Down Estate will manage the business of closing the chapter 11 cases, reconciling claims, implementing AML and KYC compliance requirements, monetizing remaining assets and liquidating the Debtors and their non-Debtor subsidiaries. |
| **Distributions** | Distributions other than Take-Back Interests in the Offshore Exchange Company and NFTs will be made in cash in USD.  The Debtors will convert any remaining digital assets to USD in an orderly manner after the effectiveness of the Plan.  The Debtors will determine the investment principles for the management of cash prior to distribution, subject to parameters established in the Plan.<br><br>Distributions will not be made on claims held by the recipient of a preference or other avoidable transfer until any related avoidance claim has been settled or resolved by the court.  The Debtors reserve the right to enforce preference and avoidance claims against subsequent transferees to the full extent permitted by law. |

| | The Debtors are exploring alternatives related to claims trading after the effective date of the Plan, subject to appropriate securities law, AML and KYC arrangements. |
|---|---|
| **Anti-Double Dip** | The Plan is premised on a centralized distribution process in which each holder receives that same recovery as another similarly-situated holder.  The plan administrator may require any holder of a claim to submit satisfactory evidence that such holder has not requested or received compensation for the same losses underlying such claim in connection with any other judicial or administrative proceeding (including without limitation any proceedings with respect to FTX Australia, FTX DM, FTX Turkey or FTX EU), and may refrain from making distributions on such claim until such time as satisfactory evidence is obtained or appropriate arrangements are in place ensuring that no holder receives more than any other holder under the Plan after taking into account such other potential recoveries.<br><br>As a condition to receiving any distribution in the Plan, the plan administrator may require holders of claims in Classes 4A-C or Class 5 to assign to the plan administrator all right, title and interest in any claim for the same losses that have been or may be made in any other judicial or administrative proceeding relating to the FTX group (including without limitation any claim in any proceeding with respect to FTX Australia, FTX DM, FTX Turkey or FTX EU). |

**Exhibit I**

**Classification – Summary Chart[1]**

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 3 | Separate Subsidiary Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 4A | Dotcom Customer Entitlements | Impaired | Entitled to Vote |
| 4B | U.S. Customer Entitlements | Impaired | Entitled to Vote |
| 4C | NFT Entitlements | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6A | Dotcom Convenience Class | Impaired | Entitled to Vote |
| 6B | US Convenience Class | Impaired | Entitled to Vote |
| 6C | General Convenience Class | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | FTT Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 11 | Preferred Equity Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 13 | Other Equity Interests | Impaired | Not Entitled to Vote, Deemed to Reject |

---

[1]    The Debtors' investigation into claims is ongoing and classification is subject to change.

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

</div>

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FTX TRADING LTD., *et al.*,[1] | : | Case No. 22-11068 (JTD) |
| Debtors. | : | (Jointly Administered) |
| | : | |

<div align="center">

**JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**FTX TRADING LTD. AND ITS DEBTOR AFFILIATES**

</div>

---

**THIS IS A DRAFT PLAN THAT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THE DEBTORS HAVE FILED THIS DRAFT PLAN FOR PURPOSES OF AIDING THEIR DISCUSSIONS AND NEGOTIATIONS WITH THEIR STAKEHOLDERS AND NOT FOR SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.  NOTHING CONTAINED IN THE DRAFT PLAN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST. THIS DRAFT PLAN IS SUBJECT TO CONTINUING NEGOTIATIONS AND MATERIAL CHANGE.**

**THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT.**

---

| | |
|---|---|
| Andrew G. Dietderich (admitted *pro hac vice*) | Adam G. Landis (No. 3407) |
| James L. Bromley (admitted *pro hac vice*) | Matthew B. McGuire (No. 4366) |
| Brian D. Glueckstein (admitted *pro hac vice*) | Kimberly A. Brown (No. 5138) |
| Alexa J. Kranzley (admitted *pro hac vice*) | Matthew R. Pierce (No. 5946) |
| SULLIVAN & CROMWELL LLP | LANDIS RATH & COBB LLP |
| 125 Broad Street | 919 Market Street, Suite 1800 |
| New York, New York 10004 | Wilmington, Delaware 19801 |
| Telephone: (212) 558-4000 | Telephone: (302) 467-4400 |

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
          bromleyj@sullcrom.com
          gluecksteinb@sullcrom.com
          kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

Dated:  [•], 2023

Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
          mcguire@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

*Counsel for the Debtors and Debtors-in-Possession*

# TABLE OF CONTENTS

**Page**

1.  INTRODUCTION ..................................................................................................1
    1.1.  Introduction................................................................................................ 1
    1.2.  Dismissed Chapter 11 Cases ..................................................................... 1

2.  DEFINITIONS AND RULES OF INTERPRETATION ....................................2
    2.1.  Defined Terms ........................................................................................... 2
    2.2.  Rules of Interpretation .............................................................................. 17
    2.3.  Governing Law ......................................................................................... 18
    2.4.  Computation of Time ................................................................................ 18

3.  ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS............................19
    3.1.  Administrative Claim Bar Date ................................................................ 19
    3.2.  General Administrative Claims................................................................. 19
    3.3.  503(b)(9) Claims ...................................................................................... 20
    3.4.  Professional Claims .................................................................................. 20
    3.5.  Statutory Fees Payable Pursuant to 28 U.S.C. § 1930 ............................ 21
    3.6.  Priority Tax Claims .................................................................................. 21
    3.7.  Expense Allocation ................................................................................... 21

4.  CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND
    INTERESTS ......................................................................................................22
    4.1.  Classification of Claims and Interests...................................................... 22
    4.2.  General Pool Waterfall ............................................................................. 23
    4.3.  Treatment of Claims and Interests ........................................................... 23
    4.4.  Valuation of Claims ................................................................................. 30
    4.5.  Special Provision Governing Unimpaired Claims.................................... 30
    4.6.  Acceptance by Impaired Classes ............................................................. 30
    4.7.  Elimination of Vacant Classes ................................................................. 30
    4.8.  Voting Classes; Presumed Acceptance by Non-Voting Classes.............. 30
    4.9.  Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy
         Code .......................................................................................................... 30

5.  IMPLEMENTATION OF THE PLAN ..............................................................31
    5.1.  Operations Between the Confirmation Date and Effective Date .............. 31
    5.2.  Global Settlement of Claims and Interests............................................... 31
    5.3.  Substantive Consolidation ....................................................................... 32
    5.4.  Wind Down Estates.................................................................................. 33
    5.5.  Plan Funding Mechanism ......................................................................... 33
    5.6.  Plan Administrator ................................................................................... 33
    5.7.  Vesting of Assets ..................................................................................... 33
    5.8.  D&O Policies............................................................................................ 34

5.9.  Cancelation of Existing Interests ......................................................... 34
5.10. Section 1146 Exemption from Certain Transfer Taxes and Recording Fees ........ 34
5.11. Preservation of Causes of Action ....................................................... 35
5.12. Effectuating Documents and Further Transactions .................................. 35

6.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........36
6.1.  Rejection of Executory Contracts and Unexpired Leases.................................... 36
6.2.  Claims Against the Debtors upon Rejection ..................................................... 36
6.3.  Modification, Amendments, Supplements, Restatements or Other
Agreements ................................................................................................. 36
6.4.  Reservation of Rights........................................................................................ 37

7.  PROVISIONS GOVERNING DISTRIBUTIONS ..............................................................38
7.1.  Distributions Timing........................................................................................ 38
7.2.  Distributions to Holders of Customer Entitlement Claims ................................ 38
7.3.  Record Date and Delivery of Distributions ...................................................... 39
7.4.  Distribution Agent ........................................................................................... 40
7.5.  Fractional and *De Minimis* Distributions .......................................................... 40
7.6.  Undeliverable Distributions .............................................................................. 40
7.7.  Reversion ......................................................................................................... 41
7.8.  Surrender of Canceled Instruments or Securities.............................................. 41
7.9.  Setoffs .............................................................................................................. 41
7.10. No Interest on Claims ....................................................................................... 41
7.11. No Payment over the Full Amount .................................................................... 42
7.12. Compliance with Tax Requirements .................................................................. 43
7.13. Tax Identification, KYC and OFAC Certifications ............................................ 43

8.  CLAIMS ADMINISTRATION PROCEDURES ................................................................44
8.1.  Objections to Claims......................................................................................... 44
8.2.  Estimation of Claims......................................................................................... 44
8.3.  Expungement and Disallowance of Claims ....................................................... 44
8.4.  Amendments to Proofs of Claim ....................................................................... 45
8.5.  No Distributions Pending Allowance ................................................................ 45
8.6.  Distributions After Allowance .......................................................................... 45
8.7.  Administration Responsibilities......................................................................... 45
8.8.  Claims Paid or Payable by Third Parties ........................................................... 46

9.  CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN ..........................47
9.1.  Conditions Precedent to the Effective Date ...................................................... 47
9.2.  Waiver of Conditions ........................................................................................ 48
9.3.  Simultaneous Transactions ............................................................................... 48
9.4.  Effect of Non-Occurrence of the Effective Date ............................................... 48
9.5.  Notice of Effective Date ................................................................................... 48

10.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ...............49
       10.1.    Subordinated Claims .................................................................................... 49
       10.2.    Non-Discharge of Debtors; Resolution of Claims and Termination of
                Interests ....................................................................................................... 49
       10.3.    Release of Liens ........................................................................................... 49
       10.4.    Debtors' Release .......................................................................................... 50
       10.5.    Voluntary Release by Holders of Claims and Interests ............................... 51
       10.6.    Scope of Releases ........................................................................................ 51
       10.7.    Exculpation .................................................................................................. 52
       10.8.    Injunction ..................................................................................................... 52
       10.9.    Limitations on Exculpations and Releases .................................................. 53

11.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ...................53
       11.1.    Modification of Plan .................................................................................... 53
       11.2.    Effect of Confirmation on Modification ...................................................... 53
       11.3.    Revocation of Plan ....................................................................................... 53

12.    RETENTION OF JURISDICTION ...........................................................................55
       12.1.    Retention of Jurisdiction ............................................................................. 55

13.    MISCELLANEOUS PROVISIONS ...........................................................................57
       13.1.    Immediate Binding Effect ............................................................................ 57
       13.2.    Additional Documents; Further Assurances ................................................ 57
       13.3.    Reservation of Rights ................................................................................... 57
       13.4.    Successors and Assigns ................................................................................ 57
       13.5.    Term of Injunction or Stays ......................................................................... 57
       13.6.    Entire Agreement ......................................................................................... 58
       13.7.    Exhibits ........................................................................................................ 58
       13.8.    Nonseverability of Plan Provisions upon Confirmation .............................. 58
       13.9.    Dissolution of Committee ............................................................................ 58
       13.10.   Termination of Fee Examiner's Appointment .............................................. 59
       13.11.   Debtors' Directors and Officers ................................................................... 59
       13.12.   Post-Confirmation Operating Reports ......................................................... 59
       13.13.   Closing of Chapter 11 Cases ....................................................................... 59
       13.14.   Conflicts ....................................................................................................... 59
       13.15.   No Stay of Confirmation Order .................................................................... 59
       13.16.   Waiver or Estoppel ...................................................................................... 60
       13.17.   Post-Effective Date Service ......................................................................... 60
       13.18.   Notices .......................................................................................................... 60

# 1. <u>INTRODUCTION</u>

### 1.1. <u>Introduction</u>

FTX Trading Ltd. ("<u>FTX Trading</u>") and its affiliated debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"), propose the following joint plan of reorganization (including the Plan Supplement and all other exhibits and schedules thereto, the "<u>Plan</u>") pursuant to section 1121(a) of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to an order entered by the Court on November 22, 2022 [D.I. 128]. Each Debtor is a proponent of the Plan for purposes of section 1129 of the Bankruptcy Code.

### 1.2. <u>Dismissed Chapter 11 Cases</u>

The following entities were Debtors as of the Petition Date but are no longer Debtors and are not included in the Plan:

(a)    the chapter 11 case of FTX Turkey Teknoloji ve Ticaret Anonim Şirketi ("<u>FTX Turkey</u>") was dismissed on February 13, 2023 [D.I. 711];

(b)    the chapter 11 case of SNG Investments Yatırım ve Danışmanlık Anonim Şirketi ("<u>SNG Investments</u>") was dismissed on February 13, 2023 [D.I. 711]; and

(c)    the chapter 11 case of [•] was dismissed on [•] [D.I. [•]].[2]

---

[2]    <u>Note to Draft</u>: The Debtors may identify certain Debtor subsidiaries whose Chapter 11 cases may be dismissed prior to confirmation of the Plan. Such subsidiaries will be liquidated and wound down pursuant to local proceedings and will be excluded from the Plan.

**2.    DEFINITIONS AND RULES OF INTERPRETATION**

2.1.    Defined Terms

Except as otherwise provided herein, each capitalized term used in this Plan shall have the meaning set forth below.

2.1.1    "503(b)(9) Claim" means a Claim arising under section 503(b)(9) of the Bankruptcy Code for which a Proof of Claim was filed on or before the General Non-Customer Bar Date.

2.1.2    "Administrative Claim" means any Claim for costs and expenses of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code arising on or prior to the Effective Date and entitled to priority pursuant to sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code; *provided* that Administrative Claims shall not include 503(b)(9) Claims.

2.1.3    "Administrative Claim Bar Date" means: (a) 4:00 p.m. (Eastern Time) on the 30th day after the Effective Date or (b) such other date established by order of the Bankruptcy Court by which Proofs of Claim in respect of Administrative Claims must be filed (other than Professional Claims).

2.1.4    "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.1.5    "Allowed" means, with respect to any Claim or Interest, that the amount, priority and/or classification of such Claim or Interest has been (a) allowed by this Plan or the Confirmation Order, or by Final Order of the Bankruptcy Court; (b) allowed or stipulated in writing (i) prior to the Effective Date, by the Debtors in accordance with authority granted by an order of the Bankruptcy Court or (ii) on or after the Effective Date, by the Plan Administrator; (c) listed in the Schedules as not disputed, not contingent, not unliquidated with respect to amount, secured status or priority and (i) no Proof of Claim in an amount greater than the amount set forth in the Schedules has been filed, (ii) no objection to allowance, priority or classification, request for estimation, motion to deem the Schedules amended or other challenge has been filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules or as determined by the Bankruptcy Court, (iii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code, and (iv) solely with respect to a Customer Entitlement Claim, such Claim is not listed as unverified because of incomplete or inadequate know-your-customer information; (d) evidenced by a valid and timely filed Proof of Claim and (i) no objection to allowance, priority or classification, request for estimation or other challenge has been filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules or as determined by the Bankruptcy Court and (ii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code; (e) in the case of an Other Administrative Claim, subject to a request for payment timely filed and served in accordance with Section 3.1 and no objection to such

Claim has been timely filed and served pursuant to Article 3; or (f) in the case of any Professional Claim, allowed by an order of the Bankruptcy Court.

      2.1.6        "Available NFT" means an NFT that is in the custody of a Debtor on the Effective Date.

      2.1.7        "Avoidance Actions" means any and all Causes of Action to subordinate, avoid or recover a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including, but not limited to, sections 105(a), 502(d), 510, 542, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under any similar or related local, state, federal or foreign statutes or common law.

      2.1.8        "AWS Wallets" means Digital Asset wallets stored by the Debtors at Amazon Web Services.

      2.1.9        "Bahamian Subsidiaries" means FTX DM and FTX Bahamas PropCo.

      2.1.10       "Ballots" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the Solicitation Procedures Order, and which must be actually received on or before the Voting Deadline.

      2.1.11       "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

      2.1.12       "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Delaware.

      2.1.13       "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to these Chapter 11 Cases, and the general, local and chambers rules of the Bankruptcy Court.

      2.1.14       "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

      2.1.15       "Case Expenses" has the meaning set forth in Section 3.7.

      2.1.16       "Cash" means the legal tender of the United States of America or the equivalents thereof, including bank deposits, checks and other similar items.

      2.1.17       "Cause of Action" means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, remedy, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition

Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any Avoidance Action; (e) any claim or defense, including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any state law fraudulent transfer claim; and (g) any claim against persons or Entities that are not released under the Plan, including the Preserved Potential Claims, and such Entity's directors, officers, employees, agents, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

2.1.18    "Certificate" means any instrument evidencing a Claim or an Equity Interest.

2.1.19    "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for such Debtor and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court and, for avoidance of doubt, does not include any individual case that has been closed pursuant to Section 1.2, Section 13.13 or otherwise and does not include Debtor Emergent Fidelity Technologies Ltd.

2.1.20    "Claim" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

2.1.21    "Claims Bar Date" means, as applicable, (a) the Non-Customer Bar Date; (b) the Customer Bar Date; (c) the Governmental Bar Date; or (d) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed.

2.1.22    "Claims Objection Deadline" means: (a) the date that is the later of (i) one year after the Effective Date or (ii) as to Proofs of Claim filed after the applicable Claims Bar Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed or (b) such later date as may be established by order of the Bankruptcy Court upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

2.1.23    "Claims Register" means the official register of Claims maintained by the Notice and Claims Agent.

2.1.24    "Class" means a class of Claims or Interests as set forth in Article 4 pursuant to section 1122(a) of the Bankruptcy Code.

2.1.25    "Committee" means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases on December 15, 2022 pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time [D.I. 231].

2.1.26    "Confirmation" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases.

-4-

2.1.27    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.28    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.29    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.30    "Consolidated Debtors" means all Debtors other than the Separate Subsidiaries.

2.1.31    "Consummation" means the occurrence of the Effective Date.

2.1.32    "Customer Bar Date" means 4:00 p.m. (Eastern Time) on September 29, 2023.

2.1.33    "Customer Entitlement Claim" means any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity against any of the Debtors, in each case arising out of or related to any Cash, Digital Assets or other assets held by such person or entity in an account on any FTX Exchange as of the Petition Date.

2.1.34    "D&O Policy" means any insurance policy and all agreements, documents or instruments relating thereto, issued to any of the Debtors covering defensive costs and other liabilities arising out of claims against current or former directors, members, trustees and officers of the Debtors, other than commercial general liability policies and cyber liability policies.

2.1.35    "Debtors" has the meaning set forth in Section 1.1 and, for avoidance of doubt, does not include any entity whose case has been closed pursuant to Section 1.2, Section 13.13 or otherwise and does not include Debtor Emergent Fidelity Technologies Ltd.

2.1.36    "Digital Asset" means a DLT Digital Asset or a Pre-Launch Cryptocurrency.

2.1.37    "Digital Assets Conversion Table" means the conversion table attached as Exhibit [•] to the Digital Assets Estimation Order.

2.1.38    "Digital Assets Estimation Order" means the [•] [D.I. [•]].

2.1.39    "Disclosure Statement" means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order, including all exhibits and schedules thereto and references therein that relate to the Plan.

2.1.40    "Disputed Claim" means any Claim that has not been Allowed.

2.1.41    "Distribution" means a distribution of property pursuant to the Plan, to take place as provided for herein, and "Distribute" shall have a correlative meaning.

2.1.42    "Distribution Agent" means an Entity chosen by the Plan Administrator, which may include the Notice and Claims Agent, to make any Distributions at the direction of the Plan Administrator.

2.1.43    "Distribution Date" means the Initial Distribution Date and each Subsequent Distribution Date.

2.1.44    "Distribution Record Date" means a date determined by the Plan Administrator, from time to time, in his or her reasonable discretion and in accordance with the Plan Administration Agreement, to make any Distributions under the Plan.

2.1.45    "DLT Digital Asset" means any digital representation of value or units that is issued or transferable using distributed ledger or blockchain technology, including Stablecoins, cryptocurrency and NFTs.

2.1.46    "Dotcom Convenience Claim" means (a) any Dotcom Customer Entitlement Claim Allowed in an amount equal to or less than $[•] or (b) any Dotcom Customer Entitlement Claim Allowed in an amount greater than $[•] but that is reduced to an amount equal to or less than $[•] by an irrevocable written election of the Holder of such Dotcom Customer Entitlement Claim made on a properly executed and delivered Ballot; *provided* that where any portion of a Dotcom Customer Entitlement Claim has been transferred or subdivided, any transferred or subdivided portion shall continue to be treated together with the entire initial Dotcom Customer Entitlement Claim for purposes of determining whether any portion of such Dotcom Customer Entitlement Claim qualifies as a Dotcom Convenience Claim.

2.1.47    "Dotcom Customer Entitlement Claim" means any Customer Entitlement Claim against the FTX.com Exchange that is not a FTT Customer Entitlement Claim or a NFT Customer Entitlement Claim.

2.1.48    "Dotcom Customer Pool" means (a) collectively, (i) all fiat currency in segregated accounts designated by the Debtors as accounts for the benefit of customers associated with the FTX.com Exchange held by the Debtors on the Petition Date; (ii) all Digital Assets (other than Available NFTs) held by the Debtors and identified by the Debtors as held for customers in FTX.com AWS Wallets on the Petition Date; (iii) all proceeds relating to the Hacking Incident recovered by the Debtors to the extent that such proceeds are in respect of Digital Assets held in FTX.com AWS Wallets before, on or after the Petition Date; (iv) all proceeds from any Claim or Cause of Action against any customer of the FTX.com Exchange and Dotcom Customer Preference Actions; (v) all proceeds from recoveries from the Bahamian Subsidiaries, of any sort, whether from the Debtors' equity interest in, or from claims against, such Bahamian Subsidiaries; (vi) all proceeds from the sale, disposition or other monetization of property of the Debtors associated with the

FTX.com Exchange;[3] and (vii) the Dotcom Intercompany Shortfall Claim, *less* (b) (i) amount necessary to satisfy the Dotcom Convenience Claim and (ii) the Case Expenses allocated to the Dotcom Customer Pool pursuant to <u>Section 3.7</u>.

2.1.49    "<u>Dotcom Customer Preference Actions</u>" means any and all Causes of Action to avoid any preferential payments or transfers of property from the FTX.com Exchange pursuant to section 547 of the Bankruptcy Code and any recovery action related thereto under section 550 of the Bankruptcy Code, or under any similar or related local, state, federal or foreign statutes or common law.

2.1.50    "<u>Dotcom Exchange Shortfall Amount</u>" means $[•].[4]

2.1.51    "<u>Dotcom Intercompany Shortfall Claim</u>" means a Claim against the General Pool subject to the waterfall priorities set forth in <u>Section 4.2</u> in an amount equal to the Dotcom Exchange Shortfall Amount.

2.1.52    "<u>Effective Date</u>" means, following the Confirmation Date, 12:01 a.m. prevailing Eastern Time on a Business Day selected by the Debtors, on which all conditions to the occurrence of the Effective Date set forth in <u>Sections 9.1</u> and <u>9.2</u> are satisfied or waived in accordance with this Plan.

2.1.53    "<u>Election Form</u>" means the election form regarding the Voluntary Release by Holders of Claims and Interests provided to Holders of Claims or Interests who are not entitled to vote on the Plan and which must be actually received on or before the Voting Deadline.

2.1.54    "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

2.1.55    "<u>Equity Interest</u>" means any Equity Security, including any issued, unissued, authorized or outstanding share of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, and any

---

[3]    <u>Note to Draft</u>:  The Debtors intend to seek to market the Debtors' property associated with the ownership and operation of the FTX.com Exchange.  Depending on the sales and marketing process, the Debtors may establish in collaboration with third party investors a new company in a jurisdiction outside of the United States to operate a "rebooted" offshore platform not available to U.S. investors (an "<u>Offshore Exchange Company</u>") or enter into a merger or similar transaction.  If the Debtors elect to establish an Offshore Exchange Company, the Debtors and the new investors will determine the legal structure and corporate governance arrangements for the Offshore Exchange Company in consultation with customer and creditor representatives prior to confirmation of the Plan.

The Debtors reserve the right not to proceed with an Offshore Exchange Company if the Debtors determine that doing so may, among other things, delay effectiveness of the remaining components of the Plan, create regulatory concerns or fail to yield material incremental value to Holders of Dotcom Customer Entitlement Claims.

[4]    <u>Note to Draft</u>:  This value will represent the historical shortfall in the accounts associated with the FTX.com Exchange at the time of commencement of the Chapter 11 Cases, and will be set as the Debtors' estimate of the difference as of the Petition Date between (a) the aggregate amount of Dotcom Customer Entitlement Claims and (b) the aggregate fair market value of (i) fiat currency in segregated accounts, (ii) Digital Assets in AWS Wallets (other than NFTs and FTT) and (iii) Digital Assets subject to the Hacking Incident.

option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

2.1.56    "Equity Security" means an equity security as defined in section 101(16) of the Bankruptcy Code.

2.1.57    "Estate" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and/or as established by order of the Bankruptcy Court.

2.1.58    "Exchange Rate" means the closing exchange rate on the Petition Date, as published by *The Wall Street Journal*.

2.1.59    "Excluded Parties" means (a) Samuel Bankman-Fried, (b) Zixiao "Gary" Wang, (c) Nishad Singh, (d) Caroline Ellison, (e) any former director, officer or employee of any Debtor not incumbent as of the Confirmation Date, or (f) any other Entity associated with the Debtors that is identified by the Debtors in the Plan or the Plan Supplement as an Excluded Party.

2.1.60    "Exculpated Parties" means (a) the Debtors; (b) the Committee and its current members, in their capacities as such; (c) the Fee Examiner; and (d) with respect to each Entity named in (a) through (c), such Entity's current directors, officers, employees, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives solely when acting in any such capacities, in each case, current as of the Confirmation Date.  Notwithstanding anything to the contrary in the Plan or the Plan Supplement, no Excluded Party shall be an Exculpated Party.

2.1.61    "Executory Contract" means a contract to which one or more of the Debtors is a party and that such Debtor may assume or reject under section 365 or 1123 of the Bankruptcy Code.

2.1.62    "Federal Judgment Rate" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

2.1.63    "Fee Examiner" means Katherine Stadler, as Fee Examiner appointed under the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834].

2.1.64    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, vacated or amended, and as to which the time to appeal, seek *certiorari* or move for a new trial, stay, re-argument or rehearing has expired and no appeal, petition for *certiorari* or motion for a new trial, stay, re-argument or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for *certiorari*, or motion for a new trial, stay, re-argument or rehearing that has been or may be filed shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, stay, re-argument or

rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 9024, may be filed relating to an order shall not by itself cause such order to not be a Final Order.

2.1.65      "FTT" means the token native to the FTX.com Exchange.

2.1.66      "FTT Claim" means any FTT Customer Entitlement Claim or any Claim of any kind or nature (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity in the capacity as a holder of FTT that is not a Section 510(b) FTT Claim.

2.1.67      "FTT Customer Entitlement Claim" means a Customer Entitlement Claim in respect of an FTT.

2.1.68      "FTX Bahamas PropCo" means FTX Property Holdings Ltd.

2.1.69      "FTX DM" means FTX Digital Markets Ltd.

2.1.70      "FTX Exchanges" means any exchange or trading platform operated by a Debtor as of the Petition Date.

2.1.71      "FTX Trading" has the meaning set forth in the Article 1.

2.1.72      "FTX Turkey" has the meaning set forth in the Section 1.2(a).

2.1.73      "FTX.com AWS Wallets" means the AWS Wallets associated with FTX.com Exchange.

2.1.74      "FTX.com Exchange" means the FTX.com trading platform.

2.1.75      "FTX.US AWS Wallets" means the AWS Wallets associated with the FTX.US Exchange.

2.1.76      "FTX.US Exchange" means the FTX.US trading platform.

2.1.77      "General Administrative Claim" means an Administrative Claim other than a Professional Claim.

2.1.78      "General Convenience Claim" means (a) any General Unsecured Claim Allowed in an amount equal to or less than $[•] or (b) any General Unsecured Claim Allowed in an amount greater than $[•] but that is reduced to an amount equal to or less than $[•] by an irrevocable written election of the Holder of such General Unsecured Claim made on a properly executed and delivered Ballot; *provided* that where any portion of a General Unsecured Claim has been transferred or subdivided, any transferred or subdivided portion shall continue to be treated together with the entire initial General Unsecured Claim for purposes of determining whether any portion of such General Unsecured Claim qualifies as a General Convenience Claim.

2.1.79    "General Pool" means (a) collectively, (i) all fiat and Digital Assets held by the Debtors not allocated to the Dotcom Customer Pool, the U.S. Customer Pool or a Separate Subsidiary; (ii) all excess distributable value of any non-Debtor Subsidiary (other than FTX DM) after satisfaction of all claims against such non-Debtor Subsidiary; (iii) all excess distributable value of the Separate Subsidiaries after satisfaction of all Allowed Separate Subsidiary Claims; (iv) all proceeds from all Avoidance Actions and litigation Claims of any Debtor other than the Dotcom Customer Preference Actions and the U.S. Customer Preference Actions; (v) all proceeds from the sale, disposition or other monetization of other property of the Debtors (including the venture investments held by the Debtors) other than FTX DM, the FTX.com Exchange and the FTX.US Exchange; (vi) a ratable [•] percent interest in the U.S. Customer Pool;[5] (vii) 100 percent of the residual interest in the Dotcom Customer Pool after all Dotcom Customer Entitlement Claims are satisfied in full; (viii) 100 percent of the residual interest in the U.S. Customer Pool after all U.S. Customer Entitlement Claims are satisfied in full; (ix) all other property of the Debtors or the Wind Down Estates, *less* (b) the Case Expenses allocated to the U.S. Customer Pool pursuant to Section 3.7; *provided* that the General Pool does not include any asset in the Dotcom Customer Pool or the U.S. Customer Pool.

2.1.80    "General Unsecured Claim" means any Claim that is not a (a) Administrative Claim, (b) 503(b)(9) Claim, (c) Priority Tax Claim, (d) Other Priority Claim, (e) Secured Claim, (f) Separate Subsidiary Claim, (g) Dotcom Customer Entitlement Claim, (h) U.S. Customer Entitlement Claim, (i) NFT Customer Entitlement Claim, (j) Dotcom Convenience Claim, (k) U.S. Convenience Claim, (l) General Convenience Claim, (m) Intercompany Claim, (n) Subordinated Claim, (o) FTT Claim, (p) Section 510(b) Claim, (q) Dotcom Intercompany Shortfall Claim or (r) U.S. Intercompany Shortfall Claim.

2.1.81    "Global Settlement" has the meaning set forth in Section 5.2.

2.1.82    "Governmental Bar Date" means 4:00 p.m. (Eastern Time) on September 29, 2023.

2.1.83    "Governmental Unit" means governmental unit as defined in section 101(27) of the Bankruptcy Code.

2.1.84    "Hacking Incident" means the November 2022 electronic attack against the Debtors and the FTX Exchanges.

2.1.85    "Holder" means an Entity holding a Claim against or an Interest in any of the Debtors.

2.1.86    "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

---

[5]    Note to Draft:  Percentage to be determined based on size of Alameda's positions on the FTX.US Exchange.

2.1.87    "Initial Distribution Date" means the date determined by the Plan Administrator, in his or her reasonable discretion and in accordance with the Plan Administration Agreement, to commence Distributions under the Plan.

2.1.88    "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code, includes any non-statutory insiders of the Debtors and Affiliates of the Debtors, including, among others, Samuel Bankman-Fried, Zixiao "Gary" Wang, Nishad Singh and Caroline Ellison.

2.1.89    "Intercompany Claim" means any Claim of whatever nature and arising at whatever time held by a Debtor against another Debtor, other than the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim.

2.1.90    "Intercompany Interest" means any Equity Security, including any issued or unissued share of common stock, preferred stock or other instrument, evidencing an ownership interest in a Debtor or a subsidiary held by another Debtor.

2.1.91    "Interest" means any Equity Interest or Intercompany Interest.

2.1.92    "IRS" means the Internal Revenue Service.

2.1.93    "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

2.1.94    "NFT Customer Entitlement Claim" means a Customer Entitlement Claim for the return of an Available NFT.

2.1.95    "NFTs" means non-fungible tokens.

2.1.96    "Non-Customer Bar Date" means 4:00 p.m. (Eastern Time) on June 30, 2023.

2.1.97    "Notice and Claims Agent" means Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, retained and approved by the Bankruptcy Court as the Debtors' notice and claims agent.

2.1.98    "Other Administrative Claim" means any Administrative Claim that is not a Professional Claim or Claim for U.S. Trustee Fees.

2.1.99    "Other Equity Interest" means any Equity Interest that is not a Preferred Equity Interest.

2.1.100    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

2.1.101    "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

2.1.102    "Petition Date" means (a) November 11, 2023, with respect to each Debtor other than West Realm Shires Inc. and (b) November 14, 2023, with respect to West Realm Shires Inc.

2.1.103    "Plan" has the meaning set forth in Section 1.1.

2.1.104    "Plan Administration Agreement" means the agreement between the Debtors and the Plan Administrator governing the Plan Administrator's rights and obligations in connection with the Plan and Wind Down Estates, dated as of the Effective Date, which shall be filed as part of the Plan Supplement.

2.1.105    "Plan Administrator" means the Debtors' Chief Restructuring Officer, and any successor to such Person, who shall administer the Debtors' Estates after the Effective Date in accordance with the Plan Administration Agreement.

2.1.106    "Plan Assets" means all property of each Estate and any property retained by any Debtor under the Plan.

2.1.107    "Plan Supplement" means the initial compilation of documents and forms of documents, schedules and exhibits to the Plan, to be filed and available on the Notice and Claims Agent's website at https://restructuring.ra.kroll.com/FTX/ no later than seven days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

2.1.108    "Pre-Distribution Requirements" has the meaning set forth in Section 7.13.

2.1.109    "Pre-Launch Cryptocurrency" means an asset that would have been a DLT Digital Asset but for the fact that such asset has not been issued and is not transferable using distributed ledger or blockchain technology as of the Petition Date, including PYTH and HOLE.

2.1.110    "Preferred Equity Interest" means with respect to a Debtor, Equity Interests in such Debtor that is entitled to preference or priority over any other Equity Interest in such Debtor with respect to the payment of dividends or distribution of assets upon liquidation or both, including (a) series A preferred stock issued by West Realm Shires Inc., (b) series B preferred stock issued by FTX Trading, (c) series B-1 preferred stock issued by FTX Trading, and (d) series C preferred stock issued by FTX Trading.

2.1.111    "Prepetition" means, with respect to each Debtor, prior to the Petition Date for such Debtor.

2.1.112    "Preserved Potential Claim" means the Causes of Action set out in the Exhibit [•] hereto.

2.1.113    "Priority Tax Claim" means a Claim of a Governmental Unit against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

2.1.114    "Pro Rata" means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims and estimated in such multiple Classes.

2.1.115    "Professional" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.1.116    "Professional Claim" means an Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional from the Petition Date through and including the Confirmation Date.

2.1.117    "Professional Fee Escrow Account" means an account to be funded by the Debtors upon the Effective Date in an amount equal to the Professional Fee Reserve Amount.

2.1.118    "Professional Fee Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals entered by the Bankruptcy Court* on January 9, 2023 [D.I. 435].

2.1.119    "Professional Fee Reserve Amount" means the aggregate amount of unpaid Professional Claims for all Professionals employed by the Debtors and the Committee through and including the Confirmation Date as estimated by the Debtors in accordance with Section 3.4.3.

2.1.120    "Proof of Claim" means a proof of Claim filed against any of the Debtors in these Chapter 11 Cases.

2.1.121    "Rejected Contract Claims Bar Date" means, with respect to any Executory Contract or Unexpired Lease that is rejected pursuant to this Plan, 4:00 p.m. (Eastern Time) on the earlier of (a) the 30th day after entry by the Bankruptcy Court of an order providing for the rejection of such Executory Contract or Unexpired Lease and (b) the 30th day after the Effective Date; *provided* that the deadline for filing any rejection damages claim in connection with any Executory Contract or Unexpired Lease rejected pursuant to a prior order of the Bankruptcy Court shall be the date set forth in the respective order authorizing such rejection.

2.1.122    "Released Parties" means the Exculpated Parties.  Notwithstanding anything to the contrary in the Plan or Plan Supplement, no Excluded Party shall be a Released Party.

2.1.123    "<u>Releasing Parties</u>" means (a) the Debtors; (b) the Committee and its current members, in their capacities as such; (c) the Holders of all Claims who vote to accept the Plan; (d) the Holders of all Claims that are Unimpaired under the Plan; (e) the Holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) the Holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth therein; (g) all other Holders of Claims or Interests to the maximum extent permitted by law.  Holders who were not provided a Ballot or an Election Form and are not listed in clauses (a) through (g) above are not Releasing Parties.

2.1.124    "<u>Schedules</u>" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors in these Chapter 11 Cases, each as may be amended, supplemented or modified from time to time.

2.1.125    "<u>Section 510(b) Claim</u>" means a Claim subject to subordination under section 510(b) of the Bankruptcy Code, including Section 510(b) FTT Claims.

2.1.126    "<u>Section 510(b) FTT Claim</u>" means any Claim (a) arising from the rescission of a purchase or sale of FTT, (b) for damages arising from the purchase or sale of FTT, or (c) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

2.1.127    "<u>Secured Claim</u>" means a Claim (a) secured by a Lien on property in which an Estate has an interest, to the extent such Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code and to the extent of the value of its Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

2.1.128    "<u>Securities Act</u>" means the United States Securities Act of 1933, as amended.

2.1.129    "<u>Security</u>" means a security as defined in section 2(a)(1) of the Securities Act.

2.1.130    "<u>Separate Subsidiaries</u>" means the Debtors listed in the <u>Exhibit</u> [•] hereto, as may be updated, supplemented and amended from time to time in accordance with the terms of the Plan Supplement.[6]

2.1.131    "<u>Separate Subsidiary Claim</u>" means any Claim against a Debtor that is a Separate Subsidiary.

---

[6]    <u>Note to Draft</u>:  The Debtors may identify in this exhibit certain subsidiaries that are solvent and historically separate.

-14-

2.1.132    "SNG Investments" has the meaning set forth in Section 1.2(b).

2.1.133    "Specially Designated Nationals and Blocked Persons" means individuals and companies owned or controlled by, or acting for or on behalf of, sanctioned countries as well as individuals, groups and entities, such as terrorists and narcotics traffickers designated under various sanctions programs as determined by the United States Treasury's Office of Foreign Assets Control.

2.1.134    "Solicitation Procedures Order" means the order (a) approving the Disclosure Statement; (b) establishing a voting record date for the Plan; (c) approving solicitation packages and procedures for the distribution thereof; (d) approving the forms of Ballots; (e) establishing procedures for voting on the Plan and (f) establishing notice and objection procedures for the confirmation of the Plan, entered by the Bankruptcy Court on [•] [D.I. [•]], together with any supplemental order(s) that may be entered by the Bankruptcy Court in connection therewith.

2.1.135    "Stablecoin" means any Digital Asset designed to maintain a stable value relative to a reserve asset, such as a fiat currency or exchange-traded commodity.

2.1.136    "Subordinated Claim" means a Claim for regulatory fines and penalties, U.S. federal and state income or employment taxes, similar foreign taxes and any other Claim that has been subordinated on the basis of structural subordination, equitable subordination, laws or policies subordinating recoveries to claims by victims of crime or fraud, or any other grounds available under applicable law.

2.1.137    "Subsequent Distribution Date" means a date after the Initial Distribution Date selected by the Plan Administrator for Distributions in accordance with Section 7.1.2.

2.1.138    "Terms of Service" means any contract between an FTX Exchange and its customers that governs the terms of use of such FTX Exchange by those customers.

2.1.139    "U.S. Convenience Claim" means (a) any U.S. Customer Entitlement Claim Allowed in an amount equal to or less than $[•], or (b) any U.S. Customer Entitlement Claim Allowed in an amount greater than $[•] but that is reduced to an amount equal to or less than $[•] by an irrevocable written election of the Holder of such U.S. Customer Entitlement Claim made on a properly executed and delivered Ballot; *provided* that where any portion of a U.S. Customer Entitlement Claim has been transferred or subdivided, any transferred or subdivided portion shall continue to be treated together with the entire initial U.S. Customer Entitlement Claim for purposes of determining whether any portion of such U.S. Customer Entitlement Claim qualifies as a U.S. Convenience Claim.

2.1.140    "U.S. Customer Entitlement Claim" means any Customer Entitlement Claim against the FTX.US Exchange that is not a FTT Customer Entitlement Claim or a NFT Customer Entitlement Claim.

2.1.141    "U.S. Customer Pool" means (a) collectively, (i) all fiat currency in segregated accounts designated by the Debtors as accounts for the benefit of customers associated with the FTX.US Exchange held by the Debtors on the Petition Date; (ii) all Digital

Assets (other than Available NFTs) held by the Debtors and identified by the Debtors as held for customers in FTX.US AWS Wallets on the Petition Date; (iii) all proceeds relating to the Hacking Incident recovered by the Debtors to the extent that such proceeds are in respect of Digital Assets held in FTX.US AWS Wallets before, on or after the Petition Date; (iv) all proceeds from any Claim or Cause of Action against any customer of the FTX.US Exchange and U.S. Customer Preference Actions; (v) all proceeds from the sale, disposition or other monetization of property of the Debtors associated with the FTX.US Exchange; (vi) the U.S. Intercompany Shortfall Claim, *less* (b) (i) the amount necessary to satisfy the U.S. Convenience Claim and (ii) the Case Expenses allocated to the U.S. Customer Pool pursuant to Section 3.7.

2.1.142    "U.S. Customer Preference Actions" means any and all Causes of Action to avoid any preferential payments or transfers of property from the FTX.US Exchange pursuant to section 547 of the Bankruptcy Code, and any recovery action related thereto under section 550 of the Bankruptcy Code, or under any similar or related local, state, federal or foreign statutes or common law.

2.1.143    "U.S. Exchange Shortfall Amount" means $[•].[7]

2.1.144    "U.S. Intercompany Shortfall Claim" means a Claim against the General Pool subject to the waterfall priorities set forth in Section 4.2 in an amount equal to the U.S. Exchange Shortfall Amount.

2.1.145    "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

2.1.146    "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

2.1.147    "Unclaimed Distribution" means any Distribution under the Plan on account of an Allowed Claim to a Holder that has not:  (a) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check; (b) given written notice to the Distribution Agent of an intent to accept a particular Distribution; (c) responded in writing to the request of the Distribution Agent for information necessary to facilitate a particular Distribution or (d) taken any other action necessary to facilitate such Distribution.

2.1.148    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

2.1.149    "Unimpaired" means any Claim or Interest that is not Impaired.

---

[7]    Note to Draft:  This value will represent the historical shortfall in the accounts associated with the FTX.US Exchange at the time of commencement of the Chapter 11 Cases, and will be set as the Debtors' estimate of the difference as of the Petition Date between (a) the aggregate amount of U.S. Customer Entitlement Claims and (b) the aggregate fair market value of (i) fiat currency in segregated accounts, (ii) Digital Assets in AWS Wallets (other than NFTs and FTT) and (iii) Digital Assets subject to the Hacking Incident.

2.1.150    "Voluntary Release by Holders of Claims and Interests" means the release by Holders of Claims and Interests as set forth in Section 10.5.

2.1.151    "Voting" means the process by which a Holder of a Claim may vote to accept or reject the Plan, pursuant to the conditions in Article 4.

2.1.152    "Voting Deadline" means [•] (Eastern Time) on [•], by which time all Ballots must be actually received by the Notice and Claims Agent.

2.1.153    "Wind Down Budget" means the budget to fund the Wind Down Estate, which shall be included in the Plan Supplement, as may be updated, supplemented and amended from time to time in accordance with the terms of the Plan Supplement.

2.1.154    "Wind Down Cash Proceeds" means all Cash proceeds from the sale, disposition or other monetization of Plan Assets available for Distribution by the Plan Administrator, other than Cash reserved or applied by the Plan Administrator (a) to make Distributions under the Plan to Holders of Allowed Administrative Claims, Allowed Other Priority Claims or Allowed Secured Claims or (b) to pay expenses and costs of administering the Wind Down Estates.

2.1.155    "Wind Down Estate" means the Estate of each Debtor after the Effective Date of the Plan.

2.2.    Rules of Interpretation

For the purposes of this Plan:  (a) any reference herein to the word "including" or word of similar import shall be read to mean "including without limitation"; (b) unless otherwise specified, all references herein to "Articles" are references to Articles herein, hereof or hereto; (c) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan; (d) captions and headings to Articles are inserted for the convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) all references to docket numbers of documents filed in these Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (h) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to these Chapter 11 Cases, unless otherwise stated; (i) any reference herein to a contract, agreement, lease, plan, policy, document or instrument being in a particular form or on particular terms and conditions means that the same shall be substantially in that form or substantially on those terms and conditions; (j) any reference herein to a contract, agreement, lease, plan, policy, document or instrument or schedule or exhibit thereto, whether or not filed, shall mean the same as amended, restated, modified or supplemented from time to time in accordance with the terms hereof or thereof; (k) any immaterial effectuating provisions may be interpreted by the Debtors and the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order; (l) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and permitted assigns; (m) except as otherwise

expressly provided in this Plan, where this Plan contemplates that any Debtor or the Plan Administrator shall take any action, incur any obligation, issue any security or adopt, assume, execute or deliver any contract, agreement, lease, plan, policy, document or instrument on or prior to the Effective Date, the same shall be duly and validly authorized by the Plan and effective against and binding upon such Debtor and/or the Plan Administrator, as applicable, on and after the Effective Date without further notice to, order of or other approval by the Bankruptcy Court, action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of the board of directors of any Debtor or any other Entity and (n) except as otherwise provided in the Plan, anything required to be done by the Debtors or the Plan Administrator, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

2.3.    <u>Governing Law</u>

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the construction and implementation of the Plan and any agreement, document or instrument executed or entered into in connection with the Plan.

2.4.    <u>Computation of Time</u>

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, and all dates and times shall be determined based on prevailing time in Wilmington, Delaware.

**3.    A̲D̲M̲I̲N̲I̲S̲T̲R̲A̲T̲I̲V̲E̲ ̲E̲X̲P̲E̲N̲S̲E̲ ̲A̲N̲D̲ ̲P̲R̲I̲O̲R̲I̲T̲Y̲ ̲C̲L̲A̲I̲M̲S̲**

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Professional Claims and Priority Tax Claims, payment of which is provided for below.

3.1.    Administrative Claim Bar Date

Any request for payment of an Administrative Claim must be filed and served on the Plan Administrator pursuant to the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order on or prior to the Administrative Claim Bar Date; *provided* that no request for payment is required to be filed and served pursuant to this Section 3.1 with respect to any:

(a)    Administrative Claim that is Allowed as of the Administrative Claim Bar Date;

(b)    503(b)(9) Claim;

(c)    Professional Claim; or

(d)    Claim for U.S. Trustee Fees.

Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against any Wind Down Estate and such Administrative Claim shall be deemed satisfied as of the Effective Date without the need for any objection from the Plan Administrator or any notice to or action, order or approval of the Bankruptcy Court.

Any objection to a request for payment of an Administrative Claim that is required to be filed and served pursuant to this Section 3.1 must be filed and served on the Plan Administrator and the requesting party creditor (a) no later than 90 days after the Administrative Claim Bar Date or (b) by such later date as may be established by order of the Bankruptcy Court upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

3.2.    General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on or as reasonably practicable after the later of (a) the Effective Date or (b) the date on which such Claim is Allowed.

3.3.    503(b)(9) Claims

Except to the extent that a Holder of an Allowed 503(b)(9) Claim agrees to less favorable treatment, the Holder of each Allowed 503(b)(9) Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed 503(b)(9) Claim on or as reasonably practicable after the later of (a) the Effective Date or (b) the date on which such Claim is Allowed.

3.4.    Professional Claims

3.4.1    Final Fee Applications.  All final requests for payment of Professional Claims shall be filed and served no later than 60 days after the Effective Date, in accordance with the procedures established under the Professional Fee Order and the Confirmation Order.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders.

3.4.2    Professional Fee Escrow Account.  The Debtors shall establish and fund the Professional Fee Escrow Account on or prior to the Effective Date.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Wind Down Estates.  The Plan Administrator shall pay Professional Claims in Cash no later than five Business Days after such Claims are Allowed by Final Order of the Bankruptcy Court.  Any funds remaining in the Professional Fee Escrow Account following the approval of all Professionals' final fee applications provided for in Section 3.4.1 and payment of all Professionals' Allowed Professional Claims shall be allocated between the Dotcom Customer Pool, the U.S. Customer Pool and the General Pool pursuant to the terms of the Plan Supplement and shall be distributed by the Plan Administrator pursuant to the Plan.

3.4.3    Professional Fee Reserve Amount.  Professionals shall provide good-faith estimates of their Professional Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than seven days prior to the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional does not provide such an estimate, the Debtors may estimate, in their reasonable discretion, the Professional Claims of such Professional.

3.4.4    Post-Effective Date Fees and Expenses.  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Plan Administrator, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors, the Plan Administrator or the Committee, as the case may be, in each case

-20-

in accordance with the Wind Down Budget.  Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Plan Administrator or, solely with respect to the matters set forth in <u>Section 13.9</u>, the Committee, may employ and pay any Professional in the ordinary course of business, in each case subject to the Wind Down Budget.

3.5.    <u>Statutory Fees Payable Pursuant to 28 U.S.C. § 1930</u>

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, including any applicable interest payable under section 3717 of Title 31 of the United States Code, shall be paid by the Debtors.  On and after the Effective Date, to the extent applicable, the Plan Administrator shall pay any and all such fees and interest when due and payable (including any fraction thereof) until the earliest of the Chapter 11 Cases being closed, dismissed or converted to cases under chapter 7 of the Bankruptcy Code.

3.6.    <u>Priority Tax Claims</u>

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, or as ordered by the Bankruptcy Court, the Holder of an Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

3.7.    <u>Expense Allocation</u>

Unless otherwise specified herein, the Plan Administrator shall allocate Administrative Claims, professional or other fees and expenses related to the implementation and Consummation of the Plan and expenses and costs of administering the Wind Down Estates (collectively, "Case Expenses") as follows:  (a) all Case Expenses related to the Bahamian Subsidiaries or the sale, disposition or other monetization of property of the Debtors associated with the FTX.com Exchange shall be allocated solely to the Dotcom Customer Pool; (b) all Case Expenses related to the sale, disposition or other monetization of property of the Debtors associated with the FTX.US Exchange shall be allocated solely to the U.S. Customer Pool; and (c) all other Case Expenses shall be allocated between the Dotcom Customer Pool, the U.S. Customer Pool and the General Pool pursuant to the terms of the Plan Supplement.[8]

---

[8]    <u>Note to Draft</u>:  The Debtors will allocate such other Case Expenses *pro rata* based on their estimate of relative distributable value in each pool as of the date of confirmation of the Plan.

**4.    CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS**

4.1.    Classification of Claims and Interests.

All Claims and Interests except for Administrative Claims, 503(b)(9) Claims and Priority Tax Claims are classified in the Classes set forth in this Article 4. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is Allowed as a Claim or Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

4.1.1    Summary of Classification and Treatment. The classification of Claims and Interests pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 3 | Separate Subsidiary Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 4A | Dotcom Customer Entitlement Claims | Impaired | Entitled to Vote |
| 4B | U.S. Customer Entitlement Claims | Impaired | Entitled to Vote |
| 4C | NFT Customer Entitlement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6A | Dotcom Convenience Claims | Impaired | Entitled to Vote |
| 6B | U.S. Convenience Claims | Impaired | Entitled to Vote |
| 6C | General Convenience Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | FTT Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 11 | Preferred Equity Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 12 | Section 510(b) Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 13 | Other Equity Interests | Impaired | Not Entitled to Vote, Deemed to Reject |

4.2.    <u>General Pool Waterfall</u>

Proceeds in the General Pool shall be applied in the following manner:

(a)    *first*, to pay (i) Allowed Claims subject to the treatment set forth in <u>Article 3</u> (other than Case Expenses that are not allocated to the General Pool pursuant to <u>Section 3.7</u>) and (ii) Allowed Other Priority Claims;

(b)    *second*, to pay the Allowed General Convenience Claims;

(c)    *third*, with respect to [•] percent of the amount next available for Distribution from the General Pool, to pay the Allowed Dotcom Intercompany Shortfall Claim and the Allowed U.S. Intercompany Shortfall Claim on a Pro Rata basis;

(d)    *fourth*, with respect to the remaining amount available for Distribution from the General Pool, to pay Allowed General Unsecured Claims, the Allowed Dotcom Intercompany Shortfall Claim and the Allowed U.S. Intercompany Shortfall Claim on a Pro Rata basis; and

(e)    *fifth*, to pay Allowed Subordinated Claims.

4.3.    <u>Treatment of Claims and Interests</u>

4.3.1    <u>Class 1 – Other Priority Claims</u>

(a)    *Classification*:  Class 1 consists of all Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed Other Priority Claim, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim becomes Allowed and (iii) such other date as may be ordered by the Bankruptcy Court.

(c)    *Voting*:  Claims in Class 1 are Unimpaired.  Each Holder of an Other Priority Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of Other Priority Claims is entitled to vote to accept or reject the Plan.

4.3.2    <u>Class 2 –Secured Claims</u>

(a)    *Classification*:  Class 2 consists of Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive one of the following treatments, in the sole discretion of the Plan Administrator:  (i) payment in full in Cash; (ii) delivery of the collateral securing such Allowed Secured Claim; or (iii) treatment of such Allowed Secured Claim in any other manner that renders the Claim Unimpaired.

(c)     *Voting*:  Claims in Class 2 are Unimpaired.  Each Holder of an Secured Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of an Secured Claim is entitled to vote to accept or reject the Plan.

### 4.3.3   Class 3 – Separate Subsidiary Claims

(a)     *Classification*:  Class 3 consists of all Separate Subsidiary Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Separate Subsidiary Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed Separate Subsidiary Claim, each Holder of an Allowed Separate Subsidiary Claim shall receive payment in full in Cash on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Allowed Separate Subsidiary Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*:  Claims in Class 3 are Unimpaired.  Each Holder of a Separate Subsidiary Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Separate Subsidiary Claim is entitled to vote to accept or reject the Plan.

### 4.3.4   Class 4A – Dotcom Customer Entitlement Claims

(a)     *Classification*:  Class 4A consists of all Dotcom Customer Entitlement Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Dotcom Customer Entitlement Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed Dotcom Customer Entitlement Claims, each Holder of an Allowed Dotcom Customer Entitlement Claim shall receive payment in Cash in an amount

equal to such Holder's Pro Rata share of the Dotcom Customer Pool.[9]

(c)   *Voting*:  Claims in Class 4A are Impaired.  Each Holder of a Dotcom Customer Entitlement Claims is entitled to vote to accept or reject the Plan.

4.3.5   <u>Class 4B – U.S. Customer Entitlement Claims</u>

(a)   *Classification*:  Class 4B consists of all U.S. Customer Entitlement Claims.

(b)   *Treatment*:  Except to the extent that a Holder of an Allowed U.S. Customer Entitlement Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed U.S. Customer Entitlement Claims, each Holder of an Allowed U.S. Customer Entitlement Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of the U.S. Customer Pool.

(c)   *Voting*:  Claims in Class 4B are Impaired.  Each Holder of a U.S. Customer Entitlement Claim is entitled to vote to accept or reject the Plan.

4.3.6   <u>Class 4C – NFT Customer Entitlement Claims</u>

(a)   *Classification*:  Class 4C consists of all NFT Customer Entitlement Claims.

(b)   *Treatment*:  Except to the extent that a Holder of an Allowed NFT Customer Entitlement Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed NFT Customer Entitlement Claim, each Holder of an Allowed NFT Customer Entitlement Claim shall receive the Available NFT associated with such Allowed NFT Customer Entitlement Claim.

(c)   *Voting*:  Claims in Class 4C are Impaired.  Each Holder of an NFT Customer Entitlement Claim is entitled to vote to accept or reject the Plan.

---

[9]   <u>Note to Draft</u>:  If the Debtors decide to establish the Offshore Exchange Company, the Debtors may determine that, rather than Cash, the Offshore Exchange Company will remit non-cash consideration to the Dotcom Customer Pool in the form of equity securities, tokens or other interests in the Offshore Exchange Company, or rights to invest in such equity securities, tokens or other interests ("<u>Take-Back Interests</u>").  Any Take-Back Interests will be made available to Holders of Dotcom Customer Entitlement Claims on a pro rata basis, subject to applicable securities and other laws.

4.3.7    Class 5 – General Unsecured Claims

      (a)    *Classification*:  Class 5 consists of all General Unsecured Claims.

      (b)    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of General Pool Distributions in accordance with the waterfall priority set forth in Section 4.2.

      (c)    *Voting*:  Claims in Class 5 are Impaired.  Each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

4.3.8    Class 6A – Dotcom Convenience Claims

      (a)    *Classification*:  Class 6A consists of all Dotcom Convenience Claims.

      (b)    *Treatment*:  On the later of the Initial Distribution Date or as soon as reasonably practicable after a Dotcom Convenience Claim becomes Allowed, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Dotcom Convenience Claim, each Holder of an Allowed Dotcom Convenience Claim shall receive payment in Cash in an amount equal to [•] percent of such Allowed Dotcom Convenience Claim;[10] *provided* that the aggregate amount of Cash received by Holders of Dotcom Convenience Claims on account of their Dotcom Convenience Claim shall not exceed $[•].

      (c)    *Voting*:  Claims in Class 6A are Impaired.  Each Holder of a Dotcom Convenience Claim is entitled to vote to accept or reject the Plan.

4.3.9    Class 6B – U.S. Convenience Claims

      (a)    *Classification*:  Class 6B consists of all U.S. Convenience Claims.

      (b)    *Treatment*:  On the later of the Initial Distribution Date or as soon as reasonably practicable after a U.S. Convenience Claim becomes Allowed, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed U.S. Convenience Claim, each Holder of an Allowed U.S. Convenience Claim shall receive payment in Cash in an amount equal to [•] percent of such

---

[10]    Note to Draft:  Threshold to be determined based on net present value of projected recoveries for Class 4A.

Allowed U.S. Convenience Claim;[11] *provided* that the aggregate amount of Cash received by Holders of U.S. Convenience Claims on account of their Dotcom Convenience Claim shall not exceed $[•].

(c)     *Voting*:  Claims in Class 6B are Impaired.  Each Holder of a U.S. Convenience Claim is entitled to vote to accept or reject the Plan.

4.3.10   Class 6C – General Convenience Claims

(a)     *Classification*:  Class 6C consists of all General Convenience Claims.

(b)     *Treatment*:  On the later of the Initial Distribution Date or as soon as reasonably practicable after a General Convenience Claim becomes Allowed, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed General Convenience Claim, each Holder of an Allowed General Convenience Claim shall receive payment in Cash in an amount equal to [•] percent of such Allowed General Convenience Claim;[12] *provided* that the aggregate amount of Cash received by Holders of General Convenience Claims on account of their Dotcom Convenience Claim shall not exceed $[•].

(c)     *Voting*:  Claims in Class 6C are Impaired.  Each Holder of a General Convenience Claim is entitled to vote to accept or reject the Plan.

4.3.11   Class 7 – Intercompany Claims

(a)     *Classification*:  Class 7 consists of all Intercompany Claims.

(b)     *Treatment*:  All Intercompany Claims shall be canceled, released or otherwise settled in full, and the Holders of Intercompany Claims shall not be entitled to, and shall not receive or retain, any Distributions, property or interest in property on account of such Claims under the Plan.

(c)     *Voting*:  Claims in Class 7 are Impaired.  Each Holder of an Intercompany Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of an Intercompany Claim is entitled to vote to accept or reject the Plan.

---

[11]   Note to Draft:  Threshold to be determined based on net present value of projected recoveries for Class 4B.

[12]   Note to Draft:  Threshold to be determined based on net present value of projected recoveries for Class 5.

### 4.3.12   Class 8 – Intercompany Interests

(a)     *Classification*:  Class 8 consists of all Intercompany Interests.

(b)     *Treatment*:  No Holder of an Intercompany Interest shall receive any Distributions on account of its Intercompany Interest.  On and after the Effective Date, all Intercompany Interests shall be canceled and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c)     *Voting*:  Claims in Class 8 are Impaired.  Each Holder of an Intercompany Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of an Intercompany Interest is entitled to vote to accept or reject the Plan.

### 4.3.13   Class 9 – Subordinated Claims

(a)     *Classification*:  Class 9 consists of all Subordinated Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Subordinated Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release and discharge of and in exchange for its Allowed Subordinated Claim, each Holder of an Allowed Subordinated Claim shall receive its Pro Rata share equal to such Holder's Pro Rata share of General Pool Distributions in accordance with the waterfall priority set forth in Section 4.2.

(c)     *Voting*:  Claims in Class 9 are Impaired.  Each Holder of a General Convenience Claim is entitled to vote to accept or reject the Plan.

### 4.3.14   Class 10 – FTT Claims

(a)     *Classification*:  Class 10 consists of all FTT Claims.

(b)     *Treatment*:  No Holder of a FTT Claim shall receive any Distributions on account of its FTT Claim.  On and after the Effective Date, all FTT Claims shall be canceled, released and extinguished and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c)     *Voting*:  Claims in Class 10 are Impaired.  Each Holder of a FTT Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of a FTT Claim is entitled to vote to accept or reject the Plan.

### 4.3.15  Class 11 – Preferred Equity Interests

(a)    *Classification*:  Class 11 consists of all Preferred Equity Interests.

(b)    *Treatment*:  No Holder of a Preferred Equity Interest shall receive any Distributions on account of its Preferred Equity Interest.  On and after the Effective Date, all Preferred Equity Interests shall be canceled, released and extinguished and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c)    *Voting*:  Claims in Class 11 are Impaired.  Each Holder of a Preferred Equity Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of a Preferred Equity Interest is entitled to vote to accept or reject the Plan.

### 4.3.1  Class 12 – Section 510(b) Claims

(a)    *Classification*:  Class 12 consists of all Section 510(b) Claims.

(b)    *Treatment*:  No Holder of a Section 510(b) Claim shall receive any Distributions on account of its Section 510(b) Claim.  On and after the Effective Date, all Section 510(b) Claims shall be canceled, released and extinguished and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c)    *Voting*:  Claims in Class 12 are Impaired.  Each Holder of a Section 510(b) Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of a Section 510(b) Claim is entitled to vote to accept or reject the Plan.

### 4.3.1  Class 13 – Other Equity Interests

(a)    *Classification*:  Class 13 consists of all Other Equity Interests.

(b)    *Treatment*:  No Holder of an Other Equity Interest shall receive any Distributions on account of its Other Equity Interest.  On and after the Effective Date, all Other Equity Interests shall be canceled, released and extinguished and shall be of no further force and effect, whether surrendered for cancelation or otherwise.

(c)    *Voting*:  Claims in Class 13 are Impaired.  Each Holder of an Other Equity Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  No Holder of an Other Equity Interest is entitled to vote to accept or reject the Plan.

4.4.    Valuation of Claims

Unless otherwise expressly provided herein, the value of a Claim in respect of a Digital Asset shall be calculated by converting the value of such Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the Digital Assets Conversion Table.[13]

4.5.    Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, the Plan shall not affect the Plan Administrator's rights in respect of any Unimpaired Claims, including legal and equitable defenses or setoff or recoupment rights with respect thereto.

4.6.    Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if:  (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims entitled to vote actually voting in such Class have voted to accept the Plan; and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims entitled to vote actually voting in such Class have voted to accept the Plan.

4.7.    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or an Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purpose of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4.8.    Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

4.9.    Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code

For purposes of Confirmation, section 1129(a)(10) of the Bankruptcy Code shall be satisfied if any one of Class 4A, 4B, 4C, 5, 6A, 6B, 6C or 9 accepts the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class or Classes of Claims and Interests.  Classes 7, 8, 10, 11, 12 and 13 are deemed to reject the Plan.

---

[13]    Note to Draft:  Where a Claim reflects an underlying Digital Asset (other than an NFT), such Claim will be liquidated in U.S. Dollars based on the fair market value at the Petition Date.  The fair market value will be determined based on a conversion table attached to the Digital Assets Estimation Order, approving the omnibus digital assets estimation motion filed by the Debtors in advance of Plan solicitation.

5. <u>IMPLEMENTATION OF THE PLAN</u>[14]

5.1.    <u>Operations Between the Confirmation Date and Effective Date</u>

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate as debtors-in-possession, subject to all applicable orders of the Bankruptcy Court.

5.2.    <u>Global Settlement of Claims and Interests</u>

As discussed in detail in the Disclosure Statement and as otherwise provided under the Plan, and pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, treatment, Distributions, releases and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "<u>Global Settlement</u>") of various Claims, Interests, Causes of Action, controversies and disputes arising from or related to, among other things:  (a) the purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) the contractual, structural and legal subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim, Interest or any Distribution to be made on account of such Allowed Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) the allocation of corporate and administrative expenses across each of the Debtors; (f) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (g) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (h) the costs and risks to the Debtors' Estates and creditor recoveries otherwise associated with prolonged litigation of each of the foregoing.

Pursuant to, and as part of, the Global Settlement:  (i) the value of Claims in respect of Digital Assets shall be calculated pursuant to <u>Section 4.4</u>; (ii) the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim shall be recognized for the benefit of Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims; (iii) Claims shall be classified and treated as set forth in <u>Article 4</u>, which entitles Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims to recover against the (x) Dotcom Customer Pool and the U.S.

---

[14]   <u>Note to Draft</u>:  In addition to the implementation mechanisms described herein, the Debtors also may establish a new limited liability trust company (the "<u>FTX Ventures Trust</u>") to hold the Debtors' illiquid venture capital, private company and token investments that will not be sold at the time of effectiveness and are not anticipated to be sold by the Plan Administrator promptly after effectiveness as part of the Wind Down Estate.  The purpose of the FTX Ventures Trust will be to make cash distributions on a time horizon to be determined based on the nature of its investments.

The Debtors will determine the management structure and corporate governance arrangements for the FTX Ventures Trust in consultation with customer and creditor representatives prior to confirmation of the Plan.  The Debtors have made no determination whether the FTX Ventures Trust will be owned by the Wind Down Estate or separately traded.

Customer Pool, respectively, and (y) General Pool, in accordance with the waterfall priority set forth in <u>Section 4.2</u>; (iv) the Consolidated Debtors shall be substantively consolidated as set forth in <u>Section 5.3</u>; (v) Intercompany Claims shall be canceled; (vi) the Subordinated Claims shall be subordinated to Claims of other Holders; (vii) FTT Claims and Equity Interests shall be canceled; and (viii) Distributions to customers and creditors shall be made in Cash (other than in Available NFTs) as set forth in <u>Articles 4</u> and <u>7</u>.

The Plan shall be deemed a motion to approve the Global Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

Any settlement agreement entered into among any of the Debtors and Holders of Claims or Interests that is contained in the Plan Supplement is incorporated into the Plan and shall become effective in accordance with its terms.

5.3.    <u>Substantive Consolidation</u>

As discussed in detail in the Disclosure Statement and as otherwise provided pursuant to the Plan, and pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Global Settlement, the classification, treatment, Distributions, releases and other benefits provided under the Plan, the Plan shall be deemed a motion by the Debtors seeking the approval, effective as of the Effective Date, of the substantive consolidation of the Estates of the Consolidated Debtors into a single Estate for the limited purposes of the Plan, including Voting, Confirmation and Distribution subject in all respects to (a) the classification and treatment of Claims and Interests set forth in <u>Article 4</u> and (b) this <u>Section 5.3</u>.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such substantive consolidation, as well as findings by the Bankruptcy Court that such substantive consolidation is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

Except as otherwise provided herein and subject in all respects to the classification and treatment of Claims and Interests set forth in <u>Article 4</u>, as a result of the substantive consolidation set forth in this <u>Section 5.3</u>:  (a) all assets (other than the Dotcom Customer Pool and the U.S. Customer Pool) and all liabilities of the Consolidated Debtors shall be treated as though they were merged; (b) all guarantees of any Consolidated Debtor of the payment, performance or collection of obligations of another Consolidated Debtor shall be eliminated and canceled; (c) all joint obligations of two or more Consolidated Debtors and multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the Consolidated Debtors; (d) all Claims between any Consolidated Debtors (other than the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim) shall be deemed canceled; and (e) each Claim filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed filed against the Consolidated Debtors and a single obligation of the Estate of the Consolidated Debtors.  Except as otherwise provided herein, the substantive consolidation set forth in this <u>Section 5.3</u> shall not

affect (other than for purposes of the Plan as set forth in this section): (i) the legal and organizational structure of the Consolidated Debtors; (ii) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff; *provided* that any Claim or Interest that is Allowed against any Consolidated Debtor shall be deemed Allowed against the Estate of all Consolidated Debtors; or (iii) distributions out of any insurance contracts or any Entity's or Person's rights, if any, to proceeds of such insurance contracts.  The Plan shall not otherwise result in the merger or affect the separate legal existence of each Debtor for any other purpose.

### 5.4.  Wind Down Estates

The purpose of the Wind Down Estates is to monetize and distribute the Plan Assets, with no objective to continue or engage in the conduct of a trade or business.  The Wind Down Estates shall administer, and close as necessary, the Chapter 11 Cases; administer, reconcile and settle claims; monetize remaining assets; and liquidate the Debtors and their non-Debtor subsidiaries pursuant to the terms of the Plan Supplement.  The Plan Administrator shall be vested with all powers and authority set forth in this Plan and the Plan Administration Agreement, shall be deemed to have been appointed as the Debtors' Estates' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2) and 704(a)(5) of the Bankruptcy Code.

### 5.5.  Plan Funding Mechanism

Distributions under the Plan shall be funded from (a) Cash on hand, (b) Available NFTs, (c) Wind Down Cash Proceeds, and (d) any other Plan Assets, except as expressly set forth herein.[15]

### 5.6.  Plan Administrator

The Plan Administrator shall be the Debtors' Chief Restructuring Officer, and appointment of the Plan Administrator shall be approved in the Confirmation Order.  The powers and duties of the Plan Administrator shall be set forth in this Plan and the Plan Administration Agreement.  The Plan Administrator shall report to the incumbent Board of Directors of the Debtors pursuant to the terms of this Plan and the Plan Administration Agreement.  The Plan Administrator shall be a fiduciary of the Wind Down Estates and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administration Agreement.

### 5.7.  Vesting of Assets

Except as otherwise expressly provided in this Plan or the Confirmation Order, as of the Effective Date, all Plan Assets shall vest in the Wind Down Estates free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code.  All property held for Distribution pursuant to the Plan shall be held by

---

[15]    Note to Draft:  If the Debtors decide to establish the Offshore Exchange Company, the Debtors may determine that, rather than Cash, the Offshore Exchange Company will remit non-cash consideration to the Dotcom Customer Pool in the form of Take-Back Interests.  *See* footnote 9.

the Plan Administrator in trust for the Holders of Allowed Claims and Interests and to pay the expenses of the administration of the Wind Down Estates, and shall not be deemed property of the Debtors or Wind Down Estates.

5.8.   D&O Policies

As of the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code.  The Debtors' D&O Policies purchased on or after the Petition Date shall continue in force following the Effective Date subject to the terms and conditions of such D&O Policies.  Coverage for defense and indemnity under any assumed or continued D&O Policies shall remain available within the definition of "Insured" in any of the D&O Policies subject to the terms and conditions of such D&O Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption or continuation, as applicable, of each D&O Policy.  Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption or continuation of the D&O Policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.  For the avoidance of doubt, the D&O Policies (i) are prefunded and will not require any additional premiums on or after the Effective Date, (ii) provide coverage for those insureds currently covered by such policies for the remaining term of such policies and (iii) in the case of the D&O Policies purchased on or after the Petition Date, provide runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

5.9.   Cancelation of Existing Interests

On the Effective Date, except as otherwise specifically provided for in the Plan or any agreement, instrument or other document incorporated into the Plan, the obligations of the Debtors under any Certificate, Interest, share, note, purchase right, option, warrant, intercreditor agreement, guaranty, indemnity or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest shall be canceled solely as to the Debtors, and the Debtors shall not have any continuing obligations thereunder and shall be released therefrom.

5.10.   Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind Down Estates or to any other Person pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the Distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing

-34-

or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

   5.11.   Preservation of Causes of Action

          Except as otherwise provided in Article 10 or the other provisions of the Plan, each Cause of Action of a Debtor shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the Wind Down Estates as of the Effective Date.  Any Claim or Cause of Action against any customer of an FTX Exchange arising out of or relating to any transaction on an FTX Exchange shall be a Claim or Cause of Action of the Debtors and shall vest exclusively in the Wind Down Estates as of the Effective Date.  Any such Claim or Cause of Action against any customer of the FTX.com Exchange shall vest exclusively in the Wind Down Estates for the benefit of the Dotcom Customer Pool, and any such Claim or Cause of Action against any customer of the FTX.US Exchange shall vest exclusively in the Wind Down Estates for the benefit of the US Customer Pool.  Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Plan Administrator expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of Confirmation, the Plan, the vesting of such Cause of Action in the Wind Down Estates, any order of the Bankruptcy Court or these Chapter 11 Cases.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors or the Plan Administrator, as applicable, will not pursue such Cause of Action.

   5.12.   Effectuating Documents and Further Transactions

          The Debtors or the Plan Administrator, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  The secretary, any assistant secretary or any other appropriate officer of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

          Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

**6.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1.    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) Executory Contracts or Unexpired Leases that are the subject of a pending motion to assume or (c) as is specifically described in the Plan to be assumed in connection with the Plan or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

6.2.    Claims Against the Debtors upon Rejection

No Executory Contract or Unexpired Lease rejected by the Debtors on or prior to the Effective Date shall create any obligation or liability of the Debtors that is not a Claim.  Any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Notice and Claims Agent before the Rejected Contract Claims Bar Date.  **Any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease that is not filed with the Notice and Claims Agent by the Rejected Contract Claims Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind Down Estates, the Plan Administrator or any of their property**.  Any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a General Unsecured Claim and shall be treated in accordance with Section 4.3.7.

6.3.    Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contracts or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

6.4.    <u>Reservation of Rights</u>

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Debtor has any liability thereunder.



**7.**   **PROVISIONS GOVERNING DISTRIBUTIONS**

7.1.   Distributions Timing

7.1.1   Initial Distribution Date.  On the Initial Distribution Date, the Distribution Agent shall commence Distributions under the Plan on account of each Claim that is Allowed on or prior to the Effective Date.[16]

7.1.2   Subsequent Distribution Dates.  The Plan Administrator shall identify, in his or her reasonable discretion and in accordance with the Plan Administration Agreement, periodic dates after the Initial Distribution Date to be Subsequent Distribution Dates for purposes of making additional Distributions under the Plan.  Each Subsequent Distribution Date shall be a Business Day.

7.1.3   Distributions to Holders of Claims Allowed After the Effective Date.  The Distribution Agent shall make Distributions to Holders of Claims Allowed after the Effective Date in accordance with the applicable provision of Article 4 on the first Subsequent Distribution Date after such Claim is Allowed.  Unless the Plan Administrator otherwise agrees, no partial Distribution shall be made with respect to such Claim until all disputes in connection with such Claim have been resolved by Final Order of the Bankruptcy Court.

7.2.   Distributions to Holders of Customer Entitlement Claims

7.2.1   Distributions of Dotcom Customer Entitlement Claims, U.S. Customer Entitlement Claim and Allocations of Wind Down Cash Proceeds.  On any Distribution Date, the Plan Administrator may direct the Distribution Agent to Distribute to the Holders of Allowed Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims the Wind Down Cash Proceeds that the Plan Administrator, in his or her reasonable discretion and in accordance with this Plan and the Plan Administration Agreement, determines are Wind Down Cash Proceeds that belong to the Dotcom Customer Pool or U.S. Customer Pool, respectively, in each case, in accordance with Sections 4.3.4 and 4.3.5.

7.2.2   Final Distribution at Closing of the Chapter 11 Cases.  On or prior to the closing of the Chapter 11 Cases, the Plan Administrator shall Distribute all remaining Wind Down Cash Proceeds to the Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims and Allowed General Unsecured Claims, respectively, in each case, in accordance with Sections 4.3.4, 4.3.5 and 4.3.7.

---

[16]   Note to Draft:  Distributions dates shall be determined by the Plan Administrator in his or her reasonable discretion.  To determine the "Initial Distribution Date," the Plan Administrator shall consider, among many factors, the costs associated with making Distributions, the assets and liabilities of the Wind Down Estate, liquidity, projected revenues and cash flows, status likelihood of successful resolution of current and future litigation and tax considerations.  The Initial Distribution Date may not be the Effective Date.

7.3.    Record Date and Delivery of Distributions

    7.3.1    Record Date for Distributions

In advance of each Distribution Date, the Plan Administrator shall establish a Distribution Record Date for purposes of determining the Holders of Allowed Claims entitled to receive a Distribution on such Distribution Date, which Distribution Record Date shall be no less than [•] and no more than [•] days prior to the corresponding Distribution Date.  On each Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on such Distribution Record Date.  If a Claim is transferred 20 or fewer days before the applicable Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

    7.3.2    Delivery of Distributions in General

Except as otherwise provided herein, the Distribution Agent, at the direction of the Plan Administrator, shall make all Distributions required under the Plan to Holders of Allowed Claims.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the applicable Distribution Record Date by the Distribution Agent, as appropriate: (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known address of such Holder if no Proof of Claim is filed or if the Debtors, the Plan Administrator or the Distribution Agent have been notified in writing of a change of address); (b) at the address set forth in any written notice of change of address delivered to the Notice and Claims Agent; or (c) at the address reflected in the Schedules if no Proof of Claim has been filed and the Notice and Claims Agent has not received a written notice of a change of address.  The Debtors, the Plan Administrator, the Distribution Agent and the Notice and Claims Agent shall not incur any liability whatsoever on account of the delivery of any Distributions under the Plan.

In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  Except as specifically provided in the Plan, Holders of Allowed Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

    7.3.3    Foreign Currency Exchange Rate

Except as otherwise provided herein, an order of the Bankruptcy Court or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollars at the Exchange Rate.

7.4.    Distribution Agent

        The Plan Administrator shall have the authority, in its sole discretion, to enter into an agreement with a Distribution Agent to facilitate the Distributions required under the Plan. To the extent the Plan Administrator determines to utilize a Distribution Agent to facilitate the Distributions, such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or Distributions required under the Plan; and (c) waive any right or ability to set off, deduct from or assert any Lien or other encumbrance against the Distributions required under the Plan to be distributed by such Distribution Agent.

        The Plan Administrator shall pay to the Distribution Agent all of its reasonable and documented fees and expenses without the need for any approvals, authorizations, actions or consents of the Bankruptcy Court or otherwise.  The Distribution Agent shall submit detailed invoices to the Plan Administrator for all fees and expenses for which the Distribution Agent seeks reimbursement, and the Plan Administrator shall pay those amounts that it, in its sole discretion, deems reasonable, and shall object to those fees and expenses, if any, that the Plan Administrator deems to be unreasonable.  In the event that the Plan Administrator objects to all or any portion of the amounts requested to be reimbursed in the Distribution Agent's invoice, the Plan Administrator and the Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Plan Administrator and the Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

7.5.    Fractional and *De Minimis* Distributions

        Notwithstanding anything herein to the contrary, the Plan Administrator and the Distribution Agent shall not be required to make Cash Distributions or payments of less than $[•].  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $[•] shall be forever barred from asserting such Claim against the Debtors, the Estates, the Plan Administrator, the Wind Down Estates or any of their property.

7.6.    Undeliverable Distributions

        In the event that any Distribution to any Holder is returned as undeliverable, or no address for such Holder is found in the Debtors' records, no further Distribution to such Holder shall be made unless and until the Plan Administrator or the Distribution Agent is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder not less than 30 days thereafter.  Undeliverable Distributions shall remain in the possession of the Plan Administrator or the Distribution Agent until such time as such Distribution becomes deliverable or such Distribution reverts to the Wind Down Estates or is canceled pursuant to Section 7.7 and shall not be supplemented with any interest, dividends or other accruals of any kind.  Nothing contained herein shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim whose Distribution is declared an undeliverable or Unclaimed Distribution.

7.7.    <u>Reversion</u>

Any Distribution under the Plan, including Distributions made by the Plan Administrator or the Distribution Agent in accordance with <u>Section 7.4</u>, that is an Unclaimed Distribution for a period of six months thereafter, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and such Unclaimed Distribution shall revest in the Wind Down Estates as Plan Assets with respect to Unclaimed Distributions on account of Claims.  Upon such revesting, the Claim of any Holder or its successors and assigns with respect to such property shall be canceled and forever barred, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.

7.8.    <u>Surrender of Canceled Instruments or Securities</u>

Except as otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent.  Subject to the foregoing sentence, regardless of any actual surrender of a Certificate, the deemed surrender shall have the same effect as if its Holder had actually surrendered such Certificate, and such Holder shall be deemed to have relinquished all rights, Claims and Interests with respect to such Certificate. Notwithstanding the foregoing paragraph, this <u>Section 7.8</u> shall not apply to any Claims reinstated pursuant to the terms of the Plan.

7.9.    <u>Setoffs</u>

Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553), applicable non-bankruptcy law, or such terms as may be agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, may, without any further notice to, or action, order or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or the Plan Administrator of any such Claims, rights and Causes of Action that such Debtor or the Plan Administrator may possess against such Holder.  In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

7.10.    <u>No Interest on Claims</u>

Unless otherwise specifically provided for herein or by Final Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims against the Debtors,

and no Holder of any Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

  7.11. <u>No Payment over the Full Amount</u>

    In no event shall a Holder of an Allowed Claim receive more than the full payment of such Allowed Claim. To the extent any Holder has received payment in full with respect to an Allowed Claim, such Allowed Claim shall be deemed satisfied and expunged from the claims registry without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court. To the extent that a Holder of an Allowed Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, the Plan Administrator or the Distribution Agent on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Plan Administrator or the Distribution Agent, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Plan Administrator annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

    The Plan Administrator may require any Holder of any Claim to submit satisfactory evidence that such Holder has not requested or received compensation for the same losses underlying such Claim in connection with any other judicial or administrative proceeding, including, without limitation, any proceedings with respect to: [(a) FTX DM, (b) FTX Turkey, (c) SNG Investments or (d) FTX Europe AG].[17] The Plan Administrator may, and may direct the Distribution Agent to, withhold any Distributions on such Claim until such time as satisfactory evidence is obtained or appropriate arrangements are in place that ensure no Holder receives more than any other Holder under the Plan, taking into account potential recoveries of all Holders.

    As a condition to receiving any Distribution under the Plan, the Plan Administrator may require Holders of Allowed Dotcom Customer Entitlement Claims, U.S. Customer Entitlement Claims, NFT Customer Entitlement Claim, General Unsecured Claims, Dotcom Convenience Claims, U.S. Convenience Claims or General Convenience Claims to irrevocably and unconditionally assign and transfer to the Plan Administrator all right, title and interest in any claim or Cause of Action for the same losses that has been or may be made or asserted in any other judicial or administrative proceeding relating to any Debtor or any Affiliate of the Debtors, including, without limitation, [FTX DM, FTX Turkey, SNG Investments or FTX Europe or FTX Europe AG].

---

[17] <u>Note to Draft</u>: List of entities subject to review and update by the Debtors.

7.12.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Plan Administrator and the Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms that are reasonable and appropriate.  For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable Holder.  The Plan Administrator reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

7.13.    Tax Identification, KYC and OFAC Certifications

Any Holder entitled to receive any Distribution under the Plan shall, upon request, deliver to the Distribution Agent or such other Entity designated by the Plan Administrator:  (a) a completed IRS Form W-9 or appropriate IRS Form W-8, as applicable; (b) a certification that the Holder is not a person or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons and (c) know-your-customer information of the Holder of such Claim, which (i) for individuals, may include, among other things, full name including any alias, date of birth, address and proof of address, identification and identification-related documents, nationality, phone number, email address, occupation, bank account information or wallet address, social security number (for U.S. citizens) and facial liveness and (ii) for institutional Holders, may include, among other things, company name, registration information, tax identification number, principal business address and phone number, business email address, information on the nature of the business and principal business activity, entity size, source of wealth/source of funds, annual revenue/profit, authorized signer, identity of ultimate beneficial owners, identity of directors and/or members of management, bank account information or wallet address and, for any ultimate beneficial owners, directors or members of management, similar identification information and records as are collected for individual Holders who are natural persons (collectively, the "Pre-Distribution Requirements").  If a request for Pre-Distribution Requirements has not been satisfied within 30 days thereafter, a second request shall be sent.  If the Holder fails to comply with the Pre-Distribution Requirements before the date that is 60 days after a second request is made, such Holder shall be deemed to have forfeited its right to receive Distributions, and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Plan Administrator receiving its executed Pre-Distribution Requirements.  Any Distributions that are forfeited pursuant to this provision shall revest in the Wind Down Estates as Plan Assets.

**8.    CLAIMS ADMINISTRATION PROCEDURES**

8.1.    Objections to Claims

Any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Plan Administrator, by filing a motion to extend on or before the Claims Objection Deadline. The Plan Administrator shall have standing to object to Claims.  Except as otherwise set forth in the Plan, after the Effective Date, the Plan Administrator and Wind Down Estate shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.

8.2.    Estimation of Claims

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may, within their reasonable discretion, at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not yet been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including, but not limited to, for purposes of Distributions).

Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or under the Plan. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation of such Claim unless the Holder of such Claim has filed a motion with the Bankruptcy Court requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

8.3.    Expungement and Disallowance of Claims

8.3.1    Paid, Satisfied, Amended, Duplicated or Superseded Claims

Any Claim or Interest that has been paid, satisfied, amended, duplicated (by virtue of the substantive consolidation provided for under this Plan or otherwise), superseded or otherwise dealt with or treated in the Plan, may be adjusted or expunged on the Claims Register at the direction of the Plan Administrator without the Plan Administrator having to file an objection, application, motion, complaint or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order or approval of the Bankruptcy Court.

8.3.2    <u>Claims by Persons from Whom Property Is Recoverable</u>

Unless otherwise agreed to by the Debtors, the Plan Administrator or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person or Entity has been resolved.

8.4.    <u>Amendments to Proofs of Claim</u>

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

8.5.    <u>No Distributions Pending Allowance</u>

If an objection to the amount, validity, priority or classification of a Claim or a portion thereof is filed or is intended to be filed as set forth in this <u>Article 8</u> or a Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim or is otherwise settled or resolved.

8.6.    <u>Distributions After Allowance</u>

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan.

8.7.    <u>Administration Responsibilities</u>

Except as otherwise specifically provided in the Plan, after the Effective Date the Plan Administrator shall have the sole authority (subject to the terms of the Plan Administration Agreement) to (a) file, withdraw or litigate to judgment objections to Claims, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, (c) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court and (d) determine, without the need for notice to or action, order or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is filed is Allowed.  Nothing in this <u>Section 8.7</u> shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Deadline unless otherwise ordered by the Bankruptcy Court.

8.8.    <u>Claims Paid or Payable by Third Parties</u>

The Debtors or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and also receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the applicable Debtor, the applicable Wind Down Estate, or the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Allowed Claim as of the applicable Distribution Date.



**9.**    **CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

9.1.    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of this Article 9.

(a)    Confirmation Order.  The Confirmation Order shall have been entered in a form and substance reasonably acceptable to the Debtors and there shall not be a stay or injunction in effect with respect thereto.

(b)    Professional Fee Escrow Account.  The Debtors shall have established and funded the Professional Fee Escrow Account in accordance with Section 3.4.2.

(c)    Professional Fee Payments.  All professional fees and expenses of the Debtors, the Committee and [•] as of the Effective Date that were due and payable under an order of the Bankruptcy Court shall have been paid in full, other than any Professional Claims subject to approval by the Bankruptcy Court.

(d)    Plan Documents.  The Plan, Plan Supplement, Confirmation Order and all documents related thereto shall be in form and substance reasonably acceptable to the Debtors and any conditions precedent thereto shall have been satisfied, waived or satisfied contemporaneously with the occurrence of the Effective Date.

(e)    Necessary Documents.  All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered, as applicable.

(f)    Necessary Authorizations.  All authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved.

(g)    Governmental Action.  No governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Plan or any of the other transactions contemplated hereby and no governmental entity shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Plan.

9.2.     Waiver of Conditions

        The Debtors may waive conditions to the occurrence of the Effective Date set forth in this Article 9 at any time.

9.3.     Simultaneous Transactions

        Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtors, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

9.4.     Effect of Non-Occurrence of the Effective Date

        If the Effective Date does not occur by [•] or such later date as the Debtors determine, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall constitute a waiver or release of any claims by or Claims against or Interests in the Debtors, prejudice in any manner the rights of the Debtors or any other Person, or constitute an admission, acknowledgment, offer or undertaking by the Debtors or any Person.

9.5.     Notice of Effective Date

        As soon as practicable after the Effective Date has occurred, the Plan Administrator shall file with the Bankruptcy Court a notice specifying the Effective Date.

## 10.   SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 10.1.   Subordinated Claims

The allowance, classification and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under the Plan take into account, conform to and satisfy the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto; however, the Debtors reserve the right to reclassify or modify the treatment of any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Interest.

### 10.2.   Non-Discharge of Debtors; Resolution of Claims and Termination of Interests

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge the Debtors.  However, no Holder of a Claim may receive any payment from, or seek recourse against, the Plan Administrator, the Wind Down Estate or any Plan Assets that are to be distributed under the Plan other than Plan Assets required to be distributed to that Holder pursuant to the Plan.  Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Interests in, the Debtors, any property of the Estates, the Plan Administrator or any property of the Wind Down Estates, including all Claims of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such Claim, debt, right, liability, obligation or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, liability, obligation or Interest is Allowed pursuant to section 502 of the Bankruptcy Code or (c) the Holder of such a Claim, liability, obligation or Interest has accepted the Plan.  Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim that existed immediately prior to or on account of the filing of these Chapter 11 Cases shall be deemed cured on the Effective Date.

### 10.3.   Release of Liens

**Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and canceled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Estates and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Plan Administrator to evidence such release, including the execution, delivery and filing or recording of such releases.  The**

presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

    10.4.   <u>Debtors' Release</u>

        **Except as otherwise specifically provided in the Plan with respect to the Preserved Potential Claims, for good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases and the implementation of the orderly liquidation contemplated by the Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, the Released Parties are hereby conclusively, absolutely, unconditionally, irrevocably and forever released, waived and discharged by the Debtors, the Plan Administrator and the Estates, including any successor to, or assignee of the Debtors or any Estate representative, from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, and its successors, assigns and representatives, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, breach of contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Plan Administrator or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the release of any mortgage, lien or security interest, the distribution of proceeds, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the administration of Claims and Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act; *provided* that the release under this <u>Section 10.4</u> shall not apply to any Excluded Party, nor to any Preserved Potential Claims to the extent such Preserved Potential Claims are brought by and for the benefit of the Wind Down Estates with the approval of the Plan Administrator, unless otherwise specifically provided in the Plan or the Plan Supplement.  Nothing in the Plan or Confirmation shall affect any releases previously granted or approved by the Court.**

10.5. Voluntary Release by Holders of Claims and Interests

**For good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, the implementation of the Plan, and the distribution of proceeds, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, and its successors, assigns and representatives, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, breach of contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Plan Administrator or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Plan Supplement or the Disclosure Statement, the administration of Claims and Interests prior to or during these Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act. Nothing in this Section 10.5 shall cause the release of any Excluded Party nor any Preserved Potential Claims that are otherwise transferred to, and may be prosecuted by, the Wind Down Estate pursuant to the terms of this Plan.**

10.6. Scope of Releases

**Each Person providing releases under the Plan, including the Debtors, the Plan Administrator, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.**

DRAFT

10.7.    Exculpation

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Section 10.4 or Section 10.5 of this Plan, the Exculpated Parties shall neither have nor incur any liability to any Entity for any act or omission in connection with, related to, or arising out of these Chapter 11 Cases, including (a) the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; (b) the administration and adjudication of Claims and Interests during these Chapter 11 Cases; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Cases (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan, the trading or sale of Cryptocurrencies and tokens in connection with the Chapter 11 Cases, the offer and issuance of any securities under or in connection with the Plan and the distribution of property, Digital Assets, or tokens under the Plan); or (d) any other transaction, agreement, event, or other occurrence related to these Chapter 11 Cases taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.  Notwithstanding anything contained herein to the contrary, the foregoing exculpation does not exculpate any Excluded Party.  Nothing in the Plan or Confirmation shall affect any exculpation orders previously granted or approved by the Court.

10.8.    Injunction

Except as otherwise expressly provided in the Plan or Confirmation Order with respect to Preserved Potential Claims, the satisfaction and release pursuant to this Article 10 shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Interests or Causes of Action from (a) commencing or continuing any action to collect, enforce, offset, recoup or recover with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 or 1141 thereof, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claims or Interests; and (d) asserting any right of setoff, subrogation or recoupment of any kind on account of

or in connection with or with respect to any such Claim or Interest, notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise, against any Plan Asset, the Wind Down Estates, any Holder of a Claim or Interest or any initial or subsequent transferee.  Notwithstanding anything to the contrary in the Plan, all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Estates as of the Effective Date.**

.

10.9.    Limitations on Exculpations and Releases

**Notwithstanding anything to the contrary herein, none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations or (b) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, including the Preserved Potential Claims.**

## 11.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

11.1.    Modification of Plan

Subject to the limitations contained in the Plan:  (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications with respect to the treatment of Classes 4A, 4B, 4C, 5, 6A, 6B, 6C and 9 to satisfy section 1129(b) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtors or the Plan Administrator, as applicable, may, upon order of the Bankruptcy Court, (i) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or (ii) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

11.2.    Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

11.3.    Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization or liquidation.   If the Debtors revoke or withdraw the Plan, if the Confirmation Order is not entered or the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise

embodied in the Plan, assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims by or Claims against, or any Interests in, any Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission of any sort by the Debtors or any other Entity.



**12.    R**ETENTION OF **J**URISDICTION

12.1.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(d)    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the Plan and adjudicate any and all disputes from, or relating to Distributions under the Plan;

(e)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and Causes of Action, including the Preserved Potential Claims, and grant or deny any applications, involving a Debtor that may be pending before the Bankruptcy Court on the Effective Date;

(f)    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(g)    Enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, Plan Supplement or the Disclosure Statement;

(h)　　Enter, adjudicate and enforce any order for the sale of property pursuant to section 363, 1123 or 1146(a) of the Bankruptcy Code

(i)　　Adjudicate, decide or resolve any and all disputes as to the ownership of any Claim or Interest;

(j)　　Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan;

(k)　　Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the existence, nature and scope of the releases, injunctions and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions and other provisions;

(l)　　Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)　　Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Plan Administration Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(n)　　Enter an order or final decree concluding or closing these Chapter 11 Cases;

(o)　　Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)　　Hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation or enforcement of the Plan, including the releases or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(q)　　Hear and determine all disputes relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(r)　　Enforce and adjudicate all orders previously entered by the Bankruptcy Court; and

(s)　　Hear any other matter not inconsistent with the Bankruptcy Code.

**13.**   <u>MISCELLANEOUS PROVISIONS</u>

13.1.   <u>Immediate Binding Effect</u>

Notwithstanding Bankruptcy Rule 3020(e), 6004(g) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

13.2.   <u>Additional Documents; Further Assurances</u>

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Plan Administrator and all Holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

13.3.   <u>Reservation of Rights</u>

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Debtor with respect to the Holders of Claims or Interests or any other Entity or (b) any Holder of a Claim or an Interest or any other Entity prior to the Effective Date.

13.4.   <u>Successors and Assigns</u>

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

13.5.   <u>Term of Injunction or Stays</u>

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

13.6.    Entire Agreement

On the Effective Date, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations with respect to the subject matter hereof and thereof, all of which have become merged and integrated into the Plan.

13.7.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents may be obtained upon written request to the Debtors' counsel at the address below or by downloading such exhibits and documents from the website of the Debtors' Notice and Claims Agent, at https://restructuring.ra.kroll.com/FTX/ or the Bankruptcy Court's electronic docket for the Debtors' Chapter 11 Cases at https://.ecf.deb.uscourts.gov/ (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.uscourts.gov).  In addition, copies of such exhibits and documents may be requested from the Notice and Claims Agent at (888) 482-0049 (U.S./Canada) or (646) 440-4176 (International).

13.8.    Nonseverability of Plan Provisions upon Confirmation

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

13.9.    Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that the Committee will stay in existence solely for the limited purpose of (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and (b) motions or litigation, including pending appeals, seeking enforcement of the provisions of the Plan or under the Confirmation Order; *provided, further*, that, with respect to pending appeals and related proceedings, the Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.

13.10.   <u>Termination of Fee Examiner's Appointment</u>

Upon the resolution of all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code by professionals subject to review by the Fee Examiner, the Fee Examiner's appointment shall terminate, and the Fee Examiner shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

13.11.   <u>Debtors' Directors and Officers</u>

On the Effective Date, each of the Debtors' directors and officers shall be released and discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

13.12.   <u>Post-Confirmation Operating Reports</u>

The Plan Administrator, on behalf of the Debtors and the Wind Down Estates, shall file and serve on the U.S. Trustee quarterly reports of the disbursements made pursuant to the Plan, until each of the Chapter 11 Cases are converted, dismissed or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and U.S. Trustee's guidelines for such matters.

13.13.   <u>Closing of Chapter 11 Cases</u>

The Plan Administrator shall, promptly after the full administration of these Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.  The Plan Administrator may also, in its reasonable discretion, file the necessary documents to close any individual Debtor's case at any appropriate time.

13.14.   <u>Conflicts</u>

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent any provision of the Disclosure Statement, the Plan Supplement or any other document referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing) conflicts with or is in any way inconsistent with the Confirmation Order, the Confirmation Order shall govern and control.

13.15.   <u>No Stay of Confirmation Order</u>

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

13.16.  <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

13.17.  <u>Post-Effective Date Service</u>

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed renewed requests for service after the Effective Date.

13.18.  <u>Notices</u>

All notices, requests, pleadings and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)  If to the <u>Debtors</u>, to:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attn:  Andrew G. Dietderich
      James L. Bromley
      Brian D. Glueckstein
      Alexa J. Kranzley

and

Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Attn:  Adam Landis
      Kimberly A. Brown
      Matthew R. Pierce

(b)  If to the <u>Committee</u>, to:

Paul Hastings LLP
200 Park Avenue
New York, NY 10166
Attn: Kristopher M. Hansen

Kenneth Pasquale
Erez E. Gilad
Gabriel E. Sasson

and

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Attn:  Matthew B. Lunn
  Robert F. Poppiti, Jr.


(c)  If to the <u>U.S. Trustee</u>, to:

United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Attn: Juliet Sarkessian
  Benjamin A. Hackman

Dated: [•], 2023
Wilmington, Delaware

        FTX Trading Ltd., on behalf of itself and all other
        Debtors

        By: *DRAFT*_____

        Name:  John J. Ray III

        Title:   Chief Executive Officer and Chief
              Restructuring Officer