**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Objection Deadline: August 16, 2023 at 4:00 p.m. ET**<br>**Hearing Date: August 23, 2023 at 1:00 p.m. ET** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT
WITH IEX GROUP, INC., (B) APPROVING THE SETTLEMENT
AGREEMENT, AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (A) authorizing the Debtors to enter into a Settlement and Stock Exchange Agreement, attached hereto as Exhibit B (the "Settlement Agreement"),[2] between and among (i) Debtor FTX Trading, (ii) Debtor West Realm Shires Inc. ("WRS") and (iii) IEX Group, Inc. ("IEX", and, together with FTX Trading and WRS, the "Parties"), (B) approving the Settlement Agreement and (C) granting related relief. In support of the Motion, the Debtors respectfully state as follows:

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

{1368.002-W0071903.}

**Background**

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the Debtors' Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order"). The Non-Customer Bar Date Order established, among other things, the deadline to file proofs of claim for Non-Customer Claims (*i.e.*, any claim other than a Customer Claim (as defined below)) and proofs of interest and the deadline by which government units must file proofs of claim (the "Non-Customer Bar Date").

3. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

---

[3] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Jurisdiction

4. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the Parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

5. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to enter into the Settlement Agreement, (b) approving the Settlement Agreement, and (c) granting certain related relief.

### Facts Specific to the Relief Requested

6. On March 18, 2022, Debtors FTX Trading and WRS entered into a share exchange agreement (as amended, supplemented or modified from time to time, the "Share Exchange Agreement") with IEX pursuant to which, among other things, the Parties agreed to exchange FTX and WRS common stock for IEX common stock (collectively, the "Prior Transaction").

7. On the same day, among other agreements, the Parties also entered into a collaboration agreement (the "Collaboration Agreement"), pursuant to which the Parties agreed to use commercially reasonable efforts to conduct a strategic partnership to seek further adoption of approved trading systems and related services for cryptographic assets in the United States, including a digital asset securities trading platform to be operated by IEX for the receipt, entry, cancellation, display, matching, and reporting of orders and market data feeds in eligible digital asset securities or other similar financial instruments on such trading platform.

8. The Prior Transaction closed on May 17, 2022. At the closing, among other things, (i) IEX received 5,663,211 common shares, par value $0.0000026 per share, of FTX Trading and 49,234,136 shares of class A common stock, par value $0.00001 per share, of WRS (collectively, "FTX Shares") and (ii) WRS received 1,570,142 shares of IEX common stock, par value $0.01 per share ("IEX Shares").

9. In connection with the closing of the Prior Transaction, FTX Trading and IEX granted each other certain investor rights, certain registration rights, information rights, and other customary investors' rights, in each case, through amendment of their respective investor rights, co-sale, and similar agreements, and further also restricted the shares through transfer restrictions, tag-along rights, and drag-along rights (collectively, the "Investor Rights Agreements"). Among other things, the IEX Shares are subject to transfer restrictions for five years from the closing of the Prior Transaction (*i.e.*, May 17, 2027) during which they may not be transferred or sold to a third party.

10. As of the date of this Motion, WRS continues to hold the IEX Shares, and IEX continues to hold the FTX Shares. The Debtors assert that they would be able to transfer and monetize the IEX Shares for the benefit of their estates. IEX disputes that claim and asserts

that the IEX Shares are not properly part of the Debtors' bankruptcy estates as they were obtained fraudulently and that IEX is entitled to rescission of the Prior Transaction.

11. IEX and its wholly owned subsidiary IEX DAP Group LLC each filed proofs of claim in accordance with the Non-Customer Bar Date against WRS and FTX Trading, which have been assigned claim numbers 3347, 3834, 4088, and 4270 (collectively the "IEX Claims"), seeking damages and equitable relief, including rescission of the Share Exchange Agreement, on the basis of allegations that the Prior Transaction resulted from false representations and warranties, and other arguments. The Debtors dispute the IEX Claims and the remedies sought, and assert that the IEX Shares are property of the Debtors' estates that could be monetized and transferred.

12. As noted in the Ray Declaration,[4] the Parties have engaged in good faith, arm's-length negotiations to consensually resolve the disputes between the Parties concerning the IEX Shares and the IEX Claims. As a result of those negotiations, the Parties have agreed to enter into the Settlement Agreement.

13. The key terms of the Settlement Agreement provide, among other things, that on the Closing Date:[5]

- The Debtors shall retain 578,600 of the issued and outstanding shares of IEX (the "Retained IEX Shares") and will transfer to IEX all of the remaining 991,542 IEX Shares in their possession;

- IEX will transfer to the Debtors all of the FTX Shares;

- Other than as specified in the Settlement Agreement, all agreements between IEX and FTX will be terminated.

---

[4] *Declaration of John J. Ray III in Support of Motion of Debtors for Entry of the Order (A) Authorizing the Debtors to Enter into a Settlement Agreement with IEX Group, Inc., (B) Approving the Settlement Agreement, and (C) Granting Related Relief* filed contemporaneously herewith ("Ray Declaration").

[5] Any summary of the Agreement contained in this Motion is qualified in its entirety by the actual terms and conditions of the Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Agreement, the actual terms and conditions of the Agreement shall control.

- Following entry of the Order, IEX, in consultation with FTX, will solicit certain of the IEX existing shareholder group and IEX and FTX shall jointly solicit certain other mutually agreed parties with respect to the potential acquisition of the Retained IEX Shares, subject to a subsequent sale order being entered by the Court. Such potential acquisition will be subject to higher and better offers; *provided*, *however*, that any party making any such offer will be subject to IEX's consent (in its sole discretion for certain related parties and competitors and not to be unreasonably withheld, conditioned or delayed otherwise);

- IEX agrees to waive or cause to be waived any and all transfer restrictions related to the sale of the Retained IEX Shares, and IEX will provide reasonable access to necessary financial information requested by potential purchasers, subject to entering into a nondisclosure agreement;

- IEX and its Affiliates will release any claims or causes of action against the Debtors arising out of, relating to or arising under the Prior Transaction, the Prior Agreements or the acquisition or ownership of the IEX Shares, including the IEX Claims; and

- The Debtors will release any claims or causes of action against IEX and its Affiliates arising out of, relating to or arising under the Prior Transaction, the Prior Agreements or the acquisition or ownership of the FTX Shares.

**Basis for Relief**

I. **The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable, and in the Debtors' Best Interests**

14. Given the number and scope of disputes between the Debtors and IEX, and the associated cost of resolving each, the Debtors have determined that entry into the Settlement Agreement is likely to yield substantial value and is in the best interests of the Debtors' estates. The Settlement Agreement will allow Debtors to retain, and subsequently monetize, 578,600 shares of IEX. The Retained IEX Shares represent approximately 5% of the issued and outstanding shares of IEX as of the date of this Motion, on a fully diluted basis and after giving effect to the Settlement Agreement and the transactions contemplated thereby. This level of recovery may not be achieved even if the Debtors prevail in litigation because of the

associated legal costs that would be incurred in obtaining a favorable final judgment. Additionally, absent the proposed settlement, certain transfer restrictions apply to the sale of the Retained IEX Shares that could tie up or prohibit the Debtors' efforts to realize value from the IEX Shares for an extended period of time. The Settlement Agreement will also promptly return all of the FTX Shares transferred to IEX. Settlement on these terms is a reasonable exercise of the Debtors' business judgment satisfying Bankruptcy Rule 9019.

15. Section 105(a) provides, in pertinent part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).

16. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Aerogroup Int'l, Inc.*, 2019 WL 2120735 (Bankr. D. Del. May 13, 2019); (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D.

Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (proposed settlement held in best interest of the estate).

17. The Third Circuit Court of Appeals has enumerated four factors to be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor). The Court need only determine that the terms of the proposed settlement fall "within the reasonable range of litigation possibilities." *In re Penn Cent*., 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

18. The terms of the Settlement Agreement will permit the Debtors to retain and realize value from 578,600 shares of IEX for the benefit of their stakeholders and directs IEX to work collaboratively with the Debtors to facilitate a sale of those shares, including by lifting certain transfer restrictions in connection therewith, all while eliminating the risk that IEX could prevail in litigation to rescind the Share Exchange Agreement and thereby compel return of all of the IEX Shares. In addition, the FTX Shares transferred by FTX Trading and WRS to

IEX will be returned to the Debtors' estates.  Importantly, the Settlement Agreement delivers this value to the Debtors immediately while avoiding protracted and costly litigation of the IEX Claims and the Debtors' rights to the IEX Shares.  Accordingly, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, and fall well within the range of reasonableness.

### A. The Probability of Success in Litigation and Subsequent Collection.

19. IEX maintains that it has meritorious claims for the rescission of the IEX Shares as well as state law claims for money damages in connection with harm suffered from alleged fraudulent misrepresentations made after the Prior Transaction.  In furtherance of its position, IEX has argued that it is uniquely and differently positioned from other creditors because the share exchange was only one element of a strategic partnership that IEX was fraudulently induced to enter into by Mr. Samuel Bankman-Fried and other insiders.

20. The Debtors dispute the IEX Claims and maintain that they have valid defenses to them.  Among other arguments, the Debtors maintain that IEX's rescission claims are subject to subordination under section 510(b) of the Bankruptcy Code and allege that IEX is unable to meet the standard for obtaining the remedy of rescission, among other defenses.

21. Nonetheless, the Debtors would need to spend significant time and resources defending against the IEX Claims and obtaining a favorable judgment with respect their ability to transfer the IEX Shares.  IEX likewise would expend significant resources litigating the IEX Claims, which may diminish the value of the IEX Shares held by the Debtors.  Given the attendant risks of litigation, the potential expenditure of resources, and the favorable terms of the settlement, the Debtors submit that the proposed Settlement Agreement is in the best interests of the Debtors' estates.

### B. The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted.

22. Litigation pertaining to the IEX Claims would be complex, expensive, and time-consuming. It would require testing the sufficiency of evidence for various theories of recovery arising out of a tangled web of contractual agreements, including, among others, the Share Exchange Agreement and the Collaboration Agreement. The Parties might also need to litigate the intent of FTX Trading, WRS, and their executives when entering into these agreements as well as in connection with the Prior Transaction in 2022.

23. The IEX Claims are likely to spawn extensive discovery requests among the Parties. Moreover, Mr. Bankman-Fried and other former executives of FTX Trading and WRS are unlikely to be available to testify on issues relating to the IEX Claims in the near term due to ongoing criminal proceedings, which further complicates the litigation and timing of resolution. All discovery and attendant litigation expense and delay are avoided through the Settlement Agreement.

24. Approval of the Settlement Agreement permits the Debtors to focus their resources on pursuing other sources of recovery for stakeholders and avoiding the costs and resources necessary to litigate the IEX Claims.

### C. The Paramount Interests of Creditors Are Served.

25. The Settlement Agreement is in the best interests of the Debtors' creditors because, if approved, IEX will promptly transfer all of its FTX Shares to the Debtors and facilitate the Debtors' sale of the Retained IEX Shares. The Retained IEX Shares represent approximately 5% of the currently issued and outstanding shares of IEX. Absent approval of the Settlement Agreement, the Debtors and their stakeholders would face significant obstacles in selling their shares of IEX, which would be subject to transfer restrictions under the terms of the Share Exchange Agreement. The Debtors and their creditors would also incur significant

litigation risk and attendant expense. The Settlement Agreement was negotiated over a prolonged period at arm's length, and has produced a favorable outcome for the Debtors' creditors and other stakeholders. (Ray Decl. ¶¶ 7-8.)

26. Therefore, in the Debtors' business judgment, settling now pursuant to the terms of the Settlement Agreement is in the best interests of the Debtors and their estates. (*Id.* ¶ 8.) Based on the foregoing and the Ray Declaration, the Debtors submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders. The Official Committee of Unsecured Creditors has evaluated the terms of the Settlement Agreement and supports the settlement. The Debtors, therefore, respectfully request that the Court approve and authorize the Debtors' entry into the Settlement Agreement.

## II.    The Settlement Agreement Satisfies Section 363(b)(1) of the Bankruptcy Code

27. Section 363(b)(1) of the Bankruptcy Code provides that a bankruptcy court, after notice and a hearing, may authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts authorize such activity out of the ordinary course of business if it has a "sound business purpose," is proposed in good faith and on fair terms and is preceded by adequate and reasonable notice to all interested parties. *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999). Evaluating a debtor's "sound business purpose" is "essentially" a "business judgment test." *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153; *see also In re Merchant*, 2023 WL 2089349, at *2 (Bankr. D. Del. Feb. 17, 2023) ("Approval of a compromise is appropriate if the agreement falls above the lowest rung on the ladder of possible settlements.") (citing *In re Martin*, 91 F.3d at 393)).

28.     The Settlement Agreement fulfills the requirements of section 363(b)(1) of the Bankruptcy Code to the extent necessary for the Debtors to transfer the remaining IEX Shares back to IEX.  If approved, the Settlement Agreement would consensually resolve the IEX Claims in their entirety, and provide both clear title to 578,600 shares of IEX that can be monetized for the benefit of the Debtors' stakeholders, and the cooperation of IEX in doing so. Approval of the Settlement Agreement would conclude protracted discussions among the Parties, eliminate the need for costly litigation, and resolve uncertainty regarding the IEX Claims and the IEX Shares.  Resolving these issues now is a reasonable exercise of the Debtors' business judgment.

## Waiver of Bankruptcy Rule 6004(h)

29.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h) to the extent such stay applies.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, ample cause exists to justify a waiver of the stay period to the extent applicable.

## Reservation of Rights

30.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## Notice

31. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) counsel to IEX; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: August 2, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>　brown@lrclaw.com<br>　pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>　　bromleyj@sullcrom.com<br>　　gluecksteinb@sullcrom.com<br>　　kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |