IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Objection Deadline: August 30, 2023 at 4:00 p.m. ET**<br>**Hearing Date: September 13, 2023 at 1:00 p.m. ET** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT
WITH THE GENESIS ENTITIES, (B) APPROVING THE
SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to enter into that certain Settlement Agreement and Release, attached as Exhibit 1 to the Order (the "Settlement Agreement"),[2] between and among (i) the Debtors and certain of their non-debtor subsidiaries (the "FTX Entities"), (ii) Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession (collectively, the "Genesis Debtors,"), and (iii) Holdco's non-debtor direct and indirect subsidiaries and affiliates that are signatory to the Settlement Agreement, including GGC International Ltd. ("GGCI" and collectively with the

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

{1368.002-W0072056.}

Genesis Debtors, the "Genesis Entities"). In support of the Motion, the Debtors submit the *Declaration of John J. Ray III in Support of Debtors' Motion for Entry of an Order (A) Authorizing The Debtors to Enter into the Settlement Agreement with the Genesis Entities, (B) Approving the Settlement Agreement, and (C) Granting Related Relief* filed contemporaneously herewith (the "Ray Declaration") and respectfully state as follows:

**Preliminary Statement**

1. The Settlement Agreement fully and finally resolves multi-faceted, multi-jurisdictional litigation between the FTX Entities and the Genesis Entities in connection with the FTX Entities' preference claims against the Genesis Entities (the "FTX Claims") and the Genesis Entities' claims (customer, loan, preference and others) against the FTX Debtors (the "Genesis Claims"). That litigation would have involved not only novel and complex issues with respect to the merits of the claims, but threshold venue litigation with respect to whether this Court or the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court") overseeing the Genesis Debtors' own chapter 11 cases would adjudicate the merits of the FTX Claims instead of (or at least prior to) this Court deciding those issues.[3]

2. In place of costly and uncertain litigation, the compromises embodied in the Settlement Agreement provide material value to the Debtors' estates including in the form of (i) an allowed claim for Alameda Research Ltd. ("Alameda") against Genesis Debtor Genesis Global Capital, LLC ("GGC") in the amount of $175 million to be satisfied pursuant to the Genesis Debtors' plan of reorganization; and (ii) the release of *all* claims asserted or assertable by the Genesis Entities against the FTX Entities. The Genesis Entities have asserted significant claims against the Debtors, including, but not limited to, an approximately $176 million

---

[3] As the Court is aware, the Debtors are engaged in pending avoidance action litigation in this Court against Voyager Digital, LLC and one of its non-debtor affiliates. Because the Debtors' avoidance claims against the Voyager entities were not subject to the automatic stay in the Voyager chapter 11 cases, the Debtors did not need to navigate the same venue issues there and have been proceeding with that litigation in this Court.

customer claim against FTX Trading, an approximately $140 million avoidance claim against Alameda, an approximately $40 million outstanding loan claim against Alameda, and, to the extent of any allowed FTX Claim, claims under section 502(h) of the Bankruptcy Code.  Release of those claims provides significant value to the Debtors' estates and ensures that none of the Genesis Entities will hold any allowed claims against any of the Debtors.

3. The risks and uncertainties of litigating the FTX Claims are not hypothetical.  The venue litigation with the Genesis Debtors began on May 3, 2023 when the FTX Debtors filed a motion for relief from the automatic stay in the New York Bankruptcy Court to commence avoidance action litigation in this Court against certain of the Genesis Debtors.  The Genesis Debtors have vehemently opposed that motion, including by filing a responsive motion to adjudicate the merits of the FTX Claims through an estimation proceeding before the New York Bankruptcy Court.  While the New York Bankruptcy Court has not ruled on either motion, the Debtors believe that absent a settlement there is a substantial risk that the New York Bankruptcy Court would decide to adjudicate the merits of the FTX Claims itself, including certain issues core to the Debtors' chapter 11 cases.  The potential adverse consequences of the New York Bankruptcy Court adjudicating those issues, including for other (potentially more valuable) preference actions brought by the Debtors, were important considerations for the Debtors in determining that the settlement is in the best interests of their estates.

4. The Debtors believe in the merits of their claims against the Genesis Entities.  However, the Debtors also recognize there are significant risks and uncertainties with respect to the merits of the FTX Claims, and potential net recoveries on account of those claims. *First*, the FTX Claims, which the Debtors have asserted in an amount in excess of $3 billion, are subject to numerous defenses, including arguments that are not available to most other

preference defendants. Importantly, further investigation during the discovery process has indicated that a significant portion of the exchange withdrawals underlying the Debtors' $1.6 billion preference claim comprises cryptocurrency that was returned to the Debtors and is otherwise subject to a subsequent new value defense, which, if given effect, would significantly reduce the total exchange withdrawal preference claim.

5. In addition, the majority of the targeted transfers were made at the very beginning of the preference period (87 days before the Petition Date) and therefore are potentially more susceptible to an ordinary course of business defense. The Genesis Debtors have also asserted that they were fully secured at the time of the loan transfers and therefore did not receive more than they would have been entitled to receive on account of the applicable transfers in a hypothetical chapter 7 liquidation. If that were determined to be the case, the Debtors' $1.8 billion loan payment claim would not meet the requirements of section 547 of the Bankruptcy Code. The Debtors disagree with the Genesis Debtors' defenses, but would need to prevail on a series of complex issues further complicated by the fact that both the Debtors and the Genesis Debtors are parties in pending chapter 11 proceedings, which gives rise to novel questions of law and equity.

6. *Second*, recoveries from the Genesis Debtors and other Genesis Entities are uncertain, and the Debtors have no assurance that any allowed claim against the Genesis Entities would receive a significant recovery.

7. *Third,* because the FTX Claims are preference claims, any allowed claim against the Genesis Entities would give rise to a replacement claim pursuant to section 502(h) of the Bankruptcy Code that would offset the recovery on the preference claim. The Debtors expect claims against their estates to be valuable, and higher recoveries in the Debtors' cases will materially reduce the net value of the FTX Claims to the Debtors' estates.

8.      Entry into the Settlement Agreement by the Debtors is therefore in the best interests of the Debtors' estates and all stakeholders and well within the range of reasonableness, and should be approved.

## Background

9.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[4] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

10.     On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order").  The Non-Customer Bar Date Order established, among other things, the deadline to file proofs of claim for Non-Customer Claims (*i.e.*, any claim other than a Customer Claim (as defined below)) and proofs of interest and the deadline by which government units must file proofs of claim (the "Non-Customer Bar Date").

11.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

---

[4]    November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Jurisdiction

12. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

13. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to enter into the Settlement Agreement, (b) approving the Settlement Agreement, and (c) granting certain related relief.

### Facts Specific to the Relief Requested

14. Prior to the Petition Date, certain of the Debtors and certain of the Genesis Entities did significant business with each other, including through significant lending relationships. As part of their business arrangements with the Debtors, GGC provided billions of

dollars' worth of cryptocurrency loans to Alameda and the Genesis Entities maintained a customer account on the FTX.com platform.

15. On January 19, 2023 (the "Genesis Petition Date"), the Genesis Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the New York Bankruptcy Court.

16. On May 3, 2023, the Debtors filed with the New York Bankruptcy Court the *Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001*, (ECF No. 289) (Bankr. S.D.N.Y.) (the "Lift Stay Motion"), seeking to modify the automatic stay in *In re Genesis Global Holdco, LLC*, et al. Case No. 23-10063 (SHL) (the "Genesis Bankruptcy Proceeding") for the limited purpose of permitting the Debtors to commence adversary proceedings to adjudicate and liquidate preference and other avoidance and related claims against the Genesis Debtors primarily relating to loan repayments and exchange withdrawals in the 90-day period prior to the Petition Date (the "Avoidance Claims"). The Debtors also hold certain preference and other related claims against GGCI, and planned to assert those claims in an adversary proceeding in this Court. The Debtors sought to bring all claims—those against the Genesis Debtors and GGCI—in a single proceeding before this Court.

17. On May 22, 2023, the Debtors timely filed Claims Nos. 415, 419, 420, 422, 426, 432, 438, 457, 463, 465, 508, 512, 513, 515, and 516 against the Genesis Debtors in the Genesis Bankruptcy Proceeding, including in connection with the Avoidance Claims (together with the underlying claims, the "FTX Claims").

18. On June 1, 2023, the Genesis Debtors filed the *Debtors' Motion to Establish Procedures and a Schedule for Estimating the Amount of the Debtors' Claims Against the Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018*,

(ECF No. 373) (Bankr. S.D.N.Y.) (the "Estimation Motion"), seeking estimation of the FTX Claims at $0.00 for all purposes—including voting, allowance and distribution.

19. On June 8, 2023, the Debtors filed their Objection to the Estimation Motion (ECF No. 404) (Bankr. S.D.N.Y.) (the "Estimation Objection"). On June 13, 2023, the Genesis Debtors filed their Reply in Support of the Estimation Motion (ECF No. 430) (Bankr. S.D.N.Y.). Beginning on June 6, 2023, the Debtors and the Genesis Entities engaged in preliminary discovery and voluntary exchange of information in connection with the FTX Claims and matters relating to the Estimation Motion and related matters. The Lift Stay Motion and Estimation Motion remain pending before the New York Bankruptcy Court.

20. On or around June 30, 2023, certain of the Genesis Debtors filed claims in connection with the Non-Customer Bar Date against certain of the Debtors (collectively, the "Genesis Proofs of Claim"). The Genesis Proofs of Claim assert claims against the Debtors in an amount no less than approximately $180 million in aggregate plus additional unliquidated amounts. Through the course of the litigation of the Lift Stay Motion and the Estimation Motion, GGC's non-debtor affiliate GGCI asserted a claim against FTX.com in the approximate amount of no less than $176 million (the "GGCI Claim").

21. Given the various disputes between the Debtors and the Genesis Debtors, the Parties have engaged in good faith, arm's length discussions to resolve or narrow issues, and through those discussions, have agreed to enter into the Settlement Agreement. Ray Decl. at ¶ 7.

22. The terms of the Settlement Agreement generally provide, among other things, that on effectiveness of the Settlement Agreement:[5]

---

[5] Any summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

- Alameda will be granted an allowed general unsecured claim against GGC in the amount of $175 million (the "Allowed Alameda Claim"), and the Genesis Entities will not seek to subordinate or otherwise seek any alternative treatment of such claim;

- the Allowed Alameda Claim will be satisfied in fiat and entitled to receive *pro rata* distributions with all other allowed general unsecured claims, shall be entitled to all treatment afforded allowed general unsecured claims in its respective class, and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than claims of Gemini lenders and claims separately classified solely for purposes of administrative convenience) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC, other than participation in an early payment election, *provided* that the Debtors may participate in any early payment class election if it is available to all similarly situated unsecured creditors holding claims in an amount equal to or more than the Allowed Alameda Claim;

- the Genesis Entities waive and release the Debtors from all Claims including all Claims asserted in the Genesis Proofs of Claim and the GGCI Claim and any Claims against the Debtors pursuant to section 502(h) of the Bankruptcy Code, and the Debtors waive and release the Genesis Entities from all Claims other than the Allowed Alameda Claim;

- the Debtors' claims against any affiliates or subsidiaries of the Digital Currency Group other than the Genesis Entities are not released and are preserved;

- the Parties each agree not to object to any plan of reorganization proposed by the other Party that is consistent with the terms of the Settlement Agreement; and

- upon effectiveness of the Settlement Agreement, the Debtors shall withdraw the Lift Stay Motion and the Genesis Debtors will withdraw the Estimation Motion.

**Basis for Relief**

I.  **The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests**

23.  Given the number, scope and complexity of the disputes between the Debtors and the Genesis Debtors, the risk of litigating each to decision in multiple fora, and the associated cost of resolving each and every one of those disputes, the Debtors have determined that in its totality entry into the Settlement Agreement is in the best interests of the Debtors and their estates. Ray Decl. at ¶¶ 7-8.

24.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

25.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *See also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968).

26.     "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement

is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)).  Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

27. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the Martin factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).  The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities."  *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

28. The Settlement Agreement provides material value to the Debtors' estates both through the Allowed Alameda Claim *and* the release of all Genesis claims—including more than $215 million in liquidated claims, primarily comprising approximately $180 million in claims asserted by GGCI for account balances on the FTX.com exchange, plus preference claims asserted in the amount of approximately $140 million and all unliquidated amounts asserted in

the Genesis Proofs of Claim. Ray Decl. at ¶ 6. The Genesis Debtors also waive all rights to any claim against Alameda arising under section 502(h) of the Bankruptcy Code. *Id.*

29. Settling with the Genesis Entities now avoids costly and time-consuming litigation in connection with the Estimation Motion and Lift Stay Motion, and adjudication of the merits of the claims and defenses asserted by the Parties. The Settlement Agreement eliminates the risk of an unfavorable outcome in any estimation proceeding by the New York Bankruptcy Court or a proceeding on the merits of the FTX Claims. The Settlement Agreement also eliminates the risk that the New York Bankruptcy Court will render decisions before this Court with respect to matters that are core to the Debtors' chapter 11 cases or that could harm the Debtors' claims, arguments and defenses in other avoidance litigation. Ray Decl. at ¶ 9.

30. Moreover, the Settlement Agreement eliminates altogether any claims by the Genesis Entities against the Debtors. As noted above, the Genesis Entities have asserted significant claims against the Debtors, and release of those claims, in particular the customer claim against FTX Trading, provides significant value to the Debtors' estates.

31. Accordingly, and as further described below, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

32. **The Probability of Success in Litigation**. The Debtors maintain that the FTX Claims are meritorious. However, the Debtors would need to spend significant time and resources to prove those claims and obtain a recovery from the Genesis Entities, whether such claims were litigated through an estimation proceeding before the New York Bankruptcy Court or through an adversary proceeding before this Court (in which case the Debtors may be required to litigate in two different fora). As a threshold matter, there exist *bona fide* disputes as to, among other things, the matters implicated by the Estimation Motion and the Lift Stay Motion,

which, absent approval of the Settlement Agreement, would be decided by the New York Bankruptcy Court.

33. Furthermore, the Genesis Entities have asserted numerous defenses to the merits of the FTX Claims, including defenses that are specific to the facts surrounding the relevant transfers to the Genesis Entities. The Debtors disagree and have rebuttal arguments, but the outcome of litigation is uncertain. The Genesis Entities would likely assert defenses that (i) a substantial portion of the targeted payments were made at the very beginning of the preference period (87 days before the Petition Date) and without any knowledge or notice of the Debtors' financial situation and therefore were made in the ordinary course of the relationship between the parties and (ii) the Genesis Debtors were fully secured at the time of the transfers such that the Genesis Debtors did not receive more than they would have been entitled to receive on account of the applicable transfers in a hypothetical chapter 7 liquidation. In addition, a significant portion of the exchange withdrawals comprises cryptocurrency that was returned to the Debtors, and is otherwise subject to a subsequent new value defense, which, if given effect, would significantly reduce the Debtors' total exchange withdrawal preference claim. Ray Decl. at ¶ 10.

34. In addition, the Genesis Entities have asserted significant claims against the Debtors, including liquidated claims (both in their capacity as a customer and with respect to an outstanding loan). While those claims may be subject to defenses, absent approval of the Settlement Agreement and the release of claims thereunder, there is significant risk that, if litigated, the Genesis Entities would be entitled to allowed claims in the Debtors' chapter 11 cases. Those claims are instead being released in the Settlement Agreement. Ray Decl. at ¶ 6.

35. Any litigation of the merits of the Parties' claims against each other would present significant uncertainties for the Debtors and their estates. By comparison, the Settlement Agreement brings finality on favorable terms by providing the Debtors with material value in the

form of the Allowed FTX Claim and the release of all of the Genesis Entities' claims against the FTX Debtors.

36. **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay**. Litigation pertaining to the FTX Claims and the Genesis Entities' claims against the FTX Entities would be complex and expensive and involve a significant amount of time. Without the agreements embodied in the Settlement Agreement, the Debtors would be forced to expend time and resources litigating these issues in the New York Bankruptcy Court and this Court, while any net recovery to the Debtors on account of such claims would remain uncertain. Settlement negotiations were vigorous and it was clear in the absence of a deal both the Debtors and the Genesis Debtors were well-funded and ready to litigate the issues on behalf of their respective stakeholders. Ray Decl. at ¶ 7. Notably, the parties have already engaged in considerable discovery in the context of the Estimation Motion and continued litigation of the Debtors' and the Genesis Debtors' claims would spawn extensive additional discovery, including reports and testimony from multiple experts. Indeed, for the FTX Claims, the parties anticipate document and testimonial discovery, expert reports, and briefing on numerous issues including, but not limited to, the Parties' course of dealing, the value of FTT and other collateral, the application of section 548 of the Bankruptcy Code, and the solvency of FTX and Alameda. Ray Decl. at ¶ 9.

37. In addition, the complexity and attendant cost of that litigation is not garden-variety for any preference or claims litigation. Here, it is compounded by the unusual fact pattern that the Debtors and the Genesis Debtors are both debtors in their own chapter 11 cases. The law governing "dueling debtor" situations is under-developed and uncertain and the litigation costs of pursuing complex litigation in multiple fora would be even greater than in a typical bankruptcy litigation. Not only would the Debtors incur costs of attorneys, financial

consultants and expert witnesses, but the Debtors would also bear the cost of attorneys and advisors for the Committee who have been closely involved in the litigation. The Genesis Debtors similarly would bear corresponding costs for their own advisors and those of their creditors' committee. Both estates are fiduciaries and have an important interest in using resources efficiently for the benefit of their stakeholders. The Settlement Agreement eliminates these costs and permits the Debtors to focus their resources on pursuing other sources of recovery for stakeholders. Additionally, as discussed above, in the event the New York Bankruptcy Court approved an estimation proceeding with respect to the FTX Claims, such an estimation process would require litigation of certain issues that are core to the Debtors' chapter 11 cases and relevant to many, if not all, other preference claims that the Debtors may assert against other parties. Ray Decl. at ¶¶ 8-9.

38. In addition, recoveries to the Debtors from the Genesis Debtors under the circumstances are highly uncertain: (i) the Debtors have no assurance that any allowed claim against the Genesis Entities would receive a significant recovery in the Genesis Debtors' chapter 11 cases; (ii) because the FTX Claims are preference claims, any allowed claim against the Genesis Entities would give rise to a replacement claim pursuant to section 502(h) of the Bankruptcy Code that would offset the recovery on the preference claim; and (iii) the Genesis Entities' claims against the Debtors are significant and would dilute any recovery obtained from the Genesis Entities by the Debtors and the corresponding distributions from the Debtors' estates to all other creditors.

39. **The Paramount Interests of Creditors**. The Settlement Agreement is in the best interests of the Debtors' estates and their creditors because, as discussed above, approval of the Settlement Agreement resolves complex disputes between the Parties that would have involved costly and time-consuming litigation for uncertain recovery for the Debtors, while

ensuring that Alameda will be granted the Allowed Alameda Claim and securing the release and waiver of *all* claims of *all* of the Genesis Entities against any and all of the FTX Entities. Importantly, claims against Digital Currency Group and its affiliates other than the Genesis Debtors are not released under the Settlement. As such, in the Debtors' business judgment, the value of entering into the Settlement Agreement far exceeds the net benefits that the Debtors and their estates would likely obtain from continuing on the alternative litigation path. Ray Decl. at ¶ 11.

40. Based on the foregoing, the Debtors submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders. As a result, the Debtors respectfully submit that the Settlement Agreement satisfies the *Martin* factors and request that the Court authorize the Debtors to enter into the Settlement Agreement.

## Waiver of Bankruptcy Rule 6004(h)

41. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

## Reservation of Rights

42. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive,

or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## Notice

43. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel to the Genesis Entities; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: August 16, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>/s/ *Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Benjamin S. Beller (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         bromleyj@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         bellerb@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |