**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JOHN J. RAY III IN SUPPORT OF DEBTORS' MOTION FOR
ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO
SETTLEMENT AGREEMENT WITH THE GENESIS ENTITIES, (B) APPROVING
THE SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

I, John J. Ray III, hereby declare as follows:

1.      I am the Chief Executive Officer of FTX Trading Ltd. ("FTX Trading") and

its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), having accepted this

position on November 11, 2022.  I am administering the interests and affairs of the Debtors from

my offices in the United States.  I am over the age of 18 and authorized to submit this Declaration

on behalf of each of the Debtors.

2.      I submit this declaration (this "Declaration") in support of the *Debtors'*

*Motion for Entry of an Order (A) Authorizing the Debtors to Enter into Settlement Agreement with*

*the Genesis Entities, (B) Approving the Settlement Agreement, and (C) Granting Related Relief*

(the "Motion").[2]

---

[1]     The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of
debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal
tax identification numbers is not provided herein.  A complete list of such information may be obtained on the
website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of
business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill
Road, St. John's, Antigua and Barbuda.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon:  (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning the Debtors; (ii) information learned from my review of relevant documents; and/or (iii) information supplied by persons working directly with me or under my supervision, direction or control and/or from the Debtors' professionals and advisors.  If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

4.      On or around June 30, 2023, the Debtors and the Genesis Entities began settlement discussions to resolve the various claims and disputes between the parties, including litigation with respect to the Lift Stay Motion and the Estimation Motion.  Thereafter, through the Debtors' advisors, I directed extensive good faith settlement negotiations over the following weeks with the Genesis Entities and their counsel.  Those negotiations consisted of multiple rounds of settlement offers and counteroffers (including offers involving different settlement structures), informed by preliminary discovery exchanged in parallel by the parties.

5.      Throughout the course of the settlement discussions, the Debtors consulted with counsel to the Official Committee of Unsecured Creditors with respect to the terms of the potential settlement, including sharing substantial analysis of the parties' respective claims and defenses to assist the Committee's assessment of the settlement terms and arranging a conference call with counsel to the Genesis Entities on July 23, 2023 (which was a precondition to the Debtors' agreeing to any settlement).

6.      The Debtors' collective efforts ultimately culminated in the Settlement Agreement, the terms of which provide for a global resolution of all claims and disputes between the parties including, among other things, providing Alameda with an allowed general unsecured

claim in the Genesis Debtors' chapter 11 cases in the amount of $175 million, and the waiver of all claims by the Genesis Entities against the FTX Entities, which include liquidated claims exceeding $215 million in the aggregate, plus preference claims asserted in the amount of approximately $140 million and all unliquidated claims, and any replacement claims under section 502(h) of the Bankruptcy Code in the event the Debtors succeed on their preference claims against the Genesis Entities.  The Genesis Debtors are waiving their section 502(h) claim on account of the Allowed Alameda Claim.

7.      It is my view that the Settlement Agreement is the result of these good faith arm's-length negotiations between the Parties and that such negotiations were free of any collusion.  Settlement negotiations were vigorous and it was clear to me that in the absence of a deal both the Debtors and the Genesis Debtors were well-funded and ready to litigate the issues on behalf of their respective stakeholders.  It is my further view that the terms of the Settlement Agreement are fair to the Debtors and the Debtors' stakeholders, consummation of the settlement is in the best interests of the Debtors and the Debtors' estates, and the Debtors' entry into the Settlement Agreement represents a valid exercise of the Debtors' business judgment.

8.      The Settlement Agreement confers substantial economic benefits upon the Debtors and the Debtors' estates while avoiding the risks and delay of multi-jurisdictional, complex litigation involving other chapter 11 debtors, extensive additional discovery (including reports and testimony from multiple experts), and the risks and uncertainties of potentially adjudicating the merits of the Debtors' preference claims against the Genesis Debtors by the New York Bankruptcy Court instead of this Court.

9.      While the New York Bankruptcy Court has not ruled on either motion, the Debtors believe that absent a settlement there is a substantial risk that the New York Bankruptcy

Court would decide to adjudicate the merits of the FTX Claims itself, including certain issues core to the Debtors' chapter 11 cases relevant to many, if not all, other preference claims that the Debtors may assert against other parties.  The potential adverse consequences of the New York Bankruptcy Court adjudicating those issues, including for other (potentially more valuable) preference actions brought by the Debtors, were important considerations for the Debtors in determining that the settlement is in the best interests of their estates.  The Settlement Agreement eliminates the risk that the New York Bankruptcy Court will render decisions before this Court with respect to matters that are core to the Debtors' chapter 11 cases or that could harm the Debtors' claims, arguments and defenses in other avoidance litigation.

10.    Importantly, the Debtors also believe there are risks and uncertainties with respect to the merits of the FTX Claims as a result of various defenses that the Genesis Entities have asserted based on the specific facts presented by the Genesis Entities' claims and transfers at issue.

11.    Based upon the facts presented to me as a result of the analysis described above and based upon my understanding of the claims and disputes as presented to me by the Debtors' advisors, I concluded that litigation with the Genesis Entities would require significant time, money, and other resources that, coupled with the risks and uncertainties of litigating the Parties' respective claims to judgment, render entry into the Settlement Agreement in the Debtors' best interests.  Settling the Parties' disputes now for the valuable consideration provided by the terms of the Settlement Agreement is in the best interest of the Debtors' estates, and in my opinion the benefits of the Settlement Agreement outweigh the alternative of continued litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  August 16, 2023

_____

John J. Ray III
Chief Executive Officer