IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | )  |  |
|---|---|---|
| In re: | ) ) ) | |
| | ) | Chapter 11 |
| | ) | |
| FTX TRADING LTD., et al.,[1] | ) ) | Case No. 22-11068 (JTD) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |
| | ) | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN RESPECT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (A)
AUTHORIZING THE DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT
WITH THE GENESIS ENTITIES, (B) APPROVING THE SETTLEMENT
AGREEMENT, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "FTX Debtors"), by and through its undersigned counsel, hereby submits this statement in respect of the *Debtors' Motion For Entry of an Order (A) Authorizing the Debtors to Enter Into Settlement Agreement With the Genesis Entities, (B) Approving the Settlement Agreement, and (C) Granting Related Relief* [Docket No. 2190] (the "Genesis 9019 Motion"), and respectfully states as follows:

1. By the Genesis 9019 Motion, the FTX Debtors seek approval of a settlement (the "Settlement"), which would fully resolve significant claims and litigation between the Genesis

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Entities and the FTX Debtors.[2]  The Committee, after careful analysis and deliberation and after independently pushing the FTX Debtors and the Genesis Debtors to improve the terms of the Settlement, determined not to oppose the Settlement because it concluded that it was in the best interests of the FTX Debtors' creditors.  The Committee believes that the Settlement strikes an appropriate balance between what may have been obtained through successful litigation and the inherent risks and costs of proceeding (in an already expensive case) with such litigation, and results in a net benefit for the FTX Debtors' estates.

2.	In sum, as described in detail in the Genesis 9019 Motion, the Settlement provides that debtor Alameda Research Ltd. will receive an allowed $175 million claim against the Genesis Debtors' estates, to be paid in cash.  All other claims between the Genesis Debtors and the FTX Debtors will be withdrawn and released.  The claims of non-debtor GGC International Ltd. ("GGCI") against the FTX Debtors (estimated to be at least $176 million), will be waived and released, and any preference or other claims by the FTX Debtors against GGCI will also be waived and released.[3]

3.	In deciding not to oppose the Settlement, the Committee evaluated all pertinent information available to it, including documents produced on a confidential basis by the FTX Debtors, Genesis Debtors and GGCI.  In assessing the Settlement, the Committee considered, among other things, (i) the risks, benefits, costs and timing of litigation with the Genesis Debtors and GGCI, (ii) the strength of the parties' respective claims and legal defenses, (iii) cryptocurrency valuation issues, (iv) the potential percentage recoveries for general unsecured creditor claims in

---

[2]  Capitalized terms not defined herein have the meanings ascribed to them in the Genesis 9019 Motion.

[3]  Although GGCI is a member of the Committee, GGCI was at all times recused from all Committee discussions and did not receive any confidential information or documentation through or from the Committee that in any way concerned the Genesis bankruptcy cases or the Settlement.

each of the FTX and Genesis bankruptcy cases, and (v) the likelihood of success were the Committee to oppose the Genesis 9019 Motion. The Committee is constrained by confidentiality and privilege issues from disclosing its specific analyses concerning the Settlement, but the general contours to help inform the creditors of its decision are explained below.

4. Although the FTX Debtors filed claims against the Genesis Debtors of approximately $3.8 billion (primarily resulting from preference exposure), the Committee understood from its own analyses and investigation that the amount that could reasonably be pursued against the Genesis Debtors could be dramatically lower for a number of reasons. First, certain amounts asserted against the Genesis Debtors as preferential withdrawals from the FTX.com exchange appeared to actually have been withdrawals by GGCI, and thus the FTX Debtors were prepared to concede that their claims against the Genesis Debtors would be reduced to no more than $2 billion. *See In re Genesis Global Holdco, LLC*, *et al*., Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.), FTX Debtors' Letter to Court, dated July 5, 2023 [Docket No. 476] (the "July 5 Letter") at 2, ¶ 1. Second, a significant amount of what was withdrawn from the FTX.com exchange within the preference period was shown to likely have been the return of collateral by the Genesis Entities to Alameda, rather than a loan payment, and thus would likely not constitute a preference payment as a matter of law, which would reduce the FTX Debtors' claims against the Genesis Entities even further. Additionally, the currency for a significant portion of the transactions between the Genesis Entities and Alameda was FTT, which raises complicated issues as to the appropriate value of FTT at various dates underlying the FTX Debtors' claims. Finally, the Genesis Debtors and GGCI continued to deposit assets with, and make loans to, the FTX Debtors in the period prior to the Petition Date, potentially subjecting any preference claim against

them to an offset for any subsequent new value, which, if given effect, would significantly reduce the total preference claim.

5.  The Genesis Debtors raised other defenses to the FTX Debtors' preference claims that were specific to the activity between the FTX Debtors and the Genesis Debtors, including whether the underlying loan that was repaid was secured (*see* 11 U.S.C. § 547(b)(5)), the ordinary course defense (*see* 11 U.S.C. § 547(c)(2)), and the safe harbor defense (*see* 11 U.S.C. § 546(e)). *See* July 5 Letter, Exhibit B (Genesis Debtors' list of defenses). The Committee evaluated each of these defenses in the context of the FTX Debtors' claims, assessed the probability that the Genesis Debtors could prevail on any of their defenses, evaluated the costs associated with litigation over each of the issues, and analyzed the extent to which success on any such defense could impact the amount that the FTX Debtors could reasonably expect to recover on their claims.

6.  In turn, the Genesis Debtors filed claims against the FTX Debtors in an amount no less than $190 million, plus certain unliquidated amounts, which the FTX Debtors disputed. GGCI separately advised that it would assert a claim of at least $176 million against the FTX Debtors. The FTX Debtors, in turn, held potential preference claims against GGCI for the amounts that GGCI withdrew from the FTX.com exchange during the preference period. The Committee analyzed these competing claims in the context of the overall Settlement as well.

7.  Moreover, the estimated percentage recoveries to creditors in each of the Genesis and FTX bankruptcy cases were also carefully considered by the Committee because of the implications of 11 U.S.C. § 502(h) upon the FTX Debtors' preference claims. Section 502(h) applies as follows: in the typical scenario, a debtor like FTX would assert a preference claim against a non-debtor defendant and, upon prevailing and obtaining a judgment, would receive payment in the preference judgment amount from the defendant. That defendant would then have

the right under section 502(h) of the Bankruptcy Code to assert a general unsecured claim against the debtor in the amount recovered by the debtor, with that defendant's recovery limited to the percentage recovery on its claim available to all unsecured creditors.[4]  Here, the application of section 502(h) is complicated by the fact that both the plaintiff (the FTX Debtors) and the defendant (the Genesis Debtors) are in bankruptcy proceedings:  first, any successful preference claim by the FTX Debtors would receive the same percentage recovery as other general unsecured claims in the Genesis bankruptcy cases; second, the Genesis Debtors would have a claim against the FTX Debtors under section 502(h), which would receive the same percentage recovery as other general unsecured claims in the FTX bankruptcy cases.[5]  Therefore, in order to evaluate the potential economic ramifications of the Settlement, the Committee considered a range of potential percentage recoveries in each of the bankruptcy cases and the relationship between those recoveries as it bears upon the respective claims, while also taking into account the estimated amount of professional fees that could be incurred in prosecuting and defending the respective claims.  In effect, the Committee evaluated the weighted average of outcomes.

8.  The Committee analyzed all of these competing factors in the context of what would be extensive litigation filed in the Genesis Debtors' bankruptcy cases, which was initiated by the FTX Debtors' motion to lift the automatic stay and the Genesis Debtors' motion to estimate the FTX Debtors' claims at a zero amount.  *See In re Genesis Global Holdco, LLC*, *et al.*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.) [Docket Nos. 289, 373].  Although Judge Lane, the presiding judge in the Genesis Debtors' cases, did not decide either motion, that court indicated at

---

[4]  By way of example only, if the debtor prevailed and recovered $100 on a preference claim against the defendant, the defendant could assert a claim for $100 against the debtor's bankruptcy estate.  If general unsecured creditors of the debtor received a 50% recovery, the defendant would receive $50 ($100 x .50).  The debtor's net recovery on its preference claim would therefore be $50, less the professional fees incurred in obtaining the $100 preference judgment.

[5]  Neither the Genesis Debtors nor the FTX Debtors have yet to publicly estimate potential creditor recoveries.

status conferences on the motions that it was inclined to have certain unspecified issues litigated in that court as part of an estimation process, and was amenable to proceeding in an expedited fashion (although not as expedited as the Genesis Debtors had requested). Regardless of which court would decide the issues, the Genesis Debtors' defenses would be vigorously litigated with no certainty that the FTX Debtors would prevail, the losing party would almost certainly appeal, and the costs of the litigation would continue to accrue. The Committee considered that the Settlement eliminates all litigation risks and prospective costs, while ensuring a recovery to creditors of the FTX Debtors' estates from distributions on the allowed $175 million claim against the Genesis Debtors' estates.

9. Finally, Digital Currency Group, Inc., its principals and all other related entities (including Greyscale Investments, LLC), are *not* parties to the Settlement, and any claims that the FTX bankruptcy estates may have against any of them are not in any way implicated by, or waived and released under, the Settlement.

10. The FTX Debtors advised counsel to the Committee of their settlement negotiations with the Genesis Debtors, and when near-final terms were presented to the Committee, the Committee sought from the Genesis Debtors a higher allowed claim for the FTX Debtors than the $175 million ultimately agreed to. Although the Genesis Debtors did not agree to the Committee's demands, they did agree to the Committee's requirement that distributions to the FTX Debtors be in cash, rather than cryptocurrency.

11. For all of these reasons, the Committee concluded that the Settlement is beneficial to the FTX Debtors' customers and creditors, and that it would not oppose the Settlement. The Committee therefore requests that the Court enter an order approving the Settlement.

| | |
|---|---|
| Dated: August 17, 2023<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Robert F. Poppiti, Jr.*<br>Matthew B. Lunn (No. 4119)<br>Robert F. Poppiti, Jr. (No. 5052)<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mlunn@ycst.com<br>         rpoppiti@ycst.com<br><br>-and-<br><br>PAUL HASTINGS LLP<br><br>Kristopher M. Hansen*<br>Kenneth Pasquale*<br>Erez Gilad*<br>Gabriel E. Sasson*<br>Isaac S. Sasson*<br>200 Park Avenue<br>New York, NY 10166<br>Telephone:  (212) 318-6000<br>Facsimile:  (212) 319-4090<br>Email: krishansen@paulhastings.com<br>         kenpasquale@paulhastings.com<br>         erezgilad@paulhastings.com<br>         gabesasson@paulhastings.com<br>         isaacsasson@paulhastings.com<br><br>*\* Admitted pro hac vice*<br><br>*Counsel to the Official Committee of Unsecured Creditors* |