# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> FTX TRADING LTD., et al.,[1] <br><br> Debtors. | ) <br> ) Chapter 11 <br> ) <br> ) Case No. 22-11068 (JTD) <br> ) <br> ) (Jointly Administered) <br> ) <br> ) **Hearing Date**: <br> ) To Be Determined <br> ) <br> ) **Objection Deadline**: <br> ) To Be Determined |

## EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER COMPELLING MEDIATION OF CHAPTER 11 PLAN AND OTHER CASE ISSUES

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this emergency motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 9019-3 and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing and compelling the Debtors, the Committee and the ad hoc committees represented by Eversheds Sutherland (US) LLP and Entwistle & Cappucci LLP (the "Ad Hoc Committees") to mediate: (i) any and all issues (the "Plan Issues") related to

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

the Debtors' *Draft Plan of Reorganization* and accompanying term sheet [Docket No. 2100] (the "Debtors' Draft Plan"), including the Debtors' proposed confirmation timeline; (ii) information sharing and consent rights in respect of the Debtors' marketing process concerning a potential sale, recapitalization, restart or reorganization of the Debtors' exchanges (the "FTX 2.0 Issues"); and (iii) such other issues as the Debtors, the Committee, the Ad Hoc Committees and the mediator decide or as determined by further order of the Court upon shortened notice and a hearing (collectively, the "Mediation Topics").  In support of this Motion, the Committee respectfully states as follows:

### Preliminary Statement[2]

1. The administration of these Chapter 11 Cases is extraordinarily expensive, with more than $320 million in estate professional fees incurred through June. The only way to reduce the impact of the seemingly limitless administrative burn rate on creditor recoveries is to expedite the Debtors' exit from chapter 11 and to avoid costly and time-consuming litigation along the way. Accomplishing these goals requires true collaboration between the Committee and the Debtors; but, as is evident from their recent dueling statements regarding the Debtors' Draft Plan,[3] the relationship between the parties is fractured and these Chapter 11 Cases now sit at a costly precipice.

---

[2] Capitalized terms used in this Preliminary Statement and not defined herein shall have the meanings ascribed to them later in the Motion.

[3] *See Statement of the Official Committee of Unsecured Creditors in Respect of the Debtors' Draft Plan of Reorganization and Accompanying Term Sheet* [Docket No. 2103] (the "Committee's Statement") and the *Debtors' Response to the Committee's Statement* [Docket No. 2143] (the "Debtors' Response"), copies of which are attached hereto as **Exhibit B** and **Exhibit C**, respectively. The Committee believes that the Debtors' Response contains numerous factual inaccuracies and baseless allegations. The Committee has elected at this time not to engage in a continuing war of words, but in the event that these cases move to a litigation phase, the Committee will require the Debtors to provide evidence to support their allegations, which the Committee is confident that the Debtors cannot do. The Committee will also submit evidence detailing and expanding on the concerns raised in the Committee's Statement.

2.      Seeking to avoid needless litigation, the Committee asked the Debtors to agree to mediate the few, but critical, Mediation Topics on which the parties disagree and then work on completing the plan of reorganization and these Chapter 11 Cases as quickly as possible. As explained to the Debtors, the Committee believes that a mediator would aid the Committee and the Debtors in resolving their differences on the Mediation Topics and could assist in restoring a productive working relationship between the parties, to the benefit of estate creditors.

3.      For their part, the Debtors agreed that mediation would be helpful, was something they had contemplated and raised conceptually with the Committee in prior discussions, and yesterday proposed using Hon. Judith Fitzgerald (Ret.) (the "Mediator"), who was appointed to mediate the issues between the Debtors, the Committee, and the Joint Provisional Liquidators of FTX Digital Markets Ltd. ("FTX DM"), to also mediate Plan Issues. The Committee welcomes the participation of Judge Fitzgerald and is happy to expand her role to cover the Mediation Topics. However, the Debtors' willingness to mediate is tied to a proposed timeline and sequence that the Committee believes unnecessarily extends an already lengthy process by first setting non-mediator attended meetings followed by mediation if necessary, which may stretch out as far as the end of October, as currently contemplated.

4.      As the Debtors know, the Committee repeatedly requested in-person meetings between its members, John Ray and the Debtors' professionals during the month prior to the filing of the Debtors' Draft Plan. The Debtors ignored those requests and only offered a meeting on the eve of filing of the Draft Plan, which the Committee felt was a "check the box" exercise that it had no interest in accommodating.

5.      While the Committee supports direct discussions between the principals, the Committee is extremely frustrated that the Debtors did not take advantage of the Committee's

3

repeated requests to meet sufficiently in advance of the filing of the Debtors' Draft Plan to work through certain of the same issues that the Debtors propose to discuss or mediate now. Had they done so, they surely would have saved at least a month of time to advance these cases, which run at the cost of more than $45 million per month. Because time is of the essence in these Chapter 11 Cases, the Committee believes that mediation should commence now and that the additional month of preparing for mediation is unnecessary. Given that the Mediator is familiar with these Chapter 11 Cases, she can add immediate value to principal-level discussions and quickly help the parties advance a consensual plan. In the almost three weeks since the filing of the Debtors' Draft Plan, there have been no negotiations between the Debtors and the Committee (or to the Committee's knowledge, any other parties, such as the ad hoc committees in these cases) on any of the issues noted by the Debtors in their plan term sheet. At a daily burn rate of over $1.5 million, that is simply unacceptable.

6. Under the Debtors' proposed timeline, mediation would only occur in stages, with many of the issues on which the Committee and the Debtors disagree moved to the later stages of the process. The Committee urges mediation because it believes that most if not all of the issues can be negotiated and resolved now, in parallel, and the time necessary to deal with issues in series can be significantly reduced. And if a sequence to negotiate issues is necessary, it should be determined by the Mediator, who can best decide how to move the parties along with speed.

7. Critically, other than the expiration of the Debtors' exclusive period to file a plan on September 7, 2023, and the Committee's assumption that the Debtors will move to extend such period prior to then, there is nothing that will substantively change in these Chapter 11 Cases that

necessitates waiting until October to commence mediation.[4] The Debtors certainly know exactly what parts of the plan the Committee takes issue with, and if good faith progress is not made on those issues in a timely fashion, the Committee will have no choice but to object to any request to extend exclusivity in order to afford the Committee the opportunity to propose and solicit its own plan.

8.  While there are many issues to be dealt with in the plan context outside of the issues that the Committee would like to mediate (some of which necessarily will take time to work through), the expense of these cases requires that the parties do everything they can to beat the Debtors' proposed timeline to the effective date. Even shortening the Debtors' timeline by as little as a month results in more than $45 million of extra value to distribute to creditors, and an immediate mediation will help to advance these Chapter 11 Cases.

9.  Accordingly, the Committee seeks entry of an order authorizing and directing the Debtors and the Committee to participate in mediation in respect of the Mediation Topics as soon as possible.

**Background**

10. For reasons that are now well known to the Court, on November 11 and 14, 2022 (collectively, the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under title 11 of the Bankruptcy Code. The Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[4] While the customer bar date will pass at the end of September, it will likely take weeks to sort the results and the outcome is unlikely to change the analysis that the Debtors and the Committee have been doing on the disparity between the customer and non-customer claim pools and the best ways to address the victimization of the customers.

11. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 231].[5]

12. **FTX 2.0 Process**: Following urging by the Committee, on May 18, 2023, the Debtors launched a process to solicit proposals for the potential sale, restart, or reorganization of the Debtors' exchanges. The responses thus far have been encouraging, and on June 27, 2023, the Debtors began receiving letters of interest from third parties. Regrettably, however, the Committee's members have yet to be granted access by the Debtors to the bids (beyond a two-page non-substantive summary of these bids) or even the names of the bidders. The Committee believes that parties bidding in the process would welcome direct Committee member participation, and the Committee and the Debtors are currently attempting to negotiate a protocol by which the Committee members and professionals would have greater involvement in the "FTX 2.0 Process." As of the filing of this motion, however, it is not clear whether any such resolution will be timely reached.

13. **The Debtors' Draft Plan**: On July 31, 2023, the Debtors filed the Debtors' Draft Plan, and, on that same day, the Committee filed the Committee's Statement, outlining the Committee's primary concerns with the Debtors' Draft Plan. While the Committee professionals participated in a number of meetings to discuss plan issues, most of the suggestions made by the Committee's professionals were not reflected in the Debtors' Draft Plan, and there still have been no client-level negotiations of its terms. Indeed, since the filing of the Debtors' Draft Plan, there have been no negotiations, whatsoever, on the terms of an amended plan.

---

[5] Acaena Amoros Romero has since formally resigned from the Committee.

**Relief Requested**

14.     By this Motion, the Committee requests entry of the Proposed Order, (i) appointing a mediator, (ii) authorizing and directing the Debtors, the Committee and the Ad Hoc Committees (collectively, the "Mediation Parties") and such other parties as determined by the Mediator, to mediate the Mediation Topics as soon as possible, (iii) directing the Mediation Parties and the Mediator to meet and confer in an effort to submit an agreed-upon order and stipulation setting forth the terms of the mediation, and (iv) granting related relief.

**Basis for Relief**

15.     This Court may appoint a mediator and direct parties to mediation pursuant to Local Rule 9019-5 and section 105 of the Bankruptcy Code. Local Rule 9019-5 provides that this Court may refer "any dispute" to mediation. Del. Bankr. L.R. 9019-5(a) ("The Court may assign to mediation any dispute arising in an adversary proceeding, contested matter or otherwise in a bankruptcy case."). Likewise, section 105 of the Bankruptcy Code provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a); *see also In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order a party to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011). Courts have increasingly relied on mediation to streamline cases, narrow issues, and reduce the costs of litigation which, in many cases, can become quite burdensome on the parties and the judicial system.

16.     Here, the parties agree that mediation is appropriate. The only disagreement between the parties is when mediation should commence and in what order. The Committee

strongly believes that mediation should commence imminently; the Debtors, to the contrary, propose that discussions among the principals should not commence until mid-September, with mediation only occurring thereafter and as sequenced by the Debtors. As noted in the Preliminary Statement, the Committee sees no reason to wait. Although there are many plan-related issues in these Chapter 11 Cases to be resolved and these Chapter 11 Cases are complex, the process to resolution in the vast majority of chapter 11 cases is driven by moving the plan forward quickly. The Committee submits that mediation should commence now, with the goal of expediting these Chapter 11 Cases for the benefit of creditors.

17. Absent a consensual resolution of the Mediation Topics and agreement on an expedited plan timeline, litigation likely will ensue, including, in the near term in connection with the Debtors' anticipated exclusivity extension motion, the costs of which would ultimately be borne by the creditors of these bankruptcy estates. The best path forward is to commence mediation as soon as possible and attempt to reach a consensual path forward on the Mediation Topics and avoid that outcome.

18. Prior to filing this Motion, the Committee previewed the relief requested in this Motion with counsel for the Debtors. As of the filing of this Motion, the Debtors have not consented to entry of an order compelling mediation on the timeline requested by the Committee.

## Notice

19. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Debtors; (c) counsel to the Ad Hoc Committee of Non-U.S. Customers of FTX.com; (d) counsel to Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar, in Adversary Proceeding No. 22-50513 (Bankr. D. Del.); and (e) to the extent not listed herein, those parties requesting notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing

of this Motion. The Committee submits that, under the circumstances, no other or further notice is required.

## Conclusion

WHEREFORE, the Committee respectfully requests that the Court enter the Proposed Order granting the relief requested in this Motion and grant the Committee such other and further relief as the Court deems appropriate under the circumstances.

Dated: August 18, 2023
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert F. Poppiti, Jr.*
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mlunn@ycst.com
      rpoppiti@ycst.com

-and-

PAUL HASTINGS LLP
Kristopher M. Hansen*
Kenneth Pasquale*
Erez Gilad*
Gabriel E. Sasson*
Isaac S. Sasson*
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: krishansen@paulhastings.com
      kenpasquale@paulhastings.com
      erezgilad@paulhastings.com
      gabesasson@paulhastings.com
      isaacsasson@paulhastings.com

*Admitted pro hac vice*

*Counsel to the Official Committee of Unsecured Creditors*