## **EXHIBIT C**

Debtors' Response

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 2103 & 2100 |

**DEBTORS' RESPONSE TO THE STATEMENT OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this response to the *Statement of the Official Committee of Unsecured Creditors in Respect of the Debtors' Draft Plan of Reorganization and Accompanying Term Sheet* [D.I. 2103] in respect of the Debtors' *Draft Plan of Reorganization and Accompanying Term Sheet* [D.I. 2100] and respectfully state as follows:

1. On July 31, 2023, less than nine months after the Debtors collapsed spectacularly into Chapter 11, the Debtors filed a draft proposed plan of reorganization (the "Draft Plan") and accompanying draft term sheet (the "Draft Term Sheet"). The filing of a Draft Plan and Draft Term Sheet is indeed a watershed moment in any Chapter 11 case. It is even more of an accomplishment in these proceedings considering the well-documented, nearly complete absence of books, records or even the barest governance or operational infrastructure that should have been in place for a large and multi-national organization like FTX. The primary purpose of the Draft Plan at this time is to provide a transparent basis for negotiations among

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

diverse stakeholders. The Debtors' next milestone is the filing of an amended plan and disclosure statement by the end of the year.

2. On July 31, 2023, mere moments after the filing of the Draft Plan and Draft Term Sheet, the Official Committee of Unsecured Creditors (the "Committee") filed a "statement" criticizing the Debtors and their professionals for a lack of engagement with the Committee with respect to both the Draft Plan and Draft Term Sheet and the potential monetization of certain of the Debtors' token assets (the "Committee Pleading"). The Debtors have worked tirelessly and respectfully to develop and maintain consensus with the Committee and all stakeholders throughout these cases, and will continue to do so. It is therefore with substantial disappointment that the Debtors are compelled to respond to the inaccurate and unfair statements that riddle the Committee Pleading. The Debtors' response is directed to, and for the benefit of, the vast number of customers, creditors and stakeholders for whom the Debtors, throughout these Chapter 11 cases, have provided transparency related to the prepetition events, and the path to recovery in these cases. It is for these parties that the Debtors strive every day to drive these cases to conclusion.

3. Contrary to the statements in the Committee Pleading, the Debtors worked with the Committee's professionals over the course of many months to develop the Draft Plan and Draft Term Sheet. The Debtors and their professionals shared mountains of data and recovery analyses with the Committee's professionals including 112 separate documents, of which 73 were provided on an unrestricted basis for viewing by Committee members. The Debtors and their professionals had dozens of calls and meetings with the Committee's professionals at which numerous issues and strategies—issues and strategies that informed the Draft Plan and Draft Term Sheet—were discussed in deep detail.

4. The Debtors and their professionals also have worked over the course of months with the Committee's professionals to develop a thoughtful token monetization plan. The Draft Plan and Draft Term Sheet, as well as any token monetization plan, must take into account at least three delicate issues: (a) how to sell tokens into a seriously disrupted marketplace; (b) how to control access to material non-public information relating to such sales when none of the Committee members are or want to be restricted from crypto trading; and (c) how to navigate the fact that all of the individual Committee members are not merely creditors but also crypto traders that (i) traded on the FTX.com exchange in either a principal or market maker capacity (and often both), (ii) continue to trade and make markets on other crypto exchanges and (iii) have repeatedly indicated a strong desire *both* to trade and make markets on a reconstituted FTX.com exchange (referred to colloquially as FTX 2.0) in the event such a construct is possible and to have a role in the corporate governance of the reorganized entity operating any such an exchange.[2]

5. The extensive engagement by the Debtors and their professionals with the Committee and its professionals on plan and token monetization matters is not an assertion of belief or argument by the Debtors, it is an established fact. One need only review the invoices of the Committee's advisors at FTI, Paul Hastings and Jefferies to see the amount of time and expense related to their engagement with the Debtors on these topics. The invoices of the Debtors' professionals likewise demonstrate this engagement. Indeed, the Committee's professionals billed 779 hours in the period from March through June 2023 on plan related matters, not taking into account any time billed in July 2023 (keeping in mind that the Draft Plan

---

[2] In fact, one Committee member has already resigned because of an interest in investing in or running FTX 2.0.

and Draft Term Sheet were filed on July 31, 2023).  To suggest otherwise is misleading in the extreme.

6. In addition to their engagement with the Committee and its professionals, the Debtors and their professionals have worked with the Ad Hoc Committee of customers and other representative parties on a constructive basis.  The Ad Hoc Committee in the aggregate holds customer claims multiple times larger than the amounts held by the Committee members, even without taking into account the large preference exposure faced by many Committee members.  It is notable that the Ad Hoc Committee has not expressed any complaints, let alone complaints consistent with those set out in the Committee Pleading.

7. The Debtors acknowledge that the members of the Committee are experienced in certain aspects of the crypto space.  They are not, however, experienced in restructuring or in the nuts and bolts of maximizing value in a fiduciary capacity over a broad group of debtors for a diverse group of creditors and interest holders.  Nor are they experts in M&A processes or the prosecution of complex litigation.  Given the context of the FTX situation and the widespread fraud that took place, especially that involving Alameda Research (the crypto trader in the FTX group), the Debtors are particularly concerned that there be not even the barest appearance of impropriety either in the context of any plan or token monetization.  This is critical to the credibility of the Draft Plan or any other plan and will remain at the forefront of the Debtors' considerations.  The Committee may be a statutory fiduciary for all unsecured creditors, but it is not representative of all of the various classifications of creditors, nor does the Committee reflect the views of all of the 1.9 million customers of the FTX.com exchange.  Each Committee member's primary relationship with FTX was as a trader or market maker on the FTX.com international exchange.  No Committee member primarily holds claims relating to the

FTX US platform and no Committee member is a conventional non-trader general unsecured creditor. The Debtors, on the other hand, are in the hands of experienced fiduciaries (in the persons of Mr. Ray and the members of the independent Board) who had no prepetition relationship to the Debtors, possess no claims against the Debtors and have fiduciary duties to all creditors.

8. There have been many meetings with individual Committee members on crypto management, the M&A process related to the potential restart of FTX 2.0 and other matters, including weekly calls.[3] While it is accurate that the Debtors did not have a meeting with individual members of the Committee on the Draft Plan and Draft Term Sheet in the week leading up to July 31, throughout this period the Debtors engaged on a daily basis with the Committee's professionals. How much information the Committee's professionals choose to share with their members is not up to the Debtors.

9. Moreover, the Debtors' determination to limit discussion of the Draft Plan and Draft Term Sheet in the week leading up to the July 31 filing to the Committee's professionals was prudent and appropriate under the circumstances. First, the Draft Plan and Draft Term Sheet are—as is clear on their face—drafts. Structural and recovery issues must be and will be addressed with the Committee as well other constituencies as the plan process continues to evolve, particularly after the Debtors assess the claims that will be filed in light of the upcoming customer bar date. Second, in light of the delicate issues outlined in paragraph 4 above, it is the business judgment of the Debtors that so long as material questions remain as to

---

[3] While the Debtors have maintained a professional and productive relationship with the Committee professionals, certain members of the Committee at times have engaged in unprofessional conduct that is detrimental to the process and impacts the communications flow between the Debtors and the Committee. Direct contact with the Committee members has proven unproductive at times given the conduct of certain of the Committee members.

potential conflicts of interest arising due to the continued crypto trading and market making activities of unrestricted Committee members, primary engagement on these sensitive issues should be with the Committee's professionals.

10. The wisdom of this approach has only been reinforced in light of certain positions taken by Committee members over the course of the last several months. Among other things, Committee members have resisted asset sales which would provide liquidity to the estate at a substantial premium to par and have delayed prudent token monetization in favor of going "long" on large crypto holdings. The Committee complains about the Debtors' failure to invest in treasury securities, but ignores that such a strategy would require relief from this Court given that the Debtors' cash is collateralized under section 345 of the Bankruptcy Code by 115 percent. The Committee also ignores that investing directly in U.S. treasuries creates a risk of loss in the event of a need for rapid monetization, or the lack of liquidity in the surety collateral market, which is not an idle concern given the recent bank failures allegedly caused in part by over-investment in U.S. treasuries. The Debtors also would be faced with commingling of their treasury investments, which poses a separate risk. The Committee, populated by traders and market makers, may be willing to gamble estate assets on higher returns, but the Debtors and their independent Board do not agree that such an approach is appropriate in favor of the potential for a slightly higher yield than the present situation where current collateralized deposits earn a weighted average rate of 3.88 percent and over $1.9 billion earn in excess of four percent.

11. In summary, the Committee Pleading is heavy with the weight of an unstated agenda specific to the individual members of the Committee. It also gives a glimpse of what is to come. While claiming a lack of engagement when the facts clearly demonstrate the

opposite, the Committee Pleading actually foreshadows an inclination to pursue an unrepresentative plan that vests control of the Debtors' billions of dollars in liquid assets in the hands of unrestricted crypto traders and market makers regardless of the potential impact on other stakeholders.  Plan negotiations among the Debtors and all their stakeholders will soon commence.  The Debtors hope that the members of the Committee will constructively engage in these negotiations and actually sit down in person[4] alongside the Ad Hoc Committee, customers and stakeholders holding other views in an effort to achieve the optimal result for all those impacted by FTX's fall.

---

[4] It is worth noting that the Debtors are frustrated by the refusal of many Committee members to meet in person (an in person meeting with the full Committee has never occurred) as well as the unwillingness of certain members to appear on screen during Zoom calls.  Personal interaction in addressing complex problems is the hallmark of bankruptcy practice and crucial to forging consensus.  For a matter of the size, complexity and notoriety of FTX, this is especially true regardless of whether individuals are resident far outside the U.S. or generally conduct their daily business virtually.

| | |
|---|---|
| Dated: August 9, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>    mcguire@lrclaw.com<br>    brown@lrclaw.com<br>    pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>    bromleyj@sullcrom.com<br>    gluecksteinb@sullcrom.com<br>    kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |

-8-