**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: September 13, 2023 at 1:00 p.m. (ET)<br>Obj. Deadline: September 6, 2023 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS TO ENTER INTO, AND PERFORM
THEIR OBLIGATIONS UNDER, THE REIMBURSEMENT AGREEMENTS**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), authorizing the Debtors to enter into, and perform their obligations under, the reimbursement agreements (the "Reimbursement Agreements") with advisors (the "AHC Professionals") of the Ad Hoc Committee of Non-US Customers of FTX.com[2] (the "Ad Hoc Committee"), copies of which are attached hereto as Exhibits B-1 and B-3. In support of the Motion, the Debtors respectfully submit as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] The members of the Ad Hoc Committee are set forth on the *Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [D.I. 1156], as supplemented by the *Verified First Supplemental Statement* [D.I. 1580] and the *Verified Second Supplemental Statement* [D.I. 2144], and as further supplemented from time to time as appropriate.

{1368.002-W0072164.}

**Preliminary Statement**

1. Since the Petition Date, the Debtors and their advisors have worked extensively to communicate with a multitude of stakeholders in the hopes of minimizing the need for plan litigation that could delay emergence. One important set of stakeholders is the proposed class of FTX.com customers, representatives of which have filed litigation asserting a property interest in the Debtors' digital assets and also raised a variety of other specific concerns. FTX.com customers' interests are different than, and in some ways may be adverse to, the interests of the general unsecured creditor body.

2. Accordingly, the Ad Hoc Committee, which solely represents the interests of non-US customers of FTX.com, has emerged as a participant in the plan negotiations. Under the Debtors' Draft Plan, non-US customers of FTX.com will constitute their own separate class, Class 4A, and will be entitled vote to accept or reject the plan. The Ad Hoc Committee currently includes holders of nearly $900 million of claims in this class. The Debtors believe the Ad Hoc Committee is diverse and fairly representative of FTX.com customers, including both small and large holders and both initial holders and subsequent purchasers of claims.

3. To assist them in advising their clients, the AHC Professionals have asked the Debtors for reimbursement of their fees and expenses. The AHC Professionals assert that their clients are numerous and disparate and payment of fees directly by their clients is not a viable alternative. The Debtors have considered this request and negotiated the limits and parameters set forth in this Motion. The Debtors also have obtained from each of the AHC Professionals a commitment that, subject to budgetary, KYC and professional considerations, they will remain open to other FTX.com customers joining the Ad Hoc Committee in the future and/or otherwise benefitting from the work of the AHC Professionals.

4. Given the complexity of the customer-related issues in these Chapter 11 Cases and the incremental expense that will be avoided if consensus with such a large group of representative customers can be reached, the Debtors submit that it is in the best interest of the Debtors and their estates to assure the AHC Professionals at this point in these Chapter 11 Cases that they will be compensated for at least part of their work.

5. Accordingly, the Debtors have agreed to enter into the Reimbursement Agreements and respectfully submit that the relief requested herein is in the best interest of the Debtors and their estates and should be granted under section 363 of the Bankruptcy Code.

**Background**

6. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

7. On July 31, 2023, the Debtors filed the *Draft Joint Plan of Reorganization*. (the "Draft Plan"; and as it may be amended in the future, the "Plan") [D.I. 2100].

8. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

**I.  Ad Hoc Committee**

9. The Ad Hoc Committee was initially formed shortly after the Petition Date by a collective group of non-US customers who held accounts on the FTX.com platform. While the Committee represents the interests of all unsecured creditors of the Debtors, due to the novel facts and legal issues in these Chapter 11 Cases, the non-US customers' interests may not always align with that of the Committee's. As of the date hereof, the Ad Hoc Committee is comprised of customers (each a "Member") of the FTX.com platform representing nearly $900 million in customer claims against the Debtors on a dollarized basis. Since the Ad Hoc Committee's formation, additional customers have been joining the Ad Hoc Committee on an ongoing basis.

**II.  Reimbursement Agreement with Counsel**

10. In early December 2022, the initial Members of the Ad Hoc Committee engaged Eversheds Sutherland (US) LLP ("Eversheds") and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols," and together with Eversheds, "Counsel") in connection with these Chapter 11 Cases. Each Member has consented to Counsel's representation of the Ad Hoc Committee, and the Ad Hoc Committee's retention of Counsel is solely with respect to the collective interests of the Ad Hoc Committee and does not encompass representation of any Member in its individual capacity in these Chapter 11 Cases.

11. Given the indispensable role of Counsel in advancing joint efforts towards a consensual plan, on August 23, 2023, Debtor FTX Trading, Ltd. entered into a reimbursement agreement (the "Counsel Reimbursement Agreement"; a copy of which is attached hereto as Exhibit B-1) with the Counsel, pursuant to which the Debtors agreed to pay the Counsel no more

than $500,000 in the aggregate for both Eversheds and Morris Nichols per month in reasonable and documented fees from May 1, 2023 through the termination of the Counsel Reimbursement Agreement. Any unused portion of any monthly fee cap for any month shall be carried over on a rolling monthly basis, and any amounts incurred over the monthly fee cap in a given month may be applied to later periods for reimbursement. In addition, the Company shall reimburse Counsel for all reasonable out-of-pocket expenses (at cost) from May 1, 2023 through the termination of the Counsel Reimbursement Agreement. Eversheds shall have the sole discretion to allocate fees and expenses between Eversheds and Morris Nichols such that the monthly fees payable by the Company does not exceed any monthly fee cap.

12. The Debtors may terminate the Counsel Reimbursement Agreement at any time if the Debtors determine that termination is in the best interests of the estates, including without limitation after (i) the commencement or continuation of direct litigation by the Ad Hoc Committee or by any Member against the Debtors (in their individual or other capacity) while such Member continues to serve in such capacity; (ii) the Board of Directors of the Debtors (the "Board") reasonably determines in good faith after receiving the advice of outside counsel that the Debtors' continued performance under the Counsel Reimbursement Agreement would be inconsistent with the exercise of the Board's fiduciary duties under applicable law, (iii) the Debtors' determination that the Ad Hoc Committee does not represent a sufficient number of holders or amount of claims to constitute the primary class of FTX.com customers or that sufficient members of the Ad Hoc Committee are unwilling to become restricted from trading as necessary to provide meaningful feedback on the Debtors' chapter 11 plan; or (iv) an order is entered by this Court or a court of competent jurisdiction denying approval of a disclosure statement or denying

confirmation of any chapter 11 plan supported by the Ad Hoc Committee (collectively, the "Termination Events").

### III. Reimbursement Agreement with Rothschild & Co

13. Effective as of July 1, 2023, members of the executive committee of the Ad Hoc Committee (the "Executive Committee") and Counsel retained Rothschild & Co US Inc. ("Rothschild & Co") as financial advisor and investment banker to the Executive Committee and Counsel pursuant to an engagement letter (the "Rothschild & Co Engagement Letter", a copy of which is attached hereto as Exhibit B-2). During such retention, Rothschild & Co will provide financial advisory services including without limitation (i) assisting Counsel and the Executive Committee in evaluating the financial aspects of the Debtors, (ii) providing certain financial analyses as Counsel or the Executive Committee may reasonably request, (iii) representing Counsel and the Executive Committee in negotiations with the Debtors and other parties in interest and (iv) analyzing any proposed chapter 11 plan on behalf of Counsel and the Executive Committee.

14. Given the indispensable role of Rothschild & Co in advancing joint efforts towards a consensual plan, on August 23, 2023, Debtor FTX Trading, Ltd. entered into a reimbursement agreement (the "Rothschild & Co Reimbursement Agreement"; a copy of which is attached hereto as Exhibit B-3) with Rothschild & Co, pursuant to which the Debtors agreed to pay Rothschild & Co (i) a monthly advisory fee ("Monthly Fees") of $175,000 per month during the term of the agreement (except that the first two months of Monthly Fee shall be payable by the Debtors upon the entry of the Order), (ii) a transaction fee ("Transaction Fee") of $3,500,000 subject to further Court approval and payable upon the effective date of an Approved Plan, which means a chapter 11 plan confirmed by this Court that (a) Rothschild & Co and Counsel, on behalf of the Executive Committee, actively participate in the negotiation of, (b) Rothschild & Co and

Counsel advise the Executive Committee to recommend for approval by the Ad Hoc Committee, and (c) has been approved by at least two-thirds in amount of claims and half in number of the primary class of FTX.com customers who submit votes on such chapter 11 plan, and (iii) its reasonable and documented out-of-pocket expenses (at cost) *nunc pro tunc* from July 1, 2023 through the termination of the Rothschild & Co Reimbursement Agreement.

15. The Debtors may terminate the Rothschild & Co Reimbursement Agreement upon the occurrence of any of the Termination Events set forth above.

## Jurisdiction

16. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief sought herein is Bankruptcy Code sections 105(a) and 363(b). Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

17. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to enter into, and perform under, the Reimbursement Agreements.

**Basis For Relief**

**I.    Section 363(b) of the Bankruptcy Code Authorizes the Debtors to Enter into, and Perform Under, the Reimbursement Agreements.**

18. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363(b) "provide[s] the right procedural mechanism[s] through which Debtors may seek to pay [an ad hoc committee] professional fees and expenses on a prospective basis." *In re Mallinckrodt PLC*, Case No. 20-12522-JTD, 2022 WL 906458, at *6 (D. Del. Mar. 28, 2022) (internal quotation marks omitted); *see also*, *In re Mallinckrodt PLC*, Case No. 20-12522-JTD, Dec. 14, 2020 Hr'g Tr. at 34:1-5 ("I agree with the debtors that Section 363 provides the procedural mechanism for a debtor to seek the authority to make payments to unsecured creditor groups that if the group, itself, sought payment it would need to be made pursuant to Section 503."); *In re Extraction Oil & Gas, Inc.*, Case No. 20-11548 (CSS) (Bankr. D. Del. Dec. 22, 2020), Dec. 22, 2020 Hr'g Tr. at 84:7-25 ("I would generally agree with this concept that 363 allows you to do anything unless it's controverted by the code in another provision. . . . So I don't think necessarily that 503 is exclusive on these issues [about payment to unsecured creditors' professionals].").

19. The applicable legal standard in respect of a debtor seeking prospective authorization to enter into a reimbursement agreement under section 363(b) is the business judgment test. *In re Mallinckrodt PLC*, 2022 WL 906458, at *6 (D. Del. Mar. 28, 2022). The substantial contribution standard underlying section 503(b)(4) of the Bankruptcy Code, which creates a mechanism for retrospective payments to non-estate professionals, is not applicable, and instead, the business judgement test controls. *Id.* at *6, *9. Under the business judgment test, "a bankruptcy court will authorize debtor-initiated actions if the debtor shows that 'a sound business

purpose justifies' such actions." *Id*. "Where [a debtor] articulates a reasonable basis for the business decision, courts will generally not entertain objections." *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016), aff'd, 681 F. App'x 140 (3d Cir. 2017).

20.     Additionally, the Court does not need to wait and see if the plan is confirmed before approving professional fees under section 363(b). *In re Mallinckrodt PLC*, 2022 WL 906458, at *11 (D. Del. Mar. 28, 2022) (approving debtors to pay an ad hoc committee professional fees under section 363 prospectively prior to plan confirmation over objections); *see also*, *RCS Capital Corporation, et. al.*, Case No. 16-10223 (MFW) (Bankr. D. Del. March 16, 2016), Mar. 16, 2016 Hr'g Tr. 40:24-41:9 ("I disagree with the United States Trustee that I need to wait and see if the plan is confirmed before I can approve such fees.  Getting the Debtor stabilized and on track to an exit; whether it is ultimately approved in that form is not necessary.").

21.     The Debtors respectfully submit that their decision to enter into the Reimbursement Agreements to pay reasonable and documented fees and expenses of the AHC Professionals is a sound exercise of their business judgment.  To advance their plan formulation process, the Debtors require continued support and engagement from the Ad Hoc Committee, which represents non-US customers of FTX.com who are not always aligned with the interests of the Committee.  Given the considerable work that remains to be done in these Chapter 11 Cases, and the important roles the AHC Professionals will play in advancing joint efforts towards a consensual plan, the Debtors' decision to enter into the Reimbursement Agreements is supported by sound business justification.

22.     *First*, as the Court recognized in *Mallinckrodt*, "[t]he ability to work with the ad hoc group[s] of creditors rather than trying to negotiate with vast numbers of individual creditors clearly provides for a more streamlined and convenient way to move toward completing

a successful reorganization." Case No. 20-12522-JTD, Dec. 14, 2020 Hr'g Tr. 29:2-6. The Reimbursement Agreements will ensure the Ad Hoc Committee is adequately represented, and therefore continue to provide meaningful input in the plan negotiation process. There are millions of non-US customers of FTX.com and negotiating with all of them, or even a large subset of them, would be impracticable. The existence of the Ad Hoc Committee has streamlined the consensus-building process and provided a practical path towards a consensual plan.

23. *Second*, while the Draft Plan serves as an important milestone towards plan confirmation, significant work remains to be done. For example, it remains to be decided (i) the expected size of the various classes of claims, recovery pools and estimates of creditor recoveries; (ii) the fair and appropriate amount of priority that should be given to the exchange shortfall claims against the general pool of assets; (iii) the decision and manner in which the FTX.com exchange is sold or reorganized; (iv) how claims should be traded or transferred once a plan becomes effective; and (v) whether claims should be evidenced by a recovery rights token or other digital asset and the ramifications of such structure.

24. The Debtors cannot resolve all these issues on their own—they will require continuous and effective participation by constituents, including the Ad Hoc Committee. Given the complexity of these Chapter 11 Cases, the Ad Hoc Committee necessarily requires guidance from sophisticated legal and financial advisors. Without the Reimbursement Agreements, the Ad Hoc Committee will be unable to retain skilled and experienced advisors, and a disoriented Ad Hoc Committee will be unable to assist the Debtors in advancing a consensual plan, which will likely delay the plan formulation process.

25. *Third*, the Debtors have ample liquidity to perform under the Reimbursement Agreements, and the reimbursable fees and expenses will be subject to robust scrutiny by the Court and parties-in-interest, as discussed in more detail below.

26. This Court and courts in other jurisdictions have approved similar payments to non-estate professionals based on the debtors' business judgment that doing so facilitates the reorganization process. *In re Mallinckrodt PLC*, No. BR 20-12522-JTD, 2022 WL 906458, at *6 (D. Del. Mar. 28, 2022) (affirming order approving reimbursement agreements under section 363(b) prior to plan confirmation); *In re Purdue Pharma, L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) [D.I. 553] (approving payment to ad hoc committee's professionals under sections 363(b) and 365 prior to plan confirmation); *In re Hercules Offshore, Inc.*, Case No. 15-11685 (KJC) (Bankr. D. Del. Aug. 24, 2015) [D.I. 95] (finding that the debtors' decision to assume a restructuring support agreement, which includes payments to non-estate professionals prior to plan confirmation, to be "a sound exercise of their business judgment"); *In re Bethlehem Steel Corp.,* 2003 WL 21738964, at *12 (S.D.N.Y. July 28, 2003) (authorizing payments to creditors' professionals under section 363(b) "to help evaluate and negotiate the terms of a plan").

II. **Entering into the Reimbursement Agreements Will Benefit the Debtors' Estates as a Whole**

27. The use of section 363(b) by debtors in seeking authority to pay non-estate professional fees requires such fees benefit the debtors' estates, as opposed to individual creditors. *See In re Mallinckrodt PLC*, 2022 WL 906458, at *6 (D. Del. Mar. 28, 2022). This requirement is satisfied when a reimbursement agreement "assures that the reimbursements will be for work that benefits the debtors' estates as a whole, rather than individual creditors or creditor groups." *Id*.

28. The Debtors respectfully submit that entering into the Reimbursement Agreements will facilitate the progress of these Chapter 11 Cases to the benefit of the Debtors' estates as a whole. *First*, Counsel and Rothschild & Co may be retained to represent any Member in its individual capacity in these Chapter 11 Cases in connection with such Member's claim submissions or related claim analysis but Counsel and Rothschild & Co shall not be reimbursed by the Debtors for such individual representations. The Ad Hoc Committee's retention of Counsel is solely with respect to the collective interests of the Ad Hoc Committee. *See Verified Statement of Eversheds Sutherland (US) LLP and Morris Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1156]. Similarly, Rothschild & Co is retained as the exclusive financial advisor and investment banker to the Executive Committee and Counsel, acting on behalf of the Ad Hoc Committee.

29. *Second*, the Reimbursement Agreements and the Order contain numerous safeguards to ensure that any payment of the fees and expenses benefit the Debtors' estates as a whole, rather than individual Members. For example, the Order expressly (i) excludes from the reimbursement any fees incurred by an individual Member for professionals retained by that Member, including internal or external advisors, (ii) prohibits reimbursement of fees and expenses in connection with or in furtherance of preparing for, commencing, or prosecuting direct litigation against the Debtors and (iii) prohibits reimbursement of fees and expenses of an individual Member for filing objections to other creditors' claims or advancing or prosecuting the Member's own claim.

30. *Third*, with respect to (i) filing objections to the claims or proofs of claim of other creditors (including motions to file proofs of claim) or engaging in claims estimation litigation outside of a plan confirmation hearing and (ii) opposing motions seeking standing to

pursue estate causes of action, or motions seeking discovery, the AHC Professionals are entitled to payment for their reasonable fees and expenses only for (i) conferring with the Debtors and other parties-in-interest on an appropriate course of action for the Debtors to take, (ii) joining the Debtors in such course of action (whether by filing supporting papers or appearing and arguing in court), (iii) monitoring the Debtors' course of action and any related proceedings with respect thereto (including discovery therein) and (iv) engaging with the Debtors and other parties-in-interest with respect to the resolution or disposition of such matters.

31.  *Finally*, the AHC Professionals agree to comply with this Court's *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 435], including filing monthly fee statements and interim fee applications. Additionally, Eversheds and Morris Nichols shall make a reasonable effort to comply with the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013 and fees and expenses paid to Eversheds and Morris Nichols shall be subject to review by the fee examiner appointed in these Chapter 11 Cases pursuant to the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834].

32.  The Debtors' reimbursement obligations are, therefore, limited in scope, and the AHC Professionals' requests for reimbursement will be subject to robust scrutiny by the Court and parties-in-interest. These protections ensure that the fees and expenses to be paid under the Reimbursement Agreements are those that will benefit the Debtors' estates as a whole, and not just individual creditors. Accordingly, the Debtors submit that they should be authorized to enter into, and perform under, the Reimbursement Agreements.

**Notice**

33.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; and (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is deemed just and proper.

Dated: August 23, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
　　　　brown@lrclaw.com
　　　　pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
　　　　bromleyj@sullcrom.com
　　　　gluecksteinb@sullcrom.com
　　　　kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*