**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  September 13, 2023 at 1:00 p.m. (ET)** |
| | **Objection Deadline:  September 6, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING FTX TRADING LTD.**
**TO ENTER INTO, AND PERFORM ITS OBLIGATIONS UNDER,**
**THE INVESTMENT SERVICES AGREEMENT**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing FTX Trading's entry into, and performance of its obligations under, the Investment Services Agreement with Galaxy Digital Capital Management LP ("Galaxy Asset Management"), dated as of August 23, 2023 (including the Guaranty by Galaxy Digital Holdings LP attached to the Investment Services Agreement as Exhibit B (the "Guaranty"), all appendices and exhibits thereto and as may be amended, modified or supplemented from time to time, the "Investment Services Agreement" or "ISA").[2]  A copy of

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Investment Services Agreement.

the Investment Services Agreement is attached hereto as <u>Exhibit B</u>.[3]  Certain facts supporting

this Motion are set forth in the Declaration of Stephen J. Kurz (the "<u>Kurz Declaration</u>"), attached

hereto as <u>Exhibit C</u>.  In further support of the Motion, the Debtors respectfully state as follows:

<b><u>Background</u></b>

1.      On November 11 and November 14, 2022 (as applicable, the "<u>Petition</u>

<u>Date</u>"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware

(the "<u>Court</u>") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases

(the "<u>Chapter 11 Cases</u>") was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

of Delaware (the "<u>U.S. Trustee</u>") appointed an Official Committee of Unsecured Creditors

(the "<u>Committee</u>") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93]

(collectively, the "<u>First Day Declarations</u>").

---

[3]    FTX Trading is currently the only Debtor party to the Investment Services Agreement, but, upon joining the
Investment Services Agreement and subject to the terms thereof, Galaxy Asset Management will also provide
investment management services to other Debtors that own Assets that are held in the Account (such Debtors,
the "<u>Debtor Beneficiaries</u>").

## **Jurisdiction**

3.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408

and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 6004.  Pursuant to rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the

District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or

judgment by the Court in connection with this Motion to the extent it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments consistent with

Article III of the United States Constitution.

## **Facts Specific to the Relief Requested**

### I.      **The Coin Management and Monetization Motion**

4.      On July 31, 2023, the Debtors filed the *Draft Plan of Reorganization* and

accompanying *Term Sheet* [D.I. 2100] (together, the "Draft Plan").  The Draft Plan provides for,

among other things, potential monetized distributions on account of allowed claims to the

Debtors' creditors and customers.  Because a substantial portion of the Debtors' assets are digital

assets, concurrently herewith the Debtors have filed the *Debtors' Motion for Entry of an Order*

*Authorizing and Approving (I) Guidelines for the Sale or Transfer of Certain Digital Assets,*

*(II) the Discretionary Sale or Transfer of Such Digital Assets in Accordance with Such*

*Guidelines Free and Clear of any Liens, Claims, Interests and Encumbrances, (III) the Debtors'*

*Entry Into, and Performance Under, Postpetition Hedging Arrangements, Including Granting*

*Liens and Superpriority Administrative Expense Claims in Connection Therewith and (IV) the*

*Debtors to Stake Certain Digital Assets* (the "Coin Management and Monetization Motion").  In connection with the Coin Management and Monetization Motion, the Debtors' board of directors (the "Board") has selected Galaxy Asset Management to provide investment manager services with respect to certain digital assets that constitute an account of FTX Trading (the "Account"). Pursuant to the Coin Management and Monetization Motion, the Debtors are seeking the authority to, among other things, monetize Digital Assets (as defined therein) in accordance with Court-approved management and monetization guidelines and enter into hedging and staking arrangements.  By this Motion, the Debtors seek authorization for FTX Trading to enter into the Investment Services Agreement with respect to the Account and perform its obligations thereunder, including, among other things, the payment to Galaxy Asset Management of the Management Fee (as defined below) and expenses.

## II.    Galaxy's Qualifications

5.    As set forth in the Kurz Declaration, Galaxy Asset Management has extensive experience in areas relevant to digital asset management and trading, including with respect to the types of transactions and investment objectives contemplated by the Investment Services Agreement.  (*See* Kurz Decl. ¶3.)  Galaxy Asset Management is an SEC-registered investment adviser, providing investors with access to the digital asset ecosystem via a diverse suite of institutional-grade investment vehicles that span passive, active and venture strategies. Galaxy Asset Management's passive strategies consist of single- and multi-asset private funds in the United States, as well as a suite of spot crypto exchange-traded products with a leading asset manager in Canada.  (*Id.*)  Its active pillar seeks to offer investors diversified, lower-volatility and risk-managed access to the current and next generation of liquid digital assets via a long-biased strategy.  (*Id.*)  Galaxy Asset Management's operating business is supported by a firm-wide research team, as well as dedicated finance, operations, legal, compliance, marketing and

human resources functions.  (*Id.*)  The Debtors selected Galaxy Asset Management, in

consultation with the Committee and after consideration of other potential investment advisers,

because they believe that Galaxy Asset Management is well-qualified and able to provide digital

asset management and trading services in a cost-effective, efficient and timely manner.  (*Id.*)

**III.    Services to Be Provided**

6.    Pursuant to the Investment Services Agreement, Galaxy Asset

Management will provide the following services, among others (collectively, the "Services"):[4]

- In executing its responsibilities under the Investment Program, Galaxy Asset Management shall have the authority and responsibility, under the supervision of the Debtors' Board and Representatives, to:

  - cause the Account to buy, sell, swap, redeem, manage, stake, hold, exchange, convert and otherwise trade in any and all financial instruments (including, without limitation, digital assets, swaps, options, futures contracts, commodities and forward contracts and derivatives) as Galaxy Asset Management may select, including engaging to the extent necessary and prudent (in the judgment of Galaxy Asset Management) with respect to such financial instruments, utilizing such financial instruments in accordance with the express objectives of the Board;

  - provide advice to the Board and its Representatives with respect to the Account, including recommendations concerning, and identification of, Assets;

  - monitor the Assets held in the Account;

  - determine from time-to-time which Liquidation Assets should be retained or sold and what contracts should be entered into by the Account, and perform any research or diligence related thereto as appropriate;

  - subject to the limitations set forth in the Investment Services Agreement, exercise all rights, powers, privileges and other

---

[4]    Any summaries contained herein are provided for the convenience of the Court and parties-in-interest.  To the extent that there is any conflict between this Motion and the Investment Services Agreement, the Investment Services Agreement shall govern in all respects.

incidents of ownership or possession with respect to the Assets held in the Account;

- o supervise the preparation and review of all documents required to complete any investment by the Account;

- o act on behalf of the Account in all matters necessary or incidental to the management of the Assets held in the Account; and

- o provide strategic and financial planning to FTX Trading and its Representatives, including advice on utilization of any Assets held in the Account.  (*See* ISA § 4(a)(i)-(viii).)

- To the extent requested by the Board or its Representatives, providing support services to the Account, including certain administrative, accounting, client services and other appropriate services, including:

- o subject to the terms of the Investment Services Agreement, to the extent advisable or requested by FTX Trading or its Representatives, select brokers, dealers, banks, counterparties and other intermediaries, including affiliates of Galaxy Asset Management, by or through whom any transactions will be executed or carried out and open, maintain and close accounts with such entities on behalf of the Account;[5]

- o subject to the terms of the Investment Services Agreement, enter into and execute agreements, make payments and incur obligations on behalf of the Account in furtherance of Galaxy Asset Management's duties thereunder; and

- o provide general administrative and operational services to the Account.  (*See* ISA § 4(b)(i)-(iii).)

- Decisions (a) to select trading intermediaries or counterparties and (b) for negotiation of commission rates or other compensation for trading intermediaries or counterparties.  (*See* ISA § 4(c)(i).)

- Providing testimony as required in connection with the Court's review of this Motion and the Coin Management and Monetization Motion (together, in each case, with the declarations in support thereof).  (*See id.*)

---

[5]   As described in the Investment Services Agreement, Galaxy Asset Management may only select Galaxy Digital Trading Cayman LLC or any of its affiliates (a "Galaxy Trading Partner") as a trading partner for a Transaction if the obligations of the Galaxy Trading Partner in connection with such Transaction are guaranteed by Galaxy Digital Holdings LP, the ultimate parent of Galaxy Asset Management, Galaxy Trading and each of their affiliates.

- Providing general market commentary as Galaxy Asset Management deems appropriate. (*See* ISA § 4(c)(ii).)

## IV.    Galaxy's Compensation

7.      Pursuant to the Investment Services Agreement, FTX Trading shall pay Galaxy Asset Management a monthly management fee (the "Management Fee") comprised of (i) the Hedging Fee and (ii) the Liquidation Fee.  The "Hedging Fee" shall be an amount equal to the product of (x) 0.005, (y) the number of calendar days in the applicable month divided by 365 and (z) the average USD net asset value of the Hedging Assets for the applicable month.  The "Liquidation Fee" shall be the product of (x) 0.00075 and (y) the total proceeds received by FTX Trading in connection with the sale of any Liquidation Assets in the Account during the applicable month.  (*See* ISA § 7(a)(i).)

8.      FTX Trading shall also reimburse Galaxy Asset Management for (i) all reasonable and documented out of pocket costs and expenses incurred by Galaxy Asset Management in connection with performing the Services (to the extent Galaxy Asset Management is not reimbursed by the subject of an investment or other third parties), including, without limitation, (1) commissions, interest or other finance charges, custodial and brokerage fees and any other expenses related to the sale or transmittal of the positions in the Account (provided that FTX Trading shall not be responsible for any fees paid by Galaxy Asset Management to an affiliate thereof engaging in brokerage services to effect a Transaction) and (2) any reasonable and documented fees and expenses of Galaxy Asset Management's outside legal counsel and other advisors incurred in performing the Services after the Effective Date, provided that Galaxy Asset Management shall notify FTX Trading prior to engaging any advisors as contemplated by clause (2) and (ii) up to $100,000 for fees and expenses incurred by Galaxy Asset Management's outside legal counsel before the Effective Date.  (*See* ISA § 7(c).)

## V.    Indemnification and Limitations on Liability

9.     Pursuant to the Investment Services Agreement, FTX Trading is agreeing to indemnify and hold harmless Galaxy Asset Management and its affiliates or personnel or any of their respective directors, members, officers, employees, affiliates, secondees, agents, delegates, partners or representatives (each, an "Indemnified Party") against losses suffered or incurred by reason of, relating to, based upon, arising from or in connection with (directly or indirectly) (i) the operations, business or affairs of FTX Trading, or any actions taken by Galaxy Asset Management or failure by it to act (even if negligent) in connection with the Investment Services Agreement, (ii) a Disqualifying Action (as defined below) by FTX Trading or (iii) FTX Trading's breach of the Investment Services Agreement, in each case except to the extent that such losses are determined by a court of competent jurisdiction, upon entry of a final judgment, to be attributable to the willful misconduct, gross negligence, fraud, reckless disregard or material breach of the Investment Services Agreement or, in the case of Galaxy Asset Management, Galaxy Asset Management's operational errors in handling Assets or effecting transactions for FTX Trading's account (each, a "Disqualifying Action"), of such Indemnified Party.  (*See* ISA § 9(b).)

10.     Under no circumstances will any Party to the Investment Services Agreement be responsible for any special, consequential, incidental or exemplary damages or loss hereunder (nor any lost profits, savings or business opportunity) and Galaxy Asset Management (unless due a Disqualifying Action) shall not have any liability (whether direct or indirect, in contract or tort or otherwise) for any claims, liabilities, losses, damages, penalties, obligations or expenses of any kind whatsoever, including reasonable attorneys' fees and court costs, suffered by FTX Trading (i) as the result of any act or omission by Galaxy Asset Management in connection with, arising out of relating to the performance of the Services or

(ii) any "passive breach" of the Investment Program or any investment guidelines separately agreed between Galaxy Asset Management and FTX Trading arising solely as a result of (x) changes in market value or (y) additions to or withdrawals from the Account or portfolio rebalancing, in each case to the extent not within the control of Galaxy Asset Management.  (*See* ISA § 9(a).)

## VI.     Galaxy Asset Management's Fiduciary Duties

11.     As set forth in the Kurz Declaration, Galaxy Asset Management is obligated to discharge its fiduciary duties to FTX Trading and the Debtor Beneficiaries and exercise each of its powers under the Investment Services Agreement consistent with the care, skill and diligence that Galaxy Asset Management applies in its capacity as a registered investment adviser to third-party investment funds and other clients.  (*See* Kurz Decl. ¶ 11.)  As a fiduciary, Galaxy Asset Management has a fundamental obligation to act in the best interests of its asset management clients and to provide investment advice in its clients' best interests.  (*See id.*)  It owes its clients a duty of undivided loyalty and utmost good faith and must employ reasonable care to avoid misleading clients and provide full and fair disclosure of all material facts to its clients and prospective clients.  (*See id.*)  Among the obligations that flow from Galaxy Asset Management's fiduciary duty to FTX Trading and the Debtor Beneficiaries are the duties to (i) have a reasonable, independent basis for its investment advice; (ii) obtain best execution (at least where Galaxy Asset Management is in a position to direct the execution of transactions); (iii) ensure that its investment advice is suitable to FTX Trading's and the Debtor Beneficiaries' objectives, needs and circumstances; and (iv) refrain from effecting personal transactions inconsistent with FTX Trading's or the Debtor Beneficiaries' interests.  (*See id.*)

12.     As set forth in the Kurz Declaration, in the ordinary course of its business, and in furtherance of its fiduciary duties, Galaxy Asset Management maintains a series of

policies and procedures to ensure there are no conflicts that could impede the exercise of these

fiduciary duties.  (*See* Kurz Decl. ¶ 12.)  Galaxy Asset Management's compliance team reviews

potential conflicts of interest with respect to Galaxy Asset Management and its affiliates

(collectively, the "Galaxy Group") and escalates any conflicts that may arise between business

lines or within a business line, as necessary, to a Conflicts Committee, which consists of

members of the compliance team and senior management.  (*See id.*)  The Conflicts Committee

then either adopts control or other policies to mitigate the conflict or decides not to proceed with

the relevant transaction.  (*See id.*)

13.     As set forth in the Kurz Declaration, at the time of employment, all

employees of Galaxy Asset Management are required to disclose their "Outside Business

Activities," or "OBA," as required by applicable FINRA rules.   (*See* Kurz Decl. ¶ 13.)  Once

employed, Galaxy Asset Management employees must seek and receive approval before

engaging in any new OBA and must notify (and seek the approval of) the Chief Compliance

Officer (the "CCO") if changes are made to previously approved activities.  Galaxy Asset

Management's compliance team evaluates each proposed activity and determines whether to

authorize, impose conditions or limitations on or prohibit the activity.  (*See id.*)  Galaxy Asset

Management's compliance team also evaluates whether the proposed activity is properly

characterized as an OBA, including whether it should be treated as an outside securities activity

under applicable FINRA rules.  (*See id.*)  If an OBA is determined to be a securities transaction,

the transaction is reviewed for potential conflicts by the relevant employee's manager and the

CCO.  (*See id.*)  If approved, the activity is subject to ongoing supervision.  (*See id.*)  Galaxy

Asset Management employees must attest on a quarterly basis that their OBA reporting is

current, and all employees must attend an annual compliance training where OBAs are discussed and employees are reminded of its policies and procedures.  (*See id.*)

14.     As set forth in the Kurz Declaration, Galaxy Asset Management has also instituted policies and procedures designed to monitor and prevent commingling of client assets. (*See* Kurz. Decl. ¶ 14.)  Galaxy Asset Management's sponsored funds and any separately managed client accounts hold OTC trading, custodial and bank accounts in their own names to ensure that assets of one fund or client account are not commingled with assets of other funds, client accounts or accounts of its affiliates.  (*See id.*)

**Relief Requested**

15.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing FTX Trading's entry into, and performance of its obligations under, the Investment Services Agreement.

**Basis for Relief**

I.     **Entry Into the Investment Services Agreement Is a Proper Exercise of the Debtors' Business Judgment.**

16.     Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and hearing.  11 U.S.C. § 363(b)(1).  To obtain court approval to use property under section 363(b), the Debtors need only show a legitimate business justification for the proposed action.  *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).  Generally, a court should be deferential to the determinations of management, and where a debtor "articulates a reasonable basis for its

business decisions . . . , courts will generally not entertain objections to the debtor's conduct."

*See In re Filene's Basement, LLC*, 2014 WL 1713416, at \*12 (Bankr. D. Del. Apr. 29, 2014)

(quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

17.     The business judgment rule shields a debtor's management from judicial

second-guessing.  *See In re Johns-Manville Corp.*, 60 B.R. at 615-16 ("[T]he Code favors the

continued operation of a business by a debtor and a presumption of reasonableness attaches to a

debtor's management decisions.").  Once a debtor articulates a valid business justification, "[t]he

business judgment rule 'is a presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action was

in the best interests of the company.'"  *See In re Integrated Res., Inc.*, 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

18.     FTX Trading's entry into the Investment Services Agreement is a valid

exercise of its business judgment and should be approved pursuant to section 363(b) of the

Bankruptcy Code.  Pursuant to the Coin Management and Monetization Motion, the Debtors are

seeking the authority to, among other things, monetize Digital Assets through an investment

adviser in accordance with Court-approved management and monetization guidelines.  Sales of

Digital Assets through an investment adviser is critical because if the Debtors were to attempt to

sell large Digital Asset positions directly on an exchange, the Debtors risk "flooding the market"

and depressing the value of such Digital Assets.  (*See* Mosley Decl.[6] ¶ 7.)  Additionally, if the

---

[6]     "Mosley Declaration" or "Mosley Decl." refer to the *Declaration of Edgar W. Mosley II In Support of (A) The Debtors' Motion for Entry of an Order Authorizing and Approving (I) Guidelines for the Sale or Transfer of Certain Digital Assets, (II) the Discretionary Sale or Transfer of Such Digital Assets in Accordance with Such Guidelines Free and Clear of Any Liens, Claims, Interests and Encumbrances, (III) the Debtors' Entry into, and Performance Under, Postpetition Hedging Arrangements, Including Granting Liens and Superpriority Administrative Expense Claims in Connection Therewith and (IV) the Debtors to Stake Certain Digital Assets,*

Debtors sought to execute sales directly with over-the-counter market makers, there is a risk of "information leakage," since the Debtors would request pricing in advance from several market makers contemporaneously, and such requests may "tip off" the broader market, likely moving the market price of such Digital Assets against the interests of the Debtors.  (*See* Kurz Decl. ¶ 10.)

19.     By contrast, Galaxy Asset Management has strategic expertise in conducting sales while minimizing "information leakage" and in practicing best execution.  (*See id*.)  Galaxy Asset Management is also prohibited from executing transactions and taking any other actions that are not permitted by the Management and Monetization Guidelines (unless any such action is specifically agreed upon in writing by the Debtors after consultation with the Consulting Professionals) (as defined in the Coin Management and Monetization Motion), or not otherwise in the best interests of FTX Trading or the Debtor Beneficiaries pursuant to applicable law and consistent with Galaxy Asset Management's professional standards and duties.

20.     The Debtors have also determined, in the exercise of their business judgment, that the Investment Services Agreement's proposed Management Fee appropriately reflects the nature of the services to be provided by Galaxy Asset Management, contains reasonable terms and conditions and should be approved under section 363 of the Bankruptcy Code.  (*See* Mosley Decl. ¶ 8.)  The Investment Services Agreement was negotiated in good faith and at arm's length.  (*Id.*)  The Debtors, in consultation with the Committee, selected Galaxy Asset Management as investment adviser based on its sophistication and qualifications.  (*Id.*) Accordingly, the Debtors believe that FTX Trading's entry into, and performance under, the

---

*and (B) the Debtors' Motion for an Order Authorizing FTX Trading Ltd. to Enter Into, and Perform its Obligations Under, the Investment Services Agreement*, filed contemporaneously herewith.

Investment Services Agreement  reflects the reasonable exercise of the Debtors' sound business judgment.  (*Id.*)

21.     The relief requested is also authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court may "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also U.S.* v. *Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").  "The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan R. Resnick & Henry J. Sommer eds., 16th ed. 2022).  The Debtors submit that FTX Trading's entry into, and performance of its obligations under, the Investment Services Agreement is necessary, appropriate and in the best interest of the Debtors, their estates and all stakeholders at this juncture of these Chapter 11 Cases.

### Request for Waiver of Bankruptcy Rule 6004(h)

22.     Under Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed R. Bankr. P. 6004(h).  Entry into the Investment Services Agreement, and performance of the obligations thereunder, is critical to the preservation and maximization of the value of the Debtors' estates.  Thus, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## **Notice**

23.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel to Galaxy Asset Management; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: August 23, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*