**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |

**CERTIFICATE OF PUBLICATION**

I, Liz Santodomingo, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes sworn statements verifying that the *Notice of Deadlines Requiring Filing of Customer Proofs of Claim Affected by the Amendment of or Supplemental to the Debtors' Schedules of Assets and Liabilities*, as conformed for publication, was published in the national edition of *The New York Times* on July 19, 2023, as described in the sworn statement attached hereto on **Exhibit A**.

Dated: August 22, 2023

*/s/ Liz Santodomingo*
Liz Santodomingo

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Exhibit A**



620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

July 20, 2023

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

7/19/2023, NY & NATL, pg B3

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2023.07.20 15:09:32 -04'00'

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: FTX TRADING LTD., *et al.*,[1] Debtors. | Chapter 11 Case No. 22-11068 (JTD) (Jointly Administered) |
|---|---|

**NOTICE OF DEADLINES REQUIRING FILING OF CUSTOMER PROOFS OF CLAIM ON OR BEFORE SEPTEMBER 29, 2023 AND CUSTOMER PROOFS OF CLAIM AFFECTED BY THE AMENDMENT OF OR SUPPLEMENT TO THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES**

**NOTICE TO ALL FTX CUSTOMERS: SEPTEMBER 29, 2023 IS THE DEADLINE TO FILE PROOFS OF CLAIM ON ACCOUNT OF CUSTOMER CLAIMS AGAINST THE FTX DEBTORS.**

**TO ACCESS THE CUSTOMER CLAIMS PORTAL AND SUBMIT A PROOF OF CLAIM, VISIT HTTP://CLAIMS.FTX.COM. FOR MORE INFORMATION ABOUT THE PROOF OF CLAIM PROCESS FOR CUSTOMERS, VISIT HTTPS://RESTRUCTURING.RA.KROLL.COM/FTX/.**

**CUSTOMER BAR DATE IS SEPTEMBER 29, 2023 AT 4:00 P.M. EASTERN TIME**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On June 28, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [D.I. 1793] (the "Order") in the chapter 11 cases (the "Chapter 11 Cases") of FTX Trading Ltd. and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors") establishing **September 29, 2023 at 4:00 p.m., Eastern Time** (the "Customer Bar Date") as the deadline for each person or entity (including individuals, partnerships, corporations, joint ventures and trusts) holding a Customer Claim (as defined below) to file a proof of claim in these Chapter 11 Cases.[2]

1. **WHO MUST FILE A PROOF OF CLAIM.** You MUST file a proof of claim to vote on a Chapter 11 plan or to share in distributions from the Debtors' bankruptcy estates if you hold a Customer Claim (as defined below) against the Debtors. A "Customer Claim" is any claim of any kind or nature or whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any person or entity against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX Exchange as of the Petition Date (the "Customer Entitlement Claim") or (b) any other investment or trading activities on any FTX Exchange (the "Other Activity Claim").

"FTX Exchange" means FTX.com, FTX.US, FTX Trading Ltd. (d/b/a "FTX"), West Realm Shires Services Inc. (d/b/a "FTX US"), FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd., d/b/a "FTX EU"), Quoine Ptd. Ltd. (d/b/a "Liquid Global") and FTX Japan or Liquid platforms operated by FTX Japan K.K. ("FTX Japan") or any other exchange or trading platform operated by any Debtor.

Customer Claims shall not include any claims for cash, cryptocurrency, digital assets or other assets held by any person or entity in an account on (i) FTX Japan's two platforms, FTX Japan or Liquid or (ii) FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd., d/b/a "FTX EU") as of the Petition Date for which such person or entity has withdrawn, or received, such cash, cryptocurrency, digital assets or other assets postpetition. Customer Claims shall include the portion of such cash, cryptocurrency, digital assets or other assets that were not withdrawn or received by such person or entity and shall also include any claims of such person or entity arising out of or related to any other investment or trading activities on any FTX Exchange.

For the avoidance of doubt, Customer Claims shall only include claims against the Debtors and not against any non-Debtors, including any of the founders of the Debtors, including Samuel Benjamin Bankman-Fried, Gary Wang, Nishad Singh and Caroline Ellison (collectively, the "Founders").

The Order establishes the following bar dates for filing proofs of claim in these Chapter 11 Cases (collectively, the "Bar Dates"):

a. Customer Bar Date. A holder of a Customer Claim against any of the Debtors must file a proof of claim for such Customer Claim on or before **September 29, 2023, at 4:00 p.m., Eastern Time**, subject to the exceptions described therein.

b. Amended Schedules Customer Bar Date. Any entity holding a Customer Claim adversely impacted by an amendment of or supplement to the Schedules with respect to such Customer Claim must file a proof of claim on ***the later of*: (a) the Customer Bar Date and (b) 4:00 p.m., Eastern Time, on the date that is 30 days after the date that notice of the applicable amendment of or supplement to the Schedules is served on such entity.**

2. **WHAT TO FILE.** Each proof of claim on account of a Customer Claim must set forth the FTX Exchange and/or Debtors against whom the claimant has a claim. Each proof of claim for any claim based on cryptocurrency(ies) or digital assets must set forth (i) the number of units or quantity of each cryptocurrency or digital asset and (ii) the program (*i.e.*, Earn, Lend or Stake) applicable to each cryptocurrency or digital asset. The Customer Proof of Claim Form does not require holders of Customer Claims to set forth a dollar valuation for any of the cryptocurrency(ies) or digital assets.[3] For any claim based on foreign fiat currency(ies), each proof of claim must set forth (i) the applicable foreign fiat currency(ies); (ii) the claim amount in that foreign fiat currency(ies); (iii) the exchange rate(s) utilized to convert from the foreign fiat currency(ies) to U.S. dollars as of the Petition Date (if different than the listed rate); and (iv) the amount of such fiat currency claim converted to U.S. dollars using the identified exchange rate(s). For any Customer Claim for fiat currency(ies), each proof of claim must set forth (i) the applicable fiat currency(ies), and (ii) the amount of fiat currency(ies) as of the Petition Date. For any Customer Claim for NFTs, each proof of claim must set forth (i) the NFT description and (ii) the unique identification code. In the event that a holder has unique Customer Entitlement Claims against multiple FTX Exchanges, a separate proof of claim must be filed against each FTX Exchange. In the event that a holder has an Other Activity Claim against multiple Debtors, such holder must check a box for each Debtor against whom the Other Activity Claim is asserted, For Other Activity Claims, a holder must set forth the amount of such claim in U.S. dollars, must assert such claim with specificity, including all relevant details regarding such investments or other trading activities (*e.g.*, dates, amounts, quantities, type or nature, alleged facts), and must assert such claim against the applicable Debtor or Debtors.

Any holder of a Customer Claim that either (x) files a proof of claim for a Customer Entitlement against any Debtor or (y) has a Customer Entitlement Claim that is scheduled against any Debtor and does not separately file a proof of claim with respect to such Customer Entitlement Claim shall be deemed to have filed an identical Customer Entitlement Claim in the same amount against all other Debtors. Accordingly, **claimants do not need to file separate proofs of claim against each Debtor on account of such Customer Entitlement Claim**. For the avoidance of doubt: (i) Customer Entitlement Claims shall only include claims against the Debtors and not against any non-Debtors, such as the Founders, (ii) unique Customer Entitlement Claims against multiple FTX Exchanges must be filed against each FTX Exchange and (iii) for any Other Activity Claim asserted against multiple Debtors, each such claim must be asserted against each applicable Debtor.

A proof of claim submitted under Debtor FTX Trading Ltd. (Case No. 22-11068) or a proof of claim that does not identify an FTX Exchange will be deemed as submitted only against Debtor FTX Trading Ltd.

**Your proof of claim form must NOT contain complete social security numbers or taxpayer identification numbers (instead, list only the last four digits), a complete birth date (instead, list only the year), the name of a minor (instead, list only the minor's initials) or a financial account number (instead, list only the last four digits of such financial account). ONLY SUBMIT SENSITIVE INFORMATION VIA THE CUSTOMER CLAIMS PORTAL.**

3. **WHEN AND WHERE TO FILE.** Except as provided for herein, all proofs of claim must be filed so as to be ***received* on or before the applicable Bar Date**. **You are encouraged to submit your proof of claim form electronically through the Customer Claims Portal**. However, you are permitted to submit proofs of claim by hand delivery or by mail to the applicable address listed below.

**IF ELECTRONICALLY:** The website established by the Debtors, using the interface available on such website located at http://claims.ftx.com (the "Customer Claims Portal"). The Customer Claims Portal will be available in multiple different languages, including, among others, Spanish, Chinese, Japanese, German and Russian.

**IF DELIVERED BY FIRST-CLASS MAIL:** FTX Trading Ltd. Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, P.O. Box 4850, New York, NY 10163-4850

**IF DELIVERED BY HAND OR OVERNIGHT DELIVERY:** FTX Trading Ltd. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232

Proofs of claim will be deemed filed only when **actually received** at the addresses listed above or filed electronically on or before the applicable Bar Date. It is not sufficient for the proof of claim to be post-marked by the applicable Bar Date. **Proofs of claim may NOT be delivered by facsimile, telecopy or email transmission.**

4. **WHO NEED NOT FILE A PROOF OF CLAIM.** The Order provides that certain entities, whose claims otherwise would be subject to the Bar Dates, need not file proofs of claim. To review a copy of the Order, please visit https://restructuring.ra.kroll.com/FTX/EPOC-Index.

5. **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE.** ABSENT FURTHER ORDER OF THE COURT, ANY HOLDER OF A CUSTOMER CLAIM THAT IS NOT EXEMPTED FROM THE REQUIREMENTS OF THE ORDER, AS SET FORTH IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM BY THE APPLICABLE BAR DATE AS DESCRIBED IN THIS NOTICE SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM: (A) ASSERTING THE APPLICABLE CUSTOMER CLAIM AGAINST THE DEBTORS OR THEIR ESTATES OR PROPERTY IN THESE CHAPTER 11 CASES OR (B) VOTING ON, OR RECEIVING ANY DISTRIBUTION UNDER, ANY CHAPTER 11 PLAN IN THESE CHAPTER 11 CASES, EXCEPT TO THE EXTENT THAT SUCH CLAIM IS IDENTIFIED IN THE SCHEDULES AS AN UNDISPUTED, NONCONTINGENT AND LIQUIDATED CLAIM (INCLUDING WITH RESPECT TO THE AMOUNT, QUANTITY, TYPE OR NATURE OF SUCH CLAIM). **CUSTOMERS WHO DO NOT SUBMIT A PROOF OF CLAIM AND/OR KNOW YOUR CUSTOMER INFORMATION VIA THE CUSTOMER CLAIMS PORTAL WILL NOT HAVE THEIR CUSTOMER CLAIMS BARRED IN ACCORDANCE WITH THIS PARAGRAPH, BUT SUCH CLAIMS WILL BE SUBJECT TO OBJECTION BY THE DEBTORS.**

6. **THE DEBTORS' SCHEDULES AND ADDITIONAL INFORMATION.** You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules. Copies of the Debtors' Schedules, the Order and other information and documents regarding the Debtors' Chapter 11 Cases are available for a fee from the Court's website at https://ecf.deb.uscourts.gov, and are available free of charge at https://restructuring.ra.kroll.com/FTX/EPOC-Index, or by written request to the Debtors' Noticing and Claims Agent, Kroll, at the address listed above in Section 3 of this Notice.

If you have any additional questions, you may contact Kroll via email FTXInfo@ra.kroll.com or call 888-482-0049 (US/Canada Toll-Free); 646-440-4176 (International).

If you rely on the Debtors' Schedules, it is your responsibility to determine that any claim is accurately listed in the Schedules.

**A HOLDER OF A POSSIBLE CLAIM AGAINST THE DEBTORS SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A PROOF OF CLAIM.**

Dated: June 28, 2023, Wilmington, Delaware **BY ORDER OF THE COURT**

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https:// https://restructuring.ra.kroll.com/ftx. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] For the avoidance of doubt, this Notice and relevant Bar Dates establish deadlines and procedures for filing proofs of claim against FTX Trading Ltd. and its affiliated debtors and debtors-in-possession and not against Debtor Emergent Fidelity Technologies Ltd.

[3] For the avoidance of doubt, the Debtors are only requesting all holders of Customer Claims to assert their quantities of cryptocurrency, digital assets and other assets and not to include any conversions or valuations. The Debtors will seek to establish valuations at a later date, and all parties' rights are reserved.

LABOR

# Actors and Studios Remain 'Far Apart' on Major Issues

By JOHN KOBLIN

As tens of thousands of actors continued their strike versus the Hollywood studios for a fifth day on Tuesday, the two sides showed no signs of returning to the bargaining table — and even exchanged barbed messages that underscored how far apart they were.

Late Monday, leadership of SAG-AFTRA, the actors' union, sent members a 12-page memo laying out its demands and the studios' counterproposals. They "remain far apart on the most critical issues that affect the very survival of our profession," the note said.

"We marched ahead because they intentionally dragged their feet," it continued.

The Alliance of Motion Picture and Television Producers, the organization that bargains on behalf of the studios, answered with a note to the news media arguing that the message from the union "deliberately distorts" the offers it had made.

"A strike is not the outcome we wanted," the alliance said. "For SAG-AFTRA to assert that we have not been responsive to the needs of its membership is disingenuous at best."

Thousands of Hollywood actors went on strike on Friday after failing to reach a new contract with the major studios, including old-line companies like Paramount, Universal and Disney and tech giants like Netflix, Amazon and Apple.

MARK ABRAMSON FOR THE NEW YORK TIMES

Members of the SAG-AFTRA union marching by the entrance to Paramount Pictures studios in Los Angeles last week.

The actors joined 11,500 screenwriters who went on strike 78 days ago, the first time both unions had walked out at the same time since 1960. The writers have not returned to the bargaining table with the studios since their negotiations collapsed in early May.

SAG-AFTRA's note said the two sides remained far apart on several key issues, including compensation, guardrails against artificial intelligence, and health care and pension costs.

The union's leadership said it had asked for 11 percent wage increases in the first year of a new contract; the studios came back with an offer of 5 percent, the union said.

When it comes to artificial intelligence, the union's leaders said they had argued for a number of provisions to protect them "when a 'digital replica' is made or our performance is changed using A.I."

They said the studio alliance "failed to address many vital concerns, leaving principal performers and background actors vulnerable to having most of their work replaced by digital replicas."

The studios said that the union's note to its members "fails to include the proposals offered verbally" during negotiations, and that its overall package was worth more than $1 billion in wage increases, improvements on residuals (a type of royalty) and health care contributions.

Regarding artificial intelligence, the studios said they had offered a "groundbreaking proposal, which protects performers' digital likenesses, including a requirement for performer's consent for the creation and use of digital replicas or for digital alterations of a performance."

Union leadership sent out a chart laying out each proposal and the studios' response. Over more than two dozen proposals, the studio response amounted to one word, according to the union: "Rejected."

"So who's making the T-Shirt that says 'Rejected'?" the actress Senta Moses posted on Twitter.

"This is why we're on strike," the union note said. "The A.M.P.T.P. thinks we will relent, but the will of our membership has never been stronger. We have the resolve and unity needed to defend our rights."

# 39 Indie Works May Proceed Despite Strike

By BROOKS BARNES

The Hollywood actors' union said Tuesday that it had exempted 39 independent film and TV projects from its strike, including two movies from A24, the secretive New York company that has become a force at the Academy Awards.

SAG-AFTRA, as the union is known, said the productions could shoot during the strike because it had verified that they had no ties to the Alliance of Motion Picture and Television Producers, which negotiates on behalf of the biggest studios. Talks between the union and the alliance for a new three-year contract broke down on Thursday, and tens of thousands of actors went on strike on Friday.

More waivers could be approved as the union evaluates applications. To be considered, productions must agree to temporarily follow the terms of the latest proposal that SAG-AFTRA has put on the table during negotiations. The productions will become subject to the final deal between the union and the studio alliance.

The 39 projects include "Mother Mary," a melodrama cofinanced by A24 and starring Anne Hathaway as a fictional musician and Michaela Coel (known for "I May Destroy You" on HBO) as a fashion designer. The second A24 project, "Death of a Unicorn," stars Paul Rudd and Jenna Ortega, who is known for "Wednesday" on Netflix. It tells the story of a man and his teenage daughter who, while driving in a remote location, crash into a unicorn.

A24 was behind "Everything Everywhere All at Once," which won the Oscar for best picture in March.

A waiver also went to "The Rivals of Amziah King," a crime thriller starring Matthew McConaughey and produced by Teddy Schwarzman, whose father is the Blackstone chief executive, Stephen A. Schwarzman. "The Chosen," a popular religious TV series, can also continue on a new season, as can "Bride Hard," an action comedy starring Rebel Wilson that involves a mercenary group and a lavish wedding.

# Directors' Deal Offered a Blueprint, but Actors and Writers Balked

FROM FIRST BUSINESS PAGE

they would receive, primarily via a formula that accounts for international streaming subscribers, there was little progress in getting recalcitrant tech companies to share more data about how well films and television shows performed on their services.

The studios did declare that generative artificial intelligence is not "a person" and cannot take over the duties of a Directors Guild member. But their reassurance that A.I. would not be used "in connection with creative elements without consultation with the director or other D.G.A.-covered employees" was seen by many as weak and vague.

The "Matrix" filmmaker Lilly Wachowski, who is also a member of the Writers Guild of America, took to Twitter to explain that she would vote no on the deal, specifically because of the A.I. provisions in the proposed contract.

"I'm no Boomer-luddite-fuddy-duddy against the idea of A.I. as a tool per se," she wrote. "But what I do vehemently object to," she added, "is the use of A.I. as a tool to generate wealth. That's what's at stake here. Cutting jobs for corporate profit."

Despite the protests, the membership of the union ratified the deal, with 87 percent voting in favor.

"We have concluded a truly historic deal," Jon Avnet, the chair of the Directors Guild's negotiating committee, said in a statement on June 3.

Even now that the actors have joined the writers on strike, some directors remain pleased with their contract.

"I think we got one of the best deals we've had in decades," Bethany Rooney, a veteran director of network television shows like "Law and Order: Organized Crime," "Chicago P.D." and "Station 19," said in an interview.

"I feel like they addressed all of our concerns and met them with a positive response," she added, "whether it was about basic pay rates or residuals, or reporting on streaming numbers or A.I. for that matter. It was all met with a response that we could live with."

*An undercurrent of tension runs between writers and directors.*

But as the actors' negotiations went on and a strike became more of a possibility, the directors' position as the lone guild to reach an agreement was more pronounced.

"Boy did the DGA miss their moment. #WGA #SAGAFTRA," Chris Nee, the creator of the children's animated series "Doc McStuffins," wrote on Twitter on the eve of the actors' strike.

The Directors Guild has long been seen as a stable union. Formed in 1936 and currently representing 19,000 directors and members of the directing team, including assistant directors, unit production managers, stage managers and others, the union has rarely struck. It has walked out once, in 1987 for three hours, the shortest strike in Hollywood history.

A common assumption in Hollywood is that Directors Guild members are employed more consistently than members of the other unions. And there can be tension between the various unions.

"There is a generational spirit of lack of cooperation between them and the Writers Guild," Mr. Newman said. "Writers and directors have always had their differences. To a certain extent directors might think that they're the true driving force behind any film."

Yet Ms. Rooney, who serves as an alternate on the national board of the Directors Guild, said she was not surprised that the actors had gone on strike.

"They have some major issues, and the writers have major issues that are specific to them that are not directors' issues," she said. "They did not get the response they needed from the A.M.P.T.P., so they had no choice but to go out on strike. We are in there with them in spirit."

Still, it remains clear that the directors wanted their deal to lead to agreements with the actors and the writers. And the frustration over that not happening seeped into a statement from Lesli Linka Glatter, the Directors Guild president, after the actors said they would strike.

"The Directors Guild of America is extremely disappointed that the A.M.P.T.P. did not fairly and reasonably address the important issues raised by SAG-AFTRA in negotiations," she said. "During this critical and difficult time for our industry, the Directors Guild strongly supports the actors."

MELINDA SUE GORDON/UNIVERSAL PICTURES, VIA ASSOCIATED PRESS

Christopher Nolan, director of "Oppenheimer," said that he hoped that the directors' deal could be a blueprint for agreements with writers and actors.

LEGAL NOTICE

**ATTENTION: Current or former insurance agents who contracted with NEW YORK LIFE INSURANCE under a full-time insurance agent contract prior to November 11, 2011 and worked for New York Life in New York State at any time since December 21, 2001 may be entitled to a settlement payment.**

If you contracted with New York Life under a full-time insurance agent contract prior to November 11, 2011 and worked as a TAS Agent or Established Agent for New York Life Insurance in New York State at any time since December 21, 2001, your rights may be affected by a proposed class action settlement in *Gold, et al., vs. New York Life Insurance Co., et al.*, Supreme Court of the State of New York, County of New York, Index No. 653923/2012. If you are a class member in the lawsuit, you are entitled to a settlement payment in exchange for releasing certain claims against New York Life, or you may exclude yourself from or object to the settlement. **If you satisfy the above criteria and you have not received a detailed Class Settlement Notice in the mail, you should provide your mailing information to the Settlement Administrator; please call 1-888-416-2035.** Class members may access the Class Settlement Notice at www.nylifeagentnysettlement.com.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: FTX TRADING LTD., *et al.*,[1] Debtors. | Chapter 11 Case No. 22-11068 (JTD) (Jointly Administered) |
|---|---|

**NOTICE OF DEADLINES REQUIRING FILING OF CUSTOMER PROOFS OF CLAIM ON OR BEFORE SEPTEMBER 29, 2023 AND CUSTOMER PROOFS OF CLAIM AFFECTED BY THE AMENDMENT OF OR SUPPLEMENT TO THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES**

**NOTICE TO ALL FTX CUSTOMERS: SEPTEMBER 29, 2023 IS THE DEADLINE TO FILE PROOFS OF CLAIM ON ACCOUNT OF CUSTOMER CLAIMS AGAINST THE FTX DEBTORS.**

**TO ACCESS THE CUSTOMER CLAIMS PORTAL AND SUBMIT A PROOF OF CLAIM, VISIT HTTP://CLAIMS.FTX.COM. FOR MORE INFORMATION ABOUT THE PROOF OF CLAIM PROCESS FOR CUSTOMERS, VISIT HTTPS://RESTRUCTURING.RA.KROLL.COM/FTX/.**

**CUSTOMER BAR DATE IS SEPTEMBER 29, 2023 AT 4:00 P.M. EASTERN TIME**

PLEASE TAKE NOTICE OF THE FOLLOWING:

On June 28, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [D.I. 1793] (the "Order") in the chapter 11 cases (the "Chapter 11 Cases") of FTX Trading Ltd. and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors") establishing **September 29, 2023 at 4:00 p.m., Eastern Time** (the "Customer Bar Date") as the deadline for each person or entity (including individuals, partnerships, corporations, joint ventures and trusts) holding a Customer Claim (as defined below) to file a proof of claim in these Chapter 11 Cases.[2]

**1. WHO MUST FILE A PROOF OF CLAIM.** You MUST file a proof of claim to vote on a Chapter 11 plan or to share in distributions from the Debtors' bankruptcy estates if you hold a Customer Claim (as defined below) against the Debtors. A "Customer Claim" is any claim of any kind or nature or whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any person or entity against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX Exchange as of the Petition Date (the "Customer Entitlement Claim") or (b) any other investment or trading activities on any FTX Exchange (the "Other Activity Claim").

"FTX Exchange" means FTX.com, FTX.US, FTX Trading Ltd. (d/b/a "FTX"), West Realm Shires Services Inc. (d/b/a "FTX US"), FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd., d/b/a "FTX EU"), Quoine Ptd. Ltd. (d/b/a "Liquid Global") and FTX Japan or Liquid platforms operated by FTX Japan K.K. ("FTX Japan") or any other exchange or trading platform operated by any Debtor.

Customer Claims shall not include any claims for cash, cryptocurrency, digital assets or other assets held by any person or entity in an account on (i) FTX Japan's two platforms, FTX Japan or Liquid or (ii) FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd., d/b/a "FTX EU") as of the Petition Date for which such person or entity has withdrawn, or received, such cash, cryptocurrency, digital assets or other assets postpetition. Customer Claims shall include the portion of such cash, cryptocurrency, digital assets or other assets that were not withdrawn or received by such person or entity and shall also include any claims of such person or entity arising out of or related to any other investment or trading activities on any FTX Exchange.

For the avoidance of doubt, Customer Claims shall only include claims against the Debtors and not against any non-Debtors, including any of the founders of the Debtors, including Samuel Benjamin Bankman-Fried, Gary Wang, Nishad Singh and Caroline Ellison (collectively, the "Founders").

The Order establishes the following bar dates for filing proofs of claim in these Chapter 11 Cases (collectively, the "Bar Dates"):

a. Customer Bar Date. A holder of a Customer Claim against any of the Debtors must file a proof of claim for such Customer Claim on or before **September 29, 2023, at 4:00 p.m., Eastern Time**, subject to the exceptions described therein.

b. Amended Schedules Customer Bar Date. Any entity holding a Customer Claim adversely impacted by an amendment of or supplement to the Schedules with respect to such Customer Claim must file a proof of claim on ***the later of*: (a) the Customer Bar Date and (b) 4:00 p.m., Eastern Time, on the date that is 30 days after the date that notice of the applicable amendment of or supplement to the Schedules is served on such entity.**

**2. WHAT TO FILE.** Each proof of claim on account of a Customer Claim must set forth the FTX Exchange and/or Debtors against whom the claimant has a claim. Each proof of claim for any claim based on cryptocurrency(ies) or digital assets must set forth (i) the number of units or quantity of each cryptocurrency or digital asset and (ii) the program (*i.e.*, Earn, Lend or Stake) applicable to each cryptocurrency or digital asset. The Customer Proof of Claim Form does not require holders of Customer Claims to set forth a dollar valuation for any of the cryptocurrency(ies) or digital assets.[3] For any claim based on foreign fiat currency(ies), each proof of claim must set forth (i) the applicable foreign fiat currency(ies); (ii) the claim amount in that foreign fiat currency(ies); (iii) the exchange rate(s) utilized to convert from the foreign fiat currency(ies) to U.S. dollars as of the Petition Date (if different than the listed rate); and (iv) the amount of such fiat currency claim converted to U.S. dollars using the identified exchange rate(s). For any Customer Claim for fiat currency(ies), each proof of claim must set forth (i) the applicable fiat currency(ies), and (ii) the amount of fiat currency(ies) as of the Petition Date. For any Customer Claim for NFTs, each proof of claim must set forth (i) the NFT description and (ii) the unique identification code. In the event that a holder has unique Customer Entitlement Claims against multiple FTX Exchanges, a separate proof of claim must be filed against each FTX Exchange. In the event that a holder has an Other Activity Claim against multiple Debtors, such holder must check a box for each Debtor against whom the Other Activity Claim is asserted, For Other Activity Claims, a holder must set forth the amount of such claim in U.S. dollars, must assert such claim with specificity, including all relevant details regarding such investments or other trading activities (*e.g.*, dates, amounts, quantities, type or nature, alleged facts), and must assert such claim against the applicable Debtor or Debtors.

Any holder of a Customer Claim that either (x) files a proof of claim for a Customer Entitlement against any Debtor or (y) has a Customer Entitlement Claim that is scheduled against any Debtor and does not separately file a proof of claim with respect to such Customer Entitlement Claim shall be deemed to have filed an identical Customer Entitlement Claim in the same amount against all other Debtors. Accordingly, **claimants do not need to file separate proofs of claim against each Debtor on account of such Customer Entitlement Claim**. For the avoidance of doubt: (i) Customer Entitlement Claims shall only include claims against the Debtors and not against any non-Debtors, such as the Founders, (ii) unique Customer Entitlement Claims against multiple FTX Exchanges must be filed against each FTX Exchange and (iii) for any Other Activity Claim asserted against multiple Debtors, each such claim must be asserted against each applicable Debtor.

A proof of claim submitted under Debtor FTX Trading Ltd. (Case No. 22-11068) or a proof of claim that does not identify an FTX Exchange will be deemed as submitted only against Debtor FTX Trading Ltd.

**Your proof of claim form must NOT contain complete social security numbers or taxpayer identification numbers (instead, list only the last four digits), a complete birth date (instead, list only the year), the name of a minor (instead, list only the minor's initials) or a financial account number (instead, list only the last four digits of such financial account). ONLY SUBMIT SENSITIVE INFORMATION VIA THE CUSTOMER CLAIMS PORTAL.**

**3. WHEN AND WHERE TO FILE.** Except as provided for herein, all proofs of claim must be filed so as to be ***received* on or before the applicable Bar Date. You are encouraged to submit your proof of claim form electronically through the Customer Claims Portal.** However, you are permitted to submit proofs of claim by hand delivery or by mail to the applicable address listed below.

**IF ELECTRONICALLY:** The website established by the Debtors, using the interface available on such website located at http://claims.ftx.com (the "Customer Claims Portal"). The Customer Claims Portal will be available in multiple different languages, including, among others, Spanish, Chinese, Japanese, German and Russian.

**IF DELIVERED BY FIRST-CLASS MAIL:** FTX Trading Ltd. Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, P.O. Box 4850, New York, NY 10163-4850

**IF DELIVERED BY HAND OR OVERNIGHT DELIVERY:** FTX Trading Ltd. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232

Proofs of claim will be deemed filed only when **actually received** at the addresses listed above or filed electronically on or before the applicable Bar Date. It is not sufficient for the proof of claim to be post-marked by the applicable Bar Date. **Proofs of claim may NOT be delivered by facsimile, telecopy or email transmission.**

**4. WHO NEED NOT FILE A PROOF OF CLAIM.** The Order provides that certain entities, whose claims otherwise would be subject to the Bar Dates, need not file proofs of claim. To review a copy of the Order, please visit https://restructuring.ra.kroll.com/FTX/EPOC-Index.

**5. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE.** ABSENT FURTHER ORDER OF THE COURT, ANY HOLDER OF A CUSTOMER CLAIM THAT IS NOT EXEMPTED FROM THE REQUIREMENTS OF THE ORDER, AS SET FORTH IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM BY THE APPLICABLE BAR DATE AS DESCRIBED IN THIS NOTICE SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM: (A) ASSERTING THE APPLICABLE CUSTOMER CLAIM AGAINST THE DEBTORS OR THEIR ESTATES OR PROPERTY IN THESE CHAPTER 11 CASES OR (B) VOTING ON, OR RECEIVING ANY DISTRIBUTION UNDER, ANY CHAPTER 11 PLAN IN THESE CHAPTER 11 CASES, EXCEPT TO THE EXTENT THAT SUCH CLAIM IS IDENTIFIED IN THE SCHEDULES AS AN UNDISPUTED, NONCONTINGENT AND LIQUIDATED CLAIM (INCLUDING WITH RESPECT TO THE AMOUNT, QUANTITY, TYPE OR NATURE OF SUCH CLAIM). **CUSTOMERS WHO DO NOT SUBMIT A PROOF OF CLAIM AND/OR KNOW YOUR CUSTOMER INFORMATION VIA THE CUSTOMER CLAIMS PORTAL WILL NOT HAVE THEIR CUSTOMER CLAIMS BARRED IN ACCORDANCE WITH THIS PARAGRAPH, BUT SUCH CLAIMS WILL BE SUBJECT TO OBJECTION BY THE DEBTORS.**

**6. THE DEBTORS' SCHEDULES AND ADDITIONAL INFORMATION.** You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules. Copies of the Debtors' Schedules, the Order and other information and documents regarding the Debtors' Chapter 11 Cases are available for a fee from the Court's website at https://ecf.deb.uscourts.gov, and are available free of charge at https://restructuring.ra.kroll.com/FTX/EPOC-Index, or by written request to the Debtors' Noticing and Claims Agent, Kroll at the address listed above in Section 3 of this Notice.

If you have any additional questions, you may contact Kroll via email FTXInfo@ra.kroll.com or call 888-482-0049 (US/Canada Toll-Free); 646-440-4176 (International).

If you rely on the Debtors' Schedules, it is your responsibility to determine that any claim is accurately listed in the Schedules.

**A HOLDER OF A POSSIBLE CLAIM AGAINST THE DEBTORS SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A PROOF OF CLAIM.**

Dated: June 28, 2023, Wilmington, Delaware **BY ORDER OF THE COURT**

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/ftx. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] For the avoidance of doubt, this Notice and relevant Bar Dates establish deadlines and procedures for filing proofs of claim against FTX Trading Ltd. and its affiliated debtors and debtors-in-possession, and not against Debtor Emergent Fidelity Technologies Ltd.

[3] For the avoidance of doubt, the Debtors are only requesting all holders of Customer Claims to assert their quantities of cryptocurrency, digital assets and other assets and not to include any conversions or valuations. The Debtors will seek to establish valuations at a later date, and all parties' rights are reserved.