**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX Trading Ltd., *et al*.,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**GLOBAL NOTES AND STATEMENTS OF LIMITATIONS,
METHODOLOGY, AND DISCLAIMERS REGARDING THE
DEBTORS' AMENDED SCHEDULES OF ASSETS AND LIABILITIES
AND AMENDED STATEMENTS OF FINANCIAL AFFAIRS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), are filing amended Schedules of Assets and Liabilities (each, a "Schedule" and, collectively with attachments, the "Schedules") and amended Statements of Financial Affairs (each, a "Statement" and, collectively with attachments, the "Statements") in the United States Bankruptcy Court for the District of Delaware (the "Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

On March 14, March 15 and March 27, 2023, the Debtors filed Schedules of Assets and Liabilities (the "Initial Schedules"), Statements of Financial Affairs (the "Initial Statements") and their accompanying Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Initial Global Notes") with the Court [D.I. 865-1083, D.I. 1166]. On June 27, 2023, the Debtors filed amended Schedule F of Assets and Liabilities of certain Debtors (the "Amended Schedules") and Supplemental Global Notes regarding the Amended Schedules (the "Supplemental Global Notes") [D.I. 1729-1766]. On July 31, 2023, the Debtors unredacted certain information in the Initial Schedules and Initial Statements for certain Debtors [D.I. 1985-2097], in accordance with the Court's order entered on June 15, 2023 [D.I. 1634].

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs (the "Global Notes") are in addition to, and do not amend, supersede or replace, other than to the extent expressly set forth herein, the Initial Global Notes or the Supplemental Global Notes. Each Schedule supersedes and replaces in its entirety each corresponding Initial

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Schedule, and each Statement supersedes and replaces in its entirety each corresponding Initial Statement. These Global Notes incorporate the Initial Schedules, the Initial Statements, the Initial Global Notes, the Amended Schedules and the Supplemental Global Notes by reference, other than to the extent expressly set forth herein.

Ms. Mary Cilia has signed the Schedules and Statements on behalf of the Debtors. Ms. Cilia is the Chief Financial Officer of the Debtors. She has been authorized to execute the Schedules and Statements on behalf of the Debtors. In reviewing and signing the Schedules and Statements, Ms. Cilia necessarily has relied upon the efforts, statements and representations of the Debtors and the Debtors' financial, legal and other agents and advisors (collectively, the "Advisors"). Ms. Cilia has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts or quantities owed to creditors, classification of such amounts and quantities and creditor addresses and contact information. Additionally, Ms. Cilia has not (and could not have) personally verified each amount, quantity or current value listed in each of the Schedules and Statements or the classification thereof.

The Debtors prepared the Schedules and Statements with the assistance of their Advisors. The Schedules and Statements are unaudited and subject to potential adjustment, revisions and/or amendments, which may be material. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available and accessible at the time of preparation. As set forth in more detail below, the Debtors cannot confirm that the information provided is complete and accurate, although the Debtors have made reasonable efforts to ensure the accuracy and completeness of such financial information. Subsequent information or discovery of additional information may result in material changes in financial and other data contained in the Schedules and Statements and inadvertent or unintentional errors, omissions or inaccuracies may exist. The Schedules and Statements are unaudited and remain subject to further review and adjustment to reflect the Debtors' ongoing reconciliation efforts. The Debtors' investigations and reconciliations are ongoing and, as such, the results thereof may result in revision, amendment, supplementation and/or adjustment of the Schedules and Statements.

For the avoidance of doubt, the Debtors hereby reserve all of their rights, including to revise, amend, supplement and/or adjust the Schedules and Statements.

The Debtors and their Advisors do not guarantee or warrant the accuracy or completeness of the data that is provided and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein and in the Schedules and Statements. While reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist and other limitations described below impacted the Debtors ability to do so in certain instances. The Debtors and their Advisors expressly do not undertake any obligation to update, modify, revise or re-categorize the information provided, or to notify any third party should the information be updated, modified, revised or recategorized except as required by applicable law. In no event shall the Debtors and their Advisors be liable to any third party for any direct, indirect, incidental, consequential and/or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against any Debtor or damages to business reputation, lost

business or lost profits), whether foreseeable or not and however caused, even if the Debtors and/or their Advisors are advised or notified of the possibility of such damages.

Disclosure in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits or attachments.

These Global Notes pertain to, and are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "Specific Notes" and, together with the Global Notes, the Initial Global Notes and the Supplemental Global Notes, the "Notes"). These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

### Background and Limitations

As set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray Declaration"), solely for purposes of presentation and organizational purposes, the Debtors and their businesses are categorized into four silos: (a) Debtor West Realm Shires Inc. and its Debtor and non-Debtor subsidiaries (collectively, the "WRS Silo"), (b) Debtor Alameda Research LLC and its Debtor subsidiaries (collectively, the "Alameda Silo"), (c) Debtor Clifton Bay Investments LLC and certain of its Debtor affiliates (collectively, the "Ventures Silo") and (d) Debtor FTX Trading Ltd. and its Debtor and non-Debtor subsidiaries (collectively, the "Dotcom Silo").

With respect to the Debtors' books and records, as discussed in the Ray Declaration, the circumstances surrounding the commencement of the Debtors' Chapter 11 Cases were extraordinary and have materially impacted the Debtors' ability to access and marshal information about their businesses. Prior to the commencement of the Debtors' Chapter 11 Cases, the Debtors operated, with other direct and indirect subsidiaries, on a global, decentralized and stand-alone basis. There has been no indication that there was formal documentation of policies, procedures, internal controls or other common management oversight tools utilized by companies of similar size. There were no indications of the existence of utilized global financial accounting systems, treasury systems, risk management systems, employment/benefits databases, global contract databases or corporate secretarial systems commonly and critically maintained and utilized by similarly large commercial enterprises with a global presence. Records were more commonly decentralized and maintained on more individualized cloud-based data repositories shared in smaller groups. Under this operating format, it was normal practice for the books and records to be maintained by third party bookkeeping providers (the "Outsourcers") and managed by the respective local Debtor. Additionally, the financial reporting technology varied and was typically owned or licensed by the Outsourcers. Supporting financial accounting, treasury and employment records were not generally kept in a single repository and were often managed in numerous cloud environments maintained by various individuals rather than on the more traditional server-based electronic record repositories. The Debtors relied heavily on outsourced contractors to fill several of its key accounting, finance, and treasury roles who also maintained their own data repositories separate from the Debtors. This infrastructure has made it extraordinarily difficult and time-consuming to gather, review, analyze and compile the data required to prepare the Debtors'

Schedules and Statements.  These efforts are ongoing.  After the commencement of these Chapter 11 Cases, a number of the Outsourcers stopped providing services to the Debtors.  The Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements.

Moreover, a significant number of the Debtors' employees and contractors resigned on or around the Petition Date.  The Debtors were significantly and adversely affected by the discontinuation of services from the Outsourcers, the above-referenced proceedings and the employee and contractor departures because they lost full and direct access to certain personnel, a portion of their books and records, certain back office systems and document repositories.  Since the commencement of these Chapter 11 Cases, the Debtors' advisors have been and continue to, locate and reconstruct the Debtors' books and records.

The last close of the Debtors' books in the normal course of business was performed for limited entities in the WRS and Dotcom Silos in their respective jurisdictions as of September 30, 2022.  In order to prepare the books and records for each of the Debtors as of the Petition Dates (as defined below), the Debtors reengaged certain former employees and selectively re-contracted certain Outsourcers.  The Debtors and their Advisors have attempted to bring forward the September 30, 2022 financial statements to November 30, 2022 and have used the November 30, 2022 information prepared by Debtor employees, contractors and Outsourcers to roll back account balances for each Debtor to the respective Petition Dates, considering known business activity and transactions occurring from the Petition Dates through November 30, 2022.  In doing so, the Debtors were required to make certain estimates and assumptions, which are also reflected in the information contained in the Schedules and Statements.

With respect to the entities within the Alameda and Ventures Silos, the books and records were either improperly maintained or not prepared by the Debtors prior to the Petition Date.  Additionally, the individuals previously responsible for the Debtors' books and records of these two Silos are currently unavailable to provide information either due to local proceedings, unwillingness to engage with the Debtors' current management or are under criminal guilty pleas or indictment (*e.g.*, Samuel Bankman-Fried, Caroline Ellison and Gary Wang).  Therefore, the Debtors' and their Advisors developed processes and procedures to construct the information presented in the Schedules and Statements as of the Petition Date based on currently available and accessible information.  The Debtors reserve the right to revise, amend, supplement and/or adjust the Schedules and Statements.

With respect to certain entities within the Dotcom Silo, the individuals previously responsible for the Debtors' books and records are currently unavailable to provide information either due to local proceedings or unwillingness to engage with the Debtors' current management.  Additionally, substantiating documentation for certain book balances and transactions was often limited or unavailable. Therefore, the Debtors' and their Advisors developed processes and procedures to construct certain information presented in the Schedules and Statements as of the Petition Date based on currently available and accessible information.  The Debtors reserve the right to revise, amend, supplement and/or adjust the Schedules and Statements.

Additionally, on or around the time of the commencement of these Chapter 11 Cases, many of the non-Debtor entities around the world became subject to various proceedings, in which

administrators or trustees were appointed by the applicable authorities to oversee, manage and administer the affairs of those affiliates going forward. A summary of those proceedings is below.

*FTX DM Joint Provisional Liquidation and Chapter 15 Recognition*

On November 10, 2022, the Securities Commission of The Bahamas filed a petition for provisional liquidation of FTX Digital Markets Ltd. ("FTX DM") with the Supreme Court of The Bahamas (the "Bahamas Court"). On the same day, the Bahamas Court granted such petition and appointed Brian C. Simms KC as provisional liquidator of FTX DM. On November 14, 2022, the Bahamas Court appointed Kevin G. Cambridge and Peter Greaves of PricewaterhouseCoopers as additional JPLs, to serve alongside Mr. Simms (collectively, the "JPLs").

On November 15, 2022, the JPLs filed a Chapter 15 petition for recognition of FTX DM's provisional liquidation proceeding as a foreign main proceeding in the United States under Chapter 15 of the U.S. Bankruptcy Code. On February 15, 2023, the Court entered an order granting the JPL's recognition petition. *In re FTX Digital Markets Ltd.*, Case No. 22-11217 (JTD) (Bankr. D. Del.) [D.I. 129].

*Bahamas Recognition Proceeding*

On February 8, 2023, Mr. Kurt Knipp filed a petition with the Bahamas Court seeking entry of an order recognizing him as the foreign representative of the following Debtors in The Bahamas with the right to act in The Bahamas on behalf of or in the name of each of such Debtors: (a) West Realm Shires Inc., (b) West Realm Shires Services Inc., (c) Alameda Research LLC, (d) Alameda Research Ltd., (e) Maclaurin Investments Ltd., (f) Clifton Bay Investments LLC and (g) FTX Trading Ltd. On February 23, 2023, the Bahamas Court entered a Declaratory Order granting the requested relief.

On March 15, 2023, the JPLs filed a petition to grant relief from the automatic stay with the Bahamas Court. On March 21, 2023, the Bahamas Court granted such petition.

*Australian Voluntary Administration Proceedings*

On November 11, 2022, Scott Langdon, Rahul Goyal and John Mouawad of KordaMentha were appointed by the Board of Directors as joint and several voluntary administrators to FTX Australia Pty Ltd and FTX Express Pty Ltd. The first meeting of creditors for these entities was held on December 1, 2022. These proceedings are ongoing.

Finally, substantial assets of the Debtors were transferred to Related Parties and insiders which are included in these Schedules & Statements as receivable or transfers in their respective sections. The Debtors have located documentation related to some of these transfers but many appear to have been undocumented. The Debtors are undertaking a process to locate and recover these assets. The Debtors reserve the right to revise, amend, supplement and/or adjust the Schedules and Statements

*Emergent Fidelity Technologies Ltd Voluntary Administrative Proceedings*

On February 3, 2023, Emergent Fidelity Technologies Ltd. ("Emergent") filed petition for relief under Chapter 11 of the of the U.S. Bankruptcy Code. On May 10, 2023, the petition was authorized.  Emergent's chapter 11 case is jointly administered with the Debtors' chapter 11 cases solely for procedural purposes, and Emergent is not covered in these Schedules and Statements and Global Notes.

## Global Notes and Overview of Methodology

**The Schedules, Statements and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events or performance of any of the Debtors, including, but not limited to, any potential recoveries or distributions related to claims against the Debtors.**

1.  **Description of the Cases**.  On November 11, 2022 and November 14, 2022 (as applicable, the "Petition Date"),[2] the Debtors filed with the Court voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code. The cases (the "Chapter 11 Cases") are pending before the Honorable John T. Dorsey, and are jointly administered for procedural purposes only under the lead case captioned *In re FTX Trading Ltd.*, *et al.,* Case No. 22-11068 (JTD) (Bankr. D. Del.). On February 13, 2023, the Court entered an order dismissing the chapter 11 cases of FTX Turkey Teknoloji Ve Ticaret Anonim Sirketi and SNG Investments Yatirim ve Danismanlik Anonim Sirketi [D.I. 711].  On August 18, 2023, the Court entered an order dismissing the chapter 11 case of FTX Exchange FZE [D.I. 2207].

2.  **Basis of Presentation**.  For financial reporting purposes, most of the Debtors prepared financial statements on a legal entity basis.  While consistent with their historical practice for most Debtor entities, several of the entities within the Alameda Silo maintained only one set of combined books.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone basis.  These Schedules and Statements do not purport to and do not represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP").  The Debtors used what they believe to be a reasonable basis to attribute assets and liabilities to each Debtor entity.  However, because the Debtors' accounting systems, policies, and practices were limited and maintained inconsistently by legal entity, or not at all, it is possible that not all assets, liabilities, or operational activity have been recorded, or were not recorded with the correct legal entity on the Schedules and Statements.  Accordingly, the Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements, including with respect to reallocation of assets or liabilities to any Debtor entity.

3.  **Reporting Date**.  Unless otherwise noted on the specific responses, the Statements and the liabilities reflected on the Schedules generally reflect the Debtors' books and records as of the Petition Date except as may have been adjusted for authorized payments made under the First Day Orders (as defined below).  The cash and other assets listed on the Schedules are as of the Petition Date unless otherwise stated, and have not been adjusted for authorized payments made under the First Day Orders.  As set forth herein, amounts ultimately realized may vary from whatever value was ascribed and such variance may be material.  Accordingly, the Debtors

---

[2]    November 11, 2022 is the petition date for all Debtors, except for West Realm Shires Inc.

reserve all of their rights to revise, amend, supplement and/or adjust the values set forth in the Statements and the assets and liabilities reflected on the Schedules. In addition, the amounts shown for total liabilities exclude items identified as "unknown," "disputed," "contingent," "unliquidated," "undetermined" and "N/A" and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

4.   **Allocation of Liabilities**.    The Debtors, in consultation with their Advisors, have sought to allocate liabilities between prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition may change. The Debtors reserve the right to revise, amend, supplement and/or adjust the Schedules and Statements.

5.   **Duplication**. Certain of the Debtors' assets, liabilities and prepetition payments may properly be disclosed in response to multiple parts of the Schedules and Statements. Except as otherwise discussed below, to the extent these disclosures would be duplicative, the Debtors have made best efforts to only list such assets, liabilities and prepetition payments once.

6.   **Entity Accounts Payable and Disbursement Systems**. As described in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Operate a Post-petition Cash Management System, (B) Maintain Existing Business Forms, and (C) Perform Intercompany Transactions, (II) Granting a Partial Waiver of the Deposit Guidelines Set Forth in Section 345(B), and (III) Granting Certain Related Relief,* [D.I. 47], prior to the commencement of the Chapter 11 Cases, the Debtors utilized a decentralized cash management system. Prior to the commencement of these Chapter 11 Cases, each Debtor generally maintained individual bank and payment service accounts to collect, transfer and distribute funds in the ordinary course of business. The Debtors maintained approximately 400 known bank and payment service accounts. The Debtors have been taking the necessary efforts to obtain access to, and regain control of, each of these known bank and payment service accounts and these efforts remain ongoing. Payment service account providers do not always provide information reporting consistent with reporting expected from a traditional financial institution, which creates limitations and challenges in preparation of the Schedules and Statements. There is a significant volume of transactions and currency that occurred within the Debtors' accounts on a daily basis with both third parties and between accounts held by affiliates. While the Debtors have taken reasonable measures to obtain the information necessary to compile the Schedules and Statements, there is a risk that this information is inaccurate or incomplete. Additionally, although efforts have been made to attribute open payable amounts to the correct Debtor entity, the Debtors reserve the right to revise, amend, supplement and/or adjust their Schedules and Statements, including to attribute such payment to a different Debtor entity.

7.   **Accuracy**.  As discussed in the Ray Declaration, the deficiencies with the Debtors' record keeping and reporting have been well documented.   The financial information disclosed in the Schedules and Statements was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder.   Persons and entities trading in or otherwise purchasing, selling, or transferring any claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared and should not rely upon such information for such or any other purposes.   The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

8.   **Valuation Generally**.   In certain instances, current market valuations are not maintained by or readily available to the Debtors.   Moreover, it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets solely for purposes of the Schedules and Statements.   Accordingly, unless otherwise stated, net book values as of the Petition Date are presented.   When necessary, the Debtors have indicated that the value of certain assets is "unknown" or "undetermined."   Amounts ultimately realized may vary materially from net book value (or spot value or other value so ascribed).   Accordingly, the Debtors reserve all rights to revise, amend, supplement and/or adjust the asset values set forth in the Schedules and Statements.   The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.

As noted herein, the Debtors are currently marketing certain assets for sale pursuant to those certain Court-approved bidding procedures.  *See Order (A) Approving Bid Procedures, Stalking Horse Procedures and the Form and Manner of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale Hearing(s)* [D.I.487] and *Order (I) Authorizing and Approving Procedures for the Sale or Transfer of Certain De Minimis Assets and Fund Assets and (II) Approving Assumption, Assignment and Rejection Procedures and (III) Granting Related Relief* [D.I. 702].   Accordingly, the current or fair value of those assets may be determined in connection with the sales processes.   As noted herein, amounts ultimately realized from the sale process may vary materially from net book value.

9.   **Valuation of Cryptocurrency**.   Cryptocurrency amounts are generally listed per token rather than a conversion to price in U.S. dollars.   To the extent cryptocurrency values are presented in U.S. dollars, they reflect the valuation as set forth in the Debtors' books and records as of the Petition Date or the time of the relevant transaction, as applicable, or such other pricing as set forth in these Notes.   Actual net realizable value may vary significantly.   The Debtors reserve all rights to revise,

amend, supplement and/or adjust such values presented in the Schedules and Statements.

10. **Paid Claims**.  Pursuant to the "first day" and "second day" orders of the Court entered in the Chapter 11 Cases (collectively, the "First Day Orders") as well as other orders of the Court, the Debtors have authorization to pay certain outstanding prepetition claims.  As such, outstanding liabilities have been reduced by any court-approved postpetition payments made on prepetition payables.  Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements or take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities.  Nothing herein should be deemed to alter the rights of any party-in-interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

11. **Undetermined Amounts**.  Claim amounts that could not readily be quantified by the Debtors are scheduled as "unliquidated", "undetermined", "unknown" or "N/A."  The description of an amount as "unliquidated", "undetermined", "unknown" or "N/A" is not intended to reflect upon the materiality or allowance of, or distribution with respect to the amount.

12. **Guarantees and Other Secondary Liability Claims**.  The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "Guarantees") in their executory contracts, unexpired leases and other such agreements.  Where such Guarantees have been identified, they are included in the relevant Schedules and Statements.  Guarantees embedded in the Debtors' executory contracts, unexpired leases and other agreements may have been omitted inadvertently.  The Debtors reserve their right to revise, amend, supplement and/or adjust the Schedules and Statements to the extent that additional Guarantees are identified.  In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

13. **Excluded Liabilities and Assets**.  The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules.  Certain immaterial or *de minimis* liabilities and assets may have been excluded.  Finally, the Debtors have also excluded from the Schedules and Statements cryptocurrency that was not in the Debtors' possession or controlled by the Debtors as of the Petition Date and any unauthorized transfers, gains or losses or other adjustments of cryptocurrencies that occurred either before or after the Petition Date.  The Debtors reserve all rights with respect to such cryptocurrency.

14.     **Cryptocurrency**. Certain of the Debtors' assets are cryptocurrencies or digital tokens based on a publicly accessible blockchain. Cryptocurrencies are unique assets.  Certain laws and regulations that may be applicable to cryptocurrencies do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, and local and international jurisdictions.  The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights with respect to such issues and all rights to revise, amend, supplement and/or adjust the Schedules and Statements.

15.     **Customers**.  In order to preserve the confidentiality of customer identities and in compliance with the *Final Order (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 545] (the "Redaction Order"), and subsequently *The Order Authorizing the Movants to Redact or Withhold Certain Confidential Information or Customers and Personal Information of Individuals* [D.I. 1643] (together the "Redaction Orders") customers have been scheduled utilizing a unique, individualized customer identification number (each, a "Customer Code") assigned to each applicable customer by the Debtors.  The Customer Code is not the same as the customer account number of such customer that existed prior to the filing of these Chapter 11 Cases.  The Debtors will provide notice of a customer's Customer Code by email to the email on file for such customer.

16.     **Insiders**.  For purposes of the Schedules and Statements, the Debtors defined "insiders" pursuant to section 101(31) of the Bankruptcy Code as:  (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers or persons in control of the Debtors and (e) debtor/non-debtor affiliates of the foregoing.  Additionally, an entity may be designated as an "insider" for the purposes of the Schedules and Statements if such entity, based on the totality of the circumstances, has a close relationship with any of the Debtors and a lack of arm's length dealings. Certain of the individuals or entities may not have been insiders for the entirety of the 12-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution.  Entities or persons listed as "insiders" have been included for informational purposes only, and the inclusion or omission of them in the Schedules and Statements shall not constitute an admission that those persons are or are not "insiders" for purposes of section 101(31) of the Bankruptcy Code.  The rights of the Debtors and other third parties with respect to any determinations of "insiders" are reserved.

Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for:  (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management

responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.

The process to identify insiders and related payments remain ongoing, and the Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements.

17. **Intercompany Balances**.  The Schedules include a reporting of intercompany and certain affiliate balances.  The volume and magnitude of intercompany and affiliate transactions are significant and pervasive throughout the Debtors' and their affiliates' accounts and include transactions in digital assets, fiat assets, contractual arrangements, as well as intercompany and affiliate balances derived from other sources.  Identification of these transactions is complex for numerous reasons, including, among others, agent relationships or improper labeling of transactions or accounts. Amounts ultimately realized may vary materially from net book value (or spot value or other value so ascribed).  Accordingly, the Debtors reserve all rights to revise, amend, supplement and/or adjust the asset values set forth in the Schedules and Statements.  The omission of an asset or liability from the Schedules and Statements does not constitute a representation regarding the existence of such intercompany or affiliate balance, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such balance.

18. **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts.  Amounts marked as "unknown", "undetermined" or "N/A" are not included in the calculations of the totals.  To the extent there are unknown disputed, contingent, unliquidated or otherwise undetermined amounts, the actual total may differ materially from those stated in the Schedules and Statements.

19. **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated. Foreign currency amounts have been translated to U.S. Dollar equivalents using published exchange rates at the relevant date or for the relevant period.

20. **Setoffs**.  The Debtors may incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, margin call or other lending-related transaction, intercompany transactions, pricing discrepancies, returns and other disputes between the Debtors and their account holders and/or suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and may not be tracked separately.  Therefore, although

such offsets and other similar rights may be included in the Schedules, other offsets are not independently accounted for, and as such, may be excluded from the Schedules.  The Debtors reserve all rights with respect to setoffs and offsets.

21.     **Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their claims, causes of action, potential claims or potential causes of action against third parties as assets in their Schedules and Statements, including, but not limited to, preferences and avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  The Debtors' investigation efforts remain ongoing.  The Debtors reserve all of their rights with respect to any claims, causes of action, preference or avoidance actions they may have, and neither these Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of actions, preference or avoidance actions or in any way prejudice or impair the assertion of such claims, or in any way act as an admission of any fact or liability or the character thereof.  Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

22.     **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a postpetition basis.

23.     **Solvency**.  Given the exclusion of intercompany balances and the uncertainty surrounding the collection, valuation and ownership of certain assets, including, among other things, net operating losses or other tax attributes, and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, nothing in the Schedules or Statement shall constitute an admission that the Debtors were solvent as of the Petition Date or at any time before the Petition Date.  Likewise, to the extent a Debtor shows more liabilities than assets, nothing in the Schedules or Statement shall constitute an admission that such Debtor was insolvent as of the Petition Date or at any time before the Petition Date.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value or solvency.  The Debtors reserve all rights with respect to these issues.

24.     **Liens**.   Property and equipment listed in the Schedules and Statements are presented without consideration of any liens that may attach (or have attached) to such property and equipment.

25.     **Leases of Equipment and Other Assets**.  In the ordinary course of their business, the Debtors lease equipment and other assets from certain third-party lessors for use in the daily operation of their businesses.  The Debtors have made commercially reasonable efforts to list any such leases in Schedule G.  Except as otherwise noted herein, the property subject to any such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors, and neither is such property or assets of third parties within the control of the Debtors.  Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including the recharacterization thereof.

26.     **Confidential, Sensitive or Personally Identifiable Information**.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual.  Additionally, pursuant to the Redaction Orders, the Debtors have redacted certain customer and personally identifiable information contained in the Schedules and Statements.  Payments made to individuals and certain other instances where personally identifiable information could otherwise be disclosed have been reported without disclosing the individuals mailing and/or email address.  All such redacted information shall be made available in accordance with the terms of the Redaction Orders.

27.     **Reservation of Rights**.  As noted above, reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, however, inadvertent errors or omissions may exist.  The Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements from time to time in all respects.  The Debtors reserve all rights with respect to issues involving or defenses against claims, substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Notes does not limit in any respect the general reservation of rights contained in this paragraph.

Nothing contained in the Schedules, Statements or Notes shall constitute a waiver of rights with respect to these Chapter 11 Cases, including, but not limited to, the following:

a)      Any failure to designate a claim listed on the Debtors' Schedules and Statements as a) "disputed," b) "contingent," or c) "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed,"

"contingent," or "unliquidated" or a waiver of any right to later object to any claim on any grounds. The Debtors reserve the right to dispute and to assert setoff rights, offsets, counterclaims, and defenses to any claim reflected on the Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Moreover, listing a claim does not constitute an admission of liability by the Debtors against which the claim is listed or by any of the Debtors. The Debtors reserve all rights to object to the extent, validity, enforceability, priority or avoidability of any claim (regardless of whether such claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). The Debtors reserve all rights to seek disallowance of any claim, including pursuant to section 502(d) of the Bankruptcy Code where an entity from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code unless such entity has paid the amount or turned over such property to the Debtors. The Debtors reserve all rights to revise, amend, supplement and/or adjust their Schedules and Statements, including with respect to claim amounts, description, classification and designation.

b)    Nothing contained in the Schedules and Statements is intended or should be construed as an admission or stipulation of the validity or allowance of any claim against the Debtors, any assertion made therein or herein, or a waiver of the right to dispute the allowance of, or any distributions in connection with, any claim or assert any cause of action or defense against any party.

c)    Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize or designate certain claims, assets, executory contracts, unexpired leases and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized or designated certain items. The Debtors reserve all rights to recharacterize, reclassify, recategorize or redesignate items reported in the Schedules and Statements.

d)    Information requested by the Schedules and Statements requires the Debtors to make a judgment regarding the appropriate category in which information should be presented or how certain parties, claims or other data should be labeled. The Debtors' decisions regarding the category or label to use is based on the best information available as of the preparation of these Schedules and Statements. The Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements, including to the extent some information currently presented should be moved to a different category or labeled in a different way.

e)    The listing of a claim (i) on Schedule D as "secured," (ii) on Schedule E/F (Part 1) as "priority," (iii) on Schedule E/F (Part 2) as "unsecured" or (iv) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the

claimant or counterparty, or a waiver of the Debtors' rights to object to such claim or recharacterize or reclassify such claim, contract or lease, or a waiver of the Debtors' rights to setoff such claims. The Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements in this regard and reserve all rights to assert that any contract listed on the Debtors' Schedules and Statements does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code, and the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

**f)** The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document and instrument related to a creditor's claim.

**g)** Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

28. **Global Notes Control**. In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

## Specific Notes with Respect to the Debtors' Schedules

29. **Schedule A/B, Part 1 – Cash and Cash Equivalents**. The reported bank balances (including investments and overnight accounts) and cash on hand include cash held in various currencies, converted into U.S. dollars as of the Petition Date. The Debtors have attempted to independently verify the cash balances as of the Petition Date. Where the Debtors and their Advisors have not been able to access an account, book balances are reported. Additionally, the Debtors continue to investigate, identify and recover additional cash assets as new information becomes available.

30. **Schedule A/B, Part 2 – Deposits and Prepayments**. Deposits and prepayments includes certain prepayments related to various advertising and sponsorship agreements, security deposits, retainers and other miscellaneous deposits and prepayments, which have been presented in AB7 at the net unamortized value as of the Petition Date. The Debtors have made reasonable efforts to identify all deposits and prepayments, but the lack of detailed historical amortization information has resulted in a presentation of the net unamortized value as a lump sum amount rather

than by individual asset. Efforts continue to segregate the books and records balances by individual asset. Additionally, the Schedules may not reflect an exhaustive list of all deposits and prepayments. The amounts listed in response to AB7 include deposits by Debtors that may have been offset and withdrawn postpetition by the counterparty. In addition, certain retainers or deposits reflect payments to professionals made by a certain Debtor entity that may be subject to applicable allocation amongst the Debtors. Finally, the amount ultimately recovered on such deposits and prepayments may vary materially from the amounts reported herein. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements.

31.     **Schedule A/B Part 3 Question 11**. The Debtors are in the process of evaluating their receivables including the collectability of such receivables. All receivables are reported in response to Question 11b (over 90 days old) notwithstanding that certain of such receivables may have been less than 90 days old at the Petition Date. Receivables have been reported at net book value which includes allowance for doubtful accounts. The Debtors did not perform a full assessment of the collectability of receivables in conjunction with the preparation of the Schedules. Therefore, the amount ultimately recovered may vary materially from the amount reported herein.

32.     **Schedule A/B Part 4 - Investments**. Investments in consolidated subsidiaries have been listed with an undetermined value. The Debtors do not believe that any book value is indicative of the value of such assets and have not obtained a fair market valuation of the assets. Publicly traded equity securities and fixed income securities have been reported at the fair market value as of the Petition Date. Other investments have been reported at the funded amount or recorded cost per books and records, which may be materially different from the current fair market value of the investment.

33.     **Schedule A/B Part 7 – Office furniture, fixtures and equipment; and collectibles**. Office furniture, fixtures and equipment have been reported at the net book value, which may materially differ from the current fair market of the related assets.

34.     **Schedule A/B, Part 9 – Real Property**. Real property consists primarily of properties purchased in the Bahamas and leasehold improvements on various leased facilities, including on any leases that may have been rejected or mutually terminated after the Petition Date. Properties owned in the Bahamas and leasehold improvements have been reported in the Schedules at the Net Book Value, which may materially differ from the current market value of the properties.

35.     **Schedule A/B, Part 10 – Intangibles and Intellectual Property**. The value of intangibles and intellectual property has been listed as undetermined, with a notational comment that includes the existing book value of such intangibles and intellectual property. The Debtors do not believe that the book value of the intangibles and intellectual property is indicative of the current fair market value of

such assets and have included the book value amounts solely for informational purposes as no valuation for impairment has been performed at this time.

The Debtors may have excluded certain intellectual property. Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

36.     **Schedule A/B, Part 11, Question 71 – Notes Receivable**. Notes Receivable include transfers of both digital and fiat assets to both insiders and external third parties. The Debtors and their Advisors have reviewed loan contracts and recorded loan amounts at the contractually stated amount, adjusted for accrued interest and payments. The collectible amount of Notes Receivable is currently undetermined.

37.     **Schedule A/B, Part 11, Question 72 – Tax Refunds and Unused Net Operating Losses (NOLs)**. Refunds represent dollar-for-dollar claims made with taxing authorities to return previous overpayments of tax. Unused NOLs may be available to offset Debtor taxable income for the period ended December 31, 2022 and forward. Unused NOLs are presented on an individual Debtor basis for U.S. Federal income tax purposes. The approximate amounts noted for Federal NOLs by year are amounts specific to each tax year and are not included in the NOL amount shown for the subsequent year. Due to the complexities of certain U.S. state and local net operating loss rules for combined/unitary groups, these amounts are disclosed at the filing entity level. These disclosures were compiled based on information made available to the Debtors and their advisors at the time of this filing. The Debtors and their Advisors continue to review the underlying filing positions to confirm accuracy, and reserve the right to revise, amend, supplement and/or adjust the Schedules and Statements.

38.     **Schedule A/B, Part 11, Question 73 – Insurance Policies**. The insurance policies listed in response to question 73 are listed only for the Debtor entities that are identified as named insureds on the respective policies and are not listed in response to question 73 for any other Debtor entities that may fall within the respective definitions of insured entities under such policies.

39.     **Schedule A/B, Part 11, Question 77 – Crypto Holdings and Collateral Assets**. Crypto assets are listed herein by their trading symbol and include the quantity held as of the Petition Date. Where USD Spot Price Value is listed, the amounts were derived by multiplying the quantity of tokens held with the spot price as of the Petition Date based on preliminary information available from CoinMarketCap (www.coinmarketcap.com). If spot pricing was unavailable as of the Petition Date on CoinMarketCap, the Debtors have not reported a value for the assets. The

current value of the crypto assets is undetermined and could vary significantly from any valuation as of the Petition Date. Additionally, all Crypto Holdings are presumed to be held by an individual Debtor within each Silo. The Debtors reserve all rights to revise, amend, supplement and/or adjust any reported pricing in the Schedules and Statements.

40.     **Schedule A/B, Part 11, Question 77 – Tokens Receivables**. The Debtors are contractual counterparties to agreements in which certain tokens are delivered as part of a vesting schedule. The Debtors reviewed contractual agreements and publicly accessible blockchain records for the purpose of listing quantities of tokens receivable as of Petition Date. Efforts to verify these amounts are ongoing and could materially impact the amounts reported herein. The Debtors have listed the counterparty, related token and quantity of tokens that were scheduled to be received and remained outstanding as of the Petition Date. Where spot prices were readily available as of the Petition Date from CoinMarketCap, an USD Spot Price Receivable Amount was calculated and provided herein by multiplying the quantity of tokens due as of the Petition Date with the spot price as of the Petition Date based on preliminary information publicly available from CoinMarketCap (www.coinmarketcap.com). If spot pricing was unavailable as of the Petition Date at CoinMarketCap, the Debtors have reported the funded amount for the tokens. Contracts that include token warrants do not have a quantifiable amount of tokens due as of the Petition Date and have been reported at the funded amount. The current value of the Tokens Receivable are undetermined and could vary significantly from any valuation as of the Petition Date or the funded amounts for such assets. The Debtors reserve all rights to revise, amend, supplement and/or adjust Token Receivables in the Schedules and Statements.

41.     **Schedule A/B, Part 11, Question 77 – Fund Investments**. Fund investments have been reported at the funded amount or recorded cost per books and records, which may be materially different from the current fair market value of the investment.

42.     **Schedule A/B, Part 11, Question 77 – Intercompany Receivables**. The Debtors' intercompany receivables are reported on a net basis with all other Debtor and Debtor affiliates. The Debtors have made all reasonable efforts to schedule all intercompany receivables from each Debtor and other Debtor affiliates. The Debtors have included intercompany receivables as of the Petition Date. See paragraph 17 for Intercompany Balances.

43.     **Schedule D**. The Debtors have not included parties that may believe their claims are secured through setoff rights, inchoate statutory lien rights, or other lien rights created by the laws of the various jurisdictions in which the Debtors operate. The amounts outstanding under the Debtors' prepetition secured debt reflect approximate amounts as of the Petition Date to the extent known. Descriptions provided on Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. The Debtors reserve all rights to dispute or otherwise assert offsets, defenses or avoidance claims to any claim reflected on the Schedule D as to amount, liability,

classification, or identity of a Debtor, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." The Debtors dispute some or all of the liens and collateral purportedly supporting any claim reflected on Schedule D, and reserve all rights to void or avoid any such liens or collateral, as appropriate.

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve the right to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercreditor agreement) related to such creditor's claim. In certain instances, a Debtor may be a co-obligor or guarantor with respect to scheduled claims of the other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in these Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

44.  **Schedule E/F**.

    **a)**    The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

    **b)**    The Debtors' prepetition tax obligations are more fully described in the *Motion for Order Authorizing (I) Debtors to Pay Certain Taxes and Fees and (II) Financial Institutions to Honor Related Payment Requests* [D.I. 267] (the "<u>Taxes Motion</u>"). Pursuant to the order granting the Taxes Motion, the Debtors were authorized to pay various prepetition taxes, regulatory fees and assessments, and related obligations that were payable to numerous taxing authorities. To the extent such obligations have been paid in the postpetition period pursuant to the order, the Debtors have made efforts to exclude the related obligations from the Schedules. The Debtors reserve all rights to further amend the Schedules or deem claims satisfied should it later be determined that any such paid prepetition obligation has been inadvertently reported in the Schedules.

**c)**     The Debtors have included various governmental agencies on Schedule E/F (Part 1) out of an abundance of caution whose obligations may not be "taxes" pursuant to the applicable law.  The Debtors reserve all rights to dispute or challenge that these claims are not taxes and are not subject to priority under the Bankruptcy Code.

**d)**     The Debtors' outstanding prepetition wage obligations are more fully described in the *Motion for Order (I) Authorizing the Debtors to Pay Certain Prepetition Wages and Compensation and Maintain and Continue Employee Benefit Programs and (II) Authorizing and Directing Banks to Honor and Process Checks and Transfers Related to Such Employee Obligations* [D.I. 59] (the "Wages Motion").  Pursuant to the orders granting the Wages Motion, the Debtors were authorized to pay certain prepetition obligations to their employees or other related third-party recipients, remit employee 401(k) contributions, and pay or cause to be paid all withheld employee taxes and Social Security and Medicare taxes.  To the extent such obligations have been paid in the postpetition period pursuant to these orders, the Debtors have made efforts to exclude the related obligations from the Schedules.  The Debtors reserve all rights to further amend the Schedules or deem claims satisfied should it later be determined that any such paid prepetition obligation has been inadvertently reported in the Schedules.

**e)**     The Debtors' outstanding prepetition critical vendor, foreign vendor, 503(b)(9) claims and lien claims are more fully described in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, Foreign Vendors, 503(B)(9) Claimants and Lien Claimants, (II) Granting Administrative Expense Priority to all Undisputed Obligations on Account of Outstanding Orders, (III) Authorizing all Financial Institutions to Honor all Related Payment Requests and (IV) Granting Certain Related Relief* [D.I. 46] (the "Critical Vendors Motion").  Pursuant to the orders granting the Critical Vendors Motion, the Debtors were authorized to pay prepetition obligations to certain vendors.  To the extent such obligations have been paid in the postpetition period pursuant to these orders, the Debtors have made reasonable efforts to exclude the related obligations from the Schedules. The Debtors reserve all rights to further amend the Schedules or deem claims satisfied should it later be determined that any such paid prepetition obligation has been inadvertently reported in the Schedules.

**f)**     The liabilities identified in Schedule E/F (Part 2) are derived from the Debtors' books and records.  The Debtors made a reasonable attempt to set forth their unsecured obligations, although the amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F (Part 2). The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims. Certain creditors listed on Schedule E/F may owe amounts to the Debtors

and, as such, the Debtors may have valid setoff or recoupment rights with respect to such amounts, including on account of outstanding cryptocurrency or other loans. The amounts listed on Schedule E/F do not reflect any such right of setoff or recoupment and the Debtors reserve all rights to assert any such setoff or recoupment rights.

**g)** The Debtors have made reasonable attempts to identify legal actions, administrative proceedings, court actions, executions, attachments or governmental audits including the review of available books and records, conducting lien searches, conducting searches of court and judicial records in relevant jurisdictions, and otherwise reviewing publicly available information. Despite the efforts conducted to identify all such actions, it is likely that there are other ending actions not yet identified or reported herein. The Debtors reserve all rights to revise, amend, supplement and/or adjust Schedule E/F in this regard. Additionally, certain lawsuits alleging prepetition conduct have been filed after the Petition Date. Such lawsuits are likely in violation of the automatic stay pursuant to section 362 of the Bankruptcy and are not included in the Debtor' responses. Schedule E/F does not include threatened litigation involving the Debtors.

**h)** The Debtors' intercompany payables are reported on a net basis with all other Debtor and Debtor affiliates. The intercompany payables reflect amounts owed pursuant to various transactions including digital assets, fiat assets, contractual arrangements, as well as intercompany and affiliate balances derived from other sources. The Debtors have made all reasonable efforts to schedule all outstanding obligations between each Debtor and Debtor affiliates. The Debtors have included intercompany payables as of the Petition Date. See paragraph 17 for Intercompany Balances.

45.   **Schedule G**. Although the Debtors have undertaken significant efforts to identify all of the Debtors' contracts, agreements, and leases, it is possible and even likely that there may be unidentified items not reported on Schedule G. Additionally, the contracts, agreements, and leases listed on Schedule G may have expired, may have been rejected or mutually terminated after the Petition Date, or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, it is the Debtors' intent that each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.

Certain confidentiality, non-disclosure, and non-compete agreements may not be listed on Schedule G.

Certain of the contracts and agreements listed on Schedule G may consist of several parts, including purchase orders, amendments, restatements, waivers, letters and other documents that may not be listed on Schedule G or that may be listed as a single entry. The Debtors expressly reserve their rights to challenge whether such related materials constitute an executory contract, a single contract or agreement, or multiple, severable or separate contracts.

Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, contracts do not specify a particular Debtor or include an incorrect legal entity as to the contractual counterparty and therefore the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G. Additionally, contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in Schedule G only of the Debtor that signed the original umbrella or master agreement.

Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal or other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G or Schedule F.

In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as subordination, non-disturbance, and attornment agreements, supplemental agreements, settlement agreements, amendments/letter agreements, title agreements, and confidentiality agreements. Such documents may not be set forth on Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute. Executory agreements that are oral in nature, if any, have not been included on the Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim. The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

Schedule G also does not include any agreements or contracts relating to any past acquisitions, mergers or transfers of entities by, to or between the Debtors. For the avoidance of doubt, the Debtors reserve all rights with respect to the characterization of any such agreements or contracts. The Debtors reserve the right to revise, amend, supplement and/or adjust Schedule G.

### Specific Notes with Respect to the Debtors' Statements

46.    **Statement 1 and 2 - Income**. Revenue reported is based solely upon historical income statements prepared by the Debtors' employees and the Outsourcers. This may include intercompany revenue. These historical incomes have not been verified by the Debtors or their Advisors. Based on a review of available historical records and discussions with available FTX resources, unless otherwise indicated, the Debtors have not identified any income responsive to Statement Question 2. All identified income is reported in response to Statement Question 1.

47.    **Statement 3 – Certain Payments or Transfers to Creditors within 90 Days before Filing this Case**. Any payments made outside the ordinary course or to the Debtors' bankruptcy professionals, charitable organizations and/or insiders within the 90 days prior to the Petition Date are disclosed in responses to SOFA 13, SOFA 11, SOFA 9 and SOFA 4, respectively, and therefore are not listed in response to SOFA 3. Additionally, as provided for in the SOFA instructions, wage and compensation payments and related withholding and employer tax payments made to the Debtors' non-insider employees in the ordinary course of business are not listed herein. Except for certain loan repayments, pledge agreements, and selected customer withdrawals, SOFA 3 only includes transfer made in cash and does not include transfers of cryptocurrency or other digital assets. The Debtors excluded customer withdrawals based on funds flowing out of FBO bank accounts. Due to poor record keeping and bank records which did not provide payee information, approximately $169,500,000 of payments paid to unknown creditors were excluded from SOFA 3. Payments to customers and creditors through third-party payment processors such as Circle, Tether, and Prime Trust have been reported as payment to the third-party processor to disclosure such outflows of funds. The final recipients of such funds are currently unknown.

48.    **Statement 4 – Payments or Other Transfers of Property made within 1 Year before Filing this Case that Benefited any Insider**. The Debtors have disclosed all known payments to insiders identified to date and have made reasonable efforts to make such identifications, but ongoing efforts to make such identifications continue and the Debtors expect that such efforts may identify additional transfers not reported at this time. Additionally, the reported payments do not reflect any prior or subsequent transfers from such insiders to the Debtors. The Debtors reserve all rights to revise, amend, supplement and/or adjust SOFA 4 to reflect transfers subsequently identified, and the failure to include any such transfer shall not be deemed a waiver of any claims, causes of actions, preference or avoidance actions or in any way prejudice or impair the assertion of any claims in this respect.

Payments from FTX US and FTX.Com Exchanges to insiders are reported in SOFA. Insider withdrawals have not been reported in SOFA 4.

Due to the voluminous number of intercompany transactions, the Debtors have reported the change in balance between Debtor and Debtor affiliates from November 2021 to the Petition Date. In addition, certain intercompany accounts have not yet been broken out by date of transaction. Such balances are reflected on the Petition Date. The Debtors reserve the right to amend the intercompany balance data once the historical intercompany data is available. See paragraph 17 for Intercompany Balances.

49.  **Statement 6 - Setoffs.** See paragraph 20 for Setoffs.

50.  **Statement 7 – Legal Actions.** The Debtors have made reasonable attempts to identify legal actions, administrative proceedings, court actions, executions, attachments or governmental audits including the review of available books and records, conducting lien searches, conducting searches of court and judicial records in relevant jurisdictions, and otherwise reviewing publicly available information. Despite the efforts conducted to identify all such actions, it is likely that there are other ending actions not yet identified or reported herein. The Debtors reserve all rights to revise, amend, supplement and/or adjust SOFA 7 in this regard. Additionally, certain lawsuits alleging prepetition conduct have been filed after the Petition Date. Such lawsuits are likely in violation of the automatic stay pursuant to section 362 of the Bankruptcy Code and, in any event, are not responsive to Statement Question 7 and, as such, are not included in the Debtor' responses. SOFA 7 does not include threatened litigation involving the Debtors.

The tax audits noted in Question 7 were initiated within 8 months subsequent to the Petition Date. The periods subject to audit include pre-petition periods. There were no known tax audits in process for any of the debtor entities as of the Petition Date.

51.  **Statement 9 – Gifts and Charitable Contributions.** Donations are currently reported as indicated and supported in the Debtors' books and records. Efforts are ongoing to review the Debtors' books and records to (1) confirm that payments and transfers denoted as gifts or donations qualify as such and (2) identify additional payments or transfers not currently identified as gifts or donations that qualify as such. Certain Debtors made donations on behalf of themselves and other Debtors. The Debtors' research regarding donations made by one Debtor on behalf of another is not yet complete and as such these donations are not included in the amounts reported in response to Statement Question 9. The Debtors' investigation into cryptocurrency and other non-cash donations is also ongoing.

52.  **Statement 11 – Payments related to Bankruptcy.** The Debtors have listed payments to professionals retained pursuant to section 327(a) of the Bankruptcy Code and related to these Chapter 11 Cases. Additional information regarding the

Debtors' retention of professional services firms is more fully described in the individual retention applications, declarations, and/or related orders. Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Statement 11 may include amounts for professional services unrelated to bankruptcy.

53.     **Statement 13 – Transfers not already listed on this statement.** The Debtors have attempted to report all known out-of-the-ordinary course payments, including but not limited to certain payments to insiders from November 11, 2020 to November 11, 2021. Notwithstanding these efforts, some payments and transfers may not be included. The Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements.

54.     **Statement 14 – Previous Locations**. The Debtors have made extensive attempts to review available documentation and to query available Debtor resources in an effort to identify all previous addresses and locations utilized by the Debtors (including registered addresses where identified). However, through these efforts, it has been determined that the Debtors operated out of many decentralized office locations and there is no known database tracking such information on a global basis. Therefore, it is likely that there may be other addresses and locations previously utilized by the Debtors that may not be listed herein.

55.     **Statement 16 – Personally Identifiable Information of Customers**. See paragraph 26 for Confidential, Sensitive or Personally Identifiable Information.

56.     **Statement 17 – Employee Pension or Profit-Sharing Plans**. The Debtors and their Advisors have researched and reviewed payroll and plan contribution activities across all known Debtor entities, but due to the decentralized nature of the Debtors books and records, it is possible that this information is incomplete.

57.     **Statement 18 – Closed Financial Accounts**. The Debtors have listed all known closed financial accounts that they have been identified through the course of their efforts to identify and secure the Debtors' assets to date. However, due to the large number of accounts, the lack of a centralized prepetition cash management system and the large number of business acquisitions by the Debtors in recent years, it is possible that the list provided herein may be incomplete.

58.     **Statement 20 – Off-Premises Storage**. The Debtors have listed all known off-premises storage locations that it has identified through the course of its efforts to identify and secure the Debtors' assets to date. However, due to the lack of a centralized property management system and the large number of decentralized offices maintained by the Debtors in recent years, it is possible that the list provided herein may be incomplete.

59.     **Statement 21 – Property Held for Another**. The Debtors take the position that, consistent with the applicable terms of use between the Debtors and their account

holders, certain cryptocurrency held on the Debtors' platform is property of the Debtors' estate pursuant to section 541 of the Bankruptcy Code. Conversely, the Debtors take the position that, consistent with the applicable terms of use, certain other cryptocurrency held on the Debtors' platform is not property of the Debtors' estate pursuant to section 541 of the Bankruptcy Code.

60.     **Statement 25 – Other Businesses in which the Debtor has or has had an Interest**.  In addition to business interests listed in Statement 25, the Debtors also have or had interests in various token investments for publicly traded tokens and pre-ICO (Initial Coin Offering) tokens.  These have been excluded from Statement 25.

61.     **Statement 26 – Books, Records and Financial Statements**.  The Debtors relied heavily on contractors and Outsourcers to maintain their books and records.  There was no centralized financial accounting system or document repository for the books and records.  Many records were found to be stored in numerous individual e-mail accounts and related cloud-based storage drives. The Debtors and their Advisors have undertaken significant efforts after the Petition Dates to locate all available books and records and to identify centrally located copies of all of the historical books and records.  The Debtors have disclosed all known responsive information in the Statement, but it is likely that this information may be incomplete.

62.     **Statements 28 and 29 – Officers, Directors, Managing Members, General Partners, Members in Control, Controlling Shareholders/ Prior Officers, Directors, Managing Members, General Partners, Members in Control, Controlling Shareholders**.  The Debtors and their Advisors relied on available corporate documents and books and records to determine officer, director, managing member, general partner, member and controlling shareholder statuses.  While reasonable efforts have been made to provide accurate and complete information, inadvertent errors and omissions may exist and the Debtors reserve all rights to revise, amend, supplement and/or adjust the Schedules and Statements.

        Officer and Directors reported in response to Statement 28 are as of the Petition Date and do not reflect any changes made postpetition.

63.     **Statement 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders**.  See paragraph 47 – Statement 4 – Payments or Other Transfers of Property made within 1 Year before Filing this Case that Benefited any Insider.

64.     **Statement 31 – Consolidated Groups for Tax Purposes**.  The Debtors have disclosed the consolidated group for U.S. Federal, state and local income tax purposes only, and are not currently aware of any consolidated filings outside of the U.S.  These Schedules and Statements were compiled based on information made available to the Debtors and their Advisors at the time of this filing.  The Debtors and their advisors continue to review the underlying filing positions to

confirm accuracy, and reserve the right to revise, amend, supplement and/or adjust the Schedules and Statements.

65.    **Statement 32 – Contributions to a Pension Fund**.    The Debtors and their Advisors have researched and reviewed payroll and plan contribution activities across all known Debtor entities, but due to the decentralized nature of the Debtors' books and records it is possible that this information is incomplete.    The Debtors contributions to pension plans is also addressed on Statement Question 17.

**Fill in this information to identify the case:**

Debtor name  LedgerPrime LLC

United States Bankruptcy Court for the:  District of Delaware

Case number (If known)  22-11158 (JTD)

☑ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

## Part 1:  Income

1. **Gross revenue from business**

   ☐ None

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
   |---|---|---|---|
   | **From the beginning of the fiscal year to filing date:** | From 01/01/2022 to 11/11/2022<br>MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $ 2,495,124.10 |
   | **For prior year:** | From 01/01/2021 to 12/31/2021<br>MM/DD/YYYY    MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $ 11,352,021.55 |
   | **For the year before that:** | From 01/01/2020 to 12/31/2020<br>MM/DD/YYYY    MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $ 5,976,272.27 |

2. **Non-business revenue**

   Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☑ None

   | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
   |---|---|---|---|
   | **From the beginning of the fiscal year to filing date:** | From _____<br>MM/DD/YYYY | _____ | $ _____ |
   | **For prior year:** | From _____ to _____<br>MM/DD/YYYY    MM/DD/YYYY | _____ | $ _____ |
   | **For the year before that:** | From _____ to _____<br>MM/DD/YYYY    MM/DD/YYYY | _____ | $ _____ |

| Debtor | LedgerPrime LLC | | Case number (If known) | 22-11158 (JTD) |
|---|---|---|---|---|
| | Name | | | |

## Part 2:   List Certain Transfers Made Before Filing for Bankruptcy

**3.  Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7, 575. (This amount may be adjusted on 4/01/2025 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None   **See Attached Rider**

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1 _____<br><br>Street _____<br><br>City _____ State ____ Zip Code ____ | _____ | $ _____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| 3.2 _____<br><br>Street _____<br><br>City _____ State ____ Zip Code ____ | _____ | $ _____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |

**4.  Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7, 575. (This amount may be adjusted on 4/01/2025 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None   **See Attached Rider**

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 _____<br><br>Street _____<br><br>City _____ State ____ Zip Code ____ | _____ | $ _____ | _____<br><br>_____ |
| **Relationship to debtor**<br>_____ | | | |
| 4.2 _____<br><br>Street _____<br><br>City _____ State ____ Zip Code ____ | _____ | $ _____ | _____<br><br>_____ |
| **Relationship to debtor**<br>_____ | | | |

Debtor   LedgerPrime LLC
     Name

Case number (If known)   22-11158 (JTD)

## 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1 _____ <br> Street _____ <br> City     State     Zip Code | _____ <br> _____ | _____ | $ _____ |
| 5.2 _____ <br> Street _____ <br> City     State     Zip Code | _____ <br> _____ | _____ | $ _____ |

## 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____ <br> Street _____ <br> City     State     Zip Code | _____ <br> _____ | _____ | $ _____ |

Last 4 digits of account number: XXXX - _____

---

**Part 3:**   **Legal Actions or Assignments**

## 7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☐ None   **See Attached Rider**

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1 _____ <br> **Case number** <br> _____ | _____ | _____ <br> Street _____ <br> City     State     Zip Code | ☐ Pending <br> ☐ On appeal <br> ☐ Concluded |
| 7.2 _____ <br> **Case number** <br> _____ | _____ | _____ <br> Street _____ <br> City     State     Zip Code | ☐ Pending <br> ☐ On appeal <br> ☐ Concluded |

Debtor   LedgerPrime LLC
         Name                                                    Case number (If known)    22-11158 (JTD)

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | | $ |
| Street | **Case title** | **Court name and address** |
| City        State        Zip Code | **Case number** | |
| | **Date of order or assignment** | |

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1 | | | $ |
| Street | | | |
| City        State        Zip Code | | | |
| **Recipient's relationship to debtor** | | | |
| 9.2 | | | $ |
| Street | | | |
| City        State        Zip Code | | | |
| **Recipient's relationship to debtor** | | | |

| Part 5: | Certain Losses |
|---|---|

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss
If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.
List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| | | | $ |

| Debtor | LedgerPrime LLC | | Case number (If known) | 22-11158 (JTD) |
|---|---|---|---|---|
| | Name | | | |

## Part 6:   Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None   **_Disbursements were made by and reported in response to SOFA Q#11 for West Realm Shires, Inc. and FTX Trading Ltd._**

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 | | | $ |
| **Address** | | | |
| | | | |
| Street | | | |
| City          State          Zip Code | | | |
| | | | |
| **Email or website address** | | | |
| | | | |
| **Who made the payment, if not debtor?** | | | |
| | | | |

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.2 | | | $ |
| **Address** | | | |
| | | | |
| Street | | | |
| City          State          Zip Code | | | |
| | | | |
| **Email or website address** | | | |
| | | | |
| **Who made the payment, if not debtor?** | | | |
| | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | $ |
| **Trustee** | | | |

Debtor   LedgerPrime LLC

Name

Case number (if known)   22-11158 (JTD)

---

### 13. Transfers not already listed on this statement

List any transfers of money or other property-by sale, trade, or any other means-made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.1 | | | $ |
| **Address** | | | |
| | | | |
| Street | | | |
| City          State          Zip Code | | | |
| **Relationship to debtor** | | | |
| | | | |

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.2 | | | $ |
| **Address** | | | |
| | | | |
| Street | | | |
| City          State          Zip Code | | | |
| **Relationship to debtor** | | | |
| | | | |

---

## Part 7:   Previous Locations

### 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply    <u>See Attached Rider</u>

| Address | | Dates of Occupancy |
|---|---|---|
| 14.1 | | From _____   To _____ |
| Street | | |
| City          State          Zip Code | | |
| 14.2 | | From _____   To _____ |
| Street | | |
| City          State          Zip Code | | |

---

Official Form 207

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

Page 6

Debtor   LedgerPrime LLC
_____
Name

Case number (If known)   22-11158 (JTD)

---

## Part 8:   Health Care Bankruptcies

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☒ No. Go to Part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 _____ | _____ | _____ |
| Street _____ | | |
| City _____ State ___ Zip Code ___ | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** |
| | _____ | *Check all that apply:* |
| | _____ | ☐ Electronically |
| | | ☐ Paper |

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.2 _____ | _____ | _____ |
| Street _____ | | |
| City _____ State ___ Zip Code ___ | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?** |
| | _____ | *Check all that apply:* |
| | _____ | ☐ Electronically |
| | | ☐ Paper |

---

## Part 9:   Personally Identifiable Information

16. **Does the debtor collect and retain personally identifiable information of customers?**

☒ No.

☐ Yes. State the nature of the information collected and retained.   _____

        Does the debtor have a privacy policy about that information?

        ☐ No

        ☐ Yes

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☒ No. Go to Part 10.

    Yes. Does the debtor serve as plan administrator?

        ☐ No. Go to Part 10.

        ☐ Yes. Fill in below

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN: _____ |

    Has the plan been terminated?

    ☐ No

    ☐ Yes

---

| Debtor | LedgerPrime LLC | | Case number (If known) | 22-11158 (JTD) |
|---|---|---|---|---|
| | Name | | | |

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1 | | XXXX- | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | | $ |
| | Street | | | | |
| | City        State        Zip Code | | | | |
| 18.2 | | XXXX- | ☐ Checking<br>☐ Savings<br>☐ Money Market<br>☐ Brokerage<br>☐ Other _____ | | $ |
| | Street | | | | |
| | City        State        Zip Code | | | | |

### 19. Safe deposit boxes

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No<br>☐ Yes |
| Street | | | |
| City        State        Zip Code | Address | | |

### 20. Off-premises storage

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| | | | ☐ No<br>☐ Yes |
| Street | | | |
| City        State        Zip Code | Address | | |

Debtor   LedgerPrime LLC
_____     Case number (If known)   22-11158 (JTD)
Name

---

## Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

**21.  Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| Street | | | |
| City          State     Zip Code | | | |

---

## Part 12:   Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

■  *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

■  *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■  *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | | | ☐ Pending |
| **Case Number** | Street | | ☐ On appeal |
| | City          State     Zip Code | | ☐ Concluded |

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |
| Street | Street | | |
| City          State     Zip Code | City          State     Zip Code | | |

---

Debtor    LedgerPrime LLC
_____
        Name

Case number (If known)    22-11158 (JTD)

---

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City        State        Zip Code | City        State        Zip Code | | |

---

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 LEDGERPRIME BITCOIN YIELD ENHANCEMENT FUND, LLC<br>103 SOUTH CHURCH STREET<br>4TH FLOOR, HARBOUR PLACE<br>GEORGE TOWN,<br>CAYMAN ISLANDS | Dormant Entity | EIN: Unknown<br><br>**Dates business existed**<br><br>From 10/13/2021    To Current |

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.2 LEDGERPRIME DIGITAL ASSET OPPORTUNITIES FUND, LLC<br>874 Walker Rd<br>Suite C<br>Dover, DE 19904 | Feeder fund into LedgerPrime Digital Asset Opportunities Master Fund LP | EIN: 88-4118955<br><br>**Dates business existed**<br><br>From 09/08/2022    To Current |

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.3 LEDGERPRIME VENTURES, LP<br>103 SOUTH CHURCH STREET<br>4TH FLOOR, HARBOUR PLACE<br>GEORGE TOWN,<br>CAYMAN ISLANDS | Dormant Entity | EIN: Unknown<br><br>**Dates business existed**<br><br>From 10/13/2021    To Current |

---

Debtor   LedgerPrime LLC
Name

Case number (If known)   22-11158 (JTD)

26. **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service | |
|---|---|---|
| 26a.1 Markou, Josh<br>ADDRESS ON FILE | From 11/11/2020 | To Current |

| Name and address | Dates of service | |
|---|---|---|
| 26a.2 | From | To |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service | |
|---|---|---|
| 26b.1 Markou, Josh<br>ADDRESS ON FILE | From 11/11/2020 | To Current |

| Name and address | Dates of service | |
|---|---|---|
| 26b.2 | From | To |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.1 Markou, Josh<br>ADDRESS ON FILE | N/A |

Debtor    LedgerPrime LLC
      Name

Case number (If known)    22-11158 (JTD)

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.2 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
|---|
| 26d.1 |

Street

City              State             Zip Code

| Name and address |
|---|
| 26d.2 |

Street

City              State             Zip Code

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records |
|---|
| 27.1 |

Street

City              State             Zip Code

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|
| 27.2 | | |
| Street | | |
| City                  State                  Zip Code | | |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| See Attached Rider | | | |
| | | | |
| | | | |
| | | | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| See Attached Rider | | | From          To |
| | | | From          To |
| | | | From          To |
| | | | From          To |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1  Refer to Statement of Financial Affairs Q #: 4 | | | |
| Street | | | |
| City              State              Zip Code | | | |
| Relationship to debtor | | | |

Debtor   LedgerPrime LLC
_____
        Name

Case number (If known)   22-11158 (JTD)

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.2 | | | | |
| | _____ | | | |
| | Street | | | |
| | City          State          Zip Code | | | |

| Relationship to debtor |
|---|
| |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| | EIN: |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

---

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   08/31/2023
             _____
             MM / DD / YYYY

X /s/ Mary Cilia                                    Printed name   Mary Cilia
_____                             _____
Signature of individual signing on behalf of the debtor

Position or relationship to debtor   Chief Financial Officer
                                    _____

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No

☑ Yes

Debtor Name:  LedgerPrime LLC                                                                                          Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason For Payment | Amount Paid |
|---|---|---|---|---|
| FARVIEW ASSET MANAGEMENT LLC<br>552 FARVIEW AVE<br>WYCKOFF, NJ 07481 | | 08/24/2022 | Services | $8,333.00 |
| | | 08/31/2022 | Services | $8,333.00 |
| | | 09/21/2022 | Services | $8,333.00 |
| | | 09/28/2022 | Services | $8,333.00 |
| | | 11/02/2022 | Services | $10,283.47 |
| | | | **SUBTOTAL** | **$43,615.47** |
| Fisher And Phillips Llp<br>[Researching Address] | | 10/18/2022 | Services | $3,039.25 |
| | | | **SUBTOTAL** | **$3,039.25** |
| JOEL JOHN<br>ADDRESS ON FILE | | 09/27/2022 | Other- Employee Expense | $21,645.00 |
| | | | **SUBTOTAL** | **$21,645.00** |
| LAURA VIDIELLA<br>ADDRESS ON FILE | | 08/24/2022 | Other- Employee Expense | $16,616.48 |
| | | 09/07/2022 | Other- Employee Expense | $6,250.00 |
| | | 09/28/2022 | Other- Employee Expense | $130,705.34 |
| | | 10/12/2022 | Other- Employee Expense | $6,250.00 |
| | | 11/09/2022 | Other- Employee Expense | $25,944.07 |
| | | | **SUBTOTAL** | **$185,765.89** |
| Nav Consulting Inc<br>[Researching Address] | | 09/20/2022 | Services | $4,500.00 |
| | | 10/04/2022 | Services | $1,000.00 |
| | | 11/08/2022 | Services | $1,500.00 |
| | | | **SUBTOTAL** | **$7,000.00** |
| SAMNEET CHAPEL<br>ADDRESS ON FILE | | 10/11/2022 | Other- Employee Expense | $30,285.00 |
| | | 11/08/2022 | Other- Employee Expense | $13,460.00 |
| | | | **SUBTOTAL** | **$43,745.00** |
| SILVER REGULATORY ASSOCIATES LLC<br>417 FIFTH AVENUE<br>8TH FLOOR<br>NEW YORK, NY 10016 | | 09/14/2022 | Services | $6,000.00 |
| | | 09/21/2022 | Services | $6,000.00 |
| | | 10/12/2022 | Services | $6,000.00 |
| | | | **SUBTOTAL** | **$18,000.00** |
| STREAMLINE PARTNERS LLC<br>102 CENTURY PARK PL<br>PEACHTREE CITY, GA 30269 | | 09/28/2022 | Services | $641,456.26 |
| | | | **SUBTOTAL** | **$641,456.26** |
| VIVEK AGRAWAL<br>ADDRESS ON FILE | | 09/06/2022 | Other- Employee Expense | $10,400.00 |

Debtor Name:  LedgerPrime LLC                                                      Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 3:** Certain payments or transfers to creditors within 90 days before filing this case

| Creditor Name & Address | Check or Wire Number | Payment Date | Reason For Payment | Amount Paid |
|---|---|---|---|---|
| | | 10/04/2022 | Other- Employee Expense | $10,400.00 |
| | | 11/08/2022 | Other- Employee Expense | $10,400.00 |
| | | | **SUBTOTAL** | **$31,200.00** |
| WEWORK INC<br>222 BROADWAY 22ND FLOOR<br>NEW YORK, NY 10038 | | 09/06/2022 | Services | $11,437.50 |
| | | 10/03/2022 | Services | $11,437.50 |
| | | 11/01/2022 | Services | $11,464.72 |
| | | | **SUBTOTAL** | **$34,339.72** |

Debtor Name:  LedgerPrime LLC                                                                 Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Creditor Name and Address | Relationship to Debtor | Total Amount or Value | Dates | Reason for Payment or Transfer |
|---|---|---|---|---|
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $6,250.00 | 11/15/2021 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $6,250.00 | 11/30/2021 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $6,285.28 | 12/15/2021 | Expense Reimbursement |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $6,250.00 | 12/15/2021 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $6,250.00 | 12/30/2021 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 01/14/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 01/31/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 02/15/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $9,787.50 | 02/28/2022 | Expense Reimbursement |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 02/28/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 03/15/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 03/31/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $5,429.22 | 04/14/2022 | Expense Reimbursement |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 04/14/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 04/29/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 05/13/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 05/31/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 06/15/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 06/30/2022 | Salary |
| Tang, Shiliang ADDRESS ON FILE | Director/Officer | $8,333.33 | 07/15/2022 | Salary |

Debtor Name:  LedgerPrime LLC                                                                                          Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Creditor Name and Address | Relationship to Debtor | Total Amount or Value | Dates | Reason for Payment or Transfer |
|---|---|---|---|---|
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 07/29/2022 | Salary |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 08/15/2022 | Salary |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 08/31/2022 | Salary |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 09/15/2022 | Salary |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $10,456.48 | 09/30/2022 | Expense Reimbursement |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 09/30/2022 | Salary |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 10/14/2022 | Salary |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $98,095.91 | 10/20/2022 | Bonus |
| Tang, Shiliang<br>ADDRESS ON FILE | Director/Officer | $8,333.33 | 10/31/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 11/15/2021 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 11/30/2021 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 12/15/2021 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 12/30/2021 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 01/14/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 01/31/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 02/15/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 02/28/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 03/15/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $7,291.67 | 03/31/2022 | Salary |
| van Zeijts, Johannes<br>ADDRESS ON FILE | Officer | $65.30 | 04/14/2022 | Expense Reimbursement |

Debtor Name:  LedgerPrime LLC                                                                                          Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 4:** Payments or other transfers of property made within 1 year before filing this case that benefited any insider

| Creditor Name and Address | Relationship to Debtor | Total Amount or Value | Dates | Reason for Payment or Transfer |
|---|---|---|---|---|
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 04/14/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 04/29/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 05/13/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 05/31/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $279.88 | 06/15/2022 | Expense Reimbursement |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 06/15/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 06/30/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 07/15/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 07/29/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 08/15/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 08/31/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 09/15/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $125,000.00 | 09/29/2022 | Bonus |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 09/30/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 10/14/2022 | Salary |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $24,523.98 | 10/20/2022 | Bonus |
| van Zeijts, Johannes ADDRESS ON FILE | Officer | $7,291.67 | 10/31/2022 | Salary |

**FTX Trading LTD.,** *et al.*

**Case Number: 22-11068 (JTD)**

**(Jointly Administered)**

**Part 2, Question 4: Consolidated Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| Debtor | Petition Date Position | Intercompany Counterparty | 11/11/2021 Balance Receivable/ (Payable) | 11/11/2022 Balance Receivable/ (Payable) | Change in Balance |
|---|---|---|---|---|---|
| Alameda Research Holdings Inc. | Intercompany Payable To | West Realm Shires Inc. | $ - | $ (7,381) | $ (7,381) |
| Alameda Research KK | Intercompany Payable To | Alameda Research LLC | (3,585,069) | (10,173,264) | (6,588,195) |
| Alameda Research LLC | Intercompany Receivable From | Alameda Research KK | 3,585,069 | 10,173,264 | 6,588,195 |
| Alameda Research LLC | Intercompany Payable To | Alameda Research Ltd | 25,946,770,739 | (1,837,416,545) | (27,784,187,284) |
| Alameda Research LLC | Intercompany Receivable From | Blockfolio, Inc. | 1,604,298 | 3,892,497 | 2,288,200 |
| Alameda Research LLC | Intercompany Receivable From | Clifton Bay Investments LLC | 250,000 | 66,650,000 | 66,400,000 |
| Alameda Research LLC | Intercompany Receivable From | FTX Japan K.K. | - | 30,722,725 | 30,722,725 |
| Alameda Research LLC | Intercompany Receivable From | FTX Trading Ltd. | - | 18,065,952 | 18,065,952 |
| Alameda Research LLC | Intercompany Receivable From | Maclaurin Investments Ltd. | - | 37,000,000 | 37,000,000 |
| Alameda Research LLC | Intercompany Receivable From | North Dimension Inc | 92,731,667 | 135,731,667 | 43,000,000 |
| Alameda Research LLC | Intercompany Receivable From | Paper Bird Inc | 18,000,000 | 18,000,000 | - |
| Alameda Research LLC | Intercompany Payable To | West Realm Shires Inc. | - | (192,476) | (192,476) |
| Alameda Research LLC | Intercompany Receivable From | West Realm Shires Services Inc. | - | 22,481,706 | 22,481,706 |
| Alameda Research Ltd | Intercompany Receivable From | Alameda Research LLC | (25,946,770,739) | 1,837,416,545 | 27,784,187,284 |
| Alameda Research Ltd | Intercompany Payable To | Alameda TR Systems S. de R. L. | - | (13,213,753) | (13,213,753) |
| Alameda Research Ltd | Intercompany Payable To | Blockfolio, Inc. | 1,000,000 | (16,320) | (1,016,320) |
| Alameda Research Ltd | Intercompany Receivable From | Clifton Bay Investments LLC | 745,056,424 | 1,457,493,948 | 712,437,524 |
| Alameda Research Ltd | Intercompany Payable To | Cottonwood Grove Ltd | - | (11,755,156) | (11,755,156) |
| Alameda Research Ltd | Intercompany Payable To | Emergent Fidelity Technologies Ltd | - | 489,252,728 | 489,252,728 |
| Alameda Research Ltd | Intercompany Payable To | FTX Digital Markets Ltd. | - | (3,200,000) | (3,200,000) |
| Alameda Research Ltd | Intercompany Receivable From | FTX Europe AG | 41,150,000 | 41,150,000 | - |
| Alameda Research Ltd | Intercompany Receivable From | FTX Japan Holdings K.K. | 120,000,000 | 120,000,000 | - |
| Alameda Research Ltd | Intercompany Receivable From | FTX Japan K.K. | - | 8,172,365 | 8,172,365 |
| Alameda Research Ltd | Intercompany Payable To | FTX Trading Ltd. | (12,046,644,225) | (9,533,702,880) | 2,512,941,345 |
| Alameda Research Ltd | Intercompany Receivable From | FTX Ventures Ltd. | - | 118,697,200 | 118,697,200 |
| Alameda Research Ltd | Intercompany Receivable From | Goodman Investments Ltd. | - | 250,000,000 | 250,000,000 |
| Alameda Research Ltd | Intercompany Receivable From | Island Bay Ventures Inc | 800,000 | 800,000 | - |
| Alameda Research Ltd | Intercompany Receivable From | Maclaurin Investments Ltd. | 358,770,775 | 1,300,980,549 | 942,209,774 |
| Alameda Research Ltd | Intercompany Receivable From | North Dimension Inc | (857,333,351) | 91,498,512 | 948,831,863 |
| Alameda Research Ltd | Intercompany Receivable From | Paper Bird Inc | 2,329,354,283 | 2,588,886,041 | 259,531,758 |
| Alameda Research Ltd | Intercompany Receivable From | Quoine Pte Ltd | - | 16,902,883 | 16,902,883 |
| Alameda Research Ltd | Intercompany Payable To | West Realm Shires Inc. | - | (16,500) | (16,500) |
| Alameda Research Ltd | Intercompany Receivable From | West Realm Shires Services Inc. | 772,852,042 | 138,853,864 | (633,998,178) |
| Alameda TR Systems S. de R. L. | Intercompany Receivable From | Alameda Research Ltd | - | 13,213,753 | 13,213,753 |
| Blockfolio, Inc. | Intercompany Payable To | Alameda Research LLC | (1,604,298) | (3,892,497) | (2,288,200) |
| Blockfolio, Inc. | Intercompany Receivable From | Alameda Research Ltd | (1,000,000) | 16,320 | 1,016,320 |
| Blockfolio, Inc. | Intercompany Payable To | FTX Trading Ltd. | - | (98,678,942) | (98,678,942) |
| Blockfolio, Inc. | Intercompany Receivable From | West Realm Shires Inc. | 215 | (4,574) | (4,789) |
| Blockfolio, Inc. | Intercompany Payable To | West Realm Shires Services Inc. | 8,761,340 | (37,267,771) | (46,029,111) |
| Clifton Bay Investments LLC | Intercompany Receivable From | Alameda Research LLC | (250,000) | (66,650,000) | (66,400,000) |
| Clifton Bay Investments LLC | Intercompany Receivable From | Alameda Research Ltd | (745,056,424) | (1,457,493,948) | (712,437,524) |
| Clifton Bay Investments LLC | Intercompany Receivable From | FTX Ventures Ltd. | - | 200,000 | 200,000 |
| Clifton Bay Investments LLC | Intercompany Receivable From | Island Bay Ventures Inc | - | 44,999,000 | 44,999,000 |
| Clifton Bay Investments LLC | Intercompany Payable To | Maclaurin Investments Ltd. | 750,015 | (16,648,988) | (17,399,003) |
| Clifton Bay Investments LLC | Intercompany Payable To | West Realm Shires Inc. | - | (46,083) | (46,083) |
| Clifton Bay Investments LLC | Intercompany Payable To | West Realm Shires Services Inc. | (2,250,000) | (2,250,000) | - |
| Cottonwood Grove Ltd | Intercompany Receivable From | Alameda Research Ltd | - | 11,755,156 | 11,755,156 |

**FTX Trading LTD.,** *et al.*

**Part 2, Question 4: Consolidated Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| Debtor | Petition Date Position | Intercompany Counterparty | 11/11/2021 Balance Receivable/ (Payable) | 11/11/2022 Balance Receivable/ (Payable) | Change in Balance |
|---|---|---|---|---|---|
| Cottonwood Grove Ltd | Intercompany Receivable From | FTX Trading Ltd. | - | 4,775,306 | 4,775,306 |
| Cottonwood Grove Ltd | Intercompany Receivable From | West Realm Shires Services Inc. | - | 68,056 | 68,056 |
| Cottonwood Technologies Ltd | Intercompany Receivable From | FTX Trading Ltd. | 7,001,606,974 | 430,458,661 | (6,571,148,313) |
| Cottonwood Technologies Ltd | Intercompany Payable To | West Realm Shires Inc. | - | (569) | (569) |
| Crypto Bahamas LLC | Intercompany Payable To | FTX Trading Ltd. | - | (1,000,000) | (1,000,000) |
| Crypto Bahamas LLC | Intercompany Payable To | West Realm Shires Inc. | - | (569) | (569) |
| DAAG Trading, DMCC | Intercompany Payable To | FTX Certificates GmbH | - | (12,514) | (12,514) |
| DAAG Trading, DMCC | Intercompany Payable To | FTX Europe AG | - | (84,957) | (84,957) |
| Digital Custody Inc. | Intercompany Receivable From | FTX Vault Trust Company | - | 394,670 | 394,670 |
| FTX (Gibraltar) Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (260,504) | (260,504) |
| FTX Certificates GmbH | Intercompany Receivable From | DAAG Trading, DMCC | - | 12,514 | 12,514 |
| FTX Certificates GmbH | Intercompany Payable To | FTX Europe AG | - | (49,518) | (49,518) |
| FTX Crypto Services Ltd. | Intercompany Receivable From | FTX EMEA Ltd. | - | 5,025 | 5,025 |
| FTX Crypto Services Ltd. | Intercompany Payable To | FTX Europe AG | - | (101,770) | (101,770) |
| FTX Digital Assets LLC | Intercompany Payable To | West Realm Shires Financial Services Inc. | - | (500,000) | (500,000) |
| FTX Digital Holdings (Singapore) Pte Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (907,925) | (907,925) |
| FTX Digital Holdings (Singapore) Pte Ltd | Intercompany Receivable From | Quoine Pte Ltd | - | 259,815 | 259,815 |
| FTX EMEA Ltd. | Intercompany Payable To | FTX Crypto Services Ltd. | - | (5,025) | (5,025) |
| FTX Equity Record Holdings Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (150) | (150) |
| FTX EU Ltd. | Intercompany Receivable From | FTX Switzerland GmbH | - | 3,106,156 | 3,106,156 |
| FTX Europe AG | Intercompany Payable To | Alameda Research Ltd | (41,150,000) | (41,150,000) | - |
| FTX Europe AG | Intercompany Receivable From | DAAG Trading, DMCC | - | 84,957 | 84,957 |
| FTX Europe AG | Intercompany Receivable From | FTX Certificates GmbH | - | 49,518 | 49,518 |
| FTX Europe AG | Intercompany Receivable From | FTX Crypto Services Ltd. | - | 101,770 | 101,770 |
| FTX Europe AG | Intercompany Receivable From | FTX Derivatives GmbH | - | 698 | 698 |
| FTX Europe AG | Intercompany Receivable From | FTX Exchange FZE | - | 27,320 | 27,320 |
| FTX Europe AG | Intercompany Payable To | FTX General Partners AG | - | (24,862) | (24,862) |
| FTX Europe AG | Intercompany Payable To | FTX Structured Products AG | - | (42,594) | (42,594) |
| FTX Europe AG | Intercompany Receivable From | FTX Switzerland GmbH | - | 484,568 | 484,568 |
| FTX Europe AG | Intercompany Payable To | FTX Trading GmbH | - | (127,408) | (127,408) |
| FTX Europe AG | Intercompany Receivable From | FTX Trading Ltd. | - | 97,389,709 | 97,389,709 |
| FTX Exchange FZE | Intercompany Payable To | FTX Europe AG | - | (27,320) | (27,320) |
| FTX Exchange FZE | Intercompany Payable To | FTX Trading Ltd. | - | (526,154) | (526,154) |
| FTX Exchange FZE | Intercompany Payable To | West Realm Shires Inc. | - | (1,275) | (1,275) |
| FTX Japan Holdings K.K. | Intercompany Payable To | Alameda Research Ltd | (120,000,000) | (120,000,000) | - |
| FTX Japan Holdings K.K. | Intercompany Receivable From | FTX Japan K.K. | - | 3,928,679 | 3,928,679 |
| FTX Japan Holdings K.K. | Intercompany Receivable From | FTX Trading Ltd. | - | 236,522 | 236,522 |
| FTX Japan Holdings K.K. | Intercompany Receivable From | Quoine Pte Ltd | - | 18,857,960 | 18,857,960 |
| FTX Japan K.K. | Intercompany Payable To | Alameda Research LLC | - | (30,722,725) | (30,722,725) |
| FTX Japan K.K. | Intercompany Payable To | Alameda Research Ltd | - | (8,172,365) | (8,172,365) |
| FTX Japan K.K. | Intercompany Payable To | FTX Japan Holdings K.K. | - | (3,928,679) | (3,928,679) |
| FTX Japan K.K. | Intercompany Receivable From | FTX Japan Services KK | - | 9,426 | 9,426 |
| FTX Japan K.K. | Intercompany Payable To | FTX Trading Ltd. | - | (50,678,948) | (50,678,948) |
| FTX Japan K.K. | Intercompany Receivable From | Quoine Pte Ltd | - | 11,694,652 | 11,694,652 |
| FTX Japan K.K. | Intercompany Receivable From | Quoine Vietnam Co. Ltd | - | 20,197 | 20,197 |
| FTX Japan K.K. | Intercompany Payable To | West Realm Shires Inc. | - | (423) | (423) |

**FTX Trading LTD.,** *et al.*

**Case Number: 22-11068 (JTD)**

**(Jointly Administered)**

**Part 2, Question 4: Consolidated Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| Debtor | Petition Date Position | Intercompany Counterparty | 11/11/2021 Balance Receivable/ (Payable) | 11/11/2022 Balance Receivable/ (Payable) | Change in Balance |
|---|---|---|---|---|---|
| FTX Japan Services KK | Intercompany Payable To | FTX Japan K.K. | - | (9,426) | (9,426) |
| FTX Japan Services KK | Intercompany Payable To | FTX Trading Ltd. | - | (42,580) | (42,580) |
| FTX Japan Services KK | Intercompany Payable To | West Realm Shires Inc. | - | (423) | (423) |
| FTX Lend Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (40,894) | (40,894) |
| FTX Lend Inc. | Intercompany Payable To | West Realm Shires Services Inc. | - | (6,954) | (6,954) |
| FTX Marketplace, Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (580) | (580) |
| FTX Products (Singapore) Pte Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (2,481) | (2,481) |
| FTX Property Holdings Ltd | Intercompany Receivable From | FTX Digital Markets Ltd. | - | 693,333 | 693,333 |
| FTX Property Holdings Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (245,256,834) | (245,256,834) |
| FTX Property Holdings Ltd | Intercompany Payable To | West Realm Shires Inc. | - | (11,898) | (11,898) |
| FTX Structured Products AG | Intercompany Receivable From | FTX Europe AG | - | 42,594 | 42,594 |
| FTX Structured Products AG | Intercompany Receivable From | FTX Switzerland GmbH | - | 823 | 823 |
| FTX Switzerland GmbH | Intercompany Payable To | FTX EU Ltd. | - | (3,106,156) | (3,106,156) |
| FTX Switzerland GmbH | Intercompany Payable To | FTX Europe AG | - | (484,568) | (484,568) |
| FTX Switzerland GmbH | Intercompany Payable To | FTX Structured Products AG | - | (823) | (823) |
| FTX Switzerland GmbH | Intercompany Receivable From | FTX Trading Ltd. | - | 5,583,610 | 5,583,610 |
| FTX Trading GmbH | Intercompany Receivable From | FTX Europe AG | - | 127,408 | 127,408 |
| FTX Trading Ltd. | Intercompany Payable To | Alameda Research LLC | - | (18,065,952) | (18,065,952) |
| FTX Trading Ltd. | Intercompany Receivable From | Alameda Research Ltd | 12,046,644,225 | 9,533,702,880 | (2,512,941,345) |
| FTX Trading Ltd. | Intercompany Receivable From | Blockfolio, Inc. | - | 98,678,942 | 98,678,942 |
| FTX Trading Ltd. | Intercompany Payable To | Cottonwood Grove Ltd | - | (4,775,306) | (4,775,306) |
| FTX Trading Ltd. | Intercompany Payable To | Cottonwood Technologies Ltd | (7,001,606,974) | (430,458,661) | 6,571,148,313 |
| FTX Trading Ltd. | Intercompany Receivable From | Crypto Bahamas LLC | - | 1,000,000 | 1,000,000 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX (Gibraltar) Ltd | - | 260,504 | 260,504 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Australia Pty Ltd. | - | 397,189 | 397,189 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Digital Holdings (Singapore) Pte Ltd | - | 907,925 | 907,925 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Digital Markets Ltd. | - | 168,885,787 | 168,885,787 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Equity Record Holdings Ltd | - | 150 | 150 |
| FTX Trading Ltd. | Intercompany Payable To | FTX Europe AG | - | (97,389,709) | (97,389,709) |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Exchange FZE | - | 526,154 | 526,154 |
| FTX Trading Ltd. | Intercompany Payable To | FTX Japan Holdings K.K. | - | (236,522) | (236,522) |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Japan K.K. | - | 50,678,948 | 50,678,948 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Japan Services KK | - | 42,580 | 42,580 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Products (Singapore) Pte Ltd | - | 2,481 | 2,481 |
| FTX Trading Ltd. | Intercompany Receivable From | FTX Property Holdings Ltd | - | 245,256,834 | 245,256,834 |
| FTX Trading Ltd. | Intercompany Payable To | FTX Switzerland GmbH | - | (5,583,610) | (5,583,610) |
| FTX Trading Ltd. | Intercompany Payable To | FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | - | (11,527,222) | (11,527,222) |
| FTX Trading Ltd. | Intercompany Receivable From | GG Trading Terminal Ltd | - | 10,740 | 10,740 |
| FTX Trading Ltd. | Intercompany Receivable From | Innovatia Ltd | - | 8,592 | 8,592 |
| FTX Trading Ltd. | Intercompany Payable To | LedgerPrime Digital Asset Opportunities Master Fund LP | (26,460,626) | (37,309,492) | (10,848,866) |
| FTX Trading Ltd. | Intercompany Receivable From | LedgerX LLC | - | 1,895 | 1,895 |
| FTX Trading Ltd. | Intercompany Payable To | Maclaurin Investments Ltd. | (5,491,792,446) | (159,723,784) | 5,332,068,662 |
| FTX Trading Ltd. | Intercompany Payable To | Paper Bird Inc | - | (116,333,832) | (116,333,832) |
| FTX Trading Ltd. | Intercompany Payable To | Quoine Pte Ltd | - | (20,202,088) | (20,202,088) |
| FTX Trading Ltd. | Intercompany Receivable From | West Realm Shires Inc. | (195,527) | 79,330,077 | 79,525,604 |
| FTX Trading Ltd. | Intercompany Receivable From | West Realm Shires Services Inc. | (11,495,274) | 33,426,651 | 44,921,925 |

**FTX Trading LTD.,** *et al.*

**Part 2, Question 4: Consolidated Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| Debtor | Petition Date Position | Intercompany Counterparty | 11/11/2021 Balance Receivable/ (Payable) | 11/11/2022 Balance Receivable/ (Payable) | Change in Balance |
|---|---|---|---|---|---|
| FTX Trading Ltd. | Intercompany Payable To | Zubr Exchange Ltd | - | (88,343) | (88,343) |
| FTX US Services, Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (846) | (846) |
| FTX US Trading, Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (764) | (764) |
| FTX Ventures Ltd. | Intercompany Payable To | Alameda Research Ltd | - | (118,697,200) | (118,697,200) |
| FTX Ventures Ltd. | Intercompany Payable To | Clifton Bay Investments LLC | - | (200,000) | (200,000) |
| FTX Ventures Ltd. | Intercompany Payable To | Paper Bird Inc | - | (390,649,279) | (390,649,279) |
| FTX Ventures Ltd. | Intercompany Payable To | West Realm Shires Inc. | - | (9,110) | (9,110) |
| GG Trading Terminal Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (10,740) | (10,740) |
| GG Trading Terminal Ltd | Intercompany Payable To | West Realm Shires Inc. | - | (2,919) | (2,919) |
| Good Luck Games, LLC | Intercompany Payable To | West Realm Shires Inc. | - | (4,377) | (4,377) |
| Good Luck Games, LLC | Intercompany Payable To | West Realm Shires Services Inc. | - | (8,098,614) | (8,098,614) |
| Goodman Investments Ltd. | Intercompany Payable To | Alameda Research Ltd | - | (250,000,000) | (250,000,000) |
| Hawaii Digital Assets Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (30,157) | (30,157) |
| Hilltop Technology Services LLC | Intercompany Payable To | West Realm Shires Inc. | - | (4,215) | (4,215) |
| Innovatia Ltd | Intercompany Payable To | FTX Trading Ltd. | - | (8,592) | (8,592) |
| Innovatia Ltd | Intercompany Payable To | West Realm Shires Inc. | - | (3,362) | (3,362) |
| Innovatia Ltd | Intercompany Receivable From | Zubr Exchange Ltd | - | 9,872 | 9,872 |
| Island Bay Ventures Inc | Intercompany Payable To | Alameda Research Ltd | (800,000) | (800,000) | - |
| Island Bay Ventures Inc | Intercompany Payable To | Clifton Bay Investments LLC | - | (44,999,000) | (44,999,000) |
| Island Bay Ventures Inc | Intercompany Payable To | Paper Bird Inc | - | (5,999,999) | (5,999,999) |
| Island Bay Ventures Inc | Intercompany Payable To | West Realm Shires Inc. | - | (108) | (108) |
| Ledger Holdings Inc. | Intercompany Receivable From | LedgerPrime LLC | - | 276,368 | 276,368 |
| Ledger Holdings Inc. | Intercompany Receivable From | LedgerX LLC | - | 3,266,970 | 3,266,970 |
| Ledger Holdings Inc. | Intercompany Receivable From | West Realm Shires Services Inc. | - | 538 | 538 |
| LedgerPrime Digital Asset Opportunities Fund, LLC | Intercompany Receivable From | LedgerPrime Digital Asset Opportunities Master Fund LP | - | 3,115,162 | 3,115,162 |
| LedgerPrime Digital Asset Opportunities Master Fund LP | Intercompany Receivable From | FTX Trading Ltd. | 26,460,626 | 37,309,492 | 10,848,866 |
| LedgerPrime Digital Asset Opportunities Master Fund LP | Intercompany Payable To | LedgerPrime Digital Asset Opportunities Fund, LLC | - | (3,115,162) | (3,115,162) |
| LedgerPrime LLC | Intercompany Payable To | Ledger Holdings Inc. | - | (276,368) | (276,368) |
| LedgerPrime LLC | Intercompany Receivable From | LedgerX LLC | - | 1,927 | 1,927 |
| Maclaurin Investments Ltd. | Intercompany Payable To | Alameda Research LLC | - | (37,000,000) | (37,000,000) |
| Maclaurin Investments Ltd. | Intercompany Payable To | Alameda Research Ltd | (358,770,775) | (1,300,980,549) | (942,209,774) |
| Maclaurin Investments Ltd. | Intercompany Receivable From | Clifton Bay Investments LLC | (750,015) | 16,648,988 | 17,399,003 |
| Maclaurin Investments Ltd. | Intercompany Receivable From | FTX Trading Ltd. | 5,491,792,446 | 159,723,784 | (5,332,068,662) |
| Maclaurin Investments Ltd. | Intercompany Payable To | West Realm Shires Inc. | - | (1,990,276) | (1,990,276) |
| Maclaurin Investments Ltd. | Intercompany Receivable From | West Realm Shires Services Inc. | 272 | 399,711 | 399,439 |
| North Dimension Inc | Intercompany Payable To | Alameda Research LLC | (92,731,667) | (135,731,667) | (43,000,000) |
| North Dimension Inc | Intercompany Payable To | Alameda Research Ltd | 857,333,351 | (91,498,512) | (948,831,863) |
| North Dimension Inc | Intercompany Payable To | West Realm Shires Inc. | - | (2,251) | (2,251) |
| North Dimension Inc | Intercompany Receivable From | West Realm Shires Services Inc. | - | 1,168,569 | 1,168,569 |
| North Wireless Dimension Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (1,750) | (1,750) |
| Paper Bird Inc | Intercompany Payable To | Alameda Research LLC | (18,000,000) | (18,000,000) | - |
| Paper Bird Inc | Intercompany Payable To | Alameda Research Ltd | (2,329,354,283) | (2,588,886,041) | (259,531,758) |
| Paper Bird Inc | Intercompany Receivable From | FTX Trading Ltd. | - | 116,333,832 | 116,333,832 |
| Paper Bird Inc | Intercompany Receivable From | FTX Ventures Ltd. | - | 390,649,279 | 390,649,279 |
| Paper Bird Inc | Intercompany Receivable From | Island Bay Ventures Inc | - | 5,999,999 | 5,999,999 |
| Paper Bird Inc | Intercompany Payable To | West Realm Shires Inc. | - | (29,710,572) | (29,710,572) |

**FTX Trading LTD.,** *et al.*

**Part 2, Question 4: Consolidated Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| Debtor | Petition Date Position | Intercompany Counterparty | 11/11/2021 Balance Receivable/ (Payable) | 11/11/2022 Balance Receivable/ (Payable) | Change in Balance |
|---|---|---|---|---|---|
| Paper Bird Inc | Intercompany Receivable From | West Realm Shires Services Inc. | - | 19,349,492 | 19,349,492 |
| Quoine India Pte Ltd | Intercompany Payable To | Quoine Pte Ltd | - | (3,176,957) | (3,176,957) |
| Quoine Pte Ltd | Intercompany Payable To | Alameda Research Ltd | - | (16,902,883) | (16,902,883) |
| Quoine Pte Ltd | Intercompany Payable To | FTX Digital Holdings (Singapore) Pte Ltd | - | (259,815) | (259,815) |
| Quoine Pte Ltd | Intercompany Payable To | FTX Japan Holdings K.K. | - | (18,857,960) | (18,857,960) |
| Quoine Pte Ltd | Intercompany Payable To | FTX Japan K.K. | - | (11,694,652) | (11,694,652) |
| Quoine Pte Ltd | Intercompany Receivable From | FTX Trading Ltd. | - | 20,202,088 | 20,202,088 |
| Quoine Pte Ltd | Intercompany Receivable From | Quoine India Pte Ltd | - | 3,176,957 | 3,176,957 |
| Quoine Pte Ltd | Intercompany Receivable From | Quoine Vietnam Co. Ltd | - | 273,668 | 273,668 |
| Quoine Vietnam Co. Ltd | Intercompany Payable To | FTX Japan K.K. | - | (20,197) | (20,197) |
| Quoine Vietnam Co. Ltd | Intercompany Payable To | Quoine Pte Ltd | - | (273,668) | (273,668) |
| Verdant Canyon Capital LLC | Intercompany Payable To | West Realm Shires Inc. | - | (400) | (400) |
| West Realm Shires Financial Services Inc. | Intercompany Receivable From | FTX Capital Markets LLC | - | 184,500 | 184,500 |
| West Realm Shires Financial Services Inc. | Intercompany Receivable From | FTX Digital Assets LLC | - | 500,000 | 500,000 |
| West Realm Shires Financial Services Inc. | Intercompany Payable To | West Realm Shires Inc. | - | (563,947) | (563,947) |
| West Realm Shires Financial Services Inc. | Intercompany Payable To | West Realm Shires Services Inc. | - | (184,500) | (184,500) |
| West Realm Shires Inc. | Intercompany Receivable From | Alameda Research Holdings Inc. | - | 7,381 | 7,381 |
| West Realm Shires Inc. | Intercompany Receivable From | Alameda Research LLC | - | 192,476 | 192,476 |
| West Realm Shires Inc. | Intercompany Receivable From | Alameda Research Ltd | - | 16,500 | 16,500 |
| West Realm Shires Inc. | Intercompany Receivable From | Blockfolio, Inc. | (215) | 4,574 | 4,789 |
| West Realm Shires Inc. | Intercompany Receivable From | Clifton Bay Investments LLC | - | 46,083 | 46,083 |
| West Realm Shires Inc. | Intercompany Receivable From | Cottonwood Technologies Ltd | - | 569 | 569 |
| West Realm Shires Inc. | Intercompany Receivable From | Crypto Bahamas LLC | - | 569 | 569 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Digital Markets Ltd. | - | 30,397 | 30,397 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Exchange FZE | - | 1,275 | 1,275 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Japan K.K. | - | 423 | 423 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Japan Services KK | - | 423 | 423 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Lend Inc. | - | 40,894 | 40,894 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Marketplace, Inc. | - | 580 | 580 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Property Holdings Ltd | - | 11,898 | 11,898 |
| West Realm Shires Inc. | Intercompany Payable To | FTX Trading Ltd. | 195,527 | (79,330,077) | (79,525,604) |
| West Realm Shires Inc. | Intercompany Receivable From | FTX US Services, Inc. | - | 846 | 846 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX US Trading, Inc. | - | 764 | 764 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Vault Trust Company | - | 2,128 | 2,128 |
| West Realm Shires Inc. | Intercompany Receivable From | FTX Ventures Ltd. | - | 9,110 | 9,110 |
| West Realm Shires Inc. | Intercompany Receivable From | GG Trading Terminal Ltd | - | 2,919 | 2,919 |
| West Realm Shires Inc. | Intercompany Receivable From | Good Luck Games, LLC | - | 4,377 | 4,377 |
| West Realm Shires Inc. | Intercompany Receivable From | Hawaii Digital Assets Inc. | - | 30,157 | 30,157 |
| West Realm Shires Inc. | Intercompany Receivable From | Hilltop Technology Services LLC | - | 4,215 | 4,215 |
| West Realm Shires Inc. | Intercompany Receivable From | Innovatia Ltd | - | 3,362 | 3,362 |
| West Realm Shires Inc. | Intercompany Receivable From | Island Bay Ventures Inc | - | 108 | 108 |
| West Realm Shires Inc. | Intercompany Receivable From | Maclaurin Investments Ltd. | - | 1,990,276 | 1,990,276 |
| West Realm Shires Inc. | Intercompany Receivable From | North Dimension Inc | - | 2,251 | 2,251 |
| West Realm Shires Inc. | Intercompany Receivable From | North Wireless Dimension Inc. | - | 1,750 | 1,750 |
| West Realm Shires Inc. | Intercompany Receivable From | Paper Bird Inc | - | 29,710,572 | 29,710,572 |
| West Realm Shires Inc. | Intercompany Receivable From | Verdant Canyon Capital LLC | - | 400 | 400 |

**FTX Trading LTD.,** *et al.*

**Case Number: 22-11068 (JTD)**

**(Jointly Administered)**

**Part 2, Question 4: Consolidated Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

| Debtor | Petition Date Position | Intercompany Counterparty | 11/11/2021 Balance Receivable/ (Payable) | 11/11/2022 Balance Receivable/ (Payable) | Change in Balance |
|---|---|---|---|---|---|
| West Realm Shires Inc. | Intercompany Receivable From | West Realm Shires Financial Services Inc. | - | 563,947 | 563,947 |
| West Realm Shires Inc. | Intercompany Receivable From | West Realm Shires Services Inc. | (1,944,647) | 91,365,693 | 93,310,340 |
| West Realm Shires Inc. | Intercompany Receivable From | Zubr Exchange Ltd | - | 157 | 157 |
| West Realm Shires Services Inc. | Intercompany Payable To | Alameda Research LLC | - | (22,481,706) | (22,481,706) |
| West Realm Shires Services Inc. | Intercompany Payable To | Alameda Research Ltd | (772,852,042) | (138,853,864) | 633,998,178 |
| West Realm Shires Services Inc. | Intercompany Payable To | Blockfolio, Inc. | (8,761,340) | 37,267,771 | 46,029,111 |
| West Realm Shires Services Inc. | Intercompany Receivable From | Clifton Bay Investments LLC | 2,250,000 | 2,250,000 | - |
| West Realm Shires Services Inc. | Intercompany Payable To | Cottonwood Grove Ltd | - | (68,056) | (68,056) |
| West Realm Shires Services Inc. | Intercompany Payable To | FTX Capital Markets LLC | - | (113,900) | (113,900) |
| West Realm Shires Services Inc. | Intercompany Receivable From | FTX Lend Inc. | - | 6,954 | 6,954 |
| West Realm Shires Services Inc. | Intercompany Payable To | FTX Trading Ltd. | 11,495,274 | (33,426,651) | (44,921,925) |
| West Realm Shires Services Inc. | Intercompany Receivable From | Good Luck Games, LLC | - | 8,098,614 | 8,098,614 |
| West Realm Shires Services Inc. | Intercompany Payable To | Ledger Holdings Inc. | - | (538) | (538) |
| West Realm Shires Services Inc. | Intercompany Receivable From | LedgerX LLC | 26,500 | 366,359 | 339,859 |
| West Realm Shires Services Inc. | Intercompany Payable To | Maclaurin Investments Ltd. | (272) | (399,711) | (399,439) |
| West Realm Shires Services Inc. | Intercompany Payable To | North Dimension Inc | - | (1,168,569) | (1,168,569) |
| West Realm Shires Services Inc. | Intercompany Payable To | Paper Bird Inc | - | (19,349,492) | (19,349,492) |
| West Realm Shires Services Inc. | Intercompany Receivable From | West Realm Shires Financial Services Inc. | - | 184,500 | 184,500 |
| West Realm Shires Services Inc. | Intercompany Payable To | West Realm Shires Inc. | 1,944,647 | (91,365,693) | (93,310,340) |
| Zubr Exchange Ltd | Intercompany Receivable From | FTX Trading Ltd. | - | 88,343 | 88,343 |
| Zubr Exchange Ltd | Intercompany Payable To | Innovatia Ltd | - | (9,872) | (9,872) |
| Zubr Exchange Ltd | Intercompany Payable To | West Realm Shires Inc. | - | (157) | (157) |

Debtor Name:  LedgerPrime LLC                                                                                      Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| N/A | N/A | Employment Tax Audit (calendar 2020-2022) | Department of the Treasury/Internal Revenue Service 1352 Marrows Road, Ste 204 Newark, DE 19711-5445 | Pending |

Debtor Name:  LedgerPrime LLC                                                                                    Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 14:** Previous addresses

| Previous Address | From Date | To Date |
|---|---|---|
| 1110 Brickell Ave, Suite 430k-200<br>Mami, FL 33131 United States | 10/01/2022 | Unknown |
| 12 East 49th St, Suite 15-106<br>New York, NY 10017 United States | Unknown | Unknown |
| 54 West 40th St, Suite 630<br>New York, NY 10018 United States | Unknown | Unknown |
| 54 West 40th St, Suite 628<br>New York, NY 10018 United States | Unknown | Unknown |
| 54 West 40th St, Suite 632<br>New York, NY 10018 United States | Unknown | Unknown |
| 152 Madison Ave, Fl 21<br>New York, NY 10016 United States | Unknown | Unknown |

Debtor Name:  LedgerPrime LLC                                                                                              Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 28:** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position | % Interest |
|------|---------|----------|-----------|
| ALAMEDA RESEARCH LLC | 3500 SOUTH DUPONT HIGHWAY DOVER, DE 19901 | Sole Shareholder | 100% |

Debtor Name:  LedgerPrime LLC

Case Number:  22-11158 (JTD)

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 29:** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

| Name | Address | Position | Start | End |
|---|---|---|---|---|
| LEDGERX LLC | 1110 BRICKELL AVE SUITE 430K-200 MIAMI, FL 33131 | Controlling Shareholder | 09/15/2015 | 10/01/2022 |
| WEST REALM SHIRES INC. | 167 N GREEN STREET SUITE 1102 CHICAGO, IL 60607 | Controlling Shareholder | 10/01/2022 | 10/01/2022 |