**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. Nos. 1644, 1645, 1647, 1648, 1649, 1650, 1651, 1653** |
| | **Hearing Date: September 13, 2023, at 1:00 p.m. ET** |

**FEE EXAMINER'S SUMMARY REPORT**
**ON FEE REVIEW PROCESS AND SECOND INTERIM FEE APPLICATIONS**
**SCHEDULED FOR UNCONTESTED HEARING ON SEPTEMBER 13, 2023**

TO:    THE HONORABLE JOHN T. DORSEY
       UNITED STATES BANKRUPTCY JUDGE:

The Fee Examiner appointed in the above-captioned chapter 11 cases (the "Fee Examiner") submits this summary report (the "Report") pursuant to the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834] (the "Fee Examiner Order") to advise the Court on the status of the fee review process and to recommend the Court's approval of the fees and expenses outlined on the attached **Exhibit A** on an *interim* basis, as discussed in detail below. Some of the fees requested by the Retained Professionals[2] (the "Applicants") have been adjusted with their consent. Most, however, are subject to enumerated concerns and potential objections to be addressed at a later stage of these proceedings. For several applications, the Retained Professionals are working on responses to the Fee Examiner's inquiries or are still gathering

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryon's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined shall have the meanings set forth in the Fee Examiner Order.

supplemental materials to inform continued negotiations.  The Fee Examiner asks the Court to

defer these applications, listed on **Exhibit B**, either for the Court's consideration at a December

uncontested fee hearing, or at a contested fee hearing separately scheduled for that purpose.

## INTRODUCTION

The "Second Interim Fee Period" (February 1, 2023 - April 30, 2023) marked a transition

from the chaotic first days and weeks of this case to a more measured—though still intensive—

cadence.  By the end of the fee period, "the situation [had] been stabilized and the dumpster fire

[was] out…"  Tr. 6:25–7:l, Apr. 13, 2023.

As noted in the *Fee Examiner's Summary Report on Fee Review Process and First

Interim Fee Applications Scheduled for Uncontested Hearing on June 28, 2023* [D.I. 1663] (the

"First Report"), the Bankruptcy Code "clearly contemplates that widespread wholesale

adjustments to fees may not be appropriate at the interim compensation phase.  Interim fees

awarded pursuant to section 331 are always subject to later adjustment in the final section 330

analysis."  First Report at 4.  While this Report incorporates all of the First Report's comments

and observations by reference, this particular tenet of the bankruptcy fee process bears repetition

and emphasis.

Professional fees in this and other headline Chapter 11 cases always draw special

attention and scrutiny.  The harshest commentary often comes from stakeholders and observers

not familiar with the law and policy underpinning sections 330 and 331 of the Bankruptcy Code.

It is hoped that the brief exposition here might facilitate a more nuanced appreciation of the

doctrines underlying Chapter 11 professional fees and the procedures by which the Court

reviews and approves them.

**Origins of the Bankruptcy Code**

The Bankruptcy Code, 11 U.S.C. § 101-1532, (the "Code") is not yet 50 years old. Enacted in 1978, the Code supplanted the Bankruptcy Act of 1898, codifying the principles and events that play out daily in this and other bankruptcy courts.[3]  The Code clarified and incorporated some of the Act's provisions—themselves descendants of debtor-creditor principles developed under Henry VIII. *See* Charles Jordan Tabb, *The History of the Bankruptcy Laws in the United States*, 3 Am. Bankr. Inst. L. Rev. 5, 6-7 (1995).  Bankruptcy law enthusiasts find the evolution of the Code from the 1500s to today endlessly fascinating, but for purposes of this Report, two signal events are noteworthy.

First, the Code abolished the Act's emphasis on "economy of the estate" as the proper measure of professional compensation in bankruptcy.  *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850–51 (3d Cir. 1994),[4] *see also*, 3 *Collier on Bankruptcy* ¶330.03[2] (Richard Levin & Henry J. Sommer, eds., 16th ed. 2023).  For many reasons, including a desire to draw skilled professionals to implement and develop the law under the new Code, its drafters adopted a market-based approach to professional compensation.  *Busy Beaver*, 19 F.3d at 848.  The Code thus permits bankruptcy professionals to be paid reasonable fees "based on the customary compensation charged by comparably skilled practitioners in [non-bankruptcy] cases."  11 U.S.C. § 330(a)(3)(F).  In short, the notion that the reasonableness of professional fees in bankruptcy should be measured largely, if not solely, by their "economy" has not been the law since 1978.

---

[3] Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978).

[4] Of all the authorities cited in this report, the Fee Examiner recommends that anyone interested in professional fees in Chapter 11 cases read *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994).  Though quaint in some respects ("Perhaps the bankruptcy courts should consider requiring professionals submitting lengthy fee applications to submit them also on a computer disk…."), *id.* at 845 n.12, it presents a thorough, not-too-technical discussion of the history and policy summarized in this report and remains the seminal authority on Chapter 11 bankruptcy fees in the Third Circuit.

Second, the Code included a provision—section 331—that standardized the practice of allowing professionals to be paid periodically throughout a bankruptcy proceeding rather than deferring all compensation issues to the end of the case.  "Otherwise, bankruptcy professionals would effectively be forced to finance the administration of a bankruptcy case while professionals in most non-bankruptcy areas do not suffer equivalent hardship." 3 *Collier on Bankruptcy* ¶ 331.01.[5]  The combination of these two principles—*i.e.*, market-based compensation paid at regular interim intervals—are the foundation of the fee review process.

### *Judicial Review of Professional Fees in Chapter 11*

The ultimate "decider" on the reasonableness of bankruptcy fees is, and always has been, the judge. *Busy Beaver*, 19 F.3d at 841.[6]  Notwithstanding the Court's duty, time spent reviewing fee applications is a drain on judicial resources even in a garden variety Chapter 11 case.[7]  In cases like this one, it would be nearly impossible for a judge or their staff to carry the full burden of reviewing fee applications amid the myriad other demands on their time.  *Busy Beaver,* 19 F.3d at 845 ("we 'do not intend that a … [bankruptcy] court … become enmeshed in a meticulous analysis of every detailed facet of the professional representation.'") (citation omitted).

In large or complex cases like this one, bankruptcy courts sometimes delegate to a Fee Examiner the authority to *review* and *advise* on fee matters—though the ultimate authority to

---

[5] *See* 3 *Collier on Bankruptcy* ¶ 330.01 n.4 (citing *In re Com. Fin. Servs., Inc.*, 231 B.R. 351, 354 (Bankr. N.D. Okla. 1999)) ("It is clear that Section 331 was intended to alleviate the unwarranted financial burden on professionals that occurs when judicial scrutiny, allowance, and payment of fee applications is withheld until the conclusion of the case, as contemplated by Section 330.")

[6] *Busy Beaver*, 19 F.3d at 841 (citing *In re Evans*, 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993) ("Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.").

[7] "We also think it not befitting the stature of a federal bankruptcy judge to spend wasteful hours poring over fee applications to tabulate and cross-reference unorganized billing statements…." *Busy Beaver,* 19 F.3d at 845 n.-12.

4

allow or disallow professional fees remains solely with the court.  The Fee Examiner's job is to delve into professional fee applications in a detailed, methodical way; to identify areas where professional fee requests may not meet the requirements for Court approval; and to suggest to the Court adjustments or disallowances that, in the Fee Examiner's view, bring the fees requested into compliance with the Code.

"[T]his Court has followed a two-tiered test to determine whether compensation should be allowed.  'First the court must be satisfied that the attorney performed *actual and necessary services*.  Second, the court must assess a *reasonable value* for those services.'" *In re APW Enclosure Sys., Inc.*, No. 06-11378, 2007 WL 3112414, at *3 (Bankr. D. Del. Oct. 23, 2007) (quoting *In re Fleming Cos.*, 304 B.R. 85, 90 (Bankr. D. Del. 2003)).  The actual and necessary test asks whether a benefit to the estate was likely at the time the services were performed. 3 *Collier on Bankruptcy* ¶ 330.03[1][b]; *see also APW Enclosure Sys.*, 2007 WL 3112414, at *5. In contrast, the second tier of the analysis—"the evaluation of the attorney's performance, *i.e.* the quality of representation, must be done in hindsight."  *APW Enclosure Sys.*, 2007 WL 3112414, at *4.

### *Professional Fees in the FTX Cases*

For the Second Interim Fee Period, the Fee Examiner has identified some billing issues that lend themselves to resolution on an interim basis.  Double-billed time entries, application of incorrect hourly rates, errors in billing (writing down 12 hours instead of 1.2, for example), and problematic expenses (first class air fare, hotel rooms over the applicable cap, cell phone bills) are easy to quantify, tally, and adjust every three months.  For issues like these, future case developments are irrelevant.

Other fee issues are not so easily quantified, especially in a case as large and complex as this one.  For example, the Fee Examiner regularly identifies and recommends adjustments on questions of staffing, time spent on specific projects, attendance at hearings or meetings, hourly rate increases, and other similar subjective categories.  But "reasonableness" is necessarily a broad spectrum—particularly with respect to these more qualitative issues—and most such issues are subject to multiple interpretations.  Even with supplemental explanation and documentation, the Fee Examiner cannot always decipher the reasonableness or necessity of a particular workstream or project within a narrow three-month slice of time.  In some instances, a fuller appreciation of the work in the context of the case as a whole may change the Fee Examiner's view over time.  As such, discussions with professionals not infrequently result in an "agree-to-disagree" posture on individual issues, at which point the Fee Examiner often proposes to defer a recommendation to the Court until a later stage in the case.

Retained Professionals generally do not embrace this notion.  Reasonableness, they argue, is measured at the time services are rendered, not in hindsight.  *In re Team Sys. Int'l, LLC,* No. 22-10066, 2023 WL 5280562, at *3 n.14 (Bankr. D. Del. Aug. 16, 2023) (citing *In re Mushroom Transp. Co.*, 486 B.R. 148, 163–64 (Bankr. E.D. Pa. 2013)).  The Fee Examiner does not dispute this proposition.  It does not follow, however, that any and all retrospective analysis is unfounded or that that most fee objections and resolutions should happen at the interim compensation stage.  Indeed, a subjective evaluation of the reasonable value of a professional's services "must be done in hindsight."  *APW Enclosure Sys.*, 2007 WL 3112414, at *4.

A salient example is time spent by an official committee to develop and draft a competing plan of reorganization.  Where such a plan is developed purely as a "leveraging tactic," a court may disallow the associated fees.  3 *Collier on Bankruptcy* ¶ 330.03[1][b][iv],

(citing *In re Thrifty Oil Co.*, 205 B.R. 1009, 1020 (Bankr. S.D. Cal. 1997)).  Many similar

qualitative determinations could be more appropriate at the case's conclusion.  *See, e.g.*, *Zolfo,*

*Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 259 n.4 (3d Cir. 1995) (citing *Gusman v.*

*Unisys Corp.*, 986 F.2d 1146, 1150–51 (7th Cir. 1993) ("A judge might conclude that the plaintiff

did not need top-flight counsel in a no-brainer case."); *Ursic v. Bethlehem Mines*, 719 F.2d 670,

677 (3d Cir. 1983) ("A Michelangelo should not charge Sistine Chapel rates for painting a

farmer's barn.")).

Ultimately, with each discrete fee issue identified, the Fee Examiner has four options at

the interim compensation stage:

1. Recommend that the Court disallow the questioned fees entirely;

2. Recommend that the Court allow the fees with an adjustment that—in the Fee
   Examiner's view—adequately remedies the problem or deficiency;

3. Recommend allowance subject to an issue-specific interim holdback amount, which
   may later be recommended for release (or partial release), thus allowing for a full
   contextual analysis; or

4. Continue to consider the issue as in option three, but without a specific holdback.

Option one might sound straightforward, but it isn't.  Professionals are entitled to a full

evidentiary hearing on disputed fee issues.  *In re Top Grade Sausage, Inc.*, 227 F.3d 123 (3d Cir.

2000).  Depending on the issues at hand, such a hearing may overwhelm an already "swollen"

calendar.  *Busy Beaver,* 19 F.3d at 846.  It is simply not feasible to "hit pause" on a case like this

one every three months, divert the professionals' and the Court's time and attention to a

contested hearing, and air all fee issues on a real-time basis as they arise.

Even if feasible, the Fee Examiner disfavors contested interim fee proceedings for at least two compelling reasons.  First, the Fee Examiner's view could change, either as a result of subsequent case events or a retrospective comparison to time spent by other professionals on similar tasks.  The Fee Examiner may not appreciate the full import of a task or workstream until multiple fee periods later, making the effort of an interim dispute a waste of time and expense.  Second, Supreme Court precedent prohibits professionals from being paid for work performed defending their own fees in a contested proceeding.  *Baker Botts, L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015).  Even if a professional "wins" a fee dispute, they lose the ability to be compensated for the work—a bad outcome for everyone.

The Fee Examiner strongly considered option three—recommending issue-specific holdbacks.  A primary objective of holdbacks, however, is "to ensure that the professional will be able to return any money not finally awarded by the court."  3 *Collier on Bankruptcy* ¶ 331.02[6][b].  All of the professionals working on these cases are highly respected, long-standing participants in complex Chapter 11 cases.  These professionals fully appreciate that fees awarded on an interim basis "are subject to reconsideration at any time prior to the final award, for any reason."  Id. ¶ 331.04[3] & n.10, (citing *In re Toms*, 229 B.R. 646, 656 (Bankr. E.D. Pa. 1999)) (noting that an interim award is subject to modification based upon circumstances which may later arise).  Moreover, the process of negotiating an appropriate holdback could, itself, devolve into stalemate—merely compounding the problem the holdbacks were designed to remedy.

For some Retained Professionals, this Report elects option two—recommending allowance with adjustments.  For them, the resolutions outlined on **<u>Exhibit A</u>** adequately address all of the professional's identified fee issues—generally quantitative issues on which further discussion would unlikely shed light.  Most Retained Professionals would prefer all issues to be

resolved in this manner, but that is not always the best option.  In some instances, the most prudent course is option four:  reserve some issues for consideration—and potential disallowance—at a later date, but without a specific holdback amount at the interim stage.  Many of the recommendations in this Report incorporate such "Reserved Issues," representing significant qualitative concerns that require a longer view than a three-month period provides.

Deferring consideration of potentially contested fee issues until the end of the case makes good sense both practically and as a matter of law.  With a Plan of Reorganization on file and mediation contemplated to address complex outstanding disputes, the case is at a crucial juncture and may be on track to conclude in the second quarter of 2024. *See Notice of Filing Hearing Presentation* [D.I. 2244] at 6.  The Fee Examiner fully expects to revisit the Reserved Issues at an appropriate time, relying on the Code's protections to reserve all rights to object or recommend further fee adjustments.  This approach balances the professionals' and the Court's need for notice of potentially problematic fees with the practical hope of avoiding the distraction and diversion of resources that contested proceedings would require.

### FEE REVIEW PROCESS FOR THE SECOND INTERIM FEE PERIOD

1.      Most Applicants filed applications for the Second Interim Fee Period on or around June 15, 2023, and began submitting fee and expense data pursuant to the Fee Protocol.

2.      The fee review process followed the same procedures articulated in the First Report, incorporated by reference and not repeated here.

### UNCONTESTED APPLICATIONS RECOMMENDED FOR INTERIM COURT APPROVAL WITH ADJUSTMENTS AND RESERVATIONS OF RIGHTS

#### DEBTOR PROFESSIONALS

*Sullivan & Cromwell LLP*

3.      On June 15, 2023, Sullivan & Cromwell LLP ("S&C") filed the *Second Interim*

*Fee Application of Sullivan & Cromwell LLP* for the Period from February 1, 2023 through April 30, 2023 [D.I. 1647] (the "S&C Second Fee Application"), seeking $37,492,869.60 in fees and $184,400.94 in expenses.

4.      During the Second Interim Fee Period, S&C advised the Debtors on a wide variety of complex matters, including continuing to stabilize the Debtors' business operations while in Chapter 11.  S&C also advised the debtors on contested matters and adversary proceedings, conducted internal investigations, and prepared and filed numerous pleadings.

5.      The Fee Examiner again identified a number of areas of concern, including possible overstaffing, apparently excessive meeting and hearing attendance, and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries).  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns, with one Reserved Issue:  the hours and fees devoted to avoidance actions.  With that express reservation, the Fee Examiner now recommends Court approval of the S&C Second Fee Application, subject to the Reserved Issue and as adjusted and outlined on **Exhibit A**.

***Alvarez & Marsal North America, LLC***

*6.*      On June 15, 2023, Alvarez & Marsal North America, LLC ("A&M") filed the *Second Interim Fee Application of Alvarez & Marsal North America, LLC* [D.I. 1645] for the period from February 1, 2023 through April 30**,** 2023 (the "A&M Second Fee Application"), seeking $35,911,779.00 in fees and $1,103,726.94 in expenses.

7.      During the Second Interim Fee Period, A&M assisted the Debtors with their business operations, the identification and recovery of assets, the continued development of accounting records and reporting procedures, the preparation of statements and schedules, the

evaluation of potential preference and avoidance actions, and the development of operational restructuring strategies.

8.       The Fee Examiner identified apparently inefficient staffing, apparently excessive meeting attendance, fees related to non-working travel time, and various technical and procedural deficiencies with respect to some time entries (including vague and lumped entries). After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns, with no Reserved Issues.  The Fee Examiner recommends the approval of the A&M Second Fee Application as adjusted and outlined on **Exhibit A**.

*AlixPartners, LLP*

9.       On June 15, 2023, AlixPartners, LLP ("AlixPartners") filed the *Second Interim Fee Application of AlixPartners, LLP, Forensic Investigation Consultant to the Chapter 11 Debtors and Debtors-In-Possession, for Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred for the Period from February 1, 2023 through April 30, 2023* [D.I. 1644] (the "AlixPartners Second Fee Application"), seeking $12,298,421.00 in fees and $121,201.07 in expenses.

10.     As the Debtors' forensic investigation consultant, AlixPartners continued its forensic analysis of financial and accounting data, trading records, and other associated data, the review and analysis of Debtors' historical organizational documents, policies and procedures, and the collection and structuring of financial and accounting data in order to construct historical quarterly financial data.

11.     The Fee Examiner identified a number of areas of concern, including time devoted to fee applications and potentially routine timekeeping tasks, possible overstaffing,

apparently excessive meeting attendance, and fees related to non-working travel time.  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns with no Reserved Issues.  The Fee Examiner is satisfied that the agreed adjustments adequately address all identified issues and now recommends Court approval of the AlixPartners Second Fee Application, as adjusted and outlined on **Exhibit A**.

*Quinn Emanuel Urquhart & Sullivan, LLP*

12.     On June 15, 2023, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") filed the *Second Interim Fee Application of Quinn Emanuel Urquhart & Sullivan, LLP* [D.I. 1648] for the period from February 1, 2023 through April 30, 2023 (the "Quinn Emanuel Second Fee Application"), seeking $8,256,186.00 in fees and $8,994.69 in expenses.

13.     As special counsel to the Debtors, Quinn Emanuel assisted the Debtors with investigations into business operations, asset analysis and recovery, avoidance action analysis, and bankruptcy litigation during the Second Interim Fee Period.

14.     The Fee Examiner identified a number of areas of concern, including time devoted to fee applications and potentially routine timekeeping tasks, possible overstaffing, apparently excessive meeting or hearing attendance, and various technical and procedural deficiencies with respect to certain time entries (including vague and lumped entries).  After an extensive exchange of information and discussion, the stipulated adjustments to fees and expenses are sufficient to address the Fee Examiner's concerns, with two Reserved Issues:  the hours and fees devoted to avoidance actions and investigations.  The Fee Examiner now recommends Court approval of the Quinn Emanuel Second Fee Application, subject to the Reserved Issues and as adjusted and outlined on **Exhibit A**.

**UCC PROFESSIONALS**

*Paul Hastings LLP*

15.     On June 15, 2023, Paul Hastings LLP ("Paul Hastings") filed the *Second Interim Fee Request of Paul Hastings LLP* [D.I. 1649] for the period from February 1, 2023 through April 30, 2023 and the *Supplement to the First Interim Fee Application of Paul Hastings LLP* [D.I. 1650] (the "Paul Hastings Second Fee Application"), seeking $8,857,029.00 in fees and $90,996.65 in expenses.

16.     During the Second Interim Fee Period, Paul Hastings continued to advise the UCC on a wide variety of matters, including investigating the acts, conduct, assets, liabilities, and financial condition of the Debtors and assisting the UCC with the analysis of its claims against the Debtors.

17.     The Fee Examiner identified areas of significant concern, including rate increases,[8] time spent monitoring debtor professional fees, repetitive and vaguely-described billing, staffing inefficiencies, apparently excessive time spent on committee calls and meetings, preparation of a futile exclusivity objection, unnecessary monitoring of other crypto cases, duplicating the work of debtors' professionals on avoidance and preference analysis, vaguely described work on "sale issues," arguably unnecessary work in pursuit of an alternative business plan, and work on claims related to FTX Japan—all Reserved Issues.

18.     Subject to that reservation, the Fee Examiner recommends Court approval of the Paul Hastings Second Fee Application on an interim basis, as adjusted and outlined on

**Exhibit A**.

---

[8] Almost all professionals claim entitlement to rate increases under the terms of their engagement agreements, but—so far—only UCC professionals have imposed them.  Depending on the ultimate duration of these cases, the Fee Examiner will likely not object to reasonable periodic rate increases, provided that their timing and amounts are justified by the market.  Without retrospective comparative data, however, a substantive recommendation on rate increases would be premature.

***FTI Consulting, Inc.***

19.    On June 15, 2023, FTI Consulting, Inc. ("FTI") filed the *Second Interim Fee Request of FTI Consulting, Inc.* [D.I. 1649] and the *Supplement to the Second Interim Fee Application of FTI Consulting, Inc., Financial Advisor to the Official Committee of Unsecured Creditors, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period February 1, 2023 Through April 30, 2023* [D.I. 1653] (the "FTI Second Fee Application"), seeking $8,188,298.40 in fees and $8,403.77 in reimbursement for expenses.

20.    During the Second Interim Fee Period, FTI continued advising the UCC on the Debtors' business operations, monitoring professional fees, investigating the acts, conduct, assets, liabilities, and financial condition of the Debtors, and performing extensive financial analysis related to the UCC's potential alternative business plan.

21.    The Fee Examiner identified a number of areas of concern, including retention and fee application time, potential staffing and rate inefficiencies, apparently excessive hearing and meeting attendance, and various technical and procedural deficiencies with respect to some time entries (including vague entries).

22.    After an exchange of information and discussion about the FTI Second Fee Application, the Fee Examiner has identified the following Reserved Issues: rate increases, excessive time spent on professional fee tracking and projections, unnecessary and/or duplicative work on a potential exchange restart, and the development of an alternative business plan and compliance framework.

23.    Subject to further analysis and recommendation on the Reserved Issues, the Fee Examiner recommends Court approval of the FTI Second Fee Application on an interim basis, as adjusted and outlined on **Exhibit A**.

*Young Conaway Stargatt & Taylor, LLP*

24.     On June 15, 2023, Young Conaway Stargatt & Taylor, LLP ("Young Conaway")

filed the *Second Interim Fee Request of Young Conaway Stargatt & Taylor, LLP* [D.I. 1649] for

the period from February 1, 2023 through April 30, 2023 and *Supplement to Second Interim Fee*

*Request of Young Conaway Stargatt & Taylor, LLP* [D.I. 1651] (the "Young Conaway Second

Fee Application"), seeking $584,523.00 in fees and $4,320.14 in expenses.

25.     During the Second Interim Fee Period, Young Conaway continued in its role as

Delaware counsel to the UCC.

26.     The Fee Examiner identified a number of areas of concern, including apparently

excessive hearing attendance and technical and procedural deficiencies with respect to some time

entries (including vague and lumped entries).  After an extensive exchange of information and

discussion, the Fee Examiner has identified extensive attendance on UCC calls and arguably

excessive monitoring of the Voyager litigation as Reserved Issues.

27.     Subject to that reservation, the Fee Examiner recommends Court approval of the

Young Conaway First Fee Application on an interim basis, as adjusted and outlined on

**Exhibit A**.

**FEE APPLICATIONS RECOMMENDED FOR DEFERRAL**

*Landis Rath & Cobb LLP*

28.     On June 15, 2023, Landis Rath & Cobb LLP ("LRC") filed the *Second Interim*

*Fee Application of Landis Rath & Cobb LLP* [D.I. 1646] for the period from February 1, 2023,

through April 30, 2023 (the "LRC Second Fee Application"), seeking $1,654,803.00 in fees and

$17,503.94 in expenses.

29.     During the Second Interim Fee Period, LRC advised the Debtors on a variety of complex matters, including advising the debtors on contested matters and adversary proceedings and preparing and filing numerous pleadings.

30.     The Fee Examiner's Confidential Letter Report identified a number of areas of concern.  LRC and the Fee Examiner have engaged in discussions about these issues, and LRC has agreed to defer consideration of the LRC Second Fee Application in its entirety so that this dialogue can continue.

***Ernst & Young LLP***

31.     On June 15, 2023, Ernst & Young LLP ("EY") filed the *First Interim Fee Application of Ernst & Young LLP* [D.I. 1654] for the period from November 28, 2022 through January 31, 2023 (the "EY First Fee Application"), requesting $2,394,291.00 in fees and $45,224.21 in expenses.

32.     During the First Interim Fee Period, EY advised the Debtors on a variety of complex tax matters.

33.     The Fee Examiner's Confidential Letter Report identified a number of areas of concern.  EY has agreed to defer consideration of the EY First Fee Application in its entirety so that discussions about these issues can continue.

**NOTICE**

34.     Pursuant to ¶ 9(g) of the Fee Examiner Order, the Fee Examiner will serve this Summary Report by e-mail on counsel for the Debtors, on counsel for the Committee, and each Applicant.  The Fee Examiner will also serve this Summary Report upon the U.S. Trustee by e-mail and first-class mail.  A copy of this report is available on the website of the Debtors' notice and claims agent at https://restructuring.ra.kroll.com/FTX/.  The Fee Examiner submits that, in light of the nature of this report, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Fee Examiner respectfully requests the entry of an order, substantially in the form annexed hereto as **<u>Attachment One</u>**, granting the relief requested and such other and further relief as the Court may deem just and proper.

Dated:  September 5, 2023.

**GODFREY & KAHN, S.C.**

By  <u>*/s/ Mark W. Hancock*</u>
Mark W. Hancock (*Pro Hac Vice*)
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 297-3911
E-mail: mhancock@gklaw.com

*Counsel for Fee Examiner*

Katherine Stadler
ftxfeeexaminer@gklaw.com
*Fee Examiner*

29876193.5

17

# EXHIBIT A

Case 22-11068-JTD    Doc 2427    Filed 09/05/23    Page 19 of 26

In re: FTX Trading Ltd., et al.
NYSB Case No. 22-11068 (JTD)

**Exhibit A**

Second Interim Fee Period Applications Recommended -

| | Applicant | Compensation Period Docket Index Filed Date | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | **Second Interim Fee Period (February 1, 2023 - April 30, 2023)** | | | | | | | | |
| 1 | **AlixPartners, LLP** *Forensic Investigation Consultant to the Debtors* | 2/1/2023 - 4/30/2023 D.I. 1644 6/15/2023 | $12,298,421.00 | $210,000.00 | $121,201.07 | $15,000.00 | | $12,088,421.00 | $106,201.07 |
| 2 | **Alvarez & Marsal North America, LLC** *Financial Advisors to the Debtors* | 2/1/2023 - 4/30/2023 D.I. 1645 6/15/2023 | $35,911,779.00 | $385,000.00 | $1,103,726.94 | $53.46 | | $35,526,779.00 | $1,103,673.48 |
| 3 | **FTI Consulting, Inc.** *Financial Advisor to the Official Committee of Unsecured Creditors* | 2/1/2023 - 4/30/2023 D.I. 1649, 1653 6/15/2023 | $8,188,298.40 | $163,069.83 | $8,403.77 | $543.77 | | $8,025,228.57 | $7,860.00 |
| 4 | **Paul Hastings LLP** *Counsel to the Official Committee of Unsecured Creditors* | 2/1/2023 - 4/30/2023 D.I. 1649, 1650 6/15/2023 | $8,857,029.00 | $33,980.69 | $90,996.65 | $900.50 | | $8,823,048.31 | $90,096.15 |
| 5 | **Quinn Emanuel Urquhart & Sullivan, LLP** *Special Counsel to the Debtors* | 2/1/2023 - 4/30/2023 D.I. 1648 6/15/2023 | $8,256,186.00 | $145,000.00 | $8,994.69 | $4,818.56 | | $8,111,186.00 | $4,176.13 |
| 6 | **Sullivan & Cromwell** *Counsel to the Debtors* | 2/1/2023-4/30/2023 D.I. 1647 6/15/2023 | $37,492,869.60 | $550,000.00 | $184,400.94 | $0.00 | **FN1** | $36,942,869.60 | $184,400.94 |
| 7 | **Young Conaway Stargatt & Taylor, LLP** *Delaware Counsel to the Official Committee of Unsecured Creditors* | 2/1/2023 - 4/30/2023 D.I. 1649, 1651 6/15/2023 | $584,523.00 | $6,387.15 | $4,320.14 | $1,103.69 | | $578,135.85 | $3,216.45 |

**FN1** - The Fee Examiner has agreed to defer consideration of Sullivan & Cromwell's second interim expenses subject to the production of additional supporting documentation.

# EXHIBIT B

In re: FTX Trading Ltd., et al.
NYSB Case No. 22-11068 (JTD)

**Exhibit B**

**First and Second Interim Fee Period Applications Deferred -**

| | Applicant | Compensation Period Docket Index Filed Date | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *First Interim Fee Period (November 11, 2022 - January 31, 2023)* | | | | | | | |
| 1 | **Ernst & Young LLP** *Tax Services Provider to the Debtors* | 11/28/2022 - 1/31/2023 D.I. 1654 6/15/2023 | $2,394,291.00 | | $45,224.21 | | | |
| | *Second Interim Fee Period (February 1, 2023 - April 30, 2023)* | | | | | | | |
| 2 | **Landis Rath & Cobb LLP** *Delaware Counsel to the Debtors* | 2/1/2023 - 4/30/2023 D.I. 1646 6/15/2023 | $1,654,803.00 | | $17,503.94 | | | |

# Attachment One

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref Nos.:** 1644, 1645, 1647, 1648, 1649, 1650, 1651, 1653 |

**SECOND OMNIBUS APPROVING INTERIM FEE APPLICATIONS OF THE
DEBTORS' AND COMMITTEE'S PROFESSIONALS**

Upon consideration of the interim fee applications of the professionals retained by the

above captioned debtors and debtors-in-possession (collectively, the "Debtors") and the Official

Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases

(collectively, the "Professionals"),[2] a list of which is attached hereto as **Exhibit A** (collectively,

the "Fee Applications"), for allowance of compensation and reimbursement of expenses for the

period set forth on each of the Fee Applications filed pursuant to the *Order Establishing*

*Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I.

435] and the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for*

*Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834]; and

upon the *Fee Examiner's Summary Report on Fee Review Process and Second Interim Fee*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryon's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the Fee Applications.

*Applications Scheduled for Uncontested Hearing on September 13, 2023* [D.I. _____]; and it appearing to the Court that all of the requirements, as applicable, of sections 327, 328, 330, 331 and 503(b) 1 of title 11 of the United States Code (as amended or modified, the "Bankruptcy Code"), as well as rule 2016 of the Federal Rules of Bankruptcy Procedure and rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, have been satisfied; and it further appearing that the expenses incurred were reasonable and necessary; and that notices of the Fee Applications were appropriate; and after due deliberation and sufficient good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Fee Applications are hereby APPROVED in the amounts set forth on **Exhibit A** attached hereto.

2. The Fee Applications are granted on an interim basis in the respective amounts set forth as approved on **Exhibit A** hereto, including any and all holdbacks.

3. The Debtors are authorized to remit payment to each of the Professionals in the amounts set forth on **Exhibit A**, less any monies previously paid on account of such fees and expenses.

4. All fees and expenses allowed herein shall be subject to final allowance by the Court without regard to whether such amounts have been paid to the Professionals.

5. This Order shall be deemed a separate order with respect to each of the Fee Applications. Any stay of this Order pending appeal with respect to any one of the Professionals shall only apply to the particular Professional that is subject to such appeal and shall not operate to stay the applicability and/or finality of this Order with respect to any other of the Professionals.

6. This Court shall retain jurisdiction to hear and determine any and all matters arising from or related to the interpretation or implementation of this Order.

Date: September ___, 2023
Wilmington, Delaware

_____
THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

Case 22-11068-JTD    Doc 2427    Filed 09/05/23    Page 26 of 26
In re: FTX Trading Ltd., et al.

NYSB Case No. 22-11068 (JTD)

**Exhibit A**

Second Interim Fee Period Applications Recommended -

| | Applicant | Compensation Period Docket Index Filed Date | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|---|
| | *Second Interim Fee Period (February 1, 2023 - April 30, 2023)* | | | | | | | | |
| 1 | **AlixPartners, LLP** <br> *Forensic Investigation Consultant to the Debtors* | 2/1/2023 - 4/30/2023 <br> D.I. 1644 <br> 6/15/2023 | $12,298,421.00 | $210,000.00 | $121,201.07 | $15,000.00 | | $12,088,421.00 | $106,201.07 |
| 2 | **Alvarez & Marsal North America, LLC** <br> *Financial Advisors to the Debtors* | 2/1/2023 - 4/30/2023 <br> D.I. 1645 <br> 6/15/2023 | $35,911,779.00 | $385,000.00 | $1,103,726.94 | $53.46 | | $35,526,779.00 | $1,103,673.48 |
| 3 | **FTI Consulting, Inc.** <br> *Financial Advisor to the Official Committee of Unsecured Creditors* | 2/1/2023 - 4/30/2023 <br> D.I. 1649, 1653 <br> 6/15/2023 | $8,188,298.40 | $163,069.83 | $8,403.77 | $543.77 | | $8,025,228.57 | $7,860.00 |
| 4 | **Paul Hastings LLP** <br> *Counsel to the Official Committee of Unsecured Creditors* | 2/1/2023 - 4/30/2023 <br> D.I. 1649, 1650 <br> 6/15/2023 | $8,857,029.00 | $33,980.69 | $90,996.65 | $900.50 | | $8,823,048.31 | $90,096.15 |
| 5 | **Quinn Emanuel Urquhart & Sullivan, LLP** <br> *Special Counsel to the Debtors* | 2/1/2023 - 4/30/2023 <br> D.I. 1648 <br> 6/15/2023 | $8,256,186.00 | $145,000.00 | $8,994.69 | $4,818.56 | | $8,111,186.00 | $4,176.13 |
| 6 | **Sullivan & Cromwell** <br> *Counsel to the Debtors* | 2/1/2023-4/30/2023 <br> D.I. 1647 <br> 6/15/2023 | $37,492,869.60 | $550,000.00 | $184,400.94 | $0.00 | **FN1** | $36,942,869.60 | $184,400.94 |
| 7 | **Young Conaway Stargatt & Taylor, LLP** <br> *Delaware Counsel to the Official Committee of Unsecured Creditors* | 2/1/2023 - 4/30/2023 <br> D.I. 1649, 1651 <br> 6/15/2023 | $584,523.00 | $6,387.15 | $4,320.14 | $1,103.69 | | $578,135.85 | $3,216.45 |

**FN1** - The Fee Examiner has agreed to defer consideration of Sullivan & Cromwell's second interim expenses subject to the production of additional supporting documentation.