**Exhibit 1**

**Settlement Agreement**

*Execution Version*

**SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into by and among: (i) Genesis Global Holdco, LLC ("Holdco") and its affiliated debtors and debtors-in-possession (collectively, the "Genesis Debtors") in the jointly-administered chapter 11 cases proceeding under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the "Genesis Bankruptcy Proceeding"); (ii) Holdco's non-debtor direct and indirect affiliates and subsidiaries GGC International Limited ("GGCI"), Genesis Bermuda Holdco Limited, Genesis Global Markets Limited, Genesis UK Holdco Limited, Genesis Custody Limited, Genesis Global Assets, LLC, GGA International Limited, Genesis Global Labs, LLC, Genesis Global Trading, Inc., Genesis Asia (Hong Kong) Limited, and all other wholly-owned or controlled subsidiaries (collectively with the Genesis Debtors, the "Genesis Entities"); (iii) FTX Trading Ltd. ("FTX Trading"), Alameda Research LLC ("Alameda LLC"), Alameda Research Ltd. ("Alameda Ltd."), West Realm Shires Inc. ("WRSI"), West Realm Shires Services Inc. ("WRSS"), LedgerPrime LLC ("LedgerPrime") and their affiliated debtors and debtors-in-possession (collectively, and including FTX Trading, Alameda LLC, Alameda Ltd., WRSI, WRSS, and LedgerPrime, the "FTX Debtors"); and (iv) the FTX Debtors' non-debtor subsidiaries solely to the extent of the FTX Debtors' authority to bind such entities as of the date hereof, if any (together with the FTX Debtors, the "FTX Entities" and the FTX Entities, together with the Genesis Entities, each a "Party" and collectively the "Parties") in the jointly-administered chapter 11 cases proceeding under the caption *In re FTX Trading Ltd., et al.*, Case No. 22-11068 (JTD) (the "FTX Bankruptcy Proceeding");

**WHEREAS**, on November 11 and 14, 2022, the FTX Debtors filed their respective petitions for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), initiating the FTX Bankruptcy Proceeding;

**WHEREAS**, on January 19, 2023, the Genesis Debtors filed their respective petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"), initiating the Genesis Bankruptcy Proceeding;

**WHEREAS**, on May 3, 2023, the FTX Debtors filed the *Motion of FTX Trading Ltd. and its Affiliated Debtors for an Order Modifying the Automatic Stay Pursuant to 11 U.S.C. 362(d)(1) and Bankruptcy Rule 4001* (ECF No. 289)[1] (the "Lift Stay Motion") in the Genesis Bankruptcy Proceeding;

**WHEREAS**, on or about May 22, 2023, certain of the FTX Debtors filed claims against certain of the Genesis Debtors in the Genesis Bankruptcy Proceeding as set forth in Exhibit A-1 attached hereto (collectively, the "FTX Proofs of Claim") in the approximate amount of at least $3.8 billion in aggregate;

**WHEREAS**, on June 1, 2023, the Genesis Debtors filed the *Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the*

---

[1]    Citations made herein to "ECF" refer to filings in the Genesis Bankruptcy Proceeding unless otherwise indicated.

*Execution Version*

*Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018* (ECF No. 373) (the "Estimation Motion"), which sought to estimate the FTX Proofs of Claim at $0;

WHEREAS, on or around June 30, 2023, certain of the Genesis Debtors filed claims against certain of the FTX Debtors in the FTX Bankruptcy Proceeding as set forth in Exhibit A-2 attached hereto (collectively, the "Genesis Proofs of Claim") in the approximate amount of at least $180 million in aggregate plus unliquidated amounts;

WHEREAS, GGCI has asserted a claim against FTX.com with respect to cash and cryptocurrencies in the approximate amount of at least $176 million (the "GGCI Claim"), which GGCI asserts corresponds to a contingent claim listed on the FTX Debtors' amended schedules of assets and liabilities in the amount of -$22 million;

WHEREAS, the FTX Debtors have asserted certain defenses with respect to the Genesis Proofs of Claim and the GGCI Claim, and the Genesis Debtors have asserted certain defenses with respect to the FTX Proofs of Claim;

WHEREAS, each Party has an interest in avoiding the cost and expense that would be associated with litigation of the novel and complex issues raised by litigation between chapter 11 estates;

WHEREAS, without any admission by any Party, and subject to the terms of this Settlement Agreement, the Parties desire to finally resolve and settle all disputes between them relating to the FTX Proofs of Claim, the Genesis Proofs of Claim, and certain related matters set forth herein;

NOW, THEREFORE, in consideration of the above and the respective promises, conditions, terms, and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

1. **AGREEMENTS OF THE PARTIES**

    (a)    Allowed Alameda Claim.  On the Settlement Effective Date (as defined below), Alameda Ltd. shall have an allowed general unsecured claim against GGC in the amount of $175,000,000 (the "Allowed Alameda Claim"), which claim shall be freely transferable, subject to section 1(d) below.  The Genesis Entities shall not seek to subordinate, recharacterize, or otherwise seek any alternative treatment of the Allowed Alameda Claim other than as provided in this Settlement Agreement.

    (b)    Waiver of All Other Claims.  As of the Settlement Effective Date, (i) none of the FTX Entities shall have or be entitled to assert any Claim (as defined in 11 U.S.C. § 101(5), a "Claim") against the Genesis Entities other than the Allowed Alameda Claim, and (ii) none of the Genesis Entities shall have or be entitled to assert any Claim against the FTX Entities, in each case of (i) and (ii) including any Claim pursuant to 11 U.S.C. § 502(h).  As of the Settlement Effective Date, except for the Allowed Alameda Claim, all of the FTX Proofs of Claim shall be deemed expunged in the Genesis Bankruptcy Proceeding and the Genesis Proofs of Claim shall be deemed expunged in the FTX Bankruptcy Proceeding.

*Execution Version*

(c)      <u>Pro Rata Distributions</u>.  The Allowed Alameda Claim shall be entitled to receive pro rata distributions (in the form of fiat) with all other allowed general unsecured claims pursuant to any chapter 11 plan that becomes effective in the Genesis Bankruptcy Proceeding (the "<u>Genesis Plan</u>") and shall be entitled to all treatment afforded to allowed general unsecured claims in its respective class and shall not be separately classified from other general unsecured claims owed fiat against GGC (other than Claims of Gemini lenders, which may be separately classified, and Claims separately classified solely for purposes of administrative convenience, if any) or otherwise treated in any disparate or discriminatory way as compared to other general unsecured claims against GGC under the Genesis Plan, *provided* that (i) the Parties may mutually agree in writing that the consideration comprising the distributions on account of the Allowed Alameda Claim may be in a form other than cash, and (ii) in the event that the Genesis Plan includes an early payout option at a discount (the "<u>Early Payout Option</u>"), the Early Payout Option shall not be available with respect to the Allowed Alameda Claim unless the Early Payout Option is otherwise generally available to all similarly situated holders of allowed general unsecured claims in amount equal to or greater than the Allowed Alameda Claim. Notwithstanding the foregoing, in the event the Genesis Plan includes the Early Payout Option and it is not available to the Allowed Alameda Claim, Alameda Ltd. reserves its rights and shall be entitled to object to the Early Payout Option on the grounds that it constitutes unfair discrimination and the Genesis Entities reserve their rights and shall be entitled to argue that the Early Payout Option does not constitute unfair discrimination.

(d)      <u>Transfers</u>.  Effective as of the date of this Settlement Agreement, the Allowed Alameda Claim shall be freely transferable (in whole or in part), provided that any transferee of any portion of, or interest in, the Allowed Alameda Claim (each, a "<u>Transferee</u>") shall, as a condition to such transfer (each, a "<u>Transfer</u>"), agree to be bound by the terms of this Settlement Agreement with respect to the acquired portion of the Allowed Alameda Claim, mutatis mutandis, by executing and delivering to the Genesis Entities a joinder agreement substantially in the form attached hereto as <u>Exhibit B</u> (each, a "<u>Joinder</u>").  Upon compliance with the foregoing, Alameda Ltd. shall be deemed to relinquish its rights (and be released from its obligations, except for any claim for breach of this Settlement Agreement that occurs prior to such transfer) under this Settlement Agreement with respect to the acquired portion of the Allowed Alameda Claim and to the extent of such transferred rights and obligations. Notwithstanding anything to the contrary herein, entry into a Joinder shall not require or otherwise cause a Transferee to release any Claims against any Party other than any Claims related to or arising out of the FTX Proofs of Claim or the Genesis Proofs of Claim.

(e)      <u>Covenant Not to Object to Genesis Plan</u>.  As of the Settlement Effective Date, none of the FTX Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the Genesis Debtors, *solely to the extent* that such plan is consistent with the terms and conditions of this Settlement Agreement; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit the FTX Entities' rights to appear as parties-in-interest in any matter to be adjudicated in the Genesis Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of this Settlement Agreement.

*Execution Version*

(f)    <u>Covenant Not to Object to FTX Plan</u>.  As of the Settlement Effective Date, none of the Genesis Entities shall object or, directly or indirectly, seek, solicit, support, encourage, propose, assist, consent to, enter into or participate in any discussions or agreement with any other person to object, to any chapter 11 plan in respect of the FTX Debtors, *solely to the extent* that such plan is consistent with the terms and conditions of this Settlement Agreement; *provided* that nothing in this Settlement Agreement (and neither a vote to accept any such chapter 11 plan nor the acceptance of such plan) shall be construed to limit any Genesis Entity's right to appear as a party-in-interest in any matter to be adjudicated in the FTX Bankruptcy Proceeding, so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Settlement Agreement and are not for the purposes of hindering, delaying, or preventing the consummation of this Settlement Agreement.

(g)    <u>Rule 9019 Motions</u>.  Effective as of the date of execution of this Settlement Agreement by each Party, each Party agrees to seek prompt approval of this Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019, through a motion in form and substance reasonably acceptable to the other Party, in each of the Genesis Bankruptcy Proceeding and FTX Bankruptcy Proceeding, as applicable (together, the "<u>Rule 9019 Motions</u>") and otherwise agrees to cooperate and take such actions as are reasonably necessary (including in the event that an objection or other opposition to its respective Rule 9019 Motion is filed) to obtain court approval of, and authority to enter into, this Settlement Agreement, and entry of the Approval Order (as defined below).

(h)    <u>Withdrawal of Motions and Claims</u>.  No later than three (3) business days after the Settlement Effective Date, the FTX Debtors and the Genesis Debtors, as applicable, shall withdraw with prejudice (i) the Lift Stay Motion and the Estimation Motion, respectively, and (ii) the FTX Proofs of Claim and the Genesis Proofs of Claim, respectively.

2.    **RELEASES**

(a)    <u>Mutual Release</u>.  On the Settlement Effective Date (as defined below), each of the FTX Entities, on the one hand, and each of Genesis Entities, on the other hand, on behalf of itself, and each and all of its and its respective past, present and future agents, heirs, executors, administrators, conservators, predecessors, successors and assigns, (all such releasing persons and entities collectively, the "<u>Releasing Parties</u>"), does hereby fully, unconditionally and irrevocably release, relieve, waive, relinquish, remise, acquit and forever discharge each other and their respective past, present and future agents, heirs, executors, administrators, conservators, successors and assigns (all such released persons and entities collectively, the "<u>Released Parties</u>") from, against, and in respect of any and all past, present and future Claims, cross-claims, counterclaims, third-party claims, demands, liabilities, obligations, debts, liens, damages, losses, costs, expenses, controversies, actions, rights, suits, assessments, penalties, charges, indemnities, guaranties, promises, commitments, or causes of action of whatsoever nature, whether based in contract, tort or otherwise, whether in law or equity and whether direct or indirect, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, that such Party may have or may have against any other Party since the beginning of time, under, arising out of or in connection with the FTX Proofs of Claim , the Genesis Proofs of Claim or any other Claims that could be asserted, including any right to claim indemnification or an award of attorneys' fees or other costs and expenses incurred in, or in connection with any of

4

*Execution Version*

the foregoing, in all cases other than the Allowed Alameda Claim and as otherwise provided in this Settlement Agreement.

    (b)    <u>Exceptions to Mutual Release</u>.

    (i)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect their respective obligations under this Settlement Agreement or the Parties' respective rights to bring any Claims or other causes of action arising out of or in connection with a breach of this Settlement Agreement.

    (ii)    Notwithstanding any other provision of this Settlement Agreement, any affiliates or subsidiaries of the Digital Currency Group other than the Genesis Entities (the "<u>DCG Entities</u>") are not Released Parties or Releasing Parties, and the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, all Claims or other causes of action against any DCG Entity, including any and all Claims and causes of action alleged in or related to that certain action styled *Alameda Research Ltd. v. Grayscale Investments, LLC, Digital Currency Group, Inc., Michael Sonnenshein, and Barry Silbert* filed in the Court of Chancery of the State of Delaware, Case No. 2023-0276.

    (iii)    Notwithstanding any other provision of this Settlement Agreement, the Parties do not release, and expressly preserve fully and to the same extent as if this Settlement Agreement had not been executed, any Claims or other causes of action against any person or entity that is not one of the Released Parties.

    (iv)    Notwithstanding any other provision of this Settlement Agreement, the Parties' respective releases do not affect any Claims that any FTX Entity has against any other FTX Entity or that any Genesis Entity has against any other Genesis Entity.

**3.    REPRESENTATIONS & WARRANTIES**

    (a)    <u>Mutual Representations and Warranties of All Parties</u>.  Each Party represents and warrants to each other Party that as of the date of this Settlement Agreement:

    (i)    subject to the Approval Orders, it has the requisite organizational power and authority to enter into this Settlement Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Settlement Agreement;

    (ii)    subject to the Approval Orders, this Settlement Agreement constitutes a legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms;

    (iii)    the execution and delivery of this Settlement Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate or other organizational action on its part;

    (iv)    the execution, delivery, and performance by it of this Settlement Agreement does not violate any provision of law, rule or regulation applicable to it or any of its

*Execution Version*

affiliates or its certificate of incorporation, bylaws or other organizational documents or those of any of its affiliates; and

> (v)   before executing this Settlement Agreement, it has been fully informed of its terms, contents, conditions and effects, it has had a full and complete opportunity to discuss this settlement with its attorney or attorneys, it is not relying in any respect on any statement or representation made by any other Party and no promise or representation of any kind has been made to such Party separate and apart from what is expressly contained in this Settlement Agreement.

## 4.   MISCELLANEOUS PROVISIONS

(a)   No Admission of Liability.  The undersigned Parties each acknowledge and agree that the matters set forth in this Settlement Agreement constitute the settlement and compromise of potentially disputed claims and defenses, that this Settlement Agreement is not an admission or evidence of liability or infirmity by any of them regarding any claim or defense, and that the Settlement Agreement shall not be offered or received in evidence by or against any Party except to enforce its terms.

(b)   Specific Performance.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Settlement Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Settlement Agreement, including an order of the New York Bankruptcy Court or the Delaware Bankruptcy Court, as applicable, or another court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Each Party also agrees that it will not (i) seek, and will waive any requirement for, the securing or posting of a bond in connection with any Party seeking or obtaining such relief or (ii) raise as a defense thereto the necessity of proving the inadequacy of money damages as a remedy.

(c)   Damages.  Notwithstanding anything to the contrary in this Settlement Agreement, none of the Parties or any of their respective successors or assigns shall make a claim against, or seek to recover from, any other Party or the successors, assigns, affiliates, directors, officers, employees, counsel, representatives, agents, or attorneys-in-fact of any of them for any special, indirect, consequential, exemplary, or punitive damages or damages for lost profits in respect of any claim for breach of contract or any other theory of liability arising out of or related to this Settlement Agreement.

(d)   Further Assurances.  The Parties shall use their reasonable best efforts to take, or cause to be taken, all appropriate action to do or cause to be done all things necessary under applicable law, and to execute and deliver such documents and other papers, in each case, as may be required to carry out the provisions of this Settlement Agreement and consummate and make effective the transactions contemplated hereby.

*Execution Version*

(e)     <u>Execution in Counterparts.</u>  This Settlement Agreement may be executed in counterparts by one or more of the Parties and all such counterparts when so executed shall together constitute the final Settlement Agreement, as if one document had been signed by all Parties; and each such counterpart, upon execution and delivery, shall be deemed a complete original, binding the Parties subscribed thereto upon the execution by all Parties to this Settlement Agreement.  Delivery of this signed agreement by facsimile transmission or by .pdf, .jpeg, .TIFF or other form of electronic mail attachment will be deemed effective as delivery of a manually executed counterpart prior to and in the absence of manual delivery and will be binding upon the parties.

(f)     <u>Governing Law.</u>  This Settlement Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York (without regard to conflicts of law principles that would result in the application of any law other than the law of the State of New York).

(g)     <u>Consent to Venue.</u>  Each of the Genesis Entities irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Delaware Bankruptcy Court and each of the FTX Entities irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the New York Bankruptcy Court, in each case solely for any action, suit or proceeding arising out of or based upon such Party's breach of this Settlement Agreement, and waives any objection that it may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over it in connection with such an action, suit or proceeding.

(h)     <u>Trial by Jury Waived.</u> EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER IN CONTRACT OR IN TORT, IN LAW OR IN EQUITY OR GRANTED BY STATUTE). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND EACH OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS SETTLEMENT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(i)     <u>Notices.</u>  Any notices required hereunder shall be sent by registered mail, first class, return receipt requested, and by email, to the following:

    (i)     If to any Genesis Entity:

    Arianna Pretto-Sakmann
    Genesis Global Holdco, LLC
    250 Park Avenue South, 5th Floor
    New York, NY 10003
    arianna@genesistrading.com

*Execution Version*

with copies to:

Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225 2416
(212) 225 2929
(212) 225 2872
soneal@cgsh.com
lbarefoot@cgsh.com
jvanlare@cgsh.com

(ii)    If to the FTX Debtors:

John J. Ray III
125 Broad Street
FTX Mail Room, 32nd Floor
New York, New York, 10004
E-mail: jray@greylockpartnersllc.com

with copies to:

Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Attn: Brian D. Glueckstein and Benjamin S. Beller
E-mail: gluecksteinb@sullcrom.com; bellerb@sullcrom.com

(j)    <u>Entire Agreement and Amendments</u>.  This Settlement Agreement constitutes the entire agreement and understanding between and among the Parties concerning the matters set forth herein and supersedes any prior agreements or understandings.  This Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties bound thereby, or by their respective authorized attorney(s), or other representative(s).

(k)    <u>Severability</u>.  If any provision in this Settlement Agreement is determined to be invalid, inoperative or unenforceable, the remaining provisions of this Settlement Agreement remain in effect if both the economic and legal substance of this Settlement Agreement are not materially affected in any manner adverse to any Party.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

*Execution Version*

(l)    <u>Assignment</u>.  Neither this Settlement Agreement nor any of the rights and obligations of the Parties hereunder may be assigned by either Party without the prior written consent of the other Party, which consent will not be unreasonably withheld, except that each Party shall have the right to assign any or all of its rights and delegate any or all of its obligations hereunder to any of its affiliates or any successor in interest (whether by merger, acquisition, asset purchase, or otherwise), *provided*, that no assignment to any affiliate or successor in interest shall relieve or discharge the assigning party from any of its obligations hereunder, *provided further*, that the Allowed Alameda Claim shall be freely transferrable in accordance with Section 1(d) of this Settlement Agreement.  Any Transfer in violation of this Settlement Agreement shall be void and of no force or effect.

(m)    <u>Indemnification</u>.  In the event of the breach of this Settlement Agreement, the breaching Party will indemnify and hold harmless the non-breaching Party and any of its affiliates, officers, directors, employees, agents, and subsidiaries for any and all reasonable attorneys' fees and court costs arising out of or in connection with such breach.

(n)    <u>Settlement Effective Date</u>.  The "<u>Settlement Effective Date</u>" shall occur on the date that (i) signature pages executed by each of the Parties have been delivered to each of the other Parties, and (ii) the New York Bankruptcy Court and the Delaware Bankruptcy Court have each entered an order (which order shall have become a final order not subject to any appeal, stay or vacatur) approving the Parties' entry into this Settlement Agreement, on terms and conditions consistent with this Settlement Agreement and otherwise reasonably acceptable to each Party (each, an "<u>Approval Order</u>" and together the "<u>Approval Orders</u>").

*[The remainder of this page is intentionally left blank.]*

*Execution Version*

       **IN WITNESS WHEREOF**, the Parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

                              **GENESIS GLOBAL HOLDCO, LLC**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Chief Legal Officer

                              PRINT NAME: Arianna Pretto-Sakmann

                              **GENESIS GLOBAL CAPITAL, LLC**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Chief Legal Officer

                              PRINT NAME: Arianna Pretto-Sakmann

                              **GENESIS ASIA PACIFIC PTE. LTD.**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Director

                              PRINT NAME: Arianna Pretto-Sakmann

                              **GGC INTERNATIONAL LIMITED**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Director

                              PRINT NAME: Arianna Pretto-Sakmann

                              **GENESIS BERMUDA HOLDCO LIMITED**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Director

                              PRINT NAME: Arianna Pretto-Sakmann

                              **GENESIS GLOBAL MARKETS LIMITED**

Date: August 16, 2023                 BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Director

*Execution Version*

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS UK HOLDCO LIMITED**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS CUSTODY LIMITED**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS GLOBAL ASSETS, LLC**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

TITLE: Chief Legal Officer of Genesis Global Holdco, LLC, as sole member of Genesis Global Assets, LLC

PRINT NAME: Arianna Pretto-Sakmann

**GGA INTERNATIONAL LIMITED**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

TITLE: Director

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS GLOBAL LABS, LLC**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

TITLE: General Counsel

PRINT NAME: Arianna Pretto-Sakmann

**GENESIS GLOBAL TRADING, INC.**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

TITLE: Chief Legal Officer

PRINT NAME: Arianna Pretto-Sakmann

11

*Execution Version*

**GENESIS ASIA (HONG KONG) LIMITED**

Date: August 16, 2023          BY: */s/ Arianna Pretto-Sakmann*

                              TITLE: Director

                              PRINT NAME: Arianna Pretto-Sakmann

**FTX ENTITIES**

Date: August __, 2023          BY:

                              TITLE:  Solely in his capacity as Chief Executive Officer

                                      of the FTX Debtors

                              PRINT NAME:  John J. Ray III

12

*Execution version*

**GENESIS ASIA (HONG KING) LIMITED**

Date: August __, 2023                    BY:_____

                                         TITLE:__

                                         PRINT NAME:__

                                         **FTX ENTITIES**

Date: August 16, 2023                    BY:_____

                                         TITLE:  Solely in his capacity as Chief Executive Officer
                                                   of the FTX Debtors

                                         PRINT NAME:  John J. Ray III

*Execution Version*

## Exhibit A-1

### FTX Proofs of Claim

| Claim No. | FTX Entity | Genesis Entity |
|---|---|---|
| 415 | FTX Trading | Holdco |
| 419 | FTX Trading | Genesis Asia Pacific, Ltd. ("GAP") |
| 420 | Alameda LLC | GAP |
| 422 | Alameda LLC | Holdco |
| 426 | FTX Trading | Genesis Global Capital LLC ("GGC") |
| 432 | WRSS | GAP |
| 438 | WRSI | GGC |
| 457 | Alameda Ltd. | GAP |
| 463 | WRSI | GAP |
| 465 | WRSS | Holdco |
| 508 | Alameda Ltd. | GGC |
| 512 | Alameda Ltd. | Holdco |
| 513 | Alameda LLC | GGC |
| 515 | WRSS | GGC |
| 516 | WRSI | Holdco |

*Execution Version*

## Exhibit A-2

## Genesis Proofs of Claim

| Claim No. | Genesis Entity | FTX Entity |
|---|---|---|
| 4506 | GGC | Alameda LLC |
| 4508 | Holdco | Alameda LLC |
| 4509 | GGC | FTX Trading |
| 4510 | GGC | WRSS |
| 4512 | GGC | WRSI |
| 4514 | Holdco | Alameda Ltd. |
| 4515 | Holdco | FTX Trading |
| 4516 | Holdco | WRSS |
| 4517 | GGC | LedgerPrime |
| 4518 | GAP | WRSI |
| 4519 | GAP | FTX Trading |
| 4520 | GAP | Alameda Ltd. |
| 4521 | GAP | WRSS |
| 4523 | Holdco | WRSI |
| 4524 | GGC | Alameda Ltd. |
| 4525 | GAP | Alameda LLC |

*Execution Version*

## **Exhibit B**

### **Form of Joinder Agreement**

This Joinder Agreement (the "Joinder Agreement") to the Settlement Agreement and Release, dated as of August 16, 2023 (the "Settlement Agreement"), by and among the Genesis Entities and the FTX Entities, is executed and delivered by [●] (the "Joining Party") to the Genesis Debtors as of [●].  Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Settlement Agreement.

1.  Agreement to be Bound.  The Joining Party shall hereafter be deemed to be a "Party" for all purposes under the Settlement Agreement and hereby agrees to be bound by all of the terms and conditions of the Settlement Agreement in such capacity and any representations, warranties, and covenants therein.  Notwithstanding anything to the contrary in the Settlement Agreement, entry into this Joinder Agreement shall not require or otherwise cause a Joining Party to release any Claims against any Party other than any Claims related to or arising out of the FTX Proofs of Claim or the Genesis Proofs of Claim.

2.  Governing Law.  This Joinder Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

*[Remainder of Page Intentionally Left Blank]*

*Execution Version*

IN WITNESS WHEREOF, the Joining Party has caused this Joinder Agreement to be executed as of the date first written above.

Name of Joining Party: _____
By:           _____
Name:        _____
Title:        _____

<u>Notice Address:</u>

_____
_____
_____
Fax:         _____
Attention:   _____

With a copy to:

_____
_____
_____
Fax:         _____
Attention:   _____
            _____