## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date:  September 13, 2023, at 1:00 p.m.**<br><br>**Objection Deadline: September 6, 2023, at 4:00 p.m., extended to 6:00 p.m. for the U.S. Trustee**<br><br>Re:  D.I. 2238 |

## UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTORS TO ENTER INTO, AND PERFORM THEIR OBLIGATIONS UNDER, THE REIMBURSEMENT AGREEMENTS

   Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 2238] (the "Motion"), and respectfully states:

### I.  PRELIMINARY STATEMENT

   1.  The U.S. Trustee objects to the Debtors' request, pursuant to section 363 of the Bankruptcy Code, for authority to pay the professional fees and expenses of a group of unsecured creditors that call themselves the ad hoc committee of international customers (the "AHC").  The request seeks authority to pay fees and expenses that have already been incurred

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

for two law firms and an investment banker, for the period May 2023 through August 2023, and to pay such fees and expenses going forward.

2.      Section 503(b) of the Bankruptcy Code is the "exclusive avenue for payment of administrative expenses," *In re Lehman Bros. Holdings, Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014), and sections 503(b)(3)&(4) are the specific and sole authority for an estate to pay the professional fees and expenses of an unsecured creditor.  Those sections require the court to find that the creditor made a substantial contribution to the case and that the fees and expenses are reasonable. At present, it is impossible to know if the AHC will make a substantial contribution in these cases.  Therefore, the Court should deny the Motion as legally improper and premature, both with respect to fees and expenses already incurred and those to be incurred in the future.

3.      The U.S. Trustee recognizes that this Court ruled in *Mallinckrodt* that section 363 of the Bankruptcy Code can be used to pay an ad hoc group's professional fees even if the requirements of section 503(b)(3) & (4) are not met, and that such decision was affirmed by the District Court.  While the U.S. Trustee respectfully disagrees with such view, the relevant facts and circumstances of these cases are significantly different from that of *Mallinckrodt.*

4.      Unlike in *Mallinckrodt*, the Debtors here have not filed any declaration, or otherwise submitted evidence, to show that entry into the Reimbursement Agreements[2] is a sound exercise of the Debtors' business judgment under section 363(b).  These cases also differ from *Mallinckrodt* because the AHC has not entered into a restructuring support agreement with the Debtors, as the ad hoc committees in *Mallinckrodt* had, and because the AHC here is seeking reimbursement of fees and expenses already incurred, and not just prospective fees and expenses. Most significantly, in *Mallinckrodt*, two of the three ad hoc groups were comprised of

---

[2]    All Capitalized terms that are not defined herein shall have the definition set forth in the Motion.

governmental entities whose interests differed from that of the members of the two official committees the U.S. Trustee appointed in those cases.  In contrast, the members of the AHC in the FTX cases represent exactly the same interests as the members of the Official Committee: all of the members of the AHC are customers of the FTX.com exchange, as are all of the members of the Official Committee; and all of the members of the AHC are based outside of the United States, which is also true for the majority of the members of the Official Committee.

5.      The only material difference between the members of the AHC and those of the Official Committee is that all members of the Official Committee were customers of the FTX.com platform prior to the Petition Date.  In contrast, according to counsel to the AHC, approximately 41 percent of the members of the AHC did not hold interests in any FTX account as of the Petition Date.  That distinction supports denial of the Motion.  The Debtors' estates should not be paying professional fees of parties who are not victims of the Debtors' pre-petition wrongdoing, but rather are claims traders seeking to use the bankruptcy system to make a profit.

6.      In the Motion, the Debtors assert that the "FTX.com customers' interests are different than, and in some ways may be adverse to, the interests of the general unsecured creditor body." Mot. ¶ 1.  However, the Debtors do not assert that the Official Committee is not able to adequately represent the interests of FTX.com customers, nor could they, given that the Official Committee is comprised *exclusively* of FTX.com customers.   Counsel to the AHC has, however, suggested in statements at Court hearings that AHC's involvement in these cases is necessary to protect the interests of the customers of FTX.com based on the belief that the Official Committee may be conflicted from acting in the best interests of FTX.com customers, because the Official Committee also has a fiduciary duty to represent other general unsecured creditors.  The idea that members of the Official Committee would act against their own self-

interests, and those of the other FTX.com customers, because they also have to represent the interests of other general unsecured creditors defies logic.[3]  Moreover, for the Motion to be granted, the Debtors must demonstrate that the estates' payment of the professional fees of the AHC "benefits the debtors' estates as a whole, rather than individual creditors or creditor groups," such as the FTX.com customers.  *See In re Mallinckrodt PLC*, No. 21-167, 2022 WL 906459, *4 (D. Del. March 28, 2022)(quoting this Court's bench ruling of January 19, 2021).

7.    The Debtors assert, without evidence, that "[w]ithout the Reimbursement Agreements, the Ad Hoc Committee will be unable to retain skilled and experienced advisors." Mot. ¶ 24.   Given that the vast majority of the 38 members of the AHC appear to be legal entities, rather than natural persons, it seems likely they would have sufficient means and motivation to pay for their professionals, especially with respect to the 41% who voluntarily purchased FTX.com accounts after the Petition Date, likely at a discounted rate.

8.    There are certain other aspects of the relief sought by the Motion to which the U.S. Trustee objects, as detailed in Point IV.D  below.  These include certain problematic terms of the investment banker's engagement agreement.

9.    For the reasons set forth in this Objection, the Motion should be denied.

---

[3]    If there is a situation in which the interests of one or more of the members of the Official Committee conflicts with the interest of general unsecured creditors as a whole, such members should notify counsel to the Official Committee, who in turn should notify the U.S. Trustee, so that proper steps can be taken to address any such conflict.

## II.     JURISDICTION AND STANDING

10.     Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

11.     Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

12.     Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## III.     FACTUAL BACKGROUND

13.     On or after November 11, 2022, the Debtors filed voluntary chapter 11 petitions in this Court.

14.     The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

15.     The U.S. Trustee appointed the Official Committee on December 15, 2022, consisting of nine members, all of which were customers of the FTX.com platform.[4]  Of the nine members, at least seven provided the U.S. Trustee with addresses outside of the United States.

16.     On March 24, 2023, counsel to the AHC filed the *Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnel LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1156].   On June 7, 2023, counsel to the AHC filed the *Verified First Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1580].   On August 9, 2023, counsel to the AHC filed the *Verified Second Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 2144](the "Current 2019 Statement"), which was filed after entry of this Court's *Order Denying the Ad Hoc Committee of Non-US Customers of FTX.com's Motion to File Under Seal (I) Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019 and (II) the Declaration in Support of the Ad Hoc Committee of Non-US Customers of FTX.com's Motion to File Under Seal the Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Bankruptcy Rule 2019* [D.I. 1858].

17.     The Current 2019 Statement lists 38 members of the AHC, described as "international customers . . . who hold accounts on the FTX.com platform."  D.I. 2144, ecf p. 1 of 5.  With respect to each member, the Current 2019 Statement lists their name, the address of

---

[4]     One member of the Official Committee, Acaena Amoros Romero, has since resigned.

AHC counsel (Eversheds Sutherland),[5] and the "Dollarized Amount (US$)" of the cryptocurrency, together with any fiat currency, in their account.  *See id.*

18.    The Current 2019 Statement lists the aggregate dollarized amount of all AHC members at slightly below $857 million, which, if accurate, constitutes about 8.5% of the over $10 billion in FTX.com customer claims.  *See* Preliminary Analysis of Shortfalls at FTX.COM and FTX.US, D.I. 792-1, ecf p. 13 of 25.

19.    According to counsel to the AHC, of the 38 members of the AHC, 41 percent were not customers of any of the Debtors as of the Petition Date.  Of that 41 percent, 6 percent were affiliated with an entity that held an interest in one or more FTX accounts as of the Petition Date, and the remaining 35 of the 41 percent were not.

20.    On August 23, 2023, the Debtors filed the Motion.  [D.I. 2238] The Motion seeks authorization for the Debtors to enter into, and perform obligations under, Reimbursements Agreements with of two law firms representing the AHC – Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP – and the AHC's investment banker, Rothschild & Co. US Inc. ("Rothschild").    The Motion includes the following financial terms:

(a) The Debtors' estates shall pay to counsel to the AHC up to $500,000 per month, in the aggregate, in reasonable and documents fees from May 1, 2023 through the termination of the Counsel Reimbursement Agreement.  Unused portions of the fee cap for any month may be carried forward on a rolling monthly basis, and any amounts incurred over the cap in any given month can be applied to later periods of reimbursement.  The estates shall also pay all

---

[5]    The Current 2019 Statement failed to disclose the actual address of any member of the AHC, despite this Court making it clear in denying AHC's motion to seal that addresses of the AHC members, as well as names and all other information required by Bankruptcy Rule 2019, "has to be disclosed." *See* Hrg. Tr. 6/9/23 161:20 – 162:3.

reasonable out-of-pocket expenses (at cost) from May 1, 2023 forward.  Mot. ¶ 11;

(b) The Debtors' estates shall pay to Rothschild $175,000 per month, and a transaction fee of $3.5 million (subject to further Court approval) payable upon the effective date of a confirmed chapter 11 plan.  *See id.* ¶13.  The $3.5 million fee would be due even if the AHC terminated Rothschild, with or without cause, or if Rothschild voluntarily terminated the engagement, with or without cause, provided that the effective date of the plan occurs less than one year after such termination.  *See* Mot. Ex. B-2 (Rothschild engagement agreement), Section 6, D.I. 2238-4, ecf page 6 of 18.

(c) The AHC professionals are to comply with the interim compensation order in these cases [D.I. 435], and the AHC's law firms (but not its investment banker) will have their fees and expenses subject to review by the fee examiner.  *See* Mot. ¶ 31.

21.    No declaration was attached to the Motion, nor has one been filed since in support of the Motion.  The Motion attaches the reimbursement agreements, and the engagement letter with Rothschild, but does not attach the engagement letter with either of the law firms whose fees will be reimbursed.[6]

## IV.    ARGUMENT

**A.  Section 503(b) is the Only Code Section Governing the Payment of an Ad Hoc Committee's Fees and Expenses, and Any Request for Substantial Contribution is Legally Premature Before the Case Concludes.**

22.    The proposed payments to the AHC's professionals constitute compensation that is specifically governed by sections 503(b)(3)(D) and (4) of the Bankruptcy Code.  Section 503(b)(3)(D) provides as follows:

---

[6]    At the request of counsel to the U.S. Trustee, counsel to the AHC provided the U.S. Trustee with copies of their engagement letters.

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including –

. . . .

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –

. . . .

(D) a creditor . . . or a committee representing creditors . . . other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

. . . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b)(3)(D) & (4).

23. By enacting section 503(b) of the Bankruptcy Code, Congress provided a specific procedure and standard for the allowance and approval of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case. *See* 4 Collier on Bankruptcy at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative expenses, except ordinary course expenses paid pursuant to sections 363 and 364 of the Code, are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be actually allowed by court order."). Section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable," s*ee* 11 U.S.C. §

503(b)(4).  Moreover, a party's right to payment under section 503(b) is not automatic; it "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate."  *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 535 (3d Cir. 1999).

24.    In the Third Circuit, a creditor makes a "substantial contribution" if, and only if, its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial* Inc., 27 F.3d 937, 943-44 (3d Cir. 1994) (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)).  Furthermore, to be compensable under section 503(b)(3)(D), the creditor's activity must have "benefit[ed] the estate as a whole."  *See Lebron*, 27 F.3d at 944.  Activities "which were designed primarily to serve [the applicants'] own interests" are ***not*** compensable, because they "would have been undertaken absent an expectation of reimbursement from the estate."  *Id.*

25.    The fact that the payment of professional fees are proposed as part of the Reimbursement Agreement does not relieve the third-party professionals of their obligation to comply with the requirements of section 503, which is the "sole source" of authority to pay post-petition professional fees on an administrative basis.  *Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings Inc.*), 508 B.R. 283, 290 (S.D.N.Y. 2014).

26.    In *Lehman,* the court roundly rejected an attempt by certain committee members to circumvent section 503(b)(4) by seeking payment under a "permissive" plan provision that purported to pay third-party professional fees without regard to whether they could be authorized under section 503.  As the court explained, plans pay only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments [of] professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and

10

> expenses . . . Therefore, the Individual Members' professional fee expenses
> are either administrative expenses or not, and if the latter, they cannot be paid
> under a plan.

*Id.*at 293.  Indeed, the court recognized that any contrary result "could lead to serious mischief,"

because it would allow plan proponents to distribute the estate's assets without regard to the

Bankruptcy Code's priority scheme.  *Id.*

27.     The allowance of attorney's fees is an exception to "the bedrock principle known

as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or

contract provides otherwise."  *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015)

(internal quotation marks omitted).  The Supreme Court has recognized departures from the

American Rule "only in specific and explicit provisions for the allowance of attorneys' fees

under selected statutes."  *Id.* (internal quotation marks omitted).  "Section 503(b)(3)(D)

represents an accommodation between the twin objectives of encouraging meaningful creditor

participation in the reorganization process and keeping fees and administrative expenses at a

minimum so as to preserve as much of the estate as possible for the creditors."  *Lebron v.

Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (internal quotation marks and citation

omitted).

28.     Substantial contribution awards are granted only in "rare and extraordinary

circumstances."  *Leidos Rng'g, LLC v. KiOR, Inc.* (*In re KiOR Inc.*), 567 B.R. 451, 459 (internal

quotation marks omitted)*; accord RS* Legacy, No. 15-10197, 2016 WL 1084400, at *4 (Bankr.

D. Del. March 17, 2016).  "[T]he benefit received by the estate must be more than an incidental

one arising from activities the applicant has pursued in protecting his or her own interests."

*Lebron*, 27 F.3d at 944.  Under Third Circuit precedent, there must be a "demonstrable benefit to

the debtor's estate and the creditors," *id.* (internal quotation omitted), because of "the concern

that administrative claims deplete the bankruptcy estate's assets." *In re Energy Future Holdings Corp.,* No. 19-3492, 2021 WL 957301 at *10 (3d Cir. March 15, 2021). The benefit "must be *actual*, not hypothetical," *id.* (emphasis in original), thus "a hindsight-based analysis of the benefit to the estate requirement is appropriate." *Id.* at *12; *see also KiOR*, 567 B.R. at 458 ("The substantial contribution test is applied in hindsight and scrutinizes the actual benefit to the case."). In determining whether a creditor has made a substantial contribution, "the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions." *Hall Fin. Grp., Inc. v. DP Partners Ltd. (In re DP Partners, Ltd.)*, 106 F.3d 667, 673 (5th Cir. 1997).

29.     By its nature, a substantial contribution claim is retrospective only, not prospective. There is no way to approve a substantial contribution claim before a bankruptcy case is largely concluded because no substantial contribution has been made and no claim exists. Moreover, the award of fees and expenses for making a substantial contribution must be reasonable, and that determination cannot be made prospectively either.

30.     At this stage of the case, it is a legal impossibility that anyone could have and prove a substantial contribution claim for reasonable fees and expenses, and the AHC should not be awarded one. The Bankruptcy Code contains no provision for interim payment of substantial contribution fees and expenses. Even if it were proper to award fees for a substantial contribution on a prospective basis, payment of the AHC's investment banker's fees and expenses would not be permissible. Section 503(b)(4) only allows for the reimbursement of fees of attorneys and accountants. 11 U.S.C. § 503(b)(4). "[T]he language of § 503(b)(4) (unlike § 330(a)(1)), limits compensation to attorneys and accountants only, rather than any professional. Accordingly, reimbursement for Seidman's [the financial advisor's] services must be

disallowed." *Matter of Baldwin-United Corp.*, 79 B.R. 321, 341 (Bankr. S.D. Ohio 1987). Thus,

the fees and expenses of AHC's investment banker can never be awarded under section

503(b)(4) as a matter of law.

### B. The General Provisions of Section 363 Cannot Be Used to Circumvent the Specific Provisions of Section 503(b).

31.     The United States Supreme Court has held that "in all matters of statutory

construction, the court must begin with 'the language itself [and] the specific context in which

that language is used.'" *McNeill v. United States*, 131 S.Ct. 2218 (2011) (*quoting Robinson v.

Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Lamie v. United States*, 540 U.S. 526, 534

(2004) ("[W]hen the statute's language is plain, the sole function of the courts – at least where

the disposition required by the text is not absurd – is to enforce it according to its terms.").

32.     The Supreme Court also has ruled, including when applying the Bankruptcy

Code, that a specific statutory provision governs a general one. *See, e.g., RadLAX Gateway

Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). In *RadLAX,* the Supreme Court

recited the well-reasoned rule that:

> We find the debtors' reading of § 1129(b)(2)(A)—under which clause (iii) permits precisely what clause (ii) proscribes—to be hyperliteral and contrary to common sense. A well established canon of statutory interpretation succinctly captures the problem: "[I]t is a commonplace of statutory construction that the specific governs the general." (citation omitted). That is particularly true where, as in § 1129(b)(2)(A), "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions."

*Id.* (citation omitted) (emphasis added).[7]

---

[7]     *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (specific statutory provision normally controls one of more general application); *Bloate v. United States*, 130 S.Ct. 1345, 1353-1354 (2010) (same)); *Radzanower v.

33.     The Third Circuit adheres to this approach.  *See Kannikal v. Attorney General US*, 776 F.3d 146, 1355 (2d Cir. 1996) (citing both *Morales* and *RadLAX* with respect to the specificity of Title VII's limitations scheme over a more general section of Title VII, stating "[I]t is a commonplace of statutory construction that the specific governs the general . . .").

34.     The "specific governs the general" canon of statutory interpretation applies here. Congress targeted a specific problem— payment of reasonable fees and expenses for ad hoc committees making a substantial contribution—with a specific solution—sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.  An ad hoc committee can have its fees and expenses paid, but only after giving notice to creditors and after proving to a court that it made a substantial contribution to a case and that its fees and expenses are reasonable.  The parties cannot evade the mandatory statutory scheme by agreement: "the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences."  *Lehman*, 508 B.R. at 294.

35.     Further, the Supreme Court has articulated that a statutory provision should not be construed to render any other provision of the statute superfluous.  *See Turner v. Rogers*, 131 S. Ct. 2507, 2522 (2011) ("The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also sub silentio provide that right far more broadly in another, more general, provision.").

36.     When these traditional principles of statutory construction are applied to the issues before this Court, the resulting conclusion is that section 503(b) is the only Bankruptcy

---

*Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.") (*quoting Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).

14

Code section to directly address the issue of the payment of professionals for an ad hoc committee and is the only appropriate statutory provision under which this Court should consider the Motion. *See Lehman*, 508 B.R. at 294 (committee members seeking repayment of legal fees must seek reimbursement under sections 503(b)(3)(D) and 503(b)(4)).

37.     The Debtor and the AHC must comply with section 503(b) at the conclusion of the case when the Court can determine for itself whether a substantial contribution has been made and whether the compensation sought is reasonable.

**C.  The Motion Cannot be Approved Pursuant to Section 363.**

38.     The U.S. Trustee recognizes that, in *Mallinckrodt*, this Court authorized debtors to assume prepetition restructuring support agreements, pursuant to section 365, and to enter into additional restructuring support agreements post-petition pursuant to section 363, which ruling was upheld by the District Court for the District of Delaware. *See In re Mallinckrodt PLC,* No. 21-167, 2022 WL 906459 (D. Del. March 28, 2022).

39.     However, even if analyzed under section 363, the Motion must be denied. As courts have recognized, section 363(b) is not a blank check for debtors merely to do whatever they want to do. *See, In re Lionel Corp.,* 722 F.2d 1063, 1069 (2d Cir. 1983) (holding that section 363(b) does not grant judges carte blanche to use section 363(b) to justify any action and to rule otherwise would have section 363 swallow up other provisions of chapter 11.) Rather, under section 363, the Debtors must meet their burden to establish that it is within the "sound exercise of their business judgment" to enter into agreements to reimburse the professional fees of the AHC. *Mallinckrodt PLC,* 2022 WL 906459 at *6.

40.     Notably, the only support offered by the Debtor for the relief sought is a copy of the Reimbursement Agreements and the engagement letter with Rothschild. *See* Mot. Exs. B-1,

B-2 and B-3.   The Debtors have not provided any declaration of an officer or director, or any

other individual, supporting their business judgment claim.   There is no evidence of who

participated in making the relevant decisions, nor have the Debtors explained the basis for same.

41.    Additionally, the Debtors have not provided evidence that the reimbursements

they seek to make "will be for work that benefits the debtors' estates as a whole, rather than

individual creditors or creditor groups." *Mallinckrodt,* 2022 WL 906459, *4.  To the contrary,

the Motion states that the AHC "solely represents the interests of non-US customers of

FTX.com" (Mot., ¶ 2), which can fairly be called a particular "creditor group[]." *Mallinckrodt,*

2022 WL 906459, at *4.

42.    The factual differences between these cases and those of *Mallinckrodt*

demonstrate why the Motion should not be granted in these cases even under a section 363

analysis:

(a)    In *Mallinckrodt,* the composition of the ad hoc committee was significantly

different than that of the official committees.   There, the U.S. Trustee had

appointed two official committees, one comprised of trade and litigation

unsecured creditors, and the other comprised of opioid claimants.  *See*

*Mallinckrodt,* Bankr. Case No. 20-12522 (JTD), D.I. 306 (Notice of

Appointment of Committee of Unsecured Creditors) and D.I. 308 (Notice of

Appointment of Opioid Related Claimants Committee); *see also*

*Mallinckrodt PLC,* 2022 WL 906459, at * 2.   There were three ad hoc

committees, two of which were comprised solely of governmental entities

holding opioid-related claims, and one of which was comprised of holders

of Mallinckrodt's guaranteed unsecured notes.  *See Mallinckrodt,* 2022 WL

906459 at * 1.   There was no similarity between the members of the ad hoc

groups and the two official committees, except that the indenture trustee of

the guaranteed unsecured notes was a member of the official committee of

16

unsecured creditors.  As stated by the District Court in *Mallinckrodt,* "***[t]he*** ***official committees also are not (and do not include among their*** ***membership) governmental entities that can help broker broader*** ***consensus among other similarly situated public entities***." *Mallinckrodt,* 2022 WL 906459 at *8 (emphasis added).  In contrast, in the FTX cases, all of the members of the AHC and all members of the Official Committee are customers of the same FTX.com platform.

(b) In *Mallinckrodt,* the agreements which obligated the debtors to pay ad hoc committee fees also obligated the ad hoc committees to support the debtors' proposed plan.  In fact, the ad hoc committees were referred to as the "RSA Parties."  *See Mallinckrodt,* 2022 WL 906459 at *1 - *2.  In its opinion, the District Court cited to the declaration of the debtors' witness, which represented that, "the RSA Parties would abandon the RSA and their support for Debtors' reorganization without assurances of payment [of their professional fees]," and "loss of RSA Party support would be detrimental not only to the Debtors, but to all creditors."  *See id.* at *2; *see also id.* at * 4 (referencing testimony before this Court to the same effect).  In contrast, in the FTX cases, the AHC has not signed any RSA.

(c) In *Mallinckrodt,* the debtors' motions were supported by declarations and hearing testimony from its financial advisor.  *Id.* at * 2 - *4.  The Debtors have not filed any declarations supporting their Motion, and have not identified any witnesses who will testify at the hearing.

(d) In *Mallinckrodt,* the ad hoc committees were seeking payment of prospective fees and expenses only, whereas here the AHC is seeking reimbursement of fees and expenses already incurred, as well as prospective fees and expenses. That difference is significant because the District Court in *Mallinckrodt* ruled that this Court was correct that "§§ 363(b) and 365(a) provide the right procedural mechanism[s] through which Debtors may seek to pay the RSA Party professional fees and expenses *on a prospective basis*." *Mallinckrodt,* 2022 WL 906459 at *6 (emphasis added, internal quotations omitted).  Even

17

the Debtors admit, in their Motion, that 503(b)(4) of the Code "creates a
mechanism for *retrospective payments* to non-estate professionals." Mot. ¶ 19
(emphasis added).

43.     The Debtors seek to justify paying the professional fees of the AHC by posing the
AHC as an alternative to negotiating with the "millions of non-US customers of FTX.com . . . or
even a large subset of them, [which] would be impractical." Mot. ¶ 22.  However, the Debtors
can reach the same result by negotiating with the Official Committee, which is comprised
exclusively of members of customers of FTX.com, most of whom are non-US customers like the
AHC members.[8]  The Debtors have not, and cannot, establish that it is a "sound exercise of
business judgment" to pay the professional fees of two committees who represent the exact same
constituency.

**D.     Other Objections to the Motion**

44.     In addition to the above objections, the U.S. Trustee also objects to the fact that
the Motion did not file the engagement agreement with either law firm representing the AHC.

45.     The U.S. Trustee further objects to the following aspects of the Rothschild
engagement agreement:

(a)     the obligation of the Debtors' estates to pay a transaction fee of $3.5 million
upon the effective date of a confirmed chapter 11 plan, even if the AHC

---

[8]     The Debtors indicate in the Motion that *non-U.S.* customers of FTX.com will constitute their own
class under the plan they currently anticipate pursuing. *See* Motion, ¶ 2.  However, the draft plan that
the Debtors filed indicates that "[a]ll customers of FTX.com (other than holders of NFTs) will
constitute a single class." D.I. 2100, ecf p. 5 of 80 (description of Class 4 A).  The Plan does not
propose to treat U.S.-based customers of FTX.com differently than non-U.S. customers of FTX.com.
It is therefore not clear why the Debtors, in the Motion, repeatedly state that the members of the AHC
are all non-U.S. persons or entities.

terminates Rothschild with cause, or Rothschild terminates the engagement
without cause;

(b)    the obligation of the Debtors' estates to pay a transaction fee of $3.5 million
even if the effective date of the plan occurs up to one year after a
termination of Rothschild;

(c)    the obligation of the Debtors' estates to indemnify Rothschild, without the
exceptions that are standard in orders in this District approving retention of
investment bankers by Debtors or the Committee.  *See, e.g*., order approving
the retention of Jefferies LLC as investment banker to the Official
Committee in these cases, D.I. 729 ("Jefferies Retention Order"), ¶ 10;

(d)    the exculpation included in the Rothschild engagement agreement, given
that  exculpation is something to be provided to estate fiduciaries as part of a
chapter 11 plan, and the engagement agreement expressly states that
Rothschild is not an estate fiduciary (*see* Rothschild Engagement
Agreement, Ex. B-2 to Motion, Section 5 (Indemnity and Exculpation),
Exhibit A thereto (detailed indemnification), and Section 7 (e)("Rothschild
& Co will not act, nor will it be deemed to have acted, in any managerial or
*fiduciary capacity* whatsoever with respect to the [Debtors], Counsel [to the
AHC] or the Executive Committee [of the AHC.]")(emphasis added)); and

(e)    the provision set forth in the proposed order that Rothschild "shall be
required only to keep summary time records in one-half hour (0.5)
increments," without any specification as to what constitutes "summary time
records."  *See* Ex. A to Mot., ¶6.  Rothschild should be directed to comply
with all requirements of Local Rule 2016-2, including all information and
time keeping requirements of subsection (d) of Local Rule 2016-2, other
than the requirement that time records be kept in increments of one-tenth of
an hour.  *See, e.g.*, Jefferies Retention Order, D.I. 729, ¶ 5.

46.    The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and

all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or

modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the relief requested by the Motion, and grant any such other and further relief that the Court deems just and proper.

Respectfully submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

Dated: September 6, 2023

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Juliet.M.Sarkessian@usdoj.gov