**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 4, 2023 at 1:00 p.m. ET**<br>**Obj. Deadline: September 20, 2023 at 4:00 p.m. ET** |

**SECOND MOTION OF DEBTORS FOR ENTRY OF AN ORDER EXTENDING
THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS
MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively,

the "Debtors")[2] hereby submit this motion (this "Motion") for entry of an order, substantially in

the form attached hereto as Exhibit A (the "Order"), pursuant to section 1121(d) of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 9006(b)(1) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9006-2 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District

of Delaware (the "Local Rules"), further extending the exclusive periods during which only the

Debtors may file a chapter 11 plan and solicit acceptances thereof.  Specifically, the Debtors seek

to (a) extend the Debtors' exclusive period to file a chapter 11 plan (the "Exclusive Filing Period")

from September 7, 2023 for an additional 120 days through and including January 5, 2024 and (b)

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list
of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is
Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    For the avoidance of doubt, this Motion seeks to extend only the Exclusive Periods for FTX Trading Ltd. and its
affiliated debtors and debtors-in-possession and not for Debtor Emergent Fidelity Technologies Ltd.

{1368.002-W0072352.}

extend the Debtors' exclusive period to solicit acceptances of a chapter 11 plan (the "<u>Exclusive Solicitation Period</u>" and, together with the Exclusive Filing Period, the "<u>Exclusive Periods</u>") from November 6, 2023 for an additional 120 days through and including March 5, 2024, in each case without prejudice to the Debtors' ability to seek further extensions of the Exclusive Periods.  In support of the Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1.      As the Court is well aware, these Chapter 11 Cases are some of the most complex and daunting ever filed in any court.  Challenges include the size and diverse nature of the Debtors' businesses, which include multiple cryptocurrency and derivative exchanges, trading businesses, investment vehicles and multi-million dollar side projects; the lack of clear law or regulation concerning cryptocurrency or customer rights; the virtual absence of corporate governance across a group of over one hundred companies in dozens of countries; the criminal investigation and prosecution of the prepetition senior management team; the absence of reliable financial statements; extensive U.S. Federal, State and global regulatory investigations; Congressional investigations; affiliate insolvency proceedings in non-U.S. jurisdictions; four lending "partner" chapter 11 proceedings in the United States; numerous investments across specialized asset classes; thousands of potential avoidance actions and litigation claims; and, of course, millions of hurt, misled, and legitimately angry creditors.

2.      In ten months, the Debtors, this Court and the chapter 11 process have made order out of chaos.  Since the Court entered the First Exclusivity Extension Order in April 2023, these Chapter 11 Cases have proceeded step-by-step in an organized and deliberate manner to maximize and secure the value of these estates for creditors.  Since April, the Debtors have established two separate bar dates for the millions of customers and non-customers holding claims,

and created a bespoke interface for the submission of customer proofs of claim that allows customers to review their balance as of the Petition Date and historical transaction history.  The Debtors have continued their asset protection and recovery efforts, and at current market pricing have marshalled over $7 billion of assets available for distribution to creditors.  Those efforts are ongoing, including by pursuing highly valuable causes of action to recover assets for the benefit of the Debtors' estates and creditors.  To that end, the Debtors have filed numerous complaints, including, among others, a 48-count complaint against Samuel Bankman-Fried and the other insiders, a complaint alleging $700 million in claims relating to an investment in K-5, a complaint alleging $300 million in avoidance claims relating to Debtor FTX Europe AG, and a complaint alleging $200 million in avoidance claims relating to the acquisition of non-Debtor Embed Financial Technologies Inc.  More are coming.  The Debtors are committed to holding accountable those responsible for the Debtors' collapse, and will seek to recover all of the funds improperly transferred away from the Debtors prepetition.

3.    In parallel, the Debtors have published their first two interim reports on the actions that precipitated the filing of these Chapter 11 Cases, providing information about the collapse.  These reports have been widely cited by stakeholders and the public.  The Debtors and their professionals have also worked to develop a thoughtful token monetization plan to preserve and maximize the value of their digital assets.  The Debtors have continued to advance sale processes, including for the sale of the FTX.com exchange.  The Debtors also completed a number of non-strategic dispositions pursuant to the de minimis asset sale procedures and standalone private sales.  The Debtors' work continues to reconcile and reconstruct the prepetition accounting books and records.  These efforts have led to, among other things, the herculean accomplishment of recently filing the 2022 tax returns for each of the Debtors.

4.      Most significantly, consistent with the Debtors' previously disclosed timeline, on July 31, 2023, the Debtors filed their draft proposed plan of reorganization and accompanying draft term sheet.  This watershed moment, coming less than nine months after the Debtors' spectacular collapse, resulted after months of discussions with the Committee's professionals and with creditor groups and reflects consensus on all but a limited list of open issues. The primary purpose of the Draft Plan is to provide a transparent basis for negotiation of the open issues among the Debtors' diverse sets of stakeholders.  Although most of the open issues are matters with respect to which different creditors and customer groups have different interests and opinions, the Debtors earnestly believe the plan of reorganization for these Chapter 11 Cases can and should be largely *consensual*.

5.      To that end, creditor meetings with principals are scheduled in September as a critical step to filing a value-maximizing plan of reorganization and disclosure statement before the end of the year.  To facilitate the enforcement of any confirmed plan of reorganization in The Bahamas, the Debtors are engaged in mediation with the joint provisional liquidators for FTX Digital Markets.  And the mediator, Judge Fitzgerald, has confirmed her availability to assist to mediate any other plan issues if and when required.

6.      Incredible progress has been made, but more time is needed.  Only the Debtors can complete this puzzle successfully because only the Debtors have a fiduciary duty to all the competing stakeholders.  The Debtors seek by this Motion to continue and complete this work with exclusivity in place and without the specter of competing plans that favor one interest group over another.  Expiration of exclusivity would derail the Debtors' progress, skyrocket costs, and destroy value.  Moreover, the customer bar date will not even occur until September 29, 2023. As a result, the Debtors' second request for an extension of the Exclusive Periods for an additional

120 days should be granted.

**Background**

7.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

8.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] (the "Ray Declaration"), the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

9.      On April 12, 2023, the Court entered the *Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 1276] (the "First Exclusivity Extension Order").  The First Exclusivity Extension Order extended the Exclusive Filing Period to September 7, 2023 and the Exclusive Solicitation Period to November 6, 2023.

10.     On July 31, 2023, the Debtors filed the *Draft Plan of Reorganization* and accompanying *Term Sheet* [D.I. 2100] (together, the "Draft Plan").

## Jurisdiction

11.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is section 1221(d) of the Bankruptcy Code.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

12.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, extending (a) the Exclusive Filing Period from September 7, 2023 by 120 days through and including January 5, 2024, and (b) the Exclusive Solicitation Period from November 6, 2023 by 120 days through and including March 5, 2024, in each case without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

## Basis for Relief

### I.     Legal Standard for Extending the Exclusive Periods.

13.     Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case and the exclusive right to solicit votes for its plan for an additional 60 days.  11 U.S.C.

§§ 1121(b), (c).  On April 12, 2023, the Court granted an initial extension of the Exclusive Periods for 180 days.  Currently, the Debtors' Exclusive Filing Period will expire on September 7, 2023, and the Debtors' Exclusive Solicitation Period will expire on November 6, 2023.[3]

14.    Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend a debtor's exclusive period for filing a chapter 11 plan and to solicit votes thereof, for "cause" shown, to a date that is no later than 18 months (to file a plan) and 20 months (to solicit votes) from the Petition Date.  11 U.S.C. § 1121(d).  Although the Bankruptcy Code does not define "cause," legislative history indicates that it is intended to be a flexible standard that provides bankruptcy courts discretion to extend the exclusivity period based on the specific circumstances of a particular case.  *See* H.R. Rep. No. 95-595 at 231; *see also First Am. Bank* v. *Sw. Gloves & Safety Equipment, Inc.*, 64 B.R. 963, 965 (Bankr. D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion.").  This flexibility is intended to give a debtor an adequate opportunity to stabilize its businesses at the outset of the case and to then negotiate a plan with its creditors.  *See In re Spansion, Inc.*, 426 B.R. 114, 140-41 (Bankr. D. Del. 1991) ("The purpose of the exclusivity period is to provide a debtor . . . with 'the unqualified opportunity to negotiate a settlement and propose a plan of reorganization.'") (internal quotation omitted).

15.    The complexity and size of a chapter 11 case alone may warrant extension of the exclusive periods in order to permit a debtor a meaningful opportunity to formulate and seek confirmation of a chapter 11 plan.  *See, e.g.*, *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y.

---

[3]    Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods automatically extends the Exclusive Periods until the Court acts on the Motion without the necessity for entry of a bridge order.

1987) (holding that "cause" existed to grant the debtor's first request to extend exclusivity based on the size and complexity of the case); *accord In re Nicolet, Inc.*, 80 B.R. 733, 741-42 (Bankr. E.D. Pa. 1987) (refusing to deny the debtor's exclusivity motion, despite the debtor's failure to show cause, because of the case's complexity).  In addition, courts often consider non-exclusive factors in determining whether "cause" exists to extend a debtor's exclusive periods, including:

- the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

- the existence of good faith progress toward reorganization;

- the fact that the debtor is paying its bills as they come due;

- whether the debtor has demonstrated reasonable prospects for filing a viable plan;

- whether the debtor has made progress in its negotiations with creditors;

- the amount of time that has elapsed in the case;

- whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

- the existence of an unresolved contingency.

*See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (reciting these "objective factors[,] which courts historically have considered"); *In re Burns & Roe Enters.*, 2005 WL 6289213, at *3-4 (D.N.J. Nov. 2, 2005) (listing some of these factors in defining "cause").

16.    Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods.  *See In re Texaco*, 76 B.R. at 327 (holding that "sheer size alone" provided sufficient cause to extend exclusivity); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("[N]ot all [factors] are relevant in every case.  Nor is it simply a question of adding up the number of factors which weigh for and against an extension.  It is within the discretion of the bankruptcy court to decide which factors are

relevant and give the appropriate weight to each."); *see also In re Cent. Jersey Airport Servs.*, 272 B.R. 176, 184 (Bankr. D.N.J. 2002) (discussing only two of nine factors in holding that the debtor had shown cause).

17.    This Motion is the Debtors' second request to extend the Exclusive Periods. Courts in this district routinely grant second requests to extend exclusivity in large, complex reorganizations similar to these Chapter 11 Cases.  *See, e.g.*, *In re Hertz Corp.*, Case No. 20-11218 (MFW) (Apr. 14, 2021) [D.I. 3905] (granting second exclusivity extension by 130 days); *In re Boy Scouts of Am. & Del. BSA, LLC*, Case No. 20-10343 (LSS) (Oct. 30, 2020) [D.I. 1606] (granting second exclusivity extension by 155 days); *In re JRV Grp. USA L.P.*, Case No. 19-11095 (CSS) (Jan. 16, 2020) [D.I. 302] (granting second exclusivity extension by 121 days); *In re Consolidated Infrastructure Grp., Inc.*, Case No. 19-10165 (BLS) (Oct. 24, 2019) [D.I. 306] (granting second exclusivity extension by 123 days); *In re Zohar III, Corp.*, Case No. 18-10512 (KBO) (Jan. 8, 2019) [D.I. 616] (granting second exclusivity extension by 225 days).

## II.    **Ample Cause Exists to Extend the Debtors' Exclusive Periods.**

18.    The facts and circumstances of these Chapter 11 Cases demonstrate that sufficient cause exists to grant the Debtors' requested 120-day extension of the Exclusive Periods.

### A.    <u>These Chapter 11 Cases are Large and Complex.</u>

19.    The scale and complexity of these Chapter 11 Cases are well-established. There are nearly 100 current Debtors, millions of customers and other parties-in-interest, billions of dollars in marshalled assets and billions of historical transactions.  There is no debate that these Chapter 11 Cases present complex issues of fraud, dishonesty, and misconduct in the affairs of the Debtors by past (and not current) management, all of which require investigation and hindered the pace of developing and prosecuting a plan of reorganization.

20.     The significant challenges facing the Debtors have been compounded by well-publicized contemporaneous criminal and regulatory investigations.   Since the First Exclusivity Extension Order, the Debtors have continued to cooperate with and respond to inquiries and requests for documents and information from numerous international, federal and state governmental authorities and agencies regarding the Debtors' prepetition actions.   These Chapter 11 Cases also continue to require coordination with many constituencies, both before this Court and in several other chapter 11 and foreign insolvency proceedings.   The pace of the Debtors' progress has inevitably been impacted by this necessary collaboration.

21.     Enormous progress has been made since the First Exclusivity Extension Order, including the filing of a Draft Plan.  But there is much still to do to transform the Draft Plan from that—a draft that reflects initial creditor input—into a confirmable chapter 11 plan that appropriately addresses novel issues of law and a complex estate, and to build consensus for that plan with the Debtors' diverse set of stakeholder constituencies.  Accordingly, further extension of the Exclusive Periods is appropriate given the scale and complexity of these Chapter 11 Cases.

B.     <u>More Time is Necessary to Permit the Debtors to Negotiate a Chapter 11 Plan and Prepare Adequate Information.</u>

22.     Only one month has passed since the Debtors filed their Draft Plan.  As indicated in the *Debtors' Response to the Statement of the Official Committee of Unsecured Creditors* [D.I. 2143] (the "<u>Draft Plan Response</u>"), "[t]he primary purpose of the Draft Plan [was] to provide a transparent basis for negotiations among diverse stakeholders.  The Debtors' next milestone is the filing of an amended plan and disclosure statement by the end of the year." (*See* Draft Plan Response at 1-2.)  Sufficient time is needed to continue and complete these complex negotiations, and potentially conduct mediation, if necessary.  Moreover, the claims bar date for customers and for governmental units does not occur until September 29, 2023—*after* the

conclusion of the current Exclusive Filing Period.  Information on filed customer claims is critical to determining potential ranges of recovery for all classes of claims and necessary disclosures in connection with the plan confirmation process.  The filed claims to date reflect material differences from the scheduled claims and must be analyzed and taken into consideration before finalizing an amended plan.  The Debtors believe that an extension of the Exclusive Filing Period of 120 days to January 5, 2024 will permit these negotiations to occur, all customers and governmental units to file their proofs of claim, and the Debtors to file a revised plan, a disclosure statement, and a solicitation procedures motion before the end of the year in accordance with the timeline previously disclosed to the Court and stakeholders.

C.    The Debtors Have Made Substantial Progress in These Chapter 11 Cases.

23.    Very significant progress has been made since the First Exclusivity Extension Order.  As otherwise noted, the Debtors have, among other things:

- Filed the Draft Plan;

- Established bar dates for customer and non-customer claims;

- Designed, built and launched a user-friendly portal for the approximately nine million Debtor customers to view historical transactions and balances as of the Petition Date and submit proofs of claims;

- Filed the 2022 tax returns with the IRS for all of the FTX Debtors;

- Continued to rationalize their workforce and exit contracts and leases;

- Identified and recovered billions of dollars of liquid assets, many of which were frozen by custodians and/or held in the names of third parties to disguise ownership;

- Collected, organized and reviewed voluminous corporate records across various traditional and non-traditional media of communications;

- Reconstructed the Debtors' prepetition balance sheets;

- Continued providing information to, and cooperating with requests from, global law enforcement and regulatory authorities, including the U.S. Department of Justice, the Financial Services Committee of the U.S. House of Representatives, the U.S. Securities and Exchange Commission, the U.S. Commodity Futures Trading Commission, and numerous State and foreign authorities;

- Investigated, prepared, and filed significant litigation claims, including avoidance actions, including a 48-count complaint against Samuel Bankman-Fried and the other insiders, a complaint alleging approximately $700 million in connection with an investment into K-5, a complaint alleging approximately $300 million in avoidance claims relating to the purchase of Debtor FTX Europe AG, a complaint alleging approximately $200 million in avoidance claims relating to the acquisition of non-Debtor Embed Financial Technologies Inc., and a $70 million avoidance action against Latona;

- Investigated and issued two interim reports to the Debtors' independent directors regarding various prepetition activities, including control failures at the Debtors' businesses and the commingling and misuse of customer deposits at FTX.com;

- Represented the Debtors in other cryptocurrency chapter 11 cases, including Voyager Digital, Celsius Networks, BlockFi, and Genesis Digital;

- Continued to provide significant amounts of information to the Committee and customers;

- Conducted four M&A processes for different operating businesses, culminating in the sale of LedgerX for $50 million;

- Continued pursuit of a sale of the FTX.com exchange;

- Completed the sales of various venture capital assets and certain de minimis assets, including the $96 million Mysten Labs sale, the $45 million Sequoia interests sale, and the $20 million Sequoia Heritage interests sale;

- Negotiated and filed a motion to approve a settlement with Genesis and its affiliates that will return significant value to the estate and avoid complex multi-debtor and multi-jurisdiction litigation;

- Negotiated a process to resolve the Debtors' claims against Voyager, including through mediation (that is underway) and then litigation of the merits of the Debtors preference claims before this Court; and

- Advanced litigation and mediation (that is underway) to resolve disputes between the Debtors and the joint provisional liquidators of FTX Digital Markets.

24.     It is irrefutable that the Debtors continue to make an extraordinary amount of progress in a uniquely challenging operating environment.  Indeed, the Fee Examiner appointed in these Chapter 11 Cases remarked on "the creativity, professionalism, and personal sacrifice of the [r]etained [p]rofessionals who sprung into action in November." *Fee Examiner's Summary Report on Fee Review Process and First Interim Fee Applications* at 3 [D.I. 1663].  The Debtors require additional time to capitalize on this progress and advance these Chapter 11 Cases to a successful conclusion.

D.     The Debtors Are Paying Their Bills as They Become Due.

25.     The Debtors have more than $2 billion cash on hand and have been paying their undisputed postpetition bills as they become due.  Because the Debtors continue to meet their ongoing postpetition obligations, the requested extension of the Exclusive Periods will not jeopardize the rights of any creditors or other parties providing goods or services to the Debtors during these Chapter 11 Cases.

E.     The Debtors Have Demonstrated Strong Prospects for Filing a Plan.

26.     The Debtors have filed their Draft Plan.  This filing reflects the Debtors' work to understand the scope and nature of customer entitlements and the Debtors' assets and liabilities, and to formulate a plan in the best interests of the stakeholders in these Chapter 11 Cases.  This filing also reflects initial discussions and input from various creditor constituents and, as noted in the Draft Plan, intentionally left for negotiation a number of important issues including the amount of property to be allocated to exchange shortfall claims against the general pool of assets, and governance of the offshore exchange, venture trust, and other entities post-confirmation

of a plan of reorganization.  The plan of reorganization impacts millions of stakeholders and requires more time to negotiate and finalize.

27.     Thus, the Debtors decided to file a Draft Plan publicly at this early stage in order to facilitate creditor feedback and the consensual resolution of certain issues.  The progress to date and ongoing process to resolve the open issues clearly demonstrate that the Debtors have more than reasonable prospects for filing a confirmable chapter 11 plan, and they intend to do so before the end of 2023.

F.     The Debtors Have Made Progress in Discussions with Creditors and Other Parties-In-Interest.

28.     The Debtors continue to collaborate with their creditors, including the Committee and the ad hoc committee of customers.  As noted in the Draft Plan Response, while the Debtors and the Committee may not always agree on underlying issues, the Debtors have and will continue to engage extensively with the Committee and its professionals, and other key stakeholders in these Chapter 11 Cases, in an effort to build consensus in a constructive manner. Importantly, the ad hoc committee filed an adversary proceeding relating to the issue of whether customers have rights in property to any of the Debtors' assets.  Consensual resolution of these issues will avoid delays in confirming a plan and exiting chapter 11.  Accordingly, the Debtors are devoting substantial resources to providing information to the ad hoc committee advisors in order to facilitate productive discussions, which should lead to a consensual resolution of the customer property claims.

G.     Relatively Little Time Has Elapsed in These Chapter 11 Cases.

29.     This is only the Debtors' second request for an extension of the Exclusive Periods and comes less than ten months after the Petition Date.  As noted above, in cases of this magnitude and novelty, courts routinely grant debtors' second requests for extension of exclusivity

of similar lengths.

H.    <u>The Debtors Are Not Seeking an Extension to Pressure Creditors.</u>

30.    The Debtors' request to extend the Exclusive Periods is not intended to exert leverage over creditors or any other party affected by these Chapter 11 Cases.  To the contrary, the Debtors propose extending the Exclusive Periods to build on the momentum they have built thus far and to continue to engage in constructive negotiations and discussions with key creditor constituencies.  Indeed, the Debtors filed the Draft Plan in order to *facilitate* collaboration with creditors—not stifle it.

I.    <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Chapter 11 Cases.</u>

31.    Termination of the Exclusive Periods would adversely impact the Debtors' efforts to maximize the value of their estates and the progress of these Chapter 11 Cases.  The Debtors have just filed their Draft Plan with a broadly supported structure and channeled key stakeholders towards focused plan negotiations.  Termination of exclusivity now, immediately after that filing, would result in chaos.  Parties-in-interest who are currently participating in discussions with the Debtors may cease to do so, stalling the Debtors' plan progress.  Furthermore, stakeholders may file their own competing plans.  That would distract the Debtors from their own plan formulation efforts, fracture any cohesion that the Debtors have worked for months to establish among key creditor groups, and likely confuse the Debtors' customers and cause them to lose faith in the Debtors' reorganization efforts.  Termination of exclusivity at this juncture would also likely delay resolution of these Chapter 11 Cases and distributions to the Debtors' customers by months.

32.    Accordingly, the Debtors submit that a further 120-day extension of the Exclusive Periods is appropriate in light of the facts and circumstances of these Chapter 11 Cases.

### Notice

33.     Notice of this Motion has been provided to:   (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: September 6, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*