**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Ref. Nos. 2239 & 2452 |

**DEBTORS' REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (I) GUIDELINES FOR THE SALE OR TRANSFER OF CERTAIN DIGITAL ASSETS, (II) THE SALE OR TRANSFER OF SUCH DIGITAL ASSETS IN ACCORDANCE WITH SUCH GUIDELINES FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) THE DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, POSTPETITION HEDGING ARRANGEMENTS, INCLUDING GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS IN CONNECTION THEREWITH AND (IV) THE DEBTORS TO STAKE CERTAIN DIGITAL ASSETS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this reply (the "Reply") in further support of the *Motion of Debtors for Entry of an Order Authorizing and Approving (i) Guidelines for the Sale or Transfer of Certain Digital Assets, (ii) the Sale or Transfer of Such Digital Assets in Accordance with Such Guidelines Free and Clear of Any Liens, Claims, Interests and Encumbrances, (iii) the Debtors' Entry into, and Performance Under, Postpetition Hedging Arrangements, Including Granting Liens and Superpriority Administrative Expense Claims in Connection Therewith and (iv) the Debtors to Stake Certain Digital Assets* [D.I. 2239] (the "Motion")[2] and in response to the objection to the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/ftx. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4867-6482-0862 v.4

Motion [D.I. 2452] (the "Objection") filed by the United States Trustee for Regions Three and Nine (the "U.S. Trustee"). For the reasons set forth below, the Objection should be overruled and the Motion should be granted. In support of this Reply, the Debtors respectfully state as follows:

### Preliminary Statement

1. Given the volatility of digital asset markets, the Debtors' ability to manage their Digital Assets is imperative to preserving and maximizing the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, after consultation with the Committee and the Ad Hoc Committee, the Debtors filed the Motion seeking authority to implement a comprehensive management and monetization plan for their Digital Assets to reduce market volatility exposure and prepare their estates for potential dollarized distributions to creditors in connection with a chapter 11 plan. The U.S. Trustee—the sole objector to the Motion—argues that the Motion should be denied because the Motion purportedly (i) does not comply with the disclosure requirements of Local Rule 4001-2, (ii) does not explain why certain relief is actually necessary to protect the Debtors' estates and (iii) does not provide sufficient notice to all parties-in-interest.

2. Prior to and since the filing of the Objection, the Debtors have been in discussions with the U.S. Trustee regarding its issues, and the Debtors hope to reach a consensual resolution of the Objection. However, pending such consensual resolution, the Debtors submit that the Objection should be overruled and the Motion should be granted. *First,* Local Rule 4001-2 is inapplicable to the Debtors' request for authority to provide Credit Support in connection with the Hedging Arrangements. *Second,* the Hedging Arrangements and the Credit Support related thereto are actually necessary to preserve the value of the Debtors' estates. *Third,* the U.S. Trustee's demand that all parties-in-interest should receive prior notice and opportunity to object and be heard for any permanent increases to the Weekly Limit or proposed sales of Bitcoin or Ether is commercially impractical.

**Reply**

I. **The Disclosure Requirements Under Local Rule 4001-2 Are Inapplicable to the Hedging Arrangements.**

3. Local Rule 4001-2 is not applicable to the relief that the Debtors seek in the Motion. Local Rule 4001-2 imposes certain disclosure requirements on all requests for cash collateral and financing under sections 363 and 364 of the Bankruptcy Code. Del. Bankr. L.R. 4001-2. However, relevant case law indicates that the Local Rule is applied in instances in which a debtor makes a request to obtain debtor-in-possession financing or to enter into similar loan agreements. *See, e.g.*, *In re Center City Healthcare, LLC d/b/a Hahnemann University Hospital*, Case No. 19-11466 (MWF) (June 1, 2023) [D.I. 4708] (authorizing debtor to enter into a financing agreement pursuant, in part, to Local Rule 4001-2); *In re The Hertz Corp.*, Case No. 20-11218 (MFW) (Oct. 29, 2020) [D.I. 1661] (granting debtors' request to obtain DIP financing pursuant, in part, to Local Rule 4001-2).

4. In comparison, courts in this District generally do not subject requests to enter into and perform under hedging agreements and grant related credit support to the requirements of Local Rule 4001-2. In fact, courts in this District routinely approve debtors' proposed hedging and related credit support arrangements without reference to Local Rule 4001-2. *See, e.g.*, *In re Extraction Oil & Gas, Inc.* Case No. 20-11548 (CSS) (July 13, 2020) [D.I. 242] (authorizing debtors to pledge collateral in the form of liens and superpriority claims to hedge counterparties without reference to Local Rule 4001-2); *In re Templar Energy LLC*, Case No. 20-11441 (BLS) (June 29, 2020) [D.I. 136] (same); *In re PES Holdings, LLC*, Case No. 18-10122 (KG) (Feb. 26, 2018) [D.I. 214] (same); *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Jan. 27, 2017) [D.I. 1939] (same).

5.       The Objection misconstrues the Debtors' intent, repeatedly referring to the Debtors' proposed hedging arrangements as "the DIP financing."  (Obj. at ¶¶ 14, 15, 17.)  The Debtors are **not** requesting authority to obtain DIP financing or enter into a similar loan agreement.  Rather, the Debtors are requesting authority to enter into and perform under investment contracts that will involve the hedging of certain of the Debtors' Digital Assets.  Pursuant to such hedging contracts, the Debtors would **only** be granting liens on or superpriority administrative status with respect to the underlying digital asset that is being hedged pursuant to a call option sold by the Debtors to a counterparty (*i.e.*, assets that the Debtors would already have authority to hedge pursuant to the proposed Order).  Market participants require the underlying asset to be pledged as collateral to ensure the hedging transaction will be completed by delivery of the underlying asset, absent which the hedging transaction will not occur.  Providing such liens or superpriority administrative status is the general market practice in the context of hedging arrangements. (Kurtz Decl. at ¶9.)  Accordingly, the Debtors submit that Local Rule 4001-2 is not applicable to the Debtors' proposed hedging arrangements.

6.       Further, to the extent that the Court determines that Local Rule 4001-2 applies to the Motion, the Debtors request that application of Local Rule 4001-2 be waived pursuant to section 105(a) of the Bankruptcy Code and Local Rule 1001-1(c).  Section 105(a) of the Bankruptcy Code provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Further, Local Rule 1001-1(c) allows the modification of the Local Rules by the Court in "the interest of justice."  Del. Bankr. L.R. 1001-1(c).

7.       There are several issues with imposing the disclosure requirements of Local Rule 4001-2.  For example, it would be prohibitively cumbersome and expensive to file the

necessary disclosures identifying each hedging counterparty for each proposed hedging transaction. Critically, publicly disclosing the terms of the hedging agreements, including the specific terms of each proposed hedging transaction, would cause information leakage, inevitably distorting the market and allowing the market to "front run" trades and harming the value of the Debtors' Digital Assets. Finally, the terms of each such hedging transaction are determined immediately prior to the time the agreements are entered into. The Objection demonstrates a lack of understanding about the manner and timing in which trading occurs. Trading in Digital Assets, similar to stocks and bonds, are executed real time based on market quotes which can change in fractions of seconds. If the Debtors were required to publicly disclose the terms and provide parties-in-interest an opportunity to review and object, by the time the Debtors would be authorized to enter into the transactions, the terms would be stale and the Debtors would never be able to effectuate the Hedging Arrangements. Accordingly, to the extent applicable, the Debtors submit that a waiver of the disclosure requirements of Local Rule 4001-2 is warranted and should be granted.

**II.    The Credit Support in Relation to the Hedging Arrangements is Necessary to Preserve the Value of the Estates.**

8. The Objection also asserts that the Motion fails to demonstrate that the Credit Support in relation to the Hedging Arrangements is "actually necessary to preserve the value of the estate." (Obj. at ¶ 16.) However, courts have found hedging arrangements to be necessary to preserving a debtor's estate in industries marked by price volatility, and the granting of liens and superpriority claims have been regarded as a necessary method of inducing counterparties to enter into hedge agreements. *See, e.g., In re Extraction Oil & Gas, Inc.* Case No. 20-11548 (CSS) (July 13, 2020) [D.I. 242] (authorizing debtors to pledge collateral in the form of liens and superpriority claims as a method of providing necessary comfort to induce counterparties to enter

into hedging agreements); *In re Templar Energy LLC*, Case No. 20-11441 (BLS) (June 29, 2020) [D.I. 136] (same); *In re PES Holdings, LLC*, Case No. 18-10122 (KG) (Feb. 26, 2018) [D.I. 214] (same); *In re Samson Res. Corp.*, Case No. 15-11934 (CSS) (Jan. 27, 2017) [D.I. 1939] (same).

9. As noted in the Motion and in the Mosley Declaration filed in support, the digital asset markets are similarly characterized by extreme and unpredictable price movements, and the Management and Monetization Guidelines, including the Hedging Arrangements, were designed with the purpose of mitigating those risks. (Mot. at ¶¶ 1, 2; Mosley Decl. at ¶ 6.) Further, as noted in the Motion and in the Kurz Declaration filed in support, it is customary market practice for parties to hedging contracts to provide credit support to reduce counterparty credit risk (*i.e.*, the risk that a counterparty to a hedging contract fails to perform its obligations). (Mot. at ¶ 44; Kurz Decl. at ¶ 9.) The proposed Credit Support is, therefore, an integral part of the Hedging Arrangements, without which they would not be commercially viable. As a result, the Debtors submit that the Hedging Arrangements, and the provision of Credit Support in relation thereto, are necessary to protecting the value of the Debtors' estates.

**III.    Limited Notice of Requests to Permanently Increase the Weekly Limit and Sell Certain Digital Assets Is Appropriate Pursuant to Section 105(a).**

10. The Objection further asserts that the Debtors should be required to publicly notify all parties-in-interest of future requests to permanently increase the Weekly Limit on Digital Asset sales and of future sales of Bitcoin, Ether or insider-affiliated tokens. (Obj. at ¶¶ 19, 20.) As an initial matter, the Motion seeks Court approval of the sale *procedures*, and such procedures permit the Debtors to only provide such notice to the Committee and Ad Hoc Committee. The Debtors filed the Motion on the docket and served it on required parties, and no parties (other than the U.S. Trustee) objected to the procedures. If parties-in-interest wanted an opportunity to receive notice of these potential sales, their opportunity to object was *now*, and none did so.

11.     However, to the extent the Court deems such public notice is required in any event, the Debtors request that such requirement be waived in accordance with section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  In addition, the Court has authority to "enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by [the Bankruptcy Rules]."  Fed. R. Bankr. P. 2002(m).  Local Rule 1001-1(c) further allows the modification of the Local Rules by the Court in "the interest of justice."  Del. Bankr. L.R. 1001-1(c).

12.     The Debtors submit that notice to all parties-in-interest and opportunity to object and be heard for the permanent increase of the Weekly Limit and proposed sales of Bitcoin, Ether or insider-affiliated tokens is not warranted under the circumstances.  First, as noted in the Motion and the Kurtz Declaration in support, such public notice would inevitably "tip off" the digital asset markets, allowing sophisticated market participants to use such information to their benefit and, necessarily, to the Debtors' detriment.  (Mot. at ¶ 25; Kurz Decl. at ¶ 5.)  If parties in the market become aware that the Debtors are going to increase their weekly sales or that the Debtors intend to sell Bitcoin and Ether, the markets will react to the detriment of the Debtors, since other market participants will be able to transact before the Debtors are able to do so.  The purpose of the Management and Monetization Guidelines is to allow the Debtors, in reliance on professional advice from their investment manager, to act immediately upon market information which could materially benefit the estates or avoid a material loss.  Further, the Debtors' Management and Monetization Guidelines already provide that the Committee and Ad Hoc Committee will receive notice of, and an opportunity to object and be heard on, such requests and

proposed sales, ensuring that the interests of creditors are protected. Accordingly, the Debtors submit that public notice of such requests would risk significant harm to the value of the Debtors' estates without a corresponding benefit.

## Conclusion

For the reasons stated above, the Court should overrule the Objection and grant the Motion.

| | |
|---|---|
| Dated: September 10, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>/s/ Matthew R. Pierce<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         mcguire@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         bromleyj@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |

4867-6482-0862 v.4