

Unit F Bourne End Business Park  
Cores End Road  
Bourne End SL8 5AS  
United Kingdom  

+44 (0)1628 824 900  
postbox@modulesolutions.com  
www.modulesolutions.com  

Honourable Judge John Dorsey  
United States Bankruptcy Court  
District of Delaware  
824 N Market St  
5th Floor, Courtroom 5  
Wilmington, DE 19801  
302-533-3169  

September 12th, 2023

Re:   FTX TRADING LTD Chapter 11  
      22-11068-JTD

Dear Honourable Judge John Dorsey,

I would like to begin with an apology at having to write to you directly in the above matter and extend my advance appreciation that you will take valuable time to read this letter. I have no doubt you are extraordinarily busy, so I have not taken my decision lightly to write to you. My motivation is borne out of the frustration as an FTX customer having to watch from the sidelines as events in the FTX bankruptcy process unfold. I'm not a legal professional and quite unfamiliar with the Court processes in the United States so I appreciate your understanding if my terminology is at all misplaced.

This letter respectfully seeks to draw the Courts attention to timely matters related to the wrong-footed approach by the FTX Debtors ("Debtors") who are looking down the wrong end of the telescope at FTX.com customers ("Customers").

I'd like to begin by briefly outlining my story:

I write as an international FTX.com customer both on behalf of my company and personally. I was interested in purchasing cryptocurrency in 2022 when I became aware of FTX.com which operated as a cryptocurrency exchange. It provided necessary services to exchange fiat currency for crypto currency and vice versa, and to exchange one crypto currency to another. It was an on-ramp from fiat to digital and off-ramp from digital back to fiat. I would later summarily explain its function as being comparable to a currency bureau that you may visit to buy foreign currency for an overseas trip, except rather than buying/selling Euros or Peso it was for buying/selling digital currencies like Bitcoin, Ethereum, and XRP.

I undertook reasonable due diligence into FTX.com before opening accounts - certainly as much as a retail account holder might be expected to do:

- At that time FTX had very good public standing with Sam Bankman-Fried widely heralded as a successful crypto leader and entrepreneur;
- FTX.com was headquartered in Bahamas which operates as a constitutional parliamentary democracy forming part of the British Commonwealth that applies English Common Law as its legal system (at no point did I consider adverse proceedings might end up in US Courts);
- FTX.com was registered with the Securities Commission of Bahamas which provided regulatory governance under the Digital Assets and Registered Exchanges Act, 2020 ("DARE") to protect investors and consumers. This included provision for '*Adequate systems and controls for digital token exchanges*' [see https://www.scb.gov.bs/wp-content/uploads/2020/10/Digital-Assets-and-Registered-Exchanges-Bill-2020-13-October-2020.pdf, Section 17] and imposed conduct and compliance requirements as part of its operational safeguarding. The registration further required FTX.com to demonstrate necessary "*supervisory, internal controls and risk management policies and procedures, including digital token management, cybersecurity operations, operational controls, AML/CFT policies and controls, reporting policies, code of conduct*" [DARE First Schedule Part A, Item 8];
- FTX.us was a separate entity albeit part of the FTX group of companies and being based in the United States was subject to similar federal regulation, including by the Securities and Exchange Commission ("SEC"). To my mind it would have been inconceivable for the SEC

to have been blind to FTX given it was one of the largest and most prominent cryptocurrency exchanges on the planet, and consequently the SEC would likely have been neglecting its mission to protect retail investors if it had not engaged at some level to evaluate and approve the FTX operation.  In response to considerable marketing campaigns and advertising by FTX, the SEC had raised no flags or issued specific warnings to investors and consumers;

- FTX.com was reported to have been audited (by Prager Metis), and although I could not find or access detailed audit documents, I considered that had there been an adverse audit issue it would no doubt have been reported in the press or elsewhere in the public domain given the prominence of FTX.com, and;

- FTX was extremely popular having positive endorsement far and wide - it enjoyed great public support from celebrities, politicians, and business leaders alike.

But, for me, the clincher was found in FTX.com Terms of Service ("ToS") [DOC 328-2] which were stated to be governed by English Law, and these were clear and unambiguous to lay out the interest FTX.com would hold in my property and how FTX.com would treat my digital assets it held in trust [ToS, 8.2.6]:

> "8.2.6 All Digital Assets are held in your Account on the following basis:
>
> (A) Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. As the owner of Digital Assets in your Account, you shall bear all risk of loss of such Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account.
>
> (B) None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading.
>
> (C) You control the Digital Assets held in your Account. At any time, subject to outages, downtime, and other applicable policies (including the Terms), you may withdraw your Digital Assets by sending them to a different blockchain address controlled by you or a third party."

Based on the foregoing, I opened accounts (a business and a personal account) and after depositing fiat currency began purchasing cryptocurrencies.  Each cryptocurrency held on FTX.com had a unique wallet address for deposits and withdrawals which appeared as a standard blockchain address as used by other exchanges and wallets for transfer and storage of cryptocurrencies.  In this regard the process was seamless, straightforward, well executed, and easy

to use. I continued to buy more digital assets. I withdrew digital currency to non-FTX wallets and transferred it back again when I wanted to sell. On the date FTX filed for bankruptcy my accounts held various cryptocurrency balances.

I should like to pause briefly to mention that there has been speculation from some commentators that buying/selling cryptocurrencies on FTX.com was perhaps a phantom event divorced from reality such that the crypto in my account was not really mine. In response I refer to the Terms under which my digital assets were held in trust, and which plainly established my property interest including the absolute control I had over my digital assets. Certainly, as a customer I considered I was buying Bitcoin, Ethereum or XRP when exchanging my deposited fiat currency – this was the stated purpose of the exchange after all. Furthermore, I had no adverse issue moving digital currencies from/to FTX.com which allayed concerns over my crypto balances being my property. And even if my balances held on FTX.com were (wrongly) deemed as some form of promissory note then it would be no different to the status of the fiat currency held in my pocket ("I promise to pay the bearer on demand the sum of …").

When I first became aware of the adverse issues at FTX.com I tried to withdraw my balances to non-FTX wallets, but the events of the collapse had taken over and FTX.com had stopped processing withdrawals (although not for Bahamians for whom FTX.com continued to process around $100 million in withdrawals until the bankruptcy application was made). At that same time, FTX.us was still solvent and was processing withdrawals for its US customers, though given the subsequent identified co-mingling of funds, it's possible that my digital assets were diverted to underwrite withdrawals at FTX.us for US customers. It's also possible my digital assets remain in wallets being used by the Debtors to pay on-going expenses, including the very hefty legal fees, or in wallets earmarked for exchange into USD.

What transpired at FTX.com was undoubtedly unlawful. Key actors like Caroline Ellison, Gary Wang, Nishad Singh, and just recently Ryan Salame, have all plead guilty to related federal charges. There can be no dispute that FTX broke its ToS and acted with malfeasance when it took my digital assets. On December 13th 2022, FTX CEO John J. Ray stated to the House Financial Services Committee about events at FTX, "*This is really old-fashioned embezzlement.*

*This is just taking money from customers and using it for your own purpose."*, and I agree with the character of that observation.  FTX.com had taken my property and used it for a purpose to which I did not consent.  In this context, my account balances might be characterised as nondischargeable debt which cannot be eliminated through the bankruptcy proceedings, yet despite references to unlawfulness, the Debtors have proceeded to treat Customers with stolen cryptocurrencies as common creditors with preferential standing <u>below</u> other classes of creditors (some of whom are set to be fully reimbursed but, as far as I'm aware, who falls into the higher preferential classes of creditors are yet to be announced).  However, and notwithstanding there is a debt, it is my reasonable contention that the Debtor's position is incorrect as a matter of law.  My digital assets were my property held on trust at FTX and therefore they fall outside of the FTX.com bankruptcy estate.  This view is unambiguously conveyed in the ToS ("*None of the Digital Assets in your Account are the property of … FTX Trading*").

Recently, the Debtors have set out draft proposals to monetise the balances held in my account.  Their intention to determine a valuation for settlement proposes a calculation to convert my crypto currency balances into USD-equivalent fiat currency using an exchange rate valuation as-was on November 11th, 2022, the bankruptcy filing date ("Filing Date").  This is wrong-footed and unacceptable.

Additionally, there is pending motion before the Court which seeks permission to sell-off all digital assets, though since the Debtors have reported there was co-mingling of funds, it is entirely reasonable to assume some, if not all, of these cryptocurrencies include safeguarded Customer property.  This too is wrong-footed and unacceptable.

*Firstly*, it is my understanding in English Law, under which FTX.com ToS apply [ToS, 38.11], that cryptocurrencies are recognised as 'property' capable of being held in trust.  International Court rulings have confirmed cryptocurrencies constitute 'property', albeit intangible by nature, including the Hong Kong Court in the ruling of *Re Gatecoin Limited (In Liquidation)* [see judgment at https://legalref.judiciary.hk/lrs/common/ju/ju_frame.jsp?DIS=151622] which provides legal certainty that cryptocurrencies are capable of being held for distribution to creditors, and the legal rights of owners to crypto property in the event of fraud.  Conveniently,

the *Gatecoin* judgment provides several relevant authorities on the matter of crypto 'property' which for the sake of brevity I shall not repeat here.

This Court is aware of the characterisation as it has received legal arguments from the Ad-Hoc Committee so I shall not dwell further than necessary, other than to comment I consider I'm well founded to assert proprietary claims over the cryptocurrencies held in my FTX.com accounts, and which rightfully places my digital assets outside the FTX.com estate.  In any reasonable legal jurisdiction, I'm entitled to have stolen property returned, and in that regard, I don't consent to the Debtors proposal to substitute my digital assets for USD currency - especially when the Debtors have the wherewith-all to transact cryptocurrencies.  In this regard, I hope that the Court will find as I do that the proposed course of action to convert all digital assets into USD by the Debtors is incorrect.

*Secondly*, the ToS provided clear warranty over my property interests ("*Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading.*") which assured FTX.com would protect my digital assets it held in trust ("*None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading.*").  And yet, the present proposals by Debtors to monetise my crypto balances continues to breach these Terms of trust by taking control of my property and unreasonably substituting it for a different asset.  Moreover, building on John J Ray's words (regarding "*embezzlement*") and the identified co-mingling of Customer's digital assets, the Debtors are petitioning the Court to sell-off (stolen) property and I appeal to the Court to provide clear directions to reset the current momentum, as in principle, handling stolen property variously infringes the Law.

Notably, the ToS did not provide the same unambiguous property interests or express trust arrangement for fiat currency, or 'E-Money', held in my account.  The Terms are not explicit but suggest "*… we may redeem any E-Money remaining in your Account and attempt to transfer the equivalent amount of fiat currency to the bank account you have registered with us.*" [ToS, 8.3.8] which somewhat supports the general proposals now being made by the Debtors but importantly,

this is limited to relate to fiat currency and not digital assets. In a similar vein, FTX.us applied different Terms of Service for its US Customers and I offer no comment over those terms.

*Thirdly*, Cryptocurrencies are characteristically a form of 'currency' albeit in a digital and non-tangible format - a fact which the Debtors appear keen to skate over in these proceedings (which is surprising given FTX's business was a crypto currency exchange). It's relevant for the Court not to overlook that fiat currencies commonly function by means of digital non-tangible transactions via debit and credit card transactions, bank transfers, standing orders, even PayPal style service providers that altogether mean we don't rely on carrying cash in our pockets to buy goods and services. Cryptocurrencies operate in the same way with thousands of merchants accepting crypto in exchange for the same goods and services from groceries to cars, hotels, flights, taxis, real estate, education, and everything in between. And many crypto exchanges, digital wallet providers, and other crypto related services provide standard payment cards linked to crypto wallets that offer a seamless payment bridge between fiat and crypto. Given the strikingly similarities it follows that, for example, 1 BTC can reasonably be replaced with another 1 BTC just as $1 can reasonably be replaced by another $1 albeit the serial number on the dollar bill would be different just as when depositing $1 with a bank there is no reasonable expectation to have the exact same dollar bill returned later on via an ATM withdrawal. The same principles apply to cryptocurrency which might have a different blockchain address. There ought to be no sound reason, as the Courts have held, that cryptocurrencies should not be used to repay Customers.

*Fourthly*, it is perhaps relevant to underline to the Court that any USD-equivalent valuation of my crypto based on the exchange rates as-at the Filing Date bakes-in the adverse impacts of the crypto market crash that was directly caused by the adverse chain of events at FTX. To apply this timestamp would be a further adverse blow causing further loss following the initial theft of my property.

Related, the crypto exchange markets are already anticipating the Court judgment on the Debtors petition to sell-off billions of USD-worth of digital assets causing market exchange rates to fall – which action consequently means the Debtors, if successful in their ambition, will not realise the

best or most favourable return for Customers or creditors.  Moreover, it would likely be a false economy for the Debtors to sell-off digital assets they should reasonably have to re-purchase later to return to Customers.

Having regard to the Debtors proposals to monetise my account it is worth noting my USD balance is unaffected by the monetisation proposal - $1 on the Filing Date is still worth $1 now, save for the impacts of inflation.  However, although 1 BTC, 1 ETH or 1 XRP is still worth 1 BTC, 1 ETH or 1 XRP today, the exchange rate between these cryptos and fiat currency has been fluctuating affecting the USD-equivalent valuations.  It's fair to say that I would not have freely sold my digital assets at the bottom of a market crash (or in the present market situation) and it's unreasonable in the circumstances for the Debtors to seek to impose this baseline for the bankruptcy proceedings.

I respectfully ask the Court to direct the Debtors to revise their proposals to reasonably accommodate the return of Customer's cryptocurrencies which FTX took and misappropriated contrary to its unambiguous ToS, and to make such an undertaking on a preferential basis above creditors since these stolen digital assets do not form part of the property of the FTX.com bankruptcy estate.  I'm not blind to the fact that the Debtors are presently unable to fully compensate Customers or creditors and that a (interim) pro-rated repayment is to be expected.  I'm also open-minded to support a future rebooted FTX.com operation that could have the potential to remedy any shortfall in full repayment of my property, perhaps conveyed in the form of an IOU liability with reasonable terms so-as not to stifle or deter operations.  Any other proposal, including to convert my digital currency to USD at an unfavourable rate is prejudiced by design against full recovery of my property.  If the present trajectory is unchanged, the Debtors proposed plan to reimburse my stolen crypto might be compared with a car thief, who stole and crashed a car, with the Court subsequently consenting to a valuation of the vehicle in its post-accident state and for the crook to pay fractional compensation in Venezuelan bolívar.

In summary, I appeal to the Court to uphold other Court judgments to acknowledge the digital assets in my FTX.com accounts were held in trust and not the property of FTX.com, and

consequently to suggest some timely changes which could render matters acceptable to put the Debtors back on the right track.

Lastly, I should also like to briefly note to the Court that since the Kroll Restructuring Administration ("Kroll") adverse security incident that was notified on August 25th, 2023 which resulted in Customer's personal data (name, address, email address, and the balances in FTX account) being exposed to third-parties, the affected Customer accounts have been frozen on the claims portal.  The Court may or may not be aware that since this date Kroll have been unresponsive and unable to resume service.  As of writing today I remain unable to access the claims portal (and it's my understanding I'm not alone with various internet forums and social media alight with comments from Customers in a similar situation).  It is unclear to me what remedies the Court might be able to take in this unforeseen circumstance, but at a minimum, it would be appreciated if the Court could request a full briefing from Kroll and consider reviewing the Customer Bar Date which is due on September 29th, 2023.

Respectfully,

Simon Carter
Director