# **EXHIBIT 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref No. [⋅]2239 |

**ORDER AUTHORIZING AND APPROVING (I) GUIDELINES FOR THE SALE OR TRANSFER OF CERTAIN DIGITAL ASSETS, (II) THE SALE OR TRANSFER OF SUCH DIGITAL ASSETS IN ACCORDANCE WITH SUCH GUIDELINES FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (III) THE DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, POSTPETITION HEDGING ARRANGEMENTS, INCLUDING GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS IN CONNECTION THEREWITH AND (IV) THE DEBTORS TO STAKE CERTAIN DIGITAL ASSETS**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing and approving (i) guidelines for the sale or transfer of certain Digital Assets, (ii) the sale or transfer of such Digital Assets in accordance with such guidelines free and clear of any liens, claims, interests and encumbrances, (iii) the Debtors' entry into, and performance under, postpetition hedging arrangements, including granting liens and superpriority administrative expense claims in connection therewith and (iv) the Debtors to stake certain Digital Assets; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

4855-4313-3821 v.13

the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief set forth in this Order is in the best interests of the Debtors and their estates; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as and to the extent set forth herein.

2. The Debtors are authorized, but not directed, to execute sales of, and transactions in, the Digital Assets, in their reasonable business judgment: (a) executed through an investment advisor or manager (the "Investment Adviser Sales"), pursuant to investment guidelines (the "Investment Guidelines") expressly set forth in any Investment Advisory Agreement (as defined below) approved by an order of this Court, or (b) by further order of the Court, upon notice and a hearing; *provided* that, in each case, such sales and

transactions shall also comply with the following management and monetization guidelines (together with the Investment Guidelines, the "Management and Monetization Guidelines:"):

<ul>
<li>A.      Investment Adviser Sales.  With respect to all Investment Adviser Sales:</li>
</ul>

<ul>
<li>A.      **the Debtors shall negotiate an investment services agreement with an Investment Adviser and seek Court approval** (including any sales or transactions described in clauses A through E of **entry into such agreement and performance**paragraph 2 of **their obligations thereunder;**this Order):</li>
</ul>

(a)     [RESERVED];

(b)     the Debtors are authorized to consummate Investment Adviser Sales using the Court-approved Investment Adviser andsolely in accordance with an investment advisory agreement with an investment advisor or manager that is approved by order of this Court (each, an "Investment Advisory Agreement") and, solely as contemplated by any such Investment Advisory Agreement and subject to the express terms thereof, are authorized to pay any applicable fees, commissions, expenses and other trading costs without further order of the Court; (and for the avoidance of doubt, not pursuant to any other agreement or otherwise unless approved by the Court);

(c)     during each week beginning on Saturday 12:00 A.M. (ET) through Friday 11:59 P.M. (ET) (a "Calendar Week"), subject to the express terms of an Investment Advisory Agreement, the Debtors are authorized to sell Digital Assets with an aggregate market valuethe proceeds of liquidation not exceeding the Weekly Limit (as defined below) for such Calendar Week;[3]; and

(d)     the "Weekly Limit" shall be (i) $50 million for the week through Friday in which theis Order is entered and (ii), solely to the extent that this Order is entered on a Wednesday or later in the week, the following Calendar Week, and (ii) $100 million for each subsequent Calendar Week,; *provided* that the Debtors (i) may temporarily increase the Weekly Limit to $200 million for a period of one Calendar Week at a time with the prior

---

[3]   For the avoidance of doubt, for purposes of calculating the Weekly Limit the Debtors shall include all Digital Assets sold by the Debtors during the applicable time period, including Bitcoin and Ether.excluding Bitcoin and Ether; *provided* that the Weekly Limit shall not include (i) sales of stablecoins for fiat currency; (ii) redemption of stablecoins; and
(iii) transactions of Digital Assets with the end-result of bridging such Digital Assets from non-native blockchains back to their respective native blockchains.

3

<u>written</u> approval of the Committee and the Ad Hoc Committee without further order of the Court<u>; *provided* that the Debtors will provide notice of such temporary increase to the U.S. Trustee;</u> and (ii) may permanently increase the Weekly Limit to $200 million ~~by filing a notice with the Court of such~~ <u>upon further order of the Court. For the avoidance of doubt, the Weekly Limit shall apply in the aggregate to sales of Digital Assets whether executed by the Debtors and/or one or more Investment Advisors, and shall not apply to derivatives transactions referencing Digital Assets.</u>

B. <u>Sales of Bitcoin, Ether and Certain Insider-Affiliated Tokens. In the event that the Debtors determine, in their business judgment, to commence sales of Bitcoin, Ether or certain insider-affiliated tokens through an Investment Manager, the Debtors shall provide ten business days' prior written notice to the Committee, the Ad Hoc Committee and the U.S. Trustee; *provided* that such notice shall provide information reasonably necessary for the Committee, the Ad Hoc Committee and the U.S. Trustee, in each case, on a Professional Eyes only basis, to meaningfully assess the request, including the</u> proposed ~~increase.~~<u>identity, quantum, price and reasonably detailed explanation for the proposed sale of such Digital Assets; *provided* further that the Debtors shall also provide the following information to members of the Committee and the Ad Hoc Committee who are subject to confidentiality restrictions, in each case on a non-Professional Eyes basis (x) for sales of Bitcoin or Ether: (i) type of token (*i.e.* Bitcoin or Ether); (ii) potential sales methods and (iii) the rationale for such sales and (y) for sales of insider-affiliated tokens, (i) an indication that an insider-affiliated token will be sold (without specifying the insider-affiliated token); (ii) potential sales methods and (iii) the rationale for such sales; *provided* further that the Debtors shall not be required to provide any such notices with respect to the sales or transfer of Bitcoin or Ether solely to the extent any such sale or transfer is necessary to settle options contracts entered into by the Investment Adviser pursuant to the Investment Guidelines set forth in an Investment Advisory Agreement.</u> If the Committee ~~or~~<u>,</u> the Ad Hoc Committee <u>or the U.S. Trustee</u> objects to the Debtors' ~~request to permanently increase the Weekly Limit to $200 million~~<u>proposed sales of these Digital Assets</u>, the following objection procedures shall apply:

(a) <u>if such objection includes any information contained in the Debtors' notice provided to the parties on a Professional Eyes Only basis, such objection shall be filed under seal without further Court order; *provided* that a redacted version of the sealed objection shall be filed on the Court's docket within three days and all party's rights are reserved with respect to the proposed redactions;</u>

~~(a)~~<u>(b)</u> the Committee ~~or~~<u>,</u> Ad Hoc ~~Committee's~~<u>Committee or U.S. Trustee's</u> objection must (A) be in writing and state with specificity the basis for

4

        objecting and (B) be filed with the Court within ~~five~~ten business days ~~after service~~ of the Debtors' notice and served on the Debtors' Counsel; and

        ~~(i)~~    if the Committee ~~or~~, Ad Hoc Committee or U.S. Trustee files with the Court and serves on counsel to the Debtors a written objection to the ~~request to increase the Weekly Limit, then such increase may only be executed upon withdrawal of such objection or further order of the Court.~~

  ~~(d)    in the event that the Debtors determine, in their business judgment, to commence sales of Bitcoin, Ether, FTT or certain other insider-affiliated tokens, the Debtors shall provide ten business days' notice to the Committee and the Ad Hoc Committee. If the Committee or Ad Hoc Committee objects to the Debtors' commencement of such sales of these Digital Assets, the following objection procedures shall apply:~~

        ~~(i)    the Committee or Ad Hoc Committee's objection must (A) be in writing and state with specificity the basis for objecting and (B) be filed with the Court within the notice period and served on the Debtors' Counsel; and~~

  ~~(b)~~(c)    if the Committee or Ad Hoc Committee files with the Court and serves on counsel to the Debtors a written objection to the commencement ~~of~~proposed sales of any such Digital Assets, then such sales may only be executed upon withdrawal of such objection or further order of the Court.

  ~~(e)    any sales of Digital Assets in accordance with the Investment Adviser Sales shall be subject to the terms of such documentation as the Debtors may execute in connection with such transaction, which documentation may (but is not required to) include provisions that the buyers are taking the Digital Assets "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such Digital Asset and shall be free and clear of all liens, claims, interests and encumbrances, with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the sale.~~

C.    <u>Hedging Arrangements</u>.  ~~With respect to the Hedging Arrangements:~~

  (a)    ~~t~~The Debtors are authorized to enter into calls~~,~~ and puts~~, forward contracts or other hedging transactions~~ with respect to underlying Eligible Hedging Digital Assets (as defined below) using ~~the~~a Court-approved Investment Adviser, and are authorized to pay any applicable fees, commissions, expenses and other trading costs without further order of the Court~~;~~, in

each case, pursuant to the express terms of an Investment Advisory Agreement, including the Investment Guidelines, as modified by the *Order Authorizing FTX Trading Ltd. to Enter Into, and Perform Its Obligations Under, the Investment Services Agreement* or any other related order of the Court (collectively, the "Hedging Arrangements"); and

(b)  "Eligible Hedging Digital Assets" means (i) Bitcoin and Ether and (ii) with the prior written approval of the Committee and the Ad Hoc Committee, any additional Digital Assets identified by the Debtors as Eligible Hedging Digital Assets, provided that the Debtors shall file a notice with the Court identifying such additional Eligible Hedging Digital Assets.

D.  Staking Method.  With respect to any staking of Digital Assets, subject to the Investment Guidelines, the Debtors and the Investment Adviser are authorized to utilize staking options available through their qualified custodians using their respective private validators if the Debtors determine in the reasonable exercise of their business judgment that such activities are in the best interests of their estates.

E.  General Provisions.  With respect to any sales of, or transactions in, the Digital Assets sold, staked or hedged in accordance with the Management and Monetization Guidelines permitted hereunder:

(a)  periodically Periodically, and as agreed in an Investment Advisory Agreement, but on no less than a monthly basis, general post-trade information will be made available the Debtors deliver to the Consulting Professionals, the Committee and the Ad Hoc Committee, reports required to be delivered by an Investment Advisor to the Debtors pursuant to the Investment Advisory Agreement, in each case, within the same time periods required to be delivered to the Debtors thereunder, as well as reports describing the following information (collectively, the informational and reporting requirements set forth in this entire clause (E), the "Reporting Requirements"):

(i)  a biweekly report of all known Debtor Digital Assets, in a format and including details similar to the those provided historically provided to the Committee on a biweekly basis, within 5 business days after the "as of" reporting date;

(ii)  Monthly reports from the Debtor's qualified custodians (delivered concurrently upon receipt by the Debtors) detailing all staking activity, including at a minimum:

a.  The coin or token

      b. Quantity

      c. Staking yields or rewards

    (iii) Additional written materials in connection with a Status Call (as defined below) if prepared and intended to be presented to the Debtors at such Status Call by the Investment Manager under any Investment Advisory Agreement to the UCC professionals on a Professional Eyes Only Basis in advance of such Status Call.

  ~~(a)~~(b) The Debtors shall be required to comply with such Reporting Requirements and shall be required to provide the Committee and the Ad Hoc Committee with periodic reporting in form and manner that is no less than the reporting requirements set forth in paragraph 2(E)(a) of this Order and the Investment Guidelines.

  ~~(b)~~(c) the Debtors will conduct, at a minimum, weekly status calls with the Investment Adviser and the Consulting Professionals for the first six weeks following the first completed ~~transaction under the Management and Monetization Program, followed by monthly status calls thereafter; and~~Investment Advisor Sale, followed by, at minimum, monthly status calls thereafter, to provide a general status update with respect to the Debtors' monetization and management efforts, a summary of sales and transactions executed to date (including the notional amounts of sales and transactions executed since the last meeting and to date, the aggregate execution information as to the percentage of TWP versus spot pricing for such sales), a discussion of market events since the last meeting and any impacts to trading, and a discussion of market outlook and trading environment (volumes/liquidity/etc.)) (each, a "Status Call");

  ~~(c) solely with the consent of the Committee and the Ad Hoc Committee, the Debtors may at any time, without further order of the Court, re-designate which Digital Assets may be sold, staked or hedged in accordance with the Management and Monetization Guidelines.~~

 ~~3. The Debtors' reporting obligations with respect to the Management and Monetization Guidelines shall terminate following the effectiveness of a chapter 11 plan.~~

  (d) in their Monthly Operating Reports and, prior to the filing of such Monthly Operating Reports, their Interim Financial Updates, the Debtors will disclose (i) the Digital Asses sold during the applicable period and (ii) the amount of proceeds received in connection with sales of Digital Assets during the applicable period; and

   (e) subject to the Management and Monetization Guidelines, any sales of or transactions in Digital Assets shall be subject to the terms of such customary documentation as the Debtors may execute in connection with such transaction, which documentation may (but is not required to) include provisions that the buyers are taking the Digital Assets "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such Digital Asset, and any such sales shall be free and clear of all liens, claims, interests and encumbrances, with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as of immediately prior to the Petition Date.

  3. The Debtors' Reporting Requirements shall terminate upon the effectiveness of a chapter 11 plan.

  4. The Debtors shall not commence sales of FTT without seeking further authorization from this Court.

  ~~4.~~5. The requirements set forth in Bankruptcy Rules 2002 and 6004 and Local Rules 2002-1 and 6004-1 are satisfied by the Motion, and the Debtors need not provide any further notice prior to implementing any Digital Asset transaction ~~in accordance with~~, except to the extent set forth in this Order and the Management and Monetization Guidelines.

  ~~5.~~6. ~~The Management and Monetization Guidelines~~ Notwithstanding anything contained herein to the contrary, the Debtors shall not ~~apply~~be authorized to engage in any sale of or transactions in Digital Assets ~~to~~(a) with an "insider" of the Debtors (as ~~that~~such term is defined in section 101(31) of the Bankruptcy Code~~.~~, and which shall include any person employed by any Debtor with the title of Vice-President); (b) with another Debtor; or (c) with any non-Debtor affiliate (as such term is defined in section 101(2) of the Bankruptcy Code).

  ~~6.~~7. The absence of a timely objection to the Motion and the terms of this Order shall constitute "consent" to such sale or transfer free and clear of Liens and Claims within

the meaning of section 363(f)(2) by any party asserting liens, claims, encumbrances against, and other interests in, any Digital Assets.

7.8. Pursuant to section 363(f) of the Bankruptcy Code, any sale of Digital Assets in accordance with this Order shall be free and clear of any liens, claims, encumbrances and interests, with any such liens, claims, encumbrances and interests to attach to the proceeds of such sale with the same validity, priority, force and effect as such liens, claims, encumbrances and interests had on the sold assets immediately prior to the salePetition Date, subject to the rights, claims, defenses and obligations, if any, of the Debtors and all interested parties with respect to any such asserted liens, claims, encumbrances and interests. For the avoidance of doubt, a smart contract or legal contract "lock-up" of a token (including but not limited to a contractual restriction on transferring such token) shall not constitute a "lien, claim, encumbrance or interest" for any purpose of this Order, and nothing in this Order shall be construed as altering any obligations of the Debtors or their representatives to comply with any such contractual lock-ups in connection with any sale, transfer or other disposition of any Digital Assets.

8.9. Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized to stake certain of their Digital Assets in accordance with the terms hereof and the Management and Monetization Guidelines.

9.10. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Debtors are authorized to grant superpriority administrative expense claims, grant liens and provide other Credit Support under the Hedging Arrangements; provided, however, (i) solely to the extent that such Hedging Arrangement consists of a call option sold by the Debtors and (ii) solely against

9

the Eligible Hedging Digital Asset underlying such call option.  The holders of any superpriority administrative expense ~~claims granted to a hedging counterparty~~claim, lien or other Credit Support provided under a call option shall ~~be subordinate, and junior, to~~not have recourse against any ~~postpetition intercompany claims pursuant to the *Final Order (I) Authorizing the Debtors to (A) Operate a Postpetition Cash Management System, (B) Maintain Existing Business Forms and (C) Perform Intercompany Transactions, (II) Granting A Partial Waiver of the Deposit Guidelines Set Forth In Section 345(b) and (III) Granting Related Relief* [D.I. 488].~~of the Debtors' assets other than the Eligible Hedging Digital Asset underlying such call option.

~~10.~~11.   Notwithstanding anything to the contrary in the Motion or this Order, nothing in the Motion or this Order constitutes a finding under the federal securities laws as to whether digital assets or transactions involving digital assets are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving digital assets on any basis are expressly reserved.

~~11.~~12.   The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

~~12.~~13.   This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

~~13.~~14.   The Debtors are authorized and empowered to execute and deliver such documents and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

15.    To the extent there is any conflict between the Motion and this Order, this Order shall govern. To the extent there is any conflict between the Management and Monetization Guidelines and any Investment Advisory Agreement or any other document

entered into in connection with a sale of or transaction for Digital Assets, the Management and Monetization Guidelines shall govern.

<s>14.</s>16.  This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

Dated: _____, 2023
       Wilmington, Delaware

                  The Honorable John T. Dorsey
                  United States Bankruptcy Judge

<s>4889-8293-6940</s>4855-4313-3821 v.<s>11</s>13