## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| FTX TRADING LTD. and WEST REALM SHIRES SERVICES, INC., | |
| Plaintiffs, | |
| - against - | |
| MICHAEL BURGESS, HUY XUAN "KEVIN" NGUYEN, JING YU "DARREN" WONG, MATTHEW BURGESS, LESLEY BURGESS, 3TWELVE VENTURES LTD., and BDK CONSULTING LTD., | Adv. Pro. No. 23-_____(JTD) |
| Defendants. | |

## COMPLAINT FOR AVOIDANCE AND RECOVERY OF TRANSFERS PURSUANT TO 11 U.S.C. §§ 105, 544, 547, 548 AND 550, AND DEL. CODE ANN. TIT. 6, § 1304, AND FOR DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502

Plaintiffs FTX Trading Ltd. ("FTX.com") and West Realm Shires Services, Inc.

("FTX US") (together, "Plaintiffs"), through their undersigned counsel, for their complaint

against Michael Burgess, Huy Xuan "Kevin" Nguyen, Jing Yu "Darren" Wong, Matthew

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/ FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Burgess, Lesley Burgess, 3Twelve Ventures Ltd. ("3Twelve"), and BDK Consulting Ltd.

("BDK") (individually a "Defendant" and together the "Defendants"), state as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this adversary proceeding ("Adversary Proceeding") pursuant to

Sections 105, 544, 547, 548, and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et*

*seq*. (the "Bankruptcy Code"), and Section 1304 of Title 6 of the Delaware Code, Del. Code

Ann. tit. 6, § 1304(a)(1), to avoid and recover from Defendants, or from any other person or

entity for whose benefit the transfers were made, all transfers of property of Plaintiffs to

Defendants during the ninety day period (the "Preference Period") prior to commencement of the

above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases" and each a "Chapter 11

Case") by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"

and each a "Debtor"), and pursuant to Section 502 of the Bankruptcy Code to disallow any and

all claims filed or held by Defendants in these Chapter 11 Cases unless and until Defendants

have relinquished to Plaintiffs all property that Defendants received in transfers and all

obligations incurred that are determined by the Court to be avoidable and/or recoverable.

2.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the

Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court")

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  No trustee has been

appointed for Plaintiffs or any other Debtor in the Chapter 11 Cases, and the Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

Sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Chapter 11

Cases was authorized by the Court by an order entered on November 22, 2022 [D.I. 128].

Accordingly, Plaintiffs have the authority to file this Complaint to commence, and thereafter to

prosecute, this adversary proceeding.

3.      Prior to the filing of the Chapter 11 Cases, FTX.com and FTX US operated exchanges offering cryptocurrency trading services.  Defendants had accounts on one or both exchanges, as set forth below.

4.      Defendants Michael Burgess, Kevin Nguyen, Darren Wong and Matthew Burgess are former employees of Salameda Ltd. ("Salameda"), a non-Debtor affiliate of the FTX Group.[2] Salameda was incorporated in Hong Kong and was controlled by Samuel Bankman-Fried.  Its employees were effectively employees of the FTX Group at all relevant times.  For example, as detailed below, although formally employed by Salameda, Defendants Michael Burgess, Nguyen, and Wong worked in senior-level roles at FTX Group companies, including Debtors Alameda Research LLC, FTX Digital Holdings (Singapore) Pte Ltd., and West Realm Shires, Inc. ("WRS").  Additionally, although formally employed by Salameda, Defendant Matthew Burgess provided customer service for FTX.com and FTX US alongside other FTX Group personnel, and used FTX Group communications platforms.

5.      By January 2022, Defendants Michael Burgess, Nguyen and Wong had left their formal roles at the FTX Group and its affiliated entities.

6.      Following their departures, Defendants Michael Burgess, Nguyen and Wong pursued various business ventures, which included trading cryptocurrencies on the FTX.com and FTX US exchanges.  Michael Burgess, Nguyen and Wong, either individually or jointly, owned

---

[2]      The "FTX Group" is comprised of four silos.  These silos include:  (a) a group composed of Debtor West Realm Shires, Inc., Debtor and Plaintiff West Realm Shires Services, Inc., and their Debtor and non-Debtor subsidiaries; (b) a group composed of Debtors Alameda Research Ltd., Alameda Research LLC, and their Debtor subsidiaries; (c) a group composed of Debtors Clifton Bay Investments LLC, Clifton Bay Investments Ltd., Island Bay Ventures Inc. and FTX Ventures Ltd.; and (d) a group composed of Debtor and Plaintiff FTX Trading Ltd. and its Debtor and non-Debtor subsidiaries.

and controlled several companies that had FTX.com and FTX US accounts registered in their names, including Defendants 3Twelve and BDK.

7.      Defendants Michael Burgess, Nguyen and Wong engaged in significant trading activity through their individual and affiliated corporate FTX.com and FTX US exchange accounts, averaging between approximately $100 million and $400 million in monthly notional trading volume between January and November 2022.

8.      The FTX Group was the original source for much of the funds used for this trading:  during the period July 2019 through January 2022, Defendants Michael Burgess, Nguyen and Wong, received substantial transfers of digital assets and fiat currency from exchange accounts associated with FTX Group entities, including approximately 13.1 million FTT sent to Darren Wong, more than 1 million SOL sent to Michael Burgess, and nearly $4 million USD for "bonuses" between Michael Burgess, Nguyen and Wong.

9.      Defendants Michael Burgess, Nguyen and Wong profited handsomely from these transfers.  For example, Wong received *more than $70 million* from selling FTT on the FTX.com exchange, including approximately $30 million received from selling FTT in November 2022, just days prior to the Petition Date.

10.      During this same period, as public reports raised questions about the Debtors' liquidity and solvency, customers of the FTX.com and FTX US exchanges withdrew billions of dollars from the respective exchanges.  As the backlog of pending customer withdrawal requests grew, many customers waited hours or days for withdrawals to be completed, and many more withdrawal requests remained unfulfilled as of the Petition Date.

11.      Defendants Michael Burgess, Nguyen and Wong also raced to withdraw assets from their various individual and corporate accounts on the FTX.com and FTX US exchanges,

but they had advantages over average customers:  as detailed below, they leveraged their connections to FTX Group personnel to ensure that they would be prioritized over other customers.  As part of this scheme, Defendant Matthew Burgess, a then-current FTX Group employee, enlisted other FTX Group employees to "push[] out" certain pending withdrawal requests from one of Michael Burgess's FTX US exchange accounts, while misrepresenting the account to be his own.

12.    Defendants Michael Burgess, Nguyen and Wong were not the only ones to benefit from these connections:  withdrawals representing substantially the entire balances of the FTX.com accounts registered in the names of Defendants Matthew Burgess and Lesley Burgess (Michael Burgess and Matthew Burgess's mother) also were processed successfully, with the final withdrawals completed just hours before the FTX.com exchange halted withdrawals on November 8, 2022.

13.    Based on currently-available information, during the Preference Period, the Defendants collectively received the benefit of withdrawals from their FTX.com and FTX US accounts of the digital assets and fiat currency set forth in the attached **Exhibit A**, which constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code. Based on pricing as of August 31, 2023, those assets are collectively valued at approximately $157.3 million.[3]  FTX.com's and FTX US's preference claims against Defendants may be

---

[3]    Plaintiffs have selected August 31, 2023 solely for indicative spot pricing of a present day judgment in this Complaint.  In accordance with Section 550(a) of the Bankruptcy Code, Plaintiffs may seek either (i) recovery of the transferred cryptocurrencies or (ii) the higher of such cryptocurrencies' fair market value as of either (a) the time of payment resulting from any final resolution of this Complaint or (b) the date of such transfers, to return their estates to the position that they would have enjoyed if the transfers had not occurred.  Given the volatility of cryptocurrency values, Plaintiffs reserve all rights with respect to the appropriate pricing date—whether that date should be the transfer date or the date when repaid.

subject to "subsequent new value" defenses collectively totaling approximately $2 million arising from deposits into Defendants' FTX.com and FTX US accounts subsequent to these preferential transfers.

14.    The vast majority of these assets—more than $123 million based on August 31, 2023 pricing—were withdrawn on or after November 7, 2022, including more than $73 million fraudulently transferred to Michael Burgess through the scheme referenced above.

15.    This Adversary Proceeding seeks to recover for the benefit of Plaintiffs' creditors these assets preferentially and/or fraudulently transferred to Defendants prior to the Petition Date.

16.    Pursuant to Section 502(d) of the Bankruptcy Code, Plaintiffs also seek to disallow any and all claims filed or held by Defendants in these Chapter 11 Cases unless and until Defendants have relinquished to Plaintiffs all property that they received in transfers that are determined by the Court to be avoidable.

17.    During the course of this Adversary Proceeding, Plaintiffs may learn (through discovery or otherwise) of additional transfers made to Defendants during the Preference Period that are avoidable under Section 547 or 548 of the Bankruptcy Code.  Plaintiffs intend to avoid and recover all such transfers made to or for the benefit of Defendants or any other transferee during the Preference Period.  Plaintiffs reserve the right to amend this Complaint to include, without limitation:  (i) further information regarding the withdrawals (as defined below), (ii) additional transfers made during the Preference Period, (iii) additional plaintiffs, (iv) modifications of and/or revision to Defendants' names, (v) additional defendants, and (vi) additional causes of action, if applicable (collectively, the "Amendments"), that may become

known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Complaint.

## JURISDICTION AND VENUE

18.     This Adversary Proceeding relates to the Plaintiffs' Chapter 11 Cases filed with this Court on the Petition Date.  The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

19.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

20.     Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

21.     The statutory predicates for the relief requested herein are Sections 105, 502, 544, 547, 548 and 550 of the Bankruptcy Code and Section 1304 of Title 6 of the Delaware Code.

22.     This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

23.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiffs consent to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

24.     Plaintiff FTX.com is a corporation registered in Antigua and Barbuda that operated a digital asset trading exchange available to non-US customers.  FTX.com is 80% owned by Paper Bird Inc., a Delaware corporation that is wholly owned by Bankman-Fried.

25.     Plaintiff FTX US is a Delaware corporation that operated a digital asset trading exchange available to US and non-US customers.  FTX US is a wholly-owned subsidiary of WRS, which is a Delaware corporation 52.99% owned by Bankman-Fried, 16.93% owned by Zixiao "Gary" Wang, 7.83% owned by Nishad Singh, and 22.25% owned by other shareholders.

26.     Defendant Michael Burgess was employed by Salameda from approximately September 1, 2019 until approximately November 2021.  While formally employed by Salameda, Michael Burgess worked as a Business Development Manager and Head of Partnerships at FTX.com, and as Co-Head of Client Relations at Debtor FTX Digital Holdings (Singapore) Pte Ltd.  In addition, WRS employed Michael Burgess as a consultant from approximately April 1, 2021 until approximately November 2021.

27.     Defendant Huy Xuan "Kevin" Nguyen was employed at Salameda from approximately July 15, 2020 until approximately November 2021.  While formally employed by Salameda, Nguyen worked as a Business Development Manager at FTX.com.

28.     Defendant Jing Yu "Darren" Wong was employed by Salameda from approximately July 2018 until January 2022.  While formally employed by Salameda, Wong worked as Head of Business Development for Asia at Debtor Alameda Research LLC.

29.     Defendant Matthew Burgess is Michael Burgess's brother.  Matthew Burgess was employed by Salameda from approximately April 28, 2021 through November 10, 2022.  While formally employed by Salameda, Matthew Burgess worked in customer service for FTX.com and FTX US.

30.     Defendant Lesley Burgess is the mother of Defendants Michael and Matthew Burgess.  She is listed as the registered owner of an account on the FTX.com exchange that was funded primarily by transfers from an FTX.com account registered to Michael Burgess.

31.     Defendant 3Twelve is a company registered in the British Virgin Islands on September 29, 2021, and is owned and controlled by Defendants Michael Burgess, Nguyen and Wong.

32.     Defendant BDK is a company incorporated in Hong Kong on January 11, 2022, and is owned and controlled by Defendants Michael Burgess, Nguyen, and Wong.

## OTHER RELEVANT PERSONS

33.     Samuel Bankman-Fried was a co-founder of Plaintiffs FTX.com and FTX US, and at all relevant times, controlled Plaintiffs.  Bankman-Fried also co-founded Debtors Alameda Research Ltd. ("Alameda Research"), Alameda Research LLC and their subsidiaries, which, at all relevant times, he also controlled.

34.     Caroline Ellison was the co-Chief Executive Officer of Alameda Research from August 2021 until September 2022, when she was named the sole CEO.

35.     Nishad Singh was the former Director of Engineering at FTX.com.  Singh was also the Chief Security Officer and Chief Engineer of WRS.

36.     Gary Wang was a co-founder of FTX.com and its former Chief Technology Officer.  Wang was also a co-founder of FTX US and the Chief Technology Officer of WRS.

37.     Bankman-Fried, Wang, Singh, and Ellison are collectively referred to herein as the "FTX Insiders."

**FACTUAL ALLEGATIONS**

I.  **The FTX Insiders' Fraudulent Scheme**

38.    Prior to the Petition Date, the FTX Group operated cryptocurrency exchanges and trading businesses.  As explained in the First Day Declarations (defined below), the FTX Group faced a severe liquidity crisis that necessitated the filing of these Chapter 11 Cases on an emergency basis on November 11 and 14, 2022.  Additional factual background relating to the FTX Group's businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

39.    As detailed in the First Day Declarations, the FTX Group's pre-filing operations were characterized by a complete failure of corporate controls and a total absence of trustworthy financial information.  *See* Decl. John J. Ray III, D.I. 24, at 2.  The FTX Insiders used this deficient control environment, and their domination over the FTX Group's systems, to perpetrate a massive fraud—squandering the FTX Group's assets on, among other things, luxury homes, political and "charitable" contributions, and various investments that would inure to the benefit of the FTX Insiders rather than the corporate entities that had paid for them.

40.    The FTX Insiders funded much of this spending through Alameda Research, which, at the FTX Insiders' direction, unlawfully commingled and diverted FTX Group assets to the FTX Insiders' pet projects.  In doing so, the FTX Insiders defrauded the FTX Group's customers, creditors and shareholders, and violated their fiduciary duties and numerous laws.

41.     The FTX Insiders' conduct is currently the subject of criminal proceedings initiated by federal prosecutors, actions brought by the Securities and Exchange Commission and the Commodity Futures Trading Commission, and investigations by a host of other regulators. On December 19, 2022, Wang and Ellison pleaded guilty to multiple felonies, including wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, and conspiracy to commit securities fraud; Ellison also pleaded guilty to conspiracy to commit money laundering.  *See* Min. Entry, Dec. 19, 2022, *United States* v. *Bankman Fried*, 22 cr-00673 (S.D.N.Y. 2022).  On February 28, 2023, Singh pleaded guilty to the same felonies as Ellison as well as conspiracy to make unlawful political contributions and defraud the Federal Election Commission.  *See* Min. Entry, Feb. 28, 2023, *United States* v. *Bankman Fried*, 22 cr-00673 (S.D.N.Y. 2022).

42.     In connection with his plea, Wang admitted that in 2019 he made "certain changes to [the FTX.com] code" to give Alameda Research "special privileges on the FTX platform," including to allow Alameda Research unfettered use of assets on the FTX.com exchange, even while Alameda Research maintained negative balances in its own holdings of fiat (*i.e.*, government-issued) currencies and cryptocurrencies.  Plea Tr. 24:6-10, ECF No. 21, *United States* v. *Wang*, 22-cr-00673 (S.D.N.Y. 2022).  Using these "special privileges," the FTX Insiders frequently caused Alameda Research to misappropriate funds from the FTX.com exchange, commingle them with other funds and use them for their own benefit.

43.     In the days leading up to the Petition Date, Bankman-Fried supplied potential investors with a purported Alameda Research balance sheet that included a liability of $8 billion in a "Hidden, poorly internally labled [sic] 'fiat@' account."  *See* Superseding Indictment ¶ 56, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 115.  However,

Bankman-Fried "well knew" that this liability reflected "FTX customer fiat deposits accepted into Alameda Research's bank accounts that had not been maintained for the benefit of customers or repaid to FTX[.]" *Id*. 57. The FTX Insiders used these commingled funds "to make investments in the name of Bankman-Fried and his associates, rather than in the name of Alameda." *Id*. ¶ 26.

44.  Ellison "understood that FTX would need to use customer funds" to make many of its investments, Plea Tr. 28:1-4, *United States* v. *Ellison*, 22 cr-00673 (S.D.N.Y. 2022), ECF No. 19, and admitted that many investments "were done in the name of Alameda instead of FTX in order to conceal the source and nature of those funds." *Id*. at 28:22–29:1.

45.  The FTX Insiders were aware at all relevant times of the "special privileges on the FTX platform" that allowed Alameda Research to "borrow" billions of dollars from FTX.com in order to, inter alia, finance "loans" from Alameda Research to the FTX Insiders. Ellison admitted that from 2019 through 2022 she was aware of this arrangement, which she described as "permitt[ing] Alameda access to an unlimited line of credit without being required to post collateral . . . pay interest . . . or being subject to margin calls or FTX.com's liquidation protocols." *Id*. at 27:11-15.

46.  As Singh admitted in his guilty plea, by approximately June 2022, billions of dollars had been diverted from FTX.com to other FTX Group entities, principally "Alameda," and by "early September 2022," Alameda Research "could not repay what it owed." *See* Plea Tr. 28:23-29:3, *United States* v. *Singh*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 102. Ellison also made similar admissions in her guilty plea, stating that from 2019 through 2022, Alameda Research Ltd. used FTX.com funds to finance investments or repay loans. Plea Tr. 27:11-29:1, ECF No. 19, *United States* v. *Ellison*, 22-cr-00673 (S.D.N.Y. 2022).

47.     In the days leading up to the Petition Date, Ellison messaged Bankman-Fried that she "had an increasing dread of this day that was weighing on me for a long time, and now that it's actually happening it just feels great to get it over with[,] one way or another." *See* Superseding Indictment ¶ 53, *United States* v. *Bankman Fried*, 22 cr-00673 (S.D.N.Y. 2022), ECF No. 115.

48.     By November 8, 2022, the FTX Group no longer had enough funds to fulfill customer withdrawals as customers had withdrawn $6 billion in the prior 72 hours, and FTX.com then halted customer withdrawals. On November 11, 2022, FTX US halted customer withdrawals.

## II.     Fraudulent Transfers Made to Defendant Michael Burgess

49.     Defendants sought to withdraw assets from the FTX.com and FTX US exchanges after it became clear to them that the FTX Group was in financial distress.  Due to their insider connections, Defendants had knowledge of the poor financial state of Plaintiffs and urgently sought to withdraw their funds ahead of other customers.

50.     Matthew Burgess was a Salameda employee with access to FTX.com and FTX US internal communications systems through at least November 10, 2022.

51.     Slack communications from November 7, 2022 show that during the final days and hours before the FTX.com and FTX US exchanges disabled withdrawals, Matthew Burgess sought assistance from FTX Group employees to help withdraw funds from an FTX US exchange account registered in the name of Michael Burgess ("Account -7783").

52.     Matthew Burgess misled at least one FTX Group employee regarding the ownership of that account.  Specifically, on November 7, 2022, Matthew Burgess messaged an FTX Group employee on Slack about a pending "$16m" withdrawal that he initially described as

"burg[']s."[4]  Matthew Burgess asked that same employee "who can push it[?]", to which the

other employee responded that "large withdrwals [*sic*] need manual review" but that a different

specialist within the FTX Group "might be able to do it."

53.     One minute later, Matthew Burgess sent a separate message to the specialist

identified by the first FTX Group employee, asking him to "review large crypto withdraws" from

Account 7783.  In his request to that specialist, Matthew Burgess falsely described Account 7783

as "mine."  Two minutes later, the specialist replied that the requested withdrawal had been

"pushed out."  Approximately two hours later, Matthew Burgess went back to that same

specialist again, asking him to "review my other withdraw . . . same address as above.".  The

specialist replied:  "Not enough balance currently . . . but will push asap[.]"

54.     FTX US's records for Account 7783 reflect a series of withdrawals on

November 7 and 8, 2022, beginning with a withdrawal of $16 million of USDC that was "pushed

out" by the specialist and followed by withdrawals totaling nearly $58 million of USDC and

USDT over the following day.  These withdrawals—which are subject to avoidance as fraudulent

transfers—are further described in **Exhibit B**.

55.     These November 7 and 8, 2022 transfers from Michael Burgess's FTX US

Account 7783 were funded entirely by transfers from FTX.com accounts registered to Michael

Burgess or his affiliated corporate entities between October 31, 2022 and November 7, 2022.

56.     At the time of each of these transfers, each of the Plaintiffs:  (1) was insolvent;

(2) became insolvent as a result of the transfers; (3) was engaged in a business or a transaction

for which any property remaining with the Plaintiff was an unreasonably small capital; or

---

[4]       "Burg" was a nickname used for Michael Burgess at the FTX Group.

(4) intended to incur, or believed that it would incur, debts that would be beyond the Plaintiff's ability to repay as such debts matured.

57.     As set forth above, multiple badges of fraud recognized by bankruptcy law and Del. Code Ann. tit. 6, § 1304(b) permeate these transfers to Defendant Michael Burgess, including that:

    i.    The transfers were facilitated by the close relationship between the Plaintiffs and the Defendant;

    ii.    Material facts relating to the transfers were concealed;

    iii.    Plaintiffs were insolvent when, or became insolvent shortly after, the transfers were made; and

    iv.    The transfers occurred shortly before or shortly after Plaintiffs incurred substantial debts.

### III.    Preferential Transfers Made by FTX US and FTX.com to the Defendants

58.     FTX US and FTX.com also assert preference claims against Defendants with respect to certain withdrawals from Defendants' FTX US and FTX.com exchange accounts during the Preference Period.

59.     Based on currently available information, during the Preference Period, Defendants Michael Burgess, Nguyen, Wong and 3Twelve received the benefit of certain withdrawals of digital assets and fiat currency from their FTX US exchange accounts as set forth in more detail in **Exhibits C-1** through **C-4**.  Based on pricing as of August 31, 2023, those assets are collectively valued at approximately $110.1 million.[5]  Those withdrawals constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.  FTX US's preference claims against Defendants Michael Burgess, Nguyen, Wong and 3Twelve may be

---

[5]    *See supra* n. 3.

subject to a "subsequent new value" defense of approximately $8,785 arising from deposits into Defendants' FTX US accounts subsequent to these preferential transfers.

60.     Based on currently available information, during the Preference Period, Defendants Michael Burgess, Nguyen, Wong, BDK, Matthew Burgess and Leslie Burgess received the benefit of certain withdrawals of digital assets and fiat currency from their FTX.com exchange accounts as set forth in more detail in **Exhibits D-1** through **D-9**.  Based on pricing as of August 31, 2023, those assets are collectively valued at approximately $47.2 million.[6]  Those withdrawals constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.  FTX.com's preference claims against Defendants Michael Burgess, Nguyen, Wong, BDK, Matthew Burgess and Leslie Burgess may be subject to a "subsequent new value" defense of approximately $1,952,532 arising from deposits into Defendants' FTX.com accounts subsequent to these preferential transfers.

61.     In accordance with Bankruptcy Code Section 547(b), after analyzing available information, Plaintiffs seek to avoid as preference payments the transfers set forth in **Exhibits C-1** through **C-4** and **D-1** through **D-9**.  Plaintiffs reasonably believe that all such transfers are preferential transfers and avoidable under Section 547 of the Bankruptcy Code after giving effect to Defendants' known or reasonably knowable affirmative defenses.

---

[6]     *See supra* n. 3.

### CAUSES OF ACTION

### COUNT ONE
### FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(A)
### (AGAINST DEFENDANT MICHAEL BURGESS)

62.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 61 as if fully set forth here.

63.     Plaintiff FTX US made the transfers to Defendant Michael Burgess addressed in paragraphs 49 through 57 and more specifically described in **Exhibit B**.  Each of these transfers to Defendant Michael Burgess was a transfer of property of FTX US.

64.     Each of these transfers to Defendant Michael Burgess was made with the intent to hinder, delay or defraud FTX US's present or future creditors.

65.     Accordingly, each of these transfers should be avoided as fraudulent pursuant to Section 548(a)(1)(A) of the Bankruptcy Code, and FTX US may recover from Defendant Michael Burgess the full amount of such transfers, plus interest from the relevant dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

### COUNT TWO
### FRAUDULENT TRANSFERS PURSUANT TO
### DEL. CODE ANN. TIT. 6, § 1304(a)(1) AND 11 U.S.C. § 544(b)
### (AGAINST DEFENDANT MICHAEL BURGESS)

66.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 61 as if fully set forth here.

67.     Section 544(b) of the Bankruptcy Code authorizes Plaintiffs to avoid any transfer of an interest in their property by them that is voidable under applicable law by a creditor holding an allowable unsecured claim.  Accordingly, fraudulent transfers are avoidable pursuant to Bankruptcy Code Section 544(b) and other applicable law, including the Delaware Uniform Fraudulent Transfer Act, Del. Code Ann. tit. 6, § 1301, *et seq.*

68.     Plaintiff FTX US made the transfers to Defendant Michael Burgess addressed in paragraphs 49 through 57 and more specifically described in **Exhibit B**.  Each of these transfers to Defendant Michael Burgess was a transfer of property of FTX US.

69.     Each of these transfers to Defendant Michael Burgess was made with the intent to hinder, delay or defraud FTX US's present or future creditors, including creditors who hold allowable unsecured claims.  Each of these transfers is avoidable by creditors who hold allowable unsecured claims.

70.     Accordingly, each of these transfers should be avoided as fraudulent pursuant to Del. Code Ann. tit. 6, § 1304(a)(1) and 11 U.S.C. § 544(b), and FTX US may recover from Defendant Michael Burgess the full amount of such transfers, plus interest from the relevant dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

**COUNT THREE**
**FTX US PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)**
**(AGAINST DEFENDANTS MICHAEL BURGESS, NGUYEN, WONG AND 3TWELVE)**

71.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 61 as if fully set forth here.

72.     Plaintiff FTX US made the transfers addressed herein during the Preference Period, as more specifically described in **Exhibits C-1** through **C-4**.

73.     Each transfer was a transfer of property of FTX US.

74.     Each transfer was made to benefit one or more of the Defendants.

75.     With respect to each of the transfers, the receiving Defendant was a creditor of FTX US (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, the Defendant received such transfers for the benefit of a creditor or creditors of FTX US.

76.     Each of the transfers was made on account of an antecedent debt, namely, FTX US's obligation to deliver to each Defendant the cryptocurrency or cash balances in Defendants' FTX US accounts.

77.     Each of the transfers was made within ninety days of the Petition Date.

78.     Each of the transfers was made while FTX US was insolvent.

79.     Each of the transfers enabled the Defendant to receive more than they would have received if:  (i) FTX US's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) the amount paid to the Defendant on account of the debt were determined by the Bankruptcy Code.

80.     As of the date hereof, Defendants have not returned any of the transfers to FTX US.

81.     Pursuant to 11 U.S.C. § 547(b), FTX US has undertaken reasonable due diligence in the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes that these transfers are avoidable.

82.     Accordingly, each of these transfers should be avoided as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code, and FTX US may recover from Defendants the full amount of the transfers,[7] plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

---

[7]     *See supra* n. 3.

## COUNT FOUR
## FTX.COM PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)
## (AGAINST DEFENDANTS MICHAEL BURGESS, NGUYEN, WONG, BDK,
## MATTHEW BURGESS AND LESLIE BURGESS)

83.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 61 as if fully set forth here.

84.     Plaintiff FTX.com made the transfers addressed herein during the Preference Period, as more specifically described in **Exhibits D-1** through **D-9**.

85.     Each of the transfers was a transfer of property of FTX.com.

86.     Each of the transfers was made to benefit one or more of the Defendants.

87.     With respect to each of the transfers, the receiving Defendant was a creditor of FTX.com (within the meaning of 11 U.S.C. § 101(10)), or, alternatively, the Defendant received such transfers for the benefit of a creditor or creditors of FTX.com.

88.     Each of the transfers was made on account of an antecedent debt, namely, FTX.com's obligation to deliver to each Defendant the cryptocurrency or cash balances in Defendants' FTX.com accounts.

89.     Each of the transfers was made within ninety days of the Petition Date.

90.     Each of the transfers was made while FTX.com was insolvent.

91.     Each of the transfers enabled the Defendant to receive more than they would have received if:  (i) FTX.com's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) the amount paid to the Defendant on account of the debt were determined by the Bankruptcy Code.

92.     As of the date hereof, Defendants have not returned any of the transfers to FTX.com.

93.     Pursuant to 11 U.S.C. § 547(b), FTX.com has undertaken reasonable due diligence in the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes that these transfers are avoidable.

94.     Accordingly, each of these transfers should be avoided as a preferential transfer pursuant to Section 547(b) of the Bankruptcy Code, and FTX.com may recover from Defendants the full amount of the transfers,[8] plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

## COUNT FIVE
## PROPERTY RECOVERY PURSUANT TO 11 U.S.C. § 550(a)(1)
## (AGAINST ALL DEFENDANTS)

95.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 61 as if fully set forth here.

96.     As alleged above, Plaintiffs are entitled to avoid each of the transfers addressed herein under Sections 544, 547 and 548 of the Bankruptcy Code.

97.     Because Defendants are the initial transferees of such transfers or the entities for whose benefit such transfers were made, Plaintiffs may recover from Defendants the full value of the transfers pursuant to 11 U.S.C. § 550(a)(1), plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

## COUNT SIX
## DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(d)
## (AGAINST ALL DEFENDANTS)

98.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 61 as if fully set forth here.

---

[8]     *See supra* n. 3.

99.     As alleged above, Defendants are transferees of transfers avoidable under Sections 544, 547 and 548 of the Bankruptcy Code and entities from which property is recoverable under Section 550 of the Bankruptcy Code.

100.    By reason of the foregoing facts and pursuant to Section 502(d) of the Bankruptcy Code, any claims of Defendants that have been or will in the future be asserted in these Chapter 11 Cases should be disallowed unless and until Defendants have relinquished to Plaintiffs the property transferred, or have paid Plaintiffs the value of such transferred property, for which and to the extent that the Court has determined Defendants are liable pursuant to 11 U.S.C. § 550.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

101.    Enter an order that the transfers addressed herein are avoidable fraudulent transfers and/or preferences under 11 U.S.C. §§ 544, 547, and 548 and Del. Code Ann. tit. 6, § 1304;

102.    Award Plaintiffs (a) the return of property to the Debtors' estates that is the subject of the avoidable fraudulent and preferential transfers alleged herein; or (b) monetary damages reflecting the applicable value in accordance with 11 U.S.C. § 550 of the avoidable fraudulent and preferential transfers alleged herein (plus the value of any additional avoidable transfers Plaintiffs learn, through discovery or otherwise, were made to the Defendants during the Preference Period);

103.    Enter an order under 11 U.S.C. § 502(d) disallowing any and all claims filed or held by Defendants in these Chapter 11 Cases unless and until Defendants have turned over to Plaintiffs the amount ordered as an award;

104.    Award Plaintiffs their attorneys' fees, pre- and post-judgment interest, and costs of suit; and

105.    Award Plaintiffs all other relief, at law or equity, to which they may be entitled.

Dated:  September 21, 2023
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Steven L. Holley (admitted *pro hac vice*)
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: holleys@sullcrom.com
       wheelers@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*