# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>         Debtors. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date: May 17, 2023, at 9:00 a.m.**<br><br>**Objection Deadline for the U.S. Trustee: May 9, 2023**<br><br>Re: D.I. 1324, 1137 |

**UNITED STATES TRUSTEE'S OMNIBUS OBJECTION TO (A) JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING THE MOVANTS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS, AND (B) THE AD HOC COMMITTEE OF NON-US CUSTOMERS OF FTX.COM'S MOTION TO FILE UNDER SEAL (I) THE VERIFIED STATEMENT OF EVERSHEDS SUTHERLAND (US) LLP AND MORRIS NICHOLS, ARSHT & TUNNELL LLP PURSUANT TO** <u>**BANKRUPTCY RULE 2019 AND (II) THE SUPPORTING DECLARATION**</u>

       Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "<u>U.S.</u>

<u>Trustee</u>"), through his undersigned counsel, files this omnibus objection (the "<u>Objection</u>") to the

(A) *Joint Motion of the Debtors and the Official Committee of Unsecured Creditors for an Order*

*Authorizing the Movants to Redact or Withhold Certain Confidential Information of Customers*

*and Personal Information of Individuals* [D.I. 1324] (the "<u>Joint Motion</u>"), and (B*) the Ad Hoc*

*Committee of Non-US Customers of FTX.Com's Motion to File Under Seal (I) the Verified*

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

*Statement of Eversheds Sutherland (US) LLP and Morris Nichols, Arsht & Tunnell LLP*

*Pursuant to Bankruptcy Rule 2019 and (II) the Supporting Declaration* [D.I. 1137] (the "Ad Hoc

Committee's Motion," and, collectively with the Joint Motion, the "Motions") and respectfully

states:

## I.      PRELIMINARY STATEMENT

1.      On January 20, 2023, this Court entered the *Final Order (I) Authorizing the*

*Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for*

*Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential*

*Information of Customers and Personal Information of Individuals on a Final Basis and (III)*

*Granting Certain Related Relief* [D.I. 545] (the "January 20 Redaction Order"), which allowed

the Debtors to redact from all Court filings the names, addresses and email addresses of their

customers, whether natural persons or entities, and also to redact the names, addresses and email

addresses of certain other creditors who are natural persons.  Certain of the provisions of that

order were limited to a 90 day period.  By the Joint Motion, the Debtors and the Committee seek

to extend that period for another 90 days for certain information, and permanently for other

information.  The Ad Hoc Committee, by their motion, seeks authority to redact the names,

addresses and email addresses of the members of the Ad Hoc Committee, who are customers of

FTX.com.

2.      The U.S. Trustee opposes the Motions for the reasons set forth in the *U.S.*

*Trustee's Objection to the Motion of the Debtors for Entry of Interim and Final Orders (I)*

*Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a*

*Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain*

*Confidential Information of Customers and Personal Information of Individuals and (III)*

*Granting Certain Related Relief* [D.I. 200] and the *Supplement to the United States Trustee's Objection to the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* [D.I. 362] (collectively, the "Prior Objections"), which are attached hereto as Exhibits A and B, respectively, and incorporated herein in full.

3.      By this Objection, the U.S. Trustee also sets forth certain additional arguments detailed below.

4.      For the reasons set forth in the U.S. Trustee's Prior Objections, and those set forth below, the Motions should be denied, except as to allow the redaction from public filings of the addresses and e-mail addresses – but not names – of individuals who are customers or other creditors of the Debtors, with unredacted versions of such documents directed to be filed under seal with the Court.

## II.      JURISDICTION, VENUE AND STANDING

4.      Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

5.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3

6.     Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this

Objection. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),*

33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under

11 U.S.C. § 307, which goes beyond mere pecuniary interest).

### III.     FACTUAL BACKGROUND

7.     On November 11, 2022, the Debtors filed voluntary chapter 11 petitions in this

Court.

8.     The Debtors continue to operate their business(es) as debtors in possession

pursuant to 11 U.S.C. §§ 1107 and 1108.

9.     The U.S. Trustee appointed an official committee of unsecured creditors on

December 15, 2022.

10.     On November 19, 2022, the Debtors filed the Motion of Debtors for Entry of

Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of

Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors

to Redact or Withhold Certain Confidential Information of Customers and Personal Information

of Individuals and (III) Granting Certain Related Relief [D.I. 45] (the "Original Motion"),

seeking both interim and final relief.

11.     A hearing on the interim relief sought in the Original Motion took place at the

"first day" hearing on November 22, 2022.  On November 23, 2022, the Court entered an order

granting interim relief on the Motion (the "Interim Order") and set the hearing to consider

approval of final relief for December 16, 2022.  D.I. 157.

12.     On December 12, 2022, the U.S. Trustee filed his objection to the Original

Motion. [D.I. 200, attached hereto as Ex. A.]

13. On January 1, 2023, the U.S. Trustee filed his supplement to the objection to the Original Motion. [D.I. 362, attached hereto as Ex. B.] That supplement addressed redactions of (a) the names of parties on the parties in interest list attached to any retention application, and (b) the names of any parties in interest with whom a professional has a connection or otherwise makes a disclosure.

14. A hearing on the final relief sought by the Original Motion took place on January 11, 2023. On January 20, 2023, the Court entered the January 20 Redaction Order. D.I. 545. That order included authorization for the Debtors to redact from all public filings the following:

(a) addresses and e-mail addresses of their creditors and equity holders who are natural persons on a permanent basis;[2]

(b) names, addresses and e-mail addresses of their customers, including those customers who are not natural persons, until the "Redaction Deadline," defined to expire on April 20, 2023; and

(c) names, addresses and e-mail addresses of any creditors or equity holders who are natural persons and who are protected by the GDPR, until the Redaction Deadline.

*See* January 20 Redaction Order, ¶¶ 4-6.

15. On March 15, 2023, the Debtors filed their schedules of assets and liabilities (the "Schedules") and statement of financial affairs (the "SOFAs"). The publicly filed versions of those documents included redactions of the names and addresses of both natural persons and entities in various parts of the Schedules and SOFAs, including in the list of insiders who received transfers in the year prior to the bankruptcy filing, and those who received gifts or

---

[2] The U.S. Trustee did not object to that relief.

5

charitable contributions.  *See, e.g.*, SOFA of Alameda Research Ltd.,  D.I. 1029 (large payments to insiders with "Name on File" on ecf pages 45 and 46;  gifts or charitable contributions to "Name on File" on ecf pages 47 and 48).  Counsel for the U.S. Trustee was told by counsel to the Debtors that the basis for the redactions was that these persons and entities are customers of the Debtors.

16.    On March 22, 2023, the Ad Hoc Committee Motion was filed.  D.I. 1137. In that motion, the Ad Hoc Committee requested authorization to redact the names, addresses and email addresses of all members of the Ad Hoc Committee, whether they be natural persons or entities, from the Bankruptcy Rule 2019 Statements filed by the Ad Hoc Committee's counsel.  The Ad Hoc Committee Motion also seeks authority to redact portions of a declaration submitted by one of the members of the Ad Hoc Committee in support of the Ad Hoc Committee Motion.

17.    On April 20, 2023, which was 90 days after the Court entered the January 20 Redaction Order, the Debtors and the Committee filed the Joint Motion.

## IV.    **ARGUMENT**

18.    The U.S. Trustee restates and incorporates the arguments set forth in the Prior Objections attached hereto as Exhibits A and B as if fully set forth herein.

19.    If, however, the Court is inclined to grant the relief requested in the Motions, the U.S. Trustee requests that certain exceptions be made, so that the following information is not authorized to be redacted:

(a)    Schedules and SOFA:

(i)    Insiders: The Debtors should not be permitted to redact the names of insiders on their Schedules or SOFAs, including but not limited to the names of insiders that received payments or other transfers from the Debtors within the year

6

prior to the bankruptcy filing.  Nor should the Debtors be permitted to redact the addresses of insiders who are not natural persons on the Schedules and SOFAs, to the extent such information is required by those documents.   Disclosures regarding insiders are simply too important to allow such information to be kept from the Debtors' creditors (including the Debtors' non-insider customers) and other parties in interest simply because such insiders happen to be customers of the Debtors.

(ii)     <u>Non-Insiders</u>: The Debtors should not be authorized to redact the names of any non-insider customers who are natural persons, or the names and addresses of any non-insider customers who are not natural persons, in the Schedules and SOFAs if it is not possible to determine from that information that such persons or entities are customers.  For example, disclosing on a SOFA the name of an entity that received a charitable contribution from the Debtors does not in any way indicate that such entity is a customer.

(b)     <u>Other Documents - Insiders</u>: The Debtors, the Committee and the Ad Hoc Committee should not be permitted to redact the names of any insider who is a natural person, or the names and addresses of any insider who is not a natural person, on any other document filed with the Court, absent a separate motion seeking approval to redact the same, so that the Court can weigh the importance of public disclosure of information concerning the Debtors' insiders against the Debtors' concern that such disclosure could lead to the poaching of their customers.

(c)     <u>Other Documents – Non-Insiders:</u>  Neither the Debtors, the Committee or the Ad Hoc Committee should be permitted to redact the names of any non-insider

customers who are natural persons, or the names and addresses of any non-insider

customers who are not natural persons, in Court filings if it is not possible to determine

from the information set forth in the filing that such persons or entities are in fact

customers of the Debtors.

The Request to Redact the Names of Natural Persons Covered by Japanese Privacy Law

20.     In the Joint Motion, the Debtors and the Committee request authority to redact the

names and addresses of customers and other creditors who are natural persons covered by a

Japanese law titled Act on the Protection of Personal Information ("APPI").  The U.S. Trustee

objects to such request on the same grounds it objected to the Debtors' prior request for authority

to redact the names of persons covered by the GDPR of the European Union or the United

Kingdom.  *See* Exhibit A hereto.  The U.S. Trustee further objects to the request regarding those

covered by the Japanese APPI for the following reasons:

(a)     The January 20 Redaction Order allowed redaction of names of natural

persons protected by the GDPR.  There is no mention in that order of the APPI or any

other Japanese law.[3]  It is not clear to the U.S. Trustee whether the Debtors have been

redacting the names of natural persons covered by the APPI even though the January 20

Redaction Order does not provide authority to do so.   If not, then those names have

already been publicly disclosed.

(b)     The Joint Motion has scant information regarding the APPI.  There is only

one paragraph addressing the content of that law, paragraph 43.  No certified translation

---

[3]     The Debtors' Original Motion did not mention Japanese law, although the Debtors' reply on
that motion included a one paragraph argument that paraphrased certain parts of the Japanese
law.  *See* I.D. 407, ¶ 17.

(or any translation) of the law has been provided.  In addition, in the Joint Motion, the movants assert that "[w]hile there is a statutory exception for disclosure if it is required by law, this exception does not apply where the applicable law is foreign law (such as U.S. law)."  *Id.*, citing the APPI, Art. 27(1)(i).  However, because no translation of the statute is provided, that assertion cannot be confirmed.  Nor can it be determined if there might be another applicable exception, or whether the Debtors' interpretation of the law is otherwise incorrect or incomplete.

<u>Other Objections to the Proposed Form of Order on the Joint Motion</u>

21.     In addition to the overall objection to the relief sought by the Joint Motion, the U.S. Trustee also objects to the following aspects of the form of order:

(a)     The proposed form of order has two different provisions relating to the redaction of the names of customers who are natural persons.  One provision is set forth as part of paragraph 2, and extends the time for which the Debtors and the Committee are authorized to redact the names of all customers – including natural persons – for an additional 90 days from the date of the entry of the order.  The other provision is set forth in paragraph 3, and appears to provide authority to redact the names of customers who are natural persons on a permanent basis.  If the Court grants the request set forth in the Joint Motion to allow redaction of the names of customers, it should be clear as to the time period the Debtors and the Committee are authorized to redact the names of customers who are natural persons.

(b)     In the January 20 Redaction Order, the Court made an exception to the authority to redact as it concerned the names on the Debtors' Consolidated List of Top 50 Creditors of creditors who are members of the Official Committee of Unsecured

Creditors, and the addresses, email addresses or phone numbers of any creditor who is not a natural person and was appointed to that Committee. D.I. 545, ¶ 10.  That exception is not continued in the proposed order on the Joint Motion, as it should be.

The Ad Hoc Committee's Motion

22.    As noted above, in the January 20 Redaction Order, the Court made an exception to the authority to redact as it relates to the creditors on the Official Committee of Unsecured Creditors.  If the Court grants the Ad Hoc Committee's Motion, the U.S. Trustee requests that the right of all parties in interest be reserved to request, at a later date, that the names of the members of the Ad Hoc Committee be publicly disclosed, depending on the role the Ad Hoc Committee may take in these cases, including but not limited to any role it may take in negotiating a chapter 11 plan.

23.    The U.S. Trustee leaves the movants to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the relief requested by the Motions, except to allow the redaction from public filings of the addresses and email addresses – but not names – of individuals who are customers or other creditors of the Debtors, and grant any such other and further relief that the Court deems just and proper.

10

Respectfully Submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

Dated: May 9, 2023

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Juliet.M.Sarkessian@usdoj.gov

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Chapter 11 <br><br> Case No. 22-11068 (JTD) <br> (Jointly Administered) <br><br> **Hearing Date:  December 16, 2022, at 10:00 a.m.** <br><br> **Objection Deadline:  December 9, 2022, extended for the U.S. Trustee to December 14, 2022 at 12:00 p.m.** <br><br> Re:  D.I. 45 |
| FTX TRADING LTD., *et al.*,[1] | | |
| Debtors. | | |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO MAINTAIN A CONSOLIDATED LIST OF CREDITORS IN LIEU OF SUBMITTING A SEPARATE MATRIX FOR EACH DEBTOR, (II) AUTHORIZING THE DEBTORS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS AND (III) GRANTING CERTAIN RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* (the "Motion") [D.I. 45], and respectfully states:

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

# I.   PRELIMINARY STATEMENT

1.     The bankruptcy process operates, like the rest of the court system, on the bedrock principle of American jurisprudence that the public has a right of access to judicial records. Only under limited circumstances may a federal court restrict or deny that access.  Here, the Debtors seek authority for a wholesale redaction from "any paper filed or to be filed with the Court or made publicly available in these chapter 11 Cases," of the following information: (a) the names, addresses and email addresses of all customers (who are also creditors of the Debtors), whether such customers are individuals, or legal entities, (b) the names, addresses and email addresses of all non-customer individual creditors or equity holders who are citizens of the United Kingdom ("UK") or member nations of the European Union ("EU"), and are covered by the EU or UK General Data Protection Regulation (collectively the "GDPR"), and (c) the addresses and email addresses of all other creditors or equity holders who are individuals, regardless of citizenship.[2]   Mot. ¶ 12; Proposed Final Order ¶¶ 4, 5 [D.I. 45-2].  The documents that would be subject to such redactions include (but are not limited to) the Debtors' Creditor Matrix,[3] Consolidated Top 50 Creditor List, Schedules and Statements, the claims register, proof of claims and affidavits of service.

2.     The U.S. Trustee does not object to the filing under seal of the addresses or e-mail addresses of customers or other creditors who are individuals.  The U.S. Trustee does, however, object to the sealing of the *names* of such customers and creditors, and the sealing of the names, addresses and other contact information for customers or creditors who are not individuals.

---

[2]     The U.S. Trustee does not object to that portion of the Motion that seeks authority to maintain a consolidated list of creditors, or for approval of certain procedures to serve the notice of the commencement of the cases on creditors.

[3]     Any capitalized terms not defined herein shall have the definition set forth in the Motion.

3.     Disclosure is a basic premise of bankruptcy law.  Indeed, it is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.  The Bankruptcy Code contains very limited and specific exceptions to the general rule that bankruptcy proceedings should be open and transparent.  The movant must demonstrate extraordinary circumstances and a compelling need to obtain protection to justify any such request.  This is especially true as to information required to be filed by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, such as the Creditor Matrix, Schedules and Statements.  Here, with nothing more than vague statements supporting the request, the Debtors seek extremely broad authority to conduct a significant portion of the bankruptcy cases under seal. If the Motion is granted, the ability of interested parties to evaluate the Debtors and their bankruptcy process and to communicate and find each other will be significantly curtailed.

4.     In addition to creating unfavorable precedent in this and other crypto industry chapter 11 cases, and in any other bankruptcy case in which a debtor has creditors who are customers, allowing the Debtors to file incomplete creditor lists and Schedules and Statements is a slippery slope.  Do the Debtors intend to conduct all of their claim objections under seal?  Will certain creditors' treatment in a plan be redacted?  Will objections to the disclosure statement and confirmation also be sealed?  Will the hearings before the Court in these cases have to be repeatedly closed?  It is well settled that, as a matter of promoting the integrity of the judicial system, bankruptcy proceedings must be open and transparent.[4]  Accordingly, the Debtors' request should be denied.

---

[4]     Although more than a month has passed since the bankruptcy filings, the Debtors have yet to file their Creditor Matrix, even though such creditor matrix is required under the Local Rules to be filed with the petition.  *See* Del. Bankr. L.R. 1007-2 (a).

5.     As to the names of those customers and other creditors who are individual citizens of the United Kingdom or of member countries of the European Union, the Debtors assert only cursorily that the GDPR constrains them from disclosing information regarding such creditors, at the risk of incurring penalties.  The Motion fails to establish that a foreign statute supplants the disclosure requirements of the Bankruptcy Code and fails to establish any entitlement to relief.  Also not addressed in the Motion is that the GDPR contains a "safe harbor" permitting the Debtors to disclose such information in the Debtors' exercise of their rights and duties in these bankruptcy cases.

6.     In another cryptocurrency matter, the United States Bankruptcy Court for the Southern District of New York recently ruled that the debtors could not redact the names of customers and creditors who were individuals, regardless of the country of their citizenship, but could redact their addresses and email addresses under 107(c) of the Code.  *See In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y 2022).  As to customers and creditors who were not individuals, the court did not authorize the redaction of any information.  The U.S. Trustee recognizes that this Court ruled differently in *In re Cred Inc., et al*. (20-12836 (JTD)).  However, the U.S. Trustee requests that the Court reexamine these issues and limit any relief granted to that authorized in *Celsius*.

7.     Finally, it appears the Debtors are seeking to avoid having to file unredacted versions under seal of any documents the Court permits to be redacted in the publicly viewable version. Instead, the Debtors propose providing unredacted copies to the Court only "upon request."  Proposed Final Order ¶ 7.  Such proposal is contrary to the procedures for sealing set forth in the Local Rules of this Court.  Del. Bankr. L.R. 9018-1(d).

8.      For these reasons, set forth in more detail below, the Debtors' Motion should be denied as it concerns redaction of information, except as to allow the redaction from public filings of the addresses and e-mail addresses – but not names – of individuals who are customers or other creditors of the Debtors, with unredacted versions of such documents directed to be filed under seal with the Court.

## II.      JURISDICTION, VENUE AND STANDING

4.      Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

5.      Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## III.      FACTUAL BACKGROUND

**General Case Background**

7.      On November 11, 2022, the Debtors filed voluntary chapter 11 petitions in this Court.

8.      The Debtors continue to operate their business(es) as debtors in possession

pursuant to 11 U.S.C. §§ 1107 and 1108.

9.      The U.S. Trustee has solicited interest in serving on an official committee of unsecured creditors.  As of the date this Objection was filed, the U.S. Trustee had not formed any official committees.

10.     On December 1, 2022, the U.S. Trustee filed a *Motion for Entry of an Order Directing the Appointment of an Examiner.*  D.I. 176.

**The Motion and Supporting Declaration**

11.     On November 11, 2022, the Debtors filed the Motion, seeking both interim and final relief.

12.     On November 20, 2022, the Debtors filed the *Declaration of Edgar W. Mosley, II, in Support of Chapter 11 Petitions and First Day Pleadings* (the "Mosley Declaration") [D.I. 57].  In the Mosley Declaration, Mr. Mosely stated that he is a Managing Director of Alvarez & Marsal, North America LLC, a restructuring advisory services firm, which was retained by the Debtors two days prior to the bankruptcy filing to assist in the process of preparing for chapter 11 filing.  Mosely Decl. ¶¶ 1, 5.  A portion of his declaration addressed the relief sought in the Motion.  In particular, Mr. Mosley stated the following in support of that portion of the Motion that seeks to redact information in Court filings relating to customers and creditors:

> It is my view that the Debtors' estates and their customers would benefit from the redaction of certain confidential customer information. The Debtors operate a global platform catering to customers in various forms of cryptocurrency. All of the Debtors' customers are creditors. Thus, the Debtors' customer list, and related customer data, is a valuable asset to the Debtors' estate. Public dissemination of the Debtors' customer list could give the Debtors' competitors an unfair advantage to contact and poach these customers, and I believe it would interfere with the Debtors' ability to sell their assets and maximize value for their estates at the appropriate time.

> Likewise, I believe that it is in the Debtors' and their estates' best interest to redact certain personal information of individuals. It is my understanding that

6

the Debtors may be subject to the GDPR, which restricts disclosure of certain personal information. It is also my understanding that, notwithstanding the Court's authorization for the Debtors to redact personal information of customers and individuals, the Debtors will instruct Kroll to serve these individuals on their personal addresses or e-mail addresses, as applicable. For these reasons, the relief requested in the Creditor Matrix Motion is in the best interest of the Debtors, the creditors, and all interested parties.

*See id.* ¶¶ 18-19.[5]

13.     Mr. Mosely's declaration is the only evidence the Debtors have introduced to date in support of the Motion.  The statements quoted above are the only statements set forth in the Mosely Declaration concerning redaction of information in Court filings relating to customers and other creditors.

14.     Neither the Motion nor the Mosely Declaration indicate the number of individuals who are customers or creditors of the Debtors and who are citizens of EU member countries or the UK.  Nor do the Debtors explain how they will determine which of their customers are citizens of EU or the UK, given that the only address the Debtors may have for certain of their customers are email addresses, and even for those customers who provided mailing addresses, a mailing address does not establish citizenship.

15.     A hearing on the interim relief sought in the Motion took place at the "first day" hearing on November 22, 2022.  On November 23, 2022, the Court entered an order granting interim relief on the Motion (the "Interim Order") and set the hearing to consider approval of final relief for December 16, 2022.  D.I. 157.

16.     The Interim Order required the Debtors to file an unredacted creditor matrix under

---

[5]     It is unclear whether the statements quoted above are based on Mr. Mosley's personal knowledge, or instead are based on information Mr. Mosely "obtained from the Debtors and their advisors, including the A&M team working under [his] supervision, [his] review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives" and his "opinions based upon [his] experience and knowledge." *See id.* ¶ 6.

seal with the Court. Interim Order ¶ 7.[6] As of the filing of this Objection, the lead case docket

does not reflect the filing of any Creditor Matrix, whether under seal or in a redacted format,

even though a creditor matrix is required by Local Rule 1007-2(a) to be filed by the debtors with

the petition.

**The Debtors' Policies for Sharing Customer Information**

17.     The Debtors' Privacy Policy for the FTX Cryptocurrency Derivatives Exchange

(the "Privacy Policy"), a copy of which is attached as **Exhibit A** hereto, includes the following

regarding the disclosure of customer information to third parties:

> DISCLOSING YOUR INFORMATION TO THIRD PARTIES
>
> We may share your personal information with the following categories of third parties:
>
> **Service Providers.** We may share any personal information we collect about you with our third-party service providers. The categories of service providers (processors) to whom we entrust personal information include: IT and related services; banks and trust companies; information and services; payment processors; customer service providers; and vendors to support the provision of the Services.
>
> . . . .
>
> **Business Partners.** *We may provide personal information to business partners* with whom we jointly offer products or services. In such cases, our business partner's name will appear along with ours.
>
> . . . .
>
> **Affiliates.** We may share personal information with our *affiliated companies*.
>
> **Advertising Partners.** Through our Services, *we may allow third party advertising partners to set Technologies and other tracking tools to collect information regarding your activities and your device (e.g., your IP address, mobile identifiers, page(s) visited, location, time of day). We may also combine and share such information and other information (such as demographic information and past purchase history) with third party advertising partners.* These advertising partners may use this information (and similar information collected from other websites) for

---

[6]     This provision was included in the proposed interim order at the request of counsel to the U.S. Trustee.

purposes of delivering targeted advertisements to you when you visit third party websites within their networks. This practice is commonly referred to as "interest-based advertising" or "online behavioral advertising. ***We may allow access to other data collected by the Services to share information that may be useful, relevant, valuable or otherwise of interest to you***. ***If you prefer not to share your personal information with third party advertising partners, you may follow the instructions below.***

**Disclosures to Protect Us or Others**. ***We may access, preserve, and disclose any information we store associated with you to external parties if we, in good faith, believe doing so is required or appropriate to: comply with*** law enforcement or national security requests and ***legal process,*** such as a court order or subpoena; protect your, our or others' rights, property, or safety; enforce our policies or contracts; collect amounts owed to us; or assist with an investigation or prosecution of suspected or actual illegal activity.

**Disclosure in the Event of Merger, Sale, or Other Asset Transfers.** If we are involved in a merger, acquisition, financing due diligence, ***reorganization, bankruptcy***, receivership, purchase or sale of assets, or transition of service to another provider, then your information may be sold or transferred as part of such a transaction, as permitted by law and/or contract.

Privacy Policy at 8-9 (emphasis added).

18.     The Privacy Policy further provides: "[w]e store the personal information we receive as described in this Privacy Policy for as long as you use our Services or as necessary to fulfill the purpose(s) for which it was collected, provide our Services, resolve disputes, establish legal defenses, conduct audits, pursue legitimate business purposes, enforce our agreements, and ***comply with applicable laws***.  *Id.* at 13 (emphasis added).

## IV.     LEGAL FRAMEWORK

### A.  Debtors in Bankruptcy Are Required to File Certain Information Regarding Their Creditors

19.     The Bankruptcy Code states that the debtor "*shall . . .* file, unless the court orders otherwise - a schedule of assets and liabilities," and "statement of the debtor's financial affairs, " among other information.  11 U.S.C. § 521(a)(1)(B)(i)(emphasis added).  Rule 1007-1(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a debtor, other

9

than one under chapter 9, shall file schedules of assets and liabilities, of current income an

expenditures, of executory contracts and unexpired leases, and a statement of financial affairs,

among other documents.

20.     Bankruptcy Rule 1007(a)(1) requires that a debtor in a voluntary case "file with

the petition a list containing the name and address of each entity included or to be included on

Schedules D, E/F, G and H as prescribed by the Official Forms."

21.     Rule 1007-2(a) of the Local Rules of this Court provide that "[i]n all voluntary

cases, the debtor shall file with the petition a list containing the name and complete address of

each creditor in such format as directed by the Clerk's Office Procedures."  Del. Bankr. L.R.

1007-2(a) (emphasis added).

22.     Debtors in chapter 11 and chapter 9 cases are also required to file Official Form

201, setting forth a list of creditors with the largest unsecured claims that are not insiders. That

form requires the provision of the following information for such creditors:  name, complete

mailing address, the name, telephone number and email address of a creditor contact, and the

nature and amount of claim.

### B.  The Right of Public Access to Judicial Records

23.     In American jurisprudence, there is a long-standing, common law right of public

access to court records.  *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 591 (1978) ([i]t is

clear that the courts of this country recognize a general right to inspect and copy public records

and documents, including judicial records and documents.")  The public's right of access

envisions "a pervasive common law right to inspect and copy public records and documents,

including judicial records and documents."  *In re Cendant Corp.*, 260 F.3d 183, 194 (3rd Cir.

2001) (citations omitted).

24.     The "access to civil proceedings and records promotes public respect for the judicial process." *Id.* (citations omitted).  Such access is "rooted in the public's First Amendment right to know about the administration of justice."  *Motors Liquidation Co. Avoidance Action Trust v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 41 (Bankr S.D.N.Y. 2016).  This right is "firmly entrenched and well supported by policy and practical considerations."  *Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21 F.3d 24, 26 (2d Cir. 1994).

25.     The right of public access has given rise to "a strong presumption and public policy in favor of public access to court records."  *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).  This presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . . [P]ublic monitoring is an essential feature of democratic control."  *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).  The Second Circuit has issued this pointed guidance:

> There must be a strong presumption against sealing any document that is filed with the court.  Our courts do not operate in secrecy.  Except on rare occasions and for compelling reasons, everything that courts do is subject to public scrutiny.  To hide from the public entire proceedings, or even particular documents or testimony forming a basis for judicial action that may directly and significantly affect public interests, would be contrary to the premises underling a free, democratic society.

*City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991).

### C.  The Right to Public Access Is Codified in the Bankruptcy Code

26.     In our bankruptcy system, it is widely acknowledged that the governmental interest is safeguarding public access to judicial records is "of special importance . . . , as unrestricted access to judicial records fosters confidence among creditors regarding fairness in the bankruptcy system."  *Motors Liquidation*, 561 B.R. at 41, *quoting Gitto v. Worcester*

*Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1, 7 (1st Cir. 2005) (*quoting In re Crawford*, 194 F.3d. 954, 960 (9th Cir. 1999). Described as "fundamental to the operation of the bankruptcy system and . . . the best means of avoiding any suggestion of impropriety that might or could be raised," the policy of open inspection, as applied in this Court, cannot be underestimated. *Motors Liquidation*, 561 B.R. at 41-42, *quoting In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984).

27.     The common law right of public access to judicial records has been codified in section 107(a) of the Bankruptcy Code. *Togut v. Deutsche Bank AG (In re Anthracite Capital Inc.)*, 492 B.R. 162, 170, 173 (Bankr S.D.N.Y. 2013); *see also Gitto Global*, 422 F.3d at 7-8 (section 107 supplants the common law of public access). Pursuant to § 107(a), papers filed in bankruptcy cases and the Court's dockets are "public records, open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Anthracite*, 492 B.R. at 170.

### D.  **The Limited Exception of Bankruptcy Code § 107(c)**

28.     Despite its deep underpinnings, the right to public access to court records is "not absolute." *Nixon*, 435 U.S. at 598; *Motors Liquidation*, 561 B.R. at 42. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *Orion Pictures*, 21 F.3d at 27 (noting that court may limit access where user's purpose is improper).

29.     Section 107(b)(1) of the Code provides that, "[o]n request of a party in interest, the bankruptcy court shall, . . . protect an entity with respect to a trade secret or confidential research, development or commercial information." 11 U.S.C. § 107(b)(1). Section 107(b) of the Code provides a "narrow statutory exception" to public access in bankruptcy cases." *In re Muma Services, Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002).

30.     Section 107(c)(1), added to the Code through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, "broadened the situations in which the court could protect individuals from disclosure of sensitive information in light of the emerging problem of identity theft." 2 *Collier on Bankruptcy* ¶ 107.LH[2] (16th ed.). The statute provides:

> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.
>
> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(emphasis added).

31.     Section 1028(d)(7) of title 18 ("Fraud and related activity in connection with identification documents, authentication features, and information") defines "means of identification" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," including any –

> (A)  name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
>
> (B)  unique biometric data (such as finger print, voice print retina or iris image, or other unique physical representation);
>
> (C)  unique electronic identification number, address, or routing code; or
>
> (D)  telecommunication identifying information or access device (as defined in section 1029(e)).

18 U.S.C. § 1028(d)(7).

32.     The specific "purpose of § 107(c) is to set forth a limited exception to the general rule that all records are public." *In re French*, 401 B.R. 295, 305 (Bankr. E.D. Tenn. 2009). Accordingly, under the precise structure and deliberate terms of § 107(c), the Court, in the

exercise of its discretion, *may* limit public access of certain identification information only if it determines that (1) *cause exists, and* (2) *to the extent* dissemination of the information would constitute an *undue risk* of identity theft. *Id.* (emphasis added). The Supreme Court has "emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 1931 (2016). "Undue," which appears as a modifier in section 107(c), is not defined in the Bankruptcy Code, and generally means "excessive or unwarranted." *Black's Law Dictionary* (3rd pocket ed. 2006). With regard to the statutory interpretation of modifiers, such as "undue," the Court has the "duty to 'give effect, if possible, to every clause and word of [the] statute.'" *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997) (interpreting "liquidated" and "noncontingent" as modifiers of "debts" in § 109(e)), *quoting United States v. Menasche*, 348 U.S. 528, 538-39 (1955).

33.     Given the express limitations in the statute permitting a bankruptcy court to "protect an individual" solely "to the extent" that "undue" risk is present, § 107(c)(1), like § 107 in general, "does not mandate sealing – only protection." *Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 753 (D. Del. 2018), *quoting Anthracite*, 492 B.R. at 180. It follows from this principle that the Court's consideration of a request for relief under § 107(c)(1) necessarily entails a consideration of competing interests. *Id.*, 585 B.R. at 755-57.

**E.   The Debtors Have the Burden of Proof Under § 107(b)(1) and (c)(1)**

34.     In seeking to apply any exception to the general right of public access to judicial records, codified by section 107(a) of the Bankruptcy Code, "[t]he burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Cendant Corp.*, 260 F.3d at 194. In *Cendant*, the Third Circuit Court of Appeals further explained:

> [T]he party seeking the closure of a hearing or the sealing of part of the
> judicial record "bears the burden of showing that the material is the kind
> of information that courts will protect" and that "disclosure will work a
> *clearly defined and serious injury to the party seeking closure*."  In
> delineating the injury to be prevented, *specificity is essential*.  Broad
> allegations of harm, bereft of specific examples or articulated reasoning,
> are insufficient.

*Id.* (internal citations omitted, emphasis added).

35.     The moving party bears the burden of showing that a request to place documents

under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018

by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access."

*United States v. Continental Airlines, Inc.. (In re Continental Airlines, Inc.),* 150 B.R. 334, 340

(D.Del. 1993); *accord Food Mgmt. Group,* 359 B.R. at 561 (Bankr. S.D.N.Y. 2007); *In re

Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).

36.     The burden of proof to seal or redact filed bankruptcy papers "is not an easy

burden nor should it be. . . . The party seeking impoundment must submit 'evidence the filing

under seal outweighs the presumption of public access to court records.'" *In re Creighton*, 490

B.R. 240, 244 (Bankr. N.D. Ohio 2013), *quoting Gitto/Global*, 321 B.R. at 373, *quoting In re

Muma Servs. Inc.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002).  "[S]ealing official documents," as

the Debtors would like, "should not be done without a compelling reason."  *City of Hartford*, 942

F.2d at 135.

### F.  **The General Data Protection Regulation**

37.     The EU's privacy law, known as the GDPR, became effective as of May 25,

2018, and establishes standards for entities that collect or process data on citizens and residents

of EU member countries.[7]  At the unified EU level, the GDPR is administered by the European

---

[7]     A copy of the GDPR can be accessed at https://eur-lex.europa.eu/legal-
content/EN/TXT/?uri=celex:32016R0679R(02) or https://gdpr.eu/tag/gdpr/.

Commission ("EU Commission"), which is responsible for proposing EU-wide legislation, implementing decisions of EU member states, upholding EU treaties, and managing the EU's daily affairs.  Also, the European Data Protection Board, which includes representatives from data protection authorities of each EU member state, has promulgated guidelines for compliance with the GDPR.  *See* www.edpb.europa.eu.

38.     With respect to individuals who are citizens of the UK, all data processing and collection of data prior to December 31, 2020 falls under EU's GDPR, because the UK was a member of the EU through that date.  Data collected after that date falls under the UK's GDPR, which can be accessed at https://uk-gdpr.org/.[8]  The UK's GDPR is substantially similar to that of the EU GDPR. Unless otherwise indicated, the Article numbers of the GDPR cited herein are the same Article numbers for both the EU and UK GDPR.

39.     An entity's obligations under the GDPR are determined by reference to whether the entity is a "controller" of information -- or merely a "processor" -- under the GDPR. Generally, a data processor is an entity that merely processes (*e.g.*, collects, stores or uses) personal data on behalf or at the direction of a data controller.  GDPR Art. 4(8).  A data controller is an entity that determines the purposes for which the personal data is processed, and how the data is processed.  GDPR Art. 4(7) (an entity that "determines the purposes and means of processing personal data").  The Debtors in these U.S. bankruptcy cases qualify as "data controllers" under the GDPR.

40.     The GDPR protects the disclosure of "personal data," which includes "any information relating to an identified or identifiable natural person ('data subject')."  GDPR Art. 4(1).  An "identifiable natural person" under the GDPR "is one who can be identified, directly or

---

[8]     *See* https://www.gdpreu.org/differences-between-the-uk-and-eu-gdpr-regulations/.

indirectly, in particular by reference to an identifier such as a name, an identification number, location data" and other attributes.  *Id.*

41.     Transactions involving the personal data of EU or UK citizens and residents who are located within the EU or UK, or who are doing business with entities also based in the EU or UK, are covered by the GDPR.  GDPR Art. 3.  The GDPR also has extra-territorial reach.  In addition to EU and UK based entities, the GDPR also applies to the processing by non-EU and non-UK entities "of personal data of [individual] "data subjects who are in the [European] Union," or the UK, regardless of citizenship, where the entity's processing generally concerns its business or its monitoring of the data subjects' EU or UK based behavior.  GDPR Art. 3(1, 2). U.S. entities, for example, may be subject to the GDPR if they control or process data concerning EU or UK citizens and residents.  *Id.*

42.     In the event that data controllers (e.g., the Debtors) collect personal data from an individual "data subject" (e.g., a creditor of the Debtors), they must provide certain processing information to the individual data subject, including contact information for the controller, the purpose of the data collection, any intended recipients of the data, and whether the personal data will be transferred outside the EU or UK.  GDPR Art. 13(1).  Processing personal data under the GDPR is lawful if the data subject consents, if processing is necessary for contractual performance, or if processing is "necessary for compliance with a legal obligation to which the controller is subject," among others.  GDPR Art. 6(1).

43.     Within the particular territory of a given EU member, an independent public authority, known under the EU GDPR as a "Supervisory Authority," and a "Commissioner" under the UK GDPR, is responsible for monitoring compliance with the GDPR, enforcing the GDPR's edicts, and conducting investigations.  The GDPR imposes a tiered structure of

corrective actions and administrative fines for violations of the GDPR, which are imposed by the applicable Supervisory Authority or UK Commissioner.  A Supervisory Authority or UK Commissioner may, for example, issue warnings for likely processing infringements of the GDPR, issue reprimands for actual infringements, or suspend data flows to recipients in third countries.  GDPR Art. 58(2).

44.     Also, "depending on the circumstances of each individual case" a Supervisory Authority or UK Commissioner may impose administrative (*i.e.*, monetary) fines for infringements of the GDPR.  GDPR Art. 83(1).  As an exercise of discretion, "[w]hen deciding whether to impose an administrative fine and deciding on the amount of the administrative fine in each individual case, due regard" must be given by the Supervisory Authority or UK Commissioner to "the nature, gravity and duration of the infringement[,] taking into account the nature[,] scope or purpose of the processing concerned," among other aggravating or mitigating factors.  GDPR Art. 83(2).  A Supervisory Authority may impose an administrative fine of up to €10.0 million, and the UK Commissioner up to 8.7 million pounds, or two percent of an offending entity's global annual revenue for lesser processing infringements, and a fine of up to €20.0 million, and the UK Commissioner up to 17.5 million pounds, or four percent of global annual revenue for other GDPR infringements, including the unauthorized transfer of personal data to third countries (*i.e.*, countries outside the EU or the UK).  GDPR Art. 83(4, 5).

45.     Pursuant to the GDPR, transfers of "personal data which are undergoing processing or are intended for processing after transfer to a third country" may "take place only if, subject to the other provisions of [the] Regulation," (*i.e.*, whether a GDPR-recognized legal basis applies to the processing of the data as a threshold matter), the data controller complies with certain "conditions" set forth in Chapter V of the GDPR.  GDPR Art. 44.  The Debtors'

filings in these U.S. bankruptcy cases of documents containing Personal Information qualify under the GDPR as transfers of personal data to a third country.

46.     Generally, under GDPR Chapter 5, data processors such as the Debtors may transfer personal data to third countries such as the U.S. if they have met one of three conditions: (1) the EU Commission or a UK Commissioner has made a prior "adequacy decision" vis-à-vis the recipient third country; (2) the data processor has put in place one of several "appropriate safeguards;" or (3) if a specific "derogation" (*i.e.*, an exception) set forth in the GDPR applies. GDPR Arts. 45, 46, 49.  In these bankruptcy cases, it appears that solely the third condition – *i.e.*, the derogations in the GDPR – apply to the data transfers proposed by the Debtors in the Motion to Redact.[9]

47.     If a European or UK entity's transfer of personal data to a third country such as the U.S. is not covered by either a prior adequacy decision or an appropriate safeguard recognized under the GDPR, the data transfer may still be made under the GDPR if it is covered

---

[9]     The GDPR contains two antecedent conditions not applicable here.  First, under the GDPR, transfers of personal data to third countries also may first take place if covered by a prior "adequacy decision" of the EU Commission.  GDPR, Art. 45(1, 3).  Such a decision constitutes a finding by the EU Commission that the legal framework in place for the recipient third country provides an "adequate level of protection" for the personal data rights of EU individuals.  *Id*.  Because the EU Commission has made only a partial finding of adequacy with respect to the U.S., EU entities may transfer personal data to U.S. entities under GDPR Art. 45(1) only if covered by the Commission-approved EU-US Privacy Shield framework.  *See* www.privacyshield.gov.  To the extent that the Federal government and the Court are recipients of personal data of EU residents, they are neither eligible for nor signatories to the Privacy Shield.

Second, in the absence of an adequacy decision pursuant to GDPR Art. 45(3), a data controller also may transfer personal data to a third country only if the controller has provided one of certain enumerated "appropriate safeguards."  GDPR Art. 46 (1, 2).  Such safeguards generally consist, among others, of:  instruments between public authorities involved in the transfers; binding inter-corporate rules approved by a Supervisory Authority; contracts with a third country recipient containing Supervisory Authority- or Commission-approved data protection clauses; a recipient's participation in a Supervisory Authority-approved code of conduct; or a recipient's certification by a Supervisory Authority.  GDPR Art. 46.

by one of the exceptions provided in GDPR Article 49 ("Derogations for specific situations").

Known in the GDPR as "derogations," the exceptions include:  the explicit consent of the

individual data subject (*e.g.*, an employee) (GDPR Art. 49(1)(a)); the transfer is necessary for the

performance of a contract between the individual and the data controller (GDPR Art. 49(1)(b));

or "***the transfer is necessary for the establishment, exercise or defence of legal claims***" ("Legal

Claim Exception," GDPR Art. 49(1)(e) (emphasis added)).

## IV.     OBJECTION

48.     The Debtors have not overcome the long-standing presumption of the public's

right to access court records.  It is well settled that honesty and full disclosure are paramount in

bankruptcy.  The duty of disclosure is important in the chapter 11 context, where the debtor in

possession serves as a trustee for the bankruptcy estate.  *In re Scott*, 172 F.3d 959, 967 n.6 (7th

Cir. 1999).  In these cases, the Debtors have not overcome that presumption.

### A.  The Debtors Have Not Established Grounds to Redact Customer Names Under Section 107(b) of the Bankruptcy Code

49.     The Debtors seek to redact the names, addresses and other contact information for

all of their customer-creditors, whether they be individuals, corporations of other legal entities,

from "any paper filed or to be field with the Court or made publicly available in these Chapter 11

Cases," which includes, but is not limited to, the Debtors "Creditor Matrix, Consolidated Top 50

Creditor List and Schedules and Statements" as well as all affidavits of service, the Claims

Register and proofs of claim.  Mot. ¶ 12; Proposed Final Order ¶ ¶ 4, 5.  The Debtors argue that

such names effectively constitute a customer list, which is entitled to protection as confidential

commercial information under section 107(b) of the Code and which, if disclosed, could allow

competitors to poach those customers and interfere with the debtors' ability to sell their assets.

Mot. ¶¶  12, 13.

50.     Under section 107(b), "commercial information" has been defined as information
which would cause an "unfair advantage to competitors by providing them information as to the
commercial operations" of the requesting party. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d
Cir. 1994) (internal quotations omitted); *accord In re Borders Group, Inc.,* 462 B.R. 42, 47
(Bankr. S.D.N.Y., 2011).

51.     "The 'commercial information' exception is not intended to offer a safe harbor for
those who crave privacy or secrecy for its own sake." *Motors Liquidation Co.,* 561 B.R. at 43
(*quoting In re Dreier LLP*, 485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013)). "Evidence–not just
argument–is required to support the extraordinary remedy of sealing." *Id.* at 43; *accord Dreier*,
485 B.R. at 823 (finding that "conclusory statements in [a declaration] are not probative").

52.     To meet its burden to show that a request to place documents under seal falls
within the parameters of Section 107(b), a movant "must demonstrate *extraordinary
circumstances and compelling need* to obtain protection." *Food Mgmt.*, 359 B.R. at 561
(emphasis added)(*citing In re Orion Pictures Corp*., 21 F.3d 24, 27 (2d Cir. 1994)).  In addition,
"[t]he moving party bears the burden of demonstrating that the information it is seeking to
protect from public viewing is both commercial and confidential." *In re Williams*, No. 15-71767,
2017 WL 6278764, at *3 (Bankr. W.D. Va. Dec. 8, 2017) (citing *In re Oldco M Corp.*, 466 B.R.
234, 237 (Bankr. S.D. N.Y. 2012) and *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr.
S.D. N.Y. 2007)).

53.     The Debtors have not demonstrated extraordinary circumstances or compelling
need to seal the names of those customer and other creditors who are individuals, or the names
and addresses of those customer-creditors who are not individuals. Nor do the Debtors cite any
authority holding that the type of information they seek to seal is both confidential and

commercial information under the Bankruptcy Code.  *See, e.g., In re Motors Liquidation Company,* 561 B.R. 36, 44 (Bankr. S.D.N.Y., 2016) (holding that the identities of the owners of 10% or more of the equity interests of a party in an adversary proceeding are not confidential commercial information and denying motion to seal). The Debtors provide only conclusory statements regarding the information's commercial importance, and "statements made by lawyers in briefs are not evidence." *Id*.  "To put it clearly, just because information may be 'confidential' does not mean it is 'commercial information' entitled to the extraordinary procedure of sealing." *Id*.

54.     The information the Debtors seek to conceal here falls directly into the category of information that is required to be disclosed when a party avails itself of the protections of the Bankruptcy Code.  *See* 11 U.S.C. § 521; Fed. R. Bankr. P. 1007; Del. Bankr. L.R. 1007-1(a) and 1007-2(a). The Debtors, who have voluntarily sought relief in this Court, have no basis for sealing the Creditor Matrix, Schedules, Statements, or the list of the largest unsecured creditors. Congress was clear that bankruptcy proceedings must be transparent, and transparency requires pleadings to be filed on the public docket unless narrow and enumerated exceptions apply.  Such exceptions do not apply here.

55.     The purpose of requiring a debtor to disclose all assets, liabilities and business dealings is to ensure that creditors have reliable and accurate information which they can rely on to determine the status of the debtor's financial affairs and to trace a debtor's financial history. *In re Haynes*, 549 B.R. 677, 687 (Bankr. D. S.C. 2016). The bankruptcy schedules and statements of affairs are designed to elicit certain information necessary to the proper administration and adjudication of the case.  *Id*.

56.     As stated by the court in *Celsius*, the schedule of liabilities "constitute prima facie evidence of the validity and amount of the claims of creditors unless they are scheduled as disputed, contingent, or unliquidated," under Fed. R. Bankr. P. 3003. *Celsius,* 644 B.R. at 297. This transparency is "'important because creditors can look at the schedule and see whether their claim has been listed, and whether it is an undisputed claim, in which case, they don't have to file a proof of claim.'" *Id.* (quoting the court's statements at the hearing).  The court further noted that "[e]nabling parties in interest and the public to see the identity of creditors and the amount of their claims, and then tracking the disposition and treatment of claims during the bankruptcy case, is important to the fairness and public perception of the bankruptcy process.  Only in the rarest of cases should these ordinary expectations be upset." *Id.* [10]

57.     The disclosure of the identity of the Debtors' customers is also important because the amounts owed to the Debtors or the amounts the Debtors owed are likely probative to the Debtors' ability to successfully restructure. The Debtors have made no showing that disclosure of the identities of some of its creditors are "reasonably [] expected to cause the entity commercial injury."  *In re Alterra Healthcare Corp.,* 353 B.R. 66, 75 (Bankr. D.Del., 2006). The Debtors simply cannot seek bankruptcy protection and then do business behind a shield of secrecy.

58.     The Privacy Policy also provides that FTX Trading Ltd. will "disclose any information we store associated with you to external parties" if required to do so to comply with

---

[10]   The Court in Celsius rejected the debtors' "anonymization" process, whereby the debtors would send individual e-mails to every account user that informed them of the amount at which their claim had been scheduled, and a number that would allow them to go to the claims agent's website to confirm the same.  *Id.* at 287.  The Court was not persuaded by this proposed solution, in part "because the public schedules do not merely serve the interests of individual creditors, but, rather, also serve the interests of creditors and the public in general—all parties and the public share an interest in complete transparency, with only the rarest of exceptions." *Id.* at 297.

any "legal process," and to "comply with applicable laws."  Privacy Policy at 9, 13.  The policy

further states that customers information may be sold or transferred in connection with a

reorganization or bankruptcy.  *Id.* at 9.

59.     As the Privacy Policy allows customers names and contact information to be

shared with numerous third parties, it is not secret or confidential. Moreover, the Privacy Policy

allows the Debtors to share privacy information if legally required to do so, as they are here,

under the statutory requirements of the Bankruptcy Code.

60.     The Debtors have neither tried to meet their burden of showing more than

speculative harm, nor have they established that such relief is actually necessary to protect a

party from harm. As to customers who are individuals, it is difficult to imagine how they could

be poached if all that is disclosed is their name, with no contact information.

61.     Like the Debtors in the present case, the debtors in *Celsius* sought authority to

redact the names and addresses of all of their customers, whether individuals or entities, arguing,

as the Debtors do here, that such information was confidential commercial information and could

lead to competitors "targeting the debtors customers and undermine[ing] the Debtors' ability to

reorganize." *Celsius*, 644 B.R. at 291.   The court rejected this argument, describing the debtors'

"larger problem" to be the same as in the present case, which is that before and after they filed

for bankruptcy, the debtors froze all customer accounts, refusing to permit any withdrawals.  The

court noted that such action "has not won many fans among the Debtors' customers."  *Id*. [11]

62.     The *Celsius* court recognized that it may be true, as one of the debtor's witness

explained, that "it is expensive and time consuming for crypto companies to identify, attach, and

---

[11]   The *Celsius* court further noted that, as here, the Debtors did not address with evidence whether
creditors who deposited crypto assets with the Debtors also maintain accounts with the debtors'
competitors. *See id.* at 292.

enroll potential customers." *Id*. at 292.  The court indicated, however, that it did "not believe

that is sufficient evidence to support sealing of the names of all creditors." *Id*.  As to individual

creditors, the court rejected the idea that names alone, without e-mail and physical addresses

linked to such names, meet the stand for confidential commercial information under section

107(b)(1), because "[n]ames alone are simply not enough to facilitate a competitor's theft." *Id*.

at 293.  The court pointed out that by sealing individual customers' home and email addresses to

protect those customers under section 107(c), the debtors would also "gain protection of

whatever commercial value may flow from that information." *Id*. at 292.  The court emphasized,

however, that it was granting that protection with respect to addresses of individual customers,

not for corporate, LLP or LLC customers.  *Id*. [12]

63. "The strong public policy of transparency and public disclosure in bankruptcy

cases requires ***very narrow exceptions and only on strong evidentiary showings***." *Id*. at 292

(emphasis added).  In these cases, as in *Celsius*, the Debtors' evidentiary showing is insufficient

to justify the wholesale sealing of creditors identities. *Id*.

## B.  The Debtors Have Not Established Grounds to Redact the Names of Customers and Creditors Who Are Individuals Under Section 107(c) of the Bankruptcy Code

64. The Debtors have made no attempt to fulfill their burden of proof under

Bankruptcy Code § 107(c).  As that statute is applied in these cases, for the Court to exercise its

discretion to protect the names of the Debtors' customers and other creditors who are

individuals, the Debtors must furnish evidence and make a concrete showing that filing *only the*

*names*, with no other information, of such individuals, "*would* create" an "*undue* risk" of identity

---

[12] In so doing, the *Celsius* Court recognized rulings in other cases that reached different results, including the ruling of this Court in *Cred*.  *See id.* at 292.

theft or other unlawful injury to those employees or their property.  11 U.S.C. § 107(c) (emphasis added).

65.    This issue also was addressed in *Celsius.* There, the court determined that "[i]dentifying the individual account holders by name, without physical and email addresses, is insufficient information to expose customers to risks of identity theft or personal danger."  644 B.R. at 293.  The court recognized that sealing such information from public disclosure "risks transforming the open and transparent bankruptcy process into something very different, which the Court is loath to do without a strong showing of real and not speculative risks."  *Id.*

66.    The Debtors in these cases have not set forth any facts demonstrating that disclosure of only the names of the Debtors' customers and creditors who are individuals, without any other contact information, would create any risk, let along any undue risk, of identity theft or other unlawful injury.   The Debtors provide, as an example, one incident that took place in another bankruptcy case in this District in 2017, but in that instance an address with provided along with the name. Mot. ¶ 18 (discussing *In re  Charming Charlie Holdings, Inc.*, No. 19-11534 (CSS)).  Similarly, the ruling in *In re Forever 21, Inc.*, cited by the Debtors, referenced persons who "seek to have their *addresses* withheld" to guard against identity theft.  Mot. ¶ 17 (emphasis added).

67.    Moreover, the Privacy Policy, quoted in paragraphs 17 and 18 above,  supports the argument that the information sought to be redacted does not meet any exception to section 107(a) of the Code.  The Privacy Policy specifically states that FTX Trading Ltd. may share customer's "personal information to business partners with whom we jointly offer products or services" and allow FTX Trading Ltd.'s "advertising partners to set Technologies and other tracking tools to collect information" regarding customers activities, their IP address, mobile

identifiers, and other information.  Objection Ex. A at 8-9.  The Privacy Policy also indicates that FTX Trading Ltd. discloses "personal information" it collects about its customers to FTX Trading Ltd.'s affiliates, as well as to service providers such as IT, banks, and customer service providers.  *See id*.  Although the privacy policy provides a way for customers to prevent the sharing of personal information with advertising partners, it does not do the same for sharing information with FTX Trading Ltd.'s "business partners," affiliates, or service providers.  *See id.* at 10-11.

68.     Consistent with the depth of the public right to access of judicial documents, Bankruptcy Code § 107(c) by its express terms requires both proof of undue risk – *i.e.*, not merely a slightly possible, theoretical risk – as well as a certainty of such undue risk.  11 U.S.C. § 107(c).  The modifier "undue" must be proven by a movant under § 107(c)(1), and not read out of the statute.  *In re Mazzeo,* 131 F.3d 295, 302 (2d Cir., 1997).  In the Motion, the Debtors merely hypothesize, without the evidence required, that there is a possibility of just ordinary risk. That simply does not suffice to fulfill the Debtors' heavy burden of proof under § 107(c). *Cendant*, 260 F.3d at 194 ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient"); *see also Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 144-45 (2d Cir. 2016) ("'Broad and general findings' and 'conclusory assertion[s]' are insufficient to justify deprivation of public access to the record, . . . 'specific, on-the-record findings' are required.") (*quoting United States v. Erie Cty.*, 763 F.3d 235, 243 (2d Cir. 2014)(internal quotations omitted).

69.     Without any additional proof establishing an "undue" risk of identity theft or other unlawful injury to the Debtors' customers and creditors who are individuals by the mere disclosure of their names, the Motion must be denied under § 107(c)(1).

### C.  **Names of Individuals Covered by the GDPR Should Not Be Redacted**

70.     The Debtors request the redaction of names and residential addresses of creditors who are citizens of a member nation of the EU, or are UK citizens, covered by either the EU GDPR or the UK GDPR.  That aspect of the Motion should be denied because:  (i) the scope of the Debtors' request is excessive; (ii) the GDPR does not supersede U.S. bankruptcy law for purposes of the Motion; and (iii) the GDPR makes an exception for the filing of such information in these bankruptcy cases.

### 1.     **The Bankruptcy Code, Not the GDPR, Controls Here**

71.     The Debtors, which consented to the jurisdiction of this Court by filing voluntary petitions for bankruptcy relief, have failed to set forth any authority for their implied proposition that the GDPR supersedes U.S. interests, as implemented through the disclosure provisions of the Bankruptcy Code, the Bankruptcy Rules, and related law.  To the contrary, in these chapter 11 cases, the Court simply may not be bound by the GDPR.

72.     In this regard, in the analogous discovery context, the Supreme Court has weighed in very clearly.  With respect to a French "blocking statute" that authorized criminal penalties for the production of economic, commercial and financial documents in foreign judicial proceedings, including U.S. proceedings, the Court unequivocally ruled: "It is well settled that such [foreign blocking] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dt. Ct. for the Southern Dt. of Iowa*, 482 U.S. 522, 544 n.29 (1987); *see also Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d. 409, 422-25 (S.D.N.Y. 2016) (denying European banks' objections to discovery based on 1995 EU Directive 95/46/EC (part of the UK Data Protection Act), because as a matter of comity, the

United States' national interests outweigh those of the UK); *Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, Case No. 14-CV-8175 (LGS), 2018 WL 745994 (S.D.N.Y. Feb. 6, 2018) (holding that plaintiff improperly withheld custodial information and substantially redacted individual names and email addresses in deference to Belgian Data Privacy Act, which restricts transfer of personal data to countries outside the EU).

73.     The *Celsius* court addressed this issue as well.  There, as here, the debtors sought authorization to redact the names, email addresses, and home addresses of any citizens of the UK or European Economic Area member countries, arguing that the disclosure of those names and addresses would risk violating the UK GDPR and the EU GDPR, which would expose the Debtors to potential civil liability and significant financial penalties. *Celsius*, 644 B.R. at 295. The court noted that there, as here, the debtors provided "no legal authority explicitly dictating why the UK GDPR and the EU GDPR should apply to the bankruptcy cases of the Debtors filed in the United States, or specifically, why the foreign laws would take precedence in a situation where United States law requires the disclosure of the information."  *Id*.  The court examined whether disclosure of the names and addresses of such individuals could be protected under 107(c), but indicated that it remained "unconvinced, beyond speculation, that the disclosure of names alone (without email or physical addresses) presents an imminent risk of harm." *Id.*  The court also indicated that it would "not treat the UK and EU citizens differently than the United States citizens implicated in this case filed in New York." *Id.*  The court ruled that the Debtors could redact home addresses and email addresses of any individual, including those located in the UK or the EU member countries, but denied the proposed redaction of the names of the individuals. *Id.*  The U.S. Trustee believes the same result is warranted here.

74.     The Debtors should not be allowed to eviscerate long-standing disclosure requirements grafted into the Bankruptcy Rules and the Local Rules of this Court and the long-standing policies underlying those authorities.  While the UK and the EU have a legitimate interest in enforcing their own law, this Court's interest in enforcing the Bankruptcy Code in these bankruptcy cases is superior.  The Debtors have put forth no proof whatsoever, let alone the plausible evidence required, that their applicable Supervisory Authority or UK Commissioner, would unduly pursue enforcement action and issue penalties against them for obeying both U.S. law and a specific disclosure order of this Court.

75.     In addition, it appears that the Debtors do not even know which of their customers and creditors are citizens of the UK or an EU member country, because in many instances the Debtors do not have street addresses for such customers and creditors.  Even for those customers and creditors for whom the Debtors do have addresses, an address alone does not establish citizenship.

## 2.     Personal Information May Be Filed Under the GDPR Legal Claim Exception

76.     In addition, the Debtors have failed to discuss the GDPR's Legal Claim Exception, which facially appears to permit the disclosure of the names (as well as residential addresses) of EU and UK creditors in these bankruptcy cases.  Pursuant to the Legal Claim Exception, the Debtors' transfer of the names of EU or UK creditors to a third country such as the U.S., by filing the same in these bankruptcy cases, is allowed to the extent that "the transfer is necessary for the establishment, exercise or defence of legal claims."   GDPR, Art. 49(1)(e). Recital 111 to the GDPR, which interprets the Legal Claim Exception, expressly provides that under the exception, a transfer of data, such as the names of EU or UK creditors at issue here, may take place where it is "occasional and necessary in relation to a contract or a legal claim,

regardless of whether in a judicial procedure or whether in an administrative or any out-of-court procedure, including procedures before regulatory bodies." GDPR Art. 49(1)(e), Recital 111.[13]

77.     According to official guidelines promulgated by the European Data Protection Board, the Legal Claim Exception broadly "covers a range of activities." *Guidelines 2/2018 on Derogations of Article 49 Under Regulation 2016/679* (May 25, 2018) ("EDPB Guidelines").[14] The EDPB Guidelines expressly provide that the Legal Claim Exception includes "actions by the data exporter to institute procedures in a third country[,] for example commencing litigation or seeking approval of a merger." EDPB Guidelines § 2.5. According to the European Data Protection Board, such third-country procedures, *e.g.* – legal proceedings in a third country – "must have a basis in law, including a formal, legal defined process," and "a close link is necessary between a data transfer and a specific procedure regarding the situation in question." *Id*.

78.     Here, it cannot be disputed that the requirements imposed by the U.S. Bankruptcy Rules and Local Rules of this Court constitute and furnish a well-recognized, "formal, legal defined process" within the meaning of EDPB Guidelines § 2.5. It follows that because full disclosure of the names of all creditors is required under Bankruptcy Rule 1007(a)(1) and Local Rule 1007-2(a), the Debtors' transfers of personal data to a third country under the GDPR, *i.e.* – their filing of the names of EU or UK creditors in these U.S. bankruptcy cases – is

---

[13]   A copy of Recital 111 may be found at https://gdpr.eu/Recital-111-Exceptions-for-certain-cases-of-international-transfers. The Recitals of the EU GDPR also apply to the UK GDPR. *See* https://ukgdpr.fieldfisher.com/recitals/.

[14]   A copy of the EDPB Guidelines may be found at https://edpb.europa.eu/our-work-tools/our-documents/publication-type/guidelines_en. The EDPB has not applied to UK since January 1, 2021. https://edpb.europa.eu/sites/default/files/files/file1/edpb_statement_20201215_brexit_updated20210113_en.pdf. Nevertheless, the EDPB Guidelines may still be instructive in interpreting the UK GDPR with respect to the provisions discussed in this Objection, as such provisions in the UK GDPR are nearly identical to those of the EU GDPR.

unquestionably "necessary for the establishment [and] exercise" of the Debtors' "legal claims" in these U.S. bankruptcy cases. GDPR Art. 49(1)(e). By virtue of having voluntarily requested relief under chapter 11 of the Bankruptcy Code, the Debtors subjected themselves to the non-discretionary disclosure requirements of Bankruptcy Rule 1007(a)(1) and Local Rule 1007-2(a). Thus, the Debtors' filing of unredacted names of EU and UK creditors, *i.e.* – their transfers of personal data to a third country under the GDPR – fulfills the requisite "necessary" standard of the Legal Claim Exception of GDPR, Art. 49(1)(e). For these same reasons, the filing of the names of EU and UK creditors by the Debtors is "necessary" within the meaning of Recital 111 to GDPR, Art. 49(1)(e), and such filing fulfills the "close link" requirement of EDPB Guidelines § 2.5.

79.     In addition, the Debtors' disclosure of the names of EU and UK creditors in these cases also squarely satisfies the requirement of the applicable GDPR Recital. GDPR Art. 49(1)(e), Recital 111 (data transfers must be "occasional"). The Debtors are required to include the names of EU and UK creditors in the Creditor Matrix, the Consolidated Top 50 Creditors List and also in the Debtors' Schedules and Statements of Financial Affairs. 11 U.S.C. § 521(a)(1)(B), Bankruptcy Rules 1007(a)(1) and 1007-1(b), and Official Form 201. Therefore, in terms of GDPR Recital 111, at the underlying "data transfers" of names of EU and UK creditors by the Debtors will occur with only "occasional" frequency within the meaning of the Recital. GDPR Art. 49(1)(e), Recital 111.

80.     Though the Debtors bear the burden of proof here, the Motion fails to bear any indication that they have pursued any threshold assessments of their risk of penalization under the GDPR. There is, for example, no proof that the Debtors simply sought the consent of the EU and UK creditors to include their names in the Creditor Matrix, the Consolidated Top 50

Creditors List, and the Debtors' Schedules and Statements, rather than asking for extraordinary

judicial relief.  GDPR Art. 49(1)(A).  The Motion also fails to demonstrate that the Debtors have

made an inquiry with their applicable EU GDPR Supervisory Authority or UK Commissioner

about the lawfulness of transferring the names of the EU and UK creditors to the U.S. by filing

that information in these bankruptcy cases pursuant to the requirements of the Bankruptcy Rules

and the Local Rules of this Court, or seeking a permit from their Supervisory Authority or UK

Commissioner to do so.   Particularly in light of the tenets of the Legal Claim Exception, of the

discretion expressly given by the GDPR to the Debtors' Supervisory Authority or UK

Commissioner, and of the strength of the American laws militating in favor of full disclosure in

these bankruptcy cases, these types of diligence by the Debtors are crucial at this relatively early

stage of the implementation of the GDPR, and critical to the Debtors' faithful fulfillment of their

fiduciary duties here.

81.     For the reasons set forth above, the relief requested by the Motion as it regards

EU and UK citizens who are individual customers-creditors of the Debtors should be denied,

except so as to allow the redaction of their residential and email addresses.

### D.   The Debtors Must File Under Seal Unredacted Versions of All Documents They File in a Redacted Format

82.     In the event the Court grants any portion of the Debtors' Motion seeking to redact

customer and creditor information, it appears that the Debtors are seeking to bypass the

requirement that they file under seal an unredacted version of each redacted document filed.

Instead, the Debtors propose to provide such unredacted documents to the Court only "upon

request."  Under the Local Rules of this Court, it is not sufficient to simply file a redacted

version of a document and nothing else, especially with respect to documents that are required by

the Bankruptcy Code and the Bankruptcy Rules to be filed, such as the Creditor Matrix, and the

33

Schedules and Statements. *See* Del. Bankr. L.R. 9018-1(d).

83. At the request of the U.S. Trustee, the Debtors did modify the proposed the Interim Order on the Motion to require that an unredacted version of the Creditor Matrix be filed under seal with the Court. However, the Debtors did not agree to the U.S. Trustee's request for the interim order to provide that *all* redacted documents also be filed under seal in an unredacted format. To the extent this Court grants any portion of the Motion as it concerns redaction, the final order should be modified to require that any party who files a document with information that has been authorized by the Court to be redacted must also file an unredacted version of the same with the Court under seal.

84. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the final relief requested by the Motion, as it concerns redaction of information, except to allow the redaction from public filings of the addresses and email addresses – but not names – of individuals who are customers or other creditors of the Debtors, and grant any such other and further relief that the Court deems just and proper.

Respectfully Submitted,

**ANDREW R. VARA,**
**ACTING UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

Dated: December 12, 2022

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Juliet.M.Sarkessian@usdoj.gov

# EXHIBIT A



Sign in

FTX Exchange › Getting Started with FTX › Legal

Search Help Center

# Privacy Policy



FTX Crypto Derivatives Exchange
Updated 3 months ago

**FTX Privacy Policy**

**January 27, 2022**

FTX Trading Ltd. d/b/a FTX ("FTX," "we," "us" or "our") is a cryptocurrency trading exchange accessible via our site located at [www.ftx.com](www.ftx.com) and our mobile application FTX Pro.  Our Privacy Policy ("Privacy Policy") is designed to help you understand how we collect, use and share your personal information and to assist you in exercising the privacy rights available to you.

SCOPE

This Privacy Policy applies to personal information processed by us in our business, including on our websites, mobile applications, and other online or offline offerings (collectively, the "Services"). This Policy applies to our operating divisions, subsidiaries, affiliates, and branches.

1......... PERSONAL INFORMATION WE COLLECT

2......... HOW WE USE YOUR INFORMATION

3......... DISCLOSING YOUR INFORMATION TO THIRD PARTIES

4......... YOUR PRIVACY CHOICES AND RIGHTS

5......... DATA RETENTION

6......... SECURITY OF YOUR INFORMATION

7......... INTERNATIONAL DATA TRANSFERS

8......... CHILDREN'S INFORMATION

9......... SUPERVISORY AUTHORITY

10....... CHANGES TO OUR PRIVACY POLICY

11 .... CONTACT US

## 1. PERSONAL INFORMATION WE COLLECT

The categories of personal information we collect depend on whether you are a customer, user, applicant or visitor, and the requirements of applicable law.

**Information You Provide to Us**

- **Account Creation**. To create an account with us and use our Services, we may collect the following information from you:

  - Identification information: First and last name, date of birth, gender, phone number, email, government identification number (including tax identification, driver's license number and passport number) and other information necessary to verify your identity to comply with our regulatory obligations under financial or anti-money laundering laws;

  - Institutional information: If you are an institutional customer, we may collect your institution's legal name, Employer Identification number (or comparable number issued by a government), proof of legal formation (e.g. Articles of Incorporation) and personal identification information for all material beneficial owners;

  - Financial information: Bank account information, routing number, transaction history, trading data and/or tax identification;

- Transaction information: Information about the transactions you make using our Services, such as the name of the recipient and the trading amount;

- Employment information: Your job title, office location or source of income; and

- Correspondence: Information you provide to our support teams.

**Your Communications with Us**.  We collect personal information from you such as email address, phone number, or mailing address when you request information about our Services, request customer or technical support, apply for a job or otherwise communicate with us.

**Surveys**.  We may contact you to participate in surveys.  If you decide to participate, you may be asked to provide certain information which may include personal information.

**Social Media Content**.  We may offer forums, blogs, or social media pages.  Any content you provide on these channels will be considered "public" and is not subject to privacy protections.

**Registration for Sweepstakes or Contests**.  We may run sweepstakes and contests. Contact information you provide may be used to reach you about the sweepstakes or contest and for other promotional, marketing and business purposes, if permitted by law. In some jurisdictions, we are required to publicly share information of winners.

## Information Collected Automatically or From Others

**Automatic Data Collection**.  We may collect certain information automatically when you use the Services.  This information may include your Internet protocol (IP) address, user settings, MAC address, cookie identifiers, mobile carrier, mobile advertising and other unique identifiers, details about your browser, operating system or device, location information, Internet service provider, pages that you visit before, during and after using the Services, information about the links you click, and other information about how you use the Services.  Information we collect may be associated with accounts and other devices.

In addition, we may automatically collect data regarding your use of our Services, such as the types of content you interact with and the frequency and duration of your activities. We may combine your information with information that other people provide when they use our Services, including information about you when they tag you.

**Cookies, Pixel Tags/Web Beacons, Analytics Information, and Interest-Based Advertising technologies.**  We, as well as third parties that provide content, advertising, or other functionality on the Services, may use cookies, pixel tags, local storage, and other

technologies ("Technologies") to automatically collect information through the Services. Technologies are essentially small data files placed on your computer, tablet, mobile phone,

or other devices that allow us and our partners to record certain pieces of information whenever you visit or interact with our Services.

- **Cookies**. Cookies are small text files placed in visitors' computer browsers to store their preferences.  Most browsers allow you to block and delete cookies.  However, if you do that, the Services may not work properly.

- **Pixel Tags/Web Beacons**. A pixel tag (also known as a web beacon) is a piece of code embedded in the Services that collects information about users' engagement on that web page.  The use of a pixel allows us to record, for example, that a user has visited a particular web page or clicked on a particular advertisement.

**Analytics and Financial Data**.  We use third-party tools to monitor and analyze the use of our Services, and to automate certain processes related to the development and operation of our Services:

- **Google Analytics and Others**. We may use Google Analytics and other service providers to collect information regarding visitor behavior and visitor demographics on our Services.  For more information about Google Analytics, please visit http://www.google.com/policies/privacy/partners/. For more information about Google's privacy practices, please visit https://policies.google.com/privacy?hl=en. You can opt out of Google's collection and processing of data generated by your use of the Services by going to http://tools.google.com/dlpage/gaoptout.

- **Plaid**. We may use Plaid Technologies, Inc. ("Plaid"), as a vendor to collect information about you, and you acknowledge and agree that the terms and conditions of Plaid's privacy policy (found here: https://plaid.com/legal/#privacy-policy) will govern Plaid's use of such information, and that you expressly agree to the terms and conditions of Plaid's privacy policy. You hereby expressly grant Plaid the right, power, and authority to access and transmit your information as reasonably necessary for Plaid to provide its services to you in connection with your use of the Platform.

- **FullStory:** We use FullStory for recording your interactions with our Services which helps us deliver a better user experience. For more information on the privacy practices of FullStory, please visit https://www.fullstory.com/legal/privacy/.

- **VWO**: We may use VWO, offered by Wingify Software Pvt. Ltd. ("Wingify"), to run A/B tests on our Services and deliver a better user experience. For more information on the privacy practices of Wingify, please visit https://vwo.com/privacy-policy/.

- **Segment**: We may use Segment, offered by Segment.io, Inc. ("Segment") to collect information about your use of our Services. For more information on the privacy practices of Segment, please visit https://segment.com/legal/privacy/.

**Information from Other Sources.** We may obtain information about you from other sources, including through third party services and organizations to supplement information provided by you. For example, if you access our Services through a third-party application, such as an app store, a third-party login service, or a social networking site, we may collect information about you from that third-party application that you have made public via your privacy settings. Information we collect through these services may include your name, your user identification number, your user name, location, gender, birth date, email, profile picture, and your contacts stored in that service. This supplemental information allows us to verify information that you have provided to us and to enhance our ability to provide you with information about our business, products, and Services.

## 2. HOW WE USE YOUR INFORMATION

We use your information for a variety of business purposes, including to:

**Fulfill our contract with you and provide you with our Services, such as:**

- Managing your information and accounts;

- Providing access to certain areas, functionalities, and features of our Services;

- Communicating with you about your account, activities on our Services and policy changes;

- Undertaking activities to verify or maintain the quality or safety of a service or device;

- Processing your financial information and other payment methods for products or Services purchased;

- Providing promotional, advertising, analytics and marketing services;

- Processing applications and transactions; and

- Allowing you to register for events.

Analyze and improve our Services pursuant to our legitimate interest, such as:

- Detecting security incidents, protecting against malicious, deceptive, fraudulent or illegal activity, and prosecuting those responsible for that activity;

- Measuring interest and engagement in our Services and short-term, transient use, such as contextual customization of ads;

- Undertaking research for technological development and demonstration;

- Researching and developing products, services, marketing or security procedures to improve their performance, resilience, reliability or efficiency;

- Improving, upgrading or enhancing our Services or those of our Providers;

- Developing new products and Services;

- Ensuring internal quality control;

- Verifying your identity and preventing fraud;

- Debugging to identify and repair errors that impair existing intended functionality;

- Enforcing our terms and policies; and

- Complying with our legal obligations, protecting your vital interest, or as may be required for the public good.

Provide you with additional content and Services, such as:

- Furnishing you with customized materials about offers, products, and Services that may be of interest, including new content or Services;

- Auditing relating to interactions, transactions and other compliance activities; and

- Other purposes you consent to, are notified of, or are disclosed when you provide personal information.

**Automated profiling**. We may use technologies considered automated decision making or profiling.  We will not make automated decisions about you that would significantly affect you, unless such a decision is necessary as part of a contract we have with you, we have your consent, or we are permitted by law to use such technology.  You may escalate any concerns you have by contacting us below.

**Use De-identified and Aggregated Information.**  We may use personal information and other data about you to create de-identified and aggregated information, such as de-identified demographic information, de-identified location information, information about the computer or device from which you access our Services, or other analyses we create.

**Share Content with Friends or Colleagues.**  Our Services may offer various tools and functionalities.  For example, we may allow you to provide information about your friends through our referral services.  Our referral services may allow you to forward or share

certain content with a friend or colleague, such as an email inviting your friend to use our Services.

**How We Use Automatic Collection Technologies.**  We, as well as third parties that provide content, advertising, or other functionality on the Services, may use cookies, pixel tags, local storage, and other technologies to automatically collect information through the Services.  Our uses of these Technologies fall into the following general categories:

- **Operationally Necessary**. This includes Technologies that allow you access to our Services, applications, and tools that are required to identify irregular site behavior, prevent fraudulent activity and improve security or that allow you to make use of our functionality;

- **Performance Related**. We may use Technologies to assess the performance of our Services, including as part of our analytic practices to help us understand how our visitors use the Services (see *Analytics and Financial Data* above). For example, we may track your activity on the Services, including recordings of your interactions with the Services;

- **Functionality Related**. We may use Technologies that allow us to offer you enhanced functionality when accessing or using our Services.  This may include identifying you when you sign into our Services or keeping track of your specified preferences, interests, or past items viewed;

- **Advertising or Targeting Related**. We may use first party or third-party Technologies to deliver content, including ads relevant to your interests, on our Services or on third party sites.

**Cross-Device Tracking.**  Your browsing activity may be tracked across different websites and different devices or apps.  For example, we may attempt to match your browsing activity on your mobile device with your browsing activity on your laptop.  To do this our technology partners may share data, such as your browsing patterns, geo-location and device identifiers, and will match the information of the browser and devices that appear to be used by the same person.

**Notice Regarding Third Party Websites, Social Media Platforms and Software Development Kits.**  The Services may contain links to other websites, and other websites may reference or link to our website or other Services.  These other websites are not controlled by us.  We encourage our users to read the privacy policies of each website and application with which they interact.  We do not endorse, screen or approve and are not responsible for the privacy practices or content of such other websites or applications. Visiting these other websites or applications is at your own risk.

Our Services may include publicly accessible blogs, forums, social media pages, and private messaging features.  By using such Services, you assume the risk that the personal information provided by you may be viewed and used by third parties for any number of purposes.  In addition, social media buttons such as Facebook, Linked In, Google, etc. (that might include widgets such as the "share this" button or other interactive mini-programs) may be on our site.  These features may collect your IP address, which page you are visiting on our site, and may set a cookie to enable the feature to function properly.  These social media features are either hosted by a third party or hosted directly on our site.  Your interactions with these features apart from your visit to our site are governed by the privacy policy of the company providing it.

We may use third party APIs and software development kits ("SDKs") as part of the functionality of our Services.  APIs and SDKs may allow third parties including analytics and advertising partners to collect your personal information for various purposes including to provide analytics services and content that is more relevant to you.  For instance, we use the SardineAI SDK for fraud protection purposes. The SardineAI SDK collects your mobile battery usage, mobile Device Identifier, device storage information, MAC Address, and SIM information and collects enough information to determine if you are trying to hide your current location by using a VPN, VPN apps with location spoofing, or other related tools.  For more information about our use of APIs and SDKs, please contact us as set forth below.

3.   DISCLOSING YOUR INFORMATION TO THIRD PARTIES

We may share your personal information with the following categories of third parties:

**Service Providers.**  We may share any personal information we collect about you with our third- party service providers.  The categories of service providers (processors) to whom we entrust personal information include: IT and related services; banks and trust companies; information and services; payment processors; customer service providers; and vendors to support the provision of the Services.

For the provision of fiat payment functions available in FTX, we may share personal data you have provided to FTX during the Account Creation process (see Personal Information We Collect) with Paysafe during the wallet sign-up process for the purpose of responding to regulatory queries received by our service providers. These secure transfers will be limited to those strictly necessary to meet this purpose and ensure the continuation of the service. For more information on this service https://www.paysafe.com/en/paysafegroup/comprehensive-privacy-policy/.

**Business Partners.**  We may provide personal information to business partners with whom we jointly offer products or services.  In such cases, our business partner's name will appear along with ours.

**NFT Partners**. Non-fungible token ("NFT") issuers or projects offering their NFTs via our Services ("NFT Partners") may offer NFT buyers promotional items or rewards (the "Rewards") in connection with NFT purchases made via the Services. If you choose to redeem your Rewards, we will provide the NFT Partner with your identifying information, such as your name and mailing address.

**Affiliates.**  We may share personal information with our affiliated companies.

**Advertising Partners.**  Through our Services, we may allow third party advertising partners to set Technologies and other tracking tools to collect information regarding your activities and your device (e.g., your IP address, mobile identifiers, page(s) visited, location, time of day).  We may also combine and share such information and other information (such as demographic information and past purchase history) with third party advertising partners. These advertising partners may use this information (and similar information collected from other websites) for purposes of delivering targeted advertisements to you when you visit third party websites within their networks.  This practice is commonly referred to as "interest-based advertising" or "online behavioral advertising.  We may allow access to other data collected by the Services to share information that may be useful, relevant, valuable or otherwise of interest to you.  If you prefer not to share your personal information with third party advertising partners, you may follow the instructions below.

**Disclosures to Protect Us or Others.**  We may access, preserve, and disclose any information we store associated with you to external parties if we, in good faith, believe doing so is required or appropriate to: comply with law enforcement or national security requests and legal process, such as a court order or subpoena; protect your, our or others' rights, property, or safety; enforce our policies or contracts; collect amounts owed to us; or assist with an investigation or prosecution of suspected or actual illegal activity.

**Disclosure in the Event of Merger, Sale, or Other Asset Transfers.**  If we are involved in a merger, acquisition, financing due diligence, reorganization, bankruptcy, receivership, purchase or sale of assets, or transition of service to another provider, then your information may be sold or transferred as part of such a transaction, as permitted by law and/or contract.

You acknowledge that all information processed by us may be transferred, processed, and stored anywhere in the world, including but not limited to, the United States or other countries, which may have data protection laws that are different from the laws where you live.  We have taken appropriate safeguards to require that your personal information will remain protected and require our third-party service providers and partners to have appropriate safeguards as well.  Further details can be provided upon request.

4. YOUR PRIVACY CHOICES AND RIGHTS

**General**

You have certain choices about your personal information. Where you have consented to the processing of your personal information, you may withdraw that consent at any time and prevent further processing by contacting us as described below.  Even if you opt out, we may still collect and use non- personal information regarding your activities on our Services and for other legal purposes as described above.

**Email and Telephone Communications**

If you receive an unwanted email from us, you can use the unsubscribe link found at the bottom of the email to opt out of receiving future emails.  Note that you will continue to receive transaction-related emails regarding products or Services you have requested.  We may also send you certain non-promotional communications regarding us and our Services, and you will not be able to opt out of those communications (e.g., communications regarding the Services or updates to our Terms or this Privacy Policy).

We process requests to be placed on do-not-mail, do-not-phone and do-not-contact lists as required by applicable law.

**Mobile Devices**

We may send you push notifications through our mobile application.  You may at any time opt- out from receiving these types of communications by changing the settings on your mobile device.  We may also collect location-based information if you use our mobile applications.  You may opt-out of this collection by changing the settings on your mobile device.

**"Do Not Track."**

Do Not Track ("DNT") is a privacy preference that users can set in certain web browsers. Please note that we do not respond to or honor DNT signals or similar mechanisms transmitted by web browsers.

**Cookies and Interest-Based Advertising**

You may stop or restrict the placement of Technologies on your device or remove them by adjusting your preferences as your browser or device permits.  The online advertising industry also provides websites from which you may opt out of receiving targeted ads from data partners and other advertising partners that participate in self-regulatory programs. You can access these and learn more about targeted advertising and consumer choice and privacy,

at http://www.networkadvertising.org/managing/opt_out.asp, http://www.youronlinechoices.eu/, and http://www.aboutads.info/choices/.  To separately make choices for mobile apps on a mobile device, you can download DAA's AppChoices application from your device's app store.  Alternatively, for some devices you may use your device's platform controls in your settings to exercise choice.

Please note you must separately opt out in each browser and on each device. Advertisements on third party websites that contain the AdChoices link may have been directed to you based on information collected by advertising partners over time and across websites.  These advertisements provide a mechanism to opt out of the advertising partners' use of this information for interest-based advertising purposes.

### Your Privacy Rights

In accordance with applicable law, you may have the right to:

- **Access personal information** about you consistent with legal requirements including: (i) confirming whether we are processing your personal information; (ii) obtaining access to or a copy of your personal information in a structured, commonly used, and machine readable format; and (iii) receiving an electronic copy of personal information that you have provided to us, or asking us to send that information to another company in a structured, commonly used, and machine readable format (the "right of data portability").

- **Request correction** of your personal information where it is inaccurate or incomplete. In some cases, we may provide self-service tools that enable you to update your personal information or we may refer you to the controller of your personal information who is able to make the correction.

- **Request deletion** of your personal information, subject to certain exceptions prescribed by law.

- **Request restriction of or object to** processing of your personal information, including the right to opt in or opt out of the sale of your personal information to third parties, if applicable, where such requests are permitted by law.

- **Withdraw your consent** to our processing of your personal information.

If you would like to exercise any of these rights, please log into your account or contact us as set forth below.  We will process such requests in accordance with applicable laws. To protect your privacy, we will take steps to verify your identity before fulfilling your request.

### 5. DATA RETENTION

We store the personal information we receive as described in this Privacy Policy for as long as you use our Services or as necessary to fulfill the purpose(s) for which it was collected,

provide our Services, resolve disputes, establish legal defenses, conduct audits, pursue legitimate business purposes, enforce our agreements, and comply with applicable laws.

## 6. SECURITY OF YOUR INFORMATION

We take steps to ensure that your information is treated securely and in accordance with this Privacy Policy.  Unfortunately, no system is 100% secure, and we cannot ensure or warrant the security of any information you provide to us.  To the fullest extent permitted by applicable law, we do not accept liability for unintentional disclosure.

By using the Services or providing personal information to us, you agree that we may communicate with you electronically regarding security, privacy, and administrative issues relating to your use of the Services.  If we learn of a security system's breach, we may attempt to notify you electronically by posting a notice on the Services, by mail or by sending an e-mail to you.

## 7. INTERNATIONAL DATA TRANSFERS

All information processed by us may be transferred, processed, and stored anywhere in the world, which may have data protection laws that are different from the laws where you live. We endeavor to safeguard your information consistent with the requirements of applicable laws.

If we transfer personal information to countries outside the European Economic Area, we will put in place appropriate safeguards to ensure that this transfer complies with the applicable laws and regulations. For more information about these safeguards, please contact us as set forth below.

## 8.  CHILDREN'S INFORMATION

The Services are not directed to children under 18 (or other age as required by local law), and we do not knowingly collect personal information from children.  If you learn that your child has provided us with personal information without your consent, you may contact us as set forth below.  If we learn that we have collected any personal information in violation of applicable law, we will promptly take steps to delete such information and terminate the child's account.

## 9. SUPERVISORY AUTHORITY

If you are located in the European Economic Area or the UK, Switzerland or Brazil you have the right to lodge a complaint with a supervisory authority if you believe our processing of

the right to lodge a complaint with a supervisory authority if you believe our processing of your personal information violates applicable law.

## 10. CHANGES TO OUR PRIVACY POLICY

We may revise this Privacy Policy from time to time in our sole discretion.  If there are any material changes to this Privacy Policy, we will notify you as required by applicable law.  You understand and agree that you will be deemed to have accepted the updated Privacy Policy if you continue to use the Services after the new Privacy Policy takes effect.

## 11. CONTACT US

If you have any questions about our privacy practices or this Privacy Policy, or if you wish to submit a request to exercise your rights as detailed in this Privacy Policy, please contact us at:

FTX Trading Ltd.

Lower Factory Road; Box 990
St. John's, Antigua

 privacy@ftx.com

| ← Previous | Next → |
|---|---|
| Jurisdiction, regulations, licensing, and practices | FTX Terms of Service |

**ARTICLES IN THIS SECTION**

How To Contact Us

Copyright Information

Security Policy

Location Restrictions

Jurisdiction, regulations, licensing, and practices

**Privacy Policy**

FTX Terms of Service

FTX Australia Legal

Notice for UK Customers



**RELATED ARTICLES**

FTX Terms of Service

Security Policy

Contact Us

Fees

How To Contact Us

**PROMOTED ARTICLES**

Introducing New Fee and Ratelimit Tiers to the FTX VIP & Market Maker Program

Deposit to your FTX account to earn VIP status

VIP Program and Market Maker Policy

FTX partners with Paradigm for one-click futures spreads trading

## Didn't find what you were looking for?

Create a support ticket

## Community

   

## Was this article helpful?

| Yes | No |
|-----|-----|





1 out of 1 found this helpful



English (US) ⌄

FTX Services and FTX Token (FTT) are not available in the United States or other prohibited jurisdictions



# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>             Debtors. | : : : : : : : : : : : : : : : | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date:  January 11, 2023, at 9:00 a.m.**<br><br>**Objection Deadline:  December 9, 2022 (extended for the U.S. Trustee to December 14, 2022 at 12:00 p.m.)**<br><br>**Re:  D.I. 45, 200** |

**SUPPLEMENT TO UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO MAINTAIN A CONSOLIDATED LIST OF CREDITORS IN LIEU OF SUBMITTING A SEPARATE MATRIX FOR EACH DEBTOR, (II) AUTHORIZING THE DEBTORS TO REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS AND PERSONAL INFORMATION OF INDIVIDUALS AND (III) GRANTING CERTAIN RELATED RELIEF**

       Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S. Trustee"), through his undersigned counsel, files this Supplement to the *United States Trustee's Objection to the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* (the "Objection") [D.I. 200], and respectfully states:

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

## I.    PRELIMINARY STATEMENT

1.        On November 19, 2022, the Debtors filed the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors to Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* (the "Motion") [D.I. 45].  Through the Motion, the Debtors sought permission to redact: (a) the names, addresses and email addresses of all customers (who are also creditors of the Debtors), whether such customers are individuals, or legal entities, (b) the names, addresses and email addresses of all non-customer individual creditors or equity holders who are citizens of the United Kingdom ("UK") or member nations of the European Union ("EU"), and are covered by the EU or UK General Data Protection Regulation, and (c) the addresses and email addresses of all other creditors or equity holders who are individuals, regardless of citizenship.  Mot. ¶ 12; Mot. Ex. B (Proposed Final Order) ¶¶ 4, 5. The Motion stated that the documents that would be subject to such redactions include (but are not limited to) the Debtors' Creditor Matrix,[2] Consolidated Top 50 Creditor List, Schedules and Statements, the claims register, proof of claims and affidavits of service.

2.        On December 12, 2022, the U.S. Trustee filed the Objection to the Motion.  At the time of that filing, the Debtors had not yet filed any applications to retain professionals. Subsequent to the filing of the U.S. Trustee's Objection, the Debtors filed numerous retention applications,[3] all of which included redactions of certain names on the parties in interest list

---

[2]    Any capitalized terms not defined herein shall have the definition set forth in the Motion.

[3]    References herein to retention applications include motions filed by the Debtors under 105(a) and 363 (b) of the Bankruptcy Code to retain Owl Hill Advisory, LLC [D.I. 269] and RLKS Executive Solutions LLC [D.I. 276].

attached to the applications, and some of which also included redactions elsewhere in the application of the names of parties in interest with whom the professional had a connection or was otherwise making a disclosure.[4]  Counsel to the Debtors informed counsel to the U.S. Trustee that the information redacted in the retention applications was limited to (i) names of customers of the Debtors and (ii) names of non-customer individual creditors or equity holders of the Debtors whom the Debtors believe are or may be citizens of the UK or EU member nations, and are therefore subject to the relief sought in the Motion.

3.       The U.S. Trustee supplements its Objection to address the redactions made in the retention applications.

## II.       JURISDICTION, VENUE AND STANDING

4.       Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this supplement to the Objection.

5.       Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

---

[4]     The retention applications that included a redacted parties in interests list were filed at D.I. 269, 270, 272, 273, 275, 276, 277, 279, 280, and 300.  An unredacted version of the parties in interest list was filed under seal at D.I. 288.  Sealed versions of declarations supporting certain retention applications were filed at D.I. 271, 274, 278, 281, 285 and 298.

6.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this supplement to the Objection. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## III.   <u>SUPPLEMENT TO OBJECTION</u>

7.      For the reasons set forth in the U.S. Trustee's Objection, the Motion should be denied to the extent it seeks authority to redact from the public record, and keep under seal, (a) the names of any parties on the parties in interest list attached to any retention application, and the (b) the names of any parties in interest with whom a professional has a connection or otherwise makes a disclosure.

8.      This exact issue was addressed in *In re Celsius Network, LLC*, 644 B.R. 276 (Bankr. S.D.N.Y. 2022).  There, the court sustained the U.S. Trustee's objection to the redactions of the names of certain creditors in the retention applications, and directed "all professionals to submit unredacted versions of the Retention Application." *Id.* at 296.  In so doing, the court stated:

> The Debtors are seeking to redact the names of certain creditors listed on the schedules of the Debtors' Retention Applications. As this Court has previously stated, "documents which are part of the court record should not remain under seal absent the most compelling reasons." Disclosure of names in retention applications serves an essential purpose in evaluating conflicts. "[P]ublic access allows other parties and the public to identify any person or entity with a substantial financial interest—whether passive or active—in the outcome ... and draw their own conclusions about any potentially disqualifying conflicts—a purpose that cannot be served if redacted statements are filed.") The information Debtors seek to seal simply does not fall within the exceptions allowed under the Bankruptcy Code.

*Id.* at 296 (citing *In re Motors Liquidation Co.*, 561 B.R. 36, 38 and 41 (Bankr. S.D.N.Y. 2016); noting *Motors Liquidation*'s citation of *In re FiberMark, Inc.*, 330 B.R. 480, 503–04 (Bankr. D. Vt. 2005)).

4

9.      The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, further supplement, or complement, augment, alter and/or modify the Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

### IV.      CONCLUSION

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the final relief requested by the Motion, as it concerns redaction of information, except to allow the redaction from public filings of the addresses and email addresses – but not names – of individuals who are customers or other creditors of the Debtors, and grant any such other and further relief that the Court deems just and proper.

Respectfully Submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

Dated: January 4, 2023

By: */s/ Juliet Sarkessian*
Juliet Sarkessian
Benjamin Hackman
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
juliet.m.sarkessian@usdoj.gov
benjamin.a.hackman@usdoj.gov

-and-

David Gerardi
Trial Attorney
One Newark Center
1085 Raymond Boulevard
Suite 2100
Newark, NJ  07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
david.gerardi@usdoj.gov

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : <br> : <br> : <br> : <br> : | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | : <br> : <br> : | Case No. 22-11068 (JTD) <br> (Jointly Administered) |
| Debtors. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Re:  D.I. 45 & 200 |

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin Hackman, certify that on January 4, 2023, I served a copy of the *Supplement to United States Trustee's Objection to the Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors To Maintain a Consolidated List of Creditors in Lieu of Submitting a Separate Matrix for Each Debtor, (II) Authorizing the Debtors To Redact or Withhold Certain Confidential Information of Customers and Personal Information of Individuals and (III) Granting Certain Related Relief* in the above-entitled action through the CM/ECF notification system, with courtesy copies upon the following via e-mail:

Landis Rath & Cobb LLP
Adam G. Landis
Kimberly A. Brown
Matthew R. Pierce
919 Market Street, Suite 1800
Wilmington, Delaware 19801
E-mail: landis@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

Sullivan & Cromwell LLP
Andrew G. Dietderich
James L. Bromley
Brian D. Glueckstein
Alexa J. Kranzley
125 Broad Street
New York, NY 10004
E-mail: dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Paul Hastings LLP
Kristopher M. Hansen, Esq.
Luc A. Despins, Esq.
Kenneth Pasquale, Esq.
Erez E. Gilad, Esq.
Gabriel E. Sasson, Esq.
200 Park Avenue
New York, NY 10166
Email: krishansen@paulhastings.com
lucdespins@paulhastings.com
kenpasquale@paulhastings.com
erezgilad@paulhastings.com
gabesasson@paulhastings.com

Young Conaway Stargatt & Taylor, LLP
Matthew B. Lunn, Esq.
Robert F. Poppiti, Jr., Esq.
1000 North King Street
Wilmington, DE 19801
Email: mlunn@ycst.com
rpoppiti@ycst.com

Dated: January 4, 2023
        Wilmington, Delaware

By: */s/ Benjamin Hackman*
Juliet Sarkessian
Benjamin Hackman
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
juliet.m.sarkessian@usdoj.gov
benjamin.a.hackman@usdoj.gov

-and-

David Gerardi
Trial Attorney
One Newark Center
1085 Raymond Boulevard
Suite 2100
Newark, NJ  07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
david.gerardi@usdoj.gov