**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
FTX TRADING LTD., *et al.*,[1]                               :   Case No. 22-11068 (JTD)
                                                             :
        Debtors.                                   :   (Jointly Administered)
                                                             :
                                                             :   **Objection Deadline: Oct. 12, 2023 at 4:00 p m. EST**
                                                             :   **Hearing Date: Oct. 19, 2023 at 10:00 a m. EST**
                                                             :
                                                             :
------------------------------------------------------------ x

**MOTION OF THE JOINT LIQUIDATORS OF
THREE ARROWS CAPITAL, LTD. FOR ENTRY OF AN ORDER
(I) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)
AND BANKRUPTCY RULE 4001 AND (II) GRANTING RELATED RELIEF**

Russell Crumpler and Christopher Farmer, in their capacities as joint liquidators appointed by the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division) (the "**BVI Court**") in the liquidation proceeding of Three Arrows Capital, Ltd. (the "**3AC Debtor**") in the British Virgin Islands (the "**BVI Proceeding**") and duly authorized foreign representatives (the "**Joint Liquidators**"), by and through the undersigned counsel, hereby submit this motion (the "**Motion**") pursuant to section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order substantially in the form of the order attached hereto as **Exhibit A** (the "**Order**"): (i) granting relief from the automatic stay to permit the commencement and adjudication of the causes of action set forth in the proofs of claim filed with this Court by the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases ra.kroll.com/FTX.

US-DOCS\145144803.10

3AC Debtor (the "**3AC POCs**", and the claims set forth therein, the "**3AC Claims**") before the BVI Court or, in the alternative, before the U.S. Bankruptcy Court for the Southern District of New York in an adversary proceeding related to the 3AC Debtor's pending Chapter 15 case before Chief Judge Martin Glenn (the "**Chapter 15 Court**") and (ii) granting related relief.  In support of this Motion, the Joint Liquidators rely upon (a) the *Declaration of Grant Carroll in Support of Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief* (cited herein as "**Carroll Decl. ___**").  The Joint Liquidators respectfully submit as follows:

## PRELIMINARY STATEMENT

1.  By June 1, 2022, the FTX Trading Ltd. and its debtor affiliates (collectively, "**FTX**" or the "**FTX Debtors**") had purported to foreclose on assets of the 3AC Debtor which FTX assets were collateral securing a $120 million loan with the 3AC Debtor.  Through the 3AC POCs, the 3AC Debtor has asserted claims of preference, conversion, and other potential avoidance actions arising from transfers of 3AC assets to the FTX Debtors while it was insolvent.  The 3AC Debtor has asserted similar claims against other parties, including the Genesis Debtors and the BlockFi Debtors (each as defined below).  Each of these claims present common questions of law and fact that are central to the 3AC liquidation.  Foremost among those is the question: *when* did the 3AC Debtor become insolvent?  In addition to solvency, there are other common issues—such as the meaning of "ordinary course" under BVI law and the applicability of the Bankruptcy Code's safe harbors—that will likely be disputed across each of these claims.

2.  Considering the common issues of law and fact that run through each of the claims, the 3AC Debtor has a compelling interest in having such claims, and especially the core issues for such claims such as solvency, decided in a coordinated fashion in a centralized forum.  Absent a

coordinated, centralized process for litigating 3AC's claims, adjudication of similar claims before as many as four bankruptcy courts in parallel would be contrary to common sense notions of judicial economy and an inefficient strain on the 3AC estate's resources. Likewise, multi-front litigation may result in inconsistent outcomes with respect to common questions of law and fact. The risk of inconsistent outcomes presents the potential for severe prejudice to the 3AC Debtor. Concurrently with this Motion, and in light of the foregoing, the 3AC Debtor will be filing a separate motion with this Court requesting consultation among and between this Court and other relevant courts to schedule a joint judicial conference to discuss procedures to adjudicate the common issues of fact and law raised by the 3AC Claims (as defined herein) in a centralized forum.

3. At a minimum, limited relief should be granted to allow the BVI Court (or, in the alternative, the Chapter 15 Court) to determine the common questions of fact and law, including the date upon which the 3AC Debtor became insolvent and the applicability of the "ordinary course of business" defense. For this and other reasons, as discussed below, significant good cause exists to grant relief from the automatic stay in this matter.

## JURISDICTION

4. This Court has jurisdiction over the FTX Debtors' chapter 11 cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Joint Liquidators consent to this Court's entry of a final order on the Motion. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein include section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware.

6. Pursuant to Local Rule 9013-1(f), the 3AC Debtor consents to the entry of a final order by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I.     3AC and the BVI Proceeding**

7. The 3AC Debtor was an investment firm that was founded in 2013 and incorporated in the British Virgin Islands. The 3AC Debtor engaged in the trading of cryptocurrency and other digital assets. The 3AC Debtor's investment strategy involved making large, leveraged cryptocurrency trades using funding from the FTX Debtors and other investors.

8. Between 2018 and 2021, as the cryptocurrency market grew, the 3AC Debtor's strategy was successful. Beginning in early 2022, however, the global cryptocurrency market experienced a historic and significant decline. As a result of this crisis, the 3AC Debtor failed—ultimately loosing approximately $2.7 billion in value between February and May 2022.

9. On June 27, 2022, the 3AC Debtor commenced the BVI Proceeding before the BVI Court, which is governed by BVI's Insolvency Act of 2003 (the "**BVI Insolvency Act**"). The BVI Court appointed the Joint Liquidators as the 3AC Debtor's joint liquidators in the BVI Proceeding. Under BVI law, the Joint Liquidators are fiduciaries of the 3AC estate, with an obligation to conduct an orderly, fair liquidation of the 3AC Debtor and to maximize the value of its assets for the 3AC Debtor's creditors. And as liquidators, the Joint Liquidators are "office holders" as defined in section 244 of the BVI Insolvency Act, who are authorized to seek relief from a court setting aside voidable transactions.

10. On July 1, 2022, the Joint Liquidators commenced a proceeding under chapter 15 of the Bankruptcy Code (the "**Chapter 15 Case**") before Chief Judge Martin Glenn of the Chapter

15 Court. On July 28, 2023 the Chapter 15 Court entered an order recognizing the BVI Proceeding as a "foreign main proceeding" in the Chapter 15 Proceeding.

## II. The 3AC Debtor's Claims Against the FTX Debtors

11. On June 30, 2023, the 3AC Debtor timely filed proofs of claim (collectively, the "**FTX POCs**") against each of the FTX Debtors asserting claims under BVI, New York, Delaware, and other applicable law, including without limitation preference claims under section 245 of the BVI Insolvency Act, arising from the purported pledge and foreclosure on the 3AC Debtor's assets in an effort to collect on loans extended from the FTX Debtors to the 3AC Debtor.[2] As of the date hereof, the FTX Debtors have not objected to the FTX POCs.

## III. The 3AC Debtor's Analogous Claims Against Other Debtor and Non-Debtor Parties in Other Proceedings

12. The 3AC Debtor has filed proofs of claim asserting claims that are analogous to the 3AC Debtor's claims against the FTX Debtors in three other chapter 11 proceedings and have asserted claims implicating common questions of law and fact against certain non-debtor parties.

### A. Genesis Claims

13. On January 19, 2023, Genesis Global Holdco, LLC and certain of its debtor affiliates (the "**Genesis Debtors**") commenced cases (the "**Genesis Cases**") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Genesis Court**"). On August 18, 2023, the 3AC Debtor filed proofs of claims (the "**Genesis POCs**") in the Genesis Cases.[3] The Genesis POCs assert claims to (i) avoid, pursuant to BVI law,

---

[2] Claim Nos. 5120, 5121, 5125, 5145, 5147, 5148, 5151, 5152, 5154, 5155, 5156, 5158, 5159, 5160, 5167, 5168, 5169, 5170, 5171, 5172, 5173, 5175, 5176, 5177, 5178, 5179, 5180, 5181, 5182, 5183, 5184, 5185, 5186, 5187, 5188, 5189, 5190, 5191, 5192, 5194, 5195, 5196, 5197, 5198, 5199, 5200, 5201, 5203, 5204, 5238, 5239, 5253, 5262, 5269, 5306, 5308, 5319, 5323, 5324, 5327, 5331, 5333, 5336, 5339, 5345, 5348, 5351, 5355, 5360, 5362, 5368, 5373, 5419, 5444, 5445, 5446, 5448, 5449, 5450, 5451, 5452, 5454, 5455, 5456, 5457, 5459, 5460, 5461, 5462, 5464, 5466, 5470, 5473, 5474, 5476, 5477, 5478, 5580, 5581.

[3] *In re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. D. Del.), Claim Nos. 981, 982, 990.

5

preferential transfers to the Genesis Debtors by the 3AC Debtor while it was insolvent in the aggregate amount of approximately $563.2 million, and (ii) recover approximately $614 million of assets that the Genesis Debtors purported to foreclose upon in the absence of a valid and enforceable security interest pursuant to New York law, BVI law, and section 542 the Bankruptcy Code.

14. On September 1, 2023, the Genesis Debtors filed an objection to the Genesis POCs (the "**Genesis Claim Objection**").[4] In the claims objection, the Genesis Debtors allege (among other things) that the 3AC Debtor has not met its burden to show that it was insolvent at the time of the relevant transactions, that the transaction occurred in the ordinary course of business, and the transactions are subject to the Bankruptcy Code's safe-harbors. On September 12, 2023, the Genesis Court entered a scheduling order with respect to the claims objection setting a deadline of November 6, 2023 for completion of fact discovery and scheduling a further status conference on October 25, 2023 to discuss the status of fact discovery and procedures for expert discovery, pretrial briefing, and an evidentiary hearing.

15. On September 6, 2023, the 3AC Debtor filed a motion for relief from the automatic stay (the "**Genesis Lift Stay Motion**") seeking entry of an order granting relief to permit the commencement and adjudication of the 3AC Debtor's claims against the Genesis Debtors before the BVI Court or, in the alternative, before the Chapter 15 Court.[5] The Genesis Lift Stay Motion was adjourned to October 24, 2023 following a status conference on September 25, 2023.

---

[4] *Debtors' Second Omnibus Objection (Substantive) To Claim Nos. 523, 526, 527, 981, 982 and 990 pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 (No Liability)* [Dkt. No. 658].

[5] *Motion of the Foreign Representatives of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief*, Case No. 22-10063 (SHL) (Bankr. S.D.N.Y. Sept. 6, 2023), Dkt. No. 678.

B.    **BlockFi Claims**

16.    On November 28, 2022, BlockFi Inc. and certain of its debtor affiliates (the "**BlockFi Debtors**") commenced cases (the "**BlockFi Cases**") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "**BlockFi Court**"). On March 31, 2023, the 3AC Debtor filed proofs of claims (as amended, the "**BlockFi POCs**") in the BlockFi Cases.[6]  The BlockFi Debtors filed a motion seeking to estimate the 3AC Debtor's claims at $0 on August 11, 2023 (the "**BlockFi Estimation Motion**")[7] and filed an objection to the BlockFi POCs on August 21, 2023 [Dkt. No. 1375] (the "**BlockFi Claims Objection**").[8]

17.    On September 13, 2023, the 3AC Debtor amended the BlockFi POCs and filed a response to the BlockFi Estimation Motion and the BlockFi Claims Objection.[9]  By the BlockFi POCs, the 3AC Debtor asserts claims (i) to avoid, pursuant to BVI law, preferential transfers to the BlockFi Debtors by the 3AC Debtor while it was insolvent in the amount of approximately $273 million and (ii) for repayment of loans made by the 3AC Debtor to the BlockFi Debtors.

18.    On September 13, 2023, the 3AC Debtor filed a motion for relief from the automatic stay (the "**BlockFi Lift Stay Motion**") seeking entry of an order granting relief to permit

---

[6]  *In re BlockFi Inc.*, Case No. 22-19361 (MBK) (Bankr. D. N.J.), Claim Nos. 15592, 25953, 25958, 25961, 25984, 25985, and 26292.

[7]  *Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code*, Case No. 22-19361 (MBK) (Bankr. D. N.J. Aug. 11, 2023), Dkt. No. 1346.

[8]  *Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd.*, Case No. 22-19361 (MBK) (Bankr. Aug. 21, 2023) (Bankr. D. N.J. Aug. 21, 2023), Dkt. No. 1375.

[9]  *The Joint Liquidators of Three Arrows Capital, Ltd. (In Liquidation)'s (A) Objection to Debtors' Motion to Estimate the Amount of the 3AC Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code (ECF No. 1346) and (B) Opposition to Debtors' Eighth Omnibus Objection to Claims of Three Arrows Capital, Ltd. (ECF No. 1375)*, Case No. 22-19361 (MBK) (Bankr. D.N.J. Sept. 13, 2023), Dkt. No. 1484.

7

the commencement and adjudication of the 3AC Debtor's claims against the BlockFi Debtors before the BVI Court or, in the alternative, before the Chapter 15 Court.[10]

19. A hearing on the BlockFi Lift Stay Motion and a status conference on the BlockFi Estimation Motion and BlockFi Claims Objection are scheduled for October 10, 2023.

C. ■■■■■■

20. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**RELIEF REQUESTED**

21. By this Motion, the 3AC Debtor seeks entry of an order substantially in the form of the Order (i) granting relief from the automatic stay to permit the commencement and adjudication of the 3AC Claims before the BVI Court or, in the alternative, before the Chapter 15 Court and (ii) granting related relief.

---

[10] *Motion of the Joint Liquidators of Three Arrows Capital, Ltd. for Entry of an Order (I) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) and Bankruptcy Rule 4001 and (II) Granting Related Relief*, Case No. 22-19361 (MBK) (Bankr. D.N.J. Sept. 13, 2023), Dkt. No. 1492.

22. The 3AC Debtor recognizes the "unique" challenges presented by a collision between competing interest of co-equal "insolvent bankruptcy estates." *In re Shared Technologies Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003); *see In re BI-Lo, LLC*, Case No. 09-02140 (HB), 2010 Bankr. LEXI 2462, at *15 (Bankr. D.S.C. Aug. 13, 2010) (recognizing "the competing and equal interests of the two pending bankruptcy cases"). The 3AC Debtor respectfully submits that it should, at least, be granted limited relief to litigate the common issues presented by the 3AC Claims—*e.g.*, solvency, ordinary course of business, and safe-harbor issues—against the various debtor-counterparties in a centralized forum.

## BASIS FOR RELIEF

23. Under the Bankruptcy Code, the filing of a bankruptcy petition automatically stays "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy]." 11 U.S.C. § 362(a)(1). The moving party bears the initial burden to establish a *prima facie* case that "cause" exists, which the party opposing relief must then rebut. *Matter of Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

24. "Cause" is not defined in the Bankruptcy Code; rather, courts have found that "[c]ause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). The automatic stay "is not meant to be absolute, and in appropriate instances relief may be granted." *Id.* The Third Circuit has instructed courts to use "wide latitude" in determining whether to grant relief from stay. *In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007). "The purpose of the automatic stay is to maintain the status quo that exists at the time of the debtor's bankruptcy filing." *In re APF Co.*, 274 B.R. 408, 417 (Bankr. D. Del. 2001).

25. Specifically, to establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips in its favor. *See id.* (citing *In re Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003)); *see also In re Aleris Int'l, Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011) (applying a hardship balancing test to assess the existence of "cause"). "The three prongs of the balance test are (1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt part by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted; and (3) whether it is probable that the creditor will prevail on the merits of its case against the debtor." *In re Aleris Int'l, Inc.*, 456 B.R. at 47-48.

26. Here, "cause" exists to lift the stay to allow the 3AC Debtor to litigate the 3AC Claims in the BVI Court or, in the alternative, in the Chapter 15 Court because the potential harm to the 3AC Debtor from multi-front litigation in as many as four different bankruptcy courts on common questions of fact and law outweighs the prejudice (if any) to the FTX Debtors or their estates.

    **A.    Neither the FTX Debtors Nor Their Estates Will Be Prejudiced by Lifting the Stay**

27. Neither the FTX Debtors nor their estates will be prejudiced by lifting the stay because litigation to liquidate the 3AC Claims will be necessary in one forum or another and the Chapter 15 Court or the BVI Court are best positioned to adjudicate the claims. The Chapter 15 Court is capable of reaching a final resolution of the 3AC Claims, has familiarity with the 3AC Debtor, and presents a forum capable of providing a centralized adjudication of the common issues of fact and law.

28. The BVI Court is likewise capable of reaching a final resolution of the 3AC Claims, familiar with the 3AC Debtor's business and the transactions at issue, and already poised to

determine the issue of the 3AC Debtor's solvency in connection with other claims pending in the BVI Proceeding. Additionally, while both this Court and the BVI Court (or the Chapter 15 Court) may be capable of providing a final resolution, the 3AC Debtor respectfully submits that the BVI Court is the more appropriate venue for adjudicating the dispute given the predominance of BVI law issues—the 3AC Claims include potential BVI law preference and turnover claims.

29.     In contrast, considering that the FTX Debtors have not objected to the 3AC Claims or otherwise commenced litigation with respect to such claims, they cannot contend that there are efficiencies to be gained from proceeding before this Court. *See In re Scarborough St. James Corp.*, 535 B.R. 60 (Bankr. D. Del. 2015) (finding that the debtor would "not suffer great prejudice" by lifting the stay to allow litigation pending in Michigan state court to proceed where the state court was in a position to make a determination, the state court "has familiarity with the parties and the facts of the case," and the debtor would be permitted to "raise in the Michigan Court any and all arguments in support of its position").

30.     Further, there will be no harm to the administration of these cases if the stay is lifted. As noted, the 3AC Claims will need to be liquidated in one forum or another such that the FTX Debtors will be incurring costs in litigation with the 3AC Debtor in any event. In addition, this is not a situation where liquidation of the 3AC Claims will impair the FTX Debtors' ability to propose and confirm a plan. *See Matter of Fernstorm Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (finding that fact that litigation will not impair the debtors' "ability to formulate a plan of reorganization" weighs in favor of granting relief). Indeed, a plan has not been confirmed and an exit from chapter 11 is not currently in sight, and consequently litigation of the 3AC Claims will not delay or unduly burden the FTX Debtors' restructuring efforts. *See Scarborough St. James,* 535 B.R. at 68-69 (finding that continuation of litigation in Michigan state court would not

affect the administration of the estate where the debtor was not close to confirming a plan or otherwise exiting chapter 11).

31. For these reasons, the FTX Debtors and their estates will suffer limited prejudice (if any) by lifting the stay to permit the 3AC Claims to be liquidated in the BVI Proceeding or, in the alternative, the Chapter 15 Case.

### B. The Harm to the 3AC Debtor If the Stay Remains in Place Significantly Outweighs Any Harm to the FTX Debtors From Lifting the Stay

32. The 3AC Debtor has a compelling interest in having claims against each of the debtor-counterparties and especially the core common issues of fact and law presented by such claims decided in a coordinated manner in a centralized forum. As the FTX Debtors have recognized, "questions that apply generally to all creditors" of a debtor against whom that debtor "assert[s] preference claims—for example, the meaning of ordinary course for the [debtor]— should be decided" in a centralized manner and applied to all creditors "in a consistent manner." *FTX Debtors' Objection to Genesis Debtors' Motion to Establish Procedures and a Schedule for Estimating the Amount of the FTX Debtors' Claims Against the Genesis Debtors Under Bankruptcy Code Sections 105(a) and 502(c) and Bankruptcy Rule 3018*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. June 8, 2023), Dkt. No. 404; *see also* Hr'g Tr., Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. June 15, 2023), at 15:22-16:8 (Mr. Dietderich: "This is a preference claim and its nature as a preference claim is what requires . . . the stay to be lifted to allow it to proceed"), 63:2-9 (Mr. Dietderich: "Judge Wiles [presiding over the Voyager cases] was very clear what his view was and Judge Wiles . . . is consistent with our review of every case we've ever seen. We

have never seen another bankruptcy judge resolve a preference out of another judge's bankruptcy case, ever").[11]

33.    In accordance with the 3AC Debtor's duty to maximize the value of its estate for the benefit of creditors, the 3AC Debtor is pursuing BVI law preference claims against multiple parties including the FTX Debtors, the Genesis Debtors and the BlockFi Debtors.  Under section 245 of the BVI Insolvency Act, a transaction is subject to avoidance as an "unfair preference" if the transaction: (i) "is an insolvency transaction;" (ii) is "entered into within the vulnerability period;"[12] and (iii) "has the effect of putting a creditor into a position which, in the event of the company going into insolvent liquidation, will be better than the position he or she would have been in if the transaction had not been entered into."  Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(1).  An "insolvency transaction" is a transaction "entered into at a time when [a] company is insolvent" or that "causes a company to become insolvent."  Insolvency Act 2003 (as amended), S.I. 47/2004, § 244(2).  BVI preference law provides for an affirmative defense with respect to transactions entered into in the ordinary course.  Insolvency Act 2003 (as amended), S.I. 47/2004, § 245(2).

34.    The preference claims present common questions of fact and law that are central to the 3AC liquidation.  *First*, the solvency of the 3AC Debtor presents a common question of fact and law across each of the preference claims against the debtor-defendants.  The solvency question is perhaps the single most important question in the 3AC liquidation, with the answer—down to

---

[11]    The June 15, 2023 transcript is attached hereto as **Exhibit B**.

[12]    The "vulnerability period" for a voidable transfer under section 245 is generally "the period commencing six months prior to the onset of insolvency and ending in the appointment of the administrator or, if the company is in liquidation, the liquidator."  Insolvency Act 2003 (as amended), S.I. 47/2004, § 244.

the precise day of insolvency—having repercussions for billions of dollars of claims of the 3AC Debtor's estate.

35.     *Second*, the 3AC Debtor reasonably expects that the meaning of ordinary course for the 3AC Debtor and the cryptocurrency lending industry to be a common issue in dispute across the preference claims.  Indeed, the Genesis Debtors have already asserted an ordinary course defense,[13] the BlockFi Debtors have suggested they will do the same,[14] and there is no reason to believe that the FTX Debtors will not follow suit in due course.

36.     *Third*, both the Genesis Debtors and the BlockFi Debtors have asserted potential defenses under the Bankruptcy Code's safe harbors.[15]  The FTX Debtors may likewise assert the safe harbors as a defense.  Application of the Bankruptcy Code's safe harbor provisions to cryptocurrency loan transactions presents novel, common questions of fact and law across the various 3AC preference claims.

37.     Absent a centralized forum for deciding theses common issues, adjudication before multiple courts may result in inconsistent outcomes with respect to the common questions.  The risk of inconsistent outcomes presents the potential for severe prejudice to the 3AC Debtor.  Any unfavorable outcome in any one court could be weaponized against the 3AC Debtor in other courts (via arguments for equitable estoppel) notwithstanding active litigation on the same issue elsewhere.  For example, with respect to the solvency issue, if one court were to rule that the 3AC Debtor was insolvent as of a certain date, each other debtor-defendant would then have the option of either (or potentially both) (i) asserting equitable estoppel with respect to that finding by the

---

[13]   *See* Genesis Claim Obj. ¶¶ 4, 48, 114-28.

[14]   *See* BlockFi Claim Obj. ¶ 30 (stating that BlockFi's potential defenses include "preference defenses under Section 547").

[15]   *See* Genesis Claim Obj. ¶¶ 133-139; BlockFi Claim Obj. ¶ 30.

first court or (ii) litigating the issue anew itself and attempting to shorten the vulnerability period by securing a finding that the 3AC Debtor was insolvent at a later date. This asymmetry would grant an undue litigation advantage to the 3AC Debtor's adversaries.

38. Likewise, litigation of common issues of fact and law against four Chapter 11 debtors in as many different venues would offend foundational notions of judicial economy and impose an undue burden on the limited resources of the 3AC estate. *See Rexene Products*, 141 B.R. at 577 ("[D]uplicative litigation is burdensome both to Movants and the courts involved. Judicial economy dictates a prompt resolution in a single forum and with the same judge"). Courts in this district and others have often consolidated litigation on shared issues to avoid prejudice to the debtor and in the interests of judicial economy. *See, e.g.*, *In re Am. Classic Voyages*, Co., 384 B.R. 62 (D. Del. 2008) (holding a consolidated trial regarding the common issue of whether some or all of the debtors were solvent on the dates of certain preferential transfers alleged in three adversary proceedings); *In re Enron Corp.*, 351 B.R. 305, 307 (Bankr. S.D.N.Y. 2006) (consolidating 32 separate avoidance actions for purposes of litigating insolvency-related issues); *In re Am. Classic Voyages Co.*, 367 B.R. 500, 502 (Bankr. D. Del. 2007), *aff'd sub nom.* (stating that the bankruptcy court issued an order directing that a consolidated trial would occur on common issue of solvency); *In re S. Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992) (stating that bankruptcy court had authority to consolidate several adversary proceedings for the adjudication of certain common issues of fact, including whether the debtor was insolvent throughout the 90 days preceding its bankruptcy.).

39. For these reasons, the harm to the 3AC Debtor from keeping the stay in place greatly outweighs the prejudice (if any) to the FTX Debtors and their estates from lifting the stay to allow litigation of 3AC's claims to proceed in a centralized forum.

### C. The 3AC Debtor Has A Probability of Success on the Merits

40. In considering the probability of success on the merits, courts in this district have found that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Am. Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, (D. Del. 1993); *see also Rexene Prods.*, 141 B.R. at 577 (stating that the required showing on the probability of success is "very slight"); *Fernstorm Storage & Van*, 938 F.2d at 737 (stating that because "suit is not frivolous" this factor weighs in favor of granting relief). All that is required is that the movant "make more than a 'vague initial showing' that he can establish a prima facie case." *In re 15375 Memorial Corp.*, 382 B.R. 652, 691 (Bankr. D. Del. 2008).

41. The *15375 Memorial* court found that a merits analysis is only appropriate in cases where "the movant has sought relief from the stay to pursue a specific remedy not available under the Bankruptcy Code, or because its security interest is not adequately protected." *Id.* The court further explained that in a case where "the claimant seeks only to liquidate its claims" to "require a merits analysis would defeat the objective of economizing judicial resources and would frustrate the effort to resolve relief from stay motions expeditiously." *See id.* Accordingly, because the 3AC Debtor seeks relief from the automatic stay only to liquidate its claim against the FTX Debtors, a merits analysis is irrelevant to the balancing of the equities.

42. Even if a merits analysis were warranted here, the 3AC Claims would plainly clear the "slight" probability of success threshold. The 3AC Debtor's timely filed proof of claim is presumed valid and establishes the *prima facie* validity of the claims set forth therein. *See, e.g., In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012) ("11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f) grant prima facie effect to the validity and amount of a properly filed claim"). As explained in the FTX POCs, the 3AC Debtor's investigation into potential claims

remains limited by 3AC's historically meager record-keeping and the Founders' failure to cooperate with the Joint Liquidators' efforts in contravention of their duties under applicable law and several court orders. The Joint Liquidators have been able to supplement 3AC's records through informal and formal third-party discovery, but still lack certain critical documents and information necessary to articulate the 3AC Claims with greater particularity. To that end, the 3AC Debtor's counsel requested documents relating to the loans extended by the FTX Debtors to the 3AC Debtor and what appears to be FTX's seizure of the 3AC assets in its possession in June 2022. As of the date hereof, the FTX Debtors' counsel has not responded to those requests. One of the 3AC Debtor's goals in filing this Motion is commencing a formal process to facilitate discovery with respect to the 3AC Debtor's claims.

43.     For each of these reasons, the 3AC Debtor submits that this factor is irrelevant here and to the extent relevant, weighs in favor of granting relief.

## CONCLUSION

44.     For the foregoing reasons, the balance of the equities demonstrates that cause exists for the automatic stay to be lifted or modified to permit the 3AC Debtor to liquidate the 3AC Claims before the BVI Court or, in the alternative, before the Chapter 15 Court. Additionally, because the factors also provide sufficient grounds to waive the requirements of Bankruptcy Rule 4001(a)(3), the 3AC Debtor respectfully requests that the order modifying the stay be made effective upon issuance so that the 3AC Debtor can proceed with its action without delay.

## NOTICE

45.     Notice of this Motion has been provided to (a) the Chambers of the Honorable John T. Dorsey, (b) the FTX Debtors, (c) the Committee, (d) the Office of the U.S. Trustee for the District of Delaware, and (e) all other parties entitled to notice pursuant to Bankruptcy Rule 2002.

The 3AC Debtor submits that such notice is sufficient, and no other or further notice need be provided.

## **NO PRIOR REQUEST**

46.     No prior request for the relief sought in this Motion has been made by the 3AC Debtor to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Joint Liquidators respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 29, 2023
      New York, New York

Respectfully submitted,

*/s/ John W. Weiss*

John W. Weiss (No. 4160)
Joseph C. Barsalona II (No. 6102)
**PASHMAN STEIN WALDER HAYDEN, P.C.**
1007 North Orange Street, 4th Floor #183
Wilmington, DE 19801
Telephone: (302) 592-6496
Facsimile: (732) 852-2482
Email:  jweiss@pashmanstein.com
       jbarsalona@pashmanstein.com

– and –

Christopher Harris
Adam J. Goldberg
Brett M. Neve
Nacif Taousse
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:  chris.harris@lw.com
       adam.goldberg@lw.com
       brett.neve@lw.com
       nacif.taousse@lw.com

– and –

Nima H. Mohebbi
Tiffany M. Ikeda
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  nima.mohebbi@lw.com
       tiffany.ikeda@lw.com

*Counsel to the Joint Liquidators*
*of Three Arrows Capital, Ltd. (in liquidation)*