**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>FTX TRADING, LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Re: D.I. 2463** |

**THE AD HOC COMMITTEE OF NON-US CUSTOMERS**
**OF FTX.COM'S STATEMENT IN RESPONSE TO THE DEBTORS'**
**PREFERENCE PRICING CALCULATIONS SET FORTH IN**
**THE PRESENTATION TO STAKEHOLDERS DATED SEPTEMBER 11, 2023**

The Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee"), currently comprised of approximately 50 members holding in excess of approximately $1 billion[2] in aggregate claims against the above-captioned Debtors, files this statement in response to the Debtors' initial preference pricing calculations, as set forth in the *Debtors' Presentation to Stakeholders Dated September 11, 2023* (the "Presentation") [D.I. 2463], and respectfully states as follows:

1.  On September 11th and 12th, the Ad Hoc Committee joined principals and professional representatives of the Debtors, the Official Committee of Unsecured Creditors (the "Official Committee"), and the purported class action group of FTX US and FTX.com customers represented by Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained at https://cases.ra.kroll.com/FTX.

[2] New members have joined the Ad Hoc Committee since the filing of the *Verified Second Supplemental Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP pursuant to Bankruptcy Rule 2019* filed on August 9, 2023 [D.I. 2144]. The Ad Hoc Committee will file a further supplemented verified statement pursuant to Bankruptcy Rule 2019 prior to the October 19, 2023 omnibus hearing.

Dar (the "Class Action Group" and with the Ad Hoc Committee, the Debtors, and the Official Committee, the "Plan Parties") for two days of in person plan negotiations in New York, New York.

2.  The negotiations yielded agreement on several key items and materially advanced the development of a potential consensual bankruptcy plan among the Plan Parties. The Ad Hoc Committee is optimistic regarding future negotiations and is actively working towards achieving the framework of a consensual plan in the near term. This collaborative effort underscores our commitment to a fair and efficient resolution process for the benefit of all stakeholders.

3.  While much progress has been made, several aspects of a potential bankruptcy plan remain open, including the Debtors' proposed policy to settle potential preference actions against FTX.com customers. The ultimate parameters for resolving potential customer preference actions are particularly significant to the Ad Hoc Committee, given our focus on ensuring that the misappropriation of FTX.com customer property is remedied, value is maximized for the benefit of all FTX.com customers, and that FTX.com customers' legal and commercial interests are respected in the chapter 11 process.

4.  After the Debtors' filing of the Presentation, the Ad Hoc Committee was contacted by dozens of FTX.com customers that voiced concern regarding the Debtors' approach to customer preference actions. Many of these customers urged the Ad Hoc Committee to take the position that the Debtors cannot pursue preference actions against FTX.com customers because any account assets withdrawn by the FTX.com customers were ***their property and not property of the Debtors***.

5.  As explained in the *Statement of the Ad Hoc Committee of Non-US Customers of FTX.com Regarding the Debtors' Draft Plan of Reorganization and Accompanying Term Sheet* [D.I. 2214], the Ad Hoc Committee stayed the litigation on determination of customer property in favor of negotiating a consensual plan of reorganization that would maximize recoveries for

FTX.com customers and eliminate the significant delays and costs associated with litigation of the customer property issue. Establishment of an appropriate policy on customer preference actions goes hand in hand with a favorable global settlement that the Ad Hoc Committee hopes to reach with the Plan Parties in the coming weeks.

6. While the broader customer preference policy requires further discussion among the Plan Parties, the Ad Hoc Committee feels compelled to address one aspect of the Debtors' preliminary customer preference pricing calculations that strikes us as patently unfair to FTX.com customers: the pricing of deposits as of the transaction time while pricing withdrawals at current market prices. *See* D.I. 2463-1 at 19 ("***[d]eposits are priced using transaction time pricing; withdrawals are priced used current pricing (8/31/2023 used for the analysis in this report)***.") (emphasis added).

7. The Debtors' reliance on transaction time pricing for deposits and current pricing for withdrawals means that FTX.com customers could be sued for recovery of transfers in dollar amounts substantially higher than the tokens or digitalized currency were valued at the time of withdrawal from FTX.com platforms. Indeed, even if the Debtors implement a broader customer preference policy that provides for settlement of preference exposure at a substantial discount, customers could be in the position of returning more to the Debtors' estates than they actually received.

8. We have identified no legal precedent supporting the Debtors' pricing calculations in the digital currency context. In fact, in one of the only known cases where the parties briefed the application of section 550(a) to cryptocurrencies, the court declined to rule on the issue. *See Hasfast Techs. LLC v. Lowe (In re Hashfast Techs. LLC)* Adv. Pro. No. 15-3011DM (Bankr. N.D. Cal. Feb. 22, 2016), *Order on Mot. for Partial Summ. J.* [D.I. 49] ("If and when the Liquidating Trustee prevails and avoids the subject transfer of bitcoin to defendant, the court will decide

whether, under 11 U.S.C. § 550(a), he may recover the bitcoin (property) transferred or their value, and if the latter, valued as of what date."). In that case, the court was tasked with determining whether the debtor fraudulently transferred its bitcoins, and if so, whether the transferee had to return the coins or their value to the estate. The coins had significantly appreciated in value since the transfer date. Ultimately, however, the case settled before the court could make any recovery determinations.[3]

9. Any preference pricing methodology adopted in this case should be consistent in the valuation of customer withdrawals and deposits as a matter of common sense and fairness as well as the purpose of section 550(a).[4] Accordingly, the Ad Hoc Committee strongly urges the Debtors to rely on transaction time pricing for both customer deposits and customer withdrawals for all preference analysis in these chapter 11 cases.

---

[3] *See also In re Colonial Realty Co.,* 226 B.R. 513, 525–26 (Bankr. D. Conn. 1998) (bankruptcy court rejected the trustee's argument that the bankruptcy estate should recover the appreciated value of transferred stock where the transferred stock had already been transferred to innocent third parties who purchased the stock in good faith for value and distinguished an earlier case, *Cooper v. Ashley Commc'ns NC, Inc. (In re Morris Commc'ns NC, Inc.)*, 75 B.R. 619 (Bankr.W.D.N.C.1987), where it was feasible to return the fraudulently transferred stock that had appreciated in value).

[4] Congress did not intend section 550(a) to be punitive in nature but rather restorative, placing the bankruptcy estate in the financial position it would have enjoyed had a transfer not occurred. *See In re Taylor*, 599 F.3d 880, 890 (9th Cir. 2010) ("A bankruptcy court ordinarily determines the value of the property to be the value at the time of the transfer, but has discretion on how to value the property so as to put the estate in its pretransfer position."); *In re Zohar III, Corp.*, 631 B.R. 133, 185–86 (Bankr. D. Del. 2021) ("When determining the scope of recovery under this provision, the goal is to restore a debtor and its estate to the position that it would have enjoyed if the transfer had not occurred."); *In re David Cutler Indus., Ltd.*, 502 B.R. 58, 78 (Bankr. E.D. Pa. 2013) ("The bankruptcy court has discretion in fashioning the remedy. In exercising that discretion, it should consider that § 550(a) is 'intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.'").

Dated: September 29, 2023
Wilmington, Delaware  /s/ Jonathan M. Weyand
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Eric D. Schwartz (No. 3134)
Matthew B. Harvey (No. 5186)
Jonathan M. Weyand (No. 6959)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
eschwartz@morrisnichols.com
mharvey@morrisnichols.com
jweyand@morrisnichols.com

**EVERSHEDS SUTHERLAND (US) LLP**
Erin E. Broderick
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com

David A. Wender
Nathaniel T. DeLoatch
999 Peachtree St NE
Atlanta, GA 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
davidwender@eversheds-sutherland.com
nathanieldeloatch@eversheds-sutherland.com

Peter A. Ivanick
Sarah E. Paul
Jennifer B. Kimble
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
peterivanick@eversheds-sutherland.com
sarahpaul@eversheds-sutherland.com
jenniferkimble@eversheds-sutherland.com

*Counsel for Ad Hoc Committee of Non-US Customers of FTX.com*

**CERTIFICATE OF SERVICE**

I, Jonathan Weyand, hereby certify that I am not less than 18 years of age, and that service of the foregoing was caused to be made on September 29, 2023, via CM/ECF upon those parties registered to receive such electronic notifications.

Date: September 29, 2023

*/s/ Jonathan M. Weyand*
Jonathan M. Weyand (No. 6959)