## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline Req.:  October 18, 2023 at 4:00 p.m. (ET)** |
| | **Hearing Date Requested:  October 19, 2023 at 10:00 a.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT RESOLVING CERTAIN DISPUTES WITH THE BLOCKFI DEBTORS, (B) APPROVING THE SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to enter into that certain Settlement Agreement with respect to certain venue and procedural matters, attached as Exhibit 1 to the Order (the "Settlement Agreement"),[2] between and among (i) the Debtors and (ii) BlockFi Inc. and its affiliated debtors and debtors-in-possession (collectively, the "BlockFi Debtors," and together with the Debtors, the "Parties")). In support of the Motion, the Debtors submit the *Declaration of John J. Ray III in Support of Debtors' Motion for Entry of an Order (A) Authorizing The Debtors to Enter into the Settlement*

---

[1]  The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

{1368.002-W0072879.}

*Agreement with the BlockFi Debtors, (B) Approving the Settlement Agreement, and (C) Granting Related Relief* filed contemporaneously herewith (the "Ray Declaration"), and respectfully state as follows:

### Preliminary Statement[3]

1.      The Settlement Agreement provides material benefits to the Debtors by resolving venue and jurisdictional disputes between the Debtors and the BlockFi Debtors without costly litigation, provides stay relief for the Debtors and a process to resolve all avoidance claims and defenses by and among the Parties, and preserves all of the Debtors' claims against the BlockFi Debtors to be used defensively in merits litigation on the BlockFi Debtors' claims against the Debtors centralized in this Court.

2.      The Settlement Agreement also includes the withdrawal with prejudice of the BlockFi Debtors' Estimation Motion concerning the FTX Claims and merits objection to the FTX Claims filed in the New Jersey Bankruptcy Court, and provides appropriate treatment of the claims of West Realm Shires Inc. ("WRS") against the BlockFi Debtors by granting WRS an allowed unsecured subordinated claim against each of BlockFi Inc., BlockFi Trading LLC and BlockFi Lending LLC in the amount of $275 million.  In exchange for the benefits to the Debtors, the Settlement Agreement provides that the Debtors will waive rights to any affirmative distribution from the BlockFi Debtors on account of the FTX Avoidance Claims (which are asserted as unliquidated claims asserted in the aggregate amount of $212 million and, if successful would result in a replacement claim against the Debtors under section 502(h) of the Bankruptcy Code), but will be entitled to assert such claims as defenses, counterclaims, and

---

[3]    Capitalized terms used in this Preliminary Statement but not defined shall have the meaning ascribed to them later in this Motion.

setoffs (including with respect to section 502(d) of the Bankruptcy Code as provided in the Settlement Agreement) to the much larger BlockFi Claims asserted against the Debtors.[4]

3.      The outcome of the venue and jurisdictional disputes if litigated in the New Jersey Bankruptcy Court is uncertain.  In addition, there are risks and uncertainties facing the Debtors if the Estimation Motion and the Claim Objection proceed with respect to the merits of the FTX Avoidance Claims instead of (or at least prior to) this Court deciding those issues, including with respect to certain issues core to the Debtors' chapter 11 cases, and as to whether the New Jersey Bankruptcy Court would grant stay relief to permit lien avoidance and related litigation to proceed before this Court.

4.      As a result, the Debtors concluded in their business judgment that resolving all venue, jurisdictional and procedural issues between the Parties now, while ensuring that the merits of the material disputes between the Debtors and the BlockFi Debtors are adjudicated before this Court in the future, is in the best interests of the Debtors and their estates and well within the range of reasonableness.  The Parties have also agreed in the Settlement Agreement to mediate their disputes in advance of commencing litigation in an attempt to protect the interests of the Parties' creditors and avoid unnecessary litigation expense.  Accordingly, the Settlement Agreement should be approved, as the New Jersey Bankruptcy Court has done.[5]

**Background**

5.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[6] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-

---

[4]    The BlockFi Debtors have asserted liquidated claims against the Debtors in excess of $1 billion.

[5]    The New Jersey Bankruptcy Court entered an order on October 3, 2023 approving the Settlement Agreement. *See Order Resolving Certain Disputes Between the FTX Debtors and the BlockFi Debtors* (*In re BlockFi Inc.,* et al., D.I. 1644)

[6]    November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6.        Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Jurisdiction

7.        The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

8.        By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to enter into the Settlement Agreement, (b) approving the Settlement Agreement, and (c) granting certain related relief.

## Facts Specific to the Relief Requested

9.        Prior to the Petition Date, certain of the Debtors and certain of the BlockFi Debtors had various business relationships with each other, including through significant lending relationships.  In addition, certain of the BlockFi Debtors maintained customer accounts on the FTX.com platform.

10.        On November 28, 2022 (the "BlockFi Petition Date"), the BlockFi Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the New Jersey Bankruptcy Court.

11.        On March 31, 2023, the Debtors timely filed Proofs of Claim[7] asserting claims against the BlockFi Debtors (the "FTX Claims"), which include (i) unsecured claims for $275 million for new money loans advanced by West Realm Shires Inc. ("WRS") pursuant to a revolving credit facility (the "FTX Facility Claims") and (ii) claims for avoidance pursuant to sections 547, 548 and 550 of the Bankruptcy Code of transfers made by certain Debtors to the BlockFi Debtors (the "FTX Avoidance Claims").[8]  The amounts of these claims are subject to ongoing review and analysis by the Debtors, but are currently expected to be as follows after credit for subsequent new value where appropriate: (i) preferential loan repayments by Alameda Research Ltd. ("Alameda"), as borrower, to BlockFi Lending LLC in the amount of

---

[7]    Proofs of Claim Nos. 14607, 14810, 14971, 15184, 15191, 15204, 15025, 15206, 15580, 15595, 15612, 15818, 25986, 26003, 26004, 26005, 26006, 26059, 26060, 26063, 26064, 26066, 26067, 26068, 26070, 26268, 26280, 26313, 26319, 26325, 26342, 26360, 26377, 26386, 26429, 26962 (collectively, the "FTX Proofs of Claim").

[8]    For purposes of the Settlement Agreement and this Motion, the "FTX Avoidance Claims" do not include any claims, causes of action, or defenses covered by the Robinhood Stipulation (as defined below), all of which are reserved for determination in accordance with the Robinhood Stipulation.

approximately $123 million, (ii) preferential withdrawals by the BlockFi Debtors from the FTX.com exchange in the aggregate amount of approximately $90 million, (iii) preferential pledges of collateral by Alameda to the BlockFi Debtors, and (iv) preferential and fraudulent pledges of collateral by Emergent Fidelity Technologies Ltd. and Alameda.

12.        On April 11, 2023, the Debtors, the BlockFi Debtors and Emergent Fidelity Technologies Ltd. entered into that certain *Stipulation Staying Litigation and Related Discovery*, approved by this Court on April 17, 2023 [D.I. 1297] (the "Robinhood Stipulation"), addressing certain disputes between the parties thereto with respect to the Robinhood Assets (as defined in the Robinhood Stipulation).

13.        On June 29, 2023, the BlockFi Debtors filed claims against the Debtors in the FTX Bankruptcy Proceeding (collectively, the "BlockFi Proofs of Claim," and the claims asserted therein, the "BlockFi Claims").

14.        On August 11, 2023, the BlockFi Debtors filed the *Debtors' Motion to Estimate the Amount of the FTX Claims Against the Debtors Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code*, (ECF No. 1347) (Bankr. D.N.J.)  (the "Estimation Motion"), which seeks to estimate the FTX Claims for plan distribution purposes .

15.        On August 21, 2023, the BlockFi Debtors filed the *Ninth Omnibus Objection to the FTX Claims*, (ECF No. 1376) (Bankr. D.N.J.) (the "Claim Objection") seeking disallowance of the FTX Claims.

16.        On September 13, 2023, the Debtors filed their *Preliminary Objection of the FTX Debtors to BlockFi Debtors' Motion to Estimate the Amount of the FTX Claims Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code*,  (ECF No. 1489) (Bankr. D.N.J.) (the "Estimation Objection") and their *Reservation of Rights of the FTX Debtors In*

*Connection With the BlockFi Debtors' Ninth Omnibus Objection to the FTX Claims*, (ECF No. 1485) (Bankr. D.N.J.).

17.     On September 25, 2023, the BlockFi Debtors filed a modified form of their *Third Amended Joint Chapter 11 Plan of BlockFi Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Additional Technical Modifications)* (Dkt. No. 1609 in the BlockFi Debtors' chapter 11 cases) consistent with and reflecting the terms of the Settlement Agreement (as amended, the "Plan"), and on September 26, 2023, the New Jersey Bankruptcy Court held a hearing with respect to confirmation of the Plan and confirmed the Plan on the record.

18.     Given the various disputes between the Debtors and the BlockFi Debtors, the Parties have engaged in good faith, arm's length discussions to resolve the venue and jurisdictional issues, and narrow other issues, and through those discussions, have agreed to enter into the Settlement Agreement.

19.     The terms of the Settlement Agreement generally provide, among other things, that:[9]

- the FTX Proofs of Claim shall be deemed withdrawn subject to the terms and conditions of the Settlement Agreement, (x) with respect to the FTX Avoidance Claims, solely for purposes of obtaining any affirmative distribution from the BlockFi Debtors or their estates; and (y) with respect to the FTX Facility Claims, subject to the BlockFi Debtors granting the WRS Allowed Claims (as defined in the Settlement Agreement) in the amount of $275 million, which shall be subordinated to recoveries on account of all Account Holder Claims, including Intercompany Claims (each as defined in the BlockFi Plan) inuring to the benefit of Account Holder Claims and otherwise subject to the terms and conditions of the Settlement Agreement with respect to such claims (with the Debtors waiving all other claims arising from or relating to the pre-petition transactions between the Debtors and the BlockFi Debtors executed on or about July 1, 2022);

---

[9]     Any summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

- promptly upon the later of (i) 30 days following entry of an order confirming the BlockFi Plan and (ii) the Settlement Effective Date (as defined in the Settlement Agreement), the Parties shall submit a joint stipulated order, in form and substance acceptable to the Parties and consistent with the Settlement Agreement, to the New Jersey Bankruptcy Court for the consensual lifting of the automatic stay in the BlockFi Bankruptcy Proceeding to allow the Debtors to, except as otherwise provided in the Settlement Agreement, (x) assert and file, and litigate to judgment the merits of the FTX Avoidance Claims and all aspects of the BlockFi Claims (collectively, the "Delaware Matters"), including, without limitation, all arguments, defenses, counterclaims, setoffs, or otherwise, including arising under section 502(d) of the Bankruptcy Code in connection with any such judgment obtained, with respect to the BlockFi Claims in the FTX Bankruptcy Proceeding (subject to the BlockFi Debtors' right to seek to withdraw the reference as set forth in the Settlement Agreement and the other terms and conditions of the Settlement Agreement); (y) assert, file, and litigate to judgment any avoidance actions or other defenses or counterclaims with respect to the BlockFi Claims; and (z) enforce and recover on such avoidance actions or defenses or counterclaims as contemplated by the Settlement Agreement (the "Stay Relief Stipulation").  All of the Debtors' and the BlockFi Debtors' rights under section 502(d) of the Bankruptcy Code are expressly reserved and preserved, except that the Debtors shall have no right to receive an affirmative distribution from the BlockFi Debtors pursuant to the BlockFi Plan on account of the FTX Avoidance Claims, and recovery of any judgment with respect to the FTX Avoidance Claims shall be by setoff, reduction, or netting;

- notwithstanding the withdrawal of the FTX Proofs of Claim, the Debtors shall be entitled to assert the FTX Claims, any failure to pay the FTX Avoidance Claims, and all related arguments and defenses as arguments, defenses, counterclaims, setoffs or otherwise with respect to the BlockFi Claims (with the BlockFi Debtors reserving their rights to dispute any such claims, arguments, counterclaims, defenses, setoffs or otherwise subject to the terms of the Settlement Agreement) and if any judgment is entered in connection with the FTX Avoidance Claims, recovery on such judgment shall be made by reducing either the amount of the BlockFi Claims or distributions by the Debtors with respect to the BlockFi Claims in such amount as may be agreed by the Parties or determined by order of the New Jersey Bankruptcy Court, and the Parties' rights are fully reserved with respect to the amount and nature of such reductions (if any) required to satisfy section 502(d) of the Bankruptcy Code.  No distributions shall be made by the Debtors to the BlockFi Debtors on account of the BlockFi Claims until section 502(d) of the Bankruptcy Code is satisfied in accordance with the terms and conditions of the Settlement Agreement;

- the Debtors and the BlockFi Debtors shall meet and confer in good faith regarding the process and schedule for litigation of the Delaware Matters, including any defenses or counterclaims thereto, and the Parties agree to participate in good faith in non-binding mediation with respect to all claims among the Parties;

- The Stay Relief Stipulation shall provide a schedule for non-binding mediation to begin within 90 days of execution of the Settlement Agreement (unless otherwise

agreed by the Parties) and will discuss in good faith the process and terms of non-binding mediation;

- the BlockFi Debtors shall withdraw the Estimation Motion and Claim Objection, each with prejudice; and

- the Debtors and the BlockFi Debtors agree that nothing in the Settlement Agreement is intended to modify, waive or otherwise affect any of the Parties' claims with respect to the matters addressed in the Robinhood Stipulation and reserve all rights with respect to such matters.

20.    On October 3, 2023,  the New Jersey Bankruptcy Court entered its

*Order Resolving Certain Disputes Between the FTX Debtors and the BlockFi Debtors* (BlockFi.

D.I. 1644), approving the Settlement Agreement.

### Basis for Relief

## I.    The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests

21.    The Settlement Agreement provides for resolution and/or a process to resolve all venue and jurisdictional, as well as certain other disputes between the Debtors and the BlockFi Debtors, while providing, among other things, the Debtors relief from the automatic stay in the BlockFi Debtors' cases and the ability to litigate the merits of preference and avoidance actions before this Court.  The Settlement Agreement also provides that the Parties shall mediate their remaining disputes in an attempt to avoid unnecessary litigation costs and return value to creditors.  Given the scope and complexity of the venue, jurisdictional, and other disputes resolved through the Settlement Agreement, the attendant risks and costs of litigating those matters—including issues core to the Debtors Chapter 11 Cases potentially in the New Jersey Bankruptcy Court, and the nature and size of the Parties' claims against each other, the Debtors have determined that in its totality entry into the Settlement Agreement is in the best interests of the Debtors and their estates.

22.       Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *See also In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968)).

23.       "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)). Taken

together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

24.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc*., 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. at 721.  The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent*., 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

25.     As described above, the Settlement Agreement provides material value to the Debtors' estates by ensuring that the merits of the FTX Avoidance Claims are adjudicated by this Court, thereby eliminating the risk of the New Jersey Bankruptcy Court rendering decisions before this Court with respect to matters that are core to the Debtors' chapter 11 cases or that could harm the Debtors' claims, arguments and defenses in other avoidance litigation, as well as any unfavorable outcome in any proceeding before the New Jersey Bankruptcy Court with respect to the FTX Avoidance Claims.  The Settlement Agreement also provides stay relief

to the Debtors to permit them to bring avoidance or other claims and defenses necessary to resolve the BlockFi Debtors' claims against the Debtors in this Court. The Settlement Agreement further resolves appropriate treatment of the FTX Facility Claims under the BlockFi Plan, and avoids costly and time-consuming litigation in connection with the Estimation Motion, Claim Objection and otherwise.

26.    Accordingly, and as further described below, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

27.    **The Probability of Success in Litigation**. The Debtors maintain that the FTX Avoidance Claims are meritorious and are prepared to litigate the merits of those claims in this Court, as necessary, following approval of the Settlement Agreement. However, the Debtors faced significant risks that the merits of those claims would be decided by the New Jersey Bankruptcy Court instead of (or at least prior to) this Court deciding those issues. Under the Settlement Agreement, the Debtors avoid litigating any merits of the FTX Claims or the BlockFi Claims in the New Jersey Bankruptcy Court, and the potential costs of litigating the same claims twice (once in the New Jersey Bankruptcy Court as part of an estimation proceeding and again, either in this Court or the New Jersey Bankruptcy Court, as part of a litigation for purposes of a judgment). In addition, as described above, the likelihood of a material net distribution from the BlockFi Debtors on account of any allowed FTX Avoidance Claims in light of the size and nature of the Parties' respective claims is uncertain, including in light of the substantial claims asserted against the Debtors by the BlockFi Debtors. Finally, the Debtors arguably need relief from the automatic stay from the New Jersey Bankruptcy Court to assert certain avoidance claims central to the defense of the BlockFi Claims and obtaining that relief is far from certain in the absence of the Settlement Agreement.

28.    **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay**.  Litigation of the Estimation Motion, Claim Objection and BlockFi Plan would be complex and expensive and involve a significant amount of time.  In addition, as noted above, without the settlement, the Debtors face the risk of litigating the merits of their claims in duplicative proceedings, potentially in two different fora.  Without the agreements embodied in the Settlement Agreement, the Debtors would be forced to expend time and resources litigating these issues in the New Jersey Bankruptcy Court and potentially this Court, while any net distribution to the Debtors from the BlockFi Debtors on account of such claims would remain uncertain.

29.    In addition, the complexity and attendant cost of litigation is not garden-variety for any preference or claims litigation.  Here, it is compounded by the unusual fact pattern that the Debtors and the BlockFi Debtors are both debtors in their own chapter 11 cases.  The law governing "dueling debtor" situations is under-developed and uncertain and the litigation costs of pursuing complex litigation in multiple fora would be even greater than in a typical bankruptcy litigation.  Not only would the Debtors incur costs of attorneys, financial consultants and expert witnesses, but the Debtors would also bear the cost of attorneys and advisors for the Committee who would have been closely involved in the litigation.  The BlockFi Debtors similarly would bear corresponding costs for their own advisors and those of their creditors' committee.  Both estates are fiduciaries and have an important interest in using resources efficiently for the benefit of their stakeholders.  The Settlement Agreement eliminates these costs and permits the Debtors to focus their resources on pursuing resolution of the merits of the Parties claims before a single court—this Court—as well as other sources of recovery for stakeholders.  Additionally, as discussed above, in the event the New Jersey Bankruptcy Court approved an estimation proceeding with respect to the FTX Claims, such an estimation process

would require litigation of certain issues that are core to the Debtors' chapter 11 cases and relevant to many, if not all, other preference claims that the Debtors may assert against other parties.

30.     In addition, recoveries to the Debtors from the BlockFi Debtors under the circumstances are highly uncertain: (i) the Debtors have no assurance that any allowed claim against the BlockFi Debtors would receive a significant recovery in the BlockFi Debtors' chapter 11 cases; (ii) because the FTX Claims are preference claims, any allowed claim against the BlockFi Debtors would give rise to a replacement claim pursuant to section 502(h) of the Bankruptcy Code that would offset the recovery on the preference claim; and (iii) the BlockFi Claims are asserted against the Debtors in significant amounts that, if allowed, would dilute or entirely eliminate any recovery obtained from the BlockFi Debtors by the Debtors.

31.     **The Paramount Interests of Creditors**.  The Settlement Agreement is in the best interests of the Debtors' estates and their creditors because, as discussed above, approval of the Settlement Agreement resolves complex disputes between the Parties that would have involved costly and time-consuming litigation with uncertain outcome and net recovery for the Debtors, while ensuring that the FTX Avoidance Claims and BlockFi Claims will be litigated in this Court and that the FTX Facility Claims will be provided fair and appropriate treatment under the BlockFi Plan.  As such, in the Debtors' business judgment, the value of entering into the Settlement Agreement far exceeds the net benefits that the Debtors and their estates would likely obtain from continuing on the alternative litigation path.

32.     Based on the foregoing, the Debtors submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders.  As a result, the Debtors respectfully submit

that the Settlement Agreement satisfies the *Martin* factors and request that the Court authorize the Debtors to enter into the Settlement Agreement.

## Waiver of Bankruptcy Rule 6004(h)

33.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

## Reservation of Rights

34.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## Notice

35.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel to the BlockFi Debtors; and (h) to the extent not listed

herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be provided.

## <u>Conclusion</u>

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A,</u> and

(b) grant such other and further relief as is just and proper.

Dated: October 4, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

<u>/s/ Matthew R. Pierce</u>
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      bellerb@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*