## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 2659** |

## DEBTORS' OBJECTION TO THE MOTION OF ISLAND AIR CAPITAL AND PAUL F. ARANHA FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, AND RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") respectfully submit this objection (this "Objection") to the *Motion of Island Air Capital and Paul F. Aranha for Relief from the Automatic Stay, to the Extent Applicable, and Related Relief* [D.I. 2659] (the "Motion" or "Mot.")[2] filed by Island Air Capital ("IAC") and its beneficial owner Paul F. Aranha ("Aranha" and collectively, with IAC the "Movants"). In support of this Objection, the Debtors rely on the contemporaneously filed *Declaration of Jacob M. Croke in Support of Debtors' Objection to the Motion of Island Air Capital and Paul F. Aranha for Relief from the Automatic Stay, to the Extent Applicable, and Related Relief* (the "Debtors' Declaration") and accompanying exhibits, and respectfully state as follows:

---

[1]  The last four digits of Alameda Research LLC's tax identification number is 4063. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in this Objection or in the Motion.

## PRELIMINARY STATEMENT

1.      This Motion is premature, unfounded and seeks relief to which the Movants are not entitled—neither in this procedural posture nor substantively.  The Movants ask this Court to (i) enter an order finding that two private planes—a Bombardier Global 500 (the "Global") and an Embraer Legacy (the "Legacy," and, together with the Global, the "Planes")—that were purchased *entirely with the Debtors' funds* are, in fact, *solely owned by the Movants*; (ii) in the alternative, grant the Movants relief from the automatic stay to use or sell the Planes as they see fit; and (iii) in the alternative, grant the Movants a lien on the Planes totaling several million dollars based solely on unsupported and facially implausible statements.  The Court should reject these requests.

2.      *First*, the Movants' request is barred by 21 U.S.C. 853(k), which provides that "no party claiming an interest in property subject to forfeiture [] may . . . commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section."  The Movants acknowledge that the U.S. Department of Justice (the "Government") seized the Global on February 8, 2023, and that the Government has asserted that both Planes are subject to forfeiture as proceeds of the criminal conduct charged in the indictments against Samuel Bankman-Fried ("Bankman-Fried") and other senior FTX Group[3]

---

[3]    The "FTX Group" is comprised of four silos.  These silos include:  (a) a group composed of Debtor West Realm Shires, Inc., Debtor West Realm Shires Services, Inc., and their Debtor and non-Debtor subsidiaries; (b) a group composed of Debtors Alameda Research Ltd., Alameda Research LLC and their Debtor subsidiaries; (c) a group composed of Debtors Clifton Bay Investments LLC, Clifton Bay Investments Ltd., Island Bay Ventures Inc. and FTX Ventures Ltd. ("FTX Ventures"); and (d) a group composed of Debtor FTX Trading Ltd. and its Debtor and non-Debtor subsidiaries.

executives.  (Mot. at ¶ 3).[4]  The Debtors are (and have long been) in communication with the Government regarding the Planes, and, in light of the Government's stated intention to forfeit the Planes and the implications of section 853(k), have refrained from taking any action in these Chapter 11 Cases to assert their interests in the Planes.[5]  In bringing the Motion, the Movants not only attempt to circumvent section 853(k) by asserting an interest in property that is subject to forfeiture, but also attempt to construe the Debtors' compliance with section 853(k) as evidence that the Debtors have no interest in the Planes.  Not so.

3.      *Second*, the Motion is procedurally improper and seeks relief that can be obtained only through an adversary proceeding.  Bankruptcy Rule 7001 provides that an adversary proceeding is required "to recover money or property," "to determine the validity, priority, or extent of a lien or other interest in property," "to obtain . . . equitable relief," and "to obtain a declaratory judgement."  Fed. R. Bankr. P. 7001(1), (2), (7), (9).  The Motion's requested relief clearly falls within the scope of Bankruptcy Rule 7001, in that the Movants are seeking a ruling that the Planes are not estate property (Mot. at ¶ 46) or a determination that the Movants have a valid lien on the Planes (Mot. at ¶ 58).  Because the Movants failed to commence an adversary proceeding to obtain the requested relief, as required pursuant to Bankruptcy Rule 7001, the Motion should be denied.  *See* Fed. R. Bankr. P. 7003.

4.      *Third*, even if the Movants' requests were not barred by section 853(k) or Bankruptcy Rule 7001, the Movants would not be entitled to the relief that they seek.  At its heart,

---

[4]    Indeed, on October 4, 2023, the Government filed a Forfeiture Bill of Particulars alleging that the Planes are subject to forfeiture as property traceable to the proceeds of Bankman-Fried's criminal offenses and as property involved in money laundering.  *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 314 (Oct. 4, 2023).

[5]    The Debtors understand that the Government will be filing its own objection to the Motion on October 11, 2023.

this Motion asks this Court to issue an order finding that, although the FTX Group and its employees selected the Planes, paid every penny of the approximately $27.4 million to acquire the Planes, and paid Aranha millions more to make extensive renovations to the Planes to fit their specific needs, the Planes are actually owned entirely by the Movants because Aranha purports to have reached an oral "handshake deal" with Bankman-Fried to treat these tens of millions of dollars in transfers as an undocumented, unsecured, zero-interest loan to Aranha. The only "support" that the Movants provide is a declaration from Aranha attaching a handful of documents that are silent as to the core issues. As set forth in more detail below, although the Court need not make a finding on these issues at this stage and on this Motion, the Debtors expect to establish at the appropriate time that the Movants' claims regarding the Planes are nonsensical, internally inconsistent and thoroughly contradicted by the evidence. To the extent that the Court is inclined to consider the Movants' requests, the Debtors believe that discovery and an evidentiary hearing are necessary, and respectfully request that the Court direct the parties to negotiate a scheduling order regarding those issues.

5.      *Fourth*, the Movants cannot satisfy their burden of proof to demonstrate that "cause" exists to lift the automatic stay. The Movants focus entirely on their purported hardships suffered and flatly ignore the hardship on the Debtors if the stay were lifted—a critical element to demonstrate cause. Moreover, there is no need for the Movants to incur any further hardship—the Movants could simply unburden themselves by turning the Legacy over to the Government.

6.      *Fifth*, contrary to their assertions, the Movants have failed to demonstrate the application of section 550 of the Bankruptcy Code or the Movants' entitlement to liens over

the Plans.  Accordingly, the Motion should be denied, and the Debtors will, at the appropriate time, seek to enforce their rights with respect to the Planes and their claims against Aranha and IAC.[6]

## BACKGROUND

### A.    The Debtors and Their Chapter 11 Cases

7.    On November 11, 2022 and on November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].   On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

8.    Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases (the "Chapter 11 Cases") is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

---

[6]    Movant Island Air Capital is an airplane holding company of Aranha's charter company, Trans Island Airways ("TIA").

### B.    The Purchase of the Planes

9.    Aranha and TIA provided services for Bankman-Fried and other FTX Group personnel beginning in late 2021.  Shortly thereafter, senior FTX employees expressed a desire for the FTX Group to acquire private planes, but noted concerns about the potential reaction if the FTX Group's ownership of those planes were publicly known.  FTX Group executives considered various options, including making a potential equity investment in TIA, but ultimately decided not to proceed with that investment.

10.    To obscure the FTX Group's acquisition of the Planes, the FTX Group executives settled on a different approach.  On February 1, 2022, at the FTX Group's direction, TIA entered into a letter of intent to purchase the Global for $15.9 million.  (Decl. Ex. A.)  On February 2, 2022, Debtor Alameda Research Ltd. ("Alameda") wired a $500,000 deposit directly to the Global's escrow agent, and, on March 3, 2022, a senior FTX Group executive caused another $15.4 million of Alameda funds to be transferred to the escrow agent to complete the purchase of the Global.  (*Id*., Exs. B, C.)  The Debtors thus paid the entire $15.9 million purchase price of the Global.

11.    On March 16, 2022, after the purchase of the Global already had been completed, FTX Ventures and Aranha executed a term sheet relating to a potential equity investment in TIA.  (*Id*., Ex. D.)  The term sheet explicitly stated that FTX Ventures was not obligated to proceed with an investment—in fact, the only binding part of the term sheet was a confidentiality provision barring TIA from disclosing "this proposal *and any related discussions and correspondence*" without prior written approval, consistent with the FTX Group executives' desire to conceal the FTX Group's ownership of private planes.

12.    In addition to the Global, FTX Group executives instructed Aranha to find a second plane for the FTX Group.  Aranha eventually identified the Legacy as a potential

acquisition, and, on August 16, 2022, Debtor Alameda transferred $11,545,000 directly to the Legacy's escrow agent, representing the entire purchase price of the Legacy. (*Id.*, Ex. E.) The Debtors thus paid a total of $27,445,000 to purchase the Planes—Aranha and TIA paid nothing.

13.     In addition to selecting the Planes and paying their entire purchase price, the FTX Group also instructed Aranha to make extensive renovations to the Planes to satisfy the whims of senior FTX Group executives. Between July and October 2022, Aranha invoiced the Debtors more than $4 million for purported upgrades to the Planes and other related expenses, including, among other things, nearly $1.3 million for Wifi upgrades, approximately $900,000 for interior renovations and "Aircraft Bed Systems," and $975 for "Board Game Purchases for SBF for Airplane." (*Id.*, Ex. F.) The Debtors paid each of these invoices in full.[7]

### C.     Post-Petition Events

14.     The Debtors' first communications with the Movants regarding the Planes was in May 2023, months after the Debtors had begun discussing the Planes with the Government.[8] The Debtors have repeatedly urged the Movants to agree to the most logical and cost-effective path forward, which is to cooperate with the Government to arrange for interlocutory sales of both Planes, as doing so would allow the parties to address at the appropriate time any disputes as to their respective entitlement to the sale proceeds, without the Movants incurring further maintenance and storage costs. As to the Global currently in the Government's possession, the Movants have professed a willingness to agree to a sale, yet have for months sought to impose on the Government and the Debtors a shifting series of conditions with respect to the sale process and

---

[7]    The Movants assert that, "as of the Petition Date, the Debtors owe TIA approximately $2.6 million for unpaid Flight Services" (Mot. at ¶ 14). The Debtors have requested copies of these purported invoices from the Movants, but to date the Movants have not provided them.

[8]    Contrary to the Movants' claims, the Debtors did not request that the Joint Provisional Liquidators speak with Aranha on the Debtors' behalf.

treatment of proceeds for any sale.  As to the Legacy, the Movants have flatly refused to commit to conducting a sale, instead using their current possession of the Legacy as leverage to try to force the Debtors to grant the Movants an unjustified windfall or to fund the Movants' business operations.

## ARGUMENT

### I.    THE REQUESTED RELIEF IS BARRED BY 21 U.S.C. 853(K)(2)

15.    The Motion is fatally flawed because it seeks relief that this Court cannot grant.  21 U.S.C. § 853(k)(2) provides that "no party claiming an interest in property subject to forfeiture [] may . . . commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section."  In enacting this provision, Congress "impose[d] an absolute bar on *all* suits claiming an interest in forfeitable property" save for claims pursued in ancillary forfeiture proceedings pursuant to 21 U.S.C. § 853(n).  *In re The American Basketball League, Inc.*, 317 B.R. 121, 129 (Bankr. N.D. Cal. 2004) (emphasis in original) (granting United States' motion for summary judgment in adversary action on partial ground that relief requested by Debtors' plan administrator was barred by § 853(k)); *see also In re Rothstein Rosenfeldt Adler, P.A.*, 2012 WL 4320479, at *5 (S.D. Fla. Aug. 30, 2012) (granting United States' cross-motion for summary judgment in adversary action because ancillary proceeding was exclusive forum for considering trustee's motion under § 853(k)).  Under the relation-back doctrine, "all right, title, and interest" in property subject to forfeiture vests in the United States "upon commission of the act[s] giving rise to [its] forfeiture."  21 U.S.C. § 853(c).

16.    The Movants run squarely into this statutory bar.  According to the Government's Superseding Indictment of Bankman-Fried (the "Indictment"), beginning as early as 2019, Bankman-Fried defrauded customers, investors and banks via the misappropriation of

billions of dollars of FTX Group assets, enabling "exorbitant spending unrelated to the operation of the FTX platform." (Indictment at ¶ 7.) The Indictment contains forfeiture allegations seeking "any and all property, real and personal, that constitutes or is derived from proceeds traceable" to the charged money-laundering, commodities fraud and wire fraud offenses, and the related Bill of Particulars specifically identifies the Planes as subject to forfeiture as property derived from the proceeds of the charged fraud offenses and property involved in money laundering.[9]

17.    The Movants acknowledge that the Government has asserted that the Planes are subject to forfeiture as proceeds of this criminal scheme and/or property involved in money laundering, and that the Government has obtained a seizure warrant and seized the Global. (Mot. at ¶ 32). The Motion, is, for all intents and purposes, an action against the United States. Courts have consistently held that a claim brought against a private party regarding property vested in the United States qualifies as an action against the United States:

> Although the foreclosure action was technically brought against Phillips, Jr. and not the United States, subsection (c) provides that title to the properties at issue had already vested in the United States at the time of the foreclosure sale. Because the Government held title to the properties at the time of the sale, the foreclosure action constituted "an action at law or equity against the United States" and was statutorily barred under § 853(k).

*United States* v. *Phillips*, 185 F. 3d 183, 188 (4th Cir. 1999). *See also In re Rothstein Rosenfeldt Adler, P.A.*, 2012 WL 4320479, at *6 (S.D. Fla. Aug. 30, 2012) (barring claim against private party under 853(k) as to property vested in the United States); *In re Duval at Gulf Harbors, LLC*, 515 B.R. 884, 887 (Bankr. M.D. Fla. 2014) (same). As the Government has filed an Indictment and

---

[9]    *See* Superseding Indictment ¶ 97-99, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022), ECF No. 115 (Aug. 14, 2023); Bill of Particulars, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. 2022) ECF No. 314 (Oct. 4, 2023).

related Bill of Particulars alleging the Planes are subject to forfeiture, section 853(k) prohibits

Aranha from litigating his interest in the Planes outside of the ancillary proceeding in the

Bankman-Fried prosecution as required by section 853(n).

## II.    THE MOTION IS PROCEDURALLY DEFECTIVE

18.    The Movants allege that they are "the rightful owners of the Aircraft," and

ask the Court to enter an order to that effect.  (Mot. at ¶¶ 46, 49.)  Pursuant to Bankruptcy

Rule 7001, a determination regarding ownership of an asset may be obtained only through an

adversary proceeding.  *See* Fed. R. Bankr. P. 7001(1), (2), (7), (9) (adversary proceeding required

"to recover money or property," "to determine the validity, priority, or extent of a lien or other

interest in property," "to obtain . . . equitable relief," and "to obtain a declaratory judgement").

19.    *First*, the Movants' request for a ruling that the Planes are not estate

property (Mot. at ¶ 46) clearly falls within Bankruptcy Rule 7001.  *See In re DBSI, Inc.*, 432 B.R.

126, 135 (Bankr. D. Del. 2010) (finding a creditor's motion seeking a judgment regarding its

alleged interest in certain property "procedurally improper" because the creditor had to proceed

through an adversary proceeding); *see also In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 631

B.R. 589, 593-94 (D.P.R. 2021) (finding procedurally defective creditor's motion for declaratory

relief concerning the extent of his interest in a motor vehicle); *In re Colafranceschi*, 577 B.R. 817,

825 (Bankr. D. Idaho 2017) ("Ordinarily, [a]ny disagreement or question of whether property is

or is not property of the estate requires adjudication through an adversary proceeding.").

20.    *Second*, the Movants' request that the Court, in the alternative, find that the

Movants are entitled to a lien totaling several million dollars—without citing a shred of evidence

substantiating those figures—also is procedurally improper.  Bankruptcy Rule 7001(2) expressly

applies to proceedings "to determine the validity, priority, or extent of a lien."  Fed. R. Bankr. P.

7001(2);[10] *see, e.g.*, *In re Glenbrook Grp., Inc.*, 552 B.R. 735, 738 (Bankr. N.D. Ill. 2016) (noting that the "appropriate avenue" for determining a party's "equitable interest" in property is an adversary proceeding).

21.    Adversary proceedings must be commenced by the filing of a complaint, pursuant to Bankruptcy Rule 7003.  Fed. R. Bankr. P. 7003.  This Motion is a paradigmatic example of the rationale for these rules—the Movants have asked this Court to find, on a paper-thin record consisting primarily of Aranha's say-so, that the Debtors have *no interest* in two Planes that were purchased and renovated at the Debtors' direction, using more than $30 million of Debtor assets.  It bears noting that Aranha's story rests in large part on his retelling of a purported March 22, 2022 in-person meeting with Bankman-Fried, during which Aranha claims that he and Bankman-Fried reached an "oral agreement" related to an amorphous and undocumented "loan." Aranha's declaration also contains many irreconcilable inconsistencies—as just one example, the purported March 2022 "oral agreement" was reached *nearly two months* after the agreement to purchase the Global was signed, and weeks after the Debtors had completed that purchase.

22.    To the extent that the Movants believe they have a valid claim to ownership of the Planes, they are required to commence an adversary proceeding in which those assertions will be subject to discovery and a full evidentiary hearing.  As it stands, the Motion is procedurally defective and must be denied.  *See, e.g., In re Aftandilian*, 2014 WL 1244789, at *5 (Bankr. App. 9th Cir. Mar. 26, 2014) (holding that "[t]he bankruptcy court correctly ruled that the movant's

---

[10]    Rule 7001(2) provides only two exceptions to requiring the commencement of an adversary proceeding: proceedings under Bankruptcy Rule 3012 or Bankruptcy Rule 4003(d)—neither of which involves the determination of a lien under section 550(e), as the Movants seek here.  *See* Fed. R. Bankr. P. 7001(2), 3012, 4003(d).

failure to present his declaratory relief motion as an adversary proceeding was a sufficient ground, by itself, to justify denial of the motion").

### III.    THE MOVANTS CANNOT ESTABLISH THAT THEY ARE THE "SOLE OWNERS" OF THE PLANES

23.    Procedural defects aside, if this Court is inclined to consider the merits of these issues, the Debtors request that there be discovery and a full evidentiary hearing.  As it stands, the evidence available to the Debtors, including records of the Debtors' payments and communications between Aranha and senior FTX Group personnel, fundamentally undermines Movants' claims.

24.    At the outset, the Debtors respectfully submit that, on the current record, Movants have not established that they have *any* valid interest in the Planes, much less that they are entitled to an order declaring them to be the "sole owners" of the Planes such that the automatic stay does not apply.  (Mot. ¶ 46.) (Decl. ¶ 2).  Section 541 of the Bankruptcy Code provides that estate property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  This provision is interpreted broadly.  *In re A. Bus. and Community Corp.*, 901 F.2d 325, 327 (3d Cir. 1990).  *See United States* v. *Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) ("The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.").  It extends to property "wherever located and *by whomever held.*" *Matter of Contl. Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) (citing *In re Mays*, 85 B.R. 955, 960 (Bankr. E.D. Pa 1988)) (emphasis added).

25.    The Movants acknowledge that the Debtors paid the entire $27.4 million purchase price for the Planes and directed extensive further renovations.  (Mot. at ¶¶ 19-20.) Movants also conspicuously do not assert that they paid *a single penny out of pocket* toward the purchase price or those upgrades, asserting only that they are owed certain amounts related to post-

Petition services and upkeep.  Movants' claim that "[t]here is, quite simply, no indicia of the Debtors' ownership" is nonsensical (Mot. at ¶ 48); *see, e.g., In re LTG, LLC*, at *6 (Bankr. M.D. Fla. Aug. 4, 2020) (noting that, in determining whether a boat was property of the estate, the court could consider "who paid the purchase price").

26.      The fact that the Planes are not titled and registered to the Debtors does not come close to demonstrating that Debtors have no ownership interest in the Planes.  In *In re Le*, for example, the court determined that, although debtors did not have legal title to two vessels, debtors had an equitable interest in the vessels because, along with other indicia of ownership, the debtors had paid the purchase price for the vessels, and had paid all subsequent expenses.  WL 4197515, at *2 (Bankr. S.D. Tex. Nov. 21, 2007).  The same is true here.

27.      Moreover, "[i]n determining whether a debtor has a 'legal' or 'equitable' interest in property, the court must turn to state law as the determination of property rights in the assets of a bankruptcy estate is governed by state law."  *In re Competrol Acq. Partn., L.P.*, 203 B.R. 914, 917 (Bankr. D. Del. 1996) (citations omitted); *see Butner* v. *United States*, 440 U.S. 48 (1979) ("Property interests are created and defined by state law.").  Delaware law recognizes that even where property is registered in the name of one party, another party may have an ownership interest in that property if, for example, that party paid to purchase the property.  *See, e.g.*, *Malloy* v. *U.S. Fid. & Guar. Co.*, WL 179511, at *3 (Del. Super. June 16, 1992) (finding that the individual named on the certificate of title of a vehicle may not be the equitable owner of the vehicle); *W. Am. Ins. Co.* v. *Bogush*, 2006 WL 1064069, at *1 n.6 (Del. Super. Apr. 12, 2006) ("[O]wnership can be established in equity based on the circumstances surrounding the acquisition

and/or use of property even though legal ownership may lie elsewhere") (citing *Malloy*, 1992 WL 179511 at *3).[11]

## IV.    THE MOVANTS HAVE NOT SHOWN CAUSE TO LIFT THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(1) OF THE BANKRUPTCY CODE

28.    In the alternative, the Movants seek relief from the automatic stay "to permit them to use, operate, preserve, maintain, and, if they desire to do so, sell the [Planes]."  (Mot. at ¶ 50.)  Section 362(d) of the Bankruptcy Code allows a party to obtain relief from the automatic stay only "for cause," and, as the Movants acknowledge, the party seeking to lift the automatic stay bears the initial burden to make a *prima facie* showing of "cause" for relief.  *In re Trib. Co.*, 418 B.R. 116, 127 (Bankr. D. Del. 2009); *see* (Mot. at ¶ 51); *see also In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006), *subsequently aff'd*, 359 Fed. Appx. 352 (3d Cir. 2010) ("Failure to prove a *prima facie* case requires denial of the requested relief.").  To succeed on this claim, the Movants must show that there is "cause" to lift the automatic stay by proving that the hardship suffered by the Movants as a result of the stay "*considerably outweigh*" the hardship on the Debtors and the estate if the stay were lifted.  *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

29.    This is a heavy burden, and one that the Movants have not come close to meeting.  Indeed, "[t]he automatic stay is one of the most fundamental protections provided by the Bankruptcy Code" and "[t]he scope of the automatic stay is very broad."  *In re THG Holdings LLC*, 604 B.R. 154, 160 (Bankr. D. Del. 2019) (Dorsey, J.).  Unsubstantiated, undocumented

---

[11]    The Movants also suggest that the Debtors' relatively limited references to the Planes as estate property in the Debtors' prior public filings somehow demonstrates that the Debtors have no ownership right in the Planes.  This borders on bad faith.  Over the past several months, the Movants have repeatedly asked the Debtors and the Government to refrain from any public statements regarding the Planes, on the theory that minimizing public attention could help maximize value in any interlocutory sales of the Planes.

allegations are insufficient to show "cause" to lift the stay. *In re Irish Bank Resol. Corp. Ltd.*, 2019 WL 4740249, at *7 (D. Del. Sept. 27, 2019) ("Determining whether 'cause' has been shown requires a fact-specific inquiry, in which the movant must substantiate its case with an evidentiary showing of a factual and legal right to the relief it seeks.").

30.     In the Third Circuit, courts typically examine three factors to determine whether the movant has made a showing of "cause" for relief from the stay:

> (1) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> (2) Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> (3) Whether the creditor has a probability of prevailing on the merits.

*In re Rexene Prods. Co*., 141 B.R. at 576.  This balancing test places the burden on the movant to show that "the balance of hardships from not obtaining relief tips *significantly* in its favor." *In re Am. Classic Voyages, Co*., 298 B.R. 222, 225 (D. Del. 2003) (citations omitted) (emphasis added).

31.     First and foremost, the Movants fail to make a *prima facie* showing of "cause" for relief from the stay because they do not even attempt to address the potential for prejudice to the Debtors.  As this Court recently observed in denying a request for stay relief in this proceeding, "in order to lift the stay, the burden is on the Movant to prove cause," which involves, among other things, showing that "there would be no harm to the bankruptcy estate." (Apr. 12, 2023 Hr'g Tr. 52:16–18, 53:1–3) (emphasis added).  The potential harm here is clear— the Movants are located outside of the United States and are asking this Court to lift the stay and grant them unfettered discretion to "use" and/or "sell" two planes that were purchased and renovated using more than $30 million of Debtor assets.

32.     If the stay is lifted, the Debtors—and potentially also the Government— would be forced to expend resources to litigate the ownership of the Planes now.  As explained by

the Third Circuit, the purpose of the automatic stay is three-fold:  (1) "to prevent certain creditors from gaining a preference for their claims against the debtor," (2) "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it," and (3) "to avoid interference with the orderly liquidation or rehabilitation of the debtor."  *Borman* v. *Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condominium Owners* v. *St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)).  The Movants' motion for relief from the stay runs roughshod over all three of these underlying policies.  *See e.g.*, *In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009) (denying relief from the stay and noting that, "by lifting the stay, I may encourage a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *see also United States* v. *Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988).

33.     Moreover, the Movants cannot show that any hardship they might face under the automatic stay "considerably outweighs" the hardship to the Debtors if the stay were lifted.  *See, e.g.*, *In re Aleris Int'l Corp.*, 456 B.R. 35, 48 (Bankr. D. Del. 2011) (finding the movants had not shown cause to lift the stay because although the creditor alleged hardship as a result of the stay, "it has not shown that its continued dispossession would cause it greater hardship than the hardship on the Debtor").  At the outset, there is no need for the Movants to incur any further hardship at all—the Movants could unburden themselves simply by turning the Legacy over to the Government.  Similarly, the Movants are under no obligation to continue to maintain the Global (and have not been since the Government seized the Global nearly eight months ago).  The Movants' assertion that they need relief on account of "their large cash expenditure required to maintain the Aircraft. . . [that will] continu[e] indefinitely into the future" (Mot. at ¶ 54) is a false choice entirely of the Movants' own creation.

34.     The Movants offer similarly inadequate allegations in support of *Rexene*'s third prong:  the likelihood they will prevail on the merits of their claims against the Debtors.  *In re Rexene Prods. Co.*, 141 B.R. at 576.  As set out above, the Debtors have an ownership interest in the Planes.  Although the Movants recognize that "FTX wired the deposits and balances [for the Planes] directly into escrow" (Mot. at ¶ 19), they neither acknowledge the Debtors' clear ownership interest, nor offer any showing that they would prevail against the Debtors' interest.  *See, e.g.*, *In re Aleris Int'l Corp.*, 456 B.R. at 48 (applying the *Rexene* factors to deny a creditor's motion for relief from the stay, including because the creditor, who had an unperfected security interest in property in possession of the Debtors, had "made no showing that it is likely to prevail against the Debtor on the strength of its security interest").

35.     The Movants have failed to satisfy the *Rexene* factors to demonstrate that cause exists to lift the automatic stay and, accordingly, the requested relief must be denied.

## V.    THE MOVANTS FAIL TO PROVE ENTITLEMENT TO A LIEN UNDER SECTION 550(e) OF THE BANKRUPTCY CODE

36.     The Movants further allege that they are entitled to a lien pursuant to section 550(e) of the Bankruptcy Code on the Debtors' property to secure the costs they allegedly incurred "improv[ing]" the property.  (Mot. at ¶ 56.)  Under section 550(e), when a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a), the transferee may assert a claim for a lien to secure the cost of any improvements made after the transfer of the property, "if, and only if, the transferee accepted the transfer in good faith."  *In re Consol. Yacht Corp.*, 337 B.R. 711, 714 (Bankr. S.D. Fla. 2006); 11 U.S.C. § 550(a), (e).  The Movants' claim that they are entitled to a "substantial lien" under section 550(e) (Mot. at ¶ 56) is unavailing for two reasons. *First*, the Movants are not transferees of the Legacy or the Global.  *Second*, even if the Movants *could* establish they were transferees, the Movants cannot establish "good faith."

37.     As an initial matter, the Movants do not offer any basis for the applicability of section 550(e) to the Planes.  The statute specifically refers to improvements "made after the *transfer*."  11 U.S.C. § 550(e); *see, e.g.*, *In re Cowan*, 273 B.R. 98, 107 (Bankr. App. 6th Cir. 2002), *aff'd,* 70 Fed. Appx. 797 (6th Cir. 2003) (finding section 550(e) inapplicable where there was no transfer that had to be avoided because "§ 550 only comes into play if the Trustee avoids a transfer."); *see also In re Saunders*, 413 B.R. 722, 726 (Bankr. D. Idaho 2009) (finding that, "absent an avoided transfer, § 550 appears to have no relevance").

38.     The Movants have not alleged facts or provided any evidentiary support to show that the Debtors transferred the Planes to Aranha or IAC, nor did the Debtors ever transfer the Planes or express their intent to effect a transfer of them.  Merely placing the Movants' name on the title of the Planes did not constitute a "transfer" within the meaning of section 550.  As the court explained in *In re Saunders*, "[a]n impermissibly expansive reading of § 550 would be required" in order to find that placing someone else's name on the title of a vehicle constituted a "transfer." 413 B.R at 726.  Accordingly, since there was no transfer of the Planes, section 550(e) does not apply.

39.     Even if the Movants were transferees of the Planes under the meaning of section 550, which they are not, the Movants are not "good faith" transferees, as required to assert a claim for a lien under section 550(e).  "Good faith" is not a defined term in the Bankruptcy Code, and is properly determined on a case-by-case basis.  *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir. 1995) (citing *In re Roco Corp*., 701 F.2d 978, 984 (1st Cir. 1983)).  When assessing the circumstances under which a transferee establishes "good faith," courts have observed that "[t]he bona fide purchaser for good faith, creating entitlement to a lien for improvements, is meant to be

reserved for situations involving an arms length transfer to an outside third party." *In re Blitstein*, 105 B.R. 133, 137 (Bankr. S.D. Fla. 1989).

40.     The Movants attempt to establish their status as good-faith transferees by alleging "there is no allegation, much less evidence, that the Movants had any reason to know of [the FTX Group executives'] fraud or otherwise lacked good faith."  (Mot. at ¶ 57.)  Yet, "an absence of fraudulent intent does not mean that the transaction was necessarily entered into in good faith.  The lack of good faith imports a failure to deal honestly, fairly and openly."  *In re Greenbrook Carpet Co., Inc.*, 22 B.R. 86, 90-91 (Bankr. N.D. Ga. 1982) (citing *S. Indus., Inc.* v. *Jeremias*, 66 A.D.2d 178, 183 (N.Y. App. Div. 2d Dep't 1978)).  Courts have found bad faith when the dealings between the creditor and the debtor lack the attributes of an arm's-length transaction, for instance, where a creditor has an economic interest in pleasing the debtor, or anticipates a reward of the debtors' "largess."  *In re Am. Way Serv. Corp.*, 229 B.R. 496, 505, 511-512 (Bankr. S.D. Fla. 1999).  As set forth above, the Movants' dealings with Bankman-Fried and the other FTX Group executives exhibit similar indications of bad faith, and the Movants thus have failed to establish that they were transferees in good faith as required under section 550(e).[12]

41.     The Movants further allege they are entitled to adequate protection of their "550(e) lien on the Aircraft" and the "improvements . . . that the Movants have made to the Aircraft" under 11 U.S.C. § 361(1).  (Mot. at ¶¶ 59, 61.)  For the reasons set out above, the Movants are not entitled to any lien under section 550(e), and thus cannot prevail on this claim.

---

[12]   Movants also have failed to offer any evidence demonstrating that any purported costs that they incurred qualify as "improvements" under Section 550(e).  For example, by his own account, in the days following the FTX Group's collapse, Aranha repainted the Global to hide its affiliation with Aranha, transferred the Global's title to a company not owned by Aranha, and took steps to attempt to sell the Global, all *prior* to any communications with the Debtors or the Government.  (Aranha Decl. ¶ 15.)  There are many ways to describe those actions, but "improvements" is not one of them.

42.      The Movants' claim to adequate protection is additionally unavailing because the Movants are not secured creditors.  "The purpose of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular *collateral*."  *In re Energy Future Holdings Corp*., 546 B.R. 566, 581 (Bankr. D. Del. 2016) (citing *In re Satcon Tech. Corp*., No. 12–12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012).  The Movants have no entitlement to adequate protection for the Planes given that they have not established the Planes are collateral or that they are secured creditors.  Unsecured creditors are not entitled to adequate protection under section 361(1) of the Bankruptcy Code.  *In re Chama, Inc*., 265 B.R. 662, 669 (Bankr. D. Del. 2000) (finding that, since the debtors had avoided the creditor's security interest, the creditor was merely a "general unsecured creditor . . . not entitled to any adequate protection").

43.      Finally, the Movants also fail to establish a claim under section 361(1) to the extent that they seek protection "in the amount of approximately $6 million (plus a minimum of $65,000 per month for the ongoing maintenance and preservation of the Legacy)."  (Mot. at ¶ 61.)[13]  Courts have endorsed the view that a creditor "can only receive adequate protection to the extent the collateral declined in value *after* the secured creditor filed its motion for adequate protection, rather than receiving compensation for all postpetition decline in value."  *In re Cont'l Airlines, Inc*., 154 B.R. 176, 180-81 (Bankr. D. Del 1993) (citing *In re Best Products, Inc*., 138 B.R. 155, 157-58 (Bankr. S.D.N.Y. 1992)) (emphasis added).  The Movants are not entitled to adequate protection—they have no section 550(e) lien and they are not secured creditors—but even if they were, that protection would apply only to cover depreciations in value since the

---

[13]    Although Aranha previously had offered to provide the Debtors with documentation to substantiate his claimed $6 million in post-Petition "services," he changed course after the Debtors took him up on that offer.  This is not surprising, as Aranha's claims appear facially implausible—for example, he asserts that "the Debtors also owe me $3,397,958 for maintaining and preserving the Global since the Petition Date" (Aranha Decl. at ¶ 30), notwithstanding that the Global was seized by the Government on February 8, 2023, *less than three months* after the Petition Date.

Movants filed the Motion on September 21, 2023.  Accordingly, the requested relief must be denied.

## **RESERVATION OF RIGHTS**

44.     In filing this Objection, the Debtors have not waived any rights, and the Debtors expressly reserve all of their rights, powers, privileges and remedies under applicable law or otherwise with respect to the Movants and the Planes.  The Debtors may elect to exercise any or all of their rights, at their sole option without the necessity of any further notice, demand or other action on the part of the Movants.  Nothing contained in this Objection or any delay by the Debtors in exercising any rights, powers, privileges and remedies under applicable law with respect to the Movants or the Planes now existing or hereafter arising shall be construed as a waiver or modification of such rights, powers, privileges or remedies.

## **CONCLUSION**

45.     For the foregoing reasons, the Motion should be denied.

Dated: October 5, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        crokej@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*