## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
|  | ) |
|  | ) (Lead Case) |
| Debtors. | ) |
|  | ) (Jointly Administered) |
|  | ) |

### EMERGENT DEBTOR'S MOTION FOR ENTRY OF AN ORDER
### APPROVING POSTPETITION FINANCING AND GRANTING RELATED RELIEF

Emergent Fidelity Technologies Ltd (the "Debtor"), as debtor and debtor-in-possession in Case No. 23-10149-JTD, respectfully moves (the "Motion") for entry of an order granting the relief set forth below and represents as follows:

### RELIEF REQUESTED[2]

1.     The Debtor respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 4001-1, 4001-2, 9006-1, 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined in this Relief Requested shall have the meanings ascribed to such terms elsewhere in this Motion.

(a)     authority to obtain a short-term, senior secured debtor-in-possession credit facility (the "DIP Facility") in an aggregate principal amount up to GBP £250,000 (approximately USD $302,000 as of the filing of this Motion) in new money advances pursuant to that certain DIP Term Sheet attached as **Exhibit 1** to the Proposed Order (the "DIP Term Sheet," together with the Proposed Order, and any other agreements or documents executed in accordance and connection therewith, as may be amended, restated or supplemented from time to time, collectively, the "DIP Documents"), by and among the Debtor, as borrower, Fulcrum Distressed Partners Limited, as lender (together with its assigns and successors, the "Prepetition Lenders" or the "DIP Lenders," as applicable), which may be used to fund certain administrative expenses of the Debtor incurred in connection with the JL Appeal;

(b)     authority to (a) enter into, execute and perform under (i) any amendment or modification of the DIP Term Sheet that is consistent with the Proposed Order, and (ii) any and all security agreements, deeds of trust, notes, control agreements, Uniform Commercial Code financing statements, documents and instruments either or both executed and/or delivered under the DIP Term Sheet, and (b) take and perform all other acts and steps as may be required or contemplated by or in connection with the DIP Term Sheet and the Proposed Order;

(c)     authority to incur obligations and liabilities under the DIP Term Sheet (the "DIP Obligations"), to perform any acts as may be necessary or desirable in connection with the DIP Obligations, and to use proceeds of the DIP Facility as permitted in the DIP Term Sheet;

(d)     authority to grant the DIP Lenders (i) a perfected first-priority lien and security interest in the DIP Collateral to secure the DIP Obligations to the extent that such Collateral is unencumbered or subject to invalid, unperfected, unenforceable or avoidable liens, and (ii) a perfected second-priority lien and security interest in the DIP Collateral to secure the DIP Obligations to the extent such Collateral is subject to any liens that are (x) valid, perfected, enforceable and non-avoidable on the Petition Date, including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable, or (y) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code;

(e)     authority to grant the DIP Lenders allowed superpriority administrative expense claims on account of the DIP Obligations to the extent applicable under section 364(c)(1) of the Bankruptcy Code;

(f)     approval of the application of collections and proceeds of all of the DIP Collateral and the payment of DIP Obligations in the manner and on the terms set forth in the Proposed Order;

(g)     modifying the automatic stay under section 362 of the Bankruptcy Code to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rule 4001(a)(3);

(h)     waiver of the Debtor's ability to surcharge against the DIP Collateral to the extent applicable under section 506(c) of the Bankruptcy Code, and any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of the Proposed Order; and

(i)     granting such other relief as is just and proper.

2.      In support of this Motion, the Debtor relies on and incorporates by reference the declaration of Angela Barkhouse (the "Barkhouse Declaration"), attached hereto as **Exhibit B**, and the First Day Declaration.[3]

## BACKGROUND

3.      The Debtor is an Antiguan company majority-owned by Samuel Bankman-Fried ("SBF") and is a chapter 11 debtor in this Court, whose case is jointly administered with the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors ("FTX"), *In re FTX Trading, Ltd., et. al*, Case No. 22-11068 (JTD).[4]

4.      The Debtor's only known purpose was to purchase approximately 56 million shares of Robinhood Markets, Inc., which it did in or about May 2022 using funds purportedly borrowed by the two owners from Alameda Research Ltd. (which is also majority-owned by SBF).[5]  The Debtor sold a small fraction of these shares at some point, but otherwise held the shares and the proceeds of the sale in an account in the Debtor's name at ED&F Man Capital Markets Inc., now known as Marex Capital Markets Inc. ("Marex"), in New York, until they

---

[3] *Declaration of Angela Barkhouse in Support of the Debtor's Chapter 11 Petition* (the "First Day Decl." or "First Day Declaration") [D.I. 3, Case No. 23-10149].

[4] D.I. 91, Case No. 23-10149; D.I. 1469, Case No. 22-11068.

[5] SBF Affidavit ¶ 7, Ex. 5 to Ex. B of Joshua Dorchak Decl., *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF No. 19 (Bankr. D.N.J. Dec. 27, 2022).

were seized by the DOJ in January 2023.[6]  On or about September 1, 2023, the DOJ sold the Robinhood shares and continues to hold the sale proceeds (collectively, the "Assets") pending the outcome of the SBF criminal proceeding.[7]

5.    On November 18, 2022, upon the petition of Yonatan Ben Shimon, the Eastern Caribbean Supreme Court, High Court of Justice, Antigua and Barbuda (the "Antiguan Court") appointed Angela Barkhouse and Toni Shukla as Receivers over the Assets and SBF's equity interests in the Debtor (the "Receivership Proceeding").[8]  On November 28, 2022, BlockFi, Inc. ("BlockFi") filed its chapter 11 petition in the New Jersey Bankruptcy Court and filed a complaint and motion against the Debtor and Marex, seeking turnover of the Assets (the "BlockFi Action").[9]

6.    On December 5, 2022, upon the petition of the Receivers, the Antiguan Court placed the Debtor into provisional liquidation (the "Liquidation Proceeding") and appointed Ms. Barkhouse and Ms. Shukla as Joint Provisional Liquidators ("JPLs") to wind up the Debtor's affairs (the "JPL Order").[10]  The JPL Order authorized, among other things, the JPLs to obtain financing in order to protect the Assets of the Debtor.[11]  On March 23, 2023, the Antiguan Court placed the Debtor into full liquidation (as confirmed by the Antiguan Court Order dated July 14, 2023, the "JL Order") and appointed Ms. Barkhouse and Ms. Shukla as Joint Liquidators (the

---

[6] First Day Decl. ¶ 6; United States' Notice of Asset Seizures, *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD), ECF No. 477 (Bankr. D. Del. Jan. 11, 2023).

[7] *United States v. Samuel Bankman-Fried*, Case No. 1:22-cr-00673 (LAK), ECF 242 (S.D.N.Y. Sept. 1, 2023).

[8] First Day Decl. ¶ 15.

[9] *BlockFi Inc. v. Emergent Fidelity Techs. Ltd*, Adv. Pro. No. 22-01382 (MBK), ECF Nos. 1, 2 (Bankr. D.N.J. Nov. 28, 2022).  On April 17, 2023 and April 21, 2023, this Court and the New Jersey Bankruptcy Court, respectively, approved a stipulation by which the Debtor, FTX, and BlockFi agreed to stay the BlockFi Action and all related litigation pending the outcome of the SBF criminal proceeding.  *See In re FTX Trading Ltd.*, Case No. 22-11068-JTD, D.I. 1297 (Bankr. D. Del. Apr. 17, 2023); *In re BlockFi Inc.*, Case No. 22-19361-MBK, D.I. 760 (Bankr. D.N.J. Apr. 21, 2023).

[10] The JL Order is attached as Exhibit B to the First Day Declaration.

[11] First Day Decl., Ex. B ¶ 4.

"<u>JLs</u>") of the Debtor.  A true and correct copy of the JL Order is attached to the Barkhouse Declaration as **<u>Exhibit 1</u>**.

7.      The Debtor and its Assets are subject to several alleged claims and security interests.  To protect the Debtor's interests in its Assets required litigation in several proceedings in several courts, which in turn required funding.  The JLs sought and obtained funding for the Debtor, ultimately entering into the Liquidation Funding Agreement (as amended, supplemented or otherwise modified and in effect, the "<u>Existing Credit Agreement</u>," together with any other agreements or documents executed in accordance and connection therewith, the "<u>Prepetition Loan Documents</u>") with the Prepetition Lenders on February 2, 2023.  On the same day, the Antiguan Court entered an order approving the Prepetition Loan Documents.  All of the proceeds of such loans were used to fund fees, expenses, and other accrued costs associated with defense and litigation in both U.S. and Antigua, including the Debtor's chapter 11 filing (the "<u>Emergent Chapter 11 Case</u>") on February 3, 2023 (the "<u>Petition Date</u>").

8.      Since the commencement of the Receivership Proceeding, SBF has engaged in a campaign of repetitive and vexatious litigation in Antigua, with the goal of attempting to regain control of the Debtor.  Specifically, while indicted and awaiting trial, SBF has challenged the JLs' appointment as JPLs and as Receivers on various grounds.  Almost all of SBF's claims have been denied, dismissed or otherwise disposed of in the JLs' favor.  The only material exception to SBF's series of defeats in the Antiguan Court is a carve-out from the litigation stay within the JL Order that permits SBF to take further actions related to the Receivership Proceeding (but not the Liquidation Proceeding).  The JLs believe such stay relief was premature and procedurally improper and are seeking clarity on the scope and effect of that order (the "<u>JL Appeal</u>").  The JL Appeal is scheduled to be heard by the Court of Appeal during the week of October 23, 2023.

SBF has made it clear that the only reason he wishes to lift the stay in the Receivership Proceeding, so far as it regards himself, is to regain control of the Debtor. It is therefore essential that the Debtor be able to move forward with the JL Appeal.

9.      The DIP Facility will ensure that the Debtor has sufficient funds to continue with, and most importantly, to succeed with the JL Appeal.

## JURISDICTION

10.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The Debtor consents, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     The statutory bases for the relief requested in this Motion are sections 105, 361, 362, 364 and 507 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001 and 9014, and Local Rules 2002-1, 4001-1 and 4001-2.

## SUMMARY OF DIP FACILITY

13.     Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following is a concise summary of the proposed material terms of the DIP Facility and the DIP Term Sheet.[12]

| DIP Facility Parties | **Borrower**: Emergent Fidelity Technologies Ltd |
|---|---|

---

[12] The summaries contained in this Motion are qualified in their entirety by the DIP Documents. To the extent anything in this Motion is inconsistent with such Documents, the terms of the applicable Documents shall control. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in this Motion or the DIP Term Sheet, as applicable.

| | |
|---|---|
| Bankruptcy Rule 4001(c)(1)(B) | **Lenders**: Fulcrum Distressed Partners Limited, a limited company organized under the laws of the British Virgin Islands, and/or its designees |
| **DIP Facility Amount**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(A)<br><br>Order I.B | A short-term, senior secured debtor-in-possession credit facility (the "<u>DIP Facility</u>") in an aggregate principal amount up to GBP £250,000 (approximately USD $302,000 as of the filing of this Motion) in new money advances pursuant to this DIP Term Sheet, as may be further reflected in new credit agreements and other related documents to be entered into in connection with the DIP Term Sheet and the Proposed Order (the "<u>DIP Facility</u>") (the "<u>New Money Amount</u>"). |
| **Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(A) | N/A |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i)<br><br>Order II.A | DIP Obligations shall be:<br><br>(a) pursuant to section 364(c)(2) of the Bankruptcy Code, secured by a perfected first-priority lien on the DIP Collateral to the extent that such Collateral is unencumbered or subject to invalid, unperfected, unenforceable or avoidable liens;<br><br>(b) pursuant to section 364(c)(3) of the Bankruptcy Code, secured by a perfected second-priority lien on the DIP Collateral to secure the DIP Obligations to the extent such Collateral is subject to any liens that are (x) valid, perfected, enforceable and non-avoidable on the Petition Date, **including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable**, or (y) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (together with (a), the "<u>DIP Liens</u>"); and<br><br>(c) to the extent applicable under section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Emergent Chapter 11 Case with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(a) of the Bankruptcy Code. |

| | |
|---|---|
| **Parties with Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i) | N/A |
| **Use of Proceeds**<br><br>Bankruptcy Rules 4001(b)(1)(B)(ii), 4001(c)(1)(B)<br><br>Order I.C.3 | The New Money Amount shall be used solely for payment of litigation expenses in Antigua, including the JL Appeal. |
| **Adequate Protection**<br><br>Bankruptcy Rules 4001(b)(1)(B)(iv), 4001(b)(1)(C)(ii) | N/A |
| **Fees**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(B) | N/A |
| **Interest Rate**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(B) | Return on New Money Amount equals to principal outstanding amount of the funded New Money Amount plus:<br><br>• 150% of the principal outstanding amount of the funded New Money Amount if repaid before 180 days following the date the funding amount is funded (the "<u>Funding Date</u>");<br><br>• 175% of the principal outstanding amount of funded New Money Amount if repaid after 180 days but before 270 days following the funding date;<br><br>• 200% of the principal outstanding amount of funded New Money Amount if repaid after 270 days but before 360 days following the funding date; and<br><br>• 225% of the principal outstanding amount of funded New Money Amount if repaid after 360 days following the funding date. |

|  | If an Event of Default (as defined below) occurs and is continuing, the interest rate shall increase by the default rate of 5%. |
|---|---|
| **Limitation on Court's Power or Discretion to Enter Future Orders**<br><br>Local Rule 4001-2(a)(i)(C) | N/A |
| **Funding to Non-Debtor Affiliates**<br><br>Local Rule 4001-2(a)(i)(D) | N/A |
| **Conditions of Closing and Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(E)<br><br>Order I.C.4 | The availability of the DIP Facility shall be conditioned upon satisfaction of, among other things, the following conditions precedent on a basis satisfactory to the DIP Lenders:<br><br>1. Entry by the Court of an order, in form and substance satisfactory to the DIP Lenders, authorizing and approving the transactions contemplated in the DIP Term Sheet within thirty (30) days of the execution of the DIP Term Sheet, and finding that the DIP Lenders are extending credit to Debtor in good faith within the meaning of Section 364(e) of the Bankruptcy Code (in the Bankruptcy Case) and comparable statutes under Antigua law (in the Antigua proceedings).<br><br>2. Execution and delivery by the Debtor of the DIP Term Sheet and all documentation in respect of the DIP Facility required hereunder, satisfactory in all respects to the DIP Lenders.<br><br>3. Payment of all reasonable fees, costs and expenses (including attorneys' fees) owing to the DIP Lenders in connection herewith.<br><br>4. No trustee or examiner shall have been appointed with respect to the Debtor or any property of the Debtor.<br><br>5. There shall have been no material adverse change.<br><br>6. Other than the Cases, litigation with Samuel Bankman-Fried concerning the Antiguan proceedings, and litigation with BlockFi debtors or FTX debtors concerning competing claims |

|  |  |
|---|---|
|  | to Debtor's assets, there shall be no material pending or threatened litigation, proceeding, bankruptcy or insolvency, injunction, order or claim with respect to the Debtor.<br><br>7. The DIP Lenders shall have received the approval of its loan/investment committees in connection with the DIP Facility.<br><br>8. As a condition to the effectiveness of the DIP Facility and as adequate protection for the DIP Lenders, the Debtor agrees not to seek relief under Bankruptcy Code section 1129(b) or any comparable law in Antigua with respect to the DIP Term Sheet and the transactions contemplated by the DIP Term Sheet.<br><br>9. Such other conditions as are required by the DIP Lenders and are customary in the context of this type of financing. |
| **Budget & Variances**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii)<br><br>Local Rule 4001-2(a)(i)(E) | N/A |
| **Carve Out**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(F) | N/A |
| **DIP Liens on Unencumbered Assets**<br><br>Local Rule 4001-1(a)(i)(G)<br><br>Order II.A | The DIP Facility shall be secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by a perfected first-priority lien on the DIP Collateral to the extent that such Collateral is unencumbered or subject to invalid, unperfected, unenforceable or avoidable liens, and a perfected second-priority lien on the DIP Collateral to the extent such Collateral is subject to any liens that are (x) valid, perfected, enforceable and non-avoidable on the Petition Date, **including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable**, or (y) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code. |

| | |
|---|---|
| **Chapter 11 Milestones**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vi)<br><br>Local Rule 4001-2(a)(i)(H) | N/A |
| **Prepayment Penalty**<br><br>Local Rule 4001–2(a)(i)(I) | N/A |
| **Joint Liability of Debtors**<br><br>Local Rule 4001–2(a)(i)(J) | N/A |
| **Payment of Lender Expenses**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix)<br><br>Local Rule 4001-2(a)(i)(K)<br><br>Order I.D | The Debtor shall pay on demand (a) all reasonable out-of-pocket expenses of the DIP Lenders associated with the negotiation, preparation, execution, delivery and administration of the DIP Term Sheet, the DIP Facility, all agreements and documents related hereto and any amendments or waivers with respect thereto (including the reasonable fees, disbursements and other charges of counsel and consultants), (b) all reasonable out-of-pocket expenses of the DIP Lenders (including the fees, disbursements and other charges of counsel) in connection with the enforcement of the DIP Facility and the preservation, protection and defense of their rights under with DIP Facility and with respect to the Cases, (c) review of the docket pleadings and all filings in respect of any Case, and monitoring of the Cases and attendance at hearings in respect of each Case, and (d) the administration, monitoring and collection of the DIP Facility and all other amounts due hereunder, including, without limitation, all filing and recording fees and reasonable attorneys', financial advisors', auditors', accountants', collection DIP Lenders', appraisers', and other professional fees incurred in connection with each of the foregoing.<br><br>The Debtor hereby authorize the DIP Lenders to charge the DIP Facility from time to time for any and all amounts due and owing with respect to the DIP Obligations (including, without limitation, interest, costs, fees and expenses). |

| | |
|---|---|
| **Limitations on Investigations of Liens**<br><br>Local Rule 4001–2(a)(i)(L) | N/A |
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001-2(a)(i)(M)<br><br>Order III.A | (a) the Debtor's failure to obtain entry of an Order which is not subject to any appeal, stay, vacation or reconsideration within thirty (30) days after the date hereof; (b) nonpayment of principal when due; (c) nonpayment of interest, fees or other amounts when due; (d) inaccuracy or breach of representations and warranties arising from facts first occurring on or after the date of the commencement of the Cases; (e) violation of covenants (including covenants contained herein), arising from facts first occurring on or after the commencement of the Cases (other than the commencement of the Cases); (f) the occurrence of certain ERISA events; (g) the existence of judgments not subject to the automatic stay; (h) the entry of an order invalidating any security document in connection with the DIP Term Sheet or the DIP Facility, or if the Debtor asserts the invalidity of any such security document; (i) the occurrence of a change of control; (j) the entry of an order dismissing any Case or converting the Emergent Chapter 11 Case to a Chapter 7 case, either voluntarily or involuntarily; (k) the entry of an order appointing a trustee in the Emergent Chapter 11 Case; (l) the entry of an order granting any other superpriority claim or lien equal or superior in priority to that granted the DIP Lenders; (m) the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any asset or assets of the Debtor; (n) the entry of an order staying, reversing, vacating or otherwise modifying the DIP Facility or the Order; (o) the entry of an order appointing an examiner having enlarged powers (beyond those set forth under Bankruptcy Code §1106(a)(3) and (4)) or any other fiduciary or representative of the estate with decision-making or other management authority; (p) the impairment of any collateral security; (q) the commencement of litigation by any government or regulatory authority against the Debtor; (r) the occurrence of any act, condition or event occurring after the date hereof that has or would reasonably expect to have a material adverse effect upon the assets of the Debtor, or the Collateral or the rights and remedies of the DIP Lenders under the DIP Term Sheet, or the Order; (s) the termination or rejection, or the filing by the Debtor of a motion terminating or rejecting, material contracts except those approved by the DIP Lenders; (t) any change shall occur, or be ordered, with respect to Debtor's existing, prepetition cash-management system, or existing, prepetition bank accounts; (v) proposal or confirmation of a plan of reorganization unless such plan as proposed or confirmed provided for indefeasible payment in full in |

| | |
|---|---|
| | cash of all Obligations at confirmation and is otherwise acceptable to the DIP Lenders; (w) any order providing for the sale of any assets of the Debtor shall be entered by the Court and/or the Antiguan Court unless, upon the consummation of such sale transaction, all prepetition liens are transferred to the proceeds of such sale and, subject to the Prior Permitted Liens (as defined in the Proposed Order), such proceeds are received at closing therein by the DIP Lenders and applied to permanently and indefeasibly pay the obligations under the DIP Facility and the DIP Term Sheet; (x) any order providing for the sale of any assets of the Debtor shall be entered by the Court and/or the Antiguan Court unless (A) upon the consummation of such transaction, the obligations under the DIP Facility and the DIP Term Sheet are permanently and indefeasibly paid in full, in cash, or (B) the DIP Lenders have consented to such sale; (y) any motion by the Debtor to approve bidding procedures for the sale of any assets of the Debtor that constitutes Collateral fails to provide, pursuant to Section 363(k) of the Bankruptcy Code, that the DIP Lenders shall have the right to credit bid; (z) Debtor suspends or discontinues or is enjoined by any court or governmental agency from continuing to conduct all or any part of its business without the DIP Lenders' prior written consent, or a trustee, receiver or custodian (other than the Joint Liquidators) is appointed for Debtor or any of its properties; (aa) the entry of an order for the obtaining of credit or incurring of debt other than pursuant to the DIP Facility; or (bb) the filing of any pleading by the Debtor seeking, or otherwise consenting to any of the matters set forth above (each of the foregoing, an "Event of Default").  The DIP Lenders, may, in their sole discretion, waive any Events of Default under the DIP Facility.<br><br>The DIP Lenders, may, in their sole discretion, waive any Events of Default under the DIP Facility.<br><br>Upon the occurrence of an Event of Default, the DIP Lenders, at the direction of the DIP Lenders, may terminate permanently as of a date certain the DIP Facility (the date of any such termination, the "Termination Date"), declare the DIP Obligations to be immediately due and payable and exercise all rights and remedies provided for hereunder and under the Order. |
| **Cross-Collateralization**<br><br>Local Rule 4001–2(a)(i)(N) | N/A |

| | |
|---|---|
| **Roll Up**<br><br>Local Rule 4001–2(a)(i)(O) | N/A |
| **Non-Consensual Priming Liens**<br><br>Local Rule 4001–2(a)(i)(P) | N/A |
| **Debtor's Stipulations**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iii)<br><br>Local Rule 4001–2(a)(i)(Q) | N/A |
| **Immediate Approval of DIP Documents**<br><br>Local Rule 4001–2(a)(i)(R)<br><br>Order V.I | The Debtor requests that for reasons set forth in this Motion and the Barkhouse Declaration, the provisions of the Proposed Order, the liens and claims, and any and all rights, remedies, privileges and benefits in favor of the DIP Lenders, provided or acknowledged in the Proposed Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of the Proposed Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation, any order which may be entered confirming any plan of reorganization, converting the Emergent Chapter 11 Case to any other chapter under the Bankruptcy Code, or dismissing the Emergent Chapter 11 Case. |
| **Notice of an Event of Default**<br><br>Local Rule 4001–2(a)(i)(S)<br><br>Order III.B | The Debtor requests that for reasons set forth in this Motion and the Barkhouse Declaration, upon the occurrence of and during the continuance of an Event of Default that does not also trigger the occurrence of the Maturity Date, and without the necessity of seeking relief from the automatic stay or any further Order of the Court (i) the DIP Lenders shall be entitled to charge the default rate of interest under the DIP Facility and (ii) subject only to the notice requirement set forth below, the DIP Lenders shall be entitled to take any other act or exercise any other right or remedy as provided in the Proposed Order, the DIP Term Sheet, or applicable law, including, without limitation, setting off any DIP Obligations with DIP Collateral, or proceeds in the possession of the DIP Lenders, and enforcing any and all rights and remedies with respect to the DIP Collateral. |

14

| | |
|---|---|
| **Limitations on Arguments in the Event of a Default**<br><br>Local Rule 4001–2(a)(i)(T)<br><br>Order III.B | Please see above. |
| **Liens on Chapter 5 Causes of Action**<br><br>Bankruptcy Rule 4001(c)(1)(B)(xi)<br><br>Local Rule 4001– 2(a)(i)(U)<br><br>Order II.A | The DIP Liens cover the Debtor's claims and causes of action under Chapter 5 of the Bankruptcy Code and proceeds thereof. |
| **506(c) Waiver**<br><br>Bankruptcy Rule 4001(c)(1)(B)(x)<br><br>Local Rule 4001– 2(a)(i)(V)<br><br>Order V.A | Subject to entry of the Proposed Order, the DIP Lenders shall be entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code. |
| **Section 552(b)(1) "Equities of the Case" Waiver**<br><br>Local Rule 4001–2(a)(i)(W)<br><br>Order V.C | The Debtor requests that for reasons set forth in this Motion and the Barkhouse Declaration, the DIP Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to DIP Lenders with respect to proceeds, product, offspring, or profits of any of the DIP Collateral, as applicable. |
| **Marshaling Waiver**<br><br>Local Rule 4001–2(a)(i)(X)<br><br>Order V.D | The Debtor requests that for reasons set forth in this Motion and the Barkhouse Declaration, the DIP Lenders shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral. |

| | |
|---|---|
| **Waiver/Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv)<br><br>Order V.H | The automatic stay is modified to (a) permit the Debtor to grant the security interests, liens, and superpriority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens, and (b) permit the DIP Lenders to exercise rights and remedies under certain circumstances. |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | N/A |
| **Release, Waiver, or Limitation on Any Claim or Cause of Action Belonging to the Estate**<br><br>Bankruptcy Rule 4001-2(c)(1)(B)(viii)<br><br>Order IV | The Proposed Order includes a release of the DIP Lenders, each in their capacity as such, with respect to any and all claims and causes of action that exist on the date of entry of the Proposed Order with respect to and relating to the DIP Obligations, the DIP Liens and the DIP Documents.<br><br>Upon the indefeasible payment in full of all DIP Obligations owed to the DIP Lenders by the Debtor and termination of the rights and obligations arising under the Proposed Order and the DIP Facility (which payment and termination shall be on terms and conditions acceptable to the DIP Lenders), the DIP Lenders shall be automatically deemed absolutely and forever released and discharged from any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims and causes of action arising or occurring in connection with or related to the DIP Facility or the Proposed Order (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or secondary, liquidated or unliquidated). |
| **Indemnification**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix) | The DIP Lenders (and their respective affiliates, officers, directors, employees, advisors and DIP Lenders) will have no liability for, and will be indemnified and held harmless against, any loss, liability, cost or expense incurred in respect of the postpetition financing contemplated hereby or the use or the proposed use of the proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party). |

| | |
|---|---|
| **Cases** | (a) the Emergent Chapter 11 Case and (b) that certain proceedings (the "Antigua Proceedings") under the International Business Corporations Act, CAP 222, in the Antiguan Court. |
| **Term** | The Obligations shall be repaid in full at the earliest of (i) the 450th day from the Petition Date (the "Maturity Date"), (ii) the Termination Date, and (iii) the conversion of the Emergent Chapter 11 Case to a Chapter 7 proceeding or dismissal of the Antigua Proceeding. |
| **Remedies** | The DIP Lenders shall have customary remedies, including, without limitation, the right (after providing three business days' prior notice to Debtors and any statutory committee of the occurrence of the Termination Date) to realize on all Collateral without the necessity of obtaining any further relief or order from the Court or the Antiguan Court.  The Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies hereunder, and under the Order, and with respect to the Collateral. |
| **Cash Management** | The Debtor shall maintain a cash management system as under the Prepetition Loan Documents. |
| **Governing Law** | State of New York except to the extent governed by the Bankruptcy Code or Antigua law. |

## BASIS FOR RELIEF

I.    **The Court Should Approve the DIP Facility.**

14.    The Debtor's ability to maximize the value of its estate hinges on the Debtor's ability to access postpetition financing.  Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary course of business, and (c) obtaining credit with specialized priority or on a secured basis.  Pursuant to section 364(c) of the Bankruptcy Code, if a debtor cannot obtain postpetition credit on an unsecured basis, a court may authorize such debtor to obtain credit or incur debt that is entitled to superpriority administrative expense status, secured by a senior lien on unencumbered property, or secured by a junior lien on encumbered property.  *See* 11 U.S.C. § 364(c).  Further, under section 364(d) of the Bankruptcy Code, courts also may

17

authorize postpetition credit secured by a senior or equal lien on encumbered property if the debtor cannot obtain credit elsewhere and the interests of existing lienholders are adequately protected. *See* 11 U.S.C. § 364(d)(1).

### A.   Entry into the DIP Documents is an Exercise of the Debtor's Sound Business Judgment.

15.     The Court should authorize the Debtor to enter into the DIP Documents, obtain postpetition financing under the DIP Facility, and use proceeds of the DIP Facility as permitted in the DIP Documents.  Courts grant considerable deference to a debtor's business judgment in obtaining postpetition secured credit so long as the agreement to obtain such credit does not run afoul of the provisions and underlying policy considerations of the Bankruptcy Code.  *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

16.     To determine whether a debtor has met the business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances."  *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business

judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

17.    Courts generally will not second-guess a debtor's business decisions when those decisions involve a minimum level of care in arriving at the decision on an informed basis, in good faith, and in the honest belief that the action was taken in the best interest of the debtor. *See In re Los Angeles Dodgers LLC*, 457 B.R. at 313.  To determine whether the business judgment test is met, "the court 'is required to examine whether a reasonable business person would make a similar decision under similar circumstances.'"  *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *97 (Bankr. D. Del. Aug. 15, 2007) (citation omitted). Further, in considering whether the terms of postpetition financings are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender.  *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization); *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he [Bankruptcy] Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

18.    The Debtor's entry into the DIP Facility represents a sound exercise of its business judgment.  The Debtor requires access to the DIP Facility because access to the proceeds thereof will allow the Debtor to defend itself against SBF, and most importantly to succeed with the JL Appeal.

19.     The terms of the DIP Facility were negotiated in good faith and at arm's length, resulting in the most favorable terms the Debtor could obtain under the circumstances. Accordingly, the Court should authorize the Debtor's entry into the DIP Facility as a reasonable exercise of the Debtor's business judgment.

### B.     No Comparable Alternative to the DIP Facility Is Reasonably Available.

20.     A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by section 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *Sky Valley, Inc.*, 100 B.R. at 113; *see also In re Snowshoe Co.*, 789 F.2d at 1088 (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

21.     Here, the Debtor has made a good faith effort to seek out optimal postpetition financing arrangements to meet its short-term liquidity needs. Although the Debtor has engaged with other interested parties with respect to an alternative financing facility, to date, no other party has committed to provide funding. Accordingly, the Debtor determined in its business judgment that the DIP Facility constitutes the best available solution to the Debtor's financing

needs under the current circumstances of the Emergent Chapter 11 Case. The DIP Facility represents the best option available to address the Debtor's immediate liquidity needs, and the terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances.

## II.        The 506(c) Surcharge Waiver Should be Approved.

22.        Section 506(c) of the Bankruptcy Code provides that the debtor in possession may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. 11 U.S.C. § 506(c). The section 506(c) surcharge waiver is appropriate where, as here, the Debtor has reasonably exercised its informed business judgment and determined that such waiver is necessary to obtain postpetition financing on the best possible terms. *See, e.g*., *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment").

## III.        The DIP Lenders Should be Deemed a Good Faith Lender

23.        Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

21

24.    Here, the Debtor believes that the DIP Facility embodies the most favorable terms on which the Debtor could obtain postpetition financing and, as noted above, negotiations of the terms of the DIP Documents with the DIP Lenders were conducted in good faith and at arm's length. The DIP Lenders are neither an insider nor an affiliate of the Debtor.  The terms and conditions of the DIP Documents are fair and reasonable, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code, and in accordance with the DIP Documents.  Accordingly, the Court should find that the DIP Lenders are a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and are entitled to all of the protections afforded by that section.

### IV.    <u>Modification of the Automatic Stay is Warranted</u>

25.    The relief requested in this Motion contemplates a modification of the automatic stay to permit the Debtor and the DIP Lenders, as applicable, to, among other things: (i) grant the security interests, liens, and superpriority claims described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) upon the occurrence of an Event of Default under the DIP Documents, subject to any applicable notice periods set forth in the Proposed Order, exercise any remedies available to them; and (iii) implement the terms of the Proposed Order, including payment of all amounts referred to in the DIP Documents.

26.    Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements and, in the Debtor's business judgment, are reasonable and fair under the circumstances of the Emergent Chapter 11 Case.  *See, e.g., In re FB Debt Financing Guarantor, LLC*, No. 23-10025 (KBO) (Bankr. D. Del. Feb. 16, 2023); *In re OSG Group Holdings, Inc.*, No. 22-10718 (JTD) (Bankr. D. Del. Aug. 9, 2022); *In re RentPath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Blackhawk Mining*

*LLC*, No. 19-11595 (LSS); (Bankr. D. Del. Aug. 13, 2019); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019).

## RESERVATION OF RIGHTS

27.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law.

## NOTICE

28.     Notice of this Motion has been or will be provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the DIP Lenders; (g) the parties identified on the Debtor's list of 20 largest unsecured creditors; (h) all parties known to hold or assert liens against the Debtor's assets; and (i) to the extent not listed herein, those parties requesting notice in the Emergent Chapter 11 Case pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

29.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the

Court (a) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and

(b) grant such other and further relief as is just and proper.

Dated: October 6, 2023
Wilmington, DE

**MORGAN, LEWIS & BOCKIUS LLP**

/s/  *Jody C. Barillare*
Jody C. Barillare (Bar No. 5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
Email: jody.barillare@morganlewis.com

- and -

John C. Goodchild, III (admitted *pro hac vice*)
Matthew C. Ziegler (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Email: john.goodchild@morganlewis.com
Email: matthew.ziegler@morganlewis.com

- and -

Craig A. Wolfe (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
David K. Shim (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Email: craig.wolfe@morganlewis.com
Email: joshua.dorchak@morganlewis.com
Email: david.shim@morganlewis.com

*Counsel for Emergent Fidelity*
*Technologies Ltd as Debtor and Debtor-in-*
*Possession*