## EXHIBIT A

**Proposed Order**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 22-11068 (JTD) |
| FTX TRADING LTD., *et al.*,[1] | ) |
| | ) (Lead Case) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

### ORDER AUTHORIZING DEBTOR EMERGENT FIDELITY TECHNOLOGIES LTD TO OBTAIN POSTPETITION FINANCING AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Emergent Fidelity Technologies Ltd. (the "**Emergent Debtor**") in Case No. 23-10149, for entry of an order (this "**Order**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") and rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "**Local Rules**") for the United States Bankruptcy Court for the District of Delaware (this "**Court**") seeking:

1. Authorizing and approving the Emergent Debtor obtaining up to GBP £250,000 (approximately USD $302,000 as of the filing of the Motion) in postpetition financing in accordance with the terms set forth in the DIP Term Sheet attached hereto as **Exhibit 1** (the "**DIP**

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the DIP Term Sheet, as applicable.  In the event of any discrepancy between the terms of this Order and the DIP Term Sheet, the terms of this Order shall control.

**Facility**"), which is supplemental to that certain Liquidation Funding Agreement, dated February 2, 2023 (as it may be amended, modified, supplemented, extended, restated or replaced), entered into by the Emergent Debtor, under the control of Angela Barkhouse and Toni Shukla as the Joint Liquidators of the Debtor ("**JLs**"), as borrower, and Fulcrum Distressed Partners Limited as lender (together with its assigns and successors, the "**DIP Lenders**"), and which may be used to fund certain administrative expenses of the Emergent Debtor incurred in connection with the JL Appeal and thereby preserve the value of the Emergent Debtor's Assets;

2.    Approving and authorizing the Emergent Debtor to (a) enter into, execute and perform under (i) any amendment or modification of the DIP Term Sheet that is consistent with this Order, and (ii) any and all security agreements, deeds of trust, notes, control agreements, Uniform Commercial Code financing statements, documents and instruments either or both executed and/or delivered under the DIP Term Sheet and (b) take and perform all other acts and steps as may be required or contemplated by or in connection with the DIP Term Sheet and this Order;

3.    Granting to the DIP Lenders (i) a perfected first-priority lien and security interest in the DIP Collateral to secure obligations and liabilities of every kind or nature under or in connection with the DIP Term Sheet (collectively, the "**DIP Obligations**"), to the extent that such Collateral is unencumbered or subject to invalid, unperfected, unenforceable or avoidable liens, and (ii) a perfected second-priority lien and security interest in the DIP Collateral to secure the DIP Obligations to the extent such Collateral is subject to any liens that are (x) valid, perfected, enforceable and non-avoidable on the Petition Date, **including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable**, or (y) valid liens in existence on the Petition Date that are perfected subsequent to the

Petition Date in accordance with section 546(b) of the Bankruptcy Code;

4.    Granting to the DIP Lenders an allowed superpriority administrative expense claim on account of the DIP Obligations to the extent applicable under section 364(c)(1) of the Bankruptcy Code;

5.    Authorizing the Emergent Debtor's use of the proceeds of the DIP Facility in accordance with the terms of the DIP Term Sheet and this Order;

6.    Approving the application of collections and proceeds of all of the DIP Collateral (as defined below) and the payment of DIP Obligations in the manner and on the terms set forth in this Order;

7.    Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rule 4001(a)(3); and

8.    Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Order;

Notice of the Motion and the relief requested therein having been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the DIP Lenders; (g) the parties identified on the Debtor's list of 20 largest unsecured creditors; (h) all parties known to hold or assert liens against the Debtor's assets; and (i) to the extent not listed herein, those parties requesting notice in the Emergent Chapter 11 Case pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), in accordance with this Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules as applicable.

Based upon the record established at the hearing on the Motion, and the filings and

pleadings in the Emergent Chapter 11 Case, with all objections, if any, to the entry of the Order having been withdrawn, resolved or overruled, and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.      <u>Petition</u>.  On February 3, 2023 ("**<u>Petition Date</u>**"), the Emergent Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The JLs continue to administer the Debtor's properties as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On May 10, 2023, this Court entered an order authorizing joint administration of the Emergent Chapter 11 Case (Case no. 23-10149) with the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors ("<u>FTX</u>"), *In re FTX Trading, Ltd., et. al*, Case No. 22-11068 (JTD).[4]

B.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction of this Case, the Motion, this Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      <u>Notice</u>.  The Hearing was held pursuant to Bankruptcy Rule 4001.  Under the circumstances, the Notice given by the Emergent Debtor of the Motion and the relief sought herein to the Noticed Parties in accordance with Bankruptcy Rule 4001(b) and (c) is proper, timely and sufficient and no other notice need be given.

D.      <u>Findings Regarding the DIP Financing</u>.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Any statements of the Court from the bench at the Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order to the extent non inconsistent herewith.

[4] D.I. 91, Case No. 23-10149; D.I. 1469, Case No. 22-11068.

(1)     Request for DIP Financing.  The Emergent Debtor has requested from the DIP Lenders, and the DIP Lenders are willing to extend a loan, as more particularly described, and subject to the terms and conditions set forth, in this Order and the DIP Term Sheet.

a)     Need for DIP Financing.  Without the DIP Facility as described in this Order, the Emergent Debtor does not have sufficient available sources of capital to fund the JL Appeal.  The Emergent Debtor's ability to pay its professionals in the Antiguan Appeal is essential to the viability of the Emergent Chapter 11 Case.  The ability of the Emergent Debtor to obtain sufficient liquidity through the proposed DIP Facility on the terms set forth in the DIP Term Sheet and this Order is vital to the preservation and maximization of the value of the Emergent Debtor.  Accordingly, the Emergent Debtor has an immediate need to obtain funds from the DIP Facility for the limited purpose and in the manner set forth herein in order to protect its interests in the JL Appeal and manage and preserve the assets of the Emergent Debtor's bankruptcy estates (as defined under Bankruptcy Code section 541, the "**Estate**") in order to maximize the recoveries to creditors of the Estate.

(2)     No Credit Available on More Favorable Terms.  Consistent with the averments in the Motion and the Barkhouse Declaration, the Emergent Debtor is unable to procure financing in the form of unsecured credit allowable under Bankruptcy Code section 503(b)(1), as an administrative expense under Bankruptcy Code section 364(a) or (b), or in exchange for the grant of an administrative expense priority pursuant to Bankruptcy Code section 364(c)(1), without the grant of liens on all or substantially all of Emergent Debtor's assets pursuant to Bankruptcy Code sections 364(c) and (d) in the amount of the DIP Facility.  The Emergent Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Lenders pursuant to the DIP Term Sheet and this Order.

(3)      <u>Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363(m)</u>.  Based on the record before this Court, it appears (and the Emergent Debtor has stipulated) that (a) the Emergent Debtor and the DIP Lenders have negotiated at arms' length and in good faith regarding the terms of the DIP Facility, all subject to the terms of this Order and (b) the terms of the DIP Facility are fair and reasonable, reflect the Emergent Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitutes reasonably equivalent value and fair consideration.  Any credit extended under the terms of this Order shall be deemed to have been extended in "good faith" (as that term is used in Bankruptcy Code sections 364(e) and 363(m)) by the DIP Lenders.

(4)      <u>Good Cause</u>.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Emergent Debtor and its Estate, as its implementation will, among other things, provide the Emergent Debtor with the necessary liquidity to (a) protect its interests in the JL Appeal, (b) preserve and maximize the value of the Emergent Debtor's Estates, and (c) avoid immediate and irreparable harm to the Emergent Debtor, its respective business and assets.

(5)      <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Emergent Chapter 11 Case has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been resolved or withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

6

I.      **Authorization and Terms of Financing**.

A.      Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) under the terms and conditions provided in this Order.

B.      Authorization to Borrow.  The Emergent Debtor is hereby authorized and empowered to immediately borrow and obtain the DIP Facility, and the Emergent Debtor is hereby authorized and empowered to incur indebtedness and obligations owing to the DIP Lenders on the terms and subject to the conditions and restrictions set forth in the DIP Term Sheet and this Order, up to the amount of the DIP Facility of GBP £250,000.

C.      Financing Documents.

(1)      Authorization.  The Emergent Debtor is hereby authorized and empowered to (a) enter into, execute, deliver, perform, and comply with (i) any amendment or modification of the DIP Term Sheet that is consistent with this Order and (ii) any security agreements, deeds of trust, notes, control agreements, Uniform Commercial Code financing statements, documents and instruments either or both executed and/or delivered under the DIP Term Sheet and (iii) all of the terms, conditions, and covenants of the DIP Term Sheet and all security agreements, and (b) take and perform all other undertakings and acts required or contemplated by the DIP Term Sheet within the scope of this Order.

(2)      Approval of Financing Documents.  Any amendment or modification of the DIP Term Sheet necessary to effectuate the DIP Facility (and all certificates, reports, statements and other agreements and documents) is approved to the extent necessary to implement the terms and provisions of this Order.

(3)      Application of DIP Facility Proceeds.  The advances under the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Term Sheet, solely

to fund administrative expenses of the Emergent Debtor incurred in connection with the JL Appeal and thereby preserve the value of the Emergent Debtor's Assets.

(4)     Conditions Precedent.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Facility unless the conditions precedent to make such loan or extension of credit under the DIP Term Sheet have been satisfied in full or waived in accordance with the DIP Term Sheet.

D.     Payments and Application of Payments.  Upon the occurrence of the Maturity Date, the DIP Lenders may seek, on expedited notice as necessary, to modify and vacate the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to permit the exercise of rights and remedies under the DIP Term Sheet, applicable law, or this Order, as applicable, and to permit the DIP Lenders to direct the Emergent Debtor to pay all principal, interest, and fees when due, under the DIP Facility and pay or reimburse the DIP Lenders, in accordance with the DIP Term Sheet, for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees, consultant fees, and legal fees and expenses paid or incurred by the DIP Lenders in connection with the transactions under the DIP Facility and this Order, all of which shall be and are included as part of the principal amount of the DIP Obligations; provided that prior to the payment of DIP Lenders' fees and expenses as contemplated in this Section, the DIP Lenders shall send a redacted summary invoice of such fees and expenses (subject in all respects to applicable privilege or work product doctrines) to the Emergent Debtor, the U.S. Trustee and any committee appointed for the Debtor's Estate, and no objection has been raised within ten (10) days of receipt of the summary invoice, and to the extent there is an objection, the Court has resolved the objection.

E.     Interest.  The rates of interest to be charged for the DIP Facility shall be the rates set forth in the DIP Term Sheet and shall be calculated in the manner and payable at the times set forth in the DIP Term Sheet.

**II.     Collateralization and Administrative Claim Status.**

A.     Collateralization.

(1)     DIP Lien Grant.  To secure the prompt payment and performance of any and all DIP Obligations of the Emergent Debtor to the DIP Lenders of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising, the DIP Lenders, shall have and are hereby granted, effective as of the date of the filing of the Motion, valid, binding, enforceable, continuing, non-avoidable and perfected first priority (subject only to any prior liens), security interests and liens in and upon (such security interests and liens collectively, "**DIP Liens**") all property and rights and interests in property of the Emergent Debtor of any kind or nature whatsoever in existence as of the Petition Date or thereafter created or acquired, and wherever located, including without limitation, (a) all accounts and accounts receivable, inventory, chattel paper, securities (whether certificated or uncertificated), equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property, books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds and other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and inter-company claims or receivables (whether or not evidenced by notes) at any time owing to the Emergent Debtor, (b) all real property, leaseholds, rents and profits and proceeds thereof, (c) if not otherwise described, all of the property or rights in property identified as Collateral, (d) all causes of action whether

pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, excluding causes of action arising under Chapter 5 of the Bankruptcy Code (collectively "**Avoidance Actions**") and the proceeds of such Avoidance Actions; and (e) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing (all of the foregoing being sometimes collectively referred to in this Order as "**DIP Collateral**").  Without limiting the foregoing, the DIP Collateral shall include all present and future property of the Emergent Debtor under Section 541(a) of the Bankruptcy Code (including, without limitation, all claims and causes of action of the Emergent Debtor against third parties, excluding the proceeds of Avoidance Actions) and all proceeds thereof.

(2)    The DIP Liens shall be:

a)    Subject only to prior existing liens, pursuant to Bankruptcy Code section 364(c)(2), continuing valid, perfected, enforceable, first priority, and fully perfected liens on and security interests in all of the Emergent Debtor's right, title, and interest in, to, and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest in or lien on the Petition Date ("**Unencumbered Property**");

b)    Subject only to any prior existing lien, including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable, pursuant to Bankruptcy Code section 364(c)(3), a continuing valid, enforceable, second priority, and fully perfected lien on and security interest (other than as set forth in clause (c) below) in all of the Emergent Debtor's right, title, and interest in, to, and under all DIP Collateral which is subject to any valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date, **including any disputed liens asserted by BlockFi to**

**the extent such liens are later found to be valid, perfected, enforceable and non-avoidable**, or validly perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) (collectively, "**Prior Permitted Liens**" and each a "**Prior Permitted Lien**"); and

c)      Subject to any applicable Prior Permitted Liens, pursuant to Bankruptcy Code section 364(d), valid, enforceable, and fully perfected first priority senior priming security interests in and senior priming liens upon all of the Emergent Debtor's right, title, and interest in, to, and under all DIP Collateral; and

d)      Liens Senior to Certain Other Liens.  Notwithstanding anything to the contrary contained in this Order, the DIP Liens shall not be subject or subordinate to any lien or security interest that is avoided or preserved for the benefit of the Emergent Debtor or its Estate under Bankruptcy Code section 551.

(3)      DIP Lien Perfection.  This Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of the Emergent Debtor (a "**Perfection Act**").  Notwithstanding the foregoing, if the DIP Lenders shall, in their sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, the DIP Lenders are authorized to perform such act, and the Emergent Debtor is authorized to perform such act to the extent necessary or required by the DIP Lenders which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to

accept, file or record any document in regard to such act in accordance with applicable law. The DIP Lenders may choose to file, record, or present a certified copy of this Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Order in accordance with applicable law. Should the DIP Lenders so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the DIP liens and security interests granted herein by virtue of the entry of this Order.

B.    <u>Administrative Expense</u>.    For all DIP Obligations, whether now existing or hereafter arising, the DIP Lenders is granted an allowed administrative expense claim in the Emergent Debtor's Estate pursuant to Bankruptcy Code section 364(b) (the "**DIP Administrative Expense Claim**").

III.    **Default; Maturity Date; Rights and Remedies; Relief from Stay**.

A.    <u>Events of Default</u>.    The occurrence of any Event of Default as defined in the DIP Term Sheet shall constitute an "**Event of Default**" under this Order.

B.    <u>Rights and Remedies Upon Event of Default; Maturity Date</u>.

(1)    Upon the occurrence of and during the continuance of an Event of Default that does not also trigger the occurrence of the Maturity Date, and without the necessity of seeking relief from the automatic stay or any further Order of the Court (i) the DIP Lenders shall be entitled to charge the default rate of interest under the DIP Facility and (ii) subject only to the notice requirement set forth below, the DIP Lenders shall be entitled to take any other act or exercise any other right or remedy as provided in this Order, the DIP Term Sheet, or applicable law, including, without limitation, setting off any DIP Obligations with DIP Collateral, or proceeds in the

possession of the DIP Lenders, and enforcing any and all rights and remedies with respect to the DIP Collateral.

(2)    The rights and remedies of the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders may have under the DIP Term Sheet or otherwise and may be exercised in whole or in part in any order.  The fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.

**IV.** **Emergent Debtor's Releases**.

Upon the indefeasible payment in full of all DIP Obligations owed to the DIP Lenders by the Emergent Debtor and termination of the rights and obligations arising under this Order and the DIP Facility (which payment and termination shall be on terms and conditions acceptable to the DIP Lenders), the DIP Lenders shall be automatically deemed absolutely and forever released and discharged from any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims and causes of action arising or occurring in connection with or related to the DIP Facility or this Order (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or secondary, liquidated or unliquidated).

**V.** **Other Rights and Obligations**.

A.    <u>No Modification or Stay of this Order</u>.  Based upon the record presented to the Court by the Emergent Debtor, notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Order or any term hereunder or (ii) the dismissal or conversion of the Emergent Chapter 11 Case, the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Lenders pursuant to Bankruptcy Code section 364(e), this Order, and the DIP Term Sheet.

13

B.      <u>Section 506(c) Waiver</u>.  No costs or expenses of administration which have been or may be incurred in the Emergent Chapter 11 Case at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lenders upon the DIP Collateral) shall be charged against the DIP Lenders, or any of the DIP Obligations or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the DIP Lenders, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to any carve-out).

C.      <u>552(b) Equities</u>.  The DIP Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to DIP Lenders with respect to proceeds, product, offspring, or profits of any of the DIP Collateral, as applicable.

D.      <u>Marshalling</u>.  In no event shall the DIP Lenders be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

E.      <u>Power to Waive Rights; Duties to Third Parties</u>.  The DIP Lenders shall have the right, in their respective sole discretion, to waive any of the terms, rights and remedies provided or acknowledged in this Order ("**<u>Funder Rights</u>**") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Funder Right(s).  Any waiver by the DIP Lenders of any Funder Rights shall apply solely to the Funder Right so waived and shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Funder Right shall neither constitute a waiver of such Funder Right, nor

14

cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Emergent Debtor to the DIP Lenders.

F.      <u>Disposition of Collateral</u>.  The Emergent Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the consent of the DIP Lenders.

G.      <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Order are in addition to and without prejudice to the rights of the DIP Lenders to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Term Sheet, or any other applicable agreement or law, including, without limitation, rights to seek either or both adequate protection and additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation to a Retained Professional or other parties seeking compensation or reimbursement from the Estate.

H.      <u>Modification of the Automatic Stay</u>.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order and the DIP Facility, including without limitation the application of collections, authorization to make payments, granting of liens, and perfection of liens.

I.      <u>Binding Effect</u>.

(1)      The provisions of this Order, the DIP Term Sheet, the liens and claims, and any and all rights, remedies, privileges and benefits in favor of the DIP Lenders, provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full

force and effect, and shall survive entry of any such other order, including, without limitation, any order which may be entered confirming any plan of reorganization, converting the Emergent Chapter 11 Case to any other chapter under the Bankruptcy Code, or dismissing the Emergent Chapter 11 Case.

(2)    Any order dismissing the Emergent Chapter 11 Case under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the DIP Lenders' liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Administrative Expense Claim and/or the DIP Liens in favor of the DIP Lenders in the DIP Collateral.

(3)    This Order shall remain in full force and effect, shall be binding upon the Emergent Debtor, its Estate, all parties in interest in the Emergent Chapter 11 Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Emergent Chapter 11 Case or any subsequently converted bankruptcy case of the Emergent Debtor and shall inure to the benefit of the DIP Lenders, the Emergent Debtor, and their respective successors and assigns, subject to the rights of any Chapter 11 or Chapter 7 trustee (collectively, a "**Successor Case**").

J.    <u>Proofs of Claim</u>.  Notwithstanding the entry of an order establishing a bar date in the Emergent Chapter 11 Case or the conversion of the Emergent Chapter 11 Case to a case under chapter 7 or the Bankruptcy Code, the DIP Lenders shall not be required to file proofs of claim in the Emergent Chapter 11 Case or any Successor Case with respect to any of the DIP Obligations,

DIP Liens, DIP Administrative Expense Claim or any other claims or liens granted hereunder or created hereby.

K.      <u>Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h)</u>.  The 21-day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a), and the 14-day stay of 6004(h) are hereby waived.

L.      <u>Order Controls</u>.  Unless this Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Facility, or (b) the terms and provisions of this Order, then in each case the terms and provisions of this Order shall govern.

M.      <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

N.      <u>Objections Overruled</u>.  All objections to the entry of this Order are, to the extent not resolved or withdrawn, hereby overruled.

**<u>EXHIBIT 1</u>**

**DIP Term Sheet**



**SUMMARY OF TERMS AND CONDITIONS FOR
DEBTOR-IN-POSSESSION FACILITY**

Dated October 6, 2023

| | |
|---|---|
| Lenders, Administrative Agent and Collateral Agent: | FULCRUM DISTRESSED PARTNERS LIMITED, a limited company organized under the laws of the British Virgin Islands, and/or its designees |
| Borrower: | Emergent Fidelity Technologies Ltd, as debtor-in-possession. |
| Bankruptcy Code: | Title 11 of the United States Code, Section 101 et seq., as the same may be amended, modified or supplemented from time to time, and any successor statute thereto (the "Bankruptcy Code"). |
| Cases: | (a) Chapter 11 proceeding in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), styled as *In re Emergent Fidelity Technologies Ltd.*, Debtor and Debtor-in-Possession, Case No. 23-10149-JTD (Jointly Administered) (the "Bankruptcy Case") and (b) that certain proceedings (the Antigua Proceedings") under the International Business Corporations Act, CAP 222, in the Eastern Caribbean Supreme Court in the High Court of Justice Antigua and Barbuda (the "Antigua Court"). |
| Petition Date: | February 3, 2023 |
| Prepetition Liquidation Funding Agreement: | That certain Liquidation Funding Agreement dated February 2, 2023 (as amended, supplemented or otherwise modified and in effect, the "Existing Credit Agreement") among Borrower and Lenders. Capitalized terms used without further definition herein shall have the respective meanings set forth in the Existing Credit Agreement. Nothing contained herein or the DIP Facility (as defined below) shall in any way reduce, discharge, impair or affect Agent's and Lenders' rights and claims under and with respect to the Existing Credit Agreement. |
| | As of the Petition Date (as defined below), the aggregate amount of all loans, letter of credit obligations and other Prepetition Obligations (as defined below) owing by Borrower to Lenders under and in connection with the Existing Credit Agreement was not less than [$11,129,707.20], consisting of (A) principal funding return (including the 5% Administration Fee) in the aggregate principal amount of not less than [$11,054,707.20], plus interest accrued and accruing thereon and (B) Closing Fees in the aggregate amount of not less than $75,000, together with all costs, fees, expenses (including attorneys' fees and legal expenses), and other charges accrued, accruing or chargeable with respect thereto (together with all other obligations in the Existing |

| | |
|---|---|
| | Credit Agreement existing immediately prior to the Petition Date, collectively, the "Prepetition Obligations"). |
| | As of the date hereof, the aggregate amount outstanding under the Existing Credit Agreement is not less than **$12,160,177.92.** The Principal Funding Return shall continue to accrue pursuant to the Liquidation Funding Agreement as follows: |
| | After 10/30/2023 - $13,265,648.64 |
| | After 1/28/2024 - $14,371,119.36 |
| DIP Facility Type and Amount: | A senior secured, superpriority debtor-in-possession credit facility pursuant to this Summary of Terms and Conditions and the Order (the "DIP Facility"), consisting of an amount equal to the New Money Amount (as defined below). |
| DIP "New Money" Amount | Initial Funding Amount of GBP £250,000 (the "New Money Amount"). |
| DIP Obligations: | All advances, debts, obligations, liabilities, covenants and duties of Borrower to Agent and Lenders of every kind and description, however evidenced, whether direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, primary or secondary, liquidated or unliquidated, arising on and after the Petition Date and whether arising on or after any conversion or dismissal of the Cases, or before, during and after the confirmation of any plan of reorganization in the Bankruptcy Case, and whether arising under or related to this Summary of Terms and Conditions, the Order, by operation of law or otherwise, and whether incurred by such Borrower as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, debtor- in-possession facility fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing. |
| Term: | The Obligations shall be repaid in full at the earliest of (i) the 450th day from the Petition Date (the "Maturity Date"), (ii) the Termination Date (as defined below), and (iii) the conversion of any of the Bankruptcy Case to a Chapter 7 proceeding or dismissal of the Antigua Proceeding. |
| Use of Proceeds: | The proceeds of the New Money Amount portion of the DIP Facility shall be used solely for the payment of litigation expenses in Antigua. The Borrower and its legal and financial advisors shall also make themselves generally available to the Lenders on an on-going basis and give regular reports to the Lenders. |
| Application of Payments and Collections: | 100% of the proceeds of any sale of, or other realization upon, all or any part of the DIP Collateral received by the Borrower or its estate from any source (including, but not limited to, the United States Department of Justice or any of the Debtor or creditors in the Bankruptcy Case) shall be applied to repayment of the New Money Amount plus, in each case, |

| | |
|---|---|
| | interest, returns, and fees until repaid in full and the DIP Facility has been terminated. |
| Return on DIP New Money Amount: | Equal to principal outstanding amount of the funded DIP New Money Amount plus: <br><br> • 150% of the principal outstanding amount of the funded DIP New Money Amount if repaid before 180 days following the date the Funding Amount is funded (the "Funding Date"); <br><br> • 175% of the principal outstanding amount of funded DIP New Money Amount if repaid after 180 days but before 270 days following the Funding Date; <br><br> • 200% of the principal outstanding amount of funded DIP New Money Amount if repaid after 270 days but before 360 days following the Funding Date; and <br><br> • 225% of the principal outstanding amount of funded DIP New Money Amount if repaid after 360 days following the Funding Date |
| Default Interest Rate: | 5.00% |
| Payments and Pre-payments: | Borrower hereby authorize Agent to charge the DIP Facility from time to time for any and all amounts due and owing with respect to the DIP Obligations (including, without limitation, interest, costs, fees and expenses). There shall be no penalties for any early pre-payments. Upon Event of Default, 100% of all proceeds from DIP Collateral shall be immediately paid to Agent for application as described herein. |
| DIP Collateral: | Collectively, all now existing and hereafter acquired real and personal property of the Debtor's estate, wherever located, of any kind, nature or description, including any such property in which a lien is granted to Agent pursuant to this Summary of Terms and Conditions, the Order or any other order entered or issued by the Bankruptcy Court, and shall include, without limitation: (i) all accounts; (ii) all inventory of every nature and kind, wherever located; (iii) all general intangibles of every kind and description, including, without limitation, customer lists, chooses in action, claims, books, records, goodwill, patents and patent applications, copyrights, trademarks, tradenames, service marks, tradestyles, trademark applications, trade secrets, contracts, contract rights, indemnification claims (including, without limitation, any and all indemnification claims arising under, in connection with, or otherwise related to, any acquisition documents), royalties, licenses, franchises, deposits, license, franchise and royalty agreements, formulae, tax and any other types of refunds, returned and unearned insurance premiums, rights and claims under insurance policies including without limitation, credit insurance and key man life insurance policies, and computer information, software, records and data; (iv) all equipment, including, without limitation, machinery, vehicles, furniture and Fixtures, including all of |

| | |
|---|---|
| | each Debtor's motor vehicles, wherever located, and all replacements, parts, accessories, substitutions and additions thereto; (v) all deposit accounts (other than payroll accounts and trust accounts), reserves and credit balances of every nature, wherever located, and all documents and records associated therewith; (vi) all personal property of the Debtor, now or hereafter in the possession of Agent or any Lender; (vii) all investment property of every kind; (viii) all letter of credit rights; (ix) all commercial tort claims; (x) all real property; (xi) all instruments and other notes receivable, goods, chattel paper, documents (including bills of lading, warehouse receipts and other documents of title), payment intangibles, guarantees, supporting obligations, letters of credit, rights of rescission, stoppage in transit, replevin, and reclamation, and returned, reclaimed and repossessed goods and all of such Debtor's other real and personal property; (xii) upon entry of the Order, proceeds with respect to all preference actions and other avoidance actions; and (xiii) the Proceeds (including, without limitation, insurance proceeds), whether cash or non-cash, of all of the foregoing personal property and interests in personal property.  The Prepetition Collateral and the DIP Collateral are collectively referred to as the "Collateral."  Debtor hereby grants to Agent, for the pro rata benefit of Lenders, a continuing Lien on and security interest in, upon, and to all of the DIP Collateral to secure the Obligations, subject only to any valid, enforceable security interest existing on such Collateral on the date of the DIP Facility and only to the extent of any such existing security interest. |
| Priority and Security of Collateral: | Upon entry of an order granting approval of the DIP Facility in form and substance satisfactory to Agent, including a Section 506(c) waiver (the "Order"), DIP Obligations shall be:<br><br>(a) pursuant to section 364(c)(2) of the Bankruptcy Code, secured by a perfected first-priority lien on the DIP Collateral to the extent that such Collateral is unencumbered or subject to invalid, unperfected, unenforceable or avoidable liens;<br><br>(b) pursuant to section 364(c)(3) of the Bankruptcy Code, secured by a perfected **second-priority lien on the DIP Collateral to secure the DIP Obligations to the extent such Collateral is subject to any liens that are (x) valid, perfected, enforceable and non-avoidable on the Petition Date, including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable, or (y) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code** (together with (a), the "DIP Liens"); and<br><br>(c) to the extent applicable under section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the chapter 11 case of the Debtor with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the |

| | |
|---|---|
| | kind specified in sections 503(b) or 507(a) of the Bankruptcy Code. |
| Initial Closing Conditions: | The availability of the DIP Facility shall be conditioned upon satisfaction of, among other things, the following conditions precedent on a basis satisfactory to Agent:<br><br>1. Entry by the Bankruptcy Court of an order, in form and substance satisfactory to Agent, authorizing and approving the transactions contemplated in this Summary of Terms and Conditions (including but not limited to the superpriority status contemplated herein) within thirty (30) days of the date hereof , and finding that Agent and Lenders are extending credit to Borrower in good faith within the meaning of Section 364(e) of the Bankruptcy Code (in the Bankruptcy Case) and comparable statutes under Antigua law (in the Antigua Proceeding).<br>2. Execution and delivery by Debtor of this Summary of Terms and Conditions and all documentation in respect of the DIP Facility required hereunder, satisfactory in all respects to Agent.<br>3. Payment of all reasonable fees, costs and expenses (including attorneys' fees) owing to Agent and Lenders in connection herewith.<br>4. No trustee or examiner shall have been appointed with respect to Debtor, or any of them, or any property of the Debtor.<br>5. There shall have been no material adverse change.<br>6. Other than the Cases, litigation with Samuel Bankman-Fried concerning the Antiguan proceedings, and litigation with BlockFi debtors or FTX debtors concerning competing claims to Debtor's assets, there shall be no material pending or threatened litigation, proceeding, bankruptcy or insolvency, injunction, order or claim with respect to Borrower, or any of them.<br>7. Lender shall have received the final approval of its loan/investment committees in connection with the DIP Facility.<br>8. As a condition to the effectiveness of the DIP Facility and as adequate protection for Agent and Lenders, Debtor's agreement not to seek relief under Bankruptcy Code section 1129(b) or any comparable law in Antigua with respect to the Existing Credit Agreement and the transactions contemplated by this Summary of Terms and Conditions.<br>9. Such other conditions as are required by Agent and are customary in the context of this type of financing. |
| Representations and Warranties: | Until such time as the final documentation for the DIP Facility (which shall contain representations, warranties, covenants and events of default customary for financings of this type and other terms deemed appropriate by Agent) has been executed, delivered and becomes effective in connection with an Order, the representations, warranties, covenants and events of default incorporated herein shall be deemed to be in full force and effect with respect to the DIP Facility, including without limitation as set forth in the Existing Credit Agreement, modified as necessary to reflect the commencement of the Cases. |

| Events of Default: | (a)Debtor's failure to obtain entry of an Order which is not subject to any appeal, stay, vacation or reconsideration within thirty (30) days after the date hereof; (b) nonpayment of principal when due; (c) nonpayment of interest, fees or other amounts when due; (d) inaccuracy or breach of representations and warranties arising from facts first occurring on or after the date of the commencement of the Cases; (e) violation of covenants (including covenants contained herein), arising from facts first occurring on or after the commencement of the Cases (other than the commencement of the Cases); (f) the occurrence of certain ERISA events; (g) the existence of judgments not subject to the automatic stay; (h) the entry of an order invalidating any security document in connection with the Existing Credit Agreement or the DIP Facility, or if the Debtor asserts the invalidity of any such security document; (i) the occurrence of a change of control (as defined in the Existing Credit Agreement); (j) the entry of an order dismissing any Case or converting the Bankruptcy Case to a Chapter 7 case, either voluntarily or involuntarily; (k) the entry of an order appointing a trustee in the Bankruptcy Case; (l) the entry of an order granting any other superpriority claim or lien equal or superior in priority to that granted Agent, for the benefit of Lenders; (m) the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any asset or assets of the Debtor; (n) the entry of an order staying, reversing, vacating or otherwise modifying the DIP Facility or the Order; (o) the entry of an order appointing an examiner having enlarged powers (beyond those set forth under Bankruptcy Code §1106(a)(3) and (4)) or any other fiduciary or representative of the estate with decision-making or other management authority; (p) the impairment of any collateral security; (q) the commencement of litigation by any government or regulatory authority against the Debtor; (r) the occurrence of any act, condition or event occurring after the date hereof that has or would reasonably expect to have a material adverse effect upon the assets of the Debtor, or the Collateral or the rights and remedies of Agent and Lenders under the Existing Credit Agreement, this Summary of Terms and Conditions, or the Order; (s) the termination or rejection, or the filing by the Debtor of a motion terminating or rejecting, material contracts except those approved by Agent; (t) any change shall occur, or be ordered, with respect to Borrower's existing, prepetition cash-management system, or existing, prepetition bank accounts; (v) proposal or confirmation of a plan of reorganization unless such plan as proposed or confirmed provided for indefeasible payment in full in cash of all Obligations at confirmation and is otherwise acceptable to Agent and Lenders; (w) any order providing for the sale of any assets of the Debtor shall be entered by the Bankruptcy Court and/or the Antigua Court unless, upon the consummation of such sale transaction, all prepetition liens are transferred to the proceeds of such sale and, subject to the Prior Permitted Liens (as defined in the Proposed Order), such proceeds are received at closing therein by Agent and applied to permanently and indefeasibly pay the obligations under the DIP Facility and the Existing Credit Agreement; (x) any order providing for the sale of any assets of the Debtor shall be entered by the Bankruptcy Court and/or the Antigua Court unless (A) upon the consummation of such |
|---|---|

| | |
|---|---|
| | transaction, the obligations under the DIP Facility, Existing Credit Agreement and Existing Credit Agreement are permanently and indefeasibly paid in full, in cash, or (B) Agent has consented to such sale; (y) any motion by the Debtor to approve bidding procedures for the sale of any assets of the Debtor that constitutes Collateral fails to provide, pursuant to Section 363(k) of the Bankruptcy Code, that the Agent and Lenders shall have the right to credit bid; (z) Borrower suspends or discontinues or is enjoined by any court or governmental agency from continuing to conduct all or any part of its business without Agent's prior written consent, or a trustee, receiver or custodian (other than the Joint Liquidators) is appointed for Borrower or any of its properties; (aa) the entry of an order for the obtaining of credit or incurring of debt other than pursuant to the DIP Facility; or (bb) the filing of any pleading by the Debtor seeking, or otherwise consenting to any of the matters set forth above (each of the foregoing, an "Event of Default").  The Agent and Required Lenders, may, in their sole discretion, waive any Events of Default under the DIP Facility. |
| Termination: | Upon the occurrence of an Event of Default, Agent, at the direction of Lenders, may terminate permanently as of a date certain the DIP Facility (the date of any such termination, the "Termination Date"), declare the DIP Obligations to be immediately due and payable and exercise all rights and remedies provided for hereunder and under the Prepetition Financing Documents, or the Order, as applicable. |
| Remedies: | Agent and Lenders shall have customary remedies, including, without limitation, the right (after providing three business days' prior notice to Debtor and any statutory committee of the occurrence of the Termination Date) to realize on the DIP Collateral without the necessity of obtaining any further relief or order from the Bankruptcy Court or the Antigua Court.  The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies hereunder, and under the Order, and with respect to the DIP Collateral. |
| Cash Management: | Borrower shall maintain a cash management system as under the Prepetition Financing Documents. |
| Expenses and Indemnification: | Borrower shall pay on demand (a) all reasonable out-of-pocket expenses of Agent and Lenders associated with the negotiation, preparation, execution, delivery and administration of this Summary of Terms and Conditions, the DIP Facility, all agreements and documents related hereto and any amendments or waivers with respect thereto (including the reasonable fees, disbursements and other charges of counsel and consultants), (b) all reasonable out-of-pocket expenses of Agent and Lenders (including the fees, disbursements and other charges of counsel) in connection with the enforcement of the DIP Facility and the preservation, protection and defense of their rights under with DIP Facility and with respect to the Cases, (c) review of the docket pleadings and all filings in respect of any Case, and monitoring of the Cases and attendance at hearings in respect of each Case and (d) the administration, monitoring and collection of the DIP Facility and all other amounts due hereunder, including, without limitation, all filing and recording fees and reasonable attorneys', financial advisors', auditors', accountants', collection agents', appraisers', and other professional fees incurred in |

| | |
|---|---|
| | connection with each of the foregoing.  Agent and Lenders (and their respective affiliates, officers, directors, employees, advisors and agents) will have no liability for, and will be indemnified and held harmless against, any loss, liability, cost or expense incurred in respect of the postpetition financing contemplated hereby or the use or the proposed use of the proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party). |
| Governing Law: | State of New York except to the extent governed by the Bankruptcy Code or Antigua law. |
| Release: | Debtor shall release all claims of any type or nature that arise out of, or relate to, the prepetition financial accommodations extended by the Existing Credit Agreement.  Such release (the "Release") shall be binding on Debtor, and any successors in interest and all parties in interest in the Cases except that any party in interest (other than Debtor) may, on or before 30 days from the date the Order is entered in the Bankruptcy Case, file an objection or a complaint, as required in accordance with applicable law and rules, with respect to the validity, perfection or amounts of the prepetition secured claims of the Agent and Lenders. If no such objection or complaint is timely and properly filed, the claims under the Existing Credit Agreement shall become final and binding and such statutory committee and any other party in interest shall be bound by the Release and barred from challenging the Lenders' and the Agent's liens and security interests. |
| Acknowledgment: | Debtor shall acknowledge (i) the DIP Obligations, and (ii) the validity, extent and priority of the liens and obligations of the Agent and Lenders under the Existing Credit Agreement, subject only to the rights of any statutory committee and any other party in interest (other than Debtor) to timely challenge such prepetition indebtedness, liens and obligations, but subject in all respect to the time and other limitations set forth above with respect to the Release. |
| Entire Agreement: | The Parties agree that (a) no member, general or limited partner of Lender or Agent shall be personally liable for any obligation or liability under this Term Sheet, and (b) all obligations and liabilities of Lender and Agent pursuant to the Term Sheet are enforceable solely against the applicable party and that party's assets and not against any assets of any member, general or limited partner of such party.  This Term Sheet constitutes the entire agreement by the Parties hereto and supersedes any other agreement, whether written or oral.  Any argument that ambiguities are to be resolved against the drafting party is hereby expressly waived by the Parties. This Term Sheet shall be deemed to have been drafted by each of the Parties, and each of the provisions thereof shall be construed without regard to any presumption or other rule requiring construction against the Party drafting such provisions |

[SIGNATURE PAGE FOLLOWS]

Please sign below and return this letter by email to trading@fulcruminv.com with a copy to tbennett@fulcruminv.com.  Should you have any questions regarding this matter, please contact Fulcrum's General Counsel, Timothy C. Bennett, at (857) 444-5579.

Sincerely,

**FULCRUM DISTRESSED PARTNERS LIMITED**


By:  /s/  *Matthew Hamilton*
Name: Matthew Hamilton
Title: Co-Founder


*Accepted and Agreed:*

**EMERGENT FIDELITY TECHNOLOGIES LTD**


By:  /s/  *Angela Barkhouse*
Name: Angela Barkhouse
Title: Joint Liquidator of Emergent Fidelity Technologies Ltd