## <u>EXHIBIT B</u>

**Barkhouse Declaration in Support of DIP Motion**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
| | ) |
| Debtors. | ) (Lead Case) |
| | ) |
| | ) (Jointly Administered) |
| | ) |

**DECLARATION OF ANGELA BARKHOUSE**
**IN SUPPORT OF EMERGENT DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**APPROVING POSTPETITION FINANCING AND GRANTING RELATED RELIEF**

I, Angela Barkhouse, declare under penalty of perjury:[2]

1.      I am a Managing Director of Quantuma (Cayman) Limited, part of the Quantuma group, a financial, restructuring, and forensic advisory firm that operates in various locations around the world, including in the Caribbean. I am a resident of the Cayman Islands. My colleague Toni Shukla of Quantuma (BVI) Limited (a resident of the British Virgin Islands) and I are the Joint Liquidators (the "JLs") of Emergent Fidelity Technologies Ltd (the "Debtor").

2.      I am authorized to submit this declaration (the "Declaration") on behalf of the Debtor. The information contained in this Declaration is based on my personal knowledge, my discussions with the Debtor's professionals, and my review of the files related to the Emergent Chapter 11 Case. I submit this Declaration in support of *Emergent Debtor's Motion for Entry of an Order Approving Postpetition Financing and Granting Related Relief* (the "DIP Motion").

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Motion.

3.     On February 3, 2023 (the "Petition Date"), the Debtor, under the control of the JLs, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Emergent Chapter 11 Case") with the United States Bankruptcy Court for the District of Delaware (the "Court").  The Emergent Chapter 11 Case is jointly administered with the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors ("FTX"), *In re FTX Trading, Ltd., et al.*, Case No. 22-11068 (JTD).[3]

4.     The Debtor is an Antiguan company formed and formerly controlled by Samuel Bankman-Fried ("SBF"), the founder of various now-bankrupt crypto companies, including FTX. The Debtor is the owner and was the record holder of approximately 55 million shares of Robinhood Markets, Inc. (the "Assets"), which have now been converted to cash and are being held by the DOJ pending the outcome of the SBF criminal proceeding.[4]

5.     As set out in the First Day Declaration, the Debtor and its Assets are subject to several alleged claims and security interests.  To protect the Debtor's interests in its Assets required litigation in several proceedings in several courts, which in turn required funding.  The JLs sought and obtained funding for the Debtor, ultimately entering into the Prepetition Loan Documents on February 2, 2023.  On the same day, the Antiguan Court entered an order approving the Prepetition Loan Documents.  All of the proceeds of such loans were used to fund fees, expenses, and other accrued costs of litigation in the U.S. and Antigua.

6.     SBF no longer controls the Debtor.  On November 18, 2022, the Eastern Caribbean Supreme Court, High Court of Justice, Antigua and Barbuda (the "Antiguan Court"), entered an order (the "Receivership Order") appointing Ms. Shukla and me as Receivers over the Assets and

---

[3] D.I. 91, Case No. 23-10149; D.I. 1469, Case No. 22-11068.

[4] *United States v. Samuel Bankman-Fried*, Case No. 1:22-cr-00673 (LAK), ECF 242 (S.D.N.Y. Sept. 1, 2023).

SBF's equity interests in the Debtor (the "<u>Receivership Proceeding</u>");[5] on December 5, 2022, the Antiguan Court placed the Debtor into provisional liquidation (the "<u>Liquidation Proceeding</u>") and appointed Ms. Shukla and me as Joint Provisional Liquidators ("<u>JPLs</u>") to wind up the Debtor's affairs (the "<u>JPL Order</u>");[6] on March 23, 2023, the Antiguan Court placed the Debtor into full liquidation (as confirmed by the Antiguan Court Order dated July 14, 2023, the "<u>JL Order</u>") and appointed Ms. Shukla and me as the JLs.  A true and correct copy of the JL Order is attached hereto as **<u>Exhibit 1</u>**.

7.  Since the commencement of the Receivership Proceeding, however, SBF has engaged in a campaign of repetitive and vexatious litigation in Antigua, with the goal of attempting to regain control of the Debtor.  Specifically, while indicted and awaiting trial, SBF has challenged the JLs' appointment as JPLs and as Receivers on various grounds:

a)  On December 12, 2022, SBF filed applications to (i) discharge the Receivership Order and (ii) stay the Liquidation Proceeding pending his challenge to the Receivership Order.  On December 28, 2022, the Antiguan Court rejected SBF's application to stay the Liquidation Proceeding and reaffirmed the JPLs' powers holding that "it is of utmost importance that neither BlockFi[7] nor [SBF] have any control of the [Debtor's] asset[s] pending final determination of its ultimate status[,]" and that "it is not appropriate that they are placed in control of those matters."[8]  The Antiguan Court also ordered SBF to pay fees and costs to the Receivers (the "<u>December 28th Order</u>").

b)  In January 2023, SBF filed applications for, among other things, (i) leave to appeal the December 28th Order, (ii) an adjournment of any further hearing in the Liquidation Proceeding pending appeal, and (iii) an urgent hearing for his appeal.

c)  On January 27, 2023, the Eastern Caribbean Court of Appeal (the "<u>Court of Appeal</u>") *sua sponte* granted SBF's application for leave to appeal the December

---

[5] The Receivership Order is attached as <u>Exhibit A</u> to the *Declaration of Angela Barkhouse in Support of the Debtor's Chapter 11 Petition* (the "<u>First Day Declaration</u>") [D.I. 3, Case No. 23-10149].

[6] The JPL Order is attached as <u>Exhibit B</u> to the First Day Declaration.

[7] As set out in the First Day Declaration, BlockFi has appeared in the Antiguan proceedings as an interested party.

[8] Transcript of the Antiguan Court's decision, dated December 28, 2022, recording the hearing held before the Honorable Darshan Ramdhani, Eastern Caribbean Supreme Court, High Court of Justice, Antigua and Barbuda, 20:15-20:20.  A true and correct copy of the transcript is attached hereto as **<u>Exhibit 3</u>**.

28th Order (the "January 27th Order"). The January 27th Order purportedly stayed the Liquidation Proceeding; however, the stay did not have the effect of staying the JPLs' powers.

d)       On February 3, 2023—the date on which the Debtor filed its chapter 11 petition with this Court—SBF filed an application with the Court of Appeal seeking to stay the JPLs' powers pending his appeal. On the same day, the Court of Appeal lifted the stay imposed by the January 27th Order and clarified that the January 27th Order had no impact on the JPLs' powers, including the power to file chapter 11 on behalf of the Debtor.

e)       Between December 2022 and January 2023, SBF filed numerous applications and papers in both the Receivership Proceeding and the Liquidation Proceeding, with the ultimate goal of lifting the stay in the Receivership Proceeding. On February 21, 2023, the Antiguan Court partially granted one of SBF's applications and allowed SBF to take further actions in the Receivership Proceeding (but not the Liquidation Proceeding).

f)       On March 2, 2023, SBF filed an application to annul or waive the requirement to post security pending his appeal. The Court of Appeal denied SBF's application on March 8, 2023.

g)       On March 22, 2023, the Court of Appeal entered an order dismissing SBF's appeal of the December 28th Order and SBF's application for a stay of the JPLs' powers pending appeal, and awarded fees and costs to the Receivers (the "March 22nd Order"). The Court of Appeal automatically dismissed SBF's appeal.

h)       On March 24, 2023, SBF moved to compel the Receivers to provide security for his appeal in the amount of $200,000. On April 14, 2023, the Court of Appeal denied SBF's application and ordered SBF to pay additional fees and costs to the Receivers (the "April 14, 2023 Order").

i)       To date, SBF has not complied with any of the Orders (*e.g.*, the December 28th Order, the March 22nd Order, and the April 14, 2023 Order) compelling SBF to pay fees and costs to the Receivers.

A detailed summary of SBF's activity in Antigua is attached hereto as **Exhibit 2**.

8.       The JLs' duties are to the Debtor's creditors, whoever those creditors may be. SBF, however, is attempting to undermine the administration of the Debtor's estate and shift the Assets for his own benefit. In March 2023, the JLs, through the Debtor's counsel, shared with SBF's counsel their serious concerns about, among other things, the way in which SBF appears to be

funding his campaign against the JLs.  Significant costs have been awarded by court order against

SBF, in favor of the Receivers/JLs, none of which SBF has paid.  Meanwhile, the JLs continue to

incur litigation costs while SBF continues to abuse judicial resources by filing repetitive and

meritless claims in Antigua.

9.      For the avoidance of doubt, almost all of SBF's claims have been denied, dismissed

or otherwise disposed of in the JLs' favor.  The only material exception to SBF's series of defeats

in the Antiguan Court is a carve-out from the litigation stay within the JL Order that permits SBF

to take further actions related to the Receivership Proceeding (but not the Liquidation Proceeding).

The JLs believe such stay relief was premature and procedurally improper and are seeking clarity

on the scope and effect of that order (the "<u>JL Appeal</u>").  The JL Appeal is scheduled to be heard

by the Court of Appeal during the week of October 23, 2023.  SBF has made it clear that the only

reason he wishes to lift the stay in the Receivership Proceeding, so far as it regards himself, is to

regain control of the Debtor.  It is therefore essential that the Debtor be able to move forward with

the JL Appeal.

10.     While the Debtor has enjoyed productive working relationships with its Antiguan

counsel, the Debtor cannot take the material risk that these counsel will refuse to perform further

if their fees and expenses are not paid.  Without active representation by counsel, the Debtor risks

losing the instant appeal by default.  It would then be unable to protect itself from the consequences

thereof, which could extend to SBF arguably regaining control of the Debtor and then attempting

to avoid the JLs' actions to date on behalf of the Debtor's creditors—not to mention that the Debtor

could become generally unable to defend its creditors' interests in the U.S. and Antigua.

11.     To avoid these disastrous results, the JLs, on behalf of the Debtor, secured from

Fulcrum Distressed Partners Limited (together with its assigns and successors in their capacity as

the postpetition lenders, the "DIP Lenders") a short-term, senior secured debtor-in-possession credit facility (the "DIP Facility") in an aggregate principal amount for GBP £250,000 (approximately USD $302,000 as of the filing of this Declaration). The DIP Facility is subject to the terms and conditions of the DIP Documents as set forth in the DIP Motion.

12. The DIP Facility will ensure that the Debtor has sufficient funds to continue to defend itself against SBF, and most importantly to succeed with the JL Appeal.

13. I have personally contacted several other potential sources of funding, and I do not believe DIP financing would be available from any other source on the same or better terms. Accordingly, I have determined that the proposed DIP Facility represents the best and only source of financing available to the Debtor. I believe that other sources of financing are not readily available because substantially all of the Debtor's Assets are being held by the DOJ and are encumbered by disputed liens asserted by BlockFi, as well as liens arising under the Prepetition Loan Documents. In summary, the Debtor's determination to move forward with the DIP Facility is an exercise of its sound business judgment following an arm's-length process and careful evaluation of alternatives.

14. I believe that the terms and conditions of the DIP Facility and the DIP Loan Documents (i) are fair, reasonable, and the best available to the Debtor under the circumstances, (ii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.

15. For those foregoing reasons, the JLs respectfully request that the Court approve the relief requested in the DIP Motion on an emergency basis, so the Debtor may obtain immediate access to liquidity needed to prosecute the JL Appeal and otherwise protect the interests of its creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  October 6, 2023

_____

Angela Barkhouse

**<u>EXHIBIT 1</u>**

**JL Order**

**Case Number :ANUHCV2022/0480**

FILED

HIGH COURT

ANTIGUA AND BARBUDA

THE EASTERN CARIBBEAN SUPREME COURT
   IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA

CLAIM NO. ANUHCV 2022/0480

Submitted Date:14/07/2023 14:47

Filed Date:14/07/2023 14:47

Fees Paid:27.00

IN THE MATTER OF EMERGENT FIDELITY TECHNOLOGIES LTD
AND IN THE MATTER OF THE INTERNATIONAL BUSINESS CORPORATIONS ACT, CAP. 222
BETWEEN:

ANGELA BARKHOUSE AND TONI SHUKLA
(AS RECEIVERS OF SHARES IN EMERGENT FIDELITY TECHNOLOGIES LTD)

**Petitioners/ Applicants**

- and -

EMERGENT FIDELITY TECHNOLOGIES LTD

**Respondent**

- and -

SAMUEL BENJAMIN BANKMAN-FRIED

**1st Interested Party**

BLOCKFI INC.

**2nd Interested Party**

---

**ORDER**

---

BEFORE:    The Honourable Justice Rene Williams (In Chambers)

DATED:     10th day of July 2023

ENTERED:   The 12th day of July, 2023

Appearances at hearing of Petition:

Mr. David Joseph K.C. with Kendrickson Kentish and Kathleen Bennett for the Petitioners

Dr. David Dorsett with Jarid Hewlett for the 1st Interested Party

1

**Mr. Lenworth Johnson for the 2ⁿᵈ Interested Party**

**UPON** the Applicants on 2 December 2022 having filed a Petition to wind up the Respondent, Emergent Fidelity Technologies Ltd ("**Emergent**"), under the provisions of the International Business Corporations Act, Cap. 222 (the "**Act**") (the "**Petition**")

**AND UPON** the Applicants having applied by application dated 2 December 2022 for an order that Ms Angela Barkhouse and Ms Toni Shukla be appointed as joint provisional liquidators of Emergent, pending the determination of the Petition

**AND UPON** Ms Angela Barkhouse and Ms Toni Shukla having been appointed as the joint provisional liquidators of Emergent (the "**JPLs**"), pending the determination of the Petition, by order of The Honourable Justice Darshan Ramdhani K.C. [Ag.] dated 5 December 2022 (the "**PL Order**")

**AND UPON** the order of The Honourable Justice Darshan Ramdhani K.C. [Ag.] dated 28 December 2022 (the "**28 December Order**"), dismissing the 1ˢᵗ Interested Party's urgent application dated 12 December 2022 for an order that the Petition be stayed (the "**Stay Application**") and granting various directions for the case management of the Petition and various other relief

**AND UPON** The Honourable Justice Darshan Ramdhani K.C. [Ag.] having declared, as recorded at paragraph 3 of the 28 December Order, that for the purposes of the presentation of the Petition as shareholders of 90% of the shares of Emergent pursuant to the receivership order of the Court made on 18 November 2022 in **Claim No. ANUHVC2022/0456**, the receivers appointed by that order shall have standing to present the Petition

**AND UPON** the 1ˢᵗ Interested Party having appealed against the decision of The Honourable Justice Darshan Ramdhani K.C. [Ag.] dismissing the Stay Application, specifically on the basis that the declaration recorded at paragraph 3 of the 28 December Order was wrong (**Claim No. ANUHCVAP 2023/0002**) (the "**Appeal**")

**AND UPON** the Appeal having been dismissed automatically with costs, pursuant to CPR rule 62.17(4), following the 1ˢᵗ Interested Party's failure to provide security for costs by 4pm on 22

March 2023 as required by the order of Mario Michel JA dated 1 March 2023 (as varied by paragraph 1 of the order of the full Court of Appeal dated 8 March 2023)

**AND UPON** an Amended Notice of Acting, filed on 12 December 2022, by which the 2nd Interested Party claimed to be a creditor of Emergent and asserted its intention to oppose the Petition

**AND UPON HEARING** Mr. David Joseph K.C. with Kendrickson Kentish and Kathleen Bennett for the Petitioners, Dr David Dorsett with Jarid Hewlett for the 1st Interested Party, and Mr. Lenworth Johnson for the 2nd Interested Party

**AND UPON** the Court concluding, having considered the matter in full, that it is just and equitable to liquidate the Respondent pursuant to Section 301(1)(b)(ii) of the Act

**AND UPON** the Petitioner's / Applicant's Application to the Court dated 14 June 2023 for the issuance of a consolidated sealed Order in the terms below

**IT IS ORDERED THAT:**

1. The Respondent, Emergent, of Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St John's, Antigua is hereby put into liquidation under the provisions of the Act.

2. The appointment of both Angela Barkhouse, of Quantuma (Cayman) Ltd, Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, and Toni Shukla, of Quantuma (BVI) Ltd, Coastal Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, as the JPLs pursuant to the PL Order, is hereby discharged.

3. Angela Barkhouse, of Quantuma (Cayman) Ltd, Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, and Toni Shukla, of Quantuma (BVI) Ltd, Coastal Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands are appointed as joint liquidators of the Respondent (the "**Liquidators**"), to act jointly.

4. The Liquidators shall function and comply with the provisions of Section 305 of the Act.

5.  The Liquidators shall comply with the provisions of Section 307 of the Act, with their compliance with Sections 307(b) and 307(c) to be the subject of further order or directions by the Court in due course.

6.  The Liquidators shall have the powers of liquidators pursuant to Section 308(1) of the Act:

    (a)  To retain solicitors, accountants, engineers, appraisers and other professional advisers;

    (b)  To bring, defend or take part in any civil, criminal or administrative action or proceedings of any kind in the name and on behalf of the Respondent within Antigua and Barbuda and in Foreign Courts of competent jurisdiction;

    (c)  To carry on the business of the corporation as required for an orderly liquidation;

    (d)  To sell by public auction or private sale any property of the Respondent with the sanction of the Court;

    (e)  To do all acts and execute any documents in the name and on behalf of the Respondent;

    (f)  To borrow money on the security of the property of the Respondent with the sanction of the Court;

    (g)  To settle or compromise any claims by or against the Respondent with the sanction of the Court;

    (h)  To make financial provision in respect of the custody of the documents and records of the Respondent after dissolution; and

    (i)  To do all other things necessary for the liquidation of the Respondent and the distribution of its property.

7.  Further to Section 308(2) of the Act, the Liquidators shall incur no liability as liquidators if they rely in good faith upon:

    (a)  Financial statements of the Respondent represented to them by an officer of the corporation or in a written report of the auditor of the Respondent to reflect fairly the financial condition of the Respondent; or

4

(b) An opinion, a report or a statement of a solicitor, accountant, an engineer, an appraiser or other professional adviser retained by the Liquidators.

8.   Further to Section 308(3) of the Act, if the Liquidators have reason to believe that any person has in his possession or under his control, or has concealed, withheld or misappropriated any property of the Respondent, the Liquidators may apply to the court for an order requiring that person to appear before the court at the time and place designated in the order and to be examined.

9.   Further to Section 308(4) of the Act, if the examination referred to in subsection (5) discloses that a person has concealed, withheld or misappropriated property of the corporation, the court may order that person to restore the property or pay compensation to the Liquidators.

10.  Further to Section 308(5) of the Act, the Liquidators must pay the costs of liquidation out of the property of the Respondent and must pay or make adequate provision for all claims against the Respondent.

11.  The Liquidators may obtain funding on commercial terms for the performance of their duties, including in connection with any legal proceedings for which funding is permitted under the applicable law.

12.  The Liquidators are not required to give security for their appointment.

13.   The Liquidators are entitled to reasonable remuneration for their time spent in the performance of their duties, such remuneration to be assessed by the Court and to be indemnified in keeping with the order of priority stated in Section 289 of the Act.

14.  Claims in the liquidation are to have priority in keeping with the provisions of Section 289 of the Act or any modification and or re-enactment of the Act.

15.  Without prejudice to Section 312 of the Act, all claims brought against the Respondent in this jurisdiction are stayed, including **Claim No. ANUHVC2022/0456** insofar as it relates to the Respondent save that the orders made in those proceedings on 18 November 2022 granting a freezing injunction and appointing receivers in relation to the Respondent shall continue in effect until further order. For clarity, **Claim No. ANUHVC2022/0456** is not stayed with respect to the Claim between Yonatan Ben

Shimon and Samuel Bankman-Friend. The stay in relation to **Claim No. ANUHVC2022/0456** is without prejudice to the right of any party and/or person with an interest in that matter to apply to the High Court of Antigua and Barbuda in either

**Claim No. ANUHVC2022/0456** or these proceedings to lift the stay in whole or in part.

16.   The Petitioners' costs of this Petition are to be paid from the Respondent's assets as expenses of the Respondent's liquidation in the order of priority set out in Section 289 of the Act.

17.   In keeping with Section 309 of the Act, within one year after the Liquidators' appointment, and after paying or making adequate provision for all claims against the Respondent, the Liquidators must apply to the Court:

(a)   for approval of the final accounts of the liquidation and for an order permitting them to distribute in money or in kind the remaining property of the Respondent to its shareholders according to their respective rights; or

(b)   for an extension of time, setting out the reasons therefor.

18.   The Liquidators are to submit quarterly reports on the progress of the liquidation to the Court, with the first report to be submitted within 3 calendar months of the date on which the Order is sealed (and subsequent reports to be submitted for the preceding quarter within 30 days of the quarter end).

BY THE COURT

REGISTRAR

6

THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA

CLAIM NO. ANUHCV 2022/0480

IN THE MATTER OF EMERGENT FIDELITY
TECHNOLOGIES LTD
AND IN THE MATTER OF THE
INTERNATIONAL BUSINESS CORPORATIONS
ACT, CAP. 222
BETWEEN:

ANGELA BARKHOUSE AND TONI SHUKLA
(AS RECEIVERS OF SHARES IN EMERGENT
FIDELITY TECHNOLOGIES LTD)
**Petitioners/ Applicants**
- and -

EMERGENT FIDELITY TECHNOLOGIES LTD
**Respondent**
- and -

SAMUEL BENJAMIN BANKMAN-FRIED
**1st Interested Party**
BLOCKFI INC.
**2nd Interested Party**

---

**ORDER**

---

Lake, Kentish & Bennett Inc.
Temple Chambers
36 Long St
St John's
Antigua
Tel: +1 268 462 1012
Fax: +1 268 462 2568

Legal Practitioners for the Petitioners

**EXHIBIT 2**

**Summary of SBF's Activity in Antigua**

| | Date | Applications and Notices (plus commentary) | Relevant proceedings |
|---|---|---|---|
| 1. | **12.12.22** | SBF's application to discharge 18 November Order. | **Receivership Proceeding** |
| 2. | **12.12.22** | SBF's application in Liquidation Proceeding: (i) to be constituted an interested party in Liquidation Proceeding; and (ii) that there be a stay of Liquidation Proceeding, pending the determination of his application to discharge the receivership order in Receivership Proceeding.<br><br>Item(ii) dismissed by Ramdhani J on 28 December 2022, with a costs order in the Receivers' favour.<br><br>The appeal against Ramdhani J's order of 28 December 2022, i.e. Appeal ANUHCVAP 2023/0002 ("**Appeal 0002**"). Appeal 0002 was automatically dismissed, with costs, on 22 March 2023.<br><br>Both costs orders remain unpaid. | **Liquidation Proceeding** |
| 3. | **14.12.22 (amended 18.1.23)** | SBF's application in Receivership Proceeding, seeking an order to lifting the stay in Receivership Proceeding.<br><br>This stay was lifted in part by Forrester J on 21 February 2023.  This is the subject to the present Appeal. | **Receivership Proceeding** |
| 4. | **21.12.22** | SBF's application in Liquidation Proceeding, seeking an order lifting the stay in Receivership Proceeding. | **Liquidation Proceeding** |
| 5. | **9.1.23** | SBF's notice of opposition to winding-up petition.<br><br>The Petition was granted on 23 March 2023. | **Liquidation Proceeding** |

|   | Date | Applications and Notices (plus commentary) | Relevant proceedings |
|---|------|---------------------------------------------|----------------------|
| 6. | **11.1.23** | SBF's application for leave to appeal Ramdhani J's order of 28 December 2022 dismissing SBF's application to lift the stay in Liquidation Proceeding.<br><br>Leave was granted; but Appeal 0002 was automatically dismissed on 22 March 2023. | **Liquidation Proceeding** |
| 7. | **17.1.23** | SBF's application for an adjournment of the petition hearing in Liquidation Proceeding pending the determination of his appeal in appellate proceedings ANUHCVAP2023/0002 (i.e. SBF's appeal against the Ramdhani J order of 28.12.22). | **Liquidation Proceeding** |
| 8. | **18.1.23** | Application for an urgent hearing of Appeal 0002 (i.e. SBF's appeal against the Ramdhani J order of 28 December 2022), and in any event prior to 27 January 2023. | **Appeal 0002** |
| 9. | **18.1.23** | Amended version of SBF's 14 December 2022 application in Receivership Proceeding, seeking an order to lifting the stay in Receivership Proceeding (see above). | **Receivership Proceeding** |
| 10. | **24.1.23** | Notice of SBF's objection to the legal practitioners for Mr Shimon acting as the legal practitioners of the Receivers/ Petitioners. | **Receivership Proceeding** |
| 11. | **28.1.23** | SBF's Notice of Appeal in Appeal 0002. | **Appeal 0002** |
| 12. | **3.2.23** | SBF's application in Appeal 0002 for an urgent stay of the powers of the Provisional Liquidators over Emergent.<br><br>Appeal automatically dismissed on 22 March 2023. | **Appeal 0002** |
| 13. | **2.3.23** | SBF's application for the revocation of the 1 March 2023 security for costs order in Appeal 0002. Dismissed on 8 March 2023. Appeal automatically dismissed, with costs, on 22 March 2023. | **Appeal 0002** |

| | Date | Applications and Notices (plus commentary) | Relevant proceedings |
|---|---|---|---|
| 14. | **6.3.23** | SBF's application seeking an order striking out the Claimant's statement of case in Receivership Proceeding and striking out Receivership Proceeding. | **Receivership Proceeding** |
| 15. | **17.3.23** | SBF's application for an extension of time in the present Appeal 0008, supported by misleading evidence in the manner described above. | **Appeal 0008** |
| 16. | **24.3.23** | SBF's security for costs application in Appeal 0008. | **Appeal 0008** |

**EXHIBIT 3**

**Transcript of Antiguan Court's Decision Dated December 28, 2022**

EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
ANTIGUA AND BARBUDA


CASE NO.: ANUHCV2022/0480

BETWEEN:

| | |
|---|---|
| ANGELA BARKHOUSE AND TONI SHUKLA, | ) |
| (As Receivers and Provisional | ) |
| Liquidators of Emergent Fidelity | ) |
| Technologies Ltd.), | ) |
| | ) |
| Applicants | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| | ) |
| EMERGENT FIDELITY TECHNOLOGIES LTD., | ) |
| | ) |
| Respondent. | ) |
| | ) |

TRANSCRIPT OF DECISION


28 DECEMBER 2022


BEFORE:


THE HONOURABLE JUSTICE DARSHAN RAMDHANI


---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

APPEARANCES:


                    BY:  DAVID JOSEPH, KC
                         KENDRICKSON H. KENTISH, Counsel

                    For PROVISIONAL LIQUIDATORS


                    BY:  DR. DAVID DORSETT, KC
                         JARID HEWLETT, Counsel

                    For SAMUEL BANKMAN-FRIED


                    BY:  LENWORTH JOHNSON, Counsel

                    For BLOCKFI COMPANIES


                    BY:  ARTHUR THOMAS, Counsel
                         KELVIN JOHN, Counsel

                    For U.S. RECEIVER OF FTX

1          THE COURT:  It's 11 o'clock now.  I'm sorry for that
2  interlude.  But is everyone present?  Ms. Bonnie, if you are
3  there, or Ms. White --
4          THE CLERK:  Yes, My Lord.
5          THE COURT:  -- can you call the matter, please?
6  Ms. Bonnie, well, there you are.  Thank you.  Call the matter,
7  please.
8          THE CLERK:  Case Number 480 of 2022, Angela Barkhouse
9  and Tony Shukla versus Emergent Fidelity Tech Limited.
10          THE COURT:  Why don't I note the appearances as
11  before and I will ask Mr. Kentish, can you assist Ms. Bonnie
12  with the correct spelling of everyone's name and all of their
13  designation so that when I produce the written decision, they
14  will all be properly named in the matter?  Yes.
15          MR. KENTISH:  I will do my best, My Lord.
16          THE COURT:  Thank you.  Right.
17          So I have some things put down in writing, but it is
18  not ready for delivery in writing.  This will be given to you
19  in due course.  What I propose to do today is to render my
20  decision and provide brief reasons orally for the decision I am
21  making.  These reasons will be expanded upon when you see the
22  written decision.
23          This is an application -- so here goes.  This is an
24  application filed by the interested party, Samuel Bankman-Fried
25  for a stay of these proceedings, which included an order

granted by this Court on the 5th of December, which *inter alia*

appointed Ms. Barkhouse and Ms. Shukla as Provisional

Liquidators of the respondent company, Emergent Fidelity

Technologies Limited.  This application was heard in the 23rd

of December and a decision was reserved.  This is that brief

oral decision now.

        Ms. Barkhouse and Ms. Shukla are professionals who

were appointed Provisional Liquidators by an order of this

Court made on the 5th of December, as I just said.  They were

early appointed interim receivers of the 90 percent

shareholding interest held by the interested party in this

Antiguan company, Emergent, by an order of Justice Williams.

        Mr. Samuel Bankman-Fried was made an interested party

in these proceedings by this Court.  No one has sought to

dispute that his interests were affected by these proceedings

and he had a right to be joined.

        I will set out the order that I made on the 5th.  I

don't propose to read that.

        This application for a stay -- the interested party

seeks the following order, having granted that one, making him

an interested party.  The only relevant one is that a stay of

proceedings in the instant matter pending the determination of

the applicant's application for a discharge in the receivership

or in the matter of 456 of 2022, Yonatan Ben Shimon and

Emergent Fidelity Technologies and Samuel Bankman-Fried.

1          In granting this application, it was contended on

2  behalf of Bankman-Fried that an application had been made in

3  the receivership proceedings to revoke the appointment of the

4  applicants as receivers of the respondent company and that the

5  overriding objective would be best served if a stay was granted

6  until that application was determined.  There was no affidavit

7  evidence filed in support of this application, though Bankman-

8  Fried relies on the documentary evidence already before this

9  Court, and in a particular those of the earlier receivership

10 proceedings, to contend that justice would be served if these

11 proceedings were stayed so that that application to revoke the

12 appointment of receivers were hard to determine.

13          On behalf of Bankman-Fried, learned counsel,

14 Dr. Dorsett, argued that the applicants had been -- these are

15 the Provisional Liquidators -- have been improperly appointed

16 as interim receivers as the earlier proceedings in which that

17 application to appoint interim receivers was made did not

18 disclose any cause of action and that this was clear from the

19 pleadings before the Court.  Learned counsel pointed out that

20 the claimant in the earlier proceedings had grounded his claim

21 in a contention that Bankman-Fried had sought to improperly

22 divert investors funds from the FTX, a cryptocurrency trading

23 platform, to Emergent and that he had a tracing claim against

24 those funds.

25          Learned counsel pointed out that, or contended that

1  the claimant himself had admitted that he knew nothing

2  regarding the source of the funds used to acquire the 7.6

3  interest in Robinhood and that Bankman-Fried had explained

4  where those funds had come from and that they were monies

5  loaned by one Alameda Research Limited and did not come from

6  FTX.

7          The claimant's lack of knowledge in those earlier

8  proceedings could not ground a cause of action, such as tracing

9  the (indiscernible) learned counsel asserted.  Two other

10 primary arguments which were not grounded in the application

11 were also argued by Dr. Dorsett.  The first was that in any

12 event, the interim orders appointing the applicant's receivers

13 had been spent by the fluctuation of time and that therefore,

14 the applicants had lost their respective receiver status.  That

15 in turn meant that they no longer had locus standi to maintain

16 their provisional liquidator status nor to continue to

17 prosecute as I understand him, the underlying petition.  The

18 petition and all applications had lost their legal viability.

19         Making this argument, Bankman-Fried contended through

20 his counsel, Dr. Dorsett, that the stay that had been imposed

21 in the Claim Number 456 did not operate to stop the clock

22 ticking on the 28-day shelf life that had been given to the ex

23 parte order that had been made appointing the interim receiver.

24         The logic was that that order being made ex parte

25 required at inter partes hearing, another order that is to

1 continue beyond the prescriptive 28 days period.  And since
2 there was no inter partes hearing and no subsequent order of
3 the Court continuing that order, the order simply expired.

4         There were other arguments made by Dr. Dorsett, which
5 I have considered.  The Provisional Liquidators are opposed.
6 Learned King's Counsel, Mr. Joseph, on their behalf contended
7 that if the Court were right to grant the ex parte order
8 appointing the Provisional Liquidators and they maintain that
9 the Court is right to do, there are far more greater reasons
10 and the rapidly escalating series of events not to only
11 validate this order at this stage, but more importantly, to
12 dismiss the application for a stay.

13         Learned King's Counsel opposed the grant of stay so
14 that an application to revoke the appointment, the interim
15 receivers could be heard in Claim Number 456.  KC effectively
16 contended that such a cause of action was indeed disclosed by
17 the pleadings and that substantial portions of the evidence,
18 which had not been answered show that Bankman-Fried most
19 probably improperly diverted investment funds to Emergent.
20 This was a real triable issue.

21         The provisional liquidator's pointed out that since
22 the application for a stay was filed, Bankman-Fried was
23 arrested in the Bahamas, was denied bail, and had since been
24 extradited to the United States to face eight counts of fraud
25 and conspiracy in relation to Bankman-Fried's conduct of his

1 cryptocurrency empire involving FTX, Alameda, and companies to

2 whom he unlawfully transferred customer assets or their

3 proceeds such as that of Yonatan Ben Shimon, the claimant in

4 the earlier proceedings.

5      The indictment covers the period of 2019 to 2022 and

6 includes charges of wire fraud on customers, wire fraud on

7 lenders, and conspiracy to commit securities fraud.  They point

8 out that the principal asset of Emergent identified to date as

9 a block of 56 million plus shares in Robinhood Markets, Inc.,

10 believed to be valued around $5 million U.S. is at stake in

11 legal action advanced in New Jersey by a company, BlockFi, who

12 is seeking to have these shares transferred into its name to

13 satisfy a pledge made by Emergent and that this is likely to

14 render Emergent insolvent.  And thus, Emergent's creditors

15 would be left with an empty shell of a company against which

16 there could be no real prospect of recovery.

17      Learned KC pointed out that this application for a

18 stay was only granted on the need to hear that other

19 application to revoke appointments.  Nonetheless, KC did

20 respond to the other arguments.  As far as the fluctuation of

21 time argument is concerned, Mr. Joseph argued at Paragraph 9 of

22 the order granted on the 5th of December did not operate to

23 invalidate the order appointing the interim receiver.

24      In any event, learned KC pointed out that there is no

25 issue with the appointment of the interim receivers.

1 Appointments of the interim receivers were subsisting and valid
2 when the application to appoint was made.  It was contended
3 that this is determinative of the issue as they were standing
4 at that stage and the Court did not appoint interim receivers
5 as Provisional Liquidators, but appointed two qualified
6 professionals as Provisional Liquidators.

7        There is no challenge to their respective competence
8 nor to the grounds and legal basis justifying and granting
9 their appointment.  Learned KC further contended that Bankman-
10 Fried did not present any evidence of any prejudice being
11 caused to him if the stay were not granted.  Emergent was not a
12 trading company, it was simply a holding company, had no
13 employees, and had no business to carry on.  Yet, was nothing
14 before the Court to suggest that allowing Provisional
15 Liquidators to intervene in Chapter 11 proceedings in the USA
16 to seek to protect Emergent's assets would cause harm either to
17 Emergent or to Bankman-Fried for that matter.  I now turn to
18 address each of these matters in turn.

19        The cause of action argument.  I have examined the
20 evidence supporting the application for the freezing order and
21 interim receiver order in the earlier proceedings.  The case
22 which was presented in those proceedings and in these
23 proceedings was that funds invested by the claimant with FTX,
24 of which Bankman-Fried was a founder and director, have been
25 improperly diverted to Emergent of which Bankman-Fried is the

1  sole director and a majority owner, in circumstances which give

2  rise to the claimant have a proprietary tracing claim against

3  those funds and are claims against Emergent and/or Bankman-

4  Fried in knowingly receiving and/or dishonest assistance in the

5  transfer of such funds.

6          The claimant's statement that he does not know the

7  source of the funds which Emergent used to acquire Robinhood

8  shares must be taken in context.  That's Mr. Ben Shimon.  This

9  is what Ben Shimon says in Paragraph 7 of his affidavit dated

10  the 18th of November, which was filed in support of his

11  application for the freezing order and the interim receiving

12  order.  Namely, and I quote him, "According to the filings with

13  the U.S. Securities and Exchange Commission, Emergent is a

14  company incorporated in Antigua Barbuda with its principal

15  place of business at Unit 3B, St. Johns Antigua, and its

16  principal business being the making of investment in securities

17  and other assets.

18          "In May, 2022, Emergent acquired 56 million plus

19  shares in Robinhood Markets, Inc., at a cost of U.S. 648 -- in

20  excess of U.S. $648 million."  I am paraphrasing the amounts.

21  "This acquisition was sourced from working capital," and

22  working capital is inverted in that paragraph.  "Robinhood

23  Markets, Inc., is a company listed on NASDAQ.  The 56 million

24  shares in question represent a 7.6 interest in Robinhood, and

25  at today's market prices, have an approximate value of U.S.

1  $571,175,510, and they have calculated it at $10.15 per share.

2         "In the SEC filing in question," -- I'm continuing

3  the quote, "Emergent and Bankman-Fried are described as

4  beneficial owners of the 56 million shares in Robinhood.  And

5  Bankman-Fried is described as the sole director and majority

6  shareholder of Emergent."

7         I have examined the SEC statement itself.  I see that

8  on its face, it states that it is filed on behalf of Emergent

9  and Bankman-Fried.  On its face, it is signed by Bankman-Fried

10  as director of Emergent in his own personal capacity.  I see

11  that the claimant statement in his Paragraph 7 are indeed

12  grounded in this document, that is Mr. Shimon.  Bankman-Fried,

13  in his affirmation dated the 11th of December, 2022, does not

14  dispute the accuracy of this document.  In fact, at Paragraph 4

15  of his affirmation, he acknowledges the SEC filing.

16         I have noted carefully the averments contained in

17  Bankman-Fried's affirmation.  There, he asserts that the funds

18  used to purchase the Robinhood shares did not come from any

19  investor funds held by FTX.  He states that he and Wang

20  borrowed money from Alameda Research Limited.  He was loaned

21  the sum of over $491 million and Wang was loaned in excess of

22  $54 million.  The amounts are stated.

23         The Chapter 11 proceedings in the USA speak to the

24  FTX group of companies or silos, which includes, (a), a group

25  of companies to which FTX belongs; (b), the Alameda Silo, which

1  includes Alameda Research, LLC, and Alameda Research Limited,
2  as well; (c), the Ventura silo; and, (d), the Dotcom silo.  The
3  filings state, "Each of the silos was controlled by
4  Mr. Bankman-Fried.  Minority equity interest in the silos were
5  held by Zezhou (phonetic) Gary Wang and Nishad Singh, the
6  co-founders of the business along with Mr. Bankman-Fried.  The
7  WRS silo and the Dotcom silo also have third party equity
8  investors, including investment funds, endowments, sovereign
9  wealth funds, and families.

10        John J. Ray, the chief executive officer of the
11  Chapter 11 proceedings in the USA, has expressed the view that
12  "Never in my career have I seen such a complete failure of
13  corporate controls and such a complete absence of trustworthy
14  financial information as occurred here.  From the compromised
15  systems integrity and faulty regulatory oversight abroad to the
16  concentration of controls in the hands of a very small group of
17  inexperienced, unsophisticated, and potentially compromised
18  individual, this situation is unprecedented."

19        I note that in the Chapter 11 proceedings filed by
20  FTX and Alameda and others as debtors, Bankman-Fried and Wang
21  are described as a 90 percent and 10 percent respective owners
22  of Alameda Research LLC.  Paragraph 24 of this Chapter 11
23  filing shows that Alameda Research Limited gave a loan of $1
24  billion to Bankman-Fried.  It is relevant to note that these
25  filings do not show any record of a loan from Alameda to Wang.

1         This material was served on Bankman-Fried.  When he

2 made his affirmation on the 11th of December, he must have been

3 aware that such documents, including the Chapter 11 documents,

4 had been presented to this Court and that these documents were

5 seeking to make out a case that Bankman-Fried was the majority

6 owner of the FTX group of companies, which included Alameda

7 Research Limited and Alameda Research LLC.  Yet, he only sought

8 to dispute that invested funds held by FTX were not the monies

9 used to capitalize Emergent because it was really monies which

10 came from Alameda.

11         This Court is well aware that it is not making any

12 findings of fact on the material before it.  For this material

13 on challenge at this stage presents a compelling case of

14 intermingling and improper diversion of investor funds.

15 Whether this is done with traditional criminal intent or simple

16 gross incompetence is yet to be seen.

17         At this stage, it is sufficient to say that this

18 Court is satisfied that it is a real triable issue before the

19 courts of Antigua and Barbuda as to whether investor funds have

20 been improperly diverted to Emergent of which Bankman-Fried is

21 the sole director and majority owner.  In circumstances which

22 give rise to the claimant have a proprietary tracing claim

23 against those funds against Emergent and/or Bankman-Fried.

24 That disposes of that issue.

25         The Locus standard issue.  These arguments fell

1  outside the pleaded grounds of this application for a stay.  I

2  have nonetheless considered them in the wrong.  The interested

3  party's argument on this point is that the receiver did have

4  standing to file the petition under the application and the

5  application for the appointment of Provisional Liquidators.

6          But since the order appointing them as receivers have

7  expired, they've lost such standing and consequently, the right

8  to continue as Provisional Liquidators.  Several questions

9  arise here for the Court's determination.  First, it is whether

10  the stay imposed on Claim 456 operated to prevent C.P.R.

11  Part 17 from having any effect on the orders made in those

12  proceedings, were the true reflection of time or otherwise.

13  Second, it is whether an order made in Claim 456 may continue

14  to have force and effect, notwithstanding the stay of those

15  proceedings.

16          I turn to answer the first question.  Ms. Barkhouse

17  and Ms. Shukla standing to make the application for an order

18  appointing Provisional Liquidators was indeed grounded in their

19  appointment as receivers under the earlier proceedings.  An

20  examination of their application reveals that whilst they did

21  apply as receivers of shares in Emergent and the order which

22  was sought which was granted to them -- that they did apply as

23  receivers of shares in Emergent and the order which was sought

24  and which was granted is as follows.

25          Namely, Angela Barkhouse of Quantuma (Cayman) Limited

1  sued an address and Tony Shukla and her address, are appointed

2  as Joint Provisional Liquidators of the respondent.  The order

3  did not appoint the receivers as Provisional Liquidators.  On

4  the face of the order appointing Ms. Barkhouse and Ms. Shukla,

5  there is nothing to suggest that they were so appointed in

6  their respective interim receiver capacity.  In fact, the

7  December order expressly states that it is Ms. Barkhouse and

8  Ms. Shukla who were appointed Provisional Liquidators.

9          There has been no challenge to their respective

10 qualification or competence.  There is also no challenge to

11 legal and evidential basis for a respective appointments as

12 interim receiver and as provisional -- sorry -- as Provisional

13 Liquidators.

14         I cannot, therefore, see how their appointment can be

15 nullified on the basis that Ms. Barkhouse and Ms. Shukla have

16 lost their status of receivers.  If that is the effect of the

17 stay imposed by Paragraph 9 of the 5th of December order

18 granted by this Court, on one view, that really ends this

19 issue.

20         In any event, if it is necessary, I do not agree that

21 the 28 days prescription of CPR Part 17 has affected the

22 appointment that receivers in this case.  Paragraph 9 of the

23 automated by this Court was that all claims against Emergent in

24 this jurisdiction are stayed, including 456.  That is without

25 any prejudice to any party, to any such proceedings to apply

1  the record to lift the stay and hold or apart.  It is difficult

2  to see how the proceedings could be stayed for all intents and

3  purposes, if that is what that order means, and that CPR could

4  continue to operate in relation to automating those

5  proceedings.

6           If the order continue to have valid force, then

7  neither CPR17 node reflection of time could escape the embrace

8  of a stay imposed on the proceedings.  Did the order appointing

9  the interim receiver continue to operate?  That is the second

10 question.  Did this stay, which was ordered by Paragraph 9 of

11 my order, the 5th of December, operate to suspend the effect of

12 the *ex parte* order made in Claim Number 456, did it operate to

13 affect the standing of the applicants in relation to the

14 underlying petition?

15          Generally, a stay of proceedings will have the effect

16 of suspending the legal operation of all orders made during the

17 course of those proceedings.  There may be situations where

18 depending on the express terms of the order granting the stay,

19 that that stay may not suspend every order, every aspect of an

20 order, which is granted in those proceedings.

21          In certain cases, the context within which this stay

22 is granted may also inform whether each and every order made in

23 the course of those proceedings is suspended.  In claim 456, an

24 order had been made appointing Ms. Barkhouse and Ms. Shukla

25 interim receivers because the Court was satisfied it was proper

1  to do so.

2         The interim receivers immediately took steps pursuant

3  to that order.  They appointed themselves as directors of

4  Emergent under the authority of that order.  It was pursued to

5  that order they filed a petition to wind up the company and the

6  application for the order of appointing Provisional

7  Liquidators.  When they did all this, there was no question

8  that their appointment was valid and subsisting.

9         It would seem that the context within which the

10 Paragraph 9 stay was ordered was to facilitate one set of

11 proceedings to continue and which were brought under

12 Section 301 of the Act to protect the interest of those

13 investors who may have lost their investment by proper

14 creditors who may have lost investors in the FTX, who may have

15 lost their investments by improper diversion to Emergent.

16        When the Court granted the order appointing

17 Provisional Liquidators, the Court was satisfied that events

18 had overtaken the need to simply have receivers in place to

19 manage the state of affairs.  It was considered that the risk

20 and urgencies had escalated which required the appointment of

21 Provisional Liquidators.  This is the context within which

22 Claim Number 456 was stayed.  This context requires that at the

23 very least, the stay does not affect the appointment of

24 receivers for the purposes of maintaining and prosecuting the

25 petition before this Court.

1        Even if I'm wrong on this matter, that is, on whether
2   the stay imposed by Paragraph 9 affected the standing of the
3   applicants to continue to prosecute the underlying petition, I
4   will decline to use this loss of status as any substantive
5   basis to determine this application and to grant the stay order
6   which is being sought by Bankman-Fried.  My discretion is
7   grounded in a number of reasons, which includes, one, this was
8   not pleaded as a ground for the application for the stay; two,
9   this is a matter which the substantial and undisputed material
10  before the Court cries out for judicial intervention; three,
11  this Court retains the discretion if the stay is lifted in the
12  earlier proceedings to continue the appointment with the
13  interim receiver if that becomes necessary as being in the
14  interest of justice to do so.

15        I turn to the balance of justice.  When is a stay to
16  be granted?  A stay is to be granted when it is necessary to do
17  justice between the parties in keeping with the overriding
18  objective.  There is uncontradicted material before this Court
19  that on the 20th of November, 2022, BlockFi issued an adversary
20  complaint against *inter alias*, Emergent, contending that the
21  Emergent Robinhood shares referred to had been pledged to
22  BlockFi in 19 November, 2022, and that in November, default
23  arose on the pledge of 10 November, 2022.

24        On that day, the Supreme Court of Bahamas appointed
25  Provisional Liquidators to FTX Digital Marketing.  On the 11th

1  of November, FTX applied for Chapter 11 bankruptcy protection

2  in the USA.  The specific relief sought by BlockFi is an order

3  directing the transfer of Emergent Robinhood shares to BlockFi.

4  The defense is due on the 29th of December and is in the course

5  of being prepared by Emergent lawyers instructed by the

6  Provisional Liquidators.

7          This Court is informed and I have paraphrased many

8  parts of the submissions made by the Provisional Liquidators

9  here.  The Court was informed that BlockFi claim for Emergent

10  Robinhood shares has to be fully investigated alongside all

11  relevant records, which the date are incomplete.

12          But the timing of the grant of the pledge just two

13  days before the filing of bankruptcy proceedings in the USA

14  gives credible grounds to believe that the alleged pledge or

15  under alleged guarantee relied upon in the United States

16  adversary complaint were in fact designed to convey assets in

17  fraud.  This is the allegation of the creditors.

18          Moreover, I'm told the Provisional Liquidators are

19  investigating all other defenses, including the validity of the

20  creation of the alleged pledge.  I am informed that there is a

21  Court hearing fixed in New Jersey on the 9th of January, 2023,

22  which was moved from the 5th of January.  I'm told that the

23  Emergent Provisional Liquidators has to appear to advance

24  Emergent's position and opposition to the adversary claim of

25  BlockFi.

1    The hearing on the 9th of January is an interim and
2 not a final hearing.  It is understood, I am told, that BlockFi
3 will seek to argue at this hearing that it should take custody
4 of the shares pending any final determination or that provision
5 should be made with regard to the custody.  Emergent intends to
6 oppose BlockFi taking custody of the shares.  This is the
7 reason why the order of the 5th was granted.  And having the
8 Provisional Liquidators in place with a continuing power and
9 legal duty to preserve and secure the assets for the benefit of
10 all creditors will be of significance and relied upon by
11 Emergent at this hearing.

12    It may be that for this reason Bankman-Fried and
13 BlockFi are opposed -- oppose -- sorry -- the continued work of
14 the Provisional Liquidators.  This is the view expressed by the
15 Provisional Liquidators.  They say, and I agree, that it is of
16 utmost importance that neither BlockFi nor Bankman-Fried have
17 any control of the asset pending final determination of its
18 ultimate status.

19    I think it is not appropriate that they are placed in
20 control of those matters.  I agree with the submissions made on
21 behalf of the Provisional Liquidators that the defense of
22 BlockFi proceedings must be undertaken urgently and that it all
23 should be undertaken by a neutral court-appointed
24 representative whose job is to protect the creditors of
25 Emergent.  From the material placed before this Court, it

1  appears that Bankman-Fried is conflicted in any such defense.

2      I further note moreover, actually, at present,

3  Bankman-Fried is in prison and there has been no indication

4  given as to how he would be in a position to defend these

5  critical proceedings.

6      I note that in this case the order made by Justice

7  Williams, Emergent was obliged to inform the lawyers, which

8  Yonatan Ben Shimon, of all its assets worldwide, whether it's

9  in own name or not, very interested in them legally or

10 beneficially, and giving the value, location, and details of

11 all such assets.  There's nothing before me to show that this

12 was complied with.  The seven-day period expired before the

13 stay order was granted on the 5th of December.  Emergent did

14 not provide this information.

15     I consider that in this case, the events which are

16 continuing provide an urgent and compelling basis for the

17 Provisional Liquidators to continue to act in accordance with

18 their duties.  There are no good reasons shown to me why

19 Bankman-Fried should be allowed to intervene which will follow

20 if a stay is granted.

21     I have not been shown anything, and I have considered

22 all the arguments made by Dr. Dorsett on behalf of the

23 interested party, which justifies the grant of any stay in

24 these proceedings.  The interested party has conceded that the

25 Court had ample material before it to justify the grant of the

1  order on the 5th of December which appointed the Provisional
2  Liquidators.

3           To date, he has shown nothing to justify an exercise
4  of discretion to vary that order.  In the circumstances, I will
5  decline to grant any stay of these proceedings.  The
6  application for the stay is therefore dismissed.

7           I will hear the parties on the issue of cause, and I
8  also will hear you on consequential orders and directions I
9  should make going forward.

10          MR. JOSEPH:  My Lord, I'm very grateful.  I think it
11  falls to me to address you first.  Can I just mention two very
12  small matters?  I was taking a note of My Lord's oral judgment.
13  I know it's going to be cleaned up.  I appreciate all of that.

14          There was one moment much earlier in your notes when
15  you referred to, and I think it was a slip is the honest truth,
16  but I think you referred to the value of the Emergent shares as
17  $5 million.  Later, you referred to it as between $500 and $650
18  million.  It is the latter value which is the correct value,
19  not the $5 million.  That's a --

20          THE COURT:  Okay.

21          MR. JOSEPH:  It's a typographical thing, but it's
22  obviously quite important to the parties.  So --

23          THE COURT:  I will assure you that there is nothing
24  in writing here that speaks of $5 million.

25          MR. JOSEPH:  I'm very grateful.

1        THE COURT:  So it must (indiscernible) my oral slip.

2        MR. JOSEPH:  I'm very grateful.

3        The second point is this and it was right at the very

4  end of My Lord's oral judgment.  I wanted to be entirely clear

5  with the Court.  There was a reference to I think it was

6  Ms. Barkhouse's third affidavit where you said, "Moreover, at

7  present, SBF is in prison, and it's unclear how he would be

8  able to defend the proceedings," and so forth.  My Lord will

9  remember that?

10        THE COURT:  Yes.  Yes.

11        MR. JOSEPH:  This is one of these cases where I'm

12  afraid it's quite fast moving.  Since Barkhouse number three,

13  he has been granted bail on very stringent conditions that he

14  must remain at his parents' house in the United States of

15  America.  I don't think it changes one iota of My Lord's

16  judgment, but it is just factual accuracy that SBF, as we speak

17  today, is not in prison.  He has been remanded on a $250

18  million bail bond.

19        THE COURT:  Yes.  I'm glad for that information.

20  There is ample reasons which I'm satisfied to justify he should

21  not intervene in this proceeding, regardless of whether he's in

22  or out of prison.

23        MR. JOSEPH:  I'm very grateful of that.  I just

24  wanted to be absolutely clear with the Court, because these

25  things sometimes can be relied on by the other side and so

1 forth.

2        So, My Lord, costs and consequential matters.  We
3 would ask that the application be dismissed with costs to be
4 assessed but on the basis that it was reasonable and suitable
5 for my clients to instruct leading counsel.  My Lord will
6 obviously understand why I ask that because it is important in
7 terms of the assessment.

8        There is a second aspect which we would ask My Lord
9 to grant as well.  You'll remember, and this forms a very large
10 part of My Lord's judgment, that Dr. Dorsett was saying I would
11 like the stay in 0456 to be lifted and for there to be a stay
12 in 0480 until we have come to hearing me on 0456.  What My Lord
13 has I would venture to submit very helpfully done is, in
14 essence, dismiss the proposed grounds for the attack on 0456
15 because My Lord has very carefully, and we are very grateful to
16 My Lord for doing this, gone through the grounds that
17 Dr. Dorsett was seeking to rely on about their not being a
18 sufficiently pleaded or evidenced cause of action.  And My Lord
19 in the first part of the judgment has dealt with that.

20        So the two orders that we would seek would be dismiss
21 the application for a stay but also decline the application to
22 lift the stay in 0456 because, otherwise, if you don't do that,
23 we are going to have yet another round of, we would submit,
24 pointless argument from Dr. Dorsett as to his attack on the
25 receivership order made in 0456 because My Lord has just dealt

1  with that now and I would say incredibly helpfully because the

2  whole point of this, and this is going to be my third set of

3  submissions, must be now to come onto the main course.

4       We must have directions now for the hearing of the

5  petition itself and there are plenty of grounds which would

6  support that in My Lord's judgment so that there can be an

7  orderly and sensible winding up, we say inevitably, of Emergent

8  for the benefit of all creditors.

9       So order number one, dismiss the application with

10  costs on the basis that it's suitable for leading counsel, for

11  King's Counsel.  Second, we would ask that Dr. Dorsett's

12  secondary attack, which is to lift the stay in 0456, that

13  application also be dismissed to avoid a pointless second round

14  in the boxing ring.  And, third, we would seek directions for

15  hearing the petition which would in essence we would say that

16  all interested parties are effectively, have already sort of

17  put their head above the parapet, as it were.

18       And we would ask that in the first instance, any of

19  the interested parties who seek to oppose the petition for the

20  winding up of Emergent do set out in writing the basis within

21  the next five days so that we can make prompt progress for the

22  hearing of the petition.  And, obviously, we'd have to go to

23  the Court registry to get dates of that.  But we imagine that

24  we would be asking for time either at the very end of January

25  or, certainly, the beginning of February for that to be heard

1 as soon as the Court has time.

2          But we would be grateful if this Court could

3 certainly indicate that there is urgency in this matter for the

4 orderly winding up of the affairs of Emergent.  So unless there

5 were further matters that you wanted to hear from me, those are

6 the three heads, as it were, that -- oh, by the way, yes, I

7 forget one thing.

8          My Lord will remember that there was a short hearing

9 on the 14th of December when My Lord gave directions for the

10 matter which we heard on the 23rd of December.  I don't know if

11 My Lord remembers that.  That was the first one we heard from

12 Dr. Dorsett, My Lord.

13          THE COURT:  Yes.

14          MR. JOSEPH:  As a matter of formality, we sent to my

15 Lord the order because we had carriage of the order and it

16 needs to be sealed, and we sent that by email.  So if we could

17 ask for that to be signed.  We've sent it to Dr. Dorsett.  We

18 haven't heard from him if there's anything there which he

19 opposes.

20          But the only matter which I direct this Court's

21 attention to is that in the recitals to the order, My Lord will

22 see that we have made provision for what my Lord indicated on

23 that occasion that the stay provision in Paragraph 9 of the

24 existing order applied both in relation to all steps re SBF and

25 Emergent because an argument could be presented --

1          THE COURT:  Dr. Dorsett has seen this, yes?

2          MR. JOSEPH:  Yes, he has seen it, My Lord.

3          But we do ask that that be then signed off so that we

4    can hopefully have got all the housekeeping, you know, sort of

5    up to date.  So that's the fourth matter which I would ask My

6    Lord to (indiscernible) --

7          THE COURT:  Well, I'm looking at the order as you

8    speak.  I will sort it out this morning.  If there is no

9    objection or amendments or corrections from the other side.

10   Let me ---

11         MR. JOSEPH:  I am very, very, very grateful.  But, as

12   I say, we would very much oppose now any attempt by

13   Dr. Dorsett's team to have a second round in the boxing ring,

14   as it were, on 0456.  There will be simply no point to that,

15   and therefore, we do hope My Lord declines leave to lift the

16   stay in that so that we can have one set of orderly proceedings

17   in relation to the affairs of Emergent.

18         THE COURT:  All right.  Let me hear Dr. Dorsett.

19         Dr. Dorsett?

20         DR. DORSETT:  Yes, My Lord.  We are asking that our

21   application for the lifting of the stay that we heard and, of

22   course, heard and granted, and that our application that we

23   have filed in 456 be --

24         THE COURT:  Hold on.  Hold on.  Dr. Dorsett?  Could

25   you start over?  I seem to have missed a bit of what you said.

1  Can you start over please?  Sorry.

2          DR. DORSETT:  Yes, My Lord.

3          We are asking -- we have heard the Court's decision

4  in this matter in the 480 matter.  We are asking that our

5  application for the lifting of the stay in 456, we ask that

6  that application be heard.  We also, of course if it is heard,

7  we would ask when that application is heard that it be granted

8  so that our application that we have filed in 456 be in a

9  position to properly and fully present the same.

10          The Court is, of course, cognizant of the fact that

11  in 456, because of the stay and because of our applications

12  that we have made with respect to 456, that Mr. Ben Shimon is

13  yet to be heard with respect to our applications in 456.  So we

14  would ask that those applications be heard without undue delay.

15  We have filed our application since the 12th of December.  And

16  to date, there has been no hearing or not even a listing date

17  for our applications in 456.  We would ask that those matters

18  will be listed soon as by the Court office for hearing.

19          THE COURT:  What more can you advance in that

20  application, Dr. Dorsett?

21          DR. DORSETT:  My Lord, we have asked, among other

22  things, the improper conduct of the receivers in which they

23  removed Mr. Fried as director.

24          THE COURT:  How was that improper?

25          DR. DORSETT:  Because it required we say 100 percent.

 1 Sorry.  All 100 percent of shareholders to have consented to it

 2 in writing and that was not the case.  It simply wasn't done.

 3       But more importantly, My Lord, with respect to our

 4 applications, I mean it is self-evident that Mr. Ben Shimon is

 5 a party in 456 and to date, he has, by his application, he has

 6 obtained certain orders in his favor and we have not been heard

 7 in 456.  We have not been heard.  We are entitled to be heard

 8 we respectfully say in 456.

 9       Mr. Bankman-Fried is the second defendant in that

10 matter and to date, he has not been heard.

11       THE COURT:  What do you have in regard to the fact

12 that I have confirmed more or less the appointment of

13 Provisional Liquidators here and what --

14       DR. DORSETT:  With respect, My Lord, we did not, in

15 this matter, challenge the appointment of Provisional

16 Liquidators.  Our challenge is, and was, and remains, to the

17 *locus standi* of Barkhorse and Shukla as receivers.  That was an

18 appointment made in 456, My Lord.  And that issue, the hearing

19 of our application in 456, simply hasn't happened.

20       We have not been heard in 456.  Mr. Ben Shimon, who

21 would be respondent to our application, he has not been heard.

22 Nobody has been heard in 456 because of the stay.

23       THE COURT:  You have heard my oral decision given,

24 no.

25       DR. DORSETT:  Yes, My Lord.

1          THE COURT:  As far as this Court is concerned,

2    whether I am right or wrong about it, I have made a ruling in

3    which I have analyzed the evidential material supporting, or

4    rather, which is before this Court as to whether there is a

5    triable issue in this case, yes.

6          DR. DORSETT:  Yeah, but with respect, My Lord, there

7    is more going on in 456 than a triable issue, My Lord, with

8    respect.  And as I said, there has been no hearing in 456.

9          THE COURT:  No.  You --

10         DR. DORSETT:  The parties --

11         THE COURT:  You argued before this Court that the

12   reason that the Court should lift this stay and go hear that

13   matter was because this Court would find in hearing that matter

14   that there was no triable issue.

15         DR. DORSETT:  Among other things, My Lord.  My Lord,

16   with respect, we could --

17         THE COURT:  But you did raise --

18         DR. DORSETT:  -- we could not because Mr. Joseph,

19   King's Counsel, insisted that the only thing that was before

20   this Court, which we could properly argue and argue fully and

21   to the hilt, was our application in 480.  We were limited as to

22   what we could say about 456.  And what we say, My lord, our

23   arguments --

24         THE COURT:  He didn't insist on that, Dr. Dorsett.

25   This Court is in charge of its proceeding.  He didn't insist

1 and this Court went along with it.  That was your --

2         DR. DORSETT:  No.  What I'm saying, My Lord, we did

3 not, and could not, present all that we wanted to say or could

4 say in 456, given what was before the Court because the Court

5 had, (indiscernible) says, what material is before the Court.

6         My Lord, we have prepared a hearing bundle for 456.

7 I mean, I don't know if the Court has looked at it or how well

8 it has looked at it, but the short point is, My Lord, there has

9 been no hearing --

10         THE COURT:  Which hearing bundle -- the hearing

11 bundle you submitted to me?

12         DR. DORSETT:  Well, we submitted and filed on the

13 portal, 456.

14         THE COURT:  I have read three hearing bundles.  One,

15 which was given to me before as a hearing bundle and, two,

16 which was Hearing Bundle 1 and Hearing Bundle 2.  Are you

17 speaking of another hearing bundle?

18         DR. DORSETT:  Yes, My Lord.  We prepared a hearing

19 bundle in 456 because we did that in preparation that in due

20 course, that matter would come down for hearing and the parties

21 in 456 --

22         THE COURT:  Dr. Dorsett.

23         DR. DORSETT:  Yes, My Lord.

24         THE COURT:  Here is where I am logically and -- well,

25 here is where I am in my mind --

1           DR. DORSETT:  Yes, My Lord.

2           THE COURT:  -- whether logical or not.  I am at this

3    point where you have made an application for a stay of these

4    proceedings on the basis that you wanted to have an application

5    in those proceedings heard.

6           DR. DORSETT:  Yes.

7           THE COURT:  You say that it was in the interest of

8    the overriding objective to stay these proceedings so I can

9    hear that application.

10          DR. DORSETT:  Yes, My Lord.

11          THE COURT:  You made submissions on the merits of

12   that application in these proceedings.

13          DR. DORSETT:  Yes, My Lord.

14          THE COURT:  I considered, having regard to what I

15   delivered just a few moments ago in this application, I

16   considered the merits of what you raised.

17          DR. DORSETT:  My Lord, with respect, I could not --

18          THE COURT:  You actually went outside of your pleaded

19   grounds.  But not withstanding that, I also considered the

20   matters which you spoke about outside your pleaded grounds.  I

21   did that as well --

22          DR. DORSETT:  My Lord --

23          THE COURT:  You're now telling me that there is some

24   other things, apparently, that I should have considered that

25   you were denied an opportunity to raise.

1          DR. DORSETT:  That is correct, My Lord, because I did

2    not have an opportunity --

3          THE COURT:  I do not know how I have denied you any

4    opportunity to raise what you have pleaded.

5          DR. DORSETT:  Because, My Lord, you have not seen my

6    written arguments in 456.  I did not bring them at the hearing

7    in 480.  And that is the difficulty.  I came here with certain

8    arguments --

9          THE COURT:  What point are you addressing,

10   Dr. Dorsett?  What point are you addressing?  You're saying

11   what?  You're saying what?  What?

12         DR. DORSETT:  My Lord, I do not have --

13         THE COURT:  (Indiscernible)

14         DR. DORSETT:  -- I do not have here before me --

15         THE COURT:  Yes.

16         DR. DORSETT:  -- my arguments, my full arguments and

17   my bundle for 456.  And what I'm saying, I know among other

18   things, and I don't want to limit myself.  I know, among other

19   things, one of the points that I had raised in my 456

20   arguments, which submissions I have prepared, was the issue of

21   the removal of Mr. Bankman-Fried as a director of Emergent and

22   the propriety of the action of the receivers in passing a

23   written resolution --

24         THE COURT:  But what is the effect of the

25   Provisional Liquidators appointment?  What is the effect of

1  that in relation to whether Bankman-Fried continues to be a

2  director or not?  What is the effect of the appointment of the

3  Provisional Liquidators, which I have seemingly just confirmed?

4          DR. DORSETT:  My Lord, Provisional Liquidators have a

5  specific job, which is ultimately to deal with the winding up

6  of the company.  And what you see, My Lord --

7          THE COURT:  (Indiscernible) act in that regard?

8  Director will have obligations they will carry out still?

9          DR. DORSETT:  No, My Lord.

10         THE COURT:  What is the purpose of a director.

11         For a moment, hold your thoughts on 456.  If 456 did

12 not exist and this Court made an order appointing Provisional

13 Liquidators under a petition to liquidate, right.  What would

14 be Mr. Bankman-Fried's role, he being a director prior to this

15 appointment?  What would be his --

16         DR. DORSETT:  My Lord, we say, and I think it's

17 uncontroversial, when liquidators are in control, directors are

18 not in control.  But the --

19         THE COURT:  But what point do you want to do in 456?

20         DR. DORSETT:  Hello?

21         THE COURT:  What do you want to do in 456?  Do you

22 want --

23         DR. DORSETT:  We want to get our hearing --

24         THE COURT:  -- properly removed.  To do what?  To

25 what (indiscernible) --

1          DR. DORSETT:  My Lord, we want to get the hearing and

2    we want to get those proceedings dismissed.  We're entitled to

3    a hearing.  Mr. Ben Shimon is entitled to a hearing.  I mean,

4    it can't be that somebody has been made a defendant in a matter

5    and he's never heard?  My Lord, that cannot be fair.  Even if

6    the Court is of the preliminary view that he has no case, he

7    has a bad case, he's a bad man, at least, he being a defendant

8    has a right to be heard.

9          THE COURT:  Dr. Dorsett?

10          DR. DORSETT:  Yes, My Lord.

11          THE COURT:  Let it never be said that I have refused

12    to allow someone to be heard.

13          DR. DORSETT:  And so -- and so we are asking, My Lord

14    -- we are asking, My Lord, to give Mr. Samuel Bankman-Fried a

15    chance to be heard in a matter in which he is a defendant,

16    which is 456.  We are asking that the stay be lifted so that he

17    can present his application and that he be heard in his

18    application and the Court, upon hearing him fully in 456 will

19    make a decision.

20          THE COURT:  Dr. Dorsett -- Dr. Dorsett, I want you to

21    address this -- start address this thought.  If this court

22    considers that it is necessary in the interest of doing justice

23    between all the parties in this matter that those proceedings

24    should be stayed while this petition is being heard, because

25    events have taken this court to the point where it is now

1 necessary to consider whether, A, provisional liquidity should

2 be appointed and the Court felt it was proper to do so; and

3 secondly, whether the petition and everything else should

4 follow.

5          This is where this court is at.  And if this court is

6 at that stage, why is this court going to get into a muddle and

7 reopen something which this court finds is unnecessary to

8 determine at this stage?  Why?

9          DR. DORSETT:  I note with respect there has been --

10 you have not heard the parties in 456, including -- well, you

11 have not heard the parties.  You have not heard --

12          THE COURT:  But Dr. Dorsett --

13          DR. DORSETT:  Yes, My Lord.

14          THE COURT:  -- you're not answering me.  You're not

15 answering me.  You are avoiding the question.  The question --

16 the *audi alteram partem* rule does not trump a stay simply

17 because it exists.  The *audi alteram partem* rule is a rule

18 which where parties are to be heard, they should be heard.

19          But if a stay is granted, it doesn't mean -- in that

20 case, your logic means that every time a stay is granted, a

21 party can put up his hand and say, I am a defendant, or I am

22 affected, I should be heard in those proceedings where a stay

23 has been granted.

24          That is not the reason why a stay is lifted.

25          DR. DORSETT:  My Lord, with respect --

1          THE COURT:  It may be a factor, but I'm not -- I have

2  gotten to the point in my mind where I do believe that your

3  application in relation to paragraph 9 of my order, I'm getting

4  to that point where I think that application has to be heard, I

5  think.

6          That's where I am getting, that I have provisional

7  views on it, yes.  I am in that agony of the moment where I'm

8  trying to decide, well, Mr. Joseph asked me to deal and

9  determine their application over there.  There are things in

10  that application which opens up doorways, which in my view at

11  this stage, provisionally, are unnecessary in relation to where

12  we are.  That's my view.

13          Yes, whether I have conclusively said all of that, I

14  am not -- I don't think I was asked.  What I was asked was that

15  whether the -- a stay should be granted of these proceedings,

16  and I said, no.  That's what I said.

17          DR. DORSETT:  And, My Lord --

18          THE COURT:  Having said no, there are certain

19  consequential, compelling things that must follow that no.  And

20  the compelling things which follow that no is that it is the

21  Court's mind it is unnecessary to go back to 456.

22          So it seems to me that if I'm correct in that line of

23  thinking, which I haven't gone as far as expressing it itself

24  in my oral ruling, that a determination has to be made of your

25  application to lift this stay granted by paragraph 9.  It seems

1 to me that might be something I can do today.

2          As against determining your application over there as

3 to who is to be heard and whether somebody is removed

4 improperly or all of that, those matters are in that

5 application.  But what is more, in my mind, appropriate for me

6 to consider and determine is your application whether the stay

7 should be lifted to consider any other applications.

8          DR. DORSETT:  Yes, My Lord.  We would --

9          THE COURT:  Yes.

10          DR. DORSETT:  We would ask that that application be

11 heard soonest and parties -- relevant parties to that

12 application would include Mr. Ben Shimon.

13          THE COURT:  But why is it that my order don't have

14 that -- that irresistible conclusion?  Why is that -- why is it

15 that what I have just ruled on and what I have stated is my

16 reasons does not lead inexorably to the conclusion that no stay

17 should be -- that stay in paragraph 9 should not be lifted?

18 Why does it not lead to that logic?

19          DR. DORSETT:  My Lord --

20          THE COURT:  If I'm saying that there's so much

21 compelling reasons for these Provisional Liquidators to

22 continue to act at this stage, that there is a real triable

23 issue over there, which leads this court to feel that this

24 company should be -- these considerations should be determined,

25 these issues should be determined over here?

1          DR. DORSETT:  My Lord, have to confess, I'm a little

2     bit confused, but I -- as to what you are saying or the import

3     of what you are saying.

4          This is what I am saying, and I want to be clear.

5     There is before the Court an application to lift the stay in

6     456.  And what we are saying --

7          THE COURT:  Yes.

8          DR. DORSETT:  -- we are eager for such an application

9     to be heard.

10         THE COURT:  Yes.

11         DR. DORSETT:  What we say further, in the hearing of

12    that application, all affected parties should be given an

13    opportunity to be heard.

14         THE COURT:  Which application?  The one in 456?

15         DR. DORSETT:  The one to lift the stay in 456.

16         THE COURT:  That's the stay granted by paragraph 9.

17    Yes, yes.

18         DR. DORSETT:  Yes.  The application to lift the stay

19    in 456, all affected parties who would be affected by that

20    order, any order in that application, should be given an

21    opportunity to be heard, and that would include Mr. Ben Shimon.

22         THE COURT:  Well, is it -- is it that you are not --

23    you have not really been heard in this application -- in that

24    application?  What else can you tell me, Dr. Dorsett?

25         DR. DORSETT:  My Lord, as I said --

 1              THE COURT:  In relation to lifting the stay.

 2              DR. DORSETT:  My Lord, we -- we would, with respect,

 3  would properly prepare for that application, and more

 4  importantly, My Lord, Mr. Ben Shimon, who would be an affected

 5  party, would need to be heard on our application to lift the

 6  stay in 456.

 7              And we -- we haven't heard from him.  We cannot

 8  respond, having not heard from him.

 9              THE COURT:  Is that a sub- -- is that a submission

10  you are to make?  You are appearing for Mr. Bankman-Fried.

11              DR. DORSETT:  No, I am not appearing for Mr. Bankman-

12  Fried.

13              THE COURT:  Who --

14              DR. DORSETT:  I am appearing for -- so sorry.  So

15  sorry.  I may have misspoken.  I appear for Bankman-Fried, but

16  the application to lift the stay in 456, an affected party is

17  Mr. Ben Shimon.  And Mr. Ben Shimon --

18              THE COURT:  Are you appearing for him as well?

19              DR. DORSETT:  What's that?

20              THE COURT:  Are you appearing for him as well?

21              DR. DORSETT:  No, I'm not appearing for Ben Shimon.

22  Ben Shimon should have his own independent counsel.

23              THE COURT:  Why are you arguing for him then?

24              DR. DORSETT:  I'm not arguing for him.  All parties

25  who are affected by any application with respect to 456 are to

1 be heard.  We don't want to do anything --

2          THE COURT:  If an application -- if an application is

3 filed before a court --

4          DR. DORSETT:  Yes.

5          THE COURT:  -- and the Court has determined issues

6 which has affected that application and the Court -- the

7 applicant in that application is before the Court who were part

8 of the proceeding determining those issues --

9          DR. DORSETT:  My Lord --

10          THE COURT:  -- and I'm asking you, what else can I

11 hear on this application, and you said to me, you need to hear

12 the other side, let me ask again, what else can you present?

13 Having listened to my judgment a few moments ago, what else can

14 you present as reasons why I should lift the stay?

15          DR. DORSETT:  My Lord, I have to confess, I am --

16 just allow me one moment.

17          THE COURT:  You may be right, Dr. Dorsett, on one

18 view, that you have an application, it is not heard.  But I

19 also ask you to consider that my ruling just now has probably

20 made, subject to, at the end of this conversation, my views

21 being confirmed --

22          DR. DORSETT:  Yes, My Lord.  We have -- we have --

23          THE COURT:  -- effectively ruled on that -- the

24 effect of my ruling determines that application.  Is that not

25 the case?  And you have been heard on that ruling?

1          DR. DORSETT:  I cannot say so, My Lord.

2          Among other points that we would love to raise in our

3  -- in our application would be the issue of -- the issue of

4  whether service on our client, Mr. Bankman-Fried, should be set

5  aside.

6          THE COURT:  No, no.  Hear this logic, right?

7          DR. DORSETT:  Yes, My Lord.

8          THE COURT:  This court is satisfied that there were

9  substantial good reasons to grant the order of the 5th of

10  December.  The Court was also satisfied at that stage to impose

11  a stay of the proceedings in 456.  That's where the Court was.

12          DR. DORSETT:  Yes.

13          THE COURT:  Who made an application to stay these

14  proceedings?  The propriety of the order -- whether the order

15  of the 5th of December was properly granted was canvased in

16  these proceedings.

17          You considered that it was properly made on the legal

18  principle and the evidential material before the Court.  It

19  therefore must mean that you are saying that evidentially and

20  legally there are proper circumstances for the Court to appoint

21  Provisional Liquidators.

22          And if the Court was proper to do so, why should the

23  Court -- and the Court made a stay order, why should the Court

24  go back and reopen proceedings when the Court has considered

25  events that are presently occurring and have occurred, justify

1 the order of the 5th of December?

2           DR. DORSETT:  Yes, My Lord.

3           THE COURT:  Why go backwards?

4           DR. DORSETT:  The -- with respect, we made no

5 challenge to the appointment of liquidators.  Our challenge is

6 -- and it's a challenge that can only be properly addressed in

7 a hearing in 456 -- is the issue of the appointment of

8 receivers.

9           We made no challenge to the appointment that this

10 court made in 480 where Barkhouse and Shukla were appointed as

11 Provisional Liquidators.  We did not challenge that.  We did

12 not ask for those -- for that order to be set aside or

13 reversed.

14           What we have challenged is the appointment of

15 Barkhouse and Shukla as receivers, which is an appointment that

16 was made in proceeding 456.  And to date, the parties in 456

17 have not been heard, because there has been no hearing in 456.

18           We ask with respect that there be a hearing in 456

19 where all of the parties in 456 can be heard.

20           THE COURT:  Is it relevant to any of your application

21 that your client, Mr. Bankman-Fried, has not complied with the

22 order made by Justice Williams?

23           DR. DORSETT:  We did comply with -- with our

24 affidavit, My Lord.

25           THE COURT:  I read that affidavit in its entirety.

1          DR. DORSETT:  Well, My Lord, with respect, we have --
2   again, we have not been heard, but we -- we made the
3   submissions -- I think we even did so by way of footnote in --
4   I am looking at footnote number five in our submission that we
5   made in this court, in 480, where we have submitted that Mr.
6   Bankman-Fried has complied with his disclosure obligations.

7          And so we -- we made -- we made that submission here,
8   and we certainly made that submission in 456, which is yet to
9   be heard.

10          THE COURT:  Dr. Dorsett?

11          DR. DORSETT:  Yes, My Lord.

12          THE COURT:  At the risk of me -- of us getting into a
13   time trouble here this morning, and it seems as though we
14   already have, if this court were to go backwards and find that
15   the removal of the director was legally improper, what would be
16   the consequential effect on the appointment of the Provisional
17   Liquidators?  What would -- what would be the effect of this?

18          DR. DORSETT:  It may show -- it may show that perhaps
19   these persons ought not to be appointed as liquidators or
20   remain as liquidators.

21          But again, our emphasis in 456, the removal --

22          THE COURT:  The removal --

23          DR. DORSETT:  Yes, My Lord.

24          THE COURT:  The removal of the director issue is what
25   I'm on.  I'm on that particular --

1          DR. DORSETT:  Yeah, I know, but what I'm saying is

2 that in the context --

3          THE COURT:  Yeah.  What does that do?

4          DR. DORSETT:  It may show, My Lord, that Barkhouse

5 and Shukla are not persons who should properly remain as

6 liquidators or Provisional Liquidators.

7          THE COURT:  Oh, I see.

8          DR. DORSETT:  Yeah, because they have not had regard

9 to the articles of incorporation, which is the governing

10 instrument that governs the conduct of company affairs and

11 company business.

12          THE COURT:  Of course, I ask you what if, so I'm not

13 determining the issue.

14          DR. DORSETT:  Yes.  I respect that, My Lord.  And

15 this is not the 456 hearing, so I understand precisely the

16 nature of the question and --

17          THE COURT:  Right.

18          DR. DORSETT:  -- the defect of my answer.

19          THE COURT:  Okay.  So I've heard you on that part of

20 it, on whether your application should be dismissed,

21 determined, or whatever.

22          On the issue of cost on this application, Mr. Joseph

23 is saying that the order should be -- have in regard to the

24 nature of the matter and possibly the truncated hearing orders

25 that the Court made, that they should be a cost to be assessed

1 order and that such an order is reasonable in the

2 circumstances.

3          Do you have a response to that?

4          DR. DORSETT:  My Lord, I think cost to be assessed is

5 a reasonable order to be made -- have in regard to the outcome

6 to date.

7          THE COURT:  Forgive me, Dr. Dorsett.  It's a merry

8 season, and once in a while we lawyers have to smile.  All

9 right.

10          DR. DORSETT:  Yes.

11          THE COURT:  I wouldn't -- I wouldn't say anything

12 more about that.

13          There was a third point that Mr. Joseph raised.

14 Well, what was it again?

15          MR. JOSEPH:  So, My Lord, the third point is that we

16 seek directions for the urgent hearing of the petition.

17          THE COURT:  Yes.  I don't think anyone can dispute

18 that.  All right.  So here is where I am.

19          Can -- do you have anything to say in relation?

20          DR. DORSETT:  Yes, My Lord.

21          THE COURT:  Mr. Joseph --

22          MR. JOSEPH:  Sorry.  I think, Dr. Dorsett, for once

23 this is not being directed at you.

24          THE COURT:  Mr. Joseph, listen.  I am struggling not

25 to agree with Dr. Dorsett.  I think Dr. Dorsett is making good

1  sense, that he has an application there.  This court opened the
2  facility of allowing persons to apply to lift the stay so they
3  can do certain things in proceedings.

4          And you have heard my judgment.  I have come down on
5  one side.  I have opened a possibility of being wrong, and I
6  have directed myself, nonetheless, to make certain conclusions
7  notwithstanding if I'm wrong.  And this was on a critical point
8  of whether the receivers have lost their status and so on.

9          I think that Dr. Dorsett must be right, that for me
10  to shut the door entirely on him, where he has the opportunity
11  of attacking that appointment of receivers to shareholders, the
12  shares and shareholders are the only one allowed to make an
13  application or file a petition on the Section 301 of the Act.

14          And so it seems to me that Dr. Dorsett is pointing to
15  a critical matter, and whilst I have dealt with issues relating
16  to it, it may be that I have not dealt with all of the issues,
17  and I might find myself doing the wrong thing if I accidentally
18  --

19          MR. JOSEPH:  Can I just -- sorry.  I apologize.
20          THE COURT:  Yes.
21          MR. JOSEPH:  Can I just respond to the argument put
22  forward by Dr. Dorsett?  And hopefully I can do it very
23  quickly.

24          Dr. Dorsett's application, as My Lord has obviously
25  observed, was to impose a stay in the Provisional Liquidators

1  action, 0480.  Now, you've determined that, and you've

2  determined that against Dr. Dorsett and in my client's favour.

3        But what is absolutely critical to understand is what

4  was the basis on which Dr. Dorsett made the application for a

5  stay in 0480?  And as My Lord has just observed in the judgment

6  you've just given, the basis of the application for stay in

7  0480 was absolutely specific.  It was, we need a stay in 0480

8  so that we can lift the stay of 0456 to bring this broad side

9  attack in 0456.

10        And the broad side attack, as it was boiled down,

11  came down to you haven't got a proper cause of action in 0456.

12  That was point number one.  And point number two was that, in

13  any event, your quote/unquote receivership had expired.  I

14  think My Learned Friend referred to this as the standing point.

15        But in all of this, My Lord has now given judgment,

16  and you have disposed of these two points.  You have said, no,

17  I have reviewed the cause of action and I've reviewed the

18  evidence and it is based on a triable issue, and that there

19  were obviously important grounds for the appointment of

20  receivers and likewise the appointment of Joint Provisional

21  Liquidators.

22        So when we come to, you know, the question that My

23  Lord asked, which is important, which is where do we actually

24  stand now today?  And what My Lord said is where we stand today

25  is that the JPLs were properly appointed and their appointment

1  is being confirmed and their work must continue, and that for

2  there to be a proper orderly state of affairs, we must proceed

3  to the hearing of the petition and there should be one set of

4  proceedings.

5          So My Lord's judgment has actually disposed of the

6  basis on which My Learned Friend would seek to put forward the

7  lifting of a stay in 0456 and put it, if you like, as

8  colloquially as you possibly can.  What point does it serve to

9  have another round of the same argument, of hearing Dr.

10 Dorsett, albeit pressing with, you know, enormous amount of

11 passion that we haven't got a cause of action, but My Lord has

12 already determined that we do.  And it was necessary to

13 determine it, because it was part of his ground for seeking a

14 stay in 0480.

15         So the very grounds that he has relied upon to try to

16 win this application for a stay, he has lost that application

17 and has the necessary consequence of his not being entitled to

18 a lift of the stay because, as My Lord has said, those grounds

19 don't exist.  The grounds don't exist for the section 9 -- for

20 the paragraph 9, lifting of the stay.

21         So we are left now with two further points.  My Lord

22 asked Dr. Dorsett a moment ago, is there any challenge to the

23 Joint Provisional Liquidators?  They are in place and their

24 work must continue and the petition must be presented.  And Dr.

25 Dorsett answered you, and I've written this down, so quote,

50

1  there is no challenge to the Joint Provisional Liquidators for

2  their appointment to be set aside or reversed.  Full stop.  End

3  of quotation.

4        Now, on that basis, My Lord, I just -- I don't --

5  hopefully I'm not repeating myself, but we just must move on

6  now.  There's no point or basis of Dr. Dorsett having round two

7  to seek a lifting of the stay, let alone to interfere with in

8  any way the presentation of the petition.

9        And My Lord asked this question.  What would the

10 point be?  I'll now ask Dr. Dorsey.  This is the follow on to

11 the quote I've just given.  You said, what would the point be

12 of raising and arguing about the removal of SBF as a director?

13 That was the question that My Lord asked.

14        Now, I just put in parenthesis, My Lord -- by the

15 way, this was expressly allowed for and provided for in

16 paragraph 24 of the order of the 18th and November.  All right.

17 So is it -- we acted pursuant an expressed power that the Court

18 gave in paragraph 24 of the 18th of November order.

19        But coming back to now the question that My Lord

20 gave, what would the point be of having -- of airing the --

21 once more the question of the removal of SBF as a director?

22        Now, Dr. Dorsett struggled a little bit, and he then

23 came up with this answer.  He said, because it may mean that we

24 can challenge the Joint Provisional Liquidators as not being

25 suitable persons.

1        But My Lord, I've just given you the quotation from

2   Dr. Dorsett.  There is no challenge to the appointment of the

3   Provisional Liquidators or any application to have them set

4   aside or for that order to be reversed.  End of quotation.

5        So I'm sorry if I'm sounding a bit sort of passionate

6   here on the 28th of December.  I'm just concerned that

7   significant legal expenses are being incurred for no valid

8   reason whatsoever.  And there -- there is a -- a real

9   opportunity here now for us to impose order that the petition

10  be heard and that, frankly, the very grounds that Mr. -- Dr.

11  Dorsett relied upon to lift the stay in 0456 have been

12  ventilated, that have been dismissed in the course of My Lord's

13  judgment of about half an hour ago.

14       And we say that there just cannot be merit in Dr.

15  Dorsett having, you know, further days in court to ventilate

16  the same argument that has already been ventilated and

17  dismissed.

18       And I did want to raise one point, My Lord.  It's a

19  point of detail.  Dr. Dorsett said that his submissions in 0456

20  were not before this court.  But I don't understand that to be

21  correct, My Lord, because they were part of the bundle that My

22  Lord has read.

23       And the page number was 0480 bundle at page 606.

24  My Lord had Dr. Dorsett's submissions in 0456, and they were

25  exactly on the lines that Dr. Dorsett summarized just now that

1  he said there's no cause of action and so on and so forth, and

2  My Lord has dealt with that.

3        So we do say that there really is, as part of the

4  overriding objective here, an opportunity which must be grasped

5  to streamline all of this so that we can move to the matter

6  which clearly has to be heard, namely, the petition itself.

7        DR. DORSETT:  My Lord, with respect, whilst My

8  Learned Friend has repeated some of what I've said, he has not

9  repeated it in context.  Yes, we said we made no challenge to

10 the appointment of the provisional receivers.  What we are

11 attacking is we are attacking the appointment in 456.  If we

12 win on that attack, if we win in 456 --

13        THE COURT:  Dr. Dorsett, if you had to tell me in

14 summary, one, two, three, or how much ever, what were the

15 grounds of your application to lift the stay, what would you

16 tell me?

17        DR. DORSETT:  To lift which stay?  In 456?

18        THE COURT:  The stay of 456.

19        DR. DORSETT:  Yes.

20        THE COURT:  You want to lift that stay so you can

21 make an application.  What are the grounds of your application

22 to lift the stay?

23        DR. DORSETT:  Yes, My Lord.  We will ask that the

24 stay be lifted for, among the things --

25        THE COURT:  Well, tell me what they are.

1          DR. DORSETT:  Yes, My Lord.  Among other things, no

2    good, arguable case.  The Claimant has failed to satisfy the

3    test for service or selling the jurisdiction.  Even -- even if

4    they did have a good, arguable case, the action taken by the

5    receivers to appoint themselves as directors was wrong, both

6    contrary to Section 119 of the International Companies --

7    Corporations Act.  It is contrary to the company's articles.

8          There is the whole issue of the -- of the extent of

9    the ex parte order, and that the conduct of the Claimant in not

10   properly progressing his case points to an abuse of the process

11   of the Court.

12          So I would say it's -- it's more -- it's more than

13   just one, two, three.  It is at least five major heads of

14   argument to be made with respect to the lifting of the stay, at

15   least five major heads.

16          THE COURT:  Which one of those -- which one of those

17   becomes relevant if these proceedings are properly before the

18   Court, the petition?  Which one of those is relevant --

19          DR. DORSETT:  My Lord --

20          THE COURT:  -- that is happening here?

21          DR. DORSETT:  -- all are relevant, because if the

22   order, the interim order --

23          THE COURT:  What does service out of the jurisdiction

24   have to do with these proceedings?

25          DR. DORSETT:  My Lord, if Mr. Bankman-Fried was not

54

1 served, there could have been no order made in 456.

2          THE COURT:  Has he ever taken the point of service

3 before?  In his affirmation, did he take that point?

4          DR. DORSETT:  My Lord, we have made -- we have made a

5 point in 456.

6          THE COURT:  That what?

7          DR. DORSETT:  He -- he -- that service ought be set

8 aside.  That is a major point of our argument.

9          THE COURT:  Yes.  Good.  All right.  Good.  So the

10 next one is?  The next one is?

11          DR. DORSETT:  We said that even if we -- we had a

12 good, arguable case for the interim -- for the interim orders

13 and that service was proper, we say that the action by the

14 receivers to appoint themselves as their records was wrong in

15 law.

16          THE COURT:  Justice Williams' order allowed him to do

17 that.

18          DR. DORSETT:  What's that, My Lord?

19          THE COURT:  Justice Williams' order allowed him to do

20 that.

21          DR. DORSETT:  My Lord, we say with respect --

22          THE COURT:  That Justice Williams couldn't do that?

23          DR. DORSETT:  An order of the Court could not --

24 could not allow a person to act contrary to statute, Section

25 119 of the International Business Corporations Act.

1          No order of the Court can give license to break a

2  legislation passed by Parliament.  That would be -- go ahead.

3  That causes me to shiver.  We say what was done was done

4  contrary to Section 119.

5          THE COURT:  But a stay of proceedings, doesn't it

6  really say that whatever issues are joined between these

7  parties or whatnot, these are not now relevant or -- because we

8  -- we are moving ahead?

9          DR. DORSETT:  My Lord --

10          THE COURT:  Which section do you say it is in breach

11  of?  Section 119?

12          DR. DORSETT:  Yes.  Section 119.

13          THE COURT:  Of what?

14          DR. DORSETT:  Of the International Business

15  Corporations Act.

16          THE COURT:  What does that section say?

17          DR. DORSETT:  My Lord, I don't have that --

18          THE COURT:  So what do you think it says?  What do

19  you think it says?

20          DR. DORSETT:  It points to the fact that where there

21  is to be like a change of directors, there need not be a

22  meeting, a shareholders meeting, but it can proceed if there is

23  written consent of 100 percent of the shareholders.

24          THE COURT:  So you need to get that section.  I'm

25  looking at it, Dr. Dorsett.  It doesn't make anything -- it

1 doesn't say anything in relation to what you are saying.

2          DR. DORSETT:  My Lord, that's -- that's the argument

3 that we intend to make and fully develop in 456.

4          THE COURT:  Well, how is that relevant to where we

5 are?

6          DR. DORSETT:  My Lord, if -- My Lord, here is the

7 relevance.

8          THE COURT:  Whether the directors are removed

9 improperly or not, how is that relevant if these proceedings

10 are properly before the Court?  How is that relevant?

11          DR. DORSETT:  My Lord, as I said, if they acted

12 contrary to law, if we make --

13          THE COURT:  I want to ask you a question, Dr.

14 Dorsett.  Here is the question.  A matter of principle.

15          DR. DORSETT:  Yes, My Lord.

16          THE COURT:  Is it possible for a decision of the

17 Court by its mere effect determine another application which

18 the Court -- which is pending before the Court?  Is that

19 possible?

20          DR. DORSETT:  I would say it would have to be a very

21 exceptional circumstance and include that all parties in the

22 other matter were heard.   It would have to be at a minimum --

23          THE COURT:  Or they're going to come to argue that

24 you are right?

25          DR. DORSETT:  What?

1          THE COURT:  They're going to come to argue that you

2 are right?

3          DR. DORSETT:  No, My Lord.

4          THE COURT:  You are the applicant in the other matter

5 as well.  You are the one who's before this court.  Stop

6 telling me what the other party is going to be saying.

7          DR. DORSETT:  No, no, no.  I cannot -- I cannot say

8 what they would say.  What I can say, once they have been given

9 an opportunity to be heard, whatever they say can inform us and

10 the Court as to the arguments that we present.  We can't go on

11 -- we're here in -- in a state where we simply haven't heard

12 from Mr. Ben Shimon.

13          And as a result thereof, it cannot be said what

14 arguments -- how the arguments may have turned, how they would

15 have developed, how -- how they would impress the Court if the

16 parties were never given an opportunity to be before Your

17 Lordship and to have -- have their say.

18          THE COURT:  What else can you tell me in relation to

19 your grounds?

20          DR. DORSETT:  My Lord --

21          THE COURT:  Because I'm looking at Section 119.  I'm

22 looking at your application.  I have them open before me.  I'm

23 looking at Section 119, and Section 119 does not say that a

24 court cannot order the removal of a director.

25          DR. DORSETT:  Yes, but I --

58

1          THE COURT:  So what are you relying on?  Just tell me

2 that, please.  Can you get your Act, please?  Get your Act.

3          DR. DORSETT:  My Lord, quite frankly, I did not come

4 here today to argue 456.  I was simply hoping that we would get

5 a date for the hearing of application for the lifting of the

6 stay in 456 and possibly directions for that hearing.

7          I came with the -- the papers I came today were

8 papers in 480.  That is what I came today with.  I came today

9 with papers --

10          THE COURT:  All right, Dr. Dorsett.  That's enough.

11 That's enough.

12          Mr. Joseph, do you have -- do you have any draft

13 directions or directions that you want to suggest to this court

14 to -- to move the petition forward?  I cannot hear -- I will

15 not -- I will not determine the application to lift the stay

16 today.  I will not -- I will not rule on it.

17          I believe that there is an uneasy feeling that I may

18 be erring.  So I will -- I can't hear it today.  I can't hear

19 it tomorrow.  Neither can I hear it before my appointment comes

20 to an end.  I will indicate to the Court office that the

21 application needs to be sent to the judge who will come

22 following, and that judge will set it down for a date, I

23 expect.

24          I can't tell the judge what to do, but the Court will

25 be ceased a bit.  Dr. Dorsett, you can follow up on it over the

1  next couple of days, because as I said, I cannot hear it now.

2  I have some -- a number of things which I must complete before

3  the 31st.  And I suspect I will be creating an unusual burden

4  for everyone if I were to set it down between now and the 31st.

5          So, I agree with you, Dr. Dorsett, that I will -- not

6  for the reasons that you have given, but I feel that you say

7  you haven't come prepared to argue it, and that last statement

8  of yours is the one I am going to use to say, okay, well, I

9  can't determine it.  You can't properly answer me, and I think

10 I should allow you the opportunity, a reasonable opportunity,

11 to answer me on it, lest I miss something.

12          And so costs to be assessed on the application.  It

13 seems that both sides are agreed that that is a reasonable cost

14 order to make.

15          May I ask that Dr. Joseph -- Mr. Joseph, that you

16 send to Dr. Dorsett, so that we can get to lunch, those draft

17 directions that you suggest, have him look at it, see if there

18 can be an agreement on the movement of the petition going

19 forward.  And please send that to me so that I can add that to

20 my -- the order that I will give in this matter.  And I will

21 sign out both that and the other one of the 14th of December

22 today, unless --

23          MR. JOSEPH:  I'm very -- I'm very grateful.  Of

24 course, we will do that.  I just want -- I don't want there to

25 be any sort of misunderstanding.  In relation to the cost

1  order, we are asking, obviously, that the costs be paid by SBF,

2  whose application was dismissed, to be assessed.

3           And we are also asking that you certify that it was

4  reasonable to instruct leading counsel.

5           THE COURT:  I think I'm in agreement with both of

6  those, and I think I heard no disagreement from the other side.

7           MR. JOSEPH:  We will -- we will send the directions.

8  In relation to -- and I'm sorry.  This is a very small detail,

9  but it's not unimportant.  In relation to the further

10 directions, as it were, for the hearing of Dr. Dorsett's

11 application to lift the stay in 0456, we would be very anxious,

12 of course, that that could only be heard after you have

13 provided the written judgment, because your written judgment is

14 going to be of very central importance.

15          THE COURT:  Is the transcript of my judgment here?

16 No.  And so, I think the parties can use the transcript going

17 forward.

18          I don't intend to have this thing long, but as the

19 events of Emergent and FTX are unfolding in rapid escalation,

20 my holidays have been in rapid escalation as well.  And so I

21 may not get to sit down this afternoon to finish this up, so I

22 will not tag -- I will not tag the hearing of that application

23 to do written decisions or any written decision to be

24 delivered.  Please use the oral transcript.

25          I really want to get this out.  Everything I read out

61

1 there was in writing already.

2         MR. JOSEPH:  I understand.

3         THE COURT:  But there are things which I want to
4 populate certain reasons, things, and even though it may not
5 take a lot of time, it will take some time.  And the next
6 couple of days are going to be troublesome for me.  So, please
7 forgive me.

8         MR. JOSEPH:  Of course.  We'll send you the draft
9 directions anyway in the -- the petition, in relation to the
10 petition.  And we will, of course, also add in the cost aspects
11 that we've just discussed.

12         THE COURT:  Yes, please.  So the order that you --
13 draft an order for me, Mr. Joseph and share with the other side
14 that the application is dismissed and the cost order and the
15 consequential directions.

16         DR. DORSETT:  I think it's fair for me to say that
17 the hearing of what I would say the final petition for the
18 winding up of the company, which will be a petition brought by
19 Angela Barkhouse and Toni Shukla as receivers of Emergent
20 Technologies, Limited, that petition must be a petition that
21 can only properly be heard after there has been a hearing of
22 our application to determine whether or not the appointment as
23 receivers stands or falls.

24         THE COURT:  I am not going to make such a -- give
25 such a direction, Dr. Dorsett.

1          DR. DORSETT:  No, no.  I --

2          THE COURT:  I am out of here in two days.  I am not

3 going to give such a direction.  This will be much for the

4 judge coming into the matter.

5          DR. DORSETT:  No, My Lord.  I am not asking you to

6 give such a direction.  You have asked Mr. Joseph to prepare a

7 draft.  I think it is only fair in saying that in the

8 preparation of the draft that what I have said has some

9 consideration and have a bearing --

10          THE COURT:  I have my views on your application.

11 Those views have not been taken to the point of conclusions or

12 findings.  And at this stage where I am, I do not see why the

13 draft or the order that I will -- that I have made today, and

14 which I will see some directions being submitted to me in draft

15 form on, should include any reference to the petition having to

16 wait in any line behind any application.

17          Otherwise, if I were dealing with the matter, I would

18 probably set down your application to be heard soonest, I will

19 tell you that, yes, if I were dealing with the matter.  But I

20 am not.  So I am not going to bind the hands of any court when

21 they see my reasons and then they get the chance to perhaps

22 look at skeleton arguments you may file on your application to

23 lift this stay and digest all you wish to say, whether or not

24 there is a need to hear it, and if so, when to hear it.  And

25 all of that will be determined by the judge coming behind me or

1  after me.

2         DR. DORSETT:  But My Lord, surely you must appreciate
3  --

4         THE COURT:  Because you have not yet -- I have looked
5  at your grounds a few moments ago and you have -- there is
6  nothing in your grounds and you have not yet said to me
7  anything reference to the Act otherwise, which I just looked
8  at, that makes me think that there is -- that there is any
9  reason to accede to what you are saying.

10        These are provisional views being expressed.  I
11 understand where I am.  And so I am not going to saddle or
12 burden the order I'm making today with any reference to
13 chronological timelines in relation to any application in
14 relation to 456.  I will not do that.  It will be a matter for
15 the subsequent court.  Yes.

16        So you make your applications, you file your
17 submissions, you write to the Court office.  I am saying that I
18 do believe your application to lift the stay in 456 is an
19 application which is pending before the Court.  And it should
20 be heard soonest, I say that.

21        That is as far as I intend to go.  If I had my way,
22 Dr. Dorsett, I will hear it today or this week.  I can't.  Yes.

23        So, Mr. Joseph, Dr. Dorsett, please share the orders
24 among yourself and get it to me and I will sort it out today
25 and events will go on as they will go on.  Yes.  Thank you.

1            MR. JOHNSON:  My Lord, may I be heard -- My Lord, may

2  I be heard on the matter of directions for the petition?

3            THE COURT:  Who -- tell me your name.

4            MR. JOHNSON:  I'm Lenworth Johnson.  I represent

5  BlockFi or BlockFi as an interested party.

6            THE COURT:  Well, I have made -- I have made it very

7  clear --

8            MR. JOHNSON:  And My Lord --

9            THE COURT:  I have made it very clear that there is

10  only one interested party formally added to this matter, which

11  is Bankman-Fried.

12            MR. JOHNSON:  Yes, My Lord.

13            THE COURT:  The other parties in this court are

14  persons who are -- I have noted their appearances, but simply

15  on the basis that they are -- I did think I said -- I believe I

16  said that they should file no affidavits or present any

17  arguments.  Did I not say that?

18            MR. JOHNSON:  Well, I'm not presenting an argument,

19  and I'm not filing an affidavit.

20            I am -- wish to be heard on the matter of the

21  directions --

22            THE COURT:  But did I say that -- hold on.  I have an

23  affidavit, which I did read.  Dr. Dorsett, what was the

24  position that the Court had taken, do you recall, in relation

25  to whether any of the parties, other parties present were able

1 to file affidavits and present arguments?  What was the Court's

2 position on that, Dr. Dorsett?  Can you recall?

3          DR. DORSETT:  I believe it was the Court who said --

4 it was the Court who said that's not the way it's done.

5          MR. JOHNSON:  Yes.  My Lord, I am not challenging

6 that.  I'm not seeking to file an affidavit with --

7          THE COURT:  Mr. Jay [sic] -- is it Jay?

8          MR. JOHNSON:  Mr. Johnson.

9          THE COURT:  Johnson.  Mr. Johnson.  Please -- please

10 tell me quickly what it is you want to say.

11          MR. JOHNSON:  Well, I heard in the matter of

12 directions, My Lord, BlockFi -- I filed on behalf of BlockFi a

13 notice of acting and which it -- which made clear that BlockFi

14 was in opposition to the petition.  And that's why I'm now

15 raising this.

16          BlockFi specifically said that it opposes the

17 petition.  And I heard Mr. Joseph say, you know, in his -- in

18 his proposed directions that he's going to be -- what he set

19 out, he believes that the -- the Court should set out in

20 writing, or the opposers, those who oppose the petition should

21 set out in writing within five days opposition to the position.

22          And that again just seems to me, My Lord -- I've

23 listened to all what has gone on in respect to some --

24          THE COURT:  Mr. Joseph is not making orders in this

25 court.  This court is going to make the orders.  So whatever

1  Mr. Joseph wants to suggest, your -- Dr. Dorsett is going to

2  see them.  I don't know that --

3          MR. JOHNSON:  Well --

4          THE COURT:  -- he tried to share them with any of

5  these.

6          MR. JOHNSON:  My Lord, I'm concerned over the short

7  time period.  And My Lord, I believe -- or we believe that

8  proper -- this is a -- this is a petition and the proper --

9  the proper direction should be given for petition in terms of

10 --

11         THE COURT:  Mr. Johnson, do you have an application

12 to be made an interested party in this matter?

13         MR. JOHNSON:  No, My Lord.  I have filed a notice of

14 acting, My Lord, pursuant to the insolvency -- Insolvency Rules

15 of England, Insolvency Rules 2016 of England, My Lord, which as

16 far as I'm concerned gives -- gives some rights in the matter.

17         THE COURT:  As far as you're concerned.  I don't

18 know.  So you believe standing to make arguments and make

19 submissions in this case?

20         MR. JOHNSON:  Well, My Lord, I'm not -- all I'm just

21 saying -- all I really wanted to say was that in terms of

22 directions for the petition, I believe -- we believe that

23 standard directions should be made, in other words, disclosure,

24 list of documents agreed or not agreed, witness statements and

25 at trial, a proper trial of the petition.

1        I don't know what David -- Mr. Joseph, QC, was

2   proposing when he says, you know, the opposer should indicate

3   within five days whether to oppose the petition or not, to

4   provide reasons, et cetera.  I just wanted to raise that to

5   say, as an interested party --

6              THE COURT:  Mr. Johnson --

7              MR. JOHNSON:  -- that proper directions --

8              THE COURT:  -- you have no standing in this case to

9   make any suggestions and that I do not know why it is you

10  believe that if you file some notice of entry of appearance or

11  what it is that you feel that that gives you the right.

12             I have heard you.  I've listened to you nonetheless,

13  but I think if you want to be a part of these proceedings,

14  there's a -- there's a process.  And as you are asking any --

15  some party to get it right, please put an application in.

16             I have an application for Mr. Bankman-Fried, and I

17  believe that the application was properly made for him to be

18  made an interested party and he became an interested party very

19  earlier on.

20             I hear your BlockFi.  BlockFi has been mentioned in

21  my decision.  And so make an application to be made an

22  interested party.  But at this stage, I think Dr. Dorsett's

23  memory is correct.  I did say that I don't know what to make of

24  all of this.  Yes.

25             MR. JOHNSON:  My Lord --

1         THE COURT:  Sorry.  Yes.

2         MR. JOHNSON:  My Lord, may I make -- may I make an

3 application for -- to make an application for leave within

4 seven days?

5         THE COURT:  You can -- you can do that.  I don't

6 think I need to give you leave to make an application.  Make an

7 application and let a court determine it.

8         MR. JOHNSON:  Very well, My Lord.

9         MR. JOSEPH:  My Lord, I need to say this, that, first

10 of all, Mr. Johnson has talked about directions, standard

11 directions, which would be for trial and not for the hearing of

12 a petition.  Point number one.

13         Point number two is we cannot hold this matter up

14 whilst Mr. Johnson works out whether he's going to be making an

15 application to be joined as an interested party.  We will

16 present our directions for the petition and we will be asking

17 My Lord to make those directions.

18         Obviously, Dr. Dorsett will have his say.  We will be

19 asking My Lord to make directions between now and the end of

20 your sort of term in office, if I can put it that way, at the

21 end of this year.

22         THE COURT:  Thank you.  All right.  So unless there

23 is anything from Dr. Dorsett, I propose to adjourn the matter

24 now.  I wish you all safe year and Happy New Year.  Thank you.

25         MR. JOSEPH:  Thanks, My Lord.

1        DR. DORSETT:  Thank you, My Lord.

2

3                        * * * * *

4

5                **C E R T I F I C A T I O N**

6        We, KAREN WATSON and LORI KNOLLMEYER, court approved

7   transcribers, certify that the foregoing is a correct

8   transcript from the official electronic sound recording of the

9   proceedings in the above-entitled matter, and to the best of

10  our ability.

11

12  /s/ Karen Watson

13  KAREN WATSON

14

15  /s/ Lori Knollmeyer

16  LORI KNOLLMEYER

17  J&J COURT TRANSCRIBERS, INC.    DATE:  20 JANUARY 2023

18

19

20

21

22

23

24

25