**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>Hearing Date: October 24, 2023 at 10:00 p.m.<br>Objection Deadline: at the hearing<br><br>Ref: Docket No. 3024 |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF
THE EMERGENT DEBTOR FOR ENTRY OF AN ORDER APPROVING
POSTPETITION FINANCING AND GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his counsel, files this objection to the *Motion of the Debtor Emergent Fidelity Technologies Ltd* ("Emergent") *for Entry of an Order Approving Postpetition Financing and Granting Related Relief* [D.I. 3024] (the "Motion"), and in support of that objection, states:

**PRELIMINARY STATEMENT**

1. By the Motion, Emergent seeks Court approval of a DIP facility of GBP £250,000 (approximately $305,000), from its prepetition lender. The U.S. Trustee objects to the Motion for two reasons. First, the interest rate on the proposed DIP financing is exorbitant, at 150% on the low end, and 225% on the high end, depending on when it is repaid. If Emergent repays the £ 250,000 loan in full within 6 months, it will have to pay its lender a total of GBP £625,000,

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

consisting of £ 250,000 in principal and £ 375,000 in interest. If Emergent takes longer to repay the post-petition loan, the amount of interest could go as high as £ 562,500, for a total payment of £ 812,500. Emergent currently has no assets by which to repay the loan, and no operations, so it is unclear how or when it will be able to repay the proposed loan.

2. The U.S. Trustee also objects to the Motion because the purpose of the financing is to pay the professional fees of counsel representing Emergent in an appeal in Antigua. However, Emergent has not sought this Court's approval to retain Antiguan counsel, and the U.S. Trustee understands that Emergent has no intention of doing so, even though Antiguan counsel would appear to fall under either subsection (a) or (e) of section 327 of the Bankruptcy Code.

3. For these reasons, set forth in more detail below, the Motion should be denied.[2]

**JURISDICTION & STANDING**

4. Pursuant to (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion and this Objection.

---

[2] In addition to the issues addressed in this Objection, the U.S. Trustee objects to certain provisions set forth in the form of proposed order. The U.S. Trustee's counsel believes she has reached an agreement with counsel to Emergent and the DIP lender as to modifications to be made to the proposed form of order. The U.S. Trustee reserves the right to supplement this Objection, or to assert additional objections at the hearing on the Motion, if such modifications are not made. In addition, the U.S. Trustee reserves all rights to object to any modifications that may be made to the form of order after the filing of this Objection.

5. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## **FACTUAL BACKGROUND**

7. Emergent filed a voluntary chapter 11 petition in this Court on February 3, 2023 (the "<u>Petition Date</u>"). Emergent continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108, through two Joint Liquidators[3] who were appointed by the Antiguan Court. Mot. ¶6.

8. On May 10, 2023, this Cout entered a *Final Order (I) Authorizing Joint Administration of the Emergent Debtor's Chapter 11 Case and (II) Granting Related Relief*, which provided that Emergent's Chapter 11 case would be jointly administered with those of FTX Trading Ltd. and its affiliated debtors (the "<u>FTX Debtors</u>"), who filed their voluntary chapter 11 petitions on or after November 11, 2022 in this Court.

---

[3] Capitalized terms not defined herein shall have the definition set forth in the Motion.

9.      No official committee of unsecured creditors has been appointed in Emergent's case.[4]

10.     On October 6, 2023, Emergent filed the Motion.  [D.I. 3024].  By the Motion, Emergent seeks to obtain post-petition financing in the amount of GBP £ 250,000, which Emergent represents is approximately USD $302,000 as of the filing of the Motion, from Fulcrum Distressed Partners Limited, a limited company organized under the laws of the British Virgin Islands, and/or its designees.  Mot. ¶ 1(a) & ¶13 (ecf p. 7 of 24).

11.     The DIP loan must be repaid in full at the *earliest of* (i) the 450th day from the Petition Date, (ii) the Termination Date, and (iii) the conversion of the Bankruptcy Case to a chapter 7 proceeding or dismissal of the Antigua Proceeding.  Mot. ¶13, ecf p. 17 of 24.  The 450th day from the Petition Date would be April 28, 2024.

12.     The interest rate on the proposed DIP loan is stated in the Motion as follows:

> Return on New Money Amount equals to principal outstanding amount of the funded New Money Amount plus:
>
> - 150% of the principal outstanding amount of the funded New Money Amount if repaid before 180 days following the date the funding amount is funded (the "Funding Date");
>
> - 175% of the principal outstanding amount of funded New Money Amount if repaid after 180 days but before 270 days following the funding date;[5]

---

[4]  On December 15, 2022 an official committee of unsecured creditors was appointed by the U.S. Trustee in the cases of the FTX Debtors.

[5]  It is not clear under what circumstances the interest rate of more than 175% would take effect, given that the DIP loan is required to be repaid by no later than April 28, 2024, which is 187 days after the funding of the DIP loan, assuming funding on October 24, 2023 (the hearing date of the Motion). The interest rates that are higher than 175% would take effect only if the loan was not repaid until after 270 days following the funding date, which would be long after the last possible repayment date of April 28, 2024.

4

- 200% of the principal outstanding amount of funded New Money Amount if repaid after 270 days but before 360 days following the funding date; and

- 225% of the principal outstanding amount of funded New Money Amount if repaid after 360 days following the funding date.

13. The DIP Lender is also Emergent's prepetition lender, who lent Emergent funds the day before the Petition Date to fund this bankruptcy case. *See* Mot. at ¶¶ 1(a) & 7. The DIP Term Sheet attached to the Motion sets forth the following information regarding the prepetition loan from the DIP Lender:

> As of the Petition Date (as defined below), the aggregate amount of all loans, letter of credit obligations and other Prepetition Obligations (as defined below) owing by Borrower to Lenders under and in connection with the Existing Credit Agreement was not less than [$11,129,707.20], consisting of (A) principal funding return (including the 5% Administration Fee) in the aggregate principal amount of not less than [$11,054,707.20], plus interest accrued and accruing thereon and (B) Closing Fees in the aggregate amount of not less than $75,000, together with all costs, fees, expenses (including attorneys' fees and legal expenses), and other charges accrued, accruing or chargeable with respect thereto (together with all other obligations in the Existing Credit Agreement existing immediately prior to the Petition Date, collectively, the "Prepetition Obligations").
>
> As of the date hereof [October 6, 2023], the aggregate amount outstanding under the Existing Credit Agreement is not less than **$12,160,177.92.** The Principal Funding Return shall continue to accrue pursuant to the Liquidation Funding Agreement as follows:
>
> After 10/30/2023 - $13,265,648.64
>
> After 1/28/2024 - $14,371,119.36

*See* DIP Term Sheet, D.I. 3024-1, ecf p. 20 of 28.

14. The interest rate on the prepetition loan is not clear from the above language. The principal amount of the loan is stated to be [$11,054,707.20] as of the February 3, 2023 Petition Date, and the amount that will be owed (with interest) after 1/28/2024 is stated to be $14,371,119.36. That would result in an interest rate of approximately 30% per annum. In

5

comparison, the lowest interest rate on the DIP Financing is five times that amount. However, the stated increase in the amount owed on the prepetition loan for the 24 day period between October 6, 2023 and October 30, 2023 would indicate a higher interest rate, although still less than that of the proposed DIP loan.

15. The purpose of the DIP loan is to pay the professional fees of counsel representing Emergent in the Antiguan Appeal. Mot. Ex. B (Declaration of Angela Barkhouse) ¶¶ 10-12; Mot. Ex. A (Proposed Form of Order) ¶ D (1) (a) (DIP Facility is needed for Emergent "to pay its professionals in the Antiguan Appeal").

16. Emergent has not sought this Court's approval to retain its Antiguan counsel, and based on communications with Emergent's counsel, the U.S. Trustee understands that Emergent does not intend to do so.

17. The Emergent Debtor has asserted that it has no assets currently available to it because in January 2023 the Department of Justice seized the only assets it had, which was shares of Robinhood Markets, Inc. and the proceeds of the sale of some of those shares. Mot.¶ 4.

## ARGUMENT

I. **The Motion Should Be Denied Because the Terms of the Proposed DIP Financing Are Not Fair or Reasonable, and the DIP Loan Is Therefore Not an Appropriate Exercise of Emergent's Business Judgment.**

18. Emergent seeks DIP financing under sections 364 (c) and (d) of the Bankruptcy Code, which provides as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
>> (A) the trustee is unable to obtain such credit otherwise; and
>>
>> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

11 U.S.C. § 364 (c) & (d).

19. In seeking approval of a post-petition loan, a debtor has the burden of proving that, "***[t]he terms of the transaction are fair, reasonable,*** and adequate, given the circumstances of the debtor-borrower and the proposed lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del 2011)(citations omitted). A debtor also must establish that it is "unable to obtain unsecured credit per 11 U.S.C. § 364(b)," and that "[t]he credit transaction is necessary to preserve the assets of the estate." *Id.; see also In re Crouse Group, Inc.,* 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

20. In determining whether to approve a debtor's request under section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment. *See U.S. Bank Trust Nat'l Assn v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 287 (Bankr. S.D.N.Y 2013). "[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised

*so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.*" *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (emphasis added).

21. An interest rate of between of 150% and 225% does not meet the requirements of being "fair" and "reasonable." *In re L.A. Dodgers*, 457 B.R. at 312. Such an extraordinarily high interest rate indicates that Emergent's prepetition lender is leveraging the bankruptcy process and powers not to benefit the estate, but to benefit itself. Therefore the DIP financing should not be approved as within the reasonable business judgment of Emergent. *See Ames*, 115 B.R. at 40.

22. Another term that is not fair or reasonable is the maturity date of the DIP loan, which at the latest will be April 28, 2024, when there is nothing to indicate that Emergent will have any funds by such date to repay the loan.

23. Emergent also seeks a finding that the DIP Lender is a good faith lender, entitled to the protections of subsection (e) of section 364 of the Code, which provides:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, **to an entity that extended such credit in good faith**, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e) (emphasis added).

24. A lender that offers post-petition DIP financing at an interest rate of between 150% and 225% would not appear to be acting in good faith. This is especially true given that the DIP Lender is also Emergent's prepetition lender, and therefore has in interest in Emergent succeeding in the Antiguan Appeal to increase the possibility of Emergent being able to repay the DIP Lender's prepetition loan of over $12 million.[6]

25. The U.S. Trustee leaves the Emergent Debtor to its burden to establish it is reasonable business judgement to borrow funds at the interest rates set forth in the Motion, to be repaid in less than seven months, and to establish that the DIP Lender is a good faith lender entitled to the protections of section 364(e) of the Code.

## II. The Motion Should Be Denied Because the DIP Financing Will Be Used to Pay the Fees of Counsel that Have Not Been Retained in this Bankruptcy Case.

26. The purpose of the requested DIP Financing is for Emergent to pay its Antiguan counsel to represent Emergent in an appeal pending in Antigua. However, Antiguan counsel has not been retained in Emergent's bankruptcy case in this Court, nor has any application to retain such counsel been filed.

27. The range of services proposed in the Application to be provided by Antiguan counsel to Emergent would appear to fall within section 327(e) of the Code, provided that such counsel represented Emergent prior to the Petition Date. That section of the Code provides:

> The trustee, with the court's approval, may employ, ***for a specified special purpose, other than to represent the trustee in conducting the case***, ***an attorney that has represented the debtor***, if in the best interest of the estate, and

---

[6] Based on the description of the Antiguan Appeal in the Motion, it does not appear that winning such appeal would result in any funds or other property coming into the Emergent estate. However, losing the Antiguan Appeal would appear to take control of Emergent out of the hands of the Joint Liquidators and back into the hands of Mr. Samuel Bankman-Fried, which presumably would make recovery on the prepetition loans obtained by the Joint Liquidators that much more difficult.

> if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e) (emphasis added).

28. The "specified special purpose" for which counsel may be retained under section 327(e) must be "unrelated to the reorganization." *In re Congoleum Corp.*, 426 F.3d 675, 689 (3d Cir. 2005); *In re Johnson*, 433 B.R. 626, 637 (Bankr. S.D. Tex. 2010) (citing *In re Goldstein*, 383 B.R. 496, 501 (Bankr. C.D. Cal. 2007)); *In re Running Horse, L.L.C.*, 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007). Section 327(e) of the Code clearly requires bankruptcy court approval of counsel that will represent debtors in matters outside of the bankruptcy proceedings. *See In re Goldstein*, 383 B.R. 496 (approving retention of separate counsel under section 327(e) to represent each of the joint debtors in their divorce proceeding pending in state court).

29. An attorney may represent a debtor pursuant to section 327(e) only if "(1) employment of the attorney must be for a specified special purpose, which does not include representing the trustee in conducting the case, (2) the attorney must have previously represented the debtor, (3) the employment of the attorney must be in the best interest of the estate, and (4) the attorney must not have any interest adverse to the debtor or the estate with respect to the matter on which special counsel is to be employed." *In re Johnson*, 433 B.R. at 635; *see also In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005).

30. Emergent does not identify its Antiguan counsel in the Motion, nor does it indicate whether such counsel represented Emergent prior to the Petition Date. If Antiguan counsel did not represent Emergent prior to the Petition Date, then it would have to be retained under subsection (a) of section 327 of the Code, which provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more ***attorneys***, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).

31. As a law firm representing the Emergent debtor, Antiguan counsel would appear to fall squarely under either subsection (a) or (e) of section 327 of the Code. However, even if that were not the case, Emergent would need to seek this Court's approval under section 363(b) of the Code to pay their Antiguan counsel. That section of the Code provides that a debtor may "after notice and hearing" use, sell, or lease "other than in the ordinary course of business" property of the estate. *See* 11 U.S.C. § 363(b). Accordingly, a non-ordinary course transaction concerning property of the estate requires adequate notice and hearing.

32. Emergent has not made a showing, or even asserted, that the retention of their Antiguan counsel is an ordinary course transaction. *See In re Roth American, Inc.*, 975 F.2d 949, 952-53 (3d Cir. 1992) (describing "horizontal dimension" and "vertical dimension" tests to determine whether proposed transaction falls within the debtor's ordinary course of business). Therefore, even if Emergent's Antiguan counsel did not have to be retained under section 327 of the Code, which it does, Emergent would have to meet the requirements of section 363(b) of the Code before it could pay such counsel's fees.

## RESERVATION OF RIGHTS

33.     The U.S. Trustee reserves all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter, or modify this Objection, file any appropriate Motion, conduct any discovery as may be deemed necessary or as may be required, and assert such other grounds as may subsequently become apparent.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order denying the Motion and granting such other relief as the Court deems appropriate.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>October 23, 2023 | Respectfully submitted,<br><br>ANDREW R. VARA<br>UNITED STATES TRUSTEE<br>REGIONS 3 AND 9<br><br>By: */s/ Juliet Sarkessian*<br>Juliet Sarkessian<br>Benjamin A. Hackman<br>Jonathan W. Lipshie<br>Trial Attorneys<br>Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>(302) 573-6491<br>Juliet.M.Sarkessian@usdoj.gov<br>Benjamin.A.Hackman@usdoj.gov<br>Jon.Lipshie@usdoj.gov |