**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date:  November 15, 2023 at 1:00 p.m. (ET) |
| | Objection Deadline:  November 8, 2023 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN
ORDER DISMISSING THE CHAPTER 11 CASES OF
DEBTORS LIQUID FINANCIAL USA, INC., LIQUIDEX,
LLC, ZUBR EXCHANGE LIMITED AND DAAG TRADING, DMCC**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), dismissing the chapter 11 cases of Debtors Liquid Financial USA, Inc. ("Liquid Financial"), LiquidEX, LLC ("LiquidEX"), Zubr Exchange Limited ("Zubr") and DAAG Trading, DMCC ("DAAG" and, together with Liquid Financial, LiquidEX and Zubr the "Dismissal Debtors"), pursuant to sections 105(a), 305(a), 349, and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Certain facts supporting this Motion are set forth in the concurrently filed *Declaration of Edgar W. Mosley II* (the "Mosley Declaration").  In support of the Motion, the Debtors respectfully state as follows:

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Preliminary Statement**

1. The Debtors conducted an integrated global business and commenced these Chapter 11 Cases with respect to 102 entities in order to preserve global value in the face of the collapse of the FTX group. As detailed in the First Day Declarations, these Chapter 11 Cases are unprecedented given, among other things, the pervasive lack of dependable corporate records available to the Debtors at the Petition Date. Due to these unprecedented circumstances, the Debtors were in many instances required to start from scratch to identify entities within the FTX group and their status, assets and liabilities.

2. Accordingly, since the commencement of these Chapter 11 Cases, the Debtors have been working to identify certain Debtor subsidiaries whose Chapter 11 Cases should be dismissed. To date, upon request by the Debtors, this Court has dismissed the chapter 11 cases of three foreign subsidiaries.

3. The Debtors now seek court approval to dismiss the Chapter 11 Cases of four immaterial Debtors: Liquid Financial, LiquidEX, Zubr and DAAG. The Debtors have verified that (i) two of these entities, Liquid Financial and DAAG, were dissolved, (ii) the third entity, Zubr, has no historical business or prospects to commence any activity in the future, and (iv) the fourth, LiquidEX, is not part of the FTX group.

4. The dismissal of the Chapter 11 Cases of these four entities is in the best interests of the Debtors and the estates. A successful reorganization or resolution of Liquid Financial, DAAG, Zubr and LiquidEX is not possible: the first two entities are dissolved, the third has no reasonable likelihood of rehabilitating its operations, and the fourth does not belong to the FTX group. It is also not sensible to continue these four Chapter 11 Cases and incur the associated administrative expenses without any corresponding benefit to the Debtors or their estates. Accordingly, this Court should dismiss the Chapter 11 Cases of the Dismissal Debtors.

**Background**

5.  On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6.  Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

**Facts Specific to the Relief Requested**

**I.    Liquid Financial**

7.  Liquid Financial was a Delaware corporation incorporated in January 2018 to operate as a crypto exchange in the United States. Liquid Financial was a partially owned subsidiary of Debtor FTX Japan Holdings K.K. (formerly known as Liquid Group Inc.), which was acquired in April 2022 by Debtor FTX Trading. (Mosley Decl. ¶ 5.)

8. On March 15, 2022, prior to the commencement of these Chapter 11 Cases, the dissolution of Liquid Financial was approved by the company's shareholders. (Mosley Decl. ¶ 6.) The certificate of dissolution of Liquid Financial was filed with the Secretary of the State of Delaware on May 24, 2022. (Mosley Decl. ¶ 6.) To the Debtors' knowledge, and given the dissolution of the entity, Liquid Financial does not have any assets or operations.

**II.    LiquidEX**

9. LiquidEX is a New York limited liability company formed in January 2018. LiquidEX was a wholly-owned subsidiary of Liquid Financial. (Mosley Decl. ¶ 7.) On March 15, 2022, prior to the commencement of these Chapter 11 Cases, Liquid Financial entered into an assignment of membership interests agreement with Virtual Currency Partners, LLC and, in accordance with the terms of the agreement, Liquid Financial transferred all of its membership interests in LiquidEX to Virtual Currency Partners, LLC. (Mosley Decl. ¶ 8.) As a result of such transfer, LiquidEX is not part of the FTX group, and the Debtors do not have any control over any assets, operations or affairs of LiquidEX. (Mosley Decl. ¶ 8.)

**III.    Zubr**

10. According to available books and records, Debtor Zubr is an entity organized in Gibraltar and is a direct, wholly-owned subsidiary of Debtor Innovatia Ltd ("Innovatia") and an indirect, wholly-owned subsidiary of Debtor FTX Trading. (Mosley Decl. ¶ 9.)

11. Zubr was established on August 19, 2019 under the laws of Gibraltar to operate a secondary market venue for trading virtual assets and derivatives and to provide custody services. On September 16, 2021, the Gibraltar Financial Services Commission ("GFSC") issued a license (the "License") authorizing Zubr to operate its business. Based on

currently available books and records, Zubr has never earned any revenue from operational activities and has never had any customers. (Mosley Decl. ¶ 10.)

12. On December 22, 2022, GFSC released a statement indicating its decision to cancel the License due to, among others, a failure by Zubr to conduct any regulated activity authorized under the License. (Mosley Decl. ¶ 11.) In addition, GFSC noted that Zubr would likely fail to satisfy threshold conditions to operate including, for example, appropriate funding, effective supervision and a suitable business model to conduct regulated activities. (Mosley Decl. ¶ 11.)

13. Based on currently available books and records, as of August 31, 2023, Zubr holds approximately $719,000 in cash across several accounts. Based on currently available books and records, as of August 31, 2023, Zubr has aggregate outstanding liabilities of approximately $20,000 (*i.e.* $10,000 in accounts payable and $10,000 in an intercompany claim from its parent company, Debtor Innovatia Inc.) (Mosley Decl. ¶ 12.) Although the Debtors have taken measures to reduce the cash operating expenditures of Zubr, the current operating costs are approximately $14,200 per month, approximately $10,000 corresponding to payroll dues and approximately $4,200 to payroll taxes. (Mosley Decl. ¶ 13.)

14. Since there is no reasonable prospect of Zubr commencing revenue generating activities, the Debtors have determined that a timely local voluntary liquidation of Zubr in accordance with the laws of Gibraltar is in the best interests of the Debtors and their estates. In order to protect the rights and claims of the Debtors in the context of the liquidation of Zubr, Zubr is expected to enter into an agreement with the appointed liquidator to implement basic administrative procedures to harmonize and coordinate the activities of the liquidator and promote the orderly and efficient administration.

15. Claimants who have filed proofs of claim against Zubr will not be prejudiced by the dismissal of the Zubr Chapter 11 Case and may pursue the same claim in the liquidation proceeding in Gibraltar after the dismissal of the Chapter 11 Case of Zubr, in accordance with the laws of Gibraltar.

**IV. DAAG**

16. DAAG was incorporated in the United Arab Emirates in October 2021 as a Dubai proprietary trader and swap dealer. DAAG was licensed by the Dubai Multi Commodities Centre. (Mosley Decl. ¶ 14.)

17. On April 26, 2023, the dissolution of DAAG became effective under the laws of the United Arab Emirates. (Mosley Decl. ¶ 15.) To the Debtors' knowledge and given the dissolution of the entity, DAAG does not have any assets or operations. (Mosley Decl. ¶ 15.)

**Jurisdiction**

18. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 305(a), 349, and 1112(b) of the Bankruptcy Code. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Relief Requested**

19. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 305(a), 349, and 1112(b) of the

Bankruptcy Code and Bankruptcy Rule 1017, dismissing the Chapter 11 Cases of the Dismissal Debtors.

**Basis for Relief**

**I.    Dismissing the Chapter 11 Cases of the Dismissal Debtors Is Appropriate Under Section 1112(b) of the Bankruptcy Code.**

20.    A dismissal of a chapter 11 case is governed by section 1112(b) of the Bankruptcy Code, which permits a party-in-interest, after notice and hearing, to seek to dismiss a chapter 11 case in the best interests of the creditors and the estate for cause. *See* 11 U.S.C. § 1112(b). "Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999)).

**A.    Cause Exists to Dismiss the Chapter 11 Cases of the Dismissal Debtors.**

21.    Whether cause exists to dismiss a chapter 11 case is determined on a case-by-case basis and is a decision within the sound discretion of the bankruptcy court. *See In re American Capital Equipment*, 688 F.3d at 161; *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007); *Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) ("Bankruptcy judges have wide discretion to determine whether cause exists to dismiss . . . a case under section 1112(b)."); *In re Gucci*, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994) ("The Bankruptcy Court has wide discretion to determine if cause exists, and how to ultimately dispose of the case.").

22. Courts have broad equitable discretion under section 1112(b) to dismiss a chapter 11 case based on the particular facts and circumstances of the case. *See C-TC 9th Ave. P'ship* v. *Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 n.5 (2d Cir. 1997); *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012); *Trident Assocs. Ltd. P'ship* v. *Metro Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995); *In re Smith*, 77 B.R. 496, 499-500 (Bankr. E.D. Pa. 1987).

23. Section 1112(b)(4) provides a list of certain circumstances that constitute "cause," including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4). This is a two-part inquiry. *See In re Orchard Hills Baptist Church Inc.*, 608 B.R. 309, 316 (Bankr. N.D. Ga. 2019); *In re Motel Properties, Inc.*, 314 B.R. 889, 895 (Bankr. S.D. Ga. 2004); *In re Sakon*, 617 B.R. 7, 15 (Bankr Ct. Dec. CRR).

24. *First*, courts determine whether there is a substantial or continuing loss to or diminution of the estate. This prong is generally satisfied if the debtor has a negative cash flow after commencement of the Chapter 11 case. See *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010); *In re Miell*, 419 B.R. 357, 366 (Bankr. E.D. N.Y. 2010) (noting that negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b)"). An inability to pay ongoing expenses combined with the absence of reliable income has equally been found sufficient to satisfy this test. See *In re Taub*, 427 B.R. 208, 231 ("[a]nother indicator is the debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay."); *In re Creech*, 538 B.R. 245, 249 (Bankr. E.D.N.C. 2015) ("An inability to pay ongoing expenses, combined with an absence of reliable income, can establish cause."); *In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020)

("[c]ritically, courts have held that post-petition negative cash flow and an inability to pay current expenses evidence the continuing losses required under section 1112(b)(4)(A).").

25. *Second,* if this inquiry is satisfied, courts enquire whether there is an absence of reasonable likelihood of rehabilitation. The rehabilitation standard is a different and more demanding standard than whether or not the debtor can be reorganized. See *In re Andover Covered Bridge*, LLC, 553 B.R. 162, 175 (Bankr. Ct. Dec. CRR) quoting *In re Brutsche*, 476 B.R. 298, 301 (Bankr. D.N.M. 2012) ("Rehabilitation is a different and . . . much more demanding standard than reorganization."). It requires a financially viable plan for continuing operations. See *In re Woodruff*, 580 B.R. 291, 298 (Bankr. M.D. Ga. 2018). There is no reasonable rehabilitation if the debtor will not generate cash flow meeting its current obligations. See *In re Sillerman*, 605 B.R. 631, 656 (Bankr. S.D. N.Y. 2019).

26. The Bankruptcy Code does not define what constitutes "cause." Section 1112(b)(4) provides a non-exhaustive list of circumstances that may constitute cause for dismissal or conversion of a chapter 11 case. *See* H.R. Rep. No. 595, 95th Cong., 1st. Sess. 405–06 (1978) (noting that the list in section 1112(b)(4) "is not exhaustive"); *see also In re SGL Carbon Corp.*, 200 F.3d at 160 (noting that "the legislative history and case law makes clear that in dismissing a chapter 11 case, the court will be able to consider other factors . . . and to use its equitable powers to reach an appropriate result in individual cases"); *NMSBPCSLDHB, L.P.* v. *Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118-19 (3d Cir. 2004); *Bepco, L.P.* v. *15375 Memorial Corp. (In re 15375 Memorial Corp.)*, 400 B.R. 420, 427 (D. Del. 2009); *In re Devine*, 131 B.R. 952, 955 (Bankr. S.D. Tex. 1991); *In re Prop. Mgmt. & Inv., Inc.*, 19 B.R. 202, 206 (Bankr. M.D. Fla. 1982); *In re Gonic Realty Trust*, 909 F.2d 624, 628 (1st Cir. 1990). "[M]any of the grounds expressly identified in section 1112(b)(4)

may not apply when a chapter 11 debtor seeks voluntary dismissal of its bankruptcy case." *In re Brewery Park Assocs., L.P.*, 2011 WL 1980289, at *16 (Bankr. E.D. Pa., Apr. 29, 2011). *See also In re Forum Health*, 2011 WL 1134323, at *5 (Bankr. N.D. Ohio 2011) ("Each of the examples of cause in § 1112(b)(4) is based on some kind of failure by a debtor. In other words, these are examples of cause that a party other than a debtor would usually cite as grounds for dismissal.") (emphasis omitted).

27. One factor not explicitly listed in section 1112(b) that courts have found constitutes cause for voluntary dismissal is the inability of a debtor "to effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time." *In re American Capital Equipment*, 688 F.3d at 162 n.10 (3d Cir. 2012) ("the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause [in section 1112(b)] are not exhaustive"); *see also Bronson* v. *Thompson (In re Bronson)*, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should exercise its discretion under § 1112(b) to dismiss or convert."); *In re Ramreddy, Inc.*, 440 B.R. 103, 113 n.26 (Bankr. E.D. Pa. 2009) (citation omitted) (noting that "[c]ourts have held that the inability to propose a feasible reorganization or liquidation plan, by itself, provides 'cause' for dismissal or conversion of a chapter 11 case on request of an interested party").

28. In addition, in the context of a motion to dismiss a case under section 1112(b), the Third Circuit has repeatedly noted that the Supreme Court "has identified two of the basic purposes of Chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119; *see also*

*In re American Capital Equipment, LLC*, 2008 WL 4597221, at *2 (3d Cir. Oct. 16, 2008). If neither of these purposes can be demonstrated, dismissal is proper. *Id.*

29. Here, the circumstances affecting the Dismissal Debtors squarely constitute "cause" to dismiss their Chapter 11 Cases. *First*, "cause" exists because a successful reorganization or resolution of the Liquid Financial, DAAG and LiquidEX is not possible. There is no prospect to successfully reorganize or resolve two dissolved entities or an entity that does not belong to the FTX group. *Second*, "cause" exists to dismiss Zubr's Chapter 11 Case because Zubr has been facing continuing losses and has no reasonable likelihood of rehabilitation given the revocation of its License. *Third,* it is not economically sensible for the Dismissal Debtors to continue in chapter 11. There are administrative costs and expenses associated with these entities remaining in chapter 11 and there are no corresponding benefits for creditors or stakeholders. For the reasons above, the Debtors submit that sufficient cause exists for the dismissal of the Dismissal Debtors' Chapter 11 Cases.

B. <u>Dismissal of these Chapter 11 Cases of the Dismissal Debtors is in the Best Interests of the Creditors and the Estates.</u>

30. Once cause is established, a court must examine whether dismissal or conversion of a case to chapter 7 is in the best interests of the creditors and the estates. *In re American Capital Equipment*, 688 F.3d at 161. While the Bankruptcy Code does not define the "best interests of the creditors and the estate," "[t]he cases are uniform in holding that the decision to dismiss or convert is within the bankruptcy court's discretion and is based on the facts. It is a case-by-case decision." *In re Calrissian LP*, 2018 WL 3854004, at *2 (Bankr. D. Del. 2018); *see also In re Hampton Hotel*, 270 B.R. at 359 (noting that "courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interest of the creditors").

31. Where a debtor is unable to effectuate a chapter 11 plan, dismissal is appropriate because "neither creditors nor the estate could conceivably benefit" from the continued adjudication of the chapter 11 proceedings. *See In re American Capital Equipment*, 688 F.3d at 162, 163 (finding that the "best interest of creditors and the estate" warranted relief under section 1112(b) where "it is clear that . . . no future plan would be able to be effectuated under Chapter 11"); *Monsour Medical Center, Inc.* v. *Stein (In re Monsour Medical Center, Inc.)*, 154 B.R. 201, 207 (Bankr. W.D. Pa. 1993) (holding that dismissal of the debtor's chapter 11 case was in the best interests of the creditors and the debtor's estate because it was "highly unlikely that debtor will put together a confirmable plan of reorganization if it remains in bankruptcy").

32. Further, a dismissal of a debtor's chapter 11 case meets the "best interests of creditors" test where a debtor has nothing left to reorganize or the debtor's assets are fixed and liquidated. *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

33. Here, prolonging the Chapter 11 Cases of the Dismissal Debtors under the existing circumstances would "only burden the estate with mounting attorney and administrative fees." *In re Monsour Medical Center, Inc.*, 154 B.R. at 207. In addition, the dismissal of the Dismissal Debtors' Chapter 11 Cases is warranted because the alternative—conversion to chapter 7—would not serve the best interests of the Debtors' estates and creditors, given the lack of assets to be administered and distributed by the Dismissal Debtors. Similarly, conversion to a chapter 7 proceeding would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates.

34. Further, in the case of Zubr, the laws of Gibraltar, where the entity is incorporated, provide for wind down or similar proceedings to distribute the assets of Zubr to its creditors in accordance with local law. Creditors who filed claims against Zubr in the Chapter 11 Case will not be prejudiced as they will be able to pursue such claims directly against Zubr after dismissal of the Zubr Chapter 11 Case. Moreover, if the Chapter 11 Case of Zubr were converted to a chapter 7 case, the chapter 7 trustee would have no different or better ability to reach assets located outside of the United States for the benefit of creditors than Zubr, and Zubr could continue to pursue any intercompany claims against the other Debtors as non-Debtor creditors in chapter 11.

35. Accordingly, the Debtors respectfully submit that voluntary dismissal of the Chapter 11 Cases of the Dismissal Debtors is in the best interests of the creditors and the estates.

II. **Alternatively, the Court Should Dismiss the Chapter 11 Cases of the Dismissal Debtors Pursuant to Section 305(a) of the Bankruptcy Code.**

36. Section 305(a)(1) of the Bankruptcy Code provides that the "court . . . may dismiss a case under [chapter 11], at any time if – (1) the interests of the creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). "The decision to abstain, either by suspension or dismissal, is committed to the Court's discretion." *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007).

37. Courts look to the following *non-exhaustive* list of factors to gauge the overall best interests of the creditors and the debtor, including, among other things: (a) economy and efficiency of administration; (b) whether federal proceedings are necessary to reach a just and equitable solution; (c) whether there is an alternative means of achieving an equitable distribution of assets; and (d) whether the debtor and the creditors are able to work out a less

expensive out-of-court arrangement which better serves the interests in the case. *In re Crown Village Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009).

38. In addition, courts have dismissed Chapter 11 cases under section 305(a) where (a) the case would not result in an economical and expeditious administration of the debtor's estate or (b) it is unlikely that the debtor could confirm a chapter 11 plan. *See, e.g.*, *In re Xacur*, 219 B.R. 956, 969 (Bankr. S.D. Tex. 1998) (dismissing an involuntary chapter 11 case commenced against a Mexican debtor under section 305(a) where the chapter 11 proceeding would not "result in an economical and expeditious administration" of the debtor's estate because of "the doubtful enforceability of bankruptcy court orders"); *In re Monsour Medical Center, Inc.*, 154 B.R. at 207 (dismissing a debtor's chapter 11 case under section 305(a) where "it [was] highly unlikely that debtor will put together a confirmable plan of reorganization").

39. Here, for the reasons described above, dismissal under section 305(a) is in the best interests of the creditors and the Debtors' estates. Continuing the Chapter 11 Cases of the Dismissal Debtors will result in waste of estate resources and the unnecessary accumulation of fees. Accordingly, dismissal of the Chapter 11 Cases for the Dismissal Debtors is in the best interests of both the creditors and the Debtors' estates, and this Court should dismiss these cases pursuant to section 305(a) of the Bankruptcy Code.

### III. Alternatively, the Court Should Dismiss the Chapter 11 Cases of the Dismissal Debtors Pursuant to Section 105(a) of the Bankruptcy Code.

40. Section 105(a) of the Bankruptcy Code provides the Court with supplemental authority to effectuate the overall policy objectives of the Bankruptcy Code in connection with a motion to dismiss a chapter 11 case. *See* 11 U.S.C. § 105(a) ("[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

41. Here, given the circumstances discussed above, the Debtors' focus with respect to the Dismissal Debtors must be to minimize the further incurrence of administrative expenses. The voluntary dismissal of the Chapter 11 Cases of the Dismissal Debtors accomplishes this goal. Absent a dismissal, the Debtors would continue to incur substantial chapter 11 administrative expenses.

42. Accordingly, the dismissal of the Chapter 11 Cases of the Dismissal Debtors is consistent with the policy objectives of the Bankruptcy Code and this Court should dismiss these cases.

## IV. All Orders Should Remain in Effect for the Time Period the Dismissal Debtors Were Part of the Chapter 11 Cases.

43. The Debtors request that all stipulations, settlements, rulings, orders and judgments of this Court entered in these jointly administered Chapter 11 Cases remain in full force and effect and survive the dismissal of the Chapter 11 Cases of the Dismissal Debtors solely with respect to the time period where the Dismissal Debtors were part of the Chapter 11 Cases. Although section 349 of the Bankruptcy Code typically contemplates that dismissal will reinstate the prepetition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, this Court may "for cause, orde[r] otherwise." 11 U.S.C. § 349(b). "[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'" *Czyzewski* v. *Jevic Holding Corp.*, 137 S.Ct. 973, 984 (2017).

44. The Debtors submit that cause exists to allow all stipulations, settlements, rulings, orders and judgments entered by the Court during the Chapter 11 Cases to be given continued effect for the time period where the Dismissal Debtors were part of the Chapter 11 Cases, notwithstanding the requested dismissal. The relief requested is necessary to protect the

Debtors and preserve the authority the Debtors had to act pursuant to the various orders entered by this Court including, but not limited to, those authorizing the Debtors and the Dismissal Debtors to pay (a) prepetition wages, salaries and other compensation and benefits, and reimbursable expenses, to employees and (b) prepetition trade claims of foreign (non-U.S.) vendors. Unless the Court orders otherwise, section 349 of the Bankruptcy Code could unravel the effect and authorizations of the orders entered in the Chapter 11 Cases. By allowing the orders of this Court to remain in full force and effect and survive dismissal for the period of time where the Dismissal Debtors were part of the Chapter 11 Cases, the Court will preserve the Debtors' authority to act pursuant to such orders notwithstanding dismissal of the Chapter 11 Cases of the Dismissal Debtors.

45.     This Court has granted relief similar to the relief requested herein with respect to orders of the Court remaining in full force and effect and surviving dismissal of a debtor's chapter 11 case. *See, e.g.*, *In re VG Liquidation, Inc., et al.*, Case No. 18-11120 (JTD) (Bankr. D. Del. Aug. 19, 2019) [D.I. 1183, 1184] (authorizing all prior orders of the court to "remain in full force and effect, . . . be unaffected by the dismissal of the Chapter 11 Case, and [be] specifically preserved for purposes of finality of judgment and *res judicata*"); *In re BioAmber Inc.*, Case No. 18-11078 (LSS) (Bankr. D. Del. June 20, 2018) [D.I. 34] (same); *In re St Alexius Properties, LLC*, Case No. 18-12527 (CSS) (Bankr. D. Del. Feb. 4, 2019) [D.I. 5] (ordering that, notwithstanding section 349, all orders of this Court entered "on or before the Dismissal Date shall remain in full force and effect and shall survive the dismissal of the bankruptcy cases").

## Notice

46.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal

Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) all known creditors of the Dismissal Debtors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and (b) grant such other and further relief as is just and proper.

Dated: October 25, 2023
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*