## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors.[1] | (Jointly Administered) |

**Objection Deadline: November 10, 2023 at 4:00 p.m. (ET)**
**Hearing Date: To be determined**

## MOTION OF PATRICK GRUHN, ROBIN MATZKE, AND LOREM IPSUM UG TO DISMISS BANKRUPTCY CASE OF MACLAURIN INVESTMENTS, LTD.

Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG (collectively, "**LI Parties**") move (this "**Motion**") this Court, pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("**Bankruptcy Code**") and the precedent of *Price v. Gurney*, 324 U.S. 100 (1945), for entry of an order dismissing the bankruptcy case of Maclaurin Investments, Ltd. ("**Macluarin**") (Case No. 22-11087-JTD) because its filing was not properly authorized, which prevents this Court from having subject matter jurisdiction over this chapter 11 proceeding.[2]

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in the above-captioned jointly-administered chapter 11 cases, a complete list of the debtors (collectively, "**Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] This Motion is only directed to Case No. 22-11087 (JTD) and not to any other jointly-administered case.

## SUMMARY OF ARGUMENT

1.     On November 11, 2022 ("**Petition Date**"), Maclaurin filed its voluntary petition ("**Petition**") for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware ("**Court**"). [Case No. 22-11087 (JTD), D.I. 1.][3]

2.     The Petition was signed by: (a) John J. Ray III ("**Ray**"), as Chief Executive Officer of Maclaurin and (b) Adam G. Landis of the law firm Landis Rath & Cobb LLP, as the attorney for Maclaurin. (*Id.*)

3.     Maclaurin is a corporation formed and registered in the Republic of Seychelles.

4.     To determine whether Ray had the requisite authority to file the Petition the Court must look to the formation and governing documents for Maclaurin, the Seychelles International Business Corporations Act ("**IBCA**"), and Seychelles common law. *Price v. Gurney*, 324 U.S. 100 (1945); *see*, *e.g.*, *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720 (Bankr. D. Mass. 1994) ("the authority to file a bankruptcy petition depends upon the corporate documents and state law") (collecting cases.)

5.     Under Maclaurin's governing documents and applicable non-bankruptcy law (*i.e.*, Seychelles law), Ray ***did not*** have the authority to file the Petition.

6.     Accordingly, pursuant to *Price v. Gurney*, 324 U.S. 100 (1945) and section 1112(b) of the Bankruptcy Code, Maclaurin's chapter 11 proceeding must be dismissed.

## JURISDICTION

7.     This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 to determine whether the filing of the bankruptcy case was proper. *In re Council of Unit Owners of the 100 Harborview Drive Condo.*, 552 B.R. 84, 86 (Bankr.  D. Md.  2016); *In re*

---

[3]     Unless otherwise noted, docket index numbers are to the main case, Case No. 22-11068 (JTD).

#12514858v6\031263\0002
DOCS_DE:245536.1 53169/001

*ComScape Telecommunications, Inc.*, 423 B.R. 816, 819 (Bankr. S.D. Ohio 2010); *In re Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 149 (Bankr. M.D. Fla. 1983). However, once it is determined that the Maclaurin case was filed without proper authority, this Court loses jurisdiction and must dismiss the case. *Price v. Gurney*, 324 U.S. 100, 106 (1945); *see also*, *In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) ("a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of 'cause' under § 1112(b), because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case.")

8.      The statutory basis for the relief requested by this Motion is section 1112(b) of the Bankruptcy Code.

9.      The LI Parties are parties-in-interest in these chapter 11 cases.

## STATEMENT OF FACTS APPLICABLE TO REQUESTED RELIEF

*A.      The Omnibus Corporate Authority*

10.     On the Petition Date, Maclaurin filed its Petition for relief under Chapter 11 of the Bankruptcy Code with this Court. [D.I. 1.] As set out above, the Petition was signed by Ray as CEO and Landis as counsel for the Debtors. (*Id.*)

11.     Ray purports to have had authority to file the Petition by virtue of an *Omnibus Corporate Authority,* dated November 10, 2022 ("**Omnibus Authority**"), a copy of which was filed with the Petition as required by Rule 1002-1(b)[4] of the Delaware Local Bankruptcy Rules ("**Local Rules**"). [D.I. 1, page 12 of 23].

---

[4]    Local Rule 1002-1(b) provides: "In a voluntary case filed for a non-individual debtor, there shall be filed on the petition date a resolution or other document authorizing the commencement of the bankruptcy case executed or otherwise approved by the person, entity, or governing body, as applicable, whose approval is required for the commencement of a bankruptcy case under applicable law." Del. Bankr. L.R. 1002-1(b)

12.     The Omnibus Authority states in relevant part:

> I, Samuel Benjamin Bankman-Fried, *as controlling owner, director, officer, manager or other authorized person with respect to* West Realm Shires Inc., Paper Bird Inc., Hilltop Technology Services LLC, Cedar Grove Technologies Services, Ltd., FTX Trading, Ltd., Alameda Research LLC And Clifton Bay Investments LLC (the "Top Companies"), *and all of their directly and indirectly owned subsidiaries* (together with the Top Companies, the "FTX Group"), hereby *authorize, instruct and consent to the following corporate actions* with respect to all members of the FTX Group:
>
> (i)     the appointment of John J. Ray III ("the CEO") as Chief Executive Officer with plenary authority to exercise all powers and authority *capable of delegation to an officer under applicable law*, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of the United States Code and any restructuring and insolvency-related proceeding that may be appropriate or necessary, or may be commenced by third parties, with respect to all members of the FTX Group;
>
> \*\*\*\*\*
>
> (iv) the appointment of Stephen Neal (if willing to serve) as Chairman of the Board, *to the extent applicable law permits* me to so designate him as such, and one to three other individuals chosen by the CEO and not affiliated with me or the CEO as new directors of Maclaurin Ltd. . . .

Omnibus Authority (emphasis added.)

13.     The Omnibus Authority was signed, electronically, *only* by Samuel Bankman-Fried ("**Bankman-Fried**").

14.     Pursuant to the Omnibus Authority, Ray accepted the position as Chief Executive Officer of the debtors in the early morning hours of November 11, 2022. *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* ("**Ray Dec.**"), [D.I. 24, ¶ 1]. Ray understood that by the Omnibus Authority he "was delegated all corporate powers and authority under applicable law, including the power to appoint independent directors and commence these Chapter 11 Cases on an emergency basis." (Ray Dec., ¶ 44.)

#12514858v6\031263\0002
DOCS_DE:245536.1 53169/001

15.     The Omnibus Authority was drafted by attorney Andrew Dietderich of Sullivan &
Cromwell. *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application
for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel
to the Debtors and Debtors-In-Possession Nunc Pro Tunc to The Petition Date,* ¶ 23 ("**Dietderich
Supp. Dec.**") [D.I. 51.]

16.     Dietderich's declaration raises questions regarding who was directing Sullivan &
Cromwell's ("**Debtors' Counsel**") pre-bankruptcy services for Maclaurin. Ryne Miller, a former
Sullivan & Crowell partner, was the general counsel of FTX US. (Dieterich Supp. Dec. ¶ 8.) Miller
had no role with any of the foreign business, such as Maclaurin. Can Sun was the general counsel
for the international businesses, including Maclaurin. (*Id.*) It was at Can Sun's request on
November 8, 2022, that Debtors' Counsel first started preparing a bankruptcy filing for Maclaurin.
(*Id.*, ¶¶, 10, 11.) Can Sun was not a director of Maclaurin, and he certainly could not and was not
acting at the behest of Maclaurin's board of directors. Moreover, he resigned as general counsel
the evening of November 8th (*id.*, ¶ 15)—three days before the Petition Date—so he could not
provide any further direction to Debtors' Counsel regarding Maclaurin after his resignation.

17.     It appears that after Can Sun resigned, Debtors' Counsel started taking direction as
to international entities from (a) Miller, the general counsel for FTX US,  who had no affiliation
or role with any of the international entities such as Maclaurin, but nonetheless declared he was
"in charge," and (b) Tim Wilson, a third year attorney formerly associated with Debtors' Counsel,
who previously reported to Can Sun, and who was, according to Dietderich, then the "senior legal
officer of FTX International." (*Id.*, ¶ 15.) Yet, Wilson was employed by FTX Ventures, Ltd., which
was not even in the same organizational silo as Maclaurin, (Ray Dec., ¶ 9); he was not an officer

or director of Maclaurin, and could not and was not acting at the behest of Maclaurin's board of directors.

18.     Maclaurin had two directors as of the Petition Date: (a) Caroline Ellison ("**Ellison**"); and (b) Bankman-Fried. (Maclaurin's *Amended Statement of Financial Affairs*, filed September 1, 2023 [Case No. 22-11087 (JTD), D.I. 10], Statement 28, page 58 of 59.)[5]

19.     Maclaurin's pre-petition board of directors did not pass a resolution authorizing the filing of the Petition, either at a meeting or by consent in lieu of a meeting. In fact, Debtors' Counsel did not attempt to hold a board meeting for any of the Top Companies (defined in the Omnibus Authority), or any subsidiary company such as Maclaurin. Nor is there any indication Debtors' Counsel reviewed the IBCA or the controlling corporate documents of Maclaurin before filing the Petition. As Dietderich states, he recommended and prepared the Omnibus Authority because "there was not time to hold over 100 board meetings for companies whose records were both incomplete and unfamiliar to [Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23.)

20.     If the IBCA had been consulted, it would have been clear that a meeting of the directors could have been convened on just two days' notice. (IBCA, § 154(1).) Clearly, there was time to hold a board meeting and have Maclaurin's board of directors authorize the filing of the Petition.

21.     Bankman-Fried signed the Omnibus Authority at approximately 4:30 a.m. on Friday, November 11, 2022. *See Motion of Debtors for Entry of an Order (I) Modifying Certain Creditor List Requirements; (II) Authorizing the Debtors to Serve Certain Parties by E-Mail; and (III) Granting Related Relief* [D.I. 9, ¶2].

---

[5]     Debtors state this information came from the available corporate documents and books and records. *See* Global Notes filed with the amended Statement of Financial Affairs, ¶ 62. [Case No. 22-11087 (JTD), D.I. 10.]

22.     As described by Dietderich, the Omnibus Authority "appointed Mr. Ray CEO of all of the Debtors, transferred to him all of Mr. Bankman-Fried's corporate authority and authorized Mr. Ray to decide if and when the Debtors should commence chapter 11 proceedings." (Dietderich Supp. Dec., ¶ 23.)

23.     After his appointment as CEO, Ray—not Bankman-Fried or the Maclaurin board of directors—made the decision to file the Petition. (Dietderich Supp. Dec., ¶ 5.) Authorizing the chapter 11 filings of the Debtors, including Maclaurin, was, according to Ray, his first "official act" as CEO. (Ray Dec., ¶ 2.)

**B.      *Maclaurin's Governing Corporate Documents***

24.     Maclaurin is a corporation formed and registered in Seychelles on December 23, 2019. It was originally named Alameda Ventures Ltd. but changed its name to Maclaurin on September 26, 2022. Apostilled copies of the Certificate of Incorporation and the Certificate of Incorporation of Name Change are included in the appendix filed with this Motion as, respectively, **Tabs 1 and 2**.

25.     Maclaurin's Memorandum of Association and Articles of Association filed as of September 22, 2022 ("**Maclaurin Articles**"), together with the IBCA, set forth the governing rules and regulations of the company as of the Petition Date. An apostilled copy of the Articles is included in the appendix filed with this Motion as **Tab 3**.

## ARGUMENT

For the reasons and authority set out more fully below, the Court here lacks "subject matter" jurisdiction over the chapter 11 proceeding of Maclaurin.

7

A.      *Controlling Principles of Law*

26.      The "controlling legal principles are not complex. A party cannot subject an entity

to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, No. 10-11867 KG,

2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011). As stated by the U.S. Supreme Court: if

a court "finds that those who purport to act on behalf of the corporation have not been granted

***authority by local law*** to institute the proceedings, it has no alternative but to dismiss the petition."

*Price v. Gurney*, 324 U.S. 100, 106 (1945) (emphasis added).

27.      The Supreme Court noted this was a jurisdictional issue because "nowhere is there

any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those

who in fact do not have the authority to speak for the corporation as a matter of local law are

entitled to be given such authority and therefore should be empowered to file a petition on behalf

of the corporation." *Id.*, 324 U.S. at 107; *see also*, *e.g., In re Blue Whale Studios, LLC*, 644 B.R.

252, 259 (Bankr. N.D. Ga. 2022) ("it is generally accepted that a bankruptcy case filed on behalf

of an entity by one without authority under state law to so act for that entity is improper and must

be dismissed"); *In re 3P Hightstown, LLC*, 631 B.R. 205, 209–10 (Bankr. D.N.J. 2021) (same); *In

re ComScape Telecommunications, Inc.,* 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) (same;

dismissing multiple Chapter 11 bankruptcy cases where director who filed petitions was without

authority to do so); *Matter of Phillips*, 966 F.2d 926, 934 (5th Cir. 1992) (collecting cases); *In re

Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *3–5 (Bankr. D.N.M.

Mar. 12, 2021) (collecting cases).

28.      "[T]he law is clear that the decision of whether or not a corporation should file

bankruptcy is a business decision to be made only by the board of directors. A filing of a

bankruptcy petition is a special act that requires special authorization by the board and is not a

general duty of a corporate officer." *In re Moni-Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988); *see also*, *In re ComScape Telecommunications,* 423 B.R. at 831 (the board of directors has the authority to commence a bankruptcy case on behalf of a corporation.); *In re Runaway II, Inc.,* 159 B.R. 537, 538 (Bankr. W.D. Mo.1993) ("[H]istorically it has always been true, even before the Bankruptcy Reform Act of 1978, that a valid resolution of the Board of Directors of a corporation was a prerequisite to the filing of a voluntary petition in bankruptcy by a corporation."); *In re Giggles Rest., Inc.,* 103 B.R. 549, 553 (Bankr. D. N.J.1989) ("[I]t is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors.").

29.    The validity of the filing of the bankruptcy petition is "fully dependent" on whether the resolution authorizing that filing was made by a "duly elected, properly constituted board of directors." *Polish-Am. Citizen's Club Inc.*, No. BAP MS 22-033, 2023 WL 4259266, at *9 (B.A.P. 1st Cir. June 27, 2023) (bankruptcy filing that was not authorized by a duly elected board of directors was properly dismissed); *see also*, *ComScape Telecommunications,* 423 B.R. at 832 ("A bankruptcy filing is unauthorized if the board of directors purporting to authorize it was not lawfully constituted and acting lawfully in so doing.")

30.    A bankruptcy case filed without proper authorization ***must be dismissed***. This includes a petition filed by an improper number of directors: if a board of directors has multiple members, a single director has no authority to file a bankruptcy petition on behalf of the corporation. *See In re Moni–Stat,* 84 B.R. at 757 ("Simply put, there must be a majority vote of a quorum of the board of directors to file a corporate bankruptcy . . . ."); *In re Runaway II,* 159 B.R. at 537 (dismissing bankruptcy case filed by one of two directors, as not having been approved by a majority as was required under applicable law).

9

31.     Likewise, "[a]n officer or an individual director cannot properly file a petition for the voluntary bankruptcy of a corporation unless authorized by the board of directors." *In re ComScape Telecommunications,* 423 B.R. at 832, citing 15A Fletcher Cyc. Corp. § 7631.39 (2009); *see also*, *In re Al–Wyn Food Distributors, Inc.*, 8 B.R. 42, 43 (Bankr. M.D. Fla.1980) (president of corporation had no authority to file chapter 11 petition; because the filing was not approved by a resolution of the board of directors, the president's action was a legal nullity).

32.     In determining authority to file a bankruptcy petition the Court should look to both the local law and the entity's governing documents. *Matter of Quarter Moon Livestock Co., Inc.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990) (the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law); *In re FKF Madison Park Grp. Owner, supra,* (looking to LLC operating agreement).

**B.      *Determination and Application of Local Law***

33.     Reliance on local law to determine authority to file a bankruptcy petition is an application of the internal affairs doctrine. "Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs." *In re USA Detergents, Inc.*, 418 B.R. 533, 540 (Bankr. D. Del. 2009), citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Here, the jurisdiction of Maclaurin's incorporation is Seychelles and; thus, Seychelles law applies to the governance matters for Maclaurin. *See, e.g., Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 66 (D. Mass. 2021) (internal affairs doctrine mandated application of Antiguans law). In *Heng Ren*, the defendant Sinovac was incorporated in Antigua and the Court therefore held that "Antiguan law governs matters of Sinovac's corporate governance and internal affairs. Those affairs include matters particular to the 'relationships among or between [Sinovac] and its current officers, directors, and shareholders'." *Id.*

10

34.    Accordingly, to evaluate whether Ray had the requisite authority to decide to file the Petition and, in fact to actually file it, the Court must first determine the applicable Seychelles law. Rule 44.1 of the Federal Rules of Civil Procedure ("**Federal Rule**"), made applicable in these chapter 11 case through Rule 9017 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), sets out that when "determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. Proc. 44.1; Fed. R. Bankr. Proc. 9017.  Moreover, under the Federal Rule 44.1 (Bankruptcy Rule 9017), the Court's determination here must be treated as a ruling on a question of law. *Id.*

35.    Relevant information on foreign law may be provided by expert witnesses familiar with the applicable foreign law. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016) ("[T]he testimony of foreign legal experts, together with extracts of foreign legal materials, 'has been and will likely continue to be the basic mode' of determining foreign law.") (citation omitted); *Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Off. of Am. Corp.*, 20 F.3d 1224, 1239 (3d Cir. 1994). However, in determining foreign law, a court may consider any relevant material, whether or not submitted by a party; Federal Rule 44.1 (Bankruptcy Rule 9017) "provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) (internal citations omitted.)

36.    Because determination of foreign law under Federal Rule 44.1 (Bankruptcy Rule 9017) is a question of law, courts may consider relevant materials beyond the pleadings in ruling on a motion to dismiss when the claim depends on a determination of foreign law. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 948–49 (9th Cir. 2018); *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000

(9th Cir. 2016); *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 1:18-CV-679-RP, 2019 WL 1925499, at *3 (W.D. Tex. Apr. 30, 2019).

37.    Maclaurin is organized under Seychelles' IBCA. Accordingly, the Court here must look to the IBCA and Maclaurin's formation and governing documents to determine whether there was proper authority to file the Petition on behalf of Maclaurin.

38.    To establish the law of Seychelles in support of this Motion, the LI Parties concurrently submit the *Declaration of Edith Wong* ("**Wong Dec.**"). Wong is an attorney licensed to practice in Seychelles. She holds a law degree (L.L.B.) from the University of London and a Master of Law (L.L.M.) from the University of Dundee, Scotland.

39.    Seychelles companies are controlled by the IBCA and their respective memorandum of association and articles of association. (Wong Dec, ¶ 9.) Directors are bound to adhere to a company's articles of association. *Valabhji v Anti-Corruption Commission Seychelles* (MC 82 of 2022) [2023] SCSC 99 (10 February 2023) paragraph 37 (attached as Exhibit B to Wong Dec.)[6] Actions taken by directors in contravention of valid articles are void. *Id.*, ¶ 40.[7]

40.    The business and affairs of a company are managed by the directors of the company. IBCA, § 128.  Whenever a company is authorized to act, the IBCA "shall be carried out or caused to be carried out by the directors of the company." IBCA, § 129. This is done by a

---

[6]    This is the law in the U.S. as well. *See, e.g., In re Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *4 (Bankr. D.N.M. Mar. 12, 2021), citing, *inter alia, CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 234 (Del. 2008) ("Bylaws, by their very nature, set down rules and procedures that bind a corporation's board . . .In that sense, most, if not all, bylaws could be said to limit the otherwise unlimited discretionary power of the board[,]"); *see also, Brennan v. Minneapolis Soc'y for the Blind*, 282 N.W.2d 515, 523 (Minn. 1979) (directors are bound to follow bylaws).

[7]    This, too, is the law in the U.S. *See, e.g., In re Kit Carson Home & Museum, Inc.*, 2021 WL 955416, at *4, citing, *inter alia, In re Sandia Tobacco Mfrs.*, 571 B.R. 449, 457 (Bankr. D.N.M. 2017) (actions taken at an annual shareholder meeting that was not fixed in accordance with the corporation's bylaws had no legal effect); *see also, Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at *19 & n.12 (Del. Ch.) (actions taken by a board of directors in contravention of a mandatory bylaw are traditionally treated as void, citing treatises).

resolution of the directors that may be passed either (a) at a meeting of directors, or (b) if permitted

by the memorandum and articles, as a written resolution. IBCA, § 155(1).

41.     Maclaurin's Articles define a director resolution as:

(a)     a resolution passed at a meeting of directors of the Company by the
affirmative vote in excess of half of the directors present and entitled
to vote on the resolution; or

(b)     a resolution passed and consented to in writing by directors of the
Company representing in excess of half of the total votes of directors
entitled to vote on the resolution.

Maclaurin Articles, § 1.1 (Definitions and Interpretations.)

42.     The IBCA further provides a company has the power to protect its assets for the

benefit of creditors, and in doing so, may cause the company to transfer its assets to a trustee.

IBCA, § 33(2)(g), (4). However, such power is expressly limited to exercise by the directors of the

company. IBCA § 33(4) ("For the purposes of subsection (2)(g), *the directors* may cause the

company to transfer its assets" to a trustee) (emphasis added). The IBCA further prohibits the

board of directors from delegating to any other person the power to "approve the company's

voluntary winding up." IBCA, § 132(2)(g).

### C.     *Application of Seychelles Law to the Facts*

43.     The Omnibus Authority made clear that it was subject to and only valid as allowed

by applicable law. For instance, Ray was appointed CEO but only "with plenary authority to

exercise all powers and authority ***capable of delegation to an officer under applicable law***,

including without limitation in connection with a voluntary filing for protection from creditors

under Title 11 of the United States Code." Omnibus Authority (emphasis added.) Similarly, the

power given to Ray to appoint directors to Maclaurin was only "***to the extent applicable law***

***permits.***" *Id.* (emphasis added.) Ray also understood that through the Omnibus Authority he was

#12514858v6\031263\0002
DOCS_DE:245536.1 53169/001

only "delegated all corporate powers and authority *under applicable law*." (Ray Dec., ¶ 44) (emphasis added.) Here, the applicable law is unquestionably the law of Seychelles.[8]

44.    By its own terms, the Omnibus Authority purported to do the following: (a) appoint Ray CEO of all of the Debtors; (b) authorize Ray to decide if and when the Debtors should commence chapter 11 proceedings; (c) authorize Ray to appoint new directors for any of the Debtors; and (d) transfer to Ray all of Bankman-Fried's corporate authority. (Dietderich Supp. Dec., ¶ 23.) Each of these actions were improper under Seychelles law, as well as Maclaurin's Articles, and are *void*.

45.    Maclaurin's affairs are to be managed by its directors and any company acts to be taken shall be done by resolution—written or passed at a meeting—consented to by a majority of its directors. IBCA § 128; Articles § 1.1 (directors resolution must be "passed and consented to in writing by directors of the Company representing **in excess of half of the total votes of directors entitled to vote** on the resolution . . . ." Maclaurin Articles (emphasis added.)

46.    At the time of the Petition, Maclaurin had two directors: Bankman-Fried and Ellison. Since any act of the board or exercise of director power required a vote in excess of half of the directors (*i.e.*, a majority), any act *required unanimous* consent of *both* Bankman-Fried and Ellison, not Bankman-Fried *only*.

---

[8]    By noting that the efficacy of the Omnibus Authority was subject to applicable law, it appears that Debtors' Counsel contemplated there could be limitations and restrictions that made the Omnibus Authority wholly or partially ineffective. Yet there appears to be a lack of: (a) research performed concerning the law of Seychelles to determine what those limitations could or may be, or (b) review of the Maclaurin organizational documents to discern if the Omnibus Authority and what it was attempting to accomplish was foundationally sound and proper. As stated in connection with the Omnibus Authority, the assertion is there simply "was not time" and the company records "were both incomplete and unfamiliar to [Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23.) Failure to determine if requisite authority is obtained is problematic at best.

47.    Debtors admit and the bankruptcy filing materials clearly establish that no directors' meeting was held around the time the Omnibus Authority was drafted or any time prior to the filing of the Petition. The Omnibus Authority, which is not a resolution and is not signed by both directors, is an improper attempt to exercise or delegate the directors' rights and obligations in managing the affairs of the company.

48.    As only one of two directors of Maclaurin, Bankman-Fried did not have the unilateral authority to "authorize, instruct and consent to" corporate actions for Maclaurin. Such delegation of authority would require unanimous board action.

49.    Moreover, under Seychelles law, only a board of directors has the power to authorize a voluntary winding up of the company. IBCA, § 132(2)(g). A single director cannot authorize such a filing, nor can an officer. This power is solely for the directors and cannot be delegated. *Id*.

50.    Even if a directors' wind-up powers could be delegated, Bankman-Fried can only delegate or authorize Ray to take action that he has the power or authority to take himself. Bankman-Fried did not have the power to ***singularly*** resolve to file the Petition under the IBCA and the Maclaurin Articles. And as a consequence, thereof, ***neither did Ray***.

51.    Further, the Omnibus Authority does not specifically name Maclaurin as a grantee of the power given to Ray. Whilst the chart showing the organization of the structure of the FTX debtors (Ray Dec., last page) shows that Maclaurin is a wholly owned subsidiary of Alameda Research Ltd, which in turn is wholly owned by Alameda Research LLC, the principles of separate corporate personality of each company requires that Bankman-Fried ought to have specifically identified Maclaurin in the Omnibus Authority. It is not possible under Seychelles law to grant a sweeping power in the manner in which the Omnibus Authority does by virtue of the Act. Section

15

132A(1)(a) of the IBCA allows directors to "appoint any person, including a person who is a director, to be an agent of the **company**" which requires that this delegation must be specific to that company. IBCA, § 132A(1)(a) (emphasis added).

52.     In sum, under Seychelles law, the Omnibus Authority could not and did not grant Ray the authority and power to file the Petition. As so aptly expressed by its own terms, the Omnibus Authority is only valid "*to the extent applicable law permits*" and is limited to those "*powers and authority capable of delegation to an officer under applicable law*." Omnibus Authority, (i), (iv), (v), and (vi) (emphasis added). Under Seychelles law as well as Maclaurin's Articles, Bankman-Fried lacked authority to unilaterally pass a resolution appointing Ray as CEO and to delegate the directors' voluntary wind-up powers. Accordingly, there was not proper authorization to file the Petition; the result of which is the Court does not have subject matter jurisdiction over Maclaurin's chapter 11 proceeding

53.     The Court has "no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. at 106.

**D.     Dismissal Under Section 1112(b) of the Bankruptcy Code**

54.     This case should also be dismissed under section 1112 of the Bankruptcy Code, which provides in pertinent part:

> on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or *dismiss a case under this chapte*r, whichever is in the best interests of creditors and the estate, *for cause . . . .*

11 U.S.C § 1112(b)(emphasis added.)

55.     "It is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal" under section 1112(b) of the Bankruptcy Code. *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829–30 (collecting cases). But, as noted in *ComScape*, "the

16

Court need not rely on § 1112(b) for authority to dismiss this case. Whenever a court 'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.'" *Id.*, citing, *Price v Gurney.* Here, the Court "would be required to dismiss an unauthorized filing even if § 1112(b) were not in the Bankruptcy Code." *Id.* (citing cases); *see also*, *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D. N.J. 2021) ("the Court has authority to dismiss this case without relying on § 1112(b)," and must dismiss a case filed without the prerequisite authority, collecting cases).

## RESERVATION OF RIGHTS

56.     Nothing in this Motion is intended to or shall be deemed to impair, prejudice, waive, or otherwise affect the rights and claims of the LI Parties in these jointly-administered chapter 11 cases or in adversary proceeding number 23-50437 (JTD), styled *FTX Trading Ltd. and Maclaurin Investments Ltd. v. Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, and Brandon Williams*, except as otherwise set forth herein.

57.     Pursuant to Local Rule 9013-1(f), the LI Parties do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NOTICE

58.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

#12514858v6\031263\0002
DOCS_DE:245536.1 53169/001

## <u>CONCLUSION</u>

For the foregoing reasons, the LI Parties respectfully request that the Court: (a) enter an order dismissing the bankruptcy case of Maclaurin Investment, Ltd. (Case No. 22-11087-JTD); and (b) grant such other and further relief it deems just and proper under the circumstances.

Dated:  October 27, 2023
Wilmington, Delaware

<u>/s/ Laura Davis Jones</u>
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:   (302) 652-4100
Facsimile:    (302) 652-4400
Email:          ljones@pszjlaw.com
                     pkeane@pszjlaw.com

THE DALEY LAW FIRM LLC
Darrell Daley (admitted *pro hac vice*)
Samantha Neal (admitted *pro hac vice*)
4845 Pearl East Circle, Suite 101
Boulder, Colorado 80301
Telephone: (303) 479-3500
Email: Darrell@daleylawyers.com
            Samantha@daleylawyers.com

- and -

MORRISON COHEN LLP
Joseph T. Moldovan (admitted pro hac vice)
Heath D. Rosenblat (admitted pro hac vice)
Jason P. Gottlieb (admitted pro hac vice)
Michael Mix (admitted pro hac vice)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: jmoldovan@morrisoncohen.com
            hrosenblat@morrisoncohen.com
            jgottlieb@morrisoncohen.com
            mmix@morrisoncohen.com

*Counsel to Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke*

#12514858v6\031263\0002
DOCS_DE:245536.1 53169/001