# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors.[1] | (Jointly Administered) |

**Objection Deadline: November 10, 2023 at 4:00 p.m. (ET)**
**Hearing Date: To be determined**

## MOTION OF PATRICK GRUHN, ROBIN MATZKE, AND LOREM IPSUM UG TO DISMISS BANKRUPTCY CASE OF FTX TRADING LTD.

Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG (collectively, "**LI Parties**"), move (this "**Motion**") this Court, pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("**Bankruptcy Code**") and *Price v. Gurney*, 324 U.S. 100 (1945), for entry of an order dismissing the bankruptcy case of FTX Trading Ltd. ("**FTXT**") (Case No. 22-11068-JTD) because its filing was not properly authorized, which prevents this Court from having subject matter jurisdiction over this chapter 11 proceeding.[2]

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in the above-captioned jointly-administered chapter 11 cases, a complete list of the debtors (collectively, "**Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] This Motion is only directed to Case No. 22-11068 (JTD) and not to any other jointly administered case.

## SUMMARY OF ARGUMENT

1. On November 11, 2022 ("**Petition Date**"), FTXT filed its voluntary petition ("**Petition**") for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware ("**Court**"). [D.I. 1.][3]

2. The Petition was signed by: (a) John J. Ray III ("**Ray**"), as Chief Executive Officer of FTXT; and (b) Adam G. Landis of the law firm Landis Rath & Cobb LLP, as the attorney for FTXT. (*Id.*)

3. FTXT is a corporation formed and registered in Antigua and Barbuda.

4. To determine whether Ray had the requisite authority to file the Petition the Court must look to the formation and governing documents for FTXT, the Antiguan International Business Corporations Act ("**IBCA**"), and Antiguan common law. *Price v. Gurney*, 324 U.S. 100 (1945); *see*, *also*, *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720 (Bankr. D. Mass. 1994) ("the authority to file a bankruptcy petition depends upon the corporate documents and state law") (collecting cases.)

5. Under FTXT's governing documents and applicable non-bankruptcy law (*i.e.*, Antiguan law), Ray ***did not*** have the authority to file the Petition.

6. Accordingly, pursuant to *Price v. Gurney*, 324 U.S. 100 (1945) and section 1112(b) of the Bankruptcy Code, FTXT's chapter 11 proceeding must be dismissed.

## JURISDICTION

7. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 to determine whether the filing of the bankruptcy case was proper. *In re Council of Unit*

---

[3] Unless otherwise noted, docket index numbers are to the main case, Case No. 22-11068 (JTD).

*Owners of the 100 Harborview Drive Condo.*, 552 B.R. 84, 86 (Bankr. D. Md. 2016); *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 819 (Bankr. S.D. Ohio 2010); *In re Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 149 (Bankr. M.D. Fla. 1983). However, once it is determined that the FTXT case was filed without proper authority, this Court loses jurisdiction and must dismiss the case. *Price v. Gurney*, 324 U.S. 100, 106 (1945); *see also*, *In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) ("a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of 'cause' under § 1112(b), because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case.")

8. The statutory basis for the relief requested by this Motion is section 1112(b) of the Bankruptcy Code.

9. The LI Parties are parties-in-interest in the above-captioned chapter 11 cases.

## STATEMENT OF FACTS APPLICABLE TO REQUESTED RELIEF

*A.  The Omnibus Corporate Authority*

10. On the Petition Date, FTXT filed its Petition for relief under Chapter 11 of the Bankruptcy Code with this Court. [D.I. 1.] As set out above, the Petition was signed by Ray as CEO and Landis as counsel for the Debtors. (*Id.*)

11. Ray purports to have had authority to file the Petition by virtue of an *Omnibus Corporate Authority*, dated November 10, 2022 ("**Omnibus Authority**"), a copy of which was

3

filed with the Petition as required by Rule 1002-1(b)[4] of the Delaware Local Bankruptcy Rules ("**Local Rules**"). [D.I. 1, page 12 of 23].

12. The Omnibus Authority states in relevant part:

I, Samuel Benjamin Bankman-Fried, *as controlling owner, director, officer, manager or other authorized person with respect to* West Realm Shires Inc., Paper Bird Inc., Hilltop Technology Services LLC, Cedar Grove Technologies Services, Ltd., *FTXT Ltd.*, Alameda Research LLC And Clifton Bay Investments LLC (the "Top Companies"), and all of their directly and indirectly owned subsidiaries (together with the Top Companies, the "FTX Group"), hereby *authorize, instruct and consent to the following corporate actions* with respect to all members of the FTX Group:

(i) the appointment of John J. Ray III ("the CEO") as Chief Executive Officer with plenary authority to exercise all powers and authority capable of delegation to an officer under applicable law, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of the United States Code and any restructuring and insolvency-related proceeding that may be appropriate or necessary, or may be commenced by third parties, with respect to all members of the FTX Group;

*****

(iv) the appointment of Stephen Neal (if willing to serve) as Chairman of the Board, to the extent applicable law permits me to so designate him as such, and one to three other individuals chosen by the CEO and not affiliated with me or the CEO as new directors of FTXT Ltd. . . .

Omnibus Authority (emphasis added.)

13. The Omnibus Authority was signed, electronically, *only* by Samuel Bankman-Fried ("**Bankman-Fried**").

---

[4] Local Rule 1002-1(b) provides: "In a voluntary case filed for a non-individual debtor, there shall be filed on the petition date a resolution or other document authorizing the commencement of the bankruptcy case executed or otherwise approved by the person, entity, or governing body, as applicable, whose approval is required for the commencement of a bankruptcy case under applicable law." Del. Bankr. L.R. 1002-1(b).

#12515232v4\031263\0002

DOCS_DE:245541.1 53169/001

14. Pursuant to the Omnibus Authority, Ray accepted the position as Chief Executive Officer of the debtors in the early morning hours of November 11, 2022. *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* ("**Ray Dec.**"), [D.I. 24 ¶ 1]. Ray understood that by the Omnibus Authority he "was delegated all corporate powers and authority under applicable law, including the power to appoint independent directors and commence these Chapter 11 Cases on an emergency basis." (*Id.*, ¶ 44.)

15. The Omnibus Authority was drafted by attorney Andrew Dietderich of Sullivan & Cromwell. *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-In-Possession Nunc Pro Tunc to The Petition Date*, ("**Dieterich Supp. Dec.**"), ¶ 23 [D.I. 51.]

16. Dietderich's declaration raises questions regarding who was directing Sullivan & Cromwell's ("**Debtors' Counsel**") pre-bankruptcy services for FTXT. Ryne Miller, a former Sullivan & Crowell partner, was the general counsel of FTX US. (Dieterich Supp. Dec. ¶ 8.) Miller had no role with any of the foreign business, such as FTXT. Can Sun was the general counsel for the international businesses, including FTXT. (*Id.*) It was at Can Sun's request on November 8, 2022, that Debtors' Counsel first started preparing a bankruptcy filing for FTXT. (*Id.*, ¶¶, 10, 11.) Can Sun was not a director of FTXT, and he certainly could not and was not acting at the behest of FTXT's board of directors. Moreover, he resigned as general counsel the evening of November 8th (*id.*, ¶ 15)—three days before the Petition Date—so he could not provide any further direction to Debtors' Counsel regarding FTXT after his resignation.

17. It appears that after Can Sun resigned, Debtors' Counsel started taking direction as to international entities from (a) Miller, the general counsel for FTX US, who had no affiliation

or role with any of the international entities such as FTXT, but nonetheless declared he was "in charge," and (b) Tim Wilson, a third year attorney formerly associated with Debtors' Counsel, who previously reported to Can Sun, and who was, according to Dietderich, then the "senior legal officer of FTX International." (*Id.*, ¶ 15.) Yet, Wilson was employed by FTX Ventures, Ltd., which was not even in the same organizational silo as FTXT, (Ray Dec., ¶ 9); he was not an officer or director of FTXT, and could not and was not acting at the behest of FTXT's board of directors.

18. FTXT had four directors as of the Petition Date: (a) Arthur Thomas; (b) Corporate & Trust Services Limited; (c) Nishad Singh; and (d) Bankman-Fried. (FTXT's *Amended Statement of Financial Affairs*, filed August 31, 2023 [D.I. 2297], Statement 28, page 81 of 82.)[5]

19. FTXT's pre-petition board of directors did not pass a resolution authorizing the filing of the Petition, either at a meeting or by consent in lieu of a meeting. In fact, Debtors' Counsel did not attempt to hold a board meeting for any of the Top Companies (defined in the Omnibus Authority) such as FTXT. Nor is there any indication Debtors' Counsel reviewed the IBCA or the controlling corporate documents of FTXT before filing the Petition. As Dietderich states, he recommended and prepared the Omnibus Authority because "there was not time to hold over 100 board meetings for companies whose records were both incomplete and unfamiliar to [Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23.)

20. If Debtors' Counsel had consulted FTXT's bylaws, it would have been clear that a meeting of the directors could have been convened on two days' notice. (Bylaws, § 6.2.) Clearly,

---

[5] The Debtors state this information came from the available corporate documents and books and records. *See* Global Notes filed with the *Amended Statement of Financial Affairs*, ¶ 62 [D.I. 2297].

there was time to hold a board meeting and have FTXT's board of directors authorize the filing of the Petition.

21.    Bankman-Fried signed the Omnibus Authority at approximately 4:30 a.m. on Friday, November 11, 2022. *See Motion of Debtors for Entry of an Order (I) Modifying Certain Creditor List Requirements; (II) Authorizing the Debtors to Serve Certain Parties by E-Mail; and (III) Granting Related Relief,* [D.I. 9, ¶ 2.]

22.    As described by Dietderich, the Omnibus Authority "appointed Mr. Ray CEO of all of the Debtors, transferred to him all of Mr. Bankman-Fried's corporate authority and authorized Mr. Ray to decide if and when the Debtors should commence chapter 11 proceedings." (Dietderich Supp. Dec., ¶ 23.)

23.    After his appointment as CEO, Ray—not Bankman-Fried or FTXT's board of directors—made the decision to file the Petition. (Dietderich Supp. Dec., ¶ 5.) Authorizing the chapter 11 filings of the Debtors, including FTXT, was, according to Ray, his first "official act" as CEO. (Ray Dec., ¶ 2.)

**B.**    **FTXT's Governing Corporate Documents**

24.    FTXT is a corporation formed and registered in Antigua and Barbuda. (Ray Dec., ¶ 39.) Indeed, FTXT's Certificate of Incorporation (the "**Certificate**") states that FTXT "was incorporated under the laws of Antigua and Barbuda." A copy of the Certificate is included in the appendix filed with this Motion as **Tab 1**.

25.    FTXT's Articles of Incorporation and General By-Laws set forth the governing rules and regulations of the company. The Articles of Incorporation of FTXT (defined therein as "**Company**") last amended on October 18, 2021, and dated as of January 20, 2022 ("**Articles**") were in effect as of the Petition Date. A copy of the Articles is included in the appendix filed with

#12515232v4\031263\0002

DOCS_DE:245541.1 53169/001

this Motion as **Tab 2**. FTXT's General Bylaws as last amended on March 19, 2019 ("**Bylaws**") were in effect as of the Petition Date. A copy of the Bylaws is included in the appendix filed with this Motion as **Tab 3**.

26. Under the Articles, the powers of the Company were to be exercised by its board of directors. (Articles, Article IV.) The business and affairs of the Company were also to be managed by the directors. (Bylaws, § 4.1.)

27. In order for the FTXT board of directors to exercise its powers, the board must either (a) hold a meeting where a majority of the then-current directors are present (a "**Quorum**") and obtain approval by a majority vote of the Quorum (Bylaws, §§ 6.3, 6.4); or (b) execute a resolution in lieu of a meeting, in writing and signed by all directors entitled to vote on the resolution. (*Id.*, § 6.5.) Because FTXT had four directors as of the Petition Date, the board was only permitted to act either (a) at a meeting at which three of the four directors were in attendance to constitute a Quorum, and at which at least two directors voted in favor of the action; or (b) by a written resolution signed by all four directors.

28. No business can be transacted at a meeting of the board of directors unless a Quorum is present. (*Id.*, § 6.3.)

29. The Bylaws grant the board of directors the power to appoint officers of the Company (including a chairman, a deputy chairman, a president, and vice-presidents) and assign duties to those officers. (*Id.*, § 11.1, 11.3.) Neither the shareholders nor the CEO has the authority to appoint officers.

## ARGUMENT

For the reasons and authority set out more fully below, the Court here lacks "subject matter" jurisdiction over the chapter 11 proceeding of FTXT.

8

A.   *Controlling Principles of Law*

30.   The "controlling legal principles are not complex. A party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, No. 10-11867 KG, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011). As stated by the U.S. Supreme Court: if a court "finds that those who purport to act on behalf of the corporation have not been granted ***authority by local law*** to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945) (emphasis added).

31.   The Supreme Court noted this was a jurisdictional issue because "nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." *Id*., 324 U.S. at 107; *see also, e.g.*, *In re Blue Whale Studios, LLC*, 644 B.R. 252, 259 (Bankr. N.D. Ga. 2022) ("it is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed"); *In re 3P Hightstown, LLC*, 631 B.R. 205, 209–10 (Bankr. D.N.J. 2021) (same); *In re ComScape Telecommunications, Inc.,* 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) (same; dismissing multiple Chapter 11 bankruptcy cases where director who filed petitions was without authority to do so); *Matter of Phillips*, 966 F.2d 926, 934 (5th Cir. 1992) (collecting cases); *In re Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *3–5 (Bankr. D.N.M. Mar. 12, 2021) (collecting cases).

32.   "[T]he law is clear that the decision of whether or not a corporation should file bankruptcy is a business decision to be made only by the board of directors. A filing of a bankruptcy petition is a special act that requires special authorization by the board and is not a

9

general duty of a corporate officer." *In re Moni-Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988); *see also*, *In re ComScape Telecommunications,* 423 B.R. at 831 (the board of directors has the authority to commence a bankruptcy case on behalf of a corporation.); *In re Runaway II, Inc.,* 159 B.R. 537, 538 (Bankr. W.D. Mo.1993) ("[H]istorically it has always been true, even before the Bankruptcy Reform Act of 1978, that a valid resolution of the Board of Directors of a corporation was a prerequisite to the filing of a voluntary petition in bankruptcy by a corporation."); *In re Giggles Rest., Inc.,* 103 B.R. 549, 553 (Bankr. D. N.J.1989) ("[I]t is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors.").

33. The validity of the filing of the bankruptcy petition is "fully dependent" on whether the resolution authorizing that filing was made by a "duly elected, properly constituted board of directors." *Polish-Am. Citizen's Club Inc.*, No. BAP MS 22-033, 2023 WL 4259266, at *9 (B.A.P. 1st Cir. June 27, 2023) (bankruptcy filing that was not authorized by a duly elected board of directors was properly dismissed); *see also*, *ComScape Telecommunications,* 423 B.R. at 832 ("A bankruptcy filing is unauthorized if the board of directors purporting to authorize it was not lawfully constituted and acting lawfully in so doing.")

34. A bankruptcy case filed without proper authorization **must be dismissed**. This includes a petition filed by an improper number of directors: if a board of directors has multiple members, a single director has no authority to file a bankruptcy petition on behalf of the corporation. *See In re Moni–Stat,* 84 B.R. at 757 ("Simply put, there must be a majority vote of a quorum of the board of directors to file a corporate bankruptcy . . . ."); *In re Runaway II,* 159 B.R. at 537 (dismissing bankruptcy case filed by one of two directors, as not having been approved by a majority as was required under applicable law).

35. Likewise, "[a]n officer or an individual director cannot properly file a petition for the voluntary bankruptcy of a corporation unless authorized by the board of directors." *In re ComScape Telecommunications,* 423 B.R. at 832, citing 15A Fletcher Cyc. Corp. § 7631.39 (2009); *see also*, *In re Al–Wyn Food Distributors, Inc.*, 8 B.R. 42, 43 (Bankr. M.D. Fla.1980) (president of corporation had no authority to file chapter 11 petition; because the filing was not approved by a resolution of the board of directors, the president's action was a legal nullity).[6]

36. In determining authority to file a bankruptcy petition the Court should look to both the local law and the entity's governing documents. *Matter of Quarter Moon Livestock Co., Inc.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990) (the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law); *In re FKF Madison Park Grp. Owner, supra* (looking to LLC operating agreement).

B.  *Determination and Application of Local Law*

37. Reliance on local law to determine authority to file a bankruptcy petition is an application of the internal affairs doctrine. "Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs." *In re USA Detergents, Inc.*, 418 B.R. 533, 540 (Bankr. D. Del. 2009), citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Here, the jurisdiction of FTXT's incorporation is Antigua, and, thus Antiguan

---

[6] That officers may manage the affairs of a corporation does not mean they can decide to place the company in bankruptcy. "There is no question, although it is not expressly spelled out, that management of the affairs of a corporation was not meant to include a right to file a Petition for Relief under any of the operating Chapters of the Bankruptcy Code. The business of this corporation, according to the Charter is to engage in general sales, selling, at wholesale or retail, all varieties of commodities, meats, fruits, vegetables and other food items, nursery plants, garden plants and general merchandise and not the filing of a Petition for Relief under Chapter 11." *Matter of Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 150–51 (Bankr. M.D. Fla. 1983).

law applies to governance matters for FTXT. *See, e.g., Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 66 (D. Mass. 2021) (internal affairs doctrine mandated application of Antiguan law). In *Heng Ren*, the defendant Sinovac was incorporated in Antigua and the Court therefore held that "Antiguan law governs matters of Sinovac's corporate governance and internal affairs. Those affairs include matters particular to the 'relationships among or between [Sinovac] and its current officers, directors, and shareholders'." *Id*.

38. Accordingly, to evaluate whether Ray had the requisite authority to decide to file the Petition and, in fact, to actually file it, the Court must first determine the applicable Antiguan law. Rule 44.1 of the Federal Rules of Civil Procedure ("**Federal Rule**"), made applicable in these chapter 11 cases through Rule 9017 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), sets out that when "determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. Proc. 44.1; Fed. R. Bankr. Proc. 9017. Moreover, under Federal Rule 44.1 (Bankruptcy Rule 9017), the Court's determination here must be treated as a ruling on a question of law. *Id.*

39. Relevant information on foreign law may be provided by expert witnesses familiar with the applicable foreign law. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016) ("[T]he testimony of foreign legal experts, together with extracts of foreign legal materials, 'has been and will likely continue to be the basic mode' of determining foreign law") (citation omitted); *Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Off. of Am. Corp.*, 20 F.3d 1224, 1239 (3d Cir. 1994). However, in determining foreign law, a court may consider any relevant material, whether or not submitted by a party; Federal Rule 44.1 (Bankruptcy Rule 9017) "provides courts with broad authority to conduct their own independent research to determine foreign law

#12515232v4\031263\0002
DOCS_DE:245541.1 53169/001

but imposes no duty upon them to do so." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) (internal citations omitted.)

40.     Because determination of foreign law under Federal Rule 44.1 (Bankruptcy Rule 9017) is a question of law, courts may consider relevant materials beyond the pleadings in ruling on a motion to dismiss when the claim depends on a determination of foreign law. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 948–49 (9th Cir. 2018); *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016); *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 1:18-CV-679-RP, 2019 WL 1925499, at *3 (W.D. Tex. Apr. 30, 2019).

41.     FTXT is organized under Antigua's IBCA. To establish the law of Antigua in support of this Motion, the LI Parties concurrently submit the *Declaration of Craig L. Jacas* ("**Jacas Dec.**"). A copy of the Jacas Dec. with exhibits thereto is included in the appendix filed with this Motion as **Tab 4**. Mr. Jacas is an attorney licensed to practice law in both Antigua and Barbuda. He holds a Bachelor of Laws (LLB) with First Class Honours from the University of the West Indies; a Legal Education Certificate (LEC) from the Norman Manley Law School; and a Master of Laws (Commercial & Corporate Law) with Distinction from the University of the West Indies.

42.     As explained in the Jacas Dec., the IBCA, as supplemented by common law, governs the relationship between an Antiguan corporation and its directors and officers. Therefore, the Court must look to the IBCA, applicable common law, and FTXT's Articles and Bylaws to determine whether Ray had the authority to file the Petition.

43.     The IBCA contains extensive rules and provisions defining corporate capacity and governing the exercise of corporate powers.

#12515232v4\031263\0002
DOCS_DE:245541.1 53169/001

44.     The directors of an Antiguan corporation exercise the powers of the company and direct the management of the company's business. IBCA § 60. These powers may be restricted by the articles of the corporation. IBCA § 60. Only a quorum of directors may exercise these powers. IBCA § 75(2).

45.     In exercising their powers, directors of an Antiguan corporation are bound to adhere to the company's articles and bylaws. IBCA § 95(2) ("Every director and officer of a corporation must comply with this Act and the regulations and with the articles and bylaws of the corporation and any unanimous shareholder agreement relating to the corporation"). No provision in a contract, the corporation's articles of a corporation, the corporation's bylaws, or any resolution may relieve a director from the duty to act in accordance with the IBCA or the company's regulations. IBCA § 95(3).

46.     Under Antiguan law "*the directors* of the corporation" may designate and appoint officers (such as a CEO). IBCA § 93(a) (emphasis added); s*ee also* IBCA § 64(3)(d) (noting that after a certificate of incorporation is issued, *the directors* may hold a meeting to "appoint officers"). The board of directors can only designate and appoint officers at a meeting at which a quorum is present. IBCA § 75(2) ("a quorum of directors may exercise all the powers of the directors").

47.     The IBCA does not address a U.S.-style bankruptcy filing. It does, however, address "arrangements," a term that includes acts constituting a reorganization, liquidation, or dissolution of a company. IBCA § 175(a). Because an Antiguan corporation can only act through its directors, seeking an arrangement requires a resolution of the directors authorizing the arrangement—***only*** the board of directors, through a proper resolution, has the authority to approve a voluntary bankruptcy filing.

#12515232v4\031263\0002
DOCS_DE:245541.1 53169/001

48.     Directors of an Antiguan corporation are bound to adhere to the corporation's bylaws.[7] *See* IBCA § 95(2) ("Every director and officer of a corporation must comply with this Act and the regulations and with the articles and bylaws of the corporation and any unanimous shareholder agreement relating to the corporation"). Actions taken by directors in contravention of the IBCA or its articles or bylaws are void and beyond the director's authority. IBCA, § 62*; see also*, *Rolled Steel Products (Holdings) Ltd v British Steel & Corp* and others.[8]

C.     ***Application of Antiguan Law to the Facts***

49.     The Omnibus Authority made clear that it was subject to and only valid as allowed by applicable law. For instance, Ray was appointed CEO but only "with plenary authority to exercise all powers and authority ***capable of delegation to an officer under applicable law***, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of the United States Code." Omnibus Authority (emphasis added.) Similarly, the power given to Ray to appoint directors to FTXT was only "***to the extent applicable law permits***." *Id.* (emphasis added.) Ray also understood that through the Omnibus Authority he was only

---

[7]  This is the law in the U.S. as well. *See, e.g.*, *In re Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *4 (Bankr. D.N.M. Mar. 12, 2021), citing, *inter alia*, *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 234 (Del. 2008) ("Bylaws, by their very nature, set down rules and procedures that bind a corporation's board. . . . In that sense, most, if not all, bylaws could be said to limit the otherwise unlimited discretionary power of the board"); *see also*, *Brennan v. Minneapolis Soc'y for the Blind*, 282 N.W.2d 515, 523 (Minn. 1979) (directors are bound to follow bylaws).

[8]  [1985] 3 All ER 52. This, too, is the law in the U.S. *See, e.g., In re Kit Carson Home & Museum, Inc.*, 2021 WL 955416, at *4, citing, *inter alia*, *In re Sandia Tobacco Mfrs.*, 571 B.R. 449, 457 (Bankr. D.N.M. 2017) (actions taken at an annual shareholder meeting that was not fixed in accordance with the corporation's bylaws had no legal effect); *see also*, *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5739680, at *19 & n.12 (Del. Ch.) (actions taken by a board of directors in contravention of a mandatory bylaw are traditionally treated as void, citing treatises).

15

#12515232v4\031263\0002

DOCS_DE:245541.1 53169/001

"delegated all corporate powers and authority **under applicable law**." (Ray Dec., ¶ 44) (emphasis added.) Here, the applicable law is unquestionably the law of Antigua.[9]

50.  By its own terms, the Omnibus Authority purported to do the following: (a) appoint Ray CEO of all of the Debtors; (b) authorize Ray to decide if and when the Debtors should commence chapter 11 proceedings; (c) authorize Ray to appoint new directors for any of the Debtors; and (d) transfer to Ray all of Bankman-Fried's corporate authority. (Dietderich Supp. Dec., ¶ 23.) Each of these actions were improper under Antiguan law, as well as FTX's Articles and Bylaws, and are *void*.

51.  Under Antiguan law, only the board of directors has the power to appoint officers, including appointment of a president or CEO. One officer, or one member of the board of directors, does not have such power. FTXT's Bylaws reflect this rule: the Bylaws grant *the directors* the power to appoint officers of FTXT and assign them duties. (Bylaws § 11.1, 11.3.) To exercise that power, the Bylaws require that the FTXT board of directors must either: (a) hold a meeting where a Quorum of the then-current directors are present and approve the appointment by a majority vote (Bylaws, §§ 6.3, 6.4), or (b) execute a written resolution in lieu of a meeting signed by all directors entitled to vote on the resolution. (*Id.*, § 6.5.)

---

[9] By noting the efficacy of the Omnibus Authority was subject to applicable law, it appears that Debtors' Counsel contemplated there could be limitation and restrictions that made the Omnibus Authority wholly or partially ineffective. Yet, there appears to be a lack of: (a) research performed concerning the law of Antigua to determine what those limitations could or may be, or (b) review of the FTXT organizational documents to discern if the Omnibus Authority and what it was attempting to accomplish were foundationally sound and proper. As stated in connection with the Omnibus Authority, there simply "was not time" and the company records "were both incomplete and unfamiliar to [Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23.) Failure to determine if requisite authority is obtained is problematic at best.

52.    Because FTXT had four directors as of the Petition Date, board action could only be effective by either: (a) a meeting of the directors at which three of the four were in attendance to constitute a Quorum and at least two directors voted in favor of the action; or (b) a written resolution signed by all four directors. Here, only Bankman-Fried attempted to appoint Ray as CEO. But as only one of four directors of FTXT as of the Petition Date, Bankman-Fried did not have the unilateral authority to appoint Ray the CEO of FTXT. Accordingly, the purported appointment of Ray as CEO is a nullity and Ray *never had authority* to act for FTXT, as an officer or otherwise.

53.    Moreover, under Antiguan law, only the board of directors has the power to authorize the filing of a bankruptcy proceeding. A single director cannot authorize such a filing, nor can an officer. And an officer cannot sign a bankruptcy petition unless authorized by the directors. As only one of four directors of FTXT as of the Petition Date, Bankman-Fried did not have the authority to delegate to Ray the authority to file the Petition, and Ray did not have the authority to sign and file it.

54.    Finally, as only one of four directors of FTXT, Bankman-Fried did not have the authority to "authorize, instruct and consent to" corporate actions for FTXT. Such delegation of authority likewise would require either: (a) a meeting of the directors at which a majority of a Quorum approved the act, or (b) a written resolution signed by all four directors. Even if he was permitted to delegate authority to Ray, Bankman-Fried could only delegate whatever corporate authority powers he had. Bankman-Fried could not delegate or authorize Ray to take any action that he did not have the power or authority to take himself. Bankman-Fried did not have the power to *singularly* resolve to file the Petition under the IBCA and FTXT's corporate documents. And as a consequence, thereof, *neither did Ray*.

55. In sum, under Antiguan law, the Omnibus Authority could not and did not grant Ray the authority and power to file the Petition. As so aptly expressed by its own terms, the Omnibus Authority is only valid "*to the extent applicable law permits*." Omnibus Authority. Under Antiguan law as well as FTXT's Bylaws, Bankman-Fried lacked authority to unilaterally appoint Ray as CEO and to delegate to him the directors' power to authorize a bankruptcy filing. Accordingly, there was not proper authorization to file the Petition; the result of which is the Court does not have subject matter jurisdiction over FTXT's chapter 11 proceeding.

56. The Court has "no alternative but to dismiss the [Petition]." *Price v. Gurney*, 324 U.S. at 106.

### D. Dismissal Under Section 1112(b) of the Bankruptcy Code

57. This case should also be dismissed under section 1112 of the Bankruptcy Code, which provides in pertinent part:

> on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or *dismiss a case under this chapter*, whichever is in the best interests of creditors and the estate, *for cause* . . . .

11 U.S.C. § 1112(b) (emphasis added.)

58. "It is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal" under section 1112(b) of the Bankruptcy Code. *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829–30 (collecting cases). But, as noted in *ComScape*, "the Court need not rely on § 1112(b) for authority to dismiss this case. Whenever a court 'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.'" *Id.*, citing *Price v Gurney.* Here, the Court "would be required to dismiss an unauthorized filing even if § 1112(b)

were not in the Bankruptcy Code." *Id.* (citing cases); s*ee also*, *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D. N.J. 2021) ("the Court has authority to dismiss this case without relying on § 1112(b)," and must dismiss a case filed without the prerequisite authority, collecting cases).

## RESERVATION OF RIGHTS

59. Nothing in this Motion is intended to or shall be deemed to impair, prejudice, waive, or otherwise affect the rights and claims of the LI Parties in these jointly-administered chapter 11 cases or in adversary proceeding number 23-50437 (JTD), styled *FTXT Ltd. and Maclaurin Investments Ltd. v. Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, and Brandon Williams*, except as otherwise set forth herein.

60. Pursuant to Local Rule 9013(f), the LI Parties do not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NOTICE

61. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

[*Text Continues On Following Page*]

#12515232v4\031263\0002
DOCS_DE:245541.1 53169/001

**CONCLUSION**

For the foregoing reasons, the LI Parties respectfully request that the Court: (a) enter an order dismissing the bankruptcy case of FTX Trading Ltd. (Case No. 22-11068-JTD); and (b) grant such other and further relief it deems just and proper under the circumstances.

Dated: October 27, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
            pkeane@pszjlaw.com

THE DALEY LAW FIRM LLC
Darrell Daley (admitted *pro hac vice*)
Samantha Neal (admitted *pro hac vice*)
4845 Pearl East Circle, Suite 101
Boulder, Colorado 80301
Telephone: (303) 479-3500
Email: Darrell@daleylawyers.com
        Samantha@daleylawyers.com

- and -

MORRISON COHEN LLP
Joseph T. Moldovan (admitted *pro hac vice*)
Heath D. Rosenblat (admitted *pro hac vice*)
Jason P. Gottlieb (admitted *pro hac vice*)
Michael Mix (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: jmoldovan@morrisoncohen.com
        hrosenblat@morrisoncohen.com
        jgottlieb@morrisoncohen.com
        mmix@morrisoncohen.com

*Counsel to Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke*