## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: December 13, 2023 at 1:00 p.m. (ET)** |
| | **Obj. Deadline: November 13, 2023 at 4:00 p.m. (ET)** |

## DEBTORS' OBJECTION TO PROOF OF CLAIM FILED BY ROSS RHEINGANS-YOO

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors" and each a "Debtor") hereby submit this objection (the "Objection"),

pursuant to section 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the

"Bankruptcy Code"), to proof of claim number 5166 (the "Claim") filed by Ross Rheingans-Yoo

("Rheingans-Yoo") against Debtor Alameda Research (Bahamas) Ltd. ("Alameda Bahamas"),

dated June 29, 2023. In connection with this Objection, the Debtors submit the concurrently filed

Declaration of Stephanie G. Wheeler and the exhibits attached thereto (the "Wheeler Decl."). The

Debtors respectfully state as follows:

### Background

1.    On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order

on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee

for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured

Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.     Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental*

*Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3.     On May 3, 2023, the Debtors filed the *Motion of Debtors for Entry of an*

*Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim*

*and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and*

*(II) Granting Related Relief* [D.I. 1416] (the "Non-Customer Claims Bar Date Motion").  On

May 19, 2023, the Court entered an order approving the Non-Customer Claims Bar Date Motion

[D.I. 1519], setting a non-customer claims bar date of June 30, 2023 and establishing certain

procedures (the "Non-Customer Claims Bar Date Order").

**Facts Specific to Relief Requested**

**A.     Adversary Proceeding Against Rheingans-Yoo**

4.     On July 19, 2023, Debtors Alameda Research Ltd. ("Alameda") and FTX

Trading Ltd. ("FTX Trading") commenced an adversary proceeding (the "Adversary Proceeding")

and filed a Complaint (the "Complaint," or "Compl.") against Rheingans-Yoo, Latona Biosciences

Group ("Latona"), the FTX Foundation, six life sciences companies[2] (the "Lifesciences Defendants"), Samuel Bankman-Fried ("Bankman-Fried"), and Nicholas Beckstead seeking, among other things, to avoid $71,550,000 in fraudulent transfers to the Lifesciences Defendants for purported investments by Latona and as a purported philanthropic gift to PLS from the FTX Foundation.  [Adv. Pro. No. 23-50444 (JTD); D.I. 1.]

5.     The Complaint alleges, among other things, that Rheingans-Yoo, at Bankman-Fried's direction, caused FTX and Alameda to make fraudulent transfers to the Lifesciences Defendants to fund Latona's investments in the Lifesciences Defendants.  The Complaint asserts claims against Rheingans-Yoo for aiding and abetting Bankman-Fried's breaches of fiduciary duty to FTX and for knowingly assisting in and/or failing to prevent Bankman-Fried's breaches of fiduciary duty to Alameda by knowingly facilitating transfers that had no prospect of providing reasonably equivalent value to FTX or Alameda and that provided personal benefit to Bankman-Fried and to Rheingans-Yoo.

**B.     Rheingans-Yoo's Employment Agreement with Alameda Bahamas**

6.     On April 11, 2022, Rheingans-Yoo executed an employment agreement (the "Employment Agreement") with Alameda Bahamas, a wholly-owned subsidiary of Alameda. Wheeler Decl. Ex. 1.  The Employment Agreement was dated April 11, 2022 and applied retroactively starting on March 1, 2022.

7.     The Employment Agreement provided that Rheingans-Yoo would be employed by Alameda Bahamas as a "Trader & Investment Associate" and that he would report to Caroline Ellison.  Wheeler Decl. Ex. 1 § 2(a).  Rheingans-Yoo's work visa in The Bahamas was

---

[2]     These life sciences companies include Platform Life Sciences Inc. ("PLS"), Lumen Bioscience, Inc. ("Lumen"), GreenLight Biosciences Holdings, PBC ("GreenLight"), Riboscience LLC, Genetic Networks LLC ("Genetic Networks"), and 4J Therapeutics Inc.

predicated solely on his employment as a trader for Alameda Bahamas.  Wheeler Decl. Ex. 2.

However, notwithstanding the terms of the Employment Agreement or his work visa, there is no

evidence that Rheingans-Yoo ever performed any trading work or investment services for

Alameda Bahamas.  The Employment Agreement provided that Rheingans-Yoo would receive a

salary of US$100,000 per year to be paid by Alameda Bahamas.  Wheeler Decl. Ex. 1 § 4(a).

8.      In addition to a salary, the Employment Agreement also provided that

Rheingans-Yoo was entitled to:

> a discretionary bonus from time to time in an amount as may be determined by the
> Company in its sole and absolute discretion. . . . Any discretionary bonus awarded
> to you in writing by the Company will generally be paid to you on the same date as
> such bonuses are paid to all employees generally, so long as you remain an active
> employee in compliance with your agreements with the Company and have neither
> given nor received notice of termination prior to the bonus payment date.  Nothing
> herein shall be construed to obligate the Company to give you or otherwise
> guarantee a bonus for any period.

Wheeler Decl. Ex. 1.§ 4(b).

9.      In actuality, however, Rheingans-Yoo worked as the Executive Director of

Latona, a sham Bahamian non-profit entity that Bankman-Fried and Rheingans-Yoo used to invest

in life sciences companies.  Compl. ¶ 5.  His salary and bonus were paid by FDM, not by Alameda

Bahamas.  Wheeler Decl. Exs. 3-9.

C.      **2022 Bonus Election and Payments**

10.      On September 1, 2022, during Rheingans-Yoo's performance review,

Bankman-Fried informed Rheingans-Yoo that as his bonus for the first half of 2022, he could elect

to receive one of:  (a) $650,000 in cash, (b) 12,600 FTX Trading options and 268,000 West Realm

Shires Inc. options, or (c) half cash bonus (*i.e.*, $325,000) and half options (*i.e.*, 6,300 FTX Trading

options and 134,000 West Realm Shires Inc. options).  Wheeler Decl. Ex. 10.  In addition,

Rheingans-Yoo's 2022 bonus award provided that, "[o]n top of the above [bonus], you get another

$650k of directed grants to any [Effective-Altruist]-driven cause *if you want*." Wheeler Decl. Ex. 10 (emphasis added). In his Claim, Rheingans-Yoo refers to this optional directed grant of $650,000 to an Effective Altruist cause as "foundation direction units," or "FDUs."

11.    Rheingans-Yoo elected the last option—to receive his 2022 bonus half in cash and half in FTX Trading options and West Realm Shires Inc. options. According to the Debtors' prepetition internal records, Rheingans-Yoo's bonus election consisted of $330,000 in cash (~50% of $650,000), 6,300 FTX options (50% of 12,600 options) and 134,000 West Realm Shires Inc. options (50% of 268,000 options). Wheeler Decl. Ex. 11.

12.    On September 15, 2022, Rheingans-Yoo received the cash component of his bonus—$375,000 (*i.e.* more than the $325,000 in cash he was entitled to receive)—from non-Debtor FDM. On October 4, 2022, the West Realm Shires Inc. board of directors approved, by written consent, a grant of 134,000 West Realm Shires Inc. options to Rheingans-Yoo. Wheeler Decl. Ex. 12. The next day, on October 5, 2022, the FTX Trading board of directors approved, by written consent, a grant of 6,300 FTX options to Rheingans-Yoo. Wheeler Decl. Ex. 13.

### D.    Rheingans-Yoo Resigned

13.    Rheingans-Yoo stopped performing any work for the Debtors shortly after November 11, 2022. According to the Debtors' postpetition records, Rheingans-Yoo's employment status as of November 28, 2022 was "resigned." Wheeler Decl. Ex. 14.

14.    On December 1, 2022, Rheingans-Yoo received an email sent on behalf of the Debtors' current postpetition management that stated, "[i]t has recently come to our attention that your employment status has not been verified yet." Wheeler Decl. Ex. 15. The email requested that Rheingans-Yoo provide information regarding his employment (entity or entities employing him, current work location, supervisor name, job title, hire date), current contact information, and verification of his employment status (whether active or resigned and resignation

date) to ensure that "payroll and benefits can continue with minimal interruption." Wheeler Decl.

Ex. 15. Rheingans-Yoo failed to respond to the email or otherwise confirm that he was actively

employed or was performing any postpetition work for the Debtors.[3]

15.    A review of the Debtors' prepetition records shows that from the start of his

tenure until the Petition Date, Rheingans-Yoo sent or received approximately 3,097 emails, was

on approximately 1,112 Slack threads, and was listed as a custodian of 1,034 electronic documents.

Wheeler Decl. ¶ 17. By contrast, from the Petition Date until June 23, 2023, the period for which

Rheingans-Yoo's postpetition compensation claim relates, Rheingans-Yoo sent or received

approximately 87 emails, was on approximately 18 Slack threads involving many FTX employees,

and he did not create any electronic documents. A review of the 87 emails and 18 Slack messages

showed that Rheingans-Yoo did not perform *any* work for or on behalf of the Debtors after the

Petition Date. Rather, the emails showed Rheingans-Yoo communicating, in his capacity as

Executive Director of Latona, with the life sciences companies in which Latona had invested,

including:

- Six emails with PLS about board meetings that Rheingans-Yoo attended as Latona's representative;

- Nine emails with Goodwin Procter LLP, GreenLight's counsel, concerning Latona's investment in GreenLight;

- One email with Lumen, a company in which Latona had invested; and

- One email with the founder of Genetic Networks, a company in which Latona had invested.

Wheeler Decl. ¶ 17.

---

[3]    The December 1, 2022 email asking Rheingans-Yoo to confirm his current employment status was sent to Rheingans-Yoo's email address "ross@ftx.com." Rheingans-Yoo last accessed his email account associated with "ross@ftx.com" on September 22, 2023 in the context of the Debtors' counsel's discussions with Rheingans-Yoo's counsel about his proof of claim. Wheeler Decl. ¶ 17 n.3. Thus, Rheingans-Yoo still had access to that email account on December 1, 2022.

E.    **$1 Million Administrative Claim**

16.    On June 29, 2023, Rheingans-Yoo filed the Claim against Alameda Bahamas seeking at least $993,611.08 as an administrative expense pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.  The Claim seeks payment for allegedly unpaid prepetition salary and bonus and postpetition salary.  Rheingans-Yoo claims that, pursuant to the Employment Agreement, he is owed:

- $5,763.33 in prepetition salary allegedly accrued between October 22, 2022 and the Petition Date;

- $275,000 in prepetition 2022 unpaid cash bonus;

- $650,000 in prepetition FDUs that would have been paid to an Effective Altruist cause had Rheingans-Yoo designated one, as an optional component of his 2022 bonus; and

- $62,847.75 in postpetition salary allegedly accrued between the Petition Date and June 23, 2022 (Rheingans-Yoo also "expressly reserve[d] his claim for additional unpaid compensation accruing from and after June 23, 2023").

17.    For the reasons set forth below, the Debtors have determined, based on their books and records, that Rheingans-Yoo's Claim is entirely without merit, and that the Debtors do not have any liability with respect to the Claim.  The Debtors therefore request that the Claim be disallowed and expunged in its entirety.

## Jurisdiction

18.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory basis for the relief sought are sections 105, 501, 502(b) and 507 of the Bankruptcy Code and rules 3007(a) and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

19.    By this Objection, the Debtors seek entry of the proposed order (the "Order"), substantially in the form attached hereto as Exhibit A, disallowing and expunging Rheingans-Yoo's Claim in its entirety.

## Argument

### A.    Rheingans-Yoo Does Not Satisfy the Burden for an Administrative Claim.

20.    The Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving the estate" are allowed administrative expenses and are entitled to priority. 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2).  To be entitled to an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code, a claimant must show that "(1) there was a 'post-petition transaction between the claimant and the estate,' and (2) those expenses yielded a 'benefit to the estate.'"  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (citing *In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005)).  The party seeking to recover expenses must "carry the heavy burden of demonstrating" that such expenses qualify as an administrative expense.  *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (internal citation omitted); *see also In re SRC Liquidation, LLC*, 573 B.R. 537, 540 (Bankr. D. Del. 2017) ("The claimant bears the ultimate burden of establishing a valid administrative expense claim by a preponderance of the evidence.") (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)); *In re New Century TRS Hldgs., Inc.*, 446 B.R. 656 (Bankr. D. Del. 2011)

("Claimants who seek to have their claims paid ahead of general unsecured creditors bear the burden of establishing that their claim qualifies for priority status.").

21.    Rheingans-Yoo did not—and cannot—demonstrate that his Claim arises from postpetition transactions between him and the Debtors that conferred a benefit on the Debtors' estate.  *In re Energy Future Holdings*, 990 F.3d at 741.  Moreover, only approximately $62,000 of his $993,611.08 Claim relates to postpetition conduct.  The other components of Rheingan-Yoo's Claim improperly seek payment for prepetition conduct:  (i) $275,000 of the unpaid portion of his first half of 2022 cash bonus; (ii) $650,000 in directed grants payable to an Effective Altruist cause to be designed by Rheingans-Yoo as part of his first half of 2022 non-cash bonus; and (iii) $5,763.33 in unpaid salary for prepetition work.  To the extent there is any merit to these demands—and there is none—these claims all arose prior to the Petition Date, and therefore, are not entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code.

22.    Moreover, Rheingans-Yoo's sole claim relating to alleged postpetition conduct—for $62,847.75 in accrued salary between the Petition Date and June 23, 2023—is without merit.

**B.    Rheingans-Yoo Is Not Entitled to a Prepetition Cash Bonus Payment of $275,000**

23.    Rheingans-Yoo alleges that he is owed $275,000 as an administrative expense for the unpaid portion of his September 1, 2022 cash bonus for work performed in the first semester of 2022.  Rheingans-Yoo's claim has no merit and should be denied.

24.    *First,* because Rheingans-Yoo's claim relates to work that he allegedly performed prepetition, there is no basis for the alleged unpaid bonus to be afforded administrative priority.  11 U.S.C. § 503(b)(1)(A); *see also In re Cont'l Airlines*, 148 B.R. 207, 212 (D. Del.

1992) ("Congress made it clear that the only wages[, salaries, and commissions] which were to be given priority in § 503(b)(1)(A) were those for services rendered post-petition.").

25.      *Second,* Rheingans-Yoo is not entitled to the $275,000 bonus payment, because the FTX Group already paid Rheingans-Yoo in full for the 2022 bonus that he elected. Rheingans-Yoo elected to receive his 2022 bonus half in cash and half in options.  A cash payment in excess of his $325,000 allotted cash bonus payment (*i.e.*, $375,000) was made on September 15, 2022 by non-Debtor FDM, and the FTX Trading and West Realm Shires Inc. options were issued to him on October 4 and October 5, 2022.

26.      Rheingans-Yoo elected to receive his 2022 bonus half in cash and half in options.  The fact that his FTX Trading and West Realm Shires Inc. options may now be worth little to nothing is not a basis for Rheingans-Yoo to allege that his 2022 bonus was not fully paid. Accordingly, his Claim for a $250,000 prepetition cash bonus must be expunged and disallowed in full.

### C.      Rheingans-Yoo Is Not Entitled to a Prepetition Bonus Payment of $650,000 in Directed Grants

27.      Rheingans-Yoo claims that he has an administrative expense claim $650,000 in FDUs to be paid to an Effective Altruist cause of his election as part of his 2022 prepetition bonus.  The Debtors never incurred an obligation to make this directed grant as part of Rheingans-Yoo's 2022 prepetition bonus, and his claim must be disallowed.

28.      Rheingans-Yoo did not designate an Effective-Altruist cause to receive a directed grant of $650,000 in FDUs.  The Debtors have identified no evidence that Rheingans-Yoo ever directed a grant of $650,000 to any Effective Altruist cause prior to the Petition Date, and Rheingans-Yoo has provided no evidence in connection with his Claim that he ever made such an election.

29.     Moreover, even if Rheingans-Yoo had timely directed a $650,000 grant to an Effective Altruist cause that he had designated—and he made no such election—Rheingans-Yoo himself would not have received the $650,000 that he now seeks from the Debtors as an administrative claim.  Rather, the $650,000 would have gone to the Effective Altruist cause that Rheingans-Yoo designated.  Thus, Rheingans-Yoo cannot seek to recover $650,000 that he personally never had any entitlement to receive.  Accordingly his claim for $650,000 in FDUs must be disallowed and expunged in full.

**D.      Rheingans-Yoo Is Not Entitled to a Prepetition Salary Payment of $5,763.33**

30.     Rheingans-Yoo asserts that the Debtors owe him, as an administrative claim, $5,763.33 in salary allegedly accrued between October 22, 2022 and the Petition Date.  His claim is meritless, and even if legitimate, is not entitled to administrative expense priority. Although he and Alameda Bahamas were party to the Employment Agreement, Rheingans-Yoo never actually worked as a trader for Alameda Bahamas as specified in the Employment Agreement.  Instead, Rheingans-Yoo worked for non-Debtor Latona.  Not surprisingly, then, Rheingans-Yoo's salary was never paid by Alameda Bahamas (or any other Debtor entity). Instead, Rheingans-Yoo's salary was paid by non-Debtor FDM.

31.     The Debtors should not be required to pay, for the first time, Rheingans-Yoo's prepetition salary pursuant to the Employment Agreement.  Rheingans-Yoo never performed any legitimate work for Alameda Bahamas (or any other Debtor).  Instead, the only actual work that Rheingans-Yoo performed prepetition was for non-Debtor Latona.  There is no basis for Rheingans-Yoo to claim any amounts from the Debtors, and his claim must be disallowed and expunged in its entirety.

32.     Moreover, because Rheingans-Yoo's claim relates to work that he allegedly performed prepetition, there is no basis for the alleged unpaid salary to be afforded administrative

priority.  11 U.S.C. § 503(b)(1)(A); *see also In re Cont'l Airlines*, 148 B.R. 207, 212 (D. Del. 1992) ("Congress made it clear that the only wages[, salaries, and commissions] which were to be given priority in § 503(b)(1)(A) were those for services rendered post-petition.").

     E.      **Rheingans-Yoo Is Not Entitled to a Postpetition Salary Payment of at Least $62,847.75**

     33.     Rheingans-Yoo's single claim for at least $62,847.75 in salary for postpetition work he allegedly performed for the Debtors is similarly meritless and should be disallowed.  Rheingans-Yoo claims that he did not resign from Alameda Bahamas and therefore under his Employment Agreement, he is owed $62,847.75 in postpetition salary that accrued between the Petition Date and June 23, 2023, plus any amounts accruing after the date of the filing of his Claim.

     34.     Putting aside that Rheingans-Yoo was even not legitimately employed by Alameda Bahamas prepetition, he was certainly not employed by the Debtors postpetition.  In fact, he does not purport to claim that he performed any work on behalf of, or for the benefit of, the Debtors postpetition.  Nor could he.  Alameda Bahamas was not engaged in any trading activity after the commencement of these Chapter 11 Cases.

     35.     Moreover, Rheingans-Yoo affirmatively or constructively resigned in November 2022.  Based on prepetition records, his employment status is "resigned," as of November 28, 2022.  Wheeler Decl. Ex. 14.  He failed to respond to the December 1, 2022 email requesting that he verify his employment status to the Debtors' postpetition human resources department and did not otherwise take any other action to notify the Debtors that he was still actively employed.  Wheeler Decl. Ex. 15.

     36.     If he were in fact an active employee, he would presumably have reached out to the Debtors if he were not receiving his monthly salary.  There is no evidence that

Rheingans-Yoo ever contacted the Debtors at any time between the Petition Date and the date on which he filed his Claim to inquire about his employment or his salary. Furthermore, there is no evidence that he actually performed any work on behalf of the Debtors at any time postpetition. None of the 87 emails sent to or received by Rheingans-Yoo at his FTX email addresses between November 11, 2022 and June 23, 2023 related to work for the Debtors. There is no support or evidence that Rheingans-Yoo was employed by or performed any work for the Debtors postpetition or that he is entitled to any postpetition compensation. Accordingly, his claim should be disallowed and expunged in full.

### Notice

37.     Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure and (h) counsel to Rheingans-Yoo. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

38.     For the foregoing reasons, the Court should enter the Order, substantially in the form attached hereto as Exhibit A, disallowing and expunging Rheingans-Yoo's Claim.

Dated: October 30, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  landis@lrclaw.com
         mcguire@lrclaw.com
         brown@lrclaw.com
         pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Steven L. Holley (admitted *pro hac vice*)
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: holleys@sullcrom.com
        wheelers@sullcrom.com
        gluecksteinb@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*