**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: November 29, 2023 at 3:00 p.m. ET**<br>**Objection Deadline: November 17, 2023 at 4:00 p.m. ET** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND
APPROVING (I) PROCEDURES FOR THE SALE OR TRANSFER OF THE TRUST
ASSETS AND (II) THE SALE OR TRANSFER OF SUCH TRUST ASSETS IN
ACCORDANCE WITH SUCH PROCEDURES FREE AND CLEAR
OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order,

substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a)

and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),

rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing and

approving, (i) procedures for the sale or transfer of the Trust Assets (as defined below) and (ii)

the sale or transfer of such Trust Assets in accordance with such procedures free and clear of any

liens, claims, interests and encumbrances (collectively, the "Liens") with any such Lien attaching

to the proceeds of such sale(s) or transfer(s) with the same validity, priority, force and effect as

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete
list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd
is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

such Lien had immediately prior to such sale(s) or transfers(s), subject to the rights, claims,

defenses and obligations, if any, of the Debtors and all interested parties with respect to any such

asserted Lien.  In support of this Motion, the Debtors submit the concurrently filed declarations

of Edgar W. Mosley II attached hereto as <u>Exhibit B</u> (the "<u>Mosley Declaration</u>"), and of Stephen

J. Kurz attached hereto as <u>Exhibit C</u> (the "<u>Kurz Declaration</u>") which are incorporated herein by

reference, and the Debtors respectfully state as follows:

<strong><u>Preliminary Statement</u></strong>

1.      Similar to the Debtors' prior request to monetize digital assets,[2] the

Debtors are requesting court authorization to monetize the Trust Assets to protect the Debtors

against potential downward price swings in the Trust Assets, maximize the value of the Debtors'

estates, and allow for forthcoming dollarized distributions to creditors.  The Debtors' judgment is

that proactively mitigating the risk of price swings will best protect the value of the Trust Assets,

thereby maximizing the return to creditors and promoting an equitable distribution of funds in

the Debtors' plan of reorganization.  It also is prudent for the Debtors to obtain authorization to

conduct sales of the Trust Assets at this time in order to preserve flexibility in advance of plan

confirmation and time transactions so as to minimize any potential negative effects on market

prices.

2.      Accordingly, the Debtors have developed procedures for sales of the Trust

Assets that will reduce exposure to market volatility and prepare for potential dollarized

distributions to creditors.  Pursuant to these procedures, the Debtors, in consultation with the

---

[2]    *See Order Authorizing and Approving (I) Guidelines for the Sale or Transfer of Certain Digital Assets, (II) the Sale or Transfer of Such Digital Assets in Accordance with Such Guidelines Free and Clear of Any Liens, Claims, Interests and Encumbrances, (III) the Debtors' Entry into, and Performance* Under*, Postpetition Hedging Arrangements, Including Granting Liens and Superpriority Administrative Expense Claims in Connection Therewith and (IV) the Debtors to Stake Certain Digital Assets* [D.I. 2502] (the "<u>Coin Monetization Order</u>").

Committee and the Ad Hoc Committee of Non-US Customers of FTX.com (the adversary

plaintiffs prosecuting *Ad Hoc Committee of Non-US Customers of FTX.com* v. *FTX Trading Ltd.,*

*et al.,* Adv. Pro. No. 22-59514 (JTD) (Bankr. D. Del.)) (the "Ad Hoc Committee"), will retain a

registered investment adviser (an "Investment Adviser") to assist the Debtors in monetizing the

Trust Assets.[3]  In implementing the procedures, the Debtors and the Investment Adviser will

work in accordance with tailored guidelines.

3.       Executing the proposed procedures and monetization of the Trust Assets

represents a sound exercise of the Debtors' business judgment and will benefit creditors and

stakeholders by mitigating market risk and preparing the estates for plan distributions.  The

Debtors do not believe there are any valid Liens on the Trust Assets, but any valid Liens will

attach to the proceeds of sales or transfers of any pledged Trust Assets and be paid from such

proceeds.  Accordingly, the Debtors submit that granting this Motion is permissible and in the

best interests of their estates and all stakeholders.

### Background

4.       On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware

(the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases

(the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

---

[3]     The Debtors have concurrently filed a notice of second amended and restated investment services agreement, pursuant to which the Debtors seek to expand the scope of the services and related fees under the existing investment services agreement with Galaxy Digital Capital Management LP to include the monetization of Trust Assets.

of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

5.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Jurisdiction

6.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rules 2002-1 and 6004-1. Pursuant to rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Facts Specific to the Relief Requested

### A.      The Trust Assets

7.      Grayscale Investments, LLC ("Grayscale") manages statutory trusts (the "Grayscale Trusts") that allow investors to gain exposure to digital assets without owning the digital assets themselves.  *See* Mosley Decl. ¶ 6.  The Grayscale Trusts issue units to investors

that represent a proportional interest in the applicable trust's portfolio, which is comprised

entirely of the relevant digital asset(s).  *Id.*  The Debtors hold units (the "Trust Assets") in five

Grayscale Trusts and one statutory trust managed by Bitwise Investment Advisors, LLC (the

"Bitwise Trust" and, together with the Grayscale Trusts, the "Trusts") in a brokerage account at

ED&F Man Capital Markets, Inc. (n/k/a Marex Capital Markets Inc.) and in a brokerage account

at Deltec Bank and Trust Limited.  *Id.*  The Trust Assets are comprised of all of the Debtors'

interests in the Trusts, in the quantities set forth below:

| Trusts | Quantity of Units | Estimated Value as of 10/25/23[4] |
|---|---|---|
| Grayscale Bitcoin Trust ("GBTC") (ticker: GBTC) | 22,280,720 | $597M |
| Grayscale Ethereum Trust ("ETHE") (ticker: ETHE) | 6,318,384 | $87M |
| Bitwise 10 Crypto Index Fund (ticker: BITW) | 2,914,210 | $53M |
| Grayscale Ethereum Classic Trust (ticker: ETCG) | 371,477 | $3M |
| Grayscale Litecoin Trust (ticker: LTCN) | 421,848 | $2M |
| Grayscale Digital Large Cap Trust (ticker: GDLC) | 136,190 | $2M |
| **Total Estimated Value as of 10/25/23** | | **$744M** |

8.      In October 2021, Grayscale submitted a 19(b)(4) listing application to the

U.S. Securities and Exchange Commission (the "SEC") to convert the GBTC into a spot-based

Bitcoin ETF (such conversion, the "GBTC Conversion").  On June 29, 2022, the SEC denied

Grayscale's GBTC Conversion application.  *See* Order Denying the Listing and Trading of

Shares of Grayscale Bitcoin Trust, Exchange Act Release No. 34-95180 2022 SEC Lexis 1627

(June 29, 2022).  On the same day, Grayscale filed a petition for review of the SEC's denial

order in the United States Court of Appeals for the D.C. Circuit.  On August 29, 2023, the U.S.

Court of Appeals for the D.C. Circuit vacated the SEC's denial order.  *See Grayscale Invs., LLC*

---

[4]     Estimated values are based on Fidelity's closing prices of the respective units as of October 25, 2023 and are
        subject to material change.  The proceeds from the sale of the Trust Assets may differ from these estimated
        values.

v. *Sec. & Exch. Comm'n*, 82 F.4th 1239 (D.C. Cir. 2023).  The SEC did not appeal the decision, and a further decision from the SEC on the requested GBTC Conversion is forthcoming.

9.      On October 2, 2023, Grayscale announced a request to convert the ETHE to a spot-based Ethereum ETF.  *See* Grayscale Ethereum Trust (ETH), Current Report (Form 8-K) (Oct. 2, 2023).

**B.     The Grayscale Litigation**

10.      On March 6, 2023, Debtor Alameda Research Ltd. ("Alameda") commenced litigation (the "Grayscale Litigation") against Grayscale and others alleging that Grayscale has (a) knowingly prevented certain Grayscale Trusts from operating as intended by refusing to permit share redemptions and (b) failed to reduce its fees to commercially competitive levels, in each case in violation of the operative trust agreements.  In connection with these allegations, Alameda seeks injunctive and other relief against Grayscale and others. *See Alameda Research Ltd.* v. *Grayscale Investments, LLC, et al.*, Case No. 2023-0276-PAF (Del. Ch.).  The Grayscale Litigation remains pending.

**C.     The BlockFi Dispute**

11.      Two days prior to the commencement of these Chapter 11 Cases, on November 9, 2022, Alameda purported to enter into a pledge agreement with BlockFi Lending LLC and BlockFi International Ltd. (collectively, the "BlockFi Counterparties") pursuant to which Alameda purportedly pledged, among other things, certain of the Trust Assets (the "Trust Pledged Assets") to the BlockFi Counterparties in connection with certain loans.

12.      On November 28, 2022, the BlockFi Counterparties and certain of their affiliates (collectively, "BlockFi") filed for chapter 11 bankruptcy.  *See In re BlockFi, et. al.*, Case No. 22-19361 (MBK) (the "BlockFi Proceedings").  On March 31, 2023, the Debtors filed a proof of claim in the BlockFi Proceedings alleging, among other things, claims under sections

547 and 548 of the Bankruptcy Code in connection with the BlockFi Counterparties' purported lien over the Trust Pledged Assets.

13.    On June 29, 2023, BlockFi filed a proof of claim in these Chapter 11 Cases alleging that the pledge by Alameda of the Trust Pledged Assets was valid.  The Debtors dispute that a perfected lien exists and believe that, in any case, the pledge of the Trust Pledged Assets is avoidable pursuant to sections 547 and 548 of the Bankruptcy Code.

14.    On September 25, 2023, the Debtors and BlockFi entered into a settlement agreement providing, among other things, that the dispute with respect to the purported lien over the Trust Pledged Assets will be adjudicated in this Court.  The Court approved the settlement agreement on October 19, 2023 [D.I. 3314] (the "Settlement Agreement").  The Debtors and BlockFi are finalizing a stipulation to provide relief from the automatic stay in the BlockFi case, as contemplated by the Settlement Agreement, which will permit the Debtors to commence litigation to avoid the BlockFi Liens before this Court.  The Debtors and BlockFi are also discussing a process and schedule to resolve their respective disputed claims.

**D.    The Sale Procedures**

15.    The Debtors do not at this time have a specific proposed sale or buyer for the Trust Assets.  Rather, in order to allow the Debtors to market the Trust Assets and have the flexibility to obtain the maximum value for the estates, the Debtors propose the following procedures (the "Sale Procedures") to govern the marketing and sale of the Trust Assets:

      a.    Investment Adviser.  The Debtors shall market and sell the Trust Assets solely through an Investment Adviser pursuant to and in accordance with an investment services agreement approved by the Court.  The Debtors are authorized to consummate sales of the Trust Assets using the Court-approved Investment Adviser and are authorized to pay applicable fees, commissions, expenses and other trading costs without further order of the Court.

b. <u>Pricing Committee</u>.  Upon or promptly following entry of the Order, the Debtors shall establish a pricing committee (the "<u>Pricing Committee</u>"), which shall be comprised of one member or designee from each of (i) the Debtors, (ii) the Committee; and (iii) the Ad Hoc Committee.  The Pricing Committee shall also be entitled to coordinate with personnel from the Investment Adviser.  No waiver of the attorney client privilege shall result from any member's participation on the Pricing Committee.

c. <u>Pricing Limitations</u>.  Sales of certain Trust Assets shall be subject to pricing and sale limitations as referenced in the investment services agreement and previously agreed in writing with the Debtors, the Investment Adviser, the Committee and the Ad Hoc Committee (the "<u>Pricing Limitations</u>").  Upon request by any member of the Pricing Committee, the Investment Adviser shall provide pricing and sale recommendations to the Pricing Committee.  The Pricing Committee shall have the ability to override the Pricing Limitations upon unanimous consent in accordance with the rules established by the Pricing Committee.

d. <u>Methods of Sale</u>.  The Debtors, through the Investment Adviser, shall sell the Trust Assets either (i) over-the-counter ("<u>OTC</u>") or (ii) on exchanges.

e. <u>Reporting Requirements</u>.  All sales of the Trust Assets shall be documented and included in the monthly reports delivered to the Debtors, the Committee and the Ad Hoc Committee as required under the Coin Monetization Order.

f. <u>Prohibition on Affiliate Transactions</u>.  The Investment Adviser shall not be permitted to select any of its affiliates as a counterparty for any transaction involving Trust Assets.

g. <u>Bid Requirements</u>.  Except as otherwise set forth in any agreement between the Debtors and the Investment Adviser, solely with respect to OTC sales, the Investment Adviser shall obtain a minimum of two bids from different counterparties prior to executing any such sale.  To the extent the Investment Adviser does not seek multiple bids in accordance with the terms of any such agreement prior to a sale, the Investment Adviser shall provide notice to the Pricing Committee within one business day after the execution of any such sale.

h. <u>Sales</u>.  Subject to the other limitations set forth in these Sale Procedures, the Debtors, through the Investment Adviser, may sell the Trust Assets in one or more transactions and to one or more buyers.

i. <u>Broker-Dealer Execution</u>.  All sales of Trust Assets shall be effected through or with an SEC-registered broker-dealer or other person operating under an exemption from broker-dealer registration.

## **Relief Requested**

16.    By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving (i) the Sale Procedures and (ii) the sale or transfer of the Trust Assets in accordance with the Sale Procedures free and clear of any Lien with any such Lien attaching to the proceeds of such sale(s) or transfer(s) with the same validity, priority, force and effect as such Lien had immediately prior to such sale(s) or transfer(s), subject to the rights, claims, defenses and obligations, if any, of the Debtors and all interested parties with respect to any such asserted Lien.

## **Basis for Relief**

### I.    **The Sale of Trust Assets and Sale Procedures Should Be Approved and Authorized as a Sound Exercise of the Debtors' Business Judgment.**

17.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Courts should authorize a debtor's request for relief under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so.  Courts within the Third Circuit have relied upon *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983), for the proposition that a debtor must provide a showing of "some articulated business justification . . . for using, selling, or leasing property outside of the ordinary course of business . . ."  *See, e.g.*, *In re Olsen,* No. 14-11273, 2017 WL 3311218, at *7 (Bankr. D. N.J. July 20, 2017) (quoting *In re Lionel Corp.*, 722 F.2d at 1071); *In re Grand Prix Assocs. Inc.*, No. 09-16545 (DHS), 2009 WL 1850966, at *4 (Bankr. D. N.J. June 26, 2009) (citing *In re Lionel Corp.*, 722 F.2d at 1071); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del.

1991) (same).  Generally, a court should be deferential to the determination of management, and where a debtor "articulates a reasonable basis for its business decisions . . . , courts generally will not entertain objections to the debtor's conduct."  *See In re Filene's Basement, LLC*, 2014 WL 1713416, at \*12 (Bankr. D. Del. Apr. 29, 2014) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

18.     In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015).  The business judgment rule shields a debtor's management from judicial second-guessing.  *See In re Johns-Manville Corp.*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

19.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at \*2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176

(D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS

5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

20.    Furthermore, section 105(a) of the Bankruptcy Code provides, in relevant

part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title."  11 U.S.C. § 105(a).

**A.    Approval of the Sale of Trust Assets and Sale Procedures Is Justified by Good and Sound Business Justifications.**

21.    A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business exists where such sale is necessary to maximize and preserve the

value of the estate for the benefit of creditors and interest holders.  *See, e.g., In re Mushroom*

*Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to

protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four*

*B. Corp.* v. *Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564–65 (8th Cir.

1997).

22.    Sales of the Trust Assets pursuant to and in accordance with the Sale

Procedures are designed to maximize the value of the Trust Assets, and, accordingly, the value of

the Debtors' estates.  *See* Kurz Decl. ¶  4.  The Debtors' proposed sale or sales of the Trust

Assets will help prepare the estates for forthcoming dollarized distributions to creditors and

allow the Debtors to act quickly to sell the Trust Assets at the opportune time.  *See* Mosley Decl.

¶ 7.  Additionally, because the Debtors may sell the Trust Assets to one or more buyers in one or

more sales, sales pursuant to the Sale Procedures will alleviate the cost and delay of filing a

separate motion for each proposed sale.  *Id.*

23.    Moreover, any sales of the Trust Assets will be appropriately limited by

the Sale Procedures.  The Sale Procedures impose the Pricing Limitations on sales of certain of

the Trust Assets, and require other sales to be pursuant to best execution by the Investment

Adviser based on current market conditions, subject to the oversight of the Pricing Committee as

necessary.  *See* Mosley Decl. ¶ 8.  The Investment Adviser's experience and trading

infrastructure will allow the Investment Adviser to time sales and counterparties in a way that is

intended to maximize the value of the Trust Assets.  *See* Kurz Decl. ¶ 5.  The Sale Procedures

also require that the monthly reporting as required under the Coin Monetization Order include

information on any sales of the Trust Assets.  *See* Mosley Decl. ¶ 8.

24.     In addition, the market for the Trust Assets is volatile, and the value of the

Trust Assets has fluctuated since the Petition Date.  *See* Kurz Decl. ¶ 6.  The Debtors may face

stringent time constraints in order to capitalize when the value of the Trust Assets is high or at its

peak such that filing individual motions with the associated notice period would not be

practicable.  *Id.*  The Sale Procedures will permit the Debtors to be responsive to this unique

market.  *Id.*  Based on the foregoing, the Debtors submit, in their sound exercise of business

judgment, that any sale or sales of the Trust Assets pursuant to the Sale Procedures and

responsive to market conditions will maximize the value of Trust Assets for the benefit of all

stakeholders and should therefore be approved.

**B.     The Sale Procedures Are Reasonable and Appropriate.**

25.     The notice and hearing requirements contained in section 363(b)(1) of the

Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed

transaction, appropriate notice and an opportunity for a hearing are given.  *See* 11 U.S.C.

§ 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a

hearing "as [are] appropriate in the particular circumstances").  Bankruptcy Rules 2002(a)(2),

2002(i) and 2002(k) require that a minimum of 21 days' notice of the proposed sale of property

outside the ordinary course of business be provided by mail to "the debtor, the trustee, all

creditors and indenture trustees," the Committee and the U.S. Trustee unless a debtor shows

"cause." See Fed. R. Bankr. P. 2002(a)(2), 2002(i), 2002(k).  Once the debtor shows "cause,"

however, Bankruptcy Rule 2002(a)(2) authorizes the Court to shorten the generally applicable

21-day notice period and to direct a method of notice other than mail.  *See* Fed. R. Bankr. P.

2002(a)(2).  Moreover, the Court is authorized to limit, even without a prior showing of cause,

notice of asset sales outside the ordinary course of a debtor's business to the Committee and any

creditor or equity holder requesting notice.  *See* Fed. R. Bankr. P. 2002(i).  In addition, the sale

or transfer of property outside the ordinary course of business may be authorized without an

actual hearing if no party in interest timely requests such a hearing.  *See* 11 U.S.C. § 102(1)(B)(i)

(authorizing "an act without an actual hearing if such notice is given properly and if such

hearing is not requested timely by a party in interest," notwithstanding the statutory requirement

for "notice and a hearing").

   26. The typical process of obtaining court approval for each specific sale of

Trust Assets would result in costs to the Debtors' estates that may undermine or eliminate the

economic benefits of the underlying transaction or transactions.  *See* Mosley Decl. ¶ 9.

Additionally, the usual process of obtaining advance court approval in some instances may

hinder the Debtors' ability to take advantage of opportunities to sell the Trust Assets that are

available only for a very limited time.  *Id.*  The Debtors filed this Motion with sufficient notice

and an opportunity for parties to object if they do not agree with the Sale Procedures or the sale

or sales of the Trust Assets.  Accordingly, notice of this Motion and the Sale Procedures

contained herein provide sufficient notice to parties-in-interest regarding the sales of the Trust

Assets.

27.     As a result, sufficient cause exists to implement the Sale Procedures in the Debtors' business judgment, which will improve the efficiency of the sale process for the Trust Assets, thereby maximizing the value of such assets for the benefit of the Debtors' estates and all stakeholders.

## II.    Sales of Trust Assets Should Be Free and Clear of Liens Under Section 363(f) of the Bankruptcy Code.

28.     To attract the best offers and ensure clean title passes to the buyers, the Debtors request authorization to sell the Trust Assets, including the Trust Pledged Assets, free and clear of any Liens in accordance with section 363(f) of the Bankruptcy Code.  Any such Liens attach to the proceeds of the sale of the Assets, thus fully protecting the interests of any Lien holders.

29.     The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     such interest is in bona fide dispute; *or*
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added).

30.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, so approval of a proposed sale of assets free and clear of interests requires only that one of the five

requirements be satisfied.  *See In re Kellstrom Indus., Inc.,* 282 B.R. 787, 793 (Bankr. D. Del.

2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five

conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.")

(citation omitted).

31.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court

broad discretionary powers, providing that "[t]he Court may issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section

363(f).  *See, e.g., In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325

(Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize

sale of estate assets free and clear).

32.     Thus, a sale of the Trust Assets, including the Trust Pledged Assets,

satisfies the requirements of section 363(f) of the Bankruptcy Code.   To the extent that the

consent of BlockFi or any other purported lienholders is neither obtained nor deemed to have

been obtained, the Debtors can nonetheless proceed because (i) BlockFi or other lienholders

could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their

interests; and/or (ii) any interest in any of the Trust Assets is subject to a bona fide dispute.

33.     Any entity, including the BlockFi Counterparties, could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction of a Lien on, in, to or against the

Trust Assets, including the Trust Pledged Assets.  Applicable nonbankruptcy law recognizes a

monetary satisfaction when the lienholder is paid in full out of the proceeds of the sale or

transfer.  A Lien on, in, to or against the Trust Assets does not create an entitlement of the Lien

holder to the Trust Assets themselves.  Rather, the Lien holder is only entitled to recovery on any

valid claim against the Debtors from the proceeds of the Trust Assets.  To the extent any of the

Liens are valid, the lienholder will be paid in full out of the proceeds of the sale or transfer of the

relevant Trust Assets.

34.     "Bona fide dispute" as used in section 363(f)(4) is not defined in the

Bankruptcy Code.  In the context of section 303(h)(1) of the Bankruptcy Code, the Third Circuit

explained that a "bona fide dispute" exists "[i]f there is a genuine issue of a material fact that

bears upon the debtor's liability, or a meritorious contention as to the application of law to

undisputed facts . . . ." *B.D.W. Associates, Inc.* v. *Busy Beaver Bldg. Centers, Inc.*, 865 F.2d 65,

66–67 (3d Cir. 1989) (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)).  Courts

in this circuit and elsewhere have held that a similar definition is applied to section 363(f)(4).

*See, e.g., In re Scimeca Foundation, Inc.*, 497 B.R. 753, 773 (Bankr. E.D. Penn. 2013) (applying

the *Busy Beaver* definition of bona fide dispute to section 363(f)(4)); *In re Patriot Place, Ltd*.,

486 B.R. 773, 815 (Bankr. W.D. Tex. 2013) (a bona fide dispute exists "when there is an

objective basis for a factual or legal dispute as to the validity of the asserted interest"); *In re

Taylor*, 2011 WL 3206994, at *4 (Bankr. D.S.C. July 27, 2011) (same).  The congressional intent

in enacting section 363(f)(4) was to ensure that the prompt liquidation of estate property is not

delayed while the dispute is resolved.  *See In re Scimeca Foundation, Inc.*, 497 B.R. 753, 773

(Bankr. E.D. Penn. 2013).

35.     The Debtors have filed a proof of claim in the BlockFi Proceedings

alleging that the BlockFi Liens, which were granted in the middle of the night while the Debtors'

were collapsing and less than two days prior to the filing of these Chapter 11 Cases, are

avoidable pursuant to sections 547 and 548 of the Bankruptcy Code.  BlockFi has since filed a

proof of claim alleging Liens against the Trust Pledged Assets in these Chapter 11 Cases.  The

Debtors and BlockFi have agreed to litigate this bona fide dispute in this Court pursuant to the terms of the Settlement Agreement.  A bona fide dispute therefore exists between the Debtors and the BlockFi Counterparties with respect to the BlockFi Liens with respect to the Trust Pledged Assets for the purposes of section 363(f)(4) of the Bankruptcy Code.  A delay in the sale of the Trust Pledged Assets pending the resolution of that dispute would likely have a deleterious effect on the value of the Trust Pledged Assets.  Accordingly, section 363(f)(4) is satisfied and this Court should authorize a sale of the Trust Assets free and clear of any Liens.

36.     In addition, any sale of the Trust Assets, including the Trust Pledged Assets, free and clear of Liens is necessary to maximize the value of such assets for the benefit of the Debtors' estates and all stakeholders.  If the Trust Assets are not sold free and clear of Liens, or if the buyers would, or in the future could, be liable for any such Lien, the Debtors would be unable to successfully sell the Trust Assets on an open market and without a significant reduction in price.  Such a sale would provide substantially less value and greatly increase uncertainty and any potential recovery for the Debtors' estates.

37.     Additionally, any Lien on, in, to or against the Trust Assets, including the Trust Pledged Assets, existing immediately prior to the sale of any such Trust Assets will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights, claims, defenses and obligations, if any, of the Debtors and all interested parties with respect to any such asserted Lien.  Therefore, any purported Lien holder, including the BlockFi Counterparties, will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests, if the Lien is later determined to be valid.  Absent any objection, a holder of a Lien shall be deemed to have consented to such sale, and the relevant Trust Asset may be sold free and clear of such Lien.  *See, e.g.*, *Hargrave* v. *Twp. of Pemberton*

(*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and
clear of liens, claims and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re
BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).
Accordingly, the Debtors submit that a sale of any Trust Assets that is free and clear of any Liens
is permitted and in the best interests of the Debtors and their estates.

### Bankruptcy Rule 6004(a) and 6004(h)

38.     The Debtors respectfully request that the Court (a) find that notice of the
Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the
14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order
authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration
of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described
above, the relief requested is essential to prevent potentially irreparable damage to the Debtors'
operations, value and ability to reorganize.

### Notice

39.     Notice of this Motion has been provided to: (a) the U.S. Trustee;
(b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal
Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for
the District of Delaware; (g) the BlockFi Counterparties; (h) known holders of liens on the Trust
Assets; (i) Grayscale; and (j) to the extent not listed herein, those parties requesting notice
pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief
requested, no other or further notice need be provided.

**Reservation of Rights**

40.     Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim, equity interest or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim, equity interest or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or the Order, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: November 3, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*