## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref Nos. 2238, 2443, 3373** |

### DECLARATION OF JOHN J. RAY III IN SUPPORT OF AMENDED MOTION OF DEBTORS TO ENTER INTO, AND PERFORM THEIR OBLIGATIONS UNDER, THE REIMBURSEMENT AGREEEMENTS

I, John J. Ray III, hereby declare as follows:

1.      I am the Chief Executive Officer of FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), having accepted this position on November 11, 2022.  I am administering the interests and affairs of the Debtors from my offices in the United States.  I am over the age of 18 and authorized to submit this Declaration on behalf of each of the Debtors.

2.      I submit this declaration (this "Declaration") in support of the *Amended Motion of Debtors to Enter into, and Perform their Obligations under, the Reimbursement Agreements* (the "Motion").[2]

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon:  (i) my personal knowledge, information and belief, or my opinion based upon experience,

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

knowledge and information concerning the Debtors; (ii) information learned from my review of

relevant documents; and/or (iii) information supplied by persons working directly with me or under

my supervision, direction or control and/or from the Debtors' professionals and advisors.  If I were

called upon to testify, I could and would testify competently to the facts set forth in this

Declaration.

A.    **Ad Hoc Committee**

4.    I understand that the Ad Hoc Committee of Non-US Customers of FTX.com

(the "Ad Hoc Committee") was formed shortly after the Petition Date by a collective group of non-

US customers who held accounts on the FTX.com platform.  On December 28, 2022, the Ad Hoc

Committee commenced an adversary proceeding (the "AHC Adversary Proceeding") against the

Debtors asserting, among other things, a property interest in the Debtors' digital assets (*Ad Hoc

Committee of Non-US Customers of FTX.com* v. *FTX Trading, Ltd., et al.*, Case No. 22-50514).

5.    Based on information provided by counsel to the Ad Hoc Committee, the

Debtors understand that the members of the Ad Hoc Committee currently hold over $1 billion of

FTX.com customer claims.

6.    Given the complexity of these Chapter 11 Cases, I understand that the Ad

Hoc Committee has engaged legal and financial advisors (collectively, the "AHC

Professionals")—Eversheds Sutherland (US) LLP ("Eversheds") and Morris, Nichols, Arsht &

Tunnell LLP ("Morris Nichols," and together with Eversheds, "Counsel") as legal counsel and

Rothschild & Co US Inc. ("Rothschild & Co") as financial advisor and investment banker.

7.    To assist the AHC Professionals in advising their clients, the Ad Hoc

Committee and the AHC Professionals have requested the Debtors reimburse the fees and expenses

of the AHC Professionals.  According to the AHC Professionals, the members of the Ad Hoc

Committee are numerous and disparate and payment of fees directly by their clients is not a viable alternative.

8.     I believe that in connection with plan negotiations and confirmation in these Chapter 11 Cases, it is imperative for the Ad Hoc Committee to have its own financial advisor and investment banker so they can be adequately represented and remain active participants in the plan process.

**B.     Negotiation of the Reimbursement Agreements**

9.     It is my view that (i) the terms of the Reimbursement Agreements are fair and reasonable, (ii) entry into, and performance of the obligations under, the Reimbursement Agreements are in the best interests of the Debtors and the Debtors' estates, and (iii) the Debtors' entry into the Reimbursement Agreements represents a valid exercise of the Debtors' business judgment.  To advance the Debtors' plan process, the Debtors require continued support and engagement from the Ad Hoc Committee, which has played, and will continue to play, critical roles.  Given the considerable work that remains to be done in these Chapter 11 Cases, and the important roles the AHC Professionals will play in advancing joint efforts towards a consensual plan, the Debtors' decision to enter into the Reimbursement Agreements is supported by sound business justification.

10.     Additionally, it is my view that the Reimbursement Agreements are the result of good faith, arms'-length negotiations between the parties and that such negotiations were free of any collusion.

11.     Pursuant to these negotiations, the Debtors discussed at length with the AHC Professionals what structural protections were necessary and appropriate to ensure that clear limitations of fee payments were established to ensure any reimbursement pursuant to the Reimbursement Agreements would be for work that benefitted the Debtors' estates as a whole.

3

4866-9522-1370 v.4

12.    In particular, the Debtors' proposed order in connection with the Motion ("Proposed Order") set forth the following limitations:

- an express requirement that all reimbursed fees and expenses are reasonable and documented in furtherance of the diligence, negotiation, prosecution, documentation and implementation of a comprehensive restructuring of the Debtors (the "Scope") (*see* Proposed Order ¶ 2);

- a provision carving out from the fees and expenses authorized to be reimbursed, those that are incurred (i) in connection with or in furtherance of preparing for, commencing, or prosecuting litigation against the Debtors, (ii) on account of the Ad Hoc Committee prosecuting or defending claims of the individual members of the Ad Hoc Committee, or (iii) outside the Scope (*see* Proposed Order ¶ 2);

- a requirement that any out-of-pocket expenses incurred by the AHC Professionals for their service to the Ad Hoc Committee be disclosed and included in the invoices submitted by such AHC Professionals (*see* Proposed Order ¶ 5);

- a requirement that all AHC Professionals shall comply with the procedures and processes set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 435] and fees and expenses paid to Counsel shall be subjected to the review and procedures of the fee examiner appointed in these Chapter 11 Cases (*see* Proposed Order ¶ 6); and

- the Debtors' obligations to pay any Transaction Fees payable under the Rothschild & Co Reimbursement Agreement would not arise unless and until the Court enters a further order authorizing the payment of such Transaction Fees (*see* Proposed Order ¶ 7).

13.    I believe that these limitations are both important and sufficient to ensure that the professional fees and expenses of the Ad Hoc Committee eligible for reimbursement will relate to work that is beneficial to the estate as a whole, and that the fees and expenses can be reviewed when submitted by the Court, the Debtors, and parties in interest to ensure they are reasonable and appropriate, and reimbursement is in the best interests of the Debtors' estates.

## C.    Benefits of the Ad Hoc Committee's Support and Cooperation to Date

14.    It is my view that the Debtors have derived substantial benefits of the Ad Hoc Committee's support and cooperation to date, and that the Debtors will continue to need their support and cooperation in connection with the Debtors' plan process.

4866-9522-1370 v.4

15.     There may be a divergence of interests between the FTX.com customers and general unsecured creditors whose interests are represented by the Committee.  Under the Debtors' current Draft Plan, FTX.com customers are in their own separate class and separately classified from general unsecured creditors.  It is my view that it is critical to have a centralized source representing the interests of FTX.com customers in the Debtors' plan process.  There are millions of individual FTX.com customers and negotiating with all of them, or even a large subset of them, would be impracticable.

16.     The existence of the Ad Hoc Committee has streamlined the consensus-building process and the Debtors anticipate the Ad Hoc Committee will assist with progressing towards a confirmed plan of reorganization.  The Debtors further believe the Ad Hoc Committee is diverse and fairly representative of FTX.com customers, including both small and large holders and both initial holders and subsequent purchasers of claims.  To date, the Debtors' negotiations with the Ad Hoc Committee and AHC Professionals have been constructive and produced significant, concrete benefits, culminating with the execution of the PSA on October 16, 2023.

17.     The entry into the PSA is a significant milestone for these Chapter 11 Cases. The PSA creates binding obligations on the Ad Hoc Committee to settle the AHC Adversary Proceeding and other key disputes with the Debtors and to support the Debtors' plan process pursuant to its terms.  By binding key creditor constituents, the PSA avoids the time, cost and expenses associated with prosecuting the AHC Adversary Proceeding and provides a viable structure to continue building support for a consensual plan to emerge from these Chapter 11 Cases.

4866-9522-1370 v.4

**D.**    **The Requested Relief Will Significantly Benefit the Estates Going Forward**

18.    While the Debtors have already benefited from the organization and support of, and cooperation from, the Ad Hoc Committee, it remains critical now that the Debtors be permitted to enter into the Reimbursement Agreements.

19.    The Debtors will require continued cooperation from, and engagement with, the Ad Hoc Committee on a variety of matters that are critical to minimize disputes and litigation, and progress towards a consensual plan.  Given the complexity of the outstanding issues, the Ad Hoc Committee necessarily requires guidance from the AHC Professionals.

20.    Failure to obtain the requested relief may lead to the Debtors losing the active participation of a key constituency in these Chapter 11 Cases, and could result in termination of the PSA.  If the Debtors' entry into, and performance under, the Reimbursement Agreements is not approved by December 1, 2023, the Ad Hoc Committee may terminate the PSA (which in turn provides the Committee the ability to also terminate the PSA).  It is my view that preservation of the PSA and the multitude of benefits it provides the Debtors is an important consideration. Additionally, without the Reimbursement Agreements, the Ad Hoc Committee is most likely unable to retain skilled and experienced advisors.

21.    The Ad Hoc Committee fills a unique and critical role in these complex cases.  The Ad Hoc Committee's full and active participation, along with the AHC Professionals, in key activities is of great benefit to the estates, and, indeed, is essential to an efficient and value-maximizing path forward towards a confirmable (and hopefully, consensual) plan without unnecessary, distracting, costly, and time-consuming litigation.  Based upon the foregoing facts, and my experience as a restructuring professional, I believe the Debtors and their estates will secure substantial benefits through entry into the Reimbursement Agreements, which will facilitate the progress of these Chapter 11 Cases and advance joint efforts towards confirming a plan.

4866-9522-1370 v.4

E.    **Board Approval of Reimbursement Agreements**

22.    Counsel to the Debtors and I discussed the request of the Ad Hoc Committee for the Debtors' reimbursement of the AHC Professionals and the proposed reimbursement arrangements with the Debtors' board of directors.  The Debtors' board agreed with my recommendation that reimbursement of the AHC Professionals is in the best interest of the Debtors and the Debtors' estates.  The discussions, and approval, of the reimbursement of the AHC Professionals by the Debtors' board are reflected in the minutes of board meetings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  November 8, 2023

*/s/ John J. Ray III*_____
John J. Ray III
Chief Executive Officer

7