Honorable Judge John Dorsey
824 N Market St
5th Floor, Courtroom 5
Wilmington, DE 19801
302-533-3169



Re: Objection to FTX Debtors' Amended Motion to Authorize the Debtors to Enter into, and Perform their Obligations Under the Reimbursement Agreements

Dear Judge Dorsey,

I hope this letter finds you well. I am writing to formally object to FTX's request to pay the professional fees of the Ad Hoc Committee in the ongoing proceedings, as a joinder to the objection filed by the United States Trustee ("UST").

I am a petition date .com customer creditor, with a significant sized claim. While this letter represents my objection to the ad hoc committee ("AHC") reimbursement agreements, having spoken with claimants totaling hundreds of millions of dollars, I know my view is not a lone objection.

In present form and composition, it is impossible to know if the AHC will make a substantial contribution in these cases, on the one hand, and on the other, whether they truly represent the interests of the very creditors they assert that they represent. As currently represented to the Court, the AHC is comprised of:

- 41% of members did not hold interests in any FTX account as of the Petition Date

- 2 of the largest members and executive committee members of the AHC are claim buyers who have purchased non-customer claims, including the $17mm claim from Miami-Dade County (Doc 2133)

- Based on public information and knowledge, a substantial portion of the AHC's composition of Petition Date claims included significant (and in some cases exceeded 100%) Preference exposure

As the UST cited, the nature of Mallinckrodt is wholly different for Ad Hoc reimbursement in these cases. Not only has the Debtor failed to provide evidence that entering into the Reimbursement Agreements is a sound business judgment under 363(b), nor includes a restructuring support agreement, or any justification that the individuals and entities of the AHC have differing interests than the interests of the members of the Official Committee, whose interests the Official Committee has a fiduciary duty to uphold. Lastly, the AHC is primarily comprised of a group of litigants, whose litigation is currently stayed, pending at a minimum, your Honor's ruling regarding the very Reimbursement Motions pending before the Court. The mere appearance of impropriety

or conflict of interest should weigh heavily on any Court, but especially so with so many stakeholders who have a vested interest in these cases.

On the basis of the above facts alone, the motion should be denied.

Further, the Debtors assert that without such reimbursement, the AHC would be "unable to retain skilled and experienced advisors." This is untrue as evidenced by the large composition of legal entities (38 cited by the UST) as well as the fact that three of the largest four entities (FC Cayman A, LLC, Svalbard Holdings Limited, and B2C Alternative Equity Ltd) are claim buyers who hold nearly half of the reported $857mm claims held by the Ad Hoc as filed with the Court on August 9, 2023 (Doc 2144). In addition, the third largest claimant, Lemma Technologies Inc., with a $160mm claim, appears to be a non-customer claimant. In aggregate, only four members of the AHC hold two thirds of the aggregate claim value, who are not representative of .com customers in these cases. These claimants also have sufficient means to afford representation without requiring reimbursement from the Estate, or at a minimum until the conclusion of these cases, as would be more customary and proper, especially given the request for reimbursement and representation in these cases was requested over nine months after the Petition Date.

For the reasons above, the motion should be denied (or at minimum stayed until the conclusion of these cases).

In addition, the appointment of a third investment banking advisor to be reimbursed from the Estate on behalf of the AHC is wholly improper and an unnecessary drain on the limited resources of the Estate. As the UST had appropriately objected, the AHC's investment banker Rothschild, would be entitled to a $3.5mm fee "even if the AHC terminated Rothschild, with or without cause." Inexplicably, the revised motion filed by the Debtors on October 25, 2023 (Doc 3373) increased this payment to $5mm. Not only was the investment banker reimbursement increased, but the AHC counsel monthly fee reimbursement increased from $500,000 to $650,000, in addition to paying an aggregate of professional fees incurred to date of $2.2 million, without demonstrating any value of such services to the Estate.

Even the Proposed Property Settlement in these cases including a 15% proposed preference clawback mechanism is not representative of the consensus of the actual majority of customer creditors, whose voices are not represented by the AHC in these cases. I ask a simple question. How can claims buyers interested in maximizing their return negotiate a low preference settlement that increases their ability to purchase claims while depriving the Estate (and thus original customers) of the ability to clawback preference payments?

For the reasons above, the motion should be denied.

Furthermore, the nature of the composition of its membership upon its first petition of composition to the Court calls into question the very basis for its initial formation. On March 24, 2023, the AHC filed with the court (Doc 1156) a motion purporting to represent over $2 billion of claimants of FTX.com, with a redacted listing of creditors, of which included a $1.5 billion estimate of claimants from:

> "This Member is serving in a representative capacity on behalf of a purported class of plaintiffs seeking certification in the litigation styled as Lam v. Bankman-Fried, et al., No. 22-07336 (N.D. Ca. Nov. 21, 2022) [D.I. 1], which the Member believes consists of approximately 6,000 FTX.com customers who held assets on the FTX.com platform with an approximate aggregate dollarized amount of $1.5 billion."

Notably absent from the updated filing in August was any mention of such claimant and thus reduced the aggregate claim value of the AHC to under $1 billion, or less than 8% of the scheduled Petition Date customer claimants of FTX.com (and even less if the amount of non-customer claims were excluded from the above referenced filings with the Court). As such, the AHC does not even represent a meaningful percentage of any class of claimants, let alone a majority needed to vote affirmatively on any proposed Plan of Reorganization.

For the reasons above, the motion should be denied.

Lastly, there has been interest from customer claimants to join the AHC since their August motion, this should be each creditor's decision to seek representation in these cases as permitted by the bankruptcy code. However, upon information and belief, multiple customer claimants sought to join the AHC with claims that exceeded $100mm in aggregate. Their request to join the AHC was predicated on having appropriate representation on the steering committee given their claims would, individually and collectively, represent a large portion of the AHC. Their request to join the AHC's steering committee was denied by the AHC and accordingly, those creditors did not join the AHC.

In light of the above, I respectfully request that the court carefully scrutinizes the FTX Debtors' request to reimburse the professional fees of the AHC. It is imperative that the court ensures that the interests of customer claimants are adequately represented and protected throughout these proceedings.

I appreciate your attention to this matter and trust that you will consider these objections seriously. The fairness and integrity of these proceedings are of utmost importance to all stakeholders involved, and it is my hope that the court will take appropriate steps to address these concerns.

Thank you for your time and consideration.

Sincerely,

Pat Rabbitte

DocuSigned by:
*[signature]*
4C970E87DB9B4B0...
11/8/2023