**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re:<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors. | : Chapter 11<br>:<br>: Case No. 22-11068 (JTD)<br>:<br>: Jointly Administered<br>:<br>: **Re: D.I. #3329, 3344**<br>: **OBJ Deadline: November 10, 2023**<br>: **Hearing Date: November 15, 2023** |

**RESPONSE IN OPPOSITION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 AUTHORIZING EXAMINATION**

**COMES NOW**, the Center for Applied Rationality ("CFAR"), by and through its attorneys, in response to that certain Motion of Debtors for Entry of an Order Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 Authorizing Examination (the "Motion") as follows:

**Introduction**

1. CFAR is a non-profit, charitable organization formed under Section 501(c)(3) of the Internal Revenue Code of 1986. Generally speaking, it conducts research, experiments, and educational workshops concerning the evolving relationship between human intelligence and technological innovation. Upon receipt of the Motion, CFAR sought a meet-and-confer with the Debtors concerning the precise information and materials that the Debtors sought. Unfortunately, the meet-and-confer did not result in a reduction in the scope of the Debtors' demand to

produce everything set forth in Exhibit B to the Motion [D.I. #3329-3] (the "Requests"). Two days later, still seeking to cooperate in a reasonable manner, CFAR served a written response to the Requests, along with an initial production of documents, which included, among other things, tax returns, audited financial statements, and a Quickbooks summary. CFAR indicated its intent to search for and produce additional documents by or before November 15, 2023. CFAR also requested an adjournment of the Motion to the following month (including an extension of the objection deadline) to provide the Debtors with time to review the document production and engage in a more fruitful meet-and-confer. Despite the production on November 8th as well as follow-up communications on November 9th and 10th, the Debtors have not responded, thereby giving rise to this disputed matter.

2. While Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizes the Debtors to obtain information from third parties, it does not constitute a blank check to demand whatever information the Debtors want without establishing a relationship or purpose to the underlying bankruptcy case. Here, CFAR did not receive a transfer of the Debtor's interest in property and produced documents demonstrating this very point. Notwithstanding this factual premise, the Debtors have not provided an explanation for how the Debtors intend to use the requested information, let alone the requisite legal authority to achieve

their intended objective. For the reasons set forth herein, the Court should deny the Motion without prejudice.[1]

## Background

3.  CFAR is a non-profit, public benefit corporation formed and existing under Section 501(c)(3) of the Internal Revenue Code of 1986.

4.  In March – October 2022, CFAR received a number of charitable donations from FTX Foundation, Inc. Upon information and belief, FTX Foundation, Inc. has not commenced a case for relief under Title 11 of the United States Code (the "Bankruptcy Code").

5.  Thereafter, on or about November 11 and 14, 2022 (collectively, the "Petition Date"), FTX Trading Ltd. and a number of affiliated entities (collectively, the "Debtors") filed petitions for relief under Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (collectively, the "Bankruptcy Cases").

6.  On October 20, 2023, the Debtors filed the Motion. The Motion seeks information related to charitable donations made by non-debtor entities and CFAR's use of said charitable donations, in which the Debtors express their intent to "recover … grants, donations and gifts" [Motion, ¶ 4] and aver that CFAR received

---

[1] In the event that the Court grants the Motion, CFAR reserves any and all rights and/or objections to the subpoena(s), request(s) and/or examination(s) undertaken pursuant to the Court's order.

"at least $4.4 million dollars in transfers …" [Motion, ¶ 5] in the months preceding the Petition Date.

7.  Upon receipt of the Motion, CFAR contacted the Debtors to schedule a meet-and-confer concerning the scope of the Requests. During the meet-and-confer, the Debtors were unwilling to accept anything less than all of the information set forth in the Requests. Moreover, they inquired about the return of the charitable donations that CFAR had received. Two days later, CFAR served a written response to the Requests (the "<u>CFAR Response</u>"). A true and correct copy of the CFAR Response is attached hereto as **EXHIBIT 1**[2] and incorporated herein by reference. While CFAR has asserted numerous objections to the Requests, it not only made an initial production of documents, but also indicated its intent to search for and produce additional documents by or before November 15, 2023. The initial production of documents included at least five years' worth of tax returns and audited financial statements, electronic communications, and a summary of the charitable donations received from the non-debtor entity.

8.  Since serving the CFAR Response and initial production, CFAR has repeatedly sought a temporary adjournment of the Motion to permit the Debtors additional time to review the documents and allow for a more robust, meet-and-

---

[2] Exhibit 1 does not include the initial document production, in which a number of documents were marked confidential and produced pursuant to the protections under Local Rule 3018-1 until a formal confidentiality agreement is executed.

confer concerning the remaining information and/or documents that the Debtors seek, but those requests went unanswered.

## Legal Argument

9. Bankruptcy Rule 2004 authorizes an examination, upon an order of the Court, concerning "acts, conduct, or property or to the liabilities and financial condition of the debtor …" Fed. R. Bankr. P. 2004(b).

10. The scope of an examination under Bankruptcy Rule 2004 lies within the discretion of the Court. *See* Fed. R. Bankr. P. 2004(a); *In re Cambridge Analytica, LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019).

11. Although the Court's authority under Bankruptcy Rule 2004 may be broad, an application for relief is subject to certain limitations. *See generally In re Cambridge Analytica, LLC*, 600 B.R. 750; *In re Sun Edison*, 572 B.R. 482 (Bankr. S.D.N.Y. 2017). At the outset, the Debtors must demonstrate cause for the requested examination, *see id.* at 490, in which mere relevance is not sufficient, *see id.* at 490-91. The Debtors "must show that [it] need[s] the discovery for some appropriate purpose, or that the failure to get the discovery will result in hardship or injustice." *Id.* at 491 (finding that the movant failed to establish its burden). The Debtors may not exploit Bankruptcy Rule 2004 to abuse or harass a third party. *See In re Cambridge Analytica, LLC*, 600 B.R. at 752. Further, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the

information sought by examination." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016) (granting Rule 2004 examination concerning information in furtherance of claims that the trustee possessed standing to assert).

12. Here, the Debtors have already ascertained from their own records or a separate investigation that CFAR, a charitable organization, received donations from a non-debtor entity and the amount of said donations [Motion, ¶¶ 4-5]. The Debtors further aver that said charitable donations were a misappropriation or otherwise fraudulent use of funds [Motion, ¶¶ 8, 14]. Despite the information and/or documents within Debtors' possession, custody or control and its well-founded objections to the scope of the Requests, CFAR has produced extensive financial documents, including summaries, tax returns, and audited financial statements. CFAR has produced communications with the non-debtor entity and other documents concerning its formation, purpose, and management. CFAR has indicated the absence of any insider connection between it and the donor [Exh. 1]. CFAR has also committed to searching for and producing certain documents relevant to its use of the charitable donations in the ordinary course. Further, where there are no documents responsive to a particular Request, CFAR informed the Debtors of this point [Exh. 1]. This information permits the Debtors to satisfy their purported obligations under the Bankruptcy Code [Motion, ¶ 14]. If the Debtors want additional documents, they should file suit, in which they will be required to

first establish their authority to maintain the suit and justify their need for said documents subject to Bankruptcy Rules 7026, 7030, and 7034 and Rules 26, 30, and 34 of the Federal Rules of Civil Procedure (the "Civil Rules").

13. Notwithstanding the information in their possession, custody or control, which they obtained from, among other people and/or entities, CFAR, the Debtors attempt to impose additional burden and financial hardship upon CFAR and other charitable organizations through Bankruptcy Rule 2004. *In re Sun Edison*, 572 B.R. at 491 (finding that the Bankruptcy Rule 2004 request "lack[ed] any limiting principle"). The Requests seek documents from 2017 through the present day, although the relevant donations were made after March 2022 [Motion, ¶¶ 4-5]. The Requests seek documents that do not exist. The Requests also seek documents within the Debtors' possession, custody, or control, or in the alternative, information within the public domain which the Debtors failed and/or refused to collect. *See generally In re Millennium Lab Holdings II, LLC*, 562 B.R. at 627 (cautioning movant to avoid duplicative requests in light of documents within its possession, custody, or control). Further, the Requests seek documents from and/or about third parties other than CFAR. Finally, the proposed order to the Motion seeks authority to issue subpoenas (plural, not singular), request additional discovery and/or examination without limitation or judicial oversight, and take all actions that the Debtors deem necessary [D.I. #3329-2]. The Debtors seek this unfettered access

without having shown its lawful authority to make use of the requested documents and/or information. *See In re Sun Edison*, 572 B.R. at 491 (finding that Bankruptcy Rule 2004 does not permit a debtor to take discovery "involving claims it does not own"); *In re Millennium Lab Holdings II, LLC,* 562 B.R. at 629 (denying the lender trust's request under Bankruptcy Rule 2004 to pursue non-debtor claims); *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 378-79 (Bankr. E.D. Pa. 1998) (limiting the scope of a Bankruptcy Rule 2004 request to the extent that the movant could not pursue the claim underlying the request).

14. Finally, the Court should deny the Motion, because the additional information is not relevant to the Debtors' investigation, in which they have apparently already concluded that the charitable donations received from the non-debtor entity are fraudulent or otherwise recoverable. The Debtors should not be permitted to exploit Rule 2004 to conduct discovery for an adversary complaint that is almost certainly on the horizon. Given the information disclosed to date, if the Debtors seek the production of additional documents in furtherance of an adversary action, they should file suit and – after having first established its legal authority to maintain said action – propound discovery subject to the limitations of the Bankruptcy Rules and the Civil Rules, respectively. *See In Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (highlighting the procedural safeguards of the Civil Rules afforded parties who may be liable to the bankruptcy estate). Although

the Debtors have not yet commenced legal action against CFAR related to the charitable donations, the Court should not turn a blind eye to the Debtors' goals in light of the pending proceeding rule. *See In re Sun Edison*, 572 B.R. at 490 ("The pending proceeding rule is based on the different safeguards that attend Rule 2004 and civil litigation discovery, and reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit.").

15. The balancing of interests weighs in favor of denying the Motion without prejudice. The Motion demonstrates that the Debtors already possess information sufficient to file an adversary action to compel the avoidance of the relevant charitable donations. The Debtors' authority to pursue such action, let alone establish their claims, is another question, albeit one that the Debtors cannot establish through the Motion or the Requests. Although CFAR objects to the information and/or documents sought in the Requests, it has produced extensive financial documentation in the interest of cooperation and to avoid further cost, burden, and harassment. Further, CFAR has provided substantive information related to the Requests [Exh. 1]. If the Debtors cannot establish good cause for requesting additional information, with some degree of specificity, the breadth of the remaining Requests warrants a denial of the Motion without prejudice.

**WHEREFORE**, the Center for Applied Rationality respectfully requests that this Honorable Court deny the Motion; and grant such other relief as the Court deems fair and appropriate.

| | |
|---|---|
| Dated: November 10, 2023<br>Wilmington, Delaware | **McCARTER & ENGLISH LLP**<br><br>/s/ *Matthew J. Rifino*<br>Kate R. Buck (DE# 5140)<br>Matthew J. Rifino (DE# 4749)<br>Renaissance Centre<br>405 N. King Street, Suite 800<br>Wilmington, Delaware 19801<br>(T) 302.984.6300<br>kbuck@mccarter.com<br>mrifino@mccarter.com<br><br>*Attorneys for Respondent* |