**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Ref. Nos. 3373, 3697, 3700, 3708, 3715 |

**DEBTORS' REPLY IN SUPPORT OF AMENDED MOTION OF DEBTORS
TO ENTER INTO, AND PERFORM THEIR OBLIGATIONS
UNDER, THE REIMBURSEMENT AGREEMENTS**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this reply (the "Reply") in support of the *Amended Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 3373] (the "Motion")[2] and in response to (i) the objection to the Motion by the United States Trustee (the "US Trustee") filed on November 10, 2023 [D.I. 3715] (the "UST Objection") and (ii) the objection to the Motion by Pat Rabbitte (together with the US Trustee, the "Objectors") filed on November 9, 2023 [D.I. 3708] (the "Rabbitte Objection" and together with the UST Objection, the "Objections"). In support of the Reply and the Motion, the Debtors rely upon the *Declaration of John J. Ray III In Support of Amended Motion of Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 3700] (the "Ray Declaration"). The

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/ftx. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Objections should be overruled and the Motion should be granted. In support of this Reply, the Debtors respectfully state as follows:

## Reply

1. The Ad Hoc Committee is an important constituency whose active participation in these Chapter 11 Cases has and will continue to benefit the Debtors and their estates. Entry into and performance under the Reimbursement Agreements is critical to ensure that participation continues in an efficient manner through plan confirmation.

2. The Ad Hoc Committee was formed in the very early days of these cases and has continued to grow and evolve to be representative of the vast and diverse group of FTX.com customers. It is singularly focused on the claims and interests of non-US FTX.com customers—who are the largest group of creditors in these case—including by investigating, advancing and ultimately resolving numerous arguments that those customers are not general unsecured creditors but rather hold traceable property interests in the Debtors' assets.

3. The Debtors recognized early the important role the Ad Hoc Committee could play in organizing a critical mass of customers to negotiate with the Debtors on the claims asserted by FTX.com customers, and has therefore engaged constructively with the Ad Hoc Committee for many months. From the beginning, the Ad Hoc Committee showed both a willingness to litigate matters and an openness to a fair and reasonable compromise of the customer property claims and related issues, including difficult questions about how to address customer preference claims en masse. After protracted negotiations, the Debtors have reached consensual agreements with the Ad Hoc Committee to resolve the customer property litigation and preference policy issues, which are reflected in the revised plan terms and the PSA.

4. The official committee of unsecured creditors (the "<u>Unsecured Creditors Committee</u>") also has been instrumental in negotiating a solution to customer property issues, but

the Unsecured Creditors Committee represents the interests of all unsecured creditors, including creditors of Alameda, other non-customer creditors and customers of FTX US and other affiliated exchanges. Thus, the Ad Hoc Committee has and will continue to provide an important counterpoint to the Unsecured Creditors Committee, both in terms of viewpoints and in negotiations. For these reasons, the Debtors believe in their business judgment that the terms of the Reimbursement Agreements are reasonable and appropriate to ensure that the Ad Hoc Committee delivers the benefits and cost savings to be realized from a consensual plan of reorganization embodied in the PSA. The Unsecured Creditors Committee commented on and does not object to the relief requested in the Motion.

**I.      Section 503(b) Does Not Govern the Debtors' Request to Pay Fees Pursuant to the Reimbursement Agreements.**

5.      This Court and other courts that have examined this exact issue have determined that section 363 of the Bankruptcy Code is a valid statutory basis for the Debtors to obtain the requested relief. *See, e.g.*, *In re Mallinckrodt PLC*, Case No. 20-12522 (JTD) (Feb. 1, 2021), D.I. 1250; *In re Kidde-Fenwal, Inc.*, Case No. 23-10638 (LSS), Nov. 7, 2023 Hr'g Tr. 8:3-9:23;[3] *In re Amyris, Inc.*, Case No. 23-11131 (TMH), Sept. 7, 2023 Hr'g Tr. 22:3-6; *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS), Aug. 19, 2021 Hr'g Tr. 19:21-24; *City of Rockford* v. *Mallinckrodt PLC (In re Mallinckrodt PLC)*, 2022 WL 906458 (D. Del. Mar. 28, 2022). Indeed, the US Trustee cites to *no* cases that consider the interplay of section 363 and section 503 and determine that section 503 overrides section 363 as the only basis for this relief.

---

[3]    Copies of the hearing transcripts cited herein are attached hereto as **Exhibits A-F**.

6.      With no case law support, the US Trustee resorts to a statutory construction argument that has been repeatedly considered and rejected by the District Court and other courts. The US Trustee argues that "[b]y enacting section 503(b) of the Bankruptcy Code, Congress provided a specific procedure and standard for the allowance of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case." (UST Obj. ¶ 28.) This, according to the US Trustee, is a "specific statutory provision" that must govern over the "general" provision of section 363(b). (*Id.* ¶¶ 37-39.) The US Trustee further contends that interpreting section 363(b) to permit payment of an ad hoc committee's professionals would render section 503(b) superfluous. (*Id.* ¶ 40.)

7.      These arguments fail and have already been rejected by numerous courts. In *Mallinckrodt*, the District Court noted in rejecting the same US Trustee arguments that "[i]n these circumstances, a different canon of construction controls: 'courts should interpret a statute with . . . an ear for harmonizing potentially discordant provisions.'" *Mallinckrodt*, 2022 WL 906458, at *9 (D. Del. Mar. 28, 2022). With that guidance, the District Court found that sections 503(b) and 363(b), among others, "can be given effect without raising any contradiction or superfluity concerns." *Id*. The District Court went on:

> Section[] 363(b) . . . on the one hand, and [section] 503(b), on the other hand, are directed at different parties, operate at different times, and serve different purposes. Section[] 363(b) . . . permit[s] ***debtors*** (or trustees) to take actions for the benefit of the estate ***going forward*** based on their own ***business judgment***. Section 503(b), by contrast, permits ***creditors*** (often over debtor objections) to seek allowance of an administrative expense for ***past contributions*** to an estate under a ***substantial contribution*** standard.

*Id.* (citations omitted) (emphasis in original); *see also In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.), Nov. 19, 2019 Hr'g Tr. 155:2-156:5 (agreeing with the analysis of another court that "conclud[ed] that under Section 363(b) the payment [of unsecured creditor's

fees] was warranted and not precluded by Section 503 of the Bankruptcy Code"); *U.S. Trustee* v. *Bethlehem Steel Corp.*, 2003 WL 21738964, at *11 (S.D.N.Y. July 28, 2003) ("The authorization of certain types of payments under [section] 363(b) is not prohibited simply because there is another section of the Bankruptcy Code related to the same type of payment.").

8. In fact, this Court, too, has expressly found that the Debtors can seek similar relief using section 363 as a valid statutory basis. *See In re Mallinckrodt PLC*, Case No. 20-12522 (JTD), Dec. 14, 2020 Hr'g Tr. at 34:1-5 ("I agree with the debtors that Section 363 provides the procedural mechanism for a debtor to seek the authority to make payments to unsecured creditor groups that if the group, itself, sought payment it would need to be made pursuant to Section 503."); *In re Mallinckrodt PLC*, Jan. 19, 2021 Hr'g Tr. 9:25-10:4 ("I conclude that the debtors have met their burden of establishing the sound exercise of their business judgment under Section[] 363 . . . in . . . entering into the reimbursement agreements with the professionals of the ad hoc groups at issue.").

9. The US Trustee's citation to *Lehman* is inapposite. (UST Obj. ¶¶ 30-31.) That case involved a request by *creditors* for payment of their professionals' fees, not by the debtors. Indeed, contrary to the US Trustee's assertions, sections 363 and 503 of the Bankruptcy Code serve different purposes: "Section 503 allows entities that incurred certain expenses to request payment from the estate. . . . Section 363, on the other hand, governs the use of funds by the debtor in possession while it operates its business after the bankruptcy petition is filed." *Bethlehem Steel Corp.*, 2003 WL 21738964, at *10; *see also Mallinckrodt*, 2022 WL 906458, at *10 ("Creditors cannot seek payment under §§ 363(b) or 365(a), and therefore § 503(b) continues to serve a clear purpose.").

10.     Accordingly, the US Trustee's argument that section 503(b) should apply is unsupported by law and contradicts direct rulings in this Court and other courts, and should be rejected.

## II.     Section 363(b) Applies to the Relief Requested and Is Satisfied.

11.     As set forth above, the case law is clear that section 363(b) of the Bankruptcy Code provides a valid statutory basis for the requested relief. In fact, the US Trustee acknowledges the reasoning and affirmance of the District Court in *Mallinckrodt* but is asking this Court to reach a different conclusion. The US Trustee alternatively argues that even if analyzed under section 363(b), the Debtors still fail to meet their burden to establish that it is within the "sound exercise of their business judgment" to enter into the Reimbursement Agreements. (UST Obj. ¶¶ 43-47.) These arguments fail.

### A.     There Is Adequate Evidentiary Support for the Debtors' Exercise of Sound Business Judgement.

12.     The undisputed legal standard applicable to requests pursuant to section 363(b) of the Bankruptcy Code is the business judgment test, under which "a bankruptcy court will authorize debtor-initiated actions if the debtor shows that 'a sound business purpose justifies' such actions." *See Mallinckrodt*, 2022 WL 906458, at *6. "Where [a debtor] articulates a reasonable basis for the business decision, courts will generally not entertain objections." *In re Culp*, 545 B.R. 827, 844 (D. Del. 2016), *aff'd*, 681 F. App'x 140 (3d Cir. 2017).

13.     The US Trustee incorrectly contends that the Debtors provided inadequate evidence to support their "business judgment claim." (UST Obj. ¶ 48.) The US Trustee cherry-picks selective statements without context from the Ray Declaration while ignoring the rest of the testimony. The Debtors have carried the evidentiary burden to satisfy the business judgment

standard under section 363 of the Bankruptcy Code and reserve all rights to supplement Mr. Ray's testimony as necessary.

14. First, Mr. Ray, the Debtors' Chief Executive Officer, testifies that the preservation of the PSA creates many benefits for the Debtors and is an important consideration underlying the Debtors' decision to enter into the Reimbursement Agreements. (Ray Decl. ¶ 20.) Under the terms of the PSA, if the Debtors' entry into, and performance under, the Reimbursement Agreements is not approved by the Court by December 1, 2023, the Ad Hoc Committee may terminate the PSA (which if exercised, provides the Unsecured Creditors Committee the ability to also terminate the PSA). Mr. Ray also detailed other factors considered by the Debtors in their decision to enter into the Reimbursement Agreements and why they benefit the Debtors' estates as a whole, including, among other things, (i) the support and cooperation to date by the Ad Hoc Committee to minimize disputes and litigation and their continued support and cooperation necessary towards a consensual plan (*id.* ¶ 19); (ii) having a centralized source representing the interests of FTX.com customers to alleviate the practical impossibility of negotiating with numerous individual FTX.com customers (*id.* ¶ 15); (iii) the resolution of property interest claims that otherwise would need to be resolved in litigation and could potentially delay plan confirmation (*id.* ¶¶ 4, 19); and (iv) the practical need of the Ad Hoc Committee to seek guidance from the AHC Professionals given the complexity of the outstanding issues in these Chapter 11 Cases (*Id.* ¶ 19).

15. Second, the Ray Declaration details the safeguards to ensure the professional fees and expenses of the AHC Professionals eligible for reimbursement will relate to work that is beneficial to the Debtors' estates as a whole. During the negotiations of the Reimbursement Agreements, the Debtors and the AHC Professionals discussed, and agreed to, necessary and appropriate structural protections to ensure clear limitations of fee payments,

including the requirement that the fees and expenses be reviewed when submitted by the Court, the Debtors, and parties-in-interest to ensure they are reasonable and appropriate. (*Id.* ¶¶ 11-13.)

16. The US Trustee's suggestion that the PSA has little value in promoting settlement of the AHC adversary proceeding is plainly wrong. The adversary proceeding was not mooted by any action or inaction by the Ad Hoc Committee during these Chapter 11 Cases. The reason that the adversary proceeding has not progressed—and the parties and the Debtors' estates have not incurred significant litigation costs and expenses—is because the Debtors and the Ad Hoc Committee have been in discussions regarding a potential consensual resolution of the customer property disputes for many months. In fact, the Ad Hoc Committee has stayed its adversary proceeding *because of*, not in spite of, these sustained efforts. The proposed settlement that resulted from these efforts will expedite the Debtors' plan process and minimize litigation costs. Absent the PSA, the Debtors would be forced to spend significant estate resources and time to address these customer property disputes either prior to or in connection with the chapter 11 plan process.

17. Additionally, the changes in monthly fee cap for Counsel and the increase in Transaction Fee for Rothschild & Co reflect changed circumstances and further negotiation amongst the Ad Hoc Committee, the Debtors and the Unsecured Creditors Committee subsequent to the filing of the initial motion.[4] In light of the significant amount of work done by the Ad Hoc Committee and the additional amount of work to be done, the Ad Hoc Committee requested increases and changes to the fee structures. After negotiations with the Ad Hoc Committee and the Unsecured Creditors Committee, the Debtors agreed to the revised amounts as reflected in the Reimbursement Agreements. The Ad Hoc Committee played a key role in the formulation of the

---

[4] Payment of the Transaction Fee by the Debtors is subject to further order of the Court.

PSA and will continue to play a critical role in connection with plan confirmation. The Debtors submit that the changed fee terms reflect the result of arms'-length negotiation, and are reasonable and in the best interests of the estates given the past and ongoing contributions of the Ad Hoc Committee.

### B. The US Trustee's Attempts to Distinguish *Mallinckrodt* Are Unavailing.

18. The US Trustee's attempts to revive failed arguments from *Mallinckrodt* are unavailing. First, the US Trustee puts forth the dubious notion that *Mallinckrodt* is distinguishable on the basis that two of the three ad hoc groups therein were comprised of governmental entities whose interests differed from the members of the two official committees. (UST Obj. ¶ 46.) However, courts in this jurisdiction and others, including this Court in *Mallinckrodt*, have approved similar reimbursement agreements for ad hoc groups representing interests of non-governmental entities. *See In re Mallinckrodt PLC*, Case No. 20-12522 (JTD), 2022 WL 906458, at *1 (authorizing reimbursement agreements for professionals of an ad hoc group representing interests of holders of the debtors' guaranteed unsecured notes); *In re AMR Corporation*, 11-15463 (SHL), D.I. 4652 (Bankr. S.D.N.Y Sept. 21, 2012) (authorizing reimbursement agreements for professionals of ad hoc groups representing interests of holders of the debtors' unsecured notes); *In re Amyris, Inc.*, Case No. 23-11131 (TMH), Sept. 7, 2023 Hr'g Tr. 24:25-25:3 (authorizing reimbursement agreement for prepetition ad hoc group of lenders). Additionally, as further discussed below, the interests represented by the Ad Hoc Committee are distinct from those represented by the Unsecured Creditors Committee. Therefore, the composition of the Ad Hoc Committee falls within the approval guidance provided in *Mallinckrodt*.

19. Relatedly, both Objectors attack the composition of the Ad Hoc Committee that a substantial portion of the members are secondary claimholders. This is irrelevant. There is

no legal or economic difference between original customers or secondary claimholders. They are all legitimate holders of claims and are entitled to recovery from the Debtors on account of such claims. Nothing in the Bankruptcy Code or Bankruptcy Rules would otherwise allow the Debtors to separately classify or treat these types of claimholders differently.

20. Second, the US Trustee asserts that the fact that the PSA was executed postpetition is a differentiating fact from *Mallinckrodt*. (UST Obj. ¶ 46.) The formulation of the PSA was an iterative process and involved intense, multilateral negotiations for months. But it is not relevant. As Mr. Ray makes clear, the value to the Debtors' estates is substantial and support the Debtors' business judgment to enter into and perform under the Reimbursement Agreements.

21. Third, the US Trustee further argues that *Mallinckrodt* authorized the payment of prospective fees only under section 363(b), whereas the Debtors seek to reimburse the AHC Professionals *nunc pro tunc* to a date prior to the execution date of the agreements. (UST Obj. ¶ 46.) This is neither accurate nor relevant. Two approved reimbursement agreements in *Mallinckrodt* covered payments *nunc pro tunc* to a date prior to the execution date of the agreements. *See In re Mallinckrodt PLC*, Case No. 20-12522 (JTD), D.I. 1092, Exs. C-1 and C-2; *see also In re Kidde-Fenwal, Inc.*, Case No. 23-10638 (LSS), Nov. 7, 2023 Hr'g Tr. 5:5-9; 11:17-21 (approving entry into reimbursement agreement and payments *nunc pro tunc*.)

22. The Debtors, the Ad Hoc Committee and the AHC Professionals began negotiation of the Reimbursement Agreements months ago. It makes no business sense, and there is no legal justification, to disallow reimbursement of fees and expenses incurred by the AHC Professionals while supporting the Debtors' plan process prior to the Court's approval of the Reimbursement Agreements. Furthermore, while the Reimbursement Agreements provide for the reimbursement of past fees, the AHC Professionals are required to comply with the Interim

Compensation Order, including the review and holdback procedures, and all fees will be subject to the fee examiner's review. These procedures ensure that even retroactive reimbursement is only authorized to the extent the fees and expenses were reasonable, documented and reimbursable under the Reimbursement Agreements.

      **C.**    **The Ad Hoc Committee and the Unsecured Creditors Committee Represent Distinct Interests.**

    23.    The US Trustee repeatedly conflates the interests being represented by the Unsecured Creditors Committee and the Ad Hoc Committee and fundamentally misunderstands the roles of the two committees in these Chapter 11 Cases. The US Trustee contends that given the fact that "all of the members of the [Ad Hoc Committee] and all members of the [Unsecured Creditors Committee] are customers of the same FTX.com platform" and "[t]he idea that members of the [Unsecured Creditors Committee] would act against their own self-interests, and those of the other FTX.com customers, because they also have to represent the interests of other general unsecured creditors defies logic." (UST Obj. ¶¶ 4-6; 46.) Far from "defying logic," it is the law.

    24.    The Unsecured Creditors Committee is mandated to represent the interests of *all* unsecured creditors, without taking into account each Committee member's individual status in respect of their unsecured interests. *See Westmoreland Human Opportunities, Inc.* v. *Walsh*, 246 F.3d 233, 256 (3d Cir. 2001) ("A committee member violates its fiduciary duty by pursuing a course of action that furthers its self-interest to the potential detriment of fellow committee members."); *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) ("It is well recognized that . . . the members of an official committee owe a fiduciary duty to their constituents – in the case of an official creditors committee, to all of the debtor's unsecured creditors."). On the other hand, the Ad Hoc Committee solely represents FTX.com customers with respect to all of their

-11-

claims and those similarly situated, including claims that FTX.com customers hold alleged *property interests* in the Debtors' assets.

25. While the Unsecured Creditors Committee represents the collective *unsecured interests* of all unsecured creditors, the alleged *property interests* asserted by the Ad Hoc Committee on behalf of its members are different than, and may be adverse to, these unsecured interests. The Unsecured Creditors Committee represents the unsecured claims of the FTX.com customers along with the claims of all other unsecured creditors. However, to the extent of any alleged property interest in the Debtors' property, as alleged in the AHC adversary proceeding, such property interests will be in direct tension with those of the general unsecured creditors and justify separate representation. To the extent the Ad Hoc Committee were to prevail with its property rights arguments, there would be little residual value that would flow to unsecured creditors concerning FTX.com assets for the Unsecured Creditors Committee to protect. While the Debtors have contested the validity of any alleged property interests, the Debtors acknowledge these significant disputes and that they warrant separate representation.

26. Moreover, the insinuation by the US Trustee that the Unsecured Creditors Committee should promote the interests of a sub-group of its constituency at the expense of the other creditor constituencies—in breach of its fiduciary duties—is incorrect as a matter of law. Rather, the Unsecured Creditors Committee is obligated to put the interests of the general unsecured creditor body as a whole above any particular interests of a group of its members in the event there is any divergence of interests.

D. **Rabbitte's Allegation that the Ad Hoc Committee Is Not Representative of the FTX.com Customers Is Unconvincing.**

27. Rabbitte alleges that the Ad Hoc Committee does not represent the interests of all FTX.com customers. At one level this is true: the Ad Hoc Committee is not an estate

fiduciary engaged to represent non-members.  However, the Ad Hoc Committee is *representative* of customers, including small and large holders and initial holders and subsequent purchasers, and the Debtors believe the Ad Hoc Committee is well-situated to negotiate the settlements of customer-related issues with the Debtors.  The Ad Hoc Committee currently includes FTX.com customers holding over $1 billion of claims.  The Verified Second Supplemental Statement states that "all customers of FTX.com are welcome to join the Ad Hoc Committee, subject to standard requirements and protocols set forth in the Ad Hoc Committee Bylaws." [D.I. 2144].  The Ad Hoc Committee and its professionals have represented to the Debtors without qualification that they have responded to all FTX.com customers who have contacted the AHC Professionals and not a single party has been refused membership.  The Debtors are also informed that the two customers to which Mr. Rabbitte referenced were welcome to join the Ad Hoc Committee, but voluntarily chose not to join unless they were both appointed to the Executive Committee immediately upon becoming members, which was a condition unacceptable to the Ad Hoc Committee.  The Debtors also understand that the Ad Hoc Committee and its professionals are open to speaking to all FTX.com customers and taking into consideration their interests and concerns as appropriate.

28.    Furthermore, Rabbitte's criticism of the PSA and the proposed settlement of the AHC adversary proceeding are irrelevant to this Motion.  This Motion is not the appropriate venue to address these and any plan concerns.  Parties-in-interest will have the opportunity to raise plan related issues in connection with plan confirmation.

### III.    The US Trustee's Other Objections to the Motion Are Meritless.

29.    The US Trustee further objects to a number of aspects relating to the Rothschild & Co Engagement Letter.  These are all similarly meritless.  As a threshold matter, the Debtors are not party to the Rothschild & Co Engagement Letter, and the Debtors' only obligations to Rothschild & Co are pursuant to the A&R Rothschild & Co Reimbursement Agreement.

30. The assortment of objections set forth in paragraph 52 of the US Trustee Objection should be overruled because:

   a. The US Trustee objects to the absence of a requirement that some or all of the monthly fees paid to Rothschild & Co be applied against the Transaction Fee. The Debtors submit that the current fee structure as agreed with the AHC Professionals is the result of intense, arms'-length negotiation between the parties.

   b. The US Trustee objects to provisions in the Rothschild & Co Engagement Letter. As noted, the Rothschild & Co Engagement Letter is irrelevant. Any reimbursement obligations of the Debtors are confined to the terms of the Reimbursement Agreements, as modified by the Order, and this limitation is fully acknowledged in the Rothschild & Co Engagement Letter. The Rothschild & Co Engagement Letter clearly states that any "payment by the [Debtors] of Rothschild & Co's fees and expenses, including the Monthly Fee and Transaction Fee, shall be made pursuant to the Reimbursement Agreement, and will be subject to, and made in accordance with, the [Court's Order]." Rothschild & Co Engagement Letter, § 3(b). The US Trustee's concern is further obviated by the Order, which specifies that the Transaction Fee "shall not become due and payable without further order of the Court".[5] Accordingly, the Debtors cannot and will not pay Rothschild & Co the Transaction Fee unless expressly approved by further order of the Court.

   c. The US Trustee objects to the indemnification and exculpation provisions in the Rothschild & Co Engagement Letter. These provisions are irrelevant to the Debtors because there are no indemnification provisions in the A&R Rothschild & Co Reimbursement Agreement. With respect to exculpation, the A&R Rothschild & Co Reimbursement Agreement merely states that the Debtors intend to include the AHC Professionals as beneficiaries of any debtor or third-party release. There is no other commitment or obligation, and no releases are being approved at this time.

   d. Lastly, the Debtors agree that Rothschild & Co should be directed to comply with all requirements of Local Rule 2016-2, except that Rothschild & Co shall be permitted to keep professional time records in half-hour increments. The Debtors will revise the proposed Order accordingly.

---

[5] The Unsecured Creditors Committee filed the *Statement and Reservation of Rights of the Official Committee of Unsecured Creditors in Response to Amended Motion of the Debtors to Enter Into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 3697] (the "Statement") on November 8, 2023. The Unsecured Creditors Committee reserves its rights to object to certain aspects of the Transaction Fee "when that issue is presented to the Court, following confirmation of a plan." (Statement, ¶ 7.) The Debtors reserve all rights.

**Conclusion**

For the reasons stated above, the Court should overrule the Objections, grant the Motion, and enter the Order.

Dated: November 12, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

 /s/ *Kimberly A. Brown*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*