**Exhibit A**

```
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2

 3   IN RE:                          .   Chapter 11
                                     .   Case No. 23-10638 (LSS)
 4   KIDDE-FENWAL, INC.,             .
                                     .
 5                                   .
                                     .   Courtroom No. 2
 6                                   .   824 Market Street
                          Debtor.    .   Wilmington, Delaware 19801
 7                                   .
                                     .   Tuesday, November 7, 2023
 8   . . . . . . . . . . . . . . .   .   11:29 a.m.

 9

10                         TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
11               CHIEF UNITED STATES BANKRUPTCY JUDGE

12

13   APPEARANCES:

14   For the Debtor:         Derek C. Abbott, Esquire
                             MORRIS NICHOLS ARSHT & TUNNELL, LLP
15                           1201 North Market Street
                             16th Floor
16                           Wilmington, Delaware 19801

17


18


19

20   Audio Operator:         Brandon J. McCarthy, ECRO

21   Transcription Company:  Reliable
                             The Nemours Building
22                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
23                           Telephone: (302)654-8080
                             Email: gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1                              INDEX

2  MOTIONS:                                                    PAGE

3  Agenda
   Item 1:    Bench Ruling on Motion of Debtor to Enter           3
4             into, and Perform its Obligations Under, the
              Reimbursement Agreement with the Professionals
5             Retained by the Ad Hoc Committee of
              Governmental Claimants, Nunc Pro Tunc to
6             May 14, 2023 [D.I. 483]

7

8  Transcriptionist's Certificate                               15

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced at 11:29 a.m.)
2               THE CLERK:  Please rise.
3               THE COURT:  Please be seated.
4               MR. ABBOTT:  Good morning, Your Honor.  Derek
5   Abbott here for the debtors.
6               We have a smaller audience live today, but a much
7   bigger one on Zoom.  I realize this is all the Court's show,
8   but I thought I would at least say --
9               THE COURT:  Get us kicked off.
10              MR. ABBOTT:  -- good morning --
11              THE COURT:  Good morning.
12              MR. ABBOTT:  -- and then sit back down.
13              THE COURT:  Okay.  Good morning.
14              Thank you, Mr. Abbott.
15              This is my decision on Kidde-Fenwal's motion to
16  enter into and perform a reimbursement agreement with the
17  professionals retained by the Ad Hoc Committee of
18  Governmental Claimants.
19              The motion is supported by the Official Committee
20  of Unsecured Creditors and the Ad Hoc Committee.  It is
21  opposed by the Office of the United States Trustee.
22              I took evidence and heard argument on October 26th
23  and took the matter under advisement.
24              The evidence is undisputed and it is in the form
25  of the declaration of James Mesterharm, debtor's chief

1 transformation officer.  Mr. Mesterham was present in the
2 courtroom and no one chose to cross-examine him.
3 　　　　　Mr. Mesterharm testified that the Ad Hoc Committee
4 of Creditors was formed shortly after Kidde-Fenwal filed
5 bankruptcy.  It consisted of 20 governmental entities, which
6 counsel represents has now increased to 23 and may grow
7 further.
8 　　　　　Debtor considers the Ad Hoc Committee to be a key
9 participant in its restructuring process and plan
10 negotiations and believes its involvement in the case to be
11 both important and necessary.  Debtor believes without the Ad
12 Hoc Committee providing a single point for negotiation of the
13 distinct issues facing governmental entities, debtor will
14 wind up in *seriatim* negotiations with each governmental unit
15 resulting in unduly burdensome, protracted, and costly
16 proceedings.
17 　　　　　Debtor believes that an Ad Hoc Committee structure
18 is the most sufficient path forward in the case, which has
19 already resulted in streamlining a negotiated, voluntary
20 extension of the automatic stay to governmental entities.  A
21 streamlined, consensus-building process with the Ad Hoc
22 Committee is integral to the debtor's path in confirming a
23 plan and debtor believes is in the best interests of the
24 estate and will benefit the estates as a whole.
25 　　　　　The negotiated fee arrangement with the Ad Hoc

1  Committee's professionals is documented in a letter agreement
2  filed with the motion.  The letter agreement provides for the
3  payment of the Committee's attorneys, Kelley Drye & Warren
4  and A.M. Saccullo Legal, as well as its financial advisor,
5  Berkeley Research Group.  Debtor agrees to pay these
6  professionals reasonable and documented fees and out-of-
7  pocket expenses for services rendered to the Ad Hoc Committee
8  at their normal hourly rates up to a cap of $600,000 per
9  month beginning May 14, 2023.  The monthly cap can be rolled
10 forward or backwards to cover fees and expenses exceeding
11 $600,000 in a given month.  Debtor may terminate the
12 agreement at any time and for any reason, effective 30 days
13 after notice.
14          After this arrangement was reached, the Official
15 Committee of Creditors negotiated additional conditions on
16 payment.  The Ad Hoc Committee's professionals now must
17 comply with the interim compensation procedures order that
18 applies to estate professionals, including the review
19 process, a 20-percent holdback, and a review by the fee
20 examiner appointed in this case.  Further, the fees and
21 expenses incurred in connection with or relating to the
22 allocation by and among creditor constituencies, the estate,
23 or any proposed settlement, inuring to the benefit of
24 debtor's creditors shall be segregated and recorded in
25 separate matters.

1              These fees related to allocation of value are
2  payable only upon the earlier of debtor's and the Official
3  Committee's consent to the payment; a court order,
4  presumably, upon application by the Ad Hoc Committee's
5  professionals; the approval by the Court of a restructuring
6  support agreement that includes support from the Ad Hoc
7  Committee; confirmation of a Chapter 11 plan or the approval
8  of a sale of substantially all of debtor's assets; and a
9  motion that otherwise effectuates debtor's exit from the
10 case, such as conversion or dismissal.
11             This further-negotiated arrangement is
12 encapsulated in a revised form of order that was filed in
13 advance of the hearing.  The revised form of order also
14 provides that entry of an order approving this arrangement is
15 without prejudice to fees incurred, but not authorized to be
16 paid under the arrangement, which presumably means that the
17 Ad Hoc Committee could seek to have those fees paid as
18 conferring a substantial contribution.
19             The sole objection was brought by the Office of
20 the United States Trustee.  The United States Trustee's
21 primary argument is that a request to pay a non-estate
22 professional's fees may only be brought by way of a
23 substantial contribution motion, pursuant to
24 Sections 503(b)(3)(D) and (b)(4).  The United States Trustee
25 argues that Section 363 may not be used to circumvent the

1 plain language of Section 503 which specifically addresses
2 payment of fees and expenses incurred by Ad Hoc Committees in
3 a bankruptcy case.
4      The United States Trustee further invokes the
5 specific governs the general canon of statutory construction
6 with Section 503 being the specific and Section 363 being the
7 general.  Secondarily, the United States Trustee argues that
8 the motion fails even if analyzed under Section 363 for a
9 lack of evidence that the governmental entities would abandon
10 negotiations or otherwise not participate in the case in the
11 absence of the requested payment of fees.
12      The United States Trustee also points out that
13 unlike in some of the few other cases in which relief has
14 been granted under Section 363, the Ad Hoc Committee has not
15 signed a restructuring support agreement and a portion of the
16 relief is backwards-looking.  Further, the United States
17 Trustee points out that the Ad Hoc Committee cannot bind any
18 governmental entities beyond its direct members and over 30
19 States or Commonwealths are not members of the Committee.
20      Having reviewed the case law and considering the
21 evidence and arguments of counsel, I will, in the unique
22 facts and circumstances of this case, approve the motion as I
23 am about to discuss.
24      The statutory issue presented is at once, both
25 simple and complex.  The Code permits a debtor to bring a

1  motion for permission to use property of the estate,
2  including cash, outside of the ordinary course of business.
3  This is embodied in Section 363 and a debtor, therefore,
4  brings a request under Section 363 to seek permission from
5  the Court to of any action it seeks to take that is outside
6  of the ordinary course.  The instant request falls into this
7  category.
8  　　　　　Section 503, entitled "Allowance of Administrative
9  Expenses" provides in the first instance that an entity may
10 make a request for payment of an administrative expense.
11 Section 503 then provides a non-exclusive list of expenses
12 that may be allowed administrative priority; meaning, the
13 expenses paid ahead of general unsecured claims.
14 　　　　　The subsections at issue here, (b)(3)(D)
15 and (b)(4), allow as administrative expenses, the actual and
16 necessary expenses of an Ad Hoc Committee that makes a
17 substantial contribution in a Chapter 11 case, as well as
18 reasonable compensation for the services of the Ad Hoc
19 Committee's attorneys or accountants.
20 　　　　　I agree with the cases that have concluded that
21 Section 363 and Section 503 are not mutually exclusive when
22 it comes to seeking payment of an Ad Hoc Committee's expenses
23 and professionals' fees.  I am persuaded by the analysis in
24 both, <u>Bethlehem Steel</u>, 2003WL21738964 out of the District
25 Court for the Southern District of New York, Judge Mukasey,

1  and Mallinckrodt, 2022WL906458, from Judge Stark out of our
2  district, that a request under Section 363 is not prohibited
3  because the Code permits creditors to seek the same type of
4  payment under Section 503.
5              As both Courts recognize, in most circumstances,
6  debtors do not seek to pay these fees or oppose payment.
7              I am also persuaded by Judge Stark's analysis that
8  Sections 363 and 503 are not contradictory, such that there
9  is no need to apply the general specific canon and,
10 similarly, that there is no superfluidity issue.  As Judge
11 Stark points out, Section 363 and Section 503 are directed at
12 different parties, operate at different times, and serve
13 different purposes.
14             In my view, the more difficult question is whether
15 to approve the request under Section 363.  The Court may
16 approve a request under Section 363 if it is the proper
17 exercise of the debtor's business judgment.
18             As I stated during argument, given that
19 Section 363 requires notice and a hearing, as well as Court
20 approval, I agree with those judges who carefully weigh all
21 supporting and opposing views and determine in the Court's
22 judgment, whether the debtor's decision makes good business
23 sense.
24             Here, as the United States Trustee points out, the
25 debtor's decision is not an operational one, to which greater

1  deference may be owed; rather, as Mr. Mesterharm articulates
2  it, the decision is a strategic one about what debtor
3  believes may pave a more efficient path to an exit.
4           In considering debtor's decision, then, I have to
5  evaluate debtor's judgment in this case.  In doing so, it is
6  appropriate to consider the existence of Section 503 as an
7  alternative for a creditor to pursue.
8           That this consideration is appropriate is evident
9  from the decisions made in other cases, including the
10 Bankruptcy Court's respective decisions in Purdue and
11 Mallinckrodt, at least as I glean from a reading of the
12 transcripts.  In each of those cases, the Court did not
13 accept the fee payment arrangement, as originally proposed by
14 the debtor; rather, the Courts recognized the challenging
15 situation of determining in the circumstances of the case
16 before them, whether the expenditure of debtor's funds to pay
17 these expenses, which diminishes, or could diminish, funds
18 available to pay creditors is a best use.
19          Therefore, in both Purdue and Mallinckrodt, which
20 are most analogous, after hearing concerns raised by
21 objectors, the Court added additional conditions on payment.
22 Those additional conditions permitted a backwards-looking
23 view at the time of payment to see if the Ad Hoc Committee's
24 actions, as anticipated when the 363 motion was approved,
25 benefited all of the parties in the case and/or whether the

1  Ad Hoc Committee was constructive, generally.
2             For example, in Mallinckrodt, Judge Dorsey imposed
3  two additional requirements:  one, if mediation fails and
4  there are no further prospects for a mediated resolution, all
5  reimbursement of fees and costs would cease; two, if the
6  mediator advised the Court that an Ad Hoc Group was not
7  participating in the mediation in good faith, all
8  reimbursements would cease and any fees and expenses
9  previously paid would be subject to disgorgement, following
10 notice and an opportunity for a hearing.  Those conditions
11 bring the standard of review on fees requested by an Ad Hoc
12 Committee professional closer to a general administrative
13 claim or substantial contribution standard than to a review
14 of professional fees under Section 330.
15            As noted in Purdue, additional safeguards put the
16 Ad Hoc Committee at some risk.
17            As applied here, the conditions that debtor
18 originally put in place, together with the additional
19 restrictions placed on payment agreed to with the Official
20 Committee also reflect a heightened standard and a backwards-
21 looking view on fees; in fact, the payment on fees related to
22 the "allocation issue," as it is called, are conditioned on
23 the approval of an RSA, confirmation, or other exit strategy
24 supported by the Ad Hoc Committee.
25            To the extent that it's not clear, I will impose

1 the additional condition that all fees and expenses
2 ultimately be subject to notice and a hearing and review by
3 the Court even if one of the events for payment occurs.
4 　　　　　Further, in my determination of what is an
5 appropriate or reasonable level of fees, I will take into
6 consideration the Ad Hoc Committee's positive contribution to
7 the case and its good faith participation to a resolution.
8 While that, admittedly, injects some risk into the ultimate
9 receipt of payment, this is an appropriate level of risk for
10 a motion brought under Section 363.
11 　　　　　Here, I do place some significance in approving
12 the arrangement that the governmental entities cannot sit on
13 the Official Committee.  I also credit the agreed-to
14 restrictions and the ability to review the fees to determine
15 appropriateness at the time of payment.  I also place some
16 significance on the fact that the Ad Hoc Committee has twice
17 agreed to a voluntary stay of AFFF-related claims against
18 nondebtor parties to provide an opportunity to bring
19 consensus to the case.
20 　　　　　I expect continued similar, positive actions in
21 this case and if for whatever reason debtor feels the
22 arrangement is no longer beneficial, debtor may terminate the
23 agreement.
24 　　　　　While I am not sure why there is notice period, I
25 will accept this negotiated term in light of the other

1  conditions and can address any fees sought in that 30-day
2  period at the time that they are requested.
3       So I will approve debtor's motion as the relief
4  has been modified.  Based on the unopposed evidence and the
5  conditions to payment, I conclude for purposes of this motion
6  that debtor has properly exercised its business judgment in
7  determining that it will be beneficial to the estate to have
8  the Ad Hoc Committee participate in these cases as a
9  Committee and to serve as a focal point for a negotiation
10 with governmental entities.
11      In doing so, however, let me make clear that I
12 consider the granting of such relief to be a rare occurrence.
13 While, as evidenced by the Bethlehem Steel decision, the use
14 of Section 363 in this fashion is not new, but it does seem
15 to be picking up steam.  Each case will have to be evaluated
16 on its own terms and I do expect to be regularly approving
17 the payment of fees for a prepetition creditor or group of
18 creditors on a Section 363 motion.
19      I can envision that to the extent such a request
20 becomes commonplace, I would become more hesitant, not less
21 hesitant to grant the request.
22      And that's my ruling.  I recognize that I added an
23 additional condition.  The parties are obviously free to
24 discuss that, and if inclined, to enter an order revised --
25 to submit a revised form of order that reflects that ruling

1  and, if not, to let me know.
2              MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott
3  for the debtor.
4              We're happy to do exactly as the Court has
5  suggested.  Thank you, Your Honor.
6              THE COURT:  Okay.  Questions?
7          (No verbal response)
8              THE COURT:  Okay.  Then thank you very much.
9              That concludes my ruling.  Thank you for getting
10 together so quickly.
11             MR. ABBOTT:  Thank you, Your Honor.
12             THE COURT:  We're adjourned.
13        (Proceedings concluded at 11:49 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                        CERTIFICATION
 2            I certify that the foregoing is a correct
 3   transcript from the electronic sound recording of the
 4   proceedings in the above-entitled matter to the best of my
 5   knowledge and ability.
 6
 7   /s/ William J. Garling                    November 7, 2023
 8   William J. Garling, CET-543
 9   Certified Court Transcriptionist
10   For Reliable
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```