## Exhibit B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                       .  Chapter 11
                             .  Case No. 23-11131 (TMH)
AMYRIS, INC., et al.,        .
                             .  (Jointly Administered)
                             .
                             .  Courtroom No. 4
                             .  824 Market Street
            Debtors.         .  Wilmington, Delaware 19801
                             .
                             .  Thursday, September 7, 2023
. . . . . . . . . . . . . .  11:00 a.m.
```

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE

<u>APPEARANCES</u>:

```
For the Debtors:          James E. O'Neill, Esquire
                          PACHULSKI STANG ZIEHL & JONES, LLP
                          919 North Market Street
                          17th Floor
                          Wilmington, Delaware 19801


                          Steven W. Golden, Esquire
                          780 Third Avenue
                          34th Floor
                          New York, New York 10017

(APPEARANCES CONTINUED)

Audio Operator:           Nolley Rainey, ECRO

Transcription Company:    Reliable
                          The Nemours Building
                          1007 N. Orange Street, Suite 110
                          Wilmington, Delaware 19801
                          Telephone: (302)654-8080
                          Email:  gmatthews@reliable-co.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    APPEARANCES (CONTINUED):

2    For the U.S. Trustee:         John H. Schanne II, Esquire
                                   UNITED STATES DEPARTMENT OF JUSTICE
3                                  OFFICE OF THE UNITED STATES TRUSTEE
                                   J. Caleb Boggs Federal Building
4                                  844 King Street
                                   Suite 2207, Lockbox 35
5                                  Wilmington, Delaware 19801

6    For the Ad Hoc
     Noteholder Group:             Frank A. Merola, Esquire
7                                  PAUL HASTINGS, LLP
                                   1999 Avenue of the Stars
8                                  27th Floor
                                   Center City, California 90067
9
     For the Official
10   Committee of
     Unsecured Creditors:          Andrew F. O'Neill, Esquire
11                                 WHITE & CASE, LLP
                                   111 South Wacker Drive
12                                 Suite 5100
                                   Chicago, Illinois 60606
13

14

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2    MOTIONS:                                          PAGE

3    Agenda
     Item 1:    Debtors' Emergency Motion to Assume and/or      4
4               Enter Into Reimbursement Agreements with
                Professionals for the Ad Hoc Noteholder Group
5               (Filed August 25, 2023) [Docket No. 148]

6               Court's Ruling:                          22

7

8    DECLARATIONS:                                     PAGE

9    1) Declaration of Philip J. Gund                   8

10

11   Transcriptionist's Certificate                    28

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings commenced at 11:00 a.m.)

2            THE COURT:  Good morning, counsel.  This is Judge

3   Horan.  We're on the record in Amyris, Inc., Case

4   Number 23-11131.

5            I'll turn it over to Mr. O'Neill.

6            Good morning.

7            MR. JAMES O'NEILL:  Good morning, Your Honor.

8            James O'Neill of Pachulski Stang Ziehl & Jones

9   today, appearing on behalf of the Debtors, Amyris.

10           First, thank you very much for scheduling our

11  hearing for today.  We certainly appreciate the Court's

12  accommodation.

13           There's one matter on the agenda for today; that's

14  the Debtors' emergency motion to assume and/or enter into

15  reimbursement agreements for professionals with the Ad Hoc

16  Noteholder Group, and my partner Steve Golden is going to be

17  presenting the motion today on behalf of the Debtors.

18           THE COURT:  Good morning, Mr. Golden.

19           And just before you get started, I'm just going to

20  remind the parties to keep your cameras off unless you are

21  speaking to the Court or are asking for the opportunity to

22  address the Court, okay.  Thank you.

23           Mr. Golden, good morning.  Good to see you, sir.

24           MR. GOLDEN:  Good morning, Your Honor.  Steve

25  Golden, Pachulski Stang Ziehl & Jones, on behalf of the

1 | Debtors.

2 | And, Your Honor, I want to, again, repeat what my

3 | partner Mr. O'Neill said and thank Your Honor and your staff

4 | for being prepared to accommodate us last week for this and

5 | also being willing to have the hearing today and reschedule

6 | it, I believe, to accommodate the newly formed Committee, who

7 | is drinking from -- I think we always saying, "drinking from

8 | a firehose" -- I think they're drinking from several

9 | firehoses in this case.  But we have been trying -- we've

10 | been working with them nonstop and we're pleased to

11 | announce -- I don't want to steal their thunder -- that the

12 | additional time has borne fruit, because the Committee, as I

13 | understand it, does support the motion before Your Honor

14 | today.

15 | Your Honor, before, you know, getting into the

16 | meat of everything here, I do want to note a couple of other

17 | folks who are here with us today in the virtual courtroom.

18 | In addition to, of course, Mr. O'Neill and Ms. Grassgreen, my

19 | partners at Pachulski, Doris Choi, the general counsel, is

20 | on, as well, and Han -- I thought I saw him -- Han

21 | Kieftenbeld, our interim CEO is on.  And Mr. Gund, our chief

22 | restructuring officer, is on.

23 | And, Your Honor, Mr. Gund is our declarant.  And

24 | the reason I wanted to mention this up front, Mr. Gund, he's

25 | actually in Europe with several of the Debtors' advisors and

1   Mr. Kieftenbeld, in negotiations with our commercial

2   counterparties.

3          He is apparently one of the -- he just called me

4   before this hearing -- one of the meetings ran a little bit

5   late, so he is taking the train.  So I just wanted to let the

6   Court and everybody else know in the event that there are any

7   questions for him or if he's called upon, if there's any

8   slight delay or he does drop, he will be coming back on.

9   This is a technical issue that we're hopeful will not happen,

10  but want to be up front with the Court about that.

11         THE COURT:  Thank you for letting me know,

12  Mr. Golden.

13         MR. GOLDEN:  You're very welcome, Your Honor.

14         And thank you, Mr. Gund, for letting us know.

15         Your Honor, this is, as Mr. O'Neill said, the

16  Debtors seek to assume and/or enter into these reimbursement

17  agreements with the advisors to the Ad Hoc Noteholders Group.

18  This is a group that represents at least 65 percent of the

19  Debtors' total $690 million in principal of notes, which is

20  the single largest creditor constituency in this case.  And

21  we seek to do that pursuant to Sections 363 and/or 365 of the

22  Bankruptcy Code.

23         The motion was filed at Docket 148.  The sole

24  objection was from the United States Trustee at 178.  And

25  there were two replies from the Debtors at 182 and then the

1   Noteholder Group themselves at 184.  And, Your Honor, as I

2   just said, I will let them speak for themselves if they

3   desire to do so, but my understanding is both, the Committee

4   and the DIP lender, support the motion.

5           Your Honor, unless you'd like to proceed in a

6   different fashion, given the need to be expedient here, I

7   would propose to be efficient by beginning with the

8   evidentiary portion and then moving on to brief arguments

9   from the parties and the evidentiary portion, of course,

10  Mr. Gund's declaration and any cross-examination desired

11  (indiscernible).

12          THE COURT:  That's exactly how I would like to do

13  it.

14          Thank you, Mr. Golden.

15          MR. GOLDEN:  You're very welcome, Your Honor.  I

16  like it when I'm thinking the same way as the Court.

17          So with that, I would move the declaration of

18  Philip J. Gund, which was Docket 148-2, as Exhibit B to the

19  motion, into evidence as his direct testimony.  As I said, he

20  is available, albeit, on a train for cross-examination,

21  should there be any.

22          THE COURT:  Does anybody object to the admission

23  of Mr. Gund's declaration in support of the motion this

24  morning?

25          MR. SCHANNE:  Good morning, Your Honor.

1        Can you hear me okay?

2        THE COURT:  I can hear you, Mr. Schanne.

3        Good morning.

4        MR. SCHANNE:  May I please the Court?  John

5   Schanne on behalf of the UST.

6        We have no objection to submission of the

7   declaration and we do not intend to cross-examine.

8        THE COURT:  Okay.  Thank you, Mr. Schanne.

9        Mr. Gund's declaration is admitted into evidence.

10      (Gund Declaration received in evidence)

11       THE COURT:  Is there anybody else who might wish

12   to cross-examine Mr. Gund?

13      (No verbal response)

14       THE COURT:  Okay.  I hear no response.

15       MR. GOLDEN:  Thank you, Your Honor.

16       So, Your Honor, as I said at the outset, the

17   Debtors seek to enter into and/or assume the three

18   reimbursement agreements:  one with each of the Noteholder

19   Group's professionals under 363(b) and 365(a) of the

20   Bankruptcy Code, which, as set forth in our motion and our

21   reply, are the well-established -- is the correct provision

22   of the Bankruptcy Code under which this relief should be

23   sought.

24       And, Your Honor, we certainly, as I'm sure you've

25   read the cases that we have cited to, there are a number of

1  cases that have considered this issue and have come to the

2  same conclusions as the Debtors espouse here, including

3  Mallinckrodt and Bethlehem Steel and Purdue and others, which

4  is that 363 and 365 are the correct provisions, and it's a

5  question of, is this, indeed, the Debtors' business judgment?

6          And, Your Honor, here, the uncontested evidence,

7  as established through Mr. Gund's declaration, is that this

8  is a clear exercise, and a proper exercise, of the Debtors'

9  business judgment.

10          And just to hit a couple of the high points for

11 the Court, as of the date the motion was filed, the Ad Hoc

12 Group represented at least 65 percent of the holders of the

13 Debtors' convertible notes, which is the single largest

14 creditor constituency -- $690 million of notes.

15          The Debtors are working around the clock in a very

16 short period of time, literally traveling around the world

17 right now to work towards a consensual plan of reorganization

18 and to reach consensus on the terms of a Chapter 11 plan.

19 And it's really critical in furtherance of that to reach

20 alignment with the largest creditor constituency, the

21 Noteholders.

22          The Noteholders, as their -- I believe it's a 2019

23 statement -- says, there are more than one of them; there are

24 many of them.  And having to engage in those negotiations

25 with the fragmented body would be far more difficult, less

1   efficient, and more costly, and would jeopardize the Debtors'

2   ability to reach consensus in this period of time.  And

3   having this organized group of noteholders represented by

4   very competent professionals, including the Paul Hastings

5   firm and Blank Rome and BRG, is really essential.  We've been

6   engaging with them regularly and they are top-notch

7   professionals that are working to represent the interests of

8   their client in furtherance, again, of our shared goals here.

9           So, again, Your Honor, the Debtors' business

10  judgment, paying the reasonable and documented fees and

11  expenses of the Noteholder Group professionals up to the cap,

12  and subject to the procedures that are contained in the

13  proposed order, are in the best interests of the Debtors'

14  estates.

15          I note now, Your Honor, that one of the things

16  that the Committee asked for, and this is reflected in the

17  proposed order -- and at the appropriate time, we can go

18  through them specifically -- but the Committee added even

19  more additional guardrails as to the process to ensure that

20  people know what's going on, what the Noteholder Group has

21  done, what they're seeking to compensate their professionals

22  for, what they're seeking to have us compensate their

23  professionals for pursuant to the reimbursement agreements.

24  And the Debtors were happy to accommodate that request; we

25  think it's absolutely proper.

1          And, Your Honor, the sole objection, here,

2    obviously, is from the United States Trustee.  And, really,

3    it rests on, you know, as Your Honor has read, the idea

4    that 503(b) is the only -- is the proper avenue to seek this

5    relief, and, Your Honor, the Debtors respectfully disagree

6    with that.

7          And I note that, really, it -- the UST's argument

8    relies on this -- the canon of statutory construction that --

9    in Latin, I will not attempt to pronounce it, but I will do

10   it in English -- which is the general specific canon.  I

11   won't mess that up.  I wrote it down here, Your Honor, and

12   I'm looking at it and it's making my heart palpitate.  But

13   it's the general specific canon and -- which is that a

14   specific statute controls over a more general statute.

15         And, Your Honor, I think that what the Court said

16   in Mallinckrodt, what Judge Stark said, really, is

17   instructive as to why there, that canon really doesn't apply.

18   Because that canon generally applies, as articulated in

19   RadLAX, when you're trying to address a contradiction between

20   statutes or superfluidity as between two statutes.

21         And as the Debtors said in their reply, there's

22   another canon, the harmonious-reading canon, which is, of

23   course, whenever possible should read the provisions together

24   in harmony.

25         And here, as Judge Stark said in Mallinckrodt,

1   Sections 363(b) and 365(a) on one hand and 503(b) on the

2   other, are directed at different parties, operating at

3   different times, and serve different purposes.

4          And we -- that's absolutely correct:  363 and 365

5   concern actions by a Debtor; whereas, 503(b) concerns actions

6   by a creditor.  363 and 365 concern ongoing or prospective

7   relief; whereas, 503(b) is retrospective.

8          So, here, Your Honor, because 503(b) does not

9   apply, nor does the substantial contribution standard, it's

10  about was the entry, or is our request in the Debtors'

11  business judgment?  And as discussed earlier, we believe that

12  the uncontroverted evidence is that it has.

13         So, Your Honor, I'm reserving the right to respond

14  to any counter-arguments that are made by any party.  The

15  Debtors would respectfully request the Court enter the order,

16  as a sound exercise of the Debtors' business judgment and in

17  the best interests of their estates, pursuant to Sections 363

18  and 365 of the Bankruptcy Code.

19         Thank you, Your Honor.

20         THE COURT:  Thank you.

21         Before I hear from Mr. Schanne, I'd ask if there's

22  anybody who wishes to be heard in support of the motion?

23     (No verbal response)

24         THE COURT:  Mr. O'Neill?

25         MR. ANDREW O'NEILL:  Thank you, Your Honor.

1  Andrew O'Neill of White & Case, proposed counsel for the

2  Unsecured Creditors Committee.

3          Good morning, Your Honor, and thank you, again.

4  As Mr. Golden noted, the scheduling change was because of us.

5  We needed just a bit more time to look at things, to

6  consider, and react to the relief as far as today.

7          He did steal my thunder a little bit.  We are

8  going to support the motion, but just backing up a little

9  bit, as Your Honor knows from first day papers in these

10  cases, this is a complicated case and a complex business for

11  sure.  And we are, along with FTI as financial advisor, and

12  Jefferies as investment banker, and Potter Anderson as co-

13  counsel to the Committee's other proposed advisors, getting

14  up to speed as quickly as possible.

15          The firehose line has been used a lot.  Kind of an

16  unfortunate evocation, but we've certainly been working very

17  hard and trying to digest all the information.

18          And on that note, I would like to thank the

19  Debtors' advisors for making -- and the Debtors themselves --

20  for making a wealth of information available to us and

21  working very hard to get us up to speed, including over the

22  holiday weekend.  We still have a ways to go, but they've

23  been very constructive in that process.

24          We are very deep in working through the second

25  days, and depending on how that goes, we'll plan to provide a

1  more fulsome update from the Committee's view on these cases

2  and going forward at that hearing.

3          For today, this was obviously one of the first

4  things we needed to wrap our heads around because of the

5  immediacy of the hearing.  Without belaboring the points

6  already made by counsel, and we agree with those points, we

7  got comfortable with this reimbursement after negotiating a

8  few tweaks to the order, because we do think the Ad Hoc Group

9  can be a material and constructive part of this process.

10          We've already had several discussions with counsel

11  and with BRG and we will continue to engage on the direction

12  of these cases; not in a repetitive way or a way that

13  duplicates efforts, but in a way that advances the plan and

14  sale processes.

15          Mr. Golden did note that we negotiated a few

16  tweaks to the order.  We think they're important and we think

17  that with these tweaks, the order works and the terms of the

18  reimbursement work.

19          The first was not to duplicate the Committee's

20  work.  You know, we obviously have a large mandate on behalf

21  of all unsecured creditors.  The Ad Hoc Group represents the

22  bondholders.  So we're going to work to not duplicate those

23  efforts and we wanted some language in the order to that

24  effect.

25          Secondly, we want an invoice with time entries,

1   not just the one-pager, as you'll sometimes see with the

2   dollar amount.  So the Ad Hoc Group did agree to that,

3   subject to redactions for privilege.  But we think that's a

4   material improvement.

5           And then, finally, from a timing perspective,

6   instead of the 5 business days that was proposed, we now

7   have 10 days to object to any invoice and 10 days to object

8   to any amendment for modification of the agreement.

9           So with those changes, and with all the reasons

10  set forth by Debtors' counsel and what I just said on the

11  record, we support the motion.

12          That's all I have, Your Honor.  So, unless you

13  have any questions, we'd like to see the motion approved.

14          THE COURT:  Thank you, Mr. O'Neill.

15          I don't have any questions.

16          MR. ANDREW O'NEILL:  Thank you.

17          THE COURT:  Mr. Merola, good morning.

18          MR. MEROLA:  Your Honor, Frank Merola of Paul

19  Hastings, on behalf of the Ad Hoc Group.

20          Your Honor, on behalf of the Ad Hoc Group, we

21  negotiated this reimbursement agreement initially with the

22  Debtor prepetition.  We created additional limitations and

23  guardrails for the benefit of the DIP lenders post-petition.

24  And then, finally, we accommodated the Committee's concerns

25  in granting additional time and making modifications to the

1  order.

2       The undisputed evidence in the Gund declaration

3  indicates this is in the best business judgment of the

4  Debtors and, moreover, all of the economic parties in

5  interest in this case concur and support the motion.

6       We would request the entry of the order and we'll

7  stand by to respond to any comments by the UST.

8       THE COURT:  Thank you, Mr. Merola.

9       Is there anybody else who'd like to be heard in

10 support of the motion?

11    (No verbal response)

12      THE COURT:  Okay.  I hear no response.

13      Mr. Schanne, I'd like to hear from you, please.

14      MR. SCHANNE:  Thank you, Your Honor.

15      For the record, and may I please the Court?  John

16 Schanne, on behalf of the UST.

17      Your Honor, the Bankruptcy Code provides two ways

18 for a professional to be paid from the estate.  First,

19 professionals employed under Sections 327 and 1103 are paid

20 under Section 503(b)(2), which grants administrative priority

21 to fees and expenses awarded under Section 330.  Second,

22 other professionals that are paid, if at all, under

23 Section 503(b)(4), which permits the award of reasonable

24 compensation to attorneys or accountants of entities who make

25 a substantial contribution to the bankruptcy case in the

1 specified ways.  Both provisions contain important

2 limitations on the fees and expenses a professional may

3 receive.

4          The first way, under Section 503(b)(2), is

5 inapplicable here because these professionals do not work for

6 the Debtors or an official committee, so that leaves the

7 second way, 503(b)(4), which allows for the payment of

8 professionals and creditors who perform certain services,

9 only one of which is potentially applicable here, the sole

10 and specific authority to the estates to pay the legal fees

11 and expenses of the Ad Hoc Noteholder Group,

12 Section 503(b)(4) and 503(b)(3)(D), which require the making

13 of a substantial contribution.

14          It's impossible to know at this time whether that

15 will, in fact, occur, so the motion is premature and should

16 be denied at this point.  Although the motion relies on

17 Sections 105(a), 363, 365 as authority to pay the fees, the

18 general provisions of the Bankruptcy Code cannot be used to

19 evade the specific provisions of 503(b).

20          Moreover, and you heard it in the presentation,

21 invoking 105(a), 363, and 365 as authority, lowers the burden

22 under that which is specifically set forth in the Code, which

23 is the specifically crafted substantial contribution

24 standard.  And that ruling would undermine Section 503,

25 because it creates two entirely different standards for the

1  payment of administrative expenses and it depends on whether

2  the Debtors align with the applicant or not.

3          If the Debtor does not support the request, the

4  request is governed by Section 503; however, if the Debtor

5  does support the request, 503 somehow becomes a nullity.  An

6  administrative claim gets approved under the relaxed business

7  judgment standard, rather than the standard required under

8  the Code.

9          Such disparate standard of review is not in

10  accordance with the statutory framework.  This is especially

11  problematic for professional fees, right.  The Debtors cannot

12  use 105, 363, and 365 to evade 503(b)(2), which incorporates

13  the protections of 330, 327, or 2014, as the payments of the

14  Debtors' own professionals, there's no authority to

15  nullify 503(b) when paying the professionals of other

16  parties.

17          And, finally, the Ad Hoc Noteholder Group consists

18  of creditors holding unsecured claims.  There are unsecured

19  creditors that are not noteholders.  There are noteholders

20  that are not part of that Ad Hoc Group.

21          So although the motion contemplates payments to

22  the professionals of the group, the payment would relieve the

23  members themselves of the obligation to pay their

24  professionals.  This is properly considered a distribution to

25  the members of the Ad Hoc Group and that raises the question

1  of whether payment of the fees would violate

2  Section 1123(a)(4), which mandates that a plan provide the

3  same treatment to all members of a particular class.  Here,

4  the Ad Hoc Noteholder Group would be receiving a distribution

5  not made to other unsecured creditors and without satisfying

6  the necessary finding of a substantial contribution.

7         So, in sum, 503(b)(3) and (b)(4) control.  They do

8  not allow for the payment of these professional fees on an

9  emergency basis at this stage of these cases.

10        The Bankruptcy Code (indiscernible) a priority.

11 It's binding and it protects both, the creditors and the

12 Debtors, and should not be altered here.

13        So unless the Court has any questions, we thank

14 you for your time and careful consideration.

15        THE COURT:  Thank you, Mr. Schanne.

16        I don't have any questions.

17        Mr. Golden, would you like to be heard?

18        MR. GOLDEN:  Apologies, Your Honor.  My clicker

19 was not working.  Just very briefly, Your Honor.  I'll take

20 the statements made by Mr. Schanne just briefly in reverse.

21        I don't recall in the United States Trustee's

22 papers there being an argument regarding, you know, a

23 violation of the distribution standards.  I don't see any

24 such thing here.  We are not -- this is not a plan, so I

25 don't know how 1123 even comes into play.

1          But, in any event, going to really the first

2   point, this is not a lower standard.  It's a different

3   standard.  And I think that the Court in Mallinckrodt really

4   did kind of hit this point home, noting that it's sensible

5   that there are different standards for relief for something

6   that a Debtor is seeking to do because the Debtor is a

7   fiduciary for the estate, and what a creditor is seeking to

8   do.

9          And so, here, this standard, because the Debtor is

10  seeking to do something we believe in our business judgment,

11  this is in the best interests of the estate.  It is, as I

12  said, it is critical that we have the continued engagement of

13  the Noteholders, and so that's why we've moved it.

14          This is not a common thing.  You don't normally

15  see Debtors going out and saying, We'd love to, you know, do

16  this sort of thing.  It's when it's necessary to the process,

17  and we believe it's absolutely essential for the process

18  here, which is why we, as the Debtors, have moved for it.

19          So in that regard, Your Honor, the burden is on us

20  under Sections 363 and 365 to prove that it is our business

21  judgment.  And, again, it's not about lowering any standard;

22  it's simply what standard applies to the applicable Code

23  section.  And here, as discussed in the papers, the

24  applicable Code Sections are 363 and 365.

25          So unless Your Honor has any questions, that was

1  it for the Debtors and we appreciate your consideration and

2  ask that you would enter the proposed order.

3           THE COURT:  Okay.  Is there anybody else who would

4  like to be heard?

5           Mr. Merola?

6           MR. MEROLA:  Your Honor, the U.S. Trustee's

7  reading of the ability of the estate to pay fees on behalf of

8  a third party consensually is very limiting.  There are

9  literally -- the Chapter 11 case, especially a complicated

10 Chapter 11 case, is replete with situations where a Debtor,

11 in the interests of its business judgment, might pay fees to

12 a third party to facilitate the case.

13          We have fees for the DIP lender.  We have work

14 fees for a DIP lender.  We have work fees for a buyer of

15 assets over the stalking horse.  We have fees paid as part of

16 the litigation settlement under 9019.  None of those

17 invoke 327 and none of those invoke 503.

18          It's too limited of a reading and as the

19 Mallinckrodt Court explained, when the Debtor is consensually

20 making this payment -- requesting to make these

21 reimbursements in the exercise of its business judgment, 363

22 and 365 are the appropriate statutory standards.

23          THE COURT:  Thank you, Mr. Merola.

24          Would anybody else like to be heard?

25      (No verbal response)

1          THE COURT:  Okay.  I hear no response.  I'm ready
2    to rule.

3          I find that Sections 363 and 365 apply to the
4    motion and that if assuming an entry into the reimbursement
5    agreements are appropriate exercises of the Debtors' business
6    judgment, the motion should be granted.

7          And based on the evidence before me in the form of
8    Mr. Gund's declaration, I find that the Debtors have
9    articulated a sound business purpose justifying the relief
10   sought and that such relief is in the best interests of the
11   Debtors' estates.  Specifically, in his declaration, Mr. Gund
12   testified that if the Debtors were able to reach consensus
13   with major stakeholders on the terms of the plan, the cases
14   will likely be shorter in duration, the parties will
15   eliminate the costs of unnecessary litigation, and it will
16   facilitate the confirmation of a plan.  Reaching consensus
17   with the Ad Hoc Noteholder Group will avoid drawn-out
18   disputes -- will likely avoid drawn-out disputes between the
19   Debtors and a creditor body that is fragmented.  But it also
20   substantially diminishes the risks and costs attendant to the
21   Debtors resulting from remaining in bankruptcy, thereby,
22   maximizing value for all creditors.

23         Mr. Gund also testified that it would be far more
24   difficult to negotiate Noteholder issues if they were not
25   acting as an organized group.  I'd note that here, the Ad Hoc

1  Noteholder Group does represent about $690 million worth of

2  notes and 65 percent of that group.

3           Also, the continued engagement of the Noteholder

4  Group advised by competent counsel and accomplished

5  professionals, in what has been a constructive process thus

6  far, is essential towards maximizing enterprise value and

7  recovery to creditors in a successful reorganization.

8           Mr. Gund further testified that if the relief

9  requested in the motion is denied and the Debtors are unable

10 to pay the professional fees of the Ad Hoc Noteholder Group,

11 the viability of that group may be jeopardized and the

12 coordinated efforts of the group might be lost.

13          This is more than an adequate record upon which to

14 find that the Debtors are appropriately exercising their

15 business judgment by entering into these agreements.

16          The objection raised by the United States Trustee

17 addresses issues raised only last year on appeal in the

18 Mallinckrodt case before then-District Court Judge Stark.

19 I've reviewed the Mallinckrodt decision very carefully and

20 agree with Judge Stark's reasoning.  And for the reasons that

21 I agree with Judge Stark's reasoning, I also agree with the

22 reasoning of the Courts in Purdue Pharmaceuticals and

23 Bethlehem Steel that approved similar relief.

24          The relief sought in the motion is governed

25 by 363(b) and 365(a) and the prepetition agreement is an

1   executory contract that the Debtors may assume under 365(a).

2   And, in addition, 363(b)(1) permits the Debtors to enter into

3   the post-petition reimbursement agreements.

4          The United States Trustee's arguments are

5   certainly well presented and well taken, but I do disagree

6   that the governing Code Sections are 503(b)(3)(D)

7   and 503(b)(4) for the reasons that were described by the

8   Mallinckrodt Court.

9          While the United States Trustee posits that the

10  correct test is a substantial contribution test, I agree --

11  or I disagree.  Substantial contribution is a creditor remedy

12  and it looks back in time to the contribution made by the

13  creditor to the case.

14         The Movant here is the Debtors who are seeking to

15  assume agreements and enter into an agreement outside the

16  ordinary course to pay the Noteholders' Group professional

17  fees.  The relief the Debtors are seeking is prospective and

18  Sections 363 and 365 provide a basis for that relief.

19         The United States Trustee argues that Mallinckrodt

20  is distinguishable because there were multiple ad hoc groups

21  in that case, however, I don't read Mallinckrodt to apply

22  only when there are multiple groups.  There is nothing in the

23  text or the logic of the Mallinckrodt opinion that is so

24  limiting.

25         Instead, the Court found that the business

1  judgment standard applied to the Debtors' request to pay the

2  fees of an Ad Hoc Group, even if the relief sought is

3  prospective, as is the case here.

4          I defer to the Debtors' business judgment that

5  paying the fees of the Ad Hoc Group is necessary to maintain

6  their participation and engagement of the Ad Hoc Noteholder

7  Group, particularly, because the case is working on very

8  tight timelines.  Without the organized involvement of the Ad

9  Hoc Group, it seems that it would be difficult to ask for the

10 Debtors to organize -- sorry -- to negotiate a plan within

11 such tight timelines.

12         I also find it notable that the Committee has

13 negotiated certain revisions to the Debtors' proposed form of

14 order that are aimed at preventing duplicative work and

15 facilitating scrutiny of the time billed by the Ad Hoc

16 Group's professionals and, therefore, I am overruling the

17 United States Trustee's objection and granting the motion.

18         MR. GOLDEN:  Thank you, Your Honor.

19         Your Honor, Mr. O'Neill and I will, unless you had

20 any other comments or questions or changes to the order, we

21 can upload the amended form of order that was attached to

22 the -- to our reply.

23         THE COURT:  Yeah, I've reviewed the revised form

24 of order.  I understand the changes, as I just described in

25 my ruling, and am prepared to enter the order once it's

1   uploaded.

2            MR. GOLDEN:  Thank you, Your Honor.

3            And, again, thank you and your staff today for

4   accommodating all of us.  We look forward to seeing you again

5   next week for our second day hearing.

6            THE COURT:  I'll look forward to seeing you then,

7   as well.

8            Mr. O'Neill, anything else?

9            MR. JAMES O'NEILL:  No, Your Honor.  Just that --

10  well, there's two Mr. O'Neills here.

11           THE COURT:  There's two Mr. O'Neills, yes.

12           MR. JAMES O'NEILL:  So, for this Mr. O'Neill, I

13  would just say thank you and as my other friend Mr. O'Neill

14  previewed for the Court, we've been working through a number

15  of the second day matters with the Committee and also with

16  the U.S. Trustee, and those comments and negotiations have

17  been very productive towards our second day matters.  So we

18  appreciate the Committee's input and the U.S. Trustee's input

19  to try to get through as many issues that we can with respect

20  to the second day hearing, which is one week from today.  So,

21  we will continue in that effort to try to streamline those

22  proceedings as much as possible.

23           THE COURT:  Great.

24           Is there anybody else that would like to be heard

25  before we adjourn?

1        (No verbal response)

2            THE COURT:  I saw the other Mr. O'Neill pop on his

3   screen, but it might have been because I said his name.

4            MR. ANDREW O'NEILL:  Yeah, no, I was just going to

5   say -- to thank Your Honor and the Court --

6            THE COURT:  Oh, okay.

7            MR. ANDREW O'NEILL:  -- so more "sand to the

8   beach," yep.

9            THE COURT:  It's our pleasure.

10           Okay.  Well, I wish you all a good afternoon.

11           And we are adjourned.

12           COUNSEL:  Thank you, Your Honor.

13           THE COURT:  Thank you.

14       (Proceedings concluded at 11:31 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                         CERTIFICATION

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ William J. Garling                  September 7, 2023

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25