## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

### ROSS RHEINGANS-YOO'S RESPONSE TO
### DEBTORS' OBJECTION TO CLAIM NO. 5166

Ross Rheingans-Yoo ("Rheingans-Yoo"), by and through his co-counsel Goetz Fitzpatrick LLP and Joyce, LLC, hereby responds to the Debtors' objection (Docket No. 3409, "Objection") to Proof of Claim number 5166 ("Claim") filed by Rheingans-Yoo. This response is supported by the concurrently filed Declaration of Ross Rheingans-Yoo ("Rheingans-Yoo Decl."). In response to the Objection, Rheingans-Yoo respectfully states as follows:

### PRELIMINARY STATEMENT[1]

1.      The Debtors' Objection is replete with red herrings and misleading half-truths. The Debtors relish the opportunity to recite allegations from their Adversary Proceeding Complaint against Rheingans-Yoo. Those allegations are a transparent attempt to poison the well, forcing a denial of charges that are irrelevant to the Claim.

2.      The Debtors alleged in their Adversary Proceeding that Latona's investments in life sciences companies were funded by frauds perpetrated on the Debtors by Bankman-Fried. The Debtors then allege that Rheingans-Yoo aided and abetted Bankman-Fried's fraud. That is false.

3.      Rheingans-Yoo was not part of Bankman-Fried's inner circle who knew about and facilitated the misappropriation of FTX customer funds. During Bankman-Fried's criminal trial,

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Objection.

none of the testimony implicated Rheingans-Yoo. Instead, Rheingans-Yoo was a faithful employee who found himself in a mess he did not create.

4.      The Debtors also allege that Latona is a "sham." Objection, ¶ 9. To the contrary, Latona was duly organized as a non-profit company pursuant to Bahamas law and capitalized pursuant to executed intercompany loan agreements between Latona and Alameda. *See* Rheingans-Yoo Decl. at Exs. "A" through "D." These facts are absent from the Debtors' Objection.

5.      The evidence in the Adversary Proceeding will show that Rheingans-Yoo performed his duties as a Latona director with the utmost good faith and without any knowledge of Bankman-Fried's fraud. The Debtors know this, but they are pressing the issue because they also know that Bankman-Fried is unpopular. Bankman-Fried was convicted of fraud and has earned disdain, but there are other ways to object to an employment claim than by recklessly alleging that Rheingans-Yoo aided and abetted Bankman-Fried's breach of fiduciary duties.

6.      The Court should not be swayed by the Debtors' unsubstantiated and reckless disregard for the truth by alleging wrongdoing by Rheingans-Yoo.

7.      The Debtors raise these issues in their Objection solely to prejudice the Court against Rheingans-Yoo. If Rheingans-Yoo is found liable for knowingly aiding and abetting fraud, then his Claim can be disallowed under section 502(d) of the Bankruptcy Code. The Debtors asserted that cause of action in the Adversary Proceeding. Yet the allegations and defenses in the Adversary Proceeding have nothing to do with the underlying validity of the Claim.

8.      Except maybe one thing: The Debtors allege in the Adversary Proceeding that Latona's investments really belong to the Debtors because Latona was funded by a transfer for which the Debtors did not receive fair value. *See* Objection at ¶ 5. Although Rheingans-Yoo disputes the Debtors' position, it is undisputed that Rheingans-Yoo was at all times leading Latona

as the director with the greatest attention to its day-to-day affairs. It is also undisputed that postpetition, Rheingans-Yoo continued monitoring Latona's investments.

9.      If the Debtor successfully argues in the Adversary Proceeding that Latona's investments belong to the Debtor, then the assets Rheingans-Yoo faithfully administered postpetition were assets of the estate. Therefore, if the Debtors are successful in the Adversary Proceeding, then all of Rheingans-Yoo's postpetition wages are entitled to administrative priority.

10.     The Debtors present their Adversary Proceeding allegations in their Objection because their grounds for objecting to Rheingans-Yoo's Claim are without merit.

11.     In any event, the Debtors ignore that the Employment Agreement is a contract enforceable according to its terms. The Employment Agreement requires termination to be upon 30 days' written notice. The Debtors claim that Rheingans-Yoo resigned, but that could not happen without written notice under the terms of the Employment Agreement.

12.     The Debtors also claim that Rheingans-Yoo breached the Employment Agreement by failing to perform. That claim is belied by the Debtors having never notified Rheingans-Yoo that he was in breach. The Debtors' executives hired Rheingans-Yoo under the Employment Agreement and gave him the job of leading Latona. Those same executives never considered Rheingans-Yoo to be in breach of the Employment Agreement; the Debtors cannot assert so now.

13.     Finally, the Debtors have not met their burden on this Objection. The Debtors purport to present evidence such as excerpts of Excel spreadsheets (*see*, *e.g.*, Wheeler Exs. 11, 14), but these documents lack foundation; Debtors' counsel is not competent to explain their provenance or meaning, and the Objection is devoid of any submission from someone with knowledge.

14.     The Debtors' *ipse dixit* assertion that their exhibits vitiate Rheingans-Yoo's Claim is insufficient to overcome the Claim's prima facie validity. The Debtors' failure to present admissible evidence showing that Rheingans-Yoo's Claim should be disallowed is fatal to the Objection, which should be overruled.

## BACKGROUND

### A.  The Debtors hired Rheingans-Yoo to lead Latona.

15.     The Debtors recite that Rheingans-Yoo and Alameda entered into the Employment Agreement as of April 11, 2022 and that the Employment Agreement provides that Rheingans-Yoo would be employed as a "Trader and Investment Associate." Objection, ¶¶ 6-7.

16.     The Debtors conceal from the Court that the Employment Agreement explicitly provides that Rheingans-Yoo could be directed to "work for an affiliate of the Company" and notwithstanding such assignment to an affiliate, Rheingans-Yoo would "at all times remain an employee of the Company." Employment Agreement § 2(c). Moreover, the Employment Agreement provides that Alameda could require Rheingans-Yoo to "undertake additional duties of another position, either in addition to or instead of [his] normal duties." *Id.*, § 2(d).

17.     The Employment Agreement's provisions are consistent with a Google Document dated on or about March 24, 2022 ("Ross Terms") that Bankman-Fried shared and negotiated with Rheingans-Yoo before the Employment Agreement was circulated and signed. *See* Rheingans-Yoo Declaration, Exhibit "E."

18.     Ross Terms provides that Rheingans-Yoo would technically be employed by Alameda as a trader and investment associate, but the Debtors and Rheingans-Yoo understood that Rheingans-Yoo would spend his time running Latona. That is, even though Rheingans-Yoo's work hours would nominally be spent working for Alameda, actually the parties "anticipate[d] that

this time may be seconded to FTXF" – meaning FTX Foundation – which would "involve leading Latona Bio." Ross Terms at §§ 1(a), (b).

19.     Ross Terms, when read in conjunction with the Employment Agreement, makes clear that the Debtors and Rheingans-Yoo always intended for Rheingans-Yoo to be continuously employed by Alameda while spending his time on secondment to work on projects for Latona.

20.     The Debtors and their counsel were in possession of Ross Terms long before the Debtors filed their Objection. The Debtors conceal and feign ignorance of Ross Terms while arguing that Rheingans-Yoo did not perform as a trader and investment associate under the Employment Agreement. This is sharp practice that should not be tolerated.

**B.  The Debtors did not properly pay Rheingans-Yoo's 2022 bonus.**

21.     The Debtors are also playing fast and loose with the facts about Rheingans-Yoo's 2022 bonus.

22.     It is true that Bankman-Fried advised Rheingans-Yoo in a bonus memo that Rheingans-Yoo could choose to receive $650,000 in cash, options, or a combination of the two. However, the Debtors then assert that "Rheingans-Yoo *elected* … to receive his 2022 bonus half in cash and half in FTX Trading options and West Realm Shires Inc. options." Objection at ¶ 11 (emphasis added).

23.     The Debtors' assertion is not based upon direct evidence that Rheingans-Yoo elected to receive options. This is because Rheingans-Yoo never elected to receive options.

24.     The Debtors' prepetition internal records may show that Rheingans-Yoo was granted options in FTX and West Real Shires Inc. However, Wheeler Decl. Exs. 11-13 are not evidence of an *election* made by Rheingans-Yoo, but instead evidence of the Debtors' improper assumption and resulting error.

25.     Absent from the Objection is any evidence that Rheingans-Yoo affirmatively elected to receive options, or that the Debtors communicated the option grant to Rheingans-Yoo once it was made. This omission is glaring in light of the Debtors' use of an e-discovery vendor to identify over 5,000 of Rheingans-Yoo's emails, Slack threads and documents. *See* Wheeler Decl. at ¶ 17. If Rheingans-Yoo truly elected to receive options, the Debtors would have provided proof.

26.     Rheingans-Yoo never chose to receive options instead of cash, nor did the Debtors notify him of the option grant to give him an opportunity to object to it.

27.     As to the other $650,000 half of Rheingans-Yoo's bonus, the Debtors object to payment of that sum in "directed grants" premised on Bankman-Fried's bonus memo advising Rheingans-Yoo that he would receive $650,000 in FDUs "if you want." Objection, ¶ 10.

28.     However, Ross Terms explicitly provides that Rheingans-Yoo's bonus would be "distributed as a 50/50 split between cash and 'foundation direction units' (FDU)." Ross Terms, § 2(b). There was no "if you want" about it. Thus, Rheingans-Yoo was entitled to $650,000 in cash and $650,000 in FDUs; the FDU half of his bonus was not subject to an election.

29.     Rheingans-Yoo's entitlement to half of his bonus in FDUs was not conditioned upon Rheingans-Yoo telling the Debtors that was what he wanted. Nor does Rheingans-Yoo lack standing to assert a claim for the FDUs. They were part of his compensation from day one.

30.     Rheingans-Yoo indeed accepted the FDUs as part of his 2022 bonus. *See* Rheingans-Yoo Declaration at ¶ 19.

**C.  Rheingans-Yoo never resigned.**

31.     The Debtors' unsupported contention that Rheingans-Yoo resigned "shortly after" the November 11, 2022 petition date should be rejected. The Debtors present their own self-serving

records (*see* Objection at ¶ 13), but no evidence of Rheingans-Yoo's resignation in accordance with the Employment Agreement.

32.     Instead, the Debtors cite a December 1, 2022 email sent to "Ross@ftx.com." *See* Wheeler Decl. Ex. 15. The plain language of the December 1, 2022 email shows it was intended to "make sure that payroll and benefits can continue" – not as a notice of termination under the Employment Agreement. The Debtors note that Rheingans-Yoo "failed to respond to the email" and disingenuously claim, therefore, that he purportedly resigned. Objection at ¶ 14.

33.     Tellingly, the Debtors admit that Rheingans-Yoo continued to send emails in his capacity as a director of Latona. *Id.* at ¶ 15. Given that Rheingans-Yoo's work at Latona was contemplated by the Debtors when they hired him (*see* Employment Agreement § 2(c) and (d); *see generally* Ross Terms), the Debtors can hardly be heard to argue that Rheingans-Yoo was not performing his duties under the Employment Agreement postpetition.

34.     In fact, Rheingans-Yoo had numerous postpetition meetings with the leadership of companies in which Latona invested. During those meetings, Rheingans-Yoo discussed those companies' latest developments and opportunities for him to give advice and aid to their ongoing projects. Rheingans-Yoo traveled to a conference in June 2023 to help one company in Latona's portfolio seek additional funding and explore technology partnerships.

35.     But even taking the Debtors' defense that Rheingans-Yoo "resigned" at face value, the Debtors conspicuously overlook that Rheingans-Yoo and the Debtors were party to the written Employment Agreement, which the Debtors neither terminated prepetition nor rejected postpetition. At all times, if the Debtors believed that Rheingans-Yoo was not performing, the Debtors could have terminated Rheingans-Yoo under ¶ 8 of the Employment Agreement by providing 30 days' written notice or paying him 30 days' salary. The Debtors did neither.

36.     The Employment Agreement could only be terminated by Rheingans-Yoo upon not less than 30 days' written notice. Thus, even if Rheingans-Yoo failed to respond to the December 1, 2022 email, mere silence does not constitute written notice terminating the Employment Agreement.

37.     What is more, the Debtors advise the Court that they had their e-discovery vendor analyze Rheingans-Yoo's email traffic before and after November 11, 2022. *See* Wheeler Decl. at ¶ 17. The Debtors acknowledge that Rheingans-Yoo had three FTX email accounts. *Id.* at FN.3. What the Debtors fail to advise the Court is *which* of the three email accounts Rheingans-Yoo regularly used.

38.     That is, the December 1, 2022 email was sent to Ross@ftx.com – an account that Rheingans-Yoo was not regularly using at the time. Yes, Rheingans-Yoo accessed the Ross@ftx.com account on September 22, 2023, only as a result of Debtors' counsel first advancing the meritless claim that Rheingans-Yoo resigned as a result of his failure to respond to the December 1, 2022 email.

39.     But the Objection is notably silent (especially given the participation of the Debtors' e-discovery vendor) about when was the last time Rheingans-Yoo made use of that Ross@ftx.com account *prior to* September 22, 2023. *See* Rheingans-Yoo Decl. at ¶¶ 31-35. It stands to reason that if Rheingans-Yoo was not and had not been regularly sending emails from the Ross@ftx.com account before December 1, 2022, he can hardly be faulted for not responding to an email sent there.

**D.  Rheingans-Yoo's Claim**

40.     Rheingans-Yoo filed the Claim on June 29, 2023.

41.     The Claim is comprised of four components:

    a.  $5,763.33 in unpaid prepetition salary accrued between October 22, 2022 and the November 11, 2022 Petition Date;

    b.  $275,000 in unpaid prepetition cash bonus;

    c.  $650,000 in unpaid FDUs; and

    d.  at least $62,847.75 of post-petition salary,

42.    Rheingans-Yoo has alleged sufficient facts in the Claim, in this Response, and in the Rheingans-Yoo Decl. to support the Claim. Rheingans-Yoo has met his initial burden of proof on each component of his Claim.

43.    The Debtors' evidentiary submission in the Objection lacks foundation. Debtors' counsel does not have knowledge about the documents submitted, and the Objection was not supported by a declaration establishing the provenance of the documents. Debtors' counsel is not qualified to explain what the documents say or what they mean. Therefore, the documents are inadmissible and insufficient to overcome the prima facie validity of the Claim.

44.    The Debtors' failure to lay a foundation for the purported evidence in the Objection is fatal to the Objection, which must be overruled.

## ARGUMENT

45.    The focus of the Objection is the Debtors' books and records, "supported" by broad and unsubstantiated assumptions based on those records. The Debtors' bald assertions are insufficient to overcome the prima facie validity of the Claim.

46.    In the alternative, the Objection merely creates questions about the particular facts and circumstances of the Debtors' defenses to Rheingans-Yoo's Claim – factual questions that preclude the Court from summarily dismissing Rheingans-Yoo's Claim in the manner requested by the Debtors.

**A. Rheingans-Yoo is entitled to the $275,000 cash balance of his prepetition bonus.**

47.     The Debtors object to Rheingans-Yoo's Claim for $275,000 in cash for his first-semester 2022 bonus with a mistaken argument premised on conclusory books and records. The Court should overrule this objection.

48.     The Debtors paid Rheingans-Yoo $375,000 cash out of his $650,000 first-half 2022 bonus on or around September 15, 2022. However, the Debtors did not pay the remaining $275,000 in cash.

49.     The Debtors argue that Rheingans-Yoo "elected to receive his 2022 bonus half in cash and half in options." Objection at ¶ 26. However, the Debtors failed to present any direct evidence of Rheingans-Yoo's purported election despite having an e-discovery vendor at their disposal who identified over 5,000 Rheingans-Yoo emails, Slack threads and documents. *See* Wheeler Decl. at ¶ 17.

50.     Instead, the Debtors cite their own self-serving records that FTX Trading and West Realm Shires Inc. issued Rheingans-Yoo options in October 2022. *See* Objection at ¶ 25.

51.     Rheingans-Yoo never elected to receive options as part of his first-half 2022 bonus. *See* Rheingans-Yoo Decl. at ¶ 23.

52.     It was the Debtors' practice to *require* most employees to accept their bonus as half-cash and half-options. The records presented by the Debtors reflect options grants that other employees were given *without a choice* as part of their bonus. *See* Rheingans-Yoo Decl. at ¶ 27.

53.     However, Rheingans-Yoo was treated differently. Ross Terms provides that Rheingans-Yoo's bonus "*can* be convertible" to equity. Ross Terms at § 2(c). Rheingans-Yoo thus had an election to make. Rheingans-Yoo did not elect to receive options. The Debtors granted him options in error.

54.     What is more, the Debtors never notified Rheingans-Yoo that they had issued him options, instead of cash, for part of his first-half 2022 bonus. He would have objected if they had done so. *See* Rheingans-Yoo Decl. at ¶ 24. Again, the Debtors and their e-discovery vendor (*see* Wheeler Decl. at ¶ 17) would have provided proof of such notice if it existed. It does not.

55.     Lacking notice, Rheingans-Yoo never had an opportunity to advise the Debtors that they wrongly granted him options when they should have paid him cash.

56.     The Debtors admitting their own erroneous assumptions and actions does not overcome the prima facie validity of Rheingans-Yoo's Claim.

57.     Nor does an "excerpt" from an Excel spreadsheet that lacks any foundation. *See* Wheeler Decl., Ex. 11. Debtors' counsel lacks knowledge of what the spreadsheet supposedly shows and why the spreadsheet is excerpted. The spreadsheet excerpt cannot be considered as admissible evidence in support of the Objection.

58.     The Debtors' objection to payment of $275,000 in cash for Rheingans-Yoo's first-half 2022 bonus should be overruled.

**B.  Rheingans-Yoo is entitled to $650,000 to donate to charity.**

59.     The Debtors object to Rheingans-Yoo's Claim for $650,000 to direct to a charitable organization on two grounds. First, that Rheingans-Yoo did not elect the charity to which the funds would be donated, and second, that Rheingans-Yoo lacks standing to make this claim because the funds would not have gone to Rheingans-Yoo but to the charity he selected. Neither ground has merit; the Court should overrule this objection.

60.     The Debtors' Objection evidences that Bankman-Fried told Rheingans-Yoo that Rheingans-Yoo was entitled to receive $650,000 in directed grants if he wanted them.

61.     Yet this entitlement was an explicit component of Ross Terms; the Debtors cannot now pretend that this part of Rheingans-Yoo's compensation was contingent on him telling the Debtors that he still wanted to receive it. Nor did Ross Terms (or Bankman-Fried's bonus memo) advise Rheingans-Yoo that he had a limited amount of time to select a charity before Rheingans-Yoo's entitlement to receive this portion of his compensation expired.

62.     Rheingans-Yoo's job leading Latona was to research charities to which donations would effectively produce positive results for society. He took that job seriously, analyzing potential recipients, speaking with their founders and executives, and conducting due diligence. The Debtors seem to argue that the FDUs self-destructed if not claimed in time. That argument contradicts Ross Terms and the bonus memo, and is not supported by a single citation of law.

63.     The Debtors' second objection is equally unpersuasive. The Debtors argue that Rheingans-Yoo lacks standing to assert a claim for the FDUs because the money would have been donated to charity. The Debtors miss the point.

64.     Rheingans-Yoo's compensation under Ross Terms included base salary, a cash bonus, and a *separate right* to direct to charity a payment in the same amount as his cash bonus. To be sure, to the extent that the Debtors are objecting to Rheingans-Yoo's personal receipt of this $650,000, Rheingans-Yoo is more than willing to stipulate that this portion of his Claim be sent straight to a charity of his choice.

65.     When the Debtors argue that Rheingans-Yoo "never had any entitlement to receive" the FDUs (Objection at ¶ 29), they are framing the issue in bad faith. It cannot be disputed that Rheingans-Yoo indeed is entitled to *the right to direct* $650,000 in charitable giving.

66.     Ross Terms also provides that the FDUs "could be granted to a Ross-controlled personal foundation." *See* Ross Terms at ¶ 2(b)(iii). Because Rheingans-Yoo could direct the

Debtors to pay $650,000 to his own charitable foundation, this likewise refutes the Debtors' argument that Rheingans-Yoo lacks standing to assert a claim for the FDUs.

67.     Rheingans-Yoo's right to direct payment of the FDUs was part of Rheingans-Yoo's prepetition compensation, and it did not disappear when the bankruptcy case was filed.

**C.  Rheingans-Yoo is entitled to a prepetition salary payment of $5,763.33.**

68.     The Debtors argue that Rheingans-Yoo cannot seek his unpaid prepetition salary from the Debtors because Rheingans-Yoo never performed work for Alameda Bahamas and Rheingans-Yoo's salary was never paid by that debtor entity. Again, the Debtors are arguing in bad faith.

69.     Both the Employment Agreement and Ross Terms contemplated that Rheingans-Yoo would technically be employed by Alameda Bahamas but he would do work for Latona and, notwithstanding such assignment, Rheingans-Yoo would "at all times remain an employee of" Alameda Bahamas. Employment Agreement § 2(c).

70.     Moreover, Ross Terms provides that even though Rheingans-Yoo would be technically employed by Alameda Bahamas and perform work for Latona, the Debtors would pay him "from whatever entity [was] operationally convenient." Ross Terms at § 3(d). This is why "Rheingans-Yoo's salary was paid by non-Debtor FDM." Objection at ¶ 30.

71.     Rheingans-Yoo and the Debtors are party to the binding Employment Agreement. The Debtors' unilateral decision to pay Rheingans-Yoo from another entity, an arrangement the Debtors may have found more "operationally convenient," cannot be held against Rheingans-Yoo. He performed under the Employment Agreement and is entitled to his prepetition wages.

**D.  Rheingans-Yoo is entitled to postpetition salary of at least $62,847.75.**

72.    The Debtors argue that Rheingans-Yoo is not entitled to post-petition salary because he was never employed by the Debtors, the Debtors' records show he resigned in November 2022, and he did not perform any work for the Debtors post-petition. All three arguments are unpersuasive.

73.    As demonstrated above, Rheingans-Yoo was unquestionably employed by the Debtors under the Employment Agreement and Ross Terms.

74.    The Debtors' "record" of Rheingans-Yoo's "resignation" is more inadmissible evidence of faulty record-keeping. Debtors' counsel lacks knowledge about the excerpted Excel spreadsheet presented as Wheeler Decl. Ex. 14. There is no foundation for this document so it cannot be considered in support of the Objection.

75.    Even if the spreadsheet were admissible as an HR listing of then-current FTX employeees, it would prove nothing. Under the Employment Agreement, both Rheingans-Yoo and the Debtors were required to provide 30 days' written notice in order to terminate, or the Debtors could terminate Rheingans-Yoo by paying him 30 days' salary in lieu of notice.

76.    The Debtors did not present any evidence that they or Rheingans-Yoo provided the other with written notice of termination. Nor have the Debtors presented any authority for their argument that someone can "constructively" resign (Objection at ¶ 35) where a written employment agreement governs the parties' relationship and the employee continues to work.

77.    Finally, the Debtors' reference to their e-discovery vendor's investigation of Rheingans-Yoo's email activity is unavailing. Indeed, the Debtors admit that Rheingans-Yoo continued to work in his role leading Latona after the Petition Date, sending numerous emails to the companies in which Latona had invested. *See* Wheeler Decl. at ¶ 17.

78.     The Debtors do not claim to have rejected the Employment Agreement, nor do they present any evidence that they or Rheingans-Yoo terminated it. Accordingly, the Debtors can at most assert that Rheingans-Yoo's employment was terminated as of the Debtors' October 30, 2023 filing of their Objection, and Rheingans-Yoo is entitled to postpetition compensation from the Petition Date through October 30, 2023, plus 30 days' salary in lieu of notice.

**E.  Only a portion of the Claim is entitled to priority status.**

79.     Rheingans-Yoo concedes that only two of the four components of his Claim are entitled to priority status, those being (i) $15,150 of his prepetition compensation (which includes a fraction of the first-semester 2022 bonus), and (ii) all postpetition compensation. Rheingans-Yoo agrees that $265,613.33 of prepetition cash compensation and $650,000 in FDUs were earned prepetition in excess of the 11 U.S.C. § 507(a)(4) cap and are therefore not priority claims.

80.     Rheingans-Yoo is entitled to priority status on $15,150 of his unpaid prepetition compensation and bonus under 11 U.S.C. § 507(a)(4).

81.     Rheingans-Yoo is also entitled to administrative priority for all postpetition wages. There is no evidence that the Employment Agreement was terminated. The Debtor concedes that Rheingans-Yoo continued to work for Latona and monitor its investments postpetition. *See* Wheeler Decl. at ¶ 17. The Debtors admitted in the Adversary Proceeding their position that Latona's investments should be considered the Debtors'.

82.     By the Debtors' own logic, Rheingans-Yoo was administering and preserving assets of the estate after the Petition Date. The Debtors cannot have it both ways. Either Latona's assets are assets of the estate, in which case Rheingans-Yoo's continued to work under the unrejected Employment Agreement to administer and preserve the Debtors' assets, and that work falls within the administrative expense allowance provision of the Bankruptcy Code because it

provided a benefit to the estate. Or, Latona was an independent entity, and the Debtors' Adversary Proceeding must be dismissed.

83.    Accordingly, there is at minimum a question of fact as to whether Rheingans-Yoo's postpetition wages are entitled to administrative priority. *See In re M Group, Inc.*, 268 B.R. 896, 902 (Bankr.D.Del.2001) ("whether the claim is entitled to administrative expense status must be subjected to the standard § 503(b) test. That is, the claim must represent an 'actual, necessary cost[] and expense[] of preserving the estate.' ").

84.    Even if Rheingans-Yoo is not entitled to administrative treatment of his entire postpetition wages claim, he is still entitled to administrative treatment of $8,219.18 ($100,000 base annual salary *divided by* 365 days *multiplied by* 30 days) for 30 days' salary in lieu of a termination notice under the Employment Agreement.

85.    Pay at termination in lieu of notice is entitled to administrative priority. *See In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 227 (3d Cir. 2002) ("we have distinguished between "(i) pay at termination in lieu of notice; and (ii) pay at termination based on length of employment," with the prior receiving administrative expense priority").

86.    Rheingans-Yoo is entitled to priority status for at least $8,219.18 in postpetition wages because the Debtors assert they have terminated Rheingans-Yoo under the Employment Agreement, but they did not pay him 30 days' salary in lieu of notice. *See* Employment Agreement at ¶ 8(b).

**F. Rheingans-Yoo is entitled to take appropriate discovery of the Debtors.**

87.    The courts in this District uniformly agree that the filing of an objection to a proof of claim (and not the filing of the claim itself) initiates a contested matter. *See McMillan v. TWA (In re TWA)*, 280 B.R. 806, 807 (D. Del. 2002) ("Merely filing a proof of claim is insufficient to

initiate a contested matter or an adversary proceeding."); *IRS v. CM Holdings, Inc. (In re CM Holdings, Inc.)*, 221 B.R. 715, 720 (D. Del. 1998) (" '[T]he filing of a proof of claim does not initiate either an adversary proceeding or a contested matter. Rather, when an Objection to a proof of claim is filed, the Objection initiates a contested matter.' ") (quoting *In re Fairchild*, 969 F.2d 866, 868 (10th Cir.1992)). Furthermore, Bankruptcy Rule 9014 clearly states that once a contested matter has commenced, parties to that dispute may take discovery pursuant to Bankruptcy Rule 7026 and, by extension, the applicable Federal Rules of Civil Procedure. *See* Bankruptcy Rule 9014(b).

88.    Needless to say, the Debtors' Objection itself raises questions of fact that will require the parties to present the Court with a more fulsome factual record than that which is currently available. For example:

      a.   Did Rheingans-Yoo elect to receive part of his first-half 2022 bonus in options?

      b.   If not, did the Debtors notify Rheingans-Yoo that part of his first-half 2022 bonus would be paid as options?

      c.   Was Rheingans-Yoo required to advise the Debtors that he "wanted" to receive $650,000 in FDUs after they were awarded as part of his first-half 2022 bonus?

      d.   If so, did Rheingans-Yoo advise the Debtors that he wanted to receive the FDUs?

      e.   Did the Debtors give Rheingans-Yoo written notice that they were terminating the Employment Agreement?

      f.   Did Rheingans-Yoo give the Debtors written notice that he was terminating the Employment Agreement?

g.  Did Rheingans-Yoo's postpetition work for Latona administer and preserve assets of the Debtors' estate?

89.     The incomplete record is attributable, in part, to the fact that the Debtors only recently filed their Objection. Thus, Rheingans-Yoo has not yet had an opportunity to take appropriate discovery of the Debtors. Nevertheless, the lack of discovery to date does not diminish the relevance of the answers to the foregoing questions.

90.     The Court should consolidate the Objection with the Adversary Proceeding. This Court routinely consolidates objections to claims with related adversary proceedings. *See, e.g., In re Cambridge Industries Holdings, Inc.*, Nos. 00-1919, 02-03293, 2003 WL 21697190 at *4 (Bankr.D.Del.2003) ("consolidation of the two disputes raises no problem, for Rule 9014 automatically applies many of the adversary rules to contested matters and authorizes the court to order application of the other adversary rules. Therefore, contested matters, such as objections to claims, are easily consolidated with adversary proceedings").

91.     Most importantly, even at the initial stages of this contested matter, Rheingans-Yoo still has alleged facts sufficient to support a colorable and prima facie claim.

## <u>RESERVATION OF RIGHTS</u>

92.     Rheingans-Yoo expressly reserves and preserves all of his procedural and substantive rights and remedies at law and equity with respect to the Claim and the right to prosecute and defend such Claim, as well as his right to seek further relief from this Court with respect to and in connection therewith.

**WHEREFORE**, for the foregoing reasons, together with those to be presented at the hearing on the Objection, Rheingans-Yoo respectfully requests that the Court (i) overrule the Objection in its entirely; or (ii) continue the hearing on the Objection to permit Rheingans-Yoo to take discovery of the Debtors and present any additional facts obtained from such discovery to the Court for its adjudication of this dispute; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, DE
        November 13, 2023

                                        */s/ Michael J. Joyce*
                                        Michael J. Joyce (No. 4563)
                                        **JOYCE, LLC**
                                        1225 King Street, Suite 800
                                        Wilmington, DE 19801
                                        Telephone: (302) 388-1944
                                        mjoyce@mjlawoffices.com

                                        -and-


                                        Scott D. Simon (*admitted pro hac vice)*
                                        **GOETZ FITZPATRICK LLP**
                                        One Penn Plaza
                                        Suite 3100
                                        New York, NY 10119
                                        Telephone: (212) 695-8100
                                        ssimon@goetzfitz.com

                                        *Counsel to Latona Biosciences Group and
                                        Ross Rheingans-Yoo*