## **EXHIBIT B**

**Redline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                Debtors. | ) Chapter 11<br>)<br>) Case No. 22-11068 (JTD)<br>)<br>) (Lead Case)<br>)<br>) (Jointly Administered)<br>) |

### ORDER AUTHORIZING DEBTOR EMERGENT FIDELITY TECHNOLOGIES LTD TO OBTAIN POSTPETITION FINANCING AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Emergent Fidelity Technologies Ltd. (the "**Emergent Debtor**") in Case No. 23-10149, for entry of an order (this "**Order**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") and rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "**Local Rules**") for the United States Bankruptcy Court for the District of Delaware (this "**Court**") seeking:

      1.      Authorizing and approving the Emergent Debtor obtaining up to GBP £250,000 (approximately USD $302,000 as of the filing of the Motion) in postpetition financing in

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the DIP Term Sheet, as applicable.  In the event of any discrepancy between the terms of this Order and the DIP Term Sheet, the terms of this Order shall control.

accordance with the terms set forth in the DIP Term Sheet attached hereto as **Exhibit 1** (the

"**DIP Facility**"), ~~which is supplemental to that certain Liquidation Funding Agreement, dated~~

~~February 2, 2023 (as it may be amended, modified, supplemented, extended, restated or~~

~~replaced),~~**as modified by this Order, and** entered into by the Emergent Debtor, under the

control of Angela Barkhouse and Toni Shukla as the Joint Liquidators of the **Emergent** Debtor

("**JLs**"), as borrower, and Fulcrum Distressed Partners Limited as lender (together with its

assigns and successors, the "**DIP Lenders**"), ~~and~~ which may be used to fund certain

administrative expenses of the Emergent Debtor incurred in connection with the JL Appeal and

thereby preserve the value of the Emergent Debtor's Assets;

2.      Approving and authorizing the Emergent Debtor to (a) enter into, execute and

perform under (i) any amendment or modification of the DIP Term Sheet that is consistent with

this Order, and (ii) any and all security agreements, deeds of trust, notes, control agreements,

Uniform Commercial Code financing statements, documents and instruments either or both

executed and/or delivered under the DIP Term Sheet and (b) take and perform all other acts and

steps as may be required or contemplated by or in connection with the DIP Term Sheet and this

Order;

3.      Granting to the DIP Lenders (i) a perfected first-priority lien and security interest

in the DIP Collateral **(defined below)** to secure obligations and liabilities of every kind or nature

under or in connection with the DIP Term Sheet (collectively, the "**DIP Obligations**"), to the

extent that such **DIP** Collateral is unencumbered or subject to invalid, unperfected,

unenforceable or avoidable liens, and (ii) a perfected second-priority lien and security interest in

the DIP Collateral to secure the DIP Obligations to the extent such **DIP** Collateral is subject to

any liens that are (x) valid, perfected, enforceable and non-avoidable on the Petition Date,

~~including any disputed liens asserted by BlockFi~~ ~~to the extent such liens are later found to~~ ~~be valid, perfected, enforceable and non-avoidable,~~ or (y) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code;

4.      Granting to the DIP Lenders an allowed superpriority administrative expense claim on account of the DIP Obligations to the extent applicable under section 364(c)(1) of the Bankruptcy Code;

5.      Authorizing the Emergent Debtor's use of the proceeds of the DIP Facility in accordance with the terms of the DIP Term Sheet and this Order;

6.      Approving the application of collections and proceeds of all of the DIP Collateral (as defined below) and the payment of DIP Obligations in the manner and on the terms set forth in this Order;

7.      Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rule 4001(a)(3); and

8.      Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Order;

Notice of the Motion and the relief requested therein having been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the District of Delaware; (f) the DIP Lenders; (g) the parties identified on the **Emergent** Debtor's list of 20 largest unsecured creditors; (h) all parties known to hold or assert liens against the **Emergent** Debtor's assets; and (i) to the extent not listed herein, those parties requesting notice in the

Emergent Chapter 11 Case pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), in accordance with ~~this Order,~~ the Bankruptcy Code, the Bankruptcy Rules and the Local Rules as applicable.  *See* **Certificate of Service, D.I. 3034.**

Based upon the record established at the hearing on the Motion, and the filings and pleadings in the Emergent Chapter 11 Case, with all objections, if any, to the entry of the Order having been withdrawn, resolved or overruled, and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

A.    Petition.  On February 3, 2023 ("**Petition Date**"), the Emergent Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The JLs continue to administer the **Emergent** Debtor's properties as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On May 10, 2023, this Court entered an order authorizing joint administration of the Emergent Chapter 11 Case (Case no. 23-10149) with the chapter 11 cases of FTX Trading Ltd. and its affiliated debtors ("**FTX Debtors**"), *In re FTX Trading, Ltd., et. al*, Case No. 22-11068 (JTD).[4]

B.    Jurisdiction and Venue.  The Court has jurisdiction of this Case, the Motion, this Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Any statements of the Court from the bench at the Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order to the extent non inconsistent herewith.

[4] D.I. 91, Case No. 23-10149; D.I. 1469, Case No. 22-11068.

The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

        C.      <u>Notice</u>.  The Hearing was held pursuant to Bankruptcy Rule 4001.  Under the circumstances, the Notice given by the Emergent Debtor of the Motion and the relief sought herein to the ~~Noticed~~**Notice** Parties in accordance with Bankruptcy Rule 4001(b) and (c) is proper, timely and sufficient and no other notice need be given.

        D.      <u>Findings Regarding the DIP Financing</u>.

        (1)      <u>Request for DIP Financing</u>.  The Emergent Debtor has requested from the DIP Lenders, and the DIP Lenders are willing to extend a loan, as more particularly described, and subject to the terms and conditions set forth, in this Order and the DIP Term Sheet.

        a)      <u>Need for DIP Financing</u>.  Without the DIP Facility as described in this Order, the Emergent Debtor does not have sufficient available sources of capital to fund the JL Appeal.  The Emergent Debtor's ability to pay its professionals in the ~~Antiguan~~**JL** Appeal is essential to the viability of the Emergent Chapter 11 Case.  The ability of the Emergent Debtor to obtain sufficient liquidity through the proposed DIP Facility on the terms set forth in the DIP Term Sheet ~~and~~**, as modified by** this Order**,** is vital to the preservation and maximization of the value of the Emergent Debtor.  Accordingly, the Emergent Debtor has an immediate need to obtain funds from the DIP Facility for the limited purpose and in the manner set forth herein in order to protect its interests in the JL Appeal and manage and preserve the assets of the Emergent Debtor's bankruptcy ~~estates~~**estate** (as defined under Bankruptcy Code section 541, the "**Estate**") in order to maximize the recoveries to creditors of the Estate.

        (2)      <u>No Credit Available on More Favorable Terms</u>.  Consistent with the averments in the Motion and the Barkhouse Declaration, the Emergent Debtor is unable to

procure financing in the form of unsecured credit allowable under Bankruptcy Code section 503(b)(1), as an administrative expense under Bankruptcy Code section 364(a) or (b), or in exchange for the grant of an administrative expense priority pursuant to Bankruptcy Code section 364(c)(1), without the grant of liens on all or substantially all of Emergent Debtor's assets pursuant to Bankruptcy Code sections 364(c) and (d) in the amount of the DIP Facility.  The Emergent Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Lenders pursuant to the DIP Term Sheet ~~and~~**, as modified by** this Order.

(3)     Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363(m).  Based on the record before this Court, it appears (and the Emergent Debtor has stipulated) that (a) the Emergent Debtor and the DIP Lenders have negotiated at arms' length and in good faith regarding the terms of the DIP Facility, all subject to the terms of this Order and (b) the terms of the DIP Facility are fair and reasonable, reflect the Emergent Debtor's exercise of prudent business judgment ~~consistent with its fiduciary duties~~, and constitutes reasonably equivalent value and fair consideration.  Any credit extended under the terms of this Order shall be deemed to have been extended in "good faith" (as that term is used in Bankruptcy Code sections 364(e) and 363(m)) by the DIP Lenders.

(4)     Good Cause.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Emergent Debtor and its Estate, as its implementation will, among other things, provide the Emergent Debtor with the necessary liquidity to (a) protect its interests in the JL Appeal, (b) preserve and maximize the value of the Emergent Debtor's ~~Estates~~**Estate**, and (c) avoid immediate and irreparable harm to the Emergent Debtor, its respective business and assets.

(5)    Immediate Entry.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Emergent Chapter 11 Case has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been resolved or withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:**

**I.    Authorization and Terms of Financing.**

A.    Motion Granted.  The Motion is ~~granted in accordance with Bankruptcy Rule 4001(c)(2) under the terms and conditions provided in this Order~~**GRANTED as set forth herein**.

B.    Authorization to Borrow.  The Emergent Debtor is hereby authorized and empowered to immediately borrow and obtain the DIP Facility, and the Emergent Debtor is hereby authorized and empowered to incur indebtedness and obligations owing to the DIP Lenders on the terms and subject to the conditions and restrictions set forth in the DIP Term Sheet ~~and~~**, as modified by** this Order, up to the amount of the DIP Facility of GBP £250,000.

C.    Financing Documents.

(1)    Authorization.  The Emergent Debtor is hereby authorized and empowered to (a) enter into, execute, deliver, perform, and comply with (i) ~~any amendment or modification of~~ the DIP Term Sheet ~~that is consistent with~~**, as modified by** this Order ~~and,~~ (ii) any security agreements, deeds of trust, notes, control agreements, Uniform Commercial Code financing statements, documents and instruments either or both executed and/or delivered under the DIP Term Sheet and **that are** consistent with **this Order, and** (iii) all of the terms, conditions, and

covenants of the DIP Term Sheet**, as modified by this Order,** and all security agreements, and (b) take and perform all other undertakings and acts required or contemplated by the DIP Term Sheet ~~within the scope of this Order~~**., as modified by this Order; provided, however, that all security agreements, deeds of trust, notes, control agreements, or other documents and instruments executed and/or delivered under or in connection with the DIP Term Sheet must be filed with the Court and served on the United States Trustee (the "U.S. Trustee"), any statutory committee that may be appointed for the Emergent Debtor's Estate (the "Committee"), and all parties requesting notice in the Emergent Chapter 11 Case pursuant to Bankruptcy Rule 2002, promptly after such documents are executed.**

(2)    <u>Approval of Financing Documents</u>.  Any amendment or modification of the DIP Term Sheet necessary to effectuate the DIP Facility (and all certificates, reports, statements and other agreements and documents) ~~is approved to the extent necessary to implement the terms~~ and provisions of this Order.**may be made without the need for notice or further approval of the Court if such amendments or modifications are not material or adverse to the Emergent Debtor, provided that copies of such amendments are given to the U.S. Trustee and the Committee, who shall have the right to object on grounds that the proposed modification is material or adverse to the Emergent Debtor and should be subject** to the notice **procedures with respect to modifications** set forth **in the following sentence.  Any** amendment or modification of **the DIP Term Sheet that is material or adverse to the Emergent Debtor may not be made absent approval by way of a Court order, upon the filing of a motion on notice.**

(3)    <u>Application of DIP Facility Proceeds</u>.  The advances under the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Term

Sheet, **as modified by this Order,** solely to fund administrative expenses of the Emergent Debtor incurred in connection with the JL Appeal and thereby preserve the value of the Emergent Debtor's Assets.  **The proceeds from the DIP Facility shall not be used to pay the DIP Lender Expenses (as defined below) or used for any purpose other than for payment of the Emergent Debtor's litigation expenses of the JL Appeal.**

(4)    Conditions Precedent.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Facility unless the conditions precedent to make such loan or extension of credit under the DIP Term Sheet, **as modified by this Order,** have been satisfied in full or waived in accordance with the DIP Term Sheet.

**D.**    Payments and Application of Payments.  **The Emergent Debtor is authorized to make all payments and transfers** of the **DIP Collateral, or proceeds therefrom, subject to the terms** of this Order**, to the DIP Lenders as provided, permitted, or required under the DIP Term Sheet, as modified by this Order, which payments, proceeds, and other amounts shall be applied to the DIP Obligations in accordance with the DIP Term Sheet, as modified by this Order.  Upon entry of this Order**, the DIP **Term Sheet and any amendments thereto consistent with this Order shall constitute legal, valid, binding, and non-avoidable obligations of the Emergent Debtor, enforceable** in accordance with the terms of this Order **and the DIP Term Sheet, against the Emergent Debtor, or in any case of the Emergent Debtor under chapter 7 of the** Bankruptcy Code **upon the conversion of the Emergent Chapter 11 Case or any other chapter of the Bankruptcy Code, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Case").**

**E.**    ~~D.~~ ~~Payments and Application of Payments.~~    ~~Upon the occurrence of the Maturity Date, the DIP Lenders may seek, on expedited notice as necessary, to modify and vacate the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to permit the exercise of rights and remedies__The__ Emergent Debtor **is authorized, without further Order of this Court, to (i) pay all principal, interest, fees, and indemnities** when due under the DIP Term Sheet, ~~applicable law, or__**as modified by**__~~ this Order, ~~as applicable, and to permit the DIP Lenders to direct the Emergent Debtor to pay all principal, interest, and fees when due, under the DIP Facility and__**and (ii)**__~~ pay or reimburse the DIP Lenders, in accordance with the DIP Term Sheet, **as modified by this Order,** for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees, consultant fees, and legal fees and expenses paid or incurred by the DIP Lenders in connection with the transactions under the DIP Facility and this Order (the "**DIP Lender Expenses**"), all of which shall be and are included as part of the principal amount of the DIP Obligations; provided that prior to the payment of DIP ~~Lenders' fees and expenses as contemplated in this Section, the DIP Lenders shall send a redacted summary invoice of such fees and expenses (subject in all respects to applicable privilege or work product doctrines) to__**Lender Expenses, copies of all invoices reflecting the DIP Lender Expenses shall be served by email on**__~~ the Emergent Debtor, the U.S. Trustee ~~and any committee appointed for the Debtor's Estate, and no objection has been raised within ten (10) days of receipt of the summary invoice, and to the extent there is an objection, the Court has resolved the objection.__**, and the Committee (collectively the "Fee Notice Parties"), who shall have ten (10) business days to review and to assert any objections thereto.  Such invoices shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if**__~~

such professionals bill at an hourly rate), the number of hours each professional billed, and, with respect to the invoices of law firms, the year of law school graduation for each attorney; provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional of the DIP Lenders.  If any information on such invoices are redacted based on the assertion of a privilege or the work product doctrine, the U.S. Trustee reserves the right to seek to obtain unredacted copies of such invoices.  Any expenses sought to be reimbursed shall be specified, and broken out by type of expense.  The provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If no objection to the payment of the DIP Lender Expenses is made in writing by the Fee Notice Parties within ten (10) business days after delivery of such invoices, then, without further order of, or application to, the Court or notice to any other party, such DIP Lender Expenses shall be promptly paid by the Emergent Debtor.  If an objection is made by any of the Fee Notice Parties within the ten business day objection period to the payment of the DIP Lender Expenses, then the disputed portion of such DIP Lender Expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Emergent Debtor.  None of the DIP Lender Expenses payable pursuant to this paragraph shall be subject to the United States Trustee Guidelines or shall require approval by the Court unless an objection is interposed that cannot be resolved by the parties.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

**F.**    ~~E.~~ Interest.  The rates of interest to be charged for the DIP Facility shall be the rates set forth in the DIP Term Sheet and shall be calculated in the manner and payable at the times set forth in the DIP Term Sheet.

**II.**    **Collateralization and Superpriority Administrative Claim Status**.

A.    Collateralization.

(1)    DIP Lien Grant.  To secure the prompt payment and performance of any and all DIP Obligations of the Emergent Debtor to the DIP Lenders ~~of whatever kind, nature, or description, absolute or contingent, now existing or hereafter arising~~**pursuant to the DIP Term Sheet, as modified by this Order**, the DIP Lenders~~,~~ shall have and are hereby granted, effective as of the date of the filing of the **DIP** Motion**, subject in all respect to the Carve-Out**, valid, binding, enforceable, continuing, non-avoidable and perfected first priority (subject only to any ~~prior liens~~Prior Permitted Liens **as defined and to the extent described below**), security interests and liens in and upon (such security interests and liens collectively, "**DIP Liens**") all property and rights and interests in property of the Emergent Debtor of any kind or nature whatsoever in existence as of the Petition Date or thereafter created or acquired, and wherever located, including without limitation, (a) all accounts and accounts receivable, inventory, chattel paper, securities (whether certificated or uncertificated), equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property, books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds and other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and inter-company claims or receivables (whether or not evidenced by notes) at any time owing to the Emergent Debtor, (b)

all real property, leaseholds, rents and profits and proceeds thereof, (c) if not otherwise described, all of the property or rights in property identified as **"DIP** Collateral**" in the DIP Term Sheet**, (d) all causes of action whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, ~~excluding~~**including** causes of action arising under Chapter 5 of the Bankruptcy Code (collectively "**Avoidance Actions**") and the proceeds of such Avoidance Actions; and (e) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing (all of the foregoing being sometimes collectively referred to in this Order as "**DIP Collateral**"). **The DIP Collateral shall not include any property (a) seized by and in the possession, custody and control of any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code), for so long as such property remains in the possession, custody and control of such governmental unit, or (b) that is determined** by a **Court of competent jurisdiction not to be property of the Estate.** Without limiting the foregoing, the DIP Collateral shall include all present and future property of the Emergent Debtor under ~~Section~~**section** 541(a) of the Bankruptcy Code (including, without limitation, all claims and causes of action of the Emergent Debtor against third parties, ~~excluding~~**including** the proceeds of Avoidance Actions) and all proceeds thereof.

(2)    The DIP Liens shall be:

a)    ~~Subject only to prior existing liens, pursuant~~**Pursuant** to Bankruptcy Code section 364(c)(2), continuing valid, perfected, enforceable, first priority, and fully perfected liens on and security interests in all of the Emergent Debtor's right, title, and interest in, to, and under all DIP Collateral that is not ~~otherwise encumbered by a validly~~

~~perfected~~**subject to any lien or** security interest ~~in or lien on the Petition Date (~~**(such property not subject** ~~to any prior~~ **lien or security interest,** "**Unencumbered Property**");

b)    ~~Subject only to any prior existing lien, including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable, pursuant~~**Pursuant** to Bankruptcy Code section 364(c)(3), a continuing valid, enforceable, second priority, and fully perfected lien on and security interest (other than as set forth in clause (c) below) in all of the Emergent Debtor's right, title, and interest in, to, and under all DIP Collateral which is subject to any valid, perfected**,** and ~~unavoidable~~**non-avoidable** lien or security interest ~~otherwise~~ existing as of the Petition Date~~,~~ ~~including any disputed liens asserted by BlockFi to the extent such liens are later found to be valid, perfected, enforceable and non-avoidable,~~ or validly perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) (collectively, "**Prior Permitted Liens**" and each a "**Prior Permitted Lien**"); and

c)    ~~Subject to any applicable Prior Permitted Liens,~~ ~~pursuant~~**Pursuant** to Bankruptcy Code section 364(d), valid, enforceable, and fully perfected first priority senior priming security interests in and senior priming liens upon all of the Emergent Debtor's right, title, and interest in, to, and under ~~all~~**the** DIP Collateral~~; and~~**, provided that such priming liens shall be subject to, and shall not prime, any Prior Permitted Liens; and, to the extent allowed under the Bankruptcy Code, subject to the terms of this Order, each of the secured parties whose liens are primed is entitled to adequate protection of its interests in its respective collateral on account of and in equal amount to the diminution in the value thereof as a result of the provisions of this Order granting priming liens (if any) on such collateral.**

d)      <u>Liens Senior to Certain Other Liens</u>.  Notwithstanding anything to the contrary contained in this Order, the DIP Liens shall not be subject or subordinate to any lien or security interest that is avoided or preserved for the benefit of the Emergent Debtor or its Estate under Bankruptcy Code section 551.

(3)      <u>DIP Lien Perfection</u>.  This Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens and security interests granted herein, effective as of the ~~Petition Date~~**date of entry of this Order**, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of the Emergent Debtor (a "**<u>Perfection Act</u>**"). Notwithstanding the foregoing, if the DIP Lenders shall, in their sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, the DIP Lenders are authorized to perform such act, and the Emergent Debtor is authorized to perform such act to the extent necessary or required by the DIP Lenders which act or acts shall be deemed to have been accomplished as of the ~~Petition Date~~ **date of** the entry of this Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Lenders may choose to file, record, or present a certified copy of this Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Order in accordance with applicable law.  Should the DIP Lenders so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt

shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the DIP liens and security interests granted herein by virtue of the entry of this Order.

**(4)      Nothing in this Order constitutes a finding or adjudication as to the existence of any Prior Permitted Lien.  All rights of any party that has asserted or may assert a Prior Permitted Lien, including, without limitation, BlockFi, Inc. and/or its affiliated debtors ("BlockFi"), and the FTX Debtors, are fully preserved.  Nothing in this Order shall be construed to shift any applicable burden of the Debtor or any creditor with respect to the establishment of or any objection to any Prior Permitted Lien or asserted Prior Permitted Lien.**

B.      **Superpriority** Administrative Expense.  ~~For~~

**(1)      Subject in all respect to the Carve-Out,** all DIP Obligations, whether now existing or hereafter arising, the DIP Lenders ~~is~~**are** granted an allowed **superpriority** administrative expense claim in the Emergent Debtor's Estate pursuant to Bankruptcy Code section 364(~~b) (the "~~**DIP** ~~Administrative Expense~~ **c)(1), having priority in right of payment over any and all prepetition obligations and priority claims, liabilities, and indebtedness of the Emergent Debtor, of every kind or nature, and all administrative expenses, adequate protection claims, and all other claims against the Emergent Debtor**, now existing or hereafter arising**, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, including** to the extent **allowed under the Bankruptcy Code, any claims of the kind specified in, or ordered pursuant to, Bankruptcy Code sections 105, , 328, 330, 331, 503(b), 506(c), 507 (a) (other than section 507(a)(1)), 507(b),   546(c), 552(b), or 1114 (the "DIP Superpriority Claim**").

**C.** **All liens and claims granted by this Order shall be subject to the following "Carve Out": all fees required to be paid to the Clerk of the Court, and all fees required to be paid to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate pursuant to 31 U.S.C. § 3717.**

**III.**   **Default; Maturity Date; Rights and Remedies; Relief from Stay**.

A.   <u>Events of Default</u>.  The occurrence of any Event of Default as defined in the DIP Term Sheet**, as modified by this Order,** shall constitute an "**Event of Default**" under this Order.

B.   <u>Rights and Remedies Upon Event of Default; Maturity Date</u>.

(1)   Upon the occurrence of and during the continuance of an Event of Default ~~that does not also trigger the occurrence of the Maturity Date~~, and without the necessity of seeking relief from the automatic stay or any further Order of the Court**, but subject to the terms of this Order,** (i) the DIP Lenders shall be entitled to charge the default rate of interest under the DIP Facility and (ii) ~~subject only to the notice requirement set forth below~~**provided that the DIP Lenders send a written notice delivered by email and overnight mail to the Emergent Debtor, the FTX Debtors, BlockFi, the Committee, the unsecured creditors' committees of the FTX Debtors and BlockFi, and the U.S. Trustee (collectively, the "Remedies Notice Parties") that an Event of Default has occurred, and specifying such Event of Default (the date on which such notice is delivered, the "Default Date"), then five (5) calendar days after the Default Date (the "Remedies Notice Period")**, the DIP Lenders shall be entitled to take any other act or exercise any other right or remedy as provided in this Order, the DIP Term Sheet, **as modified by this Order,** or applicable law, including, without limitation, setting off any DIP Obligations with DIP Collateral, or proceeds in the possession of

the DIP Lenders, and enforcing any and all rights and remedies with respect to the DIP Collateral., **and shall be completely relieved from the effect of any stay under section 362 of the** Bankruptcy Code **to exercise such rights and remedies; provided that during the Remedies Notice Period, the Remedies Notice Parties shall be entitled to seek an emergency hearing with the Court to contest whether an Event of Default has occurred or is continuing, or to obtain other appropriate relief, and the DIP Lenders consent to such emergency hearing.**

**(2)** **Additionally, upon** the occurrence **and during the continuance of an Event of Default and the exercise by the DIP Lenders of their respective rights and remedies under this Order, the DIP Term Sheet, as modified by this Order, or** applicable law, **the Emergent Debtor shall cooperate with the DIP Lenders in the exercise of such rights and remedies.**

**(3)** (2) The rights and remedies of the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lenders may have under the DIP Term Sheet**, as modified by this Order,** or otherwise and may be exercised in whole or in part in any order. ~~The fourteen-day stay provisions of Bankruptcy Rules 6004(h) and 4001(a)(3) are hereby waived.~~

**IV.** **Emergent Debtor's Releases**.

**A.** Upon the indefeasible payment in full of all DIP Obligations owed to the DIP Lenders by the Emergent Debtor and termination of the rights and obligations arising under this Order and the DIP Facility (which payment and termination shall be on terms and conditions acceptable to the DIP Lenders), the ~~DIP Lenders~~**Emergent Debtor, on behalf of itself, and successors and assigns and its Estate (collectively, the "Releasors")** shall be automatically

deemed **to** absolutely and forever ~~released and discharged from~~ **release** the DIP Lenders**, solely in such capacity, and each of their respective successors, participants, and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, and other representatives (all such parties being hereinafter referred to collectively as the "Releasees"), of** any and all obligations, liabilities, actions, duties, responsibilities, commitments, claims and causes of action arising or occurring in connection with or related to **any of the DIP Obligations**, the DIP **Term Sheet,** the DIP Facility**,** or **other financial accommodations under** this Order **(the "Released DIP Facility Claims")** (whether known or unknown, direct or indirect, matured or contingent, foreseen or unforeseen, due or not due, primary or secondary, liquidated or unliquidated). **To the extent that the DIP Term Sheet or any other document includes any release of claims against the DIP Lenders other than a release of the Released DIP Facility Claims, such provision is not being approved by this Order and shall have no force or effect.  For the avoidance of doubt, the release set forth herein shall solely be from the Emergent Debtor and shall not be from the FTX Debtors or their estates.**

V.    **Other Rights and Obligations**.

A.    ~~No Modification or Stay of this Order.~~ Based upon the record presented to the Court by the Emergent Debtor, notwithstanding (i) any ~~stay,~~**reversal or** modification~~, amendment, supplement, vacating, revocation, or reversal~~ **on appeal** of this Order or any term hereunder or (ii) the dismissal or conversion of the Emergent Chapter 11 Case, the DIP Lenders shall retain and be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Lenders pursuant to ~~Bankruptcy Code~~ section 364(e)~~, this Order, and the DIP Term Sheet~~ **of the Bankruptcy Code**.

B.    <u>Section 506(c) Waiver</u>.  No costs or expenses of administration which have been or may be incurred in the Emergent Chapter 11 Case at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lenders upon the DIP Collateral) shall be charged against the DIP Lenders, or any of the DIP Obligations or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the DIP Lenders, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to any carve-out).

C.    <u>552(b) Equities</u>.  The DIP Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to DIP Lenders with respect to proceeds, product, offspring, or profits of any of the DIP Collateral, as applicable.

D.    <u>Marshalling</u>.  In no event shall the DIP Lenders be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

E.    <u>Power to Waive Rights; Duties to Third Parties</u>.  The DIP Lenders shall have the right, in their respective sole discretion, to waive any of the terms, rights and remedies provided or acknowledged in this Order ("**<u>Funder Rights</u>**") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Funder Right(s).  Any waiver by the DIP Lenders of any Funder Rights shall apply solely to the Funder Right so waived and shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Funder Right shall neither constitute a waiver of such Funder

Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Emergent Debtor to the DIP Lenders.

F.      <u>Disposition of Collateral</u>.  The Emergent Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the consent of the DIP Lenders.

G.      <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Order are in addition to and without prejudice to the rights of the DIP Lenders to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Term Sheet, **as modified by this Order,** or any other applicable agreement or law, including, without limitation, rights to seek either or both adequate protection and additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for either or both allowance and payment of compensation to ~~a Retained Professional~~**any professional** or other parties seeking compensation or reimbursement from the Estate.

**H.      Claimants' Reservation of Rights.  The terms, conditions** and provisions of **this Order are in addition to and without prejudice to the rights of the FTX Debtors and BlockFi with respect to any claims or causes of action against the Emergent Debtor, including, without limitation, claims that any property held or claimed by the Emergent Debtor is not property of the Emergent Debtor's estate, or other claims and causes of action, including but not limited to all claims under Chapter 5 of the Bankruptcy Code. Notwithstanding anything to the contrary, nothing** in this **Order shall grant any DIP Liens**

**in or upon any property that is later determined not to be property of the Emergent Debtor.**

    **I.**    ~~H.~~Modification of the Automatic Stay.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order and the DIP Facility, including without limitation the application of collections, authorization to make payments, granting of liens, and perfection of liens.

    **J.**    ~~I.~~Binding Effect.

    (1)    The provisions of this Order, the DIP Term Sheet, **as modified by this Order,** the liens and claims, and any and all rights, remedies, privileges and benefits in favor of the DIP Lenders, provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation, any order which may be entered confirming any plan of reorganization, converting the Emergent Chapter 11 Case to any other chapter under the Bankruptcy Code, or dismissing the Emergent Chapter 11 Case.

    (2)    Any order dismissing the Emergent Chapter 11 Case under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the DIP Lenders' liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, ~~notwithstanding such dismissal~~**upon the reopening of the Emergent Chapter 11 Case**, for the purposes of enforcing the DIP

~~Administrative Expense~~**Superpriority** Claim and/or the DIP Liens in favor of the DIP Lenders in the DIP Collateral.

(3)    This Order shall remain in full force and effect, shall be binding upon the Emergent Debtor, its Estate, all parties in interest in the Emergent Chapter 11 Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Emergent Chapter 11 Case or any ~~subsequently converted bankruptcy case of the Emergent Debtor~~**Successor Case** and shall inure to the benefit of the DIP Lenders, the Emergent Debtor, and their respective successors and assigns, subject to the rights of any Chapter 11 or Chapter 7 trustee ~~(collectively, a "**Successor Case**")~~.

**K.**    ~~J.~~ Proofs of Claim.  Notwithstanding the entry of an order establishing a bar date in the Emergent Chapter 11 Case or the conversion of the Emergent Chapter 11 Case to a case under chapter 7 or the Bankruptcy Code, the DIP Lenders shall not be required to file proofs of claim in the Emergent Chapter 11 Case or any Successor Case with respect to any of the DIP Obligations, DIP Liens, DIP ~~Administrative Expense~~**Superpriority** Claim or any other claims or liens granted hereunder or created hereby.

**L.**    ~~K.~~ Waiver of Bankruptcy Rule ~~6003(b),~~ 6004(a) and 6004(h).  The ~~21-day provision of Bankruptcy Rule 6003(b), the~~ notice requirements of Bankruptcy Rule 6004(a), and the 14-day stay of 6004(h) are hereby waived.

**M.**    ~~L.~~ Order Controls.  Unless this Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Facility, or **those of any other document relating to the DIP Facility, and** (b) the terms and provisions of this Order, then in each case the terms and provisions of this Order shall govern.

23

**N.** ~~M.~~ <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

~~N. Objections Overruled.  All objections to the entry of this Order are, to the extent not resolved or withdrawn, hereby overruled.~~