# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors.[1] | (Jointly Administered) |

**Objection Deadline: December 1, 2023 at 4:00 p.m. (ET)**
**Hearing Date: To be determined**

## MOTION OF DR. MARCEL LÖTSCHER
## TO DISMISS BANKRUPTCY CASE OF FTX EUROPE AG

Dr. Marcel Lötscher ("**Lötscher**") moves (this "**Motion**") this Court, pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("**Bankruptcy Code**") and *Price v. Gurney*, 324 U.S. 100 (1945), for entry of an order dismissing the bankruptcy case of FTX Europe AG ("**FTX Europe**") (Case No. 22-11075-JTD) because its filing was not properly authorized, which prevents this Court from having subject matter jurisdiction over this chapter 11 proceeding.[2]

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in the above-captioned jointly-administered chapter 11 cases, a complete list of the debtors (collectively, "**Debtors**") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] This Motion is only directed to Case No. 22-11075 (JTD) and not to any other jointly administered case.

## SUMMARY OF ARGUMENT

1. On November 11, 2022 ("**Petition Date**"), FTX Europe filed its voluntary petition ("**Petition**") for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware ("**Court**"). [Case No. 22-11075-JTD, D.I. 1.]

2. The Petition was signed by: (a) John J. Ray III ("**Ray**"), as Chief Executive Officer of FTX Europe; and (b) Adam G. Landis of the law firm Landis Rath & Cobb LLP, as the attorney for FTX Europe. (*Id*.)

3. FTX Europe is a corporation formed and registered in Switzerland.

4. To determine whether Ray had the requisite authority to file the Petition the Court must look to the formation and governing documents for FTX Europe, and applicable Swiss law. *Price v. Gurney*, 324 U.S. 100 (1945); *see, also*, *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720 (Bankr. D. Mass. 1994) ("the authority to file a bankruptcy petition depends upon the corporate documents and state law") (collecting cases.)

5. Under FTX Europe's governing documents and applicable non-bankruptcy law (*i.e.*, Swiss law), Ray *did not* have the authority to file the Petition.

6. Accordingly, pursuant to *Price v. Gurney*, 324 U.S. 100 (1945) and section 1112(b) of the Bankruptcy Code, FTX Europe's chapter 11 proceeding must be dismissed.

## JURISDICTION

7. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 to determine whether the filing of the bankruptcy case was proper. *In re Council of Unit Owners of the 100 Harborview Drive Condo.*, 552 B.R. 84, 86 (Bankr. D. Md. 2016); *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 819 (Bankr. S.D. Ohio 2010); *In re Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 149 (Bankr. M.D. Fla. 1983). However, once it is determined

that the FTX Europe case was filed without proper authority, this Court loses jurisdiction and must dismiss the case. *Price v. Gurney*, 324 U.S. 100, 106 (1945); *see also*, *In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) ("a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of 'cause' under § 1112(b), because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case.")

8.      The statutory basis for the relief requested by this Motion is section 1112(b) of the Bankruptcy Code.

9.      Lötscher is a creditor and party-in-interest in FTX Europe's chapter 11 case.

### STATEMENT OF FACTS APPLICABLE TO REQUESTED RELIEF

**A.      *The Omnibus Corporate Authority***

10.      On the Petition Date, FTX Europe filed its Petition for relief under Chapter 11 of the Bankruptcy Code with this Court. [Case No. 22-11075-JTD, D.I. 1.] As set out above, the Petition was signed by Ray as CEO and Landis as counsel for the Debtors. (*Id.*)

11.      Ray purports to have had authority to file the Petition by virtue of an *Omnibus Corporate Authority*, dated November 10, 2022 ("**Omnibus Authority**"), a copy of which was filed with the Petition as required by Rule 1002-1(b)[3] of the Delaware Local Bankruptcy Rules ("**Local Rules**"). [Case No. 22-11075-JTD, D.I. 1, page 12 of 23.]

12.      The Omnibus Authority states in relevant part:

I, Samuel Benjamin Bankman-Fried, ***as controlling owner, director, officer, manager or other authorized person with respect to*** West Realm Shires Inc., Paper

---

[3]    Local Rule 1002-1(b) provides: "In a voluntary case filed for a non-individual debtor, there shall be filed on the petition date a resolution or other document authorizing the commencement of the bankruptcy case executed or otherwise approved by the person, entity, or governing body, as applicable, whose approval is required for the commencement of a bankruptcy case under applicable law." Del. Bankr. L.R. 1002-1(b).

Bird Inc., Hilltop Technology Services LLC, Cedar Grove Technologies Services, Ltd., FTX Trading Ltd., Alameda Research LLC And Clifton Bay Investments LLC (the "Top Companies"), *and all of their directly and indirectly owned subsidiaries* (together with the Top Companies, the "FTX Group"), hereby *authorize, instruct and consent to the following corporate actions* with respect to all members of the FTX Group:

(i)      *the appointment of John J. Ray III ("the CEO") as Chief Executive Officer with plenary authority to exercise all powers and authority capable of delegation to an officer under applicable law, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of the United States Code* and any restructuring and insolvency-related proceeding that may be appropriate or necessary, or may be commenced by third parties, with respect to all members of the FTX Group;

Omnibus Authority (emphasis added.)

13.     The Omnibus Authority was signed, electronically, only by Samuel Bankman-Fried ("**Bankman-Fried**").

14.     FTX Europe is a wholly owned subsidiary of FTX Trading, Ltd., one of the Top Companies called out in the Omnibus Authority. *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* ("**Ray Dec.**"), [Case No. 22-11068-JTD, D.I. 24, page 30 of 30].

15.     Pursuant to the Omnibus Authority, Ray accepted the position as Chief Executive Officer of the debtors in the early morning hours of November 11, 2022. (*Id.*, ¶ 1.) Ray understood that by the Omnibus Authority he "was delegated all corporate powers and authority under applicable law, including the power to appoint independent directors and commence these Chapter 11 Cases on an emergency basis." (*Id.*, ¶ 44.)

16.     The Omnibus Authority was drafted by attorney Andrew Dietderich of Sullivan & Cromwell. *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel*

*to the Debtors and Debtors-In-Possession Nunc Pro Tunc to The Petition Date,* ("**Dieterich Supp.**

**Dec.**"), ¶ 23 [Case No. 22-11068-JTD, D.I. 510.]

17.     Dietderich's declaration raises questions regarding who was directing Sullivan &

Cromwell's ("**Debtors' Counsel**") pre-bankruptcy services for FTX Europe. Ryne Miller, a

former Sullivan & Crowell partner, was the general counsel of FTX US. (Dieterich Supp. Dec. ¶

8.) Miller had no role with any of the foreign businesses such as FTX Europe. Can Sun was the

general counsel for the international businesses, including FTX Europe. (*Id.*) According to the

Debtors' Counsel it was at Can Sun's request on November 8, 2022, that Debtors' Counsel first

started preparing a bankruptcy filing for FTX Europe. (*Id.*, ¶¶, 10, 11.) Can Sun was not a director

of FTX Europe, and he was not acting at the behest of FTX Europe's board of directors. Moreover,

he resigned as general counsel the evening of November 8, 2022 (*id.*, ¶ 15)—three days before the

Petition Date—so he could not provide any further direction to Debtors' Counsel regarding FTX

Europe after his resignation.

18.     It appears that after Can Sun resigned, Debtors' Counsel started taking direction as

to international entities from (a) Miller, the general counsel for FTX US,  who had no affiliation

or role with any of the international entities such as FTX Europe, but nonetheless declared he was

"in charge," and (b) Tim Wilson, a third year attorney formerly associated with Debtors' Counsel,

who previously reported to Can Sun, and who was, according to Dietderich, then the "senior legal

officer of FTX International." (*Id.*, ¶ 15.) Yet, Wilson was employed by FTX Ventures, Ltd., which

is not even in the same organizational silo as FTX Europe, (Ray Dec., ¶ 9); he was not an officer

or director of FTX Europe and could not and was not acting at the behest of FTX Europe's board

of directors.

19.     FTX Europe had three directors as of the Petition Date: (a) Jürg Bavaud; (b) Martin Liebi; and (c) Robin Matzke. (FTX Europe's *Amended Statement of Financial Affairs*, filed August 31, 2023 [Case No. 22-11075-JTD, D.I. 10, Statement 28, page 59 of 60.][4]

20.     FTX Europe's pre-petition board of directors did not authorize the filing of the Petition, either at a meeting or by consent in lieu of a meeting. In fact, Debtors' Counsel did not attempt to hold a board meeting for any of the Top Companies (defined in the Omnibus Authority), or any of their subsidiaries such as FTX Europe. Nor is there any indication Debtors' Counsel reviewed applicable Swiss law or the controlling corporate documents of FTX Europe before filing the Petition. As Dietderich states, he recommended and prepared the Omnibus Authority because "there was not time to hold over 100 board meetings for companies whose records were both incomplete and unfamiliar to [Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23.)

21.     As described by Dietderich, the Omnibus Authority "appointed Mr. Ray CEO of all of the Debtors, transferred to him all of Mr. Bankman-Fried's corporate authority and authorized Mr. Ray to decide if and when the Debtors should commence chapter 11 proceedings." (Dietderich Supp. Dec., ¶ 23.)

22.     After his appointment as CEO, Ray—not Bankman-Fried or FTX Europe's board of directors—made the decision to file the Petition. (Dietderich Supp. Dec., ¶ 5.) Authorizing the chapter 11 filings of the Debtors, including FTX Europe, was, according to Ray, his first "official act" as CEO. (Ray Dec., ¶ 2.)

---

[4]     The Debtors state this information came from the available corporate documents and books and records. *See* Global Notes filed with the *Amended Statement of Financial Affairs*, ¶ 62 [Case No. 22-11075-JTD, D.I. 10]. In fact, Lötscher was also a director of FTX Europe as of the Petition Date, but because he believed the filing was improper promptly resigned. *See Declaration of Dr. Marcel Lötscher,* included in the appendix filed with this Motion as **Tab 3**. Thus, he never showed as a director on the commercial registry.

**B.**      ***FTX Europe's Governing Corporate Documents***

23.      FTX Europe is a corporation formed and registered in Switzerland. (Ray Dec., page 30 of 30]. *See also* FTX Europe's Articles of Association dated as of April 8, 2022 (the "**Articles**"), Art.1, a copy of which is included in the appendix filed with this Motion as **Tab 1**.

24.      FTX Europe's Articles, together with the Swiss Code of Obligations and the Swiss Civil Code discussed below, set forth the governing rules and regulations of the company. The Articles dated as of April 8, 2022, were in effect as of the Petition Date.

25.      Under the Articles, the powers of the company were to be exercised by its corporate bodies, which were the shareholders' meeting, the board of directors, and the company's auditors. (Articles, Art. 7.)

26.      The board of directors is responsible for deciding all matters not reserved to the shareholders' meeting by law or the articles of association. (*Id.*, Art. 19.)

27.      For the FTX Europe board of directors to exercise its powers the board must either (a) hold a meeting where a majority of the then-current directors are present (a "**Quorum**") and obtain approval by a majority vote of the Quorum (*id.*, Art. 23); or (b) execute a resolution in lieu of a meeting, in writing and signed by all directors. (*Id.*, Art. 25.)[5] If the meeting is held with a Quorum present but there is a tie vote, the person chairing the meeting has the casting vote. (*Id.*, Art. 23.)

---

[5]   *See also* CO, Art. 713 ("The resolutions of the board of directors are made by majority of votes cast. Resolutions may also be made by written consent to a proposed motion, provided no member requests that it be debated orally.")

28.     Because FTX Europe had three directors as of the Petition Date, the board could only act (a) at a meeting at which two of the three directors were in attendance to constitute a Quorum; or (b) by a written resolution signed by all three directors.

## ARGUMENT

For the reasons and authority set out more fully below, the Court here lacks "subject matter" jurisdiction over the chapter 11 proceeding of FTX Europe.

### A.     *Controlling Principles of Law*

29.     The "controlling legal principles are not complex. A party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, No. 10-11867 KG, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011). As stated by the U.S. Supreme Court:  if a court "finds that those who purport to act on behalf of the corporation have not been granted ***authority by local law*** to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945) (emphasis added).

30.     The Supreme Court noted this was a jurisdictional issue because "nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." *Id.*, 324 U.S. at 107; *see also, e.g.*, *In re Blue Whale Studios, LLC*, 644 B.R. 252, 259 (Bankr. N.D. Ga. 2022) ("it is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed"); *In re 3P Hightstown, LLC*, 631 B.R. 205, 209–10 (Bankr. D.N.J. 2021) (same); *In re ComScape Telecommunications, Inc.,* 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) (same; dismissing multiple Chapter 11 bankruptcy cases where director who filed petitions was without

authority to do so); *Matter of Phillips*, 966 F.2d 926, 934 (5th Cir. 1992) (collecting cases); *In re Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *3–5 (Bankr. D.N.M. Mar. 12, 2021) (collecting cases).

31.     "[T]he law is clear that the decision of whether or not a corporation should file bankruptcy is a business decision to be made only by the board of directors. A filing of a bankruptcy petition is a special act that requires special authorization by the board and is not a general duty of a corporate officer." *In re Moni-Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988); *see also*, *In re ComScape Telecommunications,* 423 B.R. at 831 (the board of directors has the authority to commence a bankruptcy case on behalf of a corporation.); *In re Runaway II, Inc.,* 159 B.R. 537, 538 (Bankr. W.D. Mo.1993) ("[H]istorically it has always been true, even before the Bankruptcy Reform Act of 1978, that a valid resolution of the Board of Directors of a corporation was a prerequisite to the filing of a voluntary petition in bankruptcy by a corporation."); *In re Giggles Rest., Inc.,* 103 B.R. 549, 553 (Bankr. D. N.J.1989) ("[I]t is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors.").

32.     The validity of the filing of the bankruptcy petition is "fully dependent" on whether the resolution authorizing that filing was made by a "duly elected, properly constituted board of directors." *Polish-Am. Citizen's Club Inc.*, No. BAP MS 22-033, 2023 WL 4259266, at *9 (B.A.P. 1st Cir. June 27, 2023) (bankruptcy filing that was not authorized by a duly elected board of directors was properly dismissed); s*ee also*, *ComScape Telecommunications,* 423 B.R. at 832 ("A bankruptcy filing is unauthorized if the board of directors purporting to authorize it was not lawfully constituted and acting lawfully in so doing.")

33.    A bankruptcy case filed without proper authorization **must be dismissed**. This includes a petition filed by an improper number of directors: if a board of directors has multiple members, a single director has no authority to file a bankruptcy petition on behalf of the corporation. *See In re Moni–Stat,* 84 B.R. at 757 ("Simply put, there must be a majority vote of a quorum of the board of directors to file a corporate bankruptcy . . . ."); *In re Runaway II,* 159 B.R. at 537 (dismissing bankruptcy case filed by one of two directors, as not having been approved by a majority as was required under applicable law).

34.    Likewise, "[a]n officer or an individual director cannot properly file a petition for the voluntary bankruptcy of a corporation unless authorized by the board of directors." *In re ComScape Telecommunications,* 423 B.R. at 832, citing 15A Fletcher Cyc. Corp. § 7631.39 (2009); *see also, In re Al–Wyn Food Distributors, Inc.,* 8 B.R. 42, 43 (Bankr. M.D. Fla.1980) (president of corporation had no authority to file chapter 11 petition; because the filing was not approved by a resolution of the board of directors, the president's action was a legal nullity).[6]

35.    In determining authority to file a bankruptcy petition the Court should look to both the local law and the entity's governing documents. *Matter of Quarter Moon Livestock Co., Inc.,* 116 B.R. 775, 778 (Bankr. D. Idaho 1990) (the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law); *In re FKF Madison Park Grp. Owner, supra* (looking to LLC operating agreement).

---

[6]    That officers may manage the affairs of a corporation does not mean they can decide to place the company in bankruptcy. "There is no question, although it is not expressly spelled out, that management of the affairs of a corporation was not meant to include a right to file a Petition for Relief under any of the operating Chapters of the Bankruptcy Code. The business of this corporation, according to the Charter is to engage in general sales, selling, at wholesale or retail, all varieties of commodities, meats, fruits, vegetables and other food items, nursery plants, garden plants and general merchandise and not the filing of a Petition for Relief under Chapter 11." *Matter of Brandon Farmer's Mkt., Inc.,* 34 B.R. 148, 150–51 (Bankr. M.D. Fla. 1983).

**B.**     ***Determination and Application of Local Law***

36.     Reliance on local law to determine authority to file a bankruptcy petition is an application of the internal affairs doctrine. "Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs." *In re USA Detergents, Inc.*, 418 B.R. 533, 540 (Bankr. D. Del. 2009), citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Here, the jurisdiction of FTX Europe's incorporation is Switzerland, and thus Swiss law applies to governance matters for FTX Europe. *See, e.g., Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 66 (D. Mass. 2021) (internal affairs doctrine mandated application of law of foreign entity's formation to matters of corporate governance, including matters particular to the "relationships among or between [the company] and its current officers, directors, and shareholders.")

37.     Accordingly, to evaluate whether Ray had the requisite authority to decide to file the Petition and, in fact, to actually file it, the Court must first determine the applicable Swiss law. Rule 44.1 of the Federal Rules of Civil Procedure ("**Federal Rule**"), made applicable in these chapter 11 cases through Rule 9017 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), sets out that when "determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. Proc. 44.1; Fed. R. Bankr. Proc. 9017. Moreover, under Federal Rule 44.1 (Bankruptcy Rule 9017), the Court's determination here must be treated as a ruling on a question of law. *Id.*

38.     Relevant information on foreign law may be provided by expert witnesses familiar with the applicable foreign law. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016) ("[T]he testimony of foreign legal experts, together with extracts of foreign legal materials, 'has

been and will likely continue to be the basic mode' of determining foreign law") (citation omitted); *Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Off. of Am. Corp.*, 20 F.3d 1224, 1239 (3d Cir. 1994). However, in determining foreign law, a court may consider any relevant material, whether or not submitted by a party; Federal Rule 44.1 (Bankruptcy Rule 9017) "provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) (internal citations omitted.)

39.     Because determination of foreign law under Federal Rule 44.1 (Bankruptcy Rule 9017) is a question of law, courts may consider relevant materials beyond the pleadings in ruling on a motion to dismiss when the claim depends on a determination of foreign law. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 948–49 (9th Cir. 2018); *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016); *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 1:18-CV-679-RP, 2019 WL 1925499, at *3 (W.D. Tex. Apr. 30, 2019).

40.     The Omnibus Authority made clear that it was subject to and only valid as allowed by applicable law. For instance, Ray was appointed CEO but only "with plenary authority to exercise all powers and authority *capable of delegation to an officer under applicable law*, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of the United States Code." Omnibus Authority (emphasis added.) Similarly, the power given to Ray to appoint directors to FTX Europe was only "*to the extent applicable law permits*." *Id.* (emphasis added.) Ray also understood that through the Omnibus Authority he was

only "delegated all corporate powers and authority *under applicable law*." (Ray Dec., ¶ 44) (emphasis added.) Here, the applicable law is unquestionably the law of Switzerland.[7]

41.     By its own terms, the Omnibus Authority purported to do the following: (a) appoint Ray CEO of all of the Debtors; (b) authorize Ray to decide if and when the Debtors should commence chapter 11 proceedings; (c) authorize Ray to appoint new directors for any of the Debtors; and (d) transfer to Ray all of Bankman-Fried's corporate authority. (Dietderich Supp. Dec., ¶ 23.) Each of these actions were improper under Swiss law, as well as FTX Europe's Articles, and are *void*.

**D.      Identification and Application of Swiss Law to the Facts**

42.     FTX Europe is organized under the Swiss Code of Obligations ("**CO**")[8]. To establish the law of Switzerland in support of this Motion, and in particular Swiss law under the CO, Lötscher concurrently submits the *Declaration of Patrik Odermatt* ("**Odermatt Dec.**"). A copy of the Odermatt Dec. with exhibits thereto is included in the appendix filed with this Motion as **Tab 2**.

43.     Mr. Odermatt is an attorney licensed to practice law in Switzerland. He graduated from the University of St. Gallen, Switzerland in 2005. The University of St. Gallen specializes in

---

[7]   By noting the efficacy of the Omnibus Authority was subject to applicable law, it appears that Debtors' Counsel contemplated there could be limitation and restrictions that made the Omnibus Authority wholly or partially ineffective. Yet, there appears to be a lack of: (a) research performed concerning the law of Switzerland to determine what those limitations could or may be, or (b) review of the FTX Europe organizational documents to discern if the Omnibus Authority and what it was attempting to accomplish were foundationally sound and proper. As stated in connection with the Omnibus Authority, there simply "was not time" and the company records "were both incomplete and unfamiliar to [Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23.) Failure to determine if requisite authority is obtained is problematic at best.

[8]   An English translation of the Swiss Code of Obligations in effect as of January 1, 2021 can be found here:
Chrome-
extension://efaidnbmnnnibpcajpcglclefindmkaj/https://fedlex.data.admin.ch/filestore/fedlex.data.admin.ch/eli/cc
/27/317_321_377/20210101/en/pdf-a/fedlex-data-admin-ch-eli-cc-27-317_321_377-20210101-en-pdf-a.pdf

business administration, economics, law, international affairs, and computer science. He then worked in Berlin for Professor von Pufendorf, at the Cantonal Court of Zug and as a trainee lawyer at Bär & Karrer in Zug and Zurich. In 2008, he was admitted to the Zug bar and authorized to practice as a lawyer in the canton of Zug. After passing the bar, Odermatt worked as a lawyer and notary at Bär & Karrer in Zug and in 2011 established Kaiser Odermatt & Partner AG, and has been practicing law as a lawyer and notary ever since.

44.     As a lawyer, Odermatt specializes in securing and enforcing creditors' interests. He advises and represents companies, entrepreneurs and authorities in Switzerland and abroad in contract, commercial and procedural law. He is regularly consulted as an expert on debt enforcement and bankruptcy issues and has published in specialist journals. Odermatt also teaches prospective lawyers at various universities and institutions, and lectures on civil procedure, debt enforcement and bankruptcy law.

45.     As explained in the Odermatt Dec., Swiss law applicable to the issues raised in this Motion include the CO, the Federal Act on Private International Law ("**PILA**"), and the Swiss Civil Code ("**SCC**", and with the CO and PILA, the "**Codes**"). These Codes, together with a company's articles of association and other internal regulations, if applicable, govern the relationship between a Swiss company and its directors and officers. Therefore, the Court must look to the Codes and to FTX Europe's Articles to determine whether Ray had the authority to file the Petition.

46.     As a Swiss legal entity, FTX Europe acts through its governing bodies. (SCC, art. 55, and CO, art. 718.) For FTX Europe, the corporate bodies are the shareholders' meeting, the board of directors, and the company's auditors. (Articles, Art. 7.) The powers of the Company are to be exercised by these bodies. (*Id.*)

47.     The board of directors is responsible for deciding all matters not reserved to the shareholders' meeting by law or the articles of association. (*Id.*, Art. 19.) As there is no reservation towards the shareholders' meeting neither in the Codes nor in the Articles, the legal body for the Company applicable to the issues is its board of directors (CO, art. 716).  The board of directors are elected by the shareholders' meeting as its inalienable power (CO, art. 698(2)) and for any third party effect to be registered in the Swiss commercial register.

48.     For an act of the FTX Europe board of directors to be valid, the act must be the result of a resolution passed by a majority of the directors at a meeting where a Quorum is present (*id.*, Art. 23); or by a written resolution in lieu of a meeting signed by all directors. (*Id.*, Art. 25.)

49.     The right to appoint officers is not reserved to the FTX Europe shareholders' meeting by law or the Articles. (*Id.*, Art. 8.) Therefore, the FTX Europe board of directors is responsible for appointing officers for the company. (*Id.*, Art. 20.) *See also* CO, Art. 716*a* ("The board of directors has the following ***non-transferable and inalienable*** duties: . . . 4.  Appointing and dismissing persons entrusted with managing and representing the company") (emphasis added.) [9]

50.     Therefore, under the CO and the Articles, FTX Europe's board of directors was responsible for appointing officers of the company. This obligation was "non-transferable and inalienable." Accordingly, even if the board had tried to delegate to Bankman-Fried the right to appoint Ray as CEO—which it did not—this act would have been ineffective. Bankman-Fried had no authority to appoint Ray the CEO of FTX Europe.

---

[9]     Once the board appoints officers or grants other persons granted the authority to represent the company, the board is obligated to have the persons with authority entered in the Swiss commercial register and submit an authenticated copy of the relevant resolution. CO, Art. 931a.

51.    The right to determine whether to seek bankruptcy protection is an inalienable power by law by the board of directors (CO, Art. 716a). Although Switzerland does not have a bankruptcy law like the U.S., Swiss law does provide for financial restructuring of insolvent companies. Such actions are, however, required to be taken by the board of directors. *See, e.g.,* CO Art. 725b(1), (2) and (3) (requiring the board of directors to propose financial restructuring measures and requiring the board to notify the court of over-indebtedness.) As with the appointment of officers, this obligation lies with the board of directors and is "non-transferable and inalienable." CO, Art. 716a ("The board of directors has the following non-transferable and inalienable duties: . . . 7.  Filing an application for a debt restructuring moratorium and notifying the court in the event that the company is overindebted.")

52.    Because only the board of directors of a Swiss company is authorized (and obligated) to seek a financial restructuring of the company, any act of a third-party seeking to approve a voluntary bankruptcy filing would be ineffective and void. Similarly, any attempt by anybody other than the board of directors to appoint an officer of FTX Europe would be void. Thus, even if the board had tried to delegate to Bankman-Fried the right to file a bankruptcy petition—which it did not—this act would have been ineffective. Bankman-Fried's delegee, Ray, thus had no authority to file the Petition. Such acts of non-corporate bodies are null and void.

53.    In sum, under Swiss law, the Omnibus Authority could not and did not grant Ray the authority and power to file the Petition. As so aptly expressed by its own terms, the Omnibus Authority is only valid "***to the extent applicable law permits***." Omnibus Authority. Under Swiss law as well as FTX Europe's Articles, Bankman-Fried lacked authority to unilaterally appoint Ray as CEO and to delegate to him the directors' power to authorize a bankruptcy filing. Accordingly,

there was not proper authorization to file the Petition; the result of which is the Court does not

have subject matter jurisdiction over FTX Europe's chapter 11 proceeding.

54.    The Court has "no alternative but to dismiss the [Petition]." *Price v. Gurney*, 324

U.S. at 106.

**55.    *Dismissal Under Section 1112(b) of the Bankruptcy Code***

56.    This case should also be dismissed under section 1112 of the Bankruptcy Code,

which provides in pertinent part:

> on request of a party in interest, and after notice and a hearing, the court ***shall*** convert a case under this chapter to a case under chapter 7 or ***dismiss a case under this chapte***r, whichever is in the best interests of creditors and the estate, ***for cause*** . . . .

11 U.S.C. § 1112(b) (emphasis added.)

57.    "It is well established that lack of authority to commence a bankruptcy case

constitutes cause for dismissal" under section 1112(b) of the Bankruptcy Code. *In re ComScape

Telecommunications, Inc.*, 423 B.R. at 829–30 (collecting cases). But, as noted in *ComScape*, "the

Court need not rely on § 1112(b) for authority to dismiss this case. Whenever a court 'finds that

those who purport to act on behalf of the corporation have not been granted authority by local law

to institute the proceedings, it has no alternative but to dismiss the petition.'" *Id.*, citing *Price v

Gurney*. Here, the Court "would be required to dismiss an unauthorized filing even if § 1112(b)

were not in the Bankruptcy Code." *Id.* (citing cases); s*ee also*, *In re 3P Hightstown, LLC*, 631 B.R.

205, 209 (Bankr. D. N.J. 2021) ("the Court has authority to dismiss this case without relying on §

1112(b)," and must dismiss a case filed without the prerequisite authority, collecting cases).

## RESERVATION OF RIGHTS

58.    Nothing in this Motion is intended to or shall be deemed to impair, prejudice, waive,

or otherwise affect the rights and claims of Lötscher in these jointly-administered chapter 11 cases

or any adversary proceeding number, except as otherwise set forth herein.

59.    Pursuant to Local Rule 9013-1(f), Lötscher does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **NOTICE**

60.    Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) all known creditors of the Dismissal Debtors; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

[*Text Continues On Following Page*]

## <u>CONCLUSION</u>

For the foregoing reasons, Lötscher respectfully requests that the Court: (a) enter an order dismissing the bankruptcy case of FTX Europe AG. (Case No. 22-11075-JTD); and (b) grant such other and further relief it deems just and proper under the circumstances.

Dated:  November 17, 2023
Wilmington, Delaware

**GIBBONS P.C.**

 */s/ Christopher Viceconte*
Christopher Viceconte (No. 5568)
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
Telephone:  (302) 518-6300
E-mail: cviceconte@gibbonslaw.com

-and-

**GIBBONS P.C.**
Robert K. Malone (*pro hac vice* forthcoming)
Brett S. Theisen (*pro hac vice* forthcoming)
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4500
E-mail:  rmalone@gibbonslaw.com
           btheisen@gibbonslaw.com


*Counsel to Dr. Marcel Lötscher*