**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FTX Trading Ltd., et al., | ) | Case No. 22-11068 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**REPLY TO DEBTORS' REPLY REGARDING OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER**

I, John Mallon (the "**Objector**"), a customer and creditor of the Debtors, hereby respond (the "**Reply**") to the Debtors' reply[1] (the "**Debtors' Reply**") to Objector's objection[2] (the "**Objection**") to the Motion For Entry Of An Order Authorizing And Approving (I) Procedures For The Sale Or Transfer Of The Trust Assets And (II) The Sale Or Transfer Of Such Trust Assets In Accordance With Such Procedures Free And Clear Of Any Liens, Claims, Interests And Encumbrances, filed November 3, 2023[3] (the "**Motion**") This Reply also responds to the declaration of Edgar W. Mosley II filed on November 26, 2023[4] (the "**Mosley Declaration**").

## 1. Overview

1. In the Objection, Objector outlined a claim on Grayscale Bitcoin Trust ("**GBTC**") shares which backed and crucially could be redeemed in exchange for a tokenised digital asset version ("**Tokens**") held on the FTX platform. The Objection does not concern a claim for any digital assets. It concerns a claim for the underlying shares *backing* digital assets, whether expressly segregated to back the Tokens or merely existing in the estate, on the basis of promises made by FTX discussed in the Token Objections and supporting documentation, and reiterated in this Reply. The Debtors' Reply and the Mosley Declaration appear to misunderstand or mischaracterize the Objection. For the avoidance of

---

[1] Docket number 4107.
[2] Docket number 4044, incorporated into this Reply, and building on the objection raised in docket number 358 (the "**Previous Objection**"). The Previous Objection and the Objection will be referred to as the Token Objections.
[3] Docket number 3660.
[4] Docket number 4108.

doubt, Objector does not suggest the misunderstanding or mischaracterization is intentional and thanks Debtors' counsel for reaching out via email on November 28, 2023 to briefly discuss the Objection.

2. Debtors provide that "the requested 'outcomes' set forth in the… Objection are inapplicable" on the basis that Objector is "plainly incorrect". Objector submits that this appears to be a result of Debtors' misunderstanding of the Objection and/or the way Tokens operated on FTX. In this Reply, Objector will outline why the court ought to allow the Objection and one or more of the outcomes sought below, based on the arguments in Debtors' Reply (supported by the Mosley Declaration) for why the Objection should be overruled, but also reiterating points in the Objection, where relevant.

## 2. Statements by Debtors in Debtors' Reply

**A. Debtors' attempt to distinguish Trust Assets from the underlying shares in those assets**

3. In the Debtors' Reply at 4, Debtors argue that the Trust Assets[5] are comprised of the Debtors' interests in the Trusts[6], not any digital assets. This appears to misunderstand the nature of the Objection. The Objection does not deal with digital assets. It deals with the underlying shares backing the digital assets, i.e. Tokens. The Objection contends, with good basis as outlined in the Token Objections and supporting documentation, that Tokens were backed by the underlying asset, and could be redeemed for this underlying asset.

4. Objector does not contend that the Tokens are the exact same as the shares they are backed by ("**Underlying Shares**"). However, for Debtors to rely on this as a basis to request the Objection be overruled appears to misunderstand the Objection. For the avoidance of confusion, it is the GBTC shares backing the GBTC Tokens (whether expressly segregated to back the Tokens or merely existing in the estate) which are relevant to the Objection, and the Motion provides that Trust Assets are comprised of, *inter alia*, GBTC shares (see below at footnote 5).

5. In Debtors' Reply at 5, Debtors argue that Tokens "are separate and apart from the Trust Assets", and support this contention by claiming "any shares actually 'backing' the Grayscale Bitcoin

---

[5] Trust Assets are defined in the Motion, as, *inter alia*, 22,280,720 shares of GBTC.
[6] Trusts is defined in the Motion, as, among other things, the trusts managed by Grayscale Investments LLC.

Trust tokens were not custodied by the Debtors… [and] are different than the Trust Assets described in the Motion". Objector would be interested to learn the bases on which Debtors think these assets are different (see below at 14 and 17). As outlined in the Objection, FTX held themselves out as offering for sale a product by which Tokens (held on FTX) could be exchanged for the Underlying Shares, and customer money was solicited into these Tokens on the basis that the underlying asset, i.e. the Underlying Shares, could be freely redeemed. The Debtors have over 22 million shares of GBTC which they are trying to sell. On the basis of this, it appears to be inequitable for Debtors to try to maximise the value of estate assets at the expense of those who have valid claims over assets being sold. Debtors are attempting to adopt a broad approach to what are considered assets of the estate to be sold off to maximise estate value, but also adopt a narrow approach to who may own or have an interest in certain property, even though the shares proposed to be sold could be used to satisfy claims to the underlying by Token holders in the same way they will be sold on the market to add capital to the general estate.

6.  In the Debtors' Reply at 6, Debtors concede that GBTC Tokens were backed by Underlying Shares of GBTC. Debtors further provide that "[t]he shares underlying these tokenized shares are different than the Trust Assets described in the Motion" and "Trust Assets described in the Motion were never 'tokenized' or otherwise made available to any of the Debtors' customers". Objector respectfully submits this is irrelevant. Shares are fungible, which leaves flexibility over the *exact* assets used to satisfy interests. It is immaterial whether the shares offered for sale in the Motion were tokenised and/or segregated. The fact is the *estate* has at least 22,280,720 shares of GBTC (which they are trying to sell), and there are good faith and evidenced claims *against the estate* from customers regarding entitlement to shares of GBTC underlying GBTC Tokens, as outlined in the Token Objections and supporting documentation. Tokens of GBTC were made available to be traded on FTX, with the *express* provision that they could be exchanged for the underlying. There is no ambiguity on this point. If these Underlying Shares backing Tokens were *not* segregated, then that is simply a further fraud perpetrated by the previous management of FTX, and not a basis on which to overrule this Objection. To reiterate, the estate has 22,280,720 shares of GBTC, valued at $702,065,487.20[7], as of pre-market on the date of this

---

[7] The closing price on November 28, 2023 for GBTC on the over-the-counter market was $31.51.

Reply. Objector has a valid claim against the estate regarding shares of GBTC, and is not particular about which *exact* shares are used to satisfy the claim, as Objector understands that shares are fungible.

7. In the Debtors Reply at 7, Debtors claim that "[t]here are no 'GBTC shares owed to Token holders' to 'carve out' from the requested sale" and that "the GBTC shares [referred to in the Objection] are not included in the Debtors' requested sale". The Debtors further provide that Token holders "do not have a specific interest in the Trust Assets that would attach to any of the sale proceeds thereof". Based on the Objection and the points raised in this Reply, it is submitted that the Debtors are incorrect to request the Objection be overruled on this basis. Debtors have merely repeated the same *these are different assets* argument through Debtors' Reply, and have not dealt with the main issue raised. The Token Objections, this Reply, and the supporting documentation provide a full overview of the issue, which is that certain customers are owed assets which the estate currently has in its possession and is trying to sell.

**B. Debtors' reliance on equity**

8. In the Motion at 31, the Debtors rely on the court's equitable powers under 11 U.S.C. §105(a), to suggest that the bankruptcy court has an equitable authority to authorise what is sought in the Motion.

9. In the Motion, Debtors provide the sales "will benefit creditors" and are in the "best interests of… all creditors". Whilst Objector fully supports all reasonable trading activity that would maximise financial recovery for all customers, it would not appear to be equitable for this to occur at the expense of a subset of those customers (i.e. Token holders who are owed the Underlying Shares). This is what will occur if GBTC holdings are permitted to be sold for the benefit of the general estate, as outlined in the Objection and this Reply.

10. Therefore, Objector respectfully submits Debtors reliance on equitable principles to support a potentially inequitable outcome is not appropriate.

### 3. Statements in the Mosley Declaration

11.     In the Mosley Declaration at 6, Mr. Mosley provides that the Grayscale Trusts "issue units to investors that represent a proportional interest in the applicable trust's portfolio, which is comprised of relevant digital assets". Whilst this is of course correct, referring to them in this way may overcomplicate what they are: shares. GBTC is separate from the underlying digital assets in the GBTC trust. Whilst GBTC price often moves in tandem with the digital asset making up the GBTC trust, bitcoin, it is its own distinct asset, which can be traded on the over-the-counter market.

12.     In the Mosley Declaration at 6, Mr. Mosley provides that the trust assets proposed to be sold in the Motion "are comprised of Debtors' interest in the Trusts, not any digital assets." As provided above, at 6, it is submitted that the trust assets are simply fungible shares. To refer to these share as "Debtors' interest in the Trusts" is to overcomplicate the nature of the assets in question, in a way which obscures the validity of the clear claims made in the Token Objections. The GBTC shares are not a complicated and esoteric interest under a trust. They are simply shares, which the Debtors want to sell to add capital to the general estate.

13.     In the Mosley Declaration at 7, Mr. Mosley provides that "[t]he assets referred to in the… Objection—'tokenized stocks'—are separate and apart from the [GBTC shares]." Objector does not dispute this. The Token Objections, their supporting documentation, and this Reply should clearly show that the issue is not that the GBTC shares are equal to Tokens. The issue is that the GBTC shares backed the Tokens, and could be freely exchanged.

14.     In the Mosley Declaration at 7, Mr. Mosley provides that "Based on a review of available books and records, any actual shares actually 'backing' the…GBTC tokens were not custodied by the Debtors." This potentially implies the existence of Underlying Shares elsewhere in the estate. Objector submits that it would be helpful to be provided with this information. If Debtors' records show that the relevant GBTC shares backing Tokens are otherwise in the estate and that Token holder claims are understood such that these shares are being segregated to satisfy Token holders' claims, then Objector would agree with Debtors that the majority of this Objection is not relevant. However, Objector and

others similarly situated have not received any indication that this is the case. Therefore, based on current information, the claims against GBTC shares, wherever in the estate they may be situated (including those proposed to be sold in the Motion) are in scope to satisfy Token holders, as explained in the Token Objections and this Reply. If FTX was to restart operations, which Objector contends is very likely given how the reorganization is proceeding, how can Objector redeem their Tokens for Underlying Shares if the only GBTC shares publicly known to be within the estate are allowed to be sold pursuant to the Motion? It is submitted that this needs to be resolved before the Motion is granted and these shares are sold.

15. In the Mosley Declaration at 8, Mr. Mosley reiterates the Debtors' contention in the Debtors' Reply that the shares underlying the relevant Tokens are "different" to the shares proposed to be sold in the Motion. As outlined above in this Reply at 5 and 6, this is not relevant. To reiterate, the *estate* has at least 22,280,720 shares of GBTC, and there are bona fide claims *against the estate* from customers regarding entitlement to GBTC shares backing GBTC Tokens, as outlined in the Token Objections and supporting documentation. Again, it would be useful to understand the information regarding the "shares underlying the relevant Tokens" which the Mosley Declaration suggests is known to Debtors at this time.

## **4. Conclusion**

16. Objector reiterates the outcomes sought in the Objection, because they would dispose of the objections raised in the Objection.

17. In addition, Objector requests that, before this Motion can be approved, Debtors provide full information in the "available books and records" regarding the Underlying Shares backing Tokens referred to in the Mosley Declaration, such that Objector and those similarly situated can assess whether the estate otherwise has the Underlying Shares it should have, to enable Token holders to redeem. This information would be useful in saving the court's time from objections which must be made to preserve interests, but that may not need to be made (i.e. if the estate otherwise has these Underlying Shares but has simply not disclosed this). At over 12 months into proceedings, Debtors should know and be able

to provide information on both the existence of Underlying Shares, if any, and the total customer claims made up in whole or in part by Tokens, such that interested parties would know the Underlying Shares backing their Tokens are accounted for and can simply and patiently await distribution, subject to 19 below.

19. It is understood that Grayscale intends to convert the Grayscale Bitcoin Trust to an exchange traded fund ("ETF"). The imminence of this conversion further complicates the issue for holders of GBTC Tokens, as presumably the GBTC shares would be distinct from any shares in the ETF, or would cease to exist/have value after ETF approval. Objector would request clarification on how the Debtors' would plan to protect the value in GBTC Token holders' claims if this occurred. This issue suggests that the most equitable outcome for GBTC Token holders, considering the totality of circumstances, is redemption outside of the proceedings.

18. Notwithstanding the Objection, until a resolution is reached, Objector reserves the right to redeem the Underlying Shares from any Debtor entity or third party.

Respectfully submitted
11/29/2023,

/s/ John Mallon
Belfast,
United Kingdom
(914) 650-6782
john [at] onbrinkcapital.com

*Pro se* creditor