## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  December 13, 2023 at 1:00 p.m. (ET)**<br>**Objection Deadline:  December 6, 2023 at 4:00 p.m. (ET)** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER ESTABLISHING A SCHEDULE AND PROCEDURES FOR ESTIMATING CLAIMS FILED BY THE UNITED STATES DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 502(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), establishing a schedule and procedures for estimating for all purposes, including voting, allowance, and distribution, all the unliquidated claims asserted by the United States Department of the Treasury – Internal Revenue Service (the "IRS"), currently asserted in Proofs of Claim as set forth on Exhibit B (as each may be amended or supplemented, collectively, the "IRS Claims" and each an "IRS Claim") at $0.00 or such other amount to be determined at trial, and (ii) granting such other related relief as the

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Court deems just and proper.   Certain facts supporting this Motion are set forth in the *Declaration of Edward W. Mosley II* (the "Mosley Declaration"), filed in support of this Motion. In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors have since the commencement of these Chapter 11 Cases worked to maximize the value of their assets and return such value to customers and other creditors holding allowed claims as quickly as possible.   Now, one year after the catastrophic collapse of FTX, that goal of returning value to creditors is within reach.   The Debtors recently announced the entry into a settlement and plan support agreement (the "PSA") with the Committee, the Ad Hoc Committee, and the class action plaintiffs, which includes, among other things, a settlement of customer property issues and establishment of preference settlement procedures.[2]   The Debtors anticipate filing an amended chapter 11 plan and disclosure statement on or before December 16, 2023, and pursuing confirmation of their plan over the first half of 2024.

2.      The 13 Debtors that are U.S. taxpayers have completed and filed U.S. tax returns for the taxable prepetition period through October 31, 2022 or December 31, 2022, as applicable.   These tax returns were prepared during these Chapter 11 Cases by current management on the advice of the Debtors' professionals and approved by the current Board of Directors.   Not surprising for a business that was financially catastrophic for its customers, lenders, and shareholders, the Debtors' tax returns show no tax liability and over $11 billion in net taxable losses.

---

[2]    *See Notice of Proposed Settlement of Customer Property Disputes* [D.I. 3291].

3.      Notwithstanding the facts of the Debtors' Chapter 11 Cases, the claims asserted by the IRS threaten to halt the Debtors' progress and any distribution to customers and other creditors indefinitely on the basis of estimates the IRS has not explained after many months of discussion and increasingly urgent requests.  This is the prototypical situation where prompt claims estimation is necessary to prevent undue delay in confirming a plan and distributing value to victims—both customers and non-customer creditors.  The IRS Claims filed to date *nominally total approximately $24 billion*—more than fifty times what the Debtors ever earned, hundreds of times more than what could plausibly be owed by the Debtors, and several times greater than the total distributable value that is currently available to creditors.  These unsubstantiated "placeholder" claims grossly speculate as to the Debtors' theoretical prepetition tax liabilities and bear no relation to reality.[3]

4.      The Debtors have repeatedly sought specificity from the IRS on the factual and legal bases that might support the facially bloated IRS Claims, but little progress has been made to date.  The IRS has not proffered any rational basis for believing that such Debtors could have additional tax liability for prepetition periods, let alone for maintaining nearly $24 billion in estimated claims.  The IRS has not accepted the conclusions of the Debtors' tax returns on the grounds that they are not adequately "substantiated."  Yet, these returns have been prepared by Ernst & Young LLP ("EY"), one of the country's leading accounting firms, with particular specialized knowledge of accounting for crypto-currency transactions.  The IRS potentially could spend years investigating in an attempt to liquidate its claims, after which there would be litigation if the Debtors disagree with the IRS's conclusions.  With potential claims that could exceed a multiple value of the Debtors' estates, this type of protracted process threatens to

---

[3]    Some portion of the IRS Claims purport to be estimates for postpetition tax liabilities.  Any such claims for postpetition periods asserted in accordance with a future administrative claims bar date will be addressed at a later date, if and as appropriate.

bring plan confirmation to a screeching halt and indefinitely delay distributions on allowed claims to customers and creditors.

5.     To prevent the IRS Claims from completely subverting the Debtors' progression of these Chapter 11 Cases, the Debtors respectfully request that this Court establish a schedule and procedures for estimating the IRS Claims at $0.00, or such other amount to be determined at trial.  Section 505(a) of the Bankruptcy Code permits this Court to determine prepetition tax liabilities, and section 502 of the Bankruptcy Code mandates estimation be invoked to do so where, as here, the asserted claims are unliquidated and fixing their value would unduly delay the administration of the Debtors' Chapter 11 Cases.

6.     The Court has broad discretion to establish a schedule and procedures for purposes of estimation pursuant to section 502(c).  Consistent with the terms of the PSA, the Debtors anticipate beginning to solicit votes on their amended plan in March 2024.  To ensure the Debtors' plan is viable and to permit disclosure to stakeholders regarding potential claims recoveries, it is imperative that the estimation process before this Court determine the amount of any liability with respect to the IRS Claims prior to plan solicitation.  The Debtors have provided the IRS voluminous diligence and discovery information, and the parties are well-positioned to present the issues to the Court in a February 2024 evidentiary hearing.  As such, estimation procedures and the Debtors' proposed schedule should be approved.

## FACTUAL BACKGROUND

### A.     The Chapter 11 Cases and the Debtors' Plan of Reorganization

7.     On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration

of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

8.     On May 19, 2023, the Court entered the *Order Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest* (the "Bar Date Order") [D.I. 1519].  The Bar Date Order established, among other things, the deadline for governmental units to file proofs of claim against any of the Debtors as September 29, 2023 (the "Governmental Bar Date").

9.     On July 31, 2023, the Debtors filed the *Draft Joint Plan of Reorganization* (the "Draft Plan" and as amended, supplemented, or modified from time to time, the "Plan") [D.I. 2100] just nine months after the Petition Date.  On October 16, 2023, the Debtors announced and filed the PSA, which includes, among other things, a settlement of the customer property claims litigation filed by the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") and the class action plaintiffs, a preference settlement policy, and a framework for an amended chapter 11 Plan [D.I. 3291].  The Debtors anticipate filing an amended Plan on or before December 16, 2023, and pursuing solicitation and Plan confirmation over the first half of 2024.

10.     The PSA contains milestones that are important both to maintaining creditor support for the Plan and for ensuring the prompt distributions of value to the Debtors' customers and other creditors.  As agreed, the Debtors shall (i) file an amended Plan and disclosure statement no later than December 16, 2023; (ii) obtain an order from the Court

approving the disclosure statement and solicitation procedures by March 1, 2024; (iii) obtain a

Plan confirmation order no later than June 1, 2024; and (iv) have the Plan effective date occur no

later than July 1, 2024.[4]

11.    As of September 2023, the Debtors have approximately $7 billion in

distributable value (*see Notice of Presentation to Stakeholders*, September 11, 2023 [D.I. 2463]),

which continues to increase as assets are recovered, digital assets monetized, and litigation

claims prosecuted.  At that time, the Debtors disclosed that while work to reconcile the claims

pool is ongoing, there were more than approximately $16 billion in customer claims and billions

more in non-customer claims aside from the IRS Claims.  (*Id.*)

12.    Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93]

(collectively, the "First Day Declarations").

### B.    The Debtors' Tax Returns

13.    As detailed in the First Day Declarations, the Debtors' prepetition

management utterly failed to implement corporate controls and left behind a complete absence of

trustworthy financial information [D.I. 24 ¶ 5].  Nevertheless, since the commencement of these

Chapter 11 Cases, the Debtors' current management and their retained professionals have made

significant progress reconstructing the Debtors' balance sheets and establishing appropriate

---

[4]    The Plan contemplates subordinating claims for taxes and regulatory fines and penalties to those of customers
and creditors, but the IRS has not agreed to that treatment.  As a result, estimating the claim amounts became
necessary.

record-keeping.  The Debtors have worked with various professionals to evaluate any potential prepetition tax liabilities, including EY, a leading accounting firm with significant experience in bankruptcy and digital asset-related taxation.  EY utilized over 100 professionals and the most advanced technologies in preparing the Debtors' tax returns.

14.     On August 15, September 12, and October 16, 2023, the Debtors filed tax returns for a total of 13 entities, consisting of all of the entities subject to U.S. income tax for the 2022 tax year (the "Debtor Returns").  Importantly, none of the other Debtors are subject to U.S. income tax for the relevant prepetition periods.  The Debtor Returns show an aggregate of over $11 billion in taxable losses over the course of 2021 and the 2022 tax year.  None of the Debtor Returns reflect any incremental tax due; only one reflects any net taxable income.  While the Debtor Returns may still require further adjustments, the Debtors and their advisors do not anticipate that any such adjustments will yield any incremental tax liabilities.

**C.     The IRS's Unliquidated Proofs of Claim**

15.     On February 1, 2023, the Debtors were contacted by an IRS audit team in the IRS's Large Business and International division to audit the Debtors' income tax returns.  On February 27, 2023, the IRS notified the Debtors that their employment tax returns were subject to audit by a separate team.  Since then, EY, at the direction of the Debtors, have met and conferred with IRS personnel regularly, generally on a weekly basis with the income tax audit team and generally on a monthly basis with the employment tax audit team (together, the "IRS Audit Teams").

16.     The Debtors have attempted to work with the IRS Audit Teams by providing voluminous information to ensure that the IRS Claims would be as accurate as possible.  The IRS Audit Teams have to date made nearly 1,100 information requests.  The Debtors and their advisors, coordinated through EY, timely responded to all of these requests.

The Debtors made voluminous productions of information to the IRS Audit Teams on May 31, 2023, July 21, 2023, and September 30, 2023.  Where the Debtors and EY were unable to completely respond to a request, explanations were provided as to why the information was unavailable.

17.    Based on discussions with the IRS Audit Teams, the Debtors did not expect the IRS to file proofs of claim until discussing them with the Debtors prior to the Governmental Bar Date.  Nonetheless, on April 27 and 28, 2023, the IRS filed initial proofs of claim containing estimates nominally totaling approximately $44 billion without any discussion or preview with the Debtors.  On September 21, 2023, the IRS filed amended proofs of claims that modified the prepetition IRS Claims but left the potential aggregate estimated tax claims against the Debtors at more than $43 billion.

18.    On November 2, 2023, the IRS further amended certain of its claims to reduce the amounts claimed for 2022 and 2023 tax years.  While those reductions were welcome, as of the date of this Motion, the completely unsubstantiated estimated IRS Claims against the Debtors still total ***approximately $24 billion***.  The IRS currently has 47 pending claims filed against 31 of the Debtors.  (Mosley Decl. ¶ 6.)

19.    But each and every tax claim cites to footnotes stating that the proof of claim contains "***estimated* tax liability due to pending examination of debtor tax return**" and/or that "**liability is *estimated* based on available information because the return has not been filed**."  (*See, e.g.*, IRS Claims 88399 at 1 and 58969 at 6, both attached hereto as Exhibit C (emphasis added).)  As a result, it is clear that the IRS Claims are unliquidated and reflect mere speculation and conjecture.  The IRS Claims remain unliquidated notwithstanding the volume of information the Debtors and EY have provided to the IRS.

20.     The IRS Audit Teams have been unable to support or explain *any* of the estimates comprising the IRS Claims and declined to share any calculations with the Debtors. Most concerning, the IRS Audit Teams have not provided any information regarding estimated timelines for the completion of the audits of the Debtors, including Alameda Research LLC (which only recently commenced for the 2020 and 2021 tax years), which on the current trajectory could take years to complete.

## JURISDICTION

21.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 502, and 505 of the Bankruptcy Code and Bankruptcy Rule 9014.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with the Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

22.     The Debtors respectfully request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, establishing procedures and a schedule for estimating the prepetition IRS Claims at $0.00 for all purposes, including voting, allowance, and distribution, or at such other amount to be determined at trial.

**PROPOSED ESTIMATION SCHEDULE**

| EVENT | DEADLINE |
|---|---|
| Deadline to Complete Fact Discovery, Including Depositions | Tuesday, January 16, 2024 |
| Deadline to Exchange Expert Witness Disclosures and Reports (if any) | Friday, January 19, 2024 |
| Deadline to Exchange Rebuttal Expert Witness Disclosures and Reports (if any) | Friday, January 26, 2024 |
| Deadline to Complete Expert Depositions; Discovery Closes | Wednesday, January 31, 2024 |
| Deadline for Briefs in Support of Estimation | Friday, February 2, 2024 |
| Deadline for IRS to File Response Brief | Friday, February 16, 2024 |
| Deadline for Replies in Support of Estimation | Friday, February 23, 2024 |
| Deadline for the Parties to Submit Joint Pre-Trial Order | Tuesday, February 20, 2024 |
| Estimation Evidentiary Hearing (subject to the Court's schedule) | Tuesday, February 27, 2024 |

23.     This Proposed Schedule reflects the fact that the IRS already has had over one year to articulate and liquidate its prepetition claims against the Debtors and has failed to do so.  The IRS is well aware of the Debtors' publicly announced timeline for Plan confirmation and making distributions to customers and other creditors, and thus the urgency of these matters. The Debtors have diligently sought to consensually resolve the estimated IRS Claims given the crippling size of those preposterous estimates, but the IRS has continually delayed making any progress.  As a result, the Debtors require Court assistance to estimate the IRS Claims on an expedited schedule.

**BASIS FOR RELIEF**

**I.    Estimation of the IRS Claims is Necessary Because Liquidation Would Unduly Delay the Administration of the Chapter 11 Cases**

24.    Section 502(c) of the Bankruptcy Code provides in relevant part that "there *shall* be estimated for purposes of allowance under this section . . . any contingent or unliquidated claim, the fixing of which, as the case may be, would unduly delay the administration of the case."   11 U.S.C. § 502(c)(l) (emphasis added).   "Claims estimation provides 'a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine.'"   *In re AMR Corp.*, 2021 WL 2954824, at *4 (Bankr. S.D.N.Y. July 14, 2021) (quoting *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003)); *see also In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) ("The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim."); *In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993) (noting that two purposes of section 502(c)(1) are to "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions" and to "promote a fair distribution to creditors through a realistic assessment of uncertain claims").

25.    "Section 502(c) of the Bankruptcy Code is drafted in mandatory terms." *In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005).  In other words, the Court *must* order an estimation proceeding if it determines that liquidating the contingent or unliquidated

claim "would unduly delay the bankruptcy case." *Id.*; *see also In re G-I Holdings, Inc.*, 2006 WL 2403531, at *3 (Bankr. D.N.J. Aug. 11, 2006).[5]

      A.      **The IRS Claims Are Unliquidated.**

      26.     The Bankruptcy Code does not define the term "unliquidated" for the purpose of section 502(c). However, courts have consistently held that "[a] claim is liquidated if the amount due can be determined with sufficient precision . . . as where the claim is determinable by reference to an agreement or by simple computation." *Bennett* v. *Bon Secours Mercy Health, Inc.*, 2022 WL 2828991, at *3 (E.D. Pa. July 20, 2022) (citations omitted). Conversely, "[a]n unliquidated claim is a 'claim in which the amount owed has not been determined.'" *In re Energy Future Holdings Corp.*, 531 B.R. 499, 515 n.70 (Bankr. D. Del. 2015) (citing *In re RNI Wind Down Corp.*, 369 B.R. 174, 183 (Bankr. D. Del. 2007)); *see also In re Akorn, Inc.*, 2021 WL 4306222, at *13 (D. Del. Sept. 22, 2021) (same), *aff'd*, *In re Akorn Inc.*, 2022 WL 17222417 (3d Cir. Nov. 25, 2022).

      27.     This is not a typical case, where the "IRS has conducted an examination and asserted a deficiency" that is the basis for a claim. *See* 11 Collier on Bankruptcy § 5.05 (16th ed. 2023) (noting that a dispute about a deficiency amount does not make the assessment contingent and therefore subject to estimation). Here, there has been no examination. The IRS Claims are unsupported, preliminary estimates of the Debtors' potential tax liability and are thus unliquidated. The IRS Claims themselves make clear that they are estimates: each IRS Claim states that it is "*estimated* tax liability due to pending examination of Debtor tax return." (*See*

---

[5]    Courts have construed the phrase "for purposes of allowance," as used in section 502(c) of the Bankruptcy Code, to "encompass both the allowance and disallowance (through valuation at zero) of contingent or unliquidated claims." *In re Frontier Airlines, Inc.*, 137 B.R. 811, 814 (D. Colo. 1992); *Bittner* v. *Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982) (affirming bankruptcy court's estimation of claims at $0.00); *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989) (affirming estimation of claims at $0.00); *In re Oakwood Homes Corp.*, 329 B.R. 19, 22 (D. Del. 2005) (affirming bankruptcy court's estimation of claims at $0.00).

<u>Exhibit C</u> at 1, 8 (emphasis added).)  And despite the Debtors' requests, the IRS has offered no evidence or support indicating that the amount of the IRS Claims are readily subject to computation.

28.    In fact, the IRS Claims are facially absurd and meritless.  There is nothing determinate or precise about them.  They cannot be reconstructed using any generally accepted theory of accounting or taxation.  Nor can they be reconciled against the Debtors' Returns. Accordingly, "[i]n determining the taxable income of the Debtors, the Court would have to apply various provisions of the Internal Revenue Code" and, far from being a simple "mathematical computation," liquidation would require "the use of judgment, discretion, determination of facts, and construction of the Internal Revenue Code."  *In re Elrod*, 178 B.R. 5, 7 n.2 (Bankr. N.D. Okla. 1995) (ordering estimation hearing to determine amount of unliquidated IRS tax claim brought against debtor in connection with seizure proceeding).  The IRS Claims are unliquidated and, under section 502(c) of the Bankruptcy Code, the Debtors are entitled to an estimation proceeding to compel the IRS to substantiate these claims and fix them for all purposes, including voting, allowance, and distributions under the Plan.

**B.    The IRS Claims Can Be Promptly Resolved Through Estimation.**

29.    The central problem with the IRS Claims is that after protracted discussions with the IRS Audit Teams, the IRS has failed to substantiate any of its claims seeking to impose prepetition tax liabilities *in any amount*—never mind tens of billions of dollars.

30.    "Where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the [claim's] value . . . according to the legal rules which may govern the ultimate value of the claim." *Bittner*, 691 F.2d at 135; *see also In re Enron*, 2006 WL 544463 at *3–4 (Bankr. S.D.N.Y. Jan. 17, 2006).  A bankruptcy court

may estimate the value of a claim according to its "ultimate merits" under applicable law. *Bittner*, 691 F.2d at 136. If the relevant evidence indicates that a claim likely cannot succeed, the court should estimate the claim at $0.00. *Id.*; *see also In re Tsai*, 2014 WL 1154032, at *3 (Bankr. C.D. Cal. Mar. 19, 2014) ("Where the claimant is unlikely to recover under applicable nonbankruptcy law, the claim may properly be estimated at zero.").

31.     Here, there is no possibility that the IRS Claims can survive under any applicable non-bankruptcy law. The notion that the Debtors might owe $24 billion in additional taxes in respect of business transacted prior to the Petition Date defies logic. These Chapter 11 Cases are perhaps the most closely scrutinized in recent history. The core facts are widely known: the Debtors' prepetition management team used their investment capital and customer funds to gamble and invest in various ventures. When they lost, they lost big—not only their investment capital but also customer funds. Those losses dwarfed any profit the Debtors might have earned. In fact, the Debtors' trading operations were distinctly unprofitable, with the Debtors' Returns reporting over $11 billion of trading losses.

32.     Seemingly indifferent to these basic realities, the IRS Claims suggest that the Debtors could owe additional taxes that are several times the amount of assets available for distribution to customers and other creditors. The aggregate taxable income reported on the income tax returns of the Debtors was $334 million, producing approximately $34.7 million in tax liability.[6] The IRS Claims are almost 700 times this amount. The IRS Claims are facially absurd, and should be estimated for all purposes at $0.00, or some other amount to be determined following the estimation hearing.

---

[6]     These figures are reflected in the Debtors' Returns, which show that over the course of their three years of operation, the Debtors earned $15 million in 2020 (producing $1.5 million in tax liability), $318 million in 2021 (producing $33 million in tax liability), and $1 million in 2022 (producing $0.2 million in tax liability).

C.      **Liquidating the IRS Claims Would Unduly Delay These Chapter 11 Cases.**

33.     Bankruptcy courts use estimation to avoid unduly delaying cases where an indeterminate unliquidated claim must be liquidated.  *E.g.*, *In re G-I Holdings, Inc.*, 323 B.R. at 599.  Courts are particularly likely to invoke their estimation powers in situations where the liquidation of a claim would delay plan confirmation.  *E.g.*, *In re Interco Inc.,*137 B.R. 993, 998 (Bankr. E.D. Mo. 1992) (estimating retirement fund's ERISA claim where deferring "determination of this claim to arbitration would leave a void in the Debtors' plan formulation equation . . . [and] it would be difficult for this Court to determine the feasibility of a plan"); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) (granting motion to estimate where unliquidated claim delayed plan confirmation).

34.     Here, liquidating the IRS Claims would unduly delay confirmation of the Plan.  (Mosley Decl. ¶ 13.)  If the Plan is somehow confirmed over the uncertainty caused by the IRS Claims, liquidation would undoubtedly delay distributions to customers and other creditors on account of allowed claims.  (*Id.*)  The estimated and unsubstantiated IRS Claims purport to be approximately $24 billion against certain Debtors—prepetition claims that would dwarf the entire value of the Debtors' estates and leave little distributable value for customer and/or general unsecured creditors depending on how those IRS Claims are ultimately classified in the Plan.  (*Id.* ¶¶ 7–11.)  This extreme level of uncertainty imperils the Debtors' ongoing efforts to confirm their Plan and distribute value to their victims.  Estimation of the IRS Claims is required to keep administration of these Chapter 11 Cases progressing to a successful conclusion.  (*Id.* ¶¶ 12–13.)

35.     Delaying Plan confirmation and meaningful distributions to creditors upon its effective date would have significant negative ramifications.  Since the Petition Date, among other things, the Debtors have substantially reconstructed their financial statements, secured and

recovered significant estate assets, and pursued substantial litigation claims. The objective has been and remains to maximize the value of the Debtors' estates and distribute that value to the Debtors' legitimate customers and other creditors. The Debtors have worked hard to negotiate the PSA, which reflects agreement among the Debtors' most significant stakeholders both on the terms of a Plan and the timing for obtaining its confirmation. The Debtors' creditor constituencies, like the Debtors, expect that a confirmed Plan will result in distributions on account of allowed claims. But the IRS stands in the way of all of this progress, and by submitting the estimated IRS Claims in amounts untethered to the facts or any plausible prepetition tax liability threatens to entirely derail these Chapter 11 Cases.

36.     The IRS has not even begun auditing Debtor Alameda Research LLC, the primary Debtor taxpayer, for the 2022 tax year. That process could take months or even years to complete. This is untenable, and given the magnitude of the estimated IRS Claims filed, is precisely why section 502(c) of the Bankruptcy Code exists and is available to the Debtors. The IRS Claims must be estimated to avoid undue delay in the administration of these Chapter 11 Cases. *See In re G-I Holdings, Inc.*, 2006 WL 2403531, at *3 (holding estimation required because requiring the company to liquidate every personal injury claim would "possibly be the death knell for a successful reorganization").

## II.     The Court Should Order the Proposed Estimation Procedures and Schedule

37.     "Congress has given the bankruptcy courts broad discretion to estimate a claim pursuant to section 502(c)(1)." *Bittner* v. *Borne Chem. Co., Inc.*, 691 F.2d 134, 137 n.9 (3d Cir. 1982). "The procedures used for estimating claims vary, and have included a summary trial, a full-blown evidentiary hearing, or the review of pleadings and briefs followed by oral argument of counsel." *In re AMR Corp.*, 2021 WL 2954824, at *4; *see also In re G-I Holdings, Inc.*, 323 B.R. at 599 ("In general, a bankruptcy court has discretion to determine the appropriate

method of estimation in light of the particular circumstances of the bankruptcy case before it."). Courts regularly authorize a "truncated" estimation process so as to avoid "time-consuming proceedings which would defeat the very purpose" of section 502(c)(1) (quoting *In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007)); *see also* 11 Collier on Bankruptcy § 5.05 (16th ed. 2023) ("In most cases in which a bankruptcy court embarks upon an estimation proceeding, it will be a summary affair.").

38.     The IRS Claims are premised on unsubstantiated and wrong *legal* positions that can be briefed and swiftly resolved by the Court.  Beyond that, estimation of the IRS Claims on a factual record can be accomplished in an expedited manner, consistent with the Debtors' Plan confirmation schedule, because so much information previously has been provided to the IRS.  The Debtors have already produced voluminous documents and information in response to nearly 1,100 information requests from the IRS Audit Teams.  As a result, the remaining fact discovery required should be minimal.  A limited set of factual depositions and expert testimony (if any is necessary at all) can be completed in accordance with the Proposed Estimation Schedule.  Furthermore, the Debtors anticipate that the IRS has relatively little information of its own compared to what it has received from the Debtors.  As a result, any discovery burden on the IRS will be insubstantial and a "truncated" estimation schedule is appropriate.  *Bittner*, 691 F.2d. at 135 (proposed estimation process "best suited to the particular contingencies at issue").

39.     Courts frequently implement estimation schedules similar to the Debtors' proposed schedule.  For example, in *In re Enron Corp.*, which involved allegations of fraud on a similar scale as in the Debtors' cases, the court ordered that estimation hearings on *all* unliquidated or contingent claims, which included individual claims by litigants less

sophisticated than the IRS, would take place within 4.5 months of its approval of the estimation motion.  Order, *In re Enron*, No. 1-16034 (Bankr. S.D.N.Y. 2004), ECF No. 16,353; *see also* Order, *In re SC SJ Holdings LLC*, No. 21-10549 (Bankr. D. Del. May 6, 2021) (Dorsey, J.) (setting hearing for approximately one month from approval of schedule), ECF No. 284; Order, *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (Bankr. D. Del. Nov. 30, 2020) (Sontchi, J.) (two months), ECF No. 1193; Order, *In re Sand Spring Capital III, LLC*, No. 11-13393 (Bankr. D. Del. Feb. 27, 2013) (Shannon, J.) (initially two months; as rescheduled, approximately five months), ECF No. 707.  Approximately three months to estimate a single set of claims asserted by the IRS under the circumstances presented here is sufficient, particularly because of the extensive information provided by the Debtors to the IRS Audit Teams.

40.     Accordingly, this Court should establish the Debtors' requested procedures and Proposed Estimation Schedule to estimate the IRS Claims in a prompt and efficient manner.

## NOTICE

41.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the IRS; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: November 29, 2023
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*