```
 1                   UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3   IN RE:                          .  Chapter 11
                                     .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,       .
                                     .  (Jointly Administered)
 5                                   .
                                     .
 6                                   .
                                     .  Courtroom No. 5
 7                                   .  824 North King Street
                                     .  Wilmington, Delaware 19801
 8              Debtors.             .
                                     .  Wednesday, November 29, 2023
 9   . . . . . . . . . . . . . . . .    3:00 p.m.

10                         TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JOHN T. DORSEY
11                  UNITED STATES BANKRUPTCY JUDGE

12   APPEARANCES:

13   For the Debtors:          Adam Landis, Esquire
                               LANDIS RATH & COBB LLP
14                             919 Market Street, Suite 1800
                               Wilmington, Delaware 19801
15
                               Alexa Kranzley, Esquire
16                             SULLIVAN & CROMWELL LLP
                               125 Broad Street
17                             New York, New York 10004

18
     (APPEARANCES CONTINUED)
19
     Audio Operator:           Brandon J. McCarthy, ECRO
20

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email: gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the U.S. Trustee:      Jonathan Lipshie, Esquire
                                OFFICE OF THE UNITED STATES TRUSTEE
 3                              844 King Street, Suite 2207
                                Lockbox 35
 4                              Wilmington, Delaware 19801

 5  For the Official
    Committee of
 6  Unsecured Creditors:       Robert Poppiti, Esquire
                                YOUNG CONAWAY STARGATT & TAYLOR LLP
 7                              Rodney Square
                                1000 North King Street
 8                              Wilmington, Delaware 19801

 9  For the Ad Hoc
    Committee:                 Matthew Harvey, Esquire
10                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                1201 North Market Street
11                              Suite 1600
                                Wilmington, Delaware 19801
12
    Pro Se Litigant:           John Mallon
13

14

15

16

17

18

19

20

21

22

23

24

25
```

INDEX

| MOTION: | PAGE |
|---|---|
| Agenda | |
| Item 1: Debtors' Motion for Entry of an Order Authorizing and Approving (I) Procedures for the Sale or Transfer of the Trust Assets and (II) the Sale or Transfer of Such Trust Assets in Accordance with Such Procedures Free and Clear of any Liens, Claims, Interests and Encumbrances [D.I. 3660, filed on November 3, 2023] | 4 |
| Court's Ruling: | 18 |

1      (Proceedings commence at 3:04 p.m.)

2      (Call to order of the Court)

3          THE COURT: Good afternoon, everyone. Thank you. Please be seated.

5          Mr. Landis.

6          MR. LANDIS: Good afternoon, Your Honor. May I please the Court, Adam Landis from Landis Rath & Cobb on behalf of FTX Trading Ltd., and its associated debtors.

9          We have one matter on the agenda today, Your Honor, which may seem a little unusual considering how we have come to Court before. Item No. 1 is the debtors' motion for entry of an order approving procedures and subsequent sale in connection with those procedures of certain trust assets.

15         Ms. Kranzley from Sullivan & Cromwell will present the motion and argument today. I will yield the podium to her.

18         THE COURT: Thank you.

19         MS. KRANZLEY: Good afternoon, Your Honor. Your Honor, as Mr. Landis indicated, there is only one item on the agenda and that is the sale motion at Docket No. 3660 for entry of an order approving procedures for the sale of shares of certain third-party statutory trusts, and the sale of these assets free and clear of names, interests, claims, and encumbrances.

1       Your Honor, we have three declarations filed in
2 support of the motion: two with the original motion, one from
3 Mr. Ed Mosley attached as Exhibit B to the motion and one
4 from Mr. Stephen Kurz attached as Exhibit C to the motion,
5 and a supplemental declaration from Mr. Mosley filed in
6 connection with the debtors' reply at Docket No. 4108.  Both
7 Mr. Mosely and Mr. Kurz are in the courtroom today and at
8 this time the debtors request that the three declarations be
9 moved into evidence.
10       THE COURT:  Is there any objection?
11   (No verbal response)
12       THE COURT:  They are admitted without objection.
13   (Mosley declarations received into evidence)
14   (Kurz declaration received into evidence)
15       MS. KRANZLEY:  Thank you, Your Honor.
16       Your Honor, we received informal comments from the
17 United States Trustee and two filed objections to the motion.
18 We were able to consensually resolve both the informal
19 comments form the United States Trustee as well as the
20 limited objection from BlockFi.  These consensual resolutions
21 were reflected in the revised form of order filed at Exhibit
22 A to the debtors' reply of Docket No. 4107.
23       With respect to the U.S. Trustee's comments, we
24 added in additional reporting requirements with respect to
25 these sales in Paragraphs 2(a) and 2(e).

1     With respect to BlockFi we agreed to include
2  additional language in Paragraph 6 to clarify that to the
3  extent that BlockFi has a valid lien on the assets then
4  BlockFi will have a lien against the proceeds from the sale
5  of the assets with the same validity, priority, force and
6  effect subject to the party's rights, claims and defenses.
7  As the Court is aware, the debtors contest the validity of
8  BlockFi's liens, and that dispute will be resolved in due
9  course, but not in connection with this motion.
10         This leaves the remaining objector, Mr. John
11 Mallon.  Your Honor, we reached out to Mr. Mallon yesterday
12 and had a discussion in advance of the hearing to attempt to
13 resolve his objection, but unfortunately, we were not able to
14 do so.  We anticipate that we will continue to discuss with
15 Mr. Mallon, after this hearing, to attempt to resolve the
16 issues regarding his claim.
17         Your Honor, as set forth in the motion, we are
18 seeking to sell trust shares in five statutory trusts managed
19 by Grayscale and one statutory trust managed by Bitwise
20 Investment.  The debtors are seeking to monetize all of these
21 trust assets in anticipation of making dollarized
22 distributions in connection with a Chapter 11 plan.  Mr.
23 Mallon's objection is that he, as a customer of the debtors,
24 holds tokenized shares of the Grayscale Bitcoin Trust and
25 therefore has an interest in the debtors' Grayscale Bitcoin

1   Trust shares that the debtors are seeking to sell.  He holds
2   tokenized shares or spot tokens, but not the actual shares of
3   the Grayscale Bitcoin Trust.
4               Prepetition, certain of the debtors' non-US
5   customers on the FTX Exchange were able to hold tokenized
6   shares or spot tokens on their FTX Exchange accounts.  These
7   are tokens where the holder has an interest in the underlying
8   stock, but hold the token and not the actual underlying stock
9   themselves.  The underlying stock would have been custody by
10  a third party.  In other words, Mr. Mallon's digital asset
11  that he holds on his FTX Exchange account is the tokenized
12  share of Grayscale Bitcoin Trust, not the Grayscale Bitcoin
13  Trust assets which are themselves not digital assets.
14              Those digital assets that Mr. Mallon holds entitle
15  him to a claim for those tokenized shares.  Mr. Mallon, in
16  his untimely reply filed today, acknowledges and agrees with
17  these positions.  His objection and further reply focus on
18  the validity and the amount of his claim against the debtors.
19  These are not issues for today.  Mr. Mallon has a claim on
20  account of his tokenized shares and nothing in the debtors'
21  request to sell the trust assets affect his claim.
22              The debtors' position is that this is a dollarized
23  claim and Mr. Mallon will have the opportunity to object to
24  and to respond to this position in connection with allowance
25  of his claim.  Additionally, nothing in his claim prevents

1  the debtors from selling these assets that are held in the
2  debtors' name.  Mr. Mallon does not have any entitlement to
3  these particular assets.  He references this point in his
4  reply filed today.  In Paragraph 6 of his reply, he states
5  that he has a claim against the debtors' assets regarding
6  shares of Grayscale Bitcoin Trust and is not particular about
7  which exact shares are used to satisfy the claim. The shares
8  are fungible.
9          As a result, Mr. Mallon has not provided any
10 evidence of a property or security interest to the underlying
11 trust shares the debtors are seeking authorization to sell.
12 This is not a valid property or security interest on the
13 trust themselves.  His interest is in the value of the
14 tokenized shares.  And, Your Honor, the debtors submit that
15 Mr. Mallon is not prejudiced by the sale of the trust assets.
16         To the extent that Mr. Mallon does have any
17 specific interest or claim in the trust assets, Paragraph 6
18 of the proposed form of order provides that any such interest
19 or claim on the trust assets would attach to the proceeds
20 with the same priority, force and effect subject to the
21 debtors and all other party's rights, claims, and defenses.
22 Additionally, to the extent that Mr. Mallon does have any
23 specific interest in the trust assets, which the debtors
24 dispute, the debtors have satisfied Section 363(f) of the
25 Bankruptcy Code to sell these assets free and clear.  To the

1 extent that Mr. Mallon has an interest 363(f)(4) is satisfied
2 as his interest is subject to a bonafide dispute with the
3 debtors.
4 　　　　　Finally, to address one of the points raised in
5 Mr. Mallon's reply filed today regarding his claim in a
6 (indiscernible) operations whether or not there is a future
7 exchange is irrelevant for purposes of this sale motion.
8 Regardless of whether customers will have the option to take
9 distributions on any new exchange in connection with plan
10 distributions, the debtors' Chapter 11 plan provides for
11 dollarized distributions to all customers.  To the extent
12 that Mr. Mallon disputes this, this is not an issue for this
13 motion and Mr. Mallon will have the opportunity to raise
14 objections to this in connection with the plan at the
15 appropriate time.
16 　　　　　Your Honor, I'm happy to address any questions
17 that Your Honor.  We understand that both the creditors
18 committee and the ad hoc committees support our requested
19 relief today.
20 　　　　　THE COURT:  No questions at this time.  Let me see
21 if the committee and the ad hoc want to be heard.
22 　　　　　Well, first let me ask if BlockFi and the U.S.
23 Trustee want to be heard on their resolution of their
24 objections.
25 　　　　　MR. LIPSHIE:  Good afternoon, Your Honor.

1  Jonathan Lipshie with the U.S. Trustees Office.
2              As Ms. Kranzley said, we worked out our issues
3  with the debtor.
4              THE COURT:  Okay.  Thank you.
5              Anything from BlockFi?
6         (No verbal response)
7              THE COURT:  Let me hear from the committee.
8              MR. POPPITI:  Good afternoon, Your Honor.  For the
9  record Robert Poppiti from Young Conaway Stargatt & Taylor on
10 behalf of the official committee of unsecured creditors.
11             Ms. Kranzley is correct, Your Honor, the committee
12 does support the relief that is requested in the motion.  And
13 as to the issues that have been raised in Mr. Mallon's
14 papers, we would defer to the debtors on those, Your Honor,
15 as they are much closer to those, but we do support the
16 relief requested and believe it's appropriate.
17             THE COURT:  Thank you.
18             MR. HARVEY:  Good afternoon, Your Honor.  May I
19 please the Court, Matthew Harvey from Morris, Nichols, Arsht
20 & Tunnell on behalf of the ad hoc committee.
21             We too support the relief as requested by the
22 debtors.
23             THE COURT:  Thank you.
24             MR. HARVEY:  Thank you, Your Honor.
25             THE COURT:  Mr. Mallon, are you on the line?

1        (No verbal response)

2            THE COURT:  Mr. Mallon.

3            MR. MALLON:  Yes, Your Honor.  I am on the line.

4            THE COURT:  Can you turn on Your camera, please.

5        (Pause)

6            THE COURT:  Mr. Mallon, this is Your opportunity
7   to argue Your objection.

8            MR. MALLON:  Well, Your Honor, the points that Ms.
9   Kranzley raised in her presentation they are, essentially,
10  affording the same courtesy to myself and others similarly
11  situated that would argue our point further down the line in
12  terms of the proceeds of any sale is something that is, you
13  know, good in terms of the points that were underlying the
14  objection.

15           I think the thing that needs to be resolved is
16  that the value of proceeds that is attached to the sale
17  because, obviously, the argument goes to the fact that token
18  holders like myself, pursuant to the documentation upon which
19  we purchased the tokens, would like to redeem the underlying
20  share because, as investors would like to, kind of, take our
21  own destiny into our hands and deal with the asset that we
22  were promised by the debtors, companies before filed for
23  protection in the Court.

24           If the debtors are allowed to sell those assets we
25  don't, kind of, have that freedom to do what we want with our

1 shares.  The argument there is that the debtors are kind of
2 maximizing the value of the shares in an elevated market
3 dollarizing our claims or, at least, attempting to do so as
4 much lower prices and that is kind of inequitable from that
5 perspective because they're allowed to, essentially, maximize
6 the value of the estate on a dollarized basis but,
7 essentially, undermine legitimate claims and the underlying
8 assets that they're selling to make that money and
9 dollarizing the claims at the petition date.
10         So, that is, essentially, the crux of the
11 objection.  But as I have communicated to the debtors and in
12 my communications, definitely open to discussing however that
13 can be resolved in an equitable way, but if the debtors want
14 to sell GBTC at $31.50 and pay us out at $8 that just doesn't
15 seem right.  It doesn't seem appropriate especially given the
16 exact nature that the token products were purchased and the
17 documentation that is accorded that they could be free or
18 deemed at any time.
19         It doesn't seem equitable to allow that to
20 proceed, but not going to profess that I am learned in
21 bankruptcy procedure, but just from a lay perspective if that
22 could be resolved in a way that protects the interest that
23 was promised to token holders and allows value to be returned
24 to the estate then that is something that could be discussed.
25 And I hope, as Ms. Kranzley pointed out then we would like to

1  continue discussions, but the crux of the objection was the
2  disposal of assets that may be owed to customers.  In a way
3  that dollarization kind of doesn't do justice.
4           I am happy to add any more information if the
5  Court has any questions about this objection.  That would be
6  about the totality of what I have to add at this point.
7           THE COURT:  Mr. Mallon, how many of these tokens
8  do you hold and what is the value of them?
9           MR. MALLON:  If it pleases the Court, I prefer not
10 to submit that to open Court, but happy to engage in
11 discussions after the hearing about that.  But its pennies on
12 the value of what the estate is trying to make from these
13 sales.  I think in my reply today I did request that debtors
14 make available to generally interested customers the
15 information, essentially, about what underlying shares FTX
16 Europe and FTX Switzerland may have had, may currently have,
17 and what position within the estate those shares would be.
18          Also, perhaps a total valuation of customer claims
19 that are made up in part or in whole by tokens so we can get
20 a fuller picture of what is the liability here because its
21 not my intention to obstruct the proceedings and prevent
22 value being claimed at prices that these shares should be
23 sold at in my non-professional viewpoint.
24          So, it's not my desire to prevent the whole of
25 creditors in this FTX situation from getting as much as they

1  need to, but the point of the objection is this is a separate
2  customer class.  This is a customer class that had to do KYC
3  with FTX Switzerland, previously known as Canco GmbH.  It was
4  a separate KYC process.  You could not trade in these tokens
5  if you did not do this advanced KYC process to become a
6  customer of the broker.  And in my opinion that has to count
7  for something.
8              If the shares are in the estate this is a wholly
9  owned subsidiary of the FTX Trading group. If you look down
10 the chain it's completely controlled by the debtors.  They
11 made promises to customers that if you buy these tokens they
12 will be backed by the underlying asset.  Essentially, that
13 doesn't seem to have been the case.  If it is the case, we
14 would request information about what shares are held in the
15 estate because if it's the case that we can stop objecting to
16 motions and stop interfering with the process like we are now
17 because we know that our small claims relative to the estate
18 valuation are being protected then great.  We would happily
19 welcome resolving it in that fashion such that we know that
20 our interests can be protected because traders are patient
21 and they can wait a long time for things to play out.
22             If its -- it will be the certainty of knowing that
23 our claims will be protected in the way that they should be
24 because of the way that the products were sold, marketed, and
25 held out to customers and how customer funds were solicited

1  in a particular way with claims underlying being backed and
2  the KYC procedures. That can't be for nothing.
3            So, that would be the request at this time if the
4  motion is to proceed would be that genuine discussions are
5  had to stand this unique customer class and maybe perhaps,
6  you know, find a way to resolve this outside of the process
7  because I don't have the numbers.  I can't imagine as a
8  fraction of the ten billion this is a massive customer class.
9            THE COURT:  Thank you, Mr. Mallon.
10           MR. MALLON:  Thank you very much, Judge Dorsey.
11           THE COURT:  Ms. Kranzley.
12           MS. KRANZLEY:  Your Honor, just a few points in
13 response.  We are happy to continue discussing with Mr.
14 Mallon and to resolve issues resolving his particular claim,
15 but the debtors' view is that this is not a separate class.
16 This is the same customer entitlement claim. He has a digital
17 asset which is in the form of the tokenized share and that is
18 the claim against the debtors.  There is no separate
19 entitlement directly from his tokenized share to the actual
20 shares we are looking to sell.
21           We are not trying to determine the amount of his
22 claim today.  We are happy to continue discussing that. To
23 the extent that Mr. Mallon is correct that it's at $31
24 instead of some lower amount the debtors have lots of cash
25 that is available for distribution to all creditors under the

```
 1  plan.
 2              THE COURT:  Where are the tokenized shares held?
 3              MS. KRANZLEY:  They are currently held in a
 4  brokerage account, and brokerage accounts at ED&F Man and at
 5  Deltec.
 6              THE COURT:  And those are not being liquidated
 7  pursuant to this plan?
 8              MS. KRANZLEY:  Oh, sorry.  The tokenized shares
 9  themselves those are digital assets that, I think, are held
10  in -- the tokenized shares themselves are in cold storage.
11  Those are not being sold.
12              THE COURT:  Those are not being sold?
13              MS. KRANZLEY:  No.  The tokenized shares are not
14  being sold.
15              THE COURT:  So, anything that Mr. Mallon holds in
16  tokenized shares are going to remain in the cold wallet?
17              MS. KRANZLEY:  That is correct.
18              THE COURT:  Okay.  Thank you.
19              MR. MALLON:  Your Honor, could I make one more
20  point, please?
21              THE COURT:  Go ahead, Mr. Mallon.
22              MR. MALLON:  The tokenized shares are not really a
23  cryptocurrency in the sense that they had no value outside of
24  the FTX universe.  It wasn't like a bitcoin or an anthurium
25  that is fungible to the point where it could be transferred
```

1  and his held in cold storage.  As far as I am concerned the
2  tokenized shares, the GBTC token was GBTC USD.  That was not
3  something that could be withdrawn from FTX.  It was very
4  clear in the documentation that that was something that they
5  were looking at facilitating between exchanges in future if
6  the tokenized share market was to grow.  For example, finance
7  might have its own tokenized share market where you could get
8  a better price for Your token and you might transfer it there
9  to kind of arbitrage a different price opportunity.
10             GBTC USD as a token didn't really exist.  So, it
11 would be probably more appropriate to consider it as,
12 essentially, just a claim, like a claim on the estate because
13 I would question whether the GBTC USD token is held in "cold
14 storage" because I don't think that was possible under the
15 architecture of the tokens that existed. They were merely
16 representations on a screen, essentially, but the underlying
17 point is that they were in the documentation, promised, and
18 held out as being backed by the underlying shares.  Some or
19 all of which are proposed to be sold in the motion today.
20             I think that is an important distinction that
21 token holders, essentially, just have a claim on the
22 underlying slash a claim out of whatever values to be
23 determined in the future against the estate assets.  They are
24 not cryptocurrencies like bitcoin that can be sent to any
25 exchange and that would have any futility in any way other

1 than just being a claim against the estate.  I think that is
2 an important distinction to draw.
3          THE COURT:  Thank you, Mr. Mallon.
4          I am going to overrule the objection, Mr. Mallon,
5 because I think the debtors have presented evidence to show
6 that they have the ownership interest in the assets that they
7 are going to be proposing to sell.  At the best, you have
8 established that there may be a bonafide dispute as to the
9 ownership of the shares, but under the terms of the
10 Bankruptcy Code 363(f)(4) specifically, it allows for the
11 debtor to dispose of property of the estate if it is subject
12 to a bonafide dispute.  And the debtors can establish that,
13 in their business judgment, the disposal of those assets is
14 in the best interest of the estate overall.
15          The evidence submitted by the debtors supports
16 that conclusion that this is in the best interest of the
17 estate and it is the bonafide business judgment of the
18 debtors that disposal of these assets will benefit the estate
19 as a whole.  I take Ms. Kranzley at her word that she will
20 continue to talk to you about this issue and see if there are
21 other ways to resolve Your concerns, but at this point I am
22 going to approve the motion and allow the debtors to proceed
23 with the procedures that they have outlined for disposing of
24 these assets.
25          Any questions?

1          (No verbal response)

2               THE COURT:  Mr. Mallon, just one other thing: I
3   know you talk about that you are speaking on behalf of other
4   similarly situated parties, but because you are appearing pro
5   se and we have no class action at this point I can only allow
6   you to speak on behalf of Yourself and nobody else.  So, I
7   just want to make sure that you understand that.  You cannot
8   speak for other people in connection with these proceedings.

9               MR. MALLON:  Judge, apologies for my misspeaking.
10  Just a note that there are other people like this and more to
11  highlight that there is a customer class out there, but in
12  the future, I will only speak about myself.

13              THE COURT:  I understand.  I would suggest if you
14  can get other folks together that it would be in Your best
15  interest to try to retain counsel to help you through this
16  process because it can be complicated and onerous. It
17  certainly would be beneficial to you to have counsel to help
18  walk you through these issues.  It might also help with
19  discussions with the debtors if they are dealing with
20  knowledgeable counsel about the issues as well.

21              Anything else before we --

22              MS. KRANZLEY:  Nothing else, Your Honor.

23              THE COURT:  Okay.  Thank you all very much.  We
24  adjourned.  Everyone have a great weekend.

25

|   |   |   |
|---|---|---|
| 1 | CERTIFICATION | |
| 2 | I certify that the foregoing is a correct | |
| 3 | transcript from the electronic sound recording of the | |
| 4 | proceedings in the above-entitled matter to the best of my | |
| 5 | knowledge and ability. | |
| 6 | | |
| 7 | /s/ Tracey J. Williams | November 29, 2023 |
| 8 | Tracey J. Williams, CET-914 | |
| 9 | Certified Court Transcriptionist | |
| 10 | For Reliable | |