IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11068-JTD |
| | ) | Chapter 11 |
| FTX TRADING LTD., *et al.*, | ) | Judge John T. Dorsey |
| | ) | |
| Debtors. | ) | (Jointly administered) |
| | ) | |
| | ) | **Hrg. Date: Dec. 13, 2023, at 1:00 p.m. (ET)** |
| | ) | **Obj. Date: Dec. 6, 2023, at 4:00 p.m. (ET)** |

## UNITED STATES' OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER ESTABLISHING A SCHEDULE AND PROCEDURES FOR ESTIMATING CLAIMS FILED BY THE INTERNAL REVENUE SERVICE

The United States objects to the Debtors' *Motion for Entry of an Order Establishing a Schedule and Procedures for Estimating Claims Filed by the United States Department of the Treasury – Internal Revenue Service* ("Motion"). The IRS's claim is not unliquidated or contingent. 11 U.S.C. § 502(c)(1). Thus, estimation is not appropriate. Estimation procedures are appropriate when a claim cannot be calculated with sufficient precision, such as cases that require the Court to assign a value to a litigation claim. This is not the case here.

The IRS's claim of $24 billion is for income taxes, employment taxes, and penalties owed by the Debtors for the 2018 through 2022 tax years.[1] The claim is estimated because – as with many consumer and commercial cases – the IRS's audits of the Debtors for these tax years are ongoing, as is explicitly allowed under the Bankruptcy Code. 11 U.S.C. § 362(b)(9). As with all taxpayers, the Debtors have the burden to come forward via a claim objection or a proceeding under 11 U.S.C. § 505 and the rules that govern such proceedings to show their income, wages, deductions, and credits. The Debtors are seeking to sidestep the applicable procedures of tax

---

[1] The United States anticipates that the claim will be further amended to reclassify a portion of the priority claim that includes penalties to a general unsecured claim. The government is not looking for windfall, only to determine the correct amount of the tax liabilities.

litigation in a Chapter 11 case, but they have none of the external factors that would require estimation.

Further, although it is styled as a request for the Court to set estimation procedures, in essence, the Debtors are objecting to the IRS's claim alleging that it should be zero as reported on their tax returns. The Debtors want the Court to estimate the claim without the required due process of the Bankruptcy Rules. The Debtors have not put forward any evidence to rebut the IRS's presumptively correct proof of claim. By the Debtors' own admission, there were no corporate controls and "a complete absence of trustworthy financial information" at the start of this case. (Mot. ¶ 13.) Debtors have made similar assertions in declarations filed throughout this case. But now the Debtors contend that tax returns prepared by Ernst & Young ("EY") should be sufficient evidence that the IRS's claim is zero.

Notably, EY only prepared tax returns for the 2022 tax year, and they have been unable to substantiate the reporting on those returns even that one year despite the IRS requesting information for months. In contrast to the declarations filed in this case attesting to the unreliability and chaos the Debtors' books and records, the Debtors and EY refused to confirm the accuracy of the Debtors' tax returns for tax years prior to 2022. In fact, they noted on at least one of the 2022 tax return that they could only sign the return in good faith because they were not using any of the prior year purported or potential net operating losses.[2] In other words, EY has no faith in the prior year books and record or tax returns, yet the Debtors demand  the Court

---

[2] EY made the following statement in the 2022 tax return for Alameda Research LLC:

> Although Taxpayer is not utilizing any historic net operating losses ("NOLs") in the current year . . . . An evaluation of the appropriate amount and substantiation of the NOL is ongoing and is likely to result in an adjustment to the NOL carried forward and utilized in future tax return filings.

to accept these returns on their face in an improper attempt to shift the burden of proof to the Government to disprove the returns to which E&Y could not attest and returns based on irregular books and records.

Even if the Court finds that estimation procedures are appropriate here, the timeline suggested by the Debtors is wholly unreasonable and deprives the United States of the ability to obtain and analyze information that purports to substantiate the items reported by E&Y as well as for earlier years. The United States asked for (and continues to ask for) information that demonstrates the tax return reporting. For example, the Debtors filed their 2022 tax returns in August and September 2023 but to this date have been unable or unwilling to provide the IRS with substantiation for the losses reported on the returns because, they claim, of the volume of the data at issue. EY has indicated that the delay in providing the support is because the data is so voluminous (roughly 850 million transactions). Yet the Debtors ask the Court to give the United States less than 21 business days to obtain this support as well as support for several additional years, review it, analyze it, reach conclusions, and conduct depositions of the Debtors, its accountants, and potentially third parties.[3]

The United States has been in contact with the Debtors and seeking informal discovery since June 2023. While the United States sought this information, the Debtors refused to

---

[3] The hearing on this motion is set for December 13, 2023, and the Debtors request a deadline for fact discovery including depositions of January 16, 2024. Excluding federal holidays, this are only 21 business days.

meaningfully engage.[4]  They refused to provide financial information, pointing to the ongoing

audit to delay disclosure. The Debtors waited until now – two weeks from the date they plan to

file an amended plan – to file this Motion proposing a rushed schedule. The United States, which

already issued written discovery requests, will only have two weeks under the proposed

discovery schedule after it receives responses to discovery requests to process the data, review it,

and take fact depositions. The unnecessarily delayed and now truncated schedules is nothing

more than an attempt to put the United States into an evidentiary hearing without evidence. If

this Court finds that estimation procedures are appropriate here, the United States should be

allowed at least 6 months for discovery, which would still be an accelerated process.[5]

## ARGUMENT

### I.    Estimation Is Not Appropriate Because the IRS's Claim Is Not Contingent or Unliquidated.

The Bankruptcy Code provides that claims may be estimated when they are "contingent

or unliquidated." 11 U.S.C. § 502(c)(1). Contingent claims are ones that require some external or

future event, while unliquidated claims are not simply disputed but are ones that cannot be

readily ascertained, like a claim for emotional damages. *In re Heaton*, 2001 WL 1175099, at *1

(E.D. Pa. Sept. 28, 2001) (internal citations and quotation marks omitted), *aff'd*, 43 F. App'x 506

(3d Cir. 2002). The Debtors do not argue that the IRS's claim is contingent. Nor could they. All

---

[4] The United States fully acknowledges that counsel for the Debtors has provided information to the IRS and to other federal governmental entities, including the S.D.N.Y. criminal prosecutors. Counsel for the IRS has, in turn, requested some of that information from other federal governmental entities when appropriate. Counsel for the IRS's ability to obtain some of that information from other parts of the federal government does not obviate counsel for the Debtors' obligation to provide information in sufficient detail to warrant amendments to the IRS' proofs of claim.

[5] In addition, the United States requests the Debtors to be required to engage in mediation after they respond to the United States' first set of written discovery requests.

events giving rise to the taxes have already occurred. But they contend that the IRS's claim is unliquidated merely because the IRS estimated the amounts due. The IRS's claims are estimated because its audits are ongoing, but its claim is based on numerical calculations and determinable. Indeed, the Debtors' motion for estimation assumes that the Court can readily determine the claim to be zero.

Courts may use estimation procedures where the claim cannot be reasonably calculated, such as when the claim involves a pending litigation needed to set the amount of damages. In the cases cited by the Debtors where the Courts found that estimation was appropriate, almost all the claims at issue were ongoing litigation claims. *In re AMR Corp.*, 2021 WL 2954824, at *1 (Bankr. S.D.N.Y. July 14, 2021) (lawsuit filed by the EEOC against the Debtors); *In re Continental Airlines, Inc.*, 981 F.2d 1450, 1451 (5th Cir. 1993) (furlough pay claims by two groups of pilots); *In re G-I Holdings, Inc.*, 323 B.R. 583, 587 (Bankr. D.N.J. 2005) (asbestos related tort claims); *In re Lane*, 68 B.R. 609, 609-610 (Bankr. D. Haw. 1986) (state court litigation regarding real property); *In re Interco Inc.*,137 B.R. 993, 998 (Bankr. E.D. Mo. 1992) (retirement fund's ERISA claim).

Estimation procedures are not appropriate for past-year tax claims. Estimation sets claims based on applicable non-bankruptcy law. *E.g.*, *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982); *In re Frascella Enters., Inc.*, 360 B.R. 435, 458 n. 3 (Bankr. E.D. Pa. 2007). As explained below, the underlying non-bankruptcy law requires either the Court generally accepts the IRS's determination until the Debtors come forward and demonstrate their appropriate tax liability. Estimation is inappropriate as it sidesteps the longstanding placement of the burden on the debtor to properly establish their tax liability. *Welch v. Helvering*, 290 U.S. 111, 115 (1933) (Commissioner's tax determinations are entitled to the presumption of correctness and the

taxpayers have the burden of proving them wrong); *Duquesne Light Holdings, Inc. & Subs. v. Comm'r*, 861 F.3d 396, 403 (3d Cir. 2017) (same).[6] And the justification for estimation procedures that Debtors cite – avoiding the need to wait for the results of outside legal proceedings – relate only to claims based on pending litigation. (Motion at ¶ 24.)

As the Debtors correctly state, "a claim is liquidated if the amount due **can be** determined with sufficient precision." *Bennett v. Bon Secours Mercy Health, Inc.*, 2022 WL 2828991, at *3 (E.D. Pa. July 20, 2022) (emphasis added). Income tax and employment tax claims for past periods are calculated based on the income earned or wages paid. This information is available to debtors and the amount determinable, even if it may be costly for them to determine it. The tax system is based on self-reporting, and the Debtors, like all taxpayers, should be required to either: (i) litigate via an objection to proof of claim or a section 505(a) proceeding, or (ii) continue its audit and the IRS will continue to update the estimate of its proof of claim at appropriate intervals. *Cf. In re Dawes*, 652 F.3d 1236, 1239-1240 (10th Cir. 2011) (Gorsuch, J.) ("when the [Bankruptcy C]ode hasn't told us otherwise, our attention is rightly turned to the underlying tax law to see who owes what … our role is to apply that law, not to invent new rules of our liking"); *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) ("An income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer.") (cleaned up). They are not the type of claims that are the appropriate subject of estimation procedures. Thus, the Court should deny the Debtors' Motion.

---

[6] The Debtors wrongly represent that the Court in *In re Elrod* ordered an estimation hearing to determine the amount of the IRS's tax claim. (Motion ¶ 28.) In ruling on the IRS's motion to dismiss, the Court held that the IRS's claim was unliquidated but it did not consider whether an estimation hearing was appropriate. 178 B.R. 5, 7 n.2 (Bankr. N.D. Okla. 1995).

**II.    The Debtors Have Not Presented Any Evidence to Rebut the IRS's
Proof of Claim.**

Although the Motion is styled as a request to set estimation procedures, the Debtors are
essentially objecting to the IRS's proof of claim. They are seeking to use the estimation
procedure to escape the normal procedures specifically provided under the Bankruptcy Code for
tax litigation. The result is to avoid a burden of proof that they tacitly admit they cannot meet
and improperly shift the burden of proof to the United States without the discovery tools and due
process of the Bankruptcy Rules. The Debtors acknowledge that the returns and underlying
books and records are unreliable. Yet they seek to deprive the government of due process in the
name of a speedy resolution to these cases.

The Debtors have not filed an actual objection that the claim is "unenforceable" as a
matter of law under 11 U.S.C. § 502(b)(1) or moved for the Court to determine the tax liability
under the explicit procedures outlined in 11 U.S.C. § 505(a). They cannot support the position
that the IRS's claim should be zero without showing their income should not be taxed or they are
entitled to deductions to offset all of the income. They instead argue there was a fraud and
therefore must have been an overall loss. Yet the tax law does not allow for such a capacious
conclusion. It is black-letter law that illegal activity can lead to taxable income, and taxes accrue
with each year generally standing on its own. *See generally, James v. United States*, 366 U.S.
213, 219 (1961) (proceeds of criminal activities are generally taxable income); *United States v.
Skelly Oil Co*., 394 U.S. 678, 684 (1969) (each tax year stands on its own).

The burden of proof is on the Debtors to rebut the IRS's proof of claim. A proof of claim
"shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.
P. 3001(f); *see, e.g.*, *In re Lampe*, 665 F.3d 506, 514 (3d Cir. 2011). The challenger must rebut
the presumption of validity with affirmative proof, and more than a mere general assertion is

necessary to overturn the presumption. *See In re Colorado Corp.*, 531 F.2d 463, 467 (10th Cir. 1976); *In re Lampe*, 665 F.3d at 514.

Further, tax determinations by the IRS are afforded a presumption of correctness given the system of voluntary compliance where the taxpayer is in the best position to establish its income, losses, deductions, and credits. *See United States v. For D'Italia, Inc.*, 536 U.S. 238, 242 (2002). *See also United States v. Isley*, 203 Fed. Appx. 406, 407 (3d Cir. 2006) ("A tax liability determined by the IRS, including a deficiency assessment, is generally afforded a presumption of correctness."). This presumption of correctness also applies to *estimated* tax liabilities. *Greco v. United States*, 380 F. Supp. 2d 598, 612 (M.D. Pa. 2005) ("[I]t has long been held that the Commissioner may estimate assessments by 'any reasonable method,' and such estimates will be accorded the full presumption of correctness" (citing *Coleman v. United States*, 704 F.2d 326, 329 (6th Cir. 1983))). *See also In re Fidelity Am. Fin. Corp.*, 1990 Bankr. LEXIS 2910, **17-18 (Bankr. E.D. Pa. 1990) (citing *Matter of Resyn Corp.*, 851 F.2d 660 (3d Cir. 1988) (unassessed taxes presented in a proof of claim was presumed correct). This presumption of tax law is valid, effective, and applicable in bankruptcy. *See Raleigh v. Illinois Dep't of Rev.*, 530 U.S. 15, 20-21 (2000); *United States v. Lartz (In re Lartz)*, 301 B.R. 807, 810 (M.D. Pa. 2003).

The burden is on the Debtors to rebut the IRS's presumptively correct proof of claim. And they have put forward no challenge to the IRS's claim other than to say that the Debtors have filed tax returns which show losses, and that the IRS and Court should just accept these returns as filed. At the same time, in their Motion and repeatedly elsewhere the Debtors admit they had an unprecedented lack of corporate controls and financial records before this case was filed. No doubt the Court is also aware that the Debtors' pre-petition business operations

involved fraud and commingling. The United States quotes just a few of the Debtors' own filings

that have emphasized the severity these issues:

- As a result of the FTX Group's poor controls, and the inherent limitations of QuickBooks software for use in a large and complex business, the FTX Group did not employ QuickBooks in a manner that would allow it to maintain accurate financial records. ECF No. 1242-1, First Interim Report of John Ray III at p. 13.

- Bankman-Fried described Alameda as "hilariously beyond any threshold of any auditor being able to even get partially through an audit." *Id.* at p. 14.

- The FTX Group did not observe any discernable corporate formalities when it came to intercompany transactions. Assets and liabilities were routinely shuffled among the FTX Group entities and insiders without proper process or documentation. *Id.* at p. 17.

- Because the commingling and misuse of FTX.com customer deposits occurred for several years, it is extraordinarily challenging to trace the source of funding for particular FTX Group transactions, or to differentiate between FTX Group operating funds and FTX.com customer deposits. ECF No. 1704-1, Second Interim Report of John Ray III at p. 8.

- Following substantial forensic analysis, which remains ongoing, the Debtors have been able to identify certain transactions that appear clearly to have been funded in part with commingled customer deposits. These include political and "charitable" donations, venture investments and acquisitions, and the purchase of luxury real estate for senior FTX Group employees in the Bahamas. *Id.* at p. 23-24.

- Alameda executives failed to maintain appropriate records and did not implement sufficient internal controls or risk management. ECF No. 2642, Compl. against Allan Joseph Bankman and Barbara Fried ¶ 17.

- As detailed in the First Day Declarations, the Debtors' pre-filing operations were characterized by a complete failure of corporate controls and a total absence of trustworthy financial information. ECF No. 3329, Mot. of Debtors for Entry of an Order Pursuant to Bankr. R. 2004 and L.R. 2004-1 Auth. Examination ¶ 3.

On the one hand, the Debtors have represented to this Court that the Debtors' pre-petition

books and records were fraudulent, unreliable, or non-existent. On the other, they ask the Court

to require the IRS to take the Debtors' tax returns, based on that same information, at face value.

They ignore glaring issues with these returns. First, the tax returns for tax years 2018 through 2021 were prepared by the Debtors' pre-petition accountants, not by EY. And EY – which did not provide a declaration supporting the Motion – has told the IRS that these tax returns need to be restated but EY has yet to file amended returns or to provide support for the currently filed returns. Indeed, as noted above in footnote 2, the Debtors and EY stated in the 2022 tax returns that they were not relying on the prior year's net operating loss reports. Yet the Debtors think these returns should be good enough for this Court's estimation procedure. Even without the fraud, comingling, and other issues involved with these particular tax returns, tax returns are generally not considered sufficient evidence for a debtor to prove income, losses, deductions, or credits. *E.g.*, *In re Kelly*, 2021 WL 5917979 at *7 (N.D.N.Y. Dec. 14, 2021) (a taxpayer cannot submit their tax returns alone as "credible evidence" of deductions or income).

Second, even though EY prepared tax returns for 2022, which were filed in August and September 2023, they have not provided the IRS with the **substantiation** for the reporting on these tax returns. EY almost certainly knew that the IRS would be auditing these returns when they prepared them. And even with that knowledge, they have yet to provide the IRS support for the returns, months after the returns were filed. These filed tax returns alone cannot rebut the IRS's proof of claim. And the Debtors' suggestion that they would be sufficient is completely at odds with their prior representations to the Court. Thus, the Court should deny the Debtors' Motion.

**III. The Timeline Suggested by the Debtors is Unreasonable.**

Even if the Court finds that setting estimation procedures is appropriate, the schedule proposed by the Debtors is wholly unreasonable.

The Debtors have yet to amend their tax returns for the years before 2022, despite acknowledgment that they must do so. The IRS filed its proofs of claim in April 2023. Counsel for the United States has been in contact with the Debtors since June 2023. The United States has repeatedly attempted to obtain substantiation for the Debtors' position that the IRS's claim should be zero. But the Debtors have refused to provide any of the underlying information and have done nothing but make sweeping legal conclusions.

For example, the Debtors have made the bald assertion that their largest entities – FTX Trading Ltd and Alameda Research – are foreign corporations and are not subject to U.S. income tax liability. When the United States requested specific information regarding whether these entities operated through agents in the U.S. and whether they sold products or services in the U.S., the Debtors refused to respond beyond providing the company's articles of incorporation to show some entities are foreign. Even then, simply saying a company is foreign is insufficient; a foreign company may be subject to taxation in certain situations. *See*, *e.g.*, 26 U.S.C. §§ 881-882. And at least some of the companies – like Alameda Research – are U.S. corporations. Even without considering the comingling of funds, Alameda Research potentially has a U.S. tax liability. Given the comingling of funds, Alameda may owe tax on funds titled to other companies. The Debtors' statements to this Court in these cases, some of which are cited above, support the U.S. taxation of Alameda's control of misappropriated deposits.

While the United States attempted to obtain information from counsel for the Debtors, the IRS also diligently worked with, and continues to work with, EY to audit the Debtors' tax returns. Although EY provided many documents to the IRS, the IRS has yet to receive crucial support including the substantiation for the losses claimed on the Debtors' 2022 tax returns prepared by EY. As previously noted, Debtors maintain that one of the main reasons for the

delay in providing the support for the 2022 tax returns is the volume of the data at issue. EY

knew that the IRS would be auditing the 2022 tax returns when they prepared and filed the

returns in August and September 2023. Yet four months later, they have still not provided the

underlying support for those returns to the IRS. Despite this, the Debtors now ask this Court to

give the United States a mere 21 business days to obtain and review all this information.

The Debtors could have filed this Motion with the Court months ago when there would

have been more time to litigate the issues and conduct discovery by February 2024. They did not

do so. Instead, they chose to manufacture an emergency to hamstring the Court in its efforts to

get a plan confirmed quickly at the expense of due process. Now they ask the Court to find that

their proposed "truncated" estimation process is justified and that the remaining fact discovery is

"minimal."

Debtors offer no support that a truncated procedure could feasibly and realistically

determine, or even estimate, the Debtors' correct tax liabilities. Nor do the Debtors offer support

that needed discovery is minimal. The Debtors have yet to provide amended tax returns. The

support for the Debtors' capital gains and losses for a single tax year (2022) and for a single

entity (Alameda Research) was estimated by EY as being around 850 million transactions. Nor

can it be said 850 million transactions for one line on the tax return showing a loss for one year

for one taxpayer is "minimal," especially when the United States's current claim involves

multiple years and multiple entities.

The United States promptly issued discovery requests to the Debtors following the filing

of their Motion and requested that the Debtors provide accelerated responses. Fed. R. Civ.

P. 33(b)(2), 34(b)(2)(A) (authorizing the court to order shorter response periods). A copy of

these discovery requests is attached as Exhibit A. Even if the Debtors provide full and complete

responses within 14 days as requested by the United States, the United States will have a mere 21 business days to review all the information and schedule and conduct any necessary depositions. This is not a truncated schedule; it is an impossible one.

The United States requests that if the Court finds that estimation procedures are appropriate that it set a schedule that provides the United States at least 6 months of fact discovery. The United States does not believe expert witnesses are necessary in this case, so does not believe any deadlines need to be set to account for expert discovery. Thus, the United States believes any evidentiary hearing should occur two months after the close of fact discovery.[7]

## CONCLUSION

The United States respectfully requests the Court deny the Debtors' motion to estimate.

DATE:  December 6, 2023,

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/Stephanie A. Sasarak*
ELISABETH M. BRUCE
STEPHANIE A. SASARAK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
202-598-0969 (t)
202-514-6866 (f)
Elisabeth.M.Bruce@usdoj.gov
Stephanie.A.Sasarak@usdoj.gov

*Counsel for the United States of America*

---

[7] It is also possible that upon receipt and review of the substantiation for the items on the returns that the IRS will, as it already did for 2023, amend the claim to reflect a lower (or even zero) liability for each of the years and entities on the proof of claim.

**CERTIFICATE OF SERVICE**

I certify that the foregoing Objection was filed with the Clerk of the Court on December 6, 2023, using the CM/ECF system, which will send notification of such filing to all parties appearing in said system.

Date: December 6, 2023,

/s/ Stephanie A. Sasarak
STEPHANIE A. SASARAK
