## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  December 13, 2023 at 1:00 p.m. (ET)** |

## REPLY IN FURTHER SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER ESTABLISHING A SCHEDULE AND PROCEDURES FOR ESTIMATING CLAIMS FILED BY THE UNITED STATES DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

The Debtors[2] hereby submit this reply in further support of the *Motion of Debtors for Entry of an Order Establishing a Schedule and Procedures for Estimating Claims Filed by the United States Department of the Treasury – Internal Revenue Service* [D.I. 4204] (the "Motion" or "Mot.") and in response to the *United States' Objection to Debtors' Motion for Entry of an Order Establishing a Schedule and Procedures for Estimating Claims Filed by the United States Department of the Treasury – Internal Revenue Service* [D.I. 4509] (the "Objection" or "Obj.").

## PRELIMINARY STATEMENT

1.       In its Objection, the United States makes clear that it is treating the Debtors like any other large and long-standing corporate group and that it intends to take its time with its audit and claims process.  In doing so, the United States ignores a number of key, basic facts about

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

these Debtors.  *First*, the Debtors operated for a very short period of time—roughly three years.  *Second*, during their very short lifespan, the Debtors never distributed dividends or earnings.  *Third*, the Debtors never earned anything anywhere near amounts that could support the IRS Claims for $24 *billion* in taxes.  In fact, the Debtors incurred billions of dollars in *losses*.  *Fourth*, the Debtors are liquidating and as such are not conducting any ongoing business activities other than those necessary to support the liquidation.  *Fifth*, and most importantly, these cases present a zero-sum game.  The only source of recovery for the IRS is by taking recoveries away from victims.  As there is no basis to assert any tax claim against the Debtors, the IRS's reliance on its own processes only serves to delay distributions to those truly injured.  It is within this undisputed factual framework that the Motion—and the Objection—must be viewed.

2.        In the Objection, the United States notably does not even attempt to defend the IRS's initial claims for $43 billion, nor its now-pending claims for $24 billion; in fact, it puts forward no theory whatsoever by which FTX could have *even one dollar* of additional prepetition tax liability—much less anything close to the enormous, unsubstantiated amounts asserted by the IRS.  There is simply no basis to support the IRS's meritless claims that the Debtors owe tax in an amount that is orders of magnitude greater than any income the Debtors ever earned and that would effectively prevent most of FTX's creditors—themselves victims of fraud—from obtaining any meaningful recovery.  It just makes no sense that a company that *lost* many billions of dollars would have a substantial tax liability, much less one for $24 billion.

3.        Rather than provide the Court with any basis for a $24 billion tax liability, the United States argues that the IRS Claims are not subject to estimation at all.  According to this theory, the IRS's tax claims—which it cannot defend, explain, or calculate with any precision at all—are liquidated claims that should be the subject of an objection and tax litigation that could

take years.  That is wrong on the law.  As even the United States concedes, the IRS Claims are not readily ascertainable.  That means the IRS Claims are "unliquidated," and because no one disputes that any attempt to liquidate them would "unduly delay the administration of the case," estimation is *required* under 11 U.S.C. § 502(c).

4.     The United States also contends that estimation is inappropriate because the IRS's unexplained $24 billion in claims are presumptively correct and the Debtors have the burden of disproving them.  This *Alice in Wonderland* argument has no support in the law.  Just like any other claimant in a Chapter 11 bankruptcy, the IRS must provide a specific basis for its claims, with supporting documentation, to which the Debtors can respond.  The Debtors are not expected to disprove that an office equipment vendor who says it provided an unspecified number of desk chairs is owed $24 billion, and the same is true for a supposedly massive tax liability that no one (including the IRS) can explain or support.

5.     Finally, the United States tries to cloud the record and give the impression that many complicated issues and factual determinations are necessary to determine the Debtors' tax liability and will take many months to resolve.  But this issue is not complicated at all.  The Debtors petitioned for bankruptcy because they *lost* massive sums of money, and those enormous losses do not give rise to *any* tax liability, much less a multi-billion dollar tax liability.  There is no point in taking many months to comb through records to determine whether the losses were closer to $10 billion or $12 billion (as opposed to the $11 billion loss calculated by EY and shown on the Debtors' tax returns), because that will never result in a determination that the Debtors *made* money on which they owe taxes.  These cases should not be delayed by an IRS process that is akin to determining whether a shipwreck sits at 1,000 feet or 3,000 feet below sea level.  The import is the same—the ship is underwater.  If the IRS believes there is any articulable basis to assess

additional tax liability for prepetition periods, it should promptly come forward with a clear articulation of why.  Estimation provides the IRS with that opportunity.

6.     There is no reason, as the United States urges, to extend the schedule for an estimation hearing by many months and hold up confirmation of the Plan.  Tellingly, the United States does not deny that, as set forth in the Motion, the Debtors and EY have been in communication with both the IRS and the U.S. Department of Justice for months.  The Debtors, directly and through EY, have responded to over 2,300 IRS information requests, providing voluminous documentation to help the IRS determine whether there is a basis for focused and substantiated claims against the Debtors.  The delivery of documentation and information is nearly complete (the Debtors will complete production of *all* the documents and information that the IRS requested by December 15, except for a single recent request for which the IRS agreed documents could be produced later, which will be produced by January 15), and thus there is no reason to have an additional lengthy fact discovery period to address tax issues the IRS has already been evaluating for many months.  It is time for the IRS's enormous claims to be resolved, so that the Plan can be confirmed and assets distributed to the victims of the FTX fraud.

## ARGUMENT

### I.     The IRS Claims Can Be Estimated Under Section 502(c).

7.     The Debtors and the United States agree that the Court can and should determine the amount (if any) owed by the Debtors to the IRS.  (*Compare* Mot. ¶ 5 ("Section 505(a) of the Bankruptcy Code permits this Court to determine prepetition tax liabilities.") *with* Obj. at 6 ("[The IRS's claim may be] litigate[d] via . . . a section 505(a) proceeding").)  The parties only disagree about whether estimation under Section 502(c) is the appropriate procedure for the Court to determine the amount owed.  It is.  Indeed, estimation is required where, as here, the claims are "unliquidated" and liquidation "would unduly delay the administration of the case."  11

U.S.C. § 502(c); *see In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007)

("Estimation by the Court is mandatory, . . . [when] fixing or liquidation of the claim would unduly

delay the administration of the case.").  The United States does not contest that determining the

tax owed by the Debtors through mechanisms other than the Debtors' proposed schedule would

"unduly delay the administration of the case" (*see* Mot. ¶¶ 33-36); accordingly, estimation is

required by Section 502(c) if the IRS Claims are "unliquidated."

8.      A liquidated debt is one "that is readily ascertainable as to value."  *In re*

*Digital Networks N. Am., Inc.*, 2018 WL 3869599, at *6 (Bankr. D. Del. Aug. 13, 2018).  To be

"ascertainable," the debt "must be capable of ready determination from a simple hearing, rather

than an extensive and contested evidentiary hearing in which substantial evidence may be

necessary to establish amounts or liability."  *In re Baird*, 228 B.R. 324, 331 (Bankr. M.D. Fla.

1999).[3]

9.      The United States does not seriously contend that the IRS Claims are

"readily ascertainable."  Indeed, the United States concedes that "[i]t is possible . . . that the IRS

will, as it already did for 2023, amend the claim to reflect a lower (or even zero) liability for each

of the years and entities on the proof of claim."  (Obj. at 13 n.7.)  The vast range of possible

valuations asserted by the IRS—between $0.00 and $43 billion, with the IRS's current guess at

$24 billion—underscores that the value of the IRS Claims is entirely speculative, rendering them

ripe for estimation.  *See In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989) (bankruptcy court "did not

abuse its discretion" by estimating claims of a "highly speculative nature").  And the United States

---

[3]     *See also United States* v. *May*, 211 B.R. 991, 996 (Bankr. M.D. Fla. 1997) (whether a debt is subject to "ready
determination" turns on "'the distinction between a simple hearing to determine the amount of a certain debt, and
an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish
amounts or liability'") (quoting *In re Harbaugh*, 153 B.R. 54, 55 (Bankr. D. Idaho 1993)).

also concedes that the IRS Claims cannot be determined "from a simple hearing, rather than an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability," *In re Baird*, 228 B.R. at 331; the United States says that a hearing should take place after "at least 6 months of fact discovery" that involves examination of (for 2022) "around 850 million transactions" (Obj. at 12-13).[4]  *See, e.g.*, *In re Hustwaite*, 136 B.R. 853, 855 (Bankr. D. Or. 1991) (a claim is unliquidated when it "could involve not just a period of months, but years" to determine).  Those concessions establish for purposes of Section 502(c) that the IRS Claims are "unliquidated."

10.     The United States nonetheless argues that the IRS Claims should categorically be considered liquidated (and thus inappropriate for estimation under Section 502(c)) because the ultimate determination of tax owed is "calculated based on the income earned or wages paid" and such "information is available to debtors."  (Obj. at 5-6.)  This sort of argument could be made for any tax claim, but that does not mean that tax claims are always straightforward—far from it.  As one court explained, estimation is appropriate to address tax claims because determining taxable income requires "judgment, discretion, determination of facts, and construction of the Internal Revenue Code."  *In re Elrod*, 178 B.R. 5, 7 (Bankr. N.D. Okla. 1995);[5] *see also United States* v. *Barretto*, 708 F. Supp. 577, 582 & n.5 (S.D.N.Y. 1989) (IRS process for

---

[4]    As explained in the Motion (Mot. ¶¶ 2, 14, 31) and above (¶ 5), there is no need to engage in detailed analysis of these transactions given that any income from any specific transaction is dwarfed by the Debtors' $11 billion of losses.  But the IRS's contention that these millions of transactions are relevant to calculating its claims demonstrates indisputably that the IRS Claims are not "ascertainable" through a "simple hearing" without factual determinations.  *In re Baird*, 228 B.R. at 331.

[5]    The United States asserts that the Debtors "wrongly represent" *Elrod* and contend that the court in that case "did not consider whether an estimation hearing was appropriate."  (Obj. at 6 n.6.)  That is incorrect.  The *Elrod* court ordered that it would "hold an evidentiary hearing to determine the amount of the tax claim" pursuant to Sections 502 and 505 of the Bankruptcy Code.  *Elrod*, 178 B.R. at 7 n.2.

assessing tax "involve[s] the exercise of judgment and discretion"). That is why (as the Objection does not acknowledge) the estimation procedure has often been used for IRS tax claims.[6]

## II.    The Debtors Do Not Bear the Burden to Disprove the IRS's Unsubstantiated Claims.

11.    Implicitly admitting that the IRS Claims are too speculative to be considered liquidated (or even explained), the United States argues that estimation is inappropriate because its threadbare proofs of claim should be presumed valid and the Debtors have the burden to come forward with "affirmative proof" rebutting them. (Obj. at 7.) But a proof of claim "constitute[s] prima facie evidence of the validity and the amount of the claim" only if it "alleges sufficient facts to support liability," *In re Lampe*, 665 F.3d 506, 514 (3d Cir. 2011), and is accompanied by "sufficient documentation." *Campbell* v. *Verizon Wireless S-CA*, 336 B.R. 430, 432 (B.A.P. 9th Cir. 2005).

12.    What the IRS has filed here [D.I. 4204-4] comes nowhere close to meeting those requirements to warrant presumed validity; it is instead "nothing more than a place holder until the IRS c[an] determine whether it ha[s] a claim against the Debtors." *In re Indust. Comm. Elec., Inc.*, 304 B.R. 24, 33 (Bankr. D. Mass. 2004), *rev'd on other grounds*, 319 B.R. 35 (D. Mass. 2005). The IRS's proofs of claim are little more than a two-page list of (very large) numbers with no explanation of how they were arrived at or what they are based on, other than the conclusory statement that "[t]he ground of liability is taxes due under the internal revenue laws of

---

[6]    *See, e.g.*, *In re Sea Launch Co., LLC*, 2011 WL 2270407, at *1 (D. Del. June 8, 2011) (dismissing United States appeal of confirmed plan after estimation hearing regarding IRS claim at which the bankruptcy court "estimated the claim for potential liability for Section 1446 withholding taxes to be no more than $250,000"); *Elrod*, 178 B.R. at 7 (holding that the IRS's proof of claim for an "estimated liability" of $638,281.75 was "unliquidated" and scheduling an estimation hearing pursuant to Sections 502(c) and 505); *Matter of King*, 102 B.R. 184, 187 (Bankr. D. Neb. 1989), *rev'd on other grounds*, 137 B.R. 43 (D. Neb. 1991) ("Section 502(c) requires estimation in certain circumstances; it does not prohibit estimation in circumstances other than those set forth in the section. . . . [D]ebtors' objection to the estimation of a claim of the IRS is overruled.").

the United States." [D.I. 4204-4.]  Such a "minimal explanation of the [c]laim's . . . components"
prevents the IRS's proofs of claim from obtaining "the prima facie evidentiary presumption" to
which a properly supported proof of claim would be entitled.  *In re Short*, 651 B.R. 587, 600 (D.
Utah 2023)*.*

        13.    Of course, the Debtors cannot come forward with "affirmative proof" to
rebut a theory of tax liability that has never been articulated.  Nothing in the IRS's proofs of claim
states why the Debtors supposedly owe the amounts claimed to be due; yet the IRS is asking the
Court to order the Debtors to come forward with proof that they did not earn tens of billions of
more dollars in income than EY—a nationally recognized accounting firm with particularly
specialized knowledge in accounting for cryptocurrency transactions—says they did in signed tax
filings supported by reams of material.  If the IRS has determined that there are errors in any of
the Debtors' returns, it should identify those errors so that the Debtors can respond.  Instead, the
United States asks the Debtors to prove a negative (that they do not owe more prepetition taxes)
when the IRS has not even come forward with any articulation of a theory or amount of tax
liability.[7]  The Court should reject the United States' attempt to make the burden of proof
"improperly rest[] with the [Debtors] to disprove an unsubstantiated claim."  *Caplan* v. *B-Line,
LLC*, 572 F.3d 838, 840-41 (10th Cir. 2009).

        14.    The United States cites a few cases for the proposition that "tax
determinations by the IRS are afforded a presumption of correctness," and "[the] burden is on the
Debtors to rebut the IRS's presumptively correct proof of claim."  (Obj. at 8.)  But the IRS can

---

[7]    The United States hints at two vague theories for how the Debtors *potentially* could have tax liability:  (1) "illegal
activity can lead to taxable income"; and (2) because of the possibility of unnamed "agents in the U.S.," certain
non-U.S. Debtors could be subject to U.S. taxes.  (Obj. at 7, 11.)  But the United States does not explain how
even these speculative theories would justify any tax liability, much less $24 billion.  Even if any FTX business
engaged in illegal activity and the income of non-U.S. entities were taxable, that would not explain how
companies that collectively *lost* billions of dollars could owe $24 billion in taxes.

cite no authority that a massive placeholder—much less one completely unsupported by explanation or documentation—is entitled to this "presumption of correctness." To the contrary, it obviously is *not* a correct estimation of the Debtors' tax liabilities, given that the Debtors earned far less than $1 billion in their entire existence. In all but one of the cited cases, a formal assessment was made after the IRS provided a tax assessment upon completion of its audit process.[8] In the remaining case, the court expressed grave doubts about the proposition that a presumption of prima facie validity applies where, as here, "there has been no prepetition assessment" and the IRS's ability to assess tax was impaired by the unavailability of necessary "books and records of the taxpayer." *In re Fidelity Am. Fin. Corp.*, 1990 WL 299418, at *6-7 (Bankr. E.D. Pa. Feb. 8, 1990).[9] Here, the IRS Claims for $24 billion are obviously not a correct estimation of the Debtor's tax liability, given that the Debtors earned far less than $1 billion in their entire existence.

15.     Estimation gives the United States an opportunity to provide the Court (and the Debtors) with prima facie evidence of a valid claim. After the IRS provides the required specific allegations and documentation, *Campbell*, 336 B.R. at 432; *In re Lampe*, 665 F.3d at 514, the Debtors will be able to respond and the Court can evaluate and estimate the IRS Claims.[10] Until that time, the Debtors cannot be required to prove a negative—*i.e.*, to prove that they do not

---

[8]   *See United States* v. *Fior D'Italia, Inc.*, 536 U.S. 238, 241-43 (2002) (presumption attached following a formal assessment of tax due); *Raleigh* v. *Ill. Dep't of Rev.*, 530 U.S. 18 (2000) (same); *Resyn Corp.* v. *United States*, 851 F.2d 660, 661 (3d Cir. 1998) (same); *Greco* v. *United States*, 380 F. Supp. 2d 598, 608-09 (Aug. 4, 2005 M.D. Pa.) (same); *In re Lartz*, 301 B.R. 807, 810 (M.D. Pa. 2003) (same); *In re Kelly*, 2021 WL 5917979, at *1 (Bankr. N.D.N.Y. Dec. 14, 2021) (presumption attached after "the IRS . . . completed its examination").

[9]   The Court merely assumed the IRS was entitled to the presumption and still held the taxpayer met his burden of persuasion. 1990 WL 299418, at *7-8.

[10]   The United States suggests that it is willing to provide that detail when it amends its claims. (*See* Obj. at 13 n.7.) The Debtors expect that the parties can agree on the nature and timing of this submission after the Court adopts a schedule; if there is a dispute, the parties can address it with the Court.

owe billions in taxes by purporting to devise and then refute each of an infinite number of theories of tax liability that might conceivably be argued by the United States.

## III.    The Court Should Adopt the Debtors' Proposed Schedule.

16.    "Estimation is effective . . . for enabling bankruptcy cases, and Chapter 11 cases in particular, to move forward and to get recoveries into the pockets of creditors without delaying the whole process as a consequence of a limited number of very complex claims." *In re AMR Corp.*, 2021 WL 2954824, at *3 (Bankr. S.D.N.Y. July 14, 2021).  Here, estimation is needed to prevent the IRS Claims from completely subverting the Debtors' progression of these Chapter 11 Cases and indefinitely delaying distributions to victims.  There is no dispute that the fixing of the amounts of the IRS Claims through further IRS investigation and litigation of the Debtors' objections—or even the eight-month estimation schedule the United States has proposed (Obj. at 13)—would delay and interfere with confirmation of the Plan.  (*See* Mot. ¶¶ 33-36.)  The Court should adopt the Debtors' proposed schedule (Mot. ¶¶ 22-23), so that the Plan can be confirmed and victims paid.

17.    The United States asserts that the IRS needs all manner of additional information before it can be in a position to determine the value of its claims.  We disagree.  In addition to the detailed tax returns and their numerous supporting schedules, the Debtors—through their accountants at EY—have already provided an extraordinary amount of discovery materials in response to both document and information requests from the IRS.  (*See* Shea Decl. ¶ 6-8.)[11] The Debtors have responded to over 2,300 requests from the IRS over the past year, making voluminous document productions months ago.  (*Id.*)  In addition, representatives of EY have had ongoing calls with the IRS to provide additional information and respond to IRS questions.  (*Id.*

---

[11]    "Shea Decl." refers to the Declaration of Thomas M. Shea, filed contemporaneously herewith.

¶ 7.)  Notably, the United States did not dispute any this even though it was set forth in detail in the Motion.  (*See* Mot. ¶¶ 15-17, 38.)

18.     The United States also asserts that the Debtors have yet to produce substantiating documentation for the returns that the Debtors filed for the tax year ending October 30, 2022.  (*See* Obj. at 11-12.)  The United States omits, however, that the IRS has not even opened an audit for that tax year, and thus had not requested those materials until very recently.  After the IRS confirmed that it sought the same documentation for 2022 (*i.e.*, the same 2,300 information document requests that it had made for prior years), the Debtors and EY collected those materials; they will be produced by December 15.  (Shea Decl. ¶ 11.)

19.     The United States does not dispute that, as set forth in the Motion (¶¶ 38-39), courts have frequently adopted estimation schedules similar to the Debtors' proposed schedule.  Nor does the United States cite *any* authority to support its elongated schedule.  (Obj. at 10-13.)  And the United States says that it "does not believe expert witnesses are necessary in this case" (Obj. at 13), obviating the need for even the time allotted for experts in the Debtors' Proposed Schedule (Mot. ¶¶ 22-23).

20.     There is no dispute that the IRS has already received (through detailed tax returns and in response to information document requests) an immense amount of documentation and information about the Debtors' taxes.  It is common ground that the Debtors lost billions of dollars, and thus there should be no basis to assess any additional prepetition tax liability and certainly nothing like the $24 billion in unexplained claims the IRS has submitted.  It is very likely that the Court will be able to address the IRS Claims as a *legal* matter, and thus any factual issues requiring discovery and an evidentiary hearing will be minimal or non-existent.  The Court should

adopt the schedule proposed by the Debtors so that the parties can brief the issues and present their

positions at an evidentiary hearing by the end of February 2024 in advance of confirmation.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons and those set forth in the Motion, the

Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached

as <u>Exhibit A</u> to the Motion, and (b) grant such other and further relief as is just and proper.

Dated:  December 10, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Marc De Leeuw (*pro hac vice* pending)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      deleeuwm@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*