## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| ALAMEDA RESEARCH LTD.,WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC., | |
| Plaintiffs, | |
| - against - | Adv. Pro. No. 23-50381 (JTD) |
| SAMUEL BANKMAN-FRIED, NISHAD SINGH, and ZIXIAO "GARY" WANG, | |
| Defendants. | |

**ORDER (A) AUTHORIZING THE PLAINTIFFS TO ENTER INTO SETTLEMENT
AGREEMENT WITH SAMUEL BANKMAN-FRIED, (B) APPROVING THE
SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Alameda Research Ltd., West Realm Shires,

Inc., and West Realm Shires Services, Inc. (together, the "Plaintiffs"), for entry of an order (this

"Order") (a) authorizing the Plaintiffs to enter into the Settlement Agreement with Samuel

Bankman-Fried, which is attached hereto as Exhibit 1, (b) approving the Settlement Agreement,

and (c) granting related relief; and this Court having jurisdiction to consider the Motion pursuant

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and this Court having found and determined that the relief set forth in this Order is in the best interests of the Plaintiffs and their estates; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Plaintiffs are authorized to enter into the Settlement Agreement.

3.      The terms of the Settlement Agreement are approved in their entirety.

4.      The failure to specifically include or reference any particular term or provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such term or provision.

5.      The Plaintiffs are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

6.      The requirements set forth in Bankruptcy Rule 6004(a) are waived.

7.      This Order is immediately effective and enforceable, notwithstanding the possible

applicability of Bankruptcy Rule 6004(h) or otherwise.

8.      This Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or related to the Motion or the implementation of this Order.


Dated: _____
        Wilmington, Delaware

_____
THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

### Stipulation

## EMBED SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement") is made and entered into as of December 21, 2023 (the "Settlement Date") by (a) Alameda Research Ltd., West Realm Shires, Inc., and West Realm Shires Services, Inc. (the "Plaintiffs"), on the one hand, and (b) Samuel Bankman-Fried ("Bankman-Fried"), on the other hand.  The Plaintiffs and Bankman-Fried (each a "Party" and together, the "Parties") hereby agree as follows:

### RECITALS

WHEREAS, on November 11 and November 14, 2022, the Plaintiffs each filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered in the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.);

WHEREAS, on May 17, 2023, the Plaintiffs commenced Adversary Proceeding No. 23-50381 (the "Adversary Proceeding") in the Bankruptcy Court against Bankman-Fried and others by filing a complaint asserting fraudulent transfer and preference claims, (each a "Fraudulent Transfer Claim" or "Preference Claim" and together, the "Claims") that sought, among other things, to avoid and recover certain transfers made by the Plaintiffs to Bankman-Fried, including any transfers to Bankman-Fried of West Realm Shires, Inc. common stock in connection with the below-referenced Acquisition, and to avoid any obligation by West Realm Shires, Inc. to transfer such common stock;

WHEREAS, Plaintiffs allege in the Adversary Proceeding that, on June 10, 2022, West Realm Shires, Inc. and Embed Financial Technologies Inc. executed an agreement and plan of merger pursuant to which West Realm Shires, Inc. would acquire Embed Financial Technologies Inc. (the "Acquisition");

WHEREAS, Plaintiffs allege in the Adversary Proceedings that, in connection with the Acquisition, on July 25, 2022, Bankman-Fried and West Realm Shires, Inc. executed a simple agreement for future equity ("SAFE") pursuant to which Bankman-Fried was required to contribute $136,000,000 in exchange for the right to a specified number of shares in West Realm Shires, Inc. upon the occurrence of certain specified events;

WHEREAS, Plaintiffs allege in the Adversary Proceeding that Bankman-Fried and West Realm Shires, Inc. executed a second SAFE on September 30, 2022, pursuant to which Bankman-Fried was required to contribute $34,000,000 in exchange for the right to a specified number of shares in West Realm Shires, Inc. upon the occurrence of certain specified events;

WHEREAS, Plaintiffs allege in the Adversary Proceeding that, by their terms, the above-referenced SAFEs automatically converted to West Realm Shires, Inc. common stock on December 31, 2022 or an earlier Dissolution Event, defined as "(i) a voluntary termination of operations, (ii) a general assignment for the benefit of the Company's creditors or (iii) any other liquidation, dissolution or winding up of the company . . . whether voluntary or involuntary";

-1-

WHEREAS, Bankman-Fried maintained a brokerage account with Embed Financial Technologies Inc. whose account number ended in the digits 7483 (the "Brokerage Account");

WHEREAS, Plaintiffs represent that the assets currently held in the Brokerage Account consist of approximately $600;

WHEREAS, the Parties have been engaged in good faith, arm's-length negotiations about resolving the Claims and returning to West Realm Shires, Inc. any value obtained by Bankman-Fried in connection with the Acquisition;

WHEREAS, in order to avoid the expense, burden and inconvenience of litigation, the Parties desire and intend to effect a final settlement and resolution of the Claims asserted against Bankman-Fried in the above-referenced Adversary Proceeding, including without limitation the Fraudulent Transfer and Preference Claims;

WHEREAS, the Plaintiffs, in the exercise of their business judgment, have concluded that final settlement and resolution of the Claims against Bankman-Fried in the above-referenced Adversary Proceeding in accordance with the terms of this Agreement is in the best interest of the Plaintiffs, their creditors and other stakeholders.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    Recitals Incorporated.  The recitals set forth above are hereby incorporated in full and made a part of this Agreement.

2.    Bankruptcy Court Approval Required.  This Agreement is subject to the approval of the Bankruptcy Court evidenced by entry of a written order in a form agreeable to the Parties (an "Approval Order").  The Plaintiffs shall file a motion seeking entry of the Approval Order within five (5) business days following execution of this Agreement by all Parties.  In the event that the Bankruptcy Court declines to approve this Agreement, or the Approval Order does not become final and non-appealable, this Agreement shall become null and void and of no further force and effect.

3.    Settlement Effective Date.  The terms of this Agreement shall become effective upon the Approval Order becoming final and non-appealable (the "Settlement Effective Date").

4.    Return of Defendant's WRS Shares.  Bankman-Fried hereby relinquishes any right or entitlement to WRS common stock received in connection with the above-referenced SAFEs

(the "<u>Settlement Assets</u>") and, to the extent that any such Settlement Assets were transferred to Bankman-Fried, Bankman-Fried agrees that such transfer is deemed reversed and canceled.

5.    <u>Relinquishment of Brokerage Account</u>.  Bankman-Fried relinquishes the right to, and assigns to Plaintiffs, all assets held in the Brokerage Account.

6.    <u>Dismissal With Prejudice</u>.  Within (5) business days of the Settlement Effective Date, Plaintiffs shall file with the Bankruptcy Court a notice of dismissal with prejudice of the Claims against Bankman-Fried in the Adversary Proceeding.

7.    <u>Release of Claims by Bankman-Fried</u>.  Upon the filing of the Notice of Dismissal With Prejudice set forth in paragraph 6, Bankman-Fried releases, waives, discharges, settles, and compromises any and all right or entitlement he has or had to the Settlement Assets and any claims, causes of actions, liens, rights and remedies he has, had or may have against the Plaintiffs and their estates, subsidiaries and affiliates (and predecessors, successors, and assigns of any of the foregoing) arising out of or relating to the Settlement Assets, whether known or unknown, liquidated or unliquidated, contingent or non-contingent; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Agreement.

8.    <u>Release of Claims by the Plaintiffs</u>.  Upon the filing of the Notice of Dismissal With Prejudice set forth in paragraph 6, the Plaintiffs release, waive, discharge, settle, and compromise any claims, causes of actions, liens, rights and remedies they have, had or may have against Bankman-Fried and his estates, subsidiaries, and affiliates (and predecessors, successors, and assigns of any of the foregoing) solely arising out of or relating to the Settlement Assets, whether known or unknown, liquidated or unliquidated, contingent or non-contingent; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Agreement.

9.    <u>California Civil Code § 1542</u>.  Without suggesting that California law is applicable, each Party expressly waives and relinquishes any and all provisions, rights and benefits conferred by California Civil Code § 1542 or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable or equivalent to California Civil Code § 1542 with respect to rights, claims, and interests released pursuant to this Agreement.  Section 1542 provides that:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

10.    <u>Binding Effect</u>.  Each Party represents and warrants that this Agreement is given in good faith and that entry into and execution of this Agreement is not the product or result of any duress, economic or otherwise.  Each individual signing this Agreement on behalf of a Party or Parties has the power and authority (a) to enter into this Agreement on behalf of the Party or Parties on whose behalf he or she has signed and (b) to sign the Agreement.  This Agreement shall be binding upon the Parties hereto and their predecessors, successors, and assigns.

11.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the Parties with respect to the matters addressed herein, and may not be changed, modified or altered in any manner, except in writing, signed by each Party.

12.    <u>Authorization</u>.  The signatories to this Agreement represent that they have the requisite power and authority from the respective Parties they represent to enter into this Agreement on those Parties' behalf.

13.    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Any signature delivered by a Party electronically shall be deemed an original signature.

14.    <u>Interpretation and Rules of Construction</u>.  This Agreement is the product of arm's-length negotiations among the Parties and, in the enforcement or interpretation hereof, shall be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party's having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.  Each Party was represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel.  All references to dollars or "$" in this Agreement refer to United States dollars.  In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

15.    <u>No Admission of Liability</u>.  Neither this Agreement nor the fact of its execution shall constitute an admission or acknowledgement of liability or wrongdoing by any Party.

16.    <u>Jurisdiction/Choice of Law</u>.  The Bankruptcy Court shall retain, and each of the Parties irrevocably consents to, jurisdiction with respect to all matters arising from or related to this Agreement, including, without limitation, for purposes of enforcing the terms and conditions of this Agreement.  This Agreement shall be governed by the domestic laws of the State of Delaware, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

17.    <u>No Waiver</u>.  No failure or delay by any Party in exercising any right, power, or privilege under this Agreement or applicable law shall operate as a waiver by that Party of any such right, power, or privilege.

18.    <u>Severability</u>.  If, after the Settlement Effective Date, any term, clause, or provision of this Agreement is invalidated or unenforceable by operation of law or otherwise, the Parties shall attempt in in good faith to negotiate a replacement, but legally valid, term, clause, or provision that best meets the intent of the Parties.  The remaining provisions of this Agreement shall remain in full force and effect.

19.    <u>Costs</u>.  Each Party shall bear its own attorneys' fees and costs incurred in connection with this Agreement and completion of the transfers and other matters contemplated herein.

20.    <u>Notices</u>.   For purposes of this Agreement, any notice to the Parties shall be in writing and delivered via email and overnight courier as follows:

if to Bankman-Fried, to:

>  Montgomery McCracken Walker & Rhoads LLP
>  1105 North Market Street
>  15th floor
>  Wilmington, DE 19801
>  Attn:   Gregory Donilon and Marc J. Phillips
>  E-mail: gdonilon@mmwr.com; mphillips@mmwr.com
>  -and-
>
>  Montgomery McCracken Walker & Rhoads LLP
>  1735 Market Street, 21st Floor
>  Philadelphia, PA 19103
>  Attn: Jeremy D. Mishkin
>  Email: jmishkin@mmwr.com

if to Plaintiffs, to:

>  John J. Ray III
>  P.O. Box 591549
>  Houston, TX  77259
>  E-mail:  jray@greylockpartnersllc.com
>
>  with copies to:
>
>  Sullivan & Cromwell LLP
>  125 Broad Street
>  New York, New York 10004
>  Attn:  Brian D. Glueckstein and Christopher J. Dunne
>  E-mail:  gluecksteinb@sullcrom.com; dunnec@sullcrom.com

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective authorized representatives.

Dated:  December 21, 2023
New York, New York

John J. Ray, III, solely in his capacity as Chief Executive Officer of the FTX Debtors,

By:  _____
John J. Ray III

-5-

Dated:  December 21, 2023
New York, New York

Counsel for Samuel Bankman-Fried


By: /s/ Marc Phillips
    Marc Phillips
    Gregory Donilon
    Jeremy Mishkin
    Montgomery McCracken Walker & Rhoads LLP
    *Counsel for Samuel Bankman-Fried*