**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 25, 2024 at 10:00 a.m. (ET)**<br>**Obj. Deadline: January 11, 2024 at 4:00 p.m. (ET)** |

### MOTION OF DEBTORS TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 502(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), estimating the value of Claims[2] in respect of Digital Assets[3] and fiat currency, including Customer Entitlement Claims, based on the amounts set forth on Exhibit 1 to the Order (the "Digital Assets Conversion Table") for the purposes of any plan in these Chapter 11 Cases. In support of this Motion, the Debtors rely on (i) the *Declaration of Sabrina T. Howell in Support of the Motion of Debtors to Estimate Claims Based on Digital Assets* (the "Howell Declaration") and report annexed thereto (the "Howell

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 4861], as it may be amended, supplemented or modified (the "Plan").

[3] "Digital Assets" as used herein excludes non-fungible tokens ("NFTs"). The Debtors are not seeking to estimate the value of Claims based on NFTs pursuant to this Motion.

Report"), and (ii) the *Declaration of Kevin Lu in Support of the Motion of Debtors to Estimate Claims Based on Digital Assets* (the "Lu Declaration"), each filed concurrently herewith, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors continue to make deliberate and substantial progress towards confirmation of a chapter 11 plan and returning the value of the Debtors' assets to customers and other creditors holding Allowed Claims.  These Chapter 11 Cases are unique, however, because millions of the Claims submitted and listed on the Debtors' Schedules are based on Digital Assets, and asserted in quantities of Digital Assets.  As a result, all such Claims are currently unliquidated. The vast majority of these Claims are Customer Entitlement Claims.

2.      To provide creditors with recovery estimates, solicit votes on the Plan, and ultimately make Distributions pursuant to the Plan (or any other plan), all Claims based on Digital Assets need to have fair and reasonable value ascribed to them.  The liquidation of every individual Claim in respect of a Digital Asset is impractical and unnecessary, and would unduly delay these Chapter 11 Cases.  However, all Claims based on Digital Assets share a common feature:  the value is derived from the value of the underlying Digital Assets.

3.      Thus, the Debtors, assisted by Mr. Lu and Dr. Howell, undertook a process to analyze and determine the value of each of the Digital Assets on which Claims are based, as well as those Claims, as of the Petition Date—as required by section 502(b) of the Bankruptcy Code.  The result of that work is the proposed Digital Assets Conversion Table, of which the Debtors seek approval pursuant to section 502(c) of the Bankruptcy Code.  The Digital Assets Conversion Table provides the basis by which creditors can understand the value of their Claims, and the Debtors can calculate the value of Claims in respect of Digital Assets for voting and

distribution purposes.  In turn, such information derived from the Digital Assets Conversion Table will be provided in a revised Disclosure Statement in order to provide material information to creditors upon which they may evaluate the Plan.

4.      The Court has broad discretion in exercising its estimation authority pursuant to section 502(c) of the Bankruptcy Code.  Establishing the Digital Assets Conversion Table is an important building block in constructing the Plan and ensuring a fair and value-maximizing resolution of these Chapter 11 Cases for stakeholders.  As such, the Motion should be granted and the Digital Assets Conversion Table approved.

## FACTUAL BACKGROUND

5.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

7.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519], setting the non-customer bar date to file proofs of claim against any of the Debtors as June 30, 2023, and the governmental bar date as September 29, 2023.

8.      On June 28, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order"), setting the deadline for customers to file proofs of claim on account of Customer Claims as September 29, 2023.

9.      As set forth in the *Notice of Deadlines Requiring Filing of Customer Proofs of Claim on or Before September 29, 2023 and Customer Proofs of Claim Affected by the Amendment of or Supplement to the Debtors' Schedules of Assets and Liabilities* [D.I. 1870] (the "Customer Bar Date Notice"), each customer proof of claim based on cryptocurrencies or digital assets was only required to set forth (i) the number of units or quantity of each cryptocurrency or digital asset and (ii) the program (*i.e.* Earn, Lend or Stake), if any, applicable to each cryptocurrency or digital asset.  The proof of claim form did not contemplate holders of Customer Claims providing a dollar valuation for any of the cryptocurrencies or digital assets.  Accordingly, Claims based on Digital Assets are currently scheduled or asserted in proofs of claim only in Digital Asset quantities without dollarized values.  Indeed, the Customer Bar Date Notice

expressly noted that the Debtors would "seek to establish valuations at a later date" with respect to such cryptocurrencies and digital assets.

10. On July 31, 2023, the Debtors filed the *Draft Joint Plan of Reorganization* [D.I. 2100]. On October 16, 2023, the Debtors announced and filed the PSA, which includes, among other things, a settlement of the customer property claims litigation filed by the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") and the class action plaintiffs, a preference settlement policy, and a framework for an amended chapter 11 Plan [D.I. 3291].

11. On December 16, 2023, the Debtors filed (i) the Plan, (ii) the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [D.I. 4862] (the "Disclosure Statement"), and (iii) the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 4863] (the "Solicitation Procedures Motion"). The Debtors expect to soon file a further amended Plan and Disclosure Statement to incorporate their recently announced settlement with the Joint Official Liquidators of FTX Digital Markets Ltd. [D.I. 4904] and certain other changes, including the Digital Assets Conversion Table requested by this Motion.

12. The Digital Assets Conversion Table is integral to advancing the Plan confirmation process. The proposed Solicitation Procedures Order requires that for the purposes of the Solicitation and Voting Procedures, to the extent all or part of any Claim includes Digital Assets, such Digital Assets should be valued and converted to U.S. dollar amounts using the

Digital Assets amounts set forth on the Debtors' Schedules or in a timely filed proof of claim as converted by the valuations to be set forth in an order by the Court.  (*See* Solicitation Procedures Motion, ¶ 56.)   A U.S. dollar value for Claims based on Digital Assets is also required for determining projected recovery ranges for such Claims in the Disclosure Statement.   (*See* Disclosure Statement, § 1.B.)   And section 4.4 of the Plan provides that "[u]nless otherwise expressly provided in the [Order], the value of a Claim in respect of a Digital Asset shall be calculated by converting the value of such Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the Digital Assets Conversion Table."   (*See* Plan § 4.4.) Accordingly, by this Motion, the Debtors seek authority to value Claims based on Digital Assets in accordance with the Digital Assets Conversion Table.

## JURISDICTION

13.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are 28 U.S.C. § 1452 and Bankruptcy Rules 9027 and 9006.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

14.     By this Motion, the Debtors request entry of the Order pursuant to sections 502(c) and 105(a) of the Bankruptcy Code, substantially in the form attached hereto as <u>Exhibit A</u>, estimating Claims based on Digital Assets and fiat currency by approving the Digital Assets Conversion Table to value such Claims, including Customer Entitlement Claims, for purposes of any plan in these Chapter 11 Cases.

## BASIS FOR RELIEF

**I.      Estimation of the Claims Based On Digital Assets is Necessary Because Individual Liquidation Would Unduly Delay the Administration of the Chapter 11 Case**

15.     Section 502(c) of the Bankruptcy Code provides in relevant part that "there *shall* be estimated for purposes of allowance under this section . . . any contingent or unliquidated claim, the fixing of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1) (emphasis added).   "Claims estimation provides 'a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine.'"  *In re AMR Corp.*, 2021 WL 2954824, at *3 (Bankr. S.D.N.Y. July 14, 2021) (quoting *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003); *In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) ("The purpose of section 502(c) is to prevent the administration of the debtor's estate from being held hostage by the fixing or liquidation of an unliquidated or contingent claim."); *In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993) (noting that two purposes of section 502(c)(1) are to "avoid the need to await the resolution of outside lawsuits to determine issues or liability or amount owed by means of anticipating and estimating the likely outcome of these

actions" and to "promote a fair distribution to creditors through a realistic assessment of uncertain claims").

16. "Section 502(c) of the Bankruptcy Code is drafted in mandatory terms." *In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005). In other words, the Court must estimate claims if it determines that liquidating the contingent or unliquidated claim "would unduly delay the bankruptcy case." *Id.*; *see also In re G-I Holdings, Inc.*, 2006 WL 2403531, at *3 (Bankr. D.N.J. Aug. 11, 2006).

### A.    Claims Based On Digital Assets Are Unliquidated.

17. The Bankruptcy Code does not define the term "unliquidated" for the purpose of section 502(c). However, courts have defined "[a]n unliquidated claim [as] a 'claim in which the amount owed has not been determined.'" *In re Energy Future Holdings Corp.*, 531 B.R. 499, 515 n.70 (Bankr. D. Del. 2015) (citing *In re RNI Wind Down Corp.*, 369 B.R. at 183; *see also In re Akorn, Inc.*, 2021 WL 4306222, at *13 (D. Del. Sept. 22, 2021) (same), *aff'd, In re Akorn Inc.*, 2022 WL 17222417 (3d Cir. Nov. 25, 2022).

18. The Claims based on Digital Assets are unliquidated. Digital Assets include any digital representation of value or units that are issued or transferable using distributed ledger or blockchain technology, including stablecoins and cryptocurrency. In other words, Claims on account of Digital Assets are based on the value of the underlying Digital Asset and do not have a separate determined value in U.S. dollars. With respect to Customer Entitlement Claims specifically, as set forth above, customers were only required to provide the number of units or quantity of each Digital Asset in respect of their Customer Entitlement Claim on their proofs of claim; customers were not required to set forth a U.S. dollar value. Any U.S. dollar value included in a filed proof of claim for Claims on account of Digital Assets could only be such customer's estimate. Accordingly, Claims based on Digital Assets are unliquidated.

**B.      Liquidating the Customer Claims Would Unduly Delay These Chapter 11 Cases.**

19.     Bankruptcy courts use estimation to avoid unduly delaying cases where an indeterminate unliquidated claim must be liquidated.  *E.g.*, *In re G-I Holdings, Inc.*, 323 B.R. at 599; *see also In re Interco Inc.,* 137 B.R. 993, 998 (Bankr. E.D. Mo. 1992) (estimating retirement fund's ERISA claim where deferring "determination of this claim to arbitration, would leave a void in the Debtors' plan formulation equation . . . [and] it would be difficult for this Court to determine the feasibility of a plan"); *In re Lane*, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) (granting motion to estimate where unliquidated claim delayed plan confirmation).

20.     The Debtors need to be able to calculate the dollarized value of Claims based on Digital Assets for Plan solicitation and voting purposes.  Claims based on Digital Assets are currently scheduled or asserted in proofs of claim only in quantities of Digital Assets without dollarized values.  The Debtors cannot solicit votes on the Plan until these Claims have a U.S. dollar value.  Additionally, as the Court noted at the hearing on December 13, 2023, "it is the customers and the creditors here who need to get paid."  (Dec. 13, 2023 Hr'g Tr. 56:19-20.)  That is not possible until Claims based on Digital Assets have been ascribed values in U.S. dollars such that the Debtors can make dollarized distributions to customers and other creditors under the Plan.[4]

21.     Furthermore, the Debtors need to be able to provide information in the Disclosure Statement regarding anticipated recoveries under the Plan to permit creditors the opportunity to evaluate the Plan and cast an informed vote.  Thus, the value of the Claims based on Digital Assets must be valued as of the Petition Date.  Without the ability to do so on an omnibus basis, solicitation and distributions—and thus these Chapter 11 Cases—would be unduly delayed.

---

[4]     The imbalance between Claims based on Digital Assets and that reflected on the Debtors' balance sheets means that the Debtors are unable to consider making in-kind Distributions.  (Howell Rep. ¶¶ 3, 13.)

Liquidation of each of the millions of Claims in respect of Digital Assets would be prohibitively costly and time-consuming.  The Plan therefore expressly requires that Claims based on Digital Assets be valued pursuant to the conversion rates set forth in the Digital Assets Conversion Table if and as approved by the Court.  (*See* Plan, Art. 4.4.)  Once the Digital Assets Conversion Table is established, it would apply to any plan in these Chapter 11 Cases.

22.     It is simply not realistic that the Debtors would be able to liquidate every one of the millions of Claims based on Digital Assets on any timeline that would not constitute undue delay of these Chapter 11 Cases and distributions to creditors.  It would also be impossible for the Debtors to launch solicitation on any chapter 11 plan without an understanding of the value of Claims on account of Digital Assets for voting purposes and for determining projected recovery ranges for such Claims and all other Claims against the Debtors.  Accordingly, liquidation of the Claims based on Digital Assets would unduly delay, and potentially preclude, distributions under any plan in these Chapter 11 Cases.  Valuation of such Claims based on the Digital Assets Conversion Table is appropriate.

## II.     The Court Should Approve the Digital Asset Conversion Table

23.     There is no requirement that a particular kind of procedure be employed in estimating the value of a claim.  *See Kool, Mann, Coffee & Co.* v. *Coffey*, 300 F.3d 340, 356 (3d Cir. 2002).  Congress intended estimation to be undertaken initially by bankruptcy judges, using whatever method is best suited to the contingencies at issue.  *See Bittner* v. *Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982) ("Despite the lack of express direction on the matter, we are persuaded that Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue.").  Accordingly, this Court has broad discretion to choose whatever method it deems best-suited to the particular circumstances to estimate the valuation of Claims based on Digital Assets.  *See In*

*re Innovasystems, Inc.*, 2014 WL 7235527, at *7 (Bankr. D.N.J. Dec. 18, 2014) ("There is no particular method to be employed in estimating a claim. Estimation decisions therefore fall within the discretion of the trial judge.") (citations omitted); *G-I Holdings*, 323 B.R. at 599 ("In general, a bankruptcy court has discretion to determine the appropriate method of estimation in light of the particular circumstances of the bankruptcy case before it."). Estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim." *Bittner*, 691 F.2d at 135. "There are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Bankruptcy Code" and the legal rules which govern the ultimate value of the claim. *G-I Holdings*, 323 B.R. at 599 (citing *Bittner*, 691 F.2d at 136).

24.     An estimation, by definition, is an approximation and necessarily involves comparing a known or established quantum of data to the thing being estimated. *In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 155 (D. Del. 2005). Courts recognize they are dealing with uncertainties and are attempting to make predictions which are themselves based upon predictions and assumptions. *Owens Corning* v. *Credit Suisse First Boston*, 322 B.R. 719, 721 (D. Del. 2005). Thus, courts consider all factors and circumstances surrounding the claims, but do not seek to estimate claims with mathematical precision. *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 124 (D. Del. 2006) ("[T]he Court will not seek to analyze the estimations before it for mathematical precision, nor will it attempt to reach its own exact number.").

A.     **Section 502(b) of the Bankruptcy Code Requires that the Claims be Valued as of the Petition Date.**

25.     Section 502(b) of the Bankruptcy Code governs the valuation of claims. That statute provides that "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*." 11 U.S.C.

§ 502(b) (emphasis added); *see also In re Glob. Power Equip. Grp. Inc.*, 2008 WL 435197, at *5 (Bankr. D. Del. Feb. 14, 2008) (noting that it is "502(b)'s unambiguous design" to "[]freeze the value of a claim").

26.     In accordance with section 502(b), claims based on digital assets have been valued as of the applicable petition date in other large cryptocurrency cases. *See, e.g.*, *In re BlockFi Inc.*, Case No. 22-19361 (Bankr. D.N.J. Aug. 8, 2023), D.I. 1309 ("As is required by section 502(b) of the Bankruptcy Code, each Account Holder's Claim is determined by the fair market value of the Digital Assets (based in United States dollars pursuant to the Digital Assets Conversion Table) held by the Account Holder at the Debtors as of the Petition Date at 11.59 p.m. UTC."); *In re Voyager Digital Holdings*, Case No. 22-10943 (Bankr. S.D.N.Y. Mar. 5, 2023), D.I. 1138 ("Account Holder Claims shall be valued in U.S. dollars as of the Petition Date consistent with section 502(b) of the Bankruptcy Code."); *In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Sept. 27, 2023), D.I. 3577 ("Unless otherwise expressly provided herein, the value of a Claim denominated in Cryptocurrency shall be calculated by converting the value of the Claim into Cash as of the Petition Date . . . .").

27.     Determining the value of Digital Assets can be analogized to determining the value of foreign currency.  When converting claims denominated in non-U.S. currency to U.S. dollars, courts have applied the currency exchange rate as of the applicable petition date.  The *In re Global Power Equipment* court noted that this "prevents the value of a claim from fluctuating by freezing the claim as of the petition date and converting it to United States dollars.  The amount of the claim will not change, even . . . if the applicable currency rises or falls in relation to dollars." *In re Glob. Power Equip. Grp., Inc.,* 2008 WL 435197, at *5 (quoting *In re Aaura, Inc.*, 2006 WL 2568048, at *4 n. 5 (Bankr. N.D. Ill. Sept. 1, 2006)); *see also In re RCS Capital Development,*

*LLC*, 2013 WL 3618550, at \*13 (9th Cir. July 16, 2013) (concluding "that the bankruptcy court erred in calculating the exchange rate [for purposes of claim allowance] by using the breach date rather than the petition date as mandated by § 502(b)"); *In re USGen New England, Inc.*, 429 B.R. 437, 492 (Bankr. D. Md. 2010) (concluding that, "under the plain meaning of 11 U.S.C. § 502(b)," the appropriate exchange rate to convert a claim to U.S. dollars is that in effect on the petition date).

28. Accordingly, the Debtors' experts, Dr. Howell and Mr. Lu, have worked together to propose values for the Digital Assets, in order to enable the Debtors to estimate the Claims based on such Digital Assets through application of the Digital Assets Conversion Table, as of the Petition Date.

**B.     The Values Set Forth in the Digital Assets Conversion Table Provide the Basis for Reasonable Valuation of the Digital Assets Claims.**

29. The Digital Assets Conversion Table provides a fair and reasonable estimate of the value of the Digital Assets as of the Petition Date on which Claims are based and thus creditor Claims associated with those assets. As these Chapter 11 Cases have revealed, the Debtors did not hold all of the Digital Assets claimed by customers and other creditors. Dr. Howell notes that, as of the Petition Date, the Debtors held 577 of 1,321 unique digital assets that have customer Claims associated with them. (Howell Rep. ¶ 13.) As a result, the Plan provides for Claims in respect of Digital Assets to be calculated by converting the value of the Digital Asset into Cash as of the Petition Date using the rates set forth in the Digital Assets Conversion Table, and making Distributions in Cash. (*See* Plan § 4.4.) To make Distributions in Cash to creditors, whether on the Petition Date or now, the Debtors would need to liquidate all Digital Assets. Thus, the Petition Date actual values of the Digital Assets, and therefore the Claims in respect of those assets, need to reflect this reality.

30.     To estimate the fair value of each of the Digital Assets, a dataset was compiled consisting of, among other things, coin and token prices (including stablecoin) sourced from Coin Metrics, Inc. ("Coin Metrics").  As detailed in the Lu Declaration, prices developed by Coin Metrics are widely relied upon within the cryptocurrency industry.  (*See* Lu Decl. ¶ 15.) "Coin Metrics' clients use the Coin Metrics Prices for research, for accounting and financial reporting, to settle financial contracts, to create financial products, for display purposes, and to publish on-chain via blockchain oracles." (*Id*.)  The Lu Declaration describes in detail the process by which Coin Metrics determines spot pricing for coins and tokens.  (*Id*. ¶ 31.)  Mr. Lu, the Director of Data Science & Product at Coin Metrics, has performed routine examinations on the performance of Coin Metrics Prices (as defined in the Lu Declaration) over the past five years and determined that they consistently perform well, even during times of market volatility and stress. (*Id*. ¶ 16.)  Because tokenized stocks, leveraged tokens and futures were derivatives specific to FTX, prices for tokenized stocks and futures are sourced from the last trade price from the order books for the Debtors' exchanges, and prices of leveraged tokens are sourced from the ETF snapshot table, which was constructed by the Debtors to capture the market price of underlying contracts for each leveraged token every 15 seconds.  (Howell Rep. App'x C ¶ 2.)

31.     Dr. Howell analyzed and determined whether adjustments needed to be made to those Petition Date prices due to the likely effect of (i) an orderly liquidation of the Debtors' holdings of each Digital Asset claimed by creditors, (ii) the fact that certain Digital Assets were not marketable (*e.g*., locked tokens), and/or (iii) the nature of the asset (*e.g*., equity-like). (Howell Rep. ¶ 4.)

32.     As set forth in detail in the Howell Report, Dr. Howell determined that in an orderly liquidation commencing on the Petition Date, certain of the Digital Assets would likely

have been sold at average prices below the prevailing market prices.  (*Id.* ¶ 13.)  Dr. Howell concluded that an asset liquidation discount exceeding 10 percent of the market price would affect 71 of the Digital Assets held by the Debtors and claimed by customers.  (*Id.* ¶¶ 13, 63-71.)  No asset liquidation discount is necessary for fiat currency positions, stablecoins, tokenized stocks, or futures.  (*Id.* ¶ 13.)

33.     Dr. Howell further determined that an additional discount for lack of marketability is appropriate for locked or otherwise non-marketable Digital Assets.  (*Id.* ¶¶ 14, 72-84.)  Finally, Dr. Howell concluded that FTT and certain FTX equity claims have zero fundamental value.  (*Id.* ¶ 15, 85-87.)

34.     Exhibit 6 to the Howell Report aggregates the comprehensive list of estimated values for Digital Assets on which customer Claims are based.  (*Id.* ¶ 88.)  This list is the proposed Digital Assets Conversion Table that is Exhibit 1 to the Order.

35.     The Debtors submit that the values of Digital Assets set forth in the Digital Assets Conversion Table are fair and reasonable for estimation of Claims based on those Digital Assets pursuant to section 502(c) of the Bankruptcy Code.  The Motion should therefore be granted.

## NOTICE

36.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) holders of Claims based on Digital Assets; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## RESERVATION OF RIGHTS

37.     Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim, equity interest or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim, equity interest or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or the Order, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated:  December 27, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*