# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 47, 145, 486, 488, 1700, 1706 & ___ |

**SECOND AMENDED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
(A) OPERATE A POSTPETITION CASH MANAGEMENT SYSTEM, (B) MAINTAIN
EXISTING BUSINESS FORMS AND (C) PERFORM INTERCOMPANY
TRANSACTIONS, (II) GRANTING A PARTIAL WAIVER OF THE DEPOSIT
GUIDELINES SET FORTH IN SECTION 345(b) AND (III) GRANTING CERTAIN
RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors

and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Final Order")

(a) authorizing the Debtors to (i) operate a postpetition cash management system, (ii) maintain

existing business forms, and (iii) perform intercompany transactions, (b) granting a partial

waiver of the deposit guidelines set forth in section 345(b) of the Bankruptcy Code, and

(c) granting certain related relief; and this Court having entered the *Interim Order (I) Authorizing*

*the Debtors to (a) Operate the Postpetition Cash Management System; (b) Maintain Existing*

*Business Forms; (c) Perform Intercompany Transactions; (II) Granting Partial Waiver of the*

*Deposit Guidelines Set Forth in Section 345(b) of the Bankruptcy Code; and (III) Granting*

*Certain Related Relief* [D.I. 47] and the *Final Order (I) Authorizing the Debtors to (a) Operate a*

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list
of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

*Postpetition Cash Management System, (b) Maintain Existing Business Forms and (c) Perform Intercompany Transactions, (II) Granting a Partial Waiver of the Deposit Guidelines Set Forth in Section 345(b) and (III) Granting Certain Related Relief* [D.I. 488]; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief set forth in this Final Order is in the best interests of the Debtors and their estates; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as and to the extent set forth herein.

2.      The Debtors are authorized to change authorized signatories to John J. Ray, III or any designated officer of the Debtors with respect to any bank or brokerage account.[3] The Debtors are authorized to operate the Postpetition Cash Management System, including making deposits, transfers and advances among Debtors, to and from non-Debtors and between any Silo Pooling Account and the Master Pooling Account, as described in the Motion, and as limited by this Final Order.  All New Bank Accounts shall be at banks that are party to a Uniform Depository Agreement with the United States Trustee for the District of Delaware (the "U.S. Trustee"); and the Debtors shall use commercially reasonable efforts to move all domestic Existing Bank Accounts, other than designated "FBO" accounts which hold funds for the benefit of non-debtor persons or entities and domestic Existing Bank Accounts held by foreign Debtors (the "Foreign Domestic Accounts"), to banks that are party to a Uniform Depository Agreement with the U.S. Trustee; *provided* that the Foreign Domestic Accounts shall be held at institutions that are insured by FDIC and the total aggregate amount held by each foreign Debtor per institution shall not exceed $250,000 at any given time and that amounts in Foreign Domestic Accounts shall not exceed $5,000,000 in the aggregate at any given time; *provided further* that the Debtors shall be authorized to open an account in the name of FTX Trading Ltd. in an amount not to exceed $8,000,000, solely for the purpose of receiving funds via SEPA transfer, paying related required fees and, promptly following receipt of such SEPA transfer, transferring the funds into a Debtor account in the Postpetition Cash Management System.  Notwithstanding anything contained herein or the Motion to the contrary, the Debtors shall not make any loans to any non-Debtor affiliates unless (a) after giving effect thereto, the aggregate outstanding

---

[3]      For the avoidance of doubt, the Debtors are authorized to receive funds from non-Debtors as contemplated in the Postpetition Cash Management System, but this Final Order shall not permit a non-Debtor to transfer funds to a Debtor if such transfer is not permitted by applicable nonbankruptcy law.

principal amount of all loans to non-Debtor affiliates would not exceed $5,000,000 in the

aggregate at any given time or (b) such loan has been approved by the official committee of

unsecured creditors appointed in these Chapter 11 Cases (the "Committee") and notice of such

loan and approval has been provided by the U.S. Trustee.

3.      Nothing in this Final Order shall authorize (i) the use of any cash and/or

funds that are trust funds and/or customer custodial funds, or (ii) the management of such cash,

funds, and/or accounts in contravention of state and/or federal law applicable to such cash, funds,

and/or accounts, including, without limitation, 28 U.S.C. § 959, and all rights and remedies of

the Debtors or any party-in-interest with respect to whether any cash and/or funds are trust funds

and/or customer custodial funds are expressly reserved.  The Postpetition Cash Management

System and the relief granted in this Order (including, without limitation, the transfer of funds

to/from Debtor legal entities, Silo Pooling Accounts or the Master Pooling Account) shall not in

any way affect the legal rights and remedies of any party-in-interest with respect to any Debtor

or its property, or constitute a substantive consolidation of any of the Debtors.

4.      The Debtors shall maintain accurate and detailed records with respect to

all deposits, transfers and advances of cash, and non-cash transfers or adjustments, including but

not limited to transfers between the Debtors, and transfers between the Debtors and non-Debtor

affiliates, so that all postpetition transactions, including intercompany obligations and

transactions, can be ascertained, traced, recorded properly, and distinguished between prepetition

and postpetition transactions, and such records shall be made available to the Committee upon

reasonable request.

5.      The net postpetition liabilities at any time from any Debtor to any other

Debtor, any Silo Pooling Account or the Master Pooling Account under the Postpetition Cash

Management System ("Net Advances") shall be entitled to superpriority administrative expense

status under section 503(b) and 507(a) of the Bankruptcy Code against the applicable Debtor.

Net Advances shall not accrue interest, *provided* that the right of any party-in-interest to argue

that any Debtor should pay interest to any other Debtor in connection with the settlement of

obligations among the Debtors under the Postpetition Cash Management System (whether in

connection with a chapter 11 plan of reorganization or otherwise) are reserved.  If any Debtor

seeks to obtain financing under section 364 of the Bankruptcy Code, the Debtors may seek

authority to grant superpriority status and/or liens to support Net Advances on a basis that is

senior, equal or junior to any protections for the providers of such financing, and the right of any

person in interest to be heard on such matters is reserved.

6.      Effective *nunc pro tunc* to the Petition Date, the Cash Management Banks

shall be authorized to maintain, continue, service and administer all Existing Bank Accounts and

the New Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption

and in the usual and ordinary course, and to receive, process, honor and pay any and all checks,

wire transfers, drafts, credit card payments and expenses, ACH transfers, or other debits drawn

on, or electronic transfer request made on, any of the Existing Bank Accounts or the New Bank

Accounts (each, a "Bank Payment Request") by the holders or makers thereof; *provided* that the

Cash Management Banks shall dishonor any wire or other transfer issued or dated prior to the

Petition Date except pursuant to a specific instruction from the Debtors (and the Debtors shall

inform the Committee's advisors of any such instruction).

7.      The Cash Management Banks are authorized to charge and deduct from

the appropriate Bank Accounts, and the Debtors are authorized to pay, honor, or allow any

(a) Bank Fees or (b) other charges associated with the Existing Bank Accounts, the New Bank

Accounts, including, without limitation, any amounts resulting from returned wires or other returned items, including, without limitation, returned items that result from automated clearing house transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers; *provided* that Bank Fees shall be paid from the Debtors' unrestricted cash or any Bank Fees deducted from Restricted Cash shall then be reimbursed from the Debtors' unrestricted cash.

8.      The Cash Management Banks are, without the need for further order of this Court:  (a) authorized to accept and honor all representations from the Debtors as to which Bank Payment Requests should be honored or dishonored consistent with any order(s) of this Court, whether such Bank Payment Requests are dated prior to, on, or subsequent to the Petition Date, and whether or not the Cash Management Bank believes the payment is or is not authorized by an order(s) of this Court; (b) have no duty to inquire as to whether such payments are authorized by any order(s) of this Court; and (c) have no liability to any party on account of following the Debtors' instructions in accordance with this Final Order.

9.      Notwithstanding any other provision in this Final Order, no Cash Management Bank that honors a Bank Payment Request at the direction of the Debtors shall be, or be deemed, liable to the Debtors or their estates or otherwise in violation of this Final Order.

10.     Any payment that is authorized by the Debtors and paid from an Existing Bank Account by a Cash Management Bank before the Petition Date (including any ACH Payment such Cash Management Bank is or becomes obligated to settle), any instruments issued by such Bank on behalf of any Debtor pursuant to a "midnight deadline" or otherwise shall be

deemed to be paid prepetition, whether or not actually debited from the Existing Bank Account prepetition.

11.    The Debtors shall maintain accurate records of all Bank Payment Requests and associated debits and credits to the applicable Existing or New Bank Account, and shall, upon reasonable request, provide a copy of such records to the Committee.

12.    For banks at which the Debtors hold bank accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Final Order, to the extent not previously done, the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor-in-possession in a bankruptcy case, and provide the lead case number.

13.    The Debtors may close any Existing Bank Accounts and New Bank Accounts as they may deem necessary and appropriate and may open any bank accounts as the Debtors may deem necessary and appropriate; *provided* that (i) the Debtors shall open any and all new bank accounts at banks that are party to a Uniform Depository Agreement with the U.S. Trustee; (ii) the Debtors shall give notice within ten (10) days to the U.S. Trustee and the Committee of any such bank account closures or openings; and (iii) the closure of any designated "FBO" accounts which hold funds for the benefit of non-debtor persons or entities, including in connection with the transfer of such funds to another "FBO" account at a different institution, shall be done in accordance with state and/or federal law applicable to such accounts and/or the cash or funds therein, including, without limitation 28 U.S.C. § 959; *provided further* that the Debtors shall not close or transfer any "FBO" account held with Evolve Bank & Trust without

notice and a further order of the Court; *provided further* that the Debtors shall be authorized to open an account in the name of FTX Trading Ltd. as set forth in paragraph 2 of this Order.

14.     Except as otherwise set forth in this Final Order, the Debtors are authorized to deposit funds in accordance with the Postpetition Cash Management System as set forth in the Motion.

15.     The Debtors are hereby granted a waiver of the requirements of section 345(b) of the Bankruptcy Code solely to allow the Debtors to (A) keep open (i) the Foreign Domestic Accounts, with the restrictions set forth in paragraph 2 of this Order; (ii) the accounts listed on Exhibit 1 in an amount not to exceed $130 million (with such amount to be calculated based on foreign currency rates as of the Petition Date), to the extent funds in such accounts are required to be maintained in Japan by Japanese regulators or taxing authorities; (iii) non-US bank accounts listed on Exhibit 2 attached hereto for foreign Debtor expenses, *provided* that the aggregate in all such accounts at any given time does not exceed $16 million (in US dollars); and (iv) accounts listed on Exhibit 3 (the "De Minimis Accounts"), *provided* that the aggregate amounts in all De Minimis Accounts shall not exceed $1 million at any given time and the total aggregate amount held by a Debtor in all accounts at any one institution that is FDIC insured but not a signatory of a Uniform Depository Agreement with the U.S. Trustee shall not exceed $250,000 at any given time, and the total aggregate amount held by a Debtor in all De Minimis Accounts at any one institution that is *not* FDIC insured and is not a signatory of a Uniform Depository Agreement with the U.S. Trustee shall not exceed $10,000 at any given time and (B) maintain and keep open as necessary the account in the name of FTX Trading Ltd. as set forth in paragraph 2 of this Order.  With respect to all other Bank Accounts, the Debtors shall have 30 days from entry of this Final Order or such longer time as agreed with the U.S. Trustee to either

comply with section 345(b) of the Bankruptcy Code, make such other arrangements as agreed with the U.S. Trustee or obtain the Court's approval for any deviation from section 345(b), without prejudice to the Debtors' right to seek an extension of the time to comply.

16.     With respect to accounts at Banks that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall attach to their monthly operating reports or provide to the U.S. Trustee copies of the bank statements of such accounts.  The Debtors shall request all Existing Banks that are not party to a Uniform Depository Agreement with the U.S. Trustee to internally code all debtor accounts at such Existing Banks as debtor-in-possession accounts, and to include the lead bankruptcy case number.

17.     Notwithstanding any other order of this Court, none of the Cash Management Banks will be required to file any proofs of claim in any of the Chapter 11 Cases or successor cases, whether such claim arose prepetition or postpetition or pursuant to this Final Order, pertaining to the Postpetition Cash Management System or any Bank Fees in order to preserve such claims.

18.     Notwithstanding any language to the contrary in the Motion or this Final Order, or any findings announced at the hearing, no provision of the Motion, this Final Order, or announced at the hearing constitutes a finding as to whether the Prepetition or Postpetition Cash Management System complies with federal or state securities laws, and the right of the United States Securities and Exchange Commission to challenge such transactions on any basis are expressly reserved.

19.     Notwithstanding anything to the contrary in the Motion, this Final Order, or any findings announced at the hearing, nothing in the Motion, this Final Order, or announced at the hearing constitutes a finding under the federal securities laws as to whether crypto tokens

or transactions involving crypto tokens are securities, and the right of the United States

Securities and Exchange Commission to challenge transactions involving crypto tokens on any

basis are expressly reserved.

       20.     The Debtors are authorized and empowered to execute and deliver such

documents, and to take and perform all actions necessary to implement and effectuate the relief

granted in this Final Order.

       21.     The Debtors are authorized to: (a) designate, maintain and continue to use,

with the same account numbers, all of the Existing Bank Accounts in existence as of the Petition

Date that the Debtors determine, in the reasonable exercise of their business judgment, are

necessary, except as otherwise set forth in this Final Order; (b) use, in their present form, all

preprinted correspondence and business forms (including, but not limited to, letterhead, purchase

orders, invoices and checks), without reference to their status as debtors-in-possession, and other

preprinted documents related to the Existing Bank Accounts, *provided* that upon depletion of the

Debtors' correspondence, business forms stock and checks, the Debtors will obtain new business

forms stock and checks reflecting their status as debtors-in-possession; (c) treat the bank

accounts for all purposes as accounts of the Debtors as debtors-in-possession; (d) pay any and all

fees, costs, charges and expenses, whether incurred prepetition or postpetition, under or in

connection with the Prepetition Cash Management System or the Postpetition Cash Management

System, as applicable; and (e) for the duration of these Chapter 11 Cases, the Debtors shall

include a debtor-in-possession legend and the lead bankruptcy case number on all electronic or

self-printed checks and business forms; and when reordering checks shall require the designation

"Debtor-in-Possession" and the corresponding bankruptcy case number on all checks.

22.    Notwithstanding anything contained herein or in the Motion to the contrary:

a.    The Debtors are authorized to pay the costs and expenses of administering the Chapter 11 Cases, including, without limitation, all fees payable to the Office of the United States Trustee and fees incurred by estate professionals, from the Master Pooling Account and to debit or credit the positions of any Debtor against the Master Pooling Account from time to time to reflect the allocation of such costs, expenses and fees (it being understood that each of the Debtors shall be responsible for the payment of such professional fees on a joint and several basis).  All rights and remedies of any party-in-interest with respect to the reasonableness of the calculation of such debits or credits against the Master Pooling Account in connection with the settlement of obligations among the Debtors under the Postpetition Cash Management System (whether in connection with a chapter 11 plan of reorganization or otherwise) are reserved.

b.    On or about January 9, 2023 (the "Initial Monthly Budget Delivery Date"), and the Friday of every third week after a new Approved Monthly Budget (as defined below) comes into effect (each, a "Monthly Budget Delivery Date"), the Debtors shall prepare and deliver to the Committee's advisors (a) a consolidated cash flow forecast, (b) Silo cash flow forecast, and (c) Master Pooling Account forecast (collectively, the "Monthly Budget"), in each case, covering the thirteen-week period commencing on the second week following the Monthly Budget Delivery Date.[4] The Monthly Budget shall be consistent in form, scope, and level of detail as reflected in the Debtors' presentation titled "UCC Package" delivered to the

---

[4]    By way of illustration, the Monthly Budget after the initial Monthly Budget shall be delivered at the end of week 3, and shall be in effect during the four-week period of week 5 through week 8.

Committee's advisors on December 30, 2022, including a bridge to the prior Monthly Budget.
To the extent there are any non-cash intercompany true-ups or cost allocations that have been
recorded during the period since delivery of the prior Monthly Budget, the Debtors shall deliver
a written report of such non-cash items at the same time as the Monthly Budget.  During the five
(5) business day period following each Monthly Budget Delivery Date, the Debtors shall consult
with the Committee's advisors and consider in good faith modifications (if any) proposed by the
Committee's advisors to the Monthly Budget. Upon the expiration of such five (5) business day
consultation period, the Monthly Budget shall automatically become the "Approved Monthly
Budget" for purposes of this Order, and the Debtors shall be entitled to make transfers in
accordance with the Approved Monthly Budget (subject to the terms of this Final Order);
*provided, however*, that in the event the Committee objects to the Monthly Budget with respect
to (x) any transfers between Silos and/or the Master Pooling Account or (y) any transfers to non-
Debtors, the Debtors agree that the Committee may seek relief from the Court on an expedited
basis (subject to the Court's availability), and, pending the resolution of such objection (if any),
the Monthly Budget shall continue to be deemed the Approved Monthly Budget unless and until
otherwise ordered by the Court.

    c.  In the event the Debtors seek to make a transfer at any time that
would result in the Debtors exceeding the Cash Management Variance (as defined below), the
Debtors shall provide the Committee with five (5) business days' advance notice, and shall
consult with the Committee's advisors with respect to any such transfer. Upon the expiration of
such five (5) business day consultation period, the Debtors shall be entitled to make such transfer
(subject to the terms of this Final Order); *provided, however*, that in the event the Committee

objects to such transfer, the Debtors agree that the Committee may seek relief from the Court on an expedited basis (subject to the Court's availability).

        d.      No later than 8:00 p.m. New York City time on every Thursday following the Initial Monthly Budget Delivery Date, and each Thursday thereafter (each, the "Weekly Variance Report Delivery Date"), the Debtors shall deliver to the Committee's advisors a written variance report, in each case, in form, scope and detail consistent with the Monthly Budget, which variance report shall set forth, with respect to the calendar week ending as of (and including) the Friday of the week immediately preceding the Weekly Variance Report Delivery Date (the "Weekly Period"), the variance, expressed as a percentage, between each (x) actual item identified in the Monthly Budget (including on a consolidated, Silo, and Master Pooling Account basis) during the Weekly Period (on a line-item and aggregate basis), and (y)  projected items identified in the Monthly Budget (including on a consolidated, Silo, and Master Pooling Account basis) for the Weekly Period (on a line-item and aggregate basis), including a reasonably detailed explanation for any variance (other than an immaterial variance).

        e.      For purposes of this Order, the term "Cash Management Variance" shall mean a variance in excess of ten percent (10%) of (i) the aggregate net cash transfers during the first four-week period of the Approved Monthly Budget to any Silo from other Silos and/or the Master Pooling Account or (ii) the aggregate net cash transfers during the first four-week period of the Approved Monthly Budget to any non-Debtor, in each case as forecasted in the Approved Monthly Budget during such first four-week period of the Approved Monthly Budget.

        f.      On each Weekly Variance Report Delivery Date, the Debtors shall provide to the Committee's advisors (x) a written report listing the cash balances contained in each of the Debtors' bank accounts, including the identification of any new cash accounts

located or unfrozen by the Debtors, (y) a schedule of postpetition intercompany cash transfers (across Silos and the Master Pooling Account) since the last weekly variance report and intercompany balances, and (z) a schedule of transfers from each account to any non-Debtor with a rolling balance of postpetition amounts due and owing from each non-Debtor to the applicable Debtor or pooling account.

g.    The Debtors shall also provide the Committee's advisors such other information concerning the operation of the Postpetition Cash Management System reasonably requested by the Committee's advisors.

23.    Any material modification to the Postpetition Cash Management System shall be subject to notice, a hearing and Court approval.

24.    In the event of any inconsistency between the terms of this Order and the Motion, the terms of this Order shall govern.

25.    Notwithstanding the use of a consolidated cash management system, the Debtors shall calculate quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) based on disbursements of each Debtor, regardless of what entity pays such disbursements.

26.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

27.    This Final Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

28.    This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Final Order.

Dated: _____
        Wilmington, Delaware                     The Honorable John T. Dorsey
                                           United States Bankruptcy Judge

**<u>Exhibit 1</u>**
**Japan Group Foreign Bank Account Listing**

| Debtor Name | Bank | Last Four Digits of Account Number |
|---|---|---|
| FTX Japan Holdings K.K. | PayPay Bank | 4533 |
| FTX Japan Holdings K.K. | Rakuten Bank | 9456 |
| FTX Japan Holdings K.K. | SBI Sumishin Net Bank, Ltd. | 9612_EUR |
| FTX Japan Holdings K.K. | SBI Sumishin Net Bank, Ltd. | 9612_JPY |
| FTX Japan Holdings K.K. | SBI Sumishin Net Bank, Ltd. | 9612_USD |
| FTX Japan K.K. | Far Eastern Int'l Bank | 6117 |
| FTX Japan K.K. | Far Eastern Int'l Bank | 6125 |
| FTX Japan K.K. | Far Eastern Int'l Bank | 6133 |
| FTX Japan K.K. | MUFG Bank, LTD. | 4459 |
| FTX Japan K.K. | MUFG Bank, LTD. | 7996 |
| FTX Japan K.K. | MUFG Bank, LTD. | 8002 |
| FTX Japan K.K. | MUFG Bank, LTD. | 8015 |
| FTX Japan K.K. | MUFG Bank, LTD. | 8028 |
| FTX Japan K.K. | MUFG Bank, LTD. | 8031 |
| FTX Japan K.K. | MUFG Bank, LTD. | 8044 |
| FTX Japan K.K. | PayPay Bank | 2111 |
| FTX Japan K.K. | PayPay Bank | 2129 |
| FTX Japan K.K. | PayPay Bank | 6667 |
| FTX Japan K.K. | PayPay Bank | 6675 |
| FTX Japan K.K. | PayPay Bank | 6683 |
| FTX Japan K.K. | PayPay Bank | 6691 |
| FTX Japan K.K. | Rakuten Bank | 9430 |
| FTX Japan K.K. | Rakuten Bank | 9440 |
| FTX Japan K.K. | Rakuten Bank | 9448 |
| FTX Japan K.K. | Rakuten Bank | 9458 |
| FTX Japan K.K. | SBI Sumishin Net Bank, Ltd. | 3065 |
| FTX Japan K.K. | SBI Sumishin Net Bank, Ltd. | 4679_JPY |
| FTX Japan K.K. | SBI Sumishin Net Bank, Ltd. | 4679_USD |
| FTX Japan K.K. | SBI Sumishin Net Bank, Ltd. | 7502_EUR |
| FTX Japan K.K. | SBI Sumishin Net Bank, Ltd. | 7502_JPY |
| FTX Japan K.K. | SBI Sumishin Net Bank, Ltd. | 7502_USD |
| FTX Japan K.K. | Sumitomo Mitsui Banking Corporation | 6135 |
| FTX Japan K.K. | Sumitomo Mitsui Banking Corporation | 9233 |
| FTX Japan K.K. | Sumitomo Mitsui Banking Corporation | 9244 |
| FTX Japan K.K. | Tokyo Star Bank | 8071 |
| FTX Japan K.K. | Tokyo Star Bank | 8604 |
| FTX Japan Services K.K. | PayPay Bank | 5539 |
| FTX Japan Services K.K. | SBI Sumishin Net Bank, Ltd. | 2610 |
| Quoine India Private Ltd. | HDFC Bank | 7966 |
| Quoine PTE Limited | Circle | N/A |
| Quoine PTE Limited | DBS | 8020 |
| Quoine PTE Limited | Etana Custody | 10ET |
| Quoine PTE Limited | Etana Custody | 10ET |
| Quoine PTE Limited | Etana Custody | 34AX |
| Quoine PTE Limited | Etana Custody | 34AX |
| Quoine PTE Limited | Etana Custody | 34AX |
| Quoine PTE Limited | Etana Custody | 54EB |
| Quoine PTE Limited | Etana Custody | 54EB |
| Quoine PTE Limited | Etana Custody | 54EB |
| Quoine PTE Limited | Etana Custody | 91CD |
| Quoine PTE Limited | Etana Custody | 91CD |
| Quoine PTE Limited | Etana Custody | 91CD |
| Quoine PTE Limited | Etana Custody | 94CV |
| Quoine PTE Limited | Etana Custody | 94CV |
| Quoine PTE Limited | J Trust Bank | 9031 |
| Quoine PTE Limited | J Trust Bank | 9048 |
| Quoine PTE Limited | J Trust Bank | 9064 |
| Quoine PTE Limited | J Trust Bank | 9072 |
| Quoine PTE Limited | Swapforex | N/A |
| Quoine Vietnam Co. Ltd. | Vietcombank | 1973 |
| Quoine Vietnam Co. Ltd. | Vietcombank | 1984 |
| Quoine Vietnam Co. Ltd. | Vietcombank | 1987 |

**<u>Exhibit 2</u>**
**Other Foreign Bank Operating Account Listing**

| Debtor Name | Bank | Last Four Digits of Account Number |
|---|---|---|
| Alameda Research KK | SBI | 4783 |
| Alameda Research KK | Sumitomo Mitsui Banking Corporation | 8851 |
| Cottonwood Grove Ltd. | HSBC Bank | 3838 |
| FTX Crypto Services Ltd. | Klarpay | 0065 |
| FTX Crypto Services Ltd. | Klarpay | 0517 |
| FTX Digital Assets LLC | Signature Bank | 7717 |
| FTX Digital Holdings (Singapore) Pte Ltd | DBS | 4931 |
| FTX EU Ltd | Bank of Cyprus | 3219 |
| FTX EU Ltd | Bank of Cyprus | 3308 |
| FTX EU Ltd | Bank of Cyprus | 5961 |
| FTX EU Ltd | Bank of Cyprus | 7240 |
| FTX EU Ltd | Bank of Cyprus | 9920 |
| FTX EU Ltd | Bank of Cyprus | 9981 |
| FTX EU Ltd | Eurobank | 0456 |
| FTX EU Ltd | Eurobank | 0464 |
| FTX EU Ltd | Eurobank | 5340 |
| FTX Europe AG | Klarpay | 0014 |
| FTX Europe AG | Klarpay | 0016 |
| FTX Europe AG | Maerki Baumann & Co. AG | 0001 |
| FTX Europe AG | Maerki Baumann & Co. AG | 1814 |
| FTX Europe AG | Maerki Baumann & Co. AG | 2333 |
| FTX Exchange FZE | Commercial Bank of Dubai | 2037 |
| FTX Exchange FZE | Commercial Bank of Dubai | 2891 |
| FTX Exchange FZE | Commercial Bank of Dubai | 2909 |
| FTX Exchange FZE | Emirate NBD Bank | 2601 |
| FTX Exchange FZE | Emirate NBD Bank | 2602 |
| FTX Exchange FZE | Klarpay | 0051 |
| FTX Exchange FZE | Klarpay | 0059 |
| FTX Exchange FZE | Zand Bank | 6501 |
| FTX Switzerland GmbH | Klarpay | 0012 |
| FTX Switzerland GmbH | Klarpay | 0014 |
| FTX Trading GmbH | Klarpay | 0013 |
| FTX Trading GmbH | Klarpay | 0015 |
| FTX Trading GmbH | Volksbank Bayern Mitte eG | 1672 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | AKBANK | 3390 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | AKBANK | 3397 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | AKBANK | 3454 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | AKBANK | 9236 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Fibabanka | 4958 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Fibabanka | 8852 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Fibabanka | 8860 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Fibabanka | 8868 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Garanti BBVA | 3954 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Garanti BBVA | 3955 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Garanti BBVA | 4254 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5002 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5003 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5004 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5005 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5006 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5007 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Siraat Banksai | 5009 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 1789 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 5817 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 6563 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 6576 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 7310 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 8840 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 9808 |
| FTX TURKEY TEKNOLOJİ VE TİCARET ANONİM ŞİRKET | Vakifbank | 9860 |
| Innovatia Ltd | Turicum | 2978 |
| Zubr Exchange Ltd | Turicum | 3826 |
| Zubr Exchange Ltd | Turicum | 3978 |

**Exhibit 3**

**De Minimis Cash Debtor Account Listing**

| Debtor Name | Bank | Last Four Digits of Account Number |
|---|---|---|
| Alameda Research LLC | Prime Trust | 8169 |
| Alameda Research LLC | Silvergate Bank | 5587 |
| Alameda Research LLC | Silvergate Bank | 6056 |
| Alameda Research Ltd | Prime Trust | 2505 |
| Alameda Research Ltd | Prime Trust | 4016_AUD |
| Alameda Research Ltd | Prime Trust | 4016_CAD |
| Alameda Research Ltd | Prime Trust | 4016_GBP |
| Alameda Research Ltd | Prime Trust | 4016_USD |
| Alameda Research Ltd | Silvergate Bank | 0006 |
| Alameda Research Ltd | Silvergate Bank | 4464 |
| Blockfolio, Inc. | Signature Bank | 4174 |
| Blockfolio, Inc. | Signet | 4174 |
| Blockfolio, Inc. | Wells Fargo | 3408 |
| Clifton Bay Investments LLC | Prime Trust | 5820 |
| Clifton Bay Investments LLC | Signature Bank | 2677 |
| Clifton Bay Investments Ltd | Deltec | 1400 |
| Crypto Bahamas LLC | Signature Bank | 5171 |
| Digital Custody Inc. | Silvergate Bank | 8406 |
| FTX Digital Assets LLC | Signature Bank | 7717 |
| FTX Lend Inc. | Signature Bank | 7651 |
| FTX Trading Ltd | Prime Trust | 8563 |
| FTX Trading Ltd | Signature Bank | 9018 |
| FTX Ventures Ltd | Signature Bank | 7872 |
| Good Luck Games, LLC | Signature Bank | 7432 |
| Goodman Investments Ltd | Signature Bank | 2903 |
| Goodman Investments Ltd | Signet | 2903 |
| Hawaii Digital Assets Inc. | Signature Bank | 7068 |
| Hive Empire Trading Pty Ltd | Signature Bank | 3087 |
| Island Bay Ventures Inc. | Signature Bank | 7261 |
| Ledger Holdings Inc. | Signature Bank | 8106 |
| Ledger Holdings Inc. | Silvergate Bank | 1235 |
| LedgerPrime Digital Asset Opportunites Fund, LLC | Signature Bank | 1315 |
| LedgerPrime Digital Asset Opportunites Fund, LLC | Silvergate Bank | 9795 |
| LedgerPrime Digital Asset Opportunities Master Fund LP | Signature Bank | 1323 |
| LedgerPrime Digital Asset Opportunities Master Fund LP | Silvergate Bank | 0702 |
| LedgerPrime Digital Asset Opportunities Master Fund LP | Silvergate Bank | 3979 |
| LedgerPrime LLC | Signature Bank | 5377 |
| LedgerPrime LLC | Signature Bank | 5385 |
| LedgerPrime LLC | Silvergate Bank | 1223 |
| LedgerPrime LLC | Silvergate Bank | 3145 |
| Maclaurin Investments Ltd. | Deltec | 5100 |
| Maclaurin Investments Ltd. | Prime Trust | 2872 |
| Maclaurin Investments Ltd. | Signature Bank | 2685 |
| Paper Bird Inc | Prime Trust | 7946 |
| Paper Bird Inc | Signature Bank | 8701 |
| West Realm Shires Financial Services Inc. | Prime Trust | 4404 |
| West Realm Shires Financial Services Inc. | Prime Trust | 5107 |
| West Realm Shires Inc. | Prime Trust | 5105 |
| West Realm Shires Inc. | Prime Trust | 5371 |
| West Realm Shires Inc. | Signature Bank | 7436 |
| West Realm Shires Services Inc. | Signature Bank | 3976 |
| West Realm Shires Services Inc. | Silvergate Bank | 1293 |
| West Realm Shires Services Inc. | Prime Trust | 4168 |
| West Realm Shires Services Inc. | Prime Trust | 5581 |
| West Realm Shires Services Inc. | Signature Bank | 2804 |
| West Realm Shires Services Inc. | Signature Bank | 7041 |
| West Realm Shires Services Inc. | Silvergate Bank | 8589 |