**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  January 25, 2024 at 10:00 a.m. (ET)**<br>**Objection Deadline:  January 18, 2024 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
AND APPROVING (I) FTX TRADING LTD.'S AND FTX PROPERTY
HOLDINGS LTD.'S ENTRY INTO, AND PERFORMANCE OF THEIR
OBLIGATIONS UNDER, THE BAHAMAS PROPERTIES EXCLUSIVE
SALES AGENCY AGREEMENT, (II) PROCEDURES FOR THE SALE
OR TRANSFER OF CERTAIN BAHAMAS PROPERTIES, AND
(III) ASSUMPTION, ASSIGNMENT AND REJECTION PROCEDURES**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving (i) FTX Trading's and FTX Property Holdings Ltd.'s ("FTX PropCo") entry into, and performance of their obligations under, the Exclusive Sales Agency Agreement, dated as of December 19, 2023, (the "Bahamas Properties Exclusive Sales

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Agency Agreement") with non-debtor FTX Digital Markets Ltd. ("FTX DM"), a copy of which

is attached hereto as Exhibit B, (ii) procedures for the sale or transfer of the Bahamas Properties

(as defined below), including any rights or interests therein, free and clear of any liens, claims,

interests and encumbrances, and (iii) certain procedures for the assumption and assignment or

rejection of certain executory contracts in connection therewith.  In support of this Motion, the

Debtors respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration

of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the

"Official Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

### I.   FTX PropCo and the Bahamas Properties

3.      Debtor FTX PropCo is an International Business Company incorporated in The Bahamas on July 22, 2021.  FTX PropCo is a wholly owned subsidiary of Debtor FTX Trading.  Since its incorporation, FTX PropCo purchased and held real estate properties on the island of New Providence in The Bahamas.  FTX PropCo owns, either directly or through its nominees, 35 luxury real estate properties (collectively, the "Bahamas Properties").[2]  FTX PropCo conducted no business other than the purchase and ownership of real property in The Bahamas and does not have other significant assets.

4.      The aggregate purchase price of the Bahamas Properties was approximately $222 million.  Purchase prices paid by FTX PropCo in respect of each of the Bahamas Properties range between approximately $500,000 and approximately $30 million: (i) five properties were less than $1 million; (ii) 24 properties were between $1 million and $10 million; (iii) three properties were between $10 million and $15 million and (iv) three properties exceeded $15 million.

5.      FTX DM is the largest creditor of FTX PropCo.  On June 29, 2023, FTX DM filed a proof of claim, claim number 3640, against FTX PropCo in the amount of $256,291,221.47 in respect of loans allegedly granted by FTX DM to FTX PropCo for both the acquisition and maintenance of the Bahamas Properties.

6.      Based on guidance from brokers in The Bahamas, the Debtors currently estimate that the total net sale proceeds from the disposition of real estate owned by FTX PropCo

---

[2]      The Bahamas Properties are listed in Exhibit A to the Bahamas Properties Exclusive Sales Agency Agreement.

will not be sufficient to pay the Stipulated PropCo Claim in full and, as a result, such claim is expected to be impaired in any chapter 11 plan with respect to FTX PropCo.

## II.     FTX DM, the Bahamian Liquidation Proceeding, and the Chapter 15 Case

7.      Non-Debtor FTX DM is an International Business Company incorporated in The Bahamas on July 22, 2021.  FTX DM is a wholly-owned subsidiary of Debtor FTX Trading.  On September 20, 2021, the Securities Commission of The Bahamas (the "Bahamas Commission") approved FTX DM's registration to operate as a Digital Asset Service Provider under the Digital Assets and Registered Exchanges Act, 2020 of The Bahamas.

8.      On November 10, 2022, the Bahamas Commission filed a petition for provisional liquidation of FTX DM (the "Bahamian Liquidation Proceeding") with the Supreme Court of The Bahamas (the "Bahamas Court").  On the same day, the Bahamas Court granted the petition and appointed Brian C. Simms KC as provisional liquidator of FTX DM.  On November 14, 2022, the Bahamas Court appointed Kevin G. Cambridge and Peter Greaves of PricewaterhouseCoopers (collectively and together with Mr. Simms KC, the "JOLs") as additional provisional liquidators, to serve alongside Mr. Simms KC.

9.      On November 15, 2022, the JOLs filed a petition for recognition of the Bahamian Liquidation Proceeding as a main proceeding under Chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, captioned *In re FTX Digital Markets Ltd. (in Provisional Liquidation)*, No. 22-BK-11516 (MEW), [D.I. 1]. On November 28, 2022, this Court entered an agreed order to transfer venue to this Court [D.I. 131].

10.      On February 15, 2023, this Court entered an order recognizing the Bahamian Liquidation Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code [D.I. 129].

11.     On November 10, 2023, the Bahamas Court entered an order, among other things, (a) appointing the JOLs as joint official liquidators of FTX DM and (b) determining that FTX DM be wound up in accordance with The Bahamas' Companies Act (as amended by *inter alia* the Companies (Winding Up Amendment) Act, 2011).

### III.     Disputes between the Debtors and FTX DM, Cooperation Agreement, Global Settlement and Arrangements Regarding the Bahamas Properties

12.     Since the commencement of these Chapter 11 Cases, the Debtors and FTX DM vigorously disputed certain facts, conclusions of law and jurisdictional matters, including matters concerning FTX PropCo.

13.     On January 6, 2023, the Debtors and FTX DM sought to resolve their various disputes and executed a settlement and cooperation agreement (the "Cooperation Agreement").  The Cooperation Agreement sought to establish a framework for cooperation and coordination of their activities as fiduciaries for the benefit of their respective creditors, including, among other things, to commence a joint marketing process for the Bahamas Properties.  Because the Bahamas Properties are located in The Bahamas, the parties agreed that the JOLs would take the lead in managing the properties, determining monetization strategy and conducting the marketing process.  *See* Cooperation Agreement § 15.  The parties also agreed that any dispositions would be subject to the Debtors' approval.  *See id*.  On February 9, 2023, this Court approved the Cooperation Agreement [D.I. 683].

14.     On February 14, 2023, following an application made by the Debtors, the Bahamas Court entered an order recognizing Mr. Kurt Knipp as the foreign representative of certain Debtors in The Bahamas.  However, the Debtors were unable to have FTX PropCo's Chapter 11 case recognized (or a foreign representative appointed) in The Bahamas on the basis

that, under Bahamian law, recognition is not available to entities that, like FTX PropCo, are incorporated in The Bahamas.[3]

15.     The disputes between the Debtors and FTX DM continued notwithstanding the Cooperation Agreement.  On March 19, 2023, the Debtors filed a complaint against FTX DM and the JOLs, commencing an adversary proceeding captioned *Alameda Research LLC, et al.* v. *FTX Digital Markets Ltd., et al.*, Adv. Pro. No. 23-50145 (JTD) [D.I. 1119] (the "Adversary Proceeding").  On July 12, 2023, FTX DM and the JOLs contested the Debtors' allegations by filing an answer and asserting their own counterclaims in the Adversary Proceeding [Adv. Pro. D.I. 27].

16.     On March 29, 2023, FTX DM filed a motion with this Court seeking clarification that the Debtors' automatic stay does not apply or, in the alternative, for relief from the automatic stay to file an application in the Bahamian Liquidation Proceeding to resolve certain legal issues regarding FTX DM's relationship to the FTX.com exchange and its customers [D.I. 1192].  On July 20, 2023, the Court entered an order denying FTX DM's motion for relief from the automatic stay and directed the parties to mediate [D.I. 1883].

17.     The Debtors and FTX DM commenced mediation regarding all of the issues in dispute among them, including those raised in the Adversary Proceeding, and have engaged in good faith, arm's-length discussions over a period of many months regarding the terms of a global settlement to resolve all those disputed issues.  The Debtors and FTX DM have also sought and obtained from the Court consensual extensions of the time to respond to claims and counterclaims asserted in the Adversary Proceeding to facilitate these discussions.  As a

---

[3]     The Debtors understand that no viable insolvency regime exists for recognition of FTX PropCo's Chapter 11 case in The Bahamas.

result of productive good faith negotiations, on December 19, 2023, the Debtors and FTX DM

entered into the Global Settlement Agreement.[4]

18.     As part of the settlement set forth in the Global Settlement Agreement, the

Debtors and FTX DM (a) stipulated that, upon effectiveness of the Debtors' plan of

reorganization, a Claim of FTX DM against FTX PropCo (the "Stipulated PropCo Claim") shall

be allowed as an unsecured prepetition claim in the amount of $256,291,221.47, (b) agreed that

FTX PropCo will be treated separately under the Debtors' plan of reorganization and not

substantively consolidated with any other Debtor, and (c) entered into the Bahamas Properties

Exclusive Sales Agency Agreement (subject to approval of this Court and sanction of Bahamas

Court).  See Global Settlement Agreement § 2.04.

19.     The Bahamas Properties Exclusive Sales Agency Agreement reflects the

recognition of the Debtors that FTX DM and a large part of the JOLs' team are physically

located in The Bahamas and can therefore more efficiently manage the sale operations under the

Debtors' supervision and subject to the Debtors' approval rights.  Pursuant to the Bahamas

Properties Exclusive Sales Agency Agreement, FTX DM shall, through the JOLs, take the

operational lead in managing the value-maximizing disposition of the Bahamas Properties.  The

JOLs' team is also well positioned to manage the sales process because they represent FTX

PropCo's largest creditor and, therefore, have a direct interest in maximizing value for the

benefit of FTX DM's estate.[5]

---

[4]     See Notice of Proposed Settlement with the Joint Official of FTX Digital Markets Ltd. [D.I. 4904].  For a more detailed discussion of the Global Settlement Agreement, see *Debtors' Motion for Entry of an Order Authorizing and Approving the Debtors' Entry into, and Performance of Their Obligations under, (I) the Global Settlement Agreement with FTX Digital Markets Ltd. and (II) the Loan Agreement with FTX Digital Markets Ltd.*, which is filed with this Court on the date hereof.

[5]     As discussed below, pursuant to the Bahamas Properties Exclusive Sales Agency Agreement, upon effectiveness of the Debtors' plan of reorganization, the gross proceeds from the sale of the Bahamas Properties

20.     The key terms of the Bahamas Properties Exclusive Sales Agency

Agreement are as follows:[6]

(a)     <u>FTX PropCo's Approval Is Required Before Any Asset Disposition</u>:  FTX PropCo has the sole and exclusive right to, in its sole discretion, approve a disposition of any of the Bahamas Properties to any person and the entry into any agreement for any disposition of any of the Bahamas Properties. Any purported disposition without the express prior written approval of FTX PropCo will be null and void.  *See* Bahamas Properties Exclusive Sales Agency Agreement § 3.01.

(b)     <u>Exclusive Agency of FTX PropCo</u>:  FTX PropCo agreed to appoint FTX DM as FTX PropCo's exclusive agent with powers to conduct the management, preparation for sale, marketing and sale of the Bahamas Properties.  FTX DM will have the full exclusive powers, as the agent of FTX PropCo, to (i) appoint and engage real estate agents to market the Bahamas Properties for sale, (ii) elicit or encourage expressions of interest or bids for the disposition of the Bahamas Properties, and (iii) conduct negotiations with any potential purchaser or other interested Person for any disposition of the Bahamas Properties.  *See id.* § 3.02.

(c)     <u>FTX DM Disposition Recommendations</u>:  FTX DM may recommend that FTX PropCo make a disposition of any of the Bahamas Properties or enter into a binding agreement for any disposition of the Bahamas Properties. In connection with each such recommendation, FTX DM is required to provide FTX PropCo copies of:  (i) all offers received by the JOLs; (ii) a broker price opinion including a comparative property sale analysis produced by a well-respected real estate broker; (iii) any valuation reports available to the JOLs; and (iv) any other information or documentation that FTX PropCo may reasonably request.  *See id.* § 3.03.

(d)     <u>Application of Disposition Proceeds and Escrow Account</u>:  Gross proceeds of dispositions of Bahamas Properties will be used:  (i) *first*, to pay disposition-related taxes and other charges or amounts owed by FTX PropCo in respect of the Bahamas Property subject to the disposition; (ii) *second*, to pay any reasonable, documented and customary real estate agent commissions related to the disposition; (iii) *third*, to pay the administrative expenses of FTX PropCo pursuant to applicable law; (iv) *fourth*, to transfer to FTX PropCo a total amount equal to the sum of

---

will be used to satisfy the Stipulated PropCo Claim.  *See* Bahamas Properties Exclusive Sales Agency Agreement article VI.

[6]     This overview is qualified in its entirety by reference to the terms of the Bahamas Properties Exclusive Sale Agency Agreement annexed to the Motion as <u>Exhibit B</u>.  To the extent that there is any conflict between this Motion and the Bahamas Properties Exclusive Sale Agency Agreement, the Bahamas Properties Exclusive Sale Agency Agreement shall govern in all respects.

any prepetition claim against FTX PropCo arising in the ordinary course in respect of the ownership, use, sale or transfer of the Bahamas Properties; (v) *fifth*, to satisfy the Stipulated FTX PropCo Claim; and (vi) *sixth*, to be distributed in accordance with the Debtors' plan of reorganization (once effective). Prior to the effectiveness of the Debtors' plan of reorganization, any amounts allocated under (v) and (vi) will be held in a segregated escrow account held by an escrow agent mutually acceptable to both parties. If the Global Settlement Agreement is terminated prior to the effectiveness of the Debtors' plan of reorganization, the net disposition proceeds will continue to be held in the escrow account pending: (x) agreement of alternative arrangements reasonably acceptable to the parties regarding the ownership of such proceeds; or (y) a decision by this Court and the Bahamas Court after a hearing jointly conducted by both courts to determine the ownership of such proceeds. *See id*. §§ 6.01, 6.02 and 6.04.

(e)     <u>Court Approval Condition Precedent</u>: The agreement will not become effective unless and until approved by this Court and sanctioned by the Bahamas Court. *See id*. § 2.01.

## **Jurisdiction**

21.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and Local Rules 2002-1, 6004-1 and 9006-1. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **Relief Requested**

22.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving (a) FTX Trading's and FTX

PropCo's entry into, and performance of their obligations under, the Bahamas Properties Exclusive Sale Agency Agreement, (b) the Sale Procedures (as defined below) to (i) sell or transfer the Bahamas Properties, including any rights or interests, and (ii) pay necessary fees and expenses incurred in connection with the Sales (as defined below), and (c) certain procedures for the assumption and assignment and rejection of certain executory contracts.

### Bahamas Properties Sales Procedures

23.     To alleviate the cost and delay of filing a separate motion for each proposed sale of the Bahamas Properties (each, a "Sale") and to eliminate any uncertainty regarding the Debtors' authority to consummate certain transactions, the Debtors seek approval of expedited procedures (the "Sale Procedures") to govern the sale of the Bahamas Properties. The Debtors do not, at this time, have a specific proposed sale or buyer for any of the Bahamas Properties.  Rather, to allow the marketing of the Bahamas Properties by the JOLs pursuant to the Bahamas Properties Exclusive Sales Agency Agreement and to obtain maximum value and to facilitate a more expeditious and cost-effective review of each Sale by the Debtors and other parties-in-interest, the Debtors propose to utilize the Sale Procedures.[7]

24.     The Sale Procedures shall not apply to any Sale of any Bahamas Properties to an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.  Additionally, the Debtors will not sell any causes of action against any employee, director or officer of the Debtors in connection with any Sale of the Bahamas Properties.

---

[7]    The Debtors are continuing discussions with the JOLs to finalize the Sale Procedures and will file them shortly.

**Basis for Relief**

I.   **Entry Into the Bahamas Properties Exclusive Sales Agency Agreement Is a Proper Exercise of the Debtors' Business Judgment.**

25.   Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and hearing.  11 U.S.C. § 363(b)(1).  To obtain court approval to use property under section 363(b), the Debtors need only show a legitimate business justification for the proposed action.  *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).  Generally, a court should be deferential to the determinations of management, and where a debtor "articulates a reasonable basis for its business decisions . . . , courts will generally not entertain objections to the debtor's conduct." *See In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

26.   The business judgment rule shields a debtor's management from judicial second-guessing.  *See In re Johns-Manville Corp.*, 60 B.R. at 615-16 ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

27.     FTX Trading's and FTX PropCo's entry into the Bahamas Properties Exclusive Sales Agency Agreement is a valid exercise of their business judgment and should be approved pursuant to section 363(b) of the Bankruptcy Code.  Entry into, and performance of the obligations under, the agreement represent a sound exercise of the Debtors' business judgment because it establishes a cooperative framework to monetize the Bahamas Properties with FTX DM, acting by the JOLs, intended to maximize recoveries and minimize expenses for the benefit of all stakeholders.  Such cooperative framework is particularly valuable here given that no viable insolvency regime exists for recognition of FTX PropCo's Chapter 11 case in The Bahamas.  Accordingly, because, as a practical matter, there is no assurance that any decision by this Court with respect to the Bahamas Properties will be enforced in The Bahamas absent a consensual arrangement between FTX PropCo and FTX DM, the entry into the Bahamas Properties Exclusive Sales Agency Agreement and the Global Settlement Agreement unlocks material value to FTX PropCo's estate by creating a practical solution that allows the monetization of valuable assets.

28.     In addition, the JOLs are well positioned to execute their obligations under the Bahamas Properties Exclusive Sales Agency Agreement and to assist the Debtors in maximizing the value of the Bahamas Properties.  *First*, the JOLs are located in The Bahamas and have unique access to the Bahamian real estate market.  The JOLs also have extensive experience conducting liquidation processes in The Bahamas.  *Second*, upon effectiveness of the Debtors' plan of reorganization and subject to the terms of the Bahamas Properties Exclusive Agency Agreement, gross proceeds from the sale of the Bahamas Properties will be used to satisfy the Stipulated PropCo Claim held by FTX DM, which further incentivizes the JOLs to assist the Debtors in pursuing value-maximizing dispositions of the Bahamas Properties.  In any

case, if FTX PropCo determines that a proposed disposition is not value-maximizing, FTX

PropCo will have full discretion under the agreement not to approve the transaction.

        29.     Further, the Debtors have also determined, in the exercise of their business

judgment, that the Bahamas Properties Exclusive Sales Agency Agreement contains reasonable

terms and conditions.  FTX PropCo retains sole discretion to approve any disposition of any of

the Bahamas Properties and the entry into any agreement for any disposition of any of the

Bahamas Properties.  In addition, nothing in the Bahamas Properties Exclusive Sales Agency

Agreement (a) requires FTX PropCo to, or limits FTX PropCo's discretion to, approve any

disposition of any Bahamas Property recommended by the JOLs, (b) requires the Debtors or any

estate professionals to take any action, or refrain from taking any action, that would result in a

breach of duty imposed on them by applicable law, (c) authorizes any action that otherwise

requires the specific approval of this Court, or (d) precludes the Debtors or any party in interest

from asserting such party's substantive rights under applicable laws.

        30.     Entry into the agreement is also authorized under the Court's equitable

powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to section 105(a), this Court

may "issue any order, process, or judgment that is necessary to carry out the provisions of this

title."  *See* 11 U.S.C. § 105(a); *see also U.S.* v. *Energy Resources Co.*, 495 U.S. 545, 549 (1990);

*In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy

Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders

necessary or appropriate to carry out provisions of the Bankruptcy Code.").  "The basic purpose

of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or

necessary in aid of the exercise of their jurisdiction."  2 COLLIER ON BANKRUPTCY ¶ 105.01

(Alan R. Resnick & Henry J. Sommer eds., 16th ed. 2022).  The Debtors submit that FTX

Trading's and FTX PropCo's entry into, and performance of their obligations under, the

Bahamas Properties Exclusive Sales Agency Agreement is necessary, appropriate and in the best

interest of the Debtors, their estates and all stakeholders at this juncture of these Chapter 11

Cases.

31.     For the foregoing reasons, and the supporting authority found in sections

105(a) and 363(b) of the Bankruptcy Code, the Debtors submit that, in their informed business

judgment, the approval of the Bahamas Properties Exclusive Sales Agency Agreement, and the

performance of their obligations, (i) reflects the reasonable exercise of the Debtors' sound

business judgment, (ii) is appropriate to promote the efficient and effective administration of

these Chapter 11 Cases, and (iii) is in the best interests of Debtors' estates and all stakeholders.

## II.    The Proposed Sales and Sale Procedures Should Be Approved and Authorized as a Sound Exercise of the Debtors' Business Judgment.

32.     Section 363(c) of the Bankruptcy Code permits debtors to "enter into

transactions, including the sale or lease of property of the estate, in the ordinary course of

business, without notice or a hearing."   11 U.S.C. § 363(c)(1).

33.     FTX PropCo's ordinary course business is the management of the day-to-

day operations of the Bahamas Properties, including exercising rights and performing its

obligations under real estate agreements, marketing and purchasing properties and making

various operational decisions.  Accordingly, since management and sale of the Bahamas

Properties is within FTX PropCo's ordinary course of business, the Debtors submit that the

proposed Sales are permitted under section 363(c) of the Bankruptcy Code without the need for

Court approval.[8]

---

[8]     FTX PropCo has entered into, either directly or through its nominees, prepetition purchase agreements with certain sellers to purchase real estate properties in The Bahamas (the "Bahamas Purchase Agreements").

34.     Nevertheless, the Debtors seek authorization to consummate the proposed Sales under section 363(b) of the Bankruptcy Code.   Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d at 1071 (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).

35.     In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

---

The terms of these contracts generally provide for, among other things, the payment of a purchase price deposit, the payment of the balance of the purchase price and relevant taxes and fees associated with conveyancing of the acquired property.  FTX PropCo reserves its right to rely on orders entered by this Court—including the  *Final Order (i) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, Foreign Vendors, 503(b)(9) Claimants and Lien Claimants, (ii) Authorizing All Financial Institutions to Honor All Related Payment Requests and (iii) Granting Certain Related Relief* [D.I. 429]—to make payments under the Bahamas Purchase Agreements.

36.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.     The Proposed Sales Are Justified by Good and Sound Business Justification.

37.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

38.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.   Sales pursuant to the Sale Procedures will:  (a) enable the Debtors to defray or avoid any operational, carrying or other expenses associated with certain of the Bahamas Properties, including homeowners association fees, utility payments, maintenance fees and real property taxes; (b) protect the Debtors against the possible declining value of certain Bahamas Properties; and (c) minimize the costs associated with selling these assets through the use of more streamlined processes appropriate for luxury real estate assets.

39.     Selling or transferring the Bahamas Properties pursuant to the Sale Procedures is the most efficient and cost-effective means of maximizing the value for the benefit of the estates.  Obtaining Court approval for each Sale would result in unnecessary administrative costs attendant to drafting, serving and filing pleadings, as well as time incurred by attorneys for Court appearances and potentially conducting expansive marketing processes and auctions, which could drastically reduce the ultimate net value of these assets.  The proceeds that will be generated by many, if not all, of the sales of the Bahamas Properties do not warrant the incurrence of such expenses.

40.     Moreover, the Sale Procedures will enable the Debtors to seize sale opportunities that may be available only for a limited time, resulting in recovery of certain value for the Bahamas Properties through their prompt monetization.  The Debtors may face stringent time constraints in terms of meeting the closing deadlines established by interested purchasers.  The Sale Procedures will permit the Debtors to be responsive to the needs of interested purchasers (and thereby guard against lost sales due to delay), while still providing interested parties with the ability to review more significant transactions.  Further, the Sale Procedures are appropriate in light of the size and nature of the Debtors' estates.  The Bahamas Properties constitute a narrow, readily identifiable pool of assets located abroad that are not otherwise central to the ongoing reorganization efforts of the Debtors.  In addition, the Debtors will consult with the Consulting Professionals in good faith.  The estates are further protected by the opportunity for the Sale Notice Parties to review and object to any Sales for an aggregate selling price greater than a threshold U.S. Dollar amount specified in the Sale Procedures (the "De Minimis Amount").

41.     Courts in this district and other districts have approved sale procedures to permit the sale of real property assets in other chapter 11 cases.   *See, e.g.*, *In re WCI Communities, Inc.*, No. 08-11643 (KJC) (Aug. 5, 2008), D.I. 61 (authorizing the construction and sale of homes, residences, and other real property); *In re Dowling College*, No. 16-75535 (REG) (Bankr. E.D.N.Y. Jan. 13, 2017), D.I. 164 (authorizing the sale of residential portfolio of 33 properties); *In re Cabi Downtown LLC*, No. 09-27168 (LMI) (Bankr. S.D. Fla. Sep. 14, 2009), D.I. 109 (authorizing the sale of over 800 residential condominium units); *In re Towers of Channelside, LLC*, No. 08-00939 (KRM) (Bankr. C.D. Fla. Feb. 15, 2008), D.I. 54 (authorizing the sale of approximately 165 residential condominium units); *In re TOUSA, Inc.*, No. 08-10928 (JKO) (S.D. Fla. Jan. 31, 2008), D.I. 110 (authorizing the construction and sale of homes).

42.     In addition, it is well settled that the sale of assets by means of a private sale can, and in appropriate cases should, be approved.   *See, e.g.*, *Hartman SPE, LLC*, No. 23-11452 (MFW) (Oct. 4, 2023) D.I. 131 (authorizing the private sale of certain nonresidential real property); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the former Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion … to conduct public or private sales of estate property.") (internal quotations and citations omitted); *Penn Mut. Life Ins. Co.* v. *Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale… and there is no requirement that the sale be by public auction."); *see also In re Promise Healthcare Group, LLC, et al.*, Case No. 18-12491 (CSS) D.I. 426, 770, and 778 (orders approving the private sale of the Debtor's Louisiana facilities and their St. Alexius facility outside the ordinary course of business).

B.    <u>The Noticing Procedures Are Reasonable and Appropriate</u>.

43.    The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed transaction, appropriate notice and an opportunity for a hearing are given.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances").  Bankruptcy Rules 2002(a)(2), 2002(i) and 2002(k) require that a minimum of 21 days' notice of the proposed sale of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees," the Official Committee and the U.S. Trustee unless a debtor shows "cause."  *See* FED. R. BANKR. P. 2002(a)(2), 2002(i), 2002(k).  Once the debtor shows "cause," however, Bankruptcy Rule 2002(a)(2) authorizes the Court to shorten the generally applicable 21-day notice period and to direct a method of notice other than mail.  *See* FED. R. BANKR. P. 2002(a)(2).  Moreover, the Court is authorized to limit, even without a prior showing of cause, notice of asset sales outside the ordinary course of a debtor's business to the Official Committee and any creditor or equity holder requesting notice.  *See* FED. R. BANKR. P. 2002(i). In addition, the sale or transfer of property outside the ordinary course of business may be authorized without an actual hearing if no party in interest timely requests such a hearing.  *See* 11 U.S.C. § 102(1)(B)(i) (authorizing "an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest," notwithstanding the statutory requirement for "notice and a hearing").

44.    The usual process of obtaining court approval for each Sale: (a) would result in costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions and (b) in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.  The Debtors therefore

propose to streamline the process and shorten the applicable notice periods as described herein to maximize the net value realized from Sales for the benefit of all parties-in-interest.

45.     The Sale Procedures comply with the notice and hearing requirements of the Bankruptcy Code, as well as due process, by providing the Sale Notice Parties with an opportunity to present objections as to each sale of the Bahamas Properties proposed to be sold for more than the De Minimis Amount and to request a hearing.  Furthermore, all known holders of liens will receive adequate notice and an opportunity to object to sales of the Bahamas Properties valued above the De Minimis Amount.  Lienholders, if any, of sales of the Bahamas Properties below this value will have their liens attach to the proceeds of the applicable Sale.

46.     Based on the foregoing, the Debtors submit that sufficient cause exists to implement Sale Procedures for the Bahamas Properties and that such procedures will improve the efficiency of the sale process for the Bahamas Properties, thereby maximizing the value of such assets to the Debtors' estates.

C.   The Successful Bidder Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code.

47.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

48.    Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

49.    While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

50.    The Debtors submit that any Sale consummated in accordance with the Sale Procedures will be an arm's-length transaction without indication of any fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders or similar conduct that would cause section 363(m) of the Bankruptcy Code to not apply to such Sales.  Based on the foregoing, the Debtors request that the Court

determine that each purchaser of a Bahamas Property in a privately negotiated transaction is a

good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

### III.    The Sales Should Be Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

51.    In the interest of attracting the best offers, the Debtors request

authorization to sell the Bahamas Properties free and clear of any liens, claims, encumbrances

and other interests in accordance with section 363(f) of the Bankruptcy Code, with any such

liens, claims, encumbrances and other interests attaching to the proceeds of the sale of the

Bahamas Properties.

52.    The sale of estate property free and clear of any interest is governed by

section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

53.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive:

approval of a proposed sale of assets free and clear of interests requires only that one of the five

requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*,

282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the

conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

54.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

55.     The Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code.   Pursuant to the Sale Procedures, to the extent there are any known holders of liens on the Bahamas Properties valued above the De Minimis Amount, the Debtors will provide such parties with a Sale Notice prior to the disposition of the applicable Bahamas Properties. Absent any objection to a Sale, a holder of a lien will be deemed to have consented to such sale, and the relevant asset may be sold free and clear of such lien.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858). To the extent that consent of a lienholder is neither obtained nor deemed to have been obtained, the Debtors submit that with respect to each Sale, lienholders could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.

56.     A sale of the Bahamas Properties free and clear of claims and interests is necessary to maximize the value of such assets.  If the Bahamas Properties are not sold free and

clear of claims and interests, or if the buyers would, or in the future could, be liable for any such claim or interest, the Debtors would be unable to successfully market the Bahamas Properties without a significant reduction in price. Such a sale would provide substantially less value and certainty for the Debtors' estates.

57. Furthermore, any lien or claim on, in, to or against the Bahamas Properties existing immediately prior to the Sale of any such assets will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest. The Debtors submit that holders of any claim or interest will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests. Accordingly, the Debtors submit that a Sale, if consummated, that is free and clear of claims and interests is in the best interests of the Debtors' estates and stakeholders.

## IV. The Assumption and Assignment or Rejection of Executory Contracts Should Be Approved.

58. Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract. *See, e.g.*, *Mission Prod. Holdings* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (noting that a bankruptcy court will generally approve a debtors' choice to assume or reject an executory contract under the deferential business judgment rule) (citation omitted); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (holding that a debtor's decision to reject an executory contract "is governed by the business judgment standard" and "can only be overturned if the decision was the product of bad faith, whim or caprice") (citations omitted). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract benefits the estate. *See Sharon Steel Corp.* v. *Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989). Section 365 of the Bankruptcy Code provides that a debtor-in-

possession may generally assume and assign any executory contract of the debtor, subject to approval of the court, if it:  (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, the applicable defaults and (b) provides adequate assurance of future performance under such contract, including by its assignee.  11 U.S.C. § 365.

59.     Rejecting certain contracts or assuming and assigning certain contracts to purchasers of the Bahamas Properties is an appropriate exercise of the Debtors' business judgment.  In the event of a sale, the applicable contracts will no longer have any value to the Debtors.  By rejecting certain contracts or assuming and assigning certain contracts to purchasers of the Bahamas Properties, the Debtors will be able to maximize the value of the applicable sale to their estates on a case-by-case basis. The Debtors therefore submit that the rejection or assumption and assignment of contracts to purchasers of the Bahamas Properties is an appropriate exercise of the Debtors' business judgment and should be approved.

60.     The consummation of any sale of the Bahamas Properties involving the assignment of an assumed contract will be contingent upon the Debtors' compliance with the requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) requires that any outstanding defaults under the contract to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.  11 U.S.C. § 365(b)(1).  The Debtors' assumption and assignment of certain contracts will be contingent upon payment or reserve of Cure Amounts and effective only upon the closing of an applicable sale of the applicable Bahamas Properties.  As set forth above, the Debtors propose to include in each Sale Notice the Debtors' good-faith calculations of the applicable Cure Amounts.  Counterparties will have the opportunity to file any objections to the proposed assumption of their respective contract.

61.    Additionally, pursuant to section 365(f)(2) of the Bankruptcy Code, a
debtor may assign an executory contract or unexpired lease only if "adequate assurance of future
performance by the assignee of such contract or lease is provided."  11 U.S.C. § 365(f)(2).  The
meaning of "adequate assurance of future performance" depends on the facts and circumstances
of each case, but should be given "practical, pragmatic construction."  *See In re Fleming Cos.*,
499 F.3d 300, 307 (3d Cir. 2007) (citing *Cinicola* v. *Scharffenberger*, 248 F.3d 110, 120 n.10 (3d
Cir. 2001)); *see also In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill.
1985) ("Although no single solution will satisfy every case, the required assurance will fall
considerably short of an absolute guarantee of performance.") (citation omitted).  Among other
things, adequate assurance may be provided by evidencing the assignee's financial health and
experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56
B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance
where prospective assignee of lease has financial resources and expressed willingness to devote
sufficient funding to business to give it strong likelihood of succeeding).

62.    As set forth above, where applicable, the Sale Notice or Contract
Assignment Notice will include a statement regarding the adequate assurance of future
performance by the proposed purchaser of a Bahamas Property, consistent with section 365 of
the Bankruptcy Code.

63.    In addition, to facilitate the assumption and assignment of certain
contracts, the Debtors further request that the Court find that all applicable anti-assignment
provisions, whether such provisions expressly prohibit or have the effect of restricting or limiting
assignment of such contract or lease, to be unenforceable and prohibited pursuant to section
365(f) of the Bankruptcy Code.  Section 365(f)(1) provides in part that, "notwithstanding a

provision in an executory contract or unexpired lease of the debtor, or in applicable law, that

prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign

such contract or lease . . . ."  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that:

> Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

11 U.S.C. § 365(f)(3).

64. Based on the foregoing, the Debtors' rejection or assumption and

assignment of certain contracts in connection with the sale of the Bahamas Properties satisfies

the requirements under section 365 of the Bankruptcy Code and should be approved.

### **Bankruptcy Rules 6004(a) and 6004(h)**

65. The Debtors request that the Court (a) find that notice of the Motion is

adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay

requirements under Bankruptcy Rules 6004(h).  In light of the Debtors' current financial

conditions and the importance of an efficient timeline for maximizing the value of the Bahamas

Properties, the proposed Sales contemplated herein should be consummated as soon as

practicable to allow the Debtors to maximize value for their estates and stakeholders.

Accordingly, the Debtors request that the Order be effective immediately upon entry and that the

14-day stay imposed by Bankruptcy Rules 6004(h) be waived.

### **Notice**

66. Notice of this Motion has been provided to:  (a) the U.S. Trustee;

(b) counsel to the Official Committee; (c) counsel to FTX DM; (d) the Securities and Exchange

Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice;

(g) the United States Attorney for the District of Delaware; and (h) to the extent not listed herein,

those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in

light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

67.     No prior motion for the relief requested herein has been made to this or

any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated:  January 4, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*_____
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*