## <u>EXHIBIT B</u>

**Bahamas Properties Exclusive Sales Agency Agreement**

EXECUTION VERSION

## EXCLUSIVE SALES AGENCY AGREEMENT

This EXCLUSIVE SALES AGENCY AGREEMENT (the "Agreement"), dated December 19, 2023 (the "Execution Date"), is entered into by and among FTX Trading Ltd., FTX Property Holdings Ltd. ("PropCo" and, together with FTX Trading Ltd., the "Chapter 11 Parties") and FTX Digital Markets Ltd. ("FTX DM") acting by the JOLs (as defined below) as agents and without personal liability.  The Chapter 11 Parties and FTX DM are collectively referred to as the "Parties" and individually as a "Party."

## RECITALS

**WHEREAS**, the Parties have entered into the Global Settlement Agreement, dated as of the date hereof (the "GSA");

**WHEREAS**, the GSA provides for the prompt cash sale of the real estate owned by PropCo in The Bahamas free and clear of all claims and interests; and

**WHEREAS**, subject to the terms and conditions set forth herein and the GSA, the Parties have agreed to this Agreement;

**NOW**, **THEREFORE**, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

### Article I.    Definitions and Interpretation

Section 1.01    Definitions.  Capitalized terms used but not defined herein shall have the meaning set forth in the GSA.  The following terms shall have the following definitions:

"Agreement" has the meaning set forth in the preamble to this Agreement.

"Agreement Effective Period" means the period from the Effective Date to the Termination Date.

"Bahamas Properties" shall mean all interests of PropCo in the real estate assets listed in Exhibit A to this Agreement and, where context admits, any part thereof.

"Chapter 11 Parties" has the meaning set forth in the preamble to this Agreement.

"Disposal" means, in respect of the Bahamas Properties, the entry into any agreement for and the grant or transfer of any freehold or leasehold interest in land or any equitable interest in the same, the grant of any legal or equitable easement, mortgage, security, charge, easement, restrictive covenant, exception, reservation or encumbrance affecting or otherwise in respect of any of the Bahamas Properties (and, "to Dispose" shall mean to make a Disposal).

"Dispute Resolution Protocol" means the dispute resolution protocol attached to the GSA.

"Effective Date" has the meaning set forth in Section 2.01.

"Escrow Account" means a segregated escrow account held by an escrow agent, mutually acceptable by both Parties, in accordance with the terms of an escrow agreement consistent with the terms of this Agreement and otherwise mutually acceptable by both Parties.

"Execution Date" has the meaning set forth in the preamble to this Agreement.

"FTX DM" has the meaning set forth in the preamble to this Agreement.

"FTX DM's Powers" means the powers granted to FTX DM under Article III and the Power of Attorney relating to FTX DM.

"GSA" has the meaning set forth in the recitals to this Agreement.

"Net Proceeds" has the meaning set forth in Section 6.02.

"Party" has the meaning set forth in the preamble to this Agreement.

"Power of Attorney" means a power of attorney in the form of the draft appended to this Agreement as Exhibit B.

"PropCo" has the meaning set forth in the preamble to this Agreement.

"Termination Date" means the date on which termination of this Agreement is effective in accordance with Article IX of this Agreement.

"U.S. Sale Order" means the order entered by the Bankruptcy Court authorizing PropCo's entry into this Agreement and approving the implementation of its terms.

Section 1.02    Interpretation.  For purposes of this Agreement:

(a)    in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender;

(b)    capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

(c)    unless otherwise specified, any reference in this Agreement to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)    any capitalized terms in this Agreement that are defined with reference to another agreement are defined with reference to such other agreement as of the date of this

Agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the date of this Agreement;

(e)      if any payment, distribution, act or deadline under this Agreement is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date;

(f)      unless otherwise specified, all references in this Agreement to "Articles" or "Sections" are references to Sections of this Agreement;

(g)      the words "herein," "hereof," and "hereto" refer to this Agreement in its entirety rather than to any particular portion of this Agreement;

(h)      captions and headings to Sections or groups of Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Agreement;

(i)      references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable limited liability company Laws;

(j)      the use of "include" or "including" is without limitation, whether stated or not;

(k)      all references to "$" and "dollars" will be deemed to refer to United States currency unless otherwise specifically provided; and

(l)      the word "or" shall not be exclusive.

### Article II.      Effective Date

Section 2.01    Effective Date.  This Agreement shall become effective on the first date on which the Bahamas Approval Order and the U.S. Sale Order have been entered (such date, the "Effective Date").

### Article III.      Powers of Marketing and Sale

Section 3.01    PropCo Approval of Disposals.  PropCo shall have the sole and exclusive right to, in its sole discretion, approve a Disposal of any of the Bahamas Properties to any Person and the entry into any agreement for any Disposal of any of the Bahamas Properties.  Any purported Disposal of any of the Bahamas Properties or entry into any agreement for any Disposal of any of the Bahamas Properties without the express prior written approval of PropCo shall be null and void.

Section 3.02    Exclusive Agency.  Subject to the terms and conditions of this Agreement, PropCo hereby appoints (and FTX Trading Ltd. consents to such appointment) FTX DM as PropCo's sole and exclusive agent with powers during the Agreement Effective Period to conduct the management, preparation for sale, marketing for sale and sale of the

Bahamas Properties and accordingly grants FTX DM full and exclusive powers, as its agent and on such terms and in such manner as FTX DM shall think fit, to:

        (a)     appoint and engage real estate agents to market the Bahamas Properties for sale;

        (b)     appoint and engage valuers, appraisers, surveyors, property consultants or experts, marketing consultants or experts, photographers, and other marketing or property professionals;

        (c)     take any steps, and appoint or engage any contractor or sub-agent, to manage, secure, maintain, repair, refurbish, develop, improve, partition, decorate, sub-divide or merge any or all of the Bahamas Properties;

        (d)     appoint and engage lawyers, attorneys or conveyancers in The Bahamas or any other jurisdiction to act on FTX DM's behalf (including as the exclusive agent of PropCo hereunder) in the exercise of FTX DM's Powers and in connection with any Disposal;

        (e)     procure insurance and pay related premiums;

        (f)     take any steps to enter into or terminate or otherwise bring to an end any lease or license or any other rights or alleged rights or interests of any Person in respect of any of the Bahamas Properties and otherwise to obtain or secure vacant possession and/or marketable title to the same with the prior written consent of PropCo, such consent not to be unreasonably withheld;

        (g)     bring or defend legal proceedings in the name of PropCo and compromise any such proceedings or any Claim of or against PropCo concerning title to or rights or interests or obligations over or in respect of any of the Bahamas Properties or any neighbouring or nearby property with the prior written consent of PropCo, such consent not to be unreasonably withheld;

        (h)     borrow money on the security of any of the Bahamas Properties for the purpose of defraying any costs, charges, losses or expenses (including Administrative Expenses) which amounts shall be incurred in the exercise of FTX DM's Powers and generally for the purposes thereof; *provided* that any such financing shall not be obtained without the prior written consent of PropCo, such consent not to be unreasonably withheld;

        (i)     elicit or encourage expressions of interest or bids for the Disposal of the Bahamas Properties;

        (j)     conduct negotiations with any potential purchaser or other interested Person for any Disposal of the Bahamas Properties;

        (k)     negotiate with any Person for any Disposal of the Bahamas Properties;

        (l)     grant, modify or discharge any easement, restrictive covenant, exception, reservation, encumbrance affecting or otherwise in respect of any of the Bahamas

Properties with the prior written consent of PropCo, such consent not to be unreasonably withheld;

(m)    discharge out of the proceeds of any Disposal or otherwise any mortgage, charge, security or encumbrance over any of the Bahamas Properties;

(n)    pay or otherwise discharge all Disposal-related Taxes or other charges or amounts owed by PropCo in respect of the Bahamas Property subject to <u>Article VI</u>; and

(o)    take any other step incidental to the powers set out in this <u>Section 3.02</u>.

Section 3.03    <u>FTX DM Disposal Recommendation</u>.  FTX DM may recommend that PropCo make a Disposal of any of the Bahamas Properties or enter into a binding agreement for any Disposal of the Bahamas Properties.  In connection with each such recommendation, FTX DM shall provide PropCo copies of:  (a) all offers received by the JOLs; (b) a broker price opinion including a comparative property sale analysis produced by a well-respected real estate broker; (c) any valuation reports available to the JOLs; and (d) any other information or documentation that PropCo may reasonably request.  Following a recommendation by DM to PropCo in accordance with this <u>Section 3.03</u>, PropCo shall decide whether to approve to such recommended Disposal pursuant to <u>Section 3.01</u>.

Section 3.04    <u>Power of Attorney</u>.  On the Effective Date, PropCo shall execute the Power of Attorney confirming and (to the extent necessary) conferring upon FTX DM all necessary powers and authorities to enter agreements for Disposals of the Bahamas Properties on behalf of PropCo after receipt of the requisite approval from PropCo pursuant to the terms of this Agreement, including <u>Section 3.01</u> and <u>Section 3.03</u>.  PropCo shall not exercise its right to revoke the Power of Attorney during the Agreement Effective Period; *provided* that PropCo may exercise the right to revoke the Power of Attorney with immediate effect if PropCo has terminated this Agreement in accordance with this Agreement.  To the extent of any conflicts between the terms of this Agreement and the terms of the Power of Attorney, the terms of this Agreement shall control.

Section 3.05    <u>Delegation</u>.  Subject to the prior consent of PropCo (such consent not to be unreasonably withheld), FTX DM is permitted to delegate any of the powers set forth in <u>Section 3.02</u> to any other Person.

**Article IV.    FTX DM's Obligations and Limitations of Liability**

Section 4.01    <u>FTX DM's Obligations</u>.  FTX DM shall:

(a)    act in good faith in exercising FTX DM's Powers;

(b)    use reasonable endeavors to achieve a Disposal of all of the Bahamas Properties as soon as reasonably practicable;

(c)    exercise reasonable care and skill in seeking to Dispose of the Bahamas Properties at the best reasonably obtainable market value.  The standard of care and skill required shall be the same as that owed to a mortgagor by a mortgagee in possession of property exercising a power of sale as a matter of the law of The Bahamas; and

(d)      in exercising FTX DM's Powers and in performing its obligations, be entitled to rely upon and follow the advice of appropriately qualified professional advisors in respect of matters within their ostensible areas of expertise and shall not be liable (to the greatest extent permitted by Law) for any loss or damage to PropCo arising from steps taken or not taken in reliance on such advice.

Section 4.02    Limitation of Liability.  Neither FTX DM nor its officers or agents (including the JOLs) from time to time in exercising FTX DM's Powers and in performing its obligations under this Agreement shall be liable for any loss or damage to PropCo (whether directly, indirectly, derivatively or otherwise) arising by reason of act or omission carried out by or on their behalf save where caused by the gross negligence, willful default, fraud or dishonesty of FTX DM or its said officers or agents.

Section 4.03    Administrative Expenses.  PropCo shall pay to FTX DM all Administrative Expenses incurred by FTX DM in respect of PropCo, including any liabilities, claims, or demands arising out of FTX DM's performance of this Agreement other than where FTX DM or the JOLs have acted with gross negligence, willful default, fraud or dishonesty.

**Article V.      Information Sharing and Consultation Between FTX DM and PropCo**

Section 5.01    Information Sharing and Consultation.  FTX DM shall: (a) respond to all written questions from the Chapter 11 Parties about the exercise of FTX DM's Powers promptly and in writing, and provide such documents as the Chapter 11 Parties may reasonably request in connection with any such written inquiries; and (b) as requested by the Chapter 11 Parties from time to time on reasonable notice, attend (by its representatives) virtual or in-person meetings with representatives of the Chapter 11 Parties to discuss the Bahamas Properties and/or the exercise of FTX DM's Powers.

**Article VI.      Application of Disposal Proceeds**

Section 6.01    Waterfall.  Subject to Section 6.02, the gross proceeds of a Disposal of a Bahamas Property shall be used in the following manner:

(a)      *first*, to pay Disposal-related Taxes and other charges or amounts owed by PropCo in respect of the Bahamas Property subject to the Disposal payable in The Bahamas;

(b)      *second*, to pay any reasonable, documented and customary real estate agent commissions related to the Disposal;

(c)      *third*, to pay the Administrative Expenses of PropCo pursuant to applicable Law;

(d)      *fourth*, to transfer to PropCo a total amount equal to the sum of the PropCo Ordinary Course Claims;

(e)      *fifth*, to satisfy the Stipulated PropCo Claim; and

(f)      *sixth*, to be distributed in accordance with the Acceptable Plan.

Section 6.02    Payments.  Prior to the Final Settlement Effective Date, (a) any amounts allocated under clauses (a) through (d) of Section 6.01 shall be paid directly to their beneficiaries from the proceeds of a Disposal in the ordinary course and (b) any amounts allocated under clauses (e) and (f) of Section 6.01 (collectively, the "Net Proceeds") shall be held in the Escrow Account.

Section 6.03    Release on Final Settlement Effective Date.  Upon the occurrence of the Final Settlement Effective Date, and in accordance with the agreement governing the Escrow Account, all Net Proceeds shall be released to FTX DM until satisfaction in full of the Stipulated PropCo Claim.  After the Final Settlement Effective Date, any further proceeds of a Disposal shall be paid in accordance with Section 6.01.

Section 6.04    Termination.  In the event that the GSA is terminated in accordance with its terms prior to the Final Settlement Effective Date, the Net Proceeds shall continue to be held in the Escrow Account pending:  (a) agreement of alternative arrangements reasonably acceptable to the Parties regarding the ownership of the Net Proceeds; or (b) a decision by the Bankruptcy Court and the Bahamas Court after a hearing jointly conducted by both courts in accordance with the JIN Guidelines to determine the ownership of the Net Proceeds.

### Article VII.    Cooperation and Assurances

Section 7.01    Affirmative Covenant.  Subject to the terms and conditions of this Agreement, each Party shall cooperate and use commercially reasonable efforts to assist the other Party in performing its obligations under this Agreement, which efforts shall include:

(a)    providing any consents or authorizations the other Party reasonably requests be provided;

(b)    executing any agreement or other document the other Party reasonably requests be executed; and

(c)    providing all information and documents the other Party may reasonably request in connection with its obligations under functions under this Agreement (provided that no Party shall be obliged to share privileged materials with the other or share any information in violation of applicable Law or any confidentiality arrangement binding on the relevant Party at the Execution Date or at the time of such request).

Section 7.02    Negative Covenant.  Neither Party shall take any steps of any nature, whether before or after the Effective Date, that (a) are inconsistent with this Agreement in any material respect, or (b) would, or would reasonably be expected to, frustrate the purposes of this Agreement (once it becomes effective, as the case may be).

### Article VIII.    Representations and Warranties

Each Party, severally, and not jointly, represents, warrants and covenants to the other Party that, as of the Execution Date:

(a)    to extent applicable, it is validly existing under the Laws of the state and/or country of its organization, and this Agreement, upon approval of the Bankruptcy

Court and the Bahamas Court, is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable Law relating to or limiting creditors' rights generally or by equitable principles relating to enforceability;

(b)      except as expressly provided in this Agreement, the Bankruptcy Code, and the Bahamas Code, no consent or approval is required by any other Entity in order for it to effectuate the transactions contemplated by, and perform its respective obligations under, this Agreement;

(c)      to extent applicable, the entry into and performance by it of, and the transactions contemplated by, this Agreement do not, and will not, conflict in any material respect with any Law or regulation applicable to it or with any of its articles of association, memorandum of association, or other constitutional documents; and

(d)      except as expressly provided in this Agreement, it has (or will have, at the relevant time) all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to effectuate the transactions contemplated by, and perform its respective obligations under, this Agreement.

## Article IX.    Termination

Section 9.01    <u>Automatic Termination</u>.  Unless terminated pursuant to <u>Section 9.02</u>, this Agreement shall terminate upon the Disposal of all the Bahamas Properties.

Section 9.02    <u>Mutual Termination Events</u>.  Either Party may terminate this Agreement upon prior written notice to the other Party upon the occurrence of any of the following events:

(a)      the breach in any material respect by the other Party of any term of this Agreement that would have, or could reasonably be expected to have, an adverse effect on this Agreement or the transactions contemplated by it, which breach remains uncured for thirty (30) Business Days after the terminating Party transmits a written notice in accordance with <u>Section 10.10</u> detailing any such breach;

(b)      if any representation or warranty in this Agreement made by the other Party shall have been untrue in any material respect when made or shall have become untrue in any material respect, and such untrue representation or warranty would have, or could reasonably be expected to have, an adverse effect on this Agreement or the transactions contemplated by it, which remains uncured for thirty (30) Business Days after the terminating Party provides notice of the untrue nature of the representation or warranty in accordance with <u>Section 10.10</u> detailing any such untruthfulness;

(c)      the grant or issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any final, non-appealable ruling, judgment or order that (i) enjoins the consummation of a material portion of this Agreement or the transactions contemplated by it and (ii) either (x) such ruling, judgment or order has been issued at the request of the non-terminating Party in contravention of any obligations set forth in this Agreement or (y) remains in effect for ten (10) Business Days after the

terminating Party transmits a written notice in accordance with Section 10.10 detailing any such grant or issuance;

(d)    the Bahamas Approval Order is reversed or vacated, and the Bahamas Court does not grant a revised Bahamas Approval Order reasonably acceptable to the Parties within ten (10) Business Days of the original Bahamas Approval Order being reversed or vacated;

(e)    the U.S. Sale Order is reversed or vacated, and the Bankruptcy Court does not enter a revised US Sale Order reasonably acceptable to the Parties within ten (10) Business Days of the original US Sale Order being reversed or vacated;

(f)    the GSA is terminated.

Section 9.03    Effect of Termination.  Upon the occurrence of a Termination Date, other than as provided by Section 9.04, this Agreement shall be of no further force and effect and each Party shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all Claims. Nothing in this Agreement shall be construed as prohibiting either Party from contesting whether any such termination is in accordance with the terms hereof or to seek enforcement of any rights under this Agreement that arose or existed before a Termination Date.  Except as expressly provided in this Agreement, nothing in this Agreement is intended to, or does, in any manner waive, limit, impair, or restrict any right of any Party or the ability of any Party to protect and reserve its rights (including rights under this Agreement), remedies, and interests, including its Claims against the other Party.  No purported termination of this Agreement shall be effective under this Section 9.03 or otherwise if the Party seeking to terminate this Agreement is in material breach of this Agreement.  Notwithstanding the foregoing or anything herein to the contrary, no Party may exercise any of its termination rights as set forth in this Section 9.03 if such Party has failed to perform or comply in all material respects with the terms and conditions of this Agreement unless such failure to perform or comply arises as a result of the other Party's actions or inactions or would not otherwise give rise to a termination event in favor of the other Party. Nothing herein, including Termination of this Agreement, shall be construed as a release or waiver of any Claims or causes of action arising out of, resulting from or related to a breach of this Agreement by any Party.

Section 9.04    Survival.  The following provisions (to the extent applicable) shall survive any termination of this Agreement: (a) Article I (*Definitions and Interpretation*); (b) Section 4.02 (*FTX DM's Obligations and Limitations of Liability*); (c) Article VI (*Application of Disposal Proceeds*); (d) Section 9.02 (*Mutual Termination Events*); and (e) Article X (*Miscellaneous*).

## Article X.    Miscellaneous

Section 10.01  Execution of Agreement.  This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Except as expressly provided in this

Agreement, each Person executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

Section 10.02  Amendment and Waivers.  This Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties.

Section 10.03  Exhibits Incorporated by Reference; Conflicts.  Each of the exhibits, annexes, signature pages, and schedules attached to this Agreement is expressly incorporated into and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules.  In the event of any inconsistency between this Agreement (without reference to the exhibits, annexes, and schedules attached to this Agreement) and the exhibits, annexes, and schedules attached to this Agreement, this Agreement (without reference to the exhibits, annexes, and schedules thereto) shall govern.

Section 10.04  Rules of Construction.  This Agreement is the product of negotiations among the Chapter 11 Parties and FTX DM, and in the enforcement or interpretation of this Agreement, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion of this Agreement, shall not be effective in regard to the interpretation of this Agreement.  Chapter 11 Parties and FTX DM were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel.

Section 10.05  Further Assurances.  Subject to the other terms and conditions of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters specified in this Agreement, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court or the Bahamas Court, from time to time, to effectuate this Agreement and any transaction contemplated by this Agreement, as applicable.

Section 10.06  Complete Agreement.  Except as otherwise explicitly provided in this Agreement, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, oral or written, among the Parties with respect thereto, other than any Existing Confidentiality Arrangement.  The Parties acknowledge and agree that they are not relying on any representations or warranties other than as set forth in this Agreement.

Section 10.07  Governing Law.  This Agreement is to be governed by and construed in accordance with the laws of The Bahamas without giving effect to its conflict of laws principles to the extent that the application of the laws of another jurisdiction would be required thereby.

Section 10.08  Dispute Resolution.  Each Party agrees that it shall not initiate any action or proceeding in any court or tribunal in respect of any claim arising out of or related to this Agreement without reasonable advance notice and consultation with the other Party. Each Party to this Agreement agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in accordance with the Dispute Resolution Protocol.

Section 10.09  Successors and Assigns; Third Parties.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  There are no third-party beneficiaries under this Agreement, and, except as set forth in this Agreement, the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other Entity.

Section 10.10  Notices.  All notices hereunder shall be deemed given if in writing and delivered, by electronic mail, courier, or registered or certified mail (return receipt requested), to the following addresses (or at such other addresses as shall be specified by like notice):

(a)    if to the Chapter 11 Parties, to:

Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

Attention:  Andrew  G.  Dietderich,  James  L.  Bromley,  Brian  D. Glueckstein and Alexa J. Kranzley

E-mail address:  dietdericha@sullcrom.com,  bromleyj@sullcrom.com, gluecksteinb@sullcrom.com and kranzleya@sullcrom.com

with copy to:

Peter D. Maynard Counsel & Attorneys
Bay & Deveaux Streets
P.O. Box N-1000
Nassau, Bahamas

Attention:  Peter D. Maynard KC, Jason T. Maynard and Colin Jupp

E-mail address:  peter.maynard@maynardlaw.com, jason.maynard@maynardlaw.com and colin.jupp@maynardlaw.com

(b)    if to FTX DM, to:

White & Case LLP
1221 Avenue of the Americas
New York, New York 10020

Attention:  J. Christopher Shore, Brian Pfeiffer, Jason Zakia and Brett Bakemeyer

E-mail  address:    cshore@whitecase.com,  bpfeiffer@whitecase.com, jason.zakia@whitecase.com, and brett.bakemeyer@whitecase.com

Lennox Patton
3 Bayside Executive Park
West Bay Street & Blake Road
N-4875
Nassau, The Bahamas

Attention:  Marco Turnquest, Sophia Rolle-Kapousouzoglou
E-mail address:  mturnquest@lennoxpaton.com,
srolle@lennoxpaton.com

Any notice given by delivery, mail, or courier shall be effective when received.

Section 10.11  <u>Admissibility</u>.  Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating to this Agreement shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or the payment of damages to which a Party may be entitled under this Agreement.

Section 10.12  <u>Specific Performance</u>.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

Section 10.13  <u>Severability and Construction</u>.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

Section 10.14  <u>Remedies Cumulative</u>.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at Law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

Section 10.15  <u>Email Consents</u>.  Where a written consent, acceptance, approval, or waiver is required pursuant to or contemplated by this Agreement, such written consent, acceptance, approval, or waiver shall be deemed to have occurred if, by agreement between U.S. counsel to, as applicable, the Chapter 11 Parties and FTX DM, submitting and receiving such consent, acceptance, approval, or waiver, it is conveyed in writing (including electronic mail) between each such counsel without representations or warranties of any kind on behalf of such counsel.

*[Signature pages follow.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement on the Execution Date.

**FTX TRADING LTD. AND FTX PROPERTY HOLDINGS LTD**

By  _____

Name:   John J. Ray III
Title:     Chief Executive Officer

**FTX Digital Markets Ltd. – In Liquidation**

By _____
Name:  Brian Simms, KC
Title:  Joint Official Liquidator of FTX Digital Markets Ltd., acting as agent and without personal liability

By _____
Name:  Kevin Cambridge
Title:  Joint Official Liquidator of FTX Digital Markets Ltd., acting as agent and without personal liability

By _____
Name:  Peter Greaves
Title:  Joint Official Liquidator of FTX Digital Markets Ltd., acting as agent and without personal liability

## Exhibit A

**The Bahamas Properties**

## Schedule 1: The Bahamas Properties

| Name of Purchaser | Name of Vendor | Property Description | Property Location |
|---|---|---|---|
| FTX PROPERTY HOLDINGS LTD. | ALBANY LAND COMPANY, LTD. | Lot no. 44 in the Albany Subdivision | Albany Lot 44 (Conch Shack) |
| FTX PROPERTY HOLDINGS LTD. | ANY NAME IS FINE LIMITED | Albany Bldg. 10 Condominium Unit 4A (Charles) | Albany Marina Residences (Charles) |
| FTX PROPERTY HOLDINGS LTD. OR NOMINEE | PBM ALBANY LLC | Albany Bldg. 10 Condominium Unit 3B (Charles) | Albany Marina Residences (Charles) |
| FTX PROPERTY HOLDINGS LTD. OR ITS NOMINEE | GOLD BLOSSOM ESTATE LTD. | Albany Bldg. 10 Condominium Unit 5A (Charles) | Albany Marina Residences (Charles) |
| FTX PROPERTY HOLDINGS LTD. | ALBANY CONDOMINIUM, LTD. | Albany Bldg. 7 Condominium Unit 2C (Coral) | Albany Marina Residences (Coral) |
| FTX PROPERTY HOLDINGS LTD. | BRYSON ALDRICH-DECHAMBEAU | Albany Bldg. 3 Condominium Unit 1B (Cube) | Albany Marina Residences (Cube) |
| FTX PROPERTY HOLDINGS LTD. OR NOMINEE | LUMINA DOMUS HOLDINGS LIMITED | Albany Bldg. 9 Condominium Unit 1D (Gemini) | Albany Marina Residences (Gemini) |
| FTX PROPERTY HOLDINGS LTD. | ALBANY CONDOMINIUM, LTD. | Albany Bldg. 1 Condominium Unit 2A (Honeycomb) | Albany Marina Residences (Honeycomb) |
| FTX PROPERTY HOLDINGS LTD. | ALBANY CONDOMINIUM, LTD. | Albany Bldg. 1 Condominium Unit 3E (Honeycomb) | Albany Marina Residences (Honeycomb) |
| FTX PROPERTY HOLDINGS LTD. | MILOS RAONIC | Albany Bldg. 1 Condominium Unit 2C (Honeycomb) | Albany Marina Residences (Honeycomb) |
| FTX PROPERTY HOLDINGS LTD. | STAMFORD HOUSE LIMITED | Albany Bldg. 8 Condominium Unit 6 (Orchid Penthouse) | Albany Marina Residences (Orchid Penthouse) |
| FTX PROPERTY HOLDINGS LTD. OR ITS ASSIGNS | ALBANY CONDOMINIUM, LTD. | Albany Bldg. 8 Condominium Unit 3B (Orchid) | Albany Marina Residences (Orchid) |

| FTX PROPERTY HOLDINGS LTD. OR NOMINEE | DINO GLOBAL LTD. | Albany Bldg. 8 Condominium Unit 1A (Orchid) | Albany Marina Residences (Orchid) |
|---|---|---|---|
| FTX PROPERTY HOLDINGS LTD. | ALBANY CONDOMINIUM, LTD. | Albany Bldg. 4 Condominium Unit 3D (Tetris) | Albany Marina Residences (Tetris) |
| FTX PROPERTY HOLDINGS LTD. | HUSSAM SULTAN M. ALSHEHAIL & HAIFA M.A. ALSHEIKH | Albany Bldg. 4 Condominium Unit Duplex 2 (Tetris) | Albany Marina Residences (Tetris) |
| FTX PROPERTY HOLDINGS LTD. OR NOMINEE | 3b TETRIS LTD. | Albany Bldg. 4 Condominium Unit 2E (Tetris) | Albany Marina Residences (Tetris) |
| FTX PROPERTY HOLDINGS LIMITED | Long Island Diamonds Limited | Blake Road | Blake Road |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 114 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 228 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 232 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 235 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 337 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 434 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (or its nominee or assignee) | Wynn Development Limited | Goldwynn Unit 436 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. | DAVE DOHERTY | One Cable Beach Unit 207 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (OR ASSIGNS) | SAMCO BAHAMAS LTD. | One Cable Beach Unit 309 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (OR ASSIGNS) | JMK Investments Inc. | One Cable Beach Unit G12 | Cable Beach, Nassau |
| FTX PROPERTY HOLDINGS LTD. (OR ASSIGNS) | Winchester Realty Ltd. | One Cable Beach Unit 603 | Cable Beach, Nassau |

| FTX PROPERTY HOLDINGS LTD. (OR ASSIGNS) | Gregory L Curry and Gabriella A Curry | Old Fort Bay Lots 5A & 5B - Fincastle Island | Old Fort Bay, Nassau |
|---|---|---|---|
| FTX PROPERTY HOLDINGS LTD. | Ocean Terrace Ltd | Ocean Terrace | West Bay Street |
| FTX PROPERTY HOLDINGS LTD. | Bayside Estates Ltd | West Bay Street (fmrly. Bayside - Pictet) | West Bay Street (W. of Blake Road) |
| FTX PROPERTY HOLDINGS LTD. | Veridian Development Group Ltd and Veridian Corporate Center Association Ltd | Veridian Corporate Center #18, 30, 27, 26, 25, 24 | Western Road, Lyford Cay |
| FTX PROPERTY HOLDINGS LTD. | Veridian Corporate Centre LLC | Veridian Corporate Center #23 | Western Road, Lyford Cay |
| FTX PROPERTY HOLDINGS LTD. | Pineapple House Investments Ltd | Pineapple House | Western Road, Lyford Cay |
| FTX PROPERTY HOLDINGS LTD. | Veridian Development Group Ltd and Veridian Corporate Center Association Ltd | Veridian Corporate Center #1-17, 19-22, 28, 29 | Western Road, Lyford Cay |

## **Exhibit B**

**Power of Attorney**

**COMMONWEALTH OF THE BAHAMAS**

**New Providence**

 

 

**A POWER OF ATTORNEY** created the [•] day of [•], A.D **BETWEEN FTX PROPERTY HOLDINGS LTD.** a company incorporated and existing under the laws of the Commonwealth of The Bahamas (hereinafter called "**FPH**") of the first part **AND FTX DIGITAL MARKETS LTD.** (In Official Liquidation) a company also incorporated and existing under the laws of the said Commonwealth (hereinafter called "**the Company**") of the second part **AND BRIAN CECIL SIMMS KC** of Lennox Paton, 3 Bayside Executive Park, West Bay Street and Blake Road, New Providence, The Bahamas **KEVIN G. CAMBRIDGE** of PricewaterhouseCoopers Advisory (Bahamas) Limited, 2 Bayside Executive Park, West Bay Street and Blake Road, New Providence, The Bahamas and **PETER GREAVES** of Pricewaterhouse Coopers Limited (incorporated in Hong Kong), 20/F Prince's Building, Central, Hong Kong, the Joint Official Liquidators of the Company, in their capacity as agents of the Company (hereinafter called "**the Joint Official Liquidators**") and without personal liability of the third part

    **WHEREAS:**

    (A)     FPH is seised in fee simple in possession of the properties described in the First Column of the Schedule hereto (hereinafter referred to as "**the said properties**") subject to the restrictions and conditions (if any) and the exceptions and reservations (if any) respectively contained in the applicable conveyance specified in the Second Column of the Schedule hereto but otherwise free from encumbrances.

(B)    By a Winding Up Order dated the 10th day of November, 2023 issued by the Commercial Division of the Supreme Court of the said Commonwealth the Joint Official Liquidators were appointed to carry out the winding up of the Company.

(C)    FPH has agreed at the request of the Company (acting by its Joint Official Liquidators) that in consideration of the sum of Ten dollars ($10.00) in the currency of the said Commonwealth and in good and valuable consideration FPH shall appoint the Company acting by the Joint Official Liquidators (in their capacity as agents for the Company) to, act for FPH and in FPH's name to enter into a contract or contracts on FPH's behalf for the sale and absolute disposal of the said properties including any and all furniture furnishings fixtures appliances equipment goods chattels and effects belonging thereto (hereinafter referred to as "**the said chattels**") and to execute the proper conveyances instruments and assurances thereof.

**NOW THIS DEED WITNESSETH** that in pursuance of the said agreement and in consideration as aforesaid FPH appoints the Company acting by the Joint Official Liquidators (in their capacity as agents of the Company) to act on its behalf and in its name to do and execute all acts matters and things that may be necessary in order to sell the said properties and in particular to perform the following acts:

1.    To sell and absolutely dispose of the said properties and to negotiate the terms of sale in their sole discretion and, to enter into sign and exchange a contract or contracts for such sale and disposal and to receive from the purchaser or purchasers moneys to be payable for or in respect of the said properties and upon such receipt to give good and sufficient discharge for such purchase moneys subject to FPH signing its written consent for the Company to enter into a sales agreement for the disposal of any of the said properties.  Once written consent has been

given FPH shall not be able to revoke the power of sale in relation to the particular property for which consent to enter the sales agreement has been given.

2.      In connection with such sale to employ and pay any reasonable, documented and customary fees owed to any valuer or real estate agency.

3.      To give make execute sign seal deliver and perfect all such acts deeds conveyances instruments and assurances as may be deemed necessary proper or expedient for the purpose of perfecting such disposition or alienation of the said properties and the said chattels as shall be so sold and disposed of as aforesaid to the purchaser or purchasers of the same in accordance with the laws of the said Commonwealth and as effectually as such laws allow.

4.      To register this or any other instrument in such manner as the Company, acting by the Joint Official Liquidators (in their capacity as agents of the Company) shall think fit.

**IT IS HEREBY DECLARED** that all and every conveyance instrument and assurance and acts and deeds matters and things which shall be given made executed or done by the Company acting by the Joint Official Liquidators (in their capacity as agents of the Company) for the aforesaid purposes shall be as good valid and effective to all intents and purposes whatsoever as if the same has been signed sealed and delivered given made or executed by FPH in its own name.

**IT IS HEREBY FURTHER DECLARED** that any instrument executed by the Company acting by the Joint Official Liquidators (in their capacity as agents of the Company) shall be valid and binding upon FPH and any person dealing with FPH shall be entitled to rely upon such instrument in writing as binding upon FPH.

4

**IT IS HEREBY FURTHER DECLARED** that this Power of Attorney shall terminate with immediate effect save as expressed under clause 1 above upon the delivery of written notice by FPH to the Company communicating FPH's decision to revoke this Power of Attorney.

<u>**THE SCHEDULE HEREINBEFORE REFERRED TO**</u>

| PROPERTY DESCRIPTION | APPLICABLE CONVEYANCE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

*SIGNATURE PAGE TO FOLLOW*

**IN WITNESS WHEREOF** FPH has executed this Power of Attorney as a DEED the day and year first hereinbefore written.


_____
FTX Property Holdings Ltd.
By: John J. Ray III
Its: Chief Executive Officer


Signed and Delivered as a DEED by **FTX PROPERTY HOLDINGS LTD.**  by John J. Ray III, the Chief Executive Officer of the said Company in the presence of:


_____
Witness

**UNITED STATES OF AMERICA**

**State of** _____

I, _____ of _____

make oath and say that I was present and saw John J. Ray III, the Chief Executive Officer of

**FTX PROPERTY HOLDINGS LTD.** (hereinafter called "the said Company") sign, execute

and deliver the annexed Power of Attorney as and for the Act and Deed of the said Company and

for the purposes therein mentioned and that I countersigned the same to complete the due

execution thereof by the order and with authority granted by the Sole Director of the said

Company and in conformity with the Articles of Association of the said Company.

**SWORN** this _____ day of        )
                                       )
_____, A.D. 2023      )        _____

Before me,

**NOTARY PUBLIC**

**COMMONWEALTH OF THE BAHAMAS**
**New Providence**

Dated: The _____ day of _____, A.D. ____

**FTX PROPERTY HOLDINGS LTD.**

**AND**

**FTX DIGITAL MARKETS LTD.**
**(IN LIQUIDATION)**

**AND**

**BRIAN CECIL SIMMS KC**
**KEVIN G. CAMBRIDGE**
**AND**
**PETER GREAVES**
**(ACTING IN THEIR CAPACITY AS JOINT OFFICIAL LIQUIDATORS OF FTX DIGITAL MARKETS LTD. AND AS AGENTS OF THE COMPANY AND WITHOUT PERSONAL LIABILITY)**

_____

**POWER OF ATTORNEY**

_____

LENNOX PATON
3 BAYSIDE EXECUTIVE PARK
WEST BAY STREET & BLAKE ROAD
NASSAU, BAHAMAS

*For Use by Registrar General's Department only*.

**Lodged For Record by:**

_____

**This _____ Day of _____ A.D. 20 ___**

_____
(*for*) **Registrar General**

Receipt Number: _____.

_____
**COMMONWEALTH OF THE BAHAMAS**
**REGISTRAR GENERAL'S DEPARTMENT**

I certify the within to be duly proved and recorded in book _____ at pages _____ to _____ in accordance with the provisions of the Registration of Records Act, Chapter 187 this _____ day of _____ 20_____

_____
REGISTRAR GENERAL