## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 25, 2024 at 10:00 a.m. ET**<br>**Objection Deadline: January 18, 2024 at 4:00 p.m. ET** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO, AND PERFORMANCE OF THEIR OBLIGATIONS UNDER, (I) THE GLOBAL SETTLEMENT AGREEMENT WITH FTX DIGITAL MARKETS LTD. AND (II) THE LOAN AGREEMENT WITH FTX DIGITAL MARKETS LTD.

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"),[2] pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the Debtors' entry into, and performance of their obligations under, (a) the Global Settlement Agreement with FTX Digital Markets Ltd. (in Liquidation) ("FTX DM") acting by its joint official liquidators as agents and without personal liability (the

---

[1]  The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  The Order reflects relief that the JOLs of FTX DM (as defined below) are seeking by separate motion filed in FTX DM's Chapter 15 Case (as defined below) and is being proposed on a consensual basis by the Debtors and the JOLs.

"JOLs"), dated as of December 19, 2023 (the "Global Settlement Agreement")[3] and attached
hereto as Exhibit B, and (b) the Loan Agreement with FTX DM, acting by its JOLs as agents and
without personal liability, dated as of December 19, 2023 (the "Loan Agreement") and attached
hereto as Exhibit C. In support of the Motion, the Debtors submit the Declaration of John J. Ray
III, attached hereto as Exhibit D, (the "Ray Declaration") and respectfully state as follows:

**Preliminary Statement**

1.     The Global Settlement Agreement is a critical milestone in these chapter
11 cases (the "Chapter 11 Cases"). It fully and finally resolves all of the novel, complex and
multi-faceted cross-border disputes and legal issues between the Debtors and FTX DM,
including, among other things, the Debtors' claims against FTX DM asserted in the litigation
captioned *Alameda Research LLC, et al.* v. *FTX Digital Markets Ltd., et al.*, Adv. Pro. No. 23-
50145 (JTD) [D.I. 1119] (the "Adversary Proceeding"), and FTX DM's claims asserted against
the Debtors in these Chapter 11 Cases and the Adversary Proceeding.

2.     The Global Settlement Agreement, subject to approval of both the
Bahamas Court and this Court, is a practical solution that is in the best interests of all
stakeholders, including the FTX.com creditors, who may have claims against both the Debtors
and FTX DM. The Global Settlement Agreement ensures that the combined value of the Debtors
and FTX DM is available to pay allowed creditor claims, and that a streamlined process is put in
place to facilitate those creditor recoveries pursuant to distribution rules substantially similar in
both proceedings. The Global Settlement Agreement also recognizes the fact that material assets
that the Debtors and FTX DM dispute are located in The Bahamas, including real estate property

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
Global Settlement Agreement.

and avoidance actions against persons in The Bahamas or arising out of the commencement of

FTX DM's liquidation proceeding (the "Bahamian Liquidation Proceeding").  Accordingly, as a

practical matter, absent a consensual resolution of the disputes between the parties, there is no

assurance that any decision by this Court in the Debtors' favor with respect to such assets will be

enforced in The Bahamas in a timely manner.  The Global Settlement Agreement unlocks this

value for the Debtors and their creditors efficiently and without such uncertainties.

3.      This Court is not being asked to approve at this time any matter that will

be addressed in the Debtors' plan of reorganization, including the treatment of customer claims.

Rather, the approval by both this Court and the Supreme Court of The Bahamas (the "Bahamas

Court") of the Global Settlement Agreement and ancillary documents are conditions precedent to

the *initial effectiveness* of the settlement.  Specifically, the satisfaction of such conditions

precedent will trigger the effectiveness of, among other things, (a) mutual undertakings to

support the other party's insolvency proceedings, (b) arrangements to enhance and optimize

global recovery efforts and to monetize illiquid assets and (c) a bridge loan that will enable FTX

DM to fund certain administrative expenses incurred in the Bahamian Liquidation Proceeding.

4.      The Global Settlement Agreement will not reach *final effectiveness* unless

and until the Debtors' plan of reorganization is confirmed by this Court and becomes effective.

Accordingly, plan effectiveness is a condition precedent to the parties' undertakings to (a) pool

assets—including the significant assets whose ownership has been disputed by the parties—for

distribution to FTX.com customers and other creditors, (b) make coordinated distributions in

these Chapter 11 Cases and the Bahamian Liquidation Proceeding to ensure that FTX.com

customers receive substantially identical relative distributions at substantially identical times in

the Chapter 11 Cases and Bahamian Liquidation Proceeding, (c) withdraw with prejudice the

claims asserted in the Adversary Proceeding, and (d) grant mutual releases that cover the significant claims asserted by FTX DM against the Debtors.

5.      The Debtors face uncertainties from continued litigation of the Adversary Proceeding, as well as delay and substantial additional litigation expenses.  FTX DM has vigorously defended the Adversary Proceeding and asserted counterclaims against the Debtors. The claims asserted by the Debtors in the Adversary Proceeding are subject to numerous defenses, including complex arguments involving foreign law and foreign jurisdictional issues. In addition, the absence of a final resolution of the issues disputed between the Debtors and FTX DM could delay and potentially prevent the confirmation and effectiveness of the Debtors' proposed chapter 11 plan.  FTX DM is also subject to its own insolvency proceeding in The Bahamas, and there is no assurance that any judgment by this Court in favor of the Debtors with respect to assets located in The Bahamas will be enforced by the Bahamas Court.

6.      Entry into the Global Settlement Agreement provides material value to the Debtors' estates and benefits to FTX.com creditors while avoiding costly, time-consuming and uncertain litigation.  The settlement is in the best interests of the Debtors' estates and all stakeholders and well within the range of reasonableness, and should be approved.

## Background

7.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[4] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on

---

[4]     November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee

for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured

Creditors (the "Official Committee") pursuant to section 1102 of the Bankruptcy Code [D.I.

231].

8.     Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

<u>**Facts Specific to the Relief Requested**</u>

**I.     FTX DM, the Bahamian Liquidation Proceeding, and the Chapter 15 Case**

9.     Non-Debtor FTX DM is an International Business Company incorporated

in The Bahamas on July 22, 2021. FTX DM is a wholly-owned subsidiary of Debtor FTX

Trading. On September 20, 2021, the Securities Commission of The Bahamas (the "Bahamas

Commission") approved FTX DM's registration to operate as a Digital Asset Service Provider

under the Digital Assets and Registered Exchanges Act, 2020 of The Bahamas.

10.     On November 10, 2022, the Bahamas Commission filed a petition for

provisional liquidation of FTX DM with the Bahamas Court. On the same day, the Bahamas

Court granted the petition and appointed Brian C. Simms KC as provisional liquidator of FTX

DM. On November 14, 2022, the Bahamas Court appointed Kevin G. Cambridge and Peter

Greaves of PricewaterhouseCoopers (collectively and together with Mr. Simms KC, the "JOLs")

as additional provisional liquidators, to serve alongside Mr. Simms KC.

11.     On November 15, 2022, the JOLs filed a petition for recognition of the Bahamian Liquidation Proceeding as a main proceeding under Chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, captioned *In re FTX Digital Markets Ltd.* (*in Provisional Liquidation*), No. 22-BK-11516 (MEW), [D.I. 1] (the "Chapter 15 Case").  On November 28, 2022, this Court entered an agreed order to transfer venue to this Court [D.I. 131].

12.     On February 15, 2023, this Court entered an order recognizing the Bahamian Liquidation Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code [D.I. 129].

13.     On November 10, 2023, the Bahamas Court entered an order, among other things, (a) appointing the JOLs as joint official liquidators of FTX DM and (b) determining that FTX DM be wound up in accordance with The Bahamas' Companies Act (as amended by *inter alia* the Companies (Winding Up Amendment) Act, 2011).

## II.    Disputes between the Debtors and FTX DM, Cooperation Agreement and Global Settlement

14.     Since the commencement of these Chapter 11 Cases, the Debtors and FTX DM vigorously disputed certain facts, conclusions of law and jurisdictional matters.

15.     On January 6, 2023, the Debtors and FTX DM sought to resolve their various disputes and executed a settlement and cooperation agreement (the "Cooperation Agreement").  The Cooperation Agreement sought to establish a framework for cooperation and coordination of their activities as fiduciaries for the benefit of their respective creditors.  On February 9, 2023, this Court approved the Cooperation Agreement [D.I. 683].

16.     The disputes between the Debtors and FTX DM continued notwithstanding the Cooperation Agreement.  On March 19, 2023, the Debtors filed a complaint

against FTX DM and the JOLs, commencing the Adversary Proceeding. The Debtors sought a declaratory judgment from this Court that FTX DM has no ownership interest in the Debtors' cryptocurrency, fiat currency, intellectual property or customer information. In the alternative, the Debtors sought a declaratory judgment that any transfers to or through FTX DM were fraudulent and avoidable and that the Debtors are entitled to avoid any fraudulent transfers and recover the avoidable transfers from the Defendants plus accrued interests and costs.

17.     Beginning in June 2023, the Debtors and FTX DM engaged in discovery and the exchange of information in connection with the Adversary Proceeding. On July 12, 2023, FTX DM and the JOLs contested the Debtors' allegations by filing an answer and asserting their own counterclaims against the Debtors in the Adversary Proceeding [Adv. Pro. D.I. 27].

18.     On March 29, 2023, FTX DM filed a motion with this Court seeking clarification that the Debtors' automatic stay does not apply or, in the alternative, for relief from the automatic stay to file an application in the Bahamian Liquidation Proceeding to resolve certain legal issues regarding FTX DM's relationship to the FTX.com exchange and its customers [D.I. 1192]. On July 20, 2023, the Court entered an order denying FTX DM's motion for relief from the automatic stay and directed the parties to mediate [D.I. 1883].

19.     On or around June 30, 2023, FTX DM filed claims against certain Debtors. FTX DM has asserted significant claims against various Debtors, including, an approximately $7.7 billion fraudulent transfer claim, an approximately $1.1 billion indemnification claim, an approximately $47.6 million intercompany transactions claim, an approximately $256 million property expenses claim, an approximately $16.2 million corporate expenses claim, plus additional contingent and unliquidated amounts.

20.     The Debtors and FTX DM commenced mediation regarding all of the issues in dispute among them, including those raised in the Adversary Proceeding, and have engaged in good faith, arm's-length discussions over a period of many months regarding the terms of a global settlement to resolve all those disputed issues. *See* Ray Decl. at ¶ 4. Negotiations consisted of numerous virtual and in person meetings, correspondence, and multiple rounds of settlement offers and counteroffers involving both principals and advisors. *See id.* The Debtors and FTX DM have also sought and obtained from the Court consensual extensions of the time to respond to claims and counterclaims asserted in the Adversary Proceeding to facilitate these discussions. As a result of productive good faith negotiations, on December 19, 2023, the Debtors and FTX DM entered into the Global Settlement Agreement.

21.     The Global Settlement Agreement contemplates a staggered effectiveness structure with an initial effective date and a final effective date. The approval by this Court and sanction by the Bahamas Court of the Global Settlement Agreement and ancillary documents are conditions precedents to *initial effectiveness*. The Global Settlement Agreement will not reach *final effectiveness* unless and until a plan of reorganization (that is consistent with the Global Settlement Agreement) is confirmed by this Court and becomes effective. Accordingly, this Court is not being asked to approve at this time any matter that will be addressed in the Debtors' plan of reorganization. These matters will be before this Court at a later time in these Chapter 11 Cases, when this Court is asked to confirm the Debtors' plan of reorganization.

22.     The key aspects of the Global Settlement Agreement include the following terms:[5]

---

[5]    Any summary of the Global Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Global Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Global Settlement Agreement, the actual terms and conditions of the Global Settlement Agreement shall control.

(a) **Terms Effective Upon *Initial* Settlement Effective Date**

(i) Insolvency Support:  FTX DM will support any plan of reorganization proposed by the Debtors that is consistent with the terms of the Global Settlement Agreement ("Acceptable Plan"), and the Debtors will not object to any liquidation of FTX DM proposed by the JOLs that is consistent with the terms of the Global Settlement Agreement.  *See id.* Articles III and IV.

(ii) Asset Recovery:  FTX DM will take the operational lead in managing the value-maximizing disposition of real estate[6] and other assets in The Bahamas and in pursuing specific litigation and avoidance actions identified in the Global Settlement Agreement as part of the ongoing efforts to maximize recoveries for customers and creditors, and the FTX Debtors will take the operational lead in all other recovery activities.  *See id.* §§ 2.02, 2.04 and 2.05.

(iii) Valuation:  In order to minimize potential discrepancies in the administration of their respective proceedings FTX DM will use commercially reasonable efforts to determine the fair market value of digital assets in a manner that is consistent with the valuation methodologies and processes adopted by the Debtors in consultation with FTX DM in these Chapter 11 Cases.  The parties agreed that valuation of digital assets at the petition time will reflect a consensual approach between the Debtors and FTX DM, approved by this Court and the Bahamas Court.  *See id.* § 5.03.

(iv) Customer Preferences:  The Debtors and FTX DM agreed to use commercially reasonable efforts to make the same settlement offer to FTX.com users available in these Chapter 11 Cases and in the Bahamian Liquidation Proceeding.  FTX DM will not make a preference settlement offer to FTX.com customers on terms more favorable than those offered in the Debtors' Chapter 11 plan of reorganization or to insiders or certain excluded customers against whom the Debtors have pending or potential claims).  *See id.* § 5.05.

(v) Bahamas Opt-in Election and Anti-double Dipping:  The Debtors and FTX DM agreed that all customers of FTX.com (other than insiders and certain excluded customers against whom the Debtors have pending or potential claims) will be able to elect to have their claims reconciled and paid in these Chapter 11 Cases or in the Bahamas Liquidation Proceeding for FTX DM.  Eligible FTX.com customers will be able to make this election

---

[6]  For a more detailed discussion on FTX DM's role with regard to the disposition of real estate in The Bahamas, see Motion of Debtors for Entry of an Order Authorizing and Approving (I) FTX Trading Ltd.'s and FTX Property Holdings Ltd.'s Entry into, and Performance of Their Obligations Under, the Bahamas Properties Exclusive Sales Agency Agreement, (II) Procedures for the Sale or Transfer of Certain Bahamas Properties, and (III) Assumption, Assignment And Rejection Procedures, which is filed with this Court on the date hereof.

either in response to ballots distributed by the Debtors in connection with the plan solicitation procedures to be approved by this Court or a separate proof of debt form filed in the Bahamas Liquidation Proceeding. This election is not intended to have material economic consequences for such customers. The parties also agreed that (1) FTX.com customers will not be permitted to file the same claim in both proceedings and will release their claims in the proceeding that is not elected and (2) FTX.com customers that do not make any election will have their claims reconciled and paid in these Chapter 11 Cases. *See id.* §§ 5.02 and 5.07.

(vi)   <u>Know Your Customer</u>:  FTX DM will adopt the same know-your-customer procedures implemented by the Debtors in these Chapter 11 Cases. Know-your-customer procedures will be implemented by the parties in a coordinated manner designed to ensure compliance with applicable law in the United States, The Bahamas and all other applicable jurisdictions. *See id.* §5.08.

(vii)  <u>Cooperation and Information Sharing</u>:  The Debtors and FTX DM agreed to cooperate, share information and efficiently utilize the assistance of this Court and the Bahamas Court. *See id.* § 2.03.

**(b)    <u>Terms Effective Upon *Final* Settlement Effective Date</u>**

(i)    <u>Distributions and Inter-Estate Funding</u>:  Upon the effectiveness of the Debtors' plan of reorganization, for the purposes of making distributions to FTX.com customers, the Debtors and FTX DM will pool assets and coordinate the establishment of reserves and the timing and amount of distributions, in order to ensure that FTX.com customers in both proceedings receive substantially identical relative distributions at substantially identical times. The Global Settlement Agreement also establishes an inter-estate funding mechanism designed to enable a centralized and simultaneous distribution process post-effectiveness of the Debtors' plan of reorganization. *See id.* Article V.

(ii)   <u>PropCo</u>:  Upon the effectiveness of the Debtors' plan of reorganization, FTX DM will have an allowed general unsecured prepetition Claim against Debtor FTX Property Holdings Ltd. ("<u>FTX PropCo</u>") in the amount of $256,291,221.47 (the "<u>Stipulated PropCo Claim</u>"), and FTX DM will not assert the Stipulated PropCo Claim against any other Debtor. The parties agree that FTX PropCo will be treated separately under the Debtors' plan of reorganization and not substantively consolidated with any other Debtor. *See id.* § 2.04.

(iii)  <u>Adversary Proceeding</u>:  The Debtors, FTX DM, and the JOLs will seek to voluntarily stay the Adversary Proceeding pending confirmation of the Debtors' plan of reorganization. Upon plan effectiveness, the Debtors, FTX DM, and the JOLs will withdraw with prejudice the claims asserted

10

in the Adversary Proceeding and seek to dismiss any and all pending litigation between the Debtors and FTX DM.  *See id.* § 7.01.

(iv)  <u>Mutual Releases</u>:  Upon the effectiveness of the Debtors' plan of reorganization, the parties will grant mutual releases.  FTX DM will waive and release the Debtors from all claims asserted against the Debtors in the Adversary Proceeding and in its proofs of claims filed in these Chapter 11 Cases (other than the Stipulated PropCo Claim), and the Debtors will waive and release their claims against FTX DM*.  See id.* Article IX.

23.    The Global Settlement Agreement also provides that, subject to the approval of this Court and the Bahamas Court, Debtor FTX Trading will provide FTX DM with an interest-bearing loan (the "<u>Bridge Loan</u>") no later than January 29, 2024 in accordance with the Loan Agreement.  *See id.* § 5.06.  Accordingly, as part of the settlement set forth in the Global Settlement Agreement, on December 19, 2023, FTX Trading and FTX DM entered into the Loan Agreement (subject to approval of this Court and sanction of the Bahamas Court).

24.    The key terms of the Bridge Loan are as follows:[7]

(a)  <u>Principal Amount</u>:  $45 million.  *See* Loan Agreement § 2.01.

(b)  <u>Interest</u>:  7% per annum.  *See id.* Article III.

(c)  <u>Use of Proceeds</u>:  FTX DM will apply the proceeds of the Bridge Loan solely to pay Administrative Expenses[8] incurred or to be incurred in the course of the Bahamian Liquidation Proceeding.  *See id.* § 2.03.

(d)  <u>Repayment</u>:  The principal amount of the Bridge Loan outstanding and accrued interest thereon will be due and payable on the date that is the earliest of: (i) June 19, 2025; (ii) the date on which the Debtors' reorganization plan becomes effective; (iii) the date on which the Global

---

[7]  Any summary of the Loan Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Loan Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Loan Agreement, the actual terms and conditions of the Loan Agreement shall control.

[8]  The term "Administrative Expenses" is defined in the Global Settlement Agreement and the Loan Agreement as "reasonable past documented, and reasonable estimates of future fees, costs, charges, liabilities and other expenses incurred or to be incurred in the course of the DM Liquidation or the Chapter 11 Cases (as the case may be), including such sums incurred in pursuing DM-Controlled Recovery Actions or Debtors-Controlled Recovery Actions (as the case may be) and, in the case of the DM Liquidation, all expenses listed in O.20 r.1(1) of the Bahamas Companies Liquidation Rules 2012 and s.204 of the Bahamas Companies Act and, in the case of the Chapter 11 Debtors, any costs or expenses of administration of the Chapter 11 Cases of a kind specified under section 503 of the Bankruptcy Code."

Settlement Agreement is terminated; and (iv) the date on which the principal amount of the Bridge Loan outstanding has been declared, or has become, due and payable pursuant to the Loan Agreement.  *See id.* § 4.01.

(e)     <u>Automatic Setoff Upon Plan Effectiveness</u>:  If the Debtors' reorganization plan becomes effective, FTX DM's obligation to repay the Bridge Loan will be automatically satisfied by setoff and reduction against any amount otherwise due to FTX DM under the Global Settlement Agreement.  In other words, the Bridge Loan will be settled with the effective economic consolidation of the estates upon final effectiveness of the Global Settlement Agreement.

(f)     <u>Setoff Right If Event of Default Occurs</u>:  The Debtors have negotiated protections in the event final settlement effectiveness does not occur and FTX DM defaults on the Bridge Loan.  In that scenario, the Debtors are authorized to setoff any obligations owing by the Debtors to FTX DM against any and all of the obligations of FTX DM to the Debtors.  *See id.* §§ 4.02 and 5.02.  The Debtors have determined, in the exercise of their business judgment, that, given the material claims that FTX DM has asserted against the Debtors, such setoff right provides sufficient credit risk protection.

(g)     <u>Mandatory and Voluntary Prepayment</u>:  FTX DM shall apply the proceeds of the recovery of certain assets to mandatorily prepay the Bridge Loan. Additionally, FTX DM may prepay the Bridge Loan at any time without any prepayment penalty.  *See id.* §§ 4.03 and 4.04.

(h)     <u>Court Approval Is a Condition Precedent</u>:  FTX Trading's obligation to make the Bridge Loan is subject to approval of the Loan Agreement by this Court and sanction of the Loan Agreement by the Bahamas Court. *See id.* § 2.03.

25.     Disputes arising out of or related to the Global Settlement Agreement, the Loan Agreement and related documents will be resolved in accordance with a cross-border dispute resolution protocol premised on concurrent jurisdiction between this Court and the Bahamas Court.  *See* Global Settlement Agreement § 10.07 and Exhibit D.

26.     The Debtors have determined, in the exercise of their business judgment, that the Global Settlement Agreement, the Loan Agreement and related documents and instruments, which are the result of arm's-length negotiations between the Parties, contain reasonable terms and conditions.  *See* Ray Decl. at ¶¶ 4, 7, 13.

## Jurisdiction

27.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of

the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to rule 9013-1(f) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by

the Court in connection with this Motion to the extent it is later determined that the Court, absent

consent of the parties, cannot enter final orders or judgments consistent with Article III of the

United States Constitution.

## Relief Requested

28.     By this Motion, the Debtors request entry of the Order, substantially in the

form attached hereto as Exhibit A, authorizing and approving the Debtors' entry into, and

performance of their obligations under, (a) the Global Settlement Agreement and (b) the Loan

Agreement.

## Basis for Relief

**I.      The Global Settlement Agreement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable and in the Debtors' Best Interests.**

29.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by

the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of

reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v.

*Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006).  "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *See also In re Penn Cent. Transp. Co*., 596 F.2d 1102 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968).

30.    "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs*., 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)).

31.    Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its

creditors.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

      32.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc*., 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).  The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities."  *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

      33.     Given the number, scope and complexity of the disputes between the Debtors and FTX DM, the risk of litigating each to decision in multiple fora, and the associated cost of resolving each and every one of these disputes, the Debtors have determined that, in its totality, entry into the Global Settlement Agreement is in the best interests of the Debtors, their estates and all stakeholders.  *See* Ray Decl. at ¶¶ 7-13.  The Global Settlement Agreement provides material value to the Debtors' estates.  The Global Settlement Agreement eliminates the risk of an unfavorable outcome in the Adversary Proceeding or the Bahamian Liquidation Proceeding or, in the event of a favorable outcome in the Adversary Proceeding, lack of

enforcement of this Court's judgment in The Bahamas where material assets that the Debtors and FTX DM dispute are located—including real estate property and avoidance actions against persons in The Bahamas or arising out of the commencement of the Bahamian Liquidation Proceeding.

34.     The global settlement also avoids costly, time-consuming and uncertain litigation and eliminates the risk that the Bahamas Court will render decisions before this Court on matters that are core to the Debtors' Chapter 11 Cases or that could harm the Debtors' claims, arguments and defenses in other litigation and their reorganization efforts. *See id.* at ¶ 9.

35.     The Global Settlement Agreement also releases all claims asserted by FTX DM against the Debtors, which include more than $9 billion in asserted claims plus all unliquidated amounts asserted by FTX DM against the Debtors.  FTX DM also agrees to waive all rights to any other claims against the Debtors other than the Stipulated PropCo Claim.

36.     Accordingly, and as further described below, the compromises set forth in the Global Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

37.     **The Probability of Success in Litigation**.  The Debtors maintain that the claims asserted in the Adversary Proceeding are meritorious and that they would prevail. However, significant time and resources are required to prevail on those claims through the Adversary Proceeding before this Court.  Even if successful, the Debtors may need to pursue enforcement through the Bahamian Liquidation Proceeding before the Bahamas Court with respect to the material assets physically located in The Bahamas.

38.     Furthermore, FTX DM has asserted numerous defenses, including, among other things, that (a) this Court should abstain from adjudicating whether certain property

purportedly held in FTX DM's name is property of the Debtors' estates in favor of the Bahamas

Court, (b) the intent behind the relevant transfers from FTX Trading to FTX DM was not

fraudulent, and (c) FTX Trading received value from FTX DM in exchange for the relevant

transfers.  The Debtors disagree and have rebuttal arguments, but the outcome of the litigation is

uncertain and would be costly to achieve.

       39.      In addition, FTX DM has asserted counterclaims that will require

additional time and cost to defend.  Among other things, FTX DM sought an order (a) finding

that the Debtors have breached the Cooperation Agreement, (b) finding that the Debtors have

violated FTX DM's automatic stay and the recognition order in the Chapter 15 Case,

(c) declaring the terms under which FTX DM held digital assets and fiat in the United States and

(d) awarding FTX DM damages as a post-petition administrative claim against each of the

Debtors.  FTX DM also filed numerous proofs of claims against the Debtors in an aggregate

amount of no less than $9 billion on account of the assets to which the Debtors assert title.  The

Debtors maintain they have valid to these claims.  However, absent approval of the Global

Settlement Agreement and the releases contained therein, there is risk that FTX DM could be

awarded material amounts under such claims in the Debtors' Chapter 11 Cases.  *See id.* at ¶ 12.

The Global Settlement Agreement, in contrast, brings finality on favorable terms.

       40.      **The Complexity of the Litigation and the Attendant Expense,**

**Inconvenience, and Delay**.  Litigation of the Adversary Proceeding and the claims asserted by

FTX DM against the Debtors would be complex, expensive and time-consuming.  Without the

Global Settlement Agreement, the Debtors would be required to expend significant time and

resources litigating these issues in this Court and potentially certain issues in the Bahamas Court.

41.     Settlement negotiations were vigorous and free of any collusion.  *See id*. at ¶ 7.  In the absence of a settlement, the Debtors were ready to continue to litigate the Adversary Proceeding to judgment.  *See id*.  The Debtors' understanding is that FTX DM was prepared to litigate their claims as well.  *See id*.  Notably, the parties have already engaged in extensive discovery in the Adversary Proceeding and continued litigation of the Debtors' and FTX DM's claims would spawn additional extensive discovery.  *See id* ¶ 8.  Indeed, for the Adversary Proceeding, the parties anticipated the litigation would involve document and testimonial discovery, expert reports, and briefing on numerous issues—including property ownership issues, transaction avoidance issues, and various issues of foreign law.  *See id*.

42.     In addition, the complexity and attendant cost are not garden-variety for any bankruptcy litigation.  The costs are compounded by the unusual fact that the Debtors and FTX DM are both debtors in their own insolvency proceedings in two different countries.  Both estates are fiduciaries and have an important interest in using resources efficiently for the benefit of their stakeholders, in each case including FTX.com customers.  The Global Settlement Agreement eliminates these costs and permits the Debtors to direct their resources elsewhere to maximize recoveries for their stakeholders.

43.     **The Paramount Interests of Creditors**.  The Global Settlement Agreement is in the best interests of the Debtors' estates and their creditors.  The global settlement unlocks material value to the Debtors' estates and FTX.com creditors because it allows the Debtors and FTX DM to realize the benefit of material disputed assets that are located in The Bahamas (including real estate properties and certain avoidance action claims) and use them to make distributions to satisfy claims of FTX.com customers.

44.     In addition, approval of the Global Settlement Agreement resolves novel and complex disputes between the parties and avoids significant delays in the administration of these Chapter 11 cases and the implementation of any chapter 11 plan of reorganization.

45.     The global settlement also contemplates the release and waiver of all claims of FTX DM against the Debtors, including approximately $9 billion in asserted claims, against any and all of the Debtors other than the Stipulated PropCo Claim.  Moreover, upon effectiveness of the Debtors' plan of reorganization, the Global Settlement Agreement contemplates pooling assets, including significant assets whose ownership has been disputed between the parties, for the purposes of making equitable distributions to FTX.com customers. As such, in the Debtors' business judgment, the benefits of entering into the Global Settlement Agreement outweigh the alternative of continued litigation.  *See* Ray Decl. at ¶ 13.

46.     Based on the foregoing, the Debtors submit that the Global Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders.  As a result, the Debtors respectfully submit that the Global Settlement Agreement satisfies the *Martin* factors and request that the Court authorize the Debtors to enter into the Global Settlement Agreement.

## II.    The Loan Agreement Should Be Approved and Authorized as a Sound Exercise of the Debtors' Business Judgment.

47.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  For a court to approve the use, sale, or lease of estate property under section 363(b) of the Bankruptcy Code the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Where the debtor

articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

48.     Once a debtor articulates a valid business justification for the proposed transaction, significant weight is given to the debtor's business judgment.  "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Courts apply the business judgment rule within the context of a Chapter 11 case to shield a debtor's management from judicial second-guessing.  *Id.*

49.     Here, entry into the Loan Agreement represents a sound exercise of the Debtors' business judgment because it will allow FTX DM to perform its obligations under the Global Settlement Agreement, including managing the value-maximizing disposition of assets located in The Bahamas and pursuing specific litigation and avoidance actions for the benefit of all stakeholders.  Moreover, the Bridge Loan (a) bears a meaningful interest rate, (b) requires that FTX DM uses the proceeds exclusively for administrative expenses incurred in connection with the Bahamian Liquidation Proceeding and (c) requires FTX DM to use the proceeds of certain asset recoveries to mandatorily prepay the Bridge Loan.  Thus, the Loan Agreement is reasonably intended to maximize recoveries to customers and creditors of the Debtors' estates, avoid redundant work and minimize expense.

50.     Entry into the Loan Agreement is also authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a); *see also U.S.* v. *Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").  "The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." COLLIER ON BANKRUPTCY, ¶ 105.01, at 6 (Alan R. Resnick & Henry J. Sommer eds., 16th ed.). Approving the Loan Agreement pursuant to section 105(a) is appropriate here because approval promotes the efficient and effective administration of these Chapter 11 Cases with the Bahamian Liquidation Proceeding as parallel insolvency proceedings, encourages cooperation between the Debtors and FTX DM, and facilitates value-maximizing recoveries to customers and creditors of the Debtors' estates.

51.     For the foregoing reasons, and the supporting authority found in sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors submit that, in their informed business judgment, the approval of the Loan Agreement is (a) appropriate to promote the efficient and effective administration of these Chapter 11 Cases with the Bahamian Liquidation Proceeding and (b) in the best interests of the Debtors' estates and should be granted.

**Waiver of Bankruptcy Rule 6004(h)**

52.     Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral

is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."

For the reasons described above, the relief requested is essential to progress these Chapter 11

Cases and maximize the value of  assets available for creditor recoveries.  As such, ample cause

exists to justify a waiver of the stay period to the extent applicable.

### Notice

53.     Notice of this Motion has been provided to: (a) the U.S. Trustee;

(b) counsel to the Official Committee; (c) the Securities and Exchange Commission; (d) the

Internal Revenue Service; (e) the United States Department of Justice; (f) the United States

Attorney for the District of Delaware; (g) counsel to FTX DM; and (h) to the extent not listed

herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and

(b) grant such other and further relief as is just and proper.

Dated: January 4, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*