## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date:  January 25, 2024 at 10:00 a.m. (ET) |
| | Objection Deadline:  January 18, 2024 at 4:00 p.m. (ET) |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF INTERESTS IN IEX GROUP, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of all the shares of common stock in IEX Group, Inc., a Delaware corporation (the "Subject Company" or "IEX"), par value $0.01 per share, held by Debtor West Realm Shires Inc., a Delaware corporation ("Seller"), free and clear of all liens, claims, interests and encumbrances in

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

accordance with the terms and conditions set forth in the Purchase and Sale Agreement (as

defined below); (b) authorizing and approving Seller's entry into, and performance under, the

Purchase and Sale Agreement, dated as of January 4, 2024, a copy of which is attached hereto as

Exhibit B (the "Purchase and Sale Agreement"), between Seller and the purchasers thereto (each,

a "Purchaser" and collectively, "Purchasers"); and (c) granting related relief.  In support of this

Motion, the Debtors submit the declaration of Bruce Mendelsohn attached hereto as Exhibit C

(the "Mendelsohn Declaration"), which is incorporated herein by reference, and the Debtors

respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware

(the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Joint administration of these Chapter 11 Cases was authorized by the

Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office

of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an

Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the

Bankruptcy Code [D.I. 231].

3.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations").

## Jurisdiction

4.　　　The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Facts Specific to Relief Requested

### I.　Certain Debtors' Investment in and the Settlement and Share Exchange Transaction with the Subject Company

5.　　　Prior to the Petition Date, the Debtors regularly entered into and exited investments across a variety of asset categories, including interests in privately held companies (including in the form of preferred stock, common stock, warrants and notes), debt and equity securities in publicly traded companies, investments in crypto, venture capital or other investment funds, and investments in coins, tokens and token platforms.  The Debtors' investments and acquisitions spanned several industries, including, among others, crypto and crypto mining, financial services, fintech, artificial intelligence, gaming, betting and social media.  A number of these assets were held purely for purposes of investment and, as a result,

were meant to be monetized over time rather than integrated into the Debtors' core crypto exchange businesses conducted in the Dotcom and WRS Silos as described in the First Day Declarations.  Prior to the Petition Date, (i) the Debtors in the Alameda Silo operated quantitative trading funds specializing in crypto assets, offered over-the-counter trading services and made and managed other debt and equity investments, and (ii) the Debtors in the Ventures Silo made and managed private investments through Debtors Clifton Bay Investments, LLC, Clifton Bay Investments Ltd., FTX Ventures Ltd., Island Bay Ventures Inc. and certain affiliated non-Debtor entities.

6.     On March 18, 2022, Debtors FTX Trading Ltd. ("FTX Trading") and Seller entered into a Share Exchange Agreement (as amended, supplemented or modified from time to time, the "Share Exchange Agreement") with the Subject Company pursuant to which, among other things, the parties agreed to exchange FTX and WRS common stock for IEX common stock (collectively, the "Share Exchange Transaction").  The Share Exchange Transaction closed on May 17, 2022.  At the closing, among other things, (a) the Subject Company received 5,663,211 common shares, par value $0.0000026 per share, of FTX Trading and 49,234,136 shares of class A common stock, par value $0.00001 per share, of Seller (collectively, "FTX Shares") and (b) Seller received 1,570,142 shares of IEX common stock, par value $0.01 per share ("IEX Shares").

7.     On July 31, 2023, pursuant to the *Order (A) Authorizing the Debtors to Enter into Settlement Agreement with IEX Group, Inc., (B) Approving the Settlement Agreement, and (C) Granting Related Relief* [D.I. 2204], Seller, FTX Trading and the Subject Company entered into a Settlement and Share Exchange Agreement (the "Settlement Agreement").  The Settlement Agreement provides, among other things, that (a) Seller will retain 578,600 of the

IEX Shares (the "Interests") and transfer all of the remaining 991,542 IEX Shares to the Subject Company in exchange for the Subject Company's transfer of all of the FTX Shares to the Debtors; and (b) the Debtors and their affiliates, on the one hand, and the Subject Company and its affiliates, on the other hand, would release all claims and causes of action against each other arising out of the Share Exchange Transaction or the acquisition or ownership of FTX Shares or IEX Shares, as applicable.

8.      The Settlement Agreement also provides that Seller and FTX Trading would begin a sale process for the Interests to certain of the Subject Company's existing shareholders and certain other targets mutually agreed to by Seller, FTX Trading and the Subject Company, in accordance with the terms of the Settlement Agreement and the Order.

9.      The Interests are easily separated from the Debtors' core operations, and the sale of the Interests will not affect the Debtors' abilities to operate any of their businesses. Further, since any income that might be generated by the Interests in the form of dividends or distributions is uncertain and would only be received at the discretion of the Subject Company's board of directors, the Interests will not generate significant value to the Debtors' estates in the short term and may not result in any additional value in the long term.  Accordingly, the sale of the Interests now would maximize the value of the Debtors' estates, and it is in the best interest of the Debtors' estates to dispose of the Interests at this time through a private sale transaction.

**II.    Marketing Process**

10.      The Debtors, with the assistance of their investment banker, Perella Weinberg Partners ("PWP"), designed a process to market the Interests in an efficient and competitive sales process in cooperation with the Subject Company, taking into account the consent rights of the board of directors and stockholders of the Subject Company over potential transfers and the Debtors' business judgment that a consensual sale process would maximize

potential value.  Such efforts included creating and reaching out to a proprietary list of potential acquirers for the Interests.  *See* Mendelsohn Declaration ¶¶ 10–11.

11.     As a result of the marketing efforts, the Debtors entered into non-disclosure agreements with over 55 potential purchasers and provided all such potential purchasers access to information on the Interests.  The Debtors ultimately received indications of interest from two parties, including an indication of interest from Purchasers as a consortium on December 27, 2023 and engaged in good-faith negotiations with Purchasers regarding the terms of the Purchase and Sale Agreement.  *See* Mendelsohn Declaration ¶ 11.

12.     After thoroughly evaluating the bids from all of the parties with the assistance of PWP, the Debtors decided to enter into the Purchase and Sale Agreement with Purchasers based on their superior offer and ability to execute the Sale Transaction within a short time frame.  *See* Mendelsohn Declaration ¶ 12.

## III.    Sale Transaction

13.     On January 4, 2024, Seller and Purchasers executed the Purchase and Sale Agreement, which contains the following material terms:

| Purchase Price | As set forth in Section 1.2 of the Purchase and Sale Agreement, the aggregate purchase price for each Purchaser's respective Interests shall be an amount in cash equal to the number of such Interests set forth on Schedule A to the Purchase and Sale Agreement, multiplied by $69.1975 (each such amount, an "Aggregate Purchase Price" and together, the "Aggregate Purchase Prices"). |
|---|---|
| Closing Date | The closing of the transactions contemplated by the Purchase and Sale Agreement (the "Closing") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the second Business Day following the date on which all of the conditions to closing specified in Article 5 of the Purchase and Sale Agreement are |

| | satisfied or waived, or at such other time as Purchasers and Seller shall agree in writing (the "Closing Date"). |
|---|---|
| **Release** | As set forth in Section 7.4 of the Purchase and Sale Agreement, Seller and Purchasers agreed to a mutual release (the "Mutual Release") of all claims, causes of actions, liens, rights and remedies in respect of the acquisition or ownership of the Interests, including with respect to the terms of the Operative Documents and any potential breach thereof. |
| | As set forth in the Settlement Agreement and previously approved by the Bankruptcy Court, at the closing of the Sale Transaction, IEX and its Affiliates will release any claims or causes of action against the Debtors arising out of, relating to or arising under the Share Exchange Transaction, the Prior Agreements or the acquisition or ownership of the IEX Shares, including the IEX Claims, and the Debtors will release any claims or causes of action against IEX and its Affiliates arising out of, relating to or arising under the Share Exchange Transaction, the Prior Agreements or the acquisition or ownership of the FTX Shares at the closing of the Sale Transaction. |
| **Conditions to Closing** | The Purchase and Sale Agreement requires, prior to Closing, (a) the entry of a Sale Order authorizing and approving the Sale Transaction and (b) the requisite consent to or waiver of restrictions on the transfer of the Interests to Purchasers. There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 5 of the Purchase and Sale Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing. |
| **Transfer Taxes** | To the extent not exempt under section 1146 of the Bankruptcy Code, Purchasers shall pay all transfer taxes. |
| **Private Sale/Ability to Receive Additional Bids** | The Debtors do not intend to conduct an auction for the sale of the Interests, which have been subject to marketing efforts as described herein. |
| | However, as set forth in section 4.2 of the Purchase and Sale Agreement, the Aggregate Purchase Prices are also subject to certain higher or better offers in the form of an Alternative Transaction under the Purchase and Sale Agreement and the Settlement Agreement, which Seller will be able to receive up until the Order is entered by the Court. |
| **Fiduciary Out** | The Purchase and Sale Agreement may be terminated by Seller if Seller or the board of directors of Seller determines that proceeding with the transactions contemplated therein or failing |

| | |
|---|---|
| | to terminate the Purchase and Sale Agreement would be inconsistent with its fiduciary duties. |
| **Sale of Avoidance Actions** | Except for the Mutual Release described above, the Purchase and Sale Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| **Sale of Causes of Actions** | Except for the Mutual Release described above, the sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

14.    In addition to the material terms of the Purchase and Sale Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| | |
|---|---|
| **No Sale to an Insider** | No Purchaser is an insider of Seller or any of the other Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code.  *See* Local Rule 6004-1(b)(iv)(A). |
| **Agreements with Management** | No Purchaser has discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment.  *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | As described above.  *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted, as described above.  *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadline** | As described above.  *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None.  *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchasers** | None.  *See* Local Rule 6004-1(b)(iv)(G). |
| **Use of Proceeds** | None.  *See* Local Rule 6004-1(b)(iv)(H). |
| **Tax Exemption** | None.  *See* Local Rule 6004-1(b)(iv)(I). |
| **Record Retention** | Not applicable.  The Debtors are not selling substantially all of their assets under the Purchase and Sale Agreement.  *See* Local Rule 6004-1(b)(iv)(J). |

| | |
|---|---|
| **Sale of Avoidance Actions** | None, as described above. *See* Local Rule 6004-1(b)(iv)(K). |
| **Requested Findings as to Successor Liability** | A condition to Closing is entry of the Order, which shall provide that no Purchaser under any circumstances shall be deemed to be a successor of the Debtors. *See* Local Rule 6004-1(b)(iv)(L). |
| **Sale Free and Clear of Unexpired Leases** | Not applicable. *See* Local Rule 6004-1(b)(iv)(M). |
| **Credit Bid** | Not applicable. *See* Local Rule 6004-1(b)(iv)(N). |
| **Relief from Bankruptcy Rule 6004(h)** | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h). *See* Local Rule 6004-1(b)(iv)(O). |

## Relief Requested

15.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing and approving the Sale Transaction free and clear of all Liens other than Permitted Encumbrances (as defined in the Purchase and Sale Agreement); (b) authorizing and approving Seller's entry into, and performance under, the Purchase and Sale Agreement; and (c) granting related relief.

## Basis for Relief

**I.     The Court Should Approve the Sale Under Section 363(b) of the Bankruptcy Code.**

16.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale. *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal*

*dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).  In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors, which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

17.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.     A Sound Business Justification Exists for the Sale

18.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four*

*B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

19.     Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction and courts in this district have held that a debtor may conduct a private sale when a good business reasons exist.  *See, e.g.*, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I. 435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited partnership interests and limited liability corporation interests for approximately $22.8 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the private sale of limited partnership interests for approximately $8 million).

20.     The proposed Sale Transaction represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. The Debtors believe that a prompt sale of the Interests will protect the Debtors against the potential declining value of the Interests.   Selling the Interests now pursuant to the proposed Sale Transaction in a private sale is the most efficient and cost-effective means of minimizing costs to the estates while maximizing the value for the benefit of the estates.  *See* Mendelsohn Declaration ¶ 17.  Additionally, the negotiated Mutual Release is: (a) in exchange for the good and valuable consideration provided by Seller and Purchasers; (b) a good faith settlement and compromise of the claims, causes of action, Liens, rights and remedies released by such releases; (c) in the best interests of the Debtors and all holders of claims and interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to

any of the Debtors or their estates asserting any claim or cause of action (including all avoidance actions) released pursuant to such release. *See* Mendelsohn Declaration ¶ 21. As such, the Debtors submit that good business reason exists for conducting a private sale under the circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

B.    Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties

21.    Notice of this Motion has been provided to the following parties: (A) the U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (D) the Subject Company, (E) any party that has expressed an interest in purchasing the Interests during the last six months; (F) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (G) any other party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided. Following consultation with the Official Committee of Unsecured Creditors and the Ad Hoc Committee of Non-US Customers of FTX.com, each does not object to the relief requested in this Motion.

C.    The Sale Will Produce a Fair and Reasonable Price for the Property.

22.    The Debtors believe that the sale of the Interests to Purchasers through a private sale is the best way to maximize value for their estates.

23.    The Debtors believe that the Aggregate Purchase Price for the applicable Interests in respect of each Purchaser is fair and reasonable. The Debtors ensured that sale of the Interests would reflect their fair market value by, with the assistance of PWP, marketing the Interests and conducting arm's-length negotiations. The Debtors carefully considered and analyzed the offer as set forth in the Purchase and Sale Agreement in comparison to the other

options and concluded that a sale of the Interests will result in obtaining maximum value for the

Interests, and is in the best interests of the Debtors' estates and creditors.  Among the offers

received by the Debtors, the offer submitted by Purchasers as a consortium is the highest or

otherwise best offer and would provide a greater recovery for the Debtors' estates.  *See*

Mendelsohn Declaration ¶ 17.

24.     As set forth in section 4.2 of the Purchase and Sale Agreement, the

Aggregate Purchase Prices are also subject to certain higher or better offers in the form of an

Alternative Transaction under the Purchase and Sale Agreement and the Settlement Agreement,

which Seller will be able to receive up until the Order is entered by the Court.  Further, as

provided by section 6.1(g) of the Purchase and Sale Agreement, the Aggregate Purchase Prices

are subject to a "fiduciary out" where the Purchase and Sale Agreement can be terminated by the

boards of directors (or similar governing bodies) of Seller if it is determined to be inconsistent

with their fiduciary duties.  If an Alternative Transaction is received by the Debtors, Seller has

the right, but not the obligation, to terminate the Purchase and Sale Agreement upon entering

into a definitive agreement with respect to such Alternative Transaction.  Accordingly, the

Debtors submit that the proposed Sale Transaction will produce a fair and reasonable price.

D.     <u>The Parties Have Acted in Good Faith and Each Purchaser Should Be Entitled to
the Good Faith Protections of Section 363(m) of the Bankruptcy Code.</u>

25.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's

interest in property purchased from the debtor notwithstanding that authorization of the sale

conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section

363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or not

such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

26.     Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

27.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147. To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

28.     The Debtors submit that the terms and conditions of the Purchase and Sale Agreement have been negotiated at arm's length without any indication of fraud or collusion between Seller and any Purchaser. No Purchaser is an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and the Debtors believe that no Purchaser

14

has engaged in any conduct that would indicate or constitute a lack of good faith.  *See* Mendelsohn Declaration ¶ 9.  Accordingly, the Debtors request the finding that each Purchaser is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.   The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

29.    The Debtors also request authorization to sell the Interests free and clear of all Liens, other than Permitted Encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Interests.

30.    The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

31.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

32.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

33.     The Debtors submit that the Sale Transaction satisfies one or more of the requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have consented to the Sale Transaction, and the Interests may be sold free and clear of all liens, claims, interests and encumbrances.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the Debtor submits that any holder of liens, claims and encumbrances against or interests in the Interests could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.  *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del. 2021).

34.     A sale free and clear of all liens, claims, interests and encumbrances is necessary to maximize the value of the Interests.  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a

transfer that is free and clear of all Liens (other than Permitted Encumbrances).  Purchasers would not have entered into the Purchase and Sale Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchasers free and clear of all Liens (other than Permitted Encumbrances).  *See* Mendelsohn Declaration ¶ 20.

35.      Furthermore, any Liens (other than Permitted Encumbrances) existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Interests free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

**Bankruptcy Rules 6004(a) and 6004(h)**

36.      The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rule 6004(h).  In light of the Debtors' reorganization and plan process efforts and the importance of an efficient timeline for maximizing the value of the Interests, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders and continue to progress these Chapter 11 Cases.  Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

**Notice**

37.      Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or

encumbrance against, or interest in, the relevant Interests; (d) the Subject Company; (e) any party that has expressed an interest in purchasing the Interests during the last six months; (f) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (g) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

### No Prior Request

38.     No prior motion for the relief requested herein has been made to this or any other court.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: January 4, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*