**<u>EXHIBIT C</u>**

**Mendelsohn Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF**
**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND**
**APPROVING SALE OF INTERESTS IN IEX GROUP, INC. FREE AND CLEAR OF**
**ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING**
**AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE**
**AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

I, Bruce Mendelsohn, hereby declare as follows:

1.      I am a Partner in the Advisory Group at Perella Weinberg Partners L.P. ("PWP"), a financial advisory firm that maintains an office at 767 5th Avenue, New York, New York 10153, and the Debtors' investment banker.  PWP is a full-service investment banking firm providing strategic and financial advisory services, including with respect to mergers and acquisitions, capital raising and restructuring transactions across a broad range of industries. PWP and its professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out of court and in Chapter 11 proceedings.

2.      I have been employed as a Partner of PWP since January 2016.  I received a Bachelor of Arts degree in 1984 from Emory University and a Master of Business

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Administration in 1989 from the Wharton School at the University of Pennsylvania.

3.      Prior to joining Perella Weinberg Partners, I was a Partner at Goldman Sachs where I worked from May 1998 to June 2015 and most recently served as Head of the Americas Restructuring Group and part of the U.S. Leveraged Finance team.  I was named a Partner at Goldman Sachs in 2010.  From 2006 to 2008, I served as Chief Underwriting Officer for North America, where I was a member of Goldman Sachs' Firmwide Capital Committee and its Special Situations Specialty Lending Investment Committee.  I served as Global Head of the Special Assets and Bank Debt Portfolio groups from 2000 to 2008, and started at Goldman Sachs in the Securities Division where I spent two years working on the distressed bond and bank loan proprietary trading desks.  Prior to Goldman Sachs, I worked for UBS and MJ Whitman in restructuring and distressed securities, and began my career in finance at Lehman Brothers.

4.      In addition to working with the Debtors in the above-captioned cases (the "Chapter 11 Cases"), my experience includes representing companies, boards, creditors, and other stakeholders in a variety of situations across a broad range of industries, including the chapter 11 cases of:  American Tire Distributors, Bonanza Creek, Breitburn Energy, Bristow Group, California Resources Corporation, Chesapeake Energy, Cineworld Group, Crossmark Holdings, Eco-Bat Technologies, Fieldwood Energy, Garret Motion, iHeart Communications, LATAM Airlines, Memorial Production Partners, Pacific Drilling, Sanchez Energy Corporation, Seadrill, Sears, Video Equipment Rental Corporation, Windstream, and 21st Century Oncology, among others.  In addition, while at Goldman Sachs, I was involved in the following bankruptcy cases:  Bridge Information Systems, Brothers Gourmet Coffees, Calpine, CRC Communications, Focal Communications, General Growth Properties, Lehman Brothers, Network Plus, Nextel International, Orchard Supply, Qwest Communications and 360 Networks.

5.      I submit this declaration (this "Declaration") in support of the *Motion of Debtors for Entry of an Order (i) Authorizing and Approving Sale of Interests in IEX Group, Inc. Free and Clear of all Liens, Claims, Interests and Encumbrances; (ii) Authorizing and Approving Entry Into, and Performance Under, the Purchase and Sale Agreement; and (iii) Granting Related Relief* (the "Motion"). [2]

6.      Except as otherwise indicated, all facts set forth in this Declaration are based upon:  (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"); (ii) information learned from my review of relevant documents; and/or (iii) information supplied by members of the Debtors' management, employees of PWP working directly with me or under my supervision, direction or control, and/or from the Debtors' other professionals and advisors.

7.      I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors.  I am not being compensated for this testimony other than through payments to be received by PWP as a professional the Debtors have retained; none of those payments are specifically payable on account of this testimony.  If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

**A.      A Sound Business Justification Exists for the Sale.**

8.      I believe that Seller's entry into the Purchased and Sale Agreement represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, creditors and other parties-in-interest.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

B.      **The Sale Will Produce the Highest and Best Offer.**

9.      PWP was engaged by the Debtors effective November 16, 2022 to provide

financial advisory, restructuring, financing and sale services to the Debtors during these

Chapter 11 Cases.  PWP has assisted the Debtors in their exploration and evaluation of strategic

alternatives to maximize the value of, and monetize, their diverse, global assets.  This has

included a review of documents regarding the Debtors' businesses and investments, discussions

with management of the Debtors, discussions with businesses in which the Debtors have made

investments, and coordinating and initiating discussions with potential purchasers.

10.     Following a strategic review, PWP designed a process to market the

Interests in an efficient and competitive sales process, taking into account the consent rights of

the board of directors and stockholders of the Subject Company over potential transfers and the

Debtors' business judgment that a consensual sale process would maximize potential value.  The

process is also consistent with the terms of the Settlement and Share Exchange Agreement (the

"Settlement Agreement"), dated July 31, 2023, between Seller, FTX Trading Ltd. and the

Subject Company, which requires that the potential purchasers of the Interests be limited to the

existing shareholders of the Subject Company and the entities mutually agreed to by the parties

to the Settlement Agreement.

11.     In consultation with the Subject Company, PWP reached out to 55

mutually agreed potential purchasers of the Interests, 15 of which entered into confidentiality

agreements and received access to a virtual data room.  Following PWP's marketing campaign

for the Interests, the Debtors received two indications of interest from prospective purchasers of

the Interests.  During discussions with these prospective purchasers, the Debtors negotiated for

the inclusion of the ability to continue marketing the interests pursuant to the terms of the

Settlement Agreement.  Such provision allows the Debtors to solicit and receive higher or better

offers pursuant to the terms of the Settlement Agreement until the date that a Sale Order is entered by the Court.

12.     Once the Debtors were satisfied they had negotiated the best deal possible with Purchasers, the Debtors determined that it was in the best interest of their estates and their constituents to proceed with Purchasers toward executing a mutually-agreeable transaction, based on Purchasers' superior offer and ability to execute the Sale Transaction within a short time frame, with the expectation that the Debtors will continue to be able to receive offers over the course of the coming weeks to confirm that no higher and better offer exists.

13.     After intensive arms'-length negotiations, Seller and Purchasers entered into that certain Purchase and Sale Agreement, dated as of January 4, 2024, whereby Purchasers agreed to purchase the Interests for aggregate consideration of $40,037,673.50 (such aggregate consideration, the "Purchase Price").

14.     Based on my experience, involvement in the process and review of available alternatives, it is my opinion that there is no better or higher offer currently available for the Interests, and that the Purchase and Sale Agreement facilitates the Debtors seeking a higher or better offer, or confirming that none exists prior to consummation of the Purchase and Sale Agreement.  I believe that all interested persons and entities have been or will be afforded a full, fair and reasonable opportunity to (i) make a higher or better offer to purchase the Interests, and (ii) object or be heard with respect to the Sale Motion.

C.     **The Sale Will Produce a Fair and Reasonable Price for the Interests.**

15.     I believe that the Purchase Price for the Interests contemplated by the Agreement is fair and reasonable.  The Debtors, with the assistance of PWP, ensured that sale of the Interests would reflect their fair market value by marketing the Interests and conducting arm's-length negotiations.

16.     Pursuant to the Purchase and Sale Agreement, the Purchase Price is subject to higher or better offers from third parties in the form of an "Alternative Transaction", and a "fiduciary out" which provides that the Purchase and Sale Agreement can be terminated by the boards of directors (or similar governing bodies) of Seller if it is determined to be inconsistent with the fiduciary duties of the boards of directors (or similar governing bodies). If an Alternative Transaction is received by the Debtors, Seller has the right, but not the obligation, to terminate the Purchase and Sale Agreement upon entering into a definitive agreement with respect to such Alternative Transaction.

17.     I believe that a longer process or the implementation of formal bidding procedures for the sale of the Interests would not have resulted in a higher or better value to the estate. A private sale enabled the Debtors to avoid the additional costs, expenses, time and risks associated with a formal bidding and sale process. In addition, selling the Interests now will protect the Debtors against the risk of potential decline in value of the Interests. I believe that selling the Interests in a private sale is the most efficient and cost-effective means of minimizing costs to the estate while maximizing the value for the benefit of the estate.

18.     In my role as the Debtors' financial advisor, I reviewed the Purchase and Sale Agreement and based on my experience, believe the Purchase and Sale Agreement is the result of extensive, arm's-length and good-faith negotiations between the parties, and that such negotiations were free of any collusion.

**D.      The Sale of the Interests Should be Made Free and Clear of Any Liens, Including Successor Liability.**

19.     No Purchaser is a successor to or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between Purchasers and the Debtors as a result of any action taken in connection with the Sale Transaction. It is my understanding that no

Purchaser is holding itself out to the public as a continuation of the Debtors based on the Sale

Transaction or the Purchase and Sale Agreement. The Sale Transaction does not amount to a

consolidation, succession, merger, or de facto merger of any Purchaser and the Debtors and/or

the Debtors' estates.

20.     Moreover, I believe that not transferring the Interests free and clear of all

Liens (other than Permitted Encumbrances) would adversely affect the Debtors' efforts to

maximize the value of the Interests.  I believe that Purchasers would not have entered into the

Purchase and Sale Agreement and would not consummate the transactions contemplated thereby

if the sale of the Interests was not free and clear of all Liens (other than Permitted

Encumbrances), or if Purchasers would, or in the future could, be liable for any such interests.

**E.**     **The Mutual Release Should be Approved.**

21.     It is my belief that the mutual release of all claims, causes of actions

(including all avoidance actions), liens, rights and remedies entered into by Seller and Purchasers

should be approved.  It is my belief that the inclusion of the mutual release among Seller and

Purchasers pursuant to Section 7.4 of the Purchase and Sale Agreement is a necessary and

integral part of Purchasers' consummation of the Sale Transaction and the scope of such mutual

release is appropriately tailored under the facts and circumstances.  The mutual release is: (a) in

exchange for the good and valuable consideration provided by Seller and Purchasers; (b) a good

faith settlement and compromise of the claims, causes of action, Liens, rights and remedies

released by such releases; (c) in the best interests of the Debtors and all holders of claims and

interests; (d) fair, equitable and reasonable; (e) given and made after due notice and opportunity

for hearing; and (f) a bar to any of the Debtors or their estates asserting any claim or cause of

action (including all avoidance actions) released pursuant to such release.

-8-

22.      Accordingly, for the foregoing reasons, I believe that the Purchase and

Sale Agreement represents the highest and best offer for the Interests and that the sale of the

Interests to Purchasers pursuant to the Purchase and Sale Agreement will provide a greater

recovery for the Debtors' estates than would be provided by any other reasonably available

alternative.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge, information and belief.

Dated: January 4, 2024.

/s/ Bruce Mendelsohn
Bruce Mendelsohn
Partner
Perella Weinberg Partners L.P.