## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  January 25, 2024 at 10:00 a.m. (ET)**<br>**Objection Deadline:  January 18, 2024 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF NOTE ISSUED BY DAVE, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of the convertible promissory note (the "Note") held by Debtor FTX Ventures Ltd. ("Seller") in Dave, Inc. (the "Purchaser"), free and clear of all liens, claims, interests and encumbrances in

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

accordance with the terms and conditions set forth in the Agreement (as defined below);

(b) authorizing and approving Seller's entry into, and performance under, the Purchase and Sale

Agreement, dated as of January 4, 2024, a copy of which is attached hereto as <u>Exhibit B</u> (the

"<u>Agreement</u>"), between Seller and the Purchaser; and (c) granting related relief.  In support of

this Motion, the Debtors submit the declaration of Bruce Mendelsohn attached hereto as <u>Exhibit</u>

<u>C</u> (the "<u>Mendelsohn Declaration</u>"), which is incorporated herein by reference, and the Debtors

respectfully state as follows:

## <u>Background</u>

1.       On November 11 and November 14, 2022 (as applicable, the "<u>Petition</u>

<u>Date</u>"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware

(the "<u>Court</u>") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

2.       Joint administration of these Chapter 11 Cases was authorized by the

Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office

of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an

Official Committee of Unsecured Creditors (the "<u>Committee</u>") pursuant to section 1102 of the

Bankruptcy Code [D.I. 231].

3.       Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

-2-

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93]

(collectively, the "First Day Declarations").

### Jurisdiction

4.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the

Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and Local Rules 2002-1,

6004-1 and 9006-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

order or judgment by the Court in connection with this Motion to the extent it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments consistent

with Article III of the United States Constitution.

### Facts Specific to Relief Requested

**I.    Seller's Investment in the Purchaser**

5.      Prior to the Petition Date, the Debtors regularly entered into and exited

investments across a variety of asset categories, including interests in privately held companies

(including in the form of preferred stock, common stock, warrants and notes), debt and equity

securities in publicly traded companies, investments in crypto, venture capital or other

investment funds, and investments in coins, tokens and token platforms.  The Debtors also

acquired controlling or 100% interests in early-stage private companies.  The Debtors'

investments and acquisitions spanned several industries, including, among others, crypto and

crypto mining, financial services, fintech, artificial intelligence, gaming, betting and social

media.  A number of these assets were held purely for purposes of investment and, as a result,

were meant to be monetized over time rather than integrated into the Debtors' core crypto exchange businesses conducted in the Dotcom and WRS Silos as described in the First Day Declarations.  Prior to the Petition Date, (i) the Debtors in the Alameda Silo operated quantitative trading funds specializing in crypto assets, offered over-the-counter trading services and made and managed other debt and equity investments, and (ii) the Debtors in the Ventures Silo made and managed private investments through Debtors Clifton Bay Investments, LLC, Clifton Bay Investments Ltd., FTX Ventures Ltd., Island Bay Ventures Inc. and certain affiliated non-Debtor entities.

6.      Seller, which is a Debtor entity in the Ventures Silo, acquired the Note issued by the Purchaser on March 21, 2022, for an aggregate consideration of $100,000,000 in U.S. dollars.

7.      The Note is easily separated from the Debtors' core assets, and the sale of the Note will not affect the Debtors' abilities to operate any of their businesses.  Accordingly, the sale of the Note would maximize the value of the Debtors' estates, and it is in the best interest of the Debtors' estates to dispose of the Note at this time through a private sale transaction.

## II.      Marketing Process

8.      The Debtors, with the assistance of their investment banker, Perella Weinberg Partners ("PWP"), designed a process to market the Note in an efficient and competitive sales process, taking into account the Debtors' business judgment that a consensual sale process would maximize potential value.  The terms of the Agreement direct the Purchaser to work collaboratively with the Debtors to facilitate a market check for the Note after execution of the Agreement, including, subject to the Purchaser's reasonable discretion, by lifting certain transfer restrictions under the terms of the Note that might otherwise limit a potential sale of the Note to a third party and including certain "go-shop" provisions, which will allow the Debtors to

-4-

marketing the Note widely to any prospective purchasers. This will allow the Seller to confirm

there are no competing offers that would provide additional value and, in the event there are

competing offers, gives Seller greater freedom to complete a sale of the Note to a third party than

would otherwise be available under the terms of the Note. *See* Mendelsohn Declaration ¶ 10.

## III.    Sale Transaction

9.    On January 4, 2024, Seller and the Purchaser executed the Agreement,

which contains the following material terms:[2]

| Purchase Price | As set forth in Section 1.3 of the Agreement, the aggregate purchase price for the Note is equal to the sum of (i) $71,000,000 in cash plus (ii) the Additional Payment Amount. |
| --- | --- |
| | Additional Payment Amount means an amount in cash equal to (a) the $100,000,000 original principal amount of the Note plus any unpaid interest, as if the Note had remained outstanding and not been cancelled pursuant to the Agreement minus (b) $71,000,000. |
| Closing Date | The closing of the transactions contemplated by the Agreement (the "Closing") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the day that is the second Business Day following the date on which all of the conditions to closing specified in Article 5 of the Agreement are satisfied or waived, or at such other time as the Purchaser and Seller shall agree in writing (the "Closing Date"). |
| Releases | As set forth in section 7.4 of the Agreement, Seller and the Purchaser agreed to a mutual release (the "Mutual Release") of all Claims (as defined in the Agreement), other than claims arising under the Agreement. |
| Conditions to Closing | There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 5 of the Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing. |

---

[2]    Capitalized terms used in this Section III but not otherwise defined herein are to be given the meanings ascribed to them in the Agreement. To the extent that there are inconsistencies between any summary description of the Agreement contained herein and the terms of the Agreement, the terms of the Agreement shall govern.

| Transfer Taxes | To the extent not exempt under section 1146 of the Bankruptcy Code, the Purchaser shall pay all transfer taxes. |
|---|---|
| Private Sale/Ability to Solicit Additional Bids | As set forth in Section 4.2 of the Agreement, from and after the date thereof until three days before the Sale Hearing, Seller may solicit bids for the sale of the Note and respond to inquiries or offers to purchase the Purchaser and/or its assets. |
| Fiduciary Out | The Agreement may be terminated by Seller if Seller or the board of directors of Seller determines that proceeding with the Transactions or failing to terminate the Agreement would be inconsistent with its fiduciary duties. |
| Sale of Avoidance Actions | The Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| Sale of Causes of Actions | The sale of the Note does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

10.     In addition to the material terms of the Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| No Sale to an Insider | The Purchaser is not an insider of Seller or any of the other Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code.  *See* Local Rule 6004-1(b)(iv)(A). |
|---|---|
| Agreements with Management | The Purchaser has not discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment.  *See* Local Rule 6004-1(b)(iv)(B). |
| Releases | As described above.  *See* Local Rule 6004-1(b)(iv)(C). |
| Private Sale/No Competitive Bidding | As described above.  *See* Local Rule 6004-1(b)(iv)(D). |
| Closing and Other Deadline | As described above.  *See* Local Rule 6004-1(b)(iv)(E). |
| Good Faith Deposit | None.  *See* Local Rule 6004-1(b)(iv)(F). |
| Interim Arrangements with the Purchaser | None.  *See* Local Rule 6004-1(b)(iv)(G). |

-6-

| Use of Proceeds | None.  *See* Local Rule 6004-1(b)(iv)(H). |
|---|---|
| Tax Exemption | None.  *See* Local Rule 6004-1(b)(iv)(I). |
| Record Retention | Not applicable.  The Debtors are not selling substantially all of their assets under the Agreement.  *See* Local Rule 6004-1(b)(iv)(J). |
| Sale of Avoidance Actions | None, as described above.  *See* Local Rule 6004-1(b)(iv)(K). |
| Requested Findings as to Successor Liability | A condition to Closing is entry of the Order, which shall provide that the Purchaser under no circumstances shall be deemed to be a successor of the Debtors.  *See* Local Rule 6004-1(b)(iv)(L). |
| Sale Free and Clear of Unexpired Leases | Not applicable.  *See* Local Rule 6004-1(b)(iv)(M). |
| Credit Bid | Not applicable.  *See* Local Rule 6004-1(b)(iv)(N). |
| Relief from Bankruptcy Rule 6004(h) | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).  *See* Local Rule 6004-1(b)(iv)(O). |

## Relief Requested

11.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing and approving the Sale Transaction, free and clear of all Liens (as defined in the Agreement), other than Permitted Encumbrances (as defined in the Agreement); (b) authorizing and approving Seller's entry into, and performance under, the Agreement; and (c) granting related relief.

## Basis for Relief

## I.     The Court Should Approve the Sale Under Section 363(b) of the Bankruptcy Code.

12.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo*

*Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).  In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

13.    Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.    <u>A Sound Business Justification Exists for the Sale</u>

14.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom*

-8-

*Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

15.     Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction, and courts in this district have held that a debtor may conduct a private sale when a good business reason exists.  *See, e.g.*, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I. 435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited partnership interests and limited liability corporation interests for approximately $22.8 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the private sale of limited partnership interests for approximately $8 million).

16.     The proposed Sale Transaction represents a sound exercise of the Debtors' business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. The Debtors believe that a prompt sale of the Note will protect the Debtors against the potential declining value of the Note.   Selling or transferring the Note now pursuant to the proposed Sale Transaction in a private sale is the most efficient and cost-effective means of minimizing costs to the estates while maximizing the value for the benefit of the estates.  *See* Mendelsohn Declaration ¶ 17.  Additionally, the negotiated Mutual Release is: (a) in exchange for the good and valuable consideration provided by Seller and the Purchaser; (b) a good faith settlement and compromise of the Claims released by such releases; (c) in the best interests of the Debtors and

all holders of claims and interests; (d) fair, equitable and reasonable; (e) given and made after

due notice and opportunity for hearing; and (f) a bar to any of the Debtors or their estates

asserting any Claim (including all avoidance actions) released pursuant to such release.  *See*

Mendelsohn Declaration ¶ 21.  As such, the Debtors submit that good business reasons exist for

conducting a private sale under the circumstances and that the proposed Sale Transaction is

justified by a sound business purpose.

        B.     <u>Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties</u>

        17.     Notice of this Motion has been provided to the following parties:  (A) the

U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien,

claim or encumbrance against, or interest in, the relevant Note; (D) the Purchaser;

(E) any party that has expressed an interest in purchasing the Note during the last six months;

(F) any interested or affected governmental or regulatory entity, including the Internal Revenue

Service, the Securities and Exchange Commission and the United States Department of Justice;

and (G) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The

Debtors submit that all parties with an interest in the Sale Transaction have been given adequate

notice and that no other or further notice need be provided. Following consultation with the

Official Committee of Unsecured Creditors and the Ad Hoc Committee of Non-US Customers of

FTX.com, each does not object to the relief requested in this Motion.

        C.     <u>The Sale Will Produce a Fair and Reasonable Price for the Property.</u>

        18.     The Debtors believe that the sale of the Note to the Purchaser through a

private sale is the best way to maximize value for their estates.

        19.     The Debtors believe that the purchase price for the Note is fair and

reasonable.  The Debtors, with the assistance of PWP, ensured that sale of the Note will reflect

its fair market value by conducting an arm's-length negotiation with the Purchaser which

resulted in the Agreement that allows the Debtors to receive offers for the Note from third parties. The Debtors carefully considered and analyzed the offer in comparison to its other options and concluded that a sale of the Note will result in obtaining maximum value for the Note, and is in the best interests of the Debtors' estates and creditors. The $71,000,000 upfront purchase price for the Note is equal to 71% of the $100,000,000 original principal amount of the Note, and in the event the Purchaser is required to make an additional payment pursuant to the change in control protections under the Agreement, the purchase price will be increased to 100% of the original principal amount of the Note, including the $100,000,000 original principal amount and all interest accrued thereunder.

20.     As set forth in section 4.2 of the Agreement, the purchase price is also subject to any higher or better offers from any third party in the form of an Alternative Transaction under the Agreement, which can be solicited for up to three days prior to the Hearing Date. Further, as provided by section 6.1(g) of the Agreement, the purchase price is also subject to a "fiduciary out" where the Agreement can be terminated by the board of directors (or similar governing body) of Seller if it is determined to be inconsistent with its fiduciary duties. In addition, pursuant to section 6.1(f) of the Agreement, if an Alternative Transaction is received by the Debtors, the Agreement would terminate automatically upon entering into a definitive agreement with respect to such Alternative Transaction and such agreement is approved by this Court. Accordingly, the Debtors submit that the proposed Sale Transaction will produce a fair and reasonable price.

D.     The Parties Have Acted in Good Faith and the Purchaser Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code.

21.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale

-11-

conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section

363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

22.    Section 363(m) "reflects the . . . 'policy of not only affording finality to

the judgment of the bankruptcy court, but particularly to give finality to those orders and

judgments upon which third parties rely.'"  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147

(3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th

Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that

section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts

in maximizing the price for assets sold in such proceedings").

23.    While the Bankruptcy Code does not define "good faith," the Third Circuit

has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re

Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's

conduct in connection with a sale must usually amount to "fraud, collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other

bidders."  *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978))

(citations omitted).  Due to the absence of a bright-line test for good faith, the determination is

based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the

course of the sale proceedings."  *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch

(In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

-12-

24.     The Debtors submit that the terms and conditions of the Agreement have been negotiated at arm's length without any indication of fraud or collusion between Seller and the Purchaser.  The Purchaser is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and the Debtors believe that the Purchaser has not engaged in any conduct that would indicate or constitute a lack of good faith.  *See* Mendelsohn Declaration ¶ 21.  Accordingly, the Debtors request the finding that the Purchaser is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.     The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

25.     The Debtors also request authorization to sell the Note free and clear of all Liens, other than Permitted Encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Note.

26.     The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     such interest is in bona fide dispute; or
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five

-13-

requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*,

282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the

conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the

sale free and clear of all liens.") (citation omitted).

28.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court

broad discretionary powers, providing that "[t]he Court may issue any order, process or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section

363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325

(Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize

sale of estate assets free and clear).

29.     The Debtors submit that the Sale Transaction satisfies one or more of the

requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale

Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have

consented to the Sale Transaction, and the Note may be sold free and clear of all liens, claims,

interests and encumbrances.  *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175

B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims,

interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R.

504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the Debtor

submits that any holder of liens, claims and encumbrances against or interests in the Note could

be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their

interests.  *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del. 2021).

-14-

30.    A sale free and clear of all liens, claims, interests and encumbrances is necessary to maximize the value of the Note.  Not transferring the Note free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Note other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances).  The Purchaser would not have entered into the Agreement and will not consummate the Sale Transaction if the Note were not transferred to the Purchaser free and clear of all Liens (other than Permitted Encumbrances). *See* Mendelsohn Declaration ¶ 20.

31.    Furthermore, any Liens (other than Permitted Encumbrances) existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Note free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

### Bankruptcy Rules 6004(a) and 6004(h)

32.    The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rule 6004(h).  In light of the Debtors' reorganization and plan process efforts and the importance of an efficient timeline for maximizing the value of the Note, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders and continue to progress these Chapter 11 Cases.  Accordingly, the Debtors request that the Order be

4893-7823-5034 v.3

effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

## Notice

33.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Note; (d) the Purchaser; (e) any party that has expressed an interest in purchasing the Note during the last six months; (f) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (g) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

## No Prior Request

34.     No prior motion for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

-16-

Dated: January 4, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

4893-7823-5034 v.3