**<u>EXHIBIT B</u>**

**Agreement**

EXECUTION VERSION
CONFIDENTIAL

**PURCHASE AND SALE AGREEMENT**

**by and between**

**FTX VENTURES LTD.**

and

**DAVE INC.**

**Dated as of January 4, 2024**

This PURCHASE AND SALE AGREEMENT (including the Exhibits and Schedules hereto, each as amended or restated from time to time, this "Agreement"), dated as of January 4, 2024, is made by and between FTX Ventures Ltd., a BVI Business Company ("Seller"), and Dave Inc., a Delaware corporation ("Purchaser"). The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

## Recitals

WHEREAS, on November 11, 2022 and November 14, 2022, Seller and certain of its Affiliates (collectively, the "Debtors") commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*, as amended, the "Bankruptcy Code") by filing petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes as *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)) (the "Bankruptcy Proceeding");

WHEREAS, Seller is the holder of $100,000,000 in original principal amount of the promissory note set forth on **Schedule A** (the "Note") issued by Purchaser, as set forth on **Schedule A**, and desires to (a) sell, assign and transfer to Purchaser the Note pursuant to section 363 of the Bankruptcy Code and (b) be discharged from all obligations (monetary or otherwise), covenants and agreements under the Note, in each case in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, all upon the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the board of directors or other applicable governing body of Seller has determined that it is advisable and in the best interests of Seller's estate and the beneficiaries of such estate to consummate the Transactions pursuant to the Sale Order and has approved this Agreement;

WHEREAS, Seller intends to seek the entry of the Sale Order by the Bankruptcy Court approving this Agreement and authorizing Seller to consummate the Transactions upon the terms and subject to the conditions set forth herein and in the Sale Order;

WHEREAS, Purchaser desires to repurchase the entire Outstanding Principal Balance (as defined in the Note) of the Note from Seller pursuant to section 363 of the Bankruptcy Code and the terms set forth therein; and

WHEREAS, the Parties acknowledge and agree that the Transactions are being made at arm's length and in good faith and without intent to hinder, delay or defraud creditors of Seller or its Affiliates and Seller acknowledges that the consideration to be paid is fair value and reasonably equivalent value for the acquisitions by Purchaser.

NOW, THEREFORE, in consideration of the premises and of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

# ARTICLE 1

## PURCHASE AND SALE OF NOTE

1.1     <u>Purchase and Sale of Note</u>.  Pursuant to sections 105 and 363 of the Bankruptcy Code and upon the terms and subject to the conditions set forth in this Agreement, and in accordance with Section 6.5(a) of the Note Purchase Agreement, at the Settlement, Seller agrees to sell, assign, convey, transfer and deliver to Purchaser, and Purchaser agrees to purchase and accept from Seller, all of Seller's right, title and interest in, to and under the Note for an amount in cash equal to the Aggregate Purchase Price, which purchase shall be free and clear of any Liens other than Permitted Encumbrances. At the Settlement, the Seller and Purchaser's obligations in connection with the Note, including under the Convertible Note Purchase Agreement dated as of March 21, 2022, shall be terminated in full, and any Claim in connection therewith shall be waived.

1.2     <u>Purchase Price</u>.

(a)     The aggregate purchase price (the "<u>Aggregate Purchase Price</u>") for the Note shall be the sum of (i) $71,000,000 in cash, which shall, provided that the requirements of <u>Section 1.4(f)</u> are satisfied, be payable without any withholding or deduction (the "<u>Closing Payment Amount</u>") *plus* (ii) in accordance with the terms and subject to the conditions set forth in <u>Section 1.2(b)</u>, the Additional Payment Amount.

(b)     Within three (3) business days following the Change of Control Effective Date, but solely to the extent the Purchaser entered into definitive documentation for a Change of Control during the Make-Whole Period, Purchaser shall pay to Seller an amount equal to the Additional Payment Amount, which shall be payable by wire transfer of immediately available funds to the account(s) designated by Seller.

1.3     <u>Closing</u>. The closing of the sale and purchase of the Note (the "<u>Closing</u>") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the day that is the second (2nd) Business Day following the date on which all of the conditions to settlement specified in <u>Article 5</u> are satisfied or waived, or at such other time as Purchaser and Seller shall agree in writing (the "<u>Closing Date</u>").

1.4     <u>Deliveries at Closing</u>.  At the Closing, upon satisfaction or waiver of the conditions set forth in <u>Article 5</u> hereof:

(a)     Purchaser shall pay the Closing Payment Amount to Seller in accordance with <u>Section 1.2</u> by wire transfer of immediately available funds pursuant to the instructions delivered by Seller to Purchaser prior to the Closing Date;

(b)     Each of Seller and Purchaser shall deliver to the other Party a duly executed cross receipt for the Note and the Closing Payment Amount;

(c)     Purchaser shall deliver to the Seller a counterpart to the Transfer Documents, if any, duly executed by Purchaser or its applicable Affiliates party thereto;

(d)    Seller shall surrender the Note to the Purchaser;

(e)    Seller shall deliver to Purchaser a counterpart to the Transfer Documents, if any, duly executed by Seller or its applicable Affiliates party thereto;

(f)    Seller shall deliver to Purchaser a duly completed IRS Form W-9; and

(g)    each of Seller and Purchaser shall deliver to the other Party each of the other documents and instruments required to be delivered pursuant to the terms of this Agreement or any Transfer Documents.

1.5    <u>Additional Payment</u>.  As soon as reasonably practicable following the Change of Control Effective Date, but solely to the extent definitive documentation for a Change of Control was entered into by the parties to such Change of Control transaction within the Make-Whole Period, Purchaser shall deliver to Seller a written notice setting forth the Change of Control Effective Date, along with reasonable supporting detail describing the events associated with the Additional Payment Date and any documentation used in the preparation of such notice. The Additional Payment shall, to the extent permitted by applicable Law, be treated by the Parties for Tax purposes as adjustments to the purchase price.

## ARTICLE 2

## REPRESENTATIONS AND WARRANTIES

2.1    <u>Representations and Warranties of Seller</u>. Seller hereby represents and warrants to Purchaser that:

(a)    <u>Authorization</u>. Seller is a business company duly incorporated with registration no. 2089169 and validly existing in good standing (to the extent such concept is applicable) under the laws of the British Virgin Islands. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, Seller has the requisite power and authority to enter into, execute and deliver this Agreement and the Transfer Documents to which Seller is a party and to perform all of the obligations to be performed by it hereunder and thereunder. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, this Agreement and the Transfer Documents to which it is a party have been or, when executed, will be duly authorized, executed and delivered by it, and constitute or, when executed, will constitute a valid and binding obligation of Seller, enforceable against it in accordance with its terms.

(b)    <u>Title to Note</u>. Upon the Seller's delivery of the Note to the Purchaser pursuant to the Settlement, the Purchaser will acquire good, marketable and unencumbered title to such Note, free and clear of all Liens.

(c)    <u>No Conflicts</u>. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, the execution and delivery of this Agreement and the Transfer Documents to which Seller is a party and the performance or consummation of the Transactions by Seller do not conflict with, result in a breach or violation of, or result in the creation of a Lien on the Note owned by Seller under the terms or provisions of

3

(i) its organizational documents or memorandum and articles of association (as applicable), (ii) any contract, or (iii) any statute or any Order, rule or regulation of any Governmental Entity having jurisdiction over it or its property, except, in the case of either clause (ii) or (iii), for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(d)    Certain Conduct.  Seller has not (i) sold, assigned, transferred, delivered or otherwise disposed of all or any portion of the Note held by Seller, (ii) converted, exchanged or redeemed all or any portion of the Note, or (iii) agreed to do any of the foregoing.

(e)    Broker's Fee; No Public Offering. No Person acting on behalf of Seller or under the authority of Seller shall be entitled to any broker's, finder's, or similar fee or commission in connection with the Transactions, other than the financial advisors retained by Seller in the Bankruptcy Proceeding.

(f)    Adequate Information; No Reliance; No Pressure. The Seller acknowledges and agrees that (i) it has had the opportunity to access all materials, if any, it considers relevant to making an investment decision to enter into the Agreement and has had the opportunity to review (and has carefully reviewed) (A) the Purchaser's filings and submissions with the Securities and Exchange Commission, including, without limitation, all information filed or furnished pursuant to the Securities Exchange Act of 1934, as amended (collectively, the "Public Filings") and (B) this Agreement (including the exhibits thereto) (collectively, the "Materials"), (ii) it has had the opportunity to consult with its accounting, tax, financial and legal advisors to be able to evaluate the risks involved in the Agreement and to make an informed decision with respect to the Agreement, (iii) it is experienced, sophisticated and knowledgeable in the trading of securities and is able to fend for itself in the Agreement, (iv) it is not relying, and has not relied, upon any statement, advice (whether accounting, tax, financial, legal or other), representation or warranty made by the Purchaser or any of its affiliates or any representatives or any other entity or person, except for the representations and warranties made by the Purchaser in this Agreement, (v) it had a sufficient amount of time to consider whether to participate in the Agreement and that the Purchaser has not placed any pressure on it to respond to the opportunity to participate in the Agreement and (vi) the terms of the Agreement are the result of bilateral negotiations between the parties, and the Seller was given a meaningful opportunity to negotiate the terms of the Agreement.

(g)    Material Non-Public Information. The Seller acknowledges that the Released Parties (as defined below) may be in possession of material non-public information regarding the Purchaser and its subsidiaries and the Note, and the Seller acknowledges such non-disclosure. The Seller acknowledges that such information may impact the value of the investment and may be material to its decision whether to enter into the investment, and such information may be adverse to the Seller. The Seller understands, based on its experience, the disadvantage to which the Seller is subject due to the disparity of information between the Released Parties and the Seller. Notwithstanding such disparity, the Seller has deemed it appropriate to enter into this Agreement and to consummate the sale of the Note.

(h)    Further Action. The Seller agrees that the Seller shall promptly execute and deliver such further agreements and instruments and take such further actions, as the Purchaser may reasonably request in order to carry out the purposes and intent of this Agreement.

(i)      No Other Representations or Warranties.  Except for the representations and warranties contained in this Section 2.1, neither Seller nor any other Person (other than Purchaser) has made any other express or implied representation or warranty with respect to, or otherwise in connection with, the Note, Seller, Purchaser or any of their respective businesses, operations, assets, liabilities, conditions (financial or otherwise) or prospects in connection with this Agreement or the Transactions, and Seller disclaims any other representations or warranties, whether made by Seller, any Affiliate of Seller or any of Seller's or its Affiliates' respective representatives.

2.2      Representations and Warranties of Purchaser. Purchaser hereby represents and warrants to Seller that:

(a)      Authorization. Purchaser is an entity duly organized and validly existing in good standing under the laws of its jurisdiction of organization. Purchaser has the requisite power and authority to enter into, execute and deliver this Agreement and the Transfer Documents and to perform all of the obligations to be performed by it hereunder and thereunder. This Agreement and the Transfer Documents to which Purchaser is a party have been or, when executed, will be duly authorized, executed and delivered by Purchaser, and constitute or when executed, will constitute a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and moratorium laws and other Laws of general application affecting enforcement of creditors' rights generally. To the Purchaser's knowledge, no Change of Control has occurred since the date the Note was issued.

(b)      No Conflicts. The execution and delivery of this Agreement and the Transfer Documents to which Purchaser is a party and the performance or consummation of the Transactions by Purchaser do not (i) conflict with or result in a breach or violation of the terms or provisions of its organizational documents, (ii) result in the breach or violation of any of the terms or provisions of, or constitute a default under, or accelerate the performance required by the terms of any indenture, mortgage, deed of trust, loan agreement or any other agreement or instrument to which Purchaser is a party or by which Purchaser is bound, or (iii) conflict with or result in a breach or violation of the terms or provisions of any statute or any Order, rule or regulation of any Governmental Entity having jurisdiction over Purchaser or its property, except (x) in each case, to the extent that such conflicts, violations, defaults or accelerations would not, individually or in the aggregate, materially hinder, delay or impair the performance of its obligations under this Agreement and the Transfer Documents and (y) in the case of clause (ii) or (iii), for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect. The execution and delivery by Purchaser of this Agreement and the Transfer Documents to which it is a party and the performance by Purchaser of its obligations hereunder and thereunder will not require any registration, filing (other than as may be required by the Securities Exchange Act of 1934), consent or approval under any Law, rule, regulation, judgment, order, writ, decree, permit or license, or any consent or approval of any other party to Purchaser's constituent documents, or any other contract, agreement, instrument, commitment or restriction binding upon Purchaser, except for the Sale Order.

(c)      Broker's Fee. No Person acting on behalf of Purchaser or under the authority of Purchaser shall be entitled to any broker's, finder's, or similar fee or commission in connection with the Transactions.

(d)      No Resale. Purchaser's purchase of the Note is for its own account and not with a view to the distribution or resale thereof, except in compliance with the Securities Act of 1933, as amended, and applicable state securities laws.

(e)      [Reserved.]

(f)      Solvency.

(i)      Purchaser is not entering into this Agreement or the Transactions with the intent to hinder, delay or defraud either present or future creditors of Purchaser.

(ii)      After giving effect to the Transactions, at and immediately after the Closing Date, Purchaser (A) will be solvent (in that both the fair value of its assets will not be less than the sum of its debts and that the present fair saleable value of its assets will not be less than the amount required to pay its probable liability on its existing debts as they mature or become due), (B) will have adequate capital and liquidity with which to engage in its businesses and (C) will not have incurred and does not plan to incur debts beyond its ability to pay as they mature or become due.

(g)      No Other Representations or Warranties.

(i)      Except for the representations and warranties contained in this Section 2.2, Purchaser has not made any other express or implied representation or warranty with respect to, or otherwise in connection with, the Note, Purchaser, Seller or any of their respective businesses, operations, assets, liabilities, conditions (financial or otherwise) or prospects in connection with this Agreement or the Transactions, and Purchaser disclaims any other representations or warranties, whether made by Purchaser, any Affiliate of Purchaser or any of Purchaser's or its Affiliates' respective representatives.

(ii)      Purchaser acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.1, (A) neither Seller nor any other Person has made any express or implied representation or warranty with respect to, or otherwise in connection with, the Transactions or with respect to the accuracy or completeness of any other information provided, or made available, to Purchaser in connection with the Transactions and Purchaser has not relied on any representation or warranty other than those expressly set forth in Section 2.1, (B) Purchaser has not executed or authorized the execution of this Agreement or entered into the Transactions in reliance upon, and hereby specifically disclaims reliance upon, any promise, statement, projection, forecast, representation or warranty whatsoever made or omitted to be made to Purchaser or any of its Affiliates, or any of its or their respective representatives, including any such promise, statement, projection, forecast, representation or warranty as to the condition, value, quality or prospects of the Purchaser, or its assets or liabilities, and (C) the Note is being transferred "as is", "where is" and "with all faults". Purchaser acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.1, Seller, on behalf of itself and its subsidiaries and Affiliates (x) expressly disclaims and negates any representation or warranty, expressed or implied, at common law, by statute or otherwise, with respect to the business, operations, assets, liabilities, conditions

6

(financial or otherwise) and prospects of the Purchaser or with respect to the Note (including any express or implied warranty of merchantability or fitness for a particular purpose) and (y) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement or information made, communicated or furnished (orally or in writing) to Purchaser or its Affiliates or its or their respective representatives (including any opinion, information, projection or advice that may have been or may be provided to Purchaser by any representative of Seller or any of its Affiliates). Purchaser acknowledges and agrees that Seller has not made any representations or warranties to Purchaser regarding the probable success or profitability of the Purchaser.

(iii)    Purchaser acknowledges and agrees that the enforceability of this Agreement against Seller is subject to entry of the Sale Order and any other Order entered into by the Bankruptcy Court applicable to the Transactions.

## ARTICLE 3

## COVENANTS

3.1    <u>Tax Matters</u>. Seller and Purchaser shall cooperate with each other in good faith in connection with Taxes with respect to the Transactions, using commercially reasonable efforts to obtain any certificate or other document from any Governmental Entity as may be necessary to mitigate, reduce or eliminate any withholding or deduction in respect of any Tax that could be imposed with respect to the Transactions. Purchaser shall not deduct and withhold from any amounts payable to Seller unless required by applicable Law.  If the Purchaser reasonably believes that it is required to deduct and withhold from any amounts payable to Seller under applicable Law, the Purchaser shall notify the Seller at least ten (10) Business Days before any such payment subject to withholding (or, if not reasonably practicable to give such notice at least ten (10) Business Days before payment, as soon as reasonably practicable).

3.2    <u>Confidentiality</u>. Each of Seller and Purchaser acknowledges that the Confidentiality Agreement remains in full force and effect in accordance with its terms, which terms are incorporated herein by reference, and agrees to be bound thereby in the same manner and to the same extent as if the terms had been set forth herein in full except that Seller shall be permitted to disclose the terms of this Agreement.  For the avoidance of doubt, Seller is expressly permitted to disclose this Agreement, any Transfer Documents and, in each case, any exhibits and schedules thereto with the Bankruptcy Court as necessary or advisable in connection with the Transactions. For the avoidance of doubt, the Purchaser may disclose the terms and existence of this Agreement as may be required by law, including under the Securities Exchange Act of 1934 and any reports filed with the Securities and Exchange Commission, or any other filings, reports or disclosures that are required under applicable laws or regulations.

3.3    <u>Due Diligence Cooperation</u>. Until the earlier of (a) the Closing Date and (b) the consummation of an Alternative Transaction, the Purchaser shall, upon reasonable notice from Seller, use commercially reasonable efforts in good faith to respond to diligence requests from Seller and potential purchasers in an Alternative Transaction, including by answering reasonable due diligence information requests making management of the Purchaser reasonably available for

7

Zoom meetings and, in the event that Seller seeks to enter into an Alternative Transaction with a purchase price for the Note of greater than $71,000,000.00 with a buyer that is acceptable to Purchaser (in its reasonable discretion), consent to such Alternative Transaction pursuant to Section 6.5 of the Note Purchase Agreement. In order to receive confidential information about the Purchaser (the "Confidential Purchaser Information"), (i) other potential purchasers shall have executed a confidentiality agreement with the Purchaser (as negotiated by the potential purchaser in each case and the Purchaser in good faith), and (ii) any potential purchaser proposal must reasonably be expected to lead to an Alternative Transaction with the Seller with a purchase price for the Note of greater than $71,000,000.00. Confidential Purchaser Information may include, if requested by such prospective potential purchaser, a projection model provided by the Purchaser to Seller dated December 9, 2023, and reasonable access by the potential purchaser to management for diligence calls in the ordinary course of an Alternative Transaction.  Purchaser may, in its reasonable discretion, decline to negotiate a confidentiality agreement with any potential purchaser based on Purchaser's good faith determination that the provision of Confidential Purchaser Information with that potential purchaser would negatively impact the Purchaser.

## ARTICLE 4

## BANKRUPTCY MATTERS

4.1     Bankruptcy Court Filings.

(a)     As promptly as possible, but in no event later than January 4, 2024, Seller or its applicable Debtor Affiliates shall (i) file with the Bankruptcy Court one or more motions, along with the proposed Sale Order, which Sale Order shall be in form and substance acceptable to the Purchaser, (A) seeking approval of the sale of the Note to Purchaser and (B) fixing the time, date and location of the hearing to approve the consummation of the Transactions (the "Sale Hearing"); (ii) notify, as required by the Bankruptcy Code and the Bankruptcy Rules, all parties entitled to notice of such motions and orders, as modified by orders in respect of notice which may be issued at any time and from time to time by the Bankruptcy Court, and such additional parties as such Purchaser may reasonably request; and (iii) use commercially reasonable efforts to obtain Bankruptcy Court approval of the Sale Order.

(b)     Each Party shall (i) appear in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the Transactions and (ii) keep the other Party reasonably apprised of the status of material matters related to this Agreement, including, upon reasonable request promptly furnishing the other Party with copies of notices or other communications received from the Bankruptcy Court or any other Person with respect to the Transactions.

(c)     The Parties shall provide all copies of pleadings that any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of, the Sale Order prior to the filing of such pleadings.  Seller shall promptly provide Purchaser and its outside legal counsel with copies of all notices, filings and orders of the Bankruptcy Court that Seller has in its possession (or receives) pertaining to the Sale Order, or related to any of the Transactions, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to Purchaser and its

outside legal counsel. Seller shall not seek any modification to the Sale Order with respect to the Transactions by the Bankruptcy Court or any other Governmental Entity of competent jurisdiction to which a decision relating to the Bankruptcy Proceeding has been appealed, in each case, without the prior written consent of Purchaser (not to be unreasonably withheld, conditioned or delayed).

(d)     If any order of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for rehearing, re-argument or stay shall be filed with respect thereto), Seller agrees to, and agrees to cause its Debtor Affiliates to, use their commercially reasonable efforts, to defend against such appeal, petition or motion, and Purchaser agrees to cooperate reasonably in such efforts. Each Party hereby agrees to use its commercially reasonable efforts to obtain an expedited resolution of such appeal.

4.2     <u>Alternative Transaction</u>. Consummation of the Transactions are subject to approval by the Bankruptcy Court and the consideration by the Debtor Affiliates and the Bankruptcy Court of higher or better competing bids. From and after the date hereof until three (3) days before the Sale Hearing, as such date may be modified or extended (the "<u>Sale Process Date</u>"), Seller and its Debtor Affiliates shall be permitted to cause their respective representatives and Debtor Affiliates to (i) initiate contact with, or solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates, agents and representatives) with respect to an Alternative Transaction, (ii) respond to any inquiries or offers to purchase all or any part of the Note, and (iii) perform any and all other acts related thereto which are required or permitted under the Bankruptcy Code, any Order entered by the Bankruptcy Court applicable to the Transactions or other applicable Law, including supplying information relating to the Note to prospective purchasers.

4.3     <u>Sale Order</u>.

(a)     Subject to <u>Section 4.2</u> and <u>Section 7.7</u>, each of Seller and Purchaser shall take all actions as may be reasonably necessary to cause the Sale Order to be issued, entered and become a Final Order, including furnishing affidavits, declarations or other documents or information for filing with the Bankruptcy Court. Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" buyer under section 363(m) of the Bankruptcy Code.

(b)     The Sale Order shall, among other things, (i) approve, pursuant to sections 105 and 363 of the Bankruptcy Code, (A) the execution, delivery and performance by the Seller of this Agreement, (B) the sale of the Note to Purchaser on the terms set forth herein and free and clear of all Liens (other than Permitted Encumbrances), and (C) the performance by Seller of its obligations under this Agreement, (ii) find that (A) Purchaser is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code and (B) Purchaser is not a successor to Seller and (iii) grant Purchaser the protections of section 363(m) of the Bankruptcy Code.

(c)     After entry of the Sale Order, Seller shall not take any action which is intended to, or fail to take any action the intent of which failure to act is to, result in the reversal,

9

voiding, modification or staying the Sale Order unless the Purchaser specifically consents to such action in writing.

## ARTICLE 5

## CONDITIONS TO SETTLEMENT

5.1    <u>Mutual Conditions</u>. The respective obligations of Seller and Purchaser to effect the Closing are subject to the Bankruptcy Court having entered the Sale Order on or prior to the Closing Date.

5.2    <u>Conditions to the Obligation of Purchaser</u>. The obligation of Purchaser to effect the Closing is subject to the satisfaction or waiver by Purchaser of the following additional conditions on or prior to the Closing Date:

(a)    The representations and warranties of Seller contained in this Agreement shall be true and correct as of the Closing Date as though made on and as of such date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date), except where the failure of any such representations and warranties to be so true and correct would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect; and

(b)    Seller shall have performed in all material respects all obligations required to be performed by it under this Agreement on or prior to the Closing Date.

5.3    <u>Conditions to the Obligation of Seller</u>. The obligation of Seller to effect the Closing is subject to the satisfaction or waiver by Seller of the following additional conditions on or prior to the Closing Date:

(a)    The representations and warranties of Purchaser contained in this Agreement shall be true and correct as of the Closing Date as though made on and as of such date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date); and

(b)    Purchaser shall have performed in all material respects all obligations required to be performed by it under this Agreement on or prior to the Closing Date.

## ARTICLE 6

## TERMINATION

6.1    <u>Grounds for Termination</u>. This Agreement may be terminated at any time:

(a)    by mutual agreement of Seller and Purchaser;

(b)    by either Seller or Purchaser if the Closing has not occurred by March 15, 2024 (the "<u>Termination Date</u>"); <u>provided</u>, that the right to terminate this Agreement pursuant to

10

this <u>Section 6.1(b)</u> shall not be available to a Party that has breached in any material respect its obligations under this Agreement in any manner that shall have proximately contributed to the failure of the Closing to have occurred on or prior to the Termination Date;

(c)    by either Seller or Purchaser, if there is in effect a Final Order of a Governmental Entity of competent jurisdiction, enjoining or otherwise prohibiting the consummation of the Transactions (it being agreed that the Parties will promptly appeal any adverse determination which is not non-appealable and pursue such appeal in accordance with their respective obligations under this Agreement unless and until this Agreement is terminated pursuant to this <u>Section 6.1</u>); <u>provided</u>, <u>that</u>, no termination may be made by a Party under this <u>Section 6.1(c)</u> if the issuance of such Final Order was primarily caused by such Party with respect to, or action or inaction of such Party in violation of, any obligation or condition of this Agreement;

(d)    by Seller if Purchaser shall have breached or failed to perform in any material respect any of its covenants or other agreements contained in this Agreement, or any of its representations and warranties shall have become untrue after the date hereof, which breach or failure to perform or be true (i) would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.3</u> and (ii) is not curable or, if curable, is not cured within the earlier of (A) five (5) days after written notice thereof is given by Seller to Purchaser and (B) the Termination Date; <u>provided</u>, that Seller shall not have the right to terminate this Agreement pursuant to this <u>Section 6.1(d)</u> if Seller is then in material breach of any of its representations, warranties, covenants or other agreements hereunder and such material breach would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.2</u>;

(e)    by Purchaser if Seller shall have breached or failed to perform in any material respect any of its covenants or other agreements contained in this Agreement, or any of its representations and warranties shall have become untrue after the date hereof, which breach or failure to perform or be true (i) would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.2</u>, and (ii) is not curable or, if curable, is not cured within the earlier of (A) five (5) days after written notice thereof is given by Purchaser to Seller and (B) the Termination Date; <u>provided</u>, that Purchaser shall not have the right to terminate this Agreement pursuant to this <u>Section 6.1(e)</u> if Purchaser is then in material breach of any of its representations, warranties, covenants or other agreements hereunder and such material breach would give rise to the failure of a condition set forth in <u>Section 5.1</u> or <u>Section 5.3</u>;

(f)    automatically, if Seller enters into a definitive agreement with a third party with respect to an Alternative Transaction and the Bankruptcy Court enters an Order approving such Alternative Transaction; or

(g)    by Seller, if Seller or the board of directors (or similar governing body) of Seller determines that proceeding with the Transactions or failing to terminate this Agreement could be inconsistent with its or such Person's or body's fiduciary duties.

6.2    <u>Effect of Termination</u>. If this Agreement is terminated as permitted by <u>Section 6.1</u>:

(a)    no Party shall have any liability or further obligation to any other Party pursuant to this Agreement; <u>provided</u>, <u>however</u>, that (i) the agreements of Seller and Purchaser set

forth in <u>Section 3.2</u> (*Confidentiality*) and <u>Section 7.5</u> (*Expenses*) shall survive such termination and (ii) no such termination shall relieve a Party of any liability or damages to the other Party resulting from any knowing and intentional material breach of this Agreement;

      (b)    Purchaser shall return to Seller all documents, work papers and other material of Seller relating to the Transactions, whether obtained before or after the execution hereof or certify that such documents have been destroyed; and

      (c)    the provisions of the Confidentiality Agreement will continue in full force and effect.

## ARTICLE 7

## OTHER MATTERS

7.1    <u>Waiver, Amendment</u>. Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited by the provision had it not been waived.

7.2    <u>Remedies</u>. No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by a Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

7.3    <u>No Survival of Representations and Warranties or Covenants</u>. No representations or warranties, covenants or agreements in this Agreement or in any instrument delivered pursuant to this Agreement shall survive beyond the Closing Date, except for covenants and agreements that by their terms are to be satisfied after the Closing Date, which covenants and agreements shall survive until satisfied in accordance with their terms. Following the Settlement, in no event shall Seller or Purchaser have any recourse against the other or the Purchaser Parties or Seller Parties, respectively with respect to any representation, warranty, covenant or agreement made by Seller or Purchaser, as applicable, in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, except with respect to claims for breaches of covenants and agreements that by their terms are to be satisfied after the Closing Date.

7.4    <u>Mutual Release</u>. From and after the Settlement, upon the terms and subject to the conditions set forth herein:

      (a) Seller, on behalf of itself and the Seller Parties, hereby expressly, unconditionally and irrevocably waives, discharges, settles, acquits, compromises and releases any and all Claims the Seller Parties (or any entity for which Seller is acting as a duly authorized fiduciary) has, had, may have had or may have against any Purchaser Party as of the Closing, other than Claims arising under this Agreement; <u>provided</u> <u>further</u>, that this Section 7.4(a) shall be subject to and effective upon the occurrence of the Closing.

12

(b) Purchaser, on behalf of itself and the Purchaser Parties, hereby expressly, unconditionally and irrevocably waives, discharges, settles, acquits, compromises and releases any and all Claims the Purchaser Parties (or any entity for which Purchaser is acting as a duly authorized fiduciary) has, had, may have had or may have against any Seller Party as of the Closing, other than Claims arising under this Agreement; provided, however, that this Section 7.4(b) shall be subject to and effective upon the occurrence of the Closing.

(c) Seller and Purchaser expressly waive and relinquish any and all provisions, rights, and benefits conferred by California Civil Code § 1542 or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable or equivalent to California Civil Code § 1542.

7.5    Expenses. Except as otherwise provided in this Agreement or the Transfer Documents, each of Purchaser and Seller shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the Transfer Documents and the Transactions; provided, however, that Seller shall not pay any third-party costs and expenses of the Purchaser, including legal and accounting fees, incurred in connection with the Transactions, to the extent required to be paid, reimbursed or advanced pursuant to the Transfer Documents.

7.6    Notices. All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to Seller:

FTX Ventures Ltd.
2600 South Shore Blvd, Suite 300
League City, TX 77573
Attention: Kathryn Schultea
Email: kathyschultea@ftx.com

*With a copy (which shall not constitute notice) to*:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attention:  Audra D. Cohen
            Rita-Anne O'Neill
Telephone:(212) 558-3275
            (310) 712-6698

13

Email:      cohena@sullcrom.com
            oneillr@sullcrom.com

If to Purchaser:

Dave Inc.
1265 S. Cochran Ave.
Los Angeles, CA 90019
Attention: Jason Wilk
Email: jason@dave.com

*With a copy (which shall not constitute notice) to*:

Skadden Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, New York 10001
Attention: Yossi Vebman
Telephone: (212) 735-3719
Email: yossi.vebman@skadden.com

7.7     <u>Specific Performance</u>.

(a)     Each Party agrees that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, and that damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement.  Accordingly, each Party will be entitled to injunctive relief to prevent any such breach, and to specifically enforce the terms and provisions of this Agreement without the necessity of posting bond or other security against it or proving damages, including specific performance of such covenants, promises or agreements (including to cause Purchaser to consummate the Transactions and to make the payments contemplated by this Agreement) or an Order enjoining a Party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement.  The rights set forth in this <u>Section 7.7</u> will be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

(b)     Each Party agrees not to raise any objections to the availability of the equitable remedy of specific performance to prevent or restrain breaches of this Agreement by Purchaser or Seller, as applicable, and to specifically enforce the terms and provisions of this Agreement to prevent breaches or threatened breaches of, or to enforce compliance with, the respective covenants and obligations of Purchaser or Seller, as applicable, under this Agreement all in accordance with the terms of this <u>Section 7.7</u>.

7.8     <u>Fiduciary Obligations</u>. Nothing in this Agreement, or any document related to the Transactions, will require Seller or any of its directors, officers or stockholders, in each case, in their capacities as such, to take any action, or to refrain from taking any action, to the extent inconsistent with their fiduciary obligations.  For the avoidance of doubt, until the Closing has

14

occurred, Seller retains the right to pursue any transaction or restructuring strategy that, in Seller's business judgment, will maximize the value of its estate.

7.9      Entire Understanding; No Third-Party Beneficiaries. This Agreement and the Transfer Documents together set forth the entire understanding of the Parties relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior agreements, written or oral, among the Parties with respect to the subject matter of this Agreement. In the event of any conflict between this Agreement and the Transfer Documents, the provisions of this Agreement shall prevail. No representation, warranty, inducement, promise, understanding or condition not set forth in this Agreement has been made or relied on by any Party in entering into this Agreement. Nothing in this Agreement, expressed or implied, is intended to confer on any Person, other than the Parties or their respective successors, any rights, remedies, obligations or liabilities.

7.10      Assignment. Neither this Agreement nor any of the rights, interests or obligations under it may be assigned by a Party (whether by operation of law or otherwise) without the prior written consent of the other Party, and any purported assignment in violation of this Section 7.10 will be void, except for the following assignments which shall not require any consent and will not be void: (a) assignment to an Affiliate of either Party (provided that such Party remains liable jointly and severally with its assignee Affiliate for the assigned obligations to the other Party) and (b) assignment by Seller to a succeeding entity following its emergence from the Bankruptcy Proceeding. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by each Party to this Agreement and its successors and permitted assigns.

7.11      Counterparts. This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

7.12      Severability. If any of the provisions of this Agreement is found to be in violation of Law or unenforceable for any reason, then (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction, and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.13      No Presumption. The Parties agree that this Agreement was negotiated fairly between them at arm's length and that the final terms of this Agreement are the product of their negotiations. Each Party represents and warrants that it has sought and received experienced legal counsel of its own choosing with regard to the contents of this Agreement and the rights and obligations affected hereby. The Parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not

15

be construed against a Party on the grounds that such Party drafted or was more responsible for drafting the provisions.

      7.14   <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.

      (a)   This Agreement will be governed by and construed in accordance with the internal Laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such Laws.

      (b)   Without limiting a Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Note, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in <u>Section 7.6</u>; <u>provided</u>, <u>however</u>, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Action, in the Delaware Court of Chancery, for the resolution of any such claim or dispute. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable Law, any objection which it may now or hereafter have to the laying of venue of any such Action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

      (c)   Each Party consents to process being served by the other Party in any Action by delivery of a copy thereof in accordance with the provisions of <u>Section 7.6</u>; <u>provided</u>, <u>however</u>, that such service will not be effective until the actual receipt thereof by the Party being served.

      (d)   Each Party waives any right to trial by jury in any Action regarding this Agreement or any provision hereof.

      7.15   <u>Damages</u>. Neither Party shall have any liability under any provision of this Agreement for any punitive, incidental, consequential, special or indirect damages, including business interruption, loss of future revenue, profits or income, or loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement.

      7.16   <u>Interpretation</u>. (a) As used in this Agreement, references to:

      (i)   the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement;

16

(ii)     the Preamble, Recitals, Sections or Exhibits refer to the Preamble, a Recital or a Section of, or an Exhibit to this Agreement unless otherwise indicated;

(iii)     this Agreement refers to this Agreement and the Exhibits to it; and

(iv)     all references to "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified.

(b)     Wherever this Agreement requires a Party to take an action, the requirement constitutes an undertaking by the Party to cause its subsidiaries, and to use its commercially reasonable efforts to cause its other Affiliates, to take appropriate action in connection therewith.

(c)     Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the Person referred to may require.

(d)     The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

*[Remainder of page intentionally left blank]*

17

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**FTX VENTURES LTD.**

By: _____
Name:    John J. Ray III
Title:    Authorized Signatory

**PURCHASER**:

**DAVE INC.**

By: _____
Name:    Jason Wilk
Title:    Chief Executive Officer

*[Signature Page to Purchase and Sale Agreement]*

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**FTX VENTURES LTD.**

By: _____
    Name:
    Title:

**PURCHASER**:

**DAVE INC.**

By: _____
    Name:    Jason Wilk
    Title:    Chief Executive Officer

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the meanings specified in this Exhibit A.

"Action" means any litigation, action, suit, charge, binding arbitration, or other legal, administrative or judicial proceeding.

"Additional Payment Amount" means an amount in cash equal to (a) the Outstanding Principal Balance of the Note if the Note had remained outstanding and not been cancelled pursuant to this Agreement minus (b) the Closing Payment Amount.

"Affiliate" means, as to any Person, any other Person that directly or indirectly through one or more intermediaries controls, or is under common control with, or is controlled by, such Person.

"Aggregate Purchase Price" has the meaning set forth in Section 1.2.

"Agreement" has the meaning set forth in the Preamble.

"Alternative Transaction" means the sale, transfer or other disposition of the Note in a transaction with a purchaser or transferee other than Purchaser and/or its Affiliates.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bankruptcy Proceeding" has the meaning set forth in the Recitals.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court.

"Business Day" means any day other than a Saturday or Sunday or a day on which banks located in the city of New York are authorized or required by statute to close.

"Change of Control" means the occurrence of any of the following events: (i) there occurs a sale, transfer, conveyance or other disposition of all or substantially all of the consolidated assets of the Purchaser, (ii) a transaction or series of related transactions in which any "person" or "group" (within the meaning of Section 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), becomes the "beneficial owner" (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended), directly or indirectly, of more than 50% of the outstanding voting securities of the Purchaser having the right to vote for the election of members of the Purchaser's board of directors, or (iii) the Purchaser consummates any merger, consolidation or similar transaction, unless the stockholders of the Purchaser immediately prior to the consummation of such transaction continue to hold (in substantially the same proportion as their ownership of the Purchaser immediately prior to the transaction, other than changes in

A-1

proportionality as a result of any cash/stock election provided under the terms of the definitive agreement regarding such transaction) more than 50% of all of voting power of the outstanding shares of 50% of the total voting power represented by the outstanding voting securities of the surviving or resulting entity in such transaction immediately following the consummation of such transaction.  For the avoidance of doubt, the existing ownership structure as of the date of this Agreement shall not be deemed a "Change of Control."

"Change of Control Effective Date" means the date of effectiveness of any Change of Control of the Purchaser for which definitive documentation was entered into by the parties to such Change of Control transaction during the Make-Whole Period.

"Claim" means any "claim" as defined in section 101(5) of the Bankruptcy Code, including any damages (whether direct, indirect, incidental or consequential), losses, liabilities, costs, penalties, demands, claims (whether under contract, tort, statute, in equity or otherwise), payments, causes of action, fines, fees, expenses, Taxes, charges, dues, assessments, deficiencies, obligations, encumbrances, judgments, defaults and settlements of any nature whatsoever, whether known or unknown, liquidated or unliquidated, suspected or unsuspected, fixed or contingent.

"Closing" has the meaning set forth in Section 1.3.

"Closing Date" has the meaning set forth in Section 1.3.

"Closing Payment Amount" has the meaning set forth in Section 1.2.

"Confidentiality Agreement" means Confidentiality Agreement, dated January 18, 2023, by and between FTX Trading Ltd., West Realm Shires Inc., Alameda Research LLC, Clifton Bay Investments LLC, Paper Bird Inc. and Dave Inc.

"Confidential Information" means any information related to the Transactions, Seller, Purchaser and any of their respective stakeholders or any of their contractual or commercial counterparties that is furnished by or on behalf of Seller or Purchaser or their respective representatives to the other Party or its representatives and that is non-public, confidential and/or proprietary in nature; provided that "Confidential Information" does not include any information that (a) was or becomes available to the receiving Party or any of its representatives on a non-confidential basis before disclosure to such Party by the other Party or its representatives or which such Party otherwise had the right to obtain from the other Party or its representatives without obligations of confidentiality, (b) is or has become generally available to or known by the public other than as a result of its disclosure by the receiving Party or its representatives in breach of this Agreement or any other obligation of confidentiality to the other Party, as applicable, (c) becomes available to the receiving Party or its representatives on a non-confidential basis from a source other than the other Party or its representatives who, to the receiving Party's knowledge, is not bound by a confidentiality agreement with the other Party, (d) was independently developed by the receiving Party or its representatives without use of the Confidential Information, (e) was or is obtained from the disclosing Party or any other Person by the receiving Party or any of its representatives through a discovery process in any judicial or legal process or administrative proceeding or (f) has been approved for release on a non-confidential basis by written authorization by the disclosing Party.

"Debtor Affiliates" means the Debtors and their respective wholly owned subsidiaries.

"Debtors" has the meaning set forth in the Recitals.

"Final Order" means an Order (a) as to which no appeal, leave to appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed (in cases in which there is a date by which such filing is required to occur), or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject Order in all material respects without the possibility for further appeal thereon, (b) in respect of which the time period for instituting or filing an appeal, leave to appeal, motion for rehearing or motion for new trial shall have expired (in cases in which such time period is capable of expiring), and (c) as to which no stay is in effect.

"Governmental Entity" means any federal, state, provincial, municipal, local or foreign government, governmental authority, regulatory or administrative agency, governmental commission, department, board, bureau, agency, instrumentality, court or tribunal and, for purposes of this Agreement shall include the U.S. Securities and Exchange Commission and any state securities authority or other regulatory authority or organization having jurisdiction over the Debtors or the Purchaser.

"Law" or "Laws" means any law, statute, legislation, constitution, ordinance, principle of common law, resolution, treaty, convention, rule, regulation, ruling, directive, pronouncement, Order or other legal requirement enacted, issued, promulgated, enforced or entered by a Governmental Entity of competent jurisdiction.

"Lien" means any lien (statutory or otherwise), charge, pledge, mortgage, lease, easement, hypothecation, usufruct, deed of trust, security interest, option, right of use, first offer or first refusal, servitude, restrictive covenant or condition, encroachment, claim, interest, restriction or any other encumbrance of any kind.

"Make-Whole Period" means a period of one hundred eighty (180) days starting from January 4, 2024.

"Material Adverse Effect" means any change, development, circumstance, fact or effect that, individually or taken together with any other changes, developments, circumstances, facts or effects is, or would reasonably be expected to be, materially adverse to the financial condition, assets, liabilities, business operations or results of operations of the Purchaser and the consummation of the Transactions; provided, however, that none of the following, either alone or in combination, shall be deemed to constitute a Material Adverse Effect that is occurring, has occurred or would reasonably be expected to occur: (a) changes, developments, circumstances or facts in or with respect to the economy, credit, capital, securities, digital asset or financial markets or political, regulatory or business conditions in the geographic markets in which the Purchaser has operations or its products or services are sold, (b) changes, developments, circumstances, facts or effects generally affecting the industries, markets or geographical areas in which the Purchaser operates, (c) any change in the price or relative value of any digital currency or cryptocurrency, or any other blockchain-based tokens or assets, (d) any change in existence or legality of any digital currency or cryptocurrency, or any other blockchain-based token or asset, or any halt or suspension

4864-4224-7833 v.6

in trading of any such digital currency or cryptocurrency on any exchange, (e) changes, events and occurrences in the industries in which the Purchaser operates generally, (f) macroeconomic factors, interest rates, currency exchange rates, general financial market conditions, any change, development or effect resulting from acts of war (whether or not declared), sabotage, terrorism, military actions or the escalation of any of the foregoing, whether perpetrated or encouraged by a state or non-state actor or actors (other than cyberattacks), any weather or natural disaster, or any outbreak of illness or other public health event (or any measures taken in response thereto) or any other *force majeure* event (except to the extent causing any damage or destruction to or rendering unusable any material facility or property of the Purchaser), whether or not caused by any Person (other than the Purchaser or any of its Affiliates or representatives), (g) changes in law, generally accepted accounting principles or official interpretations of the foregoing, (h) compliance with this Agreement, including any effect on Seller resulting from failure to take any action to which Purchaser refused consent under this Agreement, (i) the Transactions or any announcement hereof or the identity of Purchaser, (j) the pendency of the Bankruptcy Proceeding and any action approved by, or motion made before, the Bankruptcy Court, or (k) matters known to or reasonably foreseeable by Purchaser, taking into account the financial condition, business and operations of Seller, the fact that Seller is involved in the Bankruptcy Proceeding and the circumstances giving rise to such Bankruptcy Proceeding; it being understood that the failure of the Purchaser to achieve internal or external financial forecasts or projections, by itself, will not constitute a Material Adverse Effect.

"Note" means the Convertible Note of Dave Inc. issued to FTX Ventures Ltd. on March, 21, 2022.

"Note Maturity Date" means March 21, 2026.

"Note Purchase Agreement" means the Convertible Note Purchase Agreement, dated as of March 21, 2022, by and between Dave Inc. and FTX Ventures Ltd.

"Order" means any order, writ, judgment, injunction, decree, rule, ruling, decision, directive, determination, quasi-judicial decision, or award made, issued or entered by or with any arbitor, mediator, or Governmental Entity, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Bankruptcy Proceeding.

"Party" or "Parties" has the meaning set forth in the Preamble.

"Permitted Encumbrance" means a restriction on transfer arising solely under applicable federal and state securities Laws.

"Person" means any natural person and any corporation, company, partnership (general or limited), unincorporated association (whether or not having separate legal personality), trust or other entity.

"Purchaser" has the meaning set forth in the Preamble.

"Purchaser Parties" means, collectively, (i) Purchaser, (ii) each of the current or former Affiliates of Purchaser, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors,

predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

"Sale Hearing" has the meaning set forth in Section 4.1(a).

"Sale Order" means an order entered by the Bankruptcy Court or other court of competent jurisdiction that includes the provisions set forth in **Exhibit B** hereto, subject to (a) immaterial modifications or clarifications or (b) such other changes to which Purchaser consents (such consent not to be unreasonably withheld, conditioned or delayed).

"Sale Process Date" has the meaning set forth in Section 4.2.

"Seller" has the meaning set forth in the Preamble.

"Seller Parties" means, collectively, (i) Seller, (ii) each of the current or former Affiliates of Seller, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

"Taxes" means any tax or similar duty, fee, charge or assessment thereof imposed by a Governmental Entity, in each case in the nature of a tax, including any interest, penalties and additions imposed with respect to such amount.

"Termination Date" has the meaning set forth in Section 6.1(b).

"Transactions" means the transactions contemplated by this Agreement.

"Transfer Documents" means documents and instruments as may be reasonably requested by the Purchaser in order to consummate the transactions contemplated by this Agreement.

**EXHIBIT B**

**FORM OF SALE ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. [●]** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF NOTE ISSUED BY DAVE, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; <u>AND (III)  GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Sale Order</u>"), pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1 and 9006-1, among other things, (a) authorizing and approving the sale (the "<u>Sale Transaction</u>") of the convertible promissory note (the "<u>Note</u>") held by the Debtor FTX Ventures Ltd. ("<u>Seller</u>") issued by Dave, Inc. (the "<u>Purchaser</u>"), free and clear of all liens, claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement, (b) authorizing and approving Seller's entry into, and performance under, the Agreement, and (c) granting related relief; the Court having held a hearing to approve the Sale Transaction pursuant to the terms of the Agreement (the "<u>Sale</u>

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Hearing") to review and consider (i) the Motion with respect to the Sale Transaction and all

relief related thereto, (ii) the Agreement, (iii) the Declaration of Bruce Mendelsohn and (iv) any

objections thereto that were not resolved prior to the start of the Sale Hearing; and upon the

record of the Sale Hearing and all of the proceedings had before this Court; and objections (if

any) to the Motion, with respect to the sale of the Note, having been withdrawn or overruled on

the merits; and after due deliberation and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this matter and

over the property of the Debtors' estates, including the Note to be sold, transferred or conveyed

pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware, dated

February 29, 2012.  This Court may issue a final order on the Motion consistent with Article III

of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for

the relief requested in the Motion and for the approvals and authorization herein are sections

105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014

and Local Rules 2002-1, 6004-1 and 9006-1.

C.      <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning

of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary

under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

2

applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

    D. <u>Sale Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Sale Hearing, (a) the Debtors have provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient opportunity to object to, the Motion with respect to the Sale Transaction and the relief requested therein (including the Debtors' requested findings with respect to successor liability), the Sale Transaction and the proposed entry of this Sale Order in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, (b) such notice was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (c) no other or further notice is necessary or shall be required.

    E. <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Sale Order has been afforded to all interested parties.

    F. <u>No Collusion</u>.  Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Agreement and the Sale Transaction were negotiated, proposed and entered into by Seller and Purchaser without collusion or fraud, in good faith and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.  Neither the Debtors nor Purchaser has engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor Purchaser has violated section 363(n) of the Bankruptcy Code by any

3

action or inaction.  Specifically, Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.  The Sale Transaction may not be avoided, and no damages may be assessed against Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

        G.     <u>Good Faith of Purchaser</u>.  Purchaser is purchasing the Note in good faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  Purchaser is therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Note; (b) Purchaser in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (c) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by Purchaser in connection with the Sale Transaction have been disclosed; (d) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) the negotiation and execution of the Agreement were at arm's length and in good faith, and at all times each of the Purchaser and Seller were represented by competent counsel of their choosing; and (f) the Purchaser has not acted in a collusive manner with any person. Purchaser will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Agreement.

        H.     <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Note, and a reasonable opportunity has been given to any interested party to make a higher or better offer for the Note.

No other person or entity or group of entities has offered to purchase the Note for higher or otherwise better value to the Debtors' estates than Purchaser. The offer to purchase the Note made by Purchaser, under the terms and conditions set forth in the Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for the Note and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Note being conveyed to Purchaser; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by Purchaser absent the protections afforded to Purchaser by this Sale Order.

I.      The Debtors' determination that the Sale Transaction, pursuant to the Agreement, provides the highest or otherwise best offer for the Note, and their related decision to sell the Note, constitute a reasonable exercise of the Debtors' business judgment. The facts and circumstances described in the Motion and the evidence adduced in connection with the Sale Hearing demonstrate the Debtors' business judgment to sell the Note to Purchaser at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Note outside of a chapter 11 plan. Moreover, the sale of the Note outside of a chapter 11 plan pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan. It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

J.      <u>Fair Consideration</u>. The consideration provided by Purchaser pursuant to the Agreement constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the

Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

        K.    <u>No Successor or Other Derivative Liability</u>.  As a result of any action taken in connection with the Sale Transaction, the Agreement, or this Sale Order: (a) Purchaser is not a successor to or mere continuation of or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between Purchaser and the Debtors; and (b) Purchaser shall not be deemed to be holding itself out to the public as a continuation of the Debtors based on the Sale Transaction.  Purchaser is not, and shall not be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates.  Purchaser would not have entered into the Agreement if the sale of the Note were not made free and clear of any successor liability of Purchaser.

        L.    <u>Corporate Power and Authority</u>.  As set forth in section 2.1(a) of the Agreement, Seller (a) has full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) has all corporate authority necessary to consummate the Sale Transaction, and (c) has taken all corporate action and formalities necessary to authorize and approve the Agreement and the consummation of the Sale Transaction.  Seller's sale of the Note has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Agreement, are required for Seller to consummate the Sale Transaction.

        M.    The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any

6

state, territory, possession or the District of Columbia.  Neither the Debtors nor Purchaser are

entering into the Sale Transaction fraudulently for the purpose of statutory and common law

fraudulent conveyance and fraudulent transfer claims.

N.    <u>Title to Assets</u>.  The transfer of the Debtors' rights, titles and interests to

the Note to Purchaser will be, as of the Closing Date (as defined in the Agreement), a legal, valid

and effective transfer of such rights, titles and interests in the Note, which transfer vests or will

vest Purchaser with all rights, titles and interests of the Debtors to the Note free and clear of all

Liens (as defined below and in the Agreement), other than Permitted Encumbrances (as defined

in the Agreement).  The Agreement is a valid and binding contract between Seller and Purchaser

and shall be enforceable according to its terms.

O.    <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f)

of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the

Debtors are authorized to transfer all of their rights, titles and interests in and to the Note free

and clear of any interest in the Note, other than Permitted Encumbrances.  The Debtors may sell

the Note free and clear of all liens (statutory or otherwise), charges, pledges, mortgages, leases,

easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first

offer or first refusal, servitudes, restrictive covenants or conditions, encroachments, claims,

interests, restrictions, or any other encumbrances of any kind (collectively, "<u>Liens</u>") against the

Debtors, their estates or the Note because, in each case, one or more of the standards set forth in

section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each holder with a Lien on the

Note to be transferred pursuant to the Agreement: (a) has, subject to the terms and conditions of

this Sale Order, consented to the Sale Transaction or is deemed to have consented; (b) could be

compelled in a legal or equitable proceeding to accept money satisfaction of such Lien; or

(c) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code. Holders of Liens against the Debtors, their estates or the Note who did not object, or who withdrew their objections, to the Sale Transaction or the Motion, with respect to the sale of the Note (except with respect to Permitted Encumbrances), are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens are adequately protected by having their Liens, if any, in each instance against the Debtors, their estates or the Note, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Note in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

P.      Purchaser would not have entered into the Agreement and would not consummate the Sale Transaction if the sale of the Note to Purchaser were not free and clear of all Liens (other than Permitted Encumbrances), or if Purchaser or any of the Purchaser Parties (as defined in the Agreement) would, or in the future could, be liable for any such Lien. The total consideration to be provided under the Agreement reflects Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Note free and clear of all Liens (other than Permitted Encumbrances). Not transferring the Note free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts maximize the value of the estates, and the transfer of the Note other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

8

Q.    <u>Waiver of Bankruptcy Rule 6004(h)</u>.  Good and sufficient reasons for approval of the Agreement and the Sale Transaction have been articulated.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates.  Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rule 6004(h) with respect to the Sale Transaction.  To maximize the value of the Note, it is essential that the Sale Transaction occur within the time constraints set forth in the Agreement.  Time is of the essence in consummating the Sale Transaction and the Debtors and Purchaser intend to close the Sale Transaction as soon as practicable.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Aggregate Purchase Price under the Agreement, the proposed Sale Transaction should be approved.

R.    The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

S.    <u>Personally Identifiable Information</u>.  The Sale Transaction does not involve the sale of any personally identifiable information.  Thus, the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

T.      <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and the evidence adduced in connection with the Sale Hearing establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their estates.

IT IS HEREBY ORDERED THAT**:**

**A.      <u>General Provisions</u>**

1.      The sale of the Note and the other relief requested in the Motion is granted as set forth herein, and the Agreement and the provisions thereof and the Sale Transaction are approved in their entirety as set forth herein.

2.      All objections, responses, reservations of rights and requests for any continuances concerning the Motion are resolved in accordance with the terms of this Sale Order as set forth in the record of the Sale Hearing.  To the extent any such objections, responses, reservations of rights or requests for any continuances were not otherwise withdrawn, waived, settled, or resolved, such are hereby overruled and denied on the merits.  All interested parties that failed to timely object to the Motion, with respect to the Sale Transaction, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      Notice of the Motion, the Agreement, the sale of the Note free and clear of all Liens, except Permitted Encumbrances, and the Sale Transaction was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1.

10

B.      <u>Approval of the Agreement</u>

4.      The Agreement and all of the terms and conditions thereof, are hereby authorized and approved in all respects.  The failure to specifically include or make reference to any particular provision of the Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Sale Transaction are authorized and approved in their entirety.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Purchaser in accordance with the terms and conditions of the Agreement, (b) close the Sale Transaction as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale Transaction.  Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; <u>provided</u>, <u>however</u>, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in, against or on all or any portion of the Note (whether known or unknown), Purchaser and all successors and assigns of Purchaser, the Note and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these

11

Chapter 11 Cases.  This Sale Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchaser and the respective successors and assigns of each of the foregoing.

**C.    Consummation of the Sale Transaction**

7.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer all of their rights, titles and interests to the Note to Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, titles and interests in the Note and shall vest Purchaser with all of the Debtors' rights, titles and interests in the Note and, upon the Debtors' receipt of the Aggregate Purchase Price, shall be free and clear of all Liens, claims, interests and encumbrances, including but not limited to, successor or successor-in-interest liability or, any tax liens or mechanic's liens asserted against the Note, except the Permitted Encumbrances, with all Liens to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens now have against the Note, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  The provisions of this Sale Order authorizing and approving the transfer of the Note free and clear of all Liens (other than Permitted Encumbrances) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

8.    A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except Permitted Encumbrances.

9.      If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Note shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Note, the Debtors, Purchaser and each of their respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Note.

10.      This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens existing as to the Note prior to the Closing Date, except Permitted Encumbrances, shall have been unconditionally released, discharged and terminated from the Note, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**D.**    **Prohibition of Actions Against Purchaser**

11.    Except as expressly provided for in this Sale Order or the Agreement,

Purchaser shall not have any liability or other obligation or responsibility of the Debtors arising

under or related to the Note prior to the Closing.  Purchaser is not a "successor" to the Debtors or

their estates by reason of any theory of law or equity.  Without limiting the generality of the

foregoing, and except as otherwise specifically provided herein or in the Agreement, Purchaser

shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and

Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but

not limited to, under any theory of antitrust, environmental (subject to paragraph 15 below),

successor or transferee liability, securities law, tax law, labor law, de facto merger, mere

continuation or substantial continuity, whether known or unknown as of the Closing Date, now

existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted,

whether legal or equitable, whether liquidated or unliquidated, including, but not limited to,

liabilities on account of warranties, environmental liabilities (subject to paragraph 15 below), and

any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to

the operation of any of the Note prior to the Closing.  The Sale Transaction does not amount to a

consolidation, merger or de facto merger of Purchaser, on the one hand, and the Debtors, the

Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial

continuity between Purchaser, on the one hand, and the Debtors or their affiliates, on the other

hand, and Purchaser is not a mere continuation of the Debtors or their estates, and Purchaser does

not constitute a successor to the Debtors or their estates.  For purposes of paragraphs 11 to 14 of

this Sale Order, all references to Purchaser shall include the Purchaser Parties.

12.    Except as expressly otherwise set forth in the Agreement and this Sale

Order, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Note (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors or the Note prior to the Closing Date or the transactions contemplated by the Agreement, including the transfer of the Note to Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against Purchaser, its Affiliates, its successors or assigns, their property or the Note, such persons' or entities' Liens with respect to the Note, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Purchaser, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against Purchaser, its Affiliates, its successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due Purchaser, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate the Purchaser, subject to paragraph 14 below.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Note (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere (a) with the ability of the Debtors and/or Seller to sell and transfer the Note to Purchaser in accordance with the terms of the Agreement and this Sale Order, and (b) with the ability of Purchaser to acquire and take possession of the Note in accordance with the terms of the Agreement and this Sale Order.

14.     Purchaser has given substantial consideration under the Agreement for the benefit of the Debtors and their estates.  The consideration given by Purchaser shall constitute valid and valuable consideration for the sale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Note pursuant to this Sale Order, except with respect to the Permitted Encumbrances, and free and clear of any potential claims of successor liability against the Purchaser.  The consideration provided by Purchaser for the Note under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**E.     Other Provisions**

15.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

16.     Further, nothing in this Sale Order or Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

16

17.     Notwithstanding anything to the contrary in the Motion, this Sale Order, or any findings announced at the Sale Hearing, nothing in the Motion, this Sale Order, or announced at the Sale Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

18.     The consideration provided by Purchaser to the Debtors pursuant to the Agreement for the Note constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

19.     The sale of the Note does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

20.     The Sale Transaction is undertaken by Purchaser without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing. Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and Purchaser will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

21.     As a good faith purchaser of the Note, Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any other bidders, potential bidders, or any other parties interested in the Note, and therefore, neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring an action against Purchaser, and the Sale Transactions may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Agreement or Sale Transaction.

22.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale Order and the Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

23.     Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchaser are authorized to close the Sale Transaction immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.

24.     The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

18

being the intent of this Court that the Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

25.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Agreement is modified, the Debtors shall file the modified version with the Court.

26.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

27.     The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

28.     No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Agreement)) shall apply to the Debtors' conveyance of the Note or this Sale Order.

29.     The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

30.     Purchaser is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction, and any issues related to or otherwise connected to the Agreement and the Sale Transaction.

31.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _____
          Wilmington, Delaware

_____
The Honorable John T. Dorsey
United States Bankruptcy Judge

20

## EXHIBIT A

Agreement

**SCHEDULE A**

| Seller | Note | Counterparty | Related Documents |
|---|---|---|---|
| FTX Ventures Ltd. | 3% Convertible Promissory Note of Dave Inc. | Dave Inc. | Convertible Note of Dave Inc. issued to FTX Ventures Ltd. on March 21, 2022.<br><br>Convertible Note Purchase Agreement, dated as of March 21, 2022, by and between Dave Inc. and FTX Ventures Ltd. |

4864-4224-7833 v.6