**<u>EXHIBIT B</u>**

**Agreement**

EXECUTION VERSION
CONFIDENTIAL

**PURCHASE AND SALE AGREEMENT**

**by and between**

**CLIFTON BAY INVESTMENTS LLC**

and

**CERTAIN FUNDS MANAGED BY**

**THE VENTURE COLLECTIVE LLC**

**Dated as of January 4, 2023**

4883-1747-3173 v.5

This PURCHASE AND SALE AGREEMENT (including the Exhibits and Schedules hereto, each as amended or restated from time to time, this "Agreement"), dated as of January 4, 2023, is made by and between Clifton Bay Investments LLC (formerly known as Alameda Research Ventures LLC), a Delaware limited liability company ("Seller"), on one hand, and each of TVC Momentum Fund I, LP, a Delaware limited partnership, TVC Momentum Fund II, LP, a Delaware limited partnership and TVC XLII, a Series of The Venture Collective Holdings LLC, a Delaware series limited liability company, severally and not jointly, on the other hand (each, a "Purchaser" and, collectively, the "Purchasers"). The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

## Recitals

WHEREAS, on November 11, 2022 and November 14, 2022, Seller and certain of its Affiliates (collectively, the "Debtors") commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*, as amended, the "Bankruptcy Code") by filing petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered for procedural purposes as *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)) (the "Bankruptcy Proceeding");

WHEREAS, Seller holds the promissory note set forth on Schedule A (the "Note") in or with the entity set forth on Schedule A (the "Subject Company") and desires to (a) sell, assign and transfer to Purchaser the Note pursuant to section 363 of the Bankruptcy Code and (b) be discharged from all obligations (monetary or otherwise), covenants and agreements under the Note, in each case in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, all upon the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the board of directors or other applicable governing body of Seller has determined that it is advisable and in the best interests of Seller's estate and the beneficiaries of such estate to consummate the Transactions pursuant to the Sale Order and has approved this Agreement;

WHEREAS, Seller intends to seek the entry of the Sale Order by the Bankruptcy Court approving this Agreement and authorizing Seller to consummate the Transactions upon the terms and subject to the conditions set forth herein and in the Sale Order;

WHEREAS, Purchasers desires to purchase the Note pursuant to section 363 of the Bankruptcy Code; and

WHEREAS, the Parties acknowledge and agree that the Transactions are being made at arm's length and in good faith and without intent to hinder, delay or defraud creditors of Seller or its Affiliates and Seller acknowledges that the consideration to be paid is fair value and reasonably equivalent value for the acquisitions by Purchasers.

NOW, THEREFORE, in consideration of the premises and of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

# ARTICLE 1

## PURCHASE AND SALE OF NOTE

1.1     Purchase and Sale of Note. Pursuant to sections 105 and 363 of the Bankruptcy Code and upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller agrees to sell, assign, convey, transfer and deliver to Purchasers, and Purchasers agree to purchase and accept from Seller, all of Seller's right, title and interest in, to and under the Note for an amount in cash equal to the Aggregate Purchase Price, which purchase shall be free and clear of any Liens other than Permitted Encumbrances.

1.2     Purchase Price.

(a)     The aggregate purchase price (the "Aggregate Purchase Price") for the Note shall be the sum of (i) $5,000,000 in cash, which shall be payable without any withholding or deduction (the "Closing Payment Amount") *plus* (ii) in accordance with the terms and subject to the conditions set forth in Section 1.2(b), the Deferred Payment Amount.

(b)     Within three (3) business days following the Deferred Payment Date, Purchasers shall pay to Seller an amount equal to the Deferred Payment Amount by wire transfer of immediately available funds to the account(s) designated by Seller.

1.3     Closing. The closing of the Transactions (the "Closing") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the day that is the second (2nd) Business Day following the date on which all of the conditions to closing specified in Article 5 are satisfied or waived, or at such other time as Purchasers and Seller shall agree in writing (the "Closing Date").

1.4     Deliveries at Closing.  At the Closing, upon satisfaction or waiver of the conditions set forth in Article 5 hereof:

(a)     Purchasers shall pay the Closing Payment Amount to Seller in accordance with Section 1.2 by wire transfer of immediately available funds pursuant to the instructions delivered by Seller to Purchasers prior to the Closing Date;

(b)     Purchasers shall deliver to Seller a counterpart to the Transfer Documents, duly executed by Purchaser or its applicable Affiliates party thereto;

(c)     Seller shall deliver to Purchasers a counterpart to the Transfer Documents, duly executed by Seller or its applicable Affiliates party thereto; and

(d)     each of Seller and Purchasers shall deliver to the other Party each of the other documents and instruments required to be delivered pursuant to the terms of this Agreement or any Transfer Documents.

1.5     Deferred Payment.

2

(a)      At least three (3) business days prior to any anticipated Deferred Payment Date, Purchasers shall deliver to Seller a written notice setting forth the anticipated Deferred Payment Date, along with reasonable supporting detail describing the events associated with the Deferred Payment Date and any documentation used in the preparation of such notice.

(b)      In the event that Purchasers do not pay the Deferred Payment Amount pursuant to the terms herein, within ten (10) business days following the Deferred Payment Date Purchasers shall transfer the Note in part to Seller in a principal amount equal to 37.5% of the original principal amount of the Note, plus 37.5% of any interest that accrued pursuant to the terms set forth in the Note. Purchasers shall, and shall cause its Affiliates, from time to time to execute and deliver, or cause to be executed and delivered, such documents, instruments, notices, assumptions, releases, acquittances and other conveyances, and shall take, or cause to be taken, such further actions as may be required to carry out the provisions of this <u>Section 1.5</u>.

## ARTICLE 2

## REPRESENTATIONS AND WARRANTIES

2.1      <u>Representations and Warranties of Seller</u>. Seller hereby represents and warrants to Purchasers that:

(a)      <u>Authorization</u>. Seller is an entity duly organized and validly existing in good standing under the laws of Delaware. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, Seller has the requisite power and authority to enter into, execute and deliver this Agreement and the Transfer Documents to which Seller is a party and to perform all of the obligations to be performed by it hereunder and thereunder. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, this Agreement and the Transfer Documents to which it is a party have been or, when executed, will be duly authorized, executed and delivered by it, and constitute or, when executed, will constitute a valid and binding obligation of Seller, enforceable against it in accordance with its terms.

(b)      <u>Title to Note</u>. Upon the Seller's delivery of the Note to the Purchaser pursuant to the Settlement, the Purchaser will acquire good, marketable and unencumbered title to such Note, free and clear of all Liens (other than Permitted Encumbrances).

(c)      <u>No Conflicts</u>. Subject to entry of the Sale Order and any other Order entered by the Bankruptcy Court applicable to the Transactions, the execution and delivery of this Agreement and the Transfer Documents to which Seller is a party and the performance or consummation of the Transactions by Seller do not conflict with, result in a breach or violation of, or result in the creation of a Lien on the Note owned by Seller under the terms or provisions of (i) its organizational documents, (ii) any contract that is material to the value of the Note, or (iii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over it or its property, except, in each case, for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

3

(d)      Certain Conduct.  Seller has not (i) sold, assigned, transferred, delivered or otherwise disposed of all or any portion of the Note held by Seller, (ii) converted, exchanged or redeemed all or any portion of the Note, or (iii) agreed to do any of the foregoing.

(e)      Broker's Fee; No Public Offering. No Person acting on behalf of Seller or under the authority of Seller shall be entitled to any broker's, finder's, or similar fee or commission in connection with the Transactions, other than the financial advisors retained by Seller in the Bankruptcy Proceeding.

(f)      Independent Appraisal.

(i)      Seller acknowledges that it and Purchasers may be in possession of material, nonpublic information relating to the Subject Company. Seller further acknowledges and agrees that Purchasers have no obligation to disclose to Seller any such material, nonpublic information except as may be required for a representation and warranty of Purchasers hereunder to be accurate and correct. Seller further acknowledges that (A) it is not relying on there having been disclosed any such material or potentially material information which is not disclosed, and (B) any such information may be materially adverse to Seller's interests. Seller further acknowledges that it is prepared to sell the Note to Purchasers on the foregoing basis and hereby waives any right to rescind or invalidate the sale of the Note to Purchasers or to seek any damages or other remuneration from Purchasers based on the possession of any such material, nonpublic information by any Purchaser.

(ii)      Seller acknowledges that it is experienced and sophisticated with respect to transactions of the type contemplated by this Agreement, and that in consultation with experienced counsel and advisors of its choice, it has made its own due diligence analysis, credit analysis and decision to sell the Note, and that it is responsible for making its own evaluation of any information about the Note, the Subject Company or Purchasers that it may receive either directly from the Subject Company or any Purchaser, and that none of the Subject Company, Purchasers or any Affiliate, partner, employee, officer or director thereof (A) makes any representation or warranty or gives any undertaking of any kind, express or implied, as to, or accepts or assumes any responsibility or liability of any kind for, the accuracy, reliability, adequacy, completeness or reasonableness of any such information or any assumptions upon which such information is based except as specifically set forth in this Agreement or (B) shall be under any obligation to provide access to or advise Seller or any other Person of the existence of any additional information or to review, update or correct any inaccuracy in any information about the Note, the Subject Company or any Purchaser (or any assumptions upon which such information is based) supplied by it or by any Person or be otherwise liable to the Subject Company or any Purchaser or any other Person with respect to any such information or assumptions, except as specifically contemplated in this Agreement.

(g)      No Other Representations or Warranties.

4

(i)    Except for the representations and warranties contained in this Section 2.1, neither Seller nor any other Person (other than Purchasers) has made any other express or implied representation or warranty with respect to, or otherwise in connection with, the Note, Seller, Purchasers or any of their respective businesses, operations, assets, liabilities, conditions (financial or otherwise) or prospects in connection with this Agreement or the Transactions, and Seller disclaims any other representations or warranties, whether made by Seller, any Affiliate of Seller or any of Seller's or its Affiliates' respective representatives.

(ii)    Seller acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.2, (A) neither any Purchaser nor any other Person has made any express or implied representation or warranty with respect to, or otherwise in connection with, the Transactions or with respect to the accuracy or completeness of any other information provided, or made available, to Seller in connection with the Transactions and Seller has not relied on any representation or warranty other than those expressly set forth in Section 2.2, (B) Seller has not executed or authorized the execution of this Agreement or entered into the Transactions in reliance upon, and hereby specifically disclaims reliance upon, any promise, statement, projection, forecast, representation or warranty whatsoever made or omitted to be made to Seller or any of its Affiliates, or any of its or their respective representatives, including any such promise, statement, projection, forecast, representation or warranty as to the condition, value, quality or prospects of the Subject Company, or its assets or liabilities; and (C) the Note is being transferred "as is", "where is" and "with all faults". Seller acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.2, each Purchaser, on behalf of itself and its subsidiaries and Affiliates (x) expressly disclaims and negates any representation or warranty, expressed or implied, at common law, by statute or otherwise, with respect to the business, operations, assets, liabilities, conditions (financial or otherwise) and prospects of the Subject Company or with respect to the Note (including any express or implied warranty of merchantability or fitness for a particular purpose) and (y) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement or information made, communicated or furnished (orally or in writing) to Seller or its Affiliates or its or their respective representatives (including any opinion, information, projection or advice that may have been or may be provided to Seller by any representative of a Purchaser or any of its Affiliates). Seller acknowledges and agrees that Seller has not made any representations or warranties to Seller regarding the probable success or profitability of the Subject Company.

2.2    Representations and Warranties of Purchaser. Each Purchaser, severally and not jointly, hereby represents and warrants to Seller that:

(a)    Authorization. Purchaser is an entity duly organized and validly existing in good standing under the laws of its jurisdiction of organization (to the extent such concept applies to such Purchaser). Each Purchaser has the requisite power and authority to enter into, execute and deliver this Agreement and the Transfer Documents and to perform all of the obligations to be performed by it hereunder and thereunder. This Agreement and the Transfer

5

Documents to which each Purchaser is a party have been or, when executed, will be duly authorized, executed and delivered by such Purchaser, and constitute or when executed, will constitute a valid and binding obligation of such Purchaser, enforceable against such Purchaser in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and moratorium laws and other Laws of general application affecting enforcement of creditors' rights generally.

(b)     No Conflicts. The execution and delivery of this Agreement and the Transfer Documents to which each Purchaser is a party and the performance or consummation of the Transactions by Purchaser do not (i) conflict with or result in a breach or violation of the terms or provisions of its organizational documents, (ii) result in the breach or violation of any of the terms or provisions of, or constitute a default under, or accelerate the performance required by the terms of any indenture, mortgage, deed of trust, loan agreement or any other agreement or instrument to which such Purchaser is a party or by which such Purchaser is bound or (iii) conflict with or result in a breach or violation of the terms or provisions of any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over such Purchaser or its property, except, in each case, to the extent that such conflicts, violations, defaults or accelerations would not, individually or in the aggregate, materially hinder, delay or impair the performance of its obligations under this Agreement and the Transfer Documents. The execution and delivery by each Purchaser of this Agreement and the Transfer Documents to which it is a party and the performance by such Purchaser of its obligations hereunder and thereunder will not require any registration, filing, consent or approval under any Law, rule, regulation, judgment, order, writ, decree, permit or license, or any consent or approval of any other party to such Purchaser's constituent documents, or any other contract, agreement, instrument, commitment or restriction binding upon such Purchaser, except for the Sale Order.

(c)     Independent Appraisal.

(i)     Each Purchaser acknowledges that it and Seller may be in possession of material, nonpublic information relating to the Subject Company. Each Purchaser further acknowledges and agrees that Seller has no obligation to disclose to such Purchaser any such material, nonpublic information except as may be required for a representation and warranty of Seller hereunder to be accurate and correct. Each Purchaser further acknowledges that (A) it is not relying on there having been disclosed any such material or potentially material information which is not disclosed, and (B) any such information may be materially adverse to such Purchaser's interests. Each Purchaser further acknowledges that it is prepared to purchase the Note from Seller on the foregoing basis and hereby waives any right to rescind or invalidate the purchase of the Note from Seller or to seek any damages or other remuneration from Seller based on the possession of any such material, nonpublic information by Seller.

(ii)     Each Purchaser acknowledges that it is experienced and sophisticated with respect to transactions of the type contemplated by this Agreement, and that in consultation with experienced counsel and advisors of its choice, it has made its own due diligence analysis, credit analysis and decision to buy the Note, and that it is responsible for making its own evaluation of any information about the Note, the Subject Company or Seller that it may receive either directly from the Subject Company or

6

Seller, and that none of the Subject Company, Seller or any Affiliate, partner, employee, officer or director thereof (A) makes any representation or warranty or gives any undertaking of any kind, express or implied, as to, or accepts or assumes any responsibility or liability of any kind for, the accuracy, reliability, adequacy, completeness or reasonableness of any such information or any assumptions upon which such information is based except as specifically set forth in this Agreement or (B) shall be under any obligation to provide access to or advise any Purchaser or any other Person of the existence of any additional information or to review, update or correct any inaccuracy in any information about the Note, the Subject Company or Seller (or any assumptions upon which such information is based) supplied by it or by any Person or be otherwise liable to the Subject Company or Seller or any other Person with respect to any such information or assumptions, except as specifically contemplated in this Agreement.

(d)     Accredited Investor; Qualified Purchaser. Each Purchaser is an "accredited investor" within the meaning of Rule 501 of Regulation D of the Securities Act of 1933, as amended and a "qualified purchaser" within the meaning of Section 2(a)(51)(A) of the Investment Company Act of 1940, as amended, and the rules promulgated thereunder.

(e)     No Resale. Each Purchaser's purchase of the Note is for its own account for investment and not with a view to the distribution or resale thereof, except in compliance with the Securities Act of 1933, as amended, and applicable state securities laws.

(f)     Broker's Fee. No Person acting on behalf of Purchaser or under the authority of Purchaser shall be entitled to any broker's, finder's, or similar fee or commission in connection with the Transactions.

(g)     No Other Representations or Warranties.

(i)     Except for the representations and warranties contained in this Section 2.2, no Purchaser has made any other express or implied representation or warranty with respect to, or otherwise in connection with, the Note, any Purchaser, Seller or any of their respective businesses, operations, assets, liabilities, conditions (financial or otherwise) or prospects in connection with this Agreement or the Transactions, and each Purchaser disclaims any other representations or warranties, whether made by such Purchaser, any Affiliate of such Purchaser or any of such Purchaser's or its Affiliates' respective representatives.

(ii)     Each Purchaser acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.1, (A) neither Seller nor any other Person has made any express or implied representation or warranty with respect to, or otherwise in connection with, the Transactions or with respect to the accuracy or completeness of any other information provided, or made available, to such Purchaser in connection with the Transactions and such Purchaser has not relied on any representation or warranty other than those expressly set forth in Section 2.1, (B) no Purchaser has executed or authorized the execution of this Agreement or entered into the Transactions in reliance upon, and hereby specifically disclaims reliance upon, any promise, statement, projection, forecast, representation or warranty whatsoever made or omitted to be made

7

to such Purchaser or any of its Affiliates, or any of its or their respective representatives, including any such promise, statement, projection, forecast, representation or warranty as to the condition, value, quality or prospects of the Subject Company, or its assets or liabilities; and (C) the Note is being transferred "as is", "where is" and "with all faults". Each Purchaser acknowledges and agrees that, except for the representations and warranties expressly set forth in Section 2.1, Seller, on behalf of itself and its subsidiaries and Affiliates (x) expressly disclaims and negates any representation or warranty, expressed or implied, at common law, by statute or otherwise, with respect to the business, operations, assets, liabilities, conditions (financial or otherwise) and prospects of the Subject Company or with respect to the Note (including any express or implied warranty of merchantability or fitness for a particular purpose) and (y) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement or information made, communicated or furnished (orally or in writing) to such Purchaser or its Affiliates or its or their respective representatives (including any opinion, information, projection or advice that may have been or may be provided to Purchaser by any representative of Seller or any of its Affiliates). Each Purchaser acknowledges and agrees that Seller has not made any representations or warranties to such Purchaser regarding the probable success or profitability of the Subject Company.

(iii)    Each Purchaser acknowledges and agrees that the enforceability of this Agreement against Seller is subject to entry of the Sale Order and any other Order entered into by the Bankruptcy Court applicable to the Transactions.

# ARTICLE 3

# COVENANTS

3.1    Tax Matters. Seller and Purchasers shall cooperate with each other in good faith in connection with Taxes with respect to the Subject Company or the Note, as applicable, including  with respect to the Tax treatment of the Transactions and using commercially reasonable efforts to obtain any certificate or other document from any Governmental Entity as may be necessary to mitigate, reduce or eliminate any Tax (including withholding or deduction in respect of Taxes) that could be imposed with respect to the Transactions. All Transfer Taxes, if any, incurred in connection with the consummation of the Transactions shall be borne by Purchaser. If Purchaser reasonably believes that it is required to deduct and withhold from the payment of any amounts payable to Seller hereunder under applicable Law, Purchaser shall notify Seller at least ten (10) Business Days before any such payment subject to withholding.

3.2    Confidentiality. From and after the Closing, each Party shall treat all Confidential Information as confidential and not disclose such Confidential Information except as permitted by this Agreement.  Notwithstanding anything to the contrary in any other agreement among any the Parties, each Party is expressly permitted to (a) disclose or use Confidential Information (i) to or with any court or similar body in connection with any judicial or legal process or administrative proceeding with respect to the Note or (ii) as reasonably necessary in connection with the Bankruptcy Proceeding, including to the extent reasonably necessary in connection with the sale of the Note by Seller as part of the Bankruptcy Proceeding and (b) disclose this

8

Agreement, any Transfer Documents and, in each case, any exhibits and schedules thereto to the Bankruptcy Court as necessary or advisable in connection with the Transactions.

## ARTICLE 4

## BANKRUPTCY MATTERS

4.1     Bankruptcy Court Filings.

(a)     As promptly as possible, Seller or its applicable Debtor Affiliates shall (i) file with the Bankruptcy Court one or more motions (the "Sale Motion"), along with the proposed Sale Order, (A) seeking approval of the sale of the Note to Purchaser and (B) fixing the time, date and location of the hearing to approve the consummation of the Transactions, which such hearing shall occur on or before January 31, 2024, unless Purchasers consent to a later date (the "Sale Hearing"); (ii) notify, as required by the Bankruptcy Code and the Bankruptcy Rules, all parties entitled to notice of such motions and orders, as modified by orders in respect of notice which may be issued at any time and from time to time by the Bankruptcy Court, and such additional parties as such Purchaser may reasonably request; and (iii) use commercially reasonable efforts to obtain Bankruptcy Court approval of the Sale Order.

(b)     Each Party shall (i) appear in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the Transactions and (ii) keep the other Party reasonably apprised of the status of material matters related to this Agreement, including, upon reasonable request promptly furnishing the other Party with copies of notices or other communications received from the Bankruptcy Court or any other Person with respect to the Transactions.

(c)     The Parties shall consult with each other regarding pleadings that any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of the Sale Order.  Seller shall promptly provide Purchasers and their outside legal counsel with copies of all notices, filings and orders of the Bankruptcy Court that Seller has in its possession (or receives) pertaining to the Sale Order, or related to any of the Transactions, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to Purchasers and their outside legal counsel.  Seller shall not seek any modification to the Sale Order with respect to the Transactions by the Bankruptcy Court or any other Governmental Entity of competent jurisdiction to which a decision relating to the Bankruptcy Proceeding has been appealed, in each case, without the prior written consent of each Purchaser (not to be unreasonably withheld, conditioned or delayed).

(d)     If any order of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for rehearing, re-argument or stay shall be filed with respect thereto), Seller agrees to, and agrees to cause its Debtor Affiliates to, use their commercially reasonable efforts, to defend against such appeal, petition or motion, and Purchasers agree to cooperate reasonably in such efforts. Each Party hereby agrees to use its commercially reasonable efforts to obtain an expedited resolution of such appeal.

9

4.2     <u>Alternative Transaction</u>.

(a)     Consummation of the Transactions are subject to approval by the Bankruptcy Court and the consideration by the Debtor Affiliates and the Bankruptcy Court of higher or better competing bids.  From and after the date hereof until three (3) days before the Sale Hearing, as such date may be modified or extended (the "<u>Sale Process Date</u>"), Seller and its Debtor Affiliates shall be permitted to cause their respective representatives and Debtor Affiliates to (i) initiate contact with, or solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates, agents and representatives) with respect to an Alternative Transaction, (ii) respond to any inquiries or offers to purchase all or any part of the Note, and (iii) perform any and all other acts related thereto which are required or permitted under the Bankruptcy Code, any Order entered by the Bankruptcy Court applicable to the Transactions or other applicable Law, including supplying information relating to the Note to prospective purchasers.

4.3     <u>Sale Order</u>.

(a)     Subject to <u>Section 4.2</u> and <u>Section 7.7</u>, each of Seller and each Purchaser shall take all actions as may be reasonably necessary to cause the Sale Order to be issued, entered and become a Final Order, including furnishing affidavits, declarations or other documents or information for filing with the Bankruptcy Court.  Each Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that such Purchaser is a "good faith" buyer under section 363(m) of the Bankruptcy Code.

(b)     The Sale Order shall, among other things, (i) approve, pursuant to sections 105 and 363 of the Bankruptcy Code, (A) the execution, delivery and performance by the Seller of this Agreement, (B) the sale of the Note to Purchaser on the terms set forth herein and free and clear of all Liens (other than Permitted Encumbrances), and (C) the performance by Seller of its obligations under this Agreement, (ii) find that (A) Purchaser is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code and (B) Purchaser is not a successor to Seller and (iii) grant Purchaser the protections of section 363(m) of the Bankruptcy Code.

## ARTICLE 5

## CONDITIONS TO CLOSING

5.1     <u>Mutual Conditions</u>. The respective obligations of Seller and Purchasers to effect the Closing are subject to the Bankruptcy Court having entered the Sale Order on or prior to the Closing Date.

5.2     <u>Conditions to the Obligation of Purchaser</u>. The obligation of each Purchaser to effect the Closing is subject to the satisfaction or waiver by such Purchaser of the following additional conditions on or prior to the Closing Date:

10

(a)     The representations and warranties of Seller contained in this Agreement shall be true and correct (without giving effect to any materiality qualifiers, including "Material Adverse Effect", contained therein) as of the Closing Date as though made on and as of such date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date), except where the failure of any such representations and warranties to be so true and correct would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(b)     the Sale Hearing shall have occurred on or before January 31, 2024; and

(c)     Seller shall have performed in all material respects all obligations required to be performed by it under this Agreement on or prior to the Closing Date.

5.3     <u>Conditions to the Obligation of Seller</u>. The obligation of Seller to effect the Closing is subject to the satisfaction or waiver by Seller of the following additional conditions on or prior to the Closing Date:

(a)     The representations and warranties of each Purchaser contained in this Agreement shall be true and correct (without giving effect to any materiality qualifiers, including "Material Adverse Effect", contained therein) as of the Closing Date as though made on and as of such date (except to the extent that any such representation and warranty expressly speaks as of an earlier date, in which case such representation and warranty shall be true and correct as of such earlier date); and

(b)     Each Purchaser shall have performed in all material respects all obligations required to be performed by it under this Agreement on or prior to the Closing Date.

## ARTICLE 6

## TERMINATION

6.1     <u>Grounds for Termination</u>. This Agreement may be terminated at any time:

(a)     by mutual agreement of Seller and Purchasers;

(b)     by either Seller or Purchasers if the Closing has not occurred by April 30, 2024 (the "<u>Termination Date</u>"); <u>provided</u>, that the right to terminate this Agreement pursuant to this <u>Section 6.1(b)</u> shall not be available to a Party that has breached in any material respect its obligations under this Agreement in any manner that shall have proximately contributed to the failure of the Closing to have occurred on or prior to the Termination Date;

(c)     by either Seller or Purchasers, if there is in effect a Final Order of a Governmental Entity of competent jurisdiction, enjoining or otherwise prohibiting the consummation of the Transactions (it being agreed that the Parties will promptly appeal any adverse determination which is not non-appealable and pursue such appeal in accordance with their respective obligations under this Agreement unless and until this Agreement is terminated pursuant to this <u>Section 6.1</u>);

11

(d)      by Seller if any Purchaser shall have breached or failed to perform in any material respect any of its covenants or other agreements contained in this Agreement, or any of its representations and warranties shall have become untrue after the date hereof, which breach or failure to perform or be true (i) would give rise to the failure of a condition set forth in Section 5.1 or Section 5.3 and (ii) is not curable or, if curable, is not cured within the earlier of (A) five (5) days after written notice thereof is given by Seller to Purchaser and (B) the Termination Date; provided, that Seller shall not have the right to terminate this Agreement pursuant to this Section 6.1(d) if Seller is then in material breach of any of its representations, warranties, covenants or other agreements hereunder and such material breach would give rise to the failure of a condition set forth in Section 5.1 or Section 5.2;

(e)      by each Purchaser if Seller shall have breached or failed to perform in any material respect any of its covenants or other agreements contained in this Agreement, or any of its representations and warranties shall have become untrue after the date hereof, which breach or failure to perform or be true (i) would give rise to the failure of a condition set forth in Section 5.1 or Section 5.2, and (ii) is not curable or, if curable, is not cured within the earlier of (A) five (5) days after written notice thereof is given by Purchaser to Seller and (B) the Termination Date; provided, that Purchaser shall not have the right to terminate this Agreement pursuant to this Section 6.1(e) if Purchaser is then in material breach of any of its representations, warranties, covenants or other agreements hereunder and such material breach would give rise to the failure of a condition set forth in Section 5.1 or Section 5.3;

(f)      automatically, if Seller enters into a definitive agreement with a third party with respect to an Alternative Transaction; or

(g)      by Seller, if Seller or the board of directors (or similar governing body) of Seller determines that proceeding with the Transactions or failing to terminate this Agreement could be inconsistent with its or such Person's or body's fiduciary duties.

6.2      Effect of Termination. If this Agreement is terminated as permitted by Section 6.1:

(a)      no Party shall have any liability or further obligation to any other Party pursuant to this Agreement; provided, however, that (i) the agreements of Seller and Purchaser set forth in Section 3.2 (*Confidentiality*) and Section 7.5 (*Expenses*) shall survive such termination and (ii) no such termination shall relieve a Party of any liability or damages to the other Party resulting from any knowing and intentional material breach of this Agreement; and

(b)      Each Purchaser shall return to Seller all documents, work papers and other material of Seller relating to the Transactions, whether obtained before or after the execution hereof or certify that such documents have been destroyed.

12

# ARTICLE 7

# OTHER MATTERS

7.1     <u>Waiver, Amendment</u>. Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited by the provision had it not been waived.

7.2     <u>Remedies</u>. No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by a Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

7.3     <u>No Survival of Representations and Warranties or Covenants</u>. No representations or warranties, covenants or agreements in this Agreement or in any instrument delivered pursuant to this Agreement shall survive beyond the Closing Date, except for covenants and agreements that by their terms are to be satisfied after the Closing Date, which covenants and agreements shall survive until satisfied in accordance with their terms. Following the Closing, in no event shall Seller or Purchasers have any recourse against the other or the Purchaser Parties or Seller Parties, respectively with respect to any representation, warranty, covenant or agreement made by Seller or Purchasers, as applicable, in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, except with respect to claims for breaches of covenants and agreements that by their terms are to be satisfied after the Closing Date.

7.4     <u>Release</u>. From and after the Closing, upon the terms and subject to the conditions set forth herein:

(a) Each of Seller to Purchasers and each Purchaser to Seller expressly waives, discharges, settles, compromises and releases any and all claims, causes of actions, liens, rights and remedies it has, had or may have against the Purchaser Parties and the Seller Parties, as applicable, as of the Closing in respect of the acquisition or ownership of the Note; <u>provided</u>, <u>however</u>, that nothing in this Agreement shall be construed as a release, waiver, compromise, or settlement of any other claims Purchaser may have against any Debtor Affiliates or their estates arising prior to the Bankruptcy Proceeding.

(b) Each of Seller and each Purchaser expressly waives and relinquishes any and all provisions, rights, and benefits conferred by California Civil Code § 1542 or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable or equivalent to California Civil Code § 1542.

7.5     <u>Expenses</u>. Except as otherwise provided in this Agreement or the Transfer Documents, each of Purchasers and Seller shall bear its own costs and expenses (including brokerage commissions, finders' fees or similar compensation, and legal fees and expenses) incurred in connection with this Agreement, the Transfer Documents and the Transactions;

13

provided, however, that Seller shall not pay any third-party costs and expenses of the Subject Company, including legal and accounting fees, incurred in connection with the Transactions, to the extent required to be paid, reimbursed or advanced pursuant to the Transfer Documents.

7.6     Notices. All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to Seller:

> Clifton Bay Investments LLC
> 2600 South Shore Blvd, Suite 300
> League City, TX 77573
> Attention: Kathryn Schultea
> Email: kathyschultea@ftx.com

> *With a copy (which shall not constitute notice) to*:

> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, NY 10004
> Attention:  Audra D. Cohen
>                  Rita-Anne O'Neill
> Telephone:(212) 558-3275
>                  (310) 712-6698
> Email:      cohena@sullcrom.com
>                  oneillr@sullcrom.com

If to Purchasers:

> The Venture Collective LLC
> 1680 Michigan Avenue, Suite 700 #1010
> Miami Beach, FL 33139
> Attention: Nicholas Shekerdemian
> Email: nick@theventurecollective.com

7.7     Specific Performance.

(a)     Each Party agrees that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, and that damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement.

14

Accordingly, each Party will be entitled to injunctive relief to prevent any such breach, and to specifically enforce the terms and provisions of this Agreement without the necessity of posting bond or other security against it or proving damages, including specific performance of such covenants, promises or agreements (including to cause Purchasers to consummate the Transactions and to make the payments contemplated by this Agreement) or an Order enjoining a Party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement.  The rights set forth in this Section 7.7 will be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

(b)  Each Party agrees not to raise any objections to the availability of the equitable remedy of specific performance to prevent or restrain breaches of this Agreement by Purchaser or Seller, as applicable, and to specifically enforce the terms and provisions of this Agreement to prevent breaches or threatened breaches of, or to enforce compliance with, the respective covenants and obligations of Purchaser or Seller, as applicable, under this Agreement all in accordance with the terms of this Section 7.7.

7.8  Fiduciary Obligations. Nothing in this Agreement, or any document related to the Transactions, will require Seller or any of its directors, officers or stockholders, in each case, in their capacities as such, to take any action, or to refrain from taking any action, to the extent inconsistent with their fiduciary obligations.  For the avoidance of doubt, until the Closing has occurred, Seller retains the right to pursue any transaction or restructuring strategy that, in Seller's business judgment, will maximize the value of its estate.

7.9  Entire Understanding; No Third-Party Beneficiaries. This Agreement and the Transfer Documents together set forth the entire understanding of the Parties relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior agreements, written or oral, among the Parties with respect to the subject matter of this Agreement. In the event of any conflict between this Agreement and the Transfer Documents, the provisions of this Agreement shall prevail. No representation, warranty, inducement, promise, understanding or condition not set forth in this Agreement has been made or relied on by any Party in entering into this Agreement. Nothing in this Agreement, expressed or implied, is intended to confer on any Person, other than the Parties or their respective successors, any rights, remedies, obligations or liabilities.

7.10  Assignment. Neither this Agreement nor any of the rights, interests or obligations under it may be assigned by a Party (whether by operation of law or otherwise) without the prior written consent of the other Party, and any purported assignment in violation of this Section 7.10 will be void, except for the following assignments which shall not require any consent and will not be void: (a) assignment to an Affiliate of either Party (provided that such Party remains liable jointly and severally with its assignee Affiliate for the assigned obligations to the other Party) and (b) assignment by Seller to a succeeding entity following its emergence from the Bankruptcy Proceeding. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by each Party to this Agreement and its successors and permitted assigns.

7.11    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

7.12    <u>Severability</u>. If any of the provisions of this Agreement is found to be in violation of Law or unenforceable for any reason, then (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction, and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.13    <u>No Presumption</u>. The Parties agree that this Agreement was negotiated fairly between them at arm's length and that the final terms of this Agreement are the product of their negotiations. Each Party represents and warrants that it has sought and received experienced legal counsel of its own choosing with regard to the contents of this Agreement and the rights and obligations affected hereby. The Parties agree that this Agreement shall be deemed to have been jointly and equally drafted by them, and that the provisions of this Agreement therefore should not be construed against a Party on the grounds that such Party drafted or was more responsible for drafting the provisions.

7.14    <u>Governing Law; Submission to Jurisdiction; Waiver of Jury Trial</u>.

(a)    This Agreement will be governed by and construed in accordance with the internal Laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such Laws.

(b)    Without limiting a Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Note, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in <u>Section 7.6</u>; <u>provided</u>, <u>however</u>, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Action, in the Delaware Court of Chancery, for the resolution of any such claim or dispute. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable Law, any objection which it may now or hereafter have to the laying of venue of any such Action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party

16

agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(c)     Each Party consents to process being served by the other Party in any Action by delivery of a copy thereof in accordance with the provisions of Section 7.6; provided, however, that such service will not be effective until the actual receipt thereof by the Party being served.

(d)     Each Party waives any right to trial by jury in any Action regarding this Agreement or any provision hereof.

7.15    Damages. Neither Party shall have any liability under any provision of this Agreement for any punitive, incidental, consequential, special or indirect damages, including business interruption, loss of future revenue, profits or income, or loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement.

7.16    Interpretation.  As used in this Agreement, references to:

(i)     the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement;

(ii)    the Preamble, Recitals, Sections or Exhibits refer to the Preamble, a Recital or a Section of, or an Exhibit to this Agreement unless otherwise indicated;

(iii)   this Agreement refers to this Agreement and the Exhibits to it; and

(iv)    all references to "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified.

(b)     Wherever this Agreement requires a Party to take an action, the requirement constitutes an undertaking by the Party to cause its subsidiaries, and to use its commercially reasonable efforts to cause its other Affiliates, to take appropriate action in connection therewith.

(c)     Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the Person referred to may require.

(d)     The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

[Remainder of page intentionally left blank]

17

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**CLIFTON BAY INVESTMENTS LLC**

By: _____
      Name:   John J. Ray III
      Title:    Authorized Signatory

**PURCHASER**:

**TVC MOMENTUM FUND II, LP**

By: _____
      Name:
      Title:

**PURCHASER**:

**TVC MOMENTUM FUND I, LP**

By: _____
      Name:
      Title:

IN WITNESS WHEREOF, the parties named below have caused this instrument to be duly executed, all as of the day and year first above written.

**SELLER:**

**CLIFTON BAY INVESTMENTS LLC**

By: _____
        Name:   John J. Ray III
        Title:    Authorized Signatory

**PURCHASER**:

**TVC MOMENTUM FUND II, LP**

By: *N. Shekerdemian*
        Name: Nicholas Shekerdemian
        Title:  Managing Partner

**PURCHASER**:

**TVC MOMENTUM FUND I, LP**

By: *N. Shekerdemian*
        Name: Nicholas Shekerdemian
        Title:  Managing Partner

**PURCHASER**:

**TVC XLII, a Series of The Venture Collective Holdings LLC**

By: _N. Shekerdemian_

Name: Nicholas Shekerdemian

Title: Managing Member

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the meanings specified in this Exhibit A.

"Action" means any litigation, action, suit, charge, binding arbitration, or other legal, administrative or judicial proceeding.

"Affiliate" means, as to any Person, any other Person that directly or indirectly through one or more intermediaries controls, or is under common control with, or is controlled by, such Person.

"Aggregate Purchase Price" has the meaning set forth in Section 1.2.

"Agreement" has the meaning set forth in the Preamble.

"Alternative Transaction" means the sale, transfer or other disposition of the Note in a transaction with a purchaser or transferee other than Purchaser and/or its Affiliates.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bankruptcy Proceeding" has the meaning set forth in the Recitals.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court.

"Business Day" means any day other than a Saturday or Sunday or a day on which banks located in the city of New York are authorized or required by statute to close.

"Closing" has the meaning set forth in Section 1.3.

"Closing Date" has the meaning set forth in Section 1.3.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidential Information" means any information related to the Transactions, Seller, Purchasers and any of their respective stakeholders or any of their contractual or commercial counterparties that is furnished by or on behalf of Seller or any Purchaser or their respective representatives to the other Party or its representatives and that is non-public, confidential and/or proprietary in nature; *provided* that "Confidential Information" does not include any information that (a) was or becomes available to the receiving Party or any of its representatives on a non-confidential basis before disclosure to such Party by the other Party or its representatives or which such Party otherwise had the right to obtain from the other Party or its representatives without obligations of confidentiality, (b) is or has become generally available to or known by

the public other than as a result of its disclosure by the receiving Party or its representatives in breach of this Agreement or any other obligation of confidentiality to the other Party, as applicable, (c) becomes available to the receiving Party or its representatives on a non-confidential basis from a source other than the other Party or its representatives who, to the receiving Party's knowledge, is not bound by a confidentiality agreement with the other Party, (d) was independently developed by the receiving Party or its representatives without use of the Confidential Information, (e) was or is obtained from the disclosing Party or any other Person by the receiving Party or any of its representatives through a discovery process in any judicial or legal process or administrative proceeding or (f) has been approved for release on a non-confidential basis by written authorization by the disclosing Party.

"Debtor Affiliates" means the Debtors and their respective wholly owned subsidiaries.

"Debtors" has the meaning set forth in the Recitals.

"Deferred Payment Amount" means $3,000,000.

"Deferred Payment Date" means the earlier of (i) the Note Maturity Date or (b) any conversion of the Note into shares of capital stock of the Company pursuant to Section 4 of the Note.

"Final Order" means an Order (a) as to which no appeal, leave to appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed (in cases in which there is a date by which such filing is required to occur), or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject Order in all material respects without the possibility for further appeal thereon, (b) in respect of which the time period for instituting or filing an appeal, leave to appeal, motion for rehearing or motion for new trial shall have expired (in cases in which such time period is capable of expiring), and (c) as to which no stay is in effect.

"Governmental Entity" means any federal, state, provincial, municipal, local or foreign government, governmental authority, regulatory or administrative agency, governmental commission, department, board, bureau, agency, instrumentality, court or tribunal and, for purposes of this Agreement shall include the U.S. Securities and Exchange Commission and any state securities authority or other regulatory authority or organization having jurisdiction over the Debtors, Purchaser or the Subject Company.

"Law" or "Laws" means any law, statute, legislation, constitution, ordinance, principle of common law, resolution, treaty, convention, rule, regulation, ruling, directive, pronouncement, Order or other legal requirement enacted, issued, promulgated, enforced or entered by a Governmental Entity of competent jurisdiction.

"Lien" means any lien (statutory or otherwise), charge, pledge, mortgage, lease, easement, hypothecation, usufruct, deed of trust, security interest, option, right of use, first offer or first refusal, servitude, restrictive covenant or condition, encroachment, claim, interest, restriction or any other encumbrance of any kind.

"Material Adverse Effect" means any change, development, circumstance, fact or effect that, individually or taken together with any other changes, developments, circumstances, facts or effects is, or would reasonably be expected to be, materially adverse to the financial condition, assets, liabilities, business operations or results of operations of the Subject Company; provided, however, that none of the following, either alone or in combination, shall be deemed to constitute a Material Adverse Effect that is occurring, has occurred or would reasonably be expected to occur: (a) changes, developments, circumstances or facts in or with respect to the economy, credit, capital, securities, digital asset or financial markets or political, regulatory or business conditions in the geographic markets in which the Subject Company has operations or its products or services are sold, (b) changes, developments, circumstances, facts or effects generally affecting the industries, markets or geographical areas in which the Subject Company operates, (c) any change in the price or relative value of any digital currency or cryptocurrency, or any other blockchain-based tokens or assets, (d) any change in existence or legality of any digital currency or cryptocurrency, or any other blockchain-based token or asset, or any halt or suspension in trading of any such digital currency or cryptocurrency on any exchange, (e) changes, events and occurrences in the industries in which the Subject Company operates generally, (f) macroeconomic factors, interest rates, currency exchange rates, general financial market conditions, any change, development or effect resulting from acts of war (whether or not declared), sabotage, terrorism, military actions or the escalation of any of the foregoing, whether perpetrated or encouraged by a state or non-state actor or actors (other than cyberattacks), any weather or natural disaster, or any outbreak of illness or other public health event (or any measures taken in response thereto) or any other *force majeure* event (except to the extent causing any damage or destruction to or rendering unusable any material facility or property of the Subject Company), whether or not caused by any Person (other than the Subject Company or any of its Affiliates or representatives), (g) changes in law, generally accepted accounting principles or official interpretations of the foregoing, (h) compliance with this Agreement, including any effect on Seller resulting from failure to take any action to which Purchaser refused consent under this Agreement, (i) the Transactions or any announcement hereof or the identity of Purchaser, (j) the pendency of the Bankruptcy Proceeding and any action approved by, or motion made before, the Bankruptcy Court, or (k) matters known to or reasonably foreseeable by Purchaser, taking into account the financial condition, business and operations of Seller, the fact that Seller is involved in the Bankruptcy Proceeding and the circumstances giving rise to such Bankruptcy Proceeding; it being understood that the failure of the Subject Company to achieve internal or external financial forecasts or projections, by itself, will not constitute a Material Adverse Effect.

"Note" means the Convertible Promissory Note of Helix Nanotechnologies Inc. issued to Alameda Research Ventures LLC on February 2, 2022.

"Note Maturity Date" means January 31, 2026.

"Order" means any order, writ, judgment, injunction, decree, rule, ruling, decision, directive, determination, quasi-judicial decision, or award made, issued or entered by or with any arbitrator, mediator, or Governmental Entity, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Bankruptcy Proceeding.

"Party" or "Parties" has the meaning set forth in the Preamble.

"Permitted Encumbrance" means a restriction on transfer arising solely under applicable federal and state securities Laws.

"Person" means any natural person and any corporation, company, partnership (general or limited), unincorporated association (whether or not having separate legal personality), trust or other entity.

"Purchaser" has the meaning set forth in the Preamble.

"Purchaser Parties" means, collectively, (i) each Purchaser, (ii) each of the current or former Affiliates of such Purchaser, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

"Sale Hearing" has the meaning set forth in Section 4.1(a).

"Sale Order" means an order entered by the Bankruptcy Court or other court of competent jurisdiction that includes the provisions set forth in Exhibit B hereto, subject to (a) immaterial modifications or clarifications or (b) such other changes to which Purchaser consents (such consent not to be unreasonably withheld, conditioned or delayed).

"Sale Process Date" has the meaning set forth in Section 4.2(a).

"Seller" has the meaning set forth in the Preamble.

"Seller Parties" means, collectively, (i) Seller, (ii) each of the current or former Affiliates of Seller, and (iii) each of the current or former officers, directors, employees, equityholders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (i) or clause (ii) of this definition, and each of the Affiliates of any of the Persons described in this clause (iii).

"Subject Company" means Helix Nanotechnologies Inc.

"Taxes" means any tax or similar duty, fee, charge or assessment thereof imposed by a Governmental Entity, in each case in the nature of a tax, including any interest, penalties and additions imposed with respect to such amount.

"Termination Date" has the meaning set forth in Section 6.1(b).

"Transactions" means the transactions contemplated by this Agreement.

"Transfer Documents" means any instruments of transfer to be executed by Seller and Purchasers at the Closing.

"Transfer Taxes" means any transfer, documentary, sales, use, stamp, recording, value-added, registration and other similar Taxes and all conveyance fees, recording fees and other

similar charges including any interest, penalties and additions imposed with respect to such amount.

[Remainder of page intentionally left blank]

A-5

**EXHIBIT B**

**FORM OF SALE ORDER**

4883-1747-3173 v.5

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Nos. [●]** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF NOTE ISSUED BY HELIX NANOTECHNOLOGIES INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"), pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1 and 9006-1, among other things, (a) authorizing and approving the sale (the "Sale Transaction") of the convertible promissory note (the "Note") held by Debtor Clifton Bay Investments LLC ("Seller") issued by Helix Nanotechnologies Inc. (the "Subject Company"), free and clear of all liens, claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement, (b) authorizing and approving Seller's entry into, and performance under, the Agreement, and (c) granting related relief; the Court having held a hearing to approve the Sale Transaction

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

pursuant to the terms of the Agreement (the "Sale Hearing") to review and consider (i) the

Motion with respect to the Sale Transaction and all relief related thereto, (ii) the Agreement,

(iii) the Declaration of Bruce Mendelsohn and (iv) any objections thereto that were not resolved

prior to the start of the Sale Hearing; and upon the record of the Sale Hearing and all of the

proceedings had before this Court; and objections (if any) to the Motion, with respect to the sale

of the Note, having been withdrawn or overruled on the merits; and after due deliberation and

good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.     Jurisdiction and Venue.  This Court has jurisdiction over this matter and

over the property of the Debtors' estates, including the Note to be sold, transferred or conveyed

pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing

Order of Reference* from the United States District Court for the District of Delaware, dated

February 29, 2012.  This Court may issue a final order on the Motion consistent with Article III

of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     Statutory and Rule Predicates.  The statutory and other legal predicates for

the relief requested in the Motion and for the approvals and authorization herein are sections

105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008, and 9014

and Local Rules 2002-1, 6004-1 and 9006-1.

C.     Final Order.  This Sale Order constitutes a final order within the meaning

of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made

applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for

delay in the implementation of this Sale Order, and expressly directs entry of judgment as set

forth herein and authorizes the closing of the Sale Transaction contemplated hereby without

regard to any stay or delay in its implementation.

D.    Sale Notice.  As shown by the affidavits of service filed with this Court

and the representations or proffers made on the record at the Sale Hearing, (a) the Debtors have

provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of,

and sufficient opportunity to object to, the Motion with respect to the Sale Transaction and the

relief requested therein (including the Debtors' requested findings with respect to successor

liability), the Sale Transaction and the proposed entry of this Sale Order in compliance with all

applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, (b)

such notice was adequate and sufficient under the circumstances of these Chapter 11 Cases, and

(c) no other or further notice is necessary or shall be required.

E.    Opportunity to Object.  A fair and reasonable opportunity to object or be

heard regarding the relief granted by this Sale Order has been afforded to all interested parties.

F.    No Collusion.  No Purchaser is an "insider" of the Debtors, as that term is

defined in section 101(31) of the Bankruptcy Code.  The Agreement and the Sale Transaction

were negotiated, proposed and entered into by Seller and Purchasers without collusion or fraud,

in good faith and from arm's-length bargaining positions, and are substantively and procedurally

fair to all parties.  Neither the Debtors nor any Purchaser have engaged in any conduct that

would cause or permit the Agreement or the consummation of the Sale Transaction to be

avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and

accordingly neither the Debtors nor any Purchaser have violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, no Purchaser has acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The Sale Transaction may not be avoided, and no damages may be assessed against any Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

G. <u>Good Faith of Purchasers</u>. Each Purchaser is purchasing its respective portion of the Note in good faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Each Purchaser is therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) each Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Note; (b) no Purchaser in any way induced or caused the filing of these Chapter 11 Cases by the Debtors; (c) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by each Purchaser in connection with the Sale Transaction have been disclosed; (d) no Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction; (e) the negotiation and execution of the Agreement were at arm's length and in good faith, and at all times each Purchaser and Seller were represented by competent counsel of their choosing; and (f) no Purchaser has acted in a collusive manner with any person. Each Purchaser will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Agreement.

H.    <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Note, and a reasonable opportunity has been given to any interested party to make a higher or better offer for the Note. No other person or entity or group of entities has offered to purchase the Note for higher or otherwise better value to the Debtors' estates than Purchasers.  The offer to purchase the Note made by Purchasers, under the terms and conditions set forth in the Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for the Note and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Note being conveyed to Purchasers; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by Purchasers absent the protections afforded to each Purchaser by this Sale Order.

I.    The Debtors' determination that the Sale Transaction, pursuant to the Agreement, provides the highest or otherwise best offer for the Note, and their related decision to sell the Note, constitute a reasonable exercise of the Debtors' business judgment.  The facts and circumstances described in the Motion and the evidence adduced in connection with the Sale Hearing demonstrate the Debtors' business judgment to sell the Note to Purchasers at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Note outside of a chapter 11 plan.  Moreover, the sale of the Note outside of a chapter 11 plan pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

J.      <u>Fair Consideration</u>.  The consideration provided by Purchasers pursuant to

the Agreement constitutes reasonably equivalent value (as those terms are defined in each of the

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the

Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession or the District of Columbia.

K.      <u>No Successor or Other Derivative Liability</u>.  As a result of any action

taken in connection with the Sale Transaction, the Agreement, or this Sale Order: (a) no

Purchaser is a successor to or mere continuation of or substantial continuation of the Debtors or

their estates and there is no continuity of enterprise between any Purchaser and the Debtors; and

(b) no Purchaser shall be deemed to be holding itself out to the public as a continuation of the

Debtors based on the Sale Transaction.  No Purchaser is, or shall be, considered a successor in

interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the

Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of

any Purchaser and the Debtors and/or the Debtors' estates.  No Purchaser would have entered

into the Agreement if the sale of the Note were not made free and clear of any successor liability

of such Purchaser.

L.      <u>Corporate Power and Authority</u>.  As set forth in section 2.1(a) of the

Agreement, Seller (a) has full corporate power and authority to execute and deliver the

Agreement and all other documents contemplated thereby, (b) has all corporate authority

necessary to consummate the Sale Transaction, and (c) has taken all corporate action and

formalities necessary to authorize and approve the Agreement and the consummation of the Sale

Transaction.  Seller's sale of the Note has been duly and validly authorized by all necessary

corporate action.  No consents or approvals, other than those expressly provided for in the

Agreement, are required for Seller to consummate the Sale Transaction.

M.      The Agreement was not entered into for the purpose of hindering, delaying

or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any

state, territory, possession or the District of Columbia.  Neither the Debtors nor any Purchaser

are entering into the Sale Transaction fraudulently for the purpose of statutory and common law

fraudulent conveyance and fraudulent transfer claims.

N.      <u>Title to Assets</u>.  The transfer of the Debtors' rights, titles and interests to

the Note to Purchasers will be, as of the Closing Date (as defined in the Agreement), a legal,

valid and effective transfer of such rights, titles and interests in the Note, which transfer vests or

will vest Purchasers with all rights, titles and interests of the Debtors to the Note free and clear of

all Liens (as defined below and in the Agreement), other than Permitted Encumbrances (as

defined in the Agreement).  The Agreement is a valid and binding contract between Seller and

Purchasers and shall be enforceable according to its terms.

O.      <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f)

of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the

Debtors are authorized to transfer all of their rights, titles and interests in and to the Note free

and clear of any interest in the property, other than Permitted Encumbrances.  The Debtors may

sell the Note free and clear of all liens (statutory or otherwise), charges, pledges, mortgages,

leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of

use, first offer or first refusal, servitudes, restrictive covenants or conditions, encroachments,

claims, interests, restrictions, or any other encumbrances of any kind (collectively, "<u>Liens</u>")

against the Debtors, their estates or the Note because, in each case, one or more of the standards

set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Each holder with a

Lien on the Note to be transferred pursuant to the Agreement: (a) has, subject to the terms and

conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented;

(b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such

Lien; or (c) otherwise falls within one or more of the other subsections of section 363(f) of the

Bankruptcy Code. Holders of Liens against the Debtors, their estates or the Note who did not

object, or who withdrew their objections, to the Sale Transaction or the Motion, with respect to

the sale of the Note (except with respect to Permitted Encumbrances), are deemed to have

consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens are

adequately protected by having their Liens, if any, in each instance against the Debtors, their

estates or the Note, attach to the net cash proceeds of the Sale Transaction ultimately attributable

to the Note in which such creditor alleges a Lien, in the same order of priority, with the same

validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims

and defenses the Debtors and their estates may possess with respect thereto.

P.      No Purchaser would have entered into the Agreement or would

consummate the Sale Transaction if the sale of the Note to Purchasers were not free and clear of

all Liens (other than Permitted Encumbrances), or if such Purchasers or any of the applicable

Purchaser Parties (as defined in the Agreement) would, or in the future could, be liable for any

such Lien. The total consideration to be provided under the Agreement reflects such Purchaser's

reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy

Code, with title to, interest in and possession of the Note free and clear of all Liens (other than

Permitted Encumbrances). Not transferring the Note free and clear of all Liens (other than

Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of

the estates, and the transfer of the Note other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

Q.      Waiver of Bankruptcy Rule 6004(h).  Good and sufficient reasons for approval of the Agreement and the Sale Transaction have been articulated.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates and progress these Chapter 11 Cases. Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rule 6004(h) with respect to the Sale Transaction.  To maximize the value of the Note, it is essential that the Sale Transaction occur within the time constraints set forth in the Agreement.  Time is of the essence in consummating the Sale Transaction and the Debtors and Purchasers intend to close the Sale Transaction as soon as practicable.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Aggregate Purchase Price under the Agreement, the proposed Sale Transaction should be approved.

R.      The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

S.      Personally Identifiable Information.  The Sale Transaction does not involve the sale of any personally identifiable information.  Thus, the appointment of a consumer

privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

   T. <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and the evidence adduced in connection with the Sale Hearing establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their estates.

   IT IS HEREBY ORDERED THAT:

**A.** **<u>General Provisions</u>**

   1. The sale of the Note and the other relief requested in the Motion is granted as set forth herein, and the Agreement and the provisions thereof and the Sale Transaction are approved in their entirety as set forth herein.

   2. All objections, responses, reservations of rights and requests for any continuances concerning the Motion are resolved in accordance with the terms of this Sale Order or as set forth in the record of the Sale Hearing.  To the extent any such objections, responses, reservations of rights or requests for any continuances were not otherwise withdrawn, waived, settled, or resolved, such are hereby overruled and denied on the merits.  All interested parties that failed to timely object to the Motion, with respect to the Sale Transaction, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

   3. Notice of the Motion, the Agreement, the sale of the Note free and clear of all Liens, except Permitted Encumbrances, the Sale Transaction was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and the Local Rules 2002-1, 6004-1 and 9006-1.

**B.**    <u>**Approval of the Agreement**</u>

4.    The Agreement and all of the terms and conditions thereof, are hereby authorized and approved in all respects.  The failure to specifically include or make reference to any particular provision of the Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Sale Transaction are authorized and approved in their entirety.

5.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Purchasers in accordance with the terms and conditions of the Agreement, (b) close the Sale Transaction as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale Transaction.  No Purchaser shall be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; <u>provided</u>, <u>however</u>, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.    This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in, against or on all or any portion of the Note (whether known or unknown), each Purchaser and all successors and assigns of such Purchaser, the Note and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy

Code of these Chapter 11 Cases.  This Sale Order and the Agreement shall inure to the benefit of

the Debtors, their estates and creditors, each Purchaser and the respective successors and assigns

of each of the foregoing.

**C.**     **Consummation of the Sale Transaction**

7.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the

Debtors are authorized to transfer all of their rights, titles and interests to the Note to Purchasers

on the Closing Date and such transfer shall constitute a legal, valid, binding and effective

transfer of such rights, titles and interests in the Note and shall vest Purchasers with all of the

Debtors' rights, titles and interests in the Note and, upon the Debtors' receipt of the Aggregate

Purchase Price, shall be free and clear of all liens, claims, interests and encumbrances, including

but not limited to, successor or successor-in-interest liability or, any tax liens or mechanic's liens

asserted against the Note, except Permitted Encumbrances, with all Liens to attach to the net

cash proceeds ultimately attributable to the property against or in which such Liens are asserted,

subject to the terms thereof, with the same validity, force and effect, and in the same order of

priority, which such Liens now have against the Note, subject to any rights, claims and defenses

the Debtors or their estates, as applicable, may possess with respect thereto.  The provisions of

this Sale Order authorizing and approving the transfer of the Note free and clear of all Liens

(other than Permitted Encumbrances) shall be self-executing, and neither the Debtors nor any

Purchaser shall be required to execute or file releases, termination statements, assignments,

consents, or other instruments in order to effectuate, consummate, and implement the provisions

of this Sale Order.

8.     A certified copy of this Sale Order may be filed with the appropriate clerk

and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record

except Permitted Encumbrances.

9.      If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Note shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Note, the Debtors, any Purchaser and each of their respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Note.

10.      This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens existing as to the Note prior to the Closing Date, except Permitted Encumbrances, shall have been unconditionally released, discharged and terminated from the Note, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**D.**    **Prohibition of Actions Against Purchasers**

11.    Except as expressly provided for in this Sale Order or the Agreement, no Purchaser shall have any liability or other obligation or responsibility of the Debtors arising under or related to the Note prior to the Closing.  No Purchaser is a "successor" to the Debtors or their estates by reason of any theory of law or equity.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, no Purchaser shall be liable for any claims against the Debtors or any of its predecessors or affiliates, and no Purchaser shall have successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to paragraph 15 below), successor or transferee liability, securities law, tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to paragraph 15 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Note prior to the Closing.  The Sale Transaction does not amount to a consolidation, merger or de facto merger of any Purchaser, on the one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial continuity between any Purchaser, on the one hand, and the Debtors or their affiliates, on the other hand, and no Purchaser is a mere continuation of the Debtors or their estates, and no Purchaser constitutes a successor to the Debtors or their estates.  For purposes of paragraphs 11 to 14 of this Sale Order, all references to Purchasers shall include the Purchaser Parties.

12.    Except as expressly otherwise set forth in the Agreement and this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Note (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors or the Note prior to the Closing Date or the transactions contemplated by the Agreement, including the transfer of the Note to Purchasers, hereby are forever barred, estopped and permanently enjoined from asserting against any Purchaser, its Affiliates, its successors or assigns, their property or the Note, such persons' or entities' Liens with respect to the Note, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against any Purchaser, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any Purchaser, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against any Purchaser, its Affiliates, their successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due any Purchaser, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate the Subject Company, subject to paragraph 14 below. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Note (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere (a) with the ability of the Debtors and/or Seller to sell and transfer the Note to Purchasers in accordance with the terms of the Agreement and this Sale Order, and (b) with the ability of Purchasers to acquire and take possession of the Note in accordance with the terms of the Agreement and this Sale Order.

14.     Purchasers have been given substantial consideration under the Agreement for the benefit of the Debtors and their estates.  The consideration given by Purchasers shall constitute valid and valuable consideration for the sale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Note pursuant to this Sale Order, except with respect to the Permitted Encumbrances, and free and clear of any potential claims of successor liability against any Purchaser.  The consideration provided by Purchasers for the Note under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**E.     Other Provisions**

15.     Nothing in this Sale Order or the Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

16.     Further, nothing in this Sale Order or Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

17.     Notwithstanding anything to the contrary in the Motion, this Sale Order, or any findings announced at the Sale Hearing, nothing in the Motion, this Sale Order, or announced at the Sale Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

18.     The consideration provided by Purchasers to the Debtors pursuant to the Agreement for the Note constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

19.     The sale of the Note does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

20.     The Sale Transaction is undertaken by each Purchaser without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing.  Each Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  The Debtors and each Purchaser will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

21.     As a good faith purchaser of the Note, no Purchaser has entered into an agreement with any other potential bidders, or colluded with any other bidders, potential bidders, or any other parties interested in the Note, and therefore, neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring an action against any Purchaser, and the Sale Transactions may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Agreement or Sale Transaction.

22.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale Order and the Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

23.     Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchasers are authorized to close the Sale Transaction immediately upon entry of this Sale Order, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.

24.     The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of this Court that the Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

25.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Agreement is modified, the Debtors shall file the modified version with the Court.

26.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchasers, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

27.     The Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

28.     No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Agreement)) shall apply to the Debtors' conveyance of the Note or this Sale Order.

29.    The appointment of a consumer privacy ombudsman pursuant to section

363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale

Transaction.

30.    Each Purchaser is a party-in-interest and shall have the ability to appear

and be heard on all issues related to or otherwise connected to this Sale Order, the Sale

Transaction, and any issues related to or otherwise connected to the Agreement and the Sale

Transaction.

31.    Nothing in this Sale Order shall affect the obligations, if any, of the

Debtors, any Purchaser, and/or any transferee or custodian to maintain all books and records that

are subject to any governmental subpoena, document preservation letter, or other investigative

request from a governmental agency.

32.    All time periods set forth in this Sale Order shall be calculated in

accordance with Bankruptcy Rule 9006(a).

Dated: _____
        Wilmington, Delaware

_____
The Honorable John T. Dorsey
United States Bankruptcy Judge

**SCHEDULE A**

| Seller | Note | Counterparty | Related Documents | Closing Payment Amount |
|---|---|---|---|---|
| Alameda Research Ltd. | 2% Convertible Promissory Note of Helix Nanotechnologies | The Venture Collective LLC | Convertible Promissory Note of Helix Nanotechnologies Inc. issued to Alameda Research Ventures LLC on February 2, 2022, as amended on June 16, 2023. <br><br> Convertible Note Purchase Agreement, dated as of January 31, 2022, by and between Helix Nanotechnologies Inc. and Alameda Research Ventures LLC. | $5,000,000 |

[Schedule A]