**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**COMBINED REPLY IN SUPPORT OF MOTIONS TO DISMISS BANKRUPTCY CASES OF FTX TRADING LTD. AND MACLAURIN INVESTMENTS LTD. <u>FILED BY PATRICK GRUHN, ROBIN MATZKE, AND LOREM IPSUM UG</u>**

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................. 1

II. SUMMARY OF RESPONSE ............................................................................... 2

III. REPLY ............................................................................................................... 3

    A.  Lack of Authority to File the Petitions Affects this Court's Subject Matter Jurisdiction to Proceed with the Bankruptcy Cases....................................... 3

    B.  Price v. Gurney is Controlling Law and Has Not Been Supplanted by Section 1112(b) of the Bankruptcy Code.................................................... 5

    C.  There Are Factual Issues to Resolve Regarding Who Had Authority to Approve the Filing of the Petitions............................................................. 6

    D.  The LI Parties Have Standing to Bring the Motions. ................................. 11

    E.  The Equitable Doctrine of Ratification Cannot Create Subject Matter Jurisdiction. .............................................................................................. 12

    F.  The Doctrine of Laches Cannot Create Subject Matter Jurisdiction. .......... 14

    G.  Costs of Administration Do Not Create Subject Matter Jurisdiction. .......... 16

    H.  Revocation................................................................................................ 17

IV. CONCLUSION .................................................................................................. 18

DE:4879-8439-3882.1 53169.001

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3P Hightstown, LLC,*
631 B.R. 205 (Bankr. D. N.J. 2021) .................................................................... 5

*In re Autumn Press, Inc.,*
20 B.R. 60 (Bankr. D. Mass. 1982) ................................................................... 11

*In re Bay Club Partners-472, LLC,*
No. BR 14-30394-rld11, 2014 WL 1796688 (Bankr. D. Or. May 6, 2014) .......................... 12

*In re Bidermann Indus. U.S.A., Inc.,*
203 B.R. 547 (Bankr. S.D.N.Y. 1997) ................................................................. 1

*In re Blue Whale Studios, LLC,*
644 B.R. 252 (Bankr. N.D. Ga. 2022) .................................................................. 5

*In re Brandon Farmer's Mkt., Inc.,*
34 B.R. 148 (Bankr. M.D. Fla.1983) .................................................................... 4

*In re Burlington Motor Holdings, Inc.,*
242 B.R. 156 (Bankr. D. Del. 1999) .................................................................. 13

*Bush v. Butler,*
521 F. Supp. 2d 63 (D.D.C. 2007) ...................................................................... 5

*In re Caterbone,*
640 F.3d 108 (3d Cir. 2011) ....................................................................... 4, 13

*Cipla Ltd. v. Amgen Inc.,*
386 F. Supp. 3d 386 (D. Del. 2019), *aff'd sub nom. Cipla Ltd. v. Amgen Inc.,*
778 F. App'x 135 (3d Cir. 2019) ............................................................ 12, 13, 16

*In re Combustion Eng'g, Inc.,*
391 F.3d 190 (3d Cir. 2004) .......................................................................... 15

*In re ComScape Telecommunications, Inc.,*
423 B.R. 816 (Bankr. S.D. Ohio 2010) ................................................................. 6

*In re Delta Starr Broadcasting, L.L.C.,*
422 F. App'x 362, 368 (5th Cir. 2011) ................................................................ 15

*In re Energy Future Holdings Corp.,*
561 B.R. 630 (Bankr. D. Del. 2016) .................................................................. 14

*Fountain v. United States*,
    605 F. Supp. 2d 608 (D. Del. 2009) ....................................................................15

*In re Franchise Servs. of N. Am., Inc.*,
    891 F.3d 198 (5th Cir. 2018) ..........................................................................5, 6

*In re Franchise Servs. of N. Am., Inc.*,
    No. 1702316EE, 2018 WL 485959 (Bankr. S.D. Miss. Jan. 17, 2018), *aff'd*,
    891 F.3d 198 (5th Cir. 2018) ............................................................................15

*FTX Trading Ltd. et al. v. Lorem Ipsum UG et al.*,
    Adv. No. 23-50437 (JTD) – Adv. D.I. 35 .............................................................7

*Genentech, Inc. v. Amgen Inc.*,
    310 F. Supp. 3d 467 (D. Del. 2018) .....................................................................4

*In re Giggles Restaurant, Inc.*,
    103 B.R. 549 (Bankr. D. N.J. 1989) ..............................................................12, 16

*In re Grooms*,
    572 B.R. 559 (Bankr. W.D. Pa. 2017) ................................................................13

*Hager v. Gibson*,
    108 F.3d 35 (4th Cir. 1997) ............................................................................5, 14

*In re Ira Haupt & Co.*,
    361 F.2d 164 (2d Cir. 1966) ..........................................................................1, 18

*Keenihan v. Heritage Press, Inc.*,
    19 F.3d 1255 (8th Cir. 1994) ...............................................................................5

*In re Kit Carson Home & Museum, Inc.*,
    No. 20-12130-t11, 2021 WL 955416 (Bankr. D. N.M. Mar. 12, 2021)............5, 14

*In re Leslie Fay Companies, Inc.*,
    175 B.R. 525 (Bankr. S.D.N.Y. 1994) ..............................................................1, 2

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015) .............................................................................4, 7

*In re Lyn*,
    483 B.R. 440 (Bankr. D. Del. 2012) .....................................................................3

*McCann v. Newman Irrevocable Trust*,
    458 F.3d 281 (3d Cir. 2006) ................................................................................4

*In re Mid-South Bus. Assocs., LLC*,
    555 B.R. 565 (Bankr. N.D. Miss. 2016)...................................................6, 12, 15

*In re Millennium Lab Holdings II, LLC*,
   562 B.R. 614 (Bankr. D. Del. 2016) ......................................................................... 3

*In re Moni-Stat, Inc.*,
   84 B.R. 756 (Bankr. D. Kan. 1988) ........................................................................... 1

*Nederland Shipping Corp. v. United States*,
   18 F.4th 115 (3d Cir. 2021) ..................................................................................... 13

*In re Nica Holdings, Inc.*,
   810 F.3d 781 (11th Cir. 2015) ................................................................................... 6

*In re Orchard at Hansen Park, LLC*,
   347 B.R. 822 (Bankr. N.D. Tex. 2006) ................................................................... 12

*Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*,
   49 F.4th 866 (3d Cir. 2022) ....................................................................................... 5

*Price v. Gurney*,
   324 U.S. 100 (1945) .......................................................................................... *passim*

*In re Professional Sales Corp.*,
   56 B.R. 753 (N.D.Ill.1985) ..................................................................................... 15

*Ramirez v. Collier*,
   595 U.S. 411 (2022) ................................................................................................ 13

*Robinson v. Temple Univ. Health Servs.*,
   506 F. App'x 112 (3d Cir. 2012) ............................................................................... 5

*In re S.T.R. Corp.*,
   66 B.R. 49 (Bankr. N.D. Ohio 1986) ...................................................................... 15

*Samuel-Bassett v. KIA Motors Am., Inc.*,
   357 F.3d 392 (3d Cir. 2004) .................................................................................... 13

*In re Shea & Gould*,
   214 B.R. 739 (Bankr. S.D.N.Y. 1997) .................................................................... 14

*In re Sino Clean Energy, Inc.*,
   901 F.3d 1139 (9th Cir. 2018) ................................................................................... 6

*In re Tishler*,
   201 B.R. 608 (Bankr. D. Conn. 1996) .................................................................... 14

*In re Yellow Cab Co-op. Ass'n*,
   144 B.R. 505 (Bankr. D. Colo. 1992) ....................................................................... 5

**Statutes**

11 U.S.C. § 1109...................................................................................................12

28 U.S.C. § 1334.....................................................................................................3

11 U.S.C § 105......................................................................................................15

11 U.S.C § 1112...............................................................................................*passim*

In support of their Motions,[1] and in reply (this "**Reply**") to the *Debtors' Omnibus Objection to Motions of Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG to Dismiss Bankruptcy Cases of Maclaurin Investments, Ltd. and FTX Trading Ltd.* [D.I. 4616] ("**Response**"), the LI Parties respectfully state:

## I.   <u>INTRODUCTION</u>

As Judge Henry Friendly declared fifty-eight years ago, "[t]he conduct of bankruptcy proceedings not only should be right but must seem right." *In re Ira Haupt & Co.,* 361 F.2d 164, 168 (2d Cir. 1966). This maxim remains true today. *See, e.g., In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 549 (Bankr. S.D.N.Y. 1997) (in that case, the estate "fiduciaries must have blinded themselves to Judge Friendly's counsel."). One should follow this principle because upholding the integrity of the bankruptcy process is of paramount importance. *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 537–38 (Bankr. S.D.N.Y. 1994).

"[T]he law is clear that the decision of whether or not a corporation should file bankruptcy is a business decision to be made only by the board of directors. A filing of a bankruptcy petition is a special act that requires special authorization by the board and is not a general duty of a corporate officer." *In re Moni-Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988). In contrast, the Debtors concede here that "there was not time to convene over 100 individual board meetings prior to commencing these Chapter 11 Cases." Response, ¶ 57.[2] Unfortunately, having no time to hold

---

[1]   The LI Parties filed: (a) *Motion of Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG to Dismiss Bankruptcy Case of Maclaurin Investments, Ltd.* [D.I. 3399] and (b) *Motion of Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG to Dismiss Bankruptcy Case of FTX Trading Ltd.* [D.I. 3400] ((a) and (b) collectively, "**Motions**"). Capitalized terms used but not defined in this Reply shall have the meanings ascribed to them in the Motions, albeit some, like Motion and Petition, are stated in this Reply in plural form.

[2]   The Debtors' counsel asserts there were exigent circumstances that necessitated immediate bankruptcy filings, including avoiding "piecemeal insolvency proceedings around the world." Response, ¶¶ 15 –

a meeting of directors is not permissible grounds to cut corners. Rather, admitting that no meetings of the board of directors were held to authorize the filings is tantamount to conceding that these chapter 11 cases were not properly filed. That is, it is an admission that the bankruptcy cases were not commenced in a manner that they could "be right" and would "seem right" thereafter. Such an error can be remedied by dismissing the cases as mandated by *Price v. Gurney*, 324 U.S. 100 (1945).

## II.    SUMMARY OF RESPONSE

The Debtors argue against dismissal on several grounds:

(1)     The issues raised by the Motions do not impact this Court's subject matter jurisdiction to proceed with the bankruptcy cases of Maclaurin and FTXT (jointly, "**Debtors**");

(2)     *Price v. Gurney*, 324 U.S. 100 (1945) is not controlling law, having been supplanted by the passage of the Bankruptcy Code, specifically Section 1112(b);

(3)     Contrary to prior sworn statements identifying the directors seated at the Petition Date who could approve the filings, the only authority that was really required was that of Sam Bankman-Fried;

(4)     The LI Parties do not have standing to seek dismissal of the Debtors' bankruptcy cases;

(5)     Even if the Debtors' bankruptcy cases were improperly authorized at the outset, the filings have been subsequently ratified;

(6)     the LI Parties inexcusably delayed seeking dismissal such that laches bar the Motions; and

(7)     the Debtors' and their professionals' time and efforts administering the Debtors' bankruptcy cases to the brink of reorganization will be lost if the bankruptcy cases are now dismissed.

---

18, 57. But there is no exigent circumstances exception to the requirement that a bankruptcy case be properly authorized. Here, instead of taking the time to properly file the case with authorization from a board of directors (or *via* involuntary petitions), the Debtors' counsel's decisions could have been "clouded by the benefits of potential employment." *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994) (citation omitted).

The Debtors' contentions are rebutted in turn below.

### III.    **REPLY**

A.    **Lack of Authority to File the Petitions Affects this Court's**
       **Subject Matter Jurisdiction to Proceed with the Bankruptcy Cases.**

A challenge to the authority to file a bankruptcy petition raises a threshold jurisdictional issue. As the U.S. Supreme Court has stated, "nowhere is there any indication that Congress *bestowed on the bankruptcy court jurisdiction* to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." *Price v. Gurney,* 324 U.S. 100, 107 (1945) (emphasis added). If a factual challenge to the authority to file a bankruptcy petition is successful and a court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, *it has no alternative* but to dismiss the petition." *Id.*, 324 U.S. at 106 (emphasis added). Because a finding of lack of corporate authority is always made after a bankruptcy filing has occurred, a court is *initially* vested with subject matter jurisdiction subject to divestiture if the filing was improperly approved. *In re Lyn*, 483 B.R. 440, 449 (Bankr. D. Del. 2012) (bankruptcy court has authority to determine whether it has subject matter jurisdiction); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 620 (Bankr. D. Del. 2016) (same).

Notwithstanding the mandate of *Price* and the fact that it is still good law, the Debtors contend that lack of authority to file the Petitions does not deprive the Court of subject matter jurisdiction over the Debtors' bankruptcy cases. Response, ¶ 60. The Debtors miss the point. The LI Parties agree that the Court has the ability upon the filing of the Petitions to determine their validity and whether subject matter jurisdictional exists. *See* Motion, ¶ 7 ("This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 to determine whether the filing

of the bankruptcy case was proper."). This, however, does not mean that the LI Parties do not have the right to challenge the propriety of the Petitions and the Court's *continuing* jurisdiction; they do. *See In re Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 149 (Bankr. M.D. Fla.1983). It also does not mean the Court does not have a *continuing* obligation to confirm its jurisdiction when it has been factually challenged; it does. Regardless of the Motions, which set out a legitimate factual challenge to the manner in which the Debtors' bankruptcy cases were commenced, when a matter involves a court's power to hear a case, that court has an independent (and continuing) obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. *See In re Caterbone*, 640 F.3d 108, 111 (3d Cir. 2011), *citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (internal quotation marks and citation omitted).

Here, the LI Parties made a factual challenge to the propriety of the requisite corporate authorization to file the Petitions. In reviewing a factual attack to subject matter jurisdiction, the Court may weigh and consider evidence outside the papers and need not give a debtor's allegations a presumption of truthfulness. *Genentech, Inc. v. Amgen Inc.*, 310 F. Supp. 3d 467, 469 (D. Del. 2018). Rather, the Court must conduct a plenary evidentiary hearing on contested issues prior to determining jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). In such a dispute, the burden of establishing federal jurisdiction rests with the party asserting its existence. *Id.* at 105; *Genentech*, 310 F. Supp. 3d at 469.

As such, the Debtors here bear the burden of proving the Petitions were properly authorized, which poof must be by a preponderance of the evidence. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). Failure to satisfy this burden dictates that the

Debtors' bankruptcy cases must be dismissed. *Price*, 324 U.S. at 106.[3] The Debtors have not met their burden here as set forth below and as will be otherwise demonstrated to the Court.

> **B.**      ***Price v. Gurney* is Controlling Law and Has Not Been**
> **Supplanted by Section 1112(b) of the Bankruptcy Code.**

The Debtors insinuate that *Price* is no longer controlling law since it "predates both the 1978 Bankruptcy Act and its amendment in 2005, which established and substantively amended section 1112, respectively." Response, ¶ 61. Although the U.S. Supreme Court issued *Price* before passage of the Bankruptcy Code, "it is still good law." *In re Yellow Cab Co-op. Ass'n*, 144 B.R. 505, 509 (Bankr. D. Colo. 1992). In fact, the dismissal rule cited in *Price* is "generally accepted" and has been reaffirmed and/or cited by both federal courts of appeal and bankruptcy courts. *See, e.g., In re Blue Whale Studios, LLC*, 644 B.R. 252, 259 (Bankr. N.D. Ga. 2022) ("it is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed"); *In re 3P Hightstown, LLC*, 631 B.R. 205, 209–10 (Bankr. D. N.J. 2021) (same); *In re Kit Carson Home & Museum, Inc.*, No. 20-12130-t11, 2021 WL 955416, at *3–5 (Bankr. D. N.M. Mar. 12, 2021) (collecting cases); *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997); *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206–07 (5th Cir. 2018); *Keenihan v. Heritage Press, Inc.,* 19 F.3d 1255, 1258 (8th Cir. 1994); *In*

---

[3]    The process of confirming subject matter jurisdiction and the mandate to dismiss are the same for all types of federal jurisdiction. For instance, if a federal case is filed purportedly based on diversity jurisdiction, the district court has the power to determine if diversity jurisdiction actually exists. *See Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869-70 (3d Cir. 2022) ("Federal courts are of limited jurisdiction and we must therefore be certain that there is a basis for our authority to hear such suit before proceeding to the merits."). If it turns out diversity of citizenship does not exist, the case must be dismissed for lack of subject matter jurisdiction. *See, e.g., Robinson v. Temple Univ. Health Servs.*, 506 F. App'x 112, 116 (3d Cir. 2012) (affirming dismissal for lack of subject matter jurisdiction upon finding lack of diversity); *Bush v. Butler*, 521 F. Supp. 2d 63, 71 (D.D.C. 2007) ("When a Court's subject matter jurisdiction is dependent solely on diversity jurisdiction and the Court finds that complete diversity does not exist, the Court must dismiss the suit."). Courts "have a continuing obligation to assess subject matter jurisdiction *sua sponte* at all stages of the proceeding, even when parties do not raise the issue." *Peace Church*, 49 F.4th at 869.

*re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1141 (9th Cir. 2018); *In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015).

*Price*, notwithstanding the Debtors' erroneous contentions in the Response, has not been supplanted by Section 1112(b) of the Bankruptcy Code. Rather, "a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of 'cause' under § 1112(b), because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case." *In re Mid-South Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016); *see also In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) ("under the Supreme Court's *Price* decision, the Court would have no choice but to dismiss an unauthorized petition even if § 1112(b) itself did not require such dismissal"). Thus, *Price* and Section 1112(b) of the Bankruptcy Code address distinct and different grounds for dismissal of a bankruptcy case. *Price* focuses on subject matter jurisdiction. Section 1112(b) of the Bankruptcy Code alternatively focuses on dismissal for cause.[4]

### C.    There Are Factual Issues to Resolve Regarding Who Had Authority to Approve the Filing of the Petitions.

In the Response and supporting declarations the Debtors have created factual issues regarding who was empowered to authorize the filing of the Petitions. These issues will need to be

---

[4]    Notwithstanding this clear and unambiguous distinction, the Debtors, in a patent attempt to cloud the issues and mask the impropriety of the corporate acts alleged in support of the filing of the Petitions, disregard *Price* and rely on Section 1112(b)(2) of the Bankruptcy Code. The Debtors erroneously argue against dismissal under Section 1112(b) of the Bankruptcy Code by contending that there are "unusual circumstances establishing that dismissal is not in the best interests of creditors and the estate, and there is a reasonable likelihood that a plan will be confirmed in a timely manner." (Response ¶¶ 55 – 59.) Dismissal here, however, is mandated under the jurisdictional strictures of *Price*.

resolved by the Court at an evidentiary hearing. *Lincoln Ben. Life Co.*, 800 F.3d at 105. A summary of selected factual disputes follows.

The Debtors assert that Bankman-Fried was the sole director of FTXT and Maclaurin on the Petition Date and had the authority to unilaterally appoint John Ray the CEO of the Debtors and delegate the power to file the Petitions. The Debtors haughtily complain that the LI Parties filed the Motions without proper inquiry, and if the LI Parties had done so they would have known this fact. Specifically, the Debtors stated:

> No attempt to contact the Debtors to inquire about corporate authority was made before these motions were filed.
>
> Had an inquiry been made, the [LI Parties] would have learned of this Court's subject matter jurisdiction and the unassailable authority of Mr. Ray to authorize those chapter 11 petitions to be filed under local foreign law.

*See Plaintiffs' Opposition to Defendant Brandon Williams' Motion for a Protective Order Staying Discovery* (A.P. D.I. 42) ("**Stay Response**").[5] A similar statement was made by the Debtors at the November 15, 2023 hearing on the Motion for Protective Order [*FTX Trading Ltd. et al. v. Lorem Ipsum UG et al.*, Adv. No. 23-50437 (JTD) – Adv. D.I. 35].

Although not disclosed by the Debtors in the Response, after the Debtors made these statements in the Stay Response and at the November 15 hearing, and wanting to understand if the Motion was in fact ill-advised, two days later, on November 17, 2023, the LI Parties sent the Debtors' counsel a letter, stating:

> We would like [to] take you up on your offer made in the Stay Response to provide us with the basis for Mr. Ray's authority before you need to prepare and file responsive pleadings. If we missed something, this will enable us to understand our error and have the

---

[5]    Notably, although Debtors now state this Court's subject matter jurisdiction is not at issue, in the Stay Response they stated that if the LI Parties had asked the Debtors would have informed them how the Court had subject matter jurisdiction.

> opportunity to take an appropriate position before the Court to save
> the estate and our clients the cost and expense, as well as save the
> Court from expending unnecessary time and resources reviewing
> what you believe are non-meritorious motions.

*See* Rosenblat Dec., Ex A.

The Debtors never responded to this inquiry and never provided any further information to the LI Parties supporting the Debtors' position that the filings were unassailably proper. Instead, they prepared the Response and supporting declarations and exhibits—totaling 1,213 pages—and again chastised the LI Parties for making "no attempt to investigate the facts or inquire with the Debtors [] prior to filing the Motions," noting that had the LI Parties done so the Debtors "could have quickly confirmed the relevant facts." Response, ¶ 8; ¶ 73 (stating the LI Parties could have simply asked the Debtors for information on the directors, "but chose not to do so.")

Amazingly, the Debtors then further castigate the LI Parties for allegedly "misstat[ing] the composition of the relevant boards of directors." Yet, in identifying the composition of the relevant boards of directors the LI Parties relied on the Debtors' own sworn statements.

Specifically, FTXT's Chief Financial Officer Mary Cilia has consistently and repeatedly sworn under penalty of perjury that, based on her review of FTXT's corporate records, FTXT had four sitting directors as of the Petition Date: (a) Arthur Thomas; (b) Corporate & Trust Services Limited; (c) Nishad Singh; and (d) Bankman-Fried. (*FTXT's Statement of Financial Affairs* [D.I. 977], filed March 15, 2023, pp. 40 of 64, 63 of 64, Global Notes, ¶ 60; *FTXT's Amended Statement of Financial Affairs*, filed July 31, 2023 [D.I. 2001], pp. 42 of 29, 68 of 69, Global Notes, ¶ 60; *FTXT's Second Amended Statement of Financial Affairs*, filed August 31, 2023 [D.I. 2297], pp. 42 of 82, 81 of 82, Global Notes, ¶ 62]. These sworn attestations remain unchanged as of this Reply.

Similarly, in the original Statement of Financial Affairs and two subsequent amendments filed on behalf of Maclaurin, Ms. Cilia repeatedly swore under oath that, based on her and Maclaurin's advisors review of Maclaurin's corporate documents, books, and records, Maclaurin had two directors as of the Petition Date, namely (a) Bankman-Fried and (b) Caroline Ellison. (*Maclaurin's Statement of Financial Affairs*, filed March 16, 2023 (Case No. 22-11087 JTD) [D.I. 6], pp. 40 of 50, 49 of 50, Global Notes, ¶ 60; *Maclaurin's Amended Statement of Financial Affairs*, filed July 31, 2023 (Case No. 22-11087 JTD) [D.I. 8], pp. 42 of 53, 52 of 53, Global Notes, ¶ 60; *Maclaurin's Second Amended Statement of Financial Affairs*, filed September 1, 2023 (Case No. 22-11087 JTD) [D.I. 10] pp. 42 of 59, 58 of 59, Global Notes, ¶ 62).

Until the Motions were filed, these original and amended Statements of Financial Affairs were the sworn evidence before the Court and in the record identifying the directors of FTXT and Maclaurin as of the Petition Date. The LI Parties filed their Motion in reliance on these verified averments. But now, in response to the Motion, the Debtors have disavowed their prior sworn testimony and present "*new facts*" asserting Bankman-Fried was the sole director of each of FTXT and Maclaurin at the Petition Date. Response ¶ 7.

In contradiction of their prior statements, the Debtors now state Mr. Singh resigned his directorship of FTXT by email the morning of November 10, 2022, the day prior to the date the Omnibus Corporate Authority was executed. Response, ¶ 90; Arthur Thomas resigned November 8, 2022 – three days prior (Mosley Decl. Ex. I); and Corporate & Trust Services Limited resigned February 24, 2020 – 2 years, 8 months, and 18 days prior. *Id.* This is supposedly reflected in a newly produced Registry of Directors for FTXT (Mosley Decl. Ex. I.), the provenance of which is not yet known and which has not been authenticated in any regard. There is no explanation of how this document was prepared or obtained. Nor have the Debtors identified or produced the FTXT

corporate records that were reviewed when the original and amended Statements of Financial Affairs were prepared and that identified Mr. Singh, and the others, as directors as of the Petition Date. Stated differently, the Debtors provide no explanation or evidence of what changed once their analysis and statements were challenged—the Debtors simply make new unverified contentions in an attempt to paper over the issue.

The Debtors also now state Ms. Ellison was never a director of Maclaurin. On December 5, 2023—after the Motions were filed and just before filing its Response—Maclaurin again amended its Statement of Financial Affairs. (*Maclaurin's Amended Statement of Financial Affairs*, filed December 5, 2023 [D.I. 4471]). In contrast to the prior three sworn versions of Maclaurin's Statement of Financial Affairs, this filing identified Mr. Bankman-Fried as Maclaurin's sole director as of the Petition Date. (*Id.*, p. 58 of 59). The veracity of this last amendment was again sworn to by Ms. Cilia, based on "*the latest books and records identified by the Debtors* with respect to the historical directors and controlling persons of Debtor Maclaurin Investments Ltd.*" (*Id.*, p. 42 of 59, Global Notes, ¶ 62) (emphasis added). Maclaurin states Ms. Ellison was previously identified as a director "out of an abundance of caution." Response, ¶ 73. But, again, the Debtors do not identify what corporate records were reviewed the first three times Ms. Cilia swore under penalty of perjury that Ms. Ellison was a director on the Petition Date. Like FTXT, Maclaurin produces its Registry of Directors for FTXT (Mosley Decl. Ex. E), which is of unknown origin and has not been authenticated in any manner.[6]

Rather than clearly show that FTXT and Maclaurin's bankruptcy filings were properly authorized **at the time of filing**, the Debtors' turnabout and retreat from their prior sworn

---

[6]    Under the Debtors' current version of events, two other directors of Maclaurin, Wing Man Charis Law and Luk Wai Chan, resigned as directors just two days before the Petition Date on November 9, 2022. *See* Response, ¶ 25, Mosley Decl. Ex. E.

statements creates undeniable fact issues that will need to be resolved to determine this Court's jurisdiction.

### D. The LI Parties Have Standing to Bring the Motions.

Albeit obliquely, the Debtors challenge the LI Parties' standing to seek dismissal on the ground that the bankruptcy filings were not properly authorized. The Debtors argue the LI Parties are merely creditors and defendants in a pending adversary proceeding, and in such capacities that they have no standing and cannot challenge the lack of corporate authority, and their motives are suspect (a litigation tactic only). *See, e.g.,* Response, ¶ 53 (noting the LI Parties were not shareholders of FTXT or Maclaurin with a direct stake in the case or from whom consent to file the chapter 11 petitions was required), ¶ 63 (noting the LI Parties are defendants in an adversary proceeding with questionable motives)).[7] Despite these contentions, the LI Parties have standing to seek dismissal of the Debtors' Bankruptcy cases.

First, contrary to their present assertion that the LI Parties are not shareholders, the Debtors have previously stated the LI Parties are shareholders. *See* Complaint, ¶¶ 96(ii), 118 (Adv. P. No. 23-50437 (JTD) [D.I. 1866] ("**Adversary**")). As shareholders the LI Parties have standing to challenge the propriety of the Debtors' bankruptcy filings. *In re Autumn Press, Inc.*, 20 B.R. 60, 62–63 (Bankr. D. Mass. 1982) (stockholder had standing to contest the filing of a petition on the ground of lack of corporate volition, even though stockholder was also a creditor that may benefit

---

[7]    The Debtors also state that "unlike most other cases where corporate authority issues are raised, none of the LI Parties are parties from whom consent was necessary for FTX Trading or Maclaurin to file for bankruptcy, and thus the LI Parties have no rights under corporate law that could be prejudiced by the chapter 11 filings." Response, ¶ 5. Prejudice, however, is not the test for standing to bring the Motions. Even if it were the test, the LI Parties have clearly been prejudiced because they have been sued for statutory causes of action under the Bankruptcy Code that would not exist but for the Debtors' bankruptcy cases, and if the bankruptcy cases were improperly commenced, the Debtors had no authority to assert the claims arising under the Bankruptcy Code.

monetarily from a dismissal); *In re Mid-South Bus. Assocs., LLC*, 555 B.R. at 569 (party with colorable claim of being an equity security holder is a "party in interest" under 11 U.S.C. § 1109(b) entitled to bring a motion to dismiss based on unauthorized filing).

In addition, as creditors, the LI Parties have standing to challenge the unauthorized filing under 11 U.S.C. § 1109 of the Bankruptcy Code which provides: "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, *a creditor*, an equity security holder, or any indenture trustee, *may raise and may appear and be heard on any issue in a case under this chapter*." (emphasis added.) *Accord*, *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825–26 (Bankr. N.D. Tex. 2006) (finding creditor standing under 11 U.S.C. § 1109(b) (1978)); *In re Giggles Restaurant, Inc.*, 103 B.R. 549, 555–56 (Bankr. D. N.J. 1989) (creditor had standing under 11 U.S.C. § 1109(b) to challenge unauthorized filing); *In re Bay Club Partners-472, LLC*, No. BR 14-30394-rld11, 2014 WL 1796688, at *3–4 (Bankr. D. Or. May 6, 2014) (secured creditor had standing to seek dismissal for unauthorized filing under 11 U.S.C. § 1109(b)).

Regardless, as set out above, because the Court has an independent (and continuing) obligation to confirm its subject matter jurisdiction, the standing of the party raising the issue is of no moment.

### E.     The Equitable Doctrine of Ratification Cannot Create Subject Matter Jurisdiction.

The Debtors now seek to cure their past wrongs by invoking the equitable remedy of ratification. However, "a party with unclean hands, or which has otherwise acted inequitably, should not be granted [equitable] relief." *Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386, 393 (D.

Del. 2019), *aff'd sub nom. Cipla Ltd. v. Amgen Inc.*, 778 F. App'x 135 (3d Cir. 2019). This adage bars the Debtors' ratification claim.[8]

Nonetheless, the Debtors argue in great detail that their bankruptcy filings have been ratified post-petition by shareholder and director actions. In this vein, the Debtors attach numerous documents to the Response in an effort to support such contention. *See, e.g.,* Response, ¶¶ 30, 31, 40, 41, 42. That the Debtors have gone to such great lengths to seek to ratify the bankruptcy filings is itself proof that the filings were not done correctly to begin with—why else would an action need to be subsequently ratified if it was originally authorized?

Should ratification be applicable, the Debtors bear the burden of proving that the improper filing has been ratified. *In re Grooms*, 572 B.R. 559, 570 (Bankr. W.D. Pa. 2017) (ratification is an equitable defense upon which the proponent has burden of proof) (citations omitted). To that end, the Debtors must establish that the purported ratifications are proper, or even relevant. Under appliable law they are not. Subject-matter jurisdiction can never be forfeited or waived; nor can it be conferred by agreement or consent of the parties. *In re Caterbone*, 640 F.3d at 111; *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Nederland Shipping Corp. v. United States*, 18 F.4th 115, 122, fn. 7 (3d Cir. 2021); *In re Burlington Motor Holdings, Inc.*, 242 B.R. 156, 158 (Bankr. D. Del. 1999). This black letter law undermines any argument that a lack of subject matter jurisdiction resulting from an unauthorized filing can be cured by ratification, as that allows a party to create subject matter jurisdiction by subsequent consent or agreement, where none originally existed.

---

[8]  The Debtors' past affirmations of corporate authority, made under oath but recently changed, also bar equitable remedies such as ratification. A party's "late-breaking changes in position, last-minute claims arising from long-known facts, and other 'attempt[s] at manipulation' can provide a sound basis for denying equitable relief." *Ramirez v. Collier*, 595 U.S. 411, 434 (2022).

Nonetheless, some courts outside this jurisdiction hold that an improperly-filed bankruptcy petition can be ratified by subsequent corporate action. *See, generally*, *Hager*, 108 F.3d 35. Ratification must occur, however, through *proper corporate action* by a *properly constituted board of directors*. *In re Kit Carson Home & Museum, Inc.*, 2021 WL 955416, at *4 (finding board of directors that supposedly ratified filing was improperly constituted and therefore its ratification was void); *see also Hager*, 108 F.3d at 39–40 (ratification of the unauthorized filing of a voluntary petition in bankruptcy must be done by "persons with power to have authorized it originally"). The evidence obtained in discovery and presented at the hearing on the Motions, will show that the purported ratification of the Debtors' improper bankruptcy filings, even if allowed by the law, was not ratified by properly constituted boards of directors or other proper corporate action.

### F.    The Doctrine of Laches Cannot Create Subject Matter Jurisdiction.

The Debtors argue the Motions should be denied based on the doctrine of laches. They argue the LI Parties inexcusably delayed bringing the Motions for almost a year after the cases were filed and only did so as a litigation tactic after they were named as defendants in the Adversary. Response, ¶¶ 101, 102.[9]

The Debtors' untimeliness argument is meritless because courts have a duty to consider their subject matter jurisdiction in every case and the issue may be raised at any time. *Fountain v.*

---

[9]    The Delaware case cited by the Debtors in support of their laches argument is inapposite and not even a case addressing subject matter jurisdiction based on an unauthorized filing. Rather, *In re Energy Future Holdings Corp.*, 561 B.R. 630, 645 (Bankr. D. Del. 2016) considered whether cause existed under Section 1112(b) to dismiss a case as having been filed in bad faith. The court denied the motion on the facts and stated in *dicta* that the motion could be denied as tardy under the doctrine of laches. The other cases relied on by the Debtors again fail to address subject matter jurisdiction based on an unauthorized filing. In *In re Shea & Gould*, 214 B.R. 739 (Bankr. S.D.N.Y. 1997) it was held that, legally, a partnership in dissolution was a person eligible to be a debtor under Section 109 and denied dismissal for cause under Section 1112(b); yet again, in *dicta*, the court held that even though the issue was resolved as a matter of law, the motion was also barred by laches. *In re Tishler*, 201 B.R. 608, 613 (Bankr. D. Conn. 1996) did not even address a motion to dismiss and denied the trustee's assertion of laches.

*United States*, 605 F. Supp. 2d 608, 610–11 (D. Del. 2009). Because objections to subject matter jurisdiction may be made at any time, the principles of waiver, estoppel, and/or laches do not apply. *See In re Franchise Servs. of N. Am., Inc.*, No. 1702316EE, 2018 WL 485959, (Memorandum Opinion, Ex. A thereto, at *11) (Bankr. S.D. Miss. Jan. 17, 2018), *aff'd*, 891 F.3d 198 (5th Cir. 2018); *In re Mid-South Bus. Assocs., LLC*, 555 B.R. at 570 (a challenge to the bankruptcy court's subject matter jurisdiction based on lack of authority to file may be raised at any time and cannot be waived). As noted by the Fifth Circuit in *In re Delta Starr Broadcasting, L.L.C.*, "[a]ny suit lacking subject matter jurisdiction must be dismissed regardless of how long a case has been pending." 422 F. App'x 362, 368 (5th Cir. 2011) (addressing dismissal of a bankruptcy case for lack of corporate authority).

Bankruptcy courts often cite Section 105 of the Bankruptcy Code as the source of their power to invoke equitable principles. Section 105 of the Bankruptcy Code does not, however, grant a court additional jurisdiction that it does not already possess. It simply allows a court to protect the jurisdiction it has. *In re S.T.R. Corp.*, 66 B.R. 49, 51 (Bankr. N.D. Ohio 1986); *In re Professional Sales Corp.,* 56 B.R. 753, 762 (Bankr. N.D. Ill.1985). Therefore, even if an equitable concept such as laches could apply, they cannot be used to expand any court's jurisdiction. *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004) (although Section 105 of the Bankruptcy Code gives the court equitable powers, it "does not provide an independent source of federal subject matter jurisdiction").

Finally, even if laches was relevant to subject matter jurisdiction, it would not bar the Motions because the LI Parties did not inequitably delay filing it. They did not participate in the Debtors' bankruptcy cases in any way from inception in November 2022; rather, they only became active participants on July 12, 2023—the date when they were named defendants in the

Adversary.[10] Only after the Adversary was filed did the LI Parties actively investigate the circumstances giving rise to the Debtors' bankruptcy cases, and based on that investigation filed the Motions on October 27, 2023. The three-month period from the time they were involuntarily made active participants in the Debtors' bankruptcy cases to filing of the Motions is not an inequitable or extraordinary delay. In such a situation, the doctrine of laches does not apply. *See Matter of Giggles Rest., Inc.*, 103 B.R. at 555 (laches did not preclude creditor from seeking dismissal of unauthorized bankruptcy case where grounds for dismissal motion were learned in recently completed discovery in related proceeding.)

Any prejudice here (there is none) is of the Debtors' own making since they created the issues by their wrongful conduct in filing the Debtors' bankruptcy cases without proper authority. Since they created the problems by the imprudent filings; and, thus are before the Court with unclean hands, they should not be granted any equitable relief. *Cipla,* 386 F. Supp. 3d at 393.

### G.     Costs of Administration Do Not Create Subject Matter Jurisdiction.

The Debtors and their counsel tout the success of their efforts in the chapter 11 cases, stating they "have made deliberate and methodical progress towards confirmation of a viable consensual plan of reorganization and the return of value to their customer and other creditor victims," which the Debtors erroneously assert the LI Parties are trying to undermine. Response, ¶ 1. They further assert "the filing of these Chapter 11 Cases pursuant to the Omnibus Authority has been overwhelmingly in the interests of global creditors, converting what could easily have been a total loss for stakeholders into the preservation and recovery of property, which as of

---

[10]  Although the LI Parties were aware of the Debtors' bankruptcy case previously and filed proofs of claims less than two weeks before being sued, doing so was not "active participation" in the bankruptcy cases, but merely ministerial to comply with the bar date and not be time barred from asserting their claims.

September 2023, exceeded $7 billion in distributable value and continues to increase." *Id.*, ¶ 5. Moreover, the Debtors argue the "countless hours" spent by all stakeholders administering these jointly administered cases to the precipice of reorganization would "be lost" if the cases are dismissed. *Id.*, ¶ 59.

The response to these self-serving statements is simple: subject matter jurisdiction is non-waivable and cannot be created by consent of the parties. Any lost time and costs are due to the Debtors and their counsel; they are the ones that failed to follow proper corporate protocols to obtain authority to file the Debtors' bankruptcy cases. And when they did file those bankruptcy cases, the Debtors and their officers, as well as their counsel, were fiduciaries—unlike the LI Parties then or now by their Motions—with the duty to file the Debtors' bankruptcy cases correctly, and not take short cuts.

The LI Parties acknowledge the Debtors' bankruptcy cases are well under way, and that, depending on its terms, a confirmed plan of reorganization may be in the interests of stakeholders. But any plan must be approved by a court that is sure of its jurisdiction. It must be done right to protect the integrity of the process. The right and better course of action is to dismiss the Debtors' bankruptcy cases as improperly filed. Then, either the Debtors can promptly and properly refile them, or unsecured creditors of the Debtors can file involuntary petitions. Either way, the Court can then be assured of its subject matter jurisdiction. Administration of the Debtors' bankruptcy cases can then continue with minimal interruption and beneficial services provided to date will not be lost. The alternative is the jurisdiction issue may be appealed, and if it is found that subject matter jurisdiction is lacking, all efforts going forward will be for naught—it is better to cure the defect now and obviate the issue.

**H.    <u>Revocation.</u>**

Bankman-Fried publicly stated that within minutes of signing the Omnibus Authorization, he instructed his lawyers to rescind it. The Debtors' counsel refutes this ever occurred. Discovery regarding this possibly dispositive issue needs to occur in advance of the hearing on the Motion.

## IV.    CONCLUSION

The conduct of the Debtors' bankruptcy cases "not only should be right but must seem right." *In re Ira Haupt & Co.,* 361 F.2d at 168. Here, based on (a) the admitted failure to obtain appropriate authority to file the Debtors' bankruptcy cases and (b) then backtracking from statements sworn to and subject to the penalty of perjury in attempt to cure the filings original defects, these cases are not right and do not seem right under the principles of *Price*. For the reasons stated here, in the Motions, and will be set out at the hearing on the Motions, the Debtors' bankruptcy cases must be dismissed for lack of subject matter jurisdiction as a result of the clear lack of corporate authority.

*[Signature Page Immediately Follows]*

Dated:  January 5, 2024
       Wilmington, Delaware

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:    ljones@pszjlaw.com
        pkeane@pszjlaw.com

THE DALEY LAW FIRM LLC
Darrell Daley (admitted *pro hac vice*)
Samantha Neal (admitted *pro hac vice*)
4845 Pearl East Circle, Suite 101
Boulder, Colorado 80301
Telephone: (303) 479-3500
Email: Darrell@daleylawyers.com
       Samantha@daleylawyers.com

- and -

MORRISON COHEN LLP
Joseph T. Moldovan (admitted *pro hac vice*)
Heath D. Rosenblat (admitted *pro hac vice*)
Jason P. Gottlieb (admitted *pro hac vice*)
Michael Mix (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: jmoldovan@morrisoncohen.com
       hrosenblat@morrisoncohen.com
       jgottlieb@morrisoncohen.com
       mmix@morrisoncohen.com

*Counsel to Lorem Ipsum UG, Patrick Gruhn,*
*and Robin Matzke*