

RECEIVED
2024 JAN -8 PM 12: 27
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Arkgrow Pte Ltd
3 Fraser Street, #04-23A
Duo Tower, Singapore 189352
team@arkgrow.com
www.arkgrow.com
ACRA No.: 202206190D

WITHOUT PREJUDICE

Honorable Judge John Dorsey
824 N Market St
5th Floor, Courtroom 5
Wilmington, DE 19801
302-533-3169

1 Jan 2024

**Re: OBJECTION to Motion of Debtors to estimate claims based on digital assets, Case No. 22-11068 (JTD), Hearing Date: January 25, 2024 at 10:00 a.m. (ET)**

Dear Judge Dorsey,

I hope this letter finds you well. We are corporate and individual creditors in the FTX.com bankruptcy case, with aggregate claims of an estimated US$6-9 million in digital assets and fiat (aggregated between the corporate FTX.com account for our Singapore incorporated investment entity and each of our individual FTX.com accounts). We are submitting this letter of support from ourselves and on behalf of Arkgrow Pte Ltd (the "**Company**"), corporate creditor, in objection of the Debtors' and UCC's Joint Motion.

Our reasons are as follows:

**1. The Motion by Debtors ignores the express terms of the FTX Terms of Service (the "ToS")** Clause 8.2.6 of the ToS expressly states as follows:

> " *(A) Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. As the owner of Digital Assets in your Account, you shall bear all risk of loss of such*

> *Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account.*
> *(B) None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading."*

Based on the clear terms of the ToS, we and many customers had dealt with the exchange on the basis that our digital assets held on the exchange remained our property (which are not generally available for creditor claims or subject to State claim), so they should not be mingled together with other assets of the Debtors (which are generally available for creditor claims).

This is in contrast with other high profile bankruptcies in the space (e.g. notably Celsius) where the digital assets were a loan to the platform. Based on the digital assets held on the exchange were not loaned to the exchange, but rather customers should be entitled to claim ownership of their digital assets.

At the crux of the objection to Debtor's Motion regarding customer assets, there is a very important question of law which remains undetermined: Given the express language of the ToS whether customer assets form part of the Debtor's estate or whether customer assets should remain owned by customers and/or subject to a trust in favour of customers. The resulting remedies and application of bankruptcy law would naturally follow the determination of this critical question of law.

As far as we are aware, the Debtors have not applied to court for a determination on this question of law, nor have any arguments for either position been openly heard before a court. We are only aware that there were private negotiations between certain customers/creditors and Debtors regarding this critical question of law, in respect of which the Debtors had separately settled out of court.

If the court finds that customer assets do not form part of the Debtor's estate, then customer assets should be returned in the same form in which they were held.

**2. Ad Hoc Committee (AHC) does not represent the interests of customer claimants with claims denominated in specific digital assets.**

Based on public information and private knowledge, the AHC represents claimants where ~40% of the claimants are not customers, but rather opportunistic investors who have purchased customer and non-customer claims. For these group of claimants, it would favor them to have claims valued at the time of the petition, because this would effectively mean that customer claimants with claims denominated in specific digital assets (which have now increased in price) would be robbed to reimburse the other categories of claimants and creditors.

It is not in the interest of claimants represented by AHC (and by extension, AHC) to fully and fairly engage with the court and the Debtors to seek clarity on the question of law of whether customer assets form part of the Debtor's estate.

As mentioned above, I am aware that there were certain private negotiations between claimants represented by AHC regarding this critical question of law, which were not openly heard before a court. This raises serious concerns that there is indeed a triable issue to be considered, otherwise the Debtors would not have settled the claim so swiftly and privately.

Despite spending hundreds of millions (primarily from customer funds) on legal and professional fees, the Debtors are still unable to achieve fairness for customer claimants, who should not in any circumstances be grouped into the same class as other creditors.

Due to the unique circumstances of the Debtor's business and the cryptocurrency industry (millions of "retail" customers), the profile of customer claimants tends to be scattered, making it difficult for claimants to organise themselves to present formal arguments before the court. Customer claimants have already been victimized by the actions of Sam Bankman-Fried. Please do not let us be victimized again by non-customer commercial interests or negligent professional advice guiding the Debtor's actions, just because there is no specific ad hoc committee formed to addressed these important issues.

**3. Justice must not only be done, but must also be seen to be done:**
**- Debtor's Motion to value customer claims at the time of the petition would unfairly prejudice a significant class of customers (which have their claims denominated in specific digital assets) and unfairly give the debtors and non-customer creditors preferential treatment in this insolvency case**

As we are each customer creditors, with a significant sized claim (please see above) primarily denominated in specific digital assets. As digital asset prices have increased greatly since the time of the original bankruptcy petition, the Debtor's Motion to value customer claims at the time of the petition would unfairly prejudice a significant class of customers (which have their claims denominated in specific digital assets) and unfairly give the debtors and non-customer creditors preferential treatment in this insolvency case .

In particular the claim that each Bitcoin ("**BTC**") is worth ~$16,871 flies against all commercial/trading/market sense or sentiment by a reasonable person. Any ordinary retail consumer can purchase and sell BTC on the open market today. A poll of any investment advisor or banker on Wall Street would confirm that a fair valuation of any asset should prioritize comparable trading assets (which would be the current over-the-counter price) and not an academic "valuation" by "experts". The same applies to the other top ranked valuable digital assets like Ethereum or Solana tradeable on digital exchanges (eg. Coinbase).

At the risk of being repetitive, the result of granting the motion without further analysis or discussion with creditors is manifest injustice and grossly unequitable and unfair to customer creditors who signed up to the FTX.com ToS for holding digital assets (vs USD).

While this letter represents our objection to the aforementioned Motion by Debtors, having been in contact with other customer claimants with claims totaling >$500 million (at petition date prices), we know our view is not a lone objection.

For the reasons above, we respectfully request the court to deny the Motion, and immediately call for a determination of the critical question of law raised. We trust that you will consider these objections seriously in order to uphold fairness and integrity in the bankruptcy proceedings.

Thank you for your consideration.

Thank you,

Chong Hon Yuan

SHAREHOLDER/DIRECTOR OF THE COMPANY

Lim Kim Seng

SHAREHOLDER/DIRECTOR OF THE COMPANY

c.c.: Legal Counsel to Arkgrow Pte Ltd



FROM: (718) 357-3538
SHIPPING AND DELIVERY INC

19202 NORTHERN BLVD
FLUSHING NY 11358
US

TO HONORABLE JUDGE JOHN DORSEY

824 N MARKET ST
5TH FLOOR COURTROOM 5
WILMINGTON DE 19801
(302) 533-3169

INV
PO                                      REF
                    DEPT


 FedEx Ground
 G

TRK# 7746 8691 7481

19801

9632 0019 6 (000 000 0000) 0 00 7746 8691 7481


 U.S.M. X-RAY

255-5020
0197  MON 01/08 03:30 PM 1D 4894107
HONORABLE JUDGE JOHN DORSEY
824 N MARKET ST
5TH FLOOR COURTROOM 5
WILMINGTON DE
ETP: 3      SP-PPD:100.Y
9632001906780091992300774686917481
19801-3024-99    G

Align top of FedEx Express® shipping