## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 22-11068 (JTD) |
| FTX TRADING LTD., *et al.*, | (Jointly Administered) |
| Debtors.[1] | **Obj. Deadline: January 24, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: To Be Determined** |

## MOTION OF MARTHA LAMBRIANOU TO DISMISS
## BANKRUPTCY CASE OF FTX EU LTD.

Martha Lambrianou, in her capacity as the sole director of FTX EU Ltd. ("**FTX EU**" or the "**Company**") and as an individual creditor of FTX EU ("**Lambrianou**"), moves (the "**Motion**") before the Court, pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("**Bankruptcy Code**") and *Price v. Gurney*, 324 U.S. 100 (1945), for entry of an order dismissing the bankruptcy case of FTX EU (Case No. 22-11166-JTD), on the basis that the bankruptcy filing was not properly authorized, which prevents this Court from having subject matter jurisdiction over this chapter 11 proceeding.[2]

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in the above-captioned jointly-administered chapter 11 cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] This Motion is only directed to Case No. 22-11166 (JTD) and not to any other jointly administered case.

## SUMMARY OF ARGUMENT

1.     On November 11, 2022 ("**Petition Date**"), FTX Trading Ltd. and its affiliated debtors (the "**FTX Debtors**")[3] each filed a voluntary petition for relief under the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware ("**Court**"). [See Case No. 22-22-11068-JTD, D.I. 1].

2.     Among the petitions filed on the Petition Date was the unauthorized and improperly filed voluntary chapter 11 petition for FTX EU (the "**Petition**").  The Petition was signed by: (a) John J. Ray III ("**Ray**"), as the purported Chief Executive Officer of FTX EU; and (b) Adam G. Landis of the law firm Landis Rath & Cobb LLP ("**Landis**"), as the purported attorney for FTX EU. (*Id.*).

3.     FTX EU is a corporation duly formed and registered in Cyprus.

4.     Lambrianou currently is the sole director of FTX EU and an individual creditor thereof by way of her personal customer account with FTX EU.

5.     To determine whether Ray had the requisite authority to file the Petition, the Court must look to the formation and governing documents for FTX EU and applicable Cyprus law. *Price v. Gurney*, 324 U.S. 100 (1945); *see*, *also*, *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720 (Bankr. D. Mass. 1994) ("the authority to file a bankruptcy petition depends upon the corporate documents and state law").

6.     Under FTX EU's governing documents and applicable non-bankruptcy law (*i.e.*, Cyprus law), Ray ***did not*** have the requisite authority to file the Petition for FTX EU.

---

[3] The FTX Debtors exclude FTX EU and FTX Europe AG.

7.       Accordingly, pursuant to *Price v. Gurney*, 324 U.S. 100 (1945) and section 1112(b) of the Bankruptcy Code, FTX EU's chapter 11 proceeding must be dismissed.

8.       The FTX Debtors, in fact, previously represented to Lambrianou that FTX EU's bankruptcy case would be voluntarily dismissed. Instead of doing so, however, the FTX Debtors now have filed a motion for entry of an order, *inter alia*, authorizing and approving an insider sale of the shares of FTX EU by FTX Europe AG to FTX Trading Ltd. [Case No. 22-11068-JTD; D.I. 5378].  The newly filed sale motion is an attempt by the FTX Debtors to sidestep the threshold issues of whether the FTX Debtors' bankruptcy filings, including the FTX EU bankruptcy case, were properly authorized and, correspondingly, whether the Court has jurisdiction over the above-captioned bankruptcy cases. (Lambrianou Dec., ¶ 19).

## JURISDICTION

9.       This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 to determine whether the filing of the bankruptcy case was proper. *In re Council of Unit Owners of the 100 Harborview Drive Condo.*, 552 B.R. 84, 86 (Bankr. D. Md. 2016); *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 819 (Bankr. S.D. Ohio 2010); *In re Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 149 (Bankr. M.D. Fla. 1983). However, once it is determined that the FTX EU case was filed without proper authority, this Court loses jurisdiction and must dismiss the case. *Price v. Gurney*, 324 U.S. 100, 106 (1945); *see also*, *In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) ("a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of 'cause' under § 1112(b), because if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case").

10.     The statutory basis for the relief requested by this Motion is section 1112(b) of the Bankruptcy Code.

## STATEMENT OF FACTS APPLICABLE TO REQUESTED RELIEF

*A.     The Omnibus Corporate Authority*

11.     On the Petition Date, FTX EU filed its unauthorized Petition for relief under Chapter 11 of the Bankruptcy Code with this Court. [Case No. 22-11166-JTD, D.I. 1]. As set out above, the Petition was signed by Ray as the alleged CEO and Landis as purposed counsel for FTX EU. (*Id*.).

12.     Ray purports to have had authority to file the Petition by virtue of an *Omnibus Corporate Authority*, dated November 10, 2022 ("**Omnibus Authority**"), a copy of which was filed with the Petition as required by Rule 1002-1(b)[4] of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("**Local Rules**"). [Case No. 22-11075-JTD, D.I. 1, page 12 of 23].

13.     The Omnibus Authority states in relevant part:

I, Samuel Benjamin Bankman-Fried, *as controlling owner, director, officer, manager or other authorized person with respect to* West Realm Shires Inc., Paper Bird Inc., Hilltop Technology Services LLC, Cedar Grove Technologies Services, Ltd., FTX Trading Ltd., Alameda Research LLC And Clifton Bay Investments LLC (the "Top Companies"), *and all of their directly and indirectly owned subsidiaries* (together with the Top Companies, the "FTX Group"), hereby *authorize, instruct and consent to the following corporate actions* with respect to all members of the FTX Group:

(i)      *the appointment of John J. Ray III ("the CEO") as Chief Executive Officer with plenary authority to exercise all powers and authority capable of delegation to an officer under applicable law, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of*

---

[4]    Local Rule 1002-1(b) provides: "In a voluntary case filed for a non-individual debtor, there shall be filed on the petition date a resolution or other document authorizing the commencement of the bankruptcy case executed or otherwise approved by the person, entity, or governing body, as applicable, whose approval is required for the commencement of a bankruptcy case under applicable law." Del. Bankr. L.R. 1002-1(b).

*the United States Code* and any restructuring and insolvency-related proceeding that may be appropriate or necessary, or may be commenced by third parties, with respect to all members of the FTX Group;

Omnibus Authority (emphasis added).

14.    The Omnibus Authority was signed, electronically, only by Samuel Bankman-Fried ("**Bankman-Fried**").

15.    FTX EU is a wholly owned subsidiary of FTX Europe AG, which, in turn, is wholly owned by FTX Trading Ltd., one of the Top Companies referenced in the Omnibus Authority. *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* ("**Ray Dec.**") [Case No. 22-11068-JTD, D.I. 24, page 30 of 30].

16.    Pursuant to the Omnibus Authority, Ray claims to have accepted the position as Chief Executive Officer of the debtors in the early morning hours of November 11, 2022. (*Id.*, ¶ 1). Ray understood that by the Omnibus Authority he "was delegated all corporate powers and authority under applicable law, including the power to appoint independent directors and commence these Chapter 11 Cases on an emergency basis." (*Id.*, ¶ 44).

17.    The Omnibus Authority was drafted by attorney Andrew Dietderich of Sullivan & Cromwell. *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-In-Possession Nunc Pro Tunc to The Petition Date,* ("**Dieterich Supp. Dec.**") [Case No. 22-11068-JTD, D.I. 510, ¶ 23].

18.    Dietderich's declaration raises questions regarding who was directing Sullivan & Cromwell's ("**FTX Debtors' Counsel**") pre-bankruptcy services for FTX EU. Ryne Miller ("**Miller**"), a former Sullivan & Crowell partner, was the general counsel of FTX US. (Dieterich Supp. Dec., ¶ 8). As general counsel for FTX US, Miller had no role with any of the foreign

businesses such as FTX EU. Can Sun was the general counsel for the international businesses, including FTX EU. (*Id.*). According to the FTX Debtors' Counsel, it was at Can Sun's request on November 8, 2022, that FTX Debtors' Counsel first started preparing a bankruptcy filing for FTX EU. (*Id.*, ¶¶ 10, 11). Can Sun was not a director of FTX EU, and he was not acting at the behest of FTX EU's board of directors. Moreover, Can Sun resigned as general counsel the evening of November 8, 2022 (*id.*, ¶ 15)—three (3) days before the Petition Date—and could not provide any further direction to FTX Debtors' Counsel regarding FTX EU after his resignation.

19.     It appears that after Can Sun resigned, FTX Debtors' Counsel started taking direction as to international entities from (a) Miller, the general counsel for FTX US, who had no affiliation or role with any of the international entities, such as FTX EU, but nonetheless declared he was "in charge," and (b) Tim Wilson ("**Wilson**"), a third year attorney formerly associated with FTX Debtors' Counsel, who previously reported to Can Sun, and who was, according to Dietderich, then the "senior legal officer of FTX International." (*Id.*, ¶ 15). Yet, Wilson was employed by FTX Ventures, Ltd., which is not even in the same organizational silo as FTX EU (Ray Dec., ¶ 9); he was not an officer or director of FTX EU and could not and was not acting at the behest of FTX EU's board of directors.

20.     The Amended Statement of Financial Affairs for FTX EU, filed September 1, 2023, states that FTX EU had four (4) directors as of the Petition Date: (a) Martha Lambrianou, (b) Andreas Georgaki; (c) Marios Athinodorou; and (d) Theodoros Louca. (FTX EU's *Amended Statement of Financial Affairs* [Case No. 22-11166-JTD, D.I. 14, Question 28, page 55 of 55]. The Debtors state this information came from FTX EU's available corporate documents and books and records.[5]

---

[5]     *See* Global Notes filed with the *Amended Statement of Financial Affairs* [Case No. 22-11166-JTD, D.I. 14, ¶ 62].

21.     FTX EU, however, had five (5) directors on the Petition Date: (a) Martha Lambrianou, (b) Andreas Georgaki; (c) Marios Athinodorou; (d) Theodoros Louca; and (e) Samuel Bankman-Fried. (*Appendix to Motion of Martha Lambrianou to Dismiss Bankruptcy Case of FTX EU Ltd.* (the "**Appendix**"), Certificate of Directors, **Tab 2**).

22.     FTX EU's pre-petition directors did not authorize the filing of the Petition, either at a meeting or by consent in lieu of a meeting. (*Declaration of Martha Lambrianou in Support of Motion of Martha Lambrianou to Dismiss Bankruptcy Case of FTX EU Ltd.* ("**Lambrianou Dec.**"), ¶ 8, **Tab 3** to Appendix). In fact, FTX Debtors' Counsel did not attempt to hold a board meeting for any of the Top Companies (as defined in the Omnibus Authority), or any of their direct or in-direct subsidiaries, such as FTX EU. Nor is there any indication FTX Debtors' Counsel reviewed applicable Cyprus law or the controlling corporate documents of FTX EU before filing the Petition.

23.     As Dietderich states, he recommended and prepared the Omnibus Authority because "there was not time to hold over 100 board meetings for companies whose records were both incomplete and unfamiliar to [FTX Debtors' Counsel]." (Dietderich Supp. Dec., ¶ 23).

24.     As described by Dietderich, the Omnibus Authority "appointed Mr. Ray CEO of all of the Debtors, transferred to him all of Mr. Bankman-Fried's corporate authority and authorized Mr. Ray to decide if and when the Debtors should commence chapter 11 proceedings." (Dietderich Supp. Dec., ¶ 23).

25.     After his appointment as CEO, Ray made the decision to file the Petition—without even contacting FTX EU's board of directors, let alone obtaining their permission. (Dietderich Supp. Dec., ¶ 5). Authorizing the chapter 11 filings of the FTX Debtors, including FTX EU, was, according to Ray, his first "official act" as their purported CEO. (Ray Dec., ¶ 2).

26.     After the Petition Date, the FTX Debtors took steps to pressure Lambrianou into ratifying the chapter 11 filing for FTX EU.  Among those actions, the FTX Debtors had reached out to FTX EU's banking partners and caused the freezing of the accounts in Cyprus. Lambrianou sent letters addressed to the banks asking them to secure and safeguard accounts, especially client accounts, and rejected any request to change Authorized bank Signatories, reminding them of the legal procedures needed to be followed for any change of Authorized Signatories. As a director of FTX EU and in an effort to fulfill her fiduciary duties, Lambrianou was forced to make any requests for critical payments (including for employee payroll) to the FTX Debtors' professionals. Among those requests was an urgent payment to Cyprus local counsel, which was to provide FTX EU with a legal opinion of the non-recognition of chapter 11 filing in Cyprus, as requested by the Cyprus Securities and Exchange Commission ("**CySEC**"). The payment was never processed by the FTX Debtors, even after numerous requests for an urgent payout. (Lambrianou Dec., ¶ 13).

27.     In February 2023 – nearly three months after the Petition Date – FTX Debtors' Counsel met with Lambrianou and Marios Athinodorou, FTX EU's other director at the time, to make a presentation on the US bankruptcy process. Lambrianou's understanding at the time was that the directors of FTX EU continued to manage the Company, and board of directors had authority to ratify the bankruptcy filing.  (Lambrianou Dec., ¶ 14).

28.     After that presentation, FTX EU's board of directors declined to ratify the chapter 11 filing. The directors believed doing so would have been improper and in violation of Cyprus law. (Lambrianou Dec., ¶ 15).

29.     In July 2023, the FTX Debtors requested (a) that the board of directors approve the payment of approximately $1.2 million to the FTX Debtors, which allegedly corresponded to payments made by the FTX Debtors for the operational expenses of FTX EU following the

commencement of the chapter 11 cases (while FTX EU's bank accounts were frozen), and (b) to undertake to pay any additional administrative expenses and other disbursements paid by the FTX Debtors in relation to the chapter 11 cases.  The payments were to be in exchange for the FTX Debtors to continue supporting FTX EU's ongoing operational expenses – notwithstanding the fact that FTX EU never engaged FTX Debtor's Counsel and never authorized a chapter 11 filing. (Lambrianou Dec., ¶ 16).

30.     Of course, Lambrianou declined to accept those onerous and wholly unsupportable terms, as Lambrianou believed doing so would itself be a breach of her fiduciary duties to FTX EU and its creditors. As a result, the FTX Debtors informed FTX EU that the FTX Debtors would cease all payments on behalf of FTX EU and that FTX EU would be removed from chapter 11 and go into liquidation.  (Lambrianou Dec., ¶ 17).

31.     In August 2023, following the publication of an article discussing the FTX Debtors' intention cutoff financial support to FTX EU and dismiss FTX EU's bankruptcy case, the FTX Debtors, again, improperly attempted to impose pressure on Lambrianou by conducting a meeting in which the FTX Debtors required Lambrianou to attend alone, without other FTX EU personnel or counsel.  (Lambrianou Dec., ¶ 18).

32.     FTX EU's directors have consistently objected to FTX EU being a party to these chapter 11 cases. (*Id.*, ¶ 15). Although the FTX Debtors previously represented that they would dismiss FTX EU as a debtor, FTX EU's bankruptcy case has not been voluntarily dismissed. (*Id.*, ¶ 17). Thus, Lambrianou is forced to bring the instant Motion. (*Id.*).

33.     FTX EU's unauthorized chapter 11 proceeding must be dismissed.

**B.     *FTX EU's Governing Corporate Documents***

34.     FTX EU is a corporation formed and registered in Cyprus. (Ray Dec., page 30 of 30; Memorandum of Association (the "**MOA**") and Articles of Association (the "**Articles**") of K-DNA Financial Services Ltd.,[6] **Tab 1** to Appendix; *Declaration of Lambros Soteriou in Support of Motion of Martha Lambrianou to Dismiss Bankruptcy Case of FTX EU Ltd.* ("**Soteriuo Dec.**"), ¶¶ 3-6, 10, **Tab 4** to Appendix).

35.     FTX EU's MOA and Articles, together with the Cyprus Company Law (Chapter 113) and other Cyprus laws discussed below, set forth the governing rules and regulations of FTX EU. The MOA and Articles were in effect as of the Petition Date. (*Id.*, ¶¶ 3-6, 9).

36.     Under the Articles, the affairs of FTX EU are to be managed by the Board of Directors. (*Id.*, ¶11; Articles, Sec. 86, 88).

37.     The directors are responsible for deciding all matters and exercising all powers of the company not reserved by law or the Articles to the company in general meetings. (*Id.*, ¶ 14; Articles, Sec. 88.)

38.     The sole member of FTX EU – FTX Europe AG – may only exercise its authorities in general meetings according to Cyprus law, and provided that the decisions taken by the sole member at general meetings are recorded in the form of resolution or written memorandum. (*Id.*, ¶ 11; Articles, Sec. 86).

39.     CySEC assessment is required for the appointment of any new director or senior level management for FTX EU. *See* Section 10 of the Investment Services and Activities and Regulated Markets Law (Law 87(I)/2017). (*Id.*, ¶ 12).

40.     For the FTX EU directors to exercise their powers the directors must either (a) hold a duly convened meeting of the then-current directors, which shall take place in Cyprus, and obtain

---

[6] FTX EU was originally named K-DNA Financial Services Ltd. but later changed its name to FTX EU Ltd.

approval by a majority vote (*id.*, ¶ 15; Articles, Sec. 100, 101); or (b) execute a written resolution in lieu of a meeting, in writing and signed by all directors. (*Id.*, ¶ 15; Articles, Sec. 108.)

41.     FTX EU had five (5) directors as of the Petition Date: (a) Martha Lambrianou, (b) Andreas Georgaki; (c) Marios Athinodorou; (d) Theodoros Louca; and (e) Samuel Bankman-Fried. (Certificate of Directors, **Tab 2** to Appendix).

42.     The board could only act (a) at a duly noticed and convened meeting in Cyprus where such action is taken by a majority of the directors, or (b) by a written resolution signed by all five directors. (*Id.*, ¶ 16; Articles, Sec. 100, 101, 108).

## ARGUMENT

For the reasons and authority set out more fully below, the Court here lacks subject matter jurisdiction over the chapter 11 proceeding of FTX EU.

### A.     *Controlling Principles of Law*

43.     The "controlling legal principles are not complex. A party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, No. 10-11867 KG, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011). As stated by the U.S. Supreme Court:  if a court "finds that those who purport to act on behalf of the corporation have not been granted ***authority by local law*** to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945) (emphasis added).

44.     The Supreme Court noted this was a jurisdictional issue because "nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." *Id.*, at 107; *see also, e.g.*, *In re Blue Whale Studios, LLC*, 644 B.R. 252, 259

(Bankr. N.D. Ga. 2022) ("it is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed"); *In re 3P Hightstown, LLC*, 631 B.R. 205, 209–10 (Bankr. D.N.J. 2021) (same); *In re ComScape Telecommunications, Inc.,* 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) (same; dismissing multiple Chapter 11 bankruptcy cases where director who filed petitions was without authority to do so); *Matter of Phillips*, 966 F.2d 926, 934 (5th Cir. 1992) (collecting cases); *In re Kit Carson Home & Museum, Inc.*, No. 20-12130-T11, 2021 WL 955416, at *3–5 (Bankr. D.N.M. Mar. 12, 2021) (collecting cases).

45.     The validity of the filing of the bankruptcy petition is "fully dependent" on whether the resolution authorizing that filing was made by a "duly elected, properly constituted board of directors." *Polish-Am. Citizen's Club Inc.*, No. BAP MS 22-033, 2023 WL 4259266, at *9 (B.A.P. 1st Cir. June 27, 2023) (bankruptcy filing that was not authorized by a duly elected board of directors was properly dismissed); s*ee also*, *ComScape Telecommunications,* 423 B.R. at 832 ("A bankruptcy filing is unauthorized if the board of directors purporting to authorize it was not lawfully constituted and acting lawfully in so doing.").

46.     A bankruptcy case filed without proper authorization ***must be dismissed***. This includes a petition filed by an improper number of directors: if a board of directors has multiple members, a single director has no authority to file a bankruptcy petition on behalf of the corporation. *See In re Moni–Stat,* 84 B.R. at 757 ("Simply put, there must be a majority vote of a quorum of the board of directors to file a corporate bankruptcy . . . ."); *In re Runaway II,* 159 B.R. at 537 (dismissing bankruptcy case filed by one of two directors, as not having been approved by a majority as was required under applicable law).

47.    Likewise, "[a]n officer or an individual director cannot properly file a petition for the voluntary bankruptcy of a corporation unless authorized by the board of directors." *In re ComScape Telecommunications*, 423 B.R. at 832, citing 15A Fletcher Cyc. Corp. § 7631.39 (2009); *see also*, *In re Al–Wyn Food Distributors, Inc.*, 8 B.R. 42, 43 (Bankr. M.D. Fla.1980) (president of corporation had no authority to file chapter 11 petition; because the filing was not approved by a resolution of the board of directors, the president's action was a legal nullity).[7]

48.    In determining authority to file a bankruptcy petition the Court should look to both the local law and the entity's governing documents. *Matter of Quarter Moon Livestock Co., Inc.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990) (the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law); *In re FKF Madison Park Grp. Owner, supra* (looking to LLC operating agreement).

**B.    Determination and Application of Local Law**

49.    Reliance on local law to determine authority to file a bankruptcy petition is an application of the internal affairs doctrine. "Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs." *In re USA Detergents, Inc.*, 418 B.R. 533, 540 (Bankr. D. Del. 2009), citing *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Here, the jurisdiction of FTX EU's incorporation is Cyprus, and thus Cyprus law applies to governance matters for FTX EU. *See, e.g.*, *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 66 (D. Mass. 2021) (internal affairs doctrine mandated application of law of

---

[7]    That officers may manage the affairs of a corporation does not mean they can decide to place the company in bankruptcy. "There is no question, although it is not expressly spelled out, that management of the affairs of a corporation was not meant to include a right to file a Petition for Relief under any of the operating Chapters of the Bankruptcy Code. The business of this corporation, according to the Charter is to engage in general sales, selling, at wholesale or retail, all varieties of commodities, meats, fruits, vegetables and other food items, nursery plants, garden plants and general merchandise and not the filing of a Petition for Relief under Chapter 11." *Matter of Brandon Farmer's Mkt., Inc.*, 34 B.R. 148, 150–51 (Bankr. M.D. Fla. 1983).

foreign entity's formation to matters of corporate governance, including matters particular to the "relationships among or between [the company] and its current officers, directors, and shareholders.").

50.    Accordingly, to evaluate whether Ray had the requisite authority to decide to file the Petition and, in fact, to actually file it, the Court must first determine the applicable Cyprus law. Rule 44.1 of the Federal Rules of Civil Procedure ("**Federal Rule**"), made applicable in these chapter 11 cases through Rule 9017 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), sets out that when "determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. Proc. 44.1; Fed. R. Bankr. Proc. 9017. Moreover, under Federal Rule 44.1 (Bankruptcy Rule 9017), the Court's determination here must be treated as a ruling on a question of law. *Id.*

51.    Relevant information on foreign law may be provided by expert witnesses familiar with the applicable foreign law. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016) ("[T]he testimony of foreign legal experts, together with extracts of foreign legal materials, 'has been and will likely continue to be the basic mode' of determining foreign law") (citation omitted); *Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Off. of Am. Corp.*, 20 F.3d 1224, 1239 (3d Cir. 1994). However, in determining foreign law, a court may consider any relevant material, whether or not submitted by a party; Federal Rule 44.1 (Bankruptcy Rule 9017) "provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) (internal citations omitted).

52.    Because determination of foreign law under Federal Rule 44.1 (Bankruptcy Rule 9017) is a question of law, courts may consider relevant materials beyond the pleadings in ruling on a motion to dismiss when the claim depends on a determination of foreign law. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 948–49 (9th Cir. 2018); *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016); *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 1:18-CV-679-RP, 2019 WL 1925499, at *3 (W.D. Tex. Apr. 30, 2019).

53.    The Omnibus Authority made clear that it was subject to and only valid as allowed by applicable law. For instance, Ray was appointed CEO but only "with plenary authority to exercise all powers and authority *capable of delegation to an officer under applicable law*, including without limitation in connection with a voluntary filing for protection from creditors under Title 11 of the United States Code." Omnibus Authority (emphasis added). Similarly, the power given to Ray to appoint directors to FTX EU was only "*to the extent applicable law permits*." *Id.* (emphasis added). Ray also understood that through the Omnibus Authority he was only "delegated all corporate powers and authority *under applicable law*." (Ray Dec., ¶ 44) (emphasis added). Here, the applicable law is unquestionably the law of Cyprus.[8]

54.    By its own terms, the Omnibus Authority purported to do the following: (a) appoint Ray CEO of all of the FTX Debtors, FTX EU and FTX Europe AG; (b) authorize Ray to decide if and when the FTX Debtors, FTX EU and FTX Europe AG should commence chapter 11

---

[8]    By noting the efficacy of the Omnibus Authority was subject to applicable law, it appears that FTX Debtors' Counsel contemplated there could be limitations and restrictions that made the Omnibus Authority wholly or partially ineffective. Yet, there appears to be a lack of: (a) research performed concerning the law of Cyprus to determine what those limitations could or may be, or (b) review of the FTX EU organizational documents to discern if the Omnibus Authority and what it was attempting to accomplish were foundationally sound and proper. As stated in connection with the Omnibus Authority, there simply "was not time" and the company records "were both incomplete and unfamiliar to [FTX Debtors' Counsel]." (Dieterich Supp. Dec., ¶ 23). Failure to determine if requisite authority is obtained is problematic at best.

proceedings; (c) authorize Ray to appoint new directors for the FTX Debtors, FTX EU and FTX

Europe AG; and (d) transfer to Ray all of Bankman-Fried's corporate authority. (Dietderich Supp.

Dec., ¶ 23). Each of these actions were improper under Cyprus law, as well as FTX EU's Articles,

and are void.

**D.    *Identification and Application of Cyprus Law to the Facts***

55.    FTX EU is organized under The Companies Law, as amended (Chapter 113)

("**Cap. 113**"). (Soteriou Dec., ¶ 9-11).

56.    Lambros Soteriou, Lambrianou's foreign law expert, is an attorney licensed to

practice law in Cyprus. He received a Bachelor of Laws from the University of Warwick, UK in

2003 and a Master of Laws from University College London, UK in 2005. (Soteriou Dec., ¶ 3).

57.    As a lawyer, Soteriou specializes in corporate law, including the setting up and

management of corporate structures, corporate restructuring and shareholders arrangement.

Soteriou is regularly called upon to advise financial institutions and investment funds in relation

to a wide range of authorization, regulatory and compliance matters on both national and European

regulations. Soteriou is a Partner at Michael Kyprianou & Co LLC based in Cyprus. (Soteriou

Dec., ¶ 1-3).

58.    As explained in the Soteriou Dec., Cyprus law applicable to the issues raised in this

Motion include Cap. 113. Cap. 113, together with a company's articles of association govern the

relationship between a Cyprus company and its shareholders, directors, and officers. Therefore,

the Court must look to Cap. 113 and to FTX EU's Articles to determine whether Ray had the

authority to file the Petition.  (Soteriou Dec., ¶ 9-20).

59.     In accordance with Section 88 of the Articles, the business of the company shall be managed by the directors, unless otherwise provided in Cap. 113 or reserved by law or the Articles to the sole member in general meetings. (*Id*.; Articles, Sec. 86, 88).

60.     FTX EU's board of directors must exercise their powers collectively, either in a board of directors' meetings upon a majority vote or through a unanimous written resolution of the directors of the company. (*Id*.; Articles, Sec. 100, 101, 108).

61.     The right to appoint any person, company, or firm to act on behalf of the Company as the authorized representative or attorney, and to delegate such powers vested in or exercisable by the directors, is expressly reserved to the FTX EU board of directors. (*Id.*, Sec. 89). Thus, any appointment or delegation to a third party which is not duly authorized through proper board action is invalid. (*Id*.).

62.     Under Cyprus law and FTX EU's Articles, Bankman-Fried lacked authority to appoint Ray as CEO and delegate to him the directors' powers to manage the affairs of the company. Bankman-Fried was only one of five directors of FTX EU and his unilateral appointment of Ray without a duly held directors' meeting or a unanimous written resolution is insufficient to delegate to Ray any authority whatsoever – let alone the power to commence a US bankruptcy proceeding for a Cyprus company governed by Cyprus law. (*Id*.).

63.     Bankman-Fried lacked the authority to unilaterally appoint Ray CEO, he lacked the authority to unilaterally delegate Ray the power to appoint new directors without CySEC's prior assessment and approval, and he lacked the authority to unilaterally grant Ray the power to file bankruptcy or take any action on behalf of the Company whatsoever. (*Id*.).

64.     In sum, under Cyprus law, the Omnibus Authority could not and did not grant Ray the authority and power to file the Petition. As so aptly expressed by its own terms, the Omnibus

Authority is only valid "*to the extent applicable law permits*." (Omnibus Authority). The applicable law at issue does not so permit. (*Id.*).

65.     The FTX Debtors, by requesting that the FTX EU board of directors ratify the filing of the Petition, recognized and effectively conceded that the Petition was filed without the required authority under applicable law.  FTX EU's board refused to ratify the chapter 11 filing, as it was understood doing so would have been improper and in further violation of Cyprus law. (Lambrianou Dec., ¶ 13-15).

66.     Based on the foregoing, Ray *did not* have the authority to file the Petition on behalf of FTX EU, and the filing has not been ratified by FTX EU's board of directors.

67.     Accordingly, the Court has "no alternative but to dismiss the [Petition]." *Price v. Gurney*, 324 U.S. at 106.

### E.  *Dismissal Under Section 1112(b) of the Bankruptcy Code*

68. This case should also be dismissed under section 1112 of the Bankruptcy Code, which provides in pertinent part:

> on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 or *dismiss a case under this chapte*r, whichever is in the best interests of creditors and the estate, *for cause* . . . .

11 U.S.C. § 1112(b) (emphasis added).

69.     "It is well established that lack of authority to commence a bankruptcy case constitutes cause for dismissal" under section 1112(b) of the Bankruptcy Code. *In re ComScape Telecommunications, Inc.*, 423 B.R. at 829–30 (collecting cases). But, as noted in *ComScape*, "the Court need not rely on § 1112(b) for authority to dismiss this case. Whenever a court 'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.'" *Id.*, citing *Price v*

*Gurney.* Here, the Court "would be required to dismiss an unauthorized filing even if § 1112(b) were not in the Bankruptcy Code." *Id.* (citing cases); s*ee also*, *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D. N.J. 2021) ("the Court has authority to dismiss this case without relying on § 1112(b)," and must dismiss a case filed without the prerequisite authority, collecting cases).

## RESERVATION OF RIGHTS

70.    Nothing in this Motion is intended to or shall be deemed to impair, prejudice, waive, or otherwise affect the rights and claims of Lambrianou in these jointly-administered chapter 11 cases or any adversary proceeding number, except as otherwise set forth herein.

71.    Pursuant to Local Rule 9013(f), Lambrianou does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NOTICE

72.    Notice of this Motion has been provided to: (a) FTX Debtor's Counsel: (i) Sullivan & Cromwell LLP and (ii) Landis Rath & Cobb LLP; (b) the U.S. Trustee; (c) counsel to the Official Committee of Unsecured Creditors: (i) Paul Hastings LLP and (ii) Young Conaway Stargatt & Taylor, LLP; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) all known creditors of FTX EU; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

For the foregoing reasons, Lambrianou in her capacity as director of FTX EU and as an individual creditor of FTX EU, respectfully requests that the Court: (a) enter an order dismissing the bankruptcy case of FTX EU Ltd. (Case No. 22-11166-JTD); and (b) grant such other and further relief it deems just and proper under the circumstances.

Dated: January 10, 2024
Wilmington, Delaware

/s/ *Christopher Viceconte*
Christopher Viceconte (No. 5568)
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801
Telephone:  (302) 518-6300
E-mail: cviceconte@gibbonslaw.com

-and-

Robert K. Malone (admitted *pro hac vice*)
Brett S. Theisen (admitted *pro hac vice*)
Christopher P. Anton (*pro hac vice* forthcoming)
Kyle P. McEvilly (admitted *pro hac* vice)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 596-4500
Email: rmalone@gibbonslaw.com
         btheisen@gibbonslaw.com
         canton@gibbonslaw.com
         kmcevilly@gibbonslaw.com

*Counsel for Martha Lambrianou*