January 11, 2023

To the Honorable John T. Dorsey:

I write to object (this "Objection") to the *Motion of Debtors to Estimate Claims Based on Digital Assets* ("Estimation Motion") that seeks an order to estimate claims based on the amounts set forth in the Digital Assets Conversion Table attached to the Estimation Motion. In particular, I object to the proposed valuation of Tokenized Stocks based on the valuations in Exhibit 1 of the Estimation Motion, including those set out on page 23 of 35, as well as others.

I am a customer creditor with a claim of approximately $4,000,000 using the valuation methodology proposed in the Estimation Motion. However, at the time of the original bankruptcy petition, I held much of my portfolio in a variety of Tokenized Stocks, including 150,000 shares of GBTC, 100,000 shares of ETHE, and 500 shares of SPY. If these holdings were valued using the closing prices of the respective publicly-traded equities as of January 9, 2024, the total value of my claim would be over $9,500,000.

The Tokenized Stocks offered by FTX were a distinct product unlike either the myriad spot digital assets (e.g. BTC, ETH, SOL) or digital asset derivatives (e.g. BTC-PERP, ETH-PERP, SOL-PERP) that traded there. Trading of the Tokenized Stocks that I purchased was governed by a separate Terms of Service from these other assets (i.e., spot digital assets and digital asset derivatives), and the institutional counterparty users faced when trading these stocks was not FTX Trading Ltd but rather Canco GmbH, a Swiss-domiciled broker-dealer.

Furthermore, rather than simply acting as a middleman between users buying from and selling to each other (as FTX did for both spot digital assets and digital asset derivatives), Canco GmbH transacted directly with the customers who traded Tokenized Stocks. Specifically, when a user bought (or sold) a Tokenized Stock, Canco GmbH would create (or redeem) this Tokenized Stock for them in their FTX account, while simultaneously purchasing (or selling) the same amount of real stock on the appropriate public stock exchange via their role as a licensed equities broker-dealer.

The diagram below (sourced from the following url -- https://www.forbes.com/sites/javierpaz/2021/05/11/the-future-of-tokenized-stockswhat-they-can-replace-and-what-to-watch-out-for/) -- outlines how this process works for a hypothetical purchase of one unit of COIN Tokenized Stock, representing one share of equity in the US-listed company Coinbase. Note that the brokerage entity cited in this diagram is German firm CM-Equity AG; after this article was written, CM-Equity terminated its relationship with FTX and its role was taken over by Canco GmbH.



The key takeaway from this transaction structure is that each time a Tokenized Stock was purchased on FTX's website, Canco GmbH or a related entity was responsible for locating and purchasing a real share of the corresponding stock on a regulated public stock exchange. In other words, every time a user bought a share of the Tokenized Stock COIN, Canco GmbH would purchase a real share of Coinbase stock in their capacity as a licensed broker-dealer. There also remains an open question of whether Canco was holding these purchased Tokenized Stocks in trust or "for the benefit of" the customers that purchased them – this question should be specifically addressed by the Debtors before the Estimation Motion can proceed on the Tokenized Stocks addressed in this Objection

Furthermore, note that holdings of regulated public equities like COIN cannot be "self-custodied" the way that digital assets can. Unlike spot digital assets, which were maintained on the blockchain in wallets controlled by FTX, or digital asset derivatives, for which positions were managed in an internal FTX database, the real stock holdings purchased to back Tokenized Stocks must have been held by a regulated broker-dealer registered with a financial authority. This means that either Canco GmbH or some other related entity should have been holding real stock corresponding to every Tokenized Stock outstanding on the FTX Platform, and those holdings should be identifiable by and accountable to the financial authority responsible for overseeing Canco GmbH.

Given this context, when I purchased shares of Tokenized Stocks on FTX, I had a reasonable expectation that the value my holdings would be backed by real assets held with a regulated broker-dealer, the custody of which was in turn overseen by a financial regulator. The valuation methodology for Tokenized Stocks proposed in the Estimation Motion disregards the unique nature of these products and their close relationship to regulated public equity markets. Instead, it treats them identically to the various spot digital assets and digital asset derivatives traded on FTX – unregulated financial products custodied by an unregulated financial intermediary

It is imperative that an investigation be conducted to determine whether Canco GmbH, or any other FTX-affiliated entity, holds or held real stocks backing the Tokenized Stocks issued on the FTX platform

If such holdings currently exist, or existed at the time of the bankruptcy filing, then creditors like myself with a claim including Tokenized Stocks are entitled to the present value of these holdings. As counterparties of a Swiss broker-dealer subject to stringent financial regulations, these creditors have an expectation that this broker-dealer's obligations to them be upheld. Subsuming these creditor's claims into the larger FTX estate when the underlying stock holdings backing their Tokenized Stocks were held with such a regulated entity, as promised in the terms of service, is unjust and disregards these creditors' unique situation.

On the other hand, if such holdings did not exist at the time of the bankruptcy filing, then Canco GmbH was in violation of its own terms of service for offering Tokenized Stocks. As noted in these terms of service, Canco GmbH is a Financial Intermediary according to Swiss law. Canco's breach of the terms of service, and any resulting compensation due to users, should therefore be handled in a Swiss court of law separately from the FTX.com/FTX International bankruptcy proceedings. Most importantly, claims against Canco GmbH by customers holding Tokenized Stocks should be paid out directly from Canco GmbH's assets at the time of the bankruptcy prior to these assets being pooled into the greater FTX bankruptcy estate.

Lastly, I do not believe that the Ad Hoc Committee (AHC) represents the interests of customer claimants with claims denominated in Tokenized Stocks. Based on public information, the AHC represents claimants where 40% of claimants are not customers, but rather opportunistic investors who had purchased customer and non-customer claims As a result, the distinctions set out in this Objection may have been lost on the Debtors and, also, the AHC.

Furthermore, because Tokenized Stock trading was a small portion of FTX's overall business, it is unlikely that a significant fraction of the claim value represented by the AHC is denominated in Tokenized Stocks. This consideration may be a reason for the AHC to disregard issues related specifically to Tokenized Stocks in favor of prioritizing other issues relevant to the vast majority of claimants represented.

It is not in the interest of claimants represented by the AHC (and by extension, the AHC) to fully and fairly engage with the court and the Debtors to seek clarity on the issue of Tokenized Stocks - including what happened to the real stock holdings backing the Tokenized Stocks, as well as how the valuation of Tokenized Stocks should be calculated and what compensation may be owed to customers of Canco GmbH in the event that they were defrauded.

For the reasons above in this Objection, I respectfully request the court to deny the Estimation Motion, and immediately call for an investigation of Canco GmbH (as well as any other FTX-affiliated entities involved in the trading of Tokenized Stocks) to determine whether any real stocks backing Tokenized Stocks were held at the time of the bankruptcy.

Respectfully Submitted,

Max Bodoia