IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| FTX TRADING LTD., et al.,[1] | ) ) ) | Case No. 22-11068 (JTD) |
|  | ) ) | (Jointly Administered) |
| Debtors. | ) ) ) | **Ref. Docket No. 5202** |

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF MOTION TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this statement (this "Statement") in support of the *Motion of Debtors to Estimate Claims Based on Digital Assets* [Docket No. 5202] (the "Motion"),[2] and in support thereof, respectfully states as follows:

**STATEMENT**

1. The Committee's duty in these Chapter 11 Cases is to represent the interests of *all* unsecured creditors of the Debtors' estates, including customers of the Debtors' exchanges, to ensure creditors' equitable and efficient treatment regardless of the nature of a creditor's respective holdings of Digital Assets. With this duty in mind, the Committee has been diligently working with the Debtors to advance an appropriate methodology to value the thousand-plus Digital Assets that underlie the millions of creditor claims asserted against the Debtors. The Committee believes that estimating the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms used herein that are not defined herein shall have the meanings ascribed to them in the Motion.

values of such claims in an omnibus fashion, as set forth in the Motion, is the most efficient and effective method to facilitate the claim reconciliation process and ensure that the Chapter 11 Cases proceed to confirmation as soon as reasonably practicable. For these reasons, and for the reasons described in more detail below, the Motion should be approved.

2. As a threshold matter of U.S. bankruptcy law, claims are required to be valued in U.S. dollars (otherwise known as "dollarization"), as of the petition date pursuant to section 502(b) of the Bankruptcy Code and applicable precedent. 11 U.S.C. § 502(b); Motion at ¶¶ 25-27. However, because the proofs of claim and schedules in these Chapter 11 Cases provided the quantities, but not the U.S. dollar values, of the Digital Assets underlying those claims, the Debtors are now required to value each claim for purposes of allowance and distribution. Given the scope and complexity of the Debtors' Digital Asset portfolio – spanning hundreds of tokens, ranging from highly liquid to illiquid, across different blockchains – dollarization necessitates a consistent valuation methodology that is accomplished through the estimation process set forth in the Motion. Otherwise, the Debtors face piecemeal and inefficient claims valuation proceedings that would result in significant administrative expense and extensive time to resolve. *See* Motion at ¶ 22 (noting that estimation pursuant to section 502(c) of the Bankruptcy Code is appropriate where the Debtors cannot liquidate the millions of creditors' claims without an unacceptable delay in concluding these cases).

3. The Committee has consistently advocated for an expedited confirmation timeline so that distributions can be made to creditors at the earliest possible date. The Motion, and more specifically, approval of the Digital Assets Conversion Table, is a key step in that timeline. Ultimately, approval of the Motion enables the Debtors to calculate their estimates of allowable claims and creditor recoveries, which is an important component in finalizing the Debtors' Disclosure Statement and commencing the Plan solicitation process.

4.      In response to important issues raised by certain creditors with respect to the Motion, the Committee additionally notes the following: *First*, the Committee recognizes that market prices for many Digital Assets have increased since the Petition Date.  However, section 502(b) specifically, and the Bankruptcy Code generally, is rooted in a policy of equality of treatment amongst unsecured creditors, and in turn, establishes a bright line rule that all claims against a bankruptcy estate are to be valued as of the debtor's petition date.  Thus, the Debtors are required to value claims by reference to the Petition Date.  Indeed, had market prices for Digital Assets declined over the past few months, the Petition Date values would still govern, notwithstanding the fact that such valuation would overcompensate creditors as compared to then-prevailing market prices.

5.      In any event, the Committee is acutely focused on maximizing the benefits for creditors of the post-petition increase in Digital Asset market prices.  The Committee has been actively consulting with the Debtors regarding their efforts to monetize their Digital Asset portfolio to take advantage of the increase in Digital Asset values, and the results of these efforts will expedite cash distributions to creditors under the Plan.  Further, the Bankruptcy Code already provides a mechanism for creditors to share in the upside in the event asset values increase during a bankruptcy case.  Should all creditors ultimately recover in full on their claims – which is far from a certainty, as of this date – then unsecured creditors may be entitled to receive post-petition interest on their claims, compensating creditors for some of the value associated with the increase in cryptocurrency values.

6.      *Second*, the Committee is aware that certain creditors have objected to the Motion by contending that, pursuant to the applicable exchange's terms of service, ownership of certain Digital Assets did not vest in the Debtors' bankruptcy estates.  The Debtors' proposed Plan reflects a global settlement in principle of similar customer property arguments raised in litigation by the Ad Hoc Committee and certain class action claimants.  That proposed settlement (among other things) treats

3

Digital Assets held by the Debtors as property of the Debtors' estates, but, in turn, affords priority treatment to customers' claims. The Motion simply seeks to estimate "the value of Claims in respect of Digital Assets . . . for the purposes of any plan in these Chapter 11 Cases." Motion at 1. The Motion does not preclude any creditor from making a timely objection at confirmation to the customer property settlement and attempting to demonstrate that a particular Digital Asset is not property of the Debtors' estates. Thus, creditors' rights with respect to any customer property arguments are preserved.

7. *Finally*, the Committee is cognizant that certain creditors have voiced a preference for in-kind distributions. The Plan does not incorporate a right of creditors to receive in-kind distributions because the Debtors did not hold on the Petition Date sufficient quantities of Digital Assets to reasonably consider doing so. *See* Motion at 9, fn. 4 (noting that the imbalance between claims based on Digital Assets and those Digital Assets reflected on the Debtors' balance sheets means that the Debtors are unable to consider making in-kind distributions). Moreover, in-kind distributions (even if otherwise feasible), implicate a host of complicated questions of fact and law, including, among other things: (a) how Digital Assets would be allocated (for example, would creditors be entitled to receive only those Digital Assets held in their accounts or would Digital Assets be pooled and distributed to creditors), (b) inasmuch as the Debtors currently hold insufficient quantities of Digital Assets to make ratable distributions to all creditors, would it be an appropriate use of estate assets for the Debtors to purchase additional Digital Assets at now-higher market prices, (c) would in-kind distributions be administratively practicable given the size of the Debtors' estates and their millions of creditors, (d) would in-kind distributions delay the confirmation timeline and distribution dates, and (e) what are the tax consequences on creditors of implementing such an approach. Accordingly,

given these issues, liquidating the estates' Digital Assets was and remains the most practical way of maximizing recoveries on Digital Assets for the benefit of all creditors.

8. For these reasons, the Committee supports the Motion and respectfully requests that the Court grant the Motion.

| | |
|---|---|
| Dated: January 11, 2024<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Jared W. Kochenash*<br>Matthew B. Lunn (No. 4119)<br>Robert F. Poppiti, Jr. (No. 5052)<br>Jared W. Kochenash (No. 6557)<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mlunn@ycst.com<br>       rpoppiti@ycst.com<br>       jkochenash@ycst.com<br><br>-and-<br><br>PAUL HASTINGS LLP<br>Kristopher M. Hansen*<br>Kenneth Pasquale*<br>Erez E. Gilad*<br>Isaac Sasson*<br>200 Park Avenue<br>New York, NY 10166<br>Telephone:  (212) 318-6000<br>Facsimile:  (212) 319-4090<br>Email: krishansen@paulhastings.com<br>       kenpasquale@paulhastings.com<br>       erezgilad@paulhastings.com<br>       isaacsasson@paulhastings.com<br><br>*Admitted pro hac vice*<br><br>*Counsel to the Official Committee of Unsecured Creditors* |