IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*[1]<br><br>Debtors. | Case No. 22-11068 (JTD)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Related Docket No. 5202** |

### LIMITED OBJECTION OF THE FTX MDL PLAINTIFFS TO MOTION OF DEBTORS TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS

The Moskowitz Law Firm, PLLC and Boies Schiller Flexner LLP (together, the "FTX MDL Co-Lead Counsel"), solely in their capacity as Plaintiffs' Co-Lead Counsel in *In re FTX Cryptocurrency Exchange* Collapse *Litigation*, Case No. 23-md-03076, pending in the United States District Court for the Southern District of Florida (the "FTX MDL"),[2] submit this limited objection (the "Objection") to the *Motion of Debtors to Estimate Claims Based on Digital Assets* [Docket No. 5202] (the "Motion")[3] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). In support of this Objection, the FTX MDL Co-Lead Counsel respectfully state as follows:

The FTX MDL Co-Lead Counsel file this Objection to highlight two concerns: (1) the potential prejudice to a party's right to assert that customer deposits are not property of the estate

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The plaintiffs in the FTX MDL shall be referred to herein as the "FTX MDL Plaintiffs."

[3] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

SF 4877-7401-4875.3 30239.001

and (2) the treatment of FTT as equity. Both concerns can be addressed with an appropriate reservation of rights in the proposed form of order.

A.      **Cryptocurrency Customer Deposits and Property of the Estates**

1.      The Motion seeks to, among other things, estimate the value of customer cryptocurrency deposits for ***all purposes***—including voting and distribution purposes. As this Court is aware, whether cryptocurrency deposits are property of these estates is an important unresolved and case determinative issue. This issue prompted both the Ad Hoc Committee of Non-US Customers of FTX.com and the putative class representatives in the adversary proceeding of *Onusz, et al. v. West Real Shires Inc., et al.*, Case No. 22-50513 (Bankr. D. Del.) to file adversary proceedings in these chapter 11 cases asserting that cryptocurrency deposits are not property of these estates (together, the "Customer Deposit Adversary Proceedings"). Although the *Settlement and Plan Support Agreement* [Docket No. 3291] (the "PSA") purports to resolve the Customer Deposit Adversary Proceedings, such proceedings have only been voluntarily stayed until the effective date of the Plan. As such, the issue remains unresolved. Nothing prohibits—and nothing should prohibit—another customer from carrying the mantle and seeking this Court's determination on whether cryptocurrency deposits are property of these estates.

2.      In light of the remarkable recovery of cryptocurrency prices since the Petition Date, the FTX MDL Co-Lead Counsel are actively investigating the property of the estate issue and may commence their own adversary proceeding to run parallel to the confirmation process. For example, since the Petition Date, the price of Solana (SOL) has increased from

approximately $16.24 to $100—an increase of more than 6x.[4] In other words, *the value of SOL in the Debtors' possession has increased more than $4.7 billion since the Petition Date*.[5] During the same period of time, the price of Bitcoin (BTC) has increased from approximately $16,871 to approximately $46,350—an increase of more than 2.74x (or $29,480).[6] In other words, *the value of BTC in the Debtors' possession has increased more than $600 million since the Petition Date*.[7]

3. Under the Plan, the Debtors propose treating cryptocurrency deposits as property of the estates and "dollarizing" customer claims rather than return cryptocurrency (to the extent possible). In other words, the Debtors propose to (1) sell all of the cryptocurrency in their possession, (2) value customer claims as of the Petition Date (per the relief requested in the Motion), and (3) pay general unsecured claims after deducting hundreds of millions of dollars in administrative claims (including professional fees). However, if this Court determines that cryptocurrency deposits are not property of the estate, then such cryptocurrency (*which has appreciated more than $5 billion since the Petition Date*) must be returned to customers in kind and may not be used to pay, among other things, administrative claims.

4. In light of the magnitude of the issue, parties in interest should be given the opportunity to evaluate the fully baked Plan before deciding whether to assert that

---

[4] https://rates.coinmetrics.io/ as of 1:00 p.m. (Eastern Time) on January 11, 2024.

[5] On September 11, 2023, the Debtors reported holding $1.162 billion worth of SOL, which was valued as of August 31, 2023 when SOL's price was approximately $19.73 ($1.162 billion / $19.73 ≈ 58.9 million SOL). *See Notice of Presentation to Stakeholders* [Docket No. 2463].

[6] https://rates.coinmetrics.io/ as of 1:00 p.m. (Eastern Time) on January 11, 2024.

[7] On September 11, 2023, the Debtors reported holding $560 million worth of BTC, which was valued as of August 31, 2023 when BTC's price was approximately $27,500 ($560 million / $27,500 ≈ 20,363 BTC). *See Notice of Presentation to Stakeholders* [Docket No. 2463].

cryptocurrency customer deposits are not property of the Debtors—which will be an expensive and protracted endeavor.

5.      Accordingly, the FTX MDL Co-Lead Counsel respectfully request that the order approving the Motion clarify that it is without prejudice to any party's right to seek a determination regarding the ownership of cryptocurrency customer deposits.

**B.    FTT Valuation**

6.      Pursuant to the Motion, the Debtors seek a determination that FTT—the FTX utility token—is akin to an equity interest in the Debtors and should be valued at $0 for voting and distribution purposes, despite a current market capitalization of more than $850 million[8] and this Court authorizing the Debtors to sell FTT postpetition.[9] *See Order Authorizing and Approving the Sale or Transfer of Certain Digital Assets*[10] [Docket No. 2505]. As an initial matter, the Plan separately classifies FTT "interests" and subordinates such interests to all other claims. Under section 1129 of the Bankruptcy Code, the Debtors bear the burden of demonstrating that the Plan complies with applicable provisions of the Bankruptcy Code, including section 1122, at confirmation. Accordingly, whether it is appropriate to separately classify FTT as an equity interest is an issue that should be addressed and fully briefed in connection with confirmation—not as part of an omnibus motion to estimate the value of 1,000+

---

[8]  https://rates.coinmetrics.io/ as of 2:30 p.m. (Eastern Time) on January 11, 2024.

[9]  If FTT is finally determined to be equity in FTX and valued at $0 for voting and distribution purposes, an investigation into the Debtors' decision to sell FTT postpetition may be warranted.

[10] The full title of the order is: *Order Authorizing and Approving (I) Guidelines for the Sale or Transfer of Certain Digital Assets, (II) the Sale or Transfer of Such Digital Assets in Accordance With Such Guidelines Free and Clear of Any Liens, Claims, Interests and Encumbrances, (III) the Debtors' Entry Into, and Performance*

cryptocurrencies. Moreover, the law on whether an exchange token should be treated as equity of its respective crypto-platform and valued at $0 is not settled. For example, in the *Celsius* bankruptcy case, Judge Glenn found that, despite the Celsius platform not operating again, a $0.25 valuation of the CEL token—the Celsius exchange token—was "eminently fair and reasonable." *In re Celsius Network LLC*, 2023 Bankr. LEXIS 2720, at *22 (Bankr. S.D.N.Y. Nov. 9, 2023).

7. Under the circumstances, the FTX MDL Co-Lead Counsel respectfully request that the order approving the Motion clarify that it is without prejudice to any party's right to (1) seek a determination regarding the ownership of FTT and (2) challenge the classification and valuation of FTT in the context of confirmation of the Plan.

Dated: January 11, 2024                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*
Jason H. Rosell (admitted *pro hac vice*)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

*Counsel to FTX MDL Co-Lead Counsel*

---

Under, Postpetition Hedging Arrangements, Including Granting Liens and Superpriority Administrative Expense Claims in Connection Therewith and (IV) the Debtors to Stake Certain Digital Assets.