IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

FTX TRADING LTD., *et al.*,

Custodians and Debtors.

Chapter 11

Case No. 22-11068 (JTD)

(Jointly Administered)

Hearing Date: January 31, 2024, at 10:30 a.m. (ET)
Obj. Deadline: January 17, 2024, at 4:00 p.m. (ET)

**OBJECTION TO**
**THE DEBTOR'S JOINT CHAPTER 11 PLAN OF REORGANIZATION (DOC 4861) AND**
**MOTION OF THE DEBTORS TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS (DOC 5202)**

Dear Judge Dorsey,

I am a French customer who hold an account on FTX.com. Writing to object to the *"Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates"* which is closely related to the *"Motion to Estimate Claims Based on Digital Assets"* that I also object.

I. **ORIGINAL CUSTOMERS TRIED TO FIX DEBTOR'S PLAN, FIND A COMPROMISE**

1) By original customers I mean customers who had an account as at 11th November 2022.

2) Even before debtor's draft plan creation, 2nd February 2023 on Twitter, wassielawyer had laid the foundations of a plan (Exhibit A) based on recovery tokens to make customers whole with a reboot of FTX in case of a shortfall of assets.

3) FTX Unsecured Creditors Committee sent a letter (Exhibit B) to the UCC on 12th November 2023 in order to maximize recovery, but none of their ideas were implemented in debtor's plan.

4) Myself, I created a Telegram group FTXantidollarization on 2nd August 2023.
I build a "New Plan" (Exhibit C) based on wassielawyer ideas, with some help for wordings since I'm not English-speaking native. I sent it on 13th November 2023 to Eversheds Sutherland / IAHC (Erin Broderick took time to exchange and share her point of view), also sent it to the UCC on 6th December 2023, but none of my ideas ended up in debtor's plan.

## II. ORIGINAL CUSTOMERS NOT FAIRLY TREATED

1) FTX Trading Ltd. try to steal ownership of our digital assets by submitting its plan to vote and approval with the motion dollarizing and value our digital assets at depressed price of petition date as if they belong to the estate.

2) This poor treatment damage FTX brand reputation, and do not support the idea of a reboot that will help refund customers over time, if a reboot is ever needed since we still don't know the numbers, like the expected shortfall. We need an update, a breakdown of assets versus consolidated customer liabilities based on data from claims portal.

3) As Sam Bankman Fried said: "what matters right now is trying to do right by customers". I would suggest putting SBF back in charge of FTX Trading Ltd., under watch, to manage the task of returning customers assets. SBF now has a great incentive to make us whole, unmade what he has done. I doubt SBF would try to steal from us again in plain sight.

## III. THIS LEAVES US NO OTHER CHOICE BUT TO RECALL THE TERMS OF SERVICE

1) FTX.com ToS 8.2.6 clearly protecting digital assets, held in trust: "Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading." "None of the Digital Assets in your Account are the property of ... FTX Trading".

2) No such precision for fiat: FTX said it may convert fiat deposits into "e-money," which the terms describe as a sort of internal accounting tool. And sure enough, the "fiat currency" section of the ToS, 8.3, is much more vague about how FTX held customer funds.

## IV. CONCLUSION

FTX Trading Ltd. is the custodian not a debtor in possession of the digital assets held in my account as at 11th November 2022. Digital assets belong to me not the estate.
I filled a claim in due time that already specify precisely the amount of each digital assets I am entitle to (mainly BTC and a few CRO), so my claim is neither unliquidated nor contingent (wasn't necessary to fill a proof of claim for me), so estimation is not authorized by section 503 (c) of the U.S. Bankruptcy Code.
FTX Trading Ltd. is obliged to return my digital assets in full and in specie, and make it a top priority above other kinds of claims.


Dated: January 17, 2024                                                                Adrien HERISSE

**EXHIBIT A**

https://twitter.com/wassielawyer/status/1621049355179364352



**EXHIBIT B**
https://ftx-cahc.notion.site/CAHC-Charter-ddcecf6857ba44cd970b3afc5ccc26ca

FTX Unsecured Creditors Committee
200 Park Avenue
New York, NY 10166

Subject: FTX Customer Voting Block to Maximize Recovery

Dear Members of the FTX Unsecured Creditors Committee,

We trust this letter finds you well. We are writing to you as a voting block of customer creditors of FTX, united by our shared experiences and challenges arising from the exchange's bankruptcy. Our primary objective is to safeguard our interests and ensure the maximization of recovery in the ongoing bankruptcy proceedings.

As such, we respectfully request that you focus your efforts on the following four items in these cases to incorporate into the Plan of Reorganization.

**1. Exchange Restart/FTX 2.0:**
Restarting the FTX exchange, under stringent regulatory oversight, a transparent operational model, and a strong management team and governance structure could pave the way for generating revenue and, consequently, increasing recovery for creditors rather than selling the customer list.

**2. Recovery Rights Token and Equity Offering with Distributions on FTX 2.0:**
We propose the introduction of a Recovery Rights Token (RRT), or multiple RRTs, and prioritizing bidders including a creditor equity offering in the exchange. The RRT could serve as a representation of our claims, in aggregate or for specific pools of recovery, offering a transparent and liquid medium, enabling the many creditors struggling without access to their liquidity a mechanism to trade such rights to a willing buyer via a regulatory compliant exchange. In addition, an equity offering could draw investment, providing yet another mechanism to increase customer creditor recoveries in these cases.

Furthermore, we suggest that distributions to creditors from these cases should be paid through the restarted exchange, ensuring a streamlined and centralised process for creditors to receive their respective distributions. This could potentially drive further liquidity and user engagement on the platform that would benefit creditors' equity interests, but more importantly, this mechanism would provide a needed solution to hundreds of thousands of customers around the world who would have difficulty receiving recovery payments by check or other fiat distribution mechanisms.

Lastly, we believe a compromise needs to be achieved via a RRT or other mechanism with respect to specifically BTC and ETH being able to achieve a potential for >$1 recovery in petition date value terms (BTC for example has maintained a valuation of >150% of petition date value for the past 7 months). Such a mechanism could be implemented without affecting customer dollar claim recovery.

### 3. Prioritization of the Venture Capital Portfolio for Customers:

While the prioritization of the customer waterfall under the Proposed Settlement attempts to address the customer priority, it is proposed in a way that gives non-customers prioritized benefits of appreciating assets when the investments made can be directly traced back to the account balances of customers. We advocate for the venture capital portfolio to be exclusive to recovery for customers, though if a compromise is needed perhaps allocating a percentage of its recovery to the general pool. The oversight of the venture portfolio could still follow the Proposed Settlement to have the UCC and Ad Hoc appoint and approve professionals to manage its orderly monetization for the duration of its investment cycle.

We suggest softening the language stating that the "FTX Ventures Company will not issue shares to creditors directly" to allow for such eventuality if the regulatory framework allows. The ability to create a RRT for these assets is wholly appropriate for these cases, which would also provide the same benefits referenced above via the tradability and liquidity of such RRT on FTX 2.0, enabling customer creditors to seek early liquidity for these recoveries.

### 4. Settling Customer Preference Claims Through Trading Volume Incentives:

Provided an exchange restart is feasible, we propose the settling of customer preference claims by considering incentives for achieving specific trading volumes on the restarted exchange instead of the presently mooted preference settlement at 15%. By encouraging active trading and liquidity, not only does the exchange stand to gain through increased transaction fees, but it also provides a pathway for affected customers to mitigate their losses and potentially recover through active participation in the exchange. We would be open to other compromise mechanisms to settle customer preference claims but feel strongly that an appropriate compromise be made in light of the FTX Terms of Service issue raised above.

We understand that the bankruptcies are complex and multifaceted, and we greatly appreciate the efforts of the FTX UCC in navigating through these challenging times. We kindly request that our concerns and proposals be considered during your deliberations and look forward to an opportunity to engage constructively with the FTX UCC to explore viable pathways forward.

Thank you for considering our perspective, and we anticipate your response.

Sincerely,

FTX 2.0 Customers Ad Hoc Committee

**EXHIBIT C**
https://figma.fun/CkCGxa

## What does it imply?

Bankruptcy Court should only approve a plan that respects FTX.com ToS
- ToS said digital assets should always be customer property → Monetize crypto, moreover at petition date distressed prices, wrong-footed and unacceptable.
- ToS did not provide the same unambiguous property interests or express trust arrangement for fiat currency → Might allow clawback?
→ Common sense would be for all creditors, including fiat holders, to recover the same % of their assets, as they were all victims of the same theft.

- Debtors current sell-off of all digital assets is against ToS → could be fixed by rebalancing assets to match its liabilities (ie customer assets/claims).

Return in full and in-kind original assets held (fiat and crypto, including stablecoins)
Alternatively return value at distribution date

## What Terms of Service says

- **FTX.com ToS 8.2.6 clearly protecting digital assets, held in trust**
  "Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading."
  "None of the Digital Assets in your Account are the property of … FTX Trading"
- **No such precision for fiat**
  FTX said it may convert fiat deposits into "e-money," which the terms describe as a sort of internal accounting tool. And sure enough, the "fiat currency" section of the terms of service, 8.3, is much more vague about how FTX held customer funds.

## What plan now?

- - - - Monetize crypto (at petition date) wrong-footed and unacceptable - - - -

### New Plan (inspired by wassielawyer old restart plan *)
- Return customer property, no dollarization at petition date distressed prices
- FTX 2.0 returns all assets in kind -R marked, original portfolio tradable: brings instant liquidity + claim market
- Fix starting % of recovery, need to rebalance assets recovered and compare to claims value
- Venture Portfolio earmarked for repaying Customers
- Potentially clawback to maximize % recovery
- Potentially give Equity Token to all ($ and crypto) in % of user claims to maximize recovery

— — might apply to fiat — —

### Clawback to maximize % recovery of creditors
Non-creditors and creditors with high preference exposure are not the one to be pitied, they...

### Bring back more liquidity from old customers
A way to bring back those and add liquidity to FTX 2.0, would be to offer them fee credits

### FTX fee credits (FTXFEE)
Similar to Kraken fee credits (KFEE). Internal tokens that can only be used to pay for trading fees on FTX.
Available only on FTX 2.0
1 FTXFEE = 10 USD worth of trading fees on FTX exchange, automatically used.
Trade does not need to involve USD.

### FTT could be return too, cost nothing
- Value can be fix at 0 if any valuation is needed at some point, however still has some value elsewhere for international creditors
- FTT can be unlisted on FTX 2.0 but still withdrawable, FTX 2.0 isn't supposed to be in the USA anyway
- JPL in Bahamas could also be asked to deal with this refund since they already secure lot of FTT

### Rebalance FTX assets
- FTX should have reserves/assets that match its liabilities (ie customer assets/claims).
- Rebalance is needed prior to repayment and of launching FTX 2.0 in order to be able to return assets in kind in same % for all customers, also good idea for proof of reserve

### FTX 2.0 to return in-kind
Give back all assets in trading wallet, initially restricted, marked -R, for example ETH-R, USDT-R, USD-R

### Fix USD-R starting value
Rebalance of assets will give USD-R starting value, if 50% recovery of each asset → USD-R/USD=0.5

### -R assets allowing assets trading or "sell claim"
- An orderbook of USD-R/USD is created, that reflects the value of every -R asset relative to the non-R one, essentially the expected recovery.
- Face value of -R assets same as the original asset, for example if BTC = $35000, 1 BTC-R = 35000 USD-R.
- R-orderbooks are created, that should mirror the standard ones, BTC-R/USD-R should be same as BTC/USD.
- Customers can trade in the R orderbooks, and get...

### Bring back liquidity from all creditors
- By rebalancing assets and returning original assets -R marked to creditors wallet, liquidity is guaranteed with only creditors
- All creditors share same goal under same % recovery, great incentive for all to stay on FTX 2.0 to be made whole

### Investors can "buy claims" on FTX 2.0
- USD-R/USD open the door to investors like claim trading

## Amended Plan
- Dollarization of claim at petition date
- Preference exposure deal:
  90 days → 9days, 15%, only if > 250K$
- No distribution of FTT even if available

### "FTX Coalition 2.0" online petition to update Plan
- FTX 2.0 👍
- Recovery & Equity Token 👍
  (recovery intend to prioritize a 100% recovery for $ claimants, then IF whole at petition date prices, 👎 compensate for digital assets that went up)
- Venture Capital Portfolio prioritised for Customers 👍
- Preference settlement via Trading Volume (making the recovery of $1.2 billion of the amended plan more uncertain and longer) 👎

### USD-R price evolution
- USD-R/USD will converge to expected recovery rate
- FTX itself can set the price floor with a resting bid at a level comfortably supported by existing reserves/assets.
- If clients want earlier liquidity and sell at that bid, it improves % payoff for the remaining ones. It would be like selling the claim to FTX, with the resulting profit for FTX shared among the rest as it improves the exchange's liquidity
- If 100% recovery → USD-R/USD price goes to 1 → all -R assets are converted to original assets
- USD-R price can go up but also down, in case of high operational costs or assets losing value, this would be reflected in prices (FTX lowering the resting bid in R books).
- If no more recovery is expected from estate asset monetization, clawbacks and other such efforts, and fees not enough to strongly support USD-R + support FTX 2.0 operating cost → exit recovery plan, USD-R/USD price will converge at a price lower than 1. If this at some point is considered final, the R markets could be wound down with everyone who still holds -R assets taking a loss at the then current price (same final % recovery for each asset).
- Added benefit for everyone from attracting claims traders in the platform, improving liquidity and increasing revenue for the Exchange and therefore % recovery for customers.



