Kevin Bertoldi
Passeggiata dei Castani 20
39100 Bolzano BZ
Italy
kevin.bertoldi@gmail.com
+39 392 7882766
Jan. 04, 2024



Honorable Judge John T. Dorsey
824 North Market Street
5th Floor, Courtroom No. 5
Wilmington, Delaware 19801
USA
+1 (302) 533-3169

**RE: OBJECTION to Motion of Debtors to estimate claims based on digital assets, Case No. 22-11068 (JTD), Hearing Date: January 25, 2024 at 10 AM (EST)**

Dear Judge Dorsey:

I am writing to formally object to the Debtors' request for an order to estimate Claims (including Customer Entitlement Claims) based on the amounts set forth in the Digital Assets Conversion Table, because this is grossly inequitable to customer creditors like myself who have their claims denominated in specific digital assets rather than in USD.

I am a customer creditor who has a claim of approximately $85,000 (at today's digital asset market prices) denominated in Bitcoin digital asset. This is of importance because digital asset prices have soared since the time of the original bankruptcy petition. For example, Bitcoin price was $16,871 on 11/11/22. Market price of Bitcoin is at $42,500 as of 01/04/24.

Debtors' Motion to value customer claims at the time of the petition would unfairly prejudice a significant class of customers which have their claims denominated in specific digital assets. I know my view is not a lone objection.

1. **The Motion by Debtors ignores the express terms of the FTX Terms of Service (ToS) Clause 8.2.6 of ToS expressly states as follows:**

    A) Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading.

    B) None of the Digital Assets in your Account are the property of, or shall or may be loaned to FTX Trading; FTX Trading does not represent or treat Digital Assets in Users' Accounts as belonging to FTX Trading.

    Based on the clear terms of the ToS, I and many other customers had dealt with the exchange on the basis that our digital assets held on the exchange remained our property, so they should not be mingled together with other assets of the Debtors. In contrast with other high profile cryptocurrency bankruptcies (e.g. Celsius) where the digital assets were a loan to the platform. Based on ToS, digital assets held at FTX exchange were NOT loaned to the exchange but rather customers should be entitled to claim ownership of their digital assets.

    At the crux of the objection to the Debtors' Motion regarding customer assets, there is a very important question of law which remains undetermined: **Given the express language of the ToS,**

whether customer assets form part of the Debtors' estate or whether customer assets would remain owned by customers and/or subject to a trust in favor of customers. The resulting remedies and application of bankruptcy law would naturally follow the determination of this critical question of law.

As far as I am aware, the Debtors have not applied to court for a determination on this question of law, nor have any arguments for either position been openly heard before a court. I am aware that there were private negotiations between certain customers/creditors and Debtors regarding this critical question of law, in respect of which the Debtors had separately settled out of court.

If the court finds that customer assets do not form part of the Debtors' estate, then customer assets should be returned in the same form in which they were held.

2. **Ad Hoc Committee (AHC) does not represent the interests of customer claimants with claims denominated in specific digital assets.**

    Based on public information, the AHC represents opportunistic investors who had purchased customer and non-customer claims. For these group of claimants, it would favor them to have claims valued at the time of the petition, because this would effectively mean that customers claimants with claims denominated in specific digital assets which have now substantially increased in price would be robbed to reimburse the other categories of claimants and creditors.

    **It is NOT in the interest of claimants represented by AHC to fully and fairly engage with the court and the Debtors to seek clarity on the question of law of whether customer assets form part of the Debtors' estate.**

    As mentioned above, I am aware there were private negotiations between claimants represented by AHC regarding this critical question of law which were not openly heard by the court. This raises serious concerns that there is indeed a triable issue to be considered, otherwise the Debtors would not have settled the claim so swiftly and privately.

    Despite spending hundreds of millions primarily from customer funds on legal and professional fees, the Debtors are still unable to achieve fairness for customer claimants, who should not in any circumstances be grouped into the same class as other creditors.

    Due to the unique circumstances of the Debtors' business and the cryptocurrency industry (millions of retail customers), the profile of customer claimants is scattered making it difficult for claimants to organize themselves to present formal arguments before the court.

    **Customer claimants like myself have already been victimized by the actions of Sam Bankman-Fried. Please do not let us be victimized again by non-customer commercial interests or negligent professional advice guiding the Debtors' action, just because there is no specific ad hoc committee formed to address these important issues.**

    For the reasons above, I respectfully request the court to deny the Motion, and immediately call for a determination of the critical question of law raised. I trust that you will consider these objections seriously in order to uphold fairness and integrity in the bankruptcy proceedings.

Sincerely,

*[signature]*

Kevin Bertoldi




**posteitaliane**

**postedelivery globe**

Mod.20314 - Ed.11/18 - EP2497 - St. [1A69 - 1A35]

EE 4442 7608 4 IT

**SENDER/ABSENDER**

NAME/NAME: Kevin Bertoldi
TELEPHONE/TELEFON: +39 392 7882766
STREET/STRAßE: Passeggiata dei Castani 20
CITY/STADT: Bolzano
POSTAL CODE/PLZ: 39100
COUNTRY/LAND: Italy

**RECEIVER/EMPFÄNGER**

NAME/NAME: Honorable Judge John T. Dorsey
TELEPHONE/TELEFON: (302) 533-3169
STREET/STRAßE: 824 North Market Street
CITY/STADT: Wilmington, Delaware
POSTAL CODE/PLZ: 19801
COUNTRY/LAND: USA

**CUSTOMS DECLARATION/ZOLLERKLÄRUNG**

| Detailed description of contents/Beschreibung eines jeden Artikels | HS tariff number/Code des Zolltarifs der Waren | Number of pieces in item/Menge (Zahl) | Weight in Kg/Gewicht in kg | Value/Wert | Country of origin/Herkunftsland der Waren |
|---|---|---|---|---|---|
| Documents | | 1 | | | |
| | | | Tot. weight/Gesamtgewicht in kg | Tot. value/Gesamtwert | |

**Description of contents - Beschreibung des Inhalts:**
[X] Documents/Dokument
[ ] Other/Sonstiges
[ ] Commercial sample/Warenmuster

Certificate number (s) - (Anz. Zertifikate)
Invoice number - (Nr. der Rechnung/en)
License no. - (Lizenznummer)

[ ] INSURANCE (up to € 3.500)
VERSICHERUNG (bis zu € 3.500)

**STAMP/STEMPEL**

Peso Kg: 0,033
80   €.36,50
08/01/2024 12:22
Fraz.88233 Sez. 05

I certify that particulars given in this customs declaration are correct and that this item does not contain any dangerous article prohibited by legislation or by postal or customs regulations / Ich bescheinige, dass in dieser Zollerklärung angegebenen Informationen richtig sind und dass diese Sendung keine schädlichen Gegenstände oder solche, die gemäß den Post- oder Zollbestimmungen verboten sind, aufweist. The customer declares to have understood and accepted the General Contract Terms and Conditions of Postedelivery globe and to have read the information provided on the processing of personal data, published in its full version on the website poste.it and available at all post offices. / Der Kunde erklärt, die allgemeinen Vertragsbedingungen von Postedelivery globe kennt und akzeptiert und dass er den Datenschutzhinweis betreffend die Verarbeitung personenbezogener Daten, dessen vollständige Version auf der Website poste.it veröffentlicht ist und bei den Postfilialen zur Verfügung steht, eingesehen hat.

Sender's signature - Unterschrift des Absenders

Pursuant to articles 1341 and 1342 of the Civil Code, the Sender specifically approves the following articles of the contract: 2.2, 2.3, 2.4, 3.3, 4.6, 5.2, 5.5, 7.1, 7.2, 7.3, 7.5, 8.1 letters b), c) and d), 8.5, 10.1, 11.1, 12.1. / Gemäß Art. 1341 und 1342 ZGB akzeptiert der Absender ausdrücklich die folgenden Artikel des Vertrags: 2.2, 2.3, 2.4, 3.3, 4.6, 5.2, 5.5, 7.1, 7.2, 7.3, 7.5, 8.1 Buchstaben b), c) und d), 8.5, 10.1, 11.1, 12.1.

Sender's signature - Unterschrift des Absenders