## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **RE: D.I. 5378** |
| | **Hearing Date: January 31, 2024 at 10:30 a.m. (ET)** |
| | **Objection Deadline: January 18, 2024 at 4:00 p.m. (ET)** |

**BIDDER 1'S OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING (A) ENTRY INTO, AND PERFORMANCE UNDER, THE SHARE PURCHASE AGREEMENT AND (B) THE PURCHASE AND SALE OF CERTAIN SHARES FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (II) DISMISSING THE CHAPTER 11 CASES OF CERTAIN DEBTORS EFFECTIVE UPON THE EARLIER OF THE CLOSING OR THE TERMINATION OF THE SHARE PURCHASE AGREEMENT**

Bidder 1[1] hereby submits this (I) objection ("Objection") to the *Motion Of Debtors For Entry Of An Order (I) Authorizing And Approving (A) Entry Into, And Performance Under, The Share Purchase Agreement And (B) The Purchase And Sale Of Certain Shares Free And Clear Of Liens, Claims And Encumbrances And (II) Dismissing The Chapter 11 Cases Of Certain Debtors Effective Upon The Earlier Of The Closing Or The Termination Of The Share Purchase Agreement* [D.I. 5378] (the "Sale Motion").

---

[1]     Upon information and belief, the objecting party represented by undersigned counsel is the potential purchaser described in the Sale Motion (as defined herein) as "Bidder 1." Bidder 1 has followed the Debtors' protocol of not revealing its identity (presumably because the Debtors believe it to be covered by the NDA), but remains ready to do so at any time.

## PRELIMINARY STATEMENT

1.       In their Sale Motion, the Debtors[2] seek bankruptcy court approval for one debtor to

sell two of its debtor subsidiaries, FTX Cyprus and FTX Switzerland GmbH (the "Subject

Debtors"), to its debtor parent in a private sale transaction on the grounds that the private sale is

better than the agreement they had reached with Bidder 1 [3] (the "Bidder 1 Agreement"), although

the Sale Motion makes clear that the Debtors never provided any opportunity for bidders to meet

or beat the terms of their private sale.  The Debtors' analysis of the Bidder 1 Agreement, in any

event, (1) omits that Bidder 1 has guaranteed payment of  FTX Cyprus customer claims arising

from any shortfall in their accounts existing as of the Petition Date, which the Debtors estimate to

be worth approximately $7.7 million, and (2) unconditionally retains $102 million of claims

against FTX Trading and all claims against Alameda.  In addition, Bidder 1 has advised the Debtors

that it is willing to pay an additional $1.5 million more than the Sales Transaction proposed by the

Debtors for the shares of the Subject Debtors.  Because the Sale Transaction is not the highest and

best offer, the Debtors' motion to approve the insider transaction should be denied.

## BACKGROUND

2.       The Debtors' proposed Sale Transaction involves Debtor FTX Europe, a Swiss

stock corporation, selling to its parent Debtor FTX Trading, a company organized under the laws

of Antigua and Barbuda, the shares of its wholly-owned Debtor subsidiaries FTX EU Ltd., a

Cyprus limited company, and Debtor FTX Switzerland GmbH, a Swiss limited liability company.

All four of these debtors are foreign companies, and the validity of each of their bankruptcy filings

has been challenged as unauthorized under the controlling law of each such debtor's country of

---

[2]       The Sale Motion was filed by FTX Trading Ltd., FTX Europe AG "and their affiliated debtors and debtors-in-possession," numbering over one hundred debtors.  Their estates are not substantively consolidated.

[3]       Capitalized terms used herein have the meaning given in the Sale Motion unless otherwise noted.

2

formation.  [D.I. 3399, 4037, 5529.]  Only if this Court determines that it has jurisdiction over the

Subject Debtors and their parent (FTX Europe) does this Objection become relevant.

3.      The Debtors' motion is premised on their conclusion that they engaged in a sale

process that, while not public or transparent, was nonetheless fair, culminating in the Bidder 1

Agreement as described in the Sale Motion.  The Debtors describe the terms of the Bidder 1

Agreement as follows:

> The transaction with Bidder 1 contemplated, among other things, (i)
> the purchase and sale of the shares of FTX Cyprus for $5,000,000
> and the shares of FTX Switzerland for $900,000; (ii) payment by
> Bidder 1 of $750,000 to the Debtors for certain costs and expenses,
> including a contribution to FTX Cyprus in the amount of $500,000
> for ongoing working capital; and (iii) satisfaction by the Debtors of
> certain intercompany claims held by certain Debtors against the
> Subject Companies in an aggregate amount of $4,711,094.
> Additionally, the transaction with Bidder 1 also contemplated entry
> into a release agreement pursuant to which (i) the Subject
> Companies would release certain Debtors from all claims with
> respect to matters that have existed or occurred at any time prior to
> and including the date of the release agreement and (ii) the Debtors
> would release Bidder 1 and the Subject Companies from all claims
> with respect to matters that have existed or occurred at any time
> prior to and including the date of the release agreement (with the
> exception of an intercompany receivable owed to FTX Switzerland).
> The closing of the transaction with Bidder 1 was subject to certain
> closing conditions, including (i) the dismissal of the Chapter 11
> Cases of Seller and the Subject Companies; (ii) obtaining approval
> from the Swiss court supervising the Moratorium; (iii) receipt of
> approval from CySEC with respect to the transfer of the shares in
> FTX Cyprus; and (iv) other customary closing conditions.

Mot., ¶ 21.  The Debtors suggest (without actually establishing) that their insider Sale Transaction

is better than the Bidder 1 Agreement, and therefore the Court should grant the Sale Motion.  *See*

Mot., ¶ 36.

4.      The Debtors' description, however, omits the fact that Bidder 1 committed to

having sufficient funds at closing to pay all customer claims of FTX Cyprus, defined as any right

to payment of an FTX Cyprus customer in respect of such customer's trading activity through or

3

deposit of funds of FTX Cyprus ("Customer Claims") as of the Petition Date. Cyprus law requires that customer balances be funded as a condition of an active investment license (Mot, ¶ 9). Because Bidder 1 intends to utilize the FTX Cypress license to operate, it agreed to pay the Customer Claims if and when required by the Cyprus Securities and Exchange Commission ("CySEC"). Declaration of Wei Zhou, ¶ 6, attached as Exhibit A ("Exh. A"). Accordingly, Bidder 1 guaranteed payment of all FTX Cyprus Customer Claims.

5.      The Debtors calculate that, as of the Petition Date, "the shortfall in customer funds (the 'Shortfall') is approximately EU $7.1 million." Mot., ¶ 10. As of January 17, 2024, the dollarized value of the Shortfall is in excess of $7.7 million.[4] The Debtors' proposed Sale Transaction does not address the fact that these FTX Cyprus Customer Claims need to be paid as a condition of re-instating the license – i.e., that the negative account balance would need to be funded – and accordingly ignores a $7.7 million liability that Bidder 1 is covering.[5] As a result, the terms of the Bidder 1 Agreement are materially better for the customers and creditors of FTX Cyprus because any shortfall in the accounts of such customers are guaranteed to be paid by Bidder 1 (the "Shortfall Guarantee").

6.      An additional benefit of the Bidder 1 Agreement is that it does not result in the release of inter-company claims. While the Sale Motion is confusing as to the impact on various Debtor's creditors of inter-company releases, it clearly contemplates a potential release of Seller's $102 million claim against Purchaser, and a global release by Seller of Alameda Research. Mot. at 14-15 ("[E]ach of the Remaining FTX Europe Group Entities [including Seller] will release the

---

[4]     The Debtors calculate the shortfall in customer funds at approximately $7.1 million Euros, which when dollarized to US dollars translates into $7,719,908 as of January 17, 2024.
[5]     Even if the Debtors disagree that such funding is a condition of reinstatement of the license, as they seem to concede in paragraph 9 of the Sale Motion, the fact that Bidder 1 has agreed to pay the Customer Claims in the event CySEC requires it, constitutes a material benefit that the Sale Transaction does not provide.

ME1 47406066v.4

other Debtors [including Alameda] from all claims with respect to matters that have existed or occurred at any time prior to and including the date of the Release Agreement."). Moreover, it appears that Alameda Research may retain its $60 million claim against Seller. The Debtors have not provided any analysis of the value of these inter-company releases, or their impact on the Debtors' proposed purchase price for the Subject Debtors. Certainly in light of the admitted fraudulent conduct of Sam Bankman-Fried and Alameda Research, a full-fledged investigation and analysis by an independent party should be conducted prior to releasing such claims. More simply, there is nothing in the Sale Motion that purports to justify any releases as part of a sale of the Subject Debtors. The Bidder 1 Agreement avoids the many valuation and equally thorny conflict issues arising from the inter-company releases in the insider Sale Transaction proposed by the Debtors.

7.      The Bidder 1 Agreement includes a $7.7 million Shortfall Guarantee and preserves Seller's $102 million claim against FTX Trading and all claims against Alameda, and is therefore indisputably a higher and better transaction.

8.      Finally, Bidder 1 advised the Debtors that it is prepared to make a higher and better offer, and has in fact offered to increase its purchase price for the Subject Debtors' shares to $7.5 million, a $1.5 million increase over the Sale Transaction which, with the $7.7 million Shortfall Guaranty, the unconditional non-release of $100 million in claims against Debtors, is clearly higher and better than the Sale Transaction. Exh. A.

9.      In short, the insider Sale Transaction proposed by the Debtors was not the highest and best offer when the Sale Motion was filed, and is not the highest and best offer now. At the very least, the failure of the Debtors to expose their supposedly better price to the market reflects a serious flaw in the process.

ME1 47406066v.4

10.     As noted by the Debtors in the Sale Motion, Bidder 1 entered into a Non-Disclosure Agreement ("NDA") with the Debtor.  Mot., ¶ 18.  The NDA[6] does not preclude disclosure of Bidder 1's offer or the Bidder 1 Agreement.[7]  While the drafts exchanged and the Debtors' response would certainly be relevant to any analysis of the overall fairness of the process, the Debtors' good faith, and the adequacy of price, such facts might be covered by the NDA, and are not necessary for the Court, creditors and customers to know the relevant, omitted terms of the Bidder 1 Agreement.[8]

11.     It is the Debtors' burden to establish the overall fairness of an insider transaction, and they have failed to meet that burden.  *Citicorp Venture Capital, Let. V. Comm. Of Creditors Holdings Unsecured Claims (In re Papercraft Corp.),* 211 B.R. 813, 823 (W.D. Pa. 1997) ("[T]he burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein.") *aff'd.,* 160 F.3d 982 (3d Cir. 1998).  The Debtors' failure to allow bidding against their insider terms taints the procedure.  Nor have they produced any evidence that the proposed insider transaction is in the best interests of the creditors of either the selling Debtor or the Debtors being sold.  The

---

[6]     The fact that Bidder 1 entered the NDA was made public by the Debtors in the Sale Motion, and so it can no longer be considered Confidential Information.

[7]     Any provision barring disclosure of the terms of a purchase of a debtor's assets in bankruptcy would be in violation of public policy in any event. Transparency is the cornerstone of the bankruptcy process, requiring full and accurate disclosure, especially in the context of an insider sale transactions. *See In re Gitto Glob. Corp.*, 422 F.3d 1, 7 (1st Cir. 2005) ("[U]nrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system." (citation and internal quotation marks omitted)).  Not surprisingly, Delaware common law holds that contracts that offend public policy or harm the public are void. *Lincoln Nat. Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*, 28 A.3d 436, 441 (Del. 2011). The NDA does not preclude such disclosure, but if it did such a provision would be void.

[8]     In any event, the Debtors' disclosure of the NDA, description of the terms of the Bidder 1 Agreement, and reliance on their negotiations as evidence of the fairness of the process places all such information in the public domain and outside of any claim of confidentiality.  Nonetheless, out of an abundance of caution, Bidder 1 has only disclosed the omitted terms of the agreement with the debtor and its offer to better it, which are very clearly not covered by the terms of the NDA.

Debtors have not established that the insider Sale Transaction is in the best interests of the creditors and customers of FTX Cyprus, FTX Switzerland, or FTX Europe.

12.    A higher and better offer exists and therefore the Debtors' request for approval of the insider Sale Motion should be denied.

## CONCLUSION

For the foregoing reasons, in the event that the Court determines that it has jurisdiction over the Debtors involved in the Sale Motion, the Court should deny the Sale Motion.

DATED:  January 18, 2024                    **MCCARTER & ENGLISH, LLP**

*/s/Kate R. Buck*
Kate R. Buck, Esq. (No. 5140)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
kbuck@mccarter.com

*Counsel for Bidder 1*

**MCCARTER & ENGLISH, LLP**

*/s/Lisa S. Bonsall*
Lisa S. Bonsall, Esq. (*pro hac vice* forthcoming)
Philip Pavlick, Esq. (*pro hac vice* forthcoming)
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 639-2066
lbonsall@mccarter.com
ppavlick@mccarter.com

ME1 47406066v.4