1              UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF DELAWARE
2

3    IN RE:                          .  Chapter 11
                                     .  Case No. 22-11068 (JTD)
4    FTX TRADING LTD.,               .
     *et al.*,                       .  (Jointly Administered)
5                                    .
                                     .  Courtroom No. 5
6                                    .  824 Market Street
              Debtors.              .  Wilmington, Delaware 19801
7                                    .
                                     .  Wednesday, January 17, 2024
8    . . . . . . . . . . . . . . .   3:00 p.m.

9                    TRANSCRIPT OF HEARING
           BEFORE THE HONORABLE JOHN T. DORSEY
10              UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors and
     Debtors-in-Possession:    Adam G. Landis, Esquire
13                             LANDIS RATH & COBB, LLP
                               919 Market Street
14                             Suite 1800
                               Wilmington, Delaware 19801
15
                               -and-
16
                               Marc De Leeuw, Esquire
17                             SULLIVAN & CROMWELL, LLP
                               125 Broad Street
18                             New York, New York 10004

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Jermaine Cooper, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.

1   <u>APPEARANCES (CONTINUED)</u>:

2   For the United States
    Internal Revenue
3   Service:                    Elisabeth M. Bruce, Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
4                                 TAX DIVISION
                                950 Pennsylvania Avenue NW
5                               Washington, DC 20530

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                 INDEX

2   MOTIONS:                                                PAGE

3   Agenda
    Item 1:    Pretrial Conference Regarding the Estimation      4
4              of Claims Filed by the United States
               Department of the Treasury – Internal Revenue
5              Service

6              Court's Ruling:                              35

7   Transcriptionists' Certificate                         43

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced at 3:00 p.m.)

2            THE COURT:  Good afternoon, this is Judge Dorsey.

3    We're on the record in FTX Trading Ltd., Case Number 22-

4    11068.

5            This is a status conference, I believe.  I'll go

6    ahead and turn it over to debtors' counsel.

7            Anybody?  Mr. Landis?

8            MR. LANDIS:  Thank you, Your Honor.  Adam Landis

9    of Landis Rath & Cobb, here on behalf of the debtors.

10           As Your Honor noted, we're here for the pretrial

11   and status conference regarding the estimation of claims

12   filed by the United States Department of Treasury.

13           I will hand over the virtual podium to

14   Mr. De Leeuw and my Sullivan & Cromwell colleagues to present

15   argument today.

16           THE COURT:  Okay.  Thank you.

17      (No verbal response)

18           THE COURT:  You're muted.

19           MR. DE LEEUW:  Apologies, Your Honor.

20           Good afternoon.  Your Honor, Marc De Leeuw from

21   Sullivan & Cromwell.  This is my first time appearing before

22   you, even if remotely; it's a pleasure to be before you.

23           If Your Honor likes, I would present on the burden

24   of proof issue that the parties have submitted in briefs and

25   after the parties have discussed the proof issue, we're happy

1  to talk about discovery; although, I think the parties are

2  largely in agreement on those subjects.

3           THE COURT:  Okay.  Thank you.

4           MR. DE LEEUW:  Thank you.

5           May I please the Court?  It's worth looking back

6  at why the Court asked for additional briefs on the burden of

7  proof issue that were ultimately submitted on January 5th.

8  As Your Honor recalled, back last year, the debtor submitted

9  a motion seeking an estimation hearing.  In its objection,

10 the IRS raised the issue of burden of proof, arguing that the

11 debtors had the burden of proof.

12          In our reply brief, filed back in December, we

13 explained why that issue, why that argument was wrong, why

14 the debtors didn't, in fact, have the burden of proof.  The

15 IRS had the burden of proof, in fact, because they had

16 submitted an unexplained and unsupported claim, they weren't

17 entitled to the presumption of validity under bankruptcy law,

18 and because it was not an assessed claim under tax law, the

19 IRS was not entitled to a presumption of correctness under

20 underlying tax law.

21          We submitted that brief and our reply, and Your

22 Honor at the hearing in December, understandably recognizing

23 that this burden of proof issue had only been joined in our

24 reply, wanted to give the IRS a chance to respond to our

25 arguments and gave the parties a chance to put in briefs on

1   this point.  The parties agreed that they would submit a

2   supplemental brief on this point on January 5th, nearly a

3   month later.

4        So both parties had the opportunity to look for

5   law that had been cited in the briefs back in December, to

6   look at the cases that were cited, to look at the arguments

7   that both sides had made, and then respond accordingly, to

8   raise the issue with Your Honor.

9        But, in fact, what the IRS did in its January 5th

10  brief is not respond at all to any of the arguments made by

11  the debtors in its reply brief.  They didn't respond to any

12  of the cases that the debtors cited.  They didn't say that we

13  had misdescribed any of the cases we cited.  They didn't say

14  we had misdescribed or mischaracterized any of the cases that

15  the IRS had cited that we explained didn't support the

16  propositions that the IRS was arguing.  They just simply

17  recited the same law that they had cited back in their

18  objection and then they argued quite a bit about a statutory

19  in 26 U.S.C. 7491, a provision on which the debtors have

20  never relied, and I'll explain a little while later, is not

21  really relevant to what we're doing here.

22       So it seems as if the IRS had anything to say

23  about the law or the arguments that were raised back in the

24  brief in December, the IRS would have included that in their

25  brief in January.  Having done so, I think it's apparent that

1 the IRS had nothing to say and with apologies for the *cliche*,

2 the IRS' silence speaks volumes here.

3       So with that as background, Your Honor, I'd like

4 to go through the three points that were raised in our brief

5 and I'll respond to an argument made about 7491 in the IRS'

6 brief and then I'll make just a few observations about how I

7 think this issue really plays out in this estimation

8 proceeding.

9       So, first, I'll briefly discuss the bankruptcy

10 presumption of validity, which I think is largely beside the

11 point here, but I'll briefly address that.  And then I'll

12 address the presumption of correctness and why the IRS is not

13 entitled to a presumption of correctness, because it has not

14 issued an assessment under underlying tax law.  And even if

15 the IRS was to issue an assessment under regulatory guidance,

16 that claim would not be entitled to a presumption of

17 correctness, because it would be naked and arbitrary and

18 excessive, and therefore, under well-settled law, it would

19 not be entitled to a presumption of correctness and,

20 therefore the IRS bears the burden of proof for many reasons.

21       So we'll start very briefly on the presumption of

22 validity in bankruptcy law.  Rule 3001 usually provides that

23 the filing of a claim provides a presumption of validity to

24 that claim.  All that means is that the claimant has made out

25 a *prima facie* case that satisfies its burden of going

1   forward.  But as we explained back in our brief in December

2   and, again, in our brief in January, not every claim entitles

3   a claimant to a presumption of validity.  An unexplained

4   claim, without any explanation or support, wouldn't give a

5   presumption of validity.  We cited the Mobile manufacturing

6   case for that proposition.  Again, the IRS didn't respond.

7           But in any event, as I said, the presumption of

8   validity only goes to the burden of going forward and that

9   can be -- once there's a burden met for going forward, the

10  debtors can respond by providing their own evidence and then

11  the issue is joined and the real question is about the burden

12  of proof on the merits.  And so, in the course of this

13  proceeding, we expect the IRS has provided interrogatory

14  responses which provide some explanation for a new claim.

15  Now it's $8 billion.

16          Your Honor may recall we started with $43 billion

17  for the IRS claim, then it was amended to $24 billion, and

18  now it's $8 billion.  We believe all of these are arbitrary,

19  excessive, irrational -- choose your adjective.  But, in any

20  event, the IRS at least tried to explain what they're talking

21  about now.  Obviously, the debtors have put in detailed tax

22  returns, schedules.  They have the ability to testify -- have

23  accountants testify and respond to information disclosure

24  requests.

25          So I think Your Honor will ultimately conclude

1  that the issue has been joined and, therefore, what we're

2  really talking about is the burden of proof on the merits,

3  which is really what both sides have focused on in their

4  briefs.  Both parties agree that the burden of proof on the

5  merits is dictated by the underlying tax law; that's the

6  Raleigh decision from the Supreme Court.  Raleigh holds that

7  the underlying law is law is what supplies the burden of

8  proof.  Here, that's tax law.

9          So that brings me to my second question, which is

10  who has the burden of proof on underlying tax

11  (indiscernible)?  As both parties observe, in the typical IRS

12  tax case, the IRS is entitled to a presumption of correctness

13  that shifts the burden of proof over to the taxpayer.  But

14  that's only because the IRS has made a formal assessment of

15  the tax under its regulations and that's what shifts the

16  burden.  If it hasn't made an assessment, it's not entitled

17  to shift the burden and the burden remains on the IRS, which

18  is asserting a claim.

19          Many courts have made this very point.  For

20  instance, in a case I'm almost surely going to mispronounce,

21  it's Anastasato from the Third Circuit.  The Third Circuit

22  said that, quote:

23          "The government's deficiency assessment is

24  generally afforded a presumption of correctness."

25          That's 794 F.2d 886.

1          The Third Circuit, again, made this point in a

2   case called Psaty, P-s-a-t-y.  The Third Circuit held that,

3   quote:

4          "The certification of the IRS commissioner's

5   assessment shifts the burden of proof."

6          And that's 442 F.2d 1159.

7          The Tenth Circuit in the March decision actually

8   explained the reasoning for this rule.  The Tenth Circuit

9   said, quote:

10          "The regulations governing the assessment process

11   serve to ensure both, the efficiency and the accuracy of the

12   IRS process."

13          That's 335 F.3d 1188.

14          And we set out in our brief, very briefly, the

15   regulatory process that the IRS needs to follow to do a

16   formal assessment, something called a "notice of deficiency."

17   And there's no dispute here that the IRS has not done a

18   formal assessment of notice of deficiency, pursuant to its

19   regulation.

20          In its recently served interrogatory responses --

21   we just get them on Friday -- the IRS says explicitly, These

22   are estimates and it has not issued a notice of deficiency,

23   which would only come at the end of an examination, when the

24   estimates may change if more information is learned.

25          So, we all agree there's no assessment that has

1  been issued by the IRS and, as I just stated, the law that we

2  provided holds clearly that it's the IRS assessment, pursuant

3  to the regulations, that shifts the burden from the IRS to

4  the taxpayer.

5      So what does the IRS say about all this?

6  Remember, this was a point that was made in our reply brief

7  in December.  We explained that an unassessed tax claim is

8  not entitled to shift the burden of proof.  The IRS says

9  literally nothing.  They did not explain why we were wrong in

10 our December brief.  They didn't explain what cases we had

11 cited that were wrong or respond to our cases; they literally

12 put in the same cases that they cited back in December.

13     So, what cases have they cited?  Well, the lead

14 case that they cite, it's on page 4, they cited prominently

15 as a case that allows them to do an estimate is Greco v

16 United States; it's a Pennsylvania District Court decision.

17 Here's what Greco says, quote:

18     "The presumption of correctness arises when the

19 IRS submits a certification of the commissioner's assessment

20 or an affidavit signed by an IRS officer, detailing the tax

21 liability."

22     That's at 380 -- that's 380 F. Supp. 2d 611.

23     The Greco decision actually cites for that

24 proposition, the Third Circuit's decision in Psaty, the case

25 I mentioned earlier.  Again, Psaty makes this very same

1    point.  It says the following -- a long quote, but several

2    different places in the decision:

3          "The presumption of correctness afforded the

4    commissioner's determination allows the government to

5    establish a *prima facie* case of liability, merely by offering

6    into evidence, a certified copy of the commissioner's

7    assessment."

8          A little later on:

9          "The machinery prescribed by Congress to determine

10   the amount due the government is the assessment of the

11   administrative agency charged with its collection."

12         A little later on:

13         "We hold, therefore, that when the government

14   offers in evidence the certification of the commissioner's

15   assessment in support of the counterclaim, the presumption of

16   correctness operates to place upon the taxpayer both, the

17   burden of going forward and the burden of persuasion."

18         That's 442 F.2d 1159 through 1160.

19         So all these cases stand -- that the IRS has

20   cited -- stand for the same proposition; the IRS needs to go

21   through its regulation and issue an assessment in order to

22   shift that burden of proof to have that presumption of

23   correctness.

24         The other case on which the IRS relies most

25   prominently is U.S. v Isley, the Isley brothers case.  It's a

1   non-precedential opinion.  That case involved actually two

2   assessments by the IRS.  The IRS issued a first assessment

3   and then they actually, the IRS points this out in their

4   brief, it issued an amended assessment.

5           And even at that, the Third Circuit said that the

6   presumption of correctness, which was attached to the

7   assessment, was, quote, "very weak in this case, because of

8   the IRS' restatements of its computation."

9           That's 203 Fed.Appx. 409.

10          So there, there were two different assessments and

11  even at that, the Third Circuit says it's a very weak

12  presumption.

13          So there's only one case that's cited by the IRS

14  that didn't have a formal assessment.  That's the <u>Fidelity</u>

15  <u>America</u> case that the IRS cited, both in its December brief

16  and, again, in its January brief.  And in our brief -- in our

17  reply brief back in December, we explained why the <u>Fidelity</u>

18  <u>America</u> doesn't apply here, didn't actually hold, didn't even

19  decide the question of whether the IRS is entitled to a

20  presumption of correctness when there's been no formal

21  assessment and, in any event, is inapplicable here.

22          Again, the IRS never responded.  They knew we were

23  addressing, directly, one of the prime cases they had cited;

24  again, didn't respond.

25          As we explained in both, our December brief and

1  our January 5th brief, <u>Fidelity</u> was decided at a time -- it

2  was 1990 -- at that time, the IRS was prohibited by the

3  automatic stay from issuing an assessment against the debtor

4  that was already in bankruptcy.  At that point, there was no

5  provision that allowed the IRS to issue an assessment.

6          The law changed in 1994 and allowed the IRS to

7  issue a deficiency notice or an assessment.  And in that

8  case, the rationale or at least the argument was, well,

9  because the IRS can't issue an assessment, perhaps we should

10  give them this advantage in bankruptcy to give their

11  calculations the presumption of correctness.  But as I said,

12  that's no longer the law.  Now the IRS can issue a notice of

13  deficiency or official assessment in bankruptcy and the IRS

14  hasn't done so.

15          In any event, the <u>Fidelity America</u> case, as I

16  said, didn't decide this issue.  What the <u>Fidelity America</u>

17  case said was, we -- the Court said it (indiscernible) about

18  whether a presumption should apply where there's been no

19  prepetition IRS tax assessment.

20          That's 1990 WL 299418 at page 6.

21          And it went on to not decide the question, because

22  what the Court found was that the IRS claims there were

23  arbitrary and excessive, so it didn't need to decide the

24  question of whether there was a presumption anyway.

25          All this brings me to my third question.  If the

1   IRS did issue a formal assessment or notice of deficiency, it

2   still wouldn't be entitled to a presumption of correctness

3   because the formal assessment, if it were to be these $8

4   billion worth of claims that the IRS now argues about, those

5   wouldn't be entitled to a presumption of correctness, because

6   that would be a naked claim that's arbitrary and excessive.

7   Under Supreme Court and Third Circuit law, clearly, naked and

8   arbitrary and excessive claims are not entitled to a

9   presumption of correctness, and so the IRS continues to have

10  the burden of proof.  And that law clearly applies here.

11          Your Honor, I recognize the word "naked

12  assessment" sounds like it's a very, very extreme situation

13  where you just put down a number and there's nothing else.

14  It's not really as extreme as all that.  What a naked

15  assessment means is that it's not supported by evidence that

16  connects the taxpayer to specific sources of income.

17          So, for instance, the Third Circuit in that case I

18  can't pronounce, Anastasato, the presumption -- the Third

19  Circuit said the presumption only applies if the deficiency

20  assessment is supported by foundational evidence connecting

21  the taxpayer with the tax-generating activity.  That's at

22  page 887.

23          In short, the IRS needs to come up with some

24  logical evidence that connects the taxpayer's profits to its

25  tax assessment.  It can't just say, It's up to the taxpayer

1  to prove the negative.  You didn't make any profits, you go

2  prove that.  The IRS needs to come up with some reasoned

3  basis, based on the taxpayer's records and the actual

4  business of the taxpayer.

5        It can't just say, there's a huge amount of money

6  flowing through the entity and so, therefore, we're including

7  all of that money as profits.  You tell us why that's wrong.

8        Here's another case where the Court found a naked

9  assessment, the Kohler case, written by Judge Posner in the

10  Seventh Circuit.  It's another good example.

11        In that case, the taxpayer purchased Mexican-

12  denominated bonds and those bonds were going to be purchased

13  by Mexico, the Government, in pesos, but those pesos were

14  going to have certain restrictions.  It could only invest

15  those pesos into certain government projects that were

16  approved by the Government.  You couldn't exchange those

17  pesos into dollars for some number of years.  And those

18  restrictions, clearly, would have the impact on the value of

19  the pesos and that the taxpayer would receive.

20        Instead of trying to determine what the

21  appropriate discount was for the value of those pesos, the

22  IRS just assessed the value, as the full value of the pesos.

23  And what Judge Posner said is, That assessment is naked and,

24  therefore, the IRS' claims need to be rejected, because the

25  IRS had provided no evidence linking the valuation that it

1 had done to the actual state of affairs.  It said the IRS

2 could have come up with a *prima facie* plausible number or had

3 some evidence explaining what the discount was; instead, it

4 just relied on the full value of those pesos and it was not

5 entitled to do that and so, therefore, it was a naked

6 assessment.

7 　　　　　Separately, although it's related, courts have

8 also held that arbitrary and excessive claims are not

9 entitled to the presumption of correctness.  And, again,

10 those courts have made clear that what the IRS needs to do is

11 come up with some reasoned basis connecting the taxpayer's

12 records and its business for the claimed tax liability.  You

13 can't just throw out big numbers and say, You prove to us why

14 it's wrong.

15 　　　　　There's no dispute, I believe, between the parties

16 that the IRS can estimate tax liability in the appropriate

17 circumstances, but it needs to connect that to the taxpayer's

18 records, to leads drawn from those records, or to the

19 taxpayer's actual business and state of affairs. It can't

20 just, again, throw out big numbers and say you prove the

21 opposite.

22 　　　　　So, here is an example of what the IRS can do and

23 that was supported by -- it was affirmed by the Supreme

24 Court, the United States v. Fior D'Italia case.  In that case

25 the IRS found that the FICA taxes that had been withheld by

1  the taxpayer for the employees PIC's understated the amount

2  of tips that were shown on credit card slips.  The IRS said

3  you are providing FICA withholding for employee tips, but the

4  credit card slips show a significantly higher number.  So,

5  the IRS then did an assessment and came up with a larger FICA

6  withholding number.

7       What did it do? It did something called an

8  aggregate estimation method.  What it did was it looked at

9  the taxpayer's credit card slips and it came up with an

10  average tip amount for each year.  So, it went through 1991

11  was 14.5 percent, 1992 was 14.9 percent, and then it used

12  those tip percentages to estimate the amount of tips the

13  employees had received for both credit cards and for cash on

14  an aggregate basis.  The Supreme Court said that is

15  sufficient.  You have used the taxpayer's records, you

16  connected it in a reasonable logical way to an estimate.

17       That is the kind of assessment the IRS has

18  discretion to make. It can use the taxpayer's records and

19  reasonable leads from the records to get a logical and

20  reasonable estimate of the taxpayer's profit.  What it can't

21  do, as I have been saying, is just take the biggest number it

22  can find, the biggest revenues that come in, the biggest

23  numbers that come in, and then say it's up to you, the

24  taxpayer, to prove that these are not profits or to say that

25  all of Your deductions or all of Your losses are zero because

1  unless you prove otherwise we assume all of Your losses are

2  zero.

3       The _Fidelity_ case, again this is a case cited by

4  the IRS, is another very good example here.  In fact, the

5  factual circumstances of _Fidelity_ are strikingly like what we

6  have here, at least as the IRS presents it.  In _Fidelity_ the

7  parties all agree that there was a substantial lack of --

8  there was missing documentation from the debtors.  There had

9  been embezzlement by the debtors, now it's being managed by

10  the Trustee.  The debtors had done away with a certain amount

11  of documents before the company went bankrupt.  The remaining

12  documents were disorganized, no question about it.

13       All agree that the likely reason for this state of

14  affairs, missing and disorganized documents, were that the

15  debtors were trying to hide their embezzlement, their prior

16  embezzlement.  So, that is exactly what is the IRS says is

17  true here.  And there is some amount of agreement between the

18  parties.  We agree that there is a disorganized state of

19  certain records.  There is not no records, there is a

20  substantial amount of records, but there are missing records

21  somewhere and there is some disorganized records.

22       Our accountants, appointed by Your Honor, have

23  gone through those records and tried to come up with the best

24  and most logical numbers.  And when there is a missing

25  number, they try to come -- try to use the existing records

1  to calculate the right number.

2          In any event, in the _Fidelity_ case what the IRS

3  did was simply assumed that the taxpayer had made the same

4  amount of profits that as it had in prior years where there

5  was full record.  The Court rejected this and said that was

6  arbitrary and excessive, and concluded that the IRS was not

7  entitled to a presumption of correctness and, therefore,

8  rejected the IRS claims.

9          The Court said, look, we understand that the IRS

10  is entitled to use any reasonable means to reconstruct the

11  taxpayer's income, but that reasonable means must include

12  investigation and reasonable leads furnished by the taxpayer.

13  It noted that the IRS is not entitled to calculate its

14  assessment "in any manner its agent's chose".  It actually

15  cited the Third Circuit in a statement that, I think, is

16  absolutely applicable here: "The absence of adequate tax

17  records, as in the case here, does not give the commissioner

18  carte blanche for imposing draconian absolutes".

19          So having failed to review the available

20  information, having failed to use actual information provided

21  by the debtors to come up with reasonable estimates instead

22  of just using absolute numbers, having failed to match it to

23  the actual business of the taxpayer the IRS's claim was

24  rejected in the _Fidelity_ case.  And that applies exactly to

25  what we are talking about here.

1          The IRS has extreme claims.  On each facet of its

2   claim what it does is it just takes the extreme number from

3   whatever documents it can find that have been provided, or

4   the full amount of potential income, or minimum amount of

5   potential loss and says those are the numbers unless you

6   prove otherwise.

7          Putting aside -- I mean this is, obviously,

8   illogical to say that the debtors owe $8 billion in taxes

9   which would be, you know, multiple billions more in income

10  profits over this period.  All agree that -- putting aside

11  the fact that many of the debtors aren't even US taxpayers,

12  the debtors were only in existence for a few short years and

13  there was really only any significant amount of revenues

14  coming in in the last year or two.

15         As we know, since we are all in bankruptcy, the

16  debtors lost billions of dollars.  That is pretty clear from

17  the state of affairs.  So, there is just no rational

18  connection between the idea that the debtors owe $8 billion

19  in taxes for some, you know, $20, $25 billon of profit for

20  entities that last for only a few short years and clearly

21  lost billions of dollars.

22         So, before I move onto the observation, I think

23  how this is going to play out, I would just like to respond

24  to one argument made in the IRS's brief.  The IRS spent a

25  fair amount of time, you can see this on page 1, page 4 and 5

1   of their brief, arguing about 26 U.S.C. 7491 because they

2   refer to the credible evidence standard in the statute and

3   certain record keeping requirements of that statute.

4         The debtors have never requested burden shifting

5   under Section 7491.  Section 7491 applies to individual

6   taxpayers and to entities that are worth less than $7 million

7   because the IRS has never made an assessment of tax pursuant

8   to its regulation and any assessment it has now would be

9   naked, arbitrary, and excessive.  There is no burden to

10   shift, so we don't even need to get into the question of

11   Section 7491.

12         That is the same kind of observation, we cited the

13   Transupport case.  The First Circuit noted the burden

14   shifting exercise under 7491 entirely different then the

15   burden shifting scheme for an arbitrary and excessive claim.

16   So, these are just two different burden shifting exercises.

17   The debtors have not claimed burden shifting under 7491.  So,

18   these arguments about credible evidence, and recordkeeping,

19   and so forth those just are not relevant to the issues here

20   today.

21         So, Your Honor, to go back to sort of where the

22   law is and how, I think, this is going to apply the law is

23   clear, the IRS had a chance to respond to it, to cite cases

24   that said we were wrong, to respond to our cases.  Under

25   settled law, because the IRS had not issued a formal notice

1  of assessment or notice of deficiency under its regulatory

2  requirements.

3        It's not entitled to a presumption of correctness

4  and, therefore, retains the burden of proof.  Even if the IRS

5  were to do a formal assessment any assessment for the multi-

6  billion dollars claims that the IRS seems to be asserting

7  here would be naked, and arbitrary, and excessive, and,

8  therefore, not entitled to the presumption.

9        As we have engaged with the IRS and we have talked

10 through some of the issues and looked at the interrogatory

11 responses that the IRS recently served.  I think I can now

12 see how this issue really plays out in this case.  There is a

13 difference between what the IRS does in its audit process and

14 an assessment that can hold up in Court.

15       In the IRS's audit process what it does is it

16 assigns the maximum number to any number it finds in the

17 taxpayer's returns or records or the minimum number depending

18 on whether you are talking about revenues or losses.  Then it

19 says you prove to us why those numbers are not the maximum

20 amount of profits and the zero of losses.

21       So, just by way of example, if an investment bank

22 were to trade ten trillion dollars' worth of securities for

23 its customers and the ten trillion dollars comes into the

24 investment bank and then is traded, and then, of course,

25 value comes out the IRS in an audit procedure would say that

1   ten trillion dollars that is income unless you show us that

2   that is actually third party assets and, in fact, that its

3   matched up to trading that goes out of the company.  You need

4   to prove to us that that is not Your ten trillion dollars.

5   In fact, you only made commissions of $100 million or

6   whatever the number would be.

7          Then relatedly, the IRS would say all the money

8   flowing out that is not a tied loss and all of Your

9   deductions, all of Your losses for trading losses and all of

10  Your expenses those are all zero until you show us evidence

11  that supports that these numbers are not zero.  That may be a

12  perfectly rational way to proceed in an audit that takes

13  several years.  I don't offer an opinion one way or the other

14  whether that is right or not as a matter of audit procedure,

15  but that is not what the law demands for an assessment or

16  even here a calculation and estimate of the IRS's claims.

17         The Court (indiscernible) needs to adjudicate an

18  estimate of the IRS's claims.  It can't -- it has to deal

19  with the IRS's claims as they exist.  We are not in a two or

20  three year period where we can just go through a process of

21  matching up every ten trillion dollar number and proving why

22  that is not, in fact, process.

23         Under well settled law the IRS has to come up with

24  an assessment in order to shift the burden of proof.  If it

25  doesn't, it has the burden of proof to show why its tax

1  claims are reasonable based on reasonable leads and are

2  matched up to the debtors actual business.

3         Unless the IRS makes that kind of assessment that

4  is connected to the taxpayer's actual business it's not

5  sufficient for the IRS to say you haven't proved a negative

6  to us, you haven't proven that this huge number isn't income,

7  you haven't proven that this amount isn't loss -- is losses.

8  So, the IRS needs to, because it hasn't assumed an assessment

9  and it's not entitled to shift the burden of proof, come up

10  with a reasonable estimate calculation based on the actual

11  records of the taxpayer, leads from those records, and/or

12  connection to the real business and actual revenues and

13  profit generation of the business. It can't just say we see

14  these huge amounts of numbers coming into the debtors because

15  you were trading for customers and so, therefore, we are

16  assuming the most extreme numbers and we are leaving it up to

17  you to prove the negative.

18         So, unless the Court has any questions for the

19  remainder we will just rely on our papers.

20         THE COURT:  Thank you.  No questions at this time.

21         Ms. Bruce.

22         MS. BRUCE:  Good afternoon, Your Honor.

23         First, we would just like to note that from our

24  perspective the primary --

25         THE COURT:  Hang on.

1        (Audio interference)

2              THE COURT:  Let's remove them.  Someone was

3    speaking with their microphone on.

4              Sorry.  Go ahead, Ms. Bruce.

5              MS. BRUCE:  Thank you, Your Honor.

6              Yes, we believe the primary purpose of the

7    briefing was to address the specific issue of whether the

8    estimation hearing and the procedures that we are now in the

9    process of in any way changes the longstanding case law

10   regarding the burden of proof.  As we cited in our briefs, it

11   does not. So, the estimation hearing does not change the fact

12   that the burden of proof that exists in when a substantive

13   tax law is at issue still applies here.

14             Touching first on the issue of the presumption of

15   validity the IRS did everything that was required under

16   Rule 3001 to establish the presumption of validity.  It was

17   not unclear what its claim was for. It was for income taxes

18   and employment taxes.  It did not just list a number with no

19   description whatsoever.  And the debtors never asked us for

20   more details before coming to this Court and asking for these

21   estimation procedures.

22             That being said, it seems the debtors agree that

23   the issue is moot at this point because the IRS has provided

24   more than enough detail regarding exactly what its claims

25   consists of.  So, it seems that that issue is moot at this

1   point.

2         On the merits of where the burden of proof lies

3   the case law is very clear that the burden of proof lies on

4   the taxpayers because they are the ones that have the

5   information.  This is not an even 50/50 the IRS has some

6   information, the taxpayer has the rest, and they go back and

7   forth like the debtors keep indicating.  The taxpayers are

8   the ones with the information and with the burden to

9   substantiate their numbers.

10        The debtors are correct that the IRS has not made

11  an assessment yet and they haven't made an assessment yet

12  because the audit is still ongoing and because they have come

13  and asked for this estimation hearing in the middle of an

14  audit process.  So, they can't now ask Your Honor to estimate

15  this claim and then also complain that there is no

16  assessment. If there was an assessment we wouldn't be having

17  this estimation hearing.

18        The question now is how does the burden of proof

19  fall in an estimation hearing.  We cited multiple cases in

20  the Third Circuit where the Courts held that even where there

21  was not an assessment, even when there was an estimate the

22  IRS is still entitled to the burden of proof.  Now the

23  debtors pointed out in many of those cases an assessment was

24  made, but that is because those cases were refund cases and

25  collection cases.

1        So, of course, assessments had ultimately been

2   made, but the Court's holding that even estimates aren't

3   entitled to the burden -- are entitled to the presumption of

4   correctness is still valid.  That is what the Court should

5   look to in this case for purposes of this estimation hearing

6   which is a very uncommon proceeding.  But those cases are

7   still good and should be binding in this instance.

8        Again, the IRS could issue a notice of deficiency

9   if the debtors want them too, but they have asked the Court

10  to address the matter through this estimation hearing.  They

11  can't have both things.  They can't have the IRS make the

12  assessment and then also have Your Honor estimate it through

13  this hearing.  Those two things are inconsistent.

14       Addressing their argument that this is a naked

15  assessment, naked assessments involve assessments where the

16  income cannot be connected to the assessment. That is not all

17  we have in this case.  Here, the assessments are connected to

18  the debtor's income.  Just like in <u>Fior D'Italia</u> the IRS has

19  a foundation for its estimates. It started with the debtor's

20  tax returns and made adjustments to those returns.

21       It asked the debtors to substantiate the

22  deductions claimed on those returns and the debtors did not

23  do so despite the IRS asking them to.  They have failed to

24  substantiate them. And Your Honor even heard at the last

25  hearing, when we spoke with the debtors representative from

1  E&Y, they don't have the support.  So, they made it clear to

2  the IRS that they are not able to substantiate the expenses.

3        The IRS assessments are further based on

4  information from the criminal trial regarding evidence of

5  misappropriated funds that flow through the company.  The

6  debtors, again, have not challenged those facts.  So, there

7  is a foundation for the IRS's assessments.  To call them

8  naked assessments is not an accurate representation at all

9  and it wasn't accurate at the beginning of these proceedings

10 and it certainly is not accurate now when we have provided to

11 the debtors detailed calculations, detailed explanations of

12 the amounts and the calculations that the IRS has provided.

13        Again, they are not assessments because of how the

14 debtors have done this process.  They brought us into Court

15 in the middle of an audit and asked Your Honor to estimate

16 the amounts. That is why there is not an assessment, but

17 given where we are at this stage of the proceedings the IRS

18 has certainly gone far and above what wouldn't be involved

19 with a naked assessment.

20        The burden of proof at  this point is on the

21 taxpayers to prove up their deductions and to explain why the

22 activity that the IRS has evidence of should not be income to

23 the company.  The burden is on them to do that.  They have

24 all the information and they need to provide it if they have

25 it.  The case law is very clear on that, Your Honor.  And we

1  don't think that just because we are here for an estimation

2  hearing that the case law should in any way be inapplicable.

3          I am happy to answer any specific questions Your

4  Honor has, but, otherwise, we would rest on our arguments

5  here today and our brief that we filed.

6          THE COURT:  Okay, thank you.  No questions.

7          Mr. De Leeuw, rebuttal?

8          MR. DE LEEUW:  Sure, Your Honor.  I'll be brief.

9  I think a few points in response to Ms. Bruce.

10          Ms. Bruce said -- (indiscernible) actually is

11  making the argument -- she said we've cited multiple cases

12  where there are no assessments made, but then she said later

13  on, so I think she corrected herself, but in those cases we

14  agree assessments were made.  In fact, in those cases that

15  the IRS has cited, all the cases that they've cited except

16  for that one that I talked about where the court didn't

17  decide the issue, an assessment was made by the IRS.  And

18  there are cases, many, many cases that I've cited that talk

19  about the fact that it's the assessment that creates -- that

20  gives rise to the presumption of correctness.  The Janus case

21  from the Supreme Court, the Anastasato, the Psaty case, the

22  Greco case, and the Isley case, all the cases that were cited

23  by the IRS, all of those mention -- explain that it's the

24  IRS's assessment, notice of deficiency, that gives rise to

25  this presumption of correctness.

1         And so, in the absence of presumption of

2   correctness, we don't say that, therefore, the IRS

3   immediately loses, it's just that the IRS is not entitled to

4   that presumption and, therefore, it bears the burden of

5   proof.

6         THE COURT:  Well, let me ask you a question

7   about -- and address Ms. Bruce's argument that the IRS would

8   do an audit and would then present an assessment in due

9   course, but because the debtors have asked for an estimation

10  of the claim on an expedited basis they can't do that.

11        MR. DE LEEUW:  Well, there's two things I would

12  say -- well, actually, three.

13        First, we've been doing this for quite some time.

14  Ms. Bruce said, well, we didn't ask for an explanation.  I

15  can assure Your Honor that my partner in the tax group and

16  Ernst & Young have been engaged with the IRS's tax group and

17  the lawyers for the IRS, the DOJ, for months trying to work

18  through these details.  So it's not as if this all of a

19  sudden happened in November when we asked for an estimation

20  hearing.  We've been trying to engage for a long time, that's

21  number one.

22        THE COURT:  Well, I understand that, but it's --

23        MR. DE LEEUW:  Yes.

24        THE COURT:  -- you know, the -- I know from

25  experience that, you know, an audit of a company of this

1  size, especially when there's fraud involved, is going to

2  take more than a matter of months, it's going to take years.

3        MR. DE LEEUW:  I understand, Your Honor.  And so

4  that leads to the two other points I would make.

5        One, this is a surprising argument from the IRS

6  because the IRS actually says in its own brief that the

7  burden of proof doesn't change just because it's an

8  estimation procedure.  This is on page 3 of their brief.

9  They say, in an estimation procedure, the Court is bound by

10 legal rules which may govern the ultimate value of the claim.

11        So the rules don't change just because we're in an

12 estimation proceeding, that's number two, but then number

13 three is the point I think I made -- I was trying to make

14 before, which is we don't say that just because the IRS is

15 not entitled to the presumption of correctness that the IRS,

16 therefore, loses.  That's the end, we can all go home.  All

17 this means is, as courts have said many times, that the IRS

18 has to prove its claim just like any other claimant.

19        And the Court is estimating the claim, so in some

20 sense it doesn't need to prove its claim with exactitude, it

21 needs to prove its -- it has the burden of proof to show what

22 an appropriate claim is, and the Court can take the evidence,

23 with the IRS providing whatever evidence it has, and the

24 debtors will submit evidence, and the IRS has the burden of

25 proof.  And that's what courts have said; we cited some in

1   our brief, the <u>Desert Capital</u> case, the <u>Sarubin</u> case, the
2   <u>Goldstein</u> case.

3           If you're in a situation where there's no
4   assessment or the IRS is not relying on an assessment, then
5   the IRS is just proceeding as an ordinary claimant, it bears
6   the burden of proof; it doesn't mean that the case is over,
7   it just means that it bears the burden of proof like an
8   ordinary claimant.

9           And that makes sense.  Ms. Bruce says, well, we
10  could just stamp it with assessment, but that's not what the
11  courts have noted is the reason for the presumption of
12  correctness.  The reason for the presumption of correctness
13  is not just because the IRS comes up with some number, but
14  it's gone through the formal regulatory process, approved and
15  signed by the commissioner.

16          So I recognize that there's a timing issue here,
17  but the burden of proof issue doesn't mean that the debtors
18  immediately win, it only means that the IRS is not entitled
19  to do what it's trying to do here, which is just shift
20  everything to the debtors:  You need to prove why your
21  profits are not billions of dollars, you need to prove why
22  your losses are more than zero.

23          And that's the process, going on to my next point,
24  that Ms. Bruce was describing, after saying, well, we've
25  cited many, many cases, all of which she acknowledges are

1  assessment cases.  She said, well, we've explained our

2  claims.  We've gone through a process, we took the numbers

3  from the debtors, then we made adjustments -- and I didn't

4  hear her argue otherwise -- the adjustments amount to about

5  $8 billion, 43, now 24 -- then 24, now eight billion.  Quite

6  disconnected-to-reality-type claims because what the IRS says

7  is, here's the $8 billion of claims, now you tell us why that

8  $8 billion, which is related to $20 billion or so of revenue

9  and no losses, why all of that number is not true.  And

10 that's what she said.  She said, we laid out our claim, this

11 $8 billion number, now you, the debtors, substantiate

12 otherwise, and that's exactly what the courts have said over

13 and over again, what Judge Posner said in the Kohler case,

14 what the Fidelity America case said in the case cited by the

15 IRS, what many cases have said is not available.  It can't be

16 the debtors' burden to prove the negative; it has to be

17 connected to some real, actual profits, real business, real

18 records, you have to look at the actual business records, and

19 do the best you can with the actual records and with the

20 reality of the situation.

21           And so, in conclusion, I think the law her is

22 clear.  Without an assessment, there's no presumption of

23 correctness.  The IRS says, we proceed here according to the

24 rules under the tax law, and we agree with that, the Raleigh

25 decision says that.  It's the burden of proof under tax law

1  and, under tax law, it's very clear that if there's no

2  assessment, the burden doesn't shift to the taxpayer.  The

3  IRS just has the burden as a normal claimant, and that's

4  exactly what we have here.

5          Thank you, Your Honor.

6          THE COURT:  Is there any cases that address this

7  issue in the context of an estimation hearing?

8          MR. DE LEEUW:  Your Honor, we couldn't find any.

9  What we did find -- and we found cases that stand for the

10 same proposition that the IRS cited, which is, in estimation

11 proceedings, you follow the same rules as if you were

12 adjudicating a claim.  So just because we're doing this in a

13 few months and we're doing it for estimation purposes as

14 opposed to a final adjudication on the claim, it's the same

15 rules and the same burden of proof, but we didn't find a case

16 that sort of -- that matches both the law that I found, which

17 is, in the absence of assessments, the IRS bears the burden

18 of proof, with an estimation proceeding.  No, we didn't find

19 that combination, and the IRS didn't cite any either.

20         THE COURT:  Okay.  Thank you.

21         MR. DE LEEUW:  Thank you, Your Honor.

22         THE COURT:  All right, I'm going to take the

23 matter under advisement.  I will issue a ruling, a bench

24 ruling at the January 31st hearing, so that the parties will

25 have an understanding of how we're going to proceed once we

1  get to March.

2          MR. DE LEEUW:  Thank you, Your Honor.

3          Your Honor, originally, you had asked to discuss

4  discovery at this conference.  I'm not sure there's a whole

5  lot to discuss because I think the parties are largely in

6  agreement on the scope of discovery.  We have, obviously,

7  some to do in the next few weeks to complete that.  I could

8  give Your Honor an update or if there's no disputes that the

9  IRS wants to raise, I'm happy to just continue meeting and

10  conferring with the IRS, as Your Honor pleases.

11          THE COURT:  Well, maybe just give me a brief

12  update on how things are going so far because I know there

13  was a deadline for the debtors to produce documents.

14          MR. DE LEEUW:  Sure.  So, as Your Honor may recall

15  with the objection that the IRS submitted back in December,

16  they provided a draft set of document requests.  As soon as

17  Your Honor ruled that we would have an estimation proceeding,

18  we got immediately to responding to those document --

19  interrogatory and -- well, it was a request to admit

20  interrogatories and document requests, we responded to those

21  at the end of December, just before the new year.  We

22  produced the documents the following Friday, so we -- I

23  think, if I'm getting my dates right, it's December 29th we

24  responded to the -- to the written discovery and then we

25  produced the associated documents; on January 5th, there was

1   one large database that we produced the following week.

2          We've produced all the documents that the IRS has

3   requested.  The IRS is -- I understand is still processing

4   those documents and they may have additional questions, and

5   I've told them, of course, we're happy to talk to them about

6   that.

7          On our side, we issued interrogatories to set

8   forth the nature of the IRS's claims with some explanation.

9   I mentioned, I think, during the argument that the IRS

10  responded to that on Friday.  So we just got the explanation,

11  we're going through that.  We've conferred a little bit

12  yesterday, we're going to confer tomorrow a little bit about

13  those responses, what needs to be done specifically on those

14  responses.

15         Both sides have issued 30(b)(6) deposition notices

16  to each other, we issued one to the IRS a few weeks ago, the

17  IRS just issued one to us on Friday.  And I think the parties

18  agree that what we're going to do is probably going to have

19  to divide that up among multiple witnesses because, as you

20  might suspect, there are some people at the IRS who deal with

21  domestic, some people who deal with international, and some

22  people who deal with employment tax, the same thing is true

23  at Ernst & Young.  So we'll probably divide it up the same

24  way and we'll probably each have three witnesses who will be

25  deposed.  And I think both parties have agreed that those

1   depositions can be limited or focused on the issues that are

2   now in dispute.  The IRS has provided five or six, depending

3   on how you count, specific issues on which it disputes the

4   debtors' position, so the depositions will be addressing

5   those issues.

6            In parallel, as I think Your Honor knows because

7   Your Honor saw the Ernst & Young witness on the stand, the

8   IRS audit team from Nebraska has been issuing information

9   disclosure requests or information document requests to Ernst

10  & Young on an ongoing basis.  Ask a question, I see this tax

11  return says this, this tax return says this, can you tell us

12  this, can you give us these documents.  That's been going on

13  an ongoing basis.  I think Mr. Shea said that all but one

14  request was going to be produced by December 15th, that was

15  produced by December 15th, the one outstanding request was

16  produced I think more recently, as he said on the stand.

17           There has been, as we understand it, continuing

18  information disclosure requests, or IDRs, that have been

19  propounded by the IRS team, and so Ernst & Young has been

20  continuing to respond to those and providing those.  So I

21  understand they've produced -- they provided IDR responses as

22  late as last week because there were more recent IDRs, and I

23  understand that there's some more that have just been issued

24  recently that Ernst & Young is doing.

25           And I should also mention, I think Mr. Shea

1 testified on the stand and it was in his declaration that

2 there were some adjustments that needed to be made on the

3 earlier tax returns.  He didn't think they were going to be

4 such that they would have any impact on the tax liability,

5 but there needed to be some adjustments.  That's been a

6 subject of discussion between Ernst & Young and the IRS for

7 some number of weeks, with an information disclosure response

8 served last week that addressed that topic in writing.  I

9 actually provided it to the Department of Justice yesterday.

10 And those adjustments to the prior year tax returns are going

11 to be done either later this week or early next week.

12          THE COURT:  Okay, thank you.

13          Have you utilized the services of Judge Fitzgerald

14 as a mediator at all?

15          MR. DE LEEUW:  Your Honor, we have not.  In fact,

16 the topic was discussed briefly yesterday and we expect to

17 discuss the subject tomorrow.  I think we're still discussing

18 the question of whether it makes some sense to just have

19 discussions between the lawyers, perhaps with some of the

20 financial representatives of the debtors and/or IRS agents,

21 rather than engage a mediator who would have to get up to

22 speed, there would be a lot of submissions.  Given the time

23 at issue, we think it may make sense to have direct

24 discussions, but that's a discussion we anticipate having

25 with the Department of Justice tomorrow.

1          THE COURT:  Okay, that's fine.  I just want to

2    make sure that everyone is aware that it's available if you

3    want it.  So --

4          MR. DE LEEUW:  Thank you, Your Honor.

5          THE COURT:  -- but if the parties are talking,

6    there's no need to use a mediator if the parties are still

7    discussing.

8          So, Ms. Bruce, anything from your end on the

9    discovery issues or mediation, or anything else?

10          MS. BRUCE:  Yeah, we are, you know, in favor of

11    mediation, Your Honor, I think it could be useful.  You know,

12    even if we didn't arrive at an overall number, it has the

13    potential to narrow some of the issues for trial.  I think,

14    logistically, right now one of our biggest concerns is that

15    given the categories of adjustments and what we have to

16    discuss at this stage, and we haven't stipulated to anything

17    yet, but we would think probably we'd need at least three

18    days for trial, particularly given the number of witnesses if

19    we have three on each side, you know, that it does not seem

20    feasible that it could be accomplished in one day.

21          So, potentially, mediation could be an avenue for

22    allowing us to stipulate to some issues and might save time

23    at trial.  So that is one thought from our side.

24          And then I just would like to address one other

25    concern that Mr. De Leeuw brought up regarding amended

1   returns.  That has certainly been a major concern that we've

2   had since the prior hearing, just that there is no finite

3   universe of data for us and if -- we would ask Your Honor to

4   give the debtors some type of deadline by which they're going

5   to provide us the information that will be used at the

6   estimation hearing.

7            We understand the audit is ongoing and so that may

8   be separate, but we need to know -- we have no idea the

9   extent of these amendments on the returns, but that could be

10  a huge change if they're amending two years -- at least two

11  years' worth of tax returns, that could change all the

12  adjustments and we don't have those -- any information on

13  that yet and we won't get that until Friday or Monday, and we

14  only have a couple weeks left of discovery.

15           So, I mean, we'd ask that the debtors just need to

16  be done by Friday when they amend the returns and that needs

17  to be the closed universe of everything we're going to be

18  looking at for purposes of this estimation hearing, because I

19  understand the debtors are unwilling to extend the time out,

20  but if they keep amending their production, it's just not

21  going to be feasible to, you know, get reasonable numbers for

22  purposes of this hearing.

23           THE COURT:  All right.  Well, why don't -- I think

24  De Leeuw indicated you were going to have a meet-and-confer

25  tomorrow, why don't you discuss it at that and see if you can

1  come up with an agreed-upon schedule for when discovery will

2  be completed.  If you can't, just contact chambers and I can

3  jump back on a call with a status conference at any time to

4  discuss discovery issues.  So that's not a problem.

5           As far as the mediator goes, if you are going to

6  use the mediator, picking up on what Mr. De Leeuw said, I

7  would highly recommend you do it sooner rather than later, if

8  you think you're going to need a mediator, because it is

9  going to take time for Judge Fitzgerald to get up to speed on

10 the issues and, you know, to make submissions and so forth.

11 So I would recommend you start that process as quickly as

12 possible if you are going to use the mediator because that's

13 not going to slow down the estimation process, we're still

14 going to go forward on the estimation.  Okay?  Anything else?

15           MR. DE LEEUW:  Understood, Your Honor.  Nothing

16 from debtors.

17           MS. BRUCE:  Nothing from us, Your Honor.

18           THE COURT:  Okay.  Thank you all very much.  I

19 appreciate the updates and, as I said, I'll give you my

20 ruling on the burden of proof on the 31st.  Okay?

21           MR. DE LEEUW:  Thank you, Your Honor.

22           THE COURT:  Thank you.

23           MS. BRUCE:  Thank you, Your Honor.

24           THE COURT:  We're adjourned.

25       (Proceedings concluded at 4:00 p.m.)

1                       CERTIFICATION

2            We certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of our

5   knowledge and ability.

6

7   /s/ William J. Garling                January 17, 2024

8   William J. Garling, CET-543

9   Certified Court Transcriptionist

10  For Reliable

11

12  /s/ Tracey J. Williams                January 17, 2024

13  Tracey J. Williams, CET-914

14  Certified Court Transcriptionist

15  For Reliable

16

17  /s/ Mary Zajaczkowski                 January 17, 2024

18  Mary Zajaczkowski, CET-531

19  Certified Court Transcriptionist

20  For Reliable

21

22

23

24

25