# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*

*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

January 23, 2024

The Honorable John T. Dorsey,
   United States Bankruptcy Court for the District of Delaware,
     824 N. Market Street, 5th Floor,
       Wilmington, Delaware 19801.

          Re:   *In re FTX Trading Ltd., et al.* (22-11068)
               <u>Status Conference to Discuss the Appointment of an Examiner</u>

Dear Judge Dorsey,

        We write on behalf of FTX Trading Ltd., et al. (the "<u>Debtors</u>") in the above-captioned chapter 11 proceedings (the "<u>Chapter 11 Cases</u>") in connection with the Court's scheduling of a virtual status conference on Wednesday, January 24, 2024 to discuss the appointment of an examiner, including the scope, degree, duration, and cost of the examination.

        The Debtors have reviewed the opinion (No. 23-2297, Dkt. No. 66, January 19, 2024) (the "<u>Appellate Opinion</u>") of the United States Court of Appeals for the Third Circuit (the "<u>Third Circuit</u>") overturning the Court's February 21, 2023 order [D.I. 746] (the "<u>Bankruptcy Court Order</u>") denying the motion of the Office of the United States Trustee for Regions Three and Nine (the "<u>UST</u>") seeking entry of an order directing the appointment of an examiner (the "<u>Examiner Motion</u>").

<u>Overview</u>

        The Debtors are disappointed with, and disagree with, the Third Circuit's holding that section 1104(c) of the Bankruptcy Code mandates the appointment of an examiner "on the request of a party in interest or the United States trustee" where a "debtor's fixed, liquidated, unsecured debts ... exceed $5,000,000." Nevertheless, and notwithstanding erroneous dicta in the Appellate Opinion, the Debtors have concluded that

The Honorable John T. Dorsey -2-

it is in the best interests of all creditors, victims, and interest holders to not seek further review of the Appellate Opinion, whether through a request for en banc review by the Third Circuit or by filing a petition for certiorari with the Supreme Court of the United States.

The Debtors come to this conclusion for several reasons.

*First*, as described below, these cases are in a much different place today, with substantial additional material facts, than they were (a) when the UST filed the Examiner Motion on December 1, 2022, a mere 14 business days after the November 11, 2022 chapter 11 petition date for the vast majority of the Debtors (the "Petition Date")[1], and (b) when the hearing on the Examiner Motion took place on February 6, 2023 (the "Examiner Hearing"), only 59 business days after the Petition Date.

*Second*, in light of the briefing and argument of the appeal and the Appellate Opinion's characterization of the underlying facts, the Debtors recognize that pursuing additional appellate relief based on the record as it stood on February 6, 2023 risks further perpetuating a false narrative that is completely inconsistent with the facts of these cases. While it is true that the situation facing John J. Ray III on the Petition Date was a "crime scene" akin to a "dumpster fire" as the result of the actions of Mr. Bankman-Fried and his cronies, the crime scene was immediately secured and the fire quickly extinguished through the relentless efforts of Mr. Ray and his team—a team that is and has been determined by the Court on a full evidentiary record to be disinterested. What has been achieved by Mr. Ray and his team since the UST filed the Examiner Motion—immediately replacing senior executives, bringing order to chaos, securing and recovering billions of dollars of assets, investigating and pursuing claims, providing essential support to federal prosecutors and federal and state regulatory authorities, negotiating agreements with victims/creditors and their representatives, and more—deserves high praise, not poorly informed criticism.

*Third*, only 15 months after the Petition Date, working closely with the Official Committee of Unsecured Creditors (the "Committee"), the Ad Hoc Committee of Non-U.S. Customers of FTX.com (the "Ad Hoc Committee") and the Joint Official Liquidators of FTX Digital Markets Ltd. (Bahamas) (the "JOLs"), the Debtors are firmly on track to emerge from chapter 11 by mid-year and provide substantial recoveries to victims around the world. As such, the focus of these cases is and should be on providing recoveries to those creditors and victims, not on needless and unnecessary litigation. While the Debtors are not in a position today to provide details regarding the anticipated ranges of recoveries, the Debtors will do so by way of a case update at the omnibus hearing scheduled for January 31, 2024. For the Debtors to be in this position considering the state of affairs on November 11, 2022 is nothing short of remarkable.

---

[1] Debtor West Realm Shires, Inc. commenced its Chapter 11 Case on November 14, 2022.

The Honorable John T. Dorsey                                                                                        -3-

*Fourth*, and most importantly, as confirmed by the Appellate Opinion, this Court has broad discretion to fashion case-appropriate relief with respect to the Examiner Motion.[2] This discretion includes the ability to first define the scope, degree, duration, and cost of an examination and take into account the facts of these cases as they now stand (including the volume and nature of work that has been done to date), and next to oversee an open, transparent, and logical process for the appointment of an examiner.

**Current Context**

On December 1, 2022, when the UST filed the Examiner Motion, the collapse of FTX was not simply front-page news, it was omnipresent in all forms of media, whether print, television, internet, or social media. The cryptocurrency market, which had been worth over $3 trillion just a year earlier,[3] had collapsed, erasing over $2 trillion in market value.[4] The term "crypto winter," coined by the industry to describe the devastation the market suffered in 2022, dominated year-end reviews.[5] The year started with FTX's "Don't Miss Out" February 2022 Super Bowl advertisement starring Larry David, only to be juxtaposed nine months later with Mr. Bankman-Fried's November 30, 2022 video interview with Andrew Ross Sorkin at the New York Times DealBook Summit where the FTX founder stated, among other things "[l]ook, we screwed up" and "[w]e messed up big."[6]

In his first day declaration, submitted to the Court on November 17, 2022, after six days on the job, Mr. Ray described the situation he found at FTX as follows:

---

[2]     "[W]hile a bankruptcy court must appoint an examiner if the statutory requirements are met, the phrase 'as is appropriate' in Section 1104(c) means the court 'retains broad discretion to direct the examiner's investigation,' including its scope, degree, duration, and cost. 5 NORTON BANKR. L. & PRAC. § 99:25 (3d ed. 2023), *see also* 11 U.S.C. § 330(a)(3)." Appellate Op. at 14–15.

[3]     Joanna Ossinger, *Crypto World Hits $3 Trillion Market Cap as Ether, Bitcoin Gain*, BLOOMBERG (Nov. 8, 2021) (noting that the "value of crypto universe had quadrupled in 2021"), https://www.bloomberg.com/news/articles/2021-11-08/crypto-world-hits-3-trillion-market-cap-as-ether-bitcoin-gain.

[4]     Emily Nicolle, Olga Kharif and Stacy-Marie Ishmael, *All The Ways That Crypto Broke in 2002*, BLOOMBERG (Dec. 21, 2022) (fig. 1, "Crypto's 2022 Contraction"), https://www.bloomberg.com/graphics/2022-crypto-contagion-from-bitcoin-to-FTX.

[5]     *Id.* ("[Crypto prices kept falling. Bitcoin—the largest token by market value—plunged more than 60%, leading a rout in digital assets that erased some $2 trillion in total market value from the highs reached in November 2022.").

[6]     Transcript of Sam Bankman-Fried's Interview at the DealBook Summit, N.Y. TIMES (Dec. 1, 2022), https://www.nytimes.com/2022/12/01/business/dealbook/sam-bankman-fried-dealbook-interview-transcript.html.

The Honorable John T. Dorsey -4-

> Never in my career have I seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced, unsophisticated and potentially compromised individuals, this situation is unprecedented.[7]

Immediately after making this statement, Mr. Ray set out the five core objectives of these Chapter 11 Cases: (a) Implementation of Controls; (b) Asset Protection & Recovery; (c) Transparency and Investigation; (d) Efficiency and Coordination; and (e) Maximization of Value, stating that "[t]hese proceedings in Delaware are the appropriate means to accomplish each of these objectives."[8]

Mr. Ray and his team have delivered on these objectives. Controls have been implemented. Assets, including highly vulnerable digital assets, have been secured. Asset recovery is far advanced and being pursued vigorously. From the start, the Debtors have been and continue to be transparent, periodically reporting material updates throughout the Chapter 11 Cases. Substantial investigations have taken place and reports filed by Mr. Ray. Additional reports are poised to be released. Enormous efforts have been expended to cooperate with numerous governmental investigations. The Debtors efficiently coordinate on a daily basis with the Committee, the Ad Hoc Committee, the JOLs, the UST, and numerous governmental agencies. Finally, value maximization, the hallmark of these cases, is being pursued diligently every day, the results of which will soon be made clear before this Court as the Debtors pursue the confirmation of their plan of reorganization (the "Plan").

In the immediate aftermath of the commencement of these Chapter 11 Cases, the Debtors received inquiries from the Office of the United States Attorney for the Southern District of New York ("SDNY"), the Securities and Exchange Commission ("SEC"), and the Commodities Futures Trading Commission ("CFTC"), dozens of state regulators, and both houses of the United States Congress. *Id.* at ¶ 3. Those requests continued after the Examiner Hearing, reaching a peak as SDNY prepared its criminal cases against Mr. Bankman-Fried and others. The Debtors immediately and continually provided massive amounts of information, an exercise which carried through Mr. Bankman-Fried's criminal trial and continues today. To date, the Debtors have provided millions of pages of materials in response to hundreds of individual requests, which in the case of SDNY led to multiple criminal convictions.

---

[7] *Declaration of John J. Ray III In Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24] ("Ray First Day Declaration") at ¶ 5.

[8] *Id.* at ¶ 6.

The Honorable John T. Dorsey                                                                                          -5-

Adding to the media storm created by the chapter 11 filings, between the Petition Date and his arrest on December 12, 2022, Mr. Bankman-Fried embarked on an improbable media tour in which he tried to defend his role in FTX's fall. In addition to appearing at the DealBook Summit, Mr. Bankman-Fried appeared on Good Morning America,[9] gave numerous interviews to traditional and non-traditional news outlets, appeared on multiple open forums conducted on the internet, unleashed a torrent of tweets on the platform then known as Twitter,[10] and published an apologia on Substack.[11] Virtually everything said by Mr. Bankman-Fried was either incomprehensible or contradicted the information presented by the Debtors to the Court and the public. Yet despite the accusations facing Mr. Bankman-Fried, for a substantial period of time, a certain credence was given to his ramblings.

It was in this very specific context and timeframe that the UST filed the Examiner Motion. Between the filing of the Examiner Motion on December 1, 2022 and the February 6, 2023 Examiner Hearing, the following occurred:

- On December 9, 2022, Mr. Bankman-Fried announced on Twitter that he would testify by video before the House Financial Services Committee on December 13, 2022.[12]

- On December 9, 2022, litigation was commenced between the JOLs (then the JPLs) and the Debtors relating to relief from the automatic stay and seeking information in connection with the commencement of liquidation proceedings against FTX Digital Markets Ltd. ("FTX DM") in The Bahamas.[13] Substantial litigation took place with the JOLs, including the

---

[9] Mark Guarino, *FTX's Sam Bankman-Fried on crypto giant's collapse: 'A lot of people got hurt. And that's on me'*, GOOD MORNING AMERICA (Dec. 1, 2022), https://www.goodmorningamerica.com/news/story/ftxs-sam-bankman-fried-denies-improper-customer-funds-94233125.

[10] Derek Andersen, *SBF winds down mystifying Twitter thread that said little over many hours*, COINTELEGRAPH (Nov. 15, 2022), https://cointelegraph.com/news/sbf-winds-down-mystifying-twitter-thread-that-said-little-over-many-hours.

[11] Samuel Bankman-Fried, *FTX Pre-Mortem Overview*, SUBSTACK (Jan. 12, 2023), https://sambf.substack.com/p/ftx-pre-mortem-overview.

[12] MacKenzie Sigalos & Rohan Goswami, *FTX founder Sam Bankman-Fried agrees to testify at U.S. House hearing on Tuesday*, CNBC (Dec. 9, 2022), https://www.cnbc.com/2022/12/09/sam-bankman-fried-agrees-to-testify-before-house.html.

[13] Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd. for Relief from Automatic Stay and to Compel Turnover of Electronic Records, *In re FTX Digital Markets*, No. 22-11217 (Bankr. D. Del. Dec. 9, 2022), D.I. 27.

The Honorable John T. Dorsey -6-

> Debtors' objection to the motion of the JOLs for recognition of the Bahamian proceeding commenced in respect of FTX DM.[14]
>
> - On December 12, Mr. Ray agreed to testify in person before the House Financial Services Committee on December 13, 2022.[15] That same day, Mr. Ray submitted his written statement to the House Financial Services Committee in advance of his testimony.
>
> - On December 12, 2022, Mr. Bankman-Fried was arrested in the Bahamas.[16]
>
> - On December 13, 2022, SDNY charged Mr. Bankman-Fried in an eight-count indictment with fraud, money-laundering, and campaign finance offenses.[17]
>
> - On December 13, 2022, the SEC charged Mr. Bankman-Fried with a scheme to defraud investors.[18]
>
> - On December 13, 2022, the CFTC charged Mr. Bankman-Fried with fraud and making fraudulent statements.[19]
>
> - On December 13, 2022, Mr. Ray testified before the House Financial Services Committee.[20]
>
> - On December 13, 2022, Forbes published the written statement Mr. Bankman-Fried would have submitted to the House Financial Services

---

[14] D.I. 1409.

[15] Brian Schwartz, *New FTX CEO to tell Congress about bankrupt crypto firm's 'spending binge,' loans to insiders*, CNBC (Dec. 12, 2022), https://www.cnbc.com/2022/12/12/new-ftx-ceo-will-testify-about-utter-failure-of-corporate-controls-.html.

[16] David Yaffe-Bellany, William K. Rashbaum & Matthew Goldstein, *FTX's Sam Bankman-Fried Is Arrested in the Bahamas*, N.Y. TIMES (Dec. 12, 2022), https://www.nytimes.com/2022/12/12/business/ftx-sam-bankman-fried-bahamas.html.

[17] Indictment as to Sam Bankman-Fried, *United States v. Bankman-Fried*, No. 22-CR-00673 (S.D.N.Y. Dec. 9, 2022), D.I. 1.

[18] Complaint, *SEC v. Bankman-Fried*, No. 22-10501 (S.D.N.Y. Dec. 13, 2022), D.I. 1.

[19] Complaint, *CFTC v. Bankman-Fried*, No. 22-10503 (S.D.N.Y. Dec. 13, 2022), D.I. 1.

[20] FTX CEO Testifies on Cryptocurrency Company's Collapse, C-SPAN (Dec. 13, 2022), https://www.c-span.org/video/?524743-1/ftx-ceo-testifies-cryptocurrency-companys-collapse.

The Honorable John T. Dorsey -7-

Committee had he not been arrested the night before.[21] In this statement, which begins with "I would like to start by formally stating, under oath: I f****d up,"[22] Mr. Bankman-Fried nevertheless tried in vain to explain away his misdeeds and cast aspersions on Mr. Ray and his team. It also contains countless statements that were shown to be false during Mr. Bankman-Fried's criminal trial in the fall of 2023.

- On December 21, 2022, the Debtors filed a motion to employ/retain Sullivan & Cromwell LLP (respectively, the "S&C Retention Motion" and "S&C") as counsel to the Debtors, supported by a declaration from Mr. Ray (the "Ray S&C Declaration") and from Andrew Dietderich of S&C (the "Dietderich Declaration").[23]

- On January 13, 2023, the UST filed an objection to the S&C Retention Motion.[24]

- On January 4, 2023, Warren Winter filed an objection to the S&C Retention Motion (the "Winter Objection").[25]

- On January 17, 2023, the Debtors filed the First Supplemental Declaration of Mr. Dietderich (the "First Supplemental Dietderich Declaration") in support of the S&C Retention Motion.[26]

---

[21] Steven Ehrlich, *Exclusive Transcript: The Full Testimony Bankman-Fried Planned To Give To Congress*, Forbes (Dec. 13, 2022), https://www.forbes.com/sites/stevenehrlich/2022/12/13/exclusive-transcript-the-full-testimony-sbf-planned-to-give-to-congress.

[22] *Id.*

[23] *Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession Nunc Pro Tunc to the Petition Date* [D.I. 270].

[24] *Objection Of The United States Trustee To Debtors Application For An Order Authorizing The Retention And Employment Of Sullivan & Cromwell LLP As Counsel To The Debtors And Debtors In Possession Nunc Pro Tunc To The Petition Date* [D.I. 496].

[25] *Objection to Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession Nunc Pro Tunc to the Petition Date* [D.I. 369].

[26] *Supplemental Declaration of Andrew G. Dietderich in Support of Debtors' Application for an Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession Nunc Pro Tunc to the Petition Date* [D.I. 510].

The Honorable John T. Dorsey -8-

- On January 20, 2023, a hearing was held before the Court on the S&C Retention Motion, at which the UST informed the Court that its concerns with the motion had been resolved by the First Supplemental Dietderich Declaration.[27] The Winter Objection was not withdrawn and the Court held a contested hearing on the S&C Retention Motion at which the Court received into evidence, without objection, the Ray S&C Declaration, the Dietderich Declaration and the First Supplemental Dietderich Declaration.[28]

- On January 20, 2023, after hearing oral argument, the Court entered an order authorizing the retention of S&C as counsel to the Debtors (the "S&C Order"),[29] finding S&C to be disinterested as required under 11 U.S.C. § 327(a). No appeal was taken from the S&C Order.

- On January 25, 2023, the Debtors filed a motion to approve the entry into a cooperation agreement with the JOLs that provided for, among other things, recognition of the FTX DM chapter 15 proceedings in the United States and these Chapter 11 Cases in The Bahamas.[30]

- On February 5, 2023, the Court entered the Final Pretrial Order with respect to the Examiner Hearing (the "Pretrial Order").[31]

There were material developments in the Debtors' cases between the filing of the Examiner Motion on December 1, 2022 and the hearing on the Examiner Motion on February 6, 2023. However, the UST neither described the proposed scope of the role of any examiner in the Examiner Motion nor responded prior to the Examiner Hearing to the Debtors' repeated requests to describe the proposed scope of any examination. The UST's refusal to do so was identified by the Debtors as an issue to be addressed at the Examiner Hearing as set forth in the Pretrial Order.[32] When asked by the Court at the hearing to set

---

[27] Transcript of January 20, 2023 Hearing at 9:7.

[28] *Id.* at 26:2–12.

[29] *Order Authorizing the Retention and Employment of Sullivan & Cromwell LLP as Counsel to the Debtors and Debtors-in-Possession* Nunc Pro Tunc *to the Petition Date* [D.I. 553]. In addition to S&C, Quinn Emanuel Urquhart & Sullivan LLP and Landis Rath & Cobb LLP have been retained by the Debtors and found to be disinterested, while Paul Hastings LLP and Young Conaway Stargatt & Taylor LLP have been retained by the Committee and found to be disinterested.

[30] D.I. 578.

[31] D.I. 620.

[32] *Id.* at 3–4.

The Honorable John T. Dorsey                                                                                          -9-

out the scope of the proposed examination, the UST described a scope that would encompass any and all issues that would be in the discretion of whomever would be appointed examiner. When the Court remarked that the suggested scope would cost the Debtors' victims/creditors at least $100 million, the UST did not take issue with the Court's observation.

At the Examiner Hearing, the Court heard live testimony from Mr. Ray, who was cross-examined by counsel for the UST. In addition, the Court accepted declarations from Edgar Mosley of Alvarez & Marsal and of Mr. Dietderich into evidence along with a number of exhibits. In denying the Examiner Motion, the Court not only held that the appointment of an examiner was not mandatory under section 1104(c), but also found based on the evidentiary record that Mr. Ray and his team were both independent and eminently qualified, that no examination was necessary in light of the investigations being conducted and contemplated, that the scope of examination suggested by the UST would cost upwards of $100 million, and that none of this was in the best interests of creditors. Nothing in the evidentiary record was challenged on appeal; it remains part of the record for considering on remand the appropriate scope, degree, duration, and cost of any examination.[33]

Time has not stood still in the months following the denial of the Examiner Motion. Following the entry of the order denying the Examiner Motion, additional substantial developments have occurred in these cases. These developments also must be taken into account when considering on remand the scope, duration, degree, and cost of any examination. By way of example:

- Due to significant positive developments in asset values and other Debtor-driven actions, the Debtors' recovery estimates are now expected to be materially greater than previously forecasted.

---

[33] In the Appellate Opinion, the Third Circuit incorrectly stated in dicta that the Bankruptcy Code "forbids a debtor in possession, the quintessential "insider," from performing the duties of an examiner and investigating itself." Appellate Op. at 16. This ignores the clear language of Bankruptcy Code sections that define the role of an examiner and the role of the debtor in possession. First, "insider" (here as to a corporation or partnership) is defined at 11 U.S.C. § 101(31)(B) and (C) and does not include the debtor in possession. A person or entity can be an insider of a debtor in possession, but the debtor in possession cannot be an insider of itself. Second, 11 U.S.C. § 1107(a) sets out the "rights, powers and duties" of a debtor in possession. While the Bankruptcy Code does not impose on a debtor in possession a duty to conduct an investigation, the Bankruptcy Code does not forbid a debtor in possession from conducting an investigation, nor is the conduct of an investigation excluded from a debtor in possession's rights or powers. As such, the investigations undertaken by Mr. Ray and his team, found by this Court to be disinterested, were permitted by the Bankruptcy Code and should be considered by this Court together with the investigations undertaken by SDNY, the SEC, and the CFTC as the Court evaluates the scope, duration, degree, and cost of any examination.

- Throughout the period from the Petition Date through today, the Debtors have coordinated and cooperated with officials from SDNY, the SEC, and the CFTC, including responding on an expedited basis to hundreds of document requests relating to, among other things, the criminal prosecution of Mr. Bankman-Fried and others.

- Over $1 billion in assets have been seized by SDNY for the benefit of the victims of these criminal frauds.

- On April 9, 2023, the First Interim Report of John J. Ray III to the Independent Directors on Control Failures at the FTX Exchanges was filed.[34]

- On June 26, 2023, the Second Interim Report of John J. Ray III to the Independent Directors on the Commingling and Misuse of Customer Deposits at FTX.com was filed.[35]

- Mr. Ray and his team are considering any material matters that have not been addressed previously in reports, information decks, or complaints.

- On January 17, 2023, the Debtors published an information deck that had been presented to the Committee.[36]

- On March 2, 2023, the Debtors published a second information deck that had been presented to the Committee.[37]

- On March 17, 2023, the Debtors published a third information deck that had been presented to the Committee.[38]

- The Debtors have thoroughly investigated the conduct of numerous unindicted pre-petition insiders, advanced claims against Dan Friedberg, Joe Bankman, and Barbara Fried, and continue to investigate potential claims against others.

---

[34] D.I. 1242-1.

[35] D.I. 1704-1.

[36] D.I. 507.

[37] D.I. 792.

[38] D.I. 1101.

The Honorable John T. Dorsey                                                                                         -11-

- The Debtors have undertaken a painstaking investigation and analysis of nearly a hundred pre-petition venture investments, including by reviewing millions of pages of documents from the Debtors' own files as well as those secured through Rule 2004 discovery requests.

- The Debtors have investigated over a hundred pre-petition third-party professionals, including law firms, auditors, accountants, financial and non-financial consultants, and financial institutions, including by reviewing millions of pages of documents from the Debtors' own files as well as those secured through nearly 50 separate Rule 2004 discovery requests.

- The Debtors have commenced 14 actions against 235 parties seeking the recovery of a total of at least $3.3 billion.[39] Each of these actions has been the result of painstaking investigations into the facts and circumstances underlying the claims. In addition, each of the complaints filed in these actions is drafted in the nature of a talking complaint, providing a comprehensive overview of the investigatory work underpinning each cause of action.

- On December 19, 2022, Gary Wang was charged with 4 counts, pled guilty, and agreed to cooperate with prosecutors.[40]

---

[39] *FTX Trading Ltd. v. Mirana Corp.*, No. 23-ap-50759 (Bankr. D. Del. Nov. 10, 2023); *FTX Trading Ltd. v. Burgess*, No. 23-ap-50585 (Bankr. D. Del. Sept. 21, 2023), *Alameda Research LLC v. Bankman*, No. 23-ap-50584 (Bankr. D. Del. Sept. 18, 2023); *FTX Trading Ltd. v. LayerZero Labs Ltd.*, No. 23-ap-50492 (Bankr. D. Del. Sept. 8, 2023); *FTX Trading Ltd. v. Bankman-Fried*, No. 23-ap-50448 (Bankr. D. Del. July 20, 2023); *Alameda Research Ltd. v. Platform Life Sciences Inc.*, No. 23-ap-50444 (Bankr. D. Del. July 19, 2023); *FTX Trading Ltd. v. Lorem Ipsum UG*, No. 23-ap-50437 (Bankr. D. Del. July 12, 2023); *Alameda Research LLC v. Friedberg*, No. 23-ap-50419 (Bankr. D. Del. June 27, 2023); *Alameda Research Ltd. v. Kives*, No. 23-ap-50411 (Bankr. D. Del. June 22, 2023); *Alameda Research Ltd. v. Bankman-Fried*, No. 23-ap-50381 (Bankr. D. Del. May 17, 2023); *Alameda Research Ltd. v. Giles*, No. 23-ap-50380 (Bankr. D. Del. May 17, 2023); *Alameda Research Ltd. v. Rocket Internet Capital Partners II SCS*, No. 23-ap-50379 (Bankr. D. Del. May 17, 2023); *Alameda Research LLC v. FTX Digital Markets Ltd.*, No. 23-ap-50145 (Bankr. D. Del. Mar. 19, 2023); *Alameda Research Ltd. v. Voyager Digital, LLC*, No. 23-ap-50084 (Jan. 30, 2023).

[40] *United States v. Wang*, No. 22-CR-00673-LAK-2 (S.D.N.Y. Dec. 19, 2022), D.I. 6, D.I. 7, Minute Entries for Arraignment and Guilty Plea.

The Honorable John T. Dorsey                                                                -12-

- On December 22, 2022, Caroline Ellison was charged with 7 counts, pled guilty, and agreed to cooperate with prosecutors.[41]

- On February 28, 2023, Nishad Singh was charged with 6 counts, pled guilty, and agreed to cooperate with prosecutors.[42]

- On September 7, 2023, Ryan Salame was charged with 2 counts and pled guilty.[43]

- On December 22, 2022, Mr. Bankman-Fried was released on bail.[44]

- On July 26, 2023, Mr. Bankman-Fried had the conditions of his bail adjusted due to violations of existing bail conditions and witness tampering.[45]

- On August 11, 2023, Mr. Bankman-Fried had his bail revoked and was remanded into custody as a result of violation of bail conditions and witness tampering.[46]

- On October 3, 2023, jury selection began in Mr. Bankman-Fried's criminal trial; the trial itself commenced the next day.[47]

---

[41] *United States v. Ellison*, No. 22-CR-00673-LAK-3 (S.D.N.Y. Dec. 22, 2022), D.I. 8, D.I. 9, Minute Entries for Arraignment and Guilty Plea.

[42] *United States v. Singh*, No. 22-CR-00673-LAK-4 (Feb. 28, 2023), D.I. 90, D.I. 91, Minute Entries for Arraignment and Guilty Plea.

[43] *United States v. Salame*, No. 22-CR-00673-LAK-5 (Sept. 7, 2023), D.I. 262, D.I. 265, Minute Entries for Arraignment and Guilty Plea.

[44] Minute Entry for Bail Proceedings, *United States v. Bankman-Fried*, No. 22-CR-00673 (S.D.N.Y. Dec. 22, 2022), D.I. 13.

[45] Temporary Order Governing Extrajudicial Statements as to Samuel Bankman-Fried, *United States v. Bankman-Fried*, No. 22-CR-00673 (S.D.N.Y. July 26, 2023), D.I. 180.

[46] Order Remanding Samuel Bankman-Fried, *United States v. Bankman-Fried*, No. 22-CR-00673 (S.D.N.Y. Aug. 11, 2023).

[47] Minute Entry for Trial Proceedings, *United States v. Bankman-Fried*, No. 22-CR-00673 (S.D.N.Y. Oct. 4, 2023).

The Honorable John T. Dorsey -13-

- On November 2, 2023, Mr. Bankman-Fried was convicted after approximately four hours of jury deliberations.[48]

- The Debtors sought and obtained approval to commence the monetization of cryptocurrency in their possession.[49]

- On April 12, 2023, the Debtors announced that they would file a template for the Plan by no later than the end of July 2023.[50]

- On July 31, 2023, the Debtors filed a template for the Plan.[51]

- On October 16, 2023, the Debtors entered into a Plan Support Agreement with the Committee, the Ad Hoc Committee, and the JOLs.[52]

- On December 18, 2023, the Debtors filed the Plan.[53]

- On December 19, 2023, the Debtors entered into a comprehensive settlement with the JOLs providing for coordination of plans of reorganization in the United States and The Bahamas.[54]

- The Debtors filed all of their U.S. federal tax returns for the 2022 tax year.

- The Debtors amended all of their U.S. federal tax returns for the 2021 tax year.

**Examination and the Examiner**

The question now squarely before the Court is the scope, degree, duration, and cost of the examination that is "appropriate" for an examiner conduct at this time. In

---

[48] David Yaffe-Bellany, Matthew Goldstein & J. Edward Moreno, *Sam Bankman-Fried Is Found Guilty of 7 Counts of Fraud and Conspiracy*, N.Y. TIMES (Nov. 2, 2023), https://www.nytimes.com/2023/11/02/technology/sam-bankman-fried-fraud-trial-ftx.html.

[49] D.I 2239; D.I. 2505.

[50] Transcript of April 12, 2023 Hearing at 15:3–16:25.

[51] D.I. 2100.

[52] D.I. 3291.

[53] D.I. 4861.

[54] D.I. 4904.

The Honorable John T. Dorsey                                                                                                   -14-

order for this question to be answered, the Court must first set the process by which that question will be answered, and then the process by which an examiner fit for purpose will be selected and appointed. It is critical that the process is fair and transparent so that the question can be answered in a fashion that takes into account the previous rulings of the Court, the substantial work that has been done, the facts and circumstances that have developed over the past 14 months, the relatively little amount of time left in these Chapter 11 cases, and the likely magnitude of the distributions to be made to victims and creditors.

       The Debtors propose a straightforward process. First, the UST (as the only movant), the Debtors, and the Committee (if it wishes) should submit to the Court pleadings setting forth the proposed scope, degree, duration, and cost of an examination. The pleadings should respect the existing rulings of the Court. Once these pleadings have been submitted, the Court should hold a hearing to consider the proposals and reach a conclusion on the question. All parties in interest should have notice of the hearing and an opportunity to comment on the proposals. Only once the question is answered by the Court should the same three parties be entitled to submit to the Court suggestions as to who should serve as examiner. Supporting materials should be submitted setting out the proposed examiner's qualifications, potential conflicts, and any firm or firms the proposed examiner would use to provide support (along with the qualifications and potential conflicts of such firms). The process should not be, as suggested by the UST, conducted by the UST alone and outside of public view. Nothing in the Bankruptcy Code or Rules delegates to the UST the ability to select an examiner in a manner that is similar to how the UST selects the members of an official committee. Given the attention given to these cases, the process must be open and transparent and subject to the input of interested parties.

Respectfully yours,

*/s/ James L. Bromley*

James L. Bromley