## **EXHIBIT B**

**Loan Agreement**

EXECUTION VERSION

**LOAN AGREEMENT**

This LOAN AGREEMENT (this "Agreement") is made and entered into as of December 19, 2023 (the "Execution Date"), by and among FTX Trading Ltd. (the "Lender") and FTX Digital Markets Ltd. (the "Borrower") acting by its joint official liquidators as agents and without personal liability.  The Lender and the Borrower are collectively referred to as the "Parties" and individually as a "Party."

**RECITALS**

**WHEREAS**, the Parties have entered into the Global Settlement Agreement, dated as of the date hereof (the "GSA");

**WHEREAS**, under the GSA, the Lender has agreed to provide the Borrower with a loan and the Borrower has agreed to apply the proceeds of such loan solely to pay Administrative Expenses (as defined in the GSA); and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement and the GSA, the Lender is willing to make a loan to the Borrower and the Borrower is willing to borrow and repay the loan and perform its other obligations hereunder;

**NOW, THEREFORE**, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

**Article I.        Definitions and Interpretation**

Section 1.01    Definitions.  Capitalized terms used but not defined herein have the meaning set forth in the GSA.  The following terms shall have the following definitions:

"Agreement" has the meaning set forth in the preamble to this Agreement.

"Approval Orders" has the meaning set forth in Section 2.03.

"Borrower" has the meaning set forth in the preamble to this Agreement.

"Commitment Amount" means $45 million; *provided* that if a Recovery Event has occurred on or prior to the date on which the Loan is made, such amount will be reduced by the sum of any proceeds received by or on behalf of the Borrower as result of such Recovery Event.

"Conditions Precedent" has the meaning set forth in Section 2.03.

"Default Interest Rate" means the rate equal to the Interest Rate *plus* an additional 2.00% per annum.

"Dispute Resolution Protocol" means the dispute resolution protocol attached to the GSA.

"Event of Default" has the meaning set forth in Section 5.01.

"Execution Date" has the meaning set forth in the preamble to this Agreement.

"Fenwick Retainer Receivable" means the receivable held by the Borrower against Fenwick & West LLP in respect of a retainer in the amount of $3.5 million.

"GSA" has the meaning set forth in the recitals to this Agreement.

"GSA Termination Date" means the date on which termination of the GSA is effective in accordance with Article VIII of the GSA.

"Interest Rate" means the rate equal to 7% per annum.

"Klarpay Blocked Funds" means the funds deposited in bank accounts nos. CH8083041111210000081 and CH9183041111110000061 at Klarpay AG in the name of the Borrower.

"Lender" has the meaning set forth in the preamble to this Agreement.

"Loan" has the meaning set forth in Section 2.01.

"Maturity Date" means the date that is the earliest of: (a) the date that is eighteen (18) months after the Execution Date; (b) the Final Settlement Effective Date; (c) the GSA Termination Date; and (d) the date on which the principal amount of the Loan outstanding has been declared, or automatically has become, due and payable (whether by acceleration, prepayment or otherwise).

"Nuevi Receivable" means the receivable held by the Borrower in respect of proceeds in an account with Nuevi Corporation.

"Party" has the meaning set forth in the preamble to this Agreement.

"Recovery Event" means any event, occurrence or proceeding that results in any proceeds being received by the Borrower in respect of a Specified Asset, including the release or refund of a Specified Asset to the Borrower, whether in total or in part.

"Specified Assets" means the Klarpay Blocked Funds, the Fenwick Retainer Receivable, and the Nuvei Receivable.

Section 1.02    Interpretation.  For purposes of this Agreement:

(a)    in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender;

(b)    capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

(c)     unless otherwise specified, any reference in this Agreement to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(d)     any capitalized terms in this Agreement that are defined with reference to another agreement are defined with reference to such other agreement as of the date of this Agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the date of this Agreement;

(e)     if any payment, distribution, act or deadline under this Agreement is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date;

(f)     unless otherwise specified, all references in this Agreement to "Sections" are references to Sections of this Agreement;

(g)     the words "herein," "hereof," and "hereto" refer to this Agreement in its entirety rather than to any particular portion of this Agreement;

(h)     captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Agreement;

(i)     the use of "include" or "including" is without limitation, whether stated or not;

(j)     all references to "$" and "dollars" will be deemed to refer to United States currency unless otherwise specifically provided; and

(k)     the word "or" shall not be exclusive.

### Article II.     Loan and Use of Proceeds

Section 2.01   Loan.  Subject to the terms and conditions set forth herein, no later than five (5) Business Days after the satisfaction or waiver of the Conditions Precedent set forth in Section 2.03, the Lender shall make, or cause to be made, in a single advance, a loan (the "Loan") to the Borrower in a principal amount equal to the Commitment Amount by wire transfer of immediately available funds in Dollars into a bank account designated in writing by the Borrower no later than two (2) Business Days after the satisfaction or waiver of the Conditions Precedent.

Section 2.02   No Revolving Commitments.  Any amounts borrowed by the Borrower under Section 2.01 and repaid or prepaid to the Lender may not be reborrowed by the Borrower.

Section 2.03   <u>Conditions Precedent</u>.  The obligation of the Lender to make the Loan is subject to the satisfaction or waiver of the following conditions (collectively, the "<u>Conditions Precedent</u>"):  (a) each of the Bankruptcy Court and the Bahamas Court shall have entered orders (collectively, the "<u>Approval Orders</u>"), in form and substance reasonably satisfactory to the Lender and the Borrower, approving this Agreement and the Loan; and (b) at the time of and immediately after giving effect to the borrowing of the Loan, all representations and warranties of the Borrower set forth in this Agreement shall be true and correct in all material respects on and as of the date of such borrowing before and after giving effect thereto.

Section 2.04   <u>Use of Proceeds</u>.  The Borrower shall use the proceeds of the Loan solely to pay Administrative Expenses in accordance with the GSA.

## Article III.   Interest

Section 3.01   <u>Interest</u>.  The Borrower shall pay interest to the Lender on the unpaid principal amount of the Loan at a rate per annum equal to the Interest Rate.  Interest on the principal amount of the Loan shall accrue from and including the date on which the Loan is made until the date immediately prior to repayment in full, whether at maturity, by acceleration, prepayment or otherwise.

Section 3.02   <u>Default Interest</u>.  If any amount payable by the Borrower under this Agreement (including principal of the Loan and accrued interest thereon) is not paid when due, whether at maturity, by acceleration, prepayment or otherwise, such amount shall thereafter bear interest at a rate per annum equal to the Default Interest Rate.  All Default Interest shall be payable on demand.

Section 3.03   <u>Computations of Interest</u>.  All computations of interest shall be made by the Lender on the basis of a year of 365 days.  Each determination by the Lender of an interest amount hereunder shall be made in good faith and, except for manifest error, shall be final, conclusive and binding for all purposes.

## Article IV.   Payments and Prepayments

Section 4.01   <u>Payment of Principal and Interest at Maturity</u>.  The principal amount of the Loan outstanding and accrued interest thereon shall be due and payable on the Maturity Date.

Section 4.02   <u>Satisfaction of the Loan on the Final Settlement Effective Date</u>.  If the Final Settlement Effective Date occurs, the Lender and the Borrower agree that the Lender shall satisfy the obligation of the Borrower to repay the Loan by setoff and reduction against any amount otherwise due to the Borrower under the GSA upon the Final Settlement Effective Date. Such repayment obligation of Lender to Borrower and setoff and reduction in this Section 4.02 shall be effective automatically upon the occurrence of the Final Settlement Effective Date and shall not require any action by either Party.  The Lender agrees to provide written notice to the Borrower promptly (and in any event within three (3) Business Days) after any such setoff and reduction and include in such notice, the amount so setoff and the aggregate principal amount of the Loan outstanding after giving effect to such setoff and reduction; *provided* that the failure to give such notice shall not affect the validity of such setoff and application.

Section 4.03    <u>Voluntary Prepayment</u>.  The Borrower may, upon notice to the Lender, prepay any amount due under this Agreement at any time and from time to time, without premium or penalty, in whole or in part.

Section 4.04    <u>Mandatory Prepayment</u>.  No later than five (5) Business Days after the date of receipt by or on behalf of the Borrower of any proceeds from any Recovery Event, the Borrower shall prepay or cause to be prepaid the Loan to the Lender in an aggregate amount equal to such proceeds.  The Borrower shall notify the Lender in writing of any mandatory prepayment of Loan required to be made pursuant to this <u>Section 4.04</u> no later than (2) Business Days prior to the date of such prepayment, specifying the date and amount of such prepayment; *provided* that the Lender and the Borrower agree that the Lender may satisfy the obligation of the Borrower to prepay the Loan by setoff and reduction against any amount otherwise due to the Borrower under the GSA on such date. The Lender agrees to provide written notice to the Borrower promptly (and in any event prior to the prepayment date) after any such setoff and reduction and include in such notice, the amount so setoff and the aggregate principal amount of the Loan outstanding after giving effect to such setoff and reduction; *provided* that the failure to give such notice shall not affect the validity of such setoff and application.

Section 4.05    <u>Application of Proceeds</u>.  If at any time insufficient funds are received by and available to the Lender to pay fully all amounts of principal and interest then due hereunder, including in the event that the Borrower makes a prepayment pursuant to <u>Section 4.03</u> or <u>Section 4.04</u>, such funds shall be applied (a) *first*, toward payment of interest then due hereunder and (b) *second*, toward payment of principal then due hereunder.

Section 4.06    <u>Payments Generally</u>.  All payments to be made by the Borrower to the Lender hereunder shall be made to the Lender into a bank account designated in writing to the Borrower by the Lender.  If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension.  All payments hereunder shall be made in Dollars by wire transfer of immediately available funds.

Section 4.07    <u>Payments Free of Taxes</u>.  Any and all payments by or on account of any obligation of the Borrower under this Agreement shall be made without deduction or withholding for any Taxes, except as required by applicable Law.  If any applicable Law (as determined in the discretion of the Lender) requires the deduction or withholding of any Tax, then the sum payable by the Borrower to the Lender shall be increased as necessary so that after such deduction or withholding has been made the Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made.

## Article V.    Events of Default

Section 5.01    <u>Events of Default</u>.  If any one or more of the following events (each, an "<u>Event of Default</u>") shall have occurred:

(a)      the Borrower shall fail to pay the principal of, or any accrued interest on, the Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or otherwise;

(b)      an Approval Order has been reversed or vacated, and the Bankruptcy Court or the Bahamas Court, as applicable, does not enter a revised Approval Order reasonably acceptable to the Lender within ten (10) Business Days; or

(c)      any representation, warranty, or other statement of fact made or deemed made by or on behalf of the Borrower herein or in the GSA or any amendment or modification hereof or thereof or waiver hereunder or thereunder or in any certificate, document, report, financial statement, or other document furnished by or on behalf of the Borrower under or in connection with this Agreement, proves to have been false or misleading in any material respect on or as of the date made or deemed made;

then, in every such event and at any time thereafter during the continuance of such event, the Lender may, by notice to the Borrower, take any or all of the following actions, at the same or different times: (i) declare the principal of and any accrued interest on the Loan, and all other obligations owing hereunder, to be, whereupon the same shall become, due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower, and (ii) exercise any other rights and remedies available at Law or in equity, including as set forth in Section 5.02.

Section 5.02   Setoff Right.  If an Event of Default shall have occurred and be continuing, the Lender and each of its Affiliates (including PropCo) is hereby authorized at any time and from time to time, to the fullest extent permitted by applicable Law, to setoff and apply any and all obligations now or hereafter owing by such Lender or Affiliate (including under the GSA and in respect of the Bahamas Properties) to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing to such Lender or Affiliate (including under this Agreement, the GSA and in respect of the Bahamas Properties) irrespective of whether or not such Lender or Affiliate shall have made any demand under this Agreement or the GSA and although such obligations of the Borrower may be contingent or unmatured.  The rights of the Lender and its Affiliates under this Section 5.02 are in addition to other rights and remedies (including other rights of setoff) that the Lender or its Affiliates may have.  The Lender agrees to provide written notice to the Borrower promptly (and in any event within three (3) Business Days) after any such setoff and application and include in such notice, the amount said setoff and the aggregate principal amount of the Loan outstanding after giving effect to such setoff and application; *provided* that the failure to give such notice shall not affect the validity of such setoff and application.

### Article VI.     Representations and Warranties

The Lender and the Borrower, severally, and not jointly, represent, warrant and covenant to the other Party that, as of the Execution Date:

(a)      to the extent applicable, it is validly existing under the Laws of the state of its organization, and this Agreement, upon approval of the Bankruptcy Court or the Bahamas

Court, as applicable, is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable Law relating to or limiting creditors' rights generally or by equitable principles relating to enforceability;

(b)    except as expressly provided in this Agreement, the Bankruptcy Code, and the Bahamas Code, no consent or approval is required by any other Entity in order for it to effectuate the transactions contemplated by, and perform its respective obligations under, this Agreement;

(c)    to extent applicable, the entry into and performance by it of, and the transactions contemplated by, this Agreement do not, and will not, conflict in any material respect with any Law or regulation applicable to it or with any of its articles of association, memorandum of association, or other constitutional documents; and

(d)    except as expressly provided in this Agreement, it has (or will have, at the relevant time) all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and to effectuate the transactions contemplated by, and perform its respective obligations under, this Agreement.

## Article VII.    Miscellaneous

Section 7.01    Assignments.  No Party may assign any of its rights or transfer any of its rights or obligations under this Agreement without the prior written consent of the other Party.

Section 7.02    Amendment and Waivers.  This Agreement may not be amended or modified, nor may any of its provisions be waived, except in writing signed by the Parties.

Section 7.03    Further Assurances.  Subject to the other terms and conditions of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters specified in this Agreement, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court or the Bahamas Court, from time to time, to effectuate any transaction contemplated by this Agreement.

Section 7.04    Complete Agreement.  Except as otherwise explicitly provided in this Agreement, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, oral or written, among the Parties with respect thereto, other than any Existing Confidentiality Arrangement. The Parties acknowledge and agree that they are not relying on any representations or warranties other than as set forth in this Agreement.

Section 7.05    Governing Law.  This Agreement is to be governed by and construed in accordance with the Laws of the State of New York without giving effect to its conflict of laws principles to the extent that the application of the Laws of another jurisdiction would be required thereby.

Section 7.06    Dispute Resolution.  Each Party agrees that it shall not initiate any action or proceeding in any court or tribunal in respect of any claim arising out of or related to

this Agreement without reasonable advance notice and consultation with the other Party.  Each Party to this Agreement agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in accordance with the Dispute Resolution Protocol.

Section 7.07    TRIAL BY JURY WAIVER.  EACH PARTY TO THIS AGREEMENT IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.

Section 7.08    Execution of Agreement.  This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Except as expressly provided in this Agreement, each Person executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

Section 7.09    Rules of Construction.  This Agreement is the product of negotiations among the Lender and the Borrower, and in the enforcement or interpretation of this Agreement, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion of this Agreement, shall not be effective in regard to the interpretation of this Agreement.  The Lender and the Borrower were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel.

Section 7.10    Successors and Assigns; Third Parties.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  There are no third-party beneficiaries under this Agreement, and, except as set forth in this Agreement, the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other Entity.

Section 7.11    Notices.  All notices hereunder shall be deemed given if in writing and delivered, by electronic mail, courier, or registered or certified mail (return receipt requested), to the following addresses (or at such other addresses as shall be specified by like notice):

(a)    if to the Lender, to:

Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Attention:  Andrew G. Dietderich, James, L. Bromley, Brian D. Glueckstein and Alexa J. Kranzley
E-mail addresses:  dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com and kranzleya@sullcrom.com

(b)      if to the Borrower, to:

White & Case LLP
1221 Avenue of the Americas
New York, New York 10020
Attention: J. Christopher Shore, Brian Pfeiffer, Jason Zakia and Brett Bakemeyer
E-mail addresses: cshore@whitecase.com, bpfeiffer@whitecase.com, jason.zakia@whitecase.com, and brett.bakemeyer@whitecase.com

Lennox Paton
3 Bayside Executive Park
West Bay Street & Blake Road
N-4875
Nassau, The Bahamas
Attention: Sophia Rolle-Kapousouzoglou, Marco Turnquest
E-mail addresses: srolle@lennoxpaton.com; mturnquest@lennoxpaton.com

Any notice given by delivery, mail, or courier shall be effective when received.

Section 7.12   Admissibility.  Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating to this Agreement shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or the payment of damages to which a Party may be entitled under this Agreement.

Section 7.13   Specific Performance.  It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

Section 7.14   Severability and Construction.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

Section 7.15   Remedies Cumulative.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at Law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

Section 7.16   Email Consents.  Where a written consent, acceptance, approval, or waiver is required pursuant to or contemplated by this Agreement, such written consent, acceptance, approval, or waiver shall be deemed to have occurred if, by agreement between counsel to, as applicable, the Lender and the Borrower, submitting and receiving such consent,

acceptance, approval, or waiver, it is conveyed in writing (including electronic mail) between each such counsel without representations or warranties of any kind on behalf of such counsel.

[*Signature pages follow.*]

IN WITNESS WHEREOF, the Parties have executed this Agreement on the Execution Date.

**FTX TRADING LTD.**

By _____
    Name:   John J. Ray III
    Title:    Chief Executive Officer

[*Signature Page to Loan Agreement*]

**FTX Digital Markets Ltd. – In Liquidation**

By _____

Name: Brian Simms, KC

Title: Joint Official Liquidator of FTX Digital Markets Ltd., acting as agent and without personal liability

By _____

Name: Kevin Cambridge

Title: Joint Official Liquidator of FTX Digital Markets Ltd., acting as agent and without personal liability

By _____

Name: Peter Greaves

Title: Joint Official Liquidator of FTX Digital Markets Ltd., acting as agent and without personal liability

[*Signature Page to Loan Agreement*]