<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,     .
                                   .  (Jointly Administered)
 5         Debtors.               .
     . . . . . . . . . . . . . . . .
 6                                 .
     FTX TRADING LTD. AND          .  Adv. Pro. No. 23-50437 (JTD)
 7   MACLAURIN INVESTMENTS LTD.,   .
                                   .
 8        Plaintiffs,              .
                                   .
 9     v.                          .
                                   .
10   LOREM IPSUM UG, PATRICK       .  Courtroom No. 5
     GRUHN, ROBIN MATZKE, AND      .  824 North King Street
11   BRANDON WILLIAMS,             .  Wilmington, Delaware 19801
                                   .
12        Defendants.              .  Wednesday, January 24, 2024
     . . . . . . . . . . . . . . . .  2:00 p.m.
13
                    TRANSCRIPT OF STATUS CONFERENCE HEARING
14              BEFORE THE HONORABLE JOHN T. DORSEY
                    UNITED STATES BANKRUPTCY JUDGE
15
     APPEARANCES:
16

17   For the Debtors:        James Bromley, Esquire
                             Steven Ehrenberg, Esquire
18                           SULLIVAN & CROMWELL LLP
                             125 Broad Street
19   (APPEARANCES CONTINUED)  New York, New York 10004

20   Audio Operator:         Sharon A. Page, ECRO

21   Transcription Company:  Reliable
                             The Nemours Building
22                           1007 N. Orange Street, Suite 110
                             Wilmington, Delaware 19801
23                           Telephone: (302)654-8080
                             Email:  gmatthews@reliable-co.com
24

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
</pre>

1  | APPEARANCES (CONTINUED):

2  | For the U.S. Trustee:      Linda Richenderfer, Esquire
   |                            OFFICE OF THE UNITED STATES TRUSTEE
3  |                            844 King Street, Suite 2207
   |                            Lockbox 35
4  |                            Wilmington, Delaware 19801

5  | For the Official
   | Committee of
6  | Unsecured Creditors:       Kenneth Pasquale, Esquire
   |                            PAUL HASTINGS LLP
7  |                            200 Park Avenue
   |                            New York, New York 10166
8  |
   | For Defendants:            Heath Rosenblat, Esquire
9  |                            MORRISON COHEN LLP
   |                            909 Third Avenue
10 |                            27th Floor
   |                            New York, New York 10022

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 2:01 p.m.)

2               THE COURT:  Good afternoon, everyone.  This is

3   Judge Dorsey.

4               Can everyone hear me okay?

5          (No verbal response)

6               THE COURT:  Can anyone hear me?

7          (No verbal response)

8               THE COURT:  They can't hear me.

9          (Pause)

10              THE COURT:  Okay.  Let's try this again, can

11   everybody hear me okay?

12              MR. BROMLEY:  Yes, Your Honor.

13              THE COURT:  Okay.  This is Judge Dorsey.  We are

14   on the record in FTX Trading Ltd., Case No. 22-11068,

15   Adversary Proceeding 23-50437.  This is a status conference

16   requested by the Court.

17              I will go ahead and turn it over to debtors'

18   counsel.

19              MR. BROMLEY:  Good morning, Your Honor -- or good

20   afternoon, Your Honor, I'm sorry, its James Bromley of

21   Sullivan & Cromwell.

22              Can you hear me okay?

23              THE COURT:  I can.  Thank you.

24              MR. BROMLEY:  Thank you, Your Honor.

25              I am here with my partner, Steven (??), who will

1  be addressing the issues relating to the adversary

2  proceeding. I will be addressing the issues relating to the

3  status conference related to the appointment of an examiner.

4         THE COURT:  Okay.

5         MR. BROMLEY:  Your Honor, we submitted a letter to

6  the Court yesterday setting forth our positions with respect

7  to the decision of the Third Circuit.  It is our view that

8  what we should be doing today at the status conference is

9  setting a process to, first, determine the scope, the degree,

10  the duration, and the cost of an examination as well as, in a

11  transparent and public fashion, setting a process for the

12  selection and appointment of an examiner.

13         Your Honor, we are sitting here in February -- or

14  almost in February of 2024, nearly a year after the hearing

15  on the examiner motion.  That was the subject of the appeal

16  by the U.S. Trustee.  There has been a huge amount of

17  progress and a different set of facts that presents itself

18  today then we were facing when we were standing in front of

19  the Court in February of 2023.

20         Your Honor, while Mr. Ray's first day declaration,

21  which was filed on November 17th of 2022, set forth a number

22  of very troubling issues that were discovered at the time of

23  the commencement of the case, it is fair to say that the

24  issues that were identified by Mr. Ray in that first day

25  declaration have been rectified.

1       The situation that the Court has been -- that has

2   been described to the Court by Mr. Ray in that declaration

3   and in his testimony at the examiner hearing are

4   fundamentally different then they are today then they were at

5   that point in time.  There has been -- the five issues that

6   are objectives that Mr. Ray had set forth in his first day

7   declaration have largely been achieved.

8       Most importantly, Your Honor, we are sitting here

9   today within several months of an exit from Chapter 11.  An

10  exit from Chapter 11 that will take place with recoveries to

11  creditors that, frankly, could not have been imagined at the

12  time that the examiner hearing was held or at the time that

13  the motion for the appointment of an examiner was filed by

14  the United States Trustee.

15      Your Honor, it's the view of the debtors that its

16  critically important that we take into account not just the

17  substantial work that has taken place, but also the fact that

18  we are faced with just a number of months before emergence.

19  So, while the Third Circuit clearly stated that the

20  appointment of an examiner in these cases is mandatory under

21  1104, the Third Circuit also made it very clear that it lies

22  in the discretion of this Court to determine the scope, the

23  duration, the degree, and the cost of that examination.

24      So, Your Honor, our view is that the interested

25  parties, and that should be a limited group of interested

1  parties, being the debtors, the committee, and the United

2  States Trustee, should make submissions to the Court with

3  respect to those four elements, the four elements that were

4  set forth by the Third Circuit, and then have an attempt to

5  sit down in a meet and confer to determine whether or not we

6  are able to reach agreement.  If we are unable to reach

7  agreement to have the Court decide on those four elements:

8  the scope, the degree, the duration, and the cost of the

9  examination.

10        THE COURT:  Okay.  Let me hear from committee

11  counsel.

12        MR. PASQUALE:  Good afternoon, Your Honor.  Ken

13  Pasquale from Paul Hastings for the official committee.  With

14  me is my partner, Chris Hansen.

15        Your Honor, we too submitted a letter with our

16  thoughts with respect to the examiner motion.  I won't get

17  into the details of the proposal.  We do generally agree with

18  Mr. Bromley, a lot has happened in the case over the last

19  year.  The Third Circuit, itself, in its decision recognized

20  the Court's discretion to set the parameters of the

21  investigation.

22        We have two main concerns, and the Third Circuit

23  noted them in the opinion on page 15. I will quote:

24        "By setting the investigation's parameters the

25  Bankruptcy Court can ensure that the examiner is not

1  duplicating the other parties efforts and the investigation

2  is not unnecessarily disrupting the reorganization process."

3         Those are our two concerns.  We don't want to see

4  the examiner -- the expense, excuse me, of the examiner's

5  investigation impacting the estates.  This has been done.

6  The investigation and (indiscernible) has been done.  So, we

7  think its narrowing the scope and certainly the cost that has

8  to be taken into account.

9         Perhaps even more importantly, as Mr. Bromley

10  eluded to, we are on track for a plan confirmation process in

11  the next few months.  The examiner process really should

12  proceed in parallel, but it really should not in any way slow

13  down that confirmation solicitation process so that

14  distributions can be made to creditors.

15         As far as our proposal, Your Honor, I think I will

16  wait on that and come back to that as Your Honor addresses

17  the other parties.

18         THE COURT:  Okay.  Let me hear from the U.S.

19  Trustee.

20         MS. RICHENDERFER:  Good afternoon, Your Honor.

21  Linda Richenderfer from the Office of the United States

22  Trustee.

23         Your Honor, I think we have a big disconnect here.

24  I think that the proposal that was set forth in the debtors'

25  letter, respectfully, ignores the appellate rules of

1  procedure, the bankruptcy code, and the practice and the

2  process that has been followed by this Court.

3         First, to address the issue of the appellate

4  process.  The issue of the appointment of the examiner will

5  not be back into this Court until the mandate is issues.

6  This is something I have had to learn an awful lot about in

7  the LTL cases and especially LTL case number one.  The issue

8  does not come back before Your Honor until the mandate

9  issues.  And the mandate does not issue until after

10  expiration of rehearing deadlines because the United States

11  Trustee is a party to this case, it's actually a 45-day

12  period, not a 14-day period.

13         So, it would be 52 days after last Friday before

14  we would see the mandate coming from the Third Circuit;

15  however, under Rule 41(b), as in boy, of the Appellate Rules

16  of Procedure the Third Circuit can respond to a motion to

17  extend or shorten the length of the mandate period.  Now the

18  mandate period there, of course, is to protect parties that

19  want to make application for rehearing or hearing en banc.

20         I saw in the debtors' letter that they are

21  pronouncing that they are not going to seek that relief.  I

22  don't see that in the committee's letter.  I don't know if

23  there are other parties who participated in the appeal who

24  feel differently.  That would be a reason why there should be

25  a motion filed with the Third Circuit regarding issuance of

1 the mandate and then parties in interest can respond.

2        It is also a subject that the U.S. Trustees Office

3 does not have the authority to speak on because when it comes

4 to appellate matters, that is handled by the Appellate Civil

5 Division of DOJ, for the United States Trustee.  There was a

6 different grouping of people, in fact, who did the brief and

7 who argued the case in front of the Third Circuit.  So, this

8 would be the people who would have to be involved in this

9 process with the debtors or the committee, whoever might want

10 to take up the laboring ore, but this is something that needs

11 to occur before Your Honor can issue any orders, quite

12 frankly, regarding this because the issue is not in front of

13 this Court.

14        I have to say, you know, we all were excited when

15 we saw the opinion last Friday, but then we stopped and said,

16 oh, no, its not an immediate, oh, we go back to the Court.

17 It's we got to go through this mandate process first.

18        After the mandate is issued, then we have to look

19 at Bankruptcy Code Section 1104(d), as in David, which talks

20 about the process of appointing the examiner.  I am going to

21 borrow from the Third Circuit here.  The Third Circuit said,

22 you know, complex case, but straightforward issue for appeal.

23 Complex case here, Your Honor, but a straightforward process

24 that is laid out in 1104(d) for how we go about appointing an

25 examiner, deciding scope, duration and also the budget.

1      Your Honor, our office has been through this

2  already with you in the Cred case.  That case was handled by

3  our assistant U.S. Trustee, Mr. McMahon, back when he was a

4  trial attorney. It's the same process I followed, Your Honor,

5  in PWR when Your Honor ordered the appointment of a Chapter

6  11 Trustee; very similar process.  Its set forth there.

7      First, 1104(d) says that the United States

8  Trustee, after consultation with the parties in interest,

9  appoints an examiner subject to Court approval.  So, Your

10  order would enter an order stating the U.S. Trustee is

11  ordered to appoint an examiner, that is what you did in Cred,

12  I have all the Cred pleadings, and then we responded, went

13  through the process, and believe me, Your Honor, we are very

14  popular people right now in terms of our email traffic.

15      Mr. Vera, Mr. McMahon, Mr. Hackman, and myself

16  receive emails daily from people who are interested in

17  serving in this role.  We are not wasting time.  We are

18  conducting some due diligence in the meantime.  We are not

19  just sitting here, but we can't do anything until Your Honor

20  issues the order ordering us to make the appointment.

21      We will have a very robust pool to choose from.

22  We will be looking at the skill set, the background of the

23  people, and we will be consulting with the parties in

24  interest as we are ordered to do so under Section 1104(d) of

25  the Bankruptcy Code.

1        So, after an examiner is chosen by the U.S.

2  Trustee then we go through the application process.  Again,

3  something very simple.  We did it in Cred.  Information is

4  supplied to the Court, it goes out on notice, everyone knows

5  who the candidate is, they know information about them

6  because its very important that the candidate be

7  disinterested.  Then if Your Honor is satisfied with that

8  then Your Honor issues the order appointing that person as

9  the examiner.

10        Then usually that order, as in Cred, said that the

11  examiner works with parties in interest and comes up with the

12  scope, comes up with the budget, comes up with the duration.

13  They must be involved in that process.  They have to be

14  involved in that process.

15        Your Honor gave the examiner, in that case it was

16  Mr. Stark, a certain number of days to come back with a plan,

17  scope, duration, and budget.  And it was filed under notice.

18  So, it went out.  And parties are able to comment on it.  No

19  one is going to be acting in a vacuum here.  We are not doing

20  things behind closed doors.  That is the great thing about

21  the examiner and that is one of the things the Third Circuit

22  said, the examiner's report will be public.  The examiner

23  needs to rely on the cooperation of the party here.  He

24  doesn't want to have to come running back or she doesn't want

25  to have to come running back to this Court saying I can't get

1  this from the committee or I can't get this from Mr. Ray.

2  The examiner will need to be involved with those parties,

3  will need to be consulting with them.

4        Now, as to scope just a couple of very broad

5  brushed comments at this point in time.  The Third Circuit

6  spoke about the scope in a very general way, first of all.

7  It said that the investigation, under 1104(c)(2), is

8  different from the debtors and the UCC conducting an

9  investigation.  You are working with a disinterested party.

10  Not working with the debtor-in-possession conducting an

11  examination.  And believe me, Your Honor, not to say anything

12  derogatory about any of these groups, and I am also relying

13  on the Third Circuit's opinion here, but they are creditors,

14  they are the debtors.  This is an independent disinterested

15  party.

16        Even the Third Circuit pointed out that under

17  1107(a) the debtor-in-possession can't perform the duties of

18  an examiner in --

19            THE COURT:  Can you hold on one second, Ms.

20  Richenderfer.

21            MS. RICHENDERFER:  Certainly, Your Honor.

22        (Pause)

23            THE COURT:  Apparently, Ms. Richenderer, there are

24  some people who wanted to be in the virtual courtroom, but

25  they are not picking up the audio.  I don't know why, but its

1  apparently an outside issue, not a court issue.  So, there is

2  nothing I can do about that at this point.  So, we will go

3  ahead and go forward.  Go ahead.

4         MS. RICHENDERFER:  Okay.  Just as an aside, Your

5  Honor, at first, we had trouble signing in because we were

6  using Chrome and we moved over to Microsoft Edge and got us

7  in with no problem seeing and hearing everyone.  I just pass

8  that suggestion out there, but if people can't hear then they

9  don't hear me saying that.

10        So, I mean the goal of the examiner is to issue a

11 public report.  The Third Circuit also got a little more

12 granular about scope and said there are issues of potential

13 conflicts of interest arising from the debtors' counsel

14 serving as prepetition advisors. It didn't make any judgments

15 one way or the other and I am not suggesting that we debate

16 the issues today.  I know that was addressed in the debtors'

17 letter to the Court.  It was an observation made by the Third

18 Circuit and it would be something that the examiner may look

19 into.

20        There was another issue that was also commented on

21 by the Third Circuit, which was employees of FTX who are

22 still in place at the company, and I know that the debtor has

23 spoken about looking into it.  There were certain areas in

24 which the debtor, in its letter to Your Honor, even admitted

25 that they haven't completed their evaluation of certain

1  things.  But, again, this is premature to be talking about

2  the scope today.  We have to get the mandate, Your Honor has

3  to issue the order, we need to comply with 1104(d), we need

4  to have the examiner come back with their report -- sorry,

5  with their gameplan so to speak.

6            You know, in general there is the corporate

7  activity, the decision-making process.  Nobody wants to

8  reinvent the wheel, that is for sure.  And I would note

9  though that the last time Mr. Ray filed a report on

10  investigation information was back in June of 2023. I know

11  those things are noted in the debtors' letter, but there came

12  a point in time when those reports stopped.

13            Again, the Third Circuit strongly said that the

14  difference here, there is a big difference, and its

15  independent the examiner, the examiner is disinterested, and

16  the examiner will issue a report that will be placed on the

17  docket.  You know, coming up with different formats, which,

18  quite frankly, Your Honor, I think have so many steps in them

19  I couldn't -- I lost track after a while at different steps

20  the debtors were suggesting. Its there in 1104, anybody who

21  wants the Cred case number I will certainly give it to them.

22            Your Honor, that was a very simple process that

23  got us to the examiner being appointed.  I think it took

24  about four months, if you look at the dates on the orders,

25  but we had Christmas in between and I do recall that that was

1   a little bit of -- it leant in the process a little bit with

2   the holidays being in there.  But no need to reinvent the

3   wheel. In fact, you can't reinvent the wheel.  1104(d) tells

4   us what to do and it orders the U.S. Trustee to consult with

5   the parties in interest when conducting its evaluation.  We

6   do not feel that we can undertake anything until mandate

7   issues and Your Honor issues the order.

8            I don't know if Your Honor has any questions about

9   that.

10            THE COURT:  No questions.

11            MS. RICHENDERFER:  Okay.  Thank you, Your Honor.

12            THE COURT:  Mr. Bromley, any response?

13            MR. BROMLEY:  Yes, Your Honor.  There are certain

14  things that the U.S. Trustees Office says that we certainly

15  don't disagree with.  But to start off with the mandate

16  issue, there are three parties that participated in the

17  appeal: that is the official committee of unsecured

18  creditors, the debtors, and the United States Trustee.

19            It seems to us to be a relatively simple thing to

20  stipulate together that the mandate period should be reduced

21  and that the mandate should issue immediately.  So, we don't

22  see that as being an obstacle whatsoever.  And if the U.S.

23  Trustees Office is saying that they want to take the full 45

24  days that they are allocated under the statute that is,

25  frankly, disturbing to us because we are moving very quickly

1  towards confirmation of a plan of reorganization. And as Mr.

2  Pasquale said, one of the things that the Third Circuit said,

3  based on the current record, is that this should not -- this

4  exercise with respect to the examiner should not get in the

5  way of confirmation.

6       Now with respect to the 1104(d) exercise I don't

7  think anything that we said in our letter is inconsistent

8  with 1104(d).  We want that process with the United States

9  Trustee to be open and transparent, that's all.  We want that

10 to -- and we want the scope and the degree, the duration, and

11 the cost to be determined first because the exercise here,

12 Your Honor -- yes, there are lots of phone calls that are

13 coming in, emails, not just to the U.S. Trustees Office but

14 to the debtors and the creditors committee as well because

15 there are lots of people out there in our business who would

16 love to be able to get into this exercise and see this as a

17 possibility generating a lot of fees at the expense of our

18 creditors.

19      We need to make it clear to everyone out there

20 exactly what the scope should be before that exercise takes

21 on a life of its own because unless that is set first our

22 view is that all of the candidates are going to be

23 incentivized to have a very large mandate and suggest a large

24 mandate.  So, our view is that we should consult with the

25 U.S. Trustees Office and the committee about what that

1  mandate should be.  If we can reach agreement on it then we

2  should come to the Court with an agreed stipulation on scope

3  and then move to the appointment of the examiner.

4         There is nothing in 1104(d) that says that that is

5  not appropriate or not authorized, right.  So, the fact that

6  one other case that the U.S. Trustee had in front of Your

7  Honor with respect to the appointment of an examiner moves in

8  a slightly different doesn't mean that it can't operate in a

9  different order here.

10         Now with respect to what the U.S. Trustees

11  Office's statements with respect to scope she stated I don't

12  want to talk about scope, I don't want to talk about scope,

13  and then proceeded to talk about scope, right.  So, I am not

14  going to go into the issues with respect to scope, but the

15  fact is that the dicta that is cited by the Third Circuit has

16  no basis in the current set of facts.

17         They relied on two things, Your Honor.  They

18  relied on Mr. Ray's declaration on the first day of the case

19  and to insinuate today that the same people who brought this

20  company into bankruptcy are to date in place, in office,

21  running that company is simply impossible to believe, right.

22  That is incorrect and it was incorrect in February of 2023,

23  its incorrect today.

24         The idea that the U.S. Trustees Office is a year

25  later continuing to sing that same song is highly

1  disappointing.  There hasn't been a single question from the

2  U.S. Trustees Office in the last 12 months about anyone who

3  was supposedly involved in the case prior to the filing and

4  whether they still have roles.  The fact is that none of them

5  do.  They are all long gone.

6          And completely ignoring the fact that while the

7  debtor itself may not be disinterested in the class, in the

8  sense of the word, Your Honor has already held evidentiary

9  hearings that have determined that Mr. Ray and his team are

10  disinterested, that the counsel that have been pointed to

11  represent him are disinterested.

12          The Office of the United States Trustee withdrew

13  their objection to all of the counsel that were appointed.

14  There was no objection prosecuted by the Office of the U.S.

15  Trustee against my firm, against Quinn Emanuel, against Paul

16  Hastings, against Young Conaway, against Landis Rath & Cobb,

17  zero.  Those orders were entered finding disinterestedness

18  and those orders are final, unappealable.

19          So, we cannot ignore what has taken place. So, its

20  critically important, in our view, that as we are moving

21  forward let's get this mandate issue solved. If the U.S.

22  Trustees Office or the Department of Justice in Washington

23  are somehow incapable of accepting the fact that they won and

24  shortening the period for the mandate that, I think, speaks

25  volumes. So, I am hopeful that that is simply a misstatement

1  by the Office today.

2          We should move forward quickly to get that

3  mandate, put squarely in Your Honor's Court and discretion to

4  form the scope of this investigation, and the timeline, and

5  the cost because, Your Honor, on the 31st of January we are

6  going to be before you telling you in substantial detail

7  information that goes to the recoveries -- to creditors --

8  not just creditors, but victims because this is a case that

9  is very different than other cases.

10          We are talking about people who suffered as a

11  result of the frauds of Sam Bankman-Fried and his cronies.

12  What has happened over the past year is that the debtors have

13  relentlessly provided information to all of the regulators

14  including the prosecutors in the Southern District of New

15  York and Mr. Bankman-Fried was convicted in less then four

16  hours after a six-week trial, which was a trial of the

17  decade.

18          When Mr. Williams, who is the U.S. Attorney for

19  the Southern District of New York, stood on the steps outside

20  of the Courthouse he said this is what relentless looks like.

21  We investigated from top to bottom and side to side

22  everything that went on in connection with the fall of FTX

23  and we have brought justice by convicting Mr. Bankman-Fried

24  and getting the plea agreements from Ms. Ellison, Mr. Singh,

25  from Mr. Wang, and Aslam.  Watch out everyone else in the

1  crypto world because we are going to do the same thing to
2  you.
3      What has happened in the past 12 months is
4  absolutely astonishing in terms of taking what had truly been
5  a dumpster fire and a crime scene and turning it into quick,
6  speedy, and convictions through the cooperation of these
7  debtors, and their professionals and the prosecutors.  We
8  also have done the same with the Securities & Exchange
9  Commission, the CFTC, dozens of regulators around the world
10 and within the United States.
11     We are engaged right now with the CFTC with
12 respect to their multi-billion-dollar claim, the IRS with
13 their multi-billion-dollar claim. This is now a freight train
14 that is moving towards confirmation that is going to deliver
15 very fast and very substantial recoveries to creditors who a
16 year ago thought they were going to get cents on the dollar.
17     So, the fact that there was a victory on Friday
18 for the U.S. Trustees Office before the Third Circuit, okay.
19 Now we all know what 1104(c) says.  I still disagree with it,
20 but we're not going to appeal it and we're not going to seek
21 en banc review.  But the time is now to decide what is the
22 scope, and what is the cost, and what is the duration.
23     With all due respect, Your Honor, the United
24 States Trustees Office should simply say, thank you, we won,
25 and sit down with the parties to decide those key issues.

1  And what I have heard today, unfortunately, doesn't sound

2  like that.

3           THE COURT:  Mr. Pasquale.

4           MR. PASQUALE:  Thank you, Your Honor.

5           First, just for the record, the Committee has no

6  intention of seeking (indiscernible) review.  We agree with

7  Mr. Bromley, we stipulate to borrow.  As I said earlier, we

8  are most concerned with speed to keep on that confirmation

9  schedule.

10          Just one thing on scope and the process, Your

11  Honor.  We did propose in our letter a slightly different

12  process by which the examiner would be appointed first and

13  then meet with the parties.  We don't feel strongly either

14  way, but that scope needs to be discussed among the parties.

15  As I said earlier, we do think it needs to be limited, but

16  the process needs to proceed.  So, in essence, Your Honor, I

17  don't understand the delay in waiting 56 days to get this

18  process moving.  Thank you.

19          THE COURT:  Well, I think Ms. Richenderfer has

20  said that she would be willing to work with the parties to

21  see if we can get that mandate issued faster.

22          MS. RICHENDERFER:  Your Honor, if I could correct?

23          I don't think I misstated; I think I was misheard

24  and I was, quite frankly, at first, was surprised that

25  Sullivan & Cromwell came to Your Honor and didn't first talk

1  about the mandate and how we were going to address it, so we

2  felt it necessary to bring up that issue at the hearing

3  today.

4          The point is that absent anything being done, it

5  will be 52 days.  Our point is something needs to be done.

6  Under 41(b) of the Appellate Rules of Procedure, something

7  can easily be done and we would just ask that the Committee

8  and the debtor get in touch with, or we will put them in

9  touch with the Civil Appellate Division of DOJ to speak on

10  behalf of the U.S. Trustee's Office and it should be done as

11  soon as possible.

12          If the Committee and the debtors had already

13  decided that they were not going to take further action, they

14  could have started that process on Monday if they wanted to.

15  So the point was not we were going to drag things out.  We

16  don't want to drag things out.  The point was, we can't miss

17  that step.  We can't run the risk of something being done

18  that, then, is without authority because the mandate has not

19  issued.  It must issue first.

20          And thinking that we should just sit down and be

21  grateful that the Third Circuit reads it the way that the

22  Sixth Circuit does, the way the U.S. Trustee's Office does, I

23  don't think that maybe counsel understands what the true goal

24  and what my responsibilities are as a member of the U.S.

25  Trustee's Office.  We will comply with 1104(d), as

1  Mr. Pasquale, I think it was, just said, let's get the

2  examiner first, then talk about scope, then talk about

3  duration, and then talk about amount.

4          Everyone is assuming that for some reason, that

5  everyone -- that we, the U.S. Trustee, are going to be in

6  there fighting for something that starts from the get-go.

7  Maybe these are just precautionary tales that they're

8  throwing out to try to put us off that notion.  We don't know

9  what the scope will be.  We need to get the examiner in.

10 That is the way that it's done.  That is the way that the

11 Committee has suggested it be done.

12         Let's get the examiner.  We will be consulting

13 with parties in interest, including the debtors and the

14 Committee, regarding the identification of the examiner and

15 we will do it once the mandate has been issued and once Your

16 Honor can issue an order to us, directing us to appoint an

17 examiner.

18         THE COURT:  All right.  So I agree with the

19 trustee that the Code does provide the process by which an

20 examiner gets appointed; it's 1104(d), which governs the

21 appointment by the trustee after consultation with parties in

22 interest and subject to approval by the Court.

23         Rule 2007.1(a) also sets forth that the motion to

24 appoint an examiner is governed by Rule 9014, which makes it

25 a contested matter.  And I think it's not just the motion to

1  ask for the appointment of an examiner, but I think the

2  appointment of the examiner itself is a contested matter

3  which can be heard by the Court, in accordance with

4  Rule 9014.

5       Rule 2007.1(d) lays out the process for the

6  approval of an examiner after the U.S. Trustee identifies who

7  that examiner is going to be appointed.

8       In this case, I know in Cred I appointed an

9  examiner, asked the examiner to provide a scope for the

10 investigation that was going to be conducted.  In Cred, that

11 process began early in the case.  In this case, I probably

12 know more about this case than anybody who's going to be

13 appointed as an examiner knows at this point in time.

14      And the Third Circuit Court said that I have the

15 broad discretion to determine the scope, the degree, the

16 duration, and the cost of any examination.

17      I think it is important in this case, because I do

18 believe that this needs to be done in a way that does not

19 reinvent the wheel, does not redo investigations that have

20 already been done.  My view is, at this point in time -- let

21 me just back up here.  I've made some notes here about all of

22 this stuff.

23      Yeah, nothing in the Code or the Rules describes

24 the process for determining the scope, degree, duration, or

25 cost of an examination; that's up to the Court, so I have to

1   make those determinations.  Not the examiner, not the U.S.

2   Trustee, not the debtors, not the Committee; it's up to me to

3   decide that.  But as I said, it's under 9014, so it can be an

4   adversarial process, if necessary.  Hopefully, the parties

5   can meet and confer.

6          And I think we can go through -- we can start this

7   process now, even though the trustee can't appoint an

8   examiner at this point and even though I can't approve the

9   appointment of an examiner and I can't approve what the scope

10  of any examination is going to be, we can start this process

11  so that we can figure out how long this is going to take, how

12  much it's going to cost, before we get too far down the road.

13         So here are -- I thought I would try to shortcut

14  the process a little bit, at least, by giving my preliminary

15  thoughts on my view on the scope of an examination.  My view

16  is the examiner should review the investigations that have

17  already been concluded or that are currently underway by the

18  debtors, the Committee, and any third parties, including the

19  SEC, the DOJ, the Southern District of New York, the CFGC,

20  anybody else who's investigated these debtors, and provide a

21  report that outlines those investigations and what their

22  findings were and make recommendations for any additional

23  investigations, if any, that the examiner believes would be

24  necessary or helpful to the Court or the estate.

25         If the examiner recommends additional

1  investigations, the report should include an explanation of

2  the nature of the investigations, the process for conducting

3  that investigation, and the projected costs and how the

4  investigation will benefit the Court and the estate.  That

5  should be in a summary format.  It should be something that

6  could be done fairly quickly.  I would say probably within 30

7  or 45 days after appointment, we could get that kind of a

8  report from an examiner and then, if there is requests for

9  additional investigations, I will seek comments from the

10 parties in interest and I will make a determination as to

11 whether or not those proposed investigations are in -- are

12 necessary and proper in the context of this case.

13         Again, the goal here is not to reinvent the wheel.

14 I don't want to spend another tens of millions of dollars on

15 an investigation that's going to tell me we've already done

16 all these investigations and here's how they've concluded.

17 I'm not going to give any guidance at this point on the cost

18 of that initial investigation.  I think it can be done

19 relatively inexpensively, compared to what other costs in

20 this case have been so far.  I'm talking about a low seven-

21 figure number, a very low seven-figure number.

22         I do want to address the three issues that the

23 Third Circuit raised and Mr. Bromley talked about these and

24 Ms. Richenderfer talked about these.  One is the conflict

25 issue that the Court said has been raised repeatedly.  I'm

1  not sure where that comes from.  I'm not sure where it was

2  raised beyond the motion to approve the retention of Sullivan

3  & Cromwell in these cases.

4          I held a contested evidentiary hearing and before

5  that hearing occurred, the U.S. Trustee withdrew its

6  objection after Sullivan & Cromwell had provided additional

7  information. There was still a creditor who had obligated and

8  we went forward and the allegation was that Sullivan &

9  Cromwell had done work for the debtors prepetition and,

10 therefore, should be precluded from representing the debtors

11 in the bankruptcy case.

12         I heard evidence.  The objecting party had a right

13 to take discovery and to present his own evidence.  He didn't

14 do either.  And I concluded after that hearing that Sullivan

15 & Cromwell did not have a conflict and that was based on,

16 partially on Section 1107(b), which states, specifically,

17 that the fact that a professional does work for a debtor

18 prepetition does not mean that they're automatically excluded

19 from representing the debtor in a 327.  And there was no

20 other evidence submitted at the hearing that led me to

21 believe that there was any conflict of interest.

22         But that leaves me with the dilemna that the Third

23 Circuit raised as an issue.  So I think the examiner should

24 look at whether there was an examination -- excuse me --

25 whether there are conflicts of interest involving Sullivan &

1  Cromwell.  That was the only one that was objected to.  All

2  the others were not objected to.  There's no reason to look

3  into any of the others, as far as I'm concerned at this

4  point, and determine whether or not there was a conflict.

5          Again, not reinventing the wheel.  Look at what

6  was submitted at the hearing.  Look at what my ruling was and

7  make a report as to whether or not the examiner believes

8  there is any other potential conflict.

9          The Third Circuit also addressed the U.S.

10 Trustee's concern about reports of widespread fraud at the

11 debtors and that employees were still working for the

12 debtors.  Mr. Bromley just told me that all of the employees

13 have been removed.  I don't know if that includes everybody

14 or just the ones who may have been involved in the fraud.  I

15 don't know at this point.  But I think that is something that

16 can be addressed in the broader scope that I outlined earlier

17 that the Court -- the examiner can look at:  what was -- what

18 investigations have been conducted and give a report on

19 whether or not the examiner believes any other investigations

20 need to be conducted.

21         And, finally, the Third Circuit raised the issue

22 of the debtors' use of its cryptocurrency, FTT, to inflate

23 the value of FTX in Alameda Research.  And the Court

24 specifically said the report could bring the practice under

25 further scrutiny, getting potential investors to undisclosed

1  credit risks in other crypto companies and allow the Court to

2  consider greater public interest when approving the debtors'

3  reorganization plan.

4          And, again, I think this is something that can be

5  addressed in the broader scope of review that I talked about.

6  Look at the investigations that have been done.  This is

7  something that's well in the public knowledge, everybody.  I

8  think this is -- it's been in the press.  I've seen it, where

9  not just, you know, concerns have been raised by third

10  parties about crypto companies creating their own

11  cryptocurrency and then inflating the price, because they

12  also control the sale and the process of getting that crypto

13  out into the market and they can manipulate the market if

14  they're on both sides of the transaction.

15          I don't know what the debtors have done in terms

16  of looking at that part of it, but again, it's something that

17  can be addressed in the broader scope of review by the

18  examiner.  Look at what investigations have been done and

19  provide a report that would give some -- I'm trying to think

20  of a good word to describe it -- could provide parties with

21  an understanding of how this process worked at FTX so that as

22  the Third Circuit said in other cases, parties might be able

23  to take that into account in making their decision to invest.

24          On the question of when this process will be done,

25  again, I can't really say at this point how long this is

1  going to take.  Like I said, I think 30, 45 days after

2  appointment would be sufficient at this point, given the

3  scope of the examination that I'm outlining here and this is,

4  as I said, my preliminary.  So if the U.S. Trustee or any

5  other party believes that there is additional investigations

6  that need to be done, they can raise those at the time the

7  motion to appoint the examiner is put before the Court.

8          And I would like to see the examiner -- the motion

9  to appoint the examiner and the scope of examination at the

10 same time.  I don't want to have an examiner -- I don't want

11 to have a two-step process.  I don't want to appoint an

12 examiner and then have to wait another three, four weeks or a

13 month to get a report on what the scope of the examination is

14 going to be and then have to have further hearings on that

15 point.  I want it all done at one time.  Appoint the

16 examiner, who it's going to be, and what the scope of the

17 investigation is going to be, and we can get that all done at

18 one time and shorten the process from what we did in Cred.

19          Any questions?  Concerns?

20          MS. RICHENDERFER:  No questions, Your Honor.

21          MR. BROMLEY:  There's no questions from the

22 debtor.

23          THE COURT:  Mr. Pasquale?

24          MR. PASQUALE:  No, thank you, Your Honor.

25          THE COURT:  Okay.

1          MR. PASQUALE:  We understand.

2          THE COURT:  All right.  So I think that will

3   address the issues, the concerns that the Third Circuit had

4   and my concerns about trying to control the costs of this

5   investigation, because, as I said, I think left to an open

6   process, it could result in tens of millions of dollars.  I

7   think at the original hearing, I said it could go up to a

8   hundred million dollars if this was a broad-based

9   investigation starting all over from scratch.

10          And I don't think we need to do that in this case

11   because of the investigations we already have in hand, which

12   have been extensive, from what I understand, okay.

13          All right.  Thank you.

14          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

15          THE COURT:  I'm going to move on to the adversary

16   proceeding issue.  This is the question about appointment of

17   a mediator; is that what we're talking about?

18          MR. EHRENBERG:  Good afternoon, Your Honor.

19   Stephen Ehrenberg, Sullivan & Cromwell, on behalf of the

20   plaintiffs in the adversary proceeding.  I think that's

21   right.

22          THE COURT:  Okay.  Go ahead.

23          MR. EHRENBERG:  Thank you, Your Honor.

24          As we indicated in our letter, we have no

25   indication that the defendants in this action are, at all,

1  serious about resolution at this time and, in fact, have

2  spent quite a lot of time and energy launching collateral

3  attacks on the entire Chapter 11 proceeding.

4          Since the letters were exchanged on this, the

5  principals in these actions have had some limited

6  discussions, very preliminary, but nothing that changes our

7  view about the ripeness of the potential mediation at this

8  time and we think the status of the case indicates that this

9  is just not the right time.

10          Expert discovery has not begun at all in this

11  action and we think in this case, in particular, there are

12  important issues around valuation and other matters that are

13  really going to need to be illuminated before the parties can

14  really make any significant movement.

15          Mediation is obviously going to require a lot of

16  preparation and there has to be something in terms of

17  material for the mediator to work with, like the expert

18  opinions that are going to be rendered in this action.  So

19  right now, there's very little for a mediator to go on,

20  beyond what is in the motions to dismiss that are not yet

21  fully briefed and haven't been argued yet.

22          Discovery is also still, in our view, not

23  sufficiently advanced to make it likely to be a fruitful

24  exercise for the parties to mediate about what the facts are

25  or what the value is.  In Plaintiffs' view, the mediation

1  ought to be had at a much more advanced stage of the case to

2  have any likelihood of success.  This is not simply a matter

3  of identifying a mediator and getting something on a calendar

4  so that we have it in the event that we need it.

5          It takes a lot of work to identify and to agree on

6  a mediator and, you know, there's no reason to think that

7  that is going to be a simple exercise in this case, any more

8  than it would be in any other case.

9          And once we have something on the calendar, all of

10 the parties are going to have to begin working on that

11 mediation sufficiently in advance of whatever date we would

12 choose in order to be prepared for it or we have to conclude

13 months in advance that we still think it's not likely to be

14 fruitful.  So all of that to say is -- and then we're going

15 to find ourselves right back in a conference like this one.

16         So all of that to say, Your Honor, we think the

17 right time to do this is when the case is more advanced and

18 when the parties have a better sense of the claims and

19 defenses of their adversary.

20         THE COURT:  Give me an idea what the case is

21 about.  What are the valuation issues that you're talking

22 about?

23         MR. EHRENBERG:  Your Honor, this is a case to

24 avoid the acquisition of a company called Digital Assets AG

25 by FTX.  The company paid in excess of $300 million for this

1  company and we contend that it was not worth anywhere near

2  that amount and that the debtor didn't receive reasonably

3  equivalent value.  We've alleged actual fraud in the

4  transfer.

5          So this is about avoiding a corporate acquisition.

6          THE COURT:  Okay.  Let me hear from the

7  defendants.

8          MR. ROSENBLAT:  Good afternoon, Your Honor.  Heath

9  Rosenblat of Morrison Cohen on behalf of Patrick Gruhn, Robin

10 Matzke, and Lorem Ipsum.

11         Your Honor, this has kind of blown up into

12 something that we did not anticipate with our letter as we

13 spoke with Mr. Ehrenberg yesterday about.  Under Section 6 of

14 the order, it says that we're supposed to file stipulation by

15 January 24th.  We were unable, after a meet-and-confer, to

16 reach even agreement on an individual to be a mediator and we

17 just wanted to notify the Court of the status of the

18 situation so that the Court didn't need to do anything going

19 forward, as per the order.

20         We, to kind of rebut some of Mr. Ehrenberg's

21 comments, though, we do think it makes sense to agree on an

22 individual now.  And we're not pushing for a mediation

23 tomorrow, we just want to have, I guess the person and the

24 system in place for when it is ripe.  We're not disagreeing

25 that it isn't ripe at this particular time, but we just don't

1  understand why we can't agree on an individual and we also

2  just want to make the Court aware of the fact that we

3  complied with the CMO, we met and conferred, and what the

4  status of that meet-and-confer was, Your Honor.

5         THE COURT:  All right.  What are we --

6  Mr. Ehrenberg, what are you talking about in terms of

7  additional -- the discovery that you want to take before you

8  get to a mediation process?  I mean, the appointment of a

9  mediator shouldn't take that long, I mean, it can be done

10  fairly quickly.

11

12         MR. EHRENBERG:  Yes, Your Honor, we're still at a

13  very early stage of discovery.  We are in document discovery

14  as of now.  There have been no depositions.  There are no

15  depositions scheduled.  Expert reports are not due until

16  June, so there is a fair amount of work to do before the

17  parties really have a solid sense of what the issues are.

18         And in our view, knowing what those issues are

19  contributes to each party being in the best position to

20  identify a good mediator and we don't know today.  Maybe the

21  parties are going to be closer on issues of, you know, for

22  example, solvency, than they think they are today.

23         So we think there is benefit in pushing this out a

24  little bit until the parties are further along, in fact

25  discovery, and, indeed, into expert discovery.

1               THE COURT:  How long are you talking about?

2               MR. EHRENBERG:  Our expert reports are due in

3    June.  Theirs are due, I want to say, roughly, 30, 45 days

4    after that.  And I think somewhere in that neighborhood, the

5    parties will have their replies, but I think the parties will

6    have a materially better understanding of the state of play

7    on the important issues in this case.

8               THE COURT:  Okay.  Mr. Rosenblat, I take it from

9    your comments, you're not contesting the idea that now is not

10   the right time to do a mediation, that there needs to be some

11   discovery?

12              MR. ROSENBLAT:  Yes, Your Honor.

13              And Mr. Ehrenberg presents a fair depiction of the

14   timetable that we're dealing with.

15              I guess our confusion at this point is, this

16   provision in the CMO, which seems to be standard with the

17   debtors' other CMOs was proposed by the debtor and they're

18   the ones who put the date in and we agreed on the date.  And,

19   again, we were just technically trying to comply with the

20   date.  Again, I don't understand why this has turned into

21   this type of issue.

22              But we'll work with the debtor.  It's a fair point

23   that Mr. Ehrenberg makes that as we get further along in the

24   process, that may inform who we go with.  But I also think,

25   given that we've all done this enough, to some of the names

1  that were being thrown around by us, would have complied with

2  that at this point anytime, Your Honor.

3          THE COURT:  All right.  Well, let's go ahead --

4  and I understand it was put in the CMO.  Sometimes things get

5  put in and then parties realize later, we really need to have

6  a little bit more time.  There's not the right approach at

7  this juncture.  So let's go ahead and get the discovery done

8  that the parties think need to be done and we can come back

9  later to -- well, hopefully, you can meet and confer and come

10 up with a mediator once the time is appropriate.  If you

11 can't, I'm here and I can get something done fairly quickly

12 if I need to appoint somebody.

13         MR. EHRENBERG:  Thank you, Your Honor.  We

14 appreciate being heard today.

15         THE COURT:  Okay.  Thank you.

16         MR. ROSENBLAT:  Thank you, Your Honor.

17         THE COURT:  Okay.  Thank you.

18         Anything else for today, Mr. Bromley?

19         MR. BROMLEY:  No, Your Honor.  That's all we have

20 for today.  Thank you.

21         THE COURT:  Okay.  Going back to the -- just on a

22 mandate issue, I'm hoping that the parties can meet and

23 confer.  I'll confess I know very little about appellate

24 procedure as I sit here at this moment.  I don't know what

25 the requirements are.  I don't know if you can, for example,

1  file something under CNO or COC as we do in the Bankruptcy

2  Court up in the Third Circuit.  But let's see if there's a

3  way to get that done fairly quickly, hopefully by the end of

4  the week, maybe, if possible, so we can get this process

5  going.

6          MR. BROMLEY:  We will coordinate with the U.S.

7  Trustee's Office, Your Honor, on that and move as quickly as

8  possible.

9          THE COURT:  Okay.  And if I wasn't clear, I'm

10  hoping, also -- I can't direct you to do it -- but I'm hoping

11  that the parties will sit down and talk about this issue of

12  the scope and who the examiner is going to be and what kind

13  of examiner you want to have doing this examination.

14          MR. BROMLEY:  We're certainly prepared, on the

15  debtors' side, to do that, Your Honor.

16          THE COURT:  Okay.  Excellent.

17          All right.  Thank you very much.

18          MS. RICHENDERFER:  And, again, Your Honor, we will

19  consult with the debtor and all the interested parties in

20  doing so.

21          THE COURT:  Okay.  Thank you very much.  I

22  appreciate it.

23          All right.  Thank you.  That's it for today.

24          We are adjourned.

25          COUNSEL:  Thank you, Your Honor.

1            THE COURT:   Thank you.

2        (Proceedings concluded at 2:55 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           CERTIFICATION

2           I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ William J. Garling                    January 24, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable