**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>FTX TRADING, LTD., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Re: D.I. 5202** |

**THE AD HOC COMMITTEE OF NON-US CUSTOMERS OF FTX.COM'S STATEMENT IN RESPONSE TO THE MOTION OF DEBTORS TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS AND OBJECTIONS THERETO[2]**

The Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee"), currently comprised of approximately 70 members holding approximately $2.0 billion in aggregate claims against the above-captioned debtors (the "Debtors"), files this statement in response to the *Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 5202] (the "Estimation Motion") and objections received thereto, and respectfully states as follows:

**STATEMENT**

1.     As a threshold matter, U.S. bankruptcy law requires the valuation of claims in U.S. dollars, commonly referred to as the "dollarization" of claims, as of the bankruptcy filing date (the "Petition Date"). This mandate is provided by section 502(b) of the Bankruptcy Code.

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the debtors' claims and noticing agent's website at https://cases.ra.kroll.com/FTX.

[2]  The Ad Hoc Committee does not take a position with respect to certain of the objections challenging the application of the Debtors' valuation methodology to specific Digital Assets and understands from the Debtors that such objections have been adjourned to a later hearing date.

*See* 11 U.S.C. § 502(b) ("the court, after notice and a hearing, shall determine the amount of such claim in *lawful currency of the United States as of the date of the filing of the petition*") (emphasis added). Given this plain statutory requirement, it is not surprising that no objection offers an alternative applicable standard to the valuation of Digital Assets in these cases. Indeed, as the Debtors correctly note, claims based on digital assets have been valued as of the applicable petition date in other large cryptocurrency cases, consistent with the requirements of section 502(b). *See* Estimation Motion ¶ 26 (citing the recent *In re BlockFi Inc.*, *In re Voyager Digital Holdings*, and *In re Celsius Network LLC* bankruptcy proceedings).

2. Instead, the objections generally raise three separate, but related arguments: (i) that the Estimation Motion ignores the express terms of the FTX.com Terms of Service and ownership rights of customers to the Digital Assets held on the exchange; (ii) that the Bankruptcy Code should use its equitable powers to override the requirements of section 502(b) in fairness to customers; and (iii) that the Debtors should make in-kind distributions of Digital Assets to allow customers to receive the appreciation of such Digital Assets. While the Ad Hoc Committee certainly understands the appeal of these arguments to customers, they do not comport with U.S. bankruptcy law. Moreover, these arguments carry practical implications in these cases that could adversely impact customers as a whole.

### A. The Estimation Motion Does Not Foreclose Determinations on Ownership of Digital Assets.

3. Many of the objections seek denial of the Estimation Motion on the basis that it allegedly ignores the express terms of the FTX.com Terms of Service, which the objectors contend demonstrate that ownership of the Digital Assets did not transfer to the Debtors' estates. The Ad Hoc Committee has advanced these same arguments since the filing of its adversary proceeding in December 2022 and its subsequent partial summary judgment motion seeking a

declaration that not only Digital Assets, but all customer assets held on the Debtors' exchange (collectively, "Customer Assets"), are subject to an express, resulting, and/or constructive trust in benefit of FTX.com customers.[3]

4. However, a determination of whether a trust exists over the Customer Assets is only the first step in obtaining a determination that such Customer Assets are not part of the Debtors' bankruptcy estates under section 541 of the Bankruptcy Code. As the Third Circuit recently held, "beneficiaries of trust funds bear the burden of identifying and tracing their trust property" once a constructive trust is established. *In re Ursa Operating Company, LLC*, Case No. 22-1729 [D.I. 81] (3d Cir. Jan. 25, 2024) (quoting *In re Columbia Gas Sys.,* 997 F.2d 1039, 1063 (3d Cir. 1993)).[4]

5. The Ad Hoc Committee, the Debtors, and the Official Committee of Unsecured Creditors (the "Official Committee") have not ignored these important questions of law and fact. To the contrary, after months of hard-fought negotiations and evaluation of not only conflicting arguments on the merits, but the significant delay and costs that would be incurred in fully litigating the issues to judgment, the parties reached the Plan Settlement Agreement[5] to designate the Customer Assets as belonging to the Debtors' estates, while simultaneously prioritizing the treatment of customer claims on account of Customer Assets such that *90% of the net distributable value of the Debtors' estates will be distributed to customers*.

6. By virtue of the customer prioritization provision in the Debtors' plan, customers are collectively receiving the benefit of appreciation of the Debtors' assets, including Customer

---

[3] Case No. 22-50514-JTD [D.I. 10].

[4] For the avoidance of doubt, the Ad Hoc Committee reserves all rights to assert the appropriate tracing and identification standard for FTX.com customers in further litigation if the Plan Support Agreement is terminated for any reason.

[5] The *Settlement and Plan Support Agreement* [D.I. 3291-1 Ex. A] (the "Plan Support Agreement").

3

Assets. While the Ad Hoc Committee is not a fiduciary to all FTX.com customers, it nonetheless believes that the Plan Settlement Agreement, including the aforementioned priority allocation, is beneficial and fair to *all* FTX.com customers and would certainly result in a better outcome than if these cases were delayed for months, or even years, to address individual customers' ownership claims to specific Customer Assets.

7.  Moreover, and most importantly, the Estimation Motion has no impact on the objectors' rights to litigate the ownership issue to judgment if they chose to do so. Individual customers are not bound by the Plan Settlement Agreement and their rights are fully reserved. The sole objective of the Estimation Motion is to estimate "the value of Claims in respect of Digital Assets…for purposes of any plan in these Chapter 11 Cases." Estimation Motion at ¶ 1. Any customer may raise a timely objection during confirmation to assert that particular Customer Assets are not property of the Debtors' estates. Customers should, however, be fully aware of the requirements to prove such assertion and the time and costs to the estates to engage in such litigation.

### B. The Bankruptcy Court Cannot Ignore the Requirements of Section 502(b).

8.  While not challenging the requirements or applicability of section 502(b) of the Bankruptcy Code, many of the objectors nonetheless plead for the Court to impose a different valuation methodology and date in order to be "fair and just" to customers. However, as the Official Committee rightfully observes, section 502(b) establishes the bright-line mandate for valuing all claims in U.S. dollars as of the petition date, precisely to be fair and just to *all creditors*. The Bankruptcy Court does not have discretion to alter the requirements of the Bankruptcy Code on the basis that certain creditors find it unfair. And again, as noted above, given the prioritization provision embodied in the Plan Settlement Agreement, customers are

receiving the benefit of current market prices of appreciation of Customer Assets in the form of enhanced recoveries.

### C. In-Kind Distributions are Not Practicable in these Cases.

9. Lastly, the Ad Hoc Committee agrees with the Debtors and the Official Committee that in-kind distributions of Digital Assets are not practicable in these cases due to the enormous shortfall between asserted claims on Digital Assets and the amount and type of Digital Assets within the possession of the Debtors. *See* Estimation Motion ¶ 20 n.4 ("The imbalance between Claims based on Digital Assets and that reflected on the Debtors' balance sheets means that the Debtors are unable to consider making in-kind Distributions."). While the Debtors have been able to recover more Digital Assets since the Petition Date, there is still an incredible deficit that prevents the Debtors from offering in-kind distributions. It would not be practical or beneficial to any creditor for the Debtors to use estate assets to purchase additional Digital Assets at now-higher market rates.

10. Moreover, in-kind distributions could serve as a basis for estate depleting litigation and customer in-fighting over Digital Asset entitlements and allocation, which in turn increases the estate's administrative burdens and decreases customer recoveries. Parties in interest should strive to avoid the outcome suffered by creditors in the Lehman Brothers bankruptcy. There, creditor recoveries were lessened and delayed, and bankruptcy estate was burdened with almost $6 billion in administrative and professional fees, as a result of long-standing creditor litigation over asset rights and distributions. *See e.g.*, Kathy Stech Ferek, *Fed Says Lehman Brothers Chapter 11 Case Is Costliest in History*, WALL ST. J. (Jan. 16, 2019, 4:15

PM).⁶  That is a result the Ad Hoc Committee seeks to avoid and was a principal motivation in entering into the Plan Settlement Agreement.

### D. The Estimation Motion is an Important Step in the Ongoing Plan Process.

11.     The Ad Hoc Committee, Official Committee and Debtors are all aligned in maximizing the value of the Debtors' estates for the benefit of all creditors, including customers. A key component of maximizing value is expediting the Debtors' exit from bankruptcy.  In order for the Debtors to submit a revised plan and disclosure statement that provides adequate information to creditors on treatment of their claims, the Debtors must be able to establish the valuation of Digital Assets in U.S. dollars as of the Petition Date.  The Motion allows the Debtors to do so in the most efficient and expeditious manner possible.

12.     In recognition of customers' general desire to receive the benefit of appreciation of Customer Assets, the Ad Hoc Committee, with the Official Committee, have been key stewards of the Debtors' monetization efforts to realize such appreciation in a volatile market environment.  Moreover, for the last several weeks, the Ad Hoc Committee, with the Official Committee, have pushed for the Debtors to include provisions in the amended plan to provide creditors with post-petition interest on their claims to the extent that unsecured creditors are ultimately made whole in these cases.

13.     While that outcome is far from guaranteed and unlikely to be known for a significant time, the Ad Hoc Committee believes the right to post-petition interest should be expressly preserved in the plan, consistent with other crypto cases.  *See, e.g., In re Genesis*

---

⁶     It is also unclear whether the Bankruptcy Code would permit in-kind distributions for some customers but not others.  *See* 11 U.S.C. § 1123(a)(4) (requiring that a bankruptcy plan provide the same treatment for creditors in the same class); 11 U.S.C. § 1122(a) ("a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.").

*Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Nov. 28, 2023) (Distribution Principles, <u>Exhibit A</u> to Debtors' Amended Plan, D.I. 989 at 114) (providing for the payment of postpetition interest where the plan administrator can return to all unsecured creditors one hundred percent par recovery on the allowed portion of their underlying claims before accounting for interest accrual). Many factors will ultimately impact recoveries in these cases and determine whether post-petition interest can be given to creditors. However, an expeditious exit from bankruptcy without delay and the costs of prolonged piecemeal litigation will certainly increase the potential for creditors to receive an above par recovery.

## **CONCLUSION**

14. For the reasons set forth above, the Ad Hoc Committee supports the approval of the Estimation Motion and denial of the objections based on the grounds addressed herein.

*[Signature Page to Follow]*

Dated: January 28, 2024

/s/ Matthew B. Harvey
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Matthew B. Harvey (No. 5186)
Jonathan M. Weyand (No. 6959)
1201 North Market Street, 16th Floor
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
mharvey@morrisnichols.com
jweyand@morrisnichols.com

-AND-

**EVERSHEDS SUTHERLAND (US) LLP**
Erin E. Broderick
Michael A. Rogers
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Telephone: (312) 724-9006
Facsimile: (312) 724-9322
erinbroderick@eversheds-sutherland.com
michaelrogers@eversheds-sutherland.com

-and-

Nathaniel T. DeLoatch
999 Peachtree St NE, Suite 2300
Atlanta, GA 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
nathanieldeloatch@eversheds-sutherland.com

-and-

Sarah E. Paul
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099
sarahpaul@eversheds-sutherland.com

*Counsel for Ad Hoc Committee of Non-US Customers of FTX.com*