## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  February 22, 2024 at 1:00 p.m. (ET)** |
| | **Objection Deadline:  February 15, 2024 at 4:00 p.m. (ET)** |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (I) PROCEDURES FOR SALE OF DEBTORS' ALLOWED CLAIM IN THE GENESIS CASES; AND (II) SALE(S) OF SUCH CLAIM IN ACCORDANCE WITH SUCH PROCEDURES FREE AND CLEAR OF ANY LIENS, <u>CLAIMS, INTERESTS AND ENCUMBRANCES</u>

FTX Trading Ltd. ("<u>FTX Trading</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") hereby submit this motion (this "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>"), pursuant to sections 105(a), and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), authorizing and approving (a) procedures (the "<u>Sale Procedures</u>") for the sale of all or a portion of Debtor Alameda Research Ltd.'s allowed general unsecured claim in the amount of $175 million (the "<u>Genesis Allowed Claim</u>") against Genesis Global Capital, LLC ("<u>GGC</u>") in the jointly-administered chapter 11 cases of GGC and its affiliated debtors and

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

debtors-in-possession (collectively, the "Genesis Debtors"), and (b) the sale(s) of the Genesis

Allowed Claim in accordance with the Sale Procedures free and clear of any liens, claims,

interests and encumbrances.  In support of this Motion, the Debtors respectfully state as follows:

## Background

1.    On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration

of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the

"Official Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.    Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in

Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.

Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

3.    Prior to the Petition Date, certain of the Debtors and certain Genesis

Debtors as well as the Genesis Debtors' non-debtor direct and indirect subsidiaries and affiliates,

including GGC International Ltd. ("GGCI" and collectively with the Genesis Debtors, the

"Genesis Entities") engaged in significant business with each other, including through significant

lending relationships.

4.      On January 19, 2023 (the "Genesis Petition Date"), the Genesis Debtors

filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court")

under the caption *In re Genesis Global Holdco, LLC, et al.* Case No. 23-10063 (SHL) (the

"Genesis Bankruptcy Proceeding").

5.      On May 22, 2023, the Debtors timely filed certain proofs of claim

(collectively, the "FTX Proofs of Claim") in the aggregate amount of approximately $3.8 billion

against the Genesis Debtors in the Genesis Bankruptcy Proceeding.

6.      On or around June 30, 2023, certain of the Genesis Debtors filed claims in

the aggregate amount of no less than $180 million plus additional unliquidated amounts against

certain of the Debtors, and GGC's non-debtor affiliate GGCI also filed claims against certain of

the Debtors (collectively, the "Genesis Proofs of Claim").  GGCI also separately asserted claims

against certain of the Debtors in the approximate amount of no less than $176 million.

7.      In August 2023, in place of costly and uncertain litigation, the Debtors and

the Genesis Entities entered into a settlement agreement (the "Settlement Agreement"),[2] pursuant

to which, among other things, the Debtors received an allowed general unsecured claim for

Debtor Alameda Research Ltd. against GGC in the amount of $175 million (USD fiat-

denominated).  The Settlement Agreement further provided that the Debtors may transfer the

Genesis Allowed Claim in whole or in part, *provided* that any transferee execute and deliver a

joinder to the Settlement Agreement, pursuant to which the transferee would agree to be bound

by the terms of the Settlement Agreement (which includes, among other things, an agreement not

---

[2]    The Settlement Agreement was approved by this Court on September 6, 2023 [D.I. 2433] and the New York
       Bankruptcy Court on October 17, 2023 [D.I. 806] (Bankr. S.D.N.Y.).

to object to the Genesis Debtors' proposed plan so long as it is consistent with the terms of the Settlement Agreement).

8.    The Genesis Debtors have filed a proposed chapter 11 plan of reorganization with the New York Bankruptcy Court.  A hearing on confirmation of the proposed plan is scheduled for February 14, 2024.

### Jurisdiction

9.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rules 2002-1, 6004-1 and 9006-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

10.    By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving (a) the Sale Procedures to sell the Genesis Allowed Claim and (b) the sale(s) of the Genesis Allowed Claim in accordance with the Sale Procedures free and clear of any liens, claims, interests and encumbrances.

### Sales Procedures

11.    The Debtors believe that flexibility with respect to the sale timing and process, including pre-approval of sales in accordance with the Sale Procedures, is crucial to

maximize the value of the Genesis Allowed Claim and thus the value to the Debtors' estates. The flexibility to adjust the sale timeline and consummate sales in accordance with the Sale Procedures will help enhance the value of such claim to the estates.  Further, given the size of the Genesis Allowed Claim held by the Debtors, the flexibility to sell portions of the Genesis Allowed Claim at different times will help the Debtors monetize their interest.  The streamlined Sale Procedures and ability to consummate sales in accordance with the Sale Procedures will allow the Debtors to respond quickly without the delay of filing a separate motion for each proposed Sale.

12.     The Debtors propose to utilize the following Sale Procedures:

(a) Assets.  The Genesis Allowed Claim.

(b) Method of Sale.  The Debtors may pursue the sale of all or a portion of the Genesis Allowed Claim in one or a series of public auctions as contemplated by paragraph (d) below or private sale transactions as contemplated in paragraph (e) below (each, a "Sale"), in each case to a single purchaser or multiple purchasers and in compliance with these Sale Procedures.

(c) Required Terms.  Regardless of the method of Sale, the documentation for any Sale shall include provisions acceptable to the Debtors that the Genesis Allowed Claim is being transferred (i) "as is," "where is," and "with all faults," (ii) without any indemnity to the purchaser(s) thereof, (iii) free and clear of any liens, claims, interests and encumbrances (other than permitted encumbrances approved by the Debtors), with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as immediately prior to the Sale and (iv) on the condition that any transferee of the Genesis Allowed Claim agree to be bound by the terms of the Settlement Agreement with respect to the acquired portion of the Genesis Allowed Claim, *mutatis mutandis*, by executing and delivering to the Genesis Entities a joinder agreement substantially in the form of joinder agreement attached to the Settlement Agreement.

(d) Auction Procedures.  The Debtors may hold one or a series of auctions (each, an "Auction") at any time after entry of the Order approving this Motion.  The Debtors shall conduct any Auction in accordance with the following procedures and any supplemental procedures the Debtors consider appropriate and in the best interests of the Debtors' estates.

(i)     To the extent that the Debtors determine to hold an Auction, the Debtors shall file a notice (the "Auction Notice") with the Court. The Auction Notice shall include the date, time and location of the Auction and the portion of the Genesis Allowed Claim for sale at the Auction.  The Auction Notice also may include any supplemental procedures applicable to the Auction.  The Auction Notice shall be served on each of the Sale Notice Parties (as defined below).  The date of the Auction shall be no less than ten (10) business days after the date of the Auction Notice.

(ii)    Only "Qualified Bidders" will be permitted to bid at an Auction. In order to become a Qualified Bidder, an interested party must make the following deliveries to the Debtors no later than five (5) business days prior to the commencement of the Auction, unless the Debtors determine, in consultation with the Consultation Parties, to waive one or more of the requirements for such interested party:

(A) A written statement of the portion of the Genesis Allowed Claim on which the bidder seeks to bid, and the proposed price for such portion of the Genesis Allowed Claim;

(B) Sufficient evidence of the bidder's financial capacity and any required authorizations to close the Sale without material delay, including without limitation, such bidder's current audited (if applicable) financial statements and information for determining whether any regulatory approvals are required to close the Sale;

(C) a complete draft purchase or transfer agreement, together with all exhibits and schedules, marked to show any amendments and modifications to the form of purchase or transfer agreement provided by the Debtors for the Auction;

(D) the interested party's agreement to such terms and conditions as may be required by the Debtors to register to bid and participate in the Auction;

(E) a written statement that such Qualified Bidder is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code; and

(F) if requested by the Debtors, a cash deposit by wire transfer (the amount of which shall be set by the Debtors in their sole discretion) to be held in an escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

(iii)   No bid submitted during an Auction may contain any financing or due diligence contingency.  Any such bid will not be considered a qualified bid.  The bid of any Successful Bidder (as defined below)

6

will be binding whether or not the Successful Bidder has obtained financing or completed its due diligence investigation.

(iv) Upon the conclusion of an Auction, the Debtors may (A) identify and certify the bid or bids that constitute the highest or best offer or offers for the applicable portion of the Genesis Allowed Claim (each such bid, a "Successful Bid", and each person submitting such bid, a "Successful Bidder"), and (B) identify and, in its discretion, certify the bid or bids that constitute the next highest or best offer or offers for the applicable portion of the Genesis Allowed Claim (each person submitting such a bid, a "Backup Bidder"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s).

(v) Once the Debtors close the Auction, the Debtors are authorized to consummate the Sale with the Successful Bidder pursuant to the Successful Bid and shall have no obligation to consider any subsequent higher and/or better offer.

(vi) All Good Faith Deposits will be returned to any Qualified Bidder who is not a Successful Bidder or a Backup Bidder; provided, however, that if a Successful Bidder fails to consummate a transaction within five (5) business days after the closing deadline mutually agreed to by the Debtors and the Successful Bidder, (A) the Debtors will not have any obligation to return the Good Faith Deposit of such Successful Bidder and such Good Faith Deposit shall irrevocably become the property of the Debtors; and (B) if the Debtors selected a Backup Bidder, the Debtors shall proceed to closing the Sale with the Backup Bidder. Within two (2) business days of closing the Sale with the Successful Bidder, the Debtors shall return the Good Faith Deposit to the Backup Bidder.

(e) Private Sales and the Reference Price. The Debtors are authorized to consummate, without an Auction, the Sale of the Genesis Allowed Claim in one or more private sale transactions (each, a "Private Sale") in accordance with the following procedures and any supplemental procedures the Debtors consider appropriate and in the best interests of the Debtors' estates.

(i) The Debtors may sell the Genesis Allowed Claim in a Private Sale at arm's-length without notice to any Consultation Party at a price (a "Reference Price") equal to or greater than 95% of the highest price quoted by one or more leading market-makers for general unsecured claims of GGC on a reference date on or no more than three days prior to the date on which the Debtors enter into such sale.

(ii) Prior to entering into any Private Sale that is not at or above a Reference Price, the Debtors shall notify firms serving as the legal

counsel and financial advisor to the Official Committee and AHC (the "<u>Consultation Parties</u>").

(f) <u>Sale Disclosures</u>.

    (i)    No later than two (2) business days after entering into a definitive purchase or transfer agreement with respect to any Sale, the Debtors shall file with the Court a notice of the following (as described below, the "<u>Sale Disclosures</u>"):

        (A)   a list of each purchaser, the portion of the Genesis Allowed Claim to be purchased, and the purchase price to be paid;

        (B)   in the case of an Auction, the identity of any Backup Bidder and the terms of the back-up bid, if any;

        (C)   a proposed sale order (the "<u>Sale Order</u>"), in substantially the form attached to the Order as <u>Exhibit 1</u>, which, among other things, authorizes the Debtors to consummate such Sale and approves the terms of such Sale;

        (D)   in the case of a Private Sale, whether the Sale is being consummated at or above the Reference Price;

        (E)   whether the Sale Order includes a proposed finding from the Court that the Genesis Allowed Claim is being purchased in "good faith" for purposes of section 363(m) of the Bankruptcy Code (a "<u>Good Faith Finding</u>"); and

        (F)   if required as support for entry of the proposed Sale Order, declarations from the Debtors, the purchaser(s) or other parties with respect to such matters as the Debtors may determine.

    (ii)   The Debtors shall serve a copy of the Sale Disclosures (by email or, if email is not available, by overnight mail) to the following parties: (A) the U.S. Trustee; (B) counsel to the Official Committee; (C) counsel to the AHC; (D) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the Genesis Allowed Claim; (E) any known interested or affected governmental or regulatory entity; (F) solely in the case of a Sale that is not in excess of an applicable Reference Price, any party who, in the discretion of the Debtors, would meet the financial and other eligibility criteria of a Qualified Bidder known by the Debtors to have expressed a written interest in purchasing the Genesis Allowed Claim during the last six (6) months; and (G) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Sale Notice Parties</u>").

(g) <u>Sale Objections</u>.

    (i)    The Debtors may consummate a Private Sale that (A) is at or above an applicable Reference Price and (B) does not include a Good Faith Finding without prior notice to the Court or any party in

interest.  The Debtors shall submit the Sale Order for such a Private Sale under certification of counsel concurrently with or at any time after the filing of the Sale Disclosures.

(ii)   In the case of all other Sales, the Debtors shall not submit the Sale Order for entry under certification of counsel until providing all parties in interest the opportunity to object to the entry of the Sale Order.  Objections to any such Sale must be (A) in writing and state with specificity the basis for objecting and (B) filed with the Court and served (which service may be by email) on (1) the U.S. Trustee; (2) counsel to the Debtors; (3) counsel to the Official Committee; (4) counsel to the AHC; and (5) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Objection Notice Parties") within three (3) business days of the service of the Sale Disclosures at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline").  If no party-in-interest objects in writing to such a Sale by the Sale Objection Deadline, the Debtors may submit the Sale Order for entry under certification of counsel.  If a party-in-interest files with the Court and serves on the Sale Objection Notice Parties a written objection to a proposed Sale on or prior to the Sale Objection Deadline, then the Debtors may only consummate the Sale upon withdrawal of such objection, submission of a consensual form of order resolving the objection between the Debtors and the objecting party, or upon further order of the Court.  Subject to the Court's availability, the Debtors may seek an expedited hearing before the Court to resolve the objection.  After all timely filed objections have been addressed, the Debtors may submit the Sale Order for entry under certification of counsel.  Immediately upon entry of the Sale Order, the Debtors may consummate the proposed Sale on the terms set forth in the Sale Order and the applicable documentation executed in connection with such Sale.

(h)   Modification; Fiduciary Duties.  To the extent consistent with applicable law, the Debtors may (A) adopt such additional rules and procedures at or prior to any Auction(s), (B) modify or amend the Sale Procedures or waive the terms and conditions set forth in the Sale Procedures with respect to any or all potential bidders and (C) adjourn, reschedule or cancel all or any portion of the sale process contemplated by these Sale Procedures.  Notwithstanding anything to the contrary contained herein, nothing in these Sale Procedures will require the Debtors to take any action, or to refrain from taking any action, unless the Debtors determine necessary to comply with their respective fiduciary duties under applicable law.

(i)   Beneficiaries.  These Sale Procedures are for the benefit of the Debtors and their estates.  No interested party, Qualified Bidder or third party shall have any right or benefit hereunder at any time, nor shall the Debtors have

any monetary liability to any person in connection with any failure or alleged failure to comply with these Sale Procedures.

## Basis for Relief

**I.    Approval of the Sale Procedures and Sales in Accordance with the Sale Procedures Are Fair, Appropriate and in the Best Interests of the Debtors' Estates.**

13.    Sections 363(b) and 105(a) of the Bankruptcy Code authorize the Court to approve the Sale Procedures.  11 U.S.C. §§ 105, 363(b)(1).  Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

14.    Bankruptcy courts routinely authorize sales of a debtor's assets and procedures for the sale of such assets if there is a "sound business purpose" that justifies such use of estate property.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d at 1071) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).

15.    In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*,

147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

16.    Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.    <u>Approval of the Sale Procedures and Sales in Accordance with the Sale Procedures Are Justified by Good and Sound Business Justification</u>.

17.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

18.    Implementation of the Sale Procedures and sales in accordance with the Sale Procedures represent a sound exercise of the Debtors' business judgment and are justified under sections 363(b) and 105(a) of the Bankruptcy Code.  The Sale Procedures are designed to give the Debtors the flexibility needed to sell the Genesis Allowed Claim expediently and efficiently, and in a manner that maximizes value for the benefit of all stakeholders.

19.     Sales in accordance to the Sale Procedures should be authorized because the Debtors may sell the Genesis Allowed Claim in one or a series of Private Sales or Auctions and the Sale Procedures will alleviate the cost and delay of filing a separate motion for each proposed Sale.  Moreover, any Sales of the Genesis Allowed Claim will be appropriately limited by the Sale Procedures.  The Sale Procedures require the Debtors to notify the Consultation Parties before determining to enter into any purchase or transfer agreement with respect to a Sale (other than Sales at or above the Reference Price).  The Sale Procedures also require the Debtors to file with the Court and serve on the Sale Notice Parties Sale Disclosures that include key metrics of each Sale shortly following entry into such Sale.

20.     Pre-approval of a sale at the Reference Price is in the best interests of the estates and necessary to obtain the highest price for the Genesis Allowed Claim.  The value of the Genesis Allowed Claim fluctuates with the value of the underlying cryptocurrencies held by the Genesis Debtors.  If a buyer of the Genesis Allowed Claim is exposed to a long period of time between the pricing of the purchase and its closing—as would be the case if the Debtors were required to seek Court approval after signing and before closing—the purchaser would be exposed to changes in the price of the Genesis Allowed Claim and have a concomitant need to hedge.  The costs of this hedging would be reflected as a discount to the purchase price or otherwise borne by the Debtors.  The pre-approval requested by the Debtors for a sale at a market-indicated price above the Reference Price will allow closing to happen shortly after pricing, minimizing or eliminating any hedging requirements.

21.     Based on the foregoing, the Debtors submit, in their sound exercise of business judgment, that any Sale or Sales of the Genesis Allowed Claim pursuant to the Sale

Procedures and responsive to market conditions will maximize the value of the Genesis Allowed

Claim for the benefit of all stakeholders and should therefore be approved.

        B.      <u>The Noticing Procedures Are Reasonable and Appropriate</u>.

        22.     The notice and hearing requirements contained in section 363(b)(1) of the

Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed

transaction, appropriate notice and an opportunity for a hearing are given.  *See* 11 U.S.C.

§ 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a

hearing "as [are] appropriate in the particular circumstances").  Bankruptcy Rules 2002(a)(2),

2002(i) and 2002(k) require that a minimum of 21 days' notice of the proposed sale of property

outside the ordinary course of business be provided by mail to "the debtor, the trustee, all

creditors and indenture trustees," the Official Committee and the U.S. Trustee unless a debtor

shows "cause."  *See* FED. R. BANKR. P. 2002(a)(2), 2002(i), 2002(k).  Once the debtor shows

"cause," however, Bankruptcy Rule 2002(a)(2) authorizes the Court to shorten the generally

applicable 21-day notice period and to direct a method of notice other than mail.  *See* FED. R.

BANKR. P. 2002(a)(2).

        23.     Moreover, the Court is authorized to limit, even without a prior showing

of cause, notice of asset sales outside the ordinary course of a debtor's business to the Official

Committee and any creditor or equity holder requesting notice.  *See* FED. R. BANKR. P. 2002(i).

In addition, the sale or transfer of property outside the ordinary course of business may be

authorized without an actual hearing if no party in interest timely requests such a hearing.  *See*

11 U.S.C. § 102(1)(B)(i) (authorizing "an act without an actual hearing if such notice is given

properly and if such a hearing is not requested timely by a party in interest," notwithstanding the

statutory requirement for "notice and a hearing").

24.     The usual process of obtaining court approval for each Sale:  (a) would result in increased costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions and (b) in some instances, may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.  The Debtors therefore propose to streamline the process and shorten the applicable notice periods to maximize the net value realized from Sales for the benefit of all parties-in-interest.

25.     The Sale Procedures comply with the notice and hearing requirements of the Bankruptcy Code, as well as due process, by providing the Sale Notice Parties with an opportunity to present objections as to each proposed Sale (other than Sales at or above the Reference Price) and to request a hearing.  Furthermore, all known holders of liens will receive notice and an opportunity to object to each proposed Sale (other than Sales at or above the Reference Price).  Based on the foregoing, the Debtors submit that sufficient cause exists to implement the Sale Procedures for the Genesis Allowed Claim and that such procedures will improve the efficiency of the sale process for the Genesis Allowed Claim, thereby maximizing the value of such assets to the Debtors' estates.

C.  <u>Purchaser(s) of Sales in Accordance with the Sale Procedures Should Be Entitled to the Good-Faith Protections of Section 363(m) of the Bankruptcy Code.</u>

26.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

27.     Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

28.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

29.     The Debtors submit that any Sale consummated in accordance with the Sale Procedures will be an arm's-length transaction without indication of any fraud or collusion between any purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders or similar conduct that would cause section 363(m) of the Bankruptcy Code to not apply to such Sales.  The Sale Procedures provide that to the extent a purchaser

requires a Good Faith Finding, the Debtors and the purchaser will file relevant declarations in

support of the Good Faith Finding as the Debtors determine necessary.  Accordingly, the Debtors

request that the Court determine that, to the extent that the Sale Procedures are complied with,

any purchaser for whom sufficient declarations are provided is a good-faith purchaser entitled to

the protections of section 363(m) of the Bankruptcy Code.

## II.   The Sales Should Be Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

30.    In the interest of attracting the best offers, the Debtors request

authorization to sell the Genesis Allowed Claim free and clear of any liens, claims,

encumbrances and other interests in accordance with section 363(f) of the Bankruptcy Code,

with any such liens, claims, encumbrances and other interests attaching to the proceeds of the

sale of the Genesis Allowed Claim.

31.    The sale of estate property free and clear of any interest is governed by

section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property
>        free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is
>        to be sold is greater than the aggregate value of all liens on
>        such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable
>        proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

32.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive:

approval of a proposed sale of assets free and clear of interests requires only that one of the five

requirements be satisfied with respect to each such interest. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

33.    Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f). *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

34.    The Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code.   Pursuant to the Sale Procedures, in any Sale, to the extent there are any known holders of liens on the Genesis Allowed Claim, the Debtors will provide such parties with a set of Sale Disclosures for such Sale prior to the disposition of the applicable portion of the Genesis Allowed Claim.  Absent any objection to a Sale, a holder of a lien will be deemed to have consented to such sale, and the relevant asset may be sold free and clear of such lien. *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  To the extent that consent of a lienholder is neither obtained nor deemed to have been obtained, the Debtors submit that with respect to any Sale, lienholders

could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.

35.     A sale of the Genesis Allowed Claim free and clear of claims and interests is necessary to maximize the value of offers to acquire the Genesis Allowed Claim.  If the Genesis Allowed Claim is not sold free and clear of claims and interests, or if any purchaser would, or in the future could, be liable for any such claim or interest, the Debtors would be unable to successfully market the Genesis Allowed Claim without a significant reduction in price.  Such a sale would provide substantially less value and certainty for the Debtors' estates.

36.     Furthermore, any lien or claim on, in, to or against any Genesis Allowed Claim existing immediately prior to a sale of such Genesis Allowed Claim will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any claim or interest will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that a Sale, if consummated, that is free and clear of claims and interests is in the best interests of the Debtors' estates and stakeholders.

## Bankruptcy Rules 6004(a) and 6004(h)

37.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rule 6004(h).  In light of the Debtors' current financial conditions and the importance of an efficient timeline for maximizing the value of the Genesis Allowed Claim, the proposed Sales contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders.

Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

### Notice

38.     Notice of this Motion has been provided to the Sale Notice Parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### No Prior Request

39.     No prior motion for the relief requested herein has been made to this or any other court.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper.

Dated:  February 1, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*