## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: February 22, 2024 at 1:00 p.m. (ET)<br>Objection Deadline: February 15, 2024 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (I) PROCEDURES FOR SALE OF DEBTORS' EQUITY INTERESTS IN ANTHROPIC, PBC; (II) SALE(S) OF SUCH EQUITY INTERESTS IN ACCORDANCE WITH SUCH PROCEDURES FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (III) REDACTION AND FILING UNDER SEAL OF CERTAIN CONFIDENTIAL COMMERCIAL INFORMATION IN THE SALE PROCEDURES**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 107(b) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1, 9006-1 and 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving (a) procedures (the "Sale Procedures") for the sale of all or a portion of the Series B Preferred Stock (the "Anthropic Shares"), including any rights or interests therein, held by Debtor Clifton Bay Investments LLC

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

(f/k/a Alameda Research Ventures LLC, "Clifton Bay") in Anthropic, PBC, a Delaware public

benefit corporation ("Anthropic"), (b) the sale(s) of the Anthropic Shares in accordance with the

Sale Procedures free and clear of any liens, claims, interests and encumbrances (except as set

forth in the Sale Procedures) and (c) the redaction and filing under seal of certain confidential

commercial information contained in the Sale Procedures.  In support of this Motion, the Debtors

respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration

of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22,

2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District

of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the

"Official Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in

Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.

Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

I.      **The Debtors' Investment in Anthropic**.

3.      Prior to the Petition Date, the Debtors regularly entered into and exited investments across a variety of asset categories, including interests in privately held companies, debt and equity securities in publicly traded companies, investments in crypto, venture capital or other investment funds.  Many of these assets were held purely for purposes of investment and, as a result, were meant to be monetized over time rather than integrated into the Debtors' core crypto exchange businesses.

4.      As part of these investment efforts, on October 5, 2021, Clifton Bay acquired a Modified Simple Agreement for Future Equity (the "M-SAFE") from Anthropic for an aggregate consideration of $500,000,000.  On May 13, 2022, the M-SAFE was converted into 44,539,240 shares of Series B Preferred Stock at a per share price of $11.2261.  Anthropic's Series B Preferred Stock and other series of preferred securities are generally issued to outside investors and convertible into shares of Anthropic's N-Class Common Stock or Voting Common Stock, as applicable, upon certain events, including an IPO or SPAC transaction.  Upon the closing of Anthropic's Series B funding on April 30, 2022, Clifton Bay owned approximately 13.56% of Anthropic, on a fully diluted basis.  Subsequently, Anthropic closed several rounds of financing transactions in which additional preferred securities were issued to investors.  To the Debtors' knowledge, as of January 2024, Clifton Bay currently holds approximately 7.84% of Anthropic, on a fully diluted basis, following subsequent financing rounds undertaken by Anthropic.

5.      The Debtors' proposed chapter 11 plan provides for, and the Debtors have undertaken efforts to monetize assets in anticipation of, dollarized distributions to creditors. Given the increased interest in AI and large language models, there has been significant

appreciation in the value of the Anthropic Shares since the Debtors' acquisition and investment in Anthropic in 2021.

6.     Additionally, the Debtors understand that Anthropic will likely continue to seek additional rounds of equity financing. Establishing the Sale Procedures and allowing the Debtors to conduct and consummate sales of the Anthropic Shares in accordance therewith will permit the Debtors to coordinate the most optimal and appropriate time for the sale of Anthropic Shares in conjunction with Anthropic's capital raising efforts. Accordingly, the Debtors submit that establishing the Sale Procedures and conducting and consummating sales of the Anthropic Shares in accordance with the proposed Sale Procedures will maximize the value of the Debtors' estates for the benefit of all stakeholders.

## Jurisdiction

7.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 107(b) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9018 and Local Rules 2002-1, 6004-1, 9006-1 and 9018-1(b). Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

8.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving (a) the Sale Procedures to sell the

Anthropic Shares, (b) the sale(s) of the Anthropic Shares in accordance with the Sale Procedures free and clear of any liens, claims, interests and encumbrances (except as set forth in the Sale Procedures) and (c) the redaction and filing under seal of certain confidential commercial information contained in the Sale Procedures.

### Sales Procedures

9.      The Debtors believe that flexibility with respect to the sale timing and process is crucial to maximizing the value of the Anthropic Shares and thus the value to the Debtors' estates.  The Debtors intend to work cooperatively with Anthropic to execute the sale(s) of the Anthropic Shares, including complying with the applicable Anthropic organizational and corporate documents, including without limitation the Company's Amended and Restated Bylaws, Amended and Restated Certificate of Incorporation, the Amended and Restated Investors' Rights Agreement, the Amended and Restated Voting Agreement, the Amended and Restated Right of First Refusal and Co-Sale Agreement and any other agreements and documents that govern the rights and obligations of Clifton Bay as an investor in Anthropic (collectively, the "Company Documents").  The flexibility to adjust the sale timeline will help facilitate such cooperation, including by allowing the Debtors to capture excess demand for Anthropic's equity securities channeled from any of Anthropic's financing rounds.  Further, given the significant number and value of Anthropic Shares held by the Debtors, the flexibility to sell portions of Anthropic Shares at different times will help the Debtors monetize their interest. Moreover, the streamlined Sale Procedures will allow the Debtors to respond quickly to the market without the delay of filing a separate motion for each proposed Sale.

10.      The Debtors propose to utilize the following Sale Procedures:

(a) Assets.  The Anthropic Shares.

(b) <u>Method of Sale</u>.  The Debtors may pursue the sale of all or a portion of the Anthropic Shares in one or a series of public auctions as contemplated by paragraph (d) below or private sale transactions as contemplated in paragraph (e) below (each, a "<u>Sale</u>"), in each case to a single purchaser or multiple purchasers and in compliance with these Sale Procedures.

(c) <u>Required Terms</u>.  Regardless of the method of Sale, the documentation for any Sale shall include provisions acceptable to the Debtors that the Anthropic Shares are being transferred (i) "as is," "where is," and "with all faults," (ii) without any indemnity to the purchaser(s) thereof, and (iii) free and clear of all liens, claims, interests and encumbrances (other than permitted encumbrances approved by the Debtors, including restrictions arising under applicable securities laws or as set forth in the Company Documents or the legends on certificates of the Anthropic Shares), with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as existed immediately prior to the Sale.

(d) <u>Auction Procedures</u>.  The Debtors may hold one or a series of auctions (each, an "<u>Auction</u>") at any time after entry of the Order approving this Motion.  The Debtors shall conduct any Auction in accordance with the following procedures and any supplemental procedures the Debtors consider appropriate and in the best interests of the Debtors' estates.

   (i) To the extent that the Debtors determine to hold an Auction, the Debtors shall provide Anthropic with five (5) business days' notice prior to filing a notice (the "<u>Auction Notice</u>") with the Court.  The Auction Notice shall include the date, time and location of the Auction and the number of Anthropic Shares for sale at the Auction.  The Auction Notice also may include any supplemental procedures applicable to the Auction.  The Auction Notice shall be served on each of the Sale Notice Parties (as defined below).  The date of the Auction shall be no less than ten (10) business days after the date of the Auction Notice.

   (ii) Only "Qualified Bidders" will be permitted to bid at an Auction.  In order to become a Qualified Bidder, an interested party must make the following deliveries to the Debtors no later than five (5) business days prior to the commencement of the Auction, unless the Debtors determine, in consultation with the Official Committee and the Ad Hoc Committee of Non-US Customers of FTX.com (the "<u>AHC</u>", and together with the Official Committee, the "<u>Consultation Parties</u>"), to waive one or more of the requirements for such interested party; <u>provided</u>, <u>that</u>, the Debtors cannot waive the requirement for the bidder questionnaire without the prior consent of Anthropic.

(A) A written statement of the number of Anthropic Shares on which the bidder seeks to bid, and the proposed per share price for such Anthropic Shares;

(B) Sufficient evidence of the bidder's financial capacity and any required authorizations to close the Sale without material delay, including without limitation, such bidder's current audited (if applicable) financial statements and information for determining whether any regulatory approvals are required to close the Sale;

(C) a complete draft purchase agreement, together with all exhibits and schedules, marked to show any amendments and modifications to the form of purchase agreement provided by the Debtors for the Auction, which form purchase agreement shall be made available to bidders, Anthropic and the Consultation Parties upon issuance of the Auction Notice;

(D) the interested party's agreement to such terms and conditions as may be required by the Debtors to register to bid and participate in the Auction;

(E) a written certification that such bidder is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code;

(F) responses to a bidder questionnaire; and

(G) if requested by the Debtors, a cash deposit by wire transfer (the amount of which shall be set by the Debtors in their sole discretion) to be held in an escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>").

(iii) No bid submitted during an Auction may contain any financing or due diligence contingency.  Any such bid will not be considered a qualified bid.  The bid of any Successful Bidder (as defined below) will be binding whether or not the Successful Bidder has obtained financing or completed its due diligence investigation.

(iv) Upon the conclusion of an Auction, the Debtors may, in consultation with the Consultation Parties, (A) identify and certify the bid or bids that constitute the highest or best offer or offers for the applicable Anthropic Shares (each such bid, a "<u>Successful Bid</u>", and each person submitting such bid, a "<u>Successful Bidder</u>"), and (B) identify and, in consultation with the Consultation Parties, certify the bid or bids that constitute the next highest or best offer or offers for the applicable Anthropic Shares (each person submitting such a bid, a "<u>Backup Bidder</u>"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s).

(v) Subject to paragraph (g) (*Sale Objections*), once the Debtors close the Auction, the Debtors are authorized to consummate the Sale

with the Successful Bidder pursuant to the Successful Bid and shall have no obligation to consider any subsequent higher and better offer.

(vi) All Good Faith Deposits will be returned to any Qualified Bidder who is not a Successful Bidder or a Backup Bidder; provided, however, that if a Successful Bidder fails to consummate a transaction within five (5) business days after the closing deadline set forth in the purchase agreement for the Successful Bid or otherwise mutually agreed to by the Debtors and the Successful Bidder, (A) the Debtors will not have any obligation to return the Good Faith Deposit of such Successful Bidder and shall be entitled to retain (and the Successful Bidder shall forfeit) such Good Faith Deposit which shall irrevocably become the property of the Debtors; and (B) if the Debtors selected a Backup Bidder, the Debtors shall proceed to closing the Sale with the Backup Bidder. Within two (2) business days of closing the Sale with the Successful Bidder, the Debtors shall return the Good Faith Deposit to the Backup Bidder.

(e) Private Sales and the Reference Price.  Subject to paragraph (g) (*Sale Objections*), the Debtors are authorized to consummate, without an Auction, the Sale of the Anthropic Shares in one or more private sale transactions (each, a "Private Sale") in accordance with the following procedures and any supplemental procedures the Debtors consider appropriate and in the best interests of the Debtors' estates.

(i) To the extent that Anthropic has closed a primary offer and sale of preferred stock to third-party investors in an equity financing round on or within 120 days prior to the date on which the Debtor enters into a Private Sale, the Debtors may enter into a definitive agreement for a Private Sale without notice to any Consultation Party [REDACTED] (a "Reference Price") [REDACTED]; provided, that, prior to entering into any agreement with respect to a Private Sale, the Debtors shall provide Anthropic five (5) business days' notice of such sale, a copy of all applicable Sale Disclosures and a copy of responses to the bidder questionnaire from the purchaser.

(ii) Prior to entering into any definitive agreement for a Private Sale that is not at or above a Reference Price, the Debtors shall notify firms serving as the legal counsel and financial advisor to the Consultation Parties.

(f) Sale Disclosures.

(i) No later than two (2) business days after entering into a definitive purchase agreement with respect to any Sale, the Debtors shall file with the Court a notice of the following (as described below, the "Sale Disclosures"):

(A) a list of each purchaser, the number of Anthropic Shares to be purchased, and the aggregate purchase price to be paid;

(B) in the case of an Auction, the identity of any Backup Bidder and the terms of the back-up bid, if any;

(C) a proposed sale order (the "Sale Order"), in substantially the form attached to the Order as Exhibit 1, which, among other things, authorizes the Debtors to consummate such Sale and approves the terms of such Sale;

(D) in the case of a Private Sale, whether the Sale is being consummated at or above the Reference Price;

(E) whether the Sale Order includes a proposed finding from the Court that the Anthropic Shares are being purchased in "good faith" for purposes of section 363(m) of the Bankruptcy Code (a "Good Faith Finding"); and

(F) if required as support for entry of the proposed Sale Order, declarations from the Debtors, the purchaser(s) or other parties with respect to such matters as the Debtors may determine.

(ii) The Debtors shall serve a copy of the Sale Disclosures (by email or, if email is not available, by overnight mail) to the following parties: (A) the U.S. Trustee; (B) counsel to the Official Committee; (C) counsel to the AHC; (D) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Anthropic Shares; (E) any known interested or affected governmental or regulatory entity; (F) solely in the case of a Sale that is not in excess of an applicable Reference Price, any party who, in the discretion of the Debtors, would meet the financial and other eligibility criteria of a Qualified Bidder known by the Debtors to have expressed a written interest in purchasing the relevant Anthropic Shares during the last six (6) months; (G) Anthropic and counsel to Anthropic; and (H) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties").

(g) Sale Objections.

(i) The Debtors may consummate a Private Sale that (A) is at or above an applicable Reference Price, (B) does not include a Good Faith Finding and (C) complies with the Company Documents, without prior notice to the Court or any party in interest (other than the Sale Disclosures). The Debtors shall submit the Sale Order for such a Private Sale under certification of counsel concurrently with or at any time after the filing of the Sale Disclosures.

(ii) In the case of all other Sales, the Debtors may submit the Sale Order for entry under certification of counsel after the Debtors have provided all parties-in-interest and Anthropic no less than

seven (7) business days' notice to object to the entry of the Sale Order. Objections to any such Sale must be (A) in writing and state with specificity the basis for objecting and (B) filed with the Court and served (which service may be by email) on (1) the U.S. Trustee; (2) counsel to the Debtors; (3) counsel to the Official Committee; (4) counsel to the AHC; and (5) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Objection Notice Parties") within three (3) business days of the service of the Sale Disclosures at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). If no party-in-interest objects in writing to such a Sale by the Sale Objection Deadline, the Debtors may submit the Sale Order for entry under certification of counsel. If a party-in-interest or Anthropic with files the Court and serves on the Sale Objection Notice Parties a written objection to a proposed Sale on or prior to the Sale Objection Deadline, then the Debtors may only consummate the Sale upon withdrawal of such objection, submission of a consensual form of order resolving the objection between the Debtors and the objecting party, or upon further order of the Court. Subject to the Court's availability, the Debtors may seek an expedited hearing before the Court to resolve the objection. After all timely filed objections have been addressed, the Debtors may submit the Sale Order for entry under certification of counsel. Immediately upon entry of the Sale Order, the Debtors may consummate the proposed Sale on the terms set forth in the Sale Order and the applicable documentation executed in connection with such Sale; provided, that, if any party-in-interest or Anthropic has filed an objection in accordance with these procedures, absent written consent of the objecting party, the Sale Order shall not contain a waiver the stay provided in Bankruptcy Rule 6004(h).

(h) Modification; Fiduciary Duties. To the extent consistent with applicable law, the Debtors may, in consultation with the Consultation Parties, (A) adopt such additional rules and procedures at or prior to any Auction(s), (B) modify or amend the Sale Procedures or waive the terms and conditions set forth in the Sale Procedures with respect to any or all potential bidders, and (C) adjourn, reschedule or cancel all or any portion of the sale process contemplated by these Sale Procedures; provided, that, in no case shall the Debtors take the action set forth in clause (B) above with respect to rights specific to Anthropic in these Sale Procedures adverse in any material respect to Anthropic without the prior written consent of Anthropic or following an order from the Court. Notwithstanding anything to the contrary contained herein, nothing in these Sale Procedures will require the Debtors to take any action, or to refrain from taking any action, unless the Debtors determine necessary to comply with their respective fiduciary duties under applicable law.

(i) <u>Beneficiaries</u>.  These Sale Procedures are for the benefit of the Debtors and their estates.  No interested party, Qualified Bidder or third party shall have any right or benefit hereunder at any time, nor shall the Debtors have any monetary liability to any person in connection with any failure or alleged failure to comply with these Sale Procedures.

11.    The Debtors believe that the Reference Price is sensitive and proprietary. The Reference Price is a key component of the Debtors' marketing strategy for the Anthropic Shares and therefore should be kept strictly confidential to maintain the Debtors' competitive advantages.  The public disclosure of the Reference Price could be detrimental to the Debtors' goal of obtaining higher and better offers for the Anthropic Shares.  Accordingly, the Debtors seek authorization for redacting and filing under seal the Reference Price in the Sale Procedures.

## **Basis for Relief**

I.    **Approval of the Sale Procedures and Sales in Accordance with the Sale Procedures Are Fair, Appropriate and in the Best Interests of the Debtors' Estates.**

12.    Sections 363(b) and 105(a) of the Bankruptcy Code authorize the Court to approve the Sale Procedures.  11 U.S.C. §§ 105, 363(b)(1).  Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

13.    Bankruptcy courts routinely authorize sales of a debtor's assets and procedures for the sale of such assets if there is a "sound business purpose" that justifies such use of estate property.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d at 1071 (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).

14.     In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

15.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

A.     <u>Approval of the Sale Procedures and Sales in Accordance with the Sale Procedures Are Justified by Good and Sound Business Justification</u>.

16.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four*

*B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

17.     Implementation of the Sale Procedures and sales in accordance with the Sale Procedures represent a sound exercise of the Debtors' business judgment and are justified under sections 363(b) and 105(a) of the Bankruptcy Code.  The Sale Procedures are designed to give the Debtors the flexibility needed to sell the Anthropic Shares expediently and efficiently, and in a manner that maximizes value for the benefit of all stakeholders.

18.     Sales in accordance with the Sale Procedures should be authorized because the Debtors may sell the Anthropic Shares in one or a series of Private Sales or Auctions and the Sale Procedures will alleviate the cost and delay of filing a separate motion for each proposed Sale.  Moreover, any Sales of the Anthropic Shares will be appropriately limited by the Sale Procedures.  The Sale Procedures require the Debtors to notify the Consultation Parties before determining to enter into any purchase agreement with respect to a Sale (other than Sales at or above the Reference Price).  The Sale Procedures also require the Debtors to file with the Court and serve on the Sale Notice Parties Sale Disclosures that include key metrics of each Sale shortly following entry into such Sale.

19.     In addition, the market for equities of early-stage technology companies, especially those focused on artificial intelligence, can be volatile, and the value of the Anthropic Shares has changed significantly since the Petition Date.  The Debtors may face stringent time constraints in order to capitalize when the value of and demand for the Anthropic Shares is high such that filing individual motions with the associated notice period would not be practicable. Further, the ability to coordinate the timing of the Sales with Anthropic and its financing activities will assist with the Debtors' outreach to investors and reduce the cost associated with

marketing and maximize the value of potential Sales.  Based on the foregoing, the Debtors

submit, in their sound exercise of business judgment, that any Sale or Sales of the Anthropic

Shares pursuant to the Sale Procedures and responsive to market conditions will maximize the

value of the Anthropic Shares for the benefit of all stakeholders and should therefore be

approved.

        B.    <u>The Noticing Procedures Are Reasonable and Appropriate</u>.

        20.    The notice and hearing requirements contained in section 363(b)(1) of the

Bankruptcy Code are satisfied if, in light of the particular circumstances of a proposed

transaction, appropriate notice and an opportunity for a hearing are given.  *See* 11 U.S.C.

§ 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a

hearing "as [are] appropriate in the particular circumstances").  Bankruptcy Rules 2002(a)(2),

2002(i) and 2002(k) require that a minimum of 21 days' notice of the proposed sale of property

outside the ordinary course of business be provided by mail to "the debtor, the trustee, all

creditors and indenture trustees," the Official Committee and the U.S. Trustee unless a debtor

shows "cause."  *See* FED. R. BANKR. P. 2002(a)(2), 2002(i), 2002(k).  Once the debtor shows

"cause," however, Bankruptcy Rule 2002(a)(2) authorizes the Court to shorten the generally

applicable 21-day notice period and to direct a method of notice other than mail.  *See* FED. R.

BANKR. P. 2002(a)(2).

        21.    Moreover, the Court is authorized to limit, even without a prior showing

of cause, notice of asset sales outside the ordinary course of a debtor's business to the Official

Committee and any creditor or equity holder requesting notice.  *See* FED. R. BANKR. P. 2002(i).

In addition, the sale or transfer of property outside the ordinary course of business may be

authorized without an actual hearing if no party in interest timely requests such a hearing.  *See*

11 U.S.C. § 102(1)(B)(i) (authorizing "an act without an actual hearing if such notice is given

properly and if such a hearing is not requested timely by a party in interest," notwithstanding the statutory requirement for "notice and a hearing").

22.     The usual process of obtaining court approval for each Sale:  (a) would result in increased costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions and (b) in some instances, may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time.  The Debtors therefore propose to streamline the process and shorten the applicable notice periods to maximize the net value realized from Sales for the benefit of all parties-in-interest.

23.     The Sale Procedures comply with the notice and hearing requirements of the Bankruptcy Code, as well as due process, by providing the Sale Notice Parties with an opportunity to present objections as to each proposed Sale (other than Sales at or above the Reference Price) and to request a hearing.  Furthermore, all known holders of liens will receive notice and an opportunity to object to each proposed Sale (other than Sales at or above the Reference Price).  Based on the foregoing, the Debtors submit that sufficient cause exists to implement the Sale Procedures for the Anthropic Shares and that such procedures will improve the efficiency of the sale process for the Anthropic Shares, thereby maximizing the value of such assets to the Debtors' estates.

C.  Purchaser(s) of Shares in Accordance with the Sale Procedures Should Be Entitled to the Good-Faith Protections of Section 363(m) of the Bankruptcy Code.

24.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an

entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

25.    Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

26.    While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's conduct in connection with a sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted).  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

27.    The Debtors submit that any Sale consummated in accordance with the Sale Procedures will be an arm's-length transaction without indication of any fraud or collusion between any purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders or similar conduct that would cause section 363(m) of the Bankruptcy

Code to not apply to such Sales.  The Sale Procedures provide that to the extent a purchaser requires a Good Faith Finding, the Debtors and the purchaser will file relevant declarations in support of the Good Faith Finding as necessary.  Accordingly, the Debtors request that the Court determine that, to the extent that the Sale Procedures are complied with, any purchaser for whom sufficient declarations are provided is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.    The Sales Should Be Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

28.    In the interest of attracting the best offers, the Debtors request authorization to sell the Anthropic Shares free and clear of any liens, claims, encumbrances and other interests (except as set forth in the Sale Procedures) in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances and other interests attaching to the proceeds of the sale of the Anthropic Shares.

29.    The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

31.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

32.     The Sale Procedures satisfy the requirements of section 363(f) of the Bankruptcy Code.   Pursuant to the Sale Procedures, in any Sale, to the extent there are any known holders of liens on the Anthropic Shares, the Debtors will provide such parties with a set of Sale Disclosures for such Sale prior to the disposition of the applicable Anthropic Shares. Absent any objection to a Sale, a holder of a lien will be deemed to have consented to such sale, and the relevant asset may be sold free and clear of such lien.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858). To the extent that consent of a lienholder is neither obtained nor deemed to have been obtained,

the Debtors submit that with respect to any Sale, lienholders could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.

33.     A sale of the Anthropic Shares free and clear of claims and interests (except as set forth in the Sale Procedures) is necessary to maximize the value of offers to acquire the Anthropic Shares.  If the Anthropic Shares are not sold free and clear of claims and interests (except as set forth in the Sale Procedures), or if any purchaser would, or in the future could, be liable for any such claim or interest, the Debtors would be unable to successfully market the Anthropic Shares without a significant reduction in price.  Such a sale would provide substantially less value and certainty for the Debtors' estates.

34.     Furthermore, any lien or claim on, in, to or against any Anthropic Shares existing immediately prior to a sale of such Anthropic Shares will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any claim or interest will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that a Sale, if consummated, that is free and clear of claims and interests (except as set forth in the Sale Procedures) is in the best interests of the Debtors' estates and stakeholders.

**III.    The Reference Price for the Anthropic Shares Contained in the Sale Procedures Is Confidential Commercial Information and Should Be Filed Under Seal.**

35.     The Debtors respectfully submit that the Reference Price set forth in Paragraph 9(e) of the Sale Procedures be redacted and filed under seal.

36.     Bankruptcy Code section 107(b) authorizes the issuance of orders that protect parties from the potential harm resulting from the disclosure of confidential information. Specifically, section 107(b) states that "[o]n request of a party in interest, the bankruptcy court

shall . . . (1) protect an entity with respect to a trade secret or other confidential research, development, or commercial information . . . ."  Similarly, Bankruptcy Rule 9018 and Local Rule 9018-1 authorize the filing under seal of documents containing confidential information.

37.     The Debtors respectfully submit that the Reference Price is of a sensitive, confidential and proprietary nature, and thus is confidential commercial information as contemplated by section 107 of the Bankruptcy Code.  "Commercial information" has been defined as "information which would result in an 'unfair advantage to competitors by providing them with information as to the commercial operations of the debtor.'"  *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (quoting *Video Software Dealers Ass'n* v. *Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994)).  Unlike its counterpart in rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause."  *In re Orion Pictures Corp.*, 21 F.3d at 28.  If an interested party is requesting to seal information covered by section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no discretion to deny the application." *Id.* at 27.  Moreover, the resulting order should be broad, that is "any order which justice requires." FED. R. BANKR. P. 9018; *In re Global Crossing, Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003).  Courts are required to provide such protections, "generally where open inspection may be used as a vehicle for improper purposes."  *In re Orion Pictures Corp.*, 21 F.3d at 27.  Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice."  *In re Global Crossing, Ltd.*, 295 B.R. at 724.

38.     The Reference Price constitutes "commercial information" subject to the protection of section 107(b).  The Reference Price is a key component of the marketing strategy

of PWP, the Debtors' financial advisor, and could give a competitor a significant and unfair advantage.  Further, the public disclosure of the Reference Price could potentially disrupt the Debtors' sale process and depress the value of the Anthropic Shares to the ultimate detriment of the Debtors.  The Debtors submit that parties-in-interest will not be prejudiced by the Reference Price being redacted from the public record because such information is not necessary to evaluating the reasonableness of the proposed Sale Procedures and will be disclosed in its entirety to the Court, the Official Committee and the U.S. Trustee.

39.     Accordingly, the Debtors submit that the Reference Price is "commercial information" within the ambit of section 107 and that the Debtors should be authorized to file under seal the Reference Price.

### Bankruptcy Rules 6004(a) and 6004(h)

40.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rule 6004(h).  In light of the Debtors' current financial conditions and the importance of an efficient timeline for maximizing the value of the Anthropic Shares, the proposed Sales Procedures contemplated herein should be approved as soon as practicable to allow the Debtors to commence the sale process.  Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

### Notice

41.     The Debtors have provided notice of the Motion to the following entities or, in lieu thereof, their counsel: (a) the U.S. Trustee; (b) counsel to the Official Committee; (c) counsel to the AHC; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the

District of Delaware; (h) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the Anthropic Shares; (i) any party known by the Debtors to have expressed a written interest in purchasing the Anthropic Shares during the last six (6) months; (j) Anthropic and (k) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## No Prior Request

42.     No prior motion for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper

Dated:  February 2, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Matthew R. Pierce
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*