RECEIVED
2024 FEB -6 AM 10:46
CLERK US BANKRUPTCY COURT
DISTRICT OF DELAWARE

January 11, 2024
Honorable Judge John Dorsey
824 N Market St 5th Floor, Courtroom 5
Wilmington, DE 19801 302-533-3169

Subject: OBJECTION to Motion of Debtors to Estimate Claims Based on Digital Assets, Case No. 22-11068 (JTD), Hearing Date: January 25, 2024, at 10:00 a.m. (ET)

Dear Judge Dorsey,

I hope this letter finds you in good health. I am writing to express my formal objection to the debtor's motion to estimate claims based on digital assets. As a customer creditor with claims primarily denominated in specific digital assets rather than USD, I find this matter of great importance. My claim, significant in size, amounts to approximately USD 500,000. This is particularly relevant as the value of digital assets has significantly increased since the initial bankruptcy filing. Valuing customer claims at the time of filing would unjustly prejudice a substantial group of customers like myself, whose claims are in specific digital assets.

Additionally, I hold a claim of 11BTC, equivalent to around USD 500,000 as of January 11, 2024. This further emphasizes the importance of my stance, reflecting the considerable increase in digital asset values.

The motion by the debtors overlooks the explicit terms of the FTX Terms of Service (ToS). Clause 8.2.6 of the ToS clearly states: (A) Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. You, as the owner of Digital Assets in your account, shall bear all risk of loss. FT Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your account. (B) Digital Assets in your account are not the property of, nor shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading.

These terms led many customers, including myself, to deal with the exchange under the belief that our digital assets remained our property, not subject to general creditor claims. This is contrary to other high-profile bankruptcies where digital assets were a loan to the

platform. Based on the ToS, digital assets held on the exchange were not loans to the exchange, and customers like myself should rightfully claim ownership of our digital assets.

At the heart of the objection to the debtor's motion regarding customer assets lies a critical unresolved legal question: Do customer assets, given the explicit language of the ToS, form part of the debtor's estate, or should they remain owned by the customers or subject to a trust in favor of the customers? The resolution of this pivotal legal question will naturally dictate the application of bankruptcy law and subsequent remedies.

To my knowledge, the debtors have not sought a court determination on this legal question, nor have arguments for either position been openly heard in court. I am aware only of private negotiations between certain customers/creditors and the debtors concerning this crucial legal question, which the debtors have settled out of court separately.

Should the court find that customer assets do not form part of the debtor's estate, then customer assets should be returned in the same form in which they were held.

The Ad Hoc Committee (AHC) does not represent the interests of customer claimants with claims denominated in specific digital assets. Based on public information and private knowledge, the AHC represents claimants where ~40% are not customers, but rather opportunistic investors who have purchased customer and non-customer claims. For this group, valuing claims at the time of filing would favor them, effectively robbing customer claimants with claims in specific digital assets, which have now increased in price, to reimburse other categories of claimants and creditors.

It is not in the interest of claimants represented by the AHC, and by extension the AHC itself, to fully and fairly engage with the court and the debtors in clarifying the legal question of whether customer assets form part of the debtor's estate.

As mentioned earlier, certain private negotiations have taken place between claimants represented by the AHC concerning this critical legal question, which were not openly heard in court. This raises serious concerns that there is indeed a triable issue to be considered, otherwise, the debtors would not have settled the claim so swiftly and privately.

Despite spending hundreds of millions (primarily from customer funds) on legal and professional fees, the debtors have failed to achieve fairness for customer claimants. Customer claimants should not, under any circumstances, be grouped into the same class as other creditors.

Due to the unique circumstances of the debtor's business and the cryptocurrency industry (millions of 'retail' customers), the profile of customer claimants tends to be scattered, making it difficult to organize and present formal arguments before the court. Customer claimants have already been victimized by the actions of Sam Bankman-Fried. Please do not let us be further victimized by non-customer commercial interests or negligent professional advice guiding the debtor's actions, especially in the absence of a specific ad hoc committee formed to address these important issues.

For these reasons, I respectfully request the court to deny the motion and immediately call for a determination of the critical legal question raised. I trust that you will take these objections seriously in order to uphold fairness and integrity in the bankruptcy proceedings.

I am firmly opposed to creating a precedent where defrauded claimants, such as myself, are left without recourse.

Thank you for your consideration.

Sincerely, Yuta Hattori Email : yuta.hatto@gmail.com

服部勇太

1.11.2024

3