## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  March 20, 2024 at 10:00 a.m. (ET)** |
| | **Objection Deadline:  February 23, 2024 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF INTERESTS IN DIGITAL CUSTODY INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING DEBTORS TO FILE CERTAIN SCHEDULES TO THE PURCHASE AND SALE AGREEMENT UNDER SEAL; AND (IV) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 107(b) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004, 9007, 9008, 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1, 9006-1 and 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of the equity interests (the "Interests") held by Debtor West Realm Shires Inc., a Delaware corporation ("Seller"), in Digital Custody Inc., a Delaware corporation

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

("DCI"), free and clear of all liens, claims, interests and encumbrances in accordance with the terms and conditions set forth in the Agreement; (b) authorizing and approving Seller's entry into, and performance under, the Purchase and Sale Agreement, dated as of February 6, 2024, a copy of which is attached hereto as Exhibit B (the "Agreement"), between Seller and Amalgamated Token Services Inc., a Delaware corporation ("Purchaser"); (c) authorizing the Debtors to file certain schedules to the Agreement under seal, and (d) granting related relief.  In further support of this Motion, the Debtors submit the concurrently filed declaration of Steven P. Coverick attached hereto as Exhibit C (the "Coverick Declaration"), which is incorporated herein by reference, and the Debtors respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Jurisdiction

3.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 107(b), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008, 9014 and 9018 and Local Rules 2002-1, 6004-1, 9006-1 and 9018-1(b).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Facts Specific to Relief Requested

### I.    The Debtors' Investment in DCI

4.     Seller acquired DCI, a trust company registered in South Dakota, in order to provide custodial services for cryptocurrencies and other digital property for FTX US, its U.S. cryptocurrency spot trading exchange, and non-Debtor LedgerX LLC ("LedgerX"), the Debtors' digital currency futures exchange and clearinghouse.  On December 21, 2021, Seller entered into an agreement with Digital Finance Group Company and Terence J. Culver pursuant to which Seller acquired a certain note interest issued by DCI for $5,000,000 and an option to acquire 100% of the equity interests in DCI.  Seller exercised the option on August 6, 2022, and acquired the equity interests in DCI for an additional $5,000,000, for an aggregate purchase price of $10,000,000.

5.      Given the timing of the acquisition, DCI was never integrated into the operations of FTX US or LedgerX prior to the commencement of these Chapter 11 Cases. Following the commencement of these Chapter 11 Cases, the Debtors sold its interest in LedgerX in May 2023.  The Debtors have also never sold or restarted the FTX US exchange. DCI has relatively few operations but still retains a valuable franchise—it has a license from the Division of Banking of the South Dakota Department of Labor and Regulation ("South Dakota Division of Banking") that allows it to provide custodial services.  The Debtors believe it is in their best interest to dispose of the Interests at this time through a private sale transaction.

## II.    **Marketing Process**

6.      The Debtors, with the assistance of their financial advisor, Alvarez & Marsal North America, LLC ("A&M"), designed a process to market the Interests in an efficient and competitive sales process.  Such efforts included creating and reaching out to a proprietary list of potential acquirers for the Interests.  *See* Coverick Declaration ¶ 6.

7.      As a result of the marketing efforts, the Debtors entered into non-disclosure agreements with four potential purchasers and provided all such potential purchasers access to information on the Interests.  The Debtors ultimately received indications of interest from three parties, including an indication of interest from Purchaser, on December 15, 2023.  Of these three prospective purchasers, the Debtors proceeded with Purchaser and engaged in good-faith negotiations with Purchaser regarding the terms of the Agreement.  *See* Coverick Declaration ¶ 7-8.

8.      The Debtors in parallel negotiated certain "go-shop" provisions in the Agreement, which allow the Debtors to continue marketing the Interests.  These provisions allow the Debtors to solicit higher or better offers from any third party until up to three days prior to the hearing on this Motion (the "Sale Hearing").  *See* Coverick Declaration ¶ 16.

9.      Purchaser is obtaining financing for the Sale Transaction and its other business operations in the form of a convertible note from Terence J. Culver, who is a member of the executive management team and the board of directors of DCI and thus an "insider" of the Debtors (as defined in section 101(31) of the Bankruptcy Code).  The Debtors understand that Mr. Culver aided DCI in obtaining the original trust company license from the South Dakota Division of Banking and is generally familiar with the regulatory requirements for a change of control application given his prior experience with such process.

10.     After thoroughly evaluating the indications of interest and their bids from all of the parties, with the assistance of A&M, the Debtors decided to enter into the Agreement with Purchaser based on its superior offer, ability to execute the Sale Transaction within a short time frame and relationship with Mr. Culver, which the Debtors believe will be advantageous in aiding Purchaser in obtaining regulatory approval for the Sale Transaction in an expeditious manner.  *See* Coverick Declaration ¶ 8.

11.     Following consultation with the Committee and the Ad Hoc Committee of Non-US Customers of FTX.com, the Debtors understand that each does not object to the relief requested in this Motion.

## III.   Sale Transaction

12.     On February 6, 2024, Seller and Purchaser executed the Agreement, which contains the following material terms:[2]

| Purchase Price | As set forth in Section 1.1 of the Agreement, the aggregate purchase price for the Interests consists of (i) $500,000 in cash, plus (ii) the Acquired Cash Amount set forth in Section 1.4 of the Agreement. |
|---|---|

---

[2]     Capitalized terms used in this Section III but not otherwise defined herein are to be given the meanings ascribed to them in the Agreement.  To the extent that there are inconsistencies between any summary description of the Agreement contained herein and the terms of the Agreement, the terms of the Agreement shall govern.

| | |
|---|---|
| **Closing Date** | The closing of the transactions contemplated by the Agreement (the "Closing") will take place at 9:00 a.m., Eastern Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the day that is the second Business Day following the date on which all of the conditions to closing specified in Article 6 are satisfied or waived (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the fulfillment or, to the extent permitted by applicable Law, waiver of those conditions), or at such other time as Purchaser and Seller may agree in writing (the "Closing Date"). |
| **Release** | As set forth in Section 8.4 of the Agreement, Purchaser agrees to expressly waive, discharge, settle, compromise and release any and all claims, causes of actions, liens, rights and remedies it has, had or may have against the Seller Parties as of the Closing in respect of the acquisition or ownership of the Interests. |
| **Sale to an Insider** | Terence J. Culver, a member of the executive management team and the board of directors of DCI, is an insider of Seller within the meaning set forth in section 101(31)(B)(iii) of the Bankruptcy Code.  Mr. Culver is providing financing to Purchaser in the form of a convertible note in connection with the Sale Transaction. |
| **Conditions to Closing** | There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 6 of the Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing. The Agreement requires (i) the entry of a Sale Order authorizing and approving the Sale Transaction and (ii) the notice from the South Dakota Division of Banking in writing approving the Trust Company Change in Control (as defined in the Agreement) prior to Closing. |
| **Reverse Termination Fee** | If the Agreement is terminated in certain situations, including Purchaser's failure to consummate the Closing, Purchaser's breach of its covenants in the Agreement or the failure to obtain the South Dakota Division of Banking's approval of the Trust Company Change in Control, Purchaser will promptly pay Seller a fee equal to $50,000. |
| **Transfer Taxes** | To the extent not exempt under section 1146 of the Bankruptcy Code, Purchaser shall pay all transfer taxes. |
| **Private Sale/Ability to Solicit Additional Bids** | The Debtors do not intend to conduct an auction for the sale of the Interests, which have been subject to marketing efforts as described herein.

However, as set forth in Section 5.2 of the Agreement, from and after the date thereof until three days before the Sale Hearing, |

| | Seller may solicit bids for the sale of the Interests and respond to inquiries or offers to purchase DCI. After such period, Seller may not solicit bids for the sale of the Interests, but may still respond to bona fide proposals for an Alternative Transaction if Seller determines in good faith, in consultation with the Committee, that such proposal constitutes a higher or otherwise better offer for the interests and Seller gives prompt written notice to Purchaser of Seller's intention to engage in discussions with the third party submitting such proposal. |
|---|---|
| **Fiduciary Out** | The Agreement may be terminated by Seller if Seller or the board of directors of Seller determines that proceeding with the Transactions or failing to terminate the Agreement would be inconsistent with its fiduciary duties. |
| **Sale of Avoidance Actions** | The Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| **Sale of Causes of Actions** | The sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

13.     In addition to the material terms of the Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| **Sale to an Insider** | As described above. *See* Local Rule 6004-1(b)(iv)(A). |
|---|---|
| **Agreements with Management** | Purchaser has not discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment. *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | As described above. *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted, as described above. *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadline** | As described above. *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None. *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchaser** | None. *See* Local Rule 6004-1(b)(iv)(G). |

| Use of Proceeds | None. *See* Local Rule 6004-1(b)(iv)(H). |
|---|---|
| Tax Exemption | None. *See* Local Rule 6004-1(b)(iv)(I). |
| Record Retention | Not applicable. The Debtors are not selling substantially all of their assets under the Agreement. *See* Local Rule 6004-1(b)(iv)(J). |
| Sale of Avoidance Actions | None, as described above. *See* Local Rule 6004-1(b)(iv)(K). |
| Requested Findings as to Successor Liability | A condition to Closing is entry of the Order, which shall provide that Purchaser under no circumstances shall be deemed to be a successor of the Debtors. *See* Local Rule 6004-1(b)(iv)(L). |
| Sale Free and Clear of Unexpired Leases | Not applicable. *See* Local Rule 6004-1(b)(iv)(M). |
| Credit Bid | Not applicable. *See* Local Rule 6004-1(b)(iv)(N). |
| Relief from Bankruptcy Rule 6004(h) | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h). *See* Local Rule 6004-1(b)(iv)(O). |

14. Certain of the schedules to the Agreement contain confidential non-Debtor commercial information that has been filed in a redacted format (the "Confidential Information"). The Confidential Information consists of the identities and descriptions of employment arrangements of certain employees of DCI and does not relate to the economic terms of the proposed Sale Transaction. The Debtors will provide counsel to the U.S. Trustee and the Committee (collectively, the "Disclosure Parties") with unredacted versions of the schedules on a highly confidential basis.

**Relief Requested**

15. By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing and approving the Sale Transaction, free and clear of all Liens (as defined in the Agreement), other than Permitted Encumbrances (as defined in the Agreement); (b) authorizing and approving Seller's entry into, and performance under, the Agreement; (c) authorizing the Debtors to file certain schedules to the Agreement under seal; and (d) granting related relief.

**Basis for Relief**

I.   **The Court Should Approve the Sale Under 11 U.S.C. § 363(b).**

16.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).  In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11).

17.     Courts have considered the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the

parties have acted in good faith. *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL

32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176

(D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS

5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

       A.      <u>A Sound Business Justification Exists for the Sale</u>

       18.     A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business exists where such sale is necessary to maximize and preserve the

value of the estate for the benefit of creditors and interest holders. *See, e.g.*, *In re Mushroom*

*Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to

protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four*

*B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir.

1997).

       19.     Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private

sales or sales without an auction and courts in this district have held that a debtor may conduct a

private sale when a good business reason exists. *See, e.g.*, *In re RTI Holding Company, LLC*,

No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for

approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I.

435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks*

*Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited

partnership interests and limited liability corporation interests for approximately $22.8 million);

*In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the

private sale of limited partnership interests for approximately $8 million).

       20.     The proposed Sale Transaction represents a sound exercise of the Debtors'

business judgment and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.

The Debtors believe that a prompt sale of the Interests will enable the Debtors to defray or avoid any further and additional operational, carrying or other expenses associated with the Interests. DCI is also no longer useful to the Debtors' business given the Debtors' sale of LedgerX and that it is unlikely for the Debtors to sell or restart FTX US.   As a result, selling or transferring the Interests pursuant to the proposed Sale Transaction in a private sale is the most efficient and cost-effective way of minimizing costs to the estates while maximizing the value for the benefit of the estates.  *See* Coverick Declaration ¶ 11.  As such, the Debtors submit that good business reason exists for conducting a private sale under the circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

      B.      The Sale Transaction Satisfies the Entire Fairness Standard

      21.      When reviewing a transaction between an insider of a debtor and the debtor, courts have generally supplanted the "business judgment rule" with the "entire fairness" standard.  In applying the entire fairness standard, courts examine the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration.  *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010) (noting that parties are required to exercise "due care" when entering into an interested transaction.); *Citicorp Venture Capital, Ltd.* v. *Comm. of Creditors Holdings Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein.") (citation omitted), *aff'd*, 160 F.3d 982 (3rd Cir. 1998).

      22.      The inquiry typically focuses on two aspects, "fair dealing" and "fair price," both of which must be examined together in resolving the ultimate question of entire

fairness.  *Bayou Steel BD, L.L.C.* v. *Black Diamond Cap. Mgmt. L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 651 B.R. 179 (Bankr. D. Del. 2023).  Fair dealing "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained."  *Id*. at 187.  Fair price "relates to the economic and financial considerations" in evaluating the proposed transaction.  *Id*.

23.     With respect to fair dealing, the Sale Transaction was negotiated at arm's-length between Purchaser, on the one hand, and Seller, on the other hand, represented by the Debtors' advisors.  With respect to fair price, the Debtors ensured that sale of the Interests would reflect their fair market value by, robustly marketing the Interests, with the assistance of A&M, and conducting arm's-length negotiations.  The Debtors carefully considered and analyzed the offer as set forth in the Agreement in comparison to their other options and concluded that a sale of the Interests will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors.  Accordingly, the Debtors submit that the Sale Transaction satisfies the entire fairness standard.

C.     <u>Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties</u>

24.     Notice of this Motion has been provided to the following parties:  (A) the U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (D) any party that has expressed an interest in purchasing the Interests during the last six months; (E) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission, the South Dakota Division of Banking and the United States Department of Justice; and (F) any other party that has requested notice pursuant to Bankruptcy

Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

> D.    <u>The Sale Will Produce a Fair and Reasonable Price for the Property.</u>

25.    The Debtors believe that the sale of the Interests to Purchaser through a private sale is the best way to maximize value for their estates.

26.    The Debtors believe that the Purchase Price for the Interests is fair and reasonable.  As explained above, the Debtors robustly marketed the Interests, with the assistance of A&M, and conducted an arm's-length negotiations.  The Debtors carefully considered and analyzed the offer as set forth in the Agreement in comparison to their other options and concluded that a sale of the Interests will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors.  Among the offers received by the Debtors, Purchaser's offer is the highest or otherwise best offer and would provide a greater recovery for the Debtors' estates.  *See* Coverick Declaration ¶ 8.

27.    As set forth in section 5.2(a) of the Agreement, the Purchase Price is also subject to any higher or better offers from any third party in the form of an Alternative Transaction under the Agreement, which can be solicited for up to three days prior to the Sale Hearing.  Further, as provided by section 7.1(g) of the Agreement, the Purchase Price is also subject to a "fiduciary out" where the Agreement can be terminated by the board of directors (or similar governing body) of Seller if it is determined to be inconsistent with its fiduciary duties.  In addition, pursuant to section 5.2(b) of the Agreement, if an Alternative Transaction is received by the Debtors, Seller has the right, but not the obligation, to terminate the Agreement upon entering into a definitive agreement with respect to such Alternative Transaction.  Further, section 7.2 of the Agreement provides for a reverse termination fee payable by Purchaser to Seller to compensate the Debtors' estates in the event that the Sale Transaction is terminated in

certain situations, which provides further protection of value for the benefit of the Debtors'

estates.  Accordingly, the Debtors submit that the proposed Sale Transaction will produce a fair

and reasonable price.

      E.     <u>The Parties Have Acted in Good Faith and Purchaser Should Be Entitled to the</u>
<u>Good Faith Protections of Section 363(m) of the Bankruptcy Code.</u>

      28.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's

interest in property purchased from the debtor notwithstanding that authorization of the sale

conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section

363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

      29.     Section 363(m) "reflects the . . . 'policy of not only affording finality to

the judgment of the bankruptcy court, but particularly to give finality to those orders and

judgments upon which third parties rely.'"  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147

(3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th

Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that

section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts

in maximizing the price for assets sold in such proceedings").

      30.     While the Bankruptcy Code does not define "good faith," the Third Circuit

has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re*

*Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's

conduct in connection with a sale must usually amount to "fraud, collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

31.     The Debtors submit that the terms and conditions of the Agreement have been negotiated at arm's length without any indication of fraud or collusion between Seller and Purchaser. The Debtors believe that Purchaser has not engaged in any conduct that would indicate or constitute a lack of good faith. *See* Coverick Declaration ¶ 14. Accordingly, the Debtors request the finding that Purchaser is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.     The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

32.     The Debtors also request authorization to sell the Interests free and clear of all Liens, other than Permitted Encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Interests.

33.     The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

35.    Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f). *See, e.g., In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

36.    The Debtors submit that the Sale Transaction satisfies one or more of the requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have consented to the Sale Transaction, and the Interests may be sold free and clear of all liens, claims, interests and encumbrances.  *See, e.g., Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the

Debtor submits that any holder of liens, claims and encumbrances against or interests in the Interests could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests. *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del. 2021).

37.    A sale free and clear of all liens, claims, interests and encumbrances is necessary to maximize the value of the Interests.  Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances).  Purchaser would not have entered into the Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchaser free and clear of all Liens (other than Permitted Encumbrances).  *See* Coverick Declaration ¶ 17.

38.    Furthermore, any Liens (other than Permitted Encumbrances) existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Interests free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

## III.    Information Contained in the Schedule Is Confidential Commercial Information and Should Be Filed Under Seal.

39.    The Debtors respectfully request that the Confidential Information in the Seller Disclosure Schedule to the Agreement (the "Schedule") be redacted and filed under seal. The Schedule contains and the Confidential Information consists of substantial sensitive

commercial information concerning the identities and descriptions of employment arrangements of certain employees of DCI the public disclosure of which would have an adverse impact on DCI and Seller, as well as these individual employees.  The Debtors will provide counsel to the U.S. Trustee and the Committee (collectively, the "<u>Disclosure Parties</u>") with unredacted versions of the Schedule on a highly confidential basis.

40.     Bankruptcy Code section 107(b) authorizes the issuance of orders that protect parties from the potential harm resulting from the disclosure of confidential information. Specifically, section 107(b) states that "[o]n request of a party in interest, the bankruptcy court shall . . . (1) protect an entity with respect to a trade secret or other confidential research, development, or commercial information . . . ."  Similarly, Bankruptcy Rule 9018 and Local Rule 9018-1 authorize the filing under seal of documents containing confidential information.

41.     The Debtors respectfully submit that the Confidential Information in the Schedule is of a sensitive, confidential and proprietary nature, and thus, is confidential commercial information as contemplated by section 107 of the Bankruptcy Code.  "Commercial information" has been defined as "information which would result in an 'unfair advantage to competitors by providing them with information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (quoting *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2d Cir. 1994)).  Unlike its counterpart in rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause."  *In re Orion Pictures Corp.*, 21 F.3d at 28.  If an interested party is requesting to seal information covered by section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no discretion to deny the application."  *Id.* at 27.  Moreover,

the resulting order should be broad, that is "any order which justice requires." FED. R. BANKR. P. 9018; *In re Global Crossing, Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003). Courts are required to provide such protections, "generally where open inspection may be used as a vehicle for improper purposes." *In re Orion Pictures Corp.*, 21 F.3d at 27. Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *In re Global Crossing, Ltd.*, 295 B.R. at 724.

42.     The Confidential Information constitutes "commercial information" subject to the protection of section 107(b). Specifically, the Confidential Information contained in the Schedule consists of highly sensitive commercial information regarding the identities and descriptions of employment arrangements of certain employees of DCI. These employees are employees of a non-Debtor entity. As a result, public disclosure of their identities and the terms of their employment arrangements with DCI would have an adverse impact on DCI and Seller, as well as these individuals. By contrast, no party in interest will be prejudiced by the Confidential Information being redacted from the public record because such information does not relate to the economic terms of the proposed Sale Transaction and shall be disclosed in their entirety to the Court and the Disclosure Parties. Accordingly, the Debtors submit that authorizing the Debtors to file the Confidential Information under seal is appropriate under section 107(b) of the Bankruptcy Code.

43.     This Court has authorized debtors in other chapter 11 cases to file under seal similar confidential information in connection with other sale transactions. *See, e.g.*, *In re Mallinckrodt PLC, et al.*, Case No. 20-12522 (JTD) (Oct. 22, 2021), D.I. 4930 (authorizing debtors to file purchase agreement and related information under seal); *In re Carbonlite*

*Holdings LLC, et al.*, Case No. 21-10527 (JTD) (Jun. 22, 2021), D.I. 650 (authorizing sealing of certain schedules to purchase agreement)

44.     Therefore, the Debtors submit for the reasons set forth herein that cause exists under section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018 for the Debtors to file the Confidential Information under seal, subject to disclosure to the Disclosure Parties.

### Bankruptcy Rules 6004(a) and 6004(h)

45.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rule 6004(h).  In light of the Debtors' reorganization and plan process efforts and the importance of an efficient timeline for maximizing the value of the Interests, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders and continue to progress these Chapter 11 Cases.  Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

### Notice

46.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (d) any party that has expressed an interest in purchasing the Interests during the last six months; (e) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission, the South Dakota Division of Banking and the United States Department of Justice; and (f) any other party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

### **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: February 9, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*