## **EXHIBIT C**

**Coverick Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF STEVEN P. COVERICK IN SUPPORT OF
MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
APPROVING SALE OF INTERESTS IN DIGITAL CUSTODY INC. FREE AND CLEAR
OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING
AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE
AND SALE AGREEMENT; (III) AUTHORIZING DEBTORS TO FILE CERTAIN
SCHEDULES TO THE PURCHASE AND SALE AGREEMENT UNDER SEAL; AND
(IV) GRANTING RELATED RELIEF**

I, Steven P. Coverick, hereby declare under penalty of perjury:

1.      I am a Managing Director at Alvarez & Marsal North America, LLC

("A&M"), a restructuring advisory services firm specializing in interim management, crisis

management, turnaround consulting, operational due diligence, creditor advisory services and

financial and operation restructuring.

2.      I have more than 10 years of restructuring and financial advisory

experience across various industries, including energy, technology, media, telecommunications,

logistics and healthcare. I have a Bachelor's Degree from the Kelley School of Business at

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete
list of such information may be obtained on the website of the Debtors' claims and noticing agent at
https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is
Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Indiana University, am a CFA® charterholder, and am recognized as a Certified Turnaround Professional by the Turnaround Management Association.

3.      Since joining A&M, I have been involved in numerous Chapter 11 restructurings, including Seadrill Limited, iHeart Media, Inc., White Star Petroleum Holdings, LLC, Templar Energy LLC, and Expro International Group Holdings Limited.

4.      I submit this declaration (this "<u>Declaration</u>") in support of the *Motion of Debtors For Entry of an Order (i) Authorizing and Approving Sale of Interests in Digital Custody Inc. Free and Clear of all Liens, Claims, Interests and Encumbrances, (ii) Authorizing and Approving Debtors' Entry Into, and Performance Under, The Purchase and Sale Agreement, (iii) Authorizing Debtors to File Certain Schedules to the Purchase and Sale Agreement Under Seal; and (iv) Granting Related Relief* (the "<u>Motion</u>").[2]

5.      I am not being compensated separately for this testimony other than through payments received by A&M as financial advisor retained by FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>").  Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by A&M professionals involved in advising the Debtors in the above-captioned case (the "<u>Chapter 11 Cases</u>") or information provided to me by the Debtors.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am authorized to submit this Declaration on behalf of the Debtors.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

6.      A&M assisted the Debtors in their marketing process to solicit potential investors in the Interests.  A&M's efforts included reaching out to a proprietary list of potential acquirers of the Interests.  In total, A&M reached out to a total of twelve parties—nine who were participants in the FTX exchanges sale process and expressed an interest in the Interests and three who had previously expressed interest in buying the Interests or had a relationship with DCI's management.

7.      Following A&M's marketing campaign for the Interests, the Debtors received requests for additional information from four parties, all of whom executed non-disclosure agreements and were provided access to information on the Interests.  By December 15, 2023, the Debtors had received indications of interest from three prospective purchasers of the Interests, including one from Purchaser.

8.      Of these three prospective purchasers, the Debtors determined that it was in the best interest of their estates and their constituents to proceed with Purchaser and work toward executing a mutually-agreeable transaction based on Purchaser's superior offer, ability to execute the Sale Transaction within a short time frame, and relationship with Terence J. Culver. Mr. Culver is a member of the executive management team and the board of directors of DCI, which the Debtors believe will be advantageous in aiding Purchaser in obtaining regulatory approval for the Sale Transaction in an expeditious manner.  After arms'-length negotiations, Seller and Purchaser entered into that certain Purchase and Sale Agreement, dated as of February 6, 2024 (the "Agreement"), whereby Purchaser agreed to purchase the Interests for aggregate consideration of $500,000 in cash *plus* the Acquired Cash Amount (as defined in the Agreement) (collectively, the "Purchase Price").

9.      Based on my experience, I believe the Debtors have thoroughly and fairly marketed the Interests and conducted the related sale process in good faith.

10.     The Debtors decided to monetize the Interests through a private sale based on the robust marketing process and the desire for a prompt sale of the Interests.  The Debtors determined that a prompt sale of the Interests would enable the Debtors to defray or avoid any further and additional operational, carrying or other expenses associated with the Interests, especially given that DCI was also no longer useful to the Debtors' business.  DCI was originally acquired to be incorporated into the Debtors' FTX US or LedgerX businesses, and those business have either been shut down or sold.

11.     Additionally, I believe that a longer process or the implementation of formal bidding procedures for the sale of the Interests would not have resulted in a higher or better value to the estate.  A private sale enabled the Debtors to avoid the additional costs, expenses and time associated with a formal bidding and sale process.  As a result, the Debtors determined that selling the Interests now in a private sale was the most efficient and cost-effective way of minimizing costs to the estates while maximizing the value for the benefit of the estates.

12.     Based on my experience, involvement in the bidding process and review of available alternatives, it is my opinion that there is currently no better or higher offer available for the Interests.  I believe that all interested persons and entities have been afforded a full, fair and reasonable opportunity to make a higher or better offer to purchase the Interests and will also receive notice of the Sale Motion.

13.     I believe that Seller's entry into the Agreement represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates,

-4-

creditors, and other parties in interest.  Further, it is my belief that the Debtors determined to sell the Interests after thorough consideration of the terms of the Agreement and other alternatives.

14.     I also believe that the Purchase Price for the Interests contemplated by the Agreement is fair and reasonable.  The Debtors, with the assistance of A&M, ensured that sale of the Interests would reflect their fair market value by thoroughly marketing the Interests and conducting arm's-length negotiations.  In my role as the Debtors' financial advisor, I reviewed the Agreement and based on my experience, believe the Agreement is the result of extensive, arm's-length and good-faith negotiations between the parties, and that such negotiations were free of any collusion.

15.     Purchaser is the operator of a platform designed to launch new cryptocurrency tokens and to help startups run their initial coin offerings in compliance with the U.S. regulations.  It is my understanding that the Sale Transaction does not involve a consolidation, succession or merger of Purchaser and the Debtors and/or the Debtors' estates.

16.     Pursuant to the Agreement, the Purchase Price is subject to higher or better offers from any third party which the Debtors may solicit until up to three days prior to the Sale Hearing in the form of an "Alternative Transaction."  It is also subject to a "fiduciary out" which provides that the Agreement can be terminated by the board of directors (or similar governing body) of Seller if it is determined to be inconsistent with the fiduciary duties of the board of directors (or similar governing body).  Finally, I believe that not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the Interests.  I believe that Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated

thereby if the sale of the Interests was not free and clear of all Liens (other than Permitted Encumbrances), or if Purchaser would, or in the future could, be liable for any such interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 9, 2024.

*/s/  Steven P. Coverick*
Steven P. Coverick
Alvarez & Marsal North America, LLC
Managing Director