**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF SUNIL KAVURI, AHMED ABD-EL-RAZEK, NOIA CAPITAL SÀRL AND PAT RABITTE TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (I) PROCEDURES FOR SALE OF DEBTORS' EQUITY INTERESTS IN ANTHROPIC, PBC; (II) SALE(S) OF SUCH EQUITY INTERESTS IN ACCORDANCE WITH SUCH PROCEDURES FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (III) REDACTION AND FILING UNDER SEAL OF CERTAIN CONFIDENTIAL COMMERCIAL INFORMATION IN THE SALE PROCEDURES**

Sunil Kavuri, Ahmed Abd-El-Razek, Noia Capital SÀRL and Pat Rabitte (collectively, the "**FTX Customers**"), by and through undersigned counsel, submit this objection (the "**Limited Objection**") to the *Motion of Debtors for Entry of an Order Authorizing and Approving (I) Procedures for Sale of Debtors' Equity Interests in Anthropic, PBC; (II) Sale(s) of such Equity Interests in Accordance with such Procedures Free and Clear of any Liens, Claims, Interests and Encumbrances; and (III) Redaction and Filing Under Seal of Certain Confidential Commercial Information in the Sale Procedures* (the "**Anthropic Sale Motion**") and in support thereof state as follows:

**PRELIMINARY STATEMENT**

1.    Through the Anthropic Sale Motion, the Debtors seek an order authorizing and approving certain proposed bidding and sale procedures (the "**Bid Procedures**") in connection with one or more transactions involving the sale  (each a "**Sale**" and collectively, the "**Sales**") of the Debtors' equity interests in Anthropic, PBC (the "**Assets**") pursuant to section 363 of

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

ME1 47657999v.3

Title 11 of the United States Code (the "**Bankruptcy Code**").  The Bid Procedures request, *inter alia*, authority to enter one or more private sale agreements (each a "**Private Sale**" and collectively, the "**Private Sales**") to transfer the Assets to an undisclosed party, for an undisclosed price without notice to the parties who hold rights in the Assets, included an asserted constructive trust.[2]

2.    Through this Limited Objection, the FTX Customers oppose the Bid Procedures set forth in the Anthropic Sale Motion, as they suffer from two fatal flaws.[3]  First, through the Anthropic Sale Motion, the Debtors seek to sell property that is not part of the Debtors' estates, in contravention of the Bankruptcy Code.[4]  The FTX Customers have already filed their *Complaint for Declaratory Judgment* (the "**Complaint**"), Adv. Proc. No. 24-50012-JTD (D.I. 1), seeking a declaration that all assets customers deposited, held, received or acquired on the FTX.com platform (collectively, the "**Digital Assets**"),[5] are customer property, and not property of the Debtors' estates under section 541 of the Bankruptcy Code.  The Complaint remains pending, and the issues raised therein are unresolved.

3.    Yet, the Debtors' own admissions, as well as public record, including statements by the Commodity Futures Trading Commission ("**CFTC**"), the Securities and Exchange Commission ("**SEC**"), and guilty pleas by former controllers of the Debtors, all make clear: (A) that the Digital Assets belonged to the FTX Customers and the millions of other customers that deposited, held, received, or acquired such Digital Assets on the FTX.com platform, not the Debtors; and (B) that the Debtors misappropriated and misused those Digital Assets in violation

---

[2] *See* the *Complaint for Declaratory Judgment* filed by the FTX Customers on January 31, 2024, as Docket Number 1 in Adversary Proceeding Number 24-50012-JTD.

[3] Although this Objection focuses on the Bid Procedures set for the Anthropic Sale Motion, the he FTX Customers expressly reserve and preserve the right to supplement this Objection or to assert additional objections at the hearing on the Anthropic Sale Motion if the Debtors indicate that they do not intend to convene a second hearing to approve any Sales but, instead, intend to exclusively sell the Assets through Private Sales for which no notice will be provided.

[4] *See* 11 U.S.C. 363(b)(1) (authorizing the Debtors' only to "use, sell or lease…property of the estate.")

[5] FTX Customers believe the scope of the investigation by the examiner should include an investigation of whether the Digital Assets are property of the Debtors' estates.

of governing law and FTX.com's Terms of Service (the "**Terms of Service**"), including to acquire interests in various businesses. For example, during his criminal trial last year, Mr. Bankman-Fried confirmed that the Assets were purchased with Digital Assets embezzled from customers' deposits.[6] Moreover, the clear and unambiguous language of the FTX.com Terms of Service state that title to the Digital Assets on the FTX.com platform remained at all times with the customer and did not transfer to FTX Trading Ltd. ("**FTX Trading**" or "**FTX.com**"), which owned and controlled the FTX.com platform. As alleged in the Complaint, the Digital Assets held in customer accounts are not, and never have been, the property of any Debtors' estate.[7]

4.      Against this backdrop, the FTX Customers have significant concerns regarding the sale of the Assets and the potential effects on the interest of FTX.com customers, who are believed to be the most significant stakeholders in these cases. The Anthropic Sale Motion does not disclose or discuss the source of funds used by the Debtors to acquire the Assets that they seek to liquidate. It also fails to disclose whether and how the proceeds of any sales will be segregated and protected until the issue of who owns or has superior rights to the proceeds is sorted.[8] The FTX Customers, thus, harbor significant concerns regarding whether the Debtors have fully evaluated the extent to which the Assets could serve as a source of value to the FTX Customers, who were undisputedly defrauded and who may otherwise be unable to recover their stolen assets.

5.      Second, the Anthropic Sale Motion fails to provide adequate notice under applicable bankruptcy law. Generally, full disclosure by a debtor is necessary for the "effective

---

[6] *See, e.g., U.S. v. Bankman-Fried*, 1:22-cr-673-LAK-1, Doc. No. 370 (S.D.N.Y. Oct. 18, 2023) (Trial Tr. attached as **Exhibit A**) (testimony of Peter Easton regarding transfer of $500 million of customers' deposits to Anthropic, as reflected on related trial exhibits); *U.S. v. Bankman-Fried*, 1:22-cr-673-LAK-1, Doc. No. 380 (S.D.N.Y. Oct. 31, 2023) (Trial Tr.) (testimony of Samuel Bankman-Fried regarding transfer of $500 million of customers' deposits to Anthropic).

[7] Adv. Proc. No. 24-50012-JTD, Doc. No. 1.

[8] *See, e.g., In re DVI, Inc*., 306 B.R. 496, 504-05 (Bankr. D. Del. 2004) ("[C]ourrts have permitted the sale of property free and clear of constructive trust claims or equitable liens so long as the attach to the proceeds of sale.") (citations omitted).

functioning of the federal bankruptcy system."[9]  Yet, the Debtors seek approval to sell the Assets through a series of Private Sales to undisclosed parties, for undisclosed amounts, without any notice to the FTX Customers.  Such veil of secrecy removes any right that the FTX Customers might have under section 363(k) of the Bankruptcy Code to credit bid the value of any equitable lien they hold against the Assets.  The lack of notice to parties in interest, including the FTX Customers, is a second, independent reason that the Anthropic Sale Motion should be denied.

6.      At the end of the day, the FTX Customers do not seek to stand in the way of any transactions that would maximize the value of ***the Debtors' estates***, but the Debtors have failed to satisfy the threshold question of whether they even have a right to sell the Assets, especially to an undisclosed buyer for an undisclosed amount without any notice to the FTX Customers, whose property was stolen to acquire the Assets.  Thus. for the reasons set forth in this Limited Objection, the Anthropic Sale Motion should be denied.

## JURISDICTION AND STANDING

7.      Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

8.      The FTX Customers have standing to be heard on this Limited Objection pursuant to 11 U.S.C. § 1109(b).

## FACTUAL BACKGROUND

9.      On or after November 11, 2022, the Debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

10.     On December 15, 2022, the U.S. Trustee appointed an official committee of unsecured creditors (the "**Committee**").  Doc. No. 231.

---

[9] *In re Kane*, 628 F.3d 631, 636 (3d. Cir. 2010).

ME1 47657999v.3

11.     On February 3, 2024, the Debtors filed the Anthropic Sale Motion, which seeks, *inter alia*, approval of the Bid Procedures discussed above.  Doc. No. 6952.

12.     On February 5, 2024, the Court entered the *Order Granting Motion for Entry of an Order Shortening the Time for Motion of Debtors for Entry of an Order Authorizing and Approving (I) Procedures for Sale of Debtors' Equity Interests in Anthropic, PBC; (II) Sale(s) of Such Equity Interests in Accordance with Such Procedures Free and Clear of any Liens, Claims, Interests and Encumbrances; and (III) Redaction and Filing Under Seal of Certain Confidential Commercial Information in the Sale Procedures* ("**Order Shortening Notice**"). Doc. No. 6976.  Pursuant to the Order Shortening notice, today is the deadline for the FTX Customers to object to the Anthropic Sale Motion's Bid Procedures.

13.     Additional factual background regarding the claims of the FTX Customers is set forth in the Complaint and incorporated herein by reference.

## LIMITED OBJECTION

14.     The FTX Customers file this Limited Objection to preserve and protect their rights to their Digital Assets, the proceeds of which the Debtors seek to liquidate through the Sale of the Assets.

### A.     DEBTORS CANNOT SELL THE ASSETS, AS THEY ARE NOT PROPERTY OF THE ESTATES

15.     Section 363(b)(1) of the Bankruptcy Code only permits a Debtor to sell "property of the estate."  11 U.S.C. § 363(b)(1)

16.     Section 541(a) of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The Third Circuit has interpreted this phrase inclusively, "to bring into the estate all interests of the debtor, whether tangible or intangible, at the commencement of the case." *Safety-Kleen Creditor Trust v. Eimco Process Equip. Co. (In re Safety-Kleen Corp.),* 331 B.R. 591, 594 (Bankr. D. Del. 2005); *see also In re Kane,* 628 F.3d 631, 637 (3d

Cir. 2010) ("Section 541(a) was intended to sweep broadly [and] to include all kinds of property, including tangible or intangible property, [and] causes of action.") (quoting *Westmoreland Human Opportunities, Inc. v. Walsh,* 246 F.3d 233, 241 (3d Cir. 2001)).

17.     The expansive scope of a Debtor's estate is tempered, however, by subsequent provisions of the Bankruptcy Code.  Among other things, section 541(b)(1) of the Bankruptcy Code expressly excludes "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1).  When interpreting this provision, the Supreme Court noted "that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205, n.10 (1983).

18.     Similarly, section 541(d) of the Bankruptcy Code excludes:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).  When interpreting this section, the Third Circuit has held that, "[t]he legislative language of § 541 makes clear that funds held by a debtor for a third party are not part of the debtor's bankruptcy estate." *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir.1994).  In other words, if, as of the Petition Date, "the debtor holds legal, but not equitable, title to property, it is excluded from the estate pursuant to § 541(d)." *Ryan v. Branko Prpa MD, LLC*, 55 F.4th 1108, 1112 (7th Cir. 2022).

19.     The scope of a Debtor's estate is "within the jurisdiction of the Bankruptcy Court." *Navarro v. Patriot Nat'l, Inc. (In re Patriot Nat'l, Inc.)*, 623 B.R. 696, 706 (D. Del. 2020).

20.     Here, there is no dispute that, as of the Petition Date, the Debtor only held legal title to the FTX Customers' Digital Assets.  Among other things, the Debtors admit that their

business ventures, such as the Assets, were "all paid for using comingled and misappropriated funds Doc. No. 1727, ¶ 4.  Moreover, the assets have already been traced from customer deposits to Anthropic.  *See* Ex. A, 1739:25-1740:11 (testimony of Peter Easton regarding transfer of $500 million of customers' deposits to Anthropic).  Samuel Bankman-Fried has even admitted that Anthropic was purchased with $500 million of customers' deposits. ; *U.S. v. Bankman-Fried*, 1:22-cr-673-LAK-1, Doc. No. 380 (S.D.N.Y. Oct. 31, 2023) (Trial Tr.).  Furthermore, As stated above, the clear and unambiguous Terms of Service, as well as public records, including statements by the Debtors, the CFTC, the SEC, guilty pleas by former controllers of the Debtors and testimony in Samuel Bankman-Fried's criminal trial support the unequivocal conclusion that the Assets were purchased with the FTX Customers' Digital Assets. Based on the undisputed evidence, including the Debtors' own admission, the Digital Assets held in customer accounts are not, and never have been, the property of any of the Debtors' estates.

**B.      ANY SALE IS SUBJECT TO THE RIGHT TO CREDIT BID**

21.      Even though the Bankruptcy Code does not authorize the Debtors to sell the FTX Customers' Digital Assets, the Debtors may argue that "[C]ourrts have permitted the sale of property free and clear of constructive trust claims or equitable liens so long as the attach to the proceeds of sale."  *In re DVI, Inc*., 306 B.R. 496, 504-05 (Bankr. D. Del. 2004).

22.      This puts the cart before the horse.  Under Section 363(k) of the Bankruptcy Code, the FTX Customers have a right to credit bid their interest if they hold an equitable lien on the proceeds of the sale of Anthropic.  11 U.S.C. § 363(k) ("At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.")  Permitting the Debtors to sell Anthropic to undisclosed parties for

7

undisclosed amounts without any notice to the FTX Customers and without any corresponding ability to credit bid deprives them not only of their Digital Assets, but also of any right to reclaim the same.

23.     Accordingly, approval of the Motion should be conditioned upon the provision of advance notice by the Debtors to the FTX Customers of any potential sales, with the opportunity to credit bid their rights in the Assets.  Additionally, to the extent that the Court permits the Sale, the proceeds should be held in a segregated account and the rights of the customers to those funds should not be prejudiced.

WHEREFORE, Sunil Kavuri, Ahmed Abd-El-Razek, Noia Capital SÀRL and Pat Rabitte respectfully request that the Court deny the Anthropic Sale Motion filed by the Debtors and grant such other and further relief as the Court deems just and proper.

**MCCARTER & ENGLISH, LLP**

Date: February 16, 2024          */s/ Shannon D. Humiston*
Shannon D. Humiston (No. 5740)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
Tel:  302-984-6300
Fax: 302-984-6399
Email:shumiston@mccarter.com

 -    *and -*

David Adler, Esq.
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Phone: (212) 609-6847
Fax :    (212) 609-6921
Email: dadler@mccarter.com

*Counsel for Sunil Kavuri, Ahmed Abd-El-Razek,
Noia Capital SÀRL and Pat Rabitte*

ME1 47657999v.3