**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Nos. 6950, 7549, 7552** |
|---|---|

**OMNIBUS REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (I) PROCEDURES FOR SALE OF DEBTORS' EQUITY INTERESTS IN ANTHROPIC, PBC; (II) SALE(S) OF SUCH EQUITY INTERESTS IN ACCORDANCE WITH SUCH PROCEDURES FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (III) REDACTION AND FILING UNDER SEAL OF CERTAIN CONFIDENTIAL COMMERCIAL INFORMATION IN THE SALE PROCEDURES**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this reply (this "Reply") in support of the *Motion of Debtors for Entry of an Order Authorizing and Approving (I) Procedures for Sale of Debtors' Equity Interests in Anthropic, PBC; (II) Sale(s) of Such Equity Interests in Accordance with Such Procedures Free and Clear of Any Liens, Claims, Interests and Encumbrances; and (III) Redaction and Filing Under Seal of Certain Confidential Commercial Information in the Sale Procedures* [D.I. 6950] (the "Motion")[2] and in response to (i) the limited objection by Sunil Kavuri, Ahmed Abd-El-Razek, Noia Capital SÀRL and Pat Rabitte (collectively, the "Kavuri Parties") to the Motion (the "Kavuri Objection") [D.I. 7549] and (ii) the objection by Simon

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or the Agreement filed concurrently with the Motion, as applicable.

Carter (together with the Kavuri Parties, the "Objecting Parties") to the Motion (the "Carter Objection", together with the Kavuri Objection, the "Objections") [D.I. 7552]. As set forth below, a part of the Kavuri Objection is moot in light of the revised Order to be submitted to the Court. The rest of the Objections should be overruled and the Motion should be granted. In support of this Reply, the Debtors submit the *Declaration of Alexa J. Kranzley* (the "Kranzley Declaration") filed contemporaneously herewith and respectfully state as follows:

**Reply**

**A. The Anthropic Shares are the Property of the Estates, and the Objecting Parties Have Not Satisfied the Burden to Prove Otherwise.**

1. Success increases expectations. This Court's necessary ruling that digital assets in these Chapter 11 Case are to be valued in USD at the petition time was mandated by the Bankruptcy Code, supported without reservation by the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") and many other stakeholders, and not appealed. It shares the same premise with the active claims trading market, in which customer claims with different underlying digital assets have been trading *on a fungible, dollarized basis* for over a year. Yet some claim holders have responded to the good news of possible payment of full petition time value by wanting more for themselves to the detriment of others. These claim holders – whether original customers or speculators – want upside on their claim amount without having borne the downside. And they do not seek this upside for creditors generally in the form of post-petition interest available to all (which may or may not be on the table depending on the ultimate value of the estates and, critically, the resolution of billions in otherwise *pari passu* governmental claims). Instead, these holders seek a special recovery for their own specific type of historical digital asset claim or current trading strategy, paid from finite resources at the expense of other customers and

creditors. The next months of this case will see many different attempts by similar groups to capitalize on the words "customer," "customer property" and "victim" to exert leverage and frustrate the activity of these estates, all in the effort to negotiate a windfall at the expense of their neighbors. But they are not fiduciaries, have not done the work, do not bear the responsibility to be fair to everyone, and do not have the facts.

2. The Objections to the sale of the Anthropic Shares should be seen in this light. The Kavuri Objection relies on the *Complaint for Declaratory Judgment* filed by the Kavuri Parties on January 31, 2024 [D.I. 6863] (the "Kavuri Complaint"). The allegations in the Kavuri Complaint are neither new nor true. The Kavuri Complaint is a cut-and-paste from the adversary complaint filed by the Ad Hoc Committee over 14 months ago. That adversary proceeding, and the corresponding adversary proceeding brought by purported class representatives, led to the formation of the Ad Hoc Committee and the investigation of its professionals (at estate expense) into the complicated facts of these Chapter 11 Cases. Side-by-side with the Official Committee and the Debtors, the Ad Hoc Committee worked to identify and resolve any legal and equitable customer property and related tracing concerns in the best interests of *all* customers. After an unusually open, transparent and collaborative discussion, the Debtors announced a settlement of the customer property dispute for value, and this settlement was supported by the Ad Hoc Committee as well as all customers and customer representatives and other stakeholders who expressed an interest in being involved at the time.

3. Of course, as a procedural matter, those discussions and the resulting settlement do not bind the persons behind the Kavuri Complaint. The Debtors will address the allegations in the Kavuri Complaint in due course, along with any additional opt-out filings received by individual creditors or dissenting groups on the path to confirmation. For the

purposes of the current Motion, the Objections should be overruled because the mere allegation of a property interest as pled by the Objecting Parties is insufficient to sustain the Objections. The law and facts are clear. "[I]n cases where the bankruptcy debtor's ownership of property is challenged, the debtor has the initial burden to prove that it has legal title to the property. Thereafter, the burden shifts to the party challenging the bankruptcy estate, and the challenger must show that it holds beneficial interest in the property and that the bankruptcy debtor holds solely legal, not equitable, title." *In re United Western Bancorp, Inc.*, 558 B.R. 409, 421-422 (Bankr. D. Colo. 2016), *rev'd on other grounds and remanded.*

4. The Anthropic Shares are assets of the Debtors' estates. The Company Documents serve as indisputable evidence that Debtor Clifton Bay Investments LLC has legal title to the Anthropic Shares. As detailed in the Motion, Debtor Clifton Bay Investments LLC acquired a Modified Simple Agreement for Future Equity (the "M-SAFE", attached as an exhibit to the Kranzley Declaration) from Anthropic on October 5, 2021. On May 13, 2022, the M-SAFE was converted into 44,539,240 shares of Series B Preferred Stock. Moreover, since the commencement of these Chapter 11 Cases, the Debtors have openly and notoriously asserted that the Anthropic Shares are property of their estates held for sale. The Anthropic Shares were listed as a venture asset in the Ventures Silo in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24, Ex. A] and included in the Debtors' presentation materials at the first day hearing [D.I. 115-1]. The Debtors continued to include the Anthropic Shares as a venture investment in presentations to key stakeholders, in their schedules and statements and in their stakeholder plan negotiation materials. *See, e.g., Notice of Presentation to the Official Committee of Unsecured Creditors* [D.I. 507]; *Schedules of Assets and Liabilities of Clifton Bay Investments LLC* [D.I 2012]; *Notice of Presentation to Stakeholders* [D.I. 2463].

5.      Accordingly, the burden is on the Objecting Parties to prove that the Anthropic Shares are not property of the estates because the Debtors hold "solely" legal, not equitable, title – i.e., that the Debtors have no beneficial interest.  The Objecting Parties have not satisfied this burden.  The Kavuri Objection mentions the Kavuri Complaint, which is merely a set of allegations without evidentiary value.  Furthermore, the Kavuri Complaint fails to allege that the Kavuri Parties themselves even have an ownership interest in the Anthropic Shares, or in any other of the Debtors' investment assets.  The Kavuri Complaint only seeks, among other things, a declaratory judgment that "assets *customers* deposited, held, received, or acquired on the FTX.com platform" (defined by the Kavuri Parties as "Digital Assets") are customer property.  The Carter Objection falls even shorter of establishing his burden – Carter offers no evidence at all and has no pending complaint asserting a property interest of any kind.

6.      It is patently clear that the Anthropic Shares are not Digital Assets.  The Anthropic Shares have never been held, purchased or sold on the FTX.com platform.  No customer deposited the Anthropic Shares with FTX.com or is entitled to receive them in kind.  The Objecting Parties merely posit that somehow "their" "property" was used to acquire the Anthropic Shares without any explanation of how or a viable theory of tracing.  Accordingly, the Objecting Parties have not satisfied their burden to prove that the Anthropic Shares are not property of the Debtors' estates.

7.      The Objecting Parties do not question the Debtors' business judgment to sell the Anthropic Shares or the procedures for doing so (with the exception of the notice issue addressed in section C below), which are the typical objections interposed to a motion to sell property of an estate pursuant to section 363 of the Bankruptcy Code.  Instead, the Objecting Parties seek to frustrate a sale of the Anthropic Shares and the Debtors' purpose of maximizing

the value of the Anthropic Shares for the benefit of the Debtors' stakeholders, based on nothing but stale assertions and innuendo. This Court should reject this attempt and overrule the Objections.

8. To the extent that the Objecting Parties have a bona fide argument that they do actually own some or all of the Anthropic Shares, they could have at any time sought injunctive relief to enjoin any sale by the Debtors. Of course, an injunction has long been held by the Third Circuit to be an "extraordinary remedy" to be granted only in limited circumstances. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 586 (3d Cir. 2002). To obtain an injunction, the Objection Parties would need to satisfy the well-established factors: that the movant is likely to succeed on the merits, likely to suffer irreparable harm in the absence of relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Objecting Parties could never do so here, which is presumably why they have not even tried. The Motion should therefore be granted.

**B. The Objections Are Untimely and Barred by the Doctrine of Laches.**

9. A bankruptcy court may "exercise its discretion to deny a motion to dismiss as untimely based on the doctrine of laches." *In re Energy Future Holdings Corp.*, 561 B.R. 630, 645 (Bankr. D. Del. 2016) (Sontchi, J.); *see also In re Shea & Gould*, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997) (citing *In re Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988)). "A claim of laches requires the court to examine the equitable circumstances peculiar to each case to determine whether the plaintiff in asserting her rights was guilty of unreasonable delay that prejudiced the defendants." *In re Tishler*, 201 B.R. 608, 613 (Bankr. D. Conn. 1996). The defense of laches requires a showing that (i) there was a "delay in assertion of a claim"; (ii) "the delay is inexcusable"; and (iii) "undue prejudice results from the delay." *In re Energy*

*Future Holdings Corp.*, 561 B.R. at 645.

10. If the Objecting Parties honestly believed that they own the legal and beneficial rights to the Anthropic Shares, they have had 15 months since the commencement of the Chapter 11 Cases and 11 months since the Debtors filed the first sale motion to monetize one of their investment assets to commence an action to establish those rights *with admissible evidence*. Instead, the Kavuri Parties have sat idly by and not objected as the Debtors' estates sought, and obtained court approval to, liquidate assets, including substantially all of their digital assets holdings. The Objecting Parties have provided no reason or excuse for delay in taking action to prove any rights to the Anthropic Shares. The Objections interposed now on this basis undoubtedly prejudice the Debtors who have invested time and resources in marketing the Anthropic Shares and positioning the timing for a sale to benefit all stakeholders. Accordingly, the Objecting Parties should be barred from pursuing such Objections now in the context of the Motion.

**C. The Rest of the Kavuri Objection is Moot.**

11. The Kavuri Objection also requests that "approval of the Motion should be conditioned upon the provision of advance notice" of any potential sales to the Kavuri Parties. Kavuri Obj. ¶ 23. The Debtors have no intention of elevating the Kavuri Parties to the status of customer or creditor representatives in these Chapter 11 Cases, roles being filled by the Ad Hoc Committee and the Official Committee of Unsecured Creditors. However, the question is no longer relevant. Based on discussions with Anthropic and the nature of the expected marketing process, the Debtors have no need for the pre-approval mechanic (with respect to private sales at or above a certain price threshold) proposed in the original Motion and will be submitting a modified Order shortly without it. Any party-in-interest – regardless of motive – will have notice of the terms of any sale and the opportunity to object.


**Conclusion**

12. For the reasons stated above, the Court should overrule the Objections and grant the Motion.

Dated: February 19, 2024
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
bromleyj@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*