**Exhibit 1**

**M-SAFE**

Execution Version

THIS INSTRUMENT AND ANY SECURITIES ISSUABLE PURSUANT HERETO HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES.  THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED IN THIS M-SAFE AND UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM.

## ANTHROPIC, PBC

## M-SAFE
### (Simple Agreement for Future Equity)

THIS CERTIFIES THAT in exchange for the payment by Alameda Research Ventures LLC (the "**Purchaser**") of $500,000,000 (the "**Purchase Amount**") on or about October 5, 2021 Anthropic, PBC, a Delaware public benefit corporation (the "**Company**"), issues to the Purchaser the right to receive certain shares of the Company's Capital Stock, subject to the terms described below.

This M-SAFE is one of a series of Modified Simple Agreements for Future Equity containing substantially identical terms and conditions issued pursuant to that certain M-SAFE Purchase Agreement dated October 5, 2021 (the "Purchase Agreement").  Capitalized terms not otherwise defined herein have the meaning given them in the Purchase Agreement.

1.  *Events*

(a)  **Conversion Event**. If there is a Conversion Event before the termination of this M-SAFE, on the occurrence of such Conversion Event, this M-SAFE will automatically convert into the number of shares of the Company's Series B Preferred Stock (the "**Series B Preferred**") set forth opposite the Purchaser's name on Exhibit A to the Purchase Agreement at a price per share equal to $224.5211 (the "**M-SAFE Price**"). The Company shall provide notice of the Conversion Event to the Purchaser at least three (3) days prior to the Conversion Event.  The Company shall adopt and file with the Secretary of State of Delaware on or before the Conversion Event the Amended and Restated Certificate of Incorporation in the form attached to the Purchase Agreement as Exhibit F (the "Restated Certificate").

(b)  **Liquidity Event**.  If there is a Liquidity Event before the termination of this M-SAFE, this M-SAFE shall at the option of the Majority Purchasers convert into either (i) the right (subject to the liquidation priority set forth in Section 1(d) below) to receive a portion of Proceeds, due and payable to the Purchaser immediately prior to, or concurrent with, the consummation of such Liquidity Event, equal to the Purchase Amount (the "**Cash-Out Amount**") or (ii) a number of shares of N-Class Common Stock of the Company (or, at the election of the Company, directly into proceeds paid to the holders of N-Class Common Stock in connection with the Liquidity Event) equal to the Purchase Amount divided by the M-SAFE Price (the "**Conversion Amount**"), provided, however, that if the Majority Purchasers fail to choose between the Cash-Out Amount or Conversion Amount prior to the closing of the Liquidity Event, the Company may make such determination in its absolute discretion.  If any of the Company's securityholders are given a choice as to the form and amount of Proceeds to be received in a Liquidity Event (excluding the choice referred to in the first sentence of this Section 1(b)), the Purchaser will be given the same choice, *provided* that the Purchaser may not choose to receive a form of consideration that the Purchaser would be ineligible to receive as a result of the Purchaser's failure to satisfy any requirement or limitation generally applicable to the Company's securityholders, or under any applicable laws.

Notwithstanding the foregoing, in connection with a Liquidation Transaction intended to qualify as a tax-free reorganization, the Company may reduce the cash portion of Proceeds payable to the Purchaser by the amount determined by its board of directors in good faith for such Liquidation Transaction to qualify as a tax-free reorganization for U.S. federal income tax purposes, provided that such reduction (A) does not reduce the total Proceeds payable to such Purchaser and (B) is applied in the same manner and on a pro rata basis to all securityholders who have equal priority to the Purchaser under Section 1(d).

(c)  **Dissolution Event**. If there is a Dissolution Event before the termination of this M-SAFE, the Purchaser will automatically be entitled (subject to the liquidation priority set forth in Section 1(d) below) to receive a portion of

-1-

Proceeds equal to the Cash-Out Amount, due and payable to the Purchaser immediately prior to the consummation of the Dissolution Event.

(d) **Liquidation Priority**.  In a Liquidity Event or Dissolution Event, this M-SAFE is intended to operate like standard non-participating Preferred Stock.  The Purchaser's right to receive its Cash-Out Amount is:

(i) Junior to payment of outstanding indebtedness and creditor claims, including contractual claims for payment and convertible promissory notes (to the extent such convertible promissory notes are not actually or notionally converted into Capital Stock);

(ii) On par with payments for other M-SAFEs and/or Preferred Stock, and if the applicable Proceeds are insufficient to permit full payments to the Purchaser and such other M-SAFEs and/or Preferred Stock, the applicable Proceeds will be distributed pro rata to the Purchaser and such other M-SAFEs and/or Preferred Stock in proportion to the full payments that would otherwise be due; and

(iii) Senior to payments for Common Stock.

The Purchaser's right to receive its Conversion Amount is (A) on par with payments for Common Stock and other M-SAFEs and/or Preferred Stock who are also receiving Conversion Amounts or Proceeds on a similar as-converted to Common Stock basis, and (B) junior to payments described in clauses (i) and (ii) above (in the latter case, to the extent such payments are Cash-Out Amounts or similar liquidation preferences).

(e) **Termination**.  This M-SAFE will automatically terminate (without relieving the Company of any obligations arising from a prior breach of or non-compliance with this M-SAFE) immediately following the earliest to occur of: (i) the issuance of Capital Stock to the Purchaser pursuant to the automatic conversion of this M-SAFE under Section 1(a); or (ii) the payment, or setting aside for payment, of amounts due the Purchaser pursuant to Section 1(b) or Section 1(c).

2. *Definitions*

"**Capital Stock**" means the capital stock of the Company, including, without limitation, the "**Common Stock**" and the "**Preferred Stock**."

"**Conversion Event**" means the earliest to occur of (a) the 12-month anniversary of the Initial Closing and (b) such earlier date as determined by the Company in its sole discretion.

"**Direct Listing**" means the Company's initial listing of its Common Stock (other than shares of Common Stock not eligible for resale under Rule 144 under the Securities Act) on a national securities exchange by means of an effective registration statement on Form S-1 filed by the Company with the SEC that registers shares of existing capital stock of the Company for resale, as approved by the Company's board of directors. For the avoidance of doubt, a Direct Listing shall not be deemed to be an underwritten offering and shall not involve any underwriting services.

"**Dissolution Event**" means (i) a voluntary termination of operations, (ii) a general assignment for the benefit of the Company's creditors or (iii) any other liquidation, dissolution or winding up of the Company (**excluding** a Liquidity Event), whether voluntary or involuntary.

"**Dividend Amount**" means, with respect to any date on which the Company pays a dividend on its outstanding Common Stock, the amount of such dividend that is paid per share of Common Stock multiplied by (x) the Purchase Amount divided by (y) the M-SAFE Price (treating the dividend date as a Liquidity Event solely for purposes of calculating such M-SAFE Price).

"**Initial Public Offering**" means the closing of the Company's first firm commitment underwritten initial public offering of Common Stock pursuant to a registration statement filed under the Securities Act.

"**Liquidity Event**" means a Liquidation Transaction (as defined in the Certificate of Incorporation), a Direct Listing or an Initial Public Offering.

"**Proceeds**" means cash and other assets (including without limitation stock consideration) that are proceeds from the Liquidity Event or the Dissolution Event, as applicable, and legally available for distribution.

5.  *Miscellaneous*

(a)  Any provision of this M-SAFE may be amended, waived or modified by written consent of the Company and either (i) the Purchaser or (ii) the Majority Purchasers, *provided that* with respect to clause (ii), the Purchase Amount may not be amended, waived or modified in this manner.

(b)  Any notice required or permitted by this M-SAFE will be deemed sufficient when delivered personally or by overnight courier or sent by email to the relevant address listed on the signature page, or 48 hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address listed on the signature page, as subsequently modified by written notice.

(c)  The Purchaser is not entitled, as a holder of this M-SAFE, to vote or be deemed a holder of Capital Stock for any purpose other than tax purposes, nor will anything in this M-SAFE be construed to confer on the Purchaser, as such, any rights of a Company stockholder or rights to vote for the election of directors or on any matter submitted to Company stockholders, or to give or withhold consent to any corporate action or to receive notice of meetings, until shares have been issued on the terms described in Section 1.  However, if the Company pays a dividend on outstanding shares of Common Stock (that is not payable in shares of Common Stock) while this M-SAFE is outstanding, the Company will pay the Dividend Amount to the Purchaser at the same time.

(d)  Neither this M-SAFE nor the rights in this M-SAFE are transferable or assignable, by operation of law or otherwise, by either party without the prior written consent of the other; *provided, however*, that this M-SAFE and/or its rights may be assigned without the Company's consent by the Purchaser (i) to the Purchaser's estate, heirs, executors, administrators, guardians and/or successors in the event of Purchaser's death or disability, or (ii) to any other entity who directly or indirectly, controls, is controlled by or is under common control with the Purchaser, including, without limitation, any general partner, managing member, officer or director of the Purchaser, or any venture capital fund now or hereafter existing which is controlled by one or more general partners or managing members of, or shares the same management company with, the Purchaser; and *provided, further*, that the Company may assign this M-SAFE in whole, without the consent of the Purchaser, in connection with a reincorporation to change the Company's domicile.

(e)  In the event any one or more of the provisions of this M-SAFE is for any reason held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this M-SAFE operate or would prospectively operate to invalidate this M-SAFE, then and in any such event, such provision(s) only will be deemed null and void and will not affect any other provision of this M-SAFE and the remaining provisions of this M-SAFE will remain operative and in full force and effect and will not be affected, prejudiced, or disturbed thereby.

(f)  All rights and obligations hereunder will be governed by the laws of the State of Delaware, without regard to the conflicts of law provisions of such jurisdiction.

(g)  The parties acknowledge and agree that for United States federal and state income tax purposes this M-SAFE is, and at all times has been, intended to be characterized as stock, and more particularly as common stock for purposes of Sections 304, 305, 306, 354, 368, 1036 and 1202 of the Internal Revenue Code of 1986, as amended.  Accordingly, the parties agree to treat this M-SAFE consistent with the foregoing intent for all United States federal and state income tax purposes (including, without limitation, on their respective tax returns or other informational statements).

(*Signature page follows*)

4144-1897-4001.1

IN WITNESS WHEREOF, the undersigned have caused this M-SAFE to be duly executed and delivered.

**ANTHROPIC, PBC**

By:‎ *Dario Amodei*
‏      ‏‎Dario Amodei
      CEO

**PURCHASER:**

By:

Name:

Title:

Address:

Email:

4127-9575-2241.3

IN WITNESS WHEREOF, the undersigned have caused this M-SAFE to be duly executed and delivered.

**ANTHROPIC, PBC**

By:_____
     Dario Amodei
     CEO

**PURCHASER:**

By:    *Sam Bankman-Fried*_____

Name:_____

Title:_____

Address:_____

_____

Email:_____

4127-9575-2241.3