<pre>
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                          .  Chapter 11
                                     .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,       .
                                     .  (Jointly Administered)
 5          Debtors.                 .
     . . . . . . . . . . . . . .     .
 6                                   .
     ALAMEDA RESEARCH LLC, FTX       .  Adv. Pro. No. 23-50419 (JTD)
 7   TRADING LTD., WEST REALM        .
     SHIRES, INC., AND WEST          .
 8   REALM SHIRES SERVICES INC.      .
     (D/B/A FTX.US),                 .
 9                                   .
           Plaintiffs,               .
10                                   .
        v.                           .  Courtroom No. 5
11                                   .  824 North King Street
     DANIEL FRIEDBERG,               .  Wilmington, Delaware 19801
12                                   .
            Defendant.               .  Thursday, February 22, 2024
13   . . . . . . . . . . . . . .     .  1:00 p.m.

14                      TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE JOHN T. DORSEY
15                 UNITED STATES BANKRUPTCY JUDGE

16   APPEARANCES:

17   For the Debtors:          James Bromley, Esquire
                               SULLIVAN & CROMWELL LLP
18                             125 Broad Street
                               New York, New York 10004
19   (APPEARANCES CONTINUED)

20   Audio Operator:           Sharon A. Page, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

APPEARANCES (CONTINUED):

For the Debtors:            Adam Landis, Esquire
                           LANDIS RATH & COBB LLP
                           919 Market Street
                           Suite 1800
                           Wilmington, Delaware 19801

                           Andrew Dietderich, Esquire
                           SULLIVAN & CROMWELL LLP
                           125 Broad Street
                           New York, New York 10004

For the U.S. Trustee:      Linda Richenderfer, Esquire
                           Benjamin Hackman, Esquire
                           OFFICE OF THE UNITED STATES TRUSTEE
                           844 King Street, Suite 2207
                           Lockbox 35
                           Wilmington, Delaware 19801

For the Ad Hoc
Committee of Non-US
Customers:                 Erin Broderick, Esquire
                           EVERSHEDS SUTHERLAND
                           227 West Monroe Street
                           Suite 6000
                           Chicago, Illinois 60606

                           Matthew Harvey, Esquire
                           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                           1201 North Market Street
                           16th Floor
                           P.O. Box 1347
                           Wilmington, Delaware 19801

For Certain Account
Holders of FTX.com:        Shannon Humiston, Esquire
                           MCCARTER & ENGLISH, LLP
                           Renaissance Centre
                           405 North King Street, 8th Floor
                           Wilmington, Delaware 19801

                           David Adler, Esquire
                           MCCARTER & ENGLISH, LLP
                           Worldwide Plaza
                           825 Eighth Avenue, 31st Floor
                           New York, New York 10019

1  <u>APPEARANCES (CONTINUED)</u>:

2  For the Official
   Committee of
3  Unsecured Creditors:        Kenneth Pasquale, Esquire
                               Isaac Sasson, Esquire
4                              PAUL HASTINGS LLP
                               200 Park Avenue
5                              New York, New York 10166

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2    MOTIONS:                                                    PAGE

3    Agenda
     Item 21: [SEALED] Motion of Debtors for Entry              5
4             of an Order Authorizing and Approving
               (I) Procedures for Sale of Debtors'
5             Equity Interests in Anthropic, PBC;
               (II) Sale(s) of Such Equity Interests
6             in Accordance with Such Procedures
               Free and Clear of Any Liens, Claims,
7             Interests and Encumbrances; and (III)
               Redaction and Filing Under Seal of
8             Certain Confidential Commercial
               Information in the Sale Procedures
9             [D.I. 6950, filed on February 2, 2024]

10            Court's Ruling:                                    23

11

12   STATUS CONFERENCE:                                         PAGE

     Agenda
13   Item 22: Motion of the United States Trustee               23
               for Entry of an Order Directing the
14             Appointment of an Examiner [D.I. 176,
               filed on December 1, 2022]

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commence at 1:02 p.m.)

2            THE COURT:  Good afternoon, everyone. Thank you.

3   Please be seated.

4            MR. LANDIS:  Good afternoon, Your Honor.  May I

5   please the Court, Adam Landis from Landis Rath & Cobb on

6   behalf of FTX Trading, Ltd., and its affiliated debtors.

7            Your Honor, this afternoon we are going to be

8   working off the amended agenda that we filed this morning.

9   Items 1 through 9 have been adjourned.  Number 10 was

10  withdrawn.  Items 11 through 20 have been resolved and orders

11  have been entered.  We are grateful for the entry of those

12  orders.

13           That takes us to two matters that are going

14  forward.  Item No. 21 is the Anthropic sale motion and Item

15  No. 22 is the status conference with respect to the U.S.

16  Trustees motion for an examiner.

17           THE COURT:  Okay.

18           MR. LANDIS:  I am going to yield the podium to Mr.

19  Dietderich from Sullivan & Cromwell with respect to Item 21,

20  the Anthropic motion.

21           THE COURT:  Thank you.

22           MR. DIETDERICH:  Good afternoon, Your Honor.  For

23  the record Andy Dietderich, Sullivan & Cromwell.

24           Your Honor, Item 21, the sale with Anthropic, we

25  have resolved, as reflected in a revised form of order

1 submitted to the Court, concerns of the U.S. Trustee, the

2 official committee, the ad hoc committee of customers, and

3 Anthropic. We have two pending objections, Your Honor.  We

4 have not had substantive contact with the objecting parties.

5 I am not sure if they are here today and plan to speak or

6 not.

7          THE COURT:  Someone raised their hand.

8          MR. DIETDERICH:  From the debtors' perspective,

9 you know, we kind of stand by our position on the papers

10 which we think is relatively straightforward.  I would note

11 two things generally about the relief requested.

12          First, we had originally sought preapproval of the

13 disposition of Anthropic thinking we could be in a situation

14 in which we might be dribbling the position out over time or

15 making a number of small sale decisions.  I think after

16 conversation with the stakeholders and, in particular, our

17 investment banker, we have withdrawn the preapproval request.

18          So, the motion in front of you now is,

19 effectively, an arrangement to shorten notice to allow us to

20 consummate the sale with a shorter period of time between

21 signing and closing which is helpful for the marketing

22 process, but all stakeholders will have notice of the sale

23 and an opportunity to be heard if they have an objection.

24          The second thing I would note is we do believe, as

25 the debtor, that we can, as of right, sell this position

1  without Anthropic's consent; however, Anthropic disagrees.

2  The current relief contemplates a consensual sale with

3  Anthropic and we have negotiated with Anthropic a window

4  where our disposition activity won't interfere with their own

5  capital raising activity.  And that relationship between what

6  we are doing and what they might be doing from a capital

7  raising perspective in the future is an important

8  consideration of, I would say, the collaborative method that

9  we have to sell the Anthropic position with the support of

10 Anthropic.

11          With that, Your Honor, I don't know if you have

12 questions, but I would, you know, cede the podium to anybody

13 else who wishes to speak about today's motion.

14          THE COURT:  Thank you.

15          MR. SASSON:  Good afternoon, Your Honor.  Isaac

16 Sasson from Paul Hastings on behalf of the official committee

17 of unsecured creditors.

18          Just to echo what Mr. Dietderich said, we are

19 supportive of the debtors sale at this time.  With Your

20 Honor's permission, we would like to reserve our comments

21 until after the objectors speak.

22          THE COURT:  Thank you.

23          MR. SASSON:  Thank you, Your Honor.

24          MS. BRODERICK:  May I please the Court, Your

25 Honor, Erin Broderick of Eversheds Sutherland on behalf of

1  the ad hoc committee of non-US customers of FTX.com.

2           We are also supportive of approval of the debtors'

3  motion and I would similarly ask to make comments after the

4  objections are heard.

5           THE COURT:  Okay.  Thank you.

6           Anyone else before we go to the objectors?

7       (No verbal response)

8           THE COURT:  Okay.  Objectors.

9           MS. HUMISTON:  Good afternoon, Your Honor.  May I

10 please the Court, Shannon Humiston from McCarter & English on

11 behalf of certain customers of FTX.com.  With me in the

12 courtroom today is David Adler.  His admission has been -- he

13 has been admitted *pro hac vice* in these proceedings and with

14 the Court's permission I would like to cede the podium to Mr.

15 Adler.

16          THE COURT:  Thank you.

17          MS. HUMISTON:  Thank you.

18          MR. ADLER:  Your Honor, David Adler from McCarter

19 & English on behalf of certain FTX creditors.

20          We filed an objection to the proposed sale. Having

21 heard the debtors' comments this morning one of the thoughts

22 that occurs to me is that if we are dealing with,

23 effectively, a motion to shorten notice we would like to

24 obtain some documents from the debtor.  We think maybe if

25 we're shortening time and we're going to have another hearing

1   on this that might be the appropriate time for us to go

2   forward, but we are prepared to go forward today.

3            THE COURT:  Let me hear from Mr. Dietderich.

4            MR. DIETDERICH:  Thank you, your Honor.  I should

5   be clear, right, we have a procedure to shorten notice for

6   objections by objecting parties, but in the absence of an

7   objection there is no hearing.  To the extent that the

8   objecting parties seek to raise a property argument we

9   believe the time for that has passed and we would like that

10  resolved today.  We don't intend to have a hearing on

11  customer property issues on shortened notice. So, I think the

12  burden is very much on Mr. Adler, as he expected today, to

13  show why this train should be derailed because of a property

14  interest in the assets being sold.

15           THE COURT:  Well, isn't the -- the form of order

16  that I saw says that any property interest that might attach

17  to the assets being sold passes through to the proceeds of

18  assets.

19           MR. DIETDERICH:  Correct.

20           THE COURT:  So, I don't know what -- what is the

21  issue, Mr. Adler.  The sale is going to go forward.  If you

22  have an objection to the sale process, how that sale

23  proceeded, you think its unfair for some reason, you have

24  some basis for an objection other then property rights you

25  could raise those on the expedited basis.  If you are going

1  to object and say, well, its our property its going to be

2  subject to the -- the proceeds are going to have that

3  property interest attached to it and you will have the right,

4  at a later time, to assert that claim.

5          MR. ADLER:  I think, Your Honor, that latter issue

6  was not very clear in the motion itself.  We are not seeking

7  to bring back the property to the customers today.  We just

8  want to make sure that our rights are preserved and to the

9  extent that the sale proceeds are kept in a segregated

10 account and our rights are reserved to claim that this is the

11 -- these are the proceeds from customer property I don't

12 think we have an objection to the sale going forward as long

13 as we reserve our rights.

14         MR. DIETDERICH:  To be clear, the proceeds are not

15 segregated.  We do have a substantial amount of cash in the

16 estate.  Paragraph 4 of the order does say that to the extent

17 there is a property interest that attached to the proceeds of

18 the sale, but we don't intend to hold them in a segregated

19 account.  We have sufficient cash that it won't be an issue.

20         THE COURT:  Well, I guess the question, I am

21 anticipating Mr. Adler's question, is whether or not they can

22 trace those funds later on.  So, there is a question about

23 whether these particular proceeds are from the sale of assets

24 that belong to somebody else. How do we trace those funds

25 without running into the problem of the lowest intermediate

1  balance test.

2          MR. DIETDERICH:  Its cash, right.  And we have an

3  adequate amount of cash.  So, if you just look at it -- you

4  could look at it on lowest intermediate balance kind of with

5  that lens.  We should have adequate in the estate to pay the

6  -- we know how much money it was, what the sale price, and we

7  know that went into our accounts.  And if they show that they

8  have a property interest they can presumably trace the

9  property in our consolidated accounts.

10          Its not segregated in any way now, nor any of our

11  other assets.  To the extent that there is no evidence in

12  front of the Court that Mr. Adler's clients have any interest

13  in property in the Anthropic shares. We are selling the

14  Anthropic shares as we are selling everything and putting the

15  money in the bank.  There is no difference, I would think,

16  between Mr. Adler's clients entitlement, if such exists, to

17  the proceeds of the disposition of Anthropic then to the

18  disposition of any other property interest of the estate, all

19  of which are going in to blended unsegregated accounts.

20          There has been no allegation in his papers that

21  Anthropic is special in any way compared to the other assets

22  that we are disposing of.  There is no effort to trace the

23  source of funds for Anthropic.  There is no discovery or

24  informational requests for the debtors at any time over the

25  last 14 months when we let the world know we're selling

 1  Anthropic for Mr. Adler or his clients asking for any

 2  information related to Anthropic.

 3          So, it's a little bit of a slippery slope if we

 4  start to say that everything we sell has to go into a

 5  segregated account when we're selling everything and putting

 6  all of the money into a blended account.  Again, if there is

 7  something specific about Anthropic as it relates to the

 8  holdings of Mr. Adler's clients, of which we are not aware,

 9  the burden is on him to show it.  He has not shown it.

10          So, I would submit that on that basis there is

11  certainly an adequate protection of the interest in property

12  by acknowledging that the proceeds will go into a segregated

13  account and if they're correct we will figure out what to do

14  with it.

15          THE COURT:  Mr. Adler.

16          MR. ADLER:  Your Honor, I don't really see what

17  the issue is about establishing a separate account with

18  respect to these proceeds.  The second argument is there is

19  something special about Anthropic and we did say it in our

20  papers which is that the proceeds from the customer property,

21  from the customer accounts, were literally traced by an

22  expert during the Sam Bankman-Fried trial and there is an

23  exhibit that the government put up literally tracing the $500

24  million from FTX Trading down to Alameda Ventures, I believe.

25          This is one example, Your Honor, where the

1  government and other parties have literally sat and traced

2  the funds from customer accounts to the purchase of

3  Anthropic.  So, you know, I am not going to get into the

4  issues of really why we are here today. I will just note that

5  I have been retained in the last few weeks.  I was involved

6  in another related issue at the beginning of the case, but,

7  you know, we don't have a plan yet.

8          I mean, I don't see where the prejudice is in the

9  fact that this has gone on for or the FTX case has been

10  around for 14 months.  They are selling Anthropic.  Anthropic

11  is a special category of an asset where the funds were

12  literally traced during the trial and my request is that

13  those funds be put in a segregated account.

14          THE COURT:  Well, I think one of the problems you

15  might have is maybe there was, maybe there wasn't, I don't

16  know the tracing that occurred in the criminal trial with the

17  Southern District, but it was only $500 million and there

18  were billions of dollars taken out of the account.  So, how

19  would I know your client's funds were the ones that were

20  transferred?

21          MR. ADLER:  I think, Your Honor, this goes to a

22  larger point about the claims of customers of that entity.

23  With respect to my group that is subject to a further

24  tracing, I suppose, but, you know, we are talking about a

25  fund here of customer property that is literally directly

1  traceable to Anthropic.

2          THE COURT:  But you can't speak on behalf of

3  parties you don't represent.

4          MR. ADLER:  That is correct, Your Honor.

5          THE COURT:  There is no class action here.

6          MR. ADLER:  That is correct.  But, again, in order

7  to -- I think we can deal with that issue as we move forward

8  towards confirmation, but I don't think it is a unreasonable

9  request to have those funds put in a segregated account for

10  the time being such that we can start the process that we

11  have to start regarding tracing.

12          THE COURT:  Well, I think Mr. Dietderich's point

13  is there has been a lot of sales of a lot of assets and if

14  they set up separate accounts for each one of them it's going

15  to become unwieldy.  I just don't think as long as there is a

16  way to trace these particular funds to the account and as

17  long as we don't have an issue of the funds in the account

18  falling below the lowest intermediate balance test then I

19  think we're okay.  I am going to take Mr. Dietderich at his

20  word that its not going to do that, we're not going to fall

21  below the lowest intermediate balance because there is plenty

22  of money in the account.

23          How much do we have in the account at this point,

24  generally?  Just a rough estimate.

25          MR. DIETDERICH:  Well, I will -- that's actually a

1  good question.  I don't have any of my usual crutches in

2  Court with me today.  We will send a text right now to get a

3  better answer for that.

4            THE COURT:  All right.

5            MR. DIETDERICH:  We have well over -- if its $500

6  million we have multiples of that.

7            THE COURT:  I know there's been other sales that

8  have happened.

9            MR. DIETDERICH:  Absolutely, Your Honor.  We have

10 many billions of dollars.

11           THE COURT:  Are the expenses of the bankruptcy

12 being paid out of the same account or is this -- are these

13 funds in a separate account that is not used to pay the

14 proceeds of the bankruptcy process?

15           MR. DIETDERICH:  So, we have a master sweep

16 account and then we have sweep accounts in the silo

17 structure.  Remember the silo structure from the beginning.

18           THE COURT:  Right.

19           MR. DIETDERICH:  The case expenses are being paid,

20 really, on behalf of the various debtors under an allocation

21 rule.  So, all of the cash is being charged administrative

22 expenses, but, again, when I say there is adequate cushion, I

23 mean on any projection of administrative expenses we have

24 billions of dollars of cash.  $6.4 billion is the answer.

25           THE COURT:  Okay.

1          MR. DIETDERICH:  I would say one other thing, Your

2   Honor, that -- the other observation I would offer is there

3   is, obviously, no evidence of any -- of what Mr. Adler said

4   today in the record, nor was there an attempt to put anything

5   in evidence on his behalf on the record.

6          The -- whatever -- what purchased Anthropic was

7   also funds that were not segregated for the benefit of

8   customers.  So, we are dealing with unsegregated funds

9   purchasing Anthropic, putting it back in the generally

10  unsegregated accounts.  But I think Your Honor makes an

11  important observation which is over $6.4 billion of cash will

12  be able to apply -- if there is a determination that for some

13  reason Mr. Adler's clients had an interest in the Anthropic

14  shares, and it was sold, and those proceeds came in, and that

15  interest is sufficient to give Mr. Adler's clients some kind

16  of priority over everybody else with respect to those

17  proceeds we will know the amount of money that came in and

18  will have a $6.4 billion buffer because the $6.4 billion does

19  not yet include the proceeds of the sale of Anthropic.

20          THE COURT:  Mr. Adler.

21          MR. ADLER:  Just listening to Mr. Dietderich about

22  sweeps raises a concern to me that these funds are, whatever

23  account they're in, getting swept back and forth and that

24  could raise further tracing issues that I would -- you know,

25  that I don't think are appropriate or necessary. So, I don't

1  know if there is a way to deal with that problem, but if

2  there is money in one account that is getting swept into

3  another account and that's occurring on a daily basis the

4  process becomes, you know, much, much more cumbersome to

5  demonstrate, you know, the tracing.  So, I do have an issue

6  with sweeping as well.

7       THE COURT:  Well, it does raise an interesting

8  issue or a complicated issue. If the funds that come in from

9  the sale of Anthropic go into a master account and then those

10 funds get swept into other accounts the lowest intermediate

11 balance test is going to apply to the funds that they

12 originally -- the account that it originally went into which

13 could be below the lowest intermediate balance which creates

14 a problem.

15      MR. DIETDERICH:  Well, the way the system works is

16 ultimately things are swept up into the master account

17 pursuant to the cash management order.  We are keeping,

18 obviously, meticulous records of transfers during the case.

19 Each of the transfers constitutes superpriority

20 administrative loan by one estate back to the other, right.

21 So, its not like its being transferred out. Its being

22 collected for the purposes of running a consolidated account

23 which is in everybody's interest to run a consolidated

24 account because its cheaper and liquidity is pooled.

25      We can't possibly run the case by having separate

1    pools of liquidity corresponding to every asset we sell.  So,

2    the solution in the cash management order, which contemplated

3    exactly this question, including customer property

4    allegations, is that we have a master pooling account, it

5    sucks up liquidity, again, under meticulous record keeping,

6    that master account is the primary source of liquidity in the

7    case.  That is the $6.4 billion I mentioned, right, but we

8    know where it came from and to the extent that anybody has a

9    property interest they, effectively, have a charge against

10   the master pool.

11          THE COURT:  Well, here is my concern because I was

12   involved in the <u>Diocese of Wilmington</u> bankruptcy case when I

13   was in private practice and this issue came  up where the

14   Diocese was taking funds from the various parishes, putting

15   them into a master account, and then sending it off into

16   individual accounts for each of the various parishes.  Judge

17   Sontchi ruled that the lowest intermediate balance test

18   applied to the master account.  Even though we had an expert

19   who could trace those funds directly all the way through he

20   said not good enough; you violated the lowest intermediate

21   balance test and all that money got swept up into the estate.

22   So, that is what I am concerned about.

23          MR. DIETDERICH:  Well, Your Honor, the difference

24   there is that was presumably prepetition.

25          THE COURT:  Yes, it was.

1          MR. DIETDERICH:  Yeah, so its prepetition.  So, in

2    the administrative period, again we are keeping records --

3    our job in the administrative period is to protect

4    everybody's entitlements as of the petition date.  So, we are

5    able to recreate administratively what everyone is entitled

6    to on the petition date.

7          I don't think that we are going to take a position

8    that people can't -- you know, tracing is a relevant question

9    for the prepetition period. In the administrative period for

10   how we use cash presumed to the Court order, the Court's

11   order applies.  Your Honor has already held that to the

12   extent we are taking money from one debtor under our cash

13   management procedures and it belongs in a different place we

14   put it back with an administrative priority.

15         THE COURT:  That makes sense to me, Mr. Adler.

16         MR. ADLER:  I am a little confused, Your Honor,

17   but I think that we are, sort of, talking about minutia here

18   and what I think serve everyone well is for me and Mr.

19   Dietderich to work on the proposed form of order in terms of

20   that provision that keeps, you know, everyone's rights in the

21   proceeds preserved and mechanically how that will function in

22   real life.

23         I mean, I am also concerned that if it goes into

24   an account and that account gets swept out that the lowest

25   intermediate balance will be zero.  But I do think that there

1   is some benefit in --

2        THE COURT:  I think the point Mr. Dietderich is

3   making is that pursuant to my previous orders in this case

4   that process has been approved by the Court with the idea

5   that funds that get transferred to one debtor or another

6   debtor turn out to belong somewhere else will automatically

7   be shifted back and forth without regard to the lowest

8   intermediate balance test.  It doesn't apply.

9        MR. ADLER:  Right.  Instead there is a

10  superpriority administrative claim that is in place --

11       THE COURT:  Between the debtors.

12       MR. ADLER:  -- between the debtors.  It sounds

13  like it addresses the problem, Your Honor, but I am trying to

14  run through my head.  Obviously, the easiest solution is a

15  segregated account.  If there is not a segregated account

16  then the cash management order, presumably, it sounds like

17  protects these rights but, you know, I don't want to be in a

18  position where if we do succeed on tracing that, you know, we

19  are trying to then establish a tracing within the debtors'

20  structure.  That is my big concern.

21       THE COURT:  Well, based on what I have heard today

22  I am going to be very upset if someone tries to argue the

23  lowest intermediate balance test.

24       MR. ADLER:  Okay, Your Honor.  On that note, I

25  think I would like an opportunity to just discuss the form of

1  order with the debtors.

2          THE COURT:  We can take a break and maybe talk

3  about it and I will come back on in a minute.

4          Let me just see if anybody else wants to be heard

5  on the issue.

6      (No verbal response)

7          THE COURT:  Okay.  You want to take like a 10-

8  minute recess, Mr. Dietderich, and speak to Mr. Adler?

9          MR. DIETDERICH:  Sure.  We can do that.  Thank

10  you, Your Honor.

11          THE COURT:  Thank you.

12      (Recess taken at 1:25 p.m.)

13      (Proceedings resumed at 1:36 p.m.)

14          THE COURT:  All right.  Where are we?

15          MR. DIETDERICH:  Thank you, Your Honor.  Andy

16  Dietderich for the debtors for the record.

17          Your Honor, we have an agreed language for the

18  order.  We are going to make a little tweak because it

19  occurred to me that we could be more precise and I think

20  Mr. Adler has agreed with this language after looking at the

21  cash management order.  So I'll read it to you and then we'll

22  submit it in a revised form of order.

23          THE COURT:  Okay.

24          MR. DIETDERICH:  In paragraph 4 of the order, we

25  have the language that Your Honor cited about liens, claims,

1  encumbrances, and interests attaching to the proceeds.  But

2  rather than just say that they'll attach to the proceeds of

3  the sale, we're going to add a parenthesis that says they

4  also attach to any debtors' rights against any other debtor

5  under the cash management order, closed paren.  Meaning, that

6  if the sale proceeds come into a debtor and the debtor uses

7  the centralized cash management system, the security interest

8  attaches to that debtor's interest against the master pool.

9  So, effectively, the deposit becomes secured if that debtor,

10 you know, banks with one of the other debtors.

11          The other change that we would make is just at the

12 very end of that paragraph where you see that rights to

13 claims, defenses, and obligations to any of the debtors and

14 all interested parties are reserved, we would agree to add,

15 at Mr. Adler's request, the debtors, comma, the objectors,

16 and all other interested parties.

17          So I think that resolves, at least, the objection

18 of Mr. Adler's clients and we'll submit a revised form of

19 order.

20          THE COURT:  Okay.  Thank you.  I'm satisfied with

21 the changes.

22          MR. ADLER:  Your Honor, David Adler.  I just

23 wanted to note for the record that I did go through that

24 language and based on my review of the cash management order,

25 it looks like it does protect the interests and, obviously,

1  that based on that cash management order, we're not talking

2  about lowest, intermediate tests the way it's structured.

3          THE COURT:  Okay.

4          MR. ADLER:  So that's all I have to say.

5          THE COURT:  Thank you, Mr. Adler.

6          All right.  Anything else on this motion?

7      (No verbal response)

8          THE COURT:  Okay.  I'm satisfied, based on what

9  I've heard and the representations in court today, that the

10  proposed order is appropriate.  Subject to receiving the

11  revised form of order under COC, I will enter the order.

12          MR. DIETDERICH:  Your Honor, I think the next item

13  on the agenda is the status conference related to the

14  examiner motion by the U.S. Trustee.

15          THE COURT:  Okay.

16          MR. HACKMAN:  Good afternoon, Your Honor.

17          THE COURT:  Good afternoon.

18          MR. HACKMAN:  May I please the Court?  Ben Hackman

19  for the U.S. Trustee.

20          We asked for a status conference to update Your

21  Honor on developments since the status conference we had last

22  month and to get clarification from Your Honor about the next

23  steps in the examiner appointment.

24          Since the last status conference on January 24th,

25  the parties to the examiner appeal asked the Third Circuit to

1  expedite issuance of the mandate.  The Third Circuit issued

2  its mandate on February 12th.  It's filed on the Bankruptcy

3  Court docket at Item 7301.

4          The next day, on February 13th, we reached out to

5  the debtors, the Official Committee, Ad Hoc Committee, and

6  JOLs with a proposed form of order.  It was one sentence.  It

7  directed the United States Trustee to appoint an examiner

8  under Section 1104(c)(2).  Debtors' counsel advised that they

9  did not agree to that form of order.

10         The following day, on February 14th, the U.S.

11 Trustee proposed to add additional language to the order

12 clarifying that scope, duration, and cost would be clarified

13 at the appointment hearing, but we did not receive a response

14 to our proposal, and so we've requested a status conference

15 with Your Honor today to discuss the matter.

16         At the January 24th status conference, we

17 understood Your Honor to say that the United States Trustee

18 identifies who the examiner is and appoints the person and

19 then asks the Court to approve the appointment.  The United

20 States Trustee files an application to approve the

21 appointment under Rule 2007.1(c).  We understood Your Honor

22 wanted to address approval of the appointment, as well as

23 scope, cost, and duration at one hearing versus coming back

24 to set scope, cost, and duration later.

25         The U.S. Trustee is trying to comply with the

1  Third Circuit's instructions, with Your Honor's comments, and
2  with the Bankruptcy Code and Rules and to that end, we filed
3  notice of a proposed form of order at Docket Item 7597.  It
4  directs the U.S. Trustee to appoint an examiner.  It says the
5  scope, cost, degree, and duration will be addressed at the
6  hearing on the U.S. Trustee's application to approve the
7  appointment.

8        The debtors filed a competing form of order this
9  morning at Docket Item 7830.  The U.S. Trustee objects to
10  entry of that order.  The order is objectionable because it
11  does not comply with Section 1104(d) or Bankruptcy
12  Rule 2007.1(c).

13        The debtors' order says that the U.S. Trustee is
14  directed to "seek the appointment" of an examiner.
15  Section 1104(d) of the Bankruptcy Code says the U.S. Trustee
16  shall appoint.  It does not say the U.S. Trustee shall seek
17  to appoint.  It says the U.S. Trustee shall appoint an
18  examiner, subject to the Court's approval.

19        That takes us to Rule 2007.1(c).  It provides that
20  an order approving the appointment of a trustee or an
21  examiner under Section 1104(d) of the Code shall be made on
22  application of the United States Trustee.  The application
23  shall state the name of the person appointed.

24        Further down, it says the application shall be
25  accompanied by a verified statement of the person appointed,

1  setting forth the person's connections with the debtor,

2  creditors, any other party in interest, and so on.

3          So Rule 2007.1(c) also does not refer to the U.S.

4  Trustee seeking the appointment of an examiner.  It says the

5  U.S. Trustee shall make an application, which application

6  shall state the name of the person appointed.

7          It seems to us that the debtors want to have their

8  hand in the U.S. Trustee's selection process.  The debtors do

9  not have that right.  They can consult with our office, and

10 we have had consultation with them, but the debtors do not

11 get a say in who the examiner is.

12          To give the debtors a say in who the examiner is,

13 is highly problematic for a few reasons.  First, it has no

14 basis in the Bankruptcy Code or the Bankruptcy Rules.

15 Second, the debtors have been steadfastly anti-examiner

16 throughout this case.  And, third, the Third Circuit wrote in

17 its opinion that the Code also forbids a debtor-in-

18 possession, the quintessential insider, from performing the

19 duties of an examiner and investigating itself.

20          Finally, we think the debtors' proposed form of

21 order is objectionable because it leaves open who actually

22 makes the appointment.  The debtors' order would direct the

23 U.S. Trustee to seek the appointment of an examiner.

24          Who actually makes the appointment?  The Court?

25 Someone else?

1        With respect, we think the language of the Code

2  and the legislative history make clear that the Court does

3  not have a role in deciding who the examiner is on the front

4  end; rather, the Court approves the U.S. Trustee's

5  appointment of an examiner on the back end.

6        As the First Circuit wrote in, In re Plaza de

7  Diego Shopping Center, Inc., it's 911 F.2d 820, 830 (1st Cir.

8  1990):

9        "The power to nominate is not the power to

10  appoint, and by relegating the U.S. Trustee to the role of

11  nominating three candidates for trustee, the Court deprived

12  the U.S. Trustee of his right and power under the statute to

13  appoint the operating trustee."

14        That, in essence, is what we understand the

15  debtors are trying to do with their form of order here:  Have

16  the U.S. Trustee nominate a candidate, but not appoint.

17        The U.S. Trustee has conducted his due diligence

18  on the examiner appointment.  We conducted and completed

19  interviews.  We performed the statutorily required

20  consultation with the parties.  We will be in a position to

21  file the Rule 2007.1(c) application soon.  We do not want to

22  delay it.  Ideally, we would like to have that heard at the

23  March 13th or March 20th hearing before Your Honor, but we

24  have not yet been formally directed to appoint.

25        We need an order directing us to do that.  That is

1  why we submitted to the form of order that we did.  We think

2  our form of order is simple, uncontroversial, and a necessary

3  step in this process.  But it seems that we're at an impasse

4  with the debtors.  We believe Your Honor can and should enter

5  the form of order that we have filed at Docket Item 7597.

6          We would respectfully submit that it effectuates

7  the Third Circuit's instructions on remand and allows the

8  U.S. Trustee to proceed with the appointment.

9          Unless Your Honor has any questions, that's all I

10 have.

11         THE COURT:  Would you agree, I mean, if you look

12 at 1104(d), it says the U.S. Trustee shall appoint, subject

13 to Court approval.

14         You're not saying that the debtors or any other

15 party in interest doesn't have a right to object once you

16 seek the appointment or once you appoint the examiner?

17         MR. HACKMAN:  I don't think we would contest that

18 in this case under these facts and circumstances, given Your

19 Honor's comments at the prior status conference that you

20 wanted the appointment, as well as scope, cost, and duration

21 to be addressed at one hearing.

22         THE COURT:  Right.  Well, my point is that even

23 though you get to appoint somebody, I don't have an issue

24 with -- that 1104(d) says the U.S. Trustee appoints somebody

25 after consultation with the interested parties.  So, you

1   should have consulted with the debtors and the committee.

2          But it also says subject to Court approval, which,

3   to me, indicates that if someone, any party in interest

4   objects to a particular appointment, they could raise that

5   objection at the time of the appointment, which would have to

6   be done by motion.  I mean, the only way to do it, the only

7   way you could get it in front of me is to file some kind of a

8   motion that says, Here's -- we're appointing this person,

9   subject to any objections the parties might raise.

10         MR. HACKMAN:  I don't know that we agreed that

11  a 2007.1(c) motion application by itself would be a contested

12  matter.  I think if it's simply seeking approval of the

13  appointment, the Court's role is to evaluate the

14  disinterestedness of the candidate, confirm their

15  qualifications that they're appropriate for the

16  appointment --

17         THE COURT:  And how do I do that unless parties

18  can come forward and tell me?  What if the debtor knows that

19  the person you're appointing has a conflict?  And they've got

20  to tell me.  I've got to know.  I'm not going to know that

21  unless they tell me.

22         MR. HACKMAN:  So, with the application, there

23  would be a statement from the appointee affirming their

24  disinterestedness and making a showing that they're a

25  disinterested person, as defined by the Bankruptcy Code.

1          THE COURT:  Well, there's instances where someone

2   has been appointed and then they found out they actually did

3   have a conflict that they didn't disclose.  So if somebody

4   has some information that they want to disclose that would

5   lead me to believe this person is not disinterested, how do I

6   get that information?

7          MR. HACKMAN:  I don't dispute that the debtors, if

8   they believe the person were not disinterested, could raise

9   that issue with Your Honor at the hearing.

10          THE COURT:  Okay.  So what is it?  I'm just trying

11   to -- I mean, the language -- I wasn't actually satisfied

12   with the language either party proposed.

13          So, how do we get this in front of me so that I

14   can decide, one, this person meets the requirements of the

15   Code, he or she is disinterested, and I approve the

16   appointment and also address the issues of scope, duration,

17   and cost of any investigation that's going to happen?  How do

18   I do that, because nothing in the Code tells me how to do

19   that.

20          MR. HACKMAN:  The Code says -- well, at this

21   point, we have a directive from the Third Circuit to order

22   the appointment of an examiner.  Our view is that the U.S.

23   Trustee makes that appointment.  I believe --

24          THE COURT:  I got that part.  I got that part.

25          MR. HACKMAN:  -- I believe the Court could enter

1  its own order directing the U.S. Trustee to appoint, if it

2  wanted to.  I don't know that the appointment order itself

3  needs to be a contested matter, but we need the order to say

4  the U.S. Trustee is directed to appoint.

5          THE COURT:  Well, I don't have an issue with that.

6  I think the U.S. Trustee does have -- the Code is pretty

7  clear.  It says 1104(d) says:

8          "The United States Trustee, after consultation

9  with the parties in interest shall appoint, subject to the

10  Court's approval, one disinterested person."

11          So, yes, you get to appoint somebody.  But if

12  someone -- I have to have some kind of a mechanism that

13  allows me to hear from people who think this particular

14  person that you have appointed is not disinterested or does

15  not otherwise meet the requirements of the Code, and so they

16  can weigh in on issues of the scope, duration, and cost of

17  the investigation, because I do want to hear from parties on

18  that.  I think it's important.

19          MR. HACKMAN:  We anticipated that all of those

20  issues would be addressed in the Rule 2007.1(c) application.

21  That would be heard all at once, as soon as Your Honor would

22  be available.

23          THE COURT:  Okay.  Well, I'm looking at -- well,

24  let me hear from the debtors on this issue.

25          And it does say, "shall appoint," and I've already

1  been told by the Third Circuit, "Shall means shall," so...

2          MR. BROMLEY:  Your Honor, I think it's important

3  to look at what the Third Circuit said, right.

4          THE COURT:  Yes.

5          MR. BROMLEY:  The Third Circuit said that, as is

6  appropriate, does not modify "shall appoint."

7          But the Third Circuit was very clear that the

8  phrase "as is appropriate" in Section 1104(c) means the Court

9  retains broad discretion to direct the examiner's

10  investigation, including its scope, degree, duration, and

11  cost, and it cites to Norton's on Bankruptcy.

12          So what we have, the Third Circuit having done

13  here, it has done two things.  One, it has told us

14  that 1104(c)(2) says that "shall appoint" is not modified by

15  "as is appropriate."  But that the examination is modified by

16  "as is appropriate."

17          And so, we are now somewhat upside down in

18  process, because going forward, I think it's clear in the

19  Third Circuit under this decision, that when a motion is made

20  to appoint an examiner, you have to, one, seek the

21  appointment of an examiner and, two, in that same motion, you

22  have to ask and describe scope, degree, duration, and cost

23  for the Court in an 1104(c)(2) hearing to determine whether

24  or not the proposed scope, degree, duration, and cost are

25  appropriate.

1          In this circumstance, when we had the motion to

2   appoint the examiner last year, we asked prior to the

3   hearing, and you asked at the hearing, what was the proposed

4   scope that the U.S. Trustee was looking for?  Prior to the

5   hearing, the U.S. Trustee refused to tell us what the scope

6   was.  In the pretrial order, we mentioned, it's specific, the

7   language that the U.S. Trustee did agree to that one of the

8   questions for the Court was whether or not scope mattered?

9          And you -- Your Honor did ask counsel for the U.S.

10  Trustee about scope at the hearing.  But that was not

11  addressed in the order.

12         What the Third Circuit has now said is that the

13  order that was entered by Your Honor, which denied the

14  appointment of an examiner is reversed and remanded.

15         So when we drafted this form of order, we simply

16  said that the motion that was up last year is granted.  Now,

17  that motion did not seek any information, any guidance at all

18  with respect to scope, degree, duration, or cost, and now the

19  Third Circuit has told us that when an examiner is being

20  appointed, you need to take that into account.

21         So, I don't mind, right, if the order says that

22  under 1104(d), the examiner -- that the U.S. Trustee is

23  directed to appoint an examiner, subject to Court approval,

24  and that there will be a subsequent hearing with respect to

25  scope, degree, duration, and cost.

1           The question as to the rest of what Mr. Hackman

2   said is very troubling, right, because the U.S. Trustee's

3   view of consultation is akin to the questioning that one

4   might have expected from a Soviet border guard, right.  What

5   we are talking about in consultation is basically, here is a

6   black box.  In this black box, there are names.  People have

7   solicited interest.  They have contacted the U.S. Trustee's

8   Office.  They have submitted statements of interest and,

9   perhaps, applications.

10          We don't know who was in that box.  We don't know

11  what has been submitted, what they have said.

12          The U.S. Trustee says, Do you have any views on

13  who should be appointed as an examiner?

14          We specifically said, Would you please tell us who

15  has submitted indications of interest?  Some people contacted

16  us, but certainly not all of them.  We don't have the

17  information, except in a couple of circumstances that people

18  have submitted.  We have no context whatsoever.

19          We made two formal questions to Mr. Hackman and

20  his colleagues on the phone:  Please tell us who has

21  submitted indications of interest and please tell us who

22  you're interviewing.  Once we have that information, we can

23  give you a reaction.  We'll take that under advisement.

24          We received silence in response.  We don't know

25  who's been interviewed.  We do know people have been

1  interviewed because Mr. Hackman just told us that people have

2  been interviewed.

3         On that phone call, which was the, quote,

4  consultation phone call, we said, When are you going to file

5  a motion?

6  The answer is, The mandate had not yet issued, so we don't

7  know.                         Okay, let's assume the mandate

8  is going to issue, can you please tell us when you'll file

9  that motion after the issuance of the mandate?  We don't have

10  any authorization to tell you that.

11         We said, are you going to seek this on an

12  expedited approval, seek expedited approval?  We can't tell

13  you that.

14         We are prepared as the debtor to sit down with

15  whoever is approved by the Court, with the scope that's

16  determined by the Court, immediately to help that examiner

17  get up to speed.  We are not, as Mr. Hackman suggested,

18  seeking to take over the role of examiner.  We have read the

19  Third Circuit's decision, but we also read Section 1104(d),

20  which says consultation.  The word consultation means a

21  conversation, not an interrogation, and it doesn't mean

22  silence on the other side.

23         So where we stand today, Your Honor, is we have no

24  idea what the U.S. Trustee is thinking about anything because

25  they have very clearly told us, and now they have told the

1  Court, they have no intention of sharing that with us

2  whatsoever.  We don't really think that's consultation.

3  That being the case, what we think right now is

4  that there should be an order entered.  It should say that

5  the -- we're fine with it saying that the U.S. Trustee is

6  directed to appoint, but it is subject to approval of the

7  Court and it is, as you said at the last status conference

8  and as we believe to be the case, this will be on notice, we

9  will have -- all parties in interest will have the right to

10  say whatever they'd like to say with respect to whoever is

11  selected in this black box, Kafkaesque exercise run by the

12  United States Trustee, notwithstanding the clear language of

13  the statute, and we will have whatever rights we have to say

14  about scope, duration, cost, and the like.

15  We were asked specifically on the phone call what

16  did we think of scope, duration, degree, and cost, and we

17  said that we were in alignment with what Your Honor stated at

18  the last status conference, which is that this should be 30

19  to 45 days, this should first look at the things that have

20  already been done by whoever has done them, and determine

21  whether or not those things that have been done were done

22  appropriately and, if there's anything else left to be done,

23  what is left to be done and how is that going to benefit the

24  estates.

25  We said that and we said to the United States

1  Trustee, do you have a reaction to that?  No, we don't.  No

2  answer, we're not authorized to tell you anything.

3         So, Your Honor, we're happy to have the order

4  entered and have a hearing, on appropriate notice with the

5  ability to review and comment, not just for that, but all the

6  parties in interest, and to do it at the 13th or the 20th, or

7  whatever the Court is available.  And at that point in time,

8  you know, once we know the secret, we'll be able to then have

9  some intelligent conversation perhaps with the U.S. Trustee's

10 Office, but certainly with respect to our pleadings and

11 arguments to the Court.

12         So I think it's pretty simple.  I think if you

13 took our order and said the United States Trustee is hereby

14 directed to appoint an examiner, on notice -- I'm sorry,

15 subject to Court approval, on notice, is directed to file a

16 motion on notice to the parties seeking the -- hereby

17 directed to appoint an examiner, subject to Court approval,

18 and directed to file a motion on notice to the parties in

19 interest setting forth the proposed scope, degree, cost, and

20 duration of the examination to be conducted by such person.

21         That is our suggestion on how to deal with it.  We

22 are not looking to go again to the Third Circuit on these

23 issues; we want to move this along quickly.  We would like

24 the U.S. Trustee to look at Webster's and see what

25 consultation says and how it's defined.  But, Your Honor, I

1  think that solves the problem for the moment, and then we can

2  be back in front of you next month and talk about everything

3  else.

4          THE COURT:  All right.  Thank you.

5          Mr. Hackman?  Oh, I'm sorry.

6          MR. PASQUALE:  May I, Your Honor?

7          THE COURT:  Yes.

8          MR. PASQUALE:  Just very quickly, Ken Pasquale

9  from Paul Hastings for the committee.

10          Your Honor has already said, I don't think you're

11  happy with either form of order.  We're agnostic on the

12  order, on the two that were submitted, we think they both go

13  to the same effect at the end of the day.  I did want to

14  mention, however, we do agree, and I think Your Honor has

15  said it, I don't really think there's a dispute but, to the

16  extent that there is, we certainly as the committee want an

17  opportunity to be heard in response to a motion to the Court

18  on the examiner's appointment, and on the scope, duration,

19  and cost of the investigation.  But I think I heard Your

20  Honor already say that, but I wanted it to be clear.

21          THE COURT:  Okay.  Thank you.

22          MR. PASQUALE:  Thank you, Your Honor.

23          THE COURT:  Thank you.

24          MR. HARVEY:  Good afternoon, Your Honor, and may

25  it please the Court, Matthew Harvey from Morris, Nichols,

1   Arsht & Tunnell on behalf of the ad hoc committee.  We'd echo

2   the official committee's comments.  We're, again, agnostic on

3   the form of order, but would like the opportunity to weigh in

4   at the hearing on the application or the motion, Your Honor.

5            Thank you.

6            THE COURT:  Okay.  Thank you.

7            MR. HACKMAN:  Thank you, Your Honor, Ben Hackman

8   for the U.S. Trustee.

9            Your Honor, I generally don't have an issue with

10  -- I would have to see the order, but what I believe Mr.

11  Bromley said was he was agreeable to the order directing the

12  U.S. Trustee to appoint, and that is what we want.  We are

13  not required to tell the debtors who we've been interviewing;

14  we do not need to tell them who has been giving us

15  expressions of interest.

16           THE COURT:  Well, what does it mean in 1104(d)

17  when it says after consultation with interested parties, what

18  does that mean?  It has to mean something.

19           MR. HACKMAN:  So in Capital Services and

20  Investments, Inc., it's 90 B.R. 383, 385 (Bankr. C.D. Ill.

21  1988), the court wrote that consultation is not defined in

22  the Bankruptcy Code.  The dictionary defines consult as to

23  seek advice or information from, or guidance from.

24           Consultation -- and then further down it says,

25  consultation with parties in interest is required to apprise

1  the United States Trustee of the special requirements of the

2  case.

3          Respectfully, it does not require us to waive

4  deliberative process; it does not require us to tell the

5  debtors what we're thinking.  So we would reserve all rights

6  on that issue.

7          When our office moved for an examiner originally,

8  Mr. Bromley scoffed at the United States Trustee for wanting

9  bleach and sunshine during the exam -- in requesting that

10  relief.  The debtors complained to the District Court and the

11  Third Circuit that the U.S. Trustee was on a, quote, "policy

12  crusade," end quote, in seeking an examiner.  They complained

13  to the Third Circuit at oral argument that the U.S. Trustee

14  wanted to, quote, "boil the ocean," end quote.  They

15  criticized the Third Circuit's decision after it came down

16  and announced it had erroneous dicta in it.  They told the

17  U.S. Trustee at last month's status conference that he should

18  sit down and be quiet and take the win.  And today they're

19  referencing this process as Kafkaesque.

20          The Third Circuit wrote in its opinion that the

21  examiner's requirement of disinterestedness, quote, "is

22  particularly salient here where issues of potential conflicts

23  of interest arising from debtors' counsel serving as

24  prepetition advisers to FTX have been raised repeatedly.  In

25  enacting subsection 1104(c)(2), Congress made certain that

 1  neither the Bankruptcy Court, nor the appellees, could deem

 2  these issues unworthy of an outside investigation in this

 3  particular bankruptcy," end quote.

 4       So, Your Honor, I -- and one other thing.  To be

 5  clear, our expectation is that when we file -- once Your

 6  Honor enters an order, assuming Your Honor enters an order

 7  directing us to appoint an examiner, we would file an

 8  application under 2007.1(c) that seeks approval of the

 9  appointment, that lays out what the proposed scope, cost, and

10  duration would be, and parties in interest would have an

11  ability to be heard at the hearing on that application.

12       Unless Your Honor has any questions for me, that's

13  all I have.

14       MR. BROMLEY:  Your Honor, may I?

15       THE COURT:  Go ahead, Mr. Bromley.

16       MR. BROMLEY:  I just want to object in the

17  strongest terms possible to Mr. Hackman's reference to

18  anything relating to my law firm.  As Mr. Hackman knows, his

19  office withdrew an objection to our retention and agreed that

20  the firm is disinterested, and for Mr. Hackman today to say

21  anything otherwise is completely inconsistent with the

22  record.  And the statement of his colleague from the

23  Department of Justice Appellate Division at oral argument in

24  front of the Third Circuit was equally erroneous.  We just

25  want to make that clear on the record.

1         The U.S. Trustee's Office withdrew their objection

2  and agreed to the entry of the order; that is the record.

3         THE COURT:  Okay.

4     (Pause)

5         THE COURT:  All right.  Well, I think -- one

6  issue, I think, is clear, that the order should say that the

7  U.S. Trustee is appointing the examiner.  They have the

8  ability to select the examiner and appoint them subject to

9  Court approval.  That should be in the order as well, subject

10 to Court approval.

11        Rule 2007.1(c) only addresses the question of the

12 actual appointment; it doesn't talk about scope, duration,

13 costs of any investigation to be conducted by the examiner.

14 It says, an order approving the appointment of a trustee or

15 examiner under 1104(d) of the Code shall be made on

16 application of the United States Trustee.  The application

17 shall state the name of the person appointed and, to the best

18 of the applicant's knowledge, all the person's connections

19 with the debtor, et cetera, et cetera.  The application shall

20 state the names of the parties in interest with whom the

21 United States Trustee consulted regarding the appointment.

22        Who have you consulted with, Mr. Hackman?

23        MR. HACKMAN:  Your Honor, we've consulted with the

24 debtors, the official committee, the ad hoc committee, the

25 joint official liquidators, state agencies who had originally

1  filed joinders to the motion for an examiner.  There have

2  been others.  We would state who all the people we've

3  consulted with are in the application.

4          THE COURT:  Okay.  And did you say you've already

5  selected somebody?

6          MR. HACKMAN:  I don't know that I'm authorized to

7  comment on that, Your Honor.  I think --

8          THE COURT:  Well, you can say whether you did --

9  you've selected someone or not.

10          MR. HACKMAN:  I'm sorry, Your Honor?

11          THE COURT:  You can say whether you've selected

12  someone or not.  There's nothing in the Code that says you

13  can't tell me whether or not you've selected somebody.

14          MR. HACKMAN:  So I don't know if the final

15  decision has been made at this point.  My understanding is

16  that once there is an order directing us to appoint, that

17  will be finalized, and an application will be ready in short

18  order.  I -- yeah.

19          THE COURT:  Well, how much time are we talking

20  about here?  Because, otherwise, I'm going to give you a

21  time.

22          MR. HACKMAN:  If Your Honor were to enter an order

23  today, I would expect early next week we could have an

24  application filed, by Monday or Tuesday.

25          THE COURT:  All right.  Then 2007.2 goes on to

1   say, the application shall be accompanied by a verified

2   statement of the person appointing setting forth the person's

3   connections with the debtor, et cetera, et cetera, but

4   nothing about scope, duration, and cost of the investigation.

5           So there's nothing in the Code that tells me how

6   to do that part of this.  All the Code talks about is the

7   appointment of the examiner.

8           So the order, I think, should be along the lines

9   of what Mr. Bromley was talking about that the U.S. Trustee

10  shall appoint, subject to Court approval, an examiner.  The

11  U.S. Trustee will also file a motion seeking approval of the

12  scope, duration, and cost of any investigation to be

13  conducted by that examiner.  And that will be put out on

14  notice, so that parties can be heard on those issues.

15          Does that make sense?  Did I forget something?

16          MR. HACKMAN:  Your Honor, just so I'm clear, there

17  would be one application under 2007.1(c) that addresses

18  appointment, as well as scope, duration, and costs, is that

19  what Your Honor is saying, or do you want separate --

20          THE COURT:  Well, 2007.1 does not address the

21  issue of scope, duration, and costs.  It just says the

22  appointment and that you have to submit information to show

23  who you consulted with and that the person has no conflicts

24  or they're disinterested.  So it doesn't address that issue.

25          So the question is -- and I'm thinking out loud

1    here -- do I do that as a part of a 2007.1 order, or do I

2    have you file a separate motion seeking the scope, duration,

3    and costs of the investigation.  I know we've done this

4    before.  In Cred Inc. we did it as a two-step process, right?

5    We did the appointment and then we had a separate -- was

6    there a motion that was filed in Cred Inc. on the scope,

7    duration, and costs?

8            MR. HACKMAN:  I'm not entirely sure, Your Honor,

9    but I believe it was a two-step process.

10           THE COURT:  Ms. Richenderfer, do you recall?

11           MS. RICHENDERFER:  Good afternoon, Your Honor,

12   Linda Richenderfer from the Office of the United States

13   Trustee.  I do believe that there was first the application

14   and then -- with the name of the examiner, and then there was

15   a second document that was filed, I think it was even called

16   -- it might even have been called a notice because the plan,

17   the work plan, if you will, was put together to a great

18   degree by the examiner in that case.

19           And when we talked about this at the status

20   conference before, Your Honor noted that you wanted to -- I'm

21   just looking at page 25 -- you said you wanted to shortcut

22   the process a bit.  And so you gave us your preliminary views

23   on what you thought should be the scope, I think duration

24   also, and even -- I think you even mentioned, yeah, about a

25   low-seven-figure number was what you said.  So you talked

1  about addressing all of those together in one document.

2          So I think we anticipated filing an application as

3  soon as possible, hopefully hearing it before Your Honor on

4  the 13th of March, and it would include the identity and

5  would also address scope, duration, and cost.  So then the

6  issue is teed up for Your Honor.  And people can put their

7  thoughts and comments in documents filed with the Court

8  and/or during the hearing, because we have what Your Honor

9  has said about this and I think that, you know, this is

10 information that everyone will be taking into account what

11 Your Honor said about scope, duration, and cost, mindful of

12 what the Code says.  The Code says that shall appoint -- and

13 I forget the exact language that follows, but basically the

14 discretion regarding the scope --

15         THE COURT:  Shall appoint subject to Court

16 approval, I think.

17         MS. RICHENDERFER:  Subject to Court approval,

18 that's right, Your Honor.  And so that's what -- without Your

19 Honor's order, we don't have the authority to appoint

20 anybody.  Once we get Your Honor's order, the simple order we

21 were seeking directed by the Third Circuit, we can appoint,

22 and then we could file all of the information and everyone

23 can do what they want to do with it.

24         The consultation, we've received very good

25 comments from everybody.  Debtors, we received some comments,

1  and we tried to take all the comments into consideration.  So

2  the consultation has occurred; if they don't like the

3  results, Your Honor gets to decide it, I guess.

4         THE COURT:  Well, I guess the question is only --

5  on the appointment issue is does the person meet the

6  requirements of the Code --

7         MS. RICHENDERFER:  Right.

8         THE COURT:  -- are they disinterested and are -- I

9  guess --

10        MS. RICHENDERFER:  All of that, Your Honor, will

11 be in the application.

12        THE COURT:  I mean, I guess if you tried to

13 appoint somebody who I thought was completely inexperienced

14 in the process or had no basis for being able to do this type

15 of an investigation in the time frame necessary, but that --

16 again, I go back to I might not know who this person is, I

17 might need somebody else to tell me those things.

18        MS. RICHENDERFER:  And, Your Honor, again, that's

19 why we would hopefully submit it early next week.  I say

20 hopefully only because I plan to be on an island off the

21 coast of Mexico next week where I can't be reached, but that

22 it will be submitted next week, I should say, and then,

23 again, listing it for the hearing on the 13th, I am sure that

24 if anyone has anything to say we will all be hearing it.

25        THE COURT:  Okay.  So are we going to do this as a

1 motion?  How are we going to -- I'm trying to figure out how

2 we title this thing.

3         MS. RICHENDERFER:  Yeah, application, Your Honor,

4 is the word that's used throughout.  So rather than the

5 three-step process in Cred, which was motion for permission

6 to appoint, and then Your Honor issued the order saying,

7 okay, go appoint someone, we then filed the application, Your

8 Honor issued the order for the appointment -- issued the

9 order approving the appointment of that particular person,

10 who in that instance was Mr. Stark from Brown Rudnick.

11         THE COURT:  And that included the scope -- it did

12 not include the scope, duration --

13         MS. RICHENDERFER:  It did not because then there

14 was a third submission, which in large part was developed by

15 Mr. Stark himself, in addition with the United States

16 Trustee.  And I was not involved in that portion of it, there

17 may have been some input from committee at the time, I don't

18 know, but there was a very lengthy document and it included

19 scope, it included a work plan, it included ideas about

20 interviewing people.  It was a very, very developed one.

21 Here, I don't think, because of the length of time, that it

22 can be even that developed in terms of allowing that much to

23 occur because Your Honor has stated that you would like to

24 see it limited to reviewing of the examiner report -- or the

25 examinations that have already occurred.  And then, if there

1   are issues, the examiner or others can come back to the Court

2   and seek further time.

3           So I think that's what -- that's what we

4   envisioned was taking steps two and three, combining them

5   together, as Your Honor had suggested, and that's why we

6   appreciated Your Honor's comments at the conference regarding

7   what you thought an appropriate scope, duration --

8           THE COURT:  Okay.

9           MS. RICHENDERFER:  -- and cost would be.

10           THE COURT:  So let me ask you this question:

11   Since I entered an order denying the appointment of an

12   examiner and I was reversed by the Third Circuit, the

13   question is, do I need to enter an order saying that an

14   examiner shall be appointed?

15           MS. RICHENDERFER:  Yes, Your Honor, and that's all

16   we were trying to accomplish with the form of order that we

17   had submitted to the parties in interest.  I don't have it

18   right in front of me here now, and maybe it needed a little

19   bit more wordsmithing or Your Honor would like some more

20   wordsmithing.

21           THE COURT:  Well, I think the debtors' version of

22   it included an additional sentence at the beginning that says

23   the motion of the United States Trustee for entry of an order

24   directing appointment of an examiner is hereby granted.  Your

25   order just went right to that the U.S. Trustee is hereby

1  directed to appoint.  I guess it's the same thing.

2  MS. RICHENDERFER:  It's the same thing.  I mean,

3  you know, we tried to be low on the language because every

4  time you write a word, other people have different ideas

5  about what it means.  So we got directly to the point, Your

6  Honor.  But, again, it's -- after the -- you know, just that

7  you're directing us to appoint, that's all we need.

8  THE COURT:  Right.

9  MS. RICHENDERFER:  We need an order that says

10  we're directed to appoint.  And then the process breaks open,

11  and hopefully we're back here then on the 13th and people can

12  start.

13  THE COURT:  Okay.  So I think then the form of

14  order should say something along the lines of that the United

15  States Trustee is directed to appoint an examiner pursuant to

16  Section 1104(d), subject to approval of the Court, and to

17  include in the application the proposed scope, duration, and

18  cost of the investigation to be conducted by the examiner.

19  MS. RICHENDERFER:  Yes, Your Honor.

20  THE COURT:  And I think that resolves the issue.

21  MS. RICHENDERFER:  I think that would accomplish

22  the purpose, yes.

23  THE COURT:  Mr. Bromley?

24  MR. BROMLEY:  Your Honor, I just -- I want to be

25  careful because the -- you know, the scope, duration, cost,

1  that is related to 1104(c)(2), right?  Because the Third

2  Circuit said, well, what does as appropriate modify?  The

3  examination.  All right?

4           So the application, with respect to scope,

5  duration, cost, is not an application under Rule 2007.

6           THE COURT:  Okay.  So I think what we can do then

7  is just include the United States Trustee shall appoint an

8  examiner, pursuant to 1104(d) and pursuant to Section 11 --

9  what is it, 1104 --

10          MR. BROMLEY:  1104(c)(2).

11          THE COURT:  -- (c)(2), shall set forth in the

12 application the proposed scope, duration, and cost.

13          MR. BROMLEY:  That would work, Your Honor.

14          THE COURT:  Okay.

15          MS. RICHENDERFER:  Yeah, that's -- that was what

16 we envisioned.  It's a shame we got tied up in the

17 wordsmithing here, but yes, Your Honor, I think that's the

18 appropriate relief, and then we move from there.

19          THE COURT:  Okay.

20          MR. BROMLEY:  And, Your Honor, we do not have a

21 hearing scheduled for the 13th, we have one scheduled for the

22 20th, so -- so that's when the next hearing is scheduled.

23 I'm not suggesting -- you know, if we're all planning on

24 being here for the 13th, there's nothing on the calendar

25 right now for the 13th.  The 20th is fine?

1           MS. RICHENDERFER:  Your Honor, we apologize.  For

2   some reason, we had an old -- we had something that looked

3   like it was scheduled for the 13th and I guess that's -- the

4   20th is fine.

5           THE COURT:  Okay.  Yeah, the 20th is the next one

6   that I have.

7           MS. RICHENDERFER:  Oh, the 13th is the interim fee

8   application --

9           UNIDENTIFIED SPEAKER:  It was pushed to the 20th.

10          MS. RICHENDERFER:  -- and then that's bee pushed

11  to the 20th --

12          THE COURT:  Pushed to the 20th.

13          MS. RICHENDERFER:  -- now.  So that's why the 13th

14  has come off and we're all going to be here on the 20th.

15          THE COURT:  Okay.  Is that fine?  Is that an

16  acceptable date, from the debtors' perspective?

17          MR. BROMLEY:  That's acceptable for the debtors,

18  Your Honor.

19          THE COURT:  Okay.  All right, so let's do that.

20          MR. BROMLEY:  Thank you, Your Honor.

21          THE COURT:  Okay.  I think this is the longest

22  I've spent on a one-paragraph order ever.

23      (Laughter)

24          THE COURT:  All right.  So just submit it under

25  COC when you're ready.  Okay?

1          Anything else then for today?

2          MR. LANDIS:  That is all, Your Honor.

3          THE COURT:  All right.  Thank you all very much.

4  We're adjourned.

5      (Proceedings concluded at 2:21 p.m.)

1                              CERTIFICATION

2              We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                    February 22, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                    February 22, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25