# **Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 6950 & 7906** |

### ORDER AUTHORIZING AND APPROVING (I) PROCEDURES FOR SALE OF DEBTORS' EQUITY INTERESTS IN ANTHROPIC, PBC; AND (II) SALE(S) OF SUCH EQUITY INTERESTS IN ACCORDANCE WITH SUCH PROCEDURES FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

Upon the motion (the "Motion")[2] of FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to sections 105(a), 107(b) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 6004 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1, 9006-1 and 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving (a) the Sale Procedures for the sale or transfer of the Anthropic Shares, (b) the sale(s) of the Anthropic Shares in accordance with the Sale Procedures (as defined below) free and clear of any liens, claims, interests and encumbrances (except as set forth in the Sale Procedures), and (c) the redaction and filing under seal of certain confidential commercial information contained

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

in the Sale Procedures; and this Court having jurisdiction to consider the Motion pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012; and this Court being able to

issue a final order consistent with Article III of the United States Constitution; and venue of

these Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and

this Court having found that proper and adequate notice of the Motion and the relief requested

therein has been provided in accordance with the Bankruptcy Rules and the Local Rules; and

that, except as otherwise ordered herein, no other or further notice is necessary; and objections

(if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing

(the "Sale Procedures Hearing") having been held to consider the relief requested in the Motion

and upon the record of the hearing and all of the proceedings had before this Court; and this

Court having found and determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    This Court has jurisdiction to consider the Motion pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012.  This Court may

issue a final order on the Motion consistent with Article III of the United States Constitution.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      The Debtors' notice of the Motion, the Sale Procedures, the Sale Procedures Hearing and the proposed entry of this Order was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other or further notice is required, except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

C.      The Sale Procedures set forth in this Order were proposed in good faith by the Debtors, are fair, reasonable and appropriate under the circumstances and are properly designed to maximize the recovery from any Sale (as defined below) of the Anthropic Shares. The Debtors have demonstrated good and sufficient business reasons for this Court to enter this Order, and such good and sufficient reasons, which are set forth in the Motion and on the record at the Sale Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

D.      The form and manner of notices to be delivered pursuant to this Order, including the Sale Notice and the Auction Notice, are (i) reasonably calculated to provide all interested parties with timely and proper notice; (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of these Chapter 11 Cases.

E.　　Subject to compliance with the Sale Procedures, the Debtors may sell the Anthropic Shares free and clear of any interests in such Anthropic Shares of any kind or nature whatsoever (except as set forth in the Sale Procedures) because in each case one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.

F.　　The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties-in-interest.

IT IS HEREBY ORDERED THAT:

1.　　The Motion is hereby GRANTED as and to the extent set forth herein.

2.　　The Sale Procedures are approved as follows:

(a) Assets.  The Anthropic Shares.

(b) Method of Sale.  The Debtors, in consultation with the Official Committee and the Ad Hoc Committee of Non-US Customers of FTX.com (the "AHC", and together with the Official Committee, the "Consultation Parties"), may pursue, no earlier than February 28, 2024 or such other earlier date as agreed to with the Consultation Parties, the sale of all or a portion of the Anthropic Shares in one or a series of public auctions as contemplated by paragraph (d) below or private sale transactions as contemplated in paragraph (e) below (each, a "Sale"), in each case to a single purchaser or multiple purchasers and in compliance with these Sale Procedures.

(c) Required Terms.  Regardless of the method of Sale, the documentation for any Sale shall include provisions acceptable to the Debtors that the Anthropic Shares are being transferred (i) "as is," "where is," and "with all faults," (ii) without any indemnity to the purchaser(s) thereof, and (iii) free and clear of all liens, claims, interests and encumbrances (other than permitted encumbrances approved by the Debtors, including restrictions arising under applicable securities laws or as set forth in the Company Documents or the legends on certificates of the Anthropic Shares), with any such liens, claims, interests and encumbrances attaching only to the sale proceeds with the same validity, extent and priority as existed immediately prior to the Sale.

(d) Auction Procedures.  The Debtors may, in consultation with the Consultation Parties, hold one or a series of auctions (each, an "Auction") at any time after entry of the Order approving this Motion.  The Debtors

shall conduct any Auction in accordance with the following procedures and any supplemental procedures the Debtors consider appropriate and in the best interests of the Debtors' estates.

(i)  To the extent that the Debtors, in consultation with the Consultation Parties, determine to hold an Auction, the Debtors shall file a notice of Auction (the "Auction Notice") with the Court upon notice to Anthropic and all parties in interest, and the Debtors shall provide Anthropic and the legal counsel and financial advisors to the Consultation Parties with five (5) business days' prior notice of the Auction Notice, including a copy of such Auction Notice.  The Auction Notice shall include the date, time and location of the Auction and the number of Anthropic Shares for sale at the Auction.  The Auction Notice also may include any supplemental procedures applicable to the Auction.  The Auction Notice shall be served on each of the Sale Notice Parties (as defined below).  The date of the Auction shall be no less than ten (10) business days after the date of the Auction Notice.

(ii)  Only "Qualified Bidders" will be permitted to bid at an Auction. In order to become a Qualified Bidder, an interested party must make the following deliveries to the Debtors no later than ten (10) calendar days after the date of the Auction Notice, unless the Debtors determine, in consultation with the Consultation Parties, to waive one or more of the requirements for such interested party; provided, that, the Debtors cannot waive the requirement for the bidder questionnaire without the prior consent of Anthropic.

(A)  A written statement of the number of Anthropic Shares on which the bidder seeks to bid, and the proposed per share price for such Anthropic Shares;

(B)  Sufficient evidence of the bidder's financial capacity and any required authorizations to close the Sale without material delay, including without limitation, such bidder's current audited (if applicable) financial statements and information for determining whether any regulatory approvals are required to close the Sale;

(C)  a complete draft purchase agreement, together with all exhibits and schedules, marked to show any amendments and modifications to the form of purchase agreement provided by the Debtors for the Auction, which form purchase agreement shall be made available to bidders, Anthropic and the Consultation Parties and filed with the Court upon issuance of the Auction Notice;

(D)  the interested party's agreement to such terms and conditions as may be required by the Debtors to register to bid and participate in the Auction;

(E) a written certification that such bidder is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and that such bidder has no connection(s) with, nor any agreement(s) with, any current or former member of the Official Committee or AHC related to the sale;

(F) responses to a bidder questionnaire; and

(G) if requested by the Debtors, a cash deposit by wire transfer (the amount of which shall be set by the Debtors in their sole discretion) to be held in an escrow account to be identified and established by the Debtors (the "Good Faith Deposit").

(iii) No bid submitted during an Auction may contain any financing or due diligence contingency. Any such bid will not be considered a qualified bid. The bid of any Successful Bidder (as defined below) will be binding whether or not the Successful Bidder has obtained financing or completed its due diligence investigation.

(iv) Upon the commencement of the Auction, the Debtors may, in consultation with the Consultation Parties, identify the bid that represents the lead highest and best bid(s) for purposes of the Auction. Upon the conclusion of an Auction, the Debtors may, in consultation with the Consultation Parties, (A) identify and certify the bid or bids that constitute the highest or best offer or offers for the applicable Anthropic Shares (each such bid, a "Successful Bid", and each person submitting such bid, a "Successful Bidder"), and (B) identify and, in consultation with the Consultation Parties, certify the bid or bids that constitute the next highest or best offer or offers for the applicable Anthropic Shares (each such bid, a "Backup Bid", and each person submitting such a bid, a "Backup Bidder"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s).

(v) Subject to paragraph (g) (*Sale Objections*), once the Debtors close the Auction, the Debtors are authorized to consummate the Sale with the Successful Bidder pursuant to the Successful Bid (or any Backup Bid, to the extent applicable, as set forth herein) and shall have no obligation to consider any subsequent higher and better offer.

(vi) All Good Faith Deposits will be returned to any Qualified Bidder who is not a Successful Bidder or a Backup Bidder; provided, however, that if a Successful Bidder fails to consummate a transaction within five (5) business days after the closing deadline set forth in the purchase agreement for the Successful Bid or otherwise mutually agreed to by the Debtors and the Successful Bidder, (A) the Debtors will not have any obligation to return the Good Faith Deposit of such Successful Bidder and shall be entitled to retain (and the Successful Bidder shall forfeit) such Good Faith

Deposit which shall irrevocably become the property of the Debtors; and (B) if the Debtors selected a Backup Bidder, the Debtors shall proceed to closing the Sale with the Backup Bidder. Within two (2) business days of closing the Sale with the Successful Bidder, the Debtors shall return the Good Faith Deposit to the Backup Bidder.

(e) <u>Private Sales</u>.  The Debtors are authorized to consummate, in consultation with the Consultation Parties and without an Auction, the sale of the Anthropic Shares in one or more private sale transactions (each, a "<u>Private Sale</u>"), subject to paragraph (g) (*Sale Objections*).  Prior to entering into any definitive agreement for a Private Sale, the Debtors shall provide the UST, Anthropic and the firms serving as the legal counsel and financial advisor to the Consultation Parties five (5) business days' prior notice of such sale(s) and all applicable Sale Disclosures then available and shall provide Anthropic and the firms serving as the legal counsel and financial advisor to the Consultation Parties a copy of responses to the bidder questionnaire(s) from the purchaser(s).

(f) <u>Sale Disclosures</u>.

(i)  No later than two (2) business days after entering into a definitive purchase agreement with respect to any Sale, the Debtors shall file with the Court a notice of the following (as described below, the "<u>Sale Disclosures</u>"):

(A) a list of each purchaser, the number of Anthropic Shares to be purchased, and the aggregate purchase price to be paid;

(B) in the case of an Auction, the identity of any Backup Bidder and the terms of the back-up bid, if any;

(C) a proposed sale order in substantially the form attached to the Order as <u>Exhibit 1</u> (a "<u>Sale Order</u>"), which, among other things, authorizes the Debtors to consummate such Sale and approves the terms of such Sale, and a marked version against the form showing any changes;

(D) a copy of the executed purchase agreement; and

(E) declarations from the Debtors, the purchaser(s) or other parties with respect to such matters as the Debtors may determine, if required as support for entry of the proposed Sale Order.

(ii)  All parties' rights with respect to sealing any information in any Sale Disclosures are expressly reserved.

(iii) The Debtors shall serve a copy of the Sale Disclosures (by email or, if email is not available, by overnight mail) to the following parties: (A) the U.S. Trustee; (B) counsel to the Official Committee; (C) counsel to the AHC; (D) any known affected creditor(s) asserting a lien, claim or encumbrance against, or

interest in, the relevant Anthropic Shares; (E) any known interested or affected governmental or regulatory entity; (F) any party who, in the discretion of the Debtors, would meet the financial and other eligibility criteria of a Qualified Bidder known by the Debtors to have expressed a written interest in purchasing Anthropic Shares during the last six (6) months; (G) Anthropic and counsel to Anthropic; and (H) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties").

(g) Sale Objections.  In the case of all Sales, the Debtors shall submit the Sale Order for entry under certification of counsel filed with the Court upon notice to all parties-in-interest and Anthropic (the "Initial Notice"), and the Debtors shall provide Anthropic and the advisors to the Consultation Parties five (5) business days' prior notice of such Initial Notice. Objections to any Sale must be (A) in writing and state with specificity the basis for objecting and (B) filed with the Court and served (which service may be by email) on (1) the U.S. Trustee; (2) counsel to the Debtors; (3) counsel to the Official Committee; and (4) counsel to the AHC (collectively, the "Sale Objection Notice Parties") within five (5) business days of the date of the Initial Notice at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline").  If neither any party-in-interest nor Anthropic objects in writing to a proposed Sale by the Sale Objection Deadline, the Debtors may submit the Sale Order for entry under certification of counsel.  If a party-in-interest or Anthropic files with the Court and serves on the Sale Objection Notice Parties a written objection to a proposed Sale on or prior to the Sale Objection Deadline, then the Debtors may only consummate the Sale upon withdrawal of such objection, submission of a consensual form of order resolving the objection between the Debtors and the objecting party, or upon further order of the Court.  Subject to the Court's availability, the Debtors may seek an expedited hearing before the Court to resolve the objection.  After all timely filed objections have been addressed, the Debtors may submit the Sale Order for entry under certification of counsel.  Immediately upon entry of the Sale Order, the Debtors may consummate the proposed Sale on the terms set forth in the Sale Order and the applicable documentation executed in connection with such Sale; provided, that, if any party-in-interest or Anthropic has filed an objection in accordance with these procedures, absent written consent of the objecting party, the Sale Order shall not contain a waiver the stay provided in Bankruptcy Rule 6004(h).

(h) Modification; Fiduciary Duties.  To the extent consistent with applicable law, the Debtors may, in consultation with the Consultation Parties, (A) adopt such additional rules and procedures at or prior to any Auction(s), (B) modify or amend the Sale Procedures or waive the terms and conditions set forth in the Sale Procedures with respect to any or all potential bidders, and (C) adjourn, reschedule or cancel all or any portion of the sale process contemplated by these Sale Procedures; provided, that,

in no case shall the Debtors take the action set forth in clause (B) above with respect to rights specific to Anthropic in these Sale Procedures adverse in any material respect to Anthropic without the prior written consent of Anthropic or following an order from the Court. Notwithstanding anything to the contrary contained herein, nothing in these Sale Procedures will require the Debtors to take any action, or to refrain from taking any action, unless the Debtors determine necessary to comply with their respective fiduciary duties under applicable law.

(i) <u>Beneficiaries</u>.  These Sale Procedures are for the benefit of the Debtors and their estates.  No interested party, Qualified Bidder or third party shall have any right or benefit hereunder at any time, nor shall the Debtors have any monetary liability to any person in connection with any failure or alleged failure to comply with these Sale Procedures.

(j) <u>Information Access</u>.  The Debtors and their advisors shall provide the legal counsel and financial advisor of the Consultation Parties with regular updates as to the status of the marketing process, including parties contacted, bids received, and other information reasonably requested by the Consultation Parties to evaluate the marketing process (it being understood that the members of the Official Committee shall be entitled to receive bid information with bidder identities redacted).  The Consultation Parties shall provide the Debtors and their advisors with regular updates as to their views, and prompt updates of any material concerns, with respect to the sale process and the bids received.

3.    Nothing in this Order approves any bid protections, and the Debtors shall seek court approval of any bid protections on notice to parties-in-interest.

4.    Pursuant to section 363(f) of the Bankruptcy Code, any sale of the Anthropic Shares in accordance with this Order shall be free and clear of any liens, claims, encumbrances and interests (except as set forth in the Sale Procedures), with any such liens, claims, encumbrances and interests to attach to the proceeds of such sale (or any Debtor's rights against any other Debtor under the *Amended Final Order (I) Authorizing the Debtors to (A) Operate a Postpetition Cash Management System, (B) Maintain Existing Business Forms and (C) Perform Intercompany Transactions, (II) Granting A Partial Waiver of the Deposit Guidelines Set Forth in Section 345(b) and (III) Granting Certain Related Relief* [D.I. 1706]) with the same validity, priority, force and effect as such liens, claims, encumbrances and

interests had on the sold assets immediately prior to the sale, subject to the rights, claims, defenses and obligations, if any, of the Debtors, the Kavuri Parties (Sunil Kavuri, Ahmed Abd-El-Razek, Noia Capital SÀRL and Pat Rabitte) and all interested parties with respect to any such asserted liens, claims, encumbrances and interests.

5.      The Sale Procedures shall not apply to the sale of any causes of action against any current or former employee, director, officer or professionals of the Debtors, and the Debtors shall not sell or release any causes of action against any current or former employee, director, officer or professionals of the Debtors in connection with any sale of the Anthropic Shares.  For the avoidance of doubt, the Debtors may release causes of action against the applicable Anthropic Shares, Anthropic and the purchaser of any Anthropic Shares in connection with such purchase (solely in the purchaser's capacity as such); provided, however, that if the Debtors release or sell causes of action, the Debtors shall comply with the procedures set forth in paragraph 2 and specify within the Sale Disclosures any releases or sale of causes of action in connection with a sale of the Anthropic Shares.  The rights of all parties-in-interest to object to any such releases or sale(s) of causes of action in connection with a sale of the Anthropic Shares is fully reserved.

6.      All rights of all parties-in-interest in these cases to object to a Sale of the Anthropic Shares in accordance with the Sale Procedures are hereby expressly reserved; provided, however, that subject to the objection deadlines set forth in the Sale Procedures, notwithstanding anything contained herein or in the Sale Procedures otherwise to the contrary, all rights of the Consultation Parties and UST to object to any Sale, whether conducted through an Auction or a Private Sale, are hereby expressly preserved.

7.     The absence of a timely objection to the sale or transfer of the Anthropic Shares in accordance with the Sale Procedures and the terms of this Order shall constitute "consent" to such sale or transfer free and clear of liens and claims (except as set forth in the Sale Procedures) within the meaning of section 363(f)(2) by any party asserting liens, claims, encumbrances against, and other interests in, any Anthropic Shares, as applicable.

8.     The Debtors are authorized to take any action that is reasonable and necessary to close the Sales and to obtain the proceeds thereof in accordance with and subject to the Sale Procedures.

9.     The noticing procedures as set forth in this Order are hereby approved. Within three business days after entry of this Order, the Debtors shall serve this Order, together with any attachments, by first-class mail (and/or by email, as applicable) upon the Sale Notice Parties.  On or prior to the same date, the Debtors shall publish this Order on the Debtors' case information website (located at https://restructuring.ra.kroll.com/FTX).  Service of this Order and for each proposed Sale, the respective Sale Disclosures on the Sale Notice Parties and publication thereof in the manner described in this Order, to the extent required by the Sale Procedures, constitutes good and sufficient notice of the Debtors' such proposed Sale of the Anthropic Shares free and clear of any liens, claims, interests and encumbrances (except as set forth in the Sale Procedures), pursuant to Bankruptcy Code section 363(f).  No other or further notice is required, except as otherwise set forth herein.

10.     Except for Anthropic, all persons or entities that participate in the sale process shall be deemed to have knowingly and voluntarily submitted to the jurisdiction of this Court with respect to all matters related to the Sale Procedures.

11.     The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

12.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Sale Procedures Hearing, nothing in the Motion, this Order, or announced at the Sale Procedures Hearing constitutes a finding under the federal securities laws as to whether transactions involving the Anthropic Shares are securities transactions, and the right of the United States Securities and Exchange Commission to challenge transactions involving the Anthropic Shares on any basis are expressly reserved.

13.     The Debtors shall file a report of all sales consummated pursuant to the Sale Procedures, including date(s) of the purchase(s), number of Anthropic Shares sold, identity of the purchaser(s) and purchase price, within one month of the later of, unless an earlier time is agreed between the Debtors and Anthropic, (i) December 31, 2024 and (ii) the effective date of a confirmed chapter 11 plan; provided that all parties' rights with respect to sealing any information in such report are expressly reserved.

14.     Nothing contained herein shall be deemed to modify, amend, waive, or alter the Company Documents or any rights of Anthropic or the Debtors under the Company Documents.  Anthropic has not waived any rights under the Company Documents and all such rights are expressly reserved.  Failure to object to the Sale Procedures shall not be deemed a waiver, modification or amendment to any of Anthropic's rights or any term of any Company Document, and any Bankruptcy Court order approving these Sale Procedures shall not, and the Debtors shall be precluded from raising any defenses that failure by Anthropic to object to this Order will, bar, estop or limit in any manner, Anthropic's right to object to any Sale.  Nothing in

the Sale Procedures or this Order shall constitute an admission by the Debtors that Anthropic is a party-in-interest with respect to any Sale.

15.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

16.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

17.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

18.     This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

19.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

# EXHIBIT 1

**Form of Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. [●]** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF EQUITY INTERESTS IN ANTHROPIC, PBC FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon (i) the motion (the "<u>Motion</u>")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Sale Order</u>"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), authorizing and approving (a) procedures (the "<u>Sale Procedures</u>") for the sale of all or a portion of the shares of Series B Preferred Stock (the "<u>Anthropic Shares</u>") held by Debtor Clifton Bay Investments LLC in Anthropic PBC, a Delaware public benefit corporation, (b) the sale(s) of the Anthropic Shares in accordance with the Sale Procedures free

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

and clear of any liens, claims, interests and encumbrances, and (c) redaction and filing under seal of certain confidential commercial information, (ii) this Court's order approving the Motion [D.I. [●]] (the "<u>Sale Procedures Order</u>"), and (iii) the Purchase and Sale Agreement (the "<u>Purchase and Sale Agreement</u>", and the transactions contemplated thereby, the "<u>Sale Transaction</u>"), dated as of [●], 2024, a copy of which is attached as [●] to the Sale Disclosures notice in accordance with the Sale Procedures, between Debtor FTX Trading Ltd., a company established under the laws of Antigua and Barbuda ("<u>Seller</u>"), and [*name of Purchaser[s]*] (["<u>Purchaser</u>"][each, a "<u>Purchaser</u>" and together, "<u>Purchasers</u>"]); and this Court having jurisdiction to consider the approval of the Purchase and Sale Agreement in accordance with the Sale Procedures pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and this matter in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Agreement and the relief requested therein has been provided in accordance with the Sale Procedures, Bankruptcy Rules and the Local Rules; and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the relief requested having been withdrawn, resolved or overruled on the merits; and upon the record of all of the proceedings had before this Court; and this Court having found and determined that the legal and factual bases establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.   <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this matter and over the property of the Debtors' estates pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court may issue a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.   <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for the approvals and authorization herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.

C.   <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

D.   <u>Compliance with the Sale Procedures</u>.  The Sale Procedures provided a full, fair and reasonable opportunity for any party to make an offer to purchase the Anthropic Shares.  The disclosures made by the Debtors with respect to the Purchase and Sale Agreement

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

and the Sale Transaction were good, complete and adequate.  The Debtors (including Seller), Purchaser[s] and their respective counsel and other advisors have complied, in good faith, with the Sale Procedures Order and the Sale Procedures in all respects.  Through marketing efforts and a competitive sale process conducted in accordance with the Sale Procedures, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Anthropic Shares, (ii) provided potential purchasers sufficient information to enable them to make an informed judgment on whether to bid on the Anthropic Shares and (iii) considered any bids properly submitted in accordance with the Sale Procedures on or before the deadline for bidding. [Purchaser[s] submitted a qualified bid pursuant to the Sale Procedures approved by this Court and [was][were] determined to be the Successful Bidder[s] for the Anthropic Shares.]

E.    <u>No Collusion</u>.  [No Purchaser is][Purchaser is not] an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Purchase and Sale Agreement and the Sale Transaction were negotiated, proposed and entered into by Seller and [each] Purchaser without collusion or fraud, in good faith and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.  Neither the Debtors nor [any] Purchaser has engaged in any conduct that would cause or permit the Purchase and Sale Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor [any] Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, [no Purchaser has][Purchaser has not] acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.  The Sale Transaction may not be avoided, and no damages may be assessed against [any] Purchaser or any

4

other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

F.    <u>Good Faith of Purchaser[s]</u>. [Each] Purchaser is purchasing [its respective portion of] the Anthropic Shares in good faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code. [Each] Purchaser is therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) [each] Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Anthropic Shares; (b) [each] Purchaser complied with the provisions in the Sale Procedures Order; (c) [each] Purchaser in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (d) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by [each] Purchaser in connection with the Sale Transaction have been disclosed; (e) [no Purchaser has][Purchaser has not] violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) the negotiation and execution of the Purchase and Sale Agreement were at arm's length and in good faith, and at all times [each] Purchaser and Seller were represented by competent counsel of their choosing; and (g) [no Purchaser has][Purchaser has not] acted in a collusive manner with any person. [Each] Purchaser will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Purchase and Sale Agreement.

G.    <u>Highest and Best Offer</u>. The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Anthropic Shares and conducted the related sale process contemplated by the Sale Procedures Order, and a reasonable

opportunity has been given to any interested party to make a higher or better offer for the Anthropic Shares. No other person or entity or group of entities has offered to purchase the Anthropic Shares for higher or otherwise better value to the Debtors' estates than Purchaser[s]. The offer to purchase the Anthropic Shares made by [each] Purchaser, under the terms and conditions set forth in the Purchase and Sale Agreement: (a) was made in good faith and complied in all respects with the Sale Procedures Order; (b) is the highest or otherwise best offer obtained for the Anthropic Shares and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Anthropic Shares being conveyed to [such] Purchaser; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by [such] Purchaser absent the protections afforded to [such] Purchaser by this Sale Order.

H.     The Debtors' determination that the Sale Transaction, pursuant to the Purchase and Sale Agreement, provides the highest or otherwise best offer for the Anthropic Shares, and their related decision to sell the Anthropic Shares, constitute a reasonable exercise of the Debtors' business judgment. The facts and circumstances demonstrate the Debtors' business judgment to sell the Anthropic Shares to Purchaser[s] at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Anthropic Shares outside of a chapter 11 plan. Moreover, the sale of the Anthropic Shares outside of a chapter 11 plan pursuant to the Purchase and Sale Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan. The Sale Transaction does not constitute a *sub rosa* chapter 11 plan. It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

6

I.      <u>Fair Consideration</u>.  The consideration provided by [each] Purchaser pursuant to the Purchase and Sale Agreement constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  [No other Qualified Bidder has offered to purchase the Anthropic Shares for higher or otherwise better value to the Debtors' estates than Purchaser(s).]

J.      <u>No Successor or Other Derivative Liability</u>.  As a result of any action taken in connection with the Sale Transaction, the Purchase and Sale Agreement, or this Sale Order: (a) [no Purchaser is][Purchaser is not] a successor to or mere continuation of or substantial continuation of the Debtors or their estates and there is no continuity of enterprise between any Purchaser and the Debtors; and (b) [no Purchaser shall be][Purchaser shall not be] deemed to be holding itself out to the public as a continuation of the Debtors based on the Sale Transaction.  [No Purchaser is][Purchaser is not], or shall [not] be, considered a successor in interest to any of the Debtors or their estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of [any] Purchaser and the Debtors and/or the Debtors' estates.  [No Purchaser would have][Purchaser would not have] entered into the Purchase and Sale Agreement if the sale of the Anthropic Shares were not made free and clear of any successor liability of [such] Purchaser.

K.      <u>Corporate Power and Authority</u>.  As set forth in section [●] of the Purchase and Sale Agreement, Seller (a) has full corporate power and authority to execute and deliver the Purchase and Sale Agreement and all other documents contemplated thereby, (b) has all corporate authority necessary to consummate the Sale Transaction, and (c) has taken all

corporate action and formalities necessary to authorize and approve the Purchase and Sale Agreement and the consummation of the Sale Transaction. Seller's sale of the Anthropic Shares has been duly and validly authorized by all necessary corporate action of the Debtors. No consents or approvals, other than those expressly provided for in the Purchase and Sale Agreement, are required for Seller to consummate the Sale Transaction.

L.      The Purchase and Sale Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor [any] Purchaser is entering into the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

M.      <u>Title to Assets</u>. The transfer of the Debtors' rights, titles and interests to the Anthropic Shares to [each] Purchaser will be, as of the Closing Date (as defined in the Purchase and Sale Agreement), a legal, valid and effective transfer of such rights, titles and interests in [such][the] Anthropic Shares, which transfer vests or will vest [such] Purchaser with all rights, titles and interests of the Debtors to [such][the] Anthropic Shares free and clear of any Liens (as defined below and in the Purchase and Sale Agreement), other than the permitted encumbrances set forth in the Purchase and Sale Agreement (including restrictions arising under applicable securities laws or as set forth in the Company Documents or the legends on certificates of the Anthropic Shares) (such encumbrances, "<u>Permitted Encumbrances</u>"). The Purchase and Sale Agreement is a valid and binding contract between Seller and [each] Purchaser and shall be enforceable according to its terms.

N.      <u>Satisfaction of Section 363(f) Standards</u>. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the

Debtors are authorized to transfer all of their rights, titles and interests in and to the Anthropic Shares free and clear of any interest in the property, other than Permitted Encumbrances.  The Debtors may sell the Anthropic Shares free and clear of any liens (statutory or otherwise), charges, pledges, mortgages, leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first offer or first refusal, servitudes, restrictive covenants or conditions, encroachments, claims, interests, restrictions, or any other encumbrances of any kind (collectively, "Liens"), other than Permitted Encumbrances, against the Debtors, their estates or the Anthropic Shares because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each holder with a Lien on the Anthropic Shares to be transferred pursuant to the Purchase and Sale Agreement: (a) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien; or (c) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Holders of Liens against the Debtors, their estates or the Anthropic Shares who did not object, or who withdrew their objections, to the Sale Transaction (except with respect to Permitted Encumbrances), are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens are adequately protected by having their Liens, if any, in each instance against the Debtors, their estates or the Anthropic Shares, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Anthropic Shares in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

O.      [No Purchaser would][Purchaser would not] have entered into the
Purchase and Sale Agreement or would consummate the Sale Transaction if the sale of the
Anthropic Shares to [such] Purchaser were not free and clear of any Liens (other than Permitted
Encumbrances), or if [such] Purchaser or any of the [applicable] Purchaser Parties (as defined in
the Purchase and Sale Agreement) would, or in the future could, be liable for any such Lien.  The
total consideration to be provided by [each] Purchaser under the Purchase and Sale Agreement
reflects [such] Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a)
and 363 of the Bankruptcy Code, with title to, interest in and possession of the Anthropic Shares
free and clear of any Liens (other than Permitted Encumbrances).  Not transferring the Anthropic
Shares free and clear of any Liens (other than Permitted Encumbrances) would adversely impact
the Debtors' efforts to maximize the value of the estates, and the transfer of the Anthropic Shares
other than pursuant to a transfer that is free and clear of any Liens (other than Permitted
Encumbrances) would be of substantially less benefit to the Debtors' estates.

P.      [Waiver of Bankruptcy Rule 6004(h).   Good and sufficient reasons for
approval of the Purchase and Sale Agreement and the Sale Transaction have been articulated.  The
Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications
and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of
business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11
plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary
and appropriate to maximize the value of the Debtors' estates and progress these Chapter 11 Cases.
Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rule 6004(h)
with respect to the Sale Transaction.  To maximize the value of the Anthropic Shares, it is essential
that the Sale Transaction occur within the time constraints set forth in the Purchase and Sale

10

Agreement.  Time is of the essence in consummating the Sale Transaction and the Debtors and Purchaser[s] intend to close the Sale Transaction as soon as practicable.  Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Aggregate Purchase Price[s] under the Purchase and Sale Agreement, the proposed Sale Transaction should be approved.][4]

Q.    The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

R.    Personally Identifiable Information.  The Sale Transaction does not involve the sale of any personally identifiable information.  Thus, the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

S.    Legal and Factual Bases.  The legal and factual bases establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and their estates.

IT IS HEREBY ORDERED THAT:

A.    **General Provisions**

1.    The sale of the Anthropic Shares and the other relief requested is granted as set forth herein, and the Purchase and Sale Agreement and the provisions thereof and the Sale Transaction are approved in their entirety as set forth herein.

---

[4] Only to be included in the event no objections are filed.

2.      All objections, responses, reservations of rights and requests for any continuances concerning the Sale Transaction are resolved in accordance with the terms of this Sale Order.  To the extent any such objections, responses, reservations of rights or requests for any continuances were not otherwise withdrawn, waived, settled, or resolved, such are hereby overruled and denied on the merits.  All interested parties that failed to timely object to the Sale Transaction are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      Notice of the Purchase and Sale Agreement and the sale of the Anthropic Shares free and clear of any Liens, except Permitted Encumbrances, was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with the Sale Procedures and the Sale Procedures Order.

**B.      Approval of the Purchase and Sale Agreement**

4.      The Purchase and Sale Agreement and all of the terms and conditions thereof are hereby authorized and approved in all respects.  The failure to specifically include or make reference to any particular provision of the Purchase and Sale Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement and the Sale Transaction are authorized and approved in their entirety.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Purchaser[s] in accordance with the terms and conditions of the Purchase and Sale Agreement, (b) close the Sale Transaction as contemplated in the Purchase and Sale Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate and implement the Purchase and Sale Agreement, together with all additional

12

instruments and documents that may be reasonably necessary or desirable to implement the Purchase and Sale Agreement and the Sale Transaction.  [No Purchaser shall][Purchaser shall not] be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase and Sale Agreement or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.     This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in, against or on all or any portion of the Anthropic Shares (whether known or unknown), Purchaser[s] and all successors and assigns of Purchaser[s], the Anthropic Shares and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the Purchase and Sale Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchaser[s] and the respective successors and assigns of each of the foregoing.

**C.     Consummation of the Sale Transaction**

7.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer all of their rights, titles and interests to [each] Purchaser's [respective] Anthropic Shares to [such] Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, titles and interests in [such] Anthropic Shares and shall vest [such] Purchaser with all of the Debtors' rights, titles and interests in [such] Anthropic Shares and, upon the Debtors' receipt of the [applicable] Aggregate Purchase Price, shall be free and clear of any Liens, including but not limited to, successor or

13

successor-in-interest liability or, any tax liens or mechanic's liens asserted against such

Anthropic Shares, except Permitted Encumbrances, with any Liens to attach to the net cash

proceeds ultimately attributable to the property against or in which such Liens are asserted,

subject to the terms thereof, with the same validity, force and effect, and in the same order of

priority, which such Liens now have against such Anthropic Shares, subject to any rights, claims

and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The

provisions of this Sale Order authorizing and approving the transfer of the Anthropic Shares free

and clear of any Liens (other than Permitted Encumbrances) shall be self-executing, and neither

the Debtors nor [any] Purchaser shall be required to execute or file releases, termination

statements, assignments, consents, or other instruments in order to effectuate, consummate, and

implement the provisions of this Sale Order.

8.      A certified copy of this Sale Order may be filed with the appropriate clerk

and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record

except Permitted Encumbrances.

9.      If any person or entity which has filed statements or other documents or

agreements evidencing Liens in, against or on all or any portion of the Anthropic Shares shall not

have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the

appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any

other documents necessary for the purpose of documenting the release of any Liens which the

person or entity has or may assert with respect to all or any portion of the Anthropic Shares, the

Debtors, Purchaser[s] and each of their respective officers, employees and agents are hereby

authorized and empowered to execute and file such statements, instruments, releases and other

documents on behalf of such person or entity with respect to the Anthropic Shares.

10.     This Sale Order is and shall be effective as a determination that, on the Closing Date, any Liens existing as to the Anthropic Shares prior to the Closing Date, except Permitted Encumbrances, shall have been unconditionally released, discharged and terminated from the Anthropic Shares, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**D.     <u>Prohibition of Actions Against Purchaser[s]</u>**

11.     Except as expressly provided for in this Sale Order or the Purchase and Sale Agreement, [no Purchaser shall][Purchaser shall not] have any liability or other obligation or responsibility of the Debtors arising under or related to [its respective][the] Anthropic Shares prior to the Closing.  [No Purchaser is][Purchaser is not] a "successor" to the Debtors or their estates by reason of any theory of law or equity.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase and Sale Agreement, [no Purchaser shall be][Purchaser shall not be] liable for any claims against the Debtors or any of its predecessors or affiliates, and [no Purchaser shall][Purchaser shall not] have any successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to paragraph 15 below), successor or

transferee liability, securities law, tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to paragraph 15 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to any of [such] Purchaser's respective Anthropic Shares prior to the Closing.  The Sale Transaction does not amount to a consolidation, merger or de facto merger of any Purchaser, on the one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial continuity between [any] Purchaser, on the one hand, and the Debtors or their affiliates, on the other hand, and [no Purchaser is][Purchaser is not] a mere continuation of the Debtors or their estates, and [no Purchaser constitutes][Purchaser does not constitute] a successor to the Debtors or their estates.  For purposes of paragraphs 11 to 14 of this Sale Order, all references to [a] Purchaser shall include its respective Purchaser Parties.

12.    Except as expressly otherwise set forth in the Purchase and Sale Agreement and this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Anthropic Shares (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors or the Anthropic Shares prior to the Closing Date or the Sale Transaction, including the transfer of the Anthropic Shares to Purchaser[s], hereby are forever barred, estopped and permanently enjoined from

asserting against [any] Purchaser, its Affiliates, its successors or assigns, their property or the Anthropic Shares, such persons' or entities' Liens with respect to the Anthropic Shares, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against [any] Purchaser, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against [any] Purchaser, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against [any] Purchaser, its Affiliates, its successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due with respect to [any] Purchaser, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof or (f) to the extent provided in section 525 of the Bankruptcy Code, revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate the businesses of Anthropic, subject to paragraph 16 below.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Anthropic Shares (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere (a) with the ability of the Debtors and/or Seller to sell and transfer the Anthropic Shares to [any] Purchaser in accordance with the terms of the Purchase and Sale Agreement and this Sale Order, and (b) with the ability of [any] Purchaser to acquire and take possession of the Anthropic Shares in accordance with the terms of the Purchase and Sale Agreement and this Sale Order.

14.    [Each] Purchaser has given substantial consideration under the Purchase and Sale Agreement for the benefit of the Debtors and their estates.  The consideration given by [each] Purchaser shall constitute valid and valuable consideration for the sale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Anthropic Shares pursuant to this Sale Order, except with respect to the Permitted Encumbrances, and free and clear of any potential claims of successor liability against [such] Purchaser.  The consideration provided by [each] Purchaser for the Anthropic Shares under the Purchase and Sale Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

**E.    Other Provisions**

15.    Nothing in this Sale Order or the Purchase and Sale Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

16.    Further, nothing in this Sale Order or Purchase and Sale Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate. Nothing in this Sale Order authorizes any sale or transfer of the Anthropic Shares, or permits the Sale Transaction to close, unless the Debtors comply with all applicable laws and regulations and obtain all necessary governmental approvals.

17.     Notwithstanding anything to the contrary in this Sale Order, nothing in this Sale Order constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

18.     The consideration provided by [each] Purchaser to the Debtors pursuant to the Purchase and Sale Agreement for the Anthropic Shares constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

19.     The sale of the Anthropic Shares does not include the sale or release of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

20.     The Sale Transaction is undertaken by [each] Purchaser without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing.  [Each] Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of

section 363(m) of the Bankruptcy Code.  The Debtors and Purchaser[s] will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

21.    As a good faith purchaser of the Anthropic Shares, [each] Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any other bidders, potential bidders, or any other parties interested in the Anthropic Shares, and therefore, neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring an action against [such] Purchaser, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Purchase and Sale Agreement or Sale Transaction.

22.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to entry of this Sale Order shall conflict with or derogate from the provisions of the Purchase and Sale Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale Order and the Purchase and Sale Agreement (or any ancillary agreements executed in connection therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading in these Chapter 11 Cases, the terms of this Sale Order shall control.  Except as expressly provided herein, nothing contained in this Sale Order shall modify, amend or waive any provision of any Company Document.

23.    [Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchaser[s] are

20

authorized to close the Sale Transaction immediately upon entry of this Sale Order, subject to all the required governmental approvals having been obtained, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.]

24.     The failure specifically to include any particular provision of the Purchase and Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase and Sale Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

25.     The Purchase and Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Purchase and Sale Agreement is modified, the Debtors shall file the modified version with the Court.

26.     This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Purchase and Sale Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction. Nothing contained herein shall be deemed a submission by Anthropic to the jurisdiction of the Bankruptcy Court.

27. The Purchase and Sale Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

28. No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Purchase and Sale Agreement)) shall apply to the Debtors' conveyance of the Anthropic Shares or this Sale Order. Nothing in this Sale Order establishes a tax exemption under section 1146(a) of the Bankruptcy Code.

29. The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

30. [Each] Purchaser is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction and any issues related to or otherwise connected to the Purchase and Sale Agreement and the Sale Transaction.

31. Nothing in this Sale Order shall affect the obligations, if any, of the Debtors, Purchaser[s], and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

32. Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Anthropic Shares.

33.     All time periods set forth in this Sale Order shall be calculated in

accordance with Bankruptcy Rule 9006(a).


Dated: _____

　　　　Wilmington, Delaware

_____

The Honorable John T. Dorsey
United States Bankruptcy Judge