**EXHIBIT C**

Case 22-11068-JTD    Doc 8199-3    Filed 02/28/24    Page 2 of 16

RAKUSEN *v.* ELLIS, MUNDAY & CLARKE.

[1912 R. 390.]

C. A.

1912

March 16, 18, 19.

*Injunction—Solicitor — Acting against former Client — Confidential Information—Members of same Firm—Discharge of Solicitor—Firm Name.*

M. and C. were the only partners in a firm of solicitors named E. M. & C. and were in the habit of doing business separately and without any knowledge of each other's clients. R. consulted M. with reference to an action for wrongful dismissal which he desired to commence against a company. He then changed his solicitors and issued his writ, and the matter was referred to arbitration, the proceedings in which were still in progress. C. was away at the time and knew nothing of the consultations between R. and M., and whilst the arbitration was going on he was appointed under the name of E. M. & C. to act as solicitor for the company in the arbitration. R. applied for an injunction to restrain E. M. & C. from acting for the company:—

*Held*, that there was no general rule that a solicitor who had acted for some person either before or after the litigation began could in no case act for the opposite side; the Court must be satisfied in each case that mischief would result from his so acting; that there could be no danger of any breach of confidence if C. acted for the company; and (reversing the decision of Warrington J.) that the injunction must be refused.

Decision of Hall V.-C. in *Little* v. *Kingswood Collieries Co.* (1882) 20 Ch. D. 733; 47 L. T. 323, overruled.

APPEAL from a decision of Warrington J.

Prior to February, 1910, Samuel Rakusen, the plaintiff, was carrying on business in co-partnership with his brother Hyman Rakusen. In March, 1910, they sold the business to a company called S. & H. Rakusen, Limited. It was alleged by S. Rakusen that it was part of the arrangement that he should be appointed, and he was in fact appointed, sales manager and traveller for the company at a salary of 550*l.* a year. In June, 1911, the company gave him three months' notice to determine his employment. He consulted Mr. Munday, a partner in the defendants' firm of Ellis, Munday & Clarke, solicitors, as to his position, had several interviews with him, and gave him much confidential information in regard to the matters in dispute between him and the company. In October, 1911, he changed his solicitors and

3 K 2                                                                1

Case 22-11068-JTD    Doc 8199-3    Filed 02/28/24    Page 3 of 16

C. A.
1912
───
RAKUSEN
*v.*
ELLIS,
MUNDAY
& CLARKE.
───

issued a writ in an action against the company for wrongful dismissal, and the dispute was referred to arbitration. It was stated that the arbitration was now in progress and five sittings had already been held. In March, 1912, Ellis, Munday & Clarke were appointed solicitors to act for the company in the arbitration proceedings. S. Rakusen thereupon commenced proceedings against Ellis, Munday & Clarke, and now applied for an injunction to restrain them from acting for the company in the arbitration.

Messrs. J. H. Munday and P. Clarke were the only two partners in the firm of Ellis, Munday & Clarke, and the evidence shewed that they were in the habit of doing business separately and without any knowledge of each other's clients, and that each of them had the exclusive services of some of their clerks. Clarke had never seen the plaintiff till March 11, 1912, was away for his vacation at the time when the plaintiff consulted Munday, knew nothing whatever about these consultations, and had never seen any of the papers or proceedings therein. On a previous occasion he had acted as solicitor for one of the shareholders of the company, who asked him to appear for him in the arbitration, and eventually, during the progress of the arbitration, he was asked to act for the company, whose solicitors were unable to give the requisite time and attention to the proceedings. The managing director, secretary, and solicitor of the company in a joint affidavit said that the services of Clarke were required by the company and that no confidential information would be given by him to the company, and that they had not communicated with any member of his firm other than Clarke.

When the case came on before Warrington J. two undertakings were offered by the defendants, namely, an undertaking by Munday in no way to act in the arbitration proceedings or say anything about his consultations with the plaintiff, and further an undertaking that Clarke's name should alone appear on the papers as solicitor for the company, and not the name of the firm. In the Court of Appeal the company offered to undertake not to consult Munday in any way.

Warrington J. held that the principle had been laid down that a solicitor, having once been employed to act for a man, should

**1 Ch.**  CHANCERY DIVISION.  833

not act against him in the same matter; and although there was no imputation of any kind on Messrs. Munday and Clarke and no danger of their doing anything improper, they must be restrained from acting as the company's solicitors in the arbitration proceedings.

C. A.
1912
RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.

Messrs. Munday and Clarke appealed.

*W. H. Cozens-Hardy,* for the appellants. A solicitor will be restrained from disclosing information confidentially obtained from a client, but there is no general principle that a solicitor who has acted for a client in a particular matter cannot, under any circumstances, act for the opposite party in the same matter: Cordery on Solicitors, 3rd ed. p. 110. It depends on the circumstances of each case. The Court has also to see that the client's choice of a solicitor is not fettered. Here there is no danger of any information obtained by Munday from Rakusen being handed over to Clarke. The existence of such a principle would work great hardship in small towns where there were few solicitors, especially if the retainer of one partner is considered equivalent to the retainer of the firm. The question is whether there is any danger of the disclosure of secrets: *Little* v. *Kingswood Collieries Co.*, per Jessel M.R. (1) Warrington J. relied on *Earl Cholmondeley* v. *Lord Clinton* (2), where the solicitor had discharged himself in the middle of the litigation; explained by Lord Eldon in *Bricheno* v. *Thorp* (3), and in *Beer* v. *Ward.* (4) A case for an injunction must be made out: *Robinson* v. *Mullett* (5); *Johnson* v. *Marriott* (6); *Davies* v. *Clough* (7); *Parratt* v. *Parratt* (8); *Rawlinson* v. *Moss.* (9) No ground has been shewn for restraining the appellants or either of them from acting for the company. They always do business separately, and the fact that a client who instructs a firm is entitled to the services of every member of the firm is not conclusive.

*Cave, K.C.,* and *Harold Simmons,* for Rakusen. There is no

(1) 20 Ch. D. 733, 742; 47 L. T. 323, 325.
(2) (1815) 19 Ves. 261; Coop. G. 80.
(3) (1821) Jac. 300.
(4) (1821) Jac. 77.
(5) (1817) 4 Price, 353.
(6) (1833) 2 Cr. & M. 183.
(7) (1837) 8 Sim. 262.
(8) (1848) 2 De G. & Sm. 258.
(9) (1861) 30 L. J. (Ch.) 797.

Case 22-11068-JTD    Doc 8199-3    Filed 02/28/24    Page 5 of 16

C A.
1912
RAKUSEN
*v.*
ELLIS,
MUNDAY
& CLARKE.

personal charge against the appellant firm or any member of it, but we rely on the general principle. The result of the cases is that where a solicitor has acted for a client in any particular matter he cannot subsequently act against him in the same matter, nor can his partner do so. These proceedings are all in the same matter. When a solicitor consents to act for a client he expects to receive his full confidence and learn his secrets, and he is under an implied obligation not to use or put himself in a position to use that confidence to the prejudice of the client. If he agrees to act for a second client that client is also entitled to know all that he as his solicitor knows, and the solicitor is therefore bound not to reveal the secrets of the first client at the same time that it is his duty to tell all he knows to the second client. The Court will take care that its officer does not put himself in such a position. A clerk is in a different position, for there is no contractual relationship between him and the client. We agree that in this case no wrong will be done intentionally, but information may leak out through some of the appellants' clerks, and the principle should be supported. We are not dealing with them as individuals, but as a firm, and we submit that the only safe rule is to forbid such conduct by a firm: *Norton* v. *Cooper.* (1) How can we tell whether undertakings are observed? The fact that the solicitor has discharged himself has no bearing on the rule: *Hutchins* v. *Hutchins* (2); *Biggs* v. *Head.* (3) The judgment in *Earl Cholmondeley* v. *Lord Clinton* (4) was not founded on particular facts, but on a general rule.

No reply was called for.

COZENS-HARDY M.R. It is of vast importance that there should be no doubt thrown on the true position of solicitors in matters of this kind or of the jurisdiction of the Court over solicitors. Solicitors have great privileges and they have corresponding duties. Of their privileges a greater instance cannot be furnished than the absolute privilege which is given to them in the matter of giving evidence of communications which they make to their clients or their clients make to them. We

(1) (1856) 3 Sm. & Giff. 375.     (3) (1837) Sau. & Sc. 335.
(2) (1825) 1 Hog. 315.            (4) 19 Ves. 261; Coop. G. 80.

Case 22-11068-JTD    Doc 8199-3    Filed 02/28/24    Page 6 of 16

expect and indeed we exact from solicitors, who are our officers, a higher standard of conduct than we can enforce against those who are not our officers. A solicitor can be restrained as a matter of absolute obligation and as a general principle from disclosing any secrets which are confidentially reposed in him. In that respect it does not very much differ from the position of any confidential agent who is employed by a principal. But in the present case we have to consider something further. It is said that in addition to the absolute obligation not to disclose secrets there is a general principle that a solicitor who has acted in a particular matter, whether before or after litigation has commenced, cannot act for the opposite party under any circumstances; and it is said that that is so much a general rule and the danger is such that the Court ought not to have regard to the special circumstances of the case.

C. A.
1912
RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.

Cozens-
Hardy M.R.

I do not doubt for a moment that the circumstances may be such that a solicitor ought not to be allowed to put himself in such a position that, human nature being what it is, he cannot clear his mind from the information which he has confidentially obtained from his former client; but in my view we must treat each of these cases, not as a matter of form, not as a matter to be decided on the mere proof of a former acting for a client, but as a matter of substance, before we allow the special jurisdiction over solicitors to be invoked, we must be satisfied that real mischief and real prejudice will in all human probability result if the solicitor is allowed to act.

Let me take the circumstances of the present case. There was a dispute between the plaintiff, Mr. Rakusen, and the company as to whether he had been wrongfully dismissed. The firm of Ellis, Munday & Clarke were consulted by Mr. Rakusen on that point. The services of the firm were dispensed with some day in October last. I have seen the bill of costs which was rendered by the firm and which has been wholly or partially paid. It is quite clear that there was some confidential information furnished by Mr. Rakusen to the member of the firm, Mr. Munday, who, and who alone, was consulted in the matter; and if this had been a case of Mr. Munday having obtained from the plaintiff, who said that he had been wrongfully dismissed, confidential

C. A.
1912
~~~
RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.
~~~
Cozens-
Hardy M.R.

information bearing upon the circumstances or the alleged justification of the wrongful dismissal, and if it had been a case of Mr. Munday afterwards appearing in the action for the defendants, speaking for myself, I should have said that that was a case in which he was putting himself in a position in which he could not as an honest man discharge his duty to the defendants without consciously or unconsciously availing himself of information which he had obtained while acting for Mr. Rakusen. That would be a typical case in which a person ought not to be allowed to put himself in a position in which he could not clear his mind from the knowledge he had obtained. I cannot bring myself to doubt that any respectable solicitor would in those circumstances have said at once, "I am very sorry I cannot act for you because I am familiar with the circumstances alleged by the other side, which circumstances have been communicated to me confidentially." But what are the facts here? The communications all took place with Mr. Munday. At that time Mr. Clarke was away for his vacation out of the country and he knew nothing about it. He had never seen Mr. Rakusen. He had not had any communication with him, and was really a complete stranger to the matter. Before the writ was issued, Messrs. Ellis, Munday & Clarke had ceased to be solicitors for Mr. Rakusen, and in those circumstances is there any reason why Mr. Clarke, who was allowed to watch and attend proceedings in the arbitration (for I ought to say the action was referred to arbitration) and was allowed to attend on behalf of a shareholder before the arbitrator for some days—is there any reason why he should not be allowed to act as and to appear as solicitor for the company? In my opinion there is no substance whatever in the objection. There is no prejudice, there is no mischief, and having regard to the undertaking which was offered that although the solicitors on the record for the company are now Ellis, Munday & Clarke that should be changed and Mr. Clarke should alone be the solicitor on the record, I can see no ground for granting the injunction.

But it is right that I should say a few words upon the authorities which have been cited to us. It has been said "this is settled law since Lord Eldon's time in *Earl*

*Cholmondeley* v. *Lord Clinton.*" (1) I have read and re-read that case, and in my opinion it lays down no such principle. It was, as explained by Lord Eldon in a subsequent case, *Bricheno* v. *Thorp* (2), a case in which a solicitor, one of the members of the firm, in the middle of a litigation discharged himself and went over to the other side. It was a question of breach of contract and not merely a breach of duty, and Lord Eldon and the judges he consulted really decided that case on a ground which is not now treated by counsel on either side, and I think is properly not treated by them, as conclusive of the matter. Lord Eldon proceeded on the footing that the solicitor could not by discharging himself in the middle of a suit deprive the client of the right which he had by the contract of retainer to the services of that solicitor.

Now our attention has been called to other cases. There is the case in the Exchequer of *Johnson* v. *Marriott* (3), which is absolutely inconsistent with the general rule which has been relied upon. There the Court of Exchequer declined to discharge a rule which had been obtained for a change of solicitors from one side to the other on the ground that there was no evidence shewn of any material circumstances which would justify it. But then it is said Hall V.-C. in *Little* v. *Kingswood Collieries Co.* (4) has laid down some principles which are sound in law and which ought to govern the Court. No doubt Hall V.-C. did lay down some principles, particularly in one passage I will read, which require consideration : " where the second transaction flows out of the first, and from the nature of the dispute, is so connected with it as I consider this to be, the new client ought not to employ that particular solicitor in the transaction, and the solicitor ought not to accept the employment, and the case is then one in which at the instance of the former client the solicitor ought upon general principles of equity to be restrained from so acting." Hall V.-C. seems to have thought that the mere fact that the solicitor had once advised or acted in an early stage of the same matter ought to prevent him from ever acting for the other side quite irrespective of the circumstances of the

C. A.
1912

RAKUSEN
*v.*
ELLIS,
MUNDAY
& CLARKE.

Cozens-
Hardy M.R.

(1) 19 Ves. 261 ; Coop. G. 80.   (3) 2 Cr. & M. 183.
(2) Jac. 300.   (4) 20 Ch. D. 733, 740; 47 L. T. 323.

838 CHANCERY DIVISION. [1912]

C. A.
1912
RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.

Cozens-
Hardy M.R.

case. That case went to the Court of Appeal, and although the decision was not formally overruled, the view of the Vice-Chancellor was obviously not adopted by the Court of Appeal, for the appellant's counsel were stopped at a certain stage of the argument and counsel for the respondent were heard for the plaintiff, and the Court then suggested a compromise. Jessel M.R. said (1) he thought the order of Hall V.-C. went further than any previous case, even than the cases in Ireland, to two of which cases our attention has been called. Then "his Lordship intimated that, although there was no law that, because a solicitor had acted for a person, he might not afterwards act against him, it was not to be supposed that he was at liberty to disclose the secrets of his former client to his opponent in the subsequent proceedings, and that the Court could always, on general principles, restrain a solicitor who threatened to disclose secrets." The Court of Appeal there laid down a distinction between an absolute duty not to disclose secrets and a duty which is not absolute but dependent on circumstances, namely, a duty not to act for an opposite party in the same litigation. The Court went further, they sanctioned a compromise, indeed they suggested a compromise, under which the solicitor was to continue to act in the litigation contrary to the injunction which was granted by Hall V.-C. I therefore think his decision is not an authority binding on this Court on the point. There is such an intimation of opinion as to render it easy for me to say, as I do say, that I think the judgment of Hall V.-C. went further than can be warranted either on principle or on authority, and that it ought not to be followed.

In my opinion, without going through the other authorities to which our attention has been called, the injunction granted by Warrington J. must be discharged; but I do not wish quite to leave it there. Warrington J. has said, and it has been admitted on both sides here, that we are dealing with solicitors of the highest position and whose honour and integrity are beyond any imputation. No possibility of the disclosure of secrets has ever been suggested, but Warrington J. merely bases his judgment on this, that it has been frequently said in this Court that a solicitor

(1) 47 L. T. 323, 325.

is an officer of the Court and cannot be allowed to put himself into a position in which his duty to his present client may conflict with his duty to his past client. With great respect to Warrington J. I think that goes a great deal too far. Many busy solicitors in this country would find it impossible to carry on their business at all if that was the true rule. I think solicitors of the highest honour and integrity may frequently be perfectly able to act in the same matter for a new client, and at the same time may be perfectly able to avoid disclosing secrets without putting any strain upon their memory, conscience, or integrity.

In my opinion the order of Warrington J. must be discharged and this appeal should be allowed.

*C. A.*
*1912*

RAKUSEN
*v.*
ELLIS,
MUNDAY
& CLARKE.

Cozens-
Hardy M.R.

FLETCHER MOULTON L.J. I am of the same opinion. Before dealing with the case before us I wish to say a few words upon the rights of the parties and the action of the Courts in cases in which there is no question of solicitor and client but in which the feature of confidential relationship is to be found. In almost all businesses there must be persons in such a confidential relation to the employers or to the people who are employed by them for purposes connected with the business, that the knowledge which they acquire is not knowledge at their own disposal but consists substantially of the secrets of their employer. Such employments come to an end sometimes at the choice of the master, sometimes at the choice of the servant, and thereupon difficulties necessarily arise, because the person who is no longer in employment still has in his breast secrets which are the property of his past employer. The view that the law takes of the rights of the parties in that position is too clear to be disputed. The employee is quite free to go into the service of people who may be the rivals or the opponents of his former master. The law does not say that the possession of those secrets shall cripple his work, or sterilize it. He may go into employment quite inconsistent with the employment which he had in the past. All that the law says is: You shall not disclose or put at the service of your new employer the secrets that belong to your old employer.

840                        CHANCERY DIVISION.                    [1912]

C. A.
1912

RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.

Fletcher
Moulton L.J.

Now we come to the special case of the employment of a solicitor by a client. In my opinion the fundamental principle remains the same as in other cases of confidential employment, and I accept with regard to this the dictum (because it was not embodied in a formal judgment) of Jessel M.R. when he says (1) " that, although there was no law that, because a solicitor had acted for a person, he might not afterwards act against him, it was not to be supposed that he was at liberty to disclose the secrets of his former client to his opponent in the subsequent proceedings, and that the Court could always, on general principles, restrain a solicitor who threatened to disclose secrets." That is the law with regard to all confidential employment, and it applies therefore to confidential employment of a solicitor by a client. But although the fundamental law is not different its application is widely different in degree, and for two reasons. In the first place the degree of the confidential character of the relation between the client and his solicitor and of the communications made by the client to the solicitor is in the eyes of the law the very highest— so high that the solicitor is absolutely privileged and cannot be made to state what passed between him and his client. To that extent the solicitor is made, as it were, a part of his client for the purposes of those communications. The second reason is that the Court is not bound to accept in that case the standard of sensibility which it may feel is all that it can enforce on people in general who are in confidential relations one with the other. It can fix a standard for the behaviour of its own officers which is higher than it would be practicable to exact from persons in other types of confidential relations. I think, therefore, that in deciding the question of what the action of a solicitor may be, although the Court does not start fundamentally from a different rule, the decisions it gives may be different in many cases from the decisions which it would give were it appealed to in an action between persons who were not in the position of solicitor and client but nevertheless had been in contractual relations involving confidential communications. That being my view of the law, one thing becomes clear. The Court must act in each case according to the circumstances of the case. If there is a

(1) 47 L. T. 323, 325.

distinction between the solicitor and other persons confidentially employed it is one of degree based on one of those two considerations that I have mentioned, and the moment that it is agreed that it is one of degree it means that we must look at the facts of the case and apply to them the fundamental principles of the law modified by those considerations.

As a general rule the Court will not interfere unless there be a case where mischief is rightly anticipated. I do not say that it is necessary to prove that there will be mischief, because that is a thing which you cannot prove, but where there is such a probability of mischief that the Court feels that, in its duty as holding the balance between the high standard of behaviour which it requires of its officers and the practical necessities of life, it ought to interfere and say that a solicitor shall not act. Now in the present case there is an absolute absence of any reasonable probability of any mischief whatever. It is an attempt to induce the Court to move, on the most purely technical grounds, in a matter in which it ought to deal with realities. The client consulted Mr. Munday only and nobody acquired any knowledge of any communication confidential or otherwise to Mr. Munday other than that gentleman himself. Mr. Clarke, his partner, was away at the time, and it is admitted that he did not even know that Mr. Munday had been consulted, and a fortiori knew nothing whatever of the communications which were made to him, and he is willing to undertake not to make any inquiries or obtain any information from his partner with regard to the matter. Nobody pretends that this gentleman will not act up to that undertaking, and if we were to say that he—not his firm, but that he—was not to act, in my opinion we should be abusing the power that we certainly possess of directing what the officers of the Court should and should not do. For these reasons, though I think that it was a mistake to suggest that the name of the firm should formally appear on the proceedings as the solicitors of the company, I see no reason whatever why Mr. Clarke should not act for them, and I am satisfied that no mischief whatever will come from it.

I do not intend to deal at length with the authorities that have been cited. But I wish to point out that the decision in

C. A.
1912
RAKUSEN
*v.*
ELLIS,
MUNDAY
& CLARKE.

Fletcher
Moulton L.J.

C. A.
1912
———
RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.
———
Fletcher
Moulton L.J.

*Earl Cholmondeley* v. *Lord Clinton* (1) must be read with the authoritative explanations of it which were given by the Lord Chancellor in *Beer* v. *Ward* (2) and *Bricheno* v. *Thorp* (3), and as so read, in my opinion, it will not have the effect which was given to it by the learned judge in the Court below. With regard to *Hutchins* v. *Hutchins* (4), one of the Irish cases, I think that the decision in that case is based on a misunderstanding of the decision in *Earl Cholmondeley* v. *Lord Clinton* (1), and with regard to *Biggs* v. *Head* (5) it is quite clear there there had already been, in the opinion of the Court, a breach of the confidential relations.

For these reasons I think the appeal ought to be allowed.

BUCKLEY L.J. There is a general principle, applicable not to solicitors only but to confidential agents of all kinds, that confidential information shall not be used against the principal from whom, or for whom, and in whose employment, it has been obtained. There is no general rule that a solicitor who has acted in a particular matter for one party shall not under any circumstances subsequently act in that matter for his opponent. Whether he will be restrained from so acting or not depends on the particular circumstances. Of course he will be restrained from communicating confidential information, but the respondents contend that when there is no danger of this happening the solicitor will still be restrained from acting. Further they maintain a still larger proposition and assert that this extends to the partner (who knows nothing of the matter) of the solicitor who from his previous employment does know something.

In my opinion neither of these propositions can be maintained. In some of these cases the injunction sought has been an injunction to restrain the new client from employing the solicitor and an injunction to restrain the solicitor from acting. In the present case the injunction is asked only against the solicitor, but it must not be forgotten that such an injunction if granted has just the same effect so far as the client is concerned as if the

(1) 19 Ves. 261; Coop. G. 80.          (3) Jac. 300.
(2) Jac. 77.                                        (4) 1 Hog. 315.
                        (5) Sau. & Sc. 335.

C. A.
1912
RAKUSEN
*v.*
ELLIS,
MUNDAY
& CLARKE.

Buckley L.J.

injunction were granted against him also. He cannot obtain the services of that solicitor. The question then involves the consideration of the circumstances under which a client is to be prevented from obtaining the services of a particular solicitor. The circumstances I think are these: the jurisdiction is a jurisdiction to restrain the solicitor from giving the new client any assistance against the old client by reason of knowledge acquired as solicitor for the old client. If to ensure that result it is shewn to be reasonably necessary to restrain the employment of the solicitor by the new client the injunction will be granted, but on no other ground could such an injunction be granted as against the client.

Mr. Cave has asserted this general principle, which he says is to be found in the authorities—that when a solicitor has acted for a client in a particular matter he, or his partners, cannot act against that client in anything relating to that matter, and that this is true irrespective of the particular circumstances of the case. I am of opinion that there is no such principle. There is no law that because a solicitor has acted for a person he may not afterwards act against him in the same matter. It depends on circumstances whether he shall be allowed to act or not. The learned judge from whom this appeal is brought has said: "It has been frequently said in this Court that a solicitor as an officer of the Court cannot be allowed to put himself into a position in which his duty to his present client may conflict with his duty to his past client; and I think the principle which has been laid down by the Courts is that in such a case as that the Court does not inquire what information the solicitor may have or what information he may communicate. He is presumed to have been in confidential relationship with his client and he will not be allowed to put himself into confidential relationship with another client opposed to his first client." With great deference to the learned judge I think that is erroneous in point of law.

The cases I think have established this, that as between the Court and the solicitor who is the officer of the Court there is the most ample jurisdiction to restrain any mischief resulting from the communication of confidential information obtained in the employment of one man to his detriment in the employment of

844        CHANCERY DIVISION.        [1912]

C. A.
1912

RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.

Buckley L.J.

another man. As regards *Earl Cholmondeley* v. *Lord Clinton* (1), I think the best summary of the result of that case is to be found in Lord Eldon's own statement of it in *Bricheno* v. *Thorp* (2) that " the case of *Earl Cholmondeley* v. *Lord Clinton* (1) was no more than this. A gentleman discharged himself from being solicitor for Lord Clinton, and the question was, whether the Court would permit him to turn his back on his client, and to go into the service of the person against whom he had been employed." When *Earl Cholmondeley* v. *Lord Clinton* (1) is carefully read it will be found that Lord Eldon and the judges whom he consulted were all basing themselves upon this as being in their opinion the one cardinal feature of that case, that the solicitor had discharged himself; and they, I think, drew the inference that having discharged himself he was going into the employment of the new client with the result, or the possible result, or the anticipated result, that there would be a breach of the confidential duties which he owed to his former client. Of course he owes his former client the duty not to disclose that which he has learned confidentially, but there is no duty in the solicitor to abstain from serving another client in that matter if there is no breach of that confidence.

The only other case to which I wish to refer is *Little* v. *Kingswood Collieries Co.* (3) It seems to me that the principles upon which Hall V.-C. there purported to act were so shaken by that which was decided in the Court of Appeal that the judgment of Hall V.-C. cannot be relied upon. It will be noticed that the case gives a final blow to any such doctrine as Mr. Cave propounded, that the solicitor cannot act under any circumstances because there the Court approved a compromise under which he was, under circumstances, to act. That therefore cannot be improper and wrong. It seems to me, from the fact that the appellants' counsel were stopped, from the observations which were made, although made to some extent in the course of the argument, and from the compromise which the Court approved, plainly to follow that the principles for which Mr. Cave has argued here are principles which cannot be maintained. I may

(1) 19 Ves. 261; Coop. G. 80.        (2) Jac. 300, 301.
(3) 20 Ch. D. 733; 47 L. T. 323.

add that the question whether the solicitor was discharged or has discharged himself is not a governing or even a material question, except so far as it may throw light upon the question whether confidence is likely to be abused.

There is only one further matter which I wish to mention. The learned judge was proceeding on this footing, and we are proceeding on this footing, that in this case danger of communication of secrets will not arise. Those are the learned judge's words. In that state of facts it appears to me that an injunction is impossible. The whole basis of the jurisdiction to grant the injunction is that there exists, or, I will add, may exist, or may be reasonably anticipated to exist, a danger of a breach of that which is a duty, an enforceable duty, namely, the duty not to communicate confidential information; but directly the existence or possible existence of any such danger is negatived, the whole basis and substructure of the possibility of injunction is gone. I think that the order ought to be discharged.

C. A.
1912
RAKUSEN
v.
ELLIS,
MUNDAY
& CLARKE.

Buckley L.J.

Appeal allowed.

NOTE. No undertaking was in fact directed either by Warrington J. or by the Court of Appeal, but Mr. Clarke's name was at once substituted for that of the firm as solicitor for the company.

Solicitors: *Ellis, Munday & Clarke; B. A. Woolf & Co.*

H. C. R.