## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 20, 2024 at 10:00 a.m. ET**<br>**Objection Deadline: March 13, 2024 at 4:00 p.m. ET** |

### DEBTORS' MOTION TO (I) FILE UNDER SEAL OR, IF NECESSARY, OMIT CONFIDENTIAL INFORMATION FROM DECLARATIONS FILED IN SUPPORT OF THE RETENTION OF CERTAIN FOREIGN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the

"Debtors"), by and through their undersigned counsel, hereby submit this motion (the "Motion")

for an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (i) authorizing

the Debtors to file under seal or, where required by applicable foreign law or regulation, to omit

the Confidential Information (as defined below) from declarations filed in support of the

retention of certain foreign professionals utilized in the ordinary course of business, (ii) directing

that, where applicable, the unredacted version of any such declaration not be made available to

any party except the Court, the Debtors, the Office of the United States Trustee (the "U.S.

Trustee") and the Official Committee of Unsecured Creditors appointed in the above-captioned

cases (the "Committee") and (iii) granting related relief.  In support of this Motion, the Debtors

respectfully state as follows:

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "<u>Petition Date</u>"), the

Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>")

voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "<u>Chapter 11</u>

<u>Cases</u>") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On

December 15, 2022, the U.S. Trustee appointed the Committee pursuant to section 1102 of the

Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Jurisdiction and Venue**

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated February 29, 2012.  This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief sought herein are section 107(b) of the Bankruptcy Code, rule

2014 and 9018 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>"), and

rules 2014-1 and 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").  Pursuant to Local

2

Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Facts Specific to the Relief Requested

4.      On December 21, 2022, the Debtors filed with the Court the *Motion of Debtors for Entry of an Order Implementing Certain Procedures to Retain, Compensate and Reimburse Professionals Utilized in the Ordinary Course of Business* [D.I. 282] (the "OCP Motion").  On January 9, 2023, the Court entered an order approving the OCP Motion [D.I. 432] (the "OCP Order").[2]

5.      The OCP Order requires each OCP to "provide the Debtors' attorneys with a declaration of disinterestedness. . . substantially in the form attached [to the OCP Order] as Exhibit 2." OCP Order, ¶ 3(a).  The form declaration requires OCPs to make, among others, the following attestations under the penalty of perjury:

- "The Firm's search of the database identified the following connections: [INSERT DESCRIPTION]." OCP Order, Ex. 2 ¶ 6 (bracketed text in original).

- "To the best of my knowledge, formed after due inquiry, neither I, the Firm, nor any attorney or employee thereof (i) has any connection with the Debtors or (ii) currently represents (or previously represented) any of their creditors, other parties-in-interest, the U.S. Trustee or any person employed by the U.S. Trustee with respect to the Debtors or the matters upon which it is to be engaged. Additionally, the Firm, its attorneys and employees do not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates or any class of creditors or equity interest holders with respect to the matters upon which the Firm is to be employed, except as disclosed above." *Id.* at ¶ 7.

6.      On February 8, 2023, pursuant to the OCP Order, the Debtors filed the following

---

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the OCP Order.

declarations in support of the retention of certain foreign OCPs utilized in the ordinary course of the Debtors' businesses:

- The declaration of Lenz & Staehelin [D.I. 653] (the "Lenz Declaration"). Lenz & Staehelin provides legal services and support to the Debtors regarding Swiss law.

- The declaration of Schurti Partners Attorneys at Law Ltd ("Schurti") [D.I. 654] (the "Schurti Declaration"). Schurti provides legal services and support to the Debtors regarding Liechtenstein law.

- The declaration of Walkers (Cayman) LLP ("Walkers") [D.I. 669] (the "Walkers Declaration"). Walkers provides legal services and support to the Debtors regarding the law of the British Virgin Islands and Cayman Islands.

- The declaration of Harney Westwood & Riegels LLP ("Harneys") [D.I. 676] (the "Harneys Declaration"). Harneys provided legal services and support to the Debtors regarding the law of the British Virgin Islands and Cayman Islands on matters separate and apart from those handled by Walkers.

7.    Pursuant to the OCP retention process specified in the OCP Order, Lenz & Staehelin, Schurti, Walkers, and Harneys (collectively, the "Initial Foreign OCPs") conducted a search of their respective databases to identify any connections with the parties on the list maintained by the Debtors of key parties-in-interest in these Chapter 11 Cases (the "Key PII List"). Each Initial Foreign OCP in its respective declaration (collectively, the "Initial Foreign Declarations") attested under penalty of perjury that it (i) maintains a database for the purpose of performing conflict checks, (ii) searched this database to identify any connections to parties delineated on the Key PII List, (iii) is prohibited from publicly disclosing any current or former clients under applicable foreign law or regulation (the "Confidential Information"), and (iv) does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest adverse to the Debtors or their estates with respect to the matters upon which the Initial Foreign OCP is to be employed. *See* D.I. 653, 654, 669, and 676.

8.      After entry of the OCP Order and following the filing of the Initial Foreign Declarations, the U.S. Trustee raised concerns with the Debtors regarding the inability of the Initial Foreign OCPs to disclose the Confidential Information and requested additional information regarding the applicable foreign laws and regulations at issue.  To address the U.S. Trustee's concerns and to provide the additional information requested,  Lenz & Staehelin, Schurti and Walkers (collectively, the "Continuing Foreign OCPs") submitted, and the Debtors filed, supplemental declarations [D.I. 1197 (the "Supplemental Schurti Declaration"), D.I. 1198 (the "Supplemental Lenz Declaration"), and D.I. 1201 (the "Supplemental Walkers Declaration")] (collectively, the "Supplemental Declarations") providing specific information regarding the applicable foreign law and/or regulations that prohibit them from disclosing the Confidential Information, the criminal, civil and/or professional penalties that would result from any such disclosure and the original text of the applicable foreign law with certified translations thereof, where the original text is not in English.[3]

9.      Following the filing of the Supplemental Declarations, the U.S. Trustee advised the Debtors that the attestations and additional information provided by each of the Continuing Foreign OCPs were insufficient to resolve the U.S. Trustee's concerns regarding the Continuing Foreign OCPs' inability to disclose the Confidential Information under applicable foreign law and regulations.  The Debtors engaged in extensive discussions with the U.S. Trustee and each of the Continuing Foreign OCPs to try to find a workable solution to the U.S. Trustee's concerns

---

[3]      Harneys (whose conflicts searches yielded approximately 120 current connections on the Key PII List) ultimately resigned from serving as an OCP after being unable to find a workable solution or exception to the applicable prohibitions against disclosure of the Confidential Information.  In addition, Stibbe NV, who had been asked by the Debtors to serve as an OCP to provide legal advice on law in the Netherlands and whose conflict searches identified approximately 70 potential current connections with parties on the Key PII List, ultimately declined to serve in such capacity after the Debtors requested that it either seek client consent to disclose such connections on a confidential basis or provide testimony regarding its inability to do so under applicable foreign law and/or regulation.

{1368.002-W0074688.}

that would not violate applicable foreign law or regulation.

10.     Lenz & Staehelin, Schurti and Walkers performed significant work in connection with the Key PII List.  Their conflicts searches yielded 19, 3 and 38 current connections respectively.  Each firm worked diligently over the course of several months to try to meet an exception to the applicable foreign laws by obtaining consent from each of their current connections identified on the Key PII List to disclose the Confidential Information related to them to the Debtors, the U.S. Trustee, the Committee and the Court through the filing of a further supplemental declaration on a confidential basis under seal.  Given their clients' general unfamiliarity with the Bankruptcy Code, the United States bankruptcy process and their applicable country's laws and regulations generally prohibiting disclosure of a client's identity, this proved to be a lengthy and arduous process for the Continuing Foreign OCPs.

11.     Ultimately, Schurti was able to obtain consent from all of its current clients identified on the Key PII List to disclose their identities, provided, however, that any such disclosures are made under seal and disclosed solely to the Debtors, the U.S. Trustee, the Committee and the Court on a confidential basis and are not disclosed in any public manner.[4] Second Supplemental Schurti Declaration, ¶ 3.

12.     With the exception of two (2) clients who have not responded to numerous written and telephonic requests for consent to disclose their identity, one of which is categorized on the Key PII List as Banks/Lender/UCC Lien Parties/Administrative Agents and the other is categorized as Investments/Acquisitions, Lenz & Staehelin was able to obtain consent from all of its current clients identified on the Key PII List to disclose their identities, provided, however,

---

[4]     Contemporaneously herewith, the Debtors filed the second supplemental declaration in support of Schurti's OCP retention (the "Second Supplemental Schurti Declaration" and together with the Schurti Declaration and the Supplemental Schurti Declaration, the "Schurti Declarations").

that any such disclosures are made under seal and disclosed solely to the Debtors, the U.S.

Trustee, the Committee and the Court on a confidential basis and are not disclosed in any public

manner.  Second Supplemental Lenz Declaration,[5] ¶ 5.  As explained in the Lenz Declarations,

Article 13 of the Swiss Federal Lawyers Act (the "FLA") states that admitted attorneys are

subject to professional secrecy with regard to everything, which has been entrusted to them by

their clients in their professional capacity, for an unlimited period of time and towards everyone.

*See* Lenz Declaration, ¶ 6; Supplemental Lenz Declaration, ¶¶ 3-5; Second Supplemental Lenz

Declaration, ¶ 3.  This not only includes information which has been provided to an attorney

during the mandate, but also the existence of the client relationship itself.  Second Supplemental

Lenz Declaration, ¶ 3.  The only relevant exception to this blanket prohibition is if the client

consents to a specific disclosure.  *Id.*  The penalty for disclosing the Confidential Information to

anyone, including the Debtors, this Court, the U.S. Trustee or the Committee, is criminal and

carries a sentence of up to 3 years in prison or a monetary penalty.  *Id.*  In addition, the

applicable Swiss attorney supervisory authority may sanction an attorney violating the FLA for

disclosing the Confidential Information, which can take the form of a warning, reprimand,

monetary fine, temporary or permanent ban on practicing as an attorney-at-law.  *Id.*

13.     Walkers determined that its connections with twenty (20) current clients

identified on the Key PII List were already available within the public domain.  Of the remaining

eighteen (18) current clients identified by Walkers on the Key PII List, with the exception of one

(1) client who has refused to consent to the disclosure of its identity and who is categorized on

the Key PII List as "Bank/Lender/UCC Lien Party/Administrative Agent", Walkers was able to

---

[5]   Contemporaneously herewith, the Debtors filed the second supplemental declaration in support of Lenz
      Staehelin's OCP retention (the "Second Supplemental Lenz Declaration" and together with the Lenz
      Declaration and the Supplemental Lenz Declaration, the "Lenz Declarations").

obtain consent from all of its other current clients identified on the Key PII List to disclose their identities, provided, however, that any such disclosures are made under seal and disclosed solely to the Debtors, the U.S. Trustee, the Committee and the Court on a confidential basis and are not disclosed in any public manner. Second Supplemental Walkers Declaration,[6] ¶ 6. As explained in the Walkers Declarations, pursuant to the Cayman Islands Confidential Information Disclosure Act, common law and the Code of Conduct for Cayman Islands Attorneys-at-Law (collectively, the "Cayman Islands Law"), Walkers and the attorneys-at-law working thereat must at all times maintain and protect the confidentiality of the affairs of their clients including, without limitation, the existence of such attorney/client relationship unless otherwise authorized by the client to disclose or pursuant to another exception under Cayman Islands Law – none of which is applicable here aside from client consent. *See* Walkers Declaration, ¶ 6; Supplemental Walkers Declaration, ¶¶ 3-9; Second Supplemental Walkers Declaration, ¶ 3. In the absence of express client consent, Walkers would be in breach of its common law duties and professional obligations if it was to disclose the identity of a client to anyone, including the Debtors, this Court, the U.S. Trustee or the Committee. Second Supplemental Walkers Declaration, ¶ 4. If any such disclosure was made, Walkers and/or the attorneys-at-law working thereat potentially would face litigation risk, including damages and injunctive relief, claims for equitable compensation for breach of fiduciary duty and/or damages for breach of contractual duty, as well as professional conduct proceedings that could result in a suspension of an attorney's ability to practice or striking of an attorney's name from the roll of attorneys maintained by the Grand Court of the Cayman Islands. *Id.*

---

[6] Contemporaneously herewith, the Debtors filed the second supplemental declaration in support of Walkers' OCP retention (the "Second Supplemental Walkers Declaration" and together with the Walkers Declaration and the Supplemental Walkers Declaration, the "Walker Declarations" and together with the Schurti Declarations and the Lenz Declarations, the "Foreign OCP Declarations").

{1368.002-W0074688.}

14.     While the Debtors submit that they have already fully complied with the process required by, and the terms of, the OCP Order by filing specific disclosures for all OCPs who are legally and ethically able to do so and by filing the Foreign OCP Declarations detailing the applicable foreign law and/or regulation that prohibits such disclosures, the Debtors file this Motion at the request of the U.S. Trustee for authority to seal or, where required by applicable foreign law or regulation, to omit the Confidential Information from the Foreign OCP Declarations.

15.     During the ordinary course of these complex Chapter 11 Cases, the Debtors anticipate that they may require the services of additional foreign OCPs who may be subject to similar legal and/or ethical constraints that prohibit them from publicly disclosing or disclosing in any capacity the Confidential Information.  As such, the Debtors also request authority to file under seal or, where required by applicable foreign law or regulation, to omit the Confidential Information in any future OCP declarations or other documents filed in connection with the retention process of any foreign OCP subject to similar restrictions as the Initial Foreign OCPs (together with the Continuing Foreign OCPs, the "Foreign OCPs").  For the avoidance of doubt, the Debtors will have each Foreign OCP subject to such restrictions file a declaration identifying the applicable law and/or regulations prohibiting disclosure of the Confidential Information and providing certified translations thereof, where the original text is not in English (together with the Foreign OCP Declarations, the "Declarations").

## **Relief Requested**

16.     The Debtors seek entry of the Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to file under seal or, where required by applicable foreign law or regulation, to omit the Confidential Information from the Declarations in support of the

{1368.002-W0074688.}

retention of the Foreign OCPs, (ii) directing that, where applicable, the unredacted version of any

such Declaration not be made available to any party except the Court, the Debtors, the U.S.

Trustee and the Committee and (iii) granting related relief.

### Basis For Relief

17.     This Court may grant the relief requested herein pursuant to section 107(b) of the

Bankruptcy Code and Bankruptcy Rule 9018.  Section 107(b) of the Bankruptcy Code provides

bankruptcy courts with the power to issue orders that will protect entities from potential harm.

In relevant part, section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on
> the bankruptcy court's own motion, the bankruptcy court may –
>
> > (1) protect an entity with respect to a trade secret or
> > confidential research, development, or commercial
> > information; or
> >
> > (2) protect a person with respect to scandalous or
> > defamatory matter contained in a paper filed in a case
> > under this title.

11 U.S.C. § 107(b).  Bankruptcy Rule 9018 defines the procedure by which a party may move

for relief under section 107(b) of the Bankruptcy Code, and provides:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires (1) to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information, (2) to protect
> any entity against scandalous or defamatory matter contained in any
> paper filed in a case under the Code, or (3) to protect governmental
> matters that are made confidential by statute or regulation.

Fed. R. Bankr. P. 9018.

18.     Unlike rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the

Bankruptcy Code does not require a demonstration of "good cause."  Rather, if material sought

to be protected falls within one of the enumerated categories, "the court is *required* to protect a

requesting interested party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original). Moreover, the resulting order should be broad, that is "any order which justice requires." FED. R. BANKR. P. 9018; s*ee In re Global Crossing, Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003). Courts are required to provide such protections, "generally where open inspection may be used as a vehicle for improper purposes." *In re Orion Pictures Corp.*, 21 F.3d at 27. Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *In re Global Crossing, Ltd.*, 295 B.R. at 724.

19.     The Debtors respectfully submit that the Confidential Information that they seek to seal or omit pursuant to this Motion must be kept confidential as explained in the Foreign OCP Declarations, and as shall be explained in any future Declarations, pursuant to applicable foreign law and/or regulation that prohibits the Foreign OCPs from either publicly disclosing or disclosing in any capacity the identity of their current or former clients, and thus is confidential commercial information as contemplated by section 107(b)(1) of the Bankruptcy Code. Section 107(b)(1) "establishes the exception to the general rule that court documents are open for public inspection[,]" and, under this exception, a party seeking relief "ha[s] to show only that the information it [seeks] to seal [is] 'confidential' and 'commercial' in nature." *Id.* As set forth in the Foreign OCP Declarations and as shall be set forth in any future Declarations, the Foreign OCPs are legally or ethically prohibited from disclosing the Confidential Information and would be subject to criminal, civil and/or professional sanctions for any such disclosures.

20.     As this Court has recognized, "OCP orders are routinely used in this district and other districts around the country to allow a debtor to retain professionals to assist with matters

that are not related to the debtors' duties under the Bankruptcy Code; thus, avoiding the need to comply with the requirements of Section 327." *In re Mallinckrodt Plc, et al.*, Case No. 20-12522-JTD, Hr'g Tr. 68:12-18, Feb. 25, 2021.  To that end, courts in this district routinely approve procedures for the retention of OCPs that do not require them to provide the specific disclosures required by Bankruptcy Rule 2014 or Local Rule 2014-1.  *See e.g., In re Boxed, Inc., et al.*, Case No. 23-10397-BLS (May 1, 2023) [D.I. 185] (approving OCP retention procedures that do not require OCP to disclose specific connections); *In re Lincoln Power, L.L.C., et al.*, Case No. 23-10382-LSS (Apr. 27, 2023) [D.I. 116] (same); *In re SIO2 Medical Products, Inc., et al.*, Case No. 23-10366-JTD (Apr. 24, 2023) [D.I. 180] (same); *In re Allegiance Coal USA Limited, et al.*, Case No. 23-10234-CTG (Apr. 10, 2023) [D.I. 201] (same); *In re Nova Wildcat Shur-Line Holdings, Inc., et al.*, Case No. 23-10114-CTG (Mar. 9, 2023) [D.I. 192] (same); *In re Sequential Brands Group, Inc., et al.*, Case No. 21-11194-JTD (Sept. 23, 2021) [D.I. 130] (same); *In re Mallinckrodt Plc, et al.*, Case No. 20-12522-JTD (Nov. 11, 2020) [D.I. 474] (same).

21.     Moreover, this Court expressly has rejected arguments that OCPs must file declarations adhering to the strict disclosure requirements of Bankruptcy Rule 2014.  Transcript of Feb. 25, 2021 hr'g at 69:25-70:13, *In re Mallinckrodt Plc, et al.*, Case No. 20-12522-JTD (finding that where each proposed ordinary course professional filed a declaration stating that it does not "hold any interest adverse to the debtors or their estates with respect to the matter or matters on which the professional is to be employed" without specific disclosures, this was satisfactory and in compliance with the applicable order approving the retention of ordinary course professionals).

22.     Here, the Foreign OCPs have met, or will meet, the express requirements of the

{1368.002-W0074688.}

OCP Order through the submission of the Declarations that attest, pursuant to the penalty of perjury, that they hold no interest adverse to the Debtors or their estates with respect to the matters on which the Foreign OCP is to be employed.  In recognition of the extraordinary circumstances of these Chapter 11 Cases, the Debtors have already gone above and beyond and will continue to do so by filing specific disclosures for all OCPs who are legally and ethically able to do so and by filing the Declarations detailing the applicable foreign law and/or regulation that prohibits or otherwise limits disclosure of the Confidential Information.

23.      If the Court were to deny the relief requested herein, the Debtors would be in the untenable position of being unable to retain ***any*** professional in foreign jurisdictions with these types of legal, professional and/or regulatory restrictions.  As explained above, the Debtors already have had two OCPs withdraw from the process as they were unable to find a workable solution or exception to the applicable prohibitions against disclosure of the Confidential Information.

24.      The Continuing Foreign OCPs have been assisting the Debtors with various foreign legal issues since shortly after the Petition Date.  Failure to retain the Foreign OCPs, in particular the Continuing Foreign OCPs, would be to the immediate and significant detriment of the Debtors, their estates, and all parties-in-interest in these Chapter 11 Cases.  As a result, the Debtors believe that authorizing the Confidential Information to be filed under seal or omitted, as necessary, is appropriate, necessary and justified under the circumstances of these Chapter 11 Cases.

### Notice and No Prior Request

25.      The Debtors have provided notice of this Motion to the following, or in lieu thereof, their counsel, if known: (a) the U.S. Trustee; (b) the Committee; (c) the Securities and

13

Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) the Continuing Foreign OCPs; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

26.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

### Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A** (i) authorizing the Debtors to file under seal or, where required by applicable foreign law or regulation, to omit the Confidential Information from the Declarations in support of the retention of the Foreign OCPs, (ii) directing that, where applicable, the unredacted version of any such Declaration not be made available to any party except the Court, the U.S. Trustee and the Committee and (iii) granting such other and further relief as is just and proper.

14

Dated: February 28, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

{1368.002-W0074688.}