## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 20, 2024 at 10:00 a.m. (ET)**<br>**Objection Deadline: March 13, 2024 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING (I) ENTRY INTO, AND PERFORMANCE UNDER, THE SHARE AND ASSET PURCHASE AGREEMENT, (II) THE SALE OF THE SHARES OF THE TRANSFERRED SUBSIDIARIES, SHARES OF THE MINORITY ENTITIES AND TRANSFERRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (III) DISMISSING THE CHAPTER 11 CASES OF THE FTX EUROPE SUBSIDIARIES**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 305(a), 349, 363 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), rules 1017, 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 1017-2, 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving:

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

(i)     the entry by Debtor FTX Europe AG, a Swiss stock corporation ("FTX Europe" or "Seller"), into, and its performance under, the Share and Asset Purchase Agreement, dated as of February 7, 2024 (including all exhibits and ancillary documents thereto, and as may be amended or supplemented from time to time, the "Share and Asset Purchase Agreement") between Seller, on the one hand, and Patrick Gruhn, Robin Matzke, Lorem Ipsum RM UG (collectively, the "Purchasers") and CredoMedia GmbH (the "Purchaser Entity" and together with the Purchasers, the "Purchaser Parties") on the other hand, attached hereto as Exhibit B;

(ii)    the sale (the "Sale Transaction") by Seller to the Purchaser Entity of (a) 100% of the share capital (the "Transferred Subsidiary Interests") of each of Debtors FTX EU Ltd. ("FTX Cyprus"), FTX Switzerland GmbH ("FTX Switzerland"), FTX Trading GmbH, FTX Certificates GmbH and FTX Structured Products AG (collectively, the "Transferred Subsidiaries"), (b) 9.9% of the share capital of non-Debtor CONCEDUS Digital Assets GmbH and 9.9% of the share capital of non-Debtor CM Equity-Equity AG (collectively, the "Minority Entities") (together with the Transferred Subsidiary Interests, the "Shares") and (c) certain other assets as set forth in the Share and Asset Purchase Agreement (the "Transferred Assets"), in each case free and clear of all liens, claims, interests and encumbrances ("Liens") other than Permitted Liens (as defined in the Share and Asset Purchase Agreement); and

(iii)    the dismissal of the Chapter 11 Cases (as defined below) of (a) the Transferred Subsidiaries effective upon the transfer of the Shares of the relevant Transferred Subsidiary pursuant to the Sale Transaction (the "<u>Closing</u>") and (b) FTX Crypto Services Ltd. ("<u>FTX Crypto Services</u>" and together with the Transferred Subsidiaries, the "<u>FTX Europe Subsidiaries</u>") effective upon the entry of the Order.

In support of this Motion, the Debtors submit the declarations of Steven P. Coverick attached hereto as <u>Exhibit E</u> (the "<u>Coverick Declaration</u>"), Dominique Müller attached hereto as <u>Exhibit F</u> (the "<u>Müller Declaration</u>") and Stylianos A. Triantafyllides attached hereto as <u>Exhibit G</u> (the "<u>Triantafyllides Declaration</u>"), which are each incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state as follows:

## **<u>Preliminary Statement</u>**

1.    As previewed in the *Motion of Plaintiffs for Entry of an Order (I) Authorizing Plaintiffs to Enter Into Stipulation With Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, Brandon Williams, Martha Lambrianou, and Marcel Loetscher, (II) Approving the Stipulation, and (III) Granting Related Relief* [D.I. 7853] (the "<u>Settlement Motion</u>") and the global settlement and stipulation attached thereto (the "<u>Stipulation</u>"), the Debtors have reached an agreement with the Purchasers, former principals of FTX Europe, to resolve costly and time-consuming litigation, realize the value of the assets of FTX Europe and restructure the balance sheet of FTX Europe to allow for its orderly solvent wind-down and a return of equity value to the Debtors' broader estates.

2.    The Debtors are seeking to effect the resolution of FTX Europe and its subsidiaries in a multi-part transaction involving:  the settlement set out in the Stipulation and described in the Settlement Motion; a sale of the Shares and the Transferred Assets to the

Purchaser Entity pursuant to the Share and Asset Purchase Agreement for an aggregate purchase price of $32.7 million, payable in cash in three equal installments of $10.9 million; and a consensual restructuring of the network of claims among FTX Europe, Debtor Alameda Research Ltd. ("Alameda"), FTX Trading and CM Equity AG, a non-Debtor company controlled by third parties (the "FTX Europe Claim Settlement"). The Debtors are seeking approval only of the sale in this Motion. The Debtors intend to seek approval for the FTX Europe Claim Settlement in a separate motion if and when agreement is reached with the applicable parties.

3.        Additionally, the Debtors are seeking (i) the dismissals of the Chapter 11 Cases of the Transferred Subsidiaries (effective upon the Closing) to facilitate the Sale Transaction and (ii) the dismissal of the Chapter 11 Case of FTX Crypto Services (effective upon entry of the Order) to allow for the orderly wind-down of that entity in accordance with Cyprus law.

## Background

4.        On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6.        Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

-4-

4855-4043-7922 v.7

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Facts Specific to Relief Requested

**I.      Overview of FTX Europe**

      A.      <u>Acquisition of FTX Europe</u>

      7.      Prior to the Petition Date, pursuant to a series of transactions on October

25, 2020, July 2, 2021 and November 14, 2021, the FTX group acquired FTX Europe (f/k/a

Digital Assets DA AG) and its subsidiaries, including certain of the Transferred Subsidiaries,

from the Purchasers for an aggregate purchase price of approximately $376 million.  *See*

Coverick Decl. ¶ 6.

      B.      <u>CySEC Suspension and Customer Shortfall</u>

      8.      Following the acquisition by the FTX group, FTX Europe and the

Transferred Subsidiaries operated a business (the "<u>Business</u>"), primarily through FTX Cyprus,

pursuant to which customers in Europe were able to engage in certain digital asset transactions

through the FTX.com platform operated by the Debtors.  *See* Coverick Decl. ¶ 7.  The Business

historically operated as part of the wider FTX group.  *Id*.  FTX Cyprus had approximately

116,000 customers, approximately 41,000 of which had net positive balances as of the Petition

Date.  *Id*.

      9.      FTX Cyprus is subject to the regulatory supervision of the Cyprus

Securities and Exchange Commission ("<u>CySEC</u>") and holds a license (the "<u>License</u>") to operate

as a Cypriot Investment Firm.  *See* Triantafyllides Decl. ¶ 5.  On the Petition Date, FTX Cyprus

ceased operations and CySEC issued an order suspending the License (the "<u>Suspension Order</u>")

and ordering FTX Cyprus to take certain actions, including corrective measures to bring itself
into compliance with certain of its authorization conditions.  In order to comply with the
Suspension Order, FTX Cyprus is required to comply with Cyprus law, which requires the
safekeeping of fiat currency balances belonging to its customers (the "Customer Cash") and the
return of such Customer Cash to its customers.  *See* Triantafyllides Decl. ¶ 6.  These customer
fiat currency balances are required to be held in segregated client bank accounts pursuant to
Cyprus law.  *Id.*

10. During the process of reconciling customer entitlements to actual cash on
hand, the Debtors and their advisors learned that FTX Cyprus did not hold sufficient funds to
meet all such entitlements.  The Debtors, based on currently available information, calculate that
the shortfall in customer funds (the "Shortfall") is approximately €7.1 million.  *See* Coverick
Decl. ¶ 8.  CySEC approval is required to replace the management of FTX Cyprus.  *See*
Triantafyllides Decl. ¶ 7.  As a result, the prepetition management remains in place.  *See*
Coverick Decl. ¶ 8.  At the Debtors' request, CySEC has agreed several times to extend the
Suspension Order, which is currently set to expire on March 31, 2024.  *See* Triantafyllides
Decl. ¶ 8.

C. Swiss Moratorium Proceeding

11. Due to Seller's financial condition, Seller's board of directors, pursuant to
its duties under Swiss law, filed a request with the District Court of Höfe, Switzerland (the
"Swiss Court") to open provisional moratorium proceedings (the "Provisional Moratorium")
with respect to Seller on April 4, 2023.  *See* Müller Decl. ¶ 4.  The Swiss Court granted this
request on April 11, 2023, which was subsequently extended to December 11, 2023.  On
November 24, 2023, the Swiss Court granted a definitive moratorium until June 11, 2024 (the
"Definitive Moratorium" and, together with the Provisional Moratorium, the "Moratorium").  *Id.*

12.     Pursuant to the Moratorium, Seller operates under the supervision of a court-appointed administrator, Holenstein Brusa AG (the "Swiss Administrator"), while Seller seeks to either restructure its debt or enter into a composition agreement with its creditors. During the Moratorium, Seller may also enter into a transaction with the goal of maximizing the value of its assets for its creditors as required under Swiss law.  *See* Müller Decl. ¶ 5.  The Debtors understand that if the Closing does not occur and the prospects of a successful restructuring are diminishing, the Swiss Administrator is required to consider, pursuant to its duties under Swiss law, whether to initiate Swiss bankruptcy liquidation proceedings in relation to Seller.  *See* Müller Decl. ¶ 6.

**II.     Litigation with the Purchasers**

13.     On July 12, 2023, the Debtors commenced an adversary proceeding (Adv. Pro. No. 23-50437) (the "Adversary Proceeding") against the Purchasers by filing a complaint [Adv. Pro. D.I. 1] seeking, among other things, to avoid and recover transfers made by the Debtors to the Purchasers in connection with the acquisition of FTX Europe and for the disallowance of claims filed by each of the Purchasers against the Debtors.  On October 25 and October 27, 2023, the Purchasers moved to dismiss the complaint [Adv. Pro. D.I. 23 & 31].  On December 15, 2023, the Debtors filed an opposition to the Purchasers' motion to dismiss [Adv. Pro. D.I. 58].  In connection with the settlement terms agreed among the parties, on January 31, 2024, the Court entered an agreed order approving a stay of the Adversary Proceeding [Adv. Pro. D.I. 83].

14.     The Purchasers raised numerous defenses to the Adversary Proceeding in light of the specific facts and circumstances of the 2021 acquisition of FTX Europe by the Debtors.

15.     On October 27, 2023, the Purchasers filed the *Motion of Patrick Gruhn, Robin Matzke and Lorem Ipsum UG to Dismiss Bankruptcy Case of Maclaurin Investments, Ltd.* [D.I. 3399] and the *Motion of Patrick Gruhn, Robin Matzke and Lorem Ipsum UG to Dismiss Bankruptcy Case of FTX Trading Ltd.* [D.I. 3400] (collectively, the "Purchasers' Motions to Dismiss") seeking to dismiss the Chapter 11 Cases of Maclaurin Investments, Ltd. and FTX Trading, respectively.  In response, on November 12, 2023, the Debtors filed the *Debtors' Omnibus Objection to Motions of Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG to Dismiss Bankruptcy Cases of Maclaurin Investments, Ltd. and FTX Trading Ltd* [D.I. 4616].

16.     On November 17, 2023, Dr. Marcel Lötscher, a former employee and director-elect of FTX Europe, filed the *Motion of Dr. Marcel Lötscher to Dismiss Bankruptcy Case of FTX Europe AG* [D.I. 4037] (the "Lötscher Motion to Dismiss") seeking to dismiss the Chapter 11 Case of FTX Europe.  On December 20, 2023, Dr. Marcel Lötscher filed with the Swiss Court the *Motion of Dr. Marcel Lötscher to Terminate the Moratorium* [Proceeding No. ZES 2023 763] *and alternatively to appoint a creditors' committee* which he withdrew on February 16, 2024.

17.     On January 4, 2024, the Debtors filed the *Motion of Debtors For Entry of An Order (I) Authorizing and Approving (A) Entry Into, and Performance Under, the Share Purchase Agreement and (B) the Purchase and Sale of Certain Shares Free and Clear of Liens, Claims and Encumbrances and (II) Dismissing the Chapter 11 Cases of Certain Debtors Effective Upon the Earlier of the Closing or the Termination of the Share Purchase Agreement* [D.I. 5378] (the "FTX Europe Sale Motion"), seeking Court authorization, among other things, for FTX Europe to sell, and for FTX Trading to purchase, the equity interests of FTX Cyprus and FTX Switzerland, and upon the earlier of the closing or the termination of the proposed sale,

dismissal of the Chapter 11 Cases of FTX Europe, FTX Certificates GmbH, FTX Crypto Services, FTX Structured Products AG and FTX Trading GmbH.

18.     On January 10, 2024, Martha Lambrianou, the sole remaining prepetition director of FTX Cyprus, filed the *Motion of Martha Lambrianou to Dismiss Bankruptcy Case of FTX EU Ltd.* [D.I. 5529] (the "Lambrianou Motion to Dismiss" and, together with the Lötscher Motion to Dismiss and the Purchasers' Motions to Dismiss, the "Motions to Dismiss") seeking to dismiss the Chapter 11 Case of FTX Cyprus.

19.     On January 24, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order Establishing a Schedule for the FTX Europe Motions* [D.I. 6520] (the "Scheduling Motion"), requesting that the Court enter a proposed schedule for the adjudication of the myriad issues raised by Dr. Lötscher and Ms. Lambrianou.

20.     Following the filing of the Scheduling Motion, the Debtors, the Purchasers, Dr. Lötscher and Ms. Lambrianou (collectively, the "Settlement Parties") commenced settlement discussions.

## III.     Settlement

21.     Following extensive arm's length negotiations, on January 29, 2024, the Debtors and the Settlement Parties agreed to principles of a cooperation among the parties which included the principal terms of a global settlement and the Sale Transaction and an agreement of the parties to enter into discussions with certain third parties in respect of the FTX Europe Claim Settlement.  These principal settlement terms were definitively reflected in the Stipulation, dated as of February 7, 2024, and in the Share and Asset Purchase Agreement.  On February 22, 2024, the Debtors filed the Settlement Motion and Stipulation.

22.     The Stipulation contemplates, among other things, (i) the disallowance of the proofs of claim filed by Patrick Gruhn, Lorem Ipsum UG, and Martha Lambrianou; (ii) the

withdrawal of Patrick Gruhn, Robin Matzke, Lorem Ipsum UG, Brandon Williams, Martha

Lambrianou and Marcel Lötscher's (collectively, the "LI Parties") Motions to Dismiss with

prejudice; (iii) an agreement by the LI Parties to refrain from taking any adverse action against

the Debtors (such as by filing a motion to dismiss any of the pending Chapter 11 Cases); (iv) the

allowance of certain customer claims in the proof of claim filed by Robin Matzke against the

Debtors in an amount to be reconciled; (v) the release of any claims the Debtors may have

against the LI Parties and certain other persons connected to the LI Parties, FTX Europe, or its

subsidiaries, as specified in Annex A to the Stipulation; (vi) the release of any claims the LI

Parties and certain other parties and each of their respective affiliates may have against the

Debtors and certain other persons; and (vii) the dismissal of the Adversary Proceeding with

prejudice.

23.     Since entering into the Share and Asset Purchase Agreement and the

Stipulation, the Debtors and the Purchaser Parties have entered into negotiations with the

applicable parties in respect of the FTX Europe Claim Settlement.  The Debtors intend to enter

into definitive agreements with respect to the FTX Europe Claim Settlement as soon as possible,

and will thereafter file a motion with the Court seeking its approval.  FTX Europe's obligations

to complete the Sale Transaction are conditioned on completion of the FTX Europe Claim

Settlement.

**IV.     Marketing and Sales Process**

24.     As set forth in the Debtors' FTX Europe Sale Motion, the Debtors

previously ran a robust sales and marketing process for the sale of FTX Europe, its subsidiaries

and its assets.  The Debtors ultimately decided to pursue an alternative transaction whereby FTX

Cyprus and certain other subsidiaries of FTX Europe would be purchased by FTX Trading, as

more fully described in the FTX Europe Sale Motion.

-10-

25.    After thoroughly evaluating all available alternatives, including the transaction originally contemplated in the FTX Europe Sale Motion, the Debtors determined that, given the significantly higher price offered by the Purchaser Parties for the assets of FTX Europe, taken together with the global settlement outlined in the Stipulation and the transactions contemplated by the FTX Europe Claim Settlement, it was in the best interest of their estates to proceed with the transactions contemplated by the Share and Asset Purchase Agreement with the Purchaser Parties.

## V.    Released Intercompany Claims

26.    In connection with the Sale Transaction, and subject to the closing conditions set forth in the Share and Asset Purchase Agreement, the Debtors and the Purchaser Parties have agreed to enter into a release agreement substantially in the form attached as Exhibit B to the Share and Asset Purchase Agreement (the "Release Agreement") at the Closing.  Under the Release Agreement, the Debtors, on the one hand, and the Transferred Subsidiaries, on the other hand, would grant mutual releases of certain claims.  The claims that would be released by the Debtors include claims in respect of operating costs and expenses incurred by parent companies on behalf of their subsidiaries, or loans made by parent companies to their subsidiaries to cover operating costs and expenses, including:[2] (i) $1,168,801 owed by FTX Cyprus to FTX Trading in respect of post-petition operating expenses and fees paid on behalf of FTX Cyprus; (ii) $893,874 owed by FTX Cyprus to Seller in respect of certain prepetition intercompany loans and operating expenses paid by Seller on behalf of FTX Cyprus;  (iii) $495,458 owed by FTX Switzerland to Seller in respect of certain pre and post-petition

---

[2]    Based on unaudited management accounts as of November 30, 2023.  Final release amounts may be different due to additional transactions between November 30, 2023 and the Closing.  In cases where balances do not reconcile between the Debtors' accounts and the Transferred Subsidiaries' accounts, Debtors' balances are presented.

intercompany loans and operating expenses paid by Seller on behalf of FTX Switzerland; (iv) $154,440 owed by FTX Trading GmbH to debtor West Realm Shires, Inc. ("WRS") in respect of certain post-petition payroll, operating expenses and fees paid by WRS on behalf of FTX Trading GmbH; (v) $374,975 owed by FTX Trading GmbH to FTX Trading in respect of certain post-petition intercompany loans for payroll and operating expenses; (vi) $102,310 owed by FTX Switzerland to FTX Trading in respect of post-petition intercompany loans to fund operating expenses; (vii) $94,451 owed by FTX Cyprus to West Realm Shires, Inc. in respect of post-petition payroll, rent and fees paid on behalf of FTX Cyprus (viii) $53,049 owed by FTX Certificates GmbH to Seller in respect of certain pre and post-petition intercompany loans and operating expenses paid by Seller on behalf of FTX Certificates GmbH; (ix) $1,123 owed by FTX Structured Products AG to WRS in respect of U.S. Trustee fees; (x) $1,000 owed by FTX Switzerland to WRS in respect of U.S. Trustee fees; and (xi) $1,000 owed by FTX Certificates GmbH to WRS in respect of U.S. Trustee fees.  *See* Coverick Decl. ¶ 9.

**VI.    FTX Crypto Services**

27.    FTX Crypto Services is a wholly-owned subsidiary of FTX Europe and is incorporated in Cyprus.  Based on the Debtors' currently available books and records, FTX Crypto Services appears to be solvent, does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  Notwithstanding FTX Crypto Services' balance sheet position, it is possible that FTX Crypto Services may require de minimis equity, either through cash or intercompany release, in order to effectuate its liquidation.  *See* Coverick Decl. ¶ 10.

-12-

## VII.       Sale Transaction

28.      On February 7, 2024, Seller and the Purchaser Parties executed the Share

and Asset Purchase Agreement, which contains the following material terms:[3]

| Seller | FTX Europe |
|---|---|
| **Purchaser Parties** | Patrick Gruhn, Robin Matzke, Lorem Ipsum RM UG and CredoMedia GmbH |
| **Purchaser Entity** | CredoMedia GmbH |
| **Acquisition of Shares** | At Closing, Seller will sell to the Purchaser Entity, and the Purchaser Entity will purchase from Seller, 100% of the share capital of each of the following Debtor entities: <ul><li>FTX Cyprus;</li><li>FTX Switzerland GmbH;</li><li>FTX Trading GmbH;</li><li>FTX Certificates GmbH; and</li><li>FTX Structured Products AG;</li></ul> and 9.9% of the share capital of each of the following non-Debtor entities: <ul><li>CONCEDUS Digital Assets GmbH; and</li><li>CM-Equity AG.</li></ul> |
| **Acquisition of Transferred Assets** | At Closing, Seller will sell to the Purchaser Entity, and the Purchaser Entity will purchase from Seller, the following assets: <ul><li>Owned Business Know-How;</li><li>Owned Brands and Trade Names;[4]</li><li>Owed IT Assets;[5] and</li><li>Transferred Books and Records.</li></ul> |
| **Assumption of Liabilities** | At Closing, the Purchaser Entity will assume (i) all Liabilities arising out of the ownership, use or operation of the Transferred Assets accruing or arising after the Closing; and (ii) all other Liabilities that the Purchaser Parties have expressly assumed under the Share and Asset Purchase Agreement and the other Transaction Documents. |

---

[3]   Capitalized terms used in this Section VI but not otherwise defined herein are to be given the meanings ascribed to them in the Share and Asset Purchase Agreement.  To the extent that there are inconsistencies between any summary description of the Share and Asset Purchase Agreement contained herein and the terms of the Share and Asset Purchase Agreement, the terms of the Share and Asset Purchase Agreement shall govern.

[4]   None were identified in the Share and Asset Purchase Agreement.

[5]   None were identified in the Share and Asset Purchase Agreement.

| Purchase Price and Guarantee | $32.7 million, payable in cash in three equal installments of $10.9 million.  The first installment will be due at Closing, the second installment will be due no later than six (6) months after Closing, and the third and last installment will be due no later than twelve (12) months after Closing.<br><br>At Closing, the Purchaser Parties will also deliver a first demand bank guarantee or letter of credit issued by a financial institution of international standing acceptable to Seller, in a form acceptable to Seller, guaranteeing payment of the deferred installments of the purchase price. |
|---|---|
| Closing Conditions | Mutual closing conditions include: (i) the approval of the sale of the Transferred Interests and the Transferred Assets to the Purchaser Entity by the Swiss Court pursuant to art. 298 para. 2 DEBA (the "Swiss Sale Approval"); (ii) an Order by the U.S. Bankruptcy Court (1) approving the sale of the Transferred Interests and the Transferred Assets to the Purchaser Entity free and clear of Liens other than Permitted Liens and (2) making findings that the Purchaser Parties are good-faith purchasers entitled to the protections of Section 363(m) and (n) of the Bankruptcy Code; (iii) dismissing of the Chapter 11 Cases of the Transferred Subsidiaries effective upon the Closing; and (iv) effectiveness of the Settlement in accordance with the Settlement Stipulation.<br><br>The conditions to the obligation of Seller include: (i) the entry of an Order in the U.S. Bankruptcy Court approving the FTX Europe Claim Settlement and the approval of the FTX Europe Claims Settlement by the Swiss Court pursuant to art. 298 para. 2 DEBA (the "Swiss Restructuring Approval"); (ii) the execution and delivery of definitive agreements implementing the FTX Europe Claim Settlement and effectiveness of the assumptions and releases contemplated thereby; and (iii) the condition that no Settlement Party (other than Seller and its Affiliates) shall have breached its obligation under Section 3 of the Settlement Stipulation.<br><br>In addition, the obligation of each of Seller and the Purchaser Parties to effect the Closing is subject to customary conditions regarding the accuracy of the representations and warranties and the performance of material obligations under the Share and Asset Purchase Agreement. |
| Intellectual Property Matters | The Transferred Assets expressly excluded any trademarks incorporating "FTX" or the FTX Group logo. |

| | Effective upon the Closing, Seller, on behalf of itself and its Affiliates, grants to FTX Cyprus a license to access and operate the website hosted at https://ftxeurope.eu, and display certain FTX Group trademarks, solely as necessary to comply with FTX Cyprus's obligations under Cyprus law to return Customer Cash.<br><br>Effective upon the Closing, the Purchaser Parties, on behalf of (a) themselves, (b) each of their respective current or former Affiliates (including, following the Closing, the Transferred Subsidiaries), (c) each of the current or former officers, directors, employees, equity holders, partners, stockholders, members, direct and indirect owners, managers, advisors, predecessors, successors and assigns of any of the Persons described in clause (a) or clause (b) above and (d) each of the current or former Affiliates of any of the Persons described in clause (c) above, will (i) release, waive and discharge the Seller, the Debtors (excluding the Transferred Subsidiaries), and each of their current or former Affiliates (excluding the Transferred Subsidiaries), and each of their respective current or former officers, directors, employees, agents representatives, customers, users, licensees, distributors, resellers, suppliers, manufacturers and service providers and each such Person's respective successors and assigns from and with respect to any and all Liabilities based on, related to or arising out of any purported direct or indirect (including induced or contributory) infringement, misappropriation or other violation of any Intellectual Property. |
|---|---|
| **Cyprus Regulatory Matters** | Each Purchaser Party acknowledges and agrees that (i) the Purchaser Parties jointly bear the sole responsibility for obtaining the CySEC Transfer Authorization; and (ii) the Sale Transaction is not conditioned on the granting or reinstatement by CySEC of any license or authorization required to allow FTX Europe to undertake regulated activities or operations.<br><br>Prior to the Closing, Seller shall use its commercially reasonable efforts to cooperate with the Purchaser Parties in providing information or other assistance in connection with the foregoing.<br><br>Prior to the Closing, the Purchaser Parties shall consult with Seller and consider in good faith the views of Seller in connection with all the information relating to Seller or FTX Cyprus that appears in any filing made with, or written materials submitted to, CySEC in connection with the Transactions. |
| **Termination Date** | The Share and Asset Purchase Agreement may be terminated: (i) upon the mutual agreement of Seller and the Purchaser Parties; (ii) by either Seller or the Purchaser Parties if the Closing has not occurred by May 7, 2024; (iii) by either party if the other party is |

| | in material breach of the Share and Asset Purchase Agreement; (iv) automatically, if Seller enters into a definitive agreement with a third party with respect to an Alternative Transaction; or (v) by Seller if its board of directors determines that proceeding with the Transactions or failing to terminate the Share and Asset Purchase Agreement could be inconsistent with the board's fiduciary duties. |
|---|---|
| **FTX EU Customer Shortfall** | FTX Trading agrees to reimburse the Purchaser Parties for amounts paid by FTX Cyprus in satisfaction of European Customer Claims (as scheduled to the Release Agreement) to the extent such payments exceed in the aggregate €46,481,714, provided that such reimbursement by FTX Trading is subject to a maximum amount of $7.7 million.<br><br>FTX Trading agrees that the Customer Withdrawal Liabilities (as scheduled to the Share and Asset Purchase Agreement) shall be reconciled, and distributions in respect thereof made, by the Debtors pursuant to a plan of reorganization adopted in the Bankruptcy Proceeding.<br><br>FTX Trading will indemnify, defend and hold harmless FTX Cyprus from and against and in respect of a further claim identified in the Release Agreement up to a maximum amount of $20 million. |
| **Releases** | At Closing, the FTX Debtor Releasors generally, irrevocably, forever, fully and unconditionally release, waive and discharge each of the Transferred Subsidiaries together with their respective successors and assigns from and with respect to any and all claims, obligations, rights, suits, damages, causes of actions, remedies and liabilities, of any kind, nature or description.<br><br>At Closing, the Transferred Subsidiaries release the FTX Debtor Releasees from and with respect to any and all claims, obligations, rights, suits, damages, causes of actions, remedies and liabilities, of any kind, nature or description. |
| **Governing Law** | The Share and Asset Purchase Agreement and the Release Agreement are governed by the laws of the State of Delaware. |

29.     In addition to the material terms of the Share and Asset Purchase Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

-16-

| | |
|---|---|
| **Sale to an Insider** | None of the Purchaser Parties is an insider of Seller within the meaning set forth in section 101(31)(B)(iii) of the Bankruptcy Code. *See* Local Rule 6004-1(b)(iv)(A). |
| **Agreements with Management** | None. *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | As described above, "Releases." *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted. *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadlines** | As described above, "Termination Date." *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None. *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchaser Parties** | Not applicable. *See* Local Rule 6004-1(b)(iv)(G). |
| **Use of Proceeds** | None. *See* Local Rule 6004-1(b)(iv)(H). |
| **Tax Exemption** | Not applicable. *See* Local Rule 6004-1(b)(iv)(I). |
| **Record Retention** | The Debtors will retain, or have reasonable access to, all records necessary for the administration of these Chapter 11 Cases. *See* Local Rule 6004-1(b)(iv)(J). |
| **Sale of Avoidance Actions** | None. *See* Local Rule 6004-1(b)(iv)(K). |
| **Requested Findings as to Successor Liability** | None. *See* Local Rule 6004-1(b)(iv)(L). |
| **Sale Free and Clear of Unexpired Leases** | Not applicable. *See* Local Rule 6004-1(b)(iv)(M). |
| **Credit Bid** | Not applicable. *See* Local Rule 6004-1(b)(iv)(N). |
| **Relief from Bankruptcy Rule 6004(h)** | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d). *See* Local Rule 6004-1(b)(iv)(O). |

## **Jurisdiction**

30.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 305(a), 349,

363 and 1112(b) of the Bankruptcy Code, Bankruptcy Rules 1017, 2002 and 6004 and Local

Rules 1017-2, 2002-1 and 6004-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the

-17-

entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Relief Requested**

31.     By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving (i) Seller's entry into, and performance under, the Share and Asset Purchase Agreement; (ii) the sale by Seller of the Shares and the Transferred Assets, free and clear of all Liens other than Permitted Liens; and (iii) the dismissal of the Chapter 11 Cases of (a) the Transferred Subsidiaries effective upon the Closing and (b) FTX Crypto Services effective upon entry of the Order.

**Basis for Relief**

**I.      The Court Should Approve the Entry into the Share and Asset Purchase Agreement and the Sale Transaction Under Section 363(b) of the Bankruptcy Code.**

32.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets or purchase of assets using estate funds, courts in this district have held that such a sale or purchase may be authorized under section 363 if the court finds a "sound business purpose." *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).

-18-

A.    <u>A Sound Business Purpose Exists for the Entry into the Sale and Asset Purchase</u>
      <u>Agreement and the Sale Transaction</u>

33.    A sound business purpose for the sale of a debtor's assets or use of estate funds to purchase assets outside the ordinary course of business exists where such sale or purchase is necessary to maximize and preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir. 1997).

34.    The Debtors submit that it is advantageous for Seller to sell the Shares and the Transferred Assets to the Purchaser Entity as contemplated by the Share and Asset Purchase Agreement, which was entered into concurrently and in connection with the global settlement with the Purchaser Parties contemplated by the Stipulation.  The settlement contemplated by the Stipulation, together with the Sale Transaction and the FTX Europe Claim Settlement, resolves extensive and costly ongoing litigation, provides the Debtors' estates value with which to effectuate a solvent wind-down of FTX Europe with a potential return of equity value to FTX Trading, releases certain claims held by the Purchasers against the Debtors and allows the Debtors to realize a higher value for the assets of FTX Europe than the Debtors were previously able to obtain.  The proposed purchase price of $32.7 million is higher than the purchase price contemplated in connection with the Debtors' FTX Europe Sale Motion and any other offer the Debtors received for the assets of FTX Europe.

-19-

35.     Accordingly, the Debtors submit that the entry into, and performance under, the Share and Asset Purchase Agreement represents a sound exercise of the Debtors' business judgment and should be approved pursuant to section 363(b) of the Bankruptcy Code.[6]

B.     Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties

36.     Notice of this Motion will be provided to the following parties:  (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Shares and Transferred Assets; (iv) any party that has expressed an interest in purchasing the FTX Europe Subsidiaries during the last six months; (v) all known creditors of the FTX Europe Subsidiaries; (vi) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; and (vii) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

C.     The Parties Have Acted in Good Faith and the Purchaser Parties Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code

37.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that authorization of the sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) provides, in relevant part, as follows:

---

[6]     Although the Debtors do not believe that any of the Purchaser Parties is an insider within the meaning set forth in section 101(31)(B)(iii) of the Bankruptcy Code, even if any of the Purchaser Parties were an insider, the Sale Transaction would still pass the heightened scrutiny standard.  With respect to fair dealing, the Sale Transaction was negotiated at arm's-length between the Purchaser Parties and the Debtors, with the cooperation, input and approval from the Swiss Administrator.  With respect to fair price, the cash consideration of $32.7 million is considerably greater than the cash consideration in the transaction contemplated under the FTX Europe Sale Motion and is greater than the amount offered by other bidders.

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

38.     Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

39.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the integrity of a bidder's conduct in the course of the sale proceedings.  *See Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch (In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

40.     The Debtors and the Purchaser Parties engaged in good faith, hard fought arm's-length negotiations with respect to the Share and Asset Purchase Agreement.  The terms of the Sale Transaction were negotiated with the active involvement of the Debtors' and Purchaser Parties' management teams and respective professionals.  Moreover, the sale process and ultimate entry into the Share and Asset Purchase Agreement was conducted with the assistance and cooperation of the independent Swiss Administrator, who reviewed and commented on draft documentation and signed and approved the Share and Asset Purchase Agreement.  Accordingly,

-21-

the Debtors request the finding that the Purchaser Parties are good-faith purchasers entitled to the

protections of section 363(m) of the Bankruptcy Code.

II.      **The Sale Should Be Free and Clear of All Liens, Claims and Encumbrances Under
         Section 363(f) of the Bankruptcy Code.**

    41. Although the Debtors are currently unaware of any Liens, out of an

abundance of caution the Debtors request authorization to sell the Shares and Transferred Assets

free and clear of all Liens, other than Permitted Liens, in accordance with section 363(f) of the

Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Shares and

Transferred Assets.

    42. The sale of estate property free and clear of any interest is governed by

section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property
> free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is
> to be sold is greater than the aggregate value of all liens on
> such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

    43. Section 363(f) of the Bankruptcy Code is drafted in the disjunctive:

approval of a proposed sale of assets free and clear of interests requires only that one of the five

requirements be satisfied with respect to each such interest.  *See In re Kellstrom Indus., Inc.*,

282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the

-22-

conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

44.     Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize sale of estate assets free and clear).

45.     To the extent any valid Liens exist with respect to the Shares or Transferred Assets, the Debtors submit that the Sale Transaction satisfies one or more of the requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have consented to the Sale Transaction, and the Shares and Transferred Assets may be sold free and clear of all liens, claims, interests and encumbrances.  *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642 B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858). Second, the Debtor submits that any holder of liens, claims and encumbrances against or interests in the Shares or Transferred Assets could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of their interests.  *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del. 2021).

4855-4043-7922 v.7

46.     Furthermore, to the extent any valid Liens are in existence immediately prior to the Closing with respect to the Shares or Transferred Assets (other than Permitted Liens), such Liens will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Shares and Transferred Assets free and clear of Liens (other than Permitted Liens) is in the best interests of the Debtors' estates and stakeholders.

### III.    A Private Sale of the Shares Is Appropriate Under Bankruptcy Rule 6004.

47.     Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction, and courts in this district have held that a debtor may conduct a private sale when a good business reason exists.  *See, e.g.*, *In re RTI Holding Company, LLC*, No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I. 435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited partnership interests and limited liability company interests for approximately $22.8 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the private sale of limited partnership interests for approximately $8 million).

48.     The Debtors have already expended significant resources and time marketing the assets and businesses of FTX Europe and the Transferred Subsidiaries.  The Debtors have run a competitive and robust sales process prior to agreeing to the Sale Transaction.  Accordingly, the Debtors submit that any further marketing or auction process would not yield a higher or better offer for the Shares and the Transferred Assets.

-24-

49.    Additionally, the Debtors negotiated for a fiduciary-out in the Share and Asset Purchase Agreement which allows the Debtors to pursue any alternative transaction or restructuring strategy that, in the Debtors' business judgment, will maximize the value of the estates.  Therefore, the private sale to the Purchaser Parties is not without opportunity for another party to submit a competing bid while this Motion is pending before the Court.  As such, the Debtors submit that good business reason exists for conducting a private sale under the circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

IV.    **The Dismissal of the Chapter 11 Cases of the FTX Europe Subsidiaries Is Appropriate Under Section 1112(b) of the Bankruptcy Code.**

50.    A dismissal of a chapter 11 case is governed by section 1112(b) of the Bankruptcy Code, which permits a party-in-interest, after notice and hearing, to seek to dismiss a chapter 11 case in the best interests of the creditors and the estate for cause.  *See* 11 U.S.C. § 1112(b).  "Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999)).

A.    <u>Cause Exists to Dismiss the FTX Europe Subsidiaries' Chapter 11 Cases</u>

51.    Whether cause exists to dismiss a chapter 11 case is determined on a case-by-case basis and is a decision within the sound discretion of the bankruptcy court.  *In re American Capital Equipment*, 688 F.3d at 161; *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007); *Sullivan Central Plaza I, Ltd.* v. *BancBoston Real Estate Capital Corp.* (*In re Sullivan Cent. Plaza I, Ltd.*), 935 F.2d 723, 728 (5th Cir. 1991); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)

-25-

("Bankruptcy judges have wide discretion to determine whether cause exists to dismiss . . . a case under section 1112(b)."); *In re Gucci*, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994) ("The Bankruptcy Court has wide discretion to determine if cause exists, and how to ultimately dispose of the case.").

52.    Courts have broad equitable discretion under section 1112(b) to dismiss a chapter 11 case based on the particular facts and circumstances of the case.  *See C-TC 9th Ave. P'ship* v. *Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1311 n.5 (2d Cir. 1997); *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012); *Trident Assocs. Ltd. P'ship* v. *Metro Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995); *In re Smith*, 77 B.R. 496, 499-500 (Bankr. E.D. Pa. 1987).

53.    Section 1112(b)(4) provides a list of certain circumstances that constitute "cause," including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4).  This is a two-part inquiry.  *See In re Orchard Hills Baptist Church Inc.*, 608 B.R. 309, 316 (Bankr. N.D. Ga. 2019); *In re Motel Properties, Inc.*, 314 B.R. 889, 895 (Bankr. S.D. Ga. 2004); *In re Sakon*, 617 B.R. 7, 15 (Bankr Ct. Dec. CRR).

54.    *First*, courts determine whether there is a substantial or continuing loss to or diminution of the estate.  This prong is generally satisfied if the debtor has a negative cash flow after commencement of the chapter 11 case.  *See In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010); *In re Miell*, 419 B.R. 357, 366 (Bankr. E.D.N.Y. 2010) (noting that negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b)).  An inability to pay ongoing expenses combined with the absence of reliable income has equally been found sufficient to satisfy this test.  *See In re Taub*, 427 B.R. 208, 231 ("[a]nother indicator is the

-26-

debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay."); *In re Creech*, 538 B.R. 245, 249 (Bankr. E.D.N.C. 2015) ("An inability to pay ongoing expenses, combined with an absence of reliable income, can establish cause."); *In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020) ("[c]ritically, courts have held that post-petition negative cash flow and an inability to pay current expenses evidence the continuing losses required under section 1112(b)(4)(A).").

55.    *Second,* if this inquiry is satisfied, courts inquire whether there is an absence of reasonable likelihood of rehabilitation.  The rehabilitation standard is a different and more demanding standard than whether or not the debtor can be reorganized.  *See In re Andover Covered Bridge*, LLC, 553 B.R. 162, 175 (Bankr. Ct. Dec. CRR) quoting *In re Brutsche*, 476 B.R. 298, 301 (Bankr. D.N.M. 2012) ("Rehabilitation is a different and . . . much more demanding standard than reorganization.").  It requires a financially viable plan for continuing operations.  *See In re Woodruff*, 580 B.R. 291, 298 (Bankr. M.D. Ga. 2018).  There is no reasonable rehabilitation if the debtor will not generate cash flow meeting its current obligations. *See In re Sillerman*, 605 B.R. 631, 656 (Bankr. S.D. N.Y. 2019).

56.    Additionally, the list in Section 1112(b)(4) is *non-exhaustive*.  Other circumstances may constitute sufficient "cause" as well.  *See* H.R. Rep. No. 595, 95th Cong., 1st. Sess. 405–06 (1978) (noting that the list in section 1112(b)(4) "is not exhaustive"); *see also In re SGL Carbon Corp.*, 200 F.3d at 160 (noting that "the legislative history and case law makes clear that in dismissing a chapter 11 case, the court will be able to consider other factors . . . and to use its equitable powers to reach an appropriate result in individual cases").  In fact, "[m]any of the grounds expressly identified in section 1112(b)(4) may not apply when a chapter 11 debtor seeks

voluntary dismissal of its bankruptcy case." *In re Brewery Park Assocs., L.P.*, 2011 WL 1980289, at *16 (Bankr. E.D. Pa., Apr. 29, 2011).

57.     One factor not explicitly listed in section 1112(b) that courts have found constitutes cause for voluntary dismissal is the inability of a debtor "to effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time." *In re American Capital Equipment*, 688 F.3d at 162 n.10 (3d Cir. 2012) ("the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause [in section 1112(b)] are not exhaustive"); *see also Bronson* v. *Thompson (In re Bronson)*, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should exercise its discretion under § 1112(b) to dismiss or convert."); *In re Ramreddy, Inc.*, 440 B.R. 103, 113 n.26 (Bankr. E.D. Pa. 2009) (citation omitted) (noting that "[c]ourts have held that the inability to propose a feasible reorganization or liquidation plan, by itself, provides 'cause' for dismissal or conversion of a chapter 11 case on request of an interested party").

58.     In addition, in the context of a motion to dismiss a case under section 1112(b), the Third Circuit has repeatedly noted that the Supreme Court "has identified two of the basic purposes of chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119.  If neither of these purposes can be demonstrated, dismissal is proper.  *Id.*

59.     The circumstances affecting the Transferred Subsidiaries constitute "cause" to dismiss their Chapter 11 Cases effective upon the Closing because upon the closing of the Sale Transaction, the shares of the Transferred Subsidiaries will be sold to the Purchaser

4855-4043-7922 v.7

Parties and will no longer be part of the Debtors' estates.  With respect to FTX Crypto Services, the Debtors submit that there is no going concern and that the property of the estates will not be maximized by FTX Crypto Services remaining in chapter 11.  The Debtors expect that FTX Crypto Services will be wound down in accordance with local law, and it is therefore unnecessary for the Debtors to continue to incur administrative costs on account of FTX Crypto Services remaining in chapter 11.  Accordingly, the Debtors submit that sufficient cause exists for the dismissal of the FTX Europe Subsidiaries.

      B.    <u>Dismissal of the FTX Europe Subsidiaries' Chapter 11 Cases Is in the Best Interests of the Creditors and Estates</u>

      60.    Once cause is established, a court must examine whether dismissal or conversion of a case to chapter 7 is in the best interests of the creditors and the estate.  *In re American Capital Equipment*, 688 F.3d at 161.  While the Bankruptcy Code does not define the "best interests of the creditors and the estate," "[t]he cases are uniform in holding that the decision to dismiss or convert is within the bankruptcy court's discretion and is based on the facts.  It is a case-by-case decision."  *In re Calrissian LP*, 2018 WL 3854004, at *2 (Bankr. D. Del. 2018); *see also In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) (noting that "courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interest of the creditors").

      61.    Further, a dismissal of a debtor's chapter 11 case meets the "best interests of creditors" test where a debtor has nothing left to reorganize or the debtor's assets are fixed and liquidated.  *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

62. The Debtors submit that the FTX Europe Subsidiaries have nothing to reorganize. The Transferred Subsidiaries will be sold to the Purchase Parties upon the closing of the Sale Transaction and FTX Crypto Services will be wound down in accordance with local law. In addition, dismissal of the Chapter 11 Cases of the FTX Europe Subsidiaries is warranted here because the alternative—conversion to chapter 7—would not serve the best interests of the FTX Europe Subsidiaries' estates and their creditors. Conversion would not reduce fees, time, and other costs associated with the FTX Europe Subsidiaries' continuation in these Chapter 11 Cases. Managing chapter 7 cases in these jurisdictions would only pose a burden to the estates. Accordingly, the Debtors respectfully submit that voluntary dismissal of the Chapter 11 Cases of the FTX Europe Subsidiaries is in the best interests of the Debtors' estates and their creditors.

## V.    Alternatively, the Court Should Dismiss the FTX Europe Subsidiaries' Chapter 11 Cases Pursuant to Section 305(a) of the Bankruptcy Code.

63. Section 305(a)(1) of the Bankruptcy Code provides that the "court . . . may dismiss a case under [chapter 11], at any time if: (1) the interests of the creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

64. Courts look to the following *non-exhaustive* list of factors to gauge the best interests of the creditors and the debtor, including, among other things: (a) economy and efficiency of administration; (b) whether federal proceedings are necessary to reach a just and equitable solution; (c) whether there is an alternative means of achieving an equitable distribution of assets; and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case. *In re Crown Village Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009).

-30-

65.    Here, for the reasons stated above, dismissal under section 305(a) is in the best interests of creditors and the Debtors' estates, and the Court should dismiss the cases pursuant to section 305(a) of the Bankruptcy Code.

**VI.    All Orders Should Remain in Effect for the Time Period Each FTX Europe Subsidiary Was Part of the Chapter 11 Cases.**

66.    The Debtors request that all stipulations, settlements, rulings, orders and judgments of the Court entered in these jointly administered Chapter 11 Cases remain in full force and effect and survive the dismissal of the Chapter 11 Cases of the FTX Europe Subsidiaries solely with respect to the time period where each FTX Europe Subsidiary was part of the Chapter 11 Cases.  Although section 349 of the Bankruptcy Code typically contemplates that dismissal will reinstate the prepetition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, the Court may "for cause, orde[r] otherwise." 11 U.S.C. § 349(b).  "[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'"  *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017).

67.    The Debtors submit that cause exists to allow all stipulations, settlements, rulings, orders and judgments entered by the Court during the Chapter 11 Cases to be given continued effect for the period where the FTX Europe Subsidiaries were part of the Chapter 11 Cases, notwithstanding the requested dismissal.  This relief is necessary to protect the Debtors and preserve the authority the Debtors had to act pursuant to the various orders entered by the Court, including, but not limited to, any orders authorizing the FTX Europe Subsidiaries to pay (a) prepetition wages, salaries and other compensation and benefits, and reimbursable expenses, to employees and (b) prepetition trade claims of foreign (non-U.S.) vendors.  Unless the Court orders otherwise, section 349 of the Bankruptcy Code could unravel the effect and authorizations

-31-

of the orders entered in the Chapter 11 Cases.  By allowing the orders of this Court to remain in

full force and effect and survive dismissal for the period of time when the FTX Europe

Subsidiaries were part of the Chapter 11 Cases, the Court will preserve the Debtors' authority to

act pursuant to such orders notwithstanding dismissal of the Chapter 11 Cases of the FTX

Europe Subsidiaries.

68.     The Court has granted relief similar to the relief requested herein with

respect to orders of the Court remaining in full force and effect and surviving dismissal of a

debtor's chapter 11 case.  *See, e.g., In re VG Liquidation, Inc., et al.*, Case No. 18-11120 (JTD)

(Bankr. D. Del. Aug. 19, 2019) [D.I. 1183, 1184] (authorizing all prior orders of the court to

"remain in full force and effect, . . . be unaffected by the dismissal of the Chapter 11 Case, and

[be] specifically preserved for purposes of finality of judgment and *res judicata*"); *In re*

*BioAmber Inc.*, Case No. 18-11078 (LSS) (Bankr. D. Del. June 20, 2018) [D.I. 34] (same); *In re*

*St Alexius Properties, LLC*, Case No. 18-12527 (CSS) (Bankr. D. Del. Feb. 4, 2019) [D.I. 5]

(ordering that, notwithstanding section 349, all orders of the Court entered "on or before the

Dismissal Date shall remain in full force and effect and shall survive the dismissal of the

bankruptcy cases").

### Bankruptcy Rules 6004(a) and 6004(h)

69.     The Debtors request that the Court (a) find that notice of this Motion is

adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay

requirements under Bankruptcy Rule 6004(h).  In light of the importance of an efficient timeline

for maximizing the value of the Shares and Transferred Assets, the proposed Sale Transaction

should be consummated as soon as practicable to allow the Debtors to maximize value for their

estates and stakeholders.  Accordingly, the Debtors request that the Order be effective

immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

## **Notice**

70.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Shares and Transferred Assets; (d) any party that has expressed an interest in purchasing the Shares or Transferred Assets during the last six months; (e) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; (f) all known creditors of the FTX Europe Subsidiaries; and (g) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper.

-33-

Dated: February 28, 2024
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*