# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>Jointly Administered<br><br>**Objection Deadline: March 13, 2024 at 4:00 p.m.**<br>**Hearing Date: March 20, 2024 at 10:00 a.m.** |

## EQUINIX INC.'S MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

Equinix, Inc. ("Equinix") hereby moves (the "Motion") for an order, substantially in the form attached hereto as **Exhibit A**, (a) granting Equinix an allowed administrative claim in the amount of $346,431.85 and (b) compelling the Debtors to pay such amount within seven days of an order approving this Motion. In support hereof, Equinix states as follows:

### PRELIMINARY STATEMENT[2]

1. The Debtors entered into orders with Equinix pursuant to the MSA, whereby Equinix would provide power, interconnection, and space for the Debtors at Equinix's data centers. Equinix performed its end of the bargain, but the Debtors have failed to pay Equinix postpetition. Between the Petition Date and the time of rejection, the Debtors incurred $346,431.85, consisting of $284,300.52 for Equinix's U.S. data centers and 8,634,710 Japanese yen (equivalent to

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used in the Preliminary Statement but not otherwise defined herein shall have the same meaning ascribed to them later in the Motion.

$62,131.33 US dollars) for a data center in Japan. That amount should be paid as an administrative expense within seven days.

## JURISDICTION AND VENUE

2. The Court has jurisdiction to consider this Motion pursuant to 28 U. S. C. § 1334. The subject matter of this Motion pertains to the administration of the estate and use of property by the Debtors and, therefore, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code.

4. Equinix is the world's largest data center and colocation provider. Equinix connects the world's leading businesses to their customers, employees, and partners inside the world's most connected data centers, spread across twenty-four countries on five continents.

5. By way of general background regarding data centers: A data center is any facility that houses centralized computer and telecommunications systems. A data center can be as small as a server closet, or as large as a millions-of-square-feet standalone building. When an organization requires a data center, it may not necessarily build and operate that data center on its own. Instead, an organization can turn to vendors to provide those services, like a data center. As a data center and colocation provider, Equinix supplies cooling, power, connection, and physical security to many customers in a particular data center, while Equinix's various customers provide their own servers and other computing hardware installed in that facility.

6. Typically, Equinix's relationship with its customer, like with the Debtors, is governed by a master services agreement, a master country agreement, global terms and conditions, or similar

governing agreement (a "MSA"),[3] under which Equinix and the customer enter into individual orders. Among other details, the orders typically specify any services, power, interconnection, and space to be provided by Equinix, the specific Equinix data centers involved, the type of equipment the customer is entitled to install, the specific Equinix product description, and an allocation of the amount of electricity and cooling to which the customer is entitled (collectively, "Data Center Access and Related Services").

7. Below is an overview of all the Equinix data centers for which the Debtors contracted under the applicable orders issued under the MSA:

(a) Chicago IBX (CH3) located at 1905 Lunt Avenue, Elk Grove Village, IL, 60007;

(b) Ashburn IBX (DC2) located at 21715 Filigree Court, Ashburn, VA, 20147;

(c) Washington DC IBX (DC21) located at 22175 Beaumeade Circle, Ashburn, VA , 20147;

(d) Miami IBX (MI1) located at 50 NE 9th Street, Miami, FL, 33132;

(e) Seattle IBX (SE4) located at 6906 South 204th Street, Kent, WA, 98032; and

(f) Tokyo IBX (TY9) located at 1-12-3, Suidou, Bunkyo-ku, Tokyo, JP, 112-0005.

8. On June 26, 2023, the Court entered *Order Authorizing the Debtors to (I) Reject Certain Executory Contracts Effective as of the Rejection Date and (II) Abandon Property Associated Therewith* [D.I. 1716] (the "Rejection Order"). Pursuant to the Rejection Order, the MSA was rejected as of June 14, 2023 (the "Rejection Date").

---

[3] The MSA is not attached because is contains commercially sensitive information. Upon information and belief, the Debtors have a copy of the MSA.

3

**ARGUMENT**

**I.     Equinix Is Entitled to An Administrative Expense Claim Against the Debtors**

9.      Section 503(b)(1) of the Bankruptcy Code provides that, "there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U. S. C. § 503(b)(1)(A). Administrative claims are entitled to priority payment under section 507(a)(2) of the Bankruptcy Code and are required to be paid in full under a plan pursuant to section 1129(a)(9). See id. §§ 507(a)(2), 1129(a)(9).

10.     To establish an administrative claim, the claimant must typically show that (1) there was "a post-petition transaction between the creditor and the debtor," and (2) "the estate . . . receive[d] a benefit from the transaction." In re Garden Ridge Corp., 321 B. R. 669, 676 (Bankr. D. Del. 2005) (quoting In re Waste Systems Int'l, Inc., 280 B. R. 824, 826 (Bankr. D. Del. 2002)); see also In re O'Brien Env't Energy, Inc., 181 F. 3d 527, 532–33 (3d Cir. 1999) ("For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business.").

11.     Services that are rendered after the commencement of the bankruptcy case and that are needed for the purpose of preserving the estate may constitute a postpetition transaction within the meaning of section 503 of the Bankruptcy Code. In re Energy Future Holdings Corp., 990 F. 3d 728, 741 (3d Cir. 2021); see also Former Employees of Builders Square Retail Stores v. Hechinger Inv. Co. (In re Hechinger Inv. Co.), 298 F. 3d 219, 226 (3d Cir. 2002) (noting that under section 503(b)(1)(A), services rendered after the commencement of the case may be allowed as administrative expenses).

12. In this case, Equinix performed under the MSA postpetition by providing Data Center Access and Related Services. A summary of the unpaid postpetition invoices[4] issued under the MSA follows:

| Invoice No. | Invoice Date | Due Date | Amount Owed |
|---|---|---|---|
| 100210428810 | 11/1/2022 | 12/1/2022 | $28,131.13 |
| 100210437361 | 12/1/2022 | 12/31/2022 | $28,001.13 |
| 100210443631 | 1/1/2023 | 1/31/2023 | $28,001.13 |
| 100210452361 | 2/1/2023 | 3/3/2023 | $28,001.13 |
| 100210461079 | 3/1/2023 | 3/31/2023 | $28,001.13 |
| 100210468538 | 4/1/2023 | 5/1/2023 | $28,192.38 |
| 100210474793 | 5/1/2023 | 5/31/2023 | $28,412.13 |
| 100210483378 | 6/1/2023 | 7/1/2023 | $28,805.86 |
| 100210490855 | 7/1/2023 | 7/31/2023 | $28,805.86 |
| 100210498351 | 8/1/2023 | 8/31/2023 | $11,906.63 |
| 100210505485 | 9/1/2023 | 10/1/2023 | $8,347.80 |
| 100210513363 | 10/1/2023 | 10/31/2023 | $8,347.80 |
| 100210519907 | 11/1/2023 | 12/1/2023 | $1,346.41 |
| **TOTAL** | | | **$284,300.52** |

| Invoice No. | Invoice Date | Due Date | Amount Owed (JPY) |
|---|---|---|---|
| 120210217132 | 11/1/2022 | 12/1/2022 | 795,740 |
| 120210223327 | 12/1/2022 | 12/31/2022 | 795,740 |
| 120210227729 | 1/1/2023 | 1/31/2023 | 795,740 |
| 120210232111 | 2/1/2023 | 3/3/2023 | 795,740 |
| 120210234224 | 3/1/2023 | 3/31/2023 | 795,740 |
| 120210241137 | 4/1/2023 | 5/1/2023 | 795,740 |
| 120210245722 | 5/1/2023 | 5/31/2023 | 795,740 |
| 120210250362 | 6/1/2023 | 7/1/2023 | 795,740 |
| 120210254964 | 7/1/2023 | 7/31/2023 | 795,740 |
| 120210260376 | 8/1/2023 | 8/31/2023 | 795,740 |
| 120210262671 | 9/1/2023 | 10/1/2023 | 677,310 |
| **TOTAL** | | | **8,634,710**[5] |

---

[4] The invoices contain commercially sensitive information, so they are not included with this Motion. Subject to ensuring that all appropriate protections will be maintained, copies of the invoices will be made available to a proper party with a legitimate purpose.

[5] According to the currency exchange website xe.com, the USD to JPY exchange rate on the Petition Date was

13.     Courts in this district have consistently held that contract parties are eligible for administrative expense priority when the debtor continues to enjoy the benefits of the contract while its assumption or rejection is pending. In re ID Liquidation One, LLC, 503 B. R. 392, 399 (Bankr. D. Del. 2013). As this Court has previously determined, during the period of pending assumption or rejection, the debtor is required to compensate for the reasonable value of the services received. Id. Under the reasonable value of services standard, there is a presumption that the contract terms and rate represent the reasonable value of the services or goods provided under the contract. Id. In this case, the MSA and the orders and invoices issued pursuant to the MSA for Data Center Access and Related Services, constitute the contractual relationship between Equinix and the Debtors until the Rejection Date.

14.     This Court has previously held that—in the absence of evidence to the contrary—goods or services exchanged at the contract rate are presumed to be exchanged at fair market value, such that the contract rate is presumed to be the "value" for purposes of section 503(b). In re Smurfit-Stone Container Corp., No. 09-10235 (BLS), 2010 Bankr. LEXIS 661, 15-16 (Bankr. D. Del. March 8, 2010) ("There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate. This presumption is viable unless the debtor introduces convincing evidence to the contrary." (citations and internal quotation marks omitted)); see also In re Goody's Family Clothing, Inc., 392 B.R. 604, 614 (Bankr. D. Del. 2008) ("[F]lair market value. . . is presumably the lease rate unless there is evidence to the contrary.").

15.     Here, the amount charged the Debtors for the postpetition period under applicable contract documents was $346,431.85. Pursuant to Smurfit-Stone and Goody's, that is the

---

1 USD to 62,131.3272928 JPY. The amount of 8,634,710 JPY equals $62,131.33.

presumptive amount of value provided to the Debtors' estates for Data Center Access and Related Services. Accordingly, Equinix should be granted an administrative claim in the amount of $346,431.85.

## II. The Court Should Compel Payment of the Administrative Expense Claim Within Seven Days

16. The Debtors should be required to pay the Equinix administrative expense claim within seven days of granting the Motion. In general, courts have discretion to determine when an administrative expense claim will be paid. In re Garden Ridge Corp., 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." Id.

> In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. . . . Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration. To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.

In re Global Home Products, LLC, 06–10340 KG, 2006 WL 3791955, *3 (Bankr. D. Del. Dec. 21, 2006) (internal quotations marks and citations omitted) (citing In re HQ Global Holdings, Inc., 282 B. R. 169, 172 (Bankr. D. Del. 2002)).

17. Here, it has been over a year since the Petition Date and Equinix has not been paid these undisputed postpetition amounts. A plan is on file, but there is no schedule to confirmation. Equinix will suffer hardship if the Debtors are allowed to postpone payment of the administrative claim until plan confirmation. Indeed, it would be unfair for the Debtors to enjoy the benefit of Equinix's data centers, while forcing Equinix to wait years for payment.

18.     Courts are sometimes hesitant to order immediate payment of administrative expenses in administratively insolvent bankruptcy cases.  For example, in ATP Oil, the court found that administrative insolvency favored delaying payment of administrative claims because the debtor was administratively insolvent and had limited cash resources, and granting a request for immediate payment "only encourages a race to the courthouse."  In re ATP Oil & Gas Corp., No. 12-36187, 2014 WL 1047818, at *10 (Bankr. S. D. Tex. Mar. 18, 2014).  Here, there is no indication that the Debtors are administratively insolvent.  Indeed, according to Debtors' counsel at a recent hearing, the Debtors may be able to pay unsecured creditors in full.  Accordingly, creditors will not be prejudiced by an immediate payment of Equinix's administrative expense claim.

19.     The totality of the circumstances supports compelling the Debtors to pay Equinix's administrative claim immediately, as further delay in payment will only prejudice Equinix. Accordingly, Equinix requests that the administrative expense claim be paid within seven days after the entry of this Court's order granting the Motion.

## **RESERVATION OF RIGHTS**

20.     The filing of this Motion shall not be construed as a waiver or release of any of Equinix's claims, rights, or remedies.  Equinix reserves the right to supplement or amend this Motion in any manner and for any purpose including without limitation to assert additional administrative claims for any additional period.

## **CONCLUSION**

21. Equinix respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) allowing Equinix an administrative claim in the amount of $346,431.85; (b) compelling the Debtors to pay such amounts within seven days of entry of an order approving this Motion; and (c) granting such other and further relief as the Court may deem just and appropriate.

Dated: March 5, 2024

**SAUL EWING LLP**

*/s/ Lucian B. Murley*
Lucian B. Murley (DE Bar No. 4892)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6898
luke.murley@saul.com

*Attorneys for Equinix, Inc.*