# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Objection Deadline: March 20, 2024 at 4:00 p.m. ET**<br>**Hearing Date: April 18, 2024 at 1:00 p.m. ET** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO THE GLOBAL SETTLEMENT AGREEMENT WITH BLOCKFI, (B) APPROVING THE GLOBAL SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to enter into that certain Global Settlement Agreement, attached as Exhibit 1 to the Order (the "Global Settlement Agreement"),[2] between and among (i) the Debtors and (ii) the wind-down estates of BlockFi Inc. and its affiliated debtors and debtors-in-possession (collectively, "BlockFi") in the jointly administered chapter 11 cases proceeding under the caption *In re BlockFi Inc., et al.* Case No. 22-19361 (MBK) (the "BlockFi Bankruptcy Proceeding"). In support of the Motion, the Debtors submit the *Declaration of John J. Ray III in*

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Global Settlement Agreement.

*Support of Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Enter into the Global Settlement Agreement with BlockFi, (B) Approving the Global Settlement Agreement, and (C) Granting Related Relief* filed contemporaneously herewith (the "Ray Declaration") and respectfully state as follows:

**Preliminary Statement**

1. The Global Settlement Agreement is a significant and valuable step in these chapter 11 cases, resolving a multitude of complex disputes with one of the Debtors' largest creditors without the cost and delay of litigation, and facilitating the marshalling of substantial assets by the Debtors for distribution to creditors under the Debtors' chapter 11 plan that, absent the settlement, would be trapped in protracted, multi-jurisdictional litigation.

2. BlockFi has asserted over $1 billion of claims against the Debtors, comprising approximately $689 million in principal amount of loan claims asserted as secured (the "Loan Claims"), approximately $469 million of customer claims, and various unliquidated litigation claims. While the Debtors do not dispute the Loan Claims' outstanding principal is owed, they vigorously dispute that the Loan Claims are validly secured—the central dispute between the parties.[3] Specifically, the Debtors assert that the assets purportedly pledged as collateral by the Debtors to BlockFi, the vast majority of which was pledged on the eve of the Debtors' bankruptcy filing amidst the collapse of the FTX Group, along with the purported guarantee obtained from Emergent Fidelity Technologies Ltd., are subject to avoidance as preferences and/or fraudulent transfers.

3. Among other things, the Global Settlement Agreement resolves that central dispute with respect to the secured status of the Loan Claims without the need for the

---

[3] The Debtors also dispute the amount of BlockFi's asserted customer claim and the validity of any litigation claims, all of which are resolved through the Global Settlement Agreement.

Debtors to expend significant time and incur expenses on litigation.  Specifically, the settlement grants BlockFi a partially secured claim in the amount of $250 million, with the remainder of the Loan Claims allowed as general unsecured claims.  While the Debtors believe that their avoidance claims with respect to the purported security pledged to BlockFi are strong, as has been publicly announced, the Debtors expect non-governmental general unsecured claims against their estates to be valuable, resulting in lower cost to the Debtors of allowing a portion of the Loan Claims as secured claims in order to eliminate litigation risk and unlock significant incremental liquidity.  Nevertheless, 65% of the Loan Claims will be treated as unsecured and thus BlockFi will bear the majority of the risk with respect to unsecured claim recoveries.

4. In exchange for providing BlockFi with a partially secured Loan Claim, the Debtors obtained BlockFi's agreement to cooperate to bring into the Debtors' estates all of the collateral purportedly pledged by the Debtors to BlockFi relating to the loans, including over $600 million from the sale of Robinhood Markets, Inc. Class A common stock (the "HOOD Shares") seized and held by the United States Department of Justice (the "Department of Justice"), and certain Solana coins held in a joint custody account at Coinbase worth approximately $100 million (the "Coinbase SOL").  None of these assets would otherwise be available for distribution to creditors prior to final resolution of the BlockFi litigation.  Notably, resolution of the disputes between the parties would require protracted and costly litigation in at least two different federal courts:  this Court and the U.S. District Court for the Southern District of New York overseeing the government forfeiture proceedings (the "SDNY Criminal Forfeiture Proceedings").  In addition, the outcome of litigation would be uncertain, particularly given certain novel and complex issues in dispute between two chapter 11 estates.  The Global Settlement Agreement also reconciles BlockFi's customer claim in an amount consistent with the

Debtors' books and records of $185 million, and releases all of BlockFi's other claims against the Debtors.

5. Therefore, entry into the Global Settlement Agreement by the Debtors provides material value to the Debtors' estates while avoiding costly, time-consuming and uncertain litigation, is in the best interests of the Debtors' estates and all stakeholders, and is well within the range of reasonableness. The Committee supports the proposed settlement as set forth in the Global Settlement Agreement. Accordingly, the Motion should be granted and the Global Settlement Agreement approved.

**Background**

6. On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[4] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases" or the "FTX Bankruptcy Proceeding") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

7. On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order"). The Non-Customer Bar Date Order

---

[4]    November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

established, among other things, June 30, 2023 as the deadline to file proofs of claim for Non-Customer Claims (*i.e.*, any claim other than a Customer Claim (as defined below)) and proofs of interest and September 29, 2023 as the deadline by which government units must file proofs of claim.

8. On June 28, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order"), setting the deadline for customers to file proofs of claim on account of Customer Claims as September 29, 2023.

9. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Jurisdiction

10. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in

connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

11.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing the Debtors to enter into the Global Settlement Agreement, (b) approving the Global Settlement Agreement, and (c) granting certain related relief.

## Facts Specific to the Relief Requested

12.     Prior to the Petition Date, the Debtors had numerous business relationships with BlockFi.  Most prominently was a three-year lending relationship between certain BlockFi entities as lenders and Alameda as borrower; at the peak of that lending relationship, Alameda had an outstanding principal balance of more than $1.7 billion, and, as of the Petition Date, had an outstanding principal balance of approximately $689 million.  Certain BlockFi entities also held certain cryptocurrency assets (the "<u>Exchange Assets</u>") in customer accounts on cryptocurrency exchanges operated by the Debtors (the "<u>FTX Exchanges</u>").  The Debtors also agreed to provide rescue financing to BlockFi in June 2022 amidst BlockFi's liquidity crisis during the 2022 "Crypto Winter," lending $275 million to BlockFi from July to October 2022 (the "<u>WRS Loan Facility</u>").

13.     On November 28, 2022, BlockFi filed its respective petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "<u>New Jersey Bankruptcy Court</u>") initiating the BlockFi Bankruptcy Proceeding.

14. On March 31, 2023, the Debtors timely filed claims against BlockFi in the BlockFi Bankruptcy Proceeding (collectively, the "FTX Proofs of Claim" and the claims asserted therein, the "FTX Claims"). In particular, through the FTX Proofs of Claim, the Debtors asserted claims, among others, to avoid and/or recover under sections 547 and/or 548 of the Bankruptcy Code, as applicable, (i) collateral purportedly pledged by or on behalf of Alameda to BlockFi, including substantial assets purportedly pledged on the eve of the Petition Date amidst the collapse of the FTX Group, (ii) approximately $125 million of loan repayments by Alameda to BlockFi in the 90-days prior to the Petition Date, and (iii) withdrawals made by BlockFi from the FTX Exchanges in the 90-days prior to the Petition Date. The Debtors also asserted a $275 million unsecured claim against BlockFi relating to amounts owed under the WRS Loan Facility.

15. On June 29, 2023, BlockFi filed claims against the Debtors in the FTX Bankruptcy Proceeding (collectively, the "BlockFi Proofs of Claim," and the claims asserted therein, the "BlockFi Claims"). The BlockFi Proofs of Claim assert claims against each FTX Debtor for (i) Exchange Assets that remain on the FTX Exchanges, (ii) outstanding amounts owed by Alameda to BlockFi under the lending arrangement, which BlockFi asserts are secured by certain cryptocurrency purportedly pledged by or on behalf of Alameda, (iii) $125 million of damages arising from WRS's purported breach of the WRS Loan Facility, (iv) unspecified damages arising from the Debtors' alleged fraudulent inducement of BlockFi Inc. to enter into the WRS Loan Facility and (v) certain other claims for damages arising out or related to unlawful acts by the Debtors' former pre-petition management.

16. On September 25, 2023, the parties entered into an initial settlement agreement, which was approved by the New Jersey Bankruptcy Court on October 3, 2023 (BlockFi Bankruptcy Proceeding, D.I. 1644) and by this Court on October 19, 2023 (FTX

Bankruptcy Proceeding, D.I. 3314), pursuant to which, among other things, (i) the Debtors received a $275 million allowed subordinated general unsecured claim in the BlockFi Bankruptcy Proceeding on account of amounts owed under the WRS Loan Facility (the "WRS Allowed Claim"), (ii) the Debtors agreed to withdraw all remaining claims in the BlockFi Bankruptcy Proceeding for purposes of obtaining any affirmative distribution from BlockFi and assert such claims exclusively as arguments, defenses, counterclaims, setoffs or otherwise against BlockFi's affirmative claims in the FTX Bankruptcy Proceeding, and (iii) the parties agreed to participate in non-binding mediation with respect to all remaining claims.

17. On February 1, 2024, the parties (along with the Committee) participated in a one-day non-binding mediation session conducted by the Honorable Craig T. Goldblatt during which the parties negotiated and agreed to the terms of a settlement of all claims and disputes between them that is documented in the Global Settlement Agreement. Ray Decl. at ¶ 4.

18. The terms of the Global Settlement Agreement generally provide, among other things, that on effectiveness of the Global Settlement Agreement:[5]

- BlockFi will be granted the following allowed claims against the applicable Debtors (together, the "BlockFi Allowed Claims"): (i) allowed secured claims held by BlockFi Lending and BlockFi International against Alameda in the aggregate amount of $250,000,000, of which $43,820,000 shall be allocated to BlockFi Lending and $206,180,000 shall be allocated to BlockFi International, in each case entitled to post-petition interest to be calculated at the federal judgment interest rate as set forth in 28 U.S.C. § 1961 (the "Federal Judgment Rate") through the date of effectiveness of the chapter 11 plan of the Debtors (the "FTX Plan") (the "Allowed Secured Loan Claim"); (ii) allowed general unsecured claims held by BlockFi Lending and BlockFi International against Alameda in the amount of $439,319,866.07, of which $77,003,986.12 shall be allocated to BlockFi Lending and $362,315,879.95 shall be allocated to BlockFi International, in each case entitled to post-petition interest if and to the extent provided to other similarly situated general unsecured claims in any FTX

---

[5] Any summary of the Global Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Global Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Global Settlement Agreement, the actual terms and conditions of the Global Settlement Agreement shall control.

Plan at the Federal Judgment Rate or such higher rate (the "Allowed Unsecured Loan Claim"); and (iii) an allowed customer claim held by BlockFi International against FTX Trading in the amount of $185,196,611.28, entitled to post-petition interest if and to the extent provided to other similarly situated customer claims in any FTX Plan at the Federal Judgment Rate or such higher rate (the "Allowed Customer Claim");

- Other than the BlockFi Allowed Claims, and except as required to implement the Assignment of Rights (as defined in the Global Settlement Agreement), BlockFi waives and releases for all purposes any and all claims (as defined in 11 U.S.C. § 101(5)) against the Debtors or with respect to any property in which the Debtors have held or may hold any conflicting interest, including the BlockFi Claims and all claims, arguments, defenses, rights, and otherwise with respect to any property purportedly pledged as collateral by or on behalf of the Debtors to BlockFi (and the proceeds thereof), including (i) the HOOD Shares, (ii) the ED&F Assets, (iii) the Coinbase SOL, and (iv) certain Serum tokens (the "SRM");

- Other than the WRS Allowed Claim, the Debtors waive and release for all purposes all claims against BlockFi, including the FTX Claims;

- BlockFi will be deemed to have assigned to the Debtors all of its rights (if any) with respect to the proceeds of the HOOD Shares held by the Department of Justice, including rights arising from or relating to any purported pledge from any of the Debtors or Emergent, and any guarantee provided by Emergent, including in connection with any forfeiture, restitution or other legal proceeding, process, or distribution with respect to such proceeds.  BlockFi shall, upon reasonable request of the Debtors, execute documentation confirming the assignment of such rights to the Debtors;

- BlockFi and the Debtors shall use commercially reasonable efforts to promptly obtain the release and return to the Debtors of (i) the proceeds of the HOOD Shares, (ii) the Coinbase SOL, and (iii) the SRM, including by executing any necessary documentation to effectuate such release and return to the Debtors;

- The Debtors may, in their sole discretion, classify the Allowed Secured Loan Claim, the Allowed Unsecured Loan Claim and the Allowed Customer Claim separately from one or more of the foregoing in an FTX Plan so long as the treatment provided for such claims is consistent with the Global Settlement Agreement and the Allowed Secured Claim will be paid promptly in cash following the date of effectiveness of such FTX Plan.  Other than with respect to terms expressly provided in the Global Settlement Agreement, the BlockFi Allowed Claims shall receive no worse treatment, including with respect to timing and amount of distributions (including with respect to post-petition interest), as other similarly situated allowed claims in the FTX Plan; and

- BlockFi will support and vote in favor of any FTX Plan that is consistent with the Global Settlement Agreement and shall not (i) object or, directly or indirectly, seek, solicit, support, encourage, or participate in any discussions or agreement to object, to

any FTX Plan so long as such plan is consistent with the terms and conditions of the Global Settlement Agreement; or (ii) appear or make any filings in the Debtors' Chapter 11 Cases in any way adverse to any position taken by the Debtors or inconsistent with the Global Settlement Agreement other than as necessary to (x) exercise or defend BlockFi's rights under the Global Settlement Agreement, or (y) oppose any matter or proceeding that would substantially impair BlockFi's economic recovery pursuant to the Global Settlement Agreement.

## Basis for Relief

**I.    The Global Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests**

19. Given the complexity of the disputes between the parties and the associated cost of resolving each and every one of those disputes, the Debtors have determined that, in its totality, entry into the Global Settlement Agreement is in the best interests of the Debtors and their estates. Ray Decl. at ¶¶ 6, 9.

20. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

21. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and

reasonable doubts." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968)).

22. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

23. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the Martin factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc.*,

222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); see *In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

24.  The Global Settlement Agreement provides material value to the Debtors' estates, including in the form of (i) the resolution of disputes with respect to the secured status of the Loan Claims by granting BlockFi a partially secured claim in the amount of $250 million and an unsecured claim for the remaining approximately 65% of outstanding principal, and (ii) the release of all of BlockFi's claims related to all purported collateral. Ray Decl. at ¶ 5. Pursuant to the settlement, BlockFi has agreed to assign to the Debtors all of its rights (if any) with respect to the proceeds of the HOOD Shares held by the Department of Justice and otherwise cooperate to facilitate the release to the Debtors of proceeds from the sale of the HOOD Shares and all other collateral, and to support and vote in favor of any FTX Plan provided that the treatment of the BlockFi Allowed Claims is consistent with the Global Settlement Agreement. *Id.* Settling with BlockFi now avoids costly and time-consuming litigation in connection with the merits of the Debtors' avoidance actions against BlockFi, and eliminating the risks of any unfavorable outcome. Ray Decl. at ¶ 7. The Global Settlement Agreement also ensures the Debtors' largest creditor will support their plan of reorganization.

25.  Accordingly, and as further described below, the compromises set forth in the Global Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

26.  **The Probability of Success in Litigation**. The Debtors maintain that the FTX Claims are meritorious and are prepared to litigate the merits of those claims in this Court,

as necessary. However, BlockFi may be able to assert numerous defenses to the merits of the FTX Claims, including defenses that are specific to the facts surrounding the relevant transfers. As a result, the outcome of litigation involving numerous claims and defenses is uncertain. Ray Decl. at ¶ 7.

27. The Global Settlement Agreement, in contrast, brings finality on favorable terms. Notably, if the Debtors avoided the purported pledges of collateral securing the Loan Claims, the Loan Claims would still be general unsecured claims entitled to pro rata treatment under the Debtors' chapter 11 plan. As described above, the Debtors expect recoveries for general unsecured claims to be significant. Given that expectation, the settlement negotiation between the Debtors and BlockFi necessarily centered on the allocation of risk of unsecured claim recoveries. By providing BlockFi with a partially secured claim in the amount of $250 million, and an unsecured claim for the remaining approximately 65% of the Loan Claims, the settlement provides a fair resolution for both estates.

28. There is also uncertainty with respect to the Debtors' ability to obtain the release of assets being held by the Department of Justice and the timing of such release in the absence of the settlement. Even if the Debtors successfully avoided BlockFi's security interests in the HOOD Shares, BlockFi may continue to assert an interest in those assets in connection with any forfeiture proceeding in the SDNY Criminal Forfeiture Proceedings. Avoiding an uncertain and protracted fight in the SDNY Criminal Forfeiture Proceedings with BlockFi was an important consideration for the Debtors in entering into the settlement to facilitate the release of those assets promptly to the Debtors for distribution to their creditors. Ray Decl. at ¶ 8.

29. **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay**. Litigation of the FTX Claims and the BlockFi Claims would be complex, expensive and involve a significant amount of time across multiple federal courts. The

law governing "dueling debtor" situations is under-developed and uncertain and the litigation costs of pursuing complex litigation would be even greater than in a typical bankruptcy litigation. Not only would the Debtors incur costs of attorneys, financial consultants and expert witnesses, but the Debtors also would bear the cost of attorneys and advisors for the Committee who would be closely involved in the litigation.

30. Moreover, even if they were successful in litigating their avoidance claims against BlockFi in this Court, the Debtors likely would be required to pursue additional litigation in the SDNY Criminal Forfeiture Proceedings in order to enforce any judgment it obtained from this Court and to recover the proceeds from the sale of the HOOD Shares. The Global Settlement Agreement eliminates these costs and will facilitate with BlockFi's support the prompt release to the Debtors of all of the purportedly pledged collateral and ensure that liquidity is available to the Debtors' estates. Ray Decl. at ¶ 5.

31. **The Paramount Interests of Creditors**. The Global Settlement Agreement is in the best interests of the Debtors' estates and their creditors because, as discussed above, approval of the Global Settlement Agreement resolves complex disputes between the parties that would have involved costly and time-consuming litigation with uncertain outcome by providing for the resolution of all of BlockFi's claims against the Debtors and cooperation with respect to the return of all purportedly pledged collateral back to the Debtors. In particular, because BlockFi is receiving only a partially secured claim under the settlement, BlockFi is appropriately protected but will bear risk with respect to creditor recoveries in the Debtors' cases. As such, in the Debtors' business judgment, the value of entering into the Global Settlement Agreement far exceeds the net benefits that the Debtors and their estates likely would obtain from continuing on the alternative litigation path. Ray Decl. at ¶ 9. In addition, the

Global Settlement Agreement facilitates the release of material disputed assets to the Debtors that will be unrestricted and available for distribution to their creditors. *Id.* at ¶ 8.

32. Based on the foregoing, the Debtors submit that the Global Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders. As a result, the Debtors respectfully submit that the Global Settlement Agreement satisfies the *Martin* factors and request that the Court approve the Global Settlement Agreement and authorize the Debtors to enter into it.

### Waiver of Bankruptcy Rule 6004(h)

33. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

### Reservation of Rights

34. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

**Notice**

35.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel to BlockFi; and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: March 6, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      gluecksteinb@sullcrom.com
      bellerb@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*