## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 8048** |
| | **Hearing Date: March 20, 2024, at 10:00 a.m.**<br>**Objection Deadline: March 13, 2024, at 4:00 p.m.** |

**JOINDER AND SEPARATE RESPONSE OF SUNIL KAVURI, AHMED ABD EL-RAZEK, NOIA CAPITAL SÀRL AND PAT RABBITTE TO (I) APPLICATION OF THE UNITED STATES TRUSTEE FOR ORDER APPROVING APPOINTMENT OF ROBERT J. CLEARY, ESQ. AS EXAMINER; (II) MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING THE SCOPE, COST, DEGREE AND DURATION OF THE INITIAL PHASE OF THE EXAMINATION AND (B) GRANTING RELATED RELIEF; AND (III) MOTION TO FILE CERTAIN INFORMATION REGARDING POTENTIAL PARTIES IN INTEREST UNDER SEAL**

Sunil Kavuri, Ahmed Abd-El-Razek, Noia Capital SÀRL and Pat Rabitte (collectively, the "**Respondents**"), through their counsel, hereby join in and respond to (the "**Response**") the *(I) Application of the United States Trustee for Order Approving Appointment of Robert J. Cleary, Esq. as Examiner; (II) Motion for Entry of an Order (A) Establishing the Scope, Cost, Degree, and Duration of the Initial Phase of the Examination and (B) Granting Related Relief; and (III) Motion*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd. is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

*to File Certain Information Regarding Potential Parties in Interest Under Seal* [Doc. No. 8048]

(the "**Examiner Motion**")[2] and in support thereof, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      In the Examiner Motion, the Office of the United States Trustee ("**U.S. Trustee**") requests that this Court appoint an examiner to investigate and report on the following three preliminary issues (collectively, the "**Initial Phase**"): (1) any conflicts of interest involving Sullivan & Cromwell[3]; (2) review and assess the prior investigations of fraud perpetrated by the Debtors; and (3) review and assess the prior investigations with respect to the Debtors' use of its native token, FTT.   Each of these investigations is necessary and the Respondents join in U.S. Trustee's request that the Initial Phase of the Examination include each of these matters. *See In re FTX Trading Ltd.*, 91 F.4th 148, 150, 157 (3d Cir. 2024) ("[r]equiring a public report furthers Congress's intent to protect the public's interest as well as those creditors and debtors directly impacted by the bankruptcy.   Such protection seems particularly appropriate here" where the "sudden and unprecedented collapse" of FTX "raise[s] implications for the evolving and volatile cryptocurrency industry.")

2.      While Respondents support the Initial Phase, Respondents also believe the proposed investigation overlooks a fundamental issue in these proceedings: whether the customers' deposits are property of the Debtors' estates.   This gating issue is pivotal to whether the Debtors will be able to file a viable plan of reorganization.   Accordingly, the Respondents request that the following issues (collectively, the "**Fundamental Issues**") be included within the scope of the Initial Phase of the Examination:

---

[2] All capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them as in the Examiner Motion.

[3] Respondents respectfully suggest that the investigation encompass both pre and post-petition conflicts of interest including, without limitation, the LedgerX transaction.  Doc. No. 8048, ¶ 32.

      a.      Whether the assets customers deposited, held, received or acquired on the FTX.com platform (collectively, the "**Digital Assets**") are property of the Debtors' estates;

      b.      Assuming the Digital Assets remained customers' property, the manner in which the Debtors converted and used such Digital Assets; and

      c.      Whether any of the Debtors are a stockbroker, commodity broker or clearing bank, as those terms are defined in the title 11 of the United States Code (the "**Bankruptcy Code**").

3.      Given the importance and high profile nature of this case, Respondents believe that an independent, neutral third-party with no agenda should investigate and prepare a report on these fundamental issues. *See In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966) ("[T]he conduct of bankruptcy proceedings not only should be right but must seem right").

4.      Respondents expect that the Debtors will argue that this investigation will slow down the reorganization process. Respondents disagree. Despite repeated statements that they intend to amend the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* (the "**Plan**") filed on December 16, 2023, they have yet to do so. As recently as March 12, 2024, Mary Celia testified, under oath, that the Debtors did not have a confirmation timeline. The investigation provides a unique and much needed opportunity to inform the public and this Court regarding the viability of any revised plan to conclude these proceedings. It will expedite, not hinder the Debtors' confirmation process.

5.      For the reasons stated herein, the Fundamental Issues should expressly be included in the Initial Phase of the Examination because answering such questions is necessary for the confirmation process to proceed and, thus, is in the best interest of the Debtors' estates, their creditors and other parties in interest. *See, e.g.*, *In re FTX Trading Ltd.*, 91 F.4th 148, 150 (3d Cir.

2024) ("[i]n addition to providing much-needed elucidation, the investigation and examiner's report ensure the Bankruptcy Court will have the opportunity to consider the greater public interest when approving the FTX Group's reorganization plan.")

**JOINDER AND RESPONSE**

6.     For the reasons stated herein, the Respondents respectfully request that this Honorable Court expressly include the Fundamental Issues within the Initial Phase of the Examination.

**A.     LEGAL STANDARD**

7.     The examiner's general role is investigatory in nature.  *See* 11 U.S.C. § 1104(c) ("the court shall order the appointment of an examiner to conduct such an investigation"); *In re FiberMark, Inc.*, 339 B.R. 321, 324 (Bankr. D. Vt. 2006) ("The Bankruptcy Code provides bankruptcy courts with the power to appoint an independent examiner for the purpose of investigating matters related to the debtor's estate"); 7 Collier on Bankruptcy, § 1104.03[1].

8.     An examiner's investigation is intended to "discover whatever assets may exist for the estate of the bankrupt." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993). "The benefits of an examiner's investigative efforts flow directly to the debtor and its creditors and shareholders." *In re FiberMark, Inc.*, 339 B.R. at 325 (citing *In re Apex Oil Co.*, 101 B.R. 92, 99 (Bankr. E.D. Mo. 1989), *Matter of Baldwin United Corp.*, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985)).  The report, "[o]ften… serves as a road map for parties in interest as they evaluate and pursue their substantive rights." *See In re FiberMark, Inc.*, 339 B.R. at 325.  Therefore, the examiner's investigation should be thorough and exhaustive. *See In re Ionosphere Clubs, Inc.*, 156 B.R. at 432 ("The investigation of an examiner in bankruptcy, unlike civil discovery under

Rule 26(c), is supposed to be a "fishing expedition," as exploratory and groping as appears proper to the Examiner") (citing *In re Vantage Petroleum Corp*., 34 B.R. 650, 651 (E.D.N.Y. 1983)).

9.      "The benefit of appointing an independent examiner is that he or she will act as an objective non-adversarial party who will review the pertinent transactions and documents, thereby allowing the parties to make an informed determination as to their substantive rights." *In re FiberMark, Inc.*, 339 B.R. at 325 (citing *In re Ionosphere Clubs, Inc*., 156 B.R. at 432; *In re Apex Oil Co*., 101 B.R. at 99).  The use of an objective third-party brings credibility to an investigatory process that is beyond reproach.  *See*, *e.g.*, *Matter of Baldwin United Corp*., 46 B.R. at 316 ("[A]n examiner constitutes a Court fiduciary and is amenable to no other purpose or interested party.") (quoting *In re Hamiel & Sons, Inc*., 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982) (internal quotations omitted).  In this way, an examiner quells concerns of parties in interest where an adversarial party performing the same function cannot quell such concerns.  *See In re Mako, Inc.*, 102 B.R. 809, 814 (Bankr. E.D. Okla. 1988) (noting that appointing an examiner to investigate alleged improprieties "should calm the creditors' fears that any further deterioration of corporate assets will occur."); see *also First American Health Care of Georgia, Inc. v. U.S. Department of Health and Human Services*, 208 B.R. 992, 995 (Bankr. S.D. Ga. 1996) (noting that "[t]he credibility of Debtors' future acts will be well served by the involvement of an examiner.")

10.      Additionally, the court has broad flexibility in appointing an examiner for any investigatory function it deems appropriate.  *See In re Gordon Props*., LLC, 514 B.R. 449, 458 (Bankr. E.D. Va. 2013) ("[t]he list is not an exclusive list of all investigations that an examiner may undertake… The mandate of the section is to conduct appropriate investigations. The list merely illustrates some, but not all, that are appropriate."); *see also In re UNR Indus., Inc.*, 72 B.R. 789, 795 (Bankr. N.D. Ill. 1987) ("[t]he legislative history to section 1106(b), however, contains a

broader mandate. It is abundantly clear that it is within the court's discretion 'to give the examiner additional duties as the circumstances warrant.'") (quoting H.R. Rep. No. 595, 95th Cong. 1st Sess. 404 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 116 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787).

**B.**     **RESPONSE**

11.     This Court has entered an Order directing the appointment of an examiner.  Doc. No. 7909.  According to the Third Circuit, the Examination is necessary to "ensure the Bankruptcy Court will have the opportunity to consider the greater public interest when approving the FTX Group's reorganization plan." *In re FTX Trading Ltd.*, 91 F.4th 148, 150 (3d Cir. 2024).

12.     For the obvious reasons, the Fundamental Issues go to the heart of the need for an Examination.  Among other things: (a) a determination of whether the Digital Assets are property of the Debtors' estates directly impacts the ability of the Debtors to propose and confirm a Plan; (b) the manner in which the Debtors converted and used such property will shed light on the traceability of the Digital Assets; and (c) the viability of the chapter 11 Plan will be directly impacted by whether any of the Debtors are a stockbroker, commodity broker or clearing bank as those terms are defined in the Bankruptcy Code.

13.     It is Respondents' view that the Digital Assets held by the Debtors are not property of the Debtors' estates.  Under the terms of service between the customer and FTX, the customer continued to hold legal title. *See*, *e.g.* Doc. No. 1727, ¶ 4 (Complaint filed by the Debtors admitting that the Debtors' pre-petition conduct was "fueled by a host of reckless and fraudulent practices…all paid for using comingled and misappropriated funds.").  It is black letter law that neither funds in which a Debtor holds merely legal title nor funds acquired through an illegal act

that would be subject to forfeiture under federal law are property of the Debtors' estates.  11 U.S.C. 541(d); *U.S. v. French*, 822 F.Supp.2d 615 (E.D. Va. 2011).

14.     It is also Respondents' view that the manner in which the Debtors converted customer property is an essential area of inquiry since it will shed light on how and where the customer property was misused.  It is believed that some of the customer property was used to artificially inflate the price of FTT token, purchase real estate and make venture investments and political donations, but to date the facts and the amounts largely remain a mystery.  An public explanation of these details by an independent neutral third party would answer many questions.

15.     Furthermore, an investigation into whether any of the Debtors were stockbrokers, commodity brokers or clearing banks would answer questions concerning the feasibility of any plan proposed by the Debtors, including the Plan and any amendments thereto.  If any of the customer facing entities fall within these definitions, a chapter 11 plan would need to prioritize repayment to customers over all claims other than those "attributable to the administration of such customer property."  11 U.S.C. §§ 752, 766; *see also* 11 U.S.C. § 783(a) ("The trustee under this subchapter has the power to distribute property not of the estate, including distributions to customers that are mandated by subchapters III and IV of this chapter."). It bears note that the Commodity Futures Trading Commission sued FTX Trading Ltd. and Alameda Research LLC for violating the Commodity Exchange Act.  *See* Compl. for Inj. and Other Equitable Relief and for Civil Monetary Penalties Under the Commodity Exchange Act and Commission Regulations, *Commodity Futures Trading Comm'n v. Bankman-Fried, et al.*, No. 22-cv-10503 (S.D.N.Y. Dec. 13, 2022).

16.     Additionally, permitting the examiner to investigate the Fundamental Issues will expedite, not delay, the Debtors' exit from these bankruptcy proceedings.  An investigation into

each of the Fundamental Issues will need to be determined through the Examination or in connection with confirmation of any plan.  Moreover, confirmation of a plan is not imminent.  As recently as March 12, 2024, the Debtors confirmed that they do not have a confirmation timeline.  Assuming the Initial Phase of the Examination can be completed within 60 days, it will not delay these proceedings.

## CONCLUSION

The Third Circuit has found that the protection of public interests was "particularly appropriate" in this case because, among other things, the "sudden and unprecedented collapse" of FTX "raised implications for the evolving and volatile cryptocurrency industry."  *In re FTX Trading Ltd.*, 91 F.4th 148, 150, 157 (3d Cir. 2024).  For the reasons stated herein, the Respondents join in the U.S. Trustee's Examiner Motion and respectfully respond that any order approving same should expressly include the Fundamental Issues as part of the Initial Phase of the Examination.

WHEREFORE, the Respondents respectfully request that this Court enter an order incorporating the Fundamental Issues into its approval of the Examiner's Motion, along with such other relief as the Court finds just and appropriate.

Dated: March 13, 2024
Wilmington, Delaware

McCarter & English, LLP

*/s/ Shannon D. Humiston*
Shannon D. Humiston (No. 5740)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE I 9801
Telephone: (302) 984-6300
Facsimile (302) 984-6399
shumiston@mccarter.com

-  *and*  -

David Adler, Esq. (admitted *pro hac vice*)

Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6847
Facsimile:     (212) 609-6921
dadler@mccarter.com
*Counsel to Sunil Kavuri, Ahmed Abd El-Razek,*
*Noia Capital Sarl and Pat Rabbitte*