# **Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 8202** |

**ORDER AUTHORIZING AND APPROVING (I) ENTRY INTO, AND PERFORMANCE UNDER, THE SHARE AND ASSET PURCHASE AGREEMENT; (II) THE SALE OF THE SHARES OF THE TRANSFERRED SUBSIDIARIES, SHARES OF THE MINORITY ENTITIES AND TRANSFERRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (III) DISMISSING THE CHAPTER 11 CASES OF THE FTX EUROPE SUBSIDIARIES**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing and approving (i) the entry by Debtor FTX Europe AG, a Swiss stock corporation ("FTX Europe" or "Seller"), into, and its performance under, the Share and Asset Purchase Agreement, dated as of February 7, 2024 (including all exhibits and ancillary documents thereto (including the Release Agreement), and as may be amended or supplemented from time to time, the "Share and Asset Purchase Agreement") between Seller, on the one hand, and Patrick Gruhn, Robin Matzke, Lorem Ipsum RM UG (collectively, the "Purchasers") and CredoMedia GmbH (the "Purchaser Entity" and together with the Purchasers, the "Purchaser Parties") on the other hand; (ii) the sale (the "Sale Transaction") by Seller to the Purchaser Entity of (a) 100% of the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

share capital (the "Transferred Subsidiary Interests") of each of Debtors FTX EU Ltd. ("FTX Cyprus"), FTX Switzerland GmbH, FTX Trading GmbH, FTX Certificates GmbH and FTX Structured Products AG (collectively, the "Transferred Subsidiaries"), (b) 9.9% of the share capital of non-Debtor CONCEDUS Digital Assets GmbH and 9.9% of the share capital of non-Debtor CM Equity-Equity AG (collectively, the "Minority Entities") (together with the Transferred Subsidiary Interests, the "Shares") and (c) certain other assets as set forth in the Share and Asset Purchase Agreement (the "Transferred Assets"), in each case free and clear of all liens, claims, interests and encumbrances ("Liens") other than Permitted Liens (as defined in the Share and Asset Purchase Agreement); and (iii) the dismissal of the Chapter 11 Cases of (a) the Transferred Subsidiaries effective upon the transfer of the Shares pursuant to the Sale Transaction (the "Closing") and (b) FTX Crypto Services Ltd. ("FTX Crypto Services" and together with the Transferred Subsidiaries, the "FTX Europe Subsidiaries") effective upon entry of this Order; and this Court having held a hearing (the "Hearing") to review and consider (i) the Motion with respect to the relief requested therein, (ii) the Share and Asset Purchase Agreement (including all exhibits and ancillary documents thereto), (iii) the Declarations of Steven P. Coverick, Dominique Müller and Stylianos A. Triantafyllides, (iv) any other evidence presented at the Hearing, and (v) objections thereto that were not resolved prior to the start of the Hearing and upon the record of the Hearing and all of the proceedings had before this Court; and objections (if any) to the Motion having been withdrawn or overruled on the merits; and after due deliberation and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      Jurisdiction and Venue.  This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Shares and Transferred Assets to be sold, transferred or conveyed pursuant to the Share and Asset Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court may issue a final order on the Motion consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Statutory and Rule Predicates.  The statutory and other legal predicates for the relief requested in the Motion and for the approvals and authorization herein are sections 105(a), 305(a), 349, 363 and 1112(b) of Bankruptcy Code, Bankruptcy Rules 1017, 2002 and 6004, and Local Rules 1017-2, 2002-1 and 6004-1.

C.      Final Order.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and authorizes entry into, and performance under, the Share and Asset Purchase Agreement and the ancillary documents thereto and the transactions contemplated thereby, without regard to any stay or delay in its implementation.

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

D.    <u>Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Hearing (a) the Debtors have provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient opportunity to object to, the Motion and the relief requested therein, including, among other things, the Sale Transaction, the dismissal of the Chapter 11 Cases of the FTX Europe Subsidiaries and the proposed entry of this Order in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, (b) such notice was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (c) no other or further notice is necessary or shall be required.

E.    <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested parties.

F.    <u>No Collusion</u>.  No Purchaser Party is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Notwithstanding determination of the foregoing, the Share and Asset Purchase Agreement and the Sale Transaction were negotiated, proposed and entered into by Seller and Purchaser without collusion or fraud, in good faith and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.  None of the Debtors, including Seller, has engaged in any conduct that would cause or permit the Share and Asset Purchase Agreement or the Closing to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code by any action or inaction. The Sale Transaction may not be avoided, and no damages may be assessed against Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

G.      <u>Good Faith of Purchaser</u>.  The Purchaser Parties, their officers, directors, employees, agents and representatives, each acted in good faith in connection with the Sale Transaction, and all matters related thereto.  The Purchaser Parties are purchasing the Shares and Transferred Assets in good faith and for value and are each good-faith buyers within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser Parties are therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law with respect to all aspects of the transactions contemplated by the Sale Transaction, and otherwise have proceeded in good faith in all respects in connection with this proceeding in that, among other things, (a) all payments to be made, and all other material agreements and arrangements entered into or to be entered into, by the Purchaser Parties in connection with the Sale Transaction have been disclosed; (b) the Purchaser Parties have not violated section 363(n) of the Bankruptcy Code by any action or inaction; (c) the negotiation and execution of the Agreement were at arm's length and in good faith; and (d) the Purchaser Parties have not acted in a collusive manner with any person.  The Purchaser Parties will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Share and Asset Purchase Agreement.

H.      <u>Fair Price and Fair Dealing</u>.  The sale of the Shares and Transferred Assets achieved a fair price and employed a substantively and procedurally fair process that properly accounted for fiduciary duties and is in the best interests of the Debtors' estates.

I.      <u>Highest and Best Offer</u>.  The Debtors and their advisors have appropriately marketed the Shares and Transferred Assets.  No other person or entity or group of entities has offered to purchase the Shares or Transferred Assets for higher or otherwise better value to the Debtors' estates than the Purchaser Parties.  The offer to purchase the Shares and

Transferred Assets made by the Purchaser Parties, under the terms and conditions set forth in the Share and Asset Purchase Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for the Shares and Transferred Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Shares and Transferred Assets being conveyed to the Purchaser Parties; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by the Purchaser Parties absent the protections afforded to each Purchaser Party by this Order.

J.     The Debtors' determination that the Sale Transaction, pursuant to the Share and Asset Purchase Agreement, provides the highest or otherwise best offer for the Shares and Transferred Assets, and their related decision for Seller to sell constitute a reasonable exercise of the Debtors' business judgment.  The facts and circumstances described in the Motion and the evidence adduced in connection with the Sale Hearing demonstrate the Debtors' business judgment for Seller to sell the Shares and Transferred Assets at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for purchasing and selling the Shares outside of a chapter 11 plan.  Moreover, the sale of the Shares and Transferred Assets outside of a chapter 11 plan pursuant to the Share and Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Order.

K.     <u>Fair Consideration</u>.  The Purchase Price (as defined in the Share and Asset Purchase Agreement) provided by the Purchaser Parties pursuant to the Share and Asset

Purchase Agreement (a) is fair and reasonable, and (b) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

      L.     <u>No Successor or Other Derivative Liability</u>.  The Purchaser Parties are not, or shall not be, considered a successor in interest to Seller or its estates, by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of the Purchaser Parties (as applicable) and Seller and/or their respective estates.

      M.     <u>Corporate Power and Authority</u>.  The Purchaser Parties and Seller each (a) has full corporate power and authority to execute and deliver the Share and Asset Purchase Agreement and the ancillary documents thereto, (b) has all corporate authority necessary to consummate the transactions contemplated by the Share and Asset Purchase Agreement and the ancillary documents thereto, and (c) has taken all corporate action and formalities necessary to authorize and approve the Share and Asset Purchase Agreement and the ancillary documents thereto, and the consummation of the transactions contemplated thereby.  The Sale Transaction and all related transactions under the Share and Asset Purchase Agreement and the ancillary documents thereto have been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Share and Asset Purchase Agreement and the ancillary documents thereto, are required for the Debtors to consummate the Sale Transaction and the other transactions contemplated by the Share and Asset Purchase Agreement and the ancillary documents thereto.

N.      The Share and Asset Purchase Agreement and the ancillary documents thereto (including the Release Agreement) were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither Seller nor the Purchaser Parties are entering into the transactions contemplated by the Share and Asset Purchase Agreement or the ancillary documents thereto (including the Release Agreement) fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

O.      <u>Title to Assets</u>.  The transfer of Seller's rights, titles and interests to the Shares and Transferred Assets to the Purchaser Parties will be, as of the Closing Date (as defined in the Share and Asset Purchase Agreement), a legal, valid and effective transfer of such rights, titles and interests in the Shares and Transferred Assets, which transfer vests or will vest the Purchaser Entity with all rights, titles and interests of Seller to the Shares and Transferred Assets free and clear of all Liens but subject to all Permitted Liens (as defined in the Share and Asset Purchase Agreement).  The Share and Asset Purchase Agreement is a valid and binding contract between Seller and the Purchaser Parties and shall be enforceable according to its terms.

P.      <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and upon entry of this Order, Seller is authorized to transfer all of its right, title and interest in and to the Shares and Transferred Assets free and clear of any interest in the property, other than Permitted Liens.  Seller may sell the Shares and Transferred Assets free and clear of all Liens other than Permitted Liens because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each holder with a Lien on the Shares and Transferred Assets to be

transferred pursuant to the Share and Asset Purchase Agreement: (a) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien; or (c) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Holders of Liens who did not object, or who withdrew their objections, to the Sale Transaction or the Motion, with respect to the sale of the Shares and Transferred Assets, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens are adequately protected by having their Liens, if any, in each instance against Seller, its estate or the Shares and Transferred Assets, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Shares and Transferred Assets in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

Q.     The Purchaser Parties would not have entered into the Share and Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Shares and Transferred Assets to the Purchaser Parties were not free and clear of all Liens other than Permitted Liens, or if the Purchaser Parties would, or in the future could, be liable for any such Lien.  The Purchase Price to be provided under the Share and Asset Purchase Agreement reflects the Purchaser Parties' reliance on this Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Shares and Transferred Assets free and clear of all Liens other than Permitted Liens.

R.     <u>Waiver of Bankruptcy Rule 6004(h)</u>.  Good and sufficient reasons for approval of the Share and Asset Purchase Agreement and the ancillary documents thereto

(including the Release Agreement), and the Sale Transaction have been articulated.  The Debtors have demonstrated that (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the prompt consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) with respect to the transactions contemplated by this Order.  To maximize the value of the Shares and Transferred Assets, it is essential that the Sale Transaction occur within the time constraints set forth in the Share and Asset Purchase Agreement.  Time is of the essence in consummating the Sale Transaction, and Seller and the Purchaser Parties intend to close the Sale Transaction as soon as practicable. Given all of the circumstances of these Chapter 11 Cases, and the adequacy and fair value of the Purchase Price, the proposed sale by Seller and purchase by the Purchaser Parties of the Shares and Transferred Assets should be approved.

S.    The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

T.    Dismissal of the FTX Europe Subsidiaries' Chapter 11 Cases.  The Debtors have demonstrated that there is cause to dismiss the Chapter 11 Cases of (a) the Transferred Subsidiaries effective upon the Closing and (b) FTX Crypto Services effective upon entry of this Order, and that such dismissals are, in each case, in the best interest of the creditors and the estates.

U.      <u>Personally Identifiable Information</u>.  The Sale Transaction does not involve the sale of any personally identifiable information.  Thus, the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

V.      <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and the evidence adduced in connection with the Hearing establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates.

IT IS HEREBY ORDERED THAT:

A.      **General Provisions**

1.      The Sale Transaction, including the sale by Seller and purchase by the Purchaser Parties of the Shares and Transferred Assets and the Share and Asset Purchase Agreement and the ancillary documents thereto (including the Release Agreement) and the transactions contemplated thereby are hereby approved in their entirety as set forth herein.

2.      All objections, responses, reservations of rights, or requests for any continuances concerning the Motion are resolved in accordance with the terms of this Order as set forth in the record at the Hearing.  To the extent any such objections, responses, reservations of rights or requests for any continuances were not otherwise withdrawn, waived, settled or resolved, such are hereby overruled and denied on the merits.  All interested parties that failed to timely object to the Motion, with respect to the Sale Transaction, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      Notice of the Motion, the Share and Asset Purchase Agreement and the ancillary documents thereto (including the Release Agreement), the purchase and sale of the Shares and Transferred Assets, the sale of the Shares and Transferred Assets free and clear of all

Liens other than Permitted Liens, the Sale Transaction and the dismissal of the Chapter 11 Cases

of the FTX Europe Subsidiaries was fair, equitable, proper and sufficient under the

circumstances and complied in all respects with section 102(1) of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-

1.

**B.      Approval of the Share and Asset Purchase Agreement**

4.      The Share and Asset Purchase Agreement and all ancillary documents

executed in connection therewith (including the Release Agreement), all other ancillary

documents related to the Sale Transaction, and all of the terms and conditions thereof, are hereby

authorized and approved in all respects.  The Sale Transaction is substantively and procedurally

fair to all parties.  The failure to specifically include or make reference to any particular

provision of the Share and Asset Purchase Agreement and all related ancillary documents in this

Order shall not impair the effectiveness of such provision, it being the intent of this Court that

the Share and Asset Purchase Agreement and all related ancillary documents, the Sale

Transaction and the transactions contemplated therein or in connection therewith are authorized

and approved in their entirety.

5.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the

Debtors are authorized and empowered to take any and all actions necessary or appropriate to

(a) consummate the Sale Transaction to the Purchaser Parties pursuant to and in accordance with

the terms and conditions of the Share and Asset Purchase Agreement and the related ancillary

documents and this Order, (b) close the Sale Transaction as contemplated in the Share and Asset

Purchase Agreement and the related ancillary documents, and this Order and (c) execute and

deliver, perform under, consummate and implement the Share and Asset Purchase Agreement

and the related ancillary documents, together with all additional instruments and documents that

may be reasonably necessary or desirable to implement the Share and Asset Purchase Agreement and the related ancillary documents and the Sale Transaction.

6.    This Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in, against or on all or any portion of the Shares and Transferred Assets (whether known or unknown), the Purchaser Parties and all successors and assigns of the Purchaser Parties with respect to the Shares, Transferred Assets and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases. This Order and the Share and Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser Parties and the respective successors and assigns of each of the foregoing.

**C.    <u>Consummation of the Sale Transaction</u>**

7.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, Seller is authorized to transfer all of its rights, titles and interests to the Shares and Transferred Assets to the Purchaser Parties and the Purchaser Parties are authorized to purchase all of Seller's rights, titles and interests to the Shares and Transferred Assets on the Closing Date, in accordance with and subject to the terms of the Share and Asset Purchase Agreement, and such transfer and purchase shall constitute a legal, valid, binding and effective transfer and purchase of such rights, title and interests in the Shares and Transferred Assets and shall vest the Purchaser Parties with all of Seller's rights, title and interests in the Shares and Transferred Assets and, upon Seller's receipt of the Purchase Price, shall be free and clear of all liens, claims, interests and encumbrances, including but not limited to, successor or successor-in-interest liability or, any tax liens or mechanic's liens asserted against the Shares and Transferred Assets, other than Permitted Liens, with all Liens to attach to the net cash proceeds ultimately attributable to the property

against or in which such Liens are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens now have against the Shares and Transferred Assets, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. The provisions of this Order authorizing and approving the transfer of the Shares and Transferred Assets free and clear of all Liens other than Permitted Liens shall be self-executing, and neither Seller nor the Purchaser Parties shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

8. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances, except Permitted Liens.

9. If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Shares shall not have delivered to Seller prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to all or any portion of the Shares, Seller, the Purchaser Parties and each of its respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Shares and Transferred Assets.

10. This Order is and shall be effective as a determination that, on the Closing Date, any Liens existing as to the Shares and Transferred Assets prior to the Closing Date, other than Permitted Liens, shall have been unconditionally released, discharged and terminated from

the Shares and Transferred Assets, and that the conveyances described herein have been effected.

This Order is and shall be binding upon and govern the acts of all persons and entities, including,

without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state and local officials and all other persons and

entities who may be required by operation of law, the duties of their office, or contract, to accept,

file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any lease; and each of the foregoing

persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the Sale Transaction.

**D.     Prohibition of Actions Against Purchaser**

11.     Except as expressly provided for in this Order, the Share and Asset

Purchase Agreement, or the Stipulation, the Purchaser Parties shall not have any liability or other

obligation of Seller arising under or related to the Shares or Transferred Assets prior to the

Closing.  Without limiting the generality of the foregoing, and except as otherwise specifically

provided herein, in the Share and Asset Purchase Agreement or in the Stipulation, the Purchaser

Parties shall not, by virtue of the Sale Transaction, be liable for any claims against Seller or any

of its predecessors or affiliates, and the Purchaser Parties shall have no successor or vicarious

liabilities of any kind or character, including, but not limited to, under any theory of antitrust,

environmental (subject to paragraph 19 below), successor or transferee liability, securities law,

tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known

or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent,

whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated,

including, but not limited to, liabilities on account of warranties, environmental liabilities

(subject to paragraph 19 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Shares or the Transferred Assets prior to the Closing.  The Sale Transaction does not amount to a consolidation, merger or de facto merger of any of the Purchaser Parties, on the one hand, and Seller and/or Seller's estate, on the other hand, and there is not substantial continuity between the Purchaser Parties, on the one hand, and Seller, on the other hand, and the Purchaser Entity is not a mere continuation of Seller or its estate, and none of the Purchaser Parties constitute a successor to Seller or its estate.

12.    Except as expressly otherwise set forth in the Share and Asset Purchase Agreement and this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Shares and Transferred Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to Seller, the Shares, Transferred Assets or the transactions contemplated by the Share and Asset Purchase Agreement, hereby are forever barred, estopped and permanently enjoined from asserting against Purchaser, its affiliates, its successors or assigns, their property or the Shares and the Transferred Assets, such persons' or entities' Liens with respect to the Shares and Transferred Asset, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Purchaser Parties, its affiliates, its successors,

assets or properties; (c) creating, perfecting or enforcing any Lien against the Purchaser Parties,

its affiliates, its successors, assets, or properties; (d) asserting any unexercised setoff or right of

subrogation against any obligation due by the Purchaser Parties, its affiliates or its successors;

(e) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Order, or the agreements or actions contemplated or taken

in respect thereof; or (f) to the extent provided in section 525 of the Bankruptcy Code, revoking,

terminating or failing or refusing to transfer or renew any license, permit or authorization to

operate Seller.  On the Closing Date, each creditor is authorized to execute such documents and

take all other actions as may be necessary to release Liens in or on the Shares and Transferred

Assets, except Permitted Liens, if any, as provided for herein, as such Liens may have been

recorded or may otherwise exist.

14.    All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with the ability of Seller to sell and

transfer the Shares and Transferred Assets to the Purchaser Parties and the ability of Purchaser

Parties to purchase the Shares and Transferred Assets from Seller, in each case in accordance

with the terms and subject to the conditions of the Share and Asset Purchase Agreement and this

Order.

14.    The Purchaser Parties have given substantial consideration under the

Share and Asset Purchase Agreement for the benefit of the Debtors and their estates.  The

consideration given by the Purchaser Parties shall constitute valid and valuable consideration for

the sale being free and clear of any potential liens, claims, interests, and encumbrances, including

any Liens, as to the Shares and Transferred Assets pursuant to this Order, except with respect to

the Permitted Liens, and free and clear of any potential claims of successor liability against the

Purchaser Parties.  The consideration provided by the Purchaser Parties for the Shares and

Transferred Assets under the Share and Assets Purchase Agreement is fair and reasonable and

may not be avoided under section 363(n) of the Bankruptcy Code.

**E.**     **Dismissal of the FTX Europe Subsidiaries' Chapter 11 Cases**

15.     Pursuant to sections 105(a), 305(a) and 1112(b) of the Bankruptcy Code,

the dismissal of the Chapter 11 Cases of the (a) Transferred Subsidiaries effective upon the

Closing and (b) FTX Crypto Services effective upon entry of this Order, is hereby approved.

16.     Notwithstanding section 349 of the Bankruptcy Code, references in prior

orders of this Court to "the Debtors" or "the Chapter 11 Cases" or similar references shall apply

to (i) the Transferred Subsidiaries with respect to periods on and including the date of the

Closing when the Chapter 11 Cases of the Transferred Subsidiaries will be dismissed, but shall

not apply to the Transferred Subsidiaries with respect to periods after the date of the Closing and

(ii) FTX Crypto Services with respect to periods on and including the date of this Order, but shall

not apply to FTX Crypto Services with respect to periods after this Order.

17.     Following the dismissals of the Chapter 11 Cases of the Transferred

Subsidiaries effective upon the Closing and FTX Crypto Services effective upon entry of this

Order, Kroll Restructuring Administration LLC, the Debtors' authorized claims agent, shall be

authorized to remove and expunge all proofs of claim and proofs of interest filed against the

Transferred Subsidiaries and FTX Crypto Services from the claims registry and shall comply

with Local Rule 2002-1(f)(ix).

**F.**     **Other Provisions**

18.     Nothing in this Order or the Share and Asset Purchase Agreement

releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a

governmental unit that any entity would be subject to as the post-sale owner or operator of

property after the date of entry of this Order.  In addition, nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Order or to adjudicate any defense asserted under this Order.

19.     Further, nothing in this Order or the Share and Asset Purchase Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

20.     Notwithstanding anything to the contrary in the Motion, this Order, or any findings announced at the Hearing, nothing in the Motion, this Order or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are expressly reserved.

21.     The consideration provided by the Purchaser Parties to Seller pursuant to the Share and Asset Purchase Agreement for the Shares and the Transferred Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

22.     The sale of the Shares and Transferred Assets does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline

Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

23.     The Sale Transaction is undertaken by the Purchaser Parties without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the Closing.  The Purchaser Parties are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.  Seller and the Purchaser Parties will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

24.     As a good faith purchaser of the Shares and Transferred Assets, the Purchaser Parties have not entered into an agreement with any other potential bidders, or colluded with any other bidders, potential bidders, or any other parties interested in the Shares or Transferred Assets, and therefore, neither the Debtors nor any successor-in-interest to Seller's estate shall be entitled to bring an action against the Purchaser Parties, and the Sale Transaction may not be avoided pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Share and Asset Purchase Agreement or the Sale Transaction.

25.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 cases into which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to

entry of this Order, shall conflict with or derogate from the provisions of the Share and Asset

Purchase Agreement, or the terms of this Order.  In the event there is a conflict between this

Order and the Share and Asset Purchase Agreement (or any ancillary agreements executed in

connection therewith), this Order shall control and govern.  Likewise, all of the provisions of this

Order are non-severable and mutually dependent.  To the extent that this Order is inconsistent

with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms

of this Order shall control.

26.     Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Order shall be

effective and enforceable immediately upon entry, Seller and the Purchaser Parties are

authorized to close the Sale Transaction immediately upon entry of this Order, and the 14-day

stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.

27.     The failure specifically to include any particular provision of the Share

and Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of

such provision, it being the intent of this Court that the Share and Asset Purchase Agreement be

authorized and approved in its entirety; provided, however, that this Order shall govern if there is

any inconsistency between the Share and Asset Purchase Agreement (including all ancillary

documents executed in connection therewith) and this Order.

28.     The Share and Asset Purchase Agreement and any related agreements,

documents or other instruments may be modified, amended or supplemented by the parties

thereto and in accordance with the terms thereof, without further order of this Court, provided

that any such modification, amendment or supplement does not have a material adverse effect on

the Debtors' estates or any of the Debtors' creditors.  If the Share and Asset Purchase Agreement

is modified, the Debtors shall file the modified version with this Court.

29.    This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Order and the Share and Asset Purchase Agreement, and all amendments thereto and any waivers and consents thereunder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

30.    The Share and Asset Purchase Agreement and the related ancillary documents shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

31.    No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Share and Asset Purchase Agreement)) shall apply to the Debtors' conveyance of the Shares and Transferred Assets or this Order.

32.    The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.  Nothing in this Order shall authorize the sale, lease or transfer of any personally identifiable information (as defined in section 101(41A) of the Bankruptcy Code).

33.    Nothing in this Order shall affect the obligations, if any, of the Debtors, Seller, the Purchaser Parties and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency or the examiner appointed in these Chapter 11 Cases.

34.    Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right

(including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Shares, the Transferred Assets or any part thereof.

35.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).


Dated: _____
         Wilmington, Delaware                                        The Honorable John T. Dorsey
                                                             United States Bankruptcy Judge