# ASSIGNMENT OF CLAIM AGREEMENT

ASSIGNMENT OF CLAIM AGREEMENT ("Agreement") dated as of December 4, 2023 by and between Calico Capital Limited, a company formed under the laws of the United Kingdom ("Seller") and Sheridan Investment Holdings LLC, a Colorado limited liability company ("Purchaser"); Seller and Purchaser are referred to herein together as the "Parties" and each individually as a "Party").

## RECITALS

A. WHEREAS the Seller is the owner of certain claims against FTX Europe AG. and each of its debtor and non-debtor affiliates (collectively, "FTX"), including, but not limited to, FTX Digital Markets Ltd which is subject to a proceeding captioned In re FTX Digital Markets Ltd. (in Provisional Liquidation);

B. On November 11, 2022 (the "Petition Date") and November 14, 2022, FTX Trading Ltd. and its affiliated debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Chapter 11 Case No. 22-11068 (JTD) et seq. (the "Chapter 11 Cases").

C. On November 10, 2022, the Supreme Court of the Bahamas issued an order placing FTX Digital Markets Ltd. into provisional liquidation (the "Bahamian Provisional Liquidation").

D. On November 10, 2022 and November 14, 2022, the Supreme Court of the Bahamas appointed joint provisional liquidators, who have requested recognition of the Bahamian Provisional Liquidation as a foreign proceeding under chapter 15 of the Bankruptcy Code by the Bankruptcy Court, Case No. 22-11217 (JTD) (the "Chapter 15 Proceeding" and along with the Bahamian Provisional Liquidation, the Chapter 11 Cases and any other ongoing or future legal proceedings, foreign or domestic, relating to FTX or FTX's conduct or actions, the "Proceedings").

E. Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, the Claim and other Transferred Rights (as such terms are defined herein) on the terms and conditions set forth herein.

## AGREEMENT

In consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1. <u>Assignment of Seller's Claim</u>. In consideration of the mutual covenants and agreements in, and subject to the terms and conditions of, this Agreement, Seller, for good and valuable consideration in the sum of the amount set forth on Schedule 1 hereto (the "Purchase Price"), does hereby absolutely and unconditionally sell, assign, convey, and otherwise transfer to Purchaser a one hundred percent (100%) undivided interest in all of Seller's right, title, benefit, and interest in and to any and all of Seller's claims and causes of action, debts, amounts and monies owed, that relate to, arise as a result of, or derive from, Seller's accounts, investments, or trading activities with FTX, or the Chapter 11 Cases, the Bahamian Provisional Liquidation, the Chapter 15 Proceeding, or any other Proceedings against FTX and any of

their affiliates or any other third party (the "Claim") and any other rights or benefits of any kind, which may now exist, or come into existence with respect to the Claim (collectively, together with the Claim, the "Transferred Rights"), including, but not limited to: (a) any proof of claim, filed in the Proceedings by Seller, and the claims listed by FTX, in Seller's name, on its bankruptcy schedules and/or amendments thereto; (b) all agreements, instruments, invoices, account documents, screenshots and other documents evidencing, or referred to in, such claim(s) or any proof of claim; (c) all cure amounts paid by FTX in connection with the assumption of contracts related to Seller's claim(s) or any proof of claim; (e) all causes of action, whether against FTX or against any other party, in connection with such claim(s); (f) all rights to receive principal, interest, cash, digital assets, administrative priority claims, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing ("Distributions"); (g) all reclamation claims of Seller against FTX; (h) all of Seller's accounts and subaccounts with FTX (the "Accounts"); and (i) all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, Seller's rights to receive all payments or distributions made or issued in connection with any of the foregoing or the Proceedings. Notwithstanding any other term of this Agreement, the sale and assignment of the Transferred Rights shall be deemed an absolute and unconditional assignment of the Transferred Rights for the purpose of collection and satisfaction, and not an assignment or transfer to or assumption by Purchaser of any obligation or liability of Seller or any other party under or in connection with the Transferred Rights, any and all of which obligations and liabilities are and shall remain the obligations and liabilities of Seller or such other party.

2. Payment of the Purchase Price. The consideration paid by Purchaser to Seller for the Transferred Rights, the adequacy and sufficiency of which are hereby acknowledged by Seller, is the purchase price (the "Purchase Price") set forth on Schedule I hereto. Within three business days of the mutual execution and delivery of this Agreement, the Evidence of Transfer of Claim, attached hereto as Annex Exhibit A (the "EOT"), the Change of Address, attached hereto as Annex B (the "Change of Address"), and the Power of Attorney, attached hereto as Annex C (the "POA", together with the Agreement, the EOT, the Change of Address and the POA, the "Assignment Documents"), the Purchase Price shall be wired to Seller's wire instructions as set forth herein. The date of Purchaser's payment of the Purchase Price is the "Closing Date". As of the Closing Date, Purchaser shall be deemed to be the owner and record holder of the Claim and the Transferred Rights, and shall be entitled to identify itself as the holder of the Claim for all purposes in the Proceedings.

3. Representations and Warranties of Seller. Seller hereby represents and warrants to Purchaser as of the Closing Date that: (a) the Claim is a valid, liquidated, undisputed and non-contingent claim against FTX in an amount not less than **$842,546** (the "Claim Amount"); (b) no objection to the Claim or the Transferred Rights has been made and there are no offsets or defenses that have been asserted by or on behalf of the FTX or any other party to reduce the amount of the Transferred Rights or to reduce the value of the Claim as compared to other similarly situated claims; (c) Seller is the sole legal and beneficial owner of and has good legal and marketable title to the Transferred Rights free and clear of any mortgage, pledge, lien, security interest, charge, hypothecation, security agreement, security arrangement or other adverse claim against title (each, an "Encumbrance") and will transfer to Purchaser such good legal and marketable title free and clear of any Encumbrance; (d) Seller held the positions set forth on Schedule 2 (attached hereto) in the Accounts as of the petition date; (e) Seller has made no withdrawals from the Accounts, and has not received any other payments or distributions from FTX, within ninety (90) calendar days prior to the petition date of the Chapter 11 Cases; (f) there are no preference actions against Seller or the Transferred Rights, and to the best of Seller's knowledge, no legal or equitable defenses, counterclaims or offsets, challenges, reductions, recoupments, impairments, avoidances, disallowances or subordinations have been asserted by or on behalf of the FTX or its affiliates to reduce the amount of th

Transferred Rights or affect their validity or enforceability or delay the timing of distributions; (g) Seller has not engaged (and shall not engage) in any acts, conduct or omissions, and Seller has not had (and shall not have) any relationship with FTX that will result in Purchaser receiving in respect of the Transferred Rights proportionately less in payments or distributions or less favorable treatment (including the timing of payments or distributions) than other similarly situated creditors of FTX; (h) except as disclosed to Purchaser in the Claim Documents (as defined below), (i) Seller does not, and did not on the date of the commencement of the Proceedings against FTX, hold any funds or property of FTX with respect to the Transferred Rights, and (ii) has not effected or received, and shall not effect or receive, the benefit of any setoff against FTX with respect to the Transferred Rights; (i) Seller has not received any notice that the Transferred Rights are void or voidable or subject to any disallowance, reduction, impairment or objection of any kind; (j) Seller (i) is not an "affiliate" or "insider" within the meaning of 11 U.S.C. Sections 101(2) and 101(31), respectively, of FTX; and (ii) is not and has not been at any time "connected" with FTX as such term is used in the Insolvency Act 1986 (or any similar provision in any relevant jurisdiction); (k) Seller is not, and never has been, "insolvent" within the meaning of Section 101(32) of the Bankruptcy Code; (l) Seller has no obligation or liability related to or in connection with Claim or the Proceedings; (m) Seller has provided to Purchaser true and complete copies of all documents in Seller's possession that could materially impact the recovery on the Claim (the "Claim Documents"); and (n) other than the Claim Documents, there are no other agreements to which Seller is a party that will materially and adversely affect the Claim; and (o) Seller has submitted a proof of claim prior to the Customer Bar Date through the FTX Portal.

4.     Mutual Representations of Seller and Purchaser. Each of Seller and Purchaser hereby represents and warrants to the other Party, and to the other Party's successors and assigns, as of the Closing Date that: (a) no proceedings are (i) pending against such party or (ii) to the best of such party's knowledge, threatened against it, before any federal, state or other governmental department, agency, institution, authority, regulatory body, court or tribunal, foreign or domestic (and including arbitral bodies, whether governmental, private or otherwise) that, in the aggregate, will adversely affect any action taken or to be taken by it under this Agreement; (b) it is duly organized and validly existing under the laws of its jurisdiction of organization, in good standing under such laws, and has full power and authority and has taken all action necessary to execute and deliver this Agreement and to perform its obligations under this Agreement and to consummate the transactions contemplated by this Agreement; (c) the making and performance by it of this Agreement does not and will not violate any law or regulation of the jurisdiction under which it exists, any other law applicable to it or any other agreement to which it is a party or by which it is bound; (d) this Agreement has been duly and validly authorized, executed and delivered by it and is legal, valid, binding and enforceable against it in accordance with its terms except that the enforceability may be limited by bankruptcy, insolvency or laws governing creditors' rights; (e) no consent, approval, filing or corporate, partnership or other action is required to be obtained or made by it as a condition to or in connection with execution, delivery and performance of this Agreement; (f) Purchaser is an "accredited investor" as such term is defined in Regulation D under the Securities Act of 1933, as amended; (g) it acknowledges that (i) the other Party currently may have, and later may come into possession of, information relating to the Transferred Rights, FTX, or the status of the Proceedings (including, in the case of Purchaser or its assignees, as a member of official or unofficial committees of FTX) that is not known to it and that may be material to a decision to buy or sell the Transferred Rights and all related rights (as appropriate) (the "Excluded Information"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Transferred Rights and all related rights (as appropriate) hereunder without receiving the Excluded Information, and (iii) the other Party shall have no liability to it, and each Party waives and releases any claims that it might have against the other Party or the other Party's officers, directors, employees, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to

the nondisclosure of the Excluded Information; provided, however, that each Party's Excluded Information shall not and does not affect the truth or accuracy of such Party's representations or warranties in this Agreement; (h) it is aware that the Purchase Price may differ both in kind and amount from any distributions or dividends ultimately made in the Proceedings or in any other insolvency proceeding in relation to FTX; and (i) it has adequate information concerning the business and financial condition of the FTX, the Transferred Rights and the status of the Proceedings in order to make an informed decision regarding the purchase and sale of the Transferred Rights, and it has independently and without reliance on the other Party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied on the other Party's express representations, warranties, covenants, agreements and indemnities in this Agreement.

5.  Disallowance. Subject to good faith approval by the FTX of all legal invoices, totaling £59,535, which Parties mutually agree are in good faith and reasonable based upon what is known or knowable today, in the event that (a) all or any portion of the Claim or other Transferred Rights is disallowed, avoided, offset, subordinated, reduced, disputed, objected to, enjoined, withheld upon, subject to setoff, preference action or fraudulent conveyance, or otherwise impaired for any reason whatsoever, in whole or in part, or (b) any portion of the Claim is scheduled (or re-scheduled) by FTX as unliquidated, contingent or disputed, or is scheduled (or re-scheduled) in an amount less than the Claim Amount, or (c) an order is entered in the Proceedings disapproving the transfer of all or any part of the Transferred Rights, or Purchaser is not substituted for Seller in respect of the Transferred Rights, or (d) payments or distributions are made in respect of the Transferred Rights that are, per dollar of claim, less in amount or different in nature or timing than payments or distributions on other general unsecured claims of the same class or type generally (any such event or occurrence, an "Impairment" with respect to the portion so affected), Seller shall pay immediately on demand of Purchaser cash in an amount equal to the amount of the Transferred Rights subject to the Impairment multiplied by the Purchase Rate, together with interest thereon at a rate of five (5) percent per annum from the date of this Agreement to the date of such payment. Purchaser's demand for such Impairment payment shall not be deemed an election of remedies or a limitation on any other rights that Purchaser may have hereunder or under applicable law. Seller further agrees to reimburse Purchaser for all losses, costs, and expenses, including reasonable legal fees and costs, incurred by Purchaser as a result of Purchaser's enforcement of its rights under this Section.

6.  Indemnification. Seller, but not Sellers directors, agrees to indemnify and hold Purchaser and its respective officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages and liabilities, including, without limitation, reasonable attorneys' fees and expenses which result or are threatened from (i) Seller's breach of any representation, warranty, covenant or agreement set forth herein and (ii) any obligation to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) the Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received, applied or effected by or for the account of Seller under or in connection with the Assigned Rights or otherwise from, against or on account of Debtor or any of its affiliates or any person or entity obligated in respect thereof.

7.  Distributions and Notices. Seller agrees that, if at any time after the Trade Date (whether before, on or after the Closing Date) Seller received or receives a Distribution, Seller shall accept and hold the same on behalf of and in trust for Purchaser, and that any and all Distributions, together with any and all proceeds thereon, are the sole property of Purchaser to which Purchaser has an absolute right. If Seller receives any cash or digital asset Distributions on account of the Transferred Rights, Seller agrees to take direction from Purchaser with respect to either forwarding such Distribution or endorsing any Distribution made by check, in either case within five business days after receipt thereof. In the event Seller fails to deliver any Distribution to Purchaser within five business days of Seller's receipt, Seller shall pay Purchaser interest on such Distribution at three percent per annum, from the date of Seller's receipt of such Distribution to the date of Purchaser's receipt. In the event Seller receives any non-cash or digital

asset Distribution on account of the Claim, Seller shall deliver the same to Purchaser, in the same form received, within ten business days, with the endorsement of Seller (without recourse, representation or warranty) or as may be required by a transfer agent or otherwise to transfer such non-cash or digital asset Distribution to Purchaser.  In the event Seller receives any notices or other documents in respect of the Transferred Rights, Seller shall promptly deliver the same to Purchaser; provided, however, in the event an objection to the Claim is received by Seller, Seller shall immediately notify Purchaser in writing of such objection.  In the event that all or any portion of the Distributions on account of the Transferred Rights are not assignable by Seller to Purchaser, then Seller grants to Purchaser a 100% undivided participation interest in the Transferred Rights or such Distributions, in accordance with the provisions of this Agreement and applicable law.  Purchaser and Seller agree that if the total amount of Distributions made on the Claim exceed the Purchase Price and/or the Claim Amount, the parties agree that Purchaser shall nevertheless be deemed the owner of the entire Claim, and Purchaser shall be entitled to retain, and shall not be under any obligation to pay Seller further consideration with respect to, any amounts that may be ultimately be recognized or distributed in excess of the Purchase Price and/or Claim Amount.

8. <u>Further Assurances</u>.

(a) Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents and to take all such further action in each case as may be reasonably necessary or reasonably appropriate and at Purchaser's sole cost and expense to: (a) effect the assignment of the Claim, (b) to assist Purchaser in enforcing the Claim and (c) to otherwise effectuate the intent of the Assignment. Seller agrees that Purchaser may file the EOT or Change of Address with the Bankruptcy Court and waives any notice or hearing requirements imposed by Federal Rule of Bankruptcy Procedure 3001, and stipulates that an order may be entered recognizing the assignment as an unconditional assignment and the Purchaser as the valid owner of the Claims.  Seller agrees that Purchaser may make corrections to the EOT or the Change of Address that Purchaser deems reasonably necessary or appropriate to effect the assignment.

(b) Seller hereby irrevocably appoints Purchaser as its true and lawful attorney-in-fact with respect to the Transferred Rights and authorizes Purchaser to act in Seller's name, place and stead, to demand, sue for, compromise and recover all such sums of money which are, or may hereafter become due and payable for, or on account of the Transferred Rights, to endorse any checks on account of Distributions or take any action necessary to cause Buyer to take possession of any Distribution, to vote the Claim and to file proofs of claim with respect thereto.  Seller hereby grants unto Buyer full authority to do all things necessary to enforce the Transferred Rights and Seller's rights thereunder; provided, however, Buyer shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Claim.  Seller agrees, upon Purchaser's request, to cooperate with Purchaser in connection with Purchaser's enforcement of the Claim, prosecution of any claims, suits or causes of action that Purchaser may have against any third-persons in respect of the Transferred Rights. Seller further agrees that it shall, as soon as possible, instruct Debtor and Debtor's counsel to update Seller's accounts, if applicable, to reflect Buyer as account holder and Seller hereby authorizes Buyer to request, demand, obtain and receive from any source all information related to such accounts. In no event shall the Seller's directors be personally responsible for any good faith representations or warranties surrounding the collectability and enforceability of the Claim.

9. <u>Miscellaneous</u>.

(a) <u>Further Transfers</u>.  Purchaser may resell or assign the Claim or other Transferred Rights or its participation interest in the Claim or other Transferred Rights, or any portion thereof, together with all right title and interest received by Purchaser in and to this Agreement without Seller's consent.  Seller

shall not assign or otherwise transfer its rights or obligations under this Agreement without the prior written consent of Purchaser, which shall not be unreasonably withheld.

(b) <u>Survival</u>.  All representations, warranties, covenants and agreements contained herein shall survive the Closing Date and the execution, delivery and performance of this Agreement and any sale, assignment, participation or transfer by Purchaser of any or all of the Transferred Rights, and shall inure to the benefit of Seller, Purchaser and their respective successors and assigns; <u>provided</u>, <u>however</u>, that the obligations of Seller and Purchaser contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied.

(c) <u>No Set-Off.</u>  Each payment to be made by either Party shall be made without set-off, counterclaim or deduction of any kind.

(d) <u>Governing Law, Venue</u>.  The laws of the State of Colorado shall govern this Agreement, without regard to any conflict of laws provisions thereof. The Parties hereby agree to subject all disputes arising out of or relating to this Agreement or the subject matter of this Agreement to the jurisdiction of the state courts of Colorado located within Boulder County and stipulate to personal jurisdiction in such court.

(e) <u>Counterpart Execution</u>.  This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all of which, together constitute one and the same instrument.  Transmission by facsimile or electronic mail of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

(f) <u>WAIVER OF JURY TRIAL</u>.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(g) <u>Notices; Payments by Wire Transfer</u>.  All demands, notices, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given when sent by electronic mail, hand-delivered or duly deposited in the mails, by certified or registered mail, postage prepaid-return-receipt requested, to the addresses set forth on <u>Schedule 1</u> hereto, or such other address as may be furnished hereafter by notice in writing.  All payments by Seller to Purchaser and Purchaser to Seller under this Agreement shall be made by wire transfer of immediately available funds to Seller and Purchaser, as applicable, in accordance with the wire instructions specified in <u>Schedule 1</u>.

(h) <u>Integration.</u>  The Assignment Documents, together with any schedules and exhibits hereto, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written, including any confidentiality agreements.  There are no warranties, representations or other agreements between the Parties in connection with the subject matter hereof except as specifically and expressly set forth herein.

(i) <u>Captions and Headings</u>. The captions and headings in this Agreement are for convenience only and are not intended to be full or accurate descriptions of the contents thereof. Such captions and headings shall not be deemed to be part of this Agreement and in no way define, limit, extend or describe the scope or intent of any provisions hereof.

(j) <u>Severability.</u> If any provision of this Agreement or any other agreement or document delivered in connection with this Agreement, if any, is partially or completely invalid or unenforceable in any jurisdiction, then that provision shall be ineffective in that jurisdiction to the extent of its invalidity or unenforceability, but the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, all of which shall be construed and enforced as if that invalid or unenforceable provision were omitted, nor shall the invalidity or unenforceability of that provision in one jurisdiction affect its validity or enforceability in any other jurisdiction.

(k) <u>Confidentiality</u>. Each Party agrees that except (A) as may be compelled by legal process, by an order, judgment or decree of a court of other governmental authority of competent jurisdiction, (B) disclosures to its own affiliates and its and their employees, managers, partners, professionals, members, trustees, agents or representatives directly involved in the transactions contemplated herein, as needed, or (C) as necessary to enforce this Agreement, and/or all or any part of the Transferred Rights, it shall not disclose to any person the existence of, or terms and conditions of, this Agreement or any document executed or delivered in connection herewith without the prior, written consent of the other Party, except that Purchaser may disclose this Agreement (but not the Purchase Price) to any prospective purchaser or transferee of all or any portion of the Transferred Rights; provided that such prospective purchaser or transferee shall agree to be bound by either the provisions of this Section or other provisions at least as restrictive as this Section.

(l) <u>Amendments; Waivers</u>. No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the Parties and no waiver of any provision of this Agreement, nor consent to any departure by either Party from it, shall be effective unless it is in writing and signed by the affected Party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No failure on the part of either Party to exercise, and no delay in exercising, any right hereunder or under any related document shall operate as a waiver thereof by such Party, nor shall any single or partial exercise of any right hereunder or under any other related document preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of each Party provided herein and in other related documents (A) are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law and (B) are not conditional or contingent on any attempt by such Party to exercise any of its rights under any other related documents against the other Party or any other entity.

(m) <u>Successors and Assigns.</u> The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective permitted successors and assigns.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Agreement as of the date first stated above.

**SELLER:**

By: _____
Name: Tim Hughes
Title: CEO


**PURCHASER:**

By: _____
Name: Darrell Daley
Title: Attorney/Authorized Agent

**SCHEDULE 1**

**Purchase Price**

Claim Amount:       $842,546
Purchase Rate:      47.47%
**Purchase Price:   $400,000**

Wire Instructions for Seller:

Bank Name: SPARKASSE BANK MALTA PLC
Beneficiary: CALICO CAPITAL LTD
IBAN: MT82SBMT55505000010000027806040
BIC: SBMTMTMTXXX
Seller Contact: Tim Hughes
Tel#: + 4 4 7 9 7 1 4 0 4 0 3 2

**SCHEDULE 2**

Your Unique Claim Confirmation ID of **3265-69-GBUDN-621182058** claim(s) were scheduled on the Schedules and Statements of FTX Europe AG as outlined in the following "FTX Non Customer Proof of Claim Form":

Annex A

**EVIDENCE OF TRANSFER OF CLAIM**

TO:  United States Bankruptcy Court for the District of Delaware (the "Court")

AND TO:  FTX Trading Ltd. and its affiliated debtors and debtors in possession ("Debtor") Case No. 22-11068 (JTD) (the "Case")

**SELLER Calico Capital Ltd. (Formerly TigerWit Limited)** ("Seller"), for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto:

**Sheridan Investment Holdings LLC**
**Attn: The Daley Law Firm LLC**
**4845 Pearl East Cir Ste 101**
**Boulder, CO 80301, US**

its successors and assigns **Sheridan Investment Holdings LLC** ("Buyer"), all rights, title and interest in and to the claims (the "Claims") of Seller against the Debtor the Court, or any other court with jurisdiction over Debtor's Case.

Seller hereby waives any objection to the transfer of the Claims to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the U.S. Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges, understands and agrees, and hereby stipulates that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Claims and recognizing the Buyer as the sole owner and holder of the Claims.

Buyer does not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claims or the Case. You are hereby directed to make all future payments and distributions free and clear of all setoffs and deductions, and to give all notices and other communications, in respect of the Claims to Buyer.

IN WITNESS WHEREOF, each of the undersigned have duly executed this Evidence of Transfer of Claim by their duly authorized representative dated December 4, 2023.

SELLER:

By: _____
Name: Tim Hughes
Title: CEO
Address: 100 Bishopsgate
London, EC2N 4AG


PURCHASER:

By: _____
Name: Darrell Daley
Title: Attorney/Authorized Agent

Annex B

**Notice of Change of Address**

December 1, 2023

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
Andrew G. Dietderich, dietdericha@sullcrom.com
James L. Bromley, bromleyj@sullcrom.com
Brian D. Glueckstein, gluecksteinb@sullcrom.com
Alexa J. Kranzley, kranzleya@sullcrom.com

Landis Rath & Cobb LLP
919 Market Street
Suite 1800
Wilmington, DE 19801
Adam G. Landis, landis@lrclaw.com
Kimberly A. Brown, brown@lrclaw.com
Matthew R. Pierce, pierce@lrclaw.com

FTX Trading Ltd. Claims Processing Center
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

RE: FTX TRADING LTD., et al, Case No. 22-11068 (JTD)

To Whom It May Concern:

Effective immediately, all future notices, payments, remittances, and disbursements concerning the claims of **Calico Capital Limited (formerly TigerWit Limited)  (Claim Confirmation # 3265-69-GBUDN-621182058)** should be sent to the following physical address and email address:

> **Sheridan Investment Holdings LLC**
> **Attn: The Daley Law Firm LLC**
> **4845 Pearl East Cir Ste 101**
> **Boulder, CO 80301, US**
> **darrell@daleylawyers.com**

    You are hereby directed to send all future distributions and correspondence to the address stated above.  This change of address should also be reflected on the official claims register for the above-referenced case.

Very truly yours,

By: _____
Name: Tim Hughes
Title: CEO

Annex C

## POWER OF ATTORNEY

Re: FTX TRADING LTD., et al. ("Debtor"), Case No. 22-11068 (JTD) (the "Case")

In connection with and pursuant to the conditions set forth in the Assignment Of Claim Agreement (the "Assignment") dated as of December 1, 2023, by and between **Calico Capital Limited** ("Seller") and **Sheridan Investment Holdings LLC** ("Purchaser"), the undersigned Seller hereby authorizes Purchaser, as attorney in fact for the undersigned Seller and with full power of substitution, to:

1. Demand, sue for, compromise and recover all sums of money, securities or digital assets which are, or may hereafter become, due and payable for or on account of the transferred Claims (as defined in the Assignment);

2. Attend any meetings, calls or presentations of the Debtor in the place of Seller and vote the Claims;

3. Settle, prosecute, compromise and/or defend the Claims;

4. Receive all notices, dividends and distributions or other payments in connection with the Claims and the Case;

5. Make any changes to the profile information in Seller's FTX accounts;

6. Otherwise take any steps that it considers necessary or desirable in connection with the Assignment (including, without limitation, preparing, submitting and/or amending any proof of claim or other document substantiating or evidencing the Claims).

Buyer agrees that any actions it takes in the Seller's name, place and stead shall fully comply with all applicable laws and regulations.

SELLER:

By: _____
Name: Tim Hughes
Title: CEO

PURCHASER:

By: _____
Name: Darrell Daley
Title: Attorney/Authorized Agent

**Annex A**

**EVIDENCE OF TRANSFER OF CLAIM**

TO: United States Bankruptcy Court for the District of Delaware (the "Court")

AND TO: FTX Trading Ltd. and its affiliated debtors and debtors in possession ("Debtor")
Case No. 22-11068 (JTD) (the "Case")

**SELLER Calico Capital Ltd. (Formerly TigerWit Limited)** ("Seller"), for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, does hereby unconditionally and irrevocably sell, transfer and assign unto:

Sheridan Investment Holdings LLC
Attn: The Daley Law Firm LLC
4845 Pearl East Cir Ste 101
Boulder, CO 80301, US

its successors and assigns **Sheridan Investment Holdings LLC** ("Buyer"), all rights, title and interest in and to the claims (the "Claims") of Seller against the Debtor the Court, or any other court with jurisdiction over Debtor's Case.

Seller hereby waives any objection to the transfer of the Claims to Buyer on the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest extent permitted by law any notice or right to a hearing as may be imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, the U.S. Bankruptcy Code, applicable local bankruptcy rules or applicable law. Seller acknowledges, understands and agrees, and hereby stipulates that an order of the Bankruptcy Court may be entered without further notice to Seller transferring to Buyer the Claims and recognizing the Buyer as the sole owner and holder of the Claims.

Buyer does not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claims or the Case. You are hereby directed to make all future payments and distributions free and clear of all setoffs and deductions, and to give all notices and other communications, in respect of the Claims to Buyer.

IN WITNESS WHEREOF, each of the undersigned have duly executed this Evidence of Transfer of Claim by their duly authorized representative dated December 4, 2023.

SELLER:

By: _____
Name: Tim Hughes
Title: CEO
Address: 100 Bishopsgate
London, EC2N 4AG

PURCHASER:

By: _____
Name: Darrell Daley
Title: Attorney/Authorized Agent