**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 15, 2024, at 1:00 pm (ET)** |
| | **Objection Deadline: April 17, 2024 at 4:00 pm (ET)** |

**MOTION TO VACATE THE ORDER GRANTING FTX DEBTORS'**
**MOTION TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS**
**WITH RESPECT TO NUGENESIS OU AND NUGENESIS PTY LTD**

NuGenesis Ou and NuGenesis PTY Ltd. (collectively, "NuGen"), by and through its undersigned counsel, hereby submit this motion to vacate ("NuGen Motion") the *Order Granting Motion of the Debtors to Estimate Claims Based on Digital Assets* (the "Estimation Order") [D.I. 7090] with respect to NuGen only, which granted the *Motion of the Debtors to Estimate Claims Based on Digital Assets* ("Estimation Motion") [D.I. 5202], filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of the NuGen Motion, NuGen respectfully states as follows:

## BACKGROUND

1.      NuGen is organized under Australian law. Its principal mission is to revolutionize the blockchain industry through innovative technology and a steadfast commitment to fostering global collaboration. NuGen's principles are deeply rooted in advancing the adoption of blockchain technology by creating decentralized solutions that empower individuals and organizations worldwide.

2.      NuGen, from a technical standpoint, operates within the blockchain domain, focusing on decentralized ledger solutions aimed at fostering robust, community-driven ecosystems. The company is engaged in the development of asset management systems built upon

blockchain technology, emphasizing the importance of decentralized governance and the active participation of its user base.  This approach reflects a commitment to leveraging blockchain for more than just financial transactions, extending into areas such as asset management, community growth, and even the ambitious planning of smart cities.  The essence of NuGen's work lies in creating a foundation that supports scalable, secure, and sustainable growth of decentralized networks, enabling users to have a stake in the ecosystem's development and governance.

3.      Nucoin, the cryptocurrency developed by NuGen, is a pivotal element of this ecosystem.  Unlike many digital currencies that are pre-mined, Nucoin is produced through a community-involved minting process, where over 400 individuals contributed resources to generate the coin.  This method underscores the company's ethos of community engagement and collective effort.  The minting and subsequent distribution mechanism of Nucoin is designed to ensure a fair allocation of resources, with portions of minted coins being directed to treasuries that support the network's advancement.  This not only aids in maintaining the liquidity necessary for the network's operation but also aids in increasing the overall value of the network. The technical infrastructure of NuGenesis, particularly with Nucoin, highlights a model where the blockchain is not just a technology for creating digital currencies but a platform for achieving decentralized governance and community empowerment.

4.      On July 15, 2023, NuGen filed proofs of claim asserting claims against the FTX Debtor.  On September 12, 2023, the NuGen creditors filed amended proofs of claim (the "NuGen Claims") against the FTX Debtors.  In fact, there were multiple NuGen Claims filed because the filed claims kept disappearing from the claims register.  A review of the claims register in these cases at the time of the filing of this Motion reflects that there are no NuGen Claims anywhere on

the claims register. So it's impossible to pin down claims numbers for the NuGen Claims at this time.

5.      On December 27, 2023 the Debtors' filed the Estimation Motion, which sought, among other things, estimation of NuGen's claims to $0.00. On December 30, 2023, NuGen received notice of the Estimation Motion via E-Mail, which included an Objection Deadline of January 11, 2024 and a hearing date of January 25, 2024 (which such date appears to have been incorrect). On January 1, 2024, a letter objection to the Estimation Motion, signed by the Founder and CEO Hussein Faraj of NuGen (the "NuGen Objection"), was mailed to the Court by NuGen, which was received by the Court on January 5, 2024, date stamped and entered on the docket at D.I. 5420.

6.      Kroll Restructuring Administration LLC ("Kroll") is the Debtors' claims and noticing agent per the order approving Kroll's retention as claims and noticing agent [D.I. 132], which specifically provides that "Kroll shall serve as the custodian of court records and shall be designated as the official repository for all proofs of claim filed in these Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim, unless otherwise ordered by the Court … ."

7.      On January 29, 2024, the Debtors filed the *Amended Notice of Agenda for Hearing Scheduled for January 31, 2024 at 10:30 a.m. (ET), Before the Honorable John T. Dorsey at the United States Bankruptcy Court for the District of Delaware, Located at 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801* (the "First January 31 Hearing Agenda") [D.I. 6797]. The First January 31 Hearing Agenda included the Estimation Motion as a matter going forward at the hearing and provided a list of filed objections and the objectors (the "Objectors") to the Estimation Motion contained in an Exhibit A ("Exhibit A to Agenda") to the

January 31 Hearing Agenda.  This Exhibit A clearly includes the NuGen Objection at item no. 32.

However, NuGen did not receive the First January 31 Hearing Agenda nor did it receive service

of the subsequently filed Amended Hearing Agenda (the "Second January 31 Hearing Agenda"),

which was filed on January 31, 2024.  The Affidavit of Service for the Second January 31 Hearing

Agenda (the "Hearing Affidavit of Service") was filed on February 10, 2024, [D.I. 7260].  The

Hearing Affidavit of Service states that on January 31, 2024, Kroll caused the Second January 31

Hearing Agenda was served via E-Mail on the Core/2002 service list maintained by Kroll.  In

addition, according to the Affidavit of Service, the January 31 Hearing Agenda was served via E-

Mail on the Objectors listed on Exhibit B (the "Objections Service List") to the Affidavit of

Service.  However, Exhibit B to the Affidavit of Service is blank except for a statement that due to

the confidential nature of the Debtors' records, the service list for the January 31 Hearing Agenda

has been redacted.  The statement in Exhibit B further provides that the Objections Service list will

be made available to the Court, the Office of United States Trustee ("OUST") and any Official

Committee upon request.  NuGen understands the confidential nature of creditor contact

information.  However, it makes literally no sense that this Affidavit of Service doesn't at least

include the names of the Objectors on the Objections List.  This is because the First January 31

Hearing Agenda, which was publicly filed, clearly lists all of the Objectors by name. In addition,

NuGen is listed on the minute entry/sign-in sheet for the January 31 Hearing.  However, the

Objectors' "sign-in" appears to be simply a pre-generated list of the Objectors based on the

Objectors list in the January 31 Hearing Agenda.

8.    Further compounding the service issues is the fact that on February 13, 2024, Kroll

filed an Affidavit of Service regarding service of the Debtors' reply memorandum in response to

the objections filed by the Objectors [D.I. 7349].  This Affidavit of Service includes a service list

for Objectors.  However, that Objectors Service list does <u>not</u> include NuGen, so clearly NuGen was not served with a critical piece of information for the January 31 Hearing.  Finally, the dial-in and video information that was circulated before the hearing was sent via E-Mail around 9:09 a.m.(ET) on January 31, 2024, (presumably the same time that the amended hearing agenda for the January 31 Hearing was served) which was approximately 1.5 hours before the January 31 Hearing.  The same E-Mail as received by NuGen reflects that it was sent at 12:09 a.m. (AT) on February 1, 2024.  A copy of this E-Mail is attached hereto and incorporated herein as **Exhibit A**.  In other words, accounting for the time difference between the U.S. and Australia, by the time the email was seen by NuGen on the morning of February 1, 2024, the January 31 Hearing had already been held and concluded. These myriad of notice and servicing issues calls into question all of the noticing around the January 31 Hearing and the Estimation Motion as such noticing concerns NuGen.

9.      On February 7, 2024, the Court entered the Estimation Order.  A review of the docket reflects that the entered Estimation Order was served on the Objectors, according to an Affidavit of Service filed by Kroll on March 4, 2024 [D.I. 8439] that includes an Objectors service list.  However, NuGen is not included on the Objectors service list and never received service of the entered Estimation Order.  NuGen did not find out about the entered Estimation Order until mid-March 2024 when it hired counsel and was provided with the entered Estimation Order.

### <u>JURISDICTION</u>

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). This Court has inherent jurisdiction to reconsider its prior orders.

## **RELIEF REQUESTED**

11.    NuGen hereby requests entry of an order modifying and/or vacating the Estimation Order <u>as to NuGen Only</u> pursuant to Fed. R. Civ. P. 60, made applicable here by Fed. R. Bankr. P. 9024.  Ample basis exists for entry of such an order.

## **BASIS FOR RELIEF**

12.    Subject to certain exceptions not relevant here, FRCP 60 "applies in cases under the Code." Fed. R. Bankr. P. 9024.  Pursuant to FRCP 60(b) " a court may relieve a party … from a final judgment, order, or proceeding for", *inter alia,* "excusable neglect … newly discovered evidence … misconduct by an opposing party … [because] applying [the judgment] prospectively is no longer equitable; or … any other reason that justifies relief." Fed. R. Civ. P. 60(b).

13.    "[I]t is well established that the Bankruptcy Court as a court of equity has the power to vacate an order or decree," *In re Johnson & Morgan Contractors*, 29 B.R. 372, 374 (Bankr. M.D. Pa. 1983), "or otherwise modify its own decree." *In re Lebanon Steel Foundry*, 48 B.R. 520, 523 (Bankr. M.D. Pa. 1985).  "The many subsections of" Fed. R. Civ. P. 60(b) "provide a broad spectrum in which bankruptcy judges can vacate prior orders," or aspects of orders.  *In re F.A. Potts & Co., Inc.*, 86 B.R. 853, 857 (Bankr. E.D. Pa. 1988). And, doing so falls within the Court's discretion.  *In re Eastern Sugar Antitrust Litig.*, 697 F.2d 524, 528 (3d Cir. 1982).  "[N]ot only does the Bankruptcy Court have the power to vacate a final judgment but also may exercise this power very liberally." *In re Durkalec,* 21 B.R. 618, 620 (Bankr. E.D. Pa. 1982). "The only criteria necessary is to 'accomplish justice.'" *Id.* (quoting *In re Burley, 11 B.R. 369* (Bankr. C.D. Cal.

1981), *rev'd on other grounds,* 27 B.R. 603 (B.A.P. 9th Cir. 1982), *rev'd,* 738 F.2d 981 (9th Cir. 1984)).

14.    NuGen seeks limited relief from the Estimation Order <u>as to NuGen only</u>. Specifically, NuGen seeks release from the Estimation Order, to which NuGen objected to on January 5, 2024, and the findings and conclusions that the NuGen Claims are valued at $0.00.  This limited relief is warranted for several reasons.

15.    The first basis for modifying and/or vacating the Estimation Order is newly discovered evidence.  Fed. R. Civ. P. 60(b)(2).  Here the newly discovered evidence is simple– it's entry of the Estimation Order, of which NuGen was unaware until the middle of March because it was not served on NuGen.  It's also the various filings and Affidavits of Service referenced above, all of which were filed weeks after the event giving rise to the noticing contained therein.  For example, the Affidavit of Service for service of the entered Estimation Order [D.I. 8439] was filed on March 4, 2024, which is approximately three (3) weeks after entry of the Estimation Order by the Court.

16.    The second basis for modifying and/or vacating the Estimation Order is "mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1).  To the extent that any neglect can be imparted on NuGen, that neglect is "excusable." Fed. R. Civ. P. 60(b)(1).  The "excusable neglect" standard is liberally construed, especially in those instances where the order or judgment forecloses trial on the merits of a claim. *See Logan v. Am. Cont. Bridge League*, 173 F. App'x 113, 116 (3d Cir. 2006) (noting cases in which Rule 60(b)(1) relief was granted where excusable neglect otherwise prevented a claim from being adjudicated on its merits); cf. George Harms Const. Co. v. Chao, 371 F.3d 156, 165 (3d Cir. 2004).  Whether the Court should grant NuGen relief from the Estimation Order as a result of excusable neglect rests on a balancing test, calling for consideration

of the following: (i) the danger of prejudice to the debtor, (ii) the length of the delay and its potential impact on judicial proceedings, (iii) the reason for the delay, including whether it was within the reasonable control of the movant, and (iv) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

17.     Here, of course, there is no prejudice to the Debtors by providing the relief requested herein.  First, there are claimants that were carved-out of the Estimation Order, and such claimants and the Debtors have a scheduling order for a litigation track regarding estimation of those claimants' claims – so the Debtors are still actively litigating claims estimations.  Second, the Examiner was just appointed and the Court entered an order concerning duties and scope of the examination on March 20, 2024.  The investigation by the Examiner will certainly take time, at least in the near term, during the pendency of the Debtors' cases. Therefore, there is little to no prejudice to the Debtors and the requested relief should be granted.

18.     Any delay in NuGen's effort to seek relief from the Estimation Order is minimal. NuGen did not receive the January 31 Hearing access information until February 1, 2024, and NuGen was not served with the Debtors reply memorandum, nor entry of the Estimation Order. As discussed earlier, NuGen wasn't even aware that the Estimation Order had been entered until the middle of March, when NuGen obtained counsel.  This Motion has been brought quickly since NuGen's discovery of the entry of the Estimation Order and subsequent discovery of the fact that NuGen did not receive the January 31 Hearing access information until February 1, 2024, and NuGen was not served with the Debtors reply memorandum, nor entry of the Estimation Order. Certainly, failure to receive adequate and appropriate notice and service is not the fault of the party that should receive notice, but rather the party whose duty it is to provide adequate notice and service. Here, that duty fell on the Debtors and its professionals.

19.     Finally, the Court should provide NuGen limited relief from the Estimation Order pursuant to Fed. R. Civ. P. 60(b)(6).  "In short, Rule 60(b)(6) is a reservoir of equitable power to do justice in particular cases where relief is warranted."  *In re Durkalec*, 21 B.R. 618, 620 (Bankr. E.D. Pa. 1982) (citing *In re Smith*, 3 B.R. 224, 229 (Bankr. E.D. Va. 1980)).  A court "should . . . grant[]" relief pursuant to Fed. R. Civ. P. 60(b)(6) when refusing to do so would "preclude[] an adjudication on the merits" and granting such relief is "'appropriate to accomplish justice.'" *Boughner v. Sec'y of Health, Educ. & Welfare,* U.S., 572 F.2d 976, 979 (3d Cir. 1978) (internal citations omitted).

20.     NuGen submits that the notice failures surrounding the January 31 Hearing and the Estimation Motion prevented it from pressing its objection to the Estimation Motion. This warrants justice and the modification and/or vacation of the Estimation Order in these chapter 11 cases <u>as to NuGen only</u>.

### <u>NOTICE</u>

21.     NuGen will provide notice of this motion to (a) counsel to the Debtors (b) the United States Trustee for the District of Delaware; (c) counsel to the Official Committee of Unsecured Creditors and (d) any party receiving electronic notice in these cases pursuant to Bankruptcy Rule 2002. NuGen submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, NuGen respectfully requests that the Court enter an order (i) granting this Motion in its entirety, (ii) granting NuGen the limited relief set forth herein, (iii) modifying and/or vacating the Estimation Order as to NuGen, and (iv) other relief as is proper and just.

Dated: April 3, 2024
Wilmington, Delaware

**GELLERT SCALI BUSENKELL &
BROWN LLC**

*/s/ Michael Busenkell*
Michael Busenkell (No. 3933)
1201 N. Orange St., Ste. 300
Wilmington, DE  19801
Phone: (302) 425-5800
Fax:     (302) 425-5814
mbusenkell@gsbblaw.com

*Counsel for NuGenesis Ou and NuGenesis
PTY Ltd*