## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** April 24, 2024 at 2:00 p.m. (ET)<br>**Objection Deadline:** April 17, 2024 at 4:00 p.m. (ET) |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE (I) DISMISSAL OF THE CHAPTER 11 CASES OF THE FOREIGN WIND DOWN ENTITIES AND (II) EQUITIZATION OR RELEASE OF CERTAIN INTERCOMPANY CLAIMS AND MAKING RELATED CAPITAL CONTRIBUTIONS

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 305(a), 349, 363 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing and approving the (i) dismissal of the Chapter 11 Cases of FTX Products (Singapore) Pte Ltd. ("FTX Products"), Liquid Securities Singapore Pte Ltd. ("Liquid Securities"), Analisya Pte Ltd. ("Analisya"), Quoine Vietnam Co. Ltd. ("Quoine Vietnam"), Alameda Aus Pty Ltd. ("Alameda Australia"), Alameda Research Pte Ltd. ("Alameda Singapore" and, together with FTX Products, Liquid Securities, Analisya, Alameda Australia and Quoine Vietnam, the "Funding Wind Down Entities"), Innovatia Ltd.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

("Innovatia"), FTX Japan Services K.K. ("FTX Japan Services") and Quoine India Pte Ltd.

("Quoine India" and, together with Innovatia, FTX Japan Services and the Funding Wind Down

Entities, the "Foreign Wind Down Entities"), and (ii) equitization, write-down, release or the

resolution of certain intercompany claims and capital contributions to the Funding Wind Down

Entities and non-Debtor MPC Technologies Pte Ltd. ("MPC").  Certain facts supporting this

Motion are set forth in the concurrently filed *Declaration of Steven P. Coverick* (the "Coverick

Declaration").  In support of the Motion, the Debtors respectfully state as follows:

## Preliminary Statement

1.      Since the commencement of these Chapter 11 Cases, the Debtors have

worked to identify Debtors with no material assets or liabilities and no prospects of commencing

any business activities in the future.  To date, upon request by the Debtors, this Court has

dismissed the Chapter 11 Cases of eight such immaterial entities.

2.      The Debtors now seek court approval to dismiss the Chapter 11 Cases of

nine additional immaterial foreign Debtors:  FTX Products, Liquid Securities, Analisya, Quoine

Vietnam, Alameda Australia, Alameda Singapore, Innovatia, FTX Japan Services and Quoine

India.  Each of these Foreign Wind Down Entities is dormant, has no active operations and has

no reasonable prospect of commencing any business activities in the future.

3.      In connection with these dismissals, the Debtors seek to make capital

contributions to certain Funding Wind Down Entities and MPC and to equitize, write-down,

release or otherwise resolve certain intercompany claims against certain Funding Wind Down

Entities and MPC.  These contributions, equitizations, write-downs, releases and resolutions are

necessary to allow the Funding Wind Down Entities and MPC to commence solvent liquidation

proceedings in accordance with applicable local law.  By commencing a solvent wind down of

- 2 -

the Funding Wind Down Entities, the Debtors anticipate saving significant compliance costs and administrative resources associated with continuing cross-border insolvency proceedings involving multiple jurisdictions.

4.       The dismissal of the Chapter 11 Cases of the Foreign Wind Down Entities is in the best interests of the Debtors and their estates.  A successful reorganization or resolution of the Foreign Wind Down Entities is not possible as there is no reasonable likelihood of rehabilitating their operations.  It is also not sensible to continue these nine Chapter 11 Cases and incur the associated administrative expenses without any corresponding benefit to the Debtors, their stakeholders or their estates.

### **Background**

5.       On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6.       Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

4872-3953-1177 v.6

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Facts Specific to the Relief Requested

### I.    FTX Products

7.    FTX Products is a wholly-owned subsidiary of FTX Trading and is

incorporated in Singapore.  FTX Products does not have any ongoing operations and is not

expected to commence revenue generating activities in the future.  *See* Coverick Decl. ¶ 6.

8.    Based on the Debtors' currently available books and records as of

December 31, 2023, FTX Trading holds a prepetition intercompany claim against FTX Products

of approximately $2,000 in relation to certain operating expenses paid on behalf of FTX

Products and a postpetition intercompany claim against FTX Products of approximately $2,000

in relation to certain operating expenses paid on behalf of FTX Products and Debtor West Realm

Shires, Inc. ("WRS") holds a postpetition intercompany claim against FTX Products of

approximately $4,000 in relation to U.S. Trustee fees and certain other operating expenses paid

on behalf of FTX Products.  No cash or other assets have been identified.  *See* Coverick Decl.

¶ 7.

9.    The Debtors expect that FTX Products will incur approximately $35,000

in liquidation costs.  In order to avoid an insolvent liquidation, in connection with the dismissal

of the Chapter 11 Case of FTX Products, the Debtors seek Court authorization to equitize, write-

down or otherwise release the intercompany claims of FTX Trading and WRS and provide an

equity contribution to FTX Products not to exceed $54,000.[2]  *See* Coverick Decl. ¶ 8.

---

[2]    The variance between the sum of the intercompany claims and the expected liquidation costs is due to unknown claims
against the Foreign Wind Down Entities and/or additional wind down costs above the estimated cost (applies throughout).

## II.    Liquid Securities

10.    Liquid Securities is a wholly-owned subsidiary of Debtor FTX Japan Holdings K.K. ("Japan Holdings") and is incorporated in Singapore.  Liquid Securities does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl. ¶ 9.

11.    Based on the Debtors' currently available books and records as of December 31, 2023, WRS holds a postpetition intercompany claim against Liquid Securities of approximately $1,000 in relation to U.S. Trustee fees paid on behalf of Liquid Securities and FTX Trading holds a postpetition intercompany claim against Liquid Securities of approximately $400 in relation to certain operating expenses paid on behalf of Liquid Securities.  No cash or other assets have been identified.  *See* Coverick Decl. ¶ 10.

12.    The Debtors expect that Liquid Securities will incur approximately $35,000 in liquidation costs.  In order to avoid an insolvent liquidation, in connection with the dismissal of the Chapter 11 Case of Liquid Securities, the Debtors seek Court authorization to equitize, write-down or otherwise release the intercompany claims of FTX Trading and WRS and provide an equity contribution to Liquid Securities not to exceed $54,000.  *See* Coverick Decl. ¶ 11.

## III.    Analisya

13.    Analisya is a wholly-owned subsidiary of Japan Holdings and is incorporated in Singapore.  Analisya does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl. ¶ 12.

14.    Based on the Debtors' currently available books and records as of December 31, 2023, WRS holds a postpetition intercompany claim against Analisya of

approximately $1,000 in relation to U.S. Trustee fees paid on behalf of Analisya and FTX

Trading holds a postpetition intercompany claim against Analisya of approximately $300 in

relation to certain operating expenses paid on behalf of Analisya.  No cash or other assets have

been identified.  *See* Coverick Decl. ¶ 13.

15.     The Debtors expect that Analisya will incur approximately $35,000 in

liquidation costs.  In order to avoid an insolvent liquidation, in connection with the dismissal of

the Chapter 11 Case of Analisya, the Debtors seek Court authorization to equitize, write-down or

otherwise release the intercompany claims of WRS and FTX Trading and provide an equity

contribution to Analisya not to exceed $54,000.  *See* Coverick Decl. ¶ 14.

## IV.     Quoine Vietnam

16.     Quoine Vietnam is a wholly-owned subsidiary of Debtor FTX Japan K.K.

and is incorporated in Vietnam.  Quoine Vietnam does not have any material ongoing operations

and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl.

¶ 15.

17.     Based on the Debtors' currently available books and records as of

December 31, 2023, Debtor Quoine Pte Ltd. holds a prepetition intercompany claim against

Quoine Vietnam of approximately $282,000 mainly in relation to an intercompany service

agreement between Quoine Pte Ltd. and Quoine Vietnam and FTX Japan K.K. holds a

prepetition intercompany claim against Quoine Vietnam of approximately $23,000 in relation to

certain operating expenses paid on behalf of Quoine Vietnam.  FTX Trading holds a postpetition

intercompany claim against Quoine Vietnam of approximately $32,000 in relation to funding

provided and certain operating expenses paid on behalf of Quoine Vietnam and WRS holds a

postpetition intercompany claim against Quoine Vietnam of approximately $2,000 in relation to

certain operating expenses and U.S. Trustee fees paid on behalf of Quoine Vietnam.  Quoine

Vietnam also has other payables to third parties relating to operating expenses of approximately

$6,000.  Quoine Vietnam holds approximately $558,000 of assets, including $300,000 of cash.

However, approximately $258,000 of those assets may not be immediately recoverable in a

liquidation as a result of prepaid expenses and other current assets not expected to be recovered

in a local liquidation process.  *See* Coverick Decl. ¶ 16.

18.     The Debtors expect that Quoine Vietnam will incur approximately

$35,000 in liquidation costs.  In order to avoid an insolvent liquidation, in connection with the

dismissal of the Chapter 11 Case of Quoine Vietnam, the Debtors seek Court authorization to

equitize, write-down or otherwise pay in cash the intercompany claims of Quoine Pte Ltd. and

FTX Japan K.K. and provide an equity contribution to Quoine Vietnam not to exceed

$62,000.  *See* Coverick Decl. ¶ 17.

## V.    Alameda Australia

19.     Alameda Australia is a wholly-owned subsidiary of Debtor Alameda

Research Ltd and is incorporated in Australia.  Alameda Australia does not have any ongoing

operations and is not expected to commence revenue generating activities in the future.  *See*

Coverick Decl. ¶ 18.

20.     Based on the Debtors' currently available books and records as of

December 31, 2023, WRS holds a postpetition intercompany claim against Alameda Australia of

approximately $1,000 in relation to U.S. Trustee fees paid on behalf of Alameda Australia.  No

cash or other assets have been identified.  *See* Coverick Decl. ¶ 19.

21.     The Debtors expect that Alameda Australia will incur approximately

$35,000 in liquidation costs.  In order to avoid an insolvent liquidation, in connection with the

dismissal of the Chapter 11 Case of Alameda Australia, the Debtors seek Court authorization to equitize, write-down or otherwise release the intercompany claims of WRS and provide an equity contribution to Alameda Australia not to exceed $54,000.  *See* Coverick Decl. ¶ 20.

**VI.    Alameda Singapore**

22.    Alameda Singapore is a wholly-owned subsidiary of Debtor Alameda Research Ltd and is incorporated in Singapore.  Alameda Singapore does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl. ¶ 21.

23.    Based on the Debtors' currently available books and records as of December 31, 2023, WRS holds a postpetition intercompany claim against Alameda Singapore of approximately $1,000 in relation to U.S. Trustee fees paid on behalf of Alameda Singapore and Debtor Alameda Research LLC holds a postpetition intercompany claim against Alameda Singapore of approximately $4,000 in relation to certain operating expenses paid on behalf of Alameda Singapore.  No cash or other assets have been identified.  *See* Coverick Decl. ¶ 22.

24.    The Debtors expect that Alameda Singapore will incur approximately $35,000 in liquidation costs.  In order to avoid an insolvent liquidation, in connection with the dismissal of the Chapter 11 Case of Alameda Singapore, the Debtors seek Court authorization to equitize, write-down or otherwise release the intercompany claims of WRS and Alameda Research LLC and provide an equity contribution to Alameda Singapore not to exceed $54,000.  *See* Coverick Decl. ¶ 23.

**VII.    Innovatia**

25.    Innovatia is a wholly-owned subsidiary of FTX Trading and is incorporated in Cyprus.  Innovatia was incorporated to act as parent company to Zubr, Exchange

- 8 -

Limited ("Zubr").  *See* Coverick Decl. ¶ 24.  The Debtors have already dismissed Zubr from these Chapter 11 Cases.[3]  Innovatia does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  *Id.*

26.     Based on the Debtors' currently available books and records as of December 31, 2023, WRS holds a prepetition intercompany claim against Innovatia of approximately $3,000 in relation to certain operating expenses paid on behalf of Innovatia and a postpetition intercompany claim of approximately $5,000 in relation to certain operating expenses and U.S. Trustee fees paid on behalf of Innovatia and FTX Trading holds a prepetition intercompany claim against Innovatia of approximately $9,000 in relation to certain operating expenses paid on behalf of Innovatia.  Innovatia holds approximately $10,295,000 of assets, including $37,000 of cash.  However, approximately $9,861,000 of those assets consist of goodwill and other intangible assets and will not be recovered in a local liquidation process. *See* Coverick Decl. ¶ 25.

27.     The Debtors expect that Innovatia will incur approximately $21,000 in liquidation costs.  In order to avoid an insolvent liquidation, in connection with the dismissal of the Chapter 11 Case of Innovatia, the Debtors seek Court authorization to equitize, write-down or otherwise release intercompany claims of FTX Trading and WRS.  *See* Coverick Decl. ¶ 26.

**VIII.   FTX Japan Services**

28.     FTX Japan Services is a wholly-owned subsidiary of FTX Trading and is incorporated in Japan.  FTX Japan Services does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl. ¶ 27.

---

[3]    See *Order Dismissing the Chapter 11 Cases of Debtors Liquid Financial USA, Inc., Liquidex LLC, Zubr Exchange Limited and DAAG Trading, DMCC* [D.I. 3739].

29.     Based on the Debtors' currently available books and records as of December 31, 2023, WRS holds a prepetition intercompany claim of approximately $400 against FTX Japan Services in relation to certain operating expenses paid on behalf of FTX Japan Services and a postpetition intercompany claim of approximately $6,000 in relation to certain other operating expenses and U.S. Trustee fees paid on behalf of FTX Japan Services and FTX Trading holds a prepetition intercompany claim against FTX Japan Services of approximately $45,000 in relation to excess funds transferred from FTX Trading to FTX Japan Services.  FTX Japan K.K. also holds a prepetition intercompany claim against FTX Japan Services of approximately $10,000 in relation to certain operating expenses paid on behalf of FTX Japan Services.  FTX Japan Services also has other prepetition liabilities of approximately $1,000. FTX Japan Services has a cash balance of approximately $751,000.  *See* Coverick Decl. ¶ 28.

30.     The Debtors expect that FTX Japan Services will incur approximately $69,000 in liquidation costs.  Once FTX Japan Services is wound down, it is expected to distribute approximately $620,000 to its parent, FTX Trading.  *See* Coverick Decl. ¶ 29.

## IX.    Quoine India

31.     Quoine India is a majority-owned subsidiary of Debtor FTX Japan K.K. and is incorporated in India.[4]  Quoine India does not have any ongoing operations and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl. ¶ 30.

32.     Based on the Debtors' currently available books and records as of December 31, 2023, Quoine Pte Ltd. holds a prepetition intercompany claim against Quoine India of approximately $3,077,000 primarily in relation to funds received on behalf of Quoine Pte Ltd. and WRS holds a postpetition intercompany claim against Quoine India of

---

[4]     Due to applicable local law requirements, a single share of Quoine India is owned by Fair Consulting India Private Limited. The remaining 1,099,999 shares are owned by Debtor FTX Japan K.K.

approximately $1,000 in relation to U.S. Trustee fees paid on behalf of Quoine India.  Quoine

India also owes approximately $47,000 to foreign vendors.  Quoine India holds approximately

$3,188,000 of cash and cash equivalent assets.  Quoine India is also subject to various regulatory

investigations in India.  *See* Coverick Decl. ¶ 31.

33.     The Debtors intend to dismiss the Chapter 11 Case of Quoine India and

wind down the entity on an insolvent basis.  *See* Coverick Decl. ¶ 32.

**X.     MPC**

34.     Non-Debtor MPC is a wholly-owned subsidiary of Debtor Maclaurin

Investments Ltd. and is incorporated in Singapore.  MPC does not have any ongoing operations

and is not expected to commence revenue generating activities in the future.  *See* Coverick Decl.

¶ 33.

35.     Based on the Debtors' currently available books and records as of August

31, 2023, Alameda Research LLC holds a postpetition intercompany claim against MPC of

approximately $9,000 in relation to certain operating expenses paid on behalf of MPC.  In

addition, MPC owes approximately $1,000 in penalties to regulators in Singapore and owes

approximately $2,000 in other payables to third parties in relation to the preparation of financial

accounts and tax filings.  *See* Coverick Decl. ¶ 34.

36.     The Debtors expect that MPC will incur approximately $63,000 in

liquidation costs.  In order to avoid an insolvent liquidation, the Debtors intend to equitize, write-

down or otherwise release the intercompany claim of Alameda Research LLC and provide an

equity contribution to MPC not to exceed $88,000.  *See* Coverick Decl. ¶ 35.

**Jurisdiction**

37.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 305(a), 349

and 1112(b) of the Bankruptcy Code.  Pursuant to Local Rule 9013-1(f), the Debtors consent to

the entry of a final order or judgment by the Court in connection with this Motion to the extent it

is later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments consistent with Article III of the United States Constitution.

**Relief Requested**

38.     By this Motion, the Debtors request entry of the Order, substantially in the

form attached hereto as Exhibit A, pursuant to sections 105(a), 305(a), 349, 363 and 1112(b) of

the Bankruptcy Code and Bankruptcy Rule 1017, dismissing the Chapter 11 Cases of the Foreign

Wind Down Entities, equitizing, writing-down or otherwise releasing certain intercompany

claims of Debtors against the Funding Wind Down Entities and MPC and making capital

contributions to the Funding Wind Down Entities and MPC.

**Basis for Relief**

I.      **The Dismissal of the Chapter 11 Cases of the Foreign Wind Down Entities Is
        Appropriate Under Section 1112(b) of the Bankruptcy Code.**

39.     A dismissal of a chapter 11 case is governed by section 1112(b) of the

Bankruptcy Code, which permits a party-in-interest, after notice and hearing, to seek to dismiss a

chapter 11 case in the best interests of the creditors and the estate for cause.  *See* 11 U.S.C.

§ 1112(b).  "Section 1112(b) requires a two-step process in which the court first determines

whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999)).

    A.    <u>Cause Exists to Dismiss the Foreign Wind Down Entities' Chapter 11 Cases.</u>

    40.    Whether cause exists to dismiss a chapter 11 case is determined on a case-by-case basis and is a decision within the sound discretion of the bankruptcy court. *See In re American Capital Equipment*, 688 F.3d at 161; *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007); *Sullivan Central Plaza I, Ltd.* v. *BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) ("Bankruptcy judges have wide discretion to determine whether cause exists to dismiss . . . a case under section 1112(b)."); *In re Gucci*, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994) ("The Bankruptcy Court has wide discretion to determine if cause exists, and how to ultimately dispose of the case.").

    41.    Courts have broad equitable discretion under section 1112(b) of the Bankruptcy Code to dismiss a chapter 11 case based on the particular facts and circumstances of the case. *See C-TC 9th Ave. P'ship* v. *Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 n.5 (2d Cir. 1997); *In re MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012); *Trident Assocs. Ltd. P'ship* v. *Metro Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995); *In re Smith*, 77 B.R. 496, 499-500 (Bankr. E.D. Pa. 1987).

42.     Section 1112(b)(4) of the Bankruptcy Code provides a list of certain circumstances that constitute "cause," including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4).  This is a two-part inquiry.  *See In re Orchard Hills Baptist Church Inc.*, 608 B.R. 309, 316 (Bankr. N.D. Ga. 2019); *In re Motel Properties, Inc.*, 314 B.R. 889, 895 (Bankr. S.D. Ga. 2004); *In re Sakon*, 617 B.R. 7, 15 (Bankr Ct. Dec. CRR).

43.     *First*, courts determine whether there is a substantial or continuing loss to or diminution of the estate.  This prong is generally satisfied if the debtor has a negative cash flow after commencement of the chapter 11 case.  See *In re Taub*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010); *In re Miell*, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009) (noting that "negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b)").  An inability to pay ongoing expenses combined with the absence of reliable income has equally been found sufficient to satisfy this test.  See *In re Taub*, 427 B.R. 208, 231 ("[a]nother indicator is the debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay."); *In re Creech*, 538 B.R. 245, 249 (Bankr. E.D.N.C. 2015) ("An inability to pay ongoing expenses, combined with an absence of reliable income, can establish cause."); *In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020) ("[c]ritically, courts have held that post-petition negative cash flow and an inability to pay current expenses evidence the continuing losses required under section 1112(b)(4)(A).").

44.     *Second*, if this inquiry is satisfied, courts inquire whether there is an absence of a reasonable likelihood of rehabilitation.  The rehabilitation standard is a different and more demanding standard than whether or not the debtor can be reorganized.  See *In re Andover Covered Bridge*, LLC, 553 B.R. 162, 175 (Bankr. Ct. Dec. CRR) (quoting *In re Brutsche*, 476

- 14 -

B.R. 298, 301 (Bankr. D.N.M. 2012) ("Rehabilitation is a different and . . . much more demanding standard than reorganization.")).  It requires a financially viable plan for continuing operations.  See *In re Woodruff*, 580 B.R. 291, 298 (Bankr. M.D. Ga. 2018).  There is no reasonable rehabilitation if the debtor will not generate cash flow meeting its current obligations.  See *In re Sillerman*, 605 B.R. 631, 656 (Bankr. S.D.N.Y. 2019).

45.    Additionally, the list in section 1112(b)(4) of the Bankruptcy Code is non-exhaustive.  Other circumstances may constitute sufficient "cause" as well.  *See* H.R. Rep. No. 595, 95th Cong., 1st. Sess. 405–06 (1978) (noting that the list in section 1112(b)(4) "is not exhaustive"); *see also In re SGL Carbon Corp.*, 200 F.3d at 160 (noting that "the legislative history and case law makes clear that in dismissing a chapter 11 case, the court will be able to consider other factors . . . and to use its equitable powers to reach an appropriate result in individual cases"); In fact, "[m]any of the grounds expressly identified in section 1112(b)(4) may not apply when a chapter 11 debtor seeks voluntary dismissal of its bankruptcy case."  *In re Brewery Park Assocs., L.P.*, 2011 WL 1980289, at *16 (Bankr. E.D. Pa. Apr. 29, 2011).

46.    One factor not explicitly listed in section 1112(b) of the Bankruptcy Code that courts have found constitutes cause for voluntary dismissal is the inability of a debtor "to effectuate a plan" or where there is not a "reasonable possibility of a successful reorganization within a reasonable period of time."  *In re American Capital Equipment*, 688 F.3d at 162 n.10 (3d Cir. 2012) ("the 'inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause [in section 1112(b)] are not exhaustive"); *see also Bronson* v. *Thompson (In re Bronson)*, 2013 WL 2350791, at *8 (B.A.P. 9th Cir. May 29, 2013) ("When it becomes apparent to the court that the debtor will not be able to confirm and effectuate a plan within the foreseeable future, the bankruptcy court should exercise its discretion under § 1112(b)

- 15 -

to dismiss or convert."); *In re Ramreddy, Inc.*, 440 B.R. 103, 113 n.26 (Bankr. E.D. Pa. 2009) (citation omitted) (noting that "[c]ourts have held that the inability to propose a feasible reorganization or liquidation plan, by itself, provides 'cause' for dismissal or conversion of a chapter 11 case on request of an interested party").

47.     In addition, in the context of a motion to dismiss a case under section 1112(b) of the Bankruptcy Code, the Third Circuit has repeatedly noted that the Supreme Court "has identified two of the basic purposes of chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy creditors.'" *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119. If neither of these purposes can be demonstrated, dismissal is proper. *Id.*

48.     The circumstances of the Foreign Wind Down Entities squarely constitute "cause" to dismiss their Chapter 11 Cases. *First*, "cause" exists because a successful reorganization or resolution of the Foreign Wind Down Entities is not possible. There is no prospect to successfully reorganize entities that are dormant or have historically been non-operational. *Second,* it is not economically sensible for the Foreign Wind Down Entities to continue in chapter 11. There are administrative costs and expenses associated with these entities remaining in chapter 11 and in insolvency proceedings in multiple jurisdictions without any corresponding benefits for creditors or stakeholders. Accordingly, the Debtors submit that sufficient cause exists for the dismissal of the Foreign Wind Down Entities' Chapter 11 Cases.

B.      Dismissal of the Foreign Wind Down Entities' Chapter 11 Cases Is in the Best Interests of the Creditors and the Estates.

49.     Once cause is established, a court must examine whether dismissal or conversion of a case to chapter 7 is in the best interests of the creditors and the estate. *In re American Capital Equipment*, 688 F.3d at 161. While the Bankruptcy Code does not define the "best interests of the creditors and the estate," "[t]he cases are uniform in holding that the

- 16 -

decision to dismiss or convert is within the bankruptcy court's discretion and is based on the facts.  It is a case-by-case decision." *In re Calrissian LP*, 2018 WL 3854004, at *2 (Bankr. D. Del. 2018); *see also In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) (noting that "courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interest of the creditors").

50.    Where a debtor is unable to effectuate a chapter 11 plan, dismissal is appropriate because "neither creditors nor the estate could conceivably benefit" from the continued adjudication of the chapter 11 proceedings.  *See In re American Capital Equipment*, 688 F.3d at 162, 163 (finding that the "best interest of creditors and the estate" warranted relief under section 1112(b) where "it is clear that . . . no future plan would be able to be effectuated under Chapter 11"); *Monsour Medical Center, Inc.* v. *Stein (In re Monsour Medical Center, Inc.)*, 154 B.R. 201, 207 (Bankr. W.D. Pa. 1993) (holding that dismissal of the debtor's chapter 11 case was in the best interests of the creditors and the debtor's estate because it was "highly unlikely that debtor will put together a confirmable plan of reorganization if it remains in bankruptcy").

51.    Further, a dismissal of a debtor's chapter 11 case meets the "best interests of creditors" test where a debtor has nothing left to reorganize or the debtor's assets are fixed and liquidated.  *See In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).

52.    Here, prolonging the Chapter 11 Cases of the Foreign Wind Down Entities under the existing circumstances would "only burden the estate with mounting attorney and

- 17 -

administrative fees." *In re Monsour Medical Center, Inc.*, 154 B.R. at 207.  In addition, the

dismissal of the Foreign Wind Down Entities' Chapter 11 Cases is warranted because the

alternative—conversion to chapter 7—would not serve the best interests of the Debtors' estates

and creditors, given the de minimis amount of assets to be administered and distributed by the

Foreign Wind Down Entities.  Similarly, conversion to a chapter 7 proceeding would not reduce

fees, time, and other costs associated with the Foreign Wind Down Entities' continuation in these

Chapter 11 Cases.  Managing chapter 7 cases in these jurisdictions would only pose a burden to

the estates.

> 53.    Further, the laws of Australia, Singapore, Vietnam, Cyprus, Japan and

India, where the Foreign Wind Down Entities are incorporated, provide for wind down or similar

proceedings to distribute the assets of the Foreign Wind Down Entities to their creditors in

accordance with local law.  Creditors who filed claims against the Foreign Wind Down Entities

in the Chapter 11 Cases will not be prejudiced as they will be able to pursue such claims directly

against the Foreign Wind Down Entities after dismissal of the Foreign Wind Down Entities'

Chapter 11 Cases.  Moreover, if the Foreign Wind Down Entities' Chapter 11 Cases were

converted to chapter 7 cases, the ability of the Debtors to reach assets located outside of the

United States for the benefit of creditors would be no different than in chapter 11.  Accordingly,

the Debtors respectfully submit that voluntary dismissal of the Foreign Wind Down Entities'

Chapter 11 Cases is in the best interests of the creditors and the estates.

## II.    Alternatively, the Court Should Dismiss the Foreign Wind Down Entities' Chapter 11 Cases Pursuant to Section 305(a) of the Bankruptcy Code.

> 54.    Section 305(a)(1) of the Bankruptcy Code provides that the "court . . . may

dismiss a case under [chapter 11], at any time if – (1) the interests of the creditors and the debtor

would be better served by such dismissal or suspension."  11 U.S.C. § 305(a)(1).  "The decision

4872-3953-1177 v.6

to abstain, either by suspension or dismissal, is committed to the Court's discretion." *In re Compania de Alimentos Fargo, S.A.*, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007).

55.     Courts look to the following *non-exhaustive* list of factors to gauge the best interests of the creditors and the debtor, including, among other things:  (a) economy and efficiency of administration; (b) whether federal proceedings are necessary to reach a just and equitable solution; (c) whether there is an alternative means of achieving an equitable distribution of assets; and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves the interests in the case.  *In re Crown Village Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009).

56.     In addition, courts have dismissed chapter 11 cases under section 305(a) of the Bankruptcy Code where (a) the case would not result in an economical and expeditious administration of the debtor's estate or (b) it is unlikely that the debtor could confirm a chapter 11 plan.  *See, e.g.*, *In re Xacur*, 219 B.R. 956, 969 (Bankr. S.D. Tex. 1998) (dismissing an involuntary chapter 11 case commenced against a Mexican debtor under section 305(a) where the chapter 11 proceeding would not "result in an economical and expeditious administration" of the debtor's estate because of "the doubtful enforceability of bankruptcy court orders"); *In re Monsour Medical Center, Inc.*, 154 B.R. at 207 (dismissing a debtor's chapter 11 case under section 305(a) where "it [was] highly unlikely that debtor will put together a confirmable plan of reorganization").

57.     Here, for the reasons stated above, dismissal under section 305(a) of the Bankruptcy Code is in the best interests of the creditors and the Debtors' estates.  Continuing the Chapter 11 Cases of the Foreign Wind Down Entities will result in the waste of estate resources and the unnecessary accumulation of fees.  Accordingly, dismissal of the Chapter 11 Cases for

the Foreign Wind Down Entities is in the best interests of both the creditors and the Debtors'

estates, and the Court should dismiss the cases pursuant to section 305(a) of the Bankruptcy

Code.

III.    **Alternatively, the Court Should Dismiss the Chapter 11 Cases of the Foreign Wind Down Entities Pursuant to Section 105(a) of the Bankruptcy Code.**

58.    Section 105(a) of the Bankruptcy Code provides the Court with

supplemental authority to effectuate the overall policy objectives of the Bankruptcy Code in

connection with a motion to dismiss a chapter 11 case.  *See* 11 U.S.C. § 105(a) ("[t]he Court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title.").

59.    Here, given the circumstances discussed above, the Debtors' focus with

respect to the Foreign Wind Down Entities must be to minimize the further incurrence of

administrative expenses.  The voluntary dismissal of the Chapter 11 Cases of the Foreign Wind

Down Entities accomplishes this goal.  Absent a dismissal, the Debtors would continue to incur

substantial chapter 11 administrative expenses.  Accordingly, the dismissal of the Chapter 11

Cases of the Foreign Wind Down Entities is consistent with the policy objectives of the

Bankruptcy Code and this Court should dismiss these cases.

IV.    **Capital Contributions and the Equitization, Write-Down, Release or Resolution of Intercompany Claims Are Necessary in Order to Ensure an Efficient Wind Down and Reflect a Sound Exercise of the Debtors' Business Judgment.**

60.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee,

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Courts should authorize a debtor's request

for relief under section 363(b) where a sound business purpose exists for doing so.  Courts within

the Third Circuit have relied upon *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983), for

- 20 -

the proposition that a debtor must provide a showing of "some articulated business justification

. . . for using, selling, or leasing property outside of the ordinary course of business . . ." *See,*

*e.g.*, *In re Olsen,* No. 14-11273, 2017 WL 3311218, at *7 (Bankr. D. N.J. July 20, 2017)

(quoting *In re Lionel Corp.*, 722 F.2d at 1071); *In re Grand Prix Assocs. Inc.*, No. 09-16545

(DHS), 2009 WL 1850966, at *4 (Bankr. D. N.J. June 26, 2009) (citing *In re Lionel Corp.*, 722

F.2d at 1071); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (same).

Generally, a court should be deferential to the determination of management, and where a debtor

"articulates a reasonable basis for its business decisions . . . , courts generally will not entertain

objections to the debtor's conduct."  *See In re Filene's Basement, LLC*, 2014 WL 1713416, at

*12 (Bankr. D. Del. Apr. 29, 2014) (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616

(Bankr. S.D.N.Y. 1986)).

61.    When a valid business justification exists, the law vests the debtor's

decision to use property out of the ordinary course of business with a strong presumption "that in

making a business decision the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company."

*Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985); *see also In re Tower Air, Inc.*, 416 F.3d

229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the

merits is a near-Herculean task.").

62.    Furthermore, section 105(a) of the Bankruptcy Code provides, in relevant

part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title."  11 U.S.C. § 105(a).

63.    The jurisdictions in which the Foreign Wind Down Entities and MPC are

incorporated apply different legal rules and procedures depending on whether the applicable

- 21 -

entity is performing a solvent wind down or an insolvent wind down.  *See* Coverick Decl. ¶ 36.

Solvent wind down proceedings are more cost-effective and efficient than insolvent wind down

proceedings for three primary reasons.  *First*, solvent wind downs typically avoid the significant

costs, delays and complications associated with in-court proceedings, which in turn will result in

less costs and delays.  *See* Coverick Decl. ¶ 37.  *Second*, the Debtors will avoid ongoing

monitoring and compliance costs with respect to the Funding Wind Down Entities and MPC

once they are wound down in accordance with applicable law.  *Id*.  *Third*, solvent wind downs

keep directors in good standing and able to continue with other Debtor directorships.  *Id*.

Funding the Funding Wind Down Entities and MPC by equitizing, writing-down or otherwise

releasing intercompany claims and/or making necessary capital contributions will be less

resource-intensive than attempting to conduct insolvent wind downs in a variety of foreign

jurisdictions with different regulatory regimes.  *See* Coverick Decl. ¶ 39.

      64.    In addition, many of the Funding Wind Down Entities are required to

undertake costly audits and/or file disclosures with local regulators.  *See* Coverick Decl. ¶ 38.

Absent orderly wind-downs, the Debtors will have to continue assisting the Funding Wind Down

Entities in these audits and in preparing the applicable disclosures on behalf of the Funding Wind

Down Entities, resulting in additional costs.  *Id*.  Furthermore, the Debtors have been assisting

the Funding Wind Down Entities with their respective communications with applicable

regulators.  The Debtors are aware that there may be penalties and fines levied against the

Funding Wind Down Entities which would require the Debtors to provide additional postpetition

funding and would result in additional intercompany claims against such entities.  *Id*.

      65.    Accordingly, in order to wind down the Funding Wind Down Entities and

lower ongoing and potential costs, the Debtors seek Court authorization, in their sound exercise

of business judgment, to equitize, write-down, release or otherwise resolve certain intercompany claims in an aggregate amount not to exceed $381,700 and to make capital contributions to the Funding Wind Down Entities and MPC in an aggregate amount not to exceed $420,000.  To the extent any excess funds remain after the wind down of any Funding Wind Down Entity, such excess funds shall be returned to the Debtor that provided the applicable capital contribution.

## V.    All Orders Should Remain in Effect for the Time Period Each Foreign Wind Down Debtor Was Part of the Chapter 11 Cases.

66.     The Debtors request that all stipulations, settlements, rulings, orders and judgments of the Court entered in these jointly administered Chapter 11 Cases remain in full force and effect and survive the dismissal of the Chapter 11 Cases of the Foreign Wind Down Entities solely with respect to the time period where each such Debtor was part of the Chapter 11 Cases.  Although section 349 of the Bankruptcy Code typically contemplates that dismissal will reinstate the prepetition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, the Court may "for cause, orde[r] otherwise."  11 U.S.C. § 349(b).  "[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'"  *Czyzewski* v. *Jevic Holding Corp.*, 137 S. Ct. 973, 984 (2017).

67.     The Debtors submit that cause exists to allow all stipulations, settlements, rulings, orders and judgments entered by the Court during the Chapter 11 Cases to be given continued effect for the time period where each Foreign Wind Down Debtor was part of the Chapter 11 Cases, notwithstanding the requested dismissal.  This relief is necessary to protect the Debtors and preserve the authority the Debtors had to act pursuant to the various orders entered by the Court including, but not limited to, any orders authorizing the Debtors and the Foreign Wind Down Entities to pay (a) prepetition wages, salaries and other compensation and benefits,

- 23 -

and reimbursable expenses, to employees and (b) prepetition trade claims of foreign (non-U.S.)

vendors.  Unless the Court orders otherwise, section 349 of the Bankruptcy Code could unravel

the effect and authorizations of the orders entered in the Chapter 11 Cases.  By allowing the

orders of this Court to remain in full force and effect and survive dismissal for the period of time

where the Foreign Wind Down Entities were part of the Chapter 11 Cases, the Court will

preserve the Debtors' authority to act pursuant to such orders notwithstanding dismissal of the

Chapter 11 Cases of the Foreign Wind Down Entities.

68.    The Court has granted relief similar to the relief requested herein with

respect to orders of the Court remaining in full force and effect and surviving dismissal of a

debtor's chapter 11 case.  *See, e.g.*, *In re VG Liquidation, Inc., et al.*, Case No. 18-11120 (JTD)

(Bankr. D. Del. Aug. 19, 2019) [D.I. 1183, 1184] (authorizing all prior orders of the court to

"remain in full force and effect, . . . be unaffected by the dismissal of the Chapter 11 Case, and

[be] specifically preserved for purposes of finality of judgment and *res judicata*"); *In re*

*BioAmber Inc.*, Case No. 18-11078 (LSS) (Bankr. D. Del. June 20, 2018) [D.I. 34] (same); *In re*

*St Alexius Properties, LLC*, Case No. 18-12527 (CSS) (Bankr. D. Del. Feb. 4, 2019) [D.I. 5]

(ordering that, notwithstanding section 349 of the Bankruptcy Code, all orders of the Court

entered "on or before the Dismissal Date shall remain in full force and effect and shall survive

the dismissal of the bankruptcy cases").

## **Notice**

69.    Notice of this Motion has been provided to:  (a) the U.S. Trustee;

(b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal

Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for

the District of Delaware; (g) all known creditors of the Foreign Wind Down Entities; and (h) to

4872-3953-1177 v.6

the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

The Debtors submit that, in light of the nature of the relief requested, no other or further notice

need be provided.

## <u>Conclusion</u>

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and

(b) grant such other and further relief as is just and proper.

Dated: April 3, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*