# **Exhibit B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 8215** |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF ANTHROPIC SHARES
FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES;
(II) AUTHORIZING AND APPROVING ENTRY INTO,
AND PERFORMANCE UNDER, THE PURCHASE AND
SALE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon (i) the motion (the "Motion")[2] of FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Sale Order"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving (a) procedures (the "Sale Procedures") for the sale of all or a portion of the shares of Series B Preferred Stock (the "Anthropic Shares") held by Debtor Clifton Bay Investments LLC in Anthropic, PBC, a Delaware public benefit corporation, (b) the sale(s) of the Anthropic Shares in accordance with the Sale Procedures free

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

and clear of any liens, claims, interests and encumbrances, and (c) redaction and filing under seal of certain confidential commercial information, (ii) this Court's order approving the Motion [D.I. 8215] (the "Sale Procedures Order"), and (iii) the Purchase and Sale Agreement (the "Purchase and Sale Agreement", and the transactions contemplated thereby, the "Sale Transaction"), dated as of March 22, 2024, a copy of which is attached as Exhibit 3 to the Sale Disclosures notice in accordance with the Sale Procedures, between Clifton Bay Investments LLC (together with the other Debtors, "Seller") and the purchasers listed on Schedule A to the Purchase and Sale Agreement (each, a "Purchaser" and together, "Purchasers"); and this Court having jurisdiction to consider the approval of the Purchase and Sale Agreement in accordance with the Sale Procedures pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and this matter in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Purchase and Sale Agreement and the relief requested therein has been provided in accordance with the Sale Procedures, Bankruptcy Rules and the Local Rules; and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the relief requested having been withdrawn, resolved or overruled on the merits; and upon the record of all of the proceedings had before this Court; and this Court having found and determined that the legal and factual bases establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.     Jurisdiction and Venue.  This Court has jurisdiction over this matter and over the property of the Debtors' estates pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court may issue a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.     Statutory and Rule Predicates.  The statutory and other legal predicates for the approvals and authorization herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, 9008 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.

C.     Final Order.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedures, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

D.     Compliance with the Sale Procedures.  The Sale Procedures provided a full, fair and reasonable opportunity for any party to make an offer to purchase the Anthropic Shares.  The disclosures made by the Debtors with respect to the Purchase and Sale Agreement

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* FED. R. BANKR. P. 7052.

and the Sale Transaction were good, complete and adequate.  The Debtors (including Seller), Purchasers and their respective counsel and other advisors have complied, in good faith, with the Sale Procedures Order and the Sale Procedures in all respects.  Through marketing efforts and a competitive sale process conducted in accordance with the Sale Procedures, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Anthropic Shares, (ii) provided potential purchasers sufficient information to enable them to make an informed judgment on whether to bid on the Anthropic Shares and (iii) considered any bids properly submitted in accordance with the Sale Procedures on or before the deadline for bidding.

   E. <u>No Collusion</u>.  No Purchaser is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The Purchase and Sale Agreement and the Sale Transaction were negotiated, proposed and entered into by Seller and each Purchaser without collusion or fraud, in good faith and from arm's-length bargaining positions, and are substantively and procedurally fair to all parties.  Neither the Debtors nor any Purchaser has engaged in any conduct that would cause or permit the Purchase and Sale Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code, and accordingly neither the Debtors nor any Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, no Purchaser has acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.  The Sale Transaction may not be avoided, and no damages may be assessed against any Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

F.    <u>Good Faith of Purchasers</u>.  Each Purchaser is purchasing its respective portion of the Anthropic Shares in good faith and for value, and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  Each Purchaser is therefore entitled to all of the protections afforded under section 363(m) and any other applicable or similar bankruptcy or non-bankruptcy law, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) each Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Anthropic Shares; (b) each Purchaser complied with the provisions in the Sale Procedures Order; (c) each Purchaser in no way induced or caused the filing of these Chapter 11 Cases by the Debtors; (d) all payments to be made, and all other material agreements or arrangements entered into or to be entered into, by each Purchaser in connection with the Sale Transaction have been disclosed; (e) no Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) the negotiation and execution of the Purchase and Sale Agreement were at arm's length and in good faith, and at all times each Purchaser and Seller were represented by competent counsel of their choosing; and (g) no Purchaser has acted in a collusive manner with any person.  Each Purchaser will be acting in good faith within the meaning of section 363(m) in closing the transactions contemplated by the Purchase and Sale Agreement.

G.    <u>Highest and Best Offer</u>.  The Debtors and their advisors, including, without limitation, Perella Weinberg Partners LP, have appropriately marketed the Anthropic Shares and conducted the related sale process contemplated by the Sale Procedures Order, and a reasonable opportunity has been given to any interested party to make a higher or better offer for the Anthropic Shares.  No other person or entity or group of entities has offered to purchase the Anthropic Shares for higher or otherwise better value to the Debtors' estates than Purchasers.

The offer to purchase the Anthropic Shares made by each Purchaser, under the terms and conditions set forth in the Purchase and Sale Agreement: (a) was made in good faith and complied in all respects with the Sale Procedures Order; (b) is the highest or otherwise best offer obtained for the Anthropic Shares and will provide a greater recovery for the Debtors' estates than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for the Anthropic Shares being conveyed to such Purchaser; (d) is fair and reasonable; (e) is in the best interests of the Debtors' estates; and (f) would not have been made by such Purchaser absent the protections afforded to such Purchaser by this Sale Order.

H.     The Debtors' determination that the Sale Transaction, pursuant to the Purchase and Sale Agreement, provides the highest or otherwise best offer for the Anthropic Shares, and their related decision to sell the Anthropic Shares, constitute a reasonable exercise of the Debtors' business judgment.  The facts and circumstances demonstrate the Debtors' business judgment to sell the Anthropic Shares to Purchasers at this time, and the Debtors have articulated sound business reasons for consummating the Sale Transaction and for selling the Anthropic Shares outside of a chapter 11 plan.  Moreover, the sale of the Anthropic Shares outside of a chapter 11 plan pursuant to the Purchase and Sale Agreement neither impermissibly restructures the rights of the Debtors' creditors nor dictates the terms of any chapter 11 plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan.  It is a reasonable exercise of the Debtors' business judgment to execute, deliver and consummate the Sale Transaction, subject to this Sale Order.

I.     <u>Fair Consideration</u>.  The consideration provided by each Purchaser pursuant to the Purchase and Sale Agreement constitutes reasonably equivalent value (as those

terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent

Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession or the

District of Columbia.

J.      <u>No Successor or Other Derivative Liability</u>.  As a result of any action

taken in connection with the Sale Transaction, the Purchase and Sale Agreement, or this Sale

Order: (a) no Purchaser is a successor to or mere continuation of or substantial continuation of

the Debtors or their estates and there is no continuity of enterprise between any Purchaser and

the Debtors; and (b) no Purchaser shall be deemed to be holding itself out to the public as a

continuation of the Debtors based on the Sale Transaction.  No Purchaser is, or shall be,

considered a successor in interest to any of the Debtors or their estates, by reason of any theory

of law or equity, and the Sale Transaction does not amount to a consolidation, succession,

merger, or de facto merger of any Purchaser and the Debtors and/or the Debtors' estates.  No

Purchaser would have entered into the Purchase and Sale Agreement if the sale of the Anthropic

Shares were not made free and clear of any successor liability of such Purchaser.

K.      <u>Corporate Power and Authority</u>.  As set forth in section 2.1 of the

Purchase and Sale Agreement, Seller (a) has full corporate power and authority to execute and

deliver the Purchase and Sale Agreement and all other documents contemplated thereby, (b) has

all corporate authority necessary to consummate the Sale Transaction, and (c) has taken all

corporate action and formalities necessary to authorize and approve the Purchase and Sale

Agreement and the consummation of the Sale Transaction.  Seller's sale of the Anthropic Shares

has been duly and validly authorized by all necessary corporate action of the Debtors.  No

consents or approvals, other than those expressly provided for in the Purchase and Sale

Agreement, are required for Seller to consummate the Sale Transaction.

        L.     The Purchase and Sale Agreement was not entered into for the purpose of

hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the

United States, any state, territory, possession or the District of Columbia.  Neither the Debtors

nor any Purchaser is entering into the Sale Transaction fraudulently for the purpose of statutory

and common law fraudulent conveyance and fraudulent transfer claims.

        M.    <u>Title to Assets</u>.  The transfer of the Debtors' rights, titles and interests to

the Anthropic Shares to each Purchaser will be, as of the Closing Date (as defined in the

Purchase and Sale Agreement), a legal, valid and effective transfer of such rights, titles and

interests in such Anthropic Shares, which transfer vests or will vest such Purchaser with all

rights, titles and interests of the Debtors to such Anthropic Shares free and clear of any Liens (as

defined below and in the Purchase and Sale Agreement), other than the permitted encumbrances

set forth in the Purchase and Sale Agreement (including restrictions arising under applicable

securities laws or as set forth in the Company Documents or the legends on certificates of the

Anthropic Shares) (such encumbrances, "<u>Permitted Encumbrances</u>").  The Purchase and Sale

Agreement is a valid and binding contract between Seller and each Purchaser and shall be

enforceable according to its terms.

        N.    <u>Satisfaction of Section 363(f) Standards</u>.  The conditions of section 363(f)

of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the

Debtors are authorized to transfer all of their rights, titles and interests in and to the Anthropic

Shares free and clear of any interest in the property, other than Permitted Encumbrances.  The

Debtors may sell the Anthropic Shares free and clear of any liens (statutory or otherwise),

charges, pledges, mortgages, leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first offer or first refusal, servitudes, restrictive covenants or conditions, encroachments, claims, interests, restrictions, or any other encumbrances of any kind (collectively, "Liens"), other than Permitted Encumbrances, against the Debtors, their estates or the Anthropic Shares because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Each holder with a Lien on the Anthropic Shares to be transferred pursuant to the Purchase and Sale Agreement: (a) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien; or (c) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Holders of Liens against the Debtors, their estates or the Anthropic Shares who did not object, or who withdrew their objections, to the Sale Transaction (except with respect to Permitted Encumbrances), are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens are adequately protected by having their Liens, if any, in each instance against the Debtors, their estates or the Anthropic Shares, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Anthropic Shares in which such creditor alleges a Lien, in the same order of priority, with the same validity, force and effect that such Liens had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

O.      No Purchaser would have entered into the Purchase and Sale Agreement or would consummate the Sale Transaction if the sale of the Anthropic Shares to such Purchaser were not free and clear of any Liens (other than Permitted Encumbrances), or if such Purchaser

or any of the applicable Purchaser Parties (as defined in the Purchase and Sale Agreement) would, or in the future could, be liable for any such Lien. The total consideration to be provided by each Purchaser under the Purchase and Sale Agreement reflects such Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Anthropic Shares free and clear of any Liens (other than Permitted Encumbrances). Not transferring the Anthropic Shares free and clear of any Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Anthropic Shares other than pursuant to a transfer that is free and clear of any Liens (other than Permitted Encumbrances) would be of substantially less benefit to the Debtors' estates.

P.     Release. The entry into a release by Seller on behalf of itself, and on behalf of its predecessors and successors, past and present agents, representatives, partners, directors, officers, attorneys, employees, shareholders, affiliates, subsidiaries, heirs, executors, administrators and assigns, as well as any person acting by, through, under or in concert with any of the foregoing (collectively, the "Releasors") in favor of Anthropic, PBC, and its predecessors and successors, past and present agents, representatives, partners, directors, officers, attorneys, employees, shareholders, affiliates, subsidiaries, heirs, executors, administrators and assigns, as well as any person acting by, through, under or in concert with any of the foregoing, (collectively, the "Releasees") in respect of any and all claims, demands, causes of action, obligations, damages, losses, liabilities, contracts, agreements, promises, debts, costs and expenses of any kind whatsoever, whether at law or in equity, asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent (collectively, "Claims"), which such party ever had, now has, or may claim to have against Anthropic, PBC, arising from the Sale

Transaction, but excluding any other Claims that the Releasors may have against Anthropic, PBC, including (a) any Claims arising out of Seller's acquisition or ownership of the Anthropic Shares, (b) any Claims arising in any Releasor's capacity as a shareholder of Anthropic, PBC and unrelated to the Sale Transaction and (c) any claims arising after the date the Sale Transaction is consummated (such release, the "Release") is approved in full. Anthropic, PBC would not have consented to the Sale Transaction in the absence of such releases, and therefore the releases are supported by adequate consideration and are reasonable. *See* Mendelsohn Declaration ¶ 22.

Q.    Waiver of Bankruptcy Rule 6004(h). Good and sufficient reasons for approval of the Purchase and Sale Agreement and the Sale Transaction have been articulated. The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtors' estates and progress these Chapter 11 Cases. Accordingly, there is cause to waive or lift the stay contemplated by Bankruptcy Rule 6004(h) with respect to the Sale Transaction. To maximize the value of the Anthropic Shares, it is essential that the Sale Transaction occur within the time constraints set forth in the Purchase and Sale Agreement. Time is of the essence in consummating the Sale Transaction and the Debtors and Purchasers intend to close the Sale Transaction as soon as practicable. Given all of the circumstances of these Chapter 11 Cases and

the adequacy and fair value of the Aggregate Purchase Prices under the Purchase and Sale

Agreement, the proposed Sale Transaction should be approved.][4]

R.      The consummation of the Sale Transaction is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including, without limitation,

sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such

sections have been complied with in respect of the transaction.

S.      Personally Identifiable Information.  The Sale Transaction does not

involve the sale of any personally identifiable information.  Thus, the appointment of a consumer

privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not

required with respect to the Sale Transaction.

T.      Legal and Factual Bases.  The legal and factual bases establish just cause

for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtors and

their estates.

IT IS HEREBY ORDERED THAT:

**A.      General Provisions**

1.      The sale of the Anthropic Shares and the other relief requested is granted

as set forth herein, and the Purchase and Sale Agreement and the provisions thereof and the Sale

Transaction are approved in their entirety as set forth herein.

2.      All objections, responses, reservations of rights and requests for any

continuances concerning the Sale Transaction are resolved in accordance with the terms of this

Sale Order.  To the extent any such objections, responses, reservations of rights or requests for

---

[4] Only to be included in the event no objections are filed.

any continuances were not otherwise withdrawn, waived, settled, or resolved, such are hereby

overruled and denied on the merits.  All interested parties that failed to timely object to the Sale

Transaction are deemed to have consented to the relief granted herein for all purposes, including,

without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.      Notice of the Purchase and Sale Agreement and the sale of the Anthropic

Shares free and clear of any Liens, except Permitted Encumbrances, was fair, equitable, proper,

and sufficient under the circumstances and complied in all respects with the Sale Procedures and

the Sale Procedures Order.

**B.      Approval of the Purchase and Sale Agreement**

4.      The Purchase and Sale Agreement and all of the terms and conditions

thereof are hereby authorized and approved in all respects.  The failure to specifically include or

make reference to any particular provision of the Purchase and Sale Agreement in this Sale

Order shall not impair the effectiveness of such provision, it being the intent of this Court that

the Purchase and Sale Agreement and the Sale Transaction are authorized and approved in their

entirety.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors

are authorized and empowered to take any and all actions necessary or appropriate to

(a) consummate the Sale Transaction to Purchasers in accordance with the terms and conditions

of the Purchase and Sale Agreement, (b) close the Sale Transaction as contemplated in the

Purchase and Sale Agreement and this Sale Order, and (c) execute and deliver, perform under,

consummate and implement the Purchase and Sale Agreement, together with all additional

instruments and documents that may be reasonably necessary or desirable to implement the

Purchase and Sale Agreement and the Sale Transaction.  No Purchaser shall be required to seek

or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase and Sale Agreement or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in, the Debtors, any holders of Liens in, against or on all or any portion of the Anthropic Shares (whether known or unknown), Purchasers and all successors and assigns of Purchasers, the Anthropic Shares and any trustees, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.  This Sale Order and the Purchase and Sale Agreement shall inure to the benefit of the Debtors, their estates and creditors, Purchasers and the respective successors and assigns of each of the foregoing.

## C.     Consummation of the Sale Transaction

7.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer all of their rights, titles and interests to each Purchaser's respective Anthropic Shares to such Purchaser on the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, titles and interests in such Anthropic Shares and shall vest such Purchaser with all of the Debtors' rights, titles and interests in such Anthropic Shares and, upon the Debtors' receipt of the applicable Aggregate Purchase Price, shall be free and clear of any Liens, including but not limited to, successor or successor-in-interest liability or, any tax liens or mechanic's liens asserted against such

Anthropic Shares, except Permitted Encumbrances, with any Liens to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens now have against such Anthropic Shares, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  The provisions of this Sale Order authorizing and approving the transfer of the Anthropic Shares free and clear of any Liens (other than Permitted Encumbrances) shall be self-executing, and neither the Debtors nor any Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.   The Release is approved in full.

8.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except Permitted Encumbrances.

9.     If any person or entity which has filed statements or other documents or agreements evidencing Liens in, against or on all or any portion of the Anthropic Shares shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and any other documents necessary for the purpose of documenting the release of any Liens which the person or entity has or may assert with respect to all or any portion of the Anthropic Shares, the Debtors, Purchasers and each of their respective officers, employees and agents are hereby authorized and empowered to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Anthropic Shares.

10.     This Sale Order is and shall be effective as a determination that, on the Closing Date, any Liens existing as to the Anthropic Shares prior to the Closing Date, except Permitted Encumbrances, shall have been unconditionally released, discharged and terminated from the Anthropic Shares, and that the conveyances described herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.

**D.**      **Prohibition of Actions Against Purchasers**

11.     Except as expressly provided for in this Sale Order or the Purchase and Sale Agreement, no Purchaser shall have any liability or other obligation or responsibility of the Debtors arising under or related to its respective Anthropic Shares prior to the Closing.  No Purchaser is a "successor" to the Debtors or their estates by reason of any theory of law or equity. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase and Sale Agreement, no Purchaser shall be liable for any claims against the Debtors or any of their predecessors or affiliates, and no Purchaser shall have any successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental (subject to paragraph 15 below), successor or transferee liability,

securities law, tax law, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, environmental liabilities (subject to paragraph 15 below), and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to any of such Purchaser's respective Anthropic Shares prior to the Closing.  The Sale Transaction does not amount to a consolidation, merger or de facto merger of any Purchaser, on the one hand, and the Debtors, the Debtors' affiliates and/or the Debtors' estates, on the other hand, and there is not substantial continuity between any Purchaser, on the one hand, and the Debtors or their affiliates, on the other hand, and no Purchaser is a mere continuation of the Debtors or their estates, and no Purchaser constitutes a successor to the Debtors or their estates.  For purposes of paragraphs 11 to 14 of this Sale Order, all references to a Purchaser shall include its respective Purchaser Parties.

12.    Except as expressly otherwise set forth in the Purchase and Sale Agreement and this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants and other creditors, holding Liens against or in all or any portion of the Anthropic Shares (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors or the Anthropic Shares prior to the Closing Date or the Sale Transaction, including the transfer of the Anthropic Shares to Purchasers, hereby are forever barred, estopped and permanently

enjoined from asserting against any Purchaser, its Affiliates, its successors or assigns, their property or the Anthropic Shares, such persons' or entities' Liens with respect to the Anthropic Shares, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against any Purchaser, its Affiliates, its successors, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any Purchaser, its Affiliates, its successors, assets or properties; (c) creating, perfecting or enforcing any Liens against any Purchaser, its Affiliates, its successors, assets or properties; (d) asserting any unexercised set-off or right of subrogation against any obligation due with respect to any Purchaser, its Affiliates or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or taken in respect thereof or (f) to the extent provided in section 525 of the Bankruptcy Code, revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate the businesses of Anthropic, subject to paragraph 16 below.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens in or on the Anthropic Shares (except Permitted Encumbrances), if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.

13.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Anthropic Shares to any Purchaser in accordance with the terms of the Purchase and Sale Agreement and this Sale Order, and (b) with the ability of any Purchaser to acquire and

take possession of the Anthropic Shares in accordance with the terms of the Purchase and Sale Agreement and this Sale Order.

14.     Each Purchaser has given substantial consideration under the Purchase and Sale Agreement for the benefit of the Debtors and their estates.  The consideration given by each Purchaser shall constitute valid and valuable consideration for the sale being free and clear of any potential liens, claims, interests, and encumbrances, including any Liens, as to the Anthropic Shares pursuant to this Sale Order, except with respect to the Permitted Encumbrances, and free and clear of any potential claims of successor liability against such Purchaser.  The consideration provided by Purchasers for the Anthropic Shares under the Purchase and Sale Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

## E.     Other Provisions

15.     Nothing in this Sale Order or the Purchase and Sale Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including the jurisdiction to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

16.     Further, nothing in this Sale Order or Purchase and Sale Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.  Nothing in this Sale Order authorizes any sale or transfer of the Anthropic

Shares, or permits the Sale Transaction to close, unless the Debtors comply with all applicable laws and regulations and obtain all necessary governmental approvals.

17.     Notwithstanding anything to the contrary in this Sale Order, nothing in this Sale Order constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis is expressly reserved.

18.     The consideration provided by each Purchaser to the Debtors pursuant to the Purchase and Sale Agreement for the Anthropic Shares constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

19.     The sale of the Anthropic Shares does not include the sale of any causes of action held by any of the Debtors against any person or entity, ~~including but not limited to~~and the sale of the Anthropic Shares and the Release do not include the sale or release of any causes of action held by any of the Debtors against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons.

20.     The Sale Transaction is undertaken by each Purchaser without collusion and in good faith, within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction unless such authorization and such Sale Transaction were duly stayed pending such appeal at the time of the

Closing.  Each Purchaser is a good faith buyer within the meaning of section 363(m) of the

Bankruptcy Code and, as such, is entitled to the full rights, benefits, privileges and protections of

section 363(m) of the Bankruptcy Code.  The Debtors and Purchasers will be acting in good faith

if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

21.    As a good faith purchaser of the Anthropic Shares, each Purchaser has not

entered into an agreement with any other potential bidders, and has not colluded with any other

bidders, potential bidders, or any other parties interested in the Anthropic Shares, and therefore,

neither the Debtors nor any successor-in-interest to the Debtors' estates shall be entitled to bring

an action against such Purchaser, and the Sale Transaction may not be avoided pursuant to

section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other

recovery pursuant to section 363(n) in respect of the Purchase and Sale Agreement or Sale

Transaction.

22.    Nothing contained in any plan of reorganization or liquidation, or order of

any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent Chapter 7 case into

which these Chapter 11 Cases may be converted or (c) any related proceeding subsequent to

entry of this Sale Order shall conflict with or derogate from the provisions of the Purchase and

Sale Agreement or the terms of this Sale Order.  In the event there is a conflict between this Sale

Order and the Purchase and Sale Agreement (or any ancillary agreements executed in connection

therewith), this Sale Order shall control and govern.  Likewise, all of the provisions of this Sale

Order are non-severable and mutually dependent.  To the extent that this Sale Order is

inconsistent with any prior order or pleading in these Chapter 11 Cases, the terms of this Sale

Order shall control.  Except as expressly provided herein, nothing contained in this Sale Order

shall modify, amend or waive any provision of any Company Document.

23.      [Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Sale Order shall be effective and enforceable immediately upon entry, the Debtors and Purchasers are authorized to close the Sale Transaction immediately upon entry of this Sale Order, subject to all the required governmental approvals having been obtained, and the 14-day stay provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply.]

24.      The failure specifically to include any particular provision of the Purchase and Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase and Sale Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

25.      The Purchase and Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, with prior written notice to the Committee, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any of the Debtors' creditors.  If the Purchase and Sale Agreement is modified, the Debtors shall file the modified version with the Court.

26.      This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Purchase and Sale Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.

Nothing contained herein shall be deemed a submission by Anthropic to the jurisdiction of the Bankruptcy Court.

27.     The Purchase and Sale Agreement shall be in full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

28.     No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Purchase and Sale Agreement)) shall apply to the Debtors' conveyance of the Anthropic Shares or this Sale Order.  Nothing in this Sale Order establishes a tax exemption under section 1146(a) of the Bankruptcy Code.

29.     The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

30.     Each Purchaser is a party-in-interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale Transaction and any issues related to or otherwise connected to the Purchase and Sale Agreement and the Sale Transaction.

31.     Subject to the Release, nothing in this Sale Order shall affect the obligations, if any, of the Debtors, Purchasers, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

32.     Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impairing or diminishing any right

(including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not the Anthropic Shares.

33.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _____
      Wilmington, Delaware                                                         The Honorable John T. Dorsey
                                                                     United States Bankruptcy Judge