**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: April 23, 2024 at 4:00 p.m. ET**<br>**Hearing Date: May 15, 2024 at 1:00 p.m. ET** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTORS TO ENTER INTO THE GLOBAL SETTLEMENT AGREEMENT
WITH VOYAGER, (B) APPROVING THE GLOBAL SETTLEMENT
AGREEMENT, AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order,

substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of

title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the

Debtors to enter into that certain Global Settlement Agreement, attached as Exhibit 1 to the

Order (the "Global Settlement Agreement"),[2] between and among (i) the Debtors, (ii) Voyager

Digital, Ltd., Voyager Digital Holdings, Inc., and Voyager Digital, LLC (collectively, the

"Voyager Debtors") in the chapter 11 cases captioned *In re Voyager Digital Holdings, Inc. et al.*,

No. 22-10943 (MEW) (Bankr. S.D.N.Y) (the "Voyager Bankruptcy Proceedings"), and (iii) HTC

Trading Inc. ("HTC", and with the Voyager Debtors, "Voyager"). In support of the Motion, the

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Global Settlement Agreement.

Debtors submit the *Declaration of John J. Ray III in Support of Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Enter into the Global Settlement Agreement with Voyager, (B) Approving the Global Settlement Agreement, and (C) Granting Related Relief* filed contemporaneously herewith (the "<u>Ray Declaration</u>") and respectfully state as follows:

<u>**Preliminary Statement**</u>

1.      The Global Settlement Agreement is another important step in these chapter 11 cases, providing a comprehensive resolution of numerous complex disputes between the Debtors and Voyager without the cost and delay of litigation, including (i) Voyager's claims arising from its loans to the Debtors and from the asset purchase agreement between WRS and Voyager terminated following the Debtors' collapse, and (ii) the Debtors' claims for avoidance of transfers made to Voyager as preferences.

2.      The Global Settlement Agreement provides that the Debtors and Voyager will grant mutual releases fully resolving all claims and disputes between and among them.  The Debtors believe that their preference claims have merit and ultimately would be allowed as administrative expense claims in the Voyager Bankruptcy Proceedings, and that Voyager's claims against the Debtors are without merit.  However, as has been publicly announced, the Debtors expect non-governmental general unsecured claims against their estates, including replacement claims under section 502(h) of the Bankruptcy Code, to be valuable, resulting in a dramatically lower expected net value of those preference claims to the Debtors' estates. Moreover, the Debtors' preference claims involve complex and novel issues of fact and law that would require extensive time and expense to litigate to judgments.

3.      At the same time, Voyager's purported claims, asserted in an amount no less than $130 million, carry some degree of risk and in any event would also be time-consuming and expensive to litigate, and would need to be addressed in connection with the Debtors' plan

confirmation process, through litigation and, if unresolved, by maintaining a claims reserve. Therefore, the Debtors' entry into the Global Settlement Agreement, which avoids costly, time-consuming and uncertain litigation, is in the best interests of the Debtors' estates and all of their stakeholders and is well within the range of reasonableness. The Committee supports the proposed settlement as set forth in the Global Settlement Agreement. Accordingly, the Motion should be granted and the Global Settlement Agreement approved.

### Background

4.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases" or the "FTX Bankruptcy Proceedings") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

5.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order"). The Non-Customer Bar Date Order established, among other things, June 30, 2023 as the deadline to file proofs of claim for Non-Customer Claims (*i.e.*, any claim other than a Customer Claim (as defined below)) and proofs of

---

[3]      November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

interest and September 29, 2023 as the deadline by which government units must file proofs of claim.

6.      On June 28, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order"), setting the deadline for customers to file proofs of claim on account of Customer Claims as September 29, 2023.

7.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### **Jurisdiction**

8.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **Relief Requested**

9.      By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing the Debtors to enter into the Global Settlement Agreement, (b) approving the Global Settlement Agreement, and (c) granting certain related relief.

## **Facts Specific to the Relief Requested**

10.      Beginning in September 2021, Voyager provided certain cryptocurrency loans to Alameda Research, Ltd. ("<u>Alameda</u>") under that certain master loan agreement, dated September 2, 2021 (the "<u>Voyager Loan Facility</u>").

11.      On July 5, 2022, the Voyager Debtors filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "<u>SDNY Bankruptcy Court</u>") initiating the Voyager Bankruptcy Proceedings.

12.      On September 27, 2022, Voyager Digital, LLC ("<u>Voyager Digital</u>") and West Realm Shires Inc. ("<u>WRS</u>") entered into an asset purchase agreement (as amended, the "<u>FTX APA</u>"), pursuant to which WRS agreed to purchase substantially all of the assets of Voyager through the Voyager Bankruptcy Proceedings, and on October 20, 2022, the SDNY Bankruptcy Court approved Voyager Digital's entry into the FTX APA.

13.     Over the course of September and October 2022, Alameda repaid at Voyager's request all loan amounts outstanding under the Voyager Loan Facility in the approximate amount of $445 million[4] (collectively, the "Loan Repayments").

14.     On October 3, 2022, the Debtors filed proofs of claim against the Voyager Debtors in the Voyager Bankruptcy Proceedings (collectively, the "FTX Proofs of Claim," and the claims asserted therein, together with the Preference Claims (as defined below), the "FTX Claims").

15.     Following the collapse of the Debtors, on November 10, 2022, WRS agreed to release Voyager Digital from certain no-shop restrictions under the FTX APA.

16.     On January 10, 2023, WRS and Voyager entered into a stipulation providing for the mutual termination of the FTX APA.

17.     On January 30, 2023, Alameda and FTX Trading Ltd. brought an adversary proceeding in the FTX Bankruptcy Proceedings, filing a complaint against Voyager Digital and HTC seeking to avoid and recover under sections 547 and 550 of the Bankruptcy Code the Loan Repayments and certain other transfers, styled as *Alameda Research Ltd., et al. v. Voyager Digital, LLC, et al.*, FTX Adv. Proc. No. 23-50084 (JTD) (Bankr. D. Del Mar. 2, 2023) (the "Voyager Adversary Proceeding" and the claims asserted therein, the "Preference Claims").

18.     On February 22, 2023, the Debtors and Voyager entered into the *Joint Stipulation and Agreed Order Between the Debtors, the FTX Debtors, and Their Respective Official Committees of Unsecured Creditors*, which stipulation was approved by (i) the Delaware Bankruptcy Court at Dkt. No. 833 in the FTX Bankruptcy Proceedings, and (ii) the SDNY Bankruptcy Court at Dkt. No. 1266 in the Voyager Bankruptcy Proceedings, pursuant to which,

---

[4]     Calculated using transfer date pricing.

among other things, the parties agreed to participate in non-binding mediation with respect to all claims and disputes between or among them (the "February 2023 Stipulation").

19.     On May 19, 2023, Voyager's chapter 11 plan went effective, and the Voyager plan administrator was appointed to manage and wind-down the Voyager Debtors' affairs.

20.     On June 30, 2023, Voyager filed claims against the Debtors in the FTX Bankruptcy Proceedings (collectively, the "Voyager Proofs of Claim," and the claims asserted therein, the "Voyager Claims"), asserting claims for, among others, damages arising from Alameda's alleged fraudulent inducement and breach of the Voyager Loan Facility, and WRS's alleged breach of the FTX APA in an amount of no less than $130 million.

21.     Pursuant to the February 2023 Stipulation, since October 2023, the Debtors (along with the Committee) and Voyager have been engaged in non-binding mediation in connection with the various disputes between them conducted by the Honorable Shelley C. Chapman (Ret.) through which the parties negotiated and agreed to the terms of a settlement of all claims and disputes between them that is documented in the Global Settlement Agreement. Ray Decl. ¶ 4.

22.     The terms of the Global Settlement Agreement generally provide, among other things, that on effectiveness of the Global Settlement Agreement:[5]

- Voyager waives and releases for all purposes all claims (as defined in 11 U.S.C. § 101(5)) against the Debtors, including the Voyager Claims, and Voyager shall take no further action in the Debtors' chapter 11 cases, provided that the Debtors and Voyager will meet and confer with respect to certain third-party discovery deemed necessary by the Plan Administrator in the exercise of its fiduciary duties;

---

[5]   Any summary of the Global Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Global Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Global Settlement Agreement, the actual terms and conditions of the Global Settlement Agreement shall control.

- Voyager agrees not to attempt to otherwise recover with respect to the subject matter of any Claims that were or could have been asserted in the Voyager Proofs of Claim or otherwise attempt to receive a distribution from the United States Government from any forfeited assets relating in any way to the FTX Debtors or Mr. Samuel Bankman-Fried;

- The applicable Debtors shall dismiss with prejudice the Voyager Adversary Proceeding;

- The Debtors waive and release for all purposes all claims against Voyager, including the Preference Claims and other FTX Claims;

- The $5 million deposit provided by WRS to Voyager in connection with the FTX APA and held in escrow by Voyager shall be fully and finally released to Voyager and the Debtors shall relinquish any and all rights thereto; and

- The $445 million reserved and held by Voyager in connection with the Debtors' asserted preference claims in the Voyager Adversary Proceeding shall be fully and finally released to Voyager and the Debtors shall relinquish any and all rights thereto.

## <u>Basis for Relief</u>

### I. The Global Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors' Best Interests

23.    Given the complexity of the disputes between the parties and the associated cost and uncertainty of resolving each and every one of those disputes, informed by the current projections that replacement claims arising under section 502(h) of the Bankruptcy Code will be valuable, thus dramatically lowering expected net value of the Debtors' preference claims against Voyager, the Debtors have determined that, in its totality, entry into the Global Settlement Agreement is in the best interests of the Debtors and their estates.  Ray Decl. at ¶¶ 6-9.

24.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

25.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006).  "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co*., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968)).

26.    "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs*., 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)).  Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

27.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the Martin factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

28.     The Global Settlement Agreement is in the best interests of the Debtors' estates because it avoids costly and time-consuming litigation of the various and complex disputes between the parties, including with respect to the Preference Claims, which, even if successful, have reduced and uncertain value to the Debtors net of any resulting replacement claim arising under section 502(h) of the Bankruptcy Code, while eliminating the risks of any unfavorable litigation outcome. Ray Decl. at ¶ 7.

29.     Accordingly, and as further described below, the compromises set forth in the Global Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

30.     **The Probability of Success in Litigation**. The Debtors maintain that the Preference Claims are meritorious and are prepared to litigate the merits of those claims in this

Court, as necessary.  However, Voyager may be able to assert numerous defenses to the merits of

the Preference Claims, including defenses that are specific to the facts surrounding the relevant

transfers.  As a result, the outcome of litigation involving numerous claims and defenses is

uncertain. Ray Decl. at ¶ 7.

31.     Moreover, even if the Debtors were successful on the merits of the

Preference Claims, as described above, the Debtors expect recoveries for general unsecured

claims, including replacement claims under section 502(h) of the Bankruptcy Code, to be

significant.  As recoveries for unsecured creditors increase, the net value of the Debtors'

preference claims against Voyager decreases.  The Debtors considered the costs and benefits to

continuing to pursue the Preference Claims in that context, and concluded that the Global

Settlement Agreement is in the best interests of the Debtors' estates and their stakeholders.  Ray

Decl. ¶¶ 6, 9.

32.     In addition, while the Debtors dispute Voyager's claims, absent the Global

Settlement Agreement, there is risk that, if litigated, Voyager would be entitled to valuable

allowed claims in the Debtors' Chapter 11 Cases.  Those claims are instead being released in the

Global Settlement Agreement.

33.     Any litigation of the merits of the parties' claims against each other would

present significant uncertainties for the Debtors and their estates.  The settlement set forth in the

Global Settlement Agreement provides certainty to the Debtors through a fair and final

resolution of the Voyager Claims without the risk of any value being paid on those claims.

34.     **The Complexity of the Litigation and the Attendant Expense,**

**Inconvenience, and Delay**.  Litigation of the Preference Claims and the Voyager Claims would

be complex, expensive and involve a significant amount of time and resources.  Settlement

negotiations were vigorous and it was clear that, in the absence of a deal, both the Debtors and

Voyager are well-funded and ready to litigate the issues on behalf of their respective

stakeholders.  Indeed, the disputes would require document and testimonial discovery, expert

reports, and briefing on numerous legal and factual issues including, but not limited to, the

parties' course of dealing, the application of section 548 of the Bankruptcy Code, and the

solvency of FTX and Alameda at the time of the relevant transfers.

35.    Moreover, the law governing "dueling debtor" situations is under-

developed and uncertain and the litigation costs of pursuing complex litigation would be even

greater than in a typical bankruptcy litigation.  Not only would the Debtors incur costs of

attorneys, financial consultants and expert witnesses, but the Debtors also would bear the cost of

attorneys and advisors for the Committee who would be closely involved in the litigation.  Ray

Decl. at ¶ 8.  Absent prompt resolution, the Debtors would also need to reserve for the Voyager

Claims.  The Global Settlement Agreement eliminates these costs and avoids the need to address

the Voyager Claims in connection with the Debtors' plan confirmation process.

36.    **The Paramount Interests of Creditors**.  The Global Settlement

Agreement is in the best interests of the Debtors' estates and their creditors because, as discussed

above, approval of the Global Settlement Agreement resolves complex disputes between the

parties that would otherwise have involved costly and time-consuming litigation with uncertain

outcome and net recovery by providing for the resolution of all disputes between the parties.  As

such, in the Debtors' business judgment, the value of entering into the Global Settlement

Agreement exceeds the net benefits that the Debtors and their estates likely would obtain from

continuing on the alternative litigation path.  Ray Decl. at ¶ 9.

37.    The Debtors submit that the Global Settlement Agreement satisfies

Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their

estates, and their stakeholders.  As a result, the Debtors respectfully submit that the Global

Settlement Agreement satisfies the *Martin* factors and request that the Court approve the Global

Settlement Agreement and authorize the Debtors to enter into it.

## Waiver of Bankruptcy Rule 6004(h)

38.     Given the nature of the relief requested herein, the Debtors respectfully

request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy

Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral

is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."

For the reasons described above, the relief requested is essential to maximize the value of the

Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent

applicable.

## Reservation of Rights

39.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an

assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as

to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive,

or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or

amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice,

waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all

claims or causes of action against any third party.

## Notice

40.     Notice of this Motion has been provided to: (a) the U.S. Trustee;

(b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal

Revenue Service; (e) the Department of Justice; (f) the United States Attorney for the District of

Delaware; (g) counsel to Voyager; and (h) to the extent not listed herein, those parties requesting

notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be provided.

<u>Conclusion</u>

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A,</u> and

(b) grant such other and further relief as is just and proper.

Dated: April 9, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        bellerb@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*