IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JOHN J. RAY III IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO THE GLOBAL SETTLEMENT AGREEMENT WITH VOYAGER, (B) APPROVING THE GLOBAL SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

I, John J. Ray III, hereby declare as follows:

1. I am the Chief Executive Officer of FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), having accepted this position on November 11, 2022. I am over the age of 18 and authorized to submit this Declaration on behalf of each of the Debtors.

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Enter into the Global Settlement Agreement with Voyager, (B) Approving the Global Settlement Agreement, and (C) Granting Related Relief* (the "Motion").[2]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge, information and belief, or my opinion based upon experience,

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

knowledge and information concerning the Debtors; (ii) information learned from my review of relevant documents; and/or (iii) information supplied by persons working directly with me or under my supervision, direction or control and/or from the Debtors' professionals and advisors. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

4. Pursuant to the February 2023 Stipulation, since October 2023, the Debtors (along with the Committee) and Voyager have engaged in non-binding mediation in connection with the various disputes between them conducted by the Honorable Shelley C. Chapman (Ret.) through which the parties negotiated and agreed to the terms of a settlement of all claims and disputes between them that is documented in the Global Settlement Agreement.

5. The Global Settlement Agreement provides for a global resolution of all claims and disputes between the parties including, among other things, that Voyager shall waive and release for all purposes all claims held against the Debtors, including the Voyager Claims, and take no further action in the FTX Chapter 11 Cases. Voyager also shall not attempt to otherwise recover with respect to their Claims or attempt to receive distribution from the United States Government from any forfeited assets relating in any way to the Debtors or Mr. Samuel Bankman-Fried. In exchange, the Debtors shall (i) waive and release for all purposes all claims against Voyager, including the Preference Claims and other FTX Claims, (ii) dismiss with prejudice the Voyager Adversary Proceeding, (iii) release to Voyager the $5 million deposit provided by WRS to Voyager in connection with the FTX APA and held in escrow by Voyager, and (iv) release to Voyager the $445 million reserved and held by Voyager in connection with the Debtors' asserted preference claims in the Voyager Adversary Proceeding.

6. It is my view that the Global Settlement Agreement is the result of good faith arm's-length negotiations between the parties and that such negotiations were free of any collusion. Settlement negotiations were vigorous and it was clear to me that in the absence of a deal both the Debtors and Voyager are well-funded and ready to litigate the issues on behalf of their respective stakeholders. It is my further view that the terms of the Global Settlement Agreement are fair to the Debtors and the Debtors' stakeholders, consummation of the settlement is in the best interests of the Debtors and the Debtors' estates, and the Debtors' entry into the Global Settlement Agreement represents a valid exercise of the Debtors' business judgment.

7. The Global Settlement Agreement confers substantial economic benefits upon the Debtors and the Debtors' estates by avoiding costly and time-consuming litigation of the various and complex disputes between the parties, including with respect to the Preference Claims, which, even if successful, have uncertain and reduced value to the Debtors net of any resulting replacement claim arising under section 502(h) of the Bankruptcy Code. The Global Settlement Agreement also eliminates the risks of any unfavorable litigation outcome. In particular, Voyager may be able to assert defenses to the merits of the Preference Claims, including defenses that are specific to the facts surrounding the relevant transfers. As a result, the ultimate outcome of litigation involving numerous claims and defenses is uncertain.

8. Moreover, the law governing "dueling debtor" situations is under-developed and uncertain and the litigation costs of pursuing complex litigation would be even greater than in a typical bankruptcy litigation. Not only would the Debtors incur costs of attorneys, financial consultants and expert witnesses, but the Debtors also would bear the cost of attorneys and advisors for the Committee who would be closely involved in the litigation.

9.  Based upon the facts presented to me as a result of the analysis described above and based upon my understanding of the claims and disputes as presented to me by the Debtors' advisors, I concluded that litigation with Voyager would require significant time, money, and other resources that, coupled with the risks and uncertainties of litigating the parties' respective claims to judgment, render entry into the Global Settlement Agreement in the Debtors' best interests. Settling the parties' disputes now under the terms of the Global Settlement Agreement is in the best interest of the Debtors' estates, and in my opinion the benefits of the Global Settlement Agreement outweigh the alternative of continued litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 9, 2024

*/s/ John J. Ray III*
John J. Ray III
Chief Executive Officer