**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date:  May 15, 2024 at 1:00 p.m. (ET)<br>Objection Deadline:  April 24, 2024 at 4:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE COLLATERAL CLAIM SETTLEMENT AGREEMENT, THE INTER-DEBTOR RESTRUCTURING AGREEMENT AND THE RESTRUCTURING PAYMENT AGREEMENT AND (II) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving the entry by (i) FTX Europe AG, a Swiss stock corporation ("FTX Europe"), and FTX Trading into, and their performance under (a) the Collateral Claim Settlement Agreement, dated April 7, 2024, a copy of which is attached hereto as Exhibit B (as may be amended, supplemented or modified from time to time, the "Collateral Claim Settlement Agreement") and (b) the Restructuring Payment Agreement, dated April 7, 2024, a copy of

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

which is attached hereto as Exhibit C (as may be amended, supplemented or modified from time to time, the "Restructuring Payment Agreement") and (ii) FTX Trading, FTX Europe, Alameda Research Ltd. ("Alameda Research") and West Realm Shires Inc. ("WRS") into, and their performance under, the Inter-Debtor Restructuring Agreement, dated April 7, 2024, a copy of which is attached hereto as Exhibit D (as may be amended, supplemented or modified from time to time, the "Inter-Debtor Restructuring Agreement" and together with the Collateral Claim Settlement Agreement and the Restructuring Payment Agreement, the "FTX Europe Restructuring Agreements"), which agreements provide for the consensual restructuring and settlement (the "FTX Europe Restructuring") of the network of claims among Debtors FTX Europe, Alameda Research and FTX Trading, as well as non-Debtor third parties CM-Equity AG ("CM-Equity") and Binance (Switzerland) AG ("Binance").  The proposed settlement with Binance only resolves Binance (Switzerland) AG's asserted claim against non-Debtor third-party CM-Equity and does not otherwise resolve or affect any other claim of Binance or any Binance affiliate against any Debtor or any claim of any Debtor against Binance or any Binance affiliate.  All rights are reserved.

In support of this Motion, the Debtors submit the declaration of Steven P. Coverick attached hereto as Exhibit E (the "Coverick Declaration"), which is incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state as follows:

**Preliminary Statement**

1.　On March 18, 2024, the Court approved the Debtors' proposed sale of certain assets and the shares of certain subsidiaries of FTX Europe to Patrick Gruhn, Robin Matzke and Lorem Ipsum RM UG and their affiliated purchaser entity (such parties, the "Purchaser Parties" and such sale, the "Sale Transaction") and the Debtors' related global settlement with the Purchaser Parties regarding the pending adversary proceeding (Adv. Pro.

No. 23-50437) (the "Adversary Proceeding") and other motions filed by the Purchaser Parties and their related parties. The Sale Transaction remains subject to Swiss Court (as defined below) approval and is expected to close in the coming weeks.

2.   The Debtors seek Court approval of certain contractual arrangements implementing a resolution of the balance sheet of Debtor FTX Europe. If these agreements are approved by the Court, the balance sheet of FTX Europe will be simplified to allow for FTX Europe's orderly solvent wind-down and return of its equity value to the Debtors' estate, avoiding both potential litigation and more involved non-U.S. insolvency proceedings. Court approval of these Restructuring Agreements is a condition to the obligation of FTX Europe to close the Sale Transaction, subject to FTX Europe's waiver of such condition.

**Background**

3.   On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.   Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

5.   Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to Relief Requested**

I.   **FTX Europe Balance Sheet**

6. According to the Debtors' currently available books and records, as of November 30, 2023, FTX Europe's assets were approximately $126.5 million,[2] including (i) an intercompany receivable of approximately $102.5 million against FTX Trading in respect of certain digital assets transferred from FTX Europe to FTX Trading (the "FTX Europe Claim"), (ii) fixed assets, participations and other receivables representing approximately $18.2 million,[3] and (iii) cash and cash equivalents of approximately $5.8 million. *See* Coverick Decl. ¶ 6.

7. According to the Debtors' currently available books and records, as of November 2023, FTX Europe's equity was negative $2.3 million and liabilities were approximately $128.8 million,[4] including (i) a payable of approximately $63,777,000[5] held by CM-Equity against FTX Europe, as described in further detail below, (ii) an intercompany payable of approximately $60.2 million to Alameda Research in respect of certain stablecoin transfers made by Alameda Research to FTX Europe relating to prepetition business activities facilitated by FTX Europe (the "Alameda Claim"), (iii) approximately $3.1 million owed by

---

[2]   Based on the local (unaudited) management accounts of FTX Europe prepared on a going concern basis as of November 30, 2023, adjusted to reverse the impairment of the approximately $102.5m intercompany receivable against FTX Trading. The approximately $102.5m receivable was fully impaired in the local accounts in accordance with Swiss accounting principles (principle of prudence) based on the circumstances prevailing in February 2023 when the impairment was booked by FTX Europe.

[3]   Based on carrying value pursuant to local (unaudited) management accounts of FTX Europe prepared on a going concern basis as of November 30, 2023.

[4]   Based on the local (unaudited) management accounts of FTX Europe prepared on a going concern basis as of November 30, 2023.

[5]   Current book value according to local (unaudited) management accounts of FTX Europe prepared on a going concern basis as of November 30, 2023 ($65 million payable to CM-Equity minus offsetting charges of approximately $1.2 million).

FTX Europe to FTX Trading in respect of certain pre-petition intercompany loans and operating expenses paid by FTX Trading on behalf of FTX Europe (the "FTX Trading Expenses Claim"), (iv) approximately $0.2 million owed by FTX Europe to WRS in respect of pre- and post-petition payroll and other charges paid by WRS on behalf of FTX Europe (together with the FTX Trading Expenses Claim, the "Expenses Claims"), (v) other miscellaneous intercompany payables of approximately $0.3 million and (vi) other miscellaneous net payables to third-party creditors of approximately $1.2 million.  See Coverick Decl. ¶ 7.

8. The following diagram reflects the current overview of key positions on FTX Europe's balance sheet:



9. If the FTX Europe Restructuring is approved by the Court and implemented, the assets and liabilities of FTX Europe will be simplified.  The pro forma balance

4861-3293-9945 v.8

sheet is expected to conform to the following diagram:



## II.    Collateral Transactions with CM-Equity

10.    On October 27, 2020, CM-Equity and FTX Europe (formerly known as Digital Assets DA AG) entered into that certain Framework Purchase Agreement Regarding Collateral Contracts (the "Collateral Agreement") pursuant to which CM-Equity made certain payments to FTX Europe from time to time to collateralize tokenized stock trading of CM-Equity's customers (the "Collateral Payments").  See Coverick Decl. ¶ 8.

11.    On April 1, 2021, Binance and CM-Equity entered into that certain Agreement on the Purchase and Sale of Tokenized Stocks (the "Tokenized Stocks Agreement" and together with the Collateral Agreement, the "Tokenized Stock and Collateral Agreements"), pursuant to which Binance purchased certain tokenized stocks from CM-Equity.  The Debtors are not party to the Tokenized Stocks Agreement.  The Debtors understand that Binance has

initiated arbitration in Germany for the return of $65 million against CM-Equity in respect of collateral transferred by Binance to CM-Equity pursuant to the Tokenized Stocks Agreement. *See* Coverick Decl. ¶ 9.

12. In connection with the Collateral Payments, CM-Equity filed a proof of claim in these Chapter 11 Cases in the amount of $65 million against FTX Europe and a proof of claim in the amount of EUR 68,544,156.16 including interest against FTX Europe in its moratorium proceedings in Switzerland (the "Moratorium Proceeding") (collectively, the "CME Claim"). *See* Coverick Decl. ¶ 10.

### III. The Collateral Claim Settlement Agreement

13. The majority of FTX Europe's assets and liabilities are comprised of, respectively, the FTX Europe Claim, on the one hand, and the CME Claim and Alameda Claim, on the other hand.

14. These claims, which arise from essentially related transactions, impact multiple entities in these Chapter 11 Cases, FTX Europe in its Moratorium Proceeding and the pending arbitration between CM-Equity and Binance. The continued pendency of these claims and their future adjudication in these Chapter 11 Cases and the Moratorium Proceeding, as well as potential complications for the Debtors arising out of the pending arbitration, are burdensome complexities that are preventing a swift resolution of FTX Europe. *See* Coverick Decl. ¶ 11. In connection with the multi-part transaction described above, the Debtors commenced settlement discussions with CM-Equity and Binance. *See* Coverick Decl. ¶ 12. Following good faith, extensive arm's length negotiations, on April 7, 2024, the Debtors, CM-Equity and Binance entered into the Collateral Claim Settlement Agreement. *See* Coverick Decl. ¶ 13.

15. The Collateral Claim Settlement Agreement provides that, conditional upon the entry of a final, non-appealable order of the Court approving the Collateral Claim

Settlement Agreement and the Inter-Debtor Restructuring Agreement, Swiss Court approval of the Collateral Claim Settlement Agreement and the Inter-Debtor Restructuring Agreement, and the execution and delivery of the Inter-Debtor Restructuring Agreement (collectively, the "Settlement Conditions"), (i) CM-Equity agrees to release the Debtors and Binance from and with respect to the CME Claim and all other claims relating to the Collateral Agreement, the Tokenized Stocks Agreement and related transactions; (ii) Binance agrees to release the Debtors and CM-Equity from and with respect to Binance's claim against CM-Equity and all other claims relating to the Collateral Agreement, the Tokenized Stocks Agreement and related transactions; (iii) the Debtors agree to release Binance and CM-Equity from and with respect to the CME Claim, Binance's claim against CM-Equity, and all other claims relating to the Collateral Agreement, the Tokenized Stocks Agreement and related transactions; (iv) FTX Trading agrees to allow a general unsecured claim of Binance in an amount of $50 million (the "Binance Allowed Claim"); and (v) FTX Trading agrees to pay CM-Equity $1 million in cash (the "CM-Equity Payment") within 10 business days following the satisfaction of the Settlement Conditions.

16.   The Collateral Claim Settlement Agreement also provides that neither FTX Europe, FTX Trading, their affiliated Debtors, nor any entities that are subject to the control of the Debtors shall seek (i) to avoid, subordinate, recharacterize, recover, attack, offset, counterclaim or defend the Binance Allowed Claim under any provision of the Bankruptcy Code (including sections 510, 544, 547 and 548), other applicable law, or equity or (ii) to disallow the Binance Allowed Claim under any provision of the Bankruptcy Code, other applicable law, or equity, including, without limitation, section 502(d) of the Bankruptcy Code (any such action by FTX Europe, FTX Trading, any of their affiliated Debtors, or any entities that are subject to the

control of the Debtors, a "Challenge"). If FTX Europe, FTX Trading, any of their affiliated Debtors, any entities that are subject to the control of the Debtors, or any party acting on any of their behalf, object to, file, prosecute, pursue, or otherwise bring a Challenge against Binance with respect to the Binance Allowed Claim, then Binance may terminate the Collateral Claim Settlement Agreement and is entitled to obtain liquidated damages from FTX Trading in the amount of the Binance Allowed Claim.

17. Furthermore, the Collateral Claim Settlement Agreement provides that neither CM-Equity, Binance, nor any of their affiliates shall (i) object to, or file, prosecute, pursue or otherwise bring any action opposing, this Motion or the motion to be filed in the Swiss Court seeking approval of the Collateral Claim Settlement Agreement, or otherwise take any other action adverse to the Debtors in these Chapter 11 Cases or the Moratorium Proceeding relating to the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement or the transactions contemplated thereby or (ii) seek to prosecute the CME Claim or the Binance Allowed Claim against any person (other than in case of termination of the Collateral Claim Settlement Agreement in accordance with its terms) or challenge the validity of the Collateral Claim Settlement Agreement in any forum.

18. The Collateral Claim Settlement Agreement is terminable by any of the parties thereto if either the Order has not been approved by the Court or the Swiss Court and/or the Swiss Administrator (as defined below) has not approved the FTX Europe Restructuring by May 31, 2024.

**IV.     The Inter-Debtor Restructuring Agreement**

19. In addition, as part of the FTX Europe Restructuring, on April 7, 2024, FTX Europe, FTX Trading, Alameda Research and WRS entered into the Inter-Debtor Restructuring Agreement, pursuant to which, subject to certain conditions, FTX Europe agrees to

release the FTX Europe Claim, and FTX Trading and WRS agree to release the Expenses Claims, and Alameda Research agrees to release $38,706,000 of the Alameda Claim (the "Released Alameda Claim").  Alameda Research will retain the remaining $21,444,000 of the Alameda Claim (the "Retained Alameda Claim"), *provided* that the Retained Alameda Claim shall be subordinated in right of payment to all existing and future liabilities of FTX Europe until the termination of the Moratorium Proceeding (whereupon the Retained Alameda Claim will no longer be subordinated).  The Inter-Debtor Restructuring Agreement terminates automatically upon termination of the Collateral Claim Settlement Agreement.

20. The sum of the amount of the Released Alameda Claim ($38,706,000) and the amount of the book value of the CME Claim ($63,777,000), which are released against FTX Europe pursuant to the Inter-Debtor Restructuring Agreement and the Collateral Claim Settlement Agreement, respectively, is equal to the amount of the FTX Europe Claim ($102,483,000) released by FTX Europe pursuant to the Inter-Debtor Restructuring Agreement. The Debtors expect that the releases and settlements contemplated by the FTX Europe Restructuring, together with the Sale Transaction, will enable FTX Europe to wind down on a solvent basis in accordance with applicable Swiss law proceedings.  *See* Coverick Decl. ¶ 14.

V. **The Restructuring Payment Agreement**

21. In connection with the Collateral Claim Settlement Agreement and the Inter-Debtor Restructuring Agreement, on April 7, 2024, FTX Europe and FTX Trading entered into the Restructuring Payment Agreement, pursuant to which, subject to certain conditions, FTX Europe agrees to reimburse FTX Trading in an amount not to exceed $7,700,000 (the "Consideration Payment") in consideration for the concessions that FTX Trading has made in order to induce the purchasers to enter into the Sale Transaction.  These concessions include, among others, FTX Trading's agreement to settle the Adversary Proceeding and FTX Trading's

agreement to indemnify the Purchaser Parties pursuant to the release agreement attached as Exhibit B to the Share and Asset Purchase Agreement, dated as of February 7, 2024, by and among FTX Europe, on the one hand, and the Purchaser Parties, on the other hand, governing the Sale Transaction.

22. The Consideration Payment is subject to certain conditions, including, among other conditions: (i) the closing of the Sale Transaction; (ii) FTX Europe's exit from the Moratorium Proceeding; and (iii) obtaining a favorable ruling from the Swiss tax authority in respect of the Consideration Payment. Following payment of the Consideration Payment, if the board of directors of FTX Europe determines in good faith that FTX Europe is over-indebted and prepares an audited balance sheet demonstrating such over-indebtedness in accordance with applicable law and Swiss accounting principles, FTX Trading shall reimburse FTX Europe in cash equal to the amount of such over-indebtedness, up to a maximum amount of the Consideration Payment actually received by FTX Trading.

23. Because FTX Europe is currently subject to the Moratorium Proceeding, it is overseen by an administrator (the "<u>Swiss Administrator</u>") appointed by the District Court of Höfe, Switzerland (the "<u>Swiss Court</u>"). The Debtors received approval from the Swiss Administrator to enter into the FTX Europe Restructuring Agreements.

**Jurisdiction**

24. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Relief Requested

25. By this Motion, the Debtors seek entry of the Order, substantially in the form attached hereto as Exhibit A, authorizing and approving the entry by (i) FTX Europe and FTX Trading into, and their performance under, the Collateral Claim Settlement Agreement and the Restructuring Payment Agreement and (ii) FTX Trading, FTX Europe, Alameda Research and WRS into, and their performance under, the Inter-Debtor Restructuring Agreement.

### Basis for Relief

**The FTX Europe Restructuring Satisfies Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Because It Is Fair, Reasonable and in the Debtors' Best Interests.**

26. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of litigation, especially in the bankruptcy context, is encouraged and is "generally favored in bankruptcy" as such settlements "minimize litigation and expedite the administration of the estate." *In re World Health Alts., Inc.*, 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

27. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of a debtor, but instead should canvass the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted).

28. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222 B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (citations omitted).

29. Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

30. The continued pendency of the CME Claim, the Alameda Claim and the FTX Europe Claim and their future adjudication in these Chapter 11 Cases and the Moratorium Proceeding, as well as potential complications for the Debtors arising out of the pending arbitration, are burdensome complexities that have prevented a swift resolution of FTX Europe. Through the Collateral Claim Settlement Agreement, CM-Equity and Binance agree to release all claims that may be asserted against the Debtors in connection with the Tokenized Stock and Collateral Agreements. In addition, the Collateral Claim Settlement Agreement releases the $65 million CME Claim filed against FTX Europe, and provides for the Binance Allowed Claim and the CM-Equity Payment, resulting in a net reduction in the amount of claims against the Debtors of $14 million.

31. The FTX Europe Restructuring also provides material value to the Debtors' estates by, among other things, permitting a solvent wind-down of FTX Europe in accordance with applicable Swiss liquidation proceedings, thereby avoiding future administrative costs resulting from FTX Europe remaining in the Moratorium Proceeding or being placed into insolvent liquidation in Switzerland. In addition, through the payment of the Consideration Payment pursuant to the Restructuring Payment Agreement, FTX Trading will receive

consideration for the value FTX Trading provided to FTX Europe through the various concessions agreed to by FTX Trading in order to induce the purchasers to enter into the Sale Transaction. Accordingly, the Debtors have determined that, in its totality, entry into the FTX Europe Restructuring is in the best interests of the Debtors, their estates and all stakeholders. *See* Coverick Decl. ¶ 17.

32. The compromises set forth in the FTX Europe Restructuring are, in the aggregate, fair and equitable, fall well within the range of reasonableness and satisfy each of the applicable *Martin* factors.

33. **The Probability of Success in Litigation**. Given the attendant risks and probability of success in potential litigation, the Debtors submit that the FTX Europe Restructuring is favorable to the Debtors and is in the best interests of the Debtors' estates. Absent the Collateral Claim Settlement Agreement, FTX Europe would need to engage in a costly investigation with an uncertain outcome to assess and potentially dispute the CME Claim. The pendency of litigation between CME and Binance in respect of an essentially related underlying transaction, as well as the complexities of concurrent U.S. and Swiss bankruptcy court processes all add uncertainty to the resolution of the CME Claim.

34. **The Complexity of the Litigation and the Attendant Expense, Inconvenience and Delay**. The FTX Europe Restructuring will streamline the Debtors' resolution of FTX Europe and its subsidiaries, allowing for an efficient, solvent wind-down of FTX Europe and permitting the Debtors to direct their resources elsewhere to maximize recoveries for their stakeholders. As discussed above, litigation in respect of the CME Claim and other potential claims arising out of the Tokenized Stock and Collateral Agreements would be complex, expensive and time-consuming. The parties would potentially be required to

4861-3293-9945 v.8

commence complex factual discovery with respect to potential claims brought by Binance or CM-Equity in connection with the Tokenized Stock and Collateral Agreements.

35. The complexity and attendant cost which would result from litigating the CME Claim and other potential claims are not garden-variety bankruptcy litigation costs. The costs are compounded by the unusual fact that FTX Europe is subject to insolvency proceedings in both the United States and Switzerland.

36. **The Paramount Interests of Creditors**. The FTX Europe Restructuring is in the best interests of the Debtors' estates and their creditors. The settlement unlocks material value to the Debtors' estates because it is a crucial part of resolving the time-consuming and expensive issues raised in connection with FTX Europe and its subsidiaries. In addition, through the FTX Europe Restructuring, the Debtors expect to save administrative costs in connection with the wind-down of FTX Europe. Taken together, the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement and the Restructuring Payment Agreement will (i) offset intra-group claims (the Alameda Claim and FTX Europe Claim) thereby simplifying the financial position of FTX Europe, (ii) release the CME Claim (filed against the Debtors for $65 million) in consideration for FTX Trading's assumption of the Binance Allowed Claim (value $50 million), (iii) result in a payment to CM-Equity in relation to costs incurred by CM-Equity (value $1 million), and (iv) allow FTX Trading to realize the value of its concessions to FTX Europe as a result of the restructuring transactions. This will result in the avoidance of potential litigation as described above, a $14 million net reduction of claims against the Debtors and a significant acceleration of FTX Europe's ability to exit the Moratorium Proceeding through a solvent liquidation. *See* Coverick Decl. ¶ 15.

37. Finally, the Inter-Debtor Restructuring Agreement, the Collateral Claim Settlement Agreement and the Restructuring Payment Agreement are a crucial part of the broader multi-part arrangement described above, which, as a result of the Sale Transaction, will be value-accretive to estate creditors.  *See* Coverick Decl. ¶ 16.

38. Based on the foregoing, the Debtors submit that the FTX Europe Restructuring satisfies Bankruptcy Rule 9019 because it is fair, reasonable and in the best interests of the Debtors, their estates and their stakeholders.  Accordingly, the Debtors respectfully submit that the FTX Europe Restructuring satisfies the *Martin* factors and request that the Court authorize the Debtors' entry into the FTX Europe Restructuring Agreements.

## **Bankruptcy Rules 6004(a) and 6004(h)**

39. The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay requirements under Bankruptcy Rule 6004(h).  In light of the importance of an efficient timeline for completing the FTX Europe Restructuring, the proposed FTX Europe Restructuring should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders.  Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rule 6004(h) be waived.

## **Notice**

40. Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; (d) counsel for CM-Equity; (e) counsel for Binance; (f) counsel to the Purchaser Parties; and (g) any other party that has requested notice pursuant to Bankruptcy

Rule 2002.  The Debtors submit that all parties with an interest in the FTX Europe Restructuring have been given adequate notice and that no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A and (b) grant such other and further relief as is just and proper.

Dated: April 10, 2024
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*