# EXHIBIT B

## Collateral Claim Settlement Agreement

Execution Version

COLLATERAL CLAIM SETTLEMENT AGREEMENT

This COLLATERAL CLAIM SETTLEMENT AGREEMENT (this "Agreement") is made as of April 7, 2024, by and among FTX Europe AG, a Swiss stock corporation ("FTX Europe"), FTX Trading Ltd., an Antigua company ("FTX Trading"), CM-Equity AG, a German stock corporation ("CM Equity"), and Binance (Switzerland) AG, a Swiss stock corporation ("Binance"). The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

RECITALS

WHEREAS, on October 27, 2020, CM Equity and FTX Europe (formerly known as Digital Assets DA AG) entered into that certain Framework Purchase Agreement Regarding Collateral Contracts (the "Collateral Agreement") pursuant to which CM Equity made certain payments to FTX Europe from time to time to collateralize tokenized stock trading of CM Equity's customers (the "Collateral Payments");

WHEREAS, on April 1, 2021, Binance and CM Equity entered into that certain Agreement on the Purchase and Sale of Tokenized Stocks (the "Tokenized Stocks Agreement"), pursuant to which Binance purchased certain tokenized stocks from CM Equity, and Binance, in connection with transactions thereunder, has made demands for payments in the amount of sixty five million Dollars ($65,000,000) against CM Equity (the "Binance Claim") and has initiated an arbitration against CM Equity administered by the German Arbitration Institute (*Deutsche Institution für Schiedsgerichtsbarkeit*) (the "DIS") under the case file number DIS-SV-2023-00838 (the "Arbitration");

WHEREAS, on November 11, 2022 and November 14, 2022, FTX Trading and certain of its affiliates, including FTX Europe (collectively, the "Debtors") commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") by filing petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered as *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)) (the "Bankruptcy Proceedings");

WHEREAS, on April 11, 2023, FTX Europe entered into moratorium proceedings (the "Moratorium Proceedings") under the laws of Switzerland before the Composition Court of the District Court Höfe in Wollerau, Schwyz, Switzerland (the "Swiss Court") and Holenstein Brusa AG was appointed as the provisional administrator (*provisorische Sachwalterin*) by order of the Swiss Court dated 11 April 2023, extended by order of 21 July 2023, and then as the definitive administrator (*definitive Sachwalterin*) by order of the Swiss Court dated 24 November 2023 (the "Administrator");

WHEREAS, in connection with the Collateral Payments, CM Equity filed a proof of claim in the amount of sixty five million Dollars ($65,000,000) against FTX Europe in the Bankruptcy Proceedings and a proof of claim in the amount of sixty eight million five hundred and forty four thousand one hundred and fifty six euros and sixteen cents (EUR 68,544,156.16)

including interest against FTX Europe in the Moratorium Proceedings, respectively (the "CME Claim");

WHEREAS, on or around the date hereof, FTX Trading, FTX Europe, and certain of their affiliates have entered into a release agreement pursuant to which FTX Europe has agreed to release, on the terms and subject to the conditions set forth therein, certain claims against FTX Trading (the "Inter-Debtor Restructuring Agreement"); and

WHEREAS, the Parties desire to settle the CME Claim and the Binance Claim on the terms and subject to the conditions set forth herein, conditional upon (i) the entry of a final and non-appealable order, substantially in the form attached hereto as **Exhibit A**, which shall be in form and substance reasonably acceptable to Binance, by the Bankruptcy Court approving this Agreement, including the settlement and releases set forth in this Agreement, and the Inter-Debtor Restructuring Agreement (the "U.S. Settlement Order"); *provided* that it shall be deemed reasonably acceptable for Binance to withhold consent to the extent that the language in paragraphs 3, 4, 5, and 9 of the U.S. Settlement Order attached hereto as **Exhibit A** are modified in any material respect, (ii) the entry of an order by the Swiss Court approving the settlement and releases set forth in this Agreement and the Inter-Debtor Restructuring Agreement, and (iii) the execution of and delivery of the Inter-Debtor Restructuring Agreement, substantially in the form attached hereto as **Exhibit B**, by the parties thereto (clauses (i), (ii) and (iii) collectively the "Settlement Conditions").

WHEREAS, this Agreement and Inter-Debtor Restructuring Agreement together set forth the entire understanding of the Parties relating to the subject matter of this Agreement, and this Agreement is not intended to modify, and does not modify, any rights or obligations of the Parties other than as expressly set forth herein, which rights and obligations remain unaffected by this Agreement.

NOW, THEREFORE, in consideration of the premises and mutual releases contained herein and in the Inter-Debtor Restructuring Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Release by CM Equity.

Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, CM Equity, on behalf of itself, its directors, shareholders, and its affiliates and their respective successors and assigns (collectively, the "CME Releasors"), to the fullest extent permitted by law, hereby generally, irrevocably, forever, and fully release, waive and discharge, each of (i) the Debtors and their affiliates, together with their respective present and former officers, directors, employees, agents, advisors and representatives, and each such person or entity's respective successors and assigns (collectively the "Debtor Releasees") and (ii) Binance and its affiliates, together with their respective present and former officers, directors, employees, agents, advisors, representatives, shareholders, and ultimate beneficial owners, and each such person or entity's respective successors and assigns (collectively the "Binance Releasees") from and with respect to the CME Claim and any and all other claims,

-2-

obligations, rights, suits, damages, causes of action, remedies and liabilities, of any kind, nature or description solely arising out of or relating to collateral transferred by Binance to CM Equity, by CM Equity to FTX Europe and its affiliates, and/or Binance to FTX Europe and its affiliates, and any other transactions entered into pursuant to or in connection with the Collateral Agreement and/or the Tokenized Stocks Agreement, which the CME Releasors, or any of them, ever had or now has against the Debtor Releasees or the Binance Releasees.

Section 2.    Releases by Binance.

(a)    Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, Binance, on behalf of itself, its directors, shareholders, and its affiliates and their respective successors and assigns (collectively, the "Binance Releasors"), to the fullest extent permitted by law, hereby generally, irrevocably, forever, and fully release, waive and discharge, each of CM Equity and its affiliates, together with their respective officers, directors, employees, agents, advisors and representatives, and each such person or entity's respective successors and assigns (collectively the "CM Equity Releasees") from and with respect to the Binance Claim, and any and all other claims, obligations, rights, suits, damages, causes of action, remedies and liabilities, of any kind, nature or description solely arising out of or relating to collateral transferred by Binance to CM Equity, by CM Equity to FTX Europe and its affiliates, and/or Binance to FTX Europe and its affiliates, and any other transactions entered into pursuant to or in connection with the Tokenized Stocks Agreement, which the Binance Releasors, or any of them, ever had or now has against the CM Equity Releasees.

(b)    Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, the Binance Releasors, to the fullest extent permitted by law, hereby generally, irrevocably, forever, and fully release, waive and discharge, each of the Debtor Releasees from and with respect to the Binance Claim, and any and all other claims, obligations, rights, suits, damages, causes of action, remedies and liabilities, of any kind, nature or description solely  arising out of or relating to collateral transferred by Binance to CM Equity, by CM Equity to FTX Europe and its affiliates, and/or Binance to FTX Europe and its affiliates, and any other transactions entered into pursuant to or in connection with the Tokenized Stocks Agreement, which the Binance Releasors, or any of them, ever had or now has against the Debtor Releasees, other than the Allowed Claim.

Section 3.    Release by FTX.

Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, the Debtors, on behalf of themselves and their affiliates and their respective successors and assigns (collectively, the "FTX Releasors"), to the fullest extent permitted by law, hereby generally, irrevocably, forever, and fully release, waive and discharge, each of (i) the Binance Releasees and (ii) the CM Equity Releasees, in each case from and with respect to the Binance Claim and the CME Claim, and any and all other claims,

-3-

obligations, rights, suits, damages, causes of action, remedies and liabilities, of any kind, nature or description solely arising out of or relating to collateral transferred by Binance to CM Equity, by CM Equity to FTX Europe and its affiliates, and/or Binance to FTX Europe and its affiliates, and any other transactions entered into pursuant to or in connection with the Collateral Agreement and/or the Tokenized Stocks Agreement, which the FTX Releasors, or any of them, ever had or now has against the Binance Releasees or the CM Equity Releasees.

Section 4.    Allowed Claim; CM Equity Payment.

(a)    Subject to the satisfaction of the Settlement Conditions, as of the date on which the Settlement Conditions are satisfied, FTX Trading acknowledges and agrees that Binance shall have an allowed general unsecured claim against FTX Trading in the amount of fifty million Dollars ($50,000,000), which claim shall rank *pari passu* with the claims of all general unsecured creditors of FTX Trading (the "Allowed Claim"). The U.S. Settlement Order shall provide that neither FTX Europe, FTX Trading, any of their affiliated Debtors, nor any entities that are subject to the control of the Debtors shall seek in the Bankruptcy Proceedings (i) to avoid, subordinate, recharacterize, recover, attack, offset, counterclaim, or defend the Allowed Claim under any provision of title 11 of the Bankruptcy Code (including sections 510, 544, 547 and 548), other applicable law, or equity, or (ii) to disallow the Allowed Claim under any provision of the Bankruptcy Code, other applicable law, or equity, including, without limitation, section 502(d) of the Bankruptcy Code (any such action by FTX Europe, FTX Trading, any of their affiliated Debtors, or any entities that are subject to the control of the Debtors a "Challenge"). If FTX Europe, FTX Trading, any of their affiliated Debtors, or any entities that are subject to the control of the Debtors, or any party acting on any of their behalf, object to, file, prosecute, pursue, or otherwise bring a Challenge against Binance with respect to the Allowed Claim, then FTX Trading shall be liable to Binance for liquidated damages in the amount of the Allowed Claim. Binance shall additionally be entitled to any actual damages or additional costs incurred by Binance or any of its affiliates in connection with a Challenge (including, without limitation, attorneys' fees), which actual damages shall be entitled to administrative expense priority pursuant to section 503(b)(1) of the Bankruptcy Code.

(b)    Within ten (10) Business Days following the satisfaction of the Settlement Conditions, FTX Trading shall pay CM Equity one million Dollars ($1,000,000) in cash to an account notified in writing by CM Equity to FTX Trading (the "CM Equity Cash Payment").

Section 5.    Termination.

(a)    Any of the Parties hereto may terminate this Agreement prior to the satisfaction of the Settlement Conditions upon prior written notice to the other Parties hereto in accordance with Section 7(h) upon the occurrence and during the continuation of any of the following events:

(i)    the U.S. Settlement Order has not been approved by the Bankruptcy Court and has not become a final, non-appealable order not subject to any stay pending appeal by May 31, 2024;

-4-

(ii)     approval by the Swiss Court and/or the Administrator has not been obtained by May 31, 2024.

(b)     Binance may terminate this Agreement at any time prior to payment of the Allowed Claim or liquidated damages in respect of the Allowed Claim by written notice to the other Parties hereto in accordance with <u>Section 7(h)</u> if a Challenge is pursued by FTX Europe, FTX Trading, or any of their affiliated Debtors; provided, for the avoidance of doubt, that notwithstanding the last sentence of Section 4(a), upon termination of this Agreement pursuant to this Section 5(b), FTX Trading shall not be liable to pay the Allowed Claim or any liquidated damages in respect of the Allowed Claim.

(c)     Binance may terminate the release of the CM Equity Releasees set forth in <u>Section 2(a)</u> at any time by written notice to the other Parties hereto in accordance with <u>Section 7(h)</u> if a challenge, claw-back, avoidance, other attack, offset, counterclaim or defense under applicable provisions of German law is sought and/or pursued by CM Equity or any successor entity, insolvency administrator or other administrator against this Agreement or any part of it (provided, for the avoidance of doubt, that all other provisions of this Agreement, including the release set forth in <u>Section 2(b)</u>, shall remain in full force and effect and shall survive notwithstanding such termination).  Upon the termination of the release of the CM Equity Releasees set forth in <u>Section 2(a)</u> pursuant to this <u>Section 5(c)</u>, Binance shall be released from its commitments, undertakings, and agreements under or related to the release in <u>Section 2(a)</u> and shall have had and had the rights and remedies that it would have had as related to CM Equity, had it not entered into this Agreement, and shall be entitled to take all actions related to CM Equity that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all claims or causes of action.  Nothing in this Agreement shall be construed as prohibiting CM Equity from contesting whether any such termination of the release in <u>Section 2(a)</u> is in accordance with the terms or to seek enforcement of any rights under this Agreement that arose or existed before such termination.  No purported termination of the release set forth in <u>Section 2(a)</u> shall be effective under this <u>Section 5(c)</u> or otherwise if Binance is in material breach of this Agreement.  Notwithstanding the foregoing or anything herein to the contrary, Binance may not exercise any of its termination rights as set forth in this <u>Section 5(c)</u> if Binance has failed to perform or comply in all material respects with the terms and conditions of this Agreement unless such failure to perform or comply arises as a result of another Party's actions or inactions or would not otherwise give rise to a termination event in favor of such Party.  Nothing herein, including termination of the release in <u>Section 2(a)</u>, shall be construed as a release or waiver of any claims arising out of, resulting from or related to a breach of this Agreement by any Party.

(d)     FTX Trading may terminate this Agreement at any time prior to payment of the Allowed Claim or liquidated damages in respect of an Allowed Claim by written notice to the other Parties hereto in accordance with <u>Section 7(h)</u> (i) solely as between FTX Trading and CM Equity if CM Equity or any of its affiliates brings an Adverse Action; and (ii) solely as between FTX Trading and Binance if Binance or any of its affiliates brings an Adverse Action.

(e)     Upon the termination of this Agreement pursuant to <u>Section 5(a)</u>, <u>Section 5(b)</u>, or <u>Section 5(d)</u>, other than as provided by <u>Section 7(b)</u>, this Agreement shall be of no further force and effect and each Party shall be released from its commitments, undertakings, and

-5-

agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all claims or causes of action. Nothing in this Agreement shall be construed as prohibiting any Party from contesting whether any such termination is in accordance with the terms or to seek enforcement of any rights under this Agreement that arose or existed before such termination. No purported termination of this Agreement shall be effective under this <u>Section 5</u> or otherwise if the Party seeking to terminate this Agreement is in material breach of this Agreement. Notwithstanding the foregoing or anything herein to the contrary, no Party may exercise any of its termination rights as set forth in <u>Section 5(a)</u> if such Party has failed to perform or comply in all material respects with the terms and conditions of this Agreement unless such failure to perform or comply arises as a result of another Party's actions or inactions or would not otherwise give rise to a termination event in favor of such Party.  Nothing herein, including termination of this Agreement, shall be construed as a release or waiver of any claims arising out of, resulting from or related to a breach of this Agreement by any Party.

Section 6.    <u>Stay and Termination of Arbitration</u>

(a)    Binance and CM Equity (together, the "<u>Arbitration Parties</u>") shall promptly, and in no event later than five (5) business days following the date of this Agreement, apply for a stay of the Arbitration, attaching a copy of this Agreement. CM Equity hereby irrevocably instructs and authorizes Binance and its legal representatives in the Arbitration to apply for a stay on behalf of CM Equity and will confirm such application if Binance or the arbitral tribunal requests confirmation. Upon the occurrence of a termination of this Agreement pursuant to <u>Section 5(a)</u>, <u>Section 5(b)</u>, or <u>Section 5(d)</u> or upon the termination of the releases set forth in <u>Section 2(a)</u> pursuant to <u>Section 5(c)</u>, each of the Arbitration Parties may revoke their consent for a stay.

(b)    Upon the satisfaction of the Settlement Conditions, the Arbitration Parties shall promptly, and in no event later than  fifteen (15) business days following the date of the Settlement Conditions, apply for a termination of the Arbitration. CM Equity hereby irrevocably instructs and authorizes Binance and its legal representatives in the Arbitration to apply with the arbitral tribunal for a termination of the Arbitration by termination order under Article 42.1, 42.2 (i) of the 2018 DIS Arbitration Rules (the "<u>DIS Rules</u>") on behalf of CM Equity and will confirm such application if Binance or the arbitral tribunal requests confirmation. The Arbitration Parties agree that in case of a termination order, each Arbitration Party shall bear its own costs incurred so far. They further agree that any reimbursement by the DIS for the arbitrators' fees and expenses (Article 32, 34.4 DIS Rules) shall be fully and finally reimbursed to Binance. CM Equity will confirm its agreement with such reimbursement if Binance, the DIS, or the arbitral tribunal requests confirmation.

(c)    For the avoidance of doubt, upon the termination of this Agreement pursuant to <u>Section 5(a)</u>, <u>Section 5(b)</u>, or <u>Section 5(d)</u> or upon the termination of the releases set forth in <u>Section 2(a)</u> pursuant to <u>Section 5(c)</u>, Binance is permitted to initiate arbitration proceedings against CM Equity with regard to any and all claims, including the Binance Claim.

-6-

Section 7.        <u>Miscellaneous.</u>

(a)        The Debtors shall (i) (A) promptly, and in no event later than five (5) business days following the date of this Agreement, file and pursue approval of a motion in form and substance reasonably acceptable to Binance in the Chapter 11 Cases seeking entry of the U.S. Settlement Order (the "<u>U.S. Settlement Motion</u>") and (B) promptly, and in no event later than ten (10) business days following the date of this Agreement, file and pursue approval of a motion in the Swiss Court seeking approval of this Agreement (the " <u>Swiss Settlement Motion</u>"); and (ii) timely file a formal objection to and oppose any motion filed with the Bankruptcy Court or the Swiss Court by any party seeking the entry of an order for relief that (A) is inconsistent with this Agreement in any material respect or (B) would, or would reasonably be expected to, frustrate the purposes of this Agreement. Neither CM Equity, Binance, nor any of their affiliates shall (x) object to, or file, prosecute, pursue, or otherwise bring any action opposing, the U.S. Settlement Motion or the Swiss Settlement Motion, or otherwise take any other action adverse to the Debtors in the Bankruptcy Proceedings or the Moratorium Proceedings with respect to this Agreement, the Inter-Debtor Restructuring Agreement, or the transactions contemplated hereby or thereby, other than to oppose a Challenge or to pursue any claims arising out of, resulting from or related to a breach of this Agreement by the Debtors or (y) seek to prosecute the CME Claim or the Binance Claim against any person (other than, in respect of the CME Claim, following the termination in accordance with this Agreement of the releases set forth in <u>Section 1</u> or, in respect of the Binance Claim, following the termination in accordance with this Agreement of the releases set forth in <u>Section 2(a)</u>) or challenge the validity of this Agreement in any forum (any of the actions specified in the foregoing clauses (x) and (y), an "<u>Adverse Action</u>"). Any party that brings an Adverse Action shall be liable to FTX Trading and FTX Europe for any actual damages or additional costs incurred by FTX Trading, FTX Europe or any of their affiliates in connection with any Adverse Action, and, in addition, if CM Equity brings an Adverse Action, CM Equity shall be liable to FTX Trading for liquidated damages in the amount of the Allowed Claim *plus* the amount of the CM Equity Cash Payment.

(b)        Notwithstanding anything else to the contrary herein, Sections 5(c) and (d), Section 6(c), and Sections 7(e), (f), (h), and (i) shall survive any termination of this Agreement.

(c)        This Agreement and Inter-Debtor Restructuring Agreement together set forth the entire understanding of the parties hereto relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior agreements, written or oral, among the parties hereto with respect to the subject matter of this Agreement. This Agreement is not intended to modify, and does not modify, any rights or obligations of the Parties other than as expressly set forth herein, which rights and obligations shall remain unaffected by this Agreement No representation, warranty, inducement, promise, understanding or condition not set forth in this Agreement has been made or relied on by any party in entering into this Agreement.  Nothing in this Agreement, expressed or implied, is intended to confer on any person or entity, other than the Parties or their respective successors and assigns, any rights, remedies, obligations or liabilities; <u>provided</u>, that Section 1 of this Agreement shall be enforceable by any Debtor Releasee or Binance Releasee, Section 2 of this Agreement shall be enforceable by any Debtor Releasee or CM Equity Releasee, and Section 3 of this Agreement shall be enforceable by any Binance Releasee or CM Equity Releasee.

-7-

(d)    Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited from the provision had it not been waived.

(e)    This Agreement and any non-contractual obligations arising out of or in connection with it in the sense of Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such laws.

(f)    Without limiting a Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes for any breach or default of this Agreement, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court solely for any proceedings related to the foregoing purposes and will receive notices at such locations as indicated in Section 7(h); provided, however, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware solely for the purposes of any proceedings related to this Agreement or the transactions contemplated hereby, including any non-contractual obligations arising out of or in connection with it in the sense of Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 ("Applicable Proceedings"), or in the event (but only in the event) that such court does not have subject matter jurisdiction over such legal, administrative or judicial proceedings, in the Delaware Court of Chancery, for the resolution of any such claim or dispute.  For the avoidance of doubt, the Parties do not consent to or submit to the jurisdiction or venue of the Bankruptcy Court, United States District Court for the District of Delaware, the Delaware Court of Chancery, or any other court for any matters other than Applicable Proceedings, and all Parties reserve all rights with respect to jurisdiction and venue for any purposes unrelated to this Agreement, which shall not be modified in any way by entry into this Agreement.  For the further avoidance of doubt, nothing herein shall constitute consent to or otherwise create jurisdiction or venue in the Bankruptcy Court, United States District Court for the District of Delaware, the Delaware Court of Chancery, or any other court for any affiliate, shareholder, ultimate beneficial owner, or current or former officers, directors, employees, agents, advisors, or representatives of Binance that is not party to this Agreement.  Each Party hereby irrevocably waives, to the fullest extent permitted by applicable laws, any objection which it may now or hereafter have to the laying of venue of any such action solely related to this Agreement brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each Party consents to process being served by the other Party in any legal, administrative or judicial proceedings solely related to this Agreement by delivery of a copy thereof in accordance with the provisions of Section 7(h); provided, however, that such service will not be effective until the actual receipt thereof by the

-8-

Party being served. Each Party waives any right to trial by jury in any legal, administrative or judicial proceedings solely regarding this Agreement or any provision hereof.

(g)     As used in this Agreement, references to (i) the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement, (ii) the Preamble, Recitals or Sections refer to the Preamble, a Recital or a Section of this Agreement unless otherwise indicated and (iii) all references to "Dollars", "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified. Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or other, singular or plural, as the identity of the person referred to may require. The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

(h)     All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day (defined as any day other than a Saturday or Sunday or a day on which banks located in the city of New York or Zurich, Switzerland are authorized or required by statute to close) sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to FTX Europe:

     FTX Europe AG
     Churerstrasse 135
     8808 Pfäffikon SZ
     Switzerland
     Attention: Arturo Giovanoli
     Email: agiovanoli@matrixs.com

     *With a copy (which shall not constitute notice) to both*:

     Sullivan & Cromwell LLP
     1 New Fetter Lane
     London EC4A 1AN
     United Kingdom
     Attention:  Evan S. Simpson
               Oderisio de Vito Piscicelli
               Alexa J. Kranzley
     Telephone: +44 20 7959 8426
               +44 20 7959 8589

-9-

> +1 212 558 7893
> Email:       simpsone@sullcrom.com
>              devitopiscicellio@sullcrom.com
>              kranzleya@sullcrom.com

and

Holenstein Brusa Ltd
Utoquai 29 / 31
8008 Zurich
Switzerland
Attention:  Thomas Zemp
            Dusan Knezevic
Telephone: +41 44 257 20 00
Email:      Zemp@hol-law.ch
            Knezevic@hol-law.ch

If to FTX Trading:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attention: John J. Ray III
Email: jray@greylockpartnersllc.com

*With a copy (which shall not constitute notice) to*:

Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
United Kingdom
Attention:  Evan S. Simpson
            Oderisio de Vito Piscicelli
            Alexa J. Kranzley
Telephone: +44 20 7959 8426
           +44 20 7959 8589
           +1 212 558 7893
Email:      simpsone@sullcrom.com
            devitopiscicellio@sullcrom.com
            kranzleya@sullcrom.com

If to CM-Equity:

CM-Equity AG
Kaufingerstr. 20
80331 München

-10-

Germany
Attention: Michael Kott - CEO CM-Equity AG
Telephone: +49 17 288 47596
Email: kott@cm-equity.de

*With a copy (which shall not constitute notice) to*:

Kaiser Odermatt & Partner AG
Baarerstrasse 12, CH-6300 Zug
Switzerland
Attention: Patrik Odermatt
Telephone: +41 (0)41 729 15 90
Email: po@kaiserodermatt.ch

If to Binance:

Binance (Switzerland) AG
Gubelstrasse 11
6300 Zug
Switzerland
Attention: Sielva Management - Markus Spillmann
Telephone: +41 41 711 15 62
Email: spillmann@sielva.com

*With a copy (which shall not constitute notice) to*:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attention:  Adam J. Goldberg
            Brian S. Rosen
Telephone: +1.212.906.1200
Email:     adam.goldberg@lw.com
           brian.rosen@lw.com

-and-

Latham & Watkins LLP
Reuterweg 20
60323 Frankfurt am Main
Germany
Attention:  Axel Schiemann
            Dr. Alena McCorkle, M.A.
Telephone: +49.69.6062.6000
Email:     axel.schiemann@lw.com
           alena.mccorkle@lw.com

-11-

(i)      If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for all Parties remain valid, binding, and enforceable.

(j)      This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

[*Signatures Appear on the Following Page*]

**FTX EUROPE AG**

By: _____

      Name:   Arturo Giovanoli
      Title:    Sole board member

**FTX TRADING LTD.**

By: _____

      Name:
      Title

**CM-EQUITY AG**

By: _____

      Name:
      Title:

**BINANCE (SWITZERLAND) AG**

By: _____

      Name:
      Title:

*[Signature Page to the Collateral Claim Settlement Agreement]*

**FTX EUROPE AG**

By: _____

Name:    Arturo Giovanoli
Title:     Sole board member

**FTX TRADING LTD.**

By: _____

Name:   John J. Ray III
Title:    Chief Executive Officer

**CM-EQUITY AG**

By: _____

Name:
Title:

**BINANCE (SWITZERLAND) AG**

By: _____

Name:
Title:

*[Signature Page to the Collateral Claim Settlement Agreement]*

**FTX EUROPE AG**

By: _____

        Name:   Arturo Giovanoli
        Title:    Sole board member

**FTX TRADING LTD.**

By: _____

        Name:
        Title

**CM-EQUITY AG**

By: _____

        Name:  MICHAEL  KOTT
        Title:   CEO

**BINANCE (SWITZERLAND) AG**

By: _____

        Name:
        Title:

*[Signature Page to the Collateral Claim Settlement Agreement]*

**FTX EUROPE AG**

By: _____

      Name:    Arturo Giovanoli
      Title:     Sole board member

**FTX TRADING LTD.**

By: _____

      Name:
      Title

**CM-EQUITY AG**

By: _____

      Name:
      Title:

**BINANCE (SWITZERLAND) AG**

By: _____

      Name:    Markus Spillmann
      Title:     Board Member

[*Signature Page to the Collateral Claim Settlement Agreement*]

APPROVAL OF SWISS ADMINISTRATOR TO
FTX EUROPE TO ENTER INTO THIS
AGREEMENT:


HOLENSTEIN BRUSA LTD (not in its own
name, but solely as Swiss Court appointed
Administrator and subject to the Swiss Court's
approval)


By: _____

Name:   Dusan Knezevic


By: _____

Name:   Thomas P. Zemp


*[Signature Page to the Collateral Claim Settlement Agreement]*

APPROVAL OF SWISS ADMINISTRATOR TO
FTX EUROPE TO ENTER INTO THIS
AGREEMENT:


HOLENSTEIN BRUSA LTD (not in its own
name, but solely as Swiss Court appointed
Administrator and subject to the Swiss Court's
approval)


By: _____
      Name:    Dusan Knezevic


By: _____
      Name:    Thomas P. Zemp


*[Signature Page to the Collateral Claim Settlement Agreement]*

## **Exhibit A**

U.S. Settlement Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. __** |

**ORDER (I) AUTHORIZING AND APPROVING ENTRY INTO, AND PERFORMANCE UNDER, THE COLLATERAL CLAIM SETTLEMENT AGREEMENT, THE INTER-DEBTOR RESTRUCTURING AGREEMENT AND THE RESTRUCTURING PAYMENT AGREEMENT AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing and approving the entry by (i) FTX Europe AG ("FTX Europe") and FTX Trading into, and their performance under (a) the Collateral Claim Settlement Agreement, dated April [●], 2024 (as may be amended, supplemented or modified from time to time, the "Collateral Claim Settlement Agreement") and (b) the Restructuring Payment Agreement, dated April [●], 2024 (as may be amended, supplemented or modified from time to time, the "Restructuring Payment Agreement") and (ii) FTX Trading, FTX Europe, Alameda Research Ltd. ("Alameda Research") and West Realm Shires Inc. ("WRS") into, and their performance under, the Inter-Debtor Restructuring Agreement, dated April [●], 2024 (as may be amended, supplemented or modified from time to time, the "Inter-Debtor Restructuring Agreement" and

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

together with the Restructuring Payment Agreement and the Collateral Claim Settlement

Agreement, the "FTX Europe Restructuring Agreements"), which agreements provide for the

consensual restructuring of the network of claims among FTX Europe, Alameda Research, FTX

Trading, CM-Equity AG, a non-Debtor company controlled by third parties ("CM-Equity"), and

Binance (Switzerland) AG ("Binance"); this Court having jurisdiction to consider the Motion

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

United States District Court for the District of Delaware, dated February 29, 2012; and this Court

being able to issue a final order consistent with Article III of the United States Constitution; and

venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and this Court having found that proper and adequate notice of the Motion and the

relief requested therein has been provided in accordance with the Bankruptcy Rules and the

Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary;

and objections (if any) to the Motion having been withdrawn, resolved or overruled on the

merits; and this Court having found and determined that the relief set forth in this Order is in the

best interests of the Debtors and their estates; and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED as set forth herein.

2.     FTX Europe and FTX Trading are authorized to enter into the Collateral

Claim Settlement Agreement and the Restructuring Payment Agreement and FTX Europe, FTX

Trading, Alameda Research and WRS are authorized to enter into the Inter-Debtor Restructuring

4877-1826-5514 v.7

Agreement and, in each case, to take all actions necessary to implement, effectuate, and fully perform the settlement set forth in the FTX Europe Restructuring Agreements in accordance with their terms, conditions, and agreements in the forms attached to the Motion.

3.      Subject to the satisfaction of the Settlement Conditions, Binance shall have an allowed general unsecured claim against FTX Trading in the amount of fifty million dollars ($50.0 million) (the "Binance Allowed Claim"), which claim shall rank *pari passu* with the claims of all general unsecured creditors of FTX Trading.

4.      The Binance Allowed Claim shall not be subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, disallowance, or defense under any provision of the Bankruptcy Code (including, without limitation, under sections 502(d), 510, 544, 547 and 548 of the Bankruptcy Code), other applicable law, or equity.

5.      Neither FTX Europe, FTX Trading, any of their affiliated Debtors, nor any entities that are subject to the control of the Debtors shall seek to object to, disallow, avoid, subordinate, recharacterize, recover, attack, offset, counterclaim, or defend against the Binance Allowed Claim under any provision of the Bankruptcy Code (including, without limitation, under sections 502(d), 510, 544, 547 and 548 of the Bankruptcy Code), other applicable law, or equity.

6.      Neither CM-Equity, Binance, nor any of their affiliates shall (x) take any action adverse to the Debtors in the Chapter 11 Cases or the Moratorium Proceeding with respect to the Collateral Claim Settlement Agreement or the Inter-Debtor Restructuring Agreement or the transactions contemplated thereby, other than to oppose a Challenge (as defined in the Collateral Claim Settlement Agreement) or to pursue any claims arising out of, resulting from or related to a breach of the Collateral Claim Settlement Agreement by the Debtors or (y) seek to

-3-

prosecute the CME Claim or the Binance Claim against any person (other than, in respect of the CME Claim, following the termination in accordance with the Collateral Claim Settlement Agreement of the releases set forth in Section 1 of the Collateral Claim Settlement Agreement or, in respect of the Binance Claim, following the termination in accordance with the Collateral Claim Settlement Agreement of the releases set forth in Section 2(a) of the Collateral Claim Settlement Agreement) or challenge the validity of the Collateral Claim Settlement Agreement in the Chapter 11 Cases, the Moratorium Proceeding or any other forum.

7.    The failure to specifically include or reference any particular term or provision of any of the FTX Europe Restructuring Agreements in this Order shall not diminish or impair the effectiveness of such term or provision.

8.    To the extent FTX Trading is obligated to reimburse FTX Europe in accordance with and subject to the terms of section 2 the Restructuring Payment Agreement, such obligation shall be entitled to superpriority administrative expense status under sections 503(b) and 507(a) of the Bankruptcy Code against FTX Trading.

9.    The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

10.    This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

11.    This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.  For the avoidance of doubt, neither this Order nor the Collateral Claim Settlement Agreement shall cause, create, or modify in any manner the jurisdiction or venue of this Court, United States District

-4-

Court for the District of Delaware, the Delaware Court of Chancery, or any other court for any matters other than Applicable Proceedings (as defined in the Collateral Claim Settlement Agreement), and the parties to the Collateral Claim Settlement Agreement reserve all rights with respect to jurisdiction and venue for any purposes unrelated to this Order, and the Collateral Claim Settlement Agreement, which shall not be modified in any way by entry into the Collateral Claim Settlement Agreement or this Order. For the further avoidance of doubt, nothing herein shall constitute consent to or otherwise create jurisdiction or venue in this Court, United States District Court for the District of Delaware, the Delaware Court of Chancery, or any other court for any affiliate, shareholder, ultimate beneficial owner, or current or former officers, directors, employees, agents, advisors, or representatives of Binance.

Dated: _____  
       Wilmington, Delaware

_____  
The Honorable John T. Dorsey  
United States Bankruptcy Judge

-5-

## **Exhibit B**

Inter-Debtor Restructuring Agreement

Execution Version

**INTER-DEBTOR RESTRUCTURING AGREEMENT**

This INTER-DEBTOR RESTRUCTURING AGREEMENT (this "Agreement") is made as of April ___, 2024, by and among FTX Europe AG, a Swiss stock corporation ("FTX Europe"), FTX Trading Ltd., an Antigua company ("FTX Trading"), Alameda Research Ltd., a British Virgin Islands limited company ("Alameda") and West Realm Shires Inc., a Delaware corporation ("WRS"). The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

RECITALS

WHEREAS, on November 11, 2022 and November 14, 2022, FTX Trading and certain of its affiliates, including FTX Europe and Alameda (collectively, the "Debtors") commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code by filing petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered as *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)) (the "Bankruptcy Proceedings");

WHEREAS, on April 11, 2023, FTX Europe entered into moratorium proceedings under the laws of Switzerland (the "Swiss Moratorium Proceedings") before the Composition Court of the District Court Höfe in Wollerau, Schwyz, Switzerland (the "Swiss Court");

WHEREAS, on February 7, 2024, FTX Europe and certain purchaser parties thereto entered into that certain Share and Asset Purchase Agreement (the "SAPA"), pursuant to which such parties have agreed to purchase from FTX Europe certain assets of FTX Europe, including shares of certain of FTX Europe's subsidiaries;

WHEREAS, FTX Europe holds a claim in the amount of one hundred and two million four hundred and eighty three thousand Dollars ($102,483,000) against FTX Trading in respect of certain crypto assets transferred from FTX Europe to FTX Trading prior to the commencement of the Bankruptcy Proceedings (the "FTX Europe Claim"), which it intends to release pursuant to this Agreement;

WHEREAS, Alameda holds a claim in the amount of sixty million one hundred and fifty thousand Dollars ($60,150,000) against FTX Europe in respect of certain crypto assets transferred from Alameda to FTX Europe prior to the commencement of the Bankruptcy Proceedings (the "Original Alameda Claim"), which claim it intends to partially release in the amount of thirty eight million seven hundred and six thousand Dollars ($38,706,000) pursuant to this Agreement (the "Released Alameda Claim");

WHEREAS, WRS and FTX Trading hold claims totaling approximately three million three hundred and twenty four thousand four hundred and seventeen Dollars

($3,324,417) against FTX Europe in respect of expenses borne by WRS and FTX Trading on behalf of FTX Europe against prior to and after the commencement of the Bankruptcy Proceedings (the "Expenses Claims"), which they intend to release pursuant to this Agreement;

WHEREAS, on or around the date hereof, FTX Trading, FTX Europe, CM-Equity AG and Binance (Switzerland) AG have entered into a settlement agreement relating to the settlement of certain claims among such parties (the "Collateral Claim Settlement Agreement"); and

WHEREAS, the Parties desire to enter into the releases set forth herein, conditional upon (i) the entry of an order by the Bankruptcy Court approving the settlement and releases set forth in this Agreement and the Collateral Claim Settlement Agreement, (ii) the entry of an order by the Swiss Court approving the settlement and releases set forth in this Agreement and the Collateral Claim Settlement Agreement and (iii) the execution and delivery of the Collateral Claim Settlement Agreement by the parties thereto and the satisfaction of the settlement conditions thereunder (clauses (i), (ii) and (iii) collectively the "Settlement Conditions").

NOW, THEREFORE, in consideration of the premises and mutual releases contained herein and in the Collateral Claim Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Partial Release of FTX Europe.

Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, each of Alameda, FTX Trading and WRS, on behalf of themselves and their affiliates, and each such person's respective successors and assigns (collectively, the "FTX Debtor Releasors"), to the fullest extent permitted by law, hereby generally, irrevocably, forever, fully and unconditionally release, waive and discharge, FTX Europe and its respective successors and assigns from and with respect to any and all claims, obligations, rights, suits, damages, causes of actions, remedies and liabilities, of any kind, nature or description ("Claims"), whether known or unknown, contingent or not contingent, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated or unliquidated, secured or unsecured, perfected or unperfected, subordinated or unsubordinated, joint or several, vested or unvested, executory, determined determinable or otherwise, whether or not the same is required to be accrued on the financial statements of any person or entity and howsoever arising, whether based on any law or right of action, and whether arising under any contract, agreement, arrangement, commitment or undertaking or in tort, which the FTX Debtor Releasors, or any of them, ever had or now has or can have or shall or may hereafter have against FTX Europe, including but not limited to the Released Alameda Claim and the Expenses Claims but excluding the Retained Alameda Claim (as defined below) (the "FTX Europe Released Matters"). The releases contemplated herein are intended to be as broad as permitted by law and are intended to, and do, extinguish all Claims of any kind whatsoever, other than the Retained Alameda Claim, whether at law or in equity or otherwise, that are based on or relate to facts, conditions, actions or omissions (known or unknown)

-2-

with respect to the FTX Europe Released Matters that have existed or occurred at any time prior to and including the date hereof.

Section 2.     Release of Global Debtors.

Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, FTX Europe and its respective successors and assigns, to the fullest extent permitted by law, hereby generally, irrevocably, forever, fully and unconditionally release, waive and discharge, the Debtors and their current and former affiliates (other than FTX Europe and its subsidiaries) together with their respective current or former officers, directors, employees, agents, advisors and representatives, and each such person or entities respective successors and assigns successors and assigns (the "Debtor Releasees") from and with respect to any and all Claims, whether known or unknown, contingent or not contingent, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated or unliquidated, secured or unsecured, perfected or unperfected, subordinated or unsubordinated, joint or several, vested or unvested, executory, determined determinable or otherwise, whether or not the same is required to be accrued on the financial statements of any person or entity and howsoever arising, whether based on any law or right of action, and whether arising under any contract, agreement, arrangement, commitment or undertaking or in tort, which FTX Europe ever had or now has or can have or shall or may hereafter have against the Debtor Releasees, including but not limited to the FTX Europe Claim (the "Global Debtor Released Matters"). The releases contemplated herein are intended to be as broad as permitted by law and are intended to, and do, extinguish all Claims of any kind whatsoever, whether at law or in equity or otherwise, that are based on or relate to facts, conditions, actions or omissions (known or unknown) with respect to the Global Debtor Released Matters that have existed or occurred at any time prior to and including the date hereof.

Section 3.     Retained Alameda Claim.

(a)     Notwithstanding anything to the contrary in this Agreement, and for the avoidance of doubt, FTX Europe Released Matters shall not include the remainder of the Original Alameda Claim other than the Released Alameda Claim, and Alameda shall retain a claim in the amount of twenty one million four hundred and forty four thousand Dollars ($21,444,000) against FTX Europe, which claim is not released pursuant to this Agreement (the "Retained Alameda Claim"). The Retained Alameda Claim shall become due and payable in instalments as follows:

(i)     The first instalment shall become due and payable upon the later of (A) the termination of the Swiss Moratorium Proceeding and (B) the payment, or the provision for the payment, of all claims against FTX Europe existing as of the date hereof as set forth on Exhibit A ("Existing Claims"), and shall be payable in an amount equal to the cash balance of FTX Europe in excess of two million Dollars ($2,000,000) immediately following the payment of (1) the Existing Claims and (2) any amounts payable to FTX Trading pursuant to that certain Restructuring Payment Agreement between FTX Europe and FTX Trading of even date herewith; and

-3-

(ii)    Subsequent instalments shall become due and payable in the amount of the purchase price payments received by FTX Europe under the SAPA following payment of the first instalment, and shall be payable in the amount of such purchase price payments so received until the Retained Alameda Claim is paid in full.

(b)    Until the date on which the Swiss Moratorium Proceeding is terminated, (i) the obligation of FTX Europe to pay the Retained Alameda Claim shall be subordinated in right of payment to all existing and future liabilities ("Senior Liabilities") and (ii) in the event of (A) insolvency proceedings (art. 175, Art. 192 of the Swiss Debt Enforcement and Bankruptcy Act (DEBA)), (B) initiation of insolvency proceedings due to deficiencies in the organization (art. 731b para. 1bis (3) of the Swiss Code of Obligations (CO)) or (C) the entry by FTX Europe into a composition agreement with assignment of assets (art. 317 DEBA), Alameda shall waive the Retained Alameda Claim in whole or in part to the extent necessary to allow FTX Europe to pay the Senior Liabilities plus the costs of the liquidation, composition moratorium or insolvency proceedings.

Section 4.    California Civil Code Waiver.

Each of the Parties hereby expressly waives to the fullest extent permitted by law the provisions, rights and benefits of California Civil Code Section 1542 (or any similar law), which provides:

*A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Section 5.    Termination.

(a)    This Agreement shall terminate automatically upon full or partial termination of the Collateral Claim Settlement Agreement pursuant to Section 5(a), Section 5(b) or Section 5(d) thereof. Upon the termination of this Agreement pursuant to this Section 5, other than as provided by Section 5(b), this Agreement shall be of no further force and effect and each Party shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all claims or causes of action.

(b)    Notwithstanding anything else to the contrary herein, Section 6(c), Section 6(d) and Section 6(f) shall survive any termination of this Agreement.

Section 6.    Miscellaneous.

(a)    This Agreement and Collateral Claim Settlement Agreement together set forth the entire understanding of the parties hereto relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior agreements, written or oral, among the parties hereto with respect to the subject matter of this Agreement.   No representation,

-4-

warranty, inducement, promise, understanding or condition not set forth in this Agreement has been made or relied on by any party in entering into this Agreement. Nothing in this Agreement, expressed or implied, is intended to confer on any person or entity, other than the Parties or their respective successors and assigns, any rights, remedies, obligations or liabilities; provided, that Section 2 of this Agreement shall be enforceable by any Debtor Releasee.

(b)    Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited from the provision had it not been waived.

(c)    This Agreement will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such laws.

(d)    Without limiting a Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in Section 6(f); provided, however, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such legal, administrative or judicial proceedings, in the Delaware Court of Chancery, for the resolution of any such claim or dispute. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable laws, any objection which it may now or hereafter have to the laying of venue of any such action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each Party consents to process being served by the other Party in any legal, administrative or judicial proceedings by delivery of a copy thereof in accordance with the provisions of Section 6(f); provided, however, that such service will not be effective until the actual receipt thereof by the Party being served. Each Party waives any right to trial by jury in any legal, administrative or judicial proceedings regarding this Agreement or any provision hereof.

(e)    As used in this Agreement, references to (i) the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement, (ii) the Preamble, Recitals or Sections refer to the Preamble, a Recital or a Section of this Agreement unless otherwise indicated and (iii) all references to "Dollars", "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified. Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this

-5-

Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the person referred to may require. The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

(f)    All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day (defined as any day other than a Saturday or Sunday or a day on which banks located in the city of New York or Zurich, Switzerland are authorized or required by statute to close) sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to FTX Europe:

FTX Europe AG
Churerstrasse 135
8808 Pfäffikon SZ
Switzerland
Attention: Arturo Giovanoli
Email: agiovanoli@matrixs.com

*With a copy (which shall not constitute notice) to both*:

Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
United Kingdom
Attention:  Evan S. Simpson
                   Oderisio de Vito Piscicelli
                   Alexa J. Kranzley
Telephone: +44 20 7959 8426
                   +44 20 7959 8589
                   +1 212 558 7893
Email:       simpsone@sullcrom.com
                   devitopiscicellio@sullcrom.com
                   kranzleya@sullcrom.com

and

Holenstein Brusa Ltd
Utoquai 29 / 31
8008 Zurich

-6-

Switzerland
Attention:  Thomas Zemp
                    Dusan Knezevic
Telephone: +41 44 257 20 00
Email:      Zemp@hol-law.ch
                    Knezevic@hol-law.ch

If to FTX Trading, Alameda and/or WRS:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attention: John J. Ray III
Email: jray@greylockpartnersllc.com

*With a copy (which shall not constitute notice) to*:

Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
United Kingdom
Attention:  Evan S. Simpson
                    Oderisio de Vito Piscicelli
                    Alexa J. Kranzley
Telephone: +44 20 7959 8426
                    +44 20 7959 8589
                    +1 212 558 7893
Email:      simpsone@sullcrom.com
                    devitopiscicellio@sullcrom.com
                    kranzleya@sullcrom.com

     (g)    This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

*[Signatures Appear on the Following Page]*

-7-

**FTX EUROPE AG**

By:

_____
Name:
Title:

**FTX TRADING LTD.**

By:

_____
Name:
Title

**ALAMEDA RESEARCH LTD.**

By:

_____
Name:
Title:

**WEST REALM SHIRES INC.**

By:

_____
Name:
Title:

[*Signature Page to the Inter-Debtor Restructuring Agreement*]

**APPROVAL OF SWISS ADMINISTRATOR TO FTX EUROPE TO ENTER INTO THIS AGREEMENT:**


**HOLENSTEIN BRUSA LTD** (not in its own name, but solely as Swiss Court appointed Administrator and subject to the Swiss Court Approval)




By: _____
    Name:


By: _____
    Name:


*[Signature Page to the Inter-Debtor Restructuring Agreement]*

**Exhibit A**
**Existing Claims**