# **EXHIBIT C**

**Restructuring Payment Agreement**

Execution Version

## RESTRUCTURING PAYMENT AGREEMENT

This RESTRUCTURING PAYMENT AGREEMENT (this "Agreement") is made as of April 7, 2024, by and among FTX Europe AG, a Swiss stock corporation ("FTX Europe") and FTX Trading Ltd., an Antigua company ("FTX Trading") The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

RECITALS

WHEREAS, on January 29, 2024, FTX Trading, the Purchaser Parties (as defined below) and certain parties related thereto (the Purchaser Parties and those other parties, together, the "Settling Parties") entered into that certain Cooperation Term Sheet (the "Cooperation Term Sheet") setting forth the parties' mutual understanding regarding a series of related transactions referred to in the subsequent paragraphs;

WHEREAS, as contemplated by the Cooperation Term Sheet, on February 7, 2024, FTX Europe and certain purchaser parties thereto (the "Purchaser Parties") entered into that certain Share and Asset Purchase Agreement (the "SAPA"), pursuant to which the Purchaser Parties have agreed to purchase from FTX Europe certain assets of FTX Europe, including shares of certain of FTX Europe's subsidiaries (the "Transferred Subsidiaries") for aggregate consideration of thirty-two million seven hundred thousand Dollars ($32,700,000) (the "Purchase Price");

WHEREAS, on February 7, 2024, as contemplated by the Cooperation Term sheet and as an inducement for the Purchaser Parties to enter into the SAPA, FTX Trading agreed to provide certain indemnities to the Purchaser Parties relating to the return of customer assets by FTX EU Ltd, a Transferred Subsidiary, as set out in the Release and Indemnity Agreement (as defined in the SAPA) (the "FTX Cyprus Indemnities");

WHEREAS, on February 7, 2024, as contemplated by the Cooperation Term Sheet, FTX Trading agreed to settle certain litigation against the Settling Parties (the "Litigation Settlement");

WHEREAS, on April  , 2024, as contemplated as a condition precedent to completion the SAPA, (i) FTX Trading, FTX Europe, Alameda Research Ltd. ("Alameda") and West Realm Shires, Inc. ("WRS") entered into that certain Inter-Debtor Restructuring Agreement (the "Inter-Debtor Restructuring Agreement"), pursuant to which FTX Europe, on the one hand, and FTX Trading, Alameda and WRS, on the other hand, agreed to mutual releases of claims and (ii) FTX Trading, FTX Europe, CM-Equity AG ("CM-Equity") and Binance (Switzerland) AG ("Binance") entered into that certain Collateral Claim Settlement Agreement (the "Collateral Claim Settlement Agreement"), pursuant to which, *inter alia*, CM-Equity agreed to release FTX Europe from certain claims, and FTX Trading agreed to assume an allowed claim in favor of Binance (the transactions contemplated by the two foregoing agreements, the "Restructuring");

WHEREAS, the Parties acknowledge that by entering into the Litigation Settlement, the FTX Cyprus Indemnities and the Restructuring FTX Trading has provided significant value to FTX Europe, and therefore, in consideration therefor, FTX Europe will make

cash payments to FTX Trading up to an aggregate amount of seven million seven hundred thousand Dollars ($7,700,000) (the "Consideration Amount") on the terms and subject to the conditions set out in this Agreement (the SAPA, the Restructuring and the transactions contemplated by this Agreement together the "Restructuring Transaction"); and

WHEREAS, on April 11, 2023, FTX Europe entered into moratorium proceedings (the "Swiss Moratorium Proceedings") under the laws of Switzerland before the Composition Court of the District Court Höfe in Wollerau, Schwyz, Switzerland (the "Swiss Court") and Holenstein Brusa AG was appointed as the provisional administrator (*provisorische Sachwalterin*) by order of the Swiss Court dated 11 April 2023, extended by order of 21 July 2023, and then as the definitive administrator (*definitive Sachwalterin*) by order of the Swiss Court dated 24 November 2023 (the "Administrator");

NOW, THEREFORE, the Parties hereto agree as follows:

Section 1.   Consideration Payment.

(a)   Within twenty (20) Business Days following the satisfaction or waiver of each of the conditions set forth in Section 1(b), FTX Europe shall pay FTX Trading the Consideration Amount in immediately available funds to an account designated by FTX Trading (the "Consideration Payment").

(b)   FTX Europe's obligation to make the Consideration Payment is subject to the satisfaction of each of the following conditions:

(i)   the Swiss Court shall have entered an order approving entry into the Restructuring Transaction and the payments contemplated hereby;

(ii)   a ruling from the Swiss Federal Tax Authority (the "SFTA") shall have been obtained confirming that the Consideration Payment is considered to be at arm's length for the purposes of Swiss federal withholding tax and Swiss stamp duty (the "Swiss Tax Ruling");

(iii)   each of the Inter-Debtor Restructuring Agreement and the Collateral Claim Settlement Agreement shall be in full force and effect, and all conditions to the effectiveness thereof shall have been satisfied;

(iv)   the Swiss Moratorium Proceeding shall have been successfully exited as confirmed by a final, legally binding Swiss Court order; and

(v)   the Closing shall have occurred under the SAPA.

(c)   Promptly following the date hereof FTX Europe shall submit a request in respect of the Swiss Tax Ruling to the SFTA. If the SFTA does not issue the Swiss Tax Ruling within two (2) months of FTX Europe's submission, or if the SFTA declines to issue the Swiss Tax Ruling on the terms requested, the parties shall negotiate in good faith such amendments to this Agreement as may be necessary or advisable to obtain a favorable ruling from the SFTA regarding the tax treatment of the Consideration Payment.

Section 2.    Shortfall Indemnity.

If the board of directors of FTX Europe determines in good faith that FTX Europe is over-indebted and prepares an audited balance sheet demonstrating such over-indebtedness in accordance with applicable law and Swiss accounting principles, FTX Trading shall reimburse FTX Europe in cash equal to the amount of such over-indebtedness, up to a maximum amount of Consideration Payment actually received by FTX Trading (less any withholding tax paid on the Consideration Payment).

Section 3.    Tax Matters.

The Parties shall cooperate with each other in good faith with respect to the U.S. federal income tax treatment and reporting of the transactions described in the Collateral Claim Settlement Agreement, the Cooperation Term Sheet, the SAPA, and the Inter-Debtor Restructuring Agreement. In particular, the Parties intend and agree to treat, to the extent permitted by law, for U.S. federal income tax purposes and other applicable tax purposes, (i) the payment of Consideration Amount under this Agreement as a reimbursement to FTX Trading for the FTX Cyprus Indemnities that it provided on behalf of FTX Europe and (ii) the assumption by FTX Trading of the Allowed Claim (as defined under the Collateral Claim Settlement Agreement) as a partial satisfaction of the FTX Europe Claim (as defined under the Inter-Debtor Restructuring Agreement).

Section 4.    Termination.

(a)    Prior to the satisfaction of the conditions set out in Section 1(b), this Agreement shall terminate automatically upon the termination of the Collateral Claim Settlement Agreement or the Inter-Debtor Restructuring Agreement in accordance with its terms.

(b)    Following the satisfaction of the conditions set out in Section 1(b), this Agreement shall terminate automatically upon the completion of the solvent liquidation of FTX Europe.

(c)    Upon the termination of this Agreement, other than as provided by Section 4(d), this Agreement shall be of no further force and effect and each Party shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all claims or causes of action.

(d)    Notwithstanding anything else to the contrary herein, Section 5(c), Section 5(d) and Section 5(f) shall survive any termination of this Agreement.

Section 5.    Miscellaneous.

(a)    This Agreement sets forth the entire understanding of the Parties relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior

agreements, written or oral, among the Parties with respect to the subject matter of this Agreement. No representation, warranty, inducement, promise, understanding or condition not set forth in this Agreement has been made or relied on by any Party in entering into this Agreement. Nothing in this Agreement, expressed or implied, is intended to confer on any person or entity, other than the Parties or their respective successors and assigns, any rights, remedies, obligations or liabilities.

(b)     Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited from the provision had it not been waived.

(c)     This Agreement will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such laws.

(d)     Without limiting a Party's right to appeal any order of the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in Section 5(f); provided, however, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such legal, administrative or judicial proceedings, in the Delaware Court of Chancery, for the resolution of any such claim or dispute. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable laws, any objection which it may now or hereafter have to the laying of venue of any such action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each Party consents to process being served by the other Party in any legal, administrative or judicial proceedings by delivery of a copy thereof in accordance with the provisions of Section 5(f); provided, however, that such service will not be effective until the actual receipt thereof by the Party being served. Each Party waives any right to trial by jury in any legal, administrative or judicial proceedings regarding this Agreement or any provision hereof.

(e)     As used in this Agreement, references to (i) the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement, (ii) the Preamble, Recitals or Sections refer to the Preamble, a Recital or a Section of this Agreement unless otherwise indicated and (iii) all references to "Dollars", "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified. Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this

Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the person referred to may require. The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

(f) All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day (defined as any day other than a Saturday or Sunday or a day on which banks located in the city of New York or Zurich, Switzerland are authorized or required by statute to close) sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to FTX Europe:

> FTX Europe AG
> Churerstrasse 135
> 8808 Pfäffikon SZ
> Switzerland
> Attention: Arturo Giovanoli
> Email: agiovanoli@matrixs.com
>
> *With a copy (which shall not constitute notice) to both*:
>
> Sullivan & Cromwell LLP
> 1 New Fetter Lane
> London EC4A 1AN
> United Kingdom
> Attention:  Evan S. Simpson
>             Oderisio de Vito Piscicelli
>             Alexa J. Kranzley
> Telephone: +44 20 7959 8426
>            +44 20 7959 8589
>            +1 212 558 7893
> Email:    simpsone@sullcrom.com
>           devitopiscicellio@sullcrom.com
>           kranzleya@sullcrom.com
>
> and
>
> Holenstein Brusa Ltd
> Utoquai 29 / 31
> 8008 Zurich

    Switzerland
    Attention:  Thomas Zemp
                Dusan Knezevic
    Telephone: +41 44 257 20 00
    Email:    Zemp@hol-law.ch
               Knezevic@hol-law.ch

If to FTX Trading:

    Sullivan & Cromwell LLP
    125 Broad Street
    New York, NY 10004
    Attention: John J. Ray III
    Email: jray@greylockpartnersllc.com

*With a copy (which shall not constitute notice) to*:

    Sullivan & Cromwell LLP
    1 New Fetter Lane
    London EC4A 1AN
    United Kingdom
    Attention:  Evan S. Simpson
                Oderisio de Vito Piscicelli
                Alexa J. Kranzley
    Telephone: +44 20 7959 8426
                 +44 20 7959 8589
                 +1 212 558 7893
    Email:    simpsone@sullcrom.com
               devitopiscicellio@sullcrom.com
               kranzleya@sullcrom.com

        (g)     This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

[*Signatures Appear on the Following Page*]

**FTX EUROPE AG**

By: _/s/ illegible_

Name: Arturo Provacoli
Title: Sole Board Member


**FTX TRADING LTD.**

By: _____

Name:
Title

*[Signature Page to the Restructuring Payment Agreement]*

**FTX EUROPE AG**

By: _____
Name: Arturo Giovanoli
Title: Sole Member of the Board


**FTX TRADING LTD.**

By: _____*/s/ John J. Ray III*_____
Name: John J. Ray III
Title: Chief Executive Officer

*[Signature Page to the Restructuring Payment Agreement]*

**APPROVAL OF SWISS ADMINISTRATOR TO FTX EUROPE TO ENTER INTO THIS AGREEMENT:**

**HOLENSTEIN BRUSA LTD** (not in its own name, but solely as Swiss Court appointed Administrator and subject to the Swiss Court Approval)

By: _____
Name: DUSAN KNEZEVIC

By: _____
Name:

*[Signature Page to the Restructuring Payment Agreement]*

**APPROVAL OF SWISS ADMINISTRATOR TO FTX EUROPE TO ENTER INTO THIS AGREEMENT:**

**HOLENSTEIN BRUSA LTD** (not in its own name, but solely as Swiss Court appointed Administrator and subject to the Swiss Court Approval)

By: _____
Name: Thomas Zehnb

By: _____
Name:

*[Signature Page to the Restructuring Payment Agreement]*