## EXHIBIT D

**Inter-Debtor Restructuring Agreement**

Execution Version

**INTER-DEBTOR RESTRUCTURING AGREEMENT**

This INTER-DEBTOR RESTRUCTURING AGREEMENT (this "Agreement") is made as of April 7, 2024, by and among FTX Europe AG, a Swiss stock corporation ("FTX Europe"), FTX Trading Ltd., an Antigua company ("FTX Trading"), Alameda Research Ltd., a British Virgin Islands limited company ("Alameda") and West Realm Shires Inc., a Delaware corporation ("WRS"). The signatories to this Agreement are collectively referred to as the "Parties" and individually as a "Party".

## RECITALS

WHEREAS, on November 11, 2022 and November 14, 2022, FTX Trading and certain of its affiliates, including FTX Europe and Alameda (collectively, the "Debtors") commenced voluntary proceedings under Chapter 11 of Title 11 of the United States Code by filing petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered as *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)) (the "Bankruptcy Proceedings");

WHEREAS, on April 11, 2023, FTX Europe entered into moratorium proceedings under the laws of Switzerland (the "Swiss Moratorium Proceedings") before the Composition Court of the District Court Höfe in Wollerau, Schwyz, Switzerland (the "Swiss Court");

WHEREAS, on February 7, 2024, FTX Europe and certain purchaser parties thereto entered into that certain Share and Asset Purchase Agreement (the "SAPA"), pursuant to which such parties have agreed to purchase from FTX Europe certain assets of FTX Europe, including shares of certain of FTX Europe's subsidiaries;

WHEREAS, FTX Europe holds a claim in the amount of one hundred and two million four hundred and eighty three thousand Dollars ($102,483,000) against FTX Trading in respect of certain crypto assets transferred from FTX Europe to FTX Trading prior to the commencement of the Bankruptcy Proceedings (the "FTX Europe Claim"), which it intends to release pursuant to this Agreement;

WHEREAS, Alameda holds a claim in the amount of sixty million one hundred and fifty thousand Dollars ($60,150,000) against FTX Europe in respect of certain crypto assets transferred from Alameda to FTX Europe prior to the commencement of the Bankruptcy Proceedings (the "Original Alameda Claim"), which claim it intends to partially release in the amount of thirty eight million seven hundred and six thousand Dollars ($38,706,000) pursuant to this Agreement (the "Released Alameda Claim");

WHEREAS, WRS and FTX Trading hold claims totaling approximately three million three hundred and twenty four thousand four hundred and seventeen Dollars

($3,324,417) against FTX Europe in respect of expenses borne by WRS and FTX Trading on behalf of FTX Europe against prior to and after the commencement of the Bankruptcy Proceedings (the "Expenses Claims"), which they intend to release pursuant to this Agreement.

WHEREAS, on or around the date hereof, FTX Trading, FTX Europe, CM-Equity AG and Binance (Switzerland) AG have entered into a settlement agreement relating to the settlement of certain claims among such parties (the "Collateral Claim Settlement Agreement"); and

WHEREAS, the Parties desire to enter into the releases set forth herein, conditional upon (i) the entry of an order by the Bankruptcy Court approving the settlement and releases set forth in this Agreement and the Collateral Claim Settlement Agreement, (ii) the entry of an order by the Swiss Court approving the settlement and releases set forth in this Agreement and the Collateral Claim Settlement Agreement and (iii) the execution and delivery of the Collateral Claim Settlement Agreement by the parties thereto and the satisfaction of the settlement conditions thereunder (clauses (i), (ii) and (iii) collectively the "Settlement Conditions").

NOW, THEREFORE, in consideration of the premises and mutual releases contained herein and in the Collateral Claim Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Partial Release of FTX Europe.

Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, each of Alameda, FTX Trading and WRS, on behalf of themselves and their affiliates, and each such person's respective successors and assigns (collectively, the "FTX Debtor Releasors"), to the fullest extent permitted by law, hereby generally, irrevocably, forever, fully and unconditionally release, waive and discharge, FTX Europe and its respective successors and assigns from and with respect to any and all claims, obligations, rights, suits, damages, causes of actions, remedies and liabilities, of any kind, nature or description ("Claims"), whether known or unknown, contingent or not contingent, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated or unliquidated, secured or unsecured, perfected or unperfected, subordinated or unsubordinated, joint or several, vested or unvested, executory, determined determinable or otherwise, whether or not the same is required to be accrued on the financial statements of any person or entity and howsoever arising, whether based on any law or right of action, and whether arising under any contract, agreement, arrangement, commitment or undertaking or in tort, which the FTX Debtor Releasors, or any of them, ever had or now has or can have or shall or may hereafter have against FTX Europe, including but not limited to the Released Alameda Claim and the Expenses Claims but excluding the Retained Alameda Claim (as defined below) (the "FTX Europe Released Matters"). The releases contemplated herein are intended to be as broad as permitted by law and are intended to, and do, extinguish all Claims of any kind whatsoever, other than the Retained Alameda Claim, whether at law or in equity or otherwise, that are based on or relate to facts, conditions, actions or omissions (known or unknown)

with respect to the FTX Europe Released Matters that have existed or occurred at any time prior to and including the date hereof.

Section 2.      Release of Global Debtors.

Subject to the satisfaction of the Settlement Conditions, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, as of the date on which the Settlement Conditions are satisfied, FTX Europe and its respective successors and assigns, to the fullest extent permitted by law, hereby generally, irrevocably, forever, fully and unconditionally release, waive and discharge, the Debtors and their current and former affiliates (other than FTX Europe and its subsidiaries) together with their respective current or former officers, directors, employees, agents, advisors and representatives, and each such person or entities respective successors and assigns successors and assigns (the "Debtor Releasees") from and with respect to any and all Claims, whether known or unknown, contingent or not contingent, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, matured or unmatured, disputed or undisputed, liquidated or unliquidated, secured or unsecured, perfected or unperfected, subordinated or unsubordinated, joint or several, vested or unvested, executory, determined determinable or otherwise, whether or not the same is required to be accrued on the financial statements of any person or entity and howsoever arising, whether based on any law or right of action, and whether arising under any contract, agreement, arrangement, commitment or undertaking or in tort, which FTX Europe ever had or now has or can have or shall or may hereafter have against the Debtor Releasees, including but not limited to the FTX Europe Claim (the "Global Debtor Released Matters"). The releases contemplated herein are intended to be as broad as permitted by law and are intended to, and do, extinguish all Claims of any kind whatsoever, whether at law or in equity or otherwise, that are based on or relate to facts, conditions, actions or omissions (known or unknown) with respect to the Global Debtor Released Matters that have existed or occurred at any time prior to and including the date hereof.

Section 3.      Retained Alameda Claim.

(a)      Notwithstanding anything to the contrary in this Agreement, and for the avoidance of doubt, FTX Europe Released Matters shall not include the remainder of the Original Alameda Claim other than the Released Alameda Claim, and Alameda shall retain a claim in the amount of twenty one million four hundred and forty four thousand Dollars ($21,444,000) against FTX Europe, which claim is not released pursuant to this Agreement (the "Retained Alameda Claim"). The Retained Alameda Claim shall become due and payable in instalments as follows:

(i)      The first instalment shall become due and payable upon the later of (A) the termination of the Swiss Moratorium Proceeding and (B) the payment, or the provision for the payment, of all claims against FTX Europe existing as of the date hereof as set forth on Exhibit A ("Existing Claims"), and shall be payable in an amount equal to the cash balance of FTX Europe in excess of two million Dollars ($2,000,000) immediately following the payment of (1) the Existing Claims and (2) any amounts payable to FTX Trading pursuant to that certain Restructuring Payment Agreement between FTX Europe and FTX Trading of even date herewith; and

-3-

(ii)     Subsequent instalments shall become due and payable in the amount of the purchase price payments received by FTX Europe under the SAPA following payment of the first instalment, and shall be payable in the amount of such purchase price payments so received until the Retained Alameda Claim is paid in full.

(b)     Until the date on which the Swiss Moratorium Proceeding is terminated, (i) the obligation of FTX Europe to pay the Retained Alameda Claim shall be subordinated in right of payment to all existing and future liabilities ("Senior Liabilities") and (ii) in the event of (A) insolvency proceedings (art. 175, Art. 192 of the Swiss Debt Enforcement and Bankruptcy Act (DEBA)), (B) initiation of insolvency proceedings due to deficiencies in the organization (art. 731b para. 1bis (3) of the Swiss Code of Obligations (CO)) or (C) the entry by FTX Europe into a composition agreement with assignment of assets (art. 317 DEBA), Alameda shall waive the Retained Alameda Claim in whole or in part to the extent necessary to allow FTX Europe to pay the Senior Liabilities plus the costs of the liquidation, composition moratorium or insolvency proceedings.

Section 4.     California Civil Code Waiver.

Each of the Parties hereby expressly waives to the fullest extent permitted by law the provisions, rights and benefits of California Civil Code Section 1542 (or any similar law), which provides:

*A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Section 5.     Termination.

(a)     This Agreement shall terminate automatically upon full or partial termination of the Collateral Claim Settlement Agreement pursuant to Section 5(a), Section 5(b) or Section 5(d) thereof. Upon the termination of this Agreement pursuant to this Section 5, other than as provided by Section 5(b), this Agreement shall be of no further force and effect and each Party shall be released from its commitments, undertakings, and agreements under or related to this Agreement and shall have the rights and remedies that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement, including with respect to any and all claims or causes of action.

(b)     Notwithstanding anything else to the contrary herein, Section 6(c), Section 6(d) and Section 6(f) shall survive any termination of this Agreement.

Section 6.     Miscellaneous.

(a)     This Agreement and Collateral Claim Settlement Agreement together set forth the entire understanding of the parties hereto relating to the subject matter of this Agreement and supersede all contemporaneous understandings and prior agreements, written or oral, among the parties hereto with respect to the subject matter of this Agreement.  No representation,

-4-

warranty, inducement, promise, understanding or condition not set forth in this Agreement has been made or relied on by any party in entering into this Agreement. Nothing in this Agreement, expressed or implied, is intended to confer on any person or entity, other than the Parties or their respective successors and assigns, any rights, remedies, obligations or liabilities; <u>provided</u>, that <u>Section 2</u> of this Agreement shall be enforceable by any Debtor Releasee.

(b)      Any provision of this Agreement may be amended or waived, but only if the amendment or waiver is in writing and signed, in the case of an amendment, by each Party or, in the case of a waiver, by the Party that would have benefited from the provision had it not been waived.

(c)      This Agreement will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of each Party shall be determined in accordance with such laws.

(d)      Without limiting a Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and each Party hereby consents to and submits to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in <u>Section 6(f)</u>; <u>provided</u>, <u>however</u>, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, each Party agrees to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Delaware, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such legal, administrative or judicial proceedings, in the Delaware Court of Chancery, for the resolution of any such claim or dispute. Each Party hereby irrevocably waives, to the fullest extent permitted by applicable laws, any objection which it may now or hereafter have to the laying of venue of any such action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each Party agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each Party consents to process being served by the other Party in any legal, administrative or judicial proceedings by delivery of a copy thereof in accordance with the provisions of <u>Section 6(f)</u>; <u>provided</u>, <u>however</u>, that such service will not be effective until the actual receipt thereof by the Party being served. Each Party waives any right to trial by jury in any legal, administrative or judicial proceedings regarding this Agreement or any provision hereof.

(e)      As used in this Agreement, references to (i) the words "hereby", "hereof", "herein", "hereunder" or words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement, (ii) the Preamble, Recitals or Sections refer to the Preamble, a Recital or a Section of this Agreement unless otherwise indicated and (iii) all references to "Dollars", "$", "USD" and any currency amounts are in U.S. Dollars unless otherwise specified. Whenever the words "include", "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Any singular term in this

-5-

Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the person referred to may require. The various captions and headings contained in this Agreement are for reference purposes only and do not limit or otherwise affect any of the provisions of this Agreement.

(f)     All notices, requests and other communications under this Agreement to a Party will be in writing and will be deemed given (a) on the Business Day (defined as any day other than a Saturday or Sunday or a day on which banks located in the city of New York or Zurich, Switzerland are authorized or required by statute to close) sent, when delivered by hand or facsimile transmission (with confirmation) during normal business hours, (b) on the Business Day following the Business Day of sending, if delivered by nationally recognized overnight courier, or (c) on the third (3rd) Business Day following the Business Day of sending, if mailed by registered or certified mail return receipt requested, in each case to such Party at its address (or number) set forth below or such other address (or number) as the Party may specify by notice to the other Party.

If to FTX Europe:

> FTX Europe AG
> Churerstrasse 135
> 8808 Pfäffikon SZ
> Switzerland
> Attention: Arturo Giovanoli
> Email: agiovanoli@matrixs.com

> *With a copy (which shall not constitute notice) to both*:

> Sullivan & Cromwell LLP
> 1 New Fetter Lane
> London EC4A 1AN
> United Kingdom
> Attention:  Evan S. Simpson
>             Oderisio de Vito Piscicelli
>             Alexa J. Kranzley
> Telephone: +44 20 7959 8426
>            +44 20 7959 8589
>            +1 212 558 7893
> Email:     simpsone@sullcrom.com
>            devitopiscicellio@sullcrom.com
>            kranzleya@sullcrom.com

> and

> Holenstein Brusa Ltd
> Utoquai 29 / 31
> 8008 Zurich

4856-9347-2417 v.10

Switzerland
Attention:  Thomas Zemp
                    Dusan Knezevic
Telephone: +41 44 257 20 00
Email:      Zemp@hol-law.ch
                    Knezevic@hol-law.ch

If to FTX Trading, Alameda and/or WRS:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attention: John J. Ray III
Email: jray@greylockpartnersllc.com

*With a copy (which shall not constitute notice) to*:

Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
United Kingdom
Attention:  Evan S. Simpson
                    Oderisio de Vito Piscicelli
                    Alexa J. Kranzley
Telephone: +44 20 7959 8426
                    +44 20 7959 8589
                    +1 212 558 7893
Email:      simpsone@sullcrom.com
                    devitopiscicellio@sullcrom.com
                    kranzleya@sullcrom.com

(g)    This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

[*Signatures Appear on the Following Page*]

-7-

**FTX EUROPE AG**

By: _____

     Name: Arturo Piovardi

     Title: Sole Board Member


**FTX TRADING LTD.**

By: _____

     Name:

     Title


**ALAMEDA RESEARCH LTD.**

By: _____

     Name:

     Title:


**WEST REALM SHIRES INC.**

By: _____

     Name:

     Title:


[*Signature Page to the Inter-Debtor Restructuring Agreement*]

**FTX EUROPE AG**

By: _____

      Name:
      Title:


**FTX TRADING LTD.**

By: _____

      Name: John J. Ray III
      Title: Chief Executive Officer


**ALAMEDA RESEARCH LTD.**

By: _____

      Name: John J. Ray III
      Title: Chief Executive Officer


**WEST REALM SHIRES INC.**

By: _____

      Name: John J. Ray III
      Title: Chief Executive Officer

**APPROVAL OF SWISS ADMINISTRATOR TO FTX EUROPE TO ENTER INTO THIS AGREEMENT:**

**HOLENSTEIN BRUSA LTD** (not in its own name, but solely as Swiss Court appointed Administrator and subject to the Swiss Court Approval)

By: _____
Name: DUSAN KNEZEVIC

By: _____
Name:

*[Signature Page to the Inter-Debtor Restructuring Agreement]*

**APPROVAL OF SWISS ADMINISTRATOR TO FTX EUROPE TO ENTER INTO THIS AGREEMENT:**

**HOLENSTEIN BRUSA LTD** (not in its own name, but solely as Swiss Court appointed Administrator and subject to the Swiss Court Approval)

By: _____

Name: THOMAS ZEHR

By: _____

Name:

*[Signature Page to the Inter-Debtor Restructuring Agreement]*

**Exhibit A**
**Existing Claims**

Privileged & Confidential | Subject to FRE 408 and Similar Rules | Draft – Subject to Material Change

# FTX Europe
## Claims filed in Switzerland



### A total of CHF 134.2m were filed in Switzerland against FTX Europe AG

| FTX Europe – Claims filed in Switzerland | | |
|---|---|---|
| in CHF | Date | Claimed value |
| Ausgleichskasse Schwyz | 15/01/24 | 6,347.6 |
| Aristaflow GmbH, Ulm | 09/02/24 | 233,522.0 |
| CM-Equity AG | 09/02/24 | 67,639,373.3 |
| Kantonale Steuerverwaltung Appenzell Ausserrhoden | 24/01/24 | 872,819.2 |
| Amt für Finanzen Kanton Schwyz | 06/02/24 | 645,175.2 |
| Elite Fondations | 08/02/24 | 79,435.8 |
| Gemeinde Freienbach | 08/02/24 | 628.3 |
| Herr Gerald Kleinecke | 21/01/24 | 462,398.1 |
| Herr Jürg Bavaud | 09/02/24 | 383,030.0 |
| Herr Dr. Marcel Lötscher | 05/02/24 | 1,239,694.9 |
| Herr Dr. Martin Liebi | 19/01/24 | 3,023,973.4 |
| Slaughter and May | 24/01/24 | 24,210.0 |
| Herr Prof. Dr. Rüdiger Veil | 06/02/24 | 7,771.1 |
| MLL Meyerlustenberger Lachenal Froriep AG | 09/02/24 | 6,235.2 |
| Deloitte Ltd. | 30/01/24 | 6,907.6 |
| FTX Trading Ltd. | 12/02/24 | 2,785,854.8 |
| Mr. James Taylor | 07/02/24 | 468,917.0 |
| Ms. Polin Pavlova | 07/02/24 | 304,609.6 |
| Timothy David Hughes/Sheridan Investm. Holding LLC | 12/02/24 | 785,805.0 |
| West Realm Shire Inc. | 12/02/24 | 223,261.1 |
| Alameda Research Ltd. | 12/02/24 | 54,430,095.9 |
| DAAG Technology Services (Kephas) | 06/02/24 | 510,638.2 |
| Ms. Nayia Ziourty | 05/02/24 | 38,347.0 |
| Amt für Finanzen Kanton Schwyz | 06/02/24 | 210.0 |
| Total | | 134,179,259.9 |