## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 11053** |
| | **Hearing Date:  May 15, 2024 at 1:00 p.m. ET** |

### DEBTORS' OBJECTION TO MOTION TO VACATE THE ORDER GRANTING FTX DEBTORS' MOTION TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS WITH RESPECT TO NUGENESIS OU AND NUGENESIS PTY LTD

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this objection (the "Objection") to the *Motion to Vacate the Order Granting FTX Debtors' Motion to Estimate Claims based on Digital Assets With Respect to NuGenesis Ou and NuGenesis PTY Ltd.* [D.I. 11053] (the "Motion to Vacate") filed by NuGenesis Ou and NuGenesis PTY Ltd. (collectively, "NuGen") on April 3, 2024.  In support of their Objection, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1.      NuGen's Motion to Vacate has no merit and should be summarily denied, as established by NuGen's own submissions to the Court.  The Estimation Order was the culmination of a months-long process by the Debtors and their experts to determine appropriate

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.   The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

market prices for each of the Debtors' Digital Assets in order to estimate Claims based on those Digital Assets. The Debtors successfully undertook the immense task of valuing over 1,300 Digital Assets so that they can estimate the millions of unliquidated customer Claims and provide adequate information to stakeholders in their Disclosure Statement.

2.      The Debtors served the Estimation Motion on over two million affected customers and other creditors, including NuGen. The Debtors responded to more than one hundred overlapping objections to the Estimation Motion in their Omnibus Reply, including the NuGen Objection. On that written record, the Court determined, without inviting oral argument, that the Debtors correctly used the Petition Date as the date for determining the value of the Digital Assets. The Court then held a day-long hearing where it heard expert and fact testimony from three Debtor witnesses, and extensive argument from those both in support of and opposition to the Estimation Motion.

3.      Four Digital Assets were removed from the Estimation Order and put on a separate litigation schedule to facilitate discovery and additional expert testimony. In connection with those deferred Digital Assets, the relevant parties retained experts, took multiple depositions, and submitted hundreds of pages of further briefing and expert reports to the Court. The Court heard nearly three days' worth of expert testimony and arguments with respect to those four deferred Digital Assets in March 2024, and took the matter under advisement. Pending the Court's supplemental decision with respect to the price of the four deferred tokens, the long and burdensome task of determining the value of Digital Assets for Claims estimation is concluded.

4.      Enter NuGen, who now attempts to reopen the Estimation Order and rehash arguments and issues that have already been decided by the Court. By its own admission,

NuGen was served with the Estimation Motion, and the Court had the NuGen Objection when it overruled the pending objections and granted the relief requested in the Estimation Motion. Moreover, as evidenced by the email from chambers annexed to the Motion to Vacate, NuGen's CEO registered for the January 31, 2024 hearing on the Estimation Motion and was provided a link to participate virtually.  That he did not do so is of no moment, and the Court overruled NuGen's objection on the merits with the benefit of a full record.  Furthermore, the two main themes of the NuGen Objection did not need to be addressed at the January 31 Hearing in any event:  (i) objections to Petition Date pricing were overruled by the Court on the written record, and (ii) arguments with respect to property rights arguments are expressly preserved in the Estimation Order.

5.       NuGen fails to present any exceptional circumstances arising from newly discovered evidence, excusable neglect or otherwise, that would provide a basis for relief under Rule 60(b) of the Federal Rules of Civil Procedure.  NuGen has received all of the process it was due, and its objection was overruled.  The Motion to Vacate should therefore be denied.

## RELEVANT BACKGROUND

6.       On December 27, 2023, the Debtors filed the *Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 5202] (the "Estimation Motion").[2]  Pursuant to the Estimation Motion, the Debtors requested entry of an order (the "Estimation Order") estimating Claims on account of Digital Assets based on the values set forth in the Digital Assets Conversion Table, which was attached to the Estimation Order as Exhibit 1.  The Estimation Motion was served on all parties-in-interest, including NuGen [D.I. 5550].  The Debtors also

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Estimation Motion.

made the Estimation Motion publicly available on the case website maintained by Kroll

Restructuring Administration ("Kroll"), the Debtors' claims and noticing agent in these Chapter

11 Cases.  The Digital Assets Conversion Table assigned a value of $0 to Nucoin (NUC).  The

Estimation Motion set an objection deadline of January 11, 2024 and was originally scheduled to

be heard by the Court on January 25, 2024.

    7.    On January 5, 2024, the Court docketed a letter from Hussein Faraj dated

January 3, 2024 on behalf of "Nugenesis Ou and Nuguensis PTY LTD, along with all its

congregates and affiliated users and holders adversely impacted by this matter," interposing an

objection to the Estimation Motion [D.I. 5420] (the "NuGen Objection").  The NuGen Objection

reflected NuGen's actual knowledge of the Estimation Motion, and objected to it for several

reasons, including that (i) NuGen has a property or ownership interest in the NUC tokens;

(ii) claims should not be valued on the Petition Date; and (iii) Petition Date pricing should be

used without any discounts being applied.  (NuGen Obj. at 2-7.)

    8.    On January 9, 2024 the Debtors filed the *Notice of Rescheduled Status

Conference and Omnibus Hearing* [D.I. 5484] (the "Rescheduling Notice").  The Rescheduling

Notice alerted parties-in-interest that the hearing on the Estimation Motion was rescheduled at

the direction of the Court from January 25, 2024 to January 31, 2024.  (*Id.*)  The Rescheduling

Notice was served on certain parties and made publicly available on the case website maintained

by Kroll.

    9.    On January 28, 2024, the Debtors filed the *Debtors' Omnibus Reply in

Support of Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 6728] (the

"Omnibus Reply").  The Debtors responded to NuGen's arguments in the Omnibus Reply,

including specifically in Section III.G ("NuGenesis's Additional Objections Should be

Rejected").  (Omnibus Reply ¶¶ 60-62.)  The Debtors further addressed the NuGen Objection in

Appendix 1 to the Omnibus Reply.  The Omnibus Reply was served on certain parties and made

publicly available on the case website maintained by Kroll.  At that point, the Estimation Motion

and the NuGen Objection were fully submitted to the Court.

10.     On January 29, 2024, the Debtors filed the *Notice of Agenda for Hearing

*Scheduled for January 31, 2024 at 10:30 a.m. (ET), Before the Honorable John T. Dorsey at the*

*United States Bankruptcy Court for the District of Delaware, Located at 824 North Market*

*Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801* [D.I. 6740] (the "Agenda").

On the morning of January 31, 2024, the Debtors filed an amended Agenda [D.I. 6797] (the

"Amended Agenda").  The Agenda and Amended Agenda included instructions for registering

for the January 31 Hearing on the Estimation Motion.  As with the Debtors' previous filings, the

Agenda and Amended Agenda were served on certain parties and made publicly available on the

case website maintained by Kroll.

11.     As conclusively demonstrated by Exhibit A to the Motion to Vacate, Mr.

Faraj registered for the January 31 Hearing (as defined below) *and received an email from*

*chambers with the link to participate* in the January 31 Hearing.  The only way to receive that

email was to have followed the Court's instructions provided in the Agenda and Amended

Agenda.

12.     On January 31, 2024, the Court held a hearing on the Estimation Motion

(the "January 31 Hearing").  Parties who attended the January 31 Hearing in person and parties

who registered for the January 31 Hearing remotely were given the opportunity to argue in

support of or in opposition to the Motion.  Before hearing any argument, the Court issued a

ruling based on the written submissions that "the Debtors' use of the petition date as the date for

determining the value of the digital asset claims is appropriate" and "[s]o, all objections to the timing of the date upon which the debtors chose to determine the estimated value of the claims are overruled . . . therefore, I don't need to hear argument on those issues." (Jan. 31 Hr'g Tr. 14:8-15:24.)

13.    At the close of the January 31 Hearing, the Court determined that "[b]ased on the evidence presented and the arguments provided in the papers and at the hearing, I find that estimation is appropriate, and the debtor's methodology for estimating the claims is fair and reasonable, and all objections to the motion are overruled." (*Id.* at 131:17-21.)  The Court's decision was thereafter docketed and made publicly available on the case website maintained by Kroll as a minute entry for the hearing [D.I. 6851].  Attached to the minute entry were the "Sign-In/Registration Sheets" for the hearing, which included Mr. Faraj on behalf of NuGen.  The January 31 Hearing and the Court's decision were widely covered in both traditional and crypto media sources, including Wired,[3] Law360,[4] and Cointelegraph.[5]

14.    On February 7, 2024, the Court entered its Estimation Order [D.I. 7090]. Attached to the Estimation Order as Exhibit 1 was the Digital Assets Conversion Table, which set forth the values of Digital Assets and fiat currency that are the basis for the estimation of Claims, including the valuation of Nucoin at $0.  The Estimation Order was served on certain parties and made publicly available on the case website maintained by Kroll.

---

[3]    Joel Khalili, *FTX Says it Expects to Repay Customers in Full. Some Are Suing For More*, WIRED (Feb. 2, 2024), https://www.wired.com/story/ftx-bankruptcy-bitcoin-value/ (last accessed April 16, 2024).

[4]    Vince Sullivan, *FTX Can Estimate Digital Claims in US Dollars, Judge Says*, LAW360 (Jan. 31, 2024), https://www.law360.com/articles/1792466/ftx-can-estimate-digital-claims-in-us-dollars-judge-says (last accessed April 16, 2024).

[5]    Turner Wright, *FTX Plans to Fully Repay Customers But Not Restart Exchange, Says Bankruptcy Lawyer*, COINTELEGRAPH (Jan. 31, 2024), https://cointelegraph.com/news/ftx-repay-creditors-not-restart-exchange (last accessed April 16, 2024).

15.     Following the filing of the Motion to Vacate, the Debtors learned that Mr. Faraj, while served with the Estimation Motion and demonstrating actual knowledge of it and the ancillary documents—most notably by registering to make a virtual appearance at the January 31 Hearing—was not individually served with the Omnibus Reply, Agenda, Amended Agenda or Estimation Order because Kroll failed to properly execute the Debtors' service instructions.

16.     On April 3, 2024—more than two months after the January 31 Hearing—NuGen filed the Motion to Vacate seeking "entry of an order modifying and/or vacating the Estimation Order" as to NuGen.  (Mot. To Vacate ¶ 11.)

## **OBJECTION**

### **I.    NuGen Had Notice of the Estimation Motion and the January 31 Hearing.**

17.     It is undisputed that NuGen had actual notice of the Estimation Motion. NuGen acknowledges that it received notice of the Estimation Motion (*see* Mot. To Vacate ¶ 5), and it timely filed the NuGen Objection.  That is all that is required for due process.  *See, e.g.*, *Mullane* v. *Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").  This alone should be the end of the inquiry and the Motion to Vacate denied.

18.     NuGen attempts to distract from the fact that it was provided with notice of the Estimation Motion and filed a timely objection that was overruled on the merits by referencing various ancillary filings with which it was not personally served.  No such technicality provides any basis for relief.  *See In re Spiegel, Inc.*, 2007 WL 1080190, *4 (Bankr. S.D.N.Y. Apr. 4, 2007) (stating that a party has an independent duty to monitor the docket and,

therefore, failure to inform a party of entry of a final judgment is not grounds for excusable neglect).

19.     Critically, it also cannot in any event be seriously disputed that NuGen had notice of the January 31 Hearing.  NuGen's suggestion that the "dial-in and video information that was circulated before the hearing was sent . . . [at] the same time that the amended hearing agenda for the January 31 Hearing was served" is nonsense.  (Mot. to Vacate ¶ 8.)  The Court, not the Debtors, sends out the dial-in information for hearings.  Moreover, the Court *only sends this information to individuals who register for the hearing*.  Because Mr. Faraj received the information, he must have been aware of the January 31 Hearing and registered for it in advance, in accordance with the procedures set forth in the Agenda and Amended Agenda. Contrary to NuGen's assertion, the Sign-In/Registration Sheet for the January 31 Hearing was not a "pre-generated list of the Objectors" (*id.* ¶ 7), but a list of individuals who stepped forward and registered for the January 31 Hearing, including Mr. Faraj who registered on behalf of NuGen.  Mr. Faraj and NuGen had actual notice of all relevant events, and the Motion to Vacate should be denied.

## II.     The Court Entered the Estimation Order Based on a Complete Record.

20.     As described above, NuGen was given the opportunity to object, and indeed did submit a written objection to the Estimation Motion.  Its arguments were briefed and submitted to the Court, and the Debtors responded in a standalone section in the Omnibus Reply. The Court overruled the NuGen Objection based on this complete written record.  NuGen is not legally entitled to anything more.  In fact, a significant portion of the NuGen Objection—that the Debtors should not use Petition Date pricing to value Claims—was overruled by the Court on the written submissions by numerous objecting parties without hearing oral argument on the issue from anyone.  (*See* Jan. 31 Hr'g Tr. 14:8-15:24.)

21.     The Motion to Vacate is silent as to what harm or injustice NuGen

supposedly suffered.  NuGen simply asserts—with no detail or support—that it was "prevented

[] from pressing its objection to the Estimation Motion."  (Mot. to Vacate ¶ 20.)  This is false.

NuGen filed the NuGen Objection, the Debtors responded, and the Court overruled it.  Mr. Faraj

had notice of the January 31 Hearing and registered for it in advance.  To the extent he ultimately

chose not to attend (or forgot about it after registering), that does not translate to harm or support

an assertion that NuGen was prevented from "pressing" any arguments.  Indeed, NuGen would

be precluded from advancing any new arguments not already raised in the NuGen Objection.  At

no time, either in the NuGen Objection or otherwise, had NuGen identified any evidence it

sought to present, pursued discovery, or sought a continuance of the January 31 Hearing.  (Jan.

31 Hr'g Tr. 131:2-8 (rejecting arguments seeking more time to respond to the Estimation Motion

and noting that the objecting party did not seek a continuance).)

22.     The Motion to Vacate seeks permission to simply re-litigate the same

arguments that NuGen raised in the NuGen Objection and to which the Debtors responded and

the Court overruled based on a complete record.

### III.     NuGen Has Failed to Show It Is Entitled to Relief Under Rule 60(b).

23.     NuGen presents no viable basis for vacatur of the Estimation Order under

Federal Rule of Civil Procedure 60(b), made applicable by Bankruptcy Rule 9024.  The Third

Circuit has "cautioned that relief from a judgment under Rule 60 should be granted only in

exceptional circumstances."  *Logan* v. *Am. Contract Bridge League*, 173 F. App'x 113, 116 (3d

Cir. 2006) (quotation omitted).  NuGen argues that the Estimation Order should be vacated as to

it because of (i) newly discovered evidence or (ii) "mistake, inadvertence, surprise or excusable

neglect."  Both arguments fail.

24.     NuGen's argument that the Estimation Order is "newly discovered evidence" is false on its face.  (Mot. to Vacate ¶ 15.)  "Relief based upon new evidence may be granted pursuant to Rule 60(b)(2) only upon a showing that," among other requirements, "the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial [and] the new evidence is likely to change the outcome of the case."  *In re New Century TRS Holdings, Inc.*, 2012 WL 38974, *3-4 (Bankr. D. Del. Jan. 9, 2012).  NuGen did not purport to offer any evidence at the time it filed the NuGen Objection, or notify the Debtors it intended to present evidence at the January 31 Hearing, which, pursuant to the Court's rules, would have required in-person attendance.  Nor does NuGen even seek to present evidence now.  There is *no* evidence relevant to the NuGen Objection—old or new.

25.     NuGen asserts that the newly discovered evidence upon which it relies is the "entry of the Estimation Order."  (Mot. to Vacate ¶ 15.)  The Estimation Order is of course not "newly discovered evidence," and, in fact, is not "evidence" at all.  The Court's order had not been issued at the time the Court decided the Estimation Motion and has no bearing on the arguments raised in the NuGen Objection.  The Debtors' proposed form of order, that ultimately was entered in substantially the same form, was annexed to the Estimation Motion and was not a subject of the NuGen Objection.  Entry of the Estimation Order simply documents the Court's decision and makes the Digital Assets Estimation Table operable.

26.     NuGen also wrongly asserts, with no support, that there was "excusable neglect" on NuGen's part that justifies vacating the Estimation Order under Rule 60(b)(3).  (*Id.* ¶¶ 16-18.)  This argument also fails.  "The burden of proving excusable neglect lies with the [movant]."  *Jones* v. *Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).  Moreover, a party "must state with particularity the circumstances constituting . . . mistake."  Fed. R. Civ. Pro. 9(b)

(made applicable by Bankruptcy Rule 7009).  NuGen has failed to do anything to meet its

burden.  Indeed, NuGen has not even stated that a mistake was in fact made, much less what that

mistake was or the circumstances constituting it with particularity.  (*See* Mot. to Vacate ¶ 16.)

27.    Furthermore, courts evaluate various factors in determining whether there

was excusable neglect, including "the danger of prejudice to the debtor, the length of the delay

and its potential impact on judicial proceedings, the reason for the delay . . . and whether the

creditor acted in good faith."  *Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S.

380, 395 (1993).  These factors all further support denying the Motion to Vacate.

28.    NuGen's assertion that, "of course, there is no prejudice to the Debtors by

providing the relief requested herein," is unsupported and false.  (Mot. to Vacate ¶ 17.)  As the

Court is aware, proceedings are now complete with respect to the valuation of the four deferred

Digital Assets.  Those subsequent proceedings were held to permit evidence to be presented with

respect to four Digital Assets, not to rehash arguments considered by the Court and decided at

the January 31 Hearing.  (*See* Estimation Order ¶ 9.)  NuGen's argument that "the Debtors are

still actively litigating claims estimations" is therefore wrong.  (Mot. to Vacate ¶ 17.)  In

addition, the recent appointment of the Examiner is irrelevant to both the NuGen Objection and

the Motion to Vacate.  The Debtors, their customers, and other creditors and stakeholders would

all be prejudiced by the further delay caused by reopening the Estimation Order.  The Debtors

have been clear that the Digital Assets Conversation Table is necessary so that Claims based on

Digital Assets can be estimated, and projected recoveries and adequate information provided in

the Debtors' Disclosure Statement.  (*See* Estimation Mot. ¶ 22.)  The Debtors are now moving

forward with the plan confirmation process in earnest, and would be harmed by any delay caused

by granting the Motion to Vacate and holding a further hearing.

29.      NuGen has also failed to raise any concerns in a timely manner.  The
Court held a hearing on the Estimation Motion on January 31, 2024, and the Estimation Order
was entered on February 7, 2024.  The time to appeal the Estimation Order has expired and it is
now a final order.  NuGen's assertion that it was unaware until mid-March that the Estimation
Order was entered defies logic.  (*See* Mot. to Vacate ¶ 9.)  NuGen attached to the Motion to
Vacate an email received on February 1, 2024 Australian time (and January 31, 2024 Eastern
Time) by Mr. Faraj, the CEO of NuGen and the individual who filed the NuGen Objection on
NuGen's behalf, with the subject line "*Estimation Hearing Re: Digital Assets*."  (Mot. to Vacate,
Ex. A.)  It is clear from this email, which was actually received by a NuGen representative on
February 1, 2024 Australian time and *in advance* of the January 31 Hearing, that the Estimation
Motion was heard and addressed on January 31, 2024.  Even if Mr. Faraj neglected to participate
in the January 31 Hearing, he was on notice from his registration and the email received from
chambers that the January 31 Hearing occurred.  NuGen is not permitted to put its head in the
sand and surface months later seeking to vacate the Estimation Order.  Rather, NuGen had an
obligation to monitor the docket—which is available free of charge, twenty-four hours a day on
the case website maintained by Kroll—and step forward in a timely manner.  *In re Spiegel, Inc.*,
2007 WL 1080190, *4.

30.      Finally, the Debtors are wary of NuGen's good faith in filing its motion,
and reserve all rights.  As demonstrated by the email attached to NuGen's Motion to Vacate, and
as discussed above, Mr. Faraj registered for the January 31 Hearing pursuant to the Court's
chambers procedures.  He then received a link to join virtually with instructions on how to
participate in the hearing.  None of those steps could have happened without Mr. Faraj having
actual notice of the January 31 Hearing.  More fundamentally, NuGen has acknowledged that it

was served with the Estimation Motion and Mr. Faraj filed the NuGen Objection, which was before the Court and considered in connection with the decision to overrule all objections—including objections to the use Petition Date pricing—and grant the Estimation Motion. That Mr. Faraj holds himself out as an expert in the cryptocurrency industry whose "understanding of market dynamics is globally recognized and highly esteemed" (NuGen Obj. at 1) makes it even more unbelievable that Mr. Faraj was unaware of the January 31 Hearing or the entry of the Estimation Order. Given these indisputable facts, it is difficult to view NuGen's Motion to Vacate as anything other than a baseless attempt at a do-over.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Vacate should be denied.

Dated:  April 17, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*