**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------ x
: 
In re: : Chapter 11
: 
FTX TRADING LTD., *et al.*,[1] : Case No.: 22-11068 (JTD)
: (Jointly Administered)
: 
Debtors. : Hearing Date: 5/15/2024 @ 1:00 P.M. (ET)
: Obj. Deadline: 5/6/2024 @ 4:00 P.M. (ET)

Re: D.I. 10881 & 10243

------------------------------ x

**MOTION OF HAIN CAPITAL INVESTORS MASTER
FUND, LTD. TO (I) STRIKE NOTICE OF TRANSFER OF CLAIM
[ECF NO. 10881] TO NEXXUS PARTICIPATION VEHICLE III LLC, AND
(II) REQUIRE THE DEBTORS' CLAIMS AND NOTICING AGENT TO
RECOGNIZE AND RECORD TRANSFER OF CLAIM [ECF NO. 10243] TO HAIN**

Hain Capital Investors Master Fund, Ltd. ("Hain"), by its undersigned counsel, herby files this Motion (the "Motion") to (I) strike the notice of *Transfer of Claim Other than for Security* (the "Nexxus Transfer of Claim") [ECF No. 10881] filed by Cherokee Acquisition ("Cherokee") to provide notice of a purported transfer of the claim of a customer identified by Unique Customer Code #00225510 (the "Customer") to Nexxus Participation Vehicle III LLC ("Nexxus"), and (II) require Kroll Restructuring Administration LLC ("Kroll"), the Claims and Noticing Agent for FTX Trading Ltd. ("FTX") and its affiliated debtor entities (collectively, the "Debtors"), to recognize and record the transfer of the Customer Claim (defined below) to Hain pursuant to the *Transfer of Claim Other than for Security* (the "Hain Transfer of Claim") [ECF No. 10243]. In support of this Motion, Hain respectfully represents as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

{00038696. }

## **PRELIMINARY STATEMENT**[2]

1.      This Motion seeks to provide certainty as to who should be recognized as the holder of the Customer Claim, because both Hain and Nexxus have filed notices of transfer of claim with respect to the same Customer Claim.  In the first instance, the transfer of the Customer Claim to Hain should be recognized because no objection has been filed to the Hain Notice of Transfer.  Pursuant to Bankruptcy Rule 3001(e)(2), Kroll must substitute Hain as the holder of the Customer Claim.

2.      Hain's purchase of the Customer Claim is fully enforceable.  Hain paid for the Customer Claim.  Hain has fully-executed, final documents with the Customer evidencing his agreement to sell the claim to Hain.  The Customer has never questioned the validity of the transaction, has never disavowed any agreement with Hain, and has never asserted that he did not intend to be bound by any agreement to sell his claim to Hain.  There is no uncertainty with respect to any material terms of the Customer's agreement with Hain.

3.      On the other hand, the Nexxus Notice of Transfer should be stricken because the purported transfer of the Customer Claim to Nexxus is invalid.  Under applicable New York law, the draft form of agreement that the Customer signed at Cherokee's request does not evidence a meeting of the minds between the parties regarding material terms, and thus the agreement is not a binding, enforceable contract.  The Customer had no intention of selling his claim to Nexxus and the parties are actively working to seek a return of the funds Nexxus wired to a third-party account for the purported purchase of the Customer Claim.  The only valid transfer of the Customer Claim is to Hain, and Kroll should be required to recognize and record the transfer of the Customer Claim to Hain.

---

[2] Capitalized terms in Preliminary Statement shall have the meaning ascribed to them below.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. In accordance with Rule 9013-1(f) of the Local Rules, Hain consents to the entry of final orders or judgments by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper in this Court under 28 U.S.C. § 1409(a).

**RELEVANT BACKGROUND**

7. On November 11 and 14, 2022 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned cases.

8. Prior to the Petition Date, the Customer was a customer of FTX. After FTX filed for bankruptcy, the Customer held a customer claim against FTX in its bankruptcy case, which claim was scheduled as claim number 7450462 in FTX's Schedule F (the "Customer Claim").

9. Post-petition, Cherokee Acquisition ("Cherokee") and Xclaim Inc. ("Xclaim"), claims brokers who are active in the claims trading market for the Debtor's chapter 11 cases, both solicited the Customer regarding his interest in potentially selling the Customer Claim to a purchaser.

10. The Customer had initial discussions with Cherokee, who sent him a template form entitled Simple Assignment of Claim. Although the Customer signed the form which provided for a sale of the Customer Claim at a purchase price of 80% of the amount of the Customer Claim, the form was not dated, no buyer entity was identified, and there were blank spaces in several places

in the form. A copy of the partially executed draft Simple Assignment of Claim form is annexed hereto as Exhibit A.

11. The Customer provided on the Cherokee form third-party bank account information for payment, but it was the Customer's preference to be paid in cryptocurrency. Indeed, after providing the third-party bank account information to Cherokee on the form, the Customer requested clarification from Cherokee regarding any legal issues that could arise from the transfer of funds to a third-party bank account in Dubai and reiterated his request to be paid directly in cryptocurrency instead. Having failed to get clarification from Cherokee regarding the possible illegality of transferring funds to a third-party account, the Customer decided to sell the Customer claim through Xclaim, who had located Hain as a buyer. At the time, Xclaim and Hain were not aware of any of the foregoing dealings that the Customer had with Cherokee.

12. On March 14, 2024, the Customer met by videoconference with representatives of Hain and Xclaim to exchange information and discuss the terms of a trade. Thereafter, Hain and the Customer agreed upon the terms of the sale of the Customer Claim to Hain (the "Agreement") and executed an Evidence of Transfer of Claim and Waiver of Notice dated March 18, 2024. A copy of the Evidence of Transfer of Claim is annexed hereto as Exhibit B. Notably, the Customer agreed to sell the Customer Claim to Hain at 77%, even though the draft form from Cherokee listed a trade price at 80%. Although the trade with Hain would be at a lower price than that provided in the assignment of claim form that Cherokee sent for the Customer to sign, the Customer proceeded with selling the Customer Claim to Hain because the Customer did not have an agreement with Nexxus. If the Customer believed he had reached an agreement to sell his claim at an 80% purchase price, it stands to reason that he would not have sold his claim to Hain for the lower price of 77%.

13. On March 22, 2024, the Customer received payment for the sale and transfer of the Customer Claim to Hain. The payment was made in cryptocurrency directly to the Customer as he had requested.

14. On March 25, 2024, Xclaim filed the Hain Notice of Transfer, providing evidence and notice of the transfer of the Customer Claim to Hain in accordance with Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A copy of the Hain Notice of Transfer is annexed hereto as Exhibit C. Pursuant to Bankruptcy Rule 3001(e)(2), any objection to the Hain Notice of Transfer was required to be filed within 21 days of the filing thereof, or April 15, 2024. As of the date hereof, no objection to the Hain Notice of Transfer has been filed, timely or otherwise.

15. It was not until March 27, 2024, two days after the Hain Notice of Transfer was filed, that Cherokee sent the Customer a fully-executed Simple Assignment of Claim to the Customer. *See* email from Cherokee to the Customer sent March 27, 2024 at 6:45 p.m., a copy of which is annexed hereto as Exhibit D ("Please see attached for the fully executed SAC for your records.").

16. After the Hain Notice of Transfer was filed, on or about March 28, 2024, the Customer informed Hain and Xclaim of new information he had learned from Cherokee. *See* email from the Customer to Xclaim sent March 28, 2024 at 4:05 p.m., a copy of which is annexed hereto as Exhibit E. Cherokee had notified the Customer on March 27, 2024, that Nexxus Participation Vehicle III LLC ("Nexxus") had purported to purchase the Customer Claim, apparently to the surprise of the Customer because he did not have an agreement with Cherokee or Nexxus. *See* Exhibit D (email from Cherokee to the Customer sent March 27, 2024 at 6:45 p.m.) ("Can you confirm receipt of the full payment from the buyer?"). The Customer advised Hain and Xclaim

that, without prior notification from either Cherokee or Nexxus, Nexxus had unilaterally wired funds to the third-party bank account that the Customer had listed on the draft form of Simple Assignment of Claim, even though the Customer had informed Cherokee that the Customer decided that he did not want payment made to that third-party account and preferred instead to be paid directly in cryptocurrency.  *See* Exhibit D (email from the Customer to Cherokee sent March 28, 2024 at 9:33 p.m.);[3] and email from the Customer to Cherokee sent March 14, 2024 at 9:59 a.m., a copy of which is annexed hereto as Exhibit F.  Indeed, the payment made by Nexxus was never actually received by the Customer because the funds that were sent to the third-party account were immediately frozen.  *See* Exhibit D (email from the Customer to Cherokee sent March 28, 2024 at 9:33 p.m.) ("The bank froze the account and the money.").

17. Significantly, the Customer responded to Cherokee on March 28, 2024, stating that (i) the Customer did not believe that the form Cherokee sent him locked him into a trade with a buyer obtained by Cherokee,[4] (ii) the funds should not have been sent to the third-party bank account, (iii) the third-party account was frozen by the bank as a result of the transfer, and (iv) the funds should be returned to whomever sent them.  *See* Exhibit D (email from the Customer to Cherokee sent March 28, 2024 at 9:33 p.m.).  Thereafter, Nexxus and/or Cherokee made efforts to reverse the transfer of funds to the third-party account.  *See* email from Cherokee to the Customer sent April 2, 2024 at 2:52 p.m., a copy of which is annexed hereto as Exhibit G ("We will speak with the buyer this morning and ask for the funds to be retrieved.").

---

[3] The Customer wrote:  "First off, it seems the funds were sent to an account I initially mentioned but then told you not to use because it would complicate things—I asked for validation because I heard it's not legal to send this kind of amount to the account of someone else, and … it was true, you never answered and now we are in big trouble while I never validated the transaction.  I had switched gears to suggesting crypto in USDC, remember?"

[4] The Customer wrote:  "I only signed the onboarding docs with them and wasn't told any trade was locked in.  I waited, and I had only the documents signed by me!  The contract's missing key details like an effective date or a buyer's name.  What you sent yesterday wasn't with any validation in % off me and specially while I told you it should be in USDC!"

18. The email correspondence between the Customer and Cherokee that the Customer has provided to Hain shows that, even after the Customer had returned the form of Simple Assignment of Claim to Cherokee that listed an 80% trade price, Cherokee was still negotiating with the Customer regarding whether the Customer would be "open to selling to a direct buyer between 75-77%," and asking "How does a direct sale between 75-77% sound?" *See* email from Cherokee to the Customer sent March 1, 2024 at 7:12 p.m., a copy of which is annexed hereto as Exhibit H. Although Hain is not aware of whether the payment Nexxus made to the third-party account was actually in the amount of 80% of the Customer Claim, as provided for in the form of Simple Assignment of Claim provided by Cherokee, the correspondence between the parties suggests that the actual price paid for the purported purchase of the Customer Claim may not have been the trade price reflected on the form of Simple Assignment of Claim.

19. Notwithstanding all of the foregoing, on April 1, 2024, Cherokee filed a notice of Transfer of Claim Other Than for Security (the "Nexxus Notice of Transfer") [ECF No. 10881], which purports to relate to the Customer Claim that Hain had already purchased. Although Nexxus and/or Cherokee have been attempting to reverse the transfer of funds sent to the third-party account, Hain does not know if those funds have been recovered as of the date hereof.

## ARGUMENT

20. Hain respectfully requests that the Court enter an order requiring Kroll to recognize the transfer of the Customer Claim to Hain pursuant to the Hain Notice of Transfer. The plain language of Bankruptcy Rule 3001(e)(2) expressly mandates the substitution of Hain as the holder of the Customer Claim, because no objection to the Hain Notice of Transfer has been filed.

21. Furthermore, Hain respectfully requests that the Court strike the Nexxus Notice of Transfer. The Customer and Nexxus did not have a meeting of the minds on material terms in the draft form of Simple Assignment of Claim that Cherokee sent to the Customer to sign, so there is

no binding, enforceable agreement between the Customer and Nexxus for the sale of the Customer Claim.

A.  **Because No Timely Objection To The Hain Notice Of Transfer Has Been Filed, Kroll Must Recognize And Record The Transfer Of The Customer Claim to Hain**

22.  Bankruptcy Rule 3001(e)(2) governs the procedures for filing notice of a transferred claim, and provides, in relevant part, as follows:

> If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. … If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

FED. R. BANKR. P. 3001(e)(2).

23.  The Advisory Committee Notes to the 1991 Amendments to Bankruptcy Rule 3001(e)(2) make clear that the court's role is limited if no objection to a notice of transfer of claim is filed. *See* FED. R. BANKR. P. 3001, Advisory Committee Notes to 1991 Amendments ("Subdivision (e) is amended to limit the court's role to the adjudication to disputes regarding transfers of claims. … If a claim has been transferred other than for security after a proof of claim has been filed, the transferee is substituted for the transferor in the absence of a timely objection by the alleged transferor. In that event, the clerk should note the transfer without the need for court approval.").

24.  Absent a timely objection to a notice of transfer of claim, the transferor must be substituted for the transferee. *See In re Nw. Airlines Corp.*, 2007 WL 498285, at *2 (Bankr. S.D.N.Y. Feb. 9, 2007) ("That part of Rule 3001(e)(2) that directs the clerk to substitute the name of the transferee for that of the transferor in the absence of a timely objection from the transferor

is 'mandatory.'"); *In re Am. Housing Found.*, 2015 WL 6690025, at *4 (Bankr. N.D. Tex. Nov. 2, 2015) ("Courts interpret the language of 3001(e)(2) as removing judicial discretion and mandating entry by the clerk of the transferee for the transferor.").

25. In this case, no objection was filed to the Hain Notice of Transfer. Thus, pursuant to Bankruptcy Rule 3001(e)(2), the Court should direct Kroll to recognize the transfer of the Customer Claim to Hain.

**B.      The Court Should Strike The Nexxus Notice Of Transfer
        Because The Cherokee Form Of Simple Assignment Of Claim
        Is Not A Binding Contract To Sell The Customer Claim To Nexxus**

26. Hain further requests that the Court strike the Nexxus Notice of Transfer because the purported purchase of the Customer Claim by Nexxus is not valid. Where there is a claim transfer dispute, the Court determines whether a transfer of the claim has been made that is enforceable under applicable non-bankruptcy law. *See In re Am. Housing Found.*, 2015 WL 6690025, at *3 (quoting Fed. R. Bankr. P. 3001(e)(2)). Here, Nexxus and/or Cherokee did not have a binding, enforceable contract to purchase the Customer Claim under New York law, which governs the form of Simple Assignment of Claim.

27. Under New York law, "[t]o form a binding contract, there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Stonehill Cap. Mgmt. LLC v. Bank of the W.*, 28 N.Y.3d 439, 448 (N.Y. 2016) (quotations and citations omitted). Where material terms are left blank on an agreement, there is no meeting of the minds sufficient to form a binding contract. *See, In the Matter of Estate of Eckert v. Connelly*, 217 A.D.3d 1151, 1153 n.1 (N.Y. App. Div. 2023) (finding that parties had not reached agreement on all material terms to create a binding agreement where timing of payment of funds was left as a blank in contemplated agreement); *Cent. Fed. Sav., F.S.B. v. Nat'l Westminster Bank, U.S.A.*, 176 A.D.2d 131, 133 (N.Y.

App. Div. 1991) ("Essential terms such as ultimate price were left open.  Clearly, there was no 'meeting of the minds' to support the existence of an enforceable contract.").

28. In this case, the form of Simple Assignment of Claim is not a binding agreement, because the parties did not have a meeting of the minds with respect to material terms.  First, the form was signed only by the Customer.  Hain has not seen a fully-executed form of Simple Assignment of Claim or any indication that the Customer agreed to any of the terms that had been left blank when he signed the form.  At the time the Customer signed the form, there were blank spaces in every place where the date of the agreement was found, and even the identity of the buyer counterparty was left blank.  There is no indication that the Customer informed Cherokee that he accepted Nexxus as his buyer counterparty.  Indeed, it appears that the Customer did not receive a fully-executed Simple Assignment of Claim until *after* the Customer had already agreed to sell the Customer Claim to Hain and was paid for it.  Second, the payment information provided by the Customer was not finalized because the third-party bank account that was listed on the form was not the account to which the Customer intended for payment to be sent.  This fact was promptly made known to Cherokee, but the account information was never corrected to reflect the Customer's request for payment to be made by cryptocurrency directly to the Customer at his account.  As a consequence, when Nexxus unilaterally wired funds to the third-party account, those funds were frozen and the third-party account was blocked.  *See* Exhibit D.  Lastly, the 80% trade price listed on the form continued to be negotiated by the parties, with Cherokee even asking the Customer, after he signed the Simple Assignment of Claim form, "How does a direct sale between 75-77% sound?"  *See* Exhibit H.

29. The correspondence between the Customer and Cherokee also evidences the Customer's understanding and intention that he was not selling his claim to Cherokee or an

unidentified buyer that Cherokee would find. For example, the Customer wrote to Cherokee after Nexxus wired funds to the third-party account (resulting in a freeze of that account) "This transaction is invalid and illegal." *See* Exhibit D (email from the Customer to Cherokee sent April 2, 2024 at 2:32 a.m.). When apprised of the situation by the Customer, even Cherokee acted in a manner to suggest that Cherokee/Nexxus would unwind its attempted trade—Cherokee/Nexxus have requested that the third-party bank return the funds to the funding source. *See* Exhibit G.

30. Moreover, granting the relief requested in this Motion does not prejudice Nexxus or Cherokee because they are already working to reverse the payment to the third-party account, which would return Nexxus and Cherokee to the status quo ante, leaving them no worse off. If there are any claims that Nexxus or Cherokee wish to assert against the Customer, their remedies are preserved.

**WHEREFORE**, for all the foregoing reasons, Hain respectfully requests that this Court enter an order (i) striking the Nexxus Notice of Transfer, and (ii) requiring Kroll to recognize and record the transfer of the Customer Claim to Hain pursuant to the Hain Notice of Transfer, and grant Hain such other and further relief as the Court deems just and proper.

Dated:  April 22, 2024
        Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

/s/ *Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 N. Market St., Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

--and--

Paul A. Rubin, Esq.
RUBIN LLC
11 Broadway, Suite 715
New York, NY 10004
Telephone: (212) 390-8054
Facsimile: (212) 390-8064
prubin@rubinlawllc.com

*Counsel for Hain Capital Investors Master Fund, Ltd.*