**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LTD. and FTX TRADING LTD., | |
| Plaintiffs, | Adv. Pro. No. 23-50444 (JTD) |
| - against - | |
| PLATFORM LIFE SCIENCES INC., LUMEN BIOSCIENCE, INC., GREENLIGHT BIOSCIENCES HOLDINGS, PBC, RIBOSCIENCE LLC, GENETIC NETWORKS LLC, 4J THERAPEUTICS INC., LATONA BIOSCIENCES GROUP, FTX FOUNDATION, SAMUEL BANKMAN-FRIED, ROSS RHEINGANS-YOO, and NICHOLAS BECKSTEAD, | |
| Defendants. | **Hearing Date:  May 23, 2024 at 10:00 A.M. (ET)**<br>**Obj. Deadline: May 10, 2024 at 4:00 P.M. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTORS TO ENTER INTO STIPULATIONS OF SETTLEMENT
WITH CERTAIN DEFENDANTS AND (B) APPROVING THE STIPULATIONS**

Alameda Research Ltd. ("Alameda"), FTX Trading Ltd. ("FTX"), and Alameda

Research (Bahamas) Ltd. ("Alameda Bahamas" and, together with Alameda and FTX, the

"Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>"), pursuant to section 105(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the Debtors to

enter into stipulations of settlement (the "<u>Settlement Stipulations</u>")[2] with: (i) Latona Biosciences

Group ("<u>Latona</u>") and Ross Rheingans-Yoo ("<u>Rheingans-Yoo</u>"), attached as <u>Exhibit 1</u> to the

Order; (ii) Lumen Bioscience, Inc. ("<u>Lumen</u>"), attached as <u>Exhibit 2</u> to the Order;

(iii) GreenLight Biosciences Holdings, PBC ("<u>GreenLight</u>"), attached as <u>Exhibit 3</u> to the Order;

(iv) Rioscience LLC ("<u>Rioscience</u>"), attached as <u>Exhibit 4</u> to the Order; (v) Genetic Networks

LLC ("<u>Genetic Networks</u>"), attached as <u>Exhibit 5</u> to the Order; and (vi) 4J Therapeutics Inc. ("<u>4J</u>

<u>Therapeutics</u>"), attached as <u>Exhibit 6</u> to the Order.  In support of the Motion, the Debtors

respectfully state as follows:

### Preliminary Statement

1.    Following constructive, arm's-length negotiations with defendants Lumen,

Genetic Networks, GreenLight, Rioscience, 4J Therapeutics (together, the "<u>Small Lifesciences</u>

<u>Defendants</u>"), Latona and Rheingans-Yoo (together with the Small Lifesciences Defendants, the

"<u>Settling Defendants</u>"), the Debtors have the opportunity to resolve the remainder of this

adversary proceeding (the "<u>Latona Proceeding</u>")—with the exception of the claims against

defendant Samuel Bankman-Fried—without the need for further litigation.

2.    Between May and October 2022, Alameda transferred a total of

$68,300,000 to Platform Lifesciences Inc. ("<u>PLS</u>") and the Small Lifesciences Defendants

(together with PLS, the "<u>Lifesciences Defendants</u>") to fund investments made by Latona in the

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
Settlement Stipulations.

Lifesciences Defendants.  In connection with the investments, Latona received various rights and interests in each of the Lifesciences Defendants.

3.      Alameda and FTX (together, "Plaintiffs") brought the Latona Proceeding to, among other things, avoid the fraudulent transfers to the Lifesciences Defendants and recover damages from Bankman-Fried, Rheingans-Yoo and Nicholas Beckstead ("Beckstead") in connection with Bankman-Fried's breaches of fiduciary duties in facilitating the fraudulent transfers.

4.      Plaintiffs have already entered into settlements with two of the defendants in the Latona Proceeding.  On February 13, 2024, the Court approved a settlement between Plaintiffs and PLS in which PLS agreed to pay Plaintiffs $16 million [Adv. D.I. 89].  On March 27, 2024, PLS wired the $16 million to the Debtors.  On April 4, 2024, Plaintiffs and PLS filed a Stipulation of Dismissal dismissing PLS from the Latona Proceeding with prejudice [Adv. D.I. 97].  On March 13, 2024, Plaintiffs' settlement with Beckstead on favorable terms became effective in accordance with the order authorizing and approving procedures for settling certain existing and future litigation claims and causes of action (the "Settlement Procedures Order") [D.I. 2487], and on March 14, 2024, Plaintiffs voluntarily dismissed Beckstead from the Latona Proceeding with prejudice [D.I. 9374].

5.      In filing this Motion, the Debtors seek to resolve the remainder of the Latona Proceeding, with the exception of the claims against Bankman-Fried.

6.      The Debtors' entry into the Settlement Stipulations is in the best interests of the Debtors' estates, creditors, and stakeholders and should be swiftly approved and consummated.  Following constructive, arm's-length negotiations with the Settling Defendants, the Debtors have the opportunity to:

a.  promptly recover Latona's rights and interests in Lumen, Riboscience, and 4J Therapeutics, without further litigation.  In so doing, the Debtors will preserve the value of Latona's investments for the Debtors, ensuring that Lumen, Riboscience, and 4J Therapeutics do not exhaust their remaining funds in litigation expenses.  If Lumen, Riboscience or 4J Therapeutics is successful in bringing a product to market and/or a third party desires to purchase the Debtors' interests in Lumen, Riboscience or 4J Therapeutics, the Debtors and their estates will benefit from their interests in those entities;

b.  promptly recover $450,000 from Genetic Networks in exchange for the termination of Latona's 2.88% Convertible Promissory Note (the "2024 Note").  In doing so, the Debtors ensure that Genetic Networks does not exhaust its remaining funds in litigation expenses and avoid the risk that Genetic Networks becomes insolvent as a result of its repayment obligation upon the maturity of the 2024 Note, which would result in the Debtors receiving no value;

c.  promptly recover for the Debtors Latona's interest in $420,918.30 in cash merger consideration from GreenLight as a result of GreenLight having been acquired;[3]

d.  resolve the Debtors' objection to all but one aspect of Rheingans-Yoo's non-customer claim—claim nos. 5166 and, a duplicative claim, 89710—against Alameda Bahamas (the "Claim").  The settlement will not resolve Rheingans-Yoo's disputed claim seeking to require the Debtors to, as part of Rheingans-Yoo's prepetition employment compensation, make a $650,000 donation to a charity of Rheingans-Yoo's choice; and

e.  obtain from Rheingans-Yoo documents and information that may aid Plaintiffs in litigating the remaining breach of fiduciary duties claims against Bankman-Fried in the Latona Proceeding.

7.     Accordingly, the Settlement Stipulations satisfy Bankruptcy Rule 9019 and should be approved.

## Background

8.     On November 11, 2022, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under

---

[3]  Pursuant to an Agreement and Plan of Merger by and among GreenLight, SW ParentCo, Inc., and SW MergerCo, Inc., on or about July 19, 2023, Latona's shares in GreenLight were converted into a right to receive $420,918.30 in merger consideration.  GreenLight has agreed to transfer the $420,918.30—all that remains of Latona's interests in GreenLight—to Alameda.

the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the

Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office

of the United States Trustee for the District of Delaware appointed the Official Committee of

Unsecured Creditors in the Debtors' Chapter 11 Cases, pursuant to section 1102 of the

Bankruptcy Code [D.I. 231] (the "Official Committee").

9.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* ("Ray First Day Declaration") [D.I.

24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day*

*Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day*

*Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First*

*Day Pleadings* [D.I. 93].

10.     On December 4, 2022, the Ad Hoc Committee of Non-US Customers of

FTX.com (the "Ad Hoc Committee") noticed their appearance [D.I. 185].

11.     On September 11, 2023, the Court entered the Settlement Procedures

Order, which requires the Debtors to obtain Court approval pursuant to Rule 9019(a) for

proposed settlements where the proposed settlement value is greater than $7,000,000.00, or

where the claim value exceeds $15,000,000.00.

## Jurisdiction

12.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in

connection with this Motion to the extent it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

## Relief Requested

13.     By this Motion, the Debtors request entry of the Order pursuant to

Bankruptcy Code section 105 and Bankruptcy Rule 9019, substantially in the form attached

hereto as Exhibit A, (a) authorizing the Debtors to enter into the Settlement Stipulations attached

thereto as Exhibits 1-6 and (b) approving the Settlement Stipulations.

## Facts Specific to the Relief Requested

### I.     Settlements with Small Lifesciences Defendants and Latona

14.     Between August 9, 2022 and October 6, 2022, Alameda transferred a total

of $18,330,000 to the Small Lifesciences Defendants (the "Transfers") to fund Latona's

investments in the Small Lifesciences Defendants.  In connection with its investments, Latona

received various rights and interests in the Small Lifesciences Defendants.  Specifically:

a.  on August 9, 2022, Alameda transferred $3,000,000 to Lumen, in exchange
for which Lumen and Latona entered into a Charitable Research Funding
Agreement, dated August 5, 2022, that provided Latona with rights to future
royalties in connection with Lumen's development of Covid-19 prevention
and treatment products;

b.  on August 11, 2022, Latona and GreenLight executed a Subscription
Agreement, pursuant to which Alameda transferred $5,500,000 to GreenLight
in exchange for Latona acquiring 1,403,061 shares of GreenLight common
stock;

c.  on August 15, 2022, Alameda transferred $4,000,000 to Riboscience in exchange for Latona acquiring 224,467 preferred A-2 units in Riboscience pursuant to a Series A Purchase Agreement, dated as of June 11, 2021;

d.  on August 26, 2022, Alameda transferred $3,000,000 to Genetic Networks in exchange for Genetic Networks providing Latona with the 2024 Note, due upon demand beginning in August 2024; and

e.  on October 6, 2022, Alameda transferred $2,800,000 to 4J Therapeutics pursuant to a Note Purchase Agreement with Latona dated October 7, 2022 in exchange for 4J Therapeutics providing Latona with a 5% Convertible Promissory Note, due 2028.

15.  On July 19, 2023, Plaintiffs commenced the Latona Proceeding by filing a complaint [Adv. D.I. 1] asserting, among other things, fraudulent transfer claims to avoid and recover the transfers Plaintiffs made to the Lifesciences Defendants, aiding and abetting breach of fiduciary duty claims against Rheingans-Yoo, and breach of fiduciary duty claims against Bankman-Fried.

16.  On October 31, 2023, Rheingans-Yoo and Latona timely answered the complaint, denying Plaintiffs' allegations and raising several affirmative defenses [Adv. D.I. 63].[4]

17.  On November 1, 2023, the Court entered an order approving the stipulation staying the Latona Proceeding (the "Stay Stipulation") as to the Small Lifesciences Defendants until Plaintiffs' claims against Latona and Rheingans-Yoo in the Latona Proceeding were resolved or otherwise determined by final order of the Court [Adv. D.I. 64].  Pursuant to the Stay Stipulation, the Small Lifesciences Defendants agreed to "work to facilitate, the transfer to one or both of the Plaintiffs . . .  all rights and interests that Latona currently has in the Small Lifesciences Defendants."  Stay Stipulation ¶ 2.

---

[4]  Plaintiffs filed an amended complaint on December 22, 2023 [Adv. D.I. 73]. Pursuant to the Case Management Plan and Scheduling Order entered January 17, 2024 [Adv. D.I. 81], Rheingans-Yoo and Latona were not required to answer Plaintiffs' amended complaint.

18.     Plaintiffs believe they have meritorious claims to avoid and recover the

Transfers and damages in connection with those transfers.  The Settling Defendants have raised

certain defenses, including contesting Plaintiffs' assertions with respect to insolvency, the nature

and purpose of the transfers to the Small Lifesciences Defendants, and whether Alameda

received reasonably equivalent value in return.

19.     For the past several months, the Debtors, Latona, and Rheingans-Yoo

have engaged in good faith, arm's-length negotiations, and have reached a consensual resolution

of the Latona Proceeding.  As a result of those negotiations, the Debtors and Rheingans-Yoo

agreed to enter into the Settlement Stipulation attached as <u>Exhibit 1</u> to the Order, resolving the

Latona Proceeding as to Latona and Rheingans-Yoo, pursuant to which Latona will execute an

Assumption and Assignment Agreement transferring to Alameda Latona's rights and interests in

the Small Lifesciences Defendants.

20.     The Debtors and the Small Lifesciences Defendants subsequently

negotiated and executed the Settlement Stipulations, attached as <u>Exhibits 2-6</u> to the Order, which

will result in the following transfers to Alameda:

a.  the Charitable Research Funding Agreement, dated as of August 5, 2022, by
    and between Lumen and Latona;

b.  the 224,467 Series A-2 Preferred Units in Rioscience; the Series A Preferred
    Units Purchase Agreement, Amended and Restated Limited Liability
    Company Agreement, and Investors' Rights Agreement, dated as of June 11,
    2021, by and among Rioscience, Latona, and the other parties thereto; and
    the Voting Agreement and Right of First Refusal and Co-Sale Agreement by
    and among Rioscience, Latona, and the other parties thereto;

c.  the 5% Convertible Promissory Note of 4J Therapeutics, due 2028; and the
    Note Purchase Agreement, dated as of October 7, 2022, between Latona, 4J
    Therapeutics, and the other parties thereto;

d.  $420,918.30 in cash merger consideration from GreenLight; and

e.  $450,000 from Genetic Networks in exchange for termination of the 2024
    Note.  Genetic Networks has provided documentation to the Debtors showing

that it has spent virtually all of the funds it received from the Debtors and does not have the funds to pay, or a reasonable probability of obtaining the funds to pay, the 2024 Note when it matures in August 2024.  The $450,000 settlement payment represents approximately 850% of Genetic Networks' cash balance as of March 11, 2024.

## II.    Partial Settlement of Rheingans-Yoo's Claim

21.    Rheingans-Yoo filed his Claim in the Chapter 11 proceedings on June 29, 2023, seeking at least $993,611.08 in unpaid compensation, comprised of:  (i) $275,000 in unpaid cash bonus ("Cash Bonus Claim"); (ii) $5,763.33 in unpaid prepetition salary ("Prepetition Salary Claim"); (iii) at least $62,847.75 in unpaid postpetition salary ("Postpetition Salary Claim"); and (iv) a $650,000 donation by the Debtors to a charity directed by Rheingans-Yoo as part of Rheingans-Yoo's compensation.

22.    On October 30, 2023, the Debtors filed an objection to Rheingans-Yoo's Claim (the "Objection") [D.I. 3409].

23.    Rheingans-Yoo timely filed a response to the Debtors' Objection on November 13, 2023 [D.I. 3737].

24.    The Debtors and Rheingans-Yoo have agreed to resolve all but one aspect of his Claim.  As part of the settlement of the Latona Proceeding, the Debtors have agreed to allow $180,000 as a General Unsecured Claim, $15,150 of which will be treated and paid as a priority claim under 11 U.S.C. § 507(a)(4), to resolve Rheingans-Yoo's Cash Bonus Claim, Prepetition Salary Claim, and Postpetition Salary Claim.  As part of the settlement, Rheingans-Yoo has agreed to:  (i) provide information and documents relating to Latona; (ii) accept service of deposition subpoenas for the depositions of himself and Latona in connection with the remaining breach of fiduciary duty claims against Bankman-Fried; and (iii) release and disclaim his Cash Bonus Claim, Prepetition Salary Claim, and Postpetition Salary Claim to the extent his interests in those claims exceed $180,000.

25.    The Debtors and Rheingans-Yoo have agreed to have the Bankruptcy Court resolve Rheingans-Yoo's disputed claim that the Debtors make a $650,000 donation to a charitable organization of Rheingans-Yoo's choosing as part of his first semester 2022 bonus award.  All parties' rights are reserved with respect to this claim.

## Basis for Relief

### III.    The Settlement Stipulations Satisfy Bankruptcy Rule 9019 Because They Are Fair, Reasonable and in the Debtors' Best Interests.

26.    Resolution of Plaintiffs' claims in the Latona Proceeding against the Settling Defendants through the Settlement Stipulations is in the best interests of the Debtors and their estates because the Debtors will likely receive greater value from settling the Latona Proceeding than from engaging in further litigation.  The settlement will:

   a.    result in the Debtors recovering the allegedly fraudulently-transferred property—that is, Latona's rights and interests in Lumen, Riboscience, and 4J Therapeutics—without the need for further litigation;

   b.    result in the Debtors recovering $450,000 from Genetic Networks and $420,918.30 from GreenLight;

   c.    resolve all but one aspect of the Debtors' objection to Rheingans-Yoo's Claim on favorable terms; and

   d.    allow Plaintiffs to obtain information and documents from Rheingans-Yoo that may assist Plaintiffs in connection with the breach of fiduciary duty claims against Bankman-Fried.

27.    The Debtors will likely receive greater value from settling the Latona Proceeding with the Small Lifesciences Defendants than from engaging in further litigation, given representations by the Small Lifesciences Defendants about:  (i) their limited remaining funds and difficulty and/or inability to raise additional funds while the litigation is pending; (ii) their likelihood of expending the entirety of the funds received from Alameda in litigation expenses defending this action; and (iii) the risk of Genetic Networks becoming insolvent as a result of its repayment obligations when the 2024 Note matures in August 2024.  Moreover, in

the event that Lumen, 4J Therapeutics, and Rbioscience create a successful product or a buyer seeks to acquire Latona's interests in those entities, the Debtors' estates will benefit.

28.    The Debtors are satisfied that neither Latona nor Rheingans-Yoo currently has sufficient resources to pay money damages.  Latona is a shell corporation that had no bank account of its own and was funded entirely by the Debtors.  Rheingans-Yoo's counsel has represented that Rheingans-Yoo's financial resources would be depleted by continued litigation of the Latona Proceeding.

29.    Accordingly, settlement on the proposed terms is a reasonable exercise of the Debtors' business judgment, satisfying Bankruptcy Rule 9019.

30.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy" as such settlements "minimize litigation and expedite the administration of the estate." *In re World Health Alts., Inc.*, 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

31.    "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvass the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R.

798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted).  Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

32.    The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222 B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).  The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities."  *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (citations omitted).

33.    In addition, Bankruptcy Code section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

34.     The terms of the proposed Settlement Stipulations fall within the range of
reasonableness and should be approved by the Court.  The terms of the Settlement Stipulations
provide for:  (i) the transfer to Alameda of the rights and interests in Lumen, Riboscience, and 4J
Therapeutics, while avoiding the time and expense of continued litigation and further dissipation
of the funds that Alameda transferred to these entities; (ii) Alameda's recovery of $450,000 from
Genetic Networks, while avoiding risk of Genetic Networks becoming insolvent as a result of the
maturity of the 2024 Note; (iii) Alameda's recovery of $420,918.30 in merger consideration
from GreenLight; (iv) receipt by Plaintiffs of information that could aid their remaining claims
against Bankman-Fried in the Latona Proceeding; and (v) resolution of all but one aspect of
Rheingans-Yoo's Claim.

35.     Accordingly, the compromises set forth in the Settlement Stipulations are,
in the aggregate, fair and equitable, fall within the range of reasonableness, and satisfy each
applicable *Martin* factor.

a.     **The Probability of Success in Litigation and Subsequent Collection**

36.     Plaintiffs maintain that they have meritorious claims to recover the full
amount of the Transfers from Alameda to the Small Lifesciences Defendants.  However,
Plaintiffs would need to spend significant time and resources proving their claims, obtaining a
favorable judgment against the Settling Defendants, and enforcing those judgments, including
against Latona in the Bahamas.  The Small Lifesciences Defendants, Latona, and Rheingans-Yoo
would pursue various defenses to the claims, contesting, among other things, Plaintiffs'
assertions with respect to insolvency, the nature and purpose of the transfers to the Small
Lifesciences Defendants, and whether Alameda received reasonably equivalent value in return.

37.     Regarding Rheingans-Yoo's Claim, the Debtors maintain that they have
meritorious arguments to disallow and expunge Rheingans-Yoo's Claim in full, including that

Rheingans-Yoo elected to receive his bonus half in cash and half in options and that he was awarded those options, that FTX Digital Markets paid Rheingans-Yoo's salary (not Alameda Bahamas), and that Rheingans-Yoo resigned and did not perform work for the Debtors postpetition. Rheingans-Yoo has asserted that he elected to receive his bonus entirely in cash, that under his employment agreement with Alameda Bahamas he is owed payment for unpaid prepetition wages from the Debtors regardless of which FTX entity paid his salary, and that he did not resign postpetition and is therefore owed postpetition wages. Litigating these facts would ultimately consume significant time and resources of the Debtors that could ultimately eclipse the value of Rheingans-Yoo's Claim.

38.    Given the attendant risks and costs of litigation, the fact that further litigation may entirely deplete the remaining funds of the Small Lifesciences Defendants, and the favorable terms of the settlement, the Debtors submit that the proposed Settlement Stipulations are in the best interests of the Debtors' estates.

**b.    The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted**

39.    Litigation of Plaintiffs' claims against the Settling Defendants would be complex, expensive, and time-consuming. Pursuit of the claims would require litigating the sufficiency of evidence for various theories of recovery for multiple transfers, including the circumstances of each transfer and the intent of Bankman-Fried and others in connection with these transfers, and litigating a complex factual record regarding Rheingans-Yoo's compensation, including conversations Rheingans-Yoo had with prepetition management regarding his compensation. Bankman-Fried and other former executives of the Debtors are unlikely to be available to testify on issues relating to the claims in the near term due to ongoing criminal proceedings, which further complicates the litigation and timing of resolution.

c.    **The Paramount Interests of Creditors Are Served**

40.    The Settlement Stipulations are in the best interests of the Debtors' creditors because the Stipulations:  (i) recover Latona's rights and interests in Lumen, 4J, and Rioscience, without the need for time consuming and costly litigation and, to the extent the value of those rights and interests appreciates, any such appreciation will inure to the benefit of the Debtors' estates, creditors, and stakeholders; and (ii) recover $450,000 from Genetic Networks and $420,000 from GreenLight; and (iii) limit the scope of litigation with respect to Rheingans-Yoo's Claim, thereby preserving assets of the Debtors' estates.

41.    Therefore, in the Debtors' business judgment, the value of entering into the Settlement Stipulations exceeds the net benefits that Debtors and their estates, creditors, and stakeholders could potentially obtain by pursuing litigation against the Settling Defendants. Based on the foregoing, the Debtors submit that the Settlement Stipulations satisfy the *Martin* factors and Bankruptcy Rule 9019 because they are fair, reasonable, and in the best interests of the Debtors and their estates.  As a result, the Debtors respectfully request that the Court authorize the Debtors to enter into the Settlement Stipulations and approve their terms.

## Waiver of Bankruptcy Rule 6004(h)

42.    Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h) to the extent such stay applies.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay to the extent such stay applies.

**Reservation of Rights**

43.        Except as otherwise set forth herein or in the Stipulation, nothing in this Motion:  (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (iii) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

**Notice**

44.        Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Official Committee; (c) counsel to the Ad Hoc Committee; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) counsel to the defendants in the Latona Proceeding; (i) counsel for the Joint Official Liquidators of FTX Digital Markets Ltd.; (j) the United States Attorney for the Southern District of New York; and to the extent not listed herein, (k) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submits that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit A.

Dated:  April 26, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:     landis@lrclaw.com
            mcguire@lrclaw.com
            brown@lrclaw.com
            pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Steven L. Holley (admitted *pro hac vice*)
 Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
 Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
 125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email:     holleys@sullcrom.com
           wheelers@sullcrom.com
           gluecksteinb@sullcrom.com
           dunnec@sullcrom.com
           crokej@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*