## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 23, 2024 at 10:00 a.m. (ET)** |
| | **Obj. Deadline: May 22, 2024 at 10:00 a.m. (ET)** |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER QUASHING NOTICES OF DEPOSITION AND FOR A PROTECTIVE ORDER BARRING REQUESTED DISCOVERY PROPOUNDED BY DANIEL FRIEDBERG

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion"), for entry of a protective order, substantially in the form attached hereto as Exhibit A (the "Order"), limiting Daniel Friedberg's overbroad and unduly burdensome discovery requests pursuant to Rule 26 of the Federal Rules of Civil Procedure (the "Federal Rules"), Rules 7026(c) and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 7026-1 and 7030-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), made applicable by Federal Rule of Bankruptcy Procedure 9014.  Specifically, the Debtors seek entry of an Order (i) striking requests for production 1, 5-16, and 18 from *Daniel Friedberg's Amended First Set of Requests for Production of Documents and Things to FTX Trading Ltd. and Its Affiliated Debtors and Debtors in*

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

*Possession* (the "<u>Document Requests</u>"); (ii) quashing the *Notice of Deposition of John Ray III*; the *Notice of Deposition of Maria Cilia;* the *Notice of Deposition of Artulo Giovanoli*; the *Notice of Deposition of Roland Griesse*; the *Notice of Deposition of Kevin Cofsky*; the *Notice of Deposition of Juerg Bavaud*; and the *Notice of Deposition of the Debtors Under FRCP 30(b)(6) and FRBP 9014* (together, the "<u>Deposition Notices</u>"); and (iii) quashing *Daniel Friedberg's Amended First Set of Interrogatories to FTX Trading Ltd. and Its Affiliated Debtor and Debtors in Possession* (the "<u>Interrogatories</u>" and collectively with the Deposition Notices and Interrogatories, the "<u>Discovery Requests</u>").

The Document Requests are attached as <u>Exhibit A</u> to the *Declaration of Brian D. Glueckstein* (the "<u>Glueckstein Declaration</u>"), filed contemporaneously herewith. The Deposition Notices are attached hereto as <u>Exhibits B–H</u> to the Glueckstein Declaration. The Interrogatories are attached as <u>Exhibit I</u> to the Glueckstein Declaration. In support of the Motion, the Debtors respectfully state as follows:

## **<u>Preliminary Statement</u>**

1.      The Debtors are forced to file this Motion because Daniel Friedberg, a party with no apparent financial stake in the affairs of FTX Europe AG ("<u>FTX Europe</u>"), has insisted that he is entitled to far-reaching discovery on the basis of a specious objection interposed to the *Motion of Debtors for Entry of an Order (i) Authorizing and Approving Entry Into, and Performance Under, the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement, and the Restructuring Payment Agreement and (ii) Granting Related Relief* [D.I. 11626] (the "<u>Restructuring Motion</u>").

2.      Mr. Friedberg's objection to the Restructuring Motion [D.I. 13530] (the "<u>Objection</u>") is the only objection that has been filed regarding the Restructuring Motion, which is not opposed by the Official Committee of Unsecured Creditors, the Office of the United States

Trustee for the District of Delaware, or any stakeholder with an actual economic interest in it.  The settlements set forth in the Restructuring Motion already have been approved by the court overseeing the moratorium proceedings in Switzerland involving FTX Europe (the "Moratorium Proceedings"), and should pave the way for a solvent wind-down of FTX Europe through applicable Swiss law proceedings.[2]  The Restructuring Motion also saves the Debtors $14 million by resolving a $65 million claim filed by CM-Equity AG ("CM-Equity") against FTX Europe without litigation for only $51 million.  Against this backdrop, the Restructuring Motion should be uncontroversial.

3.    Mr. Friedberg is, however, determined to use his Objection as an excuse to take wide-ranging discovery of the Debtors through 18 Document Requests, 14 Interrogatories, and eight deposition notices.  Like most of Mr. Friedberg's Objection, most of these Discovery Requests have nothing to do with matters relevant to the Restructuring Motion.  Accordingly, it is apparent that Mr. Friedberg's Objection is pretext to harass the Debtors, interfere with the administration of these Chapter 11 Cases, and retaliate against the Debtors for commencing an adversary proceeding (Adv. Pro. No. 23-50419) against him to recover damages caused by Mr. Friedberg's breaches of fiduciary duty, legal malpractice, and other wrongdoing [Adv. Pro. D.I. 1].  The Debtors also suspect that Mr. Friedberg's Objection and related Discovery Requests are a mere subterfuge to aid third parties who have not appeared before this Court to obtain discovery in the Swiss Moratorium Proceedings which they have no legal right to obtain.

4.    Nevertheless, to avoid unnecessarily involving the Court, the Debtors met and conferred in good faith on multiple occasions with Mr. Friedberg's counsel, and agreed to

---

[2]    *See* Glueckstein Decl. Ex. J (April 19, 2024 Order of the District Court of Höfe (the "Swiss Court Order")); *Id.* Ex. K (certified translation of the Swiss Court Order).

provide Mr. Friedberg with discovery concerning the evidentiary basis for the Restructuring Motion as set forth in the declaration in support of the motion submitted by Steven P. Coverick of Alvarez & Marsal [D.I. 11626-6].  Specifically, the Debtors agreed to produce certain books and records regarding (i) the resolution of the $65 million claim against FTX Europe filed by CM-Equity and (ii) the resolution of the intercompany claims involving FTX Europe being addressed in the Restructuring Motion.  (*See* Glueckstein Decl. Ex. L.)  The Debtors also agreed to make Mr. Coverick available for a deposition on the subjects addressed in his declaration, which will permit Mr. Friedberg to test the Debtors' evidence and advance any argument that the Debtors have not met their burden under Bankruptcy Rule 9019.  (*Id.*)

5.      Mr. Friedberg continues to insist he is entitled to far more.  Based on speculative assertions in his Objection, Mr. Friedberg claims he is entitled to discovery relating to two topics wholly irrelevant to the Restructuring Motion.  *First*, Mr. Friedberg seeks extensive discovery regarding the sale transaction this Court approved through the now final and unappealable *Order Authorizing and Approving (i) Entry Into, and Performance Under, the Share and Asset Purchase Agreement, (ii) the Sale of the Shares of the Transferred Subsidiaries, Shares of the Minority Entities and Transferred Assets Free and Clear of All Liens, Claims, Interests and Encumbrances and (iii) Dismissing the Chapter 11 Cases of the FTX Europe Subsidiaries* [D.I. 9585] (the "Sale Order").  *Second*, Mr. Friedberg demands wide-ranging discovery regarding whether Swiss law has been complied with, whether the Swiss Court will recognize an order of this Court, the financial condition of FTX Europe, and the corporate authority to initiate bankruptcy proceedings as to FTX Europe.  Furthermore, to the extent Mr. Friedberg has propounded any discovery on relevant topics, he is attempting to harass the Debtors by, among

other things, insisting upon inappropriate apex depositions and responses to duplicative interrogatories that seek information more efficiently provided through other means.

6.      Accordingly, the Debtors' Motion should be granted for three principal reasons:  *First*, Mr. Friedberg is not entitled to discovery about the Sale Order.  Black letter law established by the Supreme Court's decision in *Travelers Indemnity Co.* v. *Bailey* provides that Mr. Friedberg is barred from collaterally attacking the Sale Order.  557 U.S. 137, 153 (2009). Mr. Friedberg could have—but did not—object to the Sale Order.  The sale transaction approved in the Sale Order was subsequently approved by the Swiss Court, and the parties closed the transaction on May 9, 2024.  Yet, Mr. Friedberg is attempting to re-litigate the sale transaction by seeking, among other things, "[a]ll Documents and Communications exchanged between [Debtors] and any potential purchasers of FTX Europe" (Document Request 8), and "[a]ll Documents and Communications concerning the announcements that FTX Europe was 'for sale' and the bidding and sales process for the sale of FTX Europe" (Document Request 9).  This is not permitted.  Mr. Friedberg was given "a fair chance to challenge" the Sale Order "and fail[ed] to do so," which means he "cannot challenge the court's order through a collateral attack."  *Berry Petrol. Co.* v. *Linn Operating, Inc.*, 927 F.3d 862, 867 (5th Cir. 2019).  Accordingly, Mr. Friedberg should be barred from pursuing all of his Discovery Requests targeted at the Sale Order.  (*See, e.g.*, Document Requests 1, 6-9, 15-16, 18; Interrogatories 11 and 12.)

7.      *Second*, Mr. Friedberg's Objection presents no evidence sufficient to justify his purported requests for jurisdictional discovery regarding the solvency and management of FTX Europe to challenge this Court's authority to consider the Restructuring Motion.  (*See* Document Requests 1, 5, 10-14; Interrogatories 6-10, 13.)  Mr. Friedberg's challenge to this Court's subject matter jurisdiction is based on nothing more than rank speculation leavened with improperly

borrowed Swiss law arguments that were previously made by others and subsequently withdrawn without adjudication.  (*See, e.g.*, Objection ¶¶ 7-31.)  It is well established that a party "may not . . . undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings* v. *BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).  Accordingly, this Court should bar Mr. Friedberg from "seeking discovery to support (pre-textual) theories . . . in hopes that something will be found." *Robinson* v. *Horizon Blue Cross-Blue Shield of New Jersey*, 2013 WL 6858956, at \*6 (D.N.J. Dec. 23, 2013), *report and recommendation adopted*, 2014 WL 3573339 (D.N.J. July 21, 2014), *aff'd*, 674 F. App'x 174 (3d Cir. 2017).  The Swiss Court has already approved the settlements at issue, conclusively resolving any concerns about the enforcement of this Court's order.

8.      *Third*, to the extent any of the Discovery Requests seek information relevant to the Restructuring Motion, Mr. Friedberg is entitled only to discovery proportional to the needs of the case.  The Debtors have agreed to provide Mr. Friedberg with appropriately targeted discovery as to the factual basis for the Restructuring Motion and the relief requested pursuant to Bankruptcy Rule 9019.  But Mr. Friedberg wants much more, and he wants it three times over in the form of documents, numerous depositions, and interrogatories.  The Debtors are, subject to their objections, providing reasonable information in response to the Document Requests that seek relevant information (Document Requests 2-4, and 17), and are making Mr. Coverick available for a deposition.  But the remainder of Mr. Friedberg's Discovery Requests should be quashed, thus paving the way for the Court's prompt consideration of the Restructuring Motion.

## Background

9.      On November 11 and November 14, 2022, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code [D.I. 231] (the "Committee").

10.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

11.     Mr. Friedberg's purported Objection to the Restructuring Motion is the latest in a series of controversies arising from the Debtors' misbegotten prepetition acquisition of FTX Europe. Because Mr. Friedberg's Objection seeks to dredge up irrelevant issues from FTX Europe's past, it is necessary to briefly summarize the history.

## I.     FTX Europe

12.     Pursuant to a series of transactions on October 25, 2020, July 2, 2021 and November 14, 2021, the FTX group acquired FTX Europe (f/k/a Digital Assets DA AG) and its subsidiaries, from Patrick Gruhn, Robin Matzke, and Lorem Ipsum RM UG.  [D.I. 8202-4 ¶ 6.]

13.     Following the events leading to and the filing of these Chapter 11 Cases, FTX Europe's board of directors, pursuant to its duties under Swiss law, filed a request with the District Court of Höfe, Switzerland (the "Swiss Court") to open provisional moratorium

proceedings with respect to FTX Europe on April 4, 2023. [D.I. 8202-5 ¶ 4.] The Swiss Court granted this request on April 11, 2023, which was subsequently extended to December 11, 2023. (*Id*.) On November 24, 2023, the Swiss Court granted a definitive moratorium until June 11, 2024. (*Id*.) Pursuant to the Moratorium Proceedings, FTX Europe operates under the supervision of a court-appointed administrator, Holenstein Brusa AG (the "Swiss Administrator"). [*See* D.I. 8202-5 ¶ 5.]

## II.     The Events that Led to the FTX Europe Sale Transaction

14.     On July 12, 2023, the Debtors commenced an adversary proceeding against Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG, by filing a complaint seeking, among other things, to avoid and recover transfers made by the Debtors in connection with the acquisition of FTX Europe (the "FTX Adversary Proceeding"). [Adv. Pro. No. 23-50437, D.I. 1.] After significant motion practice, and in connection with settlement terms agreed among the parties, on January 31, 2024, the Court entered an agreed order approving a stay of the adversary proceeding. [Adv. Pro. No. 23-50437, D.I. 83.]

15.     On November 17, 2023, Dr. Marcel Lötscher, a former employee and director-elect of FTX Europe, filed the *Motion of Dr. Marcel Lötscher to Dismiss Bankruptcy Case of FTX Europe AG* [D.I. 4037] (the "Lötscher Motion to Dismiss"). The Debtors subsequently objected to this motion noting that the motion was "nothing more than a tactic . . . to destabilize and disrupt the Debtors' deliberate and methodical progress towards confirmation of a viable consensual plan of organization." [D.I. 5428.]

16.     On January 4, 2024, Debtors filed the *Motion of Debtors For Entry of An Order (I) Authorizing and Approving (A) Entry Into, and Performance Under, the Share Purchase Agreement and (B) the Purchase and Sale of Certain Shares Free and Clear of Liens, Claims and Encumbrances and (II) Dismissing the Chapter 11 Cases of Certain Debtors Effective Upon the*

*Earlier of the Closing or the Termination of the Share Purchase Agreement* [D.I. 5378] (the "Initial FTX Europe Sale Motion"), seeking Court authorization, among other things, for FTX Europe to sell, and for FTX Trading to purchase, the equity interests of certain FTX Europe subsidiaries. In response, on January 18, 2024, Dr. Lötscher and Martha Lambrianou filed the *Joint Objection of Dr. Marcel Lötscher and Martha Lambrianou to the FTX Europe Sale Motion* [D.I. 5957] (the "Initial FTX Europe Sale Objection").

17. Good faith settlement negotiations related to the FTX Adversary Proceeding, the Initial FTX Sale Motion, and related matters resulted in a comprehensive resolution presented to the Court, after notice to parties in interest, in the *Motion of Plaintiffs for Entry of an Order (i) Authorizing Plaintiffs to Enter Into Stipulation With Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, Brandon Williams, Martha Lambrianou, and Marcel Loetscher, (ii) Approving the Stipulation, and (iii) Granting Related Relief* (the "Global Settlement") [D.I. 7853]. This Court approved the Global Settlement on March 18, 2024 [D.I. 9587].

18. Pursuant to the terms of the Global Settlement, Debtors withdrew with prejudice the Initial FTX Europe Sale Motion [D.I. 11212], mooting the Initial FTX Europe Sale Objection. Through the Global Settlement, Patrick Gruhn, Robin Matzke and Lorem Ipsum UG (the "Purchasers") agreed to purchase back certain subsidiaries and assets of FTX Europe for $32,700,000 and other consideration on terms and conditions set forth therein. [*See* D.I. 8202-3.]

19. This purchase contemplated by the Global Settlement was formalized on February 28, 2024, when Debtors filed the *Motion of Debtors for Entry of an Order Authorizing and Approving (i) Entry Into, and Performance Under, the Share and Asset Purchase Agreement, (ii) the Sale of the Shares of the Transferred Subsidiaries, Shares of the Minority Entities and Transferred Assets Free and Clear of All Liens, Claims, Interests and Encumbrances and*

*(iii) Dismissing the Chapter 11 Cases of the FTX Europe Subsidiaries* [D.I. 8202] (the "Sale
Motion").   The Sale Motion sought approval of the above-referenced sale of FTX Europe
subsidiaries and assets to the Purchasers (the "Sale Transaction").   The deadline to object to the
Sale Motion was March 13, 2024 and Mr. Friedberg did not object to the Sale Motion.

20.    On March 18, 2024, the Court entered the Sale Order, which became final
and unappealable pursuant to Bankruptcy Rule 8002(a) on April 1, 2024.   On April 19, 2024, the
Swiss Court issued an order approving the Sale Transaction.   (Glueckstein Decl. Exs. J, K.)   On
May 9, 2024, the parties closed the Sale Transaction pursuant to its terms.

## III.    The Restructuring Motion and Swiss Court Approval

21.    On April 10, 2024, Debtors filed the Restructuring Motion.   [D.I. 11626.]
The Restructuring Motion seeks approval of several agreements that provide for the consensual
restructuring and settlement of a network of claims among Debtors FTX Europe, Alameda
Research and FTX Trading, as well as non-Debtor third parties CM-Equity AG ("CM-Equity")
and Binance (Switzerland) AG ("Binance Switzerland").[3]

22.    The settlement agreements at issue in the Restructuring Motion include the
Collateral Claim Settlement Agreement, dated April 7, 2024.   [D.I. 11626 ¶¶ 14-18.]   This
agreement resolves a $65 million claim filed by CM-Equity against FTX Europe in these Chapter
11 Cases and an approximately €68.54 million claim filed by CM-Equity against FTX Europe in
the Moratorium Proceedings, in exchange for an agreement by FTX Trading to allow a general
unsecured claim by Binance Switzerland in an amount of $50 million and a payment of $1 million
to CM-Equity by FTX Trading.   [D.I. 11626 ¶¶ 12, 15.]   This settlement will extricate FTX Europe

---

[3]    The proposed settlement involving Binance Switzerland only resolves Binance Switzerland's asserted claim
against non-Debtor third-party CM-Equity and does not otherwise resolve or affect, resolve or compromise any
other claim of any Binance affiliate against any Debtor, or any claim of any Debtor against Binance entity or
affiliate.  (Restructuring Motion at 2.)

from sizable claims and complex litigation arising from legacy contracts related to tokenized stock and result in a net reduction in the amount of claims against the Debtors of $14 million. [D.I. 11626 ¶ 30.] If approved by this Court, the transactions contemplated by the Restructuring Motion are expected to enable FTX Europe to wind down on a solvent basis in accordance with applicable Swiss law.

23. Through its April 19, 2024 order, the Swiss Court overseeing the Moratorium Proceedings approved the transactions before the Court in the Restructuring Motion. (*See* Glueckstein Decl. J, K.) Noting that the Swiss Administrator recommended approval, the Swiss Court held that the restructuring agreements were "appropriate and in the interest of the creditors, especially since" they would "eliminate the indebtedness" of FTX Europe and "result in better conditions for the creditors than would result from a sale of the assets in the liquidation process." (*Id.*)

## IV.  Mr. Friedberg's Efforts to Obtain Discovery Based on a Purported Objection to the Restructuring Motion

24. Mr. Friedberg belatedly injected himself into the affairs of FTX Europe by sending a letter to the Debtors on April 19, 2024 stating that he intended to seek to extend the deadline to object to the Restructuring Motion and first pursue discovery to develop his forthcoming objection. On April 24, 2024, Mr. Friedberg sent a follow-up email attaching 26 wide ranging document requests, 20 equally searching interrogatories, and eight deposition notices, including notices for the depositions of two of the Debtors' most senior executives, John Ray III, the Debtors' Chief Executive Officer, and Mary Cilia, the Debtors' Chief Financial Officer. (Glueckstein Decl. Exs. B, C.)

25. On April 23, 2024, Mr. Friedberg filed *Daniel Friedberg's Motion to Shorten Notice and Objection Periods for His Motion to Extend Objection Deadline and Establish*

-11-

*Schedule for Motion of Debtors for Entry of an Order (i) Authorizing and Approving Entry Into, and Performance Under, the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement, and the Restructuring Payment Agreement and (ii) Granting Related Relief* [D.I. 12692] (the "<u>Motion to Shorten</u>"), which sought to shorten the notice period related to *Daniel Friedberg's Motion for an Order Extending Objection Deadline and Establishing Discovery Schedule to Object to Motion of Debtors for Entry of an Order (i) Authorizing and Approving Entry Into, and Performance Under, the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement, and the Restructuring Payment Agreement and (ii) Granting Related Relief* [D.I. 12691] (the "<u>Motion to Extend</u>").

26.    On April 25, 2024, Debtors filed *Debtors' Objection to Daniel Friedberg's Motion to Shorten Notice and Objection Periods for His Motion to Extend Objection Deadline and Establish Schedule for Motion of Debtors for Entry of an Order (i) Authorizing and Approving Entry into, and Performance Under, the Collateral Claim Settlement Agreement, The Inter-Debtor Restructuring Agreement, and the Restructuring Payment Agreement and (ii) Granting Related Relief* [D.I. 12744].  The Debtors argued that Mr. Friedberg's own delay in objecting was not a basis for him to obtain any relief and that he was not entitled to discovery unless he actually objected to the Restructuring Motion because, in the absence of an objection, the Debtors were "left to speculate as to the appropriateness of" the discovery Mr. Friedberg requested.  (*Id.* ¶¶ 5-7.)

27.    On April 26, 2024, the Court entered an order denying the Motion to Shorten and granting in part and denying in part the Motion to Extend, ordering Mr. Friedberg to file any objection he may have to the Restructuring Motion by April 30, 2024, and barring him from seeking discovery until after he filed an objection to the Restructuring Motion.  [D.I. 12849.]

Case 22-11068-JTD   Doc 14994   Filed 05/15/24   Page 13 of 27

28.     On April 30, 2024, Mr. Friedberg filed his Objection.  [D.I. 13530.]  In the Objection, Mr. Friedberg collaterally attacks the final and unappealable Sale Order arguing that the sale process was flawed and that the transaction did not deliver value to the Debtors' estates. (Objection ¶¶ 64-77.)  Mr. Friedberg also speculates about how there might be something about Swiss law makes the Restructuring Motion objectionable and deprive this Court of subject matter jurisdiction over FTX Europe's bankruptcy proceedings.  (*See, e.g.*, Objection ¶¶ 6, 8-33, 81-83, 84-85.)  Lastly, Mr. Friedberg raises misguided concerns about the issues presented in the Restructuring Motion, namely (i) the resolution of the $65 million claim against FTX Europe filed by CM-Equity (*id.* ¶ 38-63), and (ii) the resolution of the intercompany claim of FTX Trading Ltd. against FTX Europe AG (*id.* ¶ 78-80).

29.     The day after filing Mr. Friedberg's Objection, his counsel sent the Debtors an email renewing all of Mr. Friedberg's discovery requests.  (Glueckstein Decl. Ex. M.)  On May 3, 2024, counsel for Debtors met and conferred with Mr. Friedberg's counsel regarding Mr. Friedberg's discovery requests.

30.     During the meet and confer and in a follow-up email, the Debtors made clear that they objected to the over broad and unduly burdensome discovery requests that Mr. Friedberg propounded, but were prepared to provide targeted and expedited discovery about the factual issues relevant to the Restructuring Motion.  As an initial matter, the Debtors promptly produced a copy of the Swiss Court Order along with a draft translation of it.  (Glueckstein Decl. Exs. N.)  The Debtors also indicated that they were prepared to produce "certain books and records regarding (i) the claim CM-Equity has asserted against FTX Europe AG that is being resolved through the Restructuring Motion, and (ii) the intercompany assets and liabilities of FTX Europe AG being addressed through the Restructuring Motion."  (Glueckstein Decl. Ex. L.)  The Debtors

-13-

also agreed to make Mr. Coverick available to testify regarding the facts supporting the Restructuring Motion as set forth in his Declaration. (*Id*.)

31.     In response, Mr. Friedberg's counsel indicated that they would review Mr. Friedberg's discovery requests with their client and seek to pare them back. (Glueckstein Decl. Ex. O.)  Unfortunately, nothing changed.

32.     On May 9, 2024, Mr. Friedberg served the operative Document Requests and Interrogatories and indicated that Mr. Friedberg was continuing to demand the same eight depositions he originally noticed. (Glueckstein Decl. Ex. P.)  There was no material change in the scope of the 18 Document Requests and 14 Interrogatories from what Mr. Friedberg originally served.  Tracking the subject matters addressed in the Objection, the Document Requests and Interrogatories include demands for a variety of documents and information about the underpinnings of the Sale Transaction. (*See, e.g.*, Document Requests 1, 6-9, 15-16, 18; Interrogatories 11 and 12.)  They also include a number of request regarding the solvency and management of FTX Europe unrelated to any proper objection because they do not relate to the merits of the settlement agreements at issue in the Restructuring Motion. (*See* Document Requests 1, 5, 10-14; Interrogatories 6-10, 13.).

33.     On May 13, 2024, counsel for Debtors and counsel for Mr. Friedberg held another meet and confer teleconference regarding the amended Discovery Requests.  By the conclusion of that call, it was clear to the Debtors that the parties are at an impasse.

## Jurisdiction

34.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein is section 105 of the Bankruptcy Code, Bankruptcy Rules 9006 and 9014 and Local Rule 9006-1.  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

35.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (i) striking Document Requests 1, 5-16, and 18, (ii) quashing the Deposition Notices, and (iii) quashing the Interrogatories.

## Basis for Relief

36.     Good cause exists to enter an order limiting Mr. Friedberg's Discovery Requests because the Debtors will be harmed if they a forced to engage in wide-ranging discovery concerning a multitude of wholly irrelevant subjects and respond to Mr. Friedberg's burdensome, overly broad, and duplicative requests regarding the few relevant matters he has inquired about.

37.     Rule 26 of the Federal Rules of Civil Procedure, made applicable to these Chapter 11 Cases by Bankruptcy Rules 7026 and 9014, limits the discovery that a party may obtain to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  It also provides the court "must" limit discovery "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(c).

38.     Pursuant to Rule 26(c) of the Federal rules of Civil Procedure, a "court may, for good cause, issue and order to protect a party . . . from annoyance . . . oppression, or undue

burden or expense," including an order "forbidding" certain discovery, "forbidding inquiry into certain matters," or "proscribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c).  Thus, courts have "discretion to issue protective orders that impose restrictions on the extent and manner of discovery where necessary." *Pearson* v. *Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

39.     Here, good cause exists to issue the Debtors' proposed Order limiting Mr. Friedberg's Discovery Requests because Mr. Friedberg is seeking a wealth of irrelevant documents and information in support of (i) impermissible collateral attacks on the Sale Order, and (ii) baseless assertions about Swiss law and jurisdiction that are not properly before the Court and constitute nothing more than a pretext to interfere with the Debtors and target their most senior executives.  *See, e.g.*, *Novartis Pharms. Corp*. v. *Eon Labs Mfg., Inc*., 206 F.R.D. 392, 394 (D. Del. 2002) (granting protective order vacating irrelevant discovery requests); *Robinson*, 2013 WL 6858956, at *6 (granting protective barring a party from "seeking discovery to support (pre-textual) theories . . . in hopes that something will be found").  Further, even as to relevant matters at issue in the Restructuring Motion, Mr. Friedberg is demanding burdensome and duplicative discovery disproportionate to the needs of this contested matter that is designed to distract the Debtors and their executives, and interfere with the administration of theses Chapter 11 Cases. Accordingly, good cause exists to grant a protective order because Mr. Friedberg has propounded Discovery Requests that would otherwise "cause a clearly defined and serious injury." *Campbell* v. *Sedgwick Detert, Moran & Arnold*, 2013 WL 1314429, at *8 (D. N.J. Mar. 28, 2013).

**I.     The Discovery Requests Regarding the Sale Transaction Should Be Quashed.**

40.     Because Mr. Friedberg cannot muster any meaningful objection to the transactions at issue in the Restructuring Motion, Mr. Friedberg is seeking extensive discovery nominally in furtherance of two collateral attacks on the final and unappealable Sale Order.

Moreover, the parties have now closed the authorized Sale Transaction, thus illustrating the time to litigate the Sale Order is long expired.

41.     Nonetheless, the Objection first argues that Sale Order was not "accretive" and provided no value to the estate.  (Objection ¶¶ 64-71.)  The Objection then argues that the FTX Europe sale process was insufficiently transparent and thus must have somehow resulted in a poor outcome for the Debtors' estates.  (Objection ¶¶ 72-77.)  Both of these arguments are quite rich coming from Mr. Friedberg given his role in the collapse of the FTX group.  In support of these collateral attacks, Mr. Friedberg has propounded eight Document Requests and two Interrogatories seeking, among other things, "All Documents and Communications concerning the announcements that FTX Europe was 'for sale' and the bidding and sales process for the sale of FTX Europe" and a description of the "entire sales process used in attempting to sell or liquidate FTX Europe."  (Document Requests 1, 6-9, 15-16, 18; Interrogatories 11 and 12.)

42.     Mr. Friedberg has no right to burden and harass the Debtors by seeking such discovery because he is barred from collaterally attacking the Sale Order.  Black letter law provides that the Sale Order is *res judicata* as to Mr. Friedberg.  *Travelers*, 557 U.S. at 152 (final orders of bankruptcy court are "res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."); *see also In re Essar Steel Minnesota, LLC*, 652 B.R. 709, 720 (Bankr. D. Del. 2023) ("once a judgment becomes final and non-appealable, it is binding on all parties thereto that received constitutionally adequate notice thereof.").  Mr. Friedberg could have—but did not—file an objection to the Sale Motion.  In the Sale Order, this Court held that the terms of the FTX Europe Sale Transaction were "fair and reasonable" and a "reasonable exercise of the Debtor's business judgment."  (Sale Order at 5-7.)

Thus, Mr. Friedberg is precluded from challenging the reasonableness of the Sale Transaction because he is precluded from "from relitigating issues that were or could have been raised" in any objection to the Sale Motion. *In re Old Carco LLC*, 2014 WL 6790781, at *2 (S.D.N.Y. Dec. 1, 2014) (internal quotations omitted). Simply put, he cannot "tunnel back" and challenge the Sale Order in an effort to somehow undermine the Restructuring Motion. *Travelers*, 557 U.S. at 154 (internal citations and quotation marks omitted).

43.    Thus, all of Mr. Friedberg's Discovery Requests targeted at the transactions at issue in the Sale Order should be quashed because they seek irrelevant information that cannot be put to any legitimate use. *See, e.g., Campbell*, 2013 WL 1314429, at *11 (entering protective order as to discovery requests "irrelevant to Plaintiff's claims"); *Westfield Ins. Co*. v. *Icon Legacy Custom Modular Homes*, 321 F.R.D. 107, 119 (M.D. Pa. 2017) (rejecting document requests that were "wholly irrelevant" as a matter of law based on the legal questions at issue).

## II.    All of Mr. Friedberg's Supposed Jurisdictional Discovery Requests Should Be Quashed Because They Are Nothing More Than Efforts to Harass the Debtors.

44.    Despite the fact that the transactions at issue in the Restructuring Motion ***have been approved by the Swiss Court overseeing the Moratorium Proceedings***, most of the Objection is devoted to speculative assertions that something about Swiss law must make the Restructuring Motion objectionable and deprive this Court of subject matter jurisdiction to hear the Restructuring Motion. (*See, e.g.*, Objection ¶¶ 6, 8-12, 81-85.) These baseless arguments are, however, nothing more than a pretextual justification for wide-ranging discovery designed to burden and interfere with the Debtors and their most senior officers administering these Chapter 11 Cases. (*See, e.g.*, Document Requests 1, 5, 10-14; Interrogatories 6-10, 13.)

45.    Mr. Friedberg makes three assertions about Swiss law in the Objection to use as a springboard for discovery. *First*, Mr. Friedberg makes bald assertions that this "Court

lacks jurisdiction under Article III of the U.S. Constitution to adjudicate the Restructuring Motion" because the motion was filed without the "requisite corporate authority" as a matter of Swiss law, which is applicable to the internal affairs of FTX Europe. (*See, e.g.*, Objection ¶¶ 6, 8-12.) *Second*, even though the Swiss Court has already approved the settlements at issue, Mr. Friedberg asserts that compliance with Swiss insolvency and restructuring law is somehow "uncertain" even if this Court grants the Restructuring Motion and that "[d]iscovery is required to verify that Swiss laws were followed." (Objection ¶¶ 81-83.) *Third*, Mr. Friedberg speculates that some future analysis of Swiss law by some unidentified lawyers he hires will show "Whether the court's approval of the Restructuring Motion creates a serious violation of the comity required between the U.S. and Swiss legal systems." (Objection ¶¶ 84-85.) Because Mr. Friedberg is not actually pursuing a legitimate objection, his Objection presents no competent evidence to back up the assertions regarding corporate authority (*see, e.g.*, Objection ¶¶ 6, 8-12, 21-22), and admits his other assertions about Swiss law are little more than hopeful statements that he might later discover a basis for some unidentified Swiss law objection. (Objection ¶¶ 81-85.)

46.     This should be the end of the matter when it comes to all of Mr. Friedberg's Discovery Requests on these subjects. (*See* Document Requests 1, 5, 10-14; Interrogatories 6-10, 13.) It is well established that a party "may not . . . undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins*, 623 F.3d at 157. Courts do not hesitate to reject requests for jurisdictional discovery premised on speculative arguments. *See, e.g., S. Annville Twp.* v. *Kovarik*, 2014 WL 199020, at *3-4 (M.D. Pa. Jan. 16, 2014) (denying a request for jurisdictional discovery as to subject matter jurisdiction). To demonstrate jurisdictional discovery is appropriate, Mr. Friedberg must come forward with "some competent evidence" to support his jurisdictional challenges in order to show they "warrant further

discovery." *See, e.g.*, *LivePerson, Inc.* v. *NextCard, LLC*, 2009 WL 742617, at *6 (D. Del. Mar. 20, 2009) (rejecting a request for discovery that would amount to "allowing [a party] to conduct a fishing expedition in order to construct a basis for jurisdiction"). Mr. Friedberg's Objection, however, offers no competent evidence or even meaningful arguments of his own.

47.    Despite being granted additional time to file his Objection, Mr. Friedberg merely attempts to "adopt[] the arguments" in the now-withdrawn Lötscher Motion to Dismiss and Initial FTX Sale Objection and, as evidence of Swiss law, "relies upon" the now-withdrawn Declaration of Patrik Odermatt filed in support of the Lötscher Motion to Dismiss but never credited or admitted into evidence by this Court. (*See* Objection ¶¶ 11, 21.) This attempt to incorporate arguments by reference is, at best, a dubious tactic that courts are loath to tolerate.[4] Here, it underscores how Mr. Friedberg is searching for any pretext to harass the Debtors through improper discovery because it leaves Mr. Friedberg's Objection unsupported by any legal arguments or potentially admissible evidence.

48.    Based on the rank speculation and improperly adopted withdrawn arguments of others, Mr. Friedberg seeks, among other things, "All Documents and Communications between the Swiss Administrator," appointed by the District Court of Höfe, Switzerland to oversee the Moratorium Proceedings, "and Debtors." (Document Request 1.) Mr. Friedberg also demands an explanation of "how Mr. Ray was appointed as the Chief Executive Officer of FTX Europe" and a description of "the proper process for appointing a Chief Executive

---

[4]    *See, e.g.*, *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 2019 WL 2521958, at *2 n.2 (D.N.J. June 18, 2019) (rejecting attempt to incorporate previous class certification motion by reference where the prior motion involved arguments irrelevant to the motion at issue); *Lin* v. *Att'y Gen. of United States*, 127 F. App'x 36, 39 (3d Cir. 2005) (rejecting the practice of "incorporating by reference" arguments made in the proceedings below); *Swanson* v. *U.S. Forest Serv.*, 87 F.3d 339, 343, 345 (9th Cir. 1996) (rejecting attempts to read Fed. R. Civ. P. 7 and 10 to allow for incorporation of "substantive material from briefs" into a motion for summary judgment, affirming district court order striking the incorporations).

Offer of FTX Europe under applicable law." (Interrogatories 9-10.) All of this is blatant and impermissible fishing.

49.     Mr. Friedberg's pursuit of such Discovery Requests is made all the more egregious because it is coupled with additional Document Requests and Interrogatories about FTX Europe's solvency and financial condition that cannot be justified based on anything in the Objection or the Restructuring Motion. For example, Mr. Friedberg demands the Debtors "[s]tate what happened to the USDC stablecoins held by FTX Europe on the FTX Trading Ltd. exchange, the cash held by FTX Europe as of the Petition Date, and why these stablecoins and cash are not reflected in FTX Europe's current financial statements." (Interrogatory 6.) But the Objection does not even mention these alleged "USDC stablecoins" and this supposed "cash" or their relevance. Similarly, Mr. Friedberg requests "[d]ocuments sufficient to show the purported insolvency of FTX Europe as of . . . the date of the filing of the petition for the Swiss Moratorium Proceedings" and "the Petition Date" for these bankruptcy proceedings. (Document Request 5.) Mr. Friedberg further demands that the Debtors "[s]tate whether FTX Europe was insolvent as of the Petition Date, and, if so, why and identify the persons who made this determination, including the dates and approximate number of hours that the process took." (Interrogatory 8.) The Objection, however, presents no meaningful arguments—let alone competent evidence—to challenge the solvency of FTX Europe in the context of the Restructuring Motion to support these and other similarly sweeping Discovery Requests.

50.     As a result, all of Mr. Friedberg's purportedly jurisdictional and Swiss law Discovery Requests are improper, and Mr. Friedberg should be barred from pursuing them. Simply, they have nothing to do with any legitimate objection to the Restructuring Motion. "Courts test relevance by looking at the law and facts of the case, not simply the expressed desires

of a party to see certain information." *In re Core Commc'ns, Inc.*, 2022 WL 18028102, at *5 (Bankr. D.D.C. Dec. 30, 2022); *see also Fidelity Nat. Info. Servs., Inc.* v. *Plano Encryption Tech., LLC*, 2016 WL 1650763, at *5-8 (D. Del. April 25, 2016) (rejecting a request for jurisdictional discovery based on bare allegations that one corporation was the alter ego of another).

III.     **The Remaining Interrogatories Should be Quashed Because They Are Duplicative and Disproportionate to the Needs of This Contested Matter.**

51.     Although most of Mr. Friedberg's Discovery Requests are clearly improper, Mr. Friedberg has propounded a few Discovery Requests that can be interpreted to touch upon relevant matters.  Accordingly, the Debtors are, subject to their objections, conducting a reasonable search and producing non-privileged documents in response to Document Requests 2-4 and 17, which seek some arguably relevant information.  The Debtors also have informed counsel for Mr. Friedberg that they are willing to make Mr. Coverick available for a deposition on the relevant topics addressed in his declaration.  But the Debtors seek an order quashing Mr. Friedberg's burdensome and duplicative Interrogatories on those subjects, Interrogatories 1-5 and 14.

52.     Mr. Friedberg is not entitled to use his Objection as a vehicle to drain assets from the Debtors' estates by forcing the Debtors respond to disproportionate and unnecessarily burdensome discovery requests.  Each of Mr. Friedberg's potentially relevant Interrogatories seeks information that will, to the extent it is reasonably available and within the possession, custody and control of the Debtors, be provided through appropriately proportional responses to equivalent Document Requests.  (*Compare* Interrogatories 1-5 and 14, *with* Document Requests 2-4 and 17.) Thus, the Debtors motion to quash Mr. Friedberg's Interrogatories should be granted.  *See Rivera* v. *Unum Life Ins. Co. of Am.*, 2012 WL 2709138, at *4 (D. Colo. July 9, 2012) (rejecting interrogatories seeking information duplicative of the contents of produced documents).

**IV.    The Deposition Notices are Irrelevant, Disproportionate, and Unduly Burdensome and Therefore Should be Quashed.**

53.    Mr. Friedberg has also served seven improper deposition notices seeking to depose:

- John Ray, the Debtors' Chief Executive Officer;

- Mary Cilia, the Debtors' Chief Financial Officer;[5]

- Kevin Cofsky, a partner with Perella Weinberg Partners, the Debtors' investment bankers;

- Artulo Giovanoli, a member of FTX Europe's Board of Directors who resides in Switzerland;

- Juerg Bavaud, an employee of FTX Europe who resides in Switzerland;

- Roland Griesse, a former employee of Binance; and

- the Debtors pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

Each of these Deposition Notices is improper because it is aimed at obtaining irrelevant information in support of the Objection's collateral attacks on the Sale Order and the Objection's improperly asserted jurisdictional arguments.  (*See* Sections I-II, *supra*.)  To the extent any of the Deposition Notices conceivably could seek relevant information, they are unnecessarily burdensome and duplicative, and disproportionate to the needs of this contested matter.  The Debtors already have agreed to make Mr. Coverick available for a deposition because he is the individual who will be providing the Court testimony in support of the Restructuring Motion, and is best positioned to explain the factual basis for the Restructuring Motion as set forth in his declaration.  [D.I. 11626-6.]  Mr. Friedberg should not be permitted to take any further depositions.

---

[5]    The Deposition Notice Mr. Friedberg served incorrectly lists Ms. Cilia's first name as "Maria." (Glueckstein Decl. Ex. C.)

54.    As an initial matter, Mr. Friedberg's request to depose Mr. Cofsky is improper because Mr. Cofsky had no alleged role in the Restructuring Motion and appears to only be of interest to Mr. Friedberg because Mr. Cofsky submitted a declaration regarding bid procedures related to a potential sale of FTX Europe.  [D.I. 413.]  But Mr. Friedberg has no right to pursue discovery in furtherance of any collateral attack on the Sale Order.  (*See* Section I, *supra*.)  To the extent the Mr. Friedberg is seeking to depose the Debtors or anyone else to support his impermissible collateral attacks, those deposition notices are improper for the same reason.

55.    Mr. Friedberg's efforts to depose the Debtors' senior executives, Mr. Ray, Ms. Cilia, and Mr. Giovanoli, are improper for several additional reasons.  As a threshold matter, "courts have held that depositions of high-ranking corporate and governmental officers will be allowed only upon a showing that those officers have particularly relevant information to offer that is not equally available from other, less burdensome sources."  *British Telecom. PLC* v. *IAC/Interactivecorp.*, 2020 WL 1043974, at *8 (D. Del. Mar. 4, 2020) (collecting cases regarding the "so-called apex doctrine" and granting a motion for a protective order barring the deposition of a company's former chief executive officer).  Mr. Ray, Ms. Cilia and Mr. Giovanoli do not possess personal knowledge of any relevant information about the Restructuring Motion that Mr. Friedberg could not obtain from other, less burdensome sources, including a deposition of Mr. Coverick.  Indeed, the Objection alleges nothing about how they have any relevant information at all.  Tellingly, the only time the Objection mentions Mr. Ray is in reference to one of Mr. Friedberg's collateral attacks on the Sale Order.  (Objection ¶ 73.)  As a result, it is readily apparent that Mr. Friedberg is just seeking to depose them to burden and harass the Debtors, which is exactly what the apex doctrine is designed to prevent.  *See, e.g.*, *United States ex rel. Galmines* v. *Novartis Pharms. Corp.*, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015) (granting a motion

to quash a deposition subpoena directed to a former CEO and recognizing that "depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage.")

56.     Mr. Friedberg's demands to depose Mr. Bavaud and a representative of the Debtors fare no better.  These demands are burdensome and untethered to the needs of this contested matter.  Like the others, Mr. Bavaud is mentioned nowhere in the Objection and Mr. Friedberg cannot articulate how his testimony is necessary regarding any subjects relevant to approval of the settlements embodied in the Restructuring Motion.  Moreover, because Mr. Bavaud resides in Switzerland, he cannot be properly deposed by merely serving a deposition notice, which adds to the burden and inconvenience associated with this deposition.  As the U.S. Embassy warns, attorneys who attempt to take a deposition in Switzerland without the requisite participation of Swiss authorities are subject to criminal liability under Swiss Criminal Code Article 271.[6]

57.     As to the requested Rule 30(b)(6) deposition of the Debtors, Mr. Friedberg noticed the deposition by simply attaching his now superseded *First Set of Requests for Production of Documents and Things to FTX Trading Ltd. and Its Affiliated Debtors and Debtors in Possession*, and demanding testimony about all documents and information produced in response to those 26 wide-ranging requests.  (Glueckstein Decl. Ex. H.)  Accordingly, most of these "topics" are improper for the same reasons as Mr. Friedberg's other Discovery Requests directed to irrelevant matters.  (*See* Sections I-II, *supra.*)  Moreover, all of the "topics" are facially deficient because they lack the "reasonable particularly" required by Rule 30(b)(6).  They are also inherently duplicative because a potential witness could only be adequately prepared using the very same

---

[6]     *Obtaining Evidence*, U.S. EMBASSY IN SWITZERLAND AND LIECHTENSTEIN, https://ch.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/living-in-ch/judicial-information/obtaining-evidence (last visited May 12, 2024).

documents Debtors produced.  Thus, Mr. Friedberg can gain nothing from this proposed 30(b)(6) deposition except increasing the burden on Debtors—which is certainly his intent.  This is an improper use of Rule 30(b)(6) so Mr. Friedberg's deposition notice should be quashed.  *See Sandoval* v. *Midland Funding, LLC*, 2021 WL 486904, at *3, 6 (D.N.J. Feb. 10, 2021) (denying a request for supplemental Rule 30(b)(6) deposition duplicative of previous discovery that was, in part, requested to "confirm" the accuracy of a document through testimony).

58.    Lastly, Mr. Friedberg's deposition notice as to Mr. Griesse is facially deficient because Mr. Griesse is a former employee of Binance and not an employee of the Debtors. *See Ethypharm S.A. France* v. *Abbott Lab'ys*, 271 F.R.D. 82, 88-92 (D. Del. 2010) (declining to order noticed depositions of fact witnesses not employed by the defendant).  "There is simply no authority for the proposition that a corporate party must produce for deposition fact witnesses who are not employed by, and do not speak for, that party."  *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria,* 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006).

## **Certification Pursuant to Local Rule 7026-1**

59.    Counsel for Debtors certifies, pursuant to Local Rule 7026-1(d), that Landis Rath & Cobb LLP and Sullivan & Cromwell LLP have conferred with counsel for Mr. Friedberg in an attempt to resolve these discovery issues but has been unable to reach agreement.

## **Notice**

60.    Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; (d) counsel for CM-Equity AG; (e) counsel for Binance (Switzerland) AG; (f) counsel to the Purchaser Parties as defined in the Restructuring Motion; (g) counsel to Mr. Friedberg; and (h) any other party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

<u>**Conclusion**</u>

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated:  May 15, 2024<br>        Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail:  landis@lrclaw.com<br>        brown@lrclaw.com<br>        pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail:  dietdericha@sullcrom.com<br>        bromleyj@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |