**Exhibit 2**

**Settlement Stipulation with Lumen Bioscience, Inc.**

Case 22-11068-JTD    Doc 15503-2    Filed 05/22/24    Page 1 of 12

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LTD. and FTX TRADING LTD., | |
| Plaintiffs, | |
| - against - | Adv. Pro. No. 23-50444 (JTD) |
| PLATFORM LIFE SCIENCES INC., LUMEN BIOSCIENCE, INC., GREENLIGHT BIOSCIENCES HOLDINGS, PBC, RIBOSCIENCE LLC, GENETIC NETWORKS LLC, 4J THERAPEUTICS INC., LATONA BIOSCIENCES GROUP, FTX FOUNDATION, SAMUEL BANKMAN-FRIED, ROSS RHEINGANS-YOO, and NICHOLAS BECKSTEAD, | |
| Defendants. | |

## STIPULATION OF SETTLEMENT

This stipulation of settlement ("Stipulation") is being entered into between Alameda Research Ltd. ("Alameda") and FTX Trading Ltd. ("FTX" and, together, with Alameda, "Plaintiffs"), and Lumen Bioscience, Inc ("Lumen"). Plaintiffs and Lumen are each a "Party" and are referred to collectively as the "Parties."

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**WHEREAS**, on August 9, 2022, Alameda transferred $3,000,000 to Lumen, in exchange for which Lumen and Latona Biosciences Group ("Latona") entered into a Charitable Research Funding Agreement, dated August 5, 2022 ("Charitable Research Funding Agreement"), pursuant to which Lumen provided Latona rights to future royalties in connection with Lumen's development of Covid-19 prevention and treatment products;

**WHEREAS**, Lumen represents that it has entered no agreements with Latona providing Latona with rights and interests in Lumen other than the Charitable Research Funding Agreement;

**WHEREAS**, on November 11, 2022, Plaintiffs each filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered in the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.);

**WHEREAS**, on July 19, 2023, Plaintiffs commenced Adversary Proceeding No. 23-50444 (the "Adversary Proceeding") in the Bankruptcy Court against Lumen, other lifesciences defendants,[2] Latona, Ross Rheingans-Yoo, Samuel Bankman-Fried, and Nick Beckstead by filing a complaint [Adv. D.I. 1], which Plaintiffs subsequently amended on December 22, 2023 [Adv. D.I. 73]. Plaintiffs assert in the Adversary Proceeding, among other things, fraudulent transfer claims against the Small Lifesciences Defendants (the "Adversary Claim");

**WHEREAS**, on November 1, 2023, Plaintiffs entered into a stipulation with the Small Lifesciences Defendants ("the "Stay Stip.") [Adv. D.I. 64], pursuant to which the Small

---

[2] The lifesciences defendants that Plaintiffs sued were Lumen, Platform Life Sciences, Inc. ("PLS"), GreenLight Biosciences Holdings, PBC, Riboscience LLC, Genetic Networks LLC, and 4J Therapeutics Inc. This Stipulation refers to all of the lifesciences defendants, except PLS, as the "Small Lifesciences Defendants."

Lifesciences Defendants agreed that, in connection with any resolution between Plaintiffs and Rheingans-Yoo and Latona, the Small Lifesciences Defendants would "work to facilitate[ ] the transfer to one or both of the Plaintiffs . . . all rights and interests that Latona currently has in the Small Lifesciences Defendants" (Stay Stip. ¶ 2);

**WHEREAS**, Plaintiffs entered into a stipulation of settlement with Latona and Rheingans-Yoo, dated April 11, 2024, pursuant to which Latona agreed to assign and transfer to Alameda all of Latona's rights and interests in the Small Lifesciences Defendants;

**WHEREAS**, the Parties have been engaged in good-faith, arm's-length negotiations about resolving the Adversary Claim;

**WHEREAS**, in order to avoid the expense, burden and inconvenience of litigation, the Parties desire and intend to effect a final settlement and resolution of the Adversary Claim; and

**WHEREAS**, Plaintiffs, in the exercise of their business judgment, have concluded that final settlement and resolution of the Adversary Claim in accordance with the terms of this Stipulation is in the best interest of Plaintiffs, their creditors and other stakeholders.

**NOW, THEREFORE, IT IS HEREBY STIPULATED** by and among the undersigned counsel for the Parties as follows:

1. **Settlement of Adversary Claim.** Within ten (10) business days of the Effective Date, Lumen agrees (a) to execute and deliver to Plaintiff Alameda a Consent Agreement between Lumen, Latona, and Alameda, substantially in the form attached hereto as Exhibit 1, and any other such documents, instruments, conveyances and assurances necessary to assign Latona's interests in Lumen to Alameda and (b) to take such further actions as Alameda may reasonably request to transfer and assign Latona's rights and interests in Lumen to Alameda.

2. **Bankruptcy Court Approval**. This Stipulation is subject in all respects to the approval of the Bankruptcy Court. Plaintiffs shall file a motion, in a form reasonably acceptable to Lumen, seeking approval of the Stipulation (the "Approval Motion") within fourteen (14) days after the date on which the last of the settlement stipulations between Alameda and Latona and Alameda and each of the Small Lifesciences Defendants is fully executed. In the event that the Bankruptcy Court declines to approve this Stipulation, or the order approving the Stipulation (the "Approval Order") does not become final and non-appealable, this Stipulation shall become null and void and of no further force and effect.

3. **Effective Date**. The terms of this Stipulation shall become effective upon the Approval Order becoming final and non-appealable (the "Effective Date").

4. **Dismissal with Prejudice**. Provided that Lumen has reasonably complied with its obligations under paragraphs 1 and 10 of this Stipulation, then within five (5) business days after the Assumption and Assignment Agreement is fully executed, Plaintiffs shall file with the Bankruptcy Court a notice of dismissal with prejudice of the Adversary Claim against Lumen (the "Notice of Dismissal").

5. **Mutual Releases**. Upon the filing of the Notice of Dismissal pursuant to paragraph 4, each Party unconditionally and irrevocably releases, acquits and forever discharges the other Party and its officers, members, directors, employees, agents, attorneys and stockholders from any and all claims, counterclaims, demands, liabilities, suits, debts, costs, expenses, and causes of action, at law or in equity, including, but not limited to, claims for interest, compensatory, exemplary, statutory, punitive or restitutionary damages, and expert or attorneys' fees and costs, related to the Adversary Claim; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Stipulation.

6.  **Express Preservation of Claims by the Plaintiffs**.  For the avoidance of doubt, notwithstanding the foregoing, Plaintiffs' release of Claims in paragraph 5 above shall not include any claims asserted by Plaintiffs against any Defendants in the Adversary Proceeding other than Lumen.

7.  **Reservation of Rights**.  Except as otherwise set forth in this Stipulation, each Party reserves any and all rights, claims, and defenses against any other Party.

8.  **No Admission of Wrongdoing**.  This Stipulation does not constitute an admission by any of the Parties of any wrongful action or violation of any federal, state, or commonwealth statutory or common law rights, or any other possible or claimed violation of law or rights.  The Stipulation shall not be construed as an admission of liability.

9.  **Good Faith and Understanding**.  The Parties expressly represent and warrant that this Stipulation is entered into in good faith and acknowledge that execution of this Stipulation is not the product or result of any duress, economic or otherwise.  The Parties represent and warrant that they have read and understand the terms of this Stipulation.  The Parties further represent and warrant that each individual signing the Stipulation on behalf of such Party is fully authorized to sign on behalf of said Party.

10. **Cooperation**.  Each Party shall cooperate with each other Party and take such actions as are reasonably necessary to obtain approval of this Stipulation by the Bankruptcy Court and entry of the Approval Order, and to effectuate its terms.

11. **Authorization**.  The Parties, by and through their undersigned counsel, each represent and warrant that the undersigned is fully authorized and empowered to execute and deliver this Stipulation on behalf of, and to bind, each of the Parties, as applicable, to the terms and conditions of this Stipulation.

-6-

12.     **Counterparts**.  The Parties may execute this Stipulation in multiple counterparts, each of which constitutes an original as against the Party that signed it, and all of which together constitute one agreement.

13.     **Effectiveness**.  This Stipulation shall become effective upon the execution of the same by all Parties and delivery of counterparts of such signatures to the other Party.  The Parties irrevocably consent to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Stipulation and expressly waive any right to commence any such action in any other forum.

**AGREED BY**:

April 11, 2024

*[signature: Stephanie G. Wheeler]*

**SULLIVAN & CROMWELL LLP**

Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:  wheelers@sullcrom.com
         gluecksteinb@sullcrom.com

*Counsel for Plaintiffs*

*[signature]*

**FOX ROTHSCHILD LLP**

Maria A. Milano
Stephanie Slater Ward
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Telephone: (206) 389-1752
E-mail:  mamilano@foxrothschild.com
         sward@foxrothschild.com

*Counsel for Lumen*

**Exhibit 1**

## **CONSENT AGREEMENT**

This CONSENT AGREEMENT (this "Consent Agreement") is made effective as of [●], 2024, by and among Latona Bioscience Group, a nonprofit corporation organized under the laws of the Bahamas ("Assignor"), Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"), and Lumen Bioscience, Inc., a Delaware corporation (the "Subject Company"). All of the signatories to this Consent Agreement are collectively referred to as the "Parties" and individually as a "Party."

WHEREAS, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Assignee and the Subject Company desire to effect a final settlement and resolution of the Adversary Claim;

WHEREAS, Assignor wishes to transfer Assignor's rights and benefits, but not obligations, under the Charitable Research Funding Agreement, by and between the Subject Company and Assignor (the "Charitable Research Funding Agreement", and Assignor's rights and benefits, but not obligations, thereunder, the "Contractual Rights") to Assignee; and

WHEREAS, pursuant to that certain Stipulation of Settlement, by and between Assignee and the Subject Company, as approved by the Bankruptcy Court on [●], 2024 (the "Settlement"), the Subject Company has agreed to consent to and approve the transfer of the Contractual Rights to Assignee.

NOW, THEREFORE, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. All capitalized terms used in this Consent Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2. Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, the Subject Company hereby consents to and approves the transfer of the Contractual Rights to Assignee.

3. Each of Assignor and the Subject Company represents and warrants to Assignee that it has made available to Assignor accurate and complete copies of the Charitable Research Funding Agreement as of the date hereof. Except for the Charitable Research Funding Agreement, each of Assignor and the Subject Company represents and warrants to Assignee that it has not entered into any other documents, agreements or side letters with any other entity or person with respect to any rights or obligations of Assignor related to the Subject Company.

4. Each Party shall execute and deliver, at the reasonable request of any other Party, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give

effect to the transactions contemplated by this Consent Agreement.

5.     No Party may assign any of their respective rights or delegate any of their respective obligations under this Consent Agreement, by operation of law or otherwise, without the prior written consent of the other Parties. Any purported assignment not permitted under this Section 5 shall be null and void.

6.     This Consent Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Consent Agreement and signed, in the case of an amendment, supplement or change, by the Parties against whom enforcement of such waiver is sought. Subject to Section 5, this Consent Agreement shall extend to and shall bind and inure to the benefit not only of the Parties, but also their respective heirs, legal representatives, successors and assigns.

7.     In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

8.     This Consent Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

9.     The provisions of this Consent Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision, covenant or restriction of this Consent Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any Person or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Consent Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction and the remainder of the terms, provisions, covenants and restrictions of this Consent Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.    This Consent Agreement may be executed in one or more counterparts (including by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Consent Agreement.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Consent Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____
    Name:
    Title:

**ALAMEDA RESEARCH LTD.**

By: _____
    Name:
    Title:

**LUMEN BIOSCIENCE, INC.**

By: _____
    Name:
    Title:

[*Signature Page to Consent Agreement*]