**<u>Exhibit 4</u>**

**Settlement Stipulation with Riboscience LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| ALAMEDA RESEARCH LTD. and FTX TRADING LTD., | |
| Plaintiffs, | |
| - against - | Adv. Pro. No. 23-50444 (JTD) |
| PLATFORM LIFE SCIENCES INC., LUMEN BIOSCIENCE, INC., GREENLIGHT BIOSCIENCES HOLDINGS, PBC, RIBOSCIENCE LLC, GENETIC NETWORKS LLC, 4J THERAPEUTICS INC., LATONA BIOSCIENCES GROUP, FTX FOUNDATION, SAMUEL BANKMAN-FRIED, ROSS RHEINGANS-YOO, and NICHOLAS BECKSTEAD, | |
| Defendants. | |

**STIPULATION OF SETTLEMENT**

This stipulation of settlement ("Stipulation") is being entered into between Alameda Research Ltd. ("Alameda") and FTX Trading Ltd. ("FTX," and together with Alameda, "Plaintiffs"), and Riboscience, LLC ("Riboscience"). Plaintiffs and Riboscience are each a "Party" and are referred to collectively as the "Parties."

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

-1-

**WHEREAS**, on August 15, 2022, Alameda transferred $4,000,000 to Riboscience, in exchange for Latona Biosciences Group ("Latona") acquiring 224,467 preferred A-2 units in Riboscience pursuant to the Series A Unit Purchase Agreement, dated as of June 11, 2021;

**WHEREAS**, Riboscience represents that Latona and Riboscience have entered no agreements providing Latona with rights and interests in Riboscience other than: (i) the Amended and Restated Limited Liability Company Agreement of Riboscience LLC, dated as of June 11, 2021; (ii) the Series A Preferred Units Purchase Agreement, dated as of June 11, 2021; (iii) the Investors' Rights Agreement, dated as of June 11, 2021; (iv) the Voting Agreement, dated as of June 11, 2021; and (v) the Right of First Refusal and Co-Sale Agreement, dated as of June 11, 2021;

**WHEREAS**, on November 11, 2022, Plaintiffs each filed petitions for voluntary relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered in the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.);

**WHEREAS**, on July 19, 2023, Plaintiffs commenced Adversary Proceeding No. 23-50444 (the "Adversary Proceeding") in the Bankruptcy Court against Riboscience, other lifesciences defendants,[2] Latona, Ross Rheingans-Yoo, Samuel Bankman-Fried, and Nick Beckstead by filing a complaint [Adv. D.I. 1], which Plaintiffs subsequently amended on December 22, 2023 [Adv.

---

[2]       The lifesciences defendants that Plaintiffs sued were Riboscience, Platform Life Sciences, Inc. ("PLS"), Lumen Bioscience, Inc., GreenLight Biosciences Holdings, PBC, Genetic Networks LLC, and 4J Therapeutics Inc.  This Stipulation refers to all of the lifesciences defendants, except PLS, as the "Small Lifesciences Defendants."

D.I. 73]. Plaintiffs assert in the Adversary Proceeding, among other things, fraudulent transfer claims against the Small Lifesciences Defendants (the "Adversary Claim");

WHEREAS, on November 1, 2023, Plaintiffs entered into a stipulation with the Small Lifesciences Defendants ("the "Stay Stip.") [Adv. D.I. 64], pursuant to which the Small Lifesciences Defendants agreed that, in connection with any resolution between Plaintiffs and Rheingans-Yoo and Latona, the Small Lifesciences Defendants would "work to facilitate[ ] the transfer to one or both of the Plaintiffs . . . all rights and interests that Latona currently has in the Small Lifesciences Defendants" (Stay Stip. ¶ 2);

WHEREAS, Plaintiffs entered into a stipulation of settlement with Latona and Rheingans-Yoo, dated April 11, 2024, pursuant to which Latona agreed to assign and transfer to Alameda all of Latona's rights and interests in the Small Lifesciences Defendants;

WHEREAS, the Parties have been engaged in good-faith, arm's-length negotiations about resolving the Adversary Claim;

WHEREAS, in order to avoid the expense, burden and inconvenience of litigation, the Parties desire and intend to effect a final settlement and resolution of the Adversary Claim; and

WHEREAS, Plaintiffs, in the exercise of their business judgment, have concluded that final settlement and resolution of the Adversary Claim in accordance with the terms of this Stipulation is in the best interest of Plaintiffs, their creditors and other stakeholders.

NOW, THEREFORE, IT IS HEREBY STIPULATED by and among the undersigned counsel for the Parties as follows:

1.      **Settlement of Adversary Claim**. Within ten (10) business days of the Effective Date (as defined below), Rioscience agrees (a) to execute and deliver to Plaintiff Alameda a Consent Agreement between Rioscience, Latona, and Alameda, in the form attached hereto as

Exhibit 1, and any other such documents, instruments, conveyances and assurances necessary to assign Latona's interests in Rioscience to Alameda and (b) to take such further actions as Alameda may reasonably request to transfer and assign Latona's rights and interests in Rioscience to Alameda.

2.      **Bankruptcy Court Approval**.  This Stipulation is subject in all respects to the approval of the Bankruptcy Court.  Plaintiffs shall file a motion, in a form reasonably acceptable to Rioscience, seeking approval of the Stipulation (the "Approval Motion") within fourteen (14) days after the date on which the last of the settlement stipulations between Alameda and Latona and Alameda and each of the Small Lifesciences Defendants is fully executed.  In the event that the Bankruptcy Court declines to approve this Stipulation, or the order approving the Stipulation (the "Approval Order") does not become final and non-appealable, this Stipulation shall become null and void and of no further force and effect.

3.      **Effective Date**.  The terms of this Stipulation shall become effective upon the Approval Order becoming final and non-appealable (the "Effective Date").

4.      **Dismissal with Prejudice**.  Provided that Rioscience has reasonably complied with its obligations under paragraphs 1 and 10 of this Stipulation, then within five (5) business days after Alameda delivers to Rioscience an assumption and assignment agreement executed by Latona and Alameda in the form attached hereto as Exhibit 2 (the transfer of 224,467 Series A-2 Preferred Units in Rioscience contemplated by such assumption and assignment agreement, the "Assignment"), Plaintiffs shall file with the Bankruptcy Court a notice of dismissal with prejudice of the Adversary Claim against Rioscience (the "Notice of Dismissal").

5.      **Mutual Releases**.  Upon the filing of the Notice of Dismissal pursuant to paragraph 4, each Party unconditionally and irrevocably releases, acquits and forever discharges

Case 22-11068-JTD   Doc 15503-4   Filed 05/22/24   Page 6 of 19

the other Party and its officers, members, directors, employees, agents, attorneys and stockholders from any and all claims, counterclaims, demands, liabilities, suits, debts, costs, expenses, and causes of action, at law or in equity, including, but not limited to, claims for interest, compensatory, exemplary, statutory, punitive or restitutionary damages, and expert or attorneys' fees and costs, arising from or related to the Adversary Claim (the "Claims"); provided, however, that the foregoing shall not release any obligations under or claim for breach of this Stipulation.

6. **Express Preservation of Claims by the Plaintiffs**. For the avoidance of doubt, notwithstanding the foregoing, Plaintiffs' release of Claims in paragraph 5 above shall not include any claims asserted by Plaintiffs against any Defendants in the Adversary Proceeding other than Riboscience.

7. **Reservation of Rights**. Except as otherwise set forth in this Stipulation, each Party reserves any and all rights, claims, and defenses against any other Party.

8. **No Admission of Wrongdoing**. This Stipulation does not constitute an admission by any of the Parties of any wrongful action or violation of any federal, state, or commonwealth statutory or common law rights, or any other possible or claimed violation of law or rights. The Stipulation shall not be construed as an admission of liability.

9. **Good Faith and Understanding**. The Parties expressly represent and warrant that this Stipulation is entered into in good faith and acknowledge that execution of this Stipulation is not the product or result of any duress, economic or otherwise. The Parties represent and warrant that they have read and understand the terms of this Stipulation. The Parties further represent and warrant that each individual signing the Stipulation on behalf of such Party is fully authorized to sign on behalf of said Party.

10.     **Cooperation**.  Each Party shall cooperate with each other Party and take such actions as are reasonably necessary to obtain approval of this Stipulation by the Bankruptcy Court and entry of the Approval Order, and to effectuate its terms.

11.     **Authorization**.  The Parties, by and through their undersigned counsel, each represent and warrant that the undersigned is fully authorized and empowered to execute and deliver this Stipulation on behalf of, and to bind, each of the Parties, as applicable, to the terms and conditions of this Stipulation.

12.     **Counterparts**.  The Parties may execute this Stipulation in multiple counterparts, each of which constitutes an original as against the Party that signed it, and all of which together constitute one agreement.

13.     **Effectiveness**.  This Stipulation shall become effective upon the execution of the same by all Parties and delivery of counterparts of such signatures to the other Party.  The Parties irrevocably consent to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Stipulation and expressly waive any right to commence any such action in any other forum.

**AGREED BY**:

April 15, 2024

_[signature: Stephanie G. Wheeler]_

**SULLIVAN & CROMWELL LLP**

Stephanie G. Wheeler (admitted _pro hac vice_)
Brian D. Glueckstein (admitted _pro hac vice_)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:  wheelers@sullcrom.com
             gluecksteinb@sullcrom.com

_Counsel for Plaintiffs_

_[signature]_

**VORYS, SATER, SEYMOUR AND PEASE LLP**

Tiffany Strelow Cobb
52 East Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-6400
E-mail:  tscobb@vorys.com

-and-

**ASHBY & GEDDES, P.A.**
Michael D. DeBaecke (No. 3186)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Telephone: (302) 654-1888
E-mail:  mdebaecke@ashbygeddes.com

_Counsel for Rioscience_

-7-

**Exhibit 1**

## CONSENT AGREEMENT

This CONSENT AGREEMENT (together with all schedules hereto, this "Consent Agreement") is made effective as of [●], 2024, by and among Latona Bioscience Group, a nonprofit corporation organized under the laws of the Bahamas ("Assignor"), Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"), and Riboscience LLC, a Delaware limited liability company (the "Subject Company"). All of the signatories to this Consent Agreement are collectively referred to as the "Parties" and individually as a "Party."

**WHEREAS**, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, Assignee and the Subject Company desire to effect a final settlement and resolution of the Adversary Claim;

**WHEREAS**, Assignor wishes to transfer and assign all of Assignor's right, title, benefit and interests in its 224,467 Series A-2 Preferred Units (the "Preferred Units") in the Subject Company to Assignee; and

**WHEREAS**, pursuant to that certain Stipulation of Settlement, by and among Assignee, FTX Trading Ltd. and the Subject Company, as approved by the Bankruptcy Court on [●], 2024 (the "Settlement"), the Subject Company has agreed to consent to and approve the Assignment.

**NOW, THEREFORE**, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      All capitalized terms used in this Consent Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2.      Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, the Subject Company hereby consents to and approves the Assignment. The Subject Company hereby waives (a) any restrictions on transfer applicable to the Assignment that the Subject Company may have the right to enforce, (b) any right to receive an opinion of counsel in connection with the Assignment and (c) any rights of first refusal, and any notice rights in connection therewith, it may have in respect of the Assignment.

3.      Each of Assignor and the Subject Company represents and warrants to Assignee that it has made available to Assignor accurate and complete copies of the agreements set forth on Schedule A hereto (the "Operative Documents") as of the date hereof. Except for the Operative Documents, each of Assignor and the Subject Company represents and warrants to Assignee that it has not entered into any other documents, agreements or side letters with any other entity or person with respect to any rights or obligations of Assignor related to the Subject Company.

4.      Each Party shall execute and deliver, at the reasonable request of any other Party, such additional documents, instruments, conveyances and assurances and take such further actions as such other party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Consent Agreement.

5.      No Party may assign any of their respective rights or delegate any of their respective obligations under this Consent Agreement, by operation of law or otherwise, without the prior written consent of the other Parties.  Any purported assignment not permitted under this Section 5 shall be null and void.

6.      This Consent Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Consent Agreement and signed, in the case of an amendment, supplement or change, by the Parties against whom enforcement of such waiver is sought. Subject to Section 5, this Consent Agreement shall extend to and shall bind and inure to the benefit not only of the Parties, but also their respective heirs, legal representatives, successors and assigns.

7.      In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

8.      This Consent Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

9.      The provisions of this Consent Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision, covenant or restriction of this Consent Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any Person or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Consent Agreement and the application of such provision, covenant or restriction to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction and the remainder of the terms, provisions, covenants and restrictions of this Consent Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.      This Consent Agreement may be executed in one or more counterparts (including by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Consent Agreement.

*[Signature Pages Follow]*

2

IN WITNESS WHEREOF, the parties hereto have executed or caused this Consent Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____
      Name:
      Title:

**ALAMEDA RESEARCH LTD.**

By: _____
      Name:
      Title:

**RIBOSCIENCE LLC**

By: _____
      Name:
      Title:

## Schedule A

1. Series A Preferred Units Purchase Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.
2. Amended and Restated Limited Liability Company Agreement of the Subject Company, dated as of June 11, 2021.
3. Investors' Rights Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.
4. Voting Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.
5. Right of First Refusal and Co-Sale Agreement, dated as of June 11, 2021, by and among the Subject Company, Assignor and the other parties thereto.

**Exhibit 2**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (this "Agreement") is made effective as of [●], 2024, by and between Latona Bioscience Group, a nonprofit corporation organized under the laws of The Bahamas ("Assignor"), and Alameda Research Ltd., a company limited by shares organized under the laws of the British Virgin Islands ("Assignee"). Assignor and Assignee are referred to collectively as the "Parties" and individually as a "Party".

**WHEREAS**, Assignee is a debtor in *In re FTX Trading Ltd., et al.* (Case No. 22-11068 (JTD)), pending in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, the Parties desire to effect a final settlement and resolution of the Adversary Claims; and

**WHEREAS**, pursuant to that Stipulation of Settlement, by and among Assignor, FTX Trading Ltd. and Assignee, which the Bankruptcy Court approved on [●], 2024 (the "Settlement"), Assignor has agreed to assign to Assignee, and Assignee has agreed to assume from Assignor, the Interests (as defined below) and all of Assignor's right, title and interest in and to the Operative Documents, and Assignor has agreed to assign to Assignee the Contractual Rights (as defined below).

**NOW, THEREFORE**, in consideration of the foregoing, and of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.      All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Settlement.

2.      For purposes of this Agreement:

(a)      "Interests" means (i) the 5% Convertible Promissory Note of 4J Therapeutics, Inc., due 2028 (the "2028 Note") and (ii) 224,467 Series A-2 Preferred Units in Ribioscience LLC (the "Preferred Units");

(b)      "Designated Contracts" means (i) the Note Purchase Agreement, dated as of October 7, 2022, by and among 4J Therapeutics Inc., Assignor and the other parties thereto, (ii) the Charitable Research Funding Agreement, by and between Lumen Bioscience, Inc. and Assignor and (iii) the Series A Preferred Units Purchase Agreement, dated as of June 11, 2021, by and among Ribioscience LLC, Assignor and the other parties thereto;

(c)      "Operative Documents" means (i) the Amended and Restated Limited Liability Company Agreement of Ribioscience LLC, dated as of June 11, 2021, (ii) the Investors' Rights Agreement, dated as of June 11, 2021, by and among Ribioscience LLC, Assignor and the other parties thereto,

(iii) the Voting Agreement, by and among Riboscience LLC, Assignor and the other parties thereto and (iv) the Right of First Refusal and Co-Sale Agreement, by and among Riboscience LLC, Assignor and the other parties thereto; and

(d)     "Contractual Rights" means all of Assignor's rights and benefits, but not obligations, under the Designated Contracts.

3.     Assignor hereby represents and warrants to Assignee as of the date hereof that:

(a)     Assignor is an entity duly organized and validly existing in good standing under the laws of the Bahamas. Assignor has the requisite power and authority to enter into, execute and deliver this Agreement and to perform all of its obligations to be performed by it hereunder, and this Agreement constitutes a valid and binding obligation of Assignor, enforceable against it in accordance with its terms.

(b)     Assignor owns all right, title and interest in and to the Interests and the rights set forth for the benefit of Assignor under the Designated Contracts, free and clear of all liens (statutory or otherwise), charges, pledges, mortgages, leases, easements, hypothecations, usufructs, deeds of trust, security interests, options, rights of use, first offers or first refusals, servitudes, restrictive covenants or conditions, encroachments, claims, interests, restrictions or any other encumbrances of any kind (collectively, "Liens") other than any transfer restrictions arising solely under applicable federal and state securities laws or as set forth in the Operative Documents or the 2028 Note.

(c)     The execution and delivery by Assignor of this Agreement and the performance or consummation of the transactions contemplated hereby by Assignor do not conflict with, result in a breach or violation of, or result in the creation of a Lien on any of the Interests owned by Assignor or the Contractual Rights under the terms or provisions of (i) its organizational documents, (ii) any contract that is material to the value of the Interests or the Contractual Rights or (iii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over it or its property, except, in each case, for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, materially and adversely affect the Interests or the Contractual Rights.

(d)     Except pursuant to this Agreement, Assignor has not (i) sold, assigned, transferred, delivered or otherwise disposed of all or any portion of the Interests held by Assignor or the Contractual Rights, (ii) converted, exchanged or redeemed all or any portion of the Interests or the Contractual Rights or (iii) agreed to do any of the foregoing.

(e)     No person or entity acting on behalf of Assignor or under the authority of

Assignor shall be entitled to any broker's, finder's, or similar fee or commission in connection with the transactions contemplated hereby.

4.      Assignee hereby represents and warrants to Assignor as of the date hereof that:

(a)      Assignee is an entity duly organized and validly existing in good standing under the laws of the British Virgin Islands. Assignee has the requisite power and authority to enter into, execute and deliver this Agreement and to perform all of its obligations to be performed by it hereunder, and this Agreement constitutes a valid and binding obligation of Assignee, enforceable against it in accordance with its terms.

(b)      The execution and delivery by Assignee of this Agreement and the performance or consummation of the transactions contemplated hereby by Assignee do not conflict with or result in a breach or violation of (i) its organizational documents, (ii) any contract that is material to the value of the Interests or the Contractual Rights or (iii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over it or its property, except, in each case, for such conflicts, violations, defaults and accelerations that would not, individually or in the aggregate, materially hinder, delay or impair the performance of its obligations under this Agreement.

5.      Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, (a) Assignor hereby assigns, conveys, transfers and delivers unto Assignee all right, title, benefit and interest of Assignor in, to and under the Interests and applicable Operative Documents and all of Assignor's burdens, obligations and liabilities in connection with the Interests and the applicable Operative Documents and (b) Assignee hereby accepts the aforesaid assignment and assumes and agrees to perform all of the obligations, terms, covenants and conditions required to be performed by Assignor in connection with the Interests and the applicable Operative Documents, in each case, other than any burdens, obligations, liabilities, terms, covenants and conditions arising under Section 7.6 of the 2028 Note.

6.      Effective as of the date hereof, upon the terms and subject to the conditions set forth in the Settlement, Assignor hereby assigns, conveys, transfers and delivers unto Assignee all Contractual Rights, and Assignee hereby accepts the aforesaid assignment.

7.      The Parties agree (a) the transactions contemplated by this Agreement shall not be subject to any deduction or withholding and (b) to use commercially reasonable efforts to obtain any certificate or other document from any governmental body as may be necessary to mitigate, reduce or eliminate any tax (including withholding or deduction in respect of taxes) that could be imposed with respect to the transactions contemplated by this Agreement.

8.      Each of Assignor and Assignee shall execute and deliver, at the reasonable request of any Party, such additional documents, instruments, conveyances and assurances and take such further actions as such Party may reasonably request to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

9.      Neither Assignor nor Assignee may assign any of their respective rights or delegate any of their respective obligations under this Agreement, by operation of law or otherwise, without the prior written consent of the other Party.  Any purported assignment not permitted under this Section 9 shall be null and void.

10.     This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument specifically referring to this Agreement and signed, in the case of an amendment, supplement or change, by the Party against whom enforcement of such waiver is sought. Subject to Section 9, this Agreement shall extend to and shall bind and inure to the benefit not only of Assignor and Assignee, but also their respective heirs, legal representatives, successors and assigns.

11.     Nothing in this Agreement, express or implied, is intended to or shall be construed to modify, expand or limit in any way the terms of the Settlement.  In the event of any conflict or inconsistency between the terms of the Settlement and the terms hereof, the terms of the Settlement shall govern and control.

12.     This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.

13.     The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.  If any provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority of competent jurisdiction to be invalid, void or unenforceable, or the application of such provision, covenant or restriction to any person, entity or any circumstance, is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision, covenant or restriction to other persons, entities or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application of such provision, in any other jurisdiction, and the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

14.     This Agreement may be executed in one or more counterparts (including by facsimile or other electronic means), each of which shall be deemed an original, and all of which shall constitute one and the same Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the Parties have executed or caused this Agreement to be executed as of the date first written above.

**LATONA BIOSCIENCE GROUP**

By: _____
     Name:
     Title:

**ALAMEDA RESEARCH LTD.**

By: _____
     Name:
     Title:

[*Signature Page to Assumption and Assignment Agreement*]