<pre>
 1                  UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                      .  Chapter 11
                                 .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD., et al.,   .
                                 .  (Jointly Administered)
 5          Debtors.            .
     . . . . . . . . . . . . . . .
 6                               .
     ALAMEDA RESEARCH LLC, FTX   .
 7   TRADING LTD., WEST REALM    .
     SHIRES, INC., AND WEST      .
 8   REALM SHIRES SERVICES, INC. .
     (D/B/A FTX US)              .
 9                               .
            Plaintiffs,         .
10                               .
        v.                       .  Adv. Pro. No. 23-50419 (JTD)
11                               .
     DANIEL FREIDBERG,           .
12                               .
            Defendant.          .
13   . . . . . . . . . . . . . . .
                                 .
14   ALAMEDA RESEARCH LTD. AND   .
     FTX TRADING LTD.,           .
15                               .
            Plaintiffs.         .
16                               .
        - against -              .  Adv. Pro. No. 23-50444 (JTD)
17                               .
     PLATFORM LIFE SCIENCES INC.,.
18   LUMEN BIOSCIENCE, INC.,     .
     GREENLIGHT BIOSCIENCES      .
19   HOLDINGS, PBC, RIBOSCIENCE  .
     LLC, GENETIC NETWORKS LLC,  .
20   4J THERAPEUTICS INC.,       .
     LATONA BIOSCIENCES GROUP,   .
21   FTX FOUNDATION, SAMUEL      .
     BANKMAN-FRIED, ROSS         .  Courtroom No. 5
22   RHEINGANS-YOO, AND NICHOLAS .  824 North Market Street
     BECKSTEAD,                  .  Wilmington, Delaware 19801
23                               .
            Defendants.         .  Thursday, May 23, 2024
24   . . . . . . . . . . . . . . .  10:00 a.m.

25
</pre>

```
1                      TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE JOHN T. DORSEY
2                 UNITED STATES BANKRUPTCY JUDGE

3    APPEARANCES:

4    For the Debtors:          Adam Landis, Esquire
                               LANDIS RATH & COBB LLP
5                              919 Market Street
                               Suite 1800
6                              Wilmington, Delaware 19801

7                              Brian Glueckstein, Esquire
                               SULLIVAN & CROMWELL LLP
8                              125 Broad Street
                               New York, New York 10004
9
     For NuGenesis:           Amy Brown,
10                            GELLERT SCALI BUSENKELL & BROWN LLC
                              1201 North Orange Street
11                            Suite 300
                              Wilmington, Delaware 19801
12
     For Daniel Friedberg:    Kevin Shaw, Esquire
13                            LEWIS BRISBOIS BISGAARD & SMITH LLP
                              500 Delaware Avenue
14                            Suite 700
                              Wilmington, Delaware 19801
15
                              Minyao Wang, Esquire
16                            LEWIS BRISBOIS BISGAARD & SMITH LLP
                              77 Water Street
17                            Suite 2100
                              New York, New York 10005
18

19

20   Audio Operator:          Jermaine Cooper, ECRO

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1                                  INDEX

2   MOTIONS:                                                     PAGE

3   Agenda
    Item 30:  Motion to Vacate the Order Granting FTX           6
4             Debtors' Motion to Estimate Claims Based
              on Digital Assets with Respect to
5             NuGenesis PTY Ltd. [D.I. 11053, Filed
              On April 3, 2024]
6
              Court's Ruling:                                   15
7
    Agenda
8   Item 32:  Motion of Debtors for Entry of an Order           16
              Quashing Notices of Deposition and for
9             a Protective Order Barring Requested
              Discovery Propounded by Daniel
10            Friedberg [D.I. 14994, Filed on May 15,
              2024]
11
              Court's Ruling:                                   37

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 10:18 a.m.)

2          (Call to order of the Court)

3               THE COURT:  Thank you.  Please be seated.

4               MR. LANDIS:  Good morning, Your Honor.

5               THE COURT:  Good morning.

6               MR. LANDIS:  May I please the Court, Adam Landis

7    from Landis Rath & Cobb here on behalf of FTX Trading and its

8    affiliated debtors.

9               Your Honor, we filed an amended agenda yesterday

10   listing 34 items and I thought since there has been a little

11   bit of action and resolution since we filed the agenda, I

12   just walk through what is going forward and what is not

13   today.

14               Items 1 through 4 are adjourned and remain

15   adjourned.  Item No. 5 has been withdrawn.  Items Nos. 6

16   through 29 have been resolved by order of the Court or

17   agreement to move the hearing dates.  Listed as going forward

18   are the five items at 30 through 34.

19               Item No. 30 is the motion of NuGenesis to vacate

20   the claims estimation order that the Court previously

21   entered.  That will be going forward.

22               Item No. 31 was the examiner's motion to amend

23   what we call the "scope order."  Through the very hard work

24   of a number of parties the U.S. Trustee, the examiner, the

25   Media Intervenors, we have been able to resolve that matter.

1   We filed a certification -- excuse me, the examiner filed a

2   certification of counsel with respect to the resolution that

3   had been reached.  That order has been entered for which the

4   debtors and the parties are very grateful, Your Honor.  That

5   matter will now not be going forward.  I would imagine that

6   the examiner will address it in Item No. 34, which is the

7   examiner's status report that will go forward.

8             THE COURT:  I think we told the examiner that

9   given that he had filed his report under seal, and I have

10  seen it, there is no need for an examiner's report today.

11            MR. LANDIS:  Terrific, Your Honor. Parties will be

12  advised with respect to that.  With the certification of

13  counsel that has been filed and the order that has been

14  entered we expect that the examiners report in unredacted

15  form will hit the docket shortly if it's not already there.

16            THE COURT:  Okay.

17            MR. LANDIS:  Item No. 32, Your Honor, is the

18  debtors' motion to quash and for a protective order with

19  respect to the motion to approve the -- with respect to

20  discovery sought in connection with the motion to approve and

21  enter a debtor restructuring agreement that is referenced in

22  Item No. 33 and Item No. 33 will go forward as a status

23  conference.

24            THE COURT:  Okay.

25            MR. LANDIS:  That covers, I think, all the items

1  on the agenda.  With that, I think we can turn the podium

2  over to counsel to NuGenesis in connection with their motion

3  at No. 30.

4          THE COURT:  Thank you.

5          MS. BROWN:  Good morning, Your Honor.  Amy Brown

6  of Gellert Scali Busenkell & Brown on behalf of NuGenesis, or

7  NuGen, for its motion to vacate the order granting the motion

8  of the debtors to estimate claims based on digital assets

9  with respect to NuGen only which granted the motion of the

10  debtors to estimate claims based on digital assets.

11          The debtors estimation motion estimation of

12  NuGen's claims to zero dollars.  On January 29th, 2024 the

13  debtors filed the amended notice of agenda for hearing

14  scheduled for January 31st at 10:30 a.m.  The first January

15  31st hearing agenda included the estimation motion as a

16  matter going forward at the hearing and provided a list of

17  filed objections and the objectors to the estimation motion

18  contained an Exhibit A to the January 31st hearing agenda.

19          The Exhibit A clearly includes the NuGen objection

20  as Item No. 32; however, NuGen did not receive the first

21  January 31st hearing agenda nor did it receive service of the

22  subsequently filed amended hearing agenda which was filed on

23  January 31st, 2024.  The affidavit of service for the second

24  January 31st hearing was filed on February 10th, 2024. The

25  hearing affidavit of service states that on January 31st,

1  2024 Kroll caused the second agenda to be served via email on

2  the 2002 service list maintained by Kroll.

3         In addition, according to the affidavit of service

4  the January 31st hearing agenda was served via email on the

5  objectors listed on Exhibit B to the affidavit of service;

6  however, Exhibit B to the affidavit of service is blank

7  except for a statement that due to the confidential nature of

8  the debtors' records the service list for the January 31st

9  hearing agenda has been redacted.  The statement in Exhibit

10  further provides that the objection service list will be made

11  available to the Court, the Office of the U.S. Trustee, and

12  any official committee upon request.

13         NuGen understands the confidential nature of

14  creditor contact information, but it makes no sense that the

15  affidavit of service doesn't, at least, include the names of

16  the objectors on objections list.  This is because the first

17  January 31st hearing agenda, which was publicly filed,

18  clearly lists all of the objectors by name.  In addition,

19  NuGen is listed on the minute entry sign-in sheet for the

20  January 31st hearing; however, the objectors sign-in appears

21  to be simply a pre-generated list of the objectors based on

22  the objectors listed in the January 31st hearing agenda.

23         Further compounding the service issues is the fact

24  that on February 13th, 2024 Kroll filed an affidavit of

25  service regarding service of the debtors' reply memorandum in

1  response to the objections filed by the objectors.  This

2  affidavit of service includes a service list for objectors;

3  however, the objectors service list does not include NuGen so

4  clearly NuGen was not served with a critical piece of

5  information for the January 31st hearing.

6         Finally, the dial-in and video information that

7  was circulated before the hearing was sent via email around

8  9:09 a.m. on January 31st, 2024 which was approximately 1.5

9  hours before the January 31st hearing. The same email

10  received by NuGen reflects that it was sent at 12:09 a.m.

11  Australian time on February 1st, 2024.  In other words,

12  accounting for the time difference between the US and

13  Australia by the time the email was seen by NuGen on the

14  morning of February 1st, 2024 the January 31st hearing had

15  already bene held and concluded.

16         On February 7th,2024 the Court entered the

17  estimation order; however, NuGen is not included on the

18  objectors service list and never received service of the

19  estimation order. It didn't find out about the estimation

20  order until mid-March when it hired counsel and was provided

21  with the estimation order.  In fact, the debtors admit in

22  their objection to the motion that NuGen was not individually

23  served with the omnibus reply, the agenda, the amended

24  agenda, or the estimation order.

25         NuGen seeks limited relief from the estimation

1 order as to NuGen only. Specifically, NuGen seeks release

2 form the estimation order to which NuGen objected to on

3 January 5th and the findings and conclusions that NuGen

4 claims are valued at zero dollars. This limited relief is

5 warranted for several reasons; the most prevalent being that

6 of excusable neglect.

7   Pursuant to Rule 60(b) a court may relief a party

8 from a final judgment order or proceeding for excusable

9 neglect, newly discovered evidence, misconduct by an opposing

10 party because applying a judgment, respectively, is not

11 longer equitable or any other reason that justifies relief.

12 The excusable neglect standard is liberally construed

13 especially in those instances where the order of judgment

14 forecloses trials on the merits of the claim.

15   Whether the Court should grant NuGen relief from

16 the estimation order as a result of excusable neglect rests

17 on the balance and tests calling for consideration of the

18 following:  the danger of prejudice to the debtor, the length

19 of the delay and its potential impact on judicial

20 proceedings, the reason for the delay including whether it

21 was met within reasonable control of the movant and whether

22 the movant acted in good faith.

23   Here there is no prejudice to the debtors by

24 providing the relief requested herein.  First, there are

25 claimants that were carved out of the estimation order and

1  such claimants and the debtors have a scheduling order for a

2  litigation track regarding estimation of those claimants'

3  claims.  So, the debtors are still actively litigating claims

4  estimations; therefore, there is little to no prejudice that

5  the debtors should be requested relief -- should the

6  requested relief be granted.

7         Any delay in NuGen's effort to seek relief from

8  the estimation order is minimal. NuGen didn't receive the

9  January 31st hearing access information until February 1st

10 and NuGen was not served with the debtors' reply memorandum

11 nor entry of the estimation order.  NuGen wasn't even aware

12 that the estimation order had been entered until the middle

13 of March.

14         The failure to receive adequate and appropriate

15 notice and service is not the fault of the party that should

16 receive notice, but rather the party whose duty it is to

17 provide adequate notice and service.  Furthermore, the

18 debtors have argued, stated and confirmed in various

19 pleadings, including the debtors' objection, as well as in

20 the estimation order itself that the estimation does not

21 provide -- does not address property rights issues with

22 respect to digital assets.  This means custody claims based

23 on the debtors holding digital assets on behalf of parties

24 pursuant to market maker agreements which make clear that

25 ownership of the digital assets remains with the

1  counterparties to the debtors market maker agreements;

2  however, the debtors have not addressed how they intend to

3  deal with custody claims and issues including accountings for

4  the digital assets and the return of the digital assets to

5  the legal owners.  The Chapter 11 plan filed by the debtors

6  on May 7th is silent on this issue as well.

7          For the foregoing reasons, the motion to vacate

8  should be granted.

9          THE COURT:  Thank you.

10         MR. GLUECKSTEIN:  Good morning, Your Honor.  For

11  the record Brian Glueckstein, Sullivan & Cromwell, for the

12  debtors.

13         Your Honor, NuGen's motion to vacate should be

14  denied as established by their own submissions to the Court.

15  Your Honor, the purported legal basis of the motion is Rule

16  60(b).  The Third Circuit has made clear that relief from a

17  judgment under Rule 60 should be granted only under

18  exceptional circumstances.  NuGen has failed to present any

19  such exceptional circumstances.

20         As the Court will recall, the estimation order was

21  the culmination of a month's long process undertaken by the

22  debtors and their experts working closely with the official

23  committee to establish appropriate market petition day prices

24  for each of the digital assets where there are claims.  NuGen

25  received all the process that it was due.  It received notice

1  of the motion.  It, in fact, filed a written objection to the

2  motion at -- that was docketed by the Court at Docket No.

3  5420.

4          That objection was part of the record that was

5  considered by the Court in issuing its decision following the

6  January 31st hearing.  Furthermore, the debtors specifically

7  responded to the NuGen objection in their reply filed in

8  support of the motion in addition to addressing many of the

9  issues raised by NuGen, which overlapped with other objectors

10  in the context of responding to those objectors and at the

11  January 31st hearing.

12          The basis for the motion is that it was somehow

13  denied the opportunity to argue in support of its objection

14  at the January 31st hearing.  NuGen's own motion demonstrates

15  that that proclamation is untrue.  NuGen's CEO register --

16  took affirmative action to register to appear at the January

17  31st hearing in accordance with the Court's procedures and

18  received an email from Chambers with the link to participate

19  in that hearing at the scheduled date and time.  That the CEO

20  apparently did not participate in the hearing is besides the

21  point. He had every opportunity to do so.

22          In any event, Your Honor, the two main themes of

23  NuGen's objection did not need to be addressed at the January

24  31st hearing in any event.  First, NuGen objected to the

25  debtors' pricing claims on the petition date which the Court

1 addressed on the written record at the outset of that hearing

2 without inviting argument from any party in interest.

3 Second, NuGen advanced arguments with respect to property

4 rights which counsel referenced this morning which were

5 expressly carved out and preserved from the estimation order.

6　　　　　　NuGen has been and remains free to litigate those

7 rights by attempting to contest the debtors' plan or

8 reorganization on that basis or as it otherwise thinks

9 appropriate. NuGen has not presented any newly discovered

10 evidence or excusable neglect.  They did not purport to offer

11 any evidence at the time it filed the NuGen objection or

12 notify the debtors that it intended to present evidence, live

13 at the January 31st hearing, which of course would have

14 needed to have happened in person, nor does Nugen seek to

15 present any evidence now.  As a result, there is no evidence

16 relevant to the NuGen objection, old or new, meaning there is

17 nothing that could have been done to advance any remaining

18 objection to the debtors' estimation methodology in any

19 event.

20　　　　　　We submit that the motion fails to do anything to

21 meet NuGen's burden of excusable neglect.  As we detailed in

22 our papers and as is in the record of the Court, the debtors

23 have completed litigation with respect to the estimation

24 motion pending the issuance of the Court's supplemental

25 decision. So, counsel's suggestion that this litigation is

1  ongoing is not true. As the Court is aware, that litigation

2  is concluded and is sub judice with the Court.

3        In addition, the Court has set a disclosure

4  statement hearing for June 25th.  The debtors will be moving

5  forward with their confirmation process in short order. The

6  debtors and all of their stakeholders would be prejudiced by

7  any delay caused by the reopening of the estimation order in

8  any way and needing to conduct further proceedings with

9  respect thereto.

10        In contrast, NuGen delayed two months after the

11  estimation order was entered before raising its concerns and

12  filing its motion.  We submit that is unreasonable even if it

13  believed recourse was appropriate.  We cite cases in our

14  papers, the courts are clear in circumstances such as this

15  where there is an obligation to continue to monitor the

16  docket which NuGen's CEO has clearly demonstrated an ability

17  to do.

18        The link and the invitation to participate in the

19  January 31st hearing did not go out to all objectors.  It

20  went out only to those objectors who complied with Your

21  Honor's Chamber's procedures that are set forth in the agenda

22  as to how to register to participate in that hearing.  It

23  seems clear from the submission of that notice with NuGen's

24  motion that NuGen's CEO had sufficient notice to participate

25  in that hearing even though we believe that the notice that

1  matters here is notice of the motion itself.

2          At bottom, NuGen had notice of the motion, filed

3  an objection that was considered by the Court and it was

4  overruled alongside other similar objections.  NuGen's CEO

5  registered for the January 31st hearing, received an email

6  from Chambers with a link to participate.  Under the

7  circumstances we ask that the Court deny the motion to

8  vacate.

9          THE COURT:  Thank you.

10         Ms. Brown, any further argument?

11         MS. BROWN:  No, Your Honor. I don't have anything

12 further.

13         THE COURT:  Thank you.  I am going to deny the

14 motion for a number of reasons.  Number one, Rule 60(b) does

15 require the introduction of some kind of evidence to show

16 that the movant received new evidence or was somehow

17 prejudiced by the lack of notice, but I don't even have a

18 declaration from anybody, no evidence at all.  All I have is

19 argument from counsel and some documents that were attached

20 to the motion.  That is not evidence.  That is not before me;

21 therefore, there is no evidence of anything that would lead

22 me to believe that there was a need to reopen the proceeding.

23         Second, even if NuGen had appeared at the hearing

24 a couple of things.  Number one, NuGen is a corporation.  The

25 claimant is a company.  It has to be represented by counsel.

1  The CEO could not have appeared and I would not have allowed

2  to appear and testify at that hearing because he wasn't

3  represented by counsel.  A company has to be represented by

4  counsel. Pro se litigants, if you're an individual who had a

5  claim against the company you can appear pro se, but a

6  company cannot appear pro se.

7          Third, even if he had appeared and made the

8  arguments, the arguments were, I went back and looked at his

9  objection, twofold.  Number one, it was because of the use of

10  the petition date which I ruled based on the papers at the

11  beginning of the hearing.  The code required me to apply the

12  petition date, there was no argument on that.  There is

13  nothing else I could do.  And his other argument is that

14  under the terms of the agreement that they had with the

15  debtors, the tokens at issue were owned by NuGen.  Well, that

16  issue has been preserved and you can bring those arguments up

17  at the time of confirmation of the plan.

18          So, for those reasons I am going to deny the

19  motion under Rule 60(b).  Did the debtors submit a form of

20  order?

21          MR. GLUECKSTEIN:  We did, Your Honor, with the

22  motion but we will make sure Chambers has it.

23          THE COURT:  Okay.  Thank you.

24          MR. GLUECKSTEIN:  Continuing with our agenda, Your

25  Honor, Agenda Item 32 is the debtors' motion for entry of an

1    order quashing the discovery served by Daniel Friedberg.

2    Your Honor, the debtors were forced to file this motion

3    because Mr. Friedberg, a party with no apparent financial

4    stake in the affairs of FTX Europe, has for more then a month

5    insisted on pursing wide ranging burdensome discovery on the

6    basis of an objection to the debtors' pending motion to

7    approve certain settlements that benefit these Chapter 11

8    debtors.

9          His campaign has already delayed our ability to

10   have the Court consider the merits of the settlements today

11   and puts those settlements at risk absent agreement by the

12   counterparties to extend the current outside dates to obtain

13   a final Court order.  The settlements presented in the

14   underlying restructuring motion should be uncontroversial

15   and, in fact, every other party in interest has either

16   recognized their benefits or, otherwise, chosen not to object

17   including the official committee, the U.S. Trustee and every

18   economic stakeholder of these estates.

19         We will address Mr. Friedberg's meritless

20   objection, including the numerous arguments that go far

21   beyond the scope of the relief sought in that motion at the

22   appropriate time.  The context informs certain of the

23   discovery disputes that are before the Court today.

24         At a very high level the restructuring motion

25   seeks approval pursuant to Rule 9019 of the Bankruptcy Code

1  of arm's length settlements that save the debtors $14 million

2  approximately by resolving a $65 million claim filed by CM

3  Equity against FTX Europe without litigation for only $51

4  million. Two, resolves numerous intercompany claims that

5  streamline the balance sheet of FTX Europe and clear a path

6  for its solvent winddown in Switzerland pursuant to Swiss law

7  including the $102 million intercompany obligation that FTX

8  Trading has to FTX Europe, yet Mr. Friedberg objects.  That,

9  of course, is his right.

10         Rule 26(b) provides that he is entitled only to

11  discovery that is relevant to the objection and proportional

12  to the needs of the case.  Mr. Friedberg has, for more then a

13  month, sought to use his manufactured objection as a pretext

14  to harass the debtors and their senior management and to

15  delay the continued progress of these Chapter 11 cases.  The

16  discovery, like his pending objection, reference all types of

17  irrelevant topics such as the now closed sale of FTX Europe's

18  subsidiaries and their assets and whether this Court's orders

19  would be recognized in Switzerland despite the fact that the

20  Swiss Court has already approved the settlements at issue

21  before the Court in our motion.

22         The debtors have produced to Mr. Friedberg the

23  relevant documents in response to his relevant discovery

24  requests.  The debtors have also informed his counsel that

25  they will make Mr. Steven Coverick, of Alvarez & Marsal,

1  available for deposition, which to date they have not yet

2  pursued.  Mr. Coverick has submitted a declaration in support

3  of the restructuring motion and will be the debtors' witness

4  at the hearing providing evidence to carry our burden

5  necessary to obtain approval pursuant to Rule 9019.

6       Of course, if the debtors, through Mr. Coverick's

7  testimony and their documentary evidence, are unable to meet

8  their burden the settlement will not be approved by Your

9  Honor.  Faced with needing to explain himself today to Your

10  Honor, yesterday morning with no notice to the debtors, Mr.

11  Friedberg, in his objection to this motion, retreated.  He

12  has now abandoned much of the disputed discovery, but far

13  from all of it.  Most notably, Mr. Frieberg is still seeking

14  to depose the debtors' CEO, Mr. John Ray, and their CFO, Ms.

15  Mary Cilia, with respect to the settlement motions.  We

16  submit this is entirely inappropriate.

17       First, Your Honor, the debtors maintain that Mr.

18  Coverick possesses the relevant information supporting

19  approval of the restructuring motion.  This is not

20  conjecture. The debtors have demonstrated that they actually

21  believe it because he's the person who has submitted a

22  declaration and who we are putting forward to the Court to

23  testify in support of the motion.

24       Mr. Friedberg presents no basis to take what

25  courts in this circuit recognize are burdensome and

1  disruptive apex depositions. Mr. Ray and Ms. Cilia have no

2  particularly relevant personal knowledge that the claims

3  underlying the settlements and transactions at issue in the

4  restructuring motion separate and apart from what can be

5  obtained from Mr. Coverick.  In fact, as would be expected,

6  investigations into historical claims against the debtors

7  have been led by the debtors advisors, including

8  professionals at Alvarez & Marsal acting at the direction of

9  Mr. Ray and the independent board of directors.

10        Mr. Friedberg repeatedly and erroneously refers to

11  a claim of Binance against the debtors.  There is no such

12  thing. The claim being resolved through the restructuring

13  motion -- through the settlements in the restructuring motion

14  is a $65 million claim by CM Equity against FTX Europe which

15  FTX Trading is on the hook for through the intercompany

16  obligation if FTX Europe cannot pay its debts.  There is a

17  secondary dispute between CM Equity and Binance over who

18  actually owns that claim, but the claim that has been filed

19  into FTX Europe is CM Equity and we shouldn't lose sight of

20  that.

21        Similarly, the so-called loss of $102 million from

22  FTX Europe's balance sheet is simply the impairment that was

23  taken in accordance with Swiss law of the intercompany claim

24  against FTX Europe. As a red herring issue in any event

25  because the FTX Europe's insolvency existed even when the

1  impairment is reversed as made clear in the motion as

2  submitted to the Court and in Mr. Coverick's declaration.

3  Thus, resolution of these matters, we submit and we will put

4  on evidence at the merits hearing, is a win-win for creditors

5  of both FTX Europe and FTX Trading.

6         For purposes of today the debtors have produced

7  the relevant documents on these issues and any remaining

8  questions can be addressed to Mr. Coverick in a deposition

9  and at cross-examination at the hearing when he testifies

10 before this Court. There is no basis whatsoever to depose the

11 debtors two most senior officers on these settlement motions.

12         Somewhat curiously, Mr. Friedberg's objection to

13 this motion doubles as an improper motion to compel of sorts

14 that attaches a new set of requests for production and

15 interrogatories that were not served on the debtors prior to

16 yesterday and are, we submit, procedurally improper.  Any

17 attempt to start a new round of discovery and further delay

18 the Court's consideration of the settlement motion should not

19 be permitted in any way.  The substance of those requests is

20 similar to the requests that are the original subject of this

21 motion, and should be quashed for the same reasons, if the

22 Court is going to consider them at all.

23         The document request seeks all communications with

24 the Swiss administrator, including regarding the compliance

25 by the debtor with the law.  This is not relevant to any

1  objection to the settlements being advanced by these debtors.

2          The settlements at issue in the restructuring

3  motion have been approved by order of the Swiss court

4  overseeing FTX Europe's moratorium proceedings with the

5  support of the Swiss administrator.  In that order, the Swiss

6  court expressly acknowledges the pendency of the approval

7  motion that's before Your Honor that started all of this

8  discovery and that is still pending, will be pending after

9  today.

10          The Swiss court order approving the transactions

11  has been produced to Mr. Friedberg.  These matters are

12  resolved, from a Swiss law perspective.  There's nothing

13  before Your Honor with respect to any of the Swiss law

14  questions.

15          We submit there's no basis for wide-ranging

16  fishing into any correspondence between the debtors and the

17  Swiss administrator.  The terms of the settlements will be

18  determined -- the reasonableness of the terms of the

19  settlements will be determined by this Court, and they will

20  be determined to be reasonable or not from the perspective of

21  the Chapter 11 debtors.

22          Lastly, Your Honor, the motion to quash as to the

23  interrogatories include the one that Mr. Friedberg states

24  he's still pursuing, and we submit that should be granted as

25  well.  The remaining interrogatories seeking information

1  about the drafting of financial statements that include the

2  $102 million intercompany claim and the impairment of that

3  amount, which is described in detail in the restructuring

4  motion and is the subject of testimony in Coverick's

5  declaration.

6           The debtors have produced documents on this

7  subject and Mr. Coverick can be asked whatever remaining

8  questions Mr. Friedberg has on that topic.  There's no basis

9  to require the debtors to respond to a burdensome

10 interrogatory under the circumstances.

11          The motion to quash should be granted in its

12 entirety, including with respect to the modified discovery

13 requests in the Friedberg objection that were annexed thereto

14 yesterday, and we ask that the restructuring motion, on the

15 merits, be set for hearing at the June 13th omnibus hearing.

16          THE COURT:  Okay.  Thank you.

17          MR. GLUECKSTEIN:  Thank you, Your Honor.

18          MR. SHAW:  Good morning, Your Honor, Kevin Shaw

19 from Lewis Brisbois Bisgaard & Smith, along with my colleague

20 Minyao Wang from our New York office, who's been *pro hac*'d

21 into the case, on behalf of Dan Friedberg.

22          THE COURT:  Okay.  Thank you.

23          MR. SHAW:  I'm sorry I'm a little sweaty.  I had

24 to run over from another hearing.  I'm not particular high on

25 Judge Medinilla's list right now.

1          (Laughter)

2               THE COURT:  All right.

3               MR. WANG:  Thank you, Mr. Shaw.

4          Okay.  Thank you, Your Honor.  First of all, I

5    would like to introduce you to my client, Mr. Friedberg.  He

6    flew in from Seattle just to attend this hearing.

7               THE COURT:  Okay.

8               MR. WANG:  Okay.  I think the debtor sort of like

9    tried to recharacterize some of the histories of the

10   discovery requests.  We approached Sullivan & Cromwell on the

11   weekend of April 20th, and we asked for discovery and, with

12   the exception of the Swiss court order, which was provided to

13   us approximately the week of May 5th, nothing was provided to

14   us until the evening of May the 15th.  And, simultaneous with

15   the delivery of the discovery, the debtors filed this motion

16   for a protective order.  So after we asked to see the

17   discovery first, such that we can review the discovery and

18   determine whether our other discovery requests could be

19   narrowed.  So we were never afforded that opportunity because

20   the debtors decided to basically do two things at the same

21   time, we are filing a protective order to quash your

22   discovery material, but we are also, simultaneously, just

23   keep you -- the information which could have been provided

24   weeks ago, weeks before May the 15th, is simply trying to get

25   some sort of propagandistic point that we are being

1  unreasonable.  I think that is just not a correct picture of

2  what's going on.

3          And for the same reason, like it is not disputed

4  that when the settlement motion was filed on April the 10th

5  that the debtors did not have a Swiss court order.  When we

6  filed the objection, their order was granted, but that is

7  something that was not disclosed to us.  So, for that reason,

8  our objection to the settlement motion spent a lot of time on

9  the Swiss law issues, which, obviously, we now have withdrew

10 a lot of the requests related to Swiss law because the other

11 side has produced a Swiss court order, which they did not

12 have when they submitted the motion.

13         So this is just some history that I think Your

14 Honor should be aware of.

15         And now going into what we are seeking right now,

16 what we -- as set out in our exhibit, Exhibit A to our

17 submission from yesterday, we have documentary evidence

18 saying that FTX's C director, Mr. Barber (ph) -- and I

19 apologize for mispronouncing his name, I probably did -- he

20 specifically sent a note to CM Equity saying you have no

21 claim and, to the extent that there was a claim, that would

22 be Binance, and the Binance claim would be no more than $28

23 million, at most, and that was from November the 8th, 2023.

24 That was not too long ago, that's only six months ago.

25         And Exhibit A to our submission also shows that

1   within a week of that letter the Swiss administrator sent out

2   a note and say that -- he ignored it, we disagree, which

3   lends to the inference that potentially the Swiss

4   administrator possibly believed that the Binance claim may be

5   worth less than even $28 million, and that letter was dated

6   November the 15th.

7            And for some reason, between November and April,

8   the debtor decided, from the point of the way they thought

9   the claim was worth, at most, 28 million, maybe substantially

10  less, they somehow decided to pay $50 million to Binance,

11  which is -- first of all, the (indiscernible) is contrary to

12  basic principles of bankruptcy law, and, second, they are

13  treating Binance better than any other similarly situated

14  creditor.  And that's also obviously the issue of the

15  controversy related to Binance.  I mean, we all know what's

16  going on with Binance, and that raises the question of why

17  the debtor is paying an amount to an organization that is

18  under criminal investigation in multiple jurisdictions.

19           Our remaining document discovery is just trying to

20  understand what transpired between the middle of November

21  when the Chapter 11 debtor, which need to justify their

22  decision before Your Honor at the merits hearing in June or

23  whenever it may occur, how did they get from point A in

24  November of 2023 where they believed CM Equity has no claim,

25  where Binance has, at most, a $28 million claim, how did they

1  go from that to $50 million?  And there's a missing link in

2  the story, and that story would be told in the communications

3  between the debtors and the Swiss administrator.  And we

4  believe that we are entitled to that as a basic task of

5  trying to understand why the debtors made the business

6  decisions that they did.

7          And then let me also address briefly the other

8  outstanding issue for the interrogatories.  We are asking for

9  a very simple question because there is an unexplained loss

10  of $102 million, and it is not burdensome to expect the

11  company to explain what happened, why it happened.

12          And then, finally, on the deposition issues, the

13  apex doctrine usually applies only when senior management

14  don't have personal knowledge because the litigation is a

15  run-of-the-mill litigation, but this is not a run-of-the-mill

16  settlement.  Mr. Ray was specifically hired to be the CEO of

17  FTX because of his bankruptcy expertise.  It is very

18  difficult, it is implausible to believe that he would have no

19  personal knowledge of the negotiations, or that he was not

20  involved or he -- on a very extensive level, or that he did

21  not have the ultimate authority to approve a settlement of

22  this magnitude.

23          So we do not believe having an outside consultant

24  who, if you read the declaration carefully, he does not even

25  claim that he has any personal involvement, that should not

1  be an adequate factual witness.

2           Thank you, Your Honor.

3           THE COURT:  Thank you.

4           MR. GLUECKSTEIN:  Again, for the record, Brian

5  Glueckstein for the debtor.  Just a few points, Your Honor,

6  in response to Counsel.

7           Just so the record is clear, with respect to the

8  history of the discovery, as Your Honor will recall, the

9  initial requests by Mr. Friedberg to obtain discovery on all

10 kinds of things happened before they filed an objection to

11 the motion, and it unfortunately required Your Honor to

12 intervene to require that objection to be filed before

13 discovery would proceed, as required.  Once that happened, we

14 had multiple meet-and-confer sessions with counsel for Mr.

15 Friedberg, asking them if they intended -- first disclosing

16 the existence of the Swiss court order, providing them a

17 copy, and then encouraging them and asking them whether they

18 intended to narrow the scope of their discovery.  They

19 declined to do so in any meaningful way, which is what led to

20 us deciding that the course of action necessary here, given

21 the continued passage of time, was to produce the relevant

22 documents, so that they had the documents in their possession

23 and could proceed accordingly, and to seek relief from the

24 Court with the remainder of the discovery.

25           THE COURT:  What is the Swiss court order

1  specifically?

2           MR. GLUECKSTEIN:  Excuse me?

3           THE COURT:  What is the Swiss court order?

4           MR. GLUECKSTEIN:  What is it?

5           THE COURT:  What is it, what does it do?

6           MR. GLUECKSTEIN:  So it does two things, Your

7  Honor.  It approves the sale transaction that Your Honor

8  previously approved, which was the sale of the subsidiary

9  businesses of FTX Europe and their assets, so they approved

10 the same -- the Swiss court approved the same purchase

11 transaction that Your Honor approved back in April, and, at

12 the same time, that order also approved each of the

13 settlements that are the subject of the pending restructuring

14 motion before Your Honor, including the resolution of the

15 $102 million intercompany claim and the $65 million CM Equity

16 claim in favor of -- the $50 million claim in favor of

17 Binance Switzerland.

18           So the exact same relief, on the one hand, with

19 respect to the sale transaction Your Honor has already

20 approved and, on the other hand, the relief that is pending

21 before Your Honor now, both pieces of that relief are

22 considered, discussed, and approved by the Swiss court

23 overseeing the Swiss moratorium in the April Swiss court

24 order.

25           THE COURT:  Okay.

1          MR. GLUECKSTEIN:  Counsel referenced --

2    selectively referenced, and whether it's mischaracterization

3    or just misunderstanding of the documents that he was

4    discussing this morning, I just want to be clear, we don't

5    agree with his interpretation of those documents, but what

6    that shows, Your Honor, is we produced the information, they

7    have those documents, and this idea that Mr. Coverick doesn't

8    have relevant information, there's no basis for that at all.

9    We have put him forward as a witness, he has submitted a

10   declaration based on the motion that was filed, there's now

11   an objection.  He of course will be presenting additional

12   testimony as necessary to respond to the objection, we have

13   not yet submitted our reply papers, and he'll be here to

14   testify at the hearing on the merits of the motion as to

15   whether the debtors can satisfy the standard under Rule 9019

16   to have these settlements approved by Your Honor.

17          The question as to whether or not Mr. Ray should

18   be deposed, the question is not whether he possesses any

19   relevant information.  The law is clear, Your Honor, the

20   question is whether he possesses information that cannot be

21   obtained from another source that's less burdensome than

22   deposing the CEO of the company.  And, again, I think here

23   this is not a hypothetical situation where we're saying,

24   let's just direct you to some low-level person or a financial

25   adviser because we're trying to just avoid and we're going to

1  give you somebody who doesn't know anything.

2          We stepped forward before this objection was even

3  filed and we identified as the debtors Mr. Coverick as the

4  witness, the appropriate witness that is going to carry the

5  debtors' burden.  If Mr. Coverick doesn't possess the

6  information necessary to provide the testimony, to answer the

7  questions that Your Honor has with respect to Rule 9019 and

8  the burden we have to approve the settlement, then Your Honor

9  is going to deny the motion.  We're not saying that we're --

10  you know, we're not letting you depose Mr. Ray, but we're

11  going to bring him here to talk about what he knows about the

12  motion -- about the settlements.  The settlements are before

13  the Court; Mr. Coverick is going to provide the testimony on

14  behalf of the debtors.  Any -- we have submitted that any

15  information that would be obtained from Mr. Ray on these

16  subjects could be obtained from Mr. Coverick.  And, frankly,

17  we have heard nothing to suggest that there's a bona fide

18  reason to depose Mr. Ray here.  We strongly suspect this is

19  just, from the beginning, an exercise -- remember, this

20  started with eight deposition notices of senior executives of

21  FTX, they've narrowed it down to two, which happens to be the

22  two most senior people at the company, and we believe they

23  intend to take these depositions for no purpose other than to

24  harass them.

25          So, under the apex doctrine, we believe there has

1  been no showing by Mr. Friedberg that there is information

2  that's required from Mr. Ray or from Ms. Celia that can't be

3  obtained from Mr. Coverick.  We've offered Mr. Coverick's

4  deposition; they've known we've offered his deposition for

5  close to a month, they have not taken Mr. Coverick's

6  deposition.  The clock continues to -- the dates on the

7  calendar continue to pass.  We need this motion heard, the

8  settlements are already at risk, and we are asking that they

9  take the discovery that they have, if they want to depose Mr.

10 Coverick, we will arrange that, and we ask that the Court

11 hear the merits of the motion on June 13th.

12         Thank you.

13         THE COURT:  What documents have you produced?

14         MR. GLUECKSTEIN:  We've produced a number of

15 documents, Your Honor, that go to the two core issues that

16 they're objecting to.  They go to the question of the

17 information that we have, which, as discussed in Mr.

18 Coverick's declaration and he will talk more about, is

19 limited with respect to the claim, the CM Equity claim, and

20 why we believe that claim exists on the books at $65 million.

21 And so any information that -- we've agreed to respond to the

22 document requests that request information about the

23 historical documentary evidence that we have that go to --

24         THE COURT:  Have you produced that already?

25         MR. GLUECKSTEIN:  And we have produced that

1   already, Your Honor, yes.  And we produced that in the

2   production that Counsel referenced.

3          We also produced documents that we have that show

4   the balance sheet of FTX Europe that was referenced in

5   November, 2023, and his correspondence, what those balance

6   sheets show.  We produced that documentation; that was part

7   of the production as well.

8          So the two core areas that they seem to still be

9   pressing an objection on, the size of the claim, appropriate

10  sizing of the settlement, and what the balance sheet shows

11  from an insolvency perspective, those are the subjects of Mr.

12  Coverick's deposition -- declaration, Your Honor, those are

13  subjects that they can ask Mr. Coverick about in a

14  deposition, and those are -- the document requests that were

15  served on us for physical documents, historical documents

16  that support or address those issues, we have searched for

17  and have produced what we have in response to those issues.

18         So we believe that the documents are out on that,

19  they've had those.  They attached a couple that they cherry-

20  picked to what they filed yesterday under seal, but they have

21  what they have and they can ask Mr. Coverick about those

22  documents.  We don't believe there's further documents that

23  need to be searched.  We certainly don't believe going into

24  correspondence between the debtors and the Swiss

25  administrator, there's obviously coordination between the

1  debtor and the Swiss administrator on lots of topics to

2  ensure that what's happening here is in sync with what's

3  happening in the Swiss moratorium, to go into that

4  correspondence on these issues we don't believe is necessary

5  or appropriate.

6          THE COURT:  Okay.  Why not?

7          MR. GLUECKSTEIN:  Excuse me?

8          THE COURT:  Why not?

9          MR. GLUECKSTEIN:  I think, with respect to -- the

10  question is, well, what are we actually objecting to here,

11  right?  I mean, as we can tell -- now, they haven't amended

12  their objection, so their objection still covers the universe

13  of materials here, but with respect to this issue, the

14  correspondence question first came up in the context of, as

15  is described in the objection, whether or not there was --

16  there's going to be authority and whether the Swiss

17  administrator is going to support or be willing to somehow

18  get recognized in an order of this Court.  That issue, as I

19  understand it, has to be mooted, certainly from our

20  perspective, even though it's still part of their objection,

21  because the Swiss court has ruled.  The Swiss court

22  understands this Court is going to rule, but as far as under

23  Swiss law, the issue has already been decided and it's done.

24          We heard a variation now of this this morning,

25  which is that, well, now we have questions, we think that the

1  -- that the correspondence between the debtor and the Swiss

2  administrator somehow is going to illuminate on the question

3  of, well, what's the appropriate size of the CM Equity claim.

4  That's going to be present day, post-filing, you know,

5  discussions between the debtor and the Swiss administrator,

6  to the extent something like that exists.  To the extent we

7  have any information in the books and records of the debtor

8  that explain where the $65 million liability came from and

9  what, if any, adjustment to that liability is appropriate or

10  existed, that information is part of the search we conducted

11  and produced documents on.

12       So I don't know why we'd be needing to go into,

13  you know, kind of recent correspondence in terms of kind of

14  things like implementation of the settlement and this sort of

15  thing to try to get at these issues.

16       THE COURT:  Is there -- you said the Swiss court

17  has already approved the settlements?

18       MR. GLUECKSTEIN:  Yes.

19       THE COURT:  So am I -- I'll admit, I have not

20  looked at the underlying motion at this point yet, other than

21  very cursorily --

22       MR. GLUECKSTEIN:  Understandably, sir.

23       THE COURT:  -- am I being asked to simply

24  recognize the Swiss court's order, or am I being asked to do

25  something else?

1          MR. GLUECKSTEIN:  No, you're being asked to

2    approve the settlement under Rule 9019 as a settlement

3    undertaken by the Chapter 11 debtors.

4          THE COURT:  Okay.  And why is that, as opposed to

5    just recognizing the Swiss court order?

6          MR. GLUECKSTEIN:  Well, there's a few components

7    to it, Your Honor.  The settlement affects FTX Europe.  FTX

8    Europe is still a Chapter 11 debtor, right?  The expectation

9    and part of why this transaction is before Your Honor,

10   including the previous sale transaction, this suite of

11   transactions, right now, FTX Europe is a Chapter 11 debtor.

12   The plan documents that we have filed contemplate that, if

13   this restructuring is approved by Your Honor and if the

14   liability on the CM Equity claim is limited in the way that

15   we have proposed, we believe that FTX Europe can be wound

16   down out of court, in Switzerland, pursuant to Swiss law.

17   That's in everybody's best interests.  And, if that happens,

18   we are anticipating that FTX Europe will not be treated under

19   our plan of reorganization, it will be an excluded debtor.

20   But, as we sit here today, they are a Chapter 11 debtor.  So,

21   for FTX Europe to enter into that transaction, we believe we

22   need approval under the Bankruptcy Code.

23          There's also an impact on FTX Trading because

24   we're resolving FTX Trading's $102 million liability to FTX

25   Europe as part of this transaction, and certainly that needs

1  to be approved by Your Honor.

2          THE COURT:  Okay.  All right.

3          Mr. Wang, come on up.  Let me just have the two of

4  you come up here.  Come on up.

5          You can stay up there too, Mr. Glueckstein.  I

6  just want to talk to the two of you together as to --

7          MR. GLUECKSTEIN:  Oh, okay.

8          THE COURT:  It sounds to me -- and I agree with

9  Mr. Glueckstein, I think if they're putting forward -- I'm

10 sorry, Mr. Corvick (ph)?

11         MR. GLUECKSTEIN:  Coverick.

12         THE COURT:  Coverick -- if they're putting forward

13 Mr. Coverick as their only witness at the hearing, it makes

14 sense that you would limit the deposition to Mr. Coverick.

15 If he can't answer the questions, the debtors have a problem.

16 If the debtors' witness doesn't have the information that

17 they need to be able to get me to approve the settlement

18 agreement, then I would deny the motion.  So I think your

19 best strategy is to take the deposition of Mr. Coverick.

20         It sounds to me, in terms of document production

21 -- and I think you'll get from Mr. Coverick the information

22 that you're asking for in your interrogatory and, if you

23 can't -- again, if he can't answer those questions, that

24 creates a problem for the debtors.

25         So I'm going to order -- I'm going to grant the

1  motion to quash, but I'm going to order the deposition of Mr.

2  Coverick, which I've already agreed to do anyway, to do that

3  in -- you know, meet and confer to come up with a date where

4  you can both agree on when to do that deposition.  And then,

5  after you've completed that, if you believe there's

6  additional discovery that you still need for some reason, you

7  can come back to me and ask for additional discovery.  But at

8  this point I think, given the situation, given the needs of

9  the case, and what's relevant to the issue before me on the

10  motion, it sounds like the best thing to do is take Mr.

11  Coverick's deposition and then go from there.

12          In terms of document discovery, it sounds like

13  they've already given you everything.  I don't think getting

14  the discovery of the communications between the debtors and

15  the Swiss administrator would accomplish anything other than

16  -- I mean, it kind of amounts to a collateral attack on the

17  Swiss order.  The Swiss court has already ruled based on what

18  the Swiss administrator presented to the court.  So I don't

19  think there's any need for that discovery at this point in

20  time.

21          So, at this point, do the deposition.  If you

22  think you still need something else, ask for a status

23  conference.  I'll come back and I'll hear you on what

24  additional discovery you think you need to present at the

25  hearing on the motion to settle before me.

1          Does that make sense?

2          MR. WANG:  Yes, Your Honor.

3          THE COURT:  Okay.  Anything further?

4          MR. GLUECKSTEIN:  The only thing, Your Honor,

5    tentatively, was a status conference on the motion, and the

6    only thing I have for that is if, in light of Your Honor's

7    directive and ruling this morning, we'd like to -- we'd like

8    permission to set the hearing, the evidentiary hearing on the

9    settlement motion for the June 13th omnibus hearing.

10         THE COURT:  Okay, that gives us -- that gives us

11   three -- one, two, three weeks, right?  Three weeks from

12   today.  So I would suggest doing Mr. Coverick's deposition

13   sometime next week, if you can --

14         MR. WANG:  Okay, I'm just --

15         THE COURT:  -- if it works for scheduling.  So

16   that gives you time to come back to me if you think you need

17   additional discovery.

18         And if it turns out additional discovery is

19   needed, then, again, the debtors have that risk that I might

20   push off the hearing to give you that opportunity to take the

21   additional discovery.  So we'll go from there.

22         So let's set it for the 13th for the hearing on

23   the settlement motion and, assuming you can do Mr. Coverick's

24   deposition next week, let's set --

25         (Pause)

1          THE COURT:  Let's set June 6th at 10:00 a.m. as a

2  status conference on the discovery issue.

3          MR. WANG:  Okay.

4          THE COURT:  Okay?

5          MR. GLUECKSTEIN:  And, just to be clear, you want

6  to set that as a conference either way, or to have that only

7  if they believe they have more discovery?

8          THE COURT:  Only if you believe you need

9  additional discovery.  If not, notify the Court, and we'll

10  just take it off the calendar.

11         MR. GLUECKSTEIN:  Okay.  Thank you, Your Honor.

12         MR. WANG:  Thank you.

13         THE COURT:  Thank you.

14         Anything further for today?

15         MR. LANDIS:  No, Your Honor.

16         THE COURT:  All right.  Thank you all very much.

17  We are adjourned.

18     (Proceedings concluded at 11:13 a.m.)

19

20

21

22

23

24

25

1                          CERTIFICATION

2            We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                    May 23, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                    May 23, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25