**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  June 25, 2024 at 10:00 a.m. (ET)**<br>**Objection Deadline:  June 17, 2024 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE
SETTLEMENT WITH THE UNITED STATES DEPARTMENT OF THE
TREASURY – INTERNAL REVENUE SERVICE, (B) APPROVING THE
SETTLEMENT AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Debtors' entry into, and performance under, the settlement  (the "Settlement"), embodied in certain letters dated April 11, 2024, May 15, 2024, and May 20, 2024 (the "Acknowledgement Letters"),[2] attached as Exhibit 1 to the Order, between and among (i) the Debtors and (ii) the United States Department of the Treasury – Internal Revenue Service (the "IRS"); (b) approving the Settlement; and (c) granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

---

[1]  The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Acknowledgement Letters.

**Preliminary Statement**

1.       The Settlement is a significant and valuable component of the Debtors' proposed chapter 11 reorganization plan, resolving a multitude of complex disputes with the Debtors' largest creditor without the cost and delay of litigation, and while mitigating significant risk of diminution of the assets available for distribution to creditors.

2.       The IRS initially asserted proofs of claim against the Debtors amounting to more than $44 billion, which it amended to $24 billion (the "IRS Claims").  The Debtors do not dispute that, given the complexity of these cases and the state of the Debtors' books and records prior to the commencement of these Chapter 11 Cases, the Debtors could have significant tax liability to the IRS.  However, the Debtors vigorously dispute the IRS Claims in many crucial respects including, among other things, income tax liability for so-called "misappropriation income" as a result of Sam Bankman-Fried's theft of FTX customer funds, employment tax liability for purported compensation paid to Mr. Bankman-Fried and other former principals of the Debtors, and the proposed disallowance of a large amount of deductions and losses for lack of substantiation.  The IRS does not agree with the Debtors' arguments and has informed the Debtors that absent a settlement it would pursue these and other theories to impose significant tax liability.

3.       Among other things, the Settlement—which would only become effective and final upon confirmation of Debtors' proposed chapter 11 reorganization plan (the "Conforming Plan")—would resolve these disputes without the need for the Debtors to expend significant time and incur expenses on litigation.  Specifically, the Debtors and the IRS have agreed in the Settlement that the Debtors shall pursue a Conforming Plan and, in connection with that Conforming Plan, the IRS shall forego and subordinate the IRS Claims and receive (1) a $200 million allowed priority tax claim payable within 60 days of the effective date of the Conforming Plan, and (2) a $685 million allowed junior subordinated claim payable on a subordinated basis to

customers and other creditors with interest paid at the "Consensus Rate" set forth in the Conforming Plan, to the extent funds are available in accordance with the Settlement and the distribution waterfall of the Conforming Plan.  Although the Debtors believe that they are not liable for additional taxes under the IRS's current theories, the IRS Claims raise novel issues of tax and bankruptcy law, and the Debtors thus believe that resolving the IRS Claims as set forth in the Settlement eliminates significant litigation risk and allows for certainty with respect to creditor and customer recoveries under the Debtors' Conforming Plan.  In exchange, upon satisfaction of such claims, the Debtors will receive a full and final settlement of any and all prepetition claims against the Debtors arising from activities, transactions, liabilities, or events on or before October 31, 2022 at a value far below the amounts claimed by the IRS and the IRS's agreement to subordinate any and all claims against the Debtors arising from activities, transactions, liabilities, or events after October 31, 2022.

4.    Notably, resolution of the disputes between the parties would require costly and potentially protracted litigation for both estimation of the IRS Claims and, if the IRS chose to pursue its claims thereafter, the final adjudication of the Debtors' tax liability.  The outcome of these proceedings would be uncertain given certain novel and complex issues of tax law raised by the IRS Claims.  The Settlement thus provides much needed certainty as to the magnitude of the IRS Claims and allows these Chapter 11 Cases to move to swiftly toward resolution, thereby enabling the prompt distribution to the Debtors' other creditors and customers.

5.    Accordingly, the Debtors submit that the Debtors' entry into, and performance under, the Settlement provides material value to the Debtors' estates while avoiding costly, time-consuming, and uncertain litigation, is in the best interests of the Debtors' estates and all stakeholders, is well within the range of reasonableness and should be approved.  The Official Committee of Unsecured Creditors (the "Committee") and the Ad Hoc Committee of Non-US

Customers of FTX.com (the "Ad Hoc Committee") supports the Settlement as set forth in the Acknowledgement Letters.

## Background

6.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

7.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order").  The Non-Customer Bar Date Order established, among other things, September 29, 2023 as the deadline by which government units must file proofs of claim.

8.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

---

[3]    November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

<u>**Facts Specific to the Relief Requested**</u>

9.      On April 27 and 28, 2023, the IRS filed initial proofs of claim purporting to be estimates of the Debtors' prepetition tax liability nominally totaling approximately $44 billion.[4] On September 21, 2023, in accordance with the Non-Customer Bar Date Order, the IRS filed amended proofs of claims that modified the prepetition IRS Claims but left the potential aggregate estimated tax claims against the Debtors at more than $43 billion.[5]  On November 2, 2023, the IRS further amended certain of its claims to reduce the total amount of tax sought to approximately $24 billion.[6]  The IRS currently has 47 pending claims filed against 31 of the Debtors.  These claims would consume the Debtors' combined estates if allowed in their entirety.

10.     In response to the IRS Claims and the parties' inability to reach a settlement, on November 29, 2023, the Debtors filed the *Motion of Debtors for Entry of an Order Establishing A Schedule and Procedures for Estimating Claims Filed by The United States Department of the Treasury – Internal Revenue Service* [D.I. 4204] (the "<u>Estimation Motion</u>").  At a hearing on December 13, 2023, the Court granted the Estimation Motion and ordered that the IRS Claims would be estimated pursuant to section 502(c) of the Bankruptcy Code.  [Dec. 13, 2023 Hr'g Tr. 55:5-56:6; *see also* D.I. 5080.]  The Court also ordered supplemental briefing regarding the applicable burden of proof at the estimation hearing.  (Dec. 13, 2023 Hr'g Tr. at 57:23-25.)  The parties filed simultaneous briefs addressing the burden of proof issue on January 5, 2024, and the

---

[4]   Proof of claim numbers:  1747, 1748, 1754, 1755, 1757, 1758, 1759, 1760, 1761, 1762, 1763, 1764, 1765, 1766, 1767, 1768, 1783, 1784, 1785, 1786, 1787, 1788, 1789, 1791, 1894 1795, 1797, 1799, 1800, 1802, 1803, 1804, 1805, 1806, 1807, 1808, 1810, 1812, 1815, 1816, 1817, 1818, 1819, 1820, 1821.

[5]   Proof of claim numbers:  58971, 58972, 58974, 58979, 58980, 58983, 58985, 58986, 59388.

[6]   Proof of claim numbers:  88399, 88407, 88429, 88430, 88431, 88432, 88433, 88434.

Court heard argument on January 17, 2024.  [*See* D.I. 5410; 5416.]    On January 31, 2024, the Court ruled from the bench that "the burden of proof at the estimation hearing will rest on the IRS." (Jan. 31, 2024 Hr'g Tr. at 9:9-18.)

11.    In the estimation proceedings, the parties engaged in discovery regarding the IRS Claims.  That discovery included contention interrogatories served by the Debtors, in response to which the IRS provided "preliminary statement[s] of facts and issues" in which the IRS purported to calculate approximately $8 billion of income and employment taxes owed by the Debtors.  Although this represents a substantial reduction of the sums asserted in the IRS Claims, the IRS noted that it was providing those "preliminary statement[s]" only for purpose of the "estimation proceeding, not [as] determination[s] of tax liability," and that its "estimations for purposes of this bankruptcy and ultimately its issuance of a notice of deficiency (if any) at the end of the examination may change if more information is learned."

12.    The parties also have engaged in extensive arm's-length settlement negotiations that resulted in the Acknowledgment Letters.  The terms of the Settlement provide, among other things:[7]

- **Settlement of Prepetition Claims**.  In full and final satisfaction of the Filed Claims and any other claims as defined in the Bankruptcy Code ("Claims") of the IRS arising out of or relating to the Debtors' income tax years ending December 31, 2018, December 31, 2019, December 31, 2020, December 31, 2021, and October 31, 2022 (collectively, the "Prepetition Income Tax Years") and the Debtors' taxable quarters ending March 31, 2018, through and including December 31, 2022 (such taxable quarters and the taxable year ending December 31, 2022 accruing through October 31, 2022 collectively, the "Prepetition Employment Tax Periods") or that the IRS could assert for any tax liability arising out of events, transactions, or activities occurring prior to October 31, 2022  (collectively, the "Prepetition Claims"), pursuant to a Conforming Plan, the IRS shall receive (a) a $200,000,000 priority tax claim (the "Priority IRS Claim") payable within 60 days of the effective date of the Conforming Plan ("Effective

---

[7]    Any summary of the Settlement and Acknowledgement Letters contained herein is qualified in its entirety by the actual terms and conditions of the Settlement, as embodied in the Acknowledgement Letters.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Acknowledgement Letters, the actual terms and conditions of the Acknowledgement Letters shall control.

Date") and (b) a $685,000,000 junior subordinated claim (the "<u>Junior Subordinated IRS Claim</u>") that is subordinated to the claims of customers and creditors with interest paid at the Consensus Rate set forth in the Conforming Plan, payable if and to the extent of funds available in accordance with the Acknowledgment Letters and the distribution waterfall of the Conforming Plan.

- o   The Priority IRS Claim shall be paid by wire to the Department of Justice consistent with additional instructions given upon acceptance.

- o   The Debtors may not seek a refund of any component of the Priority IRS Claim.  The Debtors will immediately contact the Department of Justice in the case of an erroneous refund and will return any amounts erroneously refunded.

- **Administrative Tax Expense.** The Debtors represented they intend to use section 505(b)(2) of the Bankruptcy Code to request a determination of any unpaid liability of the estates under those procedures. The IRS agrees to subordinate to claims of customers and other creditors with interest paid at the Consensus Rate set forth in the Conforming Plan, pursuant to the Conforming Plan, all Claims of the IRS arising out of any Postpetition Tax Year, including without limitation any related penalties, statutory addition, or interest ("<u>Senior Subordinated IRS Claims</u>"), in accordance with the Acknowledgment Letters and the distribution waterfall of the Conforming Plan.  To the extent there is a dispute regarding any audit of the Postpetition Tax Years that are not resolved between the Debtors, or its successors, and the IRS prior to the issuance of a statutory notice of deficiency, that matter shall be resolved after the issuance of a statutory notice of deficiency through a proceeding in the United States Bankruptcy Court.

## <u>Jurisdiction</u>

13.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this

Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

14.     By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing the Debtors' entry into, and performance under, the Settlement, (b) approving the Settlement, and (c) granting certain related relief.

## Basis for Relief

### I.     The Settlement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable, and in the Debtors' Best Interests.

15.     Given the complexity of the disputes between the Debtors and the IRS and the associated cost of resolving those disputes, the Debtors have determined that, in its totality, entry into the Settlement is in the best interests of the Debtors and their estates.

16.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy."  *In re World Health Alternatives, Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co*., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968)).

17.     "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted)).

18.     Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

19.     The Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer*

*Ferry*, 390 U.S. at 424; *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

20. The Settlement provides material value to the Debtors' estates, including, among other things, (i) the resolution of disputes with respect to the Debtors' prepetition tax liability by granting the IRS the allowed Priority IRS Claim in the amount of $200 million and the allowed Junior Subordinated IRS Claims in the amount of $685 million, and (ii) the IRS's agreement to subordinate any administrative postpetition tax claims to the claims of the Debtors' customers and other creditors with interest paid at the Consensus Rate set forth in the Conforming Plan. In exchange, the IRS agrees that all IRS Claims are fully and finally satisfied by the Settlement. Settling with the IRS now avoids costly and time-consuming litigation in connection with the merits of the IRS Claims, and eliminates the risks of any unfavorable outcome.

21. Accordingly, and as further described below, the compromises set forth in the Acknowledgement Letters are, in the aggregate, fair and equitable, fall well within the range of reasonableness, satisfy each of the applicable *Martin* factors, and should be approved.

22. **The Probability of Success in Litigation.** The Debtors maintain that the IRS Claims lack merit, and are prepared to litigate the merits of those claims in this Court as necessary. However, the IRS may be able to assert various novel arguments to support the merits of the IRS Claims, including arguments relating to the Debtors' income tax liability for funds stolen by Mr. Bankman-Fried and spent on the Debtors' behalf. Moreover, the Debtors acknowledge that they may owe some taxes in addition to the sums reflected in the Debtors' tax returns. The state of the Debtors' prepetition books and records renders a complete accounting of

all prepetition tax liability nearly impossible. As a result, the outcome of the estimation hearing and any subsequent litigation is uncertain.

23.      The Settlement, in contrast, brings finality on favorable terms. A substantial majority of the IRS Claims would have been classified as priority claims and consumed nearly the entire estate if allowed in full. The Settlement thus achieves an over-97% reduction of the priority claims that the IRS has filed, and an over-88% reduction of the total amount of the IRS Claims. The Debtors expect recoveries for customer claims and general unsecured claims to be significant. Given that expectation, the settlement negotiation between the Debtors and the IRS necessarily centered on the allocation of risk of customer and unsecured claim recoveries. By providing the IRS with (i) the Priority IRS Claim in the allowed amount of $200 million, (ii) the Junior Subordinated IRS Claim in the allowed amount of $685 million on a subordinated basis to customers and creditors, and (iii) the Senior Subordinated IRS Claim on a subordinated basis to customers and creditors, the Settlement provides a fair and efficient resolution for the estates and allows the Debtors to proceed with resolution of the Chapter 11 Cases.

24.      **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay.** Litigation of the IRS Claims would be complex and expensive, leading to significant inconvenience and delay. The law governing a corporation's income tax liability for a majority shareholder's theft is under-developed and uncertain and the costs of pursuing such complex litigation would be high. Although the ultimate issue might have been decided after briefing and an estimation hearing, it is very likely that either or both parties would have appealed any unfavorable result and sought to litigate the issue on the merits after estimation; all of this likely would have required substantial briefing, additional time for resolution, and the possibility that some or all of the distribution to creditors would have been delayed. Additionally, the Committee and the Ad Hoc Committee could participate in such litigation and the estates would

be responsible for payment of the Committee and Ad Hoc Committee's expenses in connection therewith.  The Settlement eliminates these costs.

25.  **The Paramount Interests of Creditors.**  The Settlement is in the best interests of the Debtors' estates and the stakeholders because, as discussed above, approval of the Settlement resolves complex disputes between the Debtors and the IRS that would have involved costly and time-consuming litigation with uncertain outcome by providing for the resolution of all of the IRS's claims against the Debtors.  In particular, because the IRS is receiving only 2.5% of the originally asserted IRS Claims on a priority basis—and because the Junior Subordinated IRS Claim and Senior Subordinated IRS Claims are subordinated to customers and other creditors— its recovery will not have any material effect on the recovery of customers and general unsecured creditors and allows recovery on such claims faster than if litigation had been pursued to victory. As such, in the Debtors' sound business judgment, the value of entering into the Settlement far exceeds the net benefits that the Debtors and stakeholders likely would obtain from continuing on the alternative litigation path.

26.  Based on the foregoing, the Debtors submit that the Settlement, as embodied in the Acknowledgement Letters, satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, the estate, and the stakeholders.  As a result, the Debtors respectfully submit that the Settlement satisfies the *Martin* factors and request that the Court approve the Settlement and authorize the Debtors to enter into and perform under it.

### Waiver of Bankruptcy Rule 6004(h)

27.  Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For

the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

## **Reservation of Rights**

28.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## **Notice**

29.     Notice of this Motion has been provided to:   (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the IRS; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: June 3, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*