## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: June 18, 2024, at 4:00 p.m. (Eastern)**<br>**Hearing Date:  June 25, 2024, at 10:00 a.m. (Eastern)** |

## THE CELSIUS LITIGATION ADMINISTRATOR'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Mohsin Meghji, as Litigation Administrator (the "Celsius Litigation Administrator") for Celsius Network LLC and its affiliated debtors (collectively, "Celsius"), respectfully submits this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), lifting the automatic stay for the purpose of allowing the Celsius Litigation Administrator to commence, adjudicate and liquidate certain actions in the U.S. Bankruptcy Court for the Southern District of New York (the "NY Celsius Bankruptcy Court"), where Celsius's chapter 11 cases were filed and are pending under the jointly-administered caption *In re Celsius Network LLC, et al.*, Case Number: 22-10964 (MG) (the "Celsius Bankruptcy").  The actions seek the avoidance of certain transfers under Sections 547 and 550 of Title 11 of the United States Code (the "Bankruptcy Code") received by (i) the debtors in the above-captioned chapter 11 cases (the "FTX Debtors") as immediate or mediate (hereinafter, "subsequent") transferees (the "Customer Preference Actions"), and (ii) FTX Debtor Quoine Pte Ltd. ("Quoine") as initial transferee (the "Quoine Actions," and together with the Customer Preference Actions, the "FTX Preference

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Actions") from Celsius.   Following entry of the Proposed Order, the Celsius Litigation Administrator intends to file a complaint in the NY Celsius Bankruptcy Court, a draft of which is attached hereto as **Exhibit B** (the "Draft Complaint"), on or before July 13, 2024 to satisfy the statute of limitations under Section 546(a) of the Bankruptcy Code.[2]

In support of this Motion, the Celsius Litigation Administrator submits the declaration of Kenneth Ehrler (the "Ehrler Declaration") filed contemporaneously herewith, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Pursuant to Celsius's plan of reorganization, the Celsius Litigation Administrator was appointed to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates, including the FTX Preference Actions.   Consistent with this authority, the Celsius Litigation Administrator intends to timely commence thousands of adversary proceedings (the "Preference Actions") in the Celsius Bankruptcy to avoid preferential transfers made by Celsius to certain of its account holders during the ninety (90) day period preceding the Celsius Petition Date (the "Celsius Preference Period").   The majority of these preference actions will not involve the FTX Debtors or implicate the automatic stay in these cases (the "Non-FTX Preference Actions").   However, during the Celsius Preference Period, there were a number of occasions in which Celsius account holders withdrew Celsius's assets from the Celsius platform during the Celsius Preference Period and then deposited such property onto the FTX cryptocurrency exchange.   Additionally, Quoine was a customer of Celsius and itself withdrew

---

[2]    The Celsius Litigation Administrator reserves all rights to amend the Draft Complaint and/or the Transfer Schedules (as defined below), including to add or remove transferees and/or transfers, and to revise, among other things, the calculation of a transferee's preference liability with respect to additional transfers and/or reductions of transfers based on any defenses.

substantial assets from the Celsius cryptocurrency exchange platform during the Celsius Preference Period.[3]

2.      Both the FTX Preference Actions and Non-FTX Preference Actions are core proceedings in the Celsius Bankruptcy, share substantially similar issues of law and fact, and include technical, legal and factual matters specific to Celsius.  All FTX Preference Actions against the FTX Debtors as subsequent transferees will correspond to Non-FTX Preference Actions against related initial transferees (*i.e.*, customers) that will be filed simultaneously.  Indeed, each action against the FTX Debtors as subsequent transferees and each corresponding action against the applicable initial transferee stems from a single preferential transfer pertinent to both actions, and adjudication of whether to avoid such transfers will involve the same underlying facts and circumstances.

3.      By this Motion, the Celsius Litigation Administrator seeks to commence, adjudicate, and liquidate the FTX Preference Actions in the NY Celsius Bankruptcy Court having jurisdiction over the Celsius Bankruptcy, in which thousands of similar Non-FTX Preference Actions will be heard, including, as noted, parallel Preference Actions against initial transferees. The FTX Debtors themselves previously argued in favor of this exact same relief in the *Genesis Global* bankruptcy cases.  *See In re Genesis Global Holdco, LLC., et al.*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y. Nov. 11, 2022), D.I. 289.  As the FTX Debtors recognized in *Genesis Global*, "it would be far more efficient for the [preference actions] against the [debtor entities] to be

---

[3]     A list of account holders of Celsius who transferred Celsius's property off the Celsius cryptocurrency exchange platform during the Celsius Preference Period and deposited such property onto the FTX cryptocurrency exchange is attached to the Ehrler Declaration as Exhibit C.  The Celsius Litigation Administrator intends to bring preference actions against these initial transferees in the NY Celsius Bankruptcy Court where the Celsius Bankruptcy is pending.  Following discovery, it may be determined that some of the initial transferees listed on Exhibit C of the Ehrler Declaration did not ultimately transfer assets to the FTX Debtors.  To be clear, by this Motion, the Celsius Litigation Administrator seeks only to lift the automatic stay as necessary to bring preference actions against the FTX Debtors to the extent that they were subsequent transferees and, in the case of Quoine, to the extent that it was an initial transferee of avoidable transfers.

asserted in the same action as against the [non-debtor entities]" adding that "[c]ause therefore exists to lift the automatic stay to allow the [preference actions] against the [debtor entities] to be filed and adjudicated in the [moving parties' home bankruptcy case]." *Id.* at 4–5.

4.      In addition to promoting judicial economy, the unique circumstances of the preference actions against the FTX Debtors as subsequent transferees under Section 550 of the Bankruptcy Code strongly support lifting the stay for the proposed purposes.  First, the FTX Debtors will not be prejudiced by allowing the Customer Preference Actions to proceed in the NY Celsius Bankruptcy Court.  The Customer Preference Actions do not seek to deplete the FTX Debtors' estates or otherwise delay implementation of the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* (as proposed and as it may be amended, the "FTX Plan"), D.I. 15520.  This is because the initial transferees in these actions are creditors of the FTX Debtors, currently classified in Class 5A and/or Class 5B under the FTX Plan.  In the event that the avoidable transfers are not recovered from the initial customer transferees of Celsius, the Customer Preference Actions seek to recover from the FTX Debtors, as subsequent transferees of the initial customer transferees of Celsius.  This would be achieved by redirecting to Celsius, in satisfaction of the avoidance claim, certain payments that the FTX Debtors propose to be distributed to their creditors (*i.e.*, Celsius's initial customer transferees) under the FTX Plan.  Thus, the relief sought would not interfere with the FTX Plan, only with the final recipient of certain FTX Plan distributions.

5.      To be clear, the Customer Preference Actions do not seek to increase the payments that the FTX Debtors intend to make as provided in the FTX Plan.  Because the Customer Preference Actions do not enlarge the FTX Debtors' obligations or modify the value of plan distributions to creditors under the FTX Plan and would merely redirect distributions under the

FTX Plan from the initial transferees (who are not entitled to the underlying assets) to Celsius for the benefit of all of Celsius's creditors, the FTX Debtors will not be prejudiced by the prosecution and adjudication of the Customer Preference Actions in the NY Celsius Bankruptcy Court.

6.      The Celsius Litigation Administrator also seeks to file and prosecute preference claims against Quoine as an initial transferee.  Because the statute of limitations under Section 546(a) of the Bankruptcy Code expires on July 13, 2024, the Celsius Litigation Administrator must commence adversary proceedings against Quoine either in this Court or the NY Celsius Bankruptcy Court on or before that date.  Similar to the Customer Preference Actions, lifting the stay would be practical for the Quoine Actions because the NY Celsius Bankruptcy Court may need to consider and analyze, among other things, similar issues of law and fact at issue in the other Preference Actions, many of which will turn on highly technical facts and circumstances related to Celsius and how it operated its cryptocurrency exchange platform.  Accordingly, it would be more efficient for the Quoine Actions to be filed and adjudicated in the NY Celsius Bankruptcy Court.

7.      Permitting Celsius to commence and litigate the FTX Preference Actions in the NY Celsius Bankruptcy Court is necessary and appropriate to avoid potentially duplicative proceedings or inconsistent rulings from multiple courts on core issues concerning Celsius.  As the court presiding over the Celsius Bankruptcy, the NY Celsius Bankruptcy Court is the only court with jurisdiction over both the FTX Preference Actions and Non-FTX Preference Actions. That court is also well versed on matters that will be central to these proceedings, including the operations of the Celsius cryptocurrency exchange platform, the treatment of "Earn" vs. "Custody" accounts, and related matters.  The NY Celsius Bankruptcy Court issued at least one relevant ruling holding that assets deposited by Celsius's customers into the accounts in question constituted

property of Celsius. *See In re Celsius Network LLC*, 647 B.R. 631 (Bankr. S.D.N.Y. 2023). If the

stay is not lifted in these cases, the Celsius Litigation Administrator will be forced to prosecute

Non-FTX Preference Actions in the NY Celsius Bankruptcy Court and duplicative FTX Preference

Actions in this Court. Modifying the stay in the limited scope as requested will serve the interests

of all parties and both courts.

8.      For these reasons, and as more fully explained below, this Court should grant the

Motion.

## STATEMENT OF THE FACTS

9.      On July 13, 2022 (the "Celsius Petition Date"), Celsius filed chapter 11 petitions in

the NY Celsius Bankruptcy Court. On January 29, 2024, Celsius filed the *Modified Joint Chapter*

*11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for*

*MiningCo Transaction)* (the "Celsius Plan"). *See In re Celsius Network LLC*, Case No. 22-10964

(Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 4289. On January 31, 2024, the Celsius Plan became

effective. *Id*., D.I. 4298. [4]

10.     Pursuant to the Celsius Plan, the Celsius Litigation Administrator was appointed to

prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's

estates, including certain preference actions that relate to the Customer Transfers and the Quoine

Transfers (each as defined below). The statute of limitations with respect to such actions expires

---

[4]     On June 29 and 30, 2023, Celsius timely filed one hundred and three (103) proofs of claim (collectively, the
"Proofs of Claim") asserting claims against the FTX Debtors, including (i) a secured claim against Alameda
Research Ltd., as borrower, to Celsius under a certain loan in the amount of approximately $14,176,996, (ii)
avoidance claims of prepetition transfers pursuant to sections 547, 548, and 550 of the Bankruptcy Code, and (iii)
causes of action against the FTX Debtors including, but are not limited to, libel, slander, tortious interference with
business relations, tortious interference with contract, tortious interference with business prospects, business
disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and
conspiracy, asserting liability of no less than $2 billion in the aggregate. For the avoidance of doubt, by this
Motion, the Celsius Litigation Administrator seeks to lift the automatic stay only with respect to the FTX
Preference Actions. The Celsius Litigation Administrator reserves the right to bring additional actions in
connection with its Proofs of Claim in this Court at a later date, or to seek additional relief.

on July 13, 2024.  Accordingly, in the coming month, the Celsius Litigation Administrator expects to initiate thousands of preference actions against initial and subsequent transferees in the NY Celsius Bankruptcy Court.

## A.    The Earn and Custody Programs

11.    Prior to the Celsius Petition Date, Celsius's primary offering was the "Earn" program ("Earn Program").  The Earn Program allowed users to place digital assets on the Celsius platform in return for "rewards."  *See* Ehrler Declaration at ¶ 9.  Celsius's terms of use provided that when account holders transferred assets to Celsius as part of the Earn Program, they transferred ownership of those assets to Celsius.  Specifically, the terms of use stated that Celsius held "all right and title to such Eligible Digital Assets, including ownership rights" in such assets.  *Id*. Pursuant to the terms of use, Celsius could "pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer" such assets "with all attendant rights of ownership" and "use or invest" the assets in Celsius's full discretion.  *Id*.  In other words, the terms of use unambiguously transfer title and ownership of digital assets deposited into Earn Program accounts from users to Celsius, and the NY Celsius Bankruptcy Court so found.[5]

12.    On April 15, 2022, in response to certain regulatory actions, Celsius launched the "Custody" program ("Custody Program") for customers in certain U.S. states.  *See* Ehrler Declaration at ¶ 11.  The Custody Program provided for accounts that were unlike the Earn Program in that customers retained title to the assets but could not generate rewards on their custody account balances.  Specifically, the terms of services provided that "[t]itle . . . shall at all

---

[5]    During the Celsius Bankruptcy, the NY Celsius Bankruptcy Court addressed whether deposits in "Earn" accounts constitute assets of Celsius's estates.  On January 4, 2023, following a multi-day hearing and extensive briefing from the parties in interest, the NY Celsius Bankruptcy Court issued a ruling (the "Earn Ruling") determining that when assets were deposited in "Earn" accounts, "the cryptocurrency assets became Celsius's property."  *In re Celsius Network LLC*, 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023); *see also* Ehrler Declaration, Ex. A.

times remain with [the customer] and not transfer to Celsius." *Id.* Under these terms, Celsius was not authorized to make investments using the deposited custody assets, and customers no longer received interest payments in return for their custody deposits.[6] Funds that were already held in Earn Program accounts were allowed to remain in the Earn Program regardless of accreditation status, however on and after April 15, 2022, only international-based users and U.S. accredited users could transfer funds to Earn accounts. *Id.*

13.    The Custody Program was created within the Celsius Preference Period. *Id.* Accordingly, all transfers of assets from accounts in the Earn Program to accounts in the Custody Program and the accompanying transfer of title from Celsius to customers also occurred during the Celsius Preference Period and are avoidable, and the NY Celsius Bankruptcy Court acknowledged that Celsius's *prima facie* case for their avoidance was undisputed. *See* Dec. 7, 2022 Hr'g Tr. 195:11–18, *In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 1684. Additionally, any later recipients of property conveyed in those transfers after the property left the Celsius platform, including by the FTX Debtors, necessarily are subsequent transferees under Section 550 of the Bankruptcy Code.

**B.    The Customer Transfers**

14.    On June 12, 2022, in response to customer withdrawal demands and increasing volatility in the cryptocurrency markets, Celsius instituted a "pause" of account withdrawals and transfers, regardless of whether the assets were held in "Earn" accounts, "Custody" accounts, or

---

[6]    During the Celsius Bankruptcy, the NY Celsius Bankruptcy Court addressed whether deposits in "Custody" accounts were assets of the customers as opposed to Celsius. On December 7, 2022, the NY Celsius Bankruptcy Court issued a bench ruling that digital assets in the "Custody" accounts are not property of Celsius's estates. *See* Dec. 7, 2022 Hr'g Tr. 62:6–13, 219:11–14, *In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 1684; *see also* Ehrler Declaration, Ex. B. The NY Celsius Bankruptcy Court subsequently entered an order permitting Celsius to release to customers, among other things, digital assets that were only ever in the Custody Program and transfers of digital assets to the Custody Program made in the ninety days preceding the Celsius Petition Date when such transfers were, in the aggregate, less than $7,575 at the time of the transfers. *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 1767.

other accounts.  *See* Ehrler Declaration at ¶ 13.  Prior to that pause, and during the Celsius Preference Period, certain Celsius customers received transfers off the Celsius platform through withdrawals.  Certain of Celsius's assets were withdrawn from "Earn" or "Custody" customer accounts directly to wallets believed to be associated with the FTX cryptocurrency exchange platform, and other assets were transferred after initially being transferred to other locations (together, the "Customer Transfers").  *Id*.  Many of the initial transferees of these Customer Transfers are classified as creditors in Class 5A or 5B under the FTX Plan.[7]  *See* D.I. 15520; Ehrler Declaration at ¶ 20.

15.     Based in part on the Earn Ruling, transfers from an "Earn" account off the Celsius platform during the Celsius Preference Period and transfers from "Earn" to "Custody" accounts during the Celsius Preference Period constitute avoidable preferences, and the subsequent recipients of such transfers from the initial transferee constitute subsequent transferees, as defined in Section 550 of the Bankruptcy Code.

16.     A schedule attached as Exhibit C to the Ehrler Declaration (the "Subsequent Transfers Schedule") identifies the (i) initial transferees of such Customer Transfers, (ii) net amounts of avoidable transfers made to each initial transferee ("Transfer Amount"), and (iii) total amount of assets that were transferred from the initial transferee to an FTX entity.[8]  Ehrler

---

[7]     The Celsius Litigation Administrator intends to work cooperatively with the FTX Debtor's estates to confirm the appropriate subsequent transferee—an FTX Debtor or a Bahamian entity.

[8]     The Subsequent Transfers Schedule includes identified claims against an FTX entity as a subsequent transferee which may be attributable to an FTX Debtor or an entity in the liquidation of FTX Digital Markets Ltd. (the "Bahamas Liquidation") and its corresponding chapter 15 proceeding.  Based on his investigation (which remains ongoing), the Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received the avoidable transfers belong to an FTX Debtor or an entity in the Bahamas Liquidation.  Accordingly, the Subsequent Transfers Schedule includes some claims that may not ultimately be attributable to an FTX Debtor and will continue, instead, against entities in the Bahamas Liquidation.  The Motion only requests authority to lift the automatic stay with respect to the FTX Debtors.  A complementary motion requesting the same relief with respect to the Bahamian entities was filed contemporaneously herewith in the chapter 15 proceeding.  The Celsius Litigation Administrator intends to take necessary discovery following the initiation of Preference Actions in order to finalize the Subsequent Transfers Schedule and attribute FTX wallets against appropriate entities.

Declaration at ¶ 14.  A transferee's preference exposure in the Subsequent Transfers Schedule is primarily based upon deposits and withdrawals from an Earn account to an off-platform wallet (in the case of international customers), transfers between Earn and Custody accounts (in the case of U.S.-based customers), and other transactions as set forth in the Celsius disclosure statement.  *See e.g. In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 3332 at 76–81.  As calculated solely for purposes of the schedule, this Transfer Amount represents the estimated value, as of May 7, 2024, of assets transferred from Celsius's estates net of new value (e.g., deposits) received and potential settlements entered.  Ehrler Declaration at ¶ 15.

17.    During the Celsius Bankruptcy, a settlement was offered to customers to resolve their preference exposure related to their Custody account balance ("Custody Preference Settlement").  *Id.* at ¶ 16.  Customers who accepted the Custody Preference Settlement agreed to resolve preference exposure related to their Custody assets that remained on the Celsius platform.  To the extent customers accepted the Custody Preference Settlement, their preference liability was estimated by excluding those Custody assets that were resolved in such settlement.  *Id.*

18.    During the Celsius Bankruptcy and after the effective date of the Celsius Plan, offers to settle remaining customer preference liability were provided to Celsius account holders ("Customer Preference Settlements").  None of the transferees included on the Subsequent Transfers Schedule are known to have accepted the Customer Preference Settlements.  *Id.* at ¶ 17.

**C.    The Quoine Transfers**

19.    Quoine was a customer of Celsius that held an "Earn" account.  Celsius's records show that during the Celsius Preference Period, Quoine withdrew assets from the Celsius cryptocurrency exchange platform ("Quoine Transfers").  *See* Ehrler Declaration at ¶¶ 21.

20.    Based in part on the Earn Ruling, which held that assets in "Earn" accounts were the property of Celsius, Quoine's transfers from "Earn" accounts off the Celsius platform during

the Celsius Preference Period qualify as avoidable transfers for which Quoine was the initial transferee.

21.     A schedule identifying the Quoine Transfers and amounts of avoidable transfers made to Quoine is attached as Exhibit D to the Ehrler Declaration (the "Quoine Transfers Schedule" and, together with the Subsequent Transfers Schedule, the "Transfer Schedules").

## JURISDICTION

22.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Celsius Litigation Administrator confirms its consent, pursuant to Local Rule (as defined herein) 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

23.     The statutory and other predicates for the relief sought in this Motion are Section 362(d) of the Bankruptcy Code, Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## RELIEF REQUESTED

24.     By this Motion, the Celsius Litigation Administrator requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting relief from the automatic stay to authorize the Celsius Litigation Administrator to commence, adjudicate and liquidate the FTX Preference Actions in the NY Celsius Bankruptcy Court.

**BASIS FOR RELIEF**

25.     Section 362(a) of the Bankruptcy Code provides that the filing of a chapter 11 petition operates as a stay, applicable to all entities, of any act to obtain possession of or exercise control over property of the estate or to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.  11 U.S.C. §§ 362(a)(3), (6).  Notwithstanding this prohibition, this Court "shall grant relief from the stay . . . for cause" on a party in interest's request and after notice and a hearing.  11 U.S.C. § 362(d)(1).  Section 362(g) places an initial burden on the moving party to establish its *prima facie* case for relief from the automatic stay which must then be rebutted by the party opposing such relief.  *See Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 577 (Bankr. D. Del. 1992); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("[T]he movant must [] make a prima facie showing that it is entitled to the relief that it seeks.").  A *prima facie* case requires a showing by the movant of a factual and legal right to the relief that it seeks.  *In re Eatman*, 182 B.R. at 390 (citing *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr S.D.N.Y. 1994)); *see also In re Planned Systems, Inc.*, 78 B.R. 852, 859 (Bankr. S.D. Ohio 1987).  "After the moving party establishes a *prima facie* case, the burden of producing evidence, as well as the ultimate burden of proof, *i.e.*, risk of non-persuasion, shifts to the debtor." *In re Planned Sys., Inc.*, 78 B.R. at 859.

26.     Because the term "cause" is not defined in Section 362(d) of the Bankruptcy Code, courts "conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015); *see also In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016) (cause is a "flexible concept, determined on a case-by-case basis."); *In re The SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("[C]ourts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances

to determine whether sufficient cause exists to lift the stay.").  As the Third Circuit has stated, whether cause exists to lift the automatic stay is "based on the totality of the circumstances in each particular case." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997).

27.     The Court "has the flexibility and the discretion to fashion the relief to the circumstances of the particular matter."  *In re Patriot Contracting Corp.*, Case No. 05-33190 (DHS), 2006 Bankr. LEXIS 4133, at *6 (Bankr. D.N.J. May 31, 2006); *see also Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) ("A bankruptcy court is granted wide discretion to determine whether to lift an automatic stay for cause.").

28.     To determine whether cause exists to grant relief from the automatic stay, courts in the Third Circuit look to the three factors that compromise the *Rexene* balancing test: "1.  Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and 3. The probability of the creditor prevailing on the merits." *In re Trump Entm't Resorts, Inc.*, 526 B.R. at 120–121; *see also In re Cont'l Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993); *In re Rexene Prods. Co.*, 141 B.R. at 576.  To demonstrate that cause exists under Section 362(d)(1), "the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in its favor.'" *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (internal citation omitted).

29.     The Third Circuit has expressly noted that the legislative history of Section 362(d)(1) provides "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the

parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *In re Wilson*, 116 F.3d at 91; *see also In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (internal citation omitted).  This legislative history makes clear that cause may be established by a single factor such as "a desire to permit an action to proceed in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case."  *In re Rexene Prods Co.*, 141 B.R. at 576 (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)).  In fact, the mere existence of a more appropriate forum than the bankruptcy court constitutes cause for relief under Section 362(d).  *See Mother African Union Methodist Church v. Conference of AUFCMP Church (In re Conference of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995).

30.    Some courts, under remarkably similar "dueling debtor" scenarios, have found it appropriate to lift the automatic stay to allow a debtor in a separate bankruptcy case to prosecute its preference adversary proceeding in the court where its own case was pending.  *See In re Shared Techs. Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003) (on appeal, the district court found that the bankruptcy court's modification of the automatic stay to permit a debtor in a separate bankruptcy to prosecute preference claims where its bankruptcy case was pending constitutes an appropriate exercise of the court's broad powers under Section 362).  In *Shared Technologies,* the bankruptcy court lifted the stay for the purpose of allowing the movant to proceed in seeking a judgment to recover preferential transfers in an adversary proceeding filed in its own bankruptcy action (*In re Shared Techs.*, 293 B.R at 94)—which is similar to the request made by the Celsius Litigation Administrator here.[9]

---

[9]    In *In re Voyager Digital Holdings, Inc.*, Celsius filed a motion for leave to file a late proof of claim and lift the automatic stay to commence a preference action against Voyager Digital in Celsius's case in that same court. Although the lift stay issue was not adjudicated, Bankruptcy Judge Wiles noted that "to the extent that the [Voyager debtors] have implied that they wish to make arguments about the ["Custody" accounts] and whether

31.     The reasoning of the court in *Shared Technologies* applies here, and "cause" exists pursuant to Section 362(d) of the Bankruptcy Code to lift the automatic stay to permit the commencement and prosecution of the FTX Preference Actions in the NY Celsius Bankruptcy Court.

### A.  Lifting the Automatic Stay Does Not Prejudice the FTX Debtors

32.     In determining "whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit," courts look to the purpose of the automatic stay:

> to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

*In re Tribune Co.*, 418 B.R. at 126–127 (internal quotes and citations omitted).  Although this is a very fact-specific inquiry, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation to proceed against a debtor in another forum is the effect of such litigation on the administration of the estate."  *In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007).

### i.  Lifting the Automatic Stay for Customer Preference Actions Has No Adverse Impact on the FTX Debtors.

33.     Prior to the statute of limitations deadline, the Celsius Litigation Administrator will initiate Non-FTX Preference Actions in the NY Celsius Bankruptcy Court against the initial transferees who were party to the Customer Transfers.  As noted above, certain of these initial

---

they were or were not property and whether prior transfers to the ["Custody" accounts] should be treated as preferences, those are issues Judge Glenn [in the Celsius Bankruptcy] is going to be deciding as to many customers, and if . . . those are going to be issues, or were to be issues in opposition to a claim . . . then there is no way I would entertain a separate litigation of those issues in my Court."  *See In re Voyager Digital Holdings, Inc.,* No. 22-10943 (MEW), D.I. 921, Jan. 24, 2023 Hr'g Tr., 103:21–104:9 (Bankr. S.D.N.Y. Jan. 24, 2023).

transferees are also Class 5A and/or Class 5B claimants under the proposed FTX Plan. Therefore, to the extent that an FTX Debtor is determined to be a subsequent transferee, redirecting FTX Plan distributions to Celsius, instead of a Class 5A and/or Class 5B claimant who was an initial transferee of avoidable transfers of Celsius's property, is warranted in the amount of the preference claims. Because the Customer Preference Actions seek only to redirect distributions already contemplated by the FTX Plan, the general policy underlying the automatic stay of protecting a bankruptcy estate from being "whittled away by creditors' lawsuits" does not apply. *In re Cont'l Airlines, Inc.*, 152 B.R. at 426.

34.    The Celsius Litigation Administrator has tailored the relief sought herein to ensure that there will be no diminution of the FTX Debtors estates as a result of the Customer Preference Actions. Among other things, with respect to this issue, the Proposed Order specifically lifts the automatic stay with respect to the Customer Preference Actions only for the limited purpose of redirecting distributions on account of Class 5A and/or Class 5B claimants (or any other applicable class) who were initial transferees of avoidable preferences, and further provides that no distributions by the FTX Debtors on account of Customer Preference Actions will exceed the amounts otherwise payable to such Class 5A and/or Class 5B claimants (or any other applicable class) under the FTX Plan.[10]    Accordingly, the FTX Debtors would not be prejudiced if the automatic stay was modified with respect to the Customer Preference Actions.

35.    In addition, the FTX Debtors' creditors will not be prejudiced if the Customer Preference Actions are adjudicated in the NY Celsius Bankruptcy Court. Claimants who are not parties to the Preference Actions in the Celsius Bankruptcy will be completely unaffected, as their

---

[10]    Any distributions made to Class 5A and/or Class 5B claimants (or any other applicable class) who are subject to the Preferences Actions should be delayed until the Preference Actions are resolved and the distributions related thereto are properly directed to Celsius or the Class 5A and Class 5B claimants (or any other applicable class), as applicable.

distributions under the FTX Plan will remain unchanged.  Those claimants who are parties to the Preference Actions also will be no worse off.  As initial transferees of preferential transfers from Celsius, actions against such claimants are Non-FTX Preference Actions unaffected by the automatic stay.  These claimants will be subject to preference actions by Celsius whether or not the FTX Debtors are joined to those proceedings.  The Customer Preference Actions would simply allow the Celsius Litigation Administrator to redirect distributions made on account of Class 5A or Class 5B claims (or any other applicable class) under the FTX Plan.  To the extent a Customer Preference Action redirects distributions on account of a Class 5A or Class 5B claim, the result follows because those claimants were never entitled to those underlying assets under the law of the case in the Celsius Bankruptcy.  Accordingly, lifting the automatic stay to allow the Celsius Litigation Administrator to pursue the Customer Preference Actions would not prejudice any creditors of the FTX Debtors.

### ii.    Lifting the Stay for the Quoine Actions Does Not Prejudice the FTX Debtors.

36.    Lifting the automatic stay with respect to the Quoine Actions will not prejudice the FTX Debtors because the requested relief only affects the venue of the Quoine Actions, not their outcome.  The Celsius Litigation Administrator must initiate avoidance actions against Quoine in either this Court or the NY Celsius Bankruptcy Court by July 13, 2024.  If the stay is not lifted with respect to the Quoine Actions prior to such deadline, the Celsius Litigation Administrator would need to file the Quoine Actions in these cases.  Denying the Motion with respect to the Quoine Actions would result in this Court presiding over the Quoine Actions, separate from the thousands of similar preference actions in the Celsius Bankruptcy pending before the NY Celsius Bankruptcy Court.  The issues of law and fact likely will be substantially similar for either court, but the NY Celsius Bankruptcy Court is most familiar with these issues of law and fact, including

the particularities of the Celsius platform.  Accordingly, the FTX Debtors would not be prejudiced by lifting the stay with respect to the Quoine Actions.

**B. Denying the Motion Would Greatly Prejudice the Celsius Litigation Administrator and Celsius's Creditors.**

37.     The second factor—the hardship to the Celsius Litigation Administrator and Celsius's creditors if the automatic stay is not lifted—considerably outweighs any hypothetical hardship to the FTX Debtors in lifting the stay.

38.     Absent an order lifting the automatic stay, the Celsius Litigation Administrator would need to litigate substantially similar Preference Actions in two separate courts—the Non-FTX Preference Actions in the NY Celsius Bankruptcy Court and the FTX Preference Actions in this Court—even though these actions involve the same underlying facts and circumstances. Separating related proceedings across two different forums will drastically increase the time and costs associated with adjudicating and liquidating these preference claims and will serve no logical purpose.  The Celsius Litigation Administrator is already operating on a limited budget, and any additional expenses incurred in redundant proceedings will directly diminish the recoveries for Celsius's creditors whose claims are not being paid in full under the confirmed Celsius Plan.

39.     The Celsius Litigation Administrator also has an interest in determining the Preference Actions in one forum.  The resolution of common issues of fact and law arising in any one Preference Action is important to the process.  Indeed, to recover from the subsequent transferee, Celsius must show that the initial transfer is avoidable and that the defendant is a subsequent transferee of the initial transferee.  Dividing the FTX Preference Actions and Non-FTX Preference Actions across multiple jurisdictions risks the development of conflicting or inconsistent rulings.

40.     Failing to lift the automatic stay with respect to Customer Preference Actions will further prejudice the Celsius Litigation Administrator by hindering his ability to recover on preference claims.  Lifting the stay to permit the Celsius Litigation Administrator to prosecute the Customer Preference Actions against the FTX Debtors as subsequent transferees along with the actions against initial transferees will allow the Celsius Litigation Administrator to recover preference claims in circumstances where, among others, an initial transferee may be beyond the practical reach of the NY Celsius Bankruptcy Court.  For those initial transferees who are also Class 5A and/or Class 5B claimants under the pending FTX Plan, redirecting distributions is the fastest and most efficient way to ensure Celsius is made whole without any prejudice to the FTX Debtors.

**C.  The Celsius Litigation Administrator Likely Will Succeed on the Merits.**

41.     The third factor, whether the creditor has a probability of prevailing on the merits, weighs heavily in favor of lifting the stay.  In the lift stay context, this element "merely requires a showing that [the movant's] claim is not frivolous." *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P. (In re Levitz Furniture Inc.)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000).  Thus, for this factor, the Celsius Litigation Administrator's burden to show probability of success is "very slight." *In re Rexene Prods. Co.*, 141 B.R. at 578 ("[o]nly strong defenses . . . can prevent a bankruptcy court" from lifting the automatic stay) (internal citations omitted); *see also In re Tribune Co.*, 418 B.R. at 129 (the introduction into evidence of a declaration containing dates and potential witnesses supporting a claim was sufficient to meet this prong); *In re Cont'l Airlines, Inc.*, 152 B.R. at 426 ("Even a slight probability on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").

42.     As described more fully in the draft complaint and the Ehrler Declaration, (a) the Customer Transfers occurred during the Celsius Preference Period; (b) each of the Customer

Transfers was a transfer of an interest of Celsius's property; (c) the Customer Transfers were made for the benefit of the initial transferee while Celsius was insolvent; and (d) each of the transfers enabled the initial customer transferees to receive more than they would have received if (i) the Celsius Bankruptcy were a case under chapter 7 of the Bankruptcy Code; and (ii) the Customer Transfers had not been made. *See* Ex. B; Ehrler Declaration at ¶ 19.  For each Customer Preference Action against an FTX Debtor, at least one FTX Debtor was a subsequent transferee of the avoidable transfer.[11]  *See* Ex. B; Ehrler Declaration at ¶ 14.

43.    With respect to Quoine Actions, (a) the Quoine Transfers occurred during the Celsius Preference Period; (b) each of the Quoine Transfers was a transfer of an interest of Celsius's property; (c) the Quoine Transfers were made for the benefit of Quoine while Celsius was insolvent; and (d) each of the transfers enabled Quoine to receive more than it would have received if (i) the Celsius Bankruptcy were a case under chapter 7 of the Bankruptcy Code; and (ii) Quoine Transfers had not been made. *See* Ex. B; Ehrler Declaration at ¶ 22.

44.    These facts, considered in conjunction with the NY Celsius Bankruptcy Court's Earn Ruling that assets held in "Earn" accounts were the property of Celsius, demonstrate that Celsius has a colorable basis to establish a *prima facie* case to avoid the preferences pursuant to Sections 547 and 550 of the Bankruptcy Code.  Any defenses may be properly addressed by the NY Celsius Bankruptcy Court in a Preference Action.

---

[11]    Based on available information, the Celsius Litigation Administrator cannot confirm whether an FTX wallet is attributable to an FTX Debtor or an entity in the Bahamas Liquidation.  This Motion only requests authority to lift the automatic stay with respect to the FTX Debtors.  A complementary motion requesting the same relief with respect to the Bahamian entities was filed contemporaneously in the chapter 15 proceeding.

**D. Maintaining All Preference Actions, Including the FTX Preference Actions, in the NY Celsius Bankruptcy Court Will Serve Judicial Economy and Facilitate Expeditious Resolutions.**

45.     In addition to satisfying the *Rexene* balancing test, lifting the stay would also serve judicial economy.  The FTX Preference Actions would be most appropriately and efficiently litigated in the NY Celsius Bankruptcy Court where core legal and factual issues likely to be raised in connection with the FTX Preference Actions will also be at issue in thousands of other Preference Actions brought by the Celsius Litigation Administrator.  Duplicative litigation would impose a burden on not only the Celsius Litigation Administrator, but also the courts.  *See In re Rexene Prods. Co.*, 141 B.R. at 576.

46.     The NY Celsius Bankruptcy Court, which has presided over the Celsius Bankruptcy for over twenty months and gained specialized knowledge and experience regarding Celsius, is the most practical forum to adjudicate the Preference Actions.  *See In re Schaffer*, 597 B.R. 777, 795 (Bankr. E.D. Pa. 2019) ("[L]itigating in the bankruptcy forum which has no familiarity with the underlying substantive claims would likely be more burdensome to the [d]ebtor and the estate than concluding litigation in [another court]").

47.     Adjudicating all of the Preference Actions in a common forum would eliminate the risk of inconsistent rulings such as those related to the application of the NY Celsius Bankruptcy Court's Earn Ruling to the Preference Actions.  The determination of such matters that are central to the Celsius Bankruptcy should be left to the NY Celsius Bankruptcy Court.

48.     Finally, it is undisputed that the NY Celsius Bankruptcy Court has jurisdiction to hear all of the Preference Actions, whereas this Court's jurisdiction is limited to the FTX Preference Actions.  The Non-FTX Preference Actions will necessarily proceed in the NY Celsius Bankruptcy Court whether or not the stay here is lifted.  Simply put, it would be practical and less burdensome on all parties in interest, including this Court, to lift the automatic stay and permit the

Preference Actions, including the FTX Preference Actions that rely on the same or similar facts and circumstances, to be heard and determined by the NY Celsius Bankruptcy Court.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 4001(a)(3)**

49.     Pursuant to Bankruptcy Rule 4001(a)(3), an order granting relief from the automatic stay is "stayed until the expiration of fourteen (14) days after the entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).  As previously noted, the Celsius Litigation Administrator must file any Preference Actions, including the FTX Preference Actions, no later than July 13, 2024.  Given the nature of the relief requested herein and, in particular, the impending statute of limitations, the Celsius Litigation Administrator submits that to the extent applicable it is appropriate that the 14-day stay under Bankruptcy Rule 4001(a)(3) be waived.

## **NOTICE**

50.     Notice of this Motion will be provided to (a) the U.S. Trustee; (b) counsel to the FTX Debtors; (c) counsel to the Official Committee of Unsecured Creditors; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

51.     WHEREFORE, the Celsius Litigation Administrator respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 5, 2024
Wilmington, Delaware

**COLE SCHOTZ, P.C.**

/s/ *Justin R. Alberto*
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
Melissa M. Hartlipp (No. 7063)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email:  jalberto@coleschotz.com
          preilley@coleschotz.com
          mhartlipp@coleschotz.com
-and-


**PRYOR CASHMAN LLP**
Seth H. Lieberman, Esq.
Richard Levy, Jr., Esq.
Andrew S. Richmond, Esq.
7 Times Square, 40th Floor
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Email: slieberman@pryorcashman.com
          rlevy@pryorcashman.com
          arichmond@pryorcashman.com

*Counsel to the Celsius Litigation
Administrator*