## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 4863, 13628, and 15521** |

**OBJECTION OF LAYERZERO LABS LTD., ARI LITAN,
AND SKIP & GOOSE LLC TO (A) MOTION OF DEBTORS FOR ENTRY
OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE
STATEMENT; (II) APPROVING SOLICITATION PACKAGES; (III) APPROVING
THE FORMS OF BALLOTS; (IV) ESTABLISHING VOTING, SOLICITATION
AND TABULATION PROCEDURES; AND (V) ESTABLISHING NOTICE
AND OBJECTION PROCEDURES FOR THE CONFIRMATION
OF THE PLAN, AND (B) DISCLOSURE STATEMENT FOR DEBTORS' JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF FTX TRADING LTD.
AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION**

LayerZero Labs Ltd. ("LayerZero"), Ari Litan, and Skip & Goose LLC ("Skip & Goose",

and collectively with LayerZero and Ari Litan, the "LayerZero Group")[2] hereby submit this

objection (this "Objection") to (A) *Motion of Debtors for Entry of an Order (I) Approving the*

*Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the*

*Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V)*

*Establishing Notice and Objection Procedures for the Confirmation of the Plan* [Docket No. 4863]

(the "Motion") and (B) *Disclosure Statement for Debtors' Joint Chapter 11 Plan of*

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  The LayerZero Group has filed the following proofs of claim: 5236, 5263, 5511, 85302, 85218, 85231, 85245, 85334, 85220, 85225, 85332, 85203, 85226, and 85338.

*Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-In-Possession* [Docket No. 15521] (the "Disclosure Statement")[3] filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of this Objection, the LayerZero Group respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The LayerZero Group are named defendants in an adversary proceeding, Adv. Proc. No. 23-50492 (JTD) (the "Adversary Proceeding"), that, among other things, seeks to avoid and recover certain allegedly preferential transfers under the Bankruptcy Code from the LayerZero Group's FTX.com and FTX US exchange accounts. The Disclosure Statement contains significant and material omissions that make it impossible for the LayerZero Group and other similarly situated creditors to evaluate whether they can vote to support the Plan. Further, the Plan is patently unconfirmable in its current form because it violates section 1123(a)(4) of the Bankruptcy Code by providing different distributions an account of claims in Classes 5A and 5B by arbitrarily waiving Customer Preference Actions for some creditors but not others, and unilaterally discharging claims without notice or objection.

2.      ***First***, the Disclosure Statement and Plan do not provide sufficient information to its Class 5A and 5B customer creditors regarding whether the Debtors will continue to pursue Customer Preference Actions against them or waive them. On November 2, 2022 (nine days before the Petition Date), CoinDesk published an article that prompted questions about the Debtors' liquidity and lead to a "run" on the FTX Exchanges prompting customers to attempt (and sometimes accomplish) withdrawals of several billion dollars between November 2, 2022 and the

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Disclosure Statement or the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 15520] (the "Plan").

Petition Date.   Disclosure Statement § 2.B.3.   The Debtors have been pursuing Customer Preference Actions against these and other withdrawals.   However, likely because customers in Classes 5A and 5B are projected to be repaid in full with interest, the Debtors have offered that they may waive the Customer Preference Actions if customers in Classes 5A and 5B vote to accept the Plan.  As drafted, the Plan gives the Debtors wide latitude to pick and choose which Customer Preference Actions to waive and which to pursue without clearly defined parameters to give a creditor sufficient information to know if the Debtors will continue Customer Preference Actions against it despite a vote in favor of the plan and a potential release being provided to the Debtors. Customers have potentially billions of dollars on the line (not to mention significant legal fees in defending themselves from such Customer Preference Actions) and must be informed regarding whether the Debtors have singled them out for litigation or whether the Debtors will waive the Customer Preference Actions against them if they support the Plan.

3.      ***Second****,* if the Debtors choose to single out a customer and pursue Customer Preference Actions (or other avoidance actions), the customer must know if it will then hold a section 502(h) claim against the Debtors, so that it too can be repaid in full with interest like other similarly situated creditors.  However, as drafted, the Plan may leave these customers with no claim against the Debtors and thus no recovery as the Plan proposes to discharge all section 502(h) claims on the Effective Date (which must occur within 90 days following entry of the final Confirmation Order).  Therefore, if confirmed, there is a possibility that the Plan goes effective in 2024, but the Debtors or Wind Down Entities may still be pursuing Customer Preference Actions well into 2025.  Any section 502(h) claims that arise following the conclusion of the Customer Preference Actions will be discharged pursuant to the Plan as drafted.  This doomsday scenario where a creditor has to pay significant sums to the Debtors, receives no claim, but would otherwise

3

have received a full recovery plus interest is a very real possibility for the LayerZero Group and other similarly situated creditors and must be disclosed. Based on the current case management order in the Adversary Proceeding, summary judgment motions are not due until April 25, 2025, with replies due July 25, 2025. Therefore, for any Customer Preference Actions (or other avoidance actions) that the Debtors or the Wind Down Entities successfully litigate, the LayerZero Group (and any similarly situated creditors) may be barred from asserting section 502(h) claims as the Plan will likely go effective before the Adversary Proceeding concludes and such disclosure should be made clear. Even beyond the impact on the LayerZero Group, the Debtors seemingly reserve the right to prosecute any Customer Preference Actions at any time, while eliminating creditors' entitlements to full repayment with interest as holder of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims pursuant to the Plan.

4. **Third**, by continuing the Customer Preference Actions against some creditors but not others in the same class, and unilaterally eliminating all recoveries pursuant to section 502(h) of the Bankruptcy Code for those creditors, the Debtors are proposing a plan that is patently unconfirmable as it violates section 1123(a)(4) by treating similarly situated creditors in the same class differently (i.e. paying some customers in full and giving others no recovery). Sections 1129(a)(1) and (3) are also violated as the Plan unfairly discriminates against certain creditors in Classes 5A and 5B and is being proposed in bad faith as it relates to the treatment of the LayerZero Group for unrelated Causes of Action in an unrelated "Silo" to Classes 5A and 5B.

5. At this time, the Disclosure Statement is devoid of adequate information as to inform creditors of these multiple issues and contingencies. More importantly, the Plan is also patently unconfirmable in its current form for its discriminatory approach to creditors in violation of the Bankruptcy Code and applicable law. The Debtors must be held to the standards set forth

4

in the Bankruptcy Code and applicable law. Until such time, the Disclosure Statement cannot and should not be approved.

## **OBJECTION**

### I.    **Legal Standard**

6.    Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

7.    In the Third Circuit, a disclosure statement is required to contain sufficient information to allow creditors and the Bankruptcy Court to reasonably rely upon the disclosure statement as the basis upon which to evaluate the proposed plan. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (debtor's obligation to provide sufficient information cannot be overemphasized). A disclosure statement should not be approved where the debtor's disclosure is incomplete or inaccurate. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("[D]isclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." (citing *Oneida Motor Freight*, 848 F.2d at 417-18)). The determination of whether a disclosure statement satisfies the statutory requirements of adequate information is made on a case-by-case basis. *See Oneida Motor Freight*, 848 F.2d at 417.

11548256v.1

8.      In considering what constitutes "adequate information," a court is to "consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information."  11 U.S.C. § 1125(a)(1).

9.      Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less.  *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).  It is impossible to "overemphasize the debtor's obligation to provide sufficient data to satisfy the [Bankruptcy] Code standard of 'adequate information.'"  *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (quoting *Oneida Motor Freight*, 848 F.2d at 417).  The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors.  *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)).  The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice as to whether to approve or reject the debtor's plan.  *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999).  The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene.  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

10.     Further, even if disclosure is adequate, a disclosure statement should not be approved if the plan of reorganization if patently confirmable.  *See*, *e.g.*, *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) ("*Skinner III*") ("a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that . . . the plan described by the disclosure statement is patently unconfirmable); *In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed.") (collecting cases); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where . . . it describes a

6

plan which is fatally flawed and thus incapable of confirmation"), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992).

11.    The *Skinner III* decision explains that courts "should not proceed with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable . . . ." *Skinner III* at 154 (citations omitted). A plan is patently unconfirmable where "(1) confirmation 'defects cannot be overcome by creditor voting results' and (2) those 'defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" *Id.* at 154–55 (citation omitted).

## II.    Inadequate Disclosure Regarding Waiver of Customer Preference Actions

12.    Whether the Debtors will waive or prosecute customer preference actions is one of the most fundamental issues for whether creditors in Classes 5A and 5B (Dotcom Customer Entitlement Claims and U.S. Customer Entitlement Claims) vote to accept or reject the Plan.  The Plan and Disclosure Statement do not provide adequate disclosure regarding the waiver of Customer Preference Actions or which preference actions are included in the Excluded Customer Preference Actions.  *See* Plan § 5.5.  The Plan provides that:

> Effective upon the Effective Date, the Debtors and the Wind Down Entities ***may*** waive and not prosecute any Customer Preference Action against any Holder of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims if such Holder duly executes and timely returns a valid Ballot by the Voting Deadline that (i) votes to accept the Plan, and (ii) consents and stipulates to the amount of such Dotcom Customer Entitlement or U.S. Customer Entitlement Claim as set forth in the applicable Ballot for voting, allowance and Distribution purposes; *provided* that notwithstanding anything provided herein, the Debtors shall not waive and release any Excluded Customer Preference Action.

*See* Plan § 5.5.

By stating that the Plan "may" waive Customer Preference Actions rather than "shall" waive Customer Preference Actions, Holders of Dotcom Customer Entitlement Claims and U.S. Customer Entitlement Claims do not know if the Debtors will waive such claims when they vote

to accept or reject the Plan.  Even worse, these creditors might grant a release against the Debtors only to have preference actions brought against them without being able to assert defenses or counterclaims against the Debtors.

13.    The creditors that are subject of the "Excluded Customer Preference Action" are also not clear.  The Disclosure Statement provides that:

> The Debtors shall not designate a Customer Preference Action as an Excluded Customer Preference Action unless the Debtors have determined there is a reasonable basis to conclude that, among other things: (a) the recipient of the applicable preferential payment or transfer (i) was an Insider of any Debtor, (ii) was a current or former employee of the Debtors or of any current or former Affiliate of the Debtors, (iii) may have had actual or constructive knowledge of the commingling and misuse of Customer deposits and corporate funds, or (iv) either (x) changed its know your customer information to facilitate withdrawals from the applicable FTX Exchange or (y) received manual permission from the Debtors to facilitate withdrawals when withdrawals were otherwise halted from the FTX Exchange; or (b) any Debtor has a Cause of Action or a defense against the recipient of the applicable preferential payment or transfer (or a subsequent transferee of the applicable Customer Entitlement Claim) or any of its Affiliates other than a claim arising under a Customer Preference Action.

Disclosure Statement § 4.D.5.

14.    The LayerZero Group, and other similarly situated creditors, have no idea if the adversary proceedings against them are considered Excluded Customer Preference Actions under this definition, particularly under (b) above.  For example, while the Debtors have brought claims against Ari Litan, Skip & Goose, and LayerZero in one complaint in the Adversary Proceeding, the claims relating to Ari Litan and Skip & Goose only relate to Customer Preference Actions related to their FTX US deposits.  While Ari Litan and Skip & Goose have reason to believe that they do not fit into any of the categories enumerated by the Debtors, they have no way of knowing if they are actually included in the Excluded Customer Preference Actions without additional disclosure, and the Debtors have heretofore refused to provide further clarification with respect to the application of these provisions to Ari Litan and Skip & Goose or to justify such application.

Likewise, due to the timing associated with the Adversary Proceeding against the LayerZero Group (and the Debtors' non-disclosure approach), the LayerZero Group will not have these issues addressed until calendar year 2025. The Disclosure Statement and Plan do not provide information on when or if creditors will be notified if they are included in the customer preference waiver or if the Debtors will designate them as an Excluded Customer Preference Action. The Debtors must notify such creditors well in advance of the voting deadline for such creditors to make informed voting decisions.

### III.    Inadequate Disclosure Regarding Section 502(h) Claims

15.    While the LayerZero Group is confident in its defenses in the Adversary Proceeding, to the extent that there was an adverse judgment relating to any of the Debtors' preference claims, the members of the LayerZero Group are entitled to countervailing claims pursuant to section 502(h) of the Bankruptcy Code. This should not be controversial; it is clear black-letter law. *See* 11 U.S.C. § 502(h) ("[a] claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."); *see also* 4 Collier on Bankruptcy ¶ 502.09 (16th ed. 2023) (a creditor that returns a preferential payment will generally "receive a dollar-for-dollar claim for the amount repaid to the estate, placing the creditor in the same position as if the transfer had not occurred."); *and Vanguard Operating, LLC v. Sublette Cty. Treasurer (In re Vanguard Nat. Res., LLC)*, Case No. 17-30560, Adv. Nos. 18-3244, 18-3245, 18-3246, 18-3247, 18-3248, 18-3249, 18-3250, 2020 Bankr. LEXIS 83, at *78 (Bankr. S.D. Tex. Jan. 14, 2020) (citing same).

16.    Notwithstanding the express provisions of the Bankruptcy Code and applicable law, the Plan seeks to discharge section 502(h) claims on the Effective Date without any justification for doing so, and thus, the Debtors intend to preserve their rights to claw back asserted preference liabilities while somehow ignoring and freeing themselves of the associated legal obligation to creditors.

17.    Specifically, the Plan provides that:

[p]ursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge and termination, *as of the Effective Date*, of all Claims of any nature whatsoever, whether known or unknown, against, and Interests in, the Debtors, any property of the Estates, the Plan Administrator or any property of the Wind Down Entities, *including all Claims of the kind specified in section* 502(g), *502(h)* or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Proof of Interest based upon such Claim, debt, right, liability, obligation or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, liability, obligation or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim, liability, obligation or Interest has accepted the Plan.

Plan § 10.2 (emphasis added).

The Effective Date of the Plan must occur within 90 days of the date that the Confirmation Order becomes a Final Order or the Plan is null and void.  *See* Plan at § 9.4.

18.    Section 502(h) claims are contingent until an avoidance action defendant satisfies a debtor's avoidance judgment.  *See Kapila v. Bank of Am., N.A. (In re Pearlman)*, 493 B.R. 878, 888 (Bankr. M.D. Fla. 2013) ("[section] 502(h) *automatically* bestows a claim upon a defendant who satisfies a trustee's avoidance judgment.").  However, given the speed with which the Debtors are seeking to effectuate their Plan, many creditors, including the LayerZero Group, will be prejudiced if the Debtors seek to discharge section 502(h) claims before they are allowed.  The

Debtors must provide additional disclosure to inform these potential creditors when their claims will be barred in the event of an adverse avoidance action judgment.[4]

19.     The Plan and Disclosure Statement also do not make clear how the Debtors will value section 502(h) claims related to Digital Assets.  In the Adversary Proceeding, the Debtors have requested that they be awarded either the return of the subject Digital Assets or a monetary award for their value.  While we do not believe the Debtors will ultimately succeed, if they did, the LayerZero Group would be substantially prejudiced if forced to purchase Digital Assets at their current market prices, and then receive a claim against the Debtors based on the prices in the Digital Asset Table.

20.     The Plan provides that, "[u]nless otherwise expressly provided in the Digital Assets Estimation Order, the value of a Claim in respect of a Digital Asset shall be calculated by converting the value of such Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the Digital Assets Conversion Table."  Plan § 4.4.  The LayerZero Group had previously agreed to resolve its objection to the Digital Asset Estimation Motion because the Debtors modified the Digital Assets Estimation Order to exclude section 502(h) claims.  *See* Digital Asset Estimation Order [Docket No. 7090], at ¶ 8 ("Notwithstanding anything to the contrary in the Motion or this Order, nothing in the Motion, this Order or the Digital Asset Conversion Table, or any evidence offered in support of the foregoing, shall [] alter, affect, determine or estimate the value of any Claim arising under section 502(h) of the Bankruptcy Code".).  It is unclear whether section 4.4 of the Plan in intended to override the negotiated carve out in the Digital Asset Estimation Order and should be clarified.

---

[4]   As noted above, summary judgment motions in the Adversary Proceeding are not due until April 25, 2025 with replies due by July 25, 2025.  The Effective Date might occur well in advance of any adverse judgment against the LayerZero Group and its section 502(h) claims must be preserved.

**IV.    The Debtors' Plan is Patently Unconfirmable**

21.    The Plan is patently unconfirmable because it violates sections 1123(a)(4) and 1129(a)(1) and (3) of the Bankruptcy Code by waiving Customer Preference Actions for some creditors, but arbitrarily pursuing Customer Preference Actions against other similarly situated creditors in the same class.

22.    Bankruptcy Code section 1123(a)(4) provides that "a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). "This equal treatment" provision requires that "all members of the class must receive equal value [and] each member of the class must pay the same consideration for its distribution. *In re Quigley Co.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 121 (D. Del. 2012) (internal citation omitted) ("Federal case law construing [section 1123(a)(4)] has interpreted equal treatment to mean that: (1) all class members must be subject to the same process for claim satisfaction; (2) all class members' claims must be of 'equal value' through the application of the same pro rata distribution or payment percentage procedures to all claims.") , *aff'd*, 729 F.3d 332 (3d Cir. 2013). Thus, section 1123(a)(4) ensures that a fundamental tenet of bankruptcy law—equal treatment of similarly situated claimants—is upheld. *See Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 355 (5th Cir. 1999) (noting general bankruptcy policy of "ensuring equal distribution of the debtor's assets to similarly-situated creditors."). Additionally, a plan that does not comply with section 1123(a)(4) cannot be confirmed as it also violates section 1129(a)(1). *See Braun v. Am.-CV Station Grp., Inc. (In re Am.-CV Station Grp., Inc.)*, 56 F.4th 1302, 1312 (11th Cir. 2023) (finding that a plan was improperly confirmed under section 1129(a)(1) because it did not comply with section 1123(a)(4)).

23.    By putting creditors in the same class where the Debtors are waiving Customer Preference Actions for what appears to be most Dotcom Customer Entitlement Claims and U.S. Customer Entitlement Claims, while continuing to pursue such claims against members of the LayerZero Group and a minority of similarly situated creditors, the Debtors are providing disparate treatment and gerrymandering class acceptance.  This difference is compounded if the Debtors intend to discharge section 502(h) claims after the Effective Date while the Wind Down Entities continue to litigate the Excluded Customer Preference Claims.  Creditors that would have been entitled to a full recovery (indeed, based on the Debtors' projections, an even greater than full recovery) could be left with no recovery if the Plan were confirmed and their claims were invalidly discharged.

24.    The Plan also does not waive the Customer Preference Action against customers whom the Debtors have unrelated Causes of Action.  *See* Plan at § 5.5 ("[t]he Debtors shall not designate a Customer Preference Action as an Excluded Customer Preference Action unless the Debtors have determined there is a reasonable basis to conclude that, among other things . . . any Debtor has a Cause of Action or a defense against the recipient of the applicable preferential payment or transfer (or a subsequent transferee of the applicable Customer Entitlement Claim) or any of its Affiliates other than a claim arising under a Customer Preference Action.").  While the Debtors have proposed a substantive consolidation plan, substantive consolidation "may not be used to disadvantage tactically a group of creditors or to alter creditor rights."  *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).  The Debtors are improperly using claims held by one Debtor to invalidate claims against another rather than to remedy harms caused by the Debtors.  In the Adversary Proceeding, the Debtors in the Alameda Silo have brought completely separate Causes of Action against LayerZero that are unrelated to its claims in Class 5A.  The Debtors have

13

not objected to any of LayerZero's claims and such claims are therefore allowed. *See* 11 U.S.C. 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").[5]  The Debtors cannot treat the members of the LayerZero Group or any other creditor differently based on unrelated claims by different Debtors—such treatment is blatant discrimination in violation of section 1123(a)(4).

25.    Finally, the Debtors' plan is not being proposed in good faith in violation of section 1129(a)(3).  *See In re Tribune*, 464 B.R. 126, 154 (Bankr. D. Del. 2011) (finding the "good faith standard" requires the plan to be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code").  By tying treatment under Classes 5A and 5B to whether or not different Debtors have Causes of Action against a creditor completely unrelated to its claims in Classes 5A or 5B, the Debtors are coercing creditors to settle those claims to benefit from the waiver of Customer Preference Actions.  Further, if these creditors, including those of the LayerZero Group, do not settle their unrelated claims prior to the Effective Date, they may be completely barred from bringing section 502(h) claims and receive no recovery, when they would have otherwise been entitled to more than 100 cents to the dollar—treatment afforded to all other creditors in the subject Classes based on the Debtors' estimates.

*    *    *

26.    For the foregoing reasons, the Disclosure Statement does not provide creditors with sufficient information to which they are entitled and which is critical to making an informed

---

[5]    While the Debtors have sought to disallow the LayerZero Group's claims in the Adversary Proceeding under section 502(d), such claims cannot be disallowed unless there is a final judicial determination that the LayerZero Group is liable. *See In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) ("To disallow a claim under section 502(d) requires a judicial determination that a claimant is liable.").

14

decision about whether to vote to accept or reject the Plan and the Plan itself is patently

unconfirmable. Accordingly, the LayerZero Group respectfully submits that the Court should not

approve the Disclosure Statement or the relief requested in the Motion.

## RESERVATION OF RIGHTS

27.    The LayerZero Group reserves all rights to supplement this Objection based upon

further amendments that may be made to the Disclosure Statement, and further reserves all rights

to object to confirmation of the Plan and the provisions therein on any grounds.

## CONCLUSION

28.    For the foregoing reasons, the LayerZero respectfully requests that the Court deny

approval of the Disclosure Statement and Motion, and grant such other and further relief as is just.


Dated: June 5, 2024
  Wilmington, Delaware


      By: */s/ R. Stephen McNeill*
        M. Blake Cleary (No. 3614)
        R. Stephen McNeill (No. 5210)
        Sameen Rizvi (No. 6902)
        **POTTER ANDERSON & CORROON LLP**
        1313 N. Market Street, 6th Floor
        Wilmington, Delaware 19801
        Telephone: (302) 984-6000
        Facsimile: (302) 658-1192
        Email: bcleary@potteranderson.com
          rmcneill@potteranderson.com
          srizvi@potteranderson.com

        -and-

Brian S. Rosen, Esq.
Dylan J. Marker, Esq.
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036-8299
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email:  brosen@proskauer.com
             dmarker@proskauer.com

 -and-

Jordan E. Sazant (DE Bar No. 6515)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Email: jsazant@proskauer.com

*Counsel to LayerZero Group*

11548256v.1