**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**RE: D.I. 4863, 15521** |

**CELSIUS LITIGATION ADMINISTRATOR'S**
**OBJECTION TO DEBTORS' MOTION FOR APPROVAL OF**
**DISCLOSURE STATEMENT AND RELATED SOLICITATION PROCEDURES**

Mohsin Meghji, as Litigation Administrator (the "Celsius Litigation Administrator") for Celsius Network LLC and its affiliated debtors (collectively, "Celsius"), submits this limited objection (the "Objection") to the *Motion of Debtors for Entry of an Order (i) Approving the Adequacy of the Disclosure Statement; (ii) Approving Solicitation Packages; (iii) Approving the Forms of Ballots; (iv) Establishing Voting, Solicitation and Tabulation Procedures; and (v) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 4863] (the "Motion") which seeks approval of the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading LTD. and its Affiliated Debtors and Debtors-In-Possession* [D.I. 15521] (as proposed and as it may be amended, the "Disclosure Statement") filed by the above-captioned debtors and debtors-in-possession (collectively, the "FTX Debtors"). In support of this Objection, the Celsius Litigation Administrator respectfully states as follows.

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**Preliminary Statement**[2]

1.       Section 1125(b) of the Bankruptcy Code creates an affirmative duty for a debtor to provide creditors with a disclosure statement containing adequate information to enable a creditor to reach an informed judgment about the plan.  But the proposed Disclosure Statement and the Plan, as drafted, omit critical information and contain ambiguous or misleading language that must be clarified to appropriately inform creditors.   By this Objection, the Celsius Litigation Administrator seeks limited relief modifying certain provisions of the Disclosure Statement and Plan in order to properly account for and disclose the existence of certain Preference Actions held against the FTX estates by the Celsius Litigation Administrator.

2.       First, while the Disclosure Statement dedicates seven pages to discuss "Other Cryptocurrency Bankruptcies," it makes no disclosure related to the Celsius Bankruptcy or the Preference Actions.  *See* Disclosure Statement § 3.J (discussing the FTX Debtors' involvement with the bankruptcy proceedings in *Voyager*, *Genesis Global*, *Emergent Fidelity Technologies*, and *BlockFi*).  This omission creates the faulty impression that there are no issues between the FTX Debtors and Celsius relating to Celsius's bankruptcy cases or that any such issues are or will be resolved or addressed by the Plan when in fact, there are a number of unresolved matters. Creditors of the FTX Debtors, including those that are impaired and entitled to vote on the Plan, may be misled by this incomplete disclosure.  At a minimum, the Disclosure Statement must be amended to notify creditors of the Lift Stay Motion and the Celsius Litigation Administrator's intention to commence and prosecute the Preference Actions against the FTX Debtors in the NY Celsius Bankruptcy Court or, if the Lift Stay Motion is not approved, in this Court.  The Disclosure Statement must further explain that, to the extent the Celsius Litigation Administrator is successful

---

[2]    Capitalized terms used but not defined in this Preliminary Statement have the meanings ascribed to them in this Objection and/or the Lift Stay Motion, as applicable.

in prosecuting the Preference Actions, except with respect to the Quoine Actions, certain creditors of the FTX Debtors who are the initial transferees involved in such Preference Actions will not receive their distributions under the Plan because, instead, such distributions would be redirected to Celsius.

3.    Additionally, the treatment of Celsius's claims on account of the Preference Actions is not indicated anywhere in the Plan or Disclosure Statement.  Celsius's claims against the FTX Debtors as immediate or mediate (hereinafter, "subsequent") transferees relate to the same assets and customer accounts as Class 5A and 5B claimants who are initial transferees of avoidable preferences.[3]  However, because of certain nested definitions in the Plan, it is unclear if Celsius's claims on account of the Customer Preference Actions will be classified under Classes 5A or 5B and receive the distributions that would have gone to the initial customer transferees.  The definitions in the Plan and Disclosure Statement must be amended for clarity.

4.    Similarly, the Plan and Disclosure Statement do not mention or provide for Celsius's claims on account of the Quoine Actions.  The proposed treatment of these claims under the Plan must be clarified to allow Celsius to properly evaluate and vote on the Plan.

5.    While the Disclosure Statement should not be approved in its current form, the deficiencies can be resolved by revising (a) Section 3.J of the Disclosure Statement to include a brief description of the Celsius Bankruptcy, the Lift Stay Motion, and the Preference Actions, (b)

---

[3]    The Celsius Litigation Administrator has sought to bring avoidance actions against any FTX entity as a subsequent transferee which may be attributable to an FTX Debtor or an entity in the liquidation of FTX Digital Markets Ltd. (the "Bahamas Liquidation") and its corresponding chapter 15 proceeding.  Based on his investigation (which remains ongoing), the Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received the avoidable transfers belong to an FTX Debtor or an entity in the Bahamas Liquidation.  Accordingly, the Lift Stay Motion includes some claims that may not ultimately be attributable to an FTX Debtor and will continue, instead, against entities in the Bahamas Liquidation.  The Lift Stay Motion only requests authority to lift the automatic stay with respect to the FTX Debtors.  A complementary motion requesting the same relief with respect to the Bahamian entities was filed contemporaneously herewith in the chapter 15 proceeding.  The Celsius Litigation Administrator intends to take necessary discovery following the initiation of the Preference Actions in order to attribute FTX wallets against appropriate entities.

the Plan to make clear that Class 5A and 5B claims include claims on account of the Preference Actions to the extent the FTX Debtors are subsequent transferees of an avoidable preference related to an initial customer transferee and (c) the Plan to provide clear treatment for Celsius's claims on account of the Quoine Actions.  The Court should not approve the Disclosure Statement unless and until corrective material is included to the satisfaction of the Court and the Celsius Litigation Administrator.

## **Background**

### I.      **The FTX Chapter 11 Cases**

6.      On November 11 and November 14, 2022, the FTX Debtors commenced voluntary cases under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On December 16, 2023, the FTX Debtors filed the Motion with their initial plan of reorganization [D.I. 4861] and initial disclosure statement [D.I.  4862].  The plan and disclosure statement were amended on May 7, 2024 [D.I. 14300, 14301] and further amended on May 22, 2024 [D.I. 15520] (as proposed and as it may be amended, the "Plan") [D.I. 15521].

### II.      **The Celsius Chapter 11 Cases**

7.      On July 13, 2022, Celsius filed chapter 11 petitions in the U.S. Bankruptcy Court for the Southern District of New York (the "NY Celsius Bankruptcy Court"), jointly administered as, *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (the "Celsius Bankruptcy").  On January 29, 2024, Celsius filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Modified for MiningCo Transaction)* (the "Celsius Plan"), which was confirmed on November 9, 2023 and became effective on January 31, 2024.  *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 4289, D.I. 3972, D.I. 4298.

8.      Pursuant to the Celsius Plan, the Celsius Litigation Administrator was appointed to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates, including certain preference actions.  The statute of limitations with respect to such actions expires on July 13, 2024.  Accordingly, as described more fully in *The Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* [D.I. 16815] (the "Lift Stay Motion"), the Celsius Litigation Administrator expects to initiate thousands of preference actions against initial and subsequent transferees in the NY Celsius Bankruptcy Court in the coming months.

## III.    Celsius's Claims Against the FTX Debtors

9.      On June 29 and 30, 2023, Celsius timely filed one hundred and three (103) proofs of claim (collectively, the "Proofs of Claim")[4] asserting claims against the FTX Debtors, including (i) a secured claim against Alameda Research Ltd., as borrower, to Celsius under a certain loan in the amount of approximately $14,176,996, (ii) avoidance claims of prepetition transfers pursuant to Sections 547, 548, and 550 of the Bankruptcy Code, and (iii) causes of action against the FTX Debtors including, but not limited to, libel, slander, tortious interference with business relations, tortious interference with contract, tortious interference with business prospects, business

---

[4]     *See* Claim Nos. 3021, 3130, 3140, 3152, 3202, 3232, 3262, 3306, 3320, 3350, 3390, 3454, 3530, 3581, 3586, 3594, 3620, 3623, 3650, 3657, 3678, 3688, 3697, 3703, 3714, 3735, 3747, 3752, 3761, 3780, 3789, 3805, 3807, 3811, 3817, 3818, 3829, 3832, 3843, 3849, 3851, 3853, 3864, 3867, 3882, 3886, 3892, 3899, 3916, 3922, 3925, 3928, 3929, 3931, 3935, 3938, 3939, 3942, 3943, 3945, 3948, 3949, 3957, 3960, 3961, 3963, 3965, 3966, 3973, 3976, 3979, 3980, 3982, 3984, 3985, 3986, 3988, 3990, 3991, 3992, 3994, 3997, 3998, 3999, 4003, 4004, 4006, 4009, 4011, 4012, 4017, 4018, 4021, 4027, 4029, 4035, 4037, 4038, 4054, 4080, 4105, 4118, and 4574.

disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and conspiracy, asserting liability of no less than $2 billion in the aggregate.

**IV.     The Lift Stay Motion and the Preference Actions**

10.     Contemporaneous with this Objection, the Celsius Litigation Administrator filed the Lift Stay Motion in this Court seeking limited relief from the automatic stay to prosecute the Preference Actions in the NY Celsius Bankruptcy Court.  [*See* D.I. 16815].

11.     Celsius's claims on account of the Preference Actions arise from transfers that were made during the ninety (90) day period preceding Celsius's petition date (the "Celsius Preference Period") to or for the benefit of (i) the FTX Debtors as subsequent transferees (the "Customer Preference Actions"), and (ii) FTX Debtor Quoine Pte Ltd. ("Quoine") as initial transferee (the "Quoine Actions," and together with the Customer Preference Actions, the "Preference Actions") which are avoidable under Sections 547 and 550 of the Bankruptcy Code.  As described more fully in the Lift Stay Motion, the Celsius Litigation Administrator has sought relief from the automatic stay in these cases to pursue the Preference Actions in the NY Celsius Bankruptcy Court where thousands of other similar avoidance actions will be filed.

12.     Importantly, the Customer Preference Actions do not seek to deplete the FTX Debtors' estates or otherwise delay implementation of the Plan.  This is because the initial transferees in the Customer Preference Actions are creditors of the FTX Debtors, currently classified in Class 5A and/or Class 5B under the Plan.  In the event that the avoidable transfers are not recovered from the initial customer transferees of Celsius, the Customer Preference Actions seek to recover from the FTX Debtors, as subsequent transferees of the initial customer transferees of Celsius.  This would be achieved by redirecting to Celsius, in satisfaction of the avoidance claims, certain payments that the FTX Debtors propose to be distributed to their creditors (*i.e.*, Celsius's initial customer transferees) under the Plan.  Thus, the relief sought would not interfere

with the Plan, only with the final recipient of certain Plan distributions. The Celsius Litigation Administrator also seeks to file and prosecute the Quoine Actions against Quoine as an initial transferee.

**Objection**

**I.**     **The Disclosure Statement Lacks Adequate Information Necessary for Creditors' Evaluation of the Plan.**

13.     Under Section 1125(b) of the Bankruptcy Code, a debtor has an affirmative duty to provide a disclosure statement containing adequate information to enable a creditor to reach an informed judgment about the plan. *See In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991) (denying approval of disclosure statement when various disclosures were inadequate). As the primary source of information upon which creditors rely in making an informed judgment about a plan of reorganization, the disclosure statement must provide sufficient information to enable an impaired class to evaluate a plan. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information.") (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)).

14.     Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

[I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 U.S.C. § 1125(a)(1).

15.     The adequacy of information in a disclosure statement is determined on a case-by-case basis through the factual circumstances at hand. *Oneida Motor Freight*, 848 F.2d at 417

7

(citing H.R. Rep. No. 595, 97th Cong., 1st Sess. 266 (1977)).  Section 1125 sets a floor for adequate information, not a ceiling, and favors disclosure.  *In re Ferretti*, 128 B.R. at 20; *see also Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) (Noting that Section 1125 "sets a floor, not a ceiling").  Section 1129(a)(2) conditions confirmation of the FTX Debtors' Plan on its compliance with the adequate information disclosure requirements of Section 1125.  *See* 11 U.S.C. § 1129(a)(2); *see also In re Diocese of Camden, New Jersey*, 653 B.R. 309, 340 (Bankr. D.N.J. 2023).

16.    Here, the Disclosure Statement lacks adequate information on critical issues that impact creditors' decision to vote to accept or reject the Plan including (a) adequate information regarding Celsius and the Preference Actions and (b) the treatment of Celsius's claims on account of the Preference Actions.  Accordingly, the Disclosure Statement should not be approved unless the issues raised in this Objection are fully addressed and appropriate disclosures are incorporated in a further revised Disclosure Statement and Plan.

### A. The Disclosure Statement Does Not Provide Any Information Regarding Celsius or the Preference Actions.

17.    The Disclosure Statement lacks any information regarding the Preference Actions and is therefore insufficient.  Section 3.J of the Disclosure Statement, titled "Other Cryptocurrency Bankruptcies", includes disclosures related to the FTX Debtors' involvement in the *Voyager*, *Genesis Global*, *Emergent Fidelity Technologies*, and *BlockFi* bankruptcy cases, including certain preference actions initiated by the FTX Debtors in connection with such proceedings, claims submitted on behalf of, and against, the FTX Debtors, and settlements and/or stipulations reached with the debtors in *Voyager*, *Genesis*, and *BlockFi*.  *See* Disclosure Statement § 3.J.  Of the notable cryptocurrency bankruptcies involving claims by and/or against the FTX Debtors, only Celsius is omitted from the Disclosure Statement.  The Disclosure Statement makes no mention of the

Celsius Bankruptcy, Celsius's Proofs of Claim in these cases, the Lift Stay Motion, or the Preference Actions. While some of these developments are too recent to have been included in the draft Disclosure Statement, the final version must be amended to include these details in order to provide creditors with complete and "adequate" information. Absent amendment, the Disclosure Statement incorrectly implies that all issues with respect to other cryptocurrency bankruptcy cases are resolved or addressed by the Plan when, in fact, there are unresolved matters related to Celsius.

18.    At a minimum, the Disclosure Statement must be amended to notify creditors of the Lift Stay Motion and the Celsius Litigation Administrator's intention to bring the Preference Actions against the FTX Debtors in the NY Celsius Bankruptcy Court or, if the Lift Stay Motion is not approved, in this Court. With respect to Customer Preference Actions, the Disclosure Statement must be amended to notify members of Classes 5A and 5B that if they are or become defendants in preference avoidance actions in the Celsius Bankruptcy, their distributions under the Plan would be redirected to Celsius to satisfy Celsius's claims to the extent that the FTX Debtors are found to be subsequent transferees.

19.    Additionally, with respect to the Quoine Actions, the Disclosure Statement must properly disclose that the Celsius Litigation Administrator is seeking to avoid certain transfers by Quoine, as a customer of Celsius. All claimants should also be on notice that claims on account of the unresolved Quoine Actions may have an impact on the FTX Debtors' estates. Quoine was a customer of Celsius that held an "Earn" account with Celsius. Assets deposited into "Earn" accounts were Celsius's property. *In re Celsius Network LLC*, 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023). Celsius's records show that during the Celsius Preference Period, Quoine withdrew assets from the Celsius cryptocurrency exchange platform. As a result, Celsius holds a preference claim

of approximately $67 million against Quoine.  Creditors should be informed of this preference claim and the Celsius Litigation Administrator's intent to pursue the Quoine Action in the NY Celsius Bankruptcy Court or, if the Lift Stay Motion is not granted, this Court.

**B. The Disclosure Statement Does Not Provide Adequate Information Regarding the Treatment of Celsius's Claims on Account of the Preference Actions and both the Plan and Disclosure Statement Must Be Revised Prior to Solicitation.**

20.    The treatment of Celsius's claims on account of the Preference Actions is also unclear from the plain language of the Plan and Disclosure Statement.  In order to properly evaluate the Plan, the Celsius Litigation Administrator requires clear disclosure on how its claims on account of the Preference Actions will be treated, including specificity with regard to their classification under the Plan.

21.    The Customer Preference Actions derive from certain claims held by Celsius against their customer claimants (as initial transferees) who themselves hold customer claims against the FTX Debtors that are classified under Classes 5A and/or 5B of the Plan.  Celsius's claims against the FTX Debtors as subsequent transferees relate to the same assets and customer accounts as Class 5A and 5B initial transferees.  However, it is unclear if Celsius's claims on account of the Customer Preference Actions will be included in Class 5A or 5B, as applicable, as opposed to some other class under the Plan.

22.    Specifically, the Plan defines Class 5A Dotcom Customer Entitlement Claims to include, among other things, any "Customer Entitlement Claim against the FTX.com Exchange . . ."  Plan 2.1.64.  The Plan also defines Class 5B U.S. Customer Entitlement Claims to include, among other things, any "Customer Entitlement Claim against the FTX.US Exchange (including the Alameda U.S. Customer Claim) that is not a FTT Customer Entitlement Claim or a NFT

Customer Entitlement Claim. . .” Plan 2.1.190. The Plan defines “Customer Entitlement Claim” to mean:

> any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity against any of the Debtors that compensates the Holder of such Claim for the value as of the Petition Date of Cash or Digital Assets *held by such Person or Entity in an account on any FTX Exchange*.

Plan 2.1.45 (emphasis added). Read literally, a claimant only can be classified in Class 5A or Class 5B if the person or entity held an account on any FTX exchange. Celsius, as a non-FTX account holder with respect to the Customer Preference Actions, is potentially excluded from Class 5A and/or Class 5B, even though its claims relate to customer accounts for which the initial transferees are classified in Class 5A or Class 5B.

23.     The Customer Preference Actions relate to *customer* withdrawals from Celsius accounts and *customer* deposits on the FTX.com exchange. The claims also relate to the same assets and customer accounts as existing Class 5A and Class 5B claims. Failing to classify Celsius's claims in the same class as the initial transferees is discriminatory and the Disclosure Statement and Plan must be modified prior to solicitation. The Plan should also be modified to provide that all distributions on account of allowed claims to FTX customers in Classes 5A and 5B who are initial transferees in the Customer Preference Actions will be delayed and held back until the Customer Preference Actions are resolved and the distributions related thereto can be properly directed to Celsius or the FTX customers, as applicable.

24.     Additionally, the Plan and Disclosure Statement must include information regarding the treatment of Celsius's claims on account of the Quoine Actions for Celsius to evaluate the Plan and vote its claims.

### Reservation of Rights

25.     The Celsius Litigation Administrator expressly reserves the right to supplement or amend this Objection and raise any additional objections related to the Plan and Disclosure Statement.  Further, the Celsius Litigation Administrator reserves the right to respond, further object, join in, or amend any objection herein with respect to any argument or objection made by any person relating to the Motion, the Disclosure Statement, the Plan, or any hearing in connection therewith.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Celsius Litigation Administrator respectfully submits that the Court deny the relief requested in the Motion unless certain modifications addressed in this Objection are made to the Disclosure Statement and the Plan, and grant such other and further relief as may be just and proper.


*[Remainder of Page Intentionally Left Blank]*

Dated:  June 5, 2024
       Wilmington, Delaware       **COLE SCHOTZ, P.C.**

/s/ *Justin R. Alberto*
_____

Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
Melissa M. Hartlipp (No. 7063)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email:  jalberto@coleschotz.com
        preilley@coleschotz.com
        mhartlipp@coleschotz.com
-and-
**PRYOR CASHMAN LLP**
Seth H. Lieberman, Esq.
Richard Levy, Jr., Esq.
Andrew S. Richmond, Esq.
7 Times Square, 40th Floor
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Email: slieberman@pryorcashman.com
       rlevy@pryorcashman.com
       arichmond@pryorcashman.com

*Counsel to the Celsius Litigation Administrator*