# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | RE: Doc. No. 4863 |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CENTER FOR APPLIED RATIONALITY, LIGHTCONE INFRASTRUCTURE, INC., AND LIGHTCONE ROSE GARDEN LLC TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION PACKAGES; (III) APPROVING THE FORMS OF BALLOTS; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR THE CONFIRMATION OF THE PLAN

The Center For Applied Rationality, Lightcone Infrastructure, Inc. and Lightcone Rose Garden LLC (collectively, the "Objectors"), by and through their undersigned counsel, submit this limited objection and reservation of rights (the "Limited Objection") to the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [Doc. No. 4863] (the "Approval and Procedures Motion") and in support thereof state as follows:

### PRELIMINARY STATEMENT

1. The Debtors' proposed Amended Disclosure Statement fails to meet the requirements of Section 1125 of the Bankruptcy Code. First, the Amended Disclosure Statement fails to address how, if at all, the Plan will affect the claims asserted by the Debtors in the Adversary Proceeding. The Objectors file this Limited Objection, *inter alia*, to reserve

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

1

and preserve any and all rights, claims and defenses they have or could have in the Adversary Proceeding.

2. Second, the Adversary Proceeding is premised on the fact that the Debtors are somehow entitled to recover property that they stole. The Amended Disclosure Statement lacks adequate information in this regard. It is well-documented that the Debtors stole customer property under their Terms of Service, which are governed by English law. It is well-settled under English Law that a thief cannot transfer title to stolen goods under the legal principal of *nemo dat quod non habet* (He who hath not cannot give.). On the Petition Date, the Debtors did not hold title to the customers' property. Thus, they could not transfer such property to the Debtors' estates. How the Debtors avoid this reality to pursue claims against parties such as the Objectors is not explained anywhere in the Amended Disclosure Statement.

## JURISDICTION AND STANDING

3. Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

4. The Objectors have standing to be heard on this Limited Objection pursuant to 11 U.S.C. § 1109(b). On May 13, 2024, the Debtors filed the *Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 105, 544, 548, and 550 and Del. Code Ann. Tit. 6*, §§ *1304, and for Disallowance of Claims Pursuant to 11 U.S.C. § 502* (the "Adversary Complaint") in the adversary proceeding styled as *FTX Trading Ltd., et al. v. Center for Applied Rationality, et al.* (Adv. Proc. No. 24-50066) (the "Adversary Proceeding"). Through the Adversary Proceeding, the Debtors seek to recover more than $4.9 million (the "Transfers") from the Objectors, including more than $2.9 million of grants allegedly paid to the Objectors by a non-debtor affiliate based on the premise that the Debtors fraudulently

2

ME1 48670071v.2

transferred such stolen property to the Objectors.[2] As the terms of the Amended Plan could affect the claims, cross-claims, counterclaims and defenses that the Objectors intend to assert in the Adversary Proceeding, they have standing to be heard.

## FACTUAL BACKGROUND

5. On and after November 11, 2022, the Debtors filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

6. On December 15, 2022, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee"). Doc. No. 231.

7. On December 16, 2023, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Doc. No. 4861]; the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [Doc. No. 4862]; and the Approval and Procedures Motion [Doc. No. 4863].

8. On May 22, 2024, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading LTD. and its Debtor Affiliates* [Doc. No. 15520] (the "Amended Plan") and *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. And Its Affiliated Debtors and Debtors-in-Possession* [Doc. No. 15521] (the "Amended Disclosure Statement") and *Notice of Filing of Blacklines of Revised Plan and Revised Disclosure Statement* [Doc. No. 15522] (the "Blacklines").

9. On May 23, 2024, the Debtors filed the *Notice of Rescheduled Hearing Regarding Motion of Debtors for Entry of an Order (I) Authorizing and Approving Entry Into, and Performance Under, the Collateral Claim Settlement Agreement, the Inter-Debtor*

---

[2] Additional factual background regarding the parties to and alleged basis for the Adversary Proceeding is set forth in the Complaint and incorporated herein by reference.

*Restructuring Agreement and the Restructuring Payment Agreement and (II) Granting Related Relief* [Doc. No. 15655] (the "Disclosure Statement Hearing Notice").

10. The Debtors' exclusivity period has been extended numerous times [Doc. Nos. 1276, 2698, 6680, and 9584], and the current exclusivity period for Emergent Fidelity Technologies Ltd. ("Emergent") is set to expire on June 27, 2024.

## LIMITED OBJECTION

11. The Objectors file this Limited Objection to preserve and protect any and all rights, claims, counterclaims, cross-claims and defenses they hold in the Adversary Proceeding.

A. **GOVERNING LAW**

12. Section 1125 of the Bankruptcy Code prevents the Debtors from soliciting approval of the Plan unless they first provide a disclosure statement containing "adequate information" regarding a confirmable plan. 11 U.S.C. § 1125(b); *see also*, *In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan. ...

11 U.S.C. § 1125(a)(1); *see also*, *Momentum Mfg. Corp. v. Employee Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin. Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

13. The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] ... the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest*

4

ME1 48670071v.2

*Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc*.), 848 F.2d 414 (3d Cir. 1988)).

14. The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 225 F.3d 224, 248 (3d Cir. 2000).

B. **THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION REGARDING THE IMPACT OF THE PLAN ON THE ADVERSARY PROCEEDING**

15. The Plan contains a number of undefined, overly broad and potentially illegal release and exculpation provisions. Doc. No. 15520, §§ 10.3-10.10. Of relevance to the Approval and Procedures Motion, the Objectors are unable to interpret the full impact of such proposed language on any rights, claims, cross-claims, counterclaims and defenses they may assert in the Adversary Proceeding until the Plan Supplement is filed. For example, it is inefficient for the Objectors to expend resources interpreting whether the lien releases in Section 10.3 of the Amended Plan apply to the stolen customer funds unless and until they are aware whether the Adversary Proceeding is identified as a preserved claim in the Plan Supplement. The Objectors reached out to Debtors' counsel seeking to obviate the need for an objection, but have not received any response. Thus, as the Amended Disclosure Statement fails to provide adequate information for the Objectors to determine the impact of the Amended Plan on the Adversary Proceeding, the Objectors file this Limited Objection to reserve and preserve any and all rights to challenge the Plan at the time of confirmation.

C. **DEBTORS CANNOT TRANSFER STOLEN ASSETS TO A WIND DOWN TRUST**

16. Section 541(a) of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11

U.S.C. § 541(a)(1). The Third Circuit has interpreted this phrase inclusively, "to bring into the estate all interests of the debtor, whether tangible or intangible, at the commencement of the case." *Safety-Kleen Creditor Trust v. Eimco Process Equip. Co. (In re Safety-Kleen Corp.),* 331 B.R. 591, 594 (Bankr. D. Del. 2005); *see also In re Kane,* 628 F.3d 631, 637 (3d Cir. 2010) ("Section 541(a) was intended to sweep broadly [and] to include all kinds of property, including tangible or intangible property, [and] causes of action.") (quoting *Westmoreland Human Opportunities, Inc. v. Walsh,* 246 F.3d 233, 241 (3d Cir. 2001)).

17. The expansive scope of a Debtor's estate is tempered, however, by subsequent provisions of the Bankruptcy Code. Among other things, section 541(b)(1) of the Bankruptcy Code expressly excludes "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). When interpreting this provision, the Supreme Court noted "that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205, n.10 (1983).

18. Similarly, section 541(d) of the Bankruptcy Code excludes:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). When interpreting this section, the Third Circuit has held that, "[t]he legislative language of § 541 makes clear that funds held by a debtor for a third party are not part of the debtor's bankruptcy estate." *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir.1994). In other words, if, as of the Petition Date, "the debtor holds legal, but not equitable, title to property, it is excluded from the estate pursuant to § 541(d)." *Ryan v. Branko Prpa MD, LLC,* 55 F.4th 1108, 1112 (7th Cir. 2022).

19.  The scope of a Debtor's estate is "within the jurisdiction of the Bankruptcy Court." *Navarro v. Patriot Nat'l, Inc. (In re Patriot Nat'l, Inc.)*, 623 B.R. 696, 706 (D. Del. 2020).

20.  Here, there is no dispute that, as of the Petition Date, the Debtors, at most, only held legal title to customers' Digital Assets.[3]  Among other things, the Debtors admit that their business ventures, were "all paid for using comingled and misappropriated funds."  Doc. No. 1727, ¶ 4.  Furthermore, the clear and unambiguous Terms of Service, as well as public records, including statements by the Debtors, the CFTC, the SEC, guilty pleas by former controllers of the Debtors and testimony in Samuel Bankman-Fried's criminal trial support the unequivocal conclusion that the Debtors seek to distribute stolen Digital Assets.  The Objectors incorporate by reference all prior filings in this bankruptcy proceeding regarding whether customer assets are property of the Debtors' estates.  Based on the undisputed evidence, including the Debtors' own admission, the Digital Assets held in customer accounts are not, and never have been, the property of any of the Debtors' estates.

21.  Under English Law, they, therefore, cannot be distributed by the Debtors through the Amended Plan or, more importantly to the objectors, recovered by the Debtors' estates (or any successors in interest thereto).  *See Marilyn E. Phelan, Cultural Property: Who Owns It and What Laws Protect It?, 74 Tex. B.J. 202, 205 (2011)* (identifying that, under the nemo dat rule, title remains with the original owner from whom the property was stolen).

22.  As the Amended Disclosure Statement fails to address why the legal maxim of *nemo dat quod non habet* does not apply to the Debtors' estates, it does not contain adequate information and the Approval and Procedures Motion must be denied.

---

[3] Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them as in the Disclosure Statement.

**RESERVATION OF RIGHTS**

23. The Objectors expressly reserve the right to assert substantive objections to the confirmation of the Amended Plan (or any subsequently proposed plan), including, without limitation, the right to: (i) submit additional briefing concerning the Debtors' and the Amended Plan's compliance with Bankruptcy Code Section 1129; and (ii) challenge any provision of the Amended Plan which may in any way affect any of their potential claims, rights, counterclaims, cross-claims and defenses in the Adversary Proceeding. All of Objectors' rights, claims and defenses with respect to such matters are hereby expressly reserved. The Objectors further reserve the right to modify, supplement, or amend this limited objection and to otherwise be heard on all such matters at the confirmation hearing and in the Adversary Proceeding.

**CONCLUSION**

WHEREFORE, Center For Applied Rationality, Lightcone Infrastructure, Inc. and Lightcone Rose Garden LLC respectfully request that the Court deny the Approval and Procedures Motion filed by the Debtors and grant such other and further relief as the Court deems just and proper.

**MCCARTER & ENGLISH, LLP**

Date: June 5, 2024

*/s/ Kate Roggio Buck*
Kate Roggio Buck (No. 5140)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
Tel: 302-984-6300
Fax: 302-984-6399
Email: kbuck@mccarter.com

*Counsel for Center For Applied Rationality, Lightcone Infrastructure, Inc. and Lightcone Rose Garden LLC*

ME1 48670071v.2