**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | RE: Doc. No. 4863 |

**OBJECTION AND RESERVATION OF RIGHTS OF
AHMED ABD EL-RAZEK, SUNIL KAVURI, PAT RABBITTE AND
NOIA CAPITAL SARL TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT;
(II) APPROVING SOLICITATION PACKAGES; (III) APPROVING THE
FORMS OF BALLOTS; (IV) ESTABLISHING NOTICE AND OBJECTION
PROCEDURES FOR THE CONFIRMATION OF THE PLAN**

Ahmed Abd El-Razek, Sunil Kavuri, Pat Rabbitte and Noia Capital SARL (collectively, the "Objectors"), by and through undersigned counsel, submit this objection and reservation of rights (the "Objection") to the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 4863] (the "Approval and Procedures Motion") and in support thereof state as follows:

**PRELIMINARY STATEMENT[2]**

1.    The Debtors' proposed Disclosure Statement filed on May 22, 2024 (the "Disclosure Statement") fails to meet the requirements of Section 1125 of the Bankruptcy Code for several reasons, which are set forth below.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.
[2] All capitalized terms used but not otherwise defined in this Preliminary Statement shall have the same meaning ascribed to them as subsequently defined *infra*.

2.      First,  the Plan is unconfirmable as a matter of law.  When a Disclosure Statement describes an unconfirmable plan, the Court need not move forward.  *See, e.g. In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3d Cir. 2012)("a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable."  Here, the Plan cannot be confirmed for multiple reasons.

3.      As described more fully below, the Plan is filled with a multitude of releases, including those in favor of non-Debtor parties, which are not adequately described and are not permissible.   The recipients of these releases are cloaked behind a wall of densely-worded yet highly ambiguous defined terms, and it remains difficult to discern the identity of all the persons and entities who would receive releases.  It is unclear what, if any, claims exist against the released parties, what consideration, if any, has been provided for this release and why such a broad release is in the best interests of the estate.  Moreover, the scope of the Debtors' release is exceptionally broad and includes claims "existing or hereafter arising" concerning anything remotely related to this case or the Debtors.

4.      Further, the release contained in Section 10.5 by the "Releasing Parties" is non-consensual.  Finally, Exculpated Parties are included in the Debtors' Release, and there is no explanation as to why Exculpated Parties should benefit from both a release and exculpation.  For the reasons set forth herein, the Objectors believe that no releases should be permitted under this Plan.

5.       Additionally, Section 10.2 of the Plan improperly purports to grant the Debtors a discharge.  However, the Debtors may not be discharged under 1141(d)(3).  Pursuant to Section 1141(d)(3), the confirmation of a chapter 11 plan does not discharge a debtor if (1) the plan provides for the liquidation of all or substantially all of the property of the estate; (2) the

2

debtor does not engage in business after consummation of the plan; and (3) the debtor would be denied a discharge under section 727(a) … if the case were a case under chapter 7 of [the Bankruptcy Code].  Section 1141(d)(3) is written in the conjunctive; "if any one provision does not apply, confirmation of a plan results in the discharge of debt." *In re River Capital Corp.*, 155 B.R. 382, 387 (Bankr. E.D. Va. 1991).  According to the Disclosure Statement, each of these three conditions will be satisfied following confirmation.

### The Plan Does Not Satisfy the Best Interests Test

Second, the Plan cannot be confirmed because it does not satisfy the best interests test under Section 1129(a)(7).  Under the Debtors' proposed Plan, distributions will be in cash with no option for a holder to elect to receive an "in kind" distribution, which creates a forced sale of a customer's digital assets as of the Petition Date.  Because the Debtors state  that they will take the position that this "forced exchange" is a taxable event, it will inflict additional hardships on customers through forced taxation that could be avoided by making an "in kind" distribution.

### The Disclosure Statement is Outdated, Incomplete and Must Be Revised

6.      Third, the information contained in Section 3 of the Disclosure Statement filed on May 22, 2024, which describes important events in these proceedings, does not include significant subsequent events bearing on material issues in these matters, which must be incorporated in a revised Disclosure Statement.   For example, soliciting approval of the Plan without a revised statement of the Debtors' agreement with the IRS would be false and misleading.

7.      Fourth, any order approving the disclosure statement should require the Debtors to file the Plan Supplement at least one week prior to the voting deadline.  The timeline currently proposed by the Debtors could permit the Plan Supplement to be filed after the Voting Deadline has passed.  *See* Doc. No. 4863, at *4 (proposing that the Plan Supplement Filing Deadline be

ME1 47657999v.3

one week prior to the Confirmation Objection Deadline, which could be as short as three weeks prior to the proposed Confirmation Hearing Date, while the Voting Deadline could occur at 4:00 p.m. that same day, four weeks prior to the proposed Confirmation Hearing).  Given that the Debtors frequently file their hearing agenda after noon on the second business day before the hearing, the Objectors are concerned that the 4 p.m. deadline could pass prior to receipt of a full and complete picture of how the Plan will truly affect their claims.  Given the complexities of this case, the Objectors request that the Debtors be required to file their Plan Supplement at least 14 days before their deadlines to vote or object to the Plan.

8.      Fifth, the Disclosure Statement ignores the 500 pound gorilla that has filled the room since the moment the Debtors' respective Petitions were filed – whether the assets the Debtors seek to distribute through the Plan are actually property of the Debtors' estates. Multiple parties have previously briefed this issue to the Court.  The Objectors incorporate, by reference, all prior arguments that customer funds are not property of the Debtors' Estates.

9.      Sixth, the Disclosure Statement fails to inform creditors of projected recoveries from adversary proceedings.   Among other things, Note E to Appendix D removes "miscellaneous assets" from the definition of the Debtors' other assets.  Yet, the Plan still reserves the right to file a Plan Supplement identifying Causes of Action, Customer Preference Actions, Excluded Customer Preference Actions and, most importantly, "Preserved Potential Claims," which "means the Causes of Action set out in the Plan Supplement."  Doc. No. 15520, at *17.  Such disclosure should include an estimate and description of the Debtors' estates' significant claims against Binance (which must be pursued by conflicts counsel given Sullivan & Cromwell's efforts to serve as the independent watchdog of this competitor).  Assuming the costs of these actions will be less than the Debtors' recoveries therefrom, the Debtors' Disclosure Statement should estimate and disclose the amount of such claims.

10.     Seventh, even without the miscellaneous assets, Appendixes C and D are inconsistent.  In Appendix C, the Debtors project $102 million more in assets than they allocate to creditors.  Doc. No. 15521-3, at *8 (Total Class 1 through 7 Claims of $11,787 million + Total post-petition interest of $2.517 billion  + total subordinated claims of $306 million = $14.610 billion, $102 million less than the net distributable proceeds of $14.712 billion.).   In Appendix D, the Chapter 7 Analysis fails to include any recoveries for convenience classes (Class 7A-C) and the Comparison Chart indicates that the Debtors would have $377 million more in a Chapter 7 bankruptcy.  Given these discrepancies, the Debtors cannot actually conclude in good faith that "the Plan will provide all Holders of Allowed Claims who are entitled to vote and have not otherwise accepted the Plan with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code."  D.I. 15521-4, at *4.  At best, the Debtors' decision to compare what it considers to be the highest grossing chapter 7 scenario with the lowest grossing chapter 11 scenario is confusing and, given the discrepancies, misleading to creditors.

## JURISDICTION AND STANDING

11.     Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

12.     The Objectors are FTX.com customers.  As such, they have standing to be heard on this Limited Objection pursuant to 11 U.S.C. § 1109(b).

## FACTUAL BACKGROUND

13.     On and after November 11, 2022, the Debtors filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

5

14.     On December 15, 2022, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").  Doc. No. 231.

15.     On December 16, 2023, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Doc. No. 4861]; the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [Doc. No. 4862]; and the Approval and Procedures Motion [Doc. No. 4863].

16.     On May 22, 2024, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading LTD. and its Debtor Affiliates* [Doc. No. 15520] (the "Plan") and *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. And Its Affiliated Debtors and Debtors-in-Possession* [Doc. No. 15521] (the "Disclosure Statement") and *Notice of Filing of Blacklines of Revised Plan and Revised Disclosure Statement* [Doc. No. 15522] (the "Blacklines").

17.     On May 23, 2024, the Debtors filed the *Notice of Rescheduled Hearing Regarding Motion of Debtors for Entry of an Order (I) Authorizing and Approving Entry Into, and Performance Under, the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement and the Restructuring Payment Agreement and (II) Granting Related Relief* [Doc. No. 15655] (the "Disclosure Statement Hearing Notice").

18.     The Debtors' exclusivity period has been extended numerous times, with the current exclusivity period for Emergent Fidelity Technologies Ltd. ("Emergent") set to expire on June 27, 2024.  *See*, *e.g.*, Doc. Nos. 1276, 2698, 6680, and 9584

## **OBJECTION**

19.     The Court should not approve the Disclosure Statement because it does not contain adequate information as required by section 1125 of the Bankruptcy Code.

ME1 47657999v.3

A.      **GOVERNING LAW**

20.     Section 1125 of the Bankruptcy Code prevents the Debtors from soliciting approval of the Plan unless they first provide a disclosure statement containing "adequate information" regarding a confirmable plan.  11 U.S.C. § 1125(b); *see also*, *In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).  The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan. ...

11 U.S.C. § 1125(a)(1); *see also*, *Momentum Mfg. Corp. v. Employee Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin. Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

21.     The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] ... the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).

22.     The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988).  Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions.  The disclosure requirement of section 1125 is one of those provisions.  *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 225 F.3d 224, 248 (3d Cir. 2000).

ME1 47657999v.3

**B.     THE PLAN CANNOT BE CONFIRMED AND DOES NOT SATISFY THE BEST INTERESTS TEST**

23.     The Debtors' Disclosure Statement describes certain releases, discharges and injunctions that will take effect upon confirmation, which as set forth below are improper and render the Plan unconfirmable as a matter of law.   When a Disclosure Statement describes an unconfirmable plan, the Court need not move forward.  *In re American Capital Equipment, LLC*, 688 F.3d at 154; *see also In re Main St. AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a court may disapprove of a disclosure statement ... if the plan could not possibly be confirmed."); *In re Felicity Assocs.*, 197 B.R. 12, 14 (Bankr. D. R.I. 1996) (same); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990) (same); Lawrence P. King, 7 *Collier on Bankruptcy* ¶ 1125.03[5] (15th Ed. Rev. 2004) ("most courts will not approve a disclosure statement if the underlying plan is clearly unconfirmable on its face").   "A plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Skinner*, 688 F.3d at 154–55.

24.     Article 10 of the Plan is filled with a multitude of releases, including those in in favor of non-Debtor parties.   The recipients of these releases are cloaked behind a wall of densely-worded yet highly ambiguous defined terms, and it remains difficult to discern the identity of all the persons and entities who would receive releases.  For the reasons set forth herein, the Objectors believe that no releases should be permitted under this Plan; nonetheless, to the extent that a Plan containing proposed releases is solicited at a later date, the disclosure statement should include a schedule identifying every single entity that is the beneficiary of a release/exculpation.

25.     Pursuant to Section 1141(d)(3), the confirmation of a chapter 11 plan does not discharge a debtor if (1) the plan provides for the liquidation of all or substantially all of the property of the estate; (2) the debtor does not engage in business after consummation of the

8

plan; and (3) the debtor would be denied a discharge under section 727(a) … if the case were a case under chapter 7 of [the Bankruptcy Code].  Section 1141(d)(3) is written in the conjunctive; "if any one provision does not apply, confirmation of a plan results in the discharge of debt." *In re River Capital Corp.*, 155 B.R. 382, 387 (Bankr. E.D. Va. 1991).

26.    According to the Disclosure Statement, each of these three conditions will be satisfied following confirmation.  Despite this, Section 10.2 of the Plan purports to grant the Debtors a discharge.  *See* Section 10 ("to the fullest extent permitted by the Bankruptcy Code . . . the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge and termination, as of the Effective Date, of all Claim ….)(emphasis supplied).  Similarly, Section 10.9 of the Plan (Injunction) provides that "the satisfaction and release pursuant to this Article 10 shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Interests or Causes of Action." *See* Section 10.9 (emphasis supplied).

27.    In order to comply with the clear language of Section 1141(d)(3), Sections 10.2 and 10.9 should be deleted and the Plan should state that the Debtors are not entitled to a discharge.  *See, e.g., In re New Towne Dev.*, LLC, 410 B.R. 225, 232 (Bankr. M.D. La. 2009) (a liquidating chapter 11 plan for a corporate debtor improperly included third-party releases and permanent injunctions—effectively a discharge—where the liquidating debtor itself could not receive a discharge under sections 1141(d)(3) and 727(a)(1)).

28.    Since the Debtors are not entitled to a release, third parties cannot be entitled to releases under a plan.  The Bankruptcy Code only authorizes a release and injunction of claims against a non-debtor in one very narrow scenario, which is not applicable here. *See* 11 U.S.C. § 526(g) (establishing specific procedures and conditions for resolving asbestos ligation claims against a debtor, including creating a trust to satisfy potential future claims).  Therefore, to the extent any of claims at issue may be subject to the Plan's injunction and/or release provisions,

9

those provisions are clearly not authorized by any provisions of the Bankruptcy Code. Thus, many courts refuse to grant non-debtor releases altogether and others only grant such releases in rare circumstances. Historically, Courts have been very reluctant to grant the benefits of a bankruptcy discharge to non-debtors. *See SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 960 F.2d 285, 293 (2d Cir. 1992); *Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),* 280 F.3d 648, 657 (6th Cir. 2002); *Resorts International, Inc. v. Lowenschuss (In re Lowenschuss),* 67 F.3d 1394, 1401 (9th Cir. 1995); *Feld v. Zale Corporation (In re Zale Corp.),* 62 F.3d 746, 760 (5th Cir. 1995); and *Landscaping Diversified Property II v. First National Bank and Trust CO. of Tulsa (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 600 (10th Cir. 1990).

29.    The Third Circuit in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) held that a debtor must satisfy its burden of proof and establish through specific factual findings that non-debtor third-party releases are fair and necessary for the plan of reorganization. *See also Deutsche Bank AG London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005). A debtor must demonstrate and establish that the "release was *itself* important to the plan – which is what *Drexel Burnham* at a minimum requires." *Metromedia*, 416 F.3d at 143 (emphasis in original).

30.    As a threshold question, the Court must determine whether or not it even has jurisdiction to determine the validity of the Plan release and injunction provisions as they relate to the claims against non-debtors by third parties. In *Continental Airlines*, 203 F.3d at 211, 214 n.12, the Court expressed its concern "that the Bankruptcy Court apparently never examined its jurisdiction to release and permanently enjoin [the third party's] claims against non-debtors." While certain matters between non-debtor third parties affecting the debtor and the bankruptcy case may be within the subject matter of the Court, it is not without limits and

the Court "cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin [non-debtor claims]." *Id.* Similarly, the Second Circuit noted that it would be "inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely on the basis that third-party's financial contribution to a debtor's estate." *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2nd Cir. 2008). If that were possible a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions." *Id.*; *see also, Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 152 (2nd Cir. 2010) ("A bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate").

31.     The Supreme Court made it clear in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that bankruptcy courts have limited authority pursuant to 28 U.S.C. § 157. A bankruptcy court may only "hear and enter final judgments in all core proceedings arising under title 11, or arising in a case under title 11." *Stern*, 131 S.Ct. at 2603. The proposed non-debtor injunction contained in the Plan stands to affect claimants who are wholly unrelated to the bankruptcy proceeding. Thus, the Court does not even possess the requisite authority over the proposed non-Debtor injunctions.

32.     Furthermore, the extension of the injunction to non-Debtors should not be approved even if the Court finds that it has the power to issue the injunction requested by Debtors. Specifically referencing the Second Circuit's precedent, including *Drexel Burnham*, the Third Circuit noted that "the Court of Appeals for the Second Circuit upheld plans of reorganization containing releases and permanent injunction of widespread claims against co-liable parties but those plans also provided consideration to parties who would be enjoined from suing non-debtors." *Continental Airlines*, 203 F.3d at 212. Here, no consideration is being

11

provided to the parties that are being enjoined from pursuing their claims against the Exculpated Parties..

33.     Nonetheless, the Plan is filled with a multitude of proposed third party releases in favor of the "Released Parties," who are defined as follows:

> (a) Exculpated Parties, (b) the Bahamas JOLs and FTX DM, (c) the Ad Hoc Committee, (d) any member of the executive committee of the Ad Hoc Committee (as constituted from time to time), and (e) with respect to each Person or Entity named in (b) through (d), any Person or Entity to the extent acting as a shareholder, director, officer, employee, attorney (including solicitors or barristers acting for the benefit of such Person or Entity), financial advisor, restructuring advisor, investment banker, accountant and other professional or representative of such Person or Entity, in each case, to the extent such Person or Entity is or was acting in such capacity.

Plan, Section 2.1.163.

34.     Under Section 10.4 of the Plan, the Debtors and the Estates are releasing all claims against the Released Parties.  It is unclear what, if any, claims exist against the Released Parties, what consideration, if any, has been provided for this release and why such a broad release is in the best interests of the estate.  Moreover, the scope of the Debtors' release is exceptionally broad and includes claims "existing or hereafter arising" concerning anything remotely related to this case or the Debtors. Finally, Exculpated Parties are included in the Debtors' Release, and there is no explanation as to why Exculpated Parties should benefit from both a release and exculpation.

### i.     The "Voluntary" Release by Creditors (Section 10.5) is Neither Voluntary Nor Permissible Under the Bankruptcy Code

35.     Section 10.5 of the Plan provides an impermissible release to the Released Parties from the "Releasing Parties," who are defined as follows:

> (a)     the Debtors; (b) each of the Official Committee and the Supporting Parties; (c) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth herein; (d) the Holders of all Claims that are Unimpaired under the Plan; (e) the Holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) the Holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth therein; and (g) all other Holders of Claims or Interests to the maximum extent permitted by law. Holders

ME1 47657999v.3

who were not provided a Ballot or an Election Form and are not listed in clauses (a) through (g) above are not Releasing Parties.

36.     By any objective measure this release is non-consensual.  Creditors who receive ballots have no obligation to respond.  Mere silence expressed by abstaining from voting does not equate to consent.  *See In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017). As noted by other courts, it may be just as likely that the creditor was careless, inattentive, or mistaken. *Emerge Energy Services*, 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019); *In re Chassix Holdings, Inc.*, 553 B.R. 64, 79 (Bankr. S.D.N.Y. 2015).

37.     More fundamentally, no valid consideration is being offered by the Released Parties for this release.  Section 10.5 of the Plan identifies "good and valuable consideration, including the 'service' of the Released Parties to facilitate the administration of the Chapter 11 Cases, the implementation of the Plan, and the distribution of proceeds" as consideration.  See Section 10.5.  The Released Parties already have been handsomely rewarded for these services to date, and their "service" cannot serve as consideration for a release.

38.     Moreover, given the history of FTX and the fact that creditors will be solicited from all around the globe, acceptance cannot be imputed from silence either by abstaining to vote or by not understanding the need to check the "opt out" box.

39.     In sum, the Debtors are not entitled to a discharge, nor is any third party entitled to a release under this liquidating Plan.

**ii.      The Plan Does Not Satisfy Section 1129(a)(7).**

40.     The Plan also does not satisfy the best interests test under Section 1129(a)(7). The centerpiece of the Debtors' proposed Plan is distributing cash on account of customer claims.  There is no option for a holder to elect to receive an "in kind" distribution. Essentially, the Plan creates a forced sale of a customer's digital assets as of the Petition Date.  And the Debtors are remarkably clear that they will take the position that this "forced exchange" is a taxable event:

The Debtors intend to take the position that Consummation of the Plan constitutes an exchange of a prepetition Claim for a meaningfully different Claim against one or more Wind Down Entities and is a taxable event for U.S. tax purposes. . . . Generally, the Debtors intend to take the position that U.S. Holders should recognize gain or loss with respect to their Claims in an amount equal to the difference between (i) the amount of their Claims on the Petition Date and (ii) the adjusted tax basis of their prepetition Claims against one or more Debtors deemed exchanged therefor (other than the basis attributable to accrued but unpaid interest previously included in the Holder's taxable income).

Disclosure Statement at 154.

41.    It is painfully apparent that the Debtors' proposed Plan will inflict additional hardships on customers through forced taxation that could be avoided by making an "in kind" distribution.  To put this in perspective, consider a hypothetical customer who has 10 BTC on the platform with a tax basis of $100 per coin (or $1000) for the position.  Under the Plan, the customer would receive approximately $160,000 on account of that claim.  According to the Debtors, the customer will be forced to recognize a $159,000 gain.[3]  If instead of providing cash on account of the claim, the Debtors would distribute "in kind" to the customer, the customer may be able to avoid a reporting event for tax purposes.  While the Debtors may argue that they cannot distribute "in kind," nothing prevents the Debtors from entering into an agreement with another crypto exchange to provide that distribution to the customer "in kind."  The Plan does not serve the best interests of creditors because if this case were converted to a chapter 7, creditors would have the option to select a trustee who would understand this issue and ensure that distributions would be made "in kind."

C.    **SECTION 3 OF THE DISCLOSURE STATEMENT SHOULD BE AMENDED TO INCORPORATE THE EXAMINER'S REPORT AND IRS SETTLEMENT**

i.    **Omission of Examiner's Report was Not Reasonable**

42.    Section 3 of the Debtors' proposed Disclosure Statement provides, "a general summary of significant events in these Chapter 11 Cases."  Doc. No. 155212, at *36.  It contains

---

[3] Notably absent from the Disclosure Statement is any discussion of whether the customer could claim a theft loss on account of the missing coins.

two sections, "U.S. Trustee's Request to Appoint an Examiner" and "Settlement with the IRS" that are incomplete. First, the section regarding the examiner fails to summarize the Examiner's Report to creditors or identify the additional areas of inquiry, such as the purchase of Robinhood stock by Mr. Bankman-Fried. *Id.* at *77. The Examiner's Report was filed with the Court and provided to the Debtors before the Disclosure Statement was filed and should have been included. Doc. No. 15271, 15282. The Disclosure Statement, however, is not clear in this regard, however, and it must be clear to be adequate under the law.

43.     Without a summary of the additional areas into which the Examiner has requested authority to investigate, the Disclosure Statement fails to adequately inform the Objectors and other interested parties of items that could affect the Plan confirmation process and the Objectors' ability to make an informed judgment about the Plan. 11 U.S.C. §§ 1125(a) and (b). Thus, any order approving the Disclosure Statement should be conditioned upon the Debtors including supplemental information regarding the Examiner's Report.

### ii.     IRS Settlement Discussion Needs to be Updated

44.     After the Disclosure Statement was filed, the Debtors reached an agreement in principal with the IRS. The Debtors' negotiations with the IRS were previously disclosed and a corresponding update would be applicable under the circumstances to provide a full and complete picture to the Objectors and other parties in interest.

### D.     THE DEBTORS FAIL TO DISCLOSE ADVERSARY PROCEEDINGS

45.     Given the reliance bankruptcy courts place on disclosure statements in considering whether to vote to accept or reject a plan, the Third Circuit has stated that "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code['s] standard of adequate information." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).

46.     A disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible . . . alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). Simply put, interested parties cannot make an informed decision when voting on a plan without adequate disclosure.

47.     The disclosure duty imposed on debtors by the Bankruptcy Code extends to "***potential*** causes of action." *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) (emphasis in original). The claims that must be disclosed include those that "the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action". *See id.* at 323 (citing *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999)) (alteration in original).

48.     To adequately disclose causes of action a debtor must specify the claims. *See Krystal Cadillac-Oldsmobile GMC Truck*, 337 F.3d at 321. Mere "boilerplate" or generalized descriptions are inadequate to provide the level of notice required. *Id.* at 320 n.9, 321. At a minimum, the disclosure statement should disclose the existence of causes of action, the possible amount of recovery, the basis for those actions and the intent to pursue them. *See In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547 (5th Cir. 2011).

49.     Here, the Debtors' proposed Disclosure Statement fails to provide adequate information regarding avoidance actions, as required by the Bankruptcy Code, and should not be approved.  Specifically, there is no discussion in the Disclosure Statement regarding the Debtors' claims against Binance and no inclusion of any adversary proceedings as assets in the Debtors' liquidation analysis.  Rather, the most recent iteration of the Disclosure Statement removes "miscellaneous assets" from the definition of the Debtors' other assets in Note E to Appendix D.

ME1 47657999v.3

50.     The Plan proposes that certain causes of action be transferred to the Consolidated Wind Down Trust.  Doc. No. 15520, at *17.  Yet, its liquidation analysis appears to completely omit these assets.  Given Binance's role in the Debtors' downfall, at minimum, the Debtors' claims against Binance should be disclosed and included in the Debtors' liquidation analysis.

**E.      THE DEBTORS' LIQUIDATION ANALYSIS IS INCONSISTENT**

51.     Appendix C contains a chart labeled "Consolidated Debtors Estimated Net Assets Available for Distribution," ("Chapter 11 Analysis") which projects the Debtors' assets in these Chapter 11 cases as of October 31, 2024, as well as the anticipated recoveries for each class.  Doc. No. 15521-3, at *8.  Similarly, Appendix D contains a chart labeled "Consolidated Debtors Estimated Chapter 7 Net Liquidation Proceeds" (Doc. No. 15521-4, at *5) ("Chapter 7 Analysis"), which projects the Debtors' assets in a Chapter 7 case as of October 31, 2024 and a chart labeled "Comparison to Plan Summary" (Id. at *7) ("Comparison Chart"), which compares the Chapter 11 Analysis with the Chapter 7 Analysis.  The inconsistencies between these charts prevent creditors, such as the Objectors, from reviewing whether they would receive a higher recovery in a Chapter 7 proceeding.

52.     In Appendix C, the Debtors project $102 more assets than they allocate to creditors.  Doc. No. 15521-3, at *8 (Total Class 1 through 7 Claims of $11,787 million + Total post-petition interest of $2.517 billion  + total subordinated claims of $306 million = $14.610 billion, $102 million less than the net distributable proceeds of $14.712 billion.).  In Appendix D, the Chapter 7 Analysis fails to include any recoveries for convenience classes (Class 7A-C) and the Comparison Chart indicates that the Debtors would have $377 million more in a Chapter 7 bankruptcy.  Given these discrepancies, the Approval and Procedures motion should be denied..  At best, the Debtor's decision to compare what it considers to be the highest grossing chapter 7 scenario with the lowest grossing chapter 11 scenario is confusing and, given the discrepancies, misleading to creditors.

**F.    DEBTORS CANNOT TRANSFER STOLEN ASSETS TO A WIND DOWN TRUST**

53.    Section 541(a) of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Third Circuit has interpreted this phrase inclusively, "to bring into the estate all interests of the debtor, whether tangible or intangible, at the commencement of the case." *Safety-Kleen Creditor Trust v. Eimco Process Equip. Co. (In re Safety-Kleen Corp.),* 331 B.R. 591, 594 (Bankr. D. Del. 2005); *see also In re Kane,* 628 F.3d 631, 637 (3d Cir. 2010) ("Section 541(a) was intended to sweep broadly [and] to include all kinds of property, including tangible or intangible property, [and] causes of action.") (quoting *Westmoreland Human Opportunities, Inc. v. Walsh,* 246 F.3d 233, 241 (3d Cir. 2001)).

54.    The expansive scope of a Debtor's estate is tempered, however, by subsequent provisions of the Bankruptcy Code. Among other things, section 541(b)(1) of the Bankruptcy Code expressly excludes "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). When interpreting this provision, the Supreme Court noted "that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205, n.10 (1983).

55.    Similarly, section 541(d) of the Bankruptcy Code excludes:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). When interpreting this section, the Third Circuit has held that, "[t]he legislative language of § 541 makes clear that funds held by a debtor for a third party are not part of the debtor's bankruptcy estate." *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir.1994). In other words, if, as of the Petition Date, "the debtor holds legal, but not

equitable, title to property, it is excluded from the estate pursuant to § 541(d)." *Ryan v. Branko Prpa MD, LLC*, 55 F.4th 1108, 1112 (7th Cir. 2022).

56. The scope of a Debtor's estate is "within the jurisdiction of the Bankruptcy Court." *Navarro v. Patriot Nat'l, Inc. (In re Patriot Nat'l, Inc.)*, 623 B.R. 696, 706 (D. Del. 2020).

57. Here, there is no dispute that, as of the Petition Date, the Debtors, at most, held only legal title to customers' Digital Assets.[4] Among other things, the Debtors admit that their business ventures were "all paid for using comingled and misappropriated funds." Doc. No. 1727, ¶ 4. Furthermore, the clear and unambiguous Terms of Service, as well as public records, including statements by the Debtors, the CFTC, the SEC, guilty pleas by former controllers of the Debtors and testimony in Samuel Bankman-Fried's criminal trial support the unequivocal conclusion that the Debtors seek to distribute stolen Digital Assets. The Objectors incorporate by reference all prior filings in this bankruptcy proceeding regarding whether customer assets are property of the Debtors' estates. Based on the undisputed evidence, including the Debtors' own admission, the Digital Assets held in customer accounts are not, and never have been, the property of any of the Debtors' estates.

58. Under English Law, a significant portion of the Debtors' estates, therefore, cannot be distributed by the Debtors through the Plan. *See* Marilyn E. Phelan, Cultural Property: Who Owns It and What Laws Protect It?, 74 Tex. B.J. 202, 205 (2011) (identifying that title remains with the original owner from whom the property was stolen under the English *nemo dat* rule). Nowhere in the Disclosure Statement do the Debtors acknowledge that they may be attempting, through the Plan, to distribute funds in which they hold no equitable interest. This oversight directly violates 11 U.S.C. §1125.

---

[4] Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them as in the Disclosure Statement.

ME1 47657999v.3

59.     Moreover, if the Objectors are wrong and the Debtors do hold an equitable interest in the funds they seek to transfer, they should disclose the basis for such interest.  In the Disclosure Statement, the Debtors claim, "hundreds of stakeholders have worked with the Debtors on a lengthy process to [among other things]… painstakingly recreate missing financial and accounting records."  Doc. No. 15521, at *1.  Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at the time, of any other part or any other writing or recorded statement – that in fairness ought to be considered at the same time.  The Debtors put at issue that "the resolution of customer property issues" is a "critical settlement…underlying the Plan."  Doc. No. 15521, at *3.  The precise resolution of that issue should be elaborated upon and the assets that the Debtors were able to trace should be disclosed.

60.     For example, according to the Examiner, "Quinn Emanuel and S&C have done a fulsome investigation to identify all of the Debtors' venture investments."  Doc. No. 15545, at *193.  Among other things, at the Debtors' direction, "[w]ith Alvarez & Marsal, Quinn Emanuel compiled information concerning over 500 Venture Book investments, including the nature of the investments, the investment size, the funding dates **and sources** and any future payments due."  *Id.* at *194.  Similarly, the Debtors have successfully traced and collected millions of dollars, of which "many…were, in fact, transfers from customer or corporate funds to Debtor insiders."  Doc. No. 15545, at *191.  Which transfers were from customer funds and which transfers were from corporate funds should be disclosed to adequately inform creditors of the impact of the Plan upon each and every one of them.

61.     The Objectors are foreign nationals who deposited assets at FTX.com.  Their interests, like hundreds of thousands of others, are not, and have never been represented by the interest of the Ad Hoc Committee of non-U.S. Customers of FTX.com.  Doc. No. 9794.  Their claims against the Debtors' estates are directly tied to whether their assets are property of the

Debtors' estates.  The Debtors' findings and ability to trace its purported assets is critical to understanding exactly what their rights will be if the Plan is confirmed.  Without this information, they have not been adequately informed of their rights and interests under the Plan.  Rather, they could mistakenly believe that Debtors are entitled to use the powers of this Court to reallocate stolen property (and its proceeds)

## G.    OBJECTION TO DEBTORS' PROPOSED TIMELINE

62.    Finally, any order approving the disclosure statement should require the Debtors to file the Plan Supplement at least one week prior to the voting deadline.  The timeline currently proposed by the Debtors could permit the Plan Supplement to be filed after the Voting Deadline has passed.  *See* Doc. No. 4863, at *4 (proposing that the Plan Supplement Filing Deadline be one week prior to the Confirmation Objection Deadline, which could be as short as three weeks prior to the proposed Confirmation Hearing Date, while the Voting Deadline could occur at 4:00 p.m. that same day (four weeks prior to the proposed Confirmation Hearing).  Given that the Debtors frequently file their hearing agenda after noon on the second business day before the hearing, the Objectors are concerned that the 4 p.m. deadline could pass prior to receipt of a full and complete picture of how the Plan will truly affect their claims.  Given the complexities of this case, the Objectors request that the Debtors be required to file their Plan Supplement at least 14 days before their deadlines to vote or object to the Plan.

## RESERVATION OF RIGHTS

The Objectors reserve all rights to supplement this Objection based upon further amendments that may be made to the Disclosure Statement, and further reserves all rights to object to confirmation of the Plan and the provisions therein on any grounds

## CONCLUSION

For the reasons stated herein, Ahmed Abd El-Razek, Sunil Kavuri, Pat Rabbitte and Noia Capital SARL respectfully request that the Court deny the Debtor's request to approve

the Disclosure Statement and grant such other and further relief as the Court deems just and proper.

Dated:  June 5, 2024                              Respectfully submitted,
             Wilmington, Delaware
                                                              MCCARTER & ENGLISH, LLP

                                                              /s/ Shannon D. Humiston
                                                              Shannon D. Humiston (No. 5740)
                                                              Renaissance Centre
                                                              405 North King Street, 8th Floor
                                                              Wilmington, DE I 9801
                                                              Telephone: (302) 984-6300
                                                              Facsimile (302) 984-6399
                                                              shumiston@mccarter.com

                                                              -        and   -

                                                              David Adler, Esq. (admitted *pro hac vice*)
                                                              Worldwide Plaza
                                                              825 Eighth Ave., 31st Floor
                                                              New York, NY 10019
                                                              Telephone: (212) 609-6847
                                                              Facsimile:      (212) 609-6921
                                                              dadler@mccarter.com

                                                              *Counsel to Sunil Kavuri, Ahmed Abd El-Razek, Noia Capital SARL and Pat Rabbitte*