**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: June 18, 2024, at 4:00 p.m. (Eastern)**<br>**Hearing Date:  June 25, 2024, at 10:00 a.m. (Eastern)** |

**THE CELSIUS LITIGATION ADMINISTRATOR'S
MOTION FOR ENTRY OF AN ORDER FOR AUTHORITY TO FILE
UNDER SEAL THE TRANSFER SCHEDULES CONTAINING CONFIDENTIAL
INFORMATION**

Mohsin Meghji, as Litigation Administrator (the "Celsius Litigation Administrator") for Celsius Network LLC and its affiliated debtors (collectively, "Celsius") hereby files this motion (the "Motion to Seal") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") authorizing the Celsius Litigation Administrator to file under seal the Transfer Schedules (as defined below) attached to the *Declaration of Kenneth Ehrler in Support of the Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* (together with all exhibits thereto, the "Ehrler Declaration")[2] filed concurrently herewith.  In support of this Motion to Seal, the Celsius Litigation Administrator, by and through its undersigned counsel, respectfully states as follows:

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors (collectively, "**FTX**" or the "**FTX Debtors**") and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Ehrler Declaration.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

1.      This Court has jurisdiction to consider this Motion to Seal under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Sections 105(a) and 107(b) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Practice and Procedure (the "Bankruptcy Rules"), and Local Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3.      Pursuant to Local Rule 9013-1(f), the Celsius Litigation Administrator consents to the entry of a final judgment or order with respect to this Motion to Seal if it is determined that this Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### I.      The FTX Chapter 11 Cases

4.      On November 11 and November 14, 2022, the debtors in the above-captioned chapter 11 cases (the "FTX Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code.  On December 16, 2023, the FTX Debtors filed their initial plan of reorganization [D.I. 4861] and initial disclosure statement [D.I. 4862].  The plan and disclosure statement were amended on May 7, 2024 [D.I. 14300, 14301] and further amended on May 22, 2024 [D.I. 15520], [D.I. 15521], respectively.

## II.     The Celsius Chapter 11 Cases

5.      On July 13, 2022, Celsius filed chapter 11 petitions in the U.S. Bankruptcy Court for the Southern District of New York (the "NY Bankruptcy Court"), jointly administered as, *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (the "Celsius Bankruptcy"). On January 29, 2024, Celsius filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Modified for MiningCo Transaction)* (the "Celsius Plan"), which was confirmed on November 9, 2023 and became effective on January 31, 2024. *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y. Jul. 13, 2022), D.I. 4289, D.I. 3972, D.I. 4298.

6.      Pursuant to the Celsius Plan, the Celsius Litigation Administrator was appointed to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates, including certain preference actions. The statute of limitations to file such claims expires on July 13, 2024. Accordingly, as described more fully in *The Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* (the "Lift Stay Motion"), filed contemporaneously with this Motion to Seal, the Celsius Litigation Administrator expects to initiate thousands of preference actions against initial and subsequent transferees in the NY Bankruptcy Court in the coming months.

## III.    The Lift Stay Motion and the FTX Preference Actions

7.      On June 4, 2024, contemporaneously with filing this Motion to Seal, the Celsius Litigation Administrator filed the Lift Stay Motion in this Court seeking relief from the automatic stay to prosecute certain preference actions against the FTX Debtors in the NY Bankruptcy Court. The Celsius Litigation Administrator filed the Ehrler Declaration in support of the Lift Stay Motion.

8.      Celsius's preference actions against the FTX Debtors arise from transfers that were made during the ninety (90) day period preceding Celsius's petition date (the "Celsius Preference

Period") to or for the benefit of (i) the FTX Debtors as subsequent transferees (the "<u>Customer Preference Actions</u>"), and (ii) FTX Debtor Quoine Pte Ltd. ("<u>Quoine</u>") as initial transferee (the "<u>Quoine Actions</u>," and together with the Customer Preference Actions, the "<u>FTX Preference Actions</u>") from Celsius which are avoidable under Sections 547 and 550 of the Bankruptcy Code. As described more fully in the Lift Stay Motion, the Celsius Litigation Administrator has sought relief from the automatic stay in these cases to pursue the FTX Preference Actions in the NY Bankruptcy Court where thousands of other similar avoidance actions will be filed.

### IV.    M3's Investigation

9.    As described more fully in the Ehrler Declaration, the Celsius Litigation Administrator retained M3 Advisory Partners, LP ("<u>M3</u>") as financial advisor.  Among other responsibilities, M3 identified and investigated a series of transfers between Celsius customer accounts and/or to and from the Celsius platform during the Celsius Preference Period to determine whether these transactions likely constituted avoidable preferences under Sections 547 and 550 of the Bankruptcy Code.  This investigation included certain transfers involving the FTX Debtors, as initial and subsequent transferees.

10.    In connection with its investigation, M3 and its advisors assembled attribution data from multiple third-party blockchain analytics data providers to identify the individuals or entities associated with certain wallet addresses used to receive crypto assets to or from transferees during the Celsius Preference Period.  To the extent possible, these wallet attributions were checked across multiple other sources or with other publicly available information to validate the identification of the FTX Debtors.

#### i.  Subsequent Transfers Schedule

11.    M3's investigation confirmed that certain of Celsius's assets were transferred from "Earn" or "Custody" customer accounts directly to the FTX cryptocurrency exchange platform or

transferred to the FTX cryptocurrency exchange platform after initially being transferred to other locations (together the "Customer Transfers").  The investigation has identified specific Customer Transfers that were made during the Celsius Preference Period to the FTX exchange platform (the "FTX Transfers") and M3 has prepared a schedule (the "Subsequent Transfers Schedule") identifying the (i) initial transferees of such Customer Transfers, (ii) net amounts of avoidable transfers made to each initial transferee, and (iii) total amount of assets that were transferred from the initial transferee to an FTX entity,[3] attached as Exhibit C to the Ehrler Declaration.  The Subsequent Transfers Schedule includes the full names of customers related to such transfers, as well as certain transaction and preference exposure data.

### ii. Quoine Transfers Schedule

12.    Quoine was a customer of Celsius that held an "Earn" account.  During the Celsius Preference Period, Quoine withdrew certain of Celsius's assets from the Celsius cryptocurrency exchange platform ("Quoine Transfers").

13.    M3's investigation has identified specific Quoine Transfers that were made during the Celsius Preference Period for the benefit of Quoine as an initial transferee.  A schedule (the "Quoine Transfers Schedule," and together with the Subsequent Transfer Schedule, the "Transfer Schedules") identifying the Quoine Transfers and amounts of avoidable transfers made to Quoine

---

[3]    The Subsequent Transfers Schedule includes identified claims against an FTX entity as a subsequent transferee which may be attributable to an FTX Debtor or an entity in the liquidation of FTX Digital Markets Ltd. (the "Bahamas Liquidation") and its corresponding chapter 15 proceeding.  Based on his investigation (which remains ongoing), the Celsius Litigation Administrator cannot confirm at this time whether FTX wallets that received the avoidable transfers belong to an FTX Debtor or an entity in the Bahamas Liquidation.  Accordingly, the Subsequent Transfers Schedule includes some claims that may not ultimately be attributable to a FTX Debtor and will continue, instead, against entities in the Bahamas Liquidation.  The motion requesting the lifting of the stay only requests authority to lift the automatic stay with respect to the FTX Debtors.  A complementary motion requesting the same relief with respect to the Bahamian entities was filed contemporaneously herewith in the chapter 15 proceeding.  The Celsius Litigation Administrator intends to take necessary discovery following the initiation of FTX Preference Actions in order to finalize the Subsequent Transfers Schedule and attribute FTX wallets to the appropriate entities.

is attached as Exhibit D to the Ehrler Declaration. The Quoine Transfers Schedule includes certain transaction data and preference exposure data for Quoine.

V.     **The Transfer Schedules**

14.     Taken together, the Transfer Schedules provide details for a number of transactions made during the Celsius Preference Period that reflect individual Celsius customer's preference exposure. The Transfer Schedules therefore provide extensive and highly sensitive commercial information concerning Celsius, the FTX Debtors, and initial customer transferees, including transferee's names and descriptions regarding the transfers (together the "<u>Confidential Information</u>"). The Transfer Schedules were compiled from, among other sources, highly sensitive commercial records belonging to Celsius that contain nonpublic details regarding customers of Celsius and the FTX Debtors, transaction histories, and wallet information. Instances of fraud, identity theft, and doxing are some of the many harms that could result from releasing this nonpublic information. Additionally, Celsius's terms of service and privacy policies assured customers it would protect customer data and personal information where possible. Releasing customer records contained in the Transfer Schedules could expose Celsius to potential liability if it is determined that it breached its obligations to safeguard customer data. If available in the general market, this Confidential Information could be also used to the detriment of Celsius, the FTX Debtors, and initial customer transferees in both Celsius and FTX bankruptcy cases.

15.     The Celsius Litigation Administrator respectfully requests the Court's permission to file the Transfer Schedules under seal. The Celsius Litigation Administrator also requests that the Court direct that the Transfer Schedules remain under seal and confidential and not be made available to anyone without the prior written consent of the Celsius Litigation Administrator. Notwithstanding the foregoing, following entry of the Proposed Order, the Celsius Litigation Administrator will provide the Transfer Schedules to: (i) the Court, (ii) the U.S. Trustee; and (iii)

counsel and financial advisors to the FTX Debtors on a confidential and "professionals' eyes only" basis.

## RELIEF REQUESTED

16.     By this Motion to Seal, the Celsius Litigation Administrator respectfully requests entry of the Proposed Order authorizing the Celsius Litigation Administrator to file under seal the Transfers Schedules.

## BASIS FOR RELIEF

17.     Sections 105(a) and 107(b) of the Bankruptcy Code allow the Court to authorize the Celsius Litigation Administrator to file the Transfer Schedules under seal because they contain Confidential Information.  Pursuant to Section 105(a) of the Bankruptcy Code, bankruptcy courts have the inherent equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In addition, Section 107(b) provides bankruptcy courts with the power to protect parties in interest from potentially harmful disclosures:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> > (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).

18.     Bankruptcy Rule 9018 sets forth the procedure by which a party in interest may obtain a protective order authorizing the filing of a document under seal.  Bankruptcy Rule 9018 provides, in relevant part:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate

> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

19.     Once the court determines that a party in interest is seeking protection of information that falls within one of the categories enumerated in Section 107(b) of the Bankruptcy Code, "the bankruptcy court must issue a protective order on a motion by the affected person or party." *In re ACandS, Inc.*, 462 B.R. 88, 101 n.21 (Bankr. D. Del. 2011) (holding that "§ 107(b) imposes . . . [a] mandatory requirement . . . [that] if the exception pertains [to § 107(b)], the bankruptcy court must issue a protective order on a motion by the affected person or party."). Delaware courts have defined "commercial information" as "information which would result in an 'unfair advantage to competitors by providing them with information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 27–28 (2d Cir. 1994) (citation omitted)).

20.     Courts have held that protection under Section 107(b) must be granted if the information sought to be protected is commercial information, and significantly, that commercial information need not rise to the level of a trade secret to be entitled to protection. *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 757 (D. Del. 2018) (holding that Section 107(b) applies to information that is a "trade secret," "confidential commercial information," or information that is "scandalous or defamatory"). Furthermore, in contrast with Rule 26(c) of the Federal Rules of Civil Procedure, Section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause." *In re ACandS, Inc.*, 462 B.R. at 102 n. 22 (citing *Orion Pictures Corp.*, 21 F.3d at 28). Nor does such require a finding of "extraordinary circumstances or compelling need." *In re Orion Pictures Corp.*, 21 F.3d at 27.

21.     Rather, a party seeking the protection of Section 107(b) need only demonstrate that the information is "confidential" and "commercial" in nature.  *See In re Altegrity, Inc.*, No. 15-10226 (LSS), 2015 Bankr. LEXIS 4479, at *21 (Bankr. D. Del. July 6, 2015) (approving protection where debtors "met their burden to show" that the identities of certain customers and contractors were "confidential commercial information as contemplated by Section 107(b); *In re Orion Pictures Corp.*, 21 F.3d at 27; *see also In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (recognizing that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury").  Once established that the subject information qualifies as "commercial information" under Section 107(b)(1), the Bankruptcy Code mandates that this information be protected from disclosure.  *See In re ACandS, Inc.*, 462 B.R. at 101 n.21.

22.     Grounds exist here for the Court to grant the relief requested by this Motion to Seal. The Transfer Schedules include commercially sensitive information, which if disclosed, would harm Celsius, the FTX Debtors, and numerous initial customer transferees identified in the Transfer Schedules.  Specifically, the Transfer Schedules include extensive information about individual customers of Celsius and the FTX Debtors, and the transfers made between the two platforms.  The Transfer Schedules also include sensitive information regarding Quoine including transfers made during the Celsius Preference Period and detailed information for cryptocurrency wallets believed to belong to the FTX Debtors.  This information constitutes "commercial information" within the meaning of Section 107(b) of the Bankruptcy Code and merits protection under the same.

23.     This Court has granted comparable relief with respect to similar commercial information.  *See, e.g.*, *In re Neenah Enter., Inc.*, Case No. 10-10360 (MFW) (Bankr. D. Del. June

21, 2010) [D.I. 559] (granting debtors' request to file a list of executory contracts between the debtors and their customers under seal); *In re Nortel Networks, Inc.*, Case No. 09-10138 (KG), 2010 Bankr. LEXIS 5218, at *10 (Bankr. D. Del. Dec. 1, 2010) ("The Court recognizes that the list of Customer Contracts (as defined in the Motion) and affidavits of service that identify the Debtors' customers constitute confidential commercial information, and therefore authorizes that any such lists and affidavits to be filed in connection with the Motion and the procedures approved therein may be filed under seal."); *In re JC USA, Inc.*, Case No. 23-10585 (JKS) (Bankr. D. Del. May 10, 2023) [D.I. 18] (granting debtor's request to redact customer information and file unredacted customer information under seal).

24.     Accordingly, the Celsius Litigation Administrator submits that the Court should authorize the Celsius Litigation Administrator to file the Transfer Schedules under seal pursuant to Section 107(b) of the Bankruptcy Code and pursuant to the Court's general authority under Section 105(a) of the Bankruptcy Code.

## COMPLIANCE WITH LOCAL RULE 9018-1(d)

25.     To the best of the knowledge, information and belief of the undersigned counsel to the Celsius Litigation Administrator, the documents that the Celsius Litigation Administrator requests to seal pursuant to this Motion to Seal do not contain information that is subject to the Confidentiality Rights of another Holder of Confidentiality Rights (each as defined in Local Rule 9018-1(d)(iii)).  Furthermore, counsel has conferred with counsel to the FTX Debtors and the U.S. Trustee. Counsel for the FTX Debtors indicated that the FTX Debtors do not object to the proposed redactions. The U.S. Trustee indicated that it will object to certain of the proposed redactions.  The Celsius Litigation Administrator will continue to work to resolve the objection of the U.S. Trustee.

## NOTICE

26.     The Celsius Litigation Administrator has provided notice of this Motion to Seal and the Proposed Order to (a) the U.S. Trustee; (b) counsel to the FTX Debtors; (c) counsel to the Official Committee of Unsecured Creditors; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware and (h) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the Hearing and the relief requested in the Motion to Seal constitutes due, sufficient, and appropriate notice and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, and the Local Rules.

## NO PRIOR REQUEST

27.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Celsius Litigation Administrator respectfully requests that the Court enter the Proposed Order granting the relief requested in this Motion to Seal and such other and further relief as may be just and proper.

*[Remainder of page intentionally left blank]*

11

Dated:  June 10, 2024
      Wilmington, Delaware     **COLE SCHOTZ, P.C.**

/s/ *Justin R. Alberto*
_____
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
Melissa M. Hartlipp (No. 7063)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email:  jalberto@coleschotz.com
       preilley@coleschotz.com
       mhartlipp@coleschotz.com
-and-
**PRYOR CASHMAN LLP**
Seth H. Lieberman, Esq.
Richard Levy, Jr., Esq.
Andrew S. Richmond, Esq.
7 Times Square, 40th Floor
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Email: slieberman@pryorcashman.com
      rlevy@pryorcashman.com
      arichmond@pryorcashman.com

*Counsel to Mohsin Y. Meghji, as Litigation*
*Administrator for Celsius Network, LLC, et al.*