**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| FTX TRADING LTD., *et al.*,[1] | : | Case No. 22-11068 (JTD) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Hearing Date:  June 25, 2024, at 10:00 a.m.** |
| | : | **Objections Due:  June 5, 2024, at 4:00 p.m..** |
| | | **extended for UST to June 13 at 4:00 p.m.** |
| | | Re:  D.I. 4863, 15520, 15521 & 17004 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF THE UNITED STATES TRUSTEE TO APPROVAL OF
DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his

undersigned attorneys, hereby files this limited objection and reservation of rights regarding the

Debtors' disclosure statement and solicitation procedures motion (the "Objection"), and

respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The U.S. Trustee provided informal comments to Debtors' counsel about

the disclosure statement and understands the Debtors will make several changes to the disclosure

statement to address his concerns.  Subject to his right to review and, if necessary, comment on

or object to those revisions, the U.S. Trustee does not contest that the disclosure statement

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers
are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a
complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided
herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims
and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent
Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua
and Barbuda.

contains adequate information.  The U.S. Trustee reserves his right to review and, if necessary, comment on or object to all future revisions to the disclosure statement.

2.     The U.S. Trustee objects to certain aspects of the solicitation procedures. Specifically, the procedures should not expand e-mail service of solicitation materials beyond the e-mail service that the Court has authorized in these cases to date.  In addition, deemed-to-reject classes should not be put through an opt-out process.  They should be removed from the definition of Releasing Parties entirely.  Finally, the Court should not make a good-faith finding under Section 1125(e) before solicitation has occurred.

**JURISDICTION**

3.     Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

4.     Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district.  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5.     Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has a duty to monitor and comment on plans and disclosure statements filed in chapter 11 cases.

6.     Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Objection.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

**FACTS**

7.     On November 11 and 14, 2022, the above-captioned debtors (the

"Debtors") filed chapter 11 petitions in this Court.

8.     On January 9, 2023, the Court entered the *Final Order (I) Modifying*

*Certain Creditor List Requirements, (II) Authorizing the Debtors To Serve Certain Parties by E-*

*mail, and (III) Granting Related Relief* [D.I. 425] (the "Noticing Order").  The Noticing Order

provides in part:

> The service requirements of Bankruptcy Rule 2002(g) hereby are
> modified to permit e-mail service to (i) customers that (a) have not
> designated a mailing address under Bankruptcy Rule 2002(g)(1) or
> 5003(e); (b) do not request to be served hard copies by mail and (c)
> have a valid e-mail address on file with the Debtors; and (ii) non-
> customer creditors that (a) have not designated a mailing address
> under Bankruptcy Rule 2002(g)(l) or 5003(e); (b) do not request to
> be served hard copies by mail and (c) have a valid e-mail address on
> file with the Debtors, but no physical address information.

D.I. 425 ¶ 4.

9.     On December 16, 2023, the Debtors filed the *Motion of Debtors for Entry*

*of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation*

*Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation, and*

*Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the*

*Confirmation of the Plan* [D.I. 4863] (the "Solicitation Procedures Motion").

10.     On May 22, 2024, the Debtors filed the *Joint Chapter 11 Plan of*

*Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 15520] (the "Plan") and the

*Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd.*

*and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 15521] (the "Disclosure Statement").

11.     On May 30, 2024, the U.S. Trustee's counsel sent informal comments about the Plan and Disclosure Statement to Debtors' counsel.

12.     On June 7, 2024, the Debtors filed a form of *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 17004] (the "Solicitation Procedures Order").

13.     On June 12, 2024, the U.S. Trustee's counsel sent informal comments about the Solicitation Procedures Order to Debtors' counsel.

## ARGUMENT

### A.  U.S. Trustee Reserves His Rights Regarding Disclosure Statement

14.     The U.S. Trustee reserves his rights regarding any and all go-forward revisions to the Disclosure Statement.

15.     Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan.  *See In re Quigley Co., Inc.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).  The solicitation of votes is prohibited before the Court, after notice and a hearing, has approved a written disclosure statement containing "adequate information."  *See* 11 U.S.C. § 1125(b).

16.     The Bankruptcy Code defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of  the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need

> not include such information about any other possible or proposed
> plan and in determining whether a disclosure statement provides
> adequate information, the court shall consider the complexity of the
> case, the benefit of additional information to creditors and other
> parties in interest, and the cost of providing additional information[.]

U.S.C. § 1125(a)(1); *see also, Momentum Mfg. Corp. v. Employee Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 54 (S.D.N.Y. 1999).

15.     Adequate information is "determined by the facts and circumstances of each case." *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414, 417 (3d Cir. 1988) (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)).  The "adequate information" requirement is intended to help creditors in their negotiations with a debtor over a plan. *See Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988).

17.     The disclosure statement requirement of section 1125 is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).  Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

18.     Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).  The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.,* 352 B.R. 592, 596 (Bankr.

S.D.N.Y. 2006) (citing *Century Glove* 860 F.2d at 100).  Once the "adequate disclosure" floor is

satisfied, additional information can go into a disclosure statement too, at least so long as the

additional information is accurate and its inclusion is not misleading.  *Adelphia*, 352 B.R. at 596.

19.     The purpose of a disclosure statement is to give creditors enough

information so that they can make an informed choice of whether to approve or reject the debtor's

plan.  *In re Duratech Indus.,* 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y.

1999).  The disclosure statement must inform the average creditor what it is going to get and when,

and what contingencies might intervene.  *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

20.     To be approved, a disclosure statement must include sufficient information

to apprise creditors of the risks and financial consequences of the proposed plan. *See In re*

*McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information

with respect to the ramifications of any proposed plan will have to be provided to, and digested

by, the creditors and other parties in interest in order to arrive at an informed decision concerning

the acceptance or rejection of a proposed plan").  Although the adequacy of the disclosure is

determined on a case-by-case basis, the disclosure must "contain simple and clear language

delineating the consequences of the proposed plan on [creditors'] claims and the possible

[Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981

(Bankr. N.D.N.Y. 1988).

21.     The U.S. Trustee understands the Debtors will revise the Disclosure

Statement in response to certain of his informal comments.[2]  But the U.S. Trustee has not seen

the revisions yet.  Based on the Debtors' responses, and subject to his right to review and, if

---

[2] The U.S. Trustee raised informal comments about sections 3.C.9, 3.P.1, and 3.Q of the Disclosure
Statement, among others.

necessary, comment on or object to the revisions, the U.S. Trustee does not object to the adequacy of information in the Disclosure Statement.  The U.S. Trustee reserves his right to review and, if necessary, comment on or object to any and all go-forward revisions to the Disclosure Statement.

### B.  Solicitation Procedures Should Be Revised

22.  The U.S. Trustee objects to certain aspects of the proposed solicitation procedures.

23.  First, the solicitation procedures would allow the Debtors to file the plan supplement one week before the voting and confirmation objection deadlines.  *See* D.I. 17004 Ex. 1 ¶ 10.  The plan supplement will include, among other things, the (a) Plan Administration Agreement; (b) Wind Down Process and Budget; (c) Expense Allocation Estimates; (d) Settlement Agreements; and (e) Preserved Potential Claims.  "All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan."  Plan § 13.7.  The plan supplement will likely be voluminous and impact how, when, and what amount claimants will be paid.  Filing the plan supplement only seven days before the voting and confirmation objection deadlines does not give parties enough time to process it.  In addition, if voting parties wait to vote until after the plan supplement has been filed, there may be a backlog of ballots for the claims agent to process.  The U.S. Trustee respectfully requests that the plan supplement be filed 21 days before the voting and objection deadlines.

24.  Second, the U.S. Trustee objects to any expansion of e-mail service beyond what has been authorized in these cases to date.  The Debtors seek to serve solicitation packages and confirmation notices on 28 classes of creditors and interest holders by e-mail.  *See* Solicitation Procedures Order ¶¶ 13 & 17.

25.     Fed. R. Bankr. P. 3017(d) provides (emphasis added):

(d) TRANSMISSION AND NOTICE TO UNITED STATES TRUSTEE, CREDITORS, AND EQUITY SECURITY HOLDERS. Upon approval of a disclosure statement,— except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders **shall mail** to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>     (1) the plan or a court-approved summary of the plan;
>     (2) the disclosure statement approved by the court;
>     (3) notice of the time within which acceptances and rejections of the plan may be filed; and
>     (4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation **shall be mailed** to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form **shall be mailed** to creditors and equity security holders entitled to vote on the plan. If the court opinion is not transmitted or only a summary of the plan is transmitted, the court opinion or the plan shall be provided on request of a party in interest at the plan proponent's expense. If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, **shall be mailed** to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation. For the purposes of this subdivision, creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing.

26.     The U.S. Trustee does not oppose serving confirmation materials via e-

mail to the extent consistent with the *Final Order (I) Modifying Certain Creditor List*

*Requirements, (II) Authorizing the Debtors To Serve Certain Parties by E-mail and (III)*

*Granting Related Relief* [D.I. 425].  However, all other parties-in-interest—such as (i) non-customer creditors who do not meet the requirements of D.I. 425 ¶ 4 and (ii) governmental units—should receive the solicitation packages and confirmation notices by first-class mail, pursuant to Rule 3017(d).  If the Debtors wish to supplement that service with service by e-mail, the U.S. Trustee does not object to that.  Cost is not a valid reason to waive service by mail, because, according to the Disclosure Statement, the Debtors expect to distribute between $14.7 billion and $16.5 billion under the Plan.  *See* Disclosure Statement § 1.H.1.  The Debtors' estates can bear the cost of plan solicitation prescribed in Rule 3017(d).

27.     Third, the U.S. Trustee objects to paragraph 22 of the Solicitation Procedures Order.  It provides:

> In accordance with section 1125(e) of the Bankruptcy Code, to the fullest extent permitted by law, the Debtors (including each of their respective directors, officers, employees, shareholders, members, partners, agents or representatives (including attorneys, accountants, financial advisors and investment bankers), each solely in their capacity as such) shall not incur any liability on account of soliciting votes on the Plan or participating in such solicitation, for violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of a plan.

28.     The Court should strike this provision because it is not ripe.  The Debtors have not yet solicited votes on the Plan.  This provision would give the Debtors and their representatives a prospective release or exculpation, without an express finding of good faith, and without any exceptions for gross negligence and willful misconduct.  The Debtors can seek a Section 1125(e) finding in the confirmation order.  Any such finding should be sought after the voting process is complete and should track the language of Section 1125(e).

29.     Fourth, the U.S. Trustee objects to an opt-out process for six impaired classes who are deemed to reject the Plan.  Members of those classes should not give third-party releases.

30.      Article 2.1.164 of the Plan defines "Releasing Parties" to include "the Holders of all Claims or Interests who vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein[.]"  Classes 13, 14, 15, 16, 17, and 18 are deemed to reject the Plan.  Paragraph 16(b) of the Solicitation Procedures Order would approve an Impaired Notice (Exhibit 2B thereto) to be sent to those classes.  The Impaired Notice would have an opt-out form annexed to it.

31.      The Court should strike deemed-to-reject creditors and interest holders from the definition of Releasing Parties and should remove any opt-out requirement for them.

32.      Some Courts in this District have determined that third party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent.  *See Emerge Energy Services LP*, Case No. 19-11563, 2019 Bankr. LEXIS 3717, *52 (Bankr. D. Del. Dec. 5, 2019) (consent to a third-party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form."); *In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place)."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (identifying release provision had to be modified to permit third-party releases of non-debtors only for those creditors who voted in favor of the plan); *see also Joel Patterson v. Mahwah Bergen Retail Group, Inc., Patterson v. Mahwah*, 636 B.R. 641, 688 (E.D. Va. 2022)

10

(holding that "the Bankruptcy Court erred both factually and legally in finding the Third-Party Releases to be consensual. Failure to opt out, without more, cannot form the basis of consent to the release of a claim."); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017) (stating under principles of New York contract law, a creditor could not be deemed to consent to third-party releases merely by failing to object to the plan, even when the disclosure statement made it clear that such a consequence would result); *In re Chassix Holdings*, 533 B.R. 64, 79-80 (Bankr. S.D.N.Y. 2015) (limiting third-party releases to those who voted to accept the plan, or affirmatively elected to provide releases).

33.     Other decisions from this District have not required affirmative consent for third-party releases.  In *In re Mallinckrodt*, 639 B.R. 837 (Bankr. D. Del. 2022), this Court allowed third-party releases to be imposed on mass tort claimants without the opportunity to opt-out, as well as on certain other classes of creditors and equity holders who were provided the ability to opt-out, holding that the imposition of such releases were permissible under *Continental* because of the mass tort context of the case.  *See* 639 B.R. at 873 & 881; *see also In re Boy Scouts of America and Delaware BSA, LLC*, 642 B.R. 504, 674-75 (Bankr. D. Del. 2022) (approving an opt-out process for third-party releases in a mass tort case, but noting that the definition of parties giving such releases did not include any "claimant who abstains from voting").  Unlike *Mallinckrodt* and *Boy Scouts*, the current case is not a mass tort case.

34.     In *In re Indianapolis Downs, LLC*, 486 B. R. 286 (Bankr. D. Del. 2013), this Court also reached a different conclusion than that of *Washington Mutual* and *Emerge* concerning the need for affirmative consent to third party releases.  In so doing, however, the Court pointed out that, "the third party release provision ***does not apply to any party that is deemed to reject the Plan***." *Id.* at 305 (emphasis added).

11

35.     In *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del. 2010), the Court held that affirmative consent was not required, but only as to releases being given by unimpaired classes who were "being paid in full." *Id.* at 144.  The Court determined that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan "does not pass muster under *Continental*." *Id.* at 145.  The same is true here as to the holders of claims and interests in the six impaired classes that are deemed to reject the plan.

36.     The Debtors' proposed release opt-out procedure for Classes 13, 14, 15, 16, 17, and 18 should not be permitted because the members of those classes are receiving no consideration for having their direct claims against non-debtors stripped away, and therefore such releases are impermissible under *Continental*, 203 F.3d 203 (3d Cir. 2000).  In *Continental*, the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third-party release is permissible.  The Court acknowledged that a number of Circuits do not allow such non-consensual releases under any circumstances.  *See id.* at 212.  Other Circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases." *Id.* at 212-13 (citing Second Circuit cases where releases were upheld for "widespread claims against co-liable parties" and a Fourth Circuit mass tort case).  "A central focus of these three reorganizations was the global settlement of massive liabilities against the debtors and co-liable parties.  Substantial debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible." *Id.* at 213; *see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005) (noting a third-party release may be granted "only in rare cases").

37.     The Third Circuit in *Continental* ultimately determined that the proposed releases in that case did "not pass muster under even the most flexible test for the validity of non-debtor releases." 203 F.3d at 214.  Therefore, the Court determined that it "need not speculate on

whether there are circumstances under which we might validate a non-consensual release that is

both necessary and given in exchange for fair consideration." *Id.* at 214, n. 11.   However, the

Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness,

necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at

214.

        38.     The Third Circuit Court of Appeals referenced *Continental* in *In re*

*Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019), *cert. denied sub nom. ISL Loan*

*Tr. v. Millennium Lab Holdings*, 19-1152, 2020 WL 2621797 (U.S. May 26, 2020), as one of the

precedents, along with *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011),

regarding nonconsensual third-party releases.  The Third Circuit indicated that these decisions

"set forth *exacting standards* that must be satisfied if such releases and injunctions are to be

permitted."  945 F.3d at 139 (emphasis added).[3]

        39.     In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del.

2001), the Court held that a clause in the plan which released claims of any creditors or equity

holders against the senior lenders for any act or omission in connection with the bankruptcy

cases and reorganization process required factual showings under *Continental* – that the releases

were necessary for the reorganization and were given in exchange for fair consideration.  *Id.* at

607.  The Court elaborated that "necessity" under *Continental* requires a showing: (a) that the

success of the debtors' reorganization bears a relationship to the release of the non-consensual

non-debtor parties and (b) that the non-debtor parties being released from liability have provided

"a critical financial contribution to the debtors' plan" in exchange for the receipt of the release.

---

[3]    The Third Circuit in *Millennium Lab* ultimately did not address whether the non-consensual third-party releases in that case met the standards of *Continental* or *Global*, because the Court held the appeal to be equitably moot.  945 F.3d at 144.

*Id.* at 607. A financial contribution is considered "critical" if without the contribution, the debtors' plan would be infeasible. *Id.* Fairness of a release is determined by examining whether non-consenting parties are receiving reasonable consideration in exchange for the release. *Id.* at 608. In most instances of a release provision in a plan, this will entail examining the proposed dividend that non-consenting creditors or shareholders will receive under a plan with the releases compared to what they would receive under a plan without the releases. *See id.*; *see also In re Spansion, Inc.*, 426 B.R. at 144 (applying same factors).

40.     The *Genesis* Court found that the senior lenders had made a financial contribution to the plan, which allowed the debtors to make the 7.34% distribution to the unsecured creditors, who otherwise would have been "out of the money." *Id.* at 608. Ultimately, though, the Court found that such contribution was not enough, because "even if the threshold *Continental* criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied by these facts . . . . [the] financial restructuring plan under consideration here would not present the *extraordinary circumstances* required to meet even the most flexible test for third party releases." *Id.* (emphasis added).

41.     In the present cases, "extraordinary circumstances" do not exist, nor has the high threshold necessary for approval of non-consensual third-party releases been met. It appears no consideration, let alone "fair consideration," is being provided for the non-consensual third-party releases sought to be imposed on Classes 13, 14, 15, 16, 17, and 18. It appears those creditors and interest holders will receive no distribution under the Plan.[4] If, under *Genesis*, a

---

[4] Although the treatment of classes 13, 14, and 16 contemplates pro rata distributions from the General Pool, such distributions are "in accordance with the waterfall priority set forth in Section 4.2.3." That waterfall shows Allowed Senior Subordinated Governmental Claims, which are ahead of classes 13, 14, and 16 in the waterfall, receiving no more than 18% on their claims. *See* Disclosure Statement at 19. Thus, classes 13, 14, and 16 appear to be out of the money (and the Disclosure Statement projects them receiving 0%).

distribution of 7.34% to certain creditors was not sufficient to meet the *Continental* criteria for

fair consideration, then a recovery of 0% by Classes 13, 14, 15, 16, 17, and 18 is clearly not

sufficient either.  Nor are such releases necessary to the Debtors' reorganization, because the

Debtors are not reorganizing.  They are liquidating.  *See* Plan § 5.8 ("The purpose of the Wind

Down Entities is to monetize the Plan Assets and pay Distributions as promptly as reasonably

practicable. The Wind Down Entities shall hold Plan Assets for sale; sell Plan Assets; administer,

and close as necessary, the Chapter 11 Cases; administer, reconcile, resolve and settle claims;

and liquidate the Debtors and their non-Debtor subsidiaries pursuant to the terms of the Plan

Supplement.") *and* Disclosure Statement § 8.B.1 ("The Wind Down Entities are intended to

qualify as 'liquidating trusts' for U.S. federal income tax purposes. . . . The Wind Down Entities

are created for the primary purpose of liquidating the assets transferred to it with no objective to

continue or engage in the conduct of a trade or business, except to the extent reasonably

necessary to, and consistent with, the liquidating purpose of the Wind Down Entities.").

        42.     In *In re Tricida, Inc.*, 23-10024 (JTD) (Bankr. D. Del. May 19, 2023)

(Hr'g tr. 143:13-146:21), this Court denied third-party releases by deemed-to-reject shareholders

at the confirmation hearing.  In the present cases, the Court should remove the opt-out procedure

for deemed-to-reject classes now, at the disclosure statement stage, because it will help simplify

what is likely to be a massive and complex solicitation process.  The U.S. Trustee understands

that about two million customers had net positive balances at the Debtors as of the petition date,

and that over 90,000 customer proofs of claim have been filed.  There will be 20 voting classes.

The members of six deemed-to-reject classes should not be made to jump through the hoop of

opting out of non-consensual third-party releases.

**C.  U.S. Trustee Reserves His Rights Regarding Plan Confirmation**

43.    The U.S. Trustee reserves all of his rights, comments, and objections regarding confirmation of the Plan.  Without limiting the foregoing, the U.S. Trustee reserves all of his rights and objections regarding the Plan's third-party releases, pending the U.S. Supreme Court's decision in the *Purdue Pharma, L.P.* matter.

WHEREFORE, the U.S. Trustee respectfully requests that, unless the above objections are addressed, the Court deny the Motion and grant such other relief as the Court deems fair and just.

Dated:  June 13, 2024
          Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Linda Richenderfer (DE #4138)
Benjamin A. Hackman
Jonathan Lipshie
Trial Attorneys
Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
linda.richenderfer@usdoj.gov
benjamin.a.hackman@usdoj.gov
jon.lipshie@usdoj.gov