# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| FTX TRADING LTD., *et al.,* [1] ) | Case No. 22-11068 (JTD) |
| ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hearing: September 12, 2024 at 1:00 pm (ET) |
| ) | Obj. Deadline: July 5, 2024 at 4:00 pm (ET)[2] |

**SUPPLEMENT TO THE SIXTH INTERIM FEE APPLICATION OF FTI CONSULTING, INC., FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FEBRUARY 1, 2024 THROUGH APRIL 30, 2024**

| | |
|---|---|
| Name of Applicant: | FTI Consulting, Inc. |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | Order entered February 15, 2023, effective as of December 22, 2022 [Docket No. 730] |
| Period for which compensation and reimbursement are sought: | February 1, 2024 through April 30, 2024 (the "Application Period") |
| Amount of compensation sought as actual, reasonable, and necessary: | $6,144,925.25 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $9,484.04 |

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The objection deadline set forth herein is for all parties other than the Fee Examiner and the U.S. Trustee (each as defined in the Fee Examiner Order), whose objection deadline shall be governed by that certain *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [Docket No. 834] (the "Fee Examiner Order").

31744495.1

1

| | |
|---|---|
| Rates are higher than those approved or disclosed at retention? | Yes [3] |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed: | $3,278,145.40 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed: | $5,214.04 |
| Number of professionals included in this application: | 27 |
| If applicable, number of professionals in this application not included in staffing plan approved by client: | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period: | N/A |
| Number of professionals billing fewer than 15 hours to the case during this period: | 7 |

This is an: ___ monthly   _X_ interim   ___ final application.

---

[3] Please refer to the Supplemental Declarations of FTI Consulting filed at D.I. 1132 and D.I. 3028 for more information.

## COMPENSATION BY TIMEKEEPER

| Professional | Position | Specialty | Billing Rate[4] | Total Hours | Total Fees |
|---|---|---|---:|---:|---:|
| Chesley, Rachel | Sr Managing Dir | Communications | $ 1,130 | 4.8 | $ 5,424.00 |
| Baldo, Diana | Director | Communications | 621 | 3.8 | 2,360.00 |
| Jasser, Riley | Sr Consultant | Communications | 460 | 33.5 | 15,422.00 |
| McNew, Steven | Sr Managing Dir | Cryptocurrency | 1,200 | 49.8 | 59,760.00 |
| de Brignac, Jessica | Managing Dir | Cryptocurrency | 910 | 70.5 | 64,155.00 |
| Kamran, Kainat | Consultant | Cryptocurrency | 440 | 12.3 | 5,412.00 |
| Busen, Michael | Sr Managing Dir | Data & Analytics | 1,390 | 4.4 | 6,116.00 |
| Jordan, Mason | Sr Consultant | Data & Analytics | 730 | 35.6 | 25,988.00 |
| Kimche, Livia | Consultant | Data & Analytics | 555 | 4.9 | 2,719.50 |
| Risler, Franck | Sr Managing Dir | Derivatives | 1,895 | 337.6 | 639,752.00 |
| Rousskikh, Valeri | Managing Dir | Derivatives | 1,456 | 507.4 | 738,791.00 |
| Diodato, Michael | Managing Dir | Derivatives | 1,370 | 428.7 | 587,501.00 |
| Kubali, Volkan | Managing Dir | Derivatives | 1,330 | 364.1 | 484,253.00 |
| Watson, Ching | Managing Dir | Derivatives | 1,333 | 171.9 | 229,137.00 |
| Majkowski, Stephanie | Senior Director | Derivatives | 1,222 | 337.8 | 412,759.50 |
| You, Can | Senior Director | Derivatives | 1,190 | 496.2 | 590,478.00 |
| Guo, Xueying | Director | Derivatives | 1,139 | 466.2 | 531,087.00 |
| Langer, Cameron | Director | Derivatives | 1,085 | 463.2 | 502,745.00 |
| Fiorillo, Julianna | Director | Forensic Accounting | 930 | 1.9 | 1,767.00 |
| Steven, Kira | Director | Forensic Accounting | 930 | 24.4 | 22,692.00 |
| Simms, Steven | Sr Managing Dir | Restructuring | 1,495 | 94.9 | 141,875.50 |
| Diaz, Matthew | Sr Managing Dir | Restructuring | 1,390 | 172.6 | 239,914.00 |
| Joffe, Steven | Sr Managing Dir | Restructuring | 1,390 | 14.1 | 19,599.00 |
| Bromberg, Brian | Managing Dir | Restructuring | 1,075 | 301.6 | 324,220.00 |
| Gray, Michael | Director | Restructuring | 812 | 176.3 | 143,127.50 |
| Dawson, Maxwell | Sr Consultant | Restructuring | 730 | 261.7 | 191,041.00 |
| Sveen, Andrew | Sr Consultant | Restructuring | 591 | 271.8 | 160,650.00 |
| **Subtotal** | | | | **5,112.0** | **$ 6,148,746.00** |
| Less: 50% Non-Working Travel Time | | | | | (3,820.75) |
| **GRAND TOTAL** | | | | **5,112.0** | **$ 6,144,925.25** |

---

[4] Due to rate increases made in the ordinary course of FTI's business, certain professionals' billable rates increased during the Application Period. The rates above are each professional's blended rate for the Application Period.

## COMPENSATION BY PROJECT CATEGORY

| Task Code | Task Description | Total Hours | Total Fees |
|---|---|---:|---:|
| 1 | Current Operating Results & Events | 42.1 | $ 43,206.50 |
| 2 | Cash & Liquidity Analysis | 138.5 | 114,938.00 |
| 9 | Analysis of Employee Comp Programs | 1.6 | 1,570.00 |
| 10 | Analysis of Tax Issues | 14.7 | 20,433.00 |
| 12 | Analysis of SOFAs & SOALs | 18.9 | 15,516.00 |
| 13 | Analysis of Other Miscellaneous Motions | 15.0 | 16,547.00 |
| 14 | Analysis of Claims/Liabilities Subject to Compromise | 591.1 | 685,929.50 |
| 16 | Analysis, Negotiate and Form of POR & DS | 1,059.5 | 1,178,615.00 |
| 18 | Potential Avoidance Actions & Litigation | 87.5 | 82,228.00 |
| 21 | General Meetings with UCC and UCC Counsel | 79.1 | 120,750.00 |
| 23 | Firm Retention | 3.0 | 2,269.00 |
| 24 | Preparation of Fee Application | 170.2 | 123,156.00 |
| 25 | Travel Time | 6.2 | 7,641.50 |
| 26 | Cryptocurrency/Digital Assets Issues | 2,842.1 | 3,712,184.50 |
| 27 | Communications Planning & Execution | 42.1 | 23,206.00 |
| 30 | Investigative Examiner Matters | 0.4 | 556.00 |
| | **GRAND TOTAL** | **5,112.0** | **$ 6,144,925.25** |

**SUMMARY OF FEES**

1. The total number of hours expended by FTI professionals and paraprofessionals[5] in performing services for the Committee during the Application Period was 5,112.0 hours. Pursuant to the Retention Order, FTI is entitled to monthly compensation for its services provided to the Committee at its current hourly rates, plus reimbursement of necessary out of pocket expenses. The following paragraphs describe the primary services rendered by FTI during the Application Period.

*Code 14 – Analysis of Claims / Liabilities Subject to Compromise (591.1 hours)*

2. Prior to the Application Period, the Debtors filed the *Motion to Estimate Claims Based on Digital Assets* (D.I. 5202) (the "Estimation Motion"). More than 100 objections were filed to the Estimation Motion, essentially all by unsecured creditors. Though many of the objections were based on disputes of the use of the Petition Time as the time of claim valuation and the pending customer property question, some of the objectors provided support to their objections in the form of competing expert witnesses and different valuation methodologies. These objections required depositions and substantial information exchange in order to be properly addressed – indeed, some of them remain pending before the Court as of this filing. FTI's professionals worked closely with the Debtors to assess the basis for the alternative valuation methodologies suggested, leveraging highly technical analysis to develop a view on their reasonableness and respond to the objections appropriately.

3. Beyond the work related to the Estimation Motion, FTI devoted time to interpreting the claims pool as a whole. The aggregate value of claims filed against the estate is exponentially larger than even the most optimistic estimates of distributable value, meaning the reconciliation of this claims pool is critical to developing an accurate claims picture. During the Application Period,

---

[5] Please refer to the *Supplement to the Second Interim Fee Application of FTI Consulting, Inc.* (D.I. 1653) for further detail on the roles and responsibilities of FTI's various professional segments.

the Debtors produced recurring reports on the size and status of the claims pool, both on the customer and non-customer segments, and FTI's Restructuring team worked with the Debtors' advisors to understand the planned objections to claims and state of the reconciliation process. During the Application Period, the Debtors continued to file objections to some of these claims, which FTI analyzed. FTI prepared detailed presentations on all of these issues for the Committee, which were key for the Committee to understand the likely trajectory of claims figures and the corresponding impact on the amount and timing of expected recoveries.

*Code 16 – Analysis, Negotiate and Form of POR & DS (1,059.5 hours)*

4. During the Application Period, the Debtors' advisors provided an update to their recovery analysis. In light of the substantial increase in anticipated distributable value since any prior recovery analysis, FTI devoted significant time to understanding the Debtors' assumptions. Particularly with respect to some of the estate's more volatile assets, such as certain cryptocurrencies, FTI prepared analysis to evaluate a range of possible outcomes for creditors depending on market trends. Also during the Application Period were negotiations with parties with significant claims against the estate, including the Internal Revenue Service and Commodity Futures Trading Commission. As the proposed settlements with these parties, which remain pending as part of the Plan process, were crystallized, FTI prepared analyses and presentations for the UCC to help the UCC advise on and make informed decisions about these settlements and their impact on customer recoveries.

*Code 21 – General Meetings with UCC and UCC Counsel (79.1 hours)*

5. During the Application Period, FTI participated in meetings with the Committee and its advisors. In general, the entries in this task code correspond to weekly standing Committee and advisor calls. The agendas of these calls vary widely and are based on the latest case developments and deliverables. The Committee calls are FTI's primary means of communicating important

presentations and findings to the Committee, and the Committee advisor calls are key for the advisors to prioritize, strategize, and coordinate workstreams among professionals.

*Code 26 – Cryptocurrency / Digital Assets Issues (2,842.1 hours)*

6. During the Application Period, Galaxy Asset Management continued to monetize the Debtors' cryptocurrency and cryptocurrency trust assets pursuant to the Investment Services Agreement (authorized by the Court at D.I. 2504). Given the substantial rise in overall crypto prices since the date of that agreement, however, Galaxy has worked with the Debtors, UCC, and AHC to take advantage of the market conditions. This has required amendments to certain negotiated caps on the sale of coins, as well as discussions about which coins can and cannot be sold under the agreement. FTI's Derivatives team has been heavily involved in evaluating the impact of market conditions on realizable value and the circumstances under which an accelerated pace of sale is appropriate. For those coins which have been sold, FTI worked closely with the UCC and the Debtors to leverage the UCC's industry expertise into optimal creditor outcomes from the sales.

7. For the coins which are still held by the estate, FTI has conducted highly technical analysis regarding opportunities to stake, hedge, or otherwise manage these holdings (including sophisticated stress testing) in a risk managed and value-maximizing fashion for creditor recovery. As market conditions evolve, this too has required ongoing negotiations, amendments, and changes to the originally intended plans. In light of several UCC members' deep expertise in the crypto markets, FTI worked with the UCC to make recommendations to optimize value and minimize any potential slippage. This work has led to significant incremental value to the estate across billions of dollars of sales to date, which can be distributed to creditors in these Chapter 11 cases.

8. Furthermore, FTI's Derivatives team is primarily responsible on the UCC's side for valuing and evaluating the risks and value-maximizing management and monetization strategies

of these remaining crypto holdings. Given the size of these positions, FTI prepared analysis to estimate the realizable value of these holdings, taking into account factors such as market volatility, liquidity, and trading volume on a token-by-token basis. As part of this work, FTI also reviewed the Debtors' valuation of cryptocurrency assets in their recovery analysis on a coin-by-coin and aggregate portfolio basis.

## SUMMARY OF EXPENSES

| Expense Type | Amount |
| --- | ---: |
| Electronic Subscriptions | $ 8,750.00 |
| Travel Expenses | 679.04 |
| Working Meals | 55.00 |
| **GRAND TOTAL** | **$ 9,484.04** |

**VERIFICATION PURSUANT TO DEL. BANKR. L.R. 2016-2(g) AND 28 U.S.C. § 1746**

I, Matthew Diaz, pursuant to 28 U.S.C. § 1746, to the best of my knowledge and belief, and after reasonable inquiry, declare as follows:

1. I am a Senior Managing Director with the consulting firm FTI Consulting, Inc., together with its wholly owned subsidiaries ("FTI"). FTI has rendered professional services to the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 cases.

2. I have read the foregoing statement of FTI for compensation and reimbursement of expenses (the "Fee Application"). To the best of my knowledge, information and belief formed upon the basis of my participation in this case, as well as after reasonable inquiry, the facts set forth in the foregoing Fee Application are true and correct and materially comply with the applicable orders, rules, guidelines, and requirements as set forth by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Del. Bankr. L.R. 2016-2, and the Executive Office for the United States Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge, and belief.

Executed on: June 14, 2024              FTI CONSULTING, INC.

                                        By: */s/ Matthew Diaz*
                                            Matthew Diaz
                                            1166 Ave of the Americas, 15th Floor
                                            New York, NY 10036
                                            Telephone: 212-499-3611
                                            E-mail: matt.diaz@fticonsulting.com

                                            Financial Advisors to the Official
                                            Committee of Unsecured Creditors of FTX
                                            Trading Ltd., *et al.*

31744495.1