## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 17, 2024 at 1:00 p.m. (ET)**<br>**Objection Deadline: July 5, 2024 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING SALE OF DEBTORS' INTERESTS IN FTX JAPAN K.K. FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING FTX JAPAN HOLDING K.K.'S ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) DISMISSING THE CHAPTER 11 CASE OF FTX JAPAN K.K. EFFECTIVE AS OF CLOSING; AND (IV) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 305(a), 349, 363 and 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 1017, 2002, 6004, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 1017-2, 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (a) authorizing and approving the sale (the "Sale Transaction") of all of the outstanding equity interests (the "Interests") held

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

by Debtor FTX Japan Holdings K.K. ("Seller") in Debtor FTX Japan K.K. ("FTX Japan") to

bitFlyer Holdings, Inc. ("Purchaser"), free and clear of all liens, claims, interests and

encumbrances in accordance with the terms and conditions set forth in the Agreement;

(b) authorizing and approving Seller's entry into, and performance under, the Purchase and Sale

Agreement, dated as of June 19, 2024, a copy of which is attached hereto as Exhibit B (together

with all exhibits and schedules thereto, the "Agreement"), between Seller and Purchaser;

(c) dismissing the Chapter 11 Case of FTX Japan, effective upon the transfer of the Interests; and

(d) granting related relief.  In further support of this Motion, the Debtors submit the concurrently

filed declarations of Bruce Mendelsohn attached hereto as Exhibit C (the "Mendelsohn

Declaration") and of Yuzo Kano attached hereto as Exhibit D (the "Purchaser Declaration"),

which are incorporated herein by reference, and the Debtors respectfully state as follows:

## Background

1.      On November 11 and November 14, 2022 (as applicable, the "Petition

Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware

(the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11

Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On

December 15, 2022, the Office of the United States Trustee for the District of Delaware (the

"U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee")

pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## <u>Jurisdiction</u>

3.        The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are sections 105(a), 305(a), 349,

363 and 1112(b) of the Bankruptcy Code, Bankruptcy Rules 1017, 2002, 6004, 9007, 9008 and

9014 and Local Rules 1017-2, 2002-1, 6004-1 and 9006-1.  Pursuant to Local Rule 9013-1(f),

the Debtors consent to the entry of a final order or judgment by the Court in connection with this

Motion to the extent it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments consistent with Article III of the United States Constitution.

## <u>Facts Specific to Relief Requested</u>

### I.    FTX Japan

4.        Debtor FTX Japan is a wholly-owned subsidiary of Seller.  Seller was

acquired by Debtor FTX Trading in April 2022.

5.        Prior to the Petition Date, FTX Japan operated a registered cryptocurrency

exchange providing residents of Japan with the ability to trade crypto and crypto derivatives.

FTX Japan is subject to the regulatory supervision of the Financial Services Agency of Japan

(the "JFSA") and the Kanto Local Finance Bureau, and is registered as a Crypto-Asset Exchange

Service Provider and Type I Financial Instruments Business Operator.

## II.    Marketing Process

6.      In November 2022, the Debtors' investment banker, Perella Weinberg

Partners L.P. ("PWP"), began outreach to potential purchasers of FTX Japan as part of a broader

process for several of the Debtors' assets.  Over 150 parties were contacted, of which 64

indicated preliminary interest in FTX Japan specifically.  *See* Mendelsohn Declaration ¶ 11.

7.      In December 2022, the Debtors filed the *Motion of Debtors for Entry of

Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner

of Notices for the Sale of Certain Businesses, (B) Approving Assumption and Assignment

Procedures and (C) Scheduling Auction(s) and Sale Hearing(s) and (II)(A) Approving the Sale(s)

Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption

and Assignment of Executory Contracts and Unexpired Leases* [D.I. 233], seeking approval of,

among others, bid procedures in connection with FTX Japan.  In January 2023, the Court

approved the Debtors' motion and entered the *Order (A) Approving Bid Procedures, Stalking

Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, (B)

Approving Assumption and Assignment Procedures and (C) Scheduling Auction(s) and Sale

Hearing(s)* [D.I. 487].

8.      For a number of reasons, as noted in the *Notice of Revised Dates for

LedgerX, Embed, FTX Japan and FTX Europe Sales* [D.I. 817], the sale process for FTX Japan

was postponed indefinitely in March 2023.  Two bids were received after the process was

postponed.  *See* Mendelsohn Declaration ¶ 12.

9.      The Debtors, with the assistance of their investment banker PWP, then designed a new process to market the Interests in an efficient and competitive sales process in cooperation with FTX Japan based on the Debtors' business judgment that a consensual sale process would maximize potential value.  *See* Mendelsohn Declaration ¶ 13.

10.     As a result of the marketing efforts, the Debtors entered into non-disclosure agreements with three new potential purchasers and provided all such potential purchasers access to information on the Interests.  PWP, on behalf of the Debtors, also contacted an additional seven potential purchasers who had previously indicated interest in acquiring FTX Japan and had entered into non-disclosure agreements.  The Debtors ultimately received indications of interest from four of these parties, including one from members of FTX Japan's current management team, and subsequently entered into good-faith negotiations with all four parties, including negotiation of the Agreement with the Purchaser.  *See* Mendelsohn Declaration ¶ 14.

11.     One potential purchaser withdrew from the process in late May 2024, and the Debtors continued to negotiate and evaluate proposals from the other three parties through the date of the Agreement.  *See* Mendelsohn Declaration ¶ 15.

12.     After thoroughly evaluating the bids received from all of the parties with the assistance of PWP, the Debtors decided to enter into the Agreement with Purchaser based on its superior offer and ability to execute the Sale Transaction within a short time frame.  *See* Mendelsohn Declaration ¶ 16.

-5-

### III.    Sale Transaction

13.    On June 19, 2024, Seller and Purchaser executed the Agreement, which contains the following material terms:[2]

| Purchase Price | As set forth in Section 1.2 of the Agreement, the aggregate consideration payable for the Interests consists of JPY 4,500,000,000, and shall be payable without any withholding or deduction. |
| --- | --- |
| Closing Date | The closing of the transactions contemplated by the Agreement (the "Closing") will take place at 9:00 a.m., Tokyo Time, at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 or remotely via electronic exchange of documents and signatures on the day that is the fifth (5th) business day following the date on which all of the conditions to closing specified in Article 5 of the Agreement are satisfied or waived, or at such other time as Purchaser and Seller shall agree in writing (the "Closing Date"). |
| Releases | At Closing, Purchaser and FTX Japan generally release each of the FTX Trading, Seller and their Affiliates (but excluding FTX Japan), together with their respective successors and assigns, from and with respect to any and all claims, obligations, rights, suits, damages, causes of actions, choses in actions, remedies and liabilities, of any kind, nature or description ("Claims"), that have existed or occurred at any time prior to and including the date of the Closing. |
|  | At Closing, Seller and FTX Trading generally release FTX Japan and its subsidiaries as of the Closing, together with their successors and assigns, from and with respect to any and all Claims that have existed or occurred at any time prior to and including the date of the Closing. |
| Conditions to Closing | There are no financing conditions to Closing, and customary conditions precedent to Closing are set forth in Article 5 of the Agreement, all of which the Debtors believe either are or will be satisfied prior to Closing.  The Agreement requires the entry of a Sale Order authorizing and approving the Sale Transaction prior to Closing. |

---

[2]    Capitalized terms used in this Section III but not otherwise defined herein are to be given the meanings ascribed to them in the Agreement.  To the extent that there are inconsistencies between any summary description of the Agreement contained herein and the terms of the Agreement, the terms of the Agreement shall govern.

| | |
|---|---|
| **Regulatory Condition** | Either of the following conditions with respect to the change of ownership of FTX Japan shall have been satisfied prior to Closing: (i) none of the Financial Services Agency of Japan and the Kanto Local Finance Bureau of the Ministry of Finance of Japan having provided notice to Seller or Purchaser of its objection to the change of ownership in FTX Japan in connection with the Transactions within thirty (30) calendar days of the date of the Agreement or (ii) all such objections having been resolved at any time. |
| **Transfer Taxes** | To the extent not exempt under section 1146 of the Bankruptcy Code, Purchaser shall pay all transfer taxes. |
| **Private Sale/Ability to Solicit Additional Bids** | The Debtors do not intend to conduct an auction for the sale of the Interests, which have been subject to marketing efforts as described herein.  However, as set forth in Section 4.2 of the Agreement, from and after the date thereof until three (3) days before the Sale Hearing, Seller may solicit bids for the sale of the Interests and respond to inquiries or offers to purchase FTX Japan and/or its assets. |
| **Fiduciary Out** | The Agreement may be terminated by Seller if Seller or the board of directors of Seller determines that proceeding with the Transactions or failing to terminate the Agreement would be inconsistent with its fiduciary duties. |
| **Sale of Avoidance Actions** | The Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code. |
| **Sale of Causes of Actions** | The sale of the Interests does not include the sale of any causes of action held by any of the Debtors against any person or entity, including but not limited to causes of action against Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison or any person known by the Debtors to have a familial relationship with any of the foregoing persons. |

14.    In addition to the material terms of the Agreement described above, in accordance with Local Rule 6004-1(b)(iv), the Debtors note the following with respect to the Sale Transaction:

| | |
|---|---|
| **No Sale to an Insider** | Purchaser is not an insider of Seller or any of the other Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code.  *See* Local Rule 6004-1(b)(iv)(A). |

| | |
|---|---|
| **Agreements with Management** | Purchaser has not discussed or entered into any agreements with the Debtors' management or key employees regarding compensation or future employment.  *See* Local Rule 6004-1(b)(iv)(B). |
| **Releases** | As described above.  *See* Local Rule 6004-1(b)(iv)(C). |
| **Private Sale/No Competitive Bidding** | No auction will be conducted, as described above.  *See* Local Rule 6004-1(b)(iv)(D). |
| **Closing and Other Deadline** | As described above.  *See* Local Rule 6004-1(b)(iv)(E). |
| **Good Faith Deposit** | None.  *See* Local Rule 6004-1(b)(iv)(F). |
| **Interim Arrangements with Purchaser** | None.  *See* Local Rule 6004-1(b)(iv)(G). |
| **Use of Proceeds** | None.  *See* Local Rule 6004-1(b)(iv)(H). |
| **Tax Exemption** | None.  *See* Local Rule 6004-1(b)(iv)(I). |
| **Record Retention** | Not applicable.  The Debtors are not selling substantially all of their assets under the Agreement.  *See* Local Rule 6004-1(b)(iv)(J). |
| **Sale of Avoidance Actions** | None, as described above.  *See* Local Rule 6004-1(b)(iv)(K). |
| **Requested Findings as to Successor Liability** | A condition to Closing is entry of the Order, which shall provide that Purchaser under no circumstances shall be deemed to be a successor of the Debtors.  *See* Local Rule 6004-1(b)(iv)(L). |
| **Sale Free and Clear of Unexpired Leases** | Not applicable.  *See* Local Rule 6004-1(b)(iv)(M). |
| **Credit Bid** | Not applicable.  *See* Local Rule 6004-1(b)(iv)(N). |
| **Relief from Bankruptcy Rules 6004(h) and 6006(d)** | The Debtors request a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).  *See* Local Rule 6004-1(b)(iv)(O). |

## **Relief Requested**

15.     By this Motion, the Debtors seek entry of the Order, substantially in the

form attached hereto as <u>Exhibit A</u>, (a) authorizing and approving the Sale Transaction, free and

clear of any lien (statutory or otherwise), charge, pledge, mortgage, lease, easement,

hypothecation, usufruct, deed of trust, security interest, option, right of use, first offer or first

refusal, servitude, restrictive covenant or condition, encroachment, claim, interest, restriction or

any other encumbrance of any kind ("Liens"), other than restrictions on transfer arising solely under applicable federal and state securities laws or any applicable laws and any transfer restrictions set forth in the FTX Japan's organizational documents ("Permitted Encumbrances"); (b) authorizing and approving the Seller's entry into, and performance under, the Agreement; (c) dismissing the Chapter 11 Case of FTX Japan, effective upon the transfer of the Interests; and (d) granting related relief.

## Basis for Relief

### I.    The Court Should Approve the Sale Under 11 U.S.C. § 363(b).

16.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 does not provide a standard establishing when it is appropriate for bankruptcy courts to authorize the sale of a debtor's assets, courts in this district have held that such a sale may be authorized under section 363 if the court finds a "sound business purpose" for the sale.  *See Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)) (citations omitted); *Culp* v. *Stanziale (In re Culp)*, 550 B.R. 683, 697 (D. Del. 2015), *appeal dismissed*, 681 Fed. Appx. 140 (3d Cir. 2017).  In evaluating whether a sale under section 363 is justified by a sound business purpose, courts consider a variety of factors which essentially amount to a business judgment test.  *See In re Culp*, 550 B.R. at 697 (citing *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153).  In Delaware, the business judgment rule is a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *Stanizale* v. *Nachtomi (In re Tower Air, Inc.)*, 416

F.3d 229, 238 (3d Cir. 2005) (citing *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del. 1984)); *see also*

*In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that Delaware's business

judgment rule principles have "vitality by analogy" in chapter 11).

   17. Courts have considered the following factors in determining whether a

proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale;

(b) whether adequate and reasonable notice of the sale was provided to interested parties;

(c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the

parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL

32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176

(D. Del. 1991)); *see also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS

5367, at *18 (Bankr. D. Del. Nov. 16, 2012).

   A. <u>A Sound Business Justification Exists for the Sale Transaction</u>

   18. A sound business purpose for the sale of a debtor's assets outside the

ordinary course of business exists where such sale is necessary to maximize and preserve the

value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Mushroom

Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to

protect and maximize the value of the estate's assets); *In re Lionel Corp.*, 722 F.2d at 1071; *Four

B. Corp.* v. *Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564–65 (8th Cir.

1997).

   19. Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private

sales or sales without an auction and courts in this district have held that a debtor may conduct a

private sale when a good business reason exists.  *See, e.g.*, *In re RTI Holding Company, LLC*,

No. 20-12456 (JTD) (Feb. 1, 2021), D.I. 1006 (approving the private sale of real property for

approximately $1.6 million); *In re PQ New York, Inc.*, No. 20-11266 (JTD) (June 29, 2020), D.I.

435 (approving the private sale of assets for approximately $3 million); *In re Nortel Networks*

*Inc.*, No. 09-10138 (KG) (Nov. 23, 2010), D.I. 4402 (approving the private sale of limited

partnership interests and limited liability corporation interests for approximately $22.8 million);

*In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Dec. 17, 2008), D.I. 20284 (authorizing the

private sale of limited partnership interests for approximately $8 million).  The proposed Sale

Transaction represents a sound exercise of the Debtors' business judgment and is justified under

sections 363(b) and 105(a) of the Bankruptcy Code.

20.    The Debtors submit that it is advantageous for Seller to sell the Interests as

contemplated by the Agreement.  Selling or transferring the Interests pursuant to the proposed

Sale Transaction in a private sale is the most efficient and cost-effective means of minimizing

costs to the estates while maximizing the value for the benefit of the estates.  Purchaser's offer

and ability to execute the Sale Transaction within a short time frame represent a superior

outcome compared to the other bids received.  The Debtors also determined that the Sale

Transaction allows the Debtors' estates to realize a higher or otherwise better value for FTX

Japan than other options, including expected recoveries in connection with liquidation scenarios.

*See* Mendelsohn Declaration ¶ 9.  As such, the Debtors submit that good business reason exists

for conducting a private sale under the circumstances and that the proposed Sale Transaction is

justified by a sound business purpose.

B.    Adequate and Reasonable Notice of the Sale Was Provided to Interested Parties

21.    Notice of this Motion has been provided to the following parties:  (A) the

U.S. Trustee; (B) counsel to the Committee; (C) any known affected creditor(s) asserting a lien,

claim or encumbrance against, or interest in, the relevant Interests; (D) any party that has

expressed an interest in purchasing the Interests during the last six months; (E) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; (F) all known creditors of FTX Japan; and (G) any other party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

      C.    <u>The Sale Will Produce a Fair and Reasonable Price for the Property</u>

      22.    The Debtors believe that the sale of the Interests to Purchaser through a private sale is the best way to maximize value for their estates.

      23.    The Debtors believe that the Purchase Price for the Interests is fair and reasonable. The Debtors ensured that the sale of the Interests would reflect their fair market value by, with the assistance of PWP, robustly marketing the Interests and conducting arm's-length negotiations. The Debtors carefully considered and analyzed the offer as set forth in the Agreement in comparison to their other options, including expected recoveries from a liquidation of FTX Japan, and concluded that a sale of the Interests pursuant to the Agreement will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors. Among the offers received by the Debtors, Purchaser's offer is the highest or otherwise best offer and would provide a greater recovery for the Debtors' estates. *See* Mendelsohn Declaration ¶ 19.

      24.    In the Agreement, the Debtors negotiated certain "go-shop" provisions which will allow the Debtors to continue marketing the Interests widely, including to any prospective purchasers who receive notice of the Sale Transaction and the Agreement. Such provision allows the Debtors to solicit higher or better offers from any third party up until three

days prior to the hearing on the Motion (the "<u>Sale Hearing</u>").  *See* Mendelsohn Declaration ¶ 20.

Further, as provided by section 6.1(f) of the Agreement, the Purchase Price is also subject to a

"fiduciary out" where the Agreement can be terminated by the board of directors (or similar

governing body) of Seller if it is determined to be inconsistent with its fiduciary duties.  *See*

Mendelsohn Declaration ¶ 21.  In addition, pursuant to section 6.1(e) of the Agreement, if an

Alternative Transaction is received by the Debtors, Seller has the right, but not the obligation, to

terminate the Agreement upon entering into a definitive agreement with respect to such

Alternative Transaction.  *See* Mendelsohn Declaration ¶ 22.  Accordingly, the Debtors submit

that the proposed Sale Transaction will produce a fair and reasonable price.

> D.  <u>The Parties Have Acted in Good Faith and Purchaser Should Be Entitled to the
> Good Faith Protections of Section 363(m) of the Bankruptcy Code</u>

25.  Section 363(m) of the Bankruptcy Code protects a good faith purchaser's

interest in property purchased from the debtor notwithstanding that authorization of the sale

conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section

363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

26.  Section 363(m) "reflects the . . . 'policy of not only affording finality to

the judgment of the bankruptcy court, but particularly to give finality to those orders and

judgments upon which third parties rely.'"  *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 147

(3d Cir. 1986) (quoting *Hoese Corp.* v. *Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th

Cir. 1983)); *see also United States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that

section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts

in maximizing the price for assets sold in such proceedings").

27.     While the Bankruptcy Code does not define "good faith," the Third Circuit

has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re*

*Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  To constitute lack of good faith, a purchaser's

conduct in connection with a sale must usually amount to "fraud, collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other

bidders."  *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978))

(citations omitted).  Due to the absence of a bright-line test for good faith, the determination is

based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the

course of the sale proceedings."  *See id.*; *see also Pursuit Capital Mgmt. Fund I, L.P.* v. *Burtch*

*(In re Pursuit Capital Mgmt., LLC)*, 874 F.3d 124, 135 (3d Cir. 2017).

28.     The Debtors submit that the terms and conditions of the Agreement have

been negotiated at arm's length without any indication of fraud or collusion between Seller and

Purchaser.  Purchaser is not an insider of the Debtors as that term is defined in section 101(31) of

the Bankruptcy Code, and the Debtors believe that Purchaser has not engaged in any conduct that

would indicate or constitute a lack of good faith.  *See* Purchaser Declaration ¶ 6.  Accordingly,

the Debtors request the finding that Purchaser is a good-faith purchaser entitled to the protections

of section 363(m) of the Bankruptcy Code.

## II.    The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

29.    The Debtors request authorization to sell the Interests free and clear of all Liens, other than Permitted Encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens attaching to the proceeds of the sale of the Interests.

30.    The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

31.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citation omitted).

32.    Furthermore, section 105(a) of the Bankruptcy Code grants the Court broad discretionary powers, providing that "[t]he Court may issue any order, process or

-15-

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

11 U.S.C. § 105(a).  This equitable power may be utilized to effectuate the provisions of section

363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325

(Bankr. D. Del. 2001), at *8 (highlighting bankruptcy courts' equitable authority to authorize

sale of estate assets free and clear).

33.     The Debtors submit that the Sale Transaction satisfies one or more of the

requirements of section 363(f) of the Bankruptcy Code.  First, absent any objection to the Sale

Transaction, a holder of any liens, claims, interests and encumbrances shall be deemed to have

consented to the Sale Transaction, and the Interests may be sold free and clear of all liens,

claims, interests and encumbrances.   *See, e.g.*, *Hargrave* v. *Twp. of Pemberton* (*In re Tabone,

Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens,

claims, interests and encumbrances satisfies section 363(f)(2)) (citations omitted); *In re BSA*, 642

B.R. 504, 569 (Bankr. D. Del. 2022) (citing *In re Tabone, Inc.*, 175 B.R. at 858).  Further, the

Debtor submits that any holder of liens, claims and encumbrances against or interests in the

Interests could be compelled in a legal or equitable proceeding to accept a monetary satisfaction

of their interests.  *See, e.g.*, *In re Southland Royalty Co. LLC*, 623 B.R. 64, 98 (Bankr. D. Del.

2021).

34.     A sale free and clear of all liens, claims, interests and encumbrances is

necessary to maximize the value of the Interests.  Not transferring the Interests free and clear of

all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to

maximize the value of the estates, and the transfer of the Interests other than pursuant to a

transfer that is free and clear of all Liens (other than Permitted Encumbrances).   Purchaser

-16-

would not have entered into the Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchaser free and clear of all Liens (other than Permitted Encumbrances).  *See* Mendelsohn Declaration ¶ 24 and Purchaser Declaration ¶ 7.

35.    Furthermore, any Liens (other than Permitted Encumbrances) existing immediately prior to the Closing will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party-in-interest.  The Debtors submit that holders of any Liens will be sufficiently protected by the availability of the proceeds of the sale to satisfy their claims and interests.  Accordingly, the Debtors submit that the sale of the Interests free and clear of Liens (other than Permitted Encumbrances), is in the best interests of the Debtors' estates and stakeholders.

## III.    The Dismissal of the Chapter 11 Case of FTX Japan is Appropriate Under Section 1112(b) of the Bankruptcy Code.

36.    Dismissal of a chapter 11 case is governed by section 1112(b) of the Bankruptcy Code, which permits a party-in-interest, after notice and hearing, to seek to dismiss a chapter 11 case in the best interests of the creditors and the estate for cause.  *See* 11 U.S.C. § 1112(b).  "Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999)).

### A.    Cause Exists to Dismiss the FTX Japan Chapter 11 Case

37.    Whether cause exists to dismiss a chapter 11 case is determined on a case-by-case basis and is a decision within the sound discretion of the bankruptcy court.  *In re*

*American Capital Equipment*, 688 F.3d at 161; *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007);

*Sullivan Central Plaza I, Ltd.* v. *BancBoston Real Estate Capital Corp.* (*In re Sullivan Cent.*

*Plaza I, Ltd.*), 935 F.2d 723, 728 (5th Cir. 1991); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674

(11th Cir. 1984); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)

("Bankruptcy judges have wide discretion to determine whether cause exists to dismiss . . . a

case under section 1112(b)."); *In re Gucci*, 174 B.R. 401, 410 (Bankr. S.D.N.Y. 1994) ("The

Bankruptcy Court has wide discretion to determine if cause exists, and how to ultimately dispose

of the case.").

      38.    Courts have broad equitable discretion under section 1112(b) to dismiss a

chapter 11 case based on the particular facts and circumstances of the case.  *See C-TC 9th Ave.*

*P'ship* v. *Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1311 n.5 (2d Cir. 1997); *In re*

*MF Glob. Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012); *Trident Assocs. Ltd. P'ship*

v. *Metro Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995), *cert.*

*denied*, 516 U.S. 869 (1995); *In re Smith*, 77 B.R. 496, 499-500 (Bankr. E.D. Pa. 1987).

      39.    Section 1112(b)(4) identifies certain examples of "cause" for dismissal of

a chapter 11 case.  11 U.S.C. § 1112(b)(4).  A bankruptcy court, however, is not constrained by

those enumerated examples and may find "cause" based on the facts and circumstances of the

particular chapter 11 case.  *See In re Nugelt, Inc*, 142 B.R. 661, 665 (Bankr. D. Del. 1992).  The

legislative history of section 1112(b) of the Bankruptcy Code also indicates that the list set forth

in sections 1112(b)(4)(A)-(P) of the Bankruptcy Code is nonexclusive, such that the bankruptcy

court has the ability to dismiss a chapter 11 case for any reason cognizable to its equity powers.

*See* H.R. Rep. No. 595, 95th Cong., 2d. Sess. 405-06 (1978); *see also Official Comm. of*

-18-

*Unsecured Creditors v. Nucor Corp. (in re SGL Carbon Corp.)*, 200 F.3d 154, 160 (3d Cir. 1999); *Carolin Corp.* v. *Miller*, 886 F.2d 693, 699 (4th Cir. 1993).

40.    The circumstances affecting FTX Japan constitute "cause" to dismiss its Chapter 11 Case effective upon transfer of the Interests.  Upon the closing of the Sale Transaction, the Interests will be sold to the Purchaser and will no longer be part of the Debtors' estates.  As such, FTX Japan will no longer require a chapter 11 case, and it would not be economically sensible for FTX Japan to remain in chapter 11.  There are administrative costs and expenses associated with FTX Japan remaining in chapter 11 without corresponding benefits for any creditors or stakeholders.  Further, Purchaser's willingness to consummate the Sale Transaction is premised on taking full operational control of FTX Japan at closing of the Sale Transaction without the overhang of the Chapter 11 Case.  Purchaser would not have entered into the Agreement and would not consummate the Sale Transaction if the Chapter 11 Case of FTX Japan were not dismissed effective upon the transfer of the Interests.  *See* Purchaser Declaration ¶ 8.  Accordingly, the Debtors submit that sufficient cause exists for the dismissal of FTX Japan.

B.    <u>Dismissal of the FTX Japan Chapter 11 Case Is in the Best Interests of the Creditors and Estates</u>

41.    Once cause is established, a court must examine whether dismissal or conversion of a case to chapter 7 is in the best interests of the creditors and the estate.  *In re American Capital Equipment*, 688 F.3d at 161.  While the Bankruptcy Code does not define the "best interests of the creditors and the estate," "[t]he cases are uniform in holding that the decision to dismiss or convert is within the bankruptcy court's discretion and is based on the facts.  It is a case-by-case decision."  *In re Calrissian LP*, 2018 WL 3854004, at *2 (Bankr. D. Del. 2018); *see also In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y.

-19-

2001) (noting that "courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interest of the creditors").

42.     As described above, the Debtors concluded that a sale of the Interests pursuant to the Agreement will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors.  Following the Sale Transaction, remaining in chapter 11 will not provide FTX Japan any additional benefits.  Dismissal, however, would reduce fees, time and other costs associated with FTX Japan's continuation in chapter 11.  Accordingly, the Debtors respectfully submit that voluntary dismissal of the Chapter 11 Case of the FTX Japan is in the best interests of the Debtors' estates and their creditors.

## IV.    Alternatively, the Court Should Dismiss the FTX Japan Chapter 11 Case Pursuant to Section 305(a) of the Bankruptcy Code.

43.     Section 305(a)(1) of the Bankruptcy Code provides that the "court . . . may dismiss a case under [chapter 11], at any time if: (1) the interests of the creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).

44.     Dismissal under this provision is determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court.  *In re Sky Group Intern. Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989).  Courts look to the following *non-exhaustive* list of factors to gauge the best interests of the creditors and the debtor, including, among other things: (a) economy and efficiency of administration; (b) whether federal proceedings are necessary to reach a just and equitable solution; (c) whether there is an alternative means of achieving an equitable distribution of assets; and (d) whether the debtor and the creditors are able to work out a less

-20-

expensive out-of-court arrangement which better serves the interests in the case. *In re Crown*

*Village Farm, LLC*, 415 B.R. 86, 96 (Bankr. D. Del. 2009).

45.     Here, for the reasons stated above, dismissal under section 305(a) is in the

best interests of creditors and the Debtors' estates, and the Court should dismiss the Chapter 11

Case of FTX Japan pursuant to section 305(a) of the Bankruptcy Code.

## V.  All Orders Should Remain in Effect for the Time Period FTX Japan Was Part of the Chapter 11 Cases.

46.     The Debtors request that all stipulations, settlements, rulings, orders and

judgments of the Court entered in these jointly administered Chapter 11 Cases remain in full

force and effect and survive the dismissal of the Chapter 11 Case of FTX Japan solely with

respect to the time period where each FTX Japan was part of the Chapter 11 Cases.  Although

section 349 of the Bankruptcy Code typically contemplates that dismissal will reinstate the

prepetition state of affairs by revesting property in the debtor and vacating orders and judgments

of the bankruptcy court, the Court may "for cause, orde[r] otherwise."  11 U.S.C. § 349(b).

"[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate

order to protect rights acquired in reliance on the bankruptcy case.'"  *Czyzewski* v. *Jevic Holding*

*Corp*., 137 S. Ct. 973, 984 (2017).

47.     The Debtors submit that cause exists to allow all stipulations, settlements,

rulings, orders and judgments entered by the Court during the Chapter 11 Cases to be given

continued effect for the period where FTX Japan was part of the Chapter 11 Cases,

notwithstanding the requested dismissal.  This relief is necessary to protect the Debtors and

preserve the authority the Debtors had to act pursuant to the various orders entered by the Court,

including, but not limited to, any orders authorizing FTX Japan to pay (a) prepetition wages,

-21-

salaries and other compensation and benefits, and reimbursable expenses, to employees and

(b) prepetition trade claims of foreign (non-U.S.) vendors.  Unless the Court orders otherwise,

section 349 of the Bankruptcy Code could unravel the effect and authorizations of the orders

entered in the Chapter 11 Cases.  By allowing the orders of this Court to remain in full force and

effect and survive dismissal for the period of time when FTX Japan was part of the Chapter 11

Cases, the Court will preserve the Debtors' authority to act pursuant to such orders

notwithstanding dismissal of the Chapter 11 Case of FTX Japan.

48.     The Court has granted relief similar to the relief requested herein with

respect to orders of the Court remaining in full force and effect and surviving dismissal of a

debtor's chapter 11 case.  *See, e.g., In re VG Liquidation, Inc., et al*., Case No. 18-11120 (JTD)

(Bankr. D. Del. Aug. 19, 2019) [D.I. 1183, 1184] (authorizing all prior orders of the court to

"remain in full force and effect, . . . be unaffected by the dismissal of the Chapter 11 Case, and

[be] specifically preserved for purposes of finality of judgment and *res judicata*"); *In re*

*BioAmber Inc*., Case No. 18-11078 (LSS) (Bankr. D. Del. June 20, 2018) [D.I. 34] (same); *In re*

*St Alexius Properties, LLC*, Case No. 18-12527 (CSS) (Bankr. D. Del. Feb. 4, 2019) [D.I. 5]

(ordering that, notwithstanding section 349, all orders of the Court entered "on or before the

Dismissal Date shall remain in full force and effect and shall survive the dismissal of the

bankruptcy cases").

### Bankruptcy Rules 6004(a), 6004(h) and 6006(d)

49.     The Debtors request that the Court (a) find that notice of the Motion is

adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay

requirements under Bankruptcy Rules 6004(h) and 6006(d).  In light of the Debtors' current

financial conditions and the importance of an efficient timeline for maximizing the value of the

Interests, the proposed Sale Transaction contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders. Accordingly, the Debtors request that the Order be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

### Notice

50.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) any known affected creditor(s) asserting a lien, claim or encumbrance against, or interest in, the relevant Interests; (d) any party that has expressed an interest in purchasing the Interests during the last six months; (e) any interested or affected governmental or regulatory entity, including the Internal Revenue Service, the Securities and Exchange Commission and the United States Department of Justice; (f) all known creditors of FTX Japan; and (g) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

### No Prior Request

51.     No prior motion for the relief requested herein has been made to this or any other court.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: June 20, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*