# EXHIBIT C

**Mendelsohn Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Ref. No. ____ |

**DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF
MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
APPROVING SALE OF DEBTORS' INTERESTS IN FTX JAPAN K.K. FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES;
(II) AUTHORIZING AND APPROVING FTX JAPAN HOLDING K.K.'S ENTRY INTO,
AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT;
(III) DISMISSING THE CHAPTER 11 CASE OF FTX JAPAN K.K. EFFECTIVE AS OF
CLOSING; AND (IV) GRANTING RELATED RELIEF**

I, Bruce Mendelsohn, hereby declare as follows:

1. I am a Partner in the Advisory Group at Perella Weinberg Partners L.P. ("PWP"), a financial advisory firm that maintains an office at 767 5th Avenue, New York, New York 10153, and the Debtors' investment banker. PWP is a full-service investment banking firm providing strategic and financial advisory services, including with respect to mergers and acquisitions, capital raising and restructuring transactions across a broad range of industries. PWP and its professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out of court and in Chapter 11 proceedings.

2. I have been employed as a Partner of PWP since January 2016. I received

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

-2-

a Bachelor of Arts degree in 1984 from Emory University and a Master of Business Administration in 1989 from the Wharton School at the University of Pennsylvania.

3.  Prior to joining Perella Weinberg Partners, I was a Partner at Goldman Sachs where I worked from May 1998 to June 2015 and most recently served as Head of the Americas Restructuring Group and part of the U.S. Leveraged Finance team.  I was named a Partner at Goldman Sachs in 2010.  From 2006 to 2008, I served as Chief Underwriting Officer for North America, where I was a member of Goldman Sachs' Firmwide Capital Committee and its Special Situations Specialty Lending Investment Committee.  I served as Global Head of the Special Assets and Bank Debt Portfolio groups from 2000 to 2008, and started at Goldman Sachs in the Securities Division where I spent two years working on the distressed bond and bank loan proprietary trading desks.  Prior to Goldman Sachs, I worked for UBS and MJ Whitman in restructuring and distressed securities, and began my career in finance at Lehman Brothers.

4.  In addition to working with the Debtors in the above-captioned cases (the "Chapter 11 Cases"), my experience includes representing companies, boards, creditors, and other stakeholders in a variety of situations across a broad range of industries, including the chapter 11 cases of:  American Tire Distributors, Bonanza Creek, Breitburn Energy, Bristow Group, California Resources Corporation, Chesapeake Energy, Cineworld Group, Crossmark Holdings, Eco-Bat Technologies, Fieldwood Energy, Garrett Motion, iHeart Communications, LATAM Airlines, Memorial Production Partners, Pacific Drilling, Sanchez Energy Corporation, Seadrill, Sears, Video Equipment Rental Corporation, Windstream, and 21st Century Oncology, among others.  In addition, while at Goldman Sachs, I was involved in the following bankruptcy cases:  Bridge Information Systems, Brothers Gourmet Coffees, Calpine, CRC Communications,

Focal Communications, General Growth Properties, Lehman Brothers, Network Plus, Nextel International, Orchard Supply, Qwest Communications and 360 Networks.

5. I submit this declaration (this "Declaration") in support of the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving Sale of Debtors' Interests in FTX Japan K.K. Free and Clear of All Liens, Claims, Interests and Encumbrances; (II) Authorizing and Approving FTX Japan Holding K.K.'s Entry Into, and Performance Under, the Purchase and Sale Agreement; (III) Dismissing the Chapter 11 Case of FTX Japan K.K. Effective as of Closing; and (IV) Granting Related Relief* (the "Motion").[2]

6. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"); (ii) information learned from my review of relevant documents; and/or (iii) information supplied by members of the Debtors' management, employees of PWP working directly with me or under my supervision, direction or control, and/or from the Debtors' other professionals and advisors.

7. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. I am not being compensated for this testimony other than through payments to be received by PWP as a professional the Debtors have retained; none of those payments are specifically payable on account of this testimony. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

A. **A Sound Business Justification Exists for the Sale Transaction.**

8. I believe that the proposed Sale Transaction and Seller's entry into the Agreement represent a sound exercise of the Debtors' business judgment and are in the best interests of the Debtors, their estates, creditors and other parties-in-interest.

9. In my opinion, it is advantageous for Seller to sell the Interests as contemplated by the Agreement. Selling or transferring the Interests pursuant to the proposed Sale Transaction in a private sale is the most efficient and cost-effective means of minimizing costs to the estates while maximizing the value for the benefit of the estates. Purchaser's offer and ability to execute the Sale Transaction within a short time frame represent a superior outcome compared to the other bids received. The Sale Transaction also allows the Debtors' estates to realize a higher or otherwise better value for FTX Japan than other options, including expected recoveries in connection with liquidation scenarios.

B. **The Sale Will Produce the Highest and Best Offer.**

10. PWP was engaged by the Debtors effective November 16, 2022 to provide financial advisory, restructuring, financing and sale services to the Debtors during these Chapter 11 Cases. PWP has assisted the Debtors in their exploration and evaluation of strategic alternatives to maximize the value of, and monetize, their diverse, global assets. This has included a review of documents regarding the Debtors' businesses and investments, discussions with management of the Debtors, discussions with businesses in which the Debtors have made investments, and coordinating and initiating discussions with potential purchasers.

11. In November 2022, PWP began outreach to potential purchasers of FTX Japan as part of a broader process for several of the Debtors' assets. Over 150 parties were contacted, of which 64 indicated preliminary interest in FTX Japan specifically.

12. For a number of reasons, the sale process for FTX Japan was postponed indefinitely in March 2023. Two bids were received after the process was postponed.

13. The Debtors, with the assistance of PWP, then designed a new process to market the Interests in an efficient and competitive sales process in cooperation with FTX Japan based on the Debtors' business judgment that a consensual sale process would maximize potential value.

14. As a result of the marketing efforts, the Debtors entered into non-disclosure agreements with three new potential purchasers and provided all such potential purchasers access to information on the Interests. PWP, on behalf of the Debtors, also contacted an additional seven potential purchasers who had previously indicated interest in acquiring FTX Japan and had entered into non-disclosure agreements. The Debtors ultimately received indications of interest from four of these parties, including one from members of FTX Japan's current management team, and subsequently entered into good-faith negotiations with all four parties, including negotiation of the Agreement with the Purchaser.

15. One potential purchaser withdrew from the process in late May 2024, and the Debtors continued to negotiate and evaluate proposals from the other three parties through the date of the Agreement.

16. After thoroughly evaluating the bids received from all of the parties with the assistance of PWP, the Debtors decided to enter into the Agreement with Purchaser based on its superior offer and ability to execute the Sale Transaction within a short time frame.

17. Based on my experience, involvement in the process and review of available alternatives, it is my opinion that there is no better or higher offer currently available for the Interests to be purchased in the proposed sale, and that the Agreement preserves the

Debtors' ability to consider any higher or better offer. I believe that all interested potential purchasers have been afforded a full, fair and reasonable opportunity to submit their highest or otherwise best offer to purchase the Interests.

### C. **The Sale Will Produce a Fair and Reasonable Price for the Property.**

18. Based on my experience, I believe the sale of the Interests to Purchaser through a private sale is the best way to maximize value for their estates and that the Purchase Price for the Interests is fair and reasonable.

19. The Debtors ensured that the sale of the Interests would reflect their fair market value by, with the assistance of PWP, robustly marketing the Interests and conducting arm's-length negotiations. The Debtors carefully considered and analyzed the offer as set forth in the Agreement in comparison to their other options, including expected recoveries from a liquidation of FTX Japan, and concluded that a sale of the Interests pursuant to the Agreement will result in obtaining maximum value for the Interests, and is in the best interests of the Debtors' estates and creditors. Among the offers received by the Debtors, Purchaser's offer is the highest or otherwise best offer and would provide a greater recovery for the Debtors' estates.

20. The Debtors negotiated certain "go-shop" provisions which will allow the Debtors to continue marketing the Interests widely, including to any prospective purchasers who receive notice of the Sale Transaction and the Agreement. Such provision allows the Debtors to solicit higher or better offers from any third party up until three days prior to the Sale Hearing.

21. Further, as provided by section 6.1(f) of the Agreement, the Purchase Price is also subject to a "fiduciary out" where the Agreement can be terminated by the board of directors (or similar governing body) of Seller if the Agreement is determined to be inconsistent with its fiduciary duties.

22. In addition, pursuant to section 6.1(e) of the Agreement, if an Alternative Transaction (as defined in the Agreement) is received by the Debtors, Seller has the right, but not the obligation, to terminate the Agreement upon entering into a definitive agreement with respect to such Alternative Transaction.

23. In my role as the Debtors' financial advisor, I reviewed the Agreement and based on my experience, I believe that the Agreement is the result of extensive, arm's-length and good-faith negotiations between the parties thereto, and that such negotiations were free of any collusion. Accordingly, the proposed Sale Transaction will, in my view, produce a fair and reasonable price.

D. **The Sale Should Be Free and Clear of All Liens, Claims, Interests and Encumbrances.**

24. I believe that a sale free and clear of all liens, claims, interests and encumbrances is necessary to maximize the value of the Interests. Not transferring the Interests free and clear of all Liens (other than Permitted Encumbrances) would adversely impact the Debtors' efforts to maximize the value of the estates, and the transfer of the Interests other than pursuant to a transfer that is free and clear of all Liens (other than Permitted Encumbrances). I believe that Purchaser would not have entered into the Agreement and will not consummate the Sale Transaction if the Interests were not transferred to Purchaser free and clear of all Liens (other than Permitted Encumbrances).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 20, 2024.

> /s/ Bruce Mendelsohn
> Bruce Mendelsohn
> Partner
> Perella Weinberg Partners L.P.