**Appendix D**

**Liquidation Analysis**

1. **INTRODUCTION**

The Debtors, together with their advisors, have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") in connection with the *Joint Chapter 11 Plan of Reorganization of FTX Trading LTD. and its Affiliated Debtors* (as amended, supplemented, or modified from time to time, the "**Plan**") and related disclosure statement (as amended, supplemented, or modified from time to time, the "**Disclosure Statement**"). This Liquidation Analysis indicates the estimated recoveries that may be obtained by Holders of Claims and Interests in a hypothetical liquidation pursuant to chapter 7 of the Bankruptcy Code as an alternative to the Plan.

All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement, to which this Liquidation Analysis is attached.

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the Bankruptcy Court find, as a condition to confirmation of the Plan, that each holder of a Claim or Interest in each Impaired Class: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate compliance with section 1129(a)(7), this Liquidation Analysis:

(i) estimates the cash proceeds (the "**Net Distributable Liquidation Proceeds**") that a chapter 7 Trustee (the "**Trustee**") would most likely generate if each of the Chapter 11 Cases were converted to a chapter 7 case on the Effective Date and the assets of each Debtor's Estate (as defined herein) were liquidated;

(ii) determines the distributions (the "**Liquidation Distributions**") that Holder of Claims or Interests would most likely receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and

(iii) compares each holder's hypothetical Liquidation Distribution to the distribution under the Plan that such holder would receive if the Plan were confirmed and consummated.

This Liquidation Analysis is based upon certain assumptions discussed herein, asset values may differ from amounts in the Plan or Disclosure Statement.

THE DEBTORS AND THEIR ADVISORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES CONTAINED HEREIN OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE PROJECTED RESULTS. IN THE EVENT THESE CHAPTER 11 CASES ARE CONVERTED TO CHAPTER 7 LIQUIDATIONS, ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES SET FORTH IN THIS LIQUIDATION ANALYSIS.

## 2. BASIS OF PRESENTATION

The Liquidation Analysis was developed with consideration of the impacts a hypothetical conversion of these chapter 11 cases to a chapter 7 liquidation would have on the Financial Projections included in Exhibit C to the Disclosure Statement, including incremental costs, reduced proceeds from the disposition of Plan Assets, and differences in ranking of certain claims under the Absolute Priority rule. As Such, the Liquidation Analysis should be read in conjunction with the Financial Projections, including the significant assumptions and notes included therein.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate the debtor's assets and to make Liquidation Distributions to creditors in accordance with the priorities established in the Bankruptcy Code. The Plan allows for the Wind Down of the Debtors. Although a chapter 7 liquidation would achieve a similar goal, the Debtors believe that the Plan will provide greater proceeds and recoveries to Holders of Claims and Interests than would be realized in a chapter 7 liquidation. The cost of the Trustee and its advisors would materially exceed those of the Plan Administrator and Wind Down Oversight Board under the Plan, and the Trustee's mandate to convert assets to cash as expeditiously as possible (versus the Plan Administrator's ability to maximize value through an orderly liquidation of Plan Assets over time, would result in materially lower proceeds than reflected in the Financial Projections. The ranking of certain Priority Tax Claims in chapter 7, who are subordinated under the Plan, would also be materially dilutive to Customer and General Unsecured Claims.

The Liquidation Analysis has been prepared assuming that the Debtors would convert from chapter 11 cases to chapter 7 cases on October 31, 2024 (the "**Conversion Date**") and would be liquidated thereafter pursuant to chapter 7 of the Bankruptcy Code. The Liquidation Analysis assumes a liquidation of all of the Debtors' remaining unmonetized assets (including winding down any unliquidated Separate Subsidiaries) over a 24-month period (the "**Liquidation Wind Down Period**") beginning on the Conversion Date. This timeline assumes that the Debtors' remaining assets are sold within six months, due to the chapter 7 trustee's mandate to convert assets to cash as expeditiously as possible (the "**Asset Liquidation Period**"), and the subsequent eighteen months are used to wind down the chapter 7 Estate and make Liquidation Distributions. The Liquidation Analysis is summarized in the tables contained herein.

A significant portion of the Debtors' assets are assumed to be monetized and available for distribution as of the Conversion Date. Gross Distributable Liquidation Proceeds available for distribution to creditors are comprised of the Debtors' Cash and Cash Equivalents, consistent with Note A in the Notes to Financial Projections, as of the Conversion Date, which includes estimated proceeds from the disposition of Plan Assets and administrative expenses incurred prior to the Conversion Date (the "**Pre-Conversion Period**"), and a range of potential recoveries from the monetization of remaining Plan Assets during the Asset Liquidation Period and collectively with the Pre-Conversion Period, the "**Liquidation Projection Period**").

The Liquidation Analysis assumes that the non-Debtor counterparties voluntarily agree that the Trustee may step into the Global Settlement Agreement, FTX DM Global Settlement Agreement and IRS Settlement on the same terms as the Debtors in order to avoid unquantifiable and

potentially material litigation costs and delays in making Liquidation Distributions. However, the appointment of the Trustee would be grounds for termination of the Global Settlement Agreement, FTX DM Global Settlement and IRS Settlement by the non-Debtor counterparties, and there can be no assurances that the Trustee could continue to benefit from these settlements on the same terms, or at all. The Liquidation Analysis assumes Estate Professional fees of 1% of gross distributable proceeds, which the Debtors believe is conservative. Due to the large, complex nature of these Chapter 11 cases, the professional-driven nature of business operations and the existing Debtor Professionals' unique knowledge of these cases acquired over the 18 months since the Petition Date, there would likely be additional professional costs associated with the conversion to Chapter 7 beyond what is assumed in the Liquidation Analysis. These Chapter 11 cases are unique as the Debtors' business operations are more heavily supported by the Debtors' professionals across all operating functions than is typical in more conventional Chapter 11 cases. The complexity of the Debtors' IT, cybersecurity, claims reconciliation, tax, KYC, financial and legal functions that are currently performed by the Debtors' advisors would all have to be transitioned to a new set of professionals which would be extremely difficult to achieve efficiently without significant incremental cost and timing delays.

Due to the aforementioned operational complexities and administrative cost pressures, the Debtors believe the Trustee would likely prioritize speed of liquidation and risk minimization over maximizing asset recovery values in a greater manner than is typically demonstrated in a Chapter 7 proceeding. The value impact of this increased time pressure may not be fully reflected in the Liquidation Analysis for conservatism. Further, upon review of the Debtors' Digital Assets, a Trustee may elect to liquidate the entire portfolio of Digital Assets through a bulk auction process, which would result in larger asset discounts and lower recoveries to Holders of Claims and Interests but decrease risk to the Estate.

### 3. LIQUIDATION PROCESS

The three primary factors in approximating hypothetical recoveries under chapter 7 liquidation are:

(i) Estimating Gross Distributable Liquidation Proceeds from the disposition of Plan Assets by the Trustee,

(ii) Forecasting costs related to the liquidation and administration of the Estates under chapter 7 (the "**Chapter 7 Administrative Costs**"), and

(iii) Projecting the distribution of Net Distributable Liquidation Proceeds to Holders of Claims and Interests in accordance with the priority scheme under Chapter 7 of the Bankruptcy Code.

### 4. DISTRIBUTION OF NET PROCEEDS TO CLAIMANTS

Net Distributable Liquidation Proceeds would be distributed to Holders of Claims against, and Interests in, the Debtors in accordance with section 726 of the Bankruptcy Code—i.e., the priority scheme applicable in a chapter 7 proceeding, in the following order:

(i) *Administrative Claims:* General Administrative Claims, Professional Claims and Other Administrative Claims

(ii) *Priority Tax Claims:* IRS Priority Tax Claim and Subordinated IRS Claims (incl. Junior Subordinated) and all non-CFTC Subordinated Governmental Claims, to the extent Allowed, would receive the priority status tax claims are otherwise entitled to under the Absolute Priority Rule. The IRS Claims remain under dispute and final resolution may differ from the assumptions herein

(iii) *Secured Loan Claim:* Secured Claims held by BlockFi pursuant to the Global Settlement Agreement with BlockFi

(iv) *Customer Entitlement Claims:* Claims held by any Person or Entity against any of the Debtors that compensates the Holder of such Claim for the value as of the Petition Date of Cash or Digital Assets held by such Person or Entity in an account on any FTX Exchange

(v) *General Unsecured Claims:* Cash denominated loans payable, contract rejection damages related to executory contracts and real property leases, and various other trade or employee related Claims

(vi) *Senior Subordinated Governmental Claims:* Subordinated Government Claims of the CFTC which are voluntarily subordinated to Customer Entitlement and Non-Customer Claims and postpetition interest

(vii) *Preferred Equity Interests and Other Junior Claims:* Intercompany Interests, Preferred Equity Interests, Other Equity Interests and FTT Interests

## CONCLUSION

**As summarized in the Liquidation Analysis below, the Debtors have determined that upon the anticipated Effective Date, the Plan will provide all Holders of Allowed Claims who are entitled to vote and have not otherwise accepted the Plan with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Therefore, the Debtors believe that the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).**

# CONSOLIDATED DEBTORS
# ESTIMATED CHAPTER 7 NET LIQUIDATION PROCEEDS

| Proceeds / Available Assets | Notes | Pro Forma 10/31/2024 | Recovery % Low | Recovery % High | Recovery $ Low | Recovery $ High |
|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | [A] | $ 12,600 | 100% | 100% | $ 12,600 | $ 12,600 |
| Venture Investments | [B] | 3,329 | 25% | 31% | 842 | 1,027 |
| Digital Assets | [C] | 2,252 | 20% | 53% | 457 | 1,188 |
| Investments in Subsidiaries | [D] | 474 | 85% | 92% | 401 | 435 |
| Other Assets | [E] | 517 | 56% | 56% | 288 | 288 |
| **Gross Distributable Liquidation Proceeds** | | **$ 19,172** | **76%** | **81%** | **$ 14,587** | **$ 15,538** |
| Total Chapter 7 Administrative Costs | [F] | - | | | (940) | (978) |
| **Net Distributable Liquidation Proceeds** | | **$ 19,172** | **71%** | **76%** | **$ 13,647** | **$ 14,560** |
| **Claims** | **Notes** | **Value** | **Low** | **High** | **Low** | **High** |
| Administrative Claims | [G] | $ 106 | 100% | 100% | $ (106) | $ (106) |
| Class 1: Priority Tax Claims | [H] | 200 | 100% | 100% | (200) | (200) |
| Class 10A: Senior Subordinated IRS Claim | [I] | TBD | 100% | 100% | TBD | TBD |
| Class 10B: Senior Subordinated Governmental Claims (excl. CFTC) | [I] | 199 | 100% | 100% | (199) | (199) |
| Class 10C: Junior Subordinated IRS Claim | [I] | 685 | 100% | 100% | (685) | (685) |
| Class 2: Other Priority Claims | [J] | n/a | n/a | n/a | n/a | n/a |
| Class 3A: Secured Loan Claims | [K] | 250 | 110% | 110% | (274) | (274) |
| Class 4: Separate Subsidiary Claims | [L] | n/a | n/a | n/a | n/a | n/a |
| Class 5A: Dotcom Customer Entitlements | [M] | 8,890 | 100% | 100% | (8,890) | (8,890) |
| Class 5B: US Customer Entitlements | [M] | 312 | 100% | 100% | (312) | (312) |
| Class 5C: NFT Customer Entitlement Claims | [M] | n/a | n/a | n/a | n/a | n/a |
| Class 6A: General Unsecured Claims | [N] | 1,136 | 100% | 100% | (1,136) | (1,136) |
| Class 6B: Digital Asset Loan Claims | [N] | 642 | 100% | 100% | (642) | (642) |
| **Total Class 1 through 7 Claims** | | **12,421** | **100%** | **100%** | **(12,445)** | **(12,445)** |
| Total Postpetition Interest | [O] | 1,051 | 100% | 100% | (1,051) | (1,051) |
| **Remaining Proceeds Available for Distribution** | | | | | **$ 151** | **$ 1,065** |
| Class 10B: Senior Subordinated Governmental Claims (CFTC) | [I] | 8,700 | 2% | 12% | (151) | (1,065) |
| **Total Subordinated Claims** | | **8,700** | **2%** | **12%** | **(151)** | **(1,065)** |
| **Remaining Proceeds Available for Distribution** | | | | | **$ -** | **$ -** |
| Class 12: Preferred Equity Interests | [P] | 1,966 | 0% | 0% | - | - |
| **Remaining Proceeds Available for Classes 13 - 18** | | | | | **$ -** | **$ -** |

5

**Creditor Recovery Summary**

| Recoveries by Creditor Group | Claims Value | Recovery % Low | Recovery % High | Recovery $ Low | Recovery $ High |
|---|---|---|---|---|---|
| Administrative Claims | $ 106 | 100% | 100% | $ (106) | $ (106) |
| Class 1: Priority Tax Claims | 200 | 100% | 100% | (200) | (200) |
| Class 10A: Senior Subordinated IRS Claim | TBD | 100% | 100% | TBD | TBD |
| Class 10B: Senior Subordinated Governmental Claims (excl. CFTC) | 199 | 100% | 100% | (199) | (199) |
| Class 10C: Junior Subordinated IRS Claim | 685 | 100% | 100% | (685) | (685) |
| **Total Priority Claims** | **$ 1,084** | **100%** | **100%** | **$ (1,084)** | **$ (1,084)** |
| Class 3: Secured Claims | 250 | 100% | 100% | (250) | (250) |
| Secured Loan Claims Postpetition Interest | n/a | n/a | n/a | (24) | (24) |
| **Secured Principle Claims & Recoveries** | **$ 250** | **110%** | **110%** | **$ (274)** | **$ (274)** |
| Class 5A: Dotcom Customer Entitlements | 8,890 | 100% | 100% | (8,890) | (8,890) |
| Dotcom Customer Postpetition Interest | n/a | n/a | n/a | (851) | (851) |
| **Dotcom Customer Principle Claims & Recovery** | **$ 8,890** | **110%** | **110%** | **$ (9,740)** | **$ (9,740)** |
| Class 5B: US Customer Entitlements | 312 | 100% | 100% | (312) | (312) |
| US Postpetition Interest | n/a | n/a | n/a | (30) | (30) |
| **US Customer Principle Claims & Recovery** | **$ 312** | **110%** | **110%** | **$ (342)** | **$ (342)** |
| Class 6A: General Unsecured Claims | 1,136 | 100% | 100% | (1,136) | (1,136) |
| Class 6B: Digital Asset Loan Claims | 642 | 100% | 100% | (642) | (642) |
| Class 6A/B Postpetition Interest | n/a | n/a | n/a | (170) | (170) |
| **Non-Customer GUCs Principle & Recovery** | **$ 1,778** | **110%** | **110%** | **$ (1,949)** | **$ (1,949)** |
| Class 10B: Senior Subordinated Governmental Claims (CFTC) | 8,700 | 2% | 12% | (151) | (1,065) |
| **Total Claims and Recoveries** | **$ 21,121** | **65%** | **69%** | **$ (13,647)** | **$ (14,560)** |

## Comparison to Plan Summary

| Chapter 7 Impact to Distributable Proceeds | Plan (Low) $ | Ch. 7 (High) $ | Variance (Plan vs Ch. 7) $ | % |
|---|---:|---:|---:|---:|
| **Gross Asset Proceeds** | | | | |
| Cash and Cash Equivalents | $ 12,600 | $ 12,600 | $ - | 0% |
| Venture Investments | 1,236 | 1,027 | 208 | 20% |
| Digital Assets | 493 | 1,188 | (694) | -58% |
| Investments in Subsidiaries | 464 | 435 | 29 | 7% |
| Other Assets | 368 | 288 | 80 | 28% |
| **Total Impact to Gross Asset Proceeds** | $ 15,161 | $ 15,538 | $ (377) | -2% |
| Total Wind Down Costs | (448) | (978) | 529 | -54% |
| **Net Liquidation Proceeds** | $ 14,712 | $ 14,560 | $ 152 | 1% |

| Claims Recoveries | Plan (Low) $ | Ch. 7 (High) $ | Variance (Plan vs Ch. 7) $ | % |
|---|---:|---:|---:|---:|
| Administrative Claims | $ 138 | $ 106 | $ 32 | 30% |
| Class 1: Priority Tax Claims | 200 | 200 | - | 0% |
| Class 2: Other Priority Claims | - | n/a | - | n/a |
| Class 3A: Secured Loan Claims | 274 | 274 | - | 0% |
| Class 4: Separate Subsidiary Claims | - | n/a | - | n/a |
| Class 5A: Dotcom Customer Entitlements[1] | 11,354 | 9,740 | 1,614 | 17% |
| Class 5B: US Customer Entitlements[1] | 388 | 342 | 46 | 13% |
| Class 5C: NFT Customer Entitlement Claims | - | n/a | - | n/a |
| Class 6A: General Unsecured Claims[2] | 1,423 | 1,245 | 178 | 14% |
| Class 6B: Digital Asset Loan Claims[3] | 826 | 704 | 122 | 17% |
| Class 10A: Senior Subordinated IRS Claim | 102 | TBD | 102 | n/a |
| Class 10B: Senior Subordinated Governmental Claims (excl. CFTC) | 7 | 199 | (192) | -97% |
| Class 10C: Junior Subordinated IRS Claim | - | 685 | (685) | nmf |
| **Total Class 1 through 10C Claims (Excl. CFTC)** | 14,712 | 13,495 | 1,217 | 9% |
| Class 10B: Senior Subordinated Governmental Claims (CFTC)[4] | - | 1,065 | (1,065) | nmf |
| **Total Claims Recoveries** | 14,712 | 14,560 | 152 | 1% |

Notes:
1. Plan recovery includes Class 7 Convenience Class, Supplemental Remission Fund recovery, and postpetition interest
2. Plan recovery includes Class 7 Convenience Class and postpetition interest
3. Plan recovery includes Supplemental Remission Fund recovery and postpetition interest
4. Plan recovery on CFTC Subordinated Governmental Claims is included in Class 5 and 6 via the Supplemental Remission Fund

7

# NOTES TO LIQUIDATOIN ANALYSIS

**Gross Distributable Liquidation Proceeds**

Note A – Cash and Cash Equivalents

Refer to Note A of the Notes to Financial Projections included in Exhibit C.

Note B – Venture Investments

Venture Investments are comprised of the Debtors' equity investments, fund investments, loan investments and estimated avoidance action proceeds. Recoveries on Venture Investments were estimated in the context of available market valuation or pricing. Considering the accelerated Asset Liquidation Period relative to the Wind Down Period assumed in the Financial Projections and other marketability factors, the Liquidation Analysis assumes a 15% to 30% discount to low-case equity, fund and loan investment recoveries reflected in the Financial Projections.

(i) Equity Investments: portfolio comprised of over 200 equity investments in early-stage companies across a range of industries. The estimated range of potential recoveries is $182 – $221 million.

(ii) Fund Investments: portfolio comprised of approximately 20 fund investments in third-party funds comprised of cryptocurrencies, tokens, and early-stage technology companies. The estimated range of potential recoveries is $88 – $107 million.

(iii) Loan Investments: portfolio contains over 10 technology focused companies. The range of estimated recoveries is $71 – $86 million.

(iv) Avoidance Actions: reflect the estimated recovery value of pursuing Avoidance Actions related to select Venture Investments. In a chapter 7, recoveries are estimated to be lower than those reflected in the Financial Projections due to the condensed Asset Liquidation Period. The range of estimated recoveries is $525 – 638 million.

Proceeds from Venture Investments are reflected net of anticipated selling fees (estimated at 1.0% of each asset's assumed recoverable value) and capital calls are assumed not to be funded based on estimated subpar recoveries in chapter 7.

Gross Distributable Liquidation Proceeds from the disposition of Venture Investments are expected to be approximately $0.8 – $1.0 billion in total.

Note C – Digital Assets

Consistent with the Financial Projections, Digital Assets are comprised of (i) cryptocurrencies and (ii) token receivables that have not been monetized as of the Conversion Date. Proceeds from post-Conversion Date Digital Assets sales reflect a range of potential price paths that are established on a simulation-based method trained on historical returns of the FTX holdings portfolio over a two-year period. The high and low case scenarios reflect distinct market scenarios and are not comparable (i.e., the market scenarios are agnostic to liquidation under a chapter 11 vs a chapter

7). However, the liquidation discounts used are larger in chapter 7 relative to chapter 11 to reflect the potential lack of marketability discount driven by a shorter Asset Liquidation Period.

    (i)    Cryptocurrencies

        Cryptocurrencies include tokens held in cold storage, hot wallets and on third party exchanges. Cryptocurrencies to be monetized during the Asset Liquidation Period have a range of estimated recoveries of $183 - 487 million.

        The Department of Justice seized Digital Assets of the Debtors held on the Binance exchange. The Debtors estimate the recoverable value of these assets to be $229 - $448 million[1].

    (ii)    Token Receivables

        The Debtors are contractual counterparties to agreements in which certain tokens are delivered on a vesting schedule. As of the Conversion Date, the Debtors' estimate they will be party to approximately 44 contracts worth an estimated $45 - 253 million.

Digital Asset proceeds were estimated with input from the Debtors' Advisors using a range of economic and market scenarios. Digital Asset markets have historically demonstrated materially higher volatility than other financial markets. While pricing and discount assumptions consider market volatility and other risk factors, actual results may differ materially from projected results. Values for all Digital Assets exclude any potential capital gains or other tax liabilities related to the sale and distribution of said Digital Assets.

Gross Distributable Liquidation Proceeds from the disposition of Digital Assets are expected to be approximately $0.5 – $1.2 billion in total.

Note D – Investments in Subsidiaries

Investments in Subsidiaries are comprised of proceeds from the (i) Bahamian Subsidiaries[2], (ii) Separate Subsidiaries[3] and (iii) Excluded Entities that will be sold or wound down through local insolvency proceedings as reflected in the Financial Projections.

    (i)    Bahamian Subsidiaries

        Proceeds from the Bahamian Subsidiaries are primarily derived from the sale of 35 real estate properties in the Bahamas which receive a 30% to 40% discount to estimated recoveries in the Financial Projections on account of the accelerated monetization timeframe in a chapter 7. The remaining value is primarily cash and Digital Assets held

---

[1] The recoverability of these assets is subject to ongoing negotiations with the DOJ, the final resolution of may differ from these assumptions and could have a material impact on the creditor recoveries.
[2] FTX Digital Markets and FTX Property Holdings Ltd
[3] The Debtors listed in Exhibit A of the Plan, as may be updated, supplemented and amended from time to time in accordance with the terms of the Plan Supplement.

by FDM offset by administrative expenses, an estimated recovery of $179 - 191 million.

(ii) Separate Subsidiaries

Proceeds from the Separate Subsidiaries are related to the residual equity value after satisfying asserted claims, administrative expenses, and chapter 7 administrative costs. Non-cash assets, such as digital assets, have been discounted in the Liquidation Analysis to reflect chapter 7 discounts consistent with comparable Debtor assets. Residual equity value of approximately $74 - $89 million at FTX Japan and approximately $88 - $95 million Ledger Prime is expected to be realized and is an asset of the General Pool.

Each Separate Subsidiary can fully satisfy its claims and administrative expenses.

| USD in Millions | FTX Japan | | | LedgerPrime[1] | | |
|---|---|---|---|---|---|---|
| | Pro Forma | Recovery $ | | Pro Forma | Recovery $ | |
| Proceeds / Available Assets | 10/31/2024 | Low | High | 10/31/2024 | Low | High |
| Cash | $ 120 | $ 120 | $ 120 | $ 108 | $ 108 | $ 108 |
| Digital Assets | 45 | 44 | 46 | 5 | 4 | 6 |
| Other Assets | 0 | - | 0 | 8 | 5 | 10 |
| **Gross Distributable Proceeds** | **$ 166** | **$ 165** | **$ 167** | **$ 121** | **$ 118** | **$ 123** |
| Wind Down Expenses | - | (24) | (11) | - | (4) | (3) |
| **Net Distributable Proceeds** | **$ 166** | **$ 140** | **$ 156** | **$ 121** | **$ 114** | **$ 120** |
| Claims | | Low | High | | Low | High |
| Administrative Claims | | $ (17) | $ (18) | | $ (21) | $ (20) |
| Customer Entitlements | | (47) | (47) | | - | - |
| All Other Claims | | (1) | (1) | | (6) | (6) |
| **Total Claims** | | **$ (66)** | **$ (67)** | | **$ (26)** | **$ (25)** |
| **Residual Value Available to the Estate** | | **$ 74** | **$ 89** | | **$ 88** | **$ 95** |

**Notes:**
1. LedgerPrime includes LedgerPrime and Ledger Holdings

(iii) Other Investments in Subsidiaries

Other Investments in Subsidiaries is primarily related to the local insolvency proceedings of FTX Australia and FTX Europe. FTX Australia assumes the low-case recovery in the Financial Projections in all chapter 7 cases (low to high) due to the uncertainty of the wind-down and shorter Asset Liquidation Period, resulting in an estimated recovery of $39 million.

Distributable Proceeds from the monetization of Investments in Subsidiaries are expected to be approximately $0.4 billion in total.

Note E – Other Assets

Other assets are comprised of the Genesis Settlement Agreement, post-Conversion interest income, external loans receivable and other miscellaneous assets.

The Genesis Settlement Agreement allows a claim of $175 million for Alameda Research Ltd. against Genesis Debtor Genesis Global Capital, LLC, and provides for the release of all claims by Genesis Entities against FTX Entities. Recovery on the Genesis Claims is estimated to be $107 million based on the low-case creditor recovery value in the latest filed Disclosure Statement from the Genesis Global Holdco, LLC et al Chapter 11 proceeding.

Interest income on cash balances post Conversion Date is estimated to be approximately $181 million based on projected cash holdings during the Liquidation Wind Down Period.

Gross Distributable Liquidation Proceeds from the monetization of Other Assets are expected to be approximately $0.3 billion.

**Chapter 7 Administrative Costs**

Note F – Chapter 7 Administrative Costs

The Wind Down Budget includes expected costs to operate the Wind Down Entities over the two-year Liquidation Wind Down Period. These costs are expected to decrease over the duration of the Liquidation Wind Down Period in line with the overall size of the estate and activities required to effectuate the Wind Down, and primarily relate to:

(i) Trustee Fees: Estate governance costs in chapter 7 represent 3 percent of Liquidation Proceeds.

(ii) Operating Costs: an expected increase in operating costs is primarily driven by incremental costs associated with the Trustee's need to stand up and maintain its own infrastructure.

(iii) Litigation and Avoidance Action Costs: reflect an expected decrease in litigation costs corresponding with the estimated decrease of cash proceeds from Avoidance Actions, due to the condensed Asset Liquidation Period. The Liquidation Analysis assumes the Trustee will step into any settlements that have already been negotiated as of the Conversion Date.

(iv) KYC costs: reflect the removal of the Convenience Class and the associated administrative costs associated with handling those incremental claims.

(v) Professional Fees: incremental support necessary for the sale of assets and winding down of the chapter 7 Estate over the Liquidation Wind Down Period represent 1 percent of Liquidation Proceeds.

**Claims and Recoveries**

Note G – Administrative Claims

General Administrative Claims, Professional Claims and Other Administrative Claims as of the Conversion Date of an estimated $106 million are treated as Administrative Claims and receive 100% recovery.

The decrease in Administrative Claims relative to the Plan primarily relate to administrative expenses that are contingent upon the successful confirmation of the Plan.

Note H – Class 1 Priority Tax Claims

Class 1 Priority Tax Claims assume an estimated settlement with the IRS, resulting in a $200 million Priority Tax Claim and Senior and Junior Subordinated IRS Tax Claims estimated to be over $685 million. The IRS Claims remain under dispute and final resolution would be predicated on confirmation of the Plan. In chapter 7, all IRS Tax Claims would rank as Priority Tax Claims and be paid in full ahead of Customer and other General Unsecured Claims.

Note I – Class 10B Senior Subordinated Government Claims

Class 10B Senior Subordinated Government Claims include both the CFTC Subordinated Claim and Other Governmental Claims. Other Governmental Claims are treated in accordance with the absolute priority rule and recover with Priority Claims. The CFTC Claim is voluntarily subordinated to Customer Entitlement Claims, Non-Customer Claims and postpetition interest.

Class 10B Senior Subordinated Other Governmental Claims are estimated to receive a 100% recovery.

Class 10B Senior Subordinated CFTC Claim is expected to receive 2% - 12% recovery.

Note J – Class 2 Other Priority Claims

Consistent with Note I of the Notes to Financial Projections included in Exhibit C.

Note K – Class 3A Secured Loan Claims and Class 3B Other Secured Claims

Class 3A Secured Loan Claims are consistent with Note J of the Notes to Financial Projections included in Exhibit C.

Note L – Class 4: Separate Subsidiary Claims

Consistent with Note K of the Notes to Financial Projections included in Exhibit C.

Notes M – Class 5A Dotcom, 5B U.S., and 5C NFT Customer Entitlement Claims

Class 5A Dotcom and 5B U.S. Customer Entitlement Allowed Claims are consistent with Note L of the Notes to Financial Projections included in Exhibit C. Estimated recoveries in excess of Allowed Claims differ in chapter 7 with interest being accrued at the Federal Judgement Rate, rather than the Consensus Rate, on such Allowed Class 5 Claim from the Petition Date through the Conversion Date. A Supplemental Remission Fund would not exist in a chapter 7 liquidation.

Class 5C NFT Customer Entitlement Claims are consistent with Note L of the Notes to Financial Projections included in Exhibit C.

Note N – Class 6A General Unsecured Claims and 6B Digital Asset Loan Claims

Class 6A General Unsecured Claims and 6B Digital Asset loan Claims are consistent with Note M of the Notes to Financial Projections included in Exhibit C. Estimated recoveries in excess of Allowed Claims differ in chapter 7 with interest being accrued at the Federal Judgement Rate or Contract Rate, rather than the Consensus Rate, on such Allowed General Unsecured Claims and Allowed Digital Asset Loan Claims from the Petition Date through the Conversion Date.

There is no Supplemental Remission Fund or Supplemental Remission fund proceeds on Class 6B Digital Asset Loan Claims in chapter 7.

Note O – Postpetition Interest

(i) Class 3A: interest on such Allowed Claim at the Federal Judgement Rate from the Petition Date through the Conversion Date, estimated incremental recovery of 10%.

(ii) Class 5A, 5B, 6A, 6B: interest on such Allowed Claim at the Federal Judgement Rate from the Petition Date through the Conversion Date, estimated incremental recovery of 10%.

Note P – Preferred Equity Interests and other junior claims

Consistent with Note S of the Notes to Financial Projections included in Exhibit C.