**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*:<br><br>FTX TRADING LTD., *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date: July 17, 2024 at 1:00 p.m.**<br>**Objection Deadline: July 10, 2024 at 4:00 p.m.** |

**MOTION OF PLAY MAGNUS AS FOR ORDER DEEMING PROOF OF CLAIM AS TIMELY FILED**

Play Magnus AS ("Magnus"), by and through its undersigned counsel, hereby respectfully moves (the "Motion"), pursuant to § 105(a) of the Bankruptcy Code and Bankruptcy Rules 3003(c) and 9006(b)(1), for an order deeming Magnus' non-customer proof of claim, filed on July 13, 2023, thirteen (13) days after the June 30, 2023 Bar Date, as timely and represents and alleges as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to adjudicate this Motion under 28 U.S.C.§§ 157 and 1334 because this is a civil proceeding arising under or relating to the bankruptcy petitions filed by FTX Trading Ltd. and its affiliated debtors (collectively, the "Debtors") under Chapter 11 of the United States Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C.§ 157(b).

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2. In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court, Magnus confirms it consents to the entry of final orders or judgments by this Court in connection with this matter to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1409(a).

**Background**

4. On November 11 and 14, 2022, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

5. Pursuant to that certain Sponsorship Agreement dated May 1, 2021 and Addendum dated March 31, 2022 (collectively, the "Magnus Sponsorship Agreement") by and between Debtor FTX Trading Ltd. ("FTX Trading") and Magnus, FTX Trading agreed to pay fees to Magnus to permit FTX Trading to act as a sponsor for various Championship Chess Tour events in which World Chess Champion Magnus Carlsen agreed to participate as well as the Magnus broadcast of the 2021 and 2023 editions of the World Chess Championship. A copy of the Magnus Sponsorship Agreement is attached as Exhibit "A."

6. Pursuant to the order of the Bankruptcy Court dated January 26, 2023 [ECF No. 585] (the "Rejection Order"), the Magnus Sponsorship Agreement was rejected by the Debtors and, Magnus was granted until the date fixed by the Court pursuant to Bankruptcy Rule 3003(c)(3) to file a claim for damages arising from the rejection. (See Rejection Order; Exhibit "B" at Para. 3).

7. On March 15, 2023, the Debtors filed Schedules of Assets and Liabilities [ECF No. 966] (the "Schedules") listing Magnus' claim as an unsecured, nonpriority claim based upon the

Sponsorship Agreement. Magnus' claim was listed on the Schedules as contingent and unliquidated in an undetermined amount, not subject to offset, and not disputed (Exhibit "C").

8. The Mailing address for Magnus listed on the Schedules was Play Magnus AS, Attn. Arne Horvei Meltwater Chess Champions Chess Tour Director, Tordenskiolds Gate 2 Oslo, 0160 Norway.

9. On June 27, 2023, the Debtors filed Amended Schedules [ECF No. 1729] listing Magnus' claim identically as in the original Schedules - contingent and unliquidated in an undetermined amount, not subject to offset, and not disputed, with the same mailing address. (Exhibit "D").

10. On May 19, 2023, the Court entered an order [ECF No. 11519] (the "Bar Date Order"; attached hereto as Exhibit "E") pursuant to Bankruptcy Rule 3003(c), establishing June 30, 2023 (the "Bar Date") as the deadline for filing non-customer proofs of claim and authorizing the Debtors to provide notice of the Bar Date to non-customer claimants by first class mail and by publication in the National Edition of the New York Times (Exhibit "E" at Exhibit "3"; ECF No. 1519-3).

11. The Affidavit of Service [ECF No. 2123] with respect to the Notice of the Bar Date (the "Affidavit of Service," attached hereto as Exhibit "F"; pg.) lists service of the Notice of the Bar Date upon Magnus on May 23, 2024 by first class mail at two (2) addresses. The first address is the address listed on the Schedules and the Amended Schedules and the second address is a different address. The addresses listed on the Affidavit of Service are:

Play Magnus AS
Attn. Arne Horvei Meltwater Chess Champions Chess Tour Director
Tordenskiolds Gate 2
Oslo, 0160 Norway; and

Play Magnus AS

Postboks 143 Bogstadveien
Oslo, 0323 Norway.

12. On July 13, 2023, thirteen (13) days after the Bar Date, Magnus filed a Proof of Claim [Claim No. 5708] based upon the amount due under the Sponsorship Agreement in the amount of $1,250,000 (the "Magnus POC"). A copy of the Magnus POC and confirmation of receipt of the Magnus POC on July 13, 2023 by Kroll Restructuring Administration, LLC ("Kroll"), the Debtors' Claims Agent, are collectively attached hereto as Exhibit "G".

**Relief Sought**

13. Magnus respectfully requests that the Court enter an Order deeming the Magnus POC as timely filed.

**Legal Standard**

14. Bankruptcy Rules 3003(c)(3) and 9006(b)(1) govern extensions of time. Bankruptcy Rule 3003(c)(3) provides, in relevant part, "[t]he court shall fix and for cause shown may extend the time within which proofs of claim may be filed." Fed. R. Bankr. P. 3003(c)(3). Bankruptcy Rule 9006(b)(1) provides that a bankruptcy court, in its discretion, may accept a late-filed proof of claim where a claimant establishes that its failure to adhere to the bar date is attributable to "excusable neglect."

15. Specifically, Rule 9006(b) states, in pertinent part, that:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion … on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
>
> Fed. R. Bankr. P. 9006(b).

16. The United States Supreme Court has articulated the standard for "excusable neglect" for allowing a proof of claim to be filed after the claims bar date, explaining that a court's

determination of whether the neglect is "excusable" should be an equitable one, whereby a court should "take[e] account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv.'s Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The circumstances courts should consider include: (i) the danger of prejudice to the debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether movant acted in good faith. *Id*.

17. Not all of the factors need to weigh in favor of the moving party for a bankruptcy court to grant relief. *See Pro-Tec serv., LLC v. Inacom Corp. (In re Inacom Corp.)*, 2004 WL 2283599 at *8 (D. Del. Oct. 4, 2004) (granting the relief requested even though the court found against the movant as to the reason for the delay); *In re Garden Ridge Corp.*, 348 B.R. 642, 647 (Bankr. D. Del. 2006) (same); *In re Enron Corp.*, 2003 WL 21756785 at *4 (Bankr. S.D.N.Y. 2003) (same). The decision whether to grant the requested relief rests within the Court's discretion. *See Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 125 (2d Cir. 1995) ("the discretion of the bankruptcy court to allow or disallow late-filed claims is well-established").

18. Moreover, decisions of the Court of Appeals for the Third Circuit applying *Pioneer* stress the equitable nature of its inquiry. "The determination of whether a party's neglect of a date is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file." *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir., 1995) (citing *Pioneer* and then applying the four *Pioneer* factors); *see also Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy Inc.)*, 188 F.3d 116, 125 (3d Cir. 1999) (quoting *Pioneer* for the conclusion that "determining whether neglect is excusable is an 'equitable' determination that 'take[es] account of all relevant circumstances surrounding the party's

omission'" and the applying the four *Pioneer* factors). As such, the Third Circuit has imposed a "duty of explanation" on courts that are conducting an "excusable neglect" determination, requiring courts in the Third Circuit to explain their analysis of each of the four *Pioneer* factors. See *In re Orthopedic Bone Screw Prods, Liab Litig.*, 246 F.3d 315, 320-21 (3d Cir. 2001) (noting that the Third Circuit has imposed a "duty of explanation" in conducting an "excusable neglect" analysis).

**Reason For Late Filing**

19. The overwhelming predominate mode of communication utilized by Magnus for all affairs is email. This is confirmed and is reflected in the Magnus Sponsorship Agreement where the notice provision for Magnus lists only Magnus' email address for Arne Horvei, the Director of the Champions Chess Tour (arne@playmagnus.com), with no physical address for notice to Magnus listed in the Magnus Sponsorship Agreement (See Magnus Sponsorship Agreement, Exhibit "A" at ¶ 4).

20. The Affidavit of Service states that Magnus was served with the Notice of the Bar Date by first class mail at two addresses in Norway. The first address, Play Magnus AS Atten. Arne Horvei, Tordenskiolds Gate 2 Oslo, 0160 Norway, is intermittently staffed with minimal employees, many of whom work remotely. Magnus never informed nor authorized FTX Trading, Ltd. to send any communications to Magnus by mail to this or any address and thus Arne Horvei or Magnus would have no expectation whatsoever that any communications relating to the Magnus Sponsorship Agreement, these bankruptcy proceedings, or otherwise would arrive by mail. This is especially true for international communications from the United States which are rarely if ever sent by mail. Notably, since mail is not Magnus' usual or preferred method of communication, there is no established internal procedure for handling and managing mail received at this address.

21. The Second Address listed on the Affidavit of Service, Postboks[2] 143 Bogstadveien Oslo, 0323 Norway, is an old address for Magnus and was vacated by Magnus in 2018, six (6) years ago and three (3) years prior to the parties' entry into the Sponsorship Agreement. Accordingly, Magnus did not receive the Notice of Bar Date.

22. As per the Affidavit of Service, the Notice of the Bar Date was not served upon Magnus by email and Arne Horvei has searched the arne@playmagnus.com email address and confirmed that the Notice of the Bar Dates was not served upon Magnus by email.

23. Magnus first learned of the June 30, 2023 Bar Date in July of 2023 when Magnus' in house counsel, Elias Colabelli, located in Barcelona, Spain, happened to check Kroll's website for the Debtors' case and noticed that the Bar Date Order had been entered in the case. Upon discovery of the Bar Date, Magnus immediately filed the Magnus POC on July 13, 2023 – a mere thirteen (13) days after the Bar Date.

**Argument**

24. It is respectfully submitted that based on the analysis of the four *Pioneer* factors, the Motion should be granted.

**A. Prejudice:**

25. Deeming the allowance of the Magnus POC as timely filed will result in no prejudice to the Debtors. Factors to be considered in determining whether the debtor will be prejudiced by the allowance of a Proof of Claim are:

> (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether the payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; ( iv) whether allowance of the claim would adversely impact the debtor actually or

[2] "Postboks" means "P.O. Box" in Norwegian.

> legally; and (v) whether allowance of the claim would open the floodgates to other future claims.

*In re New Century TRS Holdings, Inc.*, at 51 (citing *Pro-Tec Serv., LLC v. Inacom Corp.* (*In re Inacom Corp.*), 2004 WL 2283599 at *4 (D. Del. Oct. 4, 2004) (citing *In re O'Brien Envtl Energy, Inc.*, 188 F.3d at 126-28)).

26. First, the Debtors cannot assert that they were surprised by the Magnus POC as they were fully aware of Magnus' claim as a result of the Rejection Motion and Rejection Order (Exhibit "B"). In addition, Magnus was listed as a creditor on the Debtors' Schedules and Amended Schedules (Exhibits "C" and "D"). (See *Pro-Tec*, 2004 WL 2283599 finding no surprise where debtor listed claim on schedules).

27. Second, any payment of the Magnus POC would not force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors since there is not yet a confirmed plan in this case, no distributions to creditors have been made and the claim reconciliation process has not been completed.

28. Third, deeming the allowance of the Magnus POC as timely filed would not impact the Debtors actually or legally. Allowance of the Magnus POC as timely filed would not require reformulation of the Plan and, in fact, under the proposed Plan of Reorganization [ECF No. 15520], unsecured nonpriority claimants are receiving full payment plus interest on account of their claims.

29. Finally, the allowance of the Magnus POC as timely filed would not open the "floodgates" to all late filed claims. The allowance of any late filed claims would need to meet the requirements set forth by the Supreme Court under *Pioneer*.

30. For all of the foregoing reasons, the Debtors would not be prejudiced by the allowance of the Magnus POC.

**B. <u>Length of Delay and Potential Impact on Judicial Proceedings</u>:**

31. In examining the length of the delay, the Court should consider the length of the delay in absolute terms, meaning that it should consider the impact on judicial proceedings in addition to the chronological delay in filing. *See O'Brien*, 188 F.3d at 130. Here, the length of the delay in filing the claim chronologically was only thirteen (13) days after the Bar Date and there will be no impact upon the case as the Debtors have not completed the claims reconciliation process nor made any claim distributions.

**C. <u>Reason for Delay and Good Faith</u>:**

32. The third and fourth *Pioneer* factors for consideration are the reason for delay, including whether it was within the reasonable control of the claimant and the claimant's good faith. As discussed above, the overwhelmingly predominate mode of communication for Magnus' business affairs is email and the notice provisions in the Magnus Sponsorship Agreement do not even list a physical address for Magnus. Accordingly, Magnus would have no expectation whatsoever of receiving any communications by regular mail especially international communications by mail from the United States. Furthermore, the address to which the Notice of the Bar Date was sent is a workspace location that is intermittently and remotely staffed. In addition, publication notice of the Notice of the Bar Date was made only in the National Edition of the New York Times (see Certificate of Publication; Exhibit "H"; ECF No. 1569) and thus was not available for viewing by Magnus in Norway. Finally, Magnus' good faith is demonstrated by the fact that as soon as Magnus became aware of the Bar Date, it immediately filed the Magnus POC – only thirteen (13) days after the Bar Date.

**CONCLUSION**

For all the foregoing reasons, Magnus respectfully submits that the Motion be granted and for such other and further relief as this Court deems just and proper.

Dated: June 24, 2024

**CROSS & SIMON, LLC**

*/s/ Kevin S. Mann*
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, DE 19801
(302) 777-4200
kmann@crosslaw.com

*Counsel for Play Magnus AS*