# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors,[1] | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD. and<br>WEST REALM SHIRES SERVICES, INC.,<br><br>Plaintiffs,<br><br>- against -<br><br>MICHAEL BURGESS, HUY XUAN "KEVIN" NGUYEN, JING YU "DARREN" WONG, MATTHEW BURGESS, LESLEY BURGESS, 3TWELVE VENTURES LTD., and BDK CONSULTING LTD.,<br><br>Defendants. | Adv. Pro. 23-50585 (JTD)<br><br><br><br><br><br><br><br>Hearing Date: July 17, 2024 at 1:00 p.m. (ET)<br>Obj. Deadline: July 8, 2024 at 4:00 p.m. (ET) |

**PLAINTIFFS' MOTION FOR ENTRY FOR AN ORDER (A) AUTHORIZING PLAINTIFFS' ENTRY INTO, AND PERFORMANCE UNDER, THE SETTLEMENT AGREEMENT WITH DEFENDANTS, (B) APPROVING THE SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX.com") and West Realm Shires Services, Inc. ("FTX US" and together with FTX.com, the "Plaintiffs" and collectively with their affiliated debtors and debtors-in-possession, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (A) authorizing the Plaintiffs' entry into, and performance under, the settlement agreement, a copy of which is attached as Exhibit 1 to the Order (the "Settlement Agreement"),[2] between and among (i) the Plaintiffs, and (ii) Michael Burgess, Huy Xuan "Kevin" Nguyen ("Nguyen"), Jing Yu "Darren" Wong ("Wong"), Matthew Burgess, Lesley Burgess, 3Twelve Ventures Ltd., and BDK Consulting Ltd. ("BDK" and together with Michael Burgess, Nguyen, Wong, Matthew Burgess, Lesley Burgess, and 3Twelve Ventures Ltd., the "Defendants") in the above-captioned proceeding (the "Adversary Proceeding"), and (B) approving the Settlement Agreement. In support of the Motion, the Plaintiffs respectfully state as follows:

**Preliminary Statement**

1. During the ninety-day period prior to the commencement of the Debtors' Chapter 11 cases (the "Chapter 11 Cases"), the Defendants collectively received the benefit of withdrawals from their FTX.com and FTX US exchange accounts of digital assets and fiat currency collectively valued at approximately $157.3 million based on pricing as of August 31, 2023. Plaintiffs brought the Adversary Proceeding to, among other things, avoid those transfers as fraudulent and preferential transfers. The Official Committee of Unsecured Creditors (the "Committee") intervened as a plaintiff in the Adversary Proceeding on December 11, 2023 [Adv. D.I. 28].

2. The Defendants filed a motion to dismiss the Adversary Proceeding on November 20, 2023 (the "Motion to Dismiss") [Adv. D.I. 23].

3. In addition, the Defendants maintained FTX.com and FTX US accounts collectively representing net positive customer entitlements as of the Petition Date of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

approximately $34.8 million, and certain of the Defendants filed proofs of claim in the Chapter 11 cases with respect to certain of those accounts (the "Filed Proofs of Claim").

4. Following arm's length negotiations, on April 24, 2024, Plaintiffs and Defendants agreed to the principal terms of a global settlement of the Adversary Proceeding and related claims, including the Filed Proofs of Claim. The global settlement is reflected in the Settlement Agreement, dated as of June 24, 2024, which contemplates, among other things:[3] (i) a $15,000,000 payment by Defendants to the Debtors (the "Settlement Payment"); (ii) the disallowance and expungement of all of the Defendants' Filed Proofs of Claim; (iii) the allowance of one customer claim (the "BDK Allowed Claim") by BDK against FTX.com of $18,919,575.97, reflecting (a) the sum of the aggregate balances as of the Petition Date across the FTX.com and FTX US accounts maintained by the Defendants, totaling $34,791,213.17, (b) reduced by $10,000,000, and (c) further reduced by $5,871,637.20, representing the U.S. dollar equivalent of the amount received by Nguyen in connection with the Nguyen Proof of Debt (defined below) (exclusive of statutory interest); (iv) the dismissal of the Adversary Proceeding with prejudice; (v) the release of any claims the Debtors may have against the Defendants; and (vi) the release of any claims the Defendants may have against the Debtors.

5. Plaintiffs believe that their fraudulent transfer and preference claims have merit. As has been publicly announced, however, Plaintiffs expect non-governmental general unsecured claims against their estates, including replacement claims under section 502(h) of the Bankruptcy Code, to be valuable, resulting in a dramatically lower expected net value of Plaintiffs'

---

[3] Any summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

preference claims to their estates. Moreover, Plaintiffs' preference claims involve complex issues of fact and law that would require extensive time and expense to litigate to judgments.

6. At the same time, Plaintiffs' fraudulent transfer and preference claims carry some degree of risk and in any event would also be time-consuming and expensive to further litigate. Therefore, Plaintiffs' entry into, and performance under, the Settlement Agreement, which avoids costly, time-consuming and uncertain litigation, is in the best interests of Plaintiffs' estates and all of their stakeholders, and is well within the range of reasonableness. The Committee supports the proposed settlement as set forth in the Settlement Agreement and this Motion. Accordingly, Plaintiffs believe the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved.

**Background**

7. On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[4] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. Joint administration of the Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

9. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

---

[4] November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

10. During the ninety-day period prior to the commencement of the Chapter 11 Cases, the Defendants collectively received the benefit of withdrawals from their FTX.com and FTX US accounts of certain digital assets and fiat currency, collectively valued at approximately $157.3 million based on pricing as of August 31, 2023 (collectively, the "Transfers").

11. Plaintiffs believe that they have meritorious claims to avoid and recover the Transfers, and to disallow any claims of the Defendants that have been asserted in these Chapter 11 Cases unless and until Defendants have relinquished to Plaintiffs all property that they received in transfers that are determined by the Court to be avoidable. On September 21, 2023, Plaintiffs commenced the Adversary Proceeding by filing a complaint (the "Complaint") [Adv. D.I. 1], asserting claims for intentional fraudulent transfers and preferential transfers. Plaintiffs sought to avoid and recover the Transfers, subject to potential "subsequent new value" defenses collectively totaling approximately $2 million arising from deposits into Defendants' FTX.com and FTX US accounts subsequent to these preferential transfers.

12. Certain of the Defendants timely filed the Filed Proofs of Claim. In particular, Michael Burgess filed customer proofs of claim against FTX.com (Claim Nos. 71771 and 80557) for the balance of one FTX.com customer account as of the Petition Date, Nguyen filed customer proofs of claim against FTX.com (Claim Nos. 53574, 53580, and 53598) for the balance of two FTX.com customer accounts as of the Petition Date, Wong filed a customer proof of claim against FTX.com (Claim No. 69052) for the balance of one FTX.com customer account

as of the Petition Date, and BDK filed customer proofs of claim against FTX.com (Claim Nos. 80362 and 86324) for the balance of one FTX.com customer account as of the Petition Date.

13. Defendants maintained certain other FTX.com and FTX US accounts as to which they did not file customer proofs of claim, which collectively had a net negative balance as of the Petition Date. The aggregate Petition Date balances across the FTX.com and FTX US accounts maintained by Defendants totaled approximately $34,791,213.17.

14. Nguyen also filed a proof of debt (the "Nguyen Proof of Debt") against non-debtors FTX Australia Pty Ltd. and FTX Express Pty Ltd. in their respective proceedings, totaling (as amended) AUD 8,878,259.92, representing certain withdrawals requested but not completed from an FTX.com customer account, which are a subset of the $34,791,213.17 aggregate Petition Date balance referenced above. On May 29, 2024, Nguyen received from non-debtors FTX Australia Pty Ltd. and FTX Express Pty Ltd. payments on account of the Nguyen Proof of Debt totaling AUD 8,878,259.92 along with AUD 1,101,390.71 in statutory interest.

15. On November 20, 2023, Defendants moved to dismiss the Complaint in the Adversary Proceeding for failure to state a claim [Adv. D.I. 23]. On February 9, 2024, Plaintiffs filed their opposition to the Motion to Dismiss [Adv. D.I. 34]. On March 12, 2024, Defendants filed their reply in support of the Motion to Dismiss [Adv. D.I. 38]. Defendants believe their motion is meritorious; Plaintiffs disagree.

16. Following extensive arm's length negotiations, on April 24, 2024, Plaintiffs and Defendants agreed to the principal terms of a global settlement. The global settlement is reflected in the Settlement Agreement, dated as of June 24, 2024, which contemplates, among other things, (i) the payment by Defendants of the Settlement Payment; (ii) the disallowance and expungement of the Filed Proofs of Claim; (iii) the allowance of the BDK Allowed Claim; (iv) the

dismissal of the Adversary Proceeding with prejudice; and (v) the release of any claims the Debtors may have against the Defendants, and any claims the Defendants may have against the Debtors.

## Jurisdiction

17. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), Plaintiffs consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

18. By this Motion, Plaintiffs request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing Plaintiffs' entry into, and performance under, the Settlement Agreement, (b) approving the Settlement Agreement, and (c) granting certain related relief.

## Basis for Relief

**I.    The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable and in Plaintiffs' Best Interests**

19. Resolution of Plaintiffs' claims against Defendants through the Settlement Agreement is in the best interests of the Plaintiffs and their estates because it will result in the Defendants promptly transferring $15,000,000 to the Debtors and agreeing to a further $15,871,637.20 reduction to the aggregate amount of Defendants' customer claims against the

Debtors, while also resolving costly, hard-fought litigation. The proposed settlement likely would generate more value to Plaintiffs' estates on a risk-adjusted basis than if Plaintiffs were to continue litigating the Adversary Proceeding. Settlement on the proposed terms is thus a reasonable exercise of Plaintiffs' business judgment satisfying Bankruptcy Rule 9019.

20. Bankruptcy Code Section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. 414, 424 (1968)).

21. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803

(E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

22. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test evaluates whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent*., 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

23. The terms of the Settlement Agreement fall well within the range of reasonableness and should be approved by the Court. The Settlement Agreement provides material value to the Plaintiffs' estates, including, among other things, (i) a $15,000,000 payment from the Defendants to the Debtors and (ii) a $15,871,637.20 reduction of the Defendants' customer claims

against the Debtors. The Settlement Agreement also would avoid further costly and time-consuming litigation and eliminate the risks of any unfavorable outcome. Accordingly, and as further described below, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

24. **The Probability of Success in Litigation**. Plaintiffs maintain that their fraudulent transfer and preference claims are meritorious and are prepared to continue litigating those claims in this Court, as necessary. But the Defendants have vigorously disputed Plaintiffs' allegations and may be able to assert numerous defenses to the merits of the fraudulent transfer and preference claims, including defenses that are specific to the facts surrounding the Transfers. As a result, the outcome of litigation involving numerous claims and defenses is uncertain.

25. In addition, while Plaintiffs dispute the Defendants' defenses set forth in the Motion to Dismiss, absent the Settlement Agreement, there is risk that, if litigated, the Defendants would be entitled to the full amount of valuable allowed claims in the Debtors' Chapter 11 Cases. Those claims are instead being reduced by $15,871,637.20 through the Settlement Agreement.

26. Moreover, even if Plaintiffs were successful on the merits of the preference claims, as described above, Plaintiffs expect recoveries for general unsecured claims, including replacement claims under section 502(h) of the Bankruptcy Code, to be significant. As recoveries for unsecured creditors increase, the net value of Plaintiffs' preference claims against the Defendants decreases. Plaintiffs considered the costs and benefits to continuing to pursue the preference claims in that context, and concluded that the Settlement Agreement is in the best interests of the Debtors' estates and their stakeholders.

27. Any litigation of the merits of Plaintiffs' claims against the Defendants, or of the Defendants' defenses, would present significant uncertainties for Plaintiffs and their estates.

The settlement set forth in the Settlement Agreement provides certainty to Plaintiffs through a fair and final resolution of the Adversary Proceeding without the risk of further expense or an adverse ruling on Plaintiffs' claims.

28. **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay**. Litigation of Plaintiffs' claims would be complex, expensive and involve a significant amount of time and resources. Settlement negotiations were vigorous and it was clear that, in the absence of a deal, both the Plaintiffs and Defendants are well-funded and ready to litigate the issues on behalf of their respective stakeholders. Indeed, the disputes would require document and testimonial discovery, expert reports, and briefing on numerous legal and factual issues.

29. Moreover, not only would Plaintiffs incur costs of attorneys, financial consultants and expert witnesses, but Plaintiffs also would bear the cost of attorneys and advisors for the Committee who would be closely involved in the litigation. The Settlement Agreement eliminates these costs.

30. **The Paramount Interests of Creditors**. The Settlement Agreement is in the best interests of Plaintiffs' estates and their creditors because, as discussed above, approval of the Settlement Agreement resolves complex disputes between the parties that otherwise would have required further costly and time-consuming litigation with uncertain outcome and net recovery by providing for the resolution of all disputes between the parties. As such, in Plaintiffs' business judgment, the value of entering into the Settlement Agreement exceeds the net benefits that Plaintiffs and their estates likely would obtain from continuing on the alternative litigation path.

31. Plaintiffs submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of Plaintiffs, their estates, and their

stakeholders. As a result, Plaintiffs respectfully submit that the Settlement Agreement satisfies the *Martin* factors and request that the Court approve the Settlement Agreement and authorize Plaintiffs to enter into it.

### Waiver of Bankruptcy Rule 6004(h)

32. Given the nature of the relief requested herein, the Plaintiffs respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h), to the extent such stay applies. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, ample cause exists to justify a waiver of the stay period to the extent applicable.

### Reservation of Rights

33. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

### Notice

34. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Official Committee; (c) counsel to the Ad Hoc Committee of Non-U.S. Customers of FTX.com; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) counsel to the Defendants; and (i) those parties requesting notice pursuant to

-13-

Bankruptcy Rule 2002. Plaintiffs submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Plaintiffs respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: June 24, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         mcguire@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>Jonathan M. Sedlak (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         dunnec@sullcrom.com<br>         crokej@sullcrom.com<br>         sedlakj@sullcrom.com<br><br>*Counsel for Plaintiffs*<br>*and Debtors-in-Possession* |