# EXHIBIT 5

# Committee Letter

DRAFT

[•], 2024

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
FTX TRADING LTD., *ET AL.***

c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166

**TO:** Holders of Classes 5A Dotcom Customer Entitlement Claims, 5B U.S. Customer Entitlement Claims, 5C NFT Customer Entitlement Claims, 6A General Unsecured Claims, 6B Digital Asset Loan Claims, 7A Dotcom Convenience Claims, 7B U.S. Convenience Claims, and 7C General Convenience Claims

### I. Introduction

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in the Chapter 11 Cases of FTX Trading Ltd. and its affiliate debtors (collectively, the "Debtors"), in its capacity as court-appointed fiduciary for all Customers and other general unsecured creditors in the Debtors' Chapter 11 Cases[1] write in connection with the Debtors' solicitation of your vote with respect to the enclosed [*Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates*], dated [•], 2024 (the "Plan") [Docket No. [•]], and [*Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession*], dated [•], 2024 (the "Disclosure Statement") [Docket No. [•]].[2] You should carefully read all the materials that accompany this letter.

> **THE OFFICIAL COMMITTEE RECOMMENDS THAT YOU
> VOTE IN FAVOR OF THE PLAN.**

You are receiving this letter because you are entitled to vote on the Plan. You will receive a Ballot that will contain detailed instructions on how to complete and submit your vote. ***The deadline to vote on the Plan is August 16, 2024, at 4:00 p.m. Eastern Time.*** The hearing to confirm the Plan is currently scheduled to begin on October 7, 2024, at [•] Eastern Time. If the Plan is confirmed on the currently proposed schedule, the Official Committee anticipates that Distributions to creditors will commence promptly thereafter.

#### A. The Official Committee

The Official Committee was appointed on December 15, 2022, by the Office of the United States Trustee, to represent the interests of *all* Holders of General Unsecured Claims in the Debtors' chapter 11 bankruptcy cases (the "Chapter 11 Cases"). The Official Committee is currently comprised of five members, each of whom was an FTX.com Customer that suffered

---

[1] Capitalized terms used but not defined in this Official Committee Letter shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

[2] **Note to Draft**: To be updated to refer to solicitation versions of both documents once available.

1

losses as a result of the Debtors' prepetition fraud. Since its formation, the Official Committee has acted as a necessary check on the Debtors, with the overarching goal of maximizing creditors' recoveries and expediting the course of the Chapter 11 Cases.

The Official Committee is advised by Paul Hastings LLP, as legal counsel, Young Conaway Stargatt & Taylor, LLP, as local counsel, FTI Consulting, Inc., as financial advisor, and Jefferies LLC, as investment banker.

### B. The Plan of Reorganization

On July 31, 2023, the Debtors filed the *Draft Plan of Reorganization* and accompanying term sheet [Docket No. 2100] as a template for negotiations. At that time, the Official Committee urged the Debtors to promptly engage in good faith negotiations concerning the plan. Over the course of four days of in-person meetings in September and October 2023, the Debtors, the Official Committee, and other stakeholders agreed to broad contours of a plan, which was announced on October 16, 2023, and set forth in a plan support agreement. *See Notice of Proposed Settlement of Customer Property Disputes* [Docket No. 3291], Ex. A (the "Plan Support Agreement"). The Debtors filed a revised plan of reorganization and disclosure statement on December 16, 2023. Although the December 2023 iteration of the plan mostly conformed to the Plan Support Agreement, certain aspects of that plan were inconsistent with the agreement reached in the Plan Support Agreement and were thus not acceptable to the Official Committee and remained subject to negotiation.

As the Chapter 11 Cases advanced, cryptocurrency market conditions greatly improved and the value of the Debtors' assets significantly increased. With the Court's authorization, and with significant input from the Official Committee – which routinely encouraged the Debtors to actively manage their vast cryptocurrency and venture investment portfolio to maximize returns – the Debtors monetized a significant portion of their digital and venture investment assets in order to capture the increase for the benefit of their stakeholders.

Upon the foundation of these greatly enhanced asset values, the Debtors filed a revised plan of reorganization and disclosure statement in May 2024 that contemplated, among other things, payment to Customers and other general unsecured creditors in full on account of the Petition Date value of their Claims, on a dollarized basis, *plus* postpetition interest at the "Consensus Rate" of nine percent (9.0%), as well as proposed increased Distributions from a Supplemental Remission Fund to be funded by certain governmental Remission Fund Sponsors from their respective recoveries. While encouraged by the significant increases to creditor recoveries reflected in the plan, the Official Committee continued to negotiate with the Debtors regarding other key terms, including that creditor representatives continue to provide oversight in respect of post-Effective Date governance of the Debtors' Estates and the means of Distribution to creditors, to best protect creditors' recoveries and interests.

On June 23, 2024, the Debtors filed the further revised Plan, which is the result of extensive negotiations between the Official Committee, the Debtors and other stakeholders, and reflects agreement as to a number of issues significant to the Official Committee and unsecured creditors. As in any negotiation that results in agreement, all parties must make concessions. Although the Plan is not perfect from the standpoint of the Official Committee, it provides significant recoveries

DRAFT

to creditors and includes provisions intended to compensate Customers for the lost investment opportunities caused by the bankruptcy cases. The alternative to the Plan of a drawn-out process in which the Plan is voted down, and multiple competing plans are filed and prosecuted, would unquestionably result in a waste of Estate resources, delay Distributions to creditors, and generally leave all Customers and creditors far worse off than under the Plan. Thus, for the reasons described below, the Official Committee believes that the Plan provides the best available recoveries for Customers and other general unsecured creditors and recommends that all general unsecured creditors vote in favor of the Plan.

## II. Why You Should Vote to Accept the Plan

### A. Plan Settlements

The Plan provides for settlements of several key legal issues, including Customers' alleged property interests in and entitlements to Digital Assets and fiat currency in the Debtors' possession. Additionally, the Plan provides for substantive consolidation of the Debtors' Estates, which greatly simplifies the administration of the Chapter 11 Cases in light of the difficulty in unraveling the Debtors' prepetition books and records. Settlement of these issues through the Plan avoids costly litigation that would risk creditor recoveries and significantly delay Distributions to creditors.

#### 1. The Customer Priority Settlement

The Official Committee understands many Customers' frustration that Distributions under the Plan cannot be made "in kind," especially considering the significant increases in Digital Asset values since November 2022. The Official Committee independently conducted a thorough analysis of the legal and factual issues underlying Customers' claims of ownership of Customer deposits, including the terms of service for FTX.com and FTX.US and the legal principles to be applied to such issues. Ultimately, the Official Committee determined that significant legal defenses existed to such Customers' property claims and that litigation over Customer property issues would greatly delay resolution of the Chapter 11 Cases and require "rough justice" where only certain creditors would receive increased recoveries at the expense of others. Equally as important, the Official Committee believes that even if Customer deposits were determined to be Customer property rather than property of the Debtors' Estates, Distributions to creditors would not be measurably improved (if at all) from those provided under the Plan. As a factual matter, because of the fraudulent actions of the Debtors' prepetition management, the Debtors did not hold on the Petition Date sufficient quantities of Digital Assets to return to all creditors "in kind" the Digital Assets underlying their Claims. An "in kind" Distribution, while not impossible, was inherently impracticable and inequitable because it would require a mechanism for determining which Customers could receive which Digital Assets, in what quantities, and at which other Customers' expense. After much deliberation, the Official Committee determined and ultimately agreed with the Debtors that monetization of the Digital Assets (and the Debtors' venture assets, most of which were funded with Customers' deposits), would result in the more fair and equitable treatment of all creditors' Claims.

Accordingly, the "global settlement" in the Plan, in sum, treats Digital Assets held by the Debtors as property of the Debtors' Estates, but, in turn, affords priority treatment to Customers' claims against the General Pool of assets available for distribution. *See* Disclosure Statement at

3

§ 4.B.5.  The Official Committee believes that the Plan, compared to all other alternatives, provides the highest and best value for creditors who were Customers of FTX.com and FTX.US, while also providing meaningful and fair recoveries to creditors who were not Customers of the exchanges.

### 2. The Supplemental Remission Fund

A key feature of the Plan is the voluntary subordination by the CFTC of its $8.7 billion Claim against the Debtors' Estates, and the establishment of the Supplement Remission Fund with proceeds that would otherwise satisfy the CFTC's and other Claims held by Governmental Units. *See* Disclosure Statement at § 4.B.7.  Notably, although agreements concerning the Supplemental Remission Fund with the CFTC and other Governmental Units have yet to be finalized, negotiations are continuing and estimated creditor recoveries under the Plan assume that such agreements will be reached, and the Official Committee assumes the same in recommending that creditors vote in favor of the Plan.[3]  The Official Committee views the Supplemental Remission Fund as a material component of the Plan, which will serve, in part, as a source of Distributions to compensate Customers of the Debtors' exchanges and certain other creditors for the greatly increased values in Digital Assets since the Petition Date.

Distributions from the Supplemental Remission Fund may not be available outside the context of this Plan.

### 3. The IRS Settlement

The Plan settles all Claims asserted by the IRS, which, after adjustment, exceed $24 billion.  Pursuant to the settlement with the IRS, which has been approved by the Bankruptcy Court subject to confirmation of the Plan, the IRS will receive an Allowed priority tax Claim in the amount of $200 million payable within 60 days of the Effective Date, and a Senior Subordinated IRS Claim, in an amount to be determined, for Claims arising out of any postpetition tax year, including without limitation any related penalties, statutory addition, or interest.  The Senior Subordinated IRS Claim shall be subordinated to Claims of Customers and other creditors with interest paid at the Consensus Rate of nine percent (9.0%).  The IRS also is granted under the Plan the Junior Subordinated IRS Claim, in the amount of $685 million, which is payable on a fully subordinated basis to Customers and all other creditors (including all other Governmental Units).  Notably, no recovery is estimated to the IRS on the Junior Subordinated IRS Claim.

The benefits to creditors from the IRS settlement are significant.  In sum, the settlement with the IRS (i) avoids costly and protracted litigation, (ii) settles all prepetition Claims against the Debtors arising from activities, transactions, liabilities, or events prior to October 31, 2022, at a value far below the amounts claimed by the IRS, and (iii) results in the subordination of any and all Claims by the IRS against the Debtors arising from activities, transactions, liabilities, or events

---

[3]  The Official Committee expects that the CFTC and other Holders of governmental claims will agree to the Supplemental Remission Fund prior to the voting deadline on the Plan, and the Debtors have agreed to consult with the Official Committee and other Supporting Parties should there be any changes to the proposed terms of the Supplemental Remission Fund.  In the unlikely event that the CFTC and other Holders of governmental claims do not agree to the Supplemental Remission Fund, the Official Committee reserves all rights with respect to the Plan.

after October 31, 2022 – thereby ensuring material recoveries to unsecured creditors that could otherwise have been due to the IRS. Moreover, recovery on account of the IRS's priority Claim will not have any material effect on creditors' recoveries.

### B. Other Important Features of the Plan

#### 1. Postpetition Interest to Customer Creditors

The Official Committee strenuously advocated for and negotiated with the Debtors for sources of recovery under a Plan to compensate Customers and other creditors for the increased values of Digital Assets since the Petition Date. The Official Committee's goal has been and continues to be to ensure that all (or as close to all as feasible) of the Debtors' Estates' distributable assets be distributed to Customers and other creditors. In that regard, in addition to encouraging the Debtors to establish a mechanism such as the Supplemental Remission Fund, the Plan (at the Official Committee's urging) also provides for payment of post-petition interest at the Consensus Rate of nine percent (9.0%). Although post-petition interest is typically available in bankruptcy cases only when a debtor is solvent, here, although the Debtors are not solvent, the Plan provides for post-petition interest to be paid by agreement to all Holders of Allowed General Unsecured Claims from the Petition Date until Distribution date, before any Distributions are made to holders of subordinated Claims. *See* Disclosure Statement at § 4.B.6. Because such interest is being paid by agreement between the Debtors and stakeholders, payment of post-petition interest as provided under the Plan may not be available to creditors if the Plan is not confirmed.

#### 2. Post-Effective Date Governance of the Debtors' Estates

A material issue for the Official Committee is the post-Effective Date governance of the Debtors' Estates. Although the Debtors, Official Committee and Ad Hoc Committee had agreed to a governance structure in October 2023 (as set forth in the Plan Support Agreement), the Debtors advised early in 2024 that, as a result of the positive developments in the Chapter 11 Cases and increases in estimated creditor recoveries, such agreement was no longer applicable and that they would not be honoring the October 2023 agreement. The Official Committee believes that creditors, the true stakeholders in these cases, must have post-Effective Date representatives able to protect creditors' economic interests, as is typical in liquidating bankruptcy cases. Over the past few months, the Official Committee vigorously advocated for and negotiated with the Debtors and other stakeholders certain modifications to the Plan to ensure such post-Effective Date representation for creditors.

Accordingly, as set forth in the modified Plan filed June 23, 2024, the Plan now provides that, while after the Effective Date, the Plan Administrator will report to the independent Wind Down Board, one board member will be jointly selected by the Official Committee and Ad Hoc Group. *See* Plan at § 5.11. In addition, to further serve as oversight of the Plan Administrator and the Wind Down Board, on the Effective Date, the Debtors will establish an advisory committee, also jointly selected by the Official Committee and Ad Hoc Group, which will owe fiduciary duties to all creditors and have material consent rights in respect of decisions concerning the Wind Down Entities, including with respect to (i) reserves and the timing and amount of Distributions, (ii) resolution or settlement of disputed unsecured Claims, (iii) commencement, prosecution and settlement of litigation, (iv) disallowance of Claims, (v) monetization of Digital Assets and venture

DRAFT

investments, (vi) implementation of the Supplemental Remission Fund, (vii) modification of the Wind Down Budget, and (viii) modification of the terms of employment or scope of authority of the Plan Administrator and any other officers of the Wind Down Entities. *See* Plan at § 5.20. The Advisory Committee will have standing to contest before the Bankruptcy Court decisions made by the Wind Down Board.

### 3. Waiver of Customer Preference Actions

The Official Committee understands that some Customers are concerned about facing preference litigation with respect to their prepetition withdrawals of assets from the Debtors' exchanges. Pursuant to the Plan, on the Effective Date, the Debtors and the Wind Down Entities are expected to waive and therefore not prosecute any preference actions against Customers that vote to accept the Plan and consent and stipulate to the amount of their Customer Entitlement Claims as set forth on their Ballots for voting, allowance, and Distribution purposes. *See* Plan at § 5.5. Thus, if the Plan is confirmed, the vast majority of retail Customers who support the Plan will not face preference liability.[4]

### 4. Form of Distributions

The Official Committee understands that many creditors would prefer to receive Distributions under the Plan in stablecoin, rather than cash. Although discussions and negotiations are continuing with potential entities to serve as Distribution Agent under the Plan, the Official Committee urged the Debtors to provide an option to Customers to receive stablecoin rather than cash, and has been assured by the Debtors that a stablecoin option will be made available to as many creditors as possible, in jurisdictions where that option is feasible. *See* Disclosure Statement at § 4.G.5.

## III. Conclusion

The Official Committee believes that the Plan maximizes recoveries to all Customers and other general unsecured creditors. If the Plan is confirmed on the currently proposed schedule, the Initial Distribution Date could be prior to year-end. If the Plan is not confirmed, creditors' estimated recoveries will likely be less than those under the Plan, both because the many settlements and resolutions of claims and issues under the Plan may not be available under some other construct, and because of the necessary delay attendant with a new plan process. The Plan distributes significant value from the Debtors' Estates, with priority to Customers, at the earliest possible time given the current circumstances of the Chapter 11 Cases.

---

[4] The waiver of Customer Preference Actions does not apply to certain customers who were Insiders of the Debtors, had actual or constructive knowledge of the commingling and misuse of Customer deposits and corporate funds, or changed their know your customer information in order to facilitate withdrawals that would otherwise have been halted, defined in the Plan as an "Excluded Customer Preference Action." For the avoidance of doubt, any pending preference actions filed by the Debtors against any party shall be an Excluded Customer Preference Action, and the defendant of such action shall not be released from such action even if such holder properly agrees to the stipulated amount for voting, allowance and Distribution and votes in favor of the Plan. *See* Disclosure Statement at § 6.F.

***The foregoing description of the Plan is not intended as a substitute for the Disclosure Statement.*** Before casting your vote, the Official Committee recommends that you read the enclosed Disclosure Statement for more detailed information regarding the facts and assumptions underlying the Plan and for information relating to the Chapter 11 Cases and estimated Distributions to creditors. The Disclosure Statement also contains answers to commonly asked questions that may be helpful to understand the Plan.

### RECOMMENDATION

It is the Official Committee's firm belief that confirmation of the Plan will maximize recoveries to Customers and other general unsecured creditors and minimize further costs associated with the Chapter 11 Cases. **Accordingly, the Official Committee supports confirmation of the Plan and encourages you to <u>VOTE TO ACCEPT</u> the Plan pursuant to the instructions on your Ballot.**

Please read the directions on the Ballot carefully and complete your Ballot in its entirety through the Debtors' online balloting portal. Your Ballot must be submitted on or before ***August 16, 2024, at 4:00 p.m. Eastern Time*** to be counted.

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE OFFICIAL COMMITTEE.**

    Very truly yours,

    The Official Committee of Unsecured Creditors of FTX Trading Ltd., *et al.*

Dated: [•], 2024