## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 16815** |
| | **Hearing Date: July 17, 2024 at 1:00 p.m. (ET)** |

## DEBTORS' OBJECTION TO THE CELSIUS LITIGATION ADMINISTRATOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this objection (this "Objection"), to *The Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* [D.I. 16815] (the "Motion"). For the reasons set forth below, there is no cause to modify the automatic stay and the Motion should be denied. In support of their Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Motion, filed by Mohsin Meghji in his capacity as the Litigation Administrator (the "Celsius Administrator") for Celsius Network LLC and its affiliated debtors ("Celsius"), suggests that Celsius does not seek to deplete the Debtors' estates or delay implementation of the Plan. (Mot. ¶ 4.) This is blatantly false.

2. In reality, if the Motion is granted, the Celsius Administrator will file a complaint against the Debtors in New York asserting preference claims and seeking to obtain a

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

judgment entitling Celsius to recover more than $67 million from Debtor Quoine Pte Ltd. ("Quoine") as an initial transferee, and more than $377 million from the Debtors as subsequent transferees.  These purported claims are untethered from any claims Celsius has against its customers as initial transferees, and, if successful, would siphon off approximately $445 million in value, plus interest, from the Debtors' customers and other creditors (subject to the Debtors' rights under section 502(h) of the Bankruptcy Code in the Celsius case) (the "Celsius Preference Claims").

3.     To be clear, the Celsius Administrator is not simply requesting that the Debtors re-route distributions to him that would otherwise be made to the Debtors' creditors on Allowed Class 5 Customer Entitlement Claims under the Debtors' Plan of Reorganization.  That type of judgment enforcement action, if Celsius actually obtains judgments against its customers as initial transferees, presents its own set of legal challenges for the Celsius Administrator, but at this point is hypothetical.  Rather, the Celsius Administrator seeks to litigate and obtain judgments directly against the Debtors on preference claims that would entitle Celsius to Allowed Class 6 General Unsecured Claims under the Plan—new, different, and independent liabilities that would be borne by the Debtors' estates and their creditors.

4.     There is no basis to lift the automatic stay to permit the Celsius Administrator's litigation against the Debtors.  As a threshold matter, Celsius's purported preference claims cannot be asserted because Celsius did not file proofs of claim with respect to them prior the Non-Customer Claims Bar Date.  This gating issue must be determined by this Court, which retained jurisdiction with respect to the Non-Customer Claims Bar Date Order.

5.     Celsius filed for bankruptcy protection on July 13, 2022, and had sufficient information and time to assert any preference claims against the Debtors prior to the June 30, 2023

Non-Customer Claims Bar Date established by the Court in these Chapter 11 Proceedings, but failed to do so.  Only now, as Celsius's statute of limitations is about to expire have they surfaced seeking to assert hundreds of millions of dollars of new claims against the Debtors.  They cannot do so.

6.      Celsius understood the need to file claims against the Debtors by the Non-Customer Claims Bar Date, and in fact did file over one hundred duplicative proofs of claim asserting meritless claims of $2 billion or more on the basis of "unsubstantiated and disparaging statements allegedly made by FTX's officers" and speculated that Celsius "may" have claims against the Debtors such as "libel, slander, [and] tortious interference with business relations."[2] After making this speculative assertion, the proofs of claims stated, in passing, that "Celsius is also investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions."  (Glueckstein Decl. Ex. A.)  But that statement along with general reservations of rights do not permit Celsius to assert entirely new claims at this late juncture.[3]  Nothing in Celsius's proofs of claim was "sufficient to put" the Debtors "on notice as to the existence, nature and amount of the claim[s]" Celsius is attempting to assert.  *In re Am. Classic Voyages Co.*, 405 F.3d 127, 132-134 (3d Cir. 2005) (affirming denial of a motion for stay relief filed by a creditor that failed to file a timely proof of claim).

7.      Furthermore, the Celsius Administrator cannot satisfy his significant burden to establish cause to lift the automatic stay.  Each of the three factors relevant to a request to lift the automatic stay demonstrates that the Motion should be denied.  *First*, the Celsius Administrator

---

[2]    *See* Proof of Claim submitted by Celsius Network Limited and its affiliated debtors against Quoine Pte Ltd., dated June 29, 2023, attached as Exhibit A to the Declaration of Brian D. Glueckstein (the "Glueckstein Decl.").

[3]    Footnote 4 of the Motion misleadingly states that Celsius had asserted claims against the Debtors for, among other things, "avoidance claims of prepetition transfers pursuant to sections 547, 548, and 550 of the Bankruptcy Code."  This is not true.

has no "probability of . . . prevailing on the merits" of its preference claims because, among other reasons, Celsius failed to file timely proofs of claim. *In re Town Sports Int'l*, 2023 WL 8827193, at *4-5 (D. Del. Dec. 21, 2023) (rejecting an effort to lift the stay imposed by a plan injunction because the creditor "did not file a proof of claim").  Beyond that fatal defect, Celsius has failed to demonstrate it possesses facts to support its claims and overcome defenses the Debtors are entitled to assert.  For example, the Debtors have no liability as subsequent transferee with respect to alleged receipt of assets withdrawn from Celsius accounts by Celsius customers because any such assets were received from the Debtors' customers "for value . . . in good faith, and without knowledge of the violability of" any transfer that the Celsius Administrator may avoid.  *In re Bressman*, 327 F.3d 229, 235 (3d Cir. 2003) (quoting 11 U.S.C. § 550(b)(1)).  Moreover, the alleged transfers by Quoine are not avoidable because they were routine withdrawals from Quoine's account that constitute "payment of a debt incurred by the debtor in the ordinary course of business."  11 U.S.C § 547(c)(2).

8.      *Second*, the Debtors would be prejudiced by having to immediately start litigating hundreds of preference claims in another forum at the same time the Debtors are soliciting votes on their Plan and working to reconcile and reduce the many quintillion dollars of purported claims down to only those valid claims that should be allowed.  As the Celsius Administrator acknowledges (Motion ¶ 32), "[t]he . . . most important factor considered by courts is prejudice to the bankruptcy estate," *Town Sports*, 2023 WL 8827193, at *5.  The Celsius Administrator claims that the Debtors will not be prejudiced by being dragged into litigation about more than 500 preference claims in a different forum where the court will be unfamiliar with the Debtors' Chapter 11 Cases and the facts relevant to the Debtors' defenses—facts that are relevant to numerous issues with broad implications in the Debtors' Chapter 11 Cases.  (Motion ¶¶ 32-36.)

That is absurd.  Lifting the automatic stay and permitting litigation against the Debtors to move forward in the Southern District of New York will burden and distract the Debtors and their professionals at precisely the time that they must be focused on obtaining confirmation of their plan of reorganization and successfully concluding their Chapter 11 Cases.

9.      *Third*, the Celsius Administrator will not be prejudiced by the continuation of the statutory stay.  Celsius has filed proofs of claim and submitted to the jurisdiction of this Court to litigate any and all issues relating to their claims against the Debtors.  Having voluntarily done so, the Celsius Administrator cannot now argue that it faces hardship by litigating Celsius's claims here.  In addition, Celsius emerged from chapter 11 almost six months ago, and no longer faces challenges of being a debtor.  This is not a "dueling debtor" situation.  The Celsius Administrator's mandate is to litigate and he is capable of litigating against the Debtors in the District of Delaware.  Of course, the Celsius Administrator is free to pursue the initial transferees on Celsius's customer preference claims in New York, as he has already begun to do.  The Motion should be denied.

## RELEVANT BACKGROUND

### A.  The Debtors and Their Chapter 11 Cases

10.     On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

11.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

12.     On June 26, 2024, the Court entered an order, among other things, approving the adequacy of the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* (the "Disclosure Statement") and voting and solicitation procedures in connection with confirmation of the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* (as may be amended, modified or supplemented from time to time, the "Plan") [D.I. 19068].

13.     Plan solicitation is underway and the deadline both to vote and submit any objections to the Plan is August 16, 2024.  While the Debtors recommend all creditors support the Plan and will continue to build consensus with additional creditors, they recognize that some creditors may not support the Plan despite the substantial value that it is projected to deliver to satisfy allowed claims.  Objections to the Plan may include complex legal issues, including those related to customer property, and discovery on those issues.  The Debtors anticipate devoting substantial resources to the Plan confirmation process and claims reconciliation and objections in the coming months.

**B.  The Debtors' Non-Customer Claims Bar Date and the Celsius Proofs of Claim**

14.    On May 3, 2023, the Debtors filed the *Motion of Debtors for Entry of an Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1416] (the "Non-Customer Claims Bar Date Motion").  On May 19, 2023, the Court entered an order approving the Non-Customer Claims Bar Date Motion [D.I. 1519], setting a Non-Customer Claims bar date of June 30, 2023 (the "Non-Customer Claims Bar Date") and establishing certain procedures (the "Non-Customer Claims Bar Date Order").

15.    On June 29, 2023, Celsius filed 103 duplicative proofs of claim asserting contingent, unliquidated, general unsecured claims in the amount of "no less than $2 billion" against each of the Debtors, including Quoine (the "Celsius Proofs of Claim").  (*See, e.g.*, Glueckstein Decl. Ex. A (proof of claim filed against Quoine).)  The Celsius Proofs of Claim indicate that the sole basis for the claims were reports in unidentified "periodicals" of "unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius' balance sheet and financial condition" that allegedly caused some unarticulated harm to "Celsius's brand, reputation, and business prospects" and contributed to "Celsius's need to file for chapter 11." (*Id.*)

16.    The Celsius Proofs of Claim reference (without more) a litany of potential causes of action against the Debtors that "may include, but are not limited to, libel, slander, tortious interference with business relations, tortious interference with contract, tortious interference with business prospects, business disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and conspiracy." (*Id.*)  No such claims are actually articulated, and the Debtors will separately object to the Proofs of Claim.

17.     The Celsius Proofs of Claim further state that Celsius is investigating "causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions," but do not provide any articulation of any factual or legal predicate for such claims.  (*Id.*)  Thus, none of the Celsius Proofs of Claim—including the claim filed against Quoine—set forth any preference claims.  (*Id.*)

### C.  The Celsius Bankruptcy and the Alleged Preferential Transfers

18.     On July 13, 2022, Celsius filed chapter 11 petitions in the U.S. Bankruptcy Court for the Southern District of New York (the "S.D.N.Y. Bankruptcy Court").  (Mot. ¶ 9.)  On November 9, 2023, the S.D.N.Y. Bankruptcy Court entered an order confirming Celsius's *Modified Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (the "Celsius Plan") [Celsius D.I. 3972].  The Celsius Plan became effective on January 31, 2024 [Celsius D.I. 4298].

19.     On January 4, 2023, more than eleven months before the Celsius Plan effective date, the S.D.N.Y. Bankruptcy Court determined that, subject to certain individual defenses that could be asserted, assets deposited in Earn accounts on the Celsius platform became "Celsius's property."  *In re Celsius Network, LLC,* 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023). This decision confirmed that Celsius could pursue preference actions against customers.  (Mot. ¶¶ 11 & n.5, 15, 20.)

20.     The Celsius Administrator nonetheless waited until June 5, 2024, with the statute of limitations expiring, to file the Motion.  The Motion seeks to lift the automatic stay in these Chapter 11 Cases to permit the Celsius Administrator to prosecute claims against the Debtors, both as initial and subsequent transferee, in the S.D.N.Y. Bankruptcy Court.  (Mot. ¶ 1.)

21.     Specifically, the Celsius Administrator alleges that during the 90 days immediately preceding the petition (the "Celsius Preference Period"), 538 Celsius customers

withdrew unspecified assets "totaling no less than $516,653,547" from "Earn" accounts on the Celsius platform, (Draft Compl. ¶¶ 50-52; Ehrler Decl. Ex. C), and transferred approximately $377,419,348 of those assets to unidentified wallets allegedly belonging to either "an FTX Debtor or an entity in the liquidation of FTX Digital Markets Ltd." in the Bahamas (the "Celsius Customer Transfers"), (Mot. ¶ 16 n.8; Draft Compl. ¶ 53).  Further, during the Celsius Preference Period, Quoine allegedly made various deposits and withdrawals from its Earn account that resulted in a net cumulative withdrawal of $67,038,496 (the "Quoine Transfers").  (*See* Draft Compl. ¶¶ 40-49; Ehrler Decl. Ex. D.)  Celsius listed each of these Quoine Transfers in the Statement of Financial Affairs that it filed back on *October 5, 2022*.  (Celsius's Statement of Financial Affairs at 10982-83, *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. Oct. 5, 2022), Celsius D.I. 973.)

22. The Motion seeks stay relief to pursue a judgment against Debtors "totaling no less than approximately $67,038,496" on the theory that Debtor Quoine was an initial transferee pursuant to section 547 of the Bankruptcy Code.  (Draft Compl. ¶ 41; *see also* Mot. ¶ 19-21.)  If successful, this claim would give rise to a new Class 6A General Unsecured Claim under the Debtors' Plan.

23. The Celsius Administrator also seeks to recover $377,419,348 from the Debtors as subsequent transferee pursuant to section 550 of the Bankruptcy Code (the "Celsius Customer Claims").  (Mot. ¶ 4; Draft Compl. ¶ 9.)  The Motion misleadingly asserts that the Celsius Administrator is asserting the Celsius Customer Claims against the Debtors "[i]n the event that the avoidable transfers are not recovered from the initial customer transferees of Celsius" so that the Debtors can "redirect[] to Celsius" payments that would otherwise be made to customers pursuant to the Debtors' Plan.  (Mot. ¶ 4.)  But neither the relief requested nor the draft complaint the Celsius Administrator seeks to file if stay relief is granted seek to do anything of the sort.

Rather, the draft complaint seeks to obtain a judgment against the Debtors as to the Celsius Customer Claims as a subsequent transferee that would be independently collectable (*see* Draft Compl. at 26), and would create hundreds of millions of dollars of new liability in Class 6A of the Debtors' Plan.

## **ARGUMENT**

24.    The automatic stay set forth in section 362(a) of the Bankruptcy Code applies to the "commencement" of an action that "was or could have been commenced" before the filing of a Chapter 11 case. 11 U.S.C. § 362(a)(1).  The automatic stay is one of the "fundamental" protections afforded to the FTX Debtors under the Bankruptcy Code.  *Midlantic Nat'l Bank* v. *New Jersey Dep't of Env't. Prot.*, 474 U.S. 494, 503 (1986).

25.    The automatic stay shields debtors from harassment and a multiplicity of litigation at a time when the debtors should be focusing on their restructuring efforts.  *See, e.g.*, *In re THG Holdings LLC*, 604 B.R. 154, 160 (Bankr. D. Del. 2019) (Dorsey, J.) ("Clearly, the stay is designed to halt all collection efforts in order to allow the debtor time to reorganize.").  In particular, it is "designed to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."  *In re Advanced Elecs., Inc.*, 283 F. App'x 959, 965 (3d Cir. 2008) (quoting *Borman* v. *Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)).

26.    Section 362(d) allows a party to obtain stay relief only "for cause." 11 U.S.C. § 362(d)(1).  The party moving for relief from the automatic stay has the "initial burden . . . to make a *prime facie* showing of cause sufficient to support the party's request for relief from the stay."  *In re Scalera*, 521 B.R. 513, 517 (Bankr. W.D. Pa. 2014).  If the moving

party makes a *prima facia* showing, the burden then "shifts to the debtor to rebut the creditor's prima facie case." *In re Donaghy*, 2019 WL 1504334, at *3 (Bankr. E.D. Pa. Apr. 4, 2019).

27.    Because the term "cause" is not defined in Section 362(d), "[c]ourts in the Third Circuit consider three factors when balancing competing interests of debtors and movants" to determine if cause exists:

> (1) whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the nonbankruptcy party by maintenance of the stay considerably outweighs the hardship on the debtor; and (3) the probability of the creditor prevailing on the merits.

*Town Sports*, 2023 WL 8827193, at *5.  "To establish cause, the party seeking stay relief must show that the balance of hardships from not obtaining relief tips significantly in its favor." *Id*. at *6.  Further, "[u]nsecured creditors like [Celsius] bear a heavy burden in proving that the balance of hardships favors lifting the stay." *In re Celsius Network LLC,* 642 B.R. 497, 504 (Bankr. S.D.N.Y. 2022); *see also In re Chan*, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006) ("special circumstances must be present before an unsecured creditor is granted relief from the automatic stay for cause").

28.    The Motion should be denied because the Celsius Administrator has failed to carry the heavy burden necessary for it to present a *prima facia* case for stay relief. *See, e.g.*, *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006), *aff'd*, 359 F. App'x 352 (3d Cir. 2010) ("Failure to prove a prima facie case requires denial of the requested relief.").  Each of the three relevant factors weigh heavily against lifting the automatic stay so that the Celsius Administrator can disrupt these bankruptcy proceedings in an attempt to divert value from the Debtors' legitimate creditors in another forum.  Indeed, even if the Celsius Administrator could be said to have made out a *prima facie* case (and he has not), the Debtors have rebutted it for the reasons set forth below.

I.      **The Celsius Administrator Cannot Prevail on Its Barred Preference Claims**

29.      As an initial matter, it is not possible—let alone "probable"—that Celsius will prevail on the merits of its preference claims against the Debtors.  Because it failed to file proofs of claim regarding the preference claims it is now seeking to assert, Celsius should be barred from pursuing its preference claims.  Further, Celsius has not and likely cannot come forward with any evidence to overcome defenses that the Debtors are entitled to assert against Celsius's preference claims.

A.      **The Celsius Administrator Cannot Prevail on the Merits Because Celsius Did Not File Proofs of Claim Regarding Preference Claims.**

30.      The Motion is an effort to circumvent the Non-Customer Claims Bar Date by asserting in another forum approximately $445 million in preference claims that were not included in the Celsius Proofs of Claim.  In its 103 duplicative proofs of claim, Celsius alleged only vague claims based on unidentified "periodicals" containing "unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius' balance sheet and financial condition" that allegedly caused some unarticulated harm to "Celsius's brand, reputation, and business prospects" and contributed to "Celsius's need to file for chapter 11." (Glueckstein Decl. Ex. A.)  The Celsius Proofs of Claim purport to reserve rights, and contain a single sentence stating that "Celsius is also investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions." (*Id.*)  That is insufficient to permit the preference claims the Celsius Administrator now seeks to assert.

31.      When a creditor first files a claim, it "must allege facts sufficient to support [that] claim." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).  Celsius's single sentence about "investigating causes of action" does nothing of the sort. (Glueckstein Decl. Ex.

A.)  Indeed, Celsius failed to comply with even the most basic requirements of a valid proof of claim because the Celsius Proofs of Claim did not articulate the amount of any preference claim, the nature of any such claim, the transfers underlying the purported claims, or any facts at all that could be the basis for, or put the Debtors on notice of, any such claims.  *See Am. Classic Voyages*, 405 F.3d at 132 (rejecting a purported informal proof of claim).  As a result, Celsius's proofs of claim are fatally defective because they "fail to state any [preference] claim whatsoever."  Hr'g Tr. at 145:1-146:1, *In re Mallinkrodt Plc*, No. 20-12522 (Bankr. D. Del. July 23, 2021), ECF No. 3414 (Dorsey, J.).[4]

32.    The Celsius Administrator also cannot use the Motion to belatedly amend the Celsius Proofs of Claim to assert new claims after the Non-Customer Claims Bar Date.  "Dates matter in bankruptcy" and "[f]or creditors, none is more important than the 'bar date.'"  *Ellis* v. *Westinghouse Elec. Co.*, 11 F.4th 221, 221 (3d Cir. 2021).  Thus, "[c]reditors may not use the claims amendment process to circumvent the claims bar date."  *In re Nortel Networks Inc.*, 573 B.R. 522, 529 (Bankr. D. Del. 2017).  "The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court" and "[a]n amendment to claim filed post bar date must be scrutinized to assure that it is not an attempt to file a new claim."  *In re Exide Techs.*, 601 B.R. 271, 291 (Bankr. D. Del. 2019).

33.    Bankruptcy courts will permit proofs of claim to be amended after the bar date only if (1) there was a "timely assertion of a similar claim or demand evidencing an intention to hold the estate liable," and (2) "it would be equitable to allow the amendment."  *In re Mallinckrodt Plc*, 2022 WL 3545583, at *3 (D. Del. Aug. 18, 2022).  A post-bar date amendment

---

[4]    The Celsius Administrator makes much of its purportedly "slight" burden to show a probability of success on the merits.  (Mot. ¶ 41.)  But even a "slight" burden must be met, and seeking to assert claims plainly barred by the Non-Customer Claims Bar Date removes even the "slightest" chance of success on the merits.

to a claim satisfies the first prong of this test only if it "'(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim.'" *Id*. (quoting *In re FLYi, Inc.*, 2008 WL 170555 at *3 (Bankr. D. Del. Jan. 16, 2008)).  But the Motion and the draft complaint Celsius seeks to file do none of these things.  Rather, they assert entirely new claims bearing no relation to the claims (such as they are) asserted in the Celsius Proofs of Claim.

34.     Further, Celsius cannot rely on its purported boilerplate reservation of "all rights to amend" its proofs of claim or its one sentence about "investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code" to raise brand-new claims.  "Bar dates would be rendered meaningless if creditors were granted leave to amend to assert new novel claims based on broad language in a timely-filed Proof of Claim."  *In re Calpine Corp.*, 2007 WL 4326738, at *5 (S.D.N.Y. Nov. 21, 2007).  Indeed, it is axiomatic that "an express reservation of rights only serves to protect those rights that exist, whatever they may be" because it "cannot unilaterally create a right."  *In re Analytica Wire, Inc*., 392 B.R. 618, 622 (Bankr. D. Del. 2008) (holding "where the statutory prerequisites for recovery have not been met, a party's express non-waiver of a purported right to recover simply amounts to a reservation of a right that does not exist").  Simply put, Celsius had no right to disregard this Court's Non-Customer Claims Bar Date Order so they could not reserve the right to do so in the Celsius Proofs of Claim.

35.     This is not, however, the first instance in which Celsius has attempted to use a motion for stay relief to belatedly assert a preference claim.  In the *Voyager Digital Holdings, Inc.* bankruptcy case, Celsius filed a stay relief motion asserting a preference claim for the first time 72 days after the claims bar date that was denied because Celsius's inexcusable failure to file a timely proof of claim meant that there was "no claim that can be pursued."  (Glueckstein Decl.

Ex. B (Hr'g Tr. at 103:21-24, No. 22-10943 (Bankr. S.D.N.Y. Jan. 24, 2023), Voyager D.I. No. 921).)

36.     There, Celsius asserted that, during the applicable preference period, Voyager had made avoidable withdrawals totaling approximately $7.7 million from Earn accounts it had on Celsius's platform.[5] Celsius argued that it was entitled to stay relief to belatedly assert this preference claim without first filing a timely proof of claim because it "[had] not receive[d] notice of the bar date in the Voyager Bankruptcy and [had been] in the midst of its own massive bankruptcy proceeding when the bar date passed." (*Id.* ¶ 40.)

37.     In response, Voyager argued that Celsius *had* received notice of the bar date, and that "[a]s a matter of law, Celsius's contemporaneous preoccupation with its own bankruptcy filing [wa]s not a compelling reason for delay," especially because "Celsius's very preparation of schedules and statements in its own bankruptcy . . . should have highlighted its potential claim[s]."[6] Judge Wiles agreed with the Voyager Debtors and denied Celsius's motion, observing that "the whole point" of a bar date notice was to enable would-be creditors to "prioritize in [their] efforts to figure out whether [they] have a claim, and to get it filed before the deadline." (Glueckstein Decl. Ex. B (Hr'g Tr. at 101:21-25).)

38.     Non-compliance with this Court's Non-Customer Bar Date Order is an issue that must be addressed by this Court, and there is no reason to reach any different conclusion. Here, the facts are far more egregious because Celsius had actual knowledge of the Debtors' Non-Customer Claims Bar Date as evidenced by the fact they submitted the Celsius Proofs of Claim.

---

[5]   Celsius's Motion for Order (i) Lifting the Automatic Stay and (ii) Granting Leave to File Late Proof of Claim ¶¶ 18-20, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (Bankr. S.D.N.Y. Dec. 14, 2022), Voyager D.I. 727.

[6]   Voyager Debtors' Objection to Celsius's Lift-Stay Motion ¶¶ 23-24, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (Bankr. S.D.N.Y. Jan. 17, 2023), Voyager D.I. 867.

Celsius should not be permitted to brazenly ignore the Non-Customer Claims bar date in these Chapter 11 Cases and pursue $445 million of previously unasserted preference claims. Furthermore, schedules filed in Celsius's bankruptcy proceedings back *in October 2022*—eight months before the Non-Customer Claims Bar Date—reveal that Celsius was aware of the Quoine Transfers but failed to assert a claim based on them.  (*See* Celsius D.I. 973 at 10982-83 (listing alleged transfers by Quoine).)  Similarly, as to the Celsius Customer Transfers, Celsius's own allegations make clear that it should have been aware of its alleged preference claims long ago. (Draft Compl. ¶ 61 (alleging "FTX was receiving *en masse* transfers of assets from Celsius, and the position of FTX as a major player in cryptocurrency").)  Thus, there is simply no excuse for Celsius's lack of diligence and disregard for the Non-Customer Claims Bar Date.

> **B.     The Debtors Have Valid Defenses to Celsius's Belatedly Asserted Preference Claims.**

39.     Although Celsius's failure to file timely proofs of claim forecloses its preference claims, the Debtors could assert strong defenses to the claims the Celsius Administrator is attempting to assert.  The Celsius Administrator has not come forward with any allegations that would overcome the Debtors' good-faith defense as to the Celsius Customer Transfers.   In addition, the Debtors maintain, among other defenses, that the alleged Quoine Transfers were made in the ordinary course of business and are not avoidable.

40.     Pursuant to Section 550(b)(1) of the Bankruptcy Code, "a Trustee may not recover an otherwise avoidable transfer from a subsequent transferee 'that takes for value . . . , in good faith, and without knowledge of the voidability of the transfer avoided.'"  *Bressman*, 327 F.3d at 235 (quoting 11 U.S.C. § 550(b)(1)).  The Celsius Administrator never even suggests that the Debtors (as purported subsequent transferees) accepted customer deposits of Celsius assets for no value, in bad faith, or with knowledge that they were subject to an avoidable preference.  This

makes sense because "[t]he 'value' required to be paid by the secondary transferee is merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value."  5 Collier on Bankruptcy ¶ 550.03 (16th 2024).  The Debtors offered access to their services in return for deposit of the assets alleged to be Celsius Customer Transfers.

41.    The Celsius Administrator ignores these plain facts and suggests that the Debtors were aware that Celsius was under financial pressure, and were thus on "inquiry notice" that customer transfers of assets originating from Celsius accounts "could or would become avoidable as a result of [Celsius's] potential bankruptcy." (Draft Compl. ¶ 85.)  There is no basis for Celsius's allegation but nonetheless it is insufficient to negate the Debtors' good-faith receipt of the customer transfers.  "'Knowledge' is a stronger term than 'notice.'" *Bressman*, 327 F.3d at 237.  "[T]he issue is whether the facts known to the [transferees] and the reasonable inference to be drawn from those facts would affirmatively suggest to a reasonable person in their position that they were receiving assets of the estate.  If not, there would be no duty to investigate." *Id*.  The Celsius Administrator fails to make even the barest showing that Debtors had any knowledge that they were, allegedly, "receiving assets of the [Celsius] estate." *Id*.

42.    Indeed, the Motion is devoid of any facts connecting the Debtors' customers' deposits to assets allegedly withdrawn by Celsius's customers, or evidence that the Debtors had access to facts connecting any such assets to Celsius, or that, even if it was possible to trace the assets to Celsius, it would have been reasonable for the Debtors to have done so.  This is fatal to Celsius's preference claims.  *See id.* at 239 ("Knowledge of the existence of the trust, however, is not probative of knowledge that the trust was an asset of the estate, much less of knowledge that the challenged payments originated with the trust.").

43.    The Celsius Administrator's claims regarding the Quoine Transfers are also flawed because, among other things, Quoine's withdrawals would constitute "payment of a debt incurred by the debtor in the ordinary course of business."   11 U.S.C § 547(c)(2).   Only a preponderance of the evidence is needed to support the "ordinary course" defense.  *In re Conex Holdings, LLC*, 522 B.R. 480, 486 (Bankr. D. Del. 2014). The Celsius Administrator attached to the Motion records of Quoine's deposits and withdrawals from its account on the Celsius platform during the Celsius Preference Period.  (Ehrler Decl. Ex. D.)  As shown in these records, Quoine regularly made large deposits of cryptocurrency and stablecoin into its Celsius account during the Celsius Preference Period.  Indeed, a deposit was made as late as May 19, 2022.  (*Id.*)

44.    In any event, it is evident that the Debtors' substantive defenses to Celsius's preference claims implicate facts and circumstances specific to the Debtors, that have general applicability across numerous issues in these Chapter 11 Cases, and should therefore be addressed by this Court.   Accordingly, the Debtors' defenses to the preference claims the Celsius Administrator is now seeking to assert weigh against any relief from the statutory stay.[7]

## II.    The Debtors Will be Greatly Prejudiced If the Automatic Stay is Lifted

45.    In determining whether to lift the automatic stay, the "most important factor considered by courts is prejudice to the bankruptcy estate."  *Town Sports*, 2023 WL 8827193, at *5.   In this case, that prejudice would be considerable.   To argue otherwise, the Celsius Administrator wrongly downplays the number and nature of claims he is asserting, the myriad complexities associated with the Celsius Administrator's efforts to insert itself into the claims

---

[7]    The Debtors discussion of certain defenses to Celsius's purported preference claims are illustrative, and the Debtors reserve all and do not waive any rights, defenses, and arguments.  The Debtors reserve all rights to assert additional defenses and present evidence in support of its defenses at an appropriate time.

process in these Chapter 11 Cases, and the significance of the Debtors' fact-specific defenses to Celsius's claims.  (Mot. ¶¶ 33-35.)

46.     The Celsius Administrator first glosses over the fact that he is seeking to immediately litigate 539 different claims against the Debtors involving an even greater multitude of alleged transfers.  (*See* Ehrler Decl. Exs. C-D.)  Investigating and preparing to defend against these claims would require considerable effort at precisely the time in these Chapter 11 Proceedings when the Debtors can least afford distractions from the ongoing Plan solicitation and confirmation process.  *See, e.g.*, *In re The Fairchild Corp.*, 2009 WL 4546581, at *5-6 (Bankr. D. Del. Dec. 1, 2009) (denying stay relief where "it would be distracting for the Debtors' management and professionals to be entangled" in outside actions); *In re Northwest Airlines Corp.*, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("the Debtors in these Chapter 11 cases are at a critical stage in their bankruptcy proceedings" and "[d]efending against a multitude of actions . . . would impede the Debtors' successful emergence from Chapter 11").

47.     The Celsius Administrator attempts to wish away this prejudice by asserting that, as to the Celsius Customer Transfers, he is only seeking to "redirect distributions already contemplated by the FTX Plan" from customers to Celsius's estate.  (Mot. ¶ 33.)  As noted, this is false.  The Celsius Administrator is not simply requesting that the Debtors redirect distributions to him that would otherwise be made to the Debtors' creditors on Allowed Class 5 Customer Entitlement Claims under the Plan.  That type of judgment enforcement action, if Celsius actually obtains judgments against its customers as initial transferees, is completely different than suing the Debtors seeking to establish preference judgments totaling approximately $445 million in new claims (plus interest) that would become Allowed Class 6A General Unsecured Claims under the Plan.  This value would come directly out of the pockets of the Debtors' customers and other

legitimate victims of FTX's prepetition fraud. This outcome being imposed on the Debtors by the S.D.N.Y. Bankruptcy Court would be extremely prejudicial to the Debtors and their estates.

48.     Even if the Motion actually limited the relief being sought (and it does not), the Celsius Administrator's efforts are still flawed. By seeking to obtain control over prospective distributions to creditors under the Plan, the Celsius Administrator is attempting to use Celsius's purported preference claims against the Debtors as a pretext to seek prejudgment attachment of distributions that may be made to creditors pursuant to the Plan and use these Chapter 11 Cases as "a collection forum for third-party claims against creditors" that do not implicate the Debtors. *See In re Logan*, 2010 WL 1286651, at *2-3 (Bankr. E.D. Va. Mar. 29, 2010). Bankruptcy courts have long held that "[a] bankruptcy trustee should not be subject to a pre-judgment garnishment which would unnecessarily complicate and delay the efficient administration of the bankruptcy estate." *In re Brickell*, 292 B.R. 705, 709 (Bankr. S.D. Fla. 2003), *aff'd* 142 F. App'x 385 (11th Cir. 2005). Thus, to the extent the Celsius Administrator's requested relief could be proper, it is certainly premature because he has not obtained judgments against any FTX customers who are alleged "initial transferees."[8]

49.     Regardless, as is particularly relevant to the instant motion, the Celsius Administrator's requested relief would "greatly add to the burdens" of the Debtors and could "delay the timely closing of [their] estates." *In re Logan*, 2010 WL 1286651, at *2. The Celsius Administrator has no way of knowing which, if any, of the "initial transferees" might ultimately hold Allowed Claims under the Plan and be eligible for distributions. This Court has repeatedly protected the identities of the Debtors' customers, and the alleged "initial transferees" implicated by the Celsius Customer Transfers are customers. (Ehrler Decl. Ex. C.) For example, some

---

[8]     The Debtors reserve all rights to challenge the merits of any claims asserted by the Celsius Administrator.

customers may have withdrawn the amounts at issue from their FTX accounts prior to the Petition Date.  Further, the Celsius Administrator readily admits that it has not attempted to properly value the many different unidentified assets over which it is attempting to assert claims and would likely dispute any valuation the Debtors put forward.  (Ehrler Decl. Exs. C-D.)  Thus, addressing the Celsius Customer Claims now would require, among other things, a lengthy and detailed review of the Debtors' records and judicial resolution of asset valuation disputes, time-consuming and expensive processes which would prejudice the Debtors and their estates, and, if they are to proceed at all, should only occur under the supervision of this Court.

50.     Furthermore, adjudication of Celsius's preference claims against the Debtors would necessarily require evaluation of multiple legal and factual questions, including: (i) whether the alleged Celsius assets actually are "attributable" to FTX (Draft Compl. ¶ 63); (ii) whether the Debtors actually had knowledge of Celsius's financial condition (*id*. ¶¶ 61-62); (iii) whether the Debtors knew assets "attributable" to Celsius originated with Celsius (*id*. ¶ 61); (iv) whether the Debtors acted in good faith; and (v) whether FTX customers have property rights in the cryptocurrency they deposited with the Debtors (*id*. ¶ 65).  Each of these factual and legal issues fundamentally concern the Debtors and the Debtors' estates; as such, removing this Court's jurisdiction over these issues would prejudice the Debtors and the Debtors' estates.  Accordingly, the Motion should be denied.

51.     The Celsius Administrator argues, however, that at least one court has lifted the automatic stay in circumstances "similar to the request made by the Celsius Litigation Administrator here."  (Mot. ¶ 30, citing *In re Shared Techs. Cellular, Inc.*, 293 B.R. 89 (D. Conn. 2003).)  That is wrong.  In *Shared Technologies*, neither the bankruptcy court nor the district court analyzed whether lifting the stay was appropriate because, before the bankruptcy court, the

debtor's trustee conceded that the relevant factors weighed in favor of stay relief and focused its objection only on ensuring that stay relief came with certain conditions.  *In re Shared Techs. Cellular, Inc.*, 281 B.R. 804, 807 (Bankr. D. Conn. 2002) (noting "[t]he STC trustee concedes that this court may grant the [motion to lift the automatic stay] . . . in light of the applicable [*Sonnax*] factors").[9]

## III.    Celsius Will Not Face Any Hardship if the Automatic Stay Remains in Place

52.    Unsecured creditors such as Celsius "bear a heavy burden in proving that the balance of hardships favors lifting the stay" and it is readily apparent that the Celsius Administrator "simply has not met the burden here."  *In re Celsius Network LLC*, 642 B.R. 497, 504 (Bankr. S.D.N.Y. 2022).  As a threshold matter, Celsius's failure to file a timely claim means that the Celsius Administrator cannot be prejudiced by the continuation of the automatic stay because Celsius has no valid claims to pursue.  *See Town Sports*, 2023 WL 8827193, at *6.  Even putting aside this dispositive fact, it is clear that continuation of the automatic stay would impose no meaningful hardship on Celsius.

53.    The Celsius Administrator claims that it would be unduly burdensome to litigate claims with respect to the Quoine Transfers and Celsius Customer Transfers before this Court.  (Mot. ¶¶ 38-39.)  But Celsius voluntarily filed the Celsius Proofs of Claim and has therefore consented to this Court's jurisdiction to resolve its claims.  *Travellers Int'l AG* v. *Robinson*, 982 F.2d 96, 98 (3d Cir. 1992) (holding submission of proof of claim including preferences subjects

---

[9]    The Celsius Administrator's efforts to cite the Debtors' litigation position in the Genesis Global bankruptcy cases is equally unavailing.  (Mot. ¶ 3 (citing FTX Debtors' Motion for Stay Relief, *In re Genesis Global Holdco, LLC., et al.*, Case No. 23-10063 (Bankr. S.D.N.Y. Nov. 11, 2022), Genesis D.I. 289).)  Notably, the Genesis Court never ruled on the Debtors' lift stay motion.  Moreover, the Debtors primarily objected to having another court decide certain core issues related to the heart of the Debtors' Chapter 11 Cases (almost all exclusively involving the extensive fraud committed by the Debtors' prior management) that were also either integral to the preference actions themselves or to defenses that had been raised by the Genesis Debtors in preliminary discussions.  Thus, the circumstances in that case are entirely distinguishable.

those claims to the bankruptcy court's claims process (citing *Langenkamp* v. *Culp*, 498 U.S. 42 (1989)).)  In addition, Celsius completed its reorganization nearly six months ago and no longer faces the same hurdles associated with chapter 11 proceedings that it dealt with prior to the effective date of its plan.  Compared to the Debtors (currently in the midst of these Chapter 11 Cases), Celsius will not be affected by pursuing preference claims in this Court.

54.     The Celsius Administrator also argues that requiring it to assert the Celsius Customer Claims in this Court could impede Celsius's "ability to recover on preference claims." (Mot. ¶ 40.)  This is false.  As the Celsius Administrator admits, the alleged initial transferees "will be subject to preference actions by Celsius *whether or not* the FTX Debtors are joined to those proceedings."  (Mot. ¶ 35 (emphasis added).)

55.     Further, the Motion fails to identify why the Debtors must be a party to any preference actions involving the Celsius Customer Claims at this time.  Courts do not require an action under section 550(a) of the Bankruptcy Code against a subsequent transferee to include the initial transferee.  *In re J&M Sales Inc.*, 644 B.R. 440, 445 (Bankr. D. Del. 2022) (Dorsey, J.) ("The Trustee responds that the plain language of Section 550 makes clear that he is not required to name the initial transferee in an action to avoid a preferential transfer from a transfer beneficiary. I agree.").  Indeed, Section 550(a) does not create independent preference liability for subsequent transferees—the liability flows out of a violation of Section 547 by an immediate transferee.  *See id.* at 446 ("As the trustee . . . only had a claim under Section 547 against the initial transferee, and that claim failed, the claim under Section 550 also failed."); *see also In re Res., Recycling & Remediation, Inc.*, 314 B.R. 62, 69 (Bankr. W.D. Pa. 2004) ("Section 550(a) is a recovery provision and gives rise to a secondary cause of action which applies after the trustee has prevailed under one (or more) of the avoidance provisions found in the Bankruptcy Code.").

56.     Once the immediate transferee's liability is established, the question of whether the Debtors are liable to Celsius under Section 550(a) as subsequent transferees is a wholly separate analysis.  It requires consideration of fact-specific defenses focused on the Debtors and their conduct that this Court is best positioned to efficiently adjudicate.

57.     In the end, any hardship the Celsius Administrator might face would not outweigh the prejudice to the Debtors of being forced to litigate over 500 preference claims in the S.D.N.Y. Bankruptcy Court while simultaneously trying to obtain confirmation of their Plan, make distributions to creditors, and reconcile quintillions of dollars in alleged claims.

58.     The Celsius Administrator is but one of many purported unsecured creditors who would no doubt like to disregard the automatic stay and commence litigation against the Debtors in other forums to gain some perceived advantage over the Debtors or other creditors. Thus, a ruling in the Celsius Administrator's favor could "encourage a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate," *In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009), and would create an "unnecessary drain" on "the Debtors'—and the Court's—resources," *Celsius*, 642 B.R. at 504 (denying a lift stay motion because, among other reasons, granting it would "invite other lift stay motions").  Any balance of hardships strongly favors the Debtors and keeping the statutory stay in place.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court deny the Motion.

Dated:  July 8, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware  19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY  10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*