## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  September 12, 2024 at 1:00 p.m. ET** |
| | **Obj. Deadline:  August 12, 2024 at 4:00 p.m. ET** |

## DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY
## CELSIUS NETWORK LLC AND ITS AFFILIATED DEBTORS

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this claims objection (the "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules'), to certain proofs of claim filed by Celsius Network LLC and its affiliated debtors ("Celsius") against each of the Debtors, dated June 29, 2023 (collectively, the "Celsius Proofs of Claim").[2]  In support of the Objection, the Debtors respectfully state as follows:

### Preliminary Statement

1.     Celsius has filed duplicative proofs of claim against each of the Debtors, asserting the same unsubstantiated, threadbare claims arising out of purported statements allegedly

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd. is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]     Schedule 1 attached to the proposed order attached hereto as Exhibit A provides a list of the Celsius Proofs of Claim.

made by unidentified prepetition "officers, directors, employees or agents" of the Debtors about Celsius and its financial condition sourced from unidentified "periodicals."  Celsius further asserts that these alleged statements inflicted an unidentified harm on its business to the tune of no less than *$2 billion* (the "Disparagement Claims").  But Celsius provides no support, statements or evidence for its assertions, nor does it even attempt to allege facts sufficient to support a theory of legal liability.  That is because Celsius has no factual or legal support for the Disparagement Claims, which are entirely without basis.  The Disparagement Claims as asserted are vague and speculative, and therefore not entitled to *prima facie* validity as a matter of law.  Lacking any factual or legal basis, the Disparagement Claims should be disallowed and expunged.

2.     In addition, while the Celsius Proofs of Claim do not actually articulate any harm caused by these purported statements, any damage to "Celsius's brand, reputation, and business prospects" and "Celsius's need to file for chapter 11" are due to Celsius' own fraudulent conduct, which the Celsius Litigation Administrator itself has publicly and unequivocally acknowledged.[3]  As a result, even if Celsius had valid Disparagement Claims (which it does not), they would be barred by the unclean hands doctrine among other defenses.

3.     Moreover, although the Celsius Proofs of Claim did not assert any claims other than the Disparagement Claims, on June 5, 2024, Celsius filed the Celsius Lift Stay Motion

---

[3]   *See* Exhibit B (Draft Celsius Complaint) to Celsius' *Motion for Relief from the Automatic Stay* [D.I. 16815] (the "Celsius Lift Stay Motion") filed in the Debtors' chapter 11 cases, ¶ 1 ("Prior to the Company filing for chapter 11 protection on July 13, 2022 (the 'Petition Date'), Celsius customers were led to believe that Celsius was a legitimate cryptocurrency enterprise.  Despite the Company's public messaging, on the inside Celsius was a fraudulent mess, the extent of which has come to light through investigative fallout in the Celsius bankruptcy itself.  Far from being safer than a bank, Celsius repeatedly failed to responsibly hold or invest the assets transferred to its platform by its account holders.  Losing billions of dollars because of risky investments and grave mismanagement, the Company managed to keep up its appearances until the cryptocurrency crashes of 2022, insisting on its legitimacy as a business right up to the very last.  As a result of Celsius's staggering and widespread fraud, many of the Company's customers lost their life savings and faced financial ruin.  Assets, related to customers who trusted the lies propagated by Celsius's management and did not withdraw those assets from the Company's platform before the Company implemented a freeze, were trapped on the platform.")

in the Debtors' chapter 11 cases seeking permission to pursue certain preference actions against the Debtors in Celsius' bankruptcy proceedings (the "Purported Preference Claims").  These Purported Preference Claims were not preserved in the Celsius Proofs of Claim and are therefore barred pursuant to this Court's bar date order for non-customer claims.[4]  The Debtors have opposed the relief sought in the Celsius Lift Stay Motion on numerous independent grounds, including that they were not preserved through the Celsius Proofs of Claim.[5]

### Background

4.     On November 11 and November 14, 2022, the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in- possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

5.     Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental*

---

[4]    *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Claims Bar Date Order").

[5]    In the event that the Court determines that Celsius can nonetheless assert preference claims, the Debtors reserve the right to object to, contest and litigate the merits of those claims by amending this Objection or otherwise.

*Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

6.    On May 3, 2023, the Debtors filed the *Motion of Debtors for Entry of an Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1416].  On May 19, 2023, the Court entered the Non-Customer Claims Bar Date Order, setting a non-customer claims bar date of June 30, 2023 (the "Non-Customer Claims Bar Date") and establishing certain procedures.

7.    On June 29, 2023, Celsius filed the Celsius Proofs of Claim asserting identical, contingent, unliquidated, general unsecured claims in an asserted amount of "no less than $2 billion" against each of the Debtors.  The Celsius Proofs of Claim indicate that the sole basis for the claims were reports in unidentified "periodicals" of "unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius' balance sheet and financial condition" that allegedly caused some unarticulated harm to "Celsius's brand, reputation, and business prospects" and contributed to "Celsius's need to file for chapter 11."  The Celsius Proofs of Claim reference (without more) a litany of potential causes of action against the Debtors that "may include, but are not limited to, libel, slander, tortious interference with business relations, tortious interference with contract, tortious interference with business prospects, business disparagement, restraint of trade, unfair competition, fraud, negligence, misrepresentation, defamation, and conspiracy."  No such claims are actually articulated.  The Celsius Proofs of Claim further state that Celsius is investigating "causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions," but do not provide any articulation of any factual or legal predicate for such claims.

8.      On June 5, 2024, Celsius filed the Celsius Lift Stay Motion seeking to commence an adversary proceeding to pursue (i) certain claims under section 547 of the Bankruptcy Code against each of the Debtors as subsequent transferees for withdrawals made by Celsius' customers from the Celsius platform and deposited onto the Debtors' exchange platform, and  (ii) claims under section 547 of the Bankruptcy Code against Debtor Quoine Pte Ltd. for withdrawals from the Celsius platform (together, the "Purported Preference Claims," and each underlying transfer, a "Celsius Customer Transfer") in Celsius' own chapter 11 cases in the U.S. Bankruptcy Court for the Southern District of New York.[6]

9.      With the Celsius Lift Stay Motion, Celsius attached a draft complaint to be filed in the Celsius Chapter 11 Cases (the "Draft Celsius Complaint"), which, among other things, confirmed that "Celsius's model was [] always a complete fraud," and that "[t]he public was misled consistently as to the risk of Celsius's investments, regulatory compliance, the strength of its financials, and non-existent insurance, among other material facts.  Each lie was intended to convince more retail investors to transfer their assets to Celsius.  Celsius was never a legitimate enterprise, with such misrepresentations and accompanying mismanagement extending through its entire downfall."  Draft Celsius Complaint ¶ 27.

10.      In the more than one year that has passed since filing the Celsius Proofs of Claim, the Debtors have not received any outreach from Celsius with respect to the Celsius Proofs of Claim, including information requests (formal or informal) or any further articulation of the Celsius claims or their factual or legal bases.  Moreover, the schedules filed in the Celsius Chapter 11 Cases in October 2022 confirm they had the information necessary to file its preference action against Debtor Quoine Pte Ltd. ("Quoine") prior to the commencement of these Chapter 11 Cases,

---

[6]      *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (the "Celsius Chapter 11 Cases").

and certainly in time to file a proper proof of claim against Quoine before the Non-Customer Claims Bar Date.  (*See* D.I. 973 at 10982-83, *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. Oct. 5, 2022) (listing alleged transfers by Quoine).)

## Jurisdiction

11.    The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought are section 502 of the Bankruptcy Code, and rules 3001 and 3007 of the Bankruptcy Rules.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

12.    By this Objection, the Debtors seek entry of the proposed order (the "Order"), substantially in the form attached hereto as Exhibit A, disallowing and expunging the Celsius Proofs of Claim listed on Schedule 1 thereto, in their entirety.

## Objection

### I.    The Disparagement Claims Should be Disallowed Because They Are Facially Invalid.

13.    Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless

a party in interest . . . objects." 11 U.S.C. § 502(a).  The burden of proof for a claim asserted in a

bankruptcy case under section 502(a) of the Bankruptcy Code is a shifting burden that rests on

different parties at different times.  *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

First, the claimant must allege facts sufficient to support its claim. *Id.* If the allegations in the filed

claim meet this standard, "it is 'prima facie' valid."  *Id.*  But only a claim that "alleges facts

sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation" and

is entitled to *prima facie* validity.  *Id.*

14.     Therefore, while a properly filed proof of claim is *prima facie* evidence of

the claim's validity and amount, as a threshold matter, a claimant's failure to allege facts and to

provide adequate support for a claim deprives the claim of *prima facie* validity.  *See, e.g., In re

Jorczak*, 314 B.R. 474, 481–82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements

and burden of proof with respect to the allowance of claims).  For that reason, "claims can be

disallowed for failure to support the claim with sufficient evidence."  *In re Mallinckrodt Plc*, Case

No. 20-12522-JTD, 2022 WL 3545583, at *4 (D. Del. Aug. 18, 2022); *see also In re O'Brien*, 440

B.R. 654, 667-68 (Bankr. E.D. Pa. 2010) (finding that lack of *prima facie* evidence pursuant to

Bankruptcy Rule 3001(f) and failure of claimant to provide additional evidence warranted

disallowance of claim).

15.     Importantly, "[t]he debtor . . . 'has no evidentiary burden to overcome' in

objecting to a claim that is not *prima facie* valid."  *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D.

Tex. 2008) (citing *eCast Settlement Corp.* v. *Teresa Tran* (*In re Tran*), 369 B.R. 312, 318 (Bankr.

S.D. Tex. 2007)) (holding that debtors' objections alone are sufficient to shift the burden back to

claimant when proof of claim had insufficient documentation).  And section 502(b)(1) "is most

naturally understood to provide that, with limited exceptions, any defense to a claim that is

available outside of the bankruptcy context is also available in bankruptcy." *Travelers Cas. & Sur. Co. of Am.* v. *Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

16.     Celsius has failed to allege ***any*** facts or provide ***any*** support for the Disparagement Claims.  Those claims are therefore not entitled to *prima facie* validity.  The Celsius Proofs of Claim are hopelessly bereft of detail and substantiation and fail to articulate any theory of liability against the Debtors.  Celsius' barebones description of the Disparagement Claims includes nothing more than references to vague statements made by unidentified people that may or may not have actually caused harm to Celsius, and conclusory and vague assertions about the *potential* claims that Celsius may have, but Celsius has done nothing to identify the factual and legal bases for any such claims.  Celsius merely speculates that purportedly "disparaging" statements were made "allegedly"—as opposed to actually—by one or more of "FTX's officers, directors, employees, or agents."

17.     Celsius has not identified a single statement made by a single FTX employee or representative that could give rise to an actionable claim.  Celsius has failed to assert in the Celsius Proofs of Claim, nor does it appear to have any evidence of, (i) what statements were actually made, (ii) by whom, (iii) whether such persons were affiliated with the Debtors, or (iv) what harm such statements caused.  Celsius has not even tried to identify a single "periodical" where such statements appeared—which would be hearsay at best in any event.  The idea that these bald and unsubstantiated assertions could give rise to any claim, never mind a $2 billion claim, is preposterous.

18.     Simply put, any damage to the Celsius brand, reputation and business prospects were suffered at its own hands through self-admitted fraudulent conduct that landed the company in bankruptcy and its former Chief Executive Officer arrested and charged with

committing securities, commodities, and wire fraud.  In short, the Celsius Proofs of Claim fail to

state anything that could be construed as a claim, are not *prima face* valid, and must be disallowed

and expunged.

**II.      Celsius' Admitted Conduct Precludes Any Claim.**

19.      Assuming, *arguendo*, that the Disparagement Claims are *prima facie* valid

(which they are not), they should still disallowed as a threshold matter by the unclean hands, or *in*

*pari delicto*, doctrine.  The doctrine provides that "a plaintiff may not assert a claim against a

defendant if the plaintiff bears fault for the claim."  *Off. Comm. of Unsecured Creditors* v. *R.F.*

*Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001).  "As the bankruptcy trustee steps in the shoes of

the debtor, it is subject to the same defenses that could have been asserted against the debtor,

including in pari delicto." *In re Liberty State Benefits of Delaware, Inc.*, 541 B.R. 219, 235 (Bankr.

D. Del. 2015).  Here, Celsius has not articulated any harm caused by the alleged statements, but

only vaguely points to "harm" to "Celsius's brand, reputation, and business prospects" and

"Celsius's need to file for chapter 11."  But the Celsius Litigation Administrator has confirmed

that such "harm" was in fact a result of Celsius' own widespread fraud.  Draft Celsius Complaint

¶ 27.

20.      In fact, in hundreds of avoidance action complaints filed in the Celsius

Chapter 11 Cases just last week, the Celsius Administrator states that:

> Before it filed for chapter 11 protection on July 13, 2022, the
> Debtors worked hard to make its customers believe that it was a
> legitimate enterprise. It was not. Despite the Company's public
> messaging, on the inside, Celsius was a fraudulent mess, the extent
> of which has come to light through investigative fallout in the
> Debtors' bankruptcy. Far from being "safer than a bank," Celsius
> repeatedly failed to responsibly hold or invest the assets that its
> account holders transferred to its platform. Losing billions of dollars
> because of risky investments and grave mismanagement, Celsius
> managed to keep up appearances until the cryptocurrency crashes of
> 2022, insisting on its legitimacy as a business to the very end. As a

> result of Celsius's staggering and widespread fraud, many of the
> Company's customers lost their life savings and faced financial ruin.
> Customers who trusted the lies propagated by management and did
> not withdraw the assets they had transferred to Celsius found those
> assets trapped on Celsius's platform, and themselves embroiled in
> an 18-month bankruptcy.

*See*, *e.g.*, D.I. 1 at ¶ 1, *Meghji* v. *Wolfgang*, Adv. Proc. No. 24-02091 (Bankr. S.D.N.Y). Celsius

acknowledges that its prior management is responsible for its downfall. Celsius' attempt to force

the Debtors' creditors bear the cost of Celsius' mismanagement and fraud is insulting after those

creditors have suffered from the fraud committed by the Debtors' own prepetition controlling

insiders. Because Celsius bears direct fault for any harm and for Celsius' own downfall, any of

its claims against the Debtors for such harm should be disallowed and expunged in their entirety.

*See In re Benninger*, 357 B.R. 337, 352 (Bankr. W.D. Pa. 2006) (disallowing claims under the

unclean hands doctrine).

### III.    The Purported Preference Claims Were Not Properly Identified in the Celsius Proofs of Claim and Therefore Are Barred.

21.    The Purported Preference Claims were not adequately identified in the

Celsius Proofs of Claim and are therefore barred by the Non-Customer Claims Bar Date Order.

The purpose of the claim filing requirement of the Bankruptcy Code is "to ensure that all those

involved in the proceeding will be made aware of the claims against the debtor's estate and will

have the opportunity to contest those claims." *In re Chateaugay Corp.*, 94 F.3d 772, 777 (2d

Cir.1996) "While a Proof of Claim does not necessarily require absolute precision, it still must

provide sufficient notice to the parties." *In re Calpine Corp.*, 2007 WL 4326738, at *4 (S.D.N.Y.

Nov. 21, 2007).

22.    Broad reservation of rights language in a proof of claim is insufficient to

preserve a claim based on new facts that were not asserted in the original proof of claim. *In re*

*LATAM Airlines Grp. S.A.*, 2023 WL 3574203, at *10 (Bankr. S.D.N.Y. May 19, 2023). Courts

are clear, "a creditor may not use the claims amendment process to circumvent the claims bar date." *In re SemCrude, L.P.*, 443 B.R. 472, 477 (Bankr. D. Del. 2011). "The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court" and "[a]n amendment to claim filed post bar date must be scrutinized to assure that it is not an attempt to file a new claim." *In re Exide Techs.*, 601 B.R. 271, 291 (Bankr. D. Del. 2019).

   23. Here, the only reference to a potential preference claim in the Celsius Proofs of Claim is in a boiler plate reservation of rights that included language that "Celsius is also investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions." This language is so broad that it could not have, and did not, put the Debtors on sufficient notice of the specific type of claims Celsius is now seeking to pursue via the Celsius Lift Stay Motion and the Draft Celsius Complaint. In addition, the Celsius Proofs of Claim make no mention of the transfers underlying the Purported Preference Claims or any other facts that could form the basis for any preference claim despite having the facts to do so. (*See* D.I. 973 at 10982-83, *In re Celsius Network LLC*, No. 22-10964 (Bankr. S.D.N.Y. Oct. 5, 2022) (listing alleged transfers by Quoine at issue).) As such, the Celsius Proofs of Claim are insufficient to preserve the Purported Preference Claims, and those claims are barred by the Non-Customer Claims Bar Date Order.

   24. Any effort by Celsius to seek leave to amend the Celsius Proofs of Claim to properly assert the Purported Preference Claims would be futile, because those claims do not relate back to the "same conduct, transaction, or occurrence" asserted in the original proof of claim as required under Fed. R. Civ. P. 15(c)(1)(B). *See also In re Exide Techs.*, 601 B.R. at 294-95 (disallowing "amendment" to proof of claim filed after the bar date that do not relate back to the original proof of claim).

25.    The Purported Preference Claims are precisely the type of claims arising out of "new, augmented scope of facts" that could not relate back to the original proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 2015 WL 6734478, at *7; *see also In re Exide Techs.*, 601 B.R. at 294(finding that the original proof of claim does not forewarn future claims that do not "arise out of the same conduct, transaction, or occurrence as listed in the Original Proof of Claim, which was limited and specific").  In *In re Exide Techs*, the court found that "new claims" filed after the bar date that were based on "violations of different regulations or based on an expanded timeline" and did not "arise out of the same conduct, transaction, or occurrence as listed in the [original proof of claim]" do not relate back to the original proof of claim.  601 B.R. at 294. Similarly, here, the Purported Preference Claims arise out of entirely different facts and transactions as those alleged in the Celsius Proofs of Claim, which relate solely to the "disparaging" statements allegedly made by unspecified FTX personnel.  As such, any attempt by Celsius to seek leave to amend the Celsius Proofs of Claim to include the Purported Preference Claims would be futile and should be rejected.

## **Reservation of Rights**

26.    This Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein is intended or should be construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of

the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

### Notice

27.    Notice of this Objection has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) Celsius; and (i) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Bankruptcy Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

28.    For the foregoing reasons, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit A, disallowing and expunging the Celsius Proofs of Claim in their entirety.

Dated:  July 8, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:   landis@lrclaw.com
          mcguire@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
Benjamin S. Beller (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:   dietdericha@sullcrom.com
          bromleyj@sullcrom.com
          gluecksteinb@sullcrom.com
          kranzleya@sullcrom.com
          bellerb@sullcrom.com

*Counsel for the Debtors and Debtors-in Possession*