# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: September 12, 2024 at 1:00 p.m. ET<br>Obj. Deadline: August 12, 2024 at 4:00 p.m. ET |

### DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY
### CAL BEARS SPORTS PROPERTIES, LLC

> **THIS OBJECTION OBJECTS TO CERTAIN CLAIMS. THE CLAIMANT RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE.**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this objection (the "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to duplicative proofs of claim numbers 4651 and 4897 (collectively, the "Claims," and each a "Claim") filed by Cal Bears Sports Properties, LLC ("Cal Bears"). In connection with this Objection, the Debtors submit the concurrently filed *Declaration of Steven P. Coverick* (the "Coverick Decl."). The Debtors seek to disallow and expunge in its entirety, as duplicative, proof of claim number 4897, and to disallow and expunge in its entirety, or in the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

alternative to reduce the allowed amount of, proof of claim number 4651. In support of the Objection, the Debtors respectfully state as follows:

### Background

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3. On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order"). The Non-Customer Bar Date Order established,

among other things, the deadline of June 30, 2023 to file non-Customer Claims[2] against the Debtors.

4. To date, approximately 3,403 non-customer proofs of claim have been filed against the Debtors, asserting more than $483 billion.

5. On June 30, 2023, Cal Bears filed the Claims against Debtor Blockfolio, Inc. ("Blockfolio"), each for a total of $12,678,167.83.

**Facts Specific to Relief Requested**

6. Cal Bears is the multi-media rights holder for Cal Athletics, the athletic team representing the University of California, Berkeley. Coverick Decl. Ex. 2. Cal Bears "manages all aspects of the rights relationship" on behalf of Cal Athletics, "including venue signage, event sponsorships and promotion and digital engagement." Coverick Decl. Ex. 2.

7. On August 5, 2021, Blockfolio and Cal Bears executed a sponsorship agreement (the "Agreement") pursuant to which Blockfolio agreed to pay Cal Bears increasing annual sponsorship fees (the "Sponsorship Fees") of $1,500,000.00 to $1,640,527.91 from 2021 to 2031, for a total of $15,693,168. Coverick Decl. Ex. 1 § 5. In return, Cal Bears agreed, among other things, to display FTX's name and logo on the field in California Memorial Stadium at the University of California, Berkeley, from 2021 to 2031. Coverick Decl. Ex. 1 § 1.

8. The Agreement includes an early termination clause (the "Early Termination Clause") that provides either party the right to terminate the Agreement at the

---

[2] "Customer Claims" means a claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, or federal or state law, rule or regulation, common law or otherwise) held by any person (as defined in section 101(41) of the Bankruptcy Code) or entity (as defined in section 101(15) of the Bankruptcy Code) against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX exchange as of the Petition Date or (b) any other investment or trading activities on any FTX exchange.

conclusion of the fifth contract year, June 30, 2026. Coverick Decl. Ex. 1 § 2. Under the Early Termination Clause, if the Agreement is "terminated for any reason," then Blockfolio "shall be liable for (i) payment of only the pro-rated Sponsorship Fee for Naming Rights and Sponsor Benefits received through the effective termination date . . . and (ii) any amounts expended by [Cal Bears] in preparation for performing, or in reliance on its anticipated or continued performing, of this Agreement." Coverick Decl. Ex. 1 § 13(B).

9. Pursuant to Section 6 of the Agreement, Blockfolio's payment of the Sponsorship Fees to Cal Bears was to be made via cryptocurrency transfers into a Cal Bears corporate account, the details of which were not specified in the Agreement. Coverick Decl. Ex. 1 § 6. Blockfolio made the first two annual Sponsorship Fees payment of $1,500,000.00 and $1,515,000.00 on September 21, 2021 and August 4, 2022. While the 2021 annual payment was made in cryptocurrency, at the request of Cal Bears, the 2022 annual payment was made in fiat cash notwithstanding Section 6 of the Agreement. Coverick Decl. Ex. 3.

10. Shortly after commencement of the Chapter 11 Cases, on November 18, 2022, the Debtors became aware that Cal Bears began to remove FTX branding from its field in California Memorial Stadium. Coverick Decl. Ex. 4. As of the date of this Objection, to the Debtors' knowledge, Cal Bears has removed all FTX branding from its field and website. Coverick Decl. Exs. 5, 6.

11. On February 16, 2023, the Debtors filed the *Debtors' Second Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Effective as of the Rejection Date* [D.I. 739] (the "Rejection Motion"). The Rejection Motion sought, among other things, rejection of the Agreement effective as of February 16, 2023 (the

"Rejection Date"). On March 6, 2023, this Court approved the Rejection Motion and authorized the rejection of the Agreement effective as of the Rejection Date [D.I. 806].

12. On June 30, 2023, Cal Bears filed the Claims against Blockfolio asserting the full remaining Sponsorship Fees due under the Agreement.

## Jurisdiction and Venue

13. The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief sought is section 502 of the Bankruptcy Code and Bankruptcy Rule 3007. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Basis for Relief

14. Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim. 11 U.S.C. § 502(b). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b).

15. While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid."). The burden of persuasion with respect to the claim is always on the claimant, *see id.* at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity. *See, e.g.*, *In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).

16. Cal Bears' Claims seek a total of $25,356,335.66 in the two Claims against the Debtors. For the following reasons and others that will be demonstrated following discovery and a hearing, the Court should disallow and expunge in its entirety, as duplicative, Claim 4897 and disallow and expunge in its entirety, or in the alternative to reduce the allowed amount of, Claim 4651.

**I.      The Claims are Duplicative and Would Result in a Double Recovery.**

17. Cal Bears filed two identical and duplicative claims each in the amount of $12,678,167.83 against the same Debtor for the same amount seeking to recover alleged damages based on the same set of facts.

18. Bankruptcy Rule 3007(d) provides that a debtor may object to a claim on an omnibus basis where the claim "duplicate[s] other claims." Fed. R. Bankr. P. 3007(d)(1); *see In re Hub Holding Corp*, 2009 WL 8519808, at *2 (Bankr. D. Del. May 27, 2009) (expunging and disallowing duplicative claims). A claimant is not entitled to multiple recoveries for a single liability against a debtor, since a claimant is entitled only to a single satisfaction, if at all, of any

particular claim of liability against a debtor. *See, e.g.*, *In re Handy Andy Home Improvement Ctrs. Inc.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("[I]t is axiomatic that one cannot recover for the same debt twice."); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed."); *In re Vanguard Nat. Res., LLC*, 2021 WL 220697, at *28 (Bankr. S.D. Tex. Jan. 21, 2021) (ordering "no further payment" on the claim, since allowing the claim would constitute an impermissible double-recovery on a satisfied claim); *In re Cont'l Airlines Corp.*, 57 B.R. 845, 853 (Bankr. S.D. Tex. Oct. 1, 1985) ("[T]he Bankruptcy Code does not permit the presentation of two claims and the recovery of double damages for what is essentially one legally compensable claim.").

19.    As set forth in the Coverick Declaration, based upon a review of the Claims, the Debtors' books and records, and the claims registry, the Debtors have determined that the two Claims are entirely duplicative. Coverick Decl. ¶ 7. The Debtors submit that Cal Bears should not be allowed to maintain its duplicative Claims on account of the same liability. If so, the Debtors would be subject to multiple recoveries by Cal Bears for a single claim or liability. Accordingly, to avoid the possibility of multiple recoveries and to maintain an accurate claims register, the Debtors submit that Claim 4897 should be disallowed and expunged in its entirety from the claims registry.

**II.     Under California Law, the Debtors Are Not Liable to Cal Bears for Mitigated or Avoidable Damages.**

20.    The Agreement stipulates it is to be governed by, and construed in accordance with, the laws of California. Coverick Decl. Ex. 1 § 20. Under Delaware choice of law provisions, California law governs. *Coface Collections N. Am. Inc.* v. *Newton*, 430 F. App'x

162, 166 (3d Cir. 2011) ("[I]it is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract.").

21. Under California law, the well-established doctrine of mitigation of damages "holds that a plaintiff who suffers damage as a result of . . . a breach of contract . . . has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." *Valle de Oro Bank* v. *Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994); *Kleinclaus* v. *Marin Realty Co.*, 94 Cal. App. 2d 733, 739 (1949) ("[T]he duty to mitigate damages exists alike in cases of breach of contract and tort, wilful [*sic*] as well as negligent.").

22. Postpetition, Cal Bears removed FTX branding from its field in Memorial Stadium and announced it suspended the naming rights deal with FTX. Coverick Decl. Ex. 4. It has been almost two years since the commencement of the Chapter 11 Cases and Cal Bears' removal of the FTX branding. Cal Bears could have, and should have, sought alternative sponsors or replacement deals. As a successful, widely followed college athletics program with a famous stadium belonging to a top-tier university, Cal Bears is capable of attracting sponsorship deals. Indeed, the Cal Bears website currently displays the logos of eight companies ranging from Pepsi Co. to Bank of Montreal as sponsors. Coverick Decl. Ex. 5.

23. Through "ordinary care and reasonable exertion," Cal Bears should be able to reach a sufficiently similar naming rights deal. *See Agam* v. *Gavra*, 236 Cal. App. 4th 91, 111 (2015) ("[A] plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion."). Cal Bears has provided *no* evidence that it has undertaken any mitigation efforts since the Rejection Date, nor has it provided any explanation of the irreplaceability of the Agreement.

24. Absent such evidence, Cal Bears, thus, may not recover for damages that could have been avoided through reasonable efforts. *See State Dept. of Health Servs.* v. *Superior Ct.*, 79 P.3d 556, 568 (Cal. 2003) ("[A] party must make reasonable efforts to mitigate damages, and recovery will not be allowed for damages that a party should have foreseen and could have avoided by reasonable effort without undue risks, expense, or humiliation."). Accordingly, Claim 4651 should be disallowed and expunged in its entirely, or in the alternative, to the extent that any portion of the Claim has, could have been or could be mitigated, the allowed amount of Claim 4651 should be reduced accordingly.

**III.     Under California Law, Breach of Contract Damages Must Be Foreseeable.**

25. Under California Law, damages must be "foreseeable" to be recoverable for breach of contract. *Brandon & Tibbs* v. *George Kevorkian Acct. Corp.*, 226 Cal. App. 3d 442, 455 (1990). In *Martin* v. *U-Haul Co. of Fresno*, the Court held that "the specific rule that a termination clause limits recoverable damages to the notice period is consistent with the general requirement that contract damages are limited to those foreseeable by the parties at the time of contracting." 204 Cal. App. 3d 396, 409 (1988). In *Martin*, U-Haul terminated a dealership agreement without giving Martin an advanced 30-day notice in breach of their contract. *Id.* at 403. However, the contract between the parties specifically allowed U-Haul to terminate provided it gave a 30-day notice. *Id.* at 406. The Court reasoned that, even if U-Haul had followed the contract, it still could have terminated Martin's dealership after providing a 30-day notice. *Id.* at 410. As such, the 30-day period was "all that Martin reasonably could be assured of remaining in business." *Id.* Damages were, therefore, limited to what could potentially accrue during the 30-day period. *Id.*

26. First, Cal Bears unilaterally, in violation of the automatic stay and in breach of the Agreement, removed FTX branding from its field shortly after the commencement of the

Chapter 11 Cases. By Cal Bears' own actions, it could not have anticipated to recover damages from FTX after its own non-performance. Such damages are not foreseeable.

27. Moreover, Cal Bears' damages are limited by the Early Termination Clause of the Agreement. Under the Early Termination Clause, Blockfolio could have terminated the Agreement on June 30, 2026. Similar to *Martin*, with the possibility of early termination, Cal Bears could have been reasonably assured only of payments up until June 2026. As such, Blockfolio is, at most, liable for the unpaid portion of the first five years of the Agreement plus the amount of applicable expenses incurred by Cal Bears. Cal Bears could have reasonably foreseen or expected damages only up to the termination period. Upon such termination, Blockfolio would not be liable for Sponsorship Fees due after June 30, 2026.

28. Accordingly, to the extent that any portion of Claim 4651 includes unforeseeable Sponsorship Fees arising from after Cal Bears' own non-performance or June 30, 2026, the allowed amount of the Claim should be reduced accordingly.

**Reservation of Rights**

29. This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of

the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## Notice

30. Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure and (i) counsel to Cal Bears.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

31. For the foregoing reasons, the Court should enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, disallowing and expunging in their entirety Cal Bears' Claims, or in the alternative, to reduce the allowed amount of proof of claim number 4651.

| | |
|---|---|
| Dated: July 10, 2024<br>Wilmington, Delaware | LANDIS RATH & COBB LLP<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>          brown@lrclaw.com<br>          pierce@lrclaw.com<br><br>-and-<br><br>SULLIVAN & CROMWELL LLP<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted pro hac vice)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>          bromleyj@sullcrom.com<br>          gluecksteinb@sullcrom.com<br>          dunnec@sullcrom.com<br>          crokej@sullcrom.com<br>          kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |