IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |

### DECLARATION OF BRUNO REQUIAO DA CUNHA IN SUPPORT OF DEBTORS' OBJECTION TO PROOF OF CLAIM FILED BY NORTH FIELD TECHNOLOGY LTD.

I, Bruno Requiao da Cunha, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

*Qualifications*

1.  I am a Global Investigator at TRM Labs, which was founded in 2018 and is based in San Francisco, California. Among other things, TRM Labs conducts blockchain investigations in order to detect and monitor crypto and digital asset fraud and financial crimes, including forensic investigations to trace the source and destination of cryptocurrency transactions. TRM Labs also provides risk management services related to digital assets. Numerous government agencies, financial institutions and crypto businesses rely on TRM Labs to help combat fraud, money laundering and financial crime.

2.  As a Global Investigator since 2022, I investigate complex cases involving phishing, blockchain exploits, hacks, terrorism finance, account takeovers (ATOs), money laundering, sim swaps, ransomware and other activity associated with illicit use of blockchain

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

technology, using a combination of advanced investigative tactics such as demixing and complex tracing. I was formerly an Agent at the Brazilian Federal Police for 12 years (from 2009 to 2022) where I headed the operations and analysis unit of the cybercrime office in Rio Grande do Sul, Brazil, and where I conducted sensitive investigations on cyber and crypto related crimes. I am also a visiting professor at the Brazilian National Police Academy teaching cybercrime investigations and criminophysics. I was a postdoctoral fellow at the Mathematics Applications Consortium for Science and Industry of the University of Limerick, Ireland, from 2018 to 2019 and I hold a Ph.D. in Physics from the Federal University of Rio Grande do Sul, Brazil. I also currently hold the following certifications:

    a. Certified Solidity Developer (Blockchain Council - CSD)

    b. Achievement of Certification Excellence (TRM-ACE)

    c. Crypto Seizure Specialist (TRM-CSS)

    d. Digital Forensics and Cryptocurrency (TRM-DFC)

    e. Advanced Crypto Investigator (TRM-ACI)

    f. Certified Investigator (TRM-CI)

    g. Crypto Compliance Specialist (TRM-CCS)

    h. Crypto Fundamentals Certifications (TRM-CFC)

*Background*

3. I submit this declaration in support of *Debtors' Objection to Proof of Claim Filed By North Field Technology, Ltd.* (the "Objection"), filed concurrently herewith. In connection with this declaration, I have reviewed (1) the *Declaration of Roman Bieda* (the "12/27/22 Bieda Declaration") dated December 27, 2022 and filed in *Leidel* v. *Project Invs., Inc.*, No. 9:16-CV-80060-KAM, 2021 WL 4991249 (S.D. Fla. June 22, 2021), Doc. No. 200-1, and (2) the *Declaration of Roman Bieda* dated December 30, 2022 and submitted with North

Field Claim Nos. 3285, 3496 & 3800 in the above captioned *In re FTX Trading Ltd.* (the "12/30/22 Bieda Declaration," and together with the 12/27/22 Bieda Declaration, the "Bieda Declarations"). Mr. Bieda is the Head of Fraud Investigations at Coinfirm, Ltd.

4.   I understand that, according to plaintiffs' allegations in *Leidel*, defendant Paul Vernon operated a now-defunct cryptocurrency exchange called Cryptsy. On July 29, 2014, Vernon allegedly stole 11,325.0961 BTC from Cryptsy customers. The District Court in *Leidel* entered a Final Default Judgment against Vernon on July 27, 2021 declaring that 11,325.0961 in stolen BTC belongs to a plaintiff class. On May 24, 2021, the *Leidel* court amended the Final Default Judgment to include wallet addresses holding an additional 500.052319 in BTC allegedly stolen from Cryptsy. On September 18, 2020, the District Court approved a motion to assign the default judgment to North Field Technology, Ltd. ("North Field"), granting North Field the right to enforce the default judgment.

*The Bieda Declarations*

5.   I understand that, based on the 12/27/22 Bieda Declaration, North Field contends that 685 BTC stolen from Cryptsy was transferred between February 16, 2021, and March 28, 2022, to Ren Project ("Ren")—through Ren's decentralized application known as "RenBridge"—which is owned and operated by legal entities that are owned by FTX Debtor entities but are not themselves debtor entities. I further understand that North Field contends that some portion of the 685 BTC was transferred in April 2023 to cold storage wallets operated by the FTX Debtors, for safeguarding in advance of possible shutdowns of RenBridge infrastructure and systems. I further understand that, based on the 12/30/22 Bieda Declaration, North Field contends that 34 BTC stolen from Cryptsy was transferred to the FTX exchange as of December 29, 2022. (12/30/22 Bieda Decl. ¶ 10.)

6.      The Bieda Declarations state that, on March 29, 2022, the entire corpus of the 11,325.0961 originally stolen BTC was transferred in increments of 15-18 BTC to over 650 new private wallet addresses. (12/27/22 Bieda Decl. ¶ 11; 12/30/22 Bieda Decl. ¶ 9.) According to the Bieda Declarations, this stolen BTC thereafter was moved to various cryptocurrency exchanges to be liquidated. A chart provided with both Bieda Declarations shows that before any of the allegedly stolen BTC was transferred to RenBridge or FTX, all of the 11,325 stolen BTC was transferred into a cryptocurrency mixing service called ChipMixer. (12/27/22 Bieda Decl. App. C; 12/30/22 Bieda Decl. App. C.) The transfers of such amounts to ChipMixer occurred between March 30, 2022 and April 13, 2022. (*Id.*) Mr. Bieda also identified deposits of a fraction of the 500.052319 allegedly stolen Bitcoin into ChipMixer from February 14, 2021 to March 21, 2022. (12/27/22 Bieda Decl. ¶ 9 and Appendix A)

*The Bieda Declarations Do Not Establish That Stolen BTC Was Transferred to RenBridge or FTX*

7.      I have conducted an independent blockchain review that confirms that the 11,325.0961 in BTC remained in the same wallet addresses between July 29, 2014, when it was allegedly stolen from Cryptsy, and March 29, 2022, when 11,325 BTC was transferred from those wallet addresses in 11 transactions aggregating 666 transfers of approximately 15-18 BTC. My review also confirms that all of the allegedly stolen 11,325 BTC was transferred into ChipMixer.

8.      However, the Bieda Declarations do not establish that any of the BTC they purport to trace was stolen from Cryptsy, or that any of the allegedly stolen BTC was transferred out of ChipMixer to Ren or to FTX.

9. ChipMixer was a darknet cryptocurrency "mixing" service based in Hanoi, Vietnam.[2] ChipMixer allowed customers to deposit bitcoin, which it then mixed with other users' Bitcoin, commingling funds in a way that made it difficult for law enforcement or regulators to trace its users' subsequent transactions.[3] ChipMixer had a three-step process for using the service.[4] First, a customer sent Bitcoin they wanted to mix to ChipMixer and received credits the site calls "chips." These chips corresponded to pre-existing Bitcoin wallets controlled by ChipMixer, and acted like "IOUs" that a user could redeem for clean or "mixed" assets. Second, the customer could perform various optional operations on the chips such as splitting them into smaller sized chips, merging them together, or donating them to the ChipMixer service. Finally, the customer withdrew their chips, resulting in ChipMixer providing the private key to wallets that correspond to the chips. The user could use these private keys to spend the value associated with the wallet. As a result of these features, there was no on-chain link between a user's deposited funds and the funds they received post-mix. These privacy features made "Bitcoin tracing nearly impossible after mixing funds through ChipMixer."[5]

10. Because of these features, ChipMixer was widely used by ransomware syndicates, vendors of illegal drugs, and at least 20 darknet marketplaces that facilitated illegal global commerce on encrypted sections of the internet that were not accessible from standard

---

[2] Press Release, U.S. Department of Justice, Office of Public Affairs, Justice Department Investigation Leads to Takedown of Darknet Cryptocurrency Mixer that Processed Over $3 Billion of Unlawful Transactions (Mar. 15, 2023), https://www.justice.gov/opa/pr/justice-department-investigation-leads-takedown-darknet-cryptocurrency-mixer-processed-over-3.

[3] Complaint, *United States* v. *Quoc Nguyen*, Case No. 2:23-MJ-00528 (E.D. Pa. 2023), https://www.justice.gov/opa/press-release/file/1574581/dl.

[4] *Id.*

[5] *Id.*

internet browsers.[6] On March 15, 2023, the U.S. Department of Justice announced a coordinated international takedown of ChipMixer and charged its founder and operator, Minh Quoc Nguyen, with federal offenses.[7] Law enforcement authorities alleged that ChipMixer had facilitated the laundering of up to $3 billion worth of Bitcoin since its founding in 2017.[8]

11. Mr. Bieda does not explain how he concluded that any of the BTC he purported to trace to Ren or FTX was stolen from Cryptsy. It is therefore impossible to conclude that the wallet addresses discussed in the Bieda Declarations actually were involved in the Cryptsy exploit.

12. In addition, it is not possible to conclude with any confidence that the BTC that Mr. Bieda identifies as having been transferred to RenBridge and FTX are the same BTC that was stolen from Cryptsy, because Mr. Bieda does not explain in any detail the methods he used to trace BTC through ChipMixer. The Bieda Declarations assert that Mr. Bieda's firm, Coinfirm, uses a "first of its kind" algorithm that "can trace crypto assets through the mixing transactions," but they provide no detail as to how this tracing is performed. (12/27/22 Bieda Decl. ¶ 7; 12/30/22 Bieda Decl. ¶ 8.) Mr. Bieda also states that Coinfirm uses a "Pro Rata Distribution by All Outputs" methodology as its primary tracing methodology, but he provides no explanation of how it works. (12/27/22 Bieda Decl. ¶ 5; 12/30/22 Bieda Decl. ¶ 6.)

---

[6] TRM, *Must-Know Crypto Investigations of 2023: Global* (Feb. 21, 2024), https://www.trmlabs.com/post/must-know-crypto-investigations-of-2023-global; TRM, ChipMixer Takedown: On-Chain Analysis Shows Ransomware Syndicates and DNMs Used Mixer to Launder Illicit Proceeds (Mar. 16, 2023), https://www.trmlabs.com/post/chipmixer-takedown-trm-labs-analysis-of-the-crypto-mixing-service-just-shut-down-by-international-law-enforcement.

[7] Press Release, U.S. Department of Justice, Office of Public Affairs, *Justice Department Investigation Leads to Takedown of Darknet Cryptocurrency Mixer that Processed Over $3 Billion of Unlawful Transactions* (Mar. 15, 2023), https://www.justice.gov/opa/pr/justice-department-investigation-leads-takedown-darknet-cryptocurrency-mixer-processed-over-3.

[8] TRM, *Must-Know Crypto Investigations of 2023: Global* (Feb. 21, 2024), https://www.trmlabs.com/post/must-know-crypto-investigations-of-2023-global.

13. Based on the name of the methodology alone, one might assume that the "Pro Rata Distribution by All Outputs" method proportionally attributes input funds across all outputs of a transaction based on their respective amounts. This method would assume that the input funds maintain a consistent proportion as they move through subsequent transactions. Such a method would aim to provide a proportional and systematic approach to tracking funds but may fail to accurately trace input funds when mixed with other funds through complex transaction networks.

14. Mixing services are designed to enhance privacy by aggregating funds from multiple users into a single pool and then redistributing them. This process breaks the direct link between the input funds and the output funds, thus obfuscating the origins of the funds belonging to any particular user. For example, consider a scenario where three users contribute to a mixing pool: User A contributes 100 coins, User B contributes 200 coins, User C contributes 300 coins. The total pool contains 600 coins. During the redistribution process, each user receives a mix of funds belonging to other users. If User A receives 50 coins, User B receives 100 coins, and User C receives 150 coins, each allocation contains approximately 16.67% of coins that originally belonged to User A. As a result, the redistributed coins do not maintain a clear, traceable link to the funds belonging to any particular user.

15. Due to this intentional mixing, a proportional allocation method would inaccurately dilute the percentage of funds belonging to a particular user across multiple transactions and users, significantly complicating or entirely disrupting the traceability of the funds. The complexity increases exponentially with the number of transactions and users involved, making it nearly impossible to accurately track the movement of the funds through the

mixing service. Therefore, such a "Pro Rata Distribution by All Outputs" methodology would be inadequate for tracing funds in scenarios involving mixing services.

16. It is therefore impossible to conclude that Mr. Bieda successfully traced stolen Cryptsy BTC through ChipMixer based on the description he provides in the Bieda Declarations.

17. Mr. Bieda also states that his firm's methodology is "supported by additional four different tracing methodologies," which he also fails to explain. (12/27/22 Bieda Decl. ¶ 5; 12/30/22 Bieda Decl. ¶ 6.) These methodologies are called "First in First Out," "Last in First Out," "Pro Rata Distribution by Blocks," and "Taint Last." *Id*. The first two supporting methodologies appear to adopt accounting conventions that often are used to trace funds through bank accounts. But such accounting conventions would have the same flaws as a proportional attribution method and cannot be used effectively to de-mix crypto transactions, especially where the withdrawals do not correlate to the deposits.

18. Another aspect of Mr. Bieda's analysis suggests that his tracing of allegedly stolen BTC is unsound and arbitrary. The timeframe he chooses for outgoing ChipMixer transactions does not make sense. Almost all of the inbound ChipMixer transactions (11,325 BTC of 11,850 BTC) occurred between March 29, 2022, and April 4, 2022. Users of ChipMixer received chips immediately upon transferring BTC to ChipMixer and have strong incentives to withdraw from ChipMixer as soon as possible in order to prevent loss of the value deposited. But Mr. Bieda claims that outgoing ChipMixer transactions between February 2021 and November 2022 are associated with the stolen Cryptsy BTC. This is an unreasonably wide time frame under the circumstances.

*The 12/27/22 Bieda Declaration Does Not Establish That Ren Retained Any Stolen BTC*

19. Aside from the general problems with Mr. Bieda's attempt to trace funds through ChipMixer, several aspects of Mr. Bieda's analysis suggest that his tracing of 685 allegedly stolen BTC to Ren is unreliable.

20. Mr. Bieda identifies a February 16, 2021 transfer of 1,080 BTC to the RenBridge wallet address 19iqYbeATe4RxghQZJnYVFU4mjUUu76EA6 as involving stolen Cryptsy BTC. But this wallet is a RenBridge administrative Multi-Party Computation ("MPC") address to which users of the RenBridge service cannot make direct transfers. The transfer of 1,080 BTC was likely an internal consolidation of coins by RenBridge rather than a deposit of stolen Cryptsy BTC by Paul Vernon. Moreover, because of the volume of transactions at RenBridge, the likelihood of any allegedly stolen BTC being held at the administrative MPC address for more than a few minutes or hours is very low.

21. In addition, Mr. Bieda identifies two transfers of 8.191 BTC to RenBridge on February 16, 2021 as stolen Cryptsy BTC. But there were three additional transfers in the same amount within the same half hour that Mr. Bieda did not identify as stolen Cryptsy BTC. Mr. Bieda provides no explanation for why he treated these otherwise identical transactions differently.

22. Even if Paul Vernon transferred any stolen Cryptsy BTC to RenBridge, it is unlikely that any of that BTC remained with RenBridge as of April 2023 when it was transferred to cold storage. RenBridge enabled users to convert digital assets to the format needed by a destination blockchain to achieve inter-operability among different blockchains.[9] For example, a user could transfer BTC to RenBridge, which would mint a "renBTC" token on

---

[9] About, RenBridge, https://bridge.renproject.io/about.

the Ethereum blockchain that could be converted back into BTC.[10] RenBridge typically would mint renBTC within 60 minutes of receiving BTC from a user.[11]

23. Therefore, even if RenBridge received stolen Cryptsy BTC, it would have issued renBTC almost immediately after receipt. Mr. Bieda's analysis makes no attempt to trace any renBTC that was issued after the purportedly stolen BTC was transferred to RenBridge. Moreover, if Paul Vernon was attempting to obscure his transfers of BTC, it is likely that he quickly would have converted any renBTC to BTC and continued with additional obfuscating transfers.

24. BTC that was originally transferred to RenBridge is almost certainly not the same BTC that was transferred to cold storage in April 2023. RenBridge was based on the RenVM protocol. The protocol supported three different kinds of cross-chain swaps, one of which involved sending BTC to Ethereum. This kind of swap was referred to as a lock-and-mint swap. The BTC deposited by the sender was locked in the protocol and an equivalent value in a wrapped Bitcoin token, renBTC, was minted on the Ethereum blockchain. Locked BTC pooled in the MPC address was used to settle other users' withdrawals from Ren Bridge when they swapped renBTC on Ethereum for BTC on Bitcoin. Swaps in this direction were referred to as a burn-and-release transaction, in which the renBTC was burned and the equivalent amount of BTC released from protocol custody. The BTC received by a user was not the same BTC deposited by the user in a prior transaction.

25. It is therefore unreasonable to conclude that any of the BTC transferred to cold storage in April 2023 represented the 685 BTC that Mr. Bieda purported to trace to Cryptsy.

---

[10] RenBridge FAQ, Ren Project, https://docs.renproject.io/darknodes/faq/renbridge-faq.

[11] RenBridge FAQ, Ren Project, https://docs.renproject.io/darknodes/faq/renbridge-faq.

*The 12/30/22 Bieda Declaration Does Not Establish That Any Stolen BTC Was Transferred to the FTX Exchange*

26. In addition to the issues discussed above regarding Coinfirm's tracing methodology, there are further reasons that the 12/30/22 Bieda Declaration fails to establish that any of the 34 BTC transferred to the FTX exchange constitutes BTC stolen from Cryptsy.

27. Out of the 40 FTX addresses mentioned in the 12/30/22 Bieda Declaration Appendix B, only 5 (12%) have incoming transactions from ChipMixer. Furthermore, only 7 (6%) transactions out of the 112 mentioned in the same Appendix are deposits to FTX coming directly from ChipMixer withdrawals, while 19 (17%) are deposits to FTX sourced from services such as AscendEx, CoinPayments, Remitano, BitoPro, Paxful, ChangeNow, Coins.ph and SimpleSwap and are totally unrelated to ChipMixer. Moreover, 10 (9%) of the mentioned transactions are deposits to FTX that are only indirectly sourced from ChipMixer after a considerable amount of intermediate transactions. The remaining (68%) are deposits from unhosted wallet addresses or unknown services without any exposure to ChipMixer. This immense inconsistency invalidates Mr. Bieda's hypothesis that the 34 BTC deposited to FTX represents BTC sourced from the Cryptsy incident and transferred through ChipMixer.

28. In addition, the 34 BTC that Mr. Bieda purported to trace to FTX was deposited into 39 distinct user accounts with no obvious connection to Paul Vernon, which further suggests that the 34 BTC does not constitute assets stolen from Cryptsy.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed in Porto Alegre, Brazil on July 9, 2024.

*[DocuSigned by: Bruno Requião da Cunha, 9318EACBB557454...]*

BRUNO REQUIAO DA CUNHA

-12-