## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 12, 2024 at 1:00 p.m. ET**<br>**Obj. Deadline: August 12, 2024 at 4:00 p.m. ET** |

### DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY
### TAI MO SHAN LIMITED

> **THIS OBJECTION OBJECTS TO CERTAIN CLAIMS. THE CLAIMANT RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE.**

FTX Trading Ltd. ("FTX"), Alameda Research Ltd. ("Alameda"), and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this objection (the "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to proof of claim number 5475, as amended by number 94967 (collectively, the "Claims" and each a "Claim") filed by Tai Mo Shan Limited ("Tai Mo Shan"). In connection with this Objection, the Debtors submit the concurrently filed *Declaration of Steven P. Coverick* and the exhibit attached thereto (the "Coverick Decl."). The Debtors seek to disallow and expunge Claim 5475 against Alameda in its entirety as duplicative; and to disallow

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

and expunge Claim 94967 in its entirety, or in the alternative reduce the allowed amount of Claim 94967 to such amount that can be supported by adequate documentation.  In support of this Objection, the Debtors respectfully state as follows:

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3.      On May 19, 2023, the Court entered the Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief [D.I. 1519] (the "Non-Customer Bar Date Order").  The Non-Customer Bar Date Order established,

among other things, the deadline of June 30, 2023 to file non-Customer Claims[2] against the Debtors.

4.    To date, approximately 3,403 non-customer proofs of claim have been filed against the Debtors, asserting more than $483 billion.

5.    On June 28, 2023, Tai Mo Shan filed Claim 5475 against Alameda.  Tai Mo Shan amended Claim 5475 in Claim 94967 on May 15, 2024.

### Facts Specific to Relief Requested

6.    Tai Mo Shan alleges that on August 12, 2020, it entered into a Master Loan Agreement (attached as Coverick Decl. Ex. 1) and "Initial Loan Confirmation-2" (the "Loan Confirmation," attached at Master Loan Agreement Ex. B) with Alameda.  Claim 94967 Rider ¶ 3. Tai Mo Shan alleges that according to the Master Loan Agreement and Loan Confirmation, Alameda agreed to lend Tai Mo Shan 800,000,000 Serum tokens ("SRM") according to a specified schedule, with tokens "deliverable at a constant portion per day" starting August 1, 2023.  Claim 94967 Rider ¶ 4; Loan Confirmation.  Pursuant to the Loan Confirmation, Tai Mo Shan could repay the purported loan at any time, either by providing SRM tokens in kind, or by paying a repayment price of $0.12 per borrowed SRM token.

7.    Tai Mo Shan alleges that it did not receive the first delivery of SRM on August 1, 2023, as set forth in the Loan Confirmation.  Claim 94967 Rider ¶ 4.  According to Tai

---

[2]    "Customer Claims" means a claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, or federal or state law, rule or regulation, common law or otherwise) held by any person (as defined in section 101(41) of the Bankruptcy Code) or entity (as defined in section 101(15) of the Bankruptcy Code) against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX exchange as of the Petition Date or (b) any other investment or trading activities on any FTX exchange.

Mo Shan, it has not received any SRM under the Loan Confirmation to the Master Loan Agreement.  Claim 94967 Rider ¶ 4.

8.     Tai Mo Shan claims that it has suffered damages totaling $263,948,000 as a result of Alameda's failure to loan it the SRM tokens.  Tai Mo Shan states that it calculated damages based on an "options model" with the following "inputs/assumptions: the Petition Date price of SRM, the Repayment Option Price, SRM's implied volatility, the time period at issue, and the risk-free rate at the Petition Date."  Claim 94967 Rider ¶ 5.  Tai Mo Shan provides no further description of its purported "options model."

## Jurisdiction and Venue

9.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought are section 502 of the Bankruptcy Code and Bankruptcy Rule 3007.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Basis for Relief

10.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court,

after notice and hearing, shall determine the allowed amount of the claim.  11 U.S.C. § 502(b).

Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be

allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under

any agreement or applicable law."  11 U.S.C. § 502(b).

11.    While a properly filed proof of claim is *prima facie* evidence of the claim's

allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity,

the claimant bears the burden of proving the claim's validity by a preponderance of evidence.  *See*

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("Initially, the claimant must allege

facts sufficient to support the claim.  If the averments in his filed claim meet this standard of

sufficiency, it is '*prima facie*' valid.").  The burden of persuasion with respect to the claim is

always on the claimant, *see id*. at 174, and the failure to allege facts and to provide adequate support

for a claim eliminates the claim's *prima facie* validity, *see, e.g.*, *In re Jorczak*, 314 B.R. 474, 481–

82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with

respect to the allowance of claims).

12.    Tai Mo Shan's Claims seek a total of $263,948,000 from the Debtors in

connection with the Loan Confirmation to the Master Loan Agreement.  For the following reasons

and others that will be demonstrated following discovery and a hearing, the Court should disallow

and expunge Claim 5475 against Alameda in its entirety as duplicative; and disallow and expunge

Claim 94967 in its entirety, or in the alternative reduce the allowed amount of Claim 94967 to such

amount that can be supported by adequate documentation.

I.    **The Claims Should Be Disallowed Because Tai Mo Shan Is Not Entitled To Any Recovery Under The Master Loan Agreement.**

13.    Although not formally expressed as such, Tai Mo Shan's Claims sound in

breach of contract.  The Master Loan Agreement provides that it is to be governed by, and

construed in accordance with, the laws of Illinois.[3]  Master Loan Agreement § XI.  For a breach

of contract claim, a plaintiff must allege "(1) the existence of a valid and enforceable contract;

(2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resulting injury

to the plaintiff." *Xcel Supply, LLC* v. *Horowitz*, 2017 IL App (1st) 152277-U, ¶ 46 (2017).  Where

a contract contains a condition precedent, "an action for damages on a theory of breach of contract

requires the performance of all conditions precedent stated in the contract." *Hollmann* v. *Putman*,

633 N.E.2d 134, 137 (Ill. App. 1994).

14.    A plaintiff in a breach of contract action may recover expectation damages.

*Collins* v. *Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992).  "In other words, the party is entitled to all

damages that 'naturally result from the breach.'" *Williams* v. *Country Mut. Ins. Co.*, 2015 IL App

(1st) 142534-U, ¶ 23 (2015).  Expectation damages are meant to restore the plaintiff to the position

it would have been in had the defendant not breached the contract.  *Union Tank Car Co.* v.

*NuDevco Partners Holdings, LLC*, 2019 IL App (1st) 172858, ¶ 44 (2019).  However, where a

contract provides for specific remedies in the event of breach, the parties are limited to those stated

remedies.  *See, e.g.*, *Hicks* v. *Airborne Express, Inc.*, 858 N.E.2d 48, 54–55 (Ill. App. 2006)

(collecting cases).  Tai Mo Shan is entitled to no damages under the Master Loan Agreement and

Loan Confirmation.

15.    *First*, the Master Loan Agreement states:  "A Loan will only commence

when [Alameda] delivers the [cryptocurrency] and other assets as specified in an agreed Loan

Confirmation.  [Tai Mo Shan] may void any Loan Confirmation, and shall have no obligations

thereunder, if [Alameda] fails to deliver the [cryptocurrency] and other assets by the deadline

---

[3]    Under Delaware choice of law provisions, Illinois law governs.  *Coface Collections N. Am. Inc.* v. *Newton*, 430 F. App'x 162, 166 (3d Cir. 2011) ("[I]it is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract.").

specified in the applicable Loan Confirmation."  Master Loan Agreement § II(b).  The Master Loan Agreement is terminable at will.  Master Loan Agreement § XXI.

16.     Here, it is undisputed that Alameda failed to deliver the cryptocurrency contemplated by the Loan Confirmation to the Master Loan Agreement.  The loan therefore did not commence.  The Master Loan Agreement gives Tai Mo Shan one remedy when a loan does not commence:  voiding the applicable Loan Confirmation.   Nowhere does the Master Loan Agreement provide that Tai Mo Shan can seek to compel Alameda to deliver the cryptocurrency, or seek money damages on a loan that did not commence—in other words, the condition precedent that the loan actually commenced did not occur, so the breach of contract claim is therefore baseless.  Moreover, Alameda has the right to terminate the Master Loan Agreement at any time, which would also terminate, without damages, the loan at issue here, which has not yet commenced.

17.     *Second*, Tai Mo Shan's expectation damages for any alleged breach of contract is *nil*.  Even if the loan did commence (and it did not), the Master Loan Agreement is freely terminable.  Master Loan Agreement § XXI.  The Master Loan Agreement gives Tai Mo Shan no remedy in the event that Alameda terminates a loan.  It simply provides:  "In the event of a termination of a Loan, any Loaned [cryptocurrency] and Loaned Assets shall be repaid immediately and any fees owed shall be payable immediately to Lender as specified herein." Master Loan Agreement § II(e)(ii).

18.     Therefore, the Master Loan Agreement contemplates that Tai Mo Shan may never receive any affirmative recovery, even in the event of termination, and instead must return any outstanding loaned amounts plus interest.  As the loan at issue never commenced, no repayment is necessary—but equally, Tai Mo Shan is not entitled to any expectation damages.

19.     For the foregoing reasons, the Claims should be disallowed and expunged in their entirety.

**II.     Tai Mo Shan's Purported Valuation Of Its Claim At Approximately $264 Million Is Baseless.**

20.     Even if Tai Mo Shan has stated a cognizable claim for breach of contract, which it has not, its valuation of its Claim is wholly unsupportable.  As stated above, a plaintiff in a breach of contract action is entitled to expectation damages.  *Collins*, 607 N.E.2d at 1186.  The plaintiff must support the damages calculation "with a fair degree of probability," and its calculation "cannot be based upon mere speculation or conjecture."  *Bowman* v. *Zimny*, 628 N.E.2d 384, 388 (Ill. App. 1993).

21.     Although Claim 94967 makes vague references to an "options model," it does not explain how it arrived at purported damages of $263,948,000 from Alameda's failure to loan it SRM tokens.  But regardless of the particulars, it is clear from the small amount of information that Tai Mo Shan has provided that its model is unsuitable for calculating its alleged damages here.

22.     Claim 94967 states that its model included "the following inputs/assumptions:  the Petition Date price of SRM, the Repayment Option Price, SRM's implied volatility, the time period at issue, and the risk-free rate at the Petition Date."  Claim 94967 Rider ¶ 5.  But the Loan Confirmation did not call for Tai Mo Shan to receive the SRM on the Petition Date.  Rather, it called for the SRM to be delivered in daily installments starting August 1, 2023.  Master Loan Agreement Ex. B.  Any purported damages calculation must therefore incorporate the price of SRM on that date, and on future vesting dates.  The price of SRM has remained significantly below the Petition Date price and the repayment option price set forth in the Loan

Confirmation.  Tai Mo Shan's methodology for estimating the amount of its Claims is therefore fundamentally flawed.

23.     Tai Mo Shan must provide support for its calculation of its claimed damages.  Absent any details, the allowed amount of Claim 94967 should be reduced to reflect the appropriate amount of damages, if any.

**III.     Tai Mo Shan May Be Liable To The Debtors For Fraudulent Transfers.**

24.     For the reasons stated here and more following discovery, Tai Mo Shan may be liable to the Debtors for fraudulent transfers, which would require that all claims brought by Tai Mo Shan be disallowed until such time it returns the transfers.   Section 502(d) of the Bankruptcy Code provides that the Court "shall disallow any claim of an entity from which property is recoverable under section . . . 548 . . . unless such entity or transferee has paid the amount . . . for which such entity or transferee is liable."

25.     The Debtors submit that Tai Mo Shan may have been the recipient of certain constructively fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code, including the purported loan at issue here.  The Master Loan Agreement and Loan Confirmation provide that Tai Mo Shan would receive 800,000,000 SRM tokens for no fee and no interest.  There are no contract provisions specifying any amount of collateral or consideration given by Tai Mo Shan in return for the alleged loan.

26.     Therefore, following discovery, to the extent that Tai Mo Shan was the transferee of any fraudulent transfers, the Claim should be disallowed until such time Tai Mo Shan returns the transferred property or obligation.

**IV.     Claim 5475 Should Be Disallowed As Duplicative Of Claim 94967.**

27.     Bankruptcy Rule 3007(d) provides that a debtor may object to a claim where the claim "duplicate[s] other claims."  Fed. R. Bankr. P. 3007(d)(1); *see In re Hub Holding Corp*,

2009 WL 8519808, at *2 (Bankr. D. Del. May 27, 2009) (expunging and disallowing duplicative claims).

28.     Tai Mo Shan filed Claim 94967 on May 15, 2024, stating that it is an amendment of Claim 5475.  Claim 94967 at 2.  Therefore, Claim 5475 should be disallowed and expunged as duplicative.

## Reservation of Rights

29.     This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## Notice

30.     Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure;

and (i) counsel to Tai Mo Shan.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

31.    For the foregoing reasons, the Court should enter the Order, substantially in the form attached hereto as Exhibit A, disallowing and expunging Claim 5475 against Alameda in its entirety as duplicative; and disallowing and expunging Claim 94967 in its entirety, or in the alternative reducing the allowed amount of Claim 94967 to such amount that can be supported by adequate documentation.

Dated: July 10, 2024
   Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Matthew R. Pierce
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
   brown@lrclaw.com
   pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
   bromleyj@sullcrom.com
   gluecksteinb@sullcrom.com
   dunnec@sullcrom.com
   crokej@sullcrom.com
   kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*