# EXHIBIT 1



MERCURY

IPV FTX Co-Invest a Series of Iron Pine Ventures Co-Invest Fund LLC
Checking ••3108

## Your receipt from Mercury

September 22, 2022                                    Status: Created

Domestic Wire

# $3,147,705.00

to XN Exponent Master Fund LP

### Recipient's Bank Details

Routing Number                              22
Account Number

### Memo for recipient

"Investment IPV FTX Co-Invest a Series of Iron Pine Ventures
Co-Invest Fund LLC; Investment"

### Cost Breakdown

| Recipient Name | XN Exponent Master Fund LP |
|---|---|
| Amount | $3,147,705.00 |
| Wire Cost | $0.00 |
| Total Paid | $3,147,705.00 |

# EXHIBIT 2

**FTX TRADING LTD.**
**CORPORATE RESOLUTION**

September 23, 2022

The following resolutions were adopted by all the members of the Board of Directors (the "*Board*")
of FTX TRADING LTD. (the "*Company*"), by consent resolution with the same force and effect as a
board meeting:

**RESOLVED**, that the following issuances of shares of (a) Common Stock of the Company
(the "*Common Shares*") and (b) Series B-1 Preferred Stock of the Company (the "**Series B-1
Shares**") pursuant to the applicable Stock Transfer Agreement with the Purchaser as indicated
below, are authorised and approved:

| Purchaser Name | Number and Type of Shares | Share Certificate Number Designation |
|---|---|---|
| IPV FTX Co-Invest | 19,077 shares of B-1 Preferred Stock | B-1 Preferred Share Certificate #112 |
| IPV FTX Co-Invest | 76,308 shares of Common Stock | Common Share Certificate #137 |

**RESOLVED**, that when the respective Common Shares noted in the foregoing resolutions
are issued and delivered to each Purchaser, they shall be represented by certificate(s) which shall
bear a restrictive legend(s) in substantially the form as appears on Exhibit A hereto.

**RESOLVED**, that when the respective Series B-1 Shares noted in the foregoing resolutions
are issued and delivered to each Purchaser, they shall be represented by certificate(s) which shall
bear a restrictive legend(s) in substantially the form as appears on Exhibit B hereto.

**RESOLVED**, that this resolution may be signed in as many counterparts as may be
necessary, each of which so signed shall be deemed to be an original and such counterparts
together shall constitute one and the same instrument.

Effective as of the date first written above.

**DIRECTORS:**

**Samuel Bankman-Fried**

**Nishad Singh**

**Arthur G.B. Thomas**

1

<u>Exhibit A</u>
Legend for Common Shares

THE SHARES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH TRANSFER MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.


THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, AND THE COMPANY DOES NOT INTEND TO REGISTER THEM. PRIOR TO OCTOBER 18, 2022, THE SHARES MAY NOT BE OFFERED OR SOLD (INCLUDING OPENING A SHORT POSITION IN SUCH SECURITIES) IN THE UNITED STATES OR TO U.S. PERSONS AS DEFINED BY RULE 902(k) ADOPTED UNDER THE ACT, OTHER THAN TO DISTRIBUTORS, UNLESS THE SHARES ARE REGISTERED UNDER THE ACT, OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT IS AVAILABLE. PURCHASERS OF SHARES PRIOR TO OCTOBER 18, 2022, MAY RESELL SUCH SECURITIES ONLY PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT OR OTHERWISE IN ACCORDANCE WITH THE PROVISIONS OF REGULATION S OF THE ACT, OR IN TRANSACTIONS EFFECTED OUTSIDE OF THE UNITED STATES PROVIDED THEY DO NOT SOLICIT (AND NO ONE ACTING ON THEIR BEHALF SOLICITS) PURCHASERS IN THE UNITED STATES OR OTHERWISE ENGAGE(S) IN SELLING EFFORTS IN THE UNITED STATES AND PROVIDED THAT HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE ACT. A HOLDER OF THE SECURITIES WHO IS A DISTRIBUTOR, DEALER, SUB- UNDERWRITER OR OTHER SECURITIES PROFESSIONAL, IN ADDITION, CANNOT PRIOR TO OCTOBER 18, 2022 RESELL THE SECURITIES TO A U.S. PERSON AS DEFINED BY RULE 902(k) OF REGULATION S UNLESS THE SECURITIES ARE REGISTERED UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE.

<u>Exhibit B</u>
Legend for B-1 Preferred Shares

THE SHARES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH TRANSFER MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.

THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, AND THE COMPANY DOES NOT INTEND TO REGISTER THEM. PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE, THE SHARES MAY NOT BE OFFERED OR SOLD (INCLUDING OPENING A SHORT POSITION IN SUCH SECURITIES) IN THE UNITED STATES OR TO U.S. PERSONS AS DEFINED BY RULE 902(k) ADOPTED UNDER THE ACT, OTHER THAN TO DISTRIBUTORS, UNLESS THE SHARES ARE REGISTERED UNDER THE ACT, OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT IS AVAILABLE. PURCHASERS OF SHARES PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE, MAY RESELL SUCH SECURITIES ONLY PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT OR OTHERWISE IN ACCORDANCE WITH THE PROVISIONS OF REGULATION S OF THE ACT, OR IN TRANSACTIONS EFFECTED OUTSIDE OF THE UNITED STATES PROVIDED THEY DO NOT SOLICIT (AND NO ONE ACTING ON THEIR BEHALF SOLICITS) PURCHASERS IN THE UNITED STATES OR OTHERWISE ENGAGE(S) IN SELLING EFFORTS IN THE UNITED STATES AND PROVIDED THAT HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE ACT. A HOLDER OF THE SECURITIES WHO IS A DISTRIBUTOR, DEALER, SUB- UNDERWRITER OR OTHER SECURITIES PROFESSIONAL, IN ADDITION, CANNOT PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE RESELL THE SECURITIES TO A U.S. PERSON AS DEFINED BY RULE 902(k) OF REGULATION S UNLESS THE SECURITIES ARE REGISTERED UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE.

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933. SUCH SHARES MAY NOT BE SOLD, PLEDGED, OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR A VALID EXEMPTION FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF SAID ACT.

THE SECURITIES REPRESENTED HEREBY MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF AN AGREEMENT BETWEEN THE COMPANY AND THE SHAREHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY.

EXHIBIT 3

Number
PB1-112

Shares
19,077

 FTX

## FTX Trading Ltd

This certifies that **IPV FTX Co-Invest** is the stockholder of Nineteen Thousand Seventy-Seven (**19,077**) fully paid and non-assessable shares of Series B-1 Preferred Stock, par value $ 0.0000026, of FTX Trading Ltd, hereinafter designated the "**Corporation**", transferable on the books of the Corporation in person or by duly authorized attorney upon surrender of the certificate properly endorsed. This Certificate and the shares represented hereby, are issued and shall be held subject to all of the provisions of the Certificate of Incorporation and the bylaws of the Corporation, to all of which each holder, by acceptance hereof, assents, and agrees to be bound.

A statement of the rights, preferences, privileges and restrictions granted to or imposed upon each class or series of shares of stock of the Corporation authorized to be issued and upon the holders thereof as established by the Certificate of Incorporation or by any certificate of amendment may be obtained by any stockholder upon request and without charge at the principal office of the Corporation. TRANSFER OF THE SHARES REPRESENTED BY THIS CERTIFICATE MAY BE RESTRICTED. SEE LEGENDS ON REVERSE SIDE.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers, effective as of September 23, 2022.

*Sam Bankman-Fried*

**Sam Bankman-Fried, President**

**Can Sun, Secretary**

THE SHARES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH TRANSFER MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.

THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, AND THE COMPANY DOES NOT INTEND TO REGISTER THEM. PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE, THE SHARES MAY NOT BE OFFERED OR SOLD (INCLUDING OPENING A SHORT POSITION IN SUCH SECURITIES) IN THE UNITED STATES OR TO U.S. PERSONS AS DEFINED BY RULE 902(k) ADOPTED UNDER THE ACT, OTHER THAN TO DISTRIBUTORS, UNLESS THE SHARES ARE REGISTERED UNDER THE ACT, OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT IS AVAILABLE. PURCHASERS OF SHARES PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE, MAY RESELL SUCH SECURITIES ONLY PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT OR OTHERWISE IN ACCORDANCE WITH THE PROVISIONS OF REGULATION S OF THE ACT, OR IN TRANSACTIONS EFFECTED OUTSIDE OF THE UNITED STATES PROVIDED THEY DO NOT SOLICIT (AND NO ONE ACTING ON THEIR BEHALF SOLICITS) PURCHASERS IN THE UNITED STATES OR OTHERWISE ENGAGE(S) IN SELLING EFFORTS IN THE UNITED STATES AND PROVIDED THAT HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE ACT. A HOLDER OF THE SECURITIES WHO IS A DISTRIBUTOR, DEALER, SUB- UNDERWRITER OR OTHER SECURITIES PROFESSIONAL, IN ADDITION, CANNOT PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE RESELL THE SECURITIES TO A U.S. PERSON AS DEFINED BY RULE 902(k) OF REGULATION S UNLESS THE SECURITIES ARE REGISTERED UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE.

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933. SUCH SHARES MAY NOT BE SOLD, PLEDGED, OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR A VALID EXEMPTION FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF SAID ACT.

THE SECURITIES REPRESENTED HEREBY MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF AN AGREEMENT BETWEEN THE COMPANY AND THE SHAREHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY.

💡 **This certificate was created from the transfer of certificate PB1-23.**

## Shareholder

| Name | IPV FTX Co-Invest |
|------|-------------------|
| Email | placeholder@example.com |
| Status | Outstanding |

## Certificate

| Share class | Series B-1 Preferred (certificated) |
|------|-------------------|
| Quantity | 19,077 shares |
| Cash paid ⓘ | $629,541.00 (USD) |
| Share class original issue price ⓘ | $36.41 (USD) |
| Price per share ⓘ | $33.00 (USD) |
| Original acquisition date ⓘ | Sept. 23, 2022 |
| Cost basis ⓘ | $629,541.00 (USD) |
| Certificate front and back | |

## Issuer

| Issued by | FTX Trading Ltd |
|------|-------------------|
| Issue date | Sept. 23, 2022 |

## Share class details

Current share class details are shown. See historical share class details ›

Legend:    Current certificate

| Share class | Seniority | Original price | Conversion price | Conversion ratio | Multiplier |
|-------------|-----------|----------------|------------------|------------------|------------|
| Common | 2 | - | - | - | - |
| Common (B-1 Secondary) | 2 | - | - | - | - |
| Series A Preferred | 1 | $0.18972 | $0.18972 | Not entered | 1x |
| Series B-1 Preferred | 1 | $36.41 | $36.41 | Not entered | 1x |
| Series B Preferred | 1 | $26.21 | $26.21 | Not entered | 1x |
| Series C Preferred | 1 | $46.3518 | $46.3518 | Not entered | 1x |

Lowest seniority number gets paid out first.

## Dividends

Legend:    Current certificate

| Share class | Cumulative | Dividend rate | Dividend accrual | Compound interest | Compound period |
|---|---|---|---|---|---|
| Series A Preferred | - | - | - | - | - |
| Series B-1 Preferred | - | - | - | - | - |
| Series B Preferred | - | - | - | - | - |
| Series C Preferred | - | - | - | - | - |

## Participation

Legend:    Current certificate

| Share class | Participating | Participation cap |
|---|---|---|
| Series B-1 Preferred | No | - |
| Series B-1 Preferred | No | - |
| Series B-1 Preferred | No | - |
| Series B-1 Preferred | No | - |

## Compliance

| | |
|---|---|
| Federal exemption | **None entered** |
| Rule 144 date | Oct. 18, 2021 |
| Rule 144 difference reason | Restricted securities purchased from another non-affiliate |
| State exemption | Non-U.S. |
| State of residency | **None entered** |

Learn about exemptions ›

## Legend

Transfer restrictions are described by the following legend included on this certificate.

THE SHARES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AND HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO, OR IN CONNECTION WITH, THE SALE OR DISTRIBUTION THEREOF. NO SUCH TRANSFER MAY BE EFFECTED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT RELATED THERETO OR AN OPINION OF COUNSEL IN A FORM SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED UNDER THE SECURITIES ACT OF 1933.

THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, AND THE COMPANY DOES NOT INTEND TO REGISTER THEM. PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE, THE SHARES MAY NOT BE OFFERED OR SOLD (INCLUDING OPENING A SHORT POSITION IN SUCH SECURITIES) IN THE UNITED STATES OR TO U.S. PERSONS AS DEFINED BY RULE 902(k) ADOPTED UNDER THE ACT, OTHER THAN TO DISTRIBUTORS, UNLESS THE SHARES ARE REGISTERED UNDER THE ACT, OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT IS AVAILABLE. PURCHASERS OF SHARES PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE, MAY RESELL SUCH SECURITIES ONLY PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT OR OTHERWISE IN ACCORDANCE WITH THE

PROVISIONS OF REGULATION S OF THE ACT, OR IN TRANSACTIONS EFFECTED OUTSIDE OF THE UNITED STATES PROVIDED THEY DO NOT SOLICIT (AND NO ONE ACTING ON THEIR BEHALF SOLICITS) PURCHASERS IN THE UNITED STATES OR OTHERWISE ENGAGE(S) IN SELLING EFFORTS IN THE UNITED STATES AND PROVIDED THAT HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE ACT. A HOLDER OF THE SECURITIES WHO IS A DISTRIBUTOR, DEALER, SUB- UNDERWRITER OR OTHER SECURITIES PROFESSIONAL, IN ADDITION, CANNOT PRIOR TO THE ONE-YEAR ANNIVERSARY FROM THE DATE OF PURCHASE RESELL THE SECURITIES TO A U.S. PERSON AS DEFINED BY RULE 902(k) OF REGULATION S UNLESS THE SECURITIES ARE REGISTERED UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE.

THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933. SUCH SHARES MAY NOT BE SOLD, PLEDGED, OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR A VALID EXEMPTION FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF SAID ACT.

THE SECURITIES REPRESENTED HEREBY MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF AN AGREEMENT BETWEEN THE COMPANY AND THE SHAREHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY.

## Approvals

✓ **Initiated by Kelly Yamashita**
Approved Oct. 31, 2022     🔒 ed43abeb09264154b181961efc860e90

✓ **Signed by Samuel Bankman-Fried**
Approved Nov. 1, 2022     🔒 1ecd698d1ef74fdeae1ef8af1faecf7d

⏳ **Signed by Can Sun (pending)**
Waiting for approval

⏳ **Received by IPV FTX Co-Invest (pending)**
Waiting for approval

## Documents and notes

| Additional documents | 🔗 XN IPV FTX Stock Transfer Agreement 09162022 (1).pdf |
|---|---|
| Notes | Created from the transfer of PB1-23 on Sep 23, 2022. |

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

## STOCK TRANSFER AGREEMENT

THIS STOCK TRANSFER AGREEMENT (this "**Agreement**") is made as of September 23, 2022, by and among XN Exponent Master Fund LP ("**Seller**"), IPV FTX Co-Invest ("**Buyer**") and FTX Trading Ltd., a company established under the laws of Antigua and Barbuda (the "**Company**").

WHEREAS, Seller is the record holder and beneficial owner of that number of shares of Series B-1 Preferred Stock ("**Series B-1 Preferred Stock**") of the Company and that number of shares of Common Stock ("**Common Stock**") of the Company set forth on Schedule A hereto (the "**Subject Shares**").

WHEREAS, subject to the terms and conditions of this Agreement, Seller desires to sell, assign and transfer to the Buyer, and the Buyer desires to acquire from Seller, all of Seller's right, title and interest in and to the Subject Shares in accordance with the allocations set forth on Schedule A hereto.

WHEREAS, the Seller is bound by that certain Investors' Rights Agreement, dated as of January 25, 2022, as may be amended or restated from time to time, by and among the Company and the Investors (as such terms are defined therein) (the "**Investors' Rights Agreement**"), and the provisions of the Investors' Rights Agreement shall be binding upon any assignee or transferee of any of the Subject Shares (as though such assignee or transferee were Seller) and any such assignee or transferee is required to execute and deliver to the Company a Joinder Agreement with respect to the Investors' Rights Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1.     **ACQUISITION OF SHARES**.

(a)     **Sale and Purchase.**  Subject to the terms and conditions of this Agreement, at the Closing (as defined below), Seller shall sell, transfer and convey the Subject Shares to Buyer and Buyer shall purchase the Subject Shares from Seller free and clear of all Liens other than any restrictions on transfer contained in the Investors' Rights Agreement, any other applicable organizational document of the Company (the "**Company Agreements**") or any applicable securities law, for the purchase price set forth on Schedule A hereto (the "**Purchase Price**").

(b)     **Assignment and Assumption; Agreement to be Bound**.  Seller is a party to the Investors' Rights Agreement. Concurrently with the sale and purchase of the Subject Shares, Seller hereby assigns to Buyer all of Seller's rights and obligations under the Investors' Rights Agreement with respect to the Buyer's Subject Shares, and the Buyer hereby agrees to be bound by the terms and conditions of the Investors' Rights Agreements with respect to its respective Subject Shares as though such Buyer were Seller. Without limiting the foregoing, to the extent not already a party thereto, the Buyer shall deliver a Joinder Agreement with respect to the Investor Rights' Agreement in the form attached hereto as Schedule B (the "**Joinder Agreement**").

(c)     **Closing**.  The closing of the sale and purchase of the Subject Shares (the "**Closing**") shall take place via the virtual exchange of documentation on the date of this Agreement or at such other time and place as the parties may agree.  Payment of the Purchase Price shall be made at the Closing by wire transfer of immediately available funds to Seller's account as specified in writing to the Buyer prior to the Closing.

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

(i)    <u>Deliveries by Buyer</u>.  On or before the Closing, the Buyer shall (A) deliver to Seller a wire transfer of immediately available funds to an account designated by Seller, in an amount equal to the Purchase Price as set forth on <u>Schedule A</u> attached hereto, and (B) deliver to the Company a duly authorized and executed copy of the Joinder Agreement.

(ii)    <u>Deliveries by Seller; Instructions of Seller</u>.  Seller hereby instructs the Company immediately following the Closing to record the transfer in the books and records of the Company and to: (a) cancel any electronic or physical stock certificate issued to Seller representing the Subject Shares; (b) issue an electronic stock certificate evidencing the Subject Shares being purchased by the Buyer hereunder in the Buyer's name.

2.    **REPRESENTATIONS AND WARRANTIES.**

(a)    **Representations and Warranties of Seller**.  In connection with the sale of the Subject Shares under this Agreement, Seller hereby represents and warrants to the Buyer as follows:

(i)    <u>Ownership of Subject Shares</u>.  Seller is the sole record and beneficial owner of the Subject Shares, and the Subject Shares are to be sold pursuant to this Agreement.  Except as set forth in the Company Agreements, the Subject Shares are not subject to any lien, charge, pledge, claim, restrictions on transfer, mortgage, security interest, or title defect or other encumbrance of any sort (collectively "**Liens**") or to any rights of first refusal of any kind, and Seller has not granted any rights to purchase the Subject Shares to any other person or entity.  Seller has the sole right to transfer the Subject Shares to Buyer pursuant to this Agreement.  Upon the Closing, each Buyer will receive good title to and full ownership of its respective Subject Shares, subject to no Liens retained, granted or permitted by Seller, other than as set forth in the Company Agreements.

(ii)    <u>Compliance with Securities Laws and Regulations</u>.  Seller and Seller's legal counsel are familiar with applicable securities laws and regulations regarding the transfer and sale of the Subject Shares pursuant to this Agreement, and Seller is responsible for ensuring that entry into this Agreement and performance of the transactions contemplated hereby are in compliance with such laws.  Seller's offer to sell the Subject Shares does not violate the registration requirements under Section 5 of the Securities Act of 1933, as amended (the "**Securities Act**"), or any qualification or notification requirements under applicable state blue sky laws.  Seller has not effected, or attempted to effect, the sale and transfer of the Subject Shares (a) by or through an underwriter or in any public offering, (b) by engaging in any general solicitation or (c) publishing any advertisement in connection with the sale and transfer of the Subject Shares.

(iii)    <u>Representation by Counsel</u>.  Seller has been represented by its own counsel in connection with the sale of the Subject Shares or knowingly chosen not to consult such counsel and understands the legal, tax and accounting consequences associated with the sale of the Subject Shares. Seller acknowledges and agrees that it is not relying on any legal, tax, accounting or other advice from either of the Buyer, the Company or their respective counsel with respect to the Subject Shares.

(iv)    <u>Authorization</u>.  Seller has all requisite capacity, power and authority to enter into this Agreement, to consummate the transactions contemplated thereby, to sell the Subject Shares and to carry out and perform its obligations under the terms of this Agreement.  This Agreement has been duly executed and delivered by Seller and constitutes the valid and binding obligation of Seller enforceable in accordance with its terms, except as such enforceability may be limited by and subject to the laws of general application relating to bankruptcy, insolvency and the relief of debtors and to rules of law governing specific performance, injunctive relief or other equitable remedies.

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

(v)  <u>Lawful Acquisition</u>.  Seller acquired the Subject Shares for investment purposes and without any intention of effecting a distribution thereof, and in accordance with applicable law (including anti-money laundering laws) and none of the funds of Seller used to acquire the Subject Shares were proceeds obtained, directly or indirectly, as a result of any unlawful activity.

(vi)  <u>No Conflict</u>.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby will not result in any violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any provision of any instrument, judgment, order, writ, decree or contract (including, without limitation, the Company Agreements) or an event which results in the creation of any lien, charge or encumbrance upon the Subject Shares.

(vii)  <u>Sale for Own Account</u>.  Seller is selling the Subject Shares for Seller's own account and the sale of the Subject Shares is not being effected for, on behalf of, or in concert with the Company or any other person, Seller is selling the Subject Shares only and not with a view to, or for sale in connection with, a distribution of the Subject Shares within the meaning of the Securities Act.  No portion of the Purchase Price will be received (whether directly or indirectly) by the Company.

(viii)  <u>Compliance with Company Agreements</u>.  Seller is in compliance with the applicable terms and conditions of all agreements between Seller and the Company with respect to any shares of the capital stock of the Company owned by Seller.

(ix)  <u>Consents</u>.  Except for the Company consent set forth in Section 6 herein, no consent, waiver, approval, order or authorization of, or registration, declaration or filing with, any governmental entity or any third party, including a party to any agreement with Seller, is required by or with respect to Seller in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated thereby. Without limiting the generality of the foregoing, Seller has complied with or has obtained waivers with respect to any rights of first refusal or co-sale rights and has obtained consent or waiver with respect to any transfer restrictions, in each case, applicable to the sale and purchase of the Subject Shares pursuant to this Agreement.

(x)  <u>Access to Data; Informed Decision; Investigation</u>.  Seller has reviewed such information and records of the Company as Seller deems necessary for purposes of conducting Seller's own independent review and analysis of the Company's business, prospects and financial condition. Seller acknowledges that the Purchase Price of the Subject Shares being paid by Buyers was negotiated at arm's length, may not represent the fair market value of the Subject Shares, and that the Subject Shares may have a current or future value greater than or less than the amount paid for the Subject Shares under this Agreement.  Seller represents and warrants that Seller is fully and completely satisfied with the Purchase Price of the Subject Shares as fair and reasonable.  Seller understands that the Company's future plans, operations and financial transactions may result in the Subject Shares becoming significantly more or less valuable and that the future value of the Subject Shares could be greater than or less than the Purchase Price.  Seller acknowledges and understands that the Company may pursue liquidity events in which shares of capital stock of the Company are purchased or sold at prices materially different from the Purchase Price.  Nevertheless, Seller is selling the Subject Shares of Seller's own free will, and the Buyer is purchasing the applicable Subject Shares of Buyer's own free will.  None of the Company, the Buyer or any of its respective affiliated parties or agents have made any representation to Seller about the advisability of this decision or the existing or potential future value of the Subject Shares, nor has any of them provided any advice to Seller regarding the Purchase Price or the determination thereof.  Seller acknowledges that neither the Company nor the Buyer, nor any of their respective affiliated parties, are under any obligation to disclose any information or opinion they may have about the potential future value of the Company's capital stock, even if such information is material, and Seller has determined to enter into this Agreement notwithstanding such lack

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

of information.  Seller hereby acknowledges that any future sale of shares of the Company's capital stock by the Company could be at a premium to or a discount to the Purchase Price, and any such sale could occur at any time or not at all.

(xi)    <u>Sophisticated Seller</u>.  Seller (a) is a sophisticated entity familiar with transactions similar to those contemplated by this Agreement, (b) has adequate information concerning, and has had a sufficient opportunity to evaluate, the business, financial condition and results of the Company to make an informed decision regarding the value and sale of the Subject Shares, (c) is not relying on any representations and warranties of the Company or the Buyer or any of their representatives regarding the Company's business, financial results, prospects or the merits and risks of selling the Subject Shares, and (d) has independently and without reliance upon either of the Buyer or the Company, and based on such information and the advice of such advisors as Seller has deemed appropriate, made Seller's own analysis and decision to enter into this Agreement.  Seller has not relied on any representations of the Buyer, other than as expressly set forth in Section 2 of this Agreement.  Seller acknowledges that neither Buyer nor any of its respective affiliates (nor the Company nor any of its affiliates) is acting as a fiduciary or financial or investment adviser to Seller, or has given Seller any investment advice, opinion or other information on whether the sale of the Subject Shares is prudent.  Seller acknowledges that (i) the Buyer currently may have, and later may come into possession of, information with respect to the Company that is not known to Seller and that may be material to a decision to sell the Subject Shares, which, for the avoidance of doubt, may include, without limitation, material non-public information, any market share data, marketing plans, licenses, contract information business plans (including with respect to mergers, acquisitions, dispositions, liquidity events, financings (equity or debt), joint ventures or other strategic alternatives), financial forecasts, historical financial data, notices provided to stockholders of the Company, notice of the Company's intention to file a registration statement (or similar listing materials), valuations, capitalization information, budgets and other business information ("**Seller Excluded Information**"), and that the Seller does not require the Buyer to disclose any Seller Excluded Information to the Seller, (ii) the Seller Excluded Information may be indicative of the value of the Subject Shares that is substantially lower or higher than the Purchase Price or otherwise adverse to Seller and the Seller Excluded Information may be material to each of the Buyer's decision to purchase the Subject Shares, (iii) Seller has determined to sell the Subject Shares notwithstanding Seller's lack of knowledge of the Seller Excluded Information, and (iv) neither the Buyer nor the Company shall have any liability to Seller, and Seller , to the fullest extent permitted by law, waives and releases any claims, causes of action, actions, proceedings, suits, judgments liens and executions, whether known or unknown, now or hereafter that it might have against the Buyer or the Company, its directors, officers and stockholders, whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Seller Excluded Information in connection with the sale of the Subject Shares and the Transaction, and further covenants not to sue the Buyer, or any of its partners, director's, officers, employees, agents, controlling persons, investment advisors or affiliates for any loss, damage or liability arising from or relating to the non-disclosure of the Seller Excluded Information.  Seller understands that the Buyer and its respective affiliates and agents will rely on the accuracy and truth of the foregoing representations as a condition to proceeding with purchasing the Subject Shares, and the Seller hereby consents to such reliance.

(xii)    <u>Continuing Rights</u>.  Seller hereby acknowledges that it shall have no rights with respect to the Subject Shares sold to the Buyer hereunder after such sale, whether as a shareholder of the Company or otherwise, with respect to any future sale, acquisition, merger, liquidation, dissolution, distribution, financing, initial public offering or another corporate event regarding the Company or its assets (any of the foregoing, a "**Corporate Event**"). Seller further expressly acknowledges that any such Corporate Event may result in the payment by the Company or a third party of assets, funds, or other proceeds to the Company's security holders or an increase in the value of the Company's shares such that the value attributed to the Company's shares in such Corporate Event (either in an aggregate amount or on a per-share basis) may be greater than the Purchase Price hereunder.

4

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

Seller understands that the Buyer and the Company will rely on the accuracy and truth of the foregoing representations, and Seller hereby consents to such reliance.

(b)     **Representations and Warranties of Buyer**.   In connection with the purchase of the Subject Shares under this Agreement, the Buyer hereby represents and warrants to Seller and the Company, as follows:

(i)     Authorization.  The Buyer has full right, power and authority to enter into this Agreement and all other agreements contemplated hereby and to perform the obligations hereunder and thereunder. The Buyer has duly executed and delivered this Agreement.  This Agreement constitutes a legal, valid and binding obligation of such Buyer and is enforceable against such Buyer in accordance with its terms, except as such enforceability may be limited by and subject to the laws of general application relating to bankruptcy, insolvency and the relief of debtors and to rules of law governing specific performance, injunctive relief or other equitable remedies.

(ii)     Acquired Entirely for Own Account.  The Buyer is acquiring its respective Subject Shares hereto for investment for the Buyer's own account and not with the view to, or for resale in connection with, any distribution thereof (including, without limitation, any direct or indirect interest or right therein). The Buyer is not an underwriter as that term is defined under the Securities Act, The Buyer understands that the Subject Shares it is acquiring hereunder have not been registered under the Securities Act by reason of a specific exemption from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of Buyer's investment intent as expressed herein.  The Buyer further represents that Buyer does not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant any participation with respect to any of the Subject Shares it is acquiring hereunder or any direct or indirect interest or right therein.  The Buyer is not at present, and has not been during the preceding three months, an "affiliate" of the Company within the meaning of Rule 144(a)(1) of the Securities Act.

(iii)     Compliance with Securities Laws and Regulations.  The Buyer's offer to purchase its respective Subject Shares being sold and transferred under this Agreement is not part of a "tender offer" by Buyer, as such term is used in Section 14(d) and Regulation 14D of the Exchange Act, nor does it violate the registration requirements under Section 5 of the Securities Act or any qualification or notification requirement under applicable state blue sky laws.

(iv)     Disqualification.  The Buyer represents that neither Buyer nor any entity in control of such Buyer is subject to any of the "Bad Actor" disqualifications described in Rule 506(d)(1)(i) to (viii) under the Securities Act.  The Buyer agrees, for so long as Buyer or any such person beneficially owns any equity securities of the Company, to notify the Company if Buyer or any person or entity in control of the Buyer becomes subject to such disqualifications after the date hereof.

(v)     Sophisticated Buyer.  The Buyer (a) is a sophisticated entity familiar with transactions similar to those contemplated by this Agreement, (b) has adequate information concerning the business and financial condition of the Company to make an informed decision regarding the purchase of its respective Subject Shares, (c) is not relying on any representations and warranties of the Company or the Seller or any of their representatives regarding the Company's business, financial results, prospects or the merits and risks of selling the Subject Shares, and (d) has independently and without reliance upon Seller or the Company, and based on such information and the advice of such advisors as Buyer has deemed appropriate, made its own analysis and decision to enter into this Agreement.  The Buyer acknowledges that none of Seller nor Seller's affiliates (nor the Company nor any of its affiliates) is acting as a fiduciary or financial or investment adviser to Buyer, or has given Buyer any investment advice, opinion or other information on whether the purchase of its respective Subject Shares is prudent.  The Buyer acknowledges that (i) Seller

5

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

currently may have, and later may come into possession of, information with respect to the Company that is not known to Buyer and that may be material to a decision to purchase its respective Subject Shares, which for the avoidance of doubt, may include, without limitation, any market share data, marketing plans, licenses, contract information business plans (including with respect to mergers, acquisitions, dispositions, liquidity events, financings (equity or debt), joint ventures or other strategic alternatives), financial forecasts, historical financial data, notices provided to stockholders of the Company, notice of the Company's intention to file a registration statement (or similar listing materials), valuations, capitalization information, budgets and other business information (the "**Buyer Excluded Information**"), and that the Buyer does not require the Seller to disclose any Buyer Excluded Information to the Buyer, (ii) the Buyer Excluded Information may be indicative of the value of the Subject Shares that is substantially lower or higher than the Purchase Price or otherwise adverse to Buyer and the Buyer Excluded Information may be material to the Buyer's decision to purchase the Subject Shares, and (iii) Buyer has determined to purchase its respective Subject Shares notwithstanding its lack of knowledge of the Buyer Excluded Information and (iv) neither the Seller nor the Company shall have any liability to Buyer, and Buyer, to the fullest extent permitted by law, waives and releases any claims, causes of action, actions, proceedings, suits, judgments liens and executions, whether known or unknown, now or hereafter that it might have against the Seller or the Company, its directors, officers and stockholders, whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Buyer Excluded Information in connection with the sale of the Subject Shares and the transaction, and further covenants not to sue the Seller, or any of its partners, director's, officers, employees, agents, controlling persons, investment advisors or affiliates for any loss, damage or liability arising from or relating to the non-disclosure of the Buyer Excluded Information. Buyer understands that the Seller and its respective affiliates and agents will rely on the accuracy and truth of the foregoing representations as a condition to proceeding with purchasing the Subject Shares, and the Buyer hereby consents to such reliance.

(vi)    Investment Experience.  The Buyer is experienced in evaluating companies such as the Company, is able to fend for itself, and has extensive knowledge and experience in financial and business matters.  The Buyer is capable of evaluating the merits and risks of Buyer's investment in its respective Subject Shares, and has the ability to bear the economic risks of the investment.

(vii)    Rule 144.  The Buyer acknowledges that its respective Subject Shares are "restricted securities" as the term is defined in Rule 144 promulgated pursuant to the Securities Act and must be held indefinitely unless subsequently registered under the Securities Act or an exemption from such registration is available.  The Buyer is aware of the provisions of Rule 144 promulgated pursuant to the Securities Act which permit limited resale of shares purchased in a private placement subject to the satisfaction of certain conditions.  Without limiting the provisions of the Company Agreements, the Buyer covenants that, in absence of an effective registration statement covering the stock in question, the Buyer will sell, transfer or otherwise dispose of its respective Subject Shares only in a manner consistent with the Buyer's representations and covenants set forth herein and in compliance with the registration requirements or exemption provisions of the Securities Act and any other applicable securities laws.

(viii)    No Public Market.  The Buyer understands that at the time Buyer wishes to sell its respective Subject Shares, there may be no public market upon which to make such a sale, and that, even if such a public market then exists, the Company may not be satisfying the current public information requirements of Rule 144, and that, in such event, the Buyer would be precluded from selling its respective Subject Shares under Rule 144 even if the minimum holding period were satisfied.

(ix)    Disclosure of Information; Informed Decision; Investigation.  The Buyer agrees that the Company makes no representations and warranties and has not provided information or disclosures of any kind to the Buyer in connection with the transactions contemplated by this Agreement.  Nonetheless, the Buyer is aware of the Company's business affairs and financial condition and has acquired sufficient

6

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

information about the Company to reach an informed and knowledgeable decision to acquire its respective Subject Shares.  The Buyer acknowledges that Buyer has had the opportunity to ask questions and receive answers regarding the business, properties, prospects and financial condition of the Company and to obtain any additional information requested and has received and considered all such information the Buyer deems relevant to make an informed decision to purchase its respective Subject Shares.  The Buyer acknowledges that the Purchase Price of its respective Subject Shares, as set forth on Schedule A attached hereto, being paid by the Buyer was negotiated at arm's length, may not represent the fair market value of such Subject Shares, and that such Subject Shares may have a current or future value greater than or less than the amount paid for such Subject Shares under this Agreement.  The Buyer understands that the Company's future plans, operations and financial transactions may result in its respective Subject Shares becoming significantly more or less valuable and that the future value of such Subject Shares could be greater than or less than the Purchase Price set forth on Schedule A attached hereto.  The Buyer acknowledges and understands that the Company may pursue liquidity events in which shares of capital stock of the Company are purchased or sold at prices materially different from the Purchase Price set forth on Schedule A attached hereto.  Nevertheless, Seller is selling the Subject Shares of Seller's own free will, and Buyer is purchasing its respective Subject Shares of the Buyer's own free will.  Neither the Company nor any of its agents has made any representation to the Buyer about the advisability of this decision or the existing or potential future value of its respective Subject Shares, nor has any of them provided any advice to the Buyer regarding the Purchase Price set forth on Schedule A attached hereto or the determination thereof.  The Buyer acknowledges that neither the Company nor Seller, nor any of their respective affiliated parties, are under any obligation to disclose any information or opinion they may have about the potential future value of the Company's capital stock, even if such information is material, and the Buyer has determined to enter into this Agreement notwithstanding such lack of information.  The Buyer hereby acknowledges that any future sale of shares of the Company's capital stock by the Company could be at a premium or a discount to the Purchase Price set forth on Schedule A attached hereto, and such sale could occur at any time or not at all.

     (x)   High Risk.  The Buyer realizes that investment in its respective Subject Shares involves a high degree of risk.  The Buyer is able to bear the risk of the investment, to hold such Subject Shares for an indefinite period of time and to suffer a complete loss of the investment.

     (xi)   Securities Not Registered.  The Buyer understands that its respective Subject Shares have not been registered under the Securities Act and have been issued and are being sold hereunder, in each case, in reliance upon a specific exemption therefrom, which exemption depends upon, among other things, the bona fide nature of the investment intent as expressed herein.

     (xii)   Accredited Investor; Not Formed to Acquire Shares.  The Buyer is an "accredited investor" as that term is defined in Rule 501 of the Securities Act.  If applicable, each holder of an interest in the Buyer or any entity affiliated with the Buyer is also an accredited investor.  Neither the Buyer nor any entity affiliated with the Buyer was formed for the purpose of acquiring shares of the capital stock of the Company (including without limitation the Subject Shares) or any direct or indirect right or interest therein.

     (xiii)   No Solicitation.  At no time was the Buyer presented with or solicited by any email, circular, article, advertisement, announcement, posting of information on a website, news release, analyst report, research report, third party communication, webinar or any other form of solicitation, advertising or publicity in connection with the transfer of its respective Subject Shares.

     (xiv)   Company Agreements.  The Buyer agrees to be bound by the terms and conditions of the Company Agreements with respect to its respective Subject Shares as though such Buyer were Seller.

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

The Buyer understands that Seller and the Company will rely on the accuracy and truth of the foregoing representations, and the Buyer hereby consents to such reliance. Each of the Seller's and the Company's respective legal counsel is authorized to rely on this certificate for purposes of preparing and delivering any legal opinion(s) required in connection with the transfer of the Subject Shares.

3.    **COVENANTS**.

(a)    **Covenants of Buyers**.  In connection with the purchase of the Subject Shares under this Agreement, each Buyer acknowledges and agrees as follows:

(i)    Legends.  Any certificates evidencing the Subject Shares may bear one or more of the following (or similar) legends:

- THE SECURITIES REPRESENTED HEREBY HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933. SUCH SHARES MAY NOT BE SOLD, PLEDGED, OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR A VALID EXEMPTION FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF SAID ACT.

- THE SECURITIES REPRESENTED HEREBY MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF AN AGREEMENT BETWEEN THE COMPANY AND THE SHAREHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY

- THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, AND THE COMPANY DOES NOT INTEND TO REGISTER THEM. PRIOR TO OCTOBER 18, 2022, THE SHARES MAY NOT BE OFFERED OR SOLD (INCLUDING OPENING A SHORT POSITION IN SUCH SECURITIES) IN THE UNITED STATES OR TO U.S. PERSONS AS DEFINED BY RULE 902(k) ADOPTED UNDER THE ACT, OTHER THAN TO DISTRIBUTORS, UNLESS THE SHARES ARE REGISTERED UNDER THE ACT, OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE ACT IS AVAILABLE. PURCHASERS OF SHARES PRIOR TO OCTOBER 18, 2022, MAY RESELL SUCH SECURITIES ONLY PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE ACT OR OTHERWISE IN ACCORDANCE WITH THE PROVISIONS OF REGULATION S OF THE ACT, OR IN TRANSACTIONS EFFECTED OUTSIDE OF THE UNITED STATES PROVIDED THEY DO NOT SOLICIT (AND NO ONE ACTING ON THEIR BEHALF SOLICITS) PURCHASERS IN THE UNITED STATES OR OTHERWISE ENGAGE(S) IN SELLING EFFORTS IN THE UNITED STATES AND PROVIDED THAT HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE ACT. A HOLDER OF THE SECURITIES WHO IS A DISTRIBUTOR, DEALER, SUBUNDERWRITER OR OTHER SECURITIES PROFESSIONAL, IN ADDITION, CANNOT PRIOR TO OCTOBER 18, 2022 RESELL THE SECURITIES TO A U.S. PERSON AS DEFINED

8

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

BY RULE 902(k) OF REGULATION S UNLESS THE SECURITIES ARE REGISTERED UNDER THE ACT OR AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE.

(ii)    Indemnification.  The Buyer shall indemnify, defend and hold harmless as a continuing obligation under which successive recoveries may be had, the Seller, the Company and its predecessors and successors, past and present agents, representatives, partners, directors, officers, attorneys, employees, servants, stockholders, affiliates, subsidiaries, heirs, executors, administrators, assigns, as well as any person acting by, through, under or in concert with any of the foregoing (collectively, the "**Indemnified Parties**" and individually, an "**Indemnified Party**"), from and against all claims, demands, causes of action, obligations, losses, damages, liabilities, contracts, agreements, promises, debts, costs and expenses of any kind whatsoever, including, without limitation, court costs and reasonable attorneys' fees, whether at law or in equity, asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, to which the Seller, the Company or any other Indemnified Party may be subjected or liable in connection with any inaccuracy or breach of any representation, warranty or covenant made by such Buyer herein.

(iii)    Exculpation; Disclaimer.  Buyer agrees that the Company shall not be liable to Buyer or Seller for mistakes of judgment, fact or law, or for action or inaction, taken in good faith for a purpose reasonably believed to be in the best interest of completing the transactions contemplated by this Agreement, or for losses due to such mistakes, action or inaction, or to the negligence, dishonesty or bad faith of any employee, broker or other agent; *provided, however,* that such employee, broker or agent was selected, engaged or retained with reasonable care. Buyer acknowledges that the Company may consult with counsel and accountants in respect of the transactions contemplated by this Agreement and be fully protected and justified in any action or inaction that is taken in accordance with the advice or opinion of such counsel or accountants; *provided, however,* that they shall have been selected with reasonable care. Buyer agrees that under no circumstances will the Company be liable to a party for any other party's failure to perform obligations under this Agreement.  The limitations of liability in this section shall not extend to any conduct constituting recklessness, willful misconduct or gross negligence.  Solely to the extent that such liability may not be waived, modified or limited under applicable law, this section shall be construed so as to effectuate its provisions to the fullest extent permitted by law

(iv)    Release.  The Buyer, on behalf of itself and on behalf of its predecessors and successors, past and present agents, representatives, attorneys, heirs, executors, administrators and assigns, as well as any person acting by, through, under or in concert with any of the foregoing does hereby release and forever discharge the Seller and the Company, and their predecessors and successors, past and present agents, representatives, partners, directors, officers, attorneys, employees, servants, shareholders, affiliates, subsidiaries, heirs, executors, administrators and assigns, as well as any person acting by, through, under or in concert with any of the foregoing, from any and all claims, demands, causes of action, obligations, damages, losses, liabilities, contracts, agreements, promises, debts, costs and expenses of any kind whatsoever, whether at law or in equity, asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent (collectively, "Claims" and individually, "Claim"), which Seller ever had, now has, or may claim to have against the Purchaser or the Company, relating to or arising from the transfer and sale of the Shares.

4.    **SURVIVAL.**

The representations, warranties, obligations or other agreements contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing.

9

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

5.    **SUCCESSORS AND ASSIGNS.**

Except as otherwise expressly provided in this Agreement, all covenants and agreements contained in this Agreement by or on behalf of any of the parties hereto will bind and inure to the benefit of its respective successors and assigns of such parties whether so expressed or not. Without limiting the foregoing, any subsequent transferee of any of the Subject Shares shall be bound by the provisions of the Company Agreements (and this Agreement) as though such transferee were Seller (or, with respect to this Agreement, the Buyer).

6.    **COMPANY CONSENT AND WAIVER.**

The Company hereby (i) consents to the sale of the Subject Shares pursuant to this Agreement, and (ii) waives any and all rights of first refusal and any other applicable transfer restrictions (and any and all applicable notice requirements with respect thereto) in connection with the sale and purchase of the Subject Shares pursuant to this Agreement.

7.    **NOTICES.**

Any notice, demand or request required or permitted to be given under this Agreement shall be in writing and shall be deemed sufficient when delivered personally or by overnight courier or sent by email, or three business days after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address as set forth on the signature page, as subsequently modified by written notice, or if no address is specified on the signature page, at the most recent address set forth in the Company's books and records.

8.    **FURTHER ACTIONS.**

The parties hereto agree to execute such further instruments and to take such further action as may be reasonably necessary to carry out the intent of this Agreement or as may be reasonably requested by the Company.

9.    **ENTIRE AGREEMENT.**

This Agreement constitutes the entire contract between the parties hereto with regard to the subject matter hereof. It supersedes any and all prior agreements, representations or understandings (whether oral or written and whether express or implied) entered into prior to the Closing which relate to the subject matter hereof. This Agreement may be executed in two or more counterparts, including by electronic facsimile transmission, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. If any provision of this Agreement shall be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render illegal, invalid or unenforceable any other severable provision of this Agreement, and this Agreement shall be carried out as if any such illegal, invalid or unenforceable provision were not contained herein. Section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. This Agreement may not be amended without the written consent of each of the parties. Each party hereto has been represented by such party's own counsel, and no party hereto has relied upon any advice from the other party (or the Company) or such other party's counsel (or the Company's counsel).

10

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

10.    **CHOICE OF LAW**.

        The validity, interpretation, construction and performance of this Agreement, and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the state of Delaware, without giving effect to principles of conflicts of law.

11.    **SPECIFIC PERFORMANCE**.

        Unless this Agreement has been terminated, each party to this Agreement acknowledges and agrees that any breach by it of this Agreement shall cause any (or either) of the other parties irreparable harm which may not be adequately compensable by money damages.  Accordingly, except in the case of termination, in the event of a breach or threatened breach by a party of any provision of this Agreement, each party shall be entitled to seek the remedies of specific performance, injunction or other preliminary or equitable relief, without having to prove irreparable harm or actual damages.  The foregoing right shall be in addition to such other rights or remedies as may be available to any party for such breach or threatened breach, including but not limited to the recovery of money damages.

12.    **CONFLICT**.

        In the event of any conflict between the terms of this Agreement and the Company Agreements, the terms of this Agreement shall control.

13.    **COUNTERPARTS**.

        This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Execution of a facsimile, electronically submitted or scanned copy will have the same force and effect as execution of an original, and a facsimile, scanned or electronic signature will be deemed an original and valid signature.

[<em>Signature Page Follows</em>]

11

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

IN WITNESS WHEREOF, each of the parties has executed this Stock Transfer Agreement as of the day and year first above written.

**BUYER:**

IPV FTX CO-INVEST, A SERIES OF IRON PINE VENTURES CO-INVEST FUND

BY: IRON PINE VENTURES LLC, ITS MANAGER

By: _Patrick Flynn_

Name: Patrick Flynn

Title: Managing Member

Address: 3791 Wasatch Ave
Los Angeles CA 90066

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

IN WITNESS WHEREOF, each of the parties has executed this Stock Transfer Agreement as of the day and year first above written.

**SELLER:**

**XN EXPONENT MASTER FUND LP**

By: XN Exponent GP LLC, its General Partner

By: _____
Name: Thomas L. O'Grady
Title: General Counsel and Chief Compliance Officer

Address:  412 West 15th Street
            13th Floor
            New York, NY 10011

2

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

IN WITNESS WHEREOF, each of the parties has executed this Stock Transfer Agreement as of the day and year first above written.

**COMPANY:**

By: _Samuel Bankman-Fried_

Name:   Samuel Bankman-Fried

Title:   CEO

Address:   Lower Factory Road, St. John's
             Antigua & Barbuda

3

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

**SCHEDULE A**
**BUYER ALLOCATION**

| Name of Buyer | Type of Share | Number of Subject Shares | Price Per Share | Purchase Price |
|---|---|---|---|---|
| IPV FTX Co-Invest | Series B-1 Preferred Stock | 19,077 | $33.00 | $629,541 |
| IPV FTX Co-Invest | Common Stock | 76,308 | $33.00 | $2,518,164 |
| **Total** | | **95,385** | | **$3,147,705.00** |

4

DocuSign Envelope ID: 96904CFB-A61D-4015-92D3-234BA04DE307

**SCHEDULE B**

**JOINDER AGREEMENT**

[attached]

# EXHIBIT 4



**U.S. Securities and Exchange Commission**

# Filing Detail

Search the Next-Generation
EDGAR System

SEC Home » Search the Next-Generation EDGAR System » Company Search » *Current Page*

| | | |
|---|---|---|
| ***Form D*** - *Notice of Exempt Offering of Securities:* | | SEC Accession No. 0001939360-22-000001 |

| Filing Date | Effectiveness Date | Items |
|---|---|---|
| 2022-12-23 | 2022-12-23 | Item 06b: |
| **Accepted** | | Item 3C: Investment |
| 2022-12-23 15:23:59 | | Company Act Section 3(c) |
| **Documents** | | Item 3C.1: Section 3(c)(1) |
| 1 | | |

**Document Format Files**

| Seq | Description | Document | Type | Size |
|---|---|---|---|---|
| 1 | | primary_doc.html | D | |
| 1 | | primary_doc.xml | D | 6991 |
| | Complete submission text file | 0001939360-22-000001.txt | | 8158 |

### IPV FTX Co-Invest a Series of Iron Pine Ventures Co-Invest Fund LLC (Filer) CIK: 0001939360 (see all company filings)

IRS No.: **000000000** | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **D** | Act: **33** | File No.: **021-468650** | Film No.: **221485121**

Business Address
*8 THE GREEN
SUITE A
DOVER DE 19901*
*6172572511*

Mailing Address
*8 THE GREEN
SUITE A
DOVER DE 19901*