**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: September 12, 2024 at 1:00 p.m. ET<br>Obj. Deadline: August 12, 2024 at 4:00 p.m. ET |

### DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY
### <u>KARIYA KAYAMORI</u>

> **THIS OBJECTION OBJECTS TO CERTAIN CLAIMS. THE CLAIMANT RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE.**

    FTX Trading Ltd. ("<u>FTX</u>"), FTX Japan Holdings K.K. ("<u>FTX Japan</u>") and its affiliated debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" and each a "<u>Debtor</u>") hereby submit this objection (the "<u>Objection</u>"), pursuant to sections 502 and 510(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>") and rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to proofs of claim numbers 3974 and 4158 (collectively, the "<u>Claims</u>" and each a "<u>Claim</u>") filed by Kariya Kayamori. In connection with this Objection, the Debtors submit the concurrently filed *Declaration of Steven P. Coverick* (the "<u>Coverick Decl.</u>") and the exhibits attached thereto. The Debtors seek to disallow and expunge Claim 3974 against FTX in its entirety, or in the alternative reduce Claim 3974 to

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

reflect the dollar value of cryptocurrencies determined in this Court's *Order Granting Motion Of Debtors To Estimate Claims Based on Digital Assets* [D.I. 7090] (the "Estimation Order"), dated February 7, 2024 and subordinate Claim 3974 as an equity claim under section 510(b) of the Bankruptcy Code; and disallow and expunge Claim 4158 against FTX Japan in its entirety, or in the alternative reduce Claim 4158 to reflect the reasonable value, and the actual and necessary costs, of services provided by Kayamori to the Debtors.  In support of the Objection, the Debtors respectfully state as follows:

## Background

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3. On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order"). The Non-Customer Bar Date Order established, among other things, the deadline of June 30, 2023 to file non-Customer Claims[2] against the Debtors.

4. To date, approximately 3,403 non-customer proofs of claim have been filed against the Debtors, asserting more than $483 billion.

5. On June 29, 2023, Kayamori filed Claim 3974 against FTX and Claim 4158 against FTX Japan.

**Facts Specific to Relief Requested**

6. Kayamori was co-founder and Chief Executive Officer ("CEO") of Liquid Group Inc. Coverick Decl. Ex. 1. Liquid Group Inc. operated the Liquid Exchange. Claim 3974 Annex ¶ 8. Kayamori's Claims arise out of two agreements, explained in further detail below.

*The Share Purchase Agreement*

7. On November 19, 2021, FTX acquired Liquid Group Inc. (n/k/a FTX Japan): FTX, Kayamori, and others executed the Agreement for the Sale and Purchase of Shares, Stock Options and Warrants in Liquid Group Inc. (Major Shareholders) (as may be amended, modified or supplemented from time to time, the "SPA," attached as Coverick Decl. Ex. 2). After

---

[2] "Customer Claims" means a claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, or federal or state law, rule or regulation, common law or otherwise) held by any person (as defined in section 101(41) of the Bankruptcy Code) or entity (as defined in section 101(15) of the Bankruptcy Code) against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX exchange as of the Petition Date or (b) any other investment or trading activities on any FTX exchange.

FTX acquired Liquid Group Inc., Kayamori served as the CEO of FTX Japan.  Coverick Decl. Ex. 3 § 2.1.

8. Pursuant to the SPA, Kayamori sold FTX 12,800 shares of common stock of Liquid Group Inc., and 50 shares of Class A Preference Stock of Liquid Group Inc.  In exchange, FTX was obligated to pay Kayamori consideration worth a total of $45,108,768.50, consisting of:

    a. 995,307 shares of FTX common stock valued at $26,087,014.80 (the "FTX Consideration Shares");

    b. $10,000,000 in cash (the "Cash Payment"); and

    c. $9,021,753.70 worth of cryptocurrency (the "Retained Consideration").[3]

Claim 3974 Annex ¶ 9; SPA Schedule 2, at 35–36.

9. On or around April 4, 2022, FTX paid Kayamori the Cash Payment and the FTX Consideration Shares.  FTX retained the Retained Consideration as security against any indemnification obligations that may arise under the SPA.  Section 4.2 of the SPA provides that half of the Retained Consideration shall be released by FTX to Kayamori on April 4, 2023 and the remainder on April 4, 2024.  Claim 3974 Annex ¶ 9; SPA § 4.2.

10. In Claim 3974 against FTX, Kayamori seeks total damages of "not less than $32,128,959.84" for breach of the SPA and fraudulent inducement of the SPA.  Claim 3974 Annex ¶ 4.  This damages figure represents the cash value of the FTX Consideration Shares and the Retained Consideration, "less actual cash received from the Debtor prior to the Petition Date and cash received from the sale of 114,460 shares of Common Stock of the Debtor."[4]  Claim 3974 Annex ¶ 4; SPA Schedule 2, at 35–36.  He also asserts entitlement to the Retained Consideration

---

[3]    The Retained Consideration consisted of 52.870 BTC, 757.25 ETH, and 64,219 FTT.  SPA Schedule 2, at 37.

[4]    Kayamori's sale of 114,460 FTX shares back to FTX is discussed *infra*, in connection with the Separation Agreement.

and $20,187.94 in indemnification for legal fees. Claim 3974 Annex ¶ 4. Kayamori purports to state his claims under theories of Japanese law and Delaware law, "to the extent applicable." Claim 3974 Annex ¶ 19.

*The Separation and Release of Claims Agreement*

11. On May 16, 2022, an article was published on CoinDesk titled "How Not to Run a Cryptocurrency Exchange." Coverick Decl. Ex. 4. The article discussed a variety of unfavorable occurrences at Liquid Group Inc. and FTX Japan under Kayamori's leadership, such as hostile management, allegations of racism, poor handling of security risks, and that Liquid Group Inc. allegedly took steps to inflate artificially the price of its own native token. *Id.*

12. As a result, on or around May 30, 2022, Kayamori was placed on administrative leave.

13. On September 9, 2022, Kayamori and FTX Japan executed a Separation and Release of Claims Agreement (the "Separation Agreement"), whereby Kayamori agreed to provide certain services from May 20, 2022 to January 31, 2023 (the "Transition Period") in return for an "advisory fee." Coverick Decl. Ex. 5. In return, FTX agreed to:

   a. Pay Kayamori an advisory fee of $29,500 per month during the Transition Period;

   b. Pay Kayamori lump sums of $252,000 and $904,400 within thirty days of September 9, 2022;

   c. Pay Kayamori a lump sum of $420,000 within thirty days of the end of the Transition Period (the "Final Payment"); and

   d. Buy back from Kayamori 114,460 of the FTX Consideration Shares at a price of $26.21 per share (totaling $2,999,996.60) within thirty days of September 9, 2022.

Separation Agreement § 5(b).

14. Notwithstanding the agreement to pay "advisory fees" during the Transition Period, Kayamori was in fact denied access to all FTX systems after being put on administrative leave, and performed no work.

15. On October 4 and November 4, 2022, FTX Japan paid Kayamori advisory fees covering the period up to November 1, 2022. On October 6, 2022, FTX Japan paid Kayamori the $252,000 lump sum and FTX paid him the $904,400 lump sum. Also on October 6, 2022, FTX bought back 114,460 of the FTX Consideration Shares.

16. In the Separation Agreement, Kayamori agreed to "unconditionally fully and forever waive[], release[], and discharge[] FTX" from "any and all claims, demands, actions, causes of actions, judgements, rights, fees, damages, debts, obligations, liabilities, and expenses." Separation Agreement § 6(a).

17. In Claim 4158 against FTX Japan, Kayamori seeks payment of unpaid advisory fees, the Final Payment, and certain legal fees. Claim 4158 Annex ¶ 2(a). In total, Kayamori seeks "not less than $534,811.84," consisting of:

   a. $9,833.33 in prepetition advisory fees for the period November 1–10, 2022;

   b. $78,666.67 in postpetition advisory fees for the period November 11, 2022 through January 2023;

   c. $420,000 reflecting the Final Payment; and

   d. $26,311.84 in legal fees "arising out of or related to [Kayamori's] performance of [services under the Separation Agreement]."

Claim 4158 Annex ¶¶ 1(b), 2(a).

### Jurisdiction and Venue

18. The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District*

*Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought are sections 502 and 510(b) of the Bankruptcy Code and Bankruptcy Rules 3001 and 3007. Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Basis for Relief

19. Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." Bankruptcy Code § 502(a). Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim. Bankruptcy Code § 502(b). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." Bankruptcy Code § 502(b).

20. While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid."). The burden of persuasion with respect to the claim is

always on the claimant, *see id*. at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity, *see, e.g.*, *In re Jorczak*, 314 B.R. 474, 481–82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).

21. Kayamori's Claims seek a total of more than $32,663,771.68 from the Debtors pursuant to the Separation Agreement and the SPA. For the following reasons and others that will be demonstrated following discovery and a hearing, the Court should disallow and expunge Claim 3974 against FTX in its entirety, or in the alternative reduce Claim 3974 to reflect the dollar value of cryptocurrencies determined in this Court's Estimation Order and subordinate Claim 3974 as an equity claim under section 510(b) of the Bankruptcy Code; and disallow and expunge Claim 4158 against FTX Japan in its entirety, or in the alternative reduce Claim 4158 to reflect the reasonable value, and the actual and necessary costs, of services provided by Kayamori to the Debtors.

## I. Kayamori's Claims Related To The SPA Should Be Disallowed.

22. Kayamori asserts breach of the SPA, fraudulent inducement of the SPA, and "impermissible retention of the Retained Consideration" in Claim 3974 against FTX. For the reasons set forth below, Kayamori's Claim 3974 against FTX should be disallowed and expunged in its entirety, or in the alternative reduced to reflect the dollar value of cryptocurrencies determined in the Court's Estimation Order and subordinated as an equity claim under section 510(b) of the Bankruptcy Code.

### A. The Breach Of Contract, Fraudulent Inducement, And "Impermissible Retention Of The Retained Consideration" Claims In Claim 3974 Should Be Disallowed Because Kayamori Waived His Claims Against The Debtors.

23. Kayamori has released all of his claims arising under the SPA. "Under settled Delaware law, a general release is intended to cover everything—what the parties presently have in mind, as well as what they do not have in mind. Such general releases are in common use. Their validity is unchallenged." *Corp. Prop. Assocs. 6* v. *Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003) (cleaned up); *see also Seiden* v. *Kaneko*, 2017 WL 1093937, at *3 (Del. Ch. Mar. 22, 2017) ("If a subsequent claim falls within the plain language of a release, then the claim should be dismissed.") (cleaned up).[5]

24. In the Separation Agreement, Kayamori agreed to "unconditionally fully and forever waive[], release[], and discharge[] FTX" from "any and all claims, demands, actions, causes of actions, judgements, rights, fees, damages, debts, obligations, liabilities, and expenses." Separation Agreement § 6(a). This broad waiver and release encompasses the claims in Claim 3974.

25. Therefore, the breach of contract, fraudulent inducement, and "impermissible retention of the Retained Consideration" claims in Claim 3974 should be disallowed and expunged in their entirety. Even so, Kayamori fails to state a cause of action for each aforementioned claim for the reasons explained below.

---

[5] The Debtors are not aware of any Japanese law that differs from Delaware law in this respect. To the extent that Kayamori contends that Japanese law differs, he must bear the burden of proving the substance of Japanese law. *Germaninvestments AG* v. *Allomet Corp.*, 225 A.3d 316, 333 (Del. 2020). Kayamori does not allege that the waiver and release of claims clause is unenforceable.

### B. Kayamori's Claim 3974 Is An Impermissible Attempt To Raise A Subordinated Equity Claim As A Non-Customer Claim.

26. Under Section 510(b) of the Bankruptcy Code, any claim for damages "arising from the purchase or sale" of a security of the debtor are "subordinated to all claims or interests that are senior to or equal" to an equity claim represented by such security. In interpreting this statute, the Third Circuit has determined that the legislative intent behind Section 510(b) is "to prevent disappointed shareholders from recovering their investment loss by using fraud . . . to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding." *In re Telegroup, Inc.*, 281 F.3d 133, 142 (3d Cir. 2002). The Court noted that a stockholder assumed the risk of business failure and, as a result, is the appropriate party, rather than general unsecured creditors, to bear the risk of "unlawful conduct on the debtor's part that caused the stock's value to drop," including fraud. *Id.* at 141, 143. Furthermore, the Third Circuit has interpreted the statute broadly to hold that claims of both fraud and other illegality in the issuance and post-issuance of a security constitute claims "aris[ing] from the purchase or sale." *Id.* at 140; *see also In re Montgomery Ward Holding Corp.*, 2001 WL 1752566, at *7 (Bankr. D. Del. Jan. 16, 2001) (holding that a claim arises from the "purchase or sale" of a security if there is "an allegation of fraud in the purchase, sale or issuance of the . . . instrument").

27. Kayamori asserts Claim 3974 arising under the SPA—a clear attempt to avoid subordination of an equity claim pursuant to section 510(b) of the Bankruptcy Code. To the extent that Claim 3974 seeks damages in connection with the sale of FTX Consideration Shares, any such portion of the Claim should be treated as an equity claim.

### C. Kayamori Fails To State A Claim For Breach Of Contract.

28. Even if Kayamori did not waive his claims—and he did—Kayamori's claim for breach of the SPA should be disallowed. Kayamori alleges that the Debtors breached Schedule

6, Part B, § 7 and § 7.2 of the SPA, which state that the Debtors' representations and warranties are true.

29.    To state a claim for breach of contract, Kayamori must show (1) the existence of a contract, (2) a breach of that contract, and (3) resulting damages. *See* Japan Civil Code art. 415(1), attached as Coverick Decl. Ex. 6; *see also Kuroda* v. *SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009) (listing substantially similar elements under Delaware law). The damages a plaintiff may claim are limited to damages that ordinarily would occur as a result of the breach, or foreseeable damages. *See* Japan Civil Code art. 416, attached as Coverick Decl. Ex. 7; *see also Paul* v. *Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (articulating substantially similar standard under Delaware law).

30.    Here, Kayamori claims as damages the cash value of the FTX Consideration Shares still in his possession, the cash value of the Retained Consideration, and some unspecified value representing the fact that "the Debtors . . . deprived [him] of the opportunity to sell the Liquid Shares to [an] Alternative Buyer." Claim 3974 Annex ¶¶ 25–26. He is not entitled to these measures of damages.

31.    First, as explained above, Kayamori's SPA claims arise from the sale of equity, and should therefore be subordinated pursuant to section 510(b) of the Bankruptcy Code.

32.    Second, Kayamori also claims as damages the cash value of the Retained Consideration, which consists of cryptocurrency. The Debtors object to the extent that cryptocurrencies have been assigned specific monetary values in the Estimation Order. Per the Estimation Order, the value of claims based on cryptocurrencies must be measured by specified dollar amounts for the purposes of solicitation, voting, and distribution. *See* Estimation Order ¶ 2. Kayamori did not, and does not, challenge the validity of the Estimation Order. Therefore, to the

extent Kayamori wrongly states the value of the Retained Consideration, the Debtors submit that the value of the Retained Consideration should be measured according to the Estimation Order.

33. Third, to the extent that Kayamori asserts liquidated damages from losing an opportunity to sell his Liquid Shares to an "Alternative Buyer," this vague claim cannot give rise to damages. Kayamori provides no explanation as to the identity of this Alternative Buyer or how much value Kayamori could have received from this "Alternative Buyer." Therefore, Kayamori has failed to plead facts sufficient to state a *prima facie* claim for breach of contract. *See In re Allegheny*, 954 F.2d at 173–74.

### D. Kayamori Fails To Adequately Support Or Plead Distinct Damages For Fraudulent Inducement Of The SPA.

34. Kayamori does not state a claim for fraudulent inducement of the SPA under either Japanese or Delaware law. Under Japanese law, a claim sounding in fraud requires (1) an infringement of the plaintiff's rights or interests, (2) the defendant's intent or negligence, and (3) damages resulting from the infringement. *See* Japanese Civil Code art. 709, attached as Coverick Decl. Ex. 8; *see also Norman* v. *Elkin*, 860 F.3d 111, 130 (3d Cir. 2017) (listing substantially similar elements under Delaware law in addition to the requirement that the plaintiff justifiably relied on the alleged misrepresentation). A claimant must also distinguish his fraud claim from a breach of contract claim. "[T]he damages allegations [for a fraudulent inducement claim] may not simply 'rehash' the damages allegedly caused by the breach of contract." *Norman*, 860 F.3d at 130–31.[6] "Failure to plead separate damages is an independent ground for dismissal."

---

[6] The Debtors are not aware of any Japanese law that differs from Delaware law in this respect. To the extent that Kayamori contends that Japanese law differs, he must bear the burden of proving the substance of Japanese law. *Germaninvestments*, 225 A.3d at 333.

*EZLinks Golf, LLC* v. *PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017). Additionally, fraud claims must be pled with particularity. Fed. R. Civ. P. 9(b).

35. As an initial matter, Kayamori does not provide adequate support for his fraudulent inducement claim that would entitle it to *prima facie* validity. To be afforded *prima facie* validity, Kayamori must allege "facts sufficient to support the claim." *In re Allegheny*, 954 F.2d at 173–74. Kayamori does not plead his fraud claim with the particularity required under Federal Rule of Civil Procedure 9(b)—he does not "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas* v. *Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (finding that allegations met the Rule 9(b) standard when they included the "date, time, and place of [defendants'] conduct and provided a detailed description of that conduct"). Furthermore, where the claim arises from a written document, Kayamori must provide the documents necessary to support the claim. Fed. R. Bankr. P. 3001(c)(1). Kayamori fails to do this; he does not attach, for example, the "Debtor Materials" in which purported misrepresentations were made. Claim 3974 Annex ¶ 11.

36. Moreover, a claimant bringing a fraudulent inducement claim must plead distinct damages from his breach of contract claim, which Kayamori does not do. Kayamori pleads the exact same damages for fraudulent inducement as he does for breach of contract—the cash equivalents of the FTX Consideration Shares and Retained Consideration, and some measure of damages resulting from the loss of a sale to an "Alternative Buyer." "Because [Kayamori] has pleaded materially identical damages . . . [the] Count for fraud must be dismissed because it pleads damages that are simply a 'rehash' of the breach of contract damages." *Norman*, 860 F.3d at 131 (cleaned up).

37. Accordingly, Kayamori's claim for fraudulent inducement should be disallowed and expunged in its entirety.

### E. Kayamori's Request For The Retained Consideration In Kind Should Be Disallowed And Expunged Because He Is Not Entitled To Duplicative Recovery.

38. Kayamori asserts that he is entitled to the Retained Consideration, which consists of certain cryptocurrencies, in kind. Claim 3974 Annex ¶¶ 31–32.

39. Bankruptcy Rule 3007(d) provides that a debtor may object to a claim where the claim "duplicate[s] other claims." Fed. R. Bankr. P. 3007(d)(1). *See In re Hub Holding Corp.*, 2009 WL 8519808, at *1 (Bankr. D. Del. May 27, 2009) (expunging and disallowing duplicative claims). A claimant is not entitled to multiple recoveries for a single liability against a debtor since a claimant is entitled only to a single satisfaction, if at all, of any particular claim of liability against a debtor. *See, e.g.*, *In re Handy Andy Home Improvement Ctrs. Inc.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("[I]t is axiomatic that one cannot recover for the same debt twice."); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed."); *In re Vanguard Nat. Res., LLC*, 2021 WL 220697, at *27 (Bankr. S.D. Tex. Jan. 21, 2021) (ordering "no further payment" on the claim since allowing the claim would constitute an impermissible double-recovery on a satisfied claim); *In re Cont'l Airlines Corp.*, 57 B.R. 845, 853 (Bankr. S.D. Tex. Oct. 1, 1985) ("[T]he Bankruptcy Code does not permit the presentation of two claims and the recovery of double damages for what is essentially one legally compensable claim.").

40. Kayamori's request for the Retained Consideration in kind is at odds with his claim for the cash value of the Retained Consideration as damages for his defective breach of

contract and fraudulent inducement claims. The two conflicting claims cannot both be allowed, and as a result the request for the Retained Consideration in kind should be disallowed.

41. Additionally, as stated above, Kayamori's claim for the Retained Consideration conflicts with the Bankruptcy Code and the Estimation order, which provide that the value of claims for cryptocurrency must be measured by specified dollar amounts for the purposes of solicitation, voting, and distribution. *See* Estimation Order ¶ 2. Kayamori did not, and does not, challenge the validity of the Estimation Order. Like other creditors, Kayamori is not entitled to receive cryptocurrency he is purportedly owed in kind. Rather, the value of the Retained Consideration should be measured in dollars according to the Estimation Order.

**II. Kayamori's Claims For Advisory Fees And Wages Should Be Dismissed Because Kayamori Is An Insider And He Did Not Render Any Actual And Necessary Services To The Debtors.**

**A. Kayamori's Claims For Advisory Fees And Final Payment Should Be Disallowed, Or At The Very Least Reduced, Because Kayamori Is An Insider.**

42. Kayamori asserts a claim for $88,500 in connection with unpaid advisory fees for the period between November 1, 2022 and January 31, 2023 and a claim for the Final Payment of $420,000 against FTX Japan. Claim 4158 Annex ¶ 2(a). However, as an insider, Kayamori is entitled only to the reasonable value of services he provided, which was *nil*, because he performed no work after being placed on leave.

43. An insider is defined to include directors and officers of a debtor, 11 U.S.C. § 101(31)(B), as well as any other person whose relationship with a debtor is "sufficiently close that any transactions between them ought to be subjected to closer scrutiny than those occurring at arm's length." *In re TSIC, Inc.*, 428 B.R. 103, 111 (Bankr. D. Del. 2010) (citing *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 395 (3d Cir. 2009)). The appropriate time at which to determine insider status is the date on which the agreement at issue was made. *See In re TSIC*, 428 B.R. at

112–13 (finding, for fraudulent transfer purposes, the relevant date to determine insider status was date of employment contract—and not date of payment of salary). When an insider submits a claim for services provided, they are only entitled to "the reasonable value of such services." 11 U.S.C. § 502(b)(4).

44. At the time Kayamori executed the Separation Agreement, he was the CEO of FTX Japan. He is therefore an insider, and his claim is limited to the "reasonable value" of services he provided between November 1, 2022 and January 31, 2023. However, Kayamori does not provide any information regarding what services, if any, he provided to Debtors. This is because he in fact provided no services. Indeed, he was placed on administrative leave on or around May 30, 2022, and his access to company accounts and devices was removed, preventing him from working. The reasonable value of Kayamori's "services" is thus zero, and the portions of Claim 4158 asserting entitlements for advisory fees and the Final Payment (totaling $508,500) should be disallowed.

**B. In The Alternative, Kayamori's Claims For Postpetition Advisory Fees And Final Payment Should Be Disallowed As An Administrative Expense Because He Did Not Provide Actual And Necessary Services For The Benefit Of Debtors.**

45. In the alternative, even if Kayamori is not found to be an insider, he is not entitled to payment of the postpetition advisory fees and the Final Payment because he did not render any services that were "actual and necessary."

46. Kayamori asserts the postpetition fees and Final Payment claims under Bankruptcy Code U.S.C. § 507(a)(2), which provides that administrative expenses allowed under Bankruptcy Code § 503(b) are entitled to priority over general unsecured claims. Section 503(b)(1)(A) defines an administrative expense as "the actual, necessary costs and expenses of preserving the estate including . . . wages, salaries, and commissions for services rendered after

the commencement of the case." The services rendered by Kayamori postpetition must have been "beneficial to the debtor" and "actual and necessary." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 315 (3d Cir. 2011).

47. As explained above, Kayamori does not explain what services, if any, he provided that were actual and necessary and beneficial to the Debtors, because he provided none. As such, the claims should be disallowed.

### III. The Indemnification Claims For Legal Fees Should Be Disallowed Because Kayamori Fails To Specify What Legal Services, If Any, Gave Rise To The Claims.

48. Kayamori asserts two claims for indemnification of legal fees.

49. *First*, Kayamori brings a general unsecured non-priority claim for indemnification of legal fees totaling $26,311.84 under the Separation Agreement. Claim 4158 Annex ¶ 2(a). Kayamori states that these legal fees arise from Section 9 of the Separation Agreement, which provides for indemnification for expenses (including reasonable attorney's fees) "arising out of or related to [Kayamori's] performance of" his duties under the Separation Agreement. Claim 4158 Annex ¶ 1(b); Separation Agreement § 9.

50. However, Kayamori provides no basis for this claim and does not explain what activities he undertook in the performance of his duties under the Separation Agreement that utilized legal counsel—in fact, Kayamori provided *no* services to the Debtors following his leave on or around May 30, 2022. Kayamori fails to attach any supporting documents showing the asserted amount of his claim. *See* Fed. R. Bankr. P. 3001(c)(1). Moreover, to the extent that Kayamori seeks legal fees for negotiation of the Separation Agreement, this is plainly impermissible under section 9 of the Separation Agreement. The claim should be disallowed as a result.

51.     *Second*, Kayamori also asserts a claim for legal fees totaling $20,187.94 under the SPA.  Claim 3974 Annex ¶¶ 33–35.  Kayamori states that this claim arises from section 9.3 of the SPA, which provides for indemnification for expenses "resulting from, relating to or arising out of any breach" of the Debtor's representations and warranties as well as the Debtor's breach of its obligations.  Claim 3974 Annex ¶ 33; SPA § 9.3.  However, Kayamori does not specify what legal services were performed that would allow recovery, and the Debtors cannot ascertain an answer from the proof of claim.  *See* Fed. R. Bankr. P. 3001(c)(1).

52.     Moreover, this claim for legal fees arises out of the SPA, which is an agreement for the sale of Liquid stock with FTX common stock as consideration.  It therefore falls within the ambit of section 510(b) of the Bankruptcy Code.  *See, e.g.*, *In re Touch Am. Holdings, Inc.*, 381 B.R. 95, 106 (Bankr. D. Del. 2008) (subordinating indemnification claim under section 510(b)).  It should be subordinated.

### Reservation of Rights

53.     This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

**Notice**

54.   Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure; and (i) Kayamori.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

55.   For the foregoing reasons, the Court should enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, disallowing and expunging Claim 3974 against FTX in its entirety, or in the alternative reducing Claim 3974 to reflect the dollar value of cryptocurrencies determined in this Court's Estimation Order and subordinate Claim 3974 as an equity claim under section 510(b) of the Bankruptcy Code; and disallowing and expunging Claim 4158 against FTX Japan in its entirety, or in the alternative reducing Claim 4158 to reflect the reasonable value, and the actual and necessary costs, of services provided by Kayamori to the Debtors.

| | |
|---|---|
| Dated: July 10, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>        brown@lrclaw.com<br>        pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>        bromleyj@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        dunnec@sullcrom.com<br>        crokej@sullcrom.com<br>        kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |