**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date: September 12, 2024 at 1:00 p.m. ET<br>Obj. Deadline: August 12, 2024 at 4:00 p.m. ET |

**DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY**
**SETH MELAMED**

> **THIS OBJECTION OBJECTS TO CERTAIN CLAIMS. THE CLAIMANT RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE.**

FTX Trading Ltd. ("FTX"), FTX Japan Holdings K.K. ("FTX Japan Holdings"), FTX Japan K.K. ("FTX Japan"), Quoine Pte Ltd. ("FTX Singapore"), and their affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this objection (the "Objection"), pursuant to sections 502 and 510(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to proofs of claim numbers 3244, 3353, 3385, 3956, 4470, and 4578 (collectively, the "Claims" and each a "Claim") filed by Seth Melamed. In connection with this Objection, the Debtors submit the concurrently filed *Declaration of Steven P. Coverick* (the "Coverick Decl.") and the exhibits attached thereto. The

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Debtors seek to (i) disallow and expunge Claim 3385 in its entirety, or in the alternative reduce Claim 3385 to reflect the dollar value of cryptocurrencies determined in this Court's *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090] (the "Estimation Order") and subordinate Claim 3385 as an equity claim under section 510(b) of the Bankruptcy Code; and (ii) disallow and expunge Claims 3244, 3353, 3956, 4470, and 4578 in their entirety, or in the alternative reduce the five Claims to reflect the reasonable value of services provided by Melamed. In support of the Objection, the Debtors respectfully state as follows:

## Background

1. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2. Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3. On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "<u>Non-Customer Bar Date Order</u>"). The Non-Customer Bar Date Order established, among other things, the deadline of June 30, 2023 to file non-Customer Claims[2] against the Debtors.

4. To date, approximately 3,403 non-customer proofs of claim have been filed against the Debtors, asserting more than $483 billion.

5. On June 30, 2023, Melamed filed Claim 3244 against FTX Japan Holdings, Claim 3353 against FTX Singapore, Claim 3385 against FTX, Claim 3956 against FTX Japan, Claim 4470 against FTX Japan, and Claim 4578 against FTX Japan Holdings.

### Facts Specific to Relief Requested

6. Melamed was the Chief Operating Officer ("<u>COO</u>") and a director of FTX Japan, and a director of FTX Singapore, prior to commencement of the Chapter 11 Cases, and continues to occupy all roles.

7. Prior to becoming COO of FTX Japan, Melamed was COO and a shareholder of Liquid Group, Inc. Coverick Decl. Ex. 1. FTX acquired Liquid Group Inc. on November 19, 2021, at which time FTX, Melamed, and others executed the Agreement for the Sale and Purchase of Shares, Stock Options and Warrants in Liquid Group Inc. (Major

---

[2] "Customer Claims" means a claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, or federal or state law, rule or regulation, common law or otherwise) held by any person (as defined in section 101(41) of the Bankruptcy Code) or entity (as defined in section 101(15) of the Bankruptcy Code) against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX exchange as of the Petition Date or (b) any other investment or trading activities on any FTX exchange.

Shareholders) (as may be amended, modified or supplemented from time to time, the "SPA," attached as Coverick Decl. Ex. 2.) Pursuant to the SPA, among other things, Melamed sold 12,203 shares of Liquid Group Inc. common stock and 510 stock options of Liquid Group Inc. to FTX. In exchange, FTX agreed to pay Melamed consideration worth a total of $44,516,390.24, consisting of:

> a. 1,019,070 shares of FTX common stock valued at $26,709,834.14 (the "FTX Consideration Shares");
>
> b. $8,903,278.05 in cash (the "Cash Payment"); and
>
> c. $8,903,278.05 worth of cryptocurrency (the "Retained Consideration").[3]

Claim 3385 Annex ¶ 9; SPA Schedule 2, at 35–36.

8. On April 4, 2022, FTX paid Melamed the Cash Payment and transferred the FTX Consideration Shares. FTX retained the Retained Consideration as security against any indemnification obligations that may arise under the SPA. Section 4.2 of the SPA provides that half of the Retained Consideration shall be released by FTX to Melamed on April 4, 2023 and the remainder on April 4, 2024. Claim 3385 Annex ¶ 9; SPA § 4.2.

9. In Claim 3385 against FTX, Melamed seeks total damages of "not less than" $35,613,112.19 for breach of the SPA and fraudulent inducement of the SPA.[4] Claim 3385 Annex ¶ 4. This purported damages figure represents the cash value of the FTX Consideration Shares and the Retained Consideration. *See* Claim 3385 Annex ¶ 4; SPA Schedule 2, at 35–36. He also

---

[3] The Retained Consideration consisted of 39.132 BTC, 560.48 ETH, 11,844.98 SOL, and 47,532 FTT. SPA Schedule 2, at 37.

[4] Claim 3385 states that Melamed purports to bring a claim for "fraud in the inducement of Claimant to sign the SPA and in the execution, performance and breach of the SPA." Claim 3385 Annex ¶ 4. The remainder of Claim 3385 appears to purport to state a claim for fraudulent inducement. The Debtors therefore understand Melamed to only bring a fraudulent inducement claim, but reserve the right to object to any future claim Melamed may purport to bring (whether sounding in fraud or otherwise).

asserts entitlement to the Retained Consideration and certain indemnification.[5] Claim 3385 Annex ¶ 4. Melamed purports to state his claims under theories of Japanese law and Delaware law, "to the extent applicable." Claim 3385 Annex ¶ 13.

10. On March 31, 2022, Melamed and FTX Japan Holdings, on behalf of itself and its wholly owned subsidiary FTX Japan, entered into a management agreement (as may be amended, modified or supplemented from time to time, the "<u>Management Agreement</u>," attached as Coverick Decl. Ex. 3). Claim 4578 Annex ¶ 1(a). Under the Management Agreement, Melamed agreed to serve as (i) a representative director and COO of FTX Japan and (ii) a director of FTX Singapore. Management Agreement § 3.1(a)–(b). FTX Singapore is a subsidiary of FTX Japan Holdings. Management Agreement at 1. In return, FTX Japan Holdings agreed to pay Melamed a monthly "services fee" of $37,500, a monthly housing allowance of $3,500, and a monthly childcare allowance of $6,000. Management Agreement § 4.1. Starting September 1, 2022, the Management Agreement contemplated that Melamed would split his time fulfilling his duties to FTX Japan and FTX Singapore. Management Agreement § 4.2. So long as Melamed performed services for FTX Japan, FTX Japan would pay Melamed 30% of the total services fee (or $11,250 per month) and 100% of the housing and childcare allowances; so long as Melamed performed services for FTX Singapore, FTX Japan Holdings would "cause FTX Singapore to pay" Melamed the remaining 70% of the services fee (or $26,250 per month). Management Agreement § 4.2(a)–(b).

11. In Claim 4578 against FTX Japan Holdings, Melamed contends that, pursuant to the Management Agreement, he was entitled to monthly compensation of $26,250

---

[5] Melamed does not specify an amount of damages for his indemnification claim. The Debtors thus treat this claim as unliquidated and do not object to it at this point in time. The Debtors, however, reserve the right to object to the indemnification claim in the future.

from FTX Singapore. Melamed contends that he provided services in accordance with the Management Agreement, but did not receive the agreed-upon payment of $26,250 per month from FTX Singapore for the months of September and October 2022, totaling $52,500. Claim 4578 Annex ¶ 1(b). Melamed filed two other substantially similar Claims: Claim 3353 against FTX Singapore and Claim 3956 against FTX Japan, both seeking identical damages as Claim 4578.

12. Finally, Melamed alleges, without substantiation, that on or around October 3, 2022, either FTX Japan Holdings or FTX Japan agreed to pay Melamed a $200,000 bonus payment (the "Bonus Payment"). In Claim 3244 against FTX Japan Holdings and Claim 4470 against FTX Japan, Melamed seeks payment of the Bonus Payment, which was allegedly incurred, but not paid, prepetition. Claim 3244 Annex ¶ 1(c)–(d); Claim 4470 Annex ¶ 1(c)–(d).

13. Melamed's Claims are summarized as follows:

| Claims | Amount (Per Claim) | Claim Nos. |
|---|---|---|
| Damages for breach of contract, fraudulent inducement, indemnification, and Retained Consideration | $35,613,112.19 | 3385 against FTX |
| Services fee from September and October 2022 | $52,500 | 3353 against FTX Singapore, 3956 against FTX Japan, 4578 against FTX Japan Holdings |
| Bonus Payment | $200,000 | 3244 against FTX Japan Holdings, 4470 against FTX Japan |

**Jurisdiction and Venue**

14. The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought are sections 502 and 510(b) of the

Bankruptcy Code and Bankruptcy Rules 3001 and 3007.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Basis for Relief

15. Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim.  11 U.S.C. § 502(b).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b).

16. While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid.").  The burden of persuasion with respect to the claim is always on the claimant, *see id.* at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity, *see, e.g.*, *In re Jorczak*, 314 B.R. 474, 481–

82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).

17.     Melamed's Claims seek a total of more than $36,170,612.19 against the Debtors in connection with claims arising under the SPA and Melamed's employment.  For the following reasons and others that will be demonstrated following discovery and a hearing, the Court should (i) disallow and expunge Claim 3385 in its entirety, or in the alternative reduce Claim 3385 to reflect the dollar value of cryptocurrencies determined in the Estimation Order and subordinate Claim 3385 as an equity claim under section 510(b) of the Bankruptcy Code; and (ii) disallow and expunge Claims 3244, 3353, 3956, 4470, and 4578 in their entirety, or in the alternative reduce the five Claims to reflect the reasonable value of services provided by Melamed.

**I.     Melamed's Claims Related To The SPA Should Be Disallowed.**

18.     Melamed asserts breach of the SPA, fraudulent inducement, and "impermissible retention of the Retained Consideration" in Claim 3385 against FTX.  For the reasons set forth below, Melamed's Claim 3385 against FTX should be disallowed and expunged in its entirety, or in the alternative reduced to reflect the dollar value of cryptocurrencies determined in the Court's Estimation Order and subordinated as an equity claim under section 510(b) of the Bankruptcy Code.

**A.     Melamed's Claim 3385 Is An Impermissible Attempt To Raise A Subordinated Equity Claim As A Non-Customer Claim.**

19.     Under section 510(b) of the Bankruptcy Code, any claim for damages "arising from the purchase or sale" of a security of the debtor are "subordinated to all claims or interests that are senior to or equal" to an equity claim represented by such security.  In interpreting this statute, the Third Circuit has determined that the legislative intent behind section 510(b) is "to prevent disappointed shareholders from recovering their investment loss by using fraud . . . to

bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding." *In re Telegroup, Inc.*, 281 F.3d 133, 142 (3d Cir. 2002).  The Court noted that a stockholder assumed the risk of business failure and, as a result, is the appropriate party, rather than general unsecured creditors, to bear the risk of "unlawful conduct on the debtor's part that caused the stock's value to drop," including fraud.  *Id.* at 141, 143.  Furthermore, the Third Circuit has interpreted the statute broadly to hold that claims of both fraud or other illegality in the issuance and post-issuance of a security constitute claims "aris[ing] from the purchase or sale."  *Id.* at 140; *see also In re Montgomery Ward Holding Corp.*, 2001 WL 1752566, at *7, (Bankr. D. Del. Jan. 16, 2001) (holding that a claim arises from the "purchase or sale" of a security if there is "an allegation of fraud in the purchase, sale or issuance of the . . . instrument").

20.    Melamed asserts Claim 3385 for the cash value of the FTX Consideration Shares and the Retained Consideration, Claim 3385 Annex ¶ 4—a clear attempt to avoid subordination of an equity claim pursuant to section 510(b) of the Bankruptcy Code.  To the extent that Claim 3385 seeks damages arising from the SPA, any such portion of the Claim should be treated as an equity claim.

### B. Melamed Fails To State A Claim For Breach Of Contract.

21.    Melamed alleges that the Debtors breached Schedule 6, Part B, § 7 and § 7.2 of the SPA, which states that the Debtors' representations and warranties are true.  Claim 3385 Annex ¶¶ 16–18; SPA Schedule 6, Part B, § 7; SPA § 7.2.

22.    To state a claim for breach of contract, Melamed must show (1) the existence of a contract, (2) a breach of that contract, and (3) resulting damages.  *See* Japan Civil Code art. 415(1), attached as Coverick Decl. Ex. 4; *see also Kuroda* v. *SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009) (listing substantially similar elements under Delaware law).  The damages a plaintiff may claim are limited to damages that would ordinarily occur as a result of the

breach, or foreseeable damages.  *See* Japan Civil Code art. 416, attached as Coverick Decl. Ex. 5; *see also Paul* v. *Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (articulating substantially similar standard under Delaware law).

23.  Here, Melamed claims as breach of contract damages the cash value of the FTX Consideration Shares, equal to $26,709,834.14 (equivalent to 1,019,070 shares), and the cash value of the Retained Consideration, equal to $8,903,278.05.  He is not entitled to these damages.

24.  As stated above, Melamed's breach of contract claim arises from the sale of equity, and should therefore be subordinated pursuant to section 510(b) of the Bankruptcy Code.

25.  Furthermore, Melamed also claims as damages the cash value of the Retained Consideration, which consists of cryptocurrency.  The Debtors object to the extent that cryptocurrencies have been assigned specific monetary values in the Estimation Order.  Per the Estimation Order, the value of claims based on cryptocurrencies must be measured by specified dollar amounts for the purposes of solicitation, voting, and distribution.  *See* Estimation Order ¶ 2.  Melamed did not, and does not, challenge the validity of the Estimation Order.  Therefore, to the extent Melamed wrongly states the value of the Retained Consideration, the Debtors submit that the value of the Retained Consideration should be measured according to the Estimation Order.

### C. Melamed Fails To Adequately Support Or Plead Distinct Damages For Fraudulent Inducement Of The SPA.

26.  Melamed does not state a claim for fraudulent inducement of the SPA under either Japanese or Delaware law.  A claim sounding in fraud requires (1) an infringement of the plaintiff's rights or interests, (2) the defendant's intent or negligence, and (3) damages resulting from the infringement.  *See* Japanese Civil Code art. 709, attached as Coverick Decl. Ex. 6; *see also Norman* v. *Elkin*, 860 F.3d 111, 130 (3d Cir. 2017) (listing substantially similar elements under Delaware law in addition to the requirement that the plaintiff justifiably relied on the alleged

misrepresentation). A claimant must additionally distinguish his fraud claim from a breach of contract claim. "[T]he damages allegations [for a fraudulent inducement claim] may not simply 'rehash' the damages allegedly caused by the breach of contract." *Norman* v. *Elkin*, 860 F.3d 111, 130–31 (3d Cir. 2017).[6] "Failure to plead separate damages is an independent ground for dismissal." *EZLinks Golf, LLC* v. *PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017). Additionally, fraud claims must be pled with particularity. Fed. R. Civ. P. 9(b).

27. As an initial matter, Melamed does not provide adequate support for his fraudulent inducement claim that would entitle it to *prima facie* validity. To be afforded *prima facie* validity, Melamed must allege "facts sufficient to support the claim." *In re Allegheny*, 954 F.2d at 173–74. Melamed does not plead his fraud claim with the particularity required under Federal Rule of Civil Procedure 9(b)—he does not "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas* v. *Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (finding that allegations met the Rule 9(b) standard when they included the "date, time, and place of [defendants'] conduct and provided a detailed description of that conduct"). Furthermore, where the claim arises from a written document, Melamed must provide the documents necessary to support the claim. Fed. R. Bankr. P. 3001(c)(1). Melamed fails to do this; he does not attach, for example, the "Debtor Materials" in which purported misrepresentations were made. Claim 3385 Annex ¶ 11.

28. Moreover, a claimant bringing a fraudulent inducement claim must plead distinct damages from his breach of contract claim, which Melamed does not do. Melamed pleads the exact same damages for fraudulent inducement as he does for breach of contract—the cash

---

[6] The Debtors are not aware of any Japanese law that differs from Delaware law in this respect. To the extent that Melamed contends that Japanese law differs, he must bear the burden of proving the substance of Japanese law. *Germaninvestments AG* v. *Allomet Corp.*, 225 A.3d 316, 333 (Del. 2020).

equivalent of the FTX Consideration Shares and Retained Consideration. "Because [Melamed] has pleaded materially identical damages . . . [the] Count for fraud must be dismissed because it pleads damages that are simply a 'rehash' of the breach of contract damages." *Norman*, 860 F.3d at 131 (cleaned up).

29. Accordingly, Melamed's claim for fraudulent inducement should be disallowed and expunged in its entirety.

**D. Melamed's Request For The Retained Consideration In Kind Should Be Disallowed And Expunged Because He Is Not Entitled To Duplicative Recovery.**

30. Melamed asserts that he is entitled to the Retained Consideration, which consists of certain cryptocurrencies, in kind. Claim 3385 Annex ¶ 30.

31. Bankruptcy Rule 3007(d) provides that a debtor may object to a claim where the claim "duplicate[s] other claims." Fed. R. Bankr. P. 3007(d)(1). *See In re Hub Holding Corp.*, 2009 WL 8519808, at *1 (Bankr. D. Del. May 27, 2009) (expunging and disallowing duplicative claims). A claimant is not entitled to multiple recoveries for a single liability against a debtor since a claimant is entitled only to a single satisfaction, if at all, of any particular claim of liability against a debtor. *See, e.g.*, *In re Handy Andy Home Improvement Ctrs. Inc.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("[I]t is axiomatic that one cannot recover for the same debt twice."); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed."); *In re Vanguard Nat. Res., LLC*, 2021 WL 220697, at *27 (Bankr. S.D. Tex. Jan. 21, 2021) (ordering "no further payment" on the claim since allowing the claim would constitute an impermissible double-recovery on a satisfied claim); *In re Cont'l Airlines Corp.*, 57 B.R. 845, 853 (Bankr. S.D. Tex. Oct. 1, 1985) ("[T]he Bankruptcy Code does not permit the presentation of two

claims and the recovery of double damages for what is essentially one legally compensable claim.").

32. Melamed's request for the Retained Consideration in kind is at odds with his claim for the cash value of the Retained Consideration as damages to his defective breach of contract and fraudulent inducement claims. The two conflicting claims cannot both be allowed, and as a result the request for the Retained Consideration in kind should be disallowed.

33. Additionally, as stated above, Melamed's claim for the Retained Consideration conflicts with the Bankruptcy Code and the Estimation order, which provide that the value of claims for cryptocurrency must be measured by specified dollar amounts for the purposes of solicitation, voting, and distribution. *See* Estimation Order ¶ 2. Melamed did not, and does not challenge the validity of the Estimation Order. Like other creditors, Melamed is not entitled to receive cryptocurrency he is purportedly owed in kind. Rather, the value of the Retained Consideration should be measured in dollars according to the Estimation Order.

**II.    Melamed's Claims For Salary And Bonus Payment Should Be Disallowed, Or At The Very Least Reduced, Because Melamed Is An Insider.**

34. Melamed asserts two Claims, Claims 3244 and 4470, for a $200,000 Bonus Payment purportedly agreed to on October 3, 2022. Melamed also asserts three separate Claims, Claims 3353, 3956 and 4578, for $52,500 in connection with unpaid salary under the Management Agreement for services performed in September and October 2022.

35. *First,* Melamed's Claims for his purported Bonus Payment are baseless: Claims 3244 and 4470 contain *no* evidentiary support whatsoever, and should be disallowed as a result. *See* Fed. R. Bankr. P. 3001(c)(1) (requiring attachment of supporting documentary evidence where a claim is based on such documentary evidence). Indeed, Melamed provides no details or support regarding which entity agreed to pay him the alleged Bonus Payment, and the

two claims are difficult to reconcile—Claim 3244 asserts that FTX Japan Holdings owes him the Bonus Payment, while Claim 4470 asserts that FTX Japan owes him the Bonus Payment. Without further information, Claims 3244 and 4470 should be disallowed.

36. *Second,* Claim 3353 against FTX Singapore and Claim 3956 against FTX Japan, for salary and wages (or "services fees") arising from section 4.2(b) of the Management Agreement totaling $52,500 each, should both be disallowed and expunged in their entirety. Claim 3353 should be disallowed and expunged because FTX Singapore is not a party to the Management Agreement with Melamed and owes no obligations to Melamed. Rather, the Management Agreement provides that FTX Japan Holdings, as party to that agreement, must "cause FTX Singapore to pay" Melamed the salary at issue here. Claim 3956 should be similarly be disallowed and expunged because FTX Japan does not owe Melamed any amount under section 4.2(b) of the Management Agreement, which explicitly provides that *FTX Japan Holdings* must cause *FTX Singapore* to pay Melamed the salary at issue. Claim 3956 therefore conflicts with the express language of the Management Agreement. *Compare* Claim 3956 Annex ¶ 1 ("[FTX Japan] agreed to cause [FTX Singapore] to pay . . . $26,250 [per month.]") *with* Management Agreement § 4.2(b) ("[FTX Japan Holdings] shall cause FTX Singapore to pay to [Melamed] . . . seventy percent (70%) of the [s]ervices [f]ees, payable monthly."). As a result, Claims 3353 and 3956 should be disallowed and expunged in their entirety.

37. *Third*, notwithstanding the above, all five Claims, Claims 3244, 3353, 3956, 4470 and 4578, for the Bonus Payment and unpaid salary should be disallowed, or in the alternative reduced because Melamed is an insider. As an insider, Melamed is entitled only to the reasonable value of services he provided. An insider is defined to include directors and officers of a debtor, 11 U.S.C. § 101(31)(B), as well as any other person whose relationship with a debtor is

"sufficiently close that any transactions between them ought to be subjected to closer scrutiny than those occurring at arm's length." *In re TSIC, Inc.*, 428 B.R. 103, 111 (Bankr. D. Del. 2010) (citing *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 395 (3d Cir. 2009)). When an insider submits a claim for services provided, he is only entitled to "the reasonable value of such services." 11 U.S.C. § 502(b)(4).

38. At all relevant times, Melamed was the COO and a director of FTX Japan and a director of FTX Singapore. He is therefore a quintessential insider, *see* 11 U.S.C. § 101(31)(B), and his Claims for the Bonus Payment and salaries (or "services fees") are limited to the "reasonable value" of services he provided. Notably, Melamed does not provide **any** information regarding what services he provided to Debtors that would be reasonably valued at $52,500 for two months of work and a $200,000 Bonus Payment. His claim therefore should not be entitled to *prima facie* validity. *See In re Allegheny*, 954 F.2d at 173–74 (affording a claim *prima facie* validity only when a claimant has alleged "facts sufficient to support the claim").

39. As such, all five of Melamed's Claims for the Bonus Payment and salary should be disallowed and expunged in their entirety for the reasons set forth above, or in the alternative such Claims should be reduced to reflect the reasonable value of services provided by Melamed.

### Reservation of Rights

40. This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise

or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## Notice

41. Notice of this Objection has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure; and (i) counsel to Melamed. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

42. For the foregoing reasons, the Court should enter the Order, substantially in the form attached hereto as Exhibit A, disallowing and expunging Claim 3385 in its entirety, or in the alternative reducing Claim 3385 to reflect the dollar value of cryptocurrencies determined in this Court's Estimation Order and subordinating Claim 3385 as an equity claim under section 510(b) of the Bankruptcy Code; and disallowing and expunging Claims 3244, 3353, 3956, 4470, and 4578 in their entirety, or in the alternative reducing the five Claims to reflect the reasonable value of services provided by Melamed.

| | |
|---|---|
| Dated: July 10, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>        brown@lrclaw.com<br>        pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>Jacob M. Croke (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>        bromleyj@sullcrom.com<br>        gluecksteinb@sullcrom.com<br>        dunnec@sullcrom.com<br>        crokej@sullcrom.com<br>        kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |