**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No: 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing: August 15, 2024 at 1:00 p.m. (ET)**<br>**Objection Deadline: July 26, 2024 at 4:00 p.m. (ET)** |

**EDEN PROTOCOL LIMITED'S MOTION**
**FOR ENTRY OF AN ORDER (I) GRANTING RELIEF FROM**
**THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1), (II) WAIVING**
**BANKRUPTCY RULE 4001, AND (III) GRANTING RELATED RELIEF**

Eden Protocol Limited ("Eden Protocol"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting Eden Protocol relief from the automatic stay to terminate the Token Purchase Agreement (the "TPA") entered into with Alameda Ventures Limited[2] ("Alameda" or "Purchaser," and collectively with Eden Protocol, the "Parties"), a true and correct copy of the which is attached hereto as **Exhibit B**. In support of the Motion, Eden Protocol relies upon and incorporates by reference the Declaration of Diana Munoz, attached hereto as **Exhibit C** (the "Munoz Declaration"), and respectfully states as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] The bankruptcy petition for debtor Maclaurin Investments Ltd. ("Maclaurin") states that it formerly was known as Alameda. Eden Protocol never received notice of a name change or transfer of assets from Alameda to Maclaurin. *See* Munoz Declaration (as defined herein) at ¶ 1 n.3.

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Delaware has jurisdiction to consider this Motion under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), Eden Protocol consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are section 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rules 4001-1 and 9013-1.

**STATEMENT OF FACTS**

**I.    The Token Purchase Agreement**

4. In or around October 2021, the Parties entered into the TPA. *See* Munoz Declaration at ¶ 5.

5. The TPA provides, in relevant part, for Eden Protocol to issue 16,666,667 future token rights (the "Tokens") to Purchaser in exchange for $500,000.00 (the "Purchase Price"). *See generally* TPA.

6. Pursuant to the TPA, 8.3% of the Tokens are to be released to the Purchaser on the last day of the month, each month, starting 12 months after the "Network Launch" (as defined in the TPA). *See* TPA, Ex. A, Lockup and Delivery Schedule.

7. The TPA provides that Eden Protocol may terminate the TPA, in its sole discretion, if Purchaser "does not meet [Eden Protocol's] requirements for purchasers." TPA, § 2.2.

8. As part of the consideration provided for Eden Protocol's entry into the TPA, Purchaser represented and warranted that, among other things, (i) it would satisfy the laws of its jurisdiction related to the purchase of the Tokens and (ii) no payment related to the purchase of the Tokens would derive from illegal activities. TPA, §§ 5.8, 5.11.1.

9. The TPA cannot be transferred "by the Purchaser without the prior written consent of [Eden Protocol]." TPA, § 7.4.

10. Under the TPA, prior to Eden Protocol delivering any Tokens, Purchaser must, among other things: (i) provide Eden Protocol with an "SPL-compliant" network address; (ii) complete and deliver any and all AML and KYC Forms (each as defined in the TPA); and (iii) comply with applicable laws in effect, including applicable anti-money laundering laws. *See* TPA, §§ 3.2, 7.7. As of the date hereof, Purchaser has not satisfied the first two of these conditions. *See* Munoz Declaration at ¶ 9.

11. In late October 2021 the Purchase Price was funded. *See* Munoz Declaration at ¶ 7.

12. The Network Launch has not yet occurred. *See* Munoz Declaration at ¶ 8.

**II. The Chapter 11 Proceedings**

13. On November 11 and November 14, 2022, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") filed with the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

14. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022. *See* D.I. 128.

15.     On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. *See* D.I. 231.

16.     Maclaurin's Schedules of Assets and Liabilities list the following as an asset of Maclaurin's estate: "Token Receivable: Euclid Labs, Inc., (Token: TBD; Qty: 16,666,666.93333; Funded Amount: $500,000)." *See* D.I. 1035, 2048, and 2371 (collectively and as amended, the "Schedules"). The Schedules indicate that the value of Maclaurin's interest in that asset is "Undetermined." *Id*. The TPA is not listed on the Schedules as an executory contract or unexpired lease. *Id.*

### III. Allegations of Misconduct

17.     Prior to the Petition Date, the Debtors' business was plagued by "a pervasive lack of records and other evidence . . . of where or how fiat currency and digital assets could be found or accessed, and extensive commingling of assets." *See* D.I. 1242-1. The parties in control "stifled dissent, commingled and misused corporate and customer funds, lied to third parties about their business, joked internally about their tendency to lose track of millions of dollars in assets, and thereby caused the [Debtors] to collapse as swiftly as [they] had grown." *Id*. These extensive and systemic failures indicate that Purchaser almost certainly made false representations and warranties when executing the TPA. Indeed, during these Chapter 11 Cases, several of the Debtors' former principals have been accused and convicted of fraud related to the Debtors' business. *See* D.I. 154 (entering into the record in the Chapter 11 Cases true and correct copies of the (i) Superseding Indictment against Samuel Bankman-Fried in *United States v. Bankman Fried*, 22 cr-00673 (S.D.N.Y. 2022),[3] (ii) transcript of Nishad Singh's plea deal in *United States v. Singh*,

---

[3] *See also* Allison Morrow, *Sam Bankman-Friedman Found Guilty of Seven Counts of Fraud in Stunning Fall for Former Crypto Billionaire*, CNN, https://www.cnn.com/2023/11/02/business/ftx-sbf-fraud-trial-verdict/index.html

6

22 cr-00673 (S.D.N.Y. 2022), (iii) transcript of Caroline Ellison's plea in *United States v. Ellison*, 22 cr-00673 (S.D.N.Y. 2022), and (iv) transcript of Zixiao "Gary" Wang's plea in *United States v. Wang*, 22 cr-00673 (S.D.N.Y. 2022)).

## **LEGAL ANALYSIS**

18. Given the allegations against the Debtors and the high likelihood that Purchaser made material misrepresentations when entering into the TPA, Eden Protocol submits that it is entitled to stay relief to terminate the TPA, which it is permitted to do in *its sole discretion* under the unambiguous language of the TPA. Without such relief, Eden Protocol would suffer significant reputational and economic harm given any association between the Debtors and the Tokens. To the extent the Motion is granted, Eden Protocol would return the Purchase Price in full to Maclaurin.

**I.    Standard for Relief from the Automatic Stay**

19. A bankruptcy filing imposes an automatic stay against any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362(a)(1), (a)(4). Section 362(d)(1), however, authorizes bankruptcy courts to lift the automatic stay "for cause." *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997). The Bankruptcy Code does not define "cause," so courts may "consider what constitutes cause based on the totality of the circumstances in each case." *Id.* (*citing Trident Assocs. v. Metro. Life Ins. Co. (In re Trident Assocs.)*, 52 F.3d 127 (6th Cir. 1995)).

20. "The party seeking relief from the automatic stay bears the burden of establishing a *prima facie* case of cause." *In re Ashcraft*, No. 20-12725 (BLS), 2024 WL 1986078, at *2

---

(Nov. 3, 2023, 7:04 AM); Lauren del Valle and Allison Morrow, *Sam Bankman-Friedman Sentenced to 25 Years in Federal Prison*, CNN, https://edition.cnn.com/2024/03/28/business/ftx-sam-bankman-fried-sentencing/index.html (Mar. 28, 2024, 1:04 PM).

7

(Bankr. D. Del. May 3, 2024) (quoting *Genrette v. Bank of New York Mellon Tr. Co. (In re Genrette)*, No. 180920 (MN), 2019 WL 4740053, at *3 (D. Del. Sept. 27, 2019). "The movant may establish cause by showing that the balance of hardships from not obtaining relief tips significantly in its favor." *Ashcraft*, 2024 WL 1986078, at *2. This Court has developed a three-prong test to determine whether to grant relief from the stay, which assesses whether: (i) any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (ii) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) the creditor has a probability of prevailing on the merits. *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).

## II. Cause Exists to Terminate the Automatic Stay Under 11 U.S.C. § 362(d)(1)

### A.     Lack of Prejudice to Maclaurin and its Estate

21.     Eden Protocol submits that Maclaurin would not be prejudiced by lifting the stay because, assuming the Proposed Order is entered, it will receive the entirety of the Purchase Price - $500,000. Although Purchaser funded the Purchase Price so that it could obtain the Tokens, it is not contractually entitled to them because it does not meet Eden Protocol's "requirements for purchasers" under the TPA. Moreover, as discussed herein, Purchaser violated and did not satisfy other provisions the TPA. If Maclaurin were not to receive the Tokens, it would be because of the contractual arrangement entered into by the Parties, not the result of any prejudice imposed on Maclaurin or its estate. Accordingly, the first factor weighs in factor of Eden Protocol.

### B.     Hardship to Eden Protocol

22.     If the stay is maintained and Eden Protocol is prevented from terminating the TPA, Eden Protocol would be subject to immense hardship. *See* Munoz Declaration at ¶ 10. If Maclaurin, any Debtor entity, or any of their affiliates were permitted to obtain the Tokens (in violation of the TPA), Eden Protocol's reputation and the success of the Network Launch would

be materially impacted due to an association with the above-described illegal activities. *Id.* Moreover, not only could the value of the Tokens be materially depressed, but the other tokens and assets of Eden Protocol and its affiliates could be negatively impacted. *Id.* Simply put, allowing Maclaurin to obtain the benefits of the TPA, despite the Purchaser's misrepresentations, and Eden Protocol's sole discretion to terminate the TPA, would set a vastly inequitable precedent for contract counterparties. Conversely, the hardship Maclaurin might endure by not receiving the Tokens, if any, is offset by the proposed return of the Purchase Price. Therefore, because the hardship Eden Protocol would endure if the stay were maintained substantially outweighs any perceived hardship to Maclaurin, the second factor is satisfied as well.

        **B.**      **Probability of Prevailing on the Merits**

23.    With respect to the third factor, Eden Protocol believes it is likely to succeed on the merits of the relief sought. Indeed, concurrently with the execution of the TPA, Purchaser already was in breach. For example, Purchaser almost certainly provided false representations and warranties to Eden Protocol, including that "no payment or other transfer of value to [Eden Protocol] is or will be derived from . . . directly or indirectly, any illegal activities" and that it had "satisfied itself as to the full observance of the laws of its jurisdiction in connection with the purchase of the Interests." TPA, §§ 5.11.2, and 5.8. Moreover, the Debtors themselves acknowledge that their business was rife with a lack of management, governance, financial, accounting, digital asset management, information security, and cybersecurity controls. *See* D.I. 1242. Similarly, although Section 7.4 of the TPA significantly limits Purchaser's rights to assign the contract, Purchaser seems to have either changed its name to Maclaurin or assigned, transferred, or sold its assets to Maclaurin without informing or getting the consent of Eden Protocol. *See* TPA, § 7.4. Importantly, a party's right to cease performing under a contract "if the

9

other party is in material breach is fundamental to any contract where both parties have ongoing performance obligations." *In re Lucre*, 339 B.R. 648, 652 (Bankr. W.D. Mich. 2006). Here, Purchaser's breaches continue and cannot be cured, creating sufficient cause for Eden Protocol to terminate the TPA. But even if the breaches could be cured at this point (they cannot), the TPA can be terminated in Eden Protocol's *sole discretion*. *See* TPA, § 2.2.

24. Moreover, the TPA includes continuing obligations by both Purchaser and Eden Protocol of which failure to complete performance would constitute additional cause for termination. Specifically, Purchaser is obligated to take certain actions prior to delivery of the Tokens, including providing Eden Protocol with an SPL-compliant network address, completing AML and KYC Forms, and completing, executing, and delivering any additional documents required for Eden Protocol to carry out the terms of the TPA and to comply with applicable laws in effect, including applicable anti-money laundering laws. *See* TPA, § 3.2, 7.7. As of the date hereof, Purchaser has not provided any of the foregoing to Eden Protocol, *see* Munoz Declaration at ¶ 9, and as discussed earlier, Purchaser has not been in compliance with applicable laws.

25. Accordingly, because the third factor also weighs in favor of Eden Protocol, it submits that cause exists to lift the automatic stay to permit it to terminate the TPA.

### III. This Court Should Waive the 14 Day Stay Imposed Under Bankruptcy Rule 4001(a)(3).

26. Bankruptcy Rule 4001(a)(3) provides that an "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). Continuance of the automatic stay does not serve any purpose other than to delay Eden Protocol's right to terminate the TPA. This is not the case where granting relief from the stay will create enormous consequences for the parties involved or dictate the success or failure of the entire bankruptcy case, especially given projected recoveries under the plan on file. *See* 9 Collier on

Bankruptcy P 4001.05 (16th 2023) (circumstances where 14-day state is imposed); *see also* D.I. 19143.  Thus, this Court should waive the 14-day stay imposed under Bankruptcy Rule 4001(a)(3).

## NO PRIOR REQUEST

27. No prior request for the relief sought in this Motion has been made to this or any other Court.

## NOTICE

28. Eden Protocol will provide notice of this Motion to: (a) counsel for the Debtors; (b) counsel for the Committee; (c) all parties requesting notices; and (d) the U.S. Trustee.  Pursuant to Local Rule 4001-1, and based on the relief sought herein, Eden Protocol submits that such notice is sufficient.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

**WHEREFORE**, Eden Protocol respectfully requests entry of the Proposed Order (i) granting relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code to permit Eden Protocol to terminate the TPA, (ii) waiving the 14-day stay imposed under Bankruptcy Rule 4001(a)(3), and (iii) granting related relief.

| | |
|---|---|
| DATE: July 12, 2024 | **COLE SCHOTZ P.C.** |
| | |
| | */s/ Melissa M. Hartlipp* |
| | Melissa M. Hartlipp (No. 7063) |
| | 500 Delaware Avenue, Ste. 1410 |
| | Wilmington, Delaware 19801 |
| | Tel: (302) 651.2011 |
| | mhartlipp@coleschotz.com |
| | |
| | -and- |
| | |
| | Jacob S. Frumkin, Esq. (*pro hac vice* admission pending) |
| | Court Plaza North |
| | 25 Main Street |
| | Hackensack, NJ 07601 |
| | Tel: (201) 489-3000 |
| | jfrumkin@coleschotz.com |
| | |
| | *Attorneys for Eden Protocol Limited* |