## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  September 12, 2024 at 1:00 p.m. ET**<br>**Obj. Deadline:  August 12, 2024 at 4:00 p.m. ET** |

## DEBTORS' OBJECTION TO PROOF OF
## CLAIM FILED BY ICC BUSINESS CORPORATION FZ LLC

> **THIS OBJECTION OBJECTS TO A CLAIM.  THE CLAIMANT RECEIVING THIS OBJECTION SHOULD CAREFULLY REVIEW THIS OBJECTION AND, IF APPLICABLE, FILE A RESPONSE BY THE RESPONSE DEADLINE.**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor") hereby submit this objection (the "Objection"), pursuant to section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to proof of claim number 5468 (the "Claim") filed by ICC Business Corporation FZ LLC ("ICC").  In connection with this Objection, the Debtors submit the concurrently filed *Declaration of Steven P. Coverick* (the "Coverick Decl.") and the exhibits attached thereto.  The Debtors seek to disallow and expunge in its entirety or, in the alternative, to reduce the allowed amount of, the Claim.  In support of the Objection, the Debtors respectfully state as follows:

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Background**

1.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

2.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

3.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "Non-Customer Bar Date Order").  The Non-Customer Bar Date Order established, among other things, the deadline of June 30, 2023 to file non-Customer Claims[2] against the Debtors.

---

[2]      "Customer Claims" means a claim (as defined in section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, or federal or state law, rule or regulation, common law or otherwise) held by any person (as defined in section 101(41) of the Bankruptcy

4.      To date, approximately 3,403 non-customer proofs of claim have been filed against the Debtors, asserting more than $483 billion.

5.      On June 29, 2023, ICC filed the Claim against FTX Trading in connection with the official partnering agreement between FTX Trading and ICC dated October 13, 2021 (the "Agreement").  The Claim asserted a total of $3,500,000 as well "interest at the rate of 8% per annum above three month US$ Libor" and a right to an unspecified indemnity "in respect of certain Taxes under certain circumstances."  Claim 5468 Addendum ¶ 4.

### Facts Specific to Relief Requested

6.      ICC is an international cricket governing body based in Dubai and organized under the regulations of the Dubai Development Authority.  *See* Coverick Decl. Ex. 1 at 2.  ICC organizes several major international cricket tournaments and promulgates rules to ensure fair and professional gameplay.

7.      On October 13, 2021, ICC executed the Agreement with FTX Trading, pursuant to which ICC agreed to, among other things, display FTX logos and branding at various locations during seven major ICC cricket tournaments between 2021 and 2023.  *See id.* at Schedule 4.  The seven ICC events were specified as Schedule 1 to the Agreement (Coverick Decl. Ex. 1):

| ICC Events | | |
|---|---|---|
| **Year** | **Event** | **Location** |
| 2021 | ICC Men's T20 World Cup | UAE and Oman |
| 2022 | ICC Men's U19 Cricket World Cup | West Indies |
| 2022 | ICC Women's Cricket World Cup | New Zealand |
| 2022 | ICC Men's T20 World Cup | Australia |
| 2023 | ICC Women's T20 World Cup | South Africa |
| 2023 | ICC Men's Cricket World Cup Qualifier | Zimbabwe |
| 2023 | ICC Men's Cricket World Cup | India |

Code) or entity (as defined in section 101(15) of the Bankruptcy Code) against any of the Debtors, in each case, arising out of or related to (a) any cash, cryptocurrency, digital assets or other assets held by such person or entity in an account on any FTX exchange as of the Petition Date or (b) any other investment or trading activities on any FTX exchange.

In return, FTX Trading was obligated to make payments to ICC in three installments:  the first

payment of ███████████████████████████████████████, the second

payment of █████████████████████, and the third payment of $3,500,000 on January 7,

2023.  *Id.* at Schedule 3.  FTX Trading made the first and second payments, totaling ████████,

to ICC on █████████████ and █████████████, respectively.  The Agreement had a term of

approximately two years from October 13, 2021 to December 31, 2023.  *Id.* at 7.

8.    The Agreement specified the amount of fees attributable to each of the

seven FTX Trading sponsored events.  Coverick Decl. Ex. 1 at Schedule 3.

| Events | Year | (%) | Amount (US$) |
|---|---|---|---|
| ICC Men's T20 World Cup | 2021 | ████████ | |
| ICC Men's U19 Cricket World Cup | 2022 | ███ | |
| ICC Women's Cricket World Cup | 2022 | ███ | |
| ICC Men's T20 World Cup | 2022 | ███ | |
| ICC Women's T20 World Cup | 2023 | ███ | |
| ICC Men's Cricket World Cup Qualifier | 2023 | ███ | |
| ICC Men's Cricket World Cup | 2023 | ███ | |
| **Total for the Events** | | **100** | |

9.    The fourth event, the ICC Men's T20 World Cup, was held between

October 16, 2022 and November 13, 2022.  Coverick Decl. Ex. 2.  On November 10, 2022, at the

request of FTX Trading, ICC agreed to remove FTX logos and branding from the remaining

matches of the ICC Men's T20 World Cup.  *See* Coverick Decl. Ex. 3.  On or around November

11, 2022, an ICC spokesperson represented to a reporter that, in light of the liquidity shortage at

FTX Trading, "ICC's partnership with FTX is under review until there is greater clarity over the

future of the company" and that "[a]s a consequence of this, where practical, all FTX branding and

promotions at the ICC Men's T20 World Cup 2022 have been removed."  Coverick Decl. Ex. 4.

10.    On November 25, 2022, ICC informed FTX Trading by email that "in line

with [FTX Trading's] request to remove all elements of FTX branding associated with our

Partnership, this is to confirm that [ICC] will be proceeding to do [so] across the entire ICC digital estate."  Coverick Decl. Ex. 3.

11.     On December 30, 2022, the Debtors filed the *Debtors' First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts Effective as of the Rejection Date* [D.I. 333] (the "Rejection Motion").  The Rejection Motion sought, among other things, rejection of the Agreement effective as of December 30, 2022 (the "Rejection Date").  On January 26, 2023, this Court approved the Motion, effective as of the Rejection Date [D.I. 585].

12.     In the months since the Petition Date, ICC has entered multiple sponsorship deals for ICC events in 2023 with, among others, Emirates, Mastercard, and the Indian electrical goods manufacturer Polycab.  *See* Coverick Decl. Exs. 5, 6, 7.  The new sponsorship deals covered events that were covered by ICC's Agreement with FTX Trading, such as the ICC 2023 Men's Cricket World Cup and the ICC 2023 Women's T20 Cricket World Cup.  *See* Coverick Decl. Exs. 5, 6, 7, 8.  For the 2023 Men's Cricket World Cup alone, these sponsorship deals were reportedly worth up to $150 million.  *See* Coverick Decl. Ex. 9.

13.     On June 29, 2023, ICC filed its Claim asserting a right to recover the full $3,500,000 third payment due under the Agreement.

## Jurisdiction and Venue

14.     The Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought are section 502 of the Bankruptcy

Code and Bankruptcy Rules 3001 and 3007.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## **Basis for Relief**

15.     Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Once an objection to a claim is filed, the Court, after notice and hearing, shall determine the allowed amount of the claim.  11 U.S.C. § 502(b).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b).

16.     While a properly filed proof of claim is *prima facie* evidence of the claim's allowed amount, when an objecting party presents evidence to rebut a claim's *prima facie* validity, the claimant bears the burden of proving the claim's validity by a preponderance of evidence.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) ("Initially, the claimant must allege facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid.").  The burden of persuasion with respect to the claim is always on the claimant, see *id*. at 174, and the failure to allege facts and to provide adequate support for a claim eliminates the claim's *prima facie* validity.  *See, e.g., In re Jorczak*, 314 B.R. 474, 481-82 (Bankr. D. Conn. 2004) (discussing the evidentiary requirements and burden of proof with respect to the allowance of claims).

17.    ICC's Claim seeks a total of $3,500,000 from the Debtors pursuant to the Agreement.  For the following reasons and others that will be demonstrated following discovery and a hearing, the Court should disallow and expunge the Claim in its entirety or, in the alternative, reduce the allowed amount of the Claim.

## I.    ICC's Claim Should Be Disallowed And Expunged Because ICC Has Mitigated Any Damages Or Had The Opportunity To Do So.

18.    English law limits the availability of recovery for a claimant that does not take steps to mitigate damages of a breached contract.[3]  Recovery is "calculated on the assumption that the claimant has taken reasonable steps in mitigation whether it has in fact done so or not." *Thai Airways* v. *KI Holdings Co.*, [2015] 1 C.L.C. 765, 777, 2015 WL 2023651.  "The principle of mitigation requires the injured party to take all reasonable steps to avoid the consequences of a wrong."  *Sharp Corp Ltd* v. *Viterra BV*, [2024] UKSC 14 ¶ 85, 2024 WL 02026749.  Where "the loss is successfully reduced by the taking of reasonable mitigating steps then the party in breach is entitled to the benefit of that—there is no recovery for avoided loss."  *Id.*

19.    ICC had ample opportunity to and, to the Debtors' knowledge, did, in fact, mitigate its damage.  In the over twenty months since the commencement of the Chapter 11 Cases, ICC executed a number of new sponsorship deals, including with, among others, Emirates, Mastercard, and Polycab.  *See* Coverick Decl. Exs. 5, 6, 7, 8.  These deals purportedly were worth up to $150 million, and covered some of the same events covered by ICC's Agreement with FTX Trading, including the 2023 Men's Cricket World Cup and the 2023 Women's T20 World Cup.  As discovery will show, these new sponsorship contracts served to eliminate any loss suffered by

---

[3]    The Agreement provides that it "shall be governed exclusively and in all respects by the laws of England." Agreement § 27.2.  As such, the Court should apply English law to resolve this Objection.  *Coface Collections N. Am. Inc.* v. *Newton*, 430 F. App'x 162, 166 (3d Cir. 2011) ("[I]t is only in rare circumstances that Delaware courts do not honor the choice-of-law provisions agreed to by parties in a binding contract.").

ICC on account of FTX Trading's failure to make the final $3.5 million payment under the Agreement. Accordingly, the Court should disallow and expunge ICC's Claim in its entirety to avoid awarding it a windfall.

20.     Even if the Court determines that ICC's damages were not fully mitigated by its subsequent sponsorship deals, the Court should nevertheless disallow and expunge ICC's Claim in its entirety because ICC failed to take "reasonable steps to mitigate [its] loss." *Kaines (UK)* v. *Oesterreichische Warenhandelsgesellschaft Austrowaren GmbH*, [1993] 2 Lloyd's Rep. 1, 1993 WL 963580. As the premier international regulatory body of professional cricket, ICC could have, with a modest effort, attracted replacement sponsors. Nowhere in its Claim, however, does ICC allege that it took any measures to do so. Absent evidence of reasonable action, the Debtors submit that the Court should disallow and expunge ICC's Claim in its entirety.

## II.    ICC's Claim Should Be Disallowed And Expunged Because FTX Is Entitled To Recoupment Of ▮▮▮▮▮ That It Paid to ICC For Which ICC Rendered No Consideration.

21.     Of the total ▮▮▮▮▮ paid by FTX Trading to ICC under the Agreement prepetition, ▮▮▮▮▮ was for FTX sponsorship rights at three ICC events in 2023. ICC did not perform these obligations under the Agreement with respect to the 2023 events. Therefore, ICC is subject to a ▮▮▮▮▮ claim for restitution under English law, which completely offsets ICC's Claim. Under the doctrine of recoupment, bankruptcy courts may "permit[] the offset of mutual debts when the respective obligations are based on the same transaction or occurrence." *In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 80 (Bankr. D. Del. 2003). Although recoupment is not explicitly included in the Bankruptcy Code, the doctrine's applicability to the bankruptcy context "has been established through decisional law." *In re Anes*, 195 F.3d 177, 182 (3d Cir. 1999). Importantly, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its

obligations." *In re Money Ctr. of Am., Inc.*, 565 B.R. 87, 106 (Bankr. D. Del. 2017). Typically, claims that arise out of the same contract arise out of the same transaction for the purposes of recoupment. *In re Rooster, Inc.*, 127 B.R. 560, 568 (Bankr. E.D. Pa. 1991).

22. Under English law, a party can seek restitution for unjust enrichment where another has been unjustly enriched at that party's expense. *Sch. Facility Mgmt. Ltd* v. *Governing Body of Christ the King Coll.*, [2020] EWHC 1118 ¶ 406, 2021 WL 02903071. One such circumstance in which enrichment is unjust is where a party retains a contractual benefit without fulfilling its own obligations. When a party to a contract makes a payment for future services, it makes such payment "on a joint understanding that the recipient's right to retain it is conditional. If the condition is not fulfilled, the recipient must return the benefit." *Dargamo Holdings Ltd*. v. *Avonwick Holdings Ltd.*, [2021] EWCA Civ. 1149 ¶ 79, 2021 WL 03172345.

23. As described above, Schedule 3 of the Agreement specified which portion of the installment fee was attributable to each event. Coverick Decl. Ex. 1 at Schedule 3. Together, the ICC events scheduled for 2021 and 2022 were valued at only ▮▮▮▮▮. *Id.* FTX Trading paid a total of ▮▮▮▮▮—a full ▮▮▮▮ more than was required to cover the 2021 and 2022 events. This additional ▮▮▮▮▮ was, in effect, a prepayment towards the three events scheduled to take place in 2023. In total, the 2023 events were valued at ▮▮▮▮▮ FTX Trading was scheduled to pay the balance of the 2023 events—$3,500,000—by January 7, 2023. Notwithstanding the fact that FTX Trading had prepaid nearly two-thirds of its obligation for the 2023 events, ICC ceased displaying FTX Trading logos and branding at ICC events at the end of 2022. Accordingly, ICC received ▮▮▮▮▮ in sponsorship fees from FTX Trading for which it never provided any consideration. For these reasons, ICC is liable to FTX Trading for restitution of the ▮▮▮▮▮ prepayment.

24.    Because FTX Trading's claim for restitution and ICC's claim for breach of contract arise out of the same transaction, this Court should allow FTX Trading to recoup ███████ against ICC's Claim. Since FTX Trading's recoupment claim against ICC exceeds ICC's Claim, the Court should disallow and expunge ICC's Claim in its entirety.

### III.    ICC's Claim For A Tax Indemnity Should Be Disallowed Because It Lacks *Prima Facie* Validity.

25.    A claimant carries the initial burden of alleging facts sufficient to support the legal liability asserted in its proof of claim. Fed. R. Bankr. P. 3001(f). "[C]laims can be disallowed for failure to support the claim with sufficient evidence." *In re Mallinckrodt Plc*, 2022 WL 3545583, at *4 (D. Del. Aug. 18, 2022). ICC's claim for indemnification falls short of this standard.

26.    Although ICC claims an entitlement to a tax indemnity, nowhere does ICC specify which taxes its Claim contemplates or the legal basis for such entitlement. As a result, ICC has failed to carry its initial burden of "alleg[ing] facts sufficient to support a legal liability." *In re Allegheny*, 954 F.2d at 173. Because ICC has made no more than a conclusory allegation, it has not established a *prima facie* claim for indemnification. Accordingly, the Court should disallow ICC's claim for a tax indemnity.

### **Reservation of Rights**

27.    This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to any claim on any grounds whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a

type specified or defined in this Objection or any order granting the relief requested by this Objection; (e) an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

### Notice

28.     Notice of this Objection has been provided to:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the United States Attorney for the District of Delaware; (g) counsel for the Ad Hoc Committee; (h) to the extent not listed herein, those parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure and (i) counsel to ICC.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

### Conclusion

29.     For the foregoing reasons, the Court should enter the Order, substantially in the form attached hereto as Exhibit A, disallowing and expunging ICC's Claim or, in the alternative, reducing the allowed amount of the Claim.

Dated: July 10, 2024
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*