**<u>Exhibit 1</u>**

**Draft Plan Administration Agreement**

**FTX RECOVERY TRUST**
**PLAN ADMINISTRATION AGREEMENT**

This PLAN ADMINISTRATION AGREEMENT, dated as of [•], 2024 (this "**Agreement**"), is entered into by and among the FTX Recovery Trust (the "**FTX Recovery Trust**"), FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**")[1] and Owl Hill Advisory, LLC ("**Owl Hill**"). The FTX Recovery Trust, the Debtors and Owl Hill are collectively referred to as the "**Parties**" and individually as a "**Party**."

**RECITALS**

**WHEREAS**, on November 11 and November 14, 2022, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

**WHEREAS**, pursuant to the [*Confirmation Order*] [D.I. [•]], dated [•], 2024 (the "**Confirmation Order**"), the Bankruptcy Court confirmed the *Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. [•]], dated as of [•] (as amended, modified, or supplemented from time to time, the "**Plan**");

**WHEREAS**, the Plan provides for, among other things, the creation of a liquidating trust, referred to therein as the Consolidated Wind Down Trust and referred to herein at the FTX Recovery Trust, on the Effective Date for the purposes of effectuating and implementing the Plan for so long as may be necessary to monetize the assets of such liquidating trust and pay distributions to the beneficiaries of such liquidating trust;

**WHEREAS**, the FTX Recovery Trust was formed and is administered in accordance with the terms of the Liquidating Trust Agreement, dated as of [•], 2024 (the "**FTX Recovery Trust Agreement**"), by and among the liquidating trustees specified in the signature page thereto, [•], as the Delaware resident trustee, and FTX Trading Ltd. and each of the other Consolidated Debtors;

**WHEREAS**, the Plan provides for a Plan Administration Agreement to govern the Plan Administrator's rights and obligations in connection with the Plan and Wind Down Entities, and the FTX Recovery Trust and the Debtors desire to enter into a Plan Administration Agreement as of the Effective Date to appoint a Plan Administrator to serve as such under and as defined in the Plan; and

**WHEREAS**, upon the Effective Date, the FTX Recovery Trust and the Debtors desire to appoint Owl Hill to serve as the Plan Administrator under and as defined in the Plan, and Owl Hill is willing to serve in such capacity, in each case upon the terms set forth in this Agreement and in the Plan.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

**NOW**, **THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

1. <u>Definitions</u>.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Plan or the FTX Recovery Trust Agreement as applicable.

2. <u>Appointment</u>.  Effective upon the Effective Date, the FTX Recovery Trust and the Debtors hereby appoint Owl Hill to serve as the Plan Administrator under the Plan, and Owl Hill accepts such appointment and agrees to serve in such capacity.

3. <u>Duties, Powers and Authority</u>.  The Plan Administrator shall be vested with all powers and authority set forth in this Agreement, the FTX Recovery Trust Agreement, the Plan and the Confirmation Order (this Agreement, the FTX Recovery Trust Agreement, the Plan and the Confirmation Order collectively, the "**Plan Documents**").  Subject to the authority of the Board and the terms of the Plan Documents, the Plan Administrator shall have all powers and authority to exercise all powers and rights, perform all duties and take all actions contemplated by or provided for in the Plan Documents and to take any and all other actions to implement or consummate the Plan Documents. The Plan Administrator shall consult with the Advisory Committee in good faith on all of its material decisions set forth under Article 6.2(a) of the Liquidating Trust Agreement.

4. <u>Privileges</u>.  The Plan Administrator shall remain in control of all of its privileges (subject to the provisions of the Plan), and the Plan Administrator retains the right to waive its own privileges prospectively.  No privileges shall be waived by disclosures to the Plan Administrator of Transferred Privileged Information or any of the Debtors' or the Consolidated Debtors' information, documents, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest, joint defense, or similar agreements with third parties), or protections from disclosure held by the Debtors, the Consolidated Debtors or the FTX Recovery Trust. Nothing contained in the Plan or the FTX Recovery Trust Agreement, nor any professional's compliance herewith or therewith, shall constitute a breach or waiver of any privileges of the Debtors, the Consolidated Debtors or the FTX Recovery Trust.

5. <u>Use of Professionals</u>.  The Plan Administrator is entitled to utilize and supervise the services of the FTX Recovery Trust's and the Debtors' employees, independent contractors, claims and transfer agents, distribution agents, attorneys, consultants, financial advisors, restructuring advisors, investment bankers, accountants, experts, independent contractors, employees and other advisors or agents, at the sole cost and expense of the FTX Recovery Trust or Debtors, as applicable.

6. <u>Dissolution of the Debtors, Wind Down Entities and Excluded Entities and Non-Debtors Subsidiaries; Entry of Final Decree</u>.  The Plan Administrator, subject to the powers and authority of the Board, shall be vested with all powers and authority to dissolve, liquidate, consolidate, merge or take any other action to effect dissolution of any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries pursuant to Section 5.19 of the Plan and in accordance with the terms of the FTX Recovery Trust Agreement, including to make equity contributions to Debtor and non-Debtor Affiliates with Plan Assets and convert into equity any prepetition or postpetition Intercompany Claims held by any Debtor that is not cancelled, released or otherwise settled in full pursuant to the Plan, in each case, to effectuate or facilitate the wind down and dissolution of any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries.  The Plan Administrator, subject to the authority of the Board, may execute and file documents and take all other actions as it deems appropriate relating to the dissolution of Debtors, Wind Down Entities, Excluded Entities under the laws of any state, territory, possession, the District of Columbia, and any foreign jurisdiction, as applicable.  The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by

Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases. The Plan Administrator may also, in its reasonable discretion, file the necessary documents to close any individual Debtor's case at the appropriate time.

7. <u>Compensation of the Plan Administrator</u>. The Plan Administrator shall be compensated by the FTX Recovery Trust as set forth in the FTX Recovery Trust Agreement. The Plan Administrator shall also be entitled to reimbursement of any actual, reasonable and documented expenses incurred in the course of discharging its responsibilities under the Plan Documents.

8. <u>Exculpation</u>. The Debtors, the Wind Down Entities, the Plan Administrator and each of their respective current and former members, directors, officers, Affiliates, parents, subsidiaries, members, managers, predecessors, successors, executors, assigns, participants, partners, employees, independent contractors, advisors, consultants, agents, attorneys, financial advisors, restructuring advisors, investment bankers, accountants, experts and other professionals or representatives, in each case solely when acting in any such capacities (collectively, the "**Exculpated Parties**") shall not have or incur any liability to any party, including any Holder of a Claim or Interest, for any act taken or omission made in connection with, related to, or arising out of (a) their performance or discharge of the duties and obligations conferred upon them by the Plan Documents and any other orders of the Bankruptcy Court, (b) the implementation, Consummation or administration of the Plan, or (c) any act taken, or omission made, in connection with the affairs of the Debtors or the Wind Down Entities; *provided* that the foregoing exculpation shall not apply to the extent an act or omission is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct; *provided* that any action or inaction by the Plan Administrator at the direction of the Board of the FTX Recovery Trust shall be deemed to have been conducted in good faith and entitled to exculpation. The Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action. No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against any Exculpated Parties for taking any action in accordance with, or to implement the provisions of, the Plan Documents or any other order of the Bankruptcy Court. In all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan Documents or any other order of the Bankruptcy Court, and may rely upon written information previously generated by the Debtors or their advisors; *provided* that the foregoing exculpation shall not apply to any liability resulting from any act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct; *provided* that any action or inaction by the Plan Administrator at the direction of the Board of the FTX Recovery Trust shall be deemed to have been conducted in good faith and shall not constitute gross negligence or willful misconduct. No provision of this Agreement or the Plan shall require the Plan Administrator to expend or risk the Plan Administrator's own funds or otherwise incur any financial liability in the performance of any of the Plan Administrator's duties as Plan Administrator under the Plan Documents, or in the exercise of any of the Plan Administrator's rights or powers. Except as provided in the provisos of this <u>Section 9</u>, every beneficiary, Person, firm, corporation or other Entity contracting or otherwise dealing with or having any relationship with any Exculpated Parties acting in such capacity shall have recourse only to the Debtors and the Wind Down Entities for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Exculpated Parties shall not be individually liable therefor. The Exculpated Parties, in their capacity as such, shall have no liability whatsoever to any party for the liabilities or obligations, however created, whether direct or indirect, in tort, contract or otherwise, of the Debtors.

9. <u>Indemnification</u>. The Debtors and the Wind Down Entities shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Exculpated Parties from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs, in connection with, related to, or arising out of (a) the performance or discharge of the Exculpated Parties' duties and obligations conferred upon them by the Plan Documents or any other orders of the Bankruptcy Court, (b) the implementation, Consummation or administration of the Plan, or (c) any act

taken, or omission made, by the Exculpated Parties' in connection with the affairs of the Debtors or the Wind Down Entities (the "**Related Matters**"), except to the extent an act or omission is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct; *provided* that any action or inaction by the Plan Administrator at the direction of the Board of the FTX Recovery Trust shall be deemed to have been conducted in good faith and shall not constitute gross negligence or willful misconduct. In the event that, at any time whether before or after termination of this Agreement, as a result of or in connection with this Agreement, the Exculpated Parties are required to produce any of their personnel (including former employees) or agents for examination, deposition or other written, recorded or oral presentation, or the Exculpated Parties are required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within the Exculpated Parties' possession or control pursuant to a subpoena or other legal (including administrative) process, the Exculpated Parties shall be reimbursed by the Debtors and the Wind Down Entities for the Exculpated Parties' out of pocket expenses, including the reasonable fees and expenses of the Exculpated Parties' counsel, and shall be compensated by the Debtors and the Wind Down Entities for the time expended by its personnel or agents based on such personnel or agent's then current hourly rate. The provisions of this Section 10 are in the nature of contractual obligations and no change in applicable law or the charter, bylaws or other organizational documents or policies, as applicable, of the FTX Recovery Trust or the Debtors shall affect the Exculpated Parties' rights hereunder.

10. Resignation; Replacement, Removal or Termination of the Plan Administrator.

(a) From and after the Effective Date, the Plan Administrator shall serve in its capacity as the Plan Administrator and responsible person of the FTX Recovery Trust and each of the Debtors through the earlier of (i) all Chapter 11 Cases are closed, each by a final decree of the Bankruptcy Court, and (ii) the date Plan Administrator resigns, is removed, or is otherwise unable to serve.

(b) The Plan Administrator may resign by giving at least thirty (30) days' prior written notice thereof to the FTX Recovery Trust. Such resignation shall become effective on the appointment of a successor Plan Administrator and such successor's acceptance of such appointment.

(c) The Plan Administrator may be removed by the FTX Recovery Trust (i) for cause, subject to entry of an order by the Bankruptcy Court authorizing such removal, (ii) upon the death or incompetency of Mr. John J. Ray III ("Mr. Ray"), or (iii) in the event Mr. Ray ceases to be an employee of the Plan Administrator. For purposes of this agreement, the term "**for cause**" means a finding by the Bankruptcy Court in a Final Order that the Plan Administrator engaged in fraud, gross negligence or willful misconduct in the performance or discharge of its duties pursuant to this Agreement, or is otherwise unable to discharge its duties under this Agreement; *provided* that any action or inaction by the Plan Administrator at the direction of the Board of the FTX Recovery Trust shall be deemed to have been conducted in good faith and shall not constitute gross negligence or willful misconduct. In the event of removal for cause, the removal shall be effective on the date specified in the removal action by the FTX Recovery Trust.

(d) The resignation or removal of the Plan Administrator shall not revoke any existing agency created pursuant to the terms of the Plan Documents or invalidate any action theretofore taken by the Plan Administrator. All fees and expenses properly incurred by the Plan Administrator prior to the resignation, incompetency or removal of the Plan Administrator shall be paid by the FTX Recovery Trust, unless such fees and expenses are disputed by the FTX Recovery Trust, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Plan Administrator that are subsequently allowed by the Bankruptcy Court shall be paid from the Plan Assets.

(e) In the event of the resignation or removal of the Plan Administrator, the Plan Administrator shall: (i) promptly execute and deliver such documents, instruments and other writings as

may be reasonably requested by the successor Plan Administrator or directed by the Bankruptcy Court to effectuate the termination of such Plan Administrator's capacity under this Agreement, (ii) promptly deliver to the successor Plan Administrator all documents, instruments, records and other writings as may be in the possession of such Plan Administrator, and (iii) otherwise assist and cooperate in effectuating the assumption of its obligations and functions by such successor Plan Administrator, subject to reimbursement of all fees and reasonable documented expenses.

11. <u>Survival</u>.  The provisions of Sections 8, 9, 10, 14, 15, 16, 17, 21, 22 and 23 shall survive the termination of this Agreement and the resignation, removal or replacement of the Plan Administrator.

12. <u>Effectiveness</u>.  This Agreement shall be effective upon the Effective Date.

13. <u>Notices</u>.  Any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, email or sent by facsimile, addressed as follows or to such other address as any party shall have given notice of pursuant hereto:

> In the case of the Plan Administrator:
>
> John Ray
> Owl Hill Advisory, LLC
> 365 Fifth Avenue South, Suite 365
> Naples, Florida 34102
>
> with a copy to:
>
> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, New York 10004
> Attention:  Andrew G. Dietderich, James, L. Bromley, Brian D. Glueckstein and Alexa J. Kranzley
> E-mail address:  dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, and kranzleya@sullcrom.com
>
> In the case of the FTX Recovery Trust or the Debtors:
>
> c/o Sullivan & Cromwell LLP
> 125 Broad Street
> New York, New York 10004
> Attention:  Andrew G. Dietderich, James, L. Bromley, Brian D. Glueckstein and Alexa J. Kranzley
> E-mail address:  dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, and kranzleya@sullcrom.com
>
> In the case of the Advisory Committee:
>
> [•]

14. <u>Headings</u>. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

15. <u>Jurisdiction</u>.  Notwithstanding the occurrence of the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall have continuing and exclusive jurisdiction to interpret and enforce this Agreement and to determine all disputes arising in connection with this Agreement or any party's obligations hereunder. Each party to this Agreement hereby consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement, and waives any defense of improper venue, forum or lack of jurisdiction to any such action brought in the Bankruptcy Court.

16. <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws to the extent that the application of the laws of another jurisdiction would be required thereby, shall govern the rights, obligations, construction, and implementation of this Agreement.

17. <u>Invalidity</u>.  In the event that any one or more of the provisions contained in the Plan shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement.

18. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and which together shall constitute a single instrument.

19. <u>Entire Agreement</u>.  This Agreement is the entire agreement between the parties and supersedes all prior agreements of the parties with respect to the subject matter hereof.

20. <u>Assignment and Amendment</u>.  Neither this Agreement nor any of the rights, duties or obligations of any of the parties hereto may be assigned or amended without the prior written consent of the other Parties.

21. <u>Severability</u>.  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court (or any other court of competent jurisdiction) to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

22. <u>No Waiver</u>.  No failure by the Plan Administrator to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

23. <u>Plan Controls in Event of Conflict</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and therefore this Agreement incorporates and is subject to the provisions of the Plan. The Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan Documents, whether or not such action is specified in this Agreement. In the event of a conflict between the terms of this Agreement and the Plan and the Confirmation Order in connection therewith, the provisions of the Plan and the Confirmation Order entered in connection therewith shall control. In the event of a conflict between the terms of this Agreement and the FTX Recovery Trust Agreement, the provisions of this Agreement shall control with respect to the Plan Administrator.

[*Signature Page Follows*.]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**FTX RECOVERY TRUST**

By     _____
      Name:
      Title:

**FTX TRADING LTD., WEST REALM SHIRES INC., ALAMEDA RESEARCH LLC, and CLIFTON BAY INVESTMENTS, for themselves and on behalf of their affiliated debtors and debtors-in-possession**

By     _____
      Name:
      Title:

**OWL HILL ADVISORY, LLC**

By     _____
      Name:   John J. Ray III
      Title:    Managing Director