# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-11068 (JTD)<br>)<br>) (Jointly Administered)<br>)<br>) **Hearing Date: October 7, 2024, at 10:00 a.m. (ET)**<br>) **Obj. Deadline: August 16, 2024, at 4:00 p.m. (ET)**<br>)<br>)<br>) Re D.I. Nos. 5202, 7090, 18975, 19069 |

## LIMITED OBJECTION OF KIHYUK NAM TO THE VALUATION OF FTT IN MOTION OF DEBTORS TO ESTIMATE CLAIMS BASED ON DIGITAL ASSETS AND REQUEST FOR FAIR TREATMENT OF FTT HOLDERS

KIHYUK NAM, a customer and creditor in the ongoing Chapter 11 bankruptcy proceedings of FTX Trading Ltd., hereby submits this limited objection concerning the specific classification and valuation of FTT Tokens as documented in the Motion of Debtors to Estimate Claims Based on Digital Assets [D.I. 5202] (the "Estimation Motion"),[2] filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of this objection, the following statements are respectfully presented:

---

[1] Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not defined herein have the meanings set forth in the Estimation Motion.

## **PRELIMINARY STATEMENT**

1.      While this bankruptcy case has established a precedent for assessing digital assets, FTT was valued at zero dollars because it was considered to have characteristics similar to FTX equity—a stark deviation from how other digital assets have been evaluated within the same proceedings. This misclassification not only deviates from equitable treatment expected in bankruptcy proceedings but also fails to acknowledge the active market presence of FTT as a utility token.

2.      According to the Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets [D.I. 7090] (the "Estimation Order"), the value of FTT has not been legally finalized. (Estimation Order ¶ 7)

> The Estimation Order states as follows:
>> 7. Notwithstanding anything to the contrary in the Motion or this Order, nothing in the Motion, this Order or the Digital Asset Conversion Table, or any evidence offered in support of the foregoing, shall determine the classification of FTT under any plan, and all parties' rights in this regard are expressly reserved.

Despite this, the debtors are proceeding as if the value of FTT has been conclusively determined at zero dollars. This assumption is evident in the treatment of FTT Interests in the Chapter 11 Plan of Reorganization [D.I. 18975] (the "Reorganization Plan"), where FTT Holders are placed below other creditors.

> The Reorganization Plan states as follows:
>> 4.3.27 Class 17 – FTT Claims and Interests
>>
>> (a) Classification: Class 17 consists of all FTT Claims and Interests.
>>
>> (b) Treatment: All Allowed FTT Claims and Interests shall be cancelled or released, and the Holders of Allowed FTT Claims and Interests shall not be entitled to, and shall not receive or retain, any Distributions, property or interest in property on account of such Interests under the Plan.

(c) Voting: Claims in Class 17 are Impaired. Each Holder of an FTT Claim or Interest is conclusively deemed to have rejected the Plan. No Holder of an FTT Claim or Interest is entitled to vote to accept or reject the Plan.

3. This objection seeks to challenge this inequitable treatment by advocating for a fair valuation of FTT that is consistent with the assessment criteria applied to other digital assets in these proceedings, based on the market prices at the petition date (defined below). Ensuring fairness and procedural integrity through consistent asset valuation across the bankruptcy case is vital.

## FACTUAL BACKGROUND

4. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. On December 27, 2023, the Debtors filed the Estimate Motion [D.I. 5202], which proposed a Digital Asset Conversion Table to "provide a basis by which creditors can understand the value of the Claims and the Debtors can calculate the value of Claims in respect of Digital Assets for voting and distribution purposes." (Estimation Motion ¶ 3).

6. The Estimation Motion asserts that FTT possesses characteristics similar to FTX equity. Just as FTX equity holders derive value from the company's future cash flows, FTT derives its value from the operations of FTX, offering benefits such as trading discounts and other operational incentives (Estimation Motion ¶ 42, 43, 44). Based on this similarity, the Estimation Motion assigned a $0 valuation to FTT tokens. (Estimation Motion ¶ 86). This conclusion is also grounded in the assertion that the cessation of FTX operations has eliminated the current and future sources of value for FTT (Estimation Motion ¶ 45).

7. On February 7, 2024, following a hearing on January 25, 2024, the Court entered the Estimation Order [D.I. 7090], which granted the Estimation Motion to the extent it

3

applied to more than 400 tokens held by FTX customers. However, the Estimation Order expressly reserved all parties' rights regarding the classification and valuation of FTT, stating that nothing in the Motion, the Order, or the Digital Asset Conversion Table shall determine the classification or estimate the value of FTT under any plan (Estimation Order ¶ 7).

8.  On June 25, 2024, the Debtors filed the Reorganization Plan [D.I. 18975], which proposed to treat FTT Claims and Interests in Class 17. The plan assigned a $0 valuation to FTT, resulting in the cancellation of all FTT Claims and Interests. Consequently, FTT holders were stripped of any rights to distributions or property under the plan, which also placed them below other creditors in the reorganization process (Reorganization Plan ¶ 4.3.27).

## ARGUMENT

**A. The Debtors Have Not Carried a Valid Basis for Classifying FTT as FTX Equity**

9.  The Debtors, in the Estimation Motion, have attempted to equate FTT with FTX Equity despite their clear differences. First, they explained the definition of FTX equity and stated that equity holders cannot be compensated in Chapter 11 bankruptcy proceedings (Estimation Motion ¶ 42). They then discussed the trading fee discounts and other benefits that FTT holders receive, arguing that FTT's value depends on the operations and performance of the FTX exchange (Estimation Motion ¶ 43, 44).

> The Estimation Motion states as follows:
>> 42. FTX equity represents an ownership interest in FTX's corporate entities. From an economic perspective, the value of equity ownership derives from claims on the corporation's future cash flows. As I discuss further in Section IV.C, equity claims typically have no value in Chapter 11 cases unless creditor claims are paid in full.
>>
>> 43. FTT is a token that formerly offered its holders certain benefits that flowed from trading or investment activity on the Exchanges. It is an example of an "exchange token" intended to be useful for exchange customers created by a company responsible for an exchange; other

4

examples are Binance's BNB and KuCoin's KCS. In this way, it can be identified as a utility token as described in Howell et al. (2020). FTT accrued value in two main ways: (i) weekly buybacks of FTT in which FTX would burn tokens using 33 percent of trading fees; and (b) benefits for trading on the Exchanges, including discounts on trading fees and interest on staked FTT.

44. More specifically regarding (b), FTT provided 11 tiers of discounts on trading fees ranging from three percent if the customer held at least $100 of FTT to 60 percent if the customer held at least $5 million. FTT also provided at least five ancillary benefits for trading on the Exchanges. First, holders of FTT received rebates for trading over-the-counter (OTC) with Alameda Research, the trading firm associated with FTX. Second, FTT served as a leveraged token, with FTX offering 3x leverage with no margin. Third, FTT holders received free ETH withdrawals up to a certain amount. Fourth, it was possible to lock FTT tokens in a pool to earn certain benefits, such as allocations of SRM (the token created by the Serum exchange) during SRM airdrops. This was termed "FTT staking," though it did not support a blockchain's consensus mechanism, which is usually the case when staking coins such as ETH. Finally, FTX sometimes offered existing holders airdrops of new FTT tokens. Thus, the value of FTT was tied to the value of FTX; it would be worth more if FTX attracted more trading activity, because users would then demand FTT to benefit from the rewards.

10. However, even if FTT gains value through its connection to trading activities on the FTX platform, this is merely an economic benefit of a utility token and does not confer equity ownership. it remains fundamentally different from equity. For example, just because a restaurant coupon contributes to sales growth does not make the coupon an equity stake in the restaurant. People buy coupons to benefit from the discounts they offer, not to acquire equity in the restaurant. Similarly, many users held FTT for tangible trading benefits on the FTX platform, underscoring its nature as a utility token, not equity.

11. Furthermore, FTT does not confer rights typically associated with equity, such as dividends, voting rights, or claims to corporate assets. The interest on staked tokens is not derived from the company's profits and does not reflect ownership in the company. Instead, it serves merely as an incentive to encourage participation in the platform's services and cannot be considered a dividend in legal or financial contexts.

5

12. Therefore, FTT cannot be considered equity because the features of FTT mentioned in the Estimation Motion demonstrate that its primary function is to serve as a utility token that provides trading incentives and promotes user engagement within the platform.

**B. The Debtors Have Treated FTT Holders Unfairly Based on Their Alleged Lack of Role in Asset Recovery**

13. In the Estimation Motion, the Debtors claimed that the fundamental value of FTT is considered $0 because FTT would have no role following an asset sale during the restructuring process. (Estimation Motion ¶ 45).

> The Estimation Motion states as follows:
>
> 45. As I illustrate in Figure 8, customer claims included $416.6 million in FTT, and $310.3 million in FTX equity claims, measured at unadjusted face value as of the Petition Time. These unadjusted values do not consider the valuation impact of these Chapter 11 Cases, nor the fact that, as I understand from Counsel, FTT is not expected to play any role going forward in the event there is a sale of the Exchanges' assets. As I further explain in Section IV.C, under these assumptions in my opinion the fundamental value of these assets is zero.

14. However, even if specific assets like FTT do not directly contribute to asset recovery during the liquidation process, this does not mean that creditors are not entitled to recover their claims. Under the 'fair and equitable treatment' principle of Section 1129(b) of the U.S. Bankruptcy Code[3], all creditors have the right to receive appropriate distributions based on the original value of the assets they hold. This means that the value of the assets at the time of bankruptcy should be evaluated, and creditors should receive fair distributions irrespective of the assets' contribution to recovery.

---

3 **Section 1129(b) of the U.S. Bankruptcy Code** - Fair and Equitable Treatment: "The court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

## C. The Debtors Have Applied Unique Criteria to FTT Not Applied to Other Digital Assets

15.     In the Estimation Motion, the Debtors claimed that FTT's value is derived from FTX's operations, arguing that in the absence of functioning exchanges, FTT lacks both present and future value (Estimation Motion ¶ 86), which resulted in the decision to consider its value as $0 and to make no distributions to FTT Interests (Reorganization Plan ¶ 4.3.27).

16.     However, this argument misinterprets the nature of cryptocurrencies. Currently, FTT is being traded on various exchanges worldwide, independent of the operational status of FTX. This situation is similar to how other cryptocurrencies, including meme coins[4], are valued in the market independently of their fundamental operations. Judge Dorsey in the Memorandum Opinion and Order [D.I. 19069] (the "Memorandum Order") mentioned that all cryptocurrencies inherently lack value and that their prices are determined by market sentiment. (Memorandum Order, p. 1). Therefore, the absence of fundamental value cannot be a valid reason for valuing FTT at zero dollars.

> The Memorandum Order states as follows:
>> p. 1. Valuing cryptocurrencies is complicated by a number of factors. First, cryptocurrencies have no inherent value. Unlike corporate stock, which is backed by hard assets held by the company, or fiat currency that is back by the issuing government entity, cryptocurrencies are only worth what someone is willing to pay for them on any given day. They trade solely on sentiment, similar to artwork or baseball cards. That is, someone purchases a coin or token because the buyer believes it will increase in value over time. When the buyer believes the coin or token will decrease in value, it is sold. There is, therefore, no underlying value to help inform the market value of these assets.

---

[4] **Meme coins** mean cryptocurrencies inspired by internet memes that gain popularity through online communities. (Source: CoinMarketCap LLC; https://coinmarketcap.com/alexandria/glossary/meme-coin)

17. All other digital assets were valued based on their prices at the petition date, with certain tokens having limited circulation or being predominantly owned by specific entities receiving adjustments through various valuation methods outlined in the Memorandum Order. However, FTT was uniquely assigned a value of zero without the application of any valuation method, resulting in an inconsistent approach compared to other cryptocurrencies. FTT should be valued using the same methodology as other digital assets. Applying a distinct valuation method exclusively to FTT is unreasonable and unjustifiable.

## D. The Debtors Have Positioned FTT Holders at the Bottom of the Claims Priority in the Bankruptcy Proceedings

18. The Reorganization Plan classifies claims according to their type (Reorganization Plan ¶ 4.1). FTT holders, aside from having purchased FTT, are indistinguishable from 5A Class creditors. Like other creditors, FTT holders deposited funds and engaged in trading activities on the FTX platform, thereby contributing to its operations and overall value.

19. If the FTT holders had instead purchased other digital assets or retained USD, they would have been placed in 5A Class or, with fewer assets, in 7A Class. The decision to purchase FTT should not result in disproportionate disadvantage. This classification unjustly places them at a significant disadvantage compared to other digital asset holders, particularly given the zero-dollar valuation assigned to FTT, which effectively eliminates the value of their claims.

20. While the Debtors implement the Waterfall Priority[5] to distribute proceeds among various classes of claimants, this structure does not offer any meaningful recovery opportunities for FTT holders classified as Class 17, because FTT is already valued at zero

---

[5] **Waterfall Priority**: A structured sequence for distributing proceeds in bankruptcy, ensuring that higher-priority claims are satisfied before funds are allocated to lower-priority claims. (Reorganization Plan ¶ 4.2)

(Reorganization Plan ¶ 4.3.27). This treatment effectively denies FTT holders any chance of recovery solely because they held FTT. FTT holders deserve the same fair treatment as other asset holders, with their claims evaluated based on the market price at the petition date. This reflects the principles of fairness that bankruptcy law is intended to uphold.

## ADDITIONAL EXPLANATION

### A. TIMING OF OBJECTION

21. As a customer and creditor, the objector has been closely monitoring the proceedings and expected that the classification and valuation issues of FTT would be addressed by the parties involved or through the court's ongoing processes. However, with only one hearing remaining, and recognizing the need for action, this objection is submitted now to ensure that these critical issues are adequately considered.

### B. LEGAL GROUNDS FOR REQUEST

22. Pursuant to the Estimation Order [D.I. 7090], specifically section 7, it is explicitly stated that the rights concerning the classification and valuation of FTT under any plan remain expressly reserved[6]. This acknowledgment indicates that the valuation of FTT has not been conclusively determined. Consequently, the initial valuation of FTT at $0 should not be considered final or binding, thereby providing substantial grounds to challenge and request a reevaluation of this valuation.

### C. REQUEST FOR RELIEF

23. Reclassification of FTT: Request that the court reclassify FTT from equity to

---

[6]. Section 7 – Notwithstanding anything to the contrary in the Motion or this Order, nothing in the Motion, this Order or the Digital Asset Conversion Table, or any evidence offered in support of the foregoing, shall determine the classification of FTT under any plan, and all parties' rights in this regard are expressly reserved.

a utility token. As detailed in section III.A, FTT's primary function is to provide trading incentives and benefits within the FTX platform, not to confer equity ownership rights. This reclassification is crucial for aligning FTT's treatment with its true nature.

24. Revaluation of FTT: Request a revaluation of FTT based on its market trading price at the petition date. As argued in sections III.B and III.C, the $0 valuation assigned to FTT is inconsistent with the approach taken for other digital assets, which were valued based on their market presence and trading activity. A fair market valuation is necessary to ensure equitable treatment.

25. Equitable Treatment for FTT Holders: Ensure that FTT holders receive fair treatment comparable to other creditors. As discussed in section III.D, FTT holders have been unfairly placed at the lowest level of the priority list, despite their contributions to the FTX platform. Their claims should be evaluated fairly, reflecting the principles of fairness embedded in bankruptcy law.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, KIHYUK NAM respectfully requests that this Honorable Court reclassify FTT as a utility token, revalue it based on the market price at the petition date, ensure that FTT holders receive equitable treatment, consistent with the principles of bankruptcy law, and grant such other and further relief as is just and proper.

Dated: August 5, 2024
Incheon, South Korea

Respectfully submitted,

**KIHYUK NAM**

/s/ *Kihyuk Nam*
Kihyuk Nam
107 Haedoji-ro, Building 2, 2404
Yeonsu-gu, Incheon 21997
South Korea
Telephone: (+82) 10-2914-4866
Facsimile: (+82) 508-911-8431
E-mail: kihyuknam@hanyang.ac.kr