**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Re: Doc. No. 19795**<br><br>**Obj. Deadline: August 12, 2024, at 4:00 p.m.**<br>**Hearing Date: September 12, 2024, at 1:00 p.m.** |

**THE CELSIUS LITIGATION ADMINISTRATOR'S
RESPONSE TO DEBTORS' OBJECTION TO PROOFS OF CLAIM
FILED BY CELSIUS NETWORK LLC AND ITS AFFILIATED DEBTORS**

Mohsin Meghji, as post-confirmation Litigation Administrator (the "Celsius Litigation Administrator") under the confirmed Chapter 11 plan for Celsius Network LLC and its affiliated debtors (collectively, "Celsius"), responds as follows (the "Response") to the *Debtors' Objection to Proofs of Claim Filed by Celsius Network LLC and its Affiliated Debtors* [D.I. 19795] (the "Claim Objection")[2] and respectfully states:

**PRELIMINARY STATEMENT**

1. Rather than address the merits of their exposure as subsequent transferees of Celsius's crypto assets, the Debtors attempt to negate the proofs of claim solely through a mere technicality – whether the Celsius preference claims were properly asserted and preserved in the proofs of claim. In this effort, however, the Debtors rest their position on three faulty premises

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors (collectively, "FTX" or the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] Capitalized terms not defined herein have the meanings given in the Claim Objection.

which, as explained below, fail to carry the day.  The Celsius claims are valid, duly asserted and substantively proper.

2.     *First*, FTX's objection operates only against Celsius's *original proofs of claim.* FTX insists that the claims were not adequately identified in those original claims.  Yet, those claims were since amended (through 95 amended proofs of claim filed on July 7 and 8, 2024) – a fact that the Debtors either overlooked or conveniently ignored.  The amendments moot the instant Claim Objection.[3]

3.     *Second*, the bulk of the Claim Objection challenges the section of Celsius's original proofs of claim that rested on common law causes of action against FTX for defamation and disparagement.  The amended proofs of claim narrow those theories; hence, the Court need not address that element of the objection because it is moot.

4.     *Third*, FTX asserts that the original claims did not adequately assert or preserve any claims against FTX based on preferential or avoidable transfers.  Even if that contention could properly be considered at this time, which the Litigation Administrator denies, the *amended proofs of claim* amply satisfy the rules for permitted amendments.  A previously-filed proof of claim may be elaborated upon by an amendment, and will relate back to the prior-filed form of the claim, if the amendment amplifies the bases of the remedies identified in the original claims without adding new facts or theories of recovery.  The amended claims plainly meet these standards, as explained below.

5.     FTX's position is based on the contention that Celsius did not file proper proofs of claim for any preference relief under Sections 547 and 550 of the Bankruptcy Code – a contention

---

[3]   Celsius originally filed more than 100 proofs of claim against the Debtors.  With six FTX cases having since been dismissed, Celsius filed amended claims in the 95 remaining FTX cases.

that is simply untrue.  Each of the more than 100 proofs of claim originally (and timely) filed (the "Original Proofs of Claim") expressly stated that Celsius was "investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, *including preference and fraudulent transfer actions*" (italics added).  These words appear in the addendum to every one of the Original Proofs of Claim (the "Addendum"), which opens with the following phrase: "Celsius's causes of action against FTX may include, but are not limited to" the theories of relief against FTX mentioned in that paragraph.

6. There would have been no reason for Celsius to include language regarding the chapter 5 causes of action if it had no intention of suing to avoid and recover actionable transfers as and when it determined it had valid bases to proceed.  Those final determinations had not occurred by the Non-Customer Claims Bar Date.  Nonetheless, Celsius provided the Debtors with sufficient notice of its intentions to possibly pursue FTX with its assertions in the Original Proofs of Claim.

7. The amended claims seek recovery from the Debtors through adversary litigation under Sections 547 and 550(a)(2) of the Bankruptcy Code to avoid transfers and recover property or the value of the property that was moved during the preference period from Celsius to FTX by or for the benefit of approximately 2,500 then-Celsius customers.  Celsius previously informed the Debtors of its intentions by including the words "preference and fraudulent transfer actions" in the Original Proofs of Claim.  Therefore, there is nothing controversial or surprising about the amendment, and nothing from which the Debtors may credibly argue that they did not know or could not have anticipated the nature of the Celsius avoidance claims.

8. Indeed, the particular text using the words "preferences or fraudulent transfers" in the Original Proofs of Claim is not, as FTX wishes, a mere boilerplate reservation of rights.  Rather,

it is more analogous to a protective filing by Celsius so as not to lose its rights – a practice that has been regularly endorsed by bankruptcy courts. In fact, the very next paragraph of the Addendum contains a more generalized reservation of rights in which Celsius noted that it "expressly reserves the right to assert additional claims against FTX of any nature or amount, and to amend, modify, increase and/or supplement this proof of claim." To hold otherwise would render meaningless the textual reference to "preferences or fraudulent transfers."

## BACKGROUND

### I. The FTX Chapter 11 Cases

9. On November 11 and November 14, 2022, the Debtors in the above-captioned chapter 11 cases commenced voluntary cases under chapter 11 of the Bankruptcy Code. On December 16, 2023, the Debtors filed their initial plan of reorganization [D.I. 4861] and initial disclosure statement [D.I. 4862]. The disclosure statement was last amended on August 27, 2024 [D.I. 19143] and the plan on August 2, 2024 [D.I. 22165].

### II. The Celsius Chapter 11 Cases

10. On July 13, 2022, Celsius filed chapter 11 petitions in the U.S. Bankruptcy Court for the Southern District of New York (the "NY Bankruptcy Court"), jointly administered as *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG).

11. After extensive litigation, the NY Bankruptcy Court entered a decision in 2023 holding that the contents of each Celsius customer's "Earn" account constituted property of Celsius and its bankruptcy estate. *See In re Celsius Network LLC*, 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023) (the "Property Ruling").

12. On January 29, 2024, Celsius filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Modified for MiningCo Transaction)* (the "Celsius Plan"). The NY Bankruptcy Court confirmed the plan on November

9, 2023.  The Celsius Plan became effective on January 31, 2024.  *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y.), D.I. 3972, D.I. 4289, D.I. 4298.

13. The Celsius Plan vested overall responsibility for the post-confirmation Celsius estate in a Plan Administrator and, in turn, provided for the appointment of the Celsius Litigation Administrator to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates, including certain preference actions.  In that capacity, the Celsius Litigation Administrator took over responsibility for the pursuit of the claims interposed in and under the Original Proofs of Claim filed by Celsius, as recently amended by the Celsius Plan Administrator's amended proofs of claim.

### III. The Original Proofs of Claim Filed by Celsius

14. Celsius timely filed the Original Proofs of Claim against the Debtors on June 29 and 30, 2023.[4]  *See* D.I. 1519.  The Original Proofs of Claim included two categories of claims: (i) causes of action "based upon unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius's balance sheet and financial condition" (the "<u>Disparagement Claims</u>"); and (ii) causes of action "under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions," which Celsius was then in the process of investigating (the "<u>Avoidance Claims</u>").[5]

---

[4] *See* Claim Nos. 3021, 3130, 3140, 3152, 3202, 3232, 3262, 3306, 3320, 3350, 3390, 3454, 3530, 3581, 3586, 3594, 3620, 3623, 3650, 3657, 3678, 3688, 3697, 3703, 3714, 3735, 3747, 3761, 3780, 3789, 3805, 3807, 3811, 3817, 3818, 3829, 3832, 3843, 3849, 3851, 3853, 3864, 3867, 3882, 3886, 3892, 3899, 3916, 3922, 3925, 3928, 3929, 3931, 3935, 3938, 3939, 3942, 3943, 3945, 3948, 3949, 3957, 3960, 3961, 3963, 3965, 3966, 3973, 3976, 3979, 3980, 3982, 3984, 3985, 3986, 3988, 3990, 3991, 3992, 3994, 3997, 3998, 3999, 4003, 4004, 4006, 4009, 4011, 4012, 4017, 4018, 4021, 4027, 4029, 4035, 4037, 4038, 4054, 4080, 4105, 4118, and 4574.

[5] *See, e.g.*, Claim No. 3938, Addendum at 2.

**IV.  The Celsius Lift Stay Motion and the FTX Preference Actions**

15.  On June 4, 2024, the Celsius Litigation Administrator filed his *Motion for Relief from the Automatic Stay* (the "Lift Stay Motion") [D.I. 16815] in this Court seeking relief to prosecute the Avoidance Claims against the Debtors in the NY Bankruptcy Court.[6]

16.  Celsius's Avoidance Claims against the Debtors arise from transfers that were made during the ninety (90) day period preceding Celsius's petition date (the "Celsius Preference Period").  The transfers were made: (i) to or for the benefit of Celsius customers whose crypto "Earn" account holdings – comprised of assets that were property of Celsius under the Property Ruling of the NY Bankruptcy Court – were withdrawn by or on account of those customers and moved to FTX, thereby rendering the Debtors as mediate or immediate transferees under Section 550 of the Bankruptcy Code (the "Customer Preference Actions"), and (ii) to FTX debtor Quoine Pte Ltd. ("Quoine") as an initial transferee (the "Quoine Actions," and together with the Customer Preference Actions, the "FTX Preference Actions") which transfers are avoidable and recoverable under Sections 547 and 550 of the Bankruptcy Code.[7]

    **i.  M3's Investigation of the Avoidance Claims**

17.  As described more fully in the *Declaration of Kenneth Ehrler in Support of the Celsius Litigation Administrator's Motion for Relief From the Automatic Stay* (the "Ehrler Declaration") [D.I. 16819, D.I. 17181], the Celsius Litigation Administrator retained M3 Advisory

---

[6] The Lift Stay Motion is scheduled for hearing on September 12, 2024.  The Lift Stay Motion explains that if leave is not granted to prosecute the preference claims in the NY Bankruptcy Court, the Litigation Administrator will pursue remedies in this Court.

[7] As described more fully in the Lift Stay Motion, the Celsius Litigation Administrator has sought relief from the automatic stay in these cases to pursue the FTX Preference Actions in the NY Bankruptcy Court, where thousands of other similar avoidance actions have been filed against the former Celsius customers who transferred or who benefitted from the transfer of their accounts from Celsius's platform to the FTX platform.

6

Partners, LP ("M3") as his professional financial advisor whose responsibilities include, among others, the investigation, identification and analysis of the voluminous number of transfers of property in Celsius customer accounts from the Celsius platform to or for the benefit of those Celsius customers, with that property having been transferred to FTX. The investigation included certain transfers involving Quoine as an initial transferee, and the other Debtors as mediate or immediate transferees of transfers made by or for the benefit of the associated Celsius customers whose accounts were moved to FTX.

### ii. Subsequent Transfers to FTX

18. As the Ehrler Declaration averred, M3's investigation confirmed that certain of Celsius's assets were transferred from Celsius's "Earn" or "Custody" customer accounts directly to the FTX cryptocurrency exchange platform or were transferred to the FTX cryptocurrency exchange platform after initially being transferred to other locations (together, the "Customer Transfers"). The investigation identified specific Customer Transfers that were made during the Celsius Preference Period to the FTX exchange platform (the "FTX Transfers"),[8] which were delineated on Exhibit C to the Ehrler Declaration. The Subsequent Transfers Schedule includes the customers related to such transfers, as well as certain transaction and preference exposure data.

### iii. Quoine Transfers Schedule

19. Quoine itself was a Celsius customer that held an "Earn" account. During the Celsius Preference Period, Quoine withdrew certain of Celsius's assets from the Celsius cryptocurrency exchange platform ("Quoine Transfers").

---

[8] M3 prepared schedules (the "Subsequent Transfers Schedules") that identified (i) the initial transferees of those Customer Transfers, (ii) net amounts of avoidable transfers made to each initial transferee, and (iii) the total amount of assets transferred from the initial transferee to FTX. The Subsequent Transfer Schedules were attached to the Lift Stay Motion.

7

20. M3 identified specific Quoine Transfers that were made during the Celsius Preference Period to Quoine as an initial transferee or that were made for Quoine's benefit.

### V. The Celsius Litigation Administrator's Amended Proofs of Claim

21. As a result of the Celsius Litigation Administrator's further investigation, the Celsius Litigation Administrator amended the Original Proofs of Claim (the "Amended Proofs of Claim", and together with the Original Proofs of Claim, the "Proofs of Claim") *before* the Debtors filed their Claim Objection.[9] As an example, attached as **Exhibit A** is a copy of the Amended Proof of Claim filed by the Celsius Litigation Administrator against FTX Trading Ltd. on July 7, 2024 (Claim No. 95759).

22. The Amended Proofs of Claim relate back to the Original Proofs of Claim by providing additional detail about the Avoidance Claims against the Debtors first mentioned in the Original Proofs of Claim.

23. Meanwhile, the Amended Proofs of Claim no longer assert the Disparagement Claims that comprised one portion of the Original Proofs of Claim.[10] This significantly reduces the overall claim amount first sought by Celsius from approximately $2 billion in the Original Proofs of Claim to no less than $444,457,844 in the Amended Proofs of Claim– which consists of $67,038,496 in initial transferee claims against Quoine, and $377,419,348 in subsequent transferee claims against the other Debtors.

---

[9] As of the date of this Response, the Debtors have not objected to the Amended Proofs of Claim.

[10] With the Celsius Litigation Administrator no longer pursuing the Disparagement Claims, the Celsius Litigation Administrator will not respond to the Debtors' objections to that section of the Original Proofs of Claim.

8

## VI. The Claim Objection to the Original Proofs of Claim

24. After the Celsius Litigation Administrator completed the filing of its Amended Proofs of Claim, the Debtors filed the Claim Objection, which the Celsius Litigation Administrator now opposes.

**ARGUMENT**

**THE CLAIM OBJECTION SHOULD BE OVERRULED**

## I. Legal Standard

25. As explained below, the Original Proofs of Claim satisfied the basic, modest threshold requirement to treat a proof of claim as valid for filing purposes. The Amended Proofs of Claim, in turn – whose filings moot the Claim Objection altogether – reinforce the validity of the Original Proofs of Claim under the rules of amendment and relation back.

26. "The primary purpose of 11 U.S.C. § 501 is to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims." *In re Chateaugay Corp.*, 94 F.3d 772, 776–77 (2d Cir. 1996) (finding the creditor's single statement that its claim was "subject to offset amounts due from another Federal [agency]" was sufficient to preserve a setoff right "even under the most stringent standard," and there was no basis in the record to conclude that debtor could have been surprised by creditor's assertion of a setoff right using that terminology (citations and quotations omitted)).

27. Formality is not the dispositive factor in evaluating the validity of a proof of claim. *See In re Sullivan*, 36 B.R. 771, 773 (Bankr. E.D.N.Y. 1984) ("[I]f the record discloses the timely filing by the creditor of a writing which may be construed as a proof of claim, a bankruptcy court is empowered to treat it as a proof of claim notwithstanding its formal defects…. Whether formal or informal, a claim must show … that a demand is made against the estate, and must show the creditor's intention to hold the estate liable." (citations and quotations omitted)).

28. Under fundamental principles recognized in this Court for the consideration of objections to proofs of claim:

> The burden of proof for a party filing a claim objection in a bankruptcy case shifts between the parties. A claimant must allege facts sufficient to support the claim. If claimant's averments in the filed claim meet this standard of sufficiency, the claim is considered to be *prima facie* valid … This burden of moving forward then shifts to the objecting party to produce evidence sufficient to negate the *prima facie* validity of the filed claim. Thus, the objecting party must produce evidence equal in force to the *prima facie* case that would discredit at least one of the allegations that is essential to the claim's legal sufficiency. In the event that the objecting party produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden of the objecting party then shifts back to the claimant. The creditor's entitlement to payment on its claim must then be proven by a preponderance of the evidence.

*In re Jackson*, 2008 WL 1700415, at *2 (Bankr. D. Del. Apr. 9, 2008) (internal citations and quotation omitted).

29. Here, FTX only argues that the single textual reference to "preferences or fraudulent transfers" that were "under investigation," cannot be construed as a clear statement of intention by Celsius to propound and pursue those claims against the Debtors. *See* Claim Objection, ¶ 23. Resting only on this limited technical ground, the Debtors make no substantive argument in response to the Original Proofs of Claim; indeed, they present no other objection. The Debtors' failure to present *evidence* to "refute at least one of the allegations that is essential to the claim's legal sufficiency" is fatal to their position and requires denial of the Claim Objection. *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992) (stating that the objecting party must produce evidence equal in force to the claim; if the objector produces sufficient evidence, the burden of proof shifts back to the claimant); *In re Umstead*, 490 B.R. 186, 189 (Bankr. E.D. Pa. 2013) (rejecting debtor's objection to a *prima facie* valid proof of claim where "the Debtor

presented no evidence disputing the validity or amount of the underlying debtors"); *In re Jackson*, 2008 WL 1700415, at *2.

30. The Original Proofs of Claim put the Debtors on notice that the Celsius Litigation Administrator was pursuing the Avoidance Claims. Furthermore, the Celsius Litigation Administrator has produced sufficient *evidence* to demonstrate the validity of his claims through, among other things, the Amended Proofs of Claim, the Lift Stay Motion (and its supporting documentation), and this Response.

31. The Debtors, unable to argue that the Celsius Litigation Administrator does not have legitimate claims, failed to satisfy their burden to provide evidence. The Debtors do not provide affidavits or supporting documentation which address the substance of the Avoidance Claims. Therefore, the relief sought by the Debtors in the Claim Objection should be denied.

32. The thrust of the Claim Objection is ill-conceived. As explained below, the Original Proofs of Claim were valid and easily sustainable when first filed. As amended, the claims surely surpass any purported concern feigned by the Debtors.

## II.  The Original Proofs of Claim Properly Assert the Avoidance Claims

33. The Original Proofs of Claim are *prima facie* valid with respect to the Avoidance Claims. *In re Jackson*, 2008 WL 1700415, at *2. The Debtors mischaracterize and, for their own self-serving purposes, understate the disclosure provided by Celsius in the Original Proofs of Claim.

34. First, Celsius completed the very claim form that was ***specifically crafted by the Debtors*** with the approval of the Court, which in turn conforms in large part to Official Bankruptcy Form 410B. *See* D.I. 1519; Fed. R. Bank. P. 3001(a). The Debtors cannot now shift their stance to aver that the Original Proofs of Claim are invalid where the Celsius Litigation Administrator provided more than the minimal information required by the Debtors' own form, and that which

otherwise would have been required on the face of Official Bankruptcy Form 410B – which provides a single line on which the claimant is asked to state the nature of the claim. *See* Form 410B, Question 8 ("What is the basis of the claim? Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card….").

35. The completed Celsius claim forms included, among other things, the identity of the Debtors against which Celsius asserted claims and the overall approximate dollar value of its potential damages. Celsius went further by including the Addendum to each of its claim forms, and specifically mentioned the potential claims under chapter 5 of the Bankruptcy Code based on preferences and/or fraudulent transfers.

36. The Debtors do not cite any authority that requires a creditor to provide a cause-of-action-by-cause-of-action factual and legal breakdown of the theory and the amounts sought by each. The reason is simple: There is no such requirement. Although Bankruptcy Rules 3001(c) and (d) outline information that must be provided to support certain legal theories, there is no mention of avoidance or preference actions or the need to describe those claims by any particular information or documentation. The Original Proofs of Claim provide the information requested by the Debtors, including a damages figure, and highlight the particular Bankruptcy Code chapter and use the well-known statutory terms ("preferences and fraudulent transfers") that appear in Sections 544, 547 and/or 548 of the Bankruptcy Code. This is sufficient, and more than passes muster in the Third Circuit. *See In re Lampe*, 665 F.3d 506, 512, 515 (3d Cir. 2011) (finding that the creditor's proof of claim, which merely stated that the debtor had engaged in "fraud and breach of fiduciary duties" was sufficient; "[t]herefore, inasmuch as we conclude that [creditor's] proof

of claim was not 'based on a writing,' he was not required to attach documentation to the claim, and thus his claim was entitled to *prima facie* validity.") (citation omitted).[11]

37. Although the Original Proofs of Claim should be viewed as valid, Celsius at the very least met the modest standard applied for preserving a claim through a "protective" filing. Notably, although the Debtors cite to this Court's decision in *In re Mallinckrodt Plc*, 2022 WL 3545583, at *1 (D. Del. Aug. 18, 2022), Claim Objection ¶ 14, they ignore essential language from that decision: "The burden to comply with the bar date is not high. *Protective proofs of claim are permitted, so a creditor who is uncertain of the amount or validity of its claim can still comply with the bar date without conceding any issues.*" *Id.*, at *2 (citing *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 237-38 (3d Cir. 2021) (internal citations omitted; emphasis added)).

38. Decisions from other courts are equally instructive. For example, in *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680 (E.D.N.Y. 2017), the district court ruled that:

> To be sure, in some instances, the requirements for a proof of claim can be more exacting than a complaint in a civil litigation because the former is intended to serve both as the statement of the claim and its evidentiary support. Comparing the requirements for each pleading is therefore somewhat of an apples-and-oranges exercise. However, because the definition of a "claim" in bankruptcy is so much broader than a "claim upon which relief may be granted" under Federal Rule of Civil Procedure 12(b)(6) – with the bankruptcy claim encompassing, for example, contingent and unmatured claims that would be dismissed in civil litigation on ripeness or case-or-controversy grounds – *the amount of detail required in a proof of claim as a procedural matter is actually quite low, as Official Form 410 suggests*. As [District] Judge Gleeson noted previously, "a claim may have arisen for purposes of a bankruptcy discharge even if it could not yet be asserted as a viable claim in a non-

---

[11] The Debtors' reliance on *In re Exide Techs.*, 601 B.R. 271 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del. 2020) is misplaced. *See* Claim Objection, ¶¶ 22, 24-25. *Exide* involved a creditor that filed most of its claims after the bar date, and then even filed new claims after the effective date of the plan. This is not the case here.

13

> bankruptcy proceeding." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 151 (E.D.N.Y. 2012), *remanded on other grounds, …* 747 F.3d 145 [(2d Cir. 2014)].

*Id.* at 690 (citations omitted; emphasis added).

39. Moreover, "[i]f a debtor disputes a proof of claim, its objection will generally not challenge the adequacy of the allegations, but rather the substance of the claim…. This is consistent with the ***well-established practice in bankruptcy of filing a 'protective' claim, where a creditor thinks it might have a claim but is unsure.***" *Id*. at 690-91 (emphasis added); *accord, In re Trocom Constr. Corp.*, 2016 WL 4575546, at *2 (Bankr. E.D.N.Y. Sept. 1, 2016) ("Creditors with reason to believe they may have a claim but do not yet know the amount of that claim may file a protective proof of claim.") (citation omitted).

40. For these reasons, the Original Proofs of Claim are valid as filed, and the Claim Objection should be rejected in its entirety as it relates to the Avoidance Claims.

### III.   The Proofs of Claim Should Remain As Amended

41. Federal bankruptcy jurisprudence recognizes that an "amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim…. However, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993) (citations omitted).

42. Although no formal FTX objection has been lodged against the Amended Proofs of Claim, they surpass any threshold necessary to prevent summary disallowance through a claims objection proceeding in the current posture. Under long-standing principles applied in this Court:

> [A]llowance of a subsequent claim turns on whether the subsequent claim may be fairly characterized as an amendment of a timely filed

> claim or in substance a new claim. The subsequent claim is an amendment if it:
>
> 1) corrects a defect of form in the original claim;
>
> 2) describes the original claim with greater particularity; or
>
> 3) pleads a new theory of recovery on the facts set forth in the original claim.

*In re FLYi, Inc.*, 2008 WL 170555, at *2–3 (Bankr. D. Del. Jan. 16, 2008) (quoting *In re McLean Indus., Inc.,* 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990) (citation omitted)); *accord, In re Enron Corp.,* 419 F.3d 115, 133 (2d Cir. 2005) (quoting *In re McLean Indus., Inc.*); *In re Hemingway Transp., Inc.*, 954 F.2d 1, 10 (1st Cir. 1992) (finding that amendments are permissible as long as they are not a veiled attempt to assert a new claim based on different facts), *compare with In re Andover Togs, Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999) (holding that amendments that significantly change the nature or amount of the claim could be prejudicial to other creditors who had no prior notice of such claims).

43. Similarly, in *Mallinckrodt*, the court recognized that "[t]he lack of *prima facie* validity ***is not necessarily a ground for disallowance***, and most courts allow claimants to amend their claims to the extent they can." 2022 WL 3545583, at 4 (emphasis added; citation omitted). If there was any issue of claim validity or specificity in the Original Proofs of Claim, that issue was rectified by the Amended Proofs of Claim.

44. The Debtors' reference to *In re Nortel Networks Inc.*, 573 B.R. 522 (Bankr. D. Del. 2017), Claim Objection ¶ 32, does not compel a different conclusion. In *Nortel*, the creditor had (i) already amended its proof of claim five times, (ii) revised what was originally asserted as a contractual royalties claim to a copyright infringement claim, (iii) sought leave to add an additional claimant, and (iv) increased its purported damages almost tenfold. Here, after conducting further

diligence and analysis, Celsius amended its claim to seek a lower damages figure on the same preference claims identified in the Original Proofs of Claim.

45.  Here, the Amended Proofs of Claim clarify the nature of the preference claims against FTX, describing with greater particularly the Original Proofs of Claim, without altering the theories of recovery. Specifically, the Original Proofs of Claim note that Celsius is "investigating causes of action against the FTX debtors under chapter 5 of the Bankruptcy Code, including preference and fraudulent transfer actions." The Amended Proofs of Claim assert those same preference actions against FTX, while providing additional color.

46.  In fact, the amended claims materially reduce the potential claim figure from "no less than $2 billion" to "no less than $444,457,844" – a nearly 78% reduction in potential exposure to the FTX estate. *See* Exh. A at 5. The Debtors therefore are actually benefited rather than prejudiced by the Amended Proofs of Claim – they were initially on notice of $2 billion in potential liability, but now face a drastically more limited exposure. This is not a situation where the Celsius Litigation Administrator is trying to increase the Celsius post-confirmation estate's recovery or to propound wholly new claims – he has done the exact opposite.

## CONCLUSION

For the foregoing reasons, the Court should deny the Claim Objection in its entirety as it relates to the Avoidance Claims, and should grant the Celsius Litigation Administrator such other and further relief as may be just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: August 12, 2024
Wilmington, Delaware

Respectfully submitted,

**COLE SCHOTZ P.C.**

/s/ *Justin R. Alberto*

Justin R. Alberto, Esq. (No. 5126)
Patrick J. Reilley, Esq. (No. 4451)
Melissa M. Hartlipp, Esq. (No. 7063)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: jalberto@coleschotz.com
          preilley@coleschotz.com
          mhartlipp@coleschotz.com

-and-

**PRYOR CASHMAN LLP**

Seth H. Lieberman, Esq. (admitted *pro hac vice*)
Richard Levy, Jr., Esq. (admitted *pro hac vice*)
Andrew S. Richmond, Esq. (admitted *pro hac vice*)
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Email: slieberman@pryorcashman.com
          rlevy@pryorcashman.com
          arichmond@pryorcashman.com

*Counsel to the Celsius Litigation Administrator*