# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |

## **DECLARATION**

I, Giedrius Stasevičius, declare under penalty of perjury:

      1.      I am an Attorney-at-Law (advocate) in the Republic of Lithuania and hold the position of Partner in the Banking and Finance practice of the Firm "Ellex Valiūnas", located at Jogailos st. 9. Vilnius, LT-01116, Republic of Lithuania (the "Firm").

      2.      The Firm is one of the largest law firms in the Republic of Lithuania and is governed the by Law on the Bar of the Republic of Lithuania and the professional requirements of the Lithuanian Bar Association. The Firm was established in 1992 and currently comprises approximately 106 Attorneys-at-Law (advocates or advocate's assistants) and 39 supporting personnel. The Firm offers legal services to leading global corporations, financial institutions, participants in capital markets, investment fund managers, and numerous other global and local companies.

      3.      FTX Trading Ltd. and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), have requested that the Firm provide legal services to the Debtors, and the Firm has consented to provide such services.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

4. This Declaration is submitted in compliance with the *Order Authorizing Procedures to Retain, Compensate and Reimburse Professionals Utilized in the Ordinary Course of Business* [D.I. 432] (the "OCP Order") and the *Order Granting Debtors' Motion to (I) File Under Seal or, If Necessary, Omit Confidential Information from Declarations Filed in Support of the Retention of Certain Foreign Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [D.I. 9586] (the "Foreign OCP Sealing Order"), both of which I have reviewed. I understand the limitations on compensation and reimbursement under the OCP Order and the disclosure requirements under the Foreign OCP Sealing Order.

5. The Firm has not provided services to the Debtors prior to the Petition Date.

6. The Debtors have requested, and the Firm has agreed, to provide services to the Debtors, and the Firm has consented to provide such services (the "Services"). The Services include, without limitation, assistance with recovery of funds.

7. The Firm's current customary hourly rates, subject to change from time to time, are: $80 for paralegals, $210 for junior associates, $275 for associates, $340 for senior associates, and $425 for associate partners, experts and partners' work (exclusive of VAT and disbursements, if any). In the normal course of business, the Firm revises its regular hourly rates in March of each year with such revised rates going effective May 1st of each year. The Firm shall seek reimbursement of only actual and necessary expenses and other charges incurred by the Firm, and shall not exceed the amounts allowed for copying or facsimile transmissions set forth in Local Rule 2016-2(e)(iii).

8. The Debtors do not owe the Firm any amounts for prepetition services, and as of the Petition Date, the Firm did not hold a prepetition retainer.

9. The Firm keeps time records in one-tenth of an hour increments in the ordinary course of business.

10. As of the Petition Date, the Firm was not a party to a services agreement with the Debtors.

11. In the ordinary course of business, the Firm maintains a database for the purpose of performing conflicts checks. The Firm's database contains information regarding present and past engagements. I obtained the list of key parties-in-interest from the Debtors (the "PII List") attached hereto as **Exhibit A** for the purpose of searching the aforementioned database and determining that no conflicts of interests exist in relation to these parties-in-interest with respect to the Firm being engaged in representing the Debtors in connection with the Services.

12. Pursuant to applicable Lithuanian law (certified translations of which are attached hereto as **Exhibit B**), the Firm is prohibited from publicly disclosing the identity of its current and former clients. Specifically, the Firm and the Attorneys-at-Law at the Firm owe duties of confidentiality to clients, which require the Firm and the Attorneys-at-Law at the Firm to at all times maintain and protect the confidentiality of the affairs of current and former clients, unless the client consents to disclosure of certain information, including its identity. Art. 46(5) of the Law on the Bar of the Republic of Lithuania states that:

> Getting public or secret access to the information subject to advocate's professional secrecy and using it as evidence shall be prohibited. Information subject to advocate's professional secrecy shall encompass the fact of consulting the advocate, the terms and conditions of the contract with the client, the information and data provided by the client, the nature of the consultation and the data collected by the advocate at the request of the client, as well as other content of communication between the advocate and the client, including meetings, correspondence, telephone conversations, and other forms of communication.

*(Article 46(5) of Law on the Bar of the Republic of Lithuania, 18 March of 2004, No. IX-2066. Published in Valstybės žinios, 6 April, 2004, No. 50-1632. [https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3](https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3))* Art. 8 of the Code of Ethics of Lithuanian Advocates emphasizes that:

1. The security of the client's secret entrusted to the advocate is a necessary condition for the relationship of mutual trust and the proper performance of the advocate's functions, therefore confidentiality is the main and most important right and duty of the advocate, which is not subject to the statute of limitations.

2. The advocate must ensure that all information provided by the client and received by the advocate during the performance of the client's assignment will be kept as a professional secret of the advocate.

3. The advocate must take measures so that without the client's consent, the information constituting the advocate's professional secret is not used against the client, made public or otherwise disclosed, except for the cases specified in legal acts and part 4 of this article or when it is necessary for the proper execution of the client's order.

4. It is forbidden for an advocate to use the information constituting the advocate's professional secret for his or another person's interests in an illegal way. The advocate has the right to disclose information constituting the advocate's professional secret without the client's consent, when it is unavoidably necessary:
   1) to preserve human life;
   2) to protect the rights and legitimate interests of the client, his heir or assignee;
   3) to defend the advocate's rights in a dispute with a client, but only to the extent necessary for the correct settlement of the dispute.

5. Submission of information constituting the advocate's professional secret to the Lithuanian Bar Association or its bodies is not considered a disclosure of the client's secret and a violation of confidentiality.

6. An advocate must demand certain confidentiality obligations from his colleague, advocate's assistant, other person he uses to provide legal services, so that information constituting the advocate's professional secret is not disclosed.

*(Art. 8 of the Code of Ethics of Lithuanian Advocates, adopted by the decision of the general meeting of the advocates of 15 April, 2016. Published by the order of the Minister of Justice of the Republic of Lithuania No. 1R-133 of 22 April, 2016 in the Register of Legal Acts, 22April 2016, No. 10280, [https://e-seimas.lrs.lt/portal/legalAct/lt/TAD/9d7e2bd008c511e687e0fbad81d55a7c?jfwid=fhhu5mn1q](https://e-seimas.lrs.lt/portal/legalAct/lt/TAD/9d7e2bd008c511e687e0fbad81d55a7c?jfwid=fhhu5mn1q))*

13. Therefore, the advocates of the Firm, the advocate's assistants and other supporting personnel are bound by professional secrecy, including a prohibition from disclosing the fact that a client or potential client approached the advocate for legal consultation.

14. Thus, the Firm is prohibited from disclosing the identity of its clients not just in a public filing, but also to the Debtors, the Court, the Office of the United States Trustee (the "U.S. Trustee") and the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee"). Therefore, filing the disclosures "under seal" or in redacted form would result in a violation of Lithuanian laws and professional conduct rules.

15. In the absence of express client consent, the Firm would be in breach of its legal duties and professional obligations if it were to disclose the identity of any of its clients. If any such disclosure was made, the Firm and/ or Attorneys-at-Law at the Firm potentially would face litigation risk, including damages and injunctive relief, as well as potentially other regulatory and professional conduct proceedings. Specifically, Art. 52(1)(2)(3) of the Law on the Bar of the Republic of Lithuania provides that:

> 1. An advocate may be subject to a disciplinary case for violations of the requirements of this Law and the Code of Ethics of Lithuanian Advocates, as well as violations of the advocate's activities.
>
> 2. The decision to initiate a disciplinary case is made by the Lithuanian Bar Association or the Minister of Justice.

> 3. Advocate' disciplinary cases are examined by the Advocates Court of Honor. <…>

*(Article 52(1)(2)(3) of Law on the Bar of the Republic of Lithuania, 18 March of 2004, No. IX-2066. Published in Valstybės žinios, 6 April, 2004, No. 50-1632. [https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3](https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3))*

Art. 53 of the Law on the Bar of the Republic of Lithuania provides that:

> The Advocates Court of Honor may impose the following disciplinary penalties on a lawyer for the violations specified in Article 52, Paragraph 1 of this Law:
> 1) warning;
> 2) reprimand;
> 3) publicly announced reprimand;
> 4) propose to cancel the decision of the Lithuanian Bar Association to recognize a person as an advocate.

*(Article 53 of Law on the Bar of the Republic of Lithuania, 18 March of 2004, No. IX-2066. Published in Valstybės žinios, 6 April, 2004, No. 50-1632. [https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3](https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3))*

Art. 20(9) of the Law on the Bar of the Republic of Lithuania further provides that:

> The damage caused by the illegal actions of the advocate, advocate's assistants and other employees of the advocate or advocate's professional association in the performance of the advocate's activities shall be compensated by the insurer by paying an insurance benefit not exceeding the insurance amount. If the insurance payment is not sufficient to compensate the entire damage, the advocate who caused the damage compensates the difference between the amount of the actual damage and the insurance payment.

*(Article 20(9) of Law on the Bar of the Republic of Lithuania, 18 March of 2004, No. IX-2066. Published in Valstybės žinios, 6 April, 2004, No. 50-1632. [https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3](https://www.e-tar.lt/portal/legalAct.html?documentId=TAR.9F4371AB03A3))*

16. Notwithstanding that the Firm is prohibited from disclosing the identities of its clients, the Firm did obtain the PII List from the Debtors and searched the database it maintains for the purpose of performing a fulsome conflicts check. The Firm, using its best efforts and taking into account the extent of information provided, could identify relevant connections to 12 parties on the PII List. Cognizant of its obligations under the Foreign OCP Sealing Order, the Firm has worked diligently to identify the Firm's current connections identified on the PII List which are already available within the public domain or, to the extent such Firm connections identified on the PII List are not publicly available, to engage with such connections in order to obtain their voluntary consent to disclose their identities to the Court, the U.S. Trustee, the Debtors and the Committee on a confidential basis.

17. Ultimately, the existence of 4 Firm connections identified on the PII List are already available within the public domain; and with the exception of 3 Firm connections who have refused to consent to the disclosure of their identity, the Firm has obtained the consent of 5 Firm connections identified on the PII List (the "Non-Public Consenting Ellex Connections") to disclose their identity solely to the Debtors, the Court, the U.S. Trustee and the Commmittee on a confidential basis; provided, however, that any such disclosure must be made under seal and not disclosed in any public manner (all Firm connections in this paragraph referred to collectively, as the "Ellex Connections"). Attached hereto as **Exhibit C** is a list of the Public Ellex Connections that are available in the public domain and, to the extent not required to be sealed by order of this Court, identified without redaction. Attached hereto as **Exhibit D** is a list of the Non-Public Consenting Ellex Connections that are not available in the public domain and are being disclosed solely to the Debtors, the Court, the U.S. Trustee and the Committee with the consent of the applicable Ellex Connection. With regard to 3 clients who have declined

to provide the necessary consent to disclose their identities, I confirm that these clients are categorized on the PII List as: "Banks/Lender/UCC Lien Parties/Administrative Agents", "Vendors" and "Investments/Acquisitions". I further confirm that the Firm does not represent any of the parties-in-interest on the PII List in connection with these Chapter 11 Cases or the Services to be provided to the Debtors as disclosed herein.

18. To the best of my knowledge, formed after due inquiry, neither I, the Firm, nor any attorney or employee thereof (i) has any connection with the Debtors or (ii) currently represents (or previously represented) any of their creditors, other parties-in-interest, the U.S. Trustee or any person employed by the U.S. Trustee with respect to the Debtors or the matters upon which it is to be engaged. Additionally, the Firm, its attorneys and employees do not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates or any class of creditors or equity interest holders with respect to the matters upon which the Firm is to be employed, except as disclosed herein.

19. Neither I, nor any principal, partner, director, officer of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

20. The Firm understands that any compensation/reimbursement paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 9 August, 2024

_____
Giedrius Stasevičius

{1368.002-W0076811.}
4873-9485-3815 v.2