IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re:<br>FTX TRADING, LTD., *et al.*,<br><br>　　　　　　　　　　　Debtors. | x  Chapter 11<br>:<br>:  Case No. 22-11068-JTD<br>:<br>:<br>:<br>:<br>x |

---

**OBJECTION OF ELD CAPITAL LLC TO CONFIRMATION OF
DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION AND
<u>RESERVATION OF RIGHTS</u>**

ELD Capital LLC ("ELD"), a customer claimant in these proceedings, respectfully submits this objection ("Objection") to confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates (D.I. 22165, "Plan") and reserves its rights with respect to its claims against the Debtors.[1]

The Plan and its proposed implementation may extinguish ELD's claims that certain Debtors fraudulently induced exchange transactions through their conduct on November 10, 2022—*one day before the Petition Date*—causing a reduction of more than 80% in the value of ELD's customer account.[2] For the reasons addressed below, the Court should not approve the Plan's global settlement and release provisions unless ELD's fraud claims against the Debtors are preserved. Alternatively, if the global settlement and release provisions do not extinguish ELD's fraud claims against the Debtors, ELD reserves its rights with respect to such claims.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Plan.

[2] The exchange transactions were effectuated on November 11, 2022—*the Petition Date*.

I. **BACKGROUND**[3]

   A. **ELD and its Claim**

ELD is a customer claimant in these proceedings with a Class 5A Dotcom Customer Entitlement Claim. ELD is a limited liability corporation registered in St. Vincent and the Grenadines. On or about February 25, 2024, ELD's manager filed Claim No. 91933 in these proceedings. Debtors objected to Claim No. 91933 as overstated. *See* Doc. 11892-2, Debtors' Twenty-Fifth (Substantive) Omnibus Objection to Certain Overstated Proofs of Claim (Customer Claims) ("Twenty-Fifth Omnibus Objection"), Schedule 1, at 21 of 61. On July 2, 2024, Claim No. 91933 was amended, in relevant part, to reflect that ELD is the correct holder of the claim and provide additional details in support of the claim. Specifically, the additional details provided reflect that a component of ELD's claim arises from certain exchange transactions fraudulently induced by Debtors that caused the value of assets in ELD's customer account to be reduced as of the Petition Date.

   B. **Debtors Fraudulently Induced Claimant's Exchange Transactions at Issue**

Prior to the Petition Date, ELD maintained a customer account with an exchange operated by Debtors that held cryptocurrencies and fiat currency. ELD's holdings included U.S. Dollars ("USD") and cryptocurrencies Avalanche ("AVAX"), Bitcoin ("BTC"), Ethereum ("ETH"), EthereumPoW ("ETHW"), FTX Token ("FTT"), Serum ("SRM"), Solana ("SOL"), and TRON ("TRX"). Just before the Petition Date, ELD's holdings in these assets amounted to $569,262.34 in USD, including over $308,000.00 in USD itself held in trust by FTX.

---

[3]The background of the Debtors' business and events leading to the filing of the Chapter 11 Plan of Reorganization are well known to the Court and will not be repeated herein except as relevant to the Objection.

In early November 2022, news of concerns with FTX's leadership, management of assets, and close relationship with its sister companies led masses of FTX customers to withdraw their assets from the exchange and caused widespread alarm about FTX's ability to continue operating as a going concern.  By November 10, 2022, the Securities Commission of the Bahamas had frozen the assets of certain Debtors, suspended the registration of FTX Digital Markets Ltd., and applied to the Supreme Court of the Bahamas for the appointment of a provisional liquidator of FTX Digital Markets Ltd.—and the Debtors knew of the forthcoming bankruptcy filing.  Nonetheless, on that date, FTX publicly announced that it had reached an agreement with TRON, another cryptocurrency platform, to allow holders of TRON-sponsored cryptocurrencies (*i.e.*, tokens) on the FTX platform to move such assets to external wallets on a 1:1 basis:

> FTX Announcement Regarding the Tron Credit Facility:
>
> We are pleased to announce that we have reached an agreement with Tron to establish a special facility to allow holders of TRX, BTT, JST, SUN, and HT to swap assets from FTX 1:1 to external wallets.
>
> This functionality will be enabled at 18:30 UTC, November 10, 2022.
>
> The exact capability of the Tron Token facility will be determined weekly and future injections will occur at 14:00 UTC. The amount to deposited will depend on a number of factors such as withdrawal demand and funding capacity to be provided by Tron. By providing a set schedule of the amount of tokens to be introduced into the market and the corresponding time, our goal is to provide more clarity to the market allowing users to make better informed decisions.
>
> As part of this agreement, we will be disabling Tron deposits for all users during this period. The only deposits will be the pre-announced deposits conducted weekly by the Tron Team. Initially, $13,000,000 of assets will be deployed to facilitate such swaps.
>
> Information on future capital injections will be shared on a weekly basis.
>
> We sincerely appreciate your patience and support of FTX during this period! And we hope to have more information to share in the near future. We are also very

> grateful to the Tron team for stepping up to assist us in these hard times and provide support for the wider crypto industry.
>
> Please note, these markets (TRX, BTT, JST, SUN, and HT) may experience high levels of volatility. Please ensure you understand the details of this arrangement and associated risks before taking any actions. If you have any questions, don't hesitate to reach out through support channels or our official telegram channel: [link embedded].

@FTX_Official, X (f/k/a Twitter) (Nov. 10, 2022 12:48), bit.ly/3YMEvrl.[4]

On this date and until the time of Debtors' bankruptcy filing, the prices of TRON-sponsored tokens on the FTX platform were dramatically higher than that of those same tokens on other exchanges. Therefore, if an FTX customer converted other assets to TRON-sponsored tokens to move its assets off the FTX platform to an external wallet, it would need to accept an enormous "liquidity" discount.

Given the substantial and well-publicized concerns about the Debtors' ability to operate as a going concern and satisfy the withdrawal demands of its customers, as well as the specific representations made by the Debtors, ELD made the difficult decision to accept the "liquidity" discount and engage in exchange transactions to convert holdings in cryptocurrencies and fiat currency in its account into TRON-sponsored tokens. ELD's transactions made in anticipation of the TRON credit facility were effectuated on November 11, 2022—the Petition Date. After these transactions were effectuated, the value of assets in ELD's account, which just prior was $569,262.34 in USD, was reduced to approximately $99,188.75 in USD. These transactions were specifically induced by the Debtors' public representations and false promises.

When ELD attempted to move its TRON-sponsored tokens to external wallets pursuant to the Debtors' representations, it was prevented from doing so, as the facility was not made

---

[4]The announcement was simultaneously made on FTX's official website, which is no longer active, and reported by numerous media outlets.

4

available to ELD.  At the same time, a message displayed on the FTX platform that "[d]eposits of TRX, BTT, JST, SUN, and HT [were] disabled."  Shortly thereafter, the Debtors filed for bankruptcy.

The Debtors are liable to the ELD for fraud.  To establish fraud, a plaintiff must show that: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false, or made it with reckless indifference to the truth; (3) the defendant's false representation was intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) the plaintiff was damaged by such reliance.  *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).  Fraud may occur through misrepresentation or by concealment.  *See id.*  Here, the Debtors misrepresented that ELD would be able to avail itself the facility to move its assets off the FTX platform to an external wallet if it converted its assets to TRON-sponsored tokens.  In addition, the Debtors concealed its imminent bankruptcy filing at the time it made the exchange offer.  At the time of the Debtors' misrepresentations and concealment, the Debtors were aware that ELD would not be able to avail itself of the facility to move its assets to an external wallet and that they would imminently be making their bankruptcy filing.  The Debtors' misrepresentations and concealment were intended to induce the ELD's exchange transactions of cryptocurrencies and fiat currency into TRON-sponsored tokens.  ELD justifiably relied on the Debtors' misrepresentations and concealment in determining to make the exchange transactions given the means and manner in which the exchange offer was made (*i.e.*, on FTX's business website and official social media channels, with a specific indication of TRON-sponsored tokens included in the offer, and FTX's representations that TRON would be participating in the facility and that future capital injections to support the credit facility would be "shared on a weekly

5

basis"). As a direct result of ELD's exchange transactions made in reliance on the Debtors' misrepresentations and concealment, ELD was damaged at least to the extent of the reduction in value of the assets in ELD's customer account as of the Petition Date.

According to the Debtor's records, when the valuation of customer accounts was fixed for purposes of determining customer claims, the value of assets in ELD's account was approximately $98,943.38 in USD as a result of the discount taken in the exchange transactions. Thus, to the extent ELD's customer claim is not valued at or about $569,262.34, it has a fraud claim against Debtors for approximately $470,318.96 in damages directly arising from their misrepresentations and concealment with respect to the transactions described herein.

### C. The Plan's Settlement and Release Provisions

The Plan extinguishes claims against the Debtors in two ways: (1) a global settlement of claims; and (2) release provisions.

The global settlement is set forth in Article 5 of the Plan:

> In consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, *the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors*, including without limitation: (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors or the Insiders of other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to

the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

*   *   *

Plan, § 5.2 (Global Settlement of Claims and Interests) (emphasis added). The global settlement provision continues by explaining that "the value of Claims in respect of Digital Assets shall be calculated pursuant to <u>Section 4.4</u>" and "Claims shall be classified and treated as set forth in <u>Article 4</u>." *Id.* (underlining in original). Article 4 and Section 4.4 simply provide the classification table for claims (*i.e.*, Class 5A Dotcom Customer Entitlement Claims in the case of ELD) and explain "[u]nless otherwise expressly provided in the Digital Assets Estimation Order, the value of a Claim in respect of a Digital Asset shall be calculated by converting the value of such Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the Digital Assets Conversion Table." Plan, § 4.1.1 (Summary of Classification and Treatment), § 4.4 (Valuation of Claims).

The Plan's release provisions are set forth in Article 10 of the Plan. As relevant to ELD's fraud claims, the Plan provides the following:

> Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, *the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, discharge and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Interests in, the Debtors*, any property of the Estates, the Plan Administrator or any property of the Wind Down Entities, including all Claims of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Proof of Interest based upon such Claim, debt, right, liability, obligation or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, liability, obligation or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim, liability, obligation or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim that existed immediately prior to or on account of the filing of these Chapter 11 Cases shall be deemed cured on the Effective Date. For the avoidance of doubt, any Claims arising

pursuant to section 502(h) of the Bankruptcy Code following the conclusion of any adversary proceeding shall not be discharged on or after the Effective Date.

Plan, § 10.2 (Discharge of Claims and Termination of Interests) (emphasis added).  Claim is defined as "any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code, which broadly includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"  Plan, § 2.1.30; 11 U.S.C. §101(5).

## II.    OBJECTIONS

The global settlement and release provisions may be read to settle, release, or preclude ELD's fraud claim against the Debtors.  Yet, ELD has not consented to any settlement or release of its fraud claims against the Debtors.  The Court should not approve of the Plan insofar as it requires ELD (and potentially other similarly situated customers) to settle and/or release claims against its will under the circumstances present here.

ELD has a claim against Debtors for their fraudulent inducement of the exchange transactions.  ELD's fraud claim was asserted through the filing of the original customer claim. Although ELD's customer claim is classified as a Class 5A Dotcom Customer Entitlement Claim, the Debtors previously objected to ELD's customer claim for the pre-transaction amounts as overstated and have not scheduled ELD's fraud claim.  *See* Doc. 11892-2, Twenty-Fifth Omnibus Objection, Schedule 1, at 21 of 61.  Since the fraud occurred on the Petition Date, the customer claim was ELD's only reasonable means of asserting the fraud claim considering the automatic stay effective because of these proceedings.  The Plan's general settlement and release provisions could serve to extinguish ELD's fraud claim.  *See* Plan, § 5.2 (Global Settlement of Claims and Interests), § 10.2 (Discharge of Claims and Termination of Interests).  Confirmation

of the Plan should not discharge ELD's fraud claim against the Debtors, which has neither been scheduled nor allowed as part of ELD's customer claim.

This Court has the authority to reject overbroad or otherwise defective global settlement and/or release provisions, *see In re Wash. Mut., Inc.*, 442 B.R. 314, 356 (Bankr. D. Del. 2011) (modifying release and global settlement in Chapter 11 plan), and it should exercise this authority to modify the global settlement and release provisions to exclude fraud claims by customers whose accounts were reduced because of the Debtors' fraud immediately before the Petition Date. The global settlement is broadly drafted and includes catch-all language to sweep in nearly all conceivable claims against the Debtors whether or not the claim arose Prepetition. *See* Plan, § 5.2 (Global Settlement of Claims and Interests). The release provisions fill virtually any gaps in the global settlement and purport to release remaining claims against the Debtors. *See* Plan, § 10.2 (Discharge of Claims and Termination of Interests). The incredible breadth of the global settlement and release provisions is not necessary to effectively implement the Plan. *Cf. In re Mallinckrodt PLC*, 639 B.R. 837, 868–69 (Bankr. D. Del. 2022) (Dorsey, J.) (approving releases that were "integral" to the debtor's reorganization). If the Plan is confirmed and the fraud claims of customers such as ELD are discharged, however, claimants in ELD's position will be stripped of the ability to recover the value of their accounts but for the Debtors' fraud. Thus, the global settlement and release provisions of the Plan should not be approved insofar as they purport to release these claims that, under the circumstances, should not be extinguished by operation of the Plan.

### III.    RESERVATION OF RIGHTS

If the Global Settlement and release provisions do not extinguish ELD's fraud claims against the Debtors, ELD reserves its rights with respect to such claims.

9

## IV. CONCLUSION

The Court should not approve the Plan's global settlement and release provisions unless ELD's fraud claims against the Debtors are preserved. Alternatively, if the global settlement and release provisions do not extinguish ELD's fraud claims against the Debtors, ELD reserves its rights with respect to such claims.

Dated: August 16, 2024

DILWORTH PAXSON LLP

*/s/ Peter C. Hughes*
Peter C. Hughes, Esquire
800 N. King Street, Suite 202
Wilmington, DE 19801
Phone: (215) 575-7282
Email: phughes@dilworthlaw.com

MILLER SHAH LLP

James E. Miller, Esquire
Alec J. Berin, Esquire
1845 Walnut Street
Philadelphia, PA 19103
Phone: (866) 540-5505
Email: jemiller@millershah.com
        ajberin@millershah.com

*Counsel for ELD Capital LLC*