**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Re:  D.I. No. 22165**<br><br>**Objection Deadline: August 16, 2024, at 4:00 p.m.**<br>**Hearing Date: October 7, 2024, at 10:00 a.m.** |

**THE CELSIUS LITIGATION ADMINISTRATOR'S OBJECTION TO**
**CONFIRMATION OF THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES**

Mohsin Meghji, as the post-confirmation Litigation Administrator (the "Celsius Litigation Administrator") under the confirmed Chapter 11 plan for Celsius Network LLC and its affiliated debtors (collectively, "Celsius"), submits this objection (the "Objection") to confirmation of the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 22165] (the "Plan")[2] and respectfully states:

**PRELIMINARY STATEMENT**

1.      As it stands, the Plan runs the risk of violating orders of the NY Bankruptcy Court (defined below), which will adjudicate Celsius's causes of action to avoid and recover certain transfers under Chapter 5 of the Bankruptcy Code.  Specifically, the Plan provides for immediate

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors (collectively, "FTX" or the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]     Capitalized terms not defined herein have the meanings given in the Plan.

distribution to certain holders of Customer Entitlement Claims who funded their FTX cryptocurrency accounts through avoidable pre-bankruptcy transfers of more than $440 million from Celsius's platform.  Yet, the distributions are set to occur while those transactions are subject to pending avoidance claims by the Celsius Litigation Administrator against both FTX and FTX's customers.

2.      To remedy this infirmity, the Celsius Litigation Administrator submits that the Plan must be amended in two respects:  ***First***, the scope of Customer Entitlement Claims should be expanded so that Celsius's recovery claims are treated in the same class as claims by Celsius-FTX customers who received or benefitted from the preferential transfers of Celsius property to FTX (the "Celsius-FTX Customers").  ***Second***, the Plan should provide a reserve of the cash that would otherwise compensate the Celsius-FTX Customers, pending resolution of the ongoing avoidance actions.

3.      As described in the Celsius Litigation Administrator's response to the Debtors' Claim Objection [D.I. 22774] and his Lift Stay Motion (defined below) [D.I. 16815], Celsius holds claims against the Debtors to recover more than $440 million of preferential transfers.  The Celsius claims seek relief against the Debtors as mediate or immediate transferees of property that was owned by Celsius, held in Celsius's customer accounts, and, in turn, transferred by those Celsius customers to the Debtors.  As subsequent transferees, the Debtors must return to Celsius the Celsius cryptocurrency property (or its value) that was transferred to the Debtors' platforms. Those former Celsius customers, however, are also FTX Customers who, absent the relief sought by this Objection, are set to receive a distribution of ***more than 100% of their claims***.

4.      In compensating the former Celsius customers in this manner, the Plan risks infringing on the jurisdiction of the NY Bankruptcy Court, resulting in potentially inconsistent

rulings between this Court and the NY Bankruptcy Court, and frustrating Celsius-FTX Customers' recoveries by paying out to the Celsius-FTX Customers funds that underlie the Celsius Litigation Administrator's preference claims.[3]  Once the Celsius Litigation Administrator obtains a favorable judgment, then he, *not* the Celsius-FTX Customers, will be the proper recipient of those funds.

5.      The Plan, therefore, cannot be confirmed in its current form.  Instead, it should be amended as described herein.  Once the NY Bankruptcy Court resolves the avoidance actions, the Debtors can distribute the funds to the appropriate party, namely the Celsius Litigation Administrator or the Celsius-FTX Customers.

## **BACKGROUND**

### I.      **The FTX Chapter 11 Cases**

6.      On November 11 and November 14, 2022, the above-captioned Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  On December 16, 2023, the Debtors filed their initial plan of reorganization [D.I. 4861] and initial disclosure statement [D.I. 4862].  The *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [D.I. 18976] was approved on June 26, 2024 [D.I. 19068].  The Plan was filed on August 2, 2024.

### II.     **The Celsius Chapter 11 Cases**

7.      On July 13, 2022, Celsius filed chapter 11 petitions in the U.S. Bankruptcy Court for the Southern District of New York (the "NY Bankruptcy Court"), jointly administered as *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG).

---

[3]     Even if this Court denies the Lift Stay Motion (defined below), the Celsius Litigation Administrator intends to commence his preference recovery actions against the Debtors in this Court.

8.      After extensive litigation, the NY Bankruptcy Court issued a decision in 2023 holding that the contents of each Celsius customer's "Earn" account constituted property of Celsius and its bankruptcy estate.  *See In re Celsius Network LLC*, 647 B.R. 631, 637 (Bankr. S.D.N.Y. 2023) (the "Property Ruling").

9.      On January 29, 2024, Celsius filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Modified for MiningCo Transaction)* (the "Celsius Plan").  The NY Bankruptcy Court confirmed the plan on November 9, 2023, which became effective on January 31, 2024.  *See In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y.), D.I. 3972, D.I. 4289, D.I. 4298.

10.      The Celsius Plan vested overall responsibility for the post-confirmation Celsius estate in a Plan Administrator and, in turn, provided for the appointment of the Celsius Litigation Administrator to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates, including certain preference actions.  In that capacity, the Celsius Litigation Administrator is responsible for the pursuit of the causes of action interposed in and under the Original Proofs of Claim (defined below) filed by Celsius, as recently amended by the Amended Proofs of Claim (defined below).

### III.      The Proofs of Claim Filed on Behalf of Celsius

11.      Celsius timely filed proofs of claim against the Debtors on June 29 and 30, 2023 (the "Original Proofs of Claim").  The Original Proofs of Claim included two categories of claims: (i) causes of action "based upon unsubstantiated and disparaging statements allegedly made by FTX's officers, directors, employees, or agents regarding Celsius's balance sheet and financial condition" (the "Disparagement Claims"); and (ii) causes of action "under chapter 5 of the

Bankruptcy Code, including preference and fraudulent transfer actions" (the "Avoidance Claims").[4]

12.     On July 7 and 8, 2024, the Celsius Litigation Administrator amended the Original Proofs of Claim (the "Amended Proofs of Claim", and together with the Original Proofs of Claim, the "Proofs of Claim"), no longer asserting the Disparagement Claims, while continuing to pursue the Avoidance Claims of more than $440 million concerning transfers made to the Celsius-FTX Customers and subsequently received by FTX (except for FTX Debtor Quoine Pte Ltd. ("Quoine"), which was a direct recipient of transfers from Celsius).

13.     On July 8, 2024, the Debtors filed their *Objection to Proofs of Claim Filed by Celsius Network LLC and its Affiliated Debtors* (the "Claim Objection") [D.I. 19795].  On August 12, 2024, the Celsius Litigation Administrator filed his *Response to Debtors' Objection to Proofs of Claim Filed by Celsius Network LLC and its Affiliated Debtors* [D.I. 22774].  The hearing on the Claim Objection is scheduled for September 12, 2024.

### IV.     The Celsius Lift Stay Motion and the FTX Preference Actions

14.     On June 4, 2024, the Celsius Litigation Administrator filed his *Motion for Relief from the Automatic Stay* (the "Lift Stay Motion") [D.I. 16815] in this Court seeking relief to prosecute the Avoidance Claims against the Debtors in the NY Bankruptcy Court.

15.     The Avoidance Claims arise from transfers made during the ninety (90) day period preceding Celsius's petition date (the "Celsius Preference Period").  The transfers were made: (i) to or for the benefit of the Celsius-FTX Customers whose "Earn" account holdings – comprised of assets determined in the Property Ruling to be property of Celsius – were withdrawn by or on

---

[4]     *See, e.g.*, Claim No. 3938, Addendum at 2.

account of those customers and moved to FTX, thereby rendering the Debtors as mediate or immediate transferees under Section 550 of the Bankruptcy Code (the "Customer Preference Actions"); and (ii) to Quoine as an initial transferee from Celsius (the "Quoine Action," and together with the Customer Preference Actions, the "FTX Preference Actions").  The Celsius Litigation Administrator proposes to litigate the FTX Preference Actions under Sections 547 and 550 of the Bankruptcy Code in the NY Bankruptcy Court (or in this Court if the Lift Stay Motion is denied) to recover the property (or the value of the property) transferred from Celsius to the Debtors.[5]  A hearing on the Lift Stay Motion is scheduled for September 12, 2024.

## **OBJECTION**

### I.    The Plan Improperly Classifies the Celsius Claims as General Unsecured Claims Instead of Treating Them as Customer-Related Claims

16.    A plan can be confirmed only if it "complies with the applicable provisions of [Title 11]."  11 U.S.C. § 1129(a)(1).  The Plan does not comply with 11 U.S.C. § 1122(a).  Section 1122(a) of the Bankruptcy Code provides, in part that "a plan may place a claim or an interest in a particular class *only if such claim or interest is substantially similar to the other claims or interests in such class*."  11 U.S.C. § 1122(a) (emphasis added).  When analyzing whether claims within a class are substantially similar, "the focus of the classification [should be on] the legal character of the claim *as it relates to the assets of the debtor*."  *In re W.R. Grace & Co.*, 475 B.R. 34, 109–10 (D. Del. 2012), *aff'd,* 532 F. App'x 264 (3d Cir. 2013), *aff'd,* 729 F.3d 332 (3d Cir. 2013) (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986)).  For this reason,

---

[5]    As is described more fully in the Lift Stay Motion, the Celsius Litigation Administrator has sought relief from the automatic stay in these cases to pursue the FTX Preference Actions against the Debtors in the NY Bankruptcy Court.  Approximately 2,500 preference avoidance actions against former Celsius customers who transferred or who benefitted from the transfer of their accounts from Celsius's platform are currently pending in the NY Bankruptcy Court.

"plan proponents should attempt to group together those claims that exhibit a similar effect on the debtor's bankruptcy estate, rather than merely grouping together claims that are otherwise similar in character." *Id.* (citation omitted).

17.    While bankruptcy courts have broad discretion in deciding how to classify claims, "the classification of the claims or interests must be reasonable." *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987). *See also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993) ("[I]t seems clear that the Code was not meant to allow a debtor complete freedom to place substantially similar claims in separate classes."); *Teamster Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 586 (6th Cir. 1986) ("[T]here must be some limit on a debtor's power to classify creditors in such a manner.").

18.    Although similar claims can be grouped in different classes, "a plan should not 'arbitrarily' designate classes." *In re Jersey City Med. Ctr.*, 817 F.2d at 1061 (citing *In re LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1980)). "As a general rule, the classification in a plan should not do substantial violence to any claimant's interest. The plan should not arbitrarily classify or discriminate against creditors." *In re LeBlanc*, 622 F.2d 872, 879 (5th Cir. 1980) (citation omitted).

19.    As written, the Plan arbitrarily classifies Celsius's claims as General Unsecured Claims, even though the claims originate from the same basis of claims held by Class 5A and 5B creditors: namely, a right to be compensated based on the existence of a customer account on an FTX Exchange. Celsius's claims result from the transfer of account assets owned by Celsius to fund customer accounts at FTX. Yet, by classifying Celsius's claims as General Unsecured

Claims, the Plan discriminates against and causes harm to Celsius by channeling its claim away from a Customer Entitlement Claim and into the General Pool.

20.    The Plan narrowly and improperly defines Class 5A and 5B Claims.  Class 5A Dotcom Customer Entitlement Claims are defined to include any Customer Entitlement Claim against the FTX.com Exchange.[6]  *See* Plan, ¶ 2.1.66.  Customer Entitlement Claims, in turn, include only a Claim "held by such Person or Entity *in an account on any FTX Exchange*." *Id.*, ¶ 2.1.46.  As a result, an FTX "customer" whose FTX account was funded with assets that originated from Celsius – and that were owned by Celsius – is classified in Classes 5A and 5B. But any other claimant whose rights against FTX arise from the very same assets transferred into FTX accounts by the very same customers, such as the Celsius Litigation Administrator, receives a decidedly less-favorable treatment merely because Celsius was not a "customer" of FTX. Currently, the Plan distributions are based on the identity of the claimant, as opposed to the substance of the claim.

21.    There is no legitimate basis to confine Class 5 exclusively to FTX account holders. In so doing, the parameters of Classes 5A and 5B are improperly restrictive, arbitrary and discriminatory.  *See In re Nuverra Envt'l Sols., Inc.*, 590 B.R. 75, 96 (D. Del. 2018), *aff'd*, 834 F. App'x 729 (3d Cir. 2021) ("The 'primary analysis centers upon the legal attributes of the claims and not upon the status or circumstances of the claimant. *Emphasis is not upon the holder so much as it is upon that which is held*.'") (quoting *In re FF Holdings Corp.*, 1998 U.S. Dist. LEXIS 10741, at *13 (D. Del. Feb. 17, 1998) (emphasis added)).

---

[6]    Class 5B U.S. Customer Entitlement Claims are similarly defined to include any Customer Entitlement Claim against the FTX.US Exchange, subject to certain exclusions not pertinent here.

22.     The discriminatory classification scheme described above can be solved by a simple
change to the definition of a "Customer Entitlement Claim." Section 2.1.46 of the Plan, which
defines that category of claims, should be revised as follows:

> "Customer Entitlement Claim" means any Claim of any kind or nature
> whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy
> Code, federal or state law, rule or regulation, common law or otherwise) held by
> any Person or Entity against any of the Debtors that compensate the Holder of such
> Claim for the value as of the Petition Date on account of, by reason of, or resulting
> from Cash or Digital Assets held by such Person or Entity in an account on
> transferred into any FTX Exchange.

23.     The proposed change would ensure that the Celsius Litigation Administrator is not
unfairly prejudiced under the Plan while honoring the purpose behind Class 5 – compensating FTX
creditors who are owed money based on or relating to the transfer of funds into accounts on an
FTX Exchange.

24.     The proposed Plan revisions do not prejudice other creditors and maximize value
for all persons and entities to be compensated under the Plan. *See In re Boys Scouts of Am. & Del.
BSA, LLC*, 650 B.R. 87, 176 (D. Del. 2023) ("One 'honest' purpose in developing a plan of
reorganization is to 'maximiz[e] value for the Debtors, their estates, and their creditors.'") (quoting
*In re THGH Liquidating LLC*, 2020 WL 5409002, at *7 (D. Del. Sept. 9, 2020)). Currently, Class
5 includes the Celsius-FTX Customers who are the defendants in the pending preference actions
commenced by the Celsius Litigation Administrator in the NY Bankruptcy Court. Upon avoidance
of the preferential transfers, the Celsius-FTX Customers would be obligated to return to Celsius
the value of the funds ultimately deposited in their FTX accounts. In other words, to satisfy its
successful preference actions, the Celsius Litigation Administrator would, in effect, step into those
Celsius-FTX Customers' shoes and be entitled to recover dollar for dollar the amount of each Class
5A and Class 5B Claim held by the Celsius-FTX Customer. However, the Celsius Litigation

Administrator is presently slated to receive funds from a different class on account of those same claims. With the modifications described above, non-FTX Customers would receive the same recovery, and the General Pool would receive a larger distribution because the Celsius Litigation Administrator's customer claims would no longer dilute the recovery for other general unsecured creditors.

## II.   The Plan Fails to Safeguard the Adjudication of Disputes Between Directly Competing Claims Arising from the Creation of FTX Customer Accounts with Assets Legally Owned by Celsius

25.     If the Celsius Litigation Administrator successfully avoids the initial transfers, those Celsius-FTX Customers will *not* be entitled to compensation for their associated Claims because that account property did not belong to them. Distributions to Celsius-FTX Customers ultimately found not to be entitled to receive funds from FTX would be unjustly enriched at the expense of the Celsius Litigation Administrator and other FTX creditors.

26.     Thankfully, a wholesale overhaul of the Plan is unnecessary to resolve this potential inequity. Rather, by using the Plan's existing framework, coupled with principles drawn from the procedural device of interpleader, the Plan may be adapted to ensure the administration of distributions that respect the Celsius Litigation Administrator's pending claims to funds he is rightfully owed. The Court should not confirm a plan that does anything less.

### a.   Principles of Interpleader May Be Applied to Administer the Proposed Distributions That Would Be Directly Affected by the Celsius Litigation Administrator's Avoidance and Recovery Actions

27.     At its core, the rights of the Celsius Litigation Administrator and the affected Celsius-FTX Customers turn on who is entitled to the funds – the Celsius-FTX Customers, who used avoidable Celsius property to fund their FTX accounts, or the Celsius Litigation

Administrator, who seeks to recover its property from the Celsius-FTX Customers (and Quoine).

Thus, the dispute involves competing claims to a limited fund, for which, as courts recognize:

> [C]hanges to any allotment or transfer of funds … would materially affect the likelihood of any potential payment and therefore directly implicate creditor interests.  Along these lines, we have found a party aggrieved when limited fund plans 'eliminated' a party's interest in estate assets from which they sought payment….  We have also found standing when a bankruptcy court's order transferred all significant assets out of the estate, effectively barring a creditor's claim.

*In re East Coast Foods, Inc.*, 80 F.4th 901, 908 (9th Cir. 2023), *cert. denied sub nom. Clifton Cap. Grp., LLC v. Sharp*, 144 S. Ct. 1064 (2024) (citing *In re Commercial W. Fin. Corp.,* 761 F.2d 1329, 1335 (9th Cir. 1985), and *In re P.R.T.C., Inc.,* 177 F.3d 774, 778 (9th Cir. 1999)).

28.     As such, the Celsius Litigation Administrator, in his capacity as a court-appointed representative of the Celsius estate, is a "person aggrieved" because he would be "directly and adversely affected pecuniarily" by an order confirming the Plan.  *See In re Dykes,* 10 F.3d 184, 187 (3d Cir. 1993) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)).  A litigant is adversely affected by a bankruptcy order that "diminishes their property, increases their burdens, or impairs their rights." *Id.*; *see also Kane v. Johns-Manville Corp. (In re Johns–Manville Corp.)*, 843 F.2d 636, 641-42 (2d Cir. 1988) (finding that creditors were aggrieved by "orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims" and that "[a] plan of reorganization adversely affects creditors in this way because it allocates estate assets among creditor groups and determines the extent to which each creditor is to be paid.") (citations omitted).

29.     Furthermore, a party is directly aggrieved by a plan of reorganization that impairs its rights and claims.  *See, e.g.*, *In re Johns-Manville*, 843 F.2d at 642 ("Since the [Plan] gives Kane less than what he might have received, he is directly and adversely affected pecuniarily by

it, and he therefore has standing to challenge it…."); *In re Cath. Diocese of Wilmington, Inc.*, 484 B.R. 629, 636-637; (D. Del. 2012); *Medford Vill. East Assocs. v. Medford Crossings N. LLC*, 2009 WL 1687165, at *4 (D.N.J. June 15, 2009); *accord In re United Steel Enters., Inc.*, 2006 WL 3544583, at *4 (D.N.J. Dec. 8, 2006).  This is especially apparent in the limited fund context because "a limited fund necessarily concerns a finite pool of assets to pay claims, thus creating the risk that creditors will not be paid either in full or at all."  *In re East Coast Foods, Inc.*, 80 F.4th at 908.  Courts have also held litigants to be adversely impacted by a bankruptcy order that effectively eliminated their interests by "*dispos[ing] of the assets in the estate from which they [sought] to be paid.*"  *Commercial W. Fin. Corp.*, 761 F.2d at 1335 (emphasis added); *accord Salomon v. Logan (In re Int'l Envtl. Dynamics, Inc.),* 718 F.2d 322, 326 (9th Cir. 1983) (holding that appellant was aggrieved by an order awarding funds to creditor's counsel – effectively disposing of the assets from which it sought to be paid).  Here, the Celsius Litigation Administrator's claims are directly prejudiced by the Plan because it diverts funds *from which the Celsius Litigation Administrator seeks to be paid* to Celsius-FTX Customers, notwithstanding that those Celsius-FTX Customers are not the rightful claimants of the funds.  Yet, despite the existence and pendency of the Celsius Litigation Administrator's claims, and the associated litigation seeking compensation for the transfers of Celsius property that underpin the FTX accounts, FTX ignores those claims and their potential consequences to both the Celsius-FTX Customers and the Debtors themselves.  Indeed, the Celsius Litigation Administrator's economic rights are impaired by the Plan's failure to account for the ongoing preference actions' impact on distributions to Celsius and/or the Celsius-FTX Customers.  As such, the Celsius Litigation Administrator will suffer injury-in-fact from the Plan in its current form.

30.     The distributions to the particular Celsius-FTX Customer claimants under the Plan will also potentially expose the Debtors to double liability, which would not be in the interest of the FTX estate or other parties in interest.  After paying the Celsius-FTX Customers under the Plan in its current form, the Celsius Litigation Administrator would still be entitled to recover from the Debtors as a subsequent transferee under Section 550 if he prevails in his avoidance action.  The Bankruptcy Code makes clear that recovery of an avoided transfer may be had from an initial transferee or a subsequent transferee.  11 U.S.C. § 550(a)(1)-(2).  The plain words of the statute provide that, if FTX is found to be a subsequent transferee, FTX would be liable for the value of any traceable transfers, regardless of whether the Celsius Litigation Administrator could collect from the Celsius-FTX Customers who used or benefitted from the use of Celsius property to fund their FTX accounts.

31.     A legal procedure akin to interpleader is an appropriate and realistic framework to resolve this objection.  Interpleader may apply where a stakeholder in possession of certain property (here, FTX) anticipates "vexatious conflicting claims to the same fund" (here, the distributions to be made to Celsius-FTX Customers whose accounts were funded with Celsius's property transferred to a FTX Exchange).  *See Citigroup Glob. Mkts., Inc. v. KLCC Invs., LLC*, 2007 WL 102128, at *6 (S.D.N.Y. Jan. 11, 2007).  The procedure is designed to "insulate a stakeholder from contradictory judgments and multiple liability and to relieve a stakeholder from having to determine which claim among several is meritorious."  *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) (citation omitted).  Ultimately, resolution of competing claims is beneficial if it provides for the efficient distribution of the implicated assets.  *Cf. In re Asset Resol., LLC*, 2012 WL 12905294, at *5 (Bankr. D. Nev. Sept. 6, 2012) (finding the settlement's resolution of "competing claims against the same pool of assets . . . " between the various parties weighed in

favor of approving the settlement). This is exactly what the Celsius Litigation Administrator seeks to accomplish through the implementation of an interpleader-like process.

### b. The Plan's Definition of "Disputed Claims" Should be Enlarged to Include Customer Entitlement Claims Arising from Transactions that are Subject to Avoidance

32. The Plan does not provide a mechanism for managing the distribution of funds subject to the competing claims of the Celsius Litigation Administrator and the Celsius-FTX Customers who are classified as Holders of Customer Entitlement Claims. Instead, the Plan proposes to direct distributions to Holders of Customer Entitlement Claims, *see* Plan, ¶ 7.3.2, notwithstanding the possibility that such distributions should be directed to the Celsius Litigation Administrator (or at least held in reserve pending the outcome of the Customer Preference Actions against the Celsius-FTX Customers). The Celsius Litigation Administrator's successful avoidance of the transfers made by the initial transferees necessarily would mean that those Celsius-FTX Customers are not entitled to receive distributions from FTX based on account values tied to the Celsius property moved to the FTX Exchange.

33. It follows that the disbursement of funds under the Plan as drafted could be inconsistent with the rulings of the NY Bankruptcy Court – the exact consequence that a procedural framework such as interpleader is designed to avoid. Moreso, distributions to Celsius-FTX Customers based on accounts funded with transfers that are ultimately subject to avoidance would unjustly enrich those Celsius-FTX Customers at the expense of Celsius and its creditors.

34. Fortunately, the Plan already contains a mechanism that could address the situation in a straightforward manner without prejudicing any of the affected Customers or Celsius. Specifically, the Plan includes a provision dealing with "Disputed Claims" and the required

reserves pending resolution of the claims:

> On or prior to the Initial Distribution Date, the Plan Administrator shall establish, if necessary, *a reserve (the "Disputed Claims Reserve") (a) on account of Disputed Claims that may be subsequently Allowed after the Effective Date* …. The Plan Administrator shall (i) reserve, as necessary, cash on hand in a manner consistent with Article 4 on account of the Disputed Claims Reserve *in the amount that would otherwise be distributable to estimated Disputed Claims pursuant to the Plan, (ii) administer, adjust and maintain the Disputed Claims Reserve, and (iii) withhold in the Disputed Claims Reserve any amount to fund subsequent Distributions pursuant to the Plan* …. The Plan Administrator may, but shall not be required to, seek estimation of any Disputed Claim by the Bankruptcy Court under section 502 of the Bankruptcy Code.

Plan, ¶ 8.5 (emphasis added).

Thus, the Plan contemplates that the final resolution of disputes affecting the allowance and amount of certain claims may require post-confirmation time and effort, and that reserving cash to protect entitlements to those claims is fair and reasonable.

35.     To address the fact that the Celsius Litigation Administrator holds a competing claim to the funds that would otherwise be distributed to the Celsius-FTX Customers as Holders of Customer Entitlement Claims, the Debtors should expand the definition of "Disputed Claims" to include Customer Entitlement Claims which are subject to the Customer Preference Actions. Doing so would ensure that: (i) distributions are not directed to Celsius-FTX Customers absent resolution of the Customer Preference Actions, (ii) these claims would be administered in a manner akin to an interpleader proceeding, and (iii) each of the Debtors, the Celsius-FTX Customers, and the Celsius Litigation Administrator would not be exposed to inconvenient, superfluous litigation, and inconsistent adjudications.

36.     At bottom, to meet the requirements of confirmation, the Court should require that the Plan include a reserve to account for the impact of the Celsius Customer Preference Actions

on the Celsius-FTX Customers' and the Celsius Litigation Administrator's respective rights in the underlying funds.

## **RESERVATION OF RIGHTS**

37.     The Celsius Litigation Administrator reserves the right to amend or supplement this Objection as necessary to, among other things, (i) seek discovery with respect to this Objection, (ii) introduce evidence supporting this Objection at any hearing to consider same, and (iii) seek any alternative or incremental relief.  The Celsius Litigation Administrator also fully reserves all of its rights to make any objections to confirmation of the Plan at the hearing with respect thereto, whether or not explicitly referred to in this Objection.

## **CONCLUSION**

For the foregoing reasons, the Court should not confirm the Plan without appropriate changes to address this Objection, and should grant the Celsius Litigation Administrator such other and further relief as may be just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: August 16, 2024
      Wilmington, Delaware

Respectfully submitted,

**COLE SCHOTZ P.C.**

/s/ *Justin R. Alberto*
Justin R. Alberto, Esq. (No. 5126)
Patrick J. Reilley, Esq. (No. 4451)
Melissa M. Hartlipp, Esq. (No. 7063)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: jalberto@coleschotz.com
      preilley@coleschotz.com
      mhartlipp@coleschotz.com

-and-

**PRYOR CASHMAN LLP**
Seth H. Lieberman, Esq. (admitted *pro hac vice*)
Richard Levy, Jr., Esq. (admitted *pro hac vice*)
Andrew S. Richmond, Esq. (admitted *pro hac vice*)
7 Times Square
New York, New York 10036
Telephone: (212) 421-4100
Facsimile: (212) 326-0806
Email: slieberman@pryorcashman.com
      rlevy@pryorcashman.com
      arichmond@pryorcashman.com

*Counsel to the Celsius Litigation Administrator*