**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>                      Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Re: D.I. 22165**<br><br>Hearing Date: October 2, 2023, at 2:00 p.m. (ET)<br>Obj. Deadline: August 16, 2024 at 4:00 p.m. (ET) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF**
**ARCEAU 507 II LLC WITH RESPECT TO CONFIRMATION OF THE**
**FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES**

Arceau 507 II LLC ("Arceau"), by and through its undersigned counsel, hereby submits this limited objection and reservation of rights (this "Objection") with respect to confirmation of the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 22165] (the "Plan"). In support of this Objection, Arceau respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Objection solely concerns certain provisions of the Plan that ostensibly afford the Debtors the unfettered ability to deprive holders of valid Customer Entitlement Claims[1] from receiving distributions they are entitled to receive under the Plan by exploiting an ill-defined process of gathering and verifying KYC Information from the holders of such claims. Specifically, the Plan permits the Debtors to treat a Customer Entitlement Claim not subject to any pending objection or dispute as to validity or amount as a Disputed Claim, solely on the basis of the

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

12655781.7 - 08/16/24

Debtors' determination that the Original Customer or holder of such Customer Entitlement Claim has failed to submit KYC Information satisfactory to the Debtors in their sole discretion. By giving the Debtors absolute discretion to determine what specific KYC Information it seeks from any particular holder of a Customer Entitlement Claim and whether such KYC Information is somehow deficient, without requiring the Debtors to make such determination in adherence with any defined standards or to disclose the basis for such determination, the Plan allows the Debtors to arbitrarily determine which holders of otherwise valid Customer Entitlement Claims receive a distribution on the Initial Distribution Date and which holders do not. Not only do such Plan provisions dramatically expand the scope of the Debtors' authority to collect and process KYC Information previously granted by the Court, they also allow the Debtors to effectively shift the burden of proof applicable to properly and timely filed proofs of claim and flout the Bankruptcy Code's requirement that a plan provide equal treatment to each claim within a class.

2. These concerns are not purely hypothetical. Indeed, the Debtors are already using the vague Plan provisions relating to the KYC Information gathering process to the detriment of holders of valid Customer Entitlement Claims. Arceau, as the holder, by assignment, of several Customer Entitlement Claims, has participated in good faith in the Debtors' KYC Information-related processes, including by diligently responding to requests from the Debtors for KYC Information and obtaining the cooperation of the Original Customer(s) with respect to certain claims where necessary. Although the overwhelming majority of Arceau's Customer Entitlement Claims have been designated "KYC Verified" on the FTX Customer Claims Portal,[2] the Debtors are presently treating certain of Arceau's claims as "KYC Unverified" despite there being, as far as Arceau knows, no substantive objection to the amount or validity of the claim or defect with

---

[2] FTX Customer Claims Portal, https://claims.ftx.com/welcome (last visited Aug. [14], 2024).

respect to the KYC information provided to the Debtors. Although Arceau and/or the Original Customers have submitted extensive documentation concerning such claims, the Debtors have refused to provide any specific explanation concerning the Debtors' determination to designate such claims as "KYC Unverified" status, including in response to counsel's several inquiries. Arceau is concerned that confirmation of the Plan will result in the entrenchment of a framework that affords the Debtors undue discretion to dispose of Customer Entitlement Claims in an arbitrary and capricious manner by using the KYC Information collection and verification process to deny (or unfairly delay) the allowance of such claims.

## BACKGROUND

3.      Since the Petition Date, the Debtors have been engaged in an extensive process to verify the identity of current holders of Customer Entitlement Claims and the Original Customers with respect to such claims. The Debtors explain the purpose of the KYC Information process to holders of Customer Entitlement Claims as follows:

> KYC procedures are needed to ensure that the right person is filing the claim and to prevent bad actors from taking advantage of compromised data, emails, and login credentials. The goal of these controls is to protect customers and ensure the security of the overall Customer Claims process.
>
> KYC procedures are also needed to implement anti-money laundering controls. These anti-money laundering controls are necessary for the FTX Debtors to mitigate the risk that the Customer Claims process could be used to facilitate money laundering, fund terrorism or result in violations of economic sanctions, thereby limiting regulatory risks and to help ensure a legitimate claims trading market.[3]

To be clear, Arceau does not object to these stated goals. Rather, Arceau's objection is limited to those procedures in the Plan purportedly aimed at addressing these goals but that have been drafted in such a way as to cause significant substantive and procedural unfairness to claim holders.

---

[3] FTX Claims KYC, https://support.ftx.com/hc/en-us/articles/17964036797204-FTX-Claims-KYC (last visited Aug. 14, 2024).

4.     The KYC Information procedures published by the Debtors note that a Customer Entitlement Claim may be given the status of "unverified" if "we were not able to verify the documentation you provided to us."[4] However, the Plan does not describe what documents are needed for verification or the standards (if any) the Debtors will use to verify such documents. Nor do such procedures identify any processes employed by the Debtors to ensure that KYC Information will not be used for ulterior motives, including to dispose of otherwise valid claims or to prevent the holders of such claims from receiving process to which they would otherwise be entitled.

5.     The Plan addresses the KYC status of Customer Entitlement Claims by defining an "Unverified Customer Claims as "a Customer Entitlement Claim in respect of which (a) the Original Customer or Holder of such Customer Entitlement Claim <u>has failed to submit KYC Information of the Original Customer</u> by a date determined by the Debtors and approved by order of the Court or (b) <u>an objection by the Debtors to the KYC Information of the Original Holder</u> has been sustained by order of the Court." Plan, § 2.1.192 (emphasis added). KYC Information is simply "the know-your-customer information requested by the Debtors"—a definition that is unaccompanied by any standards or guidelines and gives the Debtors absolute discretion. Plan § 2.1.127. The Plan then excludes "Unverified Customer Entitlement Claims" from the definition of Allowed Claims that receive distributions under the Plan. *See* Plan, § 2.1.8. The practical import of this is that the question of whether or not a Customer Entitlement Claim will be allowed, and whether a distribution will be made on that claim under the Plan turns on the Debtors' application of their vague and open-ended KYC Information procedures. A determination that the

---

[4] KYC Statuses Explained, https://support.ftx.com/hc/en-us/articles/17964456562068-KYC-Statuses-Explained (last visited Aug. 14, 2024).

Debtors' KYC Information process has not been satisfied, which the Plan affords the Debtors extraordinarily broad latitude to make, can result in a substantial impairment of a claim holder's rights without the benefit of the defined process to which the holder would otherwise be entitled in the case of substantive claim objections.  To the extent this changes the standards applicable under Section 502(b) of the Bankruptcy Code, the Plan cannot be confirmed.

### **LIMITED OBJECTION**[5]

6.  The treatment of Unverified Customer Claims under the Plan has only the superficial appearance of a reasonable judicial process for adjudication of the validity of such claims.  Instead, the Plan's KYC Information provisions give rise to a circular procedure where the Debtors determine what KYC Information they will ask for, determine when and whether they are satisfied with the information the claimant provides, and, if they are not satisfied, can object to and disallow a claim on the grounds that they are not satisfied.

7.  This is no substitute for the provisions of section 502(b) of the Bankruptcy Code, which govern the allowance of claims.  *See* 11 U.S.C. § 502(b).  Indeed, section 502(b) provides the exclusive bases for disallowing a claim in bankruptcy.  *See In re Mallinckrodt PLC*, No. 20-12522 (JTD), 2024 WL 206682, *44 (Bankr. D. Del. Jan. 18, 2024) ("[I]f a claim is not subject to disallowance for any of the reasons specified [in section 502(b)], it must be allowed . . . ." (quoting *Harbinger Capital Partners LLC v. Ergen (In re Lightsquared Inc.)*, 504 B.R. 321, 340 (Bankr. S.D.N.Y. 2013))).  The KYC Information-related provisions of the Plan reflect the Debtors' attempt to create an entirely new basis for disallowing an otherwise valid claim, which is contrary to the express language of section 502(b) and binding case law precedent.  *See*

---

[5] NTD: Consider elaborating on the point that the Debtors' unfettered discretion to verify KYC information may be contrary to section 1123(a)(4), which requires equality of treatment of claims in a class.

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) (holding that, under the Bankruptcy Code, the court "'shall allow' [a] claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)" (quoting 11 U.S.C. § 502(b))).

8. Moreover, the scheme for allowance or disallowance of a claim based on KYC Information referenced in the Plan may do more than just create a substantive hurdle to the allowance of a claim. It may also be an attempt to shift the burden of verifying a customer's identity to the customer and at the Debtor's discretion. This shift would be inappropriate and inconsistent with Rule 3001(f) of the Federal Rules of Bankruptcy Procedure, which provides that a validly filed proof of claim is *prima facie* evidence of the validity of the claim. *See* FED. R. BANKR. P. 3001(f).

9. Accordingly, Arceau objects to the Plan to the extent that it in any way relieves the Debtors of their burden to seek the disallowance of Customer Entitlement Claims by objecting to such claims on one or more of the grounds enumerated in section 502(b) of the Bankruptcy Code or permits the Debtors to alter the standards by which a claim can be allowed or disallowed based on its own KYC Information-related determinations.

## RESERVATION OF RIGHTS

10. Arceau reserves all rights to amend and/or supplement this Objection, including to raise any additional objections based on new information provided by the Debtors or new relief sought by the Debtors, and to appear and be heard at the Confirmation Hearing.

## CONCLUSION

Wherefore Arceau respectfully requests entry of an order denying confirmation of the Plan to the extent the KYC provisions of the Plan in any way alter a claimant's substantive or procedural rights with respect to the allowance or disallowance of a claim and providing such other and further relief as the Court deems just.

| | |
|---|---|
| Dated: August 16, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>**THE ROSNER LAW GROUP LLC**<br><br>*/s/ Frederick B. Rosner*<br>Frederick B. Rosner (DE 3995)<br>824 N. Market Street, Suite 810<br>Wilmington, DE 19801<br>(302) 777-1111<br>rosner@teamrosner.com<br><br>-and-<br><br>**KLEINBERG KAPLAN WOLFF & COHEN, P.C.**<br><br>Dov Kleiner<br>500 Fifth Avenue<br>New York, New York  10110<br>(212) 986-6000<br>DKleiner@kkwc.com<br><br>*Counsel to Arceau 507 II LLC* |