IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING, LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | RE: Doc. No. 22165 |

**OBJECTION OF AHMED ABD EL-RAZEK, SUNIL KAVURI, AND PAT RABBITTE TO FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Ahmed Abd El-Razek, Sunil Kavuri, and Pat Rabbitte (collectively, the "Retail Customers"), by and through undersigned counsel, hereby submit this objection (the "Objection") to the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 22165] (the "Plan") and in support thereof state as follows:

**PRELIMINARY STATEMENT**[2]

1. The Debtors' proposed Plan, filed on August 2, 2024, should not be confirmed because it fails to meet the requirements of Section 1129 of Title 11 of the United States Code (the "Bankruptcy Code") for the following separate and independent reasons.

- The Plan violates Section 1141(d)(3) of the Bankruptcy Code.

- The release solicitation procedures do not result in consensual releases.

- Third parties have not received proper notice of which claims are being released and who they're being released against.

- The Plan contains overly broad exculpation provisions.

- The distribution procedures and the failure to establish any mechanisms for an "in kind" distribution are not in the best interests of customers.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases (collectively, the "Debtors"), a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2] All capitalized terms used but not otherwise defined in this Preliminary Statement shall have the same meaning ascribed to them as subsequently defined *infra*.

1

- The Plan Administration Agreement and the Liquidating Trust Agreement omit material terms that are necessary in determining whether the Plan satisfies the best interests test under Section 1129(a)(7).

For the reasons set forth in more detail below, confirmation of the Plan should be denied unless the deficiencies are appropriately addressed through a revised Plan or the confirmation order.

## JURISDICTION AND STANDING

2. Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Objection.

3. The Objectors are FTX.com customers. As such, they have standing to be heard on this Limited Objection pursuant to 11 U.S.C. § 1109(b).

## FACTUAL BACKGROUND

4. On and after November 11, 2022, the Debtors filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

5. On December 15, 2022, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee"). [Doc. No. 231].

6. On December 16, 2023, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Doc. No. 4861]; the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [Doc. No. 4862]; and the Approval and Procedures Motion [Doc. No. 4863].

7. On May 22, 2024, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading LTD. and its Debtor Affiliates* [Doc. No. 15520] (the "Plan") and *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. And Its*

2

*Affiliated Debtors and Debtors-in-Possession* [Doc. No. 15521] (the "Disclosure Statement") and *Notice of Filing of Blacklines of Revised Plan and Revised Disclosure Statement* [Doc. No. 15522] (the "Blacklines").

8.  On May 23, 2024, the Debtors filed the *Notice of Rescheduled Hearing Regarding Motion of Debtors for Entry of an Order (I) Authorizing and Approving Entry Into, and Performance Under, the Collateral Claim Settlement Agreement, the Inter-Debtor Restructuring Agreement and the Restructuring Payment Agreement and (II) Granting Related Relief* [Doc. No. 15655] (the "Disclosure Statement Hearing Notice").

9.  On June 26, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"). Among other things, the Solicitation Procedures Order approved the adequacy of the Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession (as may be amended, modified or supplemented from time to time, the "Disclosure Statement"), voting and solicitation procedures and established the timeline to consider confirmation of a joint chapter 11 plan.

10. On August 2, 2024, the Debtors filed the Plan [D.I. 22165] and the Plan Supplement [D.I. 22163].

Pursuant to the Solicitation Procedures Order, the deadline to object to the Debtors' proposed plan is August 16, 2024. Doc. No. 19068, ¶ 10(f).

**ARGUMENT**

**A. Section 10.2 of the Plan violates 1141(d)(3) of the Bankruptcy Code.**

11. Article 10 of the Plan is filled with a multitude of releases, exculpations, and injunctions in favor of third parties. Yet, there is a fundamental problem here which begins with the fact that the Debtor, as a liquidating entity, is not entitled to a discharge.

12. Section 1141(d)(3) of the Bankruptcy Code provides that the confirmation of a chapter 11 plan does not discharge a debtor if (1) the plan provides for the liquidation of all or substantially all of the property of the estate; (2) the debtor does not engage in business after consummation of the plan; and (3) the debtor would be denied a discharge under section 727(a) … if the case were a case under chapter 7 of [the Bankruptcy Code]. Section 1141(d)(3) is written in the conjunctive; "if any one provision does not apply, confirmation of a plan results in the discharge of debt." *In re River Capital Corp.*, 155 B.R. 382, 387 (Bankr. E.D. Va. 1991).

13. Despite this prohibition, Section 10.2 of the Plan is entitled "Discharge of Claims and Termination of Interests" , and purports to grant the Debtors a discharge. *See* Section 10 ("to the fullest extent permitted by the Bankruptcy Code . . . the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, settlement, release, **discharge** and termination, as of the Effective Date, of all Claim ….)(emphasis supplied). Similarly, Section 10.9 of the Plan (Injunction) provides that "the satisfaction and release pursuant to this Article 10 shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Interests or Causes of Action." *See* Section 10.9.

14. In order to comply with Section 1141(d)(3), Sections 10.2 and 10.9 should be deleted and the Plan should state that the Debtors are not entitled to a discharge. *See, e.g., In re New Towne Dev.*, LLC, 410 B.R. 225, 232 (Bankr. M.D. La. 2009) (a liquidating chapter 11 plan for a corporate debtor improperly included third-party releases and permanent

4

injunctions—effectively a discharge—where the liquidating debtor itself could not receive a discharge under sections 1141(d)(3) and 727(a)(1)).

**B.    The voluntary releases under Section 10.5 of the Plan are disguised non-consensual releases and violate Section 524(e) of the Bankruptcy Code.**

  **i.    Plan Terms**

15.    As noted above, the Plan is filled with a multitude of proposed third party releases in favor of the "Released Parties," who are defined as follows:

> (a) Exculpated Parties, (b) the Bahamas JOLs and FTX DM, (c) the Ad Hoc Committee, (d) any member of the executive committee of the Ad Hoc Committee (as constituted from time to time), and (e) with respect to each Person or Entity named in (b) through (d), any Person or Entity to the extent acting as a shareholder, director, officer, employee, attorney (including solicitors or barristers acting for the benefit of such Person or Entity), financial advisor, restructuring advisor, investment banker, accountant and other professional or representative of such Person or Entity, in each case, to the extent such Person or Entity is or was acting in such capacity.

Plan, Section 2.1.163.

16.    Under Section 10.4 of the Plan, the Debtors and the Estates are releasing all claims against the Released Parties. It is unclear what, if any, claims exist against the Released Parties; what consideration, if any, has been provided for this release; and why such a broad release is in the best interests of the estate. Moreover, the scope of the Debtors' release is exceptionally broad and includes claims "existing or hereafter arising" concerning anything remotely related to this case or the Debtors. Finally, Exculpated Parties are included in the Debtors' Release, and there is no explanation as to why Exculpated Parties should benefit from both a release and exculpation.

17.    Section 10.5 of the Plan provides an impermissible release to the Released Parties from the "Releasing Parties," who are defined as follows:

> the Debtors; (b) each of the Official Committee and the Supporting Parties; (c) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth herein; (d) the Holders of all Claims that are Unimpaired under the Plan; (e) the Holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) the Holders of all Claims or Interests who vote, or are deemed, to

5

reject the Plan but do not opt out of granting the releases set forth therein; and (g) all other Holders of Claims or Interests to the maximum extent permitted by law. Holders who were not provided a Ballot or an Election Form and are not listed in clauses (a) through (g) above are not Releasing Parties.

### ii. Release is not Consensual for Classes 1, 2, 3B, 4, 5C and 8A

18. By any objective measure this release is non-consensual. Creditors who receive ballots have no obligation to respond. Mere silence expressed by abstaining from voting does not equate to consent. *See In re SunEdison, Inc.*, 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017). As noted by other courts, it may be just as likely that the creditor was careless, inattentive, or mistaken. *Emerge Energy Services*, 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019); *In re Chassix Holdings, Inc.*, 553 B.R. 64, 79 (Bankr. S.D.N.Y. 2015).

19. More fundamentally, the Plan provides for the release of third-party claims against non-debtors without the opportunity for the NFT Customer Entitlement Class and other classes (1, 2, 3B, 4, 5C and 8A) to either opt-in or opt-out of such releases. Plan, §§ 4.1.1, 4.3.1, 4.3.2, 4.3.4, 4.3.5, 4.3.8 and 4.3.14; Doc. No. 19068-4, at *2-10. A similar release was expressly prohibited by the Supreme earlier this summer. *See Harrington v. Purdue Pharma L.P*, 2024 WL 3187799, at *2 (June 27, 2024) (determining that non-consensual releases are not permitted under the Bankruptcy Code).

### iii. Proposed Third-Party Release Fails to Provide Adequate Notice to Remaining Classes or Otherwise Meet this Circuit's Exacting Standards to Grant Releases only in Exceptional Circumstances.

20. With regard to the remaining Classes, who are afforded an opportunity to opt in or out of the releases (depending on their Class), the requested relief should still be denied because they Debtors fail to establish the "exceptional factors" required in this Circuit and, even if they had, the overbroad releases themselves fail to provide creditors with adequate notice of what claims are being released and against whom such releases apply.

21. First, the third-party release fails to meet this court's "exacting standards." *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022); *see also In re Continental Airlines*,

203 F.3d 203, 214 (3d Cir. 2000) (The "hallmarks of permissible non-consensual releases" are "fairness, necessity to the reorganization, and specific factual findings to support these conclusions[.]").

22. Among other things, no valid consideration is being offered by the Released Parties for this release. The Supreme Court has made clear that the Bankruptcy Code does not permit this Court to grant a third party a release if the released party wants to "pay less than the code ordinarily requires and receive more than it normally permits." *Harrington v. Purdue Pharma L.P.*, 2024 WL 3187799, at *2. Here, the Released Parties want to contribute nothing and get a complete release. Section 10.5 of the Plan identifies "good and valuable consideration, including the 'service' of the Released Parties to facilitate the administration of the Chapter 11 Cases, the implementation of the Plan, and the distribution of proceeds" as consideration. *See* Section 10.5. The Released Parties already have been handsomely rewarded for these services to date, their "services." Under the binding precedent of *Purdue*, the Debtors' proposed third party release simply is not permitted by the Bankruptcy Code.

23. Even if the third parties had provided valid consideration, however, the releases should still be stricken from the Plan because they fail to provide adequate notice to interested parties. When it comes to consensual releases, "Courts are split on the issue of whether consent to releases must be affirmative or may be accomplished by inaction." *In re Boy Scouts of America*, 642 B.R. at 676. Courts in this District have held that consent can be inferred from the failure to respond to an opt-out solicitation if the parties are provided with proper notice. *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022).

24. Here, the proposed releases impermissibly purport to release all current and future claims of third-parties against non-debtors without providing adequate notice. Given the history of FTX and the fact that creditors will be solicited from all around the globe, with recipients who speak a myriad of languages (into which the plan may or may not have been

7

translated) when solicited, acceptance should not be imputed from silence either by abstaining to vote or by not understanding the need to check the "opt out" box.

25. In addition to language barriers, third-parties who do not object or opt-out may be deemed to release "the executive committee of the Ad Hoc Committee" as such "is constituted from time to time." Plan, § 2.1.87. Such members are not disclosed and the creditors who may be deemed to release them simply have no way of seeing into the future to determine against whom they may now in the present be releasing claims.

26. The proposed release also includes all shareholders, directors, officers, employees, professionals, and other representatives of the unidentified future members of the executive committee of the Ad Hoc Committee to the extent the shareholder, director, officer, employee, professional or representative was working to represent such member of the executive committee of the Ad Hoc Committee for any purpose whatsoever. Plan, § 2.1.167. Without a modification, the ambiguous definition of Released Parties could impermissibly grant the unidentified executive committee's representative a broader release than even such unidentified executive committee member impermissibly receives in this proceeding. Plan, § 10.4. Even actions taken by the professional in their individual representation of the executive committee member in this proceeding that were detrimental to the Debtors' administration of and efforts to implement an orderly liquidation in the Debtors' Chapter 11 Cases will be released. Plan, § 10.5;

27. The Plan even impermissibly provides for the satisfaction of 502(h) claims that have yet to arise. Plan, § 10.2. How can a party possibly know if the Debtor will succeed with any potential claims against it or the amount of such claims in order to make an informed decision on whether to opt-in, opt-out or object to the Plan.

28. Finally, the Plan permits unilateral exclusion of any Debtor from the Plan "for any reason" without any notice to creditors of such change. Plan, § 1.2. Notice of such actions

is necessary to inform interested parties of their rights under the Plan. This permission should be conditioned upon a publically filed notice of same so that all interested parties are aware of the applicability of the Plan's provisions to their claims and interests in these proceedings.

29. In sum, the Debtors are not entitled to a discharge, nor is any third party entitled to a release under this liquidating Plan.

## C. Exculpation under Section 10.8 should only apply to the Estate Fiduciaries from the Petition Date to the Effective Date.

30. Article 2.187 defines "Exculpated Parties" as:

2.1.87 "Exculpated Parties" means (a) the Debtors; (b) the Official Committee and its current and former members, solely in their capacities as members of the Committee; (c) the Fee Examiner; (d) to the extent determined to be acting as a fiduciary for the benefit of a Debtor, its estate, or its creditors, the Bahamas JOLs and FTX DM; (e) to the extent determined to be acting as a fiduciary for the benefit of a Debtor, its estate, or its creditors, the Ad Hoc Committee and the executive committee of the Ad Hoc Committee (as such executive committee is constituted from time to time); and (f) with respect to each Person or Entity named in (a) through (e), any Person or Entity to the extent acting as a member, shareholder, director, officer, employee, attorney (including solicitors or barristers acting for the benefit of such Person or Entity), financial advisor, restructuring advisor, investment banker, accountant and other professional or representative of such Person or Entity, in each case in (a) through (f), to the extent such Person or Entity is or was acting in such capacity.

31. Article 10.8.is the Exculpation provision and provides in relevant part:

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in Section 10.4 or Section 10.5 of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Entity for any act or omission in connection with, related to, or arising out of these Chapter 11 Cases, including (a) the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; (b) the administration and adjudication of Claims and Interests during these Chapter 11 Cases; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Cases (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan, the trading or sale of cryptocurrencies and tokens in connection with the Chapter 11 Cases, the offer and issuance of any securities under or in connection with the Plan and the distribution of property, Digital Assets, or tokens under the Plan); or (d) any other transaction, agreement, event, or other occurrence related to these Chapter 11 Cases taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

32.     The definition of Exculpated Parties is overbroad, and as set forth below, inconsistent with controlling case law because it is not limited to estate fiduciaries.  First, this provision is temporally overbroad in that it improperly sweeps in prepetition conduct. The inclusion of the language highlighted above would allow one to be exculpated for conduct that occurred prepetition, which exceeds the bounds of what the Code allows.  The exculpation of estate fiduciaries is afforded by Section 1103(c) of the Code, which relates to the powers and duties of committees appointed pursuant to Section 1102, which occurs only once the bankruptcy estate has been created by the filing of a bankruptcy petition. 11 U.S.C. § 1103, 1102.  It therefore only extends the phrase "in connection with the Chapter 11 Case" to conduct that occurs between the Petition Date and the effective date.

33.     In addition to Article 10.8 of the Plan, paragraph 8 of the Plan Administration Agreement seeks to exculpate the Plan Administrator and the Wind Down Entities (neither of which will exist until the Effective Date) for performance and discharge of their duties in the future.  The scope of this exculpation provision is simply enormous:

> 8. Exculpation. The Debtors, the Wind Down Entities, the Plan Administrator and each of their respective current and former members, directors, officers, Affiliates, parents, subsidiaries, members, managers, predecessors, successors, executors, assigns, participants, partners, employees, independent contractors, advisors, consultants, agents, attorneys, financial advisors, restructuring advisors, investment bankers, accountants, experts and other professionals or representatives, in each case solely when acting in any such capacities (collectively, the "Exculpated Parties") shall not have or incur any liability to any party, including any Holder of a Claim or Interest, for any act taken or omission made in connection with, related to, or arising out of (a) **their performance or discharge of the duties and obligations conferred upon them by the Plan Documents** and any other orders of the Bankruptcy Court, (b) the implementation, Consummation or administration of the Plan, or (c) any act taken, or omission made, in connection with the affairs of the Debtors or the Wind Down Entities; provided that the foregoing exculpation shall not apply to the extent an act or omission is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct; provided that any action or inaction by the Plan Administrator at the direction of the Board of the FTX Recovery Trust shall be deemed to have been conducted in good faith and entitled to exculpation. **The Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action.** No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against any Exculpated Parties for taking any action in

accordance with, or to implement the provisions of, the Plan Documents or any other order of the Bankruptcy Court. In all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan Documents or any other order of the Bankruptcy Court, and may rely upon written information previously generated by the Debtors or their advisors; provided that the foregoing exculpation shall not apply to any liability resulting from any act or omission that is determined by a Final Order to have constituted fraud, gross negligence or willful misconduct; provided that any action or inaction by the Plan Administrator at the direction of the Board of the FTX Recovery Trust shall be deemed to have been conducted in good faith and shall not constitute gross negligence or willful misconduct. No provision of this Agreement or the Plan shall require the Plan Administrator to expend or risk the Plan Administrator's own funds or otherwise incur any financial liability in the performance of any of the Plan Administrator's duties as Plan Administrator under the Plan Documents, or in the exercise of any of the Plan Administrator's rights or powers. Except as provided in the provisos of this Section 9, every beneficiary, Person, firm, corporation or other Entity contracting or otherwise dealing with or having any relationship with any Exculpated Parties acting in such capacity shall have recourse only to the Debtors and the Wind Down Entities for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Exculpated Parties shall not be individually liable therefor. The Exculpated Parties, in their capacity as such, shall have no liability whatsoever to any party for the liabilities or obligations, however created, whether direct or indirect, in tort, contract or otherwise, of the Debtors.

34. As this Court noted *In re: Mallinckrodt PLC,* 639 B.R. 837 (Bankr. D. Del. 2022), an exculpation cannot cover entities that do not yet exist as of the Effective Date.

35. In *PWS Holding Corp.*, the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that section 1103(c) of the Bankruptcy Code implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee. 303 F.3d 308 (3d Cir. 2002). This Court has repeatedly interpreted *PWS Holding Corp.* and uniformly held that a party's entitlement to exculpation is based upon its role or status as an estate fiduciary. *See In re Indianapolis Downs*, *LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *In re Tribune Co.,* 464 B.R. 126, 189 (Bankr. D. Del. 2011); *In re Washington Mutual, Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031 (Bankr. D. Del. Nov. 10, 2011).

11

36. In *In re PTL Holdings*, this Court ruled that an exculpation provision "must be reeled in to include only those parties who have acted as estate fiduciaries and their professionals." *Id.* at *12.

37. In reaching this conclusion, the *PTL Holdings* Court reviewed the *Washington Mutual* decision, as well as the Third Circuit's decision in *PWS Holding Corp.*, on which *Washington Mutual* relied. The issue in *PWS* was whether an official committee of unsecured creditors could receive exculpation. As described by this Court in *PTL Holdings*:

> In reaching its conclusion, the *PWS* court examined § 1103(c) and noted that the section "has been interpreted to imply both a fiduciary duty to committee constituents and a limited grant of immunity to committee members." "This immunity," the court found, "covers committee members for actions within the scope of their duties." The *PWS* court's reasoning thus implies that a party's exculpation is based upon its role or status as a fiduciary. That is why, as the *Washington Mutual* court pointed out, courts have permitted exculpation clauses insofar as they "merely state[] the standard to which ... estate fiduciaries [a]re held in a chapter 11 case." That fiduciary standard, however, applies only to estate fiduciaries, "no one else."

*Id*. (citations omitted).

38. Under Section 10.8 of the Plan, the Exculpated Parties should be limited to the Debtors, the directors and officers of the Debtors who served during any portion of the cases, the Debtors' professionals retained in these cases, the Committees, the members of the Committees, in their capacity as such, the individuals who sat on the Committee, in their capacity as such, and the Committee's professionals retained in these cases. *See Washington Mutual*, 442 B.R. at 350-51 (an "exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").

**D.    The Plan should have a distribution mechanism for creditors who wish to receive distributions "in kind"**

39. It is painfully apparent that the Debtors' proposed Plan will inflict additional hardships on customers through forced taxation that could be avoided by making an "in kind"

12

distribution. To put this in perspective, consider a hypothetical customer who has 10 BTC on the platform with a tax basis of $100 per coin (or $1000) for the position. Under the Plan, the customer would receive approximately $160,000 on account of that claim. According to the Debtors, the customer will be forced to recognize a $159,000 gain. If instead of providing cash on account of the claim, the Debtors would distribute "in kind" to the customer, the customer may be able to avoid a reporting event for tax purposes. While the Debtors may argue that they cannot distribute "in kind," nothing prevents the Debtors from entering into an agreement with another crypto exchange to provide that distribution to the customer "in kind."

40. Certain creditors would no doubt receive a greater after tax recovery if a chapter 7 trustee were selected who was willing to undertake more effort to making a distribution "in kind."

41. In that regard, it bears mention that Blockfi, another cryptocurrency debtor, was in the same position as the Debtors yet was able to distribute in kind to its customers. As reflected in the *Plan Administrator's Third Status Report To Creditors And Announcement Of Planned 100% Distribution On Customer Claims* dated July 22, 2024, Blockfi made the initial distribution through its systems. After those systems were turned off, the Plan Administrator engaged Coinbase to make the Final Customer Distribution for those customers who wanted a distribution in kind and were able to open a Coinbase account:

> The Plan Administrator advises all customers that wish to obtain an in-kind distribution to set up a matching Coinbase account as quickly as possible. For Customers who have an existing account with Coinbase, the Plan Administrator advises all customers to contact Coinbase to ensure their accounts remain open and valid.

The Debtors' refusal to even engage a distribution agent who could make distributions "in kind" to customers reflects utter disregard to maximize recoveries to its creditors.

**E. The Plan Administrator Agreement and the Liquidating Trust Agreement Omit material terms.**

    **1. Disclosure of Compensation of Wind Down Governance Members.**

42. Under the Plan, a liquidating trust will be established on the Effective Date (the "FTX Recovery Trust") and Owl Hill will be appointed as the Plan Administrator. The Plan Administrator Agreement states that the Plan Administrator "shall be compensated by the FTX Revovery Trust as set forth in the FTX Recovery Trust Agreement." Plan Administrator Agreement, para. 7. The FTX Recovery Trust Agreement, in turn, is silent on the compensation to be paid to the Plan Administrator.

43. In addition to the Plan Administrator, the FTX Recovery Trust Agreement will be governed by a nine person Board (the "FTX Recovery Trustees"). The compensation of the FTX Recovery Trustees "shall initially [be] the same annual compensation as paid to the members of the Joint Board." Section 5.3. The FTX Recovery Trust will also have a Delaware Trustee, and an Advisory Committee. The Delaware Trustee will receive "compensation . . .in accordance with such fee schedules as shall be agreed from time to time." Section 9.3. The Advisory Committee "shall receive the same annual compensation as paid to the members of the Board." Section 6.3. The Advisory Committee is permitted to "retain and employ Delaware counsel, one additional law firm and one financial or investment banking advisory firm to assist [it] in the performance of its duties."

44. The compensation to be paid to the Plan Administrator, the FTX Recovery Trustees, the Delaware Trustee, the Joint Board and the Advisory Committee (collectively, the "Wind Down Governance Members") is not disclosed anywhere in the Plan Supplement. Will the compensation to the Wind Down Governance Members consist of an annual stipend? Will their compensation be limited to an annual stipend? Depending on the compensation structure, the potential compensation to be paid to the Wind Down Governance Members may be enormous. The compensation for each group should be disclosed by the Debtors prior to

confirmation as it may inform whether the Plan satisfies the best interests of creditors under section 1129(a)(7) of the Bankruptcy Code.

**2. Reporting of Compensation/Expenses of Wind Down Governance Members**

45. In addition, the Periodic Reporting required under Section 8.5 should include a line item for each of the Wind Down Governance Members.

**3. Disclosure and Valuation of Assets Transferred to FTX Recovery Trust**

46. Nowhere do the Debtors disclose the assets to be transferred to the FTX Recovery Trust and their value. This information should be disclosed.

## RESERVATION OF RIGHTS

47. The Objectors reserve all rights to supplement this Objection based upon further amendments that may be made to the Disclosure Statement, and further reserve all rights to object to confirmation of the Plan and the provisions therein on any grounds

*[remainder of page left blank]*

**CONCLUSION**

For the reasons stated herein, the Retail Customers respectfully request that the Court deny confirmation of the Plan and provide such other relief as is just and proper.

Dated: August 15, 2024
       Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

/s/ *Shannon D. Humiston*
Shannon D. Humiston (No. 5740)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE I 9801
Telephone: (302) 984-6300
Facsimile (302) 984-6399
shumiston@mccarter.com

-    and   -

David Adler, Esq. (admitted *pro hac vice*)
250 West 55th Street, 13th Floor
New York, NY 10019
Telephone: (212) 609-6847
Facsimile:    (212) 609-6921
dadler@mccarter.com
*Counsel to Sunil Kavuri, Ahmed Abd El-Razek and Pat Rabbitte*