# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**FTX TRADING LTD.,** *et al.*,[1]<br><br>DEBTORS. | **Chapter 11**<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Re: Doc. No. 22165<br><br>Objection Deadline: 8/19/24 at 4:00 p.m. (ET) (by agreement)<br><br>Hearing Date: 10/7/24 at 10:00 a.m. (ET) |

## PHILADELPHIA INDEMNITY INSURANCE COMPANY'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

**COMES NOW** Philadelphia Indemnity Insurance Company ("Philadelphia"), by and through the undersigned counsel, and hereby submits this *Philadelphia Indemnity Insurance Company's Limited Objection and Reservation of Rights to the First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* (the "Limited Objection"). In support of this Limited Objection, Philadelphia respectfully states as follows:

## PRELIMINARY STATEMENT

1. Philadelphia executed approximately $7.7 million in surety bonds on behalf of and at the request of certain of the Debtors (the "Bonds") in connection with Debtors' operations. Philadelphia executed the Bonds in exchange for the Debtors' agreement to indemnify

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Philadelphia from and against loss in connection with the Bonds. Philadelphia's claims against the Debtors are secured by cash collateral of approximately $250,000. As of the date hereof, and without prejudice to and under a reservation of all rights, Philadelphia has incurred losses and expenses of not less than $488,161 in connection with the Bonds,[2] and continues to incur losses and expenses in connection with these Chapter 11 cases.

2. Philadelphia objects to the Plan because, as drafted, it does not appear to properly classify and treat Philadelphia's secured claims, and it appears to impair Philadelphia's claims as subrogee/assignee. Philadelphia also objects to the third-party releases contained in the Plan, and files this objection to opt out of the third-party releases with respect to all of its claims and its collateral.

3. Specifically, Philadelphia filed four (4) proofs of claim against the Debtors, each of which included secured components and three (3) of which included unsecured components. It appears that Philadelphia's secured claims should be classified as Other Secured Claims under the Plan; however, Philadelphia received one (1) notice of Non-Voting Status with respect to one of its secured claims. Thus, it appears that the Debtors are not classifying all of Philadelphia's secured claims. Moreover, parties holding Other Secured Claims are deemed to accept the third-party releases under the Plan unless they file an objection to the Plan. Philadelphia files this objection to opt out of the third-party releases with respect to all of its claims against the Debtors in these cases.

4. Additionally, Philadelphia objects to Sections 7.12 and 8.9 of the Plan because they could be construed to impair Philadelphia's rights as subrogree/assignee of Claims. Philadelphia

---

[2] Philadelphia's losses and expenses include $128,955.80 in payments under the Bonds, not less than $265,768 in unpaid premiums in respect of the Bonds, and not less than $93,426.20 in attorneys' fees and expenses.

also objects to Section 8.2 of the Plan as the language runs contrary to Section 502(j) of the Bankruptcy Code

5. Philadelphia's concerns with the Plan in its current form would be addressed by the inclusion of the language set forth below in the Confirmation Order.

**PHILADELPHIA'S BONDS, INDEMNITY AGREEMENT, AND COLLATERAL**

6. Prior to these chapter 11 cases, Philadelphia executed Bonds in the aggregate penal amount of not less than $7,760,000 on behalf of certain of the Debtors.

7. Philadelphia executed the Bonds in reliance upon the execution of certain indemnity agreements (the "Indemnity Agreements") by certain of the Debtors and a non-Debtor (collectively, "Indemnitors") pursuant to which the Indemnitors agreed, among other things, to indemnify and hold harmless Philadelphia from and against any liability, losses, costs, expenses, and fees of whatever kind or nature that Philadelphia may sustain or incur as a result of having issued the Bonds.

8. In addition to its rights under the Indemnity Agreements, Philadelphia has common law indemnity rights against each of the Debtors named as a principal under the Bonds, and also has subrogation and assignment rights relative to claims it paid under the Bonds.

9. The Indemnitors' obligations under the Bonds and the Indemnity Agreement are secured by cash collateral of not less than $250,000 in possession and/or control of Philadelphia (the "Collateral").

**PROOFS OF CLAIM, PLAN TREATMENT, AND SECURED CLAIM**

10. Philadelphia filed four (4) proofs of claim: (i) Claim No. 3557 against Hawaii Digital Assets, Inc. in the amount of $10,000, including a secured claim amount of $10,000; (ii) Claim No. 3713 against FTX Lend, Inc. in the amount of $7,760,000, including a secured claim

3

amount of $250,000; (iii) Claim No. 3746 against West Realm Shires Services, Inc. in the amount of $ 7,760,000, including a secured claim amount of $250,000; and (iv) Claim No. 4002 against West Realm Shires, Inc. in the amount of $ 7,760,000, including a secured claim amount of $ 250,000. Each of these claims should be allowed claims. The Debtors have not objected to any of these claims.

11. Philadelphia received a "Notice of Non-Voting Status" document (the "Non-Voting Notice") from the Debtors' claims and noticing agent. The Non-Voting Notice did not specify the claim to which it relates, although Philadelphia assumed it relates to one of Philadelphia's secured claims. After inquiring with the claims and noticing agent, Philadelphia learned that the Non-Voting Notice relates to Philadelphia's Claim No. 3557 against Hawaii Digital Assets, Inc.

12. Philadelphia did not receive a Non-Voting Notice for any of its other secured claims.

13. The only way for Philadelphia to opt out of the third-party release provisions contained in the Plan with respect to any of its secured claims is to object to the Plan. With respect to the unsecured portions of Philadelphia's claims, Philadelphia received a Class 6A Ballot with respect to the unsecured portion of Claim No. 3746 against West Realm Shires Services, Inc. and opted out of the releases under the Plan. Philadelphia did not receive any ballot for the unsecured portion of any of its other claims (Nos. 3713 and 4002) and therefore the only way for it to opt out of the third-party releases with respect to those claims is to object to the Plan and its releases (in Section 10.5).

14. Philadelphia also objects to the release, exculpation and injunction provisions under the Plan to the extent those could be deemed to apply to or impair Philadelphia's claims and rights in its collateral, as well as its claims against any of its non-Debtor Indemnitors.

15. On August 2, 2024, the Debtors filed the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [Doc. No. 22165] (the "Plan").

16. The Plan itself does not mention Philadelphia, the Bonds, the Indemnity Agreement, or the Collateral.

17. Article 4.3 of the Plan creates eighteen different classes. Classes 3B and 6A appear to be the classes relevant to Philadelphia claims.

18. Class 3B consists of Other Secured Claims, and the Plan provides that "each holder of an Allowed Other Secured Claim . . . shall receive one of . . . (i) payment in full in Cash; (ii) delivery of the collateral securing such Allowed Other Secured Claim; or (iii) treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired." [Doc. No. 22165 at 36]. Holders of Other Secured Claims in Class 1 are unimpaired and therefore presumed to have accepted the Plan [*Id.*]. Class 6A consists of General Unsecured Claims and is impaired. Holders of Class 6A claims are entitled to vote to accept or reject the Plan [*Id.* at 38].

19. With respect to the proofs of claim referenced above, Philadelphia should be classified as a holder of an Other Secured Claim against each of Hawaii Digital Assets, Inc., FTX Lend, Inc., West Realm Shires Services, Inc., and West Realm Shires Inc. The unsecured portions of Philadelphia's claims above should be classified as Class 6A claim against each of FTX Lend, Inc., West Realm Shires Services, Inc., and West Realm Shires, Inc. With respect to each claim, Philadelphia objects to the third-party releases contained in Section 10.5 and expressly opts out of such releases under the Plan. .

**PLAN RELEASE, EXCULPATION, AND INJUNCTIONS**

20. Section 2.1.168 of the Plan defines "Releasing Parties" as, in relevant part, (a) the Debtors; (b) each of the Official Committee and the Supporting Parties; (c) the Holders of all

5

Claims who vote to accept the Plan and do not opt out of granting the releases set forth herein; (d) the Holders of all Claims that are Unimpaired under the Plan; (e) the Holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) the Holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth therein; (g) the Holders of all Claims or Interests who are deemed to reject the Plan and opt in to the releases set forth therein; and (h) all other Holders of Claims or Interests to the maximum extent permitted by law. Holders who were not provided a Ballot or an Election Form and are not listed in clauses (a) through (h) above are not Releasing Parties." [Doc. No. 22165 at 20-21].

21.     Section 10 of the Plan then provides broad-sweeping releases [Doc. No. 22165 at 74-78] (collectively, the "Plan Releases and Injunctions").

22.     To be clear, Philadelphia does not consent to and opts-out of the Plan Releases and Injunctions and therefore objects to being included as a Releasing Party or Released Party.

23.     Additionally, Philadelphia has rights and claims against its non-Debtor Indemnitors and the Bonds may be exposed to claims by non-Debtor third parties. In each instance, Philadelphia's rights could be implicated by the Plan Releases and Injunctions contained in the Plan.

## PHILADELPHIA'S LIMITED OBJECTION

24.     Philadelphia objects to the Plan to the extent it impairs Philadelphia's rights and interests in and to its Collateral. While the Plan provides that holders of Other Secured Claims (which should include Philadelphia with respect to all of its Collateral) are unimpaired, the fact that Philadelphia did not receive Non-Voting Notices for its secured claims suggests the Debtors have not appropriately classified Philadelphia's claims with respect to its Collateral. Philadelphia

6

seeks clarity with respect to its status as a holder of Other Secured Claims and to preserve its right to retain and use its Collateral in relation to claims and losses under the Bonds and the Indemnity Agreement without concern that doing so may implicate any of the Plan Releases and Injunctions.

25. The broad, wide-sweeping Plan Releases and Injunctions set forth in Section 10 could also be construed as preventing Philadelphia from exercising its rights and remedies with respect to the applicable Bond obligees, who are non-Debtors, along with any of Philadelphia's non-Debtor Indemnitors. Accordingly, Philadelphia seeks further clarity regarding the scope of the Plan Releases and Injunctions in relation to Philadelphia, the Bonds, the Indemnity Agreement, and the Collateral.

26. Philadelphia also objects to Sections 7.12 and 8.9 of the Plan. Section 7.12 provides, in relevant part, "to the extent any Holder has received payment in full on account of any Allowed Claim in accordance with Section 4.3, such Allowed Claim shall be deemed satisfied and expunged from the claims registry without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court." This section also provides that payments from a third party will be returned to the Plan Administrator "to the extent such Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount that other similarly-situated Holders of such Claim received as of the date of any such Distribution under the Plan."

27. Section 8.9 of the Plan covers "Claims Paid or Payable by Third Parties" and provides, in part, "The Debtors or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not

a Debtor or the Plan Administrator." The provision also requires the return of distributions made under the Plan the extent total recovery exceeds the amount of the Allowed Claim.

28. Philadelphia has paid claims under the Bonds for which it also has claims as subrogee and assignee. Sections 7.12 and 8.9 could be construed to preclude Philadelphia from seeking recovery from the applicable Debtors in respect of those claims.

29. Finally, Philadelphia objects to Section 8.2 of the Plan because it creates a short deadline within which a Holder of a Claim that has been estimated may seek reconsideration under Section 502(j). Section 502(j) contains no such deadline, and thus there should be no time deadline in Section 8.2 of the Plan.

## PROPOSED CONFIRMATION LANGUAGE

30. Philadelphia is willing to work with the Debtors to try to resolve Philadelphia's issues with the Plan and is hopeful that the parties can reach a consensual resolution.

31. To that end, Philadelphia proposes the inclusion of the following language to any order confirming the Plan:

> 1. Prior to the Petition Date, in the ordinary course of business, Philadelphia Indemnity Insurance Company ("Surety") issued surety bonds on behalf of certain of the Debtors (collectively, the "Surety Bonds" and each, individually, a "Surety Bond"). Prior to the Petition Date, in the ordinary course of their business, certain of the Debtors and a non-Debtor (collectively, the "Indemnitors") executed certain indemnity agreements and/or related agreements, including, without limitation, agreements regarding collateral, with each Surety (collectively, the "Surety Indemnity Agreements").
>
> 2. Nothing in Confirmation Order, the Plan, or any documents or agreements relating thereto, shall be deemed to alter, limit, or modify the Sureties' respective rights under the Surety Bonds, the Surety Indemnity Agreements, and/or in any collateral in respect of the Surety Indemnity Agreements and Surety Bonds (the "Surety Collateral"). Additionally, nothing in the Plan, or Confirmation Order, including, without limitation, any exculpation, release, injunction, exclusions and discharge provision contained in Section 10 of the Amended Plan shall bar, alter, limit, impair, release, modify or enjoin any rights, of Surety in any Surety Collateral, or in respect of any claims, defenses, and rights, including without

limitation, any subrogation rights, with respect to any claim by third parties, and any claims against any of Philadelphia's non-Debtor Indemnitors. Additionally, the provisions in Sections 7.12 and 8.9 of the Plan shall not apply to any Claim to which Surety may be subrogated. Further, the part of Section 8.2 of the Plan which restricts a Claimants rights under 502 (j) of the Bankruptcy Code shall not apply to any Claim of the Surety and/or any Claim to which the Surety may be subrogated. Without the requirement of any action by the Surety, the Surety is deemed to have opted out of the third-party release provisions of the Plan, and the Surety is not a Releasing Party under the Amended Plan.

## **RESERVATION OF RIGHTS**

32. Philadelphia reserves any and all liens, interests, rights, claims, remedies, and defenses with respect to the Bonds, the Indemnity Agreements, and/or the Collateral under any applicable bankruptcy and/or non-bankruptcy law, including, without limitation, any rights and claims as subrogee and/or assignee. Additionally, Philadelphia reserves the right to amend and/or supplement this Limited Objection at any time.

**WHEREFORE**, Philadelphia requests this Court condition confirmation of the Plan on the inclusion of modifications to the Plan and/or language in the Confirmation Order to address Philadelphia's objections, and grant such other and further relief the Court deems just and proper.

Respectfully submitted,

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: August 19, 2024         */s/ Gary D. Bressler*
Gary D. Bressler (#5544)
300 Delaware Avenue, Suite 1014
Wilmington, Delaware 19801
Telephone: (302) 300-4515
Facsimile: (302) 654-4031
E-mail: gbressler@mdmc-law.com

-and-

Scott C. Williams (admitted *pro hac vice*)
S. Marc Buchman (admitted *pro hac vice*)
**MANIER & HEROD**, **a Tennessee professional corporation**
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Telephone: (615) 244-0030
Facsimile: (615) 500-1137
E-mail: swilliams@manierherod.com
         mbuchman@manierherod.com

*Attorneys for Philadelphia Indemnity Insurance Company*