## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FTX TRADING LTD., *et al.*,[1] | ) Case No. 22-11068 (JTD) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) Re: Docket No. 20030 |
|  | ) Hearing Date: September 12, 2024 at 1:00 p.m. (ET) |
|  | ) |

## RESPONSE OF TAI MO SHAN LIMITED TO DEBTORS'
## OBJECTION TO PROOFS OF CLAIM FILED BY TAI MO SHAN LIMITED

Tai Mo Shan Limited ("TMSL"), through its undersigned counsel, files this response (this "Response") to the *Debtors' Objection to Proofs of Claim Filed by Tai Mo Shan Limited* [Docket No. 20030] (the "Claim Objection").[2] In support of this Response, TMSL states as follows:

### Preliminary Statement

1.      Before the petition date, Alameda and TMSL entered into a contract that required Alameda to loan 800 million SRM tokens to TMSL. Alameda breached the contract when, as the Debtors concede, it failed to deliver on the Loan. TMSL is entitled to expectation damages for that breach. The Debtors' attempts to avoid the outcome of ordinary principles of contract law are without merit.

2.      This Claim is as simple as it sounds. The parties entered into a contract pursuant to which Alameda was obligated to make a Loan yet failed to do so. That failure breached the contact

---

[1]      The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Claim Objection or this Response, as the case may be.

and TMSL has suffered damages as a result. Those damages are appropriately calculated by determining the value of the repayment option embedded in the Loan. Each of the Debtors' arguments is easily rebuffed.

3.      *First*, the Debtors incorrectly argue that Alameda is not liable for its failure to deliver because its own delivery of tokens was a condition precedent to having to perform under the Agreement and that the Debtors should be able to exploit its own breach to evade liability. Alameda's obligation to make the Loan was immediate upon entering into the Loan Confirmation-2, and it breached that obligation when it failed to deliver. Further, even if delivery were somehow a condition precedent to liability, Alameda would still be liable as (a) Illinois law strips a party of the ability to take advantage of its deliberate failure to perform a condition precedent,[3] and (b) TMSL has a rejection damages claim under sections 365 and 502(g) of the Bankruptcy Code.

4.      *Second*, the Debtors wrongly argue that even if Alameda breached the agreement TMSL is effectively without a remedy because the only action TMSL can take upon a failure to deliver is to void the Loan. That is contrary to the plain language of the Agreement, which specifically provides that "[a]ll rights of each Party stated herein are cumulative and in addition to all other rights provided by Law or in equity." TMSL is fully entitled to assert contract damages resulting from the Debtors' breach.

5.      *Third*, the Debtors wrongly state TMSL's damages calculation is unsupportable. TMSL calculated its damages using a Black-Scholes options model. This is the appropriate method to calculate damages in this context. While TMSL, in its Claim, stated that the underlying support for the damages calculation is available upon request, the Debtors failed to make any such request. TMSL's damages calculation is further supported by the Gkatzimas Report. In the Gkatzimas

---

[3]      The Agreement contains an Illinois choice of law clause. *See* MLA § XI.

Report, a copy of which is attached hereto as **Exhibit A**, Mr. Gkatzimas describes the proper methodology for calculating damages and, independently of TMSL, applies such methodology to reach a damages range that includes TMSL's damages calculations figure.

6.    *Fourth*, the Debtors are wrong that TMSL's Claim should be subject to disallowance under section 502(d) of the Bankruptcy Code because TMSL may have received a fraudulent transfer. That argument never gets off the ground because Delaware law provides that a party must first obtain a judgment on a transferee's liability before availing itself of section 502(d). The Debtors have not obtained such a judgment.

## Factual Background

7.    On August 12, 2020, Debtor Alameda Research Ltd ("Alameda"), as lender, and TMSL, as borrower, entered into a Master Loan Agreement (the "MLA") and an Initial Loan Confirmation-2 thereunder (the "Loan Confirmation-2", and together with the MLA, the "Agreement"), providing for a loan (the "Loan") of Serum tokens ("SRM").[4] The MLA sets forth the general terms pursuant to which future loans could be negotiated and the Loan Confirmation-2 sets forth the terms (which supersede the MLA if in conflict) for one such future Loan.

8.    That Loan required Alameda to lend TMSL 800 million SRM by delivering 547,945 SRM to TMSL daily from August 1, 2023 through August 1, 2027. The Loan Term (as defined in the Loan Confirmation-2) ran from August 12, 2020 (the date of the Loan Confirmation-2) to its maturity date on August 12, 2027 (the 7th anniversary of the date of the Loan Confirmation-2). *See* Loan Confirmation-2.

---

[4]    The Agreement provided for two loans. Alameda performed on the first loan, and TMSL repaid that loan in full prepetition. That first loan is not the subject of the Claim.

9.      TMSL had the option, at any time during the Loan Term, to repay the Loan in-kind or at a predetermined dollar price of $0.12 per SRM borrowed (the "Repayment Option Price"). As of the Petition Date, none of the SRM comprising the Loan was delivered to TMSL, and none has been delivered since the Petition Date (including beginning on August 1, 2023, as required by the Agreement).

10.      Alameda's failure to deliver the SRM breached the Agreement, thus depriving TMSL of the benefit of its bargain. TMSL has suffered damages. On June 28, 2023, TMSL timely filed an initial proof of claim in an unliquidated amount of its claim (Claim #5475).  Subsequently, on May 15, 2024, TMSL filed an amended proof of claim in the amount of $263,948,000 (Claim #94967).  Following the Court's ruling establishing a revised Petition Date price of SRM (which, as detailed below, is an input into the damages calculation model), on July 5, 2024, TMSL filed a further amended proof of claim in the amount of $289,675,711 (Claim #95768). This amount reflects the damages from Alameda's failure to make good on its contractual promise to lend and deliver the 800 million SRM to TMSL as required under the Agreement.

11.      On July 10, 2024, the Debtors filed the Claim Objection.

## Argument

## I.      TMSL Is Entitled to a Recovery under the Agreement and Bankruptcy Code.

12.      General principles of contract law dictate that TMSL is entitled to expectation damages for Alameda's breach of the contract. *See In re Green Field Energy Services, Inc.*, 585 B.R. 89, 112 (Bankr. D. Del. 2018) (expectation damages are allowed to the extent allowed under applicable nonbankruptcy law); *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14 (Ill. Ct. App. 1st 2006) ("A party injured by another's breach or repudiation of a contract usually seeks recovery in the form of damages based on his 'expectation interest[.]'");

*Midwest Property Mgmt. Ltd. P'ship v. DesignWise, Inc.*, No. 4-23-0120, 2023 WL 6388867, at

*5 (Ill. Ct. App. 4th Oct. 2, 2023) (a party is allowed to seek a remedy in a breach of contract

action based on an expectation interest). Alameda and TMSL entered into a valid and binding

Agreement obligating Alameda to extend the Loan to TMSL. The Debtors concede "Alameda

failed to deliver" on the Loan. Claim Objection at ¶ 16. That failure to deliver breached the

Agreement. TMSL is entitled to recover expectation damages for that breach. These damages total

$289,675,711, calculated using a Black-Scholes options pricing model.

## II.    The Debtors' Arguments that TMSL Is Not Entitled To Recover under the Agreement for Alameda's Breach Are Without Merit.

13.    The Debtors' arguments that TMSL cannot recover under the terms of the

Agreement are without merit.

14.    *First*, the Debtors argue that Alameda is not liable for its failure to delivery because

of the nonoccurrence of a condition precedent. That condition precedent, say the Debtors, was

Alameda's delivery of the loan. *See* Claim Objection ¶¶ 15–18. In other words, the Debtors argue

that Alameda's obligation to make a Loan never arose because Alameda never made the Loan.

That circular argument is unsupported by the Agreement, which obligated the Debtors to perform

upon execution of the Loan Confirmation-2. The Debtors' citation to *Hollmann v. Putman*, 633

N.E.2d 134, 137 (Ill App. 3d. 1994), only serves to underscore the inappropriateness of the

Debtors' arguments. In *Hollman*, a doctor and patient entered into an oral agreement where the

doctor agreed to perform surgery to remove a tumor on the patient's thyroid. *Hollman*, 633 N.E.2d

at 673. Under the agreement, if the doctor found a malignancy while operating, he would remove

the entire thyroid. *Hollman*, 633 N.E.2d at 673. The court found that because the malignancy was

not confirmed until after the surgery, the doctor's obligation to remove the malignancy during

surgery never arose, and the doctor was not liable for breach of contract. *Hollman*, 633 N.E.2d at

675. In other words, the doctor was not obligated to remove the malignancy because the condition precedent (i.e., that a malignancy was identified during the operation) did not occur. There is no such analogous condition precedent here as there was no condition that had to occur prior to Alameda being bound to perform.

15.     But even if the Debtors are correct on their condition precedent point (they are not), their argument fails for two additional, independent reasons. The first such reason is that Illinois law provides that a party cannot refuse to perform a condition on which its liability depends and then take advantage of its own conduct and claim that the failure to perform is because a condition precedent was not satisfied. *See Nat'l Tea Co. v. Commerce and Indus. Ins. Co.*, 119 Ill. App. 3d 195, 201 (Ill. Ct. App. 5th 1983) ("a party to a contract may not avail itself of a condition precedent where by its own conduct it has rendered compliance therewith impossible"); *Yale Dev. Co., Inc. v. Oak Park Tr. & Sav. Bank*, 26 Ill. App. 3d 1015, 1020 (Ill. Ct. App. 2d 1975) ("A party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability.").[5]

16.     The second such reason is that TMSL has a rejection damages claim by virtue of the treatment afforded to executory contracts under the Bankruptcy Code and the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 19319] (as amended, modified, or supplemented from time to time, the "Plan"). An executory contract is a

---

[5]     The Debtors undeveloped argument that the MLA's termination provision, which allows for either party to terminate the MLA at will, excuses its non-performance is likewise contrary to the Agreement. As a threshold matter, Alameda did not terminate the Agreement and therefore an unexercised termination provision is not relevant to whether TMSL is entitled to a recovery. But even if Alameda had terminated the MLA prior to failing to deliver, the termination provision does not operate as Debtors suggest; rather, the provision unambiguously provides that a termination does not affect any outstanding Loans entered before the effective date of a termination. In other words, even if the MLA is terminated the parties need to comply with any outstanding loan confirmation.  It is undisputed that the Loan Confirmation-2 was, and remains, outstanding.

"contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Southland Royalty Co. LLC*, 623 B.R. 64, 79 (Bankr. D. Del. 2020) (quoting *Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989)). The Bankruptcy Code provides for a claim arising from the rejection of an executory contract as if such claim had arisen before the date of the filing of the petition. 11 U.S.C. § 502(g). Section 6.1 of the most recent Plan provides that "all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code," subject to certain exceptions not applicable here. *See* Plan § 6.1. The Agreement was an executory contract as of the Petition Date. Both Alameda and TMSL had material obligations outstanding because Alameda was obligated to make the Loan and TMSL was obligated to repay it. The Debtors never assumed the Agreement and will reject it. That rejection constitutes a breach entitling the contract counterparty to damages. Therefore, under the Plan and Sections 365 and 502 of the Bankruptcy Code, TMSL has a rejection damages claim whether or not there was any condition precedent to Alameda making the Loan.

17.     *Second*, the Debtors alternative argument that TMSL is effectively without recourse for Alameda's breach because the only action that TMSL may take upon a failure to deliver is "voiding the applicable Loan Confirmation," Claim Objection ¶ 17, is unsupported by the law and contrary to the Agreement. While the Agreement provides that the "Borrower may void any Loan Confirmation . . . if Lender fails to deliver," MLA § II(b), that is not the exclusive remedy available to TMSL. A later section of the MLA (which went uncited by the Debtors) specifically preserves all other remedies that may be available in Law or equity: "All rights of each Party stated herein are cumulative and in addition to all other rights provided by Law or in equity." MLA § IX.

Accordingly, TMSL has the full range of remedies to pursue in the event of a breach, including ordinary contract damages.

### III. TMSL's Damages Calculation is Reasonable and Supportable.

18.    TMSL has established *prima facie* validity of its Claim. The Claim, among other things, explains that damages were computed "using an options model with the following inputs/assumptions: the Petition Date price of SRM, the Repayment Option Price, SRM's implied volatility, the time period at issue, and the risk-free rate at the Petition Date." Claim ¶ 5. TMSL also stated in the Claim that "[t]he model and related calculations are available upon request." Claim ¶ 5. The Debtors never made such a request. Had they done so, the Debtors would have seen that the damages calculation was based on the widely accepted Black-Scholes methodology with the following figures for each of the above-described inputs: (a) the Petition Date price of SRM: $0.406; (b) the Repayment Option Price: $0.12; (c) SRM's implied volatility: 70%; (d) and the risk-free rate at the Petition Date: 5%. The final proof of claim amount was then calculated as $289,675,711, which represents the Black-Scholes calculation as modified to account for the features of the Agreement that resemble the more valuable American, as opposed to a European, call option.

19.    The damages calculation is now further supported by the Gkatzimas Report, in which Mr. Gkatzimas describes the proper methodology for conservatively calculating damages. Gkatzimas Report § III(C). According to Mr. Gkatzimas, a component of the Agreement and its various economic features, including the $0.12 SRM repayment option, is the equivalent of a "call option." *Id.* § III(A)(13). To value those call options, Mr. Gkatzimas independently applied the Black-Scholes model, which is a "widely-accepted and broadly applied framework" to value options. *Id.* § III(C)(18). Mr. Gkatzimas applied that methodology using the inputs set forth in the

Gkatzimas Report to calculate a damages range—which varied depending on the selected volatility window—of $279 million to $311 million. *Id.* § III(23)-(24). The midpoint of that range is $295 million and, as set forth in more detail in the Gkatzimas Report, the damages figure within that range based on the volatility window previously endorsed by the Court results in a damages calculation of $292 million. *Id.* All of these figures support TMSL's $289 million claim amount.

## IV.     The Debtors' Constructive Fraudulent Transfer Argument is Contrary to Well-Established Delaware Law.

20.     The Debtors' disallowance argument under Section 502(d) of the Bankruptcy Code is based on an undeveloped assertion that TMSL "may" have received a constructive fraudulent transfer in connection with the Agreement. The argument is dead on arrival because a claim cannot be disallowed on constructive fraudulent transfer grounds absent a judgment against the claimant that there was a constructive fraudulent transfer. *See, e.g.*, *In re PennySaver USA Publishing, LLC*, 587 B.R. 445, 468 (Bankr. D. Del. 2018) ("Disallowing a claim under Section 502(d) requires a judicial determination that a claimant is liable. A debtor wishing to avail itself of this section's benefits must first obtain a judicial determination on the complaint."); *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 866–67 (Bankr. D. Del. 2018) (same); *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) ("There is an additional reason to overrule the Debtor's objection. The Debtor does not have a final judgment on its preference complaint. To disallow a claim under section 502(d) requires a judicial determination that a claimant is liable."); *see also In re KB Toys Inc.*, 736 F.3d 247, 253 (3d Cir. 2013) ("Section 502(d) can be used to compel an original claimant to comply with a judgment and return the preferential payment as a condition of collecting on its claim.").

21.     The Debtors have not obtained a judicial determination that a constructive fraudulent transfer occurred and therefore cannot avail themselves of disallowance under Section

502(d). Even if the Debtors were to seek such a determination, it will be unavailing because the Debtors cannot establish the elements for a constructive fraudulent transfer claim. To do so, among other elements, the Debtors would need to prove they were insolvent August 12, 2020, the date of entry into the Agreement. TMSL also exchanged reasonably equivalent value. In entering into the MLA and agreeing to loan SRM to TMSL per Loan Confirmation-2, Alameda expected to benefit from the liquidity that TMSL could provide with the loaned tokens, as Alameda had in connection with the first loan as to which both parties fully performed.

<u>Conclusion</u>

WHEREFORE, TMSL respectfully requests the Court overrule the Claim Objection and grant such other relief as the Court finds just and appropriate.

Dated: August 19, 2024

**SAUL EWING LLP**

By: */s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
mark.minuti@saul.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
Peter A. Siddiqui (admitted *pro hac vice*)
Elliott Bacon (admitted *pro hac vice*)
Ethan D. Trotz (admitted *pro hac vice*)
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
peter.siddiqui@katten.com
elliott.bacon@katten.com
ethan.trotz@katten.com

*Attorneys for Tai Mo Shan Limited*