**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**CERTIFICATE OF PUBLICATION**

I, James Daloia, declare and state as follows:

I am employed by Kroll Restructuring Administration LLC, the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes certifications verifying that the *Notice of Deadline to Vote on, Deadline to Object to Confirmation of, and Hearing to Consider Confirmation of Debtors′ Joint Chapter 11 Plan of Reorganization,* as conformed for publication, was published (1) in *The New York Times*, on July 3, 2024, as described in the proof of publication attached hereto as **Exhibit A**, (2) in the international edition of *The New York Times*, on July 8, 2024, as described in the proof of publication attached hereto as **Exhibit B**, and (3) on *Coindesk.com*, starting on July 3, 2024, and until July 10, 2024, as described in the affidavit of publication attached hereto as **Exhibit C**.

Dated: August 28, 2024

*/s/ James Daloia*
James Daloia

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Exhibit A**



The New York Times Company

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

July 3, 2024

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

7/3/2024, NY & NATL, pg B3

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2024.07.03 11:44:55 -04'00'

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: FTX TRADING LTD., *et al.*,[1] Debtors. | Chapter 11 Case No. 22-11068 (JTD) (Jointly Administered) |
|---|---|

**NOTICE OF DEADLINE TO VOTE ON, DEADLINE TO OBJECT TO CONFIRMATION OF, AND HEARING TO CONSIDER CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE THAT** on June 27, 2024, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 19139] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[2] In connection with the Plan, the Debtors also filed the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT** the United States Bankruptcy Court for the District of Delaware (the "Court") has scheduled a hearing on **October 7, 2024, at 10:00 a.m. prevailing Eastern Time** (the "Confirmation Hearing") to consider the Confirmation of the Plan. The Confirmation Hearing will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** on June 26, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"). Pursuant to the Solicitation Procedures Order, the Court approved certain voting, solicitation and tabulation procedures in connection with Confirmation of the Plan. Only Holders of Claims and Interests in Voting Classes (Class 3A Secured Loan Claims, Class 5A Dotcom Customer Entitlement Claims, Class 5B U.S. Customer Entitlement Claims, Class 6A General Unsecured Claims, Class 6B Digital Asset Loan Claims, Class 7A Dotcom Convenience Claims, Class 7B U.S. Convenience Claims, Class 7C General Convenience Claims, Class 8B Priority DM Claim, Class 8C PropCo General Unsecured Claims, Class 10A Senior Subordinated IRS Claims, Class 10B Senior Subordinated Governmental Claims, Class 10C Junior Subordinated IRS Claims and Class 12 Preferred Equity Interests) are entitled to receive a ballot (a "Ballot") for casting a vote on the Plan, and for Holders of Class 5A Dotcom Customer Entitlement Claims and Class 7A Dotcom Convenience Claims, to make an irrevocable election to have their Claims administered, reconciled, valued, settled, adjudicated, resolved and satisfied in FTX Digital Markets Ltd.'s liquidation proceeding in The Bahamas in exchange for forever, fully and finally releasing and discharging the Debtors with respect to such Claims and forever, fully and finally withdrawing with prejudice such Claims from these Chapter 11 Cases. Holders of Claims and Interests in all other Classes under the Plan are either conclusively presumed to accept the Plan because they are Unimpaired by the Plan, or presumed to reject the Plan because they are not receiving any distributions under the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the Ballot so that it is **actually received** by Kroll Restructuring Administration LLC (the "Solicitation Agent") on or before **August 16, 2024 at 4:00 p.m. prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE THAT the Plan proposes certain releases, exculpation and injunctions. The Plan proposes a permanent injunction against any person who has held, holds or may hold Claims, Interests or Causes of Action from commencing or continuing any action with respect to any Claim, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code. The Plan also provides that all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date. For the specific terms and conditions of all the releases, exculpation and injunctions provided for in the Plan, please refer to the specific terms of the Plan, which can be obtained as described below.**

**PLEASE TAKE FURTHER NOTICE THAT** your legal rights may be affected if the Plan is approved.

**PLEASE TAKE FURTHER NOTICE THAT** if you hold a Claim or Interest against one or more of the Debtors as of the Voting Record Date and are entitled to opt out of the release contained in Section 10.5 of the Plan (the "Third-Party Release"), you should have received a Ballot or an Election Form, along with corresponding opt-out instructions. If you believe you are entitled to, and would like to, opt out of the Third-Party Release, and you have not already received an opt-out form, please contact the Debtors' Solicitation Agent, Kroll Restructuring Administration LLC, by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. For your opt-out election to be counted, you must: (a) follow the instructions in your Ballot or Election Form, (b) complete all the required information on the Ballot or Election Form, and (c) sign, date and return your completed Ballot or Election Form so that it is **actually received** by the Solicitation Agent according to and as set forth in detail in the instructions in your Ballot or Election Form on or before **August 16, 2024, at 4:00 p.m. prevailing Eastern Time**. A failure to follow such instructions may disqualify your vote or opt-out election.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to object to the confirmation of the Plan, you may do so by filing your objection no later than **August 16, 2024 at 4:00 p.m. prevailing Eastern Time** (the "Confirmation Objection Deadline"). Any objection to the confirmation of the Plan must: (1) be in writing; (2) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (3) set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors; (4) state the basis and the specific grounds therefor and (5) be filed with the Court, together with proof of service thereof, and served upon and received by each of the following parties (collectively, the "Notice Parties") no later than the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** the Notice Parties for the purposes of serving an objection to the Plan are: (a) counsel to the Debtors: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com) and Alexa J. Kranzley (kranzleya@sullcrom.com) and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kimberly A. Brown (brown@lrclaw.com); (b) the Office of the United States Trustee for the District of Delaware, Attn: Linda Richenderfer, Esq. (linda.richenderfer@usdoj.gov); (c) counsel to the Official Committee of Unsecured Creditors: (i) Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Kris Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com) and Gabriel Sasson (gabesasson@paulhastings.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Matthew B. Lunn (mlunn@ycst.com) and Robert F. Poppiti, Jr. (rpoppiti@ycst.com); (d) counsel to the Ad Hoc Committee of Non-US Customers of FTX.com: (i) Eversheds Sutherland (US) LLP, 227 West Monroe Street, Suite 6000, Chicago, Illinois 60606, Attn: Erin E. Broderick (erinbroderick@eversheds-sutherland.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Matthew B. Harvey (mharvey@morrisnichols.com); (e) counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd.: (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brett Bakemeyer (brett.bakemeyer@whitecase.com) and Brian D. Pfeiffer (brain.pfeiffer@whitecase.com) and (ii) Richard, Layton, and Finger P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Brendan Schlauch (schlauch@rlf.com) and Paul N. Heath (heath@rlf.com); and (f) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors may file supplements to the Plan (the "Plan Supplement") with the Court no later than **August 9, 2024**.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, the Plan Supplement, the Disclosure Statement and the Solicitation Procedures Order, as well as all other documents filed in these Chapter 11 Cases, may be obtained (i) for a nominal fee from the Court's electronic docket for the Debtors' Chapter 11 Cases at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (ii) free of charge by accessing the website of Kroll Restructuring Administration, LLC (the "Solicitation Agent"), https://restructuring.ra.kroll.com/FTX. In addition, the Debtors will, at their expense, provide paper copies of the Plan, Disclosure Statement or Solicitation Procedures Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in these Chapter 11 Cases, but may not advise you as to whether you should object to the confirmation of the Plan or on matters relating to the Plan.

Dated: June 27, 2024, Wilmington, Delaware, **LANDIS RATH & COBB LLP**, */s/ Matthew R. Pierce*, Adam G. Landis (No. 3407), Kimberly A. Brown (No. 5138), Matthew R. Pierce (No. 5946), 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Telephone: (302) 467-4400, Facsimile: (302) 467-4450, E-mail: landis@lrclaw.com, brown@lrclaw.com, pierce@lrclaw.com -and- **SULLIVAN & CROMWELL LLP**, Andrew G. Dietderich (admitted *pro hac vice*), James L. Bromley (admitted *pro hac vice*), Brian D. Glueckstein (admitted *pro hac vice*), Alexa J. Kranzley (admitted *pro hac vice*), 125 Broad Street, New York, NY 10004, Telephone: (212) 558-4000, Facsimile: (212) 558-3588, E-mail: dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, kranzleya@sullcrom.com, *Counsel for the Debtors and Debtors-in-Possession*

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

ECONOMY

# Powell Cites 'Real Progress' as Central Bankers Assess Inflation Fight

By ESHE NELSON and JEANNA SMIALEK

SINTRA, PORTUGAL — Jerome H. Powell, the chair of the Federal Reserve, said that inflation was once again coming down in the United States and that the Fed had "made quite a bit of progress" in cooling price increases back toward its goal.

Inflation "now shows signs of resuming its disinflationary trend," Mr. Powell said on Tuesday at the European Central Bank's annual conference in Sintra, Portugal. It was an optimistic message after the Fed's fight against inflation hit a speed bump earlier this year.

Fed officials have been waiting to see further progress on inflation before they begin to lower interest rates, which are set to their highest level in decades, at 5.3 percent. Mr. Powell declined to say exactly when officials could begin to cut borrowing costs, but suggested that they could lower rates if inflation data continued on its current track or if the labor market weakened.

"What we'd like to see is more data like what we've been seeing recently," Mr. Powell said, later adding, "We have the ability to take our time and get this right."

Sitting next to Mr. Powell on the panel, Christine Lagarde, the president of the European Central Bank, said that European policymakers also weren't in a rush to lower rates again, after an initial cut in June. E.C.B. officials would continuously reassess whether economic data gave them enough confidence to cut interest rates further, she added.

*Reiterating a need for more confidence for interest rate cuts.*

Inflation is "heading in the right direction," she said. "But we still believe that it's likely to be a bumpy road until the end of 2024."

As inflation has slowed in both the United States and Europe over the past year and a half, central bankers have been trying to calibrate how much effort they need to put into stamping out price pressures to return inflation to their 2 percent targets. The Fed's preferred inflation measure came in at 2.6 percent in May. In the eurozone, the annual inflation rate slowed to 2.5 percent in June, data published on Tuesday showed.

The Fed has left interest rates unchanged since July 2023. Officials initially expected to cut interest rates several times this year, but they have instead held borrowing costs steady as they await evidence that inflation will continue to come down. At their June meeting, most Fed officials projected one or two rate cuts before the end of the year, and investors now expect that those cuts could start in September.

When asked if a rate cut could come then, Mr. Powell said he wasn't going to be "landing on any specific date today," but he also noted that there were risks to both moving too early and moving too late. Going too early could allow inflation to remain higher. Going too late could risk a recession.

"We have two-sided risks now more so than we did a year ago," Mr. Powell said. "That's a big change."

Mr. Powell noted that some of the lingering inflation in services in the United States was the delayed result of earlier trends, like a run-up in market-based rent costs that had only slowly fed into official data. He recognized that Fed officials did not expect to lower inflation fully back to their goal this year.

"The main thing is, we're making real progress," he said.

While inflation in the United States and Europe has followed a similar trajectory for the past three years, their economies have diverged significantly. The United States has grown surprisingly strongly, but the eurozone is only just emerging from five quarters of economic stagnation.

The E.C.B. cut interest rates last month for the first time since 2019, as policymakers forecast inflation would return to 2 percent late next year. But European officials have resisted indicating how many more rate cuts could come, as they are wary of stubborn inflation in the services sector. Last month, services inflation in the eurozone held at 4.1 percent.

"Services is the difficult one," Ms. Lagarde said. Policymakers are trying to understand whether services inflation has been caused by permanent changes in the sector or by prices catching up to other areas that have seen rising inflation, such as energy.

The E.C.B. is not expected to cut rates at its meeting in July, but some investors are betting that rates could be lowered in September, when the central bank publishes new economic forecasts. Traders are betting on one or two more rate cuts this year.

Mr. Powell and Ms. Lagarde spoke in front of current and former policymakers from around the world, as well as academic and bank economists, gathered to discuss "monetary policy in an era of transformation."

Earlier on Tuesday, attendees debated whether the recent surge in inflation in the United States and Europe was caused by supply shocks, like shipping disruptions during the coronavirus pandemic and Russia's invasion of Ukraine, or an increase in demand from expansionary fiscal policies and pent-up demand after lockdowns. They also worried about how geopolitical risks, including wars and trade tariffs, tended to lead to higher inflation.

Eshe Nelson reported from Sintra, and Jeanna Smialek from Pittsburgh.

EUROPEAN CENTRAL BANK

Christine Lagarde, the European Central Bank president, and Jerome H. Powell, center, the Federal Reserve chair, must calibrate carefully to end inflation.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| In re: | Chapter 11 |
| --- | --- |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

**NOTICE OF DEADLINE TO VOTE ON, DEADLINE TO OBJECT TO CONFIRMATION OF, AND HEARING TO CONSIDER CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE THAT** on June 27, 2024, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 19139] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[2] In connection with the Plan, the Debtors also filed the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT** the United States Bankruptcy Court for the District of Delaware (the "Court") has scheduled a hearing on **October 7, 2024, at 10:00 a.m. prevailing Eastern Time** (the "Confirmation Hearing") to consider the Confirmation of the Plan. The Confirmation Hearing will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** on June 26, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"). Pursuant to the Solicitation Procedures Order, the Court approved certain voting, solicitation and tabulation procedures in connection with Confirmation of the Plan. Only Holders of Claims and Interests in Voting Classes (Class 3A Secured Loan Claims, Class 5A Dotcom Customer Entitlement Claims, Class 5B U.S. Customer Entitlement Claims, Class 6A General Unsecured Claims, Class 6B Digital Asset Loan Claims, Class 7A Dotcom Convenience Claims, Class 7B U.S. Convenience Claims, Class 7C General Convenience Claims, Class 8B Priority DM Claim, Class 8C PropCo General Unsecured Claims, Class 10A Senior Subordinated IRS Claims, Class 10B Senior Subordinated Governmental Claims, Class 10C Junior Subordinated IRS Claims and Class 12 Preferred Equity Interests) are entitled to receive a ballot (a "Ballot") for casting a vote on the Plan, and for Holders of Class 5A Dotcom Customer Entitlement Claims and Class 7A Dotcom Convenience Claims, to make an irrevocable election to have their Claims administered, reconciled, valued, settled, adjudicated, resolved and satisfied in FTX Digital Markets Ltd.'s liquidation proceeding in The Bahamas in exchange for forever, fully and finally releasing and discharging the Debtors with respect to such Claims and forever, fully and finally withdrawing with prejudice such Claims from these Chapter 11 Cases. Holders of Claims and Interests in all other Classes under the Plan are either conclusively presumed to accept the Plan because they are Unimpaired by the Plan, or presumed to reject the Plan because they are not receiving any distributions under the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the Ballot so that it is **actually received** by Kroll Restructuring Administration LLC (the "Solicitation Agent") on or before **August 16, 2024 at 4:00 p.m. prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE THAT the Plan proposes certain releases, exculpation and injunctions. The Plan proposes a permanent injunction against any person who has held, holds or may hold Claims, Interests or Causes of Action from commencing or continuing any action with respect to any Claim, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code. The Plan also provides that all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date. For the specific terms and conditions of all the releases, exculpation and injunctions provided for in the Plan, please refer to the specific terms of the Plan, which can be obtained as described below.**

**PLEASE TAKE FURTHER NOTICE THAT** your legal rights may be affected if the Plan is approved.

**PLEASE TAKE FURTHER NOTICE THAT** if you hold a Claim or Interest against one or more of the Debtors as of the Voting Record Date and are entitled to opt out of the release contained in Section 10.5 of the Plan (the "Third-Party Release"), you should have received a Ballot or an Election Form, along with corresponding opt-out instructions. If you believe you are entitled to, and would like to, opt out of the Third-Party Release, and you have not already received an opt-out form, please contact the Debtors' Solicitation Agent, Kroll Restructuring Administration LLC, by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. For your opt-out election to be counted, you must: (a) follow the instructions in your Ballot or Election Form, (b) complete all the required information on the Ballot or Election Form, and (c) sign, date and return your completed Ballot or Election Form so that it is **actually received** by the Solicitation Agent according to and as set forth in detail in the instructions in your Ballot or Election Form on or before **August 16, 2024, at 4:00 p.m. prevailing Eastern Time**. A failure to follow such instructions may disqualify your vote or opt-out election.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to object to the confirmation of the Plan, you may do so by filing your objection no later than **August 16, 2024 at 4:00 p.m. prevailing Eastern Time** (the "Confirmation Objection Deadline"). Any objection to the confirmation of the Plan must: (1) be in writing; (2) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (3) set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors; (4) state the basis and the specific grounds therefor and (5) be filed with the Court, together with proof of service thereof, and served upon and received by each of the following parties (collectively, the "Notice Parties") no later than the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** the Notice Parties for the purposes of serving an objection to the Plan are: (a) counsel to the Debtors: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com) and Alexa J. Kranzley (kranzleya@sullcrom.com) and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kimberly A. Brown (brown@lrclaw.com); (b) the Office of the United States Trustee for the District of Delaware, Attn: Linda Richenderfer, Esq. (linda.richenderfer@usdoj.gov); (c) counsel to the Official Committee of Unsecured Creditors: (i) Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Kris Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com) and Gabriel Sasson (gabesasson@paulhastings.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Matthew B. Lunn (mlunn@ycst.com) and Robert F. Poppiti, Jr. (rpoppiti@ycst.com); (d) counsel to the Ad Hoc Committee of Non-US Customers of FTX.com: (i) Eversheds Sutherland (US) LLP, 227 West Monroe Street, Suite 6000, Chicago, Illinois 60606, Attn: Erin E. Broderick (erinbroderick@eversheds-sutherland.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Matthew B. Harvey (mharvey@morrisnichols.com); (e) counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd.: (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brett Bakemeyer (brett.bakemeyer@whitecase.com) and Brian D. Pfeiffer (brain.pfeiffer@whitecase.com) and (ii) Richard, Layton, and Finger P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Brendan Schlauch (schlauch@rlf.com) and Paul N. Heath (heath@rlf.com); and (f) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors may file supplements to the Plan (the "Plan Supplement") with the Court no later than **August 9, 2024**.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, the Plan Supplement, the Disclosure Statement and the Solicitation Procedures Order, as well as all other documents filed in these Chapter 11 Cases, may be obtained (i) for a nominal fee from the Court's electronic docket for the Debtors' Chapter 11 Cases at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (ii) free of charge by accessing the website of Kroll Restructuring Administration, LLC (the "Solicitation Agent"), https://restructuring.ra.kroll.com/FTX. In addition, the Debtors will, at their expense, provide paper copies of the Plan, Disclosure Statement or Solicitation Procedures Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in these Chapter 11 Cases, but may not advise you as to whether you should object to the confirmation of the Plan or on matters relating to the Plan.

Dated: June 27, 2024, Wilmington, Delaware, **LANDIS RATH & COBB LLP,** */s/ Matthew R. Pierce*, Adam G. Landis (No. 3407), Kimberly A. Brown (No. 5138), Matthew R. Pierce (No. 5946), 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Telephone: (302) 467-4400, Facsimile: (302) 467-4450, E-mail: landis@lrclaw.com, brown@lrclaw.com, pierce@lrclaw.com -and- **SULLIVAN & CROMWELL LLP,** Andrew G. Dietderich (admitted *pro hac vice*), James L. Bromley (admitted *pro hac vice*), Brian D. Glueckstein (admitted *pro hac vice*), Alexa J. Kranzley (admitted *pro hac vice*), 125 Broad Street, New York, NY 10004, Telephone: (212) 558-4000, Facsimile: (212) 558-3588, E-mail: dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, kranzleya@sullcrom.com, *Counsel for the Debtors and Debtors-in-Possession*

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

*This announcement is neither an offer to purchase nor a solicitation of an offer to sell Shares (as defined below), and the provisions herein are subject in their entirety to the provisions of the Offer (as defined below). The Offer is made solely by the Offer to Purchase (as defined below), dated July 3, 2024, and the related Letter of Transmittal (as defined below) and any amendments or supplements thereto, and is being made to all holders of Shares that are not currently held, directly or indirectly, by Purchaser (as defined below), Parent (as defined below) or any of their respective affiliates. The Offer is not being made to (nor will tenders be accepted from or on behalf of) holders of Shares in any jurisdiction in which the making of the Offer or the acceptance thereof would not be in compliance with the securities, "blue sky" or other laws of such jurisdiction or any administrative or judicial action pursuant thereto. In those jurisdictions where applicable law requires the Offer to be made by a licensed broker or dealer, the Offer will be deemed to be made on behalf of Purchaser by one or more registered brokers or dealers licensed under the laws of such jurisdiction to be designated by Purchaser.*

**Notice of Offer to Purchase for Cash**
**All Outstanding Ordinary Shares**
**of**
**Allego N.V.**
**at**
**$1.70 per share**
**Pursuant to the Offer to Purchase dated July 3, 2024**
**by**
**Madeleine Charging B.V.**
**an indirect, wholly owned subsidiary of funds managed by**
**Meridiam SAS**

Madeleine Charging B.V., a private limited liability company (*besloten vennootschap met beperkte aansprakelijkheid*) incorporated under the laws of the Netherlands with its office address at Zuidplein 126, WTC Toren H, Floor 15, 1077 XV, Amsterdam, the Netherlands ("Purchaser"), whose indirect parent entities are managed by Meridiam SAS, a simplified stock company (*société par actions simplifiée*) incorporated under the laws of France with its principal business office address at 4, place de l'Opéra, 75002, Paris, France ("Parent"), is offering to purchase all of the outstanding ordinary shares, par value €0.12 per share (the "Shares"), of Allego N.V., a public limited liability company (*naamloze vennootschap*) incorporated under the laws of the Netherlands with its office address at Westervoortsedijk 73 KB, 6827 AV, Arnhem, the Netherlands ("Allego" or the "Company"), that are not currently held, directly or indirectly, by Purchaser, Parent or any of their respective affiliates, at a purchase price of US$1.70 per Share, without interest and less applicable withholding taxes, payable in cash (the "Offer Consideration"), upon the terms and subject to the conditions set forth in the Offer to Purchase, dated July 3, 2024 (the "Offer to Purchase"), and the related Letter of Transmittal (the "Letter of Transmittal" and, together with the Offer to Purchase, as each may be amended or supplemented from time to time, the "Offer").

The Offer is being made pursuant to a Transaction Framework Agreement, dated as of June 16, 2024 (as it may be amended from time to time, the "Agreement"), by and between Allego, Purchaser and Meridiam Sustainable Infrastructure Europe IV SLP, a limited partnership (*société de libre partenariat*) incorporated under the laws of France, with its registered office located at 4, place de l'Opéra 75002 Paris, France (the "Meridiam Fund"), represented by Parent, its management company. Unless the Offer is earlier terminated, the Offer will expire at one minute after 11:59 p.m. (New York City time), on July 31, 2024 (the "Expiration Time," unless the Offer is extended in accordance with the Agreement, in which event "Expiration Time" will mean the latest time and date at which the Offer, as so extended, will expire).

Purchaser may extend the Offer for one or more consecutive increments of not more than 10 business days per extension (or such other duration as may be agreed in writing by the Company and Purchaser) until all of the conditions to the Offer have been satisfied or waived (to the extent that such waiver is permitted by applicable law). In addition, Purchaser will extend the Offer as required by any rule, regulation, interpretation or position of the United States Securities and Exchange Commission (the "SEC") or its staff, the New York Stock Exchange (the "NYSE") or any other court, authority or governmental entity. During any such extension, the Offer will remain open and the acceptance of tendered Shares pursuant to the Offer will be delayed. Purchaser is not required to extend the Offer beyond October 1, 2024.

Tendering shareholders who are record owners of their Shares and who tender directly to Broadridge Corporate Issuer Solutions, LLC (the "Depositary") will not be obligated to pay brokerage fees or commissions or, except as otherwise provided in Instruction 5 of the Letter of Transmittal, stock transfer taxes with respect to the purchase of Shares by Purchaser pursuant to the Offer. Shareholders who hold their Shares through a broker, dealer, commercial bank, trust company or other nominee should consult such broker, dealer, commercial bank, trust company or other nominee as to whether it charges any service fees or commissions.

**THE OFFER AND WITHDRAWAL RIGHTS WILL EXPIRE AT ONE MINUTE AFTER 11:59 P.M., NEW YORK CITY TIME, ON JULY 31, 2024, UNLESS THE OFFER IS EXTENDED OR EARLIER TERMINATED.**

The Agreement provides that, subject to the terms and conditions set forth therein, Purchaser will, at or as promptly as practicable following the Expiration Time accept for payment (the time of acceptance for payment, the "Acceptance Time") and pay for all Shares validly tendered and not properly withdrawn pursuant to the Offer as of the Acceptance Time (such time of payment, the "Closing"). It is expected that following the Closing, the listing of the Shares on the NYSE will be terminated, Allego will no longer be a publicly traded company, and the Shares will be deregistered under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), resulting in the cessation of Allego's reporting obligations with respect to the Shares with the SEC.

**A committee (the "Independent Transaction Committee") of the board of directors of Allego (the "Allego Board") consisting of Christian Vollmann, Patrick Sullivan and Ronald Stroman, each of whom is an independent director of the Board and does not have a conflict of interest with respect to the Transactions (as defined in the Offer to Purchase) reviewed the terms and conditions of the Transactions, including the terms and conditions of the Offer, with the assistance of its legal and financial advisors. The Independent Transaction Committee recommended to the Allego Board that it (a) determine that, on the terms and subject to the conditions set forth in the Agreement, the Transactions are in the best interest of the Company and its business and promote the sustainable success and the sustainable long-term value creation of the Company's business, having taken into account the interests of its stakeholders (including the Company's shareholders other than Purchaser, Parent or any affiliate thereof (such unaffiliated shareholders, from time to time, the "Unaffiliated Shareholders")), (b) approve the execution of the Agreement by the Company and the performance by the Company of its obligations thereunder and (c) resolve, that the Company pursue the Transactions on the terms and subject to the provisions of the Agreement. Following receipt of such recommendation, the Allego Board (other than the directors who recused themselves from all deliberations and decision-making of the Board regarding the Transactions (the "Recused Directors")) reviewed the terms and conditions of the Transactions, including the terms and conditions of the Offer, and unanimously (a) determined that, on the terms and subject to the conditions set forth in the Agreement, the Transactions are in the best interests of Allego and its business and promote the sustainable success and the sustainable long-term value creation of Allego's business, having taken into account the interests of its stakeholders (including the Unaffiliated Shareholders), (b) approved the execution of the Agreement by Allego and the performance by Allego of its obligations thereunder and (c) resolved that Allego pursue the Transactions on the terms and subject to the provisions of the Agreement.**

**The Independent Transaction Committee and the Board (other than the Recused Directors) on behalf of Allego are supportive of the commencement of the Offer but, after careful consideration, including a thorough review of the terms and conditions of the Offer and the Agreement, determined to take no position and make no recommendation, and to express no opinion and to remain neutral, with respect to the Offer.**

Pursuant to the Agreement, the obligation of Purchaser to purchase the Shares tendered in the Offer is subject to the conditions that (a) the Agreement has not been terminated in accordance with its terms and (b) no order (whether temporary, preliminary or permanent) has been issued and no enactment (whether temporary, preliminary or permanent) has been made by any court, governmental or regulatory authority or governmental entity rendering illegal, enjoining or prohibiting the Transactions, unless Purchaser, the Meridiam Fund or their respective affiliates failed to take all actions required under the Agreement to seek to avoid any such order or have such order lifted. There is no minimum tender condition, no financing condition, no material adverse effect condition and no condition related to receipt of any third party or regulatory approvals to the Offer.

Any extension of the Offer will be followed by a public announcement of the extension no later than 9:00 a.m., New York City time, on the next business day after the day on which the Offer was otherwise scheduled to expire. Purchaser currently intends to make announcements regarding the Offer by issuing a press release and making an appropriate filing with the SEC.

Subject to the applicable rules and regulations of the SEC, Purchaser also reserves the right at any time to, in its sole discretion, waive, in whole or in part, any of the conditions to the Offer and to make any change in the terms of or conditions to the Offer that is not inconsistent with the Agreement, *provided that*, Allego's prior written consent is required for Purchaser to: (i) decrease the Offer Consideration, except as otherwise expressly permitted by the Agreement (which is limited to a circumstance where, during the period between the date of the Agreement and the consummation of the Offer, any dividend or distribution is declared, made or paid or the number of outstanding Shares is changed into a different number as a result of a conversion, stock split, stock dividend or distribution, or other similar transaction); (ii) change the form of the Offer Consideration; (iii) decrease the number of Shares sought under the Offer; (iv) impose additional conditions to the Offer; (v) amend, modify or supplement any of the conditions to the Offer or terms of the Offer in a manner adverse, or reasonably expected to be adverse, to any Unaffiliated Shareholder; or (vi) terminate the Offer or accelerate, extend or otherwise change the Expiration Time, in each case, except as otherwise provided in the Agreement.

In all cases, payment for tendered Shares will be made only after timely receipt by the Depositary of a confirmation of a book-entry transfer of such Shares, a properly completed and duly executed Letter of Transmittal and any other required documents for such Shares. **Under no circumstance will interest be paid on the Offer Consideration in connection with the Offer, regardless of any extension of the Offer, or any delay in making payment for Shares.**

If any tendered Shares are not accepted for payment for any reason pursuant to the terms and conditions of the Offer, such unpurchased Shares will be returned, without expense, to the tendering shareholder (in the case of Shares tendered by book-entry transfer into the Depositary's account at the Depositary Trust Company ("DTC") pursuant to the procedure set forth in the Offer to Purchase by crediting such Shares to an account maintained at DTC), promptly following the expiration or termination of the Offer.

For a withdrawal to be effective, a written notice of withdrawal must be timely received by the Depositary at one of its addresses set forth on the back cover page of the Offer to Purchase. Any such notice of withdrawal must specify the name of the person who tendered the Shares to be withdrawn, the number of Shares to be withdrawn and the name of the registered holder of such Shares, if different from that of the person who tendered such Shares. If Shares have been tendered pursuant to the procedure for book-entry transfer as set forth in the Offer to Purchase, any notice of withdrawal must also specify the name and number of the account at DTC to be credited with the withdrawn Shares.

Withdrawals of Shares may not be rescinded. Any Shares properly withdrawn will thereafter be deemed not to have been validly tendered for purposes of the Offer. However, withdrawn Shares may be re-tendered again by following one of the procedures described in the Offer to Purchase.

**Purchaser will determine, in its sole discretion, all questions as to the form and validity (including time of receipt) of any notice of withdrawal. Purchaser also reserves the absolute right to waive any defect or irregularity in the withdrawal of any Shares by any particular shareholder, regardless of whether or not similar defects or irregularities are waived or not waived in the case of other shareholders. None of Purchaser, the Depositary, Innisfree M&A Incorporated (the "Information Agent"), or any other person will be under any duty to give notice of any defects or irregularities in any notice of withdrawal or incur any liability for failure to give any such notification.**

The information required to be disclosed by paragraph (d)(1) of Rule 14d-6 of the General Rules and Regulations under the Exchange Act is contained in the Offer to Purchase and is incorporated herein by reference.

**Each holder of Shares should consult with its tax advisor as to the particular tax consequences to such holder of exchanging Shares for cash in the Offer.** See the Offer to Purchase for a more detailed discussion of the tax treatment of the Offer.

**The Offer to Purchase and the Letter of Transmittal contain important information and you should read both carefully and in their entirety before making a decision with respect to the Offer.**

Questions and requests for assistance may be directed to the Information Agent at its address and telephone numbers set forth below. Requests for copies of the Offer to Purchase, the related Letter of Transmittal, and the related Notice of Guaranteed Delivery may be directed to the Information Agent. Shareholders may also contact their brokers, dealers, commercial banks or trust companies for assistance concerning the Offer. Purchaser will not pay any fees or commissions to any broker or dealer or any other person (other than the Information Agent or the Depositary) for soliciting tenders of Shares pursuant to the Offer.

*The Information Agent for the Offer is:*

**Innisfree M&A Incorporated**
501 Madison Avenue, 20th floor
New York, New York 10022

**Shareholders may call toll free: +1 (877) 750-8240**
**Banks and brokers may call: +1 (212) 750-5833**

July 3, 2024

**Exhibit B**

The New York Times

**INTERNATIONAL EDITION**

620 Eighth Ave, New York, NY 10018 USA

# PROOF OF PUBLICATION

July 8, 2024

I, Larnyce Tabron, am over the age of 18 years and a citizen of the United States. In my capacity as a Principal Clerk of the Publisher of The New York Times **INTERNATIONAL EDITION,** a daily newspaper printed in Paris, France and circulated in major cities in Europe, North Africa, the Middle East, Far East and the Americas. I hereby certify that the advertisement annexed hereto was published in the editions of The New York Times **INTERNATIONAL EDITION** on the following date or dates, to wit on

7/8/2024, INTL, pg A8

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2024.07.08 17:31:11 -04'00'

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re: FTX TRADING LTD., *et al.*,[1] Debtors. | Chapter 11, Case No. 22-11068 (JTD) (Jointly Administered)

**NOTICE OF DEADLINE TO VOTE ON, DEADLINE TO OBJECT TO CONFIRMATION OF, AND HEARING TO CONSIDER CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE THAT** on June 27, 2024, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 19139] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[2] In connection with the Plan, the Debtors also filed the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT** the United States Bankruptcy Court for the District of Delaware (the "Court") has scheduled a hearing on **October 7, 2024, at 10:00 a.m. prevailing Eastern Time** (the "Confirmation Hearing") to consider the Confirmation of the Plan. The Confirmation Hearing will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** on June 26, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"). Pursuant to the Solicitation Procedures Order, the Court approved certain voting, solicitation and tabulation procedures in connection with Confirmation of the Plan. Only Holders of Claims and Interests in Voting Classes (Class 3A Secured Loan Claims, Class 5A Dotcom Customer Entitlement Claims, Class 5B U.S. Customer Entitlement Claims, Class 6A General Unsecured Claims, Class 6B Digital Asset Loan Claims, Class 7A Dotcom Convenience Claims, Class 7B U.S. Convenience Claims, Class 7C General Convenience Claims, Class 8B Priority DM Claim, Class 8C PropCo General Unsecured Claims, Class 10A Senior Subordinated IRS Claims, Class 10B Senior Subordinated Governmental Claims, Class 10C Junior Subordinated IRS Claims and Class 12 Preferred Equity Interests) are entitled to receive a ballot (a "Ballot") for casting a vote on the Plan, and for Holders of Class 5A Dotcom Customer Entitlement Claims and Class 7A Dotcom Convenience Claims, to make an irrevocable election to have their Claims administered, reconciled, valued, settled, adjudicated, resolved and satisfied in FTX Digital Markets Ltd.'s liquidation proceeding in The Bahamas in exchange for forever, fully and finally releasing and discharging the Debtors with respect to such Claims and forever, fully and finally withdrawing with prejudice such Claims from these Chapter 11 Cases. Holders of Claims and Interests in all other Classes under the Plan are either conclusively presumed to accept the Plan because they are Unimpaired by the Plan, or presumed to reject the Plan because they are not receiving any distributions under the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the Ballot so that it is **actually received** by Kroll Restructuring Administration LLC (the "Solicitation Agent") on or before **August 16, 2024 at 4:00 p.m. prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE THAT the Plan proposes certain releases, exculpation and injunctions. The Plan proposes a permanent injunction against any person who has held, holds or may hold Claims, Interests or Causes of Action from commencing or continuing any action with respect to any Claim, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code. The Plan also provides that all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date. For the specific terms and conditions of all the releases, exculpation and injunctions provided for in the Plan, please refer to the specific terms of the Plan, which can be obtained as described below.**

**PLEASE TAKE FURTHER NOTICE THAT** your legal rights may be affected if the Plan is approved.

**PLEASE TAKE FURTHER NOTICE THAT** if you hold a Claim or Interest against one or more of the Debtors as of the Voting Record Date and are entitled to opt out of the release contained in Section 10.5 of the Plan (the "Third-Party Release"), you should have received a Ballot or an Election Form, along with corresponding opt-out instructions. If you believe you are entitled to, and would like to, opt out of the Third-Party Release, and you have not already received an opt-out form, please contact the Debtors' Solicitation Agent, Kroll Restructuring Administration LLC, by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. For your opt-out election to be counted, you must: (a) follow the instructions in your Ballot or Election Form, (b) complete all the required information on the Ballot or Election Form, and (c) sign, date and return your completed Ballot or Election Form so that it is **actually received** by the Solicitation Agent according to and as set forth in detail in the instructions in your Ballot or Election Form on or before **August 16, 2024, at 4:00 p.m. prevailing Eastern Time**. A failure to follow such instructions may disqualify your vote or opt-out election.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to object to the confirmation of the Plan, you may do so by filing your objection no later than **August 16, 2024 at 4:00 p.m. prevailing Eastern Time** (the "Confirmation Objection Deadline"). Any objection to the confirmation of the Plan must: (1) be in writing; (2) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (3) set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors; (4) state the basis and the specific grounds therefor and (5) be filed with the Court, together with proof of service thereof, and served upon and received by each of the following parties (collectively, the "Notice Parties") no later than the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** the Notice Parties for the purposes of serving an objection to the Plan are: (a) counsel to the Debtors: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com) and Alexa J. Kranzley (kranzleya@sullcrom.com) and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kimberly A. Brown (brown@lrclaw.com); (b) the Office of the United States Trustee for the District of Delaware, Attn: Linda Richenderfer, Esq. (linda.richenderfer@usdoj.gov); (c) counsel to the Official Committee of Unsecured Creditors: (i) Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Kris Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com) and Gabriel Sasson (gabesasson@paulhastings.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Matthew B. Lunn (mlunn@ycst.com) and Robert F. Poppiti, Jr. (rpoppiti@ycst.com); (d) counsel to the Ad Hoc Committee of Non-US Customers of FTX.com: (i) Eversheds Sutherland (US) LLP, 227 West Monroe Street, Suite 6000, Chicago, Illinois 60606, Attn: Erin E. Broderick (erinbroderick@eversheds-sutherland.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Matthew B. Harvey (mharvey@morrisnichols.com); (e) counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd.: (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brett Bakemeyer (brett.bakemeyer@whitecase.com) and Brian D. Pfeiffer (brain.pfeiffer@whitecase.com) and (ii) Richard, Layton, and Finger P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Brendan Schlauch (schlauch@rlf.com) and Paul N. Heath (heath@rlf.com); and (f) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors may file supplements to the Plan (the "Plan Supplement") with the Court no later than **August 9, 2024**.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, the Plan Supplement, the Disclosure Statement and the Solicitation Procedures Order, as well as all other documents filed in these Chapter 11 Cases, may be obtained (i) for a nominal fee from the Court's electronic docket for the Debtors' Chapter 11 Cases at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (ii) free of charge by accessing the website of Kroll Restructuring Administration, LLC (the "Solicitation Agent"), https://restructuring.ra.kroll.com/FTX. In addition, the Debtors will, at their expense, provide paper copies of the Plan, Disclosure Statement or Solicitation Procedures Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in these Chapter 11 Cases, but may not advise you as to whether you should object to the confirmation of the Plan or on matters relating to the Plan.

Dated: June 27, 2024, Wilmington, Delaware, **LANDIS RATH & COBB LLP,** */s/ Matthew R. Pierce*, Adam G. Landis (No. 3407), Kimberly A. Brown (No. 5138), Matthew R. Pierce (No. 5946), 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Telephone: (302) 467-4400, Facsimile: (302) 467-4450, E-mail: landis@lrclaw.com, brown@lrclaw.com, pierce@lrclaw.com -and- **SULLIVAN & CROMWELL LLP,** Andrew G. Dietderich (admitted *pro hac vice*), James L. Bromley (admitted *pro hac vice*), Brian D. Glueckstein (admitted *pro hac vice*), Alexa J. Kranzley (admitted *pro hac vice*), 125 Broad Street, New York, NY 10004, Telephone: (212) 558-4000, Facsimile: (212) 558-3588, E-mail: dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, kranzleya@sullcrom.com, *Counsel for the Debtors and Debtors-in-Possession*

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

BUSINESS

PHOTOGRAPHS BY JAMES STUKENBERG FOR THE NEW YORK TIMES

**Milo Richtel, above left, is learning to drive. Top right, his father, Matt Richtel, may be behind the wheel of this Tesla, but a computer program is doing the driving, at least unless the software glitches. Above right, the Tesla's screen displaying surrounding inputs.**

# Learners' permits: A teenager and a robot

**BOULDER, COLO.**

## The car and the human take control with brains not fully suited for the job

BY MATT RICHTEL

At the corner of Iris Ave and Folsom in North Boulder, my Model 3 Tesla was self-driving when it showed up two human drivers in the lane just in front of us. All three of us were turning left — two flesh-and-blood drivers and my robot: The two humans violated a basic traffic rule by swinging wide and turning into the right hand lane.

The Tesla hugged the inside lane, as the driver manual indicates is the proper rule of the road. I wished my teenage son had been watching.

Milo is 15, with a learner's permit. It is my fantasy that when he gets his license, he will develop the memory, rote behaviors and mundane habits that have shown themselves possible in the short life span of self-driving cars. On the other hand, my son is less likely than the Tesla's software to suddenly disengage and just stop steering altogether (requiring me to take over).

Both the machine and the adolescent have brains still under development: a human mind governed by millions of years of evolutionary biology; and algorithms shaped by decades of engineers. Seen through the lens of cognition and neuroscience, the contrast says a lot about the next generation of drivers.

For now, only the Tesla (not my son) has been involved in wrecks. The U.S. government in April reported that Tesla's Autopilot technology had been involved in 956 crashes between January of 2018 and August of 2023, including 29 fatalities. The National Highway Traffic Safety Administration report found that, "Autopilot's system controls may be insufficient for a driver assistance system that requires constant supervision by a human driver."

Elon Musk recently concluded talks in Beijing to clear the way with regulators to get Autopilot on Chinese roads. Lots of other companies are developing their own versions — General Motors, BMW, Mercedes, Lincoln, Kia, and others — most of which take some control in limited situations, as on the highway.

In short, don't doubt that these cars will be on the road soon enough, as surely as my son will have his license within a year. He inherits a daunting task: Statistically speaking, driving is the most dangerous regular activity most of us will do in our lives.

Roughly 43,000 Americans died in crashes in 2021, according to the latest data, a 16-year high, to say nothing of hundreds of thousands of serious injuries. Teenage drivers, their brains not fully developed and with less driving experience, have four times as much risk of crashing as people over 20.

After years of reporting on driver safety, I can say assuredly why we face such risk: a mismatch between the capacity of the human brain and the complexity of the roadway. It presents an onslaught of fast-changing stimulation, inputs and risk. Cars, pedestrians and cyclists dive in and out of our frame, our brains fatigue, get distracted, miss an input; we are human, with biologically limited attention and cognition, piloting a car that is a missile at highway speeds.

**Milo Richtel driving the family's car. Both he and the Tesla Autopilot technology have brains that are still under development. The Autopilot doesn't get distracted.**

From this perspective, I watch my son learn in our Toyota Highlander. To stay focused, he prefers the radio off and low volume on parental commentary. His solemn task shows in his tight grip of the wheel, the forward lean of his body as if to get a little more connected to what's happening outside the windshield. When he gets in a groove, I ask him to identify the various inputs around him, the car in his blind spot, the cyclist turning right without signaling, the pedestrian looking down at a phone. He gets tired. Driving safely takes effort. For all the control and adolescent glory that comes with taking the wheel, sometimes, he'd just as soon not.

When it comes to supervising our leased Tesla, there is a single aspect of the technology that, to me, highlights the study in contrasts: On the screen, where the map is displayed, an animation shows the surrounding inputs the Tesla picks up with its multiple cameras and sensors. Cars materialize around us, intersections appear as we approach, dotted with the presence of cyclists or pedestrians. It seemingly sees everything, everywhere, all at once, processing multiple streams of information in parallel. For example, when the Tesla "sees" something on the right, it does not do so at the expense of seeing something to the left; my son can look only one way at a time.

The algorithm drives at night and in the rain. It is exceedingly rule-driven. In fact, its strict adherence has caused frustration to other drivers — and my teenage passengers — by rigorously following the speed limit. One teenage passenger said to me: "It's sus," meaning suspect, "because it only goes 20 miles an hour" (32 kilometers an hour). We were in a school zone.

"Even though automated vehicles are not perfect, they work surprisingly well and are getting better all the time," I was told by David Strayer, a cognitive neuroscientist at the University of Utah and one of the world's foremost experts on driver distraction. "We really need to focus on relative risk," he added, meaning computers can save many more lives than they risk taking, largely because of their cognitive advantage. "They don't get distracted. They don't get fatigued. They don't get drunk or high. They speed only if the driver tells them to."

They do glitch, though. On occasion over the last few months since I've been trying the technology, the Tesla's software has suddenly disengaged, requiring me to immediately seize control.

In the federal government's latest report on Tesla's crashes activity, it said the car continues to rely too much of human supervision, and, also, humans aren't always on the job. Crash outcomes can be severe "when a driver is disengaged with the Tesla vehicle operating in Autopilot and the vehicle encounters a circumstance outside of Autopilot's object or event detection response capabilities."

**There is a mismatch between the capacity of the human brain and the complexity of the roadway.**

What a potent statement: the car and the human must pay attention when neither of their brains is yet fully suited for the job.

Still, for the moment, I'd trust my son to drive me home before I'd trust the Tesla; I just don't know when the car will check out, or why, and what I could possibly do to discourage this glitch.

Soon enough, humans will relinquish the controls. When that happens, I'm not sure it will be because the robots have virtually limitless cognition and will keep us safer, true though that may be. The real reason that robots will take the wheel is that humans have better things to do than drive. Stream a show, stretch our legs, nap. At that point, when machines rule the road, I can tell my teenager to go ahead and watch TikTok behind the wheel, although I guess at that point I wouldn't mind the development of self-watching social media.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: FTX TRADING LTD., *et al.*,[1] Debtors. | Chapter 11, Case No. 22-11068 (JTD) (Jointly Administered) |
|---|---|

**NOTICE OF DEADLINE TO VOTE ON, DEADLINE TO OBJECT TO CONFIRMATION OF, AND HEARING TO CONSIDER CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**PLEASE TAKE NOTICE THAT** on June 27, 2024, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") filed the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 19139] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[2] In connection with the Plan, the Debtors also filed the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT** the United States Bankruptcy Court for the District of Delaware (the "Court") has scheduled a hearing on **October 7, 2024, at 10:00 a.m. prevailing Eastern Time** (the "Confirmation Hearing") to consider the Confirmation of the Plan. The Confirmation Hearing will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** on June 26, 2024, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"). Pursuant to the Solicitation Procedures Order, the Court approved certain voting, solicitation and tabulation procedures in connection with Confirmation of the Plan. Only Holders of Claims and Interests in Voting Classes (Class 3A Secured Loan Claims, Class 5A Dotcom Customer Entitlement Claims, Class 5B U.S. Customer Entitlement Claims, Class 6A General Unsecured Claims, Class 6B Digital Asset Loan Claims, Class 7A Dotcom Convenience Claims, Class 7B U.S. Convenience Claims, Class 7C General Convenience Claims, Class 8B Priority DM Claim, Class 8C PropCo General Unsecured Claims, Class 10A Senior Subordinated IRS Claims, Class 10B Senior Subordinated Governmental Claims, Class 10C Junior Subordinated IRS Claims and Class 12 Preferred Equity Interests) are entitled to receive a ballot (a "Ballot") for casting a vote on the Plan, and for Holders of Class 5A Dotcom Customer Entitlement Claims and Class 7A Dotcom Convenience Claims, to make an irrevocable election to have their Claims administered, reconciled, valued, settled, adjudicated, resolved and satisfied in FTX Digital Markets Ltd.'s liquidation proceeding in The Bahamas in exchange for forever, fully and finally releasing and discharging the Debtors with respect to such Claims and forever, fully and finally withdrawing with prejudice such Claims from these Chapter 11 Cases. Holders of Claims and Interests in all other Classes under the Plan are either conclusively presumed to accept the Plan because they are Unimpaired by the Plan, or presumed to reject the Plan because they are not receiving any distributions under the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the Ballot so that it is **actually received** by Kroll Restructuring Administration LLC (the "Solicitation Agent") on or before **August 16, 2024 at 4:00 p.m. prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE THAT the Plan proposes certain releases, exculpation and injunctions. The Plan proposes a permanent injunction against any person who has held, holds or may hold Claims, Interests or Causes of Action from commencing or continuing any action with respect to any Claim, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code. The Plan also provides that all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date. For the specific terms and conditions of all the releases, exculpation and injunctions provided for in the Plan, please refer to the specific terms of the Plan, which can be obtained as described below.**

**PLEASE TAKE FURTHER NOTICE THAT** your legal rights may be affected if the Plan is approved.

**PLEASE TAKE FURTHER NOTICE THAT** if you hold a Claim or Interest against one or more of the Debtors as of the Voting Record Date and are entitled to opt out of the release contained in Section 10.5 of the Plan (the "Third-Party Release"), you should have received a Ballot or an Election Form, along with corresponding opt-out instructions. If you believe you are entitled to, and would like to, opt out of the Third-Party Release, and you have not already received an opt-out form, please contact the Debtors' Solicitation Agent, Kroll Restructuring Administration LLC, by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. For your opt-out election to be counted, you must: (a) follow the instructions in your Ballot or Election Form, (b) complete all the required information on the Ballot or Election Form, and (c) sign, date and return your completed Ballot or Election Form so that it is **actually received** by the Solicitation Agent according to and as set forth in detail in the instructions in your Ballot or Election Form on or before **August 16, 2024, at 4:00 p.m. prevailing Eastern Time**. A failure to follow such instructions may disqualify your vote or opt-out election.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to object to the confirmation of the Plan, you may do so by filing your objection no later than **August 16, 2024 at 4:00 p.m. prevailing Eastern Time** (the "Confirmation Objection Deadline"). Any objection to the confirmation of the Plan must: (1) be in writing; (2) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (3) set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors; (4) state the basis and the specific grounds therefor and (5) be filed with the Court, together with proof of service thereof, and served upon and received by each of the following parties (collectively, the "Notice Parties") no later than the Confirmation Objection Deadline. **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED AND MAY BE OVERRULED BY THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** the Notice Parties for the purposes of serving an objection to the Plan are: (a) counsel to the Debtors: (i) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Andrew G. Dietderich (dietdericha@sullcrom.com), Brian D. Glueckstein (gluecksteinb@sullcrom.com) and Alexa J. Kranzley (kranzleya@sullcrom.com) and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Kimberly A. Brown (brown@lrclaw.com); (b) the Office of the United States Trustee for the District of Delaware, Attn: Linda Richenderfer, Esq. (linda.richenderfer@usdoj.gov); (c) counsel to the Official Committee of Unsecured Creditors: (i) Paul Hastings LLP, 200 Park Avenue, New York, New York 10166, Attn: Kris Hansen (krishansen@paulhastings.com), Erez Gilad (erezgilad@paulhastings.com) and Gabriel Sasson (gabesasson@paulhastings.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Matthew B. Lunn (mlunn@ycst.com) and Robert F. Poppiti, Jr. (rpoppiti@ycst.com); (d) counsel to the Ad Hoc Committee of Non-US Customers of FTX.com: (i) Eversheds Sutherland (US) LLP, 227 West Monroe Street, Suite 6000, Chicago, Illinois 60606, Attn: Erin E. Broderick (erinbroderick@eversheds-sutherland.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19801, Attn: Matthew B. Harvey (mharvey@morrisnichols.com); (e) counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd.: (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Brett Bakemeyer (brett.bakemeyer@whitecase.com) and Brian D. Pfeiffer (brain.pfeiffer@whitecase.com) and (ii) Richard, Layton, and Finger P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Brendan Schlauch (schlauch@rlf.com) and Paul N. Heath (heath@rlf.com); and (f) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors may file supplements to the Plan (the "Plan Supplement") with the Court no later than **August 9, 2024**.

**PLEASE TAKE FURTHER NOTICE THAT** copies of the Plan, the Plan Supplement, the Disclosure Statement and the Solicitation Procedures Order, as well as all other documents filed in these Chapter 11 Cases, may be obtained (i) for a nominal fee from the Court's electronic docket for the Debtors' Chapter 11 Cases at https://ecf.deb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or (ii) free of charge by accessing the website of Kroll Restructuring Administration, LLC (the "Solicitation Agent"), https://restructuring.ra.kroll.com/FTX. In addition, the Debtors will, at their expense, provide paper copies of the Plan, Disclosure Statement or Solicitation Procedures Order to any party submitting a request for such paper copies by (a) calling the Solicitation Agent at (888) 482-0049 (toll-free) or +1 (646) 440-4176 (international); (b) e-mailing the Solicitation Agent at ftxinfo@ra.kroll.com with a reference to "In re: FTX - Solicitation Inquiry" in the subject line; or (c) writing to the Solicitation Agent at FTX Trading Ltd. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, materials filed in these Chapter 11 Cases, but may not advise you as to whether you should object to the confirmation of the Plan or on matters relating to the Plan.

Dated: June 27, 2024, Wilmington, Delaware, **LANDIS RATH & COBB LLP,** */s/ Matthew R. Pierce*, Adam G. Landis (No. 3407), Kimberly A. Brown (No. 5138), Matthew R. Pierce (No. 5946), 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Telephone: (302) 467-4400, Facsimile: (302) 467-4450, E-mail: landis@lrclaw.com, brown@lrclaw.com, pierce@lrclaw.com -and- **SULLIVAN & CROMWELL LLP,** Andrew G. Dietderich (admitted *pro hac vice*), James L. Bromley (admitted *pro hac vice*), Brian D. Glueckstein (admitted *pro hac vice*), Alexa J. Kranzley (admitted *pro hac vice*), 125 Broad Street, New York, NY 10004, Telephone: (212) 558-4000, Facsimile: (212) 558-3588, E-mail: dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, kranzleya@sullcrom.com, *Counsel for the Debtors and Debtors-in-Possession*

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

# The trade-offs of reining in plastic

BY HIROKO TABUCHI

When Costco tried to cut down on its plastics use this year, putting its popular rotisserie chicken in a thin bag instead of a bulkier clam shell, some chicken lovers were displeased.

The bags were leaky, they said, and risked making a greasy mess. Their edges were prone to splitting open. "Chicken juice spilled all over the trunk of our car!" one person complained on Reddit.

It was another chapter in the packaging wars.

There is broad agreement that the world needs to use less plastic. Plastic waste is filling the world's landfills and clogging rivers and streams. Recycling hasn't kept up; less than 10 percent of plastic waste gets recycled.

Plastic can contain chemicals linked to cancer and other health problems.

Reining in plastic packaging — often used only once, then thrown away — is an obvious first step. But putting that into practice has been tricky for businesses, policymakers and shoppers. Everyone has an opinion.

"You can see experiments all over the landscape with it," said Sandra Goldmark, a sustainability expert at Columbia University's Climate School in New York. "Right now many of the experiments are not working that well. We haven't really cracked this nut."

Costco's rotisserie-chicken-in-a-bag was a classic example of solution that's "less bad," she said. "But the funny thing about less-bad solutions is that it tends to disappoint everybody," she said. "It's less plastic. It's fewer trucks on the road. But the chicken is still in a plastic bag, and there's chicken juice all over your car."

SMITH COLLECTION/GADO, VIA GETTY IMAGES

**Costco switched to thin bags from heavier clam shells, annoying some chicken lovers. Some companies are trying to reduce their use of plastic, with very mixed results.**

Take a proposed New York state law that would require companies to reduce the plastic packaging they use by 50 percent over 12 years by requiring them to either find more sustainable options or pay a fee.

Opponents of the law pointed out that it could mean the demise of another American institution: sliced cheese. The plastic-to-cheese ratio in packs of individually wrapped cheese slices meant they'd be a prime target, should the law pass, they said.

"Under this bill, New Yorkers can expect a future where they're grabbing unwrapped products — from cereals, to cheeses, to hot dogs — from grocery store bins before buying them and carrying them home," Nelson Eusebio of the National Association of Supermarkets told The New York Post.

The bill passed the State Senate but hasn't been brought to a vote in the Assembly.

Bill supporters scoffed and said there were alternatives available, like paper.

"It's clear that some multibillion-dollar corporations and their lobbyists are not ready for the world-shattering concept of separating cheese slices with wax paper," said Judith Enck, the president of the advocacy group Beyond Plastics.

Four other states — California, Colorado, Oregon and Maine — have adopted laws designed to cut down on packaging. States and cities are also increasingly banning single-use plastic bags. New York State and Baltimore have sued plastic manufacturers for harming public health and the environment by promoting single-use plastic.

Some companies are starting to make changes.

Last month, Amazon said it would replace its plastic air pillows, designed to cushion products during shipment, with recycled-paper packing, a move that would avoid the use of almost 15 billion pillows a year. Bath & Body Works recently introduced hand-soap refills in paper cartons. In Britain, Aldi, the grocery chain, is experimenting with paper bands to package bananas instead of bags, and is also selling wine in paper bottles.

Companies are also experimenting with making plastic recycling easier. In the United Kingdom this year, Coca-Cola, which has been a target for environmentalists as a top plastic polluter, tested plastic Sprite bottles without the stick-on labels that can make recycling harder. Instead, the bottles carried an embossed logo.

"There are so many trade-offs" that make designing sustainable packaging complicated, said John Thogersen, an expert in green consumption at Aarhus University in Denmark. For example, people might assume glass bottles are more environmentally friendly than plastic, but they aren't necessarily, because it can take more energy to transport heavier glass bottles.

Food waste, which is damaging to the climate, is another consideration: Yogurt sold in larger tubs requires less plastic than single-serving cups, but research has shown that people who bought tubs also tended to throw out more yogurt.

And of course, there's functionality. Some shoppers appeared to have used Costco's old rotisserie chicken packaging in place of plates.

To eliminate plastic waste, companies need to do one of two things, experts say: develop truly biodegradable or recyclable materials, still a work in progress, or move toward reusable or refillable packaging. Costco, for example, could have its shoppers bring reusable chicken containers back, over and over again. Bulk stores that let people take home nuts and grains in their own containers are another example of this approach.

**Exhibit C**

# AFFIDAVIT OF PUBLICATION

State of Massachusetts, County of Norfolk

I, Nancy Dolan, am the Senior Media Manager for Kroll Restructuring Administration, the Notice Administrator, for In re FTX Trading Ltd., Case No. 22-11068.

This affidavit is to certify that banner ad notices, a true and correct copy of which is attached, ran on Coindesk.com from 07/03/2024 through 07/10/2024.

Executed at Norwood, MA

On this 12 day of July 2024.

Nancy Dolan

Name

Nancy Dolan

Signature



## FTX Bankruptcy

THE DEADLINE TO **VOTE OR OBJECT** TO THE CONFIRMATION OF DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION IS **AUGUST 16, 2024**.

LEARN MORE

## Policy

Policy

### France Votes for Hung Parliament as Major Parties Fall Short of Majority

The absence of an outright majority could hamper the passing of new legislation, including crypto regulations.

Jul 8, 2024

Policy

### Sacked Northern Data Execs File Suit Against Tether-Backed Company, Alleging Fraud

The two executives, Joshua Porter and Gulsen Kama, say they were fired for attempting to blow the whistle on alleged accounting and securities fraud at the company.

Jul 5, 2024

Policy

### Multicoin Pledges up to $1M for Pro-Crypto Senate Candidates

The investment firm is eager to flip the Senate for Republicans.

Jul 5, 2024

Policy

### Labour Landslide Sets Up Starmer as UK Prime Minister With Unstated Crypto Plans

While the industry was not mentioned in the party's manifesto or on the campaign trail, Labour has said it will support tokenization and a central bank digital currency.

Jul 5, 2024

Opinion

### When Do Secondary Token Sales Violate Howey?

A federal judge allowed most of the SEC's arguments against Binance to proceed but specifically dismissed a charge tied to secondary sales.

Jul 3, 2024

Policy

### Global Banking Standard Setter Approves Disclosure Framework for Crypto Exposures

The Basel Committee's framework, based on responses to a December 2022 discussion paper, must be implemented by 2026.

Jul 3, 2024

Please note that our privacy policy, terms of use, cookies, and do not sell my personal information has been updated.

CoinDesk is an award-winning media outlet that covers the cryptocurrency industry. Its journalists abide by a strict set of editorial policies. In November 2023, CoinDesk was acquired by the Bullish group, owner of Bullish, a regulated, digital assets exchange. The Bullish group is majority-owned by Block.one; both companies have interests in a variety of blockchain and digital asset businesses and significant holdings of digital assets, including bitcoin. CoinDesk operates as an independent subsidiary with an editorial committee to protect journalistic independence. CoinDesk employees, including journalists, may receive options in the Bullish group as part of their compensation.

©2024 CoinDesk

English



