**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Hearing Date:  October 22, 2024 at 1:00 p.m. ET<br>Objection Deadline:  September 12, 2024 at 4:00 p.m. ET |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER, THE SETTLEMENT AGREEMENT WITH KROLL RESTRUCTURING ADMINISTRATION LLC (B) APPROVING THE SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors' entry into, and performance under, the settlement agreement, attached as Exhibit 1 to the Order (the "Settlement Agreement"),[2] between the Debtors and Kroll Restructuring Administration LLC ("Kroll" and together with the Debtors, the "Parties"), approving the terms of the Settlement Agreement, and granting related relief.  In support of the Motion, the Debtors respectfully state as follows:

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

**Preliminary Statement**

1. Following constructive, arm's-length discussions, the Parties have the opportunity to resolve, without the need for costly litigation, potential claims asserted by the Debtors in connection with an August 2023 cybersecurity incident (the "Security Incident") suffered by Kroll, through which an unauthorized third party appears to have accessed and/or downloaded files and information related to the Chapter 11 Cases, including personal data of the Debtors' claimants.

2. The Settlement Agreement memorializes the Parties' understanding and agreement that Kroll shall pay the Debtors for losses, costs, and damages incurred in the aggregate amount of $3,312,856.47 through March 31, 2024 as a direct result of the Security Incident (the "Pre-March 31, 2024 Damages"). The Pre-March 31, 2024 Damages to be paid by Kroll reflect the full amount of losses, costs, and damages incurred by the Debtors as a direct result of the Security Incident, without any discount or other reduction. The Settlement Agreement also memorializes the Parties' understanding and agreement that the Parties will engage in good faith discussions regarding payment of as yet-to-be-determined losses, costs and damages incurred by the Debtors after March 31, 2024 as a direct result of the Security Incident (the "Post-March 2024 Damages" and together with the Pre-March 31, 2024 Damages, the "Damages"). The Settlement Agreement is explicit that the Debtors do not release Kroll from losses, costs, and damages arising from Post-March 2024 Damages or any claims brought against the Debtors by customers, regulators, or other third parties as a result of the Security Incident (together, the "Post-March 2024 Losses"). The Settlement Agreement is not an admission of fault or liability by Kroll and is the result of significant negotiations among the Parties.

3. The Debtors submit that the Settlement Agreement is in the best interests of the Debtors' estates, creditors and stakeholders, and should be swiftly consummated.

Approval of the Settlement Agreement will resolve the Debtors' claim for the Pre-March 31, 2024 Damages, provide a mechanism for resolving Post-March 2024 Losses, provide the Debtors' estates significant value, and also avoid the expense and burden of litigation at a critical point in these Chapter 11 Cases when the Debtors, their management and professionals must be focused on soliciting votes on and pursuing confirmation of the Debtors' chapter 11 plan. The Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved.

## Background

4.  On November 11 and November 14, 2022, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware, appointed the Official Committee of Unsecured Creditors in the Debtors' Chapter 11 Cases, pursuant to section 1102 of the Bankruptcy Code [D.I. 231] (the "Official Committee").

5.  Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

6.     On November 12, 2022, the Debtors and Kroll entered into an agreement (the "Kroll Agreement") by which Kroll agreed to provide the Debtors with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, communications, confidential online workspaces or data rooms, and any other services agreed upon by the Parties or otherwise required by applicable law, governmental regulations or court rules or orders.

7.     On November 22, 2022, this Court entered an order authorizing the employment and retention of Kroll as the claims and noticing agent in the Chapter 11 Cases [D.I. 132]. Further, on January 20, 2023, this Court entered an order authorizing the employment and retention of Kroll as the administrative advisor in the Chapter 11 Cases [D.I. 544].

8.     On August 22, 2023, Kroll notified the Debtors of the Security Incident. The Security Incident began on or around August 19, 2023. The Debtors understand that, as part of the Security Incident, an unauthorized third party appears to have gained access to Kroll's M365 instance through a SIM swap attack and thereby accessed and/or downloaded files and information related to the Chapter 11 Cases, including personal data of the Debtors' claimants.

9.     The Debtors incurred Pre-March 31, 2024 Damages in the form of professional fees in the amount of $3,312,856.47, as well as yet-to-be-determined Post-March 2024 Damages, as a direct result of the Security Incident. In particular, since receiving notification from Kroll of the Security Incident, Sullivan & Cromwell LLP, as counsel to the Debtors in Chapter 11 Cases, along with third-party advisors Baker & Hostetler LLP, Alvarez & Marsal North America, LLC, and Sygnia, have undertaken a number of efforts to respond to the Security Incident. Collectively, these efforts included, among other things, advising on

potentially applicable privacy or information security laws, indemnification agreements, and regulatory reporting; drafting notifications regarding the Security Incident; and analysis as to the claimants and information affected by the Security Incident.

### Jurisdiction

10. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule 9013-1(f) of the Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### The Terms of the Settlement Agreement

11. Following arm's-length, good faith negotiations, the Parties have agreed to the terms of the Settlement Agreement, set forth below, which shall become effective upon the Court's approval of the Settlement Agreement:

(a) To settle the Pre-March 2024 Damages, Kroll shall pay to the Debtors the sum of $3,312,856.47 (the "Pre-March 31, 2024 Settlement Amount"). The Pre-March 31, 2024 Settlement Amount shall be wired by Kroll to the Debtors within thirty (30) days of the Court's Approval of the Settlement Agreement.

(b) The FTX Group fully and forever releases and discharges Kroll from all Claims for costs, losses, or damages that have been or will be incurred by the Debtors arising from or related to the Security Incident ("Losses") that: (i) are known or reasonably should have been known to the Debtors as of the Effective Date,

including the Pre-March 31, 2024 Damages ("Past Damages");[3] (ii) relate to remediating, testing, scanning, repairing, replacing, restoring, modifying, updating, upgrading, supplementing or otherwise improving the Debtors' networks and computer systems; and (iii) except for the FTX Group Reserved Claims as defined below, relate to investigating and responding to the Security Incident (the foregoing (i)–(iii), collectively, the "FTX Group Released Claims"). This release shall not release Kroll from any Losses arising from the following (collectively, the "FTX Group Reserved Claims"): (y) Post-March 2024 Damages and (z) Claims brought against the FTX Group by customers, regulators, or other third parties as a result of the Security Incident.

### Relief Requested

12. By this Motion, the Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors' entry into, and performance under, the Settlement Agreement, (b) approving the Settlement Agreement, and (c) granting certain related relief.

### Basis for Relief

**I.  The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable and in the Debtors' Best Interests.**

13. The Settlement Agreement is in the best interests of the Debtors and their estates. The Settlement Agreement requires Kroll to reimburse the Debtors for Pre-March 31, 2024 Damages in the aggregate amount of $3,312,856.47 and engage in good faith discussions with the Debtors regarding Post-March 2024 Damages. The Settlement Agreement avoids the potential costs associated with litigating these losses, costs, or damages or any other related claims. Settlement on these terms is thus a reasonable exercise of the Debtors' business judgment satisfying Bankruptcy Rule 9019.

14. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

---

[3] Post-March 2024 Damages are not known or reasonably knowable to the FTX Group as of the Effective Date and are excluded from Past Damages.

-6-

Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy" as such settlements "minimize litigation and expedite the administration of the estate."  *In re World Health Alts., Inc.*, 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

15.     "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvass the issues to see whether the compromise falls below the lowest point in the range of reasonableness.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted).

16.     Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

17. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222 B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011).

18. The terms of the proposed Settlement Agreement fall well within the range of reasonableness and should be approved by the Court. The terms of the Settlement Agreement memorialize the Parties' agreement that Kroll shall reimburse the Debtors for the Pre-March 31, 2024 Damages and negotiate in good faith regarding the Post-March 2024 Losses, all the while avoiding the time and expense of litigating these claims. Accordingly, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each applicable *Martin* factor.

    a.    **The Probability of Success in Litigation and Subsequent Collection**

19. Without the Settlement Agreement, the Debtors would likely need to litigate and expend time and resources to establish Kroll's liability and to prove the amount of recoverable damages. As a result, the value to be realized for the Debtors' estates through the

Settlement Agreement exceeds any potential benefit that could accrue to the estate as a result of any potential litigation.

20. Given the attendant risks and costs, and the favorable terms of the Settlement Agreement, the Debtors submit that the proposed Settlement Agreement is in the best interests of the Debtors' estates.

    **b.**    **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted**

21. Litigation establishing Kroll's liability would likely be expensive, and time-consuming, particularly as compared to the benefits achieved through the Settlement Agreement. Accordingly, this *Martin* factor weighs in favor of approval of the Settlement Agreement.

    **c.**    **The Paramount Interests of Creditors are Served.**

22. The Settlement Agreement is in the best interests of the Debtors' creditors because it permits the Debtors to recover Pre-March 31, 2024 Damages and the Post-March 2024 Damages and preserves their right to pursue recovery in connection with the Post-March 2024 Damages without time consuming, burdensome, and costly litigation. Moreover, the amount proposed to be paid to the Debtors' estates under the Settlement Agreement for the Pre-March 31, 2024 Damages is the total amount of damages incurred by the Debtors as a direct result of the Security Incident through March 31, 2024, without any discount or other reduction. This fact coupled with the constructive mechanism established under the Settlement Agreement to address additional recoveries for the Post-March 2024 Losses ensures that the Debtors will be appropriately compensated for all damages incurred as a result of the Security Incident.

23. Therefore, in the Debtors' business judgment, the value of entering into the Settlement Agreement exceeds the net benefits that the Debtors and their estates potentially could obtain in litigating the Parties' rights and obligations under the Kroll Agreement. Based

on the foregoing, the Debtors submit that the Settlement Agreement satisfies the *Martin* factors and Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders. As a result, the Debtors respectfully request that the Court authorize the Debtors' entry into, and performance under, the Settlement Agreement and approve its terms.

### Waiver of Bankruptcy Rule 6004(h)

24. Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h) to the extent such stay applies. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay to the extent such stay applies.

### Reservation of Rights

25. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party except as otherwise set forth herein or in the Settlement Agreement.

### Notice

26. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Official Committee; (c) the Securities and Exchange Commission; (d) the

Internal Revenue Service; (e) the United States Department of Justice; (f) the United States

Attorney for the District of Delaware; (g) counsel to Kroll; (h) counsel for the Joint Official

Liquidators of FTX Digital Markets Ltd.; and to the extent not listed herein, (i) those parties

requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the

nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and

(b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: August 29, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>         brown@lrclaw.com<br>         pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: dietdericha@sullcrom.com<br>         bromleyj@sullcrom.com<br>         gluecksteinb@sullcrom.com<br>         kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |