## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Re: D.I. Nos. 16815, 19792**<br>**Hearing Date: Sept. 12, 2024 at 1:00 p.m. (ET)** |

### THE CELSIUS LITIGATION ADMINISTRATOR'S REPLY IN FURTHER SUPPORT OF THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Mohsin Meghji, as Litigation Administrator (the "Celsius Litigation Administrator") for Celsius Network LLC and its affiliated debtors (collectively, "Celsius"), respectfully submits this reply in response to the *Debtors' Objection to the Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* [D.I. 19792] (the "Objection") and in further support of *The Celsius Litigation Administrator's Motion for Relief from the Automatic Stay* [D.I. 16815] (the "Motion").[2] For the reasons stated below and in the moving papers, the Motion should be granted and the Objection overruled.

### PRELIMINARY STATEMENT

1.     Reduced to its essence, the Objection is a combination of a premature claim objection and a thinly-veiled motion to dismiss the Draft Complaint on the merits that is procedurally premature and improper.  In this way, FTX distorts the facts, supporting legal

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors (collectively, "FTX" or the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion and Objection, as applicable.

arguments, and relief sought by the Motion (and by the Draft Complaint).  FTX also disregards key elements of the Celsius Proofs of Claim and ignores that the Celsius Litigation Administrator already filed amended proofs of claim – even before FTX filed its Objection – which further detailed the bases of the preference actions to be pursued without adding any new theory of recovery (and, in fact, removing one theory).  Desperate to avoid the requested relief, FTX's mischaracterizations are broad:  The chart attached as **Exhibit "A"** outlines those misstatements in the Objection.

2.      Without providing any evidence, FTX also purports to interpose various fact-intensive "defenses" to the claims – which ordinarily would be asserted when answering or moving to dismiss a complaint – as a means to argue that the Celsius Litigation Administrator will not succeed on the merits of the Motion, *i.e.*, whether or not the stay should be lifted to permit prosecution of the Draft Complaint in the NY Celsius Bankruptcy Court.  In as much as the Objection fails to present any admissible evidence and applies the wrong standards, the Court should reject the Objection.

3.      FTX argues that the Debtors will be prejudiced by "having to immediately start litigating *hundreds of preference claims in another forum* at the same time the Debtors are soliciting votes on their Plan", which in turn would require "devoting substantial resources to the Plan confirmation process." Objection, ¶¶ 8, 13.  But FTX ignores a number of crucial facts.

4.      <u>First</u>, the Motion seeks stay relief only to prosecute a single action, namely the Draft Complaint *against FTX*.  The hundreds of initial transferee actions that the Celsius Litigation Administrator commenced against Celsius's former customers in the NY Celsius Bankruptcy Court – who were the initial preference transferees – *do not name FTX as a defendant*.  The

outcome of those actions will not affect FTX. Instead, they will determine who is entitled to receive the financial benefits from distributions under the Plan.

5.      <u>Second</u>, as emphasized in the Motion, regardless of whether the stay is lifted, the Celsius Litigation Administrator inevitably will file and pursue his preference claims against FTX. *See* Motion, ¶ 38. The only question is where the litigation will proceed – in New York or Delaware.

6.      <u>Third</u>, FTX's counsel repeatedly stressed to the Court during the Disclosure Statement hearing that the relationship among the Debtors and the various creditor constituents in working toward plan confirmation "is a strong working relationship and everybody is pulling in the same direction." *See* Transcript of Hearing of June 25, 2024, *In re FTX Trading Ld.*, at 10:23-24. Moreover, FTX's counsel noted that "[w]e built consensus among the key customer communities and the key non-customer communities on the balance of that – kind of the balance that we struck in the plan", "[n]ow the debtors expect this consensus approach to continue" and "a very strong consensus view certainly among everybody around the table as we were forming the plan on what to do." *Id.* 11:3-8 & 12:1-3. Therefore, the notion that filing a complaint might lead to additional activity and cost (if the Motion is granted) relating to Plan confirmation falls far short of the level of doomsday distraction that FTX now professes.

7.      <u>Finally</u>, FTX rests heavily on the contention that Celsius did not file proper proofs of claim for any preference relief under Sections 547 and 550 – a position that is simply untrue. Each of the more than 100 proofs of claim filed on June 29 and 30, 2023 ("the <u>Original Proofs of Claim</u>"),[3] expressly states that Celsius was "investigating causes of action against the FTX debtors

---

[3]      *See* Claim Nos. 3021, 3130, 3140, 3152, 3202, 3232, 3262, 3306, 3320, 3350, 3390, 3454, 3530, 3581, 3586, 3594, 3620, 3623, 3650, 3657, 3678, 3688, 3697, 3703, 3714, 3735, 3747, 3761, 3780, 3789, 3805, 3807, 3811, 3817, 3818, 3829, 3832, 3843, 3849, 3851, 3853, 3864, 3867, 3882, 3886, 3892, 3899, 3916, 3922, 3925, 3928, 3929, 3931, 3935, 3938, 3939, 3942, 3943, 3945, 3948, 3949, 3957, 3960, 3961, 3963, 3965, 3966, 3973, 3976,

under chapter 5 of the Bankruptcy Code, *including preference and fraudulent transfer actions*"
(emphasis added).  These words appear in a paragraph of the attachment to every Original Proof
of Claim (the "<u>Attachment</u>"), which opens with the phrase "Celsius's causes of action against FTX
may include, but are not limited to" various theories of recovery that are explained in that
paragraph.  There would be no reason to include the language regarding Celsius's chapter 5
remedies if it had no intention of suing to avoid and recover actionable transfers as and when it
determined it had bases to proceed.  The particular text is not, as FTX wishes, a mere boilerplate
reservation of rights; it is, at a minimum, in the nature of a protective filing by Celsius so as not to
lose its rights.  Indeed, the very next paragraph of the Attachment contains a more generalized
reservation of rights in which Celsius notes that it "expressly reserves the right to assert additional
claims against FTX of any nature or amount, and to amend, modify, increase and/or supplement
this proof of claim."  To hold otherwise would render the prior paragraph surplusage.

8.      FTX also ignores the fact that the Celsius Litigation Administrator filed amended
proofs of claim against the 95 remaining Debtors even *before* FTX filed the Objection (the
"<u>Amended Proofs of Claim</u>," collectively with the Original Proofs of Claim, the "<u>Proofs of
Claim</u>"), which further detail the bases of the chapter 5 causes of action along with a more specific
description of the Draft Complaint.

9.      For these reasons, and as set forth below, the Motion should be granted, and the
Objection overruled.

---

3979, 3980, 3982, 3984, 3985, 3986, 3988, 3990, 3991, 3992, 3994, 3997, 3998, 3999, 4003, 4004, 4006, 4009,
4011, 4012, 4017, 4018, 4021, 4027, 4029, 4035, 4037, 4038, 4054, 4080, 4105, 4118, and 4574.

## <u>ARGUMENT</u>

**I.   <u>Celsius's Original Proofs of Claim and Amended Proofs of Claim Were Timely Filed and Are Valid</u>**

10.   As an initial matter, briefing on this Motion is not the proper vehicle for the Debtors to challenge the validity of Celsius's Original Proofs of Claim.  Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 outline how a debtor may challenge proofs of claim.  The Debtors filed an objection to the Original Proofs of Claim (the "<u>Claim Objection</u>") shortly before filing their Objection to the Motion.  *See* D.I. 19795.  Puzzlingly, FTX's filings wholly omit any recognition that Celsius filed its Amended Proofs of Claim ***before*** the Debtors filed the Claim Objection or this Objection.  As an example of the Amended Proofs of Claim, attached as **Exhibit "B"** is a copy of the Amended Proof of Claim filed against FTX Trading Ltd. on July 7, 2024.

11.   The Amended Proofs of Claim relate back to the Original Proofs of Claim and provide additional detail on the preference and avoidance claims Celsius asserts against the Debtors.  The appropriate means for the Debtors to object to the Proofs of Claim is to test their sufficiency ***before*** addressing the instant Motion, instead of conflating the issues in an attempt to escape the procedural framework that governs bankruptcy proceedings.

12.   Notwithstanding the above, Celsius timely filed its Original Proofs of Claim against the Debtors on June 29 and 30, 2023, before the Non-Customer Claims Bar Date.  *See* D.I. 1519.  Contrary to the Debtors' assertions (Objection ¶¶ 30, 32), this Motion is not an attempt to circumvent the Non-Customer Claims Bar Date but, rather, is necessary for Celsius to seek leave to litigate claims for which the Debtors received adequate and timely notice.

13.   The Debtors spend considerable time in their Objection discussing *Voyager Digital Holdings, Inc.* (Case No. 22-10943 (Bankr. S.D.N.Y. Jan. 24, 2023)) ("<u>*Voyager*</u>") to intimate that

Celsius's practice is to file late proofs of claim. This simply is not true and defies the reality of Celsius's conduct in the Chapter 11 Cases.

14.     Notably, in *Voyager*, Judge Wiles denied the lift stay motion **without prejudice**. Furthermore, he noted that neither the claim nor the purported damages were large and he was concerned that the parties were already spending too much money litigating the issue. (*See* Glueckstein Decl. Ex. B (Hr'g Tr. at [103:10-20], No. 22-10943 (Bankr. S.D.N.Y. Jan. 24, 2023), D.I. 921).) In stark contrast, here the Debtors are trying to deny Celsius's right to seek recovery of what could be **hundreds of millions of dollars of damages**. Whatever may have happened in *Voyager* is immaterial to this Motion.

15.     The Original Proofs of Claim provide adequate notice of the Preference Actions. "The primary purpose of 11 U.S.C. § 501 is to ensure that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims." *Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.*), 94 F.3d 772, 776 (2d Cir. 1996) (evaluating a proof of claim and holding that the creditor's single statement that its claim was "subject to offset amounts due from another Federal agency" was sufficiently specific to preserve a setoff right, "even under the most stringent standard", and that there was no evidence that debtor was surprised by creditor's assertion of a setoff right) (footnote omitted) (quotations omitted). In fact, formality is not dispositive when evaluating the validity of a proof of claim. *See In re Sullivan*, 36 B.R. 771, 773 (Bankr. E.D.N.Y. 1984) ("[I]f the record discloses the timely filing by the creditor of a writing which may be construed as a proof of claim, a bankruptcy court is empowered to treat it as a proof of claim notwithstanding its formal defects…. Whether formal or informal, a claim must show … that a demand is made against the estate, and

must show the creditor's intention to hold the estate liable.") (citations and quotations omitted). Accordingly, this is a relatively low threshold.

16.     The Debtors understate the level of detail that Celsius provided in the Original Proofs of Claim, even as they continue to ignore the Amended Proofs of Claim.  Celsius completed the form *generated by FTX*, which substantially conforms to the Official Form as required by Bankruptcy Rule 3001(d).  This form included, among other things, the Debtor against which Celsius was asserting a claim and the approximate dollar value of its damages.  Celsius did much more, and, in addition to raising various tort and other claims, specifically referenced chapter 5 of the Bankruptcy Code and claims based on avoidable transfers, using terminology well understood in bankruptcy practice.  These details are the proper basis for evaluating claims.  The reservation of rights included later in the Attachment simply protects rights that Celsius already has in connection with filing its Original Proofs of Claim.

17.     The Debtors cite no authority for the proposition that a creditor must provide a detailed cause-of-action-by-cause-of-action breakdown of the remedy sought by each claim.  The Original Proofs of Claim provided a dollar amount and highlighted specific, well-known Bankruptcy Code provisions and used well-known bankruptcy parlance.  Nothing more is required.

18.     Notably, the Debtors cite to *In re Mallinckrodt Plc*, No. 20-12522-JTD, 2022 WL 3545583, at *1 (D. Del. Aug. 18, 2022) and *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221 (3d Cir. 2021) (Objection ¶¶ 32-33) but omit essential language, further undercutting the viability of the Objection.

19.     In *Mallinckrodt*, the Court specifically recognized that "[t]he burden to comply with the bar date is not high.  Protective proofs of claim are permitted, so a creditor who is **uncertain of the amount or validity of its claim** can still comply with the bar date without

7

conceding any issues." 2022 WL 3545583, at *2 (citing *Ellis*, 11 F.4th at 237-38) (emphasis added) (internal citation omitted). Similarly, *Ellis* held that "[a] creditor **does not even have to know the amount or validity of the claim**, for he can easily file a 'protective' claim putting the debtor on notice without conceding any issues." 11 F.4th at 237-38 (emphasis added) (citation omitted).

20.      Decisions from other courts are also instructive. For example, in *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 690 (E.D.N.Y. 2017), the court held that "because the definition of a 'claim' in bankruptcy is so much broader than a 'claim upon which relief may be granted' under Federal Rule of Civil Procedure 12(b)(6) – with the bankruptcy claim encompassing, for example, contingent and unmatured claims that would be dismissed in civil litigation on ripeness or case-or-controversy grounds – **the amount of detail required in a proof of claim as a procedural matter is actually quite low, as Official Form 410 suggests**." (emphasis added) (footnote omitted). *DPWN Holdings* held that "[i]f a debtor disputes a proof of claim, **its objection will generally not challenge the adequacy of the allegations, but rather the substance of the claim**…This is consistent with the well-established practice in bankruptcy of filing a 'protective' claim, **where a creditor thinks it might have a claim but is unsure**." *Id.* at 691 (emphasis added); *see also In re Trocom Constr. Corp.,* No. 1-15-42145-NHL, 2016 WL 4575546, at *2 (Bankr. E.D.N.Y. Sept. 1, 2016) ("Creditors with reason to believe they may have a claim but do not yet know the amount of that claim may file a protective proof of claim") (citation omitted).

21.      Therefore, at the very least, Celsius's Original Proofs of Claim are sufficient to meet the limited requirements of what would be characterized as protective proofs of claim. Celsius did what it could at the time of the Non-Customer Claims Bar Date to preserve its rights

and file the Original Proofs of Claim. Further, Celsius included both an overall dollar amount and identified statutory provisions in connection with its Original Proofs of Claim – well beyond what is expected of even a protective proof of claim.

22.     However, as previously stated, FTX's focus on the Original Proofs of Claim is but a strawman – in as much as the Celsius Litigation Administrator filed the Amended Proofs of Claim that explain in additional detail the preferential transfers in a comprehensive narrative. Indeed, the Celsius Litigation Administrator **reduced** his asserted damages amount from "no less than $2 billion" to "no less than $444,457,844." *See* Ex. B, p. 5. This is not analogous to the Debtors' citation to *In re Nortel Networks, Inc.*, 573 B.R. 522 (Bankr. D. Del. 2017) (Objection ¶ 32), where the creditor: 1) had already amended its proof of claim **five** times; 2) changed a contractual royalties claim to a copyright infringement claim; 3) sought leave to add an additional claimant; and 4) increased its purported damages **almost tenfold**. Rather, after conducting further diligence and analysis, the Celsius Litigation Administrator reduced his claim while relying on the previously cited statutory theory of recovery, namely chapter 5 preferences.[4]

23.     The Celsius Litigation Administrator's approach makes sense given the Debtors' state of financial affairs. Both the Debtors and the Foreign Representative of FTX Digital Markets Ltd. ("<u>FTX DM</u>") admitted that their books and records are too commingled to easily trace the flow of customer funds from Celsius to the FTX entities. Specifically, FTX DM argued in their objection to the Celsius Litigation Administrator's Chapter 15 lift stay motion that "there is no conceivable way to properly trace whether the FTX customers' funds belong to FTX DM or FTX Trading." *The Foreign Representative's Objection to the Celsius Litigation Administrator's*

---

[4]     The Debtors' reliance on *In re Exide Techs.*, 601 B.R. 271 (Bankr. D. Del. 2019), *aff'd sub nom.*, 613 B.R. 79 (D. Del. 2020) (*see* Objection ¶ 32) is also misplaced. *Exide* involved a creditor who filed most of its claims after the bar date and filed new claims after the effective date of the plan, circumstances that justified the disallowance of those claims. That is not the case here.

*Motion for Relief from the Automatic Stay*, (Case No. 22-11217 (JTD) D.I. 164, ¶ 45).  Further the *Global Settlement Agreement* between the Debtors and FTX DM notes "WHEREAS, the JOLs have reviewed such books, records, and analyses and have concluded that FTX.com Exchange…records are so commingled (both as between Dotcom Customers' funds and as between FTX DM **and the Debtors**) that neither the accounts of FTX DM and the Debtors nor those of individual Dotcom Customers can be recreated, and that tracing of assets and funds is not feasible."  *See Order Authorizing the Debtors' Entry Into, and Performance of their Obligations Under, the First Amendment and Restatement to Global Settlement Agreement*, Ex. 1, Annex A, at 2 (D.I. 22946) (emphasis added).  Not surprisingly, the Celsius Litigation Administrator had to conduct an extensive inquiry himself before providing the Court with additional detail and specifically through his Amended Proofs of Claim.

24.    For these reasons, the Proofs of Claim are valid and were timely filed, and this Motion should be granted so that the litigation may be commenced.

## II.    The Lift Stay Factors Favor the Celsius Litigation Administrator

### A.  Probability of Success on the Merits

25.    As explained in the Motion, when deciding whether cause exists to lift the automatic stay, one factor that courts in the Third Circuit consider is whether the creditor has a probability of prevailing on the merits.  *See In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Unlike the standards for dismissal of a complaint, "[t]he required showing is very slight."  *Id*. at 578 (citation omitted).  All that is required is a claim that reasonably and adequately states a claim, not that a claim will be sustained when the proposed litigation is ultimately adjudicated.

26.     The Debtors have failed to establish that the Celsius Litigation Administrator does not meet this minimal showing.  That failure is fatal to the Debtors' arguments that the Celsius Litigation Administrator should not be permitted to prosecute his claims in the NY Celsius Bankruptcy Court.

27.     In the Motion, and in the Draft Complaint and the Ehrler Declaration, the Celsius Litigation Administrator described in detail the bases for the preference exposure faced by the Debtors as a result of the Customer Transfers and the Quoine Transfers.  The Celsius Litigation Administrator explained that each of the transfers at issue: (a) occurred during the Celsius Preference Period, (b) was a transfer of an interest of Celsius's property, (c) was made to or for the benefit of the customer transferee while Celsius was insolvent, and (d) enabled the transferees to receive more than what the customer would have otherwise received if (i) the Celsius Bankruptcy was a case under chapter 7 of the Bankruptcy Code, and (ii) the transfer had not been made.  *See* Motion ¶¶ 42-43.  These explanations amply satisfy the standard for relief on a motion to lift the stay to commence litigation against a debtor in another forum.

28.     The Debtors have no substantive response to the above other than to suggest incorrectly that, to prevail on the Motion, the Celsius Litigation Administrator must come forward with evidence to overcome purported defenses that the Debtors might later assert against the preference claims included in the Draft Complaint.  *See* Objection ¶ 29.  This misstates the standard a court must apply when evaluating a lift stay motion.

29.     In reality, "a court hearing a motion for relief from [the] stay *should seek only to determine whether the party seeking relief has a **colorable claim** to property of the estate*."  *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994) (emphasis added).  Whether a party has a "colorable claim" is a standard far less rigorous than what the Debtors' argue.  *See In re*

*Fuller*, 2024 Bankr. LEXIS 1500, at *5 (Bankr. D. Mass. June 25, 2024) (a debtor's asserted defenses and counterclaims insufficient to counter a lift-stay movant's colorable claim to relief). In fact, "[a] colorable claim is one that is legitimate and that may *reasonably* be asserted, given the facts presented and the current law," *U.S. Bank N.A. v. Vertullo (In re Vertullo)*, 610 B.R. 399, 404 (B.A.P. 1st Cir. 2020) (emphasis added) (citations omitted).  As applied in this District, this standard is not difficult to meet, and "merely requires a showing that [a movant's] claim is *not frivolous*." *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund L.P. (In re Levitz Furniture Inc.)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) (emphasis added) (citation omitted); s*ee also In re Scarborough St. James Corp.*, 535 B.R. 60 (Bankr. D. Del. 2015); *In re Midway Airlines,* 167 B.R. 880, 884 (Bankr. N.D. Ill. 1994); *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993).

30.    Here, the Celsius Litigation Administrator establishes that the avoidance action claims (as described in the Motion and the Draft Complaint) are not frivolous and state all the necessary elements to constitute a colorable claim having at the very least a "slight probability" of success on the merits.  The speculative defenses to the avoidance action claims that the Debtors purport to possess do not undercut that reality, especially as they are not appropriate for consideration at this phase of the proceedings.

## B.  Balancing of Hardships

31.    The Debtors posit a parade of horribles that purportedly will result if the Court lifts the automatic stay to permit the Celsius Litigation Administrator to pursue the Customer Preference Actions and the Quoine Actions in the NY Celsius Bankruptcy Court.  Objection ¶¶ 45-50.  In so doing, the Debtors severely understate the prejudice the Celsius Litigation Administrator and Celsius's creditors will suffer should the stay remain in place.  Objection ¶¶ 52-

57.  The Debtors ignore critical factors that support lifting the stay in a way that addresses the interests of all parties involved.

32.    The Customer Preference Actions seek only to redirect distributions already contemplated by the FTX Plan.  This targeted approach will ensure that creditors receive their rightful share under the FTX Plan without jeopardizing the estate's assets or the estate's orderly administration.  Contrary to the Debtors' claims suggesting a wholesale redirection of funds, the Customer Preference Actions are focused on ensuring equitable distribution, which aligns with the overarching goal of the bankruptcy process.

33.    The Objection also raises concerns about potential delays and distractions from the FTX Plan confirmation process.  Litigating these claims, the Debtors argue, could divert resources and attention away from critical restructuring efforts.  Objection ¶ 46.  The Debtors also assert, wrongly, that the relief sought in the Motion would result in the Debtors "being forced to litigate over 500 preference claims . . . ."  Objection ¶ 57.  That is simply false.  If the Motion is granted, the Celsius Litigation Administrator intends only to initiate an action against: (i) the Debtors as subsequent transferees and (ii) Quoine as an initial transferee of avoidable transfers from Celsius. Contrary to the Debtors' apparent misunderstanding, the Celsius Litigation Administrator does not intend to join the Debtors to the preference actions presently pending in the NY Celsius Bankruptcy Court against certain former Celsius customers as the initial transferees.  Therefore, the Debtors seriously exaggerate the purported harm that litigation of the FTX Preference Actions would have on the FTX estate.

34.    The Debtors' contrived fears over the distraction that would follow from the relief sought in the Motion is similarly unavailing.  The Debtors aver that permitting the Celsius Litigation Administrator to pursue the FTX Preference Actions in the NY Celsius Bankruptcy

Court will "distract the Debtors and their professionals at precisely the time that they must be focused on obtaining confirmation of their plan of reorganization and successfully concluding their Chapter 11 Cases."  Objection ¶ 8.  This argument disregards the fact that the Debtors' plan and solicitation process is largely complete.  In fact, the Debtors have reported that the FTX Plan "has received overwhelming preliminary support from all classes of creditors entitled to vote" and that "[w]ith these results, the Plan is expected to exceed the required thresholds for acceptance under the Bankruptcy Code."  *See* PR Newswire, *FTX Announces Overwhelming Support from Creditors for Plan of Reorganization* (Aug. 21, 2024), https://www.prnewswire.com/news-releases/ftx-announces-overwhelming-support-from-creditors-for-plan-of-reorganization-302227961.html.  Even more, the litigation contemplated by the Motion almost certainly will move forward in the post-confirmation phase of the Chapter 11 Cases.  It is disingenuous for the Debtors to raise their confirmation process as a shield against the need for resolution of the preference claims that underly the Motion.

35.      On the other hand, the Debtors overlook the practical necessity of resolving these claims efficiently to maximize creditor recoveries.  They ignore that these claims will necessarily be litigated *somewhere*.  If the automatic stay remains in effect, the Celsius Litigation Administrator will seek to enforce his rights in this Court, which will still require the Debtors' attention.  In contrast, allowing the action to be litigated in the NY Celsius Bankruptcy Court, before a judge who is familiar with Celsius's operations and the legal issues at hand, would streamline proceedings and avoid the risk of duplicative efforts and potentially inconsistent results.  This approach minimizes costs and ensures consistent treatment of creditors, thereby enhancing the overall efficiency of the bankruptcy process.

36.     The Debtors also suggest that allowing these claims to proceed could unfairly prejudice the Debtors and their estates by potentially diverting significant funds from other creditors.  Objection ¶ 47.  Again, this is a strawman.  The action will proceed, as explained above, either in New York or here.  However, as discussed more fully in the Motion, the preference claims targeted under the Customer Preference Actions are only aimed at initial transferees who received preferential transfers from Celsius, not at the Debtors directly.  Any redistribution of funds would only affect those creditors who received such preferential transfers (and so are not entitled to the proceeds in the first place) and not the general FTX creditor body.

37.     Finally, the Objection fails to appreciate the significant hardship the Celsius Litigation Administrator will face if the Debtors proceed to make distributions pursuant to the FTX Plan to the former Celsius customers before the Preference Actions are resolved.  The value of, and entitlement to the benefit of, those claims depend on the Celsius Litigation Administrator's ability to recover against the appropriate targets of the Preference Actions.  The Celsius Litigation Administrator will be significantly harmed if funds that rightfully should be subject to the Celsius Litigation Administrator's avoidance powers are distributed to the pertinent FTX account holders without the Celsius Litigation Administrator first having the right to pursue the Preference Actions. At the very least, the Debtors should be required to hold back distributions to creditors who were the initial transferees of the Customer Transfers until such time as the Preference Actions can be adjudicated.

## **CONCLUSION**

For the foregoing reasons, the Court should overrule the Objection and approve the Motion and should grant the Celsius Litigation Administrator such other and further relief as may be just and proper.

Dated: September 4, 2024
       Wilmington, Delaware

          Respectfully submitted,

          **COLE SCHOTZ P.C.**

          */s/ Justin R. Alberto*
          Justin R. Alberto (No. 5126)
          Patrick J. Reilley (No. 4451)
          Melissa M. Hartlipp (No. 7063)
          500 Delaware Avenue, Suite 1410
          Wilmington, DE 19801
          Telephone: (302) 652-3131
          Facsimile: (302) 652-3117
          Email: jalberto@coleschotz.com
                preilley@coleschotz.com
                mhartlipp@coleschotz.com

          -and-

          **PRYOR CASHMAN LLP**
          Seth H. Lieberman, Esq. (admitted *pro hac vice*)
          Richard Levy, Jr., Esq. (admitted *pro hac vice*)
          Andrew S. Richmond, Esq. (admitted *pro hac vice*)
          7 Times Square
          New York, New York 10036
          Telephone: (212) 421-4100
          Facsimile: (212) 326-0806
          Email: slieberman@pryorcashman.com
                rlevy@pryorcashman.com
                arichmond@pryorcashman.com

          *Counsel to the Celsius Litigation Administrator*