# **EXHIBIT A**

|   | **Debtors' Misstatements** | **Celsius Litigation Administrator's Response** |
|---|---|---|
| 1. | "The Motion … suggests that Celsius does not seek to deplete the Debtors' estates or delay implementation of the Plan. (Mot. ¶ 4). This is blatantly false" as Celsius seeks "to recover more than $67 million from Debtor Quoine Pte Ltd. . . . and more than $377 million from the Debtors as subsequent transferees." Objection ¶¶ 1, 2; *see* ¶ 47. | The Motion notes that "[t]he Customer Preference Actions do not seek to deplete the FTX Debtors' estate or otherwise delay implementation of the [FTX Plan]." Motion ¶ 4. (emphasis added). The "Customer Preference Actions", as defined in the Motion, are the actions against the Debtors as subsequent transferees, but do not include the direct action against Quoine. The Customer Preference Actions will not deplete the estate as they only seek to redirect funds from FTX Customers to Celsius. |
| 2. | "As a threshold matter, Celsius's purported preference claims cannot be asserted because Celsius did not file proofs of claim with respect to them prior the [sic] Non-Customer Claims Bar Date." Objection ¶ 4; *see* ¶¶ 29, 38. | The Original Proofs of Claim properly pled the existence of, and the intention to pursue, the preference claims. On July 7 and 8, 2024, prior to the Debtors filing their Objection or their Claim Objection, the Celsius Litigation Administrator amended its Original Proofs of Claim. |
| 3. | "The Celsius Administrator claims that the Debtors will not be prejudiced by being dragged into litigation about more than 500 preference claims in a different forum where the court will be unfamiliar with the Debtors' Chapter 11 Cases and the facts relevant to the Debtors' defenses." Objection ¶ 8; *see* ¶¶ 46, 57. | The Celsius Litigation Administrator does not seek to join the Debtors into each of the underlying initial transferee actions. In fact, as noted in the Draft Complaint, the Debtors would be the defendants in only one action. |
| 4. | "The Celsius Proofs of Claim indicate that the sole basis for the claims were reports in unidentified 'periodicals' of 'unsubstantiated and disparaging statements allegedly made by FTX's officers . . . '" Objection ¶ 15; *see* ¶ 17. | The Original Proofs of Claim included the preference claims, and the Amended Proofs of Claim further elaborated on their bases without alleging any new theory of recovery. |

| | | |
|---|---|---|
| 5. | "[T]he draft complaint seeks to obtain a judgment against the Debtors as to the Celsius Customer Claims as a subsequent transferee that would be independently collectable (*see* Draft Compl. at 26), and would create hundreds of millions of dollars of new liability in Class 6A of the Debtors' Plan." Objection ¶ 23. | The selected citation to the Draft Complaint is in the prayer for relief and is specifically "[i]n the alternative to the relief set forth in (b) above . . . ." Draft Compl. at 26. |
| 6. | "Celsius failed to comply with even the most basic requirements of a valid proof of claim because the Celsius Proofs of Claim did not articulate the amount of any preference claim, the nature of any such claim, the transfers underlying the purported claims, or any facts at all that could be the basis for, or put the Debtors on notice of, any such claims. *See Am. Classic Voyages,* 405 F.3d at 132 (rejecting a purported informal proof of claim)." Objection ¶ 31. | The *American Classic Voyages* case, in fact, supports the Motion and the adequacy of the Original Proofs of Claim. It stands for the exact opposite of the proposition asserted by the Debtors. "[W]e note that the substantive requirements of a proof of claim, including the notice requirement, cannot be significantly relaxed for 'informal' proofs of claims. The distinction between formal and informal proofs of claim refers only, as the terms suggest, to their form, not their substance." *Am. Classic Voyages,* 405 F.3d at 132. The court was addressing the need to conform to the Official Bankruptcy Proof of Claim form, which is not at issue here. The court <u>did not</u> address the substance of the claim. |
| 7. | In support of an ordinary course defense for the Quoine transfers, the Debtors cite Exhibit D of the Ehrler Declaration and claim "[a]s shown in these records, Quoine regularly made large deposits of cryptocurrency and stablecoin into its Celsius account during the Celsius Preference Period." Objection ¶ 43. | Exhibit D includes transfers from April 15, 2022 through May 20, 2022 – all within the Preference Period. However, "[t]o determine whether transfers were in the ordinary course of business the Court must first determine what the ordinary course of business was and then compare the preferential transfers to it." *In re Conex Holdings, LLC*, 518 B.R. 268, 280 (Bankr. D. Del. 2014). One cannot simply look at certain transfers and claim they were made in the ordinary course without understanding those transfers in a larger context. |
| | | |

| | | |
|---|---|---|
| 8. | "Further, the Celsius Administrator readily admits that it has not attempted to properly value the many different unidentified assets over which it is attempting to assert claims and would likely dispute any valuation the Debtors put forward. (Ehrler Decl. Exs. C-D.)" Objection ¶ 49. | The Celsius Litigation Administrator never made such an admission. In fact, the Debtors cite to the exhibits to the Ehrler Declaration, which contain only lists of Celsius customers who transferred Celsius's property off its exchange. Regardless, as repeatedly noted in the Motion, the Customer Preference Actions "do not enlarge the FTX Debtors' obligations or modify the value of plan distributions . . . and would merely redirect distributions under the FTX Plan." Motion ¶ 5. |
| 9. | "The Celsius Litigation Administrator also argues that requiring it to assert the Celsius Customer Claims in this Court could impede Celsius's 'ability to recover on preference claims.' (Mot. ¶ 40). This is false. As the Celsius Administrator admits, the alleged initial transferees 'will be subject to preference actions by Celsius *whether or not the FTX Debtors are joined to those proceeding.*'" The Debtors further note "the Motion fails to identify why the Debtors must be a party to any preference actions involving the Celsius Customer Claims at this time." Objection ¶¶ 54, 55 (emphasis in original). | Failing to lift the stay will hinder the Celsius Litigation Administrator's "ability to *recover* on preference claims. Lifting the stay to permit the Celsius Litigation Administrator to prosecute the Customer Preference Actions against the FTX Debtors as subsequent transferees along with the actions against initial transferees will allow the Celsius Litigation Administrator to *recover* preference claims in circumstances where, among others, an initial transferee may be beyond the practical reach of the NY Celsius Bankruptcy Court." Motion ¶ 40 (emphasis added). |