IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re*<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br>(Jointly Administered)<br><br>**Hearing Date:  Sept. 12, 2024, at 1:00 p.m.**<br>**Objections Due:  Sept. 5, 2024 at 4:00 p.m.**<br><br>Re:  D.I. 17182 |

**UNITED STATES TRUSTEE'S OBJECTION TO AND RESERVATION OF RIGHTS WITH RESPECT TO THE CELSIUS LITIGATION ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER FOR AUTHORITY TO FILE UNDER SEAL THE TRANSFER SCHEDULES CONTAINING CONFIDENTIAL INFORMATION**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned attorneys, hereby files this objection and reservation of rights ("Objection") to *The Celsius Litigation Administrator's Motion For Entry of an Order For Authority To File Under Seal the Transfer Schedules Containing Confidential Information* (the "Seal Motion") and respectfully states:

**PRELIMINARY STATEMENT**

1. The Celsius Litigation Administrator ("CLA") cannot seek to file under seal information that has been publicly available for years. "[T]he Court has no authority to seal public

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

documents or information derived from public documents." *Togut v. Deutsche Bank AG (In re Anthracite Cap., Inc.)*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013). The names of Celsius customers have been publicly available since 2022. *See In re Celsius Network LLC,* 644 B.R. 276, 293 (Bankr. S.D.N.Y. 2022). As the names are already public, the CLA cannot seek to "put the genie back in the bottle" by asking this Court to seal the names of Celsius customers that have already been disclosed.

## JURISDICTION & STANDING

2. Under (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion and this Objection.

3. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

5. On July 13, 2022, Celsius Network LLC and its affiliated debtors (collectively, "Celsius") filed chapter 11 petitions in the United States Bankruptcy Court for the Southern District of New York (the "Celsius Bankruptcy Court") that are jointly administered under Case

2

No. 22-10964 (MG). On September 28, 2022, the Celsius Bankruptcy Court issued a ruling that required the disclosure of individual customers' names. *Celsius,* 644 B.R. at 293.

6. On January 29, 2024, Celsius filed the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for Mining Co Transaction)* (the "Celsius Plan"). D.I. 4289 (*In re Celsius Network LLC*, Case No. 22-10964 (Bankr. S.D.N.Y.) (references to Celsius docket hereinafter, "Celsius D.I.")). On January 31, 2024, the Celsius Plan became effective. Celsius D.I. 4298. Pursuant to the Celsius Plan, the CLA was appointed to prosecute, settle, or otherwise resolve certain remaining disputed claims on behalf of Celsius's estates.

7. On June 5, 2024, the CLA filed in the above-captioned cases a *Motion for Relief from the Automatic Stay* ("Stay Relief Motion"). [D.I. 16815]. On that same date, the CLA filed a sealed version of the *Declaration of Kenneth Ehrler in Support of the Celsius Litigation Administrator's Motion for Relief From the Automatic Stay* (the "Ehrler Declaration")[2] [D.I. 17181] and, subsequently, the Seal Motion.

8. Through the Stay Relief Motion, the CLA seeks authority to file preference actions against FTX in the Celsius Bankruptcy Court. Celsius' alleged preference claims against the FTX Debtors arise from transfers from Celsius that were made during the ninety (90) day period preceding Celsius's petition date (the "Celsius Preference Period") to or for the benefit of (i) the FTX Debtors as subsequent transferees (the "Customer Preference Actions"), and (ii) FTX Debtor Quoine Pte Ltd. ("Quoine") as initial transferee (the "Quoine Actions," and together with the Customer Preference Actions, the "FTX Preference Actions") which are avoidable under sections 547 and 550 of the Bankruptcy Code. Stay Relief Mot. ¶ 8.

---

[2] The docket number in the text above references the redacted version of the Ehrler Declaration. An unredacted version was filed under seal at D.I. 16819.

3

9. The CLA originally sought authority to file under seal two schedules that are Exhibits C and D to the Ehrler Declaration. Exhibit C (the "Subsequent Transfers Schedule") identifies (i) Celsius customers that allegedly were recipients of initial transfers from Celsius, (ii) the net amounts of avoidable transfers made to the identified Celsius customer, and (iii) the alleged total amount of assets the Celsius customer transferred to an FTX entity. Ehrler Decl. ¶ 14. Exhibit D identifies transfers from Celsius to FTX Debtor Quoine by date, type and amount. Ehrler Decl. ¶ 21. The Celsius customers listed on Exhibit C include both natural persons and business entities, such as partnerships and LLCs.

10. Upon information and belief, the CLA no longer seeks Court authority to seal Exhibit D. Further, the U.S. Trustee has also been advised that the CLA plans to file a revised Exhibit C that lists fewer Celsius customers. As of the filing of this Objection, the request to seal Exhibit D has not yet been withdrawn and a revised Exhibit C has not yet been filed.

## ARGUMENT

### A. The Public Has a Right of Access to Judicial Records

11. In American jurisprudence, there is a long-standing, common law right of public access to court records. *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 591 (1978) ([i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") The public's right of access envisions "a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." *In re Cendant Corp.*, 260 F.3d 183, 194 (3rd Cir. 2001) (citations omitted).

12. The "access to civil proceedings and records promotes public respect for the judicial process." *Id.* (citations omitted). Such access is "rooted in the public's First Amendment right to know about the administration of justice." *Motors Liquidation Co. Avoidance Action Trust*

4

*v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 41 (Bankr. S.D.N.Y. 2016).  This right is "firmly entrenched and well supported by policy and practical considerations." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994).

13. The right of public access has given rise to "a strong presumption and public policy in favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).  This presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . [P]ublic monitoring is an essential feature of democratic control." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).  The Second Circuit has issued this pointed guidance:

> There must be a strong presumption against sealing any document that is filed with the court.  Our courts do not operate in secrecy.  Except on rare occasions and for compelling reasons, everything that courts do is subject to public scrutiny.  To hide from the public entire proceedings, or even particular documents or testimony forming a basis for judicial action that may directly and significantly affect public interests, would be contrary to the premises underling a free, democratic society.

*City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991).

### B. The Right to Public Access is Codified in the Bankruptcy Code

14. In our bankruptcy system, it is widely acknowledged that the governmental interest is safeguarding public access to judicial records is "of special importance . . . , as unrestricted access to judicial records fosters confidence among creditors regarding fairness in the bankruptcy system." *Motors Liquidation*, 561 B.R. at 41 (quoting *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1, 7 (1st Cir. 2005); quoting *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999)).  Described as "fundamental to the operation of the bankruptcy system and . . . the best means of avoiding any suggestion of impropriety that might or could be raised," the policy of open inspection, as applied in this Court, cannot be underestimated.  *Motors*

*Liquidation*, 561 B.R. at 41-42 (quoting *In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984).

15. The common law right of public access to judicial records has been codified in section 107(a) of the Bankruptcy Code. *Anthracite*, 492 B.R. at 170, 173; *see also Gitto Global*, 422 F.3d at 7-8 (section 107 supplants the common law of public access). Pursuant to § 107(a), papers filed in bankruptcy cases and the Court's dockets are "public records, open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Anthracite*, 492 B.R. at 170.

### C. The CLA Has Not Met Its Burden to Seal the Subsequent Transfers Schedule

16. Despite its deep underpinnings, the right to public access to court records is "not absolute." *Nixon*, 435 U.S. at 598; *Motors Liquidation*, 561 B.R. at 42. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *Orion*, 21 F.3d at 27 (noting that court may limit access where user's purpose is improper).

17. Section 107(b)(1) of the Code provides that, "[o]n request of a party in interest, the bankruptcy court shall, . . . protect an entity with respect to a trade secret or confidential research, development or commercial information." 11 U.S.C. § 107(b)(1). Section 107(b) of the Code provides a "narrow statutory exception" to public access in bankruptcy cases." *In re Muma Servs., Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002).

18. In seeking to apply any exception to the general right of public access to judicial records, codified by section 107(a) of the Bankruptcy Code, "[t]he burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Cendant*, 260 F.3d at 194. In *Cendant*, the Third Circuit Court of Appeals further explained:

> [T]he party seeking the closure of a hearing or the sealing of part of the judicial record "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a *clearly defined and serious injury to the party seeking closure*." In delineating the injury to be prevented, *specificity is essential*. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.

*Id.* (internal citations omitted, emphasis added).

19. The moving party bears the burden of showing that a request to place documents under seal falls within the parameters of Bankruptcy Code § 107(b) and Bankruptcy Rule 9018 by demonstrating ". . . that the interest in secrecy outweighs the presumption in favor of access." *In re Continental Airlines, Inc.,* 150 B.R. 334, 340 (D. Del. 1993); *accord Food Mgmt. Group,* 359 B.R. at 561 (Bankr. S.D.N.Y. 2007); *In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).

20. The burden of proof to seal or redact filed bankruptcy papers "is not an easy burden nor should it be. . . . The party seeking impoundment must submit 'evidence the filing under seal outweighs the presumption of public access to court records.'" *In re Creighton*, 490 B.R. 240, 244 (Bankr. N.D. Ohio 2013) (quoting *Gitto/Global*, 321 B.R. at 373; quoting *In re Muma Servs. Inc.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002)). "[S]ealing official documents," as the Debtors would like, "should not be done without a compelling reason." *City of Hartford*, 942 F.2d at 135.

21. Congress was clear that bankruptcy proceedings must be transparent, and transparency requires pleadings to be filed on the public docket unless narrow exceptions apply. Such exceptions do not apply here.

22. The "confidential . . . commercial information" exception protects parties from the release of information which "would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Alterra*, 353 B.R. at 75 (quoting *Orion*, 21 F.3d at 27-28); *see In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y.

7

2003). The information at issue here -- transfers from Celsius to Celsius customers (including Quoine) who were publicly named in the Celsius bankruptcy case, and alleged subsequent transfers to the FTX Debtors -- will not result in an unfair advantage to the competitors of Celsius or FTX. Both Debtors are for all intents and purposes being liquidated. They have no competitors.

23. In limited circumstances it may be appropriate to protect confidential commercial, competitively sensitive, or proprietary information from unnecessary disclosure. However, any such protection must not be so overarching as to prevent the public from understanding the details of what is, by common law and the Bankruptcy Code, an inherently public process.

24. Here, the public, and in particular parties in interest who assert claims against Celsius or the FTX Debtors, has the right to know of alleged pre-petition transfers from Celsius that the CLA now seeks to recover. If successful, the FTX bankruptcy estates will have fewer available assets by which to make payments to creditors. At the same time, the CLA would have additional assets from which to make distributions to Celsius' creditors.

25. The CLA has not met its burden to justify filing Exhibit C to the Ehler Declaration under seal.

**RESERVATION OF RIGHTS**

26. The FTX Debtors have asserted that Exhibit C should be sealed, as the Celsius Creditors identified thereon are FTX customers. The U.S. Trustee leaves the FTX Debtors to meet their burden of proof not only to prove they are, in fact, FTX customers, but also that the names should be sealed despite the fact they were already publicly disclosed as Celsius customers. The U.S. Trustee continues to reserve its rights with respect to the Court's order entered on January 20, 2023 [D.I. 545] regarding the redaction of FTX customers' names. D.I. 16164.

27. The U.S. Trustee reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection and to assert any

objection, file any appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court enter an order: (i) denying the Motion, and (ii) granting such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

Dated: September 4, 2024

By: */s/ Linda Richenderfer*
Linda Richenderfer (DE # 4138)
Benjamin A. Hackman
Jonathan W. Lipshie
Trial Attorneys
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
benjamin.a.hackman@usdoj.gov
linda.richenderfer@usdoj.gov
jon.lipshie@usdoj.gov