## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 22, 2024 at 1:00 p.m. (ET)**<br>**Obj. Deadline: September 20, 2024 at 4:00 p.m. (ET)** |

**MOTION OF THE FTX DEBTORS AND EMERGENT FIDELITY
TECHNOLOGIES LTD FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
ENTRY INTO, AND PERFORMANCE UNDER, THE GLOBAL SETTLEMENT
AGREEMENT AMONG THE FTX DEBTORS, EMERGENT FIDELITY
TECHNOLOGIES LTD, THE JOINT LIQUIDATORS, AND FULCRUM
DISTRESSED PARTNERS LIMITED; (B) APPROVING THE GLOBAL
SETTLEMENT AGREEMENT; AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively,
the "FTX Debtors") and Emergent Fidelity Technologies Ltd. as debtor and debtor-in-possession
("Emergent") hereby submit this motion (the "Motion") for entry of an order, substantially in the
form attached hereto as Exhibit 1 (the "Order"), pursuant to section 105(a) of title 11 of the United
States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and rule 9019 of the Federal Rules
of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the FTX Debtors' and
Emergent's entry into, and performance under, the Global Settlement Agreement (the "Global
Settlement Agreement"),[2] attached as Exhibit A to the Order, between and among (i) the FTX
Debtors, (ii) Emergent, (iii) Angela Barkhouse and Toni Shukla (the "Joint Liquidators"), and

---

[1]  The last four digits of FTX Trading Ltd.'s tax identification number are 3288.  Due to the large number of debtor
entities in these Chapter 11 Cases, a complete list of the FTX Debtors and the last four digits of their federal tax
identification numbers is not provided herein.  A complete list of such information may be obtained on the website
of the FTX Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business
of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St.
John's, Antigua and Barbuda.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
Global Settlement Agreement.

(iv) Fulcrum Distressed Partners Limited ("Fulcrum," and collectively with the FTX Debtors, Emergent, and the Joint Liquidators, the "Parties"); (b) approving the Global Settlement Agreement; and (c) granting related relief.  In support of the Motion, the FTX Debtors submit the *Declaration of John J. Ray III in Support of the Motion of the FTX Debtors and Emergent Fidelity Technologies Ltd. for Entry of an Order (A) Authorizing Entry Into, and Performance Under, the Global Settlement Agreement Among the FTX Debtors, Emergent Fidelity Technologies Ltd., the Joint Liquidators, and Fulcrum Distressed Partners Limited; (B) Approving the Global Settlement Agreement; and (C) Granting Related Relief* filed contemporaneously herewith (the "Ray Declaration"), and Emergent submits the *Declaration of Angela Barkhouse in Support of the Motion of the FTX Debtors and Emergent Fidelity Technologies Ltd. for Entry of an Order (A) Authorizing Entry Into, and Performance Under, the Global Settlement Agreement Among the FTX Debtors, Emergent Fidelity Technologies Ltd., the Joint Liquidators, and Fulcrum Distressed Partners Limited; (B) Approving the Global Settlement Agreement; and (C) Granting Related Relief* (the "Barkhouse Declaration"), and respectfully state as follows:

**Preliminary Statement**

1.      The Global Settlement Agreement is another valuable piece of the puzzle as the FTX Debtors prepare to implement their proposed plan of reorganization and continue to work to maximize distributable value to creditors.  In exchange for a single $14 million payment to fund Emergent's administrative expenses, the Global Settlement Agreement avoids the cost and delay of litigation with respect to Emergent's claims to the proceeds from the seizure and sale of 55 million shares of Robinhood Markets, Inc. Class A stock (the "Robinhood Shares") and cash totaling more than $600 million (the "Robinhood Proceeds"), and provides a path to the swift resolution of the Emergent chapter 11 case and proceedings in Antigua.

2.    Multiple parties have since the commencement of these Chapter 11 Cases attempted to lay claim to the Robinhood Shares and later the Robinhood Proceeds, including Samuel Bankman-Fried, BlockFi, and Emergent, in addition to the FTX Debtors.  Any purported claims of Mr. Bankman-Fried have been forfeited following his criminal conviction.  The FTX Debtors have worked hard to resolve the other competing interests to clear a path for the U.S. Department of Justice to be able to provide the Robinhood Proceeds and Seized Cash to the FTX Debtors for distribution.  During a March 14, 2023 hearing, Emergent, BlockFi, and the FTX Debtors discussed their respective claims to the Robinhood Shares.  In response, the Court observed "these parties clearly have some interest superior to the Government[']s, so go back from whence you came, and figure out who amongst you is the one who owns them." (Hr'g Tr. at 5:19-22, Case No. 23-10149 (Bankr. D. Del. Mar. 14, 2023), D.I. 82.)  The FTX Debtors, Emergent and BlockFi have now resolved all of their competing claims.

3.    This Court previously approved a settlement between the FTX Debtors and BlockFi that, among other things, assigned any rights that BlockFi had in the Robinhood Proceeds and the Seized Cash to the FTX Debtors.  The Global Settlement Agreement now resolves the Emergent Claims filed in the FTX Debtors' Chapter 11 Cases and the Emergent Forfeiture Petitions filed by both Emergent and the Joint Liquidators in the Criminal Case.

4.    Although the FTX Debtors believe their interest in the Robinhood Proceeds and Seized Cash is superior to Emergent's, litigation is time-consuming and expensive, and the outcome uncertain.  Emergent also believes its litigation position has merit, and also recognizes litigation is costly and uncertain.  Nonetheless, the FTX Debtors and Emergent agree that the Robinhood Proceeds and Seized Cash should be administered for the benefit of the FTX Debtors' creditors, and the Global Settlement Agreement provides certainty with respect to a key asset for the FTX Debtors and their stakeholders.

5.      The Parties engaged in protracted arms'-length negotiations that resulted in the Global Settlement Agreement.   Among other things, the Global Settlement Agreement provides for the payment of the costs of administration incurred by Emergent and the Joint Liquidators for the benefit of the FTX Debtors and their creditors, and result in an assignment of any interests of Emergent and the Joint Liquidators in the Robinhood Proceeds and the Seized Cash to the FTX Debtors, thus further clearing the way for the FTX Debtors to receive the Robinhood Proceeds and Seized Cash from the U.S. Department of Justice for the benefit of their creditors.

6.      Accordingly, the FTX Debtors and Emergent each believe that entry into, and performance under, the Global Settlement Agreement is fair and reasonable, provides material value to both the FTX Debtors and Emergent while avoiding costly, time-consuming, and uncertain litigation, is in the best interests of the FTX Debtors and Emergent and their respective estates, and should be approved.

**Background**

7.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the FTX Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code.   The FTX Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   Joint administration of the FTX Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].   On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official

---

[3]      November 11, 2022 is the Petition Date for all FTX Debtors, except for FTX Debtor West Realm Shires Inc.

Committee of Unsecured Creditors in the FTX Debtors' Chapter 11 Cases, pursuant to section 1102 of the Bankruptcy Code [D.I. 231] (the "<u>Committee</u>").

8.      On February 3, 2023, the Emergent Debtor, under the control of Angela Barkhouse and Toni Shukla as Joint Provisional Liquidators[4] pursuant to the Appointment Order of the Eastern Caribbean Supreme Court, High Court of Justice, Antigua and Barbuda (the "<u>Antigua Court</u>"), dated December 5, 2022, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "<u>Emergent Chapter 11 Case</u>") with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

9.      On May 10, 2023, the Court entered a final order authorizing the joint administration of the Emergent Chapter 11 Case with the FTX Debtors' Chapter 11 Cases.[5]

10.      On May 19, 2023, the Court entered the *Order (I)(A) Establishing Deadlines for Filing Non-Customer and Government Proofs of Claim and Proofs of Interest and (B) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1519] (the "<u>Non-Customer Bar Date Order</u>").  The Non-Customer Bar Date Order established, among other things, June 30, 2023 as the deadline to file proofs of claim for Non-Customer Claims (*i.e.*, any claim other than a Customer Claim).

11.      Additional factual background relating to the FTX Debtors' businesses and the commencement of these Chapter 11 cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental*

---

[4]   On March 23, 2023, the Antigua Court placed the Emergent Debtor into full liquidation (as confirmed by the Antigua Court Order dated July 14, 2023) and appointed Ms. Barkhouse and Ms. Shukla as Joint Liquidators.

[5]   D.I. 91, Case No. 23-10149; D.I. 1469, Case No. 22-11068.

*Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93]. Additional factual background relating to the Emergent Chapter 11 Case is set forth in the *Declaration of Angela Barkhouse in Support of the Debtor's Chapter 11 Petition* [D.I. 3, Case No. 23-10149].

### Facts Specific to the Relief Requested

12.     Emergent is an Antiguan company originally formed and formerly controlled by Samuel Bankman-Fried. On May 11, 2022, Emergent acquired possession of approximately 56 million shares of Robinhood Markets, Inc., through an agreement with Alameda Research Ltd. ("Alameda"), Mr. Bankman-Fried, and ED&F Man Capital Markets Inc. (n/k/a Marex Capital Markets, Inc.).

13.     Each of the FTX Debtors, BlockFi, Samuel Bankman-Fried, and Emergent have at different times asserted ownership, security interests, or other rights in the Robinhood Shares, the Robinhood Proceeds, and/or the Seized Cash, and there have been multiple proceedings commenced in multiple forums with respect to these matters.

14.     On or around January 4, 2023, the U.S. Department of Justice seized the Robinhood Shares and the Seized Cash (*see* Government's Forfeiture Bill of Particulars, *United States* v. *Bankman-Fried*, No. 22-673, (S.D.N.Y. Jan. 20, 2023), D.I. 49), and on September 1, 2023, the U.S. Department of Justice liquidated the Robinhood Shares, and currently holds more than $600 million in Robinhood Proceeds. (*United States* v. *Bankman-Fried*, No. 22-673, (S.D.N.Y. Sep. 1, 2023), D.I. 242, 423.) Emergent and the Joint Liquidators filed the Emergent Forfeiture Petitions asserting interests in and rights to the Robinhood Proceeds and the Seized Cash. (*United States* v. *Bankman-Fried*, No. 22-673 (S.D.N.Y. Jun. 13, 2024), D.I. 446, 447.) The FTX Debtors have also filed a petition asserting their superior interest to the Robinhood Proceeds and the Seized Cash. (*United States* v. *Bankman-Fried*, No. 22-673 (S.D.N.Y. Jun. 14, 2024), D.I. 450.)

15.     On February 3, 2023, Emergent filed a voluntary petition for chapter 11 bankruptcy protection in this Court.  (Case No. 23-10149, D.I. 1.)  The day prior, Emergent, the Joint Liquidators, and Fulcrum entered into that certain Liquidation Funding Agreement (the "Financing Agreement"), pursuant to which Emergent has borrowed a total of $4,496,882.88 to date.  (Emergent Chapter 11 Monthly Operating Report D.I. 20857.)

16.     On April 17, 2023, the Court entered the *Order Approving Stipulation Staying Litigation and Related Discovery* [D.I. 1297] which, among other things, stayed all litigation by and among the FTX Debtors, Emergent, and BlockFi outside of the Criminal Case and related forfeiture proceedings until resolution of Mr. Bankman-Fried's criminal proceedings.

17.     On June 28, 2023, in accordance with the Non-Customer Bar Date Order, Emergent filed the Emergent Claims in the Chapter 11 Cases seeking no less than $28.9 million from the FTX Debtors.[6]

18.     On March 25, 2024, the Court entered an order approving a settlement between the FTX Debtors and BlockFi that, among other things, resolved all of BlockFi's claims against the FTX Debtors and assigned BlockFi's purported rights and interests in the Robinhood Proceeds and the Seized Cash to the FTX Debtors.  (*See* D.I. 10331.)

19.     To resolve all disputes and open matters by and among the FTX Debtors and Emergent, the Parties negotiated at arm's length and reached the Global Settlement Agreement that provides, among other things, that on effectiveness of the Global Settlement Agreement:[7]

    (i)     the FTX Debtors will pay $14,000,000 U.S. dollars to Emergent, subject to approval by this Court and agreement between any of the FTX Debtors and the U.S. Department of Justice with respect to the releases of the

---

[6]    *See* proof of claim numbers 3838, 4228, 4236, and 4237.

[7]    Any summary of the Global Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Global Settlement Agreement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Global Settlement Agreement, the actual terms and conditions of the Global Settlement Agreement shall control.

Robinhood Proceeds and/or the Seized Cash to any of the FTX Debtors;

(ii)     Emergent will waive and release for all purposes any and all Claims against the FTX Debtors or with respect to any property in which the FTX Debtors have held or may hold any conflicting interest, including (1) the Emergent Claims and all other claims, arguments, defenses, rights, and otherwise with respect to any property transferred between and among Emergent and the FTX Debtors, and (2) the Robinhood Shares, the Robinhood Proceeds, and the Seized Cash;

(iii)    all of the Emergent Proofs of Claim shall be deemed disallowed and expunged in the FTX Bankruptcy Proceedings;

(iv)     Emergent shall withdraw the Emergent Forfeiture Petitions, with prejudice, and none of Emergent, the Joint Liquidators, the Emergent Professionals, or Fulcrum will seek to recover from any assets seized or forfeited by the U.S. Department of Justice relating to the FTX Debtors;

(v)      Emergent and the Joint Liquidators shall be deemed to have assigned to the FTX Debtors all of their rights (if any) with respect to the Robinhood Shares, the Robinhood Proceeds, and the Seized Cash held by the U.S. Department of Justice, including in connection with any forfeiture, restitution or other legal proceeding, process, or distribution with respect to such assets;

(vi)     Emergent, the Joint Liquidators and the FTX Debtors shall use commercially reasonable efforts to cooperate to promptly obtain agreement from the U.S. Department of Justice to release to the FTX Debtors the Robinhood Proceeds and the Seized Cash;

(vii)    Emergent, the Joint Liquidators, and Fulcrum shall not (i) object or, directly or indirectly, seek, solicit, support, encourage, or participate in any discussions or agreement to object, to any FTX Plan so long as such plan is consistent with the terms and conditions of the Global Settlement Agreement; or (ii) appear or make any filings in the FTX Bankruptcy Proceedings, the Emergent Bankruptcy Proceedings, or the Antigua Proceedings in any way adverse to any position taken by the FTX Debtors or inconsistent with the Global Settlement Agreement other than as necessary to exercise or defend their rights under the Global Settlement Agreement;

(viii)   if still pending, the FTX Debtors shall cause the dismissal or withdrawal of the BlockFi Action as to Emergent promptly;

(ix)     Emergent, the Joint Liquidators, and Fulcrum will waive and release for all purposes all claims against the FTX Debtors arising out of or relating to the Open Matters, except (a) any obligation under or claim for breach of this Global Settlement Agreement or (b) any claim or defense assertable

by Emergent and/or the Joint Liquidators against Samuel Bankman-Fried in connection with the Antigua Proceedings;

(x)     the FTX Debtors will waive and release for all purposes all claims against Emergent, the Joint Liquidators, and Fulcrum arising out of or relating to the Open Matters, except any obligation under or claim for breach of the Global Settlement Agreement; and

(xi)    The FTX Debtors and Emergent will work cooperatively to promptly and efficiently conclude the Emergent Chapter 11 Case.

## Jurisdiction

20.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the FTX Debtors and Emergent consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

21.     By this Motion, the FTX Debtors and Emergent request entry of the Order, substantially in the form attached hereto as Exhibit 1, (a) authorizing the FTX Debtors' and Emergent's entry into, and performance under, the Global Settlement Agreement, (b) approving the Global Settlement Agreement, and (c) granting certain related relief.

**Basis for Relief**

22.     Given the scope of the disputes between the Parties concerning their respective rights and obligations concerning the Robinhood Proceeds and Seized Cash, Emergent Claims, the Financing Agreement, and other issues, the burden, delay, expense, and uncertainty associated with litigation would be substantial.  To avoid these costs and delay, and to best ensure the FTX Debtors obtain the value of the Robinhood Proceeds and Seized Cash for distribution to their creditors, the FTX Debtors and Emergent have each determined that entry into the Global Settlement Agreement is in the best interests of their respective estates and a valid exercise of business judgment.  (Ray Decl. ¶¶ 7-10; Barkhouse Decl. ¶¶ 15-23.)

23.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co*., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. at 424).

24.     "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc*., 211 B.R.

798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations omitted)).

25. Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).  Taken together, Bankruptcy Code section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

26. The Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel*, 222 B.R. at 249-50 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).  The test boils down to "whether the terms of the proposed compromise fall within the reasonable range of litigation

possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (internal citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).  The Global Settlement Agreement plainly satisfies this standard.

I.    **The Global Settlement Agreement Is Fair, Reasonable, and in the FTX Debtors' Best Interests.**

27.    The Global Settlement Agreement provides material value to the FTX Debtors' estates through, among other things, Emergent's agreement to withdraw the Emergent Forfeiture Petitions and assign all of its and the Joint Liquidators' purported rights to the Robinhood Proceeds and Seized Cash to the FTX Debtors.  This removes a significant obstacle to the U.S. Department of Justice agreeing to provide those assets—worth more than $600 million— to the FTX Debtors for distribution to creditors through the FTX Plan.  (Ray Decl. ¶ 5.)  In fact, the Global Settlement Agreement ensures the cooperation of Emergent and the Joint Liquidators in the FTX Debtors' efforts to reach agreement with the U.S. Department of Justice regarding those assets.  The Global Settlement Agreement also expunges the Emergent Claims without litigation.  In return, the FTX Debtors are providing a single cash payment of $14 million to address Emergent's administrative obligations, including the Fulcrum Financing Agreement, at a significant discount.  (Ray Decl. ¶ 6.)

28.    Accordingly, the Global Settlement Agreement and its terms are fair and equitable, fall well within the range of reasonableness, satisfy each of the applicable *Martin* factors with respect to the FTX Debtors, and should be approved.

29.    **The Emergent Litigation.**  The FTX Debtors maintain that their ownership interests in the Robinhood Proceeds and Seized Cash are superior to Emergent's for numerous reasons, including because the source of the funds originated with Alameda, and are prepared to litigate the merits of their interests.  However, Emergent may be able to assert successfully that it is the actual and beneficial owner of the account that previously held the Robinhood Shares and

Seized Cash and therefore have some interest in the Robinhood Proceeds.  Emergent may also be able to claim that it acquired the Robinhood Shares as a bona fide purchaser for value.  These issues only complicate the timing of, and introduce uncertainty as to, when the FTX Debtors would be able to secure the release from the U.S. Department of Justice of the Robinhood Proceeds and Seized Cash in the absence of agreement with Emergent.  (Ray Decl. ¶ 8.)  Without the Global Settlement Agreement, the FTX Debtors would be forced to expend time and resources litigating these issues in the Criminal Case, with the timing for resolution and outcome of those proceedings uncertain.  Avoiding protracted litigation with respect to the Forfeiture Proceeds and Seized Cash is in the best interests of the FTX Debtors' creditors, who will ultimately benefit from the release of those assets for distribution.  (*Id*.)

30.    In the absence of the Global Settlement Agreement, the FTX Debtors would also need to separately litigate the Emergent Claims and the facts and circumstances surrounding the transfers identified in those Claims, while the Global Settlement Agreement resolves them favorably.  Thus, continuing to pursue litigation in multiple forums would be time-consuming and costly, and ultimately dilute distributable value available to the FTX Debtors.  (Ray Decl. ¶ 9.)

31.    Given the attendant costs, delays, and risk inherent in litigation, and the favorable terms of the Global Settlement Agreement, the FTX Debtors believe that the Global Settlement Agreement is in the best interests of their creditors.  (*Id.* ¶ 10.)

32.    **The Paramount Interests of Creditors.**    The Global Settlement Agreement is overwhelmingly in the best interest of FTX Debtors' estates and their stakeholders because, in exchange for a single $14 million payment to pay administrative costs from work that benefitted the FTX Debtors' creditors, it resolves litigation on multiple fronts and removes a significant obstacle to recovering more than $600 million through the U.S. Department of Justice.

Case 22-11068-JTD    Doc 24320    Filed 09/06/24    Page 14 of 18

33.     Therefore, in the FTX Debtors' business judgment, the value of entering into the Global Settlement Agreement now far exceeds the net benefits that the FTX Debtors and their estates likely would obtain from continuing on the alternative litigation path for an extended period of time in multiple forums.  (Ray Decl. ¶ 10.)

34.     The FTX Debtors have discussed the Global Settlement Agreement with counsel to the Committee and the Ad Hoc Committee of Non-U.S. Customers, and currently expect no objection from either key stakeholder group.

35.     The FTX Debtors submit that the Global Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the FTX Debtors, their estate, and their stakeholders.  As a result, the FTX Debtors respectfully request that the Court approve the Global Settlement Agreement and authorize the FTX Debtors to enter into and perform under it.

## II.     The Global Settlement Agreement Is Fair, Reasonable, and in Emergent's Best Interests.

36.     The Global Settlement Agreement is also fair and reasonable from the perspective of Emergent and its creditors—who the Joint Liquidators have determined are at this point the FTX Debtors and the creditors of the FTX Debtors' estates. (Barkhouse Decl. ¶ 13.)  The Global Settlement Agreement ensures the funding of the administrative costs incurred by Emergent and the Joint Liquidators, and provides for a path for the orderly and efficient conclusion of the Emergent Chapter 11 Case.

37.     **Interest of Creditors**.  The Global Settlement Agreement will permit the vast majority of the value of the Robinhood Proceeds and the Seized Cash to be distributed to the FTX Debtors' creditors through an existing plan process under the Court's oversight, thus ensuring a fair, efficient, and prompt disposition of those assets.  (Barkhouse Decl. ¶ 18.)

38.     The Global Settlement Agreement also creates a pathway for the orderly and efficient termination of the Emergent Chapter 11 Case and the Antiguan liquidation proceedings, which will no longer be needed given the absence of material assets or disputes.  This fact allowed the Joint Liquidators to accept a relatively modest settlement amount, leaving the rest for distribution to creditors of the FTX Debtors.  (*Id.*)

39.     **Support of Key Constituents**.  Only two purported creditors have appeared in the Emergent Chapter 11 Case: BlockFi and the FTX Debtors.  BlockFi has relinquished all interest in the Robinhood Proceeds and the Seized Cash, and assigned those rights to the FTX Debtors—the settlement counterparties.  (*Id.* ¶ 20.)

40.     **Elimination of Complex, Costly and Time-Consuming Litigation**.  The Global Settlement Agreement eliminates the need for Emergent to continue prosecuting a claim in the Criminal Case.  Pursuing the Emergent Forfeiture Petitions would require the Joint Liquidators to put on a substantial evidentiary and legal case.  Assuming Emergent were to prevail in that action, it would then likely have to defend a fraudulent transfer action by the FTX Debtors.  The Joint Liquidators do not have access to the financial resources to litigate all of these matters to conclusion and doing so would likely tie up the Robinhood Proceeds and Seized Cash for years, preventing creditors from realizing any value from them in the meantime.  (*Id.* ¶ 21.)

41.     **Likelihood of Success in Litigation**.  Even assuming the Joint Liquidators could afford to litigate these matters to conclusion, there is a risk that the Joint Liquidators would not prevail given the circumstances and timing under which the Robinhood Shares were acquired.  If the Joint Liquidators lost either in the Criminal Case or in a subsequent fraudulent transfer action, they would be unable to pay even accrued professional fees.  (*Id.* ¶ 22.)

42.     For all of the foregoing reasons, the Global Settlement Agreement is both reasonable and highly beneficial to all stakeholders.  The Global Settlement Agreement will

prevent the unneeded further expenditure of resources in connection with the Robinhood Proceeds and the Seized Cash, ensure those assets are administered efficiently under the Court's oversight, provide for an efficient pathway to the conclusion of the Emergent Chapter 11 Case and Antigua Proceedings, and pay reasonable compensation to professionals and Fulcrum.

### Waiver of Bankruptcy Rule 6004(h)

43.      Given the nature of the relief requested herein, the FTX Debtors and Emergent respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to maximize the value of the FTX Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

### Reservation of Rights

44.      Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the FTX Debtors, Emergent, or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the FTX Debtors, Emergent, or their estates to contest the validity, priority, or amount of any claim against the FTX Debtors, Emergent, or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the FTX Debtors, Emergent, or their estates with respect to any and all claims or causes of action against any third party.

### Notice

45.      Notice of this Motion has been provided to:    (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) Emergent; (e) the

Joint Liquidators; (f) Fulcrum; (g) the United States Department of Justice; (h) the United States Attorney for the District of Delaware; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The FTX Debtors and Emergent submit that, in light of the nature of the relief requested, no other or further notice need be provided.

<u>**Conclusion**</u>

WHEREFORE, for the reasons set forth herein, the FTX Debtors and Emergent respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit 1</u>, and (b) grant such other and further relief as is just and proper.

Dated: September 6, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the FTX Debtors and Debtors-in-Possession*

Dated:  September 6, 2024
        Wilmington, Delaware

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*

Jody C. Barillare (Bar No. 5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
Telephone: (302) 574-3000
Email: jody.barillare@morganlewis.com

-and-

John C. Goodchild, III (admitted *pro hac vice*)
Matthew C. Ziegler (admitted *pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Email: john.goodchild@morganlewis.com
Email: matthew.ziegler@morganlewis.com

-and-

Craig A. Wolfe (admitted *pro hac vice*)
Joshua Dorchak (admitted *pro hac vice*)
David K. Shim (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Email: craig.wolfe@morganlewis.com
Email: joshua.dorchak@morganlewis.com
Email: david.shim@morganlewis.com

*Counsel for Emergent Fidelity*
*Technologies Ltd as Debtor and Debtor-in-*
*Possession*