# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>                              Debtors. | ) Chapter 11<br>)<br>) Case No. 22-11068 (JTD)<br>)<br>) (Lead Case)<br>)<br>) (Jointly Administered)<br>) |

**DECLARATION OF ANGELA BARKHOUSE IN SUPPORT OF THE MOTION OF THE FTX DEBTORS AND EMERGENT FIDELITY TECHNOLOGIES LTD. FOR ENTRY OF AN ORDER (A) AUTHORIZING ENTRY INTO, AND PERFORMANCE UNDER, THE GLOBAL SETTLEMENT AGREEMENT AMONG THE FTX DEBTORS, EMERGENT FIDELITY TECHNOLOGIES LTD., THE JOINT LIQUIDATORS, AND FULCRUM DISTRESSED PARTNERS LIMITED; (B) APPROVING THE GLOBAL SETTLEMENT AGREEMENT; AND (C) GRANTING RELATED RELIEF**

I, Angela Barkhouse, declare as follows:

1.  I am a Managing Director of Kroll Advisory (Cayman) Ltd., a financial, restructuring, and forensic advisory firm that operates in various locations around the world, including in the Caribbean. I am resident in the Cayman Islands. My colleague Toni Shukla of Kroll Advisory (BVI) Limited (resident in the British Virgin Islands) and I are the Joint Liquidators of Emergent Fidelity Technologies Ltd ("Emergent"), a company formed under the laws of Antigua and Barbuda.[1] On November 18, 2022, the Eastern Caribbean Supreme Court, High Court of Justice, Antigua and Barbuda (the "Antiguan Court") entered an order appointing us as receivers over Emergent. Shortly thereafter, we were appointed as joint provisional liquidators for Emergent by an order dated December 5, 2022. We were later appointed as joint liquidators by an order dated March 23, 2023, when the Antiguan Court converted Emergent's case from a provisional

---

[1] As of the Emergent Petition Date, Ms. Shukla and I were employed by Quantuma (BVI) Limited and Quantuma (Cayman) Limited, respectively. In April 2024, Ms. Shukla and I became employed by Kroll Advisory (BVI) Limited and Kroll Advisory (Cayman) Ltd., respectively.

liquidation to a full liquidation (the "Winding Up Order," and the collective proceedings in Antigua, the "Antiguan Proceedings"). For ease of reference, I refer to us as the "JLs" throughout this Declaration, whether we were acting in our capacity as receivers, joint provisional liquidators, or joint liquidators at the relevant time.

2. I submit this Declaration in support of the *Motion of The FTX Debtors And Emergent Fidelity Technologies Ltd for Entry of an Order (A) Authorizing the Entry Into, and Performance Under, the Global Settlement Agreement Among The FTX Debtors, Emergent Fidelity Technologies Ltd, the Joint Liquidators, and Fulcrum Distressed Partners Limited; (B) Approving the Global Settlement Agreement; and (C) Granting Related Relief* (the "Motion"), which the JLs believe is in the best interest of Emergent's estate and is necessary to preserve and maximize the value available to that estate. I have reviewed and am familiar with the contents of the Motion and the Global Settlement Agreement.[2] Except as otherwise indicated, the facts set forth herein are based upon my personal knowledge, my review of relevant documents and information in connection with the JLs' investigation of Emergent's affairs, information provided to me by the professionals that have been engaged to advise the JLs, or my opinion based upon my restructuring and forensic accounting experience.

**A.    The Emergent Assets**

3. On February 3, 2023 (the "Emergent Petition Date"), Emergent filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing this case (the "Emergent Chapter 11 Case") in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), under the JLs' direction.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Global Settlement Agreement.

4.  At the time of its bankruptcy filing, Emergent owned title to approximately 55 million shares of Robinhood Markets, Inc. (the "Robinhood Shares") and approximately $20.7 million in cash proceeds from the sale of other shares (together with the Robinhood Shares, the "Emergent Assets").[3] With the JLs' consent, and the approval of the U.S. District Court for the Southern District of New York, the U.S. Department of Justice (the "DOJ") sold the Robinhood Shares for cash proceeds of $605,694,412 on August 31, 2023. Per the District Court's approval order, all existing interests in and claims against the Emergent Assets were preserved through the monetization of the shares and attach to the proceeds. Today, the JLs understand the total value of the Emergent Assets is $626,441,126. As set forth below, these assets remain subject to a forfeiture proceeding commenced by the DOJ.

**B.    Claims Against and Controversies Associated with the Emergent Assets**

5.  As detailed in the Barkhouse First Day Declaration, since 2022, the Emergent Assets have been the subject of numerous alleged ownership and security interests. *See* Barkhouse First Day Declaration ¶ 11.

6.  As a result of these competing interests, there are and have been numerous proceedings against or involving Emergent in disparate forums, namely:

   i.  Both receivership (in which the JLs act as receivers) and liquidation proceedings in the Antiguan Court, which Mr. Bankman-Fried has up until now vigorously contested in an apparent although misguided effort to regain control of Emergent;

---

[3] For additional background information on Emergent and the circumstances leading to the filing of the Emergent Chapter 11 Case, I refer this Court to paragraphs 9 through 32 of my previous declaration submitted in the Emergent Chapter 11 Case, *Declaration of Angela Barkhouse in Support of the Debtor's Chapter 11 Petition* ("Barkhouse First Day Declaration") [D.I. 3, Case No. 23-10149]. This Declaration incorporates by reference the facts set forth in that declaration.

ii. an adversary proceeding commenced by BlockFi Inc. and certain of its affiliates (collectively, "BlockFi") against Emergent and Marex Capital Markets, Inc. in the U.S. Bankruptcy Court for the District of New Jersey, seeking to enforce BlockFi's alleged security interest in the Emergent Assets (Adv. Pro. No. 22-19361 (MBK), the "BlockFi Action"); and

iii. a proceeding commenced by the DOJ in Mr. Bankman-Fried's criminal case seeking to obtain forfeiture of the Emergent Assets (the "Forfeiture Action").

*See also* Barkhouse First Day Declaration ¶ 12.

7. On or around February 27, 2024, the FTX Debtors reached a settlement with BlockFi that resolved the substance of the BlockFi Action by providing for the assignment of BlockFi's rights (if any) in the Emergent Assets to the FTX Debtors. The Bankruptcy Court approved this settlement on March 25, 2024. *See Order (A) Authorizing the Debtors to Enter into the Global Settlement with BlockFi, (B) Approving the Global Settlement Agreement, and (C) Granting Related Relief,* FTX Bankruptcy Proceedings [D.I. 10331], Ex. 1 ¶ 1(d)(i).

8. The Forfeiture Action remains in process.

9. Notably, the JLs have been unable to secure any funding other than the February 2023 Fulcrum Loan (described below), the proceeds of which have been exhausted. The JLs and all of their professionals have been performing their respective roles without compensation since then.

**C. The JLs' Role in Protecting Emergent and its Assets**

10. Pursuant to the Winding Up Order and its predecessor orders, the JLs are authorized (among other things) to:

  i. "investigate [Emergent's] affairs and to preserve the value of [Emergent's] assets for the benefit of those entitled to them" Barkhouse First Day Declaration Ex. B ¶ 2;

  ii. "bring, defend or take part in any civil, criminal or administrative action or proceeding in the name and on behalf of [Emergent]" Barkhouse First Day Declaration Ex. B ¶ 3(b); and

  iii. "carry on the business of the [Emergent] as required for a[n] orderly liquidation," subject to Antiguan Court approval for the sale or encumbrance of assets or the settlement of creditor claims. Barkhouse First Day Declaration Ex. B ¶ 3(c).

11. Since 2022, the JLs have worked diligently to accomplish these objectives.

12. The JLs have protected Emergent and the Emergent Assets by, among other things:

  i. preventing the dissipation of the Emergent Assets by Mr. Bankman-Fried, who was attempting to sell the Robinhood Shares to the detriment of the victims of the FTX collapse;

  ii. initiating the Emergent Chapter 11 Case, which, among other things, assisted in the defense against the BlockFi Action;

  iii. successfully defending against challenges by Mr. Bankman-Fried and BlockFi to the receivership and liquidation proceedings. Barkhouse First Day Declaration ¶ 19;

  iv. negotiating stipulations with BlockFi and the FTX Debtors that provided for the exchange of information pertinent to the Emergent Assets and the stay of litigation related thereto. *See Order Approving the Stipulation Staying Litigation and Related Discovery Concerning the Robinhood Asset*s, BlockFi Action [D.I. 64]; *Order Approving*

*Stipulation Staying Litigation and Related Discovery*, FTX Bankruptcy Proceedings [D.I. 1297];

    v.    engaging in additional efforts to protect and preserve Emergent's interests in the Emergent Assets, including but not limited to (i) filing four proofs of claim against the FTX Debtors in the FTX Bankruptcy Proceedings and (ii) filing a petition in the Forfeiture Action asserting Emergent's interests in and rights to the Assets;

    vi.    negotiating and obtaining Antiguan Court approval of a Liquidation Funding Agreement with Fulcrum Distressed Partners Limited ("Fulcrum," and such loan, the "Fulcrum Loan"), which added value by making financing available in a highly risky scenario that allowed the Emergent Chapter 11 Case to be commenced and the JLs to continue their defense against Mr. Bankman-Fried's extensive litigation efforts in Antigua; and

    vii.    conducting an investigation into the origins of the Emergent Assets and the rightful claims against those assets, as set forth below.

### D. The JLs' Investigative Conclusions

13. The JLs have conducted an investigation of Emergent's history and affairs, as mandated by the Antiguan Court, and have concluded the following:

    i.    Emergent is a special-purpose entity that was created for the purpose of acquiring the Robinhood Shares. Emergent did not conduct any other business and did not have any other source of income. Emergent did not borrow money from any third parties, other than margin loans from Marex that were fully repaid.

    ii.    Before Emergent was placed under the JLs' control, it was controlled exclusively by the same individuals who controlled the FTX Debtors.

   iii. Emergent received the Emergent Assets from the FTX Debtors.

   iv. The only potential creditors of Emergent, other than BlockFi (which has settled its claims against Emergent) and the FTX Debtors, are creditors of the FTX Debtors' estates, whose claims against Emergent would be derivative of their claims against the FTX Debtors.

14. These conclusions are substantiated by the course of the Emergent Chapter 11 Case and the Antiguan Proceedings. During the Emergent Chapter 11 Case, no purported creditor other than the FTX Debtors and BlockFi has come forward. *See Order (A) Authorizing the Debtors to Enter into the Global Settlement with BlockFi, (B) Approving the Global Settlement Agreement, and (C) Granting Related Relief*, FTX Bankruptcy Proceedings [D.I. 10331].

15. The JLs have therefore concluded that the Emergent Assets should be administered for the benefit of the FTX Debtors' creditors, less the administrative costs incurred by the JLs in connection with preserving the Emergent Assets, administering the Emergent Chapter 11 Case and the Antiguan Proceedings, and conducting their investigations. It is prudent to accomplish this through the FTX Debtors' existing chapter 11 plan process, rather than conducting a separate process through the Emergent Chapter 11 Case or the Antiguan Proceedings, which would be time consuming and inefficient.

**E.** **The Use of the Settlement Proceeds**

16. The $14 million in settlement proceeds payable to the JLs will be used solely to fund accrued administrative expenses and the winding down of the Emergent Chapter 11 Case and the Antiguan Proceedings. The JLs estimate that total accrued and unpaid professional fees through August 31, 2024 (for the JLs themselves, their offshore counsel, and their U.S. counsel) amount to approximately $5,946,034.28. The JLs further estimate that the costs of concluding the

U.S. and Antiguan Proceedings will amount to approximately $3.6 million, which includes an estimated $1.5 million reserved in the event that Mr. Bankman-Fried continues litigating in Antigua and a response from the JLs is necessary. The balance will be paid to Fulcrum in satisfaction of the Fulcrum Loan. Each of these payments will be made under the oversight of the Antiguan Court, which has the power to approve professional fees, and which approved the Fulcrum Loan.

17. Under the Liquidation Funding Agreement, Fulcrum is currently entitled to payment of $14,446,119. Under the Global Settlement Agreement, Fulcrum will receive a fraction of that amount. In agreeing to the Global Settlement Agreement, Fulcrum has made a substantial concession. Absent such a concession, the Global Settlement Agreement would not have been possible.

**F.  Merits of the Settlement**

18. *Interest of creditors.* The Global Settlement Agreement will permit the vast majority of the value of the Emergent Assets to be distributed to the FTX Debtors' creditors through an existing plan process under the Bankruptcy Court's oversight, thus ensuring a fair, efficient, and prompt disposition of those assets.

19. The Global Settlement Agreement also creates a pathway for the orderly and efficient termination of the Emergent Chapter 11 Case and the Antiguan Proceedings, which will no longer be needed given the absence of material assets or disputes. This fact allowed the JLs to accept a relatively modest settlement amount, leaving the rest for distribution to creditors.

20. *Support of key constituents.* Only two purported creditors have appeared in the Emergent Chapter 11 Case: BlockFi and the FTX Debtors. BlockFi has relinquished all interest

in the Emergent Assets, and, accordingly, has no reason to oppose the Global Settlement Agreement. The FTX Debtors are the Global Settlement Agreement counterparties.

21. *Elimination of complex, costly and time-consuming litigation.* The Global Settlement Agreement eliminates the need for Emergent to continue prosecuting a claim in the Forfeiture Action. Doing so would require the JLs to put on a substantial evidentiary and legal case. Assuming Emergent were to prevail in that action, it would then likely have to defend a fraudulent transfer action by the FTX Debtors. The JLs do not have access to the financial resources to litigate all of these matters to conclusion and doing so would likely tie up the Emergent Assets for years, preventing creditors from realizing any value from them in the meantime.

22. *Likelihood of success in litigation.* Even assuming the JLs could afford to litigate these matters to conclusion, there is a risk that the JLs would not prevail, given the circumstances and timing under which the Emergent Assets were acquired. If the JLs lost either in the Forfeiture Action or in a subsequent fraudulent transfer action, they would be unable to pay even accrued professional fees.

23. For all the foregoing reasons, it is my view that the Global Settlement Agreement is not only reasonable, but highly beneficial to all stakeholders. The Global Settlement Agreement will prevent the unneeded further expenditure of resources in connection with the Emergent Assets, ensure those assets are administered efficiently under the Bankruptcy Court's oversight, provide for an efficient pathway to the conclusion of the Emergent Chapter 11 Case and Antiguan Proceedings, and pay reasonable compensation to professionals and Fulcrum.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*[signature page follows]*

Dated: September 5, 2024 　　　　　　　　　Respectfully submitted,

_____
Angela Barkhouse