THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>Re D.I. 20017 |

**RESPONSE OF NORTH FIELD TECHNOLOGY LTD. TO DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY NORTH FIELD TECHNOLOGY, LTD.**

North Field Technology Ltd. ("North Field") hereby responds (the "Response"), through its undersigned counsel, to the *Debtors' Objection to Proofs of Claim Filed by North Field Technology, Ltd.* [D.I. 20017] (the "Objection"). In support of its Response, North Field respectfully states:

**Introduction**[1]

1. North Field's seven proofs of claim seek the return of a certain 719.595 in Stolen Bitcoin, 685 of which (as defined below, the "Ren BTC") were improperly transferred to Ren, a non-debtor entity, and 34.595 of which (as defined below, the "Frozen BTC") were improperly transferred to the FTX platform. North Field's ownership in full of these Stolen Bitcoin has already been adjudicated. Prior to the start of these bankruptcy cases, a federal court in *Leidl v. Project Investors Inc.*, Case No. 9:16-cv-80060-KAM (S.D. Fla.) (the "District Court"), issued a final judgment and permanent injunction holding that all 719.595 in Stolen Bitcoin are the property of, and should be returned to, North Field. Even more important, the District Court issued a civil contempt order against non-debtor Ren requiring it to immediately transfer to North Field the Ren BTC, which had been improperly transferred to Ren's platform, and which Ren subsequently gave

---

[1] Capitalized terms not otherwise defined in the Introduction section shall have the meanings provided elsewhere in this Response.

72408358\10

to FTX to hold for safekeeping. This alone establishes, at the very least, a *prima facie* showing of the validity of North Field's claims.

2. The District Court's civil contempt order against Ren, however, is not merely a *prima facie* showing. It is determinative. It declares North Field's right to receive from non-debtor Ren either the return of the Ren BTC or payment of its equivalent value. In other words, a federal court has already adjudicated Ren's liability for claims 3310, 3321, 3328, and 3357, and North Field need only enforce that order against Ren. Just as important, the Debtors' Objection, which disclaims any ownership interest in the Ren BTC, establishes that such an enforcement proceeding does not belong in this Court, as Ren is not a Debtor. The Debtors' Objection concedes that Ren "is owned by the Ren Entities," that "none of the Ren Entities are Debtors in these Chapter 11 Cases," and that the transfer of the Stolen Bitcoin "to 'distinct segregated [] cold storage wallets' controlled by the Debtors does not mean that North Field's Claims are valid as against any Debtor." (Objection ¶¶ 35-36). As a result, as to the Ren BTC, the Debtors have essentially conceded that those proceedings should happen outside of this Court. If not for the fact that one or more of the Debtors may be holding some or all of the Ren BTC on Ren's behalf, North Field need not involve the Debtors in its proceeding against Ren at all.

3. Accordingly, North Field is filing contemporaneously with this Response a motion to lift the automatic stay so that North Field will be able to seek enforcement of the District Court civil contempt order for return of the Ren BTC outside of these bankruptcy cases. Assuming that the Court grants North Field's stay relief motion (perhaps the Debtors will consent to relief, given their disclaimer of any ownership rights to the Ren BTC), North Field is optimistic that it will be able to count on the Debtors' cooperation in seeing to it that Ren complies with the civil contempt order by transferring the Ren BTC to North Field.

4.  As to the claims (3285, 3496, and 3800) seeking the return of the Frozen BTC transferred onto the FTX platform, in support of their Objection the Debtors rely entirely on the Cunha Declaration (as defined below), which was finalized just a day before the Debtors filed their Objection. The Cunha Declaration attempts to challenge the tracing analysis made in the December 30, 2022 declaration of Roman Bieda, which accompanied North Field's claims 3285, 3496 and 3800, and Mr. Bieda's earlier December 27, 2022 declaration, which was reviewed and relied upon by the District Court. The Cunha Declaration, however, at best only highlights that facts and expert opinions as to the Frozen BTC transferred to the FTX platform will be disputed, therefore necessitating factual and expert discovery and a subsequent hearing.

5.  Additionally, given the Debtors' submission of the Cunha Declaration, North Field submits herewith the September 9, 2024 declaration of Roman Bieda (the "Bieda Declaration"), which, among other things, identifies serious deficiencies with the Cunha declaration. In particular, Mr. Cunha's critiques of Mr. Bieda's methodology are flawed, and belie a lack of experience and knowledge on Mr. Cunha's part. Perhaps more importantly, Mr. Cunha offers no explanation whatsoever of what he believes should be the "correct" tracing analysis. This latter deficiency does not bode well for the Debtors should this Court eventually apply the "preponderance of the evidence" standard to this contested matter.

6.  In any event, the existence of these dueling reports, at best for the Debtors, highlights the necessity for factual and expert discovery, and likely a hearing, on claims 3285, 3496, and 3800. This is an additional reason to deny the Debtors' Objection, as the Objection is based solely on the Debtors' assertion that North Field's claims are not entitled to *prima facie* validity pursuant to Bankruptcy Rule 3001(f).

7.      It is worth noting that the Debtors' challenges to the Bieda declarations are an exercise in misdirection.  The Debtors operate a digital asset platform.  Tracing bitcoin across the blockchain and onto their platform was part of their everyday business.  Yet, as mentioned, neither Mr. Cunha nor the Debtors have disclosed what *their* tracing reveals, or what they believe to be the "correct" methodology.  The District Court's permanent injunction – which was issued pre-petition and was binding on the Debtors while they were still operating – required them to conduct such tracing, ordering FTX and Ren to locate the Stolen Bitcoin on their platforms and freeze it.  The Debtors should disclose what their internal tracing reveals.  As it stands, at best for the Debtors, this is just another area that must be explored in discovery as to claims 3285, 3496 and 3800.

8.      Finally, the Debtors argue that North Field's filing of four proofs of claim (3310, 3321, 3328, and 3357) seeking return of the 685 Stolen Bitcoin transferred to Ren and three proofs of claim (3800, 3285, and 3496) for the return of the 34.595 Stolen Bitcoin transferred onto the FTX platform are duplicative.  But the Debtors avoid addressing the obvious necessity of these filings.  North Field is not seeking multiple recoveries.  Rather, North Field is simply protecting itself by filing its claims against all Debtor entities that may possess all or a portion of the Stolen Bitcoin and/or that are potentially liable.  As is common in jointly administered chapter 11 cases, the bar date order required the claimant to file a proof of claim or otherwise identify each separate debtor against which it asserts its claim(s).  Claimants are therefore careful to file separate proofs of claim against *each* of the specific debtors against which it holds claim(s).  The bar date process in these cases is no different.  Creditors filing proofs of claim were required to identify the specific Debtors against which such claims were filed.  In any event, the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* (D.I. 22165) (the "<u>Plan</u>") and

the Plan Supplement (D.I. 22163-9) appear to indicate that the Debtors against which North Field filed its proofs of claim are to be substantively consolidated. North Field seeks only a single recovery for the return of, respectively, the 685 Stolen Bitcoin (which claims should be removed from this bankruptcy once the stay is lifted) and the 34.595 Stolen Bitcoin and would be happy to work out language in an order or stipulation that would eliminate any duplicative claims.

9. For these reasons, and as discussed in more detail below, the Debtors' Objection should be denied.

**Background**

10. Contemporaneously with this Response, North Field is filing the Bieda Declaration in support. North Field hereby incorporates the Bieda Declaration into this Response by reference.

11. North Field timely filed a total of seven proofs of claim in the above-captioned cases (together, the "Claims").[2] The Claims concern a certain 719.595 in bitcoin that had been stolen from North Field's predecessor-in-interest,[3] and which the District Court held, in a series of pre-petition rulings, is owned by North Field (as defined in the Claims, the "Stolen Bitcoin"). The Claims consist of two distinct sets – one of four, and the other of three – with the Claims in each set being materially identical save for the identity of the Debtor against which each is asserted. Each set concerns a separate portion of the Stolen Bitcoin.

12. First, North Field filed Claims 3310, 3321, 3328, and 3357 (together, the "Ren Claims") against, respectively, Debtors West Realm Shires Services Inc., Maclaurin Investments Ltd., Alameda Research LLC, and FTX Trading Ltd. Each Ren Claim is in the amount of 685

---

[2] References to the Claims shall include the Addendum and all other supporting materials attached to the Claims.
[3] North Field's predecessor-in-interest is the Plaintiff Class in a certain lawsuit in the District Court titled *Leidel v. Project Investors, Inc.*, Case No. 9:16-cv-80060-KAM. Pursuant to a certain assignment agreement approved by the District Court in connection with this lawsuit, North Field acquired the plaintiff class's rights to pursue and collect the Stolen Bitcoin, including without limitation all of the plaintiff class's rights with respect to the Claims. References in this Response to North Field shall mean North Field as assignee of the plaintiff class and/or North Field in its own right, as applicable.

5

BTC, and each is based on North Field's rights, pursuant to a certain order (the "Turnover Order") issued by the District Court, to take possession of a certain 685 BTC (the "Ren BTC") from non-debtor the Ren Project ("Ren"),[4] as well as the District Court's other rulings declaring North Field the owner of the Stolen Bitcoin. The Ren BTC is one of two portions of the Stolen Bitcoin at issue in these bankruptcy cases.

13. The Addendum attached to each Ren Claim recites the relevant background information in detail. In lieu of repeating those recitations here, North Field incorporates the Ren Claims into this Response by reference.[5]

14. Second, North Field filed Claims 3800, 3285, and 3496 (together, the "Frozen BTC Claims"), against, respectively, Debtors West Realm Shires Services Inc., West Realm Shires Financial Services Inc., and FTX Trading Ltd. Each Frozen BTC Claim is in the amount of 34.595 BTC, and each is based on North Field's rights, pursuant to certain judgments and orders issued by the District Court, requiring all parties in possession of the Stolen Bitcoin to locate, freeze, and turn over that Bitcoin to North Field. As described below, North Field has traced a 34.595 portion of the Stolen Bitcoin (the "Frozen BTC") into the Debtors' possession. The Frozen BTC, together with the Ren BTC, comprise the Stolen Bitcoin.

15. The Addendum attached to each Frozen BTC Claim recites the relevant background information in detail. In lieu of repeating those recitations here, North Field incorporates the Frozen BTC Claims into this Response by reference.

16. Among other things, the Ren Claims each attach a copy of a certain supporting Declaration of Roman Bieda dated December 30, 2022 (the "December 30, 2022 Bieda

---

[4] Ren is a non-Debtor entity that, based on the Debtors' public representations, may be an indirect or direct subsidiary of one or more of the Debtors.
[5] Capitalized terms not otherwise defined in this Response shall have the meanings given in the Ren Claims and/or the Frozen BTC Claims, as applicable.

72408358\10

Declaration"). A copy of the December 30, 2022 Bieda Declaration is attached to this Response as Exhibit "A." In addition, on December 27, 2022, North Field filed a separate Declaration of Roman Bieda in the District Court litigation, this one dated December 27, 2022 (the "December 27, 2022 Bieda Declaration," and, together with the December 30, 2022 Bieda Declaration, the "2022 Bieda Declarations"). A copy of the December 27, 2022 Bieda Declaration is attached to this Response as Exhibit "B." North Field hereby incorporates the 2022 Bieda Declarations into this Response by reference. As explained in detail in the 2022 Bieda Declarations, North Field has traced the Ren BTC into Ren's possession, and the Frozen BTC into the Debtors' possession.

17. On July 10, 2024, the Debtors filed the Objection, in which they request that the Court disallow and expunge the Claims in their entirety. The Objection rests two grounds: (i) that the Claims are duplicative; and (ii) that the Claims are not entitled to *prima facie* validity. The Debtors base the latter argument on their assertion that the Claims are unaccompanied by sufficient evidence to support *prima facie* validity. In particular, they find fault with North Field's tracing of the Stolen Bitcoin into the possession of either the Debtors or Ren (as appliable). North Field based its tracing analysis in support of the Claims on the 2022 Bieda Declarations, as well as the other exhibits and supporting material attached to the Claims. The Debtors base this portion of their Objection entirely on a certain *Declaration of Bruno Requiao Da Cunha in Support of Debtors' Objection to Proof of Claim Filed by North Field Technology Ltd* [D.I. 20026] (the "Cunha Declaration"), which the Debtors filed contemporaneously with their Objection.

18. As described in detail in the Bieda Declaration, the Cunha Declaration is flawed in numerous respects. As also described in detail in the Bieda Declaration, as well as in the 2022 Bieda Declarations and the Claims and their attached documents, the Stolen Bitcoin is readily traceable to the Debtors and Ren (as applicable). Notably, nowhere in either the Cunha Declaration

or the Debtors' Objection do the Debtors mention what they believe the "correct" tracing analysis to be.

### Analysis – Prima Facie Validity/Tracing

19. The Debtors devote the bulk of their argument to attacking North Field's tracing analysis, and rely entirely in the Cunha Declaration to do so. See Objection at ¶¶ 26-33. The Debtors' attack culminates in their assertion that "North Field fails to meet its burden of alleging facts sufficient to support a legal liability." Id. at ¶ 33.

**A.    Applicable Standard**

20. Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "A proof of claim executed and filed in accordance with these rules [i.e. the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." This is not a high bar for a creditor to meet. Simple compliance with the Bankruptcy Rules is the only requirement. See, e.g., In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.").

21. As this Court has previously explained, the standard that a claimant must meet under Bankruptcy Rule 3001(f) may be even lower than the standard applicable under Federal Rule of Civil procedure 12(b)(6):

> In determining whether a proof of claim contains sufficient allegations, a reviewing court will assume the allegations are true and ask whether the facts establish the necessary elements of a claim. At first blush, this standard sounds like the same pleading standard that courts apply when reviewing a Rule 12(b) motion to dismiss. Several courts suggest, however, that the proof of claim pleading standard is a "relatively low threshold" that is less burdensome than the federal civil pleading standard. As one court stated, "[a]s long as [a proof of claim provides] fair notice ... and the court can glean an actionable claim from the complaint, the court must entertain the party's case.

In re F-Squared Inv. Mgmt., LLC, 546 B.R. 538, 543–44 (Bankr. D. Del. 2016) (citations omitted).

8

22. Once a claim is objected-to, the burden shifts. As this Court has explained, "Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure (i.e., includes the facts and documents necessary to support the claim), constitutes prima facie evidence of the validity and amount of the claim. The claim objector must then produce evidence that, 'if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.' At that point, the burden shifts back to the claim holder to prove the validity of the claim by a preponderance of the evidence." In re Revelle, No. 17-11682 (BLS), 2021 WL 3669358, at *2 (Bankr. D. Del. Aug. 18, 2021).

**B.    North Field has Met it's Burden Under Bankruptcy Rule 3001(f), and Also Should Prevail if the Court Were to Apply the "Preponderance of the Evidence" Standard**

23. The Objection accuses North Field of failing to meet its "initial burden." See Objection at ¶28 ("North Field has not carried its initial burden of alleging facts sufficient to support a legal liability."). As mentioned, this is a very low burden. See, e.g., Allegheny Int'l, 954 F.2d at 173 ("Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.") (quoting In re Holm, 931 F.2d 620, 623 (9th Cir. 1991); L. King, Collier on Bankruptcy § 502.02, at 502–22 (15th ed. 1991)).

24. Based on the voluminous and comprehensive exhibits and attachments to the Claims, as well as the three Bieda Declarations, North Field has certainly alleged facts sufficient to support a legal liability of the Debtors to North Field to return the Stolen Bitcoin, especially in light of the low bar applicable under Bankruptcy Rule 3001(f). North Field exceeds this low standard by leaps and bounds.

9

72408358\10

25. Although the Objection does not take the analysis further, North Field submits that it should also prevail if the Court were to apply the "preponderance of the evidence" standard, as its support in the aggregate establishes the validity of the Claims by considerably more than a preponderance of the evidence. In this regard, North Field relies on the Claims themselves, including the attached exhibits and other support, as well as the three Bieda Declarations, and submits that this support more than trumps the Debtors' evidence to the contrary, which consists entirely of the solitary Cunha Declaration.

### (i) The Ren BTC

26. North Field has presented the Court with conclusive evidence that the Ren BTC is the sole property of North Field, that it came into Ren's possession, that Ren then gave it to the Debtors for "safekeeping," and that the Debtors have, at the very most, only bare legal title to it. North Field's evidence includes the Amended Final Default Judgment, Clarification Order, Permanent Injunction, and Contempt Order, copies of which are attached to this Response, together, as Exhibit "C."

27. In these judgments and orders, the District Court ruled that the Stolen Bitcoin is the sole property of North Field. See Amended Final Default Judgment at ¶¶4-6 (stating that the Stolen Bitcoin is the "property of the Plaintiff Class"); Clarification Order at ¶¶2-3 (same). For this reason, the District Court commanded all persons in possession of the Stolen Bitcoin to immediately locate it, freeze it, and then return it to North Field, and specifically commanded Ren to return the Ren BTC to North Field. See Permanent Injunction at ¶4; Contempt Order at ¶2.

28. Further, as described in detail in the Bieda Declarations, North Field has assiduously traced the Ren BTC into Ren's possession. North Field filed the December 27, 2022

Bieda Declaration with the District Court in the underlying litigation.[6] The District Court accepted and adopted Mr. Bieda's analysis and conclusions, and, in reliance thereon, issued the Contempt Order commanding Ren to turn over the Ren BTC to North Field. Among other things, in reliance on the December 27, 2022 Bieda Declaration, the District Court expressly found, "As of November 10, 2022, at least 685 BTC of the Stolen Bitcoin [the same "Stolen Bitcoin" as defined in this Response] had been deposited with Ren in violation of the Permanent Inunction and Clarification Order." Contempt Order at p. 2. Like the District Court's other judgments and orders, this finding in the Contempt Order is preclusive, and entitled to full faith and credit.

29.     In contrast to North Field's voluminous supporting evidence – which conclusively establishes both North Field's legal ownership of the Ren BTC and Ren's physical possession of that BTC – the Debtors proffer nothing other than the Cunha Declaration. In contrast to North Field's support, the Debtors' have neither their own tracing analysis nor a ruling from any court awarding them, or establishing in them, any property interest of any kind in the Ren BTC. North Field's supporting evidence is a mountain to the Debtors' molehill.

30.     The Debtors' evidence lacks quality as well as quantity. As described in detail in the Bieda Declaration, the Cunha Declaration is fatally flawed in numerous respects. Perhaps more importantly, the Cunha Declaration does not proffer any contrary tracing analysis. It simply takes pot-shots at Mr. Bieda's tracing analysis (and flawed pot-shots at that). <u>Nowhere</u> have the Debtors put forth what they believe the *correct* tracing analysis to be. The fact that the Debtors do not appear to possess any tracing analysis contrary to the one prepared by Mr. Bieda does not bode well for their ability to prevail under a "preponderance of the evidence" standard.

---

[6] Mr. Bieda's analysis in that Declaration is largely identical to his analysis in his new September 9th Declaration.

**(ii)    The Frozen BTC**

31.    The outcome is the same with respect to the Frozen BTC. As with the Ren BTC, the District Court has ruled that the Frozen Bitcoin is the sole property of North Field. See Amended Final Default Judgment at ¶¶4-6 (stating that the Stolen Bitcoin is the "property of the Plaintiff Class"); Clarification Order at ¶¶2-3 (same). Also as with the Ren BTC, the District Court commanded all persons in possession of the Frozen BTC to immediately locate it, freeze it, and then return it to North Field. See Permanent Injunction at ¶4.

32.    As with the Ren BTC, North Field has assiduously traced the Frozen BTC into the Debtors' possession. Mr. Bieda's three Declarations lay out this tracing. As with the Ren BTC, the Debtors have no response other than the solitary and flawed Cunha Declaration, which contains no tracing analysis of its own. Accordingly, on this front as well, the Debtors are severely outgunned under any "preponderance of the evidence" standard that the Court may apply.

**C.    The Stolen Bitcoin is Property of North Field, and not of the Debtors**

33.    The Objection concludes with a brief argument in which the Debtors state that because Ren is a non-debtor, the Debtors should not be liable for the Ren Claims. North Field largely agrees, with one exception – if one or more of the Debtors is in possession of the Ren BTC, then that Debtor (or those Debtors), should turn over the Ren BTC to North Field.

34.    Neither the Ren BTC (nor the Frozen BTC for that matter) belongs to the Debtors. Rather, as the District Court ruled, the Stolen Bitcoin is the sole property of North Field. See Amended Final Default Judgment at ¶¶4-6 (stating that the Stolen Bitcoin is the "property of the Plaintiff Class"); Clarification Order at ¶¶2-3 (same). For this reason, the District Court commanded all persons in possession of the Stolen Bitcoin to immediately locate it, freeze it, and then return it to North Field, and specifically commanded Ren to return the Ren BTC to North Field See Permanent Injunction at ¶4; Contempt Order at ¶2.

35. Of course, property in which a debtor holds only bare legal title, and property that a debtor holds in trust for another, do not become property of its bankruptcy estate. See, e.g., U.S. v. Whiting Pools, Inc., 462 U.S. 198, 204 n.8, 103 S. Ct. 2309, 2313 n.8 (1983) ("The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.") (citing 124 Cong. Rec. 32399, 32417 (1978)); In re Columbia Gas Sys, Inc., 997 F.2d 1039, 1054 (3d Cir. 1993) ("A bankruptcy estate includes all property of the debtor, but only to the extent of the debtor's equitable interest in such property. Therefore, if [the debtor] possessed only legal title to the monies at issue, these funds would not be an asset of the bankruptcy estate, and could be distributed."); In re Green Field Energy Servs., Inc., 585 B.R. 89, 103–04 (Bankr. D. Del. 2018) ("If a debtor possesses only legal title to certain monies, those funds would not be deemed an asset of the bankruptcy estate.").

36. North Field's Claims recognize that the Stolen Bitcoin is not the property of the Debtors. In the Addendum to each Ren Claim and each Frozen BTC Claim, North Field states:

> North Field asserts that all Stolen Bitcoin (term defined below) held by one or more of the Debtors does not constitute property of the estate under 11 U.S.C. § 541 because no Debtor held a "legal or equitable interest" in such Stolen Bitcoin as of the commencement of the Debtors' bankruptcy cases. Therefore, any Stolen Bitcoin now in the possession or control of any of the Debtors must be returned to North Field and held in trust for North Field until it is returned to North Field. However, out of an abundance of caution, in case any court of competent jurisdiction finds that the Stolen Bitcoin constitutes property of one or more of the Debtors' estates, North Field hereby asserts this Claim against the Debtors as a timely filed general unsecured claim.

See, Addendum to each Claim, at p. 1.

37. In the case of Ren, the Ren BTC is doubly removed from the Debtors' own assets. Ren is a non-debtor, over which the Debtors have control. To the extent that Ren – as distinct from the Debtors – is in possession of the Ren BTC, then the Debtors do not even possess bare legal title, much less any equitable interest in the Ren BTC. To the extent that Ren has turned over

possession of the Ren BTC to the Debtors for safekeeping as described in the Claims, then, at best, the Debtors are holding the Ren BTC simply on Ren's behalf, and have not acceded to even the bare legal titled that Ren may have had.

38. On that note, contemporaneously with this Response, North Field is filing a motion with this Court seeking relief from the automatic stay to the extent necessary to proceed to recover the Ren BTC. If, as the Debtors assert in their Objection, they do not have a property interest (other than, at most, bare legal title) in the Ren BTC, then no reason exists why North Field's motion for relief should not be granted. Having disclaimed ownership of the Ren BTC in their Objection, the Debtors cannot then simultaneously seek to maintain possession or control of that same property by opposing North Field's motion for relief. As a matter of logic, they cannot have it both ways.

39. In sum, North Field simply wants the Stolen Bitcoin returned. As mentioned, North Field assets general unsecured claims against the Debtors only "out of an abundance of caution, in case any court of competent jurisdiction finds that the Stolen Bitcoin constitutes property of one or more of the Debtors' estates."[7] Id. As also mentioned, no such court has ever ruled to this effect. On the contrary, the District Court has ruled on multiple occasions that the Stolen Bitcoin is <u>North Field's</u> property. The District Court's judgments and orders are all final, and entitled to preclusive effect. All that remained after the entry of those judgements and orders was for North Field to trace the Stolen Bitcoin into the Debtors' possession, and North Field respectfully submits that it has done so.

---

[7] In the event that the Debtors refuse to return all or any portion the Stolen Bitcoin, North Field reserves all rights against the Debtors, including without limitation to commence an adversary proceeding, and/or to amened the Claims, to seek all applicable relief and assert all applicable rights.

**Analysis – Duplicative Claims**

40.     North Field filed the Ren Claims against four separate Debtors, and the Frozen BTC Claims against three separate Debtors, in order to protect and preserve its rights.  North Field is not seeking a multi-fold recovery or a windfall.  Rather, North Field simply wants the Stolen Bitcoin returned, and asserts general unsecured claims only failing that.  North Field is more than willing to work with the Debtors in this regard and, once the Stolen Bitcoin is returned, will be more than willing to adjust its Claims accordingly.

**Conclusion**

41.     For all of these reasons, and for the reasons described in the Claims, the Bieda Declaration, and the 2022 Bieda Declarations, North Field respectfully submits that the Objection should be overruled with prejudice.

WHEREFORE, North Field respectfully requests the Court enter an order, substantially in the attached form: (i) overruling the Objection with prejudice; (ii) allowing the Claims; and (iii) providing any additional relief that may be appropriate.

Dated:  September 18, 2024

COZEN O'CONNOR

By: */s/ Simon E. Fraser*

Simon E. Fraser (DE No. 5335)
1201 N. Market Street, Suite 1001
Wilmington, DE  19801
(302) 295-2000 Phone
sfraser@cozen.com

And

L. Barrett Boss
Samantha Rubin Stratford
COZEN O'CONNOR
1200 19th Street NW, Suite 300
Washington, DC 20036
Telephone: (202) 912-4818
bboss@cozen.com
sstratford@cozen.com

*Counsel to North Field Technology Ltd.*