**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FTX TRADING LTD., *et al.*[1] | ) | Case No. 22-11068 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: TBD** |
| | ) | **Objection Deadline: TBD** |
| | ) | |

**MOTION OF NORTH FIELD TECHNOLOGY LTD. FOR ENTRY OF AN ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY; (II) WAIVING BANKRUPTCY RULE 4001; AND (III) GRANTING RELATED RELIEF**

North Field Technology Ltd. ("North Field"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto, pursuant to 11 U.S.C. § 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting North Field relief from the automatic stay to execute a judgment on assets of a certain non-debtor affiliate of the debtors ("Debtors") in the above-captioned bankruptcy cases (the "Chapter 11 Cases") that are currently in the possession of the Debtors. In support of this Motion, North Field respectfully states as follows:

**JURISDICTION**

1. This Court has jurisdiction over the above-captioned cases, property of the Debtors' estates, and this Motion pursuant to 28 U.S.C. § 1334.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Pursuant to Local Rule 9013-1(f), North Field consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PRELIMINARY STATEMENT**

4. North Field seeks to recover 685 stolen bitcoin (the "Ren BTC") that were transferred, pre-petition, to the Ren Project ("Ren"), a non-debtor entity created by non-debtor entities (the "Ren Entities") that are indirect or direct subsidiaries of one or more of the Debtors,[2] and have since been transferred by Ren to the Debtors.

5. Post-petition, on April 11, 2023, representatives of Ren publicly stated via Twitter that the Debtors had directed it "to transfer of all [sic] cryptocurrency assets into the FTX Debtors' cold storage wallets for safeguarding[.]" Ren also clarified that "Ren's assets would be held in 'distinct segregated wallets cold storage wallets [sic] designated for these assets transferred by Ren, separate from the other Debtor cold storage wallets.'" A copy of the Tweet is attached hereto as Exhibit "A."

6. The Debtors have confirmed this in their recently filed *Objection to Proofs of Claim Filed by North Field Technology, Ltd.* [D.I. 20017] (the "Objection"), in which they deny that North Field can recover the Ren BTC improperly transferred to Ren (or its equivalent value) from the Debtors because "none of the Ren Entities are Debtors in these Chapter 11 Cases," and that the transfer of the Stolen Bitcoin "to 'distinct segregated [] cold storage wallets' controlled by the

---

[2] According to the Debtors, Ren was created by three non-Debtor entities (Dappabase Pty Ltd., MPC Technologies Pte. Ltd., and Dappabase Ventures Ltd.), all of which were acquired by Debtor Maclaurin Investments (f/k/a Alameda Ventures Ltd.) in January 2021. *See Debtors' Obj. to Proofs of Claim filed by North Field*, D.I. 20017, at ¶ 9.

Debtors does not mean that North Field's Claims are valid as against any Debtor." (Objection ¶¶ 35-36.)

7. If the Debtors prevail in their Objection, North Field's only legal course to recover the Ren BTC improperly transferred to Ren pre-petition, or its equivalent value, will be to commence non-bankruptcy litigation against Ren and the Ren Entities. North Field has filed this Motion to seek relief from the automatic stay to commence such proceedings against Ren and the Ren Entities because, while the Debtors disclaim any right or title to the Ren BTC, the Ren BTC are in the possession of the Debtors.

8. Because the Stolen Bitcoin held by the Debtors does not constitute property of the Debtors' estates, this Court should grant North Field relief from the automatic stay to seek recovery of the Ren BTC or its equivalent value outside of this Court.

**BACKGROUND**

**I.   The Pre-Petition Judgment, Permanent Injunction, and Contempt Order**

9. On January 13, 2016, Plaintiffs Jinyao Liu, Brandon Leidel, and Michael Wilson, brought a class action suit, on behalf of themselves and all account holders of a cryptocurrency exchange called Cryptsy (collectively, the "Plaintiff Class"), against Paul Vernon, Cryptsy's CEO, and his ex-wife, Lorie Ann Nettles, in the case *Leidel v. Project Invs., Inc.*, No. 9:16-CV-80060-KAM ("*Leidl*") before the United States District Court for the Southern District of Florida (the "District Court"), for the misappropriation of funds held in Cryptsy accounts.

10. On July 27, 2017, the District Court entered a default judgment (the "Final Default Judgment") against Vernon, authorizing the Plaintiff Class to recover, among other things, 11,325.0961 Bitcoin stolen from Cryptsy customers on July 29, 2014, that the District Court ruled were property of the Plaintiff Class. *See Leidl*, D.I. 123.

3
LEGAL\72565322\8

11. A further Order (*Leidl*, D.I. 142) entered by the District Court on September 18, 2020, extended the Final Default Judgment to all of the forked assets associated with the 11,325.0961 Stolen Bitcoin (the "Forked Assets") and approved the terms and conditions of a certain assignment agreement (the "Assignment Agreement"), pursuant to which the Plaintiff Class assigned to North Field the Plaintiff Class's rights to pursue and collect the Stolen Bitcoin and associated Forked Assets.

12. In the following months, North Field began its work to trace bitcoin stolen from Cryptsy. On May 24, 2021, the District Court issued an Amended Final Default Judgment against Defendant Vernon ("Amended Final Default Judgment"), which incorporates an additional 500.052319 Stolen Bitcoin and associated Forked Assets identified by North Field into the prior Final Default Judgment. *Leidel*, D.I. 157. The Amended Final Default Judgment includes a total of 11,825.1484 Stolen Bitcoin, and the associated Forked Assets. *Id*. Soon thereafter, the District Court entered an Order (*Leidel*, D.I. 172) approving an amendment to the Assignment Agreement acknowledging that the rights to recover all 11,825.1484 Stolen Bitcoin and related Forked Assets were assigned North Field. Copies of the Final Default Judgment, Amended Final Default Judgment, and related extension Orders are attached hereto together in Exhibit "B".

13. On June 22, 2021, the District Court issued a Permanent Injunction (*Leidel*, D.I. 177), ordering all persons in possession of any of the 11,825.1484 Stolen Bitcoin to immediately locate it, freeze it, and return it to North Field. A copy of the Permanent Injunction is attached hereto as Exhibit "C".

14. An Order was then entered by the District Court on April 8, 2022, clarifying that both the Amended Final Default Judgment and the Preliminary Injunction applied to all original wallet addresses holding the 11,825.1484 Stolen Bitcoin and Forked Digital Assets and all

secondary wallet addresses into which Defendant Vernon and his conspirators had transferred and in the future might transfer the Stolen Bitcoin, "regardless of which digital wallet addresses presently holds those assets[.]". *See Leidel*, D.I. 193, a copy of which is attached hereto as Exhibit "D".

15. North Field previously partnered with Coinfirm, Ltd., a top-tier European based blockchain analytics software company, to carry out blockchain tracing for the 11,825.0961 Stolen Bitcoin encompassed by the District Court's Amended Final Default Judgment and Permanent Injunction.

16. The tracing data revealed that Defendant Vernon and/or his associates transferred the Ren BTC to Ren, a subsidiary of the non-Debtor Ren Entities, all of which were acquired by Debtor Maclaurin Investments (f/k/a Alameda Ventures Ltd.) in January 2021.

17. After discovering these transfers, North Field immediately (and repeatedly thereafter) notified Ren of the existence of the Amended Final Default Judgment and Permanent Injunction and the implications thereof. North Field extensively negotiated with Ren, but Ren ultimately refused to comply with the Amended Final Default Judgment and Permanent Injunction and turn over the Ren BTC to North Field.

18. Accordingly, on December 27, 2022, North Field filed a *Motion For Order To Show Cause Why Contempt Sanctions Should Not Be Imposed Against The Ren Project* (*Leidl*, D.I. 200) (the "Contempt Motion"), seeking contempt sanctions against Ren for its willful violation of the Permanent Injunction. A true and correct copy of the Contempt Motion is attached hereto as Exhibit "E".

19. On February 17, 2023, the District Court granted the Contempt Motion and entered an *Order Imposing Contempt Sanctions Against the Ren Project* (*Leidl*, D.I. 210) (the "Contempt

Order"), holding Ren in contempt of court for its refusal to turn over the Ren BTC to North Field. The District Court further ordered that Ren transfer the Ren BTC "or its equivalent value in U.S. Dollars" to North Field to relieve itself of civil contempt, and issued a fine of $500.00 per day, beginning on February 17, 2023, until Ren came into compliance with the District Court's orders. A true and correct copy of the Contempt Order is attached hereto as Exhibit "F".

20. To date, Ren has failed to relieve itself of civil contempt.

**II.    The Chapter 11 Cases, North Field's Ren Claims, and the Debtors' Objection Thereto**

21. On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

22. On June 26, 2023, North Field filed Claims 3310, 3321, 3328, and 3357 (collectively, the "Ren Claims") against Debtors West Realm Shires Services Inc. (Case No. 22-11071), Maclaurin Investments Ltd. (Case No. 22-11087), Alameda Research LLC (Case No. 22-11066) and FTX Trading Ltd. (Case No. 22-11068), respectively, each for Ren BTC.[3] The Ren Claims are identical and, out of an abundance of caution, assert the same claims against four different Debtor entities.

23. On July 10, 2024, the Debtors filed their Objection, objecting to all claims filed by North Field, including the four Ren Claims. Among other things, the Objection admits:

    a. Ren "is owned by the Ren Entities" and "[t]he Ren Entities remain distinct legal entities and are not Debtors in these Chapter 11 Cases." Objection ¶ 9 (citation omitted),

---

[3] On June 26, 2023, North Field also filed Claims 3285, 3496, and 3800 against Debtors West Realm Shires Financial Services Inc. (Case No. 22-11072), FTX Trading Ltd. (Case No. 22-11068), and West Realm Shires Services Inc. (Case No. 22-11071), respectively, each for a total of 34.595 Bitcoin. These claims are unrelated to the Ren Claims and are not relevant to this Motion.

    b. "Even after acquisition, Ren maintained its own operations, retained its existing team, and worked toward its own set of distinct goals." *Id.* (citation omitted)

    c. "On April 11, 2023, representatives of the Ren Project tweeted that the Debtors had directed Ren 'to transfer of all [sic] cryptocurrency assets into the FTX Debtors' cold storage wallets for safeguarding, in advance of possible shutdowns of infrastructure and systems.' Ren's tweet states that Ren's assets would be held in 'distinct segregated wallets cold storage wallets [sic] designated for these assets transferred by Ren, separate from the other Debtor cold storage wallets.'" *Id.* at ¶ 13 (internal citation omitted).

    d. The transfer of the Stolen Bitcoin "to 'distinct segregated [] cold storage wallets' controlled by the Debtors does not mean that North Field's Claims are valid as against any Debtor." *Id.* at ¶¶ 35-36.

24. Likewise, the Declaration of Bruno Requiao da Cunha in Support of Debtors' Objection to Proof of Claim filed by North Field Technology Ltd. [D.I. 20026] ("Cunha Dec.") filed by the Debtors on July 10, 2024, acknowledges that: " . . . based on the 12/27/22 Bieda Declaration, North Field contends that the Ren BTC that was stolen from Cryptsy was transferred between February 16, 2021, and March 28, 2022, to Ren Project ("Ren")—through Ren's decentralized application known as "RenBridge"—which is owned and operated by legal entities that are owned by FTX Debtor entities but are not themselves debtor entities." Cunha Dec. ¶ 5.

25. North Field is filing a response to the Debtors' Objection and this Motion contemporaneously. If the Debtors disclaim any and all true title to and interest in the Bitcoin that Ren transferred to the Debtors for safekeeping, then North Field is entitled to relief from the automatic stay to pursue recovery of the Ren BTC outside of this Court. However, if the Debtors claim to hold some interest in the Bitcoin transferred to it by Ren, then this Court should overrule the Debtors' Objection to the Ren Claims.

## RELIEF REQUESTED

26. North Field seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow it to seek to: (i) enforce its rights with respect to the Ren BTC, including without limitation

its rights pursuant to the Contempt Order and the Permanent Injunction, outside of this Court against Ren and the Ren Entities in order to recover the Ren BTC or its reasonable equivalent in U.S. Dollars. Such relief may include enforcement remedies against the Debtors to the extent that the Debtors possess, or otherwise control the Ren BTC and any other assets of Ren and/or the Ren Entities.[4]

## BASIS FOR RELIEF REQUESTED

27. The filing of a bankruptcy case automatically effects a stay of, among other things, "any act to obtain possession of . . . property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). The stay remains in place until the bankruptcy case is closed or dismissed, or a discharge is granted or denied to the debtor. *See* 11 U.S.C. § 362(c). Here, the property that North Field seeks to recover—the Ren BTC or its equivalent value—is in the custodial possession of the Debtors.

28. A party in interest may obtain relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" for relief from stay under section 362(d) of the Bankruptcy Code is not defined or otherwise described in the Bankruptcy Code, but it is "a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D.Del.1993)). *See also Bonneville Power Administration v. Mirant Corp.*

---

[4] For the avoidance of doubt, the stay relief requested by North Field is not limited to allowing it to simply seek the turnover of the Ren BTC from Ren, the Ren Entities, or the Debtors, but also the turnover of any and all assets of Ren and the Ren Entities in the Debtors' possession which may be potentially liquidated to provide North Field with the equivalent value of the Ren BTC in U.S. Dollars.

*(In re Mirant Corp.)*, 440 F.3d 238, 251 (5th Cir. 2006) (citing *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir.1986)); *IBM v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991) (internal quotations and citations omitted).

29. This Court applies a three-prong balancing test to determine whether to grant relief from the automatic stay: (i) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; (ii) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (iii) the probability of the movant prevailing on the merits. *In re Downey Financial Corp.*, 428 B.R. 595, 608-09 (Bankr. D. Del. 2010).

30. In this case, the Ren BTC at issue rightfully belong to North Field, as adjudicated by the District Court. While representatives of the Ren Project publicly stated via Twitter on April 11, 2023 that the Debtors had directed it "to transfer of all [sic] cryptocurrency assets into the FTX Debtors' cold storage wallets for safeguarding," the Ren Project also clarified that "Ren's assets would be held in 'distinct segregated wallets cold storage wallets [sic] designated for these assets transferred by Ren, separate from the other Debtor cold storage wallets.'"

31. Thus, while the Bitcoin transferred by Ren to the Debtors' cold storage wallets technically may be in the possession of the Debtors, the Bitcoin are being held in trust for non-Debtor parties and therefore do not constitute property of the estate under section 541(a) of the Bankruptcy Code. Rather, the Debtors merely have a possessory interest in the Bitcoin transferred to the Debtors' cold storage wallets by the Ren Entities. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8, 103 S. Ct. 2309, 2313 n.8 (1983) ("The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest

such as a lien or bare legal title.") (citing 124 Cong. Rec. 32399, 32417 (1978)); *In re Columbia Gas Sys, Inc.*, 997 F.2d 1039, 1054 (3d Cir. 1993) ("A bankruptcy estate includes all property of the debtor, but only to the extent of the debtor's equitable interest in such property. Therefore, if [the debtor] possessed only legal title to the monies at issue, these funds would not be an asset of the bankruptcy estate, and could be distributed."); *In re Green Field Energy Servs., Inc.*, 585 B.R. 89, 103–04 (Bankr. D. Del. 2018) ("If a debtor possesses only legal title to certain monies, those funds would not be deemed an asset of the bankruptcy estate.").

32. For this reason, North Field should be granted relief from the automatic stay to allow it to enforce the orders issued by the District Court in the *Leidl* action and recover the Ren BTC. *See Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298 (5th Cir. 2005) ("Section 362(a)(3) bars any act to obtain possession of property of the estate and, by negative implication, allows 'any act to obtain possession' of property that is *not* 'property of the estate.'").

33. This Court's three-pronged test for granting relief from the automatic stay weighs in favor of granting North Field relief from the automatic stay. Because the Debtors do not have title to the Bitcoin transferred into its segregated cold storage wallets by Ren, the Debtors certainly would not suffer "great prejudice" from the Court lifting the stay to allow North Field to seek recovery of any of that storage of Bitcoin that constitutes the Ren BTC, which is recoverable by North Field pursuant to the orders entered by the District Court described, *supra*, in great detail.

34. Moreover, North Field and members of the Plaintiff Class have borne significant hardship while trying to recover the Bitcoin stolen from members of the Plaintiff Class more than a decade ago. Since the entry of the original Final Default Judgment on July 27, 2017, the Plaintiff Class, and later North Field, has worked tirelessly to recover all Stolen Bitcoin and related Forked Digital Assets. Requiring North Field and the Plaintiff Class to wait for their recovery until the

10

LEGAL\72565322\8

resolution of one of most unprecedented bankruptcy cases in the history of the country, rife with novel issues of law to be decided and a vast number of claims founded on different facts and legal theories asserted by claimants who are significantly differently situated, would substantially increase their hardship and considerably outweigh any possible prejudice to the Debtors or their estates of lifting the automatic stay. This is particularly true because the Debtors have, in their Objection, disclaimed any interest in the Ren BTC.

35. Finally, given the consistent and continued success of the Plaintiff Class and North Field in proving its claims before the District Court and earning relief therefrom, as detailed extensively herein, there is a sufficient probability of North Field's success on the merits to support granting North Field's motion for relief from the automatic stay. *See In re SCO Group*, 395 B.R. at 859 ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."), *cited in In re Downey Financial Corp.*, 428 B.R. at 611.

## WAIVER OF STAY UNDER RULE 4001(a)(3)

36. Bankruptcy Rule 4001(a)(3) provides that an "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

37. Continuance of the automatic stay does not serve any purpose other than to delay North Field's right to enforce the District Court's orders against the Ren, the Ren Entities, and the Debtors as necessary, and collect the Stolen Bitcoin it has been working so hard to recover. Given that any delay in recovery causes North Field and the Plaintiff Class significant hardship and the Debtors and their cases are not at risk of any prejudice from North Field's pursuit of assets that do

not belong to the Debtors, this Court should waive the 14-day stay imposed under Bankruptcy Rule 4001(a)(3).

## NO PRIOR REQUEST

38. No prior request for the relief sought in this Motion has been made to this or any other Court.

## CONCLUSION

WHEREFORE, North Field respectfully requests entry of the Proposed Order (i) granting relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code to permit North Field to recover the Ren BTC or its equivalent value, (ii) waiving the 14-day stay imposed under Bankruptcy Rule 4001(a)(3), and (iii) granting related relief.

Dated: September 18, 2024

**COZEN O'CONNOR**

*/s/ Simon E. Fraser*
Simon E. Fraser (DE Bar No. 5335)
Marla S. Benedek (DE Bar No. 6638)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
E-mail: sfraser@cozen.com
E-mail: mbenedek@cozen.com

*Attorneys for North Field Technology Ltd.*