**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: TBD**<br>**Obj. Deadline: TBD** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER QUASHING THE**
**LAYERZERO PARTIES' NOTICE OF DEPOSITION OF JOHN J. RAY III**

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (this "Motion"), for entry of a protective order, substantially in the form attached hereto as Exhibit 1 (the "Order"), quashing the *Notice of Deposition of John J. Ray III* (the "Deposition Notice") served by LayerZero Labs Ltd., Ari Litan, and Skip & Goose LLC (collectively, "LayerZero"), pursuant to Rules 26(c) and 30 of the Federal Rules of Civil Procedure (the "Rules"), made applicable by Rules 7026(c) and 7030 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 7026-1 and 7030-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), made applicable by Federal Rule of Bankruptcy Procedure 9014. The Deposition Notice is attached as Exhibit A to the *Declaration of Brian D. Glueckstein* (the "Glueckstein Declaration"), filed contemporaneously herewith. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**Preliminary Statement**

1.    LayerZero should not be permitted to harass Mr. Ray, the Debtors' Chief Executive Officer, with an eleventh-hour deposition request masquerading as being in furtherance of their Plan Objection.

2.    LayerZero is subject to an ongoing adversary proceeding arising from a series of avoidable fire-sale transactions entered into on the eve of the FTX bankruptcy (Adv. Pro. No. 23-50492, the "Avoidance Action").  In the Avoidance Action, the Debtors seek to avoid fraudulent and preferential transfers that the FTX group entered into with LayerZero right before its collapse.  [Adv. Pro. D.I. 1].  On November 7, 2022—only days before the Debtors filed these Chapter 11 Cases on November 11 and 14, 2022, and after FTX's precarious financial position had already become public—LayerZero demanded that now-debtor Alameda Research Ltd. immediately repay a $45 million loan.  Given its dire financial condition, Alameda Research Ltd. was not in a position to pay the $45 million demanded by LayerZero.  Instead, in exchange for LayerZero forgiving the $45 million loan, LayerZero extracted a series of concessions from the Debtors that cost them (and their creditors) hundreds of millions of dollars.

3.    LayerZero repeatedly has tried to delay and obstruct the advancement of the Avoidance Action, and has made a practice of issuing plainly irrelevant discovery requests.  On June 24, 2024, LayerZero served a series of deposition notices in the Avoidance Action, including a notice seeking the deposition of the Debtors' CEO John J. Ray III.  (Glueckstein Decl. Ex. B.) LayerZero noticed Mr. Ray's deposition despite knowing full well that Mr. Ray could not possibly possess relevant information because he had no involvement in the Debtors' pre-petition operations, and was not even employed by the Debtors when the transfers at issue in the Avoidance

Action took place.[2]  When pressed as to the reason for seeking Mr. Ray's deposition, LayerZero stated only that it was entitled "to confirm for ourselves that [he] do[es] not have knowledge." (Glueckstein Decl. Ex. C.)  This is, of course, not an appropriate justification for deposing the Debtors' CEO, a classic apex witness with no percipient knowledge of the events in question.  The Debtors objected to this improper deposition notice and met and conferred with LayerZero about this and other discovery issues.  (*Id.*)  After much back and forth, the Debtors believed that they had temporarily resolved their discovery disputes with LayerZero, including the issue of Mr. Ray's deposition, when, on September 10, 2024, the parties agreed to an extended discovery schedule.  (*Id.*)  Unfortunately, they were wrong.

4.     Just hours after the parties reached agreement on the schedule, LayerZero served the Debtors with two new deposition notices purportedly related to the *Objection of LayerZero Labs Ltd., Ari Litan, and Skip & Goose LLC to Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading LTD* and *Its Debtor Affiliates* [D.I. 23158] (the "Plan Objection").  (Glueckstein Decl. Ex. F.)  First, LayerZero noticed Mr. Ray's deposition for the exact same date and time that LayerZero had previously noticed Mr. Ray's deposition in the Avoidance Action—September 24, 2024 at 9:00 a.m.  (Glueckstein Decl. Ex. A.)  Second, LayerZero noticed a Rule 30(b)(6) deposition of the Debtors for September 25, 2024 (the "Rule 30(b)(6) Notice").  (Glueckstein Decl. Ex. D.)

5.     In an effort to avoid the need to burden the Court with motion practice, the Debtors met and conferred in good faith with LayerZero's counsel and, subject to any objections served by the Debtors, agreed to designate a corporate representative for a Rule 30(b)(6) deposition

---

[2]   The Debtors reserve all rights to seek any appropriate relief with respect to the deposition of Mr. Ray noticed in the Avoidance Action.

on the topics noticed to the extent they relate to the Plan Objection, and that deposition is currently scheduled to take place on October 1, 2024.  The Debtors made clear, however, that Mr. Ray's testimony would be irrelevant to LayerZero's Plan Objection because Mr. Ray will not be submitting a declaration in support of Plan confirmation and will not be called by the Debtors as part of their affirmative case at the Plan confirmation hearing.

6.    LayerZero agreed to take this matter under advisement.  But later that day, LayerZero responded via email renewing their insistence on deposing Mr. Ray.  (Glueckstein Decl. Ex. E.)  As a result, the Debtors have been forced to file this Motion to stop LayerZero from harassing Mr. Ray and the Debtors on the eve of the confirmation hearing in these Chapter 11 Cases.

7.    The Debtors' Motion to quash the Deposition Notice should be granted pursuant to the "apex doctrine, under which courts have held that depositions of high-ranking corporate . . . officers will be allowed only upon a showing that those officers have particularly relevant information to offer that is not equally available from other, less burdensome sources." *British Telecom. PLC* v. *IAC/Interactivecorp.*, 2020 WL 1043974, at *8 (D. Del. Mar. 4, 2020) (collecting cases and granting a motion for a protective order barring the deposition of a company's former chief executive officer).  *First*, Mr. Ray has no unique knowledge of the issues raised in LayerZero's Plan Objection.  *Second*, even if Mr. Ray did possess relevant information, LayerZero can obtain that same information from other, less burdensome sources and must explore these sources before seeking testimony from Mr. Ray.  *Finally*, it is readily apparent that LayerZero's insistence on deposing Mr. Ray is an impermissible attempt to burden and harass the Debtors in a futile attempt to coerce a settlement of the Avoidance Action—the exact type of gamesmanship the apex doctrine was created to avoid.

**Background**

8.      On November 11 and November 14, 2022, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code [D.I. 231] (the "Committee").

9.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

**Facts Specific to the Relief Requested**

**I.      The Debtors' Pre-Petition Transactions With LayerZero**

10.      From January through May 2022, Alameda Ventures Ltd. ("Alameda Ventures") entered into a series of transactions with LayerZero in which (i) Alameda Ventures acquired 4.92% equity stake in LayerZero and warrants to purchase LayerZero's Stargate ("STG") and LayerZero ("ZRO") tokens in exchange for more than $70 million; and (ii) Alameda Ventures purchased 100 million STG tokens for $25 million at a public auction on March 17, 2023, which were to be delivered over the course of six months following purchase. [Adv. Pro. D.I. 1 ¶¶ 50-

53.]  On February 4, 2022, in the midst of these transactions, LayerZero loaned $45 million to

Alameda Ventures' parent, Alameda Research Ltd. ("Alameda Research").  [*Id*. ¶ 54.]

        11.    On November 7, 2022, LayerZero sought to capitalize on Alameda

Research's distressed financial position by demanding immediate repayment of its $45 million

loan to Alameda Research.  [*Id*. ¶ 57.]  Alameda Research could not pay what it owed, and the

FTX group was struggling to stem the tide of customer withdrawals from the FTX exchanges in

order to prevent the fraud perpetrated by the FTX group's former insiders from being exposed.

[*Id*. ¶¶ 57-58.]  Instead, in exchange for LayerZero forgiving the $45 million loan, Alameda

Ventures entered into several agreements:

- **Share Transfer Agreement**:  Alameda Ventures agreed to transfer to LayerZero its 4.92% equity stake in LayerZero, which Alameda Ventures had acquired earlier in 2022 for more than $70 million.  [*Id*. ¶ 60.]  Based on LayerZero's then-most recent fundraising round, Alameda's 4.92% stake was worth nearly $150 million.  [*Id*.]

- **Cancellation and Rescission Agreement and Mutual Release**:  Alameda Ventures agreed to cancel and rescind warrants entitling it to receive (i) approximately 2.5% of the total supply of all STG tokens (a token launched by LayerZero in early 2022) and (ii) approximately 4.92% of the total supply of ZRO tokens (a token LayerZero launched in June 2024).  [*Id*. ¶¶ 9, 61.]  These warrants are extremely valuable and are likely worth hundreds of millions of dollars standing alone.  [*Id*. ¶ 61.]

- **Token Purchase Agreement**:  Alameda Ventures also agreed to sell back to LayerZero, for a price of $10 million, 100 million additional STG tokens that Alameda Ventures had purchased from LayerZero for $25 million only a few months earlier. [*Id*. ¶ 62.]  Although the transaction contemplated by this Token Purchase Agreement was not completed prior to the imposition of the automatic stay—LayerZero did not pay for the tokens, and Alameda Ventures did not transfer them—LayerZero continues to assert that it is entitled to the receive these 100 million STG tokens and has submitted a claim in the Chapter 11 Cases on account thereof.[3]  [*Id*. ¶¶ 62-63.]

        12.    LayerZero walked away from the fire-sale transactions a huge winner, to

the great detriment of the Debtors' estates and creditors in these Chapter 11 Cases.  In addition,

---

[3]    The Debtors reserve all rights and defenses with respect to all claims submitted or otherwise asserted by LayerZero.

while LayerZero negotiated these fire-sale transactions, LayerZero Labs Ltd. and Ari Litan (the former chief operating officer of LayerZero, and a current strategic advisor of LayerZero) withdrew tens of millions of dollars of fiat currency and cryptocurrency from the FTX exchanges.[4] [*Id*. ¶¶ 66, 69.]

13.    The Debtors have asserted claims for intentional and constructive fraudulent transfers pursuant to 11 U.S.C. § 548 and for preferential transfers pursuant to 11 U.S.C. § 547, which are being litigated in the Avoidance Action.  [*Id*. ¶¶ 98-141.]

## II.    LayerZero's Disclosure Statement and Plan Objections

14.    On May 22, 2024, LayerZero filed an objection to the then current *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-In-Possession* [D.I. 15521] (as amended, the "Disclosure Statement").  LayerZero's objection to the Disclosure Statement [D.I. 16818] (the "Disclosure Statement Objection"), focused almost exclusively on the proposed plan in the context of the Avoidance Action.  (Disclosure Statement Obj. ¶¶ 2-4.)

15.    In response, the Debtors made certain revisions to the Disclosure Statement [D.I. 18083-1], and filed an amended Disclosure Statement [D.I. 18976] that the Court approved after overruling, among others, LayerZero's continuing objection [D.I. 19068].

16.    LayerZero filed its Plan Objection on August 16, 2024.  [D.I. 23158.]  The Plan Objection mostly rehashes issues from the Disclosure Statement Objection.  The Plan Objection argues that the Plan (i) offers to settle customer preference actions against some but not all customers, (ii) fails to recognize that the Debtors cannot bring preference actions against

---

4    Mr. Litan also withdrew assets currently valued at more than $10 million from an FTX.US account registered in the name of Skip & Goose LLC, which he owns and controls.  [Adv. Pro. D.I. 1 ¶¶ 18, 70.]

creditors if the Debtors never had an interest in assets deposited on the FTX.com and FTX.US exchanges, and (iii) improperly allows the Debtors to withhold distributions to a creditor because of a pending preference action against that creditor.  (Plan Obj. ¶¶ 4-6.)[5]

## III.    LayerZero's Harassing Discovery Requests in the Avoidance Action

17.    LayerZero did not move to dismiss the Avoidance Action, apparently realizing that it would be futile to do so.  Since the commencement of the Avoidance Action, the Debtors and LayerZero have engaged in ongoing discovery.  Discovery briefly paused while the Debtors and LayerZero entered into mediation and subsequent settlement discussions, which ultimately were unsuccessful.  (Glueckstein Decl. Ex. C.)

18.    On June 24, 2024, LayerZero served various discovery requests and notices of deposition in the Avoidance Action, including a notice of deposition of Mr. Ray.  (Glueckstein Decl. Ex. B.)  The Debtors and LayerZero met and conferred on outstanding discovery issues in the Avoidance Action on August 23, 2024.  During the meet and confer, the parties discussed, among other things, the need to adjust discovery deadlines to make up for the pause of discovery during the parties' mediation and settlement discussions. (Glueckstein Decl. Ex. C.)  The Debtors proposed a new case management schedule for the Avoidance Action on September 5, 2024.  (*Id.*)

19.    During the meet and confer and in a follow-up email, the Debtors made clear that Mr. Ray was not employed by the Debtors until after the transactions at issue in the Avoidance Action took place, and therefore would have no first-hand knowledge relevant to the claims or defenses of the parties.  (*Id.*)

---

[5]    The Debtors reserve all rights with respect to LayerZero's baseless Plan Objection and will respond to it in due course.

20.    In response, on September 9, 2024, LayerZero's counsel ultimately acknowledged that, once the parties agreed on a new case management schedule, they could "reset on the discovery that remains and on the timing of depositions to be conducted in this adversary proceeding." (*Id*.)  Shortly thereafter, on September 10, the Debtors and LayerZero agreed to a modified case management schedule extending, among other things, the discovery deadlines. (*Id*.)

**IV.    LayerZero Switches Tactics and Seeks Mr. Ray's Deposition Concerning the Plan**

21.    Barely three hours after agreeing to defer the noticed depositions in the Avoidance Action, LayerZero served deposition notices for Mr. Ray and a corporate deposition pursuant to Rule 30(b)(6).  (Glueckstein Decl. Ex. F.)  In response to the Debtors' inquiry, LayerZero's counsel stated that the new deposition notices were served in connection with the Plan Objection.

22.    LayerZero noticed Mr. Ray's Plan Objection deposition for September 24, 2024 at 9:00 a.m.—the exact same date and time LayerZero had just agreed to "reset" in the Avoidance Action.  (Glueckstein Decl. Ex. A.)  LayerZero also noticed the Rule 30(b)(6) deposition for the next day.  (Glueckstein Decl. Ex. D.)  The Rule 30(b)(6) Notice seeks the Debtors' testimony on three topics related to the Plan:  (1) "[t]he Customer Preference Settlement," (2) "[p]rojected recoveries under the Plan," and (3) "[t]he Global Settlement." (*Id*.)

23.    On September 18, 2024, the Debtors and LayerZero met and conferred regarding the Deposition Notice and the Rule 30(b)(6) Notice.  (Glueckstein Decl. Ex. E.)  During the meet and confer, the Debtors agreed to designate a corporate representative to sit for the Rule 30(b)(6) deposition (subject to and without waiver of any objections) on the topics noticed to the extent the relate to the Plan Objection, and that deposition is now scheduled for October 1, 2024.  But the Debtors made clear that there was no basis for Mr. Ray to be deposed for multiple reasons, including that (i) Mr. Ray will not be submitting a declaration in support of Plan

confirmation and (ii) will not be called as a witness by the Debtors in their case in chief in support

of plan confirmation.  LayerZero has at no point—during the meet and confer call or otherwise—

provided any reason why Mr. Ray's deposition should be required given these facts.

24.     LayerZero agreed to take the matter under advisement.  Later that same day,

LayerZero informed the Debtors that it was standing on its notice of deposition directed to Mr.

Ray, and acknowledged that this Motion would be forthcoming.  (Glueckstein Decl. Ex. E.)

## **Jurisdiction**

25.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are section 105 of the Bankruptcy

Code, Bankruptcy Rules 7026(c), 7030 and Local Rule 7026-1 and 7030-1(c).  Pursuant to Local

Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in

connection with this Motion to the extent it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

## **Relief Requested**

26.     By this Motion, the Debtors request entry of the Order, substantially in the

form attached hereto as Exhibit 1, quashing the Deposition Notice.

## **Basis for Relief**

27.     Good cause exists to enter an order quashing LayerZero's Deposition

Notice.  The Debtors should not be forced to subject their CEO to a deposition on issues of which

he has no unique knowledge and that, at best, seeks information that is either duplicative or

attainable though less-burdensome means.  In reality, following the Plan Objection, the Deposition

Notice is the latest and most egregious attempt to harass the Debtors in retaliation for their

continued prosecution of the Avoidance Action.

28.     Rule 26, made applicable to these Chapter 11 Cases by Bankruptcy Rules

7026 and 9014, limits the discovery that a party may obtain to "any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ.

P. 26(b)(1).  It also provides the court "must" limit discovery "if it determines that: (i) the discovery

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is

outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

29.     Rule 26(c) authorizes the Court to "for good cause, issue an order to protect

a party . . . from annoyance . . . oppression, or undue burden or expense," including an order

"forbidding" certain discovery, "forbidding inquiry into certain matters," or "proscribing a

discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. P.

26(c)(1).  Thus, courts have "discretion to issue protective orders that impose restrictions on the

extent and manner of discovery where necessary."  *Pearson* v. *Miller*, 211 F.3d 57, 65 (3d Cir.

2000).

30.     The "apex doctrine" is an "analytical framework used by courts" that

"recognizes that depositions of high-level officers severely burdens those officers and the entities

they represent, and that adversaries might use this severe burden to their unfair advantage."  *United

States ex. rel. Galmines* v. *Novartis Pharm.*, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 19, 2015)

(collecting cases).  In effect it establishes a "rebuttable presumption that a high-level official's

deposition represents significant burden upon the deponent and that this burden is undue," unless

(i) "the high-level official has personal or superior unique knowledge of the facts alleged," and (ii) "the information [cannot] be obtained from lower level employees or through less burdensome means." *Id*. at *1-2.

31.    Here, it is readily apparent that Mr. Ray has no unique, personal knowledge of any relevant subject matter and that any relevant information LayerZero seeks relating to its Plan Objection can be obtained from its upcoming Rule 30(b)(6) deposition of the Debtors.  Thus, good cause exists to quash the Deposition Notice to prevent LayerZero from taking a deposition that will impose an acute and undue burden on the Debtors at the time when they should be focused on preparation for the Plan confirmation hearing and planning for the distribution of assets to creditors in the event the Plan is confirmed.  The Deposition Notice should be quashed pursuant to the apex doctrine for three reasons.

32.    *First*, Mr. Ray does not possess "unique knowledge" regarding the issues raised in the Plan Objection.  *Amaya* v. *Ballyshear LLC*, 2021 WL 12101052, at *2 (E.D.N.Y. Sept. 30, 2021) (granting a protective order because the record was "devoid of information to demonstrate that [the senior executive] possesses any unique knowledge to overcome the apex doctrine").  The Customer Preference Settlement and discoverable matters relating to it are matters that have received extensive consideration from the Debtors' retained professionals, including the Debtors' financial advisors at Alvarez & Marsal, who have been intimately involved with all aspects of the Plan.  As explained to LayerZero's counsel, the Debtors will be relying on witnesses other than Mr. Ray for purposes of satisfying their evidentiary burden at the Plan confirmation hearing.  Mr. Ray does not have unique knowledge of the issues raised in LayerZero's Plan Objection, most of which are legal issues in any event.

33.    Mr. Ray, of course, was closely involved with the Customer Preference Settlement, the Global Settlement, and the Plan.  But this is not sufficient to establish he has any unique knowledge requiring his deposition given that the Debtors' financial advisors and others were also closely involved in such matters.  *See e.g.*, *Ford Motor Co.* v. *Edgewood Properties, Inc.*, 2011 WL 677331, at *4 (D.N.J. Feb. 15, 2011) (barring an apex deposition because "the facts surrounding" a disputed transaction were "more appropriately gleaned from other lower-level executives" than the senior executive who approved it); *Younges* v. *7-Eleven, Inc.*, 2015 WL 12844446, at *2 (D.N.J. Aug. 19, 2015) (granting a protective order against the taking of an apex deposition because "[t]he record [did] not show that the information plaintiff" wanted "could not have been obtained from lower level employees").

34.    *Second*, if LayerZero truly wishes to discover relevant information pertaining to its Plan Objection, there are proper, less-burdensome means available.  The Debtors have already agreed, without waiver of objections, to designate a corporate representative to sit for a Rule 30(b)(6) deposition and testify about the topics LayerZero has noticed to the extent they relate to LayerZero's Plan Objection.  That deposition will permit LayerZero to adequately ask the Debtors factual questions to the extent relevant to their Plan Objection.  Thus, LayerZero has not and cannot demonstrate that the testimony it seeks from Mr. Ray is necessary and not available from "other, less burdensome avenues."  *British Telecomm.*, 2020 WL 1043974, at *9; *see also Reif* v. *CNA*, 248 F.R.D. 448, 453-54 (E.D. Pa. 2008) (barring an apex deposition because plaintiffs could "still avail themselves of other discovery tools such as . . . a Rule 30(b)(6) deposition"); *Roman* v. *Cumberland Ins. Grp.*, 2007 WL 4893479, at *1 (E.D. Pa. Oct. 26, 2007) (same).

35.    *Finally*, it is readily apparent that LayerZero is seeking to depose Mr. Ray to burden and harass Mr. Ray and the Debtors, likely in the hopes of extracting a settlement of the

Avoidance Action.  The fact that LayerZero is purportedly seeking to depose Mr. Ray about its

Plan Objection at precisely the same date, time, and place, it was previously seeking to depose Mr.

Ray in relation to the Adversary Proceeding shows that the whole point of the exercise is to subject

Mr. Ray and the Debtors to his deposition and the attendant burden and distraction, one way or

another, on the eve of the Plan confirmation hearing.  By simply pivoting from a deposition in the

Avoidance Action to a last minute request for one in connection with the Plan Objection,

LayerZero has exposed its true intent:  to harass Mr. Ray and the Debtors.

36.      When the entirety of the circumstances are examined, they confirm that

LayerZero is not interested in actually obtaining any relevant information.  In other words, the

Deposition Notice reflects exactly the type of gamesmanship the apex doctrine is designed to

prevent.  *See, e.g.*, *United States ex rel. Galmines*, 2015 WL 4973626, at *1, 3 (granting a motion

to quash a deposition subpoena directed to a former CEO and recognizing that adversaries might

use the "severe burden" of apex depositions "to their unfair advantage").  The Deposition Notice

should be quashed.

### Certification Pursuant to Local Rule 7026-1

37.      Counsel for Debtors certifies, pursuant to Local Rule 7026-1(d), that they

have conferred with counsel for LayerZero in an attempt to resolve these discovery issues but have

been unable to reach agreement.

### Notice

38.      Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel

to the Committee; (c) any interested or affected governmental or regulatory entity, including the

Internal Revenue Service, the Securities and Exchange Commission and the United States

Department of Justice; (d) counsel for LayerZero; and, (e) any other party that has requested notice

-15-

pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit 1, and (b) grant such other and further relief as is just and proper.

Dated: September 23, 2024
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:  dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*