IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FTX TRADING LTD., *et al.*,<br><br>Debtors | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>RE: D.I. **22165, 23610** |

## OBJECTION OF SAMUEL GUNAWAN TO CONFIRMATION OF THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

Samuel Gunawan, a customer[1] of FTX Trading, specifically FTX.com, hereby submit this objection (the "Objection") to the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 22165] (the "Plan") filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of this Objection states as follows:

### I.     The Distributable Asset Do Not Constitute Property of the Estate

1.     Section 541 of the Bankruptcy Code generally provides that all property in which a debtor has a legal or equitable interest, including any interest in property that a debtor acquires post-petition, becomes property of the estate upon the commencement of a chapter 11 case. *11 U.S.C. § 541(a)(1), (a)(7)*. Importantly, Congress was clear that section 541(a)(1) of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they existed at the commencement of the case." *H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367-68 (1977); see also Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984)* (holding that the "rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less"). Thus, if a debtor holds no legal or equitable interest in property as of the

---

[1] Customer who held title over their Digital Asset according to FTX Terms of Service (the "FTX T.O.S.")

1

commencement of the case, such property does not become property of the debtor's estate under section 541 and the debtor is prohibited from distributing such property to its creditors. *See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 135-36 (1962)* ("The Bankruptcy Act simply does not authorize a [debtor] to distribute other people's property among a bankrupt's creditors . . . [S]uch property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy.").

2. The **intention** between Debtors and its customer is reflected in the FTX Terms of Service (the "FTX T.O.S.").

3. Absent a contrary legal or regulatory framework (such as the recording system governing the transfers of real property), courts look to the intent of the parties as evidenced in a written agreement. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010)* (holding that, as a general matter with respect to contracts, the intent of the parties controls); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)* (same); *The Elgee Cotton Cases, 89 U.S. 180, 186 (1874)* (applying intent of parties doctrine to question of transfer of title). Here, the parties entered into an arrangement governed by clear terms of service and unambiguous terms, so those terms govern the parties' relative rights. The ultimate objective in interpreting an agreement is to determine "the intention of the parties as derived from the language employed." *In re Lehman Bros. Holdings Inc., 439 B.R. 811, 825 (Bankr. S.D.N.Y. 2010) (quoting Tom Doherty Assocs. Inc. v. Saban Entm't Inc., 869 F. Supp. 1130, 1137 (S.D.N.Y. 1994))*.

4. As an initial matter, FTX T.O.S. expressly provide that title and ownership of digital assets remain with customers at all times.

- Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. As the owner of Digital Assets in your Account, you shall bear all risk of loss of such Digital Assets. FTX Trading shall have no

> liability for fluctuations in the fiat currency value of Digital Assets held in your Account.
>
> - None of the Digital Assets in your Account are the property of, or shall or may be loaned to, FTX Trading; FTX Trading does not represent or treat Digital Assets in User's Accounts as belonging to FTX Trading.
>
> - You control the Digital Assets held in your Account. At any time, subject to outages, downtime, and other applicable policies (including the Terms), you may withdraw your Digital Assets by sending them to a different blockchain address controlled by you or a third party.

Accordingly, the parties' intent initially/by default was to **not** pass any degree of ownership to FTX, meaning such assets cannot be property of the estate, subject to further terms regarding others activity (type of accounts) and type of assets (fiat and NFT).

## II. The Plan is a Ploy to Undermine FTX Customer (Original Not Claim Buyer) Who Held Title Over Their Digital Asset According to FTX T.O.S.

5. The Court should deny confirmation because it was not "proposed in good faith and not by any means forbidden by law." *11 U.S.C. § 1129(a)(3)*

6. In analyzing whether a plan has been proposed in good faith under § 1129(a)(3), the Third Circuit has instructed that "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re American Capital Equipment, LLC, 688 F.3d 145, 156 (3d Cir. 2012)* (citations omitted). *See also In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir.1984)*

7. Some of the Code objective is "discourag[ing] debtor misconduct," *Walters v. U.S. National Bank of Johnstown, 879 F.2d 95, 98 (3d Cir.1989)* and achieving fundamental fairness and justice. *In re Kaiser Aluminum Corp., 456 F.3d 328, 339–43 (3d Cir.2006).*

8. Where is justice in these Plan? It is injustice to; **First**, use voting mechanism to determine/settle/undermine customer property right issue. It does not matter how many people vote accept the Plan (which some of them may not even own title over their assets according to

3

FTX T.O.S.), as long as there just one customer[1], rejecting the plan, then it is not appropriate to confirm the plan. "The conduct of bankruptcy proceedings not only should be right but must seem right." *Knapp v. Seligson, 361 F.2d 164, 168 (2d Cir. 1966).* The Debtors' resistance to bring property right issue before the Court is another sign of their lack of good faith. In turn, debtors tried to exploit the bankruptcy process by slyly using the vote to settle this issue. *See In re Matter of Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir. 1984)* ("The court considered the "terms of the plan . . . , the history of the amendments to that plan and the conduct of the debtor and debtor's counsel throughout the Bankruptcy proceedings""). While in similar bankruptcy case (Celsius - Southern District of New York), Celsius Debtors seek clarity from the Court on the same novel issue (property right/T.O.S. issue) before presenting their Chapter 11 Plan.

    9.    In general, I agree, support, and presented the same arguments as U.S. Trustee (except section VIII) in their objection (D.I. 23610), particularly section V, "… a plan is not itself a settlement. Sending a plan to impaired creditors for a vote is not equivalent to parties negotiating a settlement among themselves".

> 63. The Court should deny confirmation because the Plan is impermissibly deemed to be a settlement under Federal Rule of Bankruptcy Procedure 9019
>
> 65. Section 1123(b)(3)(A) of the Bankruptcy Code allows a plan proponent to "provide for [] the settlement or adjustment of any claim or interest *belonging to the debtor or to the estate.*" 11 U.S.C. § 1123(b)(3)(A) (emphasis added).
>
> 66. Section 1123(b)(3) only allows a debtor to settle claims it has against others; it does not allow a debtor to settle claims that creditors and interest holders may have against it, which is what Plan § 5.2 seeks to do. *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers Inc.)*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("The only reference in [section 1123(b)] to adjustments of claims is the authorization for a plan to provide for 'the settlement or adjustment of any claim or interest *belonging* to the debtor or to the estate.' . . . It is significant that there is no parallel authorization regarding claims *against* the estate.") (emphasis in original) (quoting section 1123(b)(3)(A)) (internal citation omitted).
>
> 67. The resolution of claims against the Debtors is governed by sections 1129 and 1141.

4

> *68.* A plan may incorporate one or more negotiated settlements, but a plan is not itself a settlement. Sending a plan to impaired creditors for a vote is not equivalent to parties negotiating a settlement among themselves. A "settlement" is "an agreement ending a dispute or lawsuit." BLACK'S LAW DICTIONARY (10th ed. 2014). An "agreement" is "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Id.*
>
> *69.* Approval of settlements is governed by Federal Rule of Bankruptcy Procedure 9019, which provides that, "[o]n motion by the trustee [or chapter 11 debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." But, because a "settlement" requires an agreement between the settling parties, Rule 9019 governs only parties that have entered into an express settlement agreement; it is not a blanket provision allowing general "settlements" to be unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to "settle" their claims.
>
> *70.* The decision whether to approve a settlement under Rule 9019 is left to the sound discretion of the bankruptcy court, which "must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *Washington Mut.*, 442 B.R. at 338 (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).[10] In contrast, chapter 11 plans are subject to the requirements of Bankruptcy Code sections 1123 and 1129. *See In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005) ("Confirmation of a proposed Chapter 11 reorganization plan is governed by 11 U.S.C. § 1129."). What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" outside of the plan context is different from what may be permissible under a plan.[11]
>
> *71.* Here, Plan § 5.2 purports to treat the Plan itself as if it were a Rule 9019 "settlement." Further, it appears § 5.2 is not limited to settling claims belonging to the Debtors or the estates. Thus, § 5.2 exceeds the scope of what can be settled under section 1123(b)(3)(A). Unless § 5.2 is narrowed so that (i) it pertains only to claims the Debtors are settling against others and (ii) it provides the Plan itself is not a settlement, the Plan does not comply with section 1123(b)(3)(A) and does not satisfy section 1129(a)(1).

10. It is equally clear that the vote is not an acceptable method of adjudicating the property rights issue; in simple word, it is unjust. Those novel issue should be adjudicated before and by the Court not by voting.

11. **Second,** refuse imposing a constructive trust for the benefit of FTX customer[1]. "The Debtors believe that, as an equitable remedy, a constructive trust should not be imposed where it would lead to disproportionate recoveries for similarly situated creditors" (D.I. 19143). Even when

5

the Debtors acknowledge the existence of unjust enrichment in Disclosure Statement ". . . customers of both the FTX.US Exchange and the FTX.com Exchange may assert an unjust enrichment claim . . ." (D.I. 19143).

12.  "The salutary purpose of the constructive trust remedy is to prevent unjust enrichment" *Sharp v. Kosmalski, 40 N.Y.2d 119, 123 (N.Y. 1976)*. It is well settled that "[t]he underlying principle of a constructive trust is the equitable prevention of unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship." *Renaud v. Ewart, 712 A.2d 884, 885 (R.I. 1998) (mem.) (citing Simpson v. Dailey, 496 A.2d 126, 128 (R.I. 1985))*.

13.  As how it should be implemented, the only appropriate, practical, and just method is the Debtors to rebalance the asset they hold (into cryptocurrencies) to match the amount they owed to FTX customer[1]. Without doing so, any distributable asset may not match "today market value" by the time FTX customer[1] received it. As for tracing, U.S. Government (U.S. D.O.J.) through Professor Peter Easton (with assistance of The Brattle Group) has already done it with cooperation of the Debtors.

14.  **Third,** classified together, customer who held title over their Digital Asset according to FTX T.O.S., customer who own fiat, and/or E-money, and/or customer who may be classified as general unsecured creditor (if any, T.O.S. issue subject to adjudication by the Court)[2].

---

[2] For the record, the default setting when opening an FTX account (Blockfolio included) is a <u>spot account</u> and if FTX customer wishes to use other services or obtain additional privileges, they need to <u>opt in</u> (changed/activated/applied it in the account setting). Basically we could grouping them into 5 type of account/categories:
- Spot Account (default)
- Margin Account (need to be opt in/changed/activated/applied it in the account setting)
- Earn account (opt-in)
- Lending (opt-in)
- Staking (opt-in)

Which every type of account has their own part at FTX T.O.S.. The Court should also be aware that "USD" is quite special/unique as it is effectively a basket of USD, which customer could deposit and withdrawn on a 1:1 basis using either bank transfer or certain USD stablecoins (USDC, BUSD, TUSD, USDP).

Section 1122(a) specifies that only claims which are "substantially similar" may be placed in the same class. The phrase "substantially similar" means similar in legal character or effect as a claim against the debtor's assets. *Collier on Bankruptcy, 15th Ed. Vol. 5, pp. 1122-4*. Classification of claims "is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason." *In re Chateaugay Corp., 89 F.3d 942, 949 (2d Cir. 1996)*. Classification "should not do substantial violence to any claimant's interest." *In re LeBlanc, 622 F.2d 872, 879 (5th Cir. 1980)*.

15. Here, customer claims only separated by its voting/estimation/dollarization amount based on Estimation Order (D.I. 7090), whether its equal to or less than $50,000 or above $50,000, disregarding its unique characteristic/value as cryptocurrencies and ultimately its property right; in pursue to secure the vote of an impaired, assenting class of claims. Digital asset holder (which are subject to FTX T.O.S.), unlike other claimants, held a title over their asset, thereby give Digital Asset holder different status than the other claimants.

16. The outcome is so **unfair** and controversial. Under the Plan, the real economic recoveries for customer[1] who own/hold cryptocurrencies (such as BTC, ETH, XRP, etc.) is far below today market value. In contrary, under these Plan, certain customer (who own such as but not limited to fiat, USD, and USDT) and certain general unsecured creditors will **end up (literally) in a better financial position (in profit)** compared to their situation at the commencement of these Chapter 11 proceedings.

17. For FTX customer[1], if the Plan is confirmed as it currently stand, it would amount to a court-endorsed FTX scam v.2.0. Ironically, this would occur under U.S. legal system which overseen by a U.S. Judge and the U.S. Department of Justice (through the U.S. Trustee). "The

conduct of bankruptcy proceedings not only should be right but must seem right." *Knapp v. Seligson, 361 F.2d 164, 168 (2d Cir. 1966)*.

**18.** **For the avoidance of doubt, I also presented/submitted the same arguments in the U.S. Trustee Objection (D.I. 23610), except for section VIII, before the Court and made it (D.I. 23610) inseparable part of this objection. Thus, even if U.S. Trustee withdraw its objections or amend it, the entire arguments in the U.S. Trustee Objection (D.I. 23610) should still be considered/adjudicated by the Court.**

*[remainder of page intentionally left blank]*

## CONCLUSION

19.     The Court need to address these novel issue (property right issue/FTX T.O.S. issue) as it is way overdue (justice delayed is justice denied), before confirming any Plan and provide clarity to these questions:

   a. Do FTX customer assets belong to the FTX estate or not?
   b. Which kind of customers that held title (property right) over their assets, such that their assets do not belong to the estate?
      - Which type of account?
      - Which type of asset?

20.     Wherefore Samuel Gunawan respectfully request the Court to (a) provide clarity on the FTX T.O.S. issue, (b) deny confirmation of the Plan, and (c) provide such other relief as the Court deems just and proper.

Dated: August 31, 2024
Malang, Indonesia

Respectfully submitted,

**SAMUEL GUNAWAN**

*/s/ Samuel Gunawan*
Samuel Gunawan
Villa Puncak Krakatau 5
Malang, East Java 65151
Indonesia
E-mail: sam.ftxvictim@gmail.com



PRIORITY MAIL
U.S. POSTAGE PAID
C2M
eVS

**USPS PRIORITY MAIL®**

788723X1X1XPRI
Samuel Gunawan
PO BOX 100729
Arlington, VA 22210-3729

Judge John T. Dorsey
US Bankruptcy Court District of Delaware
824 N Market St FL 3
Wilmington, DE 19801

**USPS TRACKING # eVS**



**9205 5901 5266 1900 2085 2946 62**