## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  October 1, 2024 at 2:00 p.m. (ET)** |
| | **Re:  Docket No. 25637** |

### LAYERZERO GROUP'S OPPOSITION TO FTX TRADING'S MOTION FOR ENTRY OF AN ORDER QUASHING THE NOTICE OF DEPOSITION OF JOHN J. RAY III

LayerZero Labs Ltd. ("LayerZero"), Ari Litan, and Skip & Goose LLC ("Skip & Goose," and collectively with LayerZero and Ari Litan, the "LayerZero Group")[2] hereby submit this opposition (this "Opposition") to the Motion to Quash [Docket No. 25637] (the "Motion" or "Mot.") filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases").  In support of this Opposition, the LayerZero Group respectfully states as follows:

### PRELIMINARY STATEMENT

1.    The Motion is the ultimate result of legal gamesmanship in an effort to limit the Court's and the LayerZero Group's ability to understand and dispel the so-called "merits" of a fatally flawed chapter 11 plan.  It is inconceivable that the sole principal of a non-operating company in bankruptcy has both been "closely involved with the Customer Preference Settlement,

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    The LayerZero Group has filed the following proofs of claim: 5236, 5263, 5511, 85302, 85218, 85231, 85245, 85334, 85220, 85225, 85332, 85203, 85226, and 85338.

the Global Settlement, and the Plan" (Mot. ¶ 33), yet has "no unique knowledge" on those topics (Mot. ¶ 7).  FTX nevertheless asks the Court to endorse that fiction, and to deprive the LayerZero Group of asking ***the only principal of Debtors*** about these topics.  Mr. John J. Ray III does not sit at the "apex" of FTX; he sits alone on a flat plain as the sole principal and percipient witness who is not an outside advisor.

2.      The Debtors seek confirmation of the Plan that Mr. Ray was "closely involved" with and personally signed, even though the Global Settlement and Customer Preference Settlement that form the basis of that Plan is a textbook exercise in unequal treatment.  The LayerZero Group has a right to support its Plan objection (as requested by the Court at the Disclosure Statement Hearing) with evidence directly from the Debtors' sole employee regarding the basis for such unequal treatment as applied to the LayerZero Group's members, including the as-of-yet unknown underlying basis for excluding each of the LayerZero Group's members from sharing in the fruits of the Customer Preference Settlement.  There is nothing "harassing" about doing so, particularly given there are no lower-level employees to ask, and Mr. Ray has been "closely involved" with these issues.  Further, even though the Debtors have not established any basis to claim "burden"—including because, remarkably, "Mr. Ray will not be submitting a declaration in support of Plan confirmation and will not be called by the Debtors as part of their affirmative case at the Plan confirmation hearing" (Mot. ¶ 5)—the LayerZero Group is willing to limit Mr. Ray's deposition to three (3) hours on the record, and to travel to a location convenient for him, to avoid any undue imposition on his time.

3.      The Court should deny the Motion.

## BACKGROUND

### A.    The Chapter 11 Cases and the Plan

4.     The LayerZero Group was forced into these Chapter 11 Cases when the Debtors filed the *Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 105, 544, 547, 548 and 550, Del. Code Ann. Tit. 6, §§ 1304 And 1305, and for Disallowance of Claims Pursuant To 11 U.S.C. § 502* (Adv. Proc. 23-50492-JTD), Docket No. 1 (the "Complaint") on September 8, 2023.  Therein, the Debtors have brought claims and causes of action against members of the LayerZero Group relating to alleged preferences associated with withdrawals from each member's FTX.com or FTX US deposit account, and separate causes of action against LayerZero related to a cancellation of debt owed to LayerZero in exchange for a return of Alameda Ventures' LayerZero equity stake.

5.     In the time since the Debtors filed these Chapter 11 Cases, the Debtors have dealt with serious issues regarding how to treat the victims of the Debtors' self-proclaimed fraud whose assets were misappropriated.  Parties in interest, including the LayerZero Group, have raised serious questions regarding whether the Debtors could even sell the remaining crypto assets, given that the Debtors did not have a property interest in such assets in the first place.  In an effort to resolve these serious issues, the Debtors have proposed through the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 22165] (the "Plan")[3]  to enter into a grand bargain (i.e., the customer property settlement) with its creditors. Pursuant to this grand bargain, the Debtors seek to avoid subjecting over ten billion dollars worth of cryptocurrency assets to protracted litigation regarding ownership, as well as forensic tracing exercises and ancillary litigation relating to the management of such assets, including whether the

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

11754042v.2

Debtors violated any laws in liquidating such assets.  Instead, the Debtors propose to settle all of these disputes by giving each of their creditors (a) a share of the assets held by the Debtors in the amount of approximately 130-140% of the U.S. Dollar value of their deposited cryptocurrency as of the Petition Date, and (b) a waiver of "any Customer Preference Action against any Holder of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims if such Holder duly executes and timely returns a valid Ballot by the Voting Deadline that (i) votes to accept the Plan, and (ii) consents and stipulates to the amount of such Dotcom Customer Entitlement or U.S. Customer Entitlement Claim as set forth in the applicable Ballot for voting, allowance and Distribution purposes; *provided* that notwithstanding anything provided herein, the Debtors shall not waive and release any Excluded Customer Preference Action" (collectively, the "Customer Preference Settlement").  Plan § 5.5.

6.      This Customer Preference Settlement on its face appeared to include Mr. Litan and Skip & Goose (the "Litan Members"), and the Litan Members believed that the preference Counts of the Complaint—the only Counts of the Complaint asserted against or involving allegations against either of the Litan Members—would therefore be mooted by the Plan.  However, the Debtors have since made clear that the Litan Members will be excluded and, therefore, not treated the same as other similarly situated creditors.

7.      On August 16, 2024, the LayerZero Group filed the *Objection of LayerZero Labs Ltd., Ari Litan, and Skip & Goose LLC to Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization* of *FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 23158] (the "Confirmation Objection").

8.      The LayerZero Group filed the Confirmation Objection because the Plan contains serious infirmities regarding the treatment of its claims by excluding the LayerZero Group from

participating in the Customer Preference Settlement in violation of sections 1129(a)(1) and 1123(a)(4) of the Bankruptcy Code.  Confirmation Objection ¶ 29.  The LayerZero Group also asserts that the Plan was proposed in bad faith in violation of section 1129(a)(3) because, among other reasons, the Plan appears to be treating the Litan Members differently from other similarly situated creditors as a way to obtain leverage over LayerZero in the Adversary Proceeding. Confirmation Objection ¶ 37.[4]

9.      The LayerZero Group raised similar concerns in the *Objection of LayerZero Labs Ltd., Ari Litan, and Skip & Goose LLC to (A) Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan, and (B) Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-In-Possession* [Docket No. 16818] (the "Disclosure Statement Objection") and argued that the Plan was patently unconfirmable. Disclosure Statement Objection ¶¶ 21-25.

10.     While the Court overruled the Disclosure Statement Objection, the Court asked the LayerZero Group to come back with evidence for its objection at the Plan Confirmation hearing:

> [Y]ou gave me a lot of information, a lot of facts for which I have no evidence, which is why in a disclosure statement hearing, it's difficult to raise issues, especially bad faith.  You've got to have something that gives me something to hang on to, and I have nothing to hang on to.

---

[4] "Adversary Proceeding" shall mean the adversary proceeding filed at Adv. Pro. No. 23-50492-JTD.

I mean, they've presented their plan. They're arguing it is proposed in good faith. You're telling me it's not proposed in good faith. It's a fact issue. ***It's an issue for confirmation. So I'm going to overrule your disclosure statement objection and you obviously have the right to raise whatever objections you want to when you get to confirmation, but come with evidence***.

[Docket No. 19070 (DS Hearing Transcript) at 74:7-19 (emphasis added)].

11.     Notably, the Plan was signed by Mr. Ray, the CEO, CRO, and only principal of FTX.  Mr. Ray is the proposed Plan Administrator.  Plan § 2.1.144.  No other person—including the Debtors' advisors—has signed the Plan, nor does anyone else appear to have authority at the Debtors to bind them to the Plan.

### B.    LayerZero's Discovery Efforts

12.     The Debtors present the discovery efforts of the LayerZero Group as a concerted effort to "harass" Mr. Ray.  That is false:  the LayerZero Group has pursued discovery in the Adversary Proceeding as is its right, and, as the Court noted as a requirement, now separately seeks Plan discovery in support of its Plan objection in advance of the confirmation hearing on October 7, 2024.  The Debtors seek to conflate their reasons for not making Mr. Ray available in the Adversary Proceeding—namely, that he did not participate in the transactions at issue there—as a reason to deny confirmation discovery but cannot do so given the Debtors' concession that Mr. Ray has been "closely involved with the Customer Preference Settlement, the Global Settlement, and the Plan" (Mot. ¶ 33).

13.     On June 24, 2024, the LayerZero Group served certain discovery requests upon the Debtors in the Adversary Proceeding, including a notice of deposition addressed to Mr. Ray for September 24, 2024.  [Docket No. 25638-2].  After extensive discussions and a conference on August 23, 2024 [*see* Docket No. 25638-3 at 3-4], the Debtors refused to make Mr. Ray available for deposition in the Adversary Proceeding on the grounds that he has no personal knowledge

about **events that predated his role**—namely, the transactions that are the subject of the Adversary Proceeding.  [Docket No. 25638-3 at 3 ("We explained [on August 23] that Mr. Ray did not become involved with the Debtors until after the petition dates and after **the transactions at issue**, and thus would not have such knowledge") (emphasis added)].  The Debtors also stated that they would propose an extended schedule for the Adversary Proceeding—but after a week, the Debtors had proposed nothing.  *Id.* at 4.  The LayerZero Group has not presently moved to compel Mr. Ray's deposition in the Adversary Proceeding, and the Motion does not seek relief relating to the Adversary Proceeding in any event.

14.    On September 10, 2024—separate and apart from the Adversary Proceeding—the LayerZero Group served Mr. Ray with a deposition notice in an effort to compile the evidence to support its objection, as instructed by the Court.  [Docket No. 25638-1].  The deposition was scheduled to take place on September 24, 2024.  *Id.*

15.    On September 23, 2024, at 5:00 p.m. Eastern just hours before Mr. Ray's deposition was noticed to occur, the Debtors filed the Motion seeking relief from his deposition as part of confirmation discovery.  The Court should deny the Motion.

## ARGUMENT

16.    The Debtors argue that Mr. Ray should not be deposed in view of the "apex doctrine" on the grounds he has no "unique knowledge" and there are "other, less burdensome sources" that the LayerZero Group should explore before taking his testimony.  Mot. ¶ 7.  Debtors also assert that to seek Mr. Ray's deposition is to "burden and harass" him.  *Id.*  They are wrong.

17.    *First*, the Debtors offer no basis to conclude that Mr. Ray lacks unique knowledge about the Customer Preference Settlement, the Global Settlement, and the Plan.  Mr. Ray is the sole principal of the Debtors, signed the Plan, and was "closely involved" with the Customer

Preference Settlement, the Global Settlement, and the Plan.  The Debtors argue that Mr. Ray lacks unique knowledge on those topics because their outside advisors have given "extensive consideration" to them (Mot. ¶ 32), but whether *others* have considered a topic is irrelevant to establish that Mr. Ray lacks unique knowledge—particularly where he was "closely involved" with those topics (Mot. ¶ 33).  Further, whether the Debtors *choose* to rely on others to satisfy their burden at confirmation (Mot. ¶ 32) does not mean Mr. Ray lacks unique knowledge.

18.    The Debtors' apex-doctrine argument fundamentally fails because they cannot pass the buck to anyone else.  The Debtors argue that Mr. Ray's close involvement with the issues is "not sufficient to establish" he has unique knowledge in view of *Ford Motor Co.* and *Younges* (Mot. ¶ 33), but those cases show the opposite.  For one thing, in each of those cases, there were available lower-level executives or employees who were equally involved in the relevant issues. *Ford Motor Co. v. Edgewood Props., Inc.*, 2011 WL 677331, at *4 (D.N.J. Feb. 15, 2011) (noting "lower-level executives" who could provide testimony); *Younges v. 7-Eleven, Inc.*, 2015 WL 12844446, at *2 (D.N.J. Aug. 19, 2015) (noting "lower level employees" who could testify).  Here, Mr. Ray stands alone.  For another, the *Ford Motor Co.* court *denied* a motion to quash one executive's deposition because other lower-level employees either had no involvement in or no memory of the relevant events.  2011 WL 677331, at *4 ("Indeed, Edgewood has already conducted the depositions of various Ford employees who testified that they either could not remember the circumstances surrounding the sale, remediation and decommissioning of the Edison Plant, or were not involved in the decision-making process. Accordingly, Ford's motion for a protective order to prevent the deposition of Mr. Krygier is DENIED.")  That is precisely the situation here:  there are no lower-level employees to depose, and Mr. Ray stands alone.

19.     Put simply, the fact that Mr. Ray stands alone is precisely why he has personal, unique, and superior knowledge that compels him to appear for deposition. *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014) ("whether the executive has personal, superior, or unique knowledge on the relevant subject" key to permitting deposition of high-ranking officer). This is not a case where Mr. Ray is simply a person at the top of a company who lacks "personal knowledge about what is going on" with the company. *Id.* at *2. Instead, Mr. Ray is the sole principal of the Debtors, signed the Plan, and was "closely involved" with the Customer Preference Settlement, the Global Settlement, and the Plan. Among other things, Mr. Ray must have decided—or have been "closely involved" with the decision—to exclude the LayerZero Group from the Customer Preference Settlement and the Global Settlement; alternatively, if he has no idea why certain creditors have been excluded from those settlements and had no role in making those decisions, that would raise a different set of concerns. There is no other principal, officer, or employee of the Debtors who was closely involved (or involved at all) with those events who can provide percipient testimony on these issues.

20.     *Second*, the Debtors cannot establish that there are "other, less burdensome" sources for the discovery the LayerZero Group seeks. As the Debtors' own citations acknowledge, the law is clear "that "[t]he apex doctrine does not represent an exception to the rule that a party seeking to quash a subpoena bears the 'heavy burden' of demonstrating that the subpoena represents an undue burden." *United States ex. rel. Galmines v. Novartis Pharm.*, 2015 WL 4973626, at * (E.D. Pa. Aug. 19, 2015). Here, the Debtors cannot meet that standard.

21.     The Debtors argue that the availability of a Rule 30(b)(6) deposition qualifies as less-burdensome means in view of *Reif v. CNA* and *Roman v. Cumberland Insurance Group* (Mot.

¶ 34), but the Debtors' authorities miss the mark.  In both cases, lower-level employees existed and were either actually deposed (as in *Reif*), or had been identified via sworn affidavit as the persons with superior knowledge available for deposition (as in *Roman*).  *Reif v. CNA*, 248 F.R.D. 448, 453-54 (E.D. Pa. 2008) (denying CEO deposition in part because "the Reifs have deposed lower level employees with personal knowledge to Michael Reif's termination"); *Roman v. Cumberland Ins. Grp.*, 2007 WL 4893479, at *1 n.1 (E.D. Pa. Oct. 26, 2007) ("In the case before the Court, the defendants have produced sworn testimony that their executives have no direct knowledge of plaintiff's claim, and that the claims adjuster assigned to plaintiff's claim is available to testify.")  Here, no such persons exist—or if they do, the Debtors have provided no sworn statements identifying them.

22.     The Debtors' reliance on *Reif* and *Roman* also exposes a fatal flaw in their "burden" argument:  they cite no authority for the proposition that an ***outside designee*** under Rule 30(b)(6) is a substitute for a party's sole principal with ***any*** percipient knowledge of events.  Rule 30(b)(1) seeks testimony from witnesses based on their personal knowledge, whereas Rule 30(b)(6) seeks testimony from prepared witnesses that will bind an organization regardless of their personal knowledge.  The latter is not a substitute for the former, and the availability of ***outside*** designees is likewise not a substitute for Mr. Ray's testimony—including in view of the Debtors' own cases.

23.     The Debtors do nothing to establish that Mr. Ray would endure any improper burden through testifying.  Mr. Ray is not preparing for the confirmation hearing, because the Debtors represent that he will not testify in support of confirmation.   Unlike the vast majority of "apex doctrine" cases, Mr. Ray is not in the throes of running an operational company:  Mr. Ray's entire job is to navigate the Debtors through bankruptcy, as the Debtors have no operations that

Mr. Ray is overseeing.  Further, the LayerZero Group is willing to limit Mr. Ray's deposition to three (3) hours on the record and travel to a location convenient for him.

24.    *Third*, the Debtors' assertion that the LayerZero Group seeks Mr. Ray's deposition to "harass" him is baseless.  The point of seeking Mr. Ray's deposition via confirmation discovery is to seek discovery on the confirmability of the Plan—in particular, why the Litan Members have been excluded from the Global Settlement that forms the backbone of the Plan, including the facts and factors that went into the decision to exclude them.  As it stands, the Debtors' decision to exclude the Litan Members appears to be a textbook example of unfair treatment among the same classes of creditors.  The LayerZero Group is entitled to ask the ***sole principal*** of the Debtors about the decision to exclude them and the basis for it.

25.    The Debtors' other "harassment" arguments are misplaced.  The Debtors complain that the LayerZero Group seeks Mr. Ray's deposition "on the eve of the Plan confirmation hearing" (Mot. ¶ 35), but there is nothing inappropriate about sending a notice ***twenty-seven days in advance*** of the confirmation hearing for a deposition to occur ***nearly two weeks*** before that hearing, nor is there anything "harassing" about seeking admissible testimony for confirmation in view of the Court's comments at the Disclosure Statement hearing.  Additionally, Mr. Ray is not preparing to offer any declaration or oral testimony at confirmation, and therefore cannot claim that testifying would impair his ability to prepare for confirmation.  The Debtors also broadly complain about the LayerZero Group's discovery efforts in the Adversary Proceeding (Mot. ¶¶ 17-20), but that is irrelevant:  as noted above, whether Mr. Ray knows about the ***transactions*** at issue in the Adversary Proceeding is a separate question from whether Mr. Ray knows about the Global Settlement, the Customer Preference Settlement, and the Plan.

11

## <u>CONCLUSION</u>

26.     Based on the foregoing, the LayerZero Group respectfully requests that the

Debtors' Motion be denied.


Dated: September 25, 2024
          Wilmington, Delaware

<div style="margin-left: 40%">

By*: /s/ R. Stephen McNeill*
        M. Blake Cleary (No. 3614)
        R. Stephen McNeill (No. 5210)
        Sameen Rizvi (No. 6902)
        **POTTER ANDERSON & CORROON LLP**
        1313 N. Market Street, 6th Floor
        Wilmington, Delaware 19801
        Telephone: (302) 984-6000
        Facsimile: (302) 658-1192
        Email: bcleary@potteranderson.com
                rmcneill@potteranderson.com
                srizvi@potteranderson.com

        -and-

        Brian S. Rosen, Esq.
        Dylan J. Marker, Esq.
        **PROSKAUER ROSE LLP**
        Eleven Times Square
        New York, NY 10036-8299
        Telephone:  (212) 969-3000
        Facsimile:  (212) 969-2900
        Email:  brosen@proskauer.com
                dmarker@proskauer.com

         -and-

        Jordan E. Sazant (DE Bar No. 6515)
        **PROSKAUER ROSE LLP**
        70 West Madison, Suite 3800
        Chicago, Illinois 60602-4342
        Telephone: (312) 962-3550
        Email: jsazant@proskauer.com

        -and-

</div>

12

William D. Dalsen, Esq.
Genesis Sanchez Tavarez, Esq.
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Email:  wdalsen@proskauer.com
         gsancheztavarez@proskauer.com

*Counsel to LayerZero Group*

11754042v.2