## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 22, 2024 at 1:00 p.m. (ET)**<br>**Obj. Deadline: October 9, 2024 at 4:00 p.m. (ET)** |

**FTX DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE FTX DEBTORS' ENTRY INTO, AND PERFORMANCE UNDER,
THE GLOBAL SETTLEMENT AGREEMENT WITH THE MDL PLAINTIFFS
AND MDL COUNSEL; (B) APPROVING THE GLOBAL SETTLEMENT
AGREEMENT; AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the FTX Debtors' entry into, and performance under, the Global Settlement Agreement (the "Global Settlement Agreement"),[2] attached as Exhibit 1 to the Order, between and among (i) the FTX Debtors, (ii) each of the counsel identified in the Global Settlement Agreement ("MDL Counsel") representing plaintiffs in the multidistrict litigation captioned *In re FTX Cryptocurrency Exchange Collapse Litigation*, MDL No. 23-03076 (S.D. Fla.) (the "FTX MDL"), and (iii) each of the named

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these chapter 11 cases, a complete list of debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to such terms in the Global Settlement Agreement.

plaintiffs in the actions pending in the FTX MDL identified in the Global Settlement Agreement (the "MDL Plaintiffs," and collectively with the FTX Debtors and MDL Counsel, the "Parties"); (b) approving the Global Settlement Agreement; and (c) granting related relief.  In support of the Motion, the FTX Debtors respectfully state as follows:

### Preliminary Statement

1.      The Global Settlement Agreement provides a comprehensive resolution of numerous complex disputes between the FTX Debtors, the MDL Plaintiffs, and MDL Counsel spanning multiple federal courts, without the cost and delay of litigation, and is designed to ensure that the FTX Debtors can maximize all potential sources of claims recovery for the benefit of their customers and other creditors.

2.      The Global Settlement Agreement provides clarity to the Parties as to where claims should be prosecuted, against which defendants and by whom, and how recoveries will be addressed, thereby ending expensive litigation over these standing and venue issues in this Court and the MDL Court.  The FTX Debtors believe that their request to enforce the stay against estate claims asserted in the FTX MDL against the FTX Insiders, the Domestic VC Investors, and Multinational VC Investors, and to preliminarily enjoin those actions to prevent interference with the FTX Bankruptcy Proceedings would ultimately be granted, and that the MDL Plaintiffs' arguments in opposition lack merit.  But continued litigation of these complex issues is not without risk and would have undermined the premises of the Injunction Adversary Proceeding:  To enable the FTX Debtors to focus on the FTX Bankruptcy Proceedings and to preserve and maximize distributable value to creditors.

3.      The Global Settlement Agreement allows for just that, and establishes a constructive relationship with the MDL Plaintiffs and MDL Counsel going forward that will inure to the benefit of the FTX Debtors' stakeholders.  In fact, the Global Settlement Agreement delivers

the FTX Debtors' key objectives while also creating an opportunity for the FTX Debtors' estates and their creditors to benefit from the work being done in the FTX MDL.

4.    Among other things, the MDL Plaintiffs agree to abandon their efforts to divert forfeiture proceeds from this Bankruptcy Court to the MDL in Florida. Moreover, the Global Settlement Agreement crystalizes which claims the MDL Plaintiffs and MDL Counsel will be able to pursue, but does so without the FTX Debtors conferring standing or abandoning any claims, and fully reserves the FTX Debtors' rights to bring their own claims and to assert interests in any litigation or settlement proceeds. The Parties also agree to coordinate on information sharing and on litigation claims where appropriate. And the MDL Plaintiffs agree to support the FTX Debtors' Chapter 11 Plan and to not take steps to delay, impede, or prevent the consummation of the Chapter 11 Plan.

5.    The FTX Debtors submit that the FTX Debtors' entry into, and performance under, the Global Settlement Agreement is well within the range of reasonableness because it will avoid costly, time-consuming, and uncertain litigation for minimal cost to the FTX Debtors, and may result in the FTX Debtors obtaining incremental value for their estates and their stakeholders. Accordingly, the Motion should be granted and the Global Settlement Agreement approved.

## Background

6.    On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the FTX Debtors filed with this Court voluntary petitions for relief under the Bankruptcy Code. The FTX Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the FTX Debtors' cases was authorized by this Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee

for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

7.      On June 28, 2023, this Court entered the *Order (I)(A) Establishing Deadlines for Filing Customer Proofs of Claim, (B) Approving Procedures for Submitting Proofs of Claim, and (C) Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 1793] (the "Customer Bar Date Order"), setting the deadline for customers to file proofs of claim on account of Customer Claims as September 29, 2023.

8.      Additional factual background relating to the FTX Debtors' businesses and the commencement of the FTX Bankruptcy Proceedings set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

## Facts Specific to the Relief Requested

### A.      The MDL Plaintiffs Commence Multiple Actions That Are Consolidated in the FTX MDL.

9.      Between November 15, 2022 and February 3, 2023, certain of the eventual MDL Plaintiffs commenced multiple actions against various parties that had been affiliated with the FTX Group prior to the commencement of the FTX Bankruptcy Proceedings.[3]  On June 5, 2023, these actions were consolidated by the United States Judicial Panel on Multidistrict Litigation [FTX MDL D.I. 1].

---

[3]      *See Garrison* v. *Bankman-Fried*, No. 22-cv-23753 (S.D. Fla. Nov. 15, 2022); *Lam* v. *Bankman-Fried*, No. 22-cv-07336 (N.D. Cal. Nov. 21, 2022); *Pierce* v. *Bankman-Fried*, No. 22-cv-07444 (N.D. Cal. Nov. 23, 2022); *Hawkins* v. *Bankman-Fried*, No. 22-cv-07620 (N.D. Cal. Dec. 2, 2022); *Jessup* v. *Bankman-Fried*, No. 22-cv-07666 (N.D. Cal. Dec. 5, 2022); *Podalsky* v. *Bankman-Fried*, No. 22-cv-23983 (S.D. Fla. Dec. 7, 2022); *Papadakis* v. *Bankman-Fried*, No. 22-cv-00024 (N.D. Cal. Jan. 3, 2023); *Norris* v. *Brady*, No. 23-cv-20439 (S.D. Fla. Feb. 3, 2023), ECF No. 1-2.

10. In June 2023, the FTX Debtors commenced, among other actions, adversary proceedings against the K5 Defendants [D.I. 1679], the FTX Insiders [D.I. 1886], and Daniel Friedberg [D.I. 1727] in the FTX Bankruptcy Proceedings.

11. In August 2023, MDL Counsel filed amended consolidated complaints in the FTX MDL on behalf of the MDL Plaintiffs. These complaints alleged various causes of action—including fraud, conversion, unjust enrichment, breach of fiduciary duty, misrepresentation, negligence, conspiracy, and other intentional torts—against various defendants, including the FTX Insiders [FTX MDL D.I. 178], the Promoters and Digital Creators [FTX MDL D.I. 179], the Domestic VC Investors [FTX MDL D.I. 157], the Multinational VC Investors [FTX MDL D.I. 182], the Bank Defendants [FTX MDL D.I. 155], and the FTX Accountants [FTX MDL D.I. 153, 158].

12. On October 2, 2023, the MDL Court ordered the MDL FTX Insiders Action, and discovery as to all other MDL actions, stayed, pending the outcome of Samuel Bankman-Fried's Criminal Case [FTX MDL. D.I. 318].

**B.     The FTX Debtors Commence the Injunction Adversary Proceeding.**

13. On March 27, 2024, the MDL Plaintiffs moved for the preliminary approval of settlements with certain FTX Insiders, Mr. Friedberg, and certain Promoters and Digital Creators [FTX MDL D.I. 565]. On April 19, 2024, the MDL Plaintiffs supplemented the motion for preliminary approval of settlements with a settlement with Mr. Bankman-Fried [FTX MDL D.I. 618-1]. Each of these settlements contemplates providing releases to the settling defendants.

14. To prevent these broad releases from interfering with the FTX Debtors' litigation of some of the same claims against those same defendants, and to prevent interference with the flow of forfeiture proceeds to the FTX Debtors' estates—which the FTX Debtors anticipate will serve as a substantial source of creditor recoveries—on June 3, 2024, the FTX

Debtors commenced the Injunction Adversary Proceeding and filed a motion seeking a preliminary injunction against the MDL Plaintiffs in this Court (the "Stay Motion").  The Injunction Adversary Proceeding seeks to:  (i) enforce the automatic stay in section 362(a) of the Bankruptcy Code with respect to the claims asserted against the FTX Insiders, the Domestic VC Investors, and the Multinational VC Investors; (ii) extend the stay to those actions to the extent the actions asserted claims that are not property of the estates in order to protect the FTX Debtors' reorganization efforts; and (iii) enjoin the assertion of claims against the FTX Insiders, the Domestic VC Investors, and the Multinational VC Investors to prevent further interference with the FTX Bankruptcy Proceedings.

15.    On June 17, 2024, the MDL Plaintiffs filed an ancillary petition in the Criminal Case against Mr. Bankman-Fried asserting interests in, and rights to all or part of, the assets seized by the U.S. Department of Justice in partial satisfaction of the Bankman-Fried Forfeiture Order [C.A. No. 22-cr-673 D.I. 454].

16.    On June 26, 2024, counsel to the MDL Plaintiffs filed an objection to the FTX Debtors' Stay Motion, contesting, among other things, the FTX Debtors' ownership of FTX customer deposits and certain causes of action, as well as this Court's jurisdiction to decide the Stay Motion [Injunction Adv. D.I. 9].  The FTX Debtors believe their litigation positions would prevail, including that the FTX Debtors own the claims asserted in the FTX MDL.  Furthermore, the FTX Debtors contend that this Court has exclusive jurisdiction to determine what is estate property and concurrent jurisdiction to enforce provisions of the Bankruptcy Code, such that determination of the disputed issues in this Court is not only proper but required.

### C.    The MDL Plaintiffs Are Ordered to Show Cause and Move for an Injunction.

17.    On July 18, 2024, Judge Moore in the FTX MDL issued a *sua sponte* order to show cause, requiring the MDL Plaintiffs to explain (i) why the Court should not defer ruling

on their request for preliminary approval, (ii) whether the Court should independently examine the issues raised by the FTX Debtors in the Injunction Adversary Proceeding, and (iii) what impact the FTX Debtors' notice to the MDL Court and the Injunction Adversary Proceeding would have on the MDL Plaintiffs' proposed settlements [FTX MDL D.I. 706].

18.    On August 1, 2024, the MDL Plaintiffs submitted a response to the MDL Court's order and concurrently filed a motion for an injunction under the All Writs Act (28 U.S.C. § 1651(a)) to enjoin the FTX Debtors from continuing the Injunction Adversary Proceeding in this Court, principally on the same grounds asserted in their Objection to the Stay Motion (the "All Writs Act Motion") [FTX MDL D.I. 714].  The FTX Debtors believe they have strong bases to oppose the All Writs Act Motion, including on the grounds that the MDL Plaintiffs possess and have taken advantage of other adequate remedies at law, that federal courts are extremely reluctant to enjoin litigation in other federal courts, and that district courts broadly defer to specialized proceedings in bankruptcy because bankruptcy courts are better situated to adjudicate issues of bankruptcy law in the general interests of all creditors in a pending bankruptcy proceeding.

**D.    The Global Settlement Agreement**

19.    The Parties have simultaneous applications pending in two different federal courts seeking, effectively, anti-suit injunctions against each other.  The Parties agree that the pending disputes are dilatory, burdensome, and will be expensive to litigate to conclusion.  The Parties further agree that the shared goal of maximizing creditor recoveries is best achieved by avoiding further litigation and instead working cooperatively where appropriate going forward.

20.    The Parties have engaged in extensive arm's-length settlement negotiations that have resulted in the Global Settlement Agreement, which provides, among other things:

> (i)    MDL Plaintiffs and MDL Counsel can pursue Excluded Independent Actions and the MDL Continuing Actions in the FTX MDL without regard to the stay, injunction, or anti-double dip provisions in the Chapter 11 Plan, provided that the Parties do not take any position for purposes of the Global

Settlement Agreement as to whether any of the claims asserted in the MDL Continuing Actions are property of the FTX Debtors' estates and all rights are reserved;

(ii)     The claims of the MDL Plaintiffs shall be Allowed Claims pursuant to the Chapter 11 Plan in the FTX Bankruptcy Proceedings in the amounts set forth in the schedule attached as <u>Exhibit D</u> to the Global Settlement Agreement;

(iii)    MDL Plaintiffs and MDL Counsel shall withdraw, with prejudice, their *Ancillary Petition for Hearing to Adjudicate Validity of Legal Interest and Right to Forfeited Property* under 21 U.S.C. §853(n) filed in the Criminal Case, and will not seek to otherwise recover from the Seized Property or any forfeited property, or interfere in any way with the FTX Debtors' Forfeiture Petition or any property seized or forfeited by the U.S. Department of Justice and being sought by the FTX Debtors for distribution in the FTX Bankruptcy Proceedings;

(iv)    MDL Counsel and each of the MDL Plaintiffs shall, among other things (a) support, vote (if eligible to vote) in favor of, and not object to the FTX Debtors' Chapter 11 Plan; (b) file a statement in support of confirmation of the Chapter 11 Plan; (c) cooperate with the FTX Debtors and take such other actions as are reasonably requested by the FTX Debtors in support of confirmation of the Chapter 11 Plan; and (d) not take any action to delay, impede or prevent the consummation of the Chapter 11 Plan, and not solicit or encourage any other person to do so;

(v)     The Parties shall dismiss or withdraw (as applicable), with prejudice, the Injunction Adversary Proceeding, the All Writs Motion, and any objections to the Chapter 11 Plan;

(vi)    The MDL Plaintiffs agree not to commence or continue litigation of any kind relating to the FTX Debtors other than Excluded Independent Actions and the MDL Continuing Actions, and to amend or withdraw with prejudice pending pleadings accordingly.  MDL Counsel agree not to take any action inconsistent with the terms of this Global Settlement Agreement;

(vii)   The FTX Debtors retain the right to assert, prosecute, and settle any claims and causes of action which are property of the FTX Debtors' estates against any defendant in any of the MDL Continuing Actions or any Excluded Independent Action.  The MDL Plaintiffs and MDL Counsel agree that they will not object to any settlement entered into by the FTX Debtors with any defendant in any of the MDL Continuing Actions or Excluded Independent Action as long as such settlement is limited to claims or causes of action of the FTX Debtors' estates;

(viii)  The MDL Plaintiffs and MDL Counsel shall move to stay the MDL Plaintiffs' Insider Settlement Approval Motion until such time as the FTX

Debtors have resolved estate claims against the FTX Insiders and Mr. Friedberg or as otherwise agreed with the FTX Debtors, *provided*, however, that MDL Counsel and the MDL Plaintiffs may, in their discretion, sever the pending settlements with respect to claims against Promoters and Digital Creators and seek their approval from the MDL Court subject to the terms set forth in the Global Settlement Agreement;

(ix)    The allocation of value from the MDL Continuing Actions is to be negotiated and agreed between the FTX Debtors and MDL Counsel at a later date, with all rights reserved;

(x)     The Parties agree to coordinate on information sharing in good faith with respect to the Excluded Independent Actions and the MDL Continuing Actions. The Parties may, but will not be required to, coordinate on any other claims or causes of action where mutually beneficial to maximize the value of claims or settlements; and

(xi)    The MDL Plaintiffs and the FTX Debtors will exchange mutual releases, subject to the terms of the Global Settlement Agreement.

## Jurisdiction

21.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Pursuant to Local Rule for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the FTX Debtors consent to the entry of a final order or judgment by this Court in connection with this Motion to the extent it is later determined that this Court, absent consent of the Parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

22.     By this Motion, the FTX Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the FTX Debtors' entry into, and

performance under, the Global Settlement Agreement, (b) approving the Global Settlement Agreement, and (c) granting certain related relief.

**Basis for Relief**

**I.      The Global Settlement Agreement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable, and in the FTX Debtors' Best Interests.**

23.      Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).   The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006). "[I]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *In re Penn Cent. Transp. Co*., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *TMT Trailer Ferry*, 390 U.S. at 424).

24.      "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvass the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs*., 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co*., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the

settlement is the best possible compromise.  Rather, the court must conclude that the settlement is

'within the reasonable range of litigation possibilities.'" (internal citations omitted)).

25.     Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent

part, that the "court may issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Taken together,

section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a

proposed compromise and settlement when it is in the best interests of the debtor's estate and its

creditors.  *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *In re Louise's, Inc.*,

211 B.R. at 801.

26.     The Third Circuit has enumerated four factors that should be considered in

determining whether a compromise should be approved: "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and

the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of

the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*,

434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a

settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT

Trailer Ferry*, 390 U.S. at 424-25; *In re Marvel Ent. Group, Inc.*, 222 B.R. at 250 (proposed

settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J.

1997).  The test boils down to whether the terms of the proposed compromise fall "within a

reasonable range of litigation possibilities."  *In re Penn Cent. Transp. Co.*, 596 F.2d at 1114

(citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

27.     Applying these factors to the Global Settlement Agreement unambiguously

supports its approval.

A.      **The Paramount Interests of Creditors.**

28.      The interests of the FTX Debtors, their estates, and all customers and other stakeholders are best served through entry into the Global Settlement Agreement.  This agreement immediately ends the litigation pending between the Parties in multiple forums by charting a constructive and consensual path going forward by which the value of litigation claims against third parties can be maximized for the benefit of the FTX Debtors' customers and other creditors.

29.      The Global Settlement Agreement is overwhelmingly in the best interests of the FTX Debtors, their estates and stakeholders because it puts an immediate end to complex jurisdictional disputes between the Parties that otherwise would continue to be litigated for potentially an extended period of time in two courts at great expense, for little cost to the FTX Debtors' estates.

30.      The Global Settlement Agreement favorably resolves every issue of importance to the FTX Debtors by ensuring the support of the MDL Plaintiffs and MDL Counsel for the Chapter 11 Plan and the remission of the Seized Assets held by the U.S. Department of Justice to the FTX Debtors.  Moreover, the Global Settlement Agreement provides the possibility of an enhanced return for creditors through the MDL Continuing Actions and any recoveries achieved therein.  The coordination contemplated with respect to certain claims will help maximize their value.  The Global Settlement Agreement also allows certain customer claims and finally resolves all issues between each of the individual MDL Plaintiffs and the FTX Debtors, including all scheduled claims and proofs of claim filed in accordance with the Customer Bar Date Order, without the need for further claims reconciliation or litigation.

31.      As a result, the FTX Debtors have determined that entering into the Global Settlement is in the FTX Debtors' best interests and respectfully request that this Court approve it pursuant to Rule 9019 of the Bankruptcy Rules.

**B.      The Probability of Success in Litigation.**

32.      The FTX Debtors maintain that they would achieve the relief they seek through the Injunction Adversary Proceeding and the Criminal Case, and were ready to file further submissions in support of their positions.  However, litigation always presents uncertainties, and here there are complex issues presented that raise important jurisdictional and venue questions with broader implications.  The remedy sought, an injunction, creates the possibility of an interlocutory appeal, and the novelty of some of the issues all but ensures appeals and their concomitant uncertainty and delay.  Furthermore, the concurrent proceedings create a real risk of inconsistent orders from this Court and the MDL Court that would then need to be reconciled.

33.      The Global Settlement Agreement provides a result acceptable to the FTX Debtors at little cost without the need for any of these complex issues to be litigated or decided by either this Court or the MDL Court.

**C.      The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay.**

34.      As noted, the Parties' pending litigation spans two federal courts and seeks dueling injunctions that implicate important subject matter jurisdiction and venue issues.  Continued litigation of these issues would be costly and time-consuming.  The MDL Plaintiffs have also made clear that, in the absence of the Global Settlement Agreement, they would pursue an objection to the Chapter 11 Plan and other litigation that would simply add to the costs and burden on the FTX Debtors.  Continued litigation could also result in a delay in the FTX Debtors' Chapter 11 Plan being confirmed and distributions being made to creditors.  All of this wasteful litigation becomes unnecessary with the Global Settlement Agreement and permits resources to be preserved for the benefit of creditors.

35.      The Global Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of the FTX Debtors, their estates, and stakeholders.

Accordingly, the FTX Debtors respectfully submit that the Global Settlement Agreement satisfies the *Martin* factors and request that this Court approve the Global Settlement Agreement and authorize the FTX Debtors to enter into and perform under it.

### Waiver of Bankruptcy Rule 6004(h)

36.    Given the nature of the relief requested herein, the FTX Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to maximize the value of the FTX Debtors' assets, and ample cause exists to justify a waiver of the stay period to the extent applicable.

### Reservation of Rights

37.    Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the FTX Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the FTX Debtors or their estates to contest the validity, priority, or amount of any claim against the FTX Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the FTX Debtors or their estates with respect to any and all claims or causes of action against any third party.

### Notice

38.    Notice of this Motion has been provided to:    (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) MDL Counsel; (e) the MDL Plaintiffs; (f) the U.S. Department of Justice; (g) the United States Attorney for the District of Delaware; and (h) to the extent not listed herein, those parties requesting notice pursuant

to Bankruptcy Rule 2002. The FTX Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

<u>Conclusion</u>

WHEREFORE, for the reasons set forth herein, the FTX Debtors respectfully request that this Court (a) enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, and (b) grant such other and further relief as is just and proper.

Dated: September 25, 2024  
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
landis@lrclaw.com
mcguire@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
       bromleyj@sullcrom.com
       gluecksteinb@sullcrom.com
       kranzleya@sullcrom.com

*Counsel for the FTX Debtors and Debtors-in-Possession*