**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 19068, 19143 & 26029** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

FTX Trading Ltd. and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), having:[2]

a.    commenced these chapter 11 cases, (i) on November 11, 2022 for all Debtors except for West Realm Shires Inc. and (ii) on November 14, 2022 for West Realm Shires Inc., in each case, by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" and, all such cases, the "Chapter 11 Cases");[3]

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms used but not otherwise defined in this order (this "Confirmation Order") shall have the meanings ascribed to such terms in the Plan, attached hereto as Exhibit A.  The rules of interpretation set forth in Section 2.2 of the Plan shall apply to this Confirmation Order.

[3]    During these Chapter 11 Cases, the following Debtors were dismissed: (i) SNG Investments Yatirim Ve Danismanlik Anonim Sirketi (Case No. 22-11093); (ii) FTX Turkey Teknoloji Ve Ticaret Anonim Sirketi (Case No. 22-11170); (iii) FTX Exchange FZE (Case No. 22-11100); (iv) Liquid Financial USA, Inc. (Case No. 22-11151); (v) LiquidEX, LLC (Case No. 22-11152); (vi) Zubr Exchange Limited (Case No. 22-11132); (vii) DAAG Trading, DMCC (Case No. 22-11163); (viii) FTX Crypto Services Ltd. (Case No. 22-11165); (ix) FTX Products (Singapore) Pte Ltd. (Case No. 22-11119); (x) Liquid Securities Singapore Pte Ltd. (Case No. 22-11086); (xi) Analisya Pte Ltd. (Case No. 22-11080); (xii) Quoine Vietnam Co. Ltd. (Case No. 22-11092); (xiii) Alameda Aus Pty Ltd. (Case No. ); (xiv) Alameda Research Pte Ltd. (Case No. 22-11107); (xv) Innovatia Ltd. (Case No. 22-11128); (xvi) FTX Japan Services K.K. (Case No. 22-11103); (xvii) Quoine India Pte Ltd. (Case No. 22-11091); (xviii) FTX Switzerland GmbH (Case No. 22-11169); (xix) FTX Certificates GmbH (Case No. 22-11164); (xx) FTX Structured Products AG (Case No. 22-11122); (xxi) FTX Trading GmbH (Case No. 22-11123); and (xxii) FTX Japan K.K.(Case No. 22-11102).

b.      filed, on October 16, 2023, the *Notice of Proposed Settlement of Customer Property Disputes* [D.I. 3291], attaching the Settlement and Plan Support Agreement thereto as Exhibit A, which is implemented through the Customer Priority Settlement contained in the Plan;

c.      filed, on December 16, 2023, the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 4861];

d.      filed, on December 16, 2023, the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [D.I. 4862] (including all exhibits and schedules thereto, the "Disclosure Statement");

e.      filed, on December 16, 2023, the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 4863];

f.      filed, on December 27, 2023, the *Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 5202] (the "Digital Assets Estimation Motion");

g.      filed, between May 7, 2024 and June 25, 2024, multiple revised versions of the Plan [D.I. 14300, 15520, 18536 and 18975] and the Disclosure Statement [D.I. 14301, 15521, 18437 and 18976], each reflecting additional updates and discussions with parties in interest;

h.      filed, on June 27, 2024, the solicitation versions of the Plan [D.I. 19139] and Disclosure Statement [D.I. 19143];

i.      caused to be distributed solicitation materials by July 10, 2024, consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"), which approved, among other things, solicitation and voting procedures (the "Solicitation and Voting Procedures") and related materials, notices, forms and ballots to be provided to each Class (collectively, the "Solicitation Packages"), as evidenced by the *Affidavit of Mailing of James Daloia* [D.I. 25841] (the "Kroll Affidavit of Service");

j.      caused the publication of the Confirmation Hearing Notice in *The New York Times* on July 3, 2024, the international edition of *The New York Times* on July 8, 2024, and on *Coindesk.com* from July 3 through July 10, 2024, as evidenced by the Certificate of Publication [D.I. 23987] (the "Publication Certification");

k.    filed, on August 2, 2024, the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 22165], reflecting additional updates and discussions with parties in interest;

l.    filed, on August 2, 2024, the Plan Supplement [D.I. 22163] (as amended and supplemented from time to time, the "<u>Plan Supplement</u>") in accordance with the Solicitation Procedures Order, containing the following documents:  (i) the Draft Plan Administration Agreement (<u>Exhibit 1</u> to the Plan Supplement); (ii) the Liquidating Trust Agreement (<u>Exhibit 2</u> to the Plan Supplement); (iii) the List of Wind Down Board Members (<u>Exhibit 3</u> to the Plan Supplement); (iv) the List of Advisory Committee Members (<u>Exhibit 4</u> to the Plan Supplement); (v) the List of Excluded Customer Preference Actions (<u>Exhibit 5</u> to the Plan Supplement); (vi) the Wind Down Budget (<u>Exhibit 6</u> to the Plan Supplement); (vii) the List of Assumed Executory Contracts and Unexpired Leases (<u>Exhibit 7</u> to the Plan Supplement); (viii) the List of Excluded Entities (<u>Exhibit 8</u> to the Plan Supplement); (ix) the List of Separate Subsidiaries (<u>Exhibit 9</u> to the Plan Supplement); and (x) the Amended and Restated Rothschild Reimbursement Agreement (<u>Exhibit 10</u> to the Plan Supplement);

m.    filed, on August 30, 2024, the *Notice of (I) Executory Contracts and Unexpired Leases Proposed to Be Assumed by the Debtors Pursuant to the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates, (II) Cure Amounts, If Any, and (III) Related Procedures In Connection Therewith* [D.I. 24029] (as amended and supplemented from time to time, the "<u>Cure Notice</u>") and caused the Cure Notice to be distributed to counterparties to the Debtors' Executory Contracts and Unexpired Leases identified therein, as evidenced by, among other things, the *Affidavit/Declaration of Mailing of Ali Hamza Regarding Notice of (I) Executory Contracts and Unexpired Leases Proposed to Be Assumed by the Debtors Pursuant to the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates, (II) Cure Amounts, If Any, and (III) Related Procedures In Connection Therewith*  [D.I. 24485] (the "<u>Initial Cure Notice Affidavit</u>");

n.    filed, on September 23, 2024, a subsequent version of the Cure Notice [D.I. 25650] and caused it to be distributed to counterparties to the Debtors' Executory Contracts and Unexpired Leases identified therein, as evidenced by, among other things, the [●] [D.I. [●]] (together with the Initial Cure Notice Affidavit, the "<u>Cure Affidavits of Service</u>");

o.    filed, on September 23, 2024, the *First Amended Plan Supplement* [D.I. 25649], consisting of the Amended and Restated List of Assumed Executory Contracts and Unexpired Leases;

p.    filed, on September 30, 2024, the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26029], reflecting additional updates and discussions with parties in interest;

q.    filed, on September 30, 2024, the *Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast*

*on the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "<u>Voting Report</u>");

r.    filed, on September 30, 2024, the *Debtors' Memorandum of Law in support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "<u>Plan Confirmation Brief</u>");

s.    filed, on September 30, 2024, the *Debtors' Omnibus Reply to Objections to Confirmation of the Second Amended Joint Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "<u>Debtors' Reply Brief</u>");

t.    filed, on September 30, 2024, the *Declaration of Steven P. Coverick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "<u>Coverick Declaration</u>");

u.    filed, on September 30, 2024, the *Declaration of Edgar W. Mosley in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "<u>Mosley Declaration</u>"); and

v.    filed, on September 30, 2024, the *Declaration of Lord Neuberger of Abbotsbury in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "<u>Neuberger Declaration</u>", and together with the Coverick Declaration and the Mosley Declaration, the "<u>Confirmation Declarations</u>").

The Court having:

a.    entered on February 7, 2024, the *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090], approving the Digital Assets Estimation Motion;

b.    entered, on June 26, 2024, the *Memorandum Opinion and Order* [D.I. 19069], ordering the pricing of the MAPS, OXY, SRM and BOBA tokens;

c.    entered, on June 26, 2024, the Solicitation Procedures Order;

d.    reviewed the Plan, the Plan Supplement, the Plan Confirmation Brief, the Confirmation Declarations, the Debtors' Reply Brief, the Voting Report and all other evidence admitted into the record of the Confirmation Hearing, as well as pleadings, statements, responses and comments regarding Confirmation, including all objections, statements and reservations of rights made with respect thereto;

e.    heard the statements, arguments and objections made by counsel and parties-in-interest in respect of Confirmation;

f.    considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

g.  overruled, including for the reasons stated on the record of the Confirmation Hearing, any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved, waived, settled or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing; and

h.  taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases, all evidence proffered or adduced, and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

**NOW, THEREFORE,** the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases established through the testimony set forth at the Confirmation Hearing, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, the Plan Confirmation Brief, the Debtors' Reply Brief, the Voting Report, and each of the Confirmation Declarations, each of which was admitted into evidence at the Confirmation Hearing, establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.      FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Findings and Conclusions

1.    The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.     Jurisdiction and Venue**

2.     The Court has jurisdiction to consider confirmation of the Plan pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware, dated February 29, 2012.  Venue was proper as

of the Petition Date and is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This

matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has jurisdiction to enter

a final order with respect thereto.  The statutory predicates for the relief requested herein are

section 1125, 1126, 1127, 1128 and 1129 of the Bankruptcy Code and Bankruptcy Rules 2002,

3016, 3017, 3018, 3020 and 9019.

**C.     Eligibility for Relief**

3.     Each Debtor qualifies as a "debtor" under Bankruptcy Code section 109.

As such, the Debtors were and are entities eligible for relief under section 109 of the Bankruptcy

Code and proper proponents of the Plan.

**D.     Commencement of these Chapter 11 Cases**

4.     On the Petition Date, each of the Debtors filed with the Court a voluntary

petition for relief under title 11 of the Bankruptcy Code.  The Debtors continue to operate their

businesses and manage their assets as debtors-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by

the Court by entry of an order on November 22, 2022 [D.I. 128].

**E.     Judicial Notice**

5.     The Court takes judicial notice of the docket of the Chapter 11 Cases

maintained by the Clerk of the Court or its duly appointed agent, including all pleadings and

other documents on file, all orders entered, all hearing transcripts, and all testimony, documents

and arguments made, proffered or adduced at and accepted into evidence at the hearings held

before the Court during the pendency of these Chapter 11 Cases.

**F.      Appointment of the Official Committee**

6.      On December 15, 2022, Andrew R. Vara, the United States Trustee for

Region 3 (the "U.S. Trustee"), appointed an official committee of unsecured creditors (the

"Official Committee") pursuant to section 1102 of the Bankruptcy Code to represent the interests

of unsecured creditors in these Chapter 11 Cases [D.I. 231].[4]

**G.      Solicitation Procedures Order**

7.      On June 26, 2024, the Court entered the Solicitation Procedures Order,

which, among other things:  (a) approved the Disclosure Statement as containing adequate

information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed June 25, 2024

as the Voting Record Date (as defined in the Solicitation Procedures Order); (c) fixed 4:00 p.m.

(prevailing Eastern Time) on August 16, 2024 as the Confirmation Objection Deadline (as

defined in the Solicitation Procedures Order); (d) fixed 4:00 p.m. (prevailing Eastern Time) on

August 16, 2024 as the Voting Deadline (as defined in the Solicitation Procedures Order);

(e) fixed 10:00 a.m. (prevailing Eastern Time) on October 7, 2024 as the date and time for the

commencement of the Confirmation Hearing; and (f) approved the Solicitation and Voting

Procedures, the Solicitation Package and other materials relating to solicitation that were

attached as exhibits to the Solicitation Procedures Order.

---

[4]    Following the resignations of six members of the Official Committee [D.I. 3685, 12036, 19221], the Official
Committee currently comprises the following members: (i) Pulsar Global; (ii) Larry Qian; and (iii) Wincent
Investment Fund.

**H.      Transmittal and Mailing of Materials; Notice**

8.      As evidenced by the Kroll Affidavit of Service, the Cure Affidavits of Service, and the Voting Report, due, adequate and sufficient notice of the Plan, the Disclosure Statement, the Solicitation Procedures Order, the ballots (including, where applicable, the elections with respect to the Bahamas Opt-In Election (the "Bahamas Opt-In Election"), the elections with respect to treatment as convenience claims and the elections with respect to the stipulated amount of Claims), the election forms with respect to the third-party releases contained in the Plan (the "Third-Party Release Election Forms"), the Confirmation Hearing, the Confirmation Objection Deadline, the Voting Deadline, and notice of the assumptions of Executory Contracts and Unexpired Leases to be assumed by the Debtors and related cure amounts and the procedures for objecting thereto and resolution of disputes by the Court thereof has been given to, as applicable:  all known Holders of Claims and Interests, the U.S. Trustee, counsel to the Official Committee, counsel to the Ad Hoc Committee, the Securities and Exchange Commission, the Internal Revenue Service, the United States Department of Justice, the United States Attorney for the District of Delaware, all non-Debtor counterparties to the Executory Contracts and Unexpired Leases identified on the Cure Notices, and those parties requesting notice pursuant to Bankruptcy Rule 2002.

9.      As evidenced by the Publication Certification, the Confirmation Hearing Notice was published in *The New York Times* on July 3, 2024, the international edition of *The New York Times* on July 8, 2024 and on *Coindesk.com* from July 3 through July 10, 2024.

10.      Adequate and sufficient notice of the Confirmation Hearing, and all applicable dates, deadlines and hearings described in the Solicitation Procedures Order, was given in compliance with the Bankruptcy Rules, the Local Rules and the Solicitation Procedures

-8-

Order as evidenced by the Kroll Affidavit of Service, the Publication Certification and the Cure Affidavits of Service, and no other or further notice is or shall be required.

**I.      Solicitation**

11.      As evidenced by the Kroll Affidavit of Service, votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with the Solicitation Procedures Order, sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any other applicable rules, laws and regulations.  All procedures used to distribute Ballots to the applicable Holders of Claims or Interests and to tabulate the ballots were fair and reasonable and conducted in good faith and in accordance with the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.      Specifically, as evidenced by the Kroll Affidavit of Service, the Solicitation Packages approved by the Court in the Solicitation Procedures Order were transmitted to and served on all Holders in Classes that were entitled to vote to accept or reject the Plan.  Non-voting notices, including Third-Party Release Election Forms, were transmitted to and served on Holders in Classes that were not entitled to vote to accept or reject the Plan, and relevant portions of the Solicitation Package and other materials approved by the Solicitation Procedures Order, were transmitted to and served on other parties-in-interest in these Chapter 11 Cases, all in compliance with section 1125 of the Bankruptcy Code, the Solicitation Procedures Order, the Solicitation and Voting Procedures, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations.  Transmittal and service of such documents were adequate and sufficient, and no other or further notice is or shall be required.

**J.      Voting Report**

13.     The Debtors filed the Voting Report on September 30, 2024, consistent with the Solicitation Procedures Order.  As evidenced by the Voting Report, all procedures used to tabulate ballots received in connection with Confirmation were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

14.     As set forth in the Plan, the Solicitation and Voting Procedures, and the Disclosure Statement, Holders of Claims in Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 10A, Class 10B and Class 10C and Holders of Interests in Class 12 were eligible to vote on the Plan.  Holders of Claims in Class 1, Class 2, Class 3B, Class 4, Class 5C and Class 8A are presumed to accept the Plan and, therefore, were not entitled to vote to accept or reject the Plan.  Holders of Claims or Interests in Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 are deemed to reject the Plan and, therefore, were not entitled to vote to accept or reject the Plan.

15.     As evidenced by the Voting Report, Holders of Claims in Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 10A, Class 10B and Class 10C and Holders of Interests in Class 12 (collectively, the "Impaired Accepting Classes") voted to accept the Plan.  Holders of Claims or Interests in Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 (collectively, the "Impaired Rejecting Classes") are Impaired and are deemed to reject the Plan.

16.     Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims has voted to accept the Plan (determined without including any acceptance of the Plan by any insiders of the Debtors) in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.  Further, as evidenced by the Voting Report,

votes to accept the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**K.    Plan Modifications**

17.    Subsequent to the commencement of solicitation, the Debtors made certain modifications to the Plan reflecting necessary clarifying updates.  All modifications to the Plan since the entry of the Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code. None of these modifications materially or adversely affects the treatment of any Holder of a Claim or Interest under the Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.  Notice regarding the substance of any modifications to the Plan, together with the filing with the Court of the Plan as modified, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing constitute due and sufficient notice of any and all such modifications.

18.    Further, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan modifications.  The modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Plan as modified on September 30, 2024 and filed at Docket No. [●] shall constitute the Plan submitted for Confirmation.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan modifications unless otherwise agreed to by the Holder of the Claim or

Interest and the Debtors and such change is approved by the Court in accordance with
Bankruptcy Rule 3018(a).

## L.      Plan Supplement

19.      On August 2, 2024, the Debtors filed the Plan Supplement with the Court.
The Debtors filed an additional Plan Supplement on September 23, 2024, providing an amended
list of executory contracts rejected and assumed.  The documents contained in the Plan
Supplement are integral to, part of and incorporated by reference into the Plan.  The Plan
Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant
to a filing with the Court) complies with the terms of the Plan, and the filing and notice of all
documents contained in the Plan Supplement constitute good and proper notice in accordance
with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation
Procedures Order, and no other or further notice is or shall be required.  Pursuant to the Plan, the
Debtors may file additional documents as amendments to the Plan Supplement on or prior to the
Effective Date in a manner consistent with and contemplated by the Plan or this Confirmation
Order.  The transmittal and notice of the Plan Supplement (and all documents identified therein)
were appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and
were conducted in good faith.  No other or further notice with respect to the Plan Supplement
(and all documents identified therein) is necessary or shall be required.

## M.      Assets Held By the Debtors

20.      The factual record establishes that all Digital Assets and Cash held by the
FTX Exchanges on or after the Petition Date ("Exchange Assets") are property of the Debtors'
Estates within the meaning of section 541 of the Bankruptcy Code and can be distributed
pursuant to the Plan.  Further, to the extent that any Exchange Assets are not property of the
Debtors' Estates, this Court has jurisdiction to direct their equitable distribution pursuant to the

Plan and in accordance with the terms of the Customer Priority Settlement (as defined in the Disclosure Statement) incorporated therein.

**N.      Bankruptcy Rule 3016**

21.     The Plan is dated and identifies the Debtors as the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

**O.      Burden of Proof**

22.     The Debtors, as proponents of the Plan, have met their burden of proving that the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code are satisfied.  Each witness who submitted a declaration or testified at the Confirmation Hearing on behalf of the Debtors, including the Confirmation Declarations, or any other party that was accepted into evidence, in support of the Plan and Confirmation, in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

**P.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

23.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**i.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

24.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof.

**a.      <u>Sections 1122 and 1123(a)(1)—Proper Classification</u>**

25.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, Article

4 of the Plan provides for the separate classification of Claims and Interests into twenty-eight (28) Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, including Professional Claims, and 503(b)(9) Claims, which are addressed in Article 3 of the Plan and which are not required to be designated as separate Classes of Claims pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not created for any improper purpose, and the creation of such Classes does not unfairly discriminate among Holders of Claims or Interests.

26.     The testimony and documents supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing (a) are reasonable, persuasive, credible and accurate, (b) utilize reasonable and appropriate methodologies and assumptions and (c) have not been controverted by other credible evidence.

27.     As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a), 1122(b) and 1123(a)(1) of the Bankruptcy Code are satisfied.

**b.      <u>Section 1123(a)(2)—Specification of Unimpaired Classes</u>**

28.     Section 4.3 of the Plan specifies that Claims in Class 1, Class 2, Class 3B, Class 4, Class 5C and Class 8A are Unimpaired under the Plan.  Administrative Claims, including Professional Claims, and 503(b)(9) Claims also are Unimpaired under the Plan, although these Claims are not classified under the Plan.  Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

      c.      **Section 1123(a)(3)—Specification of Treatment of Impaired Classes**

29.      Section 4.3 of the Plan specifies that Claims and Interests, as applicable, in Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 9, Class 10A, Class 10B, Class 10C, Class 11, Class 12, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 are Impaired under the Plan and the treatment for each such Impaired Class. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

      d.      **Section 1123(a)(4)—No Discrimination**

30.      Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 4 of the Plan uniformly provides for the same treatment of each Claim or Interest, as the case may be, in a particular Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

      e.      **Section 1123(a)(5)—Adequate Means for Plan Implementation**

31.      Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article 5 and various other provisions of the Plan, along with various agreements set forth in the Plan Supplement, provide adequate and proper means for the Plan's implementation. Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

      f.      **Section 1123(a)(6)—Voting Power of Equity Securities**

32.      On the Effective Date, all Plan Assets shall be transferred to and vest in the Wind Down Entities free and clear of all Liens, Claims, charges or other encumbrances or interests. The Wind Down Entities shall be managed by the Plan Administrator and shall be subject to a Wind Down Board. No new equity securities, voting or non-voting, will be issued

after the Effective Date.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### g.      Section 1123(a)(7)—Directors and Officers

33.     Section 5.11 of the Plan provides for the establishment of and the appointment of directors to the Wind Down Board.  The identities of the initial Wind Down Board are disclosed in the Plan Supplement.  The Liquidating Trust Agreement, attached as Exhibit 2 to the Plan Supplement, properly and adequately discloses the manner of selection and replacement of any director of the Wind Down Board and officer of the Consolidated Wind Down Trust (a/k/a the FTX Recovery Trust).  The appointment of the Wind Down Board is consistent with the interests of Holders, the Estates and public policy.

34.     Pursuant to the terms of the Plan Administration Agreement, attached as Exhibit 1 to the Plan Supplement, the Liquidating Trust Agreement, attached as Exhibit 2 to the Plan Supplement and the Plan, and to the extent such powers, duties, and authorities do not affect the status of the Consolidated Wind Down Trust as a liquidating trust for United States federal income tax purposes, the Plan Administrator will be empowered to, among other things, (i) file, withdraw or litigate to judgment objections to Claims, other than Claims that are subject to a valid and timely Bahamas Opt-In Election, (ii) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Court, (iii) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Court, (iv) determine, without the need for notice to or action, order or approval of the Court, that a Claim subject to any Proof of Claim that is filed is Allowed, (v) dissolve, liquidate, consolidate, merge or take any other action to effect dissolution of any Debtors and non-Debtor subsidiaries, and (vi) make and manage Distributions in accordance with and pursuant to the Plan and the Plan

Supplement, in each case, with respect to the Plan Assets which vest in the Consolidated Wind Down Trust.  The foregoing is consistent with the interests of the beneficiaries of the Consolidated Wind Down Trust and public policy.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

> **h.**      **Section 1123(b)—Discretionary Contents of the Plan**

35.      The Plan contains various provisions that may be construed as discretionary and are not required for Confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of the Bankruptcy Code is satisfied.

> **i.**      **Section 1123(b)(1)-(2)—Claims and Executory Contracts**

36.      Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article 4 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests.

37.      Article 6 of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases of the Debtors, other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court, (b) that are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan.

> **j.**      **Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Causes of Action and Defenses**

38.      **Compromise and Settlement.**  The Plan settles certain issues in these Chapter 11 Cases pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code. These settlements are in consideration for the Distributions and other benefits provided under the

Plan and any other compromise and settlement provisions of the Plan. The Plan itself constitutes a compromise of all Claims, Interests and Causes of Action relating to the contractual, legal and subordination rights that any Holder may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made on account of such Allowed Claim or Allowed Interest. The compromises and settlements embodied in the Plan were reached after good faith, arms'-length negotiations between the Debtors, the Supporting Parties and other respective parties.

39.    Specifically, in consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation: (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to

the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

40.    In connection with the implementation of the Global Settlement pursuant to the Plan: (a) the value of Claims in respect of Digital Assets shall be calculated pursuant to Section 4.4 of the Plan; (b) the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim shall be recognized for the benefit of Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims; (c) the Alameda U.S. Customer Claim shall be recognized as part of the General Pool; (d) Claims shall be classified and treated as set forth in Article 4 of the Plan, which entitles Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims to recover against the (i) Dotcom Customer Priority Assets and the U.S. Customer Priority Assets, respectively, and (ii) General Pool, in accordance with the waterfall priorities set forth in Section 4.2 of the Plan; (e) the Consolidated Debtors shall be substantively consolidated as set forth in Section 5.7 of the Plan; (f) Cancelled Intercompany Claims, Equitably Subordinated Claims, FTT Claims and Interests and De Minimis Claims shall be cancelled; (g) Separate Subsidiary Intercompany Claims, Senior Subordinated IRS Claims, Senior Subordinated Governmental Claims, Junior Subordinated IRS Claims, Preferred Equity Interests, Section 510(b) Preferred Equity Claims and Section 510(b) Other Equity Claims shall be subordinated to Claims of other Holders, in accordance with the waterfall priorities set forth in Section 4.2 of the Plan; (h) Holders of Other Equity Interests shall recover against the General Pool in accordance with the waterfall priorities set forth in Section 4.2 of the Plan; (i) Distributions to customers and creditors shall be made in Cash (other than in Available NFTs) as set forth in Articles 4 and 7 of the Plan; (j) all assets scheduled by the Debtors shall constitute property of the Debtors' Estates; (k) interest shall be

paid at the applicable rate to Holders of certain Claims in accordance with Section 7.1 of the Plan and the treatment set forth in Section 4.3 of the Plan; and (l) interest shall be paid at the Consensus Rate to Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, Allowed Dotcom Convenience Claims and Allowed U.S. Convenience Claims in accordance with Section 7.1 of the Plan and the treatment set forth in Section 4.3 of the Plan.

41.    The entry of this Confirmation Order constitutes the Court's approval of the Global Settlement, including the Customer Priority Settlement, under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests and fall above the lowest point in the range of reasonableness.

42.    **Customer Preference Settlement**.  Section 5.5 of the Plan incorporates a separate settlement through the waiver of certain Customer Preference Actions against Holders of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims if such Holder duly executes and timely returns a valid Ballot by the Voting Deadline that (i) votes to accept the Plan, and (ii) consents and stipulates to the amount of such Dotcom Customer Entitlement or U.S. Customer Entitlement Claim as set forth in the applicable Ballot for voting, allowance and Distribution purposes (the "Customer Preference Settlement").

43.    The terms of the Customer Preference Settlement, including the preservation of the Excluded Customer Preference Actions, are independently fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests and fall above the lowest point in the range of reasonableness.  The entry of this

Confirmation Order constitutes the Court's approval of the Customer Preference Settlement under sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

44. **Releases by the Debtors.** The releases and discharges by the Debtors described in Section 10.4 of the Plan (the "Debtors' Release") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment.

45. **Voluntary Release by Holders of Claims and Interests.** The voluntary release by certain Holders of Claims and Interests described in Section 10.4 of the Plan (the "Voluntary Release by Holders of Claims and Interests") is appropriate because it was voluntary and all Releasing Parties had the opportunity to opt out of the release. The Voluntary Release by Holders of Claims and Interests is provided only by (a) the Debtors; (b) each member of the Official Committee and the Supporting Parties; (c) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth therein; (d) the Holders of all Claims that are Unimpaired under the Plan; (e) the Holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) the Holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth therein; and (g) the Holders of all Claims or Interests who are deemed to reject the Plan and opt in to the releases set forth therein.

46. The Voluntary Release by Holders of Claims and Interests is appropriately narrow in scope. It expressly excludes Claims or Causes of Action arising from gross negligence, willful misconduct, fraud or a criminal act, and it excludes Causes of Action to the extent arising out of conduct that occurred prior to the Petition Date. The Voluntary Release by Holders of Claims and Interests is sufficiently voluntary and can be considered to be (a) given in exchange for the good, valuable and significant consideration provided by the Released Parties;

(b) a good faith settlement and compromise of the claims released by Holders of Claims and Interests electing to provide such release; (c) in the best interests of the Debtors and all Holders; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for hearing; (f) given at arms'-length and in good faith; (g) appropriately narrow in scope; and (h) a bar to any Releasing Party asserting any and all claims, obligations, rights, suits, damages, Causes of Action and defenses, remedies and liabilities whatsoever, released by the Voluntary Release by Holders of Claims and Interests against any of the Released Parties to the fullest extent permitted by applicable law and is hereby approved.

47.     **Exculpation.**  The exculpation provisions set forth in Section 10.7 of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation, and the exculpation provisions set forth in Section 10.7 of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation related to acts or omissions including and after the Petition Date and up to and including the Effective Date and are hereby approved.  For the avoidance of doubt, neither the Ad Hoc Committee nor any of its members are acting as a fiduciary for the benefit of any Debtor, its Estate or its creditors.

48.     Based on the record in these Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code.  Accordingly, the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7 of the Plan.  The Exculpated Parties, up to and including the Effective Date, will continue to

act in good faith, if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  The Exculpated Parties made (and will continue to make) significant contributions to the Chapter 11 Cases and played an integral role in working towards the resolution of the Chapter 11 Cases.  Accordingly, the exculpations contemplated by the Plan are an appropriate exercise of the Debtors' business judgment and are fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases.

49. **Injunction.**  The injunction provisions set forth in Section 10.8 of the Plan are essential to the Plan and are (a) necessary to preserve and enforce the Debtors' Release, the Voluntary Release by Holders of Claims and Interests and the exculpation provisions set forth in Section 10.7 of the Plan, (b) fair and reasonable and (c) narrowly tailored to achieve their purpose.

50. Each of the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions are: (a) within the jurisdiction of the Court; (b) an essential means of implementing the Plan; (c) an integral and non-severable element of the settlements and transactions incorporated into the Plan; (d) in the best interests of the Debtors, their Estates and all stakeholders in these Chapter 11 Cases; and (e) narrowly tailored and consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code and other applicable law.  Each of the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions were adequately disclosed and explained in the Disclosure

Statement, the Plan and the Solicitation Packages.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions contained in Article 10 of the Plan, and failure to give effect to the foregoing would impair the Debtors' ability to confirm and implement the Plan.  Based on the record of the Chapter 11 Cases, the representations of the parties, and the evidence proffered, adduced and presented at the Confirmation Hearing, the Court finds that the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions contained in Article 10 of the Plan are consistent with the Bankruptcy Code and applicable law.

51.    **Preservation of Causes of Action and Defenses**.  Subject to the Plan, unless any Causes of Action and defenses held by the Debtors are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, including pursuant to Article 10 of the Plan or a Final Order, such Causes of Action are expressly reserved by the Consolidated Wind Down Trust for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of Confirmation, the Plan, or the vesting of such Cause of Action in the Consolidated Wind Down Trust.  The provisions regarding such Causes of Action retained as Plan Assets in the Plan are appropriate, fair, equitable and reasonable and are in the best interests of the Debtors, their Estates and all Holders.

52.    **Section 1123(d)—Cure of Defaults**.  Article 6 of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court, (b) that

are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan.

53.     Additionally, the Plan Supplement also included a list of Executory Contracts and Unexpired Leases proposed to be assumed in connection with the Plan.  As evidenced by the Cure Affidavits of Service, the Debtors have served the Cure Notices to all applicable counterparties of the Executed Contracts and Unexpired Leases proposed to be assumed in connection with the Plan, which notices included the proposed cure amount and procedures for objecting to, and resolving proposed assumptions of such Executory Contracts and Unexpired Leases.  Accordingly, the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

**ii.     Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

54.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, 3019 and 9019.

55.     Votes to accept or reject the Plan were solicited by the Debtors in accordance with the Solicitation Procedures Order after the Court approved the adequacy of the Disclosure Statement.

56.     The Debtors and their agents (including each of their respective directors, officers, employees, members, partners, agents or representatives, including attorneys, accountants, financial advisors and investment bankers, each solely in their capacity as such and solely to the extent such persons or entities solicit votes on the Plan) have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the

-25-

Bankruptcy Code in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

57.     The Debtors and other Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances or rejections of the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan.  Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

### iii.     Section 1129(a)(3)—Proposal of Plan in Good Faith

58.     The Debtors have proposed the Plan (including the Plan Documents) in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself and the process leading to its formulation.  The Debtors' good faith is evident from the record of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.

59.     The Plan is the product of extensive, good faith, arm's-length negotiations among the Debtors and certain of their principal constituencies, including the Supporting Parties. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of Holders.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### iv.   Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

60.     The procedures set forth in the Plan for payment of, and/or the Court's review and ultimate determination of, the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incidental to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

### v.   Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

61.     The identities of, and the terms of the proposed compensation (where determined) to be paid to, the directors and officers of the Consolidated Wind Down Trust are consistent with the interests of Holders of Claims and Interests and with public policy.  The members of the Creditor Advisory Committee were disclosed in the Plan Supplement as required by Section 1129(a)(5) of the Bankruptcy Code.  The proposed directors and officers for the Consolidated Wind Down Trust and members of the Creditor Advisory Committee are qualified, and their appointment to, or continuance in, such office is consistent with the interests of Holders of Claims and Interests and with public policy. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

### vi.   Section 1129(a)(6)—Approval of Rate Changes

62.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**vii.    Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

63.    Each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

64.    The liquidation analysis attached as <u>Appendix D</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing, which has been accepted into evidence in support of Confirmation:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that recoveries for non-accepting Holders of Allowed Claims and Allowed Interests in every Class under the Plan on account of such Claim or Interest, as of the Effective Date, will have a value equal to or greater than the amount such Holder would receive if the applicable Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**viii.    Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes**

65.    Class 1, Class 2, Class 3B, Class 4, Class 5C and Class 8A are Unimpaired Classes of Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 10A, Class 10B, Class 10C and Class 12 are Impaired by the Plan and entitled to vote on the Plan, while Class 9, Class 11, Class 13, Class 14,

-28-

Class 15, Class 16, Class 17 and Class 18 are Impaired by the Plan and deemed to reject. As set forth in the Voting Report, Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 10A, Class 10B, Class 10C and Class 12 have voted to accept the Plan. As set forth below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that the Impaired Rejecting Classes are either deemed to reject, or voted not to accept, the Plan.

66.    Because the Plan has not been accepted by the Impaired Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Classes and thus satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Impaired Rejecting Classes as described further below.

### ix.    Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

67.    The treatment of Administrative Claims, including Professional Claims, 503(b)(9) Claims and Priority Tax Claims under Article 3 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

### x.    Section 1129(a)(10)—Acceptance by At Least One Impaired Class

68.    As set forth in the Voting Report, the Impaired Accepting Classes have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

xi.        **Section 1129(a)(11)—Feasibility of the Plan**

69.        The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at, or in declarations filed in connection with, the Confirmation Hearing, which has been accepted into evidence in support of Confirmation:  (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors or any successor to the Debtors under the Plan except as provided in the Plan.  Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

xii.        **Section 1129(a)(12)—Payment of Fees**

70.        Section 3.5 of the Plan provides that all U.S. Trustee Fees payable on or before the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date, and following the Effective Date, all U.S. Trustee Fees shall be paid when due and payable (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

xiii.        **Section 1129(a)(13), (14), (15) and (16)—Non-Applicability of Certain Sections**

71.        The Debtors do not owe any "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) or domestic support obligations and is not a non-profit entity. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

xiv.    **Section 1129(b)—Confirmation of the Plan Over Non-Acceptance of Impaired Class**

72.    The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code; (b) allows no Holder of a Claim or Interest in a Class senior to each such Class to receive more than payment in full on account of its Claim or Interest; and (c) does not "discriminate unfairly" and is "fair and equitable" with respect to the Impaired Rejecting Classes, as applicable.

73.    The Plan does not "discriminate unfairly" with respect to the Impaired Rejecting Classes because there is no discrimination in treatment between Holders in such Classes and there are no other Classes comprised of Holders with similar or comparable legal rights.

74.    The Plan is "fair and equitable" with respect to Holders of Claims in Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 because there is no Class junior to any of Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 that is receiving or retaining "any property" "on account of" such Claim or Interest under the Plan. Holders of Class 10 Claims may receive property on account of their claims, but such distributions are pursuant to voluntary subordination in accordance with settlements reached in these Chapter 11 Cases, including the IRS Settlement. Accordingly, the Plan satisfies the requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code and is fair and equitable with respect to all classes of Claims and Interests.

75.    The Plan therefore satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed.

xv.   **Section 1129(c)—Only One Plan**

76.   Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

xvi.   **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Application of Securities Laws**

77.   No party (including any governmental unit) has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (as amended, the "Securities Act"), and the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**Q.   Section 1129(e)—Small Business Case**

78.   None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**R.   Satisfaction of Confirmation Requirements**

79.   Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, certificates and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing which has been accepted into evidence in support of Confirmation, the Plan satisfies all requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**S.   Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

80.   Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, and without affecting the rights of any party to enforce such condition,

has been satisfied in accordance with the provisions of the Plan, or is reasonably likely to be satisfied or waived in accordance with Section 9.1 of the Plan on or prior to the Effective Date.

**T.      Implementation**

81.      All documents and agreements necessary or appropriate to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents, instruments and certificates (collectively, and as each may be amended, supplemented, or modified on or before the date of this Confirmation Order, the "Plan Documents") are essential elements of the Plan and entry into and consummation of the transactions contemplated by each of the Plan Documents is in the best interests of the Debtors, their Estates and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents and have provided sufficient and adequate notice of the Plan Documents (if notice was required).  The terms and conditions of the Plan Documents are fair and reasonable, in the best interests of the Debtors and their estates, were negotiated in good faith and at arm's length, and are approved.  The Plan Documents shall be valid, binding and enforceable documents and agreements not in conflict with any federal, state or local law.  The Debtors and the Plan Administrator are authorized, without further approval of this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating to the transactions contemplated by the Plan Documents and perform their obligations thereunder.

82.      The Debtors or the Plan Administrator, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

U.      **Corporate Action**

83.      Upon the Effective Date, all actions contemplated by, and set forth in, the Plan and the Plan Documents shall be deemed authorized and approved.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Wind Down Entities and any corporate action required by the Debtors or the Wind Down Entities in connection with the implementation of the Plan shall be deemed to have occurred and shall be in effect upon the Effective Date, without any requirement of further action by the directors or officers of the Debtors or the Consolidated Wind Down Trust.

84.      From and after the Confirmation Date but prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan or the Plan Documents that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

V.      **Substantive Consolidation**

85.      Substantive consolidation of the Estates of the Consolidated Debtors into a single Entity, as set forth in the Plan, is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and the Holders of Claims and Interests.  Postpetition, the Debtors' assets and liabilities are so scrambled due to the prepetition actions of the FTX Group (as defined in the Disclosure Statement) that separating them is prohibitive and hurts all creditors.  Substantive consolidation results in equitable treatment to all creditors and was not used to disadvantage a particular creditor group.  Accordingly, the requirements of substantive consolidation as set forth in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005), are satisfied and the substantive

-34-

consolidation of the Estates of the Consolidated Debtors into a single Entity in accordance with the Plan is hereby approved.

**W.    Executory Contracts and Unexpired Leases**

86.    The Debtors have exercised reasonable business judgment in determining to reject by the Plan all Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court, (b) that are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan.  Each rejection of an Executory Contract or Unexpired Lease in accordance with the Plan, this Confirmation Order, other orders of the Court or otherwise shall be legal, valid and binding upon all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such rejection had been authorized and effectuated pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation.

87.    The Debtors have also provided sufficient and adequate notice to any Entity whose Executory Contract or Unexpired Lease is proposed to be assumed in connection with the Plan, including with respect to the proposed cure amount for such contracts and leases. The Plan also serves as adequate notice to all Entities whose Executory Contract or Unexpired Lease is being rejected because the Plan rejects all contracts unless such contracts (a) were previously assumed or rejected pursuant to an order of the Court, (b) are the subject of a pending motion to assume or (c) are specifically described in the Plan to be assumed in connection with the Plan.

## X.    Retention of Jurisdiction

88.    Except as otherwise provided in the Plan, this Confirmation Order or the Plan Documents, the Court shall retain jurisdiction over the matters set forth in Section 12 of the Plan and other applicable provisions of the Plan.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

## A.    Order

89.    The Plan and all of its provisions are confirmed.  A copy of the Plan is attached hereto as Exhibit A.

## B.    Objections

90.    All parties have had a fair opportunity to litigate all issues raised by objections, or which might or could have been raised, and the objections have been fully and fairly litigated.  The record of the Confirmation Hearing is hereby closed.  To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been withdrawn, waived, resolved or settled before entry of this Confirmation Order, resolved by the relief granted herein or otherwise resolved as stated on the record of the Confirmation Hearing, such objections, reservations of rights, statements and joinders are hereby overruled on the merits.

## C.    Confirmation of the Plan

91.    The Plan and the Plan Supplement shall be, and hereby are, confirmed under section 1129 of the Bankruptcy Code.    Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with

section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary or appropriate to carry out the purpose and intent of the Plan.  The Debtors or the Plan Administrator, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  The Debtors and, after the Effective Date, the Wind Down Entities are authorized, without further approval of the Court, to execute and deliver all documents and agreements, including those contained in the Plan Supplement, and all other relevant and necessary documents, agreements, instruments and certificates relating to the transactions contemplated by the Plan and necessary or appropriate to implement the Plan, and perform their obligations thereunder.  As set forth in the Plan, once finalized and executed, upon the occurrence of the Effective Date, the documents comprising the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

**D.     Findings of Fact and Conclusions of Law**

92.     The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following articles, sections or provisions constitute findings of fact or conclusions of law, they are adopted as such.

**E.     Global Settlement of Claims and Interests**

93.     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions, releases and other benefits provided pursuant to the Plan, the Global Settlement, including but not limited to the Customer Priority Settlement (as

defined in the Disclosure Statement), is approved.  The Global Settlement constitutes a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of an Allowed Claim or Interest may have against the Debtors, or any Distribution to be made on account of such Allowed Claim or Interest.  Approval of such compromise or settlement of all such Claims, Interests or controversies, as well as such compromise or settlement, is in the best interests of the Debtors and their Estates, is fair, equitable and reasonable and falls above the lowest point in the range of reasonableness.  Subject to Article 7 of the Plan, all Distributions made to Holders of Allowed Claims or Interests in any Class are intended to be, and shall be, final.

**F.      Implementation of the Consolidated Wind Down Trust**

94.      The creation and implementation of the Consolidated Wind Down Trust in accordance with the terms of this Confirmation Order, the Plan and the Liquidating Trust Agreement, and the appointment of the Wind Down Board and Appointed Director (as defined in the Plan Supplement) to accomplish the purposes of the Consolidated Wind Down Trust, as set forth in the Liquidating Trust Agreement, are each hereby authorized.  Subject to Article 5 of the Plan, the Consolidated Wind Down Trust and the Creditor Advisory Committee shall be established on or prior to the Effective Date.  After the Effective Date, the Consolidated Wind Down Trust, to the extent a successor to the Debtors, and each member of its board and management shall have no liability other than as set forth in the Liquidating Trust Agreement and the Plan, and shall have no other obligations other than to carry out the purpose and obligations of the Consolidated Wind Down Trust in accordance with the Plan Documents.

95.      The Debtors, the Consolidated Wind Down Trust, and their respective members, directors, officers, representatives and agents are hereby authorized to enter into, execute, deliver, file and/or implement any documents and instruments substantially consistent

with or incidental to the Plan, and any amendments, supplements or modifications thereto as may

be appropriate, and to take such other steps and perform such other acts as may be necessary,

useful or appropriate to implement and effectuate the Plan and all other related instruments and

documents and this Confirmation Order, and to satisfy all other conditions precedent to the

implementation and effectiveness of the Plan.  The Consolidated Wind Down Trust is hereby

authorized to make distributions and other payments in accordance with the Plan and the

Liquidating Trust Agreement, regardless of whether any appeal of this Confirmation Order has

been filed, except to the extent a stay pending appeal has been granted and such stay pending

appeal expressly prohibits such distributions and other payments contemplated by the Plan.

96.    No Holder of a Claim or Interest or any other party-in-interest shall have,

or otherwise pursue, any Cause of Action against the Wind Down Board, the Consolidated Wind

Down Trust or the consultants or professionals thereof (for each of the foregoing, solely in the

performance of their duties in connection with making payments and distributions under the

Plan) for making payments and distributions in accordance with the Plan and the Liquidating

Trust Agreement or for fulfilling any functions incidental to implementing the provisions of the

Plan or the Liquidating Trust Agreement, except as permitted by the Plan or the Liquidating

Trust Agreement.

**G.    Creditor Advisory Committee**

97.    Subject to Article 5 of the Plan, the Wind Down Board and the Plan

Administrator shall consult with the Advisory Committee in good faith on all of its material

decisions concerning the Wind Down Entities, the Plan Administrator and the Advisory

Committee from time to time.  The members of the Advisory Committee, other than the

Appointed Director on the Wind Down Board, shall have the right to attend formal meetings of

the Wind Down Board as non-voting observers (and receive all related board materials and

reports), subject to such limitations as the Wind Down Board may set from time to time to address any actual or potential conflict of interest.  The Appointed Director shall have the opportunity to consult with the other members of the Advisory Committee prior to voting on any actions in its capacity as a member of the Wind Down Board.  Similarly, the Wind Down Board of Directors shall have the right to consult in executive session without the Advisory Committee members.

98.     Subject to Section 5.20 of the Plan, the members of the Advisory Committee shall receive reasonable and customary compensation, indemnification, and exculpation, and may retain and employ Delaware counsel, one additional law firm and one financial advisory firm to assist the Advisory Committee in the performance of its duties, with the reasonable and documented fees and expenses of these professionals to be borne or reimbursed by the Wind Down Entities.  These professional firms shall be chosen by majority vote of the Advisory Committee and be acceptable to the Wind Down Board (such consent not to be unreasonably withheld).

99.     If the Wind Down Board approves an action (i) that the Appointed Director has voted against in his or her capacity as a member of the Wind Down Board and (ii) which a majority of the Advisory Committee (including the Appointed Director) also objects, the Appointed Director may send a Notice of Objection.  Upon the Appointed Director's vote against a proposed action by the Wind Down Board, the Wind Down Entities shall refrain from taking the contested action unless a Notice of Objection is not timely provided; if a Notice of Objection is timely provided, the Wind Down Board shall not take the proposed action without either order of the Court or the expiration of a seven-day waiting period.  During this seven-day waiting period, the Advisory Committee may file an objection to the proposed action with the

Court, describing the basis therefor in reasonable detail.  If no objection is filed with the Court within such seven-day period, the Notice of Objection shall have no further effect, the Wind Down Entities may proceed with the proposed action and the Advisory Committee shall be deemed to have waived any right to challenge the proposed action.

100.    If the Advisory Committee files a timely objection with the Court in accordance with Section 5.20 of the Plan, the Court shall resolve the objection as a contested matter by applying the standard of review that would be applicable to an action proposed by a debtor over the objection of a general unsecured creditor under section 363(b) of the Bankruptcy Code or Bankruptcy Rule 9019, as applicable.

101.    The Advisory Committee shall have standing to enforce the Plan to the same extent as an individual creditor, as well as standing to enforce the Advisory Committee's own rights under the Plan.

102.    The Advisory Committee shall continue until such time as Allowed General Unsecured Claims have been paid 100% of their Allowed amounts plus interest at the Consensus Rate as provided in the Plan, and then shall be disbanded.  In the event of a vacancy on the Advisory Committee, the other members of the Advisory Committee may appoint a replacement member reasonably acceptable to the Wind Down Board by written notice to the Court.

## H.    Substantive Consolidation

103.    In accordance with sections 1123(a)(5)(c) and 105 of the Bankruptcy Code, the Consolidated Debtors are hereby substantively consolidated.  Except as otherwise provided in the Plan, as a result of the substantive consolidation of the Estates of the Consolidated Debtors:  (a) all property of the Consolidated Debtors shall vest in, and constitute the property of, the Consolidated Wind Down Trust, free and clear of any and all Liens, charges

or other encumbrances or interests, pursuant to Section 5.13 of the Plan; (b) all guarantees of any Consolidated Debtor of the payment, performance or collection of obligations of another Consolidated Debtor shall be eliminated and cancelled; (c) all joint obligations of two or more Consolidated Debtors and multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the Consolidated Wind Down Trust; (d) all Cancelled Intercompany Claims shall be deemed cancelled; and (e) each Claim filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed filed against the Consolidated Debtors and a single obligation of the Consolidated Wind Down Trust.

104.   Except as otherwise provided herein, the substantive consolidation shall not:  (i) affect the separate legal existence of the Consolidated Debtors for purposes other than implementation of the Plan pursuant to its terms; (ii) constitute or give rise to any defense, counterclaim or right of netting or setoff with respect to any Cause of Action vesting in the Consolidated Wind Down Trust that could not have been asserted against the Consolidated Debtors; or (iii) give rise to any right under, any executory contract, insurance contract or other contract to which a Consolidated Debtor is party, except to the extent required by section 365 of the Bankruptcy Code in connection with the assumption of such contract by the applicable Debtors.

## I.   Customer Preference Settlement

105.   The Customer Preference Settlement as described in Section 5.5 of the Plan is approved under sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  Based upon the evidence introduced at the Confirmation Hearing and the full record of these Chapter 11 Cases, this Confirmation Order constitutes the Court's approval of the Customer Preference Settlement because the Customer Preference Settlement benefits the Debtors and its stakeholders by, among other things:  (i) eliminating the need for the Debtors to

pursue uneconomic and time consuming preference litigation; and (ii) reducing the Debtors'

administrative costs in having to reconcile claim amounts for accepting customers.  The

Customer Preference Settlement is fair, equitable and reasonable and is in the best interests of the

Debtors, customers, other creditors and stakeholders and is hereby approved with the Excluded

Customer Preference Actions preserved.

**J.     Plan Assets**

106.    As provided in the Plan, on the Effective Date, the Plan Assets shall be

deemed irrevocably transferred and assigned to and automatically vested in the Wind Down

Entities for the benefit of Holders of Claims, free and clear of all Liens, Claims, charges or other

encumbrances or interests to the extent permitted by sections 363 and 1141 of the Bankruptcy

Code.  Subject to the terms of the Plan, the Wind Down Entities will hold and administer Plan

Assets, which include, among other things, (i) all retained Causes of Action; (ii) the Dotcom

Customer Priority Assets; (iii) the U.S. Customer Priority Assets and (iv) the General Pool.

107.    Any transfers of property pursuant to the Plan, including the transfer of

Plan Assets to the Wind Down Entities, shall be exempt from any stamp, real estate transfer,

mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the

Bankruptcy Code.  Upon delivery of the Plan Assets to the Wind Down Entities, the Debtors and

its predecessors, successors and assigns, and each of the other Released Parties shall be

discharged and released from all liability with respect to the delivery of such distributions.  Upon

the transfer of the Plan Assets and pursuant to the Liquidating Trust Agreement, the Debtors will

have no reversionary or further interest in or with respect to the Plan Assets.

**K.      Section 1145 Exemption from Registration Under the Securities Act**

108.    The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

109.    The FTX Recovery Trust Interests created pursuant to the FTX Recovery Trust Agreement and the Plan shall not be considered "securities" and shall not be subject to the registration requirements of section 5 of the Securities Act or any applicable state or local laws requiring registration of securities.

**L.      Determination of Tax Liability**

110.    The Debtors and the Wind Down Entities are authorized to request an expedited determination of taxes under section 505 of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors or the Wind Down Entities for any and all taxable periods ending on or before the Effective Date.  The Wind Down Board may also request an expedited determination of Taxes of the Consolidated Wind Down Trust or any Wind Down Reserve under section 505 of the Bankruptcy Code for all Tax Returns filed for, or on behalf of, the Consolidated Wind Down Trust or any Wind Down Reserve for all taxable periods through the dissolution of the Consolidated Wind Down Trust.

**M.      References to Plan Provisions**

111.    The failure specifically to include or to refer to any particular article, section or provision of the Plan, any Plan Document or any related document or agreement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision nor constitute a waiver thereof, it being the intent of the Court that the Plan be confirmed in its entirety, the Plan Documents be approved in their entirety, and all be incorporated herein by this reference.

**N.      Immediate Binding Effect**

112.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon the Debtors and the Wind Down Entities, the Estates, any and all Holders of Claims and Interests (irrespective of whether such Holders have accepted, deemed to have accepted, rejected, or deemed to have rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 7062, or any stay of enforcement otherwise applicable to the Plan.

**O.      Cancellation of Existing Notes, Instruments, Certificates and Other Documents**

113.     On the Effective Date, except as otherwise specifically provided for in the Plan, all rights of any Holder of Interests in the Debtors, including options or warrants to purchase Interests, or obligating the Debtors to issue, transfer or sell Interests of the Debtors, shall be cancelled.  On the Effective Date, except as otherwise provided in the Plan, the obligations of the Debtors under any certificate, share, bond, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of the Debtors giving rise to any Claim or Interest shall be cancelled, without any

need for a Holder to take further action with respect thereto, and the Debtors and the Wind Down Entities shall not have any continuing obligations thereunder.

**P.      Provisions Governing Distributions**

114.    The Debtors and the Wind Down Entities are authorized to enter into agreements with Distribution Agents and remit any payments in connection therewith, if any, and any amendments thereto shall not require further Court approval.

115.    All Distributions pursuant to the Plan shall be made in accordance with Articles 4, 5 and 7 of the Plan.  Except as otherwise set forth in the Plan, the Plan Administrator may utilize Distribution Agents, who then shall, at the direction of the Wind Down Entities, make all Distributions required under Articles 4 and 5 of the Plan.

**Q.      Treatment of Executory Contracts and Unexpired Leases**

116.    The assumption of the Executory Contracts and Unexpired Leases listed in the Plan Supplement and the rejection of all other Executory Contracts and Unexpired Leases pursuant to the provisions of Article 6 of the Plan are hereby approved.

**R.      Insurance Policies**

117.    Notwithstanding anything to the contrary in the Plan Documents, any bar date notice, any claim objection, any other document related to any of the foregoing or any other order of the Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Court jurisdiction, or requires a party to opt out of any releases), as of the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code.  The Debtors' D&O Policies purchased on or after the Petition Date shall continue in force following the Effective Date subject to the terms and conditions of such D&O Policies.  Coverage for defense and indemnity under any assumed or continued D&O Policies

shall remain available within the definition of "Insured" in any of the D&O Policies subject to the terms and conditions of such D&O Policies. Entry of this Order will constitute the Court's approval of the Debtors' foregoing assumption or continuation, as applicable, of each D&O Policy. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Court, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption or continuation of the D&O Policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed. The D&O Policies (i) are prefunded and will not require any additional premiums on or after the Effective Date, (ii) provide coverage for those insureds currently covered by such policies for the remaining term of such policies and (iii) in the case of the D&O Policies purchased on or after the Petition Date, provide runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

**S.     Release of Liens**

118.    Except as otherwise provided in this Confirmation Order, in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan or this Confirmation Order, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, settled, discharged and compromised, and all of the rights, titles and interests of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Entities and its successors and assigns, in each case, without further approval of the Court and without any action or filing being required to be made by the Debtors.

T.     **Releases, Exculpations, Injunction and Related Provisions**

119.    All release, injunction and exculpation provisions contained in the Plan, including, without limitation, those contained in Sections 10.3 through 10.9 of the Plan, are hereby approved and authorized and shall be effective and binding as if set forth herein on all persons and entities to the extent expressly described in the Plan.

120.    Nothing in the Plan or this Confirmation Order shall affect any release granted under or approved by any prior order of the Court, all of which remain in full force and effect in accordance with their respective terms.

U.     **Subordinated Claims**

121.    The allowance, classification and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account, conform to, and satisfy the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto; *provided, however,* that the Debtors and the Wind Down Entities reserve the right to seek to reclassify or modify the treatment of any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Interest.

V.     **Authority to Prosecute and Settle Actions**

122.    Subject to Section 5.17 of the Plan, after the Effective Date, each Cause of Action that is a Plan Asset shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the Wind Down Entities.  The Wind Down Board shall have the authority to prosecute, investigate, settle, liquidate, dispose of, and/or abandon the Plan Assets, including any rights, and any and all Causes of Action.

W.    **Professional Fee Claims**

123.    All final requests for payment of Professional Claims shall be filed and served no later than 60 days after the Effective Date, in accordance with the procedures established under the Plan.  In accordance with the procedures established by the Bankruptcy Code and the Professional Fee Order, the Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing.

124.    On or prior to the Effective Date, The Debtors shall establish and fund the Professional Fee Escrow Account.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Wind Down Entities.  The Plan Administrator shall pay Professional Claims in Cash no later than five Business Days after such Claims are Allowed by Final Order of the Court.  When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be allocated and distributed between the Dotcom Customer Priority Assets, the U.S. Customer Priority Assets and the General Pool pursuant to the Plan.

125.    In accordance with Section 3.4.3 of the Plan, Professionals shall provide good-faith estimates of their Professional Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than seven days prior to the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional does not provide such an estimate, the Debtors may estimate, in their reasonable discretion, the Professional Claims of such Professional.  The total amount so estimated shall comprise the Professional Fee Reserve Amount.  To the extent the Professional Fee Reserve Amount is not sufficient to pay all Allowed Professional Claims in full, the remaining aggregate amount of the

Allowed Professional Claims shall be paid by the Wind Down Entities.  Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code, any applicable retention order or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate.

**X.     Statutory Fees Payable Pursuant to 28 U.S.C. § 1930**

126.     All fees due and payable pursuant to 28 U.S.C. § 1930, together with interest, pursuant to 31 U.S.C. § 3717, due and owing prior to the Effective Date shall be paid by the Debtors on or before the Effective Date.  The Debtors shall file all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. On and after the Effective Date, the Wind Down Entities shall pay these fees when due and owing and prepare and file all necessary quarterly reports and other reports required by the Court.

**Y.     Priority Tax Claims**

127.     Subject to Section 8.3 of the Plan, except to the extent that the applicable Holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or such Holder agrees to less favorable treatment or is otherwise ordered by the Court by a separate order, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, the full value of their Claim in full in Cash on or as soon as reasonably practicable after the earliest of (i) the Initial Distribution Date; (ii) the date on which such Priority Tax Claim becomes Allowed; and (iii) such other date as may be ordered by the Court.

**Z.     Ad Hoc Committee Expenses**

128.     From and after the Confirmation Date, any outstanding and unpaid Ad

Hoc Committee expenses (including but not limited to the fees owed by the Debtors in

accordance with the Amended and Restated Rothschild Reimbursement Agreement, included in

the Plan Supplement) shall be paid in full in Cash subject and pursuant to the procedures set

forth in Section 3.4 of the Plan.  Except as otherwise specifically provided in the Plan, from and

after the Confirmation Date, the Plan Administrator, as the case may be, shall, in the ordinary

course of business and without any further notice to or action, order or approval of the Court, pay

in Cash the reasonable and documented legal, professional or other fees and expenses related to

implementation and Consummation of the Plan incurred by the Ad Hoc Committee in

accordance with the Wind Down Budget.  The Debtors' payment of the Ad Hoc Committee

expenses is authorized by and pursuant to sections 363(b), 364(b), 1123(b)(6) and 1129(a)(4) of

the Bankruptcy Code and Bankruptcy Rule 9019.

## AA.    Filing Deadlines for Other Administrative Claims

129.    Any Holder of an Administrative Claim who is not excepted, pursuant to

Section 3.1 of the Plan, from the requirements to file and serve a request for payment of such

Administrative Claim on or prior to the Administrative Claim Bar Date will be forever barred,

estopped and enjoined from asserting such Administrative Claim against the Debtors or the Wind

Down Entities or their respective property and from participating in any Distribution in the

Debtors' cases on account of such Administrative Claim.  The Administrative Claim Bar Date

shall be (a) 4:00 p.m. (Eastern Time) on the 30th day after the Confirmation Date for

Administrative Claims that arose prior to the Confirmation Date, (b) 4:00 p.m. (Eastern Time) on

the 30th day after the Effective Date for Administrative Claims that arose during the period from

the Confirmation Date through the Effective Date or (c) such other date established by order of

the Court by which requests for payment in respect of Other Administrative Claims must be

filed.

**BB.**    **Section 1146 Exemption from Certain Transfer Taxes and Recording Fees**

130.    Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind Down Entities or to any other Entity, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the Distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

131.    Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments, and (b) all actions of the Debtors that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, this Confirmation Order, and the agreements created or contemplated by the Plan or this Confirmation Order, without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

**CC.   Retention of Jurisdiction**

132.   Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Court shall retain its existing jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code.

**DD.   Plan Documents**

133.   The Plan Documents are approved and, upon execution and delivery of the Plan Documents, including any amendments, supplements or modifications after the date of this Confirmation Order that are necessary or appropriate to implement the Plan and made in accordance with this Confirmation Order, by the applicable parties, such documents shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of the Court, or other act or action under applicable law, regulation, order or rule.  The Debtors and, after the Effective Date, the Wind Down Entities, are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including paying all fees due thereunder or in connection therewith.

**EE.   Effectiveness of All Actions**

134.   Except as set forth in the Plan, all actions authorized to be taken by the Plan or this Confirmation Order shall be effective on, prior to, or after the Effective Date pursuant to the terms of the Plan or this Confirmation Order (as applicable), without further application to, or order of, the Court.

**FF.    Authorization to Take Actions to Implement and Consummate the Plan**

135.    Pursuant to section 1142(b) of the Bankruptcy Code, the Debtors and the Wind Down Entities hereby are authorized and empowered to take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, the documents contained in the Plan Supplement, and any other Plan Documents, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto, and all documents, instruments, securities and agreements authorized thereunder and related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.

136.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan, the Plan Supplement and any other Plan Documents, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, and any other Plan Documents and any amendments or modifications thereto.

**GG.    Intercompany Claims and Intercompany Interests**

137.    On and after the Effective Date, each Intercompany Claim and each Intercompany Interest shall be cancelled, released and discharged.

**HH.    Dissolution of the UCC**

138.    On the Effective Date, the Official Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties arising from, or

related to, the Chapter 11 Cases; *provided* that the Official Committee will stay in existence solely for the limited purpose of (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions, litigation or appeals seeking enforcement of the provisions of the Plan or under the Confirmation Order, and (c) motions, litigation or appeals pending on the Effective Date in which the Official Committee is a party; *provided*, further, that, with respect to pending appeals and related proceedings, the Official Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.

## II.    Modifications or Amendments

139.    Entry of this Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.  After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, including the Plan Supplement, without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests and are otherwise permitted under section 1127(b) of the Bankruptcy Code; *provided, further*, that, to the extent any proposed documents would adversely affect the amount or timing of Distributions or the rights or powers of the Plan Administrator, the Advisory Committee, or the Appointed Director, such documents shall also be in form and substance reasonably acceptable to the Supporting Parties  After the Confirmation Date and before substantial consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, including the Plan Supplement, the Disclosure

Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and effects of the Plan.

**JJ.     Effect of Conflict between Plan and Confirmation Order**

140.     In the event of any direct conflict between the terms of the Plan or any of the Plan Documents and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

**KK.    Notice of Entry of Confirmation Order and Occurrence of Effective Date**

141.     In accordance with Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), within fifteen (15) Business Days following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date on all parties served with the Confirmation Hearing Notice in substantially the form of the notice annexed hereto as Exhibit B, which form is hereby approved, to be delivered to such parties by first-class mail, postage prepaid, or by electronic mail as authorized in the Solicitation Procedures Order; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason and the Debtors have made a reasonable effort to ascertain an alternative mailing address, unless the Debtors have been informed in writing by such Entity, or is otherwise aware, of that Entity's new address; *provided*, further that the Debtors may, within their reasonable discretion, determine to serve separate notices of entry of this Confirmation Order and occurrence of the Effective Date on the parties and in the manner described above, each of such separate notices to be, in relevant part, in substantially the form of the notice annexed hereto as Exhibit B.

142.     Mailing of the notice of entry of this Confirmation Order in the time and manner set forth in the previous paragraph shall be good and sufficient notice under the particular circumstances in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice shall be necessary.

## LL.    Injunctions and Automatic Stay

143.     Unless otherwise provided in the Plan or in this Confirmation Order, any injunction or stay arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

144.     This Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, setoffs, suits, judgments, damages, demands, debts, rights or liabilities released, compromised, or discharged pursuant to the Plan.

## MM.   Nonseverability of Plan Provisions upon Confirmation

145.     Each term and provision of the Plan, as it may have been altered or interpreted herein, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except in accordance with Article 11 of the Plan; and (c) nonseverable and mutually dependent, *provided*, *however*, the Customer Preference Settlement offered through the Plan is severable.

## NN.   Authorization to Consummate

146.   The Debtors are authorized to consummate the Plan on any Business Day selected by the Debtors after the entry of this Confirmation Order, subject to satisfaction or waiver of the conditions (by the required parties) to the Effective Date set forth in Section 9.1 of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Section 9.1 of the Plan have been satisfied or waived (by the required parties) pursuant thereto.

## OO.   Filing and Recording

147.   This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.  Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

## PP.   Tax Withholding and Identification

148.   In connection with the Plan, to the extent applicable, the Debtors, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Plan Administrator and the Distribution Agent shall be

authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms that are reasonable and appropriate.  For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable Holder.  The Plan Administrator reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

149.    Any Holder entitled to receive any Distribution under the Plan shall, upon request, deliver to the Distribution Agent or such other Entity designated by the Plan Administrator Pre-Distribution Requirements, including a completed IRS Form W-9 or appropriate IRS Form W-8.  If a request for Pre-Distribution Requirements has not been satisfied within 30 days thereafter, a second request shall be sent to such Holder.  If the Holder fails to comply with the Pre-Distribution Requirements before the date that is 60 days after a second request is made, such Holder shall be deemed to have forfeited its right to receive Distributions, and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Plan Administrator receiving its executed Pre-Distribution Requirements.  Any Distributions that are forfeited pursuant to this provision shall revest in the Consolidated Wind Down Trust as Plan Assets.

150.    Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have responsibility for any Taxes imposed by any Governmental Unit, including income, withholding, and other Taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, not to make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such Tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party.

## QQ.    Substantial Consummation

151.    On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## RR.    Debtors' Actions Post-Confirmation Through the Effective Date

152.    During the period from entry of this Confirmation Order through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors-in-possession in the ordinary course in a manner consistent with past practice in all material respects, and as otherwise necessary to consummate the Plan, subject to all applicable Final Orders, the Plan and any other Plan Documents.

## SS.    Governmental Units

153.    Nothing in the Plan or the Confirmation Order shall affect the obligations of the pre-Effective Date Debtors, the post-Effective Date Debtors, the Wind Down Entities, and/or any transferee or custodian under applicable law to maintain books and records that are subject to any governmental subpoena, document preservation letter, or other inquiry or investigative request from a governmental agency.  The Debtors and the Liquidating Trust, as

applicable, shall preserve and maintain the Debtors' books, records, documents, files, electronic

data (in whatever format, including native format) and tangible objects, wherever stored (the

"Debtor's Records"), and shall not destroy, abandon, or otherwise render them unavailable

without providing at least sixty (60) days' advance written notice filed on the Bankruptcy

Court's docket and served in accordance with Bankruptcy Rule 2002.

154.    Notwithstanding any language to the contrary contained in the Plan or the

Confirmation Order, nothing in the Plan or the Confirmation Order constitutes a finding under

the federal securities laws as to whether crypto assets or transactions involving crypto assets are

securities.

155.    Notwithstanding anything to the contrary contained in the Plan or the

Confirmation Order, as to the United States of America (the "United States"), nothing in the Plan

or the Confirmation Order: (i) shall grant any relief to any entity that the court is prohibited from

granting by the Declaratory Judgment Act, 28 U.S.C. 2201(a), or the Anti-Injunction Act, 26

U.S.C. 7421(a) or (ii) shall expand the scope of the release or injunction to which the Debtors are

entitled to under the Bankruptcy Code; *provided however*, for the avoidance of doubt, the

Debtors shall not be released or discharged of any liabilities arising under subchapter III of

Chapter 37 of Title 31 of the United States code (the "False Claims Act") or any criminal or

federal tax laws (except as separately agreed with the United States).  The exculpation, release

and injunction provisions contained in the Plan and the Confirmation Order are not intended, and

shall not be construed, to bar the United States or other Governmental Unit (as defined in section

101(27) of the Bankruptcy Code) from, subsequent to entry of the Confirmation Order,

exercising any criminal, police and or regulatory powers that would not be stayed pursuant to

section 362 of the Bankruptcy Code.  Notwithstanding the foregoing, the automatic stay of

section 362 of the Bankruptcy Code shall no longer apply after the Effective Date of the Plan.

156.    Nothing in the Confirmation Order or the Plan shall release any non-

Debtor parties from any liability to any Governmental Unit, including the United States,

including but not limited to, any liabilities arising under the Internal Revenue Code, the

environmental laws, the False Claims Act or any criminal laws, nor shall anything in the

Confirmation Order or the Plan enjoin the United States from bringing any such claim, suit,

action or other proceeding against non-Debtor parties, in each case except as separately and

expressly agreed in writing by the United States.

157.    As to any Governmental Unit in the United States, except as separately and

expressly agreed in writing with such Governmental Unit (including, without limitation, the

settlement authorized by the Court's June 20, 2024 order (D.I. 18036) and the settlement

authorized by the Court's August 5, 2024 order (D.I. 22283)), nothing in the Plan, the

Confirmation Order, any Plan Supplement, the Definitive Documents, or other related documents

shall:

> 1.    discharge, release, exculpate, enjoin, bar, impair or otherwise
> preclude or affect (a) any obligation or liability to any
> Governmental Unit that is not a "claim" within the meaning of
> section 101(5) of the Bankruptcy Code, (b) any Claim of any
> Governmental Unit arising after the Effective Date, (c) any
> obligation or liability of any of the Debtors or the Wind Down
> Entities accruing after the Effective Date under police or
> regulatory statutes or regulations to any Governmental Unit as the
> owner, lessor, lessee, licensee, or operator of property or rights to
> property that such entity owns, operates, licenses, or leases after
> the Effective Date, (d) any right, defense, suit or cause of action of,
> or obligation or liability owed to, any Governmental Unit on behalf
> of any non-Debtor, or (e) any and all regulatory orders or non-
> monetary judgments issued to or against the Debtors prior to,
> during, or after the Effective Date;

2.      release, exculpate, bar, enjoin, nullify, or preclude the enforcement of any Governmental Unit's criminal, police and regulatory powers, other than the enforcement of money judgment;

3.      authorize the assumption, sale, assignment or other transfer of any federal or governmental (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property, data and patents, (v) leases, (vi) participation rights, (vii) agreements, (viii) applications, (ix) licenses, (x) permits, (xi) registrations, (xii) authorizations, (xiii) approvals, or (xiv) other interests of any Governmental Unit (collectively, "Governmental Interests"), without compliance with all terms of the Governmental Interests, as applicable, and with all applicable non-bankruptcy law;

4.      be interpreted to set cure amounts or to require the United States or any Governmental Unit to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Governmental Interests;

5.      waive, alter or otherwise limit any Governmental Unit's property and other rights, including, but not limited to, an interest in the Debtors' accounts and cryptocurrency funds, whether now in existence or hereafter acquired, and all rights and interests of any Governmental Units, Debtors or Wind Down Entities are fully preserved;

6.      confer exclusive jurisdiction to the Bankruptcy Court with respect to the Governmental Interests, claims, rights, defenses, obligations, liabilities, and causes of action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

7.      affect any setoff or recoupment rights and defenses of any Governmental Units and such rights and defenses are preserved;

8.      affect any adversary proceeding by the Committee or the Debtors against any Governmental Units or any related litigation or appeals; or

9.      expand the scope of section 525 of the Bankruptcy Code.

158.    For the avoidance of doubt, the States of Texas, New Jersey, Wisconsin, Mississippi, and Tennessee, and their respective agencies, opt out of any and all releases provided in the Plan.

159.    Notwithstanding any terms herein (except as provided in paragraph 150 above) or in the Plan, the treatment of the proofs of claim of the States of Texas, New Jersey, Wisconsin, Mississippi, and Tennessee, and other states participating as "State Governmental Claims" as defined therein, shall be treated pursuant to the *Stipulation By and Between the Debtors and Certain State Governmental Units* filed at Docket No. 25287.

## TT.    FTX DM Global Settlement Agreement

160.    To the extent that the FTX DM Global Settlement Agreement is in full force and effect as of the Effective Date, the FTX DM Global Settlement Agreement will be incorporated into the Plan.

## UU.    Other Reservations of Rights

161.    For the avoidance of doubt, notwithstanding anything contained herein to the contrary, nothing in this Confirmation Order, the Plan or Plan Supplement (1) pertaining to substantive consolidation, the elements thereof, or the insolvency of any Debtor or consolidated Debtors is intended to or shall be deemed to affect any rights, obligations, claims, defenses, counterclaims or cross-claims of any party to the pending adversary proceeding, *Alameda Research Ltd. and Clifton Bay Investments LLC* v. *Kives et al.* (Adv. Pro. No. 23-50411 (JTD)) or (2) is intended to impact the parties' rights or obligations in connection with agreements and investments that are related to that pending adversary proceeding.

162.    Nothing in this Confirmation Order, the Plan, or any documents or agreements relating thereto, shall be deemed to alter, limit, enjoin, or modify (i) Philadelphia Indemnity Insurance Company's ("Philadelphia") and the Debtors' rights and defenses under the prepetition surety bonds issued by Philadelphia on behalf of certain Debtors (collectively, the "Surety Bonds"), the related indemnity agreements and/or collateral agreements (the "Surety Indemnity Agreements"), and/or in any collateral in respect of the Surety Indemnity Agreements

and Surety Bonds (the "Surety Collateral") or (ii) Philadelphia's subrogation rights with respect to any claim by third parties and any claims against any of Philadelphia's non-Debtor indemnitors. For the avoidance of doubt, the Debtors are not assuming, and, to the extent subject to rejection pursuant to section 365 of the Bankruptcy Code, expressly rejecting pursuant to the Plan, the Surety Bonds and the Surety Indemnity Agreements. Without the requirement of any action by Philadelphia, Philadelphia is deemed to have opted out of the third-party release provisions of the Plan, and Philadelphia is not a Releasing Party under the Plan.

163.   Notwithstanding anything in the Plan or Confirmation Order:  (i) any administrative expense claims of Mississippi Department of Revenue (the "MDOR") shall be subject to, and treated in accordance with, Sections 3.2 and 3.3 of the Plan and the MDOR, the Debtors' and the Plan Administrator's rights are reserved with respect to such claims; (ii) the MDOR shall provide notice to the Plan Administrator of such administrative claims (it being understood that the MDOR shall not be required to file any proofs of claim or requests for payment in the Chapter 11 Cases for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code as a condition to having an allowed administrative expense under subsection 503(b)(1)(B) or (C) of the Bankruptcy Code); (ii) the MDOR may amend any proof of claim with respect to (a) a pending audit or audit that may be performed, (b) within 60 days following the filing of a tax return or (c) to liquidate an unliquidated claim; provided that the Debtors or the Plan Administrator's rights are reserved with respect to such claim and any amendment; (iv) any Allowed Priority Tax Claims of the MDOR shall be subject to, and treated in accordance with, Section 4.3.1 of the Plan except to the extent that the such claims, if any, are not paid in full in cash on the Initial Distribution Date, in which case such claims shall, at a minimum, be paid by regular installment payments in cash over a period beginning from the Initial Distribution Date not

to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, along with non-bankruptcy interest in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code and Mississippi state law, as applicable; and (v) the treatment of the MDOR Allowed Priority Tax Claims and/or any liabilities to the MDOR described in section 503(b)(1)(B) and (C) of the Bankruptcy Code described herein shall not be considered a settlement or compromise.

164.    Notwithstanding anything to the contrary in the Plan Documents, other than as explicitly provided for in the *Order (A) Authorizing the Debtors' Entry Into, and Performance Under, the Settlement Agreement With Kroll Restructuring Administration LLC, (B) Approving the Settlement Agreement, and (C) Granting Related Relief* [D.I. 24885] ("Kroll Settlement Order") nothing shall release or exculpate Kroll Restructuring Administration LLC for claims relating to the Security Incident (as defined in the Kroll Settlement Order).

## VV.    Interpretation

165.    Notwithstanding any other provision of the Plan, the Plan Supplement, or this Confirmation Order, any bona fide, good faith dispute regarding the interpretation of an ambiguity in the Plan or the Plan Supplement in accordance with Section 2.2 of the Plan shall be resolved by the Court.

## WW.   Final Order

166.    This Confirmation Order is intended to be a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: _____
       Wilmington, Delaware

_____
The Honorable John T. Dorsey
Chief United States Bankruptcy Judge

**EXHIBIT A**

**[CONFIRMED PLAN TO BE ATTACHED]**

**<u>Exhibit B</u>**

**Notice of Confirmation**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No.** |

## NOTICE OF EFFECTIVE DATE OF
## THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

**PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court"), entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "Confirmation Order"). The Confirmation Order, among other things, confirmed the *Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D.I. [●]] (including the Plan Supplement and all other exhibits and schedules thereto, as may be amended, modified or supplemented from time to time in accordance with its terms and the terms hereof, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the Effective Date of the Plan occurred. All conditions precedent to the Effective Date set forth in Article 9 of the Plan have either been satisfied or waived in accordance with the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Section 3.1 of the Plan, any Holder of an Administrative Claim (except as otherwise provided in the Plan) that accrued on or before the Effective Date must file and serve a request for payment of such Administrative Claim on the Plan Administrator **on or before 4:00 p.m. (prevailing Eastern Time) on the 30th day after the Effective Date** (the "Administrative Claim Bar Date"). Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Debtors, the Wind Down Entities

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

or their respective properties.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Article 6 of the Plan, any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease ("Rejection Claims") pursuant to the Plan must be filed with the Notice and Claims Agent **on or before 4:00 p.m. (prevailing Eastern Time) on the earlier of (a) the 30th day after entry by the Court of an order providing for the rejection of such Executory Contract or Unexpired Lease and (b) the 30th day after the Effective Date**; *provided* that the deadline for filing any Rejection Claims in connection with any Executory Contract or Unexpired Lease rejected pursuant to a prior order of the Court shall be the date set forth in the respective order authorizing such rejection (the "Rejected Contract Claims Bar Date"). Any holder of a such Rejection Claim that is required to, but does not, file a Rejection Claim with the Notice and Claims Agent by the Rejected Contract Claims Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind Down Entities, the Plan Administrator or any of their respective properties.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Article 7.11 of the Plan, all Bahamas Customers forever, fully and finally release and discharge the Debtors with respect to any Dotcom Customer Entitlement Claims and Dotcom Convenience Claims and forever, fully and finally withdraw with prejudice such Dotcom Customer Entitlement Claims and Dotcom Convenience Claims from these Chapter 11 Cases. No Bahamas Customer who timely made a valid Bahamas Opt-In Election shall receive any Distribution under the Plan on account of any Dotcom Customer Entitlement Claims or Dotcom Convenience Claims.

**PLEASE TAKE FURTHER NOTICE** that Article 10 of the Plan and the Confirmation order contain certain release, exculpation and injunction provisions that are binding on the Holders of Claims and Interests as set forth in more detail in the Plan and Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Consolidated Wind Down Trust, the Wind Down Entities and any Holder of a Claim or an Interest and such Holder's respective successors and assigns, regardless of whether the Claim or the Interest of such Holder is Impaired under the Plan, and regardless of whether such Holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and Confirmation Order in their entirety.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan and other documents filed in the Chapter 11 Cases may be obtained from the Court's website, https://deb.uscourts.gov, for a nominal fee, or obtained free of charge by accessing the website of the Debtors' claims and noticing agent, https://restructuring.ra.kroll.com/ftx/.

Dated:    [●], 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com
        kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*