## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF STEVEN P. COVERICK IN SUPPORT OF CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

I, Steven P. Coverick, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

### I.    Personal Qualifications

1.    I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a restructuring advisory services firm specializing in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services and financial and operation restructuring.

2.    I have more than ten years of restructuring and financial advisory experience across various industries, including energy, technology, media, telecommunications, logistics, and healthcare.  I have a Bachelor's Degree from the Kelley School of Business at Indiana University, am a CFA® charterholder, and am recognized as a Certified Turnaround Professional by the Turnaround Management Association.

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

3.      Since joining A&M, I have been involved in numerous Chapter 11 restructurings, including Seadrill Limited, iHeart Media Inc., White Star Petroleum Holdings, LLC, Templar Energy LLC, and Expro International Group Holdings Limited.

4.      I submit this declaration (this "Declaration") in support of confirmation of the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26029] (including the Plan Supplement, and all other exhibits and schedules thereto, in each case, as may be further amended, modified, or supplemented from time to time, the "Plan").[2]  I have reviewed, and I am generally familiar with, the terms and provisions of the Plan, the documents comprising the Plan Supplement, the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] (the "Disclosure Statement"), the proposed Confirmation Order, and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.

5.      I am generally familiar with the Debtors' current day-to-day operations, financial affairs, business affairs and (to the extent available) books and records.  Except as otherwise indicated, the facts set forth in this Declaration (or incorporated by reference herein) are based upon my personal knowledge, my review of relevant documents and the Debtors' books and records, my discussions with members of the Debtors' senior management and the Debtors' other advisors, information provided to me by employees working under my supervision or other employees of the Debtors, my opinion based upon my experience and knowledge related to the Debtors' operations, businesses, and financial condition, or upon information supplied to me by

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in (a) the *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates*, filed contemporaneously herewith or (b) the Plan, as applicable.

the Debtors' counsel and advisors.  If called upon to testify, I would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.

6.    Based on my personal involvement in the formation of the Plan, my attendance at Board meetings, my discussions with management of the Debtors and the Debtors' other advisors (including counsel), and my review of the Plan, the Plan Supplement and the Disclosure Statement, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, that the Plan was proposed in good faith, and that the Debtors, acting through their officers, directors, and professionals, have conducted themselves in a manner that complies with applicable law in relation to the formulation and negotiation of, and solicitation of votes on, the Plan.

## II.    Background

### A.    Plan Summary.

7.    The Plan provides for the transfer of all assets of the Consolidated Debtors to the Consolidated Wind Down Trust as of the Effective Date, free and clear of any Liens, Claims, charges or other encumbrances or interests.  The Consolidated Wind Down Trust will fund Cash distributions to creditors, and will be managed by the Wind Down Board and the Plan Administrator.

8.    Key components of the Plan include the following:

- Satisfaction in full of Allowed Claims in Class 1 (Priority Tax Claims), Class 2 (Other Priority Claims), Class 3B (Other Secured Claims), Class 4 (Separate Subsidiary Claims), Class 5C (NFT Customer Entitlement Claims) and Class 8A (Propco Operating Expense Claims).

- In the case of Holders in Class 3A (Secured Loan Claims), Class 6A (General Unsecured Claims), Class 7A (Dotcom Convenience Claims), Class 7B (U.S. Convenience Claims) and Class 7C (General Convenience Claims), payment in Cash in an amount projected to equal 100% of such Allowed Claim plus interest paid at the applicable rate on such Claim.

- In the case of Holders in Class 5A (Dotcom Customer Entitlement Claims), Class 5B (U.S. Customer Entitlement Claims) and Class 6B (Digital Asset Loan Claims), payment in Cash in an amount projected to equal 100% of such Holder's Allowed Claim, plus interest at the applicable rate, plus any proceeds, if any, from the Supplemental Remission Fund to which such Holder is entitled.

- In the case of Holders in Class 8B (Priority DM Claim), payment in Cash in an amount equal to the Priority DM Claim, to be paid directly from the proceeds from the sale, disposition or other monetization of the Bahamas Properties, until the Priority DM Claim is paid in full.

- In the case of Holders in Class 8C (PropCo General Unsecured Claims), payment in Cash in an amount equal to such Holder's Pro Rata share of the proceeds from the sale, disposition or other monetization of the Bahamas Properties available to pay PropCo General Unsecured Claims.

- In the case of Holders in Class 10A (Senior Subordinated IRS Claims) and Class 10C (Junior Subordinated IRS Claims), payment in Cash in an amount equal to such Holder's share of remaining proceeds available for Distribution from the General Pool.

- In the case of Holders in Class 10B (Senior Subordinated Governmental Claims), payment in Cash in an amount equal to such Holder's share of remaining proceeds available for Distribution from the General Pool; *provided* that each Holder of such Allowed Senior Subordinated Governmental Claim may elect to contribute such payment to the Supplemental Remission Fund for the benefit of, and Distribution to, Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, and Allowed Digital Asset Loan Claims.

- In the case of Holders in Class 12 (Preferred Equity Interests), Class 13 (Section 510(b) Preferred Equity Claims), Class 14 (Section 510(b) Other Equity Claims) and Class 16 (Other Equity Interests), payment in Cash in an amount equal to such Holder's Pro Rata share of remaining proceeds available for Distribution from the General Pool.

- No Holder of a Claim or Interest in Class 9 (Cancelled Intercompany Claims), Class 11 (Intercompany Interests), Class 15 (Equitably Subordinated Claims), Class 17 (FTT Claims and Interests) or Class 18 (*De Minimis* Claims) shall receive any Distribution on account of its Claim or Interest.

- Subject to the occurrence of the Effective Date, the rejection of all Executory Contracts and Unexpired Leases of the Debtors other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court; (b) that, as of the Effective Date,

are the subject of a pending motion to assume; or (c) that are specifically described in the Plan to be assumed in connection with the Plan.

B.    <u>Plan Solicitation</u>.

9.    The Debtors distributed the Solicitation Packages in accordance with the Solicitation and Voting Procedures by the Solicitation Mailing Deadline (as defined in the Solicitation Procedures Order).    Specifically, the Debtors caused Kroll Restructuring Administration LLC ("<u>Kroll</u>") to distribute a Solicitation Package to each Holder of a Claim or Interest in Class 3A (Secured Loan Claims), Class 5A (Dotcom Customer Entitlement Claims), Class 5B (U.S. Customer Entitlement Claims), Class 6A (General Unsecured Claims), Class 6B (Digital Asset Loan Claims), Class 7A (Dotcom Convenience Claims), Class 7B (U.S. Convenience Claims), Class 7C (General Convenience Claims), Class 8B (Priority DM Claim), Class 8C (PropCo General Unsecured Claims), Class 10A (Senior Subordinated IRS Claims), Class 10B (Senior Subordinated Governmental Claims), Class 10C (Junior Subordinated IRS Claims) and Class 12 (Preferred Equity Interests) (each, a "<u>Voting Class</u>" and collectively, the "<u>Voting Classes</u>").  The Debtors caused Kroll to distribute the Unimpaired Notice (as defined in the Solicitation Procedures Order) to Holders of Unimpaired Claims and Interests in Class 1 (Priority Tax Claims), Class 2 (Other Priority Claims), Class 3B (Other Secured Claims), Class 4 (Separate Subsidiary Claims), Class 5C (NFT Customer Entitlement Claims) and Class 8A (Propco Operating Expense Claims), which are conclusively deemed to accept the Plan, and the Impaired Notice (as defined in the Solicitation Procedures Order) to Holders of Impaired Claims and Interests in Class 13 (Section 510(B) Preferred Equity Claims), Class 14 (Section 510(B) Other Equity Claims), Class 15 (Equitably Subordinated Claims), Class 16 (Other Equity Interests), Class 17 (FTT Claims and Interests) and Class 18 (*De Minimis* Claims), which are conclusively presumed to have rejected the Plan.

10.     On August 2, 2024, the Debtors filed the Plan Supplement [D.I. 22163], consisting of:   (a) the Draft Plan Administration Agreement; (b) the Draft Liquidating Trust Agreement; (c) the List of Wind Down Board Members; (d) the List of Advisory Committee Members; (e) the List of Excluded Customer Preference Actions; (f) the Wind Down Budget; (g) the List of Assumed Executory Contracts and Unexpired Leases; (h) the List of Excluded Entities; (i) the List of Separate Subsidiaries; and (j) the Amended and Restated Rothschild Reimbursement Agreement.  It is my understanding that the Debtors caused the Plan Supplement to be served on, among others, the parties identified on the master service list maintained by Kroll (the "Notice Parties").

11.     On September 23, 2024, the Debtors filed the First Amended Plan Supplement [D.I. 25649], consisting of the Amended and Restated List of Assumed Executory Contracts and Unexpired Leases.  It is my understanding that the Debtors caused the First Amended Plan Supplement to be served on, among others, the Notice Parties.

12.     The deadline for all Holders of Claims and Interests entitled to vote on the Plan to cast their ballots was August 16, 2024 at 4:00 p.m. (Prevailing Eastern Time).  I have been advised that each of the 14 Voting Classes voted overwhelmingly to accept the Plan.

### III.    The Plan Satisfies the Bankruptcy Code's Requirements for Confirmation

13.     Based on my understanding of the Plan, the events that have occurred during these Chapter 11 Cases, and discussions I have had with the Debtors' professionals regarding the requirements of the Bankruptcy Code, I believe that the Plan satisfies all provisions of section 1129 of the Bankruptcy Code and complies with all other applicable sections of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), and applicable non-bankruptcy law, and should therefore be confirmed.

A.    The Plan Satisfies Bankruptcy Code Section 1129(a)(1).

14.    I understand that section 1129(a)(1) of the Bankruptcy Code requires the Plan to comply with the applicable provisions of the Bankruptcy Code.  As detailed below, I have been advised by the Debtors' other advisors that the Plan satisfies this requirement.

*1.    Classification of Claims and Interests Complies with Bankruptcy Code Section 1122.*

15.    The Plan designates Claims and Interests into the following Classes: Class 1 (Priority Tax Claims); Class 2 (Other Priority Claims); Class 3A (Secured Loan Claims); Class 3B (Other Secured Claims); Class 4 (Separate Subsidiary Claims); Class 5A (Dotcom Customer Entitlement Claims); Class 5B (U.S. Customer Entitlement Claims); Class 5C (NFT Customer Entitlement Claims); Class 6A (General Unsecured Claims); Class 6B (Digital Asset Loan Claims); Class 7A (Dotcom Convenience Claims); Class 7B (U.S. Convenience Claims); Class 7C (General Convenience Claims); Class 8A (PropCo Operating Expense Claims); Class 8B (Priority DM Claim); Class 8C (PropCo General Unsecured Claims); Class 9 (Cancelled Intercompany Claims); Class 10A (Senior Subordinated IRS Claims); Class 10B (Senior Subordinated Governmental Claims); Class 10C (Junior Subordinated IRS Claims); Class 11 (Intercompany Interests); Class 12 (Preferred Equity Interests); Class 13 (Section 510(b) Preferred Equity Claims); Class 14 (Section 510(b) Other Equity Claims); Class 15 (Equitably Subordinated Claims); Class 16 (Other Equity Interests); Class 17 (FTT Claims and Interests); and Class 18 (*De Minimis* Claims).  I believe the Debtors' classification scheme is consistent with the bounds of section 1122 of the Bankruptcy Code as it has been explained to me.

16.     I believe that each of the Claims or Interests in a particular Class under the Plan is substantially similar to the other Claims or Interests in such Class.  I also believe that each Class differs from the other Classes based on legal attributes or other relevant and objective criteria.  Further, I do not believe that the classification structure was designed to gerrymander the Classes to create an impaired consenting class.

17.     As a result of the foregoing, I believe that the Debtors' classification scheme complies with section 1122 of the Bankruptcy Code as it has been explained to me, and should be approved.

*2.     The Plan Complies with Bankruptcy Code Section 1123(a).*

18.     I have been advised that the Plan fully complies with each of the applicable requirements of section 1123(a) of the Bankruptcy Code, based on the following:

(a)     Section 1123(a)(1) of the Bankruptcy Code.  The Plan designates Classes of Claims and Interests.

(b)     Section 1123(a)(2) of the Bankruptcy Code.  The Plan specifies which Classes of Claims are Unimpaired under the Plan.

(c)     Section 1123(a)(3) of the Bankruptcy Code.  The Plan specifies the treatment of each Class of Claims and Interests that is Impaired under the Plan and the treatment for each such Impaired Class.

(d)     Section 1123(a)(4) of the Bankruptcy Code.  Except as otherwise agreed to by a Holder of a particular Claim or Interest, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class.

(e)     Section 1123(a)(5) of the Bankruptcy Code.  I understand that Article 5 of the Plan, and various other provisions of the Plan, provide adequate means for its implementation.

-8-

(f)      <u>Section 1123(a)(6) of the Bankruptcy Code</u>.  I understand that this section is inapplicable because no new nonvoting equity securities are being issued by the Consolidated Wind Down Trust.

(g)      <u>Section 1123(a)(7) of the Bankruptcy Code</u>.  I understand that the individuals proposed to serve as the initial directors of the Wind Down Board and the Plan Administrator have been disclosed in the Plan Supplement, which I understand is consistent with the interests of the creditors as beneficiaries of the Plan and public policy.  Further, I understand that any other directors of the Wind Down Board and any officers of the Wind Down Entities will be determined in accordance with the terms of the Plan, the Plan Supplement and the Liquidating Trust Agreement, which I understand is also consistent with the interest of the creditors as beneficiaries of the Plan and public policy.

19.      Accordingly, I believe the requirements of section 1123(a) of the Bankruptcy Code have been satisfied.

    *3.*      *The Plan Complies with Bankruptcy Code Section 1123(b).*

    *(a)*      *Plan Permissive Provisions.*

20.      I have been advised that section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan, and, as discussed in more detail below, I believe that each of the provisions of the Plan is consistent with section 1123(b).

(a)      <u>Section 1123(b)(1) of the Bankruptcy Code</u>.  Pursuant to Article 4 of the Plan, Class 1 (Priority Tax Claims) is unimpaired, Class 2 (Other Priority Claims) is unimpaired, Class 3A (Secured Loan Claims) is impaired, Class 3B (Other Secured Claims) is unimpaired, Class 4 (Separate Subsidiary Claims) is unimpaired, Class 5A (Dotcom Customer Entitlement Claims) is impaired, Class 5B (U.S. Customer Entitlement Claims) is impaired, Class 5C (NFT Customer Entitlement Claims) is unimpaired, Class 6A (General Unsecured Claims) is impaired,

Class 6B (Digital Asset Loan Claims) is impaired, Class 7A (Dotcom Convenience Claims) is impaired, Class 7B (U.S. Convenience Claims) is impaired, Class 7C (General Convenience Claims) is impaired, Class 8A (Propco Operating Expense Claims) is unimpaired, Class 8B (Priority DM Claim) is impaired, Class 8C (PropCo General Unsecured Claims) is impaired, Class 10A (Senior Subordinated IRS Claims) is impaired, Class 10B (Senior Subordinated Governmental Claims) is impaired, Class 10C (Junior Subordinated IRS Claims) is impaired, Class 12 (Preferred Equity Interests) is impaired, Class 13 (Section 510(B) Preferred Equity Claims) is impaired, Class 14 (Section 510(B) Other Equity Claims) is impaired, Class 15 (Equitably Subordinated Claims) is impaired, Class 16 (Other Equity Interests) is impaired, Class 17 (FTT Claims and Interests) is impaired and Class 18 (De Minimis Claims) is impaired.

(b)      Section 1123(b)(2) of the Bankruptcy Code. Section 6.1 of the Plan provides for the rejection of Executory Contracts and Unexpired Leases other than (1) those previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, (2) those that are the subject of a pending motion to assume or notice of assumption and (3) those listed in the Plan Supplement, as contemplated by section 1123(b)(2) of the Bankruptcy Code.

The Debtors and their advisors have reviewed the outstanding Executory Contracts and Unexpired Leases, and have determined that only those identified contracts listed in the Plan Supplement or otherwise assumed in accordance with Section 6.1 of the Plan should be assumed, and that rejection of all other Executory Contracts and Unexpired Leases is in the best interests of the Debtors, the Debtors' estates, and all stakeholders.

(c)    Section 1123(b)(3) of the Bankruptcy Code.

21.    Global Settlement and Customer Priority Settlement.  As I understand is permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 5.2 of the Plan provides that, in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan are a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim (the "Global Settlement).  My view is that the Global Settlement is fair, equitable and in the best interests of the Debtors and their stakeholders.

22.    Additionally, as part of the Global Settlement, I understand that the terms of the Customer Priority Settlement (as defined in the Disclosure Statement) are incorporated into the Plan through the Global Settlement in Section 5.2 of the Plan.  Pursuant to the Customer Priority Settlement, all Claims, Interests and Causes of Action against, by or among the Debtors, including, among other things, issues relating to the tracing of assets of individual Debtors and the effects and consequences of the Dotcom TOS and US TOS and whether assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors, will be settled and resolved.  Additionally, I understand that certain customer entitlement claims will be prioritized relative to certain other creditors, as described in detail in the Plan.

23.    It is my view that the Customer Priority Settlement is the result of good faith arm's-length negotiations and that such negotiations among the Debtors, the Official Committee, the Ad Hoc Committee, and the Class Action Claimants were free of any collusion.  I understand that in the absence of the Customer Priority Settlement, the Debtors would have been required to litigate against the Ad Hoc Committee, the Class Action Claimants and, potentially, other

customers as to whether assets that customers deposited into or acquired on the FTX Exchanges are assets of the Debtors' estates.

24.     It is apparent that litigation of such issues to final judgment would be complex, burdensome, uncertain, and could greatly delay the conclusion of these Chapter 11 Cases.  I understand that litigation would require, among other things, the resolution of disputes as to the meaning of the US TOS and Dotcom TOS and resolution of issues regarding the tracing of large quantities of different assets, which would likely be burdensome and time consuming. This would likely require discovery and expert analysis in relation to the tracing of a significant number of different cryptocurrency, stablecoin, fiat currency and other assets held within the Debtors' estates.

25.     Accordingly, based upon the facts I have reviewed and based upon my understanding of the claims and disputes as presented to me by the Debtors' other advisors, the Debtors' conclusion that the benefits from entry into the Customer Priority Settlement outweigh the burden and potential delay in distributions from continued litigation is reasonable.  My view is that the Customer Priority Settlement is fair, equitable, and in the best interests of the Debtors and their stakeholders.

26.     <u>Customer Preference Settlement</u>.  As I understand is permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 5.5 of the Plan provides for the Customer Preference Settlement.  In the absence of a settlement, the Debtors would be required to litigate to judgment each individual Customer Preference Action, which would be an immensely expensive and inefficient undertaking.  I have been advised that customers may assert certain defenses to, or otherwise dispute, Customer Preference Actions brought against them, including on the basis of (a) the safe harbor in section 546(e) of the Bankruptcy Code, (b) the ordinary course defense in

section 547(c)(2) of the Bankruptcy Code and (c) the new value defense in section 547(c)(4) of the Bankruptcy Code.  In addition, I understand there could be various other defenses available to certain customers that are specific to the facts surrounding the underlying withdrawals.  I have been advised that the Debtors have responses that may overcome certain of these defenses if interposed by certain customers.

27.    However, even if the Debtors were successful on the merits of the Customer Preference Actions, it is my opinion that the substantial recovery projected pursuant to the Financial Projections attached as Appendix C to the Disclosure Statement, subject to the assumption and limitations noted therein, nearly eliminates the net value of the uncertain recoveries on account of Customer Preference Actions.

28.    My view is that litigation of each and every customer preference claim would be costly and the outcome uncertain, and would generally not be beneficial to the Debtors or their estates given the forecasted recoveries.  The Debtors benefit from not needing to reconcile the amount of each customer's claim amount for those accepting and opting into the Customer Preference Settlement.  However, not every preference claim is similarly situated and the decision by the Debtors to preserve certain Customer Preference Claims for further evaluation is reasonable. My view is that the Customer Preference Settlement is the result of good faith arm's-length negotiations among the Debtors, the Official Committee, the Ad Hoc Committee and the Class Action Claimants, and is fair, equitable, and in the best interests of the Debtors and their stakeholders.

29.    The Customer Preference Settlement resulted from extensive discussions with the Official Committee, the Ad Hoc Committee, and other stakeholders, is presented separately in Section 5.5 of the Plan, and was detailed in the Disclosure Statement approved by

this Court.  The Customer Preference Settlement is not a plan or claim treatment provided on account of Customer Entitlement Claims.  Rather, the Debtors determined they would make an offer to waive and not prosecute Customer Preference Actions, subject to acceptance of the offer's terms and as long as the Customer Entitlement Claim did not fall into certain categories of Claims that the Debtors were not willing to include in the offer at this time.  The Customer Preference Actions included as Excluded Customer Preference Actions were determined after evaluating the potential Claims against this criteria.

(d)    Section 1123(b)(4) of the Bankruptcy Code.  The Plan does not provide for the sale of all or substantially all of the Debtors' property and, therefore, as I understand it, section 1123(b)(4) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

(e)    Section 1123(b)(5) of the Bankruptcy Code.  As I understand is permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims or Interests in the Impaired Classes, and leaves unaffected the rights of Holders of Claims or Interests in the Unimpaired Classes.

(f)    Section 1123(b)(6) of the Bankruptcy Code.  It is my understanding that section 1123(b)(6) of the Bankruptcy Code provides that a plan may include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.  As I understand is in accordance with section 1123(b)(6) of the Bankruptcy Code, Article 10 of the Plan contains certain release and exculpation provisions that are essential to the Plan and, I am advised, are consistent with the applicable provisions of the Bankruptcy Code.

30.    Accordingly, I believe that each of the foregoing permissive provisions is consistent with section 1123(b) of the Bankruptcy Code.

(b)      *The Plan Releases Should Be Approved.*

31.      The Plan provides for:  (a) releases by the Debtors; (b) voluntary releases by certain Holders of Claims and Interests; (c) exculpation for certain parties; and (d) an injunction precluding Persons from bringing any action that is released pursuant to the Plan or the Confirmation Order.  I believe that these provisions are appropriate because, among other things, they are reasonable, in the best interests of the Debtors, the product of arm's-length negotiations, are being provided in exchange for substantial consideration from the respective parties released thereby, and are important to obtaining stakeholder support for the Plan.

a.      The Debtors' Releases Are Appropriate and Should Be Approved.

32.      Section 10.3 of the Plan provides for the release and discharge of the Released Parties from certain claims, obligations, rights, suits, damages, causes of action, remedies and liabilities (the "<u>Debtors' Releases</u>").  Based on my participation in the Plan formation process, I believe that the Debtors' Releases are in the best interests of the Debtors' Estates and a sound exercise of the Debtors' business judgment.  Without *ex ante* assurance of protection from liability, I believe the Debtors' stakeholders would not have participated in the negotiations and compromises that led to the Plan.

33.      I believe that each of the parties released by the Debtors' Releases provided value to the Debtors and their Estates and aided in the development of the Plan.  Each of the Released Parties' substantial contribution to the Debtors and their Estates was instrumental in the successful resolution of the Chapter 11 Cases.  I also believe that such parties played an integral role in the formulation of the Plan and have expended significant time and resources analyzing and negotiating the issues throughout these Chapter 11 Cases.  Additionally, I understand that the Debtors' Releases form an essential part of the consideration to be provided in exchange for the

compromises and resolutions embodied in the Plan. I believe that the Debtors' Releases are fair and reasonable under the circumstances.

b.  The Voluntary Release by Holders of Claims and Interests Is Appropriate and Should Be Approved.

34.  The Plan also provides for a voluntary release and discharge of the Released Parties in Section 10.4 (the "Voluntary Release") by the Releasing Parties for certain claims, obligations, suits, rights, damages, Causes of Action, remedies and liabilities.

35.  I have been advised that all Holders that are Releasing Parties were provided with a Ballot or Election Form (as defined in the Solicitation Procedures Order), except to the extent a Holder is Unimpaired under the Plan. I understand that Holders will be Releasing Parties unless (a) they affirmatively opted out of the Voluntary Release or (b) in the case of Holders of Claims or Interests who are deemed to reject the Plan, they affirmatively opted in to the Voluntary Release.

36.  I believe that the Voluntary Release constitutes a good faith settlement and compromise and is fair, equitable and reasonable and in the best interests of the Debtors and all Holders. Moreover, I believe that the Voluntary Release is an integral part of, and important to, the implementation of the Plan. I understand from my participation in the Plan formation process that the Voluntary Release facilitated constructive participation in both the development of the Plan and the Debtors' restructuring process generally. I also believe that the Voluntary Release is sufficiently narrow, does not provide a blanket immunity, and provides a specific carve-out for omissions that constitute gross negligence, willful misconduct, fraud or criminal acts.

37.  For these reasons, I believe that the Voluntary Release is appropriate and should be approved.

c.     The Plan Exculpation Provision Is Appropriate and Should Be Approved.

38.     In addition to the releases discussed above, I am advised that Section 10.7 of the Plan (the "Exculpation Provision") also contains an exculpation for the Exculpated Parties, consisting of: (a) the Debtors; (b) the Official Committee and its current and former members, solely in their capacities as members of the Committee; (c) the Fee Examiner; (d) to the extent determined to be acting as a fiduciary for the benefit of a Debtor, or its estate, the Bahamas JOLs and FTX DM; and (e) with respect to each Person or Entity named in (a) through (d), any Person or Entity to the extent acting as a member, shareholder, director, officer, employee, attorney (including solicitors or barristers acting for the benefit of such Person or Entity), financial advisor, restructuring advisor, investment banker, accountant and other professional or representative of such Person or Entity, in each case in (a) through (e), to the extent such Person or Entity is or was acting in such capacity.  Notwithstanding anything to the contrary in the Plan or the Plan Supplement, no Excluded Party shall be an Exculpated Party.  I understand that gross negligence, willful misconduct, fraud and criminal acts are excluded from the Exculpation Provision.

39.     It is my view that the scope of the Exculpation Provision is limited to the Exculpated Parties and their professionals and representatives, who have contributed significantly to the efforts in the Chapter 11 Cases and will guide the successful consummation and implementation of the Plan, for any act or omission occurring on or after the Petition Date and on or before the Effective Date.

d.     The Injunction Is Appropriate and Should Be Approved.

40.     Additionally, I am advised that Section 10.8 of the Plan provides for permanent injunction preventing all Persons from bringing any action that is released pursuant to the Plan or the Confirmation Order (the "Injunction").  I believe the Injunction is necessary to

-17-

effectuate the Plan's releases and to protect the Debtors from the potential of barred litigation from prepetition stakeholders as they implement the provisions of the Plan following the Effective Date. Such litigation would increase the costs and hinder the efforts of the Debtors to effectively fulfill their responsibilities as contemplated in the Plan and thereby maximize recovery for all Holders. I also believe that the Injunction is narrowly tailored to achieve its purpose.

B.      The Plan Satisfies Bankruptcy Code Section 1129(a)(2).

41.      To the best of my knowledge and belief, based on discussions with the Debtors' legal counsel and other advisors, I believe that the Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, regarding disclosure and Plan solicitation. It is also my understanding that the Debtors distributed the Disclosure Statement and solicited acceptances of the Plan through Kroll in accordance with the Solicitation and Voting Procedures.

C.      The Plan Has Been Proposed in Good Faith in Compliance with Bankruptcy Code Section 1129(a)(3).

42.      It is my view that the Debtors have proposed the Plan in good faith and in consultation with the Debtors' counsel and advisors, and not by any means forbidden by law. I believe the Debtors have proposed the Plan with honesty and good intentions in order to effectuate an orderly wind down of the Debtors that is fair to and maximizes value for all stakeholders. The Plan is not proposed for a purpose forbidden by law, but rather is consistent with the letter and policy of the Bankruptcy Code and the fiduciary duties of the Debtors and their directors and officers. It is my understanding that all documents, settlements and agreements necessary to implement the Plan are essential elements of the Plan and entry into and consummation of the transactions contemplated thereby is in the best interests of the Debtors, their Estates and Holders of Claims and Interests. In my view, the terms of such documents are fair and reasonable. Further,

I am advised that the Plan and proposed Confirmation Order further reflect feedback received from the Debtors' stakeholders, including certain customers. I believe the Plan is also the culmination of good faith negotiations and arm's-length discussions among the Debtors, the Official Committee, the Ad Hoc Committee, the CFTC, the IRS, the Bahamas JOLs, various offices within the United States Department of Justice, several states and many other stakeholders and their representatives. The Plan reflects an agreement among all key stakeholders regarding the proper allocation and process for distribution to the various Classes of the Debtors' assets.

43. For these and other reasons, I believe that the Plan has been proposed by the Debtors in good faith and solely for the legitimate and honest purposes of efficiently and effectively winding down the Debtors and distributing their assets.

D.     The Plan Complies with Bankruptcy Code Section 1129(a)(4).

44. I understand that Section 1129(a)(4) of the Bankruptcy Code requires that any payment made or to be made by the plan proponent, by the debtor or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, be subject to the approval of the Court as reasonable. Based on my discussions with Debtors' counsel, I understand that the procedures set forth in Article 3 of the Plan for payment of, and/or the Court's review and ultimate determination of, the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incidental to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

E.     The Plan Complies with Bankruptcy Code Section 1129(a)(5).

45. I have been advised that section 1129(a)(5)(A)(i) of the Bankruptcy Code is satisfied because the Plan Supplement discloses the identities of the initial directors of the Consolidated Wind Down Trust. The Plan Supplement also discloses that the officers of the

Consolidated Wind Down Trust will consist of the Plan Administrator, a secretary and such other officers as the board of the Consolidated Wind Down Trust shall deem appropriate.  In accordance with the Liquidating Trust Agreement, the officers of the Consolidated Wind Down Trust shall be authorized to hire employees as they deem appropriate, subject to any limitations, conditions, and qualifications imposed by the Wind Down Board.  Accordingly, I believe that the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

  F.  <u>The Plan Does Not Contain Any Rate Changes</u>.

  46.  I have been advised that the Plan does not provide for any rate changes by the Debtors, and thus section 1129(a)(6) does not apply to the Plan.

  G.  <u>The Plan Is in the Best Interests of All Creditors and Interest Holders</u>.

  47.  I have been advised that the Bankruptcy Code requires that, with respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest of such Class either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors liquidated under chapter 7 of the Bankruptcy Code.  For the purposes of determining whether the Plan meets this requirement, personnel from A&M under my supervision, in consultation with the Debtors and their counsel, prepared the liquidation analysis attached to the Disclosure Statement as Appendix D (the "<u>Liquidation Analysis</u>"), which I have reviewed and hereby incorporate by reference.

  48.  I understand that the Liquidation Analysis demonstrates that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The Liquidation Analysis estimates potential distributions to Holders of Allowed Claims in both a hypothetical chapter 7 liquidation of the Debtors and as prescribed in the Plan.  The Liquidation Analysis demonstrates that non-accepting Holders of Claims or Interests in all Classes will recover under the Plan value

equal to or in excess of what such Claims or Interests would receive in a hypothetical chapter 7 liquidation.

49.     I believe that the Debtors' Liquidation Analysis is reasonable and that the assumptions and estimates in the Liquidation Analysis are appropriate in the context of these Chapter 11 Cases.  The Liquidation Analysis has been prepared assuming that these Chapter 11 Cases would have converted to cases under chapter 7 of the Bankruptcy Code on the anticipated Effective Date, and the Bankruptcy Court would have appointed a chapter 7 trustee to oversee the liquidation of the Debtor.  A chapter 7 trustee would need to complete the liquidation of the Debtors' remaining assets, manage costs related to the liquidation process, such as wind-down costs and trustee, professional and other administrative fees, and distribute the net proceeds to the Holders of Claims and Interests in accordance with the priority scheme under chapter 7 of the Bankruptcy Code.  Importantly, the Liquidation Analysis is intended to be read in conjunction with the notes and assumptions included in Appendix D of the Disclosure Statement, and I understand that such assumptions are reasonable and consistent with what actually would have occurred had the Debtors liquidated under chapter 7 of the Bankruptcy Code.

50.     The Liquidation Analysis is based upon my own knowledge and expertise, and the knowledge and expertise of the Debtors' other advisors, who have intimate knowledge of the Debtors' businesses and relevant industry and restructuring experience.  It is my understanding and belief that the Plan will provide all Holders of Claims and Interests with a recovery (if any) that is not less than what such Holder would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.  Accordingly, I understand that the best interests test is satisfied as to every single Holder of a Claim against or Interest in the Debtors.

H.    The Plan Has Been Accepted by Certain Impaired Voting Classes.

51.    As set forth in the Voting Report filed in support of the Plan, each of the Voting Classes, each of which is Impaired under the Plan, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

52.    I understand that Class 9 (Cancelled Intercompany Claims), Class 11 (Intercompany Interests), Class 13 (Section 510(b) Preferred Equity Claims), Class 14 (Section 510(b) Other Equity Claims), Class 15 (Equitably Subordinated Claims), Class 16 (Other Equity Interests), Class 17 (FTT Claims and Interests) or Class 18 (De Minimis Claims) are, as I am informed by the Debtors' counsel, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. It is my understanding that, based on the advice of the Debtors' counsel, the Plan is nonetheless confirmable because it satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code.

53.    Accordingly, while section 1129(a)(8) of the Bankruptcy Code has not been satisfied, as discussed more fully below, the Debtors meet the alternative requirement of section 1129(b) and the Plan may be confirmed over the deemed rejections of Classes 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 under the alternative "cram down" requirements of section 1129(b) of the Bankruptcy Code.

I.    The Plan Provides for Payment in Full of All Allowed Priority Claims.

54.    It is my understanding that the Plan satisfies section 1129(a)(9) of the Bankruptcy Code. I understand that the Plan and the Confirmation Order provide that except to the extent that a Holder of a Priority Tax Claim or Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim or Other Priority Claim shall receive payment in full in Cash on or as soon as reasonably practicable after the earliest of (i) the Initial Distribution Date; (ii) the date on which such Priority Tax Claim or Other Priority Claim becomes

Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court. It is also my understanding that except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on or as reasonably practicable after the later of (i) the Effective Date or (ii) the date on which such Claim is Allowed.

55.     I am advised that, for these reasons, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

J.      The Plan Satisfies Bankruptcy Code Section 1129(a)(10).

56.     I understand that the Plan satisfies Bankruptcy Code section 1129(a)(10), which I am advised requires the affirmative acceptance of the Plan by at least one class of impaired claims, determined without including any acceptance of the Plan by any insider. As discussed above, each of the Voting Classes is impaired and each of the Voting Classes voted overwhelmingly to accept the Plan, and I understand there is no indication that insiders hold Claims in any of these Classes sufficient to alter that result.

K.      The Plan Is Feasible.

57.     I am advised that section 1129(a)(11) of the Bankruptcy Code permits a chapter 11 plan to be confirmed if it is feasible, *i.e.*, it is not likely to be followed by liquidation or the need for further financial reorganization. I understand that, in the context of the Plan, feasibility is generally established by demonstrating the Debtors' ability to implement the provisions of the Plan with a reasonable assurance of success. I have been advised on the various factors courts have considered when assessing the feasibility of a Plan.

58.     Based upon my understanding of the Plan, the advice of the Debtors' other advisors and counsel and my experience with the day-to-day operations of the Debtors, I believe

that the Plan is feasible.  The Plan does not depend on the future earnings or operations of the Debtors, but only on the orderly wind down of the Debtors and the distribution of the Debtors' remaining assets.  The Debtors, together with their advisors, have thoroughly analyzed the Debtors' ability to make distributions and meet their obligations under the Plan and have prepared projections for the Consolidated Wind Down Entities based on a number of assumptions detailed in Appendix C to the Disclosure Statement (the "Financial Projections").  As set forth in the Financial Projections, an analysis of these factors in the context of these Chapter 11 Cases demonstrates that the Plan is feasible.  For these reasons, I believe that the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

   L. <u>The Plan Complies with Bankruptcy Code Section 1129(a)(12)</u>.

   59. I have been advised that Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  I am advised that the Plan satisfies the requirements of section 1129(a)(12) because Section 3.5 of Plan provides that the Debtors will pay all such fees and interest due and owing prior to the Effective Date on or before the Effective Date.  On and after the Effective Date, the Wind Down Entities shall pay these fees when due and owing and prepare and file all necessary quarterly reports and other reports required by the Court.

   M. <u>Bankruptcy Code Section 1129(a)(13) Is Not Applicable</u>.

   60. I am advised that section 1129(a)(13) of the Bankruptcy Code is inapplicable because the Debtors do not owe any "retiree benefits" (as defined in section 1114 of the Bankruptcy Code).

N.    The Plan Satisfies "Cram Down" Requirements Under Bankruptcy Code
Section 1129(b) for Non-Accepting Classes.

61.    As previously discussed, Holders of Claims or Interests in Class 9, Class 11,

Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 are deemed to reject the Plan.  It is

my understanding that, pursuant to section 1129(b) of the Bankruptcy Code, a plan of

reorganization may be confirmed notwithstanding the rejection or deemed rejection by a class of

claims or interests (*i.e.*, "crammed down") so long as the plan does not "discriminate unfairly" and

is "fair and equitable" with respect to each class of claims and interests that is impaired and has

not accepted the Plan.  For the reasons discussed below, I believe that the Plan may be confirmed

as to Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 pursuant to

the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

1.    *The Plan Does Not Discriminate Unfairly.*

62.    I have been advised that, under section 1129(b) of the Bankruptcy Code, a

plan unfairly discriminates where creditors and interest holders with similar legal rights receive

materially different treatment on account of a Claim under a proposed plan without a compelling

justification.  I do not believe that the Plan unfairly discriminates.  As described above, there are

no other Classes containing creditors or interest holders with Claims or Interests, as applicable,

similar to those in Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18,

respectively, and each Class contains Claims or Interests that are similarly situated.

2.    *The Plan Is Fair and Equitable.*

63.    I have been advised that sections 1129(b)(2)(B)(ii) and (b)(2)(C)(ii) of the

Bankruptcy Code provide that a chapter 11 plan is fair and equitable with respect to a class of

impaired unsecured claims or interests if under the plan no holder of any junior claim or interest

will receive or retain property under the plan on account of such junior claim or interest.  It is my

understanding that distributions under the Plan are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the rule of absolute priority. There is no Class junior to any of Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 or Class 18 that is receiving or retaining "any property" "on account" of such Claim or Interest under the Plan. Holders of Class 10B Claims will receive property on account of their claims, but such distributions are pursuant to voluntary subordination in accordance with settlements reached in these Chapter 11 Cases, including the IRS Settlement. For these reasons, I believe that the Plan is "fair and equitable" and, therefore, understand it is consistent with the requirements of section 1129(b) of the Bankruptcy Code.

O.     The Principal Purpose of the Plan Is Not Avoidance of Taxes.

64.     I believe that the purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Accordingly, I believe that section 1129(d) of the Bankruptcy Code is satisfied.

## IV.     Conclusion

65.     In light of the foregoing, I believe that: (a) the Plan has been structured to accomplish the Debtors' goal of maximizing returns to stakeholders and efficiently winding down the Debtors; (b) the Plan has been proposed by the Debtors in good faith; and (c) confirmation of the Plan is in the best interests of the Debtors, their creditors and interest holders and other parties-in-interest in these Chapter 11 Cases.

66.     Accordingly, I understand and believe that the Plan satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable non-bankruptcy laws as they have been explained to me, and should therefore be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:   September 30, 2024

/s/ Steven P. Coverick
Steven P. Coverick
Alvarez & Marsal North America, LLC
Managing Director