IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FTX TRADING LTD., et al.,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 26029, 26035 & 26039** |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
STATEMENT IN SUPPORT OF CONFIRMATION OF SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
FTX TRADING LTD. AND ITS DEBTOR AFFILIATES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this statement (the "Statement"), in support of confirmation of the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [Docket No. 26029] (the "Plan"),[2] and in response to certain objections to the Plan (the "Objections"), and respectfully states as follows:

1.　　The Committee respectfully supports and joins in the *Debtors' Memorandum of Law in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [Docket No. 26035] and the *Debtors' Omnibus Reply to Objections to Confirmation of the Second Amended Joint Plan of Reorganization of FTX Trading Ltd.*

---

[1]　The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

[2]　Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Plan.

*and Its Debtor Affiliates* [Docket No. 26039] (the "Debtors' Reply"), each of which is incorporated by reference as if fully set forth herein.

2.  As a result of the pre-petition fraud committed by Sam Bankman-Fried and others in the Debtors' previous management, the Debtors' customers and other creditors have been deprived of the value of their claims for nearly two years. Following confirmation of the Plan, the Debtors will be in a position to distribute the entire value of their Estate to creditors, providing meaningful, "par plus" recoveries. The Committee believes that the Plan provides the highest possible recovery for unsecured creditors in the circumstances of these cases, consistent with bankruptcy law, and that the prompt confirmation of the Plan is in the best interests of all unsecured creditors and other stakeholders. The Plan is supported by the votes of the overwhelming majority of creditors, and should be confirmed.

3.  The Plan is the product of significant efforts by the Debtors, with the support and hard work of the Committee, to identify, recover and maximize returns on assets so that the Debtors may return value criminally taken from their stakeholders. As a direct result of those efforts, the Plan now contemplates payment to creditors of all distributable value and more than 100% of their Allowed Claims, including interest accrued from the Petition Date through the applicable Distribution Date and additional value through the Supplemental Remission Fund – amounting in total to an additional 19% to 43% in recovery on account of their Allowed Claims. The Plan is also the outcome of a myriad of difficult negotiations between the Debtors and significant stakeholders, including the Committee. The Plan consensually resolves critical legal and factual issues that, if litigated to conclusion, would have delayed and diminished recoveries to creditors.

4.  FTX customers and lenders were lied to and misled by pre-petition management about the Debtors' finances and, even more significantly, how their deposits would be treated by the

Debtors. When the truth was uncovered about the Debtors' unauthorized use of FTX.com and FTX.US customer deposits to make real property purchases, political and charitable donations, and expensive, risky venture investments, the Debtors were left with no option but to file for bankruptcy. On the Petition Date, the Debtors' books and records were in complete disarray and lacked even the most basic protocols. Against that backdrop, during the more than 22 months since the Committee was appointed, the Committee has worked to process information, assist the Debtors with investigatory work streams, provide its view on strategic decisions, and contribute the cryptocurrency expertise of the Committee members regarding critical value-accretive token and coin sales. The Committee met with the Debtors on numerous occasions to negotiate the terms of a plan of reorganization to most fairly address the issues bearing upon unsecured creditors' recoveries and related concerns. The ultimate result is the Plan, which is now ripe for confirmation.

5.  A pivotal feature of the Plan is the voluntary subordination by the CFTC of its multi-billion Claim against the Debtors' Estates, and the establishment of the Supplement Remission Fund with proceeds that would otherwise satisfy the CFTC's Claims. The Supplement Remission Fund, which formed out of a concept that the Committee encouraged the Debtors to consider as a means to compensate customers of the Debtors' exchanges for the greatly increased values in Digital Assets since the Petition Date, is a key component of the Plan and the result of months-long negotiations between the Debtors and the CFTC.

6.  Many of the filed Objections to the Plan have now been resolved, and the remaining Objections should be overruled. Certain of the Objections claim that provisions in the Plan are improperly structured or otherwise impermissible. In particular, the *Objection of the United States Trustee to Confirmation of First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and its Debtor Affiliates* [Docket No. 23610] (the "UST Objection") argues, among other things,

that (i) the Plan imposes non-consensual third-party releases on various entities in contravention of applicable law, (ii) the Plan is impermissibly deemed to be a settlement under Bankruptcy Rule 9019, and (iii) the Debtors have not shown that reserving distributions from the Supplemental Remission Fund for the largest customers by number is fair to convenience class customers. *See* UST Objection at ¶ 1. As explained in greater detail below and in the Debtors' Reply, the UST Objection should be overruled.

7. *First*, as to the scope of releases provided under the Plan, and as the UST Objection correctly notes, the United States Bankruptcy Court for the District of Delaware has repeatedly held that creditors consent to third-party releases if they do not affirmatively "opt out" of plan releases when submitting their ballot. *See* UST Objection at ¶ 45. Where, as here,[3] creditors have received sufficiently detailed and easily understandable information explaining the Plan releases, and have been given the opportunity to opt out of those releases, the opt out mechanism is a valid means of obtaining consent under applicable contract law, consistent with the U.S. Supreme Court's recent ruling in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2088 (2024).

8. *Second*, the Plan is not itself a settlement or a means to achieve a settlement, but *incorporates* a number of negotiated settlements between, for example, the Debtors on behalf of the Estates, and the Committee on behalf of the Estates' creditors. The settlements of the customer property and customer preference issues, for instance, did not take place by virtue of "sending a plan to impaired creditors for a vote," UST Objection at ¶ 68, but instead took place over the course of many months through arms' length negotiations, prior to the Plan being solicited. The Committee, as

---

[3] The *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [Docket No. 19068] (the "<u>Disclosure Statement Approval Order</u>") entered by this Court on June 26, 2024, states that the Disclosure Statement provides Holders of Claims and Interests sufficient notice of, and describes, in specific and conspicuous language, the injunction, exculpation and release provisions contained in the Plan. Disclosure Statement Approval Order at ¶ 1.

the fiduciary for all unsecured creditors, resolved and settled significant Plan issues with the Debtors on behalf of the creditor body, which were incorporated in the Plan and subject to vote by creditors and stakeholders. Therefore, the settlements described in section 5.2 of the Plan were not "unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to 'settle' their claims." UST Objection at ¶ 69. In short, the Plan does not itself operate as a settlement of the issues, but is a direct *result* of the settlements reached. Although the UST Objection does not challenge the settlements themselves, the settlements embodied in the Plan comply with Bankruptcy Rule 9019 and applicable case law because the settlements are fair and equitable and in the best interests of the estate, and satisfy the "lowest level of reasonableness." *See In re Managed Storage Int'l, Inc.*, 601 B.R. 261, 265 (Bankr. D. Del. 2019), *aff'd*, No. 09-10368 (MWF), 2020 WL 1532390 (D. Del. Mar. 31, 2020) (finding that, in deciding whether to approve proposed settlement under Bankruptcy Rule 9019, courts must "canvass the issues to see whether the settlement" could meet "lowest point of reasonableness"); *Hammersley v. Prospector Offshore Drilling S.á r.l. (In re Prospector Offshore Drilling S.á r.l.)*, No. 17-11572 (CSS), 2018 WL 1419086, at *3 (D. Del. Mar. 22, 2018) ("A settlement under Bankruptcy Rule 9019 may be approved so long as the settlement is above the lowest point in the range of reasonableness.") (citation omitted); *In re Wash. Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) (finding settlement to be approved under Bankruptcy Rule 9019 need only be above "the lowest point in the range of reasonableness") (citation omitted). Creditors received adequate notice of the settlements in the Plan and had the opportunity to object. Indeed, as described in the Debtors' Reply, the Plan also satisfies the requirements of Bankruptcy Code sections 1123 and 1129, a higher threshold than Bankruptcy Rule 9019.

9. *Third*, the Plan treats creditors fairly notwithstanding that the Holders of Claims in Classes 7A - Dotcom Convenience Claims, 7B - U.S. Convenience Claims, and 7C - General

Convenience Claims (collectively, the "Convenience Classes") are expected to receive 119% of their Claims, while Holders of Claims in Classes 5A - Dotcom Customer Entitlement Claims and 5B - U.S. Customer Entitlement Claims (collectively, the "Customer Entitlement Classes") are expected to recover up to 143% of their Claims.  The claimants in the Convenience Classes will be paid before any other classes of creditors, and will be paid the full amount of their recovery on the Initial Distribution Date.  Thus, claimants in the Convenience Classes benefit from the time value of money, by receiving their funds sooner than the claimants in the Customer Entitlement Classes, and their treatment with respect to Distributions is fair and equitable.  As noted in the Debtors' Reply, none of the Holders of Claims in the Convenience Classes objected to the Plan based on the Plan's treatment of their Claim, and the Holders of Claims in the Convenience Classes voted overwhelmingly in support of the Plan.  *See* Debtors' Reply at ¶ 83.

10. Despite the exceedingly complex issues presented by the Chapter 11 Cases, and the scale of the liabilities owed to creditors of the Debtors' estates, the Plan presents a relatively straightforward mechanism for returning a tremendous amount of value to a massive number of creditors.  The Plan (i) distributes as much value from the Debtors' assets to creditors as is reasonably possible, (ii) provides exchange customers with claims that have an equitable priority to certain property for distribution and entitlement to postpetition interest, and (iii) will provide recoveries to creditors far faster than any other alternative.  The Plan should be confirmed.

11. Nothing contained herein shall constitute a waiver of any rights or remedies of the Committee, including, without limitation, the right to (i) amend, modify, or supplement this Statement, or (ii) raise any other additional arguments at a later date.

## CONCLUSION

**WHEREFORE** the Committee respectfully requests that the Court overrule the Objections, confirm the Plan, and grant such other and further relief as the Court finds just and appropriate.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Dated: September 30, 2024<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br>*/s/ Robert F. Poppiti, Jr.*<br>Matthew B. Lunn (No. 4119)<br>Robert F. Poppiti, Jr. (No. 5052)<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mlunn@ycst.com<br>         rpoppiti@ycst.com<br><br>-and-<br><br>PAUL HASTINGS LLP<br>Kristopher M. Hansen*<br>Kenneth Pasquale*<br>Gabriel E. Sasson*<br>Isaac S. Sasson*<br>Leonie C. Koch*<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 318-6000<br>Facsimile: (212) 319-4090<br>Email: krishansen@paulhastings.com<br>         kenpasquale@paulhastings.com<br>         gabesasson@paulhastings.com<br>         isaacsasson@paulhastings.com<br>         leoniekoch@paulhastings.com<br><br>**Admitted pro hac vice*<br><br>*Counsel to the Official Committee of Unsecured Creditors* |