# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date: October 1, 2024 at 2:00 p.m. (ET)**<br><br>**Ref. Nos. 25637 & 25671** |

### DEBTORS' REPLY IN SUPPORT OF THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER QUASHING THE LAYERZERO PARTIES' NOTICE OF DEPOSITION OF JOHN J. RAY III

        FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this reply (this "Reply"), in support of the *Motion of Debtors for Entry of an Order Quashing the LayerZero Parties' Notice of Deposition of John J. Ray III* [D.I. 25637] (the "Motion")[2] and in response to the objection by LayerZero Labs Ltd., Ari Litan, and Skip & Goose LLC (collectively, "LayerZero") filed on September 25, 2024 [D.I. 25671] (the "Objection"). The Debtors respectfully request that the Objection be overruled and the Motion granted.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion, and the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtors Affiliates* [D.I. 26029] (the "Plan"), as applicable.

**Reply**

1.  LayerZero strains to find ways to argue that it needs to depose the Debtors' Chief Executive Officer immediately in connection with the Plan Confirmation Hearing because no one else can possibly explain the (allegedly) "as-of-yet unknown underlying basis for excluding each of the LayerZero Group's members from sharing in the fruits of the Customer Preference Settlement." (Obj. ¶ 2.)  But the basis for the Debtors declining to make an *offer of settlement*—something they are not obligated to do—is straightforward and set out in Section 5.5 of the Plan and Section 4.E.5 of the Disclosure Statement.  LayerZero's flawed Plan Objection arguing that the Debtors must have offered the Customer Preference Settlement to them is a legal argument that the Debtors addressed in their Confirmation Reply[1] and will address further at the Confirmation Hearing.

2.  From an evidentiary standpoint, the Customer Preference Settlement is addressed in the *Declaration of Steven P. Coverick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and its Affiliated Debtors*, filed on September 30, 2024.  In addition, the Debtors have agreed to provide a witness—who has been designated as Mr. Coverick—to answer questions within the scope of LayerZero's Plan Objection in response to the Notice of Rule 30(b)(6) Deposition directed to the Debtors that LayerZero served on the topic of the Customer Preference Settlement.  That deposition is proceeding on October 1, 2024.  The Debtors are not denying LayerZero discovery on the topic but rather maintain that a deposition of Mr. Ray neither necessary nor appropriate.

---

[1] *See Debtors' Omnibus Reply to Objections to Confirmation of the Second Amended Joint Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors* at pp. 6-13.

3. Furthermore, the context in which LayerZero's request to depose Mr. Ray arose is telling, and, as detailed in the Motion, reveals that LayerZero seeks nothing more than to harass Mr. Ray and burden the Debtors on the eve of the Confirmation Hearing after LayerZero's attempt to take an early deposition of Mr. Ray in the Avoidance Action fell flat.

4. Section 5.5 of the Plan specifies the criteria that the Debtors used to determine which Customer Preference Actions will be designated as Excluded Customer Preference Actions, and therefore excluded from the group of customers to whom the Customer Preference Settlement was offered. Why the actions against LayerZero Labs Ltd. ("Layer Zero Labs"), Ari Litan and Skip & Goose LLC ("Skip & Goose") appear as Excluded Preference Actions is clear from even a cursory review of the circumstances and the Avoidance Action allegations.

5. For example, the Debtors have asserted multiple Causes of Action against LayerZero Labs in the Avoidance Action "other than a claim arising under a Customer Preference Action." (Plan § 5.5; Mot. ¶¶ 11-13) Mr. Litan was LayerZero Labs's Chief Operating Officer and thus one of the Affiliates of an entity against which the Debtors have a requisite "Cause of Action." (Plan § 5.5.) Mr. Litan has a 100% interest in Skip & Goose and is its only member. [Adv. Pro. D.I. 1 ¶ 27.] Further, Mr. Litan represented, in creating an FTX US account for Skip & Goose, that he was its source of funds. [*Id*.] Thus, Mr. Litan's knowledge can be imputed to Skip & Goose and Skip & Goose is likely his alter ego.

6. These and many other allegations will be litigated in the Avoidance Action in due course. None need to be resolved or conclusively established now. But given that the Debtors have alleged these and other facts in litigation plainly demonstrates that LayerZero is

differently situated than other customer preference defendants, and the Debtors' declination to make the Customer Preference Settlement offer to LayerZero at this time was reasonable.

7. LayerZero turns well-established law regarding the apex doctrine on its head by arguing that the Debtors have the burden to prove both that Mr. Ray does not have superior, unique knowledge of the information sought by LayerZero and that there are other, less burdensome sources for discovery. (Obj. ¶¶ 17, 20-23.) This is wrong. Although the Debtors must show undue burden sufficient to justify a protective order under Federal Rule 26(c), the apex doctrine eases this burden by establishing "a *rebuttable presumption* that a high-level official's deposition represents a significant burden upon the deponent and that this *burden is undue* absent the two factors set forth in the apex doctrine, which go to the lack of a more convenient, less burdensome, and less expensive alternative." *United States ex rel. Galmines* v. *Novartis Pharms. Corp.*, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015) (emphasis added).

8. Thus, LayerZero has the burden to establish that its noticing of Mr. Ray's deposition was proper by showing (i) that Mr. Ray "has personal or superior unique knowledge of the facts alleged" and (ii) "why the information sought (whatever, specifically, it may be) could not be obtained from lower level employees or through less burdensome means." *Id*. LayerZero has failed to carry its burden in three ways.

9. *First*, LayerZero failed to provide any evidence that Mr. Ray has superior, unique knowledge of the issues raised in the Plan Objection, which is, at bottom, a legal argument. This failure is dispositive and shows that the deposition notice should be quashed. *See Amaya* v. *Ballyshear LLC*, 2021 WL 12101052, at *2 (E.D.N.Y. Sept. 30, 2021) (granting a protective order because the record was "devoid of information to demonstrate that [the senior executive] possesses any unique knowledge to overcome the apex doctrine").

10. Lacking the necessary evidence to carry its burden, LayerZero resorts to simply insisting that Mr. Ray *must* have "personal, unique, and superior knowledge that compels him to appear for a deposition" because "[t]here is no other principal, officer, or employee of the Debtors . . . who can provide percipient testimony on these issues." (Obj. ¶ 19.) Not so. Nowhere does the apex doctrine require that Mr. Ray have superior, unique knowledge compared to other *employees* only, and LayerZero cites no authority to support this artificial boundary. Indeed, such a boundary would ignore reality. The Debtors are in the process of liquidating following the well documented fraud committed by Mr. Bankman-Fried and others prepetition. As a result, the Debtors do not have a cadre of lower-level executives or employees who serve under Mr. Ray. Instead, many of those roles are (rightfully) filled by the Debtors' retained professionals, including the Debtors' financial advisors at Alvarez & Marsal North America, LLC. Thus, Mr. Ray is not alone "on a flat plain," and LayerZero's attempt to place him there cannot change the fact that LayerZero failed to demonstrate that Mr. Ray has any superior, unique knowledge of the issues raised in the Plan Objection.[2]

11. LayerZero cannot avoid this conclusion by asserting that Mr. Ray signed the Plan and was "closely involved" with portions of the Plan. (Obj. ¶ 19.) Merely signing a document or approving a course of action does not automatically provide an executive with superior, unique knowledge. *Ford Motor Co.*, 2011 WL 677331, at *4 (requirement that executive

---

[2] LayerZero similarly attacks the authority cited in the Motion, arguing that the Debtors' cases are distinguishable because "there were available lower-level executives or employees who were equally involved in the relevant issues." (Obj. ¶ 18 (citing *Ford Motor Co.* v. *Edgewood Properties, Inc.*, 2011 WL 677331, at *4 (D.N.J. Feb. 15, 2011); *Younges* v. *7-Eleven, Inc.*, 2015 WL 12844446, at *2 (D.N.J. Aug. 19, 2015).) This is incorrect. As already explained, here there are other individuals with relevant knowledge and the Debtors are relying on one—Mr. Coverick—as a witness at the Confirmation Hearing. Moreover, the only reason the *Ford* court denied a motion to quash an apex deposition was because it specifically found, based on submitted evidence, that the executive had "superior and unique knowledge." *Ford Motor Co.*, 2011 WL 677331, at *3. LayerZero has provided no such evidence here.

sign and approve any sale did "not rise to the level of superior knowledge."); *see also Amaya*, 2021 WL 12101052, at *2 ("an executive's status as a 'direct supervisor' does not immediately confer the requisite 'unique knowledge' required to defeat the apex doctrine"). Here, LayerZero has failed to come forward with the kind of evidence that the very authorities it cites turned on. *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2014 WL 3035791, at *3 (E.D. Pa. July 1, 2014) (discussing "documents, which . . . show very clearly that [the high-ranking executive] was actively involved in [the relevant] decision making" and that knowledge was "unique to him").

12.     *Second*, LayerZero wrongly attempts to place the burden on the Debtors to show that there are "other, less burdensome" sources for the discovery that LayerZero seeks. (Obj. ¶ 20.) But this is LayerZero's burden. *Novartis Pharms. Corp.*, 2015 WL 4973626, at *2. To carry it, LayerZero must demonstrate that "the information [it] want[s] cannot be obtained from other witnesses." *Younges*, 2015 WL 12844446, at *2. LayerZero has, however, failed to explain why any relevant information it is seeking cannot be obtained through its upcoming Rule 30(b)(6) deposition of the Debtors. Moreover, the Debtors' designated witness, Mr. Coverick, is the same individual who the Debtors are relying on at the Confirmation Hearing with respect to the Customer Preference Settlement.

13.     Yet LayerZero argues that Rule 30(b)(6) testimony is "not a substitute for Mr. Ray's testimony" because individual depositions are based on "personal knowledge, whereas Rule 30(b)(6) seeks testimony from prepared witnesses that will bind an organization regardless of their personal knowledge." (Obj. ¶ 22.) But this distinction is irrelevant. Courts have repeatedly applied the apex doctrine to bar depositions where relevant information could be obtained through less burdensome means such as "interrogatory requests to deponents or a 30(b)(6)

deposition." *Reif* v. *CNA*, 248 F.R.D. 448, 454 (E.D. Pa. 2008); *see also Ford Motor Co.*, 2011 WL 677331, at *4 (despite CEO approving sale, "the facts surrounding the sale . . . are more appropriately gleaned from other lower-level executives, or through answers to interrogatories"). LayerZero's attempts to distinguish such cases by claiming that those courts relied on the existence of "lower level employees" are unavailing. (Obj. ¶ 21.). The apex doctrine applies where "information [cannot] be obtained from lower level employees *or* through less burdensome means." *Novartis Pharms. Corp.*, 2015 WL 4973626, at *2 (emphasis added). The fact that lower level employees may be a less burdensome source of information does not mean that they are the only potentially less burdensome source. *See Reif*, 248 F.R.D. at 454; *Roman* v. *Cumberland Ins. Grp.*, 2007 WL 4893479, at *1 n.1 (E.D. Pa. Oct. 26, 2007) (explaining that a Rule 30(b)(6) deposition is a valid alternative to an apex deposition).

        14.     As to the burden associated with deposing Mr. Ray, LayerZero again resorts to turning black letter law on its head by arguing that "[t]he Debtors do nothing to establish that Mr. Ray would endure any improper burden" by being deposed. (Obj. ¶ 23.) But it is LayerZero's burden to overcome the *presumption* that the deposition is an undue burden. (*See* ¶ 7, *supra*.) And LayerZero cannot meet this burden by facetiously asserting that "Mr. Ray is not preparing for the confirmation hearing" and "is not in the throes of running an operational company." (Obj. ¶ 23.) As LayerZero admits, Mr. Ray has to "navigate the Debtors through bankruptcy" (*id*.), and it cannot be denied that these bankruptcy proceedings are at a critical juncture. The Debtors have been actively working to resolve outstanding disputes and build consensus around their Plan, and Mr. Ray necessarily must be involved in those and many other activities day-to-day.

        15.     *Finally*, LayerZero claims that its repeated attempts to depose Mr. Ray are not harassment because LayerZero is just attempting to understand why Mr. Litan and Skip &

Goose have been excluded from the Customer Preference Settlement and "the facts and factors that went into the decision to exclude them." (Obj. ¶ 24.)  This is nonsense.  As noted above, the answers to LayerZero's questions are perfectly clear from the public record and Mr. Coverick's testimony.  LayerZero sought Mr. Ray's early deposition in the Avoidance Action prior to the Confirmation Hearing despite knowing that he could not possibly have relevant knowledge of the transactions at issue in that proceeding.  After that failed, LayerZero simply pivoted to this purported Plan Objection deposition (*see* Mot. ¶¶ 17-24), but their objective to harass and "severe[ly] burden" the Debtors is the same.  *Novartis Pharms. Corp.*, 2015 WL 4973626, at *1.  Accordingly, the Court should not countenance these tactics and instead overrule the Objection, grant the Motion, and enter the Proposed Order.

| | |
|---|---|
| Dated: September 30, 2024<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew R. Pierce*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail:  landis@lrclaw.com<br>            brown@lrclaw.com<br>            pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Andrew G. Dietderich (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Alexa J. Kranzley (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail:  dietdericha@sullcrom.com<br>            bromleyj@sullcrom.com<br>            gluecksteinb@sullcrom.com<br>            kranzleya@sullcrom.com<br><br>*Counsel for the Debtors and Debtors-in-Possession* |