**<u>Exhibit 4</u>**

**Blackline of the Revised Draft Liquidating Trust Agreement as compared against the version filed with the Plan Supplement**

**FTX RECOVERY TRUST**

**LIQUIDATING TRUST AGREEMENT**

**by and among**

**THE FTX RECOVERY TRUSTEES,**

[•]**WILMINGTON TRUST, NATIONAL ASSOCIATION, as Delaware Trustee,**

**FTX TRADING LTD.**

**and**

**THE CONSOLIDATED DEBTORS LISTED ON SCHEDULE 1 HERETO**

[•], 2024

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE I DEFINITIONS | | ~~1~~2 |
| 1.1 | Definitions Incorporated from the Plan | ~~1~~2 |
| 1.2 | Other Definitions | ~~2~~4 |
| 1.3 | Meanings of Other Terms | ~~5~~7 |
| | | |
| ARTICLE II CREATION OF CONSOLIDATED WIND DOWN TRUST | | ~~5~~7 |
| 2.1 | Creation of Trust~~; Conversion~~ | ~~5~~7 |
| 2.2 | Purpose of the FTX Recovery Trust | ~~5~~8 |
| 2.3 | Status of FTX Recovery Trust and the Board | ~~6~~8 |
| 2.4 | Retention of FTX Recovery Trust Agents | ~~6~~9 |
| 2.5 | Transfer of Available Assets | ~~6~~9 |
| 2.6 | Title to FTX Recovery Trust Assets | ~~7~~10 |
| 2.7 | Valuation | ~~7~~10 |
| 2.8 | No Reversion to Consolidated Debtors; Distribution of Remaining Assets | ~~7~~10 |
| 2.9 | Fiscal Year | ~~8~~11 |
| 2.10 | Insurance | ~~8~~11 |
| 2.11 | Books and Records | ~~8~~11 |
| 2.12 | Right to Conduct Investigations | ~~8~~11 |
| 2.13 | Privileges | ~~8~~11 |
| | | |
| ARTICLE III DISTRIBUTIONS | | ~~9~~12 |
| 3.1 | Distributions | ~~9~~12 |
| 3.2 | Provisions Governing Distributions | ~~10~~12 |
| 3.3 | Retention of Certain Amounts | ~~10~~12 |
| 3.4 | Setoff Rights | ~~10~~13 |
| 3.5 | Right to Object to Claims | ~~10~~13 |
| 3.6 | No Distributions Pending Allowance | ~~10~~13 |
| 3.7 | No Distributions Pending Tax Compliance | 13 |
| ~~3.7~~3.8 | Time Bar to Cash Payments | ~~10~~13 |
| ~~3.8~~3.9 | No Interest or Accruals | ~~11~~13 |
| | | |
| ARTICLE IV WIND DOWN TRUST BENEFICIARIES | | ~~11~~14 |
| 4.1 | Ownership of Beneficial Interests Hereunder | ~~11~~14 |
| 4.2 | Identification of FTX Recovery Trust Beneficiaries | ~~11~~14 |
| 4.3 | Evidence of Beneficial Interest | ~~11~~14 |
| 4.4 | Beneficial Interest Only | ~~11~~14 |
| 4.5 | Transfer of FTX Recovery Trust Interests | ~~11~~14 |
| 4.6 | Conflicting Claims | ~~12~~15 |
| 4.7 | FTX Recovery Trust Beneficiary Liability to Third Persons | ~~12~~15 |
| | | |
| ARTICLE V BOARD | | ~~12~~15 |
| 5.1 | General | ~~12~~15 |
| 5.2 | Membership | ~~12~~16 |
| 5.3 | Compensation | ~~14~~17 |
| 5.4 | Authority | ~~14~~17 |
| 5.5 | Action of the Board | ~~14~~17 |
| 5.6 | Chairman of the Board | ~~15~~18 |
| 5.7 | Meetings | ~~15~~18 |
| 5.8 | Committees | ~~16~~19 |
| 5.9 | ~~Fiduciary~~Duties and Capacity | ~~16~~19 |
| 5.10 | Conflicts of Interest | ~~16~~19 |

ARTICLE VI ADVISORY COMMITTEE ........................................................... ~~16~~19
    6.1     Membership ............................................................................................. ~~16~~19
    6.2     Role of the Advisory Committee ............................................................. ~~16~~20
    6.3     Compensation .......................................................................................... ~~17~~21
    6.4     ~~Fiduciary~~ Capacity ................................................................................... ~~17~~21
    6.5     Conflicts of Interest ................................................................................ ~~17~~21
    6.6     No Authority ............................................................................................ ~~17~~21
    6.7     Other Obligations .................................................................................... ~~17~~21

ARTICLE VII MANAGEMENT AND EMPLOYEES ....................................... ~~18~~22
    7.1     FTX Recovery Trust Management ........................................................... ~~18~~22
    7.2     FTX Recovery Trust Employees .............................................................. ~~18~~22

ARTICLE ~~VII~~VIII OPERATION OF THE FTX RECOVERY TRUST ............... ~~18~~22
    ~~7.1~~8.1   Prohibited Activities ............................................................................... ~~18~~22
    ~~7.2~~8.2   Resolution of Disputed Claims ............................................................... ~~19~~23
    ~~7.3~~8.3   Disputed Claims Reserve ........................................................................ ~~19~~23
    ~~7.4~~8.4   Administrative Expenses Set Aside ......................................................... ~~19~~23
    ~~7.5~~8.5   Periodic Reporting .................................................................................. ~~20~~24

ARTICLE ~~VIII~~IX DELAWARE TRUSTEE ....................................................... ~~20~~24
    ~~8.1~~9.1   Appointment ............................................................................................ ~~20~~24
    ~~8.2~~9.2   Powers ~~.............................................................................20~~; Duties and Limited Liability of the Delaware Trustee ..... 25
    ~~8.3~~9.3   Compensation .......................................................................................... ~~22~~27
    ~~8.4~~9.4   Duration and Replacement ...................................................................... ~~22~~27

ARTICLE ~~IX~~X TAX MATTERS ....................................................................... ~~22~~28
    ~~9.1~~10.1 Tax Treatment ......................................................................................... ~~22~~28
    ~~9.2~~10.2 Tax Reporting .......................................................................................... ~~23~~28
    ~~9.3~~10.3 Tax Payment ............................................................................................ ~~24~~29
    ~~9.4~~10.4 FTX Recovery Trust's Tax Powers ......................................................... ~~24~~29
    ~~9.5~~10.5 Withholding and Reporting Requirements ............................................... ~~25~~30

ARTICLE ~~X~~XI LIMITATION OF LIABILITY AND INDEMNIFICATION ...... ~~25~~30
    ~~10.1~~11.1  Limitation of Liability ............................................................................ ~~25~~30
    ~~10.2~~11.2  Indemnification ....................................................................................... ~~26~~31
    11.3    No Fiduciary or Other Duties ................................................................. 32

ARTICLE ~~XI~~XII DURATION OF FTX RECOVERY TRUST ......................... ~~27~~33
    ~~11.1~~12.1  Duration .................................................................................................. ~~27~~33
    ~~11.2~~12.2  Post-Termination ..................................................................................... ~~27~~33
    ~~11.3~~12.3  Destruction of Books and Records .......................................................... ~~27~~33
    ~~11.4~~12.4  Discharge ................................................................................................ ~~27~~33

ARTICLE ~~XII~~XIII MISCELLANEOUS PROVISIONS ................................... ~~28~~34
    ~~12.1~~13.1  Governing Law ........................................................................................ ~~28~~34
    ~~12.2~~13.2  Jurisdiction ............................................................................................. ~~28~~34
    13.3    Waiver of Jury Trial ............................................................................... 34
    ~~12.3~~13.4  Severability ............................................................................................. ~~28~~34
    ~~12.4~~13.5  Notices .................................................................................................... ~~28~~34
    ~~12.5~~13.6  Headings ................................................................................................. ~~29~~35
    ~~12.6~~13.7  Plan Documents ...................................................................................... ~~29~~35
    ~~12.7~~13.8  Control Over Debtors .............................................................................. ~~29~~35
    ~~12.8~~13.9  Confidentiality ........................................................................................ ~~29~~35

12.913.10  Entire Agreement ........................................................ 2935
12.1013.11  Named Party ............................................................ 2936
12.1113.12  Amendment ............................................................. 2936
12.1213.13  Counterparts ........................................................... 3036

SCHEDULE 1  LIST OF CONSOLIDATED DEBTORS ................................ 3238

SCHEDULE 2  EXPRESS POWERS OF THE BOARD ................................ 3440

SCHEDULE 3  FORM OF CERTIFICATE OF TRUST OF FTX RECOVERY TRUST ........ 44

EXHIBIT A  DELAWARE TRUSTEE FEE AGREEMENT ........................... 46

## FTX RECOVERY TRUST
## LIQUIDATING TRUST AGREEMENT

This LIQUIDATING TRUST AGREEMENT, dated as of [•], 2024 (this "**Agreement**"), is entered into by and among the individuals whose names appear under the heading "FTX Recovery Trustee" on the signature page to this Agreement (each, a "**FTX Recovery Trustee**", and collectively, the "**FTX Recovery Trustees**"), [•]Wilmington Trust, National Association, or its successor, not in its individual capacity, but solely as the Delaware resident trustee (together with any successor Delaware resident trustee appointed under the terms of this Agreement, the "**Delaware Trustee**"), and FTX Trading Ltd. ("**FTX Trading**") and each of the other Consolidated Debtors, listed on Schedule 1 hereto (each, a "**Consolidated Debtor**", and collectively, the "**Consolidated Debtors**") (each a "**Party**", and collectively, the "**Parties**") for the purpose of forming a statutory trust under and pursuant to the provisions of the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, *et seq*.

## RECITALS

**WHEREAS**, on November 11 and November 14, 2022, FTX Trading Ltd. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "**Chapter 11 Cases**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**");

**WHEREAS**, pursuant to the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068], dated June 26, 2024, the Bankruptcy Court approved, among other things, the adequacy of the *Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] (the "**Disclosure Statement**");

**WHEREAS**, pursuant to the [*Confirmation Order*] [D.I. [•]], dated [•], 2024 (the "**Confirmation Order**"), the Bankruptcy Court confirmed the *Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. [•]], dated as of [•] (as amended, modified, or supplemented from time to time, the "**Plan**");

**WHEREAS**, the Plan provides for, among other things, the creation of a liquidating trust, referred to therein as the Consolidated Wind Down Trust and referred to herein atas the FTX Recovery Trust, on the Effective Date for the purposes of effectuating and implementing the Plan for so long as may be necessary to monetize the assets of such liquidating trust and pay distributions to the beneficiaries of such liquidating trust;

**WHEREAS**, the Parties desire to establish the FTX Recovery Trust as the liquidating trust contemplated by the Plan;

**WHEREAS**, the Plan provides for a Plan Administration Agreement to govern the Plan Administrator's rights and obligations in connection with the Plan and Wind Down Entities, and the FTX Recovery Trust and the Debtors desire to enter into a Plan Administration Agreement as of the Effective Date to appoint a Plan Administrator to serve as such under and as defined in the Plan; and

**WHEREAS**, the FTX Recovery Trust (other than as relating to the FTX Recovery Trust Assets allocable to Distributions as described in Article IIIthat are allocated and transferred to any Disputed Claims Reserves) is intended to qualify as "liquidating trust" for United States federal income tax purposes and to qualify as "grantor trust" under Revenue Procedure 94-45, 1994-2 C.B. 684 of the IRS, including for United States federal income tax purposes.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

**ARTICLE I**
**DEFINITIONS**

1.1    <u>Definitions Incorporated from the Plan</u>.  Other than the terms defined in <u>Section 1.2</u> or elsewhere in this Agreement, the following capitalized terms shall have the meaning assigned to them in the Plan.

(a)    "**Ad Hoc Committee**"

(b)    ~~(a)~~ "**Administrative Claims**"

(c)    ~~(b)~~ "**Affiliate**"

(d)    ~~(c)~~ "**Allowed**"

(e)    ~~(d)~~ "**Allowed General Unsecured Claims**"

(f)    ~~(e)~~ "**Allowed Professional Claims**"

(g)    ~~(f)~~ "**Appointed Director**"

(h)    ~~(g)~~ "**Available NFT**"

(i)    ~~(h)~~ "**Avoidance Actions**"

(j)    ~~(i)~~ "**Bahamas Opt-In Election**"

(k)    ~~(j)~~ "**Cash**"

(l)    ~~(k)~~ "**Cause of Action**"

~~(l) "Consensus Rate"~~

(m)    "~~Contingent Claim~~**Claims**" (only where so specified in this Agreement)

(n)    "**Claims Bar Date**"

(o)    "**Claims Objection Deadline**"

(p)    "**Claims Register**"

(q)    "**Class**"

(r)    "**Consensus Rate**"

(s)    ~~(n)~~ "~~**Claims**~~**Contingent Claim**" (only where so specified in this Agreement)

~~(o) "Claims Bar Date"~~

~~(p) "Claims Objection Deadline"~~

~~(q) "Claims Register"~~

2

(r) "~~Class~~"

(t)    ~~(s)~~ "**Disputed Claims**" (only where so specified in this Agreement)

(u)    ~~(t)~~ "**Disputed Claims Reserve**"

(v)    "**Distribution**"

(w)    ~~(u)~~ "**Distribution Record Date**"

(x)    ~~(v)~~ "**Effective Date**"

(y)    ~~(w)~~ "**Eligible DM Customer Entitlement Claims**"

(z)    ~~(x)~~ "**Entities**"

(aa)    ~~(y)~~ "**Estates**"

(bb)    ~~(z)~~ "**Excluded Entities**"

(cc)    "**Exculpated Parties**"

(dd)    ~~(aa)~~ "**Final Order**"

(ee)    ~~(bb)~~ "**FTX DM**"

(ff)    ~~(cc)~~ "**FTX DM Global Settlement Agreement**"

(gg)    ~~(dd)~~ "**Global Settlement**"

(hh)    ~~(ee)~~ "**Governmental Unit**"

(ii)    ~~(ff)~~ "**Holder**"

(jj)    ~~(gg)~~ "**Initial Distribution Date**"

(kk)    ~~(hh)~~ "**Intercompany Claims**"

(ll)    ~~(ii)~~ "**Interest**"

(mm)    ~~(jj)~~ "**IRS Settlement**"

(nn)    ~~(kk)~~ "**NFT Customer Entitlement Claims**"

(oo)    "**Official Committee**"

(pp)    ~~(ll)~~ "**Person**"

(qq)    ~~(mm)~~ "**Plan Administrator**"

(rr)    ~~(nn)~~ "**Plan Administration Agreement**"

(ss)    ~~(oo)~~ "**Plan Assets**"

(tt)    ~~(pp)~~ "**Plan Supplement**"

(uu)    ~~(qq)~~ "**Pre-Distribution Requirements**"

(vv)    ~~(rr)~~ "**Professional Fee Escrow Account**"

(ww)    "**Professional Fee Reserve Amount**"

(xx)    ~~(ss)~~ "**Proof of Claim**"

(yy)    ~~(tt)~~ "**Subsequent Distribution Date**"

(zz)    ~~(uu)~~ "**Supplemental Remission Fund**"

(aaa)    ~~(vv)~~ "**Unliquidated Claim**" (only where so specified in the body of this Agreement)

(bbb)    "**U.S. Trustee**"

(ccc)    ~~(ww)~~ "**Wind Down Cash Proceeds**"

(ddd)    ~~(xx)~~ "**Wind Down Entities**"

1.2    Other Definitions.

(a)    "**Administrative Expenses Set Aside**" means an amount of Cash or other assets set aside from time to time by or under the direction of the Board for paying costs, fees and expenses, and reserving for liabilities, of the FTX Recovery Trust, as provided in Section ~~7.4~~8.4, including costs, fees and expenses of the Estates of the Consolidated Debtors payable at any time after the Effective Date.

(b)    "**Advisory Committee**" has the meaning assigned in Section 6.1(a).

(c)    "**Agreement**" has the meaning assigned in the Preamble.

(d)    "**Allowed Claims**" means Claims against the Consolidated Debtors or against the Debtors, as the context may require, and their successors in interest which are Allowed under the Plan.

(e)    "**Available Assets**" means all Causes of Action and other property (including equity or other securities held in any non-Debtor Entities) of each Consolidated Debtor and any property retained by any Consolidated Debtor under the Plan.

(f)    "**Bankruptcy Court**" has the meaning assigned in the Recitals.

(g)    "**Board**" means the board consisting of the FTX Recovery Trustees appointed to administer and oversee the affairs of the FTX Recovery Trust, as provided in this Agreement.

(h)    "**Business Day**" means any day other than a Saturday, Sunday or legal holiday on which the banks or trust companies in the City of New York, Borough of Manhattan, or Wilmington, Delaware are authorized or obligated by law, regulation or executive order to remain closed.

(i)    "**Cause**" has the meaning assigned in Section 5.2(g).

4

(j)    "**Certificate of Trust**" means the certificate of trust of the FTX Recovery Trust as required by ~~sections~~section 3810 ~~and 3820~~ of the Trust Act filed in connection with the formation of the FTX Recovery Trust, substantially in the form attached hereto on Schedule 3.

(k)    "**Chapter 11 Cases**" has the meaning assigned in the Recitals.

(l)    "**Claims**" means Claims (as defined in the Plan) against the Consolidated Debtors and their successors in interest, it being understood that all joint obligations of two or more Consolidated Debtors and multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the FTX Recovery Trust.

(m)    "**Confidentiality Parties**" has the meaning assigned in Section 13.8.

(n)    "**Confirmation Order**" has the meaning assigned in the Recitals.

~~(o) "**Consensus Rate Beneficiaries**" has the meaning assigned in Section 10.1(c).~~

(o)    ~~(p)~~ "**Consolidated Debtors**" has the meaning assigned in the Preamble.

(p)    ~~(q)~~ "**Contingent Claims**" means Contingent Claims (as defined in the Plan) against the Consolidated Debtors and their successors in interest.

(q)    ~~(r)~~ "**Covered Parties**" has the meaning assigned in Section 11.2(a).

(r)    "**CTA**" has the meaning assigned in Section 9.2(xi).

(s)    "**Debtors**" has the meaning assigned in the Recitals.

(t)    "**Delaware Trustee**" means [•]Wilmington Trust, National Association, or its successor Delaware resident trustee, not in its individual capacity, but solely as Delaware Trustee, which is appointed in accordance with this Agreement to comply with the requirement of section 3807 of the Trust Act.

(u)    "**Delaware Trustee Fee Agreement**" has the meaning assigned in Section 9.3.

(v)    ~~(u)~~ "**Disclosure Statement**" has the meaning assigned in the Recitals.

(w)    ~~(v)~~ "**Disputed Claims**" means Disputed Claims (as defined in the Plan) against the Consolidated Debtors and their successors in interest.

(x)    ~~(w)~~ "**Distributable Cash**" means Cash of the FTX Recovery Trust available for ~~distribution~~Distribution to FTX Recovery Trust Beneficiaries (including the Disputed Claims Reserve), after payment or reserving for the payment of Allowed Claims and Allowed Professional Claims, and the funding of the Administrative Expenses Set Aside.

(y)    ~~(x)~~ "**Distribution Agent**" means the ~~Provider~~provider under a Distribution Services Agreement.

(z)    ~~(y)~~ "**Distribution Services Agreements**" means those certain distribution services agreements entered into by and between FTX Trading and the Providers (each Provider, as defined therein) [on [•], 2024][1].

---

[1] **Note to Draft**: To be revised as needed, if executed on different days.

(aa) "**FinCEN**" has the meaning assigned in Section 9.2(xi).

(bb) (z) "**Fiscal Year**" means any fiscal year of the FTX Recovery Trust, as provided in Section 2.9.

(aa) "**FTX Recovery Trustees**" has the meaning assigned in the Preamble.

(cc) (bb) "**FTX Recovery Trust Agents**" means the advisors, professionals and other agents, including any disbursement agent, of the FTX Recovery Trust appointed or engaged by the Board or by the FTX Recovery Trust Management in accordance with the provisions of this Agreement.

(dd) (cc) "**FTX Recovery Trust Assets**" means all property held from time to time by the FTX Recovery Trust, including the Available Assets transferred to the FTX Recovery Trust on or after the Effective Date, all Cash and non-Cash assets held in the Disputed Claims Reserve and the Administrative Expenses Set Aside and any beneficial or other interest of the FTX Recovery Trust in any Available Assets held by any Consolidated Debtors pursuant to Section 2.5(b).

(ee) (dd) "**FTX Recovery Trust Beneficiary**" means a Holder (as defined in the Plan) of one or more Allowed Claims, including a Holder of a Disputed Claim as of the Effective Date that has subsequently become an Allowed Claim after the Effective Date.

(ff) (ee) "**FTX Recovery Trust Cause of Action**" has the meaning assigned in Section 2.3(a).

(gg) (ff) "**FTX Recovery Trust Interest**" has the meaning assigned in Section 4.1.

(hh) (gg) "**FTX Recovery Trust Management**" has the meaning assigned in Section 7.1(a).

(ii) "**FTX Recovery Trust Residual Assets**" means any assets that will ultimately be distributed to FTX Recovery Trust Residual Claimants.

(jj) "**FTX Recovery Trust Residual Claimant**" means a governmental entity or other party that is entitled to receive Distributions from the FTX Recovery Trust (in the order of priority established by the Plan) after all Claims entitled to Consensus Rate Interest and other Claims that rank in equal priority or higher priority to such Claims that have been allowed by the Bankruptcy Court have been paid.

(kk) (hh) "**FTX Recovery Trust Website**" means an internet website maintained by the FTX Recovery Trust in accordance with this Agreement.

(ll) "**FTX Recovery Trustees**" has the meaning assigned in the Preamble.

(mm) (ii) "**FTX Trading**" has the meaning assigned in the Preamble.

(nn) (jj) "**Joint Board**" has the meaning assigned in the Disclosure Statement.

(oo) (kk) "**Liabilities**" has the meaning assigned in Section 11.2(a).

(pp) (ll) "**Majority Approval**" means the affirmative approval of a majority of the members constituting the whole Board, given at a meeting called for that purpose, or by a written consent in lieu of a meeting in accordance with this Agreement.

(qq)    ~~(mm)~~ "**Notice and Claims Agent**" has the meaning assigned in Schedule 2.

(rr)    ~~(nn)~~ "**Notice of Objection**" has the meaning assigned in Section 6.2(c).

(ss)    ~~(oo)~~ "**Party**" and "**Parties**" have the meaning assigned in the Preamble.

(tt)    ~~(pp)~~ "**Plan**" has the meaning assigned in the Recitals.

(uu)    ~~(qq)~~ "**Plan Documents**" means, collectively, the Plan, the Confirmation Order and this Agreement.

(vv)    ~~(rr)~~ "**Privileges**" has the meaning assigned in Section ~~2.14(a)~~2.13(a).

(ww)    "**Secretary of State**" has the meaning assigned in Section 2.1.

(xx)    ~~(ss)~~ "**Specified FTX Recovery Trustee**" has the meaning assigned in Section 5.2(g).

(yy)    ~~(tt)~~ "**Supermajority Approval**" means the affirmative approval of at least two-thirds (2/3) of the members constituting the whole Board, given at a meeting called for that purpose or by written consent in lieu of a meeting in accordance with this Agreement; provided that, for purposes of the removal of a member of the Board in accordance with Section 5.2 hereof, Supermajority Approval means the affirmative consent of all of the members of the Board not including the Specified FTX Recovery Trustee; provided, further that in the event the Board is at any time comprised of less than five members, any act otherwise requiring Supermajority Approval shall require only Majority Approval.

(zz)    ~~(uu)~~ "**Tax Authority**" means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court or other body (if any) charged with the administration of any law relating to Taxes.

(aaa)    ~~(vv)~~ "**Tax Code**" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

(bbb)    ~~(ww)~~ "**Tax Return**" means a return, declaration, form, election, letter, report, statement, estimate, information return, or other information filed or required to be filed with respect to any Taxes, including any schedule or attachment thereto or amendment thereof, including any claim for a Tax refund.

(ccc)    ~~(xx)~~ "**Taxes**" means all (a) federal, state, local, or foreign taxes, including, without limitation, all net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, estimated, property, transfer and sales or use taxes, and (b) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (a) hereof.

(ddd)    ~~(yy)~~ "**Transferred Privileged Information**" has the meaning assigned in Section ~~2.14(a)~~2.13(a).

(eee)    ~~(zz)~~ "**Trust Act**" means the Delaware Statutory Trust Act, 12 Del. C. § 3801 *et seq.*, as the same may from time to time be amended, or any successor statute.

(fff)    ~~(aaa)~~ "**Trustee**" means any of the FTX Recovery Trustees and the Delaware Trustee.

(ggg)   (bbb) "**Unliquidated Claims**" means Unliquidated Claims (as defined in the Plan) against the Consolidated Debtors and their successors in interest.

1.3     Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include firms, associations, corporations and other entities. All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code; the Bankruptcy Rules; or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the word "herein" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement. The term "including" shall mean "including, without limitation."

## ARTICLE II
## CREATION OF CONSOLIDATED WIND DOWN TRUST

2.1     Creation of Trust; Conversion. The Parties, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the FTX Recovery Trust. The FTX Recovery Trust shall bear the name "FTX Recovery Trust," and the Board may, in connection with the exercise of its powers and duties hereunder, either use this name or such variation thereof as the Board may from time to time approve. It is the intention of the Parties to that the FTX Recovery Trust created hereby constitutes a statutory trust under the Trust Act and that the Plan Documents constitute the governing instruments of the FTX Recovery Trust. Any reference to the FTX Recovery Trust shall be a reference to the statutory trust formed pursuant to the Certificate of Trust and this Agreement and not to the FTX Recovery Trustees or the Delaware Trustee or to the officers, agents or employees of the FTX Recovery Trustees or the Delaware Trustee. The Board hereby authorizes and directs the Trustees to execute and file the Certificate of Trust in the office of the Secretary of State of the State of Delaware (the "**Secretary of State**") and authorizes the FTX Recovery Trustees to execute and file in the office of the Secretary of State such certificates as may from time to time be required under the Trust Act or any other Delaware law.

2.2     Purpose of the FTX Recovery Trust.

(a)     The FTX Recovery Trust is established for the purpose of liquidating and distributing the FTX Recovery Trust Assets in accordance with the Plan on behalf, and for the benefit ofpurpose of making payments to the FTX Recovery Trust Beneficiaries and pursuant to Treasury Regulations Section 301.7701-4(d)on a consolidated basis, and for the residual purpose of distributing any remaining assets to the FTX Recovery Trust Residual Claimants, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose hereunder. The FTX Recovery Trust shall be structured to be generally in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code consistent with the terms of the Plan, with the FTX Recovery Trust BeneficiariesResidual Claimants treated as the grantors and owners of their respective share of the FTX Recovery Trust Residual Assets (other than such FTX Recovery Trust Assets as are allocable to any Disputed Claims Reserve). The FTX Recovery Trust shall not be deemed a successor in interest of the Consolidated Debtors for any purpose other than as specifically set forth in the Plan Documents or any other agreement entered into between the Debtors and the Trustees.

(b)     This Agreement is intended to create a trust and a trust relationship and to be governed and construed in all respects as a trust. The FTX Recovery Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall any of the Trustees or the FTX Recovery

Trust Beneficiaries, for any purpose be, or be deemed to be or be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the FTX Recovery Trust Beneficiaries to the Trustees shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

(c)    From and after the Effective Date, the FTX Recovery Trust, acting through the Board, the Plan Administrator, the FTX Recovery Trust Management and the FTX Recovery Trust Agents, shall wind down the affairs of, and dissolve the Consolidated Debtors and their subsidiaries, including the non-Consolidated Debtors' subsidiaries, under applicable laws, notwithstanding any applicable consent requirements or other restrictions contained in any financing agreements or other debt documents to which any Consolidated Debtor is or was a party; provided that any Consolidated Debtor required to hold Available Assets after the Effective Date pursuant to Section 2.5(b) shall not be dissolved at a time while it holds Available Assets and shall be authorized to take such actions at the direction of the FTX Recovery Trust as may be necessary or advisable to implement the purpose and provisions of the Plan with respect to such Available Assets. The FTX Recovery Trust shall pay all reasonable costs and expenses in connection with such dissolutions. The Board, the Plan Administrator, the FTX Recovery Trust Management and the FTX Recovery Trust Agents shall not have any liability on account of the Board's use of its discretion to dissolve or not dissolve any of the Consolidated Debtors or their subsidiaries; provided, however, this section shall not be interpreted to preclude the FTX Recovery Trust from asserting any malpractice, negligence or similar claims against the FTX Recovery Trust Agents for their actions or omissions with respect to corporate dissolutions.

(d)    To the extent the Professional Fee Reserve Amount is not sufficient to pay all Allowed Professional Claims in full, the remaining aggregate amount of the Allowed Professional Claims shall be paid by the FTX Recovery Trust.

2.3    Status of FTX Recovery Trust and the Board.

(a)    Subject to the terms of the Confirmation Order, the FTX Recovery Trust shall be the successor-in-interest to the Consolidated Debtors with respect to any Cause of Action (but not, for the avoidance of doubt, including any Causes of Action released under the Plan) that was or could have been commenced by any of the Consolidated Debtors prior to the Effective Date (the "**FTX Recovery Trust Cause of Action**") and shall be deemed substituted for each such Consolidated Debtor as the party in any such litigation.

(b)    From and after the Effective Date, the FTX Recovery Trust, acting through the FTX Recovery Trust Management under the supervision of the Board, will be the representative of the Estates of the Consolidated Debtors as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code and shall have the rights and powers provided in the Bankruptcy Code in addition to any rights and powers granted in the Plan Documents, including but not limited to the right to object to Claims.

(c)    All FTX Recovery Trust Causes of Action are preserved and retained and may be enforced by the FTX Recovery Trust pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.4    <u>Retention of FTX Recovery Trust Agents</u>. The FTX Recovery Trust shall have the right to employ and retain such FTX Recovery Trust Agents, including counsel, advisors, administrators and other professionals (which may be the same counsel, advisors, administrators and other professionals currently or formerly employed by the Debtors), as deemed reasonably necessary or desirable by the Board to carry out the intents and purposes, and to discharge the functions, of the FTX Recovery Trust, without any further notice to or action, order, or approval of the Bankruptcy Court. The FTX Recovery Trust Agents shall be appointed, and their appointment may be terminated, by the Board. The FTX Recovery Trust Agents shall be compensated on such basis as approved by the Board and shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court. The fees and expenses of the FTX Recovery Trust Agents shall be satisfied out of the Administrative Expenses Set Aside, and shall constitute general obligations of the FTX Recovery Trust, but in the first instance to the extent of available funds.

2.5    <u>Transfer of Available Assets</u>.

(a)    On the Effective Date, the Consolidated Debtors shall transfer all of their Available Assets, in the form existing on such date, to the FTX Recovery Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other persons and entities to the maximum extent contemplated by and permissible under section 1141 of the Bankruptcy Code. The FTX Recovery Trust shall have such incidents of ownership in the Available Assets as are necessary to undertake the actions and transactions authorized in the Plan Documents. The transfer of the Available Assets shall be exempt from any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax pursuant to section 1146 of the Bankruptcy Code. Upon the transfer of Available Assets to the FTX Recovery Trust, such assets shall vest in the FTX Recovery Trust and shall become FTX Recovery Trust Assets.

(b)    Notwithstanding the foregoing, if on the Effective Date, any of the Available Assets cannot be transferred to the FTX Recovery Trust, or it is deemed impractical or inadvisable to do so by the Board, for any reason, for example, because the FTX Recovery Trust has not yet established accounts for the purpose of holding Cash or because of a restriction on transferability under applicable non-bankruptcy law that is not superseded by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Consolidated Debtors shall continue to hold such FTX Recovery Trust Assets, as bailee for the account of the FTX Recovery Trust, until such time as the FTX Recovery Trust informs the Consolidated Debtors that the FTX Recovery Trust may receive such Available Assets, whereupon such assets shall be promptly transferred to and vest in the FTX Recovery Trust and become FTX Recovery Trust Assets; <u>provided</u> that the proceeds of the sale or other disposition of any such assets retained by the Consolidated Debtors (or any successors thereto) shall nevertheless be deemed to constitute Available Assets, and to likewise be held by the Consolidated Debtors as bailee, and be turned over as soon as practicable to the FTX Recovery Trust pursuant to this Agreement as if such transfer had not been restricted under applicable non-bankruptcy law. The FTX Recovery Trust may commence an action in the Bankruptcy Court to resolve any dispute regarding the allocation of the proceeds of any Available Assets retained by the Consolidated Debtors (or any successors thereto) pursuant to the Plan Documents.

(c)    On or prior to the Effective Date, the Consolidated Debtors shall deliver or cause to be delivered to the FTX Recovery Trust any and all books and records that may be reasonably required in connection with the Available Assets, whether held by the Consolidated Debtors, their officers, directors, partners, managers, members, employees, agents, representatives, advisors, attorneys, accountants, independent contractors and any other professionals hired by the Consolidated Debtors and provide access to such officers, directors, partners, managers, members, employees, agents, advisors, attorneys, accountants, independent contractors or any other Consolidated Debtor professionals with knowledge of matters relevant to the Available Assets.

(d)    The FTX Recovery Trust, as successor in interest to the Estates of the Consolidated Debtors, may (i) execute and deliver any instruments, documents, books, and records

(including those maintained in electronic format and original documents as may be needed), and (ii) take, or cause to be taken, all such further action in order to evidence, vest, perfect or effectuate the transfer of all of the Available Assets to the FTX Recovery Trust and consummate transactions contemplated by and to otherwise carry out the intent of the Plan Documents. Any power of attorney or other grant or delegation of authority granted by any Consolidated Debtor to a third party prior to the Effective Date shall continue in effect following the Effective Date until revoked or terminated in accordance with its terms, with the same effect as if such power of attorney or other grant or delegation of authority had been granted by the FTX Recovery Trust. In addition, the FTX Recovery Trust, as successor in interest to the Estates of the Consolidated Debtors, shall be entitled to receive and collect all tax refunds to which the Consolidated Debtors or their Estates would otherwise be entitled, and all such tax refunds shall be added to the Administrative Expenses Set Aside or made available for ~~distribution~~Distribution as Distributable Cash, as determined by the Board.

(e)　　　When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall promptly be transferred to the FTX Recovery Trust, without any further notice to, action, order, or approval of the Bankruptcy Court or by any other Entity.

2.6　　　Title to FTX Recovery Trust Assets. Subject to Sections 2.5(a) and 9.2(a), upon the transfer of Available Assets, the Available Assets shall vest in the FTX Recovery Trust and the FTX Recovery Trust shall succeed to all of the Consolidated Debtors' right, title and interest in the Available Assets, and the Consolidated Debtors will have no further rights or interest in or with respect to the Available Assets, nor shall they have any rights or interest in any other FTX Recovery Trust Assets or the FTX Recovery Trust.

2.7　　　Valuation. The Plan Administrator shall make a good faith valuation of the FTX Recovery Trust Assets as soon as it becomes relevant for tax reporting purposes. All parties (including, without limitation, the Consolidated Debtors, the Plan Administrator, and all FTX Recovery Trust Beneficiaries) shall use consistent valuation of the FTX Recovery Trust Assets for all U.S. federal income tax purposes.

2.8　　　No Reversion to Consolidated Debtors; Distribution of Remaining Assets.

(a)　　　In no event shall any part of the FTX Recovery Trust Assets revert to or be distributed to or for the benefit of any Consolidated Debtor.

(b)　　　To the extent that after satisfaction in full of all of the costs and expenses of the administration of the FTX Recovery Trust, after all Disputed Claims have been either Allowed or disallowed, after all Allowed Claims have been paid pursuant to the Plan Documents, after satisfaction of all other obligations or liabilities of the FTX Recovery Trust incurred or assumed in accordance with the Plan Documents, after the FTX Recovery Trust has made the maximum ~~distribution~~Distribution of Distributable Cash to the extent reasonably practicable, and after the affairs of the FTX Recovery Trust have been finally wound up and concluded in accordance with the provisions of Section 12.1 hereof and section 3808 of the Trust Act, there shall remain any FTX Recovery Trust Assets, the FTX Recovery Trust shall distribute such remaining FTX Recovery Trust Assets to an organization, selected by the Board, described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code that is unrelated to the Consolidated Debtors, the FTX Recovery Trust or any member of the Board.

2.9　　　Fiscal Year. Except for the first and last years of the FTX Recovery Trust, the Fiscal Year of the FTX Recovery Trust shall be the calendar year. For the first and last years of the FTX Recovery Trust, the Fiscal Year of the FTX Recovery Trust shall be such portion of the calendar year that the FTX Recovery Trust is in existence. The terms fiscal quarter, or similar references, as used in this Agreement, shall have a correlative meaning.

2.10    <u>Insurance</u>. The FTX Recovery Trust shall maintain customary insurance coverage, including any appropriate tail coverage, for the protection of the <u>FTX Recovery</u> Trustees and the FTX Recovery Trust Management (which coverage shall be primary to any other coverage potentially available to such persons) and may procure insurance coverage for such employees as the Board may determine in its discretion.

2.11    <u>Books and Records</u>.

(a)    The Board shall cause to be stored and maintained books and records for the period commencing on the date hereof through the termination of the FTX Recovery Trust, containing such information concerning the FTX Recovery Trust Assets, the conduct of the affairs of the FTX Recovery Trust and rights and treatment of the FTX Recovery Trust Beneficiaries, in such detail and for such periods of time as may be necessary to enable the FTX Recovery Trust to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the FTX Recovery Trust.

(b)    The FTX Recovery Trust shall be authorized without further application to the Bankruptcy Court or notice to any party, to abandon or otherwise destroy books and records (whether in electronic or paper format) in accordance with <u>Section 12.3</u>.

(c)    Anything in the Trust Act to the contrary notwithstanding, no FTX Recovery Trust Beneficiary shall have the right to obtain from the FTX Recovery Trust any of its books, records, other documents or information except as expressly provided in this Agreement or as may otherwise be expressly permitted by the Board.

2.12    <u>Right to Conduct Investigations</u>. Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Consolidated Debtors prior to the Effective Date with respect to the FTX Recovery Trust Assets shall vest in the FTX Recovery Trust from the Effective Date through the date of dissolution of the FTX Recovery Trust.

2.13    <u>Privileges</u>.

(a)    All attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "**Privileges**") held by any one or more of the Consolidated Debtors (including any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Consolidated Debtors and their respective predecessors) related in any way to the FTX Recovery Trust Assets and the purpose of the FTX Recovery Trust (the "**Transferred Privileged Information**") are hereby transferred and assigned to the FTX Recovery Trust. The Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital, and whether or not previously disclosed or discussed. For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Consolidated Debtors.

(b)    The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information exclusively in the FTX Recovery Trust, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the FTX Recovery Trust and the FTX Recovery Trust Beneficiaries. The FTX Recovery Trust shall have the exclusive authority and sole discretion to maintain the Privileges and keep the Transferred Privileged Information confidential and/or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Transferred Privileged Information.

(c)    The Consolidated Debtors shall take all necessary actions to effectuate the transfer of such Privileges, and to provide to the FTX Recovery Trust without the necessity of a

subpoena all Transferred Privileged Information in their respective possession, custody, or control. The FTX Recovery Trust is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Transferred Privileged Information from any persons, including attorneys, professionals, consultants and experts, and no such person may object to the production to the FTX Recovery Trust of such Transferred Privileged Information on the basis of a Privilege. Unless and until the FTX Recovery Trust makes a determination to waive any Privilege, Transferred Privileged Information shall be produced solely to the FTX Recovery Trust or as required by law.

(d)     Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the FTX Recovery Trust or any of its respective officers, directors, partners, managers, members, employees, agents, advisors, attorneys, accountants, independent contractors or other professionals, or by disclosure of such Transferred Privileged Information between the Consolidated Debtors, on the one hand, and the FTX Recovery Trust, on the other hand, or any of their respective officers, directors, partners, managers, members, employees, agents, advisors, attorneys, accountants, independent contractors or other professionals.

(e)     If a Consolidated Debtor, the FTX Recovery Trust, any of their respective officers, directors, partners, managers, members, employees, agents, advisors, attorneys, accountants, independent contractors or other professionals or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information. In such circumstances, the disclosing party shall promptly upon discovery of the production notify the FTX Recovery Trust of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

### ARTICLE III
### DISTRIBUTIONS

3.1     <u>Distributions</u>. After the Effective Date, as and to the extent required by the Plan, the FTX Recovery Trust may make Distributions to the FTX Recovery Trust Beneficiaries. References in this Agreement to Distributions by the FTX Recovery Trust shall include Distributions made by a Distribution Agent.

3.2     <u>Provisions Governing Distributions</u>. All ~~distributions~~<u>Distributions</u> to FTX Recovery Trust Beneficiaries shall be made in accordance with the Plan, which is incorporated by reference herein, including Section 4.2 (*Distributions Waterfalls*) of the Plan and Article 7 (*Provisions Governing Distributions*) of the Plan. All payments to be made by the FTX Recovery Trust to or for the benefit of any FTX Recovery Trust Beneficiary shall be made only to the extent that the FTX Recovery Trust has sufficient reserves to make such payments in accordance with this Agreement and the Plan.

3.3     <u>Retention of Certain Amounts</u>. The FTX Recovery Trust shall make Distributions from the FTX Recovery Trust to the FTX Recovery Trust Beneficiaries from the FTX Recovery Trust Assets, in accordance with the Plan; <u>provided</u>, <u>however</u>, that the FTX Recovery Trust may, to the extent consistent with Revenue Procedure 94-45, 1994-2 C.B. 684, retain such amounts (a) as set forth under <u>Section 8.4</u>, (b) as are reasonably necessary to meet contingent liabilities and to maintain the value of the FTX Recovery Trust Assets during the term of the FTX Recovery Trust, and (c) to satisfy all other liabilities incurred or assumed by the FTX Recovery Trust (or to which the FTX Recovery Trust Assets are otherwise subject) in accordance with the Plan and this Agreement.

3.4     <u>Setoff Rights</u>. The FTX Recovery Trust may, but shall not be required to, setoff against any Allowed Claim and the Distributions to be made on account of such Allowed Claim

(before any Distribution is made on account of such Allowed Claim) any claims, rights and Cause of Action or FTX Recovery Trust Cause of Action of any nature that a Debtor, the FTX Recovery Trust or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action or FTX Recovery Trust Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by any Debtor, the FTX Recovery Trust or the Plan Administrator of any such Claims, rights and Causes of Action and FTX Recovery Trust Causes of Action that such Debtor, the FTX Recovery Trust or the Plan Administrator may possess against such Holder. In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action or FTX Recovery Trust Cause of Action of a Debtor, the FTX Recovery Trust or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in the Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

3.5     <u>Right to Object to Claims</u>. Subject to the terms of the Plan Administration Agreement, the FTX Recovery Trustees shall have the responsibility and authority for administering, disputing, objecting to, compromising and settling or otherwise resolving and finalizing Distributions under the Plan. The FTX Recovery Trustees shall generally prosecute objections to Claims pending as of the Effective Date and any additional objections filed from and after the Effective Date. In addition, the FTX Recovery Trust may, at any time, request that the Bankruptcy Court estimate any Contingent Claim, Disputed Claim or Unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether any party previously objected to or sought estimation of such Claim.

3.6     <u>No Distributions Pending Allowance</u>. If a Claim or any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim or portion thereof becomes an Allowed Claim.

3.7     <u>No Distributions Pending Tax Compliance. If a Holder entitled to receive a Distribution under the Plan has not have complied with Section 7.14 (<em>Tax Identification, KYC and OFAC Certifications</em>) of the Plan, then no Distribution shall be made to such Holder.</u>

3.8     ~~3.7~~ <u>Time Bar to Cash Payments</u>. Checks on account of Distributions to any FTX Recovery Trust Beneficiary shall be null and void if not negotiated within one hundred and eighty (180) calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the FTX Recovery Trust or a Distribution Agent, as applicable, by the FTX Recovery Trust Beneficiary within such one hundred and eighty (180)-calendar-day period. Nothing contained in the Plan, or this Agreement shall require the FTX Recovery Trust or any Distribution Agent to attempt to issue a new check following such one hundred and eighty (180)-calendar-day period. After such one hundred and eighty (180)-calendar-day period, all title to and all beneficial interests in the Cash represented by any such non-negotiated check, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and shall revest in the FTX Recovery Trust.

3.9     ~~3.8~~ <u>No Interest or Accruals</u>. Except as otherwise may be expressly provided in the Plan Documents, holders of Claims shall not be entitled to interest on the Distributions provided for in this Agreement, regardless of whether such Distributions are deliverable on or at any specified time after the Effective Date.

**ARTICLE IV**
**WIND DOWN TRUST BENEFICIARIES**

4.1     Ownership of Beneficial Interests Hereunder. Each FTX Recovery Trust Beneficiary shall own a beneficial interest in the FTX Recovery Trust in accordance with the Plan ("**FTX Recovery Trust Interest**"). For the avoidance of doubt, upon the payment in full of all of a Holder's Allowed Claim(s), the Holder of such Allowed Claim(s) shall immediately cease to be an FTX Recovery Trust Beneficiary and shall no longer own any FTX Recovery Trust Interests, and the FTX Recovery Trust, the FTX Recovery Trustees, the FTX Recovery Trust Management, the employees of the FTX Recovery Trust, the FTX Recovery Trust Agents, the Board, the Advisory Committee or any other person duly authorized to act on behalf of the FTX Recovery Trust shall have no further duties or obligations with respect to such Holder.

4.2     Identification of FTX Recovery Trust Beneficiaries. Prior to and following the Effective Date, the Plan Administrator shall instruct the Notice and Claims Agent to keep, and update as necessary, the Claims Register, which shall include the list of all FTX Recovery Trust Beneficiaries, including their names and addresses, and of their respective ~~FTX Recovery Trust Interests~~Claims. The Claims Register shall be shared by the Notice and Claims Agent with the FTX Recovery Trust on each Distribution Record Date, and the FTX Recovery Trust shall be authorized and entitled to rely on such Claims Register for purposes of the performance of its duties hereunder. Claims shall be transferable in accordance with applicable law, and the Notice and Claims Agent is authorized to update the Claims Register to reflect any such transfers of Claims. Notwithstanding the foregoing, the FTX Recovery Trust may, but shall not be required to, deliver a notice to the FTX Recovery Trust Beneficiaries. Such notice may include a form for each FTX Recovery Trust Beneficiary to complete in order to be properly registered as a FTX Recovery Trust Beneficiary and be eligible for ~~distributions~~Distributions under the FTX Recovery Trust. Such form may request the FTX Recovery Trust Beneficiary's federal taxpayer identification number ~~or~~, social security number, an Internal Revenue Service Form W-9 or appropriate Internal Revenue Service Form W-8, or any other information if the FTX Recovery Trustees determines that such information is necessary to fulfill his or her tax reporting and withholding obligations. The FTX Recovery Trustees may suspend Distributions to any FTX Recovery Trust Beneficiary that has not provided its federal taxpayer identification number or social security number or other information, as the case may be, after a request is made pursuant to this Section 4.2. ~~If tax information is not provided within one hundred eighty (180) days after such request, the applicable FTX Recovery Trust Beneficiary's underlying FTX Recovery Trust Interest and underlying Claim will be expunged for all purposes of this Agreement and the Plan.~~

4.3     Evidence of Beneficial Interest. ~~Unless otherwise determined by the~~ FTX Recovery Trust~~, ownership of a FTX Recovery Trust Interest~~ Interests shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever.

4.4     Beneficial Interest Only. The ownership of a FTX Recovery Trust Interest shall not entitle any FTX Recovery Trust Beneficiary to any title in or to, right to, possession of, management or control of the FTX Recovery Trust or any of the FTX Recovery Trust Assets or to any right to call for a partition or division of such FTX Recovery Trust Assets or to require an accounting, except as specifically provided herein. No surviving spouse, heir or devisee of any deceased FTX Recovery Trust Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the FTX Recovery Trust Assets, but the whole title to the FTX Recovery Trust Assets shall be vested in the FTX Recovery Trust and the sole interest of the FTX Recovery Trust Beneficiaries shall be the rights and benefits given to such person under this Agreement, the Confirmation Order and the Plan. Except as expressly provided in this Agreement, a FTX Recovery Trust Beneficiary shall not have standing to direct or to seek to direct the FTX Recovery Trust or FTX Recovery Trustees to do or not to do any act or to institute any action or

proceeding at law or in equity against any Person upon or with respect to the FTX Recovery Trust Assets.

4.5    Transfer of FTX Recovery Trust Interests.

(a)    FTX Recovery Trust Interests may not be transferred, assigned, conveyed or otherwise disposed of by any FTX Recovery Trust Beneficiary.

(b)    (a) Neither the FTX Recovery Trust nor anyone acting on its behalf shall, directly or indirectly, engage in any activity designed to facilitate or promote trading in the FTX Recovery Trust Interests, including by placing advertisements, distributing marketing materials, or collecting or publishing information regarding prices at which the interests may be transferredtraded; provided that no activity undertaken by the FTX Recovery Trust, the Board, the FTX Recovery Trust Management or the FTX Recovery Trust Agents in compliance with the terms of the Plan shall be deemed to facilitate or promote trading in the FTX Recovery Trust Interests for these purposes.

(c)    (b) The FTX Recovery Trust Interests have not been registered pursuant to the Securities Act of 1933, as amended, or any state securities law, and shall not be listed for public trading on any securities exchange or quoted on any interdealer quotation system.

4.6    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to one or more FTX Recovery Trust Interest, or a beneficial interest therein, the FTX Recovery Trust shall be entitled to refuse to comply with any such conflicting claims or demands. In so refusing, the FTX Recovery Trust may elect to make no Distribution with respect to the FTX Recovery Trust Interests at issue subject to the claims or demands involved, or any part thereof, and the FTX Recovery Trust shall be entitled to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive and continuing jurisdiction over resolution of such conflicting claims or demands as they relate to the FTX Recovery Trust. Neither the FTX Recovery Trust, the Board, the FTX Recovery Trust Management nor the FTX Recovery Trust Agents shall be or become liable to any party for either (i) the election to continue making Distributions pursuant to the Claims Register and/or the books and records of a Distribution Agent, as applicable, without regard to the conflicting claims or demands; or (ii) the election to cease Distributions with respect to the subject FTX Recovery Trust Interest or FTX Recovery Trust Interests. In the event that the FTX Recovery Trust elects to cease Distributions, it shall be entitled to refuse to act until either (x) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or such other court of proper jurisdiction) or (y) all differences have been resolved by a written agreement among all of such parties and the FTX Recovery Trust, which agreement shall include a complete release of the FTX Recovery Trust, the Board, the Plan Administrator, the FTX Recovery Trust Management and the FTX Recovery Trust Agents in form and substance reasonably satisfactory to the Plan Administrator or the Board.

4.7    FTX Recovery Trust Beneficiary Liability to Third Persons. No FTX Recovery Trust Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the FTX Recovery Trust Assets or the affairs of the FTX Recovery Trust, to the fullest extent provided by section 3803(a) of the Trust Act.

**ARTICLE V**

**BOARD**

5.1    General. The affairs of the FTX Recovery Trust shall be managed by, or under the direction of, the Board, which shall have such powers and authority as are provided in this Article V and as elsewhere set forth in this Agreement, the Plan and in the Trust Act. The Board accepts the FTX Recovery Trust created by this Agreement in accordance with the terms of the Plan Documents and the grant, assignment, transfer, conveyance and delivery to the FTX Recovery Trust, on behalf,

and for the benefit, of the FTX Recovery Trust Beneficiaries, by the Consolidated Debtors of all of their respective right, title and interest in the FTX Recovery Trust Assets, upon and subject to the terms and conditions set forth in the Plan Documents.

5.2    <u>Membership</u>.

(a)    As of the Effective Date, the Board shall consist of the FTX Recovery Trustees set forth on the signature pages hereto.

(b)    The Board may consist at any time of up to nine members.

(c)    Each FTX Recovery Trustee shall be a natural person at least eighteen (18) years of age. Each Person appointed as a FTX Recovery Trustee shall be deemed a trustee under the Trust Act, with all privileges and immunities appurtenant thereto, and, as necessary or applicable, shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(d)    Each FTX Recovery Trustee shall hold office until the earlier of (i) the termination of the FTX Recovery Trust, (ii) the resignation, death or disability of such FTX Recovery Trustee or (iii) the removal of such FTX Recovery Trustee in accordance with this Agreement.

(e)    Any FTX Recovery Trustee may resign upon thirty (30) days' prior written notice to the other members of the Board.

(f)    The Appointed Director (as identified in the Plan Supplement) shall cease to serve as a member of the Board when the Advisory Committee is disbanded in accordance with <u>Section 6.1(d)</u>.

(g)    Any FTX Recovery Trustee may be removed in accordance with the procedures set forth in this <u>Section 5.2(g)</u> upon: (A) such FTX Recovery Trustee's conviction of a felony or any other crime involving moral turpitude; (B) any act or failure to act by such FTX Recovery Trustee involving actual dishonesty, fraud, misrepresentation, ~~gross negligence,~~ theft or embezzlement; (C) such FTX Recovery Trustee's willful and repeated failure to substantially perform his/her duties under this Agreement and the Trust Act; or (D) such FTX Recovery Trustee's incapacity, such that s/he is unable to substantially perform his/her duties under this Agreement and the Trust Act for more than ninety (90) consecutive days (each of the causes under (A) through (D) above, a "**Cause**"). For purposes of these procedures, references to the Board shall mean the members of the Board other than the FTX Recovery Trustee whose removal is being sought (the "**Specified FTX Recovery Trustee**").

(i)    The Board shall give written notice to the Specified FTX Recovery Trustee and the Advisory Committee, should the Specified FTX Recovery Trustee be the Appointed Director, which notice shall describe in reasonable detail the actions or inactions on the basis of which the other members of the Board have determined that Cause exists for the removal of such FTX Recovery Trustee.

(ii)    The Specified FTX Recovery Trustee shall have thirty (30) days from the date of his/her receipt of the notice from the Board to respond to the determination of the Board that Cause exists for removal and to cure such Cause, if a cure is possible. If the Specified FTX Recovery Trustee so requests, s/he shall be given the opportunity to appear in person before the Board to respond to the Board's determination.

(iii)    Following such thirty (30) day period, whether or not the Specified FTX Recovery Trustee has made any response to the notice of the Board, if the Cause forming the basis for removal has not been cured, the Board by unanimous consent of all FTX Recovery

Trustees other than the Specified FTX Recovery Trustee may remove the Specified FTX Recovery Trustee from office.

(iv)    If the Board does not vote to remove the Specified FTX Recovery Trustee within sixty (60) days from the date notice is first given to the FTX Recovery Trustee, the Board shall repeat these procedures if it determines thereafter to remove such Specified FTX Recovery Trustee.

(v)    Notice of removal of a FTX Recovery Trustee shall promptly be posted to the FTX Recovery Trust Website.

(h)    In the event of a vacancy on the Board, whether as a result of the resignation, death, disability or removal of a FTX Recovery Trustee, the Board may either (x) appoint a replacement; provided that any replacement for the Appointed Director shall first be designated by the Advisory Committee from among its members; or (y) determine to reduce the number of members of the Board and thereby eliminate the vacancy; provided that if the Appointed Director resigns, dies, becomes disabled or is removed, such Director must be replaced by the Advisory Committee, and the Board may not reduce the number of members of the Board thereby eliminating the vacancy. Notice of the appointment of any replacement FTX Recovery Trustee shall be posted to the FTX Recovery Trust Website as promptly as practicable after such appointment.

(i)    The Board may act at any time, in its sole and exclusive discretion, to increase the number of FTX Recovery Trustees and appoint FTX Recovery Trustees to fill any newly created positions, provided that the Board shall not increase the number of FTX Recovery Trustees to a number higher than nine.

5.3    Compensation. The FTX Recovery Trustees shall initially receive the same annual compensation as paid to the members of the Joint Board. Each FTX Recovery Trustee will also be entitled to customary reimbursement of expenses incurred in connection with attending or participating in the Board or any committee thereof or otherwise carrying out services as a FTX Recovery Trustee. Such fees and expenses shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court.

5.4    Authority.

(a)    The Board shall be responsible for exercising the authority and performing the obligations of the FTX Recovery Trust expressly provided for in this Agreement, subject to Section 6.2(a) hereof, otherwise giving effect to the intents and purposes of this Agreement, and exercising the rights of trustees under the Trust Act.

(b)    Without limiting the generality of the preceding subsection, and in furtherance thereof, the Board shall be expressly authorized and empowered to undertake and act as appropriate through the Plan Administrator, the FTX Recovery Trust Management and FTX Recovery Trust Agents, the actions set forth on Schedule 2 hereto on behalf of the FTX Recovery Trust, without the need for any additional approvals, authorization, or consents and without any further notice to or action, order or approval of the Bankruptcy Court.

5.5    Action of the Board.

(a)    Unless otherwise specified in this Agreement, the Board shall act by Majority Approval.

(b)    Notwithstanding anything to the contrary in this Agreement, the following actions shall require the Supermajority Approval of the Board:

(i)     the delegation to a committee of the Board established pursuant to <u>Section 5.8</u> or to any single FTX Recovery Trustee, including the Chairman of the Board, of any rights or responsibilities of the Board; and

(ii)     the approval of any material change or amendment to this Agreement, as provided in <u>Section 12.11</u>; <u>provided</u> that any change, amendment or modification to the provisions of this Agreement regarding the Appointed Director shall require the consent of the Advisory Committee.

(c)     The Board shall take all actions in a manner consistent with the purposes of the FTX Recovery Trust and in accordance with this Agreement and shall not take any action that would jeopardize treatment of the FTX Recovery Trust as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) for United States federal income tax purposes or cause the FTX Recovery Trust to cease to be generally in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684.

5.6    <u>Chairman of the Board</u>.

(a)     The Board shall elect from among its members a Chairman of the Board. The Chairman of the Board may be removed and replaced as Chairman at any time by the Board. The Plan Administrator shall not be the Chairman.

(b)     The Chairman of the Board shall preside at all meetings of the Board at which he or she shall be present and shall exercise such other functions, authorities and duties as may be prescribed by the Board. If the Chairman of the Board is not present for a meeting, a FTX Recovery Trustee chosen by a majority of the members of the Board present, shall act as chairman at such meeting of the Board. The Chairman of the Board shall not be considered an officer of the FTX Recovery Trust solely by virtue of serving in such capacity.

5.7    <u>Meetings</u>.

(a)     The Board shall hold regular meetings, at such time and at such place as shall from time to time be determined by the FTX Recovery Trustees. No notice of regular meetings need be given.

(b)     Special meetings of the Board may be called by the Chairman of the Board or by any two other FTX Recovery Trustees.

(c)     Written notice of the time and place of special meetings of the Board shall be given to each FTX Recovery Trustee by either personal delivery, facsimile or other means of electronic communication at least two Business Days prior to such meeting, unless the Plan Administrator declares an emergency in which case such notice shall be dispensed. Notice of a meeting of the Board need not be given to any FTX Recovery Trustee who signs a waiver of notice either before or after the meeting. Attendance of a FTX Recovery Trustee at a meeting shall constitute a waiver of notice of such meeting, except when a FTX Recovery Trustee states, at the beginning of the meeting, any objection to the transaction of business because the meeting has not been convened or called in accordance with applicable law or this Agreement.

(d)     A majority of the members constituting the whole Board shall constitute a quorum for the transaction of business at such meeting of the Board, but if less than a majority is present at a meeting, a majority of the FTX Recovery Trustees present may adjourn the meeting from time to time. When a meeting is adjourned to another time or place (whether or not a quorum is present), prompt notice shall be given of the adjourned meeting and the time and place thereof will be announced at the meeting at which the adjournment is taken. At the adjourned meeting, the FTX

Recovery Trustees may transact any business which might have been transacted at the original meeting.

(e)    Meetings may be held in person within or without the State of Delaware, telephonically or electronically, and upon such notice as may be determined from time to time in accordance with the rules and procedures adopted by the Board, and any member of the Board who participates by such means shall be deemed to be present for purposes of quorum under Section 5.7(d). Members of the Board may also act by written consent in lieu of a meeting, which consent may be less than unanimous, provided each of the FTX Recovery Trustees shall have received notice of the action to be taken by written consent in lieu of a meeting at least two Business Days in advance of the effectiveness thereof or shall have waived the requirement for such notice. Any such written consents shall be filed with the minutes of the proceedings of the Board.

5.8    Committees. The Board may designate one or more committees, each committee to consist of one or more FTX Recovery Trustees. Any such committee shall have and may exercise such powers as the Board may determine and specify in the resolution designating such committee in a manner not inconsistent with the other provisions of this Agreement. Each committee shall keep a record of proceedings and report the same to the Board to such extent and in such form as the Board may require. Unless otherwise provided in the resolution designating a committee, a majority of all the members of any such committee may select its Chairman, fix its rules of procedure, fix the time and place of its meetings and specify what notice of meetings, if any, shall be given.

5.9    ~~Fiduciary~~Duties and Capacity. ~~Each FTX Recovery Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the FTX Recovery Trust and not otherwise, and in accordance with applicable law, including the Trust Act~~In advising the Plan Administrator, the Board, including the Appointed Director, shall maintain the same fiduciary responsibilities assigned to the Plan Administrator under the Plan Administration Agreement. The Board and each FTX Recovery Trustee, acting in their capacity as such (or any successor thereto) shall not have any duty, obligation or liabilities under or in connection with this Agreement, the FTX Recovery Trust, or any transaction or document contemplated by this Agreement, including with respect to duties, obligations or liabilities owed by the Board or an FTX Recovery Trustee, acting in their capacity as such, to another current or former FTX Recovery Trustee, except as expressly provided by the terms of this Agreement, and no implied duties (including fiduciary duties), obligations or liabilities shall be read into this Agreement against the Board or any FTX Recovery Trustee (or any successor thereto). The right of the Board and of each FTX Recovery Trustee, acting in their capacity as such, to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, obligation or liability. To the extent that, at law or in equity, the Board or an FTX Recovery Trustee, acting in their capacity as such, has duties (including fiduciary duties), obligations or liabilities related thereto, to the FTX Recovery Trust, another current or former FTX Recovery Trustees, the Board (as applicable), the FTX Recovery Trust Beneficiaries or any other distributee of the FTX Recovery Trust, it is hereby understood and agreed that such duties (including fiduciary duties), obligations and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties, obligations and liabilities of the Board and of the FTX Recovery Trustees expressly set forth herein. No FTX Recovery Trustee in a personal capacity shall have the authority to bind the FTX Recovery Trust, but shall for all purposes hereunder be acting in the capacity as a member of the Board or a committee thereof.

5.10    Conflicts of Interest. Each FTX Recovery Trustee shall disclose any actual or potential conflicts of interest that such FTX Recovery Trustee has with respect to any matter arising during the administration of the FTX Recovery Trust to the other FTX Recovery Trustees and such FTX Recovery Trustee shall be recused from voting on any matter on which such member has an actual or potential conflict of interest.

## ARTICLE VI
## ADVISORY COMMITTEE

6.1     Membership.

(a)     On the Effective Date, the Debtors shall establish an advisory committee (the "**Advisory Committee**") consisting of three members: [•], [•] and [•].

(b)     At no time shall any member of the Advisory Committee be a current or former Holder of a Claim (as defined under the Plan) or Interest (unless otherwise agreed to by the Debtors, the Official Committee, and the Ad Hoc Committee).

(c)     In the event of a vacancy on the Advisory Committee, the other members of the Advisory Committee may appoint a replacement member reasonably acceptable to the Board by written notice to the Bankruptcy Court.

(d)     The Advisory Committee shall continue until such time as Allowed General Unsecured Claims have been paid 100% of their Allowed amounts plus interest at the Consensus Rate as provided in the Plan, and then shall be disbanded.

(e)     The Advisory Committee shall provide written notice to the FTX Recovery Trust of the Person the Advisory Committee designates as its point of contact for all purposes hereunder, which notice shall contain contact information for such Person and may be updated by the Advisory Committee from time to time in writing.

6.2     Role of the Advisory Committee.

(a)     The Board shall consult with the Advisory Committee in good faith on its material decisions concerning the FTX Recovery Trust, the Plan Administrator and the Advisory Committee from time to time, including without limitation with respect to (i) reserves and the timing and amount of ~~distributions~~Distributions, (ii) resolution or settlement of disputed unsecured claims, (iii) commencement, prosecution and settlement of litigation, (iv) disallowance of claims, (v) monetization of digital assets and venture investments, (vi) implementation of the Supplemental Remission Fund, and (vii) modification of the terms of employment or scope of authority of the Plan Administrator and any members of the FTX Recovery Trust Management, in each case of clauses (i) through (vii) subject to such parameters as may be agreed upon in good faith by the Board, the Plan Administrator and the Advisory Committee from time to time.

(b)     The members of the Advisory Committee that do not serve as the Appointed Director on the Board shall have the right to attend formal meetings of the Board as non-voting observers (and receive all related board materials and reports), subject to, for the avoidance of doubt, such limitations as set forth under Section 6.5 and such other limitations that the Board may set from time to time to preserve confidentiality and/or address any actual or potential conflict of interest. The Appointed Director shall have the opportunity to consult with the other members of the Advisory Committee prior to voting on any actions in its capacity as a member of the Board. Similarly, the Board shall have the right to consult in executive session without the Advisory Committee members.

(c)     If the Board approves an action (i) that the Appointed Director has voted against in his or her capacity as a member of the Board and (ii) to which a majority of the Advisory Committee (including the Appointed Director) also objects, the Appointed Director may send written notice explaining the basis for the Advisory Committee's objection to the Plan Administrator and the other members of the Board within one (1) Business Day of the vote of the Board approving the proposed action (a "**Notice of Objection**"). Upon the Appointed Director's vote against a proposed action by the Board, the FTX Recovery Trust shall refrain from taking the contested action unless a Notice of Objection is not timely provided. If a Notice of Objection is timely provided, then the

Board shall not take the proposed action without either order of the Bankruptcy Court or the expiration of a seven day waiting period. During this seven day waiting period, the Advisory Committee may file an objection to the proposed action with the Bankruptcy Court, describing the basis therefor in reasonable detail; provided, however, that the Advisory Committee may not publicly file any information designated by the Board or any order of the Bankruptcy Court as confidential or otherwise subject to sealing requirements in connection with any such objection without the express written permission of the Board or order of the Bankruptcy Court. If no objection is filed with the Bankruptcy Court within such seven day period, the Notice of Objection shall have no further effect, the FTX Recovery Trust may proceed with the proposed action and the Advisory Committee shall be deemed to have waived any right to challenge the proposed action.

(d)    If the Advisory Committee files a timely objection with the Bankruptcy Court in accordance with Section 6.2(c), the Plan Administrator may request that the Bankruptcy Court resolve the objection as a contested matter by applying the standard of review that would be applicable to an action proposed by a debtor over the objection of a general unsecured creditor under section 363(b) of the Bankruptcy Code or Rule 9109, as applicable.

6.3    Compensation. The members of the Advisory Committee shall receive the same annual compensation as paid to the members of the Board (it being understood that the member of the Advisory Committee that serves as the Appointed Director shall not be entitled to any additional annual compensation by virtue of the dual role). The Advisory Committee may retain and employ Delaware counsel, one additional law firm and one financial or investment banking advisory firm to assist the Advisory Committee in the performance of its duties, with the reasonable and documented fee and expenses of these professionals to be borne or reimbursed by the FTX Recovery Trust, in each case with the prior consent of the FTX Recovery Trust. These professional firms shall be chosen by majority vote of the Advisory Committee with the prior consent of the Board (such consent not to be unreasonably withheld).

6.4 ~~Fiduciary~~ Capacity. The members of the Advisory Committee shall have fiduciary duties to all creditors ~~and the~~ The Advisory Committee and each of its members, acting in their capacity as such (or any successor thereto) shall not have any duty, obligation or liabilities under or in connection with this Agreement, the FTX Recovery Trust, or any transaction or document contemplated by this Agreement, including with respect to duties, obligations or liabilities owed by the Advisory Committee or any of its members, acting in their capacity as such, to another current or former member of the Advisory Committee, except as expressly provided by the terms of this Agreement, and no implied duties (including fiduciary duties), obligations or liabilities shall be read into this Agreement against the Advisory Committee or any of its members (or any successor thereto). The right of the Advisory Committee and of each of its members, acting in their capacity as such, to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, obligation or liability. To the extent that, at law or in equity, the Advisory Committee or one of its members, acting in its capacity as such, has duties (including fiduciary duties), obligations or liabilities related thereto, to the FTX Recovery Trust, the FTX Recovery Trustees, the Board, the FTX Recovery Trust Beneficiaries, another member of the Advisory Committee or any other distributee of the FTX Recovery Trust, as applicable, it is hereby understood and agreed that such duties (including fiduciary duties), obligations and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties, obligations and liabilities of the Advisory Committee and of its members expressly set forth herein. The powers of the Advisory Committee, and of each of its members in their capacity as such, are exercisable solely in ~~a fiduciary capacity~~ furtherance of and consistent with~~, and in furtherance of,~~ the purpose of the FTX Recovery Trust and ~~not,~~ unless otherwise provided in this Agreement, ~~and~~ in accordance with applicable law, including the Trust Act.

6.5 Conflicts of Interest. Each member of the Advisory Committee shall disclose any actual or potential conflicts of interest that such member of the Advisory Committee has with respect to any matter arising during the exercise of its duties and obligations to the other members of the Advisory Committee, to the Plan Administrator and/or to the Board, as applicable, and such member of the Advisory Committee shall be recused from participating to the discussions and decisions on any matter on which such member has an actual or potential conflict of interest.

6.6 No Authority. Neither the Advisory Committee nor any member thereof shall have any authority to bind the FTX Recovery Trust.

6.7 Other Obligations. Members of the Advisory Committee shall be subject to the same confidentiality, independence and trading restrictions as members of the Board as in effect from time to time.

## ARTICLE VII
## MANAGEMENT AND EMPLOYEES

7.1 FTX Recovery Trust Management.

(a) The officers of the FTX Recovery Trust shall consist of the Plan Administrator, a secretary and such other officers as the Board shall deem appropriate (all such officers being collectively referred to as the "**FTX Recovery Trust Management**").

(b) The Plan Administrator shall have the powers set forth in the Plan Administration Agreement and general executive responsibility for the conduct of the affairs of the FTX Recovery Trust, and shall have such other functions, authority and duties as customarily appertain to the office of the chief executive officer of a commercial entity or as may be prescribed by the Board.

(c) The initial Plan Administrator shall be Owl Hill Advisory, LLC, pursuant to the Plan Administration Agreement. The initial Plan Administrator may only be removed in

accordance with the terms of the Plan Administration Agreement, and shall otherwise serve as Plan Administrator in accordance with the terms of the Plan Administration Agreement.

(d)    The secretary of the FTX Recovery Trust shall keep a record of all proceedings of the Board and its committees, if any. The secretary shall have such other functions, authority and duties as customarily appertain to the office of secretary of a commercial entity or as may be prescribed by the Board.

(e)    The other officers of the FTX Recovery Trust shall be appointed by the Board and shall hold office until their successors are appointed and qualified or until their earlier death, resignation or removal from office.

(f)    Any officer may resign at any time by communicating notice of such resignation to the Board. Subject to Section 7.1(c), any officer may be removed at any time by the Board with or without cause.

(g)    Any officer who is appointed from time to time by the Board and whose duties are not specified in this Agreement shall perform such duties and have such functions, authority and duties as may be prescribed by the Board.

(h)    The compensation of each of the officers of the FTX Recovery Trust Management shall be determined by the Board and paid out of the Administrative Expenses Set Aside.

7.2    <u>FTX Recovery Trust Employees</u>. The officers of the FTX Recovery Trust shall be authorized to hire such employees as such officers, or any of them deem appropriate, subject to such limitations, conditions and qualifications as may be imposed by the Board. The compensation of such employees, together with all related costs, fees and expenses, shall be determined by the Plan Administrator and paid out of the Administrative Expenses Set Aside.

**ARTICLE VIII**
**OPERATION OF THE FTX RECOVERY TRUST**

8.1    <u>Prohibited Activities</u>.

(a)    The Board, the FTX Recovery Trust Management and the FTX Recovery Trust Agents shall hold the FTX Recovery Trust out as a trust in the process of liquidation, whose activities are limited to the liquidation of the FTX Recovery Trust Assets on behalf, and for the benefit, of the FTX Recovery Trust Beneficiaries and the other purposes set forth in this Agreement. Without limiting the foregoing, the FTX Recovery Trust shall not hold itself out as an investment company, and no part of the FTX Recovery Trust Assets shall be caused by the Board to be used or disposed of in furtherance of any trade or business.

(b)    ~~The~~Except as otherwise provided by the Plan, the FTX Recovery Trust shall not engage in any investments or activities (i) inconsistent with the treatment of the FTX Recovery Trust as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684 or (ii) that would require the FTX Recovery Trust to register as an investment company under the Investment Company Act of 1940.

8.2    <u>Resolution of Disputed Claims</u>. Subject to <u>Section 6.2(a)</u> hereof, the Board shall authorize the FTX Recovery Trust Management or one or more FTX Recovery Trust Agents to resolve, on behalf of the FTX Recovery Trust, all Disputed Claims without further Bankruptcy Court order. If the FTX Recovery Trust and the holder of a Disputed Claim are unable to reach a settlement on a Disputed Claim, or if the FTX Recovery Trust determines to disallow a Disputed Claim, such Disputed Claim shall be submitted to the Bankruptcy Court for resolution. If it is determined that the Bankruptcy Court does not have jurisdiction to resolve any Disputed Claim, then such Disputed Claim shall be submitted to the District Court for resolution. The FTX Recovery Trust shall file with the Bankruptcy Court a quarterly notice of Disputed Claims resolved and/or settled during the prior quarter following the end of each fiscal quarter, starting with the first complete fiscal quarter after the Effective Date.

8.3    <u>Disputed Claims Reserve</u>. The FTX Recovery Trust shall be authorized, but not directed, to establish and maintain, in accordance with Section 4 (*Classification, Treatment and Voting of Claims and Interests*) of the Plan and Section 8.5 (*Disputed Claims Reserve*) of the Plan, one or more Disputed Claims Reserves (a) on account of Disputed Claims that may be subsequently Allowed after the Effective Date, (b) to cover payments that may be required under the FTX DM Global Settlement Agreement and (c) to cover any amount to fund subsequent Distributions pursuant to the Plans. The FTX Recovery Trust, along with the Plan Administrator, may determine the amount and the specific FTX Recovery Trust Assets that allocated to the Disputed Claims Reserve. All assets in the Disputed Claims Reserve shall be the property of the FTX Recovery Trust and not of the holder of any Claim or any other person. Except as determined by the Plan Administrator, the Disputed Claims Reserve shall not be required to be held separately and may be commingled with unrestricted funds of the FTX Recovery Trust.

8.4    <u>Administrative Expenses Set Aside</u>.

(a)    On the Effective Date, there shall be established an Administrative Expenses Set Aside for the purpose of maintaining Cash allocated and retained by the FTX Recovery Trust from time to time in an amount necessary to satisfy reasonable costs and expenses of the FTX Recovery Trust and other obligations and liabilities incurred, assumed or reasonably anticipated by the FTX Recovery Trust (or to which the FTX Recovery Trust Assets are otherwise subject), including without limitation (i) fees and costs incurred in connection with the protection, preservation, liquidation and ~~distribution~~Distribution of the FTX Recovery Trust Assets; (ii) the fees and costs incurred in connection with investigating, prosecuting and resolving Disputed Claims, Avoidance Actions, and other FTX Recovery Trust Causes of Action; (iii) the fees and costs of maintaining the Disputed Claims Reserve and the Administrative Expenses Set Aside; (iv) the fees and costs of winding down of the Estates of the Consolidated Debtors and the affairs of the Consolidated Debtors; (v) reserves for any judgments, settlements or other Cash liabilities or potential liabilities that are or may be payable by the FTX Recovery Trust, as determined by the Board; (vi) the compensation of the Delaware Trustee, the FTX Recovery Trustees, the Plan Administrator, the members of the Advisory Committee and the FTX Recovery Trust Management, and the expenses that may be incurred by them in the performance of their duties hereunder, including, without limitation, the compensation and the reimbursement of costs, fees (including attorneys' fees and other advisory fees) and expenses of the FTX Recovery Trustees, the Advisory Committee (and its members) and the Delaware Trustee in connection with the performance of their duties hereunder and any amounts owed to the FTX Recovery Trustees and the Delaware Trustee pursuant to <u>Sections 8.3</u> and <u>9.2</u> hereof; (vii) any Taxes imposed on the FTX Recovery Trust or in respect of the FTX Recovery Trust Assets or otherwise, including the Disputed Claims Reserve; (viii) the fees and expenses of the FTX Recovery Trust Agents, the fees of the ~~United States~~U.S. Trustee and <u>Allowed</u> Professional Claims; (ix) any and all fees that are required to be paid by the FTX Recovery Trust under Section 3.5 (*Statutory Fees Payable Pursuant to 28 U.S.C. § 1930*) of the Plan; (x) any statutory fees not otherwise satisfied by the Consolidated Debtors and (xi) such other costs, fees and expenses as may be incurred in carrying out the purposes and intents of this Agreement. The amount of Cash held in the Administrative Expenses Set Aside may be increased or released from

time to time by or at the direction of the Board, as necessary or appropriate in furtherance of the purposes thereof.

(b)    Except as determined by the Plan Administrator, the Administrative Expenses Set Aside shall not be required to be held separately and may be commingled with unrestricted funds of the FTX Recovery Trust. In its discretion, the Board may permit non-Cash assets to be applied to the Administrative Expenses Set Aside, which non-Cash assets may be monetized from time to time and the Cash so realized included in the Administrative Expenses Set Aside; provided, however that in connection with any such application, due consideration shall be given to the timing and amount of scheduled and anticipated payment obligations and both the fair market value and the timing of monetization of such non-Cash assets, so as to enable the FTX Recovery Trust to pay its obligations as they become due.

8.5    Periodic Reporting.

(a)    Beginning the first quarter-end following the Effective Date and continuing on each quarter-end thereafter until the date when all of the Chapter 11 Cases have been closed, pursuant to 28 CFR § 58.8, the FTX Recovery Trust shall file UST Form 11-PCR and such other information as may be requested or required from time to time within twenty-one (21) calendar days after the end of such period or such other date as agreed to by the relevant parties.

(b)    The FTX Recovery Trust shall, as soon as practicable after the end of calendar year 2025 and of each calendar year thereafter and upon termination of the FTX Recovery Trust, provide or make available a written report and account (which may be unaudited) to the FTX Recovery Trust Beneficiaries, which report and account sets forth a summary of (i) the assets and liabilities of the FTX Recovery Trust at the end of such calendar year or upon termination, (ii) the receipts and disbursements of the material changes in the FTX Recovery Trust Assets and significant actions taken by the Board in the performance of its duties under the Plan or this Agreement that the Board determines in its discretion may be relevant to holders of FTX Recovery Trust Interests, such as material changes or significant actions that, in the opinion of the Board, may have a material effect on the FTX Recovery Trust Assets that were not previously reported. The FTX Recovery Trust may provide or make available to holders of FTX Recovery Trust Interests similar reports (which may be unaudited) for such interim periods during the calendar year as the Board deems advisable. Such reports may be provided or made available to the holders of FTX Recovery Trust Interests, in the discretion of the Board, by any reasonable means, including U.S. mail, electronic transmission or publication to a publicly-available website or by press release distributed via a generally recognized business news service.

**ARTICLE IX**
**DELAWARE TRUSTEE**

9.1    Appointment. The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807 of the Trust Act.

. Wilmington Trust, National Association is hereby appointed as the Delaware Trustee, and Wilmington Trust, National Association hereby accepts such appointment. The Delaware Trustee shall act solely for the purpose of complying with the requirement of section 3807(a) of the Trust Act. It is understood and agreed that the Board or the FTX Recovery Trustees shall perform or cause the FTX Recovery Trust to perform all of the FTX Recovery Trust's obligations and duties hereunder or otherwise other than fulfilling the Trust's obligations pursuant to Section 3807(a) of the Trust Act.

9.2    Powers; Duties and Limited Liability of the Delaware Trustee.

(a)    Notwithstanding any provision hereof to the contrary, the duties and responsibilities of the Delaware Trustee shall be limited solely to (i) accepting legal process served

on the FTX Recovery Trust in the State of Delaware and ,(ii) the execution of any certificates required to be filed with the office of the ~~Delaware~~ Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Trust Act (including without limitation the Certificate of Trust), and (iii) any other duties specifically allocated to the Delaware Trustee in this Agreement provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall have been advised by outside counsel that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the FTX Recovery Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. Except as provided in the foregoing sentence, the Delaware Trustee shall have no management responsibilities or owe any fiduciary duties to the FTX Recovery Trust, the Board, the FTX Recovery Trustees, the FTX Recovery Trust Beneficiaries or any other distributee of the FTX Recovery Trust hereunder and, for the avoidance of doubt, any reference to the Board, or the FTX Recovery Trustees does not include the Delaware Trustee. The filing of the Certificate of Trust with the Secretary of State ~~of the State of Delaware~~ as provided under the Trust Act is hereby ratified.

(b)    By its execution hereof, the Delaware Trustee accepts the trusteeship of the FTX Recovery Trust on the terms set forth herein. The Delaware Trustee undertakes to perform such duties and only such duties as are specifically and expressly set forth in this Agreement. These duties shall be deemed purely ministerial in nature and the Delaware Trustee shall not be liable except in connection with the performance of such duties. The Delaware Trustee or any successor Delaware Trustee shall not have any duty or ~~liability with respect~~obligation under or in connection with this Agreement, the FTX Recovery Trust, or any transaction or document contemplated by this Agreement, including, but not limited to the administration of the FTX Recovery Trust (except as otherwise expressly set forth in Section 9.2(a)), the investment of the FTX Recovery Trust Assets or the ~~distribution~~Distribution of the FTX Recovery Trust Assets to the FTX Recovery Trust Beneficiaries, ~~and no such duties shall be implied. The Delaware Trustee shall not be~~ except as expressly provided by the terms of this Agreement, and no implied duties (including fiduciary duties), covenants or obligations shall be read into this Agreement against the Delaware Trustee, or any successor Delaware Trustee. The right of the Delaware Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) or liabilities related thereto, to the FTX Recovery Trust, the Board, the FTX Recovery Trustees or the FTX Recovery Trust Beneficiaries or any other distributee of the FTX Recovery Trust, it is hereby understood and agreed that such duties (including fiduciary duties) and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities of the Delaware Trustee expressly set forth herein.

(c)    The Delaware Trustee shall not be liable for the acts or omissions of the FTX Recovery Trust, the Board, the FTX Recovery Trustees or the FTX Recovery Trust ~~Management~~Beneficiaries or any other distributee under this Agreement, nor shall the Delaware Trustee be liable for supervising or monitoring the performance of the duties and obligations of the FTX Recovery Trust, the Board, the FTX Recovery Trustees or the FTX Recovery Trust ~~Management under~~Beneficiaries or any other distributee under this Agreement. The Delaware Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person. The Delaware Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement. The Delaware Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Delaware Trustee shall not be personally liable under any circumstances, except for its own ~~gross negligence, bad faith or~~ willful misconduct ~~in the performance of its express duties under this Agreement~~. The permissive rights of the Delaware Trustee to do things enumerated in this Agreement shall not be construed as a duty and, with respect to such permissive rights, the Delaware Trustee shall not be answerable for other than its willful misconduct. Without limiting the foregoing:

27

(i)     the Delaware Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence in the performance of its express duties under this Agreement;

(ii) the Delaware Trustee shall not have any duty or obligation to manage or deal with the FTX Recovery Trust Assets, or to otherwise take or refrain from taking any action under this Agreement except as expressly provided in Section 9.2(a), and no implied trustee duties or obligations shall be deemed to be imposed on the Delaware Trustee;

(ii)     (iii) no provision of this Agreement shall require the Delaware Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Delaware Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)     (iv) the Delaware Trustee shall not be personally liable for the validity or sufficiency of this Agreement, the value or sufficiency of the FTX Recovery Trust Assets or for the due execution hereof by the other parties hereto;

(iv)     the Delaware Trustee shall be entitled to rely on the advice of counsel or other professionals retained or consulted by the Delaware Trustee;

(v)     in the exercise of its duties hereunder, the Delaware Trustee (I) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and shall not be liable for the acts or omissions of any agents or attorneys selected by it in good faith appointed with due care, and (II) may consult with counsel selected by it in good faith and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(vi)     the Delaware Trustee acts solely as Delaware Trustee hereunder and not in its individual capacity, and all persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Agreement shall look only to the FTX Recovery Trust Assets for payment or satisfaction thereof;

(vii)     the Delaware Trustee shall not be personally liable for any representation, warranty, covenant, agreement, or indebtedness of the FTX Recovery Trust;

(viii)     the Delaware Trustee shall not incur liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. The Delaware Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any entity party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Delaware Trustee may for all purposes hereof rely on a certificate, signed by an officer of the FTX Recovery Trust, as to such fact or matter, and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon; and

(ix)     the Delaware Trustee shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present of future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage;

epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility;

(x)    the Delaware Trustee shall be entitled to request written instructions from the Board and shall have no responsibility or liability for any losses or damages of any nature that may arise from any action taken or not taken by the Delaware Trustee in accordance with the written direction of the Board;

(xi)    (ix) the Delaware Trustee shall not be responsible or liable for punitive, exemplary, consequential, special, indirect, or other damages for a breach of this Agreement under any circumstances, irrespective of whether the Delaware Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action; and

(xii)    the Corporate Transparency Act (31 U.S.C § 5336) and its implementing regulations (collectively, the "**CTA**"), may require the FTX Recovery Trust to file reports with the Financial Crimes Enforcement Network ("**FinCEN**") from time to time. The Delaware Trustee shall not have any duty to cause the FTX Recovery Trust to make such filings, as applicable, or to cause the FTX Recovery Trust to comply with its obligations under the CTA, if any. The parties hereto agree that for purposes of the CTA, the FTX Recovery Trust Beneficiaries are and shall be deemed to be the sole direct beneficial owners of the FTX Recovery Trust.

9.3    <u>Compensation</u>. The Delaware Trustee shall be entitled to receive compensation out of the Administrative Expenses Set Aside for the services that the Delaware Trustee performs in accordance with this Agreement and in accordance with ~~such fee schedules as shall be~~the Fee Agreement attached hereto under Exhibit A (the "**Delaware Trustee Fee Agreement**") or as otherwise agreed from time to time by and between the Delaware Trustee and the Board, and if so required by the Plan Documents or applicable law, as approved by the Bankruptcy Court. The Delaware Trustee may also consult with counsel (who may be counsel for the Board) with respect to those matters that relate to the Delaware Trustee's role as the Delaware Trustee of the FTX Recovery Trust, and the reasonable legal fees incurred in connection with such consultation and any other reasonable out-of-pocket expenses of the Delaware Trustee shall be reimbursed out of the Administrative Expenses Set Aside. Such compensation is intended for the Delaware Trustee's services as contemplated by this Agreement. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

9.4    <u>Duration and Replacement.</u>

(a)    ——The Delaware Trustee shall serve for the duration of the FTX Recovery Trust or until the earlier of (i) the effective date of the Delaware Trustee's resignation, or (ii) the effective date of the removal of the Delaware Trustee. The Delaware Trustee may resign at any time by giving thirty (30) days' written notice to the Board; <u>provided</u>, <u>however</u>, that such resignation shall not be effective until such time as a successor Delaware Trustee has accepted appointment. The Delaware Trustee may be removed by the Board by providing thirty (30) days' written notice to the Delaware Trustee; <u>provided</u>, <u>however</u>, that such removal shall not be effective until such time as a successor Delaware Trustee has accepted appointment. Upon the resignation or removal of the Delaware Trustee, the Board shall appoint a successor Delaware Trustee. If no successor Delaware Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Delaware Trustee may (at the expense of the FTX Recovery Trust, including with respect to the reasonable attorneys' fees and expenses) petition the Bankruptcy Court for the appointment of a successor Delaware Trustee. Any successor Delaware Trustee appointed pursuant to this <u>Article IX</u> shall be eligible to act in such capacity in accordance with this Agreement and, following compliance with this <u>Article IX</u>, shall

become fully vested with the rights, powers, duties and obligations of its predecessor under this Agreement, with like effect as if originally named as Delaware Trustee. Any such successor Delaware Trustee shall notify the Delaware Trustee of its appointment by providing written notice to the Delaware Trustee and upon receipt of such notice, the Delaware Trustee shall be discharged of its duties herein. Any such successor Delaware Trustee shall also file an amendment to the Certificate of Trust as required by the Trust Act.

(b)    Any corporation or association into which the Delaware Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee is a party, will be and become the successor to the Delaware Trustee under this Agreement if so permitted under applicable law, and will have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

## ARTICLE X
## TAX MATTERS

10.1    Tax Treatment.

(a)    For all United States federal income tax purposes, all parties (including, without limitation, the Consolidated Debtors, the Board and the FTX Recovery Trust Beneficiaries) shall treat the transfer of the FTX Recovery Trust Residual Assets to the FTX Recovery Trust as:

(i)    a transfer of the FTX Recovery Trust Residual Assets (subject to any obligations relating to those assets) directly to FTX Recovery Trust Beneficiaries, other than FTX Recovery Trust Assets that will be distributed pursuant to Article III (with respect to which the FTX Recovery Trust shall be deemed to be acting in the capacity of a Distribution Agent) or that are allocable to unsecured Disputed Claims (which shall be treated as a transfer of such assets to the Disputed Claims Reserve based on the number of FTX Recovery Trust Interests held in the Disputed Claims Reserve)Residual Claimants, followed by

(ii)    the transfer by such FTX Recovery Trust BeneficiariesResidual Claimants to the FTX Recovery Trust of such FTX Recovery Trust Residual Assets in exchange for the FTX Recovery Trust Interestsany remaining assets.

(b)    Accordingly, those holders of unsecured Allowed Claims receivingthe FTX Recovery Trust InterestsResidual Claimants shall be treated for United States federal income tax purposes as the grantors and owners of their respective shares of the FTX Recovery Trust Assets (other than FTX Recovery Trust Assets that will be Distributed pursuant to Article III or that are allocable to unsecured Disputed Claims)Residual Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(c)    To the extent permitted by applicable laws and consistent with the valuation provided under Section 2.7,Allowed Claims against the FTX Recovery Trust Beneficiaries belonging to Classes 5A, 5B, 6A, 6B, 7A, 7B, and 7C (such FTX Recovery Trust Beneficiaries, "Consensus Rate Beneficiaries"), shall be deemed to have received FTX Recovery Trust Assets with a fair market value that is equal to the amount of their Allowed Claims, to the extent that such FTX Recovery Trust Beneficiaries are substantially certain to receive their Allowed Claims and the Consensus Rate thereto in full.may be treated as indebtedness for United States federal income tax purposes and may in some cases be treated  as having been issued with original issue discount within the meaning of section 1273(a) of the Tax Code.

10.2   <u>Tax Reporting</u>.

(a)   The FTX Recovery Trust shall file Tax Returns treating the FTX Recovery Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Plan. The FTX Recovery Trust also shall annually send (or otherwise make available) to each ~~holder of a beneficial interest in the~~ FTX Recovery Trust <u>Residual Claimant</u> a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit as applicable ~~and will instruct all such holders to report such items on their United States federal income tax returns or to forward the appropriate information to their respective beneficial holders with instructions to report such items on their United States federal income tax returns.~~ <u>An FTX Recovery Trust Beneficiary treated as a holding indebtedness may receive a Form 1099-INT and/or Form 1099-OID related to the accrual of the Consensus Rate in relation to such Holder's Allowed Claim.</u> The FTX Recovery Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the FTX Recovery Trust that are required by any Governmental Unit or Tax Authority. The FTX Recovery Trust may withhold from amounts distributable to any Person any and all amounts, determined in the FTX Recovery Trust's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

~~(b)~~   Allocation of FTX Recovery Trust <u>items of</u> taxable income and ~~loss~~<u>gain</u> among the FTX Recovery Trust ~~Beneficiaries~~<u>Residual Claimants</u> shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed ~~distribution~~<u>Distribution</u>, the FTX Recovery Trust had <u>paid all of its outstanding Claims and</u> distributed ~~all its~~<u>any remaining</u> assets (valued at their tax book value, other than assets allocable to any Disputed Claims Reserve) to the ~~holders of~~ <u>FTX Recovery Trust Residual Claimants, adjusted for (i) the amount</u> the FTX Recovery Trust ~~Interests, adjusted for~~<u>would need to set aside to settle all outstanding obligations (including obligations associated with Allowed Claims  and the payment of the Consensus Rate associated with such Allowed Claims, and including also the payment of any Claims that might be allowed by the Bankruptcy Court in the future, along with Consensus Rate Interest thereon), (ii)</u> prior taxable income and loss<u>,</u> and <u>(iii)</u> taking into account all prior and concurrent ~~distributions~~<u>Distributions</u> from the FTX Recovery Trust~~, further, to the extent a FTX Recovery Trust Beneficiary recognized income regarding the receipt of Consensus Rate under Section 7.1 (*Accrual of Post-Petition Interest on Certain Claims*) of the Plan or a similar provision providing for the receipt of the Consensus Rate for such FTX Recovery Trust Beneficiaries, such amounts should be deemed to have been already been distributed for the purposes of the deemed distribution calculation.~~ Similarly, <u>items of</u> taxable loss <u>and deduction</u> of the FTX Recovery Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating ~~distribution~~<u>Distribution</u> of the remaining FTX Recovery Trust <u>Residual</u> Assets (other than the assets allocable to any Disputed Claims Reserve)~~, with the receipt of the Consensus Rate being treated similarly as the previous sentence~~. The tax book value of the FTX Recovery Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. ~~To the extent permitted by applicable laws and consistent with the valuation provided under Section 2.7, Consensus Rate Beneficiaries will not be allocated any portion of the tax items of the~~<u>The</u> FTX Recovery Trust ~~to the extent Consensus Rate Beneficiaries (i) will be deemed to have received FTX Recovery Trust Assets with a fair market value that is equal to the amount of their Allowed Claims, (ii) are expected to receive the full amount of the Allowed Claims and Consensus Rate thereto, and (iii) not entitled to receive any further distribution that is greater than the full amount of the Allowed Claims and Consensus Rate thereto.~~

~~(c)~~<u> may (A) subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Trustee of a private letter ruling if the Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustee),</u> ~~To the extent the FTX Recovery Trust makes a~~

31

Distribution under Article III that includes the payment of the Consensus Rate, such amounts of payments shall be reported as taxable income to such FTX Recovery Trust Beneficiaries under appropriate methodologies.

(d) The FTX Recovery Trust may (A) treat the Disputed Claims Reserve, and the FTX Recovery Trust Assets allocable thereto, as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 by timely making an election, (B) file such Tax Returns and pay such Taxes as may be required consistent with such treatment, and (C) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

(e) The FTX Recovery Trust may request an expedited determination of Taxes of the FTX Recovery Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the FTX Recovery Trust for all taxable periods through the dissolution of the FTX Recovery Trust.

10.3   Tax Payment. The FTX Recovery Trust shall be responsible for the payment, out of the Administrative Expenses Set Aside, of any Taxes imposed on the FTX Recovery Trust or the FTX Recovery Trust Assets, including the Disputed Claims Reserve. In the event, and to the extent, that any Cash retained on account of unsecured Disputed Claims in the Disputed Claims Reserve is insufficient to pay any portion of such Taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, such respective classes of unsecured Disputed Claims, such Taxes shall be (x) reimbursed from any subsequent Cash amounts retained on account of the respective classes of unsecured Disputed Claims or (y) to the extent such unsecured Disputed Claims subsequently have been resolved, deducted from any amounts distributable by the FTX Recovery Trust as a result of the resolutions of such unsecured Disputed Claims.

10.4   FTX Recovery Trust's Tax Powers.

(a)   Following the Effective Date, the Board shall be authorized to prepare and file (or cause to be prepared and filed) on behalf of the Consolidated Debtors all Tax Returns required to be filed or that the Board otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

(b)   For all taxable periods ending on or prior to the Effective Date, the Board shall have full and exclusive authority in respect of all Taxes of the Consolidated Debtors to the same extent as if the Board was the debtor in possession.

(c)   In furtherance of the Board's authority hereunder, each of the Consolidated Debtors shall execute, a power of attorney authorizing the FTX Recovery Trust to correspond with any Tax Authority on behalf of such Consolidated Debtor and to sign, collect, negotiate, settle, and administer Tax payments, Tax refunds and Tax Returns.

(d)   Following the Effective Date, the FTX Recovery Trust shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any Taxes of the Consolidated Debtors to the same extent as the Consolidated Debtors would otherwise be entitled with respect to any taxable period.

(e)   The FTX Recovery Trust may request an expedited determination of Taxes of the Consolidated Debtors under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Consolidated Debtors for all taxable periods through the dissolution of the Consolidated Debtors. The FTX Recovery Trust may also request an expedited determination of Taxes of the FTX Recovery Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the FTX Recovery Trust for all taxable periods through the dissolution of the FTX Recovery Trust

10.5    <u>Withholding and Reporting Requirements</u>. The FTX Recovery Trust or any Distribution Agent, in the sole discretion of FTX Recovery Trust, may withhold and pay to the appropriate Tax Authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any Distribution to the FTX Recovery Trust Beneficiaries. All such amounts withheld and paid to the appropriate Tax Authority shall be treated as amounts Distributed to such holders for all purposes of the Plan and this Agreement. ~~To the extent an amount has been placed in escrow pending resolution of the need to withhold, and the FTX Recovery Trust determines that no withholding is required, such amounts shall be Distributed to the FTX Recovery Trust Beneficiaries with respect to whom such amounts were previously withheld.~~ The FTX Recovery Trust or any Distribution Agent shall be authorized to collect such tax information from the FTX Recovery Trust Beneficiaries (including social security numbers or other tax identification information) as it, in its sole discretion, deems necessary to effectuate the Plan and this Agreement. To that end, the FTX Recovery ~~Trust~~Trustee authorized by the FTX Recovery Trust may send to FTX Recovery Trust Beneficiaries a written communication requesting that the FTX Recovery Trust Beneficiaries provide certain tax information and the specifics of their holdings giving rise to their Claims to the extent the FTX Recovery Trust or any Distribution Agent deems reasonably or necessary appropriate to permit it to make Distributions (including completing the appropriate Internal Revenue Service Form W-8 or Internal Revenue Service Form W-9, as applicable to each holder). ~~The FTX Recovery Trust may refuse to make a Distribution to any FTX Recovery Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that, upon the delivery of such information by a FTX Recovery Trust Beneficiary, the FTX Recovery Trust shall make such Distribution(s) to which the FTX Recovery Trust Beneficiary is entitled, without interest; provided further that, if the holder fails to comply with such a request within six (6) months, (i) any pending Distribution(s) allocated to such FTX Recovery Trust Beneficiary shall be deemed an Unclaimed Distribution to be treated as such in accordance with the Plan; and (ii) the FTX Recovery Trust shall not be required to allocate any future Distributions to such holder unless and until the holder provides the requested tax information; and provided further that, if~~If the FTX Recovery Trust or any Distribution Agent fails to withhold in respect of amounts received or distributable with respect to any such holder and the FTX Recovery Trust is later held liable for the amount of such non-allocated future Distributions, such holder shall reimburse the FTX Recovery Trust or any Distribution Agent for such liability including interest, penalties, fines and other additional amounts with respect thereto. Notwithstanding the foregoing, each FTX Recovery Trust Beneficiary that receives a Distribution under the Plan shall have the sole and exclusive responsibility for the payment of any Taxes imposed by any governmental unit, including income, withholding and other Taxes, on account of such ~~distribution~~Distribution.

## ARTICLE XI
## LIMITATION OF LIABILITY AND INDEMNIFICATION

11.1    <u>Limitation of Liability</u>.

(a)    None of the Delaware Trustee, the FTX Recovery Trustees, the Plan Administrator, the FTX Recovery Trust Management, the FTX Recovery Trust Agents, the members of the Advisory Committee or their respective principals, advisors or professionals, shall be liable to the FTX Recovery Trust or any FTX Recovery Trust Beneficiary for any damages arising out of, or in connection with, the creation, operation or termination of the FTX Recovery Trust, including actions taken or omitted in fulfillment of his, her or its duties with respect to the FTX Recovery Trust, nor shall such parties incur any responsibility or liability by reason of any errors of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except as may be determined by Final Order to have arisen out of such party's ~~gross negligence, bad faith or~~ willful misconduct ~~(and, in the case of the Delaware Trustee, in the performance of its express duties under this Agreement)~~; provided, that in no event will any such party be liable for punitive, exemplary, consequential or special damages under any circumstances. ~~Furthermore, neither~~Any action taken or omitted to be taken in the case of the Delaware Trustee, the FTX Recovery Trustees, the FTX Recovery Trust Management, the members of the Advisory Committee ~~nor any~~or the FTX Recovery

Trustee Trust Agents with the express approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence or willful misconduct.  Furthermore, to the fullest extent permitted by applicable law, none of the Delaware Trustee, the FTX Recovery Trustees, the FTX Recovery Trust Management, the members of the Advisory Committee, or the FTX Recovery Trust Agents shall be liable to the FTX Recovery Trust or any FTX Recovery Trust Beneficiary for any action taken in good faith reliance upon the advice of FTX Recovery Trust Management or upon the advice of professionals retained by the FTX Recovery Trust.  Without limiting the generality of the foregoing, the Delaware Trustee and the FTX Recovery Trustees may rely without independent investigation and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Delaware Trustee or FTX Recovery Trustees to be genuine and to have been signed or presented by the proper party or parties having relevant authority or expertise, and shall have no liability for actions taken in reliance thereon. None of the provisions of this Agreement shall require the Delaware Trustee or the FTX Recovery Trustees to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their rights and powers.

(b)  None of the Delaware Trustee, the FTX Recovery Trustees, the FTX Recovery Trust Management, the members of the Advisory Committee or the FTX Recovery Trust Agents, when acting in such capacities, shall be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any person, other than the FTX Recovery Trust or the FTX Recovery Trust Beneficiaries,  in connection with the affairs of the FTX Recovery Trust to the fullest extent provided under section 3803 of the Trust Act, and all persons claiming against any of the Delaware Trustee, the FTX Recovery Trustees, the FTX Recovery Trust Management, the members of the Advisory Committee or the FTX Recovery Trust Agents, or otherwise asserting claims of any nature in connection with affairs of the FTX Recovery Trust, shall look solely to the FTX Recovery Trust Assets for satisfaction of any such claims.

(c)  Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, any FTX Recovery Trustee, the Plan Administrator, the FTX Recovery Trust Management, the members of the Advisory Committee or any FTX Recovery Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.

(d)  Any successors to the FTX Recovery Trustees, FTX Recovery Trust Management, or members of the Advisory Committee or newly retained FTX Recovery Trust Agents may accept and rely upon any accounting made by or on behalf of any predecessor FTX Recovery Trustees, FTX Recovery Trust Management, members of the Advisory Committee, or the FTX Recovery Trust Agents, and any statement or representation made as to the assets comprising the FTX Recovery Trust Assets or as to any other fact bearing upon the prior administration of the FTX Recovery Trust, so long as it has a good faith basis to do so. The FTX Recovery Trustees, FTX Recovery Trust Management, members of the Advisory Committee, and FTX Recovery Trust Agents shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. Any successor FTX Recovery Trustees, FTX Recovery Trust Management, members of the Advisory Committee or newly retained FTX Recovery Trust Agents shall not be liable for any act or omission of any predecessor FTX Recovery Trustees, FTX Recovery Trust Management, members of the Advisory Committee or FTX Recovery Trust Agents, nor have a duty to enforce any claims against any predecessor FTX Recovery Trustees, FTX Recovery Trust Management, members of the Advisory Committee or FTX Recovery Trust Agents on account of any such act or omission.

11.2    Indemnification.

(a)  The Delaware Trustee, the current and former FTX Recovery Trustees, the FTX Recovery Trust Management, the members of the Advisory Committee and their respective

affiliates, and the officers, directors, partners, managers, members, employees of, and agents, advisors, attorneys, accountants, independent contractors or other professionals engaged by, each of them, as the case may be (all persons so entitled to indemnification, collectively, the "**Covered Parties**," and each a "**Covered Party**"), shall be indemnified and held harmless, to the fullest extent permitted by law by the FTX Recovery Trust from and against any and all losses, claims, taxes, damages, reasonable expenses and liabilities (including liabilities under state or federal securities laws) of any kind and nature whatsoever (collectively, "**Liabilities**"), to the extent that such expenses arise out of or are imposed upon or asserted against such ~~indemnified persons~~Covered Parties with respect to the creation, operation or termination of the FTX Recovery Trust or the execution, delivery or performance of this Agreement or the transactions contemplated hereby and shall not be liable for actions taken or omitted in their capacity, as Delaware Trustee, FTX Recovery Trustees, the members of the Advisory Committee or FTX Recovery Trust Management, on behalf of, or in fulfillment of their duties with respect to, the FTX Recovery Trust, except those acts or omissions that are determined by Final Order to have arisen out of such party's ~~gross negligence, bad faith or~~ willful misconduct ~~(and, in the case of the Delaware Trustee, in the performance of its express duties under this Agreement)~~, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such persons and entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such persons or entities regarding the implementation or administration of the Plan Documents or the discharge of their respective duties hereunder or thereunder or in respect thereof, except for any actions or inactions that are determined by Final Order to have arisen out of their own ~~gross negligence, bad faith, or~~ willful misconduct.

(b)     The Covered Parties shall be entitled to ~~obtain advances~~prompt advancement from the FTX Recovery Trust to cover ~~their reasonable~~all losses, liabilities, damages, costs, fees, penalties and expenses ~~of~~(including attorneys' and experts' fees and expenses) incurred in connection with defending themselves ~~in~~against any action threatened or brought against them as a result of the acts or omissions, actual or alleged, of any such party in its capacity as such; _provided, however_, that the Covered Parties receiving such advances shall repay the amounts so advanced to the FTX Recovery Trust immediately upon the entry of a Final Order finding that such parties were not entitled to any indemnity under the provisions of this Section 11.2.

(c)     Any claim of the Covered Parties to be indemnified, held harmless, or reimbursed shall be satisfied solely from the FTX Recovery Trust Assets, bonds (if any) or any applicable insurance that the FTX Recovery Trust has purchased, as provided in Section 2.10. The rights of the Covered Parties under this Section 11.2 shall survive the resignation or removal of any FTX Recovery Trustee, the Delaware Trustee and the termination of this Agreement.

(d)     The FTX Recovery Trust may also determine to provide indemnification to FTX Recovery Trust Agents and their respective officers, directors, partners, managers, members, employees, agents, advisors, attorneys, accountants, independent contractors or other professionals, on such terms as the Board may determine, _provided_ that any claim for indemnification shall be satisfied solely from the FTX Recovery Trust Assets or insurance.

11.3     No Fiduciary or Other Duties. To the fullest extent permitted by law, including but not limited to sections 3806(c) and 3806(e) of the Trust Act, and notwithstanding any other provision of this Agreement (except as expressly provided in Sections 5.9 or 6.4) or applicable provisions of law or equity or otherwise, each Covered Party shall not owe any duties (including fiduciary duties), or have any obligations or be liable, to the FTX Recovery Trust, any FTX Recovery Trust Beneficiary, any other former or current FTX Recovery Trustee or any other person or entity whether party to or otherwise bound by this Agreement or not. A Covered Party acting or omitting to act under this Agreement shall not be liable to the FTX Recovery Trust, the FTX Recovery Trust Beneficiaries, any current or former FTX Recovery Trustee, any other Covered Party, or any other person or entity whether party to or otherwise bound by this Agreement or not (i) for his, her or its good faith reliance on the provisions of this Agreement; (ii) for his, her or its good faith reliance upon

the records of the FTX Recovery Trust and upon information, opinions, reports or statements presented by another Covered Party and (iii) to the extent applicable, with respect to the selection, supervision, removal, decisions or actions of, or to exercise or perform the rights, powers or duties of, an officer, employee, manager or other person appointed or selected to act on behalf of the FTX Recovery Trust in accordance with this Agreement. The provisions of this Agreement, to the extent that they restrict the duties (including fiduciary duties), obligations and liabilities of a Covered Party otherwise existing at law or in equity, shall replace such other duties and liabilities of such Covered Party. The provisions of this Section 11.3 shall survive any termination of this Agreement or dissolution of the FTX Recovery Trust.

**ARTICLE XII**
**DURATION OF FTX RECOVERY TRUST**

12.1    <u>Duration</u>.

(a)     The FTX Recovery Trust shall dissolve upon the date that is the earliest to occur of: (i) the ~~distribution~~Distribution of all FTX Recovery Trust Assets pursuant to the Plan Documents, (ii) the determination of the Board that the administration of the FTX Recovery Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (iii) all the Distributions required to be made under this Agreement have been completed; <u>provided</u>, <u>however</u>, that in no event shall the FTX Recovery Trust dissolve later than five (5) years from the Effective Date, unless the Bankruptcy Court determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the FTX Recovery Trust Assets (without the need for a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes). Upon dissolution, the Board shall wind up and liquidate the FTX Recovery Trust in accordance with section 3808 of the Trust Act and, at the direction of the Board, the FTX Recovery Trustees (without the need for the Delaware ~~Trustee~~Trustee's consent or signature) shall file a ~~Certificate of Cancellation~~certificate of cancellation in accordance with section 3810(d) of the Trust Act and shall forward a certified copy of such filed certificate of cancellation to the Delaware Trustee, and thereupon this Agreement shall terminate.

(b)     If at any time the Board determines that the expense of administering the FTX Recovery Trust, including the making of a final ~~distribution~~Distribution to the FTX Recovery Trust Beneficiaries, is likely to exceed the value of the assets remaining in the FTX Recovery Trust, the Board may apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to dissolve the FTX Recovery Trust, (ii) donate any balance to an organization selected by the Board which is described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in <u>Section 2.8(b)</u> hereof, and (iii) dissolve the FTX Recovery Trust.

12.2    <u>Post-Termination</u>. After the dissolution of the FTX Recovery Trust and solely for the purpose of liquidating and winding up the affairs of the FTX Recovery Trust, the FTX Recovery Trustees and the members of the Advisory Committee shall continue to act as such until their duties have been fully performed. Upon ~~distribution~~Distribution of all the FTX Recovery Trust Assets, the Board shall designate a FTX Recovery Trust Agent to retain all books and records pertaining to the Consolidated Debtors or the FTX Recovery Trust that have been delivered to or created by the FTX Recovery Trust, subject to the provisions of <u>Section 12.3</u>.

12.3    <u>Destruction of Books and Records</u>. If so determined by the Board, or absent such determination, in the discretion of the FTX Recovery Trust Agent appointed pursuant to <u>Section 12.2</u>, all books and records pertaining to the Consolidated Debtors or the FTX Recovery Trust that have been delivered to or created by the FTX Recovery Trust may be destroyed at any time following (x) the date that is six (6) years after the final ~~distribution~~Distribution of FTX Recovery Trust Assets (unless such records and documents are necessary to fulfill the FTX Recovery Trust's remaining

obligations) subject to the terms of any joint prosecution and common interests agreement(s) to which the FTX Recovery Trust may be a party, or (y) such earlier date as may approved by order of the Bankruptcy Court on application of the FTX Recovery Trust; provided, however, that the FTX Recovery Trust shall obtain an order of the Bankruptcy Court before disposing of any books and records that are reasonably likely to pertain to pending litigation in which the Consolidated Debtors or their current or former officers or directors are a party.

12.4    Discharge. Except as otherwise specifically provided herein, upon the final distributionDistribution of FTX Recovery Trust Assets and the filing by the Delaware Trustee of a Certificate of Cancellationcertificate of cancellation with the Secretary of State of the State of Delaware, the Delaware Trustee and the FTX Recovery Trustees shall be deemed discharged and have no further duties or obligations hereunder, the FTX Recovery Trust Interests shall be cancelled and the FTX Recovery Trust will be deemed to have been dissolved. In the event that there are FTX Recovery Trust Assets at the termination of the FTX Recovery Trust, the Board shall cause to be donated such FTX Recovery Trust Assets to a charitable organization of the Board's choice described in section 501(c)(3) of the Tax Code and exempt from United States federal income tax under section 501(a) of the Tax Code, as provided in Section 2.8(b).

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without reference to conflicts of law).

13.2    Jurisdiction. Subject to the proviso below, and to the fullest extent permitted by law, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the FTX Recovery Trust, including, without limitation, the administration and activities of the FTX Recovery Trust, provided, however, that notwithstanding the foregoing or anything to the contrary set forth in the Plan, the Board shall have power and authority to bring (or cause to be brought) any action in any court of competent jurisdiction to prosecute any FTX Recovery Trust Causes of Action.

13.3    Waiver of Jury Trial. The Delaware Trustee hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement.

13.4    13.3 Severability. In the event that any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

13.5    13.4 Notices. Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile, sent by nationally recognized overnight delivery service, or mailed by first-class mail:

(i)    if to the Delaware Trustee, to:

Wilmington Trust, National Association
1100 N Market Street
Wilmington, DE 19801
Attention: FTX Recovery Trust Administrator

[•]
[•]
Attention: [•]
With a copy (which shall not constitute notice) to:
Morris James LLP
Attn: Ross Antonacci (RAntonacci@morrisjames.com)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

(ii)     if to the FTX Recovery Trust, to:

FTX Recovery Trust
c/o Sullivan & Cromwell, LLP
125 Broad Street
New York, New York 10004-249810004
Attention:  Andrew G. Dietderich, James, L. Bromley, Brian D. Glueckstein and Alexa J. Kranzley
E-mail address:  dietdericha@sullcrom.com, bromleyj@sullcrom.com, gluecksteinb@sullcrom.com, and kranzleya@sullcrom.com

and

FTX Recovery Trust
2600 South Shore Blvd, Suite 300
League City, TX 77573
USA
United States
Attention: FTX Mail RoomMary Cilia
Email: mcilia@rlks.net

With a copy (which shall not constitute notice) to:
Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
United Kingdom
Attention: Evan S. Simpson
Email: simpsone@sullcrom.com

(iii)     if to any FTX Recovery Trust Beneficiary, to the last known address and/or last known email address of such FTX Recovery Trust Beneficiary according to the records of the FTX Recovery Trust; and

(iv)     if to the Advisory Committee, to such person at such address as provided to the FTX Recovery Trust by the Advisory Committee in accordance with Section 6.1(e).

13.6     13.5 Headings. The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

13.7     13.6 Plan Documents. Nothing contained herein shall modify the terms of any other Plan Document, which are intended to be supplemented by the terms of this Agreement. However, to the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Agreement with respect to the FTX Recovery Trust, then the terms of this Agreement shall govern.

13.8   ~~13.7~~ Control Over Debtors. Following the Effective Date, for so long as any Consolidated Debtor has not been legally dissolved in accordance with applicable provisions of law, the FTX Recovery Trust shall have complete and exclusive control over, and rights of management in respect of, such Consolidated Debtor and its assets in accordance with the Plan, irrespective of whether the equity interests of such Consolidated Debtor continue to subsist or have been formally transferred to the FTX Recovery Trust, and no other person shall have the right to control, manage, or direct the affairs or enforce any rights of such Consolidated Debtor, or any of its assets, for any reason or purpose.

13.9   ~~13.8~~ Confidentiality. The Trustees, the FTX Recovery Trust Management and the FTX Recovery Trust Agents, and their respective officers, directors, partners, managers, members and employees (the "**Confidentiality Parties**"), shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidentiality Party of or pertaining to the Consolidated Debtors, the FTX Recovery Trust, the FTX Recovery Trust Beneficiaries or the FTX Recovery Trust Assets; provided, however, that such information may be disclosed if:

(i)    it is now or in the future becomes generally available to the public other than as a result of a disclosure by any of the Confidentiality Parties;

(ii)   such disclosure is required of any of the Confidentiality Parties pursuant to legal process, including subpoena or other court order or other applicable laws or regulations; or

(iii)  the Board determines that such disclosure is in the interests of the FTX Recovery Trust or the FTX Recovery Trust Beneficiaries.

13.10   ~~13.9~~ Entire Agreement. This Agreement, the Plan Administration Agreement, the Plan and the Confirmation Order contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof. In the event of any conflict between this Agreement and the Plan Administration Agreement, the latter shall prevail.

13.11   ~~13.10~~ Named Party. In pursuing any Avoidance Actions, and/or other FTX Recovery Trust Causes of Action, or in disposing of any FTX Recovery Trust Assets, or otherwise administering the FTX Recovery Trust or any FTX Recovery Trust Assets, including, without limitation, the execution of documents, such as bills of sale, releases, and agreements, the Board may authorize the pursuit of such matters and/or execution of any such documents in the name of "FTX Recovery Trust" or in such other names or such representative capacities as necessary or appropriate.

13.12   ~~13.11~~ Amendment. This Agreement may be amended with the Supermajority Approval of the Board; provided, however, that Bankruptcy Court approval shall be required for any changes or amendments to this Agreement that are inconsistent with the terms of the Plan or the Confirmation Order; provided, further, that any amendment to this Agreement regarding the Advisory Committee or the Appointed Director shall require approval of the Advisory Committee. Notwithstanding this Section 13.11 no amendments to this Agreement shall be inconsistent with the purpose and intention of the FTX Recovery Trust to liquidate in an orderly manner the FTX Recovery Trust Assets (which will maximize the value of such assets) in accordance with Treasury Regulations section 301.7701-4(d). In the event that the FTX Recovery Trust shall fail or cease to qualify as a "liquidating trust" in accordance with Treasury Regulations section 301.7701-4(d), this Agreement may be amended by the Board to the extent necessary to take such action as the Board deem appropriate to have the FTX Recovery Trust classified as a partnership for federal tax purposes under Treasury Regulations section 301.7701-3 (but not a publicly traded partnership under section 7704 of the Tax Code), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company that is so classified. Any amendment to this

Agreement shall be posted on the FTX Recovery Trust Website as promptly as practicable after the adoption thereof. No such amendment shall affect the rights, protections, immunities, indemnities, duties or obligations of the Delaware Trustee hereunder without the written consent of the Delaware Trustee.

13.13 ~~13.12~~ Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed original, but such counterparts shall together constitute one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**FTX TRADING LTD. AND THE OTHER DEBTORS LISTED ON SCHEDULE 1 HERETO**

By: _____
Name:  John J. Ray III
Title:   Chief Executive Officer


**[•]WILMINGTON            TRUST,            NATIONAL ASSOCIATION, AS DELAWARE TRUSTEE**

By: _____
Name:  [•]
Title:   [•]


**FTX RECOVERY TRUSTEES:**


_____
Name:  Matthew A. Doheny


_____
Name:  Judge Joseph Farnan


_____
Name:  Peter Greaves


_____
Name:  Rishi Jain


_____
Name:  John J. Ray III


_____
Name:  Matthew Rosenberg


_____
Name:  Brian C. Simms, KC


_____
Name:  Mitchell Sonkin


_____
Name:  Paul  Copley


41

## SCHEDULE 1[2]

## LIST OF CONSOLIDATED DEBTORS

1. FTX Trading Ltd.
2. Alameda Research LLC
3. Alameda Research Ltd
4. Alameda Research Holdings Inc.
5. Clifton Bay Investments LLC
6. West Realm Shires Services Inc.
7. West Realm Shires Financial Services Inc.
8. LT Baskets Ltd.
9. Alameda TR Ltd
10. Allston Way Ltd
11. Atlantis Technology Ltd.
12. Bancroft Way Ltd
13. Blue Ridge Ltd
14. Cardinal Ventures Ltd
15. Cedar Bay Ltd
16. Maclaurin Investments Ltd.
17. Mangrove Cay Ltd
18. Paper Bird Inc
19. Pioneer Street Inc.
20. Strategy Ark Collective Ltd.
21. Technology Services Bahamas Limited
22. Verdant Canyon Capital LLC
23. West Innovative Barista Ltd.
24. Western Concord Enterprises Ltd.
25. FTX Equity Record Holdings Ltd
26. FTX Hong Kong Ltd
27. Alameda Research (Bahamas) Ltd
28. Alameda Research KK
29. Alameda Research Yankari Ltd
30. Alameda TR Systems S. de R. L.
31. Blockfolio, Inc.
32. Clifton Bay Investments Ltd
33. Cottonwood Grove Ltd
34. Crypto Bahamas LLC
35. Deep Creek Ltd
36. Digital Custody Inc.
37. FTX (Gibraltar) Ltd
38. FTX Canada Inc
39. FTX Digital Holdings (Singapore) Pte Ltd
40. FTX Services Solutions Ltd.
41. FTX Zuma Ltd
42. Global Compass Dynamics Ltd.
43. Goodman Investments Ltd.

---

[2]    **Note to Draft**: To be kept up to date for removal of any Consolidated Debtors that may have been sold or dismissed accurate as of the Effective Date.

44. Hawaii Digital Assets Inc.
45. Island Bay Ventures Inc
46. Killarney Lake Investments Ltd
47. Alameda Global Services Ltd.
48. Cottonwood Technologies Ltd
49. Deck Technologies Holdings LLC
50. Deck Technologies Inc.
51. Euclid Way Ltd
52. FTX Digital Assets LLC
53. FTX EMEA Ltd.
54. FTX US Trading, Inc.
55. Hive Empire Trading Pty Ltd
56. North Dimension Inc
57. North Wireless Dimension Inc.
58. LedgerPrime Bitcoin Yield Enhancement Master Fund LP
59. LedgerPrime Ventures, LP
60. North Dimension Ltd
61. Quoine Pte Ltd
62. Cedar Grove Technology Services, Ltd.
63. FTX Lend Inc.
64. FTX Marketplace, Inc.
65. FTX US Services, Inc.
66. FTX Ventures Ltd.
67. GG Trading Terminal Ltd
68. Good Luck Games, LLC
69. Hannam Group Inc
70. Hilltop Technology Services LLC
71. LedgerPrime Bitcoin Yield Enhancement Fund, LLC
72. West Realm Shires Inc.

**SCHEDULE 2**

**EXPRESS POWERS OF THE BOARD**

Subject to the terms of the Plan, the Confirmation Order, this Agreement (including, without limitation, Section 6.2(a)) and the Plan Administration Agreement, the Board shall have the express power (but not the obligation):

(a)    to comply with the Plan, Confirmation Order, this Agreement and the obligations thereunder and enforce the terms and performance of obligations under the Plan, the Confirmation Order and this Agreement and the performance of other provisions under the Plan, the Confirmation Order and this Agreement;

(b)    to determine the Initial Distribution Date, each Subsequent Distribution Date and each Distribution Record Date, and to extend the Claims Objection Deadline;

(c)    to establish Pre-Distribution Requirements in accordance with Section 7.14 (*Tax Identification, KYC and OFAC Certifications*) of the Plan and verify compliance by Holders with such Pre-Distribution Requirements;

(d)    to establish requirements and procedures for the Distribution of Available NFTs in accordance with Section 7.15 (*Distribution of Available NFTs*) of the Plan and verify compliance by Holders of NFT Customer Entitlement Claims with such requirements;

(e)    to calculate, make, or cause the Distribution Agent to make, Distributions under the Plan, including, for the avoidance of doubt, to the FTX Recovery Trust Beneficiaries, and take all steps and execute all instruments and documents necessary to make, or cause the Distribution Agent to make, such Distributions, and comply with all regulatory and withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority;

(f)    to engage, and enter into agreements, with one or more Distribution Agents to facilitate the Distributions under the Plan, and to perform under any such Distribution Services Agreements;

(g)    to engage, appoint, review, supervise, remove, replace and determine the compensation payable to FTX Recovery Trust Management and FTX Recovery Trust Agents;

(h)    to remove and replace the Delaware Trustee;

(i)    to enter into, and to perform under, the Plan Administration Agreement;

(j)    to determine compensation for the Plan Administrator;

(k)    to act as a signatory on behalf of the Consolidated Debtors, pursuant to and in accordance with this Agreement, and of the non-Consolidated Debtors, pursuant to and in accordance with such corporate actions of the non-Consolidated Debtors to that effect, for all purposes, including those associated with the novation of contracts or other obligations arising out of the sale or other disposition of the Consolidated Debtors' or of the non-Consolidated Debtors' assets, as applicable;

(l)    to set off amounts owed to the Consolidated Debtors against Distributions to FTX Recovery Trust Beneficiaries;

(m)    to comply with the FTX DM Global Settlement Agreement and the obligations thereunder;

(n)     ~~(m)~~ to ~~advance~~pay Cash or other assets to FTX DM ~~to~~according to the FTX DM Global Settlement Agreement including among other things to pay distributions to holders of Eligible DM Customer Entitlement Claims ~~in accordance with the FTX DM Global Settlement Agreement and distribute Cash to FTX DM for the benefit of holders of Eligible DM Customer Entitlement Claims that have made the Bahamas Opt-In Election in accordance with the FTX DM Global Settlement Agreement;~~;

(o)     ~~(n)~~ to administer, reconcile, Allow, object to, prosecute such objections, compromise, settle or litigate to resolution all Claims (as defined in the Plan) and Interests as provided in the Plan, including any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claim or Interest, and take any and all other actions pursuant to Sections 7.12 (*Anti-Double Dip*), 8.8 (*Administration Responsibilities*) and 8.9 (*Claims Paid or Payable by Third Parties*) of the Plan, including, for the avoidance of doubt, with respect to Claims against the FTX Recovery Trust;

(p)     ~~(o)~~ to administer and adjust, or cause to be administered and adjusted, the Claims Register, and to engage Kroll Restructuring Administration LLC as agent for the purposes of keeping track of, and record in the Claims Register, the FTX Recovery Trust Beneficiaries and the FTX Recovery Trust Interests (the "**Notice and Claims Agent**"), or any other relevant notice and claims agent from time to time;

(q)     ~~(p)~~ to prosecute, investigate, settle, liquidate, dispose of, and/or abandon the Plan Assets (or FTX Recovery Trust Assets, as applicable), including any rights, any and all Causes of Action, Avoidance Actions, on behalf of the Debtors and the FTX Recovery Trust, including any FTX Recovery Trust Assets which the Board or the Person duly delegated by the Board determines in its reasonable discretion to be of *de minimis* value or burdensome to the FTX Recovery Trust, and to elect not to pursue any Cause of Action and determine whether and when to compromise, settle, abandon, withdraw, dismiss, dispose of or otherwise resolve any Cause of Action;

(r)     ~~(q)~~ to contribute all or a portion of the FTX Recovery Trust Assets to an entity that is (i) wholly owned by the FTX Recovery Trust and (ii) treated as a corporation for United States federal income tax purposes provided that, the FTX Recovery Trust shall evaluate any such transfer based on the relative tax costs and other tax consequences to the FTX Recovery Trust Beneficiaries of contributing such assets as compared to if such assets were not contributed to such entities;

(s)     ~~(r)~~ to establish, replenish, release, maintain and administer any reserves as provided in the Plan, as applicable, including the Disputed Claims Reserve pursuant to Section 8.5 (*Disputed Claims Reserve*) of the Plan, and to settle or otherwise resolve Disputed Claims;

(t)     ~~(s)~~ to disburse funds in the Professional Fee Escrow Account;

(u)     ~~(t)~~ to represent the interests of the Debtors and the Estates in any pending or newly commenced litigation, including any governmental litigation and investigations against or involving the Debtors or the FTX Recovery Trust and any related mediations and arbitrations;

(v)     ~~(u)~~ to oversee Tax and regulatory compliance matters, including (i) filing of applicable Tax Returns and all other appropriate or necessary tax documents or any other documents in accordance with applicable law, statute or regulation for any of the Debtors or the FTX Recovery Trust, as applicable and including, for the FTX Recovery Trust, filing Tax Returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (ii) representing the interests of the Debtors or the FTX Recovery Trust, as applicable, before any taxing or regulatory authority in all matters, including in any action, suit, proceeding, or audit, (iii) taking all actions necessary and appropriate to minimize any adverse Tax consequences to the holders of unsecured Allowed Claims; provided that

such actions do not result in an adverse Tax consequence to the FTX Recovery Trust or to any Wind Down Entity;

(w) ~~(v)~~ to bring suits or defend itself against such suits, if any, in connection with any matter arising from or related to the Plan, the Confirmation Order, the FTX Recovery Trust or the Plan Administration Agreement that affects in any way the rights or obligations of the FTX Recovery Trust or the FTX Recovery Trust Beneficiaries;

(x) ~~(w)~~ to maintain or close any existing bank accounts of the Debtors and establish, maintain or close any new bank account in the name of the Debtors or the FTX Recovery Trust;

(y) ~~(x)~~ to liquidate, receive, hold, invest, dispose of, supervise, protect, manage, convert to Cash, sell and distribute the Plan Assets (including, with respect to the FTX Recovery Trust Assets, for the benefit of the FTX Recovery Trust Beneficiaries) and the Supplemental Remission Fund, including to make equity contributions to Debtor and non-Debtor Affiliates with Plan Assets and convert into equity any prepetition or postpetition Intercompany Claims held by any Debtor that is not cancelled, released or otherwise settled in full pursuant to the Plan, in each case, to effectuate or facilitate the wind down and dissolution of any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries either prior to, on or after the Effective Date;

(z) ~~(y)~~ to invest the Cash of the Wind Down Entities, including Wind Down Cash Proceeds, and any income earned thereon, in (ii) direct obligations on the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, (ii) short term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof or (iii) any other investments that may be permissible under (x) section 345 of the Bankruptcy Code or (y) any order of the Bankruptcy Court entered in the Chapter 11 Cases;

(aa) ~~(z)~~ to invest FTX Recovery Trust Assets (including any earnings thereon or proceeds therefrom) in the manner permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities, including Revenue Procedure 94-45, 1994-2 C.B. 684; provided, however, that the Board shall only authorize investments that are temporary investments in short-term government securities, time deposits, certificates of deposit, bankers' acceptances, commercial paper and money market funds or similar temporary, liquid, short-term investments;

(bb) ~~(aa)~~ to maintain the books, records and accounts of the FTX Recovery Trust and the Debtors;

(cc) ~~(bb)~~ to prepare and disseminate reports in accordance with Section 8.5 of this Agreement;

(dd) ~~(cc)~~ to manage and administer the FTX Recovery Trust, the Excluded Entities, any direct or indirect subsidiaries of the Debtors or the FTX Recovery Trust and pay all fees, expenses, debts, charges, and liabilities of the such entities or otherwise incurred in carrying out its powers and duties, including to allocate and pay all Administrative Claims, and other fees and expenses in accordance with Article 3 (*Administrative Expense Claims*) of the Plan;

(ee) ~~(dd)~~ to establish and administer the Administrative Expenses Set Aside;

(ff) ~~(ee)~~ to (i) utilize Plan Assets to obtain, purchase, create, maintain and carry all insurance policies, including director and officer liability insurance, including, utilizing FTX Recovery Trust Assets, any appropriate tail coverage, for the Delaware Trustee, the Board, the FTX Recovery Trust Management and their officers, directors, partners, managers, members, employees or

agents, including, but not limited to, coverage with respect to the liabilities, duties, and obligations of the Delaware Trustee, the Board and the FTX Recovery Trust Management and their officers, directors, partners, managers, members, employees and agents under this Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Board after the termination of this Agreement, and (ii) pay all insurance premiums and costs the Plan Administrator deems necessary in its sole discretion, including all insurance coverage for the Exculpated Parties;

(gg)    (ff)  to retain and renew any and all insurance policies of the Debtors providing coverage with respect to any claims;

(hh)    (gg)  to take all actions related to the implementation and consummation of all settlements incorporated into the Plan, including, but not limited to, the Global Settlement, the FTX DM Global Settlement Agreement, the IRS Settlement;

(ii)    (hh)  to take all actions related to the closing of the Chapter 11 Cases, including seeking entry of a final decree in each of the Chapter 11 Cases, liquidating any remaining or later-discovered Plan Assets, taking all actions necessary, and creating any documents necessary, to wind up the affairs of the Debtors in accordance or consistent with the terms of the Plan, and filing any required documents;

(jj)    (ii)  to take all actions to execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, in accordance with the terms of the Plan, the Confirmation Order, this Agreement and the Plan Administration Agreement; and

(kk)    (jj)  to exercise such other powers and authority as may be vested in the Plan Administrator pursuant to the Plan, this Agreement, this Agreement or any other order of the Bankruptcy Court, including the Confirmation Order, or otherwise act on behalf of the FTX Recovery Trust and the Debtors from and after the Effective Date.

**SCHEDULE 3**

**FORM OF**
**CERTIFICATE OF TRUST**
**OF**
**FTX RECOVERY TRUST**

This Certificate of Trust of FTX RECOVERY TRUST (the "**Trust**") is being duly executed and filed on behalf of the Trust by the undersigned, as trustees, to form a statutory trust under the Delaware Statutory Trust Act (12 *Del. C. § 3801 et seq.) (*the "**Act**").

1.     Name. The name of the statutory trust formed hereby is FTX RECOVERY TRUST

2.     Resident Trustee.  The name and the business address of a trustee of the Trust having a principal place of business in the State of Delaware are Wilmington Trust, National Association, Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19801, Attention:  FTX Recovery Trust Administrator.

Effective Date.  This Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned have duly executed this Certificate of Trust in accordance with Section 381l(a)(l) of the Act.


**DELAWARE TRUSTEE**:

WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity but solely as Delaware Trustee


By: _____
Name:
Title:


**FTX RECOVERY TRUSTEES:**


_____
Name:  Matthew A. Doheny


_____
Name:  Judge Joseph Farnan


_____
Name:  Peter Greaves


_____
Name:  Rishi Jain

_____
Name:  John J. Ray III

_____
Name:  Matthew Rosenberg

_____
Name:  Brian C. Simms, KC

_____
Name:  Mitchell Sonkin

_____
Name:  Paul Copley

**EXHIBIT A**

**DELAWARE TRUSTEE FEE AGREEMENT**

[•]