<pre>
 1                        UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD.,             .
     et al.,                       .  (Jointly Administered)
 5                                 .
                                   .  Courtroom No. 5
 6                                 .  824 Market Street
                Debtors.          .  Wilmington, Delaware 19801
 7                                 .
                                   .  Tuesday, October 1, 2024
 8   . . . . . . . . . . . . . .   2:00 p.m.

 9                      TRANSCRIPT OF ZOOM HEARING
                    BEFORE THE HONORABLE JOHN T. DORSEY
10                     UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors and
     Debtors-in-Possession:   Adam G. Landis, Esquire
13                            LANDIS RATH & COBB, LLP
                              919 Market Street
14                            Suite 1800
                              Wilmington, Delaware 19801
15
                              -and-
16
                              Brian D. Glueckstein, Esquire
17                            SULLIVAN & CROMWELL, LLP
                              125 Broad Street
18                            New York, New York 10004

19   (APPEARANCES CONTINUED)

20   Audio Operator:          Jermaine Cooper, ECRO

21   Transcription Company:   Reliable
                              The Nemours Building
22                            1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
23                            Telephone: (302)654-8080
                              Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

APPEARANCES (CONTINUED):

For LayerZero Group:        William D. Dalsen, Esquire
                            PROSKAUER ROSE, LLP
                            One International Place
                            Boston, Massachusetts 02110

1                            INDEX

2   MOTIONS:                                              PAGE

3   Agenda
    Item 1:    Motion of Debtors for Entry of an Order          4
4              Quashing the LayerZero Parties' Notice of
               Deposition of John J. Ray III
5              [D.I. 25637, filed on September 23, 2024]

6              Court's Ruling:                                 26

7   Agenda
    Item 2:    Debtors' Motion for Leave to File Reply to      29
8              LayerZero Group's Opposition to FTX Trading's
               Motion for Entry of an Order Quashing the
9              Notice of Deposition of John J. Ray III
               [D.I. 26047, filed on September 30, 2024]
10
               Court's Ruling:                                 29
11

12  Transcriptionists' Certificate                            30

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced at 2:00 p.m.)

2              THE COURT:  Good afternoon, this is Judge Dorsey.

3  We're on the record in FTX Trading LTD, Case Number 22-11068.

4  This was debtors' motion to quash notice of deposition.

5              Mr. Landis or Mr. Glueckstein --

6              MR. LANDIS:  That's correct, Your Honor.  Good

7  afternoon and may it please the Court, Adam Landis from

8  Landis Rath & Cobb on behalf of FTX Trading LTD and its

9  related debtors.  We filed an amended notice of agenda for

10  this hearing yesterday and I hope Your Honor has all the

11  documents.  We have two matters going forward today:

12  Number 1 is the motion of the debtors for the entry of the

13  order quashing the LayerZero Parties' notice of deposition,

14  and a housekeeping matter at Item 2 in connection with the

15  debtors' motion for leave to file a reply to LayerZero's

16  opposition to the motion.

17              With that, I would cede the virtual podium to Mr.

18  Glueckstein, who will argue the motion.

19              THE COURT:  All right.  Mr. Glueckstein?

20              MR. GLUECKSTEIN:  Thank you, Your Honor, good

21  afternoon; for the record, Brian Glueckstein, Sullivan &

22  Cromwell for the debtors.

23              Your Honor, LayerZero has filed primarily a legal

24  objection to the debtors' plan, which will be addressed at

25  the confirmation hearing next week, effectively whether the

1  debtors were somehow required to make its customer preference

2  settlement offer available to the LayerZero Parties.  The

3  LayerZero Parties are defendants in an adversary proceeding

4  that they are, frankly, upset that's being pursued.  That

5  litigation includes, among other claims, preference claims,

6  and will be adjudicated on its merits, if not resolved on

7  terms acceptable to the debtors.

8          In a flawed attempt to improve their leverage with

9  respect to the adversary proceeding, the LayerZero Parties

10  filed a meritless objection to the plan confirmation that we

11  will address next week, and then sought to burden the

12  debtors' CEO, Mr. John Ray, with a deposition on the eve of

13  the confirmation hearing.

14          Your Honor, LayerZero's true colors were exposed

15  when after first attempting to depose Mr. Ray in the

16  adversary proceeding, prior to completion of the document

17  production in that case, about subjects he knew nothing

18  about, LayerZero abandoned that effort and just three hours

19  later issued a new notice for Mr. Ray's deposition, this time

20  purportedly in furtherance of their plan objection.

21          The debtors made clear in meet-and-confer

22  discussions that Mr. Ray would not be called as a witness at

23  next week's confirmation hearing, and that the debtors

24  intended to reply on another -- intended to rely on another

25  witness for any testimony concerning the customer preference

1  settlement that's at issue in the LayerZero objection.  In

2  fact, we have now filed our witness and exhibit lists for

3  next week's confirmation hearing and Mr. Ray is not on it.

4  LayerZero, nonetheless, stands on its deposition notice to

5  Mr. Ray, which necessitated this motion.

6          LayerZero also noticed a deposition pursuant to

7  Rule 30(b)(6) to the debtors with respect to its plan

8  objection, focused on the customer preference settlement and

9  related plan provisions.  That deposition occurred earlier

10  today with Mr. Steve Coverick of Alvarez & Marsal serving as

11  the debtors' corporate representative.  Mr. Coverick is also

12  the witness the debtors put forward and will put forward at

13  next week's confirmation hearing offering testimony in a

14  confirmation declaration filed with the Court yesterday with

15  respect to, among other things, the customer preference

16  settlement that is the focus of the LayerZero Parties'

17  objection.

18          Mr. Coverick testified on behalf of the debtors as

19  to all relevant issues, and also confirmed that he had

20  personal knowledge and was present at the negotiations of the

21  customer preference settlement.  He also explained under oath

22  this morning the criteria and process used by the debtors to

23  determine who would receive customer preference settlement

24  offers and who would not.  Even now, LayerZero continues to

25  maintain it needs to depose Mr. Ray with respect to, as they

1   put it, why the LayerZero Parties were excluded from the

2   offer of the customer preference claim settlement; we

3   respectfully disagree.  Putting aside for now the issue of

4   whether it's even relevant why the LayerZero Parties did not

5   receive a settlement offer, the relevant questions were

6   answered by Mr. Coverick in any event.

7            The reasons for the debtors' retaining their

8   preference claim settlement against LayerZero are both clear

9   from the public record and now have been explained by Mr.

10  Coverick on behalf of the debtors.

11           In short, the preference claims against LayerZero

12  satisfy the criteria, heavily negotiated with the debtors'

13  creditor constituencies and detailed in Section 5.5 of the

14  plan, including that the debtors have other litigation claims

15  that have been asserted against LayerZero and its affiliates,

16  as defined in the Bankruptcy Code.  In such circumstances,

17  the debtors determined, as with other litigation defendants,

18  that they were not prepared to offer to settle their

19  preference claims on a stand-alone basis at this time.  Yet

20  LayerZero continues to demand Mr. Ray's deposition by

21  attempting to argue in their opposition brief that the Apex

22  Doctrine somehow requires the debtors to prove that Mr. Ray

23  both does not have superior or unique knowledge and that

24  there are other, less burdensome sources for discovery, and

25  we submit that's completely backwards.

1          Well-established Apex Doctrine law protects

2    burdensome or harassing discovery from Mr. Ray unless

3    LayerZero can rebut the presumption against a deposition by

4    showing, one, that Mr. Ray has superior knowledge of the

5    facts alleged; and, two, why the information sought could not

6    be obtained from less burdensome means.  LayerZero has failed

7    to provide any legitimate reason why Mr. Ray has superior or

8    unique knowledge of an issue on which the debtors are relying

9    on Mr. Coverick for testimony at the confirmation hearing,

10   particularly when combined with the circumstances on which

11   the notice was issued, within hours of filing and abandoning

12   an improper deposition in the adversary proceeding.  The

13   deposition should be quashed on this basis alone.

14          LayerZero seems to rely on the fact that Mr. Ray

15   was the corporate representative present for the relevant

16   negotiations, that he signed the plan and/or had a role in

17   approving the customer priority settlement.  The case law,

18   Your Honor, is clear that none of those standing alone

19   justify an Apex deposition of the debtors' chief executive

20   officer.  It's addressed squarely in the Ford case cited in

21   our papers, 2011 WL 677331, which reviewed the Apex Doctrine

22   standard used by courts in the Third Circuit and specifically

23   held that, with respect to Mr. Ford, neither signing nor

24   approving an agreement rose to the level of superior

25   knowledge without a showing of more.

1       Mr. Coverick is as knowledgeable as Mr. Ray on the

2  issues of why the debtors made the preference settlement

3  offers it did to some, but not others, and how the criteria

4  for making those offers was negotiated with the creditors

5  committee and the ad hoc committee, other stakeholders, and

6  as he testified this morning.  LayerZero fails to explain why

7  they could not obtain everything they are entitled to through

8  the just-completed deposition of Mr. Coverick, both as

9  a 30(b)(6) witness and in his capacity as a declarant on

10  behalf of the debtors.

11       Courts repeatedly apply the Apex Doctrine to bar

12  depositions where relevant means can be obtained -- where

13  relevant testimony can be obtained through less burdensome

14  means, including through a 30(b)(6) deposition.  And we cite

15  cases to that effect including the Reif case, 248 F.R.D. 448,

16  in our papers.

17       Your Honor, in sum, LayerZero does nothing to

18  overcome the presumption that the deposition is an undue

19  burden on the debtors and Mr. Ray.  Mr. Ray is leading every

20  aspect, as the Court is aware, of these very complex

21  Chapter 11 cases, including overseeing the preparation for

22  the confirmation hearing that will be held before Your Honor

23  in less than six days.  Mr. Ray should not be burdened at

24  this critical juncture by an unnecessary, harassing

25  deposition that will not add anything to Mr. Coverick's

1   submitted declaration and his testimony today.  LayerZero has

2   not submitted any evidence or other materials to the Court to

3   establish that Mr. Ray has the necessary relevant superior

4   knowledge for the Court to consider an Apex deposition taking

5   place on this schedule.

6           So with that, Your Honor, we submit the Court

7   should grant the motion and quash the deposition notice to

8   Mr. Ray, and I'm happy to answer any questions.

9           THE COURT:  No questions at this time.

10          Mr. Dalsen?

11          MR. DALSEN:  Thank you, Your Honor.  Good

12  afternoon, may it please the Court.

13          Your Honor, the reason the deposition must go

14  forward is because FTX's 30(b)(6) witness this morning

15  testified that Mr. Ray is sole FTX officer or employee

16  who was a part of the discussions leading to the customer

17  preference settlement and, most importantly, he was the one

18  who approved the exclusions listed at Section 5.5 of the plan

19  to that customer preference settlement.  It was on Mr. Ray's

20  recommendation that the board ultimately approved it, but

21  Mr. Ray appears to be the only one who has performed any kind

22  of assessment based on -- or any kind of evaluation, I should

23  say, of the assessment of debtors' counsel as to which

24  creditors fall within the exclusions identified in

25  Section 5.5.  That is precisely what gives him unique and

1  superior knowledge.

2          The 30(b)(6) witness today could not testify even

3  as to which criteria in Section 5.5 of the plan applied to

4  any member of the LayerZero Group.  Instead, the testimony

5  was that the LayerZero Group, its members, all three of them,

6  have been excluded simply because there is a lawsuit pending

7  against them.  That is not what Section 5.5 says, and it's

8  particularly confusing given that Section 5.5(b) only says

9  that there will be an exclusion where there is an action

10 other than a customer preference action asserted against a

11 creditor, and for Mr. Litan and for Skip & Goose that is not

12 the case.

13         In our view, Your Honor, these criteria, which the

14 witness kept calling objective criteria, in Section 5.5,

15 either these criteria mean something or they don't mean

16 something, but what we do know is that the witness could not

17 tell us, number one, which criteria, which exclusions were

18 actually applied to any one of my clients; and, number two,

19 other than identifying the fact of a lawsuit existing against

20 the members of the LayerZero Group, could not identify any

21 documents, could not identify any information that would

22 support the application of those exclusions.

23         We also inquired of the witness today, looking to

24 the confirmation, the reply brief in support of confirmation,

25 that's Docket 26039, and specifically paragraph 18 in which

1  the debtors state that there is -- that the preference

2  defendants, like the LayerZero Group, and it goes on to say

3  something about may have had knowledge of the commingling and

4  misuse of customer deposits.  We asked the witness, what

5  evidence do you have that LayerZero Labs, that Mr. Litan,

6  Skip & Goose may have had knowledge of this commingling and

7  misuse of customer deposits.  The witness could not identify

8  anything and simply referred to the existence of the lawsuit.

9         We also inquired, what does it mean at the end of

10  paragraph 18 of this reply that it's simply enough to be

11  otherwise involved with the debtors in other litigation

12  regarding valuable assets.  That is not a criterion listed in

13  Section 5.5.  And that really matters here because we also

14  asked the witness, showing him Section 5.5 of the second

15  amended plan, we asked him whether there was anything, any

16  criteria other than those expressly listed here that were

17  applied to any of the customer preference actions, and the

18  answer was no.

19         We even went further to say -- it says, among

20  other things, was there something here that's not disclosed?

21  He said, no, these are the criteria, that was his

22  understanding.

23         Your Honor, it seems to me, based on the

24  deposition, that the only assessment and the only application

25  of these criteria have been performed by counsel -- counsel

1  to the debtors, and that means a few things.  Number one, it

2  means that Mr. Ray is the only person who possibly could have

3  performed any kind of assessment, who could have evaluated

4  the findings and the bases that debtors' counsel used to, in

5  the words of the plan, determine there is a reasonable basis

6  to conclude that one of these criteria apply.  We don't know

7  what those are, and the problem with that is that without

8  knowing what are the bases to -- again, in terms of

9  Section 5.5 -- to determine that there is a reasonable basis

10 to conclude that one of the or more of these criteria apply.

11       It's first of all impossible for us to challenge

12 with evidence the application of those criteria because we

13 don't know what the criteria are that have been applied to

14 us; number two, we also don't know what evidence they're

15 talking about.

16       The Court, as we note in our papers, did note to

17 us that we need to seek evidence, and we are seeking

18 evidence, the problem here is that the witness provided to us

19 is not the person who has it.

20       And that brings us, I think, to the Apex Doctrine

21 issue, which, again, as we note in our papers, but it's

22 confirmed today with the deposition, Mr. Ray is in fact the

23 only FTX officer or employee who had involvement with these

24 issues.  He was there, he does have knowledge, but critically

25 he is the only person, so far as we can tell, who performed

1   any kind of analysis, who looked at the determinations of

2   debtors' counsel, and upon being satisfied with whatever

3   those criteria were and whatever the evidence was, had

4   ultimately replied to the LayerZero Group to exclude them

5   from the customer preference action, he's the only one who

6   knows.

7           There are no other lower-level employees who

8   attended those meetings.  We asked about that specifically.

9   There are no other officers who attended those meetings, we

10  also asked about that specifically.  In that case, Your

11  Honor, it's -- you know, the Apex Doctrine, it's there to

12  protect simply asking chief executive officers and other

13  high-ranking employees for a deposition just for fun, and of

14  course the suggestion from the debtors is that this is meant

15  for harassment.  This is not just for fun, it's not for

16  harassment.

17          The adversary proceeding, the considerations there

18  are very different than those here.  I don't think we need to

19  belabor the point, but in the adversary proceeding whether

20  Mr. Ray has personal knowledge of the transactions that are

21  at issue in that proceeding is a completely different

22  question from whether Mr. Ray has personal knowledge

23  regarding the plan, regarding the customer preference

24  settlement, regarding these exclusions, and, critically,

25  their application to creditors, the application to my

1  clients.   Right now, all we have is an explanation that

2  those criteria must have been applied, that it was the

3  witness's understanding they had been applied somehow, but we

4  don't know which criteria, we don't know the basis for the

5  application and the only person left to ask is the person who

6  was actually there and who approved these exclusions and

7  approved what debtors' counsel came up with as an

8  application, and that's Mr. Ray and that's why his deposition

9  needs to continue, Your Honor.

10         I'll pause there and see if the Court has any

11  questions.

12         THE COURT:  Well, yeah.  The debtors have said

13  they're not calling Mr. Ray, and you've taken a 30(b)(6)

14  deposition and the debtors had an obligation to produce a

15  witness who could answer the questions that had to do with

16  the categories of information that you were looking for.  If

17  they didn't produce somebody, why would you even want to take

18  Mr. Ray's deposition if you have what you need?  What they

19  have now, you're telling me they have nothing, they can't

20  prove it, and it's their burden.

21         So, if they can't prove it, why do you need

22  Mr. Ray's?

23         MR. DALSEN:  Well, Your Honor, because in our

24  view, if we're being excluded and there is a reason for it,

25  we should know what that reason is.  And, yes, it may be that

1  they're not going to present -- I guess they're not going to

2  present evidence on why it is that they're going to exclude

3  LayerZero Group members from Section 5.5, but that also

4  means -- the other problem with this, the other side of the

5  coin, is the debtors saying that we're the ones who need to

6  come up with the evidence, that we're the ones who need to

7  say that there's -- to establish that there's some reason

8  that this is unfair.

9          THE COURT:  Well, they're treating you --

10          MR. DALSEN:  And with --

11          THE COURT:  -- they're -- I mean, I can look at

12  the face of the documents and say you're being treated

13  differently from other creditors, so the question is why, and

14  that's the debtors' burden to establish why you're being

15  treated differently, not yours.

16          MR. DALSEN:  I think, Your Honor, the concern that

17  I have is that there's exactly one other person who would

18  have an answer to this.  And I don't know -- it sounds like

19  Mr. Ray presently, he's not expected to testify in the

20  confirmation hearing, whether -- but he is heavily involved

21  with the preparation for confirmation.  Whether it is that

22  they -- that the debtors choose to present other evidence

23  that was not given to their witness to prepare for today, I

24  don't know.

25          What I do know is that I have one other witness

1  who actually knows the answers to these questions and,

2  importantly, knows the answers to questions to issues to

3  which this witness was not privy, and that's what were these

4  criteria that were actually applied to the LayerZero Group

5  because that apparently did happen, we just don't know what

6  happened, what evidence Mr. Ray looked at to satisfy himself

7  and recommend to the board that the debtors adopted.  So

8  there is evidence out there.  Then the question is, well,

9  what is in evidence and has it been applied in a way that's

10 not fair or not consistent with what the plan says.  That

11 could go to strengthen our objection to the plan and I think

12 that's why it matters, we have one other witness who can tell

13 us.

14          THE COURT:  Well, either the criteria apply or

15 they don't.  I mean, the criteria laid out in the plan, if

16 the debtors don't put on evidence to show that your client

17 meets one or more of those criteria, then they have --

18 they've got an issue, right?  I mean, I don't -- I'm still

19 not getting why you would even want to take more discovery at

20 this point, it sounds like you have everything you need.

21          So let me go back to Mr. Glueckstein.

22          Mr. Glueckstein, do you have any response?

23          MR. GLUECKSTEIN:  I do, Your Honor.

24          Brian Glueckstein, for the record.

25          If I could, I just want to step back for a moment

1  and I don't want to get too far down the road of the argument

2  of their actual objection.  But in response to Your Honor's

3  comments, there's a dispute here, which is a fundamental

4  dispute and why I categorized in my initial characterization,

5  and we addressed this at length in our reply papers to

6  objections that we filed yesterday, that fundamentally, what

7  LayerZero is arguing is that the customer preference

8  settlement in the plan is discriminatory because it is plan

9  treatment; it is treatment on accounted claims and we

10  fundamentally disagree with that.

11          The customer preference settlement, as reflected

12  in the declaration submitted by Mr. Coverick, as testified at

13  today's deposition, was negotiated separately as a separate

14  settlement.  It was implemented, it's being implemented, and

15  we're asking to implement it through the plan, so it's not

16  plan treatment.

17          So this whole discussion about whether the debtor

18  needs to, on a claimant-by-claimant basis, present evidence

19  on whether or not they should be included in an offer of

20  settlement to creditors, is a point of disagreement.  But in

21  any event --

22          THE COURT:  Well, isn't it a matter of the plan

23  whether, I mean, you've offered a plan, a settlement in

24  connection with the plan, so the question is, did you offer a

25  settlement only to some creditors and not all creditors, and

1  why?  Why are you treating them differently; isn't that the

2  issue?

3         MR. GLUECKSTEIN:  Well, the question is -- they

4  framed their objection as a discriminatory treatment of their

5  claim, right, and we disagree with that.

6         I think the question of whether or not the plan,

7  the settlement that's being asked to be approved on a 9019

8  basis through the plan and implemented through the plan, and

9  the fact that it was implemented through a balloting process,

10  is reasonable, you know, I'd submit is a different question.

11         And, regardless, the criteria is set out in the

12  plan.  And to be clear, because there's -- there was some

13  misstatements in what was said by counsel with respect to

14  this -- the criteria that was discussed this morning at the

15  deposition is Section 5.5(b) of the plan, which says that a

16  creditor can be excluded from receiving the offer of

17  settlement from the debtors, which is what we did, if the

18  debtors have a, have determined that there's some reasonable

19  basis to conclude, amongst other things -- and the section

20  we're talking about, and that was the focus of the

21  deposition, is Subsection B -- that the debtor has a cause of

22  action or a defense against the recipient of the applicable

23  preferential treatment or transfer or a subsequent transferee

24  of the applicable customer entitlement claim or any of its

25  affiliates, other than a claim arising under a customer

1  preference action.  And so we will address and can address --

2  we'll address at the hearing why the LayerZero Group

3  Defendants, each one of them fall within that criteria.

4         But this idea that Mr. Ray needs to testify about

5  what evaluation was done with respect to the debtors'

6  assessment of causes of action, we disagree.  And part of the

7  issue this morning was the debtors don't have an obligation

8  to explain to counsel for LayerZero, the claims that they

9  have asserted or may assert.

10        They need to have a reasonable basis to determine

11  as the plan is drafted, that they have such causes of action

12  against these parties; that's a judgment of the debtor.  And

13  Mr. Coverick explained the criteria for, that appears in the

14  plan, that was heavily negotiated with our Official Committee

15  and our Ad Hoc Committee, and what the debtors did from a

16  process perspective to evaluate the preference claims and

17  what parties ended up on that excluded party list.

18        And so the idea that Mr. Ray is going to somehow

19  now testify about the specifics of the claims that the

20  debtors are saying they have, that testimony is not going to

21  be any different, all right.  It still falls into these same

22  categories.

23        So the suggestion that Mr. Ray was the only person

24  in the room is not correct.  And I understand that Your Honor

25  does not have the benefit of the testimony this morning, but

1    I can represent that while it is true that Mr. Coverick

2    testified that Mr. Ray was the principal involved in the

3    negotiations and at the meetings, Mr. Coverick was equally

4    clear that he was at every, he and other professionals were

5    at every single relevant meeting that Mr. Ray was at.  And

6    Mr. Coverick testified about how these criteria came to be

7    based on his recollection of being present at the meeting.

8           So this was not simply a 30(b)(6) witness being

9    prepared on these topics.  He did that, but he also has

10   firsthand acknowledge, and he explained that Mr. Ray was at

11   those meetings.  Mr. Ray was the company representative at

12   those meetings of the debtor, but that Mr. Ray, any meeting

13   that Mr. Ray participated in with respect to the negotiation

14   of this settlement, Mr. Coverick himself and his colleagues,

15   in addition to him, were at.

16          So Mr. Coverick testified to the relevant

17   information here, and so I don't see how -- it sounds like we

18   will continue to have a debate with the LayerZero parties

19   into the confirmation hearing on Monday about how this plan

20   provision operates, but there's nothing about what happened

21   at the deposition this morning or that what has been

22   presented to the Court in connection with this motion to

23   suggest that Mr. Ray is -- has superior knowledge and needs

24   to be deposed on this subject.

25          THE COURT:  All right.

1          MR. DALSEN:  Your Honor, if I may make a few

2    additional points?

3          THE COURT:  Go ahead, Mr. Dalsen.

4          MR. DALSEN:  Thank you, Your Honor.

5          Just a few things.  I want to reiterate that

6    whether it's the debtors' burden to meet the standard to

7    confirm the plan is a separate question from our ability to

8    strengthen our objection.  And I think one big issue, even in

9    view of what Mr. Glueckstein just said, is that sure, the

10   witness who appeared today was at a lot of meetings, but the

11   witness could not testify as to the application,

12   implementation of those exclusions in Section 5.5 to anybody,

13   including the LayerZero Group.

14         And this is a problem because if we don't know, we

15   can't test the strength of the application.  We have no

16   ability to just challenge the classification, but also,

17   there's inconsistency at this point.

18         As I noted earlier in the confirmation reply,

19   paragraph 18, the debtors are saying that the LayerZero Group

20   may have had knowledge of the commingling and misuse of

21   customer deposits.  But as Mr. Glueckstein said, the witness

22   didn't say any of that; the witness, instead, pointed

23   to 5.5(b) and could not identify any additional facts or

24   information to say that there was commingling.

25         And at least one concern that I have, Your Honor,

1  is we have testimony that conflicts with the filing that was

2  made just last night when it comes to what is the actual

3  basis to have excluded the LayerZero Group as an excluded

4  customer preference action.  And in our view, we should have

5  the ability to test this, including because when it comes,

6  again, to Mr. Ray, specifically, since this witness could not

7  attest to the application and the implementation of these

8  criteria, that leaves Mr. Ray as the only other person left.

9        And if they're going to argue at confirmation that

10  there is something that our group may have had knowledge of

11  commingling and misuse, then we're entitled to know what

12  that's talking about.  And the only other person we can get

13  this information from, as this witness could not testify to

14  it, is Mr. Ray, based on the witness' own testimony.

15        MR. GLUECKSTEIN:  Your Honor, if I could --

16        THE COURT:  Well, again, I come back to the fact

17  that the debtors put up a 30(b)(6) witness who was supposed

18  to be able to answer the questions.  If he couldn't answer

19  the questions, they're precluded from producing evidence of

20  those issues at trial.

21        So, if, in fact, the witness said there may have

22  been knowledge of commingling of funds, but he doesn't have

23  any evidence of it and the debtors haven't identified any

24  other evidence they have, I'm not going to allow them to put

25  on any evidence at trial.

1          MR. DALSEN:  I think, then, the question becomes,

2    Your Honor, because there is this dispute as to whether

3    Section 5.5 is plan treatment or whether it's, as the

4    debtors, I think would characterize it, you know, merely a

5    settlement, you know, we need to understand, given that that

6    is unresolved, I still think we need to understand the whole

7    playing field of the facts.  There's an application --

8          THE COURT:  That's a legal issue, isn't it?

9    That's a legal issue.  Is it just a separate settlement or is

10   it part of the plan; I think that's a matter of law.  I don't

11   know what facts --

12         MR. DALSEN:  That's correct.  That is correct,

13   Your Honor.  But the bearing of the facts on the legal

14   determination, I think, is going to matter here.  And if

15   Mr. Ray has additional information about why is it that we

16   have been excluded, that that goes to, again, strengthen our

17   objection, because so far as we can tell, it's true.  We

18   don't believe that the witness today offered something.  It

19   sounds like the debtors believe that he did offer enough.

20   There's going to be a dispute about that, as well.

21         And simply because there is this one witness left

22   who has this information, to the extent that this witness can

23   strengthen our objection, we feel that we need to go pursue

24   that testimony.

25         THE COURT:  All right.  Do we have a draft of this

1   deposition?

2           MR. GLUECKSTEIN:  Yes, Your Honor.

3           THE COURT:  All right.

4           MR. GLUECKSTEIN:  We have a rough transcript of

5   the deposition.

6           THE COURT:  All right.  Send that to me and we're

7   going to -- I'm going to recess until -- how long is this?

8   It doesn't sound like it lasted very long, this deposition.

9           MR. GLUECKSTEIN:  It was about two and a half

10  hours, Your Honor.  It's not a particularly long transcript.

11          THE COURT:  Okay.  We'll take a recess

12  until 3:30 -- if you can get that to me right away -- and

13  we'll come back on and I'll give you my ruling at that time.

14          MR. GLUECKSTEIN:  Okay.  Thank you, Your Honor.

15          THE COURT:  All right.

16          MR. DALSEN:  Thank you, Your Honor.

17          THE COURT:  Thank you.

18          MR. GLUECKSTEIN:  We'll get it right over to

19  chambers.

20          THE COURT:  Thank you.

21      (Recess taken at 2:31 p.m.)

22      (Proceedings resumed at 3:31 p.m.)

23          THE COURT:  Okay.  Good afternoon, it's Judge

24  Dorsey.  We're back on the record in FTX Trading Ltd., Case

25  Number 22-11068.

1          I've read the deposition transcript, the 30(b)(6)

2    deposition of Mr. Coverick.  It seems like he was pretty

3    straightforward as to what he said the criteria that applied.

4    He said it was all -- and everything was in the complaint.

5    It was all about the complaint and everything is in the

6    complaint and that's the only document that's relevant.

7          I don't see how Mr. Ray is going to add anything

8    to that and it's going to be a distraction at this point,

9    this late point, as we approach confirmation, to have

10   Mr. Ray, subject to preparing for and attending a deposition,

11   where we already have the answer to the question.  The

12   debtors produced the witness.  They said it was

13   their 30(b)(6) witness.  That's the answer they're stuck

14   with.

15         So, I don't see how deposing Mr. Ray is going to

16   accomplish anything.  It would be a distraction and it would

17   cause potential, undue disruption for the debtors in

18   preparing for a confirmation, and all the other things going

19   on.  I mean, there's a lot of other adversary proceedings

20   happening.  There's a lot of things happening outside of this

21   court that Mr. Ray has to be involved in.

22         So, I do see him as an Apex party who needs to

23   avoid having to be distracted from a deposition like this.

24         So, Mr. Dalsen, did you take any written

25   discovery?  Did you take, ask for documents?

1            MR. DALSEN:  We did not, Your Honor.  Based on the

2    deposition today, we may need to make some inquiry, because

3    the witness did identify some documents in his testimony.

4            THE COURT:  Okay.  Well, you still have some time.

5            Mr. Glueckstein, what is -- I see we have the

6    hearing on the 6th.  It says, "pre-confirmation issues," so

7    what are we going to be talking about on next Monday?

8            MR. GLUECKSTEIN:  The 6th -- the hearing --

9    the 7th is --

10            THE COURT:  Or the -- yeah, the 7th.

11            MR. GLUECKSTEIN:  -- that is the scheduled

12    confirmation hearing, Your Honor.

13            THE COURT:  Okay.  I have the confirmation hearing

14    on my calendar for the 28th --

15            MR. GLUECKSTEIN:  Well, Your Honor --

16            THE COURT:  -- through the 30th.

17            MR. GLUECKSTEIN:  -- the -- it was a date held on

18    your calendar if we needed to have a lengthy trial.  We had

19    also held the 7th for the confirmation hearing, and when the

20    solicitation procedures order was approved and went out to

21    creditors, we fixed that hearing, the 7th, as the

22    confirmation hearing date.

23            THE COURT:  Okay.  I just want to make sure

24    because the way it's listed on my calendar is confirmation

25    matters and an omnibus date, so I wasn't sure how that got on

1  that way.

2          MR. GLUECKSTEIN:  Yeah, I think there were two

3  iterations that we had talked to your chambers about, Your

4  Honor, earlier in the summer when we weren't sure how many

5  time and the scope of both, discovery and objections on

6  certain issues would be required.

7          THE COURT:  Okay.

8          MR. GLUECKSTEIN:  But we had, you know, we had

9  agreed, and Your Honor had agreed, as I understand it, to

10  have the 7th as the confirmation hearing.

11          We are hopeful, given the nature of the remaining

12  objections, which are covered in our papers, most of which

13  are not evidentiary in nature, that we can efficiently use

14  the Court's time on the 7th.

15          THE COURT:  Okay.  Yes, I did see your responses

16  and it looks like all, but about seven of the objections have

17  been resolved is my understanding.

18          MR. GLUECKSTEIN:  That's right, Your Honor.

19          THE COURT:  Okay.  All right.

20          MR. GLUECKSTEIN:  And all of those are on, you

21  know, fairly discrete issues, as we outline in our papers.

22          THE COURT:  Okay.  And Mr. Landis had mentioned

23  there was another item on the agenda, a housekeeping matter.

24          What's that issue?

25          MR. LANDIS:  That's correct, Your Honor.

1          That is Item 2, which was our motion for leave to

2    file a reply to LayerZero's opposition to the motion to

3    quash.  We did upload and order in connection with that and

4    we wanted to make sure that it wasn't an item that was just

5    hanging out there.

6          THE COURT:  All right.  So just so we -- I did

7    review it, so we'll go ahead and I'll grant that order.  That

8    can be filed.

9          MR. LANDIS:  Thank you, Your Honor.

10         THE COURT:  All right.  Anything else for today?

11         MR. GLUECKSTEIN:  No, Your Honor.  Thank you very

12   much for addressing this matter and doing so virtually.  We

13   appreciate the Court's time.

14         THE COURT:  All right.  Thank you.

15         We will see everybody on the 7th, I guess.

16         COUNSEL:  Thank you, Your Honor.

17         THE COURT:  Thank you.

18         We're adjourned.

19      (Proceedings concluded at 3:36 p.m.)

20

21

22

23

24

25

1                          CERTIFICATION

2              We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ William J. Garling                    October 1, 2024

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Tracey J. Williams                    October 1, 2024

13   Tracey J. Williams, CET-914

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25