## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| FTX TRADING LTD., ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD., NORTH DIMENSION INC., COTTONWOOD GROVE LTD. and WEST REALM SHIRES, INC., | |
| Plaintiffs, | Adv. Pro. No. 23-50448 (JTD) |
| - against - | |
| SAMUEL BANKMAN-FRIED, ZIXIAO "GARY" WANG, NISHAD SINGH and CAROLINE ELLISON | |
| Defendants. | **Hearing Date: November 20, 2024 at 2:00 P.M. (ET)**<br>**Obj. Deadline: October 21, 2024 at 4:00 P.M. (ET)** |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO A SETTLEMENT AGREEMENT WITH CAROLINE ELLISON (B) APPROVING THE SETTLEMENT AGREEMENT AND (C) GRANTING RELATED RELIEF

FTX Trading Ltd., Alameda Research LLC, Alameda Research Ltd., North Dimension Inc., Cottonwood Grove Ltd., and West Realm Shires, Inc. (together, the "Plaintiffs," and collectively with their affiliated debtors and debtors-in-possession, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the United States Code, 11

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (1) authorizing the Debtors to enter into the settlement agreement attached as Exhibit 1 to the Order (the "Settlement Agreement")[2] between Plaintiffs and Caroline Ellison in the above-captioned proceeding (the "Adversary Proceeding"), (2) approving the terms of the Settlement Agreement, and (3) granting related relief.  In support of the Motion, the Plaintiffs respectfully state as follows:

## Preliminary Statement

1.       On July 20, 2023, Plaintiffs commenced Adversary Proceeding No. 23-50448 in the Bankruptcy Court against Ellison, Nishad Singh, Zixiao "Gary" Wang, and Samuel Bankman-Fried by filing a forty-eight count complaint alleging breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, waste of corporate assets, aiding and abetting waste of corporate assets, and conversion, and seeking to avoid and recover certain transfers made by Plaintiffs to Ellison and other insiders of the Debtors.

2.       Specifically, Plaintiffs sought to avoid and recover approximately 2.75 million FTX Trading Ltd. call options, and any related shares or FTX Trading Ltd. equity fraudulently transferred from Plaintiffs to Ellison between December 2020 and March 2021; approximately $22.5 million in bonus payments fraudulently transferred from Plaintiffs to Ellison in February 2022; and approximately $6.3 million in bonus payments fraudulently transferred from Plaintiffs to Ellison in July and September of 2021.

3.       Following arm's-length negotiations, Plaintiffs and Ellison have agreed to a settlement of the Adversary Proceeding and related claims.  The settlement is reflected in the Settlement Agreement which provides, among other things, that Ellison will:  (1) transfer to the

---

[2]       Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

Debtors substantially all of her assets not otherwise forfeited to the government or used to pay certain eligible legal fees; (2) transfer to the Debtors any equity, ownership rights or other interests she may have in any Debtor entity or Debtor affiliate; (3) transfer to the Debtors any rights she may have in any cryptocurrency assets; and (4) cooperate extensively with the Debtors in ongoing and prospective investigations and litigations.

4.      The Settlement Agreement provides the Debtors with substantially all that they could recover if they were to prevail at trial in the Adversary Proceeding.  Following the settlement, Ellison will have no remaining assets other than certain physical personal property. Significantly, Ellison has also committed to cooperating with the Debtors in ongoing investigations and litigation—a benefit that the Debtors would not be able to obtain even if they prevailed at trial against Ellison.  The proposed settlement would therefore generate more value to Plaintiffs' estates than if Plaintiffs were to continue litigating the Adversary Proceeding against Ellison.  Therefore, Plaintiffs' entry into, and performance under, the Settlement Agreement—which avoids costly, time-consuming litigation and provides for Ellison's cooperation in the Debtors' investigations and litigations—is in the best interests of Plaintiffs' estates and all of their stakeholders, and is well within the range of reasonableness.  Accordingly, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved.

### Background

5.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration

---

[3]      November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires, Inc.

of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128]. On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 231].

6.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Facts Specific to the Relief Requested

7.      On December 29, 2020, Ellison received two million FTX Trading Ltd. call options at no cost to her. In March 2021, Ellison received an additional 750,000 FTX Trading Ltd. call options at no cost to her.

8.      On July 23, 2021, Ellison caused Cottonwood Grove Ltd. to transfer to her $2.5 million in a purported cash bonus payment.

9.      In late March 2022, Ellison caused Alameda Research Ltd. to transfer to her $22.5 million in a purported cash bonus payment. Ellison used $10 million of that transfer to invest in an artificial intelligence safety and research company, Anthropic PBC.

10.      On September 14, 2022, Ellison caused Alameda Research Ltd. to transfer to her $3.75 million in a purported cash bonus payment.

11.      On November 11 and November 14, 2022, the Debtors filed voluntary petitions for relief under the Bankruptcy Code, commencing the Chapter 11 Cases in the Bankruptcy Court.

12.     On December 13, 2022, Samuel Bankman-Fried was charged in an indictment filed by the United States Attorney's Office for the Southern District of New York with numerous violations of law, including wire fraud, commodities fraud, securities fraud, money laundering, and campaign finance law violations relating to the mismanagement of the Debtors' prepetition operations and commingling and misappropriation of funds.

13.     On December 18 2022, Ellison entered into an agreement with the United States Attorney's Office for the Southern District of New York to plead guilty to the charges in a seven count information, including wire fraud, conspiracy to commit money laundering, conspiracy to commit securities fraud, and conspiracy to commit commodities fraud. On September 24, 2024, Ellison was sentenced to 24 months to run concurrently on each count, and three years' supervised release. Ellison is currently scheduled to surrender to begin her term of incarceration on November 7, 2024.

14.     On July 20, 2023, Plaintiffs commenced Adversary Proceeding No. 23-50448 in the Bankruptcy Court against Ellison, Nishad Singh, Zixiao "Gary" Wang and Samuel Bankman-Fried by filing a forty-eight count complaint alleging breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, waste of corporate assets, aiding and abetting waste of corporate assets, and conversion, and seeking, among other things, to avoid and recover certain transfers made by Plaintiffs to Ellison as described above.

15.     Plaintiffs and Ellison have engaged in extensive arm's length negotiations, in good faith, to resolve the claims. As a result of those negotiations, Plaintiffs and Ellison have agreed to the terms of a settlement, reflected in the Settlement Agreement, which contemplates, among other things, that:[4]

---

[4]     The summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary

- Ellison shall transfer to the Debtors any and all assets not subject to forfeiture or payable as restitution or fines (the "Settlement Amount"), except for physical personal property and amounts sufficient to pay reasonable attorneys' fees and expenses not to exceed $1.5 million;

- Ellison shall voluntarily cooperate with the Debtors, including by (a) providing, reviewing, clarifying, and authenticating documents and other materials, and (b) answering questions and attending proffer sessions, or interviews, depositions, hearings and other proceedings;

- Ellison shall transfer and assign to the Debtors any and all equity, ownership rights or other interests she may have in any Debtor or Debtor affiliate;

- Ellison shall transfer and assign to the Debtors all rights or entitlements she has to any cryptocurrency wallets, keys, or accounts;

- The Debtors and Ellison mutually release each other.

### **Jurisdiction**

16.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

**Relief Requested**

17.     By this Motion, Plaintiffs request entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u> (1) authorizing Plaintiffs to enter into the Settlement Agreement, (2) approving the Settlement Agreement, and (3) granting certain related relief.

**Basis for Relief**

**I.     The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in the Debtors 'Best Interests.**

18.     Resolution of Plaintiffs' claims against Ellison by means of the Settlement Agreement is in the best interests of Plaintiffs and their estates because the Settlement Agreement guarantees that Plaintiffs will recover substantially all of Ellison's assets not otherwise subject to criminal forfeiture.  The Settlement Agreement also ensures Ellison's cooperation in the Debtors' ongoing investigations and litigation efforts.   Accordingly, the proposed settlement will likely generate more value to Plaintiffs' estates than Plaintiffs could obtain by continuing to litigate the Adversary Proceeding against Ellison.   Settlement on the proposed terms is thus a reasonable exercise of Plaintiffs' business judgment satisfying Bankruptcy Rule 9019.

19.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Settlements are "generally favored in bankruptcy" as they "minimize litigation and expedite the administration of the estate."  *In re World Health Alts., Inc*., 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

20.     "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvass the issues to see whether the compromise falls below the lowest point in the range

of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted). Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

21.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222 B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (citations omitted).

22.     The Settlement Agreement provides material and intangible value to the Plaintiffs' estates, including by, among other things, requiring Ellison to cooperate with the Debtors' investigations and litigations. The Settlement Agreement also avoids further costly and time-consuming litigation, which, given Ellison's already-depleted financial assets, would not

yield additional recovery even if successful.  Accordingly, and as further described below, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

        **a.**     **The Probability of Success in Litigation and Subsequent Collection**

23.     Plaintiffs maintain that they have meritorious claims and would prevail against Ellison on all counts asserted in the Adversary Proceeding.  However, Plaintiffs would need to spend significant time and resources proving their claims and obtaining a favorable judgment against Ellison and Ellison may contest Plaintiffs' assertions.  Litigation would further deplete Ellison's few remaining assets.  As a result, even if Plaintiffs pursued litigation and prevailed on every claim against Ellison at trial, Plaintiffs' ultimate recovery from Ellison likely would not exceed the value that the Debtors' estates will realize through the Settlement Agreement.

24.     Given the costs of litigation, and the favorable terms of the Settlement Agreement, the Debtors submit that the proposed Settlement Agreement is in the best interests of the Debtors' estates.

        **b.**     **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted**

25.     Litigation of Plaintiffs' claims would be expensive and involve a significant amount of time and resources.  Pursuit of the claims would require litigating the sufficiency of evidence for various theories of recovery for multiple transfers.  Ongoing criminal proceedings and the incarceration of defendants and witnesses would complicate the taking of evidence.

        **c.**     **The Paramount Interests of Creditors are Served**

26.     The Settlement Agreement is in the best interests of Plaintiffs' estates and their creditors because, as discussed above, approval of the Settlement Agreement resolves complex disputes between the parties that otherwise would have required further costly and time-consuming litigation with uncertain net recovery.  As such, in Plaintiffs' business judgment, the

value of entering into the Settlement Agreement exceeds the net benefits that Plaintiffs and their estates likely would obtain from continuing to litigate the action.

27.    Plaintiffs submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of Plaintiffs, their estates, and their stakeholders.  As a result, Plaintiffs respectfully submit that the Settlement Agreement satisfies the *Martin* factors and request that the Court approve the Settlement Agreement and authorize Plaintiffs to enter into it.

### Waiver of Bankruptcy Rule 6004(h)

28.    Given the nature of the relief requested herein, the Debtors respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to maximize the value of the Debtors' assets and ample cause exists to justify a waiver of the stay period to the extent applicable.

### Reservation of Rights

29.    Nothing in this Motion:  (1) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (2) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (3) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## **Notice**

30.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the Ad Hoc Committee; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) counsel to Ellison, (i) counsel for the Joint Official Liquidators of FTX Digital Markets Ltd.; (j) the United States Attorney for the Southern District of New York; and to the extent not listed herein, (k) those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit A.

Dated: October 7, 2024
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Steven L. Holley (admitted *pro hac vice*)
Andrew G. Dietderich (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: holleys@sullcrom.com
       dietdericha@sullcrom.com
       gluecksteinb@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*