## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** November 20, 2024 at 2:00 p.m. ET<br>**Objection Deadline:** October 22, 2024 at 4:00pm ET |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO STIPULATION OF SETTLEMENT WITH THE GAP ENTITIES, (B) APPROVING THE SETTLEMENT, AND (C) GRANTING RELATED RELIEF

FTX Trading Ltd. and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors") hereby submit this motion (the "Motion") for an order, substantially

in the form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of

the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to

enter into the stipulation of settlement, attached as Exhibit 1 to the Order (the "Settlement"),[2]

between and among (i) the Debtors, and (ii) Guarding Against Pandemics, Inc. ("GAP"), a

Delaware corporation, People for Progressive Governance, Inc., a Delaware corporation,

Defending America Together, Inc., a Delaware corporation, Building a Stronger Future, Inc., a

Delaware corporation, Prosperity Through Enterprise, Inc., a Delaware corporation, Center for

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement.

the Future, Inc., a Delaware corporation, Planning for Tomorrow, Inc., a Delaware corporation, and Bughouse Strategy LLC, a Delaware limited liability company (collectively the "GAP Entities," and together with the Debtors, the "Parties").  In support of the Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1.      The Debtors have the opportunity to recover now approximately $3,400,000 in value for stakeholders, with the potential to recover up to an additional approximately $335,000 by September 2025, without needing to commence litigation following constructive negotiations with the GAP Entities.

2.      This settlement relates to the transfer of approximately $60 million by the Debtors to the GAP Entities between September 2020 and October 2022.  GAP is a tax-exempt entity with the stated mission of mitigating global pandemic-related risks that was at all relevant times run by Gabriel Bankman-Fried, Samuel Bankman-Fried's younger brother.  The remaining GAP Entities are a collection of Delaware entities formed at the direction of Samuel Bankman-Fried.

3.      The Settlement is in the best interests of the Debtors' estates, creditors and stakeholders, and should be swiftly consummated.  Approval of the Settlement will resolve the Debtors' claims against the GAP Entities and deliver significant recovery while avoiding the expense, uncertainty, and burden of litigation.  The Debtors will recover now approximately $3,400,000, with the potential for a maximum total recovery of up to approximately $3,735,000 by September 2025.  In addition to the $3,400,000 payable now, the Debtors will also receive any of the $180,000 in unspent funds remaining after the GAP Entities' wind down, and any of the $155,000 in unspent retainers still held in September 2025 by certain law firms representing the GAP Entities.

4.      Although the Debtors do not believe that a Rule 9019 motion is required in this circumstance, and that the Settlement could be consummated pursuant to the settlement procedures order entered by this Court on September 11, 2023 [D.I. 2487], the Debtors are nonetheless filing the motion in the interest of transparency.  The Settlement satisfies Bankruptcy Rule 9019 and should be approved.

## Background

5.      On November 11 and November 14, 2022 (as applicable, the "Petition Date"),[3] the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary petitions for relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of the Debtors' cases (the "Chapter 11 Cases") was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].  On December 15, 2022, the Office of the United States Trustee for the District of Delaware, appointed the Official Committee of Unsecured Creditors in the Debtors' Chapter 11 Cases, pursuant to section 1102 of the Bankruptcy Code [D.I. 231] (the "Official Committee").

6.      Additional factual background relating to the Debtors' businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

---

[3]      November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

7.    On December 4, 2022, the Ad Hoc Committee of Non-US Customers of FTX.com (the "Ad Hoc Committee") noticed their appearance [D.I. 185].

## Jurisdiction

8.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(f), Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

9.    By this Motion, Debtors request entry of the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to enter into the Settlement, (b) approving the Settlement, and (c) granting certain related relief.

## Facts Specific to the Relief Requested

10.    Prior to the Petition Date, between September 2020 and October 2022, the Debtors transferred a total of $61,742,404.06 to the GAP Entities (the "Transfers").  The GAP Entities used the Transfers to, among other things, make "charitable" contributions, and pay their employees and advisors.  On April 18, 2022, GAP purchased a townhouse located at 420 3rd Street, N.E., Washington, DC 20002 (the "Property") with proceeds from the Transfers.

11.     The Debtors believe they have meritorious claims to avoid and recover the Transfers, and related claims arising out of the Transfers.  The GAP Entities dispute these claims and have raised certain defenses.

12.     On July 6, 2023, GAP and the Debtors entered into an agreement pursuant to which the proceeds of any sale of the Property would be held in escrow pending a mutually agreeable resolution of any claims between GAP and the Debtors with respect to the Property (the "Escrow Agreement").  On July 7, 2023, the Property was sold and the proceeds of the sale were placed in escrow pursuant to the Escrow Agreement (the "Escrowed Funds").  As of June 1, 2024, the Escrowed Funds totaled $2,763,679.28.

13.     As of August 5, 2024, the GAP Entities had in their possession approximately $879,229.91 in unspent funds from the Transfers (the "Unspent Funds") and no reasonable prospect of obtaining additional funds, other than the return of no more than $155,000 in unspent retainers paid to the Excepted GAP Advisors listed in Paragraph Two of the Settlement (the "Unspent Retainers").

14.     The Parties have engaged in good faith, arm's-length negotiations to resolve the claims.  Through those negotiations, the GAP Entities have cooperated with the Debtors and worked in good faith to expeditiously reach a consensual resolution.  As a result of those negotiations, the Parties have agreed to enter into the Settlement.

15.     The key terms of the Settlement provide, among other things, that:[4]

- Within fourteen (14) days of the Effective Date, GAP and Alameda shall send a letter directing the escrow agent for the Escrowed Funds to wire to the FTX Debtors the Escrowed Funds, totaling approximately $2,763,679;

- Within thirty (30) days of the Effective Date, or such other time as provided in the Settlement, the GAP Entities shall transfer to the Debtors $700,000 (the

---

[4]     The summary of the Settlement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement.  To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement, the actual terms and conditions of the Settlement shall control.

"Initial Settlement Amount"), representing approximately 80% of the GAP Entities' remaining cash.  The GAP Entities will retain approximately $180,000 in cash for potential wind-up costs.  Five (5) business days after approval of the Settlement by the Bankruptcy Court , the GAP Entities will transfer to the Debtors the remainder of the $180,000 in Unspent Funds then held by the GAP Entities (the "October 2024 Payment").  On or before September 30, 2025, Ballard Spahr LLP, the Law Firm of Andrew D. Herman PLLC, Berke Farah LLP, and Clayman Rosenberg Kirshner & Linder LLP (the "Excepted GAP Advisors") will transfer to the FTX Debtors the remainder of the $155,000 in Unspent Retainers still held by them (the "September 2025 Payment");

- Upon receipt by the Debtors of the October 2024 Payment, (i) the Debtors and the GAP Entities mutually release the other in connection with the Transfers to the GAP Entitles as set forth in Appendix B to the Settlement; (ii) the Debtors releases the GAP Employees in connection with the transfers to the GAP Employees set forth in Appendix C of the Settlement; and (iii) the Debtors release the GAP Advisors (other than the Excepted GAP Advisors) relating to the transfers set forth in Appendix C of the Settlement; and

- Upon receipt by the Debtors of the September 2025 Payment, the Debtors release the Excepted GAP Advisors relating to the transfers set forth in Appendix C of the Settlement and in connection with the Unspent Retainers.

16.    The Settlement expressly provides that the Debtors do not release any claims they may have against Samuel Bankman-Fried, Gabriel Bankman-Fried, Joseph Bankman or Barbara Fried.

## Basis for Relief

**I.    The Settlement Satisfies Bankruptcy Rule 9019 Because It Is Fair, Reasonable and in the Debtors' Best Interests.**

17.    Resolution of the Debtors' claims against the GAP Entities through the Settlement is in the best interests of the Debtors and their estates because it will promptly return approximately $3,400,000—representing the $2,763,679 in Escrowed Funds and $700,000 of the GAP Entities' remaining cash—to the Debtors' estates.  Five business days after approval of the Settlement by the Bankruptcy Court, the GAP Entities will return to the Debtors any of the approximately $180,000 in Unspent Funds remaining after their wind down.  Further, by

September 30, 2025, the Excepted GAP Advisors shall return to the Debtors any of the
approximately $155,000 in Unspent Retainers they still hold.  This return exceeds that which the
Debtors would likely obtain in litigation given the GAP Entities representations about (i) its
limited remaining funds and plans to wind down, and (ii) the substantial drain on the GAP
Entities' remaining resources that would result from further litigation.  The Settlement is thus a
reasonable exercise of the Debtors' business judgment satisfying Bankruptcy Rule 9019.

18.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by
the trustee and after notice and a hearing, the court may approve a compromise or settlement."
Fed. R. Bankr. P. 9019(a).  Compromises and settlements are "a normal part of the process of
reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v.
*Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case v. L.A. Lumber Prods.
Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of litigation, especially in the
bankruptcy context, is encouraged and "generally favored in bankruptcy" as such settlements
"minimize litigation and expedite the administration of the estate."  *In re World Health Alts.,
Inc.*, 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

19.     "[T]he decision whether to approve a compromise under [Bankruptcy]
Rule 9019 is committed to the sound discretion of the Court, which must determine if the
compromise is fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R.
798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the
debtor, but instead should canvass the issues to see whether the compromise falls below the
lowest point in the range of reasonableness.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R.
798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also
In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the
settlement is the best possible compromise.  Rather, the court must conclude that the settlement

is 'within the reasonable range of litigation possibilities.'") (internal citations omitted).  Taken

together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to

approve a proposed compromise and settlement when it is in the best interests of the debtor's

estate and its creditors.  *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re*

*Louise's, Inc.*, 211 B.R. at 801.

20.     The Third Circuit Court of Appeals has enumerated four factors that

should be considered in determining whether a compromise should be approved:  "(1) the

probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of

the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996);

*accord In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors

are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging

to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222

B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R.

716, 721 (Bankr. D.N.J. 1997).  The test boils down to whether the terms of the proposed

compromise fall "within a reasonable range of litigation possibilities."  *In re Washington Mut.,*

*Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598

(E.D. Pa. 1992) (citations omitted).

21.     In addition, Bankruptcy Code section 105(a) provides, in pertinent part,

that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

22.     The terms of the proposed Settlement fall well within the range of

reasonableness and should be approved by the Court.  The terms of the Settlement provide for

the return now of approximately $3,400,000, with the potential for a maximum total settlement

of approximately $3,735,000, while avoiding the risks of litigation, the time and expense of

pursuing the claims against the GAP Entities, and further dissipation of the GAP Entities' assets.

Accordingly, the compromises set forth in the Settlement are, in the aggregate, fair and equitable,

fall well within the range of reasonableness, and satisfy each applicable *Martin* factor.

<b>a.    The Probability of Success in Litigation and Subsequent Collection.</b>

23.    The Debtors maintain that they have meritorious claims to recover the full

amount of the Transfers.  However, the Debtors would need to spend significant time and

resources proving their claims and obtaining a favorable judgment against the GAP Entities.

Among other arguments, the GAP Entities may contest the Debtors' assertions with respect to

insolvency at all relevant times, the nature and purpose of the transfers to the GAP Entities, as

well as whether the Debtors received reasonably equivalent value in return.  The return expected

under the Settlement exceeds that which Debtors would likely obtain in litigation given the GAP

Entities representations about (i) its limited remaining funds and inability to raise additional

funds, (ii) the substantial drain on the GAP Entities' resources that would result from further

litigation.  As a result, the Debtors' recovery from litigation of the claims against the GAP

Entities may not exceed the value to be realized for the Debtors' estates through the Settlement

even if they pursued litigation and prevailed on every issue.

24.    Given the attendant risks and costs of litigation, and the favorable terms of

the settlement, the Debtors submit that the proposed Settlement is in the best interests of the

Debtors' estates.

<b>b.    The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Are Unwarranted.</b>

25.    Litigation of the Debtors' claims against the GAP Entities would be

complex, expensive, and time-consuming.  Pursuit of the claims would require litigating the

sufficiency of evidence for various theories of recovery for multiple transfers, including the

-9-

circumstances of each transfer and the intent of Samuel Bankman-Fried and others in connection

with these transfers.  The other former FTX executives are unlikely to be available to testify on

issues relating to the claims in the near term due to their ongoing criminal proceedings and, in

Samuel Bankman-Fried's case, his incarceration, which further complicates the litigation and

timing of resolution.

           **c.**      **The Paramount Interests of Creditors are Served.**

        26.      The Settlement is in the best interests of the Debtors' creditors because it

brings approximately $3,400,000 now—and the potential for up to approximately $3,735,000—

into the Debtors' estates without time consuming and costly litigation.  The Settlement further

requires that all remaining Unspent Funds be returned five business days after approval of the

Settlement by the Bankruptcy Court and Unspent Retainers be returned to the Debtors no later

than September 30, 2025.

        27.      Therefore, in the Debtors' business judgment, the value of entering into

the Settlement exceeds the net benefits that the Debtors and their estates potentially could obtain

by pursuing litigation of claims against the GAP Entities.  Based on the foregoing, the Debtors

submit that the Settlement satisfies the *Martin* factors and Bankruptcy Rule 9019 because it is

fair, reasonable, and in the best interests of the Debtors, their estates, and their stakeholders.  As

a result, the Debtors respectfully request that the Court authorize the Debtors to enter into the

Settlement and approve its terms.

                      **Waiver of Bankruptcy Rule 6004(h)**

        28.      Given the nature of the relief requested herein, the Debtors respectfully

request a waiver of the 14-day stay under Bankruptcy Rule 6004(h) to the extent such stay

applies.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until expiration of 14 days after entry of the order,

unless the court orders otherwise." For the reasons described above, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay to the extent such stay applies.

## Reservation of Rights

29.    Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party except as otherwise set forth herein or in the Settlement.

## Notice

30.    Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Official Committee; (c) counsel to the Ad Hoc Committee; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) counsel to the GAP Entities; (i) counsel for the Joint Official Liquidators of FTX Digital Markets Ltd.; (j) the United States Attorney for the Southern District of New York; and to the extent not listed herein, (k) those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated: October 8, 2024
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
      mcguire@lrclaw.com
      brown@lrclaw.com
      pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
      bromleyj@sullcrom.com
      gluecksteinb@sullcrom.com
      kranzleya@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*