4.3.14  <u>Class 8A – PropCo Operating Expense Claims</u>

    (a)    *Classification*:  Class 8A consists of all Allowed PropCo Operating Expense Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed PropCo Operating Expense Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed PropCo Operating Expense Claim, each Holder of an Allowed PropCo Operating Expense Claim shall receive payment in full in Cash on or as soon as reasonably practicable after the latest of (i) the Initial Distribution Date; (ii) the date on which such Allowed PropCo Operating Expense Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

    (c)    *Voting*:  Claims in Class 8A are Unimpaired.  Each Holder of a PropCo Operating Expense Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of a PropCo Operating Expense Claim is entitled to vote to accept or reject the Plan.

4.3.15  <u>Class 8B – Priority DM Claim</u>

    (a)    *Classification*:  Class 8B consists of the Allowed Priority DM Claim.

    (b)    *Treatment*:  Except to the extent that FTX DM agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Priority DM Claim, FTX DM shall receive payment in Cash in an amount equal to the Priority DM Claim, to be paid directly from the proceeds from the sale, disposition or other monetization of the Bahamas Properties in accordance with the waterfall priority set forth in <u>Section 4.2.4</u>, until the Priority DM Claim is paid in full.

    (c)    *Voting*:  The Priority DM Claim is Impaired.  FTX DM is entitled to vote to accept or reject the Plan.

4.3.16  <u>Class 8C – PropCo General Unsecured Claims</u>

    (a)    *Classification*:  Class 8C consists of all Allowed PropCo General Unsecured Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed PropCo General Unsecured Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed PropCo General Unsecured Claim, each Holder of an Allowed PropCo General Unsecured Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of the

proceeds from the sale, disposition or other monetization of the
Bahamas Properties available to pay PropCo General Unsecured
Claims, in accordance with the waterfall priority set forth in <u>Section
4.2.4</u>.

(c)    *Voting*:  Claims in Class 8C are Impaired.  Each Holder of a PropCo
General Unsecured Claim is entitled to vote to accept or reject the
Plan.

### 4.3.17  <u>Class 9 – Cancelled Intercompany Claims</u>

(a)    *Classification*:  Class 9 consists of all Cancelled Intercompany Claims.

(b)    *Treatment*:  All Cancelled Intercompany Claims shall be cancelled,
released or otherwise settled in full, and the Holders of Cancelled
Intercompany Claims shall not be entitled to, and shall not receive or
retain, any Distributions, property or interest in property on account of
such Claims under the Plan.

(c)    *Voting*:  Claims in Class 9 are Impaired.  Each Holder of a Cancelled
Intercompany Claim is conclusively deemed to have rejected the Plan.
No Holder of a Cancelled Intercompany Claim is entitled to vote to
accept or reject the Plan.

### 4.3.18  <u>Class 10A – Senior Subordinated IRS Claims</u>

(a)    *Classification*:  Class 10A consists of all Senior Subordinated IRS
Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Senior
Subordinated IRS Claim agrees to less favorable treatment, and in full
and final satisfaction, settlement and release of and in exchange for all
Claims of the IRS against the Debtors arising from activities,
transactions, liabilities or events after October 31, 2022, each Holder
of an Allowed Senior Subordinated IRS Claim shall receive payment
in Cash in an amount equal to such Holder's share of Distributions
from the General Pool in accordance with the waterfall priority set
forth in <u>Section 4.2.3</u>.

(c)    *Voting*:  Claims in Class 10A are Impaired.  Each Holder of a Senior
Subordinated IRS Claim is entitled to vote to accept or reject the Plan.

### 4.3.19  <u>Class 10B – Senior Subordinated Governmental Claims</u>

(a)    *Classification*:  Class 10B consists of all Senior Subordinated
Governmental Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Senior
Subordinated Governmental Claim agrees to less favorable treatment,
and in full and final satisfaction, settlement, release of and in exchange
for its Allowed Senior Subordinated Governmental Claim, each
Holder of an Allowed Senior Subordinated Governmental Claim shall
receive payment in Cash in an amount equal to such Holder's share of
Distributions from the General Pool in accordance with the waterfall
priority set forth in <u>Section 4.2.3</u>; *provided* that each Holder of such
Allowed Senior Subordinated Governmental Claim may elect to
contribute such payment to the Supplemental Remission Fund for the
benefit of, and Distribution to, Holders of Allowed Dotcom Customer
Entitlement Claims, Allowed U.S. Customer Entitlement Claims, and
Allowed Digital Asset Loan Claims as contemplated by <u>Section 5.21</u>.

(c)     *Voting*:  Claims in Class 10B are Impaired.  Each Holder of a Senior
Subordinated Governmental Claim is entitled to vote to accept or
reject the Plan.

### 4.3.20  <u>Class 10C – Junior Subordinated IRS Claims</u>

(a)     *Classification*:  Class 10C consists of all Junior Subordinated IRS
Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Junior
Subordinated IRS Claim agrees to less favorable treatment, and in full
and final satisfaction, settlement and release of and in exchange for all
Claims of the IRS (other than the Priority IRS Tax Claim) against the
Debtors arising from activities, transactions, liabilities or events on or
preceding October 31, 2022, each Holder of an Allowed Junior
Subordinated IRS Claim shall receive payment in Cash in an amount
equal to such Holder's share of Distributions from the General Pool in
accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c)     *Voting*:  Claims in Class 10C are Impaired.  Each Holder of a Junior
Subordinated IRS Claim is entitled to vote to accept or reject the Plan.

### 4.3.21  <u>Class 11 – Intercompany Interests</u>

(a)     *Classification*:  Class 11 consists of all Intercompany Interests.

(b)     *Treatment*:  No Holder of an Intercompany Interest shall receive any
Distributions on account of its Intercompany Interest.  On and after the
Effective Date, all Intercompany Interests shall, at the option of the
Debtors, either be reinstated, set off, settled, addressed, distributed,
contributed, merged or cancelled.

(c)     *Voting*:  Interests in Class 11 are Impaired.  Each Holder of an
Intercompany Interest is conclusively deemed to have rejected the

Plan.  No Holder of an Intercompany Interest is entitled to vote to accept or reject the Plan.

### 4.3.22  Class 12 – Preferred Equity Interests

(a)    *Classification*:  Class 12 consists of all Preferred Equity Interests.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Preferred Equity Interest agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Preferred Equity Interest, each Holder of an Allowed Preferred Equity Interest shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>;

(c)    *Voting*:  Interests in Class 12 are Impaired.  Each Holder of a Preferred Equity Interest is entitled to vote to accept or reject the Plan.

### 4.3.23  Class 13 – Section 510(b) Preferred Equity Claims

(a)    *Classification*:  Class 13 consists of all Section 510(b) Preferred Equity Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Section 510(b) Preferred Equity Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Section 510(b) Preferred Equity Claim, each Holder of an Allowed Section 510(b) Preferred Equity Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c)    *Voting*:  Claims in Class 13 are Impaired.  Each Holder of a Section 510(b) Preferred Equity Claim is conclusively deemed to have rejected the Plan.  No Holder of a Section 510(b) Preferred Equity Claim is entitled to vote to accept or reject the Plan.

### 4.3.24  Class 14 – Section 510(b) Other Equity Claims

(a)    *Classification*:  Class 14 consists of all Section 510(b) Other Equity Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Section 510(b) Other Equity Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Section 510(b) Other Equity Claim, each Holder of an Allowed Section 510(b) Other Equity Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of

Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c) *Voting*: Claims in Class 14 are Impaired. Each Holder of a Section 510(b) Other Equity Claim is conclusively deemed to have rejected the Plan. No Holder of a Section 510(b) Other Equity Claim is entitled to vote to accept or reject the Plan.

4.3.25  <u>Class 15 – Equitably Subordinated Claims</u>

(a) *Classification*: Class 15 consists of all Equitably Subordinated Claims.

(b) *Treatment*: All Equitably Subordinated Claims shall be cancelled or released, and the Holders of Equitably Subordinated Claims shall not be entitled to, and shall not receive or retain, any Distributions, property or interest in property on account of such Claims under the Plan.

(c) *Voting*: Claims in Class 15 are Impaired. Each Holder of an Equitably Subordinated Claim is conclusively deemed to have rejected the Plan. No Holder of an Equitably Subordinated Claim is entitled to vote to accept or reject the Plan.

4.3.26  <u>Class 16 – Other Equity Interests</u>

(a) *Classification*: Class 16 consists of all Other Equity Interests.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Equity Interest agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Other Equity Interest, each Holder of an Allowed Other Equity Interest shall receive its share equal to such Holder's Pro Rata share of Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c) *Voting*: Interests in Class 16 are Impaired. Each Holder of an Other Equity Interest is conclusively deemed to have rejected the Plan. No Holder of an Other Equity Interest is entitled to vote to accept or reject the Plan.

4.3.27  <u>Class 17 – FTT Claims and Interests</u>

(a) *Classification*: Class 17 consists of all FTT Claims and Interests.

(b) *Treatment*: All Allowed FTT Claims and Interests shall be cancelled or released, and the Holders of Allowed FTT Claims and Interests shall not be entitled to, and shall not receive or retain, any

-46-

Distributions, property or interest in property on account of such Interests under the Plan.

(c)    *Voting*:  Claims in Class 17 are Impaired.  Each Holder of an FTT Claim or Interest is conclusively deemed to have rejected the Plan.  No Holder of an FTT Claim or Interest is entitled to vote to accept or reject the Plan.

### 4.3.28   Class 18 – *De Minimis* Claims

(a)    *Classification*:  Class 18 consists of all *De Minimis* Claims.

(b)    *Treatment*:  No Holder of a *De Minimis* Claim shall receive any Distributions on account of its *De Minimis* Claim.  On and after the Effective Date, all *De Minimis* Claims shall be cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

(c)    *Voting*:  Claims in Class 18 are Impaired.  Each Holder of a *De Minimis Claim* is conclusively deemed to have rejected the Plan.  No Holder of a *De Minimis* Claim is entitled to vote to accept or reject the Plan.

### 4.4.   Valuation of Claims

Unless otherwise expressly provided in the Digital Assets Estimation Order, the value of a Claim in respect of a Digital Asset shall be calculated by converting the value of such Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the Digital Assets Conversion Table.

### 4.5.   Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, the Plan shall not affect the Plan Administrator's rights in respect of any Unimpaired Claims, including legal and equitable defenses or setoff or recoupment rights with respect thereto.  For the avoidance of doubt, any claims that may arise pursuant to section 502(h) of the Bankruptcy Code following the conclusion of any adversary proceeding shall be treated in accordance with Paragraph 8 of the Digital Assets Estimation Order and shall not be valued in accordance with the conversion rates set forth in the Digital Assets Conversion Table.

### 4.6.   Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if:  (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims entitled to vote actually voting in such Class have voted to accept the Plan; and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims entitled to vote actually voting in such Class have voted to accept the Plan.  For any Class of Claims entitled to vote on the Plan,

the Debtors reserve the right to treat such Class as Unimpaired and conclusively deemed to have accepted the Plan.

### 4.7.   Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or an Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purpose of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 4.8.   Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

### 4.9.   Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code

For purposes of Confirmation, section 1129(a)(10) of the Bankruptcy Code shall be satisfied if any one of Class 3A, 5A, 5B, 6A, 6B, 7A, 7B, 7C, 8B, 8C, 10A, 10B, 10C or 12 accepts the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class or Classes of Claims and Interests. Classes 9, 11, 13, 14, 15, 16, 17 and 18 are deemed to reject the Plan.

**5.    IMPLEMENTATION OF THE PLAN**

5.1.    Operations Between the Confirmation Date and Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate as debtors-in-possession, subject to all applicable orders of the Bankruptcy Court.

5.2.    Global Settlement of Claims and Interests

In consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation: (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

In connection with the implementation of the Global Settlement pursuant to the Plan: (a) the value of Claims in respect of Digital Assets shall be calculated pursuant to Section 4.4; (b) the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim shall be recognized for the benefit of Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims; (c) the Alameda U.S. Customer Claim shall be recognized as part of the General Pool; (d) Claims shall be classified and treated as set forth in Article 4, which entitles Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims to recover against the (i) Dotcom Customer Priority Assets and the U.S. Customer Priority Assets, respectively, and (ii) General Pool, in accordance with the waterfall priorities set forth in Section 4.2; (e) the Consolidated Debtors shall be substantively consolidated as set forth in Section 5.7; (f) Cancelled Intercompany Claims, Equitably Subordinated Claims, FTT Claims and Interests and *De Minimis* Claims shall be cancelled; (g) Separate Subsidiary Intercompany Claims, Senior Subordinated IRS Claims, Senior Subordinated Governmental Claims, Junior Subordinated IRS Claims, Preferred Equity Interests, Section 510(b) Preferred Equity Claims and Section 510(b) Other Equity Claims shall be subordinated to Claims of other Holders, in accordance with the waterfall priorities set forth in Section 4.2; (h) Holders of Other Equity Interests shall recover against the General Pool in accordance with the waterfall priorities set forth in Section 4.2; (i) Distributions to customers and

creditors shall be made in Cash (other than in Available NFTs) as set forth in Articles 4 and 7; (j) all assets scheduled by the Debtors shall constitute property of the Debtors' Estates; (k) interest shall be paid at the applicable rate to Holders of certain Claims in accordance with Section 7.1 and the treatment set forth in Section 4.3; and (l) interest shall be paid at the Consensus Rate to Holders of Allowed Separate Subsidiary Claims, Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, Allowed Dotcom Convenience Claims and Allowed U.S. Convenience Claims in accordance with Section 7.1 and the treatment set forth in Section 4.3.

The Plan shall be deemed a motion to approve the Global Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

5.3.    FTX DM Global Settlement

To the extent that the FTX DM Global Settlement Agreement is in full force and effect as of the Effective Date, the FTX DM Global Settlement Agreement is hereby incorporated into the Plan. If the FTX DM Global Settlement Agreement is terminated pursuant to its terms, this Section 5.3 shall become null and void and shall have no further force and effect.

Notwithstanding anything to the contrary in the Plan, no claims between the Debtors and FTX DM arising under the FTX DM Global Settlement Agreement or the Exclusive Sales Agency Agreement shall be cancelled or otherwise released or modified by the Plan and the FTX DM Global Settlement Agreement and the Exclusive Sales Agency Agreement shall remain in effect following the Effective Date pursuant to their terms.

5.4.    Setoff Against FTX DM

On the Effective Date, the loan provided by FTX Trading to FTX DM in connection with the FTX DM Global Settlement Agreement shall be satisfied by setoff and reduction against any amount otherwise due to FTX DM by the Debtors under the FTX DM Global Settlement Agreement. Such setoff shall be effective automatically upon the occurrence of the Effective Date and shall not require any action by the Debtors, the Plan Administrator, or FTX DM or further order of the Court.

5.5.    Waiver of Customer Preference Actions

Effective upon the Effective Date, the Debtors and the Wind Down Entities shall waive and not prosecute any Customer Preference Action against any Holder of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims if such Holder duly executes and timely returns a valid Ballot by the Voting Deadline that (i) votes to accept the Plan, and (ii) consents and stipulates to the amount of such Dotcom Customer Entitlement or U.S. Customer Entitlement Claim as set forth in the applicable Ballot for voting, allowance and Distribution

purposes; *provided* that notwithstanding anything provided herein, the Debtors shall not waive and release any Excluded Customer Preference Action.

The Debtors shall not designate a Customer Preference Action as an Excluded Customer Preference Action unless the Debtors have determined there is a reasonable basis to conclude that, among other things: (a) the recipient of the applicable preferential payment or transfer (i) was an Insider of any Debtor, (ii) was a current or former employee of the Debtors or of any current or former Affiliate of the Debtors, (iii) may have had actual or constructive knowledge of the commingling and misuse of Customer deposits and corporate funds, or (iv) either (x) changed its know your customer information to facilitate withdrawals from the applicable FTX Exchange or (y) received manual permission from the Debtors to facilitate withdrawals when withdrawals were otherwise halted from the FTX Exchange; or (b) any Debtor has a Cause of Action or a defense against the recipient of the applicable preferential payment or transfer (or a subsequent transferee of the applicable Customer Entitlement Claim) or any of its Affiliates other than a claim arising under a Customer Preference Action.

5.6.    Other Settlements

Any settlement agreement entered into among any of the Debtors and Holders of Claims or Interests that is contained in the Plan Supplement is incorporated into the Plan and shall become effective in accordance with its terms. The Plan shall be deemed a motion to approve such settlement agreements pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Bankruptcy Court that such settlements are fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

5.7.    Substantive Consolidation

Pursuant to sections 105, 363, 365 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and as an integral part of the Global Settlement pursuant to the Plan, the Plan shall be deemed a motion by the Debtors seeking the approval, effective as of the Effective Date, of the substantive consolidation of the Estates of the Consolidated Debtors into a single Entity formed as a Delaware trust (the "Consolidated Wind Down Trust") for the purposes of effectuating and implementing the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such substantive consolidation of the Estates of the Consolidated Debtors, as well as findings by the Bankruptcy Court that such substantive consolidation is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and the Holders of Claims and Interests. FTX Bahamas PropCo shall not be substantively consolidated pursuant to the Plan and shall continue to exist as a separate legal entity.

Except as otherwise provided herein and subject in all respects to the classification and treatment of Claims and Interests set forth in Article 4, as a result of the substantive consolidation of the Estates of the Consolidated Debtors: (a) all property of the Consolidated Debtors shall vest in, and constitute the property of, the Consolidated Wind Down Trust, free and clear of any and all Liens, charges or other encumbrances or interests, pursuant to Section 5.13; (b) all guarantees of any Consolidated Debtor of the payment, performance or

collection of obligations of another Consolidated Debtor shall be eliminated and cancelled; (c) all joint obligations of two or more Consolidated Debtors and multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the Consolidated Wind Down Trust; (d) all Cancelled Intercompany Claims shall be deemed cancelled; and (e) each Claim filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed filed against the Consolidated Debtors and a single obligation of the Consolidated Wind Down Trust.

Except as otherwise provided herein, the substantive consolidation set forth in this Section 5.7 shall not: (i) affect the separate legal existence of the Consolidated Debtors for purposes other than implementation of the Plan pursuant to its terms; (ii) constitute or give rise to any defense, counterclaim or right of netting or setoff with respect to any Cause of Action vesting in the Consolidated Wind Down Trust that could not have been asserted against the Consolidated Debtors; or (iii) give rise to any right under, any executory contract, insurance contract or other contract to which a Consolidated Debtor is party, except to the extent required by section 365 of the Bankruptcy Code in connection with the assumption of such contract by the applicable Debtors.

5.8.    Wind Down Entities

The purpose of the Wind Down Entities is to engage in business after the Effective Date for so long as may be necessary to monetize the Plan Assets and pay Distributions, in each case as promptly as reasonably practicable. The Wind Down Entities shall manage and hold Plan Assets for sale; sell Plan Assets; administer, and close as necessary, the Chapter 11 Cases; administer, reconcile, resolve and settle claims; and liquidate the Debtors and their non-Debtor subsidiaries pursuant to the terms of the Plan Supplement. The Plan Administrator shall be vested with all other powers and authority set forth in the Plan and the Plan Administration Agreement, shall be deemed to have been appointed as the Debtors' Estates' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2) and 704(a)(5) of the Bankruptcy Code.

The Wind Down Entities are intended to qualify as "liquidating trusts" for U.S. federal income tax purposes. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Wind Down Entities are intended to be structured to comply with such general criteria. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Wind Down Entities, the Plan Administrator, and Holders of Allowed Claims) shall treat, for U.S. federal income tax purposes, the Wind Down Entities as a grantor trust of which the Holders of Allowed Claims against the Wind Down Entities are the owners and grantors. Taxable income, gain and losses of the Wind Down Entities shall be allocated among the deemed beneficiaries of such Wind Down Entities. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Wind Down Entities, the Plan Administrator, and all Holders of Allowed Claims) shall treat the transfer of the Plan Assets to the Wind Down Entities in accordance with the terms of the Plan; such transfer is treated as a deemed transfer to the Holders of Allowed Claims, followed by a deemed transfer by such Holders to the Wind Down Entities. The Plan Administrator shall make a good faith

valuation of Plan Assets as soon as it becomes relevant for tax reporting purposes. All parties (including, without limitation, the Debtors, the Wind Down Entities, the Plan Administrator, and all Holders of Allowed Claims) shall use consistent valuation of the Plan Assets for all U.S. federal income tax purposes.

### 5.9. Plan Funding Mechanism

Distributions under the Plan shall be funded from (a) Cash on hand, (b) Available NFTs, (c) Wind Down Cash Proceeds, and (d) any other Plan Assets, except as expressly set forth herein.

### 5.10. Dissolution of Boards of the Debtors

As of the Effective Date, the term of the current members of the board of directors, board of managers, or other substantially equivalent governing body of each the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically without any further action required on the part of the Debtors, the Debtors' officers or shareholders. As of the Effective Date, the Wind Down Board shall manage the Wind Down Entities.

### 5.11. The Wind Down Board

The initial Wind Down Board shall consist of the Plan Administrator, Brian C. Simms, KC, and Peter Greaves in their capacity as the Bahamas JOLs, the incumbent members of the Debtors' board and one additional director to be identified in the Plan Supplement (the "Appointed Director"). The Appointed Director shall be jointly designated by the Ad Hoc Committee and the Official Committee, and be acceptable to the Debtors and the Bahamas JOLs. The Appointed Director shall also be a member of the Advisory Committee described in Section 5.20 and shall cease to serve as a member of the Wind Down Board when the Advisory Committee is disbanded.

The Wind Down Board shall manage the Consolidated Wind Down Trust and have the responsibility to review and advise the Plan Administrator with respect to the liquidation and Distribution of the Plan Assets. In advising the Plan Administrator, the Wind Down Board, including the Appointed Director, shall maintain the same fiduciary responsibilities as the Plan Administrator.

In the event of a vacancy on the Wind Down Board, a majority of the Wind Down Board may appoint a replacement subject to the constitutive documents for the Consolidated Wind Down Trust as in effect from time to time; *provided* that any replacement for the Appointed Director shall first be designated by the Advisory Committee from among its members.

### 5.12. Plan Administrator and Plan Administration Agreement

The Plan Administrator shall administer the Wind Down Entities after the Effective Date in accordance with the Plan Administration Agreement. The appointment of the Plan Administrator and execution, delivery and performance of the Plan Administration

Agreement by the Wind Down Entities shall be approved by the Bankruptcy Court in the Confirmation Order.  The Plan Administrator shall be a fiduciary of the Wind Down Entities and shall be compensated and reimbursed for expenses as set forth in the Plan Administration Agreement.  The Plan Administration Agreement shall provide for the exculpation and indemnification of the Plan Administrator, the Wind Down Board and their professionals, representatives and related persons with respect to all Causes of Action arising out of or relating to any act taken, or omission made, in connection with the affairs of the Wind Down Entities, except to the extent an act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

5.13.   Vesting of Assets Free and Clear and No Successor Liability

Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Effective Date, all Plan Assets irrevocably shall be transferred and assigned to and automatically vested in the Wind Down Entities, for the benefit of Holders of Claims, free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 363 of the Bankruptcy Code.  All property held for Distribution pursuant to the Plan shall be held in trust for the benefit of the Holders of Allowed Claims and Interests and to pay the expenses of the administration of the Wind Down Entities. Upon the vesting of the Plan Assets in the Wind Down Entities, no Debtor, Consolidated Debtor or any Person or Entity holding a Claim or Interest shall (a) have an interest in, or any right with respect to, any Plan Asset except as provided by the Plan or (b) take, without the written consent of the Plan Administrator or order of the Court, any action with respect to a Wind Down Entity or a Plan Asset if such action would not have been permitted to be taken by such Person or Entity with respect to a Debtor or its property under section 362 of the Bankruptcy Code.

Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Effective Date, each of the Wind Down Entities (i) shall not, and shall not be deemed to assume, agree to perform, pay or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising of any event or occurrence taking place on or before the Effective Date, (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date, and (iii) shall not have any successor or transferee liability of any kind or character.

5.14.   D&O Policies

As of the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code.  The Debtors' D&O Policies purchased on or after the Petition Date shall continue in force following the Effective Date subject to the terms and conditions of such D&O Policies.  Coverage for defense and indemnity under any assumed or continued D&O Policies shall remain available within the definition of "Insured" in any of the D&O Policies subject to the terms and conditions of such D&O Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption or continuation, as applicable, of each D&O Policy.  Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, Confirmation of the Plan shall not

discharge, impair or otherwise modify any obligations assumed by the foregoing assumption or continuation of the D&O Policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed. The D&O Policies (i) are prefunded and will not require any additional premiums on or after the Effective Date, (ii) provide coverage for those insureds currently covered by such policies for the remaining term of such policies and (iii) in the case of the D&O Policies purchased on or after the Petition Date, provide runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

5.15.    Cancellation of Existing Interests

On the Effective Date, except as otherwise specifically provided for in the Plan or any agreement, instrument or other document incorporated into the Plan, the obligations of the Debtors under any Certificate, Interest (other than any Interest in FTX Bahamas PropCo.), share, note, purchase right, option, warrant, intercreditor agreement, guaranty, indemnity or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest, shall be cancelled solely as to the Debtors, and the Debtors shall not have any continuing obligations thereunder and shall be released therefrom.

5.16.    Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind Down Entities or to any other Person pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the Distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

5.17.    Preservation of Causes of Action

Except as otherwise provided in Article 10 or the other provisions of the Plan, each Cause of Action that is a Plan Asset shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the Wind Down Entities as of the Effective Date. For avoidance of doubt, any and all DM-Controlled Recovery Actions shall vest solely in FTX DM and shall not vest in the Wind Down Entities. Any such Cause of Action against any Customer of the FTX.com Exchange or any of such Customer's successors or

assigns shall constitute a Dotcom Customer Priority Asset, and any such Cause of Action against any customer of the FTX.US Exchange shall constitute a U.S. Customer Priority Asset. Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Plan Administrator expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of Confirmation, the Plan, the vesting of such Cause of Action in the Wind Down Entities, any order of the Bankruptcy Court or these Chapter 11 Cases. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them or in which they asserted any interest as an indication that the Debtors or the Plan Administrator, as applicable, will not pursue such Cause of Action.

### 5.18. Effectuating Documents and Further Transactions

The Debtors or the Plan Administrator, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The secretary, any assistant secretary or any other appropriate officer of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

From and after the Confirmation Date but prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

### 5.19. Wind Down of Debtors, Wind Down Entities, Excluded Entities and Non-Debtor Subsidiaries

The Debtors and the Plan Administrator, as applicable, shall be vested with all powers and authority to (a) make equity contributions to Debtor and non-Debtor Affiliates with Plan Assets and (b) convert into equity any prepetition or postpetition Intercompany Claims held by any Debtor that is not cancelled, released or otherwise settled in full pursuant to the Plan, in each case, to effectuate or facilitate the wind down and dissolution of any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries either prior to, on or after the Effective Date.

The Debtors and the Plan Administrator shall be vested with all powers and authority to wind down and dissolve any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries on or after the Effective Date free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code and without the need for any approvals, authorizations, actions or consents of the Court or otherwise, including any (i) any further corporate approval, including by the stockholders, board

of directors or other governing body of the applicable entity, to the extent such further approval may be required by applicable law, and to the extent such approval may be required by applicable law, such approval shall be deemed previously provided, or (ii) further actions to be taken by or on behalf of such entities or payments to be made in connection therewith, subject to the filing of a certificate of dissolution with the appropriate governmental authorities.

5.20.    Creditor Advisory Committee

On the Effective Date, the Debtors shall establish an advisory committee (the "Advisory Committee") consisting of the Appointed Director on the Wind Down Board and two other persons reasonably acceptable to the Debtors and the Bahamas JOLs, to be jointly designated by the Ad Hoc Committee and the Official Committee. The members of the Advisory Committee shall not be a current or former Holder of a Claim or Interest (unless otherwise agreed to by the Debtors, the Official Committee, and the Ad Hoc Committee) and shall be subject to the same confidentiality, independence and trading restrictions as members of the Wind Down Board. The members of the Advisory Committee shall have fiduciary duties to all creditors.

The Wind Down Board and the Plan Administrator shall consult with the Advisory Committee in good faith on all of its material decisions concerning the Wind Down Entities, the Plan Administrator and the Advisory Committee from time to time, including without limitation with respect to (i) reserves and the timing and amount of distributions, (ii) resolution or settlement of disputed unsecured claims, (iii) commencement, prosecution and settlement of litigation, (iv) disallowance of claims, (v) monetization of digital assets and venture investments, (vi) implementation of the Supplemental Remission Fund, (vii) modification of the Wind Down Budget and (viii) modification of the terms of employment or scope of authority of the Plan Administrator and any other officers of the Wind Down Entities, in each case of clauses (i) through (viii) subject to such parameters as may be agreed upon in good faith by the Wind Down Board, the Plan Administrator and the Advisory Committee from time to time. The members of the Advisory Committee other than the Appointed Director on the Wind-Down Board shall have the right to attend formal meetings of the Wind Down Board as non-voting observers (and receive all related board materials and reports), subject to such limitations as the Wind Down Board may set from time to time to address any actual or potential conflict of interest. The Appointed Director shall have the opportunity to consult with the other members of the Advisory Committee prior to voting on any actions in its capacity as a member of the Wind Down Board. Similarly, the Wind Down Board of Directors shall have the right to consult in executive session without the Advisory Committee members.

The members of the Advisory Committee shall receive reasonable and customary compensation, indemnification and exculpation. The Advisory Committee may retain and employ Delaware counsel, one additional law firm and one financial advisory firm to assist the Advisory Committee in the performance of its duties, with the reasonable and documented fees and expenses of these professionals to be borne or reimbursed by the Wind Down Entities. These professional firms shall be chosen by majority vote of the Advisory Committee and be acceptable to the Wind Down Board (such consent not to be unreasonably withheld).

If the Wind Down Board approves an action (i) that the Appointed Director has voted against in his or her capacity as a member of the Wind Down Board and (ii) to which a majority of the Advisory Committee (including the Appointed Director) also objects, the Appointed Director may send written notice explaining the basis for the Advisory Committee's objection to the Plan Administrator and the other members of the Wind Down Board within one business day of the vote of the Wind Down Board approving the proposed action (a "Notice of Objection"). Upon the Appointed Director's vote against a proposed action by the Wind Down Board, the Wind Down Entities shall refrain from taking the contested action unless a Notice of Objection is not timely provided; if a Notice of Objection is provided, the Wind Down Board shall not take the proposed action without either order of the Court or the expiration of a seven day waiting period. During this seven day waiting period, the Advisory Committee may file an objection to the proposed action with the Court, describing the basis therefor in reasonable detail. If no objection is filed with the Court within such seven day period, the Notice of Objection shall have no further effect, the Wind Down Entities may proceed with the proposed action and the Advisory Committee shall be deemed to have waived any right to challenge the proposed action.

If the Advisory Committee files a timely objection with the Court in accordance with the immediately preceding two paragraphs, the Court shall resolve the objection as a contested matter by applying the standard of review that would be applicable to an action proposed by a debtor over the objection of a general unsecured creditor under section 363(b) of the Bankruptcy Code or Rule 9019, as applicable.

The Advisory Committee shall have standing to enforce the Plan to the same extent as an individual creditor, as well as standing to enforce the Advisory Committee's own rights under the Plan.

The Advisory Committee shall continue until such time as Allowed General Unsecured Claims have been paid 100% of their Allowed amounts plus interest at the Consensus Rate as provided in the Plan, and then shall be disbanded. In the event of a vacancy on the Advisory Committee, the other members of the Advisory Committee may appoint a replacement member reasonably acceptable to the Wind Down Board by written notice to the Court.

5.21. Supplemental Remission Fund

The Debtors, in consultation with the Supporting Parties, may establish a segregated fund (the "Supplemental Remission Fund") to receive any funds otherwise payable to the Holders of Allowed Senior Subordinated Governmental Claims (the "Remission Fund Sponsors"). The Plan Administrator may manage funds in the Supplemental Remission Fund on the same basis as any other funds of the Wind Down Entities. If established, the Supplemental Remission Fund shall constitute property of the Wind Down Entities and part of their Cash; *provided* that the Plan Administrator shall (a) keep such Supplemental Remission Fund segregated, and (b) apply funds in the Supplemental Remission Fund only (i) to pay costs and expenses incurred in connection with the activities of the Supplemental Remission Fund, (ii) to make distributions of any available funds to (x) Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims and Allowed Digital Asset Loan Claims and (y) FTX DM for the benefit of Holders of Eligible DM Customer Entitlement Claims, in each case, on a Pro Rata basis or as otherwise agreed between the Plan Administrator

-58-

and the Remission Fund Sponsors, in consultation with the Advisory Committee, or (iii) as ordered by the Bankruptcy Court.  The Plan Administrator shall file on the docket of these Chapter 11 Cases notices describing any agreement with any Remission Fund Sponsor to contribute to the Supplemental Remission Fund, as well as any agreed guidelines for distributions.  The Plan Administrator shall file periodic reports on the docket of these Chapter 11 Cases with respect to the balance in the Supplemental Remission Fund and its distribution activities.

5.22.    Preferred Shareholder Fund

In connection with the Debtors' efforts to recover Forfeiture Proceeds, the Debtors have entered into the Preferred Shareholder Settlement Agreement in anticipation that the DOJ or other applicable governmental authorities may request that a portion of the Forfeiture Proceeds be allocated to Holders of Preferred Equity Interests who are not otherwise expected to receive a distribution under the Plan.  As contemplated by the Preferred Shareholder Settlement Agreement, the Debtors or the Consolidated Wind Down Trust may establish a segregated fund (the "Preferred Shareholder Fund") to receive and hold the applicable portion of such Forfeiture Proceeds for the benefit of Holders of Preferred Equity Interests, and may manage such Preferred Shareholder Fund and make distributions therefrom in accordance with the Preferred Shareholder Settlement Agreement and any applicable agreement with the DOJ or such other applicable governmental authorities.  The Preferred Shareholder Fund shall not constitute property of the Estates or property of the Consolidated Wind Down Trust except to the extent of their respective interests therein.

## 6.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1.   Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) that are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan. Entry of the Confirmation Order by the Bankruptcy Court, subject to and upon the occurrence of the Effective Date, shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

### 6.2.   Claims Against the Debtors upon Rejection

No Executory Contract or Unexpired Lease rejected by the Debtors on or prior to the Effective Date shall create any obligation or liability of the Debtors that is not a Claim. Any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Notice and Claims Agent before the Rejected Contract Claims Bar Date. **Any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease that is not filed with the Notice and Claims Agent by the Rejected Contract Claims Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind Down Entities, the Plan Administrator or any of their property**. Any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a General Unsecured Claim and shall be treated in accordance with Section 4.3.9.

### 6.3.   Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contracts or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

6.4.    <u>Reservation of Rights</u>

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Debtor has any liability thereunder.

7.    **PROVISIONS GOVERNING DISTRIBUTIONS**

7.1.    Accrual of Postpetition Interest on Certain Claims

Unless otherwise provided in the Plan, to the extent that postpetition interest accrues on an Allowed Separate Subsidiary Claim, an Allowed Dotcom Customer Entitlement Claim, an Allowed U.S. Customer Entitlement Claim, an Allowed General Unsecured Claim or an Allowed Digital Asset Loan Claim pursuant to Article 4, such postpetition interest shall accrue on any unpaid balance of such Allowed Claim from the Petition Date through the applicable Distribution Date on which such Allowed Claim is paid; *provided* that, to the extent that a Disputed Claim becomes an Allowed Claim on which postpetition interest accrues pursuant to Article 4, postpetition interest shall accrue on such Allowed Claim as if such Allowed Claim had been an Allowed Claim that received a Distribution on each date Distributions were previously made to Holders of the Allowed Claims classified in the applicable Class. No Holder of an Allowed Separate Subsidiary Claim, Allowed Dotcom Customer Entitlement Claim, Allowed U.S. Customer Entitlement Claim, Allowed General Unsecured Claim or Allowed Digital Asset Loan Claim has an entitlement to postpetition interest except to the extent of available funds in accordance with the waterfall priority set forth in Section 4.2.

7.2.    Distributions Timing

7.2.1    Determination for Distributions to FTX DM.  Before the Initial Distribution Date or any Distribution Date thereafter, the Plan Administrator shall determine, in accordance with the FTX DM Global Settlement Agreement, whether it needs to advance Cash to FTX DM to pay distributions to holders of DM Customer Entitlement Claims in accordance with the FTX DM Global Settlement Agreement.

7.2.2    Initial Distribution Date.  On the Initial Distribution Date, the Distribution Agent shall commence Distributions under the Plan on account of each Claim that is Allowed on or prior to the Effective Date.

7.2.3    Subsequent Distributions.  The Plan Administrator shall identify, in his or her discretion and in accordance with the Plan Administration Agreement, dates to be Subsequent Distribution Dates for the purpose of making additional Distributions under the Plan. Each Subsequent Distribution Date shall be a Business Day. On each Subsequent Distribution Date, the Plan Administrator shall direct the Distribution Agent to make Distributions with Cash on hand net of reserves, as determined by the Plan Administrator and the Wind Down Board.

7.2.4    Distributions to Holders of Claims Allowed After the Effective Date.  The Distribution Agent shall make Distributions to Holders of Claims Allowed after the Effective Date in accordance with the applicable provision of Article 4 on the first Subsequent Distribution Date after such Claim is Allowed. Unless the Plan Administrator otherwise agrees, no partial Distribution shall be made with respect to such Claim until all disputes in connection with such Claim have been resolved by Final Order of the Bankruptcy Court.

7.3.    Distributions to Holders of Customer Entitlement Claims

7.3.1    Distributions to FTX DM.  In accordance with Section 7.2.1, before the Initial Distribution Date or any Distribution Date thereafter, the Plan Administrator or the Distribution Agent shall make any distribution of Cash to FTX DM for the benefit of holders of DM Customer Entitlement Claims that have made the Bahamas Opt-In Election in accordance with the FTX DM Global Settlement Agreement.

7.3.2    Distributions of Dotcom Customer Entitlement Claims, U.S. Customer Entitlement Claims and Allocations of Wind Down Cash Proceeds.  On any Distribution Date, the Plan Administrator may direct the Distribution Agent to Distribute to the Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims the Wind Down Cash Proceeds that the Plan Administrator in accordance with the Plan and the Plan Administration Agreement, determines are Wind Down Cash Proceeds that belong to the Dotcom Customer Priority Assets or U.S. Customer Priority Assets, respectively, in each case, in accordance with Sections 4.3.6 and 4.3.7.

7.3.3    Final Distribution at Closing of the Chapter 11 Cases.  On or prior to the closing of the Chapter 11 Cases, the Plan Administrator shall Distribute (such Distribution, the "Final Distribution") all remaining Wind Down Cash Proceeds in accordance with the waterfall priority set forth in Section 4.2 and the classification and treatment set forth in Section 4.3.

7.4.    Record Date and Delivery of Distributions

7.4.1    Record Date for Distributions

In advance of each Distribution Date, the Plan Administrator shall establish a Distribution Record Date for purposes of determining the Holders of Allowed Claims entitled to receive a Distribution on such Distribution Date, which Distribution Record Date shall be no less than 45 and no more than 75 days prior to the corresponding Distribution Date.  On each Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on such Distribution Record Date.  If a Claim is transferred 45 or fewer days before the applicable Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

7.4.2    Delivery of Distributions in General

Except as otherwise provided herein, the Distribution Agent, at the direction of the Plan Administrator, shall make all Distributions required under the Plan to Holders of Allowed Claims.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the applicable Distribution Record Date by the Distribution Agent, as appropriate:  (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein; (b) at the address set forth in any written notice of change of address delivered

to the Notice and Claims Agent; (c) at the address set forth in any notice of transfer that has become effective pursuant to Bankruptcy Rule 3001(e); or (d) at the address reflected in the Schedules if no Proof of Claim has been filed and the Notice and Claims Agent has not received a written notice of a change of address. The Plan Administrator may, but shall not be required to, withhold any Distribution to a Holder of an Allowed Claim upon receipt of written notice to the Plan Administrator of pending litigation concerning an executed agreement by such Holder to sell such Allowed Claim in order to seek specific instructions of the Bankruptcy Court prior to making such Distribution. The Debtors, the Plan Administrator, the Distribution Agent, the Wind Down Entities and the Notice and Claims Agent shall not incur any liability whatsoever on account of the withholding or delivery of any Distributions under the Plan.

In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. Except as specifically provided in the Plan, Holders of Allowed Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

### 7.4.3    Foreign Currency Exchange Rate

Except as otherwise provided herein, an order of the Bankruptcy Court or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, any Claim asserted in a currency other than U.S. Dollars shall be automatically deemed converted to the equivalent U.S. Dollars at the Exchange Rate.

### 7.5.    Distribution Agent

The Plan Administrator shall have the authority to enter into an agreement with a Distribution Agent to facilitate the Distributions required under the Plan. To the extent the Plan Administrator determines to utilize a Distribution Agent to facilitate the Distributions, such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or Distributions required under the Plan; and (c) waive any right or ability to set off, deduct from or assert any Lien or other encumbrance against the Distributions required under the Plan to be distributed by such Distribution Agent.

The Debtors or the Plan Administrator, as applicable, shall pay to the Distribution Agent all of its reasonable and documented fees and expenses without the need for any approvals, authorizations, actions or consents of the Bankruptcy Court or otherwise. The Distribution Agent shall submit detailed invoices to the Plan Administrator for all fees and expenses for which the Distribution Agent seeks reimbursement, and the Plan Administrator shall pay those amounts that it, in its sole discretion, deems reasonable, and shall object to those fees and expenses, if any, that the Plan Administrator deems to be unreasonable. In the event that the Plan Administrator objects to all or any portion of the amounts requested to be reimbursed in the Distribution Agent's invoice, the Plan Administrator and the Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate

payment of such disputed fees and/or expenses.  In the event that the Plan Administrator and the Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

7.6.    Fractional and *De Minimis* Distributions

Notwithstanding anything herein to the contrary, the Plan Administrator and the Distribution Agent shall not be required to make Distributions in Cash or payments of less than $10.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $10 shall be forever barred from asserting such Claim against the Debtors, the Estates, the Plan Administrator, the Wind Down Entities or any of their property.

7.7.    Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, or no address for such Holder is found in the Debtors' or Notice and Claims Agent's records, no further Distribution to such Holder shall be made unless and until the Plan Administrator or the Distribution Agent is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder not less than 30 days thereafter.  Undeliverable Distributions shall remain in the possession of the Plan Administrator or the Distribution Agent until such time as such Distribution becomes deliverable or such Distribution reverts to the relevant Wind Down Entity or is cancelled pursuant to Section 7.8 and shall not be supplemented with any interest, dividends or other accruals of any kind.  Nothing contained herein shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim whose Distribution is declared an undeliverable or Unclaimed Distribution.

7.8.    Reversion

Any Distribution under the Plan, including Distributions made by the Plan Administrator or the Distribution Agent in accordance with Section 7.5, that is an Unclaimed Distribution for a period of six months thereafter, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and such Unclaimed Distribution shall revest in the relevant Wind Down Entity as Plan Assets with respect to Unclaimed Distributions on account of Claims, *provided, however*, that the Plan Administrator and the Distribution Agent shall use commercially reasonable efforts to notify the Holder of such Unclaimed Distribution within three months of the applicable Distribution Date.  The Plan Administrator and the Distribution Agent are deemed to have satisfied their use of commercially reasonable efforts by mailing a notice to the last known address of record known to the Claims Agent and emailing such notice to the last known email address of record known to the Claims Agent.  Any Distribution that is not made pursuant to Section 7.6 shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the relevant Wind Down Entity as Plan Assets pursuant to this Section 7.8.  Upon revesting pursuant to this Section 7.8, the Claim of any Holder or its successors and assigns with respect to such property shall be cancelled and forever barred, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.  If any Unclaimed Distribution revests in any Wind Down Entity as Plan Assets pursuant to this Section 7.8 after the Final Distribution is made, the Plan Administrator shall not