be required to make any subsequent Distributions to Holders of Allowed Claims or Interests under the Plan.

    7.9.    <u>Surrender of Cancelled Instruments or Securities</u>

        Except as otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent. Subject to the foregoing sentence, regardless of any actual surrender of a Certificate, the deemed surrender shall have the same effect as if its Holder had actually surrendered such Certificate, and such Holder shall be deemed to have relinquished all rights, Claims and Interests with respect to such Certificate. Notwithstanding the foregoing paragraph, this <u>Section 7.9</u> shall not apply to any Claims reinstated pursuant to the terms of the Plan.

    7.10.    <u>Setoffs</u>

        Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553), applicable non-bankruptcy law, or such terms as may be agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, the Debtors may, without any further notice to, or action, order or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or the Plan Administrator of any such Claims, rights and Causes of Action that such Debtor or the Plan Administrator may possess against such Holder. In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

    7.11.    <u>The Bahamas Opt-In Election</u>

        All Bahamas Customers forever, fully and finally release and discharge the Debtors with respect to any Dotcom Customer Entitlement Claims and Dotcom Convenience Claims and forever, fully and finally withdraw with prejudice such Dotcom Customer Entitlement Claims and Dotcom Convenience Claims from these Chapter 11 Cases. No Bahamas Customer who timely makes a valid Bahamas Opt-In Election shall receive any Distribution under the Plan on account of any Dotcom Customer Entitlement Claims or Dotcom Convenience Claims. The Plan Administrator may require any Holder of any Claim to submit satisfactory evidence that such Holder has not submitted a proof of debt in the FTX DM Liquidation.

7.12.    Anti-Double Dip

To the extent any Holder has received payment in full on account of any Allowed Claim in accordance with Section 4.3, such Allowed Claim shall be deemed satisfied and expunged from the claims registry without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court.

To the extent that a Holder of an Allowed Claim receives payment from a party that is not a Debtor on account of such Claim, the Plan Administrator or the Distribution Agent on account of such Claim, such Holder shall, within 14 days of receipt thereof, transfer, repay or return such payment to the Plan Administrator or the Distribution Agent to the extent such Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount that other similarly-situated Holders of such Claim received as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Plan Administrator annualized interest at the Consensus Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

The Plan Administrator may require any Holder of any Claim or Interest to submit satisfactory evidence that such Holder has not requested or received compensation for the same losses underlying such Claim or Interest in connection with any other judicial or administrative proceedings in any court other than the Bankruptcy Court, including, without limitation, (a) any proceedings with respect to FTX Australia, FTX Turkey, SNG Investments, FTX Europe AG, FTX EU Ltd., Quoine Pte. Ltd., FTX DM, or FTX Japan K.K., and (b) any proceedings in connection with the civil action captioned *In Re FTX Cryptocurrency Exchange Collapse Litigation*, Case No. 23-md-03076 (S.D.F.L.) pending in the United States District Court for the Southern District of Florida. The Plan Administrator may, and may direct the Distribution Agent to, withhold any Distributions on such Claim or Interest until: (a) such time as the Plan Administrator determines it has received satisfactory evidence or appropriate arrangements are in place that ensure no Holder receives more than any other similarly-situated Holder under the Plan, taking into account potential recoveries of all Holders; or (b) the Court so orders. The Plan Administrator may also adjust the amount of such Claim or Interest to ensure that the Holder of such Claim or Interest does not receive more than any other similarly-situated Holder under the Plan. As a condition to receiving any Distribution under the Plan, unless the Court orders otherwise, the Plan Administrator may require Holders of Claims or Interests to irrevocably and unconditionally assign and transfer to the Plan Administrator all right, title and interest in any claim or Cause of Action for the same losses that has been or may be made or asserted in any of the foregoing proceedings.

7.13.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Plan Administrator and the Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such

withholding and reporting requirements, including withholding in kind, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms that are reasonable and appropriate. For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable Holder. The Plan Administrator reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

7.14.  Tax Identification, KYC and OFAC Certifications

Any Holder entitled to receive any Distribution under the Plan shall, upon request, deliver to the Distribution Agent or such other Entity designated by the Plan Administrator: (a) a completed IRS Form W-9 or appropriate IRS Form W-8, as applicable; (b) a true and accurate certification that the Holder is not a Person or Entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons; and (c) know your customer information of the Holder of such Claim, which (i) for individuals, may include, among other things, full name including any alias, date of birth, address and proof of address, identification and identification-related documents, nationality, phone number, email address, occupation, bank account information or wallet address, social security number (for U.S. citizens) and facial liveness and (ii) for institutional Holders, may include, among other things, company name, registration information, tax identification number, principal business address and phone number, business email address, information on the nature of the business and principal business activity, entity size, source of wealth/source of funds, annual revenue/profit, authorized signer, identity of ultimate beneficial owners, identity of directors and/or members of management, bank account information or wallet address and, for any ultimate beneficial owners, directors or members of management, similar identification information and records as are collected for individual Holders who are natural Persons (collectively, the "Pre-Distribution Requirements"). If a request for Pre-Distribution Requirements has not been satisfied within 30 days thereafter, a second request shall be sent to such Holder. If the Holder fails to comply with the Pre-Distribution Requirements before the date that is 60 days after a second request is made, such Holder shall be deemed to have forfeited its right to receive Distributions, and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Plan Administrator receiving its executed Pre-Distribution Requirements. Any Distributions that are forfeited pursuant to this provision shall revest in the Wind Down Entities as Plan Assets. For all purposes related to this Section 7.14, the Plan Administrator and the Distribution Agent are entitled to conclusively rely on the delivery of the notice to the last known address and last known email address on file with the Claims Agent without obligation to verify such address and any such requests delivered to such address shall be deemed to be received.

7.15.    <u>Distribution of Available NFTs</u>

Any Holder of an NFT Customer Entitlement Claim shall comply with the requirements and procedures that the Plan Administrator may establish in his or her reasonable discretion for the Distribution of Available NFTs. If a Holder of NFT Customer Entitlement Claims fails to comply with such requirements or procedures by a date determined by the Plan Administrator in his or her reasonable discretion and noticed to all Holders of NFT Customer Entitlement Claims, such Holder shall be deemed to have forfeited its right to receive Distributions of Available NFTs, and shall be forever barred and enjoined from asserting any right to Distributions on account of its NFT Customer Entitlement Claim. Any Distributions that are forfeited pursuant to this <u>Section 7.15</u> shall revest in the Wind Down Entities as Plan Assets. For all purposes related to this <u>Section 7.15</u>, the Plan Administrator and the Distribution Agent are entitled to conclusively rely on the delivery of the notice to the last known address and last known email address on file with the Claims Agent without obligation to verify such address and any such requests delivered to such address shall be deemed to be received.

## 8.    CLAIMS ADMINISTRATION PROCEDURES

### 8.1.    Objections to Claims

Any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Plan Administrator, by filing a motion to extend on or before the Claims Objection Deadline. The Plan Administrator shall have standing to object to Claims. Except as otherwise set forth in the Plan, after the Effective Date, the Plan Administrator and each Wind Down Entity shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.

### 8.2.    Estimation of Claims

Except as may be provided in the Digital Assets Estimation Order, before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may, within their reasonable discretion, at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not yet been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including, but not limited to, for purposes of Distributions), and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or under the Plan. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation of such Claim unless the Holder of such Claim has filed a motion with the Bankruptcy Court requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

### 8.3.    Expungement and Disallowance of Claims

### 8.3.1    Paid, Satisfied, Amended, Duplicated or Superseded Claims

Any Claim or Interest that has been paid, satisfied, amended, duplicated (by virtue of the substantive consolidation provided for under the Plan or otherwise), superseded or otherwise dealt with or treated in the Plan, may be adjusted or expunged on the Claims Register at the direction of the Plan Administrator without the Plan Administrator having to file an objection,

application, motion, complaint or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order or approval of the Bankruptcy Court.

### 8.3.2   Claims by Persons from Whom Property Is Recoverable

Unless otherwise agreed to by the Debtors, the Plan Administrator or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person or Entity has been resolved.

### 8.4.   Amendments to Proofs of Claim

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

### 8.5.   Disputed Claims Reserve

On or prior to the Initial Distribution Date, the Plan Administrator shall establish, if necessary, a reserve (the "Disputed Claims Reserve") (a) on account of Disputed Claims that may be subsequently Allowed after the Effective Date, and (b) to cover payments to FTX DM that may be required under the FTX DM Global Settlement Agreement.  The Plan Administrator shall (i) reserve, as necessary, cash on hand in a manner consistent with Article 4 on account of the Disputed Claims Reserve in the amount that would otherwise be distributable to estimated Disputed Claims pursuant to the Plan, (ii) administer, adjust and maintain the Disputed Claims Reserve, and (iii) withhold in the Disputed Claims Reserve any amount to fund subsequent Distributions pursuant to the Plan or payments that may be under the FTX DM Global Settlement Agreement.  The Plan Administrator may, but shall not be required to, seek estimation of any Disputed Claim by the Bankruptcy Court under section 502 of the Bankruptcy Code.

### 8.6.   No Distributions Pending Allowance

If an objection to the amount, validity, priority or classification of a Claim or a portion thereof is filed or is intended to be filed as set forth in this Article 8 or a Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim or is otherwise settled or resolved.

8.7.    <u>Distributions After Allowance</u>

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan.

8.8.    <u>Administration Responsibilities</u>

Except as otherwise specifically provided in the Plan, after the Effective Date the Plan Administrator shall have the sole authority (subject to the terms of the Plan Administration Agreement) to (a) file, withdraw or litigate to judgment objections to Claims, other than Claims that are subject to a valid and timely Bahamas Opt-In Election, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, (c) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court and (d) determine, without the need for notice to or action, order or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is filed is Allowed.  Nothing in this <u>Section 8.8</u> shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Deadline unless otherwise ordered by the Bankruptcy Court.

8.9.    <u>Claims Paid or Payable by Third Parties</u>

The Debtors or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and also receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the applicable Debtor, the applicable Wind Down Entity, or the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the applicable Distribution Date.

## 9. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

### 9.1. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of this Article 9.

(a) <u>Confirmation Order</u>. The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, in consultation with the Supporting Parties, and there shall not be a stay or injunction in effect with respect thereto.

(b) <u>Professional Fee Escrow Account</u>. The Debtors shall have established and funded the Professional Fee Escrow Account in accordance with Section 3.4.2.

(c) <u>Professional Fee Payments</u>. All professional fees and expenses of the Debtors, the Official Committee and the Ad Hoc Committee as of the Effective Date that were due and payable under an order of the Bankruptcy Court shall have been paid in full, other than any Professional Claims subject to approval by the Bankruptcy Court.

(d) <u>IRS Settlement</u>. (i) The Bankruptcy Court shall have entered an order in form and substance reasonably acceptable to the Debtors approving the IRS Settlement, (ii) the IRS Settlement shall not have been terminated or suspended, and (iii) all conditions precedent to the effectiveness of the IRS Settlement, other than the occurrence of the Effective Date, shall have been satisfied.

(e) <u>FTX DM Global Settlement Agreement</u>. The FTX DM Global Settlement Agreement shall be in full force and effect and shall not have been terminated or suspended.

(f) <u>Plan Documents</u>. The Plan, Plan Supplement, Confirmation Order and all documents related thereto shall be in form and substance reasonably acceptable to the Debtors and any conditions precedent thereto shall have been satisfied, waived or satisfied contemporaneously with the occurrence of the Effective Date; *provided* that, to the extent any proposed documents would adversely affect the amount or timing of Distributions or the rights or powers of the Plan Administrator, the Advisory Committee or the Appointed Director, such documents shall also be in form and substance reasonably acceptable to the Supporting Parties.

(g) <u>Necessary Documents</u>. All actions, documents, certificates and agreements necessary to implement the Plan, including the Plan Administration Agreement, shall have been effected or executed and delivered, as applicable.

(h)    Necessary Authorizations.  All authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved.

(i)    Governmental Action.  No governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Plan or any of the other transactions contemplated hereby and no governmental entity shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Plan.

9.2.    Waiver of Conditions

The Debtors may, in consultation with the Supporting Parties, waive conditions to the occurrence of the Effective Date set forth in this Article 9 at any time without further notice, leave or order the Bankruptcy Court or any formal action other than proceeding to consummate the Plan; *provided* that the Debtors may not waive the condition set forth in Section 9.1(e) without the prior written consent of the Bahamas JOLs.

9.3.    Simultaneous Transactions

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtors, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

9.4.    Effect of Non-Occurrence of the Effective Date

If the Effective Date does not occur by the ninetieth (90th) day following the date on which the Confirmation Order becomes a Final Order, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall constitute a waiver or release of any claims by or Claims against or Interests in the Debtors, prejudice in any manner the rights of the Debtors or any other Person, or constitute an admission, acknowledgment, offer or undertaking by the Debtors or any Person.

9.5.    Notice of Effective Date

As soon as practicable after the Effective Date has occurred, the Plan Administrator shall file with the Bankruptcy Court a notice specifying the Effective Date.

10.    <u>SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS</u>

10.1.    <u>Subordinated Claims</u>

The Debtors reserve the right to reclassify or modify the treatment of any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination rights, except to the extent the Debtors have otherwise agreed in writing with the Holder of the applicable Allowed Claim or Interest.

10.2.    <u>Release of Liens</u>

**Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Entities and their successors and assigns.  Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Plan Administrator to evidence such release, including the execution, delivery and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

10.3.    <u>Debtors' Release</u>

**Except as otherwise specifically provided in the Plan with respect to the Preserved Potential Claims, for good and valuable consideration, including the service of the Released Parties and the Supporting Preferred Shareholders and their Affiliates (in their capacities as such) to facilitate the administration of the Chapter 11 Cases and the implementation of the orderly liquidation contemplated by the Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, the Released Parties and the Supporting Preferred Shareholders and their Affiliates (in their capacities as such) are hereby conclusively, absolutely, unconditionally, irrevocably and forever released, waived and discharged by the Debtors, the Plan Administrator and the Estates, including any successor to, or assignee of the Debtors or any Estate representative, from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, and its successors, assigns and representatives, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, breach of contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Plan Administrator or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or**

Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the release of any mortgage, lien or security interest, the distribution of proceeds, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the administration of Claims and Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party or Supporting Preferred Shareholder or their Affiliates (in their capacities as such) to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act; *provided* that the release under this <u>Section 10.4</u> shall not apply to (a) any Excluded Party, (b) Causes of Action to the extent arising out of conduct that occurred prior to the Petition Date, or (c) any Preserved Potential Claims to the extent such Preserved Potential Claims are brought by and for the benefit of the Wind Down Entities with the approval of the Plan Administrator. Nothing in the Plan or Confirmation Order shall affect any releases previously granted or approved by the Court.

10.4.    <u>Voluntary Release by Holders of Claims and Interests</u>

For good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, the implementation of the Plan, and the distribution of proceeds, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, and its successors, assigns and representatives, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, breach of contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Plan Administrator, FTX DM, the Bahamas JOLs, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, FTX DM, the conduct of the businesses of the Debtors or FTX DM, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Plan Supplement, the FTX DM Global Settlement Agreement or the Disclosure Statement, the administration of Claims and Interests prior to or during these Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the

Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act. Nothing in this <u>Section 10.5</u> shall cause the release of (a) any Excluded Party, (b) Causes of Action to the extent arising out of conduct that occurred prior to the Petition Date, or (c) any Preserved Potential Claims that are otherwise transferred to, and may be prosecuted by, the Wind Down Entity pursuant to the terms of the Plan.

10.5.    <u>FTX DM and JOL Releases</u>

The releases in the FTX DM Global Settlement Agreement are hereby expressly incorporated and repeated herein. Nothing in the Plan or Confirmation Order shall affect the releases previously granted or approved by the Court pursuant to the order approving the FTX DM Global Settlement Agreement.

10.6.    <u>Scope of Releases</u>

Each Person providing releases under the Plan, including the Debtors, the Plan Administrator, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

10.7.    <u>Exculpation</u>

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Section 10.4</u> or <u>Section 10.5</u> of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Entity for any act or omission occurring on or after the Petition Date and on or before the Effective Date in connection with, related to, or arising out of these Chapter 11 Cases, including (a) the

administration and adjudication of Claims and Interests during these Chapter 11 Cases; (b) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Cases (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan, the trading or sale of cryptocurrencies and tokens in connection with the Chapter 11 Cases, the offer and issuance of any securities under or in connection with the Plan and the distribution of property, Digital Assets, or tokens under the Plan); or (c) any other transaction, agreement, event, or other occurrence related to these Chapter 11 Cases taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.  Notwithstanding anything contained herein to the contrary, the foregoing exculpation does not exculpate any Excluded Party.  Nothing in the Plan or Confirmation shall affect any exculpation orders previously granted or approved by the Court.

10.8.    Injunction

Except as otherwise expressly provided in the Plan or Confirmation Order with respect to Preserved Potential Claims, the satisfaction and release pursuant to this **Article 10** shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Interests or Causes of Action from (a) commencing or continuing any action to collect, enforce, offset, recoup or recover with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 or 1141 thereof, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claims or Interests; and (d) asserting any right of setoff that was not validly asserted before Confirmation, or subrogation of any kind on account of or in connection with or with respect to any such Claim or Interest, against any Plan Asset, the Wind Down Entities, any Holder of a Claim or Interest or any initial or subsequent transferee.  Notwithstanding anything to the contrary in the Plan, all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date.

10.9.    Limitations on Exculpations and Releases

Notwithstanding anything to the contrary herein, none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations,

**(b) arising under the FTX DM Global Settlement Agreement or (c) solely in the case of releases, expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, including the Preserved Potential Claims.**

## 11. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### 11.1. Modification of Plan

Subject to the limitations contained in the Plan: (a) the Debtors reserve the right, in consultation with the Supporting Parties and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications with respect to the treatment of Classes 3A, 5A, 5B, 6A, 6B 7A, 7B, 7C, 8B, 8C, 10A, 10B, 10C or 12 to satisfy section 1129(b) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtors or the Plan Administrator, as applicable, may, in consultation with the Supporting Parties and upon order of the Bankruptcy Court, (i) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or (ii) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; *provided* that in each case of clauses (a) and (b), to the extent any such amendments or modifications would adversely affect the amount or timing of Distributions or the rights or powers of the Plan Administrator, Advisory Committee or the Appointed Director, such amendments or modifications shall be in form and substance reasonably acceptable to the Supporting Parties.

### 11.2. Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3. Revocation of Plan

The Debtors reserve the right, in consultation with the Supporting Parties, to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization or liquidation. If the Debtors revoke or withdraw the Plan, if the Confirmation Order is not entered or the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Causes of Action, Claims by or Claims against, or any Interests in, any Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## 12.    RETENTION OF JURISDICTION

12.1.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

(b)    Conduct a Joint Claims Hearing in accordance with the FTX DM Global Settlement Agreement;

(c)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(d)    Resolve any matters related to:  (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(e)    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the Plan and adjudicate any and all disputes from, or relating to Distributions under the Plan;

(f)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and Causes of Action, including the Preserved Potential Claims, and grant or deny any applications;

(g)    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)    Enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or

documents created in connection with the Plan, Plan Supplement or the Disclosure Statement;

(i)    Enter, adjudicate and enforce any order for the sale of property pursuant to section 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)    Adjudicate, decide or resolve any and all disputes as to the ownership of any Claim or Interest;

(k)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan;

(l)    Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the existence, nature and scope of the releases, injunctions and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions and other provisions;

(m)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Plan Administration Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(o)    Enter an order or final decree concluding or closing these Chapter 11 Cases;

(p)    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)    Hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation or enforcement of the Plan, including the releases or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(r)    Hear and determine all disputes relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(s)  Enforce and adjudicate all orders previously entered by the Bankruptcy Court; and

(t)  Hear any other matter not inconsistent with the Bankruptcy Code, the Plan or the Confirmation Order.

## 13.    MISCELLANEOUS PROVISIONS

### 13.1.    Immediate Binding Effect

Notwithstanding Bankruptcy Rule 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### 13.2.    Additional Documents; Further Assurances

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Plan Administrator and all Holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### 13.3.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (a) any Debtor with respect to the Holders of Claims or Interests or any other Entity or (b) any Holder of a Claim or an Interest or any other Entity prior to the Effective Date.

### 13.4.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### 13.5.    Term of Injunction or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

13.6.   Entire Agreement

On the Effective Date, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations with respect to the subject matter hereof and thereof, all of which have become merged and integrated into the Plan.

13.7.   Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Copies of such exhibits and documents may be obtained upon written request to the Debtors' counsel at the address below or by downloading such exhibits and documents from the website of the Debtors' Notice and Claims Agent, at https://restructuring.ra.kroll.com/FTX/ or the Bankruptcy Court's electronic docket for the Debtors' Chapter 11 Cases at https://.ecf.deb.uscourts.gov/ (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.uscourts.gov). In addition, copies of such exhibits and documents may be requested from the Notice and Claims Agent at (888) 482-0049 (U.S./Canada) or (646) 440-4176 (International).

13.8.   Nonseverability of Plan Provisions upon Confirmation

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

13.9.   Dissolution of Official Committee

On the Effective Date, the Official Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that the Official Committee will stay in existence solely for the limited purpose of (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions, litigation or appeals seeking enforcement of the provisions of the Plan or under the Confirmation Order, and (c) motions, litigation or appeals pending on the Effective Date in which the Committee is a party; *provided, further*, that, with respect to pending appeals and related proceedings, the Official Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.

13.10.  Termination of Fee Examiner's Appointment

Upon the resolution of all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code by professionals subject to review by the Fee Examiner, the Fee Examiner's appointment shall terminate, and the Fee Examiner shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

13.11.  Debtors' Directors and Officers

On the Effective Date, each of the Debtors' directors and officers shall be released and discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

13.12.  Closing of Chapter 11 Cases

The Plan Administrator shall, promptly after the full administration of these Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.  The Plan Administrator may also, in its discretion, file the necessary documents to close any individual Debtor's case at any appropriate time.

13.13.  Conflicts

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent any provision of the Plan, Disclosure Statement, the Plan Supplement or any other document referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing) conflicts with or is in any way inconsistent with the Confirmation Order, the Confirmation Order shall govern and control.

13.14.  No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

13.15.  Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

13.16.  Post-Effective Date Service

After the Effective Date, the Debtors, Wind Down Entities (including, for the avoidance of doubt, the FTX Recovery Trust), or Plan Administrator, as applicable are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed renewed requests for service after the Effective Date.  For the avoidance of doubt, the Debtors, Wind Down Entities (including the FTX Recovery Trust), or Plan Administrator, as applicable shall comply in all respects with Bankrupcy Rule 2002-1(b).

13.17.  Notices

All notices, requests, pleadings and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

      (a)    If to the Debtors, to:

        Sullivan & Cromwell LLP
        125 Broad Street
        New York, NY 10004
        Attn:  Andrew G. Dietderich
              James L. Bromley
              Brian D. Glueckstein
              Alexa J. Kranzley
        E-mail:  dietdericha@sullcrom.com
                bromleyj@sullcrom.com
                gluecksteinb@sullcrom.com
                kranzleya@sullcrom.com

        and

        Landis Rath & Cobb LLP
        919 Market Street, Suite 1800
        Wilmington, Delaware 19801
        Attn:  Adam Landis
              Kimberly A. Brown
              Matthew R. Pierce
        E-mail:  landis@lrclaw.com
                brown@lrclaw.com
                pierce@lrclaw.com

      (b)    If to the Official Committee, to:

        Paul Hastings LLP
        200 Park Avenue

-87-

New York, NY 10166
Attn:  Kristopher M. Hansen
      Kenneth Pasquale
      Erez E. Gilad
      Gabriel E. Sasson
      Isaac S. Sasson
E-mail:  krishansen@paulhastings.com
        kenpasquale@paulhastings.com
        erezgilad@paulhastings.com
        gabesasson@paulhastings.com
        isaacsasson@paulhastings.com

and

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Attn:  Matthew B. Lunn
      Robert F. Poppiti, Jr.
E-mail:  mlunn@ycst.com
        rpoppiti@ycst.com

(c)    If to the Ad Hoc Committee, to:

Eversheds Sutherland (US) LLP
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Attn:  Erin E. Broderick
      Michael A. Rogers
E-mail:  erinbroderick@eversheds-sutherland.com
        michaelrogers@eversheds-sutherland.com

and

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Attn:  Matthew B. Harvey
      Jonathan M. Weyand
E-mail:  mharvey@morrisnichols.com
        jweyand@morrisnichols.com

(d)    If to the U.S. Trustee, to:

United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building

-88-

844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Attn:  Benjamin A. Hackman
       Linda Richenderfer
E-mail:   Benjamin.A.Hackman@usdoj.gov
          Linda.Richenderfer@usdoj.gov

(e)      If to the <u>Bahamas JOLs</u>, to:

White & Case LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Attn:  Brian Pfeiffer
       Chris Shore
E-mail:   brian.pfeiffer@whitecase.com
          cshore@whitecase.com

Dated:  September 30, 2024
Wilmington, Delaware

FTX Trading Ltd., on behalf of itself and all other
Debtors

By:  _/s/ John J. Ray III_____

Name:  John J. Ray III

Title:  Chief Executive Officer and Chief
Restructuring Officer

**<u>Exhibit B</u>**

**Notice of Confirmation**

{1368.002-W0077668.}

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No.** |

**NOTICE OF EFFECTIVE DATE OF
THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES**

      **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court"), entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "Confirmation Order"). The Confirmation Order, among other things, confirmed the *Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D.I. [●]] (including the Plan Supplement and all other exhibits and schedules thereto, as may be amended, modified or supplemented from time to time in accordance with its terms and the terms hereof, the "Plan").[2]

•      **PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the Effective Date of the Plan occurred. All conditions precedent to the Effective Date set forth in Article 9 of the Plan have either been satisfied or waived in accordance with the Plan and the Confirmation Order.

      **PLEASE TAKE FURTHER NOTICE** that in accordance with Section 3.1 of the Plan, any Holder of an Administrative Claim (except as otherwise provided in the Plan) that accrued on or before the Effective Date must file and serve a request for payment of such Administrative Claim on the Plan Administrator **on or before 4:00 p.m. (prevailing Eastern Time) on the 30th day after the Effective Date** (the "Administrative Claim Bar Date"). Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Debtors, the Wind Down Entities

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

{1368.002-W0077668.}