**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: <u>Docket No. 26404</u>** |

<u>**NOTICE OF APPEAL**</u>

<u>**Part 1: Identify the appellant(s)**</u>

1. Name(s) of appellant(s): LayerZero Labs Ltd., Ari Litan, and Skip & Goose LLC
(collectively, the "<u>LayerZero Group</u>")

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject
of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | |
| ☐ Defendant | ☐ Debtor |
| ☐ Other (describe) _____ | ☒ Creditor |
| | ☐ Trustee |
| | ☐ Other (describe) _____ |

<u>**Part 2: Identify the subject of this appeal**</u>

1. Describe the judgment—or the appealable order or decree—from which the appeal is
taken:

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and
4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the
Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list
of such information may be obtained on the website of the Debtors' claims and noticing agent at
<u>https://cases.ra.kroll.com/FTX</u>. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is
Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates (Docket No. 26404), a copy of which is attached hereto as **Exhibit A**.

2. State the date on which the judgment—or the appealable order or decree—was entered:

October 8, 2024

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: FTX Trading Ltd., et al.     Attorneys:

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
**LANDIS RATH & COBB LLP**
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
            mcguire@lrclaw.com
            brown@lrclaw.com
            pierce@lrclaw.com

-and-

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
            bromleyj@sullcrom.com
            gluecksteinb@sullcrom.com
            kranzleya@sullcrom.com

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

N/A

**Part 5: Sign below**

Dated: October 21, 2024
Wilmington, Delaware

By: */s/ Sameen Rizvi*

M. Blake Cleary (No. 3614)
R. Stephen McNeill (No. 5210)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: bcleary@potteranderson.com
        rmcneill@potteranderson.com
        srizvi@potteranderson.com

-and-

Brian S. Rosen, Esq.
Dylan J. Marker, Esq.
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036-8299
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
Email:  brosen@proskauer.com
         dmarker@proskauer.com

-and-

Jordan E. Sazant (DE Bar No. 6515)
**PROSKAUER ROSE LLP**
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Email: jsazant@proskauer.com

-and-

William D. Dalsen, Esq.
Genesis Sanchez Tavarez, Esq.
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110-2600
Telephone:  (617) 526-9600
Email:  wdalsen@proskauer.com
           gsancheztavarez@proskauer.com

*Counsel to LayerZero Group*

## Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 26029** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

FTX Trading Ltd. and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), having:[2]

a.  commenced these chapter 11 cases, (i) on November 11, 2022 for all Debtors except for West Realm Shires Inc. and (ii) on November 14, 2022 for West Realm Shires Inc., in each case, by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" and, all such cases, the "Chapter 11 Cases");[3]

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]  Capitalized terms used but not otherwise defined in this order (this "Confirmation Order") shall have the meanings ascribed to such terms in the Plan, attached hereto as Exhibit A. The rules of interpretation set forth in Section 2.2 of the Plan shall apply to this Confirmation Order.

[3]  During these Chapter 11 Cases, the following Debtors were dismissed: (i) SNG Investments Yatirim Ve Danismanlik Anonim Sirketi (Case No. 22-11093); (ii) FTX Turkey Teknoloji Ve Ticaret Anonim Sirketi (Case No. 22-11170); (iii) FTX Exchange FZE (Case No. 22-11100); (iv) Liquid Financial USA, Inc. (Case No. 22-11151); (v) LiquidEX, LLC (Case No. 22-11152); (vi) Zubr Exchange Limited (Case No. 22-11132); (vii) DAAG Trading, DMCC (Case No. 22-11163); (viii) FTX Crypto Services Ltd. (Case No. 22-11165); (ix) FTX Products (Singapore) Pte Ltd. (Case No. 22-11119); (x) Liquid Securities Singapore Pte Ltd. (Case No. 22-11086); (xi) Analisya Pte Ltd. (Case No. 22-11080); (xii) Quoine Vietnam Co. Ltd. (Case No. 22-11092); (xiii) Alameda Aus Pty Ltd. (Case No. ); (xiv) Alameda Research Pte Ltd. (Case No. 22-11107); (xv) Innovatia Ltd. (Case No. 22-11128); (xvi) FTX Japan Services K.K. (Case No. 22-11103); (xvii) Quoine India Pte Ltd. (Case No. 22-11091); (xviii) FTX Switzerland GmbH (Case No. 22-11169); (xix) FTX Certificates GmbH (Case No. 22-11164); (xx) FTX Structured Products AG (Case No. 22-11122); (xxi) FTX Trading GmbH (Case No. 22-11123); and (xxii) FTX Japan K.K.(Case No. 22-11102).

b.      filed, on October 16, 2023, the *Notice of Proposed Settlement of Customer Property Disputes* [D.I. 3291], attaching the Settlement and Plan Support Agreement thereto as Exhibit A, which is implemented through the Customer Priority Settlement contained in the Plan;

c.      filed, on December 16, 2023, the *Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 4861] (as amended and supplemented from time to time, the "Plan");

d.      filed, on December 16, 2023, the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Affiliated Debtors and Debtors-in-Possession* [D.I. 4862] (including all exhibits and schedules thereto, the "Disclosure Statement");

e.      filed, on December 16, 2023, the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 4863];

f.      filed, on December 27, 2023, the *Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 5202] (the "Digital Assets Estimation Motion");

g.      filed, between May 7, 2024 and June 25, 2024, multiple revised versions of the Plan [D.I. 14300, 15520, 18536 and 18975] and the Disclosure Statement [D.I. 14301, 15521, 18437 and 18976], each reflecting additional updates and discussions with parties in interest;

h.      filed, on June 27, 2024, the solicitation versions of the Plan [D.I. 19139] and Disclosure Statement [D.I. 19143];

i.      caused to be distributed solicitation materials by July 10, 2024, consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving Solicitation Packages; (III) Approving the Forms of Ballots; (IV) Establishing Voting, Solicitation and Tabulation Procedures; and (V) Establishing Notice and Objection Procedures for the Confirmation of the Plan* [D.I. 19068] (the "Solicitation Procedures Order"), which approved, among other things, solicitation and voting procedures (the "Solicitation and Voting Procedures") and related materials, notices, forms and ballots to be provided to each Class (collectively, the "Solicitation Packages"), as evidenced by the *Affidavit of Mailing of James Daloia* [D.I. 25841] (the "Kroll Affidavit of Service");

j.      caused the publication of the Confirmation Hearing Notice in *The New York Times* on July 3, 2024, the international edition of *The New York Times* on July 8, 2024, and on *Coindesk.com* from July 3 through July 10, 2024, as evidenced by the Certificate of Publication [D.I. 23987] (the "Publication Certification");

k.      filed, on August 2, 2024, the *First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 22165], reflecting additional updates and discussions with parties in interest;

l.      filed, on August 2, 2024, the Plan Supplement [D.I. 22163] (as amended and supplemented from time to time, the "<u>Plan Supplement</u>") in accordance with the Solicitation Procedures Order, containing the following documents:  (i) the Draft Plan Administration Agreement (<u>Exhibit 1</u> to the Plan Supplement); (ii) the Liquidating Trust Agreement (<u>Exhibit 2</u> to the Plan Supplement); (iii) the List of Wind Down Board Members (<u>Exhibit 3</u> to the Plan Supplement); (iv) the List of Advisory Committee Members (<u>Exhibit 4</u> to the Plan Supplement); (v) the List of Excluded Customer Preference Actions (<u>Exhibit 5</u> to the Plan Supplement); (vi) the Wind Down Budget (<u>Exhibit 6</u> to the Plan Supplement); (vii) the List of Assumed Executory Contracts and Unexpired Leases (<u>Exhibit 7</u> to the Plan Supplement); (viii) the List of Excluded Entities (<u>Exhibit 8</u> to the Plan Supplement); (ix) the List of Separate Subsidiaries (<u>Exhibit 9</u> to the Plan Supplement); and (x) the Amended and Restated Rothschild Reimbursement Agreement (<u>Exhibit 10</u> to the Plan Supplement);

m.      filed, on August 30, 2024, the *Notice of (I) Executory Contracts and Unexpired Leases Proposed to Be Assumed by the Debtors Pursuant to the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates, (II) Cure Amounts, If Any, and (III) Related Procedures In Connection Therewith* [D.I. 24029] (as amended and supplemented from time to time, the "<u>Cure Notice</u>") and caused the Cure Notice to be distributed to counterparties to the Debtors' Executory Contracts and Unexpired Leases identified therein, as evidenced by, among other things, the *Affidavit/Declaration of Mailing of Ali Hamza Regarding Notice of (I) Executory Contracts and Unexpired Leases Proposed to Be Assumed by the Debtors Pursuant to the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates, (II) Cure Amounts, If Any, and (III) Related Procedures In Connection Therewith*  [D.I. 24485] (the "<u>Initial Cure Notice Affidavit</u>");

n.       filed, on September 23, 2024, a subsequent version of the Cure Notice [D.I. 25650] and caused it to be distributed to counterparties to the Debtors' Executory Contracts and Unexpired Leases identified therein, as evidenced by, among other things, the *Affidavit/Declaration of Mailing of Engels Medina Regarding Notice of Filing of First Amended Plan Supplement and Notice of (I) Executory Contracts and Unexpired Leases Proposed to Be Assumed by the Debtors Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* [D.I. 26033] (together with the Initial Cure Notice Affidavit, the "<u>Cure Affidavits of Service</u>");

o.      filed, on September 23, 2024, the *First Amended Plan Supplement* [D.I. 25649], consisting of the Amended and Restated List of Assumed Executory Contracts and Unexpired Leases;

p.    filed, on September 30, 2024, the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26029], reflecting additional updates and discussions with parties in interest;

q.    filed, on September 30, 2024, the *Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26045] (the "<u>Voting Report</u>");

r.    filed, on September 30, 2024, the *Debtors' Memorandum of Law in support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26035] (the "<u>Plan Confirmation Brief</u>");

s.    filed, on September 30, 2024, the *Debtors' Omnibus Reply to Objections to Confirmation of the Second Amended Joint Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26039] (the "<u>Debtors' Reply Brief</u>");

t.    filed, on September 30, 2024, the *Declaration of Steven P. Coverick in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and Its Debtor Affiliates* [D.I. 26041] (the "<u>Coverick Declaration</u>");

u.    filed, on September 30, 2024, the *Declaration of Edgar W. Mosley in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading, Ltd. and Its Debtor Affiliates* [D.I. 26044] (the "<u>Mosley Declaration</u>"); and

v.    filed, on September 30, 2024, the *Declaration of the Rt. Hon. Lord Neuberger of Abbotsbury* [D.I. 26042] (the "<u>Neuberger Declaration</u>", and together with the Coverick Declaration and the Mosley Declaration, the "<u>Confirmation Declarations</u>").

The Court having:

a.    entered on February 7, 2024, the *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090], approving the Digital Assets Estimation Motion;

b.    entered, on June 26, 2024, the *Memorandum Opinion and Order* [D.I. 19069], ordering the pricing of the MAPS, OXY, SRM and BOBA tokens;

c.    entered, on June 26, 2024, the Solicitation Procedures Order;

d.    reviewed the Plan, the Plan Supplement, the Plan Confirmation Brief, the Confirmation Declarations, the Debtors' Reply Brief, the Voting Report and all other evidence admitted into the record of the Confirmation Hearing, as well as pleadings, statements, responses and comments regarding Confirmation, including all objections, statements and reservations of rights made with respect thereto;

e.    heard the statements, arguments and objections made by counsel and parties-in-interest in respect of Confirmation;

f.   considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

g.   overruled, including for the reasons stated on the record of the Confirmation Hearing, any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved, waived, settled or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing; and

h.   taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases, all evidence proffered or adduced, and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

**NOW, THEREFORE,** the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases established through the testimony set forth at the Confirmation Hearing, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, the Plan Confirmation Brief, the Debtors' Reply Brief, the Voting Report, and each of the Confirmation Declarations, each of which was admitted into evidence at the Confirmation Hearing, establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   Findings and Conclusions

1.   The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as

such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.     Jurisdiction and Venue**

2.      The Court has jurisdiction to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue was proper as of the Petition Date and is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has jurisdiction to enter a final order with respect thereto.  The statutory predicates for the relief requested herein are section 1125, 1126, 1127, 1128 and 1129 of the Bankruptcy Code and Bankruptcy Rules 2002, 3016, 3017, 3018, 3020 and 9019.

**C.     Eligibility for Relief**

3.      Each Debtor qualifies as a "debtor" under Bankruptcy Code section 109.  As such, the Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code and proper proponents of the Plan.

**D.     Commencement of these Chapter 11 Cases**

4.      On the Petition Date, each of the Debtors filed with the Court a voluntary petition for relief under title 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their assets as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Joint administration of these Chapter 11 Cases was authorized by the Court by entry of an order on November 22, 2022 [D.I. 128].

**E.     Judicial Notice**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including all pleadings and

other documents on file, all orders entered, all hearing transcripts, and all testimony, documents

and arguments made, proffered or adduced at and accepted into evidence at the hearings held

before the Court during the pendency of these Chapter 11 Cases.

**F.      Appointment of the Official Committee**

6.      On December 15, 2022, Andrew R. Vara, the United States Trustee for

Region 3 (the "U.S. Trustee"), appointed an official committee of unsecured creditors (the

"Official Committee") pursuant to section 1102 of the Bankruptcy Code to represent the interests

of unsecured creditors in these Chapter 11 Cases [D.I. 231].[4]

**G.      Solicitation Procedures Order**

7.      On June 26, 2024, the Court entered the Solicitation Procedures Order,

which, among other things:  (a) approved the Disclosure Statement as containing adequate

information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed June 25, 2024

as the Voting Record Date (as defined in the Solicitation Procedures Order); (c) fixed 4:00 p.m.

(prevailing Eastern Time) on August 16, 2024 as the Confirmation Objection Deadline (as

defined in the Solicitation Procedures Order); (d) fixed 4:00 p.m. (prevailing Eastern Time) on

August 16, 2024 as the Voting Deadline (as defined in the Solicitation Procedures Order);

(e) fixed 10:00 a.m. (prevailing Eastern Time) on October 7, 2024 as the date and time for the

commencement of the Confirmation Hearing; and (f) approved the Solicitation and Voting

Procedures, the Solicitation Package and other materials relating to solicitation that were

attached as exhibits to the Solicitation Procedures Order.

---

[4]      Following the resignations of six members of the Official Committee [D.I. 3685, 12036, 19221], the Official
Committee currently comprises the following members: (i) Pulsar Global; (ii) Larry Qian; and (iii) Wincent
Investment Fund.

**H.     Transmittal and Mailing of Materials; Notice**

8.     As evidenced by the Kroll Affidavit of Service, the Cure Affidavits of Service, and the Voting Report, due, adequate and sufficient notice of the Plan, the Disclosure Statement, the Solicitation Procedures Order, the ballots (including, where applicable, the elections with respect to the Bahamas Opt-In Election (the "Bahamas Opt-In Election"), the elections with respect to treatment as convenience claims and the elections with respect to the stipulated amount of Claims), the election forms with respect to the third-party releases contained in the Plan (the "Third-Party Release Election Forms"), the Confirmation Hearing, the Confirmation Objection Deadline, the Voting Deadline, and notice of the assumptions of Executory Contracts and Unexpired Leases to be assumed by the Debtors and related cure amounts and the procedures for objecting thereto and resolution of disputes by the Court thereof has been given to, as applicable:  all known Holders of Claims and Interests, the U.S. Trustee, counsel to the Official Committee, counsel to the Ad Hoc Committee, the Securities and Exchange Commission, the Internal Revenue Service, the United States Department of Justice, the United States Attorney for the District of Delaware, all non-Debtor counterparties to the Executory Contracts and Unexpired Leases identified on the Cure Notices, and those parties requesting notice pursuant to Bankruptcy Rule 2002.

9.     As evidenced by the Publication Certification, the Confirmation Hearing Notice was published in *The New York Times* on July 3, 2024, the international edition of *The New York Times* on July 8, 2024 and on *Coindesk.com* from July 3 through July 10, 2024.

10.     Adequate and sufficient notice of the Confirmation Hearing, and all applicable dates, deadlines and hearings described in the Solicitation Procedures Order, was given in compliance with the Bankruptcy Rules, the Local Rules and the Solicitation Procedures

Order as evidenced by the Kroll Affidavit of Service, the Publication Certification and the Cure Affidavits of Service, and no other or further notice is or shall be required.

**I.      Solicitation**

11.      As evidenced by the Kroll Affidavit of Service, votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with the Solicitation Procedures Order, sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any other applicable rules, laws and regulations.  All procedures used to distribute Ballots to the applicable Holders of Claims or Interests and to tabulate the ballots were fair and reasonable and conducted in good faith and in accordance with the Solicitation Procedures Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.      Specifically, as evidenced by the Kroll Affidavit of Service, the Solicitation Packages approved by the Court in the Solicitation Procedures Order were transmitted to and served on all Holders in Classes that were entitled to vote to accept or reject the Plan.  Non-voting notices, including Third-Party Release Election Forms, were transmitted to and served on Holders in Classes that were not entitled to vote to accept or reject the Plan, and relevant portions of the Solicitation Package and other materials approved by the Solicitation Procedures Order, were transmitted to and served on other parties-in-interest in these Chapter 11 Cases, all in compliance with section 1125 of the Bankruptcy Code, the Solicitation Procedures Order, the Solicitation and Voting Procedures, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations.  Transmittal and service of such documents were adequate and sufficient, and no other or further notice is or shall be required.

**J.      Voting Report**

13.      The Debtors filed the Voting Report on September 30, 2024, consistent

with the Solicitation Procedures Order.  As evidenced by the Voting Report, all procedures used

to tabulate ballots received in connection with Confirmation were fair and conducted in

accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules and all other applicable rules, laws and regulations.

14.      As set forth in the Plan, the Solicitation and Voting Procedures, and the

Disclosure Statement, Holders of Claims in Class 3A, Class 5A, Class 5B, Class 6A, Class 6B,

Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 10A, Class 10B and Class 10C and

Holders of Interests in Class 12 were eligible to vote on the Plan.  Holders of Claims in Class 1,

Class 2, Class 3B, Class 4, Class 5C and Class 8A are presumed to accept the Plan and,

therefore, were not entitled to vote to accept or reject the Plan.  Holders of Claims or Interests in

Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 are deemed to

reject the Plan and, therefore, were not entitled to vote to accept or reject the Plan.

15.      As evidenced by the Voting Report, Holders of Claims in Class 3A, Class

5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 10A,

Class 10B and Class 10C and Holders of Interests in Class 12 (collectively, the "Impaired

Accepting Classes") voted to accept the Plan.  Holders of Claims or Interests in Class 9, Class

11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 (collectively, the "Impaired

Rejecting Classes") are Impaired and are deemed to reject the Plan.

16.      Based on the foregoing, and as evidenced by the Voting Report, at least

one Impaired Class of Claims has voted to accept the Plan (determined without including any

acceptance of the Plan by any insiders of the Debtors) in accordance with the requirements of

sections 1124 and 1126 of the Bankruptcy Code.  Further, as evidenced by the Voting Report,

votes to accept the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**K.      Plan Modifications**

17.      Subsequent to the commencement of solicitation, the Debtors made certain modifications to the Plan reflecting necessary clarifying updates.  All modifications to the Plan since the entry of the Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code. None of these modifications materially or adversely affects the treatment of any Holder of a Claim or Interest under the Plan.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.  Notice regarding the substance of any modifications to the Plan, together with the filing with the Court of the Plan as modified, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing constitute due and sufficient notice of any and all such modifications.

18.      Further, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan modifications.  The modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Plan as modified on September 30, 2024 and filed at Docket No. 26029 shall constitute the Plan submitted for Confirmation.  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan modifications unless otherwise agreed to by the Holder of the

Claim or Interest and the Debtors and such change is approved by the Court in accordance with Bankruptcy Rule 3018(a).

**L.      Plan Supplement**

19.     On August 2, 2024, the Debtors filed the Plan Supplement with the Court. The Debtors filed an additional Plan Supplement on September 23, 2024, providing an amended list of executory contracts rejected and assumed.  The documents contained in the Plan Supplement are integral to, part of and incorporated by reference into the Plan.  The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Court) complies with the terms of the Plan, and the filing and notice of all documents contained in the Plan Supplement constitute good and proper notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.  Pursuant to the Plan, the Debtors may file additional documents as amendments to the Plan Supplement on or prior to the Effective Date in a manner consistent with and contemplated by the Plan or this Confirmation Order.  The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and were conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required.

**M.      Assets Held By the Debtors**

20.     The factual record establishes that all Digital Assets and Cash held by the FTX Exchanges on or after the Petition Date ("Exchange Assets") are property of the Debtors' Estates within the meaning of section 541 of the Bankruptcy Code and can be distributed pursuant to the Plan.  Further, to the extent that any Exchange Assets are not property of the Debtors' Estates, this Court has jurisdiction to direct their equitable distribution pursuant to the

Plan and in accordance with the terms of the Customer Priority Settlement (as defined in the Disclosure Statement) incorporated therein.

**N.      Bankruptcy Rule 3016**

21.      The Plan is dated and identifies the Debtors as the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

**O.      Burden of Proof**

22.      The Debtors, as proponents of the Plan, have met their burden of proving that the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code are satisfied.  Each witness who submitted a declaration or testified at the Confirmation Hearing on behalf of the Debtors, including the Confirmation Declarations, or any other party that was accepted into evidence, in support of the Plan and Confirmation, in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

**P.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

23.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**i.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

24.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof.

**a.      <u>Sections 1122 and 1123(a)(1)—Proper Classification</u>**

25.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, Article

4 of the Plan provides for the separate classification of Claims and Interests into twenty-eight (28) Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, including Professional Claims, and 503(b)(9) Claims, which are addressed in Article 3 of the Plan and which are not required to be designated as separate Classes of Claims pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not created for any improper purpose, and the creation of such Classes does not unfairly discriminate among Holders of Claims or Interests.

26. The testimony and documents supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing (a) are reasonable, persuasive, credible and accurate, (b) utilize reasonable and appropriate methodologies and assumptions and (c) have not been controverted by other credible evidence.

27. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the requirements of sections 1122(a), 1122(b) and 1123(a)(1) of the Bankruptcy Code are satisfied.

**b.** **Section 1123(a)(2)—Specification of Unimpaired Classes**

28. Section 4.3 of the Plan specifies that Claims in Class 1, Class 2, Class 3B, Class 4, Class 5C and Class 8A are Unimpaired under the Plan. Administrative Claims, including Professional Claims, and 503(b)(9) Claims also are Unimpaired under the Plan, although these Claims are not classified under the Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

       **c.**       **Section 1123(a)(3)—Specification of Treatment of Impaired Classes**

29.     Section 4.3 of the Plan specifies that Claims and Interests, as applicable, in Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 9, Class 10A, Class 10B, Class 10C, Class 11, Class 12, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 are Impaired under the Plan and the treatment for each such Impaired Class.  Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

       **d.**       **Section 1123(a)(4)—No Discrimination**

30.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 4 of the Plan uniformly provides for the same treatment of each Claim or Interest, as the case may be, in a particular Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

       **e.**       **Section 1123(a)(5)—Adequate Means for Plan Implementation**

31.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article 5 and various other provisions of the Plan, along with various agreements set forth in the Plan Supplement, provide adequate and proper means for the Plan's implementation.  Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

       **f.**       **Section 1123(a)(6)—Voting Power of Equity Securities**

32.     On the Effective Date, all Plan Assets shall be transferred to and vest in the Wind Down Entities free and clear of all Liens, Claims, charges or other encumbrances or interests.  The Wind Down Entities shall be managed by the Plan Administrator and shall be subject to a Wind Down Board.  No new equity securities, voting or non-voting, will be issued

after the Effective Date.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

g.     **Section 1123(a)(7)—Directors and Officers**

33.     Section 5.11 of the Plan provides for the establishment of and the appointment of directors to the Wind Down Board.  The identities of the initial Wind Down Board are disclosed in the Plan Supplement.  The Liquidating Trust Agreement, attached as Exhibit 2 to the Plan Supplement, properly and adequately discloses the manner of selection and replacement of any director of the Wind Down Board and officer of the Consolidated Wind Down Trust (a/k/a the FTX Recovery Trust).  The appointment of the Wind Down Board is consistent with the interests of Holders, the Estates and public policy.

34.     Pursuant to the terms of the Plan Administration Agreement, attached as Exhibit 1 to the Plan Supplement, the Liquidating Trust Agreement, attached as Exhibit 2 to the Plan Supplement and the Plan, and to the extent such powers, duties, and authorities do not affect the status of the Consolidated Wind Down Trust as a liquidating trust for United States federal income tax purposes, the Plan Administrator will be empowered to, among other things, (i) file, withdraw or litigate to judgment objections to Claims, other than Claims that are subject to a valid and timely Bahamas Opt-In Election, (ii) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Court, (iii) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Court, (iv) determine, without the need for notice to or action, order or approval of the Court, that a Claim subject to any Proof of Claim that is filed is Allowed, (v) dissolve, liquidate, consolidate, merge or take any other action to effect dissolution of any Debtors and non-Debtor subsidiaries, and (vi) make and manage Distributions in accordance with and pursuant to the Plan and the Plan

Supplement, in each case, with respect to the Plan Assets which vest in the Consolidated Wind Down Trust.  The foregoing is consistent with the interests of the beneficiaries of the Consolidated Wind Down Trust and public policy.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

> **h.**     **Section 1123(b)—Discretionary Contents of the Plan**

35.     The Plan contains various provisions that may be construed as discretionary and are not required for Confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of the Bankruptcy Code is satisfied.

> **i.**     **Section 1123(b)(1)-(2)—Claims and Executory Contracts**

36.     Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article 4 of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests.

37.     Article 6 of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases of the Debtors, other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court, (b) that are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan.

> **j.**     **Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Causes of Action and Defenses**

38.     **Compromise and Settlement.**  The Plan settles certain issues in these Chapter 11 Cases pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.  These settlements are in consideration for the Distributions and other benefits provided under the

Plan and any other compromise and settlement provisions of the Plan. The Plan itself constitutes a compromise of all Claims, Interests and Causes of Action relating to the contractual, legal and subordination rights that any Holder may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made on account of such Allowed Claim or Allowed Interest. The compromises and settlements embodied in the Plan were reached after good faith, arms'-length negotiations between the Debtors, the Supporting Parties and other respective parties.

39.     Specifically, in consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation: (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to

the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

40.      In connection with the implementation of the Global Settlement pursuant to the Plan: (a) the value of Claims in respect of Digital Assets shall be calculated pursuant to Section 4.4 of the Plan; (b) the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim shall be recognized for the benefit of Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims; (c) the Alameda U.S. Customer Claim shall be recognized as part of the General Pool; (d) Claims shall be classified and treated as set forth in Article 4 of the Plan, which entitles Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims to recover against the (i) Dotcom Customer Priority Assets and the U.S. Customer Priority Assets, respectively, and (ii) General Pool, in accordance with the waterfall priorities set forth in Section 4.2 of the Plan; (e) the Consolidated Debtors shall be substantively consolidated as set forth in Section 5.7 of the Plan; (f) Cancelled Intercompany Claims, Equitably Subordinated Claims, FTT Claims and Interests and De Minimis Claims shall be cancelled; (g) Separate Subsidiary Intercompany Claims, Senior Subordinated IRS Claims, Senior Subordinated Governmental Claims, Junior Subordinated IRS Claims, Preferred Equity Interests, Section 510(b) Preferred Equity Claims and Section 510(b) Other Equity Claims shall be subordinated to Claims of other Holders, in accordance with the waterfall priorities set forth in Section 4.2 of the Plan; (h) Holders of Other Equity Interests shall recover against the General Pool in accordance with the waterfall priorities set forth in Section 4.2 of the Plan; (i) Distributions to customers and creditors shall be made in Cash (other than in Available NFTs) as set forth in Articles 4 and 7 of the Plan; (j) all assets scheduled by the Debtors shall constitute property of the Debtors' Estates; (k) interest shall be

paid at the applicable rate to Holders of certain Claims in accordance with Section 7.1 of the Plan and the treatment set forth in Section 4.3 of the Plan; and (l) interest shall be paid at the Consensus Rate to Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, Allowed Dotcom Convenience Claims and Allowed U.S. Convenience Claims in accordance with Section 7.1 of the Plan and the treatment set forth in Section 4.3 of the Plan.

41.     The entry of this Confirmation Order constitutes the Court's approval of the Global Settlement, including the Customer Priority Settlement, under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests and fall above the lowest point in the range of reasonableness.

42.     **Customer Preference Settlement**.  Section 5.5 of the Plan incorporates a separate settlement through the waiver of certain Customer Preference Actions against Holders of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims if such Holder duly executes and timely returns a valid Ballot by the Voting Deadline that (i) votes to accept the Plan, and (ii) consents and stipulates to the amount of such Dotcom Customer Entitlement or U.S. Customer Entitlement Claim as set forth in the applicable Ballot for voting, allowance and Distribution purposes (the "Customer Preference Settlement").

43.     The terms of the Customer Preference Settlement, including the preservation of the Excluded Customer Preference Actions, are independently fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests and fall above the lowest point in the range of reasonableness.  The entry of this

Confirmation Order constitutes the Court's approval of the Customer Preference Settlement under sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

44.      **Releases by the Debtors.**  The releases and discharges by the Debtors described in Section 10.4 of the Plan (the "Debtors' Release") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment.

45.      **Voluntary Release by Holders of Claims and Interests.**  The voluntary release by certain Holders of Claims and Interests described in Section 10.4 of the Plan (the "Voluntary Release by Holders of Claims and Interests") is appropriate because it was voluntary and all Releasing Parties had the opportunity to opt out of the release.  The Voluntary Release by Holders of Claims and Interests is provided only by (a) the Debtors; (b) each member of the Official Committee and the Supporting Parties; (c) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth therein; (d) the Holders of all Claims that are Unimpaired under the Plan; (e) the Holders of all Claims whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) the Holders of all Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth therein; and (g) the Holders of all Claims or Interests who are deemed to reject the Plan and opt in to the releases set forth therein.

46.      The Voluntary Release by Holders of Claims and Interests is appropriately narrow in scope.  It expressly excludes Claims or Causes of Action arising from gross negligence, willful misconduct, fraud or a criminal act, and it excludes Causes of Action to the extent arising out of conduct that occurred prior to the Petition Date.  The Voluntary Release by Holders of Claims and Interests is sufficiently voluntary and can be considered to be (a) given in exchange for the good, valuable and significant consideration provided by the Released Parties;

(b) a good faith settlement and compromise of the claims released by Holders of Claims and Interests electing to provide such release; (c) in the best interests of the Debtors and all Holders; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for hearing; (f) given at arms'-length and in good faith; (g) appropriately narrow in scope; and (h) a bar to any Releasing Party asserting any and all claims, obligations, rights, suits, damages, Causes of Action and defenses, remedies and liabilities whatsoever, released by the Voluntary Release by Holders of Claims and Interests against any of the Released Parties to the fullest extent permitted by applicable law and is hereby approved.

47.    **Exculpation.**  The exculpation provisions set forth in Section 10.7 of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation, and the exculpation provisions set forth in Section 10.7 of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation related to acts or omissions including and after the Petition Date and up to and including the Effective Date and are hereby approved.  For the avoidance of doubt, neither the Ad Hoc Committee nor any of its members are acting as a fiduciary for the benefit of any Debtor, its Estate or its creditors.

48.    Based on the record in these Chapter 11 Cases, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code.  Accordingly, the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7 of the Plan.  The Exculpated Parties, up to and including the Effective Date, will continue to

act in good faith, if they proceed to (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby regardless of whether such agreements, settlements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  The Exculpated Parties made (and will continue to make) significant contributions to the Chapter 11 Cases and played an integral role in working towards the resolution of the Chapter 11 Cases.  Accordingly, the exculpations contemplated by the Plan are an appropriate exercise of the Debtors' business judgment and are fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases.

49.     **Injunction.**  The injunction provisions set forth in Section 10.8 of the Plan are essential to the Plan and are (a) necessary to preserve and enforce the Debtors' Release, the Voluntary Release by Holders of Claims and Interests and the exculpation provisions set forth in Section 10.7 of the Plan, (b) fair and reasonable and (c) narrowly tailored to achieve their purpose.

50.     Each of the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions are: (a) within the jurisdiction of the Court; (b) an essential means of implementing the Plan; (c) an integral and non-severable element of the settlements and transactions incorporated into the Plan; (d) in the best interests of the Debtors, their Estates and all stakeholders in these Chapter 11 Cases; and (e) narrowly tailored and consistent with sections 105, 1123 and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code and other applicable law.  Each of the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions were adequately disclosed and explained in the Disclosure

Statement, the Plan and the Solicitation Packages. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions contained in Article 10 of the Plan, and failure to give effect to the foregoing would impair the Debtors' ability to confirm and implement the Plan. Based on the record of the Chapter 11 Cases, the representations of the parties, and the evidence proffered, adduced and presented at the Confirmation Hearing, the Court finds that the Debtors' Release, the Voluntary Release by Holders of Claims and Interests, the exculpation provisions and the injunction provisions contained in Article 10 of the Plan are consistent with the Bankruptcy Code and applicable law.

51. **Preservation of Causes of Action and Defenses**. Subject to the Plan, unless any Causes of Action and defenses held by the Debtors are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, including pursuant to Article 10 of the Plan or a Final Order, such Causes of Action are expressly reserved by the Consolidated Wind Down Trust for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of Confirmation, the Plan, or the vesting of such Cause of Action in the Consolidated Wind Down Trust. The provisions regarding such Causes of Action retained as Plan Assets in the Plan are appropriate, fair, equitable and reasonable and are in the best interests of the Debtors, their Estates and all Holders.

52. **Section 1123(d)—Cure of Defaults**. Article 6 of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court, (b) that

are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan.

53.     Additionally, the Plan Supplement also included a list of Executory Contracts and Unexpired Leases proposed to be assumed in connection with the Plan.  As evidenced by the Cure Affidavits of Service, the Debtors have served the Cure Notices to all applicable counterparties of the Executed Contracts and Unexpired Leases proposed to be assumed in connection with the Plan, which notices included the proposed cure amount and procedures for objecting to, and resolving proposed assumptions of such Executory Contracts and Unexpired Leases.  Accordingly, the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

**ii.     Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code**

54.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, 3019 and 9019.

55.     Votes to accept or reject the Plan were solicited by the Debtors in accordance with the Solicitation Procedures Order after the Court approved the adequacy of the Disclosure Statement.

56.     The Debtors and their agents (including each of their respective directors, officers, employees, members, partners, agents or representatives, including attorneys, accountants, financial advisors and investment bankers, each solely in their capacity as such and solely to the extent such persons or entities solicit votes on the Plan) have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the

Bankruptcy Code in good faith within the meaning of section 1125(e) of the Bankruptcy Code

and in a manner consistent with the applicable provisions of the Solicitation Procedures Order,

the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations,

and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

57.     The Debtors and other Exculpated Parties have participated in good faith

and in compliance with the applicable provisions of the Bankruptcy Code with regard to the

solicitation of acceptances or rejections of the Plan and, therefore, are not, and will not be, liable

at any time for the violation of any applicable law, rule or regulation governing the solicitation of

acceptances or rejections of the Plan.  Accordingly, the requirements of section 1129(a)(2) of the

Bankruptcy Code are satisfied.

### iii.     Section 1129(a)(3)—Proposal of Plan in Good Faith

58.     The Debtors have proposed the Plan (including the Plan Documents) in

good faith and not by any means forbidden by law.  In determining that the Plan has been

proposed in good faith, the Court has examined the totality of the circumstances surrounding the

filing of these Chapter 11 Cases, the Plan itself and the process leading to its formulation.  The

Debtors' good faith is evident from the record of these Chapter 11 Cases, the Disclosure

Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings

held in these Chapter 11 Cases.

59.     The Plan is the product of extensive, good faith, arm's-length negotiations

among the Debtors and certain of their principal constituencies, including the Supporting Parties.

The Plan itself and the process leading to its formulation provide independent evidence of the

Debtors' good faith, serve the public interest and assure fair treatment of Holders.  Accordingly,

the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### iv.   Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

60.   The procedures set forth in the Plan for payment of, and/or the Court's review and ultimate determination of, the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incidental to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

### v.   Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

61.   The identities of, and the terms of the proposed compensation (where determined) to be paid to, the directors and officers of the Consolidated Wind Down Trust are consistent with the interests of Holders of Claims and Interests and with public policy.  The members of the Creditor Advisory Committee were disclosed in the Plan Supplement as required by Section 1129(a)(5) of the Bankruptcy Code.  The proposed directors and officers for the Consolidated Wind Down Trust and members of the Creditor Advisory Committee are qualified, and their appointment to, or continuance in, such office is consistent with the interests of Holders of Claims and Interests and with public policy. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

### vi.   Section 1129(a)(6)—Approval of Rate Changes

62.   The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

### vii.    Section 1129(a)(7)—Best Interests of Holders of Claims and Interests

63.    Each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

64.    The liquidation analysis attached as <u>Appendix D</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing, which has been accepted into evidence in support of Confirmation:  (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that recoveries for non-accepting Holders of Allowed Claims and Allowed Interests in every Class under the Plan on account of such Claim or Interest, as of the Effective Date, will have a value equal to or greater than the amount such Holder would receive if the applicable Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

### viii.    Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes

65.    Class 1, Class 2, Class 3B, Class 4, Class 5C and Class 8A are Unimpaired Classes of Claims and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 8C, Class 10A, Class 10B, Class 10C and Class 12 are Impaired by the Plan and entitled to vote on the Plan, while Class 9, Class 11, Class 13, Class 14,

Class 15, Class 16, Class 17 and Class 18 are Impaired by the Plan and deemed to reject. As set forth in the Voting Report, Class 3A, Class 5A, Class 5B, Class 6A, Class 6B, Class 7A, Class 7B, Class 7C, Class 8B, Class 10A, Class 10B, Class 10C and Class 12 have voted to accept the Plan. As set forth below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that the Impaired Rejecting Classes are either deemed to reject, or voted not to accept, the Plan.

66.     Because the Plan has not been accepted by the Impaired Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting Classes and thus satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Impaired Rejecting Classes as described further below.

**ix.     Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

67.     The treatment of Administrative Claims, including Professional Claims, 503(b)(9) Claims and Priority Tax Claims under Article 3 of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**x.     Section 1129(a)(10)—Acceptance by At Least One Impaired Class**

68.     As set forth in the Voting Report, the Impaired Accepting Classes have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

### xi.    Section 1129(a)(11)—Feasibility of the Plan

69.    The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at, or in declarations filed in connection with, the Confirmation Hearing, which has been accepted into evidence in support of Confirmation:  (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors or any successor to the Debtors under the Plan except as provided in the Plan.  Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

### xii.    Section 1129(a)(12)—Payment of Fees

70.    All U.S. Trustee Fees payable on or before the Effective Date shall be paid in full in Cash on the Effective Date by the Debtors.  After the Effective Date, the Plan Administrator shall pay any and all U.S. Trustee Fees in full in Cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until each Chapter 11 Case is closed, dismissed or converted to cases under Chapter 7 of the Bankruptcy Code, which ever occurs first with respect to each respective Chapter 11 Case.  The Debtors shall file all monthly operating reports when they become due, using UST Form 11-MOR.  After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court a postconfirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) U.S. Trustee Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to U.S. Trustee Fees; and (iii) the U.S. Trustee shall not be

treated as providing any release under the Plan.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

      **xiii.**    **Section 1129(a)(13), (14), (15) and (16)—Non-Applicability of Certain Sections**

71.    The Debtors do not owe any "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) or domestic support obligations and is not a non-profit entity. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

      **xiv.**    **Section 1129(b)—Confirmation of the Plan Over Non-Acceptance of Impaired Class**

72.    The Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been met because the Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code; (b) allows no Holder of a Claim or Interest in a Class senior to each such Class to receive more than payment in full on account of its Claim or Interest; and (c) does not "discriminate unfairly" and is "fair and equitable" with respect to the Impaired Rejecting Classes, as applicable.

73.    The Plan does not "discriminate unfairly" with respect to the Impaired Rejecting Classes because there is no discrimination in treatment between Holders in such Classes and there are no other Classes comprised of Holders with similar or comparable legal rights.

74.    The Plan is "fair and equitable" with respect to Holders of Claims in Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 because there is no Class junior to any of Class 9, Class 11, Class 13, Class 14, Class 15, Class 16, Class 17 and Class 18 that is receiving or retaining "any property" "on account" of such Claim or Interest under the Plan.

Holders of Class 10 Claims may receive property on account of their claims, but such distributions are pursuant to voluntary subordination in accordance with settlements reached in these Chapter 11 Cases, including the IRS Settlement.  Accordingly, the Plan satisfies the requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code and is fair and equitable with respect to all classes of Claims and Interests.

75.     The Plan therefore satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed.

xv.     **Section 1129(c)—Only One Plan**

76.     Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

xvi.    **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Application of Securities Laws**

77.     No party (including any governmental unit) has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (as amended, the "Securities Act"), and the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**Q.     Section 1129(e)—Small Business Case**

78.     None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**R.      Satisfaction of Confirmation Requirements**

79.      Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, certificates and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing which has been accepted into evidence in support of Confirmation, the Plan satisfies all requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**S.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

80.      Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, and without affecting the rights of any party to enforce such condition, has been satisfied in accordance with the provisions of the Plan, or is reasonably likely to be satisfied or waived in accordance with Section 9.1 of the Plan on or prior to the Effective Date.

**T.      Implementation**

81.      All documents and agreements necessary or appropriate to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents, instruments and certificates (collectively, and as each may be amended, supplemented, or modified on or before the date of this Confirmation Order, the "Plan Documents") are essential elements of the Plan and entry into and consummation of the transactions contemplated by each of the Plan Documents is in the best interests of the Debtors, their Estates and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents and have provided sufficient and adequate notice of the Plan Documents (if notice was required).  The terms and conditions of the Plan Documents are fair and reasonable, in the best interests of the Debtors and their estates, were negotiated in good faith and at arm's length, and are approved.  The Plan Documents shall be valid, binding and enforceable documents and agreements not in conflict with any federal,

state or local law.  The Debtors and the Plan Administrator are authorized, without further

approval of this Court, to finalize, execute and deliver all agreements, documents, instruments

and certificates relating to the transactions contemplated by the Plan Documents and perform

their obligations thereunder.

        82.     The Debtors or the Plan Administrator, as applicable, may take all actions

to execute, deliver, file or record such contracts, instruments, releases and other agreements or

documents, and take such actions as may be necessary or appropriate to effectuate and

implement the provisions of the Plan.

**U.     Corporate Action**

        83.     Upon the Effective Date, all actions contemplated by, and set forth in, the

Plan and the Plan Documents shall be deemed authorized and approved.  All matters provided

for in the Plan involving the corporate structure of the Debtors or the Wind Down Entities and

any corporate action required by the Debtors or the Wind Down Entities in connection with the

implementation of the Plan shall be deemed to have occurred and shall be in effect upon the

Effective Date, without any requirement of further action by the directors or officers of the

Debtors or the Consolidated Wind Down Trust.

        84.     From and after the Confirmation Date but prior to, on or after the Effective

Date (as appropriate), all matters provided for pursuant to the Plan or the Plan Documents that

would otherwise require approval of the shareholders, directors or members of the Debtors shall

be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date

(as appropriate), pursuant to applicable law, and without any requirement of further action by the

shareholders, directors, managers or partners of the Debtors, or the need for any approvals,

authorizations, actions or consents.

## V.    Substantive Consolidation

85.    Substantive consolidation of the Estates of the Consolidated Debtors into a single Entity, as set forth in the Plan, is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and the Holders of Claims and Interests.  Postpetition, the Debtors' assets and liabilities are so scrambled due to the prepetition actions of the FTX Group (as defined in the Disclosure Statement) that separating them is prohibitive and hurts all creditors.  Substantive consolidation results in equitable treatment to all creditors and was not used to disadvantage a particular creditor group.  Accordingly, the requirements of substantive consolidation as set forth in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005), are satisfied and the substantive consolidation of the Estates of the Consolidated Debtors into a single Entity in accordance with the Plan is hereby approved.

## W.    Executory Contracts and Unexpired Leases

86.    The Debtors have exercised reasonable business judgment in determining to reject by the Plan all Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Court, (b) that are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan.  Each rejection of an Executory Contract or Unexpired Lease in accordance with the Plan, this Confirmation Order, other orders of the Court or otherwise shall be legal, valid and binding upon all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such rejection had been authorized and effectuated pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation.

87.     The Debtors have also provided sufficient and adequate notice to any Entity whose Executory Contract or Unexpired Lease is proposed to be assumed in connection with the Plan, including with respect to the proposed cure amount for such contracts and leases. The Plan also serves as adequate notice to all Entities whose Executory Contract or Unexpired Lease is being rejected because the Plan rejects all contracts unless such contracts (a) were previously assumed or rejected pursuant to an order of the Court, (b) are the subject of a pending motion to assume or (c) are specifically described in the Plan to be assumed in connection with the Plan.

## X.     Retention of Jurisdiction

88.     Except as otherwise provided in the Plan, this Confirmation Order or the Plan Documents, the Court shall retain jurisdiction over the matters set forth in Section 12 of the Plan and other applicable provisions of the Plan.

## II.     **ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

## A.     Order

89.     The Plan and all of its provisions are confirmed.  A copy of the Plan is attached hereto as Exhibit A.

## B.     Objections

90.     All parties have had a fair opportunity to litigate all issues raised by objections, or which might or could have been raised, and the objections have been fully and fairly litigated.  The record of the Confirmation Hearing is hereby closed.  To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been

withdrawn, waived, resolved or settled before entry of this Confirmation Order, resolved by the relief granted herein or otherwise resolved as stated on the record of the Confirmation Hearing, such objections, reservations of rights, statements and joinders are hereby overruled on the merits.

## C.     Confirmation of the Plan

91.     The Plan and the Plan Supplement shall be, and hereby are, confirmed under section 1129 of the Bankruptcy Code.     Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary or appropriate to carry out the purpose and intent of the Plan.  The Debtors or the Plan Administrator, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  The Debtors and, after the Effective Date, the Wind Down Entities are authorized, without further approval of the Court, to execute and deliver all documents and agreements, including those contained in the Plan Supplement, and all other relevant and necessary documents, agreements, instruments and certificates relating to the transactions contemplated by the Plan and necessary or appropriate to implement the Plan, and perform their obligations thereunder.  As set forth in the Plan, once finalized and executed, upon the occurrence of the Effective Date, the documents comprising the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

### D.     Findings of Fact and Conclusions of Law

92.     The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any of the following articles, sections or provisions constitute findings of fact or conclusions of law, they are adopted as such.

### E.     Global Settlement of Claims and Interests

93.     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions, releases and other benefits provided pursuant to the Plan, the Global Settlement, including but not limited to the Customer Priority Settlement (as defined in the Disclosure Statement), is approved.  The Global Settlement constitutes a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of an Allowed Claim or Interest may have against the Debtors, or any Distribution to be made on account of such Allowed Claim or Interest.  Approval of such compromise or settlement of all such Claims, Interests or controversies, as well as such compromise or settlement, is in the best interests of the Debtors and their Estates, is fair, equitable and reasonable and falls above the lowest point in the range of reasonableness.  Subject to Article 7 of the Plan, all Distributions made to Holders of Allowed Claims or Interests in any Class are intended to be, and shall be, final.

### F.     Implementation of the Consolidated Wind Down Trust

94.     The creation and implementation of the Consolidated Wind Down Trust in accordance with the terms of this Confirmation Order, the Plan and the Liquidating Trust Agreement, and the appointment of the Wind Down Board and Appointed Director (as defined in the Plan Supplement) to accomplish the purposes of the Consolidated Wind Down Trust, as set

forth in the Liquidating Trust Agreement, are each hereby authorized.  Subject to Article 5 of the Plan, the Consolidated Wind Down Trust and the Creditor Advisory Committee shall be established on or prior to the Effective Date.  After the Effective Date, the Consolidated Wind Down Trust, to the extent a successor to the Debtors, and each member of its board and management shall have no liability other than as set forth in the Liquidating Trust Agreement and the Plan, and shall have no other obligations other than to carry out the purpose and obligations of the Consolidated Wind Down Trust in accordance with the Plan Documents.

95.     The Debtors, the Consolidated Wind Down Trust, and their respective members, directors, officers, representatives and agents are hereby authorized to enter into, execute, deliver, file and/or implement any documents and instruments substantially consistent with or incidental to the Plan, and any amendments, supplements or modifications thereto as may be appropriate, and to take such other steps and perform such other acts as may be necessary, useful or appropriate to implement and effectuate the Plan and all other related instruments and documents and this Confirmation Order, and to satisfy all other conditions precedent to the implementation and effectiveness of the Plan.  The Consolidated Wind Down Trust is hereby authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement, regardless of whether any appeal of this Confirmation Order has been filed, except to the extent a stay pending appeal has been granted and such stay pending appeal expressly prohibits such distributions and other payments contemplated by the Plan.

96.     No Holder of a Claim or Interest or any other party-in-interest shall have, or otherwise pursue, any Cause of Action against the Wind Down Board, the Consolidated Wind Down Trust or the consultants or professionals thereof (for each of the foregoing, solely in the performance of their duties in connection with making payments and distributions under the

Plan) for making payments and distributions in accordance with the Plan and the Liquidating

Trust Agreement or for fulfilling any functions incidental to implementing the provisions of the

Plan or the Liquidating Trust Agreement, except as permitted by the Plan or the Liquidating

Trust Agreement.

## G.    Creditor Advisory Committee

97.     Subject to Article 5 of the Plan, the Wind Down Board and the Plan

Administrator shall consult with the Advisory Committee in good faith on all of its material

decisions concerning the Wind Down Entities, the Plan Administrator and the Advisory

Committee from time to time.  The members of the Advisory Committee, other than the

Appointed Director on the Wind Down Board, shall have the right to attend formal meetings of

the Wind Down Board as non-voting observers (and receive all related board materials and

reports), subject to such limitations as the Wind Down Board may set from time to time to

address any actual or potential conflict of interest.  The Appointed Director shall have the

opportunity to consult with the other members of the Advisory Committee prior to voting on any

actions in its capacity as a member of the Wind Down Board.  Similarly, the Wind Down Board

of Directors shall have the right to consult in executive session without the Advisory Committee

members.

98.     Subject to Section 5.20 of the Plan, the members of the Advisory

Committee shall receive reasonable and customary compensation, indemnification, and

exculpation, and may retain and employ Delaware counsel, one additional law firm and one

financial advisory firm to assist the Advisory Committee in the performance of its duties, with

the reasonable and documented fees and expenses of these professionals to be borne or

reimbursed by the Wind Down Entities.  These professional firms shall be chosen by majority

vote of the Advisory Committee and be acceptable to the Wind Down Board (such consent not to be unreasonably withheld).

99.     If the Wind Down Board approves an action (i) that the Appointed Director has voted against in his or her capacity as a member of the Wind Down Board and (ii) which a majority of the Advisory Committee (including the Appointed Director) also objects, the Appointed Director may send a Notice of Objection.  Upon the Appointed Director's vote against a proposed action by the Wind Down Board, the Wind Down Entities shall refrain from taking the contested action unless a Notice of Objection is not timely provided; if a Notice of Objection is timely provided, the Wind Down Board shall not take the proposed action without either order of the Court or the expiration of a seven-day waiting period.  During this seven-day waiting period, the Advisory Committee may file an objection to the proposed action with the Court, describing the basis therefor in reasonable detail.  If no objection is filed with the Court within such seven-day period, the Notice of Objection shall have no further effect, the Wind Down Entities may proceed with the proposed action and the Advisory Committee shall be deemed to have waived any right to challenge the proposed action.

100.     If the Advisory Committee files a timely objection with the Court in accordance with Section 5.20 of the Plan, the Court shall resolve the objection as a contested matter by applying the standard of review that would be applicable to an action proposed by a debtor over the objection of a general unsecured creditor under section 363(b) of the Bankruptcy Code or Bankruptcy Rule 9019, as applicable.

101.     The Advisory Committee shall have standing to enforce the Plan to the same extent as an individual creditor, as well as standing to enforce the Advisory Committee's own rights under the Plan.

102.     The Advisory Committee shall continue until such time as Allowed

General Unsecured Claims have been paid 100% of their Allowed amounts plus interest at the

Consensus Rate as provided in the Plan, and then shall be disbanded.  In the event of a vacancy

on the Advisory Committee, the other members of the Advisory Committee may appoint a

replacement member reasonably acceptable to the Wind Down Board by written notice to the

Court.

## H.     Substantive Consolidation

103.     In accordance with sections 1123(a)(5)(c) and 105 of the Bankruptcy

Code, the Consolidated Debtors are hereby substantively consolidated.  Except as otherwise

provided in the Plan, as a result of the substantive consolidation of the Estates of the

Consolidated Debtors:  (a) all property of the Consolidated Debtors shall vest in, and constitute

the property of, the Consolidated Wind Down Trust, free and clear of any and all Liens, charges

or other encumbrances or interests, pursuant to Section 5.13 of the Plan; (b) all guarantees of any

Consolidated Debtor of the payment, performance or collection of obligations of another

Consolidated Debtor shall be eliminated and cancelled; (c) all joint obligations of two or more

Consolidated Debtors and multiple Claims against such Entities on account of such joint

obligations shall be treated and allowed as a single Claim against the Consolidated Wind Down

Trust; (d) all Cancelled Intercompany Claims shall be deemed cancelled; and (e) each Claim

filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed filed

against the Consolidated Debtors and a single obligation of the Consolidated Wind Down Trust.

104.     Except as otherwise provided herein, the substantive consolidation shall

not:  (i) affect the separate legal existence of the Consolidated Debtors for purposes other than

implementation of the Plan pursuant to its terms; (ii) constitute or give rise to any defense,

counterclaim or right of netting or setoff with respect to any Cause of Action vesting in the

Consolidated Wind Down Trust that could not have been asserted against the Consolidated

Debtors; or (iii) give rise to any right under, any executory contract, insurance contract or other

contract to which a Consolidated Debtor is party, except to the extent required by section 365 of

the Bankruptcy Code in connection with the assumption of such contract by the applicable

Debtors.

## I. Customer Preference Settlement

105.    The Customer Preference Settlement as described in Section 5.5 of the

Plan is approved under sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule

9019.  Based upon the evidence introduced at the Confirmation Hearing and the full record of

these Chapter 11 Cases, this Confirmation Order constitutes the Court's approval of the

Customer Preference Settlement because the Customer Preference Settlement benefits the

Debtors and its stakeholders by, among other things:  (i) eliminating the need for the Debtors to

pursue uneconomic and time consuming preference litigation; and (ii) reducing the Debtors'

administrative costs in having to reconcile claim amounts for accepting customers.  The

Customer Preference Settlement is fair, equitable and reasonable and is in the best interests of the

Debtors, customers, other creditors and stakeholders and is hereby approved with the Excluded

Customer Preference Actions preserved.

## J. Plan Assets

106.    As provided in the Plan, on the Effective Date, the Plan Assets shall be

deemed irrevocably transferred and assigned to and automatically vested in the Wind Down

Entities for the benefit of Holders of Claims, free and clear of all Liens, Claims, charges or other

encumbrances or interests to the extent permitted by sections 363 and 1141 of the Bankruptcy

Code.  Subject to the terms of the Plan, the Wind Down Entities will hold and administer Plan

Assets, which include, among other things, (i) all retained Causes of Action; (ii) the Dotcom Customer Priority Assets; (iii) the U.S. Customer Priority Assets and (iv) the General Pool.

107.    Any transfers of property pursuant to the Plan, including the transfer of Plan Assets to the Wind Down Entities, shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code.  Upon delivery of the Plan Assets to the Wind Down Entities, the Debtors and its predecessors, successors and assigns, and each of the other Released Parties shall be discharged and released from all liability with respect to the delivery of such distributions.  Upon the transfer of the Plan Assets and pursuant to the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Plan Assets.

## K.    Section 1145 Exemption from Registration Under the Securities Act

108.    The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

109.    The FTX Recovery Trust Interests created pursuant to the FTX Recovery Trust Agreement and the Plan shall not be considered "securities" and shall not be subject to the registration requirements of section 5 of the Securities Act or any applicable state or local laws requiring registration of securities.

## L.    Determination of Tax Liability

110.    The Debtors and the Wind Down Entities are authorized to request an expedited determination of taxes under section 505 of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors or the Wind Down Entities for any and all taxable periods ending on or before the Effective Date.  The Wind Down Board may also request an expedited determination of Taxes of the Consolidated Wind Down Trust or any Wind Down Reserve under

section 505 of the Bankruptcy Code for all Tax Returns filed for, or on behalf of, the

Consolidated Wind Down Trust or any Wind Down Reserve for all taxable periods through the

dissolution of the Consolidated Wind Down Trust.

## M.    References to Plan Provisions

111.    The failure specifically to include or to refer to any particular article,

section or provision of the Plan, any Plan Document or any related document or agreement in

this Confirmation Order shall not diminish or impair the effectiveness of such article, section or

provision nor constitute a waiver thereof, it being the intent of the Court that the Plan be

confirmed in its entirety, the Plan Documents be approved in their entirety, and all be

incorporated herein by this reference.

## N.    Immediate Binding Effect

112.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise,

upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be

immediately effective and enforceable and deemed binding upon the Debtors and the Wind

Down Entities, the Estates, any and all Holders of Claims and Interests (irrespective of whether

such Holders have accepted, deemed to have accepted, rejected, or deemed to have rejected the

Plan), all Entities that are parties to or are subject to the settlements, compromises, releases,

discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan,

and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the

Debtors.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized

obligations of the respective parties thereto and shall be enforceable in accordance with their

terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Documents, and

this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable

nonbankruptcy law.  This Confirmation Order shall take effect immediately and shall not be

stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 7062, or any stay of enforcement otherwise applicable to the Plan.

**O.     Cancellation of Existing Notes, Instruments, Certificates and Other Documents**

113.    On the Effective Date, except as otherwise specifically provided for in the Plan, all rights of any Holder of Interests in the Debtors, including options or warrants to purchase Interests, or obligating the Debtors to issue, transfer or sell Interests of the Debtors, shall be cancelled.  On the Effective Date, except as otherwise provided in the Plan, the obligations of the Debtors under any certificate, share, bond, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of the Debtors giving rise to any Claim or Interest shall be cancelled, without any need for a Holder to take further action with respect thereto, and the Debtors and the Wind Down Entities shall not have any continuing obligations thereunder.

**P.     Provisions Governing Distributions**

114.    The Debtors and the Wind Down Entities are authorized to enter into agreements with Distribution Agents and remit any payments in connection therewith, if any, and any amendments thereto shall not require further Court approval.

115.    All Distributions pursuant to the Plan shall be made in accordance with Articles 4, 5 and 7 of the Plan.  Except as otherwise set forth in the Plan, the Plan Administrator may utilize Distribution Agents, who then shall, at the direction of the Wind Down Entities, make all Distributions required under Articles 4 and 5 of the Plan.

**Q.     Treatment of Executory Contracts and Unexpired Leases**

116.    The assumption of the Executory Contracts and Unexpired Leases listed in the Plan Supplement and the rejection of all other Executory Contracts and Unexpired Leases pursuant to the provisions of Article 6 of the Plan are hereby approved.

R.      **Insurance Policies**

117.    Notwithstanding anything to the contrary in the Plan Documents, any bar

date notice, any claim objection, any other document related to any of the foregoing or any other

order of the Court (including, without limitation, any other provision that purports to be

preemptory or supervening, grants an injunction, discharge or release, confers Court jurisdiction,

or requires a party to opt out of any releases), as of the Effective Date, the Debtors shall be

deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of

the Bankruptcy Code.  The Debtors' D&O Policies purchased on or after the Petition Date shall

continue in force following the Effective Date subject to the terms and conditions of such D&O

Policies.  Coverage for defense and indemnity under any assumed or continued D&O Policies

shall remain available within the definition of "Insured" in any of the D&O Policies subject to

the terms and conditions of such D&O Policies.  Entry of this Confirmation Order will constitute

the Court's approval of the Debtors' foregoing assumption or continuation, as applicable, of each

D&O Policy.  Notwithstanding anything to the contrary contained in the Plan, and except as

otherwise may be provided in an order of the Court, Confirmation of the Plan shall not discharge,

impair or otherwise modify any obligations assumed by the foregoing assumption or

continuation of the D&O Policies, and each such obligation will be deemed and treated as an

Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of

Claim need be filed.  The D&O Policies (i) are prefunded and will not require any additional

premiums on or after the Effective Date, (ii) provide coverage for those insureds currently

covered by such policies for the remaining term of such policies and (iii) in the case of the D&O

Policies purchased on or after the Petition Date, provide runoff or tail coverage after the

Effective Date to the fullest extent permitted by such policies.

**S.    Release of Liens**

118.    Except as otherwise provided in this Confirmation Order, in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan or this Confirmation Order, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, settled, discharged and compromised, and all of the rights, titles and interests of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Entities and its successors and assigns, in each case, without further approval of the Court and without any action or filing being required to be made by the Debtors.

**T.    Releases, Exculpations, Injunction and Related Provisions**

119.    All release, injunction and exculpation provisions contained in the Plan, including, without limitation, those contained in Sections 10.3 through 10.9 of the Plan, are hereby approved and authorized and shall be effective and binding as if set forth herein on all persons and entities to the extent expressly described in the Plan.

120.    Nothing in the Plan or this Confirmation Order shall affect any release granted under or approved by any prior order of the Court, all of which remain in full force and effect in accordance with their respective terms.

**U.    Subordinated Claims**

121.    The allowance, classification and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account, conform to, and satisfy the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto; *provided, however,* that the Debtors and the Wind Down Entities reserve the right to seek to reclassify or modify the treatment of any Allowed Claim or Interest in accordance with

any contractual, legal, or equitable subordination relating thereto, unless otherwise provided in a settlement agreement concerning such Allowed Claim or Interest.

## V.     Authority to Prosecute and Settle Actions

122.     Subject to Section 5.17 of the Plan, after the Effective Date, each Cause of Action that is a Plan Asset shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the Wind Down Entities.  The Wind Down Board shall have the authority to prosecute, investigate, settle, liquidate, dispose of, and/or abandon the Plan Assets, including any rights, and any and all Causes of Action.

## W.     Professional Fee Claims

123.     All final requests for payment of Professional Claims shall be filed and served no later than 60 days after the Effective Date, in accordance with the procedures established under the Plan.  In accordance with the procedures established by the Bankruptcy Code and the Professional Fee Order, the Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing.

124.     On or prior to the Effective Date, The Debtors shall establish and fund the Professional Fee Escrow Account.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Wind Down Entities.  The Plan Administrator shall pay Professional Claims in Cash no later than five Business Days after such Claims are Allowed by Final Order of the Court.  When all Allowed Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be allocated and distributed between the Dotcom Customer Priority Assets, the U.S. Customer Priority Assets and the General Pool pursuant to the Plan.

125.     In accordance with Section 3.4.3 of the Plan, Professionals shall provide

good-faith estimates of their Professional Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than seven days prior to the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional does not provide such an estimate, the Debtors may estimate, in their reasonable discretion, the Professional Claims of such Professional.  The total amount so estimated shall comprise the Professional Fee Reserve Amount.  To the extent the Professional Fee Reserve Amount is not sufficient to pay all Allowed Professional Claims in full, the remaining aggregate amount of the Allowed Professional Claims shall be paid by the Wind Down Entities.  Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code, any applicable retention order or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate.

## X.    Statutory Fees Payable Pursuant to 28 U.S.C. § 1930

126.    All fees due and payable pursuant to 28 U.S.C. § 1930, together with interest, pursuant to 31 U.S.C. § 3717, due and owing prior to the Effective Date shall be paid by the Debtors on or before the Effective Date.  The Debtors shall file all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. On and after the Effective Date, the Wind Down Entities shall pay these fees when due and owing and prepare and file all necessary quarterly reports and other reports required by the Court.

## Y.    Priority Tax Claims

127.    Subject to Section 8.3 of the Plan, except to the extent that the applicable Holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date,

or such Holder agrees to less favorable treatment or is otherwise ordered by the Court by a separate order, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, the full value of their Claim in full in Cash on or as soon as reasonably practicable after the earliest of (i) the Initial Distribution Date; (ii) the date on which such Priority Tax Claim becomes Allowed; and (iii) such other date as may be ordered by the Court.

**Z.     Ad Hoc Committee Expenses**

128.    From and after the Confirmation Date, any outstanding and unpaid Ad Hoc Committee expenses (including but not limited to the fees owed by the Debtors in accordance with the Amended and Restated Rothschild Reimbursement Agreement, included in the Plan Supplement) shall be paid in full in Cash subject and pursuant to the procedures set forth in Section 3.4 of the Plan.  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Plan Administrator, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Court, pay in Cash the reasonable and documented legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Ad Hoc Committee in accordance with the Wind Down Budget.  The Debtors' payment of the Ad Hoc Committee expenses is authorized by and pursuant to sections 363(b), 364(b), 1123(b)(6) and 1129(a)(4) of the Bankruptcy Code and Bankruptcy Rule 9019.

**AA.    Filing Deadlines for Other Administrative Claims**

129.    Any Holder of an Administrative Claim who is not excepted, pursuant to Section 3.1 of the Plan, from the requirements to file and serve a request for payment of such Administrative Claim on or prior to the Administrative Claim Bar Date will be forever barred, estopped and enjoined from asserting such Administrative Claim against the Debtors or the Wind

Down Entities or their respective property and from participating in any Distribution in the
Debtors' cases on account of such Administrative Claim. The Administrative Claim Bar Date
shall be (a) 4:00 p.m. (Eastern Time) on the 30th day after the Confirmation Date for
Administrative Claims that arose prior to the Confirmation Date, (b) 4:00 p.m. (Eastern Time) on
the 30th day after the Effective Date for Administrative Claims that arose during the period from
the Confirmation Date through the Effective Date or (c) such other date established by order of
the Court by which requests for payment in respect of Other Administrative Claims must be
filed.

## BB.    Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

130.    Pursuant to, and to the fullest extent permitted by, section 1146(a) of the
Bankruptcy Code, any transfers from the Debtors to the Wind Down Entities or to any other
Entity, pursuant to, in contemplation of, or in connection with the Plan (including any transfer
pursuant to: (a) the Distribution, transfer or exchange of any debt, equity security or other
interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument
of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of
sale, assignments or other instrument of transfer executed in connection with any transaction
arising out of, contemplated by or in any way related to the Plan) shall not be subject to any
document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real
estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax,
Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other
similar tax or governmental assessment, and the appropriate state or local government officials or
agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or
government assessment and to accept for filing and recordation any of the foregoing instruments
or other documents without the payment of any such tax, recordation fee or government

assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

131.    Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept the validity of (a) any and all documents, trust agreements, mortgages, and instruments, and (b) all actions of the Debtors that are necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, this Confirmation Order, and the agreements created or contemplated by the Plan or this Confirmation Order, without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

## CC.    Retention of Jurisdiction

132.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Court shall retain its existing jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code.

## DD.    Plan Documents

133.    The Plan Documents are approved and, upon execution and delivery of the Plan Documents, including any amendments, supplements or modifications after the date of this Confirmation Order that are necessary or appropriate to implement the Plan and made in accordance with this Confirmation Order, by the applicable parties, such documents shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of the Court, or other act or action under applicable law, regulation, order or rule.  The Debtors and, after the Effective Date, the Wind Down Entities, are authorized, without further approval of the Court or any other party, to execute and deliver all agreements, documents, instruments, securities and certificates relating to such agreements and perform their obligations thereunder, including paying all fees due

thereunder or in connection therewith.

## EE.    Effectiveness of All Actions

134.    Except as set forth in the Plan, all actions authorized to be taken by the Plan or this Confirmation Order shall be effective on, prior to, or after the Effective Date pursuant to the terms of the Plan or this Confirmation Order (as applicable), without further application to, or order of, the Court.

## FF.    Authorization to Take Actions to Implement and Consummate the Plan

135.    Pursuant to section 1142(b) of the Bankruptcy Code, the Debtors and the Wind Down Entities hereby are authorized and empowered to take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, the documents contained in the Plan Supplement, and any other Plan Documents, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto, and all documents, instruments, securities and agreements authorized thereunder and related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.

136.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan, the Plan Supplement and any other Plan Documents, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, and any other Plan Documents and any amendments or modifications thereto.

## GG.     Intercompany Claims and Intercompany Interests

137.     On and after the Effective Date, each Intercompany Claim and each Intercompany Interest shall be cancelled, released and discharged.

## HH.     Dissolution of the UCC

138.     On the Effective Date, the Official Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that the Official Committee will stay in existence solely for the limited purpose of (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions, litigation or appeals seeking enforcement of the provisions of the Plan or under the Confirmation Order, and (c) motions, litigation or appeals pending on the Effective Date in which the Official Committee is a party; *provided*, further, that, with respect to pending appeals and related proceedings, the Official Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.

## II.     Modifications or Amendments

139.     Entry of this Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.  After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, including the Plan Supplement, without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests and are otherwise permitted under section 1127(b) of the Bankruptcy Code; *provided, further*, that, to the extent any proposed documents would adversely affect the amount

or timing of Distributions or the rights or powers of the Plan Administrator, the Advisory

Committee, or the Appointed Director, such documents shall also be in form and substance

reasonably acceptable to the Supporting Parties  After the Confirmation Date and before

substantial consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy

Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or

reconcile any inconsistencies in the Plan, including the Plan Supplement, the Disclosure

Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out

the purposes and effects of the Plan.

**JJ.    Effect of Conflict between Plan and Confirmation Order**

140.    In the event of any direct conflict between the terms of the Plan or any of

the Plan Documents and the terms of this Confirmation Order, the terms of this Confirmation

Order shall control.

**KK.    Notice of Entry of Confirmation Order and Occurrence of Effective Date**

141.    In accordance with Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c),

within fifteen (15) Business Days following the occurrence of the Effective Date, the Debtors

shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date on all

parties served with the Confirmation Hearing Notice in substantially the form of the notice

annexed hereto as Exhibit B, which form is hereby approved, to be delivered to such parties by

first-class mail, postage prepaid, or by electronic mail as authorized in the Solicitation

Procedures Order; *provided* that no notice or service of any kind shall be required to be mailed or

made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but

received such notice returned marked "undeliverable as addressed," "moved, left no forwarding

address" or "forwarding order expired," or similar reason and the Debtors have made a

reasonable effort to ascertain an alternative mailing address, unless the Debtors have been

informed in writing by such Entity, or is otherwise aware, of that Entity's new address; *provided*, further that the Debtors may, within their reasonable discretion, determine to serve separate notices of entry of this Confirmation Order and occurrence of the Effective Date on the parties and in the manner described above, each of such separate notices to be, in relevant part, in substantially the form of the notice annexed hereto as <u>Exhibit B</u>.

142.     Mailing of the notice of entry of this Confirmation Order in the time and manner set forth in the previous paragraph shall be good and sufficient notice under the particular circumstances in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice shall be necessary.

## LL.    Injunctions and Automatic Stay

143.     Unless otherwise provided in the Plan or in this Confirmation Order, any injunction or stay arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

144.     This Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, setoffs, suits, judgments, damages, demands, debts, rights or liabilities released, compromised, or discharged pursuant to the Plan.

## MM.   Nonseverability of Plan Provisions upon Confirmation

145.     Each term and provision of the Plan, as it may have been altered or interpreted herein, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and

may not be deleted or modified except in accordance with Article 11 of the Plan; and

(c) nonseverable and mutually dependent, *provided*, *however*, the Customer Preference

Settlement offered through the Plan is severable.

## NN.    Authorization to Consummate

146.    The Debtors are authorized to consummate the Plan on any Business Day

selected by the Debtors after the entry of this Confirmation Order, subject to satisfaction or

waiver of the conditions (by the required parties) to the Effective Date set forth in Section 9.1 of

the Plan.  The Plan shall not become effective unless and until the conditions set forth in Section

9.1 of the Plan have been satisfied or waived (by the required parties) pursuant thereto.

## OO.    Filing and Recording

147.    This Confirmation Order is and shall be binding upon and shall govern the

acts of all persons or entities including, without limitation, all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be required, by operation of law, the duties

of their office, or contract, to accept, file, register, or otherwise record or release any document

or instrument.  Each and every federal, state, and local government agency is hereby directed to

accept any and all documents and instruments necessary, useful, or appropriate (including

financing statements under the applicable uniform commercial code) to effectuate, implement,

and consummate the transactions contemplated by the Plan and this Confirmation Order without

payment of any stamp tax or similar tax imposed by state or local law.

## PP.    Tax Withholding and Identification

148.    In connection with the Plan, to the extent applicable, the Debtors, the Plan

Administrator and the Distribution Agent shall comply with all tax withholding and reporting

requirements imposed on them by any tax law, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors, the Plan Administrator and the Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including withholding in kind, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms that are reasonable and appropriate.  For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable Holder.  The Plan Administrator reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

149.    Any Holder entitled to receive any Distribution under the Plan shall, upon request, deliver to the Distribution Agent or such other Entity designated by the Plan Administrator Pre-Distribution Requirements, including a completed IRS Form W-9 or appropriate IRS Form W-8.  If a request for Pre-Distribution Requirements has not been satisfied within 30 days thereafter, a second request shall be sent to such Holder.  If the Holder fails to comply with the Pre-Distribution Requirements before the date that is 60 days after a second request is made, such Holder shall be deemed to have forfeited its right to receive Distributions, and shall be forever barred and enjoined from asserting any right to Distributions made prior to

the Plan Administrator receiving its executed Pre-Distribution Requirements.  Any Distributions

that are forfeited pursuant to this provision shall revest in the Consolidated Wind Down Trust as

Plan Assets.

150.    Notwithstanding the foregoing, each holder of an Allowed Claim or any

other Entity that receives a distribution pursuant to the Plan shall have responsibility for any

Taxes imposed by any Governmental Unit, including income, withholding, and other Taxes, on

account of such distribution.  Any party issuing any instrument or making any distribution

pursuant to the Plan has the right, but not the obligation, not to make a distribution until such

holder has made arrangements satisfactory to such issuing or disbursing party for payment of any

such Tax obligations and, if any party issuing any instrument or making any distribution under

the Plan fails to withhold with respect to any such holder's distribution, and is later held liable

for the amount of such withholding, the holder shall reimburse such party.

## QQ.    Substantial Consummation

151.    On the Effective Date, the Plan shall be deemed substantially consummated

under sections 1101 and 1127(b) of the Bankruptcy Code.

## RR.    Debtors' Actions Post-Confirmation Through the Effective Date

152.    During the period from entry of this Confirmation Order through and until

the Effective Date, the Debtors shall continue to operate their businesses as debtors-in-possession

in the ordinary course in a manner consistent with past practice in all material respects, and as

otherwise necessary to consummate the Plan, subject to all applicable Final Orders, the Plan and

any other Plan Documents.

## SS.    Governmental Units

153.    Nothing in the Plan or the Confirmation Order shall affect the obligations

of the pre-Effective Date Debtors, the post-Effective Date Debtors, the Wind Down Entities,

and/or any transferee or custodian under applicable law to maintain books and records that are subject to any governmental subpoena, document preservation letter, or other inquiry or investigative request from a governmental agency. The Debtors and the Liquidating Trust, as applicable, shall preserve and maintain the Debtors' books, records, documents, files, electronic data (in whatever format, including native format) and tangible objects, wherever stored (the "Debtor's Records"), and shall not destroy, abandon, or otherwise render them unavailable without providing at least sixty (60) days' advance written notice filed on the Bankruptcy Court's docket and served in accordance with Bankruptcy Rule 2002.

154. Notwithstanding any language to the contrary contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order constitutes a finding under the federal securities laws as to whether crypto assets or transactions involving crypto assets are securities. Notwithstanding the foregoing or anything to the contrary in the Plan, Confirmation Order, or Plan Supplement, beneficial interests in the Consolidated Wind Down Trust will not be certificated and may not be transferred, sold, pledged or otherwise disposed of, or offered for sale. The Consolidated Wind Down Trust will operate in compliance with federal and state securities laws and SEC staff guidance, including those regarding liquidating trusts, if applicable.

155. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, as to the United States of America (the "United States"), nothing in the Plan or the Confirmation Order: (i) shall grant any relief to any entity that the court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. 2201(a), or the Anti-Injunction Act, 26 U.S.C. 7421(a) or (ii) shall expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code; *provided however*, for the avoidance of doubt, the Debtors shall not be released or discharged of any liabilities arising under subchapter III of

Chapter 37 of Title 31 of the United States code (the "False Claims Act") or any criminal or federal tax laws (except as separately agreed with the United States). The exculpation, release and injunction provisions contained in the Plan and the Confirmation Order are not intended, and shall not be construed, to bar the United States or other Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) from, subsequent to entry of the Confirmation Order, exercising any criminal, police and or regulatory powers that would not be stayed pursuant to section 362 of the Bankruptcy Code. Notwithstanding the foregoing, the automatic stay of section 362 of the Bankruptcy Code shall no longer apply after the Effective Date of the Plan.

156.    Nothing in the Confirmation Order or the Plan shall release any non-Debtor parties from any liability to any Governmental Unit, including the United States, including but not limited to, any liabilities arising under the Internal Revenue Code, the environmental laws, the False Claims Act or any criminal laws, nor shall anything in the Confirmation Order or the Plan enjoin the United States from bringing any such claim, suit, action or other proceeding against non-Debtor parties, in each case except as separately and expressly agreed in writing by the United States.

157.    As to any Governmental Unit in the United States, except as separately and expressly agreed in writing with such Governmental Unit (including, without limitation, the settlement authorized by the Court's June 20, 2024 order (D.I. 18036) and the settlement authorized by the Court's August 5, 2024 order (D.I. 22283)), nothing in the Plan, the Confirmation Order, any Plan Supplement, the Definitive Documents, or other related documents shall:

1.    discharge, release, exculpate, enjoin, bar, impair or otherwise preclude or affect (a) any obligation or liability to any Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any Claim of any

Governmental Unit arising after the Effective Date, (c) any obligation or liability of any of the Debtors or the Wind Down Entities accruing after the Effective Date under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity owns, operates, licenses, or leases after the Effective Date, (d) any right, defense, suit or cause of action of, or obligation or liability owed to, any Governmental Unit on behalf of any non-Debtor, or (e) any and all regulatory orders or non-monetary judgments issued to or against the Debtors prior to, during, or after the Effective Date;

2. release, exculpate, bar, enjoin, nullify, or preclude the enforcement of any Governmental Unit's criminal, police and regulatory powers, other than the enforcement of money judgment;

3. authorize the assumption, sale, assignment or other transfer of any federal or governmental (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property, data and patents, (v) leases, (vi) participation rights, (vii) agreements, (viii) applications, (ix) licenses, (x) permits, (xi) registrations, (xii) authorizations, (xiii) approvals, or (xiv) other interests of any Governmental Unit (collectively, "Governmental Interests"), without compliance with all terms of the Governmental Interests, as applicable, and with all applicable non-bankruptcy law;

4. be interpreted to set cure amounts or to require the United States or any Governmental Unit to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Governmental Interests;

5. waive, alter or otherwise limit any Governmental Unit's property and other rights, including, but not limited to, an interest in the Debtors' accounts and cryptocurrency funds, whether now in existence or hereafter acquired, and all rights and interests of any Governmental Units, Debtors or Wind Down Entities are fully preserved;

6. confer exclusive jurisdiction to the Bankruptcy Court with respect to the Governmental Interests, claims, rights, defenses, obligations, liabilities, and causes of action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

7. affect any setoff or recoupment rights and defenses of any Governmental Units and such rights and defenses are preserved;

8.      affect any adversary proceeding by the Committee or the Debtors against any Governmental Units or any related litigation or appeals; or

9.      expand the scope of section 525 of the Bankruptcy Code.

158.    For the avoidance of doubt, the States of Texas, New Jersey, Wisconsin, Mississippi, and Tennessee, and their respective agencies, opt out of any and all releases provided in the Plan.

159.    Notwithstanding any terms herein (except as provided in paragraph 157 above) or in the Plan, the treatment of the proofs of claim of the States of Texas, New Jersey, Wisconsin, Mississippi, and Tennessee, and other states participating as "State Governmental Claims" as defined therein, shall be treated pursuant to the *Stipulation By and Between the Debtors and Certain State Governmental Units* filed at Docket No. 25287.

## TT.    FTX DM Global Settlement Agreement

160.    To the extent that the FTX DM Global Settlement Agreement is in full force and effect as of the Effective Date, the FTX DM Global Settlement Agreement will be incorporated into the Plan.

## UU.    Other Reservations of Rights

161.    For the avoidance of doubt, notwithstanding anything contained herein to the contrary, nothing in this Confirmation Order, the Plan or Plan Supplement (1) pertaining to substantive consolidation, the elements thereof, or the insolvency of any Debtor or consolidated Debtors is intended to or shall be deemed to affect any rights, obligations, claims, defenses, counterclaims or cross-claims of any party to the pending adversary proceeding, *Alameda Research Ltd. and Clifton Bay Investments LLC* v. *Kives et al.* (Adv. Pro. No. 23-50411 (JTD)) or (2) is intended to impact the parties' rights or obligations in connection with agreements and investments that are related to that pending adversary proceeding.

162.    Nothing in this Confirmation Order, the Plan, or any documents or agreements relating thereto, shall be deemed to alter, limit, enjoin, or modify (i) Philadelphia Indemnity Insurance Company's ("Philadelphia") and the Debtors' rights and defenses under the prepetition surety bonds issued by Philadelphia on behalf of certain Debtors (collectively, the "Surety Bonds"), the related indemnity agreements and/or collateral agreements (the "Surety Indemnity Agreements"), and/or in any collateral in respect of the Surety Indemnity Agreements and Surety Bonds (the "Surety Collateral") or (ii) Philadelphia's subrogation rights with respect to any claim by third parties and any claims against any of Philadelphia's non-Debtor indemnitors. For the avoidance of doubt, the Debtors are not assuming, and, to the extent subject to rejection pursuant to section 365 of the Bankruptcy Code, expressly rejecting pursuant to the Plan, the Surety Bonds and the Surety Indemnity Agreements.  Without the requirement of any action by Philadelphia, Philadelphia is deemed to have opted out of the third-party release provisions of the Plan, and Philadelphia is not a Releasing Party under the Plan.

163.    Notwithstanding anything in the Plan or Confirmation Order:  (i) any administrative expense claims of Mississippi Department of Revenue (the "MDOR") shall be subject to, and treated in accordance with, Sections 3.2 and 3.3 of the Plan and the MDOR, the Debtors' and the Plan Administrator's rights are reserved with respect to such claims; (ii) the MDOR shall provide notice to the Plan Administrator of such administrative claims (it being understood that the MDOR shall not be required to file any proofs of claim or requests for payment in the Chapter 11 Cases for the liabilities described in section 503(b)(1)(B) and (C) of the Bankruptcy Code as a condition to having an allowed administrative expense under subsection 503(b)(1)(B) or (C) of the Bankruptcy Code); (ii) the MDOR may amend any proof of claim with respect to (a) a pending audit or audit that may be performed, (b) within 60 days following the

filing of a tax return or (c) to liquidate an unliquidated claim; provided that the Debtors or the Plan Administrator's rights are reserved with respect to such claim and any amendment; (iv) any Allowed Priority Tax Claims of the MDOR shall be subject to, and treated in accordance with, Section 4.3.1 of the Plan except to the extent that the such claims, if any, are not paid in full in cash on the Initial Distribution Date, in which case such claims shall, at a minimum, be paid by regular installment payments in cash over a period beginning from the Initial Distribution Date not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, along with non-bankruptcy interest in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code and Mississippi state law, as applicable; and (v) the treatment of the MDOR Allowed Priority Tax Claims and/or any liabilities to the MDOR described in section 503(b)(1)(B) and (C) of the Bankruptcy Code described herein shall not be considered a settlement or compromise.

164.   Notwithstanding anything to the contrary in the Plan Documents, other than as explicitly provided for in the *Order (A) Authorizing the Debtors' Entry Into, and Performance Under, the Settlement Agreement With Kroll Restructuring Administration LLC, (B) Approving the Settlement Agreement, and (C) Granting Related Relief* [D.I. 24885] ("Kroll Settlement Order") nothing in the Plan or the Plan Documents shall release or exculpate Kroll Restructuring Administration LLC for claims relating to the Security Incident (as defined in the Kroll Settlement Order).

165.   For the avoidance of doubt, notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, the damages suffered by any Customer and recoverable in another proceeding are not capped or otherwise limited by the amount Distributed on account of Allowed Claims in the Chapter 11 Cases.

166.     Notwithstanding anything to the contrary in the Plan, the Debtors shall not receive a discharge.

167.     Notwithstanding anything to the contrary in the Confirmation Order or the Plan, proofs of claim numbers 91933 and 96369 (the "ELD Claims") filed by ELD Capital LLC shall not be deemed settled pursuant to section 5.2 of the Plan, and shall not be deemed released under section 10.4 of the Plan and such claims shall be adjudicated through the claims objection process.  The parties' rights, defenses and objections with respect to the ELD Claims are fully reserved.

168.     Distributions under the Plan shall not occur until after entry by the Bankruptcy Court of an order determining the amount of a Disputed Claims Reserve (the "Disputed Claims Reserve Amount"), which order shall be entered following a motion by the Debtors or the Plan Administrator, subject to notice and a hearing.  All partiers' rights are reserved as to the Disputed Claims Reserve Amount.

## VV.  Interpretation

169.     Notwithstanding any other provision of the Plan, the Plan Supplement, or this Confirmation Order, any bona fide, good faith dispute regarding the interpretation of an ambiguity in the Plan or the Plan Supplement in accordance with Section 2.2 of the Plan shall be resolved by the Court.

## WW.  Final Order

170.     This Confirmation Order is intended to be a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: October 8th, 2024
Wilmington, Delaware

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit A**

**Plan**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

———————————————————x

In re                                      :       Chapter 11
                                           :
FTX TRADING LTD., *et al.*,[1]             :       Case No. 22-11068 (JTD)
                                           :
                          Debtors.         :       (Jointly Administered)
                                           :
———————————————————x

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
## FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

<div style="display:flex">

<div>

Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail: dietdericha@sullcrom.com
          bromleyj@sullcrom.com
          gluecksteinb@sullcrom.com
          kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

</div>

<div>

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
E-mail: landis@lrclaw.com
          mcguire@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

*Counsel for the Debtors and Debtors-in-Possession*

</div>

</div>

Dated:  September 30, 2024

---

[1]   The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION .................................................................................................1
    1.1. Introduction ....................................................................................... 1
    1.2. Dismissed Chapter 11 Cases and Excluded Entities............................ 1

2. DEFINITIONS AND RULES OF INTERPRETATION ...................................4
    2.1. Defined Terms ................................................................................... 4
    2.2. Rules of Interpretation ...................................................................... 26
    2.3. Governing Law ................................................................................. 27
    2.4. Computation of Time ........................................................................ 27

3. ADMINISTRATIVE EXPENSE CLAIMS......................................................28
    3.1. Administrative Claim Bar Date ........................................................ 28
    3.2. General Administrative Claims.......................................................... 28
    3.3. 503(b)(9) Claims .............................................................................. 29
    3.4. Professional Claims .......................................................................... 29
    3.5. Statutory Fees Payable Pursuant to 28 U.S.C. § 1930 ...................... 30
    3.6. Expense Allocation .......................................................................... 30

4. CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND
   INTERESTS .....................................................................................................31
    4.1. Classification of Claims and Interests............................................... 31
    4.2. Distributions Waterfalls ................................................................... 32
    4.3. Treatment of Claims and Interests .................................................... 36
    4.4. Valuation of Claims ......................................................................... 47
    4.5. Special Provision Governing Unimpaired Claims............................... 47
    4.6. Acceptance by Impaired Classes ...................................................... 47
    4.7. Elimination of Vacant Classes ......................................................... 48
    4.8. Voting Classes; Presumed Acceptance by Non-Voting Classes......................... 48
    4.9. Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy
       Code ................................................................................................ 48

5. IMPLEMENTATION OF THE PLAN .............................................................49
    5.1. Operations Between the Confirmation Date and Effective Date .......................... 49
    5.2. Global Settlement of Claims and Interests......................................... 49
    5.3. FTX DM Global Settlement.............................................................. 50
    5.4. Setoff Against FTX DM ................................................................... 50
    5.5. Waiver of Customer Preference Actions ........................................... 50
    5.6. Other Settlements ............................................................................. 51
    5.7. Substantive Consolidation ................................................................ 51
    5.8. Wind Down Entities.......................................................................... 52
    5.9. Plan Funding Mechanism ................................................................. 53

5.10.  Dissolution of Boards of the Debtors .................................................................... 53
5.11.  The Wind Down Board ......................................................................................... 53
5.12.  Plan Administrator and Plan Administration Agreement ..................................... 53
5.13.  Vesting of Assets Free and Clear and No Successor Liability ............................. 54
5.14.  D&O Policies ....................................................................................................... 54
5.15.  Cancellation of Existing Interests ....................................................................... 55
5.16.  Section 1146 Exemption from Certain Transfer Taxes and Recording Fees ........ 55
5.17.  Preservation of Causes of Action ........................................................................ 55
5.18.  Effectuating Documents and Further Transactions .............................................. 56
5.19.  Wind Down of Debtors, Wind Down Entities, Excluded Entities and Non-
       Debtor Subsidiaries ............................................................................................. 56
5.20.  Creditor Advisory Committee .............................................................................. 57
5.21.  Supplemental Remission Fund ............................................................................ 58
5.22.  Preferred Shareholder Fund ................................................................................. 59

6.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 60

6.1.   Rejection of Executory Contracts and Unexpired Leases ..................................... 60
6.2.   Claims Against the Debtors upon Rejection ......................................................... 60
6.3.   Modification, Amendments, Supplements, Restatements or Other
       Agreements .......................................................................................................... 60
6.4.   Reservation of Rights ........................................................................................... 61

7.    PROVISIONS GOVERNING DISTRIBUTIONS ...................................................... 62

7.1.   Accrual of Postpetition Interest on Certain Claims ............................................. 62
7.2.   Distributions Timing ............................................................................................ 62
7.3.   Distributions to Holders of Customer Entitlement Claims ................................... 63
7.4.   Record Date and Delivery of Distributions .......................................................... 63
7.5.   Distribution Agent ............................................................................................... 64
7.6.   Fractional and *De Minimis* Distributions ......................................................... 65
7.7.   Undeliverable Distributions ................................................................................. 65
7.8.   Reversion ............................................................................................................. 65
7.9.   Surrender of Cancelled Instruments or Securities ............................................... 66
7.10.  Setoffs ................................................................................................................. 66
7.11.  The Bahamas Opt-In Election .............................................................................. 66
7.12.  Anti-Double Dip .................................................................................................. 67
7.13.  Compliance with Tax Requirements ..................................................................... 67
7.14.  Tax Identification, KYC and OFAC Certifications .............................................. 68
7.15.  Distribution of Available NFTs ............................................................................ 69

8.    CLAIMS ADMINISTRATION PROCEDURES ......................................................... 70

8.1.   Objections to Claims ............................................................................................ 70
8.2.   Estimation of Claims ............................................................................................ 70
8.3.   Expungement and Disallowance of Claims .......................................................... 70
8.4.   Amendments to Proofs of Claim .......................................................................... 71
8.5.   Disputed Claims Reserve ..................................................................................... 71
8.6.   No Distributions Pending Allowance ................................................................... 71

| | | |
|---|---|---|
| 8.7. | Distributions After Allowance ................................................ | 72 |
| 8.8. | Administration Responsibilities .............................................. | 72 |
| 8.9. | Claims Paid or Payable by Third Parties ................................. | 72 |

**9.**     **CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN** ......................... 73

| | | |
|---|---|---|
| 9.1. | Conditions Precedent to the Effective Date ............................ | 73 |
| 9.2. | Waiver of Conditions ............................................................ | 74 |
| 9.3. | Simultaneous Transactions .................................................... | 74 |
| 9.4. | Effect of Non-Occurrence of the Effective Date ..................... | 74 |
| 9.5. | Notice of Effective Date ........................................................ | 74 |

**10.**     **SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS** .............. 75

| | | |
|---|---|---|
| 10.1. | Subordinated Claims ............................................................. | 75 |
| 10.2. | Release of Liens ................................................................... | 75 |
| 10.3. | Debtors' Release .................................................................. | 75 |
| 10.4. | Voluntary Release by Holders of Claims and Interests ............ | 76 |
| 10.5. | FTX DM and JOL Releases ................................................... | 77 |
| 10.6. | Scope of Releases ................................................................ | 77 |
| 10.7. | Exculpation .......................................................................... | 77 |
| 10.8. | Injunction ............................................................................ | 78 |
| 10.9. | Limitations on Exculpations and Releases ............................. | 78 |

**11.**     **MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN** .................. 80

| | | |
|---|---|---|
| 11.1. | Modification of Plan ............................................................ | 80 |
| 11.2. | Effect of Confirmation on Modification ................................. | 80 |
| 11.3. | Revocation of Plan ............................................................... | 80 |

**12.**     **RETENTION OF JURISDICTION** ................................................................ 81

| | | |
|---|---|---|
| 12.1. | Retention of Jurisdiction ...................................................... | 81 |

**13.**     **MISCELLANEOUS PROVISIONS** ............................................................... 84

| | | |
|---|---|---|
| 13.1. | Immediate Binding Effect ..................................................... | 84 |
| 13.2. | Additional Documents; Further Assurances ........................... | 84 |
| 13.3. | Reservation of Rights ........................................................... | 84 |
| 13.4. | Successors and Assigns ........................................................ | 84 |
| 13.5. | Term of Injunction or Stays .................................................. | 84 |
| 13.6. | Entire Agreement ................................................................. | 85 |
| 13.7. | Exhibits ............................................................................... | 85 |
| 13.8. | Nonseverability of Plan Provisions upon Confirmation .......... | 85 |
| 13.9. | Dissolution of Official Committee ......................................... | 85 |
| 13.10. | Termination of Fee Examiner's Appointment ......................... | 86 |
| 13.11. | Debtors' Directors and Officers ............................................ | 86 |
| 13.12. | Closing of Chapter 11 Cases ................................................. | 86 |
| 13.13. | Conflicts .............................................................................. | 86 |
| 13.14. | No Stay of Confirmation Order ............................................. | 86 |

13.15.  Waiver or Estoppel ........................................................................................... 86
13.16.  Post-Effective Date Service ............................................................................... 87
13.17.  Notices ............................................................................................................... 87

# 1. INTRODUCTION

## 1.1. Introduction

FTX Trading Ltd. ("FTX Trading") and its affiliated debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"), propose the following joint plan of reorganization (including the Plan Supplement and all other exhibits and schedules thereto, the "Plan") pursuant to section 1121(a) of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to an order entered by the Court on November 22, 2022 [D.I. 128]. Each Debtor is a proponent of the Plan for purposes of section 1129 of the Bankruptcy Code.

## 1.2. Dismissed Chapter 11 Cases and Excluded Entities

The following Entities were Debtors as of the Petition Date but are no longer Debtors and are not included in the Plan:

(a)    the chapter 11 case of FTX Turkey Teknoloji ve Ticaret Anonim Şirketi ("FTX Turkey") was dismissed on February 13, 2023 [D.I. 711];

(b)    the chapter 11 case of SNG Investments Yatırım ve Danışmanlık Anonim Şirketi ("SNG Investments") was dismissed on February 13, 2023 [D.I. 711];

(c)    the chapter 11 case of FTX Exchange FZE was dismissed on August 18, 2023 [D.I. 2207];

(d)    the chapter 11 case of Liquid Financial USA, Inc. was dismissed on November 13, 2023 [D.I. 3739];

(e)    the chapter 11 case of LiquidEX, LLC was dismissed on November 13, 2023 [D.I. 3739];

(f)    the chapter 11 case of Zubr Exchange Limited was dismissed on November 13, 2023 [D.I. 3739];

(g)    the chapter 11 case of DAAG Trading, DMCC was dismissed on November 13, 2023 [D.I. 3739];

(h)    the chapter 11 case of FTX Switzerland GmbH was dismissed on May 10, 2024 [D.I. 9585];

(i)    the chapter 11 case of FTX Trading GmbH was dismissed on May 24, 2024 [D.I. 9585];

(j)    the chapter 11 case of FTX EU Ltd. is pending dismissal [D.I. 9585];

(k)     the chapter 11 case of FTX Certificates GmbH was dismissed on May 10, 2024 [D.I. 9585];

(l)     the chapter 11 case of FTX Structured Products AG was dismissed on May 10, 2024 [D.I. 9585];

(m)     the chapter 11 case of FTX Crypto Services Ltd. was dismissed on March 18, 2024 [D.I. 9585];

(n)     the chapter 11 case of FTX Products (Singapore) Pte Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(o)     the chapter 11 case of Liquid Securities Singapore Pte Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(p)     the chapter 11 case of Analisya Pte Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(q)     the chapter 11 case of Quoine Vietnam Co. Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(r)     the chapter 11 case of Alameda Aus Pty Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(s)     the chapter 11 case of Alameda Research Pte Ltd was dismissed on April 19, 2024 [D.I. 12260];

(t)     the chapter 11 case of Innovatia Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(u)     the chapter 11 case of FTX Japan Services K.K. was dismissed on April 19, 2024 [D.I. 12260];

(v)     the chapter 11 case of Quoine India Pte Ltd. was dismissed on April 19, 2024 [D.I. 12260];

(w)     the chapter 11 case of FTX Japan K.K. was dismissed on July 25, 2024 [D.I. 20560]; and

(x)     the chapter 11 case of FTX Europe AG was designated as an Excluded Entity in the Plan Supplement [D.I. 22163].

Such Debtors and the Entities listed above shall constitute "Excluded Entities" for purposes of the Plan and shall be excluded from the Plan for all purposes, and the assets and liabilities of the Excluded Entities shall not be transferred to, or vest in, any of the Wind Down Entities.

The Debtors may determine, prior to or in connection with Confirmation of the Plan, to exclude any other Debtor from the Plan and treat such Debtor as an Excluded Entity for any reason, including in the event that regulatory, tax or other Claims presented against such Debtor render the continued inclusion of such Debtor in the Plan impractical or adverse to the interests of other Debtors.

The Debtors may determine, no later than 180 days after the Confirmation Date, to exclude Quoine Pte. Ltd. from the Plan and treat Quoine as an Excluded Entity in the event that the Singapore International Commercial Court has not entered orders in form and substance reasonably acceptable to the Debtors (i) recognizing the Chapter 11 Case of Quoine Pte. Ltd. in Singapore and (ii) granting full force and effect in Singapore to the Confirmation Order, the Digital Assets Estimation Order and the Claims Bar Date.

## 2.    DEFINITIONS AND RULES OF INTERPRETATION

### 2.1.    Defined Terms

Except as otherwise provided herein, each capitalized term used in the Plan shall have the meaning set forth below.

2.1.1    "503(b)(9) Claim" means a Claim arising under section 503(b)(9) of the Bankruptcy Code for which a Proof of Claim was filed on or before the Non-Customer Bar Date.

2.1.2    "Ad Hoc Committee" means the ad hoc group of individuals, funds, or accounts managed, advised, or sub-advised by funds that hold Dotcom Customer Entitlement Claims set forth on the Verified Statement of Eversheds Sutherland (US) LLP and Morris, Nichols, Arsht & Tunnell LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019 [D.I. 1156], as supplemented by the Verified Sixth Supplemental Statement [D.I. 9794], and as further supplemented from time to time.

2.1.3    "Administrative Claim" means any Claim for costs and expenses of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code arising on or prior to the Effective Date and entitled to priority pursuant to sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including Professional Claims; *provided* that Administrative Claims shall not include 503(b)(9) Claims.

2.1.4    "Administrative Claim Bar Date" means:  (a) 4:00 p.m. (prevailing Eastern Time) on the 30th day after the Effective Date or (b) such other date established by order of the Bankruptcy Court by which Proofs of Claim in respect of Administrative Claims must be filed (other than Professional Claims).

2.1.5    "Advisory Committee" has the meaning set forth in Section 5.20.

2.1.6    "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

2.1.7    "Alameda U.S. Customer Claim" means a U.S. Customer Entitlement Claim in the amount of $116,533,849.43.

2.1.8    "Allowed" means, with respect to any Claim or Interest, that the amount, priority and/or classification of such Claim or Interest has been:

(a)    (i) allowed by the Plan or the Confirmation Order, or by Final Order of the Bankruptcy Court, and (ii) is not subject to a valid and timely Bahamas Opt-In Election;

(b)    (i) allowed or stipulated in writing (x) prior to the Effective Date, by the Debtors in accordance with authority granted by an order of the Bankruptcy Court or (y) on or after the Effective Date, by the Plan

Administrator, and (ii) is not subject to a valid and timely Bahamas Opt-In Election;

(c) listed in the Schedules as not disputed, not contingent, not unliquidated with respect to amount, secured status or priority and (i) no Proof of Claim in an amount greater than the amount set forth in the Schedules has been filed, (ii) no objection to allowance, priority or classification, request for estimation, motion to deem the Schedules amended or other challenge has been filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules or as determined by the Bankruptcy Court, (iii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code, (iv) such Claim is not an Unverified Customer Entitlement Claim, and (v) is not subject to a valid and timely Bahamas Opt-In Election;

(d) evidenced by a valid and timely filed Proof of Claim and (i) no objection to allowance, priority or classification, request for estimation or other challenge has been filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules or as determined by the Bankruptcy Court, (ii) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code, (iii) such Claim is not an Unverified Customer Entitlement Claim, and (iv) is not subject to a valid and timely Bahamas Opt-In Election;

(e) in the case of an Other Administrative Claim, subject to a request for payment timely filed and served in accordance with Section 3.1 and no objection to such Claim has been timely filed and served pursuant to Article 3; or

(f) in the case of any Professional Claim, allowed by an order of the Bankruptcy Court.

2.1.9 "Appointed Director" has the meaning set forth in Section 5.11.

2.1.10 "Available NFT" means a minted NFT that is in the custody of a Debtor on the Effective Date.

2.1.11 "Avoidance Actions" means any and all Causes of Action to subordinate, avoid or recover a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including, but not limited to, sections 105(a), 502(d), 510, 542, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code, or under any similar or related local, state, federal or foreign statutes or common law, provided any DM-Controlled Recovery Actions shall not constitute Avoidance Actions.

2.1.12    "AWS Wallets" means Digital Asset wallets stored by the Debtors at Amazon Web Services.

2.1.13    "Bahamas Bar Date" means August 16, 2024, or such other date the Debtors and FTX DM may reasonably agree, as the deadline for proofs of debt to be filed in the FTX DM Liquidation.

2.1.14    "Bahamas Customer" means any Holder of a Dotcom Customer Entitlement Claim or Dotcom Convenience Claim that has made a valid Bahamas Opt-In Election.

2.1.15    "Bahamas JOLs" means Brian C. Simms, KC, Peter Greaves and Kevin G. Cambridge, in their capacity as joint and several official liquidators of FTX DM (and in their capacity as joint and several provisional liquidators, where applicable), and any successor Person or Persons who take or hold office as joint official liquidators of FTX DM.

2.1.16    "Bahamas Opt-In Election" means an affirmative and irrevocable election on a properly executed Ballot timely delivered in the Chapter 11 Cases by the Voting Deadline or on a properly executed proof of debt timely filed in the FTX DM Liquidation by the Bahamas Bar Date to have all (but not less than all) Dotcom Customer Entitlement Claims, Dotcom Convenience Claims, and *De Minimis* Claims set forth in the relevant Ballot (if applicable) or proof of debt administered, reconciled, valued, settled, adjudicated, resolved, and satisfied in the FTX DM Liquidation, and to have such Claims withdrawn with prejudice from the Chapter 11 Cases.

2.1.17    "Bahamas Properties" means all interests of FTX Bahamas PropCo in the real estate assets listed in Exhibit A to the Exclusive Sales Agency Agreement.

2.1.18    "Bahamian Subsidiaries" means FTX DM and FTX Bahamas PropCo.

2.1.19    "Ballots" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the Solicitation Procedures Order, and which must be actually received on or before the Voting Deadline.

2.1.20    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

2.1.21    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Delaware.

2.1.22    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to these Chapter 11 Cases, and the general, local and chambers rules of the Bankruptcy Court.

2.1.23    "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

2.1.24    "Cancelled Intercompany Claim" means any Intercompany Claim other than (a) any Separate Subsidiary Intercompany Claim, (b) the Dotcom Intercompany Shortfall Claim, (c) the U.S. Intercompany Shortfall Claim and (d) the Alameda U.S. Customer Claim.

2.1.25    "Case Expenses" has the meaning set forth in Section 3.6.

2.1.26    "Cash" means the legal tender of the United States of America or the equivalents thereof, including U.S. Dollar pegged Stablecoin, bank deposits, checks and other similar items.

2.1.27    "Cause of Action" means any action, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, remedy, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including without limitation:  (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any Avoidance Action; (e) any claim or defense, including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any state law fraudulent transfer claim; and (g) any claim against Persons or Entities that are not released under the Plan, including the Preserved Potential Claims, and such Entity's directors, officers, employees, agents, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities; *provided* that Cause of Action does not include any DM-Controlled Recovery Action.

2.1.28    "Certificate" means any instrument evidencing a Claim or an Equity Interest.

2.1.29    "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for such Debtor and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court; *provided* that the Chapter 11 Cases shall not include (i) the chapter 11 case of any Excluded Entity, (ii) any chapter 11 case that has been closed pursuant to Section 13.13 or (iii) the chapter 11 case of Debtor Emergent Fidelity Technologies Ltd.

2.1.30    "Claim" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

2.1.31    "Claims Bar Date" means, as applicable, (a) the Non-Customer Bar Date; (b) the Customer Bar Date; (c) the Governmental Bar Date; or (d) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed.

2.1.32    "Claims Objection Deadline" means:  (a) the date that is the later of (i) one year after the Effective Date or (ii) as to Proofs of Claim filed after the applicable Claims Bar

Date, the 60th day after a Final Order is entered by the Bankruptcy Court deeming the late-filed Proof of Claim to be treated as timely filed or (b) such later date as may be established by order of the Bankruptcy Court upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

2.1.33    "Claims Register" means the official register of Claims maintained by the Notice and Claims Agent.

2.1.34    "Class" means a class of Claims or Interests as set forth in Article 4 pursuant to section 1122(a) of the Bankruptcy Code.

2.1.35    "Confirmation" means the entry of the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.36    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

2.1.37    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.38    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.39    "Consensus Rate" means 9.0% or such lesser rate approved by the Bankruptcy Court.

2.1.40    "Consolidated Debtors" means all Debtors other than (a) the Separate Subsidiaries, (b) the Excluded Entities and (c) FTX Bahamas PropCo.

2.1.41    "Consolidated Wind Down Trust" has the meaning set forth in Section 5.7.

2.1.42    "Consummation" means the occurrence of the Effective Date.

2.1.43    "Contract Rate" means, with respect to any agreement obligating a Debtor to pay or repay money, Digital Assets or other property, the lowest stated rate of interest pursuant to the agreement applicable to outstanding payments, loans and advances without giving effect to any default interest, fees, penalties or similar fees, charges or costs.

2.1.44    "Control Persons" means (a) Samuel Bankman-Fried, Zixiao "Gary" Wang, Nishad Singh and Caroline Ellison; (b) any Person with a familial relationship with any of the individuals listed in clause (a); or (c) any other Person or Entity designated by the Debtors in the Plan Supplement as a Control Person.

2.1.45    "Customer" means a Person or Entity that maintained an account on an FTX Exchange.

2.1.46    "Customer Bar Date" means 4:00 p.m. (prevailing Eastern Time) on September 29, 2023.

2.1.47    "Customer Entitlement Claim" means any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Person or Entity against any of the Debtors that compensates the Holder of such Claim for the value as of the Petition Date of Cash or Digital Assets held by such Person or Entity in an account on any FTX Exchange.

2.1.48    "Customer Preference Action" means a Dotcom Customer Preference Action or a U.S. Customer Preference Action.

2.1.49    "D&O Policy" means any insurance policy and all agreements, documents or instruments relating thereto, issued to any of the Debtors covering defensive costs and other liabilities arising out of claims against current or former directors, members, trustees and officers of the Debtors, other than commercial general liability policies and cyber liability policies.

2.1.50    "Debtors" has the meaning set forth in Section 1.1; *provided* that Debtors shall not include (a) any Excluded Entity, (b) any Entity whose chapter 11 case has been closed pursuant to Section 13.13 or (c) Debtor Emergent Fidelity Technologies Ltd.

2.1.51    "*De Minimis* Claim" means any Claim in an amount equal to or less than $10.00.

2.1.52    "Digital Asset" means a DLT Digital Asset or a Pre-Launch Cryptocurrency.

2.1.53    "Digital Asset Loan Claim" means any Claim for loans of Digital Assets that is not a Secured Claim.

2.1.54    "Digital Assets Conversion Table" means the conversion table attached as Exhibit 1 to the Digital Assets Estimation Order and Appendix E to the Disclosure Statement.

2.1.55    "Digital Assets Estimation Order" means the *Order Granting Motion of Debtors to Estimate Claims Based on Digital Assets* [D.I. 7090] and the *Memorandum Opinion and Order* [D.I. 19069].

2.1.56    "Disclosure Statement" means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to the Solicitation Procedures Order, including all exhibits and schedules thereto and references therein that relate to the Plan.

2.1.57    "Disputed Claim" means any Claim that has not been Allowed and is not subject to a valid and timely Bahamas Opt-In Election.

2.1.58    "Disputed Claims Reserve" has the meaning set forth in Section 8.5.

2.1.59    "Distribution" means a distribution of property pursuant to the Plan, to take place as provided for herein, and "Distribute" shall have a correlative meaning.

2.1.60    "Distribution Agent" means one or more Entities chosen by the Debtors (and reasonably acceptable to the Supporting Parties) or the Plan Administrator (in consultation with the Advisory Committee), which may include the Notice and Claims Agent, to make any Distributions at the direction of the Plan Administrator.

2.1.61    "Distribution Date" means the Initial Distribution Date and each Subsequent Distribution Date.

2.1.62    "Distribution Record Date" means, for any Distribution Date, the record date determined by the Plan Administrator.

2.1.63    "DLT Digital Asset" means any digital representation of value or units that is issued or transferable using distributed ledger or blockchain technology, including Stablecoins, cryptocurrency and NFTs.

2.1.64    "DM-Controlled Recovery Action" has the meaning set forth in the FTX DM Global Settlement Agreement.

2.1.65    "DM Customer Entitlement Claim" has the meaning set forth in the FTX DM Global Settlement Agreement.

2.1.66    "DOJ" means the United States Department of Justice.

2.1.67    "Dotcom Convenience Claim" means (a) any Dotcom Customer Entitlement Claim that is Allowed in an amount equal to or less than $50,000 or (b) any Dotcom Customer Entitlement Claim that is Allowed in an amount greater than $50,000 but that is reduced to an amount equal to or less than $50,000 by an irrevocable written election of the Holder of such Customer Entitlement Claim made on a properly executed and delivered Ballot; *provided* that where any portion of a Dotcom Customer Entitlement Claim has been transferred or subdivided, any transferred or subdivided portion shall continue to be treated together with the entire initial Dotcom Customer Entitlement Claim for purposes of determining whether any portion of such Dotcom Customer Entitlement Claim qualifies as a Dotcom Convenience Claim.

2.1.68    "Dotcom Customer Entitlement Claim" means any (a) Customer Entitlement Claim against the FTX.com Exchange and (b) Preference Replacement Claim relating to a Dotcom Customer Preference Action that arises from a judgment entered in favor of a Debtor against a Customer of the FTX.com Exchange or any of such Customer's successors or assigns; *provided* that Dotcom Customer Entitlement Claims shall not include, FTT Customer Entitlement Claims, NFT Customer Entitlement Claims, Dotcom Convenience Claims or *De Minimis* Claims.

2.1.69    "Dotcom Customer Preference Action" means any and all Causes of Action to avoid any preferential payments or transfers of property from the FTX.com Exchange pursuant to section 547 of the Bankruptcy Code and any recovery action related

thereto under section 550 of the Bankruptcy Code, or under any similar or related local, state, federal or foreign statutes or common law.

2.1.70    "Dotcom Customer Priority Assets" means collectively:

(a)    all fiat currency in segregated accounts designated by the Debtors as accounts for the benefit of customers associated with the FTX.com Exchange held by the Debtors on the Petition Date;

(b)    all Digital Assets (other than Available NFTs) held by the Debtors and identified by the Debtors as held for customers in FTX.com AWS Wallets on the Petition Date and all proceeds relating to the sale, disposition or other monetization thereof;

(c)    all Dotcom Hacking Recovery Proceeds;

(d)    all proceeds from any Claim or Cause of Action against any Customer of the FTX.com Exchange or any of such Customer's successors or assigns and Dotcom Customer Preference Actions;

(e)    all proceeds from recoveries from the Bahamian Subsidiaries, of any sort, whether from the Debtors' equity interest in, or from claims against, such Bahamian Subsidiaries, including (1) the residual proceeds, if any, from the sale, disposition or other monetization of property of FTX Bahamas PropCo in accordance with the waterfall priority set forth in Section 4.2.4 and (2) proceeds, if any, from the Stipulated Debtors Property as defined in the FTX DM Global Settlement Agreement;

(f)    all proceeds from any sale, disposition or monetization of any property of the Debtors relating to the FTX.com Exchange; and

(g)    the Dotcom Intercompany Shortfall Claim.

2.1.71    "Dotcom Customer Priority Pool" means all Dotcom Customer Priority Assets and the proceeds thereof.

2.1.72    "Dotcom Exchange Shortfall Amount" means $9,244,590,039.23, subject to reduction on account of any Dotcom Hacking Recovery Proceeds.

2.1.73    "Dotcom Hacking Recovery Proceeds" means any proceeds relating to the recovery of Digital Assets subject to the Hacking Incident recovered by the Debtors to the extent that such proceeds are in respect of Digital Assets held in FTX.com AWS Wallets before, on or after the Petition Date.

2.1.74    "Dotcom Intercompany Shortfall Claim" means a Claim against the General Pool subject to the waterfall priorities set forth in Section 4.2 in an amount equal to the Dotcom Exchange Shortfall Amount.

-11-

2.1.75    "Effective Date" means, following the Confirmation Date, 12:01 a.m. (prevailing Eastern Time) on a Business Day selected by the Debtors, on which all conditions to the occurrence of the Effective Date set forth in Section 9.1 are satisfied or waived in accordance with the Plan.

2.1.76    "Election Form" means the election form regarding the Voluntary Release by Holders of Claims and Interests provided to Holders of Claims or Interests who are not entitled to vote on the Plan and which must be actually received on or before the Voting Deadline.

2.1.77    "Eligible DM Customer Entitlement Claims" has the meaning set forth in the FTX DM Global Settlement Agreement.

2.1.78    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

2.1.79    "Equitably Subordinated Claim" means any Claim of any kind or nature whatsoever (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) held by any Control Person against any of the Debtors as of the Petition Date.

2.1.80    "Equity Interest" means any Equity Security, including any issued, unissued, authorized or outstanding share of common stock, preferred stock or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

2.1.81    "Equity Security" means an equity security as defined in section 101(16) of the Bankruptcy Code.

2.1.82    "Estate" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and/or as established by order of the Bankruptcy Court.

2.1.83    "Exchange Rate" means the closing exchange rate on the Petition Date, as published by *The Wall Street Journal*.

2.1.84    "Excluded Customer Preference Action" means any Customer Preference Action designated by the Debtors as an Excluded Customer Preference Action pursuant to Section 5.5.

2.1.85    "Excluded Entity" means any Entity listed in Section 1.2 or designated in the Plan Supplement as such and any other Entity that was a Debtor as of the Petition Date but which has been excluded from the Plan prior to or in connection with Confirmation of the Plan or, in the case of Quoine Pte. Ltd., no later than 180 days after the Confirmation Date.

2.1.86    "Excluded Party" means any (a) Control Person, (b) former director, officer or employee of any Debtor not incumbent as of the Confirmation Date, or (c) other Entity associated with the Debtors that is identified by the Debtors in the Plan Supplement as an Excluded Party.

2.1.87    "Exclusive Sales Agency Agreement" means the agreement among FTX Trading, FTX Bahamas PropCo and FTX DM, dated December 19, 2023, as may be amended, supplemented or modified from time to time.

2.1.88  "Exculpated Parties" means (a) the Debtors; (b) the Official Committee and its current and former members, solely for the duration of each member's service on the Official Committee and in their capacities as members of the Official Committee; (c) the Fee Examiner; (d) to the extent determined to be acting as a fiduciary for the benefit of a Debtor, or its estate, the Bahamas JOLs and FTX DM; and (e) with respect to each Person or Entity named in (a) through (d), any Person or Entity to the extent acting as a member, shareholder, director, officer, employee, attorney (including solicitors or barristers acting for the benefit of such Person or Entity), financial advisor, restructuring advisor, investment banker, accountant and other professional or representative of such Person or Entity, in each case in (a) through (e), to the extent such Person or Entity is or was acting in such capacity.  Notwithstanding anything to the contrary in the Plan or the Plan Supplement, no Excluded Party shall be an Exculpated Party.

2.1.89    "Executory Contract" means a contract to which one or more of the Debtors is a party and that such Debtor may assume or reject under section 365 or 1123 of the Bankruptcy Code.

2.1.90    "Federal Judgment Rate" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

2.1.91    "Fee Examiner" means Katherine Stadler, as Fee Examiner appointed under the *Order (I) Appointing Fee Examiner and (II) Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses* [D.I. 834].

2.1.92    "Final Distribution" has the meaning set forth in Section 7.3.3.

2.1.93    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, vacated or amended, and as to which the time to appeal, seek *certiorari* or move for a new trial, stay, re-argument or rehearing has expired and no appeal, petition for *certiorari* or motion for a new trial, stay, re-argument or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for *certiorari*, or motion for a new trial, stay, re-argument or rehearing that has been or may be filed shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, stay, re-argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; *provided* that the possibility that a motion under rule

60 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 9024, may be filed relating to an order shall not by itself cause such order to not be a Final Order.

2.1.94    "Forfeiture Proceeds" means any property and proceeds recovered or to be recovered by the DOJ and claimed by the DOJ to be subject to forfeiture in connection with *United States* v. *Samuel Bankman-Fried*, Case No. 1:22-cr-00673 (LAK) or other criminal actions against other Insiders.

2.1.95    "FTT" means the token native to the FTX.com Exchange.

2.1.96    "FTT Customer Entitlement Claim" means a Customer Entitlement Claim in respect of an FTT.

2.1.97    "FTT Claim or Interest" means any FTT Customer Entitlement Claim, Claim or Interest, if any, of any kind or nature (whether arising in law or equity, contract or tort, under the Bankruptcy Code, federal or state law, rule or regulation, common law or otherwise) in respect of an FTT, including any Section 510(b) FTT Claims.

2.1.98    "FTX Australia" means FTX Australia Pty Ltd and FTX Express Pty Ltd.

2.1.99    "FTX Bahamas PropCo" means FTX Property Holdings Ltd.

2.1.100    "FTX DM" means FTX Digital Markets Ltd.

2.1.101    "FTX DM Global Settlement Agreement" means the Global Settlement Agreement between the Debtors and FTX DM, dated December 19, 2023, as may be amended, supplemented or modified from time to time.

2.1.102    "FTX DM Liquidation" means FTX DM's liquidation or winding up proceeding in The Bahamas.

2.1.103    "FTX Exchange" means any exchange or trading platform operated by a Debtor as of the Petition Date.

2.1.104    "FTX Trading" has the meaning set forth in Article 1.

2.1.105    "FTX Turkey" has the meaning set forth in Section 1.2(a).

2.1.106    "FTX.com AWS Wallets" means the AWS Wallets associated with FTX.com Exchange.

2.1.107    "FTX.com Exchange" means the FTX.com trading platform including its over-the-counter (OTC) portal.

2.1.108    "FTX.US AWS Wallets" means the AWS Wallets associated with the FTX.US Exchange.

2.1.109    "FTX.US Exchange" means the FTX.US trading platform including its over-the-counter (OTC) portal.

2.1.110     "General Administrative Claim" means an Administrative Claim other than a Professional Claim.

2.1.111     "General Convenience Claim" means (a) any General Unsecured Claim Allowed in an amount equal to or less than $50,000 or (b) any General Unsecured Claim Allowed in an amount greater than $50,000 but that is reduced to an amount equal to or less than $50,000 by an irrevocable written election of the Holder of such General Unsecured Claim made on a properly executed and delivered Ballot; *provided* that where any portion of a General Unsecured Claim has been transferred or subdivided, any transferred or subdivided portion shall continue to be treated together with the entire initial General Unsecured Claim for purposes of determining whether any portion of such General Unsecured Claim qualifies as a General Convenience Claim.

2.1.112     "General Pool" means collectively,

(a)     all fiat and Digital Assets held by the Debtors that (i) are not Dotcom Customer Priority Assets or U.S. Customer Priority Assets or (ii) were not allocated to a Separate Subsidiary;

(b)     all excess distributable value of any non-Debtor subsidiary (other than FTX DM) after satisfaction of all claims against such non-Debtor subsidiary;

(c)     all excess distributable value of the Separate Subsidiaries after satisfaction of all Allowed Separate Subsidiary Claims in accordance with the waterfall priority set forth in Section 4.2.5;

(d)     all proceeds from all Avoidance Actions and litigation Claims of any Debtor other than the Dotcom Customer Preference Actions and the U.S. Customer Preference Actions;

(e)     all proceeds from the sale, disposition or other monetization of other property of the Debtors other than the Bahamian Subsidiaries;

(f)     the Alameda U.S. Customer Claim;

(g)     100 percent of the residual interest in the Dotcom Customer Priority Assets after all Dotcom Customer Entitlement Claims are satisfied in full;

(h)     100 percent of the residual interest in the U.S. Customer Priority Assets after all U.S. Customer Entitlement Claims are satisfied in full;

(i)     100 percent of the Forfeiture Proceeds received by the Debtors (other than Forfeiture Proceeds received by the Debtors on behalf of FTX DM) and available for distribution in the General Pool pursuant to Section 5.22; and

-15-

(j)      all other property of the Debtors or the Wind Down Entities, other than any Dotcom Customer Priority Asset or the U.S. Customer Priority Asset.

2.1.113    "General Unsecured Claim" means any Claim that is not a (a) Administrative Claim; (b) 503(b)(9) Claim; (c) Priority Tax Claim; (d) Other Priority Claim; (e) Secured Claim; (f) Separate Subsidiary Claim; (g) Dotcom Customer Entitlement Claim; (h) U.S. Customer Entitlement Claim; (i) NFT Customer Entitlement Claim; (j) Dotcom Convenience Claim; (k) U.S. Convenience Claim; (l) General Convenience Claim; (m) Digital Asset Loan Claim; (n) PropCo Operating Expense Claim; (o) Priority DM Claim; (p) PropCo General Unsecured Claim; (q) Intercompany Claim; (r) Senior Subordinated IRS Claim; (s) Senior Subordinated Governmental Claim; (t) Junior Subordinated IRS Claim; (u) Equitably Subordinated Claim; (v) FTT Claim or Interest; (w) Section 510(b) Preferred Equity Claim; (x) Section 510(b) Other Equity Claim; (y) *De Minimis* Claim; (z) Dotcom Intercompany Shortfall Claim; (aa) U.S. Intercompany Shortfall Claim; or (bb) Alameda U.S. Customer Claim.  A Claim for the return of an NFT that is not an Available NFT is a General Unsecured Claim.

2.1.114    "Global Settlement" has the meaning set forth in Section 5.2.

2.1.115    "Governmental Bar Date" means 4:00 p.m. (prevailing Eastern Time) on September 29, 2023.

2.1.116    "Governmental Unit" means governmental unit as defined in section 101(27) of the Bankruptcy Code.

2.1.117    "Hacking Incident" means the electronic attack against the Debtors and the FTX Exchanges in November 2022 that commenced before the Petition Date.

2.1.118    "Holder" means a Person or an Entity holding a Claim against or an Interest in any of the Debtors.

2.1.119    "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

2.1.120    "Initial Distribution Date" means the date determined by the Plan Administrator in accordance with the Plan Administration Agreement to commence Distributions under the Plan.

2.1.121    "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code, and includes any non-statutory insiders of the Debtors and Affiliates of the Debtors, including, among others, Samuel Bankman-Fried, Zixiao "Gary" Wang, Nishad Singh and Caroline Ellison.

2.1.122    "Intercompany Claim" means any Claim of whatever nature and arising at whatever time held by a Debtor against another Debtor.

2.1.123     "Intercompany Interest" means any Equity Security, including any issued or unissued share of common stock, preferred stock or other instrument, evidencing an ownership interest in a Debtor other than a Excluded Entity, FTX Bahamas PropCo or a subsidiary held by another Debtor.

2.1.124     "Interest" means any Equity Interest or Intercompany Interest.

2.1.125     "IRS" means the Internal Revenue Service.

2.1.126     "IRS Settlement" means the final settlement and compromise between the Debtors and the DOJ of all Claims of the IRS, whether arising out of or relating to the period prior to or after the Petition Date, as approved by the Bankruptcy Court.

2.1.127     "Joint Claims Hearing" has the meaning set forth in the DM Global Settlement Agreement.

2.1.128     "Junior Subordinated IRS Claim" means subject to the effectiveness of the IRS Settlement and the occurrence of the Effective Date, the Allowed Subordinated Tax Claim of the IRS against the Debtors for income tax years ending December 31, 2019, December 31, 2020, December 31, 2021, and October 31, 2022, and for employment tax for the taxable quarters ending March 31, 2018, through and including September 30, 2022, for the taxable years ending March 31, 2018, through and including December 31, 2021, plus liabilities for the taxable quarter ending December 31, 2022, and taxable year ending December 31, 2022, accruing through October 31, 2022, in an amount equal to $685,000,000.

2.1.129     "KYC Information" means the know-your-customer information requested by the Debtors.

2.1.130     "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

2.1.131     "NFT" means a non-fungible token.

2.1.132     "NFT Customer Entitlement Claim" means a Customer Entitlement Claim for the return of an Available NFT.

2.1.133     "Non-Customer Bar Date" means 4:00 p.m. (prevailing Eastern Time) on June 30, 2023.

2.1.134     "Notice and Claims Agent" means Kroll Restructuring Administration LLC, located at 55 East 52nd Street, 17th Floor, New York, NY 10055, retained and approved by the Bankruptcy Court as the Debtors' notice and claims agent.

2.1.135     "Notice of Objection" has the meaning set forth in Section 5.20.

2.1.136     "Official Committee" means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases on December 15, 2022 [D.I. 231] pursuant to section 1102 of the Bankruptcy Code, as reconstituted from time to time.

2.1.137    "Original Customer" means, with respect to a Customer Entitlement Claim, the Holder of such Customer Entitlement Claim on the Petition Date.

2.1.138    "Other Administrative Claim" means any Administrative Claim that is not a Professional Claim or Claim for U.S. Trustee Fees.

2.1.139    "Other Equity Interest" means any Equity Interest that is not a Preferred Equity Interest.

2.1.140    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

2.1.141    "Other Secured Claim" means any Secured Claim other than a Secured Loan Claim.

2.1.142    "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

2.1.143    "Petition Date" means (a) November 11, 2022, with respect to each Debtor other than West Realm Shires Inc. and (b) November 14, 2022, with respect to West Realm Shires Inc.

2.1.144    "Plan" has the meaning set forth in Section 1.1.

2.1.145    "Plan Administration Agreement" means the agreement between the Debtors and the Plan Administrator governing the Plan Administrator's rights and obligations in connection with the Plan and Wind Down Entities, dated as of the Effective Date, which shall be filed as part of the Plan Supplement and shall be in form and substance reasonably acceptable to the Supporting Parties.

2.1.146    "Plan Administrator" means Mr. John J. Ray, III, or any successor appointed by the Debtors or the Wind Down Board.

2.1.147    "Plan Assets" means all Causes of Action and other property of each Estate and any property retained by any Debtor under the Plan.

2.1.148    "Plan Supplement" means the initial compilation of documents and forms of documents, schedules and exhibits to the Plan, to be filed and available on the Notice and Claims Agent's website at https://restructuring.ra.kroll.com/FTX/ no later than 14 days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

2.1.149    "Pre-Distribution Requirements" has the meaning set forth in Section 7.14.

2.1.150    "Pre-Launch Cryptocurrency" means an asset that would have been a DLT Digital Asset but for the fact that such asset has not been issued and is not transferable using distributed ledger or blockchain technology as of the Petition Date.

2.1.151    "Preference Replacement Claim" means any Claim arising under section 502(h) of the Bankruptcy Code from a successful Dotcom Customer Preference Action or a U.S. Customer Preference Action.

2.1.152    "Preferred Equity Interest" means with respect to a Debtor, Equity Interest in such Debtor that is entitled to preference or priority over any other Equity Interest in such Debtor with respect to the payment of dividends or distribution of assets upon liquidation or both, including (a) series A preferred stock issued by West Realm Shires Inc., (b) series B preferred stock issued by FTX Trading, (c) series B-1 preferred stock issued by FTX Trading, and (d) series C preferred stock issued by FTX Trading.

2.1.153    "Preferred Shareholder Fund" has the meaning set forth in Section 5.22.

2.1.154    "Preferred Shareholder Settlement Agreement" means that certain Settlement and Plan Support Agreement, dated August 28, 2024, by and among the Debtors and the Holders of Preferred Equity Interests party thereto, as the same may be amended, supplemented or modified from time to time.

2.1.155    "Prepetition" means, with respect to each Debtor, prior to the Petition Date for such Debtor.

2.1.156    "Preserved Potential Claim" means the Causes of Action set out in the Plan Supplement.

2.1.157    "Priority DM Claim" means the Allowed unsecured prepetition Claim of FTX DM against FTX Bahamas PropCo in the amount of $256,291,221.47.

2.1.158    "Priority IRS Tax Claim" means subject to the effectiveness of the IRS Settlement and the occurrence of the Effective Date, the Allowed Claim of the IRS against the Debtors in the amount of $200,000,000.

2.1.159    "Priority Tax Claim" means a Claim of a Governmental Unit, including of the IRS, against a Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code, including the Priority IRS Tax Claim; *provided* that, notwithstanding the foregoing, no Senior Subordinated IRS Claim, or Junior Subordinated IRS Claim shall be a Priority Tax Claim.

2.1.160    "Pro Rata" means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim and (b) the denominator of which shall be an amount equal to the aggregate amount of Allowed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the proportion that such Holder's Claim in a particular Class bears to the aggregate amount of all Allowed Claims and estimated in such multiple Classes.

2.1.161    "Professional" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code, (b) subject to the *Order Authorizing the Debtors to Enter into, and Perform Their Obligations Under, the Reimbursement Agreements* [D.I. 3928] and the corresponding reimbursement agreements, as modified in the Plan Supplement, or (c) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.1.162    "Professional Claim" means an Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional from the Petition Date through and including the Confirmation Date.

2.1.163    "Professional Fee Escrow Account" means an account to be funded by the Debtors upon the Effective Date in an amount equal to the Professional Fee Reserve Amount.

2.1.164    "Professional Fee Order" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by the Bankruptcy Court on January 9, 2023 [D.I. 435].

2.1.165    "Professional Fee Reserve Amount" means the aggregate amount of unpaid Professional Claims for all Professionals employed by the Debtors, the Official Committee and the Ad Hoc Committee through and including the Confirmation Date as estimated by the Debtors in accordance with Section 3.4.3.

2.1.166    "Proof of Claim" means a proof of Claim filed against any of the Debtors in these Chapter 11 Cases.

2.1.167    "Proof of Interest" means a proof of Interest filed against any of the Debtors in these Chapter 11 Cases.

2.1.168    "PropCo General Unsecured Claim" means any Claim against FTX Bahamas PropCo other than a PropCo Operating Expense Claim or the Priority DM Claim.

2.1.169    "PropCo Operating Expense Claim" means any Claim against FTX Bahamas PropCo arising in the ordinary course in respect of the ownership, use, sale or transfer of the property owned by FTX Bahamas PropCo.

2.1.170    "Rejected Contract Claims Bar Date" means, with respect to any Executory Contract or Unexpired Lease that is rejected pursuant to the Plan, 4:00 p.m. (prevailing Eastern Time) on the earlier of (a) the 30th day after entry by the Bankruptcy Court of an order providing for the rejection of such Executory Contract or Unexpired Lease and (b) the 30th day after the Effective Date; *provided* that the deadline for filing any rejection damages claim in connection with any Executory Contract or Unexpired Lease rejected pursuant to a prior order of the Bankruptcy Court shall be the date set forth in the respective order authorizing such rejection.

2.1.171    "Released Parties" means the (a) Exculpated Parties, (b) the Bahamas JOLs and FTX DM, (c) the Ad Hoc Committee, (d) any member of the executive committee of the Ad Hoc Committee (as constituted from time to time), and (e) with respect to each Person or Entity named in (b) through (d), any Person or Entity to the extent acting as a shareholder, director, officer, employee, attorney (including solicitors or barristers acting for the benefit of such Person or Entity), financial advisor, restructuring advisor, investment banker, accountant and other professional or representative of such Person or Entity, in each case in (a) through (e), to the extent such Person or Entity is or was acting in such capacity. Notwithstanding anything to the contrary in the Plan or Plan Supplement, no Excluded Party shall be a Released Party.

2.1.172    "Releasing Parties" means (a) the Debtors; (b) each of the Official Committee and the Supporting Parties; (c) Holders who vote to accept the Plan and do not opt out of granting the releases set forth herein; (d) Holders of all Claims that are Unimpaired under the Plan; (e) Holders whose vote to accept or reject the Plan is solicited but who (i) abstain from voting on the Plan and (ii) do not opt out of granting the releases set forth therein; (f) Holders who vote to reject the Plan but do not opt out of granting the releases set forth therein; and (g) Holders who are deemed to reject the Plan and opt in to the releases set forth therein.  Holders who were not provided a Ballot or an Election Form and are not listed in clauses (a) through (h) above are not Releasing Parties.

2.1.173    "Remission Fund Sponsors" has the meaning set forth in Section 5.21.

2.1.174    "Schedules" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors in these Chapter 11 Cases, each as may be amended, supplemented or modified from time to time.

2.1.175    "Section 510(b) FTT Claim" means any Claim (a) arising from the rescission of a purchase or sale of FTT, (b) for damages arising from the purchase or sale of FTT, or (c) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

2.1.176    "Section 510(b) Other Equity Claim" means any Claim (a) arising from the rescission of a purchase or sale of Other Equity Interest, (b) for damages arising from the purchase or sale of Other Equity Interest, or (c) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

2.1.177    "Section 510(b) Preferred Equity Claim" means any Claim (a) arising from the rescission of a purchase or sale of Preferred Equity Interest, (b) for damages arising from the purchase or sale of Preferred Equity Interest, or (c) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

2.1.178    "Secured Claim" means a Claim (a) secured by a Lien on property in which an Estate has an interest, to the extent such Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code and to the extent of the value of its

Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

2.1.179 "Secured Loan Claim" means the Allowed Secured Claims of BlockFi Lending LLC and BlockFi International Ltd. against Alameda Research Ltd. in the aggregate amount of $250,000,000.

2.1.180 "Securities Act" means the United States Securities Act of 1933, as amended.

2.1.181 "Security" means a security as defined in section 2(a)(1) of the Securities Act.

2.1.182 "Senior Subordinated Governmental Claim" means (a) a Subordinated Tax Claim or (b) any other claim for regulatory fines and penalties, U.S. federal, state or local income or employment taxes, similar foreign taxes and any other Claim by a Governmental Unit that has been subordinated on the basis of structural subordination, equitable subordination, laws or policies subordinating recoveries to claims by victims of crime or fraud, or any other grounds available under applicable law, other than an Equitably Subordinated Claim, Senior Subordinated IRS Claim or Junior Subordinated IRS Claim.

2.1.183 "Senior Subordinated IRS Claim" means a Subordinated Tax Claim of the IRS arising for the Debtors' income tax and employment tax obligations for the period beginning November 1, 2022, and continuing through to future tax years through the Effective Date.

2.1.184 "Separate Subsidiaries" means the Debtors listed in the Plan Supplement, as may be updated, supplemented and amended from time to time in accordance with the terms of the Plan Supplement.

2.1.185 "Separate Subsidiary Claim" means any Claim against a Separate Subsidiary that is (a) not derivative of a Claim against another Debtor or (b) property of the estate of another Debtor under section 541 of the Bankruptcy Code, other than a Separate Subsidiary Intercompany Claim.

2.1.186 "Separate Subsidiary Intercompany Claim" means any Claim against a Separate Subsidiary that is derivative of a Claim against another Debtor or property of the estate of another Debtor under section 541 of the Bankruptcy Code.

2.1.187 "SNG Investments" has the meaning set forth in Section 1.2(b).

2.1.188 "Solicitation Procedures Order" means the order (a) approving the Disclosure Statement; (b) establishing a voting record date for the Plan; (c) approving solicitation packages and procedures for the distribution thereof; (d) approving the forms of Ballots; (e) establishing procedures for voting on the Plan; and (f) establishing notice and objection procedures for the confirmation of the Plan entered by the Bankruptcy Court on

June 26, 2024 [D.I. 19068], together with any supplemental order(s) that may be entered by the Bankruptcy Court in connection therewith.

2.1.189    "Specially Designated Nationals and Blocked Persons" means individuals and companies owned or controlled by, or acting for or on behalf of, sanctioned countries as well as individuals, groups and entities, such as terrorists and narcotics traffickers designated under various sanctions programs as determined by the United States Treasury's Office of Foreign Assets Control.

2.1.190    "Stablecoin" means any Digital Asset designed to maintain a stable value relative to a reserve asset, such as a fiat currency or exchange-traded commodity.

2.1.191    "Subordinated Tax Claim" means any Claim for federal, state and local, taxes (including income or employment taxes), or similar foreign tax that is not a Priority Tax Claim.

2.1.192    "Subsequent Distribution Date" means a date after the Initial Distribution Date selected by the Plan Administrator for Distributions in accordance with Section 7.2.3.

2.1.193    "Supplemental Remission Fund" has the meaning set forth in Section 5.21.

2.1.194    "Supporting Parties" means the Official Committee, FTX DM and the Ad Hoc Committee, acting through its executive committee pursuant to such authority as may be delegated to such executive committee from time to time.

2.1.195    "Supporting Preferred Shareholder" means a Holder of Preferred Equity Interests that has executed the Preferred Shareholder Settlement Agreement.

2.1.196    "Terms of Service" means any contract between an FTX Exchange and its customers that governs the terms of use of such FTX Exchange by those customers.

2.1.197    "Unverified Customer Entitlement Claim" means a Customer Entitlement Claim in respect of which (a) the Original Customer or Holder of such Customer Entitlement Claim has failed to submit KYC Information of the Original Customer by a date determined by the Debtors and approved by order of the Court or (b) an objection by the Debtors to the KYC Information of the Original Holder has been sustained by order of the Court.

2.1.198    "U.S. Convenience Claim" means (a) any U.S. Customer Entitlement Claim that is Allowed in an amount equal to or less than $50,000 or (b) any U.S. Customer Entitlement Claim that is Allowed in an amount greater than $50,000 but that is reduced to an amount equal to or less than $50,000 by an irrevocable written election of the Holder of such Customer Entitlement Claim made on a properly executed and delivered Ballot; *provided* that where any portion of a U.S. Customer Entitlement Claim has been transferred or subdivided, any transferred or subdivided portion shall continue to be treated together with the entire initial U.S. Customer Entitlement Claim for purposes of determining whether any portion of such U.S. Customer Entitlement Claim qualifies as a U.S. Convenience Claim.

2.1.199    "U.S. Customer Entitlement Claim" means any (a) Customer Entitlement Claim against the FTX.US Exchange (including the Alameda U.S. Customer Claim) that is not a FTT Customer Entitlement Claim or a NFT Customer Entitlement Claim and (b) any Preference Replacement Claim relating to a U.S. Customer Preference Action that arises from a judgment entered in favor of a Debtor against a Customer of the FTX.US Exchange or any of such Customer's successors or assigns; *provided* that U.S. Customer Entitlement Claims shall not include NFT Customer Entitlement Claims, U.S. Convenience Claims or *De Minimis* Claims.

2.1.200    "U.S. Customer Preference Action" means any and all Causes of Action to avoid any preferential payments or transfers of property from the FTX.US Exchange pursuant to section 547 of the Bankruptcy Code and any recovery action related thereto under section 550 of the Bankruptcy Code, or under any similar or related local, state, federal or foreign statutes or common law.

2.1.201    "U.S. Customer Priority Assets" means collectively:

(a)    all fiat currency in segregated accounts designated by the Debtors as accounts for the benefit of customers associated with the FTX.US Exchange held by the Debtors on the Petition Date;

(b)    all Digital Assets (other than Available NFTs) held by the Debtors and identified by the Debtors as held for customers in FTX.US AWS Wallets on the Petition Date and all proceeds relating to the sale, disposition or other monetization thereof;

(c)    all U.S. Hacking Recovery Proceeds;

(d)    all proceeds from any Claim or Cause of Action against any Customer of the FTX.US Exchange or any of such Customer's successors or assigns and U.S. Customer Preference Actions;

(e)    all proceeds from any sale, disposition or monetization of any property of the Debtors relating to the FTX.US Exchange; and

(f)    the U.S. Intercompany Shortfall Claim.

2.1.202    "U.S. Customer Priority Pool" means all U.S. Customer Priority Assets and the proceeds thereof.

2.1.203    "U.S. Exchange Shortfall Amount" means $141,009,391.00, subject to reduction on account of any U.S. Hacking Recovery Proceeds.

2.1.204    "U.S. Hacking Recovery Proceeds" means any proceeds relating to the recovery of Digital Assets subject to the Hacking Incident recovered by the Debtors to the extent that such proceeds are in respect of Digital Assets held in FTX.US AWS Wallets before, on or after the Petition Date.

2.1.205    "U.S. Intercompany Shortfall Claim" means a Claim against the General Pool subject to the waterfall priorities set forth in Section 4.2 in an amount equal to the U.S. Exchange Shortfall Amount.

2.1.206    "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

2.1.207    "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

2.1.208    "Unclaimed Distribution" means any Distribution under the Plan on account of an Allowed Claim to a Holder that has not:  (a) accepted a particular Distribution or, in the case of a Distribution made by check, negotiated such check; (b) given written notice to the Distribution Agent of an intent to accept a particular Distribution; (c) responded in writing to the request of the Distribution Agent for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution.

2.1.209    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

2.1.210    "Unimpaired" means any Claim or Interest that is not Impaired.

2.1.211    "Voluntary Release by Holders of Claims and Interests" means the release by Holders of Claims and Interests as set forth in Section 10.5.

2.1.212    "Voting" means the process by which a Holder of a Claim may vote to accept or reject the Plan, pursuant to the conditions in Article 4.

2.1.213    "Voting Deadline" means 4:00 p.m. (prevailing Eastern Time) on August 16, 2024, by which time all Ballots must be actually received by the Notice and Claims Agent.

2.1.214    "Wind Down Board" means an oversight board consisting of the Plan Administrator and up to eight other members appointed to oversee the Wind Down Entities activities in accordance with the Plan and the Plan Administration Agreement.

2.1.215    "Wind Down Budget" means the budget to fund the Wind Down Entities, which shall be included in the Plan Supplement, as may be updated, supplemented and amended from time to time in accordance with the terms of the Plan Supplement.

2.1.216    "Wind Down Cash Proceeds" means all Cash proceeds from the sale, disposition or other monetization of Plan Assets available for Distribution by the Plan Administrator, other than Cash reserved or applied by the Plan Administrator (a) to make Distributions under the Plan to Holders of Allowed Administrative Claims, Allowed Other Priority Claims or Allowed Secured Claims or (b) to pay expenses and costs of administering the Wind Down Entities.

2.1.217   "Wind Down Entity" means (a) for each Consolidated Debtor, the Consolidated Wind Down Trust and (b) for each other Debtor, the Estate of such Debtor after the Effective Date of the Plan.

2.1.218   "Wind Down Reserve" means a reserve, if any, in the amount set forth in the Wind Down Budget to fund the Wind Down Entities.

2.2.   Rules of Interpretation

For the purposes of the Plan:  (a) any reference herein to the word "including" or word of similar import shall be read to mean "including without limitation"; (b) unless otherwise specified, all references herein to "Articles" are references to Articles herein, hereof or hereto; (c) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than a particular portion of the Plan; (d) captions and headings to Articles are inserted for the convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) all references to docket numbers of documents filed in these Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (h) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, and as applicable to these Chapter 11 Cases, unless otherwise stated; (i) any reference herein to a contract, agreement, lease, plan, policy, document or instrument being in a particular form or on particular terms and conditions means that the same shall be substantially in that form or substantially on those terms and conditions; (j) any reference herein to a contract, agreement, lease, plan, policy, document or instrument or schedule or exhibit thereto, whether or not filed, shall mean the same as amended, restated, modified or supplemented from time to time in accordance with the terms hereof or thereof; (k) any immaterial effectuating provisions may be interpreted by the Debtors and the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order; (l) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and permitted assigns; (m) except as otherwise expressly provided in the Plan or the Plan Supplement, after the Confirmation Date, where the Plan contemplates that any Debtor or the Plan Administrator shall take any action, incur any obligation, issue any security or adopt, assume, execute or deliver any contract, agreement, lease, plan, policy, document or instrument on or prior to the Effective Date, the same shall be duly and validly authorized by the Plan and effective against and binding upon such Debtor and/or the Plan Administrator, as applicable, on and after the Effective Date without further notice to, order of or other approval by the Bankruptcy Court, action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of the board of directors of any Debtor or any other Entity; (n) reference herein to the Plan Administrator, or any right of the Plan Administrator, shall be subject in all respects to the Plan Administration Agreement; and (o) except as otherwise provided in the Plan, anything required to be done by the Debtors or the Plan Administrator, as applicable, on the Effective Date may be done on the Effective Date or as soon as reasonably practicable thereafter.

2.3.    <u>Governing Law</u>

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the construction and implementation of the Plan and any agreement, document or instrument executed or entered into in connection with the Plan.

2.4.    <u>Computation of Time</u>

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, and all dates and times shall be determined based on prevailing time in Wilmington, Delaware. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## 3.   ADMINISTRATIVE EXPENSE CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims and Professional Claims, payment of which is provided for below.

### 3.1.   Administrative Claim Bar Date

Any request for payment of an Administrative Claim must be filed and served on the Plan Administrator pursuant to the procedures specified in the notice of entry of the Confirmation Order and the Confirmation Order on or prior to the Administrative Claim Bar Date; *provided* that no request for payment is required to be filed and served pursuant to this Section 3.1 with respect to any:

<ul style="list-style:none">
<li>(a)   Administrative Claim that is Allowed as of the Administrative Claim Bar Date;</li>
<li>(b)   503(b)(9) Claim;</li>
<li>(c)   Professional Claim;</li>
<li>(d)   Claim for U.S. Trustee Fees; or</li>
<li>(e)   Senior Subordinated IRS Claim.</li>
</ul>

Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against any Wind Down Entity and such Administrative Claim shall be deemed satisfied as of the Effective Date without the need for any objection from the Plan Administrator or any notice to or action, order or approval of the Bankruptcy Court.

Any objection to a request for payment of an Administrative Claim that is required to be filed and served pursuant to this Section 3.1 must be filed and served on the Plan Administrator and the requesting party creditor (a) no later than 90 days after the Administrative Claim Bar Date or (b) by such later date as may be established by order of the Bankruptcy Court upon a motion by the Plan Administrator, with notice only to those parties entitled to receive notice pursuant to Bankruptcy Rule 2002.

### 3.2.   General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, the Holder of each Allowed General Administrative Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed General Administrative Claim on or as reasonably practicable after the later of (a) the Effective Date or (b) the date on which such Claim is Allowed.

-28-

3.3.    503(b)(9) Claims

Except to the extent that a Holder of an Allowed 503(b)(9) Claim agrees to less favorable treatment, the Holder of each Allowed 503(b)(9) Claim shall receive Cash in an amount equal to the full unpaid amount of such Allowed 503(b)(9) Claim on or as reasonably practicable after the later of (a) the Effective Date or (b) the date on which such Claim is Allowed.

3.4.    Professional Claims

3.4.1    Final Fee Applications.  All final requests for payment of Professional Claims shall be filed and served no later than 60 days after the Effective Date, subject to any applicable procedures established under the Professional Fee Order and the Confirmation Order.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders.

3.4.2    Professional Fee Escrow Account.  The Debtors shall establish and fund the Professional Fee Escrow Account on or prior to the Effective Date.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Except as provided in the last sentence of this paragraph, such funds shall not be considered property of the Wind Down Entities.  The Plan Administrator shall pay Professional Claims in Cash no later than five Business Days after such Claims are Allowed by Final Order of the Bankruptcy Court.  Any funds remaining in the Professional Fee Escrow Account following the approval of all Professionals' final fee applications provided for in Section 3.4.1 and payment of all Professionals' Allowed Professional Claims shall be allocated between the Dotcom Customer Priority Assets, the U.S. Customer Priority Assets and the General Pool pursuant to the terms of Section 3.6 and shall be distributed by the Plan Administrator pursuant to the Plan.

3.4.3    Professional Fee Reserve Amount.  Professionals shall provide good-faith estimates of their Professional Claims for purposes of the Professional Fee Escrow Account and shall deliver such estimates to the Debtors no later than seven days prior to the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to the fees and expenses of such Professionals.  If a Professional does not provide such an estimate, the Debtors may estimate, in their reasonable discretion, the Professional Claims of such Professional.

3.4.4    Post-Confirmation Date Fees and Expenses.  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Plan Administrator, as the case may be, shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the

Debtors, the Plan Administrator, the Official Committee or the Ad Hoc Committee, as the case may be, in each case in accordance with the Wind Down Budget. Except as otherwise specifically provided in the Plan, upon the Confirmation Date, any requirement that Professionals comply with section 327, 328, 329, 330, 331 or 1103 of the Bankruptcy Code or the Professional Fee Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Plan Administrator, or, solely with respect to the matters set forth in Section 13.9, the Official Committee, may employ and pay any Professional in the ordinary course of business, in each case subject to the Wind Down Budget.

3.5.    Statutory Fees Payable Pursuant to 28 U.S.C. § 1930

All U.S. Trustee fees payable on or before the Effective Date shall be paid in full in Cash on the Effective Date by the Debtors. After the Effective Date, the Plan Administrator shall pay any and all U.S. Trustee Fees in full in Cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of the Chapter 11 Cases being closed, dismissed or converted to cases under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports when they become due, using UST Form 11-MOR. After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) U.S. Trustee Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to U.S. Trustee Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan.

3.6.    Expense Allocation

Unless otherwise specified herein, the Plan Administrator shall allocate Administrative Claims, professional or other fees and expenses related to the implementation and Consummation of the Plan and expenses and costs of administering the Wind Down Entities (collectively, "Case Expenses") as follows: (a) all Case Expenses related to FTX DM shall be allocated solely to the Dotcom Customer Priority Assets; (b) all Case Expenses related to FTX Bahamas PropCo or the sale, disposition or other monetization of property of FTX Bahamas PropCo shall be allocated solely to FTX Bahamas PropCo; and (c) all other Case Expenses shall be allocated between the Dotcom Customer Priority Assets, the U.S. Customer Priority Assets, the General Pool and the Separate Subsidiaries, on a Pro Rata basis, based on the Debtors' reasonable estimates of the relative distributable value in each pool as of the Effective Date, which estimates shall be set forth in the Plan Supplement.

## 4.   CLASSIFICATION, TREATMENT AND VOTING OF CLAIMS AND INTERESTS

### 4.1.   Classification of Claims and Interests

All Claims and Interests except for Administrative Claims and 503(b)(9) Claims are classified in the Classes set forth in this Article 4.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is Allowed as a Claim or Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

### 4.1.1   Summary of Classification and Treatment

The classification of Claims and Interests pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Tax Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 3A | Secured Loan Claims | Impaired | Entitled to Vote |
| 3B | Other Secured Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 4 | Separate Subsidiary Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 5A | Dotcom Customer Entitlement Claims | Impaired | Entitled to Vote |
| 5B | U.S. Customer Entitlement Claims | Impaired | Entitled to Vote |
| 5C | NFT Customer Entitlement Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 6A | General Unsecured Claims | Impaired | Entitled to Vote |
| 6B | Digital Asset Loan Claims | Impaired | Entitled to Vote |
| 7A | Dotcom Convenience Claims | Impaired | Entitled to Vote |
| 7B | U.S. Convenience Claims | Impaired | Entitled to Vote |
| 7C | General Convenience Claims | Impaired | Entitled to Vote |
| 8A | PropCo Operating Expense Claims | Unimpaired | Not Entitled to Vote, Deemed to Accept |
| 8B | Priority DM Claim | Impaired | Entitled to Vote |
| 8C | PropCo General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Cancelled Intercompany Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 10A | Senior Subordinated IRS Claims | Impaired | Entitled to Vote |
| 10B | Senior Subordinated Governmental Claims | Impaired | Entitled to Vote |
| 10C | Junior Subordinated IRS Claims | Impaired | Entitled to Vote |

-31-

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| 11 | Intercompany Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 12 | Preferred Equity Interests | Impaired | Entitled to Vote |
| 13 | Section 510(b) Preferred Equity Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 14 | Section 510(b) Other Equity Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 15 | Equitably Subordinated Claims | Impaired | Not Entitled to Vote, Deemed to Reject |
| 16 | Other Equity Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 17 | FTT Claims and Interests | Impaired | Not Entitled to Vote, Deemed to Reject |
| 18 | *De Minimis* Claims | Impaired | Not Entitled to Vote, Deemed to Reject |

4.2.    Distributions Waterfalls

4.2.1    Dotcom Customer Waterfall

Proceeds in the Dotcom Customer Priority Pool shall be applied in the following manner:

(a)    *first*, to pay Case Expenses allocated to the Dotcom Customer Priority Assets pursuant to Section 3.6;

(b)    *second*, to pay Allowed Priority Tax Claims and Allowed Other Priority Claims allocated to the Dotcom Customer Priority Assets;

(c)    *third*, to pay and perform obligations owed to FTX DM under the FTX DM Global Settlement Agreement;

(d)    *fourth*, to pay Allowed Dotcom Convenience Claims and postpetition interest accrued at the Consensus Rate on Allowed Dotcom Convenience Claims from the Petition Date through the Initial Distribution Date;

(e)    *fifth*, to pay Allowed Dotcom Customer Entitlement Claims; and

(f)    *sixth*, to transfer remaining proceeds to the General Pool.

4.2.2    U.S. Customer Waterfall

Proceeds in the U.S. Customer Priority Pool shall be applied in the following manner:

-32-

(a)  *first*, to pay Case Expenses allocated to the U.S. Customer Priority Assets pursuant to <u>Section 3.6</u>;

(b)  *second*, to pay Allowed Priority Tax Claims and Allowed Other Priority Claims allocated to the U.S. Customer Priority Assets;

(c)  *third*, to pay Allowed U.S. Convenience Claims and postpetition interest accrued at the Consensus Rate on Allowed U.S. Convenience Claims from the Petition Date through the Initial Distribution Date;

(d)  *fourth*, to pay Allowed U.S. Customer Entitlement Claims; and

(e)  *fifth*, to transfer remaining proceeds to the General Pool.

### 4.2.3   <u>General Pool Waterfall</u>

Proceeds in the General Pool shall be applied in the following manner:

(a)  *first*, to pay Allowed Administrative Claims allocated to the General Pool pursuant to <u>Section 3.6</u>;

(b)  *second*, to pay Allowed Priority Tax Claims and Allowed Other Priority Claims, other than Allowed Priority Tax Claims and Allowed Other Priority Claims (i) allocated to the Dotcom Customer Priority Assets or U.S. Customer Priority Assets, (ii) against FTX Bahamas PropCo or (iii) against any Separate Subsidiary;

(c)  *third*, to pay Allowed Secured Loan Claims and Allowed Other Secured Claims and any applicable interest accrued thereunder;

(d)  *fourth*, to pay Allowed General Convenience Claims and postpetition interest accrued at the lower of the Consensus Rate, the applicable Contract Rate or such other rate determined by the Court (or as otherwise agreed by the relevant parties) on Allowed General Convenience Claims from the Petition Date through the Initial Distribution Date;

(e)  *fifth*, with respect to 66 percent of the amount next available for Distribution from the General Pool, to pay on a Pro Rata basis the Allowed Dotcom Intercompany Shortfall Claim and the Allowed U.S. Intercompany Shortfall Claim;

(f)  *sixth*, to pay on a Pro Rata basis Allowed General Unsecured Claims and Allowed Digital Asset Loan Claims, any unpaid balance of the Allowed Dotcom Intercompany Shortfall Claim and any unpaid balance of the Allowed U.S. Intercompany Shortfall Claim;

(g)     *seventh*, to pay on a Pro Rata basis any remaining portion of any Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims;

(h)     *eighth*, to pay on a Pro Rata basis (i) postpetition interest accrued at the Consensus Rate on Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims and (ii) postpetition interest accrued at the lower of the Consensus Rate, the applicable Contract Rate or such other rate determined by the Court (or as otherwise agreed by the relevant parties) on Allowed General Unsecured Claims and Allowed Digital Asset Loan Claims from the Petition Date, in each case of clauses (i) and (ii) through the applicable Distribution Date in accordance with Section 7.1;

(i)     *ninth*, to pay Allowed Senior Subordinated IRS Claims and Allowed Senior Subordinated Governmental Claims as follows:  (i) 25 percent of the proceeds from the General Pool available for such payment shall be made available first to pay Allowed Senior Subordinated IRS Claims until such Allowed Senior Subordinated IRS Claims are paid in full, after which any remaining funds shall be used to pay in full any unpaid Allowed Senior Subordinated Governmental Claims; and (ii) the remaining 75 percent of the proceeds from the General Pool available for such payment shall be made available first to pay all Allowed Senior Subordinated Governmental Claims until all such Allowed Senior Subordinated Governmental Claims are paid in full, after which any remaining funds shall be used to pay in full any unpaid Allowed Senior Subordinated IRS Claims;

(j)     *tenth*, to pay Allowed Junior Subordinated IRS Claims;

(k)     *eleventh*, to pay Allowed Preferred Equity Interests;

(l)     *twelfth*, to pay Allowed Section 510(b) Preferred Equity Claims;

(m)     *thirteenth*, to pay Allowed Section 510(b) Other Equity Claims; and

(n)     *fourteenth*, to pay Allowed Other Equity Interests.

### 4.2.4   FTX Bahamas PropCo Waterfall

Proceeds from the sale, disposition or other monetization of the Bahamas Properties shall be applied in the following manner:

(a)     *first*, to pay sale-related taxes and other charges or amounts owed by FTX Bahamas PropCo in respect of any Bahamas Property subject to any outstanding sale as of the Effective Date;

(b)    *second*, to pay any reasonable, documented and customary real estate agent commissions related to any outstanding sale of any Bahamas Property as of the Effective Date;

(c)    *third*, to pay the Administrative Expenses (as defined in the FTX DM Global Settlement Agreement) of FTX Bahamas PropCo pursuant to applicable Law in accordance with the FTX DM Global Settlement Agreement;

(d)    *fourth*, to pay or reimburse the Debtors for the total amount of Allowed PropCo Operating Expense Claims;

(e)    *fifth*, to satisfy the Priority DM Claim;

(f)    *sixth*, to pay Allowed PropCo General Unsecured Claims; and

(g)    *seventh*, to transfer remaining proceeds to the Dotcom Customer Priority Pool.

### 4.2.5    Separate Subsidiaries Waterfall

Proceeds from the sale, disposition or other monetization of property of any Separate Subsidiary shall be applied in the following manner:

(a)    *first*, to pay Case Expenses allocated to such Separate Subsidiary pursuant to Section 3.6;

(b)    *second*, to pay Allowed Priority Tax Claims and Allowed Other Priority Claims against such Separate Subsidiary;

(c)    *third*, to pay Allowed Separate Subsidiary Claims against such Separate Subsidiary;

(d)    *fourth*, postpetition interest accrued at the lower of the Consensus Rate, the applicable  Contract Rate or such other rate determined by the Court (or as otherwise agreed by the relevant parties) on Allowed Separate Subsidiary Claims from the Petition Date through the applicable Distribution Date in accordance with Section 7.1;

(e)    *fifth*, to pay Allowed Separate Subsidiary Intercompany Claims; and

(f)    *sixth*, to transfer remaining proceeds to the General Pool.

### 4.2.6    Supplemental Remission Fund

Proceeds, if any, contributed to the Supplemental Remission Fund from Holders of Allowed Senior Subordinated Governmental Claims shall be paid on a Pro Rata basis to (a) Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer

Entitlement Claims, and Allowed Digital Asset Loan Claims, and (b) FTX DM for the benefit of Holders of Eligible DM Customer Entitlement Claims, in each case of clauses (a) and (b) unless an alternative allocation of such proceeds is established by the Debtors, in consultation with the Supporting Parties, as further described in <u>Section 5.21</u>.

4.3.    <u>Treatment of Claims and Interests</u>

4.3.1    <u>Class 1 – Priority Tax Claims</u>

(a)    *Classification*:  Class 1 consists of all Allowed Priority Tax Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, or as ordered by the Bankruptcy Court, the Holder of an Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code or shall be paid in full in Cash on or as soon as reasonably practicable after the earliest of (i) the Initial Distribution Date; (ii) the date on which such Priority Tax Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

(c)    *Voting*:  Claims in Class 1 are Unimpaired.  Each Holder of a Priority Tax Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Priority Tax Claim is entitled to vote to accept or reject the Plan.

4.3.2    <u>Class 2 – Other Priority Claims</u>

(a)    *Classification*:  Class 2 consists of all Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release of and in exchange for its Allowed Other Priority Claim, each Holder of such Allowed Other Priority Claim shall be paid in full in Cash on or as soon as reasonably practicable after the earliest of (i) the Initial Distribution Date; (ii) the date on which such Other Priority Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

(c)    *Voting*:  Claims in Class 2 are Unimpaired.  Each Holder of an Other Priority Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Other Priority Claim is entitled to vote to accept or reject the Plan.

4.3.3    <u>Class 3A – Secured Loan Claims</u>

(a)    *Classification*:  Class 3A consists of Secured Loan Claims.

(b) *Treatment*: In full and final satisfaction, settlement, release of and in exchange for its Allowed Secured Loan Claim, each Holder of an Allowed Secured Loan Claim shall receive payment in Cash in an amount equal to 100% of such Allowed Secured Loan Claim *plus* interest accrued at the Federal Judgment Rate on such Allowed Secured Loan Claim from the Petition Date through the Effective Date.

(c) *Voting*: Claims in Class 3A are Impaired. Each Holder of a Secured Loan Claim is entitled to vote to accept or reject the Plan.

### 4.3.4    Class 3B – Other Secured Claims

(a) *Classification*: Class 3B consists of Other Secured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release of and in exchange for its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive one of the following treatments, in the sole discretion of the Plan Administrator: (i) payment in full in Cash; (ii) delivery of the collateral securing such Allowed Other Secured Claim; or (iii) treatment of such Allowed Other Secured Claim in any other manner that renders the Claim Unimpaired.

(c) *Voting*: Claims in Class 3B are Unimpaired. Each Holder of an Other Secured Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of an Other Secured Claim is entitled to vote to accept or reject the Plan.

### 4.3.5    Class 4 – Separate Subsidiary Claims

(a) *Classification*: Class 4 consists of all Separate Subsidiary Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Separate Subsidiary Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Separate Subsidiary Claim, each Holder of an Allowed Separate Subsidiary Claim shall receive payment in Cash equal to (i) 100% of such Allowed Separate Subsidiary Claim, *plus* (ii) interest at the lower of the Consensus Rate, the applicable Contract Rate or such other rate determined by the Court (or as otherwise agreed by the relevant parties) on such Allowed Separate Subsidiary Claim from the Petition Date through the applicable Distribution Date to the extent of available funds in accordance with Section 7.1 on or as soon as reasonably practicable after the latest of (i) the Initial Distribution Date; (ii) the date on which such Allowed Separate Subsidiary Claim

becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*:  Claims in Class 4 are Unimpaired.  Each Holder of a Separate Subsidiary Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a Separate Subsidiary Claim is entitled to vote to accept or reject the Plan.

### 4.3.6   Class 5A – Dotcom Customer Entitlement Claims

(a)     *Classification*:  Class 5A consists of all Dotcom Customer Entitlement Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Dotcom Customer Entitlement Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Dotcom Customer Entitlement Claims, each Holder of an Allowed Dotcom Customer Entitlement Claim shall receive payment in Cash in an amount equal to (i) 100% of such Allowed Dotcom Customer Entitlement Claim, *plus* (ii) interest at the Consensus Rate on such Allowed Dotcom Customer Entitlement Claim from the Petition Date through the applicable Distribution Date to the extent of available funds in accordance with Section 7.1, *plus* (iii) any proceeds from the Supplemental Remission Fund to which such Holder is entitled pursuant to Section 5.21; *provided* that no Holder of an Allowed Dotcom Customer Entitlement Claim shall be entitled to receive any payment except to the extent of funds available to make such payment in accordance with the waterfall priorities set forth in Section 4.2.1 and Section 4.2.3.

(c)     *Voting*:  Claims in Class 5A are Impaired.  Each Holder of a Dotcom Customer Entitlement Claim is entitled to vote to accept or reject the Plan.

### 4.3.7   Class 5B – U.S. Customer Entitlement Claims

(a)     *Classification*:  Class 5B consists of all U.S. Customer Entitlement Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed U.S. Customer Entitlement Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed U.S. Customer Entitlement Claims, each Holder of an Allowed U.S. Customer Entitlement Claim shall receive payment in Cash in an amount equal to (i) 100% of such Allowed U.S. Customer Entitlement Claim, *plus* (ii) interest at the Consensus Rate on such Allowed U.S. Customer Entitlement Claim from the Petition Date

through the applicable Distribution Date to the extent of available funds in accordance with Section 7.1, *plus* (iii) any proceeds from the Supplemental Remission Fund to which such Holder is entitled pursuant to Section 5.21; *provided* that no Holder of an Allowed U.S. Customer Entitlement Claim shall be entitled to receive any payment except to the extent of funds available to make such payment in accordance with the waterfall priorities set forth in Section 4.2.2 and Section 4.2.3.

(c)     *Voting*:  Claims in Class 5B are Impaired.  Each Holder of a U.S. Customer Entitlement Claim is entitled to vote to accept or reject the Plan.

### 4.3.8   Class 5C – NFT Customer Entitlement Claims

(a)     *Classification*:  Class 5C consists of all NFT Customer Entitlement Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed NFT Customer Entitlement Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed NFT Customer Entitlement Claim, each Holder of an Allowed NFT Customer Entitlement Claim shall receive the Available NFT associated with such Allowed NFT Customer Entitlement Claim.

(c)     *Voting*:  Claims in Class 5C are Unimpaired.  Each Holder of an NFT Customer Entitlement Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of an NFT Customer Entitlement Claim is entitled to vote to accept or reject the Plan.

### 4.3.9   Class 6A – General Unsecured Claims

(a)     *Classification*:  Class 6A consists of all General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed General Unsecured Claims, each Holder of an Allowed General Unsecured Claim shall receive payment in Cash in an amount equal to (i) 100% of such Allowed General Unsecured Claim, *plus* (ii) interest at the lower of the Consensus Rate, the applicable Contract Rate or such other rate determined by the Court (or as otherwise agreed by the relevant parties) on such Allowed General Unsecured Claim from the Petition Date through the applicable Distribution Date to the extent of available funds in accordance with Section 7.1; *provided* that no Holder of an Allowed General Unsecured Claim shall be entitled to receive any payment except to the extent of funds

available to make such payment in accordance with the waterfall
priorities set forth in <u>Section 4.2.3</u>.

(c)     *Voting*:  Claims in Class 6A are Impaired.  Each Holder of a General
Unsecured Claim is entitled to vote to accept or reject the Plan.

### 4.3.10   Class 6B – Digital Asset Loan Claims

(a)     *Classification*:  Class 6B consists of all Digital Asset Loan Claims.

(b)     *Treatment*:  Except to the extent that a Holder of a Digital Asset Loan
Claim agrees to less favorable treatment, and in full and final
satisfaction, settlement, release of and in exchange for its Allowed
Digital Asset Loan Claims, each Holder of an Allowed Digital Asset
Loan Claim shall receive payment in Cash in an amount equal to (i)
100% of such Allowed Digital Asset Loan Claim, *plus*
(ii) interest at the lower of the Consensus Rate, the applicable Contract
Rate or such other rate determined by the Court (or as otherwise
agreed by the relevant parties) on such Allowed Digital Asset Loan
Claim from the Petition Date through the Distribution Date on which
such Allowed Digital Asset Loan Claim is paid to the extent of
available funds, *plus* (iii) any proceeds from the Supplemental
Remission Fund to which such Holder is entitled pursuant to <u>Section
5.21</u>; *provided* that no Holder of an Allowed Digital Asset Loan Claim
shall be entitled to receive any payment except to the extent of funds
available to make such payment in accordance with the waterfall
priorities set forth in <u>Section 4.2.3</u>.

(c)     *Voting*:  Claims in Class 6B are Impaired.  Each Holder of a Digital
Asset Loan Claim is entitled to vote to accept or reject the Plan.

### 4.3.11   Class 7A – Dotcom Convenience Claims

(a)     *Classification*:  Class 7A consists of all Dotcom Convenience Claims.

(b)     *Treatment*:  In full and final satisfaction, settlement, release of and in
exchange for its Allowed Dotcom Convenience Claim, each Holder of
an Allowed Dotcom Convenience Claim shall receive payment in
Cash in an amount equal to 100% of such Allowed Dotcom
Convenience Claim *plus* postpetition interest at the Consensus Rate
from the Petition Date through the Initial Distribution Date in
accordance with the waterfall priority set forth in <u>Section 4.2.1</u>,
payable in Cash on or as reasonably practical after the latest of (i) a
date determined by the Plan Administrator that shall be no later than
60 days after the Effective Date; (ii) the date of which such Dotcom
Convenience Claim becomes Allowed; and (iii) such other date as may
be ordered by the Bankruptcy Court.

(c) *Voting*: Claims in Class 7A are Impaired. Each Holder of a Dotcom Convenience Claim is entitled to vote to accept or reject the Plan.

4.3.12  Class 7B – U.S. Convenience Claims

(a) *Classification*: Class 7B consists of all U.S. Convenience Claims.

(b) *Treatment*: In full and final satisfaction, settlement, release of and in exchange for its Allowed U.S. Convenience Claim, each Holder of an Allowed U.S. Convenience Claim shall receive payment in Cash in an amount equal to 100% of such Allowed U.S. Convenience Claim *plus* postpetition interest at the Consensus Rate from the Petition Date through the Initial Distribution Date in accordance with the waterfall priority set forth in Section 4.2.2, payable in Cash on or as reasonably practical after the latest of (i) a date determined by the Plan Administrator that shall be no later than 60 days after the Effective Date; (ii) the date of which such U.S. Convenience Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting*: Claims in Class 7B are Impaired. Each Holder of a U.S. Convenience Claim is entitled to vote to accept or reject the Plan.

4.3.13  Class 7C – General Convenience Claims

(a) *Classification*: Class 7C consists of all General Convenience Claims.

(b) *Treatment*: In full and final satisfaction, settlement, release of and in exchange for its Allowed General Convenience Claim, each Holder of an Allowed General Convenience Claim shall receive payment in Cash in an amount equal to 100% of such Allowed General Convenience Claim *plus* postpetition interest at the lower of the Consensus Rate, the applicable Contract Rate or such other rate determined by the Court (or as otherwise agreed by the relevant parties) from the Petition Date through the Initial Distribution Date in accordance with the waterfall priority set forth in Section 4.2.3, payable in Cash on or as reasonably practical after the latest of (i) a date determined by the Plan Administrator that shall be no later than 60 days after the Effective Date; (ii) the date of which such General Convenience Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

(c) *Voting*: Claims in Class 7C are Impaired. Each Holder of a General Convenience Claim is entitled to vote to accept or reject the Plan.

-41-

4.3.14   <u>Class 8A – PropCo Operating Expense Claims</u>

    (a)    *Classification*:  Class 8A consists of all Allowed PropCo Operating Expense Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed PropCo Operating Expense Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed PropCo Operating Expense Claim, each Holder of an Allowed PropCo Operating Expense Claim shall receive payment in full in Cash on or as soon as reasonably practicable after the latest of (i) the Initial Distribution Date; (ii) the date on which such Allowed PropCo Operating Expense Claim becomes Allowed; and (iii) such other date as may be ordered by the Bankruptcy Court.

    (c)    *Voting*:  Claims in Class 8A are Unimpaired.  Each Holder of a PropCo Operating Expense Claim is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  No Holder of a PropCo Operating Expense Claim is entitled to vote to accept or reject the Plan.

4.3.15   <u>Class 8B – Priority DM Claim</u>

    (a)    *Classification*:  Class 8B consists of the Allowed Priority DM Claim.

    (b)    *Treatment*:  Except to the extent that FTX DM agrees to less favorable treatment, and in full and final satisfaction, settlement, release  of and in exchange for its Allowed Priority DM Claim, FTX DM shall receive payment in Cash in an amount equal to the Priority DM Claim, to be paid directly from the proceeds from the sale, disposition or other monetization of the Bahamas Properties in accordance with the waterfall priority set forth in <u>Section 4.2.4</u>, until the Priority DM Claim is paid in full.

    (c)    *Voting*:  The Priority DM Claim is Impaired.  FTX DM is entitled to vote to accept or reject the Plan.

4.3.16   <u>Class 8C – PropCo General Unsecured Claims</u>

    (a)    *Classification*:  Class 8C consists of all Allowed PropCo General Unsecured Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed PropCo General Unsecured Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed PropCo General Unsecured Claim, each Holder of an Allowed PropCo General Unsecured Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of the

proceeds from the sale, disposition or other monetization of the Bahamas Properties available to pay PropCo General Unsecured Claims, in accordance with the waterfall priority set forth in <u>Section 4.2.4</u>.

(c)     *Voting*:  Claims in Class 8C are Impaired.  Each Holder of a PropCo General Unsecured Claim is entitled to vote to accept or reject the Plan.

### 4.3.17   <u>Class 9 – Cancelled Intercompany Claims</u>

(a)     *Classification*:  Class 9 consists of all Cancelled Intercompany Claims.

(b)     *Treatment*:  All Cancelled Intercompany Claims shall be cancelled, released or otherwise settled in full, and the Holders of Cancelled Intercompany Claims shall not be entitled to, and shall not receive or retain, any Distributions, property or interest in property on account of such Claims under the Plan.

(c)     *Voting*:  Claims in Class 9 are Impaired.  Each Holder of a Cancelled Intercompany Claim is conclusively deemed to have rejected the Plan. No Holder of a Cancelled Intercompany Claim is entitled to vote to accept or reject the Plan.

### 4.3.18   <u>Class 10A – Senior Subordinated IRS Claims</u>

(a)     *Classification*:  Class 10A consists of all Senior Subordinated IRS Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Senior Subordinated IRS Claim agrees to less favorable treatment, and in full and final satisfaction, settlement and release of and in exchange for all Claims of the IRS against the Debtors arising from activities, transactions, liabilities or events after October 31, 2022, each Holder of an Allowed Senior Subordinated IRS Claim shall receive payment in Cash in an amount equal to such Holder's share of Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c)     *Voting*:  Claims in Class 10A are Impaired.  Each Holder of a Senior Subordinated IRS Claim is entitled to vote to accept or reject the Plan.

### 4.3.19   <u>Class 10B – Senior Subordinated Governmental Claims</u>

(a)     *Classification*:  Class 10B consists of all Senior Subordinated Governmental Claims.

(b)  *Treatment*:  Except to the extent that a Holder of an Allowed Senior Subordinated Governmental Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Senior Subordinated Governmental Claim, each Holder of an Allowed Senior Subordinated Governmental Claim shall receive payment in Cash in an amount equal to such Holder's share of Distributions from the General Pool in accordance with the waterfall priority set forth in Section 4.2.3; *provided* that each Holder of such Allowed Senior Subordinated Governmental Claim may elect to contribute such payment to the Supplemental Remission Fund for the benefit of, and Distribution to, Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, and Allowed Digital Asset Loan Claims as contemplated by Section 5.21.

(c)  *Voting*:  Claims in Class 10B are Impaired.  Each Holder of a Senior Subordinated Governmental Claim is entitled to vote to accept or reject the Plan.

4.3.20  Class 10C – Junior Subordinated IRS Claims

(a)  *Classification*:  Class 10C consists of all Junior Subordinated IRS Claims.

(b)  *Treatment*:  Except to the extent that a Holder of an Allowed Junior Subordinated IRS Claim agrees to less favorable treatment, and in full and final satisfaction, settlement and release of and in exchange for all Claims of the IRS (other than the Priority IRS Tax Claim) against the Debtors arising from activities, transactions, liabilities or events on or preceding October 31, 2022, each Holder of an Allowed Junior Subordinated IRS Claim shall receive payment in Cash in an amount equal to such Holder's share of Distributions from the General Pool in accordance with the waterfall priority set forth in Section 4.2.3.

(c)  *Voting*:  Claims in Class 10C are Impaired.  Each Holder of a Junior Subordinated IRS Claim is entitled to vote to accept or reject the Plan.

4.3.21  Class 11 – Intercompany Interests

(a)  *Classification*:  Class 11 consists of all Intercompany Interests.

(b)  *Treatment*:  No Holder of an Intercompany Interest shall receive any Distributions on account of its Intercompany Interest.  On and after the Effective Date, all Intercompany Interests shall, at the option of the Debtors, either be reinstated, set off, settled, addressed, distributed, contributed, merged or cancelled.

(c)  *Voting*:  Interests in Class 11 are Impaired.  Each Holder of an Intercompany Interest is conclusively deemed to have rejected the

Plan.  No Holder of an Intercompany Interest is entitled to vote to accept or reject the Plan.

### 4.3.22  Class 12 – Preferred Equity Interests

(a)    *Classification*:  Class 12 consists of all Preferred Equity Interests.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Preferred Equity Interest agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Preferred Equity Interest, each Holder of an Allowed Preferred Equity Interest shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of Distributions from the General Pool in accordance with the waterfall priority set forth in Section 4.2.3;

(c)    *Voting*:  Interests in Class 12 are Impaired.  Each Holder of a Preferred Equity Interest is entitled to vote to accept or reject the Plan.

### 4.3.23  Class 13 – Section 510(b) Preferred Equity Claims

(a)    *Classification*:  Class 13 consists of all Section 510(b) Preferred Equity Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Section 510(b) Preferred Equity Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Section 510(b) Preferred Equity Claim, each Holder of an Allowed Section 510(b) Preferred Equity Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of Distributions from the General Pool in accordance with the waterfall priority set forth in Section 4.2.3.

(c)    *Voting*:  Claims in Class 13 are Impaired.  Each Holder of a Section 510(b) Preferred Equity Claim is conclusively deemed to have rejected the Plan.  No Holder of a Section 510(b) Preferred Equity Claim is entitled to vote to accept or reject the Plan.

### 4.3.24  Class 14 – Section 510(b) Other Equity Claims

(a)    *Classification*:  Class 14 consists of all Section 510(b) Other Equity Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Section 510(b) Other Equity Claim agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Section 510(b) Other Equity Claim, each Holder of an Allowed Section 510(b) Other Equity Claim shall receive payment in Cash in an amount equal to such Holder's Pro Rata share of

Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c)    *Voting*:  Claims in Class 14 are Impaired.  Each Holder of a Section 510(b) Other Equity Claim is conclusively deemed to have rejected the Plan.  No Holder of a Section 510(b) Other Equity Claim is entitled to vote to accept or reject the Plan.

4.3.25  <u>Class 15 – Equitably Subordinated Claims</u>

(a)    *Classification*:  Class 15 consists of all Equitably Subordinated Claims.

(b)    *Treatment*:  All Equitably Subordinated Claims shall be cancelled or released, and the Holders of Equitably Subordinated Claims shall not be entitled to, and shall not receive or retain, any Distributions, property or interest in property on account of such Claims under the Plan.

(c)    *Voting*:  Claims in Class 15 are Impaired.  Each Holder of an Equitably Subordinated Claim is conclusively deemed to have rejected the Plan.  No Holder of an Equitably Subordinated Claim is entitled to vote to accept or reject the Plan.

4.3.26  <u>Class 16 – Other Equity Interests</u>

(a)    *Classification*:  Class 16 consists of all Other Equity Interests.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Equity Interest agrees to less favorable treatment, and in full and final satisfaction, settlement, release of and in exchange for its Allowed Other Equity Interest, each Holder of an Allowed Other Equity Interest shall receive its share equal to such Holder's Pro Rata share of Distributions from the General Pool in accordance with the waterfall priority set forth in <u>Section 4.2.3</u>.

(c)    *Voting*:  Interests in Class 16 are Impaired.  Each Holder of an Other Equity Interest is conclusively deemed to have rejected the Plan.  No Holder of an Other Equity Interest is entitled to vote to accept or reject the Plan.

4.3.27  <u>Class 17 – FTT Claims and Interests</u>

(a)    *Classification*:  Class 17 consists of all FTT Claims and Interests.

(b)    *Treatment*:  All Allowed FTT Claims and Interests shall be cancelled or released, and the Holders of Allowed FTT Claims and Interests shall not be entitled to, and shall not receive or retain, any

Distributions, property or interest in property on account of such
Interests under the Plan.

(c)   *Voting*: Claims in Class 17 are Impaired. Each Holder of an FTT
Claim or Interest is conclusively deemed to have rejected the Plan. No
Holder of an FTT Claim or Interest is entitled to vote to accept or
reject the Plan.

### 4.3.28   Class 18 – *De Minimis* Claims

(a)   *Classification*: Class 18 consists of all *De Minimis* Claims.

(b)   *Treatment*: No Holder of a *De Minimis* Claim shall receive any
Distributions on account of its *De Minimis* Claim. On and after the
Effective Date, all *De Minimis* Claims shall be cancelled and shall be
of no further force and effect, whether surrendered for cancellation or
otherwise.

(c)   *Voting*: Claims in Class 18 are Impaired. Each Holder of a *De
Minimis Claim* is conclusively deemed to have rejected the Plan. No
Holder of a *De Minimis* Claim is entitled to vote to accept or reject the
Plan.

### 4.4.   Valuation of Claims

Unless otherwise expressly provided in the Digital Assets Estimation Order, the
value of a Claim in respect of a Digital Asset shall be calculated by converting the value of such
Digital Asset into Cash as of the Petition Date utilizing the conversion rates set forth in the
Digital Assets Conversion Table.

### 4.5.   Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, the Plan shall not affect the Plan
Administrator's rights in respect of any Unimpaired Claims, including legal and equitable
defenses or setoff or recoupment rights with respect thereto. For the avoidance of doubt, any
claims that may arise pursuant to section 502(h) of the Bankruptcy Code following the
conclusion of any adversary proceeding shall be treated in accordance with Paragraph 8 of the
Digital Assets Estimation Order and shall not be valued in accordance with the conversion rates
set forth in the Digital Assets Conversion Table.

### 4.6.   Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if: (i) the Holders
(other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-
thirds in amount of the Claims entitled to vote actually voting in such Class have voted to accept
the Plan; and (ii) the Holders (other than any Holder designated under section 1126(e) of the
Bankruptcy Code) of more than one-half in number of the Claims entitled to vote actually voting
in such Class have voted to accept the Plan. For any Class of Claims entitled to vote on the Plan,

the Debtors reserve the right to treat such Class as Unimpaired and conclusively deemed to have accepted the Plan.

4.7.    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or an Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purpose of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4.8.    Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

4.9.    Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code

For purposes of Confirmation, section 1129(a)(10) of the Bankruptcy Code shall be satisfied if any one of Class 3A, 5A, 5B, 6A, 6B, 7A, 7B, 7C, 8B, 8C, 10A, 10B, 10C or 12 accepts the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class or Classes of Claims and Interests. Classes 9, 11, 13, 14, 15, 16, 17 and 18 are deemed to reject the Plan.

# 5.   IMPLEMENTATION OF THE PLAN

### 5.1.   Operations Between the Confirmation Date and Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtors may continue to operate as debtors-in-possession, subject to all applicable orders of the Bankruptcy Court.

### 5.2.   Global Settlement of Claims and Interests

In consideration of the classification, treatment, Distributions, releases and other benefits provided by the Debtors to their stakeholders under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise, settlement and resolution (the "Global Settlement") of all Claims, Interests and Causes of Action against, by or among the Debtors, including without limitation:  (a) the actual or purported fraud, unjust enrichment, misappropriation, conversion and misconduct of former Insiders; (b) any basis for the contractual, structural and legal subordination rights of any Claim or Interest or any Distribution to be made on account of any Claim or Interest; (c) the purported commingling and misuse of customer deposits and corporate funds; (d) the tracing of assets of individual Debtors to particular sources of funding; (e) transactions among the Debtors prior to and on the Effective Date; (f) the allocation of corporate and administrative expenses across each of the Debtors; (g) the effects and consequences of the Debtors' Terms of Service and whether the assets held by the FTX.com Exchange and the FTX.US Exchange are property of the Debtors' Estates; (h) the Debtors' disregard for corporate separateness before the Petition Date; (i) any causes of action by a Debtor against other Debtors; (j) the purported absence of adequate corporate governance, cash management, accounting and cybersecurity controls by the Debtors and their Affiliates prior to the commencement of the Chapter 11 Cases; and (k) all Causes of Action relating to any of the foregoing.

In connection with the implementation of the Global Settlement pursuant to the Plan:  (a) the value of Claims in respect of Digital Assets shall be calculated pursuant to Section 4.4; (b) the Dotcom Intercompany Shortfall Claim and the U.S. Intercompany Shortfall Claim shall be recognized for the benefit of Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims; (c) the Alameda U.S. Customer Claim shall be recognized as part of the General Pool; (d) Claims shall be classified and treated as set forth in Article 4, which entitles Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims to recover against the (i) Dotcom Customer Priority Assets and the U.S. Customer Priority Assets, respectively, and (ii) General Pool, in accordance with the waterfall priorities set forth in Section 4.2; (e) the Consolidated Debtors shall be substantively consolidated as set forth in Section 5.7; (f) Cancelled Intercompany Claims, Equitably Subordinated Claims, FTT Claims and Interests and *De Minimis* Claims shall be cancelled; (g) Separate Subsidiary Intercompany Claims, Senior Subordinated IRS Claims, Senior Subordinated Governmental Claims, Junior Subordinated IRS Claims, Preferred Equity Interests, Section 510(b) Preferred Equity Claims and Section 510(b) Other Equity Claims shall be subordinated to Claims of other Holders, in accordance with the waterfall priorities set forth in Section 4.2; (h) Holders of Other Equity Interests shall recover against the General Pool in accordance with the waterfall priorities set forth in Section 4.2; (i) Distributions to customers and

creditors shall be made in Cash (other than in Available NFTs) as set forth in <u>Articles 4</u> and <u>7</u>; (j) all assets scheduled by the Debtors shall constitute property of the Debtors' Estates; (k) interest shall be paid at the applicable rate to Holders of certain Claims in accordance with <u>Section 7.1</u> and the treatment set forth in <u>Section 4.3</u>; and (l) interest shall be paid at the Consensus Rate to Holders of Allowed Separate Subsidiary Claims, Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims, Allowed Dotcom Convenience Claims and Allowed U.S. Convenience Claims in accordance with <u>Section 7.1</u> and the treatment set forth in <u>Section 4.3</u>.

The Plan shall be deemed a motion to approve the Global Settlement pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Global Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Bankruptcy Court that the Global Settlement is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

5.3.    <u>FTX DM Global Settlement</u>

To the extent that the FTX DM Global Settlement Agreement is in full force and effect as of the Effective Date, the FTX DM Global Settlement Agreement is hereby incorporated into the Plan.  If the FTX DM Global Settlement Agreement is terminated pursuant to its terms, this <u>Section 5.3</u> shall become null and void and shall have no further force and effect.

Notwithstanding anything to the contrary in the Plan, no claims between the Debtors and FTX DM arising under the FTX DM Global Settlement Agreement or the Exclusive Sales Agency Agreement shall be cancelled or otherwise released or modified by the Plan and the FTX DM Global Settlement Agreement and the Exclusive Sales Agency Agreement shall remain in effect following the Effective Date pursuant to their terms.

5.4.    <u>Setoff Against FTX DM</u>

On the Effective Date, the loan provided by FTX Trading to FTX DM in connection with the FTX DM Global Settlement Agreement shall be satisfied by setoff and reduction against any amount otherwise due to FTX DM by the Debtors under the FTX DM Global Settlement Agreement.  Such setoff shall be effective automatically upon the occurrence of the Effective Date and shall not require any action by the Debtors, the Plan Administrator, or FTX DM or further order of the Court.

5.5.    <u>Waiver of Customer Preference Actions</u>

Effective upon the Effective Date, the Debtors and the Wind Down Entities shall waive and not prosecute any Customer Preference Action against any Holder of Dotcom Customer Entitlement Claims or U.S. Customer Entitlement Claims if such Holder duly executes and timely returns a valid Ballot by the Voting Deadline that (i) votes to accept the Plan, and (ii) consents and stipulates to the amount of such Dotcom Customer Entitlement or U.S. Customer Entitlement Claim as set forth in the applicable Ballot for voting, allowance and Distribution

purposes; *provided* that notwithstanding anything provided herein, the Debtors shall not waive and release any Excluded Customer Preference Action.

The Debtors shall not designate a Customer Preference Action as an Excluded Customer Preference Action unless the Debtors have determined there is a reasonable basis to conclude that, among other things: (a) the recipient of the applicable preferential payment or transfer (i) was an Insider of any Debtor, (ii) was a current or former employee of the Debtors or of any current or former Affiliate of the Debtors, (iii) may have had actual or constructive knowledge of the commingling and misuse of Customer deposits and corporate funds, or (iv) either (x) changed its know your customer information to facilitate withdrawals from the applicable FTX Exchange or (y) received manual permission from the Debtors to facilitate withdrawals when withdrawals were otherwise halted from the FTX Exchange; or (b) any Debtor has a Cause of Action or a defense against the recipient of the applicable preferential payment or transfer (or a subsequent transferee of the applicable Customer Entitlement Claim) or any of its Affiliates other than a claim arising under a Customer Preference Action.

### 5.6. Other Settlements

Any settlement agreement entered into among any of the Debtors and Holders of Claims or Interests that is contained in the Plan Supplement is incorporated into the Plan and shall become effective in accordance with its terms. The Plan shall be deemed a motion to approve such settlement agreements pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as findings by the Bankruptcy Court that such settlements are fair, equitable, reasonable and in the best interests of the Debtors, their Estates and Holders of Claims and Interests.

### 5.7. Substantive Consolidation

Pursuant to sections 105, 363, 365 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and as an integral part of the Global Settlement pursuant to the Plan, the Plan shall be deemed a motion by the Debtors seeking the approval, effective as of the Effective Date, of the substantive consolidation of the Estates of the Consolidated Debtors into a single Entity formed as a Delaware trust (the "Consolidated Wind Down Trust") for the purposes of effectuating and implementing the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such substantive consolidation of the Estates of the Consolidated Debtors, as well as findings by the Bankruptcy Court that such substantive consolidation is fair, equitable, reasonable and in the best interests of the Debtors, their Estates and the Holders of Claims and Interests. FTX Bahamas PropCo shall not be substantively consolidated pursuant to the Plan and shall continue to exist as a separate legal entity.

Except as otherwise provided herein and subject in all respects to the classification and treatment of Claims and Interests set forth in Article 4, as a result of the substantive consolidation of the Estates of the Consolidated Debtors: (a) all property of the Consolidated Debtors shall vest in, and constitute the property of, the Consolidated Wind Down Trust, free and clear of any and all Liens, charges or other encumbrances or interests, pursuant to Section 5.13; (b) all guarantees of any Consolidated Debtor of the payment, performance or

collection of obligations of another Consolidated Debtor shall be eliminated and cancelled; (c) all joint obligations of two or more Consolidated Debtors and multiple Claims against such Entities on account of such joint obligations shall be treated and allowed as a single Claim against the Consolidated Wind Down Trust; (d) all Cancelled Intercompany Claims shall be deemed cancelled; and (e) each Claim filed or scheduled in the Chapter 11 Case of any Consolidated Debtor shall be deemed filed against the Consolidated Debtors and a single obligation of the Consolidated Wind Down Trust.

Except as otherwise provided herein, the substantive consolidation set forth in this Section 5.7 shall not: (i) affect the separate legal existence of the Consolidated Debtors for purposes other than implementation of the Plan pursuant to its terms; (ii) constitute or give rise to any defense, counterclaim or right of netting or setoff with respect to any Cause of Action vesting in the Consolidated Wind Down Trust that could not have been asserted against the Consolidated Debtors; or (iii) give rise to any right under, any executory contract, insurance contract or other contract to which a Consolidated Debtor is party, except to the extent required by section 365 of the Bankruptcy Code in connection with the assumption of such contract by the applicable Debtors.

5.8.    Wind Down Entities

The purpose of the Wind Down Entities is to engage in business after the Effective Date for so long as may be necessary to monetize the Plan Assets and pay Distributions, in each case as promptly as reasonably practicable. The Wind Down Entities shall manage and hold Plan Assets for sale; sell Plan Assets; administer, and close as necessary, the Chapter 11 Cases; administer, reconcile, resolve and settle claims; and liquidate the Debtors and their non-Debtor subsidiaries pursuant to the terms of the Plan Supplement. The Plan Administrator shall be vested with all other powers and authority set forth in the Plan and the Plan Administration Agreement, shall be deemed to have been appointed as the Debtors' Estates' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2) and 704(a)(5) of the Bankruptcy Code.

The Wind Down Entities are intended to qualify as "liquidating trusts" for U.S. federal income tax purposes. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Wind Down Entities are intended to be structured to comply with such general criteria. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Wind Down Entities, the Plan Administrator, and Holders of Allowed Claims) shall treat, for U.S. federal income tax purposes, the Wind Down Entities as a grantor trust of which the Holders of Allowed Claims against the Wind Down Entities are the owners and grantors. Taxable income, gain and losses of the Wind Down Entities shall be allocated among the deemed beneficiaries of such Wind Down Entities. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Wind Down Entities, the Plan Administrator, and all Holders of Allowed Claims) shall treat the transfer of the Plan Assets to the Wind Down Entities in accordance with the terms of the Plan; such transfer is treated as a deemed transfer to the Holders of Allowed Claims, followed by a deemed transfer by such Holders to the Wind Down Entities. The Plan Administrator shall make a good faith

valuation of Plan Assets as soon as it becomes relevant for tax reporting purposes.  All parties (including, without limitation, the Debtors, the Wind Down Entities, the Plan Administrator, and all Holders of Allowed Claims) shall use consistent valuation of the Plan Assets for all U.S. federal income tax purposes.

5.9.    Plan Funding Mechanism

Distributions under the Plan shall be funded from (a) Cash on hand, (b) Available NFTs, (c) Wind Down Cash Proceeds, and (d) any other Plan Assets, except as expressly set forth herein.

5.10.    Dissolution of Boards of the Debtors

As of the Effective Date, the term of the current members of the board of directors, board of managers, or other substantially equivalent governing body of each the Debtors shall expire automatically and each person serving as a director or manager of a Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically without any further action required on the part of the Debtors, the Debtors' officers or shareholders.  As of the Effective Date, the Wind Down Board shall manage the Wind Down Entities.

5.11.    The Wind Down Board

The initial Wind Down Board shall consist of the Plan Administrator, Brian C. Simms, KC, and Peter Greaves in their capacity as the Bahamas JOLs, the incumbent members of the Debtors' board and one additional director to be identified in the Plan Supplement (the "Appointed Director").  The Appointed Director shall be jointly designated by the Ad Hoc Committee and the Official Committee, and be acceptable to the Debtors and the Bahamas JOLs.  The Appointed Director shall also be a member of the Advisory Committee described in Section 5.20 and shall cease to serve as a member of the Wind Down Board when the Advisory Committee is disbanded.

The Wind Down Board shall manage the Consolidated Wind Down Trust and have the responsibility to review and advise the Plan Administrator with respect to the liquidation and Distribution of the Plan Assets.  In advising the Plan Administrator, the Wind Down Board, including the Appointed Director, shall maintain the same fiduciary responsibilities as the Plan Administrator.

In the event of a vacancy on the Wind Down Board, a majority of the Wind Down Board may appoint a replacement subject to the constitutive documents for the Consolidated Wind Down Trust as in effect from time to time; *provided* that any replacement for the Appointed Director shall first be designated by the Advisory Committee from among its members.

5.12.    Plan Administrator and Plan Administration Agreement

The Plan Administrator shall administer the Wind Down Entities after the Effective Date in accordance with the Plan Administration Agreement.  The appointment of the Plan Administrator and execution, delivery and performance of the Plan Administration

Agreement by the Wind Down Entities shall be approved by the Bankruptcy Court in the Confirmation Order. The Plan Administrator shall be a fiduciary of the Wind Down Entities and shall be compensated and reimbursed for expenses as set forth in the Plan Administration Agreement. The Plan Administration Agreement shall provide for the exculpation and indemnification of the Plan Administrator, the Wind Down Board and their professionals, representatives and related persons with respect to all Causes of Action arising out of or relating to any act taken, or omission made, in connection with the affairs of the Wind Down Entities, except to the extent an act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct.

### 5.13. Vesting of Assets Free and Clear and No Successor Liability

Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Effective Date, all Plan Assets irrevocably shall be transferred and assigned to and automatically vested in the Wind Down Entities, for the benefit of Holders of Claims, free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 363 of the Bankruptcy Code. All property held for Distribution pursuant to the Plan shall be held in trust for the benefit of the Holders of Allowed Claims and Interests and to pay the expenses of the administration of the Wind Down Entities. Upon the vesting of the Plan Assets in the Wind Down Entities, no Debtor, Consolidated Debtor or any Person or Entity holding a Claim or Interest shall (a) have an interest in, or any right with respect to, any Plan Asset except as provided by the Plan or (b) take, without the written consent of the Plan Administrator or order of the Court, any action with respect to a Wind Down Entity or a Plan Asset if such action would not have been permitted to be taken by such Person or Entity with respect to a Debtor or its property under section 362 of the Bankruptcy Code.

Except as otherwise expressly provided in the Plan or the Confirmation Order, as of the Effective Date, each of the Wind Down Entities (i) shall not, and shall not be deemed to assume, agree to perform, pay or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising of any event or occurrence taking place on or before the Effective Date, (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date, and (iii) shall not have any successor or transferee liability of any kind or character.

### 5.14. D&O Policies

As of the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code. The Debtors' D&O Policies purchased on or after the Petition Date shall continue in force following the Effective Date subject to the terms and conditions of such D&O Policies. Coverage for defense and indemnity under any assumed or continued D&O Policies shall remain available within the definition of "Insured" in any of the D&O Policies subject to the terms and conditions of such D&O Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption or continuation, as applicable, of each D&O Policy. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, Confirmation of the Plan shall not

discharge, impair or otherwise modify any obligations assumed by the foregoing assumption or continuation of the D&O Policies, and each such obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.  The D&O Policies (i) are prefunded and will not require any additional premiums on or after the Effective Date, (ii) provide coverage for those insureds currently covered by such policies for the remaining term of such policies and (iii) in the case of the D&O Policies purchased on or after the Petition Date, provide runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

5.15.   Cancellation of Existing Interests

On the Effective Date, except as otherwise specifically provided for in the Plan or any agreement, instrument or other document incorporated into the Plan, the obligations of the Debtors under any Certificate, Interest (other than any Interest in FTX Bahamas PropCo.), share, note, purchase right, option, warrant, intercreditor agreement, guaranty, indemnity or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest, shall be cancelled solely as to the Debtors, and the Debtors shall not have any continuing obligations thereunder and shall be released therefrom.

5.16.   Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind Down Entities or to any other Person pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to:  (a) the Distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forgo the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment.  The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

5.17.   Preservation of Causes of Action

Except as otherwise provided in Article 10 or the other provisions of the Plan, each Cause of Action that is a Plan Asset shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest exclusively in the Wind Down Entities as of the Effective Date.  For avoidance of doubt, any and all DM-Controlled Recovery Actions shall vest solely in FTX DM and shall not vest in the Wind Down Entities.  Any such Cause of Action against any Customer of the FTX.com Exchange or any of such Customer's successors or

assigns shall constitute a Dotcom Customer Priority Asset, and any such Cause of Action against any customer of the FTX.US Exchange shall constitute a U.S. Customer Priority Asset.  Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Bankruptcy Court, the Plan Administrator expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of Confirmation, the Plan, the vesting of such Cause of Action in the Wind Down Entities, any order of the Bankruptcy Court or these Chapter 11 Cases.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them or in which they asserted any interest as an indication that the Debtors or the Plan Administrator, as applicable, will not pursue such Cause of Action.

    5.18.   Effectuating Documents and Further Transactions

The Debtors or the Plan Administrator, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  The secretary, any assistant secretary or any other appropriate officer of each Debtor shall be authorized to certify or attest to any of the foregoing actions.

From and after the Confirmation Date but prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable law, and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

    5.19.   Wind Down of Debtors, Wind Down Entities, Excluded Entities and Non-Debtor Subsidiaries

The Debtors and the Plan Administrator, as applicable, shall be vested with all powers and authority to (a) make equity contributions to Debtor and non-Debtor Affiliates with Plan Assets and (b) convert into equity any prepetition or postpetition Intercompany Claims held by any Debtor that is not cancelled, released or otherwise settled in full pursuant to the Plan, in each case, to effectuate or facilitate the wind down and dissolution of any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries either prior to, on or after the Effective Date.

The Debtors and the Plan Administrator shall be vested with all powers and authority to wind down and dissolve any Debtors, Wind Down Entities, Excluded Entities and non-Debtor subsidiaries on or after the Effective Date free and clear of all Liens, Claims, charges or other encumbrances or interests to the extent permitted by section 1141 of the Bankruptcy Code and without the need for any approvals, authorizations, actions or consents of the Court or otherwise, including any (i) any further corporate approval, including by the stockholders, board

of directors or other governing body of the applicable entity, to the extent such further approval may be required by applicable law, and to the extent such approval may be required by applicable law, such approval shall be deemed previously provided, or (ii) further actions to be taken by or on behalf of such entities or payments to be made in connection therewith, subject to the filing of a certificate of dissolution with the appropriate governmental authorities.

     5.20.   Creditor Advisory Committee

     On the Effective Date, the Debtors shall establish an advisory committee (the "Advisory Committee") consisting of the Appointed Director on the Wind Down Board and two other persons reasonably acceptable to the Debtors and the Bahamas JOLs, to be jointly designated by the Ad Hoc Committee and the Official Committee.  The members of the Advisory Committee shall not be a current or former Holder of a Claim or Interest (unless otherwise agreed to by the Debtors, the Official Committee, and the Ad Hoc Committee) and shall be subject to the same confidentiality, independence and trading restrictions as members of the Wind Down Board.  The members of the Advisory Committee shall have fiduciary duties to all creditors.

     The Wind Down Board and the Plan Administrator shall consult with the Advisory Committee in good faith on all of its material decisions concerning the Wind Down Entities, the Plan Administrator and the Advisory Committee from time to time, including without limitation with respect to (i) reserves and the timing and amount of distributions, (ii) resolution or settlement of disputed unsecured claims, (iii) commencement, prosecution and settlement of litigation, (iv) disallowance of claims, (v) monetization of digital assets and venture investments, (vi) implementation of the Supplemental Remission Fund, (vii) modification of the Wind Down Budget and (viii) modification of the terms of employment or scope of authority of the Plan Administrator and any other officers of the Wind Down Entities, in each case of clauses (i) through (viii) subject to such parameters as may be agreed upon in good faith by the Wind Down Board, the Plan Administrator and the Advisory Committee from time to time.  The members of the Advisory Committee other than the Appointed Director on the Wind-Down Board shall have the right to attend formal meetings of the Wind Down Board as non-voting observers (and receive all related board materials and reports), subject to such limitations as the Wind Down Board may set from time to time to address any actual or potential conflict of interest.  The Appointed Director shall have the opportunity to consult with the other members of the Advisory Committee prior to voting on any actions in its capacity as a member of the Wind Down Board.  Similarly, the Wind Down Board of Directors shall have the right to consult in executive session without the Advisory Committee members.

     The members of the Advisory Committee shall receive reasonable and customary compensation, indemnification and exculpation.  The Advisory Committee may retain and employ Delaware counsel, one additional law firm and one financial advisory firm to assist the Advisory Committee in the performance of its duties, with the reasonable and documented fees and expenses of these professionals to be borne or reimbursed by the Wind Down Entities.  These professional firms shall be chosen by majority vote of the Advisory Committee and be acceptable to the Wind Down Board (such consent not to be unreasonably withheld).

If the Wind Down Board approves an action (i) that the Appointed Director has voted against in his or her capacity as a member of the Wind Down Board and (ii) to which a majority of the Advisory Committee (including the Appointed Director) also objects, the Appointed Director may send written notice explaining the basis for the Advisory Committee's objection to the Plan Administrator and the other members of the Wind Down Board within one business day of the vote of the Wind Down Board approving the proposed action (a "Notice of Objection"). Upon the Appointed Director's vote against a proposed action by the Wind Down Board, the Wind Down Entities shall refrain from taking the contested action unless a Notice of Objection is not timely provided; if a Notice of Objection is provided, the Wind Down Board shall not take the proposed action without either order of the Court or the expiration of a seven day waiting period. During this seven day waiting period, the Advisory Committee may file an objection to the proposed action with the Court, describing the basis therefor in reasonable detail. If no objection is filed with the Court within such seven day period, the Notice of Objection shall have no further effect, the Wind Down Entities may proceed with the proposed action and the Advisory Committee shall be deemed to have waived any right to challenge the proposed action.

If the Advisory Committee files a timely objection with the Court in accordance with the immediately preceding two paragraphs, the Court shall resolve the objection as a contested matter by applying the standard of review that would be applicable to an action proposed by a debtor over the objection of a general unsecured creditor under section 363(b) of the Bankruptcy Code or Rule 9019, as applicable.

The Advisory Committee shall have standing to enforce the Plan to the same extent as an individual creditor, as well as standing to enforce the Advisory Committee's own rights under the Plan.

The Advisory Committee shall continue until such time as Allowed General Unsecured Claims have been paid 100% of their Allowed amounts plus interest at the Consensus Rate as provided in the Plan, and then shall be disbanded. In the event of a vacancy on the Advisory Committee, the other members of the Advisory Committee may appoint a replacement member reasonably acceptable to the Wind Down Board by written notice to the Court.

5.21. Supplemental Remission Fund

The Debtors, in consultation with the Supporting Parties, may establish a segregated fund (the "Supplemental Remission Fund") to receive any funds otherwise payable to the Holders of Allowed Senior Subordinated Governmental Claims (the "Remission Fund Sponsors"). The Plan Administrator may manage funds in the Supplemental Remission Fund on the same basis as any other funds of the Wind Down Entities. If established, the Supplemental Remission Fund shall constitute property of the Wind Down Entities and part of their Cash; *provided* that the Plan Administrator shall (a) keep such Supplemental Remission Fund segregated, and (b) apply funds in the Supplemental Remission Fund only (i) to pay costs and expenses incurred in connection with the activities of the Supplemental Remission Fund, (ii) to make distributions of any available funds to (x) Holders of Allowed Dotcom Customer Entitlement Claims, Allowed U.S. Customer Entitlement Claims and Allowed Digital Asset Loan Claims and (y) FTX DM for the benefit of Holders of Eligible DM Customer Entitlement Claims, in each case, on a Pro Rata basis or as otherwise agreed between the Plan Administrator

and the Remission Fund Sponsors, in consultation with the Advisory Committee, or (iii) as ordered by the Bankruptcy Court. The Plan Administrator shall file on the docket of these Chapter 11 Cases notices describing any agreement with any Remission Fund Sponsor to contribute to the Supplemental Remission Fund, as well as any agreed guidelines for distributions. The Plan Administrator shall file periodic reports on the docket of these Chapter 11 Cases with respect to the balance in the Supplemental Remission Fund and its distribution activities.

5.22. <u>Preferred Shareholder Fund</u>

In connection with the Debtors' efforts to recover Forfeiture Proceeds, the Debtors have entered into the Preferred Shareholder Settlement Agreement in anticipation that the DOJ or other applicable governmental authorities may request that a portion of the Forfeiture Proceeds be allocated to Holders of Preferred Equity Interests who are not otherwise expected to receive a distribution under the Plan. As contemplated by the Preferred Shareholder Settlement Agreement, the Debtors or the Consolidated Wind Down Trust may establish a segregated fund (the "<u>Preferred Shareholder Fund</u>") to receive and hold the applicable portion of such Forfeiture Proceeds for the benefit of Holders of Preferred Equity Interests, and may manage such Preferred Shareholder Fund and make distributions therefrom in accordance with the Preferred Shareholder Settlement Agreement and any applicable agreement with the DOJ or such other applicable governmental authorities. The Preferred Shareholder Fund shall not constitute property of the Estates or property of the Consolidated Wind Down Trust except to the extent of their respective interests therein.

**6.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1.    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than Executory Contracts or Unexpired Leases (a) previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) that are the subject of a pending motion to assume or (c) that are specifically described in the Plan to be assumed in connection with the Plan. Entry of the Confirmation Order by the Bankruptcy Court, subject to and upon the occurrence of the Effective Date, shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

6.2.    Claims Against the Debtors upon Rejection

No Executory Contract or Unexpired Lease rejected by the Debtors on or prior to the Effective Date shall create any obligation or liability of the Debtors that is not a Claim. Any Proof of Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Notice and Claims Agent before the Rejected Contract Claims Bar Date. **Any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease that is not filed with the Notice and Claims Agent by the Rejected Contract Claims Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind Down Entities, the Plan Administrator or any of their property.** Any Allowed Claim arising from the rejection of an Executory Contract or Unexpired Lease shall be classified as a General Unsecured Claim and shall be treated in accordance with Section 4.3.9.

6.3.    Modification, Amendments, Supplements, Restatements or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contracts or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

6.4.     <u>Reservation of Rights</u>

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Debtor has any liability thereunder.

## 7.   PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1.   Accrual of Postpetition Interest on Certain Claims

Unless otherwise provided in the Plan, to the extent that postpetition interest accrues on an Allowed Separate Subsidiary Claim, an Allowed Dotcom Customer Entitlement Claim, an Allowed U.S. Customer Entitlement Claim, an Allowed General Unsecured Claim or an Allowed Digital Asset Loan Claim pursuant to Article 4, such postpetition interest shall accrue on any unpaid balance of such Allowed Claim from the Petition Date through the applicable Distribution Date on which such Allowed Claim is paid; *provided* that, to the extent that a Disputed Claim becomes an Allowed Claim on which postpetition interest accrues pursuant to Article 4, postpetition interest shall accrue on such Allowed Claim as if such Allowed Claim had been an Allowed Claim that received a Distribution on each date Distributions were previously made to Holders of the Allowed Claims classified in the applicable Class.  No Holder of an Allowed Separate Subsidiary Claim, Allowed Dotcom Customer Entitlement Claim, Allowed U.S. Customer Entitlement Claim, Allowed General Unsecured Claim or Allowed Digital Asset Loan Claim has an entitlement to postpetition interest except to the extent of available funds in accordance with the waterfall priority set forth in Section 4.2.

### 7.2.   Distributions Timing

**7.2.1   Determination for Distributions to FTX DM**.  Before the Initial Distribution Date or any Distribution Date thereafter, the Plan Administrator shall determine, in accordance with the FTX DM Global Settlement Agreement, whether it needs to advance Cash to FTX DM to pay distributions to holders of DM Customer Entitlement Claims in accordance with the FTX DM Global Settlement Agreement.

**7.2.2   Initial Distribution Date**.  On the Initial Distribution Date, the Distribution Agent shall commence Distributions under the Plan on account of each Claim that is Allowed on or prior to the Effective Date.

**7.2.3   Subsequent Distributions**.  The Plan Administrator shall identify, in his or her discretion and in accordance with the Plan Administration Agreement, dates to be Subsequent Distribution Dates for the purpose of making additional Distributions under the Plan.  Each Subsequent Distribution Date shall be a Business Day.  On each Subsequent Distribution Date, the Plan Administrator shall direct the Distribution Agent to make Distributions with Cash on hand net of reserves, as determined by the Plan Administrator and the Wind Down Board.

**7.2.4   Distributions to Holders of Claims Allowed After the Effective Date**.  The Distribution Agent shall make Distributions to Holders of Claims Allowed after the Effective Date in accordance with the applicable provision of Article 4 on the first Subsequent Distribution Date after such Claim is Allowed.  Unless the Plan Administrator otherwise agrees, no partial Distribution shall be made with respect to such Claim until all disputes in connection with such Claim have been resolved by Final Order of the Bankruptcy Court.

### 7.3. Distributions to Holders of Customer Entitlement Claims

7.3.1    <u>Distributions to FTX DM</u>.  In accordance with <u>Section 7.2.1</u>, before the Initial Distribution Date or any Distribution Date thereafter, the Plan Administrator or the Distribution Agent shall make any distribution of Cash to FTX DM for the benefit of holders of DM Customer Entitlement Claims that have made the Bahamas Opt-In Election in accordance with the FTX DM Global Settlement Agreement.

7.3.2    <u>Distributions of Dotcom Customer Entitlement Claims, U.S. Customer Entitlement Claims and Allocations of Wind Down Cash Proceeds</u>.  On any Distribution Date, the Plan Administrator may direct the Distribution Agent to Distribute to the Holders of Allowed Dotcom Customer Entitlement Claims and Allowed U.S. Customer Entitlement Claims the Wind Down Cash Proceeds that the Plan Administrator in accordance with the Plan and the Plan Administration Agreement, determines are Wind Down Cash Proceeds that belong to the Dotcom Customer Priority Assets or U.S. Customer Priority Assets, respectively, in each case, in accordance with <u>Sections 4.3.6</u> and <u>4.3.7</u>.

7.3.3    <u>Final Distribution at Closing of the Chapter 11 Cases</u>.  On or prior to the closing of the Chapter 11 Cases, the Plan Administrator shall Distribute (such Distribution, the "<u>Final Distribution</u>") all remaining Wind Down Cash Proceeds in accordance with the waterfall priority set forth in <u>Section 4.2</u> and the classification and treatment set forth in <u>Section 4.3</u>.

### 7.4. Record Date and Delivery of Distributions

7.4.1    <u>Record Date for Distributions</u>

In advance of each Distribution Date, the Plan Administrator shall establish a Distribution Record Date for purposes of determining the Holders of Allowed Claims entitled to receive a Distribution on such Distribution Date, which Distribution Record Date shall be no less than 45 and no more than 75 days prior to the corresponding Distribution Date.  On each Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on such Distribution Record Date.  If a Claim is transferred 45 or fewer days before the applicable Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

7.4.2    <u>Delivery of Distributions in General</u>

Except as otherwise provided herein, the Distribution Agent, at the direction of the Plan Administrator, shall make all Distributions required under the Plan to Holders of Allowed Claims.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the applicable Distribution Record Date by the Distribution Agent, as appropriate:  (a) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein; (b) at the address set forth in any written notice of change of address delivered

to the Notice and Claims Agent; (c) at the address set forth in any notice of transfer that has become effective pursuant to Bankruptcy Rule 3001(e); or (d) at the address reflected in the Schedules if no Proof of Claim has been filed and the Notice and Claims Agent has not received a written notice of a change of address.  The Plan Administrator may, but shall not be required to, withhold any Distribution to a Holder of an Allowed Claim upon receipt of written notice to the Plan Administrator of pending litigation concerning an executed agreement by such Holder to sell such Allowed Claim in order to seek specific instructions of the Bankruptcy Court prior to making such Distribution. The Debtors, the Plan Administrator, the Distribution Agent, the Wind Down Entities and the Notice and Claims Agent shall not incur any liability whatsoever on account of the withholding or delivery of any Distributions under the Plan.

In the event that any payment or distribution under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  Except as specifically provided in the Plan, Holders of Allowed Claims shall not be entitled to interest, dividends or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

### 7.4.3   Foreign Currency Exchange Rate

Except as otherwise provided herein, an order of the Bankruptcy Court or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, any Claim asserted in a currency other than U.S. Dollars shall be automatically deemed converted to the equivalent U.S. Dollars at the Exchange Rate.

### 7.5.   Distribution Agent

The Plan Administrator shall have the authority to enter into an agreement with a Distribution Agent to facilitate the Distributions required under the Plan.  To the extent the Plan Administrator determines to utilize a Distribution Agent to facilitate the Distributions, such Distribution Agent would first be required to:  (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or Distributions required under the Plan; and (c) waive any right or ability to set off, deduct from or assert any Lien or other encumbrance against the Distributions required under the Plan to be distributed by such Distribution Agent.

The Debtors or the Plan Administrator, as applicable, shall pay to the Distribution Agent all of its reasonable and documented fees and expenses without the need for any approvals, authorizations, actions or consents of the Bankruptcy Court or otherwise.  The Distribution Agent shall submit detailed invoices to the Plan Administrator for all fees and expenses for which the Distribution Agent seeks reimbursement, and the Plan Administrator shall pay those amounts that it, in its sole discretion, deems reasonable, and shall object to those fees and expenses, if any, that the Plan Administrator deems to be unreasonable.  In the event that the Plan Administrator objects to all or any portion of the amounts requested to be reimbursed in the Distribution Agent's invoice, the Plan Administrator and the Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate

payment of such disputed fees and/or expenses.  In the event that the Plan Administrator and the Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

7.6.     Fractional and *De Minimis* Distributions

Notwithstanding anything herein to the contrary, the Plan Administrator and the Distribution Agent shall not be required to make Distributions in Cash or payments of less than $10.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $10 shall be forever barred from asserting such Claim against the Debtors, the Estates, the Plan Administrator, the Wind Down Entities or any of their property.

7.7.     Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, or no address for such Holder is found in the Debtors' or Notice and Claims Agent's records, no further Distribution to such Holder shall be made unless and until the Plan Administrator or the Distribution Agent is notified in writing of the then-current address of such Holder, at which time such Distribution shall be made to such Holder not less than 30 days thereafter. Undeliverable Distributions shall remain in the possession of the Plan Administrator or the Distribution Agent until such time as such Distribution becomes deliverable or such Distribution reverts to the relevant Wind Down Entity or is cancelled pursuant to Section 7.8 and shall not be supplemented with any interest, dividends or other accruals of any kind.  Nothing contained herein shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim whose Distribution is declared an undeliverable or Unclaimed Distribution.

7.8.     Reversion

Any Distribution under the Plan, including Distributions made by the Plan Administrator or the Distribution Agent in accordance with Section 7.5, that is an Unclaimed Distribution for a period of six months thereafter, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, and such Unclaimed Distribution shall revest in the relevant Wind Down Entity as Plan Assets with respect to Unclaimed Distributions on account of Claims, *provided*, *however*, that the Plan Administrator and the Distribution Agent shall use commercially reasonable efforts to notify the Holder of such Unclaimed Distribution within three months of the applicable Distribution Date.  The Plan Administrator and the Distribution Agent are deemed to have satisfied their use of commercially reasonable efforts by mailing a notice to the last known address of record known to the Claims Agent and emailing such notice to the last known email address of record known to the Claims Agent.  Any Distribution that is not made pursuant to Section 7.6 shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the relevant Wind Down Entity as Plan Assets pursuant to this Section 7.8.  Upon revesting pursuant to this Section 7.8, the Claim of any Holder or its successors and assigns with respect to such property shall be cancelled and forever barred, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.  If any Unclaimed Distribution revests in any Wind Down Entity as Plan Assets pursuant to this Section 7.8 after the Final Distribution is made, the Plan Administrator shall not

-65-

be required to make any subsequent Distributions to Holders of Allowed Claims or Interests under the Plan.

7.9.    Surrender of Cancelled Instruments or Securities

Except as otherwise provided in the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent.  Subject to the foregoing sentence, regardless of any actual surrender of a Certificate, the deemed surrender shall have the same effect as if its Holder had actually surrendered such Certificate, and such Holder shall be deemed to have relinquished all rights, Claims and Interests with respect to such Certificate. Notwithstanding the foregoing paragraph, this Section 7.9 shall not apply to any Claims reinstated pursuant to the terms of the Plan.

7.10.    Setoffs

Except as otherwise provided herein, a Final Order of the Bankruptcy Court, or as agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553), applicable non-bankruptcy law, or such terms as may be agreed to by the Holder and the Debtors or the Plan Administrator, as applicable, the Debtors may, without any further notice to, or action, order or approval of the Bankruptcy Court, set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided* that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or the Plan Administrator of any such Claims, rights and Causes of Action that such Debtor or the Plan Administrator may possess against such Holder.  In no event shall any Holder of a Claim be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor or the Plan Administrator, as applicable, unless such Holder has filed a Proof of Claim in these Chapter 11 Cases by the applicable Claims Bar Date preserving such setoff and a Final Order of the Bankruptcy Court has been entered, authorizing and approving such setoff.

7.11.    The Bahamas Opt-In Election

All Bahamas Customers forever, fully and finally release and discharge the Debtors with respect to any Dotcom Customer Entitlement Claims and Dotcom Convenience Claims and forever, fully and finally withdraw with prejudice such Dotcom Customer Entitlement Claims and Dotcom Convenience Claims from these Chapter 11 Cases.  No Bahamas Customer who timely makes a valid Bahamas Opt-In Election shall receive any Distribution under the Plan on account of any Dotcom Customer Entitlement Claims or Dotcom Convenience Claims.  The Plan Administrator may require any Holder of any Claim to submit satisfactory evidence that such Holder has not submitted a proof of debt in the FTX DM Liquidation.

7.12.   Anti-Double Dip

To the extent any Holder has received payment in full on account of any Allowed Claim in accordance with Section 4.3, such Allowed Claim shall be deemed satisfied and expunged from the claims registry without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court.

To the extent that a Holder of an Allowed Claim receives payment from a party that is not a Debtor on account of such Claim, the Plan Administrator or the Distribution Agent on account of such Claim, such Holder shall, within 14 days of receipt thereof, transfer, repay or return such payment to the Plan Administrator or the Distribution Agent to the extent such Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount that other similarly-situated Holders of such Claim received as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Plan Administrator annualized interest at the Consensus Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

The Plan Administrator may require any Holder of any Claim or Interest to submit satisfactory evidence that such Holder has not requested or received compensation for the same losses underlying such Claim or Interest in connection with any other judicial or administrative proceedings in any court other than the Bankruptcy Court, including, without limitation, (a) any proceedings with respect to FTX Australia, FTX Turkey, SNG Investments, FTX Europe AG, FTX EU Ltd., Quoine Pte. Ltd., FTX DM, or FTX Japan K.K., and (b) any proceedings in connection with the civil action captioned *In Re FTX Cryptocurrency Exchange Collapse Litigation*, Case No. 23-md-03076 (S.D.F.L.) pending in the United States District Court for the Southern District of Florida. The Plan Administrator may, and may direct the Distribution Agent to, withhold any Distributions on such Claim or Interest until: (a) such time as the Plan Administrator determines it has received satisfactory evidence or appropriate arrangements are in place that ensure no Holder receives more than any other similarly-situated Holder under the Plan, taking into account potential recoveries of all Holders; or (b) the Court so orders. The Plan Administrator may also adjust the amount of such Claim or Interest to ensure that the Holder of such Claim or Interest does not receive more than any other similarly-situated Holder under the Plan. As a condition to receiving any Distribution under the Plan, unless the Court orders otherwise, the Plan Administrator may require Holders of Claims or Interests to irrevocably and unconditionally assign and transfer to the Plan Administrator all right, title and interest in any claim or Cause of Action for the same losses that has been or may be made or asserted in any of the foregoing proceedings.

7.13.   Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors, the Plan Administrator and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any tax law, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors, the Plan Administrator and the Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such

-67-

withholding and reporting requirements, including withholding in kind, liquidating a portion of the Distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms that are reasonable and appropriate.  For purposes of the Plan, any withheld amount (or property) shall be treated as if paid to the applicable Holder.  The Plan Administrator reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to trust fund-type taxes, then to other taxes and then to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that has accrued on such Claims.

    7.14.   <u>Tax Identification, KYC and OFAC Certifications</u>

        Any Holder entitled to receive any Distribution under the Plan shall, upon request, deliver to the Distribution Agent or such other Entity designated by the Plan Administrator:  (a) a completed IRS Form W-9 or appropriate IRS Form W-8, as applicable; (b) a true and accurate certification that the Holder is not a Person or Entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons; and (c) know your customer information of the Holder of such Claim, which (i) for individuals, may include, among other things, full name including any alias, date of birth, address and proof of address, identification and identification-related documents, nationality, phone number, email address, occupation, bank account information or wallet address, social security number (for U.S. citizens) and facial liveness and (ii) for institutional Holders, may include, among other things, company name, registration information, tax identification number, principal business address and phone number, business email address, information on the nature of the business and principal business activity, entity size, source of wealth/source of funds, annual revenue/profit, authorized signer, identity of ultimate beneficial owners, identity of directors and/or members of management, bank account information or wallet address and, for any ultimate beneficial owners, directors or members of management, similar identification information and records as are collected for individual Holders who are natural Persons (collectively, the "<u>Pre-Distribution Requirements</u>").  If a request for Pre-Distribution Requirements has not been satisfied within 30 days thereafter, a second request shall be sent to such Holder.  If the Holder fails to comply with the Pre-Distribution Requirements before the date that is 60 days after a second request is made, such Holder shall be deemed to have forfeited its right to receive Distributions, and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Plan Administrator receiving its executed Pre-Distribution Requirements.  Any Distributions that are forfeited pursuant to this provision shall revest in the Wind Down Entities as Plan Assets.  For all purposes related to this <u>Section 7.14</u>, the Plan Administrator and the Distribution Agent are entitled to conclusively rely on the delivery of the notice to the last known address and last known email address on file with the Claims Agent without obligation to verify such address and any such requests delivered to such address shall be deemed to be received.

7.15.   <u>Distribution of Available NFTs</u>

Any Holder of an NFT Customer Entitlement Claim shall comply with the requirements and procedures that the Plan Administrator may establish in his or her reasonable discretion for the Distribution of Available NFTs.  If a Holder of NFT Customer Entitlement Claims fails to comply with such requirements or procedures by a date determined by the Plan Administrator in his or her reasonable discretion and noticed to all Holders of NFT Customer Entitlement Claims, such Holder shall be deemed to have forfeited its right to receive Distributions of Available NFTs, and shall be forever barred and enjoined from asserting any right to Distributions on account of its NFT Customer Entitlement Claim. Any Distributions that are forfeited pursuant to this <u>Section 7.15</u> shall revest in the Wind Down Entities as Plan Assets. For all purposes related to this <u>Section 7.15</u>, the Plan Administrator and the Distribution Agent are entitled to conclusively rely on the delivery of the notice to the last known address and last known email address on file with the Claims Agent without obligation to verify such address and any such requests delivered to such address shall be deemed to be received.

## 8.   CLAIMS ADMINISTRATION PROCEDURES

### 8.1.   Objections to Claims

Any objections to Claims (other than Administrative Claims) shall be filed on or before the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Plan Administrator, by filing a motion to extend on or before the Claims Objection Deadline. The Plan Administrator shall have standing to object to Claims.  Except as otherwise set forth in the Plan, after the Effective Date, the Plan Administrator and each Wind Down Entity shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim immediately before the Effective Date.

### 8.2.   Estimation of Claims

Except as may be provided in the Digital Assets Estimation Order, before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may, within their reasonable discretion, at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not yet been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including, but not limited to, for purposes of Distributions), and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or under the Plan. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation of such Claim unless the Holder of such Claim has filed a motion with the Bankruptcy Court requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

### 8.3.   Expungement and Disallowance of Claims

#### 8.3.1   Paid, Satisfied, Amended, Duplicated or Superseded Claims

Any Claim or Interest that has been paid, satisfied, amended, duplicated (by virtue of the substantive consolidation provided for under the Plan or otherwise), superseded or otherwise dealt with or treated in the Plan, may be adjusted or expunged on the Claims Register at the direction of the Plan Administrator without the Plan Administrator having to file an objection,

application, motion, complaint or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order or approval of the Bankruptcy Court.

### 8.3.2   Claims by Persons from Whom Property Is Recoverable

Unless otherwise agreed to by the Debtors, the Plan Administrator or ordered by the Bankruptcy Court, any Claims held by any Person or Entity from which property is recoverable under section 542, 543, 550 or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and any Holder of such Claim may not receive any Distributions on account of such Claim until such time as such Cause of Action against that Person or Entity has been resolved.

### 8.4.   Amendments to Proofs of Claim

On or after the Effective Date, a Proof of Claim may not be amended (other than solely to update or correct the name or address of the Holder of such Claim) without the prior authorization of the Bankruptcy Court or the Plan Administrator, and any such amended Proof of Claim filed without such prior authorization shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

### 8.5.   Disputed Claims Reserve

On or prior to the Initial Distribution Date, the Plan Administrator shall establish, if necessary, a reserve (the "Disputed Claims Reserve") (a) on account of Disputed Claims that may be subsequently Allowed after the Effective Date, and (b) to cover payments to FTX DM that may be required under the FTX DM Global Settlement Agreement.  The Plan Administrator shall (i) reserve, as necessary, cash on hand in a manner consistent with Article 4 on account of the Disputed Claims Reserve in the amount that would otherwise be distributable to estimated Disputed Claims pursuant to the Plan, (ii) administer, adjust and maintain the Disputed Claims Reserve, and (iii) withhold in the Disputed Claims Reserve any amount to fund subsequent Distributions pursuant to the Plan or payments that may be under the FTX DM Global Settlement Agreement.  The Plan Administrator may, but shall not be required to, seek estimation of any Disputed Claim by the Bankruptcy Court under section 502 of the Bankruptcy Code.

### 8.6.   No Distributions Pending Allowance

If an objection to the amount, validity, priority or classification of a Claim or a portion thereof is filed or is intended to be filed as set forth in this Article 8 or a Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim or is otherwise settled or resolved.

8.7.    <u>Distributions After Allowance</u>

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the applicable provisions of the Plan.

8.8.    <u>Administration Responsibilities</u>

Except as otherwise specifically provided in the Plan, after the Effective Date the Plan Administrator shall have the sole authority (subject to the terms of the Plan Administration Agreement) to (a) file, withdraw or litigate to judgment objections to Claims, other than Claims that are subject to a valid and timely Bahamas Opt-In Election, (b) settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, (c) administer and adjust, or cause to be administered and adjusted, the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court and (d) determine, without the need for notice to or action, order or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is filed is Allowed.  Nothing in this <u>Section 8.8</u> shall limit the ability under the Bankruptcy Code of any party-in-interest to object to any Claim prior to the Claims Objection Deadline unless otherwise ordered by the Bankruptcy Court.

8.9.    <u>Claims Paid or Payable by Third Parties</u>

The Debtors or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator.  To the extent a Holder of a Claim receives a Distribution on account of such Claim and also receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the applicable Debtor, the applicable Wind Down Entity, or the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the applicable Distribution Date.

## 9.    CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

### 9.1.    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of this Article 9.

(a)    <u>Confirmation Order</u>.  The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, in consultation with the Supporting Parties, and there shall not be a stay or injunction in effect with respect thereto.

(b)    <u>Professional Fee Escrow Account</u>.  The Debtors shall have established and funded the Professional Fee Escrow Account in accordance with Section 3.4.2.

(c)    <u>Professional Fee Payments</u>.  All professional fees and expenses of the Debtors, the Official Committee and the Ad Hoc Committee as of the Effective Date that were due and payable under an order of the Bankruptcy Court shall have been paid in full, other than any Professional Claims subject to approval by the Bankruptcy Court.

(d)    <u>IRS Settlement</u>.  (i) The Bankruptcy Court shall have entered an order in form and substance reasonably acceptable to the Debtors approving the IRS Settlement, (ii) the IRS Settlement shall not have been terminated or suspended, and (iii) all conditions precedent to the effectiveness of the IRS Settlement, other than the occurrence of the Effective Date, shall have been satisfied.

(e)    <u>FTX DM Global Settlement Agreement</u>.  The FTX DM Global Settlement Agreement shall be in full force and effect and shall not have been terminated or suspended.

(f)    <u>Plan Documents</u>.  The Plan, Plan Supplement, Confirmation Order and all documents related thereto shall be in form and substance reasonably acceptable to the Debtors and any conditions precedent thereto shall have been satisfied, waived or satisfied contemporaneously with the occurrence of the Effective Date; *provided* that, to the extent any proposed documents would adversely affect the amount or timing of Distributions or the rights or powers of the Plan Administrator, the Advisory Committee or the Appointed Director, such documents shall also be in form and substance reasonably acceptable to the Supporting Parties.

(g)    <u>Necessary Documents</u>.  All actions, documents, certificates and agreements necessary to implement the Plan, including the Plan Administration Agreement, shall have been effected or executed and delivered, as applicable.

(h)    <u>Necessary Authorizations</u>.  All authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan as of the Effective Date shall have been received, waived or otherwise resolved.

(i)    <u>Governmental Action</u>.  No governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Plan or any of the other transactions contemplated hereby and no governmental entity shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Plan.

9.2.    <u>Waiver of Conditions</u>

The Debtors may, in consultation with the Supporting Parties, waive conditions to the occurrence of the Effective Date set forth in this <u>Article 9</u> at any time without further notice, leave or order the Bankruptcy Court or any formal action other than proceeding to consummate the Plan; *provided* that the Debtors may not waive the condition set forth in <u>Section 9.1(e)</u> without the prior written consent of the Bahamas JOLs.

9.3.    <u>Simultaneous Transactions</u>

Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtors, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

9.4.    <u>Effect of Non-Occurrence of the Effective Date</u>

If the Effective Date does not occur by the ninetieth (90th) day following the date on which the Confirmation Order becomes a Final Order, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall constitute a waiver or release of any claims by or Claims against or Interests in the Debtors, prejudice in any manner the rights of the Debtors or any other Person, or constitute an admission, acknowledgment, offer or undertaking by the Debtors or any Person.

9.5.    <u>Notice of Effective Date</u>

As soon as practicable after the Effective Date has occurred, the Plan Administrator shall file with the Bankruptcy Court a notice specifying the Effective Date.

## 10.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 10.1.    Subordinated Claims

The Debtors reserve the right to reclassify or modify the treatment of any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination rights, except to the extent the Debtors have otherwise agreed in writing with the Holder of the applicable Allowed Claim or Interest.

### 10.2.    Release of Liens

**Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and cancelled, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind Down Entities and their successors and assigns. Any Holder of such mortgage, deed of trust, Lien, pledge or other security interest (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Plan Administrator to evidence such release, including the execution, delivery and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

### 10.3.    Debtors' Release

**Except as otherwise specifically provided in the Plan with respect to the Preserved Potential Claims, for good and valuable consideration, including the service of the Released Parties and the Supporting Preferred Shareholders and their Affiliates (in their capacities as such) to facilitate the administration of the Chapter 11 Cases and the implementation of the orderly liquidation contemplated by the Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, the Released Parties and the Supporting Preferred Shareholders and their Affiliates (in their capacities as such) are hereby conclusively, absolutely, unconditionally, irrevocably and forever released, waived and discharged by the Debtors, the Plan Administrator and the Estates, including any successor to, or assignee of the Debtors or any Estate representative, from all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, and its successors, assigns and representatives, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, breach of contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Plan Administrator or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or**

Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the release of any mortgage, lien or security interest, the distribution of proceeds, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the administration of Claims and Interests prior to or during these Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party or Supporting Preferred Shareholder or their Affiliates (in their capacities as such) to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act; *provided* that the release under this <u>Section 10.4</u> shall not apply to (a) any Excluded Party, (b) Causes of Action to the extent arising out of conduct that occurred prior to the Petition Date, or (c) any Preserved Potential Claims to the extent such Preserved Potential Claims are brought by and for the benefit of the Wind Down Entities with the approval of the Plan Administrator.  Nothing in the Plan or Confirmation Order shall affect any releases previously granted or approved by the Court.

    10.4.   <u>Voluntary Release by Holders of Claims and Interests</u>

         **For good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, the implementation of the Plan, and the distribution of proceeds, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor, and its successors, assigns and representatives, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, breach of contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Plan Administrator, FTX DM, the Bahamas JOLs, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, FTX DM, the conduct of the businesses of the Debtors or FTX DM, these Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the Plan Supplement, the FTX DM Global Settlement Agreement or the Disclosure Statement, the administration of Claims and Interests prior to or during these Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the**

Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission with respect to Intercompany Claims, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act.  Nothing in this <u>Section 10.5</u> shall cause the release of (a) any Excluded Party, (b) Causes of Action to the extent arising out of conduct that occurred prior to the Petition Date, or (c) any Preserved Potential Claims that are otherwise transferred to, and may be prosecuted by, the Wind Down Entity pursuant to the terms of the Plan.

      10.5.   <u>FTX DM and JOL Releases</u>

      The releases in the FTX DM Global Settlement Agreement are hereby expressly incorporated and repeated herein.  Nothing in the Plan or Confirmation Order shall affect the releases previously granted or approved by the Court pursuant to the order approving the FTX DM Global Settlement Agreement.

      10.6.   <u>Scope of Releases</u>

      Each Person providing releases under the Plan, including the Debtors, the Plan Administrator, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

      10.7.   <u>Exculpation</u>

      Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring advisors and other professional advisors, representatives and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation.

      As of the Effective Date, to the fullest extent permitted by applicable law, and without affecting or limiting the releases set forth in <u>Section 10.4</u> or <u>Section 10.5</u> of the Plan, the Exculpated Parties shall neither have nor incur any liability to any Entity for any act or omission occurring on or after the Petition Date and on or before the Effective Date in connection with, related to, or arising out of these Chapter 11 Cases, including (a) the

administration and adjudication of Claims and Interests during these Chapter 11 Cases; (b) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Plan, the Disclosure Statement, the Plan Supplement or any related contract, instrument, release or other agreement or document created or entered into in connection with the Chapter 11 Cases (including the solicitation of votes for the Plan and other actions taken in furtherance of Confirmation and Consummation of the Plan, the trading or sale of cryptocurrencies and tokens in connection with the Chapter 11 Cases, the offer and issuance of any securities under or in connection with the Plan and the distribution of property, Digital Assets, or tokens under the Plan); or (c) any other transaction, agreement, event, or other occurrence related to these Chapter 11 Cases taking place on or before the Effective Date, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.  Notwithstanding anything contained herein to the contrary, the foregoing exculpation does not exculpate any Excluded Party.  Nothing in the Plan or Confirmation shall affect any exculpation orders previously granted or approved by the Court.

10.8.    Injunction

Except as otherwise expressly provided in the Plan or Confirmation Order with respect to Preserved Potential Claims, the satisfaction and release pursuant to this **Article 10** shall also act as a permanent injunction against any Person who has held, holds or may hold Claims, Interests or Causes of Action from (a) commencing or continuing any action to collect, enforce, offset, recoup or recover with respect to any Claim, liability, obligation, debt, right, Interest or Cause of Action released, settled or exculpated under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including to the extent provided for or authorized by sections 524 or 1141 thereof, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claims or Interests; and (d) asserting any right of setoff that was not validly asserted before Confirmation, or subrogation of any kind on account of or in connection with or with respect to any such Claim or Interest, against any Plan Asset, the Wind Down Entities, any Holder of a Claim or Interest or any initial or subsequent transferee.  Notwithstanding anything to the contrary in the Plan, all Holders of Claims, Interests or Causes of Action are enjoined from interfering with the Distributions contemplated by the Plan and from asserting any Claim or Cause of Action expressly preserved and vested exclusively in the Wind Down Entities as of the Effective Date.

10.9.    Limitations on Exculpations and Releases

Notwithstanding anything to the contrary herein, none of the releases or exculpations set forth herein shall operate to waive or release any obligation or Causes of Action of any Person or Entity:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan or documents, agreements or instruments executed in connection therewith, including all post-Effective Date obligations,

-78-

**(b)** arising under the FTX DM Global Settlement Agreement or **(c)** solely in the case of releases, expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, including the Preserved Potential Claims.

## 11.  MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### 11.1.  Modification of Plan

Subject to the limitations contained in the Plan:  (a) the Debtors reserve the right, in consultation with the Supporting Parties and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications with respect to the treatment of Classes 3A, 5A, 5B, 6A, 6B 7A, 7B, 7C, 8B, 8C, 10A, 10B, 10C or 12 to satisfy section 1129(b) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtors or the Plan Administrator, as applicable, may, in consultation with the Supporting Parties and upon order of the Bankruptcy Court, (i) amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or (ii) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; *provided* that in each case of clauses (a) and (b), to the extent any such amendments or modifications would adversely affect the amount or timing of Distributions or the rights or powers of the Plan Administrator, Advisory Committee or the Appointed Director, such amendments or modifications shall be in form and substance reasonably acceptable to the Supporting Parties.

### 11.2.  Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3.  Revocation of Plan

The Debtors reserve the right, in consultation with the Supporting Parties, to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, if the Confirmation Order is not entered or the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Causes of Action, Claims by or Claims against, or any Interests in, any Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## 12.    RETENTION OF JURISDICTION

### 12.1.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its existing exclusive jurisdiction over all matters arising in or out of, or related to, these Chapter 11 Cases or the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any General Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims or Interests;

(b)    Conduct a Joint Claims Hearing in accordance with the FTX DM Global Settlement Agreement;

(c)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(d)    Resolve any matters related to:  (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including any disputes regarding cure obligations; and (ii) any dispute regarding whether a contract or lease is, or was, executory or expired;

(e)    Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the Plan and adjudicate any and all disputes from, or relating to Distributions under the Plan;

(f)    Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and Causes of Action, including the Preserved Potential Claims, and grant or deny any applications;

(g)    Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)    Enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or

documents created in connection with the Plan, Plan Supplement or the Disclosure Statement;

(i)    Enter, adjudicate and enforce any order for the sale of property pursuant to section 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)    Adjudicate, decide or resolve any and all disputes as to the ownership of any Claim or Interest;

(k)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan;

(l)    Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the existence, nature and scope of the releases, injunctions and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement and enforce such releases, injunctions and other provisions;

(m)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Plan Administration Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Plan Supplement or the Disclosure Statement;

(o)    Enter an order or final decree concluding or closing these Chapter 11 Cases;

(p)    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(q)    Hear and determine disputes, cases, controversies or Causes of Action arising in connection with the interpretation, implementation or enforcement of the Plan, including the releases or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(r)    Hear and determine all disputes relating to any liability arising out of the termination of employment or the termination of any employee or retirement benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(s)     Enforce and adjudicate all orders previously entered by the Bankruptcy
        Court; and

(t)     Hear any other matter not inconsistent with the Bankruptcy Code, the Plan
        or the Confirmation Order.

## 13.   MISCELLANEOUS PROVISIONS

### 13.1.   Immediate Binding Effect

Notwithstanding Bankruptcy Rule 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### 13.2.   Additional Documents; Further Assurances

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Plan Administrator and all Holders of Claims or Interests receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### 13.3.   Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (a) any Debtor with respect to the Holders of Claims or Interests or any other Entity or (b) any Holder of a Claim or an Interest or any other Entity prior to the Effective Date.

### 13.4.   Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### 13.5.   Term of Injunction or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

13.6.    Entire Agreement

On the Effective Date, the Plan and the Plan Supplement shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations with respect to the subject matter hereof and thereof, all of which have become merged and integrated into the Plan.

13.7.    Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents may be obtained upon written request to the Debtors' counsel at the address below or by downloading such exhibits and documents from the website of the Debtors' Notice and Claims Agent, at https://restructuring.ra.kroll.com/FTX/ or the Bankruptcy Court's electronic docket for the Debtors' Chapter 11 Cases at https://.ecf.deb.uscourts.gov/ (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.uscourts.gov).  In addition, copies of such exhibits and documents may be requested from the Notice and Claims Agent at (888) 482-0049 (U.S./Canada) or (646) 440-4176 (International).

13.8.    Nonseverability of Plan Provisions upon Confirmation

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

13.9.    Dissolution of Official Committee

On the Effective Date, the Official Committee shall dissolve and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that the Official Committee will stay in existence solely for the limited purpose of (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions, litigation or appeals seeking enforcement of the provisions of the Plan or under the Confirmation Order, and (c) motions, litigation or appeals pending on the Effective Date in which the Committee is a party; *provided, further*, that, with respect to pending appeals and related proceedings, the Official Committee shall continue to comply with sections 327, 328, 329, 330, 331 and 1103 of the Bankruptcy Code and the Professional Fee Order in seeking compensation for services rendered.

13.10.  <u>Termination of Fee Examiner's Appointment</u>

Upon the resolution of all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code by professionals subject to review by the Fee Examiner, the Fee Examiner's appointment shall terminate, and the Fee Examiner shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

13.11.  <u>Debtors' Directors and Officers</u>

On the Effective Date, each of the Debtors' directors and officers shall be released and discharged from their duties and terminated automatically without the need for any corporate action or approval and without the need for any corporate filings and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.

13.12.  <u>Closing of Chapter 11 Cases</u>

The Plan Administrator shall, promptly after the full administration of these Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.  The Plan Administrator may also, in its discretion, file the necessary documents to close any individual Debtor's case at any appropriate time.

13.13.  <u>Conflicts</u>

Except as set forth in the Plan, to the extent that any provisions of the Disclosure Statement, the Plan Supplement or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent any provision of the Plan, Disclosure Statement, the Plan Supplement or any other document referenced in the Plan (or any exhibits, appendices, supplements or amendments to any of the foregoing) conflicts with or is in any way inconsistent with the Confirmation Order, the Confirmation Order shall govern and control.

13.14.  <u>No Stay of Confirmation Order</u>

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

13.15.  <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

13.16.  <u>Post-Effective Date Service</u>

After the Effective Date, the Debtors, Wind Down Entities (including, for the avoidance of doubt, the FTX Recovery Trust), or Plan Administrator, as applicable are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed renewed requests for service after the Effective Date.  For the avoidance of doubt, the Debtors, Wind Down Entities (including the FTX Recovery Trust), or Plan Administrator, as applicable shall comply in all respects with Bankrupcy Rule 2002-1(b).

13.17.  <u>Notices</u>

All notices, requests, pleadings and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)     If to the <u>Debtors</u>, to:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attn:   Andrew G. Dietderich
        James L. Bromley
        Brian D. Glueckstein
        Alexa J. Kranzley
E-mail:   dietdericha@sullcrom.com
          bromleyj@sullcrom.com
          gluecksteinb@sullcrom.com
          kranzleya@sullcrom.com

and

Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Attn:   Adam Landis
        Kimberly A. Brown
        Matthew R. Pierce
E-mail:   landis@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

(b)     If to the <u>Official Committee</u>, to:

Paul Hastings LLP
200 Park Avenue

New York, NY 10166
Attn:  Kristopher M. Hansen
        Kenneth Pasquale
        Erez E. Gilad
        Gabriel E. Sasson
        Isaac S. Sasson
E-mail:    krishansen@paulhastings.com
            kenpasquale@paulhastings.com
            erezgilad@paulhastings.com
            gabesasson@paulhastings.com
            isaacsasson@paulhastings.com

and

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Attn:  Matthew B. Lunn
        Robert F. Poppiti, Jr.
E-mail:   mlunn@ycst.com
            rpoppiti@ycst.com

(c)      If to the Ad Hoc Committee, to:

Eversheds Sutherland (US) LLP
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Attn:   Erin E. Broderick
        Michael A. Rogers
E-mail:   erinbroderick@eversheds-sutherland.com
            michaelrogers@eversheds-sutherland.com

and

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Attn:   Matthew B. Harvey
        Jonathan M. Weyand
E-mail:   mharvey@morrisnichols.com
            jweyand@morrisnichols.com

(d)      If to the U.S. Trustee, to:

United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building

-88-

844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Attn:  Benjamin A. Hackman
       Linda Richenderfer
E-mail:   Benjamin.A.Hackman@usdoj.gov
          Linda.Richenderfer@usdoj.gov

(e)     If to the Bahamas JOLs, to:

White & Case LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Attn:  Brian Pfeiffer
       Chris Shore
E-mail:   brian.pfeiffer@whitecase.com
          cshore@whitecase.com

Dated:  September 30, 2024
Wilmington, Delaware

FTX Trading Ltd., on behalf of itself and all other Debtors

By:  _/s/ John J. Ray III_

Name:  John J. Ray III

Title:  Chief Executive Officer and Chief Restructuring Officer

# **Exhibit B**

## **Notice of Confirmation**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Ref. No.** |

## NOTICE OF EFFECTIVE DATE OF
## THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF FTX TRADING LTD. AND ITS DEBTOR AFFILIATES

       **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Court"), entered the *Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. [●]] (the "Confirmation Order"). The Confirmation Order, among other things, confirmed the *Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [D.I. [●]] (including the Plan Supplement and all other exhibits and schedules thereto, as may be amended, modified or supplemented from time to time in accordance with its terms and the terms hereof, the "Plan").[2]

       **PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the Effective Date of the Plan occurred. All conditions precedent to the Effective Date set forth in Article 9 of the Plan have either been satisfied or waived in accordance with the Plan and the Confirmation Order.

       **PLEASE TAKE FURTHER NOTICE** that in accordance with Section 3.1 of the Plan, any Holder of an Administrative Claim (except as otherwise provided in the Plan) that accrued on or before the Effective Date must file and serve a request for payment of such Administrative Claim on the Plan Administrator **on or before 4:00 p.m. (prevailing Eastern Time) on the 30th day after the Effective Date** (the "Administrative Claim Bar Date"). Any Holder of an Administrative Claim who is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order on or prior to the Administrative Claim Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Debtors, the Wind Down Entities

---

[1]    The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

{1368.002-W0077668.}

or their respective properties.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Article 6 of the Plan, any Claim arising from or relating to the rejection of an Executory Contract or Unexpired Lease ("Rejection Claims") pursuant to the Plan must be filed with the Notice and Claims Agent **on or before 4:00 p.m. (prevailing Eastern Time) on the earlier of (a) the 30th day after entry by the Court of an order providing for the rejection of such Executory Contract or Unexpired Lease and (b) the 30th day after the Effective Date**; *provided* that the deadline for filing any Rejection Claims in connection with any Executory Contract or Unexpired Lease rejected pursuant to a prior order of the Court shall be the date set forth in the respective order authorizing such rejection (the "Rejected Contract Claims Bar Date").  Any holder of a such Rejection Claim that is required to, but does not, file a Rejection Claim with the Notice and Claims Agent by the Rejected Contract Claims Bar Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind Down Entities, the Plan Administrator or any of their respective properties.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Article 7.11 of the Plan, all Bahamas Customers forever, fully and finally release and discharge the Debtors with respect to any Dotcom Customer Entitlement Claims and Dotcom Convenience Claims and forever, fully and finally withdraw with prejudice such Dotcom Customer Entitlement Claims and Dotcom Convenience Claims from these Chapter 11 Cases.  No Bahamas Customer who timely made a valid Bahamas Opt-In Election shall receive any Distribution under the Plan on account of any Dotcom Customer Entitlement Claims or Dotcom Convenience Claims.

**PLEASE TAKE FURTHER NOTICE** that Article 10 of the Plan and the Confirmation order contain certain release, exculpation and injunction provisions that are binding on the Holders of Claims and Interests as set forth in more detail in the Plan and Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Consolidated Wind Down Trust, the Wind Down Entities and any Holder of a Claim or an Interest and such Holder's respective successors and assigns, regardless of whether the Claim or the Interest of such Holder is Impaired under the Plan, and regardless of whether such Holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and Confirmation Order in their entirety.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan and other documents filed in the Chapter 11 Cases may be obtained from the Court's website, https://deb.uscourts.gov, for a nominal fee, or obtained free of charge by accessing the website of the Debtors' claims and noticing agent, https://restructuring.ra.kroll.com/ftx/.

Dated:  [●], 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
E-mail:  landis@lrclaw.com
         mcguire@lrclaw.com
         brown@lrclaw.com
         pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  dietdericha@sullcrom.com
         bromleyj@sullcrom.com
         gluecksteinb@sullcrom.com
         kranzleya@sullcrom.com

*Counsel for the Debtors and Debtors-in-Possession*

## <u>CERTIFICATE OF SERVICE</u>

I, Sameen Rizvi, do hereby certify that on October 21, 2024, a copy of the foregoing *Notice of Appeal* was served on the parties listed on the attached service list in the manner indicated.

<div style="text-align:right">

*/s/ Sameen Rizvi*_____
Sameen Rizvi (No. 6902)

</div>

**FTX TRADING LTD. *et al.*  Case No. 22-11068 (JTD)**
<u>**SERVICE LIST**</u>

<u>**Counsel to the Debtors**</u>

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Kimberly A. Brown, Esq.
Matthew R. Pierce, Esq.
LANDIS RATH & COBB LLP
919 N. Market Street, Suite 1800
Wilmington, DE 19801
Email: landis@lrclaw.com
         mcguire@lrclaw.com
         brown@lrclaw.com
         pierce@lrclaw.com

**By Email**

Benjamin A. Hackman, Esq.
Linda Richenderfer, Esq.
Johnathan Lipshie, Esq.
OFFICE OF THE UNITED STATES
TRUSTEE
844 King Street
Suite 2207
Wilmington, DE   19801
Email: linda.richenderfer@usdoj.gov
         benjamin.a.hackman@usdoj.gov
         jon.lipshie@usdoj.gov

-and-

David Gerardi, Esq.
Trial Attorney
One Newark Center
1085 Raymond Boulevard Suite 2100
Newark, NJ 0710
Email:  david.gerardi@usdoj.gov

**By Email**

<u>**Counsel to the Debtors**</u>

Andrew G. Dietderich, Esq.
James L. Bromley, Esq.
Brian D. Glueckstein, Esq.
Alexa J. Kranzley, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Email: dietdericha@sullcrom.com
         bromleyj@sullcrom.com
         gluecksteinb@sullcrom.com
         kranzleya@sullcrom.com

**By Email**

<u>**Counsel to the Official Committee of Unsecured Creditors**</u>

Kristopher M. Hansen, Esq.
Ken Pasquale, Esq.
Gabriel E. Sasson, Esq.
Isaac S. Sasson, Esq.
Leonie C. Koch, Esq.
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Email: krishansen@paulhastings.com
         kenpasquale@paulhastings.com
         gabesasson@paulhastings.com
         isaacsasson@paulhastings.com
         leoniekoch@paulhastings.com

**By Email**

2

**FTX TRADING LTD.** *et al.*   **Case No. 22-11068 (JTD)**
<u>SERVICE LIST</u>

<u>Counsel to the Official Committee of Unsecured Creditors</u>

Matthew B. Lunn, Esq.
Robert F. Poppiti, Jr. Esq.
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
1000 North King Street
Wilmington, DE 19801
Email: mlunn@ycst.com
        rpoppiti@ycst.com

**By Email**
<u>Counsel to the Ad Hoc Committee of Non-US Customers of FTX.com</u>

Matthew B. Harvey, Esq.
Jonathan M. Weyand, Esq.
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP,
1201 North Market Street, 16thFloor,
Wilmington, Delaware 19801
Email: mharvey@morrisnichols.com
        jweyand@morrisnichols.com

**By Email**

<u>Counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd.</u>

Kevin Gross, Esq.
Paul N. Heath, Esq.
Brendan J. Schlauch, Esq.
David T. Queroli, Esq.
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Email: gross@rlf.com
        heath@rlf.com
        schlauch@rlf.com
        queroli@rlf.com

**By Email**

<u>Counsel to the Ad Hoc Committee of Non-US Customers of FTX.com</u>

Erin E. Broderick, Esq.
Michael A. Rogers, Esq.
EVERSHEDS SUTHERLAND (US) LLP
227 West Monroe Street, Suite 6000
Chicago, Illinois 60606
Email: erinbroderick@eversheds-sutherland.com
        michaelrogers@eversheds-sutherland.com

**By Email**

<u>Counsel to the Ad Hoc Committee of Non-US Customers of FTX.com</u>

Sarah E. Paul, Esq.
EVERSHEDS SUTHERLAND (US) LLP
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, New York 10036
Email: sarahpaul@eversheds-sutherland.com

**By Email**

<u>Counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd</u>

Thomas E Lauria, Esq.
Richard S. Kebrdle, Esq.
WHITE & CASE LLP
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Email: tlauria@whitecase.com
        rkebrdle@whitecase.com

**By Email**

**FTX TRADING LTD.** *et al.*  **Case No. 22-11068 (JTD)**
<u>**SERVICE LIST**</u>

<u>**Counsel to the Joint Official Liquidators and Foreign Representatives of FTX Digital Markets Ltd.**</u>

J. Christopher Shore, Esq.
Brian D. Pfeiffer, Esq.
Ashley R. Chase, Esq.
Brett L. Bakemeyer, Esq.
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Email:  cshore@whitecase.com
      brain.pfeiffer@whitecase.com
      ashley.chase@whitecase.com
      brett.bakemeyer@whitecase.com

**By Email**

<u>**Counsel to MDL Plaintiffs**</u>

David Boies, Esq.
Alexander Boies, Esq.
Brooke A. Alexander, Esq.
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Email:  dboies@bsfllp.com
      aboies@bsfllp.com
      balexander@bsfllp.com

**By Email**

<u>**Counsel to MDL Plaintiffs**</u>

Ronald S. Gellert, Esq.
Bradley P. Lehman, Esq.
GELLERT SEITZ BUSENKELL
& BROWN, LLC
1201 N. Orange St., Ste. 300
Wilmington, Delaware 19801
Email:  rgellert@gsbblaw.com
      blehman@gsbblaw.com

**By Email**

<u>**Counsel to MDL Plaintiffs**</u>

Adam M. Moskowitz, Esq.
Joseph M. Kaye, Esq.
THE MOSKOWITZ LAW FIRM, PLLC
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Email:  adam@moskowitz-law.com
      joseph@moskowitz-law.com
      service@moskowitz-law.com

**By Email**

4

**FTX TRADING LTD.** *et al.* **Case No. 22-11068 (JTD)**
<u>**SERVICE LIST**</u>

**Counsel for Adversary Class Action Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar**

Robert K. Kriner, Jr., Esq.
Scott M. Tucker, Esq.
CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
2711 Centerville Rd, Suite 201
Wilmington, Delaware 19808
Email: robertkriner@chimicles.com
      scotttucker@chimicles.com

**By Email**

**Counsel for Adversary Class Action Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar**

Robert N. Cappucci, Esq.
Joshua K. Porter, Esq.
230 Park Avenue, 3rd Floor
New York, NY 10169
Email: rcappucci@entwistle-law.com
      jporter@entwistle-law.com

**By Email**

**Counsel for Adversary Class Action Plaintiffs Austin Onusz, Cedric Kees van Putten, Nicholas J. Marshall and Hamad Dar**

Andrew J. Entwistle, Esq.
ENTWISTLE & CAPPUCCI LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Email: aentwistle@entwistle-law.com

**By Email**

The Honorable John T .Dorsey
Chief Judge of the U.S. Bankruptcy Court
For the District of Delaware
824 N. Market Street, 5th Floor
Wilmington, Delaware 19801

**By Email**

5

11837625