**Exhibit 1**

**Settlement Agreement**

# SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement") is made and entered into as of September 23, 2024 by (a) FTX Trading Ltd., Alameda Research LLC, Alameda Research Ltd., North Dimension Inc., Cottonwood Grove Ltd., and West Realm Shires, Inc., (the "Debtor Plaintiffs"), (b) Austin Onusz, Cedric Kees Van Putten, Nicholas J. Marshall, and Hamad Dar (the "Onusz Plaintiffs," and together with the Debtor Plaintiffs, the "Plaintiffs"), and (c) Caroline Ellison ("Ellison"). Plaintiffs and Ellison (each a "Party" and together, the "Parties") hereby agree as follows:

## RECITALS

WHEREAS, on November 11 and November 14, 2022, the Debtor Plaintiffs each filed petitions for voluntary relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are being jointly administered in the case captioned *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.) along with the other debtors and debtors in possession (collectively, the "Debtors");

WHEREAS, on December 18, 2022, Ellison entered into an agreement (the "Plea Agreement") with the United States Attorney's Office for the Southern District of New York to plead guilty to the charges in a seven-count superseding information (the "Information") filed in the Southern District of New York (the "Criminal Case"). *See United States* v. *Ellison*, Case No. 22-cr-00673-LAK-3 (S.D.N.Y.), ECF No. 8;

WHEREAS, pursuant to the Plea Agreement, Ellison was required to, and has, cooperated with the U.S. Attorney's Office, including in connection with its prosecution of Samuel Bankman-Fried in the case of *United States* v. *Bankman-Fried*, Case No. 22-cr-00673-LAK-1 (S.D.N.Y.);

WHEREAS, the Plea Agreement requires, among other things, that Ellison forfeit to the United States all property derived from, or used to facilitate, the offenses in the Information;

WHEREAS, on December 27, 2022, the Onusz Plaintiffs, on behalf of themselves and all others similarly situated, commenced Adversary Proceeding No. 22-50513 (the "Onusz Adversary Proceeding") in the Bankruptcy Court against FTX Trading Ltd., West Realm Shires Inc., Alameda Research LLC, Ellison and others by filing an eight-count complaint alleging claims of breach of contract, breach of fiduciary duty, negligence, conversion, aiding and abetting breach of fiduciary duties, and aiding and abetting conversion (the "Onusz Claims");

WHEREAS, on July 20, 2023, the Debtor Plaintiffs commenced Adversary Proceeding No. 23-50448 (the "Debtor Adversary Proceeding" and together with the Onusz Adversary Proceeding, the "Adversary Proceedings") in the Bankruptcy Court against Ellison and others by filing a forty-eight count complaint alleging breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, waste of corporate assets, aiding and abetting waste of corporate assets, and conversion, and seeking to avoid and recover certain transfers made by the Debtor Plaintiffs to Ellison (the "Debtor Claims," and together with the Onusz Claims, the "Claims");

WHEREAS, on September 23, 2024, Ellison provided the Debtor Plaintiffs a Statement of Personal Assets and Liabilities (the "Asset Statement"), which she attests is true and accurate in all material respects as of September 9, 2024;

WHEREAS, the Parties anticipate that the U.S. Department of Justice ("DOJ") and Ellison will seek the entry of a final order of forfeiture ("Forfeiture Order") and/or a substitute assets order ("Substitute Assets Order") in the Criminal Case that will require Ellison to forfeit certain specified assets;

WHEREAS, the Parties have been engaged in good faith, arm's-length negotiations about resolving the Claims;

WHEREAS, in order to avoid the expense, burden and inconvenience of litigation, the Parties desire and intend to effect a final settlement and resolution of the Claims asserted against Ellison in the above-referenced Adversary Proceedings; and

WHEREAS, the Debtor Plaintiffs and the Onusz Plaintiffs have each worked diligently to prosecute their claims with the intent to maximize recovery for the Debtors' bankruptcy estates, and have each concluded, in their reasonable judgment, that final settlement and resolution of the Claims against Ellison in the above-referenced Adversary Proceedings in accordance with the terms of this Agreement is in the best interest of the Plaintiffs, their creditors and other stakeholders.

**AGREEMENT**

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1. Recitals Incorporated. The recitals set forth above are hereby incorporated in full and made a part of this Agreement.

2. Bankruptcy Court Approval Required. This Agreement is subject to the approval of the Bankruptcy Court evidenced by entry of a written order in a form agreeable to the Parties (an "Approval Order"). The Debtor Plaintiffs shall file a motion in form seeking entry of the Approval Order within ten (10) business days following execution of this Agreement by all Parties. In the event that the Bankruptcy Court declines to approve this Agreement, or the Approval Order does not become final and non-appealable, this Agreement shall become null and void and of no further force and effect.

3. Settlement Effective Date. The terms of this Agreement shall become effective upon the Approval Order becoming final and non-appealable (the "Settlement Effective Date").

4. Settlement Amount. Within twenty (20) business days of the later of the Settlement Effective Date, and the entry of the (i) Forfeiture Order, (ii) Substitute Assets Order, and (iii) final judgment of conviction in the Criminal Case, Ellison shall take all actions in her

power necessary to transfer, assign, or cause to be transferred or assigned to the Debtor Plaintiffs any and all of Ellison's assets (net of taxes and expenses associated with the transfer) included on the Asset Statement (including her shares of Anthropic PBC or the net proceeds of the sale thereof) that are not subject to forfeiture pursuant to the Forfeiture Order, whether directly or as substitute assets pursuant to the Substitute Assets Order, or payable as restitution or fines, pursuant to a judgment of conviction in the Criminal Case, except for (i) any physical personal property and (ii) amounts sufficient to pay reasonable attorneys' fees and expenses that she has incurred and expects to incur not to exceed $1.5 million (the "Settlement Amount"). The Debtor Plaintiffs shall provide all payment instructions and such additional information as is necessary for Ellison to properly disburse, record, and account for the Settlement Amount.

5. **Debtor Plaintiffs' Dismissal With Prejudice**. Within five (5) business day of the earlier of (i) the Debtor Plaintiffs' receipt of the Settlement Amount or (ii) the entry of a Forfeiture Order and judgment of conviction in the Criminal Case, which, pursuant to Paragraph (4) above, results in the Settlement Amount being zero, the Debtor Plaintiffs shall file with the Bankruptcy Court a Notice of Dismissal with Prejudice of the Debtor Claims against Ellison in the Debtor Adversary Proceeding.

6. **Onusz Plaintiffs' Dismissal With Prejudice**. Within five (5) business day of the earlier of (i) the Debtor Plaintiffs' receipt of the Settlement Amount or (ii) the entry of a Forfeiture Order and judgment of conviction in the Criminal Case, which, pursuant to Paragraph (4) above, results in the Settlement Amount being zero, the Onusz Plaintiffs shall file with the Bankruptcy Court a Notice of Dismissal with Prejudice of the Onusz Claims against Ellison in the Onusz Adversary Proceeding.

7. **Cooperation**. Upon reasonable request, Ellison shall voluntarily and without the need for any subpoena or other legal process make all reasonable efforts to cooperate with the Debtors (and, in coordination with the Debtors, the Onusz Plaintiffs), subject to any limitations imposed on her by the DOJ or applicable law, including as follows:

    (a) Subject to the limitations of any applicable privilege, Ellison shall provide to the Debtors such documents and other materials relating to the Debtors and their operations as the Debtors may reasonably request;

    (b) Ellison shall assist the Debtors in reviewing and clarifying documents (from whatever source obtained), locating and retrieving assets, and answering such questions as the Debtors may have;

    (c) Ellison shall cooperate in good faith and use all reasonable efforts (including providing truthful oral or written testimony) to authenticate, establish as business records and provide other foundation for documents and/or things she has produced to the Debtors or that are in the Debtors' possession, custody, or control, as may be necessary;

    (d) Subject to the limitations of any applicable privilege, including the attorney-client privilege, Ellison shall provide the Debtors with information; attend proffer sessions

or interviews; and make herself available to testify at any deposition, hearing, trial, or other proceeding as the Debtors deem necessary. Should service be necessary, Ellison agrees to voluntarily accept service of any subpoena under Federal Rule of Civil Procedure 45 (or equivalent) served by the Debtors; and

(e) Ellison shall not object to any request or application made, or position taken, by the Debtors with respect to the distribution of any assets forfeited in the Criminal Case, including with respect to any petition for remission.

8. <u>Reimbursement for Legal Fees Incurred in Connection with Cooperation</u>. In recognition of the substantial benefits to the Debtors of the cooperation or assistance set forth in paragraph 7, the Debtors agree to reimburse Ellison for reasonable attorney's fees and expenses incurred following the Settlement Effective Date in connection with providing such cooperation or assistance, specifically including fees incurred in connection with testimony at a deposition for any proceeding related to the Chapter 11 Cases (the "<u>Cooperation Fees</u>"). The Debtors shall provide such reimbursement within thirty (30) days of receipt from Ellison of appropriate documentation (as reasonably determined by the Debtors) of the fees and expenses, without the need for further application or order. Such reasonable attorney's fees and expenses to be reimbursed by the Debtors shall be in addition to the amount up to $1.5 million of reasonable attorney's fees and expenses referenced in clause (ii) of the first sentence of paragraph 4 above.

9. <u>Assignment of Ownership Interests</u>. Ellison transfers and assigns to the Debtors, upon filing of the Notice of Dismissal with Prejudice set forth in paragraph 5, any and all equity, ownership rights or other interests (*e.g.*, stock options, call options, RSUs) she may have in any Debtor or Debtor affiliate, including any tokenized or other digital assets or interests relating to the Debtors or their affiliates, and any future entitlement to such equity, ownership rights or other interests, to the extent any such equity, ownership rights or other interests are not forfeited pursuant to the Forfeiture Order. Ellison shall take all steps reasonably requested by the Debtors to effectuate such transfers and assignments.

10. <u>Assignment of Rights to Cryptocurrency Assets</u>. Ellison transfers and assigns to the Debtors, upon filing of the Notice of Dismissal with Prejudice set forth in paragraph 5, any and all right or entitlement she has to any wallets, keys, accounts, or other repositories or rights of access for cryptocurrency or related assets, including but not limited to accounts held in her name on any cryptocurrency exchanges. Ellison shall take all steps reasonably requested by the Debtors to effectuate such transfers and assignments.

11. <u>Sentencing Submission</u>. The Debtors agree to provide Ellison a letter in connection with her sentencing in the Criminal Case at least fourteen (14) days prior to the scheduled hearing date, currently set for September 24, 2024. The letter shall describe the information and cooperation Ellison has provided to the Debtor Plaintiffs.

12. <u>Release of Claims by Ellison</u>. Upon the filing of the Notices of Dismissal with Prejudice set forth in paragraphs 5 and 6, Ellison and each of Ellison's successors, heirs and assigns (collectively, the "<u>Ellison Related Parties</u>" and each, an "<u>Ellison Related Party</u>") fully and forever releases, waives, discharges and acquits the Onusz Plaintiffs and

the Debtors and their estates, subsidiaries and affiliates (including all predecessors, successors, and assigns of any of the foregoing) of and from and against any and all claims, demands, obligations, duties, liabilities, damages, expenses, indebtedness, debts, breaches of contract, duty or relationship, acts, omissions, misfeasance, malfeasance, causes of action, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and remedies therefor, choses in action, rights of indemnity or liability of any type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, and irrespective of how, why or by reason of what facts, whether known or unknown, which Ellison or any Ellison Related Party has or could have asserted against of the Debtors or the Onusz Plaintiffs; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Agreement.

13. <u>Release of Claims by the Debtors</u>. Upon the Debtors' receipt of the Settlement Amount, the Debtors and their estates, subsidiaries and affiliates (including all predecessors, successors, and assigns of any of the foregoing) fully and forever release, waive discharge, and acquit Ellison and the Ellison Related Parties, of and from and against any and all claims, demands, obligations, duties, liabilities, damages, expenses, indebtedness, debts, breaches of contract, duty or relationship, acts, omissions, misfeasance, malfeasance, causes of action, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and remedies therefor, choses in action, rights of indemnity or liability of any type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, and irrespective of how, why or by reason of what facts, whether known or unknown, which the Debtors and their estates, subsidiaries or affiliates (including all predecessors, successors, and assigns of any of the foregoing) have or could have asserted against any of Ellison or the Ellison Related Parties; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Agreement.

14. <u>Release of Claims by the Onusz Plaintiffs</u>. Upon the Debtors' receipt of the Settlement Amount, the Onusz Plaintiffs fully and forever release, waive discharge, and acquit Ellison and the Ellison Related Parties, of and from and against any and all claims, demands, obligations, duties, liabilities, damages, expenses, indebtedness, debts, breaches of contract, duty or relationship, acts, omissions, misfeasance, malfeasance, causes of action, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and remedies therefor, choses in action, rights of indemnity or liability of any type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, and irrespective of how, why or by reason of what facts, whether known or unknown, which the Onusz Plaintiffs have or could have asserted against any of Ellison or the Ellison Related Parties; provided, however, that the foregoing shall not release any obligations under or claim for breach of this Agreement.

15. <u>Express Preservation of Claims by the Debtor Plaintiffs</u>. For the avoidance of doubt, notwithstanding the foregoing, the Debtors' release of Debtor Claims in paragraph 13 above shall not include any claims asserted by the Debtor Plaintiffs against any defendants in the Debtor Adversary Proceeding other than Ellison.

16. <u>Express Preservation of Claims by the Onusz Plaintiffs</u>. For the avoidance of doubt,

notwithstanding the foregoing, the Onusz Plaintiffs' release of Claims in paragraph 14 above shall not include any claims asserted by the Onusz Plaintiffs against any defendants in the Onusz Adversary Proceeding other than Ellison.

17. <u>California Civil Code § 1542</u>. Without suggesting that California law is applicable, each Party expressly waives and relinquishes any and all provisions, rights and benefits conferred by California Civil Code § 1542 or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable or equivalent to California Civil Code § 1542 with respect to rights, claims, and interests released pursuant to this Agreement. Section 1542 provides that:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

18. <u>Binding Effect and Authorization</u>. Each Party represents and warrants that this Agreement is given in good faith and that entry into and execution of this Agreement is not the product or result of any duress, economic or otherwise. Each individual signing this Agreement on behalf of a Party or Parties has the power and authority (a) to enter into this Agreement on behalf of the Party or Parties on whose behalf he or she has signed and (b) to sign the Agreement. This Agreement shall be binding upon the Parties hereto and their predecessors, successors, and assigns.

19. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the Parties with respect to the matters addressed herein, and may not be changed, modified or altered in any manner, except in writing, signed by each Party.

20. <u>Execution in Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Any signature delivered by a Party electronically shall be deemed an original signature.

21. <u>Agreement Cooperation</u>. Each Party shall cooperate in good faith with each other Party and take such actions as are reasonably necessary to obtain approval of this Settlement Agreement by the Bankruptcy Court and entry of the Approval Order, and to effectuate its terms.

22. <u>Interpretation and Rules of Construction</u>. This Agreement is the product of arm's-length negotiations among the Parties and, in the enforcement or interpretation hereof, shall be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party's having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. Each Party was represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. All references to dollars or "$" in this Agreement refer to United States dollars. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

Docusign Envelope ID: C4D6E348-0ABC-4F6D-9BF9-1604850EF72A

Case 22-11068-JTD   Doc 27184-1   Filed 10/23/24   Page 8 of 9

23.  <u>Jurisdiction/Choice of Law</u>.  The Bankruptcy Court shall retain, and each of the Parties irrevocably consents to, exclusive jurisdiction with respect to all matters arising from or related to this Agreement, including, without limitation, for purposes of enforcing the terms and conditions of this Agreement.  This Agreement shall be governed by the domestic laws of the State of Delaware, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware.

24.  <u>No Waiver</u>.  No failure or delay by any Party in exercising any right, power, or privilege under this Agreement or applicable law shall operate as a waiver by that Party of any such right, power, or privilege.

25.  <u>Severability</u>.  If, after the Settlement Effective Date, any term, clause, or provision of this Agreement is invalidated or unenforceable by operation of law or otherwise, the Parties shall attempt in in good faith to negotiate a replacement, but legally valid, term, clause, or provision that best meets the intent of the Parties.  The remaining provisions of this Agreement shall remain in full force and effect.

26.  <u>Costs</u>.  Except as specifically set forth herein, each Party shall bear its own attorneys' fees and costs incurred in connection with this Agreement and completion of the transfers and other matters contemplated herein.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective authorized representatives.

| | |
|---|---|
| Dated:  September 23, 2024<br>Naples, Florida | John J. Ray III, solely in his capacity as Chief Executive Officer of the Debtor Plaintiffs,<br><br>By: _____<br>John J. Ray III |
| Dated:  September 23, 2024<br>New York, New York | Counsel for the Onusz Plaintiffs<br><br>By: _____<br>Andrew J. Entwistle<br>Entwistle & Cappucci LLP |

Dated: September 23, 2024  Caroline Ellison
New York, New York

By: *Caroline Ellison*
    Caroline Ellison

Dated: September 23, 2024  Counsel for Caroline Ellison
New York, New York

By: *[signature]*
    Peter Neiman
    Nicholas Werle
    Wilmer Cutler Pickering Hale and Dorr LLP