## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| FTX TRADING LTD., WEST REALM SHIRES SERVICES, INC., and ALAMEDA RESEARCH LTD., | |
| Plaintiffs, | Adv. Pro. No. 23-50759-JTD |
| - against - | |
| MIRANA CORP., BYBIT FINTECH LTD., TIME RESEARCH LTD., SIN WEI "SEAN" TAN, WEI LIN "GERMAINE" TAN, WEIZHENG YE, and NASHON LOO SHUN LIANG, | **Hearing Date: Nov. 20, 2024 at 2:00 P.M. (ET)**<br>**Obj. Deadline: Nov. 7, 2024 at 4:00 P.M. (ET)** |
| Defendants. | |

**PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE PLAINTIFFS' ENTRY INTO, AND PERFORMANCE UNDER, THE SETTLEMENT AGREEMENT WITH DEFENDANTS, (B) APPROVING THE SETTLEMENT AGREEMENT, AND (C) GRANTING RELATED RELIEF**

FTX Trading Ltd. ("FTX.com"), West Realm Shires Services, Inc. ("FTX US"),

and Alameda Research Ltd. ("Alameda," and together with FTX.com and FTX US, the

"Plaintiffs" and collectively with their affiliated debtors and debtors-in-possession the

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

"Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the

form attached hereto as Exhibit A (the "Order"), pursuant to section 105(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing the Plaintiffs'

entry into, and performance under, the settlement agreement, a copy of which is attached as

Exhibit 1 to the Order (the "Settlement Agreement"),[2] between and among (i) the Plaintiffs, and

(ii) Mirana Corp. ("Mirana"), Bybit Fintech Ltd. ("Bybit"), Time Research Ltd. ("Time

Research"), Sin Wei "Sean" Tan ("Sean Tan"), Wei Lin "Germaine" Tan ("Germaine Tan"),

Weizheng Ye, and Nashon Loo Shun Liang ("Nashon Loo," and together with Mirana, Bybit,

Time Research, Sean Tan, Germaine Tan, and Weizheng Ye, the "Defendants") in the above-

captioned proceeding (the "Adversary Proceeding"), and (b) approving the Settlement

Agreement and granting related relief.  In support of the Motion, the Plaintiffs respectfully state

as follows:

### Preliminary Statement

1.      Following constructive negotiations, the parties have reached an

agreement that will allow the Debtors to promptly recover more than $225 million in value for

stakeholders, while also resolving a complex set of disputes between the parties without the

delay and cost of further litigation.

2.      This settlement relates to Plaintiffs' claims in the Adversary Proceeding

that (i) Bybit had refused to allow the Debtors to withdraw Debtor assets currently valued at

approximately $175 million and held in six accounts on the Bybit exchange (the "Bybit

Accounts"); (ii) Bybit and Mirana had violated the automatic stay by taking steps to devalue

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the
       Settlement Agreement.

certain BIT tokens held by the Debtors (the "BIT Tokens"); and (iii) Mirana, Time Research, Sean Tan, Germaine Tan, Weizheng Ye, and Nashon Loo (the "Transfer Defendants") had received the benefit of certain preferential and/or fraudulent transfers from their FTX.com and/or FTX US accounts during the ninety-day period prior to the commencement of the Debtors' Chapter 11 cases (the "Chapter 11 Cases"). The Defendants dispute these claims.

3.    Over the past months, the parties have engaged in lengthy, good faith negotiations regarding these claims, and ultimately reached a global settlement reflected in the Settlement Agreement, which provides, among other things:[3]

- Bybit shall allow the Debtors to withdraw all of the assets held in the Bybit Accounts;

- Mirana shall purchase the Debtors' 105,469,781 BIT Tokens at a price of $0.50 per BIT Token, representing a total purchase price of $52,734,890.50; and

- The Transfer Defendants shall each be granted an allowed customer claim in an amount equal to 75% of the aggregate balance as of the Petition Date of their respective FTX.com accounts, allowing the Transfer Defendants to recover approximately 100% of the Petition Date value of their on-exchange assets while nevertheless generating significant net savings for the Debtors' estates.[4]

4.    Plaintiffs believe that their claims in the Adversary Proceeding have merit. At the same time, Plaintiffs' claims for turnover, violations of the automatic stay, and fraudulent and preferential transfers are disputed, carry some degree of risk, and in any event would be time-consuming and expensive to further litigate. Certain Defendants also have argued that they

---

[3]    Any summary of the Settlement Agreement contained herein is qualified in its entirety by the actual terms and conditions of the Settlement Agreement. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Settlement Agreement, the actual terms and conditions of the Settlement Agreement shall control.

[4]    Mirana's allowed customer claim also shall be increased by approximately $2 million, representing 75% of the agreed purchase price for 5,469,781 of the Debtors' BIT Tokens.

are not subject to this Court's jurisdiction, that certain of these claims must be brought in other

fora, or that the relevant provisions of the Bankruptcy Code do not apply extraterritorially.

5.     Through the Settlement Agreement, the Debtors will be recovering

substantially everything that they seek to recover with respect to their turnover claims and claims

for violations of the automatic stay, as well as meaningful reductions to the Transfer Defendants'

customer claims against the Debtors.  The Settlement Agreement also allows the Debtors to

secure this significant recovery for their stakeholders while avoiding the expense, uncertainty,

and burden of continued litigation and any potential risks associated with enforcing any

judgment abroad.

6.     Plaintiffs' entry into, and performance under, the Settlement Agreement is

in the best interests of Plaintiffs' estates and all of their stakeholders, and is well within the range

of reasonableness.  Accordingly, Plaintiffs belief that the Settlement Agreement satisfies

Bankruptcy Rule 9019 and should be approved.

### Background

7.     On November 11 and November 14, 2022 (as applicable, the "Petition

Date"),[5] the Debtors filed with the Court voluntary petitions for relief under the Bankruptcy

Code.  The Debtors continue to operate their businesses and manage their properties as debtors-

in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     Joint administration of the Chapter 11 Cases was authorized by the Court

by entry of an order on November 22, 2022 [D.I. 128].

9.     Additional factual background relating to the Debtors' businesses and the

commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in*

---

[5]     November 11, 2022 is the Petition Date for all Debtors, except for Debtor West Realm Shires Inc.

*Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W.*

*Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the

*Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92] and the

*Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93].

### Facts Specific to the Relief Requested

10.     During the ninety-day period prior to the commencement of the

Chapter 11 Cases, the Transfer Defendants collectively received the benefit of withdrawals from

their FTX.com and FTX US accounts of certain digital assets and fiat currency (collectively, the

"Transfers").  Bybit also allegedly took steps to prevent the Debtors from withdrawing Debtor

assets currently valued at approximately $175 million and held in the Bybit Accounts, and

Plaintiffs asserted that Mirana and Bybit also had violated the automatic stay in the Chapter 11

Cases by taking actions that devalued the Debtors' BIT Tokens.

11.     Plaintiffs believe that they have meritorious claims to avoid and recover

the Transfers, recover the assets contained in the Bybit Accounts, recover damages resulting

from interference with the Debtors' BIT Tokens, and to disallow any claims of the Defendants

that have been asserted in these Chapter 11 Cases unless and until Defendants have relinquished

to Plaintiffs all property that they received in transfers that are determined by the Court to be

avoidable or subject to turnover.  On November 10, 2023, Plaintiffs commenced the Adversary

Proceeding by filing a complaint (the "Complaint") [Adv. D.I. 1], asserting claims for intentional

fraudulent transfers, preferential transfers, turnover, and violations of the automatic stay.

Plaintiffs sought to avoid and recover the Transfers, subject to potential "subsequent new value"

defenses arising from deposits into the Transfer Defendants' FTX.com and FTX US accounts

subsequent to these preferential transfers.

12.    Defendant Sean Tan timely filed a customer proof of claim against FTX.com (Claim No. 093201) for the balance of one FTX.com customer account as of the Petition Date.

13.    The Transfer Defendants maintained certain other FTX.com accounts as to which they did not file customer proofs of claim, and the aggregate Petition Date balances across the FTX.com accounts maintained by the Transfer Defendants totaled approximately $25 million.

14.    On February 6, 2024, Defendants moved to dismiss the Complaint in the Adversary Proceeding for failure to state a claim and, for certain Defendants, lack of personal jurisdiction [Adv. D.I. 31, 34, 38, 45] (the "Motions to Dismiss").  On April 8, 2024, Plaintiffs filed their opposition to the Motions to Dismiss [Adv. D.I. 62].  On May 8, 2024, Defendants filed their replies in support of the Motions to Dismiss [Adv. D.I. 70, 72, 73, 78].  Defendants believe their motions are meritorious; Plaintiffs disagree.

15.    Following extensive arm's length negotiations, on August 29, 2024, Plaintiffs and Defendants agreed to the principal terms of a global settlement.  The global settlement is reflected in the Settlement Agreement, dated as of October 24, 2024, which contemplates, among other things, (i) the Debtors' prompt recovery of assets currently valued at approximately $175 million held in the Bybit Accounts; (ii) Mirana's purchase of the Debtors' approximately 105 million BIT Tokens at $0.50 per token; (iii) the Debtors' allowance of the Transfer Defendants' customer claims in reduced amounts; (iv) the dismissal of the Adversary Proceeding with prejudice; and (v) the release of any claims the Debtors may have against the Defendants, and any claims the Defendants may have against the Debtors.

16.    In addition, and in connection with the Settlement Agreement and this Motion, the Debtors provided Bybit with evidence in the form of letters that the assets held in

three of the Bybit Accounts are property of the Debtors' estates.  Contemporaneously with this

Motion, the Debtors are also submitting the Declaration of Kumanan Ramanathan, attached as

Exhibit B hereto, who reviewed the Debtors' books and records and confirmed that all of the

Bybit Accounts are property of the Debtors' estates.

## Jurisdiction

17.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and

1409.  The statutory predicates for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Local Rule of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") 9013-1(f), Plaintiffs consent to the entry of a final order or judgment by the Court in

connection with this Motion to the extent it is later determined that the Court, absent consent of

the parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

## Relief Requested

18.     By this Motion, Plaintiffs request entry of the Order, substantially in the

form attached hereto as Exhibit A, (a) authorizing Plaintiffs' entry into, and performance under,

the Settlement Agreement, (b) approving the Settlement Agreement, and (c) granting certain

related relief.

**Basis for Relief**

I.    **The Settlement Agreement Satisfies Bankruptcy Rule 9019 Because it is Fair, Reasonable and in Plaintiffs' Best Interests.**

19.    Resolution of Plaintiffs' claims against Defendants through the Settlement Agreement is in the best interests of Plaintiffs and their estates because it will result in the prompt recovery of approximately $225 million in value for the Debtors, while also resolving costly, hard-fought litigation. Bybit's agreement to allow the Debtors to withdraw the entirety of the approximately $175 million in assets held in the Bybit Accounts provides the Debtors everything they sought to recover through their turnover claim. Mirana's agreement to purchase the Debtors' BIT Tokens for more than $50 million allows the Debtors to recover significant value for their illiquid and difficult-to-monetize holdings of a volatile asset. Additionally, the Transfer Defendants' agreement to accept a reduction in the amount of their customer entitlement claims provides the Debtors with more than $6 million in additional value while allowing the Transfer Defendants to recover, based on projected recoveries under the Debtors' confirmed Chapter 11 Plan, approximately 100% of the Petition Date value of their on-exchange assets. Accordingly, the proposed settlement likely would generate more value to Plaintiffs' estates on a risk-adjusted basis than if Plaintiffs were to continue litigating the Adversary Proceeding. Settlement on the proposed terms is thus a reasonable exercise of Plaintiffs' business judgment satisfying Bankruptcy Rule 9019.

20.    Bankruptcy Code Section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders*

*of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424 (1968) (*TMT Trailer Ferry*) (quoting *Case* v. *L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  The compromise or settlement of litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy" as such settlements "minimize litigation and expedite the administration of the estate."  *In re World Health Alts., Inc.*, 344 B.R. 291, 295-96 (Bankr. D. Del. 2006).

      21.      "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  Courts should not, however, substitute their judgment for that of the debtor, but instead should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and C*o., 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations omitted).  Taken together, section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  *See In re Marvel Ent. Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. at 801.

      22.      The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996);

accord *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry*, 390 U.S. at 424; *In re Marvel Ent. Grp., Inc.*, 222 B.R. at 243 (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997).  The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities."  *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (citations omitted).

23.     The terms of the Settlement Agreement fall well within the range of reasonableness and should be approved by the Court.  The Settlement Agreement provides material value to the Plaintiffs' estates, including, among other things, (i) the Debtors' prompt recovery of assets currently valued at approximately $175 million held in the Bybit Accounts; (ii) Mirana's purchase of the Debtors' approximately 105 million BIT Tokens at $0.50 per token; and (iii) the Debtors' allowance of the Transfer Defendants' customer claims in reduced amounts.  The Settlement Agreement also would avoid further costly and time-consuming litigation and eliminate the risks of any unfavorable outcome.  Accordingly, and as further described below, the compromises set forth in the Settlement Agreement are, in the aggregate, fair and equitable, fall well within the range of reasonableness, and satisfy each of the applicable *Martin* factors.

<b>a.     The Probability of Success in Litigation and Subsequent Collection</b>

24.     Plaintiffs maintain that their claims for turnover, violations of the automatic stay, and fraudulent and preferential transfers are meritorious, and are prepared to continue litigating those claims in this Court, as necessary.  But the Defendants have vigorously disputed Plaintiffs' allegations and may be able to assert numerous defenses to the merits of

Plaintiffs' claims, including defenses that are specific to the facts surrounding the Transfers and Bybit Accounts. As a result, the outcome of litigation involving numerous claims and defenses is uncertain.

25. With respect to the turnover claims, the Settlement Agreement provides Plaintiffs with everything that they seek without the need for further litigation—Plaintiffs will be allowed to promptly withdraw the entirety of the assets in the Bybit Accounts. With respect to the claims for violations of the automatic stay, the Settlement Agreement allows Plaintiffs to recover significant value for their illiquid and difficult-to-monetize holdings of a volatile asset, while avoiding potential challenges to enforcing any related judgment. And with respect to Plaintiffs' claims for preferential and fraudulent transfers, although Plaintiffs dispute the Defendants' defenses set forth in the Motions to Dismiss, there is risk that, absent the Settlement Agreement, Plaintiffs would face jurisdictional and enforcement challenges in prosecuting their claims, and that the Defendants could be entitled to the full amount of valuable allowed claims in the Debtors' Chapter 11 Cases. Those claims are instead being reduced through the Settlement Agreement.

26. Moreover, even if Plaintiffs were successful on the merits of the preference claims, Plaintiffs expect recoveries for general unsecured claims, including replacement claims under section 502(h) of the Bankruptcy Code, to be significant. As recoveries for unsecured creditors increase, the net value of Plaintiffs' preference claims against the Transfer Defendants decreases. Plaintiffs considered the costs and benefits to continuing to pursue the preference claims in that context, and concluded that the Settlement Agreement is in the best interests of the Debtors' estates and their stakeholders.

27. Any litigation of the merits of Plaintiffs' claims against the Defendants, or of the Defendants' defenses, would present significant uncertainties for Plaintiffs and their estates. The settlement set forth in the Settlement Agreement provides certainty to Plaintiffs through a fair

and final resolution of the Adversary Proceeding without the risk of further expense or an adverse ruling on Plaintiffs' claims.

           **b.**     **The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay.**

        28.     Litigation of Plaintiffs' claims would be complex, expensive and involve a significant amount of time and resources. Settlement negotiations were vigorous and it was clear that, in the absence of a deal, both the Plaintiffs and Defendants are well-funded and ready to litigate the issues on behalf of their respective stakeholders. Indeed, the disputes would require document and testimonial discovery, expert reports, and briefing on numerous legal and factual issues, including, as demonstrated by the affidavit executed by Kumanan Ramanathan, attached as <u>Exhibit B</u> hereto, the Plaintiffs' interests in the Bybit Accounts opened in the name of nominee entities. The Settlement Agreement eliminates these costs.

           **c.**     **The Paramount Interests of Creditors.**

        29.     The Settlement Agreement is in the best interests of Plaintiffs' estates and their creditors because, as discussed above, approval of the Settlement Agreement resolves complex disputes between the parties that otherwise would have required further costly and time-consuming litigation with uncertain net recovery by providing for the consensual resolution of all disputes between the parties. As such, in Plaintiffs' business judgment, the value of entering into the Settlement Agreement exceeds the net benefits that Plaintiffs and their estates likely would obtain from continuing on the alternative litigation path.

        30.     Plaintiffs submit that the Settlement Agreement satisfies Bankruptcy Rule 9019 because it is fair, reasonable, and in the best interests of Plaintiffs, their estates, and their stakeholders. As a result, Plaintiffs respectfully submit that the Settlement Agreement satisfies the *Martin* factors and request that the Court approve the Settlement Agreement and authorize Plaintiffs to enter into it.

**Waiver of Bankruptcy Rule 6004(h)**

31.     Given the nature of the relief requested herein, Plaintiffs respectfully request a waiver of the 14-day stay under Bankruptcy Rule 6004(h) to the extent such stay applies.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise."  For the reasons described above, Plaintiffs submit that ample cause exists to justify a waiver of the 14-day stay to the extent such stay applies.

**Reservation of Rights**

32.     Nothing in this Motion:  (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; or (c) shall otherwise impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party except as otherwise set forth herein or in the Settlement Agreement.

**Notice**

33.     Notice of this Motion has been provided to:  (a) the U.S. Trustee; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the Ad Hoc Committee of Non-U.S. Customers of FTX.com; (d) the Securities and Exchange Commission; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the United States Attorney for the District of Delaware; (h) counsel to the Defendants; and (i) those parties requesting notice pursuant to Bankruptcy Rule 2002.  Plaintiffs submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, Plaintiffs respectfully request that the Court (a) enter the Order, substantially in the form attached hereto as Exhibit A, and (b) grant such other and further relief as is just and proper.

Dated:  October 24, 2024
          Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
       mcguire@lrclaw.com
       brown@lrclaw.com
       pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Steven L. Holley (admitted *pro hac vice*)
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: holleys@sullcrom.com
       wheelers@sullcrom.com
       gluecksteinb@sullcrom.com
       decampj@sullcrom.com
       dunnec@sullcrom.com
       crokej@sullcrom.com

*Counsel for Plaintiffs and Debtors-in-Possession*