## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| FTX TRADING LTD. and ALAMEDA RESEARCH LTD., | |
| Plaintiffs, | |
| - against - | Adv. Pro. No. 24-_____(JTD) |
| HUOBI GLOBAL LTD., HTX LTD., ABOUT CAPITAL MANAGEMENT (HK) CO., LTD., DIGITAL LEGEND HODLINGS LTD., HBIT LTD., ORANGE ANTHEM LTD., and POLO DIGITAL ASSETS, LTD., | |
| Defendants. | |

**COMPLAINT FOR TURNOVER OF ASSETS PURSUANT TO 11 U.S.C. § 542, FOR VIOLATIONS OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362, FOR AVOIDANCE OF TRANSFERS PURSUANT TO 11 U.S.C. § 547, AND FOR <u>DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502</u>**

Plaintiffs FTX Trading Ltd. ("<u>FTX.com</u>") and Alameda Research Ltd.

("<u>Alameda</u>") (together, the "<u>Plaintiffs</u>"), through their undersigned counsel, for their Complaint

against Huobi Global Ltd. ("<u>Huobi Global</u>"), HTX Ltd. ("<u>HTX</u>"), About Capital Management

(HK) Co., Ltd. ("<u>About Capital</u>"), Digital Legend Hodlings Ltd. ("<u>Digital Legend</u>," and together

---

[1]     The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively.  Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

with Huobi Global, HTX and About Capital, "Huobi"), Hbit Ltd. ("Hbit"), Orange Anthem Ltd.

("Orange Anthem"), and Polo Digital Assets, Ltd. ("Poloniex," and together with Huobi, Hbit,

and Orange Anthem, the "Defendants"), allege the following based upon personal knowledge

and upon their investigation to date as to themselves and their own acts, and upon information

and belief as to all other matters:

## NATURE OF THE CASE

1.     Plaintiffs bring this adversary proceeding ("Adversary Proceeding") pursuant to

Section 542 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy

Code") to recover more than $27 million in debtor assets held in Huobi and Poloniex exchange

accounts belonging to Alameda.  Plaintiffs also assert claims for violations of the automatic stay

pursuant to Section 362 of the Bankruptcy Code for Defendants' actions affecting property of the

debtors' estates.  Plaintiffs further seek to avoid preferential transfers to Defendant Hbit pursuant

to Section 547 of the Bankruptcy Code.  Finally, pursuant to Section 502(d) of the Bankruptcy

Code, Plaintiffs seek to disallow any and all claims filed or held by Defendants in the

above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases") unless and until

Defendants have relinquished to Plaintiffs all property determined by the Court to be subject to

turnover, avoidable and/or recoverable.

2.     On November 11 and November 14, 2022 (as applicable, the "Petition Date"),

FTX.com and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" and

each a "Debtor") filed with the United States Bankruptcy Court for the District of Delaware (the

"Court") voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  No trustee has

been appointed for Plaintiffs or any other Debtor in these Chapter 11 Cases, and the Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  On November 22, 2022, the

Court entered an order authorizing joint administration of the Chapter 11 Cases [D.I. 128].

Accordingly, Plaintiffs have the authority to file this Complaint to commence, and thereafter to

prosecute, this Adversary Proceeding.

3.      Prior to the filing of the Chapter 11 Cases, Alameda engaged in cryptocurrency

trading and other activities.  As part of its trading operations, Alameda opened and operated

accounts at various cryptocurrency exchanges around the world.

4.      Huobi currently operates one of the world's largest exchanges offering

cryptocurrency trading services, reportedly averaging billions of dollars in spot, futures and

options trading each day.[2]  In or around September 2022, Sun "Justin" Yuchen ("Justin Sun")

acquired control of Huobi and its affiliates.  Upon information and belief, Defendant Hbit

operated as a subsidiary of Huobi.

5.      Poloniex currently operates another large cryptocurrency exchange, which boasts

an estimated 24-hour trading volume of more than $750 million as of November 9, 2024.[3]  Justin

Sun owns and operates the Poloniex exchange as well.

6.      Prior to the filing of these Chapter 11 Cases, Alameda maintained an account on

Huobi with an account number ending in -8170 (the "Alameda Huobi Account").  The Alameda

Huobi Account had been opened using the name of a former Alameda employee (the "Former

Alameda Employee"), but was at all times funded and controlled by, and used solely for the

benefit of, Alameda.  Additionally, prior to the filing of these Chapter 11 Cases, Samuel

Bankman-Fried opened an account on Poloniex (the "Alameda Poloniex Account," and together

---

[2]      *See* https://cointelegraph.com/news/htx-overtakes-coinbase-trading-volumes.

[3]      *See* https://www.coingecko.com/en/exchanges/poloniex.

with the Alameda Huobi Account, the "<u>Alameda Accounts</u>") registered to the e-mail address exchanges@alameda-research.com. The Alameda Poloniex Account also was at all times funded and controlled by, and used solely for the benefit of, Alameda.

7. Immediately after commencing these Chapter 11 Cases, the Debtors determined that the Alameda Accounts collectively contained Debtor assets then-valued at approximately $27.5 million, and that both Huobi and Poloniex had locked the Alameda Accounts, rendering the Debtors unable to recover their assets. The Debtors promptly contacted Huobi and Poloniex to request that they preserve the Debtors' assets in the Alameda Accounts and cooperate with the Debtors' requests to facilitate the return of these assets for the benefit of the Debtors' estates.

8. Despite repeated outreach from the Debtors, as well as outreach to Huobi from the Former Alameda Employee and the United States Attorney's Office for the Southern District of New York (the "<u>SDNY</u>"), Huobi and Poloniex have both refused to cooperate with the Debtors' requests and continue to wrongfully withhold the Debtors' property. This Adversary Proceeding seeks the turnover of these estate assets held by Huobi and Poloniex.

9. Defendant Hbit also received gross transfers of digital assets currently valued at more than $14 million from FTX.com in the ninety days prior to the commencement of these Chapter 11 Cases. These transfers constitute preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.

10. Upon information and belief, Huobi and/or Poloniex also maintained FTX.com accounts with account numbers ending in -2904 and -9858 that were nominally opened in the names of Defendants Orange Anthem (the "<u>Orange Anthem FTX Account</u>") and Hbit (the "<u>Hbit FTX Account</u>") respectively. The Orange Anthem FTX Account was opened in or around April 2022. KYC materials submitted in connection with opening the Orange Anthem FTX Account

4

reflect that: (i) at the time Orange Anthem was formed, its sole shareholder and director was Justin Sun; and (ii) source of wealth documentation stated that the funds for the Orange Anthem FTX Account would come from accounts at Binance (another cryptocurrency exchange) with e-mail addresses beginning "binancehedgepolo" followed by a string of numbers. Upon information and belief, "hedgepolo" refers to the Poloniex exchange controlled by Justin Sun. The Hbit FTX Account was opened in or around August 2021, and Huobi repeatedly has acknowledged to the Debtors that it controlled this account. After the Petition Date, customer proofs of claim were filed against the Debtors with respect to the Petition Date balances of the Orange Anthem FTX Account (totaling approximately $12 million) and the Hbit FTX Account (totaling approximately $18 million). Pursuant to Section 502(d) of the Bankruptcy Code, Plaintiffs seek to disallow these claims, as well as any and all other claims filed or held by Defendants in these Chapter 11 Cases unless and until Defendants have relinquished to Plaintiffs all property determined by the Court to be subject to turnover, avoidable and/or recoverable.

11.     During the course of this Adversary Proceeding, Plaintiffs may learn (through discovery or otherwise) of additional property of the Debtors subject to turnover under Section 542 of the Bankruptcy Code, or transfers made to Defendants that are avoidable under Sections 547 or 548 of the Bankruptcy Code. Plaintiffs intend to recover all such property and avoid and recover all such transfers made to or for the benefit of Defendants or any other transferee. Plaintiffs reserve the right to amend this Complaint to include, without limitation: (i) further information regarding any property or transfers, (ii) additional plaintiffs or defendants, (iii) modifications of and/or revision to the Defendants' names, and (iv) additional causes of action, if applicable (collectively, the "Amendments"), that may become known at any time

during this Adversary Proceeding, through formal discovery or otherwise, and intend for any such Amendments to relate back to this Complaint.

## JURISDICTION AND VENUE

12.     This Adversary Proceeding relates to the Plaintiffs' Chapter 11 Cases filed with this Court on the Petition Date.  The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

13.     This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

14.     Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and venue in this District is consistent with the interests of justice, judicial economy, and fairness.

15.     The statutory predicates for the relief requested herein are Sections 105(a), 502(d), 362, 542, 544, 547, and 550 of the Bankruptcy Code.

16.     This Adversary Proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

17.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiffs consent to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

18.     Plaintiff FTX.com is a corporation registered in Antigua and Barbuda that operated a cryptocurrency trading exchange.

19.     Plaintiff Alameda is a British Virgin Islands company limited by shares.

20.     Defendant Huobi Global is a company that was registered in Seychelles until October 13, 2023.  The Huobi cryptocurrency exchange formerly operated under Huobi Global.

21.     Defendant About Capital is a Hong Kong company and, together with Defendant Digital Legend, acquired Huobi Global and other related entities in September 2022.  Upon information and belief, Justin Sun exercises control over About Capital.

22.     Defendant Digital Legend is a British Virgin Islands company and, together with Defendant About Capital, acquired Huobi Global and other related entities in September 2022.  Upon information and belief, Justin Sun exercises control over Digital Legend.

23.     Defendant HTX is a company currently registered in Seychelles.  Upon information and belief, HTX currently operates the Huobi cryptocurrency exchange.  Huobi rebranded to HTX, which stands for "Huobi TRON Exchange," in September 2023 as part of "a new era for the platform with synergy between HTX, TRON, and Poloniex."[4]  Upon information and belief, TRON a/k/a the TRON Network is a blockchain protocol founded by Justin Sun.

24.     At all relevant times, Huobi has been owned and operated by or through one or more associated companies, including Defendants Huobi Global, About Capital, Digital Legend, and HTX.  Upon information and belief, Defendants Huobi Global, About Capital, Digital Legend, and HTX operate as a unified, integrated enterprise, including sharing management and

---

[4]        https://www.htx.com/support/84948926582328.

operational teams.  Because Defendants Huobi Global, About Capital, Digital Legend, and HTX operate as a joint enterprise, they are described together in this Complaint as "Huobi."  Upon information and belief, Justin Sun exercises control over Huobi.

25.     Defendant Hbit is a Hong Kong company and was a wholly-owned subsidiary of Huobi until at least September 2022.

26.     Defendant Orange Anthem is a British Virgin Islands company wholly owned by Justin Sun.  Upon information and belief, Orange Anthem is part of Justin Sun's TRON network.

27.     Defendant Polo Digital Assets, Ltd. is a company incorporated in the Republic of Seychelles.  Upon information and belief, Polo Digital Assets, Ltd. currently operates the Poloniex exchange.[5]

28.     Upon information and belief, Hbit, Orange Anthem, Huobi, and Poloniex are under the common ownership and control of Justin Sun.

## FACTUAL ALLEGATIONS

I.     **Huobi and Poloniex Have Repeatedly Refused to Return Debtor Property**

A.     **Huobi Withholds Debtor Property**

29.     Prior to the Petition Date, Alameda engaged in cryptocurrency trading and other activities.  In connection with its cryptocurrency trading activities, Alameda maintained and operated accounts on various cryptocurrency exchanges around the world.  Alameda sometimes opened accounts on these exchanges in its own name, but other times it sought to obscure the fact that it was operating the accounts on these exchanges by opening accounts in the names of

---

[5]     *See, e.g.*, *Poloniex Spins Out from Circle with New Backing & Global Focus*, Polonius, https://support.poloniex.com/hc/en-us/articles/360040020993-Poloniex-Spins-Out-from-Circle-with-New-Backing-Global-Focus (last visited Oct. 14, 2024).

its employees or in the names of shell companies. These "secret" accounts afforded Alameda the ability to trade without expressly disclosing its involvement.

30.     One such "secret" account—the Alameda Huobi Account—was nominally held in the name of the Former Alameda Employee, but was at all times funded and controlled by, and used solely for the benefit of, Alameda. As of the Petition Date, the Alameda Huobi Account held assets then-valued at approximately $22 million. As described below, both Alameda and the Former Alameda Employee have repeatedly provided Huobi with written confirmation that the Alameda Huobi Account belongs to Alameda and that the assets contained therein should be turned over to the Debtors, yet Huobi has unjustifiably refused to do so.

31.     On November 16, 2022, the now-CEO of the Debtors sent Huobi affiliate Huobi Tech. Holdings, Ltd. ("Huobi Tech") a letter requesting that the assets in the Alameda Huobi Account be secured, and seeking to coordinate the transfer of the assets in the Alameda Huobi Account to the Debtors. After repeated follow-ups, the Debtors on November 23, 2022 had a telephone call with a member of Huobi Tech's legal team and requested Huobi's assistance in recovering the Debtors' assets. The Huobi Tech legal team member noted that Huobi had an FTX.com account with a significant Petition Date balance and asked whether FTX.com would be promptly transferring those funds to Huobi. Once the Debtors explained the process of the Chapter 11 Cases being overseen by this Court, the Huobi Tech legal team member claimed that he did not work at the "correct" Huobi entity, refused to identify the "correct" Huobi entity or anyone who worked there, and declined to engage further.

32.     On November 23, 2022, the Debtors sent a letter to Huobi, again requesting that the assets in the Alameda Huobi Account be secured, and seeking to coordinate the transfer of the assets in the Alameda Huobi Account to the Debtors. On December 6, 2022, outside counsel

for Huobi responded to the Debtors and requested additional information regarding the Alameda Huobi Account, as well as written confirmation from the Former Alameda Employee that he consented to the Debtors' requests.

33.    After further communications involving Huobi, the Former Alameda Employee and the SDNY, on February 1, 2023, each of the Debtors, the Former Alameda Employee and the SDNY sent Huobi a letter addressing Huobi's requests.  The Debtors' letter confirmed Alameda's control of the Alameda Huobi Account and ownership of the assets therein and provided Huobi with directions regarding the transfer of those assets to the Debtors.  The Former Alameda Employee's letter confirmed that he had no interest in the assets held in the Alameda Huobi Account and consented to the Debtors' requests.  The SDNY's letter also confirmed that SDNY did not object to the Debtors' request that Huobi return the assets in the Alameda Huobi Account to the Debtors.

34.    Huobi did not promptly transfer the assets in the Alameda Huobi Account as requested, and after repeated follow-ups, eventually requested that the Debtors, the Former Alameda Employee and the SDNY send Huobi an additional set of letters providing additional directions and more detailed confirmations that each of the Debtors, the Former Alameda Employee and the SDNY would hold Huobi harmless for complying with the Debtors' requests. On May 5, 2023, each of the Debtors, the Former Alameda Employee and the SDNY sent Huobi another letter addressing Huobi's new requests.  At Huobi's request, the Debtors and SDNY each provided further letters on May 17 and May 19, 2023, respectively, confirming again that each of the Debtors and SDNY would hold Huobi harmless if Huobi complied with the Debtors' requests.

35.     Despite having received the requested documentation from each of the Debtors, the Former Alameda Employee and the SDNY, Huobi refused to cooperate further.  On July 21, 2023, after repeated follow-ups, Huobi's counsel informed the Debtors that he no longer represented Huobi on this matter, and directed the Debtors to communicate directly with Huobi's regulatory team.  The Debtors promptly followed up directly with Huobi's regulatory team, and on August 16, 2023, Huobi's regulatory team finally responded to the Debtors' outreach. Notwithstanding that Huobi had previously confirmed several times that it would comply with the Debtors' requests after receiving the requested letters, Huobi's regulatory team now claimed to the Debtors for the first time that "the [Alameda Huobi] Account is currently being investigated by the Chinese police," and asserted that Huobi was "unable to move and/or transfer any assets from the Account until the said investigation is concluded."

36.     The Debtors have repeatedly followed up with Huobi to request additional information regarding this purported investigation and the Alameda Huobi Account, but Huobi has refused to engage further.  As a result, the Debtors have no choice but to seek judicial enforcement of their rights under the Bankruptcy Code.

### B.     Poloniex Withholds Debtor Property

37.     Prior to the Petition Date, Alameda also operated an account on the Poloniex exchange—the Alameda Poloniex Account—that had been opened by Bankman-Fried using the e-mail address exchanges@alameda-research.com.  As of the Petition Date, the Alameda Poloniex Account held assets then-valued at approximately $5.5 million.

38.     Poloniex has without justification refused to turn over the assets in the Alameda Poloniex Account to the Debtors, despite numerous requests.  On November 16, 2022, the now-CEO of the Debtors sent a letter to Poloniex's CEO requesting that the assets in the Alameda Poloniex Account be secured and seeking to coordinate on how to safely transfer the assets to the

Debtors' estates. The next day, the Poloniex "compliance team" responded, requesting "an agenda for discussion." After the Debtors provided more information, the Poloniex "compliance team" asked for an "official court order" so that it could act on the letter and the Debtors' requests.

39.     On January 31, 2023, the Debtors sent a second letter to Poloniex's CEO, confirming that this Court had authorized the Debtors to secure their at-risk assets, including cryptocurrency and cash, and to move all assets held in third-party brokerages to other accounts. The January 31 letter also explained that Section 362 of the Bankruptcy Code operates as a worldwide automatic stay, enjoining all persons from taking any action to exercise control over property of any Debtor, and that Section 542 of the Bankruptcy Code requires that any estate property be turned over to the Debtors upon request.

40.     After further discussion, Poloniex agreed to allow the Debtors to recover the assets in the Alameda Poloniex Account, and informed the Debtors that they would have to create a new Poloniex account in order to facilitate the transfer and recovery of those assets. In April 2023, the Debtors' cybersecurity advisors created a new Poloniex account for the Debtors as requested. However, Poloniex then raised for the first time several new roadblocks, claiming that the Debtors would need to provide multiple additional forms of written documentation proving their ownership of the assets in the Alameda Poloniex Account, as well as further documentation regarding the authority of the Debtors' cybersecurity advisors to transfer these assets. Notwithstanding the seemingly arbitrary nature of these requests, the Debtors dutifully provided everything requested by Poloniex, at which point Poloniex (like Huobi) stopped responding and failed to cooperate further. Other than one e-mail claiming that Poloniex was undergoing an "internal restructuring," Poloniex has to date refused to respond further to the

Debtors' requests.  As a result, the Debtors have no choice but to seek judicial enforcement of their rights under the Bankruptcy Code.

*     *     *

41.     Section 542(a) of the Bankruptcy Code mandates that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).

42.     The assets held in the Alameda Accounts at Huobi and Poloniex are property of the Debtors' estates pursuant to Section 541(a)(1) of the Bankruptcy Code, which defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." 11 U.S.C. § 541(a).[6]

43.     "Congress intended that property of the estate be broadly inclusive of all interests that the debtor has under state law." *In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002). "[T]he Bankruptcy Code is not concerned with the 'technicalities of title' when it comes to determining property of the estate." *In re NJ Affordable Homes Corp.*, 2006 WL 2128624, at *8 (Bankr. D.N.J. June 29, 2006) (cleaned up).  Instead, property belongs to the estate where the debtor controls the property or otherwise indicates its "legal or equitable interests" in the property. *E.g.*, *In re Schwartz*, 2014 WL 2621114, at *5 (Bankr. D.N.J. June 12, 2014) (holding

---

[6]     In addition, insofar as Huobi and Poloniex qualify as custodians under Bankruptcy Code Section 543, they are obligated to "deliver to the [Debtors] any property of the [Debtors] held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case."  11 U.S.C. § 543(b).

that bank account not in debtor's name was nevertheless property of the estate where debtor funded account, showed "ownership, control, and interest" in account, and money "functionally belonged" to debtor).

44.    The letters that the Former Alameda Employee has submitted to Huobi, as well as the declarations executed by Caroline Ellison, the former CEO of Alameda, attached hereto as Exhibits 1 and 2, confirm that there is no bona fide dispute as to the Debtors' ownership of the assets in the Alameda Accounts.  The assets in the Alameda Accounts, valued at approximately $27.5 million as of the Petition Date, are not of inconsequential value or benefit to the estate.

45.    Moreover, by refusing to return the assets in the Alameda Accounts to the Debtors, Huobi and Poloniex are depriving the Debtors of the value of their property and have caused the Debtors to incur significant costs in seeking to secure those assets.  By refusing to process the Debtors' withdrawal requests, Huobi and Poloniex flout one of the key purposes of the automatic stay:  "to prevent any creditor from becoming a self-determined arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay."  *In re Johnson*, 548 B.R. 770, 787 (Bankr. S.D. Ohio, 2016); *see also Maritime Elec. Co., Inc*. v. *United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("[T]he stay protects creditors by preventing particular creditors from acting unilaterally in self-interest . . . to the detriment of other creditors.").

## II.    Preferential Transfers Made by FTX.com to Hbit

46.    Based on currently available information, during the Preference Period, Hbit received the benefit of certain withdrawals of digital assets and fiat currency from its FTX.com exchange account as set forth in Exhibit 3.  Based on pricing as of October 1, 2024, those assets

are collectively valued at approximately $14,020,107.53.[7]  Those withdrawals constitute

preferential transfers and are avoidable under Section 547 of the Bankruptcy Code.  FTX.com's

preference claim against Hbit may be subject, in part, to a "subsequent new value" defense in an

amount to be determined arising from deposits into Hbit's FTX.com account subsequent to these

preferential transfers.

**CAUSES OF ACTION**

**COUNT ONE**
**TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542**
**(AGAINST HUOBI)**

47.    Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if fully

set forth here.

48.    As alleged above, Huobi continues to withhold the funds contained in the

Alameda Huobi Account, which comprises assets of the Debtors' estates that are not of

inconsequential value.  The Debtors seek an order from the Court directing Huobi to turn over to

the Debtors the assets in the Alameda Huobi Account, which are property of the Debtors' estates

pursuant to Bankruptcy Code Section 541(a)(1).

49.    The relief requested also is authorized under the Court's equitable powers

codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions"

of the Bankruptcy Code.  11 U.S.C. § 105(a).

---

[7]    The Debtors are continuing to investigate the degree to which various accounts were actually controlled by
the entities and individuals to which they were registered.

**COUNT TWO**
**TURNOVER CLAIM PURSUANT TO 11 U.S.C. § 542**
**(AGAINST POLONIEX)**

50.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if fully set forth here.

51.     As alleged above, Poloniex continues to withhold the funds contained in the Alameda Poloniex Account, which comprises assets of the Debtors' estates that are not of inconsequential value.  The Debtors seek an order from the Court directing Poloniex to turn over to the Debtors the assets in the Alameda Poloniex Account, which are property of the Debtors' estates pursuant to Bankruptcy Code Section 541(a)(1).

52.     The relief requested also is authorized under the Court's equitable powers codified in section 105(a) of the Bankruptcy Code.  Pursuant to that section, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

**COUNT THREE**
**FTX.COM PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)**
**(AGAINST HBIT)**

53.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if fully set forth here.

54.     FTX.com made the transfers addressed herein during the Preference Period, as more specifically described in Exhibit 3.

55.     Each of the transfers was a transfer of property of FTX.com.

56.     Each of the transfers was made to the benefit of Hbit.

57.     With respect to each of the transfers, Hbit was a creditor of FTX.com (within the meaning of 11 U.S.C. § 101(10)), or, alternately, Hbit received such transfers for the benefit of a creditor or creditors of FTX.com.

58.     Each of the transfers was made on account of an antecedent debt, namely FTX.com's obligation to deliver to Hbit the cryptocurrency or cash balances in Hbit's FTX.com accounts.

59.     Each of the transfers was made within ninety days of the Petition Date.

60.     Each of the transfers was made while FTX.com was insolvent.

61.     Each of the transfers enabled Hbit to receive more than it would have received if: (i) FTX.com's Chapter 11 Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) the amount paid to Hbit on account of the debt were determined by the Bankruptcy Code.

62.     As of the date hereof, Hbit has not returned any of the transfers to FTX.com.

63.     Pursuant to 11 U.S.C. § 547(b), FTX.com has undertaken reasonable due diligence in the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes that the transfers are avoidable.

64.     Accordingly, these transfers should be avoided as preferences pursuant to Section 547(b) of the Bankruptcy Code, and FTX.com may recover from Hbit the full amount of the transfers, plus interest from the transfer dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

**COUNT FOUR**
**DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**
**(AGAINST ALL DEFENDANTS)**

65.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if fully set forth here.

66.     Defendants have filed claims in these Chapter 11 Cases totaling approximately $30 million, including Claim Nos. 94681 and 57284 filed by Hbit and Orange Anthem, respectively.

17

67.     As alleged above, Huobi is an entity from which property is recoverable under Section 542 of the Bankruptcy Code; Hbit is its affiliate under common ownership and control; and Hbit is transferee of transfers avoidable under Section 547 of the Bankruptcy Code.  Further, Poloniex operates an account on FTX.com through Orange Anthem.  The Orange Anthem FTX Account was opened in or around April 2022.  KYC materials submitted in connection with opening the Orange Anthem FTX Account reflect that:  (i) at the time Orange Anthem was formed, its sole shareholder and director was Justin Sun; and (ii) source of wealth documentation stated that the funds for the Orange Anthem FTX Account would come from accounts at Binance (another cryptocurrency exchange) with e-mail addresses beginning "binancehedgepolo" followed by a string of numbers.  Upon information and belief, "hedgepolo" refers to the Poloniex exchange controlled by Justin Sun.  The Hbit FTX Account was opened in or around August 2021, and Huobi repeatedly has acknowledged to the Debtors that it controlled this account.

68.     By reason of the foregoing facts and pursuant to Section 502(d) of the Bankruptcy Code, any claims of Defendants, or persons or entities affiliated with or controlled by Defendants, that have been or will in the future be asserted in these Chapter 11 Cases should be disallowed unless and until Defendants have relinquished to Plaintiffs the property held or transferred, or have paid Plaintiffs the value of such property, for which and to the extent that the Court has determined Defendants are liable pursuant to 11 U.S.C. §§ 542 or 550.

**COUNT FIVE**
**VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3), (k)**
**(AGAINST HUOBI AND POLONIEX)**

69.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if fully set forth here.

70.     Section 362(a)(3) of the Bankruptcy Code provides, in relevant part, that a petition "filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

71.     The Debtors' assets in the Alameda Accounts comprise property of the Debtors' estates under Section 541 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(a)(1) (estate property is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case").

72.     Section 362(k) of the Bankruptcy Code permits an individual injured by a willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, [to] recover punitive damages."  *See* 11 U.S.C. § 362(k)(1). Plaintiffs respectfully submit that the above circumstances warrant both actual and punitive damages to be determined by the Court based on the depletion of estate assets, including any losses in value of the Debtors' assets in the Alameda Accounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

73.     Enter an order under 11 U.S.C. § 542 and 105(a) directing the turnover of assets held in the Alameda Accounts to Debtor Alameda;

74.     Award Plaintiffs (a) the return of property to the Debtors' bankruptcy estates that is the subject of the avoidable preferential transfers alleged herein; or (b) monetary damages reflecting the applicable value in accordance with 11 U.S.C. § 550 of the avoidable preferential transfers alleged herein (plus the value of any additional avoidable transfers Plaintiffs learn, through discovery or otherwise, were made to Defendants);

75.     Enter an order under 11 U.S.C. § 502(d) disallowing any and all claims filed or held by Defendants in these Chapter 11 Cases unless and until Defendants relinquish to Plaintiffs the amount ordered as an award for avoidable transfers and for property withheld;

76.     Enter an order under 11 U.S.C. § 362(k) awarding actual and punitive damages to Plaintiffs for Huobi and Poloniex's violations of the automatic stay with respect to the assets in the Alameda Accounts;

77.     Award Plaintiffs their attorneys' fees, pre- and post-judgment interests, and costs of suit; and

78.     Award Plaintiffs all other relief, at law or equity, to which they may be entitled.

Dated:  November 9, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        cobb@lrclaw.com
        mcguire@lrclaw.com
        robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Justin J. DeCamp (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
Jacob M. Croke (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: wheelers@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        dunnec@sullcrom.com
        crokej@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*